**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY  THE OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE GULF | * | |
| OF MEXICO, ON APRIL 20, 2010 | * | SECTION J |
| | * | |
| This document relates to: | * | |
| | * | HONORABLE CARL J. BARBIER |
| No. 10-4536 | * | |
| | * | MAGISTRATE JUDGE SHUSHAN |
| | * | |
| | * | |

**BPXP'S MEMORANDUM IN SUPPORT OF ITS COMBINED MOTION IN LIMINE
TO EXCLUDE FROM THE PENALTY PHASE (1) ADDITIONAL EVIDENCE
OF CULPABILITY AND (2) EVIDENCE RELATING TO UNRELATED PRIOR INCIDENTS**

## CONTENTS

Introduction .................................................................................................... 1

I.   Additional Evidence On Culpability During The Penalty Phase Would Be
     Duplicative, Unnecessary, And A Waste Of The Court's And Parties'
     Resources. ................................................................................................ 3

     A.   Phases One And Two Fully Addressed BPXP's Fault. ......................... 3

     B.   The Evidence Relevant To The "Degree of Culpability" Factor Is The
          Same Evidence Previously Presented To Address Issues Of Fault. ...................... 4

          1.   Courts look to evidence of fault to evaluate a party's "degree of
               culpability." ................................................................................ 4

          2.   This interpretation of "culpability" is consistent with the United
               States' approach in *CITGO*. ......................................................... 5

     C.   Evidence Relating To Culpability Was Thoroughly Presented And
          Developed In The Phase One And Two Trial Records ............................ 7

II.  Incidents That Are Not Similar To The *Deepwater Horizon* Incident, Or That
     Involve Non-Section 311 Violations Or Entities Other Than BPXP, Should
     Not Be Considered During The Penalty Phase ................................................ 8

     A.   Under The "Prior Violations" Factor, Only Similar Incidents Are Relevant
          And May Be Considered. .............................................................. 9

     B.   The Court May Only Consider Section 311 Violations Committed By
          BPXP. ................................................................................... 11

          1.   "Violations" means Section 311 violations. ................................. 11

          2.   Only violations by BPXP may be considered. .............................. 14

     C.   Consideration Of Unrelated Prior Incidents Would Greatly Expand The
          Scope Of The Trial. ....................................................................... 15

     D.   Consideration Of Other Incidents Under The Culpability Factor, The
          "Other Matters" Factor, Or Any Other Factor Is Likewise Inappropriate. ........... 16

III. An Order Resolving Whether Additional Culpability Evidence Or Evidence
     Of Prior Incidents May Be Presented Would Allow The Parties To
     Efficiently Plan For Trial. ........................................................................ 18

Conclusion ................................................................................................... 19

## INTRODUCTION

The Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, directs the Court to consider eight enumerated penalty factors in assessing civil penalties against the violator under Section 311 of the Act, including the "degree of culpability" and "history of prior violations." Specifically, the Court should consider:

> the seriousness of the violation or violations, the economic benefit to the violator, if any, resulting from the violation, the degree of culpability involved, any other penalty for the same incident, any history of prior violations, the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge, the economic impact of the penalty on the violator, and any other matters as justice may require.

Section 311(b)(8); 33 U.S.C. § 1321(b)(8).

In evaluating a party's "degree of culpability," courts have looked to the evidence concerning a party's level of fault related to the violation, including evidence of whether the party was negligent or grossly negligent in causing the accident.  Here, the alleged violator of the CWA is defendant BP Exploration & Production Inc. ("BPXP").  Extensive evidence of BPXP's alleged level of fault for the *Deepwater Horizon* accident was presented over the course of forty-one trial days in Phases One and Two of this proceeding.  Those two phases were intended to "address fault issues…including the negligence, gross negligence, or other bases of liability of the various defendants with respect to the issues, including limitation of liability."  Second Am. Pretrial Order No. 41, Rec. Doc. 6592 at 2.

Despite this extensive evidentiary record, the United States apparently will seek to introduce additional evidence relating to BPXP's alleged culpability during the Penalty Phase. In particular, the United States has suggested it will seek to introduce evidence of unrelated incidents and their implications.

1

Evidence of these prior incidents is irrelevant to BPXP's "degree of culpability," its "history of prior violations," or any other penalty factor, and should be excluded for the following reasons:

- ***First***, to be relevant and admissible, any prior violations or incidents must be similar to the CWA violation being penalized.  As the Court has already found, the Texas City, Prudhoe Bay, and Grangemouth incidents are different from the *Deepwater Horizon* accident in nearly every conceivable way.  Order and Reasons (Rec. Doc. 5634) at 4-5.

- ***Second***, both the plain text and structure of Section 311 of the CWA demonstrate that, in determining the violator's penalty, the relevant "history of prior violations" consists of (i) Section 311 violations (ii) committed by that violator, which here is BPXP.

- ***Third***, as the Court has already recognized, the practical effect of permitting such evidence to be presented would be mini-trials involving each of these other events, threatening the manageability of this proceeding.

- ***Finally***, evidence relating to prior incidents and violations should be considered for admissibility under the "history of prior violations" factor or not at all.  Such evidence, for example, should not be admitted under the "degree of culpability" or "other matters as justice may require" factors.  Evidence of a type that is specifically addressed by, but falls short under, one CWA penalty factor should generally not be admitted through the back door under another factor, or the limitations in the enumerated factors would be rendered meaningless.

During discussions with counsel for the United States on this issue, the Government has contended that this motion is premature.  The United States has resisted BP's attempts to reach any agreement on the scope of these penalty factors.  Instead, it has purported to reserve its rights to seek discovery concerning a wide variety of issues in the future, including as to prior incidents.  In addition, the United States has suggested that several of its draft discovery requests are relevant to prior violations issues (specifically, to its contention that violations by entities other than BPXP may be considered).  BPXP disagrees that this motion is premature, and submits that a resolution of these issues now will allow the parties to focus their discovery efforts on relevant issues and prepare this case for trial in a timely and efficient fashion.  If these issues

2

are not resolved now and the scope of discovery and trial remains open-ended, it will be difficult to put in place any meaningful schedule for discovery or trial.  BPXP therefore respectfully requests that the Court enter an order prohibiting the introduction during the Penalty Phase of (i) additional evidence regarding BPXP's degree of culpability; and (ii) evidence relating to unrelated prior incidents.

## I.   ADDITIONAL EVIDENCE ON CULPABILITY DURING THE PENALTY PHASE WOULD BE DUPLICATIVE, UNNECESSARY, AND A WASTE OF THE COURT'S AND PARTIES' RESOURCES.

Consistent with its inherent authority and discretion to manage this trial in order to achieve an orderly and expeditious resolution, the Court should preclude additional evidence from being introduced relating to BPXP's culpability.  *See also Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 218 (5th Cir. 1998) (courts are empowered to control their own schedules however they see fit, including the authority to decide the order in which to hear and decide pending issues).  There are several reasons for such an order.

### A.   Phases One And Two Fully Addressed BPXP's Fault.

This Court has previously articulated a distinct and separate purpose for each phase of this trial:

- **Phase One** was intended to "address issues arising out of *the conduct of various parties* allegedly relevant to the loss of well control at the Macondo Well, the ensuing fire and explosion . . . on April 20, 2010," the rig's sinking, and "initiation of the release of oil" from the well.  Second Am. Pretrial Order No. 41 (Rec. Doc. 6592) at 2 (emphasis added).

- **Phase Two** was intended to "address . . . 'Source Control' . . . [meaning] issues pertaining to *the conduct or omissions of BP, Transocean, or other relevant parties* regarding stopping the release of hydrocarbons stemming from the Incident from April 22, 2010 through approximately September 19, 2010" and "'Quantification of Discharge' . . . [meaning] issues pertaining to the amount of oil actually released into the Gulf of Mexico . . . until the Macondo Well was capped on approximately July 15, 2010. . . ."  *Id.* at 2-3 (emphasis added).

3

These two phases were designed to "address fault issues . . . including the negligence, gross negligence, or other bases of liability of the various defendants with respect to the issues, including limitation of liability." *Id.* at 2. Thus, according to the intended design of the trial, issues relevant to fault have already been fully tried in Phases One and Two.

## B. The Evidence Relevant To The "Degree of Culpability" Factor Is The Same Evidence Previously Presented To Address Issues Of Fault.

### 1. Courts look to evidence of fault to evaluate a party's "degree of culpability."

Although there are few cases interpreting the "degree of culpability" factor, those courts that have addressed this factor have evaluated a party's "degree of culpability" by analyzing the evidence concerning a party's level of fault for the CWA violation at issue.

The Fifth Circuit implicitly embraced this approach to the culpability factor in *U.S. ex rel. Adm'r of E.P.A. v. CITGO Petroleum Corp.*, 723 F.3d 547, 553 (5th Cir. 2013). In *CITGO*, the Fifth Circuit summarized with approval the district court's analysis of the degree of culpability based on CITGO's level of fault related to the violation, including evidence of whether CITGO was negligent or grossly negligent in causing the accident: "The district court considered CITGO's 'degree of culpability' and found that it was 'fully at fault' for the spill and was negligent." *Id.* Although the Fifth Circuit reversed the district court's per-barrel penalty, the Fifth Circuit did not take issue with the district court's approach to the culpability factor.

The court in *United States v. Egan Marine Corp.* took the same approach, focusing on the evidence presented relating to the violator's degree of fault when assessing the violator's degree of culpability. No. 08 C 3160, 2011 WL 8144393 at *6-7 (N.D. Ill. Oct. 13, 2011) (holding that "because the Government was unable to prove gross negligence or willful misconduct, this Court will not . . . award a civil penalty of above $100,000. . . . As noted above, the degree of

culpability shown at trial has prompted this Court to reduce the penalty from $112,000 to $100,000.").

This interpretation is supported by cases determining the per-barrel penalty before the specific penalty factors were added to the CWA in 1990.  Before 1990, the CWA provided that "the violator's ability to pay" and "the gravity of the violation" were to be considered when setting the penalty.  *See, e.g.*, *United States v. Marathon Pipe Line Co.*, 589 F.2d 1305, 1308 (7th Cir. 1978); *United States v. Tex-Tow, Inc.*, 589 F.2d 1310, 1313 (7th Cir. 1978).  Culpability was still relevant, however, because "the gravity of the violation" was interpreted to include the culpability of the violator.  *See, e.g.*, *Marathon Pipe,* 589 F.2d at 1308; *United States v. Gen. Motors Corp.*, 403 F. Supp. 1151, 1164 (D. Conn. 1975).  Consistent with the approach taken by courts today, in years prior to the 1990 amendments, courts also determined a violator's culpability by analyzing the evidence of the violator's degree of fault.  *See, e.g.*, *Marathon Pipe*, 589 F.2d at 1308 (using "degree of culpability" and "degree of fault" interchangeably); *Gen. Motors Corp.*, 403 F. Supp. at 1164 ("defendant was not negligent or at fault in any way for this discharge of oil.  In other words, its culpability was zero.").

### 2.   This interpretation of "culpability" is consistent with the United States' approach in *CITGO.*

In its filings in *CITGO*, the United States focused on the evidence presented of the violator's degree of fault when assessing the degree of culpability factor.  For example, before the *CITGO* trial, the United States encouraged the court to assess CITGO's culpability by looking at the evidence relevant to negligence: "The Court's assessment of culpability should address CITGO's acts and omissions that led to the discharge from the tanks . . . .  [T]he United States intends to prove that this spill resulted from CITGO's gross negligence or willful misconduct, or both."  *See* United States' Citations on the Interpretation and Application of the

5

Penalty Provisions in Section 311(b) of the Clean Water Act at 16, *United States v. CITGO Petroleum Corp.*, No. 2:08-cv-00893-RTH-PJH (W.D. La. Feb. 8, 2011), Rec. Doc. 182-1, attached hereto as Ex. A.  In its closing argument, the United States likewise equated culpability with degree of fault, arguing that "CITGO's degree of culpability is extremely high. The maximum penalty is warranted for the culpability penalty factor for CITGO's gross negligence and willful misconduct."  Attached hereto as Ex. B, United States' Closing Argument and Penalty Demand at 13, *United States v. CITGO Petroleum Corp.*, 2:08-cv-00893-RTH-PJH (W.D. La. Apr. 11, 2011), Rec. Doc. 220.

The United States followed this same approach before the Fifth Circuit, contending that the district court's penalty was too low under the degree of culpability factor because the court had found CITGO to be "fully at fault for the spill and resulting damages" as well as "negligent, which [was] a heightened degree of culpability under the strict liability penalty provision." Attached hereto as Ex. C, Principal Brief of the United States at 31, *United States v. CITGO Petroleum Corp.*, Case No. 11-31117 (5th Cir. Apr. 13, 2012), Rec. Doc. 00511821287.  The United States then argued for a higher penalty under the degree of culpability factor by marshaling all of the evidence relating to CITGO's negligence: failure to operate in accordance with facility design, failure to repair equipment, and failure to heed warnings.  *Id.* at 32-33. Thus, the United States' statements and positions in prior litigation confirm that the degree of culpability factor should be assessed by the same evidence presented on a party's degree of fault.[1]

---

[1]    The Court also suggested that evidence of culpability corresponds to evidence of fault when it considered Anadarko's motion to exclude evidence of its own culpability from Phase Two and the Penalty Phase.  Rec. Doc. 10826.  The Court, in granting Anadarko's motion, explained: "I don't see any possible way that Anadarko's fault, culpability, any way you want to phrase it, or wordsmith it, is going to come into any phase of *cont'd*

C.   **Evidence Relating To Culpability Was Thoroughly Presented And Developed In The Phase One And Two Trial Records.**

During the Limitation and Liability Trial, the United States and other parties presented extensive evidence on culpability issues.  As this Court is well aware, the parties participated in 41 days of trial during the two trial phases, including 68 live witnesses, 47 witnesses presented through video deposition testimony, and 260 witnesses who testified via deposition bundle—a total of 375 witnesses.  This resulted in nearly 13,000 pages of trial transcript alone.  Over 10,500 items were admitted into evidence in the first two phases.  In addition, the parties submitted nearly 3,300 combined pages of Findings of Fact and Conclusions of Law from Phases One and Two.

As a result of these extensive trial proceedings, the record related to the culpability factor is already thorough and well developed.  For example:

- *The Court has already heard evidence on the causes of the incident and the relative fault of each of the parties involved*.  *See, e.g.*, BP Findings of Fact and Conclusions of Law, Rec. Doc. 10467 at V, VI, VII; U.S. Findings of Fact and Conclusions of Law, Rec. Doc. 10460 at I-VII; PSC Findings of Fact and Conclusions of Law, Rec. Doc. 10459 at 37-40, 45-70.  *Cf. Egan Marine Corp.*, 2011 WL 8144393, at *4 (considering under the culpability factor whether violations of safety regulations or safety practices caused the incident).

- *The Court has already heard evidence on the responsibility and oversight for maintenance and repair of the equipment involved in the incident*.  *See, e.g.*, BP Findings of Fact and Conclusions of Law, Rec. Doc. 10467 at VIII; U.S. Findings of Fact and Conclusions of Law, Rec. Doc. 10460 at VII; PSC Findings of Fact and Conclusions of Law, Rec. Doc. 10459 at 32-36.  *Cf. CITGO*, 723 F.3d at 555 (considering under the culpability factor CITGO's maintenance and repair of equipment involved in the incident).

- *The Court has already heard evidence on whether BPXP's spill response preparedness was consistent with industry standard practices*.  *See, e.g.*, BP

---

this trial going forward. . . .  So I am granting Anadarko's motion."  Attached hereto as Ex. D, Pre-Trial Conf. Tr. at 53:20-54:3, Sept. 11, 2013.

Findings of Fact and Conclusions of Law, Rec. Doc. 12047 at II.B.1, II.B.2. *Cf. In re Pepperell Assocs.*, 2000 WL 576426, at *21 (EPA EAB May 10, 2000) (considering regulatory compliance in connection with the culpability factor); *Egan Marine Corp.*, 2011 WL 8144393, at *4 (considering compliance with safety regulations or safety practices under the culpability factor).

- **The Court has already heard evidence on BPXP's efforts to enhance process safety in the years preceding the incident**. *See, e.g.*, BP Findings of Fact and Conclusions of Law, Rec. Doc. 10467 at XI; U.S. Findings of Fact and Conclusions of Law, Rec. Doc. 10460 at VIII; PSC Findings of Fact and Conclusions of Law, Rec. Doc. 10459 at 40. *Cf. CITGO*, 723 F.3d at 550 (considering under the culpability factor CITGO's efforts at improving the facility prior to the incident).

It is axiomatic that "[i]t is within the trial court's discretion to exclude cumulative evidence." *Lirette v. Popich Bros. Water Transp., Inc.*, 660 F.2d 142, 145 (5th Cir. 1981); *see also United States v. Arledge*, 553 F.3d 881, 894 (5th Cir. 2008) ("The district court is permitted to exclude evidence that is cumulative of evidence already in the record"); *French v. Allstate Indem. Co.*, 637 F.3d 571, 578 (5th Cir. 2011) (affirming exclusion of testimony on the "same subject" as prior evidence as cumulative); *Siegrist v. Kleinpeter*, 2004 WL 797723, at *4 (E.D. La. Apr. 13, 2004) (excluding evidence as cumulative).  In light of the extensive trial record, additional evidence relating to BPXP's culpability would be cumulative.  *See Arledge*, 553 F.3d at 894 (court decided written evidence was cumulative of oral testimony already offered).

## II.   INCIDENTS THAT ARE NOT SIMILAR TO THE *DEEPWATER HORIZON* INCIDENT, OR THAT INVOLVE NON-SECTION 311 VIOLATIONS OR ENTITIES OTHER THAN BPXP, SHOULD NOT BE CONSIDERED DURING THE PENALTY PHASE.

Another factor to be considered when evaluating the appropriateness of a CWA penalty is "any history of prior violations."  33 U.S.C. § 1321(b)(8).  But "prior violations" do not include vastly different incidents having nothing to do with Section 311 of the CWA or involving entities other than the defendant violator (BPXP).  Evidence of these incidents is irrelevant to BPXP's

"degree of culpability," "history of prior violations," or any other penalty factor, and should be excluded.

### A. Under The "Prior Violations" Factor, Only Similar Incidents Are Relevant And May Be Considered.

The limited case law under Section 311 does not provide any substantive guidance on the scope of the "history of prior violations" factor.[2]  However, cases interpreting an analogous "history of such violations" factor under Section 309 of the CWA demonstrate that, to be relevant, the prior violations or incidents must be similar to the violation being penalized.  *See* 33 U.S.C. § 1319(d).  Under Section 309, courts have considered "the duration of defendants' current violations, ***whether defendants have committed similar violations in the past***, and the duration and nature of all such violations, including whether the violations are perpetual or sporadic."  *United States v. Gulf Park Water Co.*, 14 F. Supp. 2d 854, 864 (S.D. Miss. 1998) (citing *United States v. Smithfield Foods, Inc.*, 972 F. Supp. 338, 349 (E.D. Va. 1997)) (emphasis added); *see also United States v. Scruggs*, Civ. A. No. G-06-776, 2009 WL 500608, at *5 (S.D. Tex. Feb. 26, 2009) (same); *United States v. Bedford*, Civ. A. No. 2:07cv491, 2009 WL 1491224, at *17 (E.D. Va. May 22, 2009) (same); *New York v. PVS Chems., Inc.*, 50 F. Supp. 2d 171, 176 (W.D.N.Y. 1998) (same); *Catskills Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 244 F. Supp. 2d 41, 52 (N.D.N.Y. 2003) ("the court must consider not only similar violations in the past, but also the duration and continuity of the [defendant's] present violations") (internal quotation marks omitted).

---

[2]    In *CITGO*, the Fifth Circuit remanded on other grounds without substantive discussion of the "prior violations" factor.  723 F.3d at 553 ("In light of our discussion of gross negligence . . . the findings regarding this factor need to be re-evaluated on remand.").  Likewise, *Egan Marine* states only that the "prior violations" factor involves the violator's "compliance history."  *See Egan Marine Corp.*, 2011 WL 8144393, at *7 ("Neither party direct[ed] the Court to evidence regarding [defendant's] past compliance history, and so the Court will neither enhance nor reduce the penalties on that basis.").

This view is not only supported by the law, but has been advocated by the United States itself.  Indeed, the Government has cited these authorities in Section 309 cases, limiting its analysis of the "prior violations" factor to "similar violations."  *See* United States' Trial Br., *United States v. LaPlante*, No. 3:03-cv-50506, 2005 WL 3286224 (N.D. Ill. Nov. 1, 2005) ("As to whether there were similar violations in the past, defendants do not have a history of prior enforcement actions under the Clean Water Act") (citing *Smithfield*, 972 F. Supp. at 349); *see also* United States' Resp. to Defs.' Mot. in Limine to Bar Evidence of Unadjudicated Environmental Issues, *United States v. Hummel*, No. 00 C 5184, 2003 WL 23832172 (N.D. Ill. Dec. 3, 2003) ("The history of violations factor includes the duration of defendants' current violation, similar violations in the past, and the duration and nature of all such violations. . . .  In this case, the defendants want to keep out evidence that Hummel filled a similar high-quality ADID [advance identification of disposal areas] wetland behind his office in Island Lake, Illinois approximately one year before he caused the violations at issue here.") (citing *Gulf Park Water*, 14 F. Supp. 2d at 864).

This Court already has held that industrial accidents such as a decade-old series of systems failures at a petrochemical facility in Scotland (Grangemouth), the rupture of a corroded pipeline in Alaska in 2006 (Prudhoe Bay), and an explosion at a refinery in Texas in 2005 (Texas City) are too dissimilar from the *Deepwater Horizon* accident to be relevant in the first two phases of the trial.  Order and Reasons, Rec. Doc. 5634 at 4-5; Pretrial Conference Order, Rec. Doc. 11367 at 2.  This finding of lack of similarity and relevance is equally applicable now, and the Court should therefore exclude consideration of these prior incidents during the Penalty Phase, regardless of the penalty factor under which the United States seeks to introduce these unrelated events.

10

**B.     The Court May Only Consider Section 311 Violations Committed By BPXP.**

Both the plain language and the structure of Section 311 demonstrate that the only relevant "prior history" is the history of other Section 311 violations, if any, committed by the defendant. Here, that defendant is BPXP.

**1.     "Violations" means Section 311 violations.**

Section 311(b)(3) prohibits "[t]he discharge of oil or hazardous substances . . . ." 33 U.S.C. § 1321(b)(3). Section 311(b)(7) further provides that civil penalties may be assessed against "[a]ny person who is the owner, operator, or person in charge of any vessel, onshore facility, or offshore facility from which oil or a hazardous substance is discharged ***in violation of*** paragraph (3) . . . ." *Id.* § 1321(b)(7)(A) (emphasis added). Indeed, every time the term "violation" is used in Section 311, the statutory context makes clear that it refers to a violation of Section 311 or regulations promulgated under Section 311, not some other provision or statute. This includes the use of "violation" in the other Section 311(b)(8) penalty factors: "the seriousness of the ***violation*** or ***violations***" and "the economic benefit to the violator, if any, resulting from the ***violation*** . . . ." *Id.* § 1321(b)(8) (emphasis added).

This statutory context demonstrates that the "history of prior violations" refers to violations of Section 311. To interpret the "history of prior violations" factor as encompassing more than CWA Section 311 would essentially require arguing that the addition of the words "history of prior" somehow transforms "violations" to mean violations of *any* federal, state, local, or foreign statute or regulation (or possibly some undefined subset of those). Such an interpretation, however, has no basis in the text or structure of Section 311, and violates well-established rules of statutory construction presuming that words have the same meaning when used in different sections of the same statute. *See Moosa v. I.N.S.*, 171 F.3d 994, 1007 (5th Cir. 1999) ("In interpreting a statute, it is presumed that words used in the same statute have the same

11

meaning. . . . ***Here, we are construing the word 'conviction' as contained not only in the same statute, but in the same section***. Accordingly, in light of this presumption, and applying the most logical reading of the plain language of § 322 in its entirety, we conclude that the word 'conviction' means the same in § 322(c) as it does in § 322(a).") (emphasis added) (citing *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 460 (1993); *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993)); *Comm'r v. Ridgeway's Estate*, 291 F.2d 257, 259 (3d Cir. 1961) ("Where a word or phrase is used in different parts of the same statute, it will be presumed to have the same meaning throughout. ***The need for uniformity becomes more imperative*** . . . ***where, as here, a word is used more than once in the same section***.") (emphasis added; internal citations omitted).

In cases applying analogous Section 309 case law, courts repeatedly have limited their consideration to prior violations of the CWA. *See, e.g.*, *Bedford*, 2009 WL 1491224, at *17 (considering only defendant's prior violations of the CWA); *Sierra Club v. El Paso Gold Mines, Inc.*, No. Civ.A.01 PC 2163 OES, 2003 WL 25265873, at *10 (D. Colo. Feb. 10, 2003) ("[p]rior to the instant citizen suit, El Paso had never been cited or held liable for a CWA violation in an administrative or judicial forum"); *United States v. Allegheny Ludlum Corp.*, 187 F. Supp. 2d 426, 433 (W.D. Pa. 2002), *rev'd on other grounds* 366 F.3d 164 (3d Cir. 2004) (considering only CWA violations and noting that the defendant's "complete history of compliance with the [CWA] affords the most useful picture for setting a current penalty"); *Gulf Park Water*, 14 F. Supp. 2d at 864 (declining to mitigate Section 309 penalty because "defendants have a long history of violating the Clean Water Act"); *United States v. Conagra, Inc.*, No. CV 96-0134-S-LMB, 1997 WL 33545777 at *24-25 (D. Idaho Dec. 31, 1997) (considering only prior CWA permit violations); *United States v. Avatar Holdings, Inc.*, No. 93-281-CIV-FTM-21, 1996 WL

479533, at \*9 (M.D. Fla. Aug. 20, 1996) (considering only prior CWA permit violations); *United States v. Ciampitti*, 669 F. Supp. 684, 700 (D.N.J. 1987) (considering only prior CWA violations); *Smithfield Foods, Inc.*, 972 F. Supp. 338, 349 (describing defendants' CWA permit violations and noting that defendant had previously been sued for violations under the CWA); *see also Sierra Club v. Mastec N. Am.*, Civil Nos. 03-1697-HO, 06-6071-HO, 2009 WL 426205, at \*3 (D. Or. Feb. 19, 2009) (finding lack of prior CWA violations to be significant); United States' Trial Br., *United States v. LaPlante*, No. 3:03-cv-50506, 2005 WL 3286224, (N.D. Ill. Nov. 1, 2005) ("As to whether there were similar violations in the past, defendants do not have a history of prior enforcement actions under the Clean Water Act") (citing *Smithfield*, 972 F. Supp. at 349).[3]

Moreover, if the Court were to interpret "prior violations" to cover more than the Clean Water Act violations, there is no objective criteria that would limit those other violations that can be considered to something short of every statute, every regulation, every permit, at any time and place, under any level of federal, state, local, or foreign law. And if the United States were able to offer such evidence, the defendant also would have to be afforded an opportunity to address each such incident, and to demonstrate how each falls into the company's overall compliance record. This would transform trial of a single violation into a trial of a defendant's entire corporate history and surely is not what Congress intended.

---

[3]   BPXP has located only one case where the court may have considered, in addition to prior CWA violations, certain non-CWA Rivers and Harbors Act violations that had ***contemporaneously occurred at the same property***—although even in that case, there is no indication that if the prior violations had involved only the CWA that the court would have reached a different decision. *See Scruggs,* 2009 WL 500608, at \*3 (S.D. Tex. Feb. 26, 2009) (considering the defendant's "history of violations of environmental laws and regulations"); *see also United States v. Scruggs,* Civ. A. No. G-06-776, 2009 WL 81921, at \*1 (S.D. Tex. Jan. 12, 2009) (describing previous CWA and Rivers and Harbors Act violations); United States' Br. on Civil Penalties, *United States v. Scruggs,* Civil Action No. G-06-776, 2009 WL 954947 (S.D. Tex. Jan. 30. 2009) (noting "[a] significant history of violations and regulatory actions ***on the same property***") (emphasis added).

The interpretation that "prior violations" should be limited to those related to oil spills finds further support in EPA's own penalty policy, which it uses to settle claims under Section 311.  *See* Office of Enforcement and Compliance Assurance, Civil Penalty Policy for Section 311(b)(3) and Section 311(j) of the Clean Water Act (CWA) (1998).  That policy takes a very narrow view of the "History of Prior Violations" factor, stating that EPA should "[c]onsider violations of SPCC [spill prevention and response countermeasures] and facility response plan regulations, discharges in violation of Section 311(b)(3), and any violation of an environmental statute that relates to the respondent's ability to prevent or mitigate a discharge in violation of Section 311(b)(3)."  These violations all relate to Section 311 spills.[4]  In other words, far from considering a violator's entire legal compliance history, the policy is focused where it should be— on prior violations, which like the violation being penalized, involve oil spills.[5]

Here, the Court should follow the text of the CWA and this long line of precedent, and hold that the only relevant violations under the "prior violations" factor are violations of Section 311.

### 2.    Only violations by BPXP may be considered.

Section 311(b)(8) demonstrates that only prior violations by the named defendant should be considered.  Specifically, the penalty assessed does not depend merely on the severity and

---

[4]    The term SPCC refers to plans that must be maintained to address spills.

[5]    The United States may argue that use of this policy is limited to settlement purposes. However, this policy is used when EPA seeks penalties before an administrative law judge instead of a federal judge.  Moreover, this policy would have been utilized when the United States settled its Section 311 penalty claims first with MOEX and later Transocean.  The Government asked this court to approve those settlements as fair, reasonable, and in the public interest.  If Section 311 required the Court to consider all prior violations by a defendant of all laws, then how could the Government ignore that in asking a court to approve a settlement that did not consider all such prior violations?

14

effect of the spill, but on considerations specific to the particular CWA defendant, *i.e.*, the particular party responsible for the discharge giving rise to the CWA violation.

In this case, BPXP is the only named defendant and alleged CWA violator. BPXP has not found any CWA case law where the argument has been made, let alone accepted by a court, that a defendant's penalty may be increased due to prior violations committed by its affiliates or other entities. Thus, the Court should consider only "prior violations" by BPXP in assessing any CWA penalty in this case. Any "prior violations" by other BP entities are simply not relevant.[6]

### C. Consideration Of Unrelated Prior Incidents Would Greatly Expand The Scope Of The Trial.

In addition to the legal problems inherent in considering entirely different incidents unrelated to the *Deepwater Horizon* incident, Section 311, or BPXP, the practical effect of admitting such evidence would be mini-trials involving each of the other events, which would greatly expand the scope of discovery as well as the issues to be tried by the Court. In its prior ruling on the admissibility of other incidents, the Court recognized this threat to the manageability of the trial. Order and Reasons, Rec. Doc. 5634 at 5 ("If the Court were to allow evidence of previous, unrelated incidents, there is a real danger of creating a 'trial within a trial.'").

The "real danger" previously noted by the Court remains. In order for the Court to evaluate the significance, if any, of incidents such as Texas City, Prudhoe Bay, or Grangemouth, the parties would likely need to present the facts and circumstances of each incident, involving different businesses at different locations many years ago. In response to the Government's

---

[6]   The penalty factors are not identically situated in this respect; there may be some factors where the actions of other BP entities may have some relevance.

claims, BPXP would need to explain the extensive response and follow-up to each incident, including evidence of the many BP business activities that fully complied with, or went above and beyond, the applicable legal and regulatory environmental and safety requirements.  If the "prior violations" penalty factor is construed so broadly, a trial on this factor alone, not to mention the other penalty factors the Court is required to consider, would take an exceedingly long time—perhaps longer than the Phase One and Two trials combined—and would needlessly include a number of tangential issues having nothing to do with violations of the CWA.

### D.   Consideration Of Other Incidents Under The Culpability Factor, The "Other Matters" Factor, Or Any Other Factor Is Likewise Inappropriate.

If the Court agrees that prior incidents like Prudhoe Bay, Texas City, and Grangemouth cannot properly be considered under the "history of prior violations" factor, the United States has suggested that it can instead raise these incidents under other penalty factors, such as "degree of culpability" or "other matters as justice may require."  The Court should recognize the Government's efforts to shoehorn this evidence into another factor for what it is:   an inappropriate attempt to evade the legal limitations of the "prior violations" factor.

Evidence relating to prior violations is admissible under the "history of prior violations" factor or not at all—otherwise, the language and structure of the CWA would be ignored.  In Section 311 of the CWA, Congress enumerated seven specific penalty factors, plus the "other matters as justice may require" factor.  To suggest that evidence which is expressly addressed by, and excluded from, one factor could instead be admitted through a different factor ignores the structure of the statute.

As an initial matter, the unrelated prior incidents identified by the United States have nothing to do with BPXP's fault for the *Deepwater Horizon* incident, and thus are irrelevant to the "degree of culpability" factor.  *See* Part I, *supra*.  Nor can these unrelated prior incidents be

introduced under the "other matters as justice may require" factor.  In this regard, the use of the word "other" in the "other matters as justice may require" factor is significant:  when used at the end of the list of factors, "other" means something distinct and separate from the rest of the specifically enumerated list, as courts have found in interpreting similar catch-all provisions in other federal statutes.  For example, in *United States v. Holmes*, the Third Circuit explained that the use of "other" in a statute's catch-all provision served to exclude items expressly covered by the other provisions of the statute:

> [Defendant's] argument, however, omits a cardinal word.  That subsection, which is a catch-all provision following five other enumerated categories of prohibited objects, applies only to "any *other* object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual."  ***We cannot ignore the use of the word "other," which operates to expressly exclude items discussed in the other subsections*** of § 1791(d)(1) from the ambit of (d)(1)(F).

607 F.3d 332, 338 (3d Cir. 2010) (emphasis added; internal citations omitted).

Similarly, in *Dole v. Williams Enters., Inc.*, the D.C. Circuit criticized the Administrative Law Judge who had relied on a catch-all provision to grant relief that overlapped with specific relief authorized elsewhere:

> The ALJ reasoned that he also had the apparently separate authority to grant precisely the same form of relief—vacature—under a statutory grant of power to direct "*other* appropriate relief."  . . . Webster's New Collegiate Dictionary defines "other" to refer to one that is "distinct from those first mentioned ... not the same ... a different or additional one"; ***according to the ALJ's reading, however, the final catch-all authority to grant "other appropriate relief" would in fact overlap the earlier grants of specific authority*** to "affirm[ ], modify[ ], or vacat[e]."

876 F.2d 186, 189 n.4 (D.C. Cir. 1989) (some emphasis added).  The same reasoning applies here:  the catch-all factor should generally be interpreted to include only genuinely ***other***

17

*matters*—not those already addressed in the specifically enumerated factors.[7]  Indeed, if the rule were otherwise, then the specifically enumerated factors would have no meaning and be unnecessary.  *See Holmes*, 607 F.3d at 338.

Finally, even if the Government could somehow evade the clear text and structure of the statute and introduce evidence of prior incidents through these other factors, this would do nothing to address—and would only exacerbate—the potential for endless mini-trials.  Far from being something that "justice may require," such a process would undermine justice by shifting the focus of any trial from what happened here to what happened in other situations, in other times and at other places, and involving other entities. If anything, justice requires that such a process not take place.

## III.   AN ORDER RESOLVING WHETHER ADDITIONAL CULPABILITY EVIDENCE OR EVIDENCE OF PRIOR INCIDENTS MAY BE PRESENTED WOULD ALLOW THE PARTIES TO EFFICIENTLY PLAN FOR TRIAL.

Now is the appropriate time for the Court to address this issue.  Resolution of these matters will have a substantial effect on the scope and length of trial, and consequently the bounds of discovery.  There is no need to conduct time-consuming discovery relating to prior unrelated incidents or additional culpability evidence, as the Government wants to do, only to resolve this issue later after the discovery has been completed.  To the contrary, adjudicating these issues now will allow the parties to tailor their discovery efforts and will avoid an unnecessary expenditure of significant time and resources if this motion is granted.

---

[7]  For this reason, the Court should decline to follow *La. Envtl. Action Network v. LWC Mgmt. Co.*, Civ. A. No. 07-0595, 2008 WL 687190 (W.D. La. Mar. 10, 2008).  That case involved plaintiff's motion to compel defendants to identify all actions violating "any federal, state or local water pollution control law. . . . " *Id.* at *1.  The magistrate judge granted the motion to compel on the basis that "prior violations of state or federal environmental law could fall under the catch-all provision of 'other matters as justice may require.'" *Id.* at 2.  The Magistrate Judge offered no reasoning behind this discovery ruling, which ignores the statute's use of the word "other."

Furthermore, the Federal Rules require the extent of discovery to be limited if "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C)(iii).  Given the cumulative nature and irrelevance of the "culpability" and "prior violations" evidence the United States seeks to introduce during the Penalty Phase, issuing an order now would be fully in accord with this Court's duty to limit excessive discovery where the burden or expense outweighs any benefit.

## CONCLUSION

For the foregoing reasons, the Court should grant BPXP's request to preclude the introduction during the Penalty Phase of (i) additional evidence regarding BPXP's degree of culpability, and (ii) evidence relating to unrelated prior incidents.

Date: February 14, 2014                    Respectfully submitted,


                                           /s/ Don K. Haycraft
                                           Don K. Haycraft (Bar #14361)
                                           R. Keith Jarrett (Bar #16984)
                                           Liskow & Lewis
                                           701 Poydras Street, Suite 5000
                                           New Orleans, Louisiana 70139-5099
                                           Telephone: (504) 581-7979
                                           Facsimile: (504) 556-4108
                                           and

                                           Richard C. Godfrey, P.C.
                                           J. Andrew Langan, P.C.
                                           Hariklia Karis, P.C.
                                           Kirkland & Ellis LLP
                                           300 North LaSalle Street
                                           Chicago, IL 60654
                                           Telephone: (312) 862-2000
                                           Facsimile: (312) 862-2200

                                           Robert C. "Mike" Brock
                                           Covington & Burling LLP
                                           1201 Pennsylvania Avenue, NW
                                           Washington, DC 20004-2401
                                           Telephone: (202) 662-6000
                                           Facsimile: (202) 662-6291

                                           *Attorneys for BP Exploration & Production Inc.*