UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL 2179<br><br>SECTION: "J" |
| This Document Applies to:<br><br>No. 12-970, Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al. | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

RESPONSE OF ANDRY LERNER, LLC, JON ANDRY, AND GLEN LERNER
TO THE MOTION OF THE SPECIAL MASTER FOR
RETURN OF PAYMENTS MADE TO CASEY THONN AND OTHERS

**NOW INTO COURT**, through undersigned counsel, comes Andry Lerner, LLC, Jon Andry, and Glen Lerner (collectively "Andry Lerner"), who respectfully submit the following as their response to the Motion of the Special Master for Return of Payments Made to Casey Thonn ("Thonn") and Others ("Response").

### INTRODUCTION

Louis Freeh, Special Master, has filed a Motion for Return of Payments Made to Casey Thonn and Others ("Motion"). Andry Lerner asserts that the relief requested in the Motion by the Special Master cannot be granted based upon the following:

    1) For the reasons set forth in the objections filed by Glen Lerner, Jonathan Andry and Andry Lerner to the Court's Order of September 6, 2013, Rec. Doc. 11830, the Special Master cannot serve as both a fact finder and an advocate and, thus, has no authority to either file or pursue the Motion.

    2) Existing case law does not authorize the Court to enter a judgment requiring Andry Lerner to return its earned fees in the absence of an express finding that Andry Lerner participated in the asserted fraudulent act of preparing and

1

{00339447-3}

submitting alleged fraudulent tax returns. The Special Master has not asserted in the Motion that Andry Lerner participated in any fraudulent act with regard to the Thonn tax returns. In addition, the facts set forth in this Response conclusively establish that the unfiled tax returns upon which the Motion is based were submitted by Thonn in support of his claims prior to his retention of Andry Lerner.

3) Investigators hired by the Gulf Coast Claims Facility ("GCCF") reasonably believed that the information contained in the unfiled tax returns as to $156,000.00 of business income was in fact accurate.

4) Before any clawback of Andry Lerner fees could be ordered, the Court must conduct an evidentiary hearing and determine that Thonn committed fraud and Andry Lerner was a participant in the alleged fraud. The Court cannot base its decision on the papers alone, including the declaration of Lloyd Day since it contains inadmissible hearsay.

## BACKGROUND

The pleadings filed by the Special Master in connection with the Motion and the exhibits thereto paint for the Court an incomplete, inaccurate and misleading picture as to the facts with respect to the Thonn claim and Andry Lerner's involvement with Thonn. Specifically, the Special Master fails to advise the Court as to the following: (i) the tax return and amended returns (that were not filed with the IRS) that are the focus of the alleged fraud committed by Thonn were in fact filed by Thonn or on behalf of Thonn with the GCCF and filed *prior to* his representation by Andry Lerner before Deepwater Horizon Claims Center ("DHCC"); (ii) Andry Lerner was not retained until April of 2012, which was approximately two years after Thonn had

2

{00339447-3}

submitted the original return to the GCCF and one year after the amended return was submitted to the GCCF; (iii) the returns bore no indicia of fraud perceptible to Andry Lerner counsel, in particular the amended return filed by Thonn contains a certification under penalty of perjury by a third-party registered tax preparer that the Form 1040 which contained the business income gross income calculation, and which the Special Master contends formed the basis for the Thonn award, had in fact been filed with the IRS; (iv) the investigative arm of the GCCF, GuidePost, undertook an investigation of the Thonn claim to determine if the business revenue of $156,000.00 contained in the unfiled tax return was correct and concluded it was accurate based upon documentation separate and apart from the unfiled tax return and amended return.

## FACTS

### *The Thonn Tax Returns*

In late March of 2011, Thonn filed a claim with the GCCF. The documentation that was contained in the Thonn filings with the GCCF included his 2009 original tax return ("Original Return") and an amended 2009 tax return ("Amended Return") prepared by O.W. Favre of Otis Income Tax, Inc. ("Otis") of Slidell, Louisiana. (See attached Exhibit "A" - Affidavit of Christina Mancuso, ¶ 5)

The Original Return and the Amended Return were prepared by a "paid preparer." The term "paid preparer" is a designation given to tax preparers by the IRS. It denotes that the party preparing the tax return is, in fact, a person registered with the IRS to prepare or file a tax return. Each paid preparer when registered by the IRS is provided with a pin number for the filing of returns. Page 2 of the 2009 Thonn tax return contains the Preparer Tax Identification Number ("PTIN") for Otis Income Tax, Inc., which identifies to the IRS and others that the return was prepared by a "paid preparer". Current IRS regulations regarding tax preparers who file more

3

{00339447-3}

than eleven (11) returns requires that returns be filed electronically with the IRS or the preparer is required to obtain a signed and dated statement from the taxpayer that the taxpayer will in fact file the return.[1]  26 U.S.C. § 6011(c)(3).

A review of the Original Return (Exhibit "B" to the Special Master's Motion) reveals the following:

1) Page two of the Original Return shows Thonn's occupation as unemployed; and

2) Schedule C of the Original Return reflects $156,000.00 in income and designates Thonn's occupation as a "fisherman."

After the Original Return was prepared, the Amended Return (Form 1040x) (Exhibit "B" to the Special Master's Motion) was prepared by Otis in March of 2011.  The Amended Return does not amend the $156,000.00 of business revenue and, in fact, confirms the $156,000.00 of income (compare line 1 of the Amended Return to line 37 of the Original Return).

More importantly, the Amended Return contains a certification from Otis signed by Favre (not Thonn) that states:

> **Under penalties of perjury, I declare that I (Favre) have filed an original return and that I (Favre) have examined this amended return. . . and to the best of my knowledge and belief, this amended return is true, correct and complete.  Declaration of preparer (other than taxpayer) is based on all information about which preparer has any knowledge.**

 ("Declaration").  Nothing on the face of either the Original Return or the Amended Return would cause Andry Lerner counsel to question whether the Original Return or the Amended Return was in fact filed with the IRS.

---

[1] The fact the return is not signed is not significant because most returns are electronically filed by the tax preparers and contains no client signatures.

The returns referred to in the Amended Returns Declaration signed by Otis Favre are the Original Return and the Amended Return submitted to the GCCF and not the Form 1040A attached as Exhibit "D" to the Special Master's Motion.

*GCCF Investigation of Thonn's Income and Claim*

On December 15, 2010, Brown Greer (a professional retained by the GCCF) reviewed the Thonn claim submissions and referred the claim to its investigative arm, GuidePost. The investigation was triggered by the inconsistency in the Original Return submitted by Thonn wherein he listed himself as both unemployed and as a fisherman. (See Draper Declaration, Exhibit "B", page 4, note 1)

Materials furnished to Andry Lerner by the Special Master, yet not included in the submission by the Special Master, reveal that the investigators were satisfied with the business income asserted by Thonn on the claims form and the unfiled Original Return and Amended Return. (See Draper Declaration, Exhibit "B" page 1 note 11)

The investigative report concludes that the $156,000.00 in business revenue was "probably correct." The investigator's notes base the "no fraud conclusion" on materials separate and apart from the Original Return and the Amended Return which included: (i) copies of statements from relatives and customers of Thonn; and (ii) bank documents showing direct deposits from Danos & Curole Staffing. The investigative notes conclude, based upon all of the documentation submitted, "Casey Thonn shrimped in 2009 the entire season and after expenses and depreciation of his boat and equipment he made $55,822.00."[2]

Andry Lerner has been advised that Otis Favre, on behalf of Otis, was interviewed by GuidePost and that material supporting the Original Return calculations were provided to and

---

[2] It is disappointing to note that investigator's notes were available to the Special Master and were not included in the material submitted to the Court.

5

{00339447-3}

taken by the GuidePost investigators. Andry Lerner requested that the Special Master provide it with GuidePost's interview notes and the supporting material they copied. The Special Master did not, however, produce the investigative notes of the Otis Favre interview or the documents GuidePost received from Thonn. The Special Master merely advised that they were furnished with access to the GuidePost data base but that they could not "vouch for its completeness or accuracy" as the sole basis for not producing the notes or material they received from GuidePost incident to the Otis Favre interview or documentation.

### *Thonn Retains Andry Lerner After Submitting His Claims*

In April of 2012, after Thonn submitted his claims to the GCCF and Thonn had hired Sutton & Reitano, and a little over a year after GuidePost had concluded the Thonn claim was not fraudulent, Andry Lerner was retained by Thonn to represent him in connection with his claim. Until that point, Andry Lerner had no involvement with Thonn.

The retention of Andry Lerner by Thonn was documented in a written contingent fee agreement. The contingent fee in the agreement was a twenty percent (20%) contingency. (See Mancuso Affidavit)

In April of 2013, Andry Lerner, on behalf of Thonn, filed a claim with the DHCC. (See Mancuso Affidavit) The DHCC replaced GCCF as the party reviewing and addressing the claims against BP pursuant to the settlement agreement approved by this Court. When the claim form was filed with the DHCC the documentation that was contained in the GCCF Thonn file, including the Original and Amended Returns, were electronically transferred over to the DHCC. (See Mancuso Affidavit)

Exhibit "A" to the Mancuso declaration identifies the material that was filed on behalf of Thonn prior to his representation by Andry Lerner. A review of that document reveals that the

Original Return and Amended Return were filed prior to the retention of Andry Lerner by Thonn. Andry Lerner did nothing more than respond to requests, represent its client, and attempt to obtain a good result for the Thonn claims.

On June 19, 2012, Coastal Claims Group ("Coastal") was retained by Andry Lerner on behalf of Thonn to prepare an expert report for Thonn's Vessel Owner and Boat Captain's claims. Coastal prepared compensation calculations for the Vessel Owner and Boat Capital claims asserted by Thonn. The report was based upon the Original Return and the Amended Return and other documentation previously submitted to the GCCF.

Ultimately, after review by BP and an appeal, the Thonn claims were allowed. The damages received by Thonn incident to his claim are the following:

Claim 19690   -   $166,652.10

Claim 19691   -   $190,350.25

Claim 20741   -   $ 49,400.00

Out of the damage awards, the following disbursements were made:

1. Claim ID 19690

    1. Amount Received on Claim   $166,652.10

    2. Attorneys Fee – Andry Lerner   ($30,330.42)

        (a) Andry Lerner   $ 16,665.21

        (b) Glen Lerner & Associates   $ 16,665.21

            (i) Paid to Sutton   $ 16,665.21

    3. Coastal   ($ 9,440.00)

    4. Andry Law Group Postage   ($    13.96)

    Net to Casey Thonn   $123,367.73

7

{00339447-3}

2. Claim ID 19691

    1. Amount Received on Claim      $190,350.25

    2. Attorney Fees

        (a) Andry Lerner      $ 19,035.02

        (b) Glen Lerner Associates      $ 19,035.02

            (i) Paid to Sutton      $ 19,035.02

    3. Andry Law Group[3]      ($ 4,840.10)

    Net to Casey Thonn      $147,431.55

3. Claim ID 20741

    1. Amount Received on Claim      $ 49,400.00

    2. Andry Lerner      $ 4,940.00

    3. Glen Lerner & Associates      $ 4,940.00

            (i) Paid to Sutton      $ 4,940.00

    4. Coastal Claims      $ 1,792.50

    Net to Casey Thonn      $ 37,993.36

Based upon the foregoing chart, Andry Lerner retained and used for working capital $40,064.23, and the money distributed to Glen Lerner and Associates was paid to Sutton with Glen Lerner and Associates retaining no Thonn fees.

## LAW AND ARGUMENT

### The Special Master's Filing Exceeds His Rule 53 Authority

The Special Master's Motion must be dismissed for a threshold reason: he lacks the authority under Rule 53 to file the Motion. As an officer of the Court, the Special Master does not have the power to act as a litigant, any more than the Court itself does. This argument was

---

[3]    Andry Law Group paid Coastal Reimbursement

{00339447-3}

8

advanced by Andry Lerner in its Objections to the Court's Order of September 6, 2013 ("Objections"), which granted the Special Master authority to bring "claw back" actions. Rec. Doc. 11830. To avoid repetition, we adopt and incorporate those arguments here, and urge the Court to reconsider the denial of Andry Lerner's Objections. Rec. Doc. 11927.

### The Claw Back Cannot Extend to Andry Lerner Because The Firm Did Not Participate in Any Fraud Related to the Tax Returns

The ordering of restitution of attorney's fees due to the fraudulent conduct of an attorney's client is inappropriate in situations where the attorney has acted in good faith and was unaware of the purported fraud. In *Martin v. Lenahan*, 658 So.2d 119 (Fl. 4th DCA 1995), a Florida court of appeals analyzed a fact pattern similar to the instant case. In *Martin*, an attorney represented a personal injury plaintiff in a medical malpractice action against a doctor for postoperative complications. *Id*. at 120. The jury returned a verdict in favor of the plaintiff, finding the doctor's actions negligent which caused several injuries. Ultimately, the plaintiff, the doctor, and his malpractice insurer reached a settlement for full satisfaction of the judgment. Of the settlement amount, $250,000.00 went to the attorney plus costs. After the settlement and the exchange of funds, criminal fraud charges were brought against the plaintiff and his wife, asserting the plaintiff was not as severely injured as portrayed at the malpractice trial. The plaintiff and his wife were convicted of criminal fraud and ultimately entered into a settlement with the doctor and the malpractice insurer. When the fraud was uncovered, the attorney withdrew from representation and did not participate in the settlement negotiations after the conviction. The insurer filed suit against the plaintiff, his wife, and the attorney representing the plaintiff seeking a return of all monies paid in connection with the claim. The matter was ultimately settled; however, the attorney refused to contribute to the settlement. At the hearing to approve the settlement regarding the criminal charge and the suit for restitution by the insurer,

9

{00339447-3}

the trial court denied restitution from the attorney for fees/costs received from the settlement award. The denial of the restitution was appealed, and the appellate court upheld the trial court's denying the relief requested against the attorney.

The Appellate Court decision answered the question whether an attorney who acted in good faith in connection with a fraudulently obtained judgment which is later set aside, on the basis of fraud, is obligated to make restitution of the attorney's fees collected where the judgment is nullified due to fraud on the part of the plaintiff. In upholding the decision of the trial court, the *Martin* court based its decision upon *Wall v. Johnson,* 80 So.2d 362 (Fla. 1955) and Section 74 of the Restatement of the Law of Restitution, comment H. In *Wall*, the Florida Supreme Court "stated as the general rule that, even though the attorney retained the payment for his services . . . out of a judgment that was subsequently reversed, the attorney is not obligated to make restitution so long as he acted in good faith in prosecuting the action in which the judgment was originally recovered." *Martin*, 658 So.2d at 121 (citing *Wall*, 80 So.2d at 363). The *Martin* Court also relied upon Section 74 of the Restatement of the Law of Restitution, comment H, in holding that no restitution was required. *Id.* Section 74, comment H states that an attorney who receives payment from a judgment debtor before a reversal is not liable to return his fee if the attorney had no knowledge of any fraud in securing the judgment. *Id.* The *Martin* court held that the attorney was not liable for restitution as there was "no evidence of complicity in the fraud perpetrated." *Id.* at 121.

Consequently, *Martin* stands for the proposition that an attorney is exempted from liability with respect to fees received incident to a judgment obtained through fraud if the attorney is unaware of the fraudulent action that contributed to winning the judgment.

While there are no Louisiana cases similar to *Martin*, the case of *Lay v. Continental Rehabilitation Resources,* 834 So.2d 1159 (La. Ct. App. 4th Cir. 2002), serves as Louisiana law on the issue. In *Lay*, the Court determined that an attorney engaged in litigation is not liable to a third party in the absence of documentation supporting a fraud allegation against the attorney.

The memorandum in support of the Special Master's Motion references two cases to support its position that the court should order the return of all funds received by the professionals who assisted Thonn in submitting his false claim, namely: *SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1978) and *Schock v. Nash*, 732 A.2d 217 (Del. 1999). These cases, however, are easily distinguishable from the facts present in this matter and, in fact, *Blatt* supports the Andry Lerner contention that an attorney must have been a participant in perpetuating the fraud for a Court to order disgorgement.

In *SEC v. Blatt*, the Fifth Circuit Court of Appeals heard the appeal of a final judgment under which an attorney, Gerson Blatt, was permanently enjoined from actions which were deemed in violation of the Securities Exchange Act of 1934. Blatt was further required to pay the trustee's expenses up to the amount of the legal fees he realized for his assistance in executing the fraudulent securities violations. The Fifth Circuit determined that Blatt was "the predominate figure in both [fraudulent securities] transactions" and he himself personally violated various rules under the Securities Exchange Act of 1934. While the court stated that its "equitable power is broad enough to permit it to order defendants to pay the trustee's expenses, up to the amount of the fee realized by each defendant for his assistance in executing the fraud[,]" the Court limited that power to instances where the attorney was a *wrongdoer*. *Id*. at 1335-36. The Court recognized that restitution was a proper remedy against an attorney only to the amount with interest by which the defendant profited from his wrongdoing." *Id.* at 1335.

11

{00339447-3}

In *Schock v. Nash*, the trustee of an estate challenged transfers made by the attorney-in-fact, Irma Schock, pursuant to a durable power of attorney granted to her by the deceased estate holder. The Supreme Court of Delaware found that Schock breached her fiduciary duty of loyalty under the power of attorney by transferring money to Schock's own family members. When the trustee sought to recoup the transfers, the relatives of Schock claimed to be "innocent converters" who were not liable for restitution of the transferred amounts. The Delaware Supreme Court affirmed the holding of the Court of Chancery and required restitution by the family members of Schock, stating that the evidence supported the determination that the family members were required to pay back the money they received from the illegal transfers. The family members of Schock had direct access to the funds Schock transferred due to shared brokerage accounts and other similar instances. While the *Schock* court stated that restitution is permissible even when the defendant retaining the benefit is not a wrongdoer, the facts of *Schock* are entirely distinguishable. In *Schock*, the innocent defendants did nothing to earn the money they received. They were merely given the money stolen by Schock.

The cases cited by Andry Lerner and in *Blatt* require this Court to find that Andry Lerner had actual knowledge that the Original Return and the Amended Return had not been filed in order to "claw back" any attorney's fees received by Andry Lerner.

The pleadings filed by the Special Master do not assert that Andry Lerner had any knowledge that the Original Return and the Amended Return had not been filed. Andry Lerner, in this Response, has conclusively demonstrated the following:

(1) Thonn submitted both the unfiled Original Return and Amended Return before Andry Lerner was ever retained as his counsel; and

(2) The Original Return and Amended Return were prepared by a registered paid tax preparer who certified under penalty of perjury that the unfiled returns had, in fact, been filed by him (not Thonn) with the IRS.

**Declaration Submitted by the Special Master in Support of the Special Master's Motion is Inadmissible Hearsay**

In support of the Special Master's Motion is a declaration of Lloyd Day that contains his recollection of his interviews with Otis Favre, Margaret Favre, Joell E. Offner, and Charles Sunny Nuccio for events that occurred over three or four years ago. Each statement in the declaration attributable to the four people is inadmissible hearsay and lacks any credibility or evidentiary value.

In connection with the interviews, the Special Master has not submitted to the Court and has not provided counsel or any of the parties copies of the interview notes or transcripts.[4]

The statements attributable to Otis Favre and Margaret Favre warrant the following observations that would be material with respect to the witnesses' credibility when this matter is tried and witnesses are put under oath:

(1) A comparison of ¶ 4 of the Day Declaration with ¶ 6 of the Day Declaration reveals that Otis Favre prepared the Original Return and the Amended Return and that the 1040A was prepared by his wife. The fact that the returns were prepared by two different people could explain why Otis Favre could not explain the 1040A and his wife did not believe Thonn had any revenue;

(2) Why did Otis Favre prepare the Original Return and the Amended Return and certify under penalty of perjury in the Amended Return that the business income

---

[4] The Court should disregard the Day Declaration as inadmissible hearsay in its consideration of the Motion. *See* Andry Lerner's opposition to the Show Cause Order issued by the Court with respect to the Special Master's Report.

{00339447-3}

13

       in the Original Return and the Amended Return were true and correct if he believed that Thonn was unemployed or had no business income;

(3)    The Amended Return was prepared by Otis Favre after the 1040A form was prepared and filed.  A review of the three returns, the Investigator's notes, and Mancuso Affidavit raise questions that go to the issue of whether Thonn committed fraud when he claimed $156,000.00 of business income.  The questions are the following:

    (a)    On what documents did Otis Favre base the business income figures in the Original Return and Amended Return; and

    (b)    Did Otis Favre, when he prepared the Amended Return, know that a 1040A had been prepared by his wife and filed with the IRS that did not reflect $156,000.00 of business income;

(4)    What is meant by Joell Offner's contention that Thonn was unemployed? Did she mean that he was not employed by a third person but was in fact "self-employed";

(5)    Did Thonn have a bank account or source of income in 2009 that his ex-wife Joell E. Offner knew nothing about?  The marital issues between Thonn and his wife Joell Offner at the time cast doubt on how much Joell Offner truly knew about Thonn's business;

(6)    The statements attributable to Nuccio only establish a question of Nuccio's credibility to be weighed by a Court.  It is impossible to tell from the Day Declaration exactly how much Nuccio paid Thonn in 2009;

(7)    A conflict exists between the GuidePost notes that conclude that no fraud was committed by Thonn and the Day declaration that implies that fraud was

14

committed by Thonn. Without an evidentiary hearing, it is impossible for this Court to determine which of the two investigators' findings are correct.

After everything that was submitted in connection with the Special Master's Motion, the only thing we are sure about is Andry Lerner had nothing to do with the preparation of the Original Return and the Amended Return; did not know or have any reason to believe the Original Return and Amended Return were not filed with the IRS; and did not submit the two returns to the GCCF.

## CONCLUSION

Based upon the foregoing, the Court should deny the Motion of the Special Master as to Andry Lerner or alternatively set the matter for an evidentiary hearing.

February 14, 2014

RESPECTFULLY SUBMITTED:

 /s/Douglas S. Draper
Douglas S. Draper (La. Bar #5073)
Greta M. Brouphy (La. Bar # 26216)
Heller, Draper, Patrick & Horn, LLC
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Facsimile: (504)299-3399
ddraper@hellerdraper.com
Counsel for Andry Lerner, LLC

/s/Pauline F. Hardin
Pauline F.  Hardin (La. Bar #6542)
Jones Walker LLP
201 St. Charles Avenue
49th Floor
New Orleans, LA  70170
Telephone: (504) 582-8110
Facsimile: (504) 589-8110
phardin@joneswalker.com
Counsel for Glen Lerner

15

{00339447-3}

/s/Lewis O. Unglesby
Lewis O. Unglesby (La. Bar #12498)
Unglesby Law Firm
246 Napoleon Street
Baton Rouge, LA  70802
Telephone:  (225)  387-0120
Facsimile:  (225)  336-4355
Email for Lewis:  lisa@unglesbylaw.com
Counsel for Jon Andry

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing *Response of Andry Lerner, LLC, Jon Andry, and Glen Lerner to the Motion of the Special Master for Return of Payments Made to Casey Thonn and Others* has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 1, and that the foregoing was electrically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of February 2014.

/s/Douglas S. Draper

{00339447-3}