i

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig | : | MDL NO. 2179 |
| "Deepwater Horizon" in the Gulf | : | |
| of Mexico, on April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates to: | : | JUDGE BARBIER |
| | : | |
| *Civ. No.* 10-4536 | : | MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**CLEAN WATER ACT -- PENALTY PHASE**

**RULE 26(f) REPORT OF THE UNITED STATES**

**Table of Contents**

I.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Seriousness of a Violation Factor (First Factor):  Little or No Discovery or Further
     Evidence Is Warranted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. BPXP and BP Group Affiliates:  All affiliates are Relevant Regarding Several
     Penalty Factors, Including Efforts to Mitigate; Prior Violations, Economic
     Impact of the Penalty, Culpability, and Other Matters as Justice Requires . . . . . . . . . . 5

     A.   Factors 3 (culpability of BP), 5 (prior violations), and 8 (other matters):
          Prior Incidents and Behavior of other BP Affiliates Relates to the
          Need for Deterrence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     B.   Sixth Factor: The Nature, Extent, and Degree of Success of any Efforts
          of the Violator to Minimize or Mitigate the Effects of the Discharge . . . . . . . . . 9

     C.   Seventh Factor: The Economic Impact of the Penalty on the Violator . . . . . . . . 10

IV.  Anadarko . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V.   Other Factors in this Phase Should Pose No Extraordinary Problems. . . . . . . . . . . . . . . 12

     A.   Factor Two:  Economic benefit to the Violator, if any, Resulting from the
          Violation: this Factor Should be Handled like an Ordinary CWA Case . . . . . . . 12

     B.   Factor Four: Any other Penalty for the Same Incident: Stipulated. . . . . . . . . . . . 12

     C.   Factor Eight: Any Other Matters as Justice May Require: a Catch-all . . . . . . . 13

VI.  Trial and Pre-trial of the Penalty Phase: Three Week Trial in Fall of 2014. . . . . . . . . . 13

VII. Procedural and Technical Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VIII. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**I.    Introduction.** [1]

While the Macondo spill was certainly a major violation with serious consequences meriting large penalties, there is no reason that the *litigation* of the penalty amount should take any extraordinary efforts or time, especially given that voluminous evidence already in the record from Phases One and Two also relates to the Penalty Phase. The remaining portions of the Clean Water Act ("CWA") claim (the first claim for relief in Civil Action 10-4536) can and should be tried, concluded, and submitted in 2014. This approach conforms to the ordinary course of a penalty trial in complex environmental cases, in which the United States usually calls a limited number of expert witnesses, and a few fact witnesses.[2]  CWA enforcement "is designed to be simple, speedy and straightforward." *United States v. Gulf Park Water Co., Inc.*, 972 F. Supp. 1056, 1059 (S.D. Miss. 1997). The Penalty Phase should be smaller than Phases One or Two, with much less discovery, and less trial time, too: a three-week trial with limited witnesses would be sufficient. Any discovery plan tailored to the legitimate purposes of the Penalty Phase -- including any suitable document requests and responses, expert discovery, and all other discovery warranted by proper Rule 26 disclosures -- can be completed in the next several months; accordingly, trial of the Penalty Phase can proceed in the Fall of 2014.

A crucial predicate for the Penalty Phase as proposed herein is a tailoring of pre-trial and trial activities on the "seriousness of the violation" Factor under Section 311(b)(8) of the CWA,

---

[1] The Parties also filed a joint report under Fed. R. Civ. P. 26(f) ("Joint Report").  As stated in the Joint Report, the parties agree that the Penalty Phase is a trial involving three parties, and that the topics are the eight factors set forth in CWA Section 311(b)(8). The Joint Report identifies the eight factors, and sets out the positions of the United States and the Defendants as to several of the factors and the Penalty Phase in general.

[2] For example, in *United States v. CITGO Petroleum Corp.* a Section 311(b)(8) bench trial on CWA penalty lasted only two weeks and the United States called six experts and eight fact witnesses on the penalty factors, including the issues of gross negligence and volume of discharge. 723 F.3d 547, 550 (5th Cir. 2013) (two weeks); Pre-trial Order, 08-00893 (W.D. LA, February 8, 2011) [Rec. Doc. 182] at 50-51 (number of witnesses).

as discussed at Part II, below. We will move the Court to circumscribe presentation of evidence and discovery regarding impacts of the spill on human health, the environment, and the economic interests of private individuals and businesses, because the Court plainly has sufficient information in the record already to hold that the violation caused serious harm in those categories, so any new evidence (or discovery) would be cumulative and a waste of time.

A second major point separates the case plans of BP and the United States: do the penalty Factors relate solely and exclusively to BPXP (the OPA lessee), or is evidence related to the actions, statements, and finances of other BP affiliated entities relevant for consideration by the Court in the Penalty Phase? This issue is discussed in Part III below. We will ask the Court to acknowledge, based on evidence in the record already, and on BP's public statements, that BPXP acts as part of the BP "Group," and therefore facts about the whole Group are relevant to all penalty Factors. Granting such a motion would also streamline this Phase by reducing or obviating discovery and proof about the relationships among the Group affiliates.

When separated from the many other issues the parties dispute in MDL 2179, the Penalty Phase is not a highly complex MDL with scores of claims and multiple parties with varying objectives, but is rather a straightforward CWA case -- in which the issues of liability, gross negligence, and volume of discharge are already concluded – with one plaintiff against two defendants, limited issues, and limited numbers of witnesses and exhibits.

## II.   Seriousness of the Violation Factor (First Factor): Little or No Discovery or Further Evidence Is Warranted.

Little or no further evidence at trial or discovery should be allowed on this Factor.

Under the CWA, the presence of *potential* harm can establish "seriousness," a showing of *actual* harm is not a prerequisite. *See, e.g.*, *United States v. Gulf Park Water Co., Inc.*, 14 F. Supp. 2d 854, 859-60 (S.D. Miss. 1998); *United States v. Smithfield Foods, Inc.*, 972 F. Supp.

338, 344 (E.D. Va. 1997); *Sierra Club v. El Paso Gold Mines, Inc.*, 2003 WL 25265873 (D. Colo. Feb. 10, 2003). In this case, the following factual issues (*inter alia*[3]) relate to this Factor:

- Actual or potential harm to human health;
- Actual or potential harm to the environment; and
- Actual or potential harm to individual, business, and governmental economic interests.

The Court is already well aware of potential and actual impacts of the incident on these categories, based on previous evidence in the MDL record, in related matters, or matters of general knowledge. The parties (at least BP and the United States) disagree whether evidence already part of MDL 2179, or susceptible to judicial notice, establishes that the violation here is a very serious one. The Macondo Well blowout and discharges killed eleven people, injured many others during the blowout and response, put millions of barrels of oil into the Gulf of Mexico, destroyed thousands of animals and plants throughout the Gulf, soiled hundreds of miles of Gulf shoreline, warranted the use of massive quantities of dispersant, and disrupted the economic well-being and lives of thousands of citizens and businesses.

BP argues that more evidence about the nature and extent of natural resource damages and improvement of those conditions is necessary to assess the seriousness of the violation. But, evidence in the record already establishes the violations here as gravely serious; even if the Gulf and its people had already recovered in all respects as BP asserts, such a miraculous turnaround (which has not occurred) would not undo or even reduce the seriousness of the violation. In short, the Court has sufficient evidence in the record already, and additional evidence will be burdensome and wasteful for the Penalty Phase.

---

[3] Other matters may also relate to seriousness, such as the extent of BP's negligence, but those matters require no new evidence beyond that submitted in the first two phases.

Moreover, quantification of environmental harm is the subject of a Natural Resource Damage ("NRD") assessment and a future NRD claim under the Oil Pollution Act, 33 U.S.C. § 2702(a).[4] Allowing discovery or extensive evidence regarding environmental harm could result in the Court making findings that could impact a claim not yet ripe, or findings even on the claims of non-parties such as the States. If BP gets its wish list on discovery of human health, environmental harm, and economic losses, such document productions could dwarf the document productions of Phases One and Two combined. Moreover, there would likely be discovery disputes on burden, privilege, and complex data production format. In sum, this Factor, especially as related to environmental harm, has the potential to both "blow up" the Penalty Phase and interfere with the NRD Assessment under OPA, unless the Court carefully controls the amount of discovery in the Penalty Phase on this seriousness Factor. Accordingly, no party should be allowed any significant discovery on these topics, and evidence on these issues at trial should be limited.

In an effort to compromise, the United States proposed stipulations on these issues, including an offer that neither side would bring any evidence beyond those stipulations. Unfortunately the parties disagreed on the substance of those stipulations. The United States further proposed that each side would use one or two experts to summarize issues of environmental harm, but those witnesses would rely on the existing record and publicly available information, and information that BP has obtained through FOIA, with no discovery. These

---

[4] The second claim alleged in the complaint sought a declaration of unlimited liability for removal costs and damages under the Oil Pollution Act ("OPA"), and the Court granted partial summary judgment in favor of the United States on that claim. Rec. Doc. 5809. Claims for specific amounts of damages have not yet been filed with this Court. Meanwhile, outside of Court, State and federal agencies are proceeding with the administrative process, authorized under OPA and its regulations, known as NRD Assessment. The Assessment will identify injuries and restoration options, and quantify damages. The NRD Assessment process includes opportunity for public input including by the OPA responsible parties. At the conclusion of that process, the Assessment is presented to the responsible parties, and if necessary the United States will file claims either in this MDL or in another proceeding seeking damages.

stipulations have not worked out, so the United States will file a motion seeking the Court's assistance in limiting both discovery and the evidence to be presented on the topics of human health, environmental harm, and economic losses. Further discovery or undue presentation of evidence concerning this Factor would not aid the Court or any party's legitimate goals in the Penalty Phase.

**III.    BPXP and BP Group Affiliates:  All affiliates are Relevant Regarding Several Penalty Factors, Including Efforts to Mitigate; Prior Violations, Economic Impact of the Penalty, Culpability, and Other Matters as Justice Requires.**

Several of the Factors raise a common issue. BPXP is the OPA lessee for Macondo, and when it suits BP, it will seek to preclude evidence in this Phase that relates to other BP affiliates. On the other hand, BPXP will obviously want credit for all the response actions funded or performed by, and all the claims paid by, the other BP Group affiliates. The United States is quite prepared to acknowledge any facts related to mitigation under the sixth penalty Factor (efforts to mitigate the discharge), reserving the right to argue how the Court should weigh such facts. However, BP does not want the Court to consider either: (1) the finances of the BP affiliated entities with respect to BPXP's ability to pay for a civil penalty (the seventh penalty Factor); or (2) (relevant under several Factors) the "criminal history of the BP corporate family" or that "the BP family of companies has a history of deficient safety management." *United States v. BP Exploration and Production, Inc.*, No. 12-292, Reasons for Accepting Plea Agreement, Jan. 30, 2013, Rec. Doc. 65 at 5 and 6.  Thus this issue – whether the affiliated entities are relevant -- cuts across several of the penalty Factors, but boils down to the factual topics of prior incidents and violations, claims and clean up efforts, and finances.

The issue must be a two-way street. BP seeks recognition for the acts of parents and affiliates for some purposes and the U.S. seeks recognition of the acts of the parents and affiliates

for other purposes. Accordingly, the United States proposed stipulating to the recognition of such acts for all purposes in the Penalty Phase. Such an agreement would reduce discovery burdens and streamline trial. The parties have not succeeded in reaching such an agreement. The Court should thus expect a motion on this issue, possibly in the form of a motion by the U.S. seeking a ruling that the corporate affiliates are relevant to culpability, prior violations, and economic impact – and not just mitigation – because of BP's course of conduct in commerce, operations, and throughout this litigation (i.e., BP itself has treated them as one group), or – at the least – that the U.S should be allowed the discovery needed to attempt that showing. In Phase One, BP specifically argued that the acts of BP plc management and BP's company-wide policies implemented at other affiliates' operations were relevant to its allegedly acceptable process safety management, including policies implemented after the Texas City incident; but now BPXP will try to divorce itself from any acts of those same managers and affiliates, and will seek to prohibit any mention of Texas City. Such inconsistency should not be permitted.

> **A.     Factors 3 (culpability of BP), 5 (prior violations), and 8 (other matters): Prior Incidents and Behavior of other BP Affiliates Relates to the Need for Deterrence.**

Congress "wanted the district court to consider the need for retribution and deterrence, in addition to restitution, when it imposed civil penalties." See e.g. *Tull v. United States*, 481 U.S. 412, 422 (1987). Deterrence cannot be achieved without proper consideration of the BP Group's history of prior violations and major pollution incidents, and its failure to change its practices after those incidents. Criminal plea agreements for prior major incidents did not successfully deter BP from repeating the same safety failures and cost cutting mandates that yielded the massive oil spill from Macondo, and that fact is relevant to this Court's determination of what civil penalty could deter BP and make it change its practices.

In Phase One, the PSC's Dr. Bea's expert report discussed risk management at Macondo in depth (and those portions were admitted into evidence), but also included discussions of some of BP's other major incidents, including Texas City, Grangemouth, and Prudoe Bay. On BP's motion, the Court excluded evidence of those other incidents from Phase One, but specifically stated that they might be relevant in the Penalty Phase. *See* Doc. 5634, Order and Reasons Regarding Motion in Limine to Exclude Instances of Prior Alleged Improper Conduct and Prior Adverse Criminal, Civil or Regulatory Proceedings, Feb. 6, 2012, at 5-6. Accordingly, the United States may seek to introduce evidence of prior incidents in the Penalty Phase, but will do so without re-hashing those portions of Dr. Bea's report that were admitted.

*Anticipated Amount of Evidence for this Issue.* We anticipate that the topic of BP's previous incidents and violations will involve a limited number of witnesses, perhaps including one to three expert witnesses (assuming records custodians are not required). We base this estimate on Phase One, where prior to the Order excluding Dr. Bea's discussion of prior incidents, BP had identified only a few expert witnesses to rebut Dr. Bea, and no fact witnesses related to Texas City or the other major incidents were identified by either side in the witness lists. Thus, the topic of prior major incidents was likely to have involved only a few witnesses in Phase One.[5]

---

[5] This same evidence may also be admissible under the "culpability" factor or the "other matters" factor. The evidence related to BP's culpability specifically for Macondo has been already submitted in Phases One and Two, unless it relates to post-spill issues not related to source control or quantification. The United States does not intend to submit evidence or take discovery about BP's actions at Macondo for this factor, other than possibly to make comparisons, such as showing a pattern or failure to learn. BP's prior acts (not at Macondo) may be relevant to BP's "history of violations," BP's degree of culpability, or other matters that should be considered by the Court as Justice may require. To the extent that the United States has need of discovery pertaining to "culpability" of other affiliates, it is the intention of the United States to limit any such requests to extremely narrow, document-specific requests.

To the extent the United States seeks to present a case on prior violations or prior incidents (as to either defendant), we will comply with Rule 26 disclosure obligations for exhibits, witnesses, and expert witnesses on the schedule to be set by the Court. The United States will take care to avoid retreading ground covered in Phase One or Two.

*BP's Anticipated Motion.* We expect that BP will file (simultaneous with the Joint Report) a motion *in limine* seeking to prohibit the admission of evidence of other violations and limiting what types of violations count under this Factor (*e.g.*, only CWA section 311 violations, in the Gulf of Mexico, by the same exact corporate entity BPXP, in a specific time frame). The motion will also seek to limit the "scope" of the "culpability" Factor.[6] The motion is premature.

In order to expedite the proceedings and reduce burdens, the United States has voluntarily declined to serve requests for production asking the defendants to self-identify or search for any prior violations or prior incidents. But the United States may undertake its own investigations to identify any additional incidents using publicly-available information, documents produced as part of the litigation, and the defendants' own documents. We are still looking into this topic and do not know yet what incidents might be found, and as with all topics, we will weigh what evidence to present in light of timing and burden issues. If additional incidents are identified that we intend to submit, we will identify the exhibits or witnesses that we may use to prove those instances. But at this time, we have not finished expert reports and have not completed the historical public records searches, so there is no specific evidence for the Court to consider. Accordingly, any question of admissibility under Rule 403 should be deferred until after expert reports. The Court should allow for standard Rule 26 disclosures of witnesses, exhibits, and

---

[6] Anadarko will also file a motion regarding "culpability," on a different legal basis, which is discussed below under the topic of Anadarko.

- 8 -

expert reports; thereafter, the Court will be able to examine particular testimony or exhibits to determine whether they are admissible.

For the seriousness Factor, and the issue of the BP affiliates involvement, the Court already has ample evidence available that enables the Court to make determinations, so no additional evidence should be needed. But there is little or no evidence on the topic of prior incidents in the record because those were specifically excluded from the previous Phases, so there is a need to identify any evidence that may be used on those incidents.

### B. Sixth Factor: The Nature, Extent, and Degree of Success of any Efforts of the Violator to Minimize or Mitigate the Effects of the Discharge

Violators have an independent statutory obligation to "respond immediately to a discharge," 33 U.S.C. § 1321(c)(5)(A), and thereby minimize or mitigate the effects of a discharge. Accordingly, mitigation of the penalty should be considered only if the violator's response efforts and results were beyond merely compliance with clean up obligations. Furthermore, the size of the spill helps inform the level of response needed: big spills typically require substantial spill response efforts. In this case, the oil spill was the largest in U.S. history in terms of volume and square miles impacted.

BP argues that all response actions (booms, skimming, *etc.*) are relevant to this Factor, as well as actions it took that were not part of the OPA removal action.[7] BP argues that other post-spill payment of various claims is also relevant. Without conceding relevance, the United States agreed to consider stipulations of fact hoping to limit discovery and reduce trial time. BP proposed a set of stipulations as to the removal actions (other than subsea source control), which BP entitled the "Mitigation" stipulations, and also a set of stipulations called the "Claims"

---

[7] Subsea source control was covered by Phase Two, so there should be no discovery on the subsea source control and no other evidence introduced at the Penalty Phase trial on this topic.

stipulations. The United States has proposed amendments and additions, and the parties have negotiated in good faith on these stipulations. The United States believes that stipulations could likely be finalized, with one exception: the significant issue related to identifying the BP Group entities that funded and undertook the actions being described in the stipulations.

The United States is prepared to negotiate the stipulations to final if it can be determined – either by agreement of parties or by order of the court – that the actions and finances of BP-affiliated entities are relevant to the Court's assessment of all the statutory Factors to be considered in assessing a civil penalty. Thus, if BP affiliates are germane to the mitigation Factor, then they are relevant to other Factors, such as culpability, prior violations and economic impact. But if the actions and finances of appropriate BP affiliated entities are not relevant to the Penalty Phase, then the United States cannot agree to the stipulations, because they would be factually inaccurate. As stated, the United States plans to file a motion regarding the relevance of BP's affiliated corporations, and if that is granted, then we anticipate that the mitigation stipulations could be signed and will result in a more streamlined proceeding.

Because of the likelihood of stipulations, the United States hopes that this Factor will require very little evidence to be adduced at trial by any party.

   **C. Seventh Factor: The economic impact of the penalty on the violator**

This Factor includes an analysis of each defendant's ability to pay a civil penalty, up to the statutory maximum, and how such amounts will impact ongoing business operations. *Tull,* 481 U.S. at 423 (a court "may also seek to deter future violations by basing the penalty on its economic impact."); *see also Gulf Park*, 14 F. Supp. 2d at 869 (A "civil penalty must be high enough to insure that polluters cannot simply absorb the penalty as a cost of doing business.").

As discussed above, an important issue will be whether the finances available to BPXP by means of the other BP affiliates (*e.g.*, availability of borrowing) are relevant.

Ordinarily, the evidence on this topic takes one to three expert witnesses relying on the defendant's documents, and we hope that the Penalty Phase will be similar. To the extent the United States seeks to present a case on this Factor, we will comply with Rule 26 disclosure obligations for exhibits, witnesses, and expert witnesses on the schedule to be set by the Court.

### IV.     Anadarko.

Some of the Factors will be substantially identical for Anadarko and BP, such as whether the spill was serious. However, some Factors are defendant-specific.

*Culpability.* Anadarko will file a motion arguing that because the Court dismissed (without taking any evidence) General Maritime Law negligence claims against Anadarko, the Court should also dismiss without taking any evidence, as a matter of law, any "culpability" evidence in the CWA claim. The United States disagrees with Anadarko's position and will oppose the motion, especially in light of the Fifth Circuit's *CITGO* ruling, which makes clear that the Court has broad discretion but *must* consider all eight Factors.

In Phase One, prior to the Court's decision that Anadarko is liable under the CWA (which allowed all parties to drop Anadarko from Phase One), Anadarko and the United States each had one expert potentially related to Anadarko's "culpability." In the Penalty Phase, we would anticipate a similar number of experts, along with some deposition bundles and exhibits on this issue. To the extent the United States seeks to present a case on culpability of Anadarko, we will comply with Rule 26 disclosure obligations for exhibits, witnesses, and expert witnesses on the schedule to be set by the Court.

*Prior Violations.* The parties are working on a stipulation identifying specific violations, which will eliminate the need for evidence or discovery as to those identified violations. If the United States learns of other violations, we will timely disclose them to Anadarko.

*Ability to Pay Economic Impact.* We described above the general approach that proving prior violations and ability to pay involve just a few witnesses. We intend to follow that approach with Anadarko, and will obey whatever schedule is imposed for Rule 26 disclosures.[8]

## V.    Other Factors in this Phase Should Pose No Extraordinary Problems.

### A. Factor Two:  Economic benefit to the Violator, if any, Resulting from the Violation: this Factor Should be Handled like an Ordinary CWA Case.

Courts use economic benefit analysis to "recoup any benefits a violator gained by breaking the law and which gave the violator an advantage vis-a-vis its competitors," thereby leveling the economic playing field. *United States v. Municipal Auth. of Union Township*, 150 F.3d 259, 267 (3rd Cir. 1998). Ordinarily, for this topic the United States calls one to three expert witnesses, who largely rely on the Defendant's own documents. We hope to handle this Factor similarly in this Penalty Phase of this case. If the United States presents a case on this Factor, it will do so in compliance with Rule 26 disclosure obligations for exhibits, witnesses, and expert witnesses on the schedule to be set by the Court. The United States has indicated that it may request some targeted discovery on this topic, and the Defendants have identified some draft requests for production on this topic. Other than the potential for discovery disputes, this Factor should not present any unusual burden for the Court.

### B. Factor Four: Any other Penalty for the Same Incident: Stipulated.

The Parties appear to have a stipulation; no further discussion is needed here.

---

[8] The United States and Anadarko are discussing a stipulation on the financial factor, which may be forthcoming.

### C. Factor Eight: Any Other Matters as Justice May Require: a Catch-all.

There may be relevant evidence in addition to the evidence presented under the first seven Factors under 33 U.S.C. § 1321(b)(8), that justice requires the Court to consider in assessing a penalty. The relevance of BP's prior incidents to this Factor was discussed above. Also, to the extent any of the facts or evidence identified in the foregoing seven Factors is deemed inapplicable to the Factor for which it was identified above, the United States reserves the right to argue that the same evidence is admissible and applicable under this Factor. To the extent any party seeks to adduce evidence specific to this Factor, it should comply with Rule 26 disclosure obligations for exhibits, witnesses, and expert witnesses on the schedule to be set.

## VI. Trial and Pre-trial of the Penalty Phase: Three Week Trial in Fall of 2014.

The Penalty Phase – both discovery and trial -- warrants a much more streamlined effort than was undertaken for either Phase One or Phase Two. The Court should allot 45 trial hours to the Defendants' side (allocated as they see fit) and 45 hours to the United States (similar to the Quantification Track from Phase Two). The Court should set limits on the number of experts (such as 12 experts per "side") and identify early any limits on the number of fact witnesses and deposition bundles that may be submitted. If these procedural boundaries are established now, they can help guide the parties toward prioritizing the discovery and trial plans suited to the goal of assessing the appropriate penalty amounts under the statutory Factors rather than either extending the case schedule unnecessarily or discovering the analysis that is underway as part of assessing natural resource damages under the regulations that govern that work. If the Court establishes these boundaries now, the parties should be ready to try this case in the Fall of 2014, armed with all discovery proper to that task.[9] Such a schedule is fully consistent with BP's prior

---

[9] This proposal is contingent on a reasonable resolution of the discovery and evidence issues on the "seriousness" factor as discussed above.

- 13 -

representation to the Court that the Penalty Phase Trial could start "no earlier than 2Q 2014." BP's Memorandum Re: Subsequent Litigation Phasing, April 10, 2013. The United States proposes a schedule below that can have the entire CWA claim concluded and submitted in 2014:

| | | |
|---|---|---|
| February 2014 | | Motions on Factors as described herein, establish schedule, commence document productions or motions to compel. |
| March 2014 | | Initial disclosures |
| April – June: | | Fact depositions (including custodial productions) |
| June 2014 | | Expert Witness reports due (simultaneous) |
| July 2014 | | Rebuttal Expert Witness Reports due (simultaneous) |
| August 2014 | | Expert Depositions |
| Fall 2014 | | Trial. |

**VII.  Procedural and Technical Matters.**

If the Court orders a reasonably short, limited trial of the Penalty Phase, the United States also may seek to streamline the procedures that have been used for demonstratives, exhibits lists, and exhibit admission. Those procedures were highly effective for the multi-party, multi-month long Phases One and Two, but may be overkill for a one-plaintiff, two-defendant trial.

**VIII.  Conclusion.**

The biggest impediment to scheduling the Penalty Phase is the question of the "seriousness" Factor, because the Defendants are trying to use that Factor to open the door to massive NRD discovery and the subjects of the NRD case (yet to be filed). Unless a stipulated solution is reached, the United States will file a separate motion seeking an Order limiting discovery and the presentation of evidence on the topics of human health, environmental harm,

and economic losses, for purposes of considering this seriousness Factor. Under Rule 403, little or no additional evidence is needed.

Another major issue is BP's desire to get "credit" for mitigation activities of the BP Group as a whole, while seeking to avoid getting the concomitant detriments of the BP Group as a whole with respect to the history of violations, culpability, prior environmental incidents, and the ability to pay the penalty. The United States may file a motion seeking the Court's guidance, in the hopes that discovery and evidence can be reduced on the "mitigation" Factor as well as on the issue of BP's corporate relationships and internal operating procedures.

As to BP's likely motion to limit "prior violations" to a very small set of violations, the Court need not decide that issue now. We have not sought to impose any burden on the defendants to look for and disgorge their own files as to prior incidents, but instead have offered to collect public records evidence ourselves and produce such evidence to the defendants before we seek to admit it. Certainly, at the time of the trial, the Court may consider a Rule 403 determination of whether there is a potential to waste the Court's time at trial, but today there is no imminent need to rule on those issues.

Therefore, the United States requests that the Court enter a schedule that will commence the limited discovery necessary to conclude the CWA case during 2014.

//

//

//

//

//

                    Respectfully submitted,

| | |
|---|---|
| BRIAN HAUCK | ROBERT G. DREHER |
| Deputy Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| PETER FROST | |
| Directory, Torts Branch, Civil Division | SARAH HIMMELHOCH |
| Admiralty and Aviation | Senior Litigation Counsel |
| STEPHEN G. FLYNN | NANCY FLICKINGER |
| Assistant Director | Senior Attorney |
| SHARON SHUTLER | RICHARD GLADSTEIN |
| MALINDA LAWRENCE | PATRICK CASEY |
| LAURA MAYBERRY | Senior Counsel |
| Trial Attorneys | A. NATHANIEL CHAKERES |
| | JUDY HARVEY |
| | RACHEL KING |
| | ERICA PENCAK |
| | ABIGAIL ANDRE |
| | RACHEL HANKEY |
| | BRANDON ROBERS |
| | Trial Attorneys |
| | |
| | /s/ Steven O'Rourke |
| R. MICHAEL UNDERHILL, T.A. | STEVEN O'ROURKE |
| Attorney in Charge, West Coast Office | Senior Attorney |
| Torts Branch, Civil Division | Environmental Enforcement Section |
| U.S. Department of Justice | U.S. Department of Justice |
| 7-5395 Federal Bldg., Box 36028 | P.O. Box 7611 |
| 450 Golden Gate Avenue | Washington, D.C. 20044 |
| San Francisco, CA 94102-3463 | Telephone: 202-514-2779 |
| Telephone: 415-436-6648 | Facsimile:  202-514-2583 |
| Facsimile: 415-436-6632 | E-mail:  steve.o'rourke@usdoj.gov |
| E-mail:  mike.underhill@usdoj.gov | |
| | KENNETH A. POLITE, JR. |
| | United States Attorney |
| | Eastern District of Louisiana |
| | SHARON D. SMITH |
| | Assistant United States Attorney |
| | Eastern District of Louisiana |
| | 650 Poydras Street, Suite 1600 |
| | New Orleans, LA  70130 |
| | Telephone:  (504) 680-3000 |
| | Facsimile:  (504) 680-3184 |
| | E-mail:  sharon.d.smith@usdoj.gov |

Attorneys for the UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date:  February 14, 2014.                                                          /s/  Steven O'Rourke
                                                                                                 U.S. Department of Justice