IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig | * | MDL NO. 2179 |
| "Deepwater Horizon" in the | * | |
| Gulf of Mexico, on April 20, 2010 | * | SECTION: J |
| | * | |
| | * | |
| This document relates to all actions. | * | HONORABLE CARL J. BARBIER |
| | * | |
| | * | MAGISTRATE JUDGE SHUSHAN |
| | * | |
| | * | |
| | * | |

**REPLY IN SUPPORT OF
MOTION TO ORDER PRODUCTION OF CERTAIN DOCUMENTS
BY SPECIAL MASTER FREEH AND TO SET SCHEDULE**

The Court appointed Special Master Freeh pursuant to Federal Rule of Civil Procedure 53 to perform an external, independent investigation "for the benefit of the parties and the public."[1]  The Court's order specified that the Special Master should investigate the Sutton/Reitano matters, conduct "fact finding," and make recommendations pursuant to Rule 53 concerning internal compliance and anti-corruption controls at the Court-Supervised Settlement Program ("CSSP").  BP has real concerns about the state of the program given the Special Master's fact findings and recommendations to date.  BP has spent over $750 million dollars in less than two years on administrative costs[2]—and it is BP that is paying for the costs of any inefficiency or fraud.  Yet the oppositions treat BP as a virtual stranger to the matters addressed in the Special Master's most recent report.

Seven of the eight oppositions to BP's motion appear distracted by collateral disputes. They either fail to address the applicable standard (the Court may deny disclosure "only for the

---

[1] Order at 2, July 2, 2013, Rec. Doc. 10564.

[2] These costs represent fees and expenses from June 4, 2012, the date the CSSP opened, through February 13, 2014, based on invoices received from the CSSP vendors on or prior to that date.

most compelling reasons") or turn it on its head.[3] The eighth opposition—that of the Special Master—acknowledges that there must be compelling reasons to deny disclosure, but does not provide any such reasons. The Special Master, like the other objecting parties, categorically resists disclosure of **all** the requested documents, but offers only reasons why "certain" or "some" documents should be redacted or withheld.[4]

All the oppositions rest on the same three flawed premises:

***First***, the oppositions contend that BP lacks any legitimate interest in the Special Master's findings and recommendations. But no party has a greater interest in whether the CSSP is meeting its fiduciary obligations than BP.

***Second***, the oppositions contend that the Court should deny disclosure of particular documents and imply that the rule of thumb should be "deny one, deny all." But Rule 53 does not authorize withholding **all** the requested documents unless there are compelling reasons as to **all** documents.

***Third***, the oppositions assume that their conclusions about the significance and implications of the Special Master's findings and conclusions are the last word on the subject. But Rule 53 entitles BP to object to the Special Master's report, or to move to modify it. And BP can only do so in a fully informed fashion if it is allowed to review the record for itself and come to its own conclusions. The Court recognized that those matters addressed by Special Master Freeh could not be timely addressed by the Court alone.[5] But surely compliance with the Settlement Agreement and other governing documents cannot be evaluated entirely outside the

---

[3] The Response of Christine Reitano, for example, turns the standard on its head, arguing that BP must demonstrate a need for the documents. Reitano Opp. at 3, Rec. Doc. 12254; *see also* Duval Funderburk Opp. at 4, Rec. Doc. 12319. Rule 53 assumes that the movant has need for the documents and creates a presumption in favor of disclosure.

[4] Freeh Opp. ¶¶ 22, 24, Rec. Doc. 12313.

[5] *See* Order at 2, July 2, 2013, Rec. Doc. 10564.

2

judicial process in a manner that deprives an interested party of the documents that the Special Master considers to offer findings and recommendations and that the Court uses to make rulings.

The Court should grant BP's motion and order production of the requested documents.

**I.    The Special Master Fails to Present a Compelling Reason To Withhold Disclosure**

There is no dispute about the legal standard for withholding documents: the Special Master acknowledges that the Court may withhold documents from BP "*only* for *the most compelling* reasons."[6]  Nowhere in the Special Master's Response, however, does he offer a compelling reason to deny BP access to all the requested records.

**A.  BP Has a Fundamental Interest in the Special Master's Investigation**

BP is not a bystander.  It more than anyone has an interest in the Special Master's fact-findings, conclusions, and recommendations.  It is BP that writes the checks for the CSSP's administrative costs.  BP has every interest in a well-functioning facility that pays legitimate claims quickly and refuses illegitimate ones entirely.  And it is BP that must pick up the bill when vendors must be replaced for incompetence, systems must be re-designed because they don't work, and senior leadership of the CSSP must be replaced when they resign (or are terminated) for conflicts of interest and misconduct.  In short, the CSSP's management owes BP contractual and fiduciary duties, and BP has the right to hold them accountable when they fail to perform those duties.[7]  The fact that BP itself is not the target of criticism in the reports does not mean that BP has no interest in them, not to mention the strong public interest in an efficient and

---

[6]    Fed. R. Civ. P. 53 Advisory Committee's Notes (2003 Amendment) (emphasis added); Freeh Opp. ¶ 19.

[7]    *See* Settlement Agreement §§ 4.3.1, 4.3.2, 4.3.10; s*ee generally* Undertaking of Patrick Juneau In Furtherance of Court Order Appointing Him Claims Administrator; *Deepwater Horizon* Economic and Property Damages Trust Agreement.  The Claims Administrator and Trustee of the Settlement Trust, Patrick Juneau, "takes no position" regarding BP's request to review the documents at issue.  *See* Letter from P. Wittmann to K. Downey at 1 (Jan. 29, 2014).

well-run facility that processes claims fairly and efficiently and with integrity—and there have been deficiencies at the CSSP on each score.

The matters investigated by Special Master Freeh—including his September 6 mandate to investigate conflicts of interest, examine suspicious claims, and make recommendations as to CSSP policies, procedures, and other controls—directly implicate these contractual and fiduciary duties, and nothing in the Special Master's Response suggests otherwise. His focus has been the past and future administration of the settlement program and the performance of its senior managers, who are overseeing the spending of billions of dollars of BP's money. Under Rule 53, BP (like any other party) has a right to object to the Special Master's report. Here, that right is married to a direct financial interest greater than that of any other party.

There is no support in the cases cited by the Special Master for the claim that Rule 53's presumption in favor of disclosure applies only when the party seeking disclosure is "objecting" to "adverse findings or recommendations" about it.[8] It is only to be expected that, in most reported cases, the party seeking disclosure of a special master's findings will be the subject of the inquiry. But neither the Rule itself, the Advisory Committee's Notes, nor the case law narrowly limits disclosure to the subject person or entity. Rule 53 speaks in far broader terms, providing expansive rights to the "parties," subject only to "the most compelling reasons."[9]

BP consented to Special Master Freeh's appointment, after all.[10] It did so because it had a reasonable concern that there had been misconduct that called into question whether the CSSP was meeting its fiduciary obligations. BP never would have consented to an investigation that results in determinations that it cannot evaluate; it would have sought a fact-finding hearing in

---

[8]   Freeh Opp. ¶¶ 14, 18.
[9]   Fed. R. Civ. P. 53 Advisory Committee's Notes (2003 Amendment).
[10]  *See* Order at 1, July 2, 2013, Rec. Doc. 10564.

open court.  The appointment of a special master under Rule 53 creates only a very narrow exception to the rule that the court conducts its business on the record; a special master's work product is presumptively subject to disclosure and may be withheld from the parties "only for the most compelling reasons."

Likewise, Rule 53 makes no distinction between a party who is seeking to "modify" a Special Master's report and a party who files an "objection[]" to the report.[11]  Special Master Freeh's attempt to distinguish the two and insist that disclosure is available only for a party who "*objects* to a finding or recommendation" finds no support in the Rule itself and makes little sense.[12]  The distinction is semantic: Any motion to "modify" a report is an objection to the report, as written.[13]  In any event, BP has not yet determined its Rule 53 response to the Special Master's recommendations and findings, and depending on the record, BP may "object" to the scope of recommendations contained in Special Master Freeh's second report.  Those recommendations may not go far enough; the fact findings may warrant more significant action.  After reviewing the documents, BP may style its pleading as an objection or a motion to modify—or both.  In either case, BP is entitled to the requested documents.

### B. The Special Master's Reasons Are Not Compelling

Far from specifying compelling reasons to withhold the requested documents, Special Master Freeh's opposition at most suggests that *particular* documents should be redacted or withheld.  The Special Master's arguments do not justify *categorical* denial of disclosure.

---

[11] *See* Fed. R. Civ. P. 53(f)(2) ("A party may file objections to—or a motion to adopt or modify—the master's order, report, or recommendations").

[12] *See* Freeh Opp. ¶ 14.

[13] This is demonstrated by the cases cited by the Special Master.  In *Turner v. Murphy Oil USA, Inc.*, 582 F. Supp. 2d 797, 807 (E.D. La. 2008), a special master issued a report recommending the allocation of legal fees from a common benefit fund, and the *objectors* thereto sought to *modify* the amount of money they were to receive from the fund.  *See id.* at 816 ("A sum of $1,100,000 was recommended as being appropriate. In view of the time and labor expended by Mr. [Jay] Andry in addition to the novelty of his efforts . . . the Court finds an upward adjustment is in order and allocates a fee of $1,200,000 to Mr. Andry as fair and appropriate.").

First, the asserted confidentiality considerations do not constitute a compelling reason for the wholesale refusal to disclose the requested documents.  The Special Master's first report has already given rise to a process by which documents are provided in redacted form or, where compelling reasons are at issue, withheld in total.[14]  At best, these considerations apply to select documents or call for specific redactions in a small number of documents.[15]  They do not justify the complete denial of BP's motion.

Second, the Special Master's claim of mental process privilege similarly does not provide a compelling basis to withhold the vast majority of the requested documents from BP.[16]  As the Special Master acknowledges, this Court has already held that the mental process privilege does not warrant categorical non-disclosure.  Regarding the show-cause defendants, the Court upheld the claim of privilege for certain documents and overruled it for others.[17]  Thus, for many documents at issue the Court already has undertaken this analysis.  To the extent that the privilege may apply to requested documents not previously considered by the Court, the Special Master must make a showing document-by-document.[18]

---

[14] See Rule 5(f), Rules Governing the Appeals Process (May 20, 2013) ("Anonymity of Appeal Panelists: At no time during or after an appeal shall the identity of the Appeal Panelist(s) reviewing or deciding the claim be disclosed to the claimant, BP, or Class Counsel.").

[15] As for the Special Master's concern about "information concerning in-process claims that have not yet been resolved in the settlement program," he is again talking about a small subset of the requested information.  See Settlement Agreement ¶ 4.4.14 ("BP and Class Counsel shall have access to all Claim Files and Claims-related data transferred to or generated in the Settlement Program *for any legitimate purpose including, without limitation, . . . reviewing and auditing the Settlement Program* . . . .  However, BP and Class Counsel shall not have access to any Claim Files for Claims that are being processed and have not yet been resolved in the Settlement Program except if the Claim File is needed by BP, a Claimant, or their counsel to prosecute or defend an Appeal." (emphasis added)); see also Order Regarding Settlement Implementation ¶ 9, May 22, 2012, Rec. Doc. 6573.

[16] See Freeh Opp. ¶ 24.

[17] See Order at 6, Rec. Doc. 12026.

[18] The vast majority of documents requested by BP, including the documents providing a factual basis for the Special Master's second report, sworn statements, other records, and interview transcripts, are unlikely to be protected by the mental process privilege.  See Mot. Ex. 1, Attach. A.  For example, the July 29, 2013 interview transcript of Christine Reitano, wherein she "expressed to the Special Master an almost complete lack of awareness of potential conflicts of interest or ethics issues relating to her legal duties at the CAO" and "that she

6

Third, it is irrelevant that BP has received monthly "status updates" from the Special Master and did not, at one point, agree to additional confidentiality conditions in exchange for access to other "updates."[19] While informative and useful, status updates are not the same as the documentary and testimonial evidence that underlie the Special Master's reported recommendations. Updates are, by definition, preliminary. They are also outside the ambit of Rule 53, which comes into play when there is a "report" based on a "complete record of the evidence considered in making or recommending findings of fact."[20] BP's right is based on Rule 53, and the Rule does not authorize the Special Master to resist full disclosures related to his final report now because he provided partial updates before. There is no law or logic to the argument that an oral report of the preliminary fact-findings is a compelling reason to deny disclosure of the facts upon which the final recommendations are based.

The Court's September 6, 2013 order mandated that the Special Master "recommend, design, and test" certain policies and procedures "to ensure the integrity of the CSSP."[21] To the extent the Second Report is pursuant to that order, BP is entitled now to review the documents related to evidence of insufficiencies to determine whether it accepts the latest recommendations as sufficient.[22]

---

had no experience in ethics and had not made any inquiries or responded to inquiries about the Code of Conduct or ethics issues at the CAO," is almost certainly not privileged. *See* Report of Special Master Louis J. Freeh at 67, Sept. 6, 2013, Rec. Doc. 11287. Similarly, the mental process privilege would not prevent disclosure of the August 1, 2013 interview transcript of Patrick Juneau, in which he discussed conflicts of interest within the CSSP, *see id.* at 72-73, a topic that the Special Master was to make recommendations on in his second report, *see* Order at 2, Sept. 6, 2013, Rec. Doc. 11288.

[19] *See* Freeh Opp. ¶ 16.

[20] Fed. R. Civ. P. 53 Advisory Committee's Notes (2003 Amendment).

[21] Order at 2, Sept. 6, 2013, Rec. Doc. 11288.

[22] BP's request is timely, as BP has moved for access to the investigative record that is relevant to the Special Master's recommendations and findings in the Second Report, for the purpose of evaluating those recommendations, within 21 days of that report as required by Rule 53. Special Master Freeh suggests that BP's request for documents relating to the First Report should be denied as untimely because BP did not make the request within 21 days of that report. The Special Master, respectfully, ignores that his reports are

**C. BP Is Entitled To Review the Record for Itself**

In the end, the Special Master—and the other objectors[23]—suggest that BP should take the Special Master's findings and recommendations at face value and be satisfied. Special Master Freeh says that his reports "provide ample detail" and that "BP has been given the opportunity to comment on the Special Master's Reports."[24] But that argument ignores Rule 53. The Rule's presumption is not that the report should be accepted unless a party demonstrates special need to examine the record created by the special master; rather, the presumption is that "only the most compelling reasons" can justify denying a party access to the record.

As noted by Special Master Freeh, this Court "has had full access to the investigative record" and already "has made extensive reviews of the Special Master's work papers."[25] Significant volumes of underlying evidence also already have been disclosed to the non-parties to this case—neither claimants nor BP—by previous orders of this Court.[26] BP will be prejudiced if it is not provided the same opportunity to review the evidence for itself. In effect, it will be forced to brief a question of de novo review for the Court with the underlying evidence

---

cumulative. Special Master Freeh does not deny that the interviews discussed in the First Report "'had the dual purpose of identifying other potential ethical violations and misconduct . . . and providing a framework for the design and implementation of additional CSSP compliance programs, and anti-fraud, anti-corruption and conflict of interest controls, policies, procedures, and practices,'" Mot. at 12 (quoting First Report at 14), or that the evidence discussed and cited in the First Report "clearly informed both the additional fact disclosures and the specific recommendations made by the Special Master in his latest report," Mot. at 10. BP does not seek the evidence cited in the First Report to challenge the factual findings of that report; rather, BP seeks the evidence from the First Report because it is centrally relevant to the recommendations in the Second Report and the issue of whether the culture of the facility is such that it is incapable of learning from previous delinquencies, even when given coaching on relevant issues by a special master with the standing of Judge Freeh.

[23] *See* Class Counsel Opp. at 2, Rec. Doc. 12312; The Andry Law Firm Opp. at 5-11, Rec. Doc. 12318; Glen Lerner Opp. at 1-2, Rec. Doc. 12308; Andry Lerner, LLC Joinder at 3, Rec. Doc. 12315; Duval Funderburk Opp. at 4; Reitano Opp. at 3; David Duval Opp. at 3, Rec. Doc. 12314.

[24] Freeh Opp. ¶¶ 15, 18.

[25] *Id*. at ¶ 21.

[26] *See* Order, Sept. 19, 2013, Rec. Doc. 11442; Order, October 16, 2013, Rec. Doc. 11664; Order, Oct. 24, 2013, Rec. Doc. 11729; Order, Dec. 19, 2013, Rec. Doc. 12026.

submitted out of its view—in camera and ex parte. Neither Rule 53 nor fundamental fairness countenances that procedure.

**II.     The Other Objectors Fail to Present a Compelling Reason to Withhold Disclosure**

To the extent Class Counsel and the non-parties address Rule 53, they too fail to present any compelling reason to deny BP access to the requested records.

Like the Special Master, their objections address particular documents (and very few at that); they do not provide a reason to deny access categorically to all the requested documents. To the contrary, some of the objections highlight why discovery of those specific documents is necessary.

# REDACTED

Likewise, the objecting parties assert that Special Master Freeh's reports contain "generalizations unsupported by facts"[28]—a contention that again demonstrates the necessity of examining the underlying documentation, not withholding it.

Rather than addressing Rule 53 and the requirements of due process, Class Counsel and the non-parties impugn BP's motives.[29] Their attitude seems to be that BP should "pay and go away." But, given the nature of the Special Master's mandate, there can be no question that BP has a legitimate reason for requesting the documents. As one of the parties owed contractual and fiduciary duties by the CSSP, the one party footing the bill for the settlement program, and the

---

[27]  REDACTED

[28]  Reitano Opp. at 2.

[29]  *See* Class Counsel Opp. at 3; Andry Law Firm Opp. at 5; Lerner Opp. at 2; Reitano Opp. at 2; David Duval Opp. at 6.

party that would benefit more than any other from an efficient facility that paid legitimate claims, BP has every right to demand compliance and accountability by the CSSP.[30]

BP is not requesting that the Court file the requested documents on the public record. There is a strong presumption that BP, as a party, will have access to the evidence underlying the Special Master's report, as compared to the public at large.[31]

REDACTED To the extent that a protective order would be appropriate for certain materials,[33] this Court may enter such an order, but these concerns are not reason to categorically deny BP access.

In short, none of the oppositions raises any compelling reason to bar BP from obtaining the requested documents.

## CONCLUSION

For the foregoing reasons and those set forth in BP's opening brief, BP respectfully requests that the Court (1) direct Special Master Freeh to produce the requested documents and (2) enter an appropriate schedule allowing the Special Master to make production, BP to review the same, and BP to make any filing in response to the Second Report based upon its review of the production.

---

[30] Class Counsel should be joining BP in seeking to ensure that the CSSP is fair, ethical, and efficient. Instead, Class Counsel and certain non-parties use their oppositions to downplay the misconduct at the CSSP. *See* Class Counsel Opp. at 4-5 ("BP comes . . . with isolated or unsubstantiated anecdotes of alleged 'fraud.'"); David Duval Opp. at 4 ("Although Mr. Freeh stated that financial distress 'can lead to susceptibility to bribery and other vulnerabilities,' this general supposition appears to be extraneous to the Second Report").

[31] *See* Fed. R. Civ. P. 53 Advisory Committee's Notes (2003 Amendment) ("there may be circumstances that justify sealing a report or review record against public access," however, "denying access to the report or review materials by the parties . . . should be taken only for the most compelling reasons").

[32] REDACTED

[33] REDACTED

February 14, 2014

James J. Neath
Mark Holstein
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX  77079
Telephone:  (281) 366-2000

Telefax:  (312) 862-2200


Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Telephone:  (202) 942-5000
Telefax:  (202) 942-5999

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 662-5985
Telefax:  (202) 662-6291

Jeffrey Lennard
Keith Moskowitz
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606
Telephone:  (312) 876-8000
Telefax:  (312) 876-7934

**OF COUNSEL**

Respectfully submitted,

 */s/ Kevin M. Downey*
Kevin M. Downey
F. Lane Heard III
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000

Telefax:  (202) 434-5029

 */s/ Don K. Haycraft*
S. Gene Fendler (Bar #05510)
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Telefax:  (312) 862-2200

Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 879-5000
Telefax:  (202) 879-5200

***ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.***
***AND BP AMERICA PRODUCTION COMPANY***

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of February, 2014.

                                                          /s/ Don K. Haycraft
                                                          Don K. Haycraft