# Exhibit 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 |
| This Pleadings applies to: CASE NO. 11-cv-0516; CASE NO. 10-cv-03059 …………………………………………….. | : : : : | SECTION: J JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |

## THE BP PARTIES' ANSWER TO THE STATE OF LOUISIANA'S FIRST AMENDED COMPLAINT

Defendants BP Exploration & Production Inc. ("BPXP"), BP America Production Company ("BPAP"), BP Corporation North America Inc. ("BPCNAI"), BP America Inc. ("BPA"), and BP p.l.c. (collectively, the "BP Parties"), by their undersigned counsel, and pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answer the State of Louisiana's First Amended Complaint as follows:

### INTRODUCTION

1.

The State of Louisiana is the epicenter of the environmental and economic harms suffered as a result of the *Deepwater Horizon* disaster and resulting oil spill. The well blowout, explosion and sinking of the *Deepwater Horizon*, resulting in the largest marine oil spill in U.S. history, occurred approximately fifty miles off Louisiana's coast. Louisiana's shoreline, which was and continues to be significantly oiled as a result of the Gulf Oil Spill, constitutes a vitally important and valuable natural resource of national significance that provides numerous economic, environmental, cultural and recreational benefits. Louisiana's citizens, waters, marshes, wetlands, shoreline, ecology, economy, tourism, fisheries, and wildlife have been profoundly impacted by the Gulf Oil Spill, and will continue to be impacted for years to come.

**ANSWER:**

The BP Parties admit that on April 20, 2010, there was a loss of control of the well being drilled by the vessel *Deepwater Horizon* in the Gulf of Mexico, and that there followed one or more fires and explosions, the sinking of the vessel, and a release of oil into the Gulf of Mexico,

**ANSWER:**

The Court dismissed the State's state law claims in its Order and Reasons As to Motions to Dismiss the Complaints of the States of Alabama and Louisiana, Part of the Pleading Bundle "C", Document No. 4578, filed on November 14, 2011, and the BP Parties are therefore not required to respond to these allegations. To the extent the BP Parties may be deemed to be required to respond to these allegations, the BP Parties deny them to the extent they are directed at the BP Parties.

37.

Venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(a)(2), 33 U.S.C. § 2717(b) and La. R.S. 30:2025 because a substantial part of the events or omissions giving rise to the State's claims occurred in this District and substantial damage occurred in that part of the State encompassing this District.

**ANSWER:**

The BP Parties admit that venue is proper in this district in accordance with the Order of this Court and the JPML, consistent with the limits of what may be properly adjudicated in multidistrict litigation. The BP Parties reserve all of their rights under *Lexecon, Inc. v. Milberg Weiss Bershad Hines & Lerach*, 523 U.S. 26 (1998). The BP Parties deny the remaining allegations of this paragraph.

## FACTUAL ALLEGATIONS

### The Defendants and Their Wrongful Conduct

38.

BP E&P is the holder of Lease No. OCS-G 32306 granted by the United States Minerals Management Service ("MMS")[1] through Lease Sale #206 for Mississippi Canyon Block 252 (the "Lease"). The Lease became effective on June 1, 2008. This Lease allowed the Defendants BP,

---

[1] Secretary of Interior Ken Salazar changed the name of the Mineral Management Service on June 21, 2010, to the Bureau of Ocean Energy Management Regulation and Enforcement.

19

Anadarko and MOEX to drill for oil and perform oil production-related operations at the Macondo Prospect. BP Corporation North America, Inc. was registered with MMS as the financial guarantor for BP E&P.

**ANSWER:**

The BP Parties admit that on March 19, 2008, BPXP acquired a ten-year lease from the MMS to Mississippi Canyon Block 252 (Lease No. OCS-G 32306), which contains the Macondo Well, and that the lease started on June 1, 2008. The BP Parties further admit that BP Corporation North America Inc. was registered with the MMS as the Areawide Guarantor for BPXP. The BP Parties deny the remaining allegations of this paragraph.

39.

Pursuant to a series of agreements, including an Assignment of Record Title Interest in Federal OCS Oil and Gas Lease, and as evidenced by the Macondo Prospect Offshore Deepwater Operating Agreement, or Joint Operating Agreement ("JOA"), filed with and approved by MMS, BP E&P maintained a 65% ownership and operation stake in the Lease, or "Macondo Prospect," and assigned ownership stakes of 25% to Anadarko and 10% to MOEX. BP E&P is the designated "operator and local agent (designated operator) with full authority to act in the lessee's behalf in complying with the terms of the lease and applicable regulations" pursuant to a "Designation of Operator" for the Macondo Prospect.

**ANSWER:**

The BP Parties admit that, on or about November 2009, BP Exploration & Production Inc. and MOEX Offshore 2007 LLC entered into the Macondo Prospect Offshore Deepwater Operating Agreement ("Macondo Operating Agreement"), with an effective date of October 1, 2009. The BP Parties further admit that, on or about December 17, 2009, BP Exploration & Production Inc., Anadarko E&P Company LP ("Anadarko E&P"), and Anadarko Petroleum Corporation ("Anadarko") entered into a Ratification and Joinder of Operating Agreement Macondo Prospect, in which Anadarko E&P and Anadarko "do hereby ratify, confirm, and adopt and join the" Macondo Operating Agreement. The BP Parties admit that the November 18, 2009 Lease Exchange Agreement between BP Exploration & Production Inc. and MOEX Offshore