# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE "OIL SPILL by the OIL RIG | § | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | § | |
| GULF OF MEXICO, on April 20, 2010 | § | SECTION J |
| | § | |
| THIS DOCUMENT RELATES TO: | § | JUDGE BARRIER |
| | § | |
| 2:11-CV-02526 | § | MAG. JUDGE SHUSHAN |

## PLAINTIFF'S MEMORANDUM
## IN SUPPORT OF MOTION TO REMAND

## I.
## NATURE AND STAGE OF THE PROCEEDINGS

Stephen Curtis was a Jones Act seaman assigned to the *Deepwater Horizon* and worked as an assistant driller.[1]  Curtis died as a result of the explosion and fire aboard this vessel on April 20, 2010.[2]

Curtis is survived by his son, Treavor, who was 14 years old at the time of his father's death.[3]  Treavor's mother, Nyoka Curtis, and Stephen's widow, Nancy, filed suit solely on Treavor's behalf in Texas state court.[4]  Curtis asserted claims under the Jones Act and general maritime law against BP Exploration & Production Inc., BP America Inc., and BP Products North America Inc. (collectively "BP") and Halliburton Energy Services, Inc. ("Halliburton").[5] Curtis did not assert claims under the Outer Continental Shelf Lands Act ("OCSLA").[6]

---

[1]   Curtis's First Amended Original Petition and Request for Disclosure is attached as Exhibit 1.
     All  Exhibits  attached hereto are incorporated herein by reference as if fully set forth.

[2]   *Id.* at 3.

[3]   *Id.* at  6.

[4]   *Id.* at 1 and 3.

[5]   *Id.* at  2-6.

[6]   *Id.* at  3-6.

Nevertheless, BP argues that OCSLA governs Curtis's claims and provides a basis for removal.[7]  In this connection, BP argues that "this Court has subject matter jurisdiction under 43 U.S.C. §1349(b)(1)(A)" and "also has subject matter jurisdiction under 28 U.S.C. §1331, . . . ."[8] Halliburton consented to removal.[9]

Curtis re-files her Motion to Remand for consideration by this Court.

## II.
## QUESTION PRESENTED

Has BP discharged its burden in establishing removal jurisdiction?

## III.
## SUMMARY OF ARGUMENT

BP confuses removal jurisdiction with original jurisdiction.  (Indeed the phrase "removal jurisdiction" is conspicuously absent from BP's Notice of Removal.)  Under OCSLA, District Courts have original jurisdiction over claims that arise from events that occur on the Outer Continental Shelf ("OCS") and involve the exploration, development, or production of materials.[10]  Although OCSLA may confer original jurisdiction over those claims (but not exclusive jurisdiction, as BP argues[11]), District Courts do no automatically have removal jurisdiction over them.[12]  As the Fifth Circuit has observed, "OCSLA does not necessarily transform maritime claims falling within its jurisdictional grant into claims arising under federal

---

[7]    Civil Action No. 4-11-cv-2231, Pacer Document 1, BP's Notice of Removal, p. 2.

[8]    *Id.* at 3.

[9]    *Id.* at 4.

[10]    *Hufnagel v. Omega Servs. Indus., Inc.*, 182 F.3d 340, 350 (5th Cir. 1999).

[11]    Civil Action No. 4-11-cv-2231, Pacer Document 1, BP's Notice of Removal, p. 2. The Supreme Court has rejected this interpretation of OCSLA.  *Gulf Shore v. Mobil Oil Corp.*, 453 U.S. 473, 479 (1981) (43 U.S.C. §1333(a)(1) grants only exclusive political jurisdiction, not exclusively judicial jurisdiction).

[12]    *Nase v. Teco Energy, Inc.*, 347 F. Supp. 2d 313, 318 (E.D. La. 2004).

law."[13]  And it is axiomatic that maritime claims do not "arise under" federal law for purposes of removal jurisdiction.[14]  Nor are Jones Act claims removable, as a general rule.[15]

A respected practitioner in this area has observed, "This jurisdictional provision [of OCSLA] is broad and independent of the sections of the OCSLA selecting the applicable law. Nonetheless, the courts have struggled with their relationship between jurisdictional issues and choice of applicable law."[16]  In *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, the Fifth Circuit articulated a three-part test to determine whether state law is adopted as surrogate federal law under OCSLA: "(1) The controversy must arise on a situs covered by OCSLA (i.e., the subsoil seabed, or artificial structures permanently or temporarily attached thereto).  (2) Federal maritime law must not apply of its own force.  (3) The state laws must not be inconsistent with Federal Law."[17]  Under the *PLT* test, the first and second conditions are not met because the *Deepwater Horizon* was not a fixed or stationary platform, *i.e.*, an artificial structure permanently or temporarily attached to the subsoil seabed, and the maritime law applies of its own force.

The test for deciding whether the maritime law governs a tort claim is whether the

---

[13]  *Hufnagel*, 182 F.3d at 350.

[14]  *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 377-79 (1959) (discussing non-removability of saving-to-suitors claim on the ground that, because maritime claims do not arise under the laws or Constitution of the United States, they do not present federal questions.  Curtis filed suit on or, about April 18, 2011, and therefore the amendments to the general removal statute, effective January 6, 2012, are inapplicable.  28 U.S.C. § 1441; *see also Ryan v. Hercules Offshore, Inc.*, 945 F.Supp.2d 772, 774 n. 4 (S.D. Tex. 2013).  As a result, recent District Court opinions finding that general maritime claims are removable under the current version of 28 U.S.C. § 1441 are inapposite.  *See, e.g., Ryan*, 945 F. Supp.2d at 775-78.

[15]  *Holmes*, 437 F.3d at 445.

[16]  Kenneth G. Engerrand, *Primer of Remedies on the Outer Continental Shelf*, 4 Loy. Mar. L.J. 19, 25 (Spring 2005).

[17]  *Union Texas Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).

incident has both a "maritime situs and a connection to a traditional maritime activity."[18] The maritime situs or location test is easily met here. The *Deepwater Horizon* was a sophisticated semi-submersible drilling rig floating on the waters of the Gulf of Mexico at the time of the explosion and was not attached to the seabed of the OCS with anchors or an anchoring system.[19] The Fifth Circuit has long held that a semi-submersible drilling rig is a "vessel," as a matter of law.[20] So too is the traditional maritime activity test easily satisfied. "Oil and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce."[21] Moreover, in an en banc decision, the Fifth Circuit recognized that offshore drilling incidents give rise to maritime tort claims.[22] As a result, the maritime law governs Curtis's claims because, as a matter of law, OCSLA cannot replace the maritime law.[23]

## IV.
## FACTUAL BACKGROUND AND EVIDENCE

Curtis was a Jones seaman assigned to the *Deepwater Horizon* and worked as an assistant driller.[24] Curtis died as a result of the explosion and fire aboard this vessel on April 20, 2010.[25]

---

[18]   *Hufnagel*, 182 F.3d at 351-52 (applying test set forth in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)).

[19]   As a result, the OCSLA situs requirement is not met. *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 784 (5th Cir. 2009) (en banc), *cert. denied*, 130 S.Ct. 3386, 177 L.Ed.2d 302 (2010) ("In a tort action, if the tort occurs on navigable water instead of a fixed platform (or other structure attached to the seabed), the OCSLA situs requirement is not met.").

[20]   *Solana v. GSF Development Driller I*, 587 F.3d 266, 267 (5th Cir. 2009) (reviewing salvors' action, *in rem*, against semi-submersible drilling rig); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 n. 5 (5th Cir. 1986) (finding a semi-submersible drilling rig to be "indisputably a vessel").

[21]   *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538-39 (5th Cir 1986).

[22]   *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1119 (5th Cir. 1995) (en banc).

[23]   *Hugnagel*, 182 F.3d at 350 ("Because OCSLA does not displace general maritime law, substantive maritime law continues to govern where both OCSLA and general maritime law could apply.").

[24]   BP does not deny that Curtis was a Jones Act seaman. Civil Action No. 4:11-cv-2231,  Pacer Document   1, Notice of Removal, p. 5.  Instead BP argues Curtis "intentionally failed to include Transocean . . . as a

In the wake of this casualty, Transocean Offshore Deepwater Drilling, Inc. and its affiliated companies (collectively "Transocean"), owners and operators of the *Deepwater Horizon,* filed a limitation of liability proceeding in the Southern District of Texas, Houston Division.[26]   In its Original Complaint, Transocean represented that the *Deepwater Horizon* was a vessel.[27]

During the subsequent joint investigation conducted by the United States Coast Guard and the Minerals Management Service, Curt Kuchta, the *Deepwater Horizon*'s captain, testified that in his opinion, the *Deepwater Horizon* was a vessel before it sank.[28]  Captain Kuchta agreed that when the *Deepwater Horizon* was "latched up" to the wellhead, it was still under way, *i.e.,* "not at anchor or made fast to shore or ground."[29]  Jimmy Harrell, the Offshore Installation Manager aboard the *Deepwater Horizon*, testified that the drilling system was not an anchoring system.[30]  Thus, at the time of the explosion, the *Deepwater Horizon* was not attached to the seabed of the OCS with anchors or an anchoring system.

## V.
## AUTHORITIES AND ANALYSIS

Pursuant to 28 U.S.C. § 1447(c), Curtis moves the Court to remand this case to the 129th Judicial District Court of Harris County, Texas.

---

defendant in this action."  *Id.*  Of course, the injunction entered in Transocean's limitation proceeding prohibited Curtis from prosecuting his claims against Transocean in this case.

[25]   Exhibit 1, p. 3.

[26]   See In re Triton Asset Leasing GmbH, et al., No. 4:10-cv-01721.

[27]   *Id.* at Pacer Document 1, pp. 2-4.

[28]   *See* Excerpts from the Transcript of the Testimony Given in the Joint United States Coast Guard/Minerals Management Service Investigation attached as Exhibit 2, p. 206.

[29]   *Id.* at 150-51, 155, and 206-07.

[30]   *Id.* at 4-5 and 133.

### A.    Some Basic Principles

Federal jurisdiction is limited.[31] Federal courts "possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree."[32]  The Court should begin with the presumption that a case lies outside its limited jurisdiction.[33]  The burden of establishing removal jurisdiction rests on the party seeking the federal forum.[34]  The removal statute "is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns."[35]  "Any doubt as to the district court's jurisdiction must be resolved in favor of remand."[36]

### B.    This Jones Act Case Is Not Removable

Curtis was a Jones Act seaman assigned to the *Deepwater Horizon* and worked as an assistant driller.[37]  When a plaintiff sues under the Jones Act, the defendant generally cannot remove the case to federal court.[38]  BP does not deny that Curtis was a Jones Act seaman.[39] Instead, BP argues Curtis "intentionally failed to include Transocean . . . as a defendant in this

---

[31]   *See Rasul v. Bush*, 542 U.S. 466,489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511, U.S. 375, 377 (1994).

[32]   *Id*. (quoting *Kokkonen* 511, U.S. at 377).

[33]   *Howrey v. Allstate Inc. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

[34]   *Black v. Xpress Global Sys., Inc.*, Civil Action No. H-09-2912-2009 U.S. Dist. LEXIS 107000, at *5 (S.D. Tex. November 12, 2009).

[35]   *Frank v. Bear Sterns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997).

[36]   *Black*, 2009 U.S. Dist. LEXIS 107000, at *5 (citing *Bosky v. Kroger Tex., L.P.,* 288 F.3d 208, 211 (5th Cir 2002)).

[37]   Exhibit 1, pp. 3-4.

[38]   *Holmes,* 437 F.3d at 445.

[39]   Civil Action No. 4:11-cv-2231, Pacer Document 1, Notice of Removal, p. 5.

action."[40]   Of course, the injunction entered in Transocean's limitation proceeding prohibited Curtis from prosecuting his claims against Transocean in Texas state court.   In addition, BP argues that Curtis "fraudulently joined the BP Defendants in the lawsuit" because BP did not employ Curtis.[41]

Curtis has pleaded that he was a seaman employed by the operator of the *Deepwater Horizon* or BP.[42]   In this way, Curtis has invoked the borrowed servant doctrine which "is the functional rule that places the risk of a worker's injury on his actual rather than his nominal employer.  It permits the injured worker to recover from the company that was actually directing his work."[43]   Steven Curtis is deceased.   But Wyman Wheeler, a tool pusher aboard the *Deepwater Horizon*, has provided an affidavit that shows BP exercised control over operations on the vessel's drill floor.[44]

During Wheeler's time on the *Deepwater Horizon*, especially during the days and hours immediately preceding the explosion and fire that occurred on April 20, 2010, BP employees actually exercised control over the operation while he and Curtis worked on and around the drill floor.   Wheeler regularly carried out orders that BP issued.   BP exercised its control over the drilling operations through its company men.   BP's company men were on the drill floor every day to watch operations and told the toolpushers, like Wheeler, and drillers, like Curtis, exactly what they wanted done.   In this connection, the company men made frequent visits to the rig

---

[40]   *Id*.

[41]   *Id*. at 5-6.

[42]   Exhibit 1, p. 4.

[43]   *Baker v. Raymond Int'l, Inc*., 656 F.3d 173, 178 (5th Cir. 1981) (citing *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224-26 (5th Cir. 1975)); *see also Meinhart v. Halliburton Energy Servs., Inc.*, Civil Action No. H-11-0073, 2011 U.S. Dist. LEXIS 36430, at *10 n.5 (S.D. Tex. Apr. 4, 2011).

[44]   *See*  Affidavit of Wyman W. Wheeler attached as Exhibit 3.

floor.[45]

Consistent with BP's control over the work on the drill floor and the drilling operation, BP controlled the decisions, among other things, on the following: (1) how much casing to run; (2) how much cement to pump and the mud to displace it with; (3) how many centralizers to use (fewer than originally planned); (4) where to use saltwater instead of drilling mud; (5) use of nitrogen cement job; and (6) not to run cement bond log. The work Wheeler and Curtis were performing on the *Deepwater Horizon* was BP's work, *i.e.*, in furtherance of the accomplishment of BP's goal to develop the Macondo 252 well.[46]

As one District Court has observed, a removing party must show there is no reasonable possibility of establishing a Jones Act claim on the merits.[47] BP has failed discharge its burden because BP's affiants, Cynthia Garza and Stuart William Sanaan, were not working aboard the *Deepwater Horizon* in the days and hours immediately preceding the explosion. In contrast, Wheeler was. His affidavit proves that there is a reasonable possibility that Curtis can establish a Jones Act claim on the merits. Therefore, BP's removal was improper, and remand is appropriate.

**C.    Even if OCSLA Applied (Which It Does Not), Federal Courts Do Not Have Exclusive Jurisdiction Over OCSLA Claims**

BP argues that Curtis's claims "are subject to the **exclusive** federal jurisdiction of the federal courts under the provisions of 43 U.S.C. §1331 for several reasons, including the nexus of this case to a federal enclave."[48] But BP fails to account for controlling Supreme Court

---

[45]    Exhibit 3 supports the facts discussed in this paragraph.

[46]    *Id*.

[47]    *Meinhart*, 2011 U.S. Dist. LEXIS 36430, at *9.

[48]    Civil Action No. 4:11-cv-2231, Pacer Document 1, BP's Notice of Removal, p. 3 (emphasis added).

precedent.

OCSLA claims are not subject to the exclusive jurisdiction of the federal courts.  In *Gulf Shore Co. v. Mobil Oil Corp.,* the Supreme Court wrote that "the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action."[49]   In fact, 43 U.S.C. § 1333(a)(1), entitled "Law and Regulations Governing Lands, uses the word "exclusive" only once: "The Constitution and laws and civil and **political** jurisdiction are hereby extended to . . . the outer Continental Shelf . . . as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State . . . ."[50]   The Supreme Court concluded that 43 U.S.C. § 1333(a)(1) grants only exclusive political jurisdiction, **not exclusive judicial jurisdiction**.[51]

Base on *Gulf Shore Co. v. Mobil Oil Corp.,* the Court should reject BP's argument that Curtis's claims are subject to the exclusive jurisdiction of the federal courts under OCSLA.

### D.    Maritime Law, Not OCSLA, Governs Curtis's Claims

It is axiomatic that that maritime claims do not "arise under" federal law for purposes of federal removal jurisdiction.[52]   In *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.,* the Fifth Circuit articulated a three-part test to determine whether state law is adopted as surrogate federal law under OCSLA: "(1) The controversy must arise on a situs covered by OCSLA (*i.e.*, the subsoil seabed, or artificial structures permanently or temporarily attached thereto).  (2) Federal maritime law must not apply of its own force.  (3) The state law must not be inconsistent with

---

[49]    *Gulf Shore Co.*, 453 U.S. at 479.

[50]    43 U.S. §1333(a)(1) (emphasis added).

[51]    *Gulf Shore Co.*, 453 U.S. at 479-80 (emphasis added).

[52]    *Romero*, 358 U.S. at 377-79 (discussing non-removability of saving-to-suitors claims on the ground that, because maritime claims do not arise under the laws or Constitution of the United States, they do not    present federal questions)

Federal Law."[53]   Under the *PLT* test, the first and second conditions are not met because the *Deepwater Horizon* was not a fixed or stationary platform, *i.e.*, an artificial structure permanently or temporarily attached to the subsoil seabed, and the maritime law applies of its own force.

### 1.  The Test for Maritime Tort Jurisdiction

The test for deciding whether the maritime law governs a tort claim is whether the incident has both a "maritime situs and a connection to a traditional maritime activity."[54] Applying the situs or location test, a court "must determine whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water."[55]  The connection test raises two issues.  First, a court "must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce."[56]   Second, a court "must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."[57]   The key inquiry is whether the alleged tortious activity is "so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand."[58]

### 2.  Curtis's Claims Have a Maritime Location Because The *Deepwater Horizon* Was a Vessel on Navigable Waters

The *Deepwater Horizon* was a sophisticated semi-submersible drilling rig with state-of-

---

[53]   *PLT*, 895 F.2d at 1047.

[54]   *Hufnagel*, 182 F.3d at 351-52 (applying test set forth in *Grubart*, 513 U.S. at 534).

[55]   *Grubart*, 513 U.S. at 534 (citing 46 U.S.C. §740).

[56]   *Id*. (internal quotations and citations omitted).

[57]   *Id*. (internal quotations omitted).

[58]   *Id*. at 539-40.

the -art navigation and propulsion systems (technically referred to as a "Mobile Offshore Drilling Unit Dynamically Positioned Vessel (MODU-DPV)" that was floating on the waters of the Gulf of Mexico at the time of explosion.  The Fifth Circuit has long held that a semi-submersible drilling rig is a "vessel," as a matter of law.[59]

Transocean, in its capacity as owner and operator of the *Deepwater Horizon,* filed a limitation of liability proceeding in the Southern District of Texas, Houston Division.[60]  In its Original Complaint, Transocean represented that the *Deepwater Horizon* was a vessel.[61]

During the subsequent joint investigation conducted by the United States Coast Guard and the Minerals Management Service[62], Curt Kuchta, the *Deepwater Horizon's* captain, testified that in his opinion, the *Deepwater Horizon* was a vessel before it sank.[63]  Captain Kutcha agreed that when the *Deepwater Horizon* was "latched up" to the wellhead, it was still under way, *i.e.,* "not at anchor or made fast to shore or ground."[64] Jimmy Harrell, the Offshore Installation Manager aboard the *Deepwater Horizon*, testified that the drilling system was not an anchoring system.  Thus, at the time of the explosion, the *Deepwater Horizon* was not attached to the seabed of the OCS with anchors or an anchoring system.[65]

---

[59]   *See, e.g., Solana,* 587 F.3d at 267;  *Fontenot*, 791 F.2d at 1214 n. 5.

[60]   See In re Triton Asset Leasing GmbH, et al., Civil Action No. 4:10-cv-01721.

[61]   *Id*. at Pacer Document 1, pp. 2-4.

[62]   One District Court observed that the Minerals Management Service was renamed the Bureau of Ocean Energy Management, Regulation, and Enforcement as of June 21, 2010.  *Abbott v. BP Exploration and Prod.  Inc*., Civil Action No. H-09-1193, 2011 WL 923504, at *1 n. 3 (S.D. Tex. March 15, 2011). Because the *Deepwater Horizon* investigation was launched before June 10, 2010, Curtis will refer to the  agency  as  the Minerals Management Service.

[63]   *See* Exhibit 2, p. 206.

[64]   *Id*. at 150-51, 155 and 206-07.

[65]   *Id*. at 4-5 and 133.

Accordingly, the Court should conclude that the *Deepwater Horizon* was a vessel on navigable waters, and therefore, the maritime situs or location prong of the test for maritime tort jurisdiction is met.  In addition, the Court should conclude that the OCSLA situs requirement is not met because the tort occurred on navigable waters instead of a fixed platform or other structure attached to the seabed of the OCS.[66]

### 3.   Curtis's Connection to a Traditional Maritime Activity

There is no dispute that the crew of the *Deepwater Horizon* was performing drilling and completion operations at the time of the explosion.  This event and its aftermath resulted in a well publicized "disruptive impact on maritime commerce."   In *Coats v. Penrod Drilling*, the plaintiff suffered a severe knee injury when the jack-up rig's bullplug failed during a pressure test conducted while the vessel was sitting in navigable waters.[67]   On these facts, an en banc Fifth Circuit found that a potentially disruptive impact on maritime commerce existed.[68]   Based on *Coats*, the Court should find that the death and injuries resulting from the explosion aboard the *Deepwater Horizon* satisfy "the disruptive impact" issue.

The "activity traditionally subject to admiralty law" issue is easily satisfied because "[o]il and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce."[69]   Moreover, the en banc Fifth Circuit in *Coats* observed that "[p]roviding compensation for shipboard injuries is a traditional function of the admiralty laws."[70]   Curtis has brought suit for compensation for death suffered aboard the *Deepwater Horizon*.  Accordingly, the Court should

---

[66]   *Grand Isle*, 589 F.3d at 784.

[67]   *Coats*, 61 F.3d at 1117.

[68]   *Id*. at 1119.

[69]   *Theriot*, 783 F.2d at 538-39.

[70]   *Coats*, 61 F.3d at 1119.

conclude that "activity traditionally subject to admiralty law" is met, and Curtis has alleged a maritime tort.[71]

### E.      The Recent Amendments to 28 U.S.C. § 1441 Are Inapplicable

Curtis filed suit on or about April 18, 2011, and therefore, the amendments to the general removal statute, effective January 6, 2012, are inapplicable.[72]   As a result, recent District Court opinions finding that general maritime claims are removable under the current version of 28 U.S.C. § 1441 are inapposite.[73]

### VI.
### CONCLUSION

Based on the foregoing authority and analysis,  Plaintiff Nyoka Curtis, as Next Friend of Treavor Ray Curtis, a Minor, and Nancy Curtis, in Her Capacity as Personal Representative of the Estate of Stephen Ray Curtis and His Beneficiaries and on Behalf of Treavor Ray Curtis, a Minor respectfully requests that the Court remand this case to the 129th Judicial District Court of Harris County, Texas.

---

[71]   *See Strong v. B.P. Exploration & Prod., Inc.*, 440 F.3d 665, 669 (5th Cir. 2006) (wireline worker injured aboard a lift boat on OCS held to have alleged maritime tort for failure to provide a safe place to work).

[72]    28 U.S.C. § 1441; *see also Ryan v. Hercules Offshore, Inc.,* 945 F. Supp.2d 772, 774 n. 4 (S.D. Tex. 2013).

[73]   *See, e.g., Ryan,*  945 F. Supp.2d at 775-78.

Respectfully submitted,

**STEVENSON & MURRAY**

By: ___*John W. Stevenson, Jr.*_____
      **JOHN W. STEVENSON, JR.**
      Attorney-In-Charge
      Texas Bar No. 01159820
      **JOHN C. SCHWAMBACH, JR.**
      Texas Bar No. 19196050
      Weslayan Tower, Suite 750
      24 Greenway Plaza
      Houston, Texas  77046-2416
      (713) 622-3223
      (713) 622-3224 (fax)

**KELLY & TOWNSEND, LLC**

By: *_/s/ Taylor Townsend_____*
      **TAYLOR TOWNSEND**
      Louisiana State Bar. No. 20021
      137 Saint Dennis St.
      Natchitoches, LA.  71457
      (318) 352-2353
      (318) 352-8918 (fax)

      Counsel for Nyoka Curtis, as Next
      Friend of Treavor Ray Curtis, a Minor, *et al.*

<u>**CERTIFICATE OF SERVICE**</u>

We hereby Certify that that the above and foregoing *Plaintiff's Memorandum In Support of Motion to Remand* has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 18th day of February, 2014.

/s/ John W. Stevenson, Jr.

**JOHN W. STEVENSON, JR.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Motion to Remand has been forwarded to all known counsel of record pursuant to the Federal Rules of Civil Procedure on this the 18th day of February, 2014.

Mr. Thomas W. Taylor
**ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, Texas  77002

Mr. Christopher B. McDaniel
**HORTMAN HARLOW BASSI
ROBINSON & MCDANIEL, PLLC**
Post Office Drawer 1409
Laurel, Mississipi  39441

Mr. Richard C. Godfrey, P.C.
Mr. J. Andrew Langan, P.C.
**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, Illinois  60654

Mr. R. Alan York
Mr. Jerry C. von Sternberg
**GODWIN RONQUILLO PC**
1331 Lamar, Suite 1665
Houston, Texas  77010

Mr. Donald E. Godwin
Mr. Bruce W. Bowman, Jr.
Ms. Jenny L. Martinez
Mr. Floyd R. Hartley, Jr.
**GODWIN RONQUILLO PC**
1201 Elm Street, Suite 1700
Dallas, Texas  75270-2041

_John W. Stevenson, Jr._
**JOHN W. STEVENSON, JR.**