**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "*Deepwater* | : | MDL No. 2179 |
| *Horizon*" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates to: 10-4536 | : | JUDGE BARBIER |
| …………………………………………... | : | MAG. JUDGE SHUSHAN |

<u>**CLEAN WATER ACT – PENALTY PHASE**</u>

<u>**MEMORANDUM IN SUPPORT OF MOTION OF THE UNITED STATES**</u>
<u>**TO LIMIT EVIDENCE ABOUT THE "SERIOUSNESS" FACTOR**</u>

*Table of Contents*

I.   THERE IS ALREADY MORE THAN ENOUGH EVIDENCE BEFORE THE
     COURT TO FIND THAT THE SPILL WAS GRAVELY SERIOUS IN ALL
     MATERIAL RESPECTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.  As a Matter of Law, the Threat of Potential Harm is Sufficient to Establish
         Seriousness; No Quantitative Proof is Required. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.  Facts in the Record Demonstrate that the Macondo Oil Spill Resulted in
         Gravely Serious Actual Human Health, Environmental, and Economic
         Harms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     C.  The Court May Rely on the Evidence Cited in Appendix A to Conclusively
         Establish that the Violation was Serious. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     D.  BP Should be Judicially Estopped From Presenting Evidence Suggesting
         that the Macondo Oil Spill was not Gravely Serious or did not Cause
         Potential and Actual Harm, Including Environmental, Human Health,
         and Economic Harm. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

II.  BP'S PROPOSED APPROACH WILL GREATLY LENGTHEN TRIAL, WILL
     INVITE PREMATURE FACTFINDING, WILL BURDEN THE COURT, AND WILL
     OTHERWISE PREJUDICE THE UNITED STATES AND LITIGANTS IN OTHER
     CASES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

     A.  BP's Approach will Lengthen and Delay the Trial of the Penalty Phase. . . . . . . . . . .8

     B.  BP's Approach Could Impact Other Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

     C.  BP's Proposed Premature Discovery into the NRD Assessment Will
         Significantly Disrupt and Burden this Multi-Sovereign Process . . . . . . . . . . . . . . . .9

         1.  BP Already Has Terabytes of NRD Assessment Data, and Other Assessment
             Work is Protected From Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

         2.  BP's Proposed Discovery into the NRD Assessment Will Cause
             Significant Delay and Burden to the State and Federal Natural
             Resource Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

III. ALTERNATIVELY, LIMITING THE NUMBER OF EXPERTS ON
     ENVIRONMENTAL ISSUES, AND LIMITING EVIDENCE TO DOCUMENTS
     AND DATA IN THE PUBLIC DOMAIN ON THOSE ISSUES IS A FAIR AND
     REASONABLE LIMITATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..15

*Table of Authorities*

## CASES

*Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295 (5th Cir. 1970) ...................................... 6

*Center for Biological Diversity, Inc. v. BP America Co., et al.,*
704 F.3d 413 (5th Cir. 2013) ..................................................................................................... 7

*E.I. Du Pont De Nemours & Co. v. Cullen,* 791 F.2d 5 (1st Cir. 1986) ......................................... 6

*Gill v. Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391 (1st Cir. 2005) ................................. 12

*In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*,
   No. 2:10-md-02179 (E.D. La. Dec. 24, 2013) Rec. Doc. 12055 (Order and Reasons
   Responding to Remand of Business Economic Loss Issues)...................................................... 8

*In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*,
   No. 2:10-md-02179 (E.D. La. Feb. 02, 2011) Rec. Doc. 2239 (Report on "Framework for
   Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill") ..... 10

*In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*,
   No. 2:10-md-02179 2012 WL 395048 (E.D. La. Feb. 07, 2012) Rec. Doc. 5603 (Order and
   Reasons Regarding Motion in Limine to Exclude Settlement Evidence)................................... 7

*In re Tug Ocean Prince, Inc.*, 584 F.2d 1151 (2nd Cir. 1978) ....................................................... 3

*Matter of Missionary Baptist Found of Am., Inc.*, 712 F.2d 206 (5th Cir. 1983) ..................... 6, 7

*Nw. Envtl. Advocates v. U.S. E.P.A.*, CIV 05-1876-HA, 2009 WL 349732
   (D. Or. Feb. 11, 2009)............................................................................................................. 11

*Patterson v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002) .............................................. 12

*The Procter & Gamble Co. v. Haugen*, 427 F.3d 727 (10th Cir. 2005) ....................................... 12

*Santibanez v. Wier McMahon & Co.*, 105 F.3d 234 (5th Cir. 1997) .............................................. 6

*Sierra Club v. Cedar Point Oil. Co.*, 73 F.3d 546 (5th Cir. 1996) ................................................. 2

*Sierra Club v. El Paso Gold Mines, Inc.*, No. Civ. A. 01 PC 2163 OES, 2003 WL 25265873
   (D. Colo. Feb. 10, 2003) ........................................................................................................... 3

*Sierra Club v. MasTec N. Am.*, Civ. Nos. 03-1697-HO, 06-6071-HO, 2009 WL 426205
   (D. Or. Feb. 19, 2009)................................................................................................................ 3

*Skelton v. U.S. Postal Serv.*, 678 F.2d 35 (5th Cir. 1982).......................................................... 11

*St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169 (10th Cir. 1979) ..................................... 6

*Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406 (W.D. Tex. 2009)............................................ 11

*Taylor v. Charter Med. Corp.*, 162 F.3d 827 (5th Cir. 1998) .......................................... 7

*Tull v. United States*, 481 U.S. 412 (1987) ...................................................................... 2, 4

*United States v. Allegheny Ludlum Corp.*, 187 F. Supp. 2d 426 (W.D. Pa. 2002) ........................ 4

*United States v. Author Services, Inc.*, 804 F.2d 1520 (9th Cir. 1986)........................................... 6

*United States v. BP Exploration and Production, Inc.,* No. 2:12-cr-00292 (E.D. La. Jan. 30, 2013), Rec. Doc. 65 (*Reasons for Accepting Plea Agreement*) .................................................. 7

*United States v. BP Exploration and Production, Inc.,* No. 2:12-cr-00292 (E.D. La. 2013) ......... 7

*United States v. Citgo Petroleum Corp.*, 723 F.3d 547 (5th Cir. 2013) ........................................ 2

*United States v. CITGO Petroleum Corp.*, CIVA 2:08-CV-00893, 2010 WL 1754167 (W.D. La. Apr. 29, 2010)........................................................................................................ 11

*Unites States v. Gulf Park Water Co., Inc.*, 14 F. Supp. 2d 854 (S.D. Miss. 1998) ..................... 3

*United States v. Mac's Muffler Shop, Inc.*, No. C85-138R, 1986 WL 15443 (N.D. Ga. Nov. 4, 1986)........................................................................................................... 4

*United States v. Smithfield Foods, Inc.*, 972 F. Supp. 338, (E.D. Va. 1997)............................... 3

*United States v. Thompson,* 837 F.2d 673 (5th Cir. 1988)............................................................ 5

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ...................................................................... 11

*Verzwyvelt v. St. Paul Fire & Marine Ins. Co.*, 175 F. Supp. 2d 881 (W.D. La. 2001) ................ 5

*Weber v. Trinity Meadows Raceway, Inc.*, No. 4:92-CV-267-Y, 1996 WL 477049 (N.D. Tex. June 20, 1996)............................................................................................................ 4

*Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, No. Civ.A. 97-3012, 1998 WL 249217 (E.D. La. May 14, 1998)......................................................................... 12

## FEDERAL STATUTES

16 U.S.C. §§ 1801-1884 ................................................................................................... 10

33 U.S.C. § 1321(b)(8) ...................................................................................................... 1, 2

**FEDERAL REGULATIONS**

15 C.F.R. Part 990...................................................................................................................... 11

**FEDERAL RULES**

Fed. R. Civ. P. 26(b)(2)............................................................................................................ 1, 12

Fed. R. Evid. 26(b)(2)(C)(iii)...................................................................................................... 12

Fed. R. Civ. P. 26(b)(4)............................................................................................................. 11

Fed. R. Evid. 201(b)..................................................................................................................... 6

Fed. R. Evid. 201(b)(2)................................................................................................................ 6

Fed. R. Evid. 403 ......................................................................................................................... 5

Pursuant to Rules 403 and 201 of the Federal Rule of Evidence, the United States moves the Court for an Order limiting evidence (and thus, limiting discovery under Fed. R. Civ. P. 26(b)(2)) regarding the impacts of the Macondo Oil Spill on (1) the environment, (2) human health, and (3) private parties' economic interests. The Proposed Order (attached) includes an Appendix A that collects evidence already in the MDL 2179 record or otherwise admissible in the Penalty Phase. Based on those facts, the Court should prohibit discovery or admission of evidence on the three topics enumerated above.[1]

The basis of this motion is that little or no new evidence is required on the "seriousness of the violation" penalty factor in Clean Water Act Section 311(b)(8). On the three factual issues relating to the seriousness factor – the impact of the spill on human health, the environment, and private parties' welfare and economic interests – the Court already has more definitive evidence to make this determination under the Clean Water Act than is required.[2] Based on existing evidence and information, there is no reasonable dispute that the violation at issue in this case was gravely serious. BP cannot now reasonably dispute this conclusion, because it is established by BP's own prior public statements, taken from BP's civil and criminal settlements and elsewhere, and from conclusions of this Court. *See* Appendix A to Proposed Order.

On the other hand, BP proposes broad trial presentations and discovery into the ongoing natural resource damages assessment ("NRD Assessment") being conducted by several federal and state agencies. BP clearly states that:

---

[1] As an alternative, the Court could limit each side's presentation of further evidence on environmental harm to no more than one expert who will rely only on information in the public domain or already in the record, and bar further discovery on this topic in the Penalty Phase. *See* Part III, *infra*.

[2] The United States reserves the right to argue that evidence on other factual topics also relate as a matter of law to seriousness, such as the evidence from Phase One on BP's poor risk management and drilling practices or from Phase Two on BP's source control efforts, or evidence that BP will seek to adduce in Phase Three about the size of the response actions. However, it is the three topics identified in this motion (human health, economic damages, environmental harm) that pose the risk of needless but massive discovery or trial presentation.

"onshore" environmental issues would be fair game for the Penalty Phase. These onshore environmental issues could include alleged impacts on, and recovery of, beaches, marshes and wetlands in the Gulf of Mexico, as well as impacts to animals that live in those habitats, such as birds.

BP's Memorandum Regarding the Appropriate Scope of the CWA Penalty Phase and Related Discovery, Rec. Doc. 12340, at 4. BP also specifically states that it wants discovery of the NRD Assessment as to these issues. *Id.*; *see also* BP's Proposed Order, Rec. Doc. 12340-1 ¶ 4; *see* BP's CWA Penalty Phase Draft Requests for Production (Exh. 1).[3]

The broad and detailed discovery, trial presentation, and factual findings sought by BP are not only unnecessary to the Penalty Phase, but will greatly lengthen and complicate trial, will be needlessly burdensome to the United States, will disrupt the ongoing NRD Assessment process, and (last but not least) will invite the Court to make factual findings that could affect litigants in many other cases where such detailed determinations actually are required.

I.     **THERE IS ALREADY MORE THAN ENOUGH EVIDENCE BEFORE THE COURT TO FIND THAT THE SPILL WAS GRAVELY SERIOUS IN ALL MATERIAL RESPECTS.**

   A.     **As a Matter of Law, the Threat of Potential Harm is Sufficient to Establish Seriousness; No Quantitative Proof is Required.**

Section 311(b)(8) of the Clean Water Act ("CWA") (33 U.S.C. § 1321(b)(8)) provides eight penalty factors ("the factors") that the Court must consider during the third Phase of this litigation (the "Penalty Phase"). In assessing a penalty, the Court must consider all of the CWA penalty factors, but a "district court's analysis of those factors is highly discretionary." *United States v. Citgo Petroleum Corp.*, 723 F.3d 547, 551 (5th Cir. 2013); *see also Sierra Club v. Cedar Point Oil. Co.*, 73 F.3d 546, 576 (5th Cir. 1996) (quoting *Tull v. United States*, 481 U.S. 412, 427 (1987)).

---

[3] Anadarko, on the other hand, "believes that the pre-existing evidentiary record is sufficient and allowing anything more than extremely limited (if any) evidence would invade the province of the unripe and unscheduled Natural Resource Damage (NRD) phase," and thus agrees with the position of the United States in this Motion. Case Management Submission by Anadarko, Rec. Doc. 12341, at 2.

Regarding the "seriousness of the violation" factor, the law does not require a detailed accounting or quantification of harms to the environment, to economic interests, or to human health; rather, all that is required to establish the seriousness of the Macondo Oil Spill is the risk of *potential* harm. *United States v. Smithfield Foods, Inc.*, 972 F. Supp. 338, 344 (E.D. Va. 1997) ("The court may justifiably impose a significant penalty if it finds there is a risk or potential risk of environmental harm, even absent proof of actual deleterious effect."); *Sierra Club v. El Paso Gold Mines, Inc.*, No. 01 PC 2163 OES, 2003 WL 25265873, at *8 (D. Colo. Feb. 10, 2003) ("actual harm to the environment…need not be proven to establish that substantial penalties are appropriate in a Clean Water Act case."); *see also United States v. Gulf Park Water Co., Inc.*, 14 F. Supp. 2d 854, 859-60 (S.D. Miss. 1998); *Sierra Club v. MasTec N. Am.*, No. 03-1697-HO, 06-6071-HO, 2009 WL 426205, at *4 (D. Or. Feb. 19, 2009). Indeed, Courts have historically recognized that the act of discharging oil alone constitutes a grave violation of the CWA:

> Dumping and accidental spilling of oil constitutes a major pollution threat to the water resources of the nation. It can destroy or limit marine life, ruin wild life habitats, kill birds, limit or destroy the recreational value of ocean beaches, lake shores and river stretches, contaminate water supplies and create fire hazards. Congress has repeatedly indicated its high regard for our water quality and, conversely, its disdain for pollution.

*In re Tug Ocean Prince, Inc.*, 584 F.2d 1151, 1161 (2nd Cir. 1978). Accordingly, the fact that the Macondo Oil Spill resulted in the discharge of millions of barrels of oil alone is a strong indicator of the seriousness of BP's and Anadarko's violation.

In *Gulf Park Water Co.*, the Court found that "the defendant's discharges constituted both an actual and a potential threat to the public health and environment," but explained that:

> The United States is not required to establish that environmental harm resulted from the defendants' discharges or that the public health has been impacted due to the discharges, in order for this Court to find the discharges "serious".… Under the law, the United States does not have the burden of quantifying the harm caused by the defendants.

14 F. Supp. 2d at 859-60. This is supported by the fact that civil penalties are not tied to damages

actually suffered, they are imposed to punish and deter. *Tull v. United States,* 481 U.S. at 422-23;

*Weber v. Trinity Meadows Raceway, Inc.*, No. 4:92-CV-267-Y, 1996 WL 477049, at *15 (N.D.

Tex. June 20, 1996); *United States v. Mac's Muffler Shop, Inc.*, No. C85-138R, 1986 WL 15443,

at *9 (N.D. Ga. Nov. 4, 1986). Further, courts have recognized that proof of potential harm,

rather than actual harm, is particularly appropriate in cases where science establishing the

presence or absence of environmental harm is incomplete. *United States v. Allegheny Ludlum

Corp.*, 187 F. Supp. 2d 426, 430-33 (W.D. Pa. 2002) (citations omitted). Such is the case here.

>   **B.      Facts in the Record Demonstrate that the Macondo Oil Spill Resulted in
>           Gravely Serious Actual Human Health, Environmental, and Economic
>           Harms.**

Because the threshold for establishing whether the Macondo Oil Spill was serious only

requires a showing of *potential* harm, there is no need for the Court to take extensive evidence

regarding the quantity of *actual* harm or the likely duration of potential future harms.

Nonetheless, there is more than enough undisputed evidence in this case to conclude that the

*actual* human health, environmental, and economic harm from the violation was gravely serious.

Evidence on the seriousness of the violation that cannot reasonably be disputed is

assembled in Appendix A. *See* Appendix A to Proposed Order. Specifically, the facts presented

in Appendix A conclusively establish that the violation had serious consequences for the

environment, human health, and private parties who suffered economic damages. The facts set

forth in Appendix A are sourced from: (1) statements by BP almost entirely from the MDL 2179

record (the two exceptions are statements by BP to a Judge in the Eastern District of Louisiana

(Exh. 6) and a statement to the public (Exh. 7)); (2) statements in prior orders by this Court; and

(3) a statement by the claims administrator of the Economic Settlement that is in the record.

It is a matter of public record that people were killed and injured in the explosion and that

others were injured during the response action. Appendix A ¶¶ 2-3, 6, 18-25. Regardless of

whether BP could submit evidence that there is a low risk of future long-term health impacts, the blowout and spill caused undisputed immediate and gravely serious human health impacts.

The facts in Appendix A establish that serious actual harm to the environment occurred. Large reaches of habitat were oiled, fisheries were closed, and animals died. Appendix A ¶¶ 3, 7-17. Despite the undisputable facts showing serious harm to the environment, BP proposes to produce evidence during the Penalty Phase to establish that environmental harm caused by the Macondo Oil Spill has recovered. This argument will be of interest in future NRD litigation, but it is completely irrelevant to the Penalty Phase: the seriousness factor asks whether a violation caused a risk of harm, not what harm can be established or still exists on the day the CWA penalty case is tried. Unlike the later NRD litigation, in the Penalty Phase, quantification of environmental harm is not required. Thus, the extent of environmental recovery, or the amount of expected additional long term chronic environmental harm that the spill may cause, is irrelevant. For example, even if BP could prove that in the future no birds will suffer long-term harms, the birds killed by oil from the spill remain dead.

Regarding economic damages, individuals and businesses actually suffered losses, and the fact that BP has agreed to compensate private parties for economic losses in an uncapped settlement establishes that many thousands of Gulf residents suffered serious inconvenience, hardships, and losses as a result of the Macondo Oil Spill. Appendix A ¶¶ 2, 4, 6, 26-36.

**C.      The Court May Rely on the Evidence Cited in Appendix A to Conclusively Establish that the Violation was Serious.**

The Court has broad discretion to guard against admission of evidence that is cumulative or causes a waste of time or undue delay. Fed. R. Evid. 403; *see Verzwyvelt v. St. Paul Fire & Marine Ins. Co.*, 175 F. Supp. 2d 881, 888 (W.D. La. 2001); *United States v. Thompson*, 837 F.2d 673, 677 (5th Cir. 1988). Given the evidence discussed in Appendix A, the Court should

exercise its discretion here.

Moreover, Federal Rule of Evidence ("FRE") 201(b) allows courts to take judicial notice of adjudicative facts not reasonably in dispute that are either "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Fifth Circuit has held that a "District Court clearly [has] the right to take notice of its own files and records and it [has] no duty to grind the same corn a second time." *Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970). This rule extends to previous cases over which the same judge presided and allows courts to draw reasonable inferences from records in prior related proceedings. *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 240 (5th Cir. 1997) (a district court judge may "take judicial notice in the present case of the evidence that he had heard and the findings that he had made as part of the trial over which he presided."); *Matter of Missionary Baptist Found of Am., Inc.*, 712 F.2d 206, 211(5th Cir. 1983) (a court may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom.).

The facts presented in Appendix A satisfy FRE 201(b)(2): they are from the record in MDL 2179 or related proceedings, they are BP's statements, and they are not reasonably in dispute. As repeatedly stated in the Fifth Circuit, and echoed by others,[4] the practice of taking notice of a court's own record to facilitate expedience and find facts is well established. Further, in Phase 1, BP "respond[ed] to the PSC and the United States's argument that the terms of settlements may be relevant to damage or penalty calculations by suggesting that the Court may consider these facts via stipulation or judicial notice." Order and Reasons Regarding Motion in

---

[4] *See e.g.*, *United States v. Author Servs., Inc.*, 804 F.2d 1520, 1523 (9th Cir. 1986); *E.I. Du Pont De Nemours & Co. v. Cullen*, 791 F.2d 5, 7 (1st Cir. 1986); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979).

Limine to Exclude Settlement Evidence at *2, *In Re: Oil Spill by the Oil Rig "Deepwater*

*Horizon" in the Gulf of Mexico, on April 20, 2010*, No. 2:10-md-02179, 2012 WL 395048 (E.D.

La. Feb. 7, 2012), Rec. Doc. 5603. The Court should also feel comfortable taking judicial notice

of the facts included in Appendix A based on the opinions and conclusions of other Courts in this

Circuit on other matters related to the Macondo Oil Spill. For example, the following statement

by Judge Vance in the context of BP's criminal plea agreement is not reasonably in dispute:

> There is no question that BP has committed serious offenses. BP's conduct resulted in the
> tragic deaths of 11 individuals and caused enormous environmental damage from the
> discharge of oil into the Gulf of Mexico, which has had a disastrous impact on the Gulf
> Coast Region…. The April 20, 2010 blowout resulted in discharge of harmful quantities
> of oil into the Gulf of Mexico on the seabed, in the water column, at the surface, and
> across hundreds of miles of beaches and coastline in the states of Louisiana, Mississippi,
> Alabama, and Florida. The discharge of oil killed protected migratory birds including
> brown pelicans, laughing gulls, and northern gannets, among others. The Deepwater
> Horizon oil spill was the largest marine oil spill in the history of the United States and the
> petroleum industry.[5]

The Fifth Circuit has also had opportunity to conclude that the Macondo Oil Spill was

serious. For example, in its decision in *Center for Biological Diversity, Inc. v. BP America Co.,*

*et al*., the Fifth Circuit Court stated that, "[o]n April 20, 2010, an explosion on Deepwater

Horizon tragically killed eleven people and accompanied an oil spill that caused an

environmental disaster of immense proportions."[6] These statements are not included in Appendix

A because that document is limited to statements by BP and from the record of MDL 2179.[7]

The Court should employ its discretion under Rules 403 and 201 to rely on the facts in

Appendix A and sign the attached Proposed Order, which limits evidence on the seriousness

factor, eliminates the need for evidence at trial on these issues, and prohibits discovery.

---

[5] Reasons for Accepting Plea Agreement at 4-5, *United States v. BP Exploration and Production, Inc.*,
No. 2:12-cr-00292 (E.D. La. Jan. 30, 2013), Rec. Doc. 65 (Exh. 5).
[6] *Center for Biological Diversity, Inc. v. BP America Co., et al*., 704 F.3d 413, 418 (5th Cir. 2013).
[7] Still, the Court can also take judicial notice of statements from the record in BP's criminal case, (*United
States v. BP Exploration and Production, Inc.*, No. 2:12-cr-00292 (E.D. La. 2013)), as long as they are
not reasonably in dispute. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829-30 (5th Cir. 1998); *Matter of
Missionary Baptist Found of Am., Inc.*, 712 F.2d at 211.

**D.  BP Should be Judicially Estopped From Presenting Evidence Suggesting that the Macondo Oil Spill was not Gravely Serious or did not Cause Potential and Actual Harm, Including Environmental, Human Health, and Economic Harm.**

This Court recently addressed the issue of judicial estoppel in the context of the MDL, so we do not rehash the standard here.[8] Using this Court's discussion of judicial estoppel as guidance, BP should be estopped from arguing that the Macondo Oil Spill did not have a serious impact on the environment, human health, and private parties' economics because of statements by BP and facts included in Appendix A, and other statements made by BP throughout this case.

**II.  BP'S PROPOSED APPROACH WILL GREATLY LENGTHEN TRIAL, WILL INVITE PREMATURE FACTFINDING, WILL BURDEN THE COURT, AND WILL OTHERWISE PREJUDICE THE UNITED STATES AND LITIGANTS IN OTHER CASES.**

**A.  BP's Approach Will Lengthen and Delay the Trial of the Penalty Phase.**

BP's proposed approach to the seriousness factor will significantly increase the length of the Penalty Phase trial. Without a ruling from the Court limiting evidence of seriousness, Parties will be required to put on mini-trials regarding the human health, environmental, and economic components of this factor. Many pages of briefing could be spent detailing all of the evidence needed to make factual determinations as to the actual extent of any one of these components.

Even more troubling than the added delay and length of trial is the incorrect implication that the Court cannot assess a Clean Water Act civil penalty unless and until it determines the actual extent of the human health, environmental, and economic impacts of the spill. As set forth in Section I.A. above, this is wrong as a matter of law. But it makes no sense as a practical matter either. Accepting the implication of BP's argument, the Court will have to fully try cases for each of these three components, a vast undertaking. On the other hand, if the Court were to

---

[8] Order and Reasons Responding to Remand of Business Economic Loss Issues at 11-18, *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, No. 2:10-md-02179 (E.D. La. Dec. 24, 2013), Rec. Doc. 12055 (internal citations omitted).

conduct "mini-trials" for each of these components, there is the obvious risk that crucial evidence will be either overlooked due to abbreviation or missed because the evidence is still being developed. If a penalty were assessed based on an assessment of actual harm in any one of these areas that later turns out to be inaccurate, then (following BP's apparent reasoning) the penalty will be in error and should be revisited. A corollary of this approach is that no Clean Water Act penalty can be assessed at all until the actual extent of the human health, environmental, and economic impacts have been conclusively determined. Such a conclusion is at odds with the Clean Water Act penalty case law cited above, and for the same reasons, no additional evidence on the seriousness factor is necessary here.

**B.      BP's Approach Could Impact Other Cases.**

Making the kinds of findings of fact contemplated by BP's proposed approach could possibly prejudice the litigants that have brought and will bring cases about the human health, environmental, and economic harms caused by the spill. The United States will be a plaintiff, with the Gulf States, in the NRD litigation. It is not in the Court's or the Parties' interest for the Court to make factual findings now on a limited and premature record that will either bind the parties in later NRD litigation notwithstanding better information, or that will prove to be inaccurate after a full presentation of evidence in the NRD case. The same dynamic applies to the many cases pending in this Court and elsewhere about the effects of the Spill on human health and economic impacts to individuals and businesses.

**C.      BP's Proposed Premature Discovery into the NRD Assessment Will Significantly Disrupt and Burden this Multi-Sovereign Process.**

To support its environmental recovery argument, BP proposes broad discovery into the NRD Assessment. *See* BP's CWA Penalty Phase Draft Requests for Production, Exh. 1. Producing everything requested will require document productions larger than Phases One and

Two combined (requiring hundreds of agency employees to stop NRD Assessment work to produce many terabytes of documents[9]) and will delay the Penalty Phase for months, if not years – all with the hope of demonstrating that long-term environmental damage could be less than expected or that some recovery is occurring. Even if the information sought by BP's proposed discovery did have some relevance to the Penalty Phase, such relevance is heavily outweighed by the burden of producing it, the interruption of the NRD Assessment it will cause, and the unfair early discovery BP will gain into what will someday be one or more NRD cases.

NRD Assessment discovery during the Penalty Phase should also be prohibited because: BP is already in possession of many terabytes of assessment related data; much of the unproduced NRD Assessment work may be privileged; and such unrestrained discovery will be enormously burdensome for this Court and the United States, will not aid the work necessary for the Penalty Phase, and will impede the NRD Assessment.

1.      **BP Already Has Terabytes of NRD Assessment Data, and Other Assessment Work is Protected From Discovery.**

BP already possesses terabytes of NRD Data through the cooperative NRD Assessment process.[10] The release of more NRD Assessment data is being negotiated with BP as part of an ongoing Freedom of Information Act ("FOIA") process,[11] has been withheld per statutory obligation,[12] or will be released once validated.

NRD Assessment documents and modeling that have not been provided to BP primarily consist of draft assessment reports, draft modeling, and related correspondence between agency

---

[9] NOAA Decl., Exh. 4; *see also*, BP's Proposed RFPs, Exh. 1.

[10] Report on "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill" at 3-5, *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, No. 2:10-md-02179 (E.D. La. May 2, 2011), Rec. Doc. 2239.

[11] As of the date this motion was filed, a majority of FOIAs issued by BP for NRD data from agencies have been resolved.

[12] For example, the Magnuson-Stevens Act (16 U.S.C. Sec. 1801-1884) prevents the United States from producing certain fishery data regarding catch amounts without a Court Order.

scientists and attorneys. The NRD Assessment is not finished. Therefore, the reports and modeling that underlie the Assessment and will eventually support the United States's unfiled NRD claims are in draft form, on those subjects where they have been drafted at all. Such drafts are protected from discovery. Fed. R. Civ. P. 26(b)(4) (protecting draft reports "regardless of the form in which the draft is recorded."); *see, e.g.*, *United States v. CITGO Petroleum Corp.,* No. 2:08-CV-00893, 2010 WL 1754167, at *5 (W.D. La. Apr. 29, 2010) (holding that draft expert reports are not discoverable). Because these withheld documents also represent the thought processes of agencies that have yet to issue a final NRD Assessment report, many may also by protected by the deliberative process privilege. *Skelton v. U.S. Postal Serv.,* 678 F.2d 35, 38 (5th Cir. 1982); *Nw. Envtl. Advocates v. U.S. E.P.A.,* No. 05-1876-HA, 2009 WL 349732 (D. Or. Feb. 11, 2009). Finally, what remains of withheld NRD Assessment documents chiefly includes internal communications between agency scientists and agency attorneys that are privileged. *See, e.g.*, *Upjohn Co. v. United States*, 449 U.S. 383 (1981); *Stoffels v. SBC Commc'ns, Inc.,* 263 F.R.D. 406 (W.D. Tex. 2009).

> **2.      BP's Proposed Discovery into the NRD Assessment Will Cause Significant Delay and Burden to the State and Federal Natural Resource Trustees.**

The federal and state trustees' NRD Assessment of the environmental injury resulting from the Macondo Oil Spill is a separate administrative process that is being carried out under the regulations prescribed for such assessments by the Oil Pollution Act ("OPA").[13] Once it is complete, the NRD Assessment will be compiled into a public report and used as the basis for the United States' yet-unfiled NRD claim against BP.

---

[13] BP is also performing an assessment of the environmental harm caused by the Macondo Oil Spill. The United States has not proposed discovery of BP's assessment because it believes no such discovery is necessary for the Penalty Phase. However, the United States reserves the right to serve such discovery if BP's discovery into the NRD Assessment is granted. *See* 15 C.F.R. Part 990.

Rule 26(b)(2) requires courts to limit the scope of discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); *see The Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 739 n.8 (10th Cir. 2005); *Gill v. Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391, 400 (1st Cir. 2005); *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, No. 97-3012, 1998 WL 249217, at *2 (E.D. La. May 14, 1998). Thus, "the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (internal citations omitted).

BP's proposed discovery will burden the United States and require collection and processing by multiple agencies. In a Declaration attached to this memorandum (Exh. 4), a NOAA contractor provides examples of the burden the document collection alone will cause:

- "…450 [NOAA] custodians will lose an average of 5 full days of mission effort to address the extreme complexity of collecting NRDA electronic info midstream.  Thus, were we to collect from all 450 custodians, collection alone results in 2,250 days or 18,000 hours of Natural Resources Damage Assessment mission effort lost to the initial discovery process."
- "…[A]pproximately two full days of mission effort will be required for one IT person to support each custodian's gathering of ESI. Thus, collection alone will require 900 days or 7,200 hours of IT mission support effort lost."

*See* Exh. 4, ¶ 6.b.-6.c. Based on NOAA's calculation, just the *collection* of the documents BP has requested will "cause NOAA to lose a total of 3,150 days or 25,200 hours of mission effort." *Id.* ¶ 6.d. Since most of the requested documents will be privileged, discovery will also require government attorneys and contractors to review terabytes of documents to compose privilege logs and determine what to release. Multiplied across several federal agencies, responding to BP's request will have a devastating impact on the United States, its NRD Assessment work, and

the Penalty Phase. The states also have evidence implicated by BP's request.

As explained above in Sections I and II.C.1, little or no information that is not already available to BP could possibly be gained from NRD Assessment discovery, and none of what BP hopes to gain can contradict the already established fact that the spill was serious. BP's draft discovery will significantly disrupt the NRD Assessment. Because quantified proof of harm is not necessary for the Penalty Phase, much of what has not been produced is potentially protected or privileged, and BP already has vast quantities of NRD Assessment data and analysis, the burden of BP's proposed discovery greatly outweighs any benefit to BP. The Court should deny all Parties any discovery into NRD Assessment during the Penalty Phase.

BP's proposed NRD Assessment discovery will also burden the Court. In Phase One and Two combined, Magistrate Judge Shushan hosted 142 Status and Working Group Conferences discussing discovery related issues, and wrote more than 900 pages of Working Group Conference Orders (this figure does not include pages written in response to discovery motions and disputes). With BP's proposed NRD Assessment discovery calling for the production of more documents than have been produced in this litigation to date, similarly demanding use of the Court's resources can be expected if BP is permitted the discovery it requests.

III.   **ALTERNATIVELY, LIMITING THE NUMBER OF EXPERTS ON ENVIRONMENTAL ISSUES, AND LIMITING EVIDENCE TO DOCUMENTS AND DATA IN THE PUBLIC DOMAIN ON THOSE ISSUES IS A FAIR AND REASONABLE LIMITATION.**

Before reaching an impasse on this issue requiring the Court's assistance, the Parties attempted to stipulate to facts on the seriousness factor, and thereby remove the need for trial on that factor by consent. During these negotiations, the United States offered three different approaches for stipulating to or limiting trial on the seriousness factor. This included provision for some very limited witness testimony, notwithstanding our view that no new evidence is

required on the seriousness factor. BP rejected all three proposals.[14]

BP instead proposes a "compromise" that it will forgo discovery of the "offshore" environmental issues if and only if the United States will forgo presenting a case on those resources. Meanwhile, all "onshore" issues will be subject to discovery and a full trial. BP's Memorandum Regarding the Appropriate Scope of the CWA Penalty Phase and Related Discovery, Rec. Doc. 12340 at 3-4. BP appears to believe that it can present a case for short-term environmental recovery for certain onshore species, but is more afraid of the offshore issues where there may potentially be long-term, chronic impacts. Again, the United States proposes that neither side present any new evidence as to offshore or onshore; it is BP who asks the Court to allow evidence only on resources where BP believes it could show short-term recovery.

If the Court permits any witnesses on the seriousness factor, the evidentiary limitations that the United States previously proposed to BP are reasonable given the scope of what exists in the public domain and what proof is required to establish seriousness. Under this alternative proposal, experts testifying on the environmental impacts of the Macondo Oil Spill could rely on the following:

- Publications: Many articles and books about the environmental impact of the Macondo Oil Spill have been published. Authors include trustee agencies as well as scientists independently funded by BP. Therefore, articles presenting a variety of opinions about the presence and scope of environmental harm are available.

- Publicly available data: The United States and states have made terabytes of data

---

[14] First proposal: Parties sign stipulations detailing environmental harm with some particularity, supported entirely by publicly available information; no party calls witnesses or offers other evidence on environmental harm at Penalty Phase trial; BP rejects. (The United States' First Draft Stipulation Concerning Environmental Harm Related to the Macondo Oil Spill, Exh. 2). Second: Parties sign a pared down set of environmental harm stipulations, serve no discovery on environmental harm, but each side is permitted two experts to testify regarding environmental harm - relying entirely on publicly available data and/or published material; BP rejects. (The United States' Second Draft Stipulation Concerning Environmental Harm Related to the Macondo Oil Spill, Exh. 3). Third: Parties sign limited stipulations on human harm and economic harm that recite information of which the Court is already aware through the settlements or publically available data as part of stipulations BP drafted on the mitigation factor; no stipulations reached.

available to the public through shared databases and other means.

- Documents already in the MDL 2179 record.

Under this proposal, the Parties or the Court will need to identify a publication cutoff date for these reliance materials to ensure fairness (*e.g.*, parties could not use data made available or articles published after the initial expert report deadline). Further, under this proposal, the Parties will have the opportunity to question the reliability of reliance materials through rebuttal reports, depositions, and cross-examination.

The United States' alternative evidentiary limitation is tailored to the low threshold required to prove seriousness under the statutory factors but provides Parties enough evidence to put on an environmental harm case. If the Court allows any new evidence on seriousness, the United States respectfully requests that its approach be adopted.

## IV.     CONCLUSION

The Macondo well discharged millions of barrels of oil for 87 days. Oil remained in the environment for some time thereafter; covered beaches and marshes, and killed birds; people were killed or injured in the explosion and the response; and people suffered economic losses due to the spill. These facts are in the record and are summarized in Appendix A. No amount of new evidence could possibly disprove those facts. No amount of new evidence of "recovery" could possibly disprove those facts. No evidence of a lack of chronic or long-term harms can disprove those facts. The Court need only rule that these already-known facts are sufficient in this case to find that the violation was very serious, and use its discretion under Rule 403 to prohibit any additional evidence. The Court should prohibit discovery on these topics.

A proposed Order, with Appendix A, is attached.

Respectfully submitted,

BRIAN HAUCK
Deputy Assistant Attorney General
Civil Division

PETER FROST
Director, Torts Branch, Civil Division
Admiralty and Aviation
STEPHEN G. FLYNN
Assistant Director
SHARON SHUTLER
MALINDA LAWRENCE
LAURA MAYBERRY
Trial Attorneys

ROBERT G. DREHER
Acting Assistant Attorney General
Environment & Natural Resources Division

SARAH HIMMELHOCH
Senior Litigation Counsel
NANCY FLICKINGER
Senior Attorney
RICHARD GLADSTEIN
PATRICK CASEY
Senior Counsel
A. NATHANIEL CHAKERES
JUDY HARVEY
RACHEL KING
ERICA PENCAK
ABIGAIL ANDRE
RACHEL HANKEY
BRANDON ROBERS
Trial Attorneys

R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice
7-5395 Federal Bldg., Box 36028
450 Golden Gate Avenue
San Francisco, CA 94102-3463
Telephone: 415-436-6648
Facsimile: 415-436-6632
E-mail: mike.underhill@usdoj.gov

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: 202-514-2779
Facsimile:  202-514-2583
E-mail: steve.o'rourke@usdoj.gov

KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA 70130
Telephone: (504) 680-3000
Facsimile: (504) 680-3184
E-mail: sharon.d.smith@usdoj.gov

Attorneys for the UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date: February 20, 2014.                                   /s/ Steven O'Rourke
                                                           U.S. Department of Justice