# Exhibit 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| In re: | Oil Spill by the Oil Rig "*Deepwater* | : | MDL No. 2179 |
| | *Horizon*" in the Gulf of Mexico, on | : | |
| | April 20, 2010 | : | SECTION: J |
| | | : | |
| This Document Relates To: | | : | JUDGE BARBIER |
| United States v. BP Exploration & Production | | : | MAG. JUDGE SHUSHAN |
| | Inc., *et al.* | : | |
| *Case No. 2:10-cv-4536-CJB-SS* | | : | |
| …………………………………………... | | : | |

**BP EXPLORATION & PRODUCTION INC.'S FIRST SET OF**
**REQUESTS FOR PRODUCTION TO THE UNITED STATES OF AMERICA**
**RELATING TO THE CLEAN WATER ACT PENALTY PHASE**

Pursuant to Federal Rules of Civil Procedure 26 and 34, BP Exploration & Production Inc.

propounds the following requests for production of documents to the United States of America.

BP Exploration & Production Inc. requests that all documents and electronically stored

information responsive to the following discovery requests be produced within 30 days to the

offices of Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654.  By serving

these Requests for Production, BP Exploration & Production Inc. does not admit or concede the

relevance or admissibility of documents responsive to the Requests.

## I.   REQUESTS FOR PRODUCTION

### A.  The *Deepwater Horizon* Response

1.     All documents referring or relating to any contention by the United States regarding

the seriousness of the *Deepwater Horizon* Oil Spill and/or its effects.

2.     All documents referring or relating to BP's efforts to mitigate, minimize, limit, or

prevent any effects of the *Deepwater Horizon* Oil Spill and/or Response Activities.

3.     All documents referring or relating to federal, state or local government efforts to

mitigate, minimize, limit, or prevent any effects of the *Deepwater Horizon* Oil Spill and/or

1

Response Activities.

4.      All documents referring or relating to the Response Activities.

5.      All communications between or among the United States and any state, local, or other government department, entity, agency, or body, including any representative or employee of such government department, entity, agency, or body referring or relating to the *Deepwater Horizon* Oil Spill, BP's efforts to mitigate the effects of the Oil Spill, and/or the Response Activities.

6.      All documents referring or relating to the amount of oil that was contained, collected, disbursed, burned, or cleaned up as a result of the Response Activities.

7.      All documents commending, noting, or praising BP's efforts to respond to and mitigate the effects of the *Deepwater Horizon* Incident and/or Oil Spill.

8.      All documents referring or relating to the document entitled "BP Deepwater Horizon Oil Spill: Incident Specific Preparedness Review (ISPR)" and its appendices, including but not limited to the preparation and publication of the document, such as drafts, interview notes, electronic communications, or outlines.

9.      All documents referring or relating to the document entitled "On Scene Coordinator Report *Deepwater Horizon* Oil Spill," including but not limited to the preparation and publication of the document, such as drafts, interview notes, electronic communications, or outlines.

10.      All documents referring or relating to the preparation and publication of any reports of the Operational Science Advisory Team, including but not limited to any appendices, drafts, notes, and outlines.

11.      All documents referring or relating to actual or proposed work of the Operational Science Advisory Team (whether or not related to reports of that Team).

12.      All documents referring or relating to the document entitled "Summary Report for

Sub-Sea and Sub-Surface Oil and Dispersant Detection: Sampling and Monitoring" and its appendices, prepared by the Operational Science Advisory Team, including but not limited to the preparation and publication of the document.

13.    All documents referring or relating to the document entitled "Summary Report for Fate and Effects of Remnant Oil in the Beach Environment" and its appendices, prepared by the Operational Science Advisory Team, including but not limited to the preparation and publication of the document.

14.    All documents referring or relating to any net environmental benefit analyses conducted regarding the *Deepwater Horizon* Incident, Oil Spill, and/or Response Activities.

15.    All documents referring or relating to any analysis or assessment, whether retrospective or otherwise, by any United States agency, officer, employee, or other person associated with the United States, including consultants and agents, of the application of any guidelines, policies, plans or practices to the circumstances of the *Deepwater Horizon* Incident, Oil Spill, and/or the Response.

16.    All documents referring or relating to any analyses, studies, or determinations of the source or identity of oil observed in connection with the *Deepwater Horizon* Incident, Oil Spill, and/or the Response.

17.    All documents referring or relating to the Shoreline Cleanup Assessment Technique ("SCAT") program in connection with the *Deepwater Horizon* Response.

18.    All documents referring or relating to the document entitled "Shoreline Clean-Up Completion Plan," including but not limited to the preparation and publication of the document.

19.    All documents referring or relating to determinations or assessments of whether certain shoreline segments have met the clean-up requirements established by the Shoreline Clean-Up Completion Plan.

20.     All documents referring or relating to restrictions or limitations imposed by any federal agency, officer, employee, or other person associated with the United States, including consultants and agents, on methods, tools, or techniques for shoreline clean-up during the Response.

21.     All documents referring or relating to the approval, denial, consideration, or other reaction or reply to any request to remove oil from shorelines, including but not limited to beaches, wetlands, or marshes during the Response by any United States agency, officer, employee, or other person associated with the United States, including consultants and agents.

22.     All documents referring or relating to the ability of the Unified Command, BP, or any other person or entity engaged in the Response to access privately-owned land for purposes of shoreline assessment, clean-up activities, and/or other Response Activities.

23.     All documents referring or relating to any requests to waive the requirements of the Merchant Marine Act of 1920 ("Jones Act") in connection with the Response, and any approval, denial, consideration, or other reaction or reply to such requests by any federal agency, officer, employee, or other person associated with the United States, including consultants and agents.

24.     All documents referring or relating to the use of skimming in connection with the Response Activities, including but not limited to associated operations, effectiveness, and any alleged counterproductive or harmful effects.

25.     All documents referring or relating to preclearance or clearance requirements for the use of skimming in connection with the Response Activities.

26.     All documents referring or relating to the use of dispersants in connection with the Response Activities, including but not limited to approvals for use, associated operations, effectiveness, and any alleged counterproductive or harmful effects.

27.     All documents referring or relating to the inclusion of Corexit 9500 and/or Corexit

4

9527 on the National Oil and Hazardous Substances Pollution Contingency Plan Product Schedule.

28.     All studies, assessments, evaluations, tests, data, communications or other documents referring or relating to the safety of Corexit 9500 and/or Corexit 9527.

29.     All studies, assessments, evaluations, tests, data, communications, or other documents referring or relating to the toxicity of Corexit 9500 and/or Corexit 9527.

30.     All studies, assessments, evaluations, tests, data, communications, or other documents referring or relating to the effectiveness of Corexit 9500 and/or Corexit 9527.

31.     All policies, protocols, plans, recommendations, communications or other documents referring or relating to the use of Corexit 9500, Corexit 9527, and/or other dispersants in future oil spill responses.

32.     All communications between or among the United States Coast Guard, the Unified Command, BP, the Environmental Protection Agency, National Oceanic and Atmospheric Administration, and any other federal or other governmental department, agency, entity, or body or any representative or employee thereof regarding the use of Corexit 9500, Corexit 9527, and/or other dispersants in connection with the Response Activities.

33.     All studies, assessments, evaluations, tests, data, communications, or other documents referring or relating to the potential use of any dispersants other than Corexit 9500 or Corexit 9527 in connection with the Response Activities, including but not limited to any evaluation or assessment of the effectiveness, toxicity, availability, or safety of any such alternatives.

34.     All studies, assessments, evaluations, tests, data, communications, or other documents referring or relating to any actual or potential impact that the restricted or limited use of dispersants during the Response had on the shoreline or other natural resources.

35.     All documents referring or relating to the document entitled "Dispersant Monitoring

5

and Assessment Directive for Subsurface Dispersant Application" dated May 10, 2010, including but not limited to the preparation and publication of the document.

36.     All documents referring or relating to potential effects on historical and archaeological sites attributed to the Incident, Oil Spill, and/or the Response Activities, and efforts to mitigate those effects.

37.     All documents referring or relating to the recovery of orphan anchors remaining in the Gulf of Mexico following the Response Activities.

38.     All documents referring or relating to directives, orders, or plans concerning waste management in connection with the Response Activities, including but not limited to the Gulf of Mexico Wide Waste Management Plan.

39.     All documents referring or relating to the effectiveness of or benefits from waste management activities in connection with the Response Activities.

40.     All documents referring or relating to any contention by the United States that BP was not adequately prepared to respond to the *Deepwater Horizon* Incident and/or Oil Spill.

41.     All documents referring or relating to the review or approval by the Mineral Management Service of BP's Gulf of Mexico Oil Spill Response Plan.

42.     All documents referring or relating to BP's Gulf of Mexico Oil Spill Response Plan, including but not limited to any analysis, commendation, or criticism of the Oil Spill Response Plan and BP's implementation of the Oil Spill Response Plan.

43.     All documents referring or relating to the Vessel of Opportunity Program.

44.     All documents referring or relating to the role of any federal agency, officer, employee, or other person associated with the United States, including consultants and agents, in managing, overseeing, or administering the Vessel of Opportunity Program.

45.     All documents referring or relating to the effectiveness of or benefits from the

Vessel of Opportunity Program.

46.     All documents referring or relating to the role of any federal agency or federal officer or to the role of the Unified Command in shoreline assessment or clean-up activities, including but not limited to such activities pertaining to beaches or special environments such as wetlands and saltwater or brackish marshes.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 91.)

47.     All documents referring or relating to plans or proposals to determine or to study shoreline oiling in connection with the Incident, Oil Spill, and/or Response Activities, including but not limited to documentation protocols, experimental assessment plans, or data quality assurance or data quality control activities related to such plans or proposals.  (*See* Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 92.)

48.     All documents referring or relating to the use or proposed use of Quick Reaction Forces or other types of response teams organized by the Unified Command at the Houma Incident Command Post or at any other location in connection with Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 93.)

49.     All documents referring or relating to determinations or studies of shoreline oiling in connection with the Incident, Oil Spill, and/or Response Activities, including but not limited to documentation protocols, experimental assessment plans, or data quality assurance or data quality control activities related to such plans or proposals.  (*See* Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 94.)

50.     All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine the effectiveness of shoreline assessment or clean-up in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 95.)

51.     All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine possible or predicted counterproductive or harmful effects of shoreline assessment or clean-up in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 96.)

52.     All documents referring or relating to the effectiveness of shoreline assessment or clean-up in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 97.)

53.     All documents referring or relating to counterproductive or harmful effects attributed to shoreline assessment or clean-up in Response Activities, including but not limited to any such effects on biota, physical environments, human amenities, man-made assets, ambient air quality, or water quality.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 98.)

54.     All documents referring or relating to plans, proposals or decisions to procure or deploy boom in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 99.)

55.     All documents referring or relating to plans, proposals or decisions to add to, alter or amend the booming protection strategies contained in, or that should have been contained in, the Area Contingency Plans for areas affected by the Incident.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 100.)

56.     All documents referring or relating to plans, proposals or decisions to remove boom in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 101.)

57.     All documents referring or relating to plans, proposals or decisions to locate boom

in staging areas, to transport boom from one location to another, or to prohibit the relocation of boom, in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 102.)

58.    All documents referring or relating to standards or guidelines to determine the physical qualities of boom, or to set performance standards for boom, used in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 103.)

59.    All documents referring or relating to plans, proposals or decisions to inspect or test boom, or to estimate or determine the types or quantity of boom used, in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 104.)

60.    All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine the effectiveness of the use of boom in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 105.)

61.    All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine possible or predicted counterproductive or harmful effects of the use of boom in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 106.)

62.    All documents referring or relating to the effectiveness of the use of boom in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 107.)

63.    All documents referring or relating to counterproductive or harmful effects of or

attributed to the use of boom in Response Activities, including but not limited to any such effects on biota, physical environments, human amenities, man-made assets, ambient air quality, or water quality.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 108.)

64.    All documents not contained in public rulemaking dockets of the U.S. Coast Guard or the U.S. Department of Interior referring or relating to the development of criteria or standards for the Effective Daily Recovery Capacity of skimmers or to changes or proposed changes in those criteria or standards.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 109.)

65.    All documents referring or relating to the number, type or capabilities of skimming equipment or vessels obtained by BP for use in the Response Activities, or to the adequacy of the skimming resources obtained by BP for use in the Response Activities.  (*See* Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 110.)

66.    All documents referring or relating to plans, proposals or decisions to procure or deploy skimming equipment or vessels in connection with the Response Activities, or to plans, proposals or decisions to not use or to curtail use of skimming equipment or vessels in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 111.)

67.    All documents referring or relating to plans, proposals or decisions to inspect or test skimming equipment or vessels or to test or evaluate procedures used in skimming in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 112.)

68.    All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine the effectiveness of skimming in

connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 113.)

69.    All documents referring or relating to the effectiveness of skimming in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 114.)

70.    All documents referring or relating to plans, proposals or decisions to conduct controlled in-situ burning in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 115.)

71.    All documents referring or relating to studies, assessments, data, or analyses of the use of controlled in-situ burning in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 116.)

72.    All documents referring or relating to unpublished studies, assessments or analyses of the use of controlled in-situ burning in spill response activities in the Gulf of Mexico or the Gulf of Mexico basin.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 117.)

73.    All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine the effectiveness of controlled in-situ burning, either in connection with the Response Activities or as a countermeasure to respond to any other spill. (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 118.)

74.    All documents referring or relating to the actual or possible impact of preclearance or clearance requirements for the use of controlled in-situ burning in connection with the Response Activities on the amount of oil or other discharged materials that reached the shoreline.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 119.)

11

75.     All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine possible or predicted counterproductive or harmful effects of controlled in-situ burning, either in connection with the Response Activities or as a countermeasure to respond to any other spill.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 120.)

76.     All documents referring or relating to the effectiveness of the use of controlled in-situ burning in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 121.)

77.     All documents referring or relating to counterproductive or harmful effects of or attributed to the use of controlled in-situ burning in Response Activities, including but not limited to any such effects on biota, human health or ambient air quality.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 122.)

78.     All documents referring or relating to plans, proposals or decisions to increase or decrease rates of Mississippi River discharge between April 20, 2010 and September 15, 2010 at the Bayou Lamoque Diversion, the Davis Pond Diversion, the Violet Siphon, the Caernarvon Diversion, the Whites Ditch Siphon, the Naomi Siphon, the West Point A la Hache Siphon, and the Ostrica Lock in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 138.)

79.     All documents referring or relating to the role of any federal agency or federal officer or to the role of the Unified Command in increasing or decreasing rates of Mississippi discharge between April 20, 2010 and September 15, 2010.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 139.)

80.     All documents referring or relating to studies, assessments, data, or analyses of the use of Mississippi River discharges in spill response activities.  (Apr. 7, 2011 BP's First Set of

Discovery Requests to the United States of America, No. 140.)

81.     All documents referring or relating to unpublished studies, assessments or analyses of the use of Mississippi River discharges in spill response activities in the Gulf of Mexico or the Gulf of Mexico basin.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 141.)

82.     All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine the effectiveness of the use of Mississippi River discharges in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 142.)

83.     All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine possible or predicted counterproductive or harmful effects of the use of Mississippi River discharges in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 143.)

84.     All documents referring or relating to counterproductive or harmful effects of or attributed to Mississippi River discharges in connection with the Response Activities, including but not limited to any such effects on biota, physical environments, human amenities, man-made assets, ambient air quality, or water quality.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 144.)

85.     All documents referring or relating to the role of any federal agency or federal officer or to the role of the Unified Command in developing directives on waste management in connection with the Response Activities.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 145.)

86.     All documents referring or relating to studies, assessments, data, or analyses of

waste management in connection with the Response Activities. (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 146.)

87.     All documents referring or relating to any other method, technology, art or procedure for use as a countermeasure to reduce or mitigate the impact of the discharge in connection with the Incident and/or Oil Spill. (*See* Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 148.)

88.     All documents referring or relating to the use of berms in connection with the Response Activities. (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 149.)

89.     All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine the effectiveness of the use of berms in connection with the Response Activities. (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 150.)

90.     All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine possible or predicted counterproductive or harmful effects of the use of berms in connection with the Response Activities. (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 151.)

91.     All documents referring or relating to the effectiveness of the use of berms in connection with the Response Activities. (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 152.)

92.     All documents referring or relating to counterproductive or harmful effects of or attributed to the use of berms in the Response Activities, including but not limited to any such effects on biota, physical environments, human amenities, man-made assets, ambient air quality, or

water quality.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 153.)

**B.  Environmental Impact and Recovery**

93.     All documents referring or relating to the amount, concentration, location, fate, transport, or kind of Oil-Related Materials or Dispersants in the Environment related in any way to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

94.     All documents referring or relating to the amount, concentration, location, fate, transport or kind of non-MC252 (i) dispersants, (ii) oil, (iii) polycyclic aromatic hydrocarbons ("PAHs"), (iv) hydrocarbons, (v) other oil or gas constituents, (vi) well drilling and closure materials, including without limitation, drilling muds and fluids and materials injected into the well-head, (vii) derivatives of any of the foregoing from biological, chemical, photochemical, burning or other processes, (viii) any aggregation, mixture or combination of any of the foregoing with any other material including, without limitation, organic matter, inorganic matter, sediments, biological exudates, sand and water; or (ix) any combination of the foregoing, in each case that was or may have been present in the Environment, either before or after the Incident, but that was not from the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

95.     All documents referring or relating to the impact (including indirect, modeled, future or potential impact) of Oil-Related Materials, Dispersants, or of the Response Activities on the Environment, including but not limited to Organisms in the Environment.

96.     All documents referring or relating to the state, condition, populations, stability, changes, and trends of the Environment, including but not limited to Organisms in the Environment, from January 1, 1990 to April 20, 2010.

97.     All documents referring or relating to Environmental and natural resource restoration or conservation projects or efforts resulting from the release or presence of Oil-Related

materials and/or Dispersants, including but not limited to actual or possible effectiveness, results, and consequences of such projects.

98.     All documents referring or relating to the toxicity or other biological effect, or lack thereof, of Oil-Related Materials and/or Dispersants.

99.     All documents referring or relating to the fate and transport of Oil-Related Materials and/or Dispersants.

100.    All documents referring or relating to the weathering, degradation, absorption, agglomeration, or other change in or transformation of Oil-Related Materials and/or Dispersants.

101.    All documents referring or relating to oxygen depletion or low dissolved oxygen ("aquatic hypoxia") resulting from the release of Oil-Related Materials and/or Dispersants.

102.    All documents referring or relating to the areal extent, location, duration, thickness and volume of Oil-Related Materials and/or Dispersants present at the surface of the water, and all documents referring or relating to the weather and sea conditions when and where such Oil-Related Materials and/or Dispersants were present.

103.    All documents referring or relating to sampling for the presence of Oil-Related Materials and/or Dispersants in the Environment following the Incident or in the course of or following the Response Activities.

104.    All documents referring or relating to the exposure and pathway of exposure of Organisms to Oil-Related Materials and/or Dispersants, including but not limited to sediment or water exposure, surface contact, contaminated prey/dietary uptake, and inhalation.

105.    All documents referring or relating to the impact on (including indirect, modeled, potential or future impact) individual Organisms, including but not limited to algae, seaweed, corals, reefs, plankton, submerged aquatic vegetation, fish, shellfish, sea turtles, reptiles, birds, marine mammals, terrestrial species, invertebrates, and microorganisms, and communities,

populations, ecosystems, food webs and other assemblages of Organisms, from Oil-Related Materials, Dispersants and/or the Response Activities.

106.   All documents referring or relating to the impact (including indirect, modeled, potential or future impact) on human use of any Environmental resources, including but not limited to Organisms, habitats, and other features of the Environment, from Oil-Related Materials, Dispersants and/or the Response Activities.

107.   All documents referring or relating to the recovery of the Environment, including but not limited to Organisms in the Environment, from, or to the Environment's response to, any of the impacts from Oil-Related Materials, Dispersants and/or the Response Activities.

108.   All documents referring or relating to the likelihood of future oiling of beaches or other areas from Oil-Related Materials as a consequence of adverse weather or other events.

109.   All documents referring or relating to the likelihood of future impacts on populations of Organisms due to allegedly latent Oil-Related Materials and/or Dispersants.

110.   All documents referring or relating to the planning, approval, execution, and demobilization of protocols for conducting sampling of air, water, sediments, Oil-Related Materials, Dispersants and waste in connection with the *Deepwater Horizon* Incident, Oil Spill, and/or Response Activities. (*See* Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 154.)

111.   All documents referring or relating to objectives, standards, guidelines, metrics, protocols, analysis, reports, or to proposed standards, guidelines, metrics, protocols, analysis or reports, that refer to air sampling, including but not limited to public health protection monitoring and sampling and occupational health protection sampling and monitoring in connection with the *Deepwater Horizon* Incident, Oil Spill, and/or Response Activities.  (*See* Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 155.)

112.    All documents referring or relating to objectives, standards, guidelines, metrics, protocols, analysis, reports, or to proposed standards, guidelines, metrics, protocols, analysis or reports, that refer to water and sediment sampling conducted in connection with the *Deepwater Horizon* Incident, Oil Spill, and/or Response Activities.  (*See* Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 156.)

113.    All documents referring or relating to objectives, standards, guidelines, metrics, protocols, analysis, reports, or to proposed objectives, standards, guidelines, metrics, protocols, analysis or reports, referring to the sampling of Oil-Related Materials and/or Dispersants from the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities. (*See* Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 157.)

114.    All documents referring or relating to objectives, standards, guidelines, metrics, or to proposed objectives, standards, guidelines or metrics, to assess, measure or determine possible harmful effects in seafood in connection with the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.  (*See* Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 158.)

115.    All documents referring or relating to objectives, standards, guidelines, metrics, protocols, or to proposed objectives, standards, guidelines, metrics or protocols, to assess the quality and control of sample data in connection with the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.  (*See* Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 159.)

116.    All documents referring or relating to objectives, standards, guidelines, metrics, or to proposed objectives, standards, guidelines or metrics, used in validation of data collected in connection with the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.  (*See* Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 160.)

117.    All documents referring or relating to any other method, technology, equipment, art, remedial process, or procedure for use as a countermeasure to correct, reduce, or mitigate errors, anomalies, or other breaches of sampling standards, guidelines, metrics, or protocols related to sampling processes, sampling data, or sampling reporting and analysis in connection with the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.  (*See* Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 161.).

118.    All documents that constitute, contain, describe or refer to reports, studies, data, or any other analysis or assessment of sampling, sampling data, sample reporting, or sample analysis in connection with the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.  (*See* Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 162.)

119.    All documents referring or relating to predictions, estimates, or measurements of the impacts of the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities on Organisms, or referring or relating to efforts to predict, estimate or measure those impacts, including, but not limited to, data collected as part of Response Activities.  (*See* Apr. 26, 2011 BP's Second Set of Discovery Requests to the United States of America, No. 191.)

120.    All documents referring or relating to predictions, estimates, or measurements of the impacts of the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities on the Environment, or that contain, describe, or refer to efforts to predict, estimate or measure those impacts, including, but not limited to, data collected as part of Response Activities. (*See* Apr. 26, 2011 BP's Second Set of Discovery Requests to the United States of America, No. 192.)

121.    All documents referring or relating to predictions, estimates, or measurements of the impacts of the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities, on features of the Environment considered human amenities, including but not limited to beaches, water frontages, fish traps or ponds, parks or reserves, or on man-made assets, including but not

limited to bridges, causeways, boats, boat launches, docks, ports or weirs, or that contain, describe, or refer to efforts to predict, estimate or measure those impacts, including, but not limited to, data collected as part of Response Activities.  (*See* Apr. 26, 2011 BP's Second Set of Discovery Requests to the United States of America, No. 193.)

122.   All documents referring or relating to predictions, estimates, or measurements of the impacts of the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities on ambient air quality or water quality in any body of water, or that contain, describe, or refer to efforts to predict, estimate or measure those impacts, including but not limited to data collected as part of Response Activities.  (*See* Apr. 26, 2011 BP's Second Set of Discovery Requests to the United States of America, No. 194.)

123.   All documents referring or relating to predictions, estimates, or measurements of the impacts of decisions, conduct, acts or omissions of any federal agency or officer of the Unified States on efforts to avoid or mitigate the impacts of the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities on Organisms, the Environment, human amenities, man-made assets, ambient air quality, or water quality, or that contain, describe, or refer to efforts to predict, estimate or measure those impacts, including but not limited to data collected as part of Response Activities.  (*See* Apr. 26, 2011 BP's Second Set of Discovery Requests to the United States of America, No. 195.)

124.   All documents referring or relating to estimates of the number of wildlife, including but not limited to birds, sea turtles, and marine mammals, found dead, alive or oiled to any extent during the Response Activities, including, but not limited to, Unusual Mortality Event ("UME") data.  (*See* Apr. 26, 2011 BP's Second Set of Discovery Requests to the United States of America, No. 196.)

125.   All documents referring or relating to estimates of the number of wildlife, including

but not limited to birds, sea turtles, and marine mammals, rescued, transported or rehabilitated during the Response Activities, including but not limited to data collected as part of Response Activities. (*See* Apr. 26, 2011 BP's Second Set of Discovery Requests to the United States of America, No. 197.)

126.    All documents referring or relating to plans or efforts to rescue, transport or rehabilitate wildlife, including but not limited to birds, sea turtles, and marine mammals, in connection with the Response Activities.  (*See* Apr. 26, 2011 BP's Second Set of Discovery Requests to the United States of America, No. 198.)

127.    All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine the effectiveness of efforts to rescue, transport or rehabilitate wildlife, including but not limited to birds, sea turtles, and marine mammals, in connection with the Response Activities, including but not limited to data collected as part of Response Activities.  (*See* Apr. 26, 2011 BP's Second Set of Discovery Requests to the United States of America, No. 199.)

128.    All documents referring or relating to standards, guidelines, metrics, or to proposed standards, guidelines or metrics, to assess, measure or determine possible or predicted counterproductive or harmful effects of efforts to rescue, transport or rehabilitate wildlife, including but not limited to birds, sea turtles, and marine mammals, in connection with the Response Activities, including but not limited to data collected as part of Response Activities. (*See* Apr. 26, 2011 BP's Second Set of Discovery Requests to the United States of America, No. 200.)

129.    All documents referring or relating to the effectiveness or lack of effectiveness of efforts to rescue, transport or rehabilitate wildlife, including but not limited to birds, sea turtles, and marine mammals, in connection with the Response Activities, including but not limited to data collected as part of Response Activities. (*See* Apr. 26, 2011 BP's Second Set of Discovery

Requests to the United States of America, No. 201.)

130.   All documents that constitute, contain, describe, or refer to any guideline, policy or practice of the United States Government for use in determining the amount of civil penalties assessed under Section 311 of the Clean Water Act in connection with an oil spill.  (Apr. 26, 2011 BP's Second Set of Discovery Requests to the United States of America, No. 202.)

131.   All documents referring or relating to the physical or chemical properties of Oil-Related Materials and/or Dispersants. (*See* Oct. 7, 2011, Various Defs.' First Joint Discovery Requests to the United States Related to Phase Two, No. 14.)

**C.  Economic Issues**

132.   All documents referring or relating to any actual or alleged economic impact or harm caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

133.   All documents referring or relating to any BP efforts to mitigate or minimize any actual or alleged economic impact or harm caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

134.   All documents referring or relating to any federal, state, or local government efforts to mitigate or minimize any actual or alleged economic impact or harm caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

135.   All documents relating to any analysis, study, or assessment that was performed, purchased, commissioned, or otherwise obtained by the federal government regarding the identification, magnitude, and duration of any actual or alleged economic impact or harm relating to the *Deepwater Horizon* Incident, Oil Spill, and/or Response Activities, including any comparisons to other oil spills.

136.   All documents referring or relating to federal, state, or local tax data, including but

not limited to sales tax, real estate tax, income tax, or commercial taxes, related to any actual or alleged economic impact or harm caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

137.    All documents referring or relating to federal, state, or local public service payments, including but not limited to Medicaid and unemployment insurance payments, for any actual or alleged economic impact or harm caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

138.    All documents referring or relating to federal, state, or local royalties and fees, including but not limited to offshore oil and gas royalties from 2004 to 2014, related to any actual or alleged economic impact or harm caused by or related to *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

139.    All documents referring or relating to federal, state, or local tax and income data related to tourism, including but not limited to bed taxes, sales taxes, special use taxes, convention, stadium, or tourist taxes, park fees, and bridge/road tolls, in the Gulf Coast region from 2004 to 2014 or related to any actual or alleged economic impact or harm caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

140.    All documents referring or relating to federal, state, or local economic data related to employment, personal income, corporate or business income, business investment, state or local government income, values of real estate or other assets, gross domestic product or other measures of economic output in the Gulf Coast region that includes any of the years from 2004 to 2014.

141.    All documents referring or relating to the impact of media or news coverage of the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities on the economies of the Gulf Coast region.

142.    All documents referring or relating to the impact of the federal drilling moratoria

23

and other government regulatory activities relating to the drilling industry on the economies of the Gulf Coast region, including any impact on federal, state, or local royalties, tax receipts, employment, income, and any other measure of economic performance

143.    All documents referring or relating to any actual or alleged economic impact or harm to the commercial fishing industry in the Gulf Coast region caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

144.    All documents referring or relating to National Oceanic and Atmospheric Administration or other state or local commercial fishing landings data or trip ticket data from 2004 to 2014.

145.    All documents referring or relating to any actual or alleged economic impact or harm to the seafood processing and distribution industry in the Gulf Coast region caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

146.    All documents referring or relating to any actual or alleged economic impact or harm to tourism or the tourism industry in the Gulf Coast region caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

147.    All documents referring or relating to lodging or hospitality data covering any period of time from 2004 to 2014, including but not limited to occupancy, room availability, and revenue data and reports from Smith Travel Research (also referred to as STR), or other related sources of information, including but not limited to data collected by state, county, and local visitors and convention bureaus.

148.    All documents referring or relating to any actual or alleged economic impact or harm to the lodging industry in the Gulf Coast region caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

149.    All documents referring or relating to any actual or alleged economic impact or

24

harm on the hospitality or restaurant industry in the Gulf Coast region caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

150.   All documents referring or relating to any actual or alleged economic impact or harm on the oil drilling and support services industry in the Gulf Coast region caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

151.   All documents referring or relating to any actual or alleged economic impact or harm to the real estate or rental real estate industry, including but not limited to residential construction and vacation rentals, in the Gulf Coast region caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

152.   All documents referring or relating to rental or occupancy rates, rental income, real estate rental cancellations, sales, room availability, income, or any other financial or economic measure associated with the real estate or rental real estate industry, including but not limited to residential construction and vacation rentals, in the Gulf Coast region covering any period of time from 2004 and 2014.

153.   All documents referring or relating to any actual or alleged impact or harm to recreational activities in the Gulf Coast region, including but not limited to fishing, boating, swimming, or hunting, caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

154.   All documents referring or relating to any actual or alleged economic impact or harm to commerce, retail or wholesale trade, shipping, or manufacturing in the Gulf Coast region or elsewhere in the United States caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

155.   All documents referring or relating to any actual or alleged economic impact or harm to any other industry, including but not limited to construction, manufacturing, agriculture,

and professional services, in the Gulf Coast region or elsewhere in the United States caused by or related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

156.    All documents referring or relating to any grants, donations, or other contributions to state or local governments, including state or local government entities, announced or disbursed by BP after April 20, 2010, or of any grants given by BP to such entities that were related in any way to the *Deepwater Horizon* Incident, Oil Spill and/or the Response Activities, including the economic impact of such grants.

157.    All documents referring or relating to any grants, donations, or other contributions to non-governmental or non-profit organizations, including but not limited to tourism promotion agencies, announced or disbursed by BP after April 20, 2010, or of any grants given by BP to such organizations that were related in any way to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities, including the economic impact of such grants.

158.    All documents referring or relating to any efforts, campaigns, marketing, and advertisements funded by BP intended to promote tourism or other economic activity in the Gulf Coast region or otherwise related to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

159.    All documents referring or relating to any economic or financial impact of BP payments to individuals or businesses in 2010 prior to the beginning of the Gulf Coast Claims Facility related in any way to the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities, on any measure of economic or financial performance, including but not limited to employment, personal income, tourism activity, commercial fishing activity, or federal, state, and local taxes.

160.    All documents referring or relating to any economic or financial impact of payments made by the Gulf Coast Claims Facility to individuals or businesses, including EAP,

"Quickpay", interim, or final payments, on any measure of economic or financial performance, including but not limited to employment, personal income, tourism activity, commercial fishing activity, or federal, state, and local taxes.

161.    All documents referring or relating to any economic or financial impact of payments made by BP to individuals or businesses under the Economic and Property Damages Class Settlement as determined by the Deepwater Horizon Court-Supervised Settlement Program on any measure of economic or financial performance, including but not limited to employment, personal income, tourism activity, commercial fishing activity, or federal, state, and local taxes.

162.    All documents referring or relating to any economic or financial impact of the operations of the Deepwater Horizon Court-Supervised Settlement Program in the Gulf Coast region on any measure of economic performance, including but not limited to employment, personal income, tourism activity, commercial fishing activity, or federal, state, and local tax receipts.

163.    All documents referring or relating to any economic or financial impact, as measured by any type of economic or financial performance measure, of the Vessels of Opportunity program or payments made to participants therein, and those hired or employed by participants in the Vessels of Opportunity program, including but not limited to employment, personal income, or federal, state, and local taxes.

164.    All documents referring or relating to any economic or financial impact, as measured by any type of economic or financial performance measure, of sales and use taxes paid by BP or others as a result the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

165.    All documents referring or relating to decisions, plans or proposals to close any shoreline as a result of or in connection with the Incident and/or Response Activities.

166.    All documents referring or relating to decisions, plans or proposals to open any shoreline as a result of or in connection with the Incident and/or Response Activities.

167.    All documents referring or relating to decisions, plans or proposals to close any area for commercial or recreational fishing as a result of or in connection with the Incident and/or Response Activities.  (*See* Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 89.)

168.    All documents referring or relating to decisions, plans or proposals to open any area for commercial or recreational fishing that was closed as a result of or in connection with the Incident and/or Response Activities.  (*See* Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 90.)

**D.  Health Issues**

169.    All documents referring or relating to any alleged impact, past, present and future, of Oil-Related Materials, Dispersants, and/or the Response Activities on human health, including physical health and mental or emotional health.

170.    All documents referring or relating to condition of human health, past present and future, including physical health and mental or emotional health, of any persons working on or in support of the Response Activities from April 20, 2010 to the present.

171.    All documents referring or relating to the level or amount of human exposure to Oil-Related Materials, Dispersants, and/or materials used in the Response Activities.

172.    All documents referring or relating to conditions of human health, past, present and future, including physical health and mental or emotional health, of any persons working on or in support of the Response Activities from April 20, 2010 to the present.

173.    All documents referring or relating to any alleged human harm caused by exposure to Oil-Related Materials, Dispersants, and/or materials used in the Response Activities.

174.    All documents referring or relating to the document entitled "Health Hazard Evaluation of Deepwater Horizon Response Workers" prepared by the National Institute of Occupational Safety and Health, including but not limited to the preparation and publication of the document.

175.    All documents referring or relating to the preparation of any current, previous, or prospective study by the National Institute of Environmental Health Sciences.

176.    All documents referring or relating to the preparation of any research, investigations, inquiries, or studies directed, in whole or in part, or funded, in whole or in part, by the United States, as well as any research, investigations, inquiries, or studies regarding which the United States otherwise has information not publicly available that refer or relate to the assessments of or attempts to quantify acute or chronic human health effects (including injury, illness, or death), toxicities, hazards, exposures, or risks, whether physical, mental, or emotional, related to, concerning, attributed to, based upon, or otherwise associated with the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

177.    All documents referring or relating to any efforts, directed, in whole or in part, funded in whole or in part, or otherwise engaged in by BP or any person or entity acting on behalf of BP to mitigate or otherwise affect the impact of the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities on human health, including physical, mental, and emotional health.

178.    All documents that constitute, refer or relate to medical, scientific or other reports, studies, data, or any other analysis or assessment of personal injuries, or any other physical, mental, or emotional injuries, illnesses, or claims, or death attributed to the Response Activities, including but not limited to plans or proposals to review such reports, studies, data or other analyses or assessments.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 87.)

29

179.    All documents referring or relating to medical, scientific, technical, or other reports, studies, predictions, estimates, data, or measurements, or any other analyses or assessments of acute or chronic human health effects (including injury, illness, or death), toxicities, hazards, exposures, or risks, whether physical, mental, or emotional, related to, concerning, attributed to, based upon, or otherwise associated with, Response Activities, including but not limited to plans or proposals to study, predict, estimate, evaluate, assess, or measure any such effects, toxicities, hazards, exposures, or risks.  (Apr. 7, 2011 BP's First Set of Discovery Requests to the United States of America, No. 88.)

**E.  Impact on BP**

180.    All documents that support any contention by the United States that the economic impact of the penalty on BP and/or the ability to pay of BP should increase the penalty.

181.    All documents referring or relating to any contention by the United States that the economic impact of the penalty on BP and/or the ability to pay of BP should not lower the penalty.

182.    All documents referring or relating to any economic benefit you claim BP in any way received as a result of the *Deepwater Horizon* Incident, Oil Spill, and/or the Response Activities.

**F.  Other Factors**

183.    All documents referring or relating to any contention by the United States that BP's "degree of culpability" should increase the amount of any penalty to be paid by BP, other than any document admitted into evidence by the Court during the Phase 1 or Phase 2 trials.

184.    All documents referring or relating to any "other matters" under Section 311 of the Clean Water Act that the United States believes should be considered in connection with this action.

185.    All documents referring or relating to any "history of prior violations" under

Section 311 of the Clean Water Act that the United States believes should be considered in connection with this action.

186.    All documents referring or relating to any "penalties for the same incident" under Section 311 of the Clean Water Act that the United States believes should be considered in connection with this action.

**G.  Other Requests**

187.    All non-privileged documents responsive to previous discovery requests served on the United States and not yet produced to BP, including but not limited to BP's First Set of Discovery Requests to the United States of America served on April 7, 2011; BP's Second Set of Discovery Requests to the United States of America served on April 26, 2011; and Various Defendants' First Joint Discovery Requests to the United States Related to Phase Two served on October 7, 2011.

188.    All pleadings mentioned or referenced in any pleading, motion, or brief filed by the United States in this action.

189.    All documents relating to the allegations in the United States' Complaint.

190.    All documents that you may use or seek to introduce into evidence at any trial or hearing in this action.

191.    All documents that relate to any expert testimony or opinions, or have been considered by any expert witness that may testify on your behalf at any trial or hearing in this action.

192.    All documents which relate to the anticipated testimony of any person that you may call as a witness at any trial, hearing or deposition in this matter.

193.    All documents that the United States consulted or identified in responses to any Interrogatories propounded on the United States in this matter.

## II.   DEFINITIONS

1.      "Commerce," whether or not capitalized, shall mean activities that relate to the buying and selling of goods and services.

2.      "Commercial fishing," whether or not capitalized, shall mean fishing by a person or entity that holds a commercial fishing license, as well as the means by which one may derive income from catching and selling seafood, including fish and shellfish.

3.      "Communication," whether or not capitalized, shall mean any transmission of information by one or more persons to one or more persons by any means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda, and face-to-face conversations; "communication" includes all documents and electronically stored information ("ESI") containing, summarizing, or memorializing any communication.

4.      "Complaint," shall mean the complaint filed by the United States of America on December 15, 2010, in the civil action number 2:10-cv-04536 pending in the United States District Court for the Eastern District of Louisiana.

5.      "*Deepwater Horizon* Incident" or "Incident," whether or not capitalized, shall mean the events leading to (i) the loss of life and injuries on the *Deepwater Horizon* rig on or about April 20, 2010, and (ii) the eventual sinking of the rig on April 22, 2010, including the blowout, explosions, and fire.

6.      "*Deepwater Horizon* Oil Spill," the "Oil Spill," or the "Spill," whether or not capitalized, means the discharge of hydrocarbons that occurred in connection with the *Deepwater Horizon* Incident.

7.      "Dispersants," whether or not capitalized, shall mean (i) dispersants, (ii) dispersant constituents, (iii) derivatives of any of the foregoing from biological, chemical, photochemical or

other processes, or (iv) any aggregation, mixture or combination of any of the foregoing with any other material including, without limitation, organic matter, inorganic matter, sediments, biological exudates, sand and water.

8.     "Document" or "documents," whether or not capitalized, shall have the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a) including ESI, and includes the original and any identical or non- identical copy, regardless of origin or location, of any writing or record of any type or description, including but not limited to all writings; records; contracts; agreements; communications (intra or inter-company);  correspondence;  memoranda;  letters; facsimiles; electronic mail (e-mail); minutes, recordings, transcripts, and summaries of meetings, or recordings of meetings, speeches, presentations, conversations, or telephone calls (whether recorded in writing, mechanically, or electronically); handwritten and typewritten notes of any kind; statements; reports; voice recordings; desk calendars; diaries; logs; drafts; studies; analyses; schedules; forecasts; surveys; invoices; receipts; computer data; computer printouts; financial statements; balance sheets; profit and loss statements; statements of earnings; statements of net worth; credit reports; statements of operations; audit reports; financial summaries; statements of lists of assets; work papers; pictures; photographs; drawings; computer cards; tapes; discs; printouts and records of all types; instruction manuals; policy manuals and statements; books; pamphlets; cancelled checks; check stubs; and every other device or medium by which information or intelligence of any type is transmitted, recorded, or preserved, or from which intelligence or information can be perceived.

9.     "Environment" or "Environmental," except when used as or in a proper noun, shall refer to (i) air, surface and subsurface water, beaches, land and sediments, and the organic and inorganic constituents of the foregoing, (ii) Organisms (as defined below), (iii) natural resources, (iv) ecosystems, (v) niches and other habitats and (vi) combinations or assemblages of any of the

33

foregoing, in each case in or near the Gulf of Mexico or in or near any other location that may have been affected by Oil-Related Materials (as defined below) regardless of whether in a natural state or modified by human activity.

10. "Gulf Coast" shall mean and refer to the geographic area that includes the Gulf of Mexico and contiguous water bodies and adjacent states, provinces, or other sub-national geographic units.

11. "Hospitality," whether or not capitalized, shall mean establishments that operate facilities or provide services to meet the cultural, entertainment, and recreational interests of their patrons, or that provide customers with lodging or preparation of meals, snacks, and beverages for immediate consumption.

12. "Including" or "includes," whether or not capitalized, shall mean "including but not limited to" or "including without limitation."

13. "Lodging," whether or not capitalized, shall mean establishments that provide accommodations for travelers, vacationers, and others.

14. "Manufacturing," whether or not capitalized, shall mean establishments, persons, and entities engaged in the mechanical, physical, or chemical transformation of materials, substances, or components into new products.

15. "MC252 Well" shall mean the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

16. "Net Environmental Benefit Analysis," whether or not capitalized, shall mean the methodology for comparing and ranking the net environmental benefit associated the *Deepwater Horizon* Incident or Response Activities.

17. "Oil-Related Materials" shall mean any of the following from the MC252 Well or

generated by the drilling thereof or response thereto: (i) oil, (ii) polycyclic aromatic hydrocarbons ("PAHs"), (iii) hydrocarbons, (iv) other oil or gas constituents, (v) well drilling and closure materials, including without limitation, drilling muds and fluids and materials injected into the well-head, (vi) derivatives of any of the foregoing from biological, chemical, photochemical, burning or other processes, (vii) any aggregation, mixture or combination of any of the foregoing with any other material including, without limitation, organic matter, inorganic matter, sediments, biological exudates, sand and water; or (viii) any combination of the foregoing.

18.    "Organisms" shall refer to any and all members of the six kingdoms of life including animals, plants, fungi, protists, archaea, and bacteria.

19.    "Person," whether or not capitalized, shall mean an individual as well as any entity including any proprietorship, partnership, corporation, firm, committee, government agency or subdivision or consultant, or any other organization.

20.    "Relating to" or "related to," whether or not capitalized, when referring to any given subject matter, shall mean any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

21.    "Real estate," whether or not capitalized, shall mean land, including improvements thereon, and property of any nature appurtenant or affixed thereto.

22.    "Recreation activities," whether or not capitalized, shall mean activities undertaken for sport or pleasure.

23.    "Rental real estate industry," whether or not capitalized, shall mean entities or natural persons that rent or lease real estate.

24.    "Response Activities," "*Deepwater Horizon* Response," or the "Response," whether or not capitalized, shall mean any and all activities performed to collect, contain, disperse, burn, or

otherwise respond to or mitigate the effects of the release of oil and hydrocarbons in connection with the *Deepwater Horizon* Incident.

25.    "Restaurant," whether or not capitalized, shall mean an establishment primarily engaged in providing food services to patrons, including but not limited to full-service restaurants, limited-service restaurants, snacks and nonalcoholic beverage bars, food service contractors, and drinking places.

26.    "Shipping," whether or not capitalized, shall mean transportation of cargo, warehousing, and storage of goods, and support activities related to modes of transportation.

27.    "Tourism," whether or not capitalized, shall mean the provision of services to persons traveling to, or staying in, places outside their home community or groups or to industries that serve such persons or organize conventions or meetings; such services include but are not limited to attracting, transporting, accommodating or catering to the needs or wants of such persons, groups, or industries.

28.    "Unified Command" shall mean the structure, organization, and team established to oversee and manage the response to the *Deepwater Horizon* Oil Spill.

29.    "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities, any employees, agents or assigns of these departments, agencies, and instrumentalities, and any person who possesses information or documents within the custody and control of these departments, agencies, and instrumentalities.

30.    "You," "your," and "yours," whether or not capitalized, shall mean the United States.

## III.   <u>INSTRUCTIONS</u>

1.    The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

2.      Unless otherwise specified, respond to all requests for production by searching for documents created on or after April 20, 2005.

3.      Produce all documents in the order in which they appear in your files.  Documents that, in their original condition, are stapled, clipped, or otherwise fastened together shall be produced in this same condition.

4.      Produce all documents within your possession, custody, or control including all documents in the possession, custody, or control of any United States government employee, agent, representative, consultant, attorney, accountant, advisors, or other persons directly or indirectly connected with you or subject to your control, any government department, agency or any other government subdivision.

5.      If any responsive document has been lost, destroyed, removed from, or is no longer in your possession, custody, or control for any reason, please identify the document, its last known location, and the circumstances surrounding its loss, destruction, or removal.

6.      If you contend that any responsive document is protected from disclosure pursuant to any privilege or work-product doctrine, please specifically set forth the privilege being asserted and any factual or legal basis for its assertion.  Also set forth the date and title of the document, its subject matter generally, its author(s) and recipient(s), and its Bates number(s).

7.      Each paragraph is to be construed independently and not by or with reference to any other paragraph for purposes of limiting the scope of any particular request.

8.      If no documents responsive to a particular request exist, or if such documents exist but are not in your possession, custody, or control, then your response to that request shall so state.

9.      For convenience of the parties, BP has included in these Requests for Production requests that BP has previously propounded on the United States in these proceedings but to which the United States has not completely responded.  These previously-propounded requests are

indicated by parenthetical reference to the initial request number.  The inclusion of these previously-served requests does not waive or alter BP's right to seek documents responsive to these or any other discovery requests previously served in these proceedings.

10.    Pursuant to the Federal Rules of Civil Procedure, these requests are continuing and you must revise or supplement your responses and production whenever new or additional responsive information becomes known.

Dated:  January 17, 2014                    Respectfully submitted,

                                            _____DRAFT _____
                                            Richard C. Godfrey, P.C.
                                            J. Andrew Langan, P.C.
                                            Hariklia Karis, P.C.
                                            KIRKLAND & ELLIS LLP
                                            300 North LaSalle Street
                                            Chicago, Illinois  60654
                                            Telephone: (312) 862-2000
                                            Facsimile: (312) 862-2200

                                            and

                                            Robert C. "Mike" Brock
                                            Covington & Burling LLP
                                            1201 Pennsylvania Avenue, NW
                                            Washington, DC 20004-2401
                                            Telephone: (202) 662-5985

                                            and

                                            Don K. Haycraft (Bar # 14361)
                                            LISKOW & LEWIS
                                            701 Poydras Street, Suite 5000
                                            New Orleans, Louisiana 70139-5099
                                            Telephone: (504) 581-7979
                                            Facsimile: (504) 556-4108

                                            *Attorneys for BP Exploration & Production Inc.*