# Exhibit 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig "*Deepwater* : MDL No. 2179
       *Horizon*" in the Gulf of Mexico, on :
       April 20, 2010                        : SECTION: J
                                             :
This Document Relates To: 10-4536            : JUDGE BARBIER
.......................................... : MAG. JUDGE SHUSHAN

## DECLARATION OF
## PATRICIA B. ERDENBERGER

I, Patricia B. Erdenberger, declare as follows under penalty of perjury:

1. I have been an electronic document management consultant on this case since September 2010 through a subcontract with Industrial Economics, Inc., a prime contractor to NOAA on the Deepwater Horizon matter.

2. Prior to working for Industrial Economics, I was employed at NOAA full time as the agency Records Officer from late 2008 to my retirement from Federal service on June 30, 2010. My primary duties relevant to Deepwater Horizon during that time were educating NOAA staff and supervisors on the preservation requirements under the litigation hold and the management of their records related to the Event and the Gulf of Mexico.

3. As NOAA's contracted consultant I am currently an agency point of contact and have primary responsibility for ensuring that NOAA is in full compliance with its Natural Resources Damage Assessment document management responsibilities for the Deepwater Horizon Event. In my role, I: oversee document preservation and organization environments and training for NOAA line offices; shepherd ongoing

document information collection and production of documents for discovery and other document requests; assist in the development of systems and software environments to collect, preserve, and produce documents related to the Natural Resource Damage Assessment; assist in identifying budget requirements for the preservation and production of documents related to the Natural Resources Damage Assessment. By necessity, some information management tasks do overlap from time to time with tasks in the current litigation; in that event, I may work indirectly in support of the litigation effort.

4. I participated extensively in NOAA's response to the discovery requests, including the search for and collection of documents as well as the budgetary and contracting requirements to complete discovery for Phase One of this litigation, and I am therefore familiar with NOAA's discovery production in this case.

5. On January 17, 2014, BP sent the United States a proposed set of discovery for the third Phase of this litigation (the "Penalty Phase"). It included 193 separate Requests for Production, including numerous requests related to the Natural Resources Damage Assessment. The Requests for Production related to Natural Resources Damage Assessment include descriptions of requested categories of documents that generally are overbroad, are subject to multiple possible interpretations, and some that are confusing.

6. Based on my previous experience in this litigation, I estimate that the resources required to respond to BP's proposed discovery into the Natural Resources Damage Assessment would include (but is not limited to) the following:

    a. In the process of tracking the location of DWH electronically stored information (ESI) through NOAA, NOAA has compiled a detailed list of 450 contractors and

staff that are or are reasonably expected to be in possession of at least some ESI related to the Natural Resource Damage claim. These individuals are located throughout the entirety of the United States. The collection of this ESI will require access to and interaction with approximately one hundred Information Technology infrastructure architectures, along with a variety of email formats and myriad other collection and processing challenges.

b. Drawing upon past experience in the first phase of this trial, 450 custodians will lose an average of 5 full days of mission effort to address the extreme complexity of collecting NRDA electronic info midstream. Thus, were we to collect from all 450 custodians, collection alone results in 2,250 days or 18,000 hours of Natural Resources Damage Assessment mission effort lost to the initial discovery process.

c. Each of the 450 custodians is enveloped within an IT infrastructure that requires the time of IT staff to assist in the collection effort. Again drawing upon the experience of phase one discovery efforts, approximately two full days of mission effort will be required for one IT person to support each custodian's gathering of ESI. Thus, collection alone will require 900 days or 7,200 hours of IT mission support effort lost.

d. Based on the above figures in 6a. and 6b., the collection, which is merely the initial step in a complex discovery operation, will cause NOAA to lose a total of 3,150 days or 25,200 hours of mission effort.

Executed on February 12, 2014, at Long Beach, California.

_____
Patricia B. Erdenberger