UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | : : : : : | MDL NO. 2179  Section: J |
| This Document Applies to: | : : | The Hon. Carl J. Barbier |
| *No. 12-970, Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al.* | : : : | The Hon. Sally Shushan |

REPLY OF THE SPECIAL MASTER
TO RESPONSE OF ANDRY LERNER, LLC,
JON ANDRY, AND GLEN LERNER TO MOTION FOR
RETURN OF PAYMENTS MADE TO CASEY THONN AND OTHERS

COMES NOW Special Master, Louis J. Freeh, and respectfully submits this reply to the response of Andry Lerner, LLC, Jon Andry, and Glen Lerner (collectively "Andry Lerner") (Doc. No. 12348) ("Response") to the Special Master's motion for return of payments made to Casey Thonn and others ("Motion") by the Deepwater Horizon Economic Claims Center ("DHECC").

The law of restitution is clear: Attorney contingency fees are subject to recoupment where the client's judgment is reversed or voided as a result of the client's fraudulent conduct, even where the attorney did not have knowledge of the fraud and was not a participant in the fraudulent conduct. The Special Master's motion should be granted.

**A. *Analysis***

1. Contingency Fees Are Subject to Restitution.

Andry Lerner states it may not be required to return attorney fees "in the absence of an express finding that Andry Lerner participated in the asserted fraudulent act of preparing and submitting alleged fraudulent tax returns." Response at 1-2. Andry Lerner

states the Court would have to find that it "had actual knowledge that the Original Return and the Amended Return had not been filed in order to 'claw back' any attorney's fees received by Andry Lerner." *Id*. at 12.  The law governing restitution of attorney's fees paid by contingency fee arrangements, however, does not support these arguments.

Attorney fees paid by contingency fee arrangements may be recouped through restitution where the client's judgment is reversed or voided.  *See Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996).  The Eighth Circuit explained that "[a]lthough we agree that the law of restitution generally will not require an attorney to repay legal fees paid by a client from a judgment that is subsequently reversed on appeal, restitution by the attorney is appropriate where such a payment is made pursuant to a contingent fee." *Id*.

The contingent fee is the relevant factor to this analysis, as the attorney's fee in such cases is dependent on "success in the representation, and the attorney assumes, along with the client, the inherent risks of litigation." *Mohamed,* 91 F.3d at 1126-27.  An attorney paid by contingent fee, while not a party to the case, is a real party in interest who receives payment as a beneficial owner of the judgment and is under a duty to restore the amount received if the award is reversed, unsuccessful on appeal or later found to be procured by fraud.  *See, e.g., Lowe v. Experian*, 328 F. Supp. 2d 1122, 1129 (D. Kan. 2004) (by entering into contingency fee agreement, an attorney "acquires a beneficial interest in the final award" and therefore is liable for restitution); *Abrahami v. U.P.C. Constr. Co,* 248 A.D.2d 272, 272-73 (N.Y. App. Div. 1st Dep't 1998) (where investors won at trial but lost on appeal, investors' lawyers were required to make restitution of funds representing a contingent fee retained in connection with the matter but not for disbursements retained or made to third parties for client debts).  The Special Master here seeks the attorney fees retained by Andry

Lerner of $35,770.23, but not roughly $522.51 in disbursements made by the firm to third parties for Thonn's litigation debts (which will be sought from Thonn himself).

Andry Lerner relies upon *Martin v. Lenahan*, 658 So.2d 119 (Fla. Dist. App. 1995) and *Wall v. Johnson,* 80 So. 2d 362 (Fla. 1955), but neither case addressed restitution obligations under contingency fee agreements.  *Martin* is a medical malpractice case which was initially settled with payment to the plaintiff, but the parties later stipulated to relief from the judgment and partial restitution as a result of fraud committed by the plaintiff. *Martin* held that the plaintiff's attorney was not liable for restitution and relied on the Restatement (First) of the Law of Restitution, § 74, Comment H (1936), when addressing the unique circumstances of the case.  *Id.* at 120-21.

Comment H addresses restitution from judgment creditors, not restitution from attorneys who received payments pursuant to a contingency fee agreement.  *See, e.g., Excel Corp. v. Jimenez*, 7 P.2d 1118, 1128 (Kan. 2000) ("We agree with the Eight Circuit in *Mohamed* that Comment H is not applicable in the contingent fee case because the attorney receiving a contingent fee is more like a real party in interest than a bona fide purchaser or a judgment creditor.").  Restitution in cases involving contingent fees is addressed under Comment K to Section 74 of the Restatement (First) of the Law of Restitution, which provides:

> After the reversal of a judgment any person who, although not a party to the action, was a real party in interest and who received payment in whole or in part as the beneficial owner or as one of several owners, is under a duty to restore the amount received by him.

*Id.*; *see also Excel Corp.*, 7 P.3d at 1125-27.

In other filings with the Court, Andry Lerner has acknowledged that "Louisiana case law and statute recognize that an attorney with a valid contingent fee contract has an

- 3 -

'interest in the subject matter of the suit'." *See* Andry Lerner's Objections to Special Master's Report at 2-3 (Doc. No. 11991 Dec. 16, 2013) ("If no recovery results, no compensation is received by the attorney."). This "interest in the subject matter of the suit" is what distinguishes Andry Lerner's liability for restitution from the cases Andry Lerner cited in its Response. *See Cox v. Cox*, 780 N.E.2d 951, 962 (Mass. App. Ct. 2002) ("We also think it sensible, when the third party is an attorney, that the nature of the fee arrangement should be a chief consideration in determining the category into which the third party falls . . . A nonparty may be liable, however, where the nonparty is effectively a party to the action, such as where an attorney retains portions of the judgment under a contingent fee arrangement"); Restatement (Third) of Restitution and Unjust Enrichment, § 18, Illustrations 15 and 16 (making distinction on contingency fee restitution clear).

Andry Lerner also states it is not liable to return its fee because it had no knowledge of any fraud in securing the judgment. *See* Response at 10. Yet the attorney's awareness of the client's fraud is immaterial to the restitution obligation. *Berger v. Dixon & Snow, P.C.*, 868 P.2d 1149, 1153 (Colo. Ct. App. 1993) ("A claim for equitable restitution does not depend upon a breach of substantive duty in tort or contract; restoration of a benefit may be ordered without a finding of fault or misconduct."). Here, Thonn's claims never should have been paid. The "contingency" authorizing Andry Lerner to retain attorney's fees occurred improperly, and Andry Lerner never should have received fees under its contract. *See* Restatement (Third) of Restitution and Unjust Enrichment, § 18 at Illustration 16 (where lawyer paid contingent fee on judgment later set aside because of client's fraud, lawyer is subject to restitution even though lawyer was unaware of client's fraud).

2. <u>The Special Master Has Authority to Pursue the Claim Against Andry Lerner</u>.

Andry Lerner states that the Special Master does not have authority to seek the clawback remedy. In November 2013, Andry Lerner raised this argument (Doc. No. 11830), and asked the Court to "[s]trike the Special Master's authority to initiate legal action to 'clawback' the payment of any fraudulent claims." On November 12, 2013, the Court denied the motion (Doc. No. 11837). The Court's September 6, 2013 Order (Doc. No. 11288) directed that the Special Master shall, among other tasks, examine and investigate "any past or pending claims submitted to the CSSP which are deemed to be suspicious [and] initiate legal action to 'clawback' the payment of any fraudulent claims; and do this in a manner which does not delay or impede the payment of legitimate claims." This clawback action is appropriate and within the Special Master's authority.

3. <u>Andry Lerner's Arguments about Thonn's Claims Have No Relevance</u>.

Andry Lerner raises a number of collateral matters in its brief, but none of these issues address the core fact that Thonn supported his CSSP claim with false income tax forms that had never been filed with the Internal Revenue Service ("IRS").

Andry Lerner first states that Thonn's claim originally was filed by different counsel with the GCCF. Yet Andry Lerner does not dispute that it re-filed Thonn's claims with DHECC, and that the firm received payments as a result of the DHECC's payment of Thonn's claims. Andy Lerner also states that GCCF investigators cleared Thonn's claim of fraud. The "investigation" involved two investigators – one a former boyhood coach to Thonn – who met with Thonn and asked him if the tax forms he filed with the GCCF were the forms he actually filed. The investigators were tasked with meeting the tax preparer yet never actually held this meeting. The "investigation" is immaterial and without any merit.

Andry Lerner also states that the 2009 amended return was signed by the preparer, thus indicating that the preparer filed the return and amended return. Andry Lerner makes no claim to have ever spoken to the preparer, or to have ever checked with the IRS to make sure that the forms were filed. In any event, the preparer's signature does not change the fact that the IRS never received Thonn's 2009 1040A or his amended 1040X. The IRS also never received the tax allegedly due on the forms Thonn filed with the DHECC. The IRS records plainly show that the forms never were filed.

4. The Special Master's Affidavit is Appropriate.

Andry Lerner raises a number of hypothetical questions concerning the investigation outlined in an affidavit attached to the Special Master's motion, the knowledge that the tax preparer had about Thonn's tax forms, and whether Thonn may have kept separate bank accounts from his former wife. None of these claims address the core issue: Thonn presented false information and documents, including tax "returns" that in fact had never been filed with the IRS, to support his seafood compensation claim before the DHECC. Relying on these misrepresentations, the DHECC paid Mr. Thonn $357,002.35 for his fraudulent claims.

## B. *Conclusion*

For the reasons stated in the Special Master's filings, the Court should enter a judgment requiring Andry Lerner to make restitution to the DHECC for $35,700.23, representing the attorney fees collected by the Andry Lerner law firm under its contingency fee agreement for Thonn's seafood claims before the DHECC.

Respectfully submitted,

____/s/ Louis J. Freeh_____
Louis J. Freeh
Special Master

Dated: February 24, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing brief has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this     24th    day of        February       , 2014.


                                         /s/Louis J. Freeh
                                         Louis J. Freeh