**Daniel A. Cantor**
Daniel_A_Cantor@aporter.com

202.942.5765
202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

March 11, 2013

**ELECTRONIC MAIL**

Patrick Juneau and Christine Reitano
Court Supervised Settlement Program
935 Gravier Street
New Orleans, Louisiana  70112

Dear Mr. Juneau and Christine:

In advance of Tuesday's Claims Administration Panel meeting, BP respectfully submits this letter addressing the rights of the parties to data under the Settlement Agreement.

Simply put, from the beginning of negotiations, Class Counsel demanded that the claims process be fully transparent.  Reflecting this demand by Class Counsel, the Settlement Agreement expressly provides that both Class Counsel and BP shall have full access to claims data.  The Settlement Agreement contains only one, narrowly tailored exception to this overriding principle of transparency--so that the Settlement Program may go about the business of determining claims without interference by claimants, Class Counsel, or BP, the Settlement Agreement restricts access to the internal working papers of the Settlement Program containing evaluations of claims until a given claim is decided.  There are no other limits on transparency.  These rules regarding access to data were reconfirmed during a June 2012 Claims Administration Panel meeting, as well as at a subsequent conference among the parties and the Settlement Program.  There is no basis for Class Counsel's current attempt to limit BP's access to data *both* parties are authorized to obtain under the Settlement Agreement.

The Settlement Agreement Expressly Provides BP With Access To Claims Data

Section 4.4.14 of the Settlement Agreement provides:  "BP and Class Counsel shall have access to all Claim Files and Claims-related data transferred to or generated in the Settlement Program for any legitimate purpose including, without limitation, the operation of BP's separate OPA facility, prosecuting and defending appeals, reviewing and auditing the Settlement Program, reporting financial results, and pursuing indemnification, contribution, subrogation, insurance and other claims from third parties.

March 11, 2013
Page 2

However, BP and Class Counsel shall not have access to any Claim Files for Claims that are being processed and have not yet been resolved in the Settlement Program except if the Claim File is needed by BP, a Claimant, or their counsel to prosecute or defend an Appeal." Similar language is also contained in the Court's Order Regarding Settlement Implementation. As this language makes clear, the Settlement Agreement provides for full, unhindered access to "Claims-related data." There are no limitations on the parties' access to "Claims-related data." The data contained in the weekly Excel--objective data regarding claims filed--constitutes "Claims-related data" under Section 4.4.14, and therefore both parties have full access to such data at all times.

The only limitation in Section 4.4.14 is irrelevant to the issue at hand. This limitation, which was agreed to by the parties to ensure that there would be no interference with the Settlement Program's evaluation of a claim while it is in process, simply requires that the Settlement Program not provide its internal work papers and evaluation of claims (referred to in the Settlement Agreement as the Settlement Program's "Claim Files") until the claim is determined. The objective data provided in the weekly Excel is not a Claim File.

Unable to dispute the meaning of the above quoted language, Class Counsel suggests that perhaps there was a drafting error in that part of Section 4.4.14, which gives the parties unrestricted access to Claims-related data. *See* Electronic Mail from Steve Herman to Dan Cantor (Feb. 13, 2013) ("I am not sure that there was a conscious and material intent to not repeat "Claims-Related Data" along with Claims Files in the second sentence.") The notion that the sentence in Section 4.4.14 giving the parties full access to Claims-related data was a drafting error is completely unfounded. Transparency and full access to data was a core demand of Class Counsel from the beginning. The limitation on pre-determination access to Claims Files but not Claims-related data was a carefully negotiated, intentional distinction designed to impose a narrow limitation in the interest of preventing interference with the Settlement Program's evaluative process while otherwise preserving full transparency.

Class Counsel also argues that "'Claims-Related Data" refers to general, aggregate, non-personal, non-confidential information about the general nature and status of various types of claims, (access to which is not in dispute); it doesn't mean all of the specific information from individual Claims Files simply extracted into Excel spreadsheets." *Id*. Once again, Class Counsel is wrong. In fact, the terms Claims-related data and Claims Files have established meanings that pre-date the Settlement Agreement. They were used in the Court's Order Establishing Transition Process ("Transition Process Order"), which was drafted by Class Counsel and BP and approved by the Court more than a month before the Settlement Agreement was entered. Paragraph 18 of the Transition Process Order provides: "Any and all claims forms and related claims files

March 11, 2013
Page 3

and claims data (collectively, "Materials"), including but not limited to documents and electronically stored data, that are in the possession, custody or control of the GCCF, shall be made available to the Transition Process, and the Court Supervised Claims Program." When the Court ordered the GCCF to make available to the Settlement Program "claims data," clearly it was not using that term to mean only "general, aggregate, non-personal" data, as Class Counsel now attempts to suggest. The Transition Process could not have functioned with such general, non-claim specific data. Rather, the Transition Process Order used the term "claims data" to refer to the electronic database of claim-specific, objective data concerning each of the hundreds of thousands of claims filed with the GCCF. The Settlement Agreement adopted the same terminology, and gave BP and Class Counsel full access to all "claims data" of the Settlement Program.

The June 2012 Claims Administration Panel Meeting and Subsequent Conference

How Section 4.4.14 is implemented was the subject of detailed discussion at a June 2012 Claims Administration Panel meeting, which was attended by Judge Shushan. You likely recall that Orran Brown put a detailed grid regarding data access on the whiteboard, and all parties confirmed that, consistent with the terms of the Settlement Agreement, there would be full, transparent access to data with the limited exception of pre-determination Settlement Program workpapers evaluating a claim. Indeed, there was a follow-up teleconference on July 2, 2012 attended by the parties and the Settlement Program where this process was confirmed yet again. Only after the rules for data distribution had been reviewed and agreed upon on three separate occasions--in the Settlement Agreement, at the June 2012 Claims Administration Panel meeting, and during the subsequent July 2, 2012 teleconference--was data made available to the parties in conformity with the terms of the Settlement Agreement.

There Is No Basis For Restricting BP's Rights to Claims Data

Because the Settlement Agreement expressly provides BP with access to the data at issue, that should be the end of the inquiry. Tellingly, Class Counsel has not and cannot offer any legitimate reason why BP should not have access to the Claims-related data as is authorized under the Settlement Agreement. There is none. BP is the party funding claims payments--which have already exceeded $1 billion--and it has a right to understand the nature of claims being filed. Moreover, as recognized in Section 4.4.14, an understanding of Claims-related data is important for purposes of BP's public reporting obligations. Finally, Mr. Juneau has repeatedly stressed that transparency is a fundamental tenet of Settlement Program.

\* \* \*

March 11, 2013
Page 4

    BP trusts that the Settlement Program will continue to provide full access to Claims-related data, including the information currently provided in the weekly Excel sheet.  Thank you in advance for your attention to this matter.

                        Sincerely,

                        /S/

                        Daniel A. Cantor