# ARNOLD & PORTER LLP

Daniel A. Cantor
**Daniel.Cantor@aporter.com**

+1 202.942.5765
+1 202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

November 9, 2013

**Via Electronic Mail**

Patrick Juneau
Court Supervised Settlement Program
935 Gravier Street
New Orleans, LA  70112

        Re:    Access to Data

Dear Mr. Juneau:

        We are in receipt of Steve Herman's October 24, 2013 electronic mail in which he, on behalf of Class Counsel, seeks to eliminate the transparency that is not only required by the Settlement Agreement but also was the subject of an express agreement made by Mssrs. Herman and Roy during a June 2012 Claims Administration Panel meeting.

        Transparency has always been fundamental to the entire settlement process.  One of the lessons learned from the investigations of the Court-appointed Special Master is that more, not less, transparency is needed.  Accordingly, it is essential as a matter of the express terms of the Settlement Agreement, the subsequent agreement of the parties, and the proper administration of the settlement process that there must be no reduction in transparency or data access.

The Settlement Agreement Expressly Provides BP With Access To Claims Data

        Section 4.4.14 of the Settlement Agreement provides:  "BP and Class Counsel shall have access to all Claim Files and Claims-related data transferred to or generated in the Settlement Program for any legitimate purpose including, without limitation, the operation of BP's separate OPA facility, prosecuting and defending appeals, reviewing and auditing the Settlement Program, reporting financial results, and pursuing indemnification, contribution, subrogation, insurance and other claims from third parties.  However, BP and Class Counsel shall not have access to any Claim Files for Claims that are being processed and have not yet been resolved in the Settlement Program except if the Claim File is needed by BP, a Claimant, or their counsel to prosecute or defend an Appeal."  Similar language is also contained in the Court's Order Regarding Settlement Implementation.  As this language makes clear, the Settlement Agreement provides for full, unhindered access to "Claims-related data."  There are no limitations on the parties' access to "Claims-related data."  The data made available by the CSSP to both Class Counsel and BP in the weekly Excel download--objective data regarding claims filed--

# ARNOLD & PORTER LLP

Patrick Juneau
November 9, 2013
Page 2

constitutes "Claims-related data" under Section 4.4.14, and therefore both parties have full access to such data at all times.

The only limitation in Section 4.4.14 is irrelevant to the issue at hand. This limitation, which was agreed to by the parties to ensure that there would be no interference with the Settlement Program's evaluation of a claim while it is in process, simply requires that the Settlement Program not provide its internal work papers and evaluation of claims (referred to in the Settlement Agreement as the Settlement Program's "Claim Files") until the claim is determined. The objective data provided in the weekly Excel is not a Claim File.

Unable to dispute the meaning of the above quoted language, Class Counsel suggests that perhaps there was a drafting error in that part of Section 4.4.14, which gives the parties unrestricted access to Claims-related data. *See* Electronic Mail from Steve Herman to Dan Cantor (Feb. 13, 2013) (appended to Steve Herman Electronic Mail of October 24, 2013) ("I am not sure that there was a conscious and material intent to not repeat "Claims-Related Data" along with Claims Files in the second sentence.") The notion that the sentence in Section 4.4.14 giving the parties full access to Claims-related data was a drafting error is baseless. Transparency and full access to data was a core demand of Class Counsel from the beginning. The limitation on pre-determination access to Claims Files but not Claims-related data was a carefully negotiated, intentional distinction designed to impose a narrow limitation in the interest of preventing interference with the Settlement Program's evaluative process while otherwise preserving full transparency.

Class Counsel also argues that "'Claims-Related Data' refers to general, aggregate, non-personal, non-confidential information about the general nature and status of various types of claims, (access to which is not in dispute); it doesn't mean all of the specific information from individual Claims Files simply extracted into Excel spreadsheets." *Id*. Once again, Class Counsel is wrong. In fact, the terms Claims-related data and Claims Files have established meanings that pre-date the Settlement Agreement. They were used in the Court's Order Establishing Transition Process ("Transition Process Order"), which was drafted by Class Counsel and BP and approved by the Court more than a month before the Settlement Agreement was entered. Paragraph 18 of the Transition Process Order provides: "Any and all claims forms and related claims files and claims data (collectively, "Materials"), including but not limited to documents and electronically stored data, that are in the possession, custody or control of the GCCF, shall be made available to the Transition Process, and the Court Supervised Claims Program." When the Court ordered the GCCF to make available to the Settlement Program "claims data," clearly it was not using that term to mean only "general, aggregate, non-personal" data, as Class Counsel now attempts to suggest. The Transition Process could not have functioned with such general, non-claim specific data. Rather, the Transition Process Order used the term "claims data" to refer to the electronic database of claim-specific, objective data

# ARNOLD & PORTER LLP

Patrick Juneau
November 9, 2013
Page 3

concerning each of the hundreds of thousands of claims filed with the GCCF. The Settlement Agreement adopted the same terminology, and gave BP and Class Counsel full access to all "claims data" of the Settlement Program.

The June 2012 Claims Administration Panel Meeting and Subsequent Conference

How Section 4.4.14 is implemented was the subject of detailed discussion at a June 2012 Claims Administration Panel meeting, which was attended by Judge Shushan. Orran Brown put a detailed grid regarding data access on the whiteboard, and all parties confirmed that, consistent with the terms of the Settlement Agreement, there would be full, transparent access to data with the limited exception of pre-determination Settlement Program workpapers evaluating a claim. Indeed, there was a follow-up teleconference on July 2, 2012 attended by the parties and the Settlement Program where this process was confirmed yet again. Only after the rules for data distribution had been reviewed and agreed upon on three separate occasions--in the Settlement Agreement, at the June 2012 Claims Administration Panel meeting, and during the subsequent July 2, 2012 teleconference--was data made available to the parties in conformity with the terms of the Settlement Agreement.

Importantly, at the March 2013 Claims Administration Panel meeting, you yourself cited to this meeting and informed Class Counsel that it had agreed at the June 2012 meeting to the data access currently being provided, and that the Settlement Program would not undo that agreement.

There Is No Basis For Restricting BP's Rights to Claims Data

Because the Settlement Agreement expressly provides BP with access to the data at issue, that should be the end of the inquiry. Tellingly, Class Counsel has not and cannot offer any legitimate reason why BP should not have access to the Claims-related data as is authorized under the Settlement Agreement. There is none. BP is the party funding claims payments, and it has a right to understand the nature of claims being filed. Moreover, as recognized in Section 4.4.14, an understanding of Claims-related data is important for purposes of BP's public reporting obligations. Finally, the unfortunate events identified in the Special Master's September 6, 2013 report only underscore the critical importance of continued transparency.

\* \* \*

# ARNOLD & PORTER LLP

Patrick Juneau
November 9, 2013
Page 4


      BP trusts that the Settlement Program will continue to provide full access to Claims-related data, including the information currently provided in the weekly Excel sheet.  Thank you in advance for your attention to this matter.

                            Sincerely,

                            /s/

                            Daniel A. Cantor


cc:      Frank Piantidosi
          Steve Herman
         James Roy