UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | * | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, ON APRIL 20, 2010 | * | Section J |
| | * | |
| This Document Applies to: | * | Judge Barbier |
| | * | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | * | Mag. Judge Shushan |
| *al. v. BP Exploration & Production Inc., et al* | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

COASTAL CLAIMS GROUP, LLC'S MOTION TO
DISMISS MOTION OF THE SPECIAL MASTER FOR
RETURN OF PAYMENTS MADE TO CASEY C. THONN AND OTHERS

NOW COMES Coastal Claims Group, LLC ("CCG"), through undersigned counsel, and respectfully requests that this Honorable Court dismiss the *Motion of the Special Master for Return of Payments Made to Casey C. Thonn and Others*, as it relates to CCG, for failing to properly institute proceedings against CCG and, solely in the alternative, for failing to state a claim or cause of action against CCG for which relief can be granted, pursuant to Rule 12(b)(6). All for the reasons more fully explained herein.

## I.    FACTS

CCG has no knowledge of the underlying facts upon which the Special Master bases his claims for fraud and/or restitution against Casey Thonn ("Thonn"), AndryLerner, LLC

("AndryLerner"), Jonathan Andry, Glen Lerner, and Lionel Sutton, III.  If the Special Master's recitation of facts is correct, the Deepwater Horizon Economic Claims Center ("DHECC") paid Thonn a total of $357,002.35 for two claims submitted to the DHECC, claims 19690 (vessel owner) and 19691 (vessel captain).  The Special Master alleges that these payments were made to Thonn based upon false documents provided by Thonn and/or his counsel to the DHECC and Thonn's misrepresentation of his 2009 shrimping income.  *(Rec. Doc. 12107 p.1)*  In effort to "claw back" these funds, the Special Master asks the Court to enter a judgment requiring the return of the funds paid to Thonn **and** "requiring all professionals who assisted Mr. Thonn and benefitted from this unjustified payment from DHECC to similarly return such payments."  *(Rec. Doc. 12107 p.1)*

It is undisputed that the DHECC has not paid CCG ***any amount*** related to Thonn's claim. Therefore, it is impossible for CCG to return payments it did not receive.  Moreover, despite claiming that he is only seeking the "return" of all money, the Special Master seeks to turn a profit for the DHECC.  His *Proposed Order* requests that Thonn be ordered to return the entire $357,002.35 to the DHECC, but also seeks an additional $35,700.23 from Lionel Sutton, III, $20,182.50 from CCG, and an undisclosed amount from Jonathan Andry, Glen Lerner, and AndryLerner.  *(Rec. Doc. 12107 p.2)*  These amounts are not, "in the alternative", they are cumulative.  *(Rec. Doc. 12107 p.2)* Should the Court grant the Special Master's motion the DHECC wouldn't just receive the return of its funds, it would profit $55,882.73 ***plus*** whatever amount is required to be paid by Jonathan Andry, Glen Lerner, and AndryLerner.

## CCG's INVOLVEMENT WITH THE CLAIMS OF THONN

Regarding CCG's involvement in this matter, the operative facts are as follows.  Coastal Claims Group, LLC was formed on March 18, 2012 for the sole purpose of assisting attorneys

and law firms in calculating the economic losses of individuals covered by the Settlement Agreement reached between BP and the plaintiffs in this litigation.  *(Affidavit of Kevin Ingram attached hereto as Exhibit 1)*  The service provided by CCG is an expert service that is very common in litigation; the calculation of potential damages, pursuant to an established formula, based on assumed facts and data.  *(Ex. 1 at ¶ 3)*  As this Court is aware, CCG is providing this service in the private sector and is not working for the Court nor directly for the DHECC.  *(Ex. 1 at ¶ 4)*  Incidentally, Coastal has performed services for forty-two ("42") separate law firms, including AndryLerner, LLC.  *(Ex. 1 at ¶ 5)*  Currently, CCG has received a total of 1,982 claims, of which 628 have been evaluated and 114 are currently open and being processed.  *(Ex. 1 at ¶ 6)*

On April 25, 2012 CCG entered into a Claim Consulting Contract ("contract") with AndryLerner.  *(Claim Consulting Contract between CCG and AndryLerner, LLC attached hereto as Exhibit 2)*  The contract was executed by Jonathan Andry and governed all work performed by CCG for the AndryLerner law firm.  Pursuant to the contract, the following services were to be provided:

> The [AndryLerner Law Firm] hereby agrees to engage CCG to provide the Firm with services consisting of investigation and expert financial analysis of the impact of the BP Deepwater Horizon Oil Spill caused to businesses and individuals along the US Gulf Coast.  Upon receipt of assigned claims from the firm, CCG will process all claims by gathering any necessary financial and causation documentation, as required by the Court Supervised Claims Process ("CSCP") and prepare an Expert Financial Analysis of such documentation.  All documentation and Expert Analysis will be forwarded to the firm as a complete Claim Package that may then be filed by the firm with the CSCP.

*(Ex. 2 at p. 1)*

Pursuant to the terms of the contract CCG provided an expert service to the AndryLerner Law Firm to assist in the valuation of potential claims for clients of the law firm.  At no point was the claimant a client to CCG.  *(Ex.2 at p. 2)*

On or about May 4, 2012, AndryLerner sent over the claims of Thonn. *(See Service Invoice, attached hereto as Exhibit 3)* Thonn's claims were supported by tax returns prepared by O.W. Favre of Otis Income Tax, Inc. *(Rec. Doc 12107-2)* CCG utilized all of the information provided to it by AndryLerner and Thonn[1] to perform a nine (9) page evaluation of Thonn's claims based upon the information presented and the guidelines of the DWH Court Supervised Settlement Program Agreement. *(Forensic Analysis and Report, attached hereto as Exhibit 4)* In the concluding paragraph, CCG notes that "[a]ll source documents have been provided by the claimant and utilized in their submitted form." *(Ex. 4 at p. 9)*

Once all the underlying work was complete and the report was issued, CCG issued an invoice to AndryLerner, LLC for their work on the claim. *(Ex. 3)* The invoice was for 169.5 hours of work and totaled $20,182.50. *(Ex. 3)* This invoice has *not* been paid in full as CCG has received two partial payments, one on March 11, 2013 from the AndryLerner, LLC IOLTA account in the amount of $9,440.00, bearing check # 1311 and a second check on May 24, 2013 from the Andry Law Group, LLC operating account in the amount of $4,840.10, bearing check # 5303. *(Cancelled checks attached hereto, en globo, as Exhibit 5)* Accordingly, $5,902.40, or over 29% of the bill, remains outstanding. CCG emphasizes that the DHECC has not paid any amount to CCG towards the invoice for its analysis on Thonn's claims. Incidentally, Thonn has not paid CCG any amount either.

After receiving the second check on May 24, 2013, CCG heard nothing more on the Thonn claim until one of its members/managers, Bert Verdigets, received an email from Gregory Paw on January 8, 2014 attaching a .pdf version of the *Motion of the Special Master For Return of Payments Made to Casey C. Thonn and Others. (January 8th correspondence of Mr. Paw attached hereto as Exhibit 6)* On January 9th, undersigned counsel contacted Mr. Paw on behalf

---

[1] Listed on page 9 of the Forensic Analysis and Report.

of CCG and questioned the unorthodox method of simply adding CCG to a *Proposed Judgment* in ongoing litigation, to which CCG is not a party, and advised that CCG did not waive formal service of the motion. *(January 9th Correspondence of Mr. Kenney, attached hereto as Exhibit 7)* In response, Mr. Paw made a thinly veiled threat regarding CCG's work, "Please let us know if your client does contest the Court's jurisdiction, as we will then review whether the DHECC should continue to consider documents prepared by your client given your client's [sic] assertion that it is not subject to the Court's oversight for such submissions." *(January 10, 2014 Correspondence of Mr. Paw, attached hereto as Exhibit 8)* Undersigned counsel responded, further explaining the practical problems with the procedure of the Special Master trying to institute a claim against CCG by simply adding them to a motion in ongoing litigation to which it is not, and has never been, a party. *(January 10, 2014 Correspondence of Mr. Kenney, attached hereto as Exhibit 9)*

On January 16, 2014, the Special Master served the *Motion of the Special Master For Return of Payments Made to Casey C. Thonn and Others* on CCG's registered agent and also served a subpoena for records[2]. On January 17, 2014 undersigned counsel sent a brief email confirming service of the subpoena, supplying a courtesy copy of the records that would be produced in response to the subpoena, and made a settlement offer. *(January 17, 2014 Correspondence of Mr. Kenney, attached hereto as Exhibit 10)* In response to the email, Mr. Paw threatened CCG again, this time in a much clearer manner, claiming that "[y]our client should be aware that how it addresses this motion will have a bearing on its future ability to play any role in the DHECC claims process." *(Correspondence of Mr. Paw dated January 17, 2014, attached hereto as Exhibit 11)* Within seven days the Special Master's counsel made two threats to severely impair CCG's business is they didn't kowtow to his authority and simply "pay up."

---

[2] Coastal has fully complied and responded with the subpoena served by the Special Master.

Then, to solidify that this matter is certainly not about the "return" of funds, Mr. Paw made an outlandish settlement demand that CCG obtain, **_AT ITS COST_**, tax transcripts for the years 2008, 2009, & 2010 for all "paid and pending claims that CCG and Mr. Verdigets have submitted to date" as well as "all future claims submitted by CCG and Mr. Verdigets" *(January 28, 2014 Correspondence of Mr. Paw, attached hereto as Exhibit 12)*  To obtain tax transcripts, CCG would have to procure an executed IRS Form 4506 from the claimant, **_who is not their client and whom they do not control_**, then "bear the cost of processing the IRS transcript requests."  *(Ex. 12)*  The cost of processing 3 years of returns for a single person is $150.  CCG has approximately 742 that are processed or are currently being processed for various attorneys and law firms, although it has no idea how many are "paid", "pending" or maybe even abandoned.  *(Ex. 1 at ¶ 7)*  Assuming all are paid and pending, the settlement demand of the Special Master requests that CCG incur costs of $111,300.  Of course, the Special Master also expects that CCG "repay" $10,000 to the DHECC.  *(Ex. 12)*  This analysis completely ignores that the Special Master inconspicuously lumps "Mr. Verdigets", as an individual person, into the settlement demand, who is mentioned nowhere in the motion and is not represented in these proceedings.  Noble intentions are very difficult to discern…

To date, it is undisputed that CCG is not a party to any of the BP litigation, has never been added as a party, and has not been sued by the DHECC or the Special Master. Additionally, neither CCG nor its members have ever been convicted of any crimes resulting from their involvement with evaluating BP claims, they have not been indicted on any allegations of criminal activity, and to their knowledge, are not being investigated for any crimes.  Their only involvement in this matter is the Special Master's addition of them in a motion filed in litigation to which they are not a party.

## II.   <u>LAW AND ANALYSIS</u>

The *Motion of the Special Master for Return of Payments Made to Casey C. Thonn and Others* should be dismissed as it applies to CCG.  The Court lacks jurisdiction to adjudicate the Special Master's allegations against CCG as the Special Master has not properly initiated proceedings against CCG.  Because the Court has no jurisdiction to adjudicate this alleged dispute, the Court should dismiss the motion of the Special Master as it relates to CCG.  Solely in the alternative, and should the Court find that the Special Master properly instituted proceedings against CCG by simply naming CCG in a motion, then the Special Master's motion should be dismissed as the Special Master has no cause of action against CCG for restitution.

### a.   <u>CCG HAS NOT BEEN AFFORDED DUE PROCESS AND IS NOT PROPERLY BEFORE THIS COURT</u>

The Special Master has attempted to completely rob CCG of any due process as it relates to the conclusory allegations in its motion.   The Federal Rules of Procedure are thrown to the wayside by the Special Master in favor of an unorthodox and unprecedented attempt at exacting funds from CCG by simply making broad accusations and adding them to a proposed judgment. Thankfully, the Federal Rules of Procedure do not permit such rogue behavior.

At no point has CCG has ever been included as a party to the above-captioned litigation, and the Special Master has not appropriately initiated a viable civil action against CCG. The Federal Rules of Civil Procedure provide a clear and concise process for commencing a civil action; a process that the Special Master has completely ignored.  The Special Master's failure to adhere to the requirements of the Federal Rules of Civil Procedure divests this Court of personal jurisdiction over CCG in this matter and is fatal to the Special Master's claim.

i. PROCESS FOR COMMENCING A CIVIL ACTION.

The Federal Rules of Civil Procedure provide a clear set of directions for commencing a civil action against a party.   Rule 3 of the Federal Rules of Civil Procedure states that "[a] civil action is commenced by filing **a complaint** with the court." F.R.C.P. 3 (emphasis added).   A complaint is classified by Federal Rule of Civil Procedure 7 as a pleading, not a pleading is specifically not included within the definition of a motion.   Rule 7 explains that pleadings and motions are different, and that motions are requests for a court order. F.R.C.P. 7.   As stated recently by this Honorable Court, pleadings do not include motions, and as such, are treated differently by this Court, especially with respect to the application of the Federal Rules of Civil Procedure. *Chaverri v. Dole Food Co., Inc.*, Civ. A. No. 11-1289, 2012 WL 2087409, p. *2 (E.D.La. June 8, 2012) (Barbier, J.).   More precisely, a civil action cannot be commenced by a motion. *S.E.C. v. Ross*, 504 F.3d 1130, 1140 (9th Cir. 2007).   However, that is precisely what the Special Master attempts to do.

Considering that the Special Master has only made allegations against CCG via a motion, he has failed to properly "commence an action" against CCG as no complaint has been filed against CCG. F.R.C.P. 3 The Federal Rules of Civil Procedure plainly state that filing a complaint is the appropriate means to commence a civil action.   Pursuant to the plain, simple, and easily understood rules governing the commencement of a civil action, it is abundantly clear that the Special Master has failed to comply with any of the rules.   The result of the failure is equally as clear; CCG is not a party in this litigation and cannot be cast in judgment.   See F.R.C.P. 54 (specifying that judgments are entered against "parties")   Therefore, the Special Master's requested relief as it relates to CCG should be denied since a judgment cannot be properly entered against CCG.  F.R.C.P. 54

While most litigants know the proper way to commence an action, attempting to commence an action via a motion is not completely unprecedented.  In *SEC v. Ross,* 504 F.3d 1130 (9th Cir. 2007) the Ninth Circuit dealt with an instance where an appointed Receiver attempted to cast a non-party in judgment by filing a motion and naming the person in the motion.  In *Ross*, the Receiver appointed by the district court filed a motion to disgorge $21 million in commissions on sales of unregistered securities. *Id.* at 1134.  Ernest Bustos, a sales agent included in the disgorgement motion, but not a named defendant in the underlying litigation, contested the Receiver's ability to adjudicate his alleged personal liability through a summary proceeding.  *Id*. at 1135.   The Ninth Circuit then had the opportunity to explain why such a procedure was improper.

The *Ross* court concluded that the failure to file a complaint pursuant to Federal Rule 3, naming Bustos as a party, meant that the Receiver never commenced an action against Bustos. *Id*.  The court held that the Receiver "fought to deprive Bustos of any opportunity to participate as a party," and "failed to take steps consistent with the Due Process Clause or Rule 4 to perfect the court's potential jurisdiction."  *Id*.  Accordingly, the Ninth Circuit vacated the decision of the district court.

The Special Master has also tried to deprive CCG of due process, the right to participate as a party, and the right to properly defend itself from these baseless and vague allegations. CCG has been deprived of the ability to object to jurisdiction and venue, to assert affirmative defenses, and to file any Rule 12 motions. See *Chaverri* at *2. CCG has also been deprived of the opportunity to conduct discovery which, as this Court is aware, provides litigants with a meaningful opportunity to investigate the veracity of claims asserted against them. What opportunity, then, has CCG been provided to adequately defend itself against the unsupported

and conclusory claims asserted by the Special Master?  None.  Such vigilante litigation cannot be allowed and CCG cannot be stripped of their rights or property, without due process of law. Like the Ninth Circuit, this Court cannot allow the Special Master to proceed against CCG in this manner and should deny its motion as it relates to CCG.

        ii.  THIS COURT DOES NOT HAVE JURISDICTION TO ADJUDICATE THE SPECIAL MASTER'S CLAIMS AGAINST CCG.

Notwithstanding the failure to properly commence an action against CCG, the Special Master has failed to present any valid basis of jurisdiction upon which this Court could adjudicate the claims against CCG. The Special Master has merely alluded to the "continuing jurisdiction" vested with this Court in the *Deepwater Horizon Economic and Property Damages Settlement Agreement as Amended on May 2, 2012*. (Rec. Doc. 6430-1). As recited in that document, this Court's "continuing jurisdiction" applies as follows:

**18. CONTINUING JURISDICTION**.

    18.1    Pursuant to the Final Order and Judgment, the Court shall retain continuing and exclusive jurisdiction over **the Parties and their Counsel** for the purpose of enforcing, implementing and interpreting this Agreement, including all issues relating to the scope, application and/or operation of the Release in Section 10 above, including jurisdiction over all Economic Class Members, and over the administration and enforcement of the Agreement and the distribution of benefits to Economic Class Members, and any dispute arising as to the action or election of any Party under Section 21 below regarding the enforceability or illegality of any provisions of this Agreement. Any disputes or controversies arising out of or related to the interpretation, enforcement or implementation of the Agreement and the Release shall be made by motion to the Court. In addition, the Parties, including **each member of the Economic Class as defined in the Final Order of Judgment, and their Counsel are hereby deemed to have submitted irrevocably to the exclusive jurisdiction of this Court for any suit, action, proceeding or dispute arising out of or relating to this Agreement**. The terms of the Agreement shall be incorporated into the Final Order of Judgment of the Court dismissing with prejudice all Released Claims by the Economic Class, Plaintiffs, and Economic Class Members against all Released Parties, which shall allow that Final Order and Judgment to serve as an

enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to the Agreement.

(*Rec. Doc. 6430-1, p. 84-5*) (emphasis supplied).

Experts, or third parties, who assist in the preparation of claims are not part of the defined "parties" in the Settlement Agreement.  CCG is properly categorized as an expert witness, insofar as it provides financial analysis to law firms based upon information provided to CCG for analysis in conjunction with the formulas for recovery from the DHECC.  As such, the "continuing jurisdiction" afforded to this Court, and as alluded to by the Special Master, does not extend to cover claims against CCG.  Since "continuing jurisdiction" is inapplicable, the Special Master has failed to bring before this Court any claim over which it has jurisdiction to enter a judgment against CCG.

In the section of the motion dedicated to the Special Master's claim for restitution from CCG, he cites two cases to support his claim – but neither case discusses how this Court is vested with jurisdiction to adjudicate claims against a non-party.  The cases cited by the Special Master are cases dealing with claims between **parties** and do not establish, in any manner, a proper procedural mechanism for CCG, as a third-party expert witness, to be dragged into litigation without first being afforded its fundamental right to due process of law.

The Special Master cites *S.E.C. v. Blatt*, 583 F.2d 1325 (5th Cir. 1978), for the proposition that this Court is granted broad powers to order disgorgement of legal or other professional fees "realized by each **defendant** for his assistance in executing the fraud, in an amount up to the 'amount realized.'" (*Rec. Doc. 12107, p. 13-14*) (emphasis added). The Special Master also cites to *Schock v. Nash*, 732 A.2d 217 (Del. 1999) for its conclusion that restitution is permitted even when **the defendant** retaining the benefit is not the wrongdoer." (*Rec. Doc. 12107, p. 14*) (emphasis added). Material to each of these citations is the fact that the party from

whom restitution was sought was indeed **a defendant** to the action over which the respective court had jurisdiction.

Both cases cited by the Special Master concerned a named defendant subject to a justiciable cause of action, which is not analogous to this claim at all.  Fortunately, we can again consult the Federal Rules of Civil Procedure on exactly how the Court can be vested with jurisdiction.  Relying on Federal Rule of Civil Procedure 4(k), the court stated that "in order for the court to assert personal jurisdiction over a party-in-interest, the party must be properly served." *Id*. at 232-3.  Federal Rule 4(k)(1) states that serving a summons establishes personal jurisdiction over a party. More importantly, Federal Rule 4 requires that a summons contain:

1)  The name of the court and the parties;
2)  Be directed to the defendant;
3)  State the name and address of the plaintiff's attorney, or – if unrepresented – of the plaintiff;
4)  State the time within which the defendant must appear and defend;
5)  Notify the defendant that a failure to appear and defend  will result in a default judgment against the defendant for the relief demanded in the complaint;
6)  Be signed by the clerk; and
7)  Bear the court's seal.

F.R.C.P. 4(a)(1).

The summons must be served with a copy of the complaint.  F.R.C.P. 4(c). Since there has been no complaint filed against CCG, nor has there been any summons served upon them, the Special Master failed to comply with Federal Rule 4.  Again, like the Special Master, the Receiver in *Ross* also failed to comply with Rule 4.  The *Ross* court explained why a court is without personal jurisdiction to render judgment against a nonparty, such as CCG, for any payments it may have received when the dictates of Rule 4 are not followed.  Specifically, the Ninth Circuit held that "[w]ithout a proper basis for jurisdiction or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's

person or property unless the defendant has consented to jurisdiction or waived the lack of process." *Ross* at 1139, *citing Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d. 415 (1987). The Court stated that this is not a "minor defect" that can be cured by actual notice. *Id*. at 1140. Therefore, without proper jurisdiction over the defendant, any judgment is **void**. *Id*. at 1139. To be crystal clear, CCG vehemently and strenuously objects to jurisdiction and has not waived the lack of process. Any judgment rendered against CCG herein is, as a matter of law, void.

The Special Master's missteps mimic those of the Receiver in *Ross*. CCG is entitled to the basic protections of Due Process. At no point has this Court excused the Special Master from conforming to the Federal Rules of Civil Procedure and the Special Master has never been given the authority to run roughshod of the Rules. Assuming the Special Master has any power to commence an action against a new party in the first place[3], which CCG denies, he must comply with Federal Rules 3 and 4, just like any other litigant. As Federal Rule 4 proscribes, personal jurisdiction is vested with this Court when the summons is served. Without a summons, there can be no personal jurisdiction over CCG. The Special Master's failure to follow the Rules has robbed this Court of the ability to perfect any potential jurisdiction over CCG. Akin to *Ross*, without personal jurisdiction, this Court cannot enter judgment against CCG.

Considering the major procedural deficiencies committed by the Special Master, the claims against CCG should be dismissed. His failure to properly commence a civil action, perfect service of the complaint, and afford CCG with due process is fatal to the claims against

---

[3]Rule 53governs the appointment of Masters, but fails to state that they have *any* authority over non-parties or to commence a new action. Rule 53 seems to allow the Master only to deal with the parties and issues already before the Court, not to add new parties. This is intuitive since the Master is only appointed after all "parties" are given an opportunity to be heard and to suggest candidate for appointment. F.R.C.P. 53(b)(1) Since the "parties" are involved in the selection, it is counter intuitive that the Master can then add new parties who were not entitled to participate in the selection process.

CCG in these proceedings.  Additionally, without conforming to the mandates of the Federal Rules of Civil Procedure the Special Master has failed to vest this Court with jurisdiction over CCG to adjudicate any claim.  CCG respectfully requests that the Court dismiss the claims of the Special Master against CCG in his *Motion of the Special Master For Return of Payments Made to Casey C. Thonn and Others.*

> b. THE SPECIAL MASTER HAS NO CAUSE OF ACTION AGAINST CCG FOR RESTITUTION

Purely in the alternative, and should the Court decide that the Special Master has properly commenced an action against CCG, which is expressly denied, CCG asserts that the Special Master has no cause of action against CCG for restitution and his claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

CCG recognizes that this Court has recently held that Rule 12 does not apply to motions, only "pleadings."  *Chaverri* at *2.  However, CCG asserts that *Chaverri* is distinguishable from this matter as the party who filed the Rule 12 motion in *Chaverri* was truly a *party* and missed its opportunity to file Rule 12 motions as they apply to actual "pleadings."  CCG has never missed an opportunity to file a Rule 12 motion; it simply has been deprived of that ability since there are no "pleadings" filed against CCG in this matter.  Therefore, should the Court find that the addition of CCG to a motion was sufficient to commence a civil action, CCG argues that Rule 12's tenants should apply to the motion as if it were a pleading, since the motion is acting as a pleading insofar as it commences a civil action.  Otherwise, CCG will have been robbed of the protections afforded by Rule 12.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim if the claimant fails to set forth a factual allegation in support of its claim that would entitle it to relief (i.e. for "failure to state a claim"). See, e.g.  *Bell Atlantic Corp. v. Twombly,* 550 U.S.544, 555 (2007); see also *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir.2007).  Those factual allegations "must

be enough to raise a right to relief above the speculative level." *Gonzalez v. Kay, 577* F .3d 600, 603 (5th Cir.2009) (quoting *Twombly*, 550 U.S. at 555)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court must accept all well-pled facts as true and must draw all reasonable inferences in favor of the non-moving party. *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 239 (5th Cir.2009) However, conclusory allegations and unwarranted deductions of fact are not accepted as true. *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir.1982). If the plaintiff fails to allege facts sufficient to "nudge [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570

i.   **"RESTITUTION" IS NOT A CAUSE OF ACTION, IT IS A REMEDY**

The precise basis for the Special Master's claim that CCG should be disgorged of its revenue is eluding, although it seems to be a theory of "guilt by association"; a theory that enjoys no legal support in any court or statute in this state.   However, the motion does make some specific allegations against the actual parties to the litigation and insinuates that; somehow, CCG "assisted Mr. Thonn and benefitted from this unjustified payment." *Rec. Doc. 12107.*   However, the Special Master fails to ever explain how CCG "assisted" or "benefitted" from the DHECC's payment to Thonn.   Putting aside the obvious problems with making unsupported allegations that CCG "assisted" a party in fraud, there is no legal basis on which a claim exists against CCG. The Special Master seeks "restitution" from CCG for funds received for their work on the claims of Thonn. *Rec. Doc. 12107 at 2.*   However, restitution is not a compensable cause of action; it is

a remedy which is available after a specific cause of action is proven.  Black's Law dictionary defines "restitution" as "[a]n equitable remedy under which a person is restored to his or her original position prior to loss or injury…"  *Black's Law Dictionary p.1313.*    In other words, asking for restitution without first establishing a valid cause of action against CCG which permits restitution is the equivalent to "putting the cart before the horse."

Under Louisiana law, restitution is defined as a type of damages sought by parties seeking compensation under a valid cause of action.  There is no separate cause of action sounding in "restitution."  As such, a party must file a complaint seeking a valid cause of action under the law before damages in the form of restitution may be awarded[4].

For the Special Master to perfect the judgment he seeks against CCG, he must have a finding of some underlying liability which offers restitution as a remedy.  In this case, the Special Master not only lacks any such judicial determination, but has also failed to even allege that CCG is liable for some underlying legal theory which would give rise to restitution.  Unless the Special Master can show an adjudication of liability (or criminal conviction) on the part of CCG, it has no claim for restitution in this matter.

---

[4] *State ex rel Guste v. Orkin Exterminating Co., Inc.*, 528 So.2d 198 (La.App. 4 Cir. 1988), *writ denied* 533 So.2d 18, *reconsideration denied* 536 So.2d 1209, (Under unfair trade practices and consumer law, the Attorney General has the authority to request restitution only if consumers are entitled to be compensated and then trial court can order restitution when compensable loss is established); *Domingue v. Whirlpool Corp.*, 303 So.2d 813, 817 (La.App. 3 Cir. 1974) (damages for a cause of action sounding in redhibition can include restitution of the price and repayment of expenses); *Succession of Brooks v. National Serv. Ins. Co., Inc.* 524 So.2d 141, 142 (La.App. 4 Cir. 1988)(Under a Louisiana Unfair Trade Practices and Consumer Protection law, damages sought can include restitution of an amount paid); *Taylor v. Tommie's Gaming*, 38,568 (La. App. 2 Cir. 6/25/04), 878 So. 2d 853, 862 *writ granted*, 2004-2254 (La. 12/17/04), 888 So. 2d 850 and *rev'd on other grounds,* 2004-2254 (La. 5/24/05), 902 So. 2d 380 (recognizing that courts have recognized restitution as a "civil remedy"); *State ex rel. Guste v. General Motors Corp.*, 354 So.2d 770, 775 (La.App. 4 Cir. 1978) court forced to determine if damages of restitution could be sought in a class action even though statute prohibited class action for any claim of actual damages); La.R.S. 51:1408 (statute titled "Additional Relief" allows relief in the form of (5) restitution); *Smart v. Gold, Weems, Bruser, Sues, & Rundell*, 2006-1414 (La.App. 3 Cir. 4/4/07), 955 So.2d 263 (court acknowledged that "among the damages sought was 'restitution'")

There are only a few causes of action which provide the relief of "restitution" such as, conviction of a crime, civil fraud, unjust enrichment, and payment of a thing not owed. None of these underlying causes of action have been alleged against CCG and none of the causes of action would even provide a valid cause of action against CCG. Preliminarily, it is undisputed that no criminal proceedings have been instituted against CCG and certainly no criminal convictions have been reached. Restitution based on a criminal conviction is not an issue in this matter and will not be discussed further. However, even if the Court allows the Special Master to maintain this action on procedural grounds, he has failed to state a claim against CCG for which relief can be granted. Accordingly, the motion should be denied and the claims against CCG dismissed, with prejudice.

### 1. THE SPECIAL MASTER ADMITS THAT FRAUD IS NOT ALLEGED

The claim of civil fraud is defined as a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. C.C. art.1953. In pleading a state law fraud claim, parties are subject to the heightened pleading requirements of Rule 9(b). *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338–39 (5th Cir.2008) To adequately plead fraud, a party must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir.2002). The Special Master has not met the heightened pleading requirements nor has he produced any proof that CCG "intended to deceive" anyone. Since the Special Master failed to properly plead fraud and offers no proof of any fraudulent intent, it cannot maintain a cause of action against CCG for fraud.

Additionally, counsel for the Special Master, Mr. Gregory Paw, has explicitly stated that, "Jason, No one had alleged your client committed a fraud." *(Correspondence of Mr. Paw dated*

*January 17, 2014, attached hereto as Exhibit 13)*  Considering the failure to plead fraud, the absence of any evidence of fraud, and the explicit statement of the Special Master that fraud is not alleged, there can be no recovery of restitution based on a finding of fraud.

### 2.  THE DHECC CANNOT MAINTAIN A CAUSE OF ACTION AGAINST CCG FOR UNJUST ENRICHMENT

The Special Master's motion mentions unjust enrichment, although it does not specifically accuse CCG of being unjustly enriched.  Under Louisiana law, a cause of action for unjust enrichment arises when one estate is enhanced at the expense of another estate, without a cause recognized by law, and for which no other remedy exists at law.  *New Orleans Public Service Inc. v. Vanzant*, 580 So.2d 533, 535 (La.App. 4 Cir. 1991).  In order to prevail on a claim for unjust enrichment, "the plaintiff must prove five elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the resulting impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) the lack of another remedy at law." *Commercial Union Ins. Co. v. CBC Temporary StaffingServs., Inc.*, 2004-0854 (La.App. 1 Cir. 11/3/04), 897 So.2d 647, 651.  However, unjust enrichment has a very important caveat - claims for unjust enrichment will be denied so long as the law provides a remedy for the enrichment against anyone, not only the defendant against whom the claim is asserted against.  *Williams v. Chesapeake Louisiana, Inc.*, C.A. No. 10-1906 (W.D. La. March 11, 2013), 2013 WL 951251.  Thus, no claim for unjust enrichment will exist against one party when other remedies are available against another defendant.  *Fagot v. Parsons*, 2006-1528 (La.App. 4 Cir. 5/9/07), 985 So.2d 750, 752.  Additionally, no cause of action for unjust enrichment exists in favor of a plaintiff who has either entered into a settlement and/or received a judgment for restitution against another party.  *Soileau v. ABC Ins. Co.*, 2002-1301 (La.App. 3 Cir. 3/5/03), 844 So.2d 108, 111.

The Special Master cannot maintain a cause of action for unjust enrichment against CCG because available remedies exist against other parties including Thonn, Jonathan Andry, Glen Lerner, Lionel Sutton, III, and AndryLerner.  The availability of complete recovery against these parties is even explicitly acknowledged by the Special Master in his own motion.  The Special Master states that "the DHECC paid Mr. Thonn $357,002.35 for his fraudulent claims."  *(Rec. Doc. 12107, p. 4)*  Then goes on to request "that Casey C. Thonn make full restitution to the DHECC for Claims 19690 and 19691, and shall immediately return and disgorge $357,002.35 plus prejudgment interested and costs…" *(Rec. Doc. 12107, p. 2)*  Since the DHECC can be made whole through the other entities, who are parties to this litigation, it has no cause of action for unjust enrichment against CCG.  As stated by the Louisiana Fourth Circuit Court of Appeal, "no claim for unjust enrichment will exist against one defendant when other remedies are available against another defendant."  It is undisputed that there is a legal remedy for the Special Master to recover **_all_** of the $357,002.35 from Thonn.  In addition to the full amount sought from Thonn, the Special Master seeks additional funds from Lionel Sutton, III, AndryLerner, Jonathan Andry, and Glen Lerner. *(Rec. Doc. 12107 p. 2)*  In total the Special Master seeks over **$392,702.58 plus additional funds** from AndryLerner, Jonathan Andry and Glen Lerner – an amount that far exceeds the $357,002.35 that the DHECC allegedly paid on Thonn's claims.

Louisiana law also precludes a cause of action sounding in unjust enrichment when a contract exists.  *Tegrity Contractors, Inc. v. Spectra Group, Inc.*, CIV.A. 12-2555, 2013 WL 6669769 (E.D. La. Dec. 18, 2013); *citing Land v. Acadian Prod. Corp. of La.*, 57 F.Supp 338, 345 (W.D.La. 1944).  It is undisputed that there exists a contract between the DHECC and Thonn.  Thonn's Deepwater Horizon Economic and Property Settlement Registration Form has been filed into the record of the court as Exhibit A to the Special Master's motion.  *(Rec. Doc.*

*12107-1).*  As part of this contract between Thonn and the DHECC, Thonn obligated himself and

agreed as follows:

> I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746
> that the information provided in this Registration Form is true and accurate to the
> best of my knowledge, and that supporting documents attached to or submitted in
> connection with this form and the information contained therein are true, accurate,
> and complete to the best of my knowledge, and I understand that false statements
> or claims made in connection with this Registration Form may result in fines,
> imprisonment, and/or any other remedy available by law to the Federal
> Government, and that suspicious claims will be forwarded to federal, state, and
> local law enforcement agencies for possible investigation and prosecution.

Undoubtedly, this is a contract between DHECC and Thonn.  However, even if the Court

finds that this agreement is not a "contract", the language of the agreement provides remedies at

law against Thonn.  Thus, the DHECC has another remedy available to it, breach of contract, and

the Special Master is precluded from maintaining an action for unjust enrichment against CCG.

Lastly, the Special Master cites a 1978 Fifth Circuit Court of Appeals (Florida) case and

claims it supports his position that any professionals involved with Thonn's claim should be

ordered to refund the DHECC all monies earned as a result of Casey Thonn's claims. This is not

the law of Louisiana and the laws of Florida in 1978 have no bearing on this litigation.

In fact, **no** Louisiana case has held that any third party expert should be required to repay

money under any scenario even remotely similar to those cited in this matter.  To the contrary,

Louisiana Second and Third Circuit Courts of Appeal determined that an attorney is a third party,

and that a party seeking restitution under a theory of unjust enrichment **cannot** pursue third

parties for restitution.  *Great American Indemnity Co. v. Dauzat*, 157 So.2d 308 (La.App. 3 Cir.

1963); *Louisiana Health Service & Indem. Co. v. Cole*, 418 So.2d 1357 (La.App. 2 Cir. 1982).

CCG is a third party to DHECC and pursuant to Louisiana law, the Special Master **cannot**

pursue CCG for unjust enrichment.

### 3.   THE DHECC HAS NO CLAIM AGAINST CCG FOR PAYMENT OF A THING NOT OWED – LA C.C. ART. 2299

Under Louisiana law, "a person who has received a payment of a thing not owed to him is bound to restore it to the person from whom he received it."  La. C.C. art. 2299.  However, the Special Master cannot prove the required elements to maintain an action against CCG under this theory.  First, Art. 2299 says that a "person who has received a payment … is bound to restore it to the **person from whom he received it.**"  CCG has received no payment from the DHECC as it relates to Thonn.

An essential element to maintain a cause of action under Article 2299 is the presence of a direct relationship between the two parties.  *Soileau*, 844 So.2d at 110.  The direct relationship contemplated between the parties is "one as the giver of a payment or thing and the other as the recipient of the payment or thing."  *Id.*  The article contemplates restitution when one party voluntarily pays another in the belief that he owes the other, when in fact he does not.  *Id*.  Both in *Soileau* and in the present litigation, payment was not made from the plaintiff to the defendant[5].  The DHECC paid Thonn, who in turn paid his attorneys (presumably) and his attorneys then issued payment to CCG.  There is no direct payment from DHECC to CCG.

The DHECC itself has acknowledged that the contract between CCG and a law firm is too far removed from a claimant's settlement to entitle CCG to assert a lien, which would also require a "direct relationship" or interest in the claim.  On April 23, 2013 Mr. Harvey, an employee with the DHECC, stated that:

> Recently you have attempted to assert third party claims against individual claimants based on contracts between Coastal Claims Group and Danziger and De Llano, where the affected Claimant is not a party to the contract.  These are not valid third party claims within the purview of the Settlement Program.  A contract between Coast Claims Group and a law firm is not sufficient documentation of a

---

[5] CCG only uses "defendant" for ease of reference and does NOT acquiesce to being labeled a party in this litigation.

valid third party claim against a Settlement Program Claimant.  **We will not pay the contractual obligation of a law firm out of an affected Claimant's Settlement Payment.**
*(Correspondence of Bryan Harvey dated April 23, 2013, attached hereto as Exhibit 14)*

As pointed out by Mr. Harvey of the DHECC, the contract at issue is between CCG and a law firm.  Neither the claimant nor the DHECC is a party to the contract, thus no direct relation exists between CCG and the claimant nor CCG and the DHECC.  This was easy for the DHECC to understand, but is apparently not grasped by counsel for the Special Master.

CCG anticipates that the Special Master may argue that the funds paid to CCG are directly linked to the DHECC.  The Special Master may argue that the DHECC paid Thonn, who then paid his attorneys from the DHECC's payment and, in turn, the attorneys paid CCG; thereby, trying to identify the funds received by CCG as still being DHECC funds.  However, this argument also has no legal support.  "It is the nature of banking that all funds are deposited to and withdrawn from the accumulated funds of the bank and its customers.  Funds lose their individual identity as they proceed through the banking process. … [T]he dollar that is deposited today is not necessarily the same dollar that is withdrawn tomorrow." *Id*.  Pursuant to *Soileau* any potential argument that the funds received from the AndryLerner, LLC IOLTA account and/or the Andry Law Group, LLC are still DHECC funds is invalid.  Pursuant to the law, the money paid by the DHECC to Thonn lost its identity once deposited into a bank.  Thus, the Special Master cannot show that CCG was paid with the money given to Thonn from the DHECC.

ii.   SPECIAL MASTER ADMITS THAT CCG IS ENTITLED TO FUNDS.

In correspondence with CCG, counsel for the Special Master recognizes that CCG may be entitled to payment for their services from the party with whom it contracted – a statement

that is completely contradictory to the position taken by the Special Master in the pleadings. Specifically, counsel for the Special Master has stated:

> No one had alleged your client committed a fraud. Your client, however, received payment for services for a claim that never should have been paid. That money must come back to DHECC. If you want to seek payment for your work on a claim that should have been diaallowed [sic] from Mr. Thonn or the Andry Lermer [sic] firm, you are free to pursue those claims.

*(January 17, 2014 Correspondence of Mr. Paw, attached hereto as Exhibit 13)*

The statement of the Special Master's counsel is stupefying!  Apparently, he doesn't dispute that CCG should be paid, he just wants to "disgorge" CCG of the payment it currently has and then send CCG off to re-recover the same money for the same services.  If the Special Master claims that CCG shouldn't have been paid in the first place, why would it be permissible for CCG to pursue the law firm for payment only after CCG is "disgorged" by the Special Master?  If the Special Master agrees that CCG is entitled to payment from the law firm then there is no reason to disgorge the money from CCG in the first place.   Which begs the obvious question: Since AndryLerner is a party to this suit, why doesn't the Special Master just get the money it seeks from that entity?  Especially since the Special Master doesn't dispute that CCG should seek payment for its services from AndryLerner after the Special Master takes funds from CCG. *(Ex. 13)*  AndryLerner is already sought to be cast in judgment for an undisclosed amount, why play "musical chairs" with funds?

At best, the Special Master has made a ridiculous oversight and filed a baseless motion. At worst, the Special Master is trying to strong arm CCG to better its image.  While CCG hopes that is not the case, the correspondence of the Special Master points to questionable motives. The Special Master's repeated threats to CCG to interfere with its business based on "how it handles the motion", his demand that CCG "return" money to the DHECC that it never received, and his outrageous settlement demand, which has a value of $123,000 is a clear abuse of power

and is not reasonably calculated to provide justice.  The Special Master's attempts to bully CCG into paying the DHECC are recalcitrant, capricious, and designed to intimidate.  This clear abuse of power coupled with the Special Master's outright disregard for CCG's rights of due process, leaves little room for interpretation on the motives of the Special Master in adding CCG.  Such abhorrent and irreverent behavior should have no place in this Honorable Court.

### III.   <u>CONCLUSION</u>

CCG is not a party to this suit, has never been properly added, and the Court has no jurisdiction to hear the Special Master's claims against CCG in this litigation.  CCG is entitled to the protections of Due Process of law, a fundamental right of which the Special Master seeks to deprive CCG.  The Court cannot allow parties to simply add an entity to a line in a proposed judgment and flout the Federal Rules of Civil Procedure for commencing an action.  The Special Master's failure in this regard mandates a dismissal of the allegations lodged against CCG in the Special Master's motion.

In the alternative, the Special Master has failed to state a valid cause of action against CCG which would entitle DHECC to the "restitution" sought from CCG.  The motion of the Special Master states its purpose in the heading "*Motion of the Special Master **for the Return of Payments Made** to Casey C. Thonn and Others.*"  The Special Master is seeking the "return" of payments made by the DHECC.  However, CCG has no DHECC payments to return.  The money received by CCG for its work on Thonn's claim is from entities completely unrelated to the DHECC.  Simply put, you cannot return something you don't have, and CCG doesn't have any DHECC funds – they never have.  If CCG was to "return" the funds it received, those funds would go to the Andry Law Group, LLC and the AndryLerner, LLC IOLTA account, not the DHECC.

The Special Master has admitted that CCG is not accused of fraud, there is no valid cause of action against CCG for unjust enrichment, and the Special Master cannot sustain a cause of action under La. C.C. art 2299 because there is no direct relationship between CCG and the DHECC.  For all the reasons stated herein, the motion of the Special Master should be denied and the "claims" lodged against CCG should be dismissed, with prejudice, at the cost of the Special Master.  CCG also requests that the Court award CCG attorney's fees for responding to the Special Master's baseless and improper motion.

        Respectfully Submitted;

        s/Jason R. Kenney
        STAINES & EPPLING
        ANTHONY J. STAINES (12388)
        JASON R. KENNEY (29933)
        COREY C. PARENTON (32918)
        3500 N. Causeway Blvd., Suite 820
        Metairie, LA  70002
        Telephone:  (504) 838-0019
        Fax: (504) 838-0043
        Counsel for Coastal Claims Group, LLC

## **CERTIFICATE OF SERVICE**

I do hereby certify that on the 26th day of February, 2014 a copy of the foregoing pleading was filed electronically with the Clerk of Court using CM/ECF System.  Notice of this filing will be sent to counsel by operation of the court's electronic system.

        s/Jason R. Kenney