UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | * | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, ON APRIL 20, 2010 | * | SECTION "J" (1) |
| | * | |
| This document relates to: | * | JUDGE CARL J. BARBIER |
| No. 13-6674 | * | |
| | * | MAGISTRATE SALLY SHUSHAN |
| | * | |

**DEFENDANTS BON SECOUR FISHERIES, INC; FORT MORGAN REALTY, INC.; LFBP #1, LLC D/B/A GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC; ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; LAKE EUGENIE LAND & DEVELOPMENT, INC.; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE; JOHN TESVICH; AND MICHAEL GUIDRY'S (ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED) SUR-REPLY MEMORANDUM IN OPPOSITION TO BP'S MOTION FOR A PRELIMINARY INJUNCTION SUSPENDING THE SECOND <u>DISTRIBUTION OF THE SEAFOOD COMPENSATION PROGRAM</u>**

00233595

BP offers no rebuttal in its Reply Memorandum to the following facts: (1) The SCP was established as a <u>trust fund for the benefit of the damaged Class</u>, which enabled BP to settle seafood claims, to avoid penalties under the Clean Water Act, and resolve potentially billions of dollars of exposure in a single program; (2) The first distribution of the SCP has been made and BP has reaped the benefits of the Settlement Agreement by reducing its exposure and securing releases from each of the participants; and (3) Now that the Class members are bound by the Release of the Settlement Agreement, and BP has no incentive to make the second distribution, it seeks to pull money out of the trust fund, despite the fact that <u>BP admits the Class has engaged in no wrongdoing</u>.  BP still has no legal or factual basis for denying the Class the second distribution payment.

First, BP's lack of due diligence in investigating the Watts claims, and its adequate remedy in the action solely against Watts, preclude the need for this improper collateral attack on the final Settlement Agreement.  Second, BP still does not dispute that the amount of damages due under the SCP, $2.3 billion, was calculated pursuant to a formula based on statistics obtained from federal agencies regulating oceanic and marine fisheries.  Further, by *BP's own admission in its Reply, the number of individuals entitled to share in this $2.3 billion guarantee was irrelevant*.[1]

### I. The Relief BP Seeks Against the Class is Properly Addressed Through Its Rule 60(b)(3) Motion

Relying on *Turner v. Pleasant*, 663 F.3d 770 (5th Cir. 2011) BP argues that it is entitled to bring this independent action.  However, BP ignores the fact that in *Turner* **an independent action was only permitted <u>because the time to "file a Rule 60(b) motion passed long ago."</u>**

---

[1] Declaration of Mark Holstein, dated January 23, 2014, Rec. Doc. No. 12245-2 at ¶4: "I did expect that Watts Guerra LLP was likely to have difficulty sustaining all 40,000-plus claims he had filed, and *that a significant percentage* of these claims would not make it through the claims process." (emphasis added).

00233595                                                      1

*Turner v. Pleasant*, 663 F.3d 770, 779 (5th Cir. 2011) (emphasis added).[2]   BP has offered no authority for this unprecedented action.  The Class settlement is an order of this Court.  In order to invalidate an order under Rule 60(b)(3) – which BP is currently attempting to do[3] - the "moving party has the burden of proving the misconduct by clear and convincing evidence." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005).  But in the instant civil action, BP is attempting to invalidate the Settlement Agreement by applying a lower burden of proof and essentially ignoring that it is a Court Order.  This is the exact sort of circumstance that Rule 60 should proscribe.

### II. BP Fails to Demonstrate it is Substantially Likely to Succeed on the Merits

Under BP's argument, any complaint that can survive a Rule 12(b)(6) motion to dismiss by establishing a *prima facie* case is adequate to trigger injunctive relief.  This cannot be what the Supreme Court envisioned when it described a preliminary injunction as "an extraordinary remedy that may only be awarded **upon a clear showing** that the plaintiff is entitled to such relief."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis added).  BP still submits **no contemporaneous evidence** that the Watts claimants were a significant factor in arriving at the $2.3 billion amount.  And BP attempts to deflect its failure to investigate the April 2011 alerts to issues with Watts' claimants by inferring a settlement obligation to the PSC with the remarkable proposition that somehow a plaintiff is responsible for

---

[2] *See also Hazel Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 243-244 (1944) (Supreme Court allowed an exception to challenge a judgment via independent action, only because alleged fraud was brought to light **nine years** after judgment became final).  Here, BP claims it discovered alleged fraud within one month of judgment, leaving ample time to file its Rule 60(b)(3) motion.

[3] BP seeks identical relief from a Court Order in both actions.  *Compare* BP's Complaint filed in Civil Action No. 13-6674, ¶110 (c), seeking "a permanent injunction enjoining that portion of the second distribution proven to be related to fraud," with BP's Motion for Relief pursuant to Rule 60(b)(3), Rec. Doc. No. 11994 at 1: "BP moves the Court . . . to suspend the second distribution from the Seafood Compensation Fund."  Further, BP's argument requires this Court to reverse its specific findings of fact: "There is no evidence whatsoever of any fraud . . . in the negotiation of the Settlement."  Court's Order and Reasons Granting Final Settlement Approval, Rec. Doc. No. 8138 at 57.

00233595                                           2

evaluating claims that a defendant did not see fit wasting time on doing itself. BP's present words aside, it actions demonstrate that it did not treat the Watts claims as **material** in arriving at the $2.3 billion settlement amount. And as the Fifth Circuit's recent ruling recognized, "[b]y entering into class-wide settlements, defendants . . . **protect themselves even from those 'plaintiffs with non-viable claims.'**" *In re Deepwater Horizon*, No. 13-30095, 2014 WL 103836, at *10 (5th Cir. Jan. 10, 2014). Accordingly, the references to the individual deckhand claims in the PSC declarations were not "unintentional" as BP implies, but rather a recognition that the Watts claims were not afforded any significant consideration in confection of the SCP amount. Even BP's Mark Holstein admits as much, stating that he expected a "significant percentage" of Watts' claims "would not make it through the claims process." BP also concedes that the Watts claims were relegated to as little as a $50 million cap.[4] Yet it argues that this should serve as the basis for an injunction freezing $1.3 billion of the innocent Class' money, without offering any evidence as to why.

Further, the only "evidence" that BP submits in support of its allegations of fraud by Watts are: (1) short-form joinders, which BP had in its possession over a year before the settlement was confected, and (2) Watts' statements to the Court which it *theorizes* were the reason for his appointment to the PSC. These facts at best present a "mere colorable" argument, which is insufficient for injunctive relief. *See Sargent v. U.S.*, Civ. A. No. 08-3887, 2008 WL 3154761, at *6 (E.D. La. Aug. 5, 2008). And BP offers no explanation for its failure to investigate the short-form joinders in its possession with a Lexis Nexis search, if it truly thought the Watts claims were so critical. As this Court recognized, "[t]he parties had sufficient information to evaluate the merits of their competing positions . . . the parties had the benefit of

---

[4] BP's Reply in Support of Motion for Preliminary Injunction, Rec. Doc. No. 12245 at 6-7.

specific data bearing on class members' damages, including statements made on short form joinders and information drawn from the record of payments by the GCCF."[5]  Simple due diligence by BP's army of legal advisors could easily have discovered the same issues it now decries as fraud.

BP also fails to demonstrate a likelihood of success as a matter of law.  BP argues that Louisiana Civil Code Article 1956 does not act as a bar to its claims.[6]  Yet the very case BP cites shows that an attorney is a "third party" under Article 1956.  In *Smith*, the plaintiff sued to annul settlement with State Farm, on the basis that her attorney fraudulently induced her to sign the settlement agreement. *Smith v. Frey*, 97-0987 at 3 (La. Ct. App. 4 Cir. 11/19/97), 703 So.2d 751, 752.  Citing Article 1956, the appellate court rejected plaintiff's challenge to the settlement, stating "**[t]he law is clear** . . . **[Plaintiff's] remedy is to pursue a claim against [the attorney]**, the real culprit in this case." *Id*. at 754 (emphasis added); *see also* La Civ. Code art. 1956 cmt(c).

## CONCLUSION

For the reasons above, BP's Reply Memorandum fails to remedy the glaring procedural and substantive failures of its Motion seeking injunctive relief.  Either BP engaged in investigation of the Watts claims before entering the SCP, and therefore did not rely on them in arriving at the $2.3 billion amount, or its team of seasoned litigators failed to engage in reasonable due diligence in investigating the Watts claims, despite the fact that they were allegedly a "substantial influence" on the $2.3 billion amount.  BP should be rewarded neither for its dishonesty in the first instance, nor for its negligence in the second.

---

[5] Court's Order and Reasons Granting Final Settlement Approval, Rec. Doc. No. 8138 at 58-59.
[6] BP's Reply in Support of Motion for Preliminary Injunction, Rec. Doc. No. 12245 at 8, n.21.

Respectfully submitted,

**IRWIN FRITCHIE URQUHART & MOORE LLC**

*/s/ James B. Irwin*
JAMES B. IRWIN, IV (La. Bar No. 7074)
DOUGLAS J. MOORE (La. Bar No. 27706)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone (504) 310-2100
Facsimile: (504) 310-2101
jirwin@irwinllc.com
dmoore@irwinllc.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 31st day of January, 2014.

*/s/ James B. Irwin*