# Exhibit A

Produced Pursuant To Rule 408

~~PSC 2/20/12 Edits to~~ BP further 2/14/12 edits to 2/7/12 edits to PSC

**Framework For Individual Economic Loss Claims**

**Overview**

Individual economic loss claims are claims by Natural Persons for lost earnings from employment.  All Natural Persons claiming losses related to business income required to be reported on Schedules C, E or F are governed by the documentation, causation and compensation framework for Business Economic Loss Claims rather than this **Individual Economic Loss Claim Framework**.[1]

As detailed below, individual compensation for lost earnings[2] is calculated as the estimated difference between a claimant's historical earnings and actual earnings after the DWH Spill.[3]  Each claimant must submit proof of earnings during the relevant time periods, as well as specified additional documentation to establish that the DWH Spill caused a loss of earnings.

Under this **Individual Economic Loss Framework**, a claimant may recover for lost earnings by submitting a sworn claim form and supporting documentation establishing that the claimant satisfies the documentation and causation requirements of one of five alternative methodological categories.  These categories, which are set forth fully in Sections I-V, are summarized below.

    I.    <u>CLAIMANTS WITH CONTEMPORANEOUS TAX DOCUMENTS FOR 2010 & BENCHMARK PERIOD</u>:  Applies to individuals providing **Tax Information Documents** for 2010 and the claimant selected **Benchmark Period**.  Requires fulfillment of causation and documentation requirements as detailed in Section I (beginning on Page 6).

    II.    <u>CLAIMANTS WITH PAY PERIOD OR OTHER EARNINGS DOCUMENTATION  FOR 2010 & BENCHMARK ~~PERIOD~~Years :</u>  Applies to individuals without **Tax Information Documents** but with other contemporaneous documents presenting employment and compensation information for 2010 and the claimant selected **Benchmark ~~Period~~Years**.  Requires fulfillment of causation and documentation requirements as detailed in Section II (beginning on Page 11).

    III.    <u>CLAIMANTS WITH EARNINGS DOCUMENTATION FOR 2010 BUT WITHOUT COMPARABLE BENCHMARK PERIOD EARNINGS:</u>  Applies to individuals with **Tax Information Documents** or other contemporaneous documents presenting employment and compensation information for 2010 but without a comparable **Benchmark Period**.  Requires fulfillment of causation and documentation requirements as detailed in Section III (beginning on Page 13).

---

[1] Words or phrases in **Capitalized Boldface Type** are defined terms with the meaning set forth in the "Definitions" section of this **Individual Economic Loss Claim Framework.**

[2] ~~Whether i~~In-kind payments for ~~certain~~ Seafood Industry participants may be included in lost earnings, including ~~payment for~~any definitions referencing earnings, remains under discussion by the parties a percentage of the gross revenues, net revenues and/or product.  ~~The use of different compensation periods  f~~For seafood and ~~related~~ water-driven businesses ~~remains under discussion ut~~ use of the Compensation Period from May 2010 through April 2011 will be allowed~~.~~.

[3] All damages paid will be paid on a pre-tax basis with proper 1099 or other reporting as required by the IRS.

2/21/2012 12:14 AM~~2/20/2012 4:11 PM~~~~2/20/2012 12:52 PM~~~~2/20/2012 10:24 AM~~

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

IV.  CLAIMANTS WITHOUT EARNINGS DOCUMENTATION WHO SUBMIT INDIVIDUAL AND
EMPLOYER SWORN STATEMENTS TO ESTABLISH EARNINGS:  Applies to individuals
without any documentary proof but providing sworn statements (both from the
claimant and the employer) presenting employment and compensation information for
2010.  Requires fulfillment of causation and documentation requirements as detailed in
Section IV (beginning on page 16).  *[PSC DISAGREES SUBSTANTIALLY WITH BP'S
PROPOSAL FOR CATEGORY 3 AS SET FORTH BELOW.]*

V.  DECKHAND AND DOCKSIDE WORKER CLAIMANTS WITHOUT EARNINGS
DOCUMENTATION WHO SUBMIT INDIVIDUAL, ~~EMPLOYER~~ AND SPONSOR SWORN
STATEMENTS:  Applies to individuals employed as deckhands or dockside workers
without any documentary proof but providing sworn statements from the individual, an
employer and a sponsor attesting to employment in 2010.  Requires fulfillment of
causation and documentation requirements as detailed in Section V (beginning on page
20).  *[PSC DISAGREES SUBSTANTIALLY WITH BP'S PROPOSAL FOR CATEGORY 4 AS SET
FORTH BELOW.]*

**Definitions**

The following defined terms used in this **Individual Economic Loss Claim Framework** shall have
the definitions set forth below and be presented in **bold-faced type** throughout this Framework.

A.  **Actual Earnings**[4]:  Claimant's income actually earned during the **Compensation Period.**

B.  **Benchmark ~~Period~~year**:  The **Benchmark ~~Period~~ Year** is the time period a claimant chooses as
the baseline for measuring the claimant's historical earnings.  All claimants other than a
**Claimant Without Comparable Benchmark Earnings** who has 2011 earnings may choose
among the following calendar year time frames to establish historical wage levels:  2009, the
average of 2008-2009, or the average of 2007-2009.  Benchmark Period os the three or more
consecutive months from the Benchmark Years that compare to the three or more
consecutive months choosen for the Compensation Period.

C.  **Claimant Lost Earnings:**  The difference between the claimant's **Expected Earnings** and **Actual
Earnings** during the **Compensation Period.**

D.  **Claimants Without Comparable Benchmark Earnings:**  Individuals without historical earnings
comparable to the **Compensation Period** employment will use 2011 earnings (if any) to
establish **Expected Earnings**.  Those claimants are:  [Still not sure we cover the Summer only
employment or high school graduate entering the workforce in 2010.]

   a.  **New Entrant To Employment:**  An individual offered first time employment prior to
April 20, 2010 to start working during the period April 20, 2010 to December 31, 2010
and the offer was withdrawn or amended during 2010 after the DWH Spill.

   b.  **Claimant Who Had Less Than Twelve Months Of Earnings History But Was Employed
On April 20, 2010:**  An individual with 2010 earnings information who was employed
on April 20, 2010 but who did not become employed until after April 20, 2009.

---

[4] ~~*See* n. 2 (reservation of open issue regarding in-kind earnings).~~ For claimants working in the primary Seafood
Industry, earnings will be inclusive of payment in cash, a percentage of the catch or percentage of the revenue.

2

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

c. **Career Changer:** An individual who (i) changed employer(s) and line of work and (ii) whose earnings during the period January 1 - April 30, 2010 changed by more than plus or minus 20% compared to their earnings during the period January 1 - April 30, 2009.  If both conditions (i) and (ii) above are not met, the individual will proceed under Categories I, or II, IV, or V as applicable.

E. **Claims Administrator:**  The Claims Administrator and related staff appointed pursuant to the Economic And Property Damages Settlement Agreement and any Claims Administration Vendor operating in the Class Action Settlement Office.

F. **Compensation Period**:  The **Compensation Period** is selected by the claimant.  It must include three or more consecutive months between May 1, 2010 and December 31, 2010.  Except for claimants that are in the Primary Seafood Industry or who work in or on the Waters of the Gulf of Mexico, the time period is three or more consecutive months between May 1, 2010 through April 30, 2011.  Claimant can select only one **Compensation Period**, and the **Compensation Period** must correspond with the pay periods used by the employer (i.e. – start and end with the standard daily, weekly, or monthly pay period used by the employer).[5]

G. **Eligible Employer**:  An employer that (a) has filed a claim in the MDL 2179 settlement process and established causation according to rules described in "Causation Requirements For Business Economic Loss Claims" or (b) has received a compensation offer from the GCCF.

H. **Expected Earnings**:  Claimant's earnings in the **Compensation Period** expected in the absence of the DWH Spill.

I. **Growth Factor**:  For claimants in categories I - III only, a factor that may be applied in the calculation of a claimant's **Expected Earnings.**  Components include:

    i.    For all category I-III claimants, one of the following:

        a) **Actual Claimant Specific Growth Factor:** An individualized **Growth Factor** for claimants who provide **Pay Period Earnings Documentation.  Calculated** as the ratio of the claimant's actual January-April 2010 base earnings (excluding bonuses) divided by actual January-April earnings in the **Benchmark Period** (excluding bonuses*).  [PSC ADDITION:  "If this calculation produces a negative **Growth Factor** it will only be applied to the extent it is less than or equal to minus 2.0%. and if the calculation produces a Growth Factor in excess of plus 10%, it will be capped at 10%. "  NOT AGREED BY BP.]*

        *or*

---

[5] If the claimant has multiple jobs satisfying the requirements for compensation under §§ I, II and III of this **Individual Economic Loss Claim Framework** which utilize different pay periods, the **Compensation Period** dates will be selected to correspond to pay periods from the position producing greatest earnings.  Other wages (utilizing different pay period schedules), including wages from jobs worked in the compensation period for which compensation is not claimed, will be allocated to the **Compensation Period** based on when those earnings were actually paid to the claimant.

3

b) **General Growth Factor**: A growth factor of ~~1.5~~ 2% *[PSC: 2.25%]* that will be assumed and applied for all claimants who do not provide **Pay Period Earnings Documentation** and therefore have no **Actual Claimant Specific Growth Factor** because they have provided no basis for calculating it.

~~ii.~~ For ~~certain~~ Category I-III claimants only, an **Industry Growth Factor** of 2.0%, which shall be applicable ~~only~~ to all claimants who are hourly workers~~, in jobs meeting the Tourism definition~~ *[PSC: APPLICABLE TO ALL INDIVIDUAL CLAIMANTS IN CATEGORIES I AND II. UNDER THIS REVISED VERSION, "CLAIMANTS WITHOUT COMPARABLE BENCHMARK EARNINGS" HAVE BEEN MOVED FROM CATEGORIES I AND II TO NEW CATEGORY III. AS TO SUCH CLAIMANTS TO WHOM ANY INDUSTRY GROWTH FACTOR APPLIES, IT SHALL BE APPLIED IN THE MANNER SET FORTH IN SECTION III. ]* ii.

J. **Individual Economic Loss Framework**: This **Framework for Individual Economic** Loss Claims.

K. **Pay Period Earnings Documentation**: Documentation sufficient to establish a claimant's earnings from employment ~~during each pay period of that employment~~, including:

- Paycheck stubs; and/or
- Other employer records documenting actual amounts paid; and/or
- Bank records showing income deposits and supporting documentation indicating the source of those deposits; and/or
- A bank statement or other contemporaneous documentation verifying the absence of income for all or part of the **Compensation Period**; and/or
- Receipts or records from check cashing and payday loan services; and/or
- Contracts for employment accompanied by documentation establishing that wages or other amounts to be paid pursuant to the contract were in fact paid; and/or
- Pay period earnings detail submitted under oath and included in court filings.

L. **Reimbursable Search Costs**: Documented travel and job search costs actually incurred after April 20, 2010 in searching for alternative employment due to job loss or work reduction after the DWH Spill.

M. **Reimbursable Search Cost Documentation**: Documents reflecting all amounts incurred for **Reimbursable Search Costs** sought by the claimant.

N. **Reimbursable Training Costs**: Training, licensing and educational tuition, fees, and similar expenses for courses or programs related to improving job skills or securing alternate employment (i.e., education not in pursuit of a two- or four-year degree) in which claimant enrolled and participated commencing on or after April 21, 2010 through December 31, 2010 due to job loss or work reduction after the DWH Spill.

O. **Reimbursable Training Cost Documentation**: Documents reflecting all amounts paid for **Reimbursable Training Costs** sought by the claimant, and all certificates, course credits, diplomas, or licenses obtained by the claimant based upon the claimant's completion of such

4

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

training.

P.  **Risk Transfer Premium (RTP)**:  A factor by which **Claimant Lost Income** may be multiplied as defined and agreed to in the Economic And Property Damages Settlement Agreement.

Q.  **Spill-Related Payments**:  Compensation paid to claimant by BP or GCCF related to the Deepwater Horizon Spill, ("DWH Spill"), including (but not limited to) VoO payments, as adjusted under the VoO claims resolution.

R.  **Tax Information Documents** means **Tax Returns** and Forms W-2 and 1099.

S.  **Tax Returns**: Federal or state income tax returns, including any supporting schedules.

**Sworn Claim Form Requirement**

Each claimant must complete and submit a Claim Form which the claimant shall verify under penalties of perjury.  The Claim Form will direct the claimant to provide information, including the claimant's chosen **Benchmark Period** and **Compensation Period**.  The ~~Claim Form will direct~~ claimants ~~to~~ will attach required documents supporting the claim.  All statements made in and documents submitted with the Claim Form may be verified as judged necessary by the **Claims Administrator**.  The ~~Claim Form~~ claimant will ~~contain provisions or include attached~~ provide forms in which the claimant will authorize the **Claims Administrator** to: (1) verify employment and obtain copies of wage records, (2) obtain **Tax Information Documentation** from the Internal Revenue Service and/or Social Security Administration, and (3) confirm any bank account information used in support of a claim, but the authorization for bank records will be limited to the **Benchmark Period** and **Compensation Period**.  The Claim Form may be submitted in electronic fashion, including scanning of documents or copies of verification from public databases.  Any sworn statements or Claim Forms may be signed electronically including the use of Adobe EchoSign.

5

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

**I.   CLAIMANTS WITH CONTEMPORANEOUS TAX INFORMATION DOCUMENTS FOR 2010 & BENCHMARK PERIOD[6]**

If available, the claimant must provide claimant's federal or state **Tax Returns** or Forms W-2 or 1099 for each year of the chosen **Compensation Period** and the chosen **Benchmark Period**.[7]  If **Tax Returns** or W-2s or 1099s are not available, the claimant must provide a written statement under oath attesting that no **Tax Returns** are available and attesting that the claimant made diligent efforts to obtain W-2s from his or her employer.  In such circumstances, the claimant cannot proceed under this Section I and should proceed to Section II, III, IV or V to the extent the claimant qualifies under such Section.

A.   **Documentation Requirements**

1.   **Documentation Establishing Employment Earnings:**  For each year of the chosen **Benchmark ~~Period~~ Year** (i.e., for 2009, for 2009 & 2008, or for 2009, 2008 & 2007, as appropriate), and for 2010, claimants must provide at least one of the following **Tax Information Documents**:

   • Federal tax form 1040 pages 1 and 2, all pages of Schedules C, E, and F, and any supporting statements attached to the Form 1040 filing (including W-2 forms for joint returns); or
   • State tax return, including any supporting schedules or statements; or
   • Forms W-2 documenting earnings; or.
   • Forms 1099 documenting earnings.

2.   **Documentation Establishing Earnings For ~~Each Pay~~ Benchmark Period:**  To the extent it is available, a claimant must provide **Pay Period Earnings Documentation** ~~in~~ for the **Benchmark Period** ~~and in 2010 for all jobs worked~~.  A claimant also must provide documentation to establish any bonuses received during January or February of the **Benchmark ~~Period~~Year**, 2010 and 2011 for all jobs worked.

   To the extent **Pay Period Earnings Documentation** is unavailable, the claimant shall so indicate in the sworn Claim Form, and earnings will be treated as earned evenly throughout each year.

3.   **Documentation Of Earnings From Other Sources During the Compensation Period :** If the claimant held a different job in the Compensation Period than the Benchmark Period then the ~~C~~claimant~~s~~ must also submit documents sufficient to establish the source(s) and amounts of earnings~~, if any,~~ from other post-DWH Spill ~~sources of income including:~~

---

[6] A claimant who lacks a **Benchmark Period** may not proceed under Sections I and II but should proceed to Section III.

[7] If claimants have not maintained copies of their federal income tax returns, they will request a copy or transcript directly from the IRS. If claimants have not maintained copies of their W-2s, they will request copies directly from the IRS or ~~each~~ the applicable employer they worked for during the relevant months of the **Compensation Period** and the **Benchmark Period**. _A_ federal **Tax Information Document** will be considered available if it is in the claimant's possession or has not been requested from the IRS and/or employer.

**Formatted:** Font: Italic

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

~~(1) payments received by the claimant from BP or the GCCF pursuant to BP's OPA claims process, and (2) compensation received from other~~ employment.  The types of documents sufficient to satisfy this requirement are as follows:

- Forms W-2, paycheck stubs or other employer-provided payroll information; and/or

- Bank records showing income deposits and supporting documentation indicating the source of those deposits; and/or

- Documents from GCCF showing payment; and/or

- Forms 1099; and/or

- Receipts from check cashing services.

4.  <u>**Documentation Establishing Reimbursable Training and Search Costs:**</u>  The claimant may also submit **Reimbursable Training Cost Documentation** and **Reimbursable Search Cost Documentation**.

5.  <u>**Additional Claimant Documentation:**</u>

    a.  If claimant's employment requires a government-issued license/permit, <u>verification of the license or a</u> copy of valid 2010 and 2011 licenses, if appropriate, such as:

        i.  Commercial/recreational fishing license.

        ii.  Taxi/livery licenses.

        iii.  Real Estate Sales license.

        iv.  Other licenses & permits related to income sources.

    b.  If the claimant's employment was terminated after April 20, 2010, the claimant must provide documents establishing that he or she filed for and received unemployment benefits for purposes of establishing that he or she was not terminated for cause.  Acceptable documentation will include, for example, a 1099G associated with any unemployment benefits.  If such claimant's employment was terminated after the DWH Spill and the claimant did not receive unemployment benefits, then:

        i.  For claimants (i) receiving a causation presumption pursuant to Section I.B.1., or (ii) demonstrating causation pursuant to Section I.B.2.a. below, the claimant must provide a letter from the claimant's former employer confirming that the claimant's termination was not for cause.  Any such letter must include contact information for an authorized representative of the employer.

        ii.  For claimants demonstrating causation pursuant to Section I.B.2.b, the sworn statement form the claimant's employer (described below) must also verify that the claimant was not terminated for cause.

6.  <u>**Additional Employer Documentation:**</u>  A claimant's employer will satisfy the definition of "Commercial Fisherman", "Oyster Fisherman", "Shrimp Fisherman", "Crab Fisherman", <u>"Menhaden Fisherman",</u> "Landing Site", "Commercial or Wholesale Retail Dealer A", "Commercial or Wholesale Retail Dealer B", "Primary Seafood Processor", "Secondary

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

Seafood Processor", "Seafood Wholesaler or Distributor", "Seafood Retailer", or "Tourism"
if:

- The claimant's **Tax Information Documents** or other documentation used to establish loss shows that the claimant's employer satisfies one of the above-listed definitions.

- For fishing claimants, documentation establishing the specific species of fish caught or harvested by the claimant or claimant's employer for the **Compensation Period** and the **Benchmark Period** and the earnings attributable to fishing for that species in the each of those periods.

- The claimant works or worked for an employer that has filed a claim in the MDL No. 2179 settlement process and been determined by the **Claims Administrator** to satisfy one of the above-listed definitions.

- The claimant submits additional supporting documentation showing that the claimant's employer satisfies one of the above-listed definitions.

To establish status as a Commercial Fisherman, Oyster Fisherman, Shrimp Fisherman, Menhaden Fisherman, or Crab Fisherman, as appropriate, a claimant must provide verification of or a copy of a valid commercial fishing license of claimant or claimant's employer for all years in the **Benchmark Period** and for 2010.

B. **Causation Requirements**[8]

1. **Individual Claimants With Presumed Causation:**   Causation of lost income from the DWH Spill will be presumed through December 31, 2010, (and for claimants in the Primary Seafood Industry or who work on or in the Waters of the Gulf through April 30, 2011) for the following categories of claimants who provide the required documentation, provided that the claimant can demonstrate that any loss of income or employment was not a function of the claimant's termination for cause pursuant to the Documentation Requirements set forth in I.A.5:

   a. If a claimant is an individual within the class claiming economic injury that occurred in Zone A, the claimant is not required to provide any evidence of causation.  Economic Injury is deemed to have occurred if the employment is in Zone A or the performance of the work is in Zone A, or on or in the Waters of the Gulf of Mexico.

   b. If a claimant is an individual within the class claiming economic injury and was employed by or exclusively serviced a business that satisfies, or if the claimant satisfies, the definition of a "Commercial Fisherman", "Oyster Fisherman", "Menhaden Fisherman", "Shrimp Fisherman", "Crab Fisherman" or "Landing Site", or if the claimant's employer satisfies the definition of a "Commercial or Wholesale Retail Dealer A", or "Primary Seafood Processors", all as defined in

---

[8] For purposes of this **Individual Economic Loss Framework**, the location of economic loss shall be the location of the claimant's employment, not the claimant's residence.

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

"Seafood Distribution Chain – Definitions", the claimant is not required to provide any evidence of causation.[9]

   c.  If a claimant is an individual within the class claiming economic injury and was employed by a business that satisfies the definition of a "Commercial or Wholesale Retail Dealer B", "Secondary Seafood Processor", "Seafood Wholesaler or Distributor", or a "Seafood Retailer" as defined in "Seafood Distribution Chain – Definitions", and the business was located in Zones A, B or C, the claimant is not required to provide any evidence of causation.

   d.  If the claimant is an individual within the class claiming economic injury and was employed by a business located in Zone A or B that meets the "Tourism Definition", or if the claimants work is in the "Tourism Definition": and located in Zone A or Zone B the claimant is not required to provide any evidence of causation.

  **2.**  <u>**Individual Claimants With Comparable Historical Earnings:**</u>  If a claimant is not entitled to a causation presumption as set forth in Section I.B.1 above, the claimant can establish causation through December 31, 2010 or to April 2011 where applicable, only by satisfying the requirements of one of the following sub-sections below.

   a.  Causation is established if the claimant works or worked for an **Eligible Employer.** The **Claims Administrator** will cross-check the name of each claimant's employer with the records of the MDL 2179 settlement process and GCCF to determine if this requirement is met. The **Eligible Employer** must also verify that the claimant was not terminated for cause.

   b.  Causation is established if the claimant provides a sworn statement from their employer attributing the claimant's loss of income during the Compensation Period to the DWH Spill. The letter must articulate in detail how the claimant's losses are causally related to the DWH Spill. Such letter must also include contact information for an authorized representative of the employer. The Class Action Settlement Office staff shall evaluate the credibility and reliability of the information provided by the employer, and have the right to request supplemental documentation and/or interview the employer.

   ~~b.~~ c.  Self Employed claimants will have to establish a decline in revenue from the Benchmark Period to the Compensation Period of 5%.

**C.**  <u>**Compensation Calculation**</u>

The **Claims Administrator** will use **Tax Information Documents** and other supporting documentation provided by the claimant to calculate the **Claimant's Lost Earnings**. **Lost Earnings** includes: (1) compensation for any reduction in earnings between the **Compensation Period** and the comparable months of the **Benchmark Period**, and (2) compensation for potential earnings growth expected in the absence of the spill through application of (a) an **Actual Claimant Specific Growth Factor** *[BP AND PSC DISAGREE ON CAP.]* or (b) a **General**

---

[9] The Seafood Distribution Chain - Definitions do not yet include definitions for "Commercial Fisherman," "Oyster Fisherman," "Menhaden Fisherman," "Shrimp Fisherman," or "Crab Fisherman," which will need to be developed and added.

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

**Growth Factor** [NOTE BP AND PSC DISAGREEMENT ON FACTOR PERCENTAGE].  In addition, for claimants in hourly-wage jobs meeting the Tourism Definition [PSC WOULD APPLY TO ALL CLAIMANTS IN CATEGORIES I - III], an **Industry Growth Factor** is applied.

The claimant will receive a lump-sum final payment that includes compensation for **Claimant's Lost Earnings**, plus a **Risk Transfer Premium ("RTP")** agreed upon by the parties, plus compensation for properly documented **Reimbursable Training Costs** and **Reimbursable Search Costs,** loss insurance benefits if the claimant can establish an actual economic loss such as the payment of Insurance cost covered by the employer as of April 20, 2010, or actual medical out of pocket cost incurred post spill that would have been covered by insurance as of April 20, 2010 that were not covered due to the loss of insurance benefits or the loss of payments for retirement or pension benefits less the amounts of **Spill-Related Payments**.

**Step 1:  Claimant Selects Compensation Period & Benchmark Period**

1.  Claimant selects a **Compensation Period**.

2.  Claimant selects a **Benchmark Period**.

**Step 2:  Determine Benchmark Period Earnings for the Months Corresponding to the Compensation Period**

Earnings during the **Benchmark Period** (as evidenced by **Tax Information Documents**) will be assumed to have been earned evenly throughout the year unless the claimant provides **Pay Period Earnings Documentation** sufficient to establish actual earnings distribution throughout the year.  All bonuses will be allocated pro rata across the period for which they were awarded, and annual performance bonuses paid in January and February will be assumed to relate to the prior calendar year, unless the documents establish the bonus was for a specific period of time.

The **Benchmark Period** months corresponding to the claimant's **Compensation Period** will be used in calculating **Expected Earnings** in Step 4 below.

**Step 3:  Determine Earnings Growth Factor(s)**

1.  *Claimants Able To Calculate Actual Claimant Specific Growth Factor*:  For claimants that provide **Pay Period Earnings Documentation** sufficient to calculate a **Claimant Specific Growth Factor**, the following **Growth Factors** may apply:

    a.  **Actual Claimant Specific Growth Factor** is defined, and the method for calculating it is explained, in Definitions § I.i.

    If the **Claimant Specific Growth Factor** reflects a change (plus or minus) of more than 20% and the claimant has a job with the same employer or in the same line of work, then the **Actual Claimant Specific Growth Factor** will be limited to (plus 10% or minus) 20 2%.  If the **Actual Claimant Specific Growth Factor** reflects a change of plus or minus 20% and the individual was employed in a new line of work with a new employer, claimant will be considered a **Career Changer** and be subject to the requirements of **Section III: CLAIMANTS WITH EARNINGS DOCUMENTATION FOR 2010 BUT WITHOUT COMPARABLE BENCHMARK PERIOD EARNINGS**.

    [PSC APPEARS TO WANT AN ACTUAL CLAIMANT SPECIFIC GROWTH FACTOR CAPPED AT NEGATIVE 2%.  IF SO, CONSISTENT WITH THE BUSINESS ECONOMIC

10

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

~~LOSS FRAMEWORK, THE ACTUAL CLAIMANT SPECIFIC GROWTH FACTOR NEEDS TO BE CAPPED AT POSITIVE 10%.]~~

b. **Industry Growth Factor** is defined in Definitions § I.iii:  For claimants in hourly-wage jobs ~~meeting the Tourism Definition~~ *[PSC:  ALL CLAIMANTS]*, the **Industry Growth Factor** of 2.0% shall be applied.

2. ***Claimants Unable To Calculate Actual Claimant Specific Growth Factor***:  For claimants unable to provide **Pay Period Earnings Documentation** sufficient to calculate an **Actual Claimant Specific Growth Factor**, no **Actual Claimant Specific Growth Factor** will apply.  Instead, the following **Growth Factors** may apply:

a. **General Growth Factor** is defined in Definitions § I.ii and is ~~1.5%~~ *[PSC:  2.25%]* 2%.

b. **Industry Growth Factor** is defined in Definitions § I.iii:  For claimants in hourly-wage jobs ~~meeting the Tourism Definition~~ *[PSC:  ALL CLAIMANTS]*, the **Industry Growth Factor** of 2.0% shall be applied.

**Step 4:  Calculate Expected Earnings**

**Expected Earnings** equal the **Benchmark Period** earnings over the months corresponding to the claimant's **Compensation Period** (the Compensation Period Benchmark Earnings from Step 2) increased by the applicable **Growth Factors** (from Step 3).

*Expected Earnings = Compensation Period Benchmark Earnings x (1 + applicable Growth Factors)*

Examples of **Expected Earnings** calculations are set forth in Appendix ___. [Need to see]

**Step 5:  Determine Actual Earnings In The Compensation Period**

**Actual Earnings** during the **Compensation Period** will be determined based on **Tax Information Documents** and **Pay Period Earnings Documentation** provided by the claimant and include earned income from all sources (including Schedules C, E and F).  To the extent the claimant does not have **Pay Period Earnings Documentation**, **Actual Earnings** during the **Compensation Period** will be estimated by dividing the claimant's 2010 income by 12 and multiplying that amount by the number of months in the **Compensation Period**.  All bonuses will be allocated pro rata across the period for which they were awarded, and annual performance bonuses paid in January and February will be assumed to relate to the prior calendar year unless the documentation establishes the bonus was for a specific time period.

**Step 6:  Determine Claimant Lost Earnings**

**Claimant Lost Earnings** shall be calculated as the difference between the claimant's **Expected Earnings** during the **Compensation Period** and the claimant's **Actual Earnings** during the **Compensation Period**.  Such **Lost Earnings** will be limited to earnings lost from the position demonstrated through causation to relate to the DWH Spill.

**Step 7:  Calculate Final Claimant Compensation**

Final claimant compensation shall be **Claimant Lost Earnings** adjusted as follows:

• Add any applicable **Risk Transfer Premium (RTP)** agreed to by the parties.

11

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

- o For fishing claimants with lost earnings from multiple species, **Claimant Lost Earnings** shall be calculated on a species-specific basis in order to determine the appropriate RTP.  RTPs will be calculated based on (i) the percentage of claimant's lost earnings attributable to each species and (ii) the RTP applicable to each species.  For example, a claimant with 50% of its lost earnings from shrimp and 50% of its lost earnings from fin fish will receive an RTP that is calculated as .5*RTP$_{shrimp}$ + .5* RTP$_{fin fish}$ .

- Add **Reimbursable Training Costs.  Reimbursable Training Costs** will be fully reimbursed if the Training led directly to earned income in 2010.  If not, then **Reimbursable Training Costs** will be reimbursed up to $2,000.

  For example:  A claimant who paid $3,000 after April 20, 2010 to secure a commercial trucking license and who earned income as a commercial trucker in 2010 will receive $3,000 in reimbursement.  If the claimant earned no income from commercial trucking during 2010, the claimant would receive a $2,000 reimbursement.

- Add any **Reimbursable Search Costs**.

- Add any Economic Loss as a result of loss of benefits from insurance or pension/retirement losses.

- Subtract **Spill-Related Payments.**

Final Claimant Compensation equals:

| | **Claimant Lost Earnings** |
|---|---|
| + | **(Claimant Lost Earnings x RTP)** |
| + | **Reimbursable Training Costs** (full if led to earned income in 2010 from area of training, otherwise $2,000) |
| + | **Reimbursable Search Costs** |
| + | **Benefit Losses** |
| - | **Spill-Related Payments** |

12

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

[A number of the Sections in "I" are repeated in the other sections and the changes made in "I" would apply.  We only address unique changes.]

II.  **CLAIMANTS WITH PAY PERIOD OR OTHER EARNINGS DOCUMENTATION FOR 2010 & BENCHMARK PERIOD[10]**

Claimants who do not have **Tax Information Documents** available may instead provide **Pay Period Earnings Documentation** sufficient to establish earnings during the **Compensation Period** and the **Benchmark Period**.  Such claimants must provide a written statement under oath attesting that no **Tax Returns** are available and attesting that the claimant made diligent efforts to obtain W-2s from his or her employer and stating that they are not available.  If no **Pay Period Earnings Documentation** or other annual employer-provided payroll documentation is available for the **Benchmark Period** and 2010, claimant shall so state in the sworn Claim Form. In such circumstances, claimant cannot proceed under this Section II and should proceed to Section III, IV or V to the extent the claimant qualifies under such Section.

A.  **Documentation Requirements**

1.  **Documentation Establishing Employment Earnings:**  To the extent available, the claimant must provide **Pay Period Earnings Documentation** for the **Benchmark Period** and 2010. Where incomplete **Pay Period Earnings Documentation** is provided, **Expected Earnings** and **Actual Earnings** will be calculated based only on the actual documentation provided.

2.  **Documentation Of Earnings From Other Sources During the Compensation Period :**  If the claimant held a different job in the Compensation Period then the Cclaimants must also submit documents sufficient to establish the source and amounts of earnings, if any, from other post-DWH Spill sources of income including:  (1) payments received by the claimant from BP or the GCCF pursuant to BP's OPA claims process, and (2) compensation received from other employment.  The types of documents sufficient to satisfy this requirement are as follows:

    •  Forms W-2, paycheck stubs or other employer-provided payroll information; and/or

    •  Bank records showing income deposits and supporting documentation indicating the source of those deposits; and/or

    •  Document from GCCF showing payment; and/or

    •  Forms 1099; and/or

    •  Receipts from check cashing services.

3.  **Documentation Establishing Reimbursable Training and Search Costs:**  The claimant may also submit **Reimbursable Training Cost Documentation** and **Reimbursable Search Cost Documentation.**

4.  **Additional Documentation**

    a.  **Claimant Employability Documentation** consists of both:

---

[10] A claimant who lacks a **Benchmark Period** may not proceed under Section II but should proceed to Section III.

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

    i.   A ~~certified~~ copy of a social security card, temporary worker visa, or green card that was valid as of April 20, 2010, or a printout from a public dateabase that verifies the existence of one or more of these documents;

       AND

    ii.  Evidence the claimant was at least 16 years of age as of April 20, 2010. Acceptable evidence includes a valid driver's license, a valid passport, or a certified copy of the claimant's birth certificate, or a printout from a public database that verifies the claimant is sixteen (16) or older.

b.   If the claimant's employment was terminated after April 20, 2010, the claimant must provide documents establishing that he or she filed for and received unemployment benefits for purposes of establishing that he or she was not terminated for cause. Acceptable documentation will include, for example, a 1099G associated with any unemployment benefits.  If such claimant's employment was terminated after the DWH Spill and the claimant did not receive unemployment benefits, then:

    i.   For claimants (i) receiving a causation presumption pursuant to Section I.B.1, or (ii) demonstrating causation pursuant to Section I.B.2.a below, the claimant must provide a letter from the claimant's former employer confirming that the claimant's termination was not for cause.  Any such letter must include contact information for an authorized representative of the employer.

    ii.  For claimants demonstrating causation pursuant to Section I.B.2.b, the sworn statement form the claimant's employer (described below) must also verify that the claimant was not terminated for cause.

b.   **Licensing Documentation**:  If claimant's employment requires a government-issued license/permit, a copy of valid 2010 licenses or a printout from a public database verifying the license, if appropriate, such as:

- Commercial/recreational fishing license.
- Taxi/livery licenses.
- Real Estate Sales license.
- Other licenses & permits related to income sources.

5.   **Additional Employer Documentation:**  A claimant's employer will satisfy the definition of "Commercial Fisherman", "Oyster Fisherman", "Shrimp Fisherman", "Menaden Fisherman", "Crab Fisherman", "Landing Site", "Commercial or Wholesale Retail Dealer A", "Commercial or Wholesale Retail Dealer B", "Primary Seafood Processor", "Secondary Seafood Processor", "Seafood Wholesaler or Distributor", "Seafood Retailer", or "Tourism" if:

- The claimant's documentation used to establish loss shows that the claimant's employer satisfies one of the above-listed definitions.
- For fishing claimants, documentation establishing  the specific species of fish caught or harvested by the claimant or claimant's employer for the **Compensation Period**

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

and the **Benchmark Period** and the percentage of earnings attributable to fishing for that species in the each of those periods.

- The claimant works or worked for an employer that has filed a claim in the MDL No. 2179 settlement process and been determined by the **Claims Administrator** to satisfy one of the above-listed definitions.

- The claimant submits additional supporting documentation showing that the claimant's employer satisfies one of the above-listed definitions.

To establish status as a Commercial Fisherman, Oyster Fisherman, Shrimp Fisherman, ~~Menhaden Fisherman~~ or Crab Fisherman, as appropriate, a claimant must provide ~~a copy~~ verification of a valid commercial fishing license of claimant or claimant's employer for all years in the **Benchmark Period** and for 2010.

B.  **Causation Requirements**

Causation must be established according to the same criteria provided in Section I.B above, provided, however, that to the extent Section I.B cross-references sections referring to **Tax Information Documents**, the **Pay Period Earnings Documentation** or annual employer-provided payroll information submitted by the claimant pursuant to Section II.A will be used in place of information from **Tax Information Documents**.

C.  **Compensation Calculation**

The **Claims Administrator** will use **Pay Period Earnings Documentation** or annual employer-provided payroll information submitted by the claimant pursuant to Section II.A and other supporting documentation provided by the claimant to calculate the **Claimant's Lost Earnings**. **Lost Earnings** includes: (1) compensation for any reduction in earnings between the **Compensation Period** and the comparable months of the **Benchmark Period**, and (2) compensation for potential earnings growth expected in the absence of the DWH Spill through application of (a) an **Actual Claimant Specific Growth Factor** *[BP AND PSC DISAGREE ON CAP],* or (b) a **General Growth Factor** *[NOTE BP AND PSC DISAGREEMENT ON FACTOR PERCENTAGE].* In addition, for claimants in hourly-wage jobs ~~meeting the Tourism Definition~~ *[PSC WOULD APPLY TO ALL CLAIMANTS IN CATEGORIES I—III],* an **Industry Growth Factor** is applied.

The claimant will receive a lump-sum final payment that includes compensation for **Claimant's Lost Earnings**, plus a **Risk Transfer Premium ("RTP")** agreed upon by the parties, plus compensation for properly documented **Reimbursable Training Costs** and **Reimbursable Search Costs**, , loss insurance benefits if the claimant can establish an actual economic loss such as the payment of Insurance cost covered by the employer as of April 20, 2010, or actual medical out of pocket cost incurred post spill that would have been covered by insurance as of april 20, 2010 that were not covered due to the loss of insurance benefits or the loss of payments for retirement or pension benefits less the amounts of **Spill-Related Payments**.

**Step 1:  Claimant Selects Compensation Period & Benchmark Period**

1.  Claimant selects a **Compensation Period**.

15

2.   Claimant selects a **Benchmark Period** ~~in which the claimant was employed in a job similar to the position held during the~~ **Compensation Period.**

**Step 2:  Determine Benchmark Period Earnings for the Months Corresponding to the Compensation Period**

Earnings during the **Benchmark Period** will be established on the basis of **Pay Period Earnings Documentation**.  The specific determination of **Benchmark Period** earnings will depend on the nature and extent of the **Pay Period Earnings Documentation** provided.  For example, if the claimant submits **Pay Period Earnings Documentation** that covers only discrete portions of a given calendar year (e.g., employee commission statements from May 2009 and December 2009), the Claims Administrator will base the **Benchmark Period** earnings only on the actual documentation provided (i.e., data will not be extrapolated to periods for which **Pay Period Earnings Documentation** was not provided).  If the claimant submits **Pay Period Earnings Documentation** that provides data as to full year earnings but not the allocation of those earnings (i.e., a year-end paystub), then if the claimant also provides additional **Pay Period Earnings Documentation** deemed by the Claims Administrator as sufficient for purposes of allocating those earnings across the relevant period, earnings will be allocated accordingly.  If no additional information is provided regarding the allocation of those earnings, the Claims Administrator will assume a pro rata distribution over the relevant period.  All bonuses will be allocated pro rata across the period for which the claimant indicates they were awarded, and annual performance bonuses paid in January and February will be assumed to relate to the prior calendar year<span style="color:red">, unless the documents establish the bonus was for a specific period of time.</span>

The **Benchmark Period** months corresponding to the claimant's **Compensation Period** will be used in calculating **Expected Earnings** in Step 4 below.

**Step 3:  Determine Earnings Growth Factor(s)**

3.   ***Claimants Able To Calculate Actual Claimant Specific Growth Factor***:  For claimants that provide **Pay Period Earnings Documentation** sufficient to calculate a **Claimant Specific Growth Factor**, the following **Growth Factors** may apply:

a.   <u>Actual Claimant Specific Growth Factor</u> is defined, and the method for calculating it is explained, in Definitions § I.i.

If the **Claimant Specific Growth Factor** reflects a change (plus or minus) of more than 20% and the claimant has a job with the same employer or in the same line of work, then the **Actual Claimant Specific Growth Factor** will be limited to (<span style="color:red">plus 10% or minus</span> ~~) 20~~ <span style="color:red">2</span>%.  If the **Actual Claimant Specific Growth Factor** reflects a change of plus or minus 20% and the individual was employed in a new line of work with a new employer, claimant will be considered a **Career Changer** and be subject to the requirements of **Section III: CLAIMANTS WITH EARNINGS DOCUMENTATION FOR 2010 BUT WITHOUT COMPARABLE BENCHMARK PERIOD EARNINGS.**

<mark style="background-color:yellow">*[PSC APPEARS TO WANT AN ACTUAL CLAIMANT SPECIFIC GROWTH FACTOR CAPPED AT NEGATIVE 2%.  IF SO, CONSISTENT WITH THE BUSINESS ECONOMIC LOSS FRAMEWORK, THE ACTUAL CLAIMANT SPECIFIC GROWTH FACTOR NEEDS TO BE CAPPED AT POSITIVE 10%.]*</mark>

b.   <u>**Industry Growth Factor**</u> is defined in Definitions § I.iii:  For claimants in hourly-

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

wage jobs ~~meeting the Tourism Definition~~ *[PSC: ALL CLAIMANTS],* the **Industry Growth Factor** of 2.0% shall be applied.

4.  ***Claimants Unable To Calculate Actual Claimant Specific Growth Factor***:  For claimants unable to provide **Pay Period Earnings Documentation** sufficient to calculate an **Actual Claimant Specific Growth Factor**, no **Actual Claimant Specific Growth Factor** will apply.  Instead, the following **Growth Factors** may apply:

    a.  **General Growth Factor** is defined in Definitions § I.ii and is ~~1.5%~~ *[PSC: 2.25%],* 2%

    b.  **Industry Growth Factor** is defined in Definitions § I.iii:  For claimants in hourly-wage jobs ~~meeting the Tourism Definition~~ *[PSC:  ALL CLAIMANTS],* the **Industry Growth Factor** of 2.0% shall be applied.

## Step 4:  Calculate Expected Earnings

**Expected Earnings** equal the **Benchmark Period** earnings over the months corresponding to the claimant's **Compensation Period** (the Compensation Period Benchmark Earnings from Step 2) increased by the applicable **Growth Factors** (from Step 3).

*Expected Earnings = Compensation Period Benchmark Earnings x (1 + applicable Growth Factors)*

Examples of **Expected Earnings** calculations are set forth in Appendix ____. [Need to see]

## Step 5:  Determine Actual Earnings In The Compensation Period

**Actual Earnings** during the **Compensation Period** will be determined based on **Pay Period Earnings Documentation** provided by the claimant and will include earned income from all sources (including Schedules C, E and F).  All bonuses will be allocated pro rata across the period for which they were awarded, and annual performance bonuses paid in January and February will be assumed to relate to the prior calendar year. [Not sure why different from page 11 step 5]

## Step 6:  Determine Claimant Lost Earnings

**Claimant Lost Earnings** shall be calculated as the difference between the claimant's **Expected Earnings** during the **Compensation Period** and the claimant's **Actual Earnings** during the **Compensation Period**.  Such **Lost Earnings** will be limited to earnings lost from the position demonstrated through causation to relate to the DWH Spill.

## Step 7:  Calculate Final Claimant Compensation

Final claimant compensation shall be **Claimant Lost Earnings** adjusted as follows:

- Add any applicable **Risk Transfer Premium (RTP)** agreed to by the parties.

    o  For fishing claimants with lost earnings from multiple species, **Claimant Lost Earnings** shall be calculated on a species-specific basis in order to determine the appropriate RTP.  RTPs will be calculated based on (i) the percentage of claimant's lost earnings attributable to each species and (ii) the RTP applicable to each species.  For example, a claimant with 50% of its lost earnings from shrimp and 50% of its lost earnings from fin fish will receive an RTP that is calculated as $.5*RTP_{shrimp} + .5*RTP_{fin fish}$.

17

- Add **Reimbursable Training Costs.  Reimbursable Training Costs** will be fully reimbursed if the Training led directly to earned income in 2010.  If not, then **Reimbursable Training Costs** will be reimbursed up to $2,000.

  For example:  A claimant who paid $3,000 after April 20, 2010 to secure a commercial trucking license and who earned income as a commercial trucker in 2010 will receive $3,000 in reimbursement.  If the claimant earned no income from commercial trucking during 2010, the claimant would receive a $2,000 reimbursement.

- Add any **Reimbursable Search Costs**.

- Add any Economic Loss as a result of loss of benefits from insurance or pension/retirement losses.

- Subtract **Spill-Related Payments**.

Final Claimant Compensation equals:

| | |
|---|---|
| | **Claimant Lost Earnings** |
| + | **(Claimant Lost Earnings x RTP)** |
| + | **Reimbursable Training Costs** (full if led to earned income in 2010 from area of training, otherwise $2,000) |
| + | **Reimbursable Search Costs** |
| + | **Benefit Losses** |
| - | **Spill-Related Payments** |

**Formatted:** Indent: Left:  0"

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

**III.** [Where does high school graduate or summer worker fit in?]  **CLAIMANTS WITH EARNINGS DOCUMENTATION FOR 2010 BUT WITHOUT COMPARABLE BENCHMARK PERIOD EARNINGS**

> **Formatted:** Font: Bold, Underline
>
> **Formatted:** Font: Bold

For those **Claimants Without Comparable Benchmark Earnings** meeting the definitions of a **New Entrant To Employment**, a **Claimant Who Had Less Than Twelve Months Of Earnings History But Was Employed On April 20, 2010** or a **Career Changer,** no comparable **Benchmark Period** exists and 2011 earnings will be used to establish **Expected Earnings**.

If available, the claimant must provide federal or state **Tax Returns** or W-2s for 2010 and 2011.[11]  If **Tax Returns** or W-2s or 1099s are not available, the claimant must provide a written statement under oath attesting that no **Tax Returns** are available and attesting that the claimant made diligent efforts to obtain  W-2s from his or her employer.

Claimants who do not have **Tax Information Documents** available may instead provide **Pay Period Earnings Documentation** sufficient to establish earnings during the **Compensation Period** and 2011. If no **Pay Period Earnings Documentation** or other annual employer-provided payroll documentation is available for 2010 and 2011, claimant shall so state in the sworn Claim Form.

In the event claimant cannot provide **Tax Information Documents** or **Pay Period Earnings Documentation** or other annual employer-provided payroll documentation for 2010 and 2011, claimant may not proceed under this Section III and should proceed to Section IV or V to the extent the claimant qualifies under such Section.

A.  <u>Documentation Requirements</u>

1.  Claimants under this Section who have **Tax Information Documents** for 2010 and 2011 must provide at least one of the following **Tax Information Documents** for 2010 and 2011 and, if a **Career Changer**, for 2009:

- Federal tax form 1040 pages 1 and 2, all pages of Schedules C, E, and F, and any supporting statements attached to the Form 1040 filing (including W-2 forms for joint returns), or
- State tax return, including any supporting schedules or statements, or
- W-2 forms documenting earnings, or.
- Forms 1099 documenting earnings.

---

[11] If a claimant has not maintained copies of their federal income tax returns, they will request a copy or transcript directly from the IRS.  If a claimant has not maintained copies of their W-2s, they will request copies directly from the IRS or each employer they worked for during the **Compensation Period** and 2009-2011.  A federal **Tax Information Document** will be considered available if it (1) exists and (2) is in the claimant's possession or has not been requested from the IRS and/or employer.

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

2. To the extent it is available, a claimant must provide **Pay Period Earnings Documentation** in 2010 and 2011 for all jobs worked.  A claimant also must provide documentation to establish any bonuses received during January or February of the 2010 and 2011 for all jobs worked.  A **Career Changer** must also provide such information for 2009.  To the extent **Pay Period Earnings Documentation** is unavailable, the claimant shall so indicate in the sworn Claim Form, and earnings will be treated as earned evenly throughout the year.

3. <u>**Documentation Of Earnings From Other Sources During the Compensation Period:**</u>  [I would leave this as written for the New Entrant]  Claimants must also submit documents sufficient to establish the source(s) and amounts of earnings, if any, from other post-DWH Spill sources of income (and, if a **Career Changer**, for 2009) including: (1) payments received by the claimant from BP or the GCCF pursuant to BP's OPA claims process, and (2) compensation received from other employment.  The types of documents sufficient to satisfy this requirement are as follows:

    - W-2s, paycheck stubs or other employer-provided payroll information, and/or
    - Bank records showing income deposits and supporting documentation indicating the source of those deposits, and/or
    - Documents from GCCF showing payment, and/or
    - Forms 1099, and/or
    - Receipts from check cashing services.

4. <u>**Additional Claimant Documentation:**</u>  If the claimant's employment was terminated after April 20, 2010, the claimant must provide documents establishing that he or she filed for and received unemployment benefits for purposes of establishing that he or she was not terminated for cause.  Acceptable documentation will include, for example, a 1099G associated with any unemployment benefits.  If such claimant's employment was terminated after the DWH Spill and the claimant did not receive unemployment benefits, then:

    - For claimants (i) receiving a causation presumption pursuant to Section I.B.1, or (ii) demonstrating causation pursuant to Section I.B.2.a below, the claimant must provide a letter from the claimant's former employer confirming that the claimant's termination was not for cause.  Any such letter must include contact information for an authorized representative of the employer.

    - For claimants ~~demonstrating causation~~ providing a sworn statement from the claimant's employer pursuant to Section I.B.2.b, the sworn statement ~~form the claimant's employer (described below)~~ must also verify that the claimant was not terminated for cause.

20

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

5.   **[BP was re-writing section 5]** **Additional Employer Documentation:**  A claimant's employer will satisfy the definition of "Commercial Fisherman", "Oyster Fisherman", "Shrimp Fisherman", "Crab Fisherman", "Landing Site", "Commercial or Wholesale Retail Dealer A", "Commercial or Wholesale Retail Dealer B", "Primary Seafood Processor", "Secondary Seafood Processor", "Seafood Wholesaler or Distributor", "Seafood Retailer", or "Tourism" if:

- The claimant's **Tax Information Documents** or other documentation used to establish loss shows that the claimant's employer satisfies one of the above-listed definitions.

- For fishing claimants, documentation establishing the specific species of fish caught or harvested by the claimant or claimant's employer for the Compensation Period and 2011 (and, for a **Career Changer**, in 2009) and the percentage of earnings attributable to fishing for that species in the each of those periods.

- The claimant works or worked for an employer that has filed a claim in the MDL No. 2179 settlement process and been determined by the **Claims Administrator** to satisfy one of the above-listed definitions.

- The claimant submits additional supporting documentation showing that the claimant's employer satisfies one of the above-listed definitions.

To establish status as a Commercial Fisherman, Oyster Fisherman, Shrimp Fisherman, or Crab Fisherman, as appropriate, a claimant must provide a copy of a valid commercial fishing license of claimant or claimant's employer for 2009 (if claimant is a **Career Changer**), 2010 and 2011.

6.   Additional documentation is required consistent with applicable Section III. B. "Causation Requirements" described below.

B.   **Causation Requirements**

Causation may be established according to the same criteria provided in Section I.B. or Section II.B., or by meeting all of the following provisions:

1.   The claimant meets the definition of a "**New Entrant To Employment**", a "**Claimant Who Had Less Than Twelve Months Of Earnings History But Was Employed On April 20, 2010**", or a "**Career Changer**".

2.   The claimant provides one of the following two types of documentation of employer eligibility:

   a.   Contemporaneous documentation showing proof of an offer of employment that occurred prior to April 20, 2010 for employment between May to December 2010 or May 2010 to April 2011, where applicable. or an offer of employment during the Compensation Period from an employer prior to April 20, 2010.  The documentation must include information sufficient to establish proposed start and end dates, wage rate and projected hours, and withdrawal of the offer during the period April 21-December 31, 2010.

21

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

OR

    b.  A sworn statement from an employer attributing the claimant's loss of income in the **Compensation Period** to the DWH Spill. The statement must articulate in detail how the claimant's losses are causally related to the DWH Spill. Where an employment offer was withdrawn in 2010, such statement must also attest that (1) the claimant's employment offer (including start and end dates, wage rate and projected hours); and (2) the employer's decision not to employ the claimant was due to or resulting from the DWH spill. Such letter must also include contact information for an authorized representative of the employer. The Class Action Settlement Office staff shall evaluate the credibility and reliability of the information provided by the employer and have the right to request supplemental documentation and/or interview the employer. [Interview Rules to be inserted or referenced]

3.  [BP to re-write] During 2011 the claimant was (a) employed, (b) a full time student, (c) medically incapacitated such that the claimant was unable to work, or (d) involuntarily unemployed (and can appropriately document job search activities);

4.  [BP to re-write]The claimant provides documentation showing that during 2011 the claimant was (i) employed or (ii) not employed because the claimant was a full-time student or medically incapacitated or involuntarily unemployed (and can appropriately document job search activities), provided that the claimant can demonstrate that any involuntary unemployment was not a function of the claimant's termination for cause. Documentation meeting this requirement includes:

    a.  For claimants employed during 2011, **Tax Information Documents**, **Pay Period Earnings Documentation**, or other annual employer-provided payroll information or other documentary evidence acceptable to the **Claims Administrator**.

    b.  For a student, documentation reflecting full-time matriculation at a college or university, such as a matriculation certificate, tuition bill and evidence of payment, a transcript, a degree, certificate, or diploma indicating completion of a course of study, or a letter from the college or university registrar verifying the matriculation.

    c.  For a medically-incapacitated individual, including temporary medical conditions or Family Medical Leave) documentation reflecting such disability, such as hospital or medical records or records reflecting receipt of Social Security or other disability benefits.

    d.  For an involuntarily unemployed individual, contemporaneous documentation evidencing a job search and diligent efforts to secure employment, as well as the documentation set forth in III.A.4. demonstrating that the involuntary unemployment was not a function of the claimant's termination for cause.

5.  If the claimant is a **New Entrant To Employment**,and not a resident of the Gulf Coast area, the claimant provides documentation showing that the claimant took significant affirmative steps to establish intent to live in a Gulf Coast Area for a period of at least 60 days after April 20, 2010. Documentation meeting this requirement includes:

    a.  A lease or rental agreement; or

22

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

    b.  A sublease agreement; or

    c.  Contemporaneous utility bills.

C.  **Compensation Calculation**

1.  For claimants who were employed in 2011 in the same job or similar job as that performed or offered and withdrawn in the **Compensation Period** selected by the claimant, the Claims Administrator will use either **Tax Information Documents**, **Pay Period Earnings Documentation** or annual employer-provided payroll information submitted by the claimant pursuant to Section III.A, as well as other supporting documentation provided by the claimant, to calculate the **Claimant's Lost Earnings**.  **Claimant's Lost Earnings** includes compensation for any reduction in earnings between the **Compensation Period** and the comparable months of 2011 as decreased by the **General Growth Factor** *[NOTE BP AND PSC DISAGREEMENT ON FACTOR PERCENTAGE]*.  In addition, for claimants in hourly-wage jobs meeting the Tourism Definition *[PSC WOULD APPLY TO ALL CLAIMANTS IN CATEGORIES I - III]*, the claimant's 2011 earnings will also be adjusted downward by an **Industry Growth Factor**.

For any Category III claimant not employed in 2011 as established consistent with Sections III.B.3 and III.B.4 above, **Expected Earnings** for each type of Category III claimant shall be based on alternative data, as described in detail below.

The claimant will receive a lump-sum final payment that includes compensation for **Claimant's Lost Earnings**, plus a **Risk Transfer Premium ("RTP")** agreed upon by the parties, plus compensation for properly documented **Reimbursable Training Costs** and **Reimbursable Search Costs**, less the amounts of any **Spill-Related Payments**.

**Step 1:  Claimant Selects Compensation Period**

    1.  Claimant selects a **Compensation Period**.

**Step 2:  Determine 2011 or Substitute Earnings for the Months Corresponding to the Compensation Period**

Earnings during 2011 will be established on the basis of either **Tax Information Documents** or **Pay Period Earnings Documentation**.

Earnings during 2011 as evidenced by **Tax Information Documents** will be assumed to have been earned evenly throughout the year unless the claimant provides **Pay Period Earnings Documentation** sufficient to establish actual earnings distribution during the year.  All bonuses will be allocated pro rata across the period for which they were awarded, and annual performance bonuses paid in January and February will be assumed to relate to the prior calendar year.  The 2011 months corresponding to the claimant's **Compensation Period** will be used in calculating **Expected Earnings** in Step 4 below.

Earnings during 2011 as evidenced by **Pay Period Earnings Documentation** will be determined based upon the nature and extent of the documentation provided.  For example, if the claimant submits **Pay Period Earnings Documentation** that covers only discrete portions of a given calendar year, the Claims Administrator will base the **Benchmark Period** earnings only on the actual documentation provided (i.e., data will not be extrapolated to periods for which **Pay Period Earnings Documentation** was not

23

provided). If the claimant submits **Pay Period Earnings Documentation** that provides data as to full year earnings but not the allocation of those earnings (i.e., a year-end paystub), then if the claimant also provides additional **Pay Period Earnings Documentation** deemed by the Claims Administrator as sufficient for purposes of allocating those earnings across the relevant period, earnings will be allocated consistent with that **Pay Period Earnings Documentation**. If no additional information is provided regarding the allocation of those earnings, the Claims Administrator will assume a pro rata distribution over the relevant period. All bonuses will be allocated pro rata across the period for which the claimant indicates they were awarded, and annual performance bonuses paid in January and February will be assumed to relate to the prior calendar year.

The 2011 months corresponding to the claimant's **Compensation Period** will be used in calculating **Expected Earnings** in Step 4 below.

For any Category III claimant not employed in 2011 as established consistent with Sections III.B.3 and III.B.4 above, 2011 earnings will be replaced for each type of Category III claimant with the following:

1.  **New Entrant To Employment:** 2011 earnings shall be replaced with the claimant's expected earnings during the Compensation Period as established by the rescinded or reduced offer of employment or employer sworn statement used to establish causation.

2.  **Claimant Who Had Less Than Twelve Months Of Earnings History But Was Employed On April 20, 2010:** 2011 earnings shall be replaced by the claimant's average monthly pre-Spill earnings, recognizing that this calculation will be based on less than twelve months of earnings data and will be subject to an **Industry Growth Factor**, if relevant, as described below.

3.  **Career Changer:** 2011 earnings shall be replaced by earnings from the **Benchmark Period** established consistent with the methodology for Category I and II claimants (Step 2 of I.C and/or II.C), including any applicable **Growth Factors** and any corresponding caps, as set forth below.

**Step 3:  Determine Earnings Growth Factor(s)**

1.  The following **Growth Factors** may apply:

    a.  <u>**General Growth Factor**</u> is defined in Definitions § I.ii and is ~~1.5%~~ *[PSC: 2.25%]*. 2%

    b.  <u>**Industry Growth Factor**</u> is defined in Definitions § I.iii. For claimants in hourly-wage jobs ~~meeting the Tourism Definition~~ *[PSC: ALL CLAIMANTS],* the **Industry Growth Factor** of 2.0% shall be applied.

    c.  <u>**Actual Claimant Specific Growth Factor**</u> is defined, and the method for calculating it is explained in Definitions § I.i. For purposes of this Section III, an **Actual Claimant Specific Growth Factor** may apply only in the limited circumstance of a qualifying as a <u>**Career Changer**</u> who does not have 2011 earnings for one of the reasons set forth in Sections III.B. 3 and III.B.4 above. Any applicable caps still apply.

24

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

**Step 4:  Calculate Expected Earnings**

**Expected Earnings** equal the 2011 earnings over the months corresponding to the claimant's **Compensation Period** (the Compensation Period 2011 Earnings from Step 2) decreased by the applicable **Growth Factors** (from Step 3).

*Expected Earnings = Compensation Period Benchmark Earnings x (1 - applicable Growth Factors)*

**Expected Earnings** for Category III claimants who were not employed in 2011 for reasons set forth in Sections III.B.3 and III.B.4 above are calculated as follows:

1. **New Entrant To Employment:  Expected Earnings** equal the earnings set forth in the rescinded or reduced offer of employment, or the employer sworn statement used to establish causation.  No **Growth Factors** apply.

2. **Claimant Who Had Less Than Twelve Months Of Earnings History But Was Employed On April 20, 2010:  Expected Earnings** equal the claimant's average monthly pre-Spill earnings increased by an **Industry Growth Factor**, if applicable.

3. **Career Changer:  Expected Earnings** equal earnings from the **Benchmark Period** increased by the **Actual Claimant Specific Growth Factor** or the **General Growth Factor**, as applicable, and an **Industry Growth Factor**, if applicable

Examples of **Expected Earnings** calculations are set forth in Appendix ____.

**Step 5:  Determine Actual Earnings In The Compensation Period [2 jobs issue]**

**Actual Earnings** during the **Compensation Period** will be determined based on **Tax Information Documentation** or **Pay Period Earnings Documentation** provided by the claimant and will include earned income from all sources (including Schedules C, E and F). All bonuses will be allocated pro rata across the period for which they were awarded, and annual performance bonuses paid in January and February will be assumed to relate to the prior calendar year.

**Step 6:  Determine Claimant Lost Earnings**

**Claimant Lost Earnings** shall be calculated as the difference between the claimant's **Expected Earnings** during the **Compensation Period** and the claimant's **Actual Earnings** during the **Compensation Period**.  Such **Lost Earnings** will be limited to earnings lost from the position demonstrated through causation to relate to the DWH Spill.

**Step 7:  Calculate Final Claimant Compensation**

Final claimant compensation shall be **Claimant Lost Earnings** adjusted as follows:

- Add any applicable **Risk Transfer Premium (RTP)** agreed to by the parties.

  o For fishing claimants with lost earnings from multiple species, **Claimant Lost Earnings** shall be calculated on a species-specific basis in order to determine the appropriate RTP.  RTPs will be calculated based on (i) the percentage of claimant's lost earnings attributable to each species and (ii) the RTP applicable to each species.  For example, a claimant with 50% of its lost earnings from shrimp and 50% of its lost earnings from fin fish will receive an RTP that is calculated as $.5*RTP_{shrimp} + .5* RTP_{fin\ fish}$ .

25

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

- Add **Reimbursable Training Costs. Reimbursable Training Costs** will be fully reimbursed if the Training led directly to earned income in 2010.  If not, then **Reimbursable Training Costs** will be reimbursed up to $2,000.

  For example:  A claimant who paid $3,000 after April 20, 2010 to secure a commercial trucking license and who earned income as a commercial trucker in 2010 will receive $3,000 in reimbursement.  If the claimant earned no income from commercial trucking during 2010, the claimant would receive a $2,000 reimbursement.

- Add any **Reimbursable Search Costs**.

- Add any Economic Loss as a result of loss of benefits from insurance or pension/retirement losses.

- Subtract **Spill-Related Payments.**

Final Claimant Compensation equals:

|   | **Claimant Lost Earnings** |
|---|---|
| + | **(Claimant Lost Earnings x RTP)** |
| + | **Reimbursable Training Costs** (full if led to earned income in 2010 from area of training, otherwise $2,000) |
| + | **Reimbursable Search Costs** |
| + | **Benefit Losses** |
| - | **Spill-Related Payments** |

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

**IV. CLAIMANTS WITHOUT EARNINGS DOCUMENTATION WHO SUBMIT INDIVIDUAL AND EMPLOYER SWORN STATEMENTS TO ESTABLISH EARNINGS**

Any claimant (1) whose ~~employer~~ employment is located in Zones A, B or C and (2) who does not have **Tax Information Documents** or **Pay Period Earnings Documentation** or annual employer-provided payroll documentation evidencing claimant's earnings during the **Benchmark Period** and **Compensation Period** and (3) who is not a **New Entrant To Employment** may instead establish lost earnings and causation by submitting (a) a claimant sworn written statement with specified contents, (b) an employer sworn written statement with specified contents, including the claimant's earnings and/or projected earnings, and (c) other specified documentation.[12]  In addition, the **Claims Administrator** may interview the claimant and the employer.  *PSC DISAGREES WITH PROPOSED INTERVIEW REQUIREMENT AS SET FORTH BELOW.*

A. **Documentation And Causation Requirements:**  A claimant under this Section must provide all of the following documents:

1. **Claimant Sworn Written Statement** which may be electronically signed by use of an approved technology such as Adobe EchoSign ~~on a form published by the~~ **~~Claims Administrator,~~** and executed before a notary on the roster of approved notaries, which sets forth all of the ~~information required in that form, including but not limited to the~~ following:

   a. No **Tax Returns** are available.

   b. The claimant made diligent efforts to obtain W-2s from his or her employer and they are not available.

   c. No **Pay Period Earnings Documentation** or other annual employer-provided payroll documentation is available for the **Benchmark Period** and **Compensation Period**.

   d. Claimant's actual earned income from all sources in 2010 and 2009.

   e. Claimant's presence in Zones A, B or C for work during the period from April 20, 2010 - December 31, 2010.

   f. The business name and last known address of each of claimant's employers for the time period from the **Benchmark Period** through December 31, 2010.

   g. The dates of the claimant's employment by each employer listed in (f) above.

   h. An explanation of how the reduction of claimant's hours of work, termination of the claimant's employment, or withdrawal of an offer of employment during the period from April 20, 2010 - December 31, 2010 was due to or resulting from the DWH Spill.

2. **Claimant Employability Documentation:**  Consists of both:

---

[12] BP is working on draft formats for Claimant and Employer Sworn Statements.

27

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

    a.   A ~~certified~~ copy of a social security card, temporary worker visa, or green card that was valid as of April 20, 2010, <u>or a printout from a public database that verifies the existence of one or more of these documents</u>.
*AND*

    b.   Evidence that the claimant was at least 16 years of age as of April 20, 2010. Acceptable evidence includes a valid driver's license, a valid passport, or a certified copy of the claimant's birth certificate<u>, or a printout from a public database that verifies the claimant is sixteen (16) or older</u>.

3.   **<u>Licensing Documentation</u>**:  If claimant's employment requires a government-issued license/permit, claimant shall provide a copy of valid 2010 license<u>s or a printout from a public database verifying the license</u>, ~~if appropriate,~~ such as:

- Commercial/recreational fishing license.
- Taxi/livery licenses.
- Real Estate Sales license.
- Other licenses & permits related to income sources.

4.   **<u>Employer Sworn Written Statement</u>** ~~on a form published by the~~ **~~Claims Administrator,~~** ~~and executed before a notary on the roster of approved notaries to whom the employer has presented government-issued identification,~~ by each employer who employed the claimant during the ~~time period from the~~ **Benchmark Period** ~~through 2010~~, which sets forth all of the ~~information required in that form, including but not limited to~~ the following:

    a.   The employer's business name, address(es), telephone number(s), ~~website(s),~~ a description of the nature of the business, and copies of any applicable required licenses possessed by the employer during the ~~period January 1, 2007 – December 1, 2011~~ <u>Benchmark Period</u>.  In the case of a Commercial Fisherman, the employer shall provide ~~copies~~ <u>evidence</u> of ~~any~~ licenses for the employer's boat(s) ~~and captain(s) of such boat(s)~~ <u>or if the employer is the captain, evidence of the captain's license</u>.

    b.   That the employer employed the claimant or offered the claimant employment during the period from April 20, 2010 - December 31, 2010.

    c.   Sufficient information regarding the dates of claimant's employment ~~prior to April 20, 2010~~<u>in the Benchmark Period</u>, and the claimant's wage rate and total compensation for that period to allow the Claims Administrator to calculate the claimant's pre-DWH Spill ~~income~~ <u>earnings</u> and have a basis to determine post-Spill lost ~~income~~ <u>earnings</u> for a compensation award.  If the employer cannot provide precise actual dates and times, it will be sufficient for the employer to provide more general information satisfying this standard -- e.g., "Claimant was employed for ~~[___]~~ <u>30</u> days at a rate of ~~[__]~~<u>$100</u> per day <u>or at a rate of 10% of the Catch Value or Volume or</u>  for ~~[___]~~<u>12</u> weeks during the months of ~~[January – March 2010.]"~~  <u>June – August, 2009.</u>  If the employee relies for pre-DWH Spill compensation on earnings from more than one employer, he should submit employer affidavits from each of those employers to support claimant's pre-DWH Spill compensation.

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

d.  If the claimant worked for the employer during the period April 20, 2010 -
    December 31, 2010, the claimant's compensation during that period, including
    the claimant's wage rate and hours worked.  If the employer cannot provide
    precise actual dates and times, it will be sufficient for the employer to provide
    more general information satisfying this standard -- e.g., "Claimant was
    employed for [___] days at a rate of  [  ] per day for [  ] weeks during [June, July
    and August] 2010".

e.  If the employer is not an **Eligible Employer**, information sufficient to establish
    the size of the business during each period as to which the employer is
    providing information, such as: (i) size of physical plant, or of boat if employer is
    a Commercial Fisherman; (ii) best estimate of the number of customers; (iii)
    best estimate of the volume of product produced; (iv) best estimate of the
    number of full-time and part-time employees, or (v) financial information.  To
    the extent the business is a seasonal business, this information should be
    provided to reflect business size during different seasons.

f.  If the employer is not an **Eligible Employer**, and if the employer is submitting
    affidavits on behalf of more than three ten claimants, information sufficient to
    establish compensation information for the employer's other employees
    performing comparable jobs, including rate of pay for the comparable jobs and
    hours worked by employees at such jobs.  Personal identifying information with
    respect to specific individual employees is not required.

g.  Whether the employer terminated the claimant's employment, reduced the
    claimant's hours of work, withdrew an offer of employment, or did not extend
    an offer of seasonal (partial year) employment to the claimant for work during
    the period from April 20, 2010 - December 31, 2010, with sufficient detail to
    permit the Claims Administrator to calculate the claimant's lost hours of work
    and earned income from such employment during such period.

h.   For employers responding affirmatively to item g., an explanation of how the
    reduction of claimant's hours of work identified in  g above, or the withdrawal
    of or failure to extend an offer of employment during the period from April 20,
    2010 - December 31, 2010 was due to or resulting from the DWH Spill.

B.  **Description Of Compensation Calculation**

A claimant relying on this Section III category, including the claimant's own sworn written
statement and the sworn written statement(s) of employer(s), may receive **Claimant Lost
Earnings,** for the Base Period not to exceed $20,000 15,000 *(PSC: $20,000 FOR 2010),* calculated
as the difference between the claimant's **Expected Earnings** and **Actual Earnings**.  **Expected
Earnings** and **Actual Earnings** shall be determined based on the information provided in
claimant's sworn written statement, claim form and submitted documentation, and the sworn
written statement(s) of employer(s), subject to the **Claims Administrator**'s determination after
any interview conducted, as to the credibility and reliability of such information.  Only claimants
who continue to be employed in the same position in 2011 as in 2010, and who still live within
60 miles of the Gulf Coast or, if not a Commercial Fisherman or Deckhand or works on or in the
Waters of the Gulf of Mexico, within 60 miles of their place of employment, may will be eligible

29

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

for an **RTP** of ~~no more than~~ 1. **Spill-Related Payments** shall be deducted from **Claimant Lost Earnings** after any RTP adjustment, if applicable**.**

Final Compensation equals:

**Claimant Lost Earnings Subject to $~~15~~20,000 Cap**
*[PSC proposes $20,000 cap on Claimant Lost Earnings]*

+     (**Claimant Lost Earnings Subject to $15,000 Cap** x **RTP** of ~~no more than~~ 1 for specified claimants as defined above) [would not add benefits to IV or V]

-     **Spill-Related Payments**

~~Depending on the amount of calculated **Claimant Lost Earnings,** and based upon the **Claims Administrator**'s analysis of the claims file in each case, the claimant or employer may be required to participate in an in-person interview by the **Claims Administrator** staff.~~

The Claims Administrator shall have the right to interview all applicants in this category III claiming lost income of $7,500 or more and their supporting employer(s), as well as up to ~~35~~ 20% of all other applicants within this category III and their supporting employer(s).[13]

The authority to conduct an interview available in sections IV and V is to be exercised by the Administrator only if the Administrator finds from the claim documentation that there exists a reasonable basis to question the credibility and/or reliability of the claim documentation.

Any such interview must be completed within 30 (thirty) days of the later of the announced opening of the Claims Facility[14] or the Claims Administrator's acknowledgment of a complete claim application, unless the Claims Administrator has been unable to locate the employer for an interview despite documented diligent efforts, in which case the period may be extended by an additional 15 (fifteen) days so that the Administrator may contact the employer and/or confirm his existence.  At the claimant's option, the interview period can be extended further; any such extension request by the claimant and agreed-upon extension shall be documented by the Claims Administrator.  In the Claims Administrator's sole discretion, an interview may be conducted by telephone.  If the employer has filed a claim and received an offer from either the GCCF or the Class Settlement, the interview shall not be conducted unless it is needed to provide clarification of the statement.

Subject to discussions with the Claims Administration Vendors as to feasibility, interviewers of claimants of Native American, Vietnamese or Cambodian origin or background shall ~~include a~~ be by a person of the same ethnic group as the claimant and capable of interviewing the claimant in his native language, provided that the interviewers need not be from the Gulf Coast Area.  Subject to discussions with the Claims Administration Vendors as to feasibility, the Claims Administrator shall use best efforts to have on staff interviewers fluent in languages of other

---

[13] In addition, nothing in this Individual Economic Loss Framework shall in any way limit the right and obligation of the Claims Administrator to investigate fully all suspicions of fraudulent conduct by or on behalf of any claimant, including but not limited to conducting any interviews and obtaining any documents the Claims Administrator deems necessary.  Any such interviews will not be included in the 35% limit set forth above.

[14] The parties will need to reach agreement on the opening date of the Claims Facility, prior to which the 30-day interview period cannot start to run.

ethnic groups to be identified by the PSC who will participate in conducting interviews of individuals in such ethnic groups.  If claimant or claimants counsel provides a time for the interview, the Administrator shall use that opportunity to conduct the interview.

~~The Claims Administrator shall have the right to interview all applicants in this category III claiming lost income of $7,500 or more and their supporting employer(s), as well as up to 35% of all other applicants within this category III and their supporting employer(s).[16]~~

The **Claims Administrator** shall determine the Final Compensation amount based on the information provided by the claimant and the employer(s), including the sworn claim form, affidavits, or interviews ~~and/or any supplemental information the Claims Administrator may require the claimant to provide to support the claim, and/or any other information the Claims Administrator may determine to be relevant and reliable~~.  The **Claims Administrator** may rely on his assessment of credibility and reliability in determining the Final Compensation amount, if any, to be provided to the claimant.

~~[PSC DISAGREES THAT AN INTERVIEW MAY BE REQUIRED TO SUPPORT COMPENSATION PAYMENTS FOR 2010 LOSSES AND WOULD PERMIT SUCH INTERVIEWS ONLY WITH RESPECT TO LOSSES CLAIMED WITH RESPECT TO YEARS AFTER 2010 AND THEN ONLY BY INDIVIDUALS FROM THE SAME ETHNICITY OR TRIBE AS THE CLAIMANT.]~~

---

~~[16] In addition, nothing in this Individual Economic Loss Framework shall in any way limit the right and obligation of the Claims Administrator to investigate fully all suspicions of fraudulent conduct by or on behalf of any claimant, including but not limited to conducting any interviews and obtaining any documents the Claims Administrator deems necessary.  Any such interviews will not be included in the 35% limit set forth above.~~

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

**V.**   **DECKHAND AND DOCKSIDE WORKER CLAIMANTS WITHOUT EARNINGS DOCUMENTATION WHO SUBMIT INDIVIDUAL, EMPLOYER AND SPONSOR SWORN STATEMENTS**

~~[PSC DISAGREES IN SEVERAL FUNDAMENTAL RESPECTS:~~
~~1.~~
~~2.   PSC WOULD NOT REQUIRE EMPLOYER STATEMENT.~~
~~3.       4. PSC REJECTS QUALIFICATION REQUIREMENTS FOR SPONSORS]~~
~~5. PSC DISAGREES WITH INTERVIEW REQUIREMENT.]~~

A claimant who (1) is a Deckhand or Dockside Worker (including individuals working in marinas and individuals employed handling or processing catch from fishing vessels) and (2) who is not a **New Entrant To Employment** and (3) who lacks both **Tax Information Documents** and **Pay Period Earnings Documentation** evidencing their earnings during the **Benchmark Period** and **Compensation Period** may instead establish lost earnings and causation by submitting (a) a claimant sworn written statement with specified contents, (b) ~~an employer sworn written statement with specified contents, (c)~~ a sworn written statement by a sponsor, and (~~d~~c) other specified documentation.[16]   In addition, the **Claims Administrator** may interview the claimant and/or the employer and/or the sponsor. If the Administrator determines the documentation submitted creates a reasonable basis to question the credibility and/or reliability of the documentation or claim.

A.   **Documentation and Causation Requirements**

1.   **Claimant Sworn Written Statement** which may be electronically signed by use of an approved technology such as Adobe EchoSign ~~on a form published by the **Claims Administrator**, and executed before a notary on the roster of approved notaries to whom the claimant has presented government-issued identification,~~ which sets forth ~~all of the information required in that form, including but not limited to~~ the following:

   a.   No tax returns are available.

   b.   The claimant made diligent efforts to obtain W-2s from his or her employer and they are not available.

   c.   No **Pay Period Earnings Documentation** or other annual employer-provided payroll documentation is available for the **Benchmark Period** and **Compensation Period**.

   d.   Claimant's presence in the local area (within 60 miles of the Gulf shore) for work during the period from April 20, 2010 - December 31, 2010.

   e.   The claimant's employment prior to April 20, 2010, and the claimant's expected employment thereafter in the same or similar capacity, including anticipated **Actual Earnings**.

   f.   Identification of the time periods in 2010 after the DWH Spill during which the claimant was (i) working or (ii) not working.

---

[16] BP is working on draft formats for Claimant and Employer Sworn Statements.

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

g. The business name, last known address and telephone number of claimant's employer (including a prospective employer) from whom a sworn written statement is submitted.

h. The name, address and telephone number of any individual providing a supporting sponsorship form or who otherwise assisted the claimant in submitting a claim and a description of the claimant's relationship to the sponsor.

i. An explanation of how the reduction of claimant's hours of work, termination of the claimant's employment, or withdrawal of an offer of employment during the period from April 20, 2010 - December 31, 2010, was due to or resulting from the DWH Spill.

2. **Claimant Employability Documentation**, including:

a. A valid  Verification of claimants government issued identification number, social security card, a valid temporary worker visa, or a valid green card. Verification may be by providing a copy of the document or verification from a public database.

b. Evidence that the claimant was at least 16 years of age as of April 20, 2010. Acceptable evidence includes a valid driver's license, a valid passport, or a certified copy of the claimant's birth certificate.

c. If claimant's employment requires a government-issued fishing license, a fishing license.

3. **Employer Sworn Written Statement:** On a form published by the **Claims Administrator,** and executed before a notary on the roster of approved notaries to whom the employer has presented government-issued identification, which sets forth all of the information required in that form, including but not limited to the following  *[PSC DISAGREES EMPLOYER STATEMENT SHOULD BE REQUIRED]*:

a. The employer's business name, address(es), telephone number(s), vessel number, size and all license numbers.

b. That the employer (i) employed the claimant at some point during 2009 as a deckhand or dockside worker and would have employed the claimant in 2010 or (ii) employed the claimant during 2010 and describing the nature of the claimant's employment in 2009-2010.

c. A statement that employer reduced the claimant's hours of work, terminated the claimant's employment, or withdrew or did not extend an offer of employment during the period from April 20, 2010 - December 31, 2010, as a result of the DWH Spill.

4.3. **Sworn Written Statement of a Sponsor,** on a form published by the **Claims Administrator,** and executed before a notary on the roster of approved notaries to whom the sponsor has

33

---

**Formatted:** List Paragraph

**Formatted:** Indent: Left:  0.5", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 3 + Alignment: Left + Aligned at:  1.25" + Indent at:  1.5"

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

~~presented government-issued identification,~~ which may be electronically signed by use of an approved technology such as Adobe EchoSign ~~and~~ which sets forth ~~all of the information required in that form, including but not limited to~~ the following:

   a.  The sponsor's name, address, daytime and evening telephone numbers, Social Security number or government issued identification number, and the length of time the sponsor has resided at their current address.

   b.  A statement that a true and correct copy of one (or more) of the following forms of valid identification of the sponsor is attached:  valid driver's license, Social Security card, valid U.S. Passport, Green Card, and attached copies, or verification from a public database that the sponsor has one or more of the listed items.

   c.  The sponsor's relationship to the claimant (which must be other than the parent, grandparent, child, grandchild, spouse, brother, sister, aunt, uncle, niece, nephew, brother-in-law, sister-in-law, step-parent, or step-child of the claimant unless such person was the claimant's employer in 2009 or 2010 or a co-employee) and the basis for the sponsor's personal knowledge of the claimant's employment.[17]

   d.  A description of the claimant's employment prior to April 20, 2010, if relevant, the claimant's expected employment as a deckhand or dockside worker thereafter, and the sponsor's basis of knowledge for these facts.

   e.  An explanation of how the reduction of claimant's hours of work, termination of the claimant's employment, or withdrawal of an offer of employment during the period from April 20, 2010 - December 31, 2010, was due to or resulting from the DWH Spill.

   f.  That the sponsor has not submitted a Sponsor Form for more than ten other claimants, unless the Sponsor is i) member of law enforcement, ii) government employee or official, iii) member of the Clergy, iv) job placement service, or v) Social Worker.

   ~~g.  That the sponsor is not seeking compensation pursuant to Categories III or IV of this framework.~~

   ~~h.~~g.  That the sponsor understands and acknowledges that the Claims Administrator will rely on statements in the sponsor's form, which the sponsor verifies are true and correct.

   ~~i.~~h. That the Sponsor understands that fraudulent claims will be prosecuted to the full extent of the law.

  B.  **Description of Compensation Calculation**

A deckhand or dockside worker relying on this Section IV methodology, including the claimant's own sworn written statement and the sworn written statement(s) of the employer(s) and

---

[17] The standard to be applied is whether or not the Sponsors statement contains facts that would allow the Sponsor to testify under the Federal Rules of Evidence as being within the Sponsors personal knowledge .

34

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

sponsor, shall receive $3,000 *[PSC - $12,500 FOR 2010]*, subject to the **Claims Administrator**'s right to determine after any interview conducted, that the credibility and reliability of information submitted by the claimant warrant a reduction in that amount or no payment at all. No RTP shall apply.

Formatted: Not Highlight

Final Compensation equals:

> **Claimant Lost Earnings** (as set forth in the affidavits)not to exceed
> ≤ $3,000 $12, 500  [Adopt the same calculation as IV including the RTP eligibility and an RTP of 1]

*[PSC POSITION:  $12,500 FLAT PAYMENT FOR 2010 and NO RTP.  IF COMPENSATION IS SOUGHT FOR 2012 OR AFTER, THE REVIEW STANDARD APPLIES AND AN AGREED TO RTP SHALL APPLY.]*

The authority to conduct an interview available in sections IV and V is to be exercised by the Administrator only if the Administrator finds from the claim documentation that there exists a reasonable basis to question the credibility and/or reliability of the claim documentation.

Formatted: Font: Not Italic

Based upon the Claims Administrator's analysis of the claims file, the claimant, employer(s) or sponsor(s) may be required to participate in an in-person interview by the Claims Administration staff.  Any such interview must be completed within 30 (thirty) days of the later of the announced opening of the Claims Facility[18] or the Claims Administrator's acknowledgment of a complete claim application, unless the Claims Administrator has been unable to locate the employer for an interview despite documented diligent efforts, in which case the period may be extended by an additional 15 (fifteen) days so that the Administrator may contact the employer and/or confirm his existence.  At the claimant's option, the interview period can be extended further; any such extension request by the claimant and agreed-upon extension shall be documented by the Claims Administrator.  In the Claims Administrator's sole discretion, an interview may be conducted by telephone.

Subject to discussions with the Claims Administration Vendors as to feasibility, interviewers of claimants of Native American, Vietnamese or Cambodian origin or background shall include a person of the same ethnic group as the claimant and capable of interviewing the claimant in his native language, provided that the interviewers need not be from the Gulf Coast Area.  Subject to discussions with the Claims Administration Vendors as to feasibility, the Claims Administrator shall use best efforts to have on staff interviewers fluent in languages of other ethnic groups to be identified by the PSC who will participate in conducting interviews of individuals in such ethnic groups.

---

[18] The parties will need to reach agreement on the opening date of the Claims Facility, prior to which the 30-day interview period cannot start to run.

Produced Pursuant To Rule 408
BP further 2/12/12 edits to 2/6/12 edits to PSC

The Claims Administrator shall have the right to interview up to 35% of all applicants within this category IV and/or their supporting employer(s) and/or sponsor(s).[19]

The **Claims Administrator** shall determine the Final Compensation amount based on the information provided by the claimant, ~~the employer(s) and~~ the sponsor(s), including the sworn claim form, affidavits, interviews ~~and/or any supplemental information the Claims Administrator may require the claimant to provide to support the claim~~, and/or any other information the Claims Administrator may determine to be relevant and reliable.  The **Claims Administrator** may rely on his credibility and reliability determinations in determining the Final Compensation amount, if any, to be provided to the claimant.

~~[PSC DISAGREES THAT AN INTERVIEW MAY BE REQUIRED TO SUPPORT COMPENSATION PAYMENTS FOR 2010 LOSSES AND WOULD PERMIT SUCH INTERVIEWS ONLY WITH RESPECT TO LOSSES CLAIMED WITH RESPECT TO YEARS AFTER 2010 AND THEN ONLY BY INDIVIDUALS FROM THE SAME ETHNICITY OR TRIBE AS THE CLAIMANT.]~~

---

[19] In addition, nothing in this Individual Economic Loss Framework shall in any way limit the right and obligation of the Claims Administrator to investigate fully all suspicions of fraudulent conduct by or on behalf of any claimant, including but not limited to conducting any interviews or obtaining any documents the Claims Administrator deems necessary.  The 35% limitation set forth above shall not apply to such interviews.

36