```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF LOUISIANA

 3        - - - - - - - - - - - - - - - - - - -

 4        IN RE: OIL SPILL, by the OIL RIG

 5        "DEEPWATER HORIZON" in the

 6        Gulf of Mexico, on APRIL 20, 2010      MDL NO. 2179

 7

 8        This Document Relates to: 12-00311     SECTION: J.

 9

10

11        - - - - - - - - - - - - - - - - - -

12

13

14

15        This is the deposition of ALEXIS RENÉ NUSUM, taken

16        before an Official Examiner at Hamilton Princess Hotel, 76

17        Pitts Bay Road, Pembroke Hamilton, Bermuda, HM 08, on

18        Wednesday, August 14, 2013 at 9:00 a.m.

19

20                    --------------------

21

22        Reported by: Lisa M. Barrett, CSR (Ont.) RPR, CRR

23

24                    --------------------

25
```

MG Court Reporting & Transcription Services
Bermuda, 441 232-6500
transcript@northrock.bm

EXHIBIT

13

1          Q.    Did Cameron keep Chubb apprized

2    of its negotiations with BP?

3          A.    Yes.

4          Q.    How did it do so?

5          A.    Through emails and through

6    calls with the carriers.

7          Q.    To the best of your

8    recollection, did Liberty participate in those

9    emails and discussions?

10          A.    Yes.

11          Q.    Do you recall who from Liberty

12    participated in those discussions?

13          A.    Yes.

14          Q.    What are the names of those

15    individuals?

16          A.    I just remember their lawyer

17    who was Paul Koepff.

18          Q.    Do you recall a gentleman named

19    Jeffrey Roberts?

20          A.    Yes.

21          Q.    Who was Jeffrey Roberts?

22          A.    I didn't know who he was at

23    that -- I don't --

24          Q.    You did not know which insurer

25    he was associated with?

```
 1                    A.    This is emails between myself

 2    and Mike Larsen and Cameron.

 3                    Q.    Who is Mr. Larsen?

 4                    A.    He is my monitoring counsel.

 5                    Q.    Do you recall who Mr. Auslander

 6    is?

 7                    A.    Yes, he is coverage counsel for

 8    Cameron.

 9                    Q.    I believe we discussed

10    Mr. Eastman before.

11                    A.    Yes.

12                    Q.    He is an employee of Cameron.

13                    A.    Yes.

14                    Q.    As is Tony Black?

15                    A.    Yeah.

16                    Q.    What communications are

17    reflected in this email?

18                    A.    This is us telling -- well,

19    CAIL telling Cameron that we are ready to give our

20    limits.

21                    Q.    I'll refer you to page 3539,

22    the second page of the email, where Mr. Larsen

23    states:

24                         "CAIL granted its consent to

25                         the condition and non-financial
```

```
1                        terms of the proposed settlement

2                        and made available to Cameron

3                        the full $25 million limit under

4                        the CAIL policy.  In doing so,

5                        CAIL consents to waive its

6                        subrogation rights under the

7                        policy as contemplated under the

8                        terms of the Settlement

9                        Agreement in consideration for

10                       the releases and indemnities,

11                       among other rights, provided to

12                       Cameron and its insurers under

13                       the terms of the proposed

14                       Settlement Agreement."

15                       So, first, do you recall that Chubb

16        agreed to pay Cameron its full $25 million limit?

17                       A.    Yes.

18                       Q.    Do you recall also that CAIL

19        consented to waive its subrogation rights under the

20        policy?

21                       A.    Yes.

22                       Q.    And that is a different

23        position from Chubb's initial reservation of

24        rights; is that correct?

25                       A.    Yes.
```

1          MR. LARSEN:  Why don't you restate,

2    so that we have the full question.

3          BY MS. TOZESKI:

4          Q.   I'll withdraw.

5          Did you believe that Cameron was

6    entitled to full limits under the Chubb policy for

7    the settlement with BP?

8          MR. LARSEN:  Object, just to the

9    extent it calls for a legal conclusion.

10         THE WITNESS:  Yeah, that's --

11         THE EXAMINER:  Objection noted.

12         THE WITNESS:  -- privileged.

13   I can't --

14         MR. LARSEN:  You can respond to that,

15   to the extent that it doesn't require

16   attorney-client communication.  She's asking for

17   your opinion as to whether you thought that they

18   were entitled to it, so you can respond as to what

19   you did in that circumstance, I think, without

20   divulging privilege.

21         BY MS. TOZESKI:

22         Q.   Sure.  I'll restate the

23   question.

24         A.   Okay.  Thank you.

25         Q.   Did you believe, in light of

```
 1        Chubb's agreement to pay full limits, that Cameron

 2        was entitled to full limits under the terms of the

 3        Chubb policy?

 4                      MR. LARSEN:  Same objection.

 5                      THE WITNESS:  Yes.

 6                      THE EXAMINER:  Objection noted.

 7                      BY MS. TOZESKI:

 8                      Q.   At some point did you become

 9        aware that Liberty refused to offer its limits to

10        fund Cameron's settlement with BP?

11                      A.   I'm sorry, can you repeat that,

12        please?

13                      Q.   Sure.  At some point did you

14        become aware that Liberty refused to offer its

15        policy limits to Cameron, to fund its settlement

16        with BP?

17                      A.   Yes.

18                      Q.   Do you recall why Liberty

19        refused to offer its policy limit?

20                      MR. LARSEN:  Objection, to the extent

21        it calls for speculation.

22                      MR. DEES:  Join in the objection.

23                      THE EXAMINER:  Objections noted.

24                      THE WITNESS:  When I read one of Paul

25        Koepff's letters, I saw what he stated as far as the
```