# COUCH ON INSURANCE 3D

THOMSON
WEST

40429694si 9/05

**EXHIBIT 23**

*Jurisprudence*

18 Am Jur 2d, Contribution.
44 Am Jur 2d, Insurance §§ 1781 et seq.

*Am Jur Proof of Facts*

28 Am Jur Proof of Facts 3d 507, Proof of Excess Insurer's Cause of Action Against Primary Insurer.

**KeyCite™:** Cases and other legal materials listed in KeyCite Scope can be researched through West Group's KeyCite service on WESTLAW®. Use KeyCite to check citations for form, parallel references, prior and later history, and comprehensive citator information, including citations to other decisions and secondary materials.

## I. INTRODUCTION TO OTHER INSURANCE CLAUSES

### § 219:1 What Are Other Insurance Clauses

Insurance policies, particularly liability policies, commonly contain "other insurance" clauses that limit an insurer's liability where other insurance may cover the same loss.[1]

◆ **Observation:** The rights and obligations of the various insurers are determined by the "battle of the forms" which requires close scrutiny of each word contained in each of the clauses.

Such clauses attempt to control the manner in which each insurer contributes to or shares a covered loss.[2] Because "other insurance" clauses are designed to preclude payment of a disproportionate amount of a loss shared with another insurer, such a clause does not apply where the same insurer issues both covering policies.[3] Where

---

[Section 219:1]

[1] General Star Nat. Ins. Corp. v. World Oil Co., 973 F. Supp. 943 (C.D. Cal. 1997).

[2] Fire Ins. Exchange v. American States Ins. Co., 39 **Cal.** App. 4th 653, 46 Cal. Rptr. 2d 135 (2d Dist. 1995); Kern v. Michigan Mut. Liability Co., 129 Ill. App. 2d 423, 263 N.E.2d 134 (4th Dist. 1970); Truck Ins. Exchange v. Maryland Cas. Co., 167 N.W.2d 163 (**Iowa** 1969).

[3] United Services Auto. Ass'n v. Dokter, 86 **Nev.** 917, 478 P.2d 583 (1970).



such clauses are in effect, each insurer's ultimate liability "is generally determined by the explicit provisions of the respective 'other insurance' clauses."[4] Such is the case even where the policies cover different insureds.[5]

"Other insurance" clauses originated in the property insurance context to eliminate the supposed "moral hazard" which would ensue where the insured was able to obtain two or more policies insuring the subject property for an amount in excess of its worth.[6]

An other insurance clause may be circumvented by effect of a contract or rule of law. For example, the regulations of the Interstate Commerce Commission determine primary liability in the case of interstate motor carriers.[7] Likewise, an indemnity agreement between the insureds or a contract with an indemnification clause, such as is commonly found in the construction industry, may shift an entire loss to a particular insurer notwithstanding the existence of an "other insurance" clause in its policy.[8]

♦ **Observation:** In such situations, the practitioner must first determine whether the indemnification agreement is enforceable under the laws of the jurisdiction before determining the impact of the other insurance clauses. For example, is the agreement enforceable under N.Y. Gen. Obligations Law § 5-322.1 which voids agreements where an entity seeks indemnification for its own negligence.

---

[4] Continental Casualty Co. v. Pacific Indeminity Co., 134 **Cal.** App. 3d 389, 184 Cal. Rptr. 583 (2d Dist. 1982).

[5] Fire Ins. Exchange v. American States Ins. Co., 39 **Cal.** App. 4th 653, 46 Cal. Rptr. 2d 135 (2d Dist. 1995).

[6] Carriers Ins. Co. v. American Policyholders' Ins. Co., 404 A.2d 216 (**Me.** 1979); Owens-Illinois, Inc. v. United Ins. Co., 138 **N.J.** 437, 650 A.2d 974 (1994).

See also Richmond, D., Issues and Problems in "Other Insurance," Multiple Insurance, and Self-Insurance, 22 Pepperdine Law Review 1373 (1995).

[7] Transamerica Ins. Co. v. Maryland Cas. Ins. Co., 166 **Ariz.** 219, 801 P.2d 454 (Ct. App. Div. 2 1990); Planet Ins. Co. v. Gunther, 160 Misc. 2d 67, 608 **N.Y.** S.2d 763 (Sup. Ct. 1993); Ohio Cas. Ins. Co. v. United S. Assur. Co., 85 **Ohio** App. 3d 529, 620 N.E.2d 163 (2d Dist. Clark County 1993).

[8] J. Walters Const., Inc. v. Gilman Paper Co., 620 So. 2d 219 (**Fla.** Dist. Ct. App. 1st Dist. 1993); Costello v. Times Square Hotel Co., 171 A.D.2d 505, 567 **N.Y.** S.2d 231 (1st Dep't 1991).



In addition, policy exclusions may terminate an insurer's obligations where it might otherwise appear that its policy is concurrent with another.[9] Such is the case, for example, with a "newly-acquired automobile" clause in an automobile insurance policy.[10]

"Other insurance" clauses govern the relationship between insurers, they do not affect the right of the insured to recover under each concurrent policy.[11] Likewise, an "other insurance" clause does not obligate the insured to maintain a second policy.[12]

### § 219:2 Scope

This chapter discusses the nature and validity of other insurance provisions in policies of primary insurance and the resolution of conflicts where such clauses come into conflict in two or more policies which purport to cover the same risk. The intent and purpose of an

---

[9] Fireman's Fund Ins. Co. v. Allstate Ins. Co., 234 **Cal.** App. 3d 1154, 286 Cal. Rptr. 146 (3d Dist. 1991); Englund v. State Farm Mut. Auto. Ins. Co., 190 **Mich.** App. 120, 475 N.W.2d 369 (1991); Progressive Cas. Ins. Co. v. Empire Ins. Co., 162 Misc. 2d 91, 616 **N.Y.** S.2d 136, 137-38 (Sup. Ct. 1994); Mattheis by Vowinkel v. Heritage Mut. Ins. Co., 169 **Wis.** 2d 716, 487 N.W.2d 52 (Ct. App. 1992).

[10] See, for example, Hawaiian Ins. & Guar. Co., Ltd. v. Financial Sec. Ins. Co., 72 **Haw.** 80, 807 P.2d 1256 (1991); Ellis v. Weger, 550 N.E.2d 1347 (**Ind.** Ct. App. 4th Dist. 1990); Northern Assur. Co. of America v. Farm Bureau Mut. Ins. Co., Inc., 249 **Kan.** 662, 822 P.2d 45 (1991); Allstate Ins. Co. v. Liberty Mut. Ins. Group, 868 P.2d 110 (**Utah** Ct. App. 1994).

[11] Chemical Leaman Tank Lines, Inc. v. Aetna Cas. and Sur. Co., 817 F. Supp. 1136 (D. **N.J.** 1993), aff'd in part and remanded on other grounds, 89 F.3d 976, 44 Fed. R. Evid. Serv. (LCP) 1292 (3d Cir. 1996); Employers Reinsurance Corp. v. Phoenix Ins. Co., 186 **Cal.** App. 3d 545, 230 Cal. Rptr. 792, 798 (1st Dist. 1986); Zurich Ins. Co. v. Northbrook Excess and Surplus Ins. Co., 145 **Ill.** App. 3d 175, 98 Ill. Dec. 512, 494 N.E.2d 634 (1st Dist. 1986), appeal allowed, (Oct. 2, 1986), review denied, 118 Ill. 2d 23, 112 Ill. Dec. 684, 514 N.E.2d 150 (1987); Bazinet v. Concord General Mut. Ins. Co., 513 A.2d 279 (**Me.** 1986); Slabic v. Hendrickson, 147 Misc. 2d 472, 556 **N.Y.** S.2d 236 (Sup. Ct. 1990).

Payments of insurance benefits to insured by first insurer for insured's fire loss in no way affected liability of second insurer for its share of the loss of uninsured's mobile home, since contract which insured had with second insurer was separate and independent from his or her contract with first insurer. Farmers Texas County Mut. Ins. Co. v. Jones, 660 S.W.2d 879 (**Tex.** App. Fort Worth 1983).

[12] Lattan v. Royal Ins. Co., 45 **N.J.** L. 453 (N.J. Sup. Ct. 1883); Hand v. Williamsburgh City Fire Ins. Co., 57 **N.Y.** 41, 1874 WL 9752 (1874).

For example, an uninsured motorist carrier's interest in subrogation must be subordinated to recovery of damages by the injured person, and if the insured releases the tortfeasor in the course of a good-faith compromise and settlement, the uninsured motorist carrier has no recourse.[74]

### § 224:102 — But Not When Release Reserves Insurer's Rights to Subrogation

Since a release may be structured so as to preserve an insurer's rights, the execution of a release in such a situation does not violate the policy,[75] destroy the insurer's right to subrogation,[76] nor constitute a defense to an action on the policy.[77]

---

[Section 224:101]

[74] Sharp v. Daigre, 555 So. 2d 1361 (**La.** 1990).

[Section 224:102]

[75] Aetna Cas. & Sur. Co. v. Sosebee, 150 **Ga.** App. 354, 258 S.E.2d 37 (1979); Czyzewski v. Gleeson, 49 **Ill.** App. 3d 655, 7 Ill. Dec. 396, 364 N.E.2d 557 (1st Dist. 1977).

In an action by an insurer against insureds, volunteer fireman, and volunteer fire department, to enforce subrogation rights, insureds did not interfere with insurer's right of subrogation so as to render insureds liable to insurer, even though insureds settled their tort action against the fireman, owner of vehicle operated by the fireman, and the fire department, since the release stated that insureds did not release any portion of their claim for which they had already been compensated by any other policy and for which subrogation rights existed. Cincinnati Ins. Co. v. Rose, 63 **Ohio** Misc. 2d 1, 612 N.E.2d 819 (C.P. 1992).

[76] Holbert v. Safe Ins. Co., 114 **W. Va.** 221, 171 S.E. 422 (1933) (settlement over and above amount of fire insurance).

Settlement of all claims between insured plaintiff and defendants terminates all causes of action except insurer's preserved subrogation claim, which is limited to amount insurer paid insured. Illinois Farmers Ins. Co. v. Brekke Fireplace Shoppe, Inc., 495 N.W.2d 216 (**Minn.** Ct. App. 1993).

Insurer that paid insured for loss of personal property destroyed by fire while stored at warehouse was entitled, as subrogee, to maintain action against warehouse after insurer paid insured for loss. Fact that insured entered into settlement with warehouse after receipt of payment by insurer did not preclude insurer's action as subrogee, where warehouse was aware of insurer's status as subrogee, where insurer was not party to settlement agreement, and where release executed by insured in favor of warehouse explicitly provided that it would not in any way affect rights of insurer in its action against warehouse. Liberty Mut. Ins. Co. v. National Consol. Warehouses, Inc., 34 **Mass.** App. Ct. 293, 609 N.E.2d 1243 (1993).

[77] Holbert v. Safe Ins. Co., 114 **W. Va.** 221, 171 S.E. 422 (1933).

Where release partially released tortfeasor for less than full amount of primary policy, but giving credit for full policy limits and release reserved

For example, a fidelity insurer's rights to recover, as an equitable subrogee, from an insured's public accountant/auditor for payments in connection with defalcations of the insured's employee were preserved absent language in the "Release, Assignment and Subrogation Agreement" between the insurer and insured or the "Settlement Agreement and Release" between the insured and accountant/auditor that could be construed as barring such a claim.[78]

### § 224:103 — But Not When Claim Would Have Been Barred on Other Grounds

The rule that a release executed in favor of tortfeasor and his or her liability insurer extinguishes the liability of the injured party's insurer for medical payments because it destroys that insurer's subrogation rights is inapplicable where the tortfeasor and the injured party have the same insurer, since the insurer cannot be subrogated against itself.[79]

### § 224:104 Release Must Be Valid to Impair Insurer's Rights

◆ **Observation:** As with any contract provision, there must be a meeting of the minds concerning the terms and conditions of the applicable provision as well as meeting all other requirements of an enforceable contract (i.e., authority and consideration).

In order to affect an insurer's subrogation rights, a release must be executed by one with authority to do so. For example, even if a settlement agreement between a manufacturer's parent corporation and the purchaser of the manufacturer's assets were construed to purport to release the insurer's right of subrogation as against the purchaser, there was no showing that the parent had authority to

---

rights to proceed against excess carrier, release did not relieve excess carrier of liability. Gasquet v. Commercial Union Ins. Co., 391 So. 2d 466 (**La. Ct. App. 4th Cir. 1980**), writ denied, 396 So. 2d 921 (La. 1981), writ denied, 396 So. 2d 922 (La. 1981).

[78] Federal Ins. Co. v. Arthur Andersen & Co., 75 **N.Y.** 2d 366, 553 N.Y.S.2d 291, 552 N.E.2d 870 (1990).
[Section 224:103]
[79] Dupre v. Vidrine, 261 So. 2d 288 (**La. Ct. App. 3d Cir. 1972**).

LIMITATIONS/DEFENSES TO SUBROGATION § 224:148

caused injury to the construction manager's employee, where it was undisputed that the accident occurred within the subcontractor's work area, even though the accident may have resulted from negligence of the construction manager or any other additional insured, as the quoted language focuses not upon the precise cause of the accident but upon the general nature of the operation in the course of which the injury was sustained.[43]

Where a construction contract required the owner to carry insurance and provided that the contractor and owner waive rights against others for damages caused by the perils insured against, and the owner procured a policy covering fire and other perils including windstorm which contained a clause that the insured may, without prejudice to the insurer and prior to loss, release others from liability for loss to the property from whatever cause, the insurer waived its subrogation rights against a contractor, and after payment for windstorm loss sustained while the building was under construction, the insurer could not maintain an action against the contractor for alleged negligence in installing the roof.[44]

### C. WAIVER BY CONDUCT INVOLVING INSURED'S CLAIM UNDER POLICY

### § 224:148 Denial of Liability; Generally

Where an insurer denies liability on a policy,[45] it is estopped from thereafter claiming that it was released when the insured settled with the wrongdoer,[46] or that the insured breached the policy's subrogation provision,[47] by impairing its subrogation rights,[48] or

---

[43] Lim v. Atlas-Gem Erectors Co., Inc., 225 A.D.2d 304, 638 N.Y. S.2d 946 (1st Dep't 1996).

For discussion of the antisubrogation rule, see Couch on Insurance 3d, §§ 224:1 et seq.

[44] Commerce & Industry Ins. Co. v. Orth, 254 Or. 226, 458 P.2d 926 (1969).

[Section 224:148]

[45] For discussion of the effect of an insurer's disclaimer of coverage, see Couch on Insurance 3d, §§ 198:52 et seq., and for discussion of an insurer's liability for denial of coverage, see Chapter 205.

[46] Roberts v. Fireman's Ins. Co. of Newark, N. J., 376 Pa. 99, 101 A.2d 747 (1954).

[47] Where insurer denied liability under tractor and trailer collision policy, it could not thereafter invoke as defense breach of subrogation provision of policy by insured's recovery of portion of collision loss from tortfeasor and

extinguishing its subrogation rights.[49]

---

◆ **Observation:** When assessing whether to issue a disclaimer letter, the insurer must recognize that it could waive its rights of subrogation unless it takes the necessary steps to preserve those rights. See discussion below.

---

An insurer by insisting that the insured seek compensation from the insurer of the highway department and its employees because a truck of the state highway department had caused the damage to the insured's property waives its right to subrogation and is estopped from claiming the loss thereof as a defense in an action on the policy.[50]

Where a medical payments insurer denied not only liability under the policy but that there was in existence a policy affording medical payments coverage, and thereafter the insured's executor settled the wrongful death action against the tortfeasor and recovered medical expenses whereupon the insurer changed its position and stipulated

---

execution of release in favor of tortfeasor. Dinn Oil Co. v. Hanover Ins. Co., 87 Ill. App. 2d 206, 230 N.E.2d 702 (5th Dist. 1967).

[48] Where marine insurer covering ocean racing yacht against all risks of physical loss denied claims and coverage when masts failed and vessel suffered loss of sails, rigging, and other equipment, and thereafter insured settled with yacht manufacturer and gave it release, insurer, after being held liable under policy, could not assert that release violated its subrogation rights under policy condition that policy is void if insured impairs insurer's right of recovery. Liberty Mut. Ins. Co. v. Flitman, 234 So. 2d 390 (**Fla.** Dist. Ct. App. 3d Dist. 1970).

[49] Where an insurer made no offer to pay insureds' claim under an extended coverage endorsement of a fire policy for damage to a building which collapsed into an adjoining excavation as a result of repeated blows on the foundation by a high lift machine, and persisted in denying liability on the ground that the loss was not covered by a provision of the policy insuring against damage caused by "vehicles," and thereafter the insureds instituted suit against the contractor and the subcontractor of the adjoining excavation and settled the suit for an amount less than the damage to the building and executed releases, even if the insurer's right of subrogation under the policy could have continued, since the insurer neither paid nor offered to pay claim, the action of the insurer in denying liability constituted a waiver of any such right to subrogation. Roberts v. Fireman's Ins. Co. of Newark, N. J., 376 **Pa.** 99, 101 A.2d 747 (1954).

[50] Weber v. United Hardware & Implement Mutuals Co., 75 **N.D.** 581, 31 N.W.2d 456 (1948).

the existence of the policy and the medical expenses and made medical payments, equity and good conscience precluded the insurer from recovering the medical payments from the executor under the subrogation provision of its policy.[51]

On the other hand, where an insured under a collision policy after an accident demanded payment from his or her insurer but the insurer advised the insured that the policy was void for fraudulent misrepresentations and that the premium was being returned, and thereafter the insured instituted suit against the estate of the other motorist for damages and made a settlement and executed a release in favor of the estate and its liability insurer for damages as to the person and property, the insured was thereafter precluded from recovery from his or her collision insurer under the policy because he or she destroyed its subrogation rights.[52]

Further, a professional liability insurer did not waive its subrogation rights under a policy by initially denying coverage where it subsequently assumed the responsibility of paying the insured's retained counsel's fees where the policy contained a $25,000 deductible to be applied toward the payment of defense costs, and the insured paid that amount in fees charged by the retained counsel.[53]

### § 224:149 — Failure to Reserve Rights

An estoppel or implied waiver of an automobile insurer's subrogation rights did not result from the insurer's failure to include in its denial letter any assertion or reservation of its contractual rights to consent to a settlement with the tortfeasor and to subrogation, where, by that time, the insured had already negotiated a settlement with the tortfeasor and signed a covenant not to sue.[54]

### § 224:150 Payment of Claim Without Requiring Subrogation Agreement

An aircraft liability insurer of a company which employed a flight instructor did not, in settling a claim against the flight instructor by

---

[51] Hardware Dealers Mut. Fire Ins. Co. v. Ross, 129 Ill. App. 2d 217, 262 N.E.2d 618 (3d Dist. 1970).

[52] Armijo v. Foundation Reserve Ins. Co., 75 N.M. 592, 408 P.2d 750 (1965).

[53] Middleberg, Riddle & Gianna v. Home Ins. Co., 691 So. 2d 738 (La. Ct. App. 4th Cir. 1997), writ denied, 701 So. 2d 983 (La. 1997).

[Section 224:149]

[54] Tate v. Secura Ins., 587 N.E.2d 665 (Ind. 1992).

§ 224:150                                              COUCH ON INSURANCE 3D

the pilot's widow, waive its right to subrogation against the liability insurer of the pilot for whom the flight instructor provided services where, although the company's insurer did not obtain a subrogation agreement with the pilot's insurer, it repeatedly denied liability and demanded that the pilot's insurer defend the flight instructor.[55]

### § 224:151  Defense Without Reservation of Rights[56]

A casino insurer's attempt to question coverage and reserve its right to deny coverage more than two years after it assumed defense of action against an insured did not preclude the insurer from stepping into the insured's shoes and attempting, under the doctrine of conventional subrogation, to recover from the insurers for a limousine driver and a limousine company for the amount the insurer paid to an injured third party to satisfy part of the third party's judgment against all of the insureds.[57]

A law enforcement officer's professional liability insurer did not waive a right to equitable subrogation against a public official's and employee's liability insurer by undertaking the defense of an insured city and failing to reserve a right to deny coverage where the first insurer kept the second insurer apprised of developments in the case and repeated requests that the second insurer participate in both defense and settlement.[58]

### § 224:152  Failure to Make Proper or Timely Payment of Loss[59]

When by its own conduct an insurer places the insured at such a disadvantage that the insured must proceed against the tortfeasor in order to save himself or herself and does so, the insurer thereby

---

[Section 224:150]
[55] Airmanship, Inc. v. U.S. Aviation Underwriters, Inc., 559 So. 2d 89 (Fla. Dist. Ct. App. 3d Dist. 1990).
[Section 224:151]
[56] For discussion of insurer's duty to defend, see Couch on Insurance 3d, Chapters 200 et seq.
[57] Jorge v. Travelers Indem. Co., 947 F. Supp. 150 (D. N.J. 1996).
[58] International Ins. Co. v. Guaranty Nat. Ins. Co., 780 F. Supp. 546 (N.D. Ill. 1991), vacated on other grounds, 994 F.2d 1280 (7th Cir. 1993).
[Section 224:152]
[59] For discussion of payment as element of subrogation, see Couch on Insurance 3d, §§ 223:3 et seq.

LIMITATIONS/DEFENSES TO SUBROGATION § 224:152

waives its right to subrogation.[60]

---

◆ **Observation:** An insurer cannot be perceived as putting its interests before those of the insured. Where the court suspects this is happening, it will decide various coverage issues against the insurer.

---

A collision insurer forfeited its right to subrogation where the insurer made no proper tender of payment of loss to the insured in that offer was less than any estimate of damage by any witness, whereupon the insured brought action against the tortfeasor and recovered damages for personal injury and property damage, and the insurer employed counsel who appeared in the insured's action against the tortfeasor.[61]

Where an insurer clearly did not assist in the insured's efforts to recover from the other driver because of a dispute between the insurer and the insured occasioned by the insurer's delay in satisfying its obligations to the insured under the policy, the trial court did not err in denying a claim for subrogation.[62]

An insurer's failure to pay all of an insureds' claims resulted in waiver of the insurer's claim that the insureds breached the subrogation clause by suing tortfeasor and obtaining satisfaction of judgment.[63]

Further, an unreasonable delay in settling with an insured may waive the right to demand that the insured not settle with the

---

[60] Poole v. William Penn Fire Ins. Co., 264 **Ala.** 62, 84 So. 2d 333 (1955).

Provision of policy of insurance against damage to automobile by collision that insured shall do nothing after loss to prejudice insurer's right of subrogation, even though violated by release of wrongdoer, is waived by insurer's failure to preserve its right of subrogation by satisfying, after due notice, its undoubted liability to insured, who in his or her action against wrongdoer for personal injury was compelled by law to include claim for property damage or lose it. Powers v. Calvert Fire Ins. Co., 216 **S.C.** 309, 57 S.E.2d 638, 16 A.L.R.2d 1261 (1950).

[61] In action on policy, insurer could not prevail on theory that taking judgment against tortfeasor destroyed insurer's right to subrogation. Allstate Ins. Co. v. Austin, 120 **Ga.** App. 430, 170 S.E.2d 840 (1969).

[62] Farm Bureau Mut. Ins. Co. v. Dercach, 450 N.E.2d 537 (**Ind.** Ct. App. 3d Dist. 1983).

[63] Kardly v. State Farm Mut. Auto. Ins. Co., 207 **Cal.** App. 3d 479, 255 Cal. Rptr. 40 (2d Dist. 1989).

wrongdoer so as to prejudice the right to subrogation.[64]

### § 224:153   Breach of Duty to Settle[65]

An excess insurer could bring an action against a primary carrier on the basis of equitable subrogation for bad faith or negligent refusal to settle within the primary coverage limit.[66] Accordingly, a primary automobile insurer's alleged breach of duty to settle was properly raised defensively by an excess carrier under California law to counter a primary insurer's subrogation claim, and also against a primary insurer's declaratory judgment and contribution claims.[67]

However, the active participation by an excess carrier in settlement negotiations may decrease or prevent the excess carrier's recovery where the excess insurer negligently undertakes or refuses to undertake settlement negotiations after the exhaustion, by tender or pay out, of the primary policy limits.[68]

As between coinsurers, a law enforcement officer's professional liability insurer did not waive a right to equitable subrogation against a public official's and employee's liability insurer by undertaking the defense of an insured city, failing to reserve a right to deny coverage, and failing to make reasonable efforts to settle a case before trial, where the first insurer kept the second insurer apprised of developments in the case and repeated requests that the second insurer participate in both the defense and the settlement.[69]

---

[64] McNeill v. District-Realty Title Ins. Corp., 342 A.2d 55 (**D.C.** 1975).
[Section 224:153]

[65] For discussion of insurer's duty to settle, see Couch on Insurance **3d**, Chapter 203.

[66] Whether insured consented to primary insurer's conduct of underlying litigation, so as to preclude excess insurer's equitable subrogation claim, was for juries. Certain Underwriters of Lloyd's and Companies Subscribing to Excess Aviation Liability Ins. Policy No. FL-10959 A & B v. General Acc. Ins. Co. of America, 909 F.2d 228 (**7th Cir.** 1990).

[67] Sequoia Ins. Co. v. Royal Ins. Co. of America, 971 F.2d 1385 (**9th Cir.** 1992).

[68] For defenses of contributory negligence or comparative fault to be "available" to primary carrier or defense attorney in equitable subrogation action brought by excess insurer, excess insurer must have had duty to act that is asserted to have been negligently performed or omitted. National Union Fire Ins. Co. of Pittsburgh, Pa. v. Insurance Co. of North America, 955 S.W.2d 120 (**Tex.** App. Houston 14th Dist. 1997), aff'd, 43 Tex. Sup. Ct. J. 775, 2000 WL 674756 (Tex. 2000).

[69] International Ins. Co. v. Guaranty Nat. Ins. Co., 780 F. Supp. 546 (N.D. Ill. 1991), vacated on other grounds, 994 F.2d 1280 (7th Cir. 1993).