UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---------------------------------------X

In Re: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010,

Applies to:
12-311, Cameron Int'l Corp. v. Liberty Ins. Underwriters, Inc., a/k/a Liberty Int'l Underwriters

---------------------------------------X

VIDEO DEPOSITION OF JESSICA ROGIN
New York, New York
Friday, May 31, 2013

Reported by:
Rebecca Schaumloffel, RPR, CLR
Job No: 61443



EXHIBIT
tabbles
27

there could be facts specific to the claim as to why the other carrier denied coverage and if that leaves the insured without coverage because of the specific facts of that claim, then it may be possible.

Q. Is the purpose of -- withdrawn.

Is one of the purposes of other insurance provisions, as used in the insurance industry, to create a set of circumstances where the insured might be left without coverage?

MR. MARTIN: Object to the form.

A. No. I would say the purpose of an other insurance clause is to allocate risk between potential parties to a loss.

Q. And where one of the parties who risk was allocated denies that it must cover the loss, does an other insurance provision in a policy permit the insurer who issued that policy to refuse to pay the insured?

MR. MARTIN: Object to the form.

A. Again, I am going to say that it is fact specific to the claim and the law of jurisdiction and the facts related to the

J. ROGIN

Q. Where multiple insurance policies might cover the same loss, you would expect one of them to pay the insured in the event of loss, correct?

A. If the policy -- if one of the policies covered the loss, then you would expect that one of the insurers would pay the loss, yes.

Q. And the purpose of another insurance provision is to help determine between the insurers which of the insurers is going to cover that loss, right?

A. Or all of the insurers are going to cover the loss and how they cover it.

Q. And is one circumstance, rather, you have multiple coverages of the same loss, that the insured is left without coverage by anyone, or is it the case that one of the insurers is going to need to step up to cover the loss?

MR. MARTIN: Object to the form.

A. It is entirely possible that two policies which the insured may allege cover a loss don't cover a loss in which case the

J. ROGIN

Q. Did you review it in draft form?

A. I believe so, yes.

Q. Did you authorize Mr. Koepff to send this letter to Cameron?

A. Well, I don't know if I was the one authorized the letter or Jim Engel.

Q. But it was one of the two of you?

A. Or Jeff Roberts, maybe.

Q. Turn to the second page. In the second full paragraph, Mr. Koepff wrote, "Moreover, LIU declines to offer its policy limits for the following additional reason: The LIU policy has the following other insurance provision" and then Mr. Koepff quotes the other insurance provision.

Do you see that?

A. Yes.

Q. Is this a statement of LIU's coverage position that the Liberty policy had not attached?

A. Well, I think that paragraph has to be read with the next paragraph. So I think it is a beginning of LIU's coverage position.

Q. Is it fair to say what in the -- with the text I read and the following paragraphs, Mr. Koepff on behalf of Liberty set forth LIU's coverage position that the Liberty policy had not attached?

A. Yes, it sets forth LIU's coverage position that our other insurance provision provides that we are excess to the other policies and to the contractual indemnity provided by Transocean to Cameron.

Q. So by November 7th, Liberty had made a decision concerning attachment with respect to the BP settlement negotiations, correct?

A. We had expressed our coverage position, yes.

Q. You didn't tell Cameron that this was a tentative position, right?

A. No.

Q. Liberty had made a decision that according to its policy, the policy did not attach and therefore Liberty was declining to offer its policy limits, correct?

A. At the time of November 7th, yes.

defense case but not the duty. And if we do so, we do it at our own expense.

Q. Does it speak to who is or not -- withdrawn.

Does it speak to who is going to be responsible for paying defense costs?

A. It says said, if we do so, we do so at our own expense if we associate in.

Q. Does this provision speak to who is going to be responsible for providing defense costs if Liberty does not associate it?

A. No.

Q. You would look to the underlying policy for that?

A. You would normally look to the policy provider or the underlying coverage, yes.

Q. If you look at paragraph C, can you read that to yourself and let me know when you are done.

A. Okay.

Q. Does this provision speak to who is going to be responsible for providing

defense costs if Liberty does not associate it?

A. No.

Q. Again, you would look to the underlying insurance policy to make that determination?

A. Yes.

Q. If you go back up to paragraph A of the defense section, it says, "We will not be required to assume charge of the investigation of any claim or defense of any suit against you."

Do you see that?

A. Yes.

Q. And that doesn't say anything about defense costs, right?

A. No.

Q. Is it your understanding that the Liberty policy was follow form policy?

A. Yes.

Q. So unless the Liberty policy had different terms that changed and restricted the coverage compared with the primary policy, it would follow the primary policy's

terms, right?

A. It didn't follow the primary. It followed the lead umbrella.

Q. The lead umbrella?

A. Yes.

Q. Let me ask that again so it is clear. Unless the Liberty policy had different terms that changed and restricted the coverage compared with the lead umbrella policy, the Liberty policy would adopt those terms, correct?

A. Yes.

Q. That's what it means to follow form, right?

A. Yes.

Q. You can put the Liberty policy to the side.

MR. KORN: I am going to mark as Rogin Exhibit 42, Defendant Liberty Insurance Underwriters Inc.'s Answers to Plaintiff Cameron International Corporation's First Set of Interrogatories.

(Whereupon, Rogin Exhibit 42,