Confidential Pursuant to Protective Order

Page 1

```
 1   IN THE UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF LOUISIANA
 2   ------------------------------------X
     In Re:  OIL SPILL BY THE OIL RIG
 3   "DEEPWATER HORIZON" IN THE GULF OF
     MEXICO, ON APRIL 20, 2010
 4
     Applies to:
 5   12-311, Cameron Int'l Corp. v. Liberty
     Ins. Underwriters, Inc., a/k/a Liberty
 6   Int'l Underwriters
 7   ------------------------------------X
 8
 9
10    * CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER *
11         VIDEOTAPED DEPOSITION OF BRAD EASTMAN
12                    Houston, Texas
13                Friday, August 2, 2013
14
15
16
17
18
19
20
21
22   Reported by:
23   SUSAN PERRY MILLER, RDR-CRR, CBC
24   JOB NO. 63308
25
```

TSG Reporting - Worldwide    877-702-9580

EXHIBIT 31

Confidential Pursuant to Protective Order

1                      B. EASTMAN

2 now is, I don't know that we've dismissed our

3 claims.

4        Q.   Right. And I'm with you on that.

5        A.   Okay.

6        Q.   That may still be hanging out

7 there, it may have died a natural death.

8        A.   Right. Yeah. Okay.

9        Q.   Very good, I understand.

10       A.   So I can't answer questions of why

11 we've dismissed our claims when I don't know

12 that we've dismissed our claims.

13       Q.   True. But the dismissal of the

14 summary judgment --

15       A.   The summary judgment motion.

16       Q.   -- was in conjunction with the BP

17 settlement. We can agree on that part?

18       A.   I think we can agree on that part,

19 yes.

20       Q.   Okay, very good.

21          (Sotto voce discussion.)

22 BY MR. PATE:

23       Q.   Did you agree to release your

24 contractual indemnification claims against

25 Transocean under the T&C and the MSA on

Confidential Pursuant to Protective Order

Page 105

1                    B. EASTMAN

2    December 12th, 2011?

3            MR. KORN:  Objection to form.  The

4        agreement speaks for itself.  And I

5        think you have the timing wrong.

6            MR. PATE:  I'm sorry?

7            MR. KORN:  You said December 12th?

8            MR. PATE:  December 12th, 2011.

9        A.   No.  No.

10   BY MR. PATE:

11       Q.   You disagree with that?

12       A.   I disagree with that.

13       Q.   Why?

14       A.   On December 12th, first of all, we

15   had not entered into an agreement with BP; and

16   second of all, in the agreement we entered

17   into with BP, we specifically said we would

18   waive those indemnification rights with

19   Transocean except to the extent we needed to

20   preserve Liberty's subrogation rights.

21       Q.   Do you have confidence in Tony

22   Black as risk manager for Cameron and his

23   ability to do his job?

24           MR. KORN:  Objection to form.

25       A.   Yes, depending on what you

Confidential Pursuant to Protective Order

Page 119

1  B. EASTMAN
2  Q. Okay. And explain the
3  confidentiality agreement. What was that for,
4  in general purposes?
5  A. Well, it would be potentially
6  detrimental to both BP and to Cameron for
7  details of the settlement negotiations to come
8  out in advance of the actual settlement, so as
9  is standard in a lot of corporate deals or
10 transactions or negotiations, we would have a
11 confidentiality agreement in place prohibiting
12 communication, with certain limited
13 exceptions, about those discussions.
14 Q. Okay, I follow that.
15     When did you first tell Liberty
16 Insurance Underwriters that you were in
17 settlement negotiations with BP?
18 A. I don't recall the actual date, but
19 we -- as soon as -- we called a call in
20 October, I believe, of 2011, to let the
21 insurers know that there were settlement
22 discussions and that we were going to be
23 entering into them.
24 Q. And would you say that it's fair
25 that, from the beginning, when you told the

1  B. EASTMAN
2  talking about between BP and Cameron.
3      A.   It does appear to be that way.  You
4  know, I haven't read it word for word but I
5  assume it is.
6      Q.   And at paragraph 4.4, if you'd turn
7  there for a second, that's on a page that's
8  Bates-labeled LIU09651?
9      A.   Yes, sir.
10     Q.   Okay.  And is paragraph 4.4 what
11 you had referred to earlier today that Cameron
12 had made provision to, I guess, protect
13 indemnity rights against Transocean?  Is that
14 what you were referring to?  Or subrogation
15 rights --
16          MR. KORN:  Objection.
17 BY MR. PATE:
18     Q.   -- of Liberty Insurance
19 Underwriters?
20     A.   That's part of it.  We had to make
21 a lot of changes to this document to protect
22 Liberty's subrogation rights.
23     Q.   Okay.  Paragraph 4.4, this says,
24 "Notwithstanding paragraphs 4.1 and 4.3, each
25 paragraph may enforce its rights under this

Confidential Pursuant to Protective Order

Page 140

1  B. EASTMAN
2  Q.  Would you agree --
3      MR. KORN:  I think we can all agree
4  that the document will speak for itself.
5  BY MR. PATE:
6  Q.  We all agree that the document
7  speaks for itself on paragraph 4.5.
8      You'd agree that Cameron here is
9  transferring and assigning all of its third
10 party claims to BP, correct?
11 A.  Subject to the other terms of the
12 agreement, I would agree with that.
13 Q.  Where does it say subject to the
14 other terms of the other agreements?
15 A.  Well, in 4.4, it says "This
16 provision applies notwithstanding any other
17 provision of the agreement."  So 4.4 trumps
18 the other provisions of the agreement.
19 Q.  Well, here, 4.5, hasn't -- hasn't
20 Cameron given its third-party rights to BP?
21 A.  Subject to the other terms of the
22 agreement.
23 Q.  It doesn't say "subject to the
24 other terms of the agreement."  It says
25 "notwithstanding other provisions of this

Confidential Pursuant to Protective Order

Page 141

1      B. EASTMAN
2  agreement," correct?
3         MR. KORN:  Objection.  Are you --
4    I'm sorry.
5  BY MR. PATE:
6    Q.   I'm just talking about what the
7  words say.
8         MR. KORN:  Right, but you read
9         words from 4.4 suggesting that they were
10        in 4.5.
11        MR. PATE:  No, I was reading words
12        from 4.4 suggesting they were in 4.4.
13        THE WITNESS:  I think that you need
14        to look at provision 9.16.
15 BY MR. PATE:
16   Q.   Okay.  Any other provisions you'd
17 like me to look at?
18   A.   4.4 and 9.16.
19        Okay.  The fact that something is
20 in one section or another is not supposed to
21 infect the interpretation of this agreement.
22 And 4.4 is very clear that notwithstanding any
23 other provision in the agreement, we're
24 preserving for Liberty the subrogation rights
25 that it needs, if it pays a claim, I guess.