Case 2:10-md-02179-CJB-DPC   Document 12440-34   Filed 03/03/14   Page 1 of 3

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## FORM 10-K

(Mark one)

☒ ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2013

OR

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from _____ to _____.

Commission file number 000-53533

## TRANSOCEAN LTD.
(Exact name of registrant as specified in its charter)



| Zug, Switzerland | 98-0599916 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| 10 Chemin de Blandonnet<br>Vernier, Switzerland | 1214 |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code: +41 (22) 930-9000

Securities registered pursuant to Section 12(b) of the Act:

| Title of class | Exchange on which registered |
|---|---|
| Shares, par value CHF 15.00 per share | New York Stock Exchange<br>SIX Swiss Exchange |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark whether the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☒   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Exchange Act.   Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).   Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☒    Accelerated filer ☐    Non-accelerated filer (do not check if a smaller reporting company) ☐    Smaller reporting company ☐

Indicate by check mark whether the registrant is a shell company (as defined by Rule 12b-2 of the Exchange Act).  Yes ☐   No ☒

As of June 30, 2013, 360,244,947 shares were outstanding and the aggregate market value of shares held by non-affiliates was approximately $17.3 billion (based on the reported closing market price of the shares of Transocean Ltd. on June 28, 2013 of $47.95 and assuming that all directors and executive officers of the Company are "affiliates," although the Company does not acknowledge that any such person is actually an "affiliate" within the meaning of the federal securities laws). As of February 18, 2014, 361,024,286 shares were outstanding.

## DOCUMENTS INCORPORATED BY REFERENCE

Portions of the registrant's definitive Proxy Statement to be filed with the U.S. Securities and Exchange Commission within 120 days of December 31, 2013, for its 2014 annual general meeting of shareholders, are incorporated by reference into Part III of this Form 10-K.

Case 2:10-md-02179-CJB-DPC   Document 12440-34   Filed 03/03/14   Page 3 of 3

We believe that additional insured coverage for BP, Anadarko or MOEX under the $250 million fifth layer of our insurance program is limited to the scope of our indemnification of BP under the drilling contract. While we cannot predict the outcome of the matter before the Texas Supreme Court or the outcome of any subsequent proceedings in the Fifth Circuit, we do not expect them to have a material adverse effect on our consolidated statement of financial position, results of operations or cash flows.

On June 17, 2011 and July 31, 2012, our first layer and second layer of excess insurers, respectively, each representing $150 million of insurance coverage, filed interpleader actions. On February 14, 2013, the third and fourth layers, each representing $200 million of insurance coverage, filed interpleader actions substantially similar to the prior filings. The insurers contend that they face multiple, and potentially competing, claims to the relevant insurance proceeds. In these actions, the insurers effectively ask the court to manage disbursement of the funds to the alleged claimants, as appropriate, and discharge the insurers of any additional liability. The parties to the first and second excess insurer interpleader actions have executed protocol agreements to facilitate the reimbursement and funding of settlements of personal injury and fatality claims of our crew and vendors (collectively, "crew claims") using insurance funds and claims were submitted to the court for review. Following the court's determination and approval of the amounts to be paid by the insurers with respect to the crew claims submitted by the parties to date, the first layer of excess insurers made reimbursement payments to the parties for crew claims during the year ended December 31, 2013. Parties to the third and fourth excess insurer interpleader actions have agreed to adjourn the deadline for responses to the pleadings to an unspecified date that will follow a decision in another action that pertains to our insurance.

**Contractual indemnity**—Under our drilling contract for *Deepwater Horizon*, the operator has agreed, among other things, to assume full responsibility for and defend, release and indemnify us from any loss, expense, claim, fine, penalty or liability for pollution or contamination, including control and removal thereof, arising out of or connected with operations under the contract other than for pollution or contamination originating on or above the surface of the water from hydrocarbons or other specified substances within the control and possession of the contractor, as to which we agreed to assume responsibility and protect, release and indemnify the operator. Although we do not believe it is applicable to the Macondo well incident, we also agreed to indemnify and defend the operator up to a limit of $15 million for claims for loss or damage to third parties arising from pollution caused by the rig while it is off the drilling location, while the rig is underway or during drive off or drift off of the rig from the drilling location. The operator has also agreed, among other things, (1) to defend, release and indemnify us against loss or damage to the reservoir, and loss of property rights to oil, gas and minerals below the surface of the earth and (2) to defend, release and indemnify us and bear the cost of bringing the well under control in the event of a blowout or other loss of control. We agreed to defend, release and indemnify the operator for personal injury and death of our employees, invitees and the employees of our subcontractors while the operator agreed to defend, release and indemnify us for personal injury and death of its employees, invitees and the employees of its other subcontractors, other than us. We have also agreed to defend, release and indemnify the operator for damages to the rig and equipment, including salvage or removal costs.

Although we believe we are entitled to contractual defense and indemnity, the operator has sought to avoid its indemnification obligations. In April 2011, the operator filed a claim seeking a declaration that it is not liable to us in contribution, indemnification, or otherwise. On November 1, 2011, we filed a motion for partial summary judgment, seeking enforcement of the indemnity obligations for pollution and civil fines and penalties contained in the drilling contract with the operator. On January 26, 2012, the court ruled that the drilling contract requires the operator to indemnify us for compensatory damages asserted by third parties against us related to pollution that did not originate on or above the surface of the water, even if the claim is the result of our strict liability, negligence, or gross negligence. The ruling is not currently subject to appeal, but may be appealed once a final judgment in the case is rendered. The court also held that the operator does not owe us indemnity to the extent that we are held liable for civil penalties under the CWA or for punitive damages, and we have since agreed with the DOJ that we will not seek indemnity or reimbursement of our Consent Decree payments from the operator or the other non-insurer defendants named in the complaint by the U.S. The court deferred ruling on the operator's argument that we committed a core breach of the drilling contract or otherwise materially increased the operator's risk or prejudiced its rights so as to vitiate the operator's indemnity obligations. Our motion for partial summary judgment and the court's ruling did not address the issue of contractual indemnity for criminal fines and penalties. The law generally considers contractual indemnity for criminal fines and penalties to be against public policy. Our motion did not ask the court to rule on the validity of BP's agreement in the drilling contract to release us from any claims asserted by BP itself. Some courts have held that such agreements will not be enforced if the defendant is found to be grossly negligent. In May 2013, we filed a motion for partial summary judgment seeking to enforce BP's agreement to release claims made by BP itself. The MDL Court has not yet ruled on this motion.