UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section: J |
| | : | |
| This Document Applies to: | : | The Hon. Carl J. Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | The Hon. Sally Shushan |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

REPLY OF THE SPECIAL MASTER
TO MOTION TO DISMISS OF COASTAL CLAIMS GROUP, LLC
TO MOTION FOR RETURN OF PAYMENTS MADE TO CASEY C. THONN AND OTHERS

COMES NOW Special Master Louis J. Freeh, and respectfully submits his Reply to the Motion to Dismiss of Coastal Claims Group, LLC (Doc. No. 12423) ("Response"), submitted in response to the Motion of the Special Master for Return of Payments Made to Casey C. Thonn and Others (Doc. No. 12107) ("Motion").

Coastal Claims Group, LLC ("CCG") provides law firms with investigation and expert financial analysis for clients filing claims with the Court Supervised Settlement Program ("CSSP").   CCG is compensated "following settlement of the claim" and after the law firm's "receipt of settlement funds on said claim from the [CSSP] or other third party."  Under such an agreement, CCG received $14,290.10 from Andry Lerner LLC for work on Thonn's claims.  Indeed, Thonn's CSSP payments included reimbursements of $1,677.22 for CCG's accounting services.

For the reasons stated herein, the payments CCG received from Andry Lerner and the CSSP for the Thonn claim are subject to recoupment if the underlying judgment is voided as a result of fraudulent conduct, even if CCG did not have knowledge of or participate in the fraud.  Accordingly, the Special Master's Motion should be granted.

A. *<u>Analysis</u>*

1.     <u>The Special Master's Motion States a Valid Claim</u>.

CCG writes that the Special Master's Motion does not state a valid claim because restitution is not a separate cause of action.  Response at 16.  Further, CCG states that the Special Master has not alleged conduct that would support a claim for restitution, which CCG states are limited to "crime, civil fraud, unjust enrichment, and payment of a thing not owed."  *Id.* at 16-17.  CCG also states that there is no basis for requiring a third party to pay restitution, and that the Special Master seeks to recover more money than the DHECC paid to Thonn and the professionals who assisted him.  This position should be rejected.

First, pursuant to the Court's Order of September 6, 2013, the Special Master initiated clawback proceedings against Thonn for claims paid by the DHECC but later found to be supported by false information and documents.  Thonn's claims were filed with the DHECC under the terms of the Deepwater Horizon Economic and Property Damages Settlement Agreement, as amended on May 2, 2012 (the "Settlement Agreement"), which provides that disputes arising out of or related to the interpretation, enforcement, or implementation of the Settlement Agreement shall be made by motion to the Court.  Settlement Agreement at ¶ 18.1.  The Special Master's Motion to clawback fraudulent payments and enforce the Settlement Agreement is appropriate, and there is no need for a separate cause of action against CCG.

Second, payment of restitution is not limited to entities that engaged in fraudulent conduct or are directly paid by the DHECC.  *See, e.g.*, *Berger v. Dixon & Snow, P.C.*, 868 P.2d 1149, 1153 (Colo. Ct. App. 1993) ("A claim for equitable restitution does not depend upon a breach of substantive duty in tort or contract; restoration of a benefit may be ordered

without a finding of fault or misconduct.").  For example, attorney's fees paid by

contingency fee arrangements may be required to be repaid as restitution where a

judgment is reversed or vacated.  *See Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996).

The Eighth Circuit explained that "[a]lthough we agree that the law of restitution generally

will not require an attorney to repay legal fees paid by a client from a judgment that is

subsequently reversed on appeal, restitution by the attorney is appropriate where such a

payment is made pursuant to a contingent fee."  *Id.*

This same principle of restitution applies where an entity provides services to

support a claim pursuant to a contingency fee agreement.  Restitution in such cases is

addressed under Comment K to Section 74 of the Restatement (First) of Restitution:

> After the reversal of a judgment any person who, although not a party to the
> action, was a real party in interest and who received payment in whole or in
> part as the beneficial owner or as one of several owners, is under a duty to
> restore the amount received by him.

*Id.*; *see also Excel Corp. v. Jimenez*, 7 P.3d 1118, 1125-27 (Kan. 2000).

The contingent fee is the relevant factor, as the fee is "dependent on success; the

attorney assumes, along with the client, the inherent risks of litigation."  *Mohamed,* 91 F.3d

at 1126-27.  An entity paid by contingent fee, while not a party to the case, is a real party in

interest who receives payment as a beneficial owner of the judgment and is under a duty to

restore the amount received if the award is reversed, unsuccessful on appeal or later found

to have been procured by fraud.  *See, e.g., Lowe v. Experian*, 328 F. Supp. 2d 1122, 1129 (D.

Kan. 2004) (contingency fee agreement gives attorney a beneficial interest in the final

award); *Abrahami v. U.P.C. Constr. Co,* 248 A.D.2d 272, 272-73 (N.Y. App. Div. 1st Dep't

1998) (where investors lost on appeal, requiring investors' lawyers to make restitution of

contingent fee funds excluding prior distributions to plaintiffs and disbursements to third parties for client debts).

Here, the agreement between CCG and Andry Lerner was a contingent fee agreement, where payment for CCG's accounting support was contingent upon the success of Thonn's DHECC claims and dependent upon a monetary recovery by Thonn.  The American Institute of Certified Public Accountants defines a "contingent fee" as:

> [A] fee established for the performance of any service pursuant to an arrangement in which no fee will be charged unless a specified finding or result is attained, or in which the amount of the fee is otherwise dependent upon the finding or result of such service.

AICPA Code of Professional Conduct § 302.  The agreement between Andry Lerner and CCG, and the timing of payments made to CCG, both demonstrate that CCG performed its work on the Thonn claims on a contingent fee basis.

The compensation section of the agreement between CCG and Andry Lerner states:

> Qualifying files – for all files deemed by CCG to qualify as compensable under the terms of the Court Approved Settlement Agreement, upon receipt of a completed claim package from CCG *and following settlement of the claim*, [Andry Lerner] will issue payment of said invoices payable by [Andry Lerner] to CCG *within 15 days of [Andry Lerner's] receipt of settlement funds* on said claims from the CSCP or other third party.  Any invoice amounts that are not directly paid by the CSCP will be considered as an expert fee and added as an expense to the claim.

Response at Ex. 2 (emphasis added).  For qualifying claims, the agreement makes no provision for payment of CCG's invoices unless the DHECC pays the claimant.  In fact, the agreement provides that Andry Lerner is only responsible for paying CCG from its own funds where a qualifying claimant decides to "opt-out" of the settlement.  *See id.*

For the Thonn claims, Andry Lerner and CCG's conduct was consistent with the fee agreement.  On June 19, 2012, CCG provided Andry Lerner with a completed claim package

for Thonn's seafood claims.  Response at Ex. 4.  As part of the package, CCG provided Andry Lerner an invoice for $20,182.50.  *Id.* at Ex. 3.  On June 24, 2012, Andry Lerner submitted CCG's claim package to the DHECC in support of Thonn's claims, along with a Sworn Written Statement for Claimant Accounting Support (SWS-38) signed by a CCG principal.

CCG was not paid for work on Thonn's claims until the claims were paid by the DHECC.  On February 28, 2013, eight months after CCG had finished its work, the DHECC issued a payment on Claim 19690, including $515.97 in reimbursement for CCG's accounting services.  Less than two weeks later, CCG received its first payment for work on Thonn's claims.  *See* Response at Ex. 5.  On April 29, 2013, ten months after CCG had worked on the Thonn claims, the DHECC issued a payment on Claim 19691, including $1,161.25 in reimbursement for CCG's accounting services.  CCG received its second payment the next month.  *Id.*

The provisions of the fee agreement, and the course of conduct by Andry Lerner and CCG, demonstrate that CCG agreed to payment for its services contingent upon the success of Thonn's DHECC claims.  The fee agreement's "contingency," however, never should have been triggered, as Thonn was not entitled to the money that the DHECC paid him.  The fee agreement's "contingency" thus should not have vested.  Therefore, if Thonn's claims are voided, CCG must return the $14,290.10 it received from Andry Lerner for these claims.

CCG cites *Soileau v. ABC Insurance Co.*, 844 So. 2d 108, 110-11 (La. App. 3d Cir. 2003), a case involving alleged violations of Louisiana Civil Code Articles 2298 and 2299, to support the position that the DHECC has no right to restitution from CCG.  CCG explains that "the Special Master cannot show that CCG was paid with the money given to Thonn from

the DHECC" because "the money paid by the DHECC to Thonn lost its identity once deposited into a bank."  Response at 22.[1]

There is no requirement under the law of restitution, however, that limits the return of money to only that which can be traced to a specific bank account.  *See SEC v. Contorinis*, 2014 U.S. App. LEXIS 2927 at *13 & n.3 (2d Cir. Feb. 18, 2014) ("disgorgement is required whether the insider trader has put his profits into a bank account, dissipated them on transient pleasures, or given them away to others"); *SEC v. Banner Fund Int'l*, 211 F.3d 602, 617 (D.C. Cir. 2000) ("disgorgement is an equitable obligation to return a sum equal to the amount wrongfully obtained, rather than a requirement to replevy a specific asset").

Lastly, no windfall is sought here.  The full sum of payments to Thonn – $357,002.35 plus interest and costs – is sought from the various parties who benefitted from the payments.  No more than was paid out by the DHECC is being sought or will be collected, but the rules of joint and several liability may allow for overlapping judgments so that the DHECC can be made whole.  All parties making restitution will be credited for amounts paid by other parties.

2.    CCG is Subject to the Court's Jurisdiction.

CCG states it is not subject to the Court's jurisdiction because CCG is not a party, counsel, or economic class member as defined by the Settlement Agreement.  *See* Response at 10.  CCG states its "only involvement in this matter is the Special Master's addition of

---

[1] As stated in the Special Master's notes to CCG, CCG is free to seek a recovery of contribution from Thonn for work performed on Thonn's claim and any money returned to the DHECC.  Thonn committed a fraud upon the DHECC, and used CCG's accounting services to advance this fraud.  CCG may have legal claims against Thonn under these facts.  That said, CCG is *not* entitled to fees on its contingent fee contract with Andry Lerner, as the contingency in that contract would never have occurred but for Thonn's fraud.

them in a motion filed in litigation to which they are not a party." *Id.* at 6.  The Settlement

Agreement and CCG's own filings do not support this position.

        a.    <u>CCG is Subject to Jurisdiction under the Settlement Agreement</u>.

As CCG explains, the entity was formed "for the sole purpose of assisting attorneys

and law firms in calculating the economic losses of individuals covered by the Settlement

Agreement reached between BP and the plaintiffs in this litigation."  Response at 2-3.  The

Settlement Program and its claims procedures are subject to the ongoing supervision of the

Court.  Settlement Agreement at ¶ 4.4.7.  Presently, CCG "has received a total of 1,982

claims, of which 628 have been evaluated and 114 are currently open and being

processed."  Response at 3.  For each claim filed in the Court-supervised program, CCG has

submitted a DHECC form SWS-38 that bears the following certification:

> I verify to the best of my knowledge that I have submitted information
> provided to me by the claimant and prepared documentation on a consistent
> basis and I have not ignored the implications of information known or
> reasonably suspected to be untrue, incomplete, inconsistent, or inaccurate.
>       . . . .
> I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section
> 1746 that all the information I have provided in this Statement (and in any
> pages I have attached to or submitted with this Statement to provide
> additional information requested in this Statement) is true and accurate to
> the best of my knowledge. . . .

Motion at Ex. B at 14.

The Settlement Agreement provides that firms such as CCG providing accounting

services "must verify that to the best of their knowledge they have submitted information

provided to them by the claimant on a consistent basis and have not ignored the

implications of information known or reasonably suspected to be untrue, incomplete,

inconsistent or inaccurate."  Settlement Agreement at ¶ 4.4.13.4.  The DHECC has the right

to request and review work papers or other supporting documentation related to the

accounting services, which are to be provided and supervised only by certain qualified accounting professionals.  *Id*. at ¶¶ 4.4.13.3, 4.4.13.10.  These provisions are intended to maintain integrity in the Court-supervised process, and only firms following these provisions are entitled to reimbursement of certain reasonable accounting fees from BP.  *Id*. at ¶ 4.4.13.1.  The DHECC provided reimbursements for the accounting services provided by CCG, including reimbursement in Thonn's claims of $1,677.22.

Based on CCG's participation in and benefit from the claims process, CCG has brought itself within the Court's jurisdiction under the Settlement Agreement, which provides for ongoing oversight of the settlement program by the Court.  *See* Settlement Agreement at ¶ 18.1.  The oversight is not limited to the claimants and their counsel, as CCG suggests, but includes supervision "over the administration and enforcement of the Agreement and the distribution of its benefits to Economic Class Members."  *Id*.

Jurisdiction over CCG under the Settlement Agreement thus is appropriate.

   b. <u>CCG is Subject to Jurisdiction as a Nominal or Relief Defendant</u>.

CCG relies upon *SEC v. Ross*, 504 F.3d 1130 (9th Cir. 2007), to support its position that the Court cannot obtain jurisdiction over CCG absent the filing of a formal complaint.  *See* Response at 8.  In *Ross*, the Ninth Circuit held that a court-appointed receiver seeking disgorgement of illegal profits must commence legal actions naming as defendants all those who allegedly profited because of their *own* wrongdoing so as to satisfy due process.  *Ross,* 504 F.3d at 1144-45.  The holding of *Ross* does not apply to the facts in this case.

Here, the Special Master's Motion seeks the return of payments received by CCG, not as a result of wrongdoing by CCG but because Thonn's claim never should have been paid and CCG's contingent interest in Thonn's claim never should have vested.  Thus, if Thonn's

claim is voided by the Court, CCG's interest in the fee received from the voided claim also must be voided. *See Ross*, 504 F.3d at 1144 (explaining that a disgorgement motion, as opposed to a complaint, is permissible where "the purpose is simply to 'obtain equitable relief from a non-party *against whom no wrongdoing is alleged*'" where "'it is established that the non-party possesses illegally obtained profits but *has no legitimate claim to them.*'").

This issue is guided by cases where courts have ordered a "relief" or "nominal" defendant who has received ill-gotten funds through no improper act of his own and who has no legitimate claim to the funds to make an equitable return of the funds. *See Janvey v Adams,* 588 F.3d 831, 834 (5th Cir. 2009) (relief defendant "can be joined to aid the recovery of relief without an additional assertion of subject matter jurisdiction only because he has no ownership interest in the property which is the subject of litigation.").

In *Janvey*, the Court held that relief defendants could not be joined because the receiver had failed to establish that the defendants lacked an ownership interest or legitimate claim to the funds. *Id.* at 834-35; *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998) (upholding an injunction against a "relief defendant" not accused of wrongdoing, and freezing proceeds from an improper stock sale for possible later disgorgement, as the defendant did not have a "legitimate claim" to the funds because the defendant's husband had received the funds as a gift without consideration and the defendant stood in her husband's shoes). Here, unlike in *Janvey*, CCG has a contingency interest only in claims that should never have vested in the first place because of Thonn's fraud in his submission of them. Therefore, unlike the relief defendants in *Janvey*, CCG has no legitimate claim to any

funds obtained for work on the Thonn case, and it is clear CCG lacks an ownership interest or legitimate claim to the funds.

Accordingly, the procedures employed by the Special Master, in seeking the return of funds to which CCG has no legitimate ownership interest, are proper for the Court to exercise jurisdiction over CCG.

3.     The Special Master Seeks Appropriate Remedies.

CCG suggests that the Special Master brought its Motion for improper purposes, and threatened CCG concerning its response to the Motion.  CCG's position is incorrect.

The Special Master explained to CCG's counsel that it was important for CCG to take steps to assure that the DHECC could rely on CCG's filings because issues similar to those in Thonn's claim, where the income tax returns relied upon by CCG had never been filed with the Internal Revenue Service, have come up in other claims filed by Andry Lerner with accounting support from CCG.  *See* Response at Ex. 12.  In fact, Andry Lerner recently withdrew as counsel in a claim by another DHECC claimant where Andry Lerner learned that the claimant had not filed the tax returns relied upon in his claim prepared by CCG.

A responsible entity finding that its services had been misused by claimants intending to commit a fraud upon the DHECC would take reasonable steps to respond appropriately to the misconduct and prevent further similar misconduct, including by making any necessary modifications to the entity's controls for evaluating the implications of information known or reasonably suspected to be untrue, incomplete, inconsistent or inaccurate.  *See* Settlement Agreement at ¶ 4.4.13.4; U.S. Organizational Sentencing Guidelines § 8B2.1(b)(7).  A responsible entity also would consider making voluntary restitution and other forms of remediation to remedy the harm resulting from the

misconduct.  *Id.* at Application Note 7.  CCG has not taken any of these steps, and contests the responsibility of accounting service providers for integrity issues in filed claims.

The integrity of the CSSP process expects more accountability from entities seeking to file claims on behalf of clients.  Simple and low-cost steps can be taken to ensure claim integrity and accuracy.

4.   <u>CCG's Claims for Insufficient Process and Service of Process Fail</u>.

CCG also states that it was provided insufficient process because it was not served with a copy of a Complaint and a Summons.  As explained above, no such Complaint has been filed, and the Settlement Agreement, along with the circumstances of this particular case, does not require such a procedure.

On January 16, 2014, the U.S. Marshals Service served CCG's registered agent with a copy of the Special Master's Motion.  CCG has had an opportunity to contest the Motion. CCG has received the benefit of due process, and its objection should be denied.

**B. *<u>Conclusion</u>***

For the reasons stated in the Special Master's filings, the Court should enter a judgment requiring Coastal Claims Group, LLC to make restitution to the DHECC for $14,290.10, representing the accounting support fees collected by CCG under its contingency fee agreement for Thonn's fraudulent seafood claims before the DHECC.

Respectfully submitted,


_____/s/ Louis J. Freeh_____
Louis J. Freeh
Special Master


Dated:  March 6, 2014

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL No. 2179, as well as by e-mail upon the following, this __6th__ day of ___March___, 2014:

> Anthony Staines
> Jason R. Kenney
> Staines & Eppling
> 3500 North Causeway Blvd., Suite 820
> Metairie, Louisiana 70002


> __/s/Louis J. Freeh_____
> Louis J. Freeh