UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * | MDL NO. 2179<br>SECTION J |
| | * * | JUDGE BARBIER |
| | * | MAG. JUDGE SUSHAN |
| **THIS DOCUMENT APPLIES TO: No. 12-00311** | * * | **JURY TRIAL DEMANDED** |

**LIU's REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON CAMERON'S TEXAS INSURANCE CODE CLAIMS**[1]

LIU's Motion asks the Court to decide two legal issues: (1) whether Cameron's claim under Chapter 541 of the Texas Insurance Code fails because Cameron cannot show an injury independent of LIU's alleged breach of contract; and (2) whether Cameron's claim under Chapter 542 of the Texas Insurance Code fails because the LIU Policy does not cover Cameron's MDL defense costs. Cameron responded with a self-serving and inaccurate rendition of the facts surrounding Cameron's insurance claim and eventual settlement with BP. While LIU disputes Cameron's "facts," for purposes of this Motion they are completely irrelevant. Cameron's legal arguments also miss their mark by ignoring controlling law in LIU's favor and the clear Policy language:

- Cameron claims that a 25-year-old Texas case relieves it of the need to show "independent injury" or, alternatively, its attorney fees in this suit constitute such injury. Under controlling Fifth Circuit precedent, the "independent injury" requirement is alive and well, contrary to Cameron's assertion. And, Cameron's attorney fees in this suit are not "damages" caused by LIU's statutory violation, as opposed to the alleged contractual breach. Cameron's Chapter 541 claim accordingly fails.

- Cameron agrees it has no claim under Chapter 542 unless LIU's Policy covers its MDL defense costs. Relying on extrinsic evidence, Cameron proposes a strained interpretation that ignores the clear and unambiguous Policy language. Considering *only* the clear

[1] *See* Rec. Doc. No. 12138 (ordering LIU's Reply to be filed).

Policy language, as the Court must, LIU does not cover Cameron's defense costs, and thus Cameron's Chapter 542 claim fails.

Accordingly, the Court should dismiss Cameron's Texas Insurance Code claims.

## I. ARGUMENT AND AUTHORITIES

### A. Cameron's Chapter 541 Claim Fails.

#### 1. *Under Controlling Fifth Circuit Precedent, Cameron Must Prove an Independent Injury.*

Relying on a 25-year-old case, *Vail v. Texas Farm Bureau Mutual Insurance Co.*, 754 S.W.2d 129 (Tex. 1988), Cameron contends that it need not prove an injury independent of its contract damages to prevail on its Chapter 541 claim. The Fifth Circuit rejected an identical argument, and this Court should do the same. In *Great American Insurance Co. v. AFS/IBEX Financial Services, Inc.*, 612 F.3d 800, 808 (5th Cir. 2010), the insured argued, like Cameron, that *Vail* was "binding authority" that "policy benefits wrongfully withheld are the proper minimum measure of damages for an carrier's unfair refusal to pay an insured's claim."[2] The Fifth Circuit disagreed:

> AFS argues that it did not need to prove a separate injury in order to maintain its extra-contractual claims. It argues that GAIC's denial of insurance proceeds, standing alone, entitled it to recover on its extra-contractual claims. ***This assertion does not comport with this court's case law.***[3]

Cameron dismisses *Great American* as "non-binding dicta," but this characterization does not survive scrutiny. The Court's reasoning was essential to its decision to remand to determine whether evidence of "independent injury" existed, and thus it binds this Court.[4] *Great American* followed *Parkans International LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002), where the Fifth Circuit applied the rule that "[t]here can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits." Finding no proof

---

[2] Reply Brief of AFS/IBEX Financial Services, Inc., 2009 WL 7216888, at **1-4, attached as Exh. I.

[3] *Great Am. Ins. Co.*, 612 F.3d at 808 n.1 (emphasis added).

[4] *See, e.g., In Re Soza*, 542 F.3d 1060, 1074 n.20 (5th Cir. 2008) (distinguishing between "simple dicta" and statements "essential to the holding of the case").

of "tort injuries independent of the contract damages[,]" the *Parkans* court rendered judgment as a matter of law for the insurer.[5]

As *Great American* and *Parkans* establish, the "independent injury" rule is controlling law in the Fifth Circuit. Nevertheless, Cameron contends incorrectly that proof of independent injury is *only* required where "the insurer does not otherwise have to pay the claim."[6] In *Great American*, 612 F.3d at 803, however, the insurer was cast in judgment for more than $400,000 under the policy and yet the court required proof of separate and independent injury to support the Chapter 541 claim.

Following Great *American* and *Parkans*, federal courts routinely dismiss Chapter 541 claims where there's no independent injury. For example, in *Terry v. Safeco Insurance Co.*, 930 F. Supp. 2d 702, 715 (S.D. Tex. 2013), Judge Lee Rosenthal granted summary judgment for an uninsured motorist insurer where the plaintiffs could not "point[] to any competent evidence showing that they suffered an injury from the alleged § 541.060 violations independent from the allegedly wrongful denial of policy benefits."[7]

The Texas Supreme Court likewise has "retreat[ed] from" *Vail* in the 25 years since it was decided.[8] In *Twin City Fire*, 904 S.W.2d at 665-67, the Texas Supreme Court held that a workers compensation insurer was not liable for punitive damages without proof of tort damages independent of any workers compensation benefits wrongfully withheld. Undercutting Cameron's contention that *Twin City Fire* is limited to the workers compensation context, the dissenting Justice observed that "[t]he majority's decision *cannot be justified on the basis of the*

---

[5] *Id.* at 519.

[6] Rec. Doc. No. 12342, at p. 7.

[7] *See also Tracy v. Chubb Lloyds Ins. Co.*, No. 12- 042, 2012 WL 2477706, at **5-6 (N.D. Tex. 2012) (dismissing Texas Insurance Code claims where "all of the damages . . . in [plaintiffs'] complaint [were] breach of contract damages" and "[p]laintiffs d[id] not mention any item of damage independently related to any of their extra-contractual claims"); *Powell Elec. Sys., Inc. v. Nat'l Union Fire Ins. Co.*, No. H-10-993, 2011 WL 3813278, at *9 (S.D. Tex. 2011) (summary judgment for insurer dismissing Texas Insurance Code claims where insured failed to show independent injury); *Admiral Ins. Co. v. Petron Energy, Inc.*, No. 3:11-CV-02524-M, 2013 WL 5910880, at *13 (N.D. Tex. 2013) (denying insured's summary judgment motion on Texas Insurance Code claims because of insufficient proof of independent injury).

[8] *Twin City Fire Insurance Co. v. Davis*, 904 S.W.2d 663, 667 (Tex. 1995) (Spector, J., dissenting).

*exclusivity provision in the Workers' Compensation Act*."[9] Again, in *Provident American Insurance Co. v. Castaneda*, 988 S.W.2d 189, 198-99 (Tex. 1998), the Texas Supreme Court denied a Texas Insurance Code claim where the insurer's conduct did not cause "injury independent of the denial of policy benefits[.]"

Departing from *Vail* in favor of these more recent authorities, Texas appellate courts also have dismissed extra-contractual claims where no independent injury is shown. In *DaimlerChrysler Insurance Co. v. Apple*, 265 S.W.3d 52, 69-70 (Tex. App.—Houston [1st Dist.] 2008, rehearing overruled), for example, the court reversed an extra-contractual damages award under Chapter 541 because the insured "did not seek damages independent of the policy benefits sought under its breach of contract claim and it sought only to obtain the benefits of the policy it had with [the insurer]." Notably, and contrary to Cameron's argument, the insured had no extra-contractual claim despite the insured's recovery of contract damages.[10]

Under Fifth Circuit precedent and Texas law, Cameron *must* prove an injury independent of its purported contract damages.[11]

2. ***Cameron's Attorney Fees in this Suit Are Not an Independent Injury.***

Cameron concedes that its defense expenses in the Oil Spill MDL were not caused by LIU's alleged misconduct and cannot comprise the required independent injury.[12] Thus, Cameron's only possible claim relates to its attorney fees in *this suit*. But, these fees are

[9] *Id.* at 667 (Spector, J., dissenting) (emphasis added).

[10] *See id.*; *see also United Servs. Auto. Ass'n v. Gordon*, 103 S.W.3d 436, 442 (Tex.-App. – San Antonio 2002, rehearing overruled); *MacIntire v. Armed Forces Benefit Ass'n*, 27 S.W.3d 85, 92 (Tex. App. – San Antonio 2000) (insurer not liable under Texas Insurance Code because "[n]o injury is shown beyond 'the injury that would always occur when an insured is not promptly paid [her] demand'"). Cameron cites to other Texas cases that purportedly award damages under Chapter 541 "measured by policy limits." Rec. Doc. No. 12342, at pp. 8-9. Some of these predate the Texas Supreme Court's latest pronouncement in *Castaneda*. And, none of these cases cites *Vail* for the proposition that policy proceeds constitute actual damages. Moreover, *Hyman*, 2006 WL 694014, at *8, confirms that "a number of courts, including this Court, have stated that the mere breach of an insurance contract does not give rise to liability under the Insurance Code[.]"

[11] Cameron cannot avoid this binding precedent by citing to an insurance treatise edited by LIU's counsel. The treatise is a secondary source and does not bind the Court. *See, e.g., Rodriguez v. C.I.R.*, 722 F.3d 306 (5th Cir. 2013) ("Appellants' reliance on various non-binding secondary sources does not alter our analysis here because the sources cited are in each instance either non-binding or inapposite."). Moreover, the treatise is inconsistent with controlling law.

[12] Rec. Doc. No. 12342, at p. 10, n.6.

not an independent injury. And Cameron has not identified – and cannot identify -- a single case supporting its argument that they are. Cameron relies on *Northwinds Abatement, Inc. v. Employers Insurance of Wausau*, 258 F.3d 345 (5th Cir. 2001), but this decision supports LIU's position. In *Northwinds*, the insurer's statutory violation caused actual damages consisting of attorney fees incurred in a *different lawsuit*. Significantly, although the *Northwinds* court awarded the insured attorney fees of $712,000 in the present suit under Texas Insurance Code § 541.152(a)(1),[13] these fees were *not* awarded as "actual damages" and were not included in the treble damages award.[14]

To the contrary, Texas law makes clear that "the complained of actions or omissions [must] cause injury independent of the injury resulting from a wrongful denial of policy benefits."[15] Cameron's attorney fees here are simply a cost of pursuing a contract claim against LIU and did not result from any alleged misconduct distinct from the underlying contractual dispute.[16] Indeed, Cameron's argument turns Texas law on its head. Under Cameron's theory, an insured could recover extra-contractual damages every time it prevailed on a breach of contract claim. As demonstrated above, that is the opposite of Texas law.

Moreover, Chapter 541 provides a remedy only where the insurer's violation causes "actual damages." As the Fifth Circuit recently confirmed, attorney fees simply are not "damages" under settled Texas law.[17] Indeed, Texas Insurance Code § 541.152(a)(1) separates

---

[13] As part of its Original Complaint alleging only a breach of contract claim, Cameron sought to recover attorney fees. *See* Case No. 12-311, Rec. Doc. No. 1 at p. 20 (seeking "reasonable attorney's fees as provided by law").

[14] *Id.* at 349, 353-55. *SnyderGeneral Corp. v. Century Indem. Co.*, 907 F. Supp. 991 (N.D. Tex. 1995), cited by Cameron, concerned fees incurred in "inquiring into the status" of an insurance claim, and not litigation fees. Moreover, the court did not hold that such fees were an "independent injury," but only found a fact issue precluding summary judgment.

[15] *United Servs. Auto. Ass'n*, 103 S.W.3d at 442.

[16] *See, e.g., MacIntire*, 27 S.W.3d at 92 (insurer not liable under Texas Insurance Code because "[n]o injury is shown beyond 'the injury that would always occur when an insured is not promptly paid [her] demand'").

[17] *Richardson v. Wells Fargo Bank*, 740 F.3d 1035, 1038 (5th Cir. 2014); *In re Nalle Plastics Family Ltd P'ship*, 406 S.W.3d 168, 173 (Tex. 2013) ("While attorney's fees for the prosecution or defense of a claim may be compensatory in that they help make a claimant whole, they are not, and have never been, damages.").



943911_2

recovery of "attorney's fees" and "actual damages[.]" If attorney fees could be actual damages, the statute's separate listing of these items would be meaningless.[18]

Thus, Cameron's attorney fees in this matter are not an "independent injury" under Chapter 541.

**B. Cameron's Chapter 542 Claim Fails.**

Cameron concedes that it cannot prevail on its Chapter 542 claim unless the LIU Policy covers Cameron's MDL defense expenses. Because the Policy does not cover these expenses, the claim must be dismissed.

***1. The LIU Policy Does Not Cover Cameron's MDL Defense Expenses.***

Under Texas law, a liability insurer owes two distinct duties: defense and indemnity.[19] Thus, any coverage for Cameron's defense expenses must originate in one of these two sources. The parties agree that the terms of the LIU Policy control where its "definitions, terms, conditions and exclusions" differ from the underlying INIC Policy.[20] Cameron agrees that the LIU Policy "disclaims a duty to defend."[21] This leaves only the duty to indemnify.

As with the duty to defend, the LIU Policy contains its own different terms concerning the duty to indemnify and these terms control. Specifically, the Policy limits LIU's indemnity obligation to covered "loss" defined as "those sums which [the insured is] legally obligated to pay *as damages*, after making proper deductions for all recoveries and salvage[.]"[22] Cameron apparently now concedes that its attorney fees are not "damages" and are not covered "loss" under the LIU Policy. This should end the inquiry.

---

[18] *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000) (statute should be interpreted to give effect to all terms and "not treat any statutory language as surplusage[.]").

[19] *See Gilbane Building Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011) ("Under Texas law, an insurer may have two responsibilities relating to coverage—the duty to defend and the duty to indemnify.") (citing *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740,743 (Tex. 2009)); *N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 559 (5th Cir. 2008) ("Liability insurance policies often have two components: defense and indemnity.").

[20] Exh. A to LIU's Memo., at LIU 1498; Rec. Doc. No. 12342, at p. 13.

[21] Rec. Doc. No. 12342, at p. 15; Exh. A to LIU's Memo., at LIU 1499.

[22] Exh. A to LIU's Memo., at LIU 01499 (emphasis added).

Reaching to avoid dismissal, Cameron has now invented a purported third duty owed by liability insurers – a "separate covenant . . . to pay court costs and attorneys' fees" that is "separate and distinct" from the duties to defend and to indemnify.[23] Citing the "Limits of Insurance" section of the INIC Policy, Cameron claims that INIC assumed a duty to pay "Defense Expenses" in addition to the policy limits. The LIU Policy is "silent" concerning this third duty, Cameron contends, and thus the LIU Policy follows form to the INIC Policy and LIU also owes defense expenses in addition to the policy limits.

Cameron is wrong for several reasons. First, the LIU Policy is not silent. It expressly provides there is no obligation to pay beyond the Policy limits. The Policy states that the most LIU will pay for "loss resulting from a single occurrence is the Policy's $50 million limit.[24] Thus, the INIC Policy provisions are not applicable.

Second, Cameron has not cited a single case in which an insurer owed defense expenses because of a "separate covenant" apart from the familiar duties to defend and indemnify.[25] And the Fifth Circuit is clear that a liability insurer owes only these two duties: "Under Texas law, an insurer may have *two responsibilities* relating to coverage—the duty to defend and the duty to indemnify."[26]

Third, Cameron claims that this supposed third duty originates in Endorsement 29, which amends the INIC Policy's "Limits of Insurance" provisions. Far from creating *new* obligations, the provision only clarifies the scope of INIC's duty to defend. Under Endorsement 29, paragraph H, *if INIC owed a duty to defend Cameron*, "Defense Expenses [would] be in addition to the applicable Limits of Insurance of this policy." Because the LIU Policy "disclaims a duty to defend" and any obligation to pay outside its limit, Endorsement 29's terms related to INIC's defense obligation do not apply to LIU.

---

[23] Rec. Doc. No. 12342, at p. 15.

[24] Exh. A to LIU's Memo., at LIU 01483, 01498.

[25] *Vesta Ins. Co. v. Amoco Prod. Co.*, 986 F.2d 981, 989 (5th Cir. 1993) did not so hold and the statement Cameron relies on is dicta.

[26] *See Gilbane Building Co.*, 664 F.3d at 594 (emphasis added).

Outside of the "Limits of Insurance" provision, the only reference in the INIC Policy to "Defense Expenses" is in the definition of "Loss". Significantly, "Defense Expenses are *not included* as "loss" under the INIC Policy.[27] In any event, because the LIU Policy contains its own definition of "Loss," the Policy does not incorporate the INIC Policy's definition or any associated language relating to Defense Expenses. Even assuming INIC may assumed an obligation to pay "Defense Expenses" beyond its policy limits, any such obligation is inconsistent with LIU's clear Policy terms capping its liability at $50 million.

Under the clear Policy language, LIU did not owe a duty to defend Cameron or to indemnify Cameron for its MDL defense expenses. Because the LIU Policy does not cover these expenses, Cameron's Chapter 542 claim fails.

2. ***Cameron Cannot Alter the Clear Policy Terms With Extrinsic Evidence.***

Ignoring the clear Policy language, Cameron cites witness testimony concerning the meaning of the LIU Policy.[28] Texas law is clear that interpretation of an unambiguous contract is a legal issue[29] and parol or extrinsic evidence "may not be introduced to create an ambiguity or to alter the intent of the parties as expressed in the instrument."[30] Because the Policy is unambiguous, as LIU has shown, Cameron cannot alter the Policy terms or create an ambiguity through extrinsic evidence. The Court must disregard the testimony Cameron has offered and enforce the parties' intent as expressed in the Policy.

Even if the Court considers the testimony, which it should not, it does not support Cameron's Policy interpretation. First, Cameron has cited to testimony from LIU's underwriting personnel, Alan Mandel and Denise Morris. These witnesses are not claims personnel, and

---

[27] "Loss" includes "Defense Expenses" under the INIC Policy only if "the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**." Exh. G to LIU's Memo., at Endorsement 29, ¶ 10. No such designation appears in the Schedule of Retained Limits. *Id.* at Schedule of Retained Limits.

[28] Rec. Doc. No. 12342, at pp. 16.

[29] *See also* T. Black Depo., attached as Exh. J, at 151:24 to 152:2 (filed under seal).

[30] *D.R. Horton-Tex., Ltd. v. Savannah Props. Assoc., L.P.*, 416 S.W.3d 217 (Tex. App. – Fort Worth 2013) (citing *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008)).

determining whether the Policy covers a particular claim is outside of their job responsibilities and experience. As Mr. Mandel testified, "I can't interpret that because I can't interpret the policy. I'm not allowed to as an underwriter. That is a claim issue."[31] LIU's underwriters' testimony interpreting the Policy is thus completely irrelevant. Cameron also offers selected testimony from Jessica Rogin, LIU's Vice President of Casualty Claims. This testimony concerns solely the LIU Policy's defense provision in isolation and did not address other relevant LIU and INIC Policy provisions, such as the Policy's "loss" definition and its "limits" provisions. Nor does the selected testimony address the very INIC Policy provisions to which Cameron claims LIU follows form. Cameron's extrinsic evidence, even if considered, thus does not demonstrate a reasonable alternative interpretation of the Policy.

## II. CONCLUSION

Cameron's Texas Insurance Code claims fail as a matter of law and no creative rendition of the "facts" surrounding Cameron's insurance claim can alter this result. For these reasons, the Court should grant LIU's Motion and dismiss Cameron's Texas Insurance Code claims with prejudice.

Respectfully submitted,

*/s/ Judy Y. Barrasso*

Judy Y. Barrasso, 2814
Celeste Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
504.589.9700 (Telephone)
504.589.9701 (Facsimile)

and

[31] A. Mandel Depo., attached as Exh. K, at 95:13-20, 96:4-6 (I can't form an opinion. I really don't know. I'm not a claim – I don't have the experience to do that.").

Christopher W. Martin, PRO HAC VICE
Federal I.D. 13515
Gary L. Pate, PRO HAC VICE
Federal I.D. 29713
808 Travis, Suite 1800
Houston, Texas 77002
713-632-1700 (Telephone)
713-222-0101 (Facsimile)

Attorneys for Liberty Insurance
Underwriters, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 6th day of March, 2014.

*/s/ Judy Y. Barrasso*