2009 WL 7216888 (C.A.5) (Appellate Brief)
United States Court of Appeals, Fifth Circuit.

GREAT AMERICAN INSURANCE COMPANY, Plaintiff - Appellant - Cross Appellee,
v.
AFS/IBEX FINANCIAL SERVICES INC., Defendant - Appellee - Cross Appellant.

No. 09-10262.
October 30, 2009.

On Appeal from the United States District Court for the Northern Disctrict of Texas Dallas Division

**Reply Brief of Appellee Afs/Ibex Financial Services, Inc.**

Linda M. Dedman, Texas State Bar No. 24007098, Floyd Clardy, III, Texas State Bar No. 04268010, Elizabeth A. Handschuch, Texas State Bar No. 08903950, Dedman & Handschuch, PLLC, 5910 N Central Expressway, Suite 790, Dallas, Texas 75206, Telephone: (214)361.8885, Facsimile: (214)363.4902, Attorneys for Afs/ibex.

**\*i TABLE OF CONTENTS**

| | |
|---|---|
| TABLE OF CONTENTS .................................................................................................................................................. | i |
| TABLE OF AUTHORITIES ............................................................................................................................................. | ii |
| I. REPLY SUPPORTING CROSS APPEAL ISSUE ONE ............................................................................................. | 1 |
| The District Court erred in dismissing AFS/IBEX unfair settlement practices claims-GAIC's unfair settlement practices caused AFS/IBEX' actual damages ...................................................................................................................... | 1 |
| A. Policy Proceeds are Actual Damages as a Matter of Law Under the Facts of This Case ................................... | 1 |
| 1. Vail is binding in this instance ...................................................................................................................................... | 1 |
| 2. The general rule, that there can be no claim for bad faith when an insurer promptly denies an uncovered claim is inapplicable because AFS/IBEX' claim is covered ............................................................................................. | 5 |
| 3. When a carrier's claim handling does not rise to the level of bad faith, policy proceeds are not necessarily damages caused by other misdeeds; but GAIC mishandled AFS/IBEX' claim ..................................... | 8 |
| a. GAIC knew or should have known that its application of the policy's exclusionary phrase was not reasonable ............................................................................................................................................................................ | 10 |
| b. While GAIC claims that its original denials were based on mere disputes about the interpretation of the crime policy's definition of forgery, its application of the definition relied on a factual premise that it knew or should have known was untrue--that Charles O. McMahon, Jr. signed his own name to the checks at issue ........................................................................................................................................................................................ | 12 |
| 4. The evidence shows that had GAIC conducted a reasonable investigation, it would have paid the claim .... | 13 |
| B. GAIC Waived any Challenge to the Jury's Finding that its Failure to Pay the Claim Caused AFS/IBEX' Chase Suit Damages ............................................................................................................................................................. | 15 |

WestlawNext   © 2014 Thomson Reuters. No claim to original U.S. Government Works.         1

**EXHIBIT I**

| | |
|---|---|
| II. REPLY SUPPORTING CROSS APPEAL ISSUE TWO | 16 |
| Does penalty interest under Texas Insurance Code § 542.060 continue to accrue until the insurance carrier complies with its duty to pay a covered claim? | 17 |
| A. GAIC Should Bear the Financial Consequences of Withholding Payment on an Established Claim When Liability is Reasonably Clear | 17 |
| *ii B. GAIC Should Compensate AFS/IBEX for Delaying Payment | 18 |
| CERTIFICATE OF SERVICE | 21 |

## TABLE OF AUTHORITIES

**Cases**

| | |
|---|---|
| *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex. 1988.) | 2, 6 |
| *FDIC v. Laguarta*, 939 F.2d 1231 (5th Cir. 1991) | 9 |
| *Frank C. Bailey Enter., Inc. v. Cargill, Inc.*, 582 F.2d 333 (5th Cir. 1978) | 9 |
| *Gochicoa v. Johnson*, 238 F.3d 278 (5th Cir. 2000) | 5 |
| *In re Cajun Power Coop., Inc.*, 109 F.3d 248 (5th Cir. 1997) | 5 |
| *International Truck and Engine Corp. v. Bray*, 372 F.3d 717 (5th Cir. 2004) | 5 |
| *Johnson v. Sawyer*, 120 F.3d 1307 (5th Cir. 1997) | 9 |
| *Mid-Century Ins. Co. v. Boyte*, 80 S.W.3d 546 (Tex. 2002) | 19, 20 |
| *Parkans International LLC v. Zurich Ins. Co.*, 299 F.3d 514 (5th Cir. 2002) | 4, 5, 6 |
| *Pioneer Chlor Alkali Co., Inc. v. Royal Indent. Co.* 879 S.W.2d 920 (Tex.App.-Hous. [14 Dist.] 1994) | 12 |
| *Provident American Ins. Co. v. Castaneda*, 988 S.W.2d 189 (Tex. 1998) | 3, 4 |
| *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211 (Tex. 2003) | 7 |
| *Republic Insurance Company v. Stoker*, 903 S.W.2d 338 (Tex. 1995) | 6 |
| *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423 (Tex. 2004) | 22 |
| *Stewart Title Guaranty Company v. Aiello*, 941 S.W.2d 68 (Tex. 1997) | 20 |
| Texas Insurance Code § 542.054 | 24 |
| *iii *Texas Mortgage Services Corp. v. Guadalupe Savings & Loan Association*, 761 F.2d 1068 (5th Cir. 1985) | 18 |
| *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663 (Tex. 1995) | 1, 2 |

| | |
|---|---|
| *United States Fire Insurance v. Essie D. Williams*, 955 S.W.2d 267 (Tex. 1997) | 13 |
| *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48 (Tex. 1997) | 15 |
| *Vail v. Tex. Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129 (Tex. 1988) | 1, 3, 4 |
| *Viles v. Security Nat. Ins. Co.*, 788 S.W.2d 566 (Tex. 1990) | 10 |

**Statutes**

| | |
|---|---|
| Texas Business & Commerce Code § 17.46(b)(5) | 8 |
| Texas Business & Commerce Code § 3.405 | 8 |
| Texas Insurance Code § 541.061 | 8 |
| Texas Insurance Code § 542.051 | 23 |
| Texas Insurance Code § 542.055 | 21 |
| Texas Insurance Code § 542.060 | 21, 22 |
| Texas Insurance Code Article 21.55 | 22 |
| Texas Property Code § 28.004 | 24 |

**Other Authorities**

| | |
|---|---|
| 16 C. Wright, A. Mille, E. Cooper & E. Gressman § 3974 | 19 |
| Fed. R. App. P. 28(a)(5); (c)(1) | 18 |

**\*1 I. REPLY SUPPORTING CROSS APPEAL ISSUE ONE**

**The District Court erred in dismissing AFS/IBEX unfair settlement practices claims--GAIC's unfair settlement practices caused AFS/IBEX' actual damages.**

**A. Policy Proceeds are Actual Damages as a Matter of Law Under the Facts of This Case.**

**1.** *Vail is binding in this instance.*

*Vail v. Texas Farm Bureau Mutual Insurance Company*, 754 S.W.2d 129, 134 (Tex. 1988) is binding authority for the proposition that policy benefits wrongfully withheld are the proper minimum measure of damages for a carrier's unfair refusal to pay an insured's claim. Even authorities GAIC relies on acknowledge that "benefits wrongfully withheld [are] indeed actual damages under the DTPA and Insurance Code." *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 666 (Tex. 1995). *Twin City* did not overrule *Vail*, it simply noted that it was dealing with a different set of issues than those in *Vail* because a worker's compensation claimant was seeking punitive damages based on a common law breach of the duty of good faith and fair dealing. *Id*. at 667 ("Texas courts have consistently recognized this independent injury requirement when dealing with bad faith claims brought against a carrier covered by the Workers' Compensation Act."). Thus, the *Twin City*

court followed *Aranda v. Insurance Company of North America*, 748 S.W.2d 210 (Tex. 1988) because *Aranda* governed the elements of the common law tort of bad faith for worker's compensation claimants. *Id*. at 663; **\*2** See also *Aranda*, 748 S.W.2d 210.

*Twin City* recognizes that policy proceeds are actual damages, as a matter of law, when the Insurance Code claim involves an unfair refusal to pay policy benefits. *Twin City*, 904 S.W. 2d at 666 n.4. It goes on to suggest that the court below improperly broadened *Vail's* holding to imply that policy proceeds are damages, as a matter of law, in all bad faith cases because some Insurance Code or DTP A violations unrelated to the carrier's failure to pay a covered claim may give rise to different damages. *Id*. But the bad faith and related damages in this case reflect the type of situation *Twin City* distinguishes as actionable. In this case GAIC failed to pay a claim when coverage was reasonably clear--which is wrongfully withholding policy benefits. At trial AFS/IBEX introduced evidence from which a jury could conclude that, if GAIC conducted a reasonable investigation, it would have paid AFS/IBEX' claim. The facts of this case describe the situation which *Twin City* confirms as actionable.

*Provident American Insurance Company v. Castaneda*, 988 S.W.2d 189 (Tex. 1998) does not overturn *Vail* or apply to the facts of this case. The Court held that, as a matter, of law there was no evidence of the carrier refusing to pay a claim when coverage was reasonably clear or that it lacked a reasonable basis to deny the claim. *Id*. at 193-94, 197. Castaneda also argued that she was entitled to recover the equivalent of **\*3** policy benefits because the carrier failed to acknowledge communications about the claim or adopt reasonable standards for investigating the claim. *Id*. at 198. The Court describes the alleged failures and omissions and notes that the information that was or should have been exchanged prior to the denial bolstered the carrier's basis for denying the claim. *Id*. at 199. Thus, the alleged unreasonable investigation and failure to timely acknowledge correspondence in *Castaneda* did not cause the carrier's failure to pay the policy proceeds nor did the carrier fail to pay a claim when coverage was reasonably clear. The Courts' statement about a need to show an injury different from the withheld policy benefits referred to a situation in which coverage was not reasonably clear and other alleged Insurance Code violations did not cause policy benefits to be wrongfully withheld. *Id*. at 198-99. The *Castaneda* Court did not reference the *Vail* opinion. *Castaneda* at 198-99. Nor did it change the Insurance Code to relieve a carrier who withholds policy benefits because of its unfair settlement practices from liability under the Insurance Code. *Id*.

GAIC relies on *Parkans International LLC v. Zurich Insurance Company*, 299 F.3d 514 (5th Cir. 2002) for the proposition that there can be no recovery for extra-contractual damages for mishandling a claim without a showing that wrongful claim handling caused an injury independent of those that would have resulted from a wrongful denial of policy benefits. (GAIC Response 43.) **\*4** *Parkans* is inapplicable to the facts of this case. First, a divided panel found that the insurance claim at issue was not covered. *Id*. at 517-518 and *Id*. at 523 (J. Dennis, dissenting). The Court also held that the carrier was entitled to judgment as a matter of law on the extra-contractual claims because it had a reasonable basis to deny coverage. *Id*. at 519. The language GAIC quoted is overly broad to the extent it is not limited to cases like *Parkans* in which there is no coverage and no mishandling of claims.

Moreover, the language GAIC quoted from *Parkans* is dictum. "A statement is dictum if it 'could have been deleted without seriously impairing the analytical foundations of the holding' and 'being peripheral, may not have received the full and careful consideration of the court that uttered it.' " *International Truck and Engine Corporation v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004)(citing *Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000) (quoting *In re Cajun Power Coop., Inc.*, 109 F.3d 248, 256 (5th Cir. 1997)). The Court devoted a total of two sentences to the issue of independent injury and it did not receive the full attention of the Court. It was peripheral in that the finding of no coverage and no wrongful conduct alone would have disposed of the extra-contractual claims. Because of the difference in fundamental facts and the dictum, *Parkans* is neither a binding authority nor persuasive for the purpose of resolving the independent injury issue.

**\*5 2. *The general rule, that there can be no claim for bad faith when an insurer promptly denies an uncovered claim is inapplicable because AFS/IBEX' claim is covered*.**

*Republic Insurance Company v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) instructs that--except in extraordinary circumstances--a carrier who denies an uncovered claim for the wrong reason but later successfully asserts a valid coverage defense is not liable for bad faith. In cases where there is no coverage, it is axiomatic that mishandling the claims did not deprive the claimants of the policy proceeds because the proceeds would not have been payable even if the claim had been

properly handled. The *Stoker* Court, noted that

> We do not exclude, however, the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim. See *Aranda*, 748 S. W.2d at 214. Nor should we be understood as retreating from the established principles regarding the duty of an insurer to timely investigate the insureds' claims.

*Stoker*, 903 S.W.2d at 341. In this particular case, coverage under the SAA policy is a legitimate predicate to AFS/IBEX' cause of action for GAIC's failure to pay a claim when coverage was reasonably clear because there is a covered claim.

The SAA policy defines forgery as:
Forgery means the signing of the name of another person or organization with intent to deceive; it does not mean a signature that consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose. **\*6** (R3/707.) When terms are specifically defined in the policy, those definitions govern the policy's interpretation. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 219 (Tex. 2003). GAIC repeatedly attempts to insert the notion of authority into analysis under the SAA policy. (GAIC Response 28-32; 35-37.) But it can not dispute that McMahon, Jr. endorsed his father's trade name, "Charles McMahon Insurance Agency," to the checks at issue with the intent to deceive. (R2/269.) The policy definition of forgery makes it clear that whether one acted "with or without authority, in any capacity or for any purpose" is immaterial. (R3/707.)

GAIC also makes a new argument that the UCC--which does not define forgery-- replaces years of statutory and common law defining the crime of forgery. (AFS/IBEX Principle Br. 28, 37; R11 /2447-2451.) Tex. Bus. & Com. Code § 3.405. GAIC sells commercial *crime* policies. (R2/191; R3/700.) The UCC provisions it now attempts to import into its policies have nothing to do with the *crime* of forgery. It governs the rights and responsibilities between parties to transactions involving negotiable instruments--not the crime of forgery, even if the crime is forging a negotiable instrument.

GAIC cites cases applying UCC provisions. (GAIC Response 11; 18-25; 28-33.) If GAIC wanted to sell a policy that tracked liabilities imposed by the UCC it is possible that it could have written such a product, but such a policy **\*7** should expressly incorporated the UCC provisions it now urges apply to this policy. Moreover, it would have to name the product something other than a "Commercial Crime Policy" or "Crime Protection Policy." Texas Ins. Code § 541.061; Tex. Bus. & Com. Code § 17.46(b)(5). The UCC does not apply to this policy so as to permit GAIC to redefine the crime of forgery.

The portions of the UCC GAIC urges set out specific rules based on whether an employer has granted an employee authority, the capacity in which a signer is serving and the effect of an authorized signature used for an unauthorized purpose. Tex. Bus. & Com. Code § 3.405. *Cf.* Official Comment (1)("An employer can insure this risk by employee fidelity bonds."). The SAA's definition of forgery precludes the application of the UCC principles. Under the SAA policy, GAIC argues that McMahon, Jr. signed his own name as part of the signature on the forged checks. (GAIC Response 34.) "Charles McMahon Insurance Agency" is not Charles O. McMahon, Jr.'s name. (R2/266; R4/939.) Nor does the "Charles McMahon" in "Charles McMahon Insurance Agency" refer to Charles O. McMahon, Jr. (R2/265.)

Finally, by failing to voice the UCC argument during summary judgment GAIC should not be permitted to urge the theory on appeal. *Johnson v. Sawyer*, 120 F.3d 1307, 1316 (5th Cir. 1997)(stating that "[a]though we can affirm a summary judgment on grounds not relied on by the district court, those grounds **\*8** must at least have been proposed or asserted in that court by the movant"); *FDIC v. Laguarta*, 939 F.2d 1231, 1240 (5th Cir. 1991)(refusing to affirm summary judgment on grounds "neither raised below ... nor even raised sua sponte by the district court."); *Frank C. Bailey Enter., Inc. v. Cargill, Inc*, 582 F.2d 333, 334 (5th Cir. 1978)(same).

**3.** *When a carrier's claim handling does not rise to the level of bad faith, policy proceeds are not necessarily damages caused by other misdeeds: but GAIC mishandled AFS/IBEX' claim.*

GAIC cites involve situations where there was no wrongful claim handling. See e.g., *Provident American Insurance Company v. Castaneda*, 988 S.W.2d 189 (Tex. 1998). In this case, GAIC failed to pay a claim when it knew or should have

known that coverage was reasonably clear. For the purpose of evaluating whether GAIC denied AFS/IBEX' claim in bad faith, GAIC's conduct must be judged by the information it knew or should have known when it denied the claim. *Viles v. Security Nat. Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990)(Whether there is a reasonable basis for denial, however, must be judged by the facts before the insurer at the time the claim was denied.").

GAIC attempts to interject McMahon, Jr.'s purported authority and superimpose provisions of the UCC as a defense to AFS/IBEX' bad faith claims. (GAIC Response 11-12.) GAIC failed to investigate any facts related to authority until after it denied coverage. (AFS/IBEX Principle Br. 25, 28.) Since GAIC did **\*9** not rely on this information in denying the claim it is irrelevant to the bad faith analysis.[1] Similarly, GAIC never urged that the UCC replaced common law and criminal concepts of forgery until after trial. (AFS/IBEX Principle Br. 28, 37; R11/2447-2451.) GAIC cannot rely on information it did not have or a legal question it never considered at the time it denied the claim to transform a denial based on an absurd construction of its policy into a bona fide coverage dispute.

[1]    Compare *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340-41 (Tex. 1995).

When it denied coverage GAIC claims to have relied solely on the definition of forgery in the SAA policy. (TT2/189; R4/861.) In its May 23rd letter, GAIC notes that it "has completed the investigation of the claim" and "based on the facts known at this time, there would be no coverage for the loss" AFS/IBEX is claiming. (R3/737.) GAIC cites to the forgery definition

> Forgery means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

and states

> All the checks for which AFS/IBEX is making a claim were made payable to "Charles McMahon Insurance Agency." The son of Charles McMahon was also named Charles McMahon. This is significant, because the endorsement on the checks "Charles McMahon Insurance Agency" would contain in part the name of Charles McMahon, Jr., who was endorsing the checks. **\*10** (R3/737-739.) This denial is based on an unreasonable reading of the SAA policy's forgery definition and factual assertions that GAIC either knew or should have known were untrue.

**a. GAIC knew or should have known that its application of the policy's exclusionary phrase was not reasonable.**

The trial court never ruled that GAIC's application of the policy provisions to the facts of this case were not actionable because they rose to the level of a bona fide coverage dispute. (R11/2509.) In its July 21, 2008 Memorandum Opinion and Order, the District Court stated that GAIC's construction of the definition of forgery "yields unreasonable and absurd results." (R8/1939.)

The facts of the cases GAIC relies on to illustrate a "bona fide" dispute reveal the contrast between a legitimate challenge to questionable coverage and the unfair and deceptive conduct GAIC engaged in when it denied the claim. GAIC attempts to liken this case to *Pioneer Chlor Alkali Company, Inc. v. Royal Indemnity Company*, 879 S.W.2d 920, 939 (Tex.App.-Hous. [14 Dist.] 1994) arguing that there are no Texas cases on point. (GAIC Response 41.) Case law supports AFS/IBEX' interpretation of the SAA's forgery definition. But the cases GAIC cited in its motion for summary judgment applying the exclusionary language in the SAA policy involve a situation in which a person signed their own true name. (R1/209-260.)

**\*11** Similarly, in *United States Fire Insurance v. Essie D, Williams*, 955 S.W.2d 267 (Tex. 1997), a worker's compensation carrier made a close call about an obscure worker compensation regulation as applied to a set of complicated facts. The first two levels of administrative review panels agreed with the carrier's interpretation of the rule. But a split panel at the highest

level of administrative review disagreed with the carrier. The claimant sued the carrier for bad faith and the Texas Supreme Court affirmed the trial court's grant of summary judgment in the carrier's favor because the evidence conclusively established that "there was no more than a good faith dispute regarding the applicability of Rule 132.3." *Williams*, 955 S.W.2d at 267-68.

When it formally denied the claim and simultaneously filed the declaratory judgment action, GAIC was represented by coverage counsel who could or should have recognized that every case interpreting the SAA policy's definition of forgery involved a person endorsing a covered instrument with their own true name (either alone or in addition to signing the name of another person or entity). (TT2/176; 192.) GAIC also should have known that the prior policy did not define forgery and that GAIC had assured the Named Insured that the new policy form, which defined forgery, did not in any way change or reduce coverage. (TT2/188.) Based on these facts a jury could reasonably decide that GAIC's strained interpretation of **\*12** forgery was not a reasonable basis for denying AFS/IBEX' claim. (TT2/191; 194-195.)

**b. While GAIC claims that its original denials were based on mere disputes about the interpretation of the crime policy's definition of forgery, its application of the definition relied on a factual premise that it knew or should have known was untrue--that Charles O. McMahon, Jr. signed his own name to the checks at issue.**

In its final denial, GAIC stated that
> All the checks for which AFS/IBEX is making a claim were made payable to "Charles McMahon Insurance Agency." The son of Charles McMahon was also named Charles McMahon. This is significant, because the endorsement on the checks "Charles McMahon Insurance Agency" would contain in part the name of Charles McMahon, Jr., who was endorsing the checks.

(R3/737-739.) The following exchange occurred during the deposition of GAIC's insurance adjuster:
Q. Well, is that - is that - is Charles McMahon Insurance Agency the name of an individual?

A. No.

Q. Do you know anybody who's got an agency in their name?

**A. No, I don't know anyone with the last name insurance agency.**

Q. Okay.

**A. It would be an odd situation.**

(R4/939.) GAIC's insurance adjuster confirms this testimony during trial when he states "No, that's not his name. He's not Mr. Agency." (TT2/190.) The issue of **\*13** whether GAIC acted in bad faith because it denied or delayed payment of AFS/IBEX' claim after its liability became reasonably clear is a question for the jury. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997). There is ample evidence from which a jury could determine that GAIC denied the claim when coverage was reasonably clear. (TT2/245.)

**4.** *The evidence shows that had GAIC conducted a reasonable investigation, it would have paid the claim.*

Searcy testified that he "would be swayed that there was coverage" if McMahon, Sr. had signed the forgery affidavits. (TT2/223.) The affidavits required McMahon, Sr. to swear "the said check was not written or authorized" by him and the he did not receive any "proceeds of said check or any part thereof and "that this affidavit is made voluntarily and for the purpose of obtaining the proceeds of said check and establishing the... forgery." (TT2/222.) At trial, Searcy testified:
A. Well, the insured was telling me that they had tried to get Charles McMahon, Sr., to sign a forgery affidavit, but he refused.

Q. Now, was that a material fact to you in your investigation?

A. Well, yes.

Q. Why so?

A. Because - well, if he had signed it, we would not be here, but the fact that he wouldn't sign it made me curious as to why not. It was what you might call a red flag. Like, I really didn't understand why he wouldn't do that, **\*14** although maybe it was the love of a father for the son or something like that, I don't know.

Q, And as far as why he didn't, all you know is he didn't sign it?

A. They didn't give me much of an explanation on that.

Q. And if that thing had been signed, what would you have done with the claim?

A. I probably would have paid it.

(TT2/229-230.) Searcy testified further
Q. So that's - now, did I understand you right, if Mr. McMahon, Jr. - Senior had signed the forgery affidavit, you would have paid this claim?

A. I think I would.

(TT2/243-245.) Searcy did not request the forgery affidavits in his letters to AFS/IBEX and admits this was "a mistake...or an oversight" on his part. (TT2/244.)

All the statements and information contained in the forgery affidavits could have been the subject of interviews by GAIC.[2] (TT2/179; 186; TT3/433.) Outside of talking with its insured,[3] GAIC *did* not conduct its own independent investigation into the facts of the occurrence. (TT2/170-183; TT3/480.) Nothing prevented GAIC from interviewing McMahon, Sr. and McMahon, Jr. Searcy was made aware of McMahon, Jr.'s confession. (TT2/168; 181.) Still, neither McMahon, Jr. nor McMahon, Sr. was interviewed about deceit, about authority, **\*15** about signatures, about documents by GAIC. Searcy never contacted the postal inspector or authorities prosecuting McMahon, Jr. (TT2/180-181; 242.)

[2] Similarly, the questions asked of McMahon, Sr. and McMahon, Jr. during depositions could have been asked during interviews by GAIC had it performed them.

[3] Searcy only contacted two people at AFS/IBEX initially and failed to document the details of contract with one of those two, Don Rogers. (TT3/433; 469-470; TT4/542.)

Searcy also testified that "If I got in the - forgery affidavits or I had gotten some better evidence, than I got, then I would have paid all of the loss...." (TT2/239.) A jury should have been allowed to decide if the information Searcy could have obtained would have yielded "better evidence" so that he would have "paid all of the loss."

Finally, Searcy's testimony that he would have paid the loss if McMahon, Sr. had signed the forgery affidavits or. if he had better evidence further demonstrates that Searcy's reliance on a strained definition of forgery was unreasonable since nothing in the forgery affidavit or the better evidence of forgery would have changed the SAA policy's forgery definition or the fact that McMahon, Jr. endorsed the checks as "Charles McMahon Insurance Agency."

**B. GAIC Waived any Challenge to the Jury's Finding that its Failure to Pay the Claim Caused AFS/IBEX' Chase Suit Damages.**

GAIC can not argue that the jury finding that GAIC's failure to pay the claim caused AFS/IBEX actual damages. In its appellate brief, GAIC states their issues for review number three as:

> Did the district court commit reversible error in finding that AFS could recover attorney's fees and expenses incurred in another lawsuit as consequential damages in this case, or stated another way, are **\*16** attorney's fees and expenses incurred in another lawsuit recoverable as damages under Texas law?

(GAIC Principle 2.) The issue is limited to whether or not Texas law allows such recovery, not whether there was adequate evidence of causation to support the jury's finding. Fed. R. App. P. 28(a)(5); (c)(i).

Nevertheless, GAIC raises a new argument in its Response--that there was "no decision or action of Great American which made the attorney's fees and expenses incurred by AFS in the McMahon Lawsuit a natural, probable and foreseeable result"--an apparent sufficiency of the evidence challenge to the jury's rinding that the Chase suit attorney's fees were consequential damages of GAICs breach. (GAIC Response 39.) See *Texas Mortgage Services Corp. v. Guadalupe Savings & Loan Association*, 761 F.2d 1068, 1073-1074 (5th Cir. 1985) (issue not raised or argued in the appellant's brief may be considered waived by the court of appeals)(citing cases and authorities including 16 C. Wright, A. Mille, E. Cooper & E. Gressman § 3974 at 421 ("issues that are not raised in appellant's initial brief at this point will normally not be considered by the [appellate] court.").

The Chase Suit damages that AFS/IBEX is claiming are sought not under the contractual requirement of the insurance policy. Rather, AFS/IBEX seeks these as consequential damages caused by GAIC's wrongful conduct.

## II. REPLY SUPPORTING CROSS APPEAL ISSUE TWO

**\*17 Does penalty interest under Texas Insurance Code § 542.060 continue to accrue until the insurance carrier complies with its duty to pay a covered claim?**

**A. GAIC Should Bear the Financial Consequences of Withholding Payment on an Established Claim When Liability is Reasonably Clear.**

Citing *Mid-Century Insurance Company v. Boyte*, 80 S.W.3d 546, 548-549 (Tex. 2002), GAIC argues that once a judgment is entered, the relationship between the carrier and insured becomes one of debtor and creditor and bars any further recovery. (GAIC Response 55.) *Boyte* held that an insurer's common law and statutory duties of good faith and fair dealing [under Art. 21.21 Sec. 4(10)(a)(i)] did not extend beyond judgment in favor of the insured; thus, the insured had no bad faith cause of action for the insurer's post-judgment conduct. *Boyte*, 80 S.W.3d at 548-549. *Boyte* did not decide the issue of when interest under § 542.060 [former Art. 21.55, § 3(f)] based on a finding of a violation of a prompt payment under § 542.055 [former Art. 21.55, § 2(a)] stops accruing.

The Court based its decision in *Boyte* on its prior decision in *Stewart Title Guaranty Company v. Aiello*, 941 S.W.2d 68 (Tex. 1997). In *Aeillo*, the Court held that an insurer's duty of good faith and fair dealing ended when the parties signed an agreed judgment and judgment was entered by the trial court in the underlying case; thus, the insureds could not pursue bad faith claims against their insurer for acts occurring afterwards in a subsequent suit. *Id*. at 71. The Court sustained the **\*18** insureds' action for breach of the agreed judgment but found that there was no independent tort upon which to base a breach of the duty of good faith and fair dealing for the carrier's breach. *Id*.

Like *Boyte*, the *Aiello* case did not involve the issue of when interest under § 542.060 based on a finding of a violation of a prompt payment under § 542.055 stops accruing. Instead, *Aiello* decided that the only cause of action the insured had on the agreed judgment was for breach because once it was entered, the parties became judgment debtor and judgment creditor and

the special relationship between the insured and insurer ended. *Aiello*, 941 S.W.2d at 69. The Court reasoned that Article 21.21 section 4(10)(a) prohibits certain practices by an insurer "with respect to a claim by an insured" during the special relationship. *Id.*

Unlike former Article 21.21, § 4(10)(a) [now § 541.060] which discusses what kinds of conduct constitute unfair settlement practices, section 542.060 is only triggered once the insurer is found "liable for" such practices. Tex. Ins. Code § 542.060. It does not contemplate duties relating to the special relationship; it is determined after the carrier is found to be "not in compliance with this subchapter." *Id.*

**B. GAIC Should Compensate AFS/IBEX for Delaying Payment.**

GAIC also states that in *Republic Underwriters Insurance Company v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427-428 (Tex. 2004) the Texas Supreme Court **\*19** "expressly decided when the eighteen percent interest under the Insurance Code stops accruing." (GAIC Response 54.) That is not what was expressly decided by the Court. Instead, the Court simply stated, in dicta, that "Mex-Tex proved only that the penalty should have been awarded on $33,540 from the time that amount should have been paid until judgment." *Mex-Tex*, 150 S.W.3d at 427 (reversing and rendering judgment consistent with opinion that insurer's partial payment limited liability for statutory penalty to difference between the tendered payment and the amount of the claim). The *Mex-Tex* Court was not asked and did not determine when the 18% interest of § 542.060 stops accruing. In analyzing Article 21.55, the Court did, however, state that the phrase "that must be paid" used in the definition of "claim" and used in Article 21.55 is tied to "the amount ultimately determined to be owed...."[4] *Mex-Tex*, 150 S.W.3d at 426. The Court went on to say that that amount "of course would be net of any partial payments made prior to that determination." *Mex-Tex*, 150 S.W.3d at 426. Similarly, § 542.060 titled "[l]ability for [violation of [s]ubchapter" contemplates that once an insurer is found "liable for a claim under an insurance policy" - as GAIC has by the District Court - it must pay "interest on the amount of the claim at the rate of 18% a year." Tex. Ins. Code § 542.060. The insurer/insured special relationship and GAIC's **\*20** good faith assertions of defense are immaterial to the determination of interest under § 542.060. *Cf. Higginbotham*, 103 F.3d at 461 ("insurance company's good faith assertion of defense does not relieve the insurer of liability for penalties for tardy payment, as long as the insurer is finally judged liable.") (citation omitted).

[4] Section 542.051(2) defines "claim" as "a first-party claim that: (A) is made by an insured or policyholder under and insurance policy or contract or by a beneficiary named in the policy or contract; and (B) must be paid by the insurer directly to the insured or beneficiary." Tex. Ins. Code §542.051.

Accordingly, interest should continue to accrue while the carrier appeals. If The legislature did not state that prompt payment penalty interest stops accruing on the date of judgment. *Compare* Tex. Prop. Code § 28.004 (penalty interest stops accruing on the earlier of the date payment is delivered or mailed or "the date a judgment is entered in an action brought under this chapter."). Section 542.060 should be liberally construed in accordance with its clear terms. Tex. Ins. Code § 542.054 (requiring liberal construction). Interjecting the date of judgment to cut off the penalty interest when the legislature did not do so does not liberally construe § 542.060.

**End of Document**  © 2014 Thomson Reuters. No claim to original U.S. Government Works.