# Exhibit 33

To United States' Opposition to BPXP's Motion in Limine to Exclude (1) Additional Evidence of Culpability and (2) Evidence Relating to Prior Incidents



# Management Accountability Project

## Texas City Isomerization Explosion
## Final Report

### February 2007

BP CONFIDENTIAL -- FOR INTERNAL USE ONLY

*Limited Distribution -- Copy 14*

6280
Exhibit No. _____
Worldwide Court Reporters, Inc.

TREX-06280

CONFIDENTIAL

BPISOM00488913

First, many of the management accountability failings we discovered permeated the entire BP organization:



Pyramid (top to bottom): ISOM / West Plant / Texas City Site / Refining SPU / R&M Segment / Group

The accountability delegations were muddled and confusing throughout the organization from the ISOM unit all the way to the R&M Segment leadership. For instance, Willie Willis convened a group shortly before the disaster to study and define accountabilities in the West Plant (the ISOM unit was a part of the West Plant). Similarly, the accountabilities, delegations and authority were confused at the Texas City site level, and between Texas City management, the Refining SPU, and the R&M Segment leadership.

Second, it was also apparent (team members attested visually) that the Texas City Refinery had not been adequately maintained for some years prior to 2002. While capital spending increased beginning in 2002, the infrastructure had deteriorated substantially, and it was apparent from the ISOM unit all the way to the Segment leadership that too few resources were directed to this problem.

Third, it is important to understand that neither poorly maintained assets nor muddled and confused lines of authority directly contributed or caused the ISOM tragedy. Indeed, none of the management accountability failings identified by the team caused the disaster. Rather, the culture prevalent at Texas City Refinery was the single most direct causal connection point as evidenced in part by these incidents:

- A unit was started up, although apparently no clear start-up order was given, and an operator who was not considered one of the most competent ISOM operators worked the control board.
- A very competent step-up supervisor sat in the satellite control room and took insufficient corrective action while he and others saw that too much product was poured into the splitter tower and the temperature and pressure continued to build.
- Both ISOM staff and management failed to announce generally within the Refinery, a unit start-up at the beginning of the day shift.
- A supervisor missed a hand over, came into work late, and then left early without a proper hand over to his relief at the critical time of a unit start-up.
- A supervisor was in charge of the ISOM who was not fully qualified on the unit.

CONFIDENTIAL

BPISOM00488920

In sum, the Texas City Refinery had a culture of risk taking coupled with a failure to understand the process safety implications of prior incidents (resulting in 3 deaths and a major explosion in the 12 prior months), a long tradition of failure to comply with simple procedures, the desire to avoid conflict within its organization, and a penchant for placing persons in key roles who lacked adequate professional training.

There were many management failures from the ISOM unit all the way up to R&M Segment leadership. A culture that evolved over the years seemed to ignore risk, tolerated non-compliance, and accepted incompetence – all of which were present on the night shift on March 22 and the day shift on March 23, 2005.

Finally, Texas City Refinery either did not learn or did not apply the lessons from prior incidents at Texas City and other BP refineries including the prior Grangemouth incidents. To his credit, Don Parus investigated and learned that there had been 23 deaths over the past 30 years at Texas City Refinery prior to the ISOM disaster. He began to speak to management and his workforce at all levels about this appalling record.

But Texas City Refinery was also a place with a culture deeply imbued with risk taking often times without a clear mitigation plan. Texas City, and the Refining SPU and Segment leadership did not understand the real cultural issues and they therefore did not establish the correct priorities. They focused on individual safety KPI's only, which told them they were doing fine. The initiatives created by Don Parus – "Just Culture", "1000 day goals" – missed the point. They did not work as far as improving process safety or otherwise mitigating a culture of risk taking. What was needed was leadership that put process safety first, recognized risks and required that persons be placed in roles based on competence.

Management failures must be identified so we can learn the lessons of the past and never repeat them. We should hold management, at least, to the same standards of performance to which we also hold other employees responsible.

As a consequence, management accountable for the operations of the Texas City Refinery has to be judged and held accountable for its management shortcomings regardless whether they had any direct causal impact on the ISOM disaster. Our consideration, therefore, does not place fault based on hindsight; rather, our consideration is predicated upon an analysis of the information relevant individuals had at the time and whether their actions were consistent with the management accountability framework set forth in BPMF, which is the same standard used by our senior leadership on a daily basis.

b.   Tiers 1-4

Building upon the local Texas City investigation conducted by Kathleen Lucas that assessed discipline for the disaster, the team considered which persons potentially had management accountability, direct or shared, for any other aspect of the disaster (including Lucas and Willis themselves). The matrix immediately following lists those persons and places them in the appropriate level of accountability tier. (It was determined that other persons, notably Ross Pillari, did not have any management accountability related to the disaster).

7

CONFIDENTIAL

BPISOM00488921

| Category | Description | Individuals |
|---|---|---|
| Tier 1 | Direct accountability for substantial management activities; aggravating factors generally outweigh mitigating factors | Mike Hoffman<br>Pat Gower<br>Don Parus<br>Willie Willis |
| Tier 2 | Direct accountability for substantial management activities; balance of aggravating and mitigating factors | |
| Tier 3 | Accountability (direct or shared) for management activities; mitigating factors, outweigh aggravating factors or other considerations | Kathleen Lucas<br>Joe Barnes<br>Bill Ralph |
| Tier 4 | Persons who did not have accountability at the time of the disaster but previously held some accountabilities | Rick Hale<br>Ray Hawkins<br>Rich Peltier |

c.   Summary of Disciplinary Recommendations

The management accountability team initially considered a wide range of possible outcomes and conclusions, including whether there was intentional or willful conduct of any type by managers that exposed employees and contractors to risks. The team found absolutely no evidence of any gross negligence or of any willful or intentional behavior that contributed in any way to the ISOM disaster. Rather, the team found that some managers failed to adequately perform their roles and duties based on their accountabilities, or demonstrated poor judgment or the failure to lead properly based on their accountabilities.

Tier 4 Individuals:

Three persons were placed in Tier 4: Ray Hawkins, Rich Peltier and Rick Hale. These individuals each had significant management accountability in the past related to the ISOM unit, but they had no accountability for the March 23, 2005 disaster.

Rick Hale had been the Refinery Manager for about two years, and he left that role in June 2004. Ray Hawkins had been the Superintendent of the ISOM/ARU/AU2 complex until January, 2005, when he was reassigned to manage the turnaround at a neighboring unit. Rich Peltier had been the supervisor at the ISOM unit until September 2004 when Willie Willis assumed accountability. The management accountability team determined that their accountability was simply too remote to the incident to warrant any further review. Moreover, Peltier had tried to do a proper handover with Willis, but Willis ignored his request.

Hawkins, in the team's opinion, was not well-qualified to hold a superintendent post and he has not held a position of management responsibility since the accident. Hale had left the refinery 10 months before the disaster. No further review is warranted here.

CONFIDENTIAL

BPISOM00488922

| OBSERVATIONS | RECOMMENDATIONS |
|---|---|
| **4. Overtime** | |
| History of accepting high levels of OT; during turnarounds, there is a tendency to work extensive consecutive 12 hour days | Threshold for level of overtime must be defined on an individual basis for persons in safety-sensitive positions |
| **5. Presentations and communications did not completely reflect reality** | |
| a. Environment of good news presented in the first place; preference over bad news | Bad news and issues should be presented unambiguously at the beginning of presentations |
| b. Failure to consistently reveal the dilapidated state of the physical assets | Presentations should be verified by field trips |
| **6. Striking emphasis on commercial accomplishments relative to focus on asset improvement and process safety** | Safety always needs priority over financials and commercial, including during presentations |
| **7. Boiling frog syndrome was evident at TXC** | |
| Examples:<br>- There was a reported fire on site on average every week<br>- "Broken windows" problem | • Each manager needs to benchmark the performance of his/her unit regularly against best practices in the industry, and not against his/her past experience<br>• Rigorous reporting of events, failures and near misses must be the norm, enforced by performance contracts and assessments |
| **8. Lack of compliance** | |
| There was high level of tolerance for lack of compliance for routine daily operations | "Discipline and rigor" need to be corporate values, and then instilled through all levels of management |

CONFIDENTIAL

BPISOM00488933