**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 SECTION J |
| This Document Relates To:  10-4536 | * * * * | Honorable CARL J. BARBIER Magistrate Judge SHUSHAN |

**BP EXPLORATION & PRODUCTION INC.'S
MEMORANDUM IN OPPOSITION TO THE UNITED STATES'
MOTION *IN LIMINE* TO PERMIT RELEVANT EVIDENCE
CONCERNING BP P.L.C. AND OTHER BP AFFILIATES**

Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 662-5985

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.*

## TABLE OF CONTENTS

**Page**

**INTRODUCTION** .................................................................................................................... 1

**ARGUMENT** ............................................................................................................................ 3

**I.  THE PARTIES AGREE THAT BPXP IS THE SOLE BP GROUP ENTITY POTENTIALLY LIABLE IN THIS CWA PROCEEDING.** .......................................... 3

**II. THE MDL 2179 RECORD REFLECTS THE DISTINCTIONS BETWEEN BP GROUP ENTITIES, INCLUDING BPXP.** ................................................................ 5

**III. WHETHER AND HOW BPXP'S CORPORATE AFFILIATES ARE RELEVANT TO THE PENALTY PHASE VARIES BASED ON THE PENALTY FACTOR AND THE EVIDENCE AT ISSUE.** ............................................ 7

    A.    Economic Impact of the Penalty on the Violator ....................................... 7

    B.    Mitigation ................................................................................................. 10

    C.    Degree of Culpability ............................................................................... 11

    D.    Seriousness of the Violation .................................................................... 12

    E.    Any Economic Benefit to the Violator Resulting from the Violation ..... 12

    F.    Any Other Penalty for the Same Incident ............................................... 13

    G.    History of Prior Violations ...................................................................... 13

    H.    Other Matters as Justice May Require .................................................... 13

**CONCLUSION** ...................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams v. Teck Cominco Alaska, Inc.*,
399 F. Supp. 2d 1031, 1039 (D. Alaska 2005) ......................................................................... 13

*Conway v. United States*,
647 F.3d 228, 237 n.8 (5th Cir. 2011) ........................................................................................ 3

*Dean Dairy*, 929 F. Supp. 800, 808 (M.D. Pa. 1996) ..................................................................... 10

*United States v. Allegheny Ludlum Corp.*, 366 F.3d 164, 178 (3d Cir. 2004) .............................. 13

*United States v. Bestfoods*,
524 U.S. 51, 61 (1998) ............................................................................................................... 3

*United States v. CITGO Petroleum Corp.*,
No. 08-00893, 2011 WL 10723934 (W.D. La. Sept. 29, 2011) ............................................... 11

*United States v. Egan Marine Corp.*,
2011 WL 8144393 at *7 (N.D. Ill. Oct. 13, 2011) ................................................................... 11

*United States v. Mun. Auth. of Union Twp.*,
150 F.3d 259, 268 (3d Cir. 1998) .............................................................................. 9, 10, 13

**Other Authorities**

33 U.S.C. § 1321(b)(8) ................................................................................................. 8, 9, 10, 12

Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 ................................................................. 4

**INTRODUCTION**

It is undisputed that BPXP is the sole BP entity named as a defendant in the United States' CWA complaint and the sole responsible party under OPA. Indeed, the United States asserts that BPXP is "the liable party in this proceeding." (*See* USA Br. at 1).

Although the United States acknowledges that BPXP is the potentially liable BP entity, the United States' motion is otherwise factually and legally unsupported. The United States seeks a premature, vague, and sweeping ruling that "the Court will consider the actions and finances of BPXP's corporate affiliates when evaluating each of the penalty factors." (*See* USA Br. at 15). The United States fails to cite any precedent for the overbroad relief that it seeks – because there is none. Indeed, the United States cites very little case law in its brief, and the cases it does cite focus on the economic impact factor (which the United States mischaracterizes).

Contrary to the premise of the United States' motion, during this litigation BPXP has explained and distinguished its role in the events at issue. For example:

- BPXP has repeatedly made clear that BPXP is the sole BP Group entity that bid for and leased the Mississippi Canyon Block 252 ("MC252") leasehold.

- BPXP has made clear that, following the *Deepwater Horizon* Incident, BPXP was the sole BP entity that accepted a designation as a Responsible Party under the Oil Pollution Act of 1990 in connection with the oil spill, along with the responsibilities for receiving claims and responding to the incident that Responsible Party status requires.

- At the outset of this litigation, BPXP took care to distinguish itself, as the OPA Responsible Party and the holder of the MC 252 leasehold, from other BP Group entities that had nothing to do with the MC 252 leasehold, the Macondo well, the *Deepwater Horizon*, or the April 20, 2010 explosion, fire and resulting spill.

- The evidentiary record – described in more detail below – repeatedly reflects BPXP's individual corporate status in the BP organization and BPXP's unique role in the *Deepwater Horizon* legal proceedings.

Despite these facts, the United States seeks an all-encompassing ruling that "the Court will consider the actions and finances of BPXP's corporate affiliates when evaluating each of the penalty factors." (USA Br. at 15). The United States' one-size-fits-all approach is not consistent with the evidentiary record or the terms of the CWA itself. Instead, the relevance of "actions" of BPXP's corporate affiliates to the Penalty Phase depends upon (1) the language of each specific

penalty factor at issue (and the precedent guiding the Court's application of them), (2) the specific "action" of the BPXP affiliates at issue, and (3) the specific discovery and evidence relating to the specific affiliate "action."

Throughout its motion, the United States mischaracterizes BPXP's positions, as part of a misplaced effort to portray BPXP as "inconsistent." (USA Br. at 1, 2). For example, the United States incorrectly suggests that BPXP contends that BP Group affiliates are relevant only to the "mitigation" factor, and are not relevant to factors such as "the economic impact of the penalty on the violator." (USA Br. at 1-2). The United States' statement ignores and is directly contrary to what BPXP has previously informed the government: BPXP does *not* dispute that *some* evidence relating to the BP Group and BPXP may be relevant to the economic impact of the penalty on BPXP. Indeed, in correspondence with the United States, BPXP provided ten specific examples of BP Group information that, depending upon the specific evidence, may be relevant to the "economic impact of the penalty on the violator [BPXP]." (Ex. 1, BPXP Proposal to United States Regarding Requests for Documents). The United States rejected outright BPXP's offer to provide such information and instead seeks overly broad, irrelevant, and extremely burdensome discovery. (Ex. 2, U.S. Phase III Proposed First Set of Reqs. for Production to BPXP; Ex. 3, United States Response to BPXP Proposal to United States Regarding Requests for Documents).

With regard to the mitigation factor, the United States incorrectly asserts that "BP has indicated it seeks to present evidence of BP's response actions . . . even though those actions were not taken by BPXP, the liable party in this proceeding." (USA Br. at 1). The United States' argument mischaracterizes BPXP's position and the facts. BPXP plans to introduce evidence showing that, as the OPA Responsible Party, BPXP marshalled resources for the response effort and in doing so bore the vast majority of the cost of the response personnel and resources of other BP affiliates as well as third-party contractors. In that respect, to the extent that BPXP utilized personnel and resources from certain of its corporate affiliates and compensated those affiliates, those entities may become relevant as part of the mitigation factor.

BPXP's positions on the relevance of the BP Group are internally consistent. Moreover, unlike the United States' overbroad approach, BPXP's positions are also consistent with the language of the specific CWA penalty factors, the applicable case law, and the specific evidence at issue. Accordingly, and for the reasons explained below, the United States' motion should be denied.

## ARGUMENT

The United States' motion does not explain whether the United States is asking the Court to order that "all" of the actions of BPXP's corporate affiliates are relevant to each of the penalty factors, or whether "some" actions of BPXP corporate affiliates are relevant to each of the penalty factors. If the Court order sought by the United States is that "some" affiliate actions are relevant to each penalty factor, the United States does not provide in its opening brief a list of all, or even the majority, of the allegedly relevant actions. (Nor may it do so for the first time in a reply brief. *See Conway v. United States*, 647 F.3d 228, 237 n.8 (5th Cir. 2011). Compounding the vagueness of the United States' requested relief, it also seeks an alternative ruling that "[a]t a minimum, the Court should not preclude the discovery and presentation of relevant evidence concerning BP p.l.c. and its affiliates," but nowhere does the United States explain the difference or the relationship between its first request for relief and its alternative, "minimum" request for relief. (USA Br. at 15). In any event, the United States has failed to makes its case under the facts and the statutory factors, and its motion should be denied.

**I.     THE PARTIES AGREE THAT BPXP IS THE SOLE BP GROUP ENTITY POTENTIALLY LIABLE IN THIS CWA PROCEEDING.**

BPXP is the only BP Group entity named as a defendant in this CWA case, and it is, in fact, the only BP Group entity that could potentially be held liable for a discharge in this CWA proceeding. (*See* Complaint of the United States of America (Civ. A. No. 2:10-cv-04536, Rec. Doc. 1) (hereinafter "United States Complaint")); *see also* USA Br. at 1 (BPXP is "the liable party in this proceeding.")). *See also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries.") (internal quotations omitted).

3

BPXP is a separate entity from BP p.l.c. BPXP is an indirect subsidiary with five intermediate parent companies.[1] (Ex. 4, Corporate Organizational Chart). BPXP is also separate from other entities within the BP Group, and it has a distinct corporate identity and set of operations.[2] BPXP's operations are overseen by a Board of six directors. BPXP is "the BP Group company that conducts exploration and production operations in the Gulf of Mexico." (Ex. 5, BP Annual Report and Form 20-F 2013 at 39). With over 650 leases, BPXP holds the most federal deepwater lease acreage of any company in the Gulf of Mexico and is one of the industry's leading producers of oil and gas from this area. (Ex. 6, Press Release, BP Starts up Na Kika Phase 3 (Feb. 24, 2014)).

In conducting its operations, BPXP relies on certain payrolled employees of BP America Production Company ("BPAPC"), a separate legal entity incorporated in Delaware. BPAPC's provision of employees and resources to BPXP is addressed in part by a Services and Agency Agreement between BPXP and BPAPC. (Ex. 7, Services and Agency Agreement). Accordingly, while BPXP itself maintains no payrolled employees, BPXP expects the evidence will show that BPXP generally is charged, and BPAPC credited, for personnel costs associated with the work performed on BPXP operational assets by BPAPC payrolled employees.

With respect to the *Deepwater Horizon* incident that gives rise to this CWA action, BPXP is the entity that bid for and leased the MC 252 leasehold from the United States in 2008. (Agreed Stipulations No. 96 (Rec. Doc. 5927)). Following the Incident, BPXP was the BP Group entity that was named a Responsible Party by the U.S. government on April 28, 2010, under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701, and BPXP accepted that

---

[1] The United States incorrectly relies on the testimony of former CEO Tony Hayward to suggest that BPXP is "more appropriately characterized as an 'internal organizational unit' within BP p.l.c." (USA Br. at 2). The United States' reading of Mr. Hayward's testimony is incorrect. Mr. Hayward's testimony does not refer to the legal entity of BP Exploration & Production Inc., but instead refers to the Exploration and Production *business segment*, which is not a legal entity. The United States' mischaracterization of Mr. Hayward's testimony ignores the record evidence that makes this distinction clear. (*See, e.g.*, Ex. 14, Tr. at 594:17-595:15 (McKay) (explaining the distinction between the legal entity of BPXP and the Exploration & Production business segment).

[2] BPXP is a Delaware corporation with its principal place of business in Texas. BP p.l.c. is a corporation organized under the laws of England and Wales. (BP's Phase 1 Proposed Findings of Fact and Conclusions of Law (Rec. Doc. 10467) at ¶¶ 1, 7).

4

designation on May 3, 2010.[3]  (Ex. 8, Apr. 28, 2010 US Coast Guard Letter to BPXP; Ex. 9, May 3, 2010 BPXP Letter to US Coast Guard).[4]

## II. THE MDL 2179 RECORD REFLECTS THE DISTINCTIONS BETWEEN BP GROUP ENTITIES, INCLUDING BPXP.

Contrary to the United States' assertion, for years now, BPXP has repeatedly explained the corporate distinctions between BPXP, BP p.l.c., and other entities within the BP Group whenever those distinctions have been relevant in the MDL 2179 proceedings.  As discussed above, BPXP distinguished itself at the outset of the litigation to the MDL 2179 plaintiffs as the OPA Responsible Party and the holder of the MC 252 leasehold.  (Ex. 10, Nov. 5, 2010 Letter to MDL 2179 Plaintiffs' Liaison Counsel).  The record reflects numerous other examples of BPXP's unique status in the *Deepwater Horizon* legal proceedings:

- ***BPXP*** alone filed its October 2010 statement providing notice that it had chosen to waive the statutory limitation on liability under OPA.  (Statement of BP Exploration & Production Inc. Re Applicability of Limit of Liability Under Oil Pollution Act of 1990 (Rec. Doc. 559)).

- ***BPXP*** alone served written Phase 1 and Phase 2 discovery requests on the United States. (Ex. 11, BPXP's First Set of Discovery Requests to the U.S.; Ex. 12, BPXP's Second Set of Discovery Requests to the U.S.).

- In responding to plaintiffs' written discovery requests, BP p.l.c. made clear that, to the extent BP Group entities other than BPXP or BP America Production Company (the BP entity that was a party to the drilling rig contract with Transocean) were named as defendants in the MDL 2179 litigation, "those entities were named in error."  (Ex. 13, BP p.l.c.'s Resps. and Objections to Pls.' Interrogs., Reqs. for Produc., and Reqs. for Admis. at 69 (No. 37) (Dec. 8, 2010)).

---

[3] The United States' motion incorrectly asserts based on Congressional testimony that "BP p.l.c. repeatedly told the United States Congress, its investors, and the public that it would pay all legitimate claims, including civil penalties resulting from the incident." (USA Br. at 7-8).  While BPXP has indeed paid billions of dollars in claims and settlements for damages and response costs in connection with the *Deepwater Horizon* incident, the United States mischaracterizes the cited testimony by gratuitously adding the term "civil penalties," which are not mentioned in the cited testimony.

[4] The United States argues that "it was BP America, Inc., and not BPXP that submitted the Oil Spill Response Plan relied upon in the Macondo well permit." (USA Br. at 2, 3 n.8).  However, the Initial Exploration Plan was filed by BPXP, incorporated the OSRP filed by BP America Inc. by reference, and made clear that the OSRP affirmatively included BPXP: "All proposed activities and facilities in this Exploration Plan will be covered by the Oil Spill Response Plan filed by BP America Inc. (MMS company number 21591) ***and includes BP Exploration & Production Inc.*** (MMS company number 02481) …" (Ex. 15, TREX-00768 p. 7-1) (emphasis added).  In addition, while the United States argues that Andy Inglis signed a financial memorandum approving expenditures to drill the Macondo well, it omits that the ***approval*** of the expenditure was provided by a BPXP representative, while Inglis signed to provide his support.  (Ex. 16, Financial Memorandum at BP-HZN-2179MDL00256299).  Finally, as BPXP made clear in its Phase 1 post-trial submissions, "No BP p.l.c. employees were involved in the events that caused or allegedly caused the Incident."  (BP's Phase 1 Proposed Findings of Fact and Conclusions of Law (Rec. Doc. 10467) (hereinafter "Phase 1 FFCL") at 614-16.  An excerpt of the Phase 1 FFCL including these pages is attached hereto as Ex. 17).  The United States did not challenge BPXP's FFCL assertions on this issue in Phase 1.

- Following the 2013 Limitation and Liability Trial, BPXP provided a detailed description in its Phase 1 and Phase 2 Proposed Findings of Fact and Conclusions of Law that distinguished BPXP from the other BP Group entities that have been named as defendants in MDL 2179 cases.  (Phase 1 FFCL at 1-3; BP and Anadarko's Phase 2 Proposed Findings of Fact and Conclusions of Law (Rec. Doc. 12047) (hereinafter "Phase 2 FFCL") at 1-3).  Those descriptions made clear that, while BPXP was an OPA Responsible Party and a leaseholder of the MC 252 prospect, and BP America Production Company was a party to the drilling contract concerning the use of the *Deepwater Horizon*, the operations of other BP Group entities did not relate to drilling operations in the Gulf of Mexico.  (*Id.*).  BP p.l.c., in particular, neither leased the MC252 leasehold, nor was a party to the drilling rig contract, and no employees of BP p.l.c. were present aboard the *Deepwater Horizon* on April 20, 2010.  (Phase 1 FFCL at 3).

In view of these repeated, on-the-record clarifications, the assertion that "BP has consistently treated the BP Group as one entity in this litigation" is without merit.  (*See* USA Br. at 8).

Likewise, the record in the United States' Clean Water Act case – starting with the government's own pleadings – makes clear that "BP" has meant only BPXP for purposes of the CWA claims.  The parties' prior filings and the Court's orders have consistently defined "BP" to mean BPXP, including but not limited to the following:

- *The United States' December 2010 Complaint*.  (United States Complaint ¶ 7 (defining "BP" as "BP Exploration & Production Inc."));

- *The Parties' Stipulation Regarding Collected Oil*.  (Stipulation Mooting BP's Mot. for Partial Summ. J. Against the U.S. (Rec. Doc. 8620) at 1 (defining "BP" as "BP Exploration & Production Inc."));

- *The United States' Summary Judgment Motion.*  (U.S.' Second Mot. for Partial Summ. J. as to the Liability of BP Exploration & Production Inc., the Transocean Defs., and the Anadarko Defs. (Rec. Doc. 4836) at 1 (defining "BP" as "BP Exploration & Production, Inc.")); and

- *The Court's Order on the Parties' Cross-Motions for Summary Judgment*.  (Order and Reasons as to the U.S.', Transocean's, and Anadarko's Cross-Mots. for Partial Summ. J. Regarding Liability under the CWA and OPA (Rec. Doc. 5809) at 1 (defining "BP" as "BP Exploration & Production, Inc.")).

Moreover, while other plaintiffs sued entities other than BPXP, the United States sued only BPXP in this CWA proceeding.

In sum, the United States' new attempt to treat the BP Group entities as interchangeable is not only inconsistent with BPXP's status as a separate legal entity and the sole defendant in this action, but also with the United States' own statements and actions in this CWA proceeding.

### III. WHETHER AND HOW BPXP'S CORPORATE AFFILIATES ARE RELEVANT TO THE PENALTY PHASE VARIES BASED ON THE PENALTY FACTOR AND THE EVIDENCE AT ISSUE.

The United States seeks a ruling that "actions" of all BPXP affiliates are relevant to each of the eight penalty factors under the CWA. In fact, the relevance of "actions" of BPXP's corporate affiliates to the Penalty Phase depends upon: (1) the language of each specific penalty factor at issue (and the precedent guiding the Court's application of them); (2) the specific "action" of the BPXP affiliates at issue; and (3) the specific discovery and evidence relating to that "action." A blanket approach to these issues prejudges these considerations and is neither necessary nor appropriate.

#### A. Economic Impact of the Penalty on the Violator

The "economic impact" statutory factor directs the Court to consider the economic impact "*on the violator*" – which can only be BPXP. *See* 33 U.S.C. § 1321(b)(8) ("economic impact of the penalty on the violator"). Contrary to the United States' suggestion, however, BPXP does *not* take the position that documents relating to BPXP's affiliates are wholly irrelevant to this factor. For example, to the extent documents requested by the United States relate to the economic impact of the penalty on BPXP (*e.g.*, documents sufficient to summarize certain intercompany loans and other material transactions between the BP Group and BPXP), they may be relevant depending on the specific evidence at issue. Prior to the filing of this motion, BPXP provided the United States with a list of ten categories of BP Group documents that may be relevant to the "economic impact of the penalty on the violator [BPXP]." (Ex. 1, BP Proposal to U.S. Regarding Reqs. for Documents).

The draft discovery requests provided by the United States demonstrate that much of the discovery it seeks to justify with this motion is excessively broad, burdensome, and irrelevant. For example, and ironically, given that the United States claims that its motion seeks to "streamline discovery" (USA Br. at 1), the United States is seeking:

- Paychecks and payroll records for each BP Group employee who worked on the well or the response, totaling thousands of employees (Requests 1, 2, 21);

7

- Performance assessments for BP Group personnel (including executives) such as Tony Hayward, Robert Dudley, Andrew Inglis, Lamar McKay, Douglas Suttles, James Dupree, Patrick O'Bryan, David Rainey, and Kevin Lacy (Request 22); and

- *For eight different BP entities, for a ten year period, all* Board of Director and officer meeting minutes, notes, resolutions, policies, procedures, directives, and decisions (Requests 19, 20).

(*See* Ex. 2, US's [Draft] Phase III First Set of Reqs. for Produc. to Def. BPXP).  The burden of producing the extremely large universe of documents implicated by these and other United States requests outweighs the relevance, if any, that the documents have to the specific penalty factors.

Despite the United States' broad requests, BPXP made a proposal to the DOJ under which BPXP would be willing to provide certain discovery relating to the finances of BPXP and the BP Group, but objected to other requests (such as those above) with limited or no relevance to the penalty factors.  (Ex. 1, BP Proposal to U.S. re Reqs. for Docs.).  The United States rejected that proposal, and offered no compromise proposal in return.  (Ex. 3, U.S. Resp. to BP Proposal to U.S. re Reqs. for Documents).  To the extent the United States is using this motion to pursue burdensome and invasive discovery such as that outlined above, the motion should be denied.

BPXP does not dispute that specific evidence regarding the finances of BPXP's affiliates may be considered to the extent the evidence is relevant to the "economic impact of the penalty on the violator [BPXP]."  *See* 33 U.S.C. § 1321(b)(8).  But the order requested in the United States' motion is overbroad, vague, and premature, seeking a ruling that "the Court will consider the . . . finances of BPXP's corporate affiliates when evaluating each of the [CWA] penalty factors."  (*See* USA Br. at 15).  The BP Group operates worldwide and thus consists of scores of affiliated companies and employs thousands of finance and treasury employees who generate a voluminous number of financial documents each year.  The United States has not demonstrated that all of the financial documents of affiliates such as BP Oman or BP Singapore, for example, are even remotely relevant to the "economic impact of the penalty on the violator [BPXP]."  *See* 33 U.S.C. § 1321(b)(8).  Nor has the United States demonstrated that all of the voluminous number of finance documents generated each year by BP p.l.c. and other entities are in any way

8

relevant to this factor.  *See* 33 U.S.C. § 1321(b)(8).  Instead, as demonstrated by the BPXP compromise proposal that the United States rejected, (Ex. 1, BP Proposal to U.S. re Reqs. for Docs.), the relevance of BP Group financial documents to the "economic impact of the penalty on the violator [BPXP]" depends upon the specific documents and evidence at issue.

The case law cited by the United States regarding this factor does not support the overbroad and categorical ruling the United States seeks in its motion.  The United States does not cite any Fifth Circuit case law in support of its position on the economic impact factor, but cites the Third Circuit's decision in *Dean Dairy*.  (USA Br. at 12-13) (*citing United States v. Mun. Auth. of Union Twp.*, 150 F.3d 259, 268 (3d Cir. 1998) ("*Dean Dairy*")).  Even the Third Circuit in *Dean Dairy*, however, recognized that the extent of consideration given to the parent's financial resources depends on the facts and circumstances of the specific CWA case.  *Dean Dairy*, 150 F.3d at 268.  In *Dean Dairy*, as part of a "fact-specific assessment that examined the role of the parent in the operations of the subsidiary, particularly with regard to the issue of pollution of the nearby waters and actions that could have resolved it," the court considered that (1) the parent company "had complete control over whether and when [the violator] would achieve compliance" with its wastewater permit; and (2) the parent company "was siphoning off profits" from its subsidiary throughout the time the subsidiary was facing wastewater problems. *Id*. at 268-69 (internal quotations omitted).  In fact, the *Dean Dairy* court stated that "***[i]f the subsidiary does not retain its revenues, as the evidence showed in this case, then its parent's financial resources are highly relevant.***"  *Id.* at 268 (emphasis added).  Moreover, the Third Circuit in *Dean Dairy* specifically noted that the district court "only considered Dean Foods' [the parent's] assets as one factor among others; they were not dispositive." *Id*.  In any event, the evidence will show that BPXP has neither declared nor paid a dividend in any form to any parent or affiliate company since April 20, 2010.  In *Dean Dairy*, by contrast, the evidence showed that

9

the corporate parent had "siphon[ed] off profits" from the violator after the violations. *Dean Dairy*, 150 F.3d at 268.[5]

In sum, the United States' request that "the Court will consider the . . . finances of BPXP's corporate affiliates when evaluating each of the [CWA] penalty factors" (USA Br. at 15) is overbroad. The determination of relevance should address the specific evidence at issue, and should ultimately depend on whether that evidence is relevant to "economic impact of the penalty *on the violator* [BPXP]." *See* 33 U.S.C. § 1321(b)(8) (emphasis added).

B.     Mitigation

The United States' motion is premised on the mistaken assumption that BPXP seeks to take credit for response and mitigation efforts undertaken solely by BPXP's affiliates. (USA Br. at 1). In fact, BPXP plans to introduce evidence showing that a key part of BPXP's mitigation efforts, as the OPA Responsible Party, involved marshalling and paying for the personnel and other resources of contractors and BP Group affiliates. BPXP incurred those response costs, because the resource and personnel costs of those contractors and BP Group affiliates were generally charged to BPXP. (*See, e.g.,* Ex. 7, Services and Agency Agreement.)[6] BPXP expects the evidence will establish that BPXP itself provided most of the resources and capabilities necessary to the coordinated response effort and itself spent a total of more than $14 billion on response and cleanup activities in connection with the *Deepwater Horizon* Incident.

---

[5] *Dean Dairy* also presents a very different situation from the one in this case. Unlike the multi-billion penalty sought by the United States here, the penalty assessed in *Dean Dairy* was approximately one-fifth of the subsidiary's assets (as distinguished from the parent's assets). *Dean Dairy*, 150 F.3d at 261, 269 (imposing penalty of $4,031,000 where "there was also evidence" that Dean Dairy, the subsidiary, "had over twenty million dollars in assets in fiscal year 1995").

[6] The United States correctly asserts that the Gulf Coast Restoration Organization ("GCRO") is responsible for addressing "aspects of the response." (USA Br. at 7). But the United States again errs in suggesting this fact supports its assertion that "BP p.l.c. managed and funded the response action." (*See id.*). Instead, BPXP expects that the evidence will show that **BPXP** has borne the vast majority of the cost of response and cleanup activities. The United States' argument that BP p.l.c. "managed and funded the response action" simply because BP p.l.c.'s then-CEO Tony Hayward made an announcement regarding the establishment of the GCRO in June 2010 is mistaken. (*See id.*). Moreover, while the United States is incorrect about the terms of BPXP's affiliates' involvement in the response efforts, it does not argue that the response violated the Clean Water Act. Nor does the United States explain why the involvement of affiliates in a response effort should increase the penalty against the alleged violator. To the contrary, increasing a penalty based on the involvement of an alleged violator's affiliates would be bad public policy, as it would discourage affiliates from becoming involved in responses in circumstances where a subsidiary was an alleged violator.

BPXP's efforts to mitigate the effects of the spill, including its efforts to utilize personnel and resources from other BP affiliates and contractors, are relevant under the CWA.  *See United States v. CITGO Petroleum Corp.,* No. 08-893, 2011 WL 10723934 (W.D. La. Sept. 29, 2011) (court heard testimony from CITGO contractors regarding the company's spill response efforts, including deploying boom, skimming, personnel, and other shoreline protection and concluding that CITGO's "well executed clean-up effort" effectively mitigated damage from the spill and resulted in strong environmental recovery) *rev'd on other grounds by* 723 F.3d 547, 550 (5th Cir. 2013); *see also United States v. Egan Marine Corp.*, No. 08 C 3160, 2011 WL 8144393, at *7 (N.D. Ill. Oct. 13, 2011) (defendant's clean-up effort "cuts in favor" of reduced CWA penalty). In this regard, the resources and personnel which came from other BP entities in the response – like the involvement of third-party contractors enlisted and compensated by BPXP – also may be relevant to the Court's consideration of the mitigation factor.  In its proposal to the United States, BPXP offered to produce documents sufficient to summarize which entity paid for Macondo-related mitigation costs.

### C. Degree of Culpability

Regarding the culpability factor, the United States argues that other BP Group entities are relevant to the extent prior incidents involving those entities "put [BPXP] on notice" of the consequences of allegedly risky behavior.  (*See* USA Br. at 14).  This, however, is the sort of attenuated and over-generalized connection the Court rejected in excluding evidence of prior accidents from Phase 1 of the trial.  (*See* Order and Reasons Regarding Motions *in Limine* to Exclude Instances of Prior Alleged Improper Conduct and Prior Adverse Criminal, Civil or Regulatory Proceedings (Rec. Doc. 5634) at 5 (finding the incidents involving other BP Group affiliates and the Macondo incident to be "vastly different" and the connection between them argued by the United States to be "an over-generalization")).

As explained in BPXP's pending motion *in limine*, the Court should not permit the introduction of any additional evidence during the Penalty Phase relating to the "degree of culpability involved," regardless of whether such evidence relates to BPXP or another BP

11

affiliate. (*See* BPXP's Combined Motion *in Limine* to Exclude From the Penalty Phase (1) Additional Evidence of Culpability and (2) Evidence Relating to Unrelated Prior Incidents (Rec. Doc. 12347)). Courts evaluate a party's "degree of culpability" by looking to the evidence concerning the party's level of fault, including evidence of whether the party was negligent or grossly negligent in causing the violation. (*See id.* at 5-6). Here, issues relevant to the various parties' levels of fault were fully tried in Phases 1 and 2. The Court should not permit any additional evidence or discovery with respect to this factor during the Penalty Phase, regardless of the BP entity involved.

>    D.   **Seriousness of the Violation**

The primary dispute under the "seriousness" factor relates to the United States' refusal to produce documents relating to the environmental impact of the spill. With respect to this factor, the United States has not pointed to any evidence that relates to BPXP's affiliates that does not also relate to BPXP.

>    E.   **Any Economic Benefit to the Violator Resulting from the Violation**

The United States makes no mention of the "economic benefit" factor in its motion and thus provides no explanation of how BP Group affiliates other than BPXP could be relevant to this factor. Nor could it do so under the applicable statutory language and case law. The "economic benefit" statutory factor directs the Court to consider the economic benefit "***to the violator***" – which is only alleged to be BPXP. *See* 33 U.S.C. § 1321(b)(8) (emphasis added). Moreover, in considering the "economic benefit" factor, courts do not include any purported benefit to unnamed parents or affiliates. The court that has addressed this issue most directly concluded that economic benefits allegedly received by a non-party parent company are not relevant to the "economic benefit" factor:

> Plaintiffs do not cite, nor has the court's research located, any controlling authority which supports considering a parent corporation's financial statements in determining the economic benefit of a subsidiary's violation of the Clean Water Act where the parent corporation is not named as a party. … [T]he Third Circuit has specifically ruled that the economic benefit calculation is intended, at its base, to identify the benefit realized by a violator . . . In this matter, it is undisputed that the violator is [subsidiary], not [parent], and that any penalty imposed in this matter would be imposed on [subsidiary], not [parent]. As this court reads the

12

case law, the economic benefits allegedly received by non-parties, here [parent], are not relevant at this juncture.

*Adams v. Teck Cominco Alaska, Inc.*, 399 F. Supp. 2d 1031, 1039 (D. Alaska 2005) (internal quotations omitted).[7]

### F. Any Other Penalty for the Same Incident

With respect to this factor, the United States has not pointed to any evidence that relates to BPXP's affiliates that does not also relate to BPXP. Thus there is no ripe dispute relating to this factor.

### G. History of Prior Violations

As discussed in BPXP's motion *in limine* regarding this factor, the Court should consider only "prior violations" by BPXP in assessing any CWA penalty in this case. As explained in that motion, any "prior violations" by affiliated companies other than the alleged violator are legally irrelevant in setting a CWA penalty, and BPXP has located no case law that holds otherwise. Moreover, any prior violations should encompass only prior violations of Section 311 of the CWA and cannot encompass regulatory infractions by BP Group entities without limit.[8]

### H. Other Matters as Justice May Require

With respect to the "other matters" factor, the United States motion points to no discovery or trial issue that implicates the relevance of the BP Group as opposed to BPXP. The United States makes an unsupported appeal to the Court's discretion under this factor, but is unable to provide any explanation for *why* the Court should exercise its discretion as the United States desires. (*See* USA Br. at 15). As made clear in BPXP's case management brief, this factor is not an unlimited tool to allow the introduction of irrelevant matters, but should generally be interpreted to include only genuinely *other* matters not already addressed or otherwise

---

[7] *See also United States v. Allegheny Ludlum Corp.*, 366 F.3d 164, 178 (3d Cir. 2004) (economic benefit factor is "intended, at its base, to identify the benefit realized by a *violator* …") (emphasis added); *Dean Dairy*, 150 F.3d at 267–68 (affirming trial court's evaluation of economic benefit factor that focused solely on benefit realized by subsidiary company and only considered parent corporation's financial statement in context of the economic impact factor).
[8] Contrary to the United States' suggestion, Judge Vance's order accepting BPXP's criminal plea is not to the contrary. Judge Vance was applying the federal sentencing statutes in her order, not the enumerated penalty factors under the CWA, and the relevance of any of BPXP's affiliates' actions to the Penalty Phase is governed by those factors.

precluded in the specifically enumerated factors. The United States' argument regarding this factor provides no support for the ruling it seeks.

## CONCLUSION

The United States' motion is premature and overbroad. Issues concerning discovery disputes or the admissibility of specific evidence should generally be addressed through discovery motions or motions *in limine* at a later stage, rather than through a single, sweeping motion before the issues have even begun to be developed through discovery.

The United States has failed to provide justification for the exceedingly broad and general order it seeks from the Court. BPXP has *not* argued that the actions of its affiliates are wholly irrelevant to the Penalty Phase for all purposes, and BPXP has *not* argued that its affiliates are relevant only to the mitigation factor as the United States suggests. On the other hand, a blanket conclusion that actions and finances of BPXP's affiliates are categorically relevant for all factors is unwarranted, despite the broad brush with which the United States attempts to paint the issue. Finally, the United States has provided no support for allowing the intrusive discovery it has proposed regarding actions by BPXP affiliates that are not relevant to any of the specific penalty factors. Its motion should therefore be denied.

March 6, 2014                                                                 Respectfully submitted,

   */s/ Don K. Haycraft*
Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 662-5985

***ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.***

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 6th day of March, 2014.

      /s/ Don K. Haycraft
      Don K. Haycraft