# EXHIBIT 1

*Attorney Work Product*
*Privileged and Confidential*
*Confidential Settlement Communication*
*Subject to FRE 408*
*Preliminary Draft Date:  2014.02.13*

**CWA Penalty Phase -- Economic Impact/Mitigation:  DRAFT Proposal to DOJ**

At our January 29, 2014 meeting, the DOJ asked BPXP to send in writing its position on the relevance of the BP Group to the economic impact factor and the mitigation factor, including as it relates to the United States' document requests to BPXP, so that the parties could explore a compromise.  Accordingly, BPXP makes the proposal below for compromise purposes, in the hope that the parties can agree on the scope of a limited, reasonable BPXP document production in response to certain of the United States' requests.

First, if a compromise is to be reached on the economic impact factor, the DOJ must likewise agree that the roles and activities of BPXP and its affiliates in the DWH Response are relevant to the "mitigation" factor.  While BPXP was the OPA Responsible Party for purposes of responding to the Incident, BPXP marshaled resources from its affiliates and from contractors in responding to the spill.

Second, the "economic impact" document requests served by the United States are extremely overbroad.  The relevant Clean Water Act factor involves the "economic impact of the penalty *on the violator*."  33 U.S.C. § 1319(d) (emphasis added).  BPXP is the sole alleged violator, the sole defendant and the only party that would be liable for a Clean Water Act judgment.  BPXP will argue that BPXP should be the focus of any analysis by the court at the Penalty Phase trial under the "economic impact on the violator" factor, including any "ability to pay" aspects of that factor.  BPXP objects to the United States' economic-impact-related document requests to the extent they call for documents that relate to the BP Group, but are not reasonably calculated to lead to the discovery of admissible evidence relating to the "economic impact of the penalty on [BPXP]."  Depending on the specifics of the request as discussed below, requests for documents relating to the BP Group may be reasonably calculated to lead to the discovery of admissible evidence only to the extent they bear upon the "economic impact of the penalty on [BPXP]," such as documents sufficient to show loans or other material transactions between BPXP and other BP Group entities.

Third, we acknowledge (without agreeing) that the United States' position is that documents relating to the financial position of the BP Group are broadly relevant to the "economic impact" penalty factor, including any "ability to pay" aspects of that factor.  We also acknowledge (without agreeing) that the United States' position is that many of its document requests are relevant to more than one penalty factor, and that some requests may also relate to "other matters as justice may require."

Fourth, as a pathway to compromise and to reasonable, limited discovery on the economic impact factor, BPXP is willing to undertake a reasonable search for non-privileged documents in the following categories, subject to an agreement to narrow the scope of the request, including with respect to timeframe:

KE 29801692.3

1. contracts relating to the response (Request 3);[1]

2. documents sufficient to summarize what entity paid for Macondo-related costs (Requests 4, 32, 39, 40, 41, 42);

3. documents sufficient to summarize loans and other material transactions between BPXP and other BP entities from 2009 to the present (Requests 13, 38);

4. organizational charts sufficient to show the organizational structure as it relates to BPXP (Request 23);

5. certain financial data and financial metrics for BPXP, BP Corporation North America Inc. ("BPCNAI"), and BP p.l.c. on a sufficient-to-show basis from 2009 to the present (Requests 5, 7, 14, 15, 16, 25, 31);

6. documents sufficient to show credit ratings for BPCNAI and BP p.l.c. from 2009 to the present (Request 35);

7. documents sufficient to show BP Group guarantees of BPXP's Macondo-related obligations (Requests 26, 27, 34);

8. documents sufficient to show BP p.l.c.'s dividend payment for each year from 2009 to the present (Request 24);

9. documents sufficient to show loans made to or from BPXP and revolving credit agreements related to those loans for each year from 2009 to the present (Requests 29, 30); and

10. documents sufficient to show payments made pursuant to BPCNA's indemnification agreement with Anadarko for Macondo well costs, as well as the indemnification agreement (Request 33).

Other requests are not reasonably calculated to lead to the discovery of admissible evidence.  These include, for example:

11. payroll records for various individuals (Requests 1, 2, 21);

12. performance evaluations for various individuals (Request 22);

---

[1] In prior Phases, BPXP produced more than 18,000 documents relating to spill response contracts, which the United States may find at the following Bates ranges:  BP-HZN-2179MDL05223499 - BP-HZN-2179MDL05227426, BP-HZN-2179MDL05836738 - BP-HZN-2179MDL05852080, BP-HZN-2179MDL06727924 - BP-HZN-2179MDL06741921, BP-HZN-2179MDL06865993 - BP-HZN-2179MDL06867256, BP-HZN-2179MDL06907950 - BP-HZN-2179MDL06918102, BP-HZN-2179MDL06940662 - BP-HZN-2179MDL06941287, and BP-HZN-2179MDL07147963 - BP-HZN-2179MDL07159411.  BPXP requests that the United States review these documents and inform BPXP if it believes further production of response contracts are required.  In the event the United States does seek additional response documents, BPXP reserves its right to object to any such requests as overly broad and unduly burdensome.

13. tax returns and other requests for which the United States has not shown that the relevant information would not be captured in the entities' financial statements (Request 6);

14. documents identifying the Board members of BP affiliates (Request 17);

15. correspondence and other documents from or to Board members of BPXP and other BP affiliates (Request 18);

16. Board meeting and officer meeting minutes, notes, resolutions, and similar documents (Requests 19, 20);  and

17. Emails of BP directors, officers, and employees.

Please let us know whether the United States will agree that:  (a) the actions of the BP Group are relevant to the mitigation factor where BPXP marshaled BP Group resources to respond; (b) subject to an agreement to narrow the scope of the requests, including with respect to timeframe, BPXP will undertake a reasonable search for non-privileged documents in categories (1)-(10), as outlined above; (c) the United States will forgo its requests in categories (11)-(17); and (d) both parties will preserve their positions regarding the relevance of the BP Group to the various penalty factors other than the mitigation factor, including the factor addressing the "economic impact of the penalty on the violator."

Other requests not discussed in this email appear to relate to other factors, and should be discussed separately by the parties.