# EXHIBIT 17

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, | *  *  MDL No. 2179  *  *  Section: J  *  *  Judge Barbier  *  *  Magistrate Judge Shushan  *  * |
| This Pleading applies to: | |
| *All Cases* | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## BP's PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Matthew T. Regan, P.C.
Hariklia Karis, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL  60654
Telephone:  312-862-2000
Facsimile:  312-862-2200

Timothy A. Duffy, P.C.
R. Christopher Heck
James Sollee Buino
Elizabeth R. Sheyn
David R. Freedman
Vanessa Barsanti
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL  60654
Telephone:  312-862-2000
Facsimile:  312-862-2200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, LA   70139-5099
Telephone:  504-581-7979
Facsimile:  504-556-4108

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC   20004-2401
Telephone:  202-662-5985
Facsimile:  202-662-6291

*Attorneys for BP Exploration & Production Inc., BP America Production Co., and BP p.l.c.*

June 21, 2013

2933. Because none of BP's conduct reached the level of wanton, willful, or outrageous conduct, especially when considered against the many safety precautions taken by BP, *see* §§ XI; XV, punitive damages against BP should not be awarded.[37]

## XVII. BP P.L.C. IS NOT LIABLE UNDER ANY LAW.

2934. BP p.l.c. cannot be liable under either OPA or the CWA. BP p.l.c. was not the lessee or permittee of MC252, has no involvement with the *Deepwater Horizon* vessel, and had no role as the owner, operator, or person-in-charge of any vessel or facility. 33 U.S.C. § 2701(32); 33 U.S.C. § 1321(b)(7)(A).

2935. No BP p.l.c. employees were involved in the events that caused or allegedly caused the Incident. *See* § I.A.1. Therefore, there is no basis for holding BP p.l.c. directly liable under maritime law.

2936. Nor is there any basis for holding BP p.l.c. liable under a theory of alter ego or piercing the corporate veil. "A corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as 'piercing the corporate veil.'" *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013). To justify piercing the corporate veil, a parent's control over a subsidiary must "amount[] to total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *Baker v. Raymond Int'l Inc.*, 656 F.2d 173, 181 (5th Cir. 1981); *see also Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir. 2008); *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997). To determine whether such domination exists, a court

---

[37] To the extent BP is found liable for punitive damages, BP reserves all arguments regarding the maximum amount of such damages. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 513, 515 n. 28 (2008).

614

applying federal maritime law applies the same factors as in shoreside law, such as grossly inadequate capitalization of the subsidiary, intermingling of funds, failure to maintain separate books and records or other formalities, overlapping officers, directors and other personnel; common office space, and whether dealings between the two are at arm's length. *See e.g.*, *Baker*, 656 F.2d at 180; *Vitol*, 708 F.3d at 544; *Williamson*, 542 F.3d at 53.

2937. Here, other parties have failed to present evidence on the factors necessary to meet the extraordinary circumstances for piercing the corporate veil. For example, there has been no evidence, or even argument, that BP is inadequately capitalized, that BP and BP p.l.c. co-mingle funds, that BP does not properly maintain its books and records, that BP and BP p.l.c. have overlapping directors or other space, and so forth. Without such evidence, there is no basis to hold BP p.l.c. liable for the actions of its separate corporate subsidiaries BPXP and BPAP. Furthermore, the limited evidence in the record on these issues rebuts any claims of alter ego. For example, BP's payments of billions of dollars to claimants and for clean up costs rebuts any allegations that it was undercapitalized, and BP and BP p.l.c. are located in separate offices (Houston, Texas and London, England, respectively).

2938. Moreover, that BP p.l.c. generally set policies for BP does not serve as a basis for imposing liability on BP p.l.c.. "Ownership of a controlling interest in a corporation entitles the controlling stockholder to exercise the normal incidents of stocks ownership, such as the right to choose directors and set general policies, without forfeiting the protection of limited liability." *Baker*, 656 F.2d at 180; *see also Bestfoods*, 524 U.S. at 72 ("Activities that involve the facility but which are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability.");

615

*Administrators of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 331 (5th Cir. 2011) (holding that parents coordinating with subsidiary on regarding "organisational, budget and technical matters" and providing "general guidance" to its subsidiaries was not sufficient to pierce the corporate veil); *Selser v. Pac. Motor Trucking Co.*, 770 F.2d 551, 555 (5th Cir. 1985) ("Similarly, the parent may properly exercise its right to choose directors and set general policies without forfeiting its limited liability.") (internal quotations omitted); *Doe v. Unocal Corp.*, 248 F.3d 915, 926-28 (9th Cir. 2001); *City of Greenville, Ill. v. Syngenta Crop Prot., Inc.*, 830 F. Supp. 2d 550, 555-56 (S.D. Ill. 2011). Thus, BP p.l.c. cannot be held liable for setting general safety policies for BP and its other subsidiaries. Furthermore, as explained in §§ XI; XV.D.1-XV.D.2 the safety policies followed by BP satisfied the standard of care.

2939. These same conclusions apply to BP America Inc., BP Company North America Inc., and BP Corporation North America Inc. (all of which are holding companies with no involvement in the Macondo well) and BP Products North America Inc. (which is an operating company that had no involvement in the Macondo well), or any other entity in the BP corporate family besides BPXP and BPAP.

## XVIII. TRANSOCEAN'S LIABILITY.

2940. The PSC (on behalf of private plaintiffs), Alabama, and Louisiana brought claims against Transocean under OPA. Rec. Doc. 1128 ¶¶ 678-90; Rec. Doc. 1872 ¶¶ 205-19; Rec. Doc. 2031 ¶¶ 153-67. The United States brought claims under both OPA and the CWA against Transocean, but has since settled those claims. Civ. A. No. 2:10-cv-04536, Rec. Doc. 1; Rec. Doc. 8608. The PSC, Alabama, Louisiana, and Halliburton brought claims of negligence, gross negligence, and willful misconduct against Transocean under maritime law. Rec. Doc. 1128 ¶¶ 569-636; Rec. Doc. 1872 ¶¶ 94-147; Rec. Doc. 2031 ¶¶ 239-48, 386-91. BP brought a claim of maritime negligence against Transocean, or gross negligence and/or gross fault as may be