# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

---

In re:  Oil Spill by the Oil Rig
      "Deepwater Horizon" in the Gulf
      of Mexico, on April 20, 2010

This Pleading Relates To
- **10-4182** (*Alabama v. BP*)
- **10-4183** (*Alabama v. Transocean, et. al*)
- **13-2645** (*Alabama v. Anadarko & MOEX*)
- **13-2646** (*Alabama v. Transocean*)
- **13-2647** (*Alabama v. Halliburton*)
- **13-2813** (*Alabama v. BP*)

MDL No. 2179
SECTION: J

JUDGE BARBIER
MAGISTRATE SHUSHAN

*Oral Argument Requested*

---

# STATE OF ALABAMA'S OPPOSITION TO
# BP'S MOTION TO STRIKE ALABAMA'S JURY TRIAL DEMAND

LUTHER J. STRANGE
  *Attorney General*

COREY L. MAZE*
  *Special Deputy Attorney General*
  *Counsel of Record

WINFIELD J. SINCLAIR
  *Assistant Attorney General*

Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130

Phone:    (334) 242-7300
Fax:      (334) 242-4891
Email:    cmaze@ago.state.al.us

*Attorneys for the State of Alabama*

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ......................................................................... 1

STATEMENT OF THE CASE ............................................................................... 3

  A. Alabama's Pleading History .................................................................... 3

  B. Alabama's OPA Economic Damage Claims ............................................. 6

ARGUMENT ...................................................................................................... 7

  I.  Alabama's OPA Claims Invoke the Court's Federal Question Jurisdiction, not its Admiralty Jurisdiction ........................................................................ 7

  II.  The Seventh Amendment Entitles Alabama to a Jury Trial on All of Its OPA Economic Damage Claims .................................................................. 10

    A. If Any of Alabama's OPA Claims Are "Legal" in Nature, then All of Alabama's OPA Claims Can Be Tried to the Jury ........................................ 11

    B. *Law v. Equity*: Tort Actions for Money Damages were Common Law Actions, not Equitable Ones ........................................................................ 11

    C. *Law vs. Admiralty*: The English Common Law Courts, not Admiralty Courts, Had Jurisdiction Over Land-Based Injuries in 1791 ......................... 16

    D. Three Courts Have Held that an OPA Damages Case Was Entitled to a Jury; None Have Held Otherwise ................................................................ 22

  III.  Pleading General Maritime and Limitation Claims Did Not Strip Alabama's Seventh Amendment Right to a Jury Trial for its OPA Claims .................... 24

    A. Plaintiffs Can Plead General Maritime Claims under Rule 9(h) Without Forfeiting Their Right to a Jury Trial on OPA Damages Claims .................... 24

    B. Plaintiffs Can Participate in a Limitation Bench Trial and Still Receive a Jury Trial for OPA Damages Claims ......................................................... 25

      1.  Once Limitation Is Decided, Claimants Can Elect to Leave the Limitation Action to Vindicate their Constitutional Right to a Jury ...................... 26

      2.  OPA Is Strict Liability; Thus, Alabama's OPA Case Does Not Present Factual Issues Decided in the Phase 1-2 Trial ................................... 29

      3.  Alabama Did Not Waive Its OPA Jury Trial When It Correctly Noted that Transocean's Limitation Trial Must Be Tried to the Bench ................. 30

      4.  The Practical Effects Argument Favors a Jury Trial ........................... 31

  IV.  The Court Has a Choice: Try Just Alabama's OPA Compensatory Claims to a Jury, or Try Alabama's OPA and General Maritime Compensatory Claims to a Jury ............. 32

CONCLUSION .................................................................................................. 33

**TABLE OF AUTHORITIES**

## Cases

*Apache Corp. v. Global Santa Fe Drilling Co.*, 435 Fed.Appx. 322 (5th Cir. July 13, 2011) ..... 10

*Askew v. American Waterways Ops., Inc.*, 411 U.S. 325 (1973) ......................................... 18, 22

*Barker v. Hercules Offshore, Inc.*, 713 F.3d 208 (5th Cir. 2013) ................................................. 9

*Beiswenger Enterprises Corp. v. Carletta*, 86 F.3d 1032 (11th Cir. 1996) ................................ 30

*Bouchard Transp. Co. v. Updegraff*, 147 F.3d 1344 (11th Cir. 1998) ...................................... 26

*Chauffers, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558 (1990) ............... 12, 15

*City of Monterey v. Del Monte Dunes*, 526 U.S. 687 (1999) ............................................... *passim*

*City of Morgantown, W.Va. v. Royal Ins. Co.*, 337 U.S. 254 (1949) ........................................... 2

*Clausen v. M/V Carissa*, 171 F.Supp.2d 1127 (D.Or. 2001) ................................................... 23

*Curtis v. Loether*, 415 U.S. 189 (1974) ......................................................................... 8, 12, 16

*Fecht v. Makowski*, 406 F.2d 721 (5th Cir. 1969) ................................................................ 2, 26

*Fitzgerald v. U.S. Lines Co.* 374 U.S. 16 (1963) ................................................................ 11, 24

*Granfinanciera v. Nordberg*, 492 U.S. 33 (1989) ..................................................................... 11

*Great–West Life & Annuity Ins. v. Knudson*, 534 U.S. 204 (2002) ................................ 12, 13, 23

*In re Wood's Petition*, 230 F.2d 197 (2nd Cir. 1956) ............................................................... 27

*In re: Deepwater Horizon*, 2014 WL 700065 (5th Cir. Feb. 24, 2014) ..................................... 10

*Lake Tankers Corp. v. Henn*, 354 U.S. 147 (1957) .............................................................. 25, 31

*Le Caux v. Eden*, 2 Doug 602 (1781) ...................................................................................... 19

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) ........................... 28

*Lindo v. Rodney*, 2 Doug 613 (1782) .................................................................................. 19, 20

*Luera v. M/V Alberta*, 635 F.3d 181 (2011) ..................................................................... *passim*

*Narragansett Fishing Corp. v. F/V Bob n Barry*, 425 F.2d 733 (1st Cir. 1970) ......................... 27

*Pernell v. Southall Realty*, 416 U.S. 363 (1974) ..................................................................... 14

*Pershing Auto Rentals, Inc. v. Gaffney*, 279 F.2d 546 (5th Cir. 1960) ................................ *passim*

*Pickle v. Char Lee Seafood*, 174 F.3d 444 (4th Cir. 1999) ....................................................... 27

*Ross v. Bernhard*, 396 U.S. 531 (1970) .................................................................................. 14

*South Port Marine, LLC v. Gulf Oil Ltd. Partnership*, 234 F.3d 58 (1st Cir. 2000) ................... 22

*Star v. Rookesby*, 1 Salk. 335 (1711) .................................................................................... 14

*The Admiral Peoples*, 295 U.S. 649 (1935) ....................................................................... 18, 22

*The Plymouth*, 70 U.S. 20 (1865) .................................................................................... 18, 22

*The Silver Palm*, 94 F.2d 776 (9th Cir. 1937) ....................................................................... 27

*The Siren*, 80 U.S. 389 (1871) ............................................................................................. 19

*Tull v. United States*, 481 U.S. 412 (1987) ..................................................................... *passim*

*United States v. Viking Resources, Inc.*, 607 F.Supp.2d 808 (S.D. Tex. 2009) ............... 12, 23, 24

*Wheeler v. Marine Navigation Sulphur Carriers Inc.*, 764 F.2d 1008 (4th Cir. 1985). ......... 27, 28

## Statutes

28 U.S.C. §1331 ................................................................................................ *passim*

28 U.S.C. §1333 ................................................................................................ *passim*

28 U.S.C. §1407 ...................................................................................................... 28

33 U.S.C. §1319 ........................................................................................................ 9

33 U.S.C. §2701 ............................................................................................. 3, 14, 15

33 U.S.C. §2702 ................................................................................................ *passim*

33 U.S.C. §2704 ...................................................................................................... 26

33 U.S.C. §2717 ..................................................................................................... 7, 9

33 U.S.C. §2751 ........................................................................................................ 8

43 U.S.C. §1331 ........................................................................................................ 9

46 U.S.C. §30101 .................................................................................................... 19

46 U.S.C. §30501 .................................................................................................... 28

## Other Authorities

*Benedict on Admiralty* (7th rev. ed. 2004) ................................................. 17, 18, 22

W. Blackstone, *Commentaries on the Laws of England* (1768) ........................... 13, 14

H. Conf. Rep. 80-1523 (1948) ................................................................................ 19

Restatement (Second) of Torts §821D ................................................................... 13

Thomas J. Schoenbaum, *Admiralty and Maritime Law* (5th ed.) ...................... *passim*

## Rules

Fed. R. Civ. P. 9(h) .......................................................................................... *passim*

Fed. R. Civ. P. 15(a)(2) .......................................................................................... 10

Fed. R. Evid. 702 .................................................................................................... 21

ALABAMA'S BRIEF IN OPPOSITION TO
BP'S MOTION TO STRIKE ALABAMA'S JURY TRIAL DEMAND

SUMMARY OF THE ARGUMENT

Three courts have held that the Seventh Amendment entitles an OPA claimant to a jury trial; none have stricken an OPA jury demand. *See infra* Part II(C).   This case should make it 4-0.

Alabama pleaded its OPA claims under federal question jurisdiction (28 U.S.C. §1331), rather than admiralty jurisdiction (28 U.S.C. §1333) and Rule 9(h).   Our choice renders BP's primary argument regarding admiralty jurisdiction irrelevant.   *See* BP Br. 3-11.   The Court could have exercised admiralty jurisdiction over Alabama's OPA claims, if we had chosen to plead it that way.   But Alabama chose a different path, specifically designed to protect our right to a jury trial: "[A] litigant is free to invoke federal question or diversity jurisdiction, if applicable, even in an admiralty case. The chief advantage of this course is to provide the basis for a jury trial." 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 3-2 (5th ed.).   Once Alabama's case is viewed through the proper jurisdictional lens, two questions control its outcome:

**1.  *Does the Seventh Amendment Guarantee a Jury Trial in a Statutory Tort Action for Money Damages?***

Yes.   In fact, the following synopsis by Justice Scalia, which was approved by the Court as "comprehensive and convincing," shows just how "obvious" the answer is:

> The Seventh Amendment's right to jury trial attaches to a statutory cause of action that, although unknown at common law, is analogous to common-law causes that were tried before juries. The initial Seventh Amendment question before us, therefore, is whether a tort action seeking money damages was a "suit at common law" for which a jury trial was provided.   The answer is obviously yes. Common-law tort actions were brought under the writs of trespass and trespass on the case. Trespass remedied direct, forcible tortious injuries, while the later developed trespass on the case remedied indirect or consequential harms. Claims brought pursuant to these writs and seeking money damages were triable to juries at common law. It is clear from our cases that a tort action for money damages is entitled to jury trial under the Seventh Amendment.

1

*City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 729 (1999) (Scalia J., concurring) (internal citations omitted); *id.* at 709 (Court majority agreeing with Justice Scalia's analysis).

Alabama's OPA claim for property damage is like a common law action for "trespass" because BP's oil entered and directly injured our property.  *See id.*  Alabama's OPA claims for lost revenue, response costs, and increased service costs are like common law actions "on the case" because each was a consequential result of BP's oil entering and damaging property.  *Id.*

### 2.  *What about Alabama's General Maritime Claims and its Claim in Limitation?*

They change nothing. The Fifth Circuit has held that a claimant may plead Rule 9(h) admiralty claims and claims with non-admiralty sources of jurisdiction in the same complaint, then choose whether to try all of his claims to a jury or to the bench in admiralty.  *See Luera v. M/V Alberta*, 635 F.3d 181 (5th Cir. 2011).   Alabama not only understood the *Luera* rule, we quoted from it when demanding a jury trial in our amended complaint.

As for Alabama's participation in Transocean's limitation action, five circuit courts of appeal—including the Fifth Circuit—have stated that once a limitation action ends, the claimant can elect to either remain in the limitation action or return back to his chosen forum to empanel a jury.  *See, e.g., Pershing Auto Rentals, Inc. v. Gaffney*, 279 F.2d 546, 552 (5th Cir. 1960); *Fecht v. Makowski*, 406 F.2d 721, 722-23 (5th Cir. 1969).   By telling the Court that it can force Alabama to try its OPA case as part of the limitation bench trial, BP invites the Court to violate circuit precedent, the "savings to suitors" clause, our statutory *Lexecon* right to return to the transferor district, and our Seventh Amendment right to a jury trial—the last of which is "subject to the most exacting scrutiny on appeal."  *City of Morgantown, W.Va. v. Royal Ins. Co.*, 337 U.S. 254, 258 (1949).

S<span>TATEMENT OF THE</span> C<span>ASE</span>

Alabama has made no bones about it:   We want a jury trial on our OPA economic damage claims in the transferor district.   We have clearly and consistently pleaded that desire.

### A.  Alabama's Pleading History

1.  *Alabama's Original Complaints*:   Alabama filed two complaints in the Middle District of Alabama on August 12, 2010; one against the BP Parties, the other against Transocean, HESI, and others.  *See* EDLA Case Nos. 10-4182, Doc. 1-1 ("2010 BP Complaint"), 10-4183, Doc. 1-1 ("2010 TO Complaint").   The State pleaded a cause of action under OPA for economic and natural resource damages, *see* 2010 BP Complaint at ¶¶ 57-61, and four causes of action under Alabama law.  *See id.* at ¶¶28-56.

Alabama pleaded two sources of jurisdiction over its OPA claims:   (1) federal question jurisdiction under 28 U.S.C. §1331 and (2) diversity jurisdiction under 28 U.S.C. §1332(a)(1). *See id.* at ¶2.   Alabama demanded "[a] trial by jury as to all Defendants and on all claims."   *Id.* at p.18.   Alabama's original complaints were transferred into the MDL on November 4, 2010.

2.  *Transocean's Limitation Complaint*:   When we arrived, the limitation action was well under way.   Transocean filed its limitation petition on May 13, 2010, and in it, Transocean pleaded admiralty jurisdiction under 28 U.S.C. §1333 and invoked Rule 9(h).  *See* EDLA Case No. 10-2771, Doc. 1 at ¶¶1, 24 ("TO Limitation Petition").   On June 14, 2010, District Judge Keith P. Ellison enjoined the prosecution of all claims against TO in all other courts, *see* SDTX Case No. 10-1721, Doc. 131 at 4 ("Ellison Order"), but specified that "this injunction does not apply to any claims asserted against [Transocean] by the United States, Indian Tribes, or a State, or a political subdivision of a State under the Oil Pollution Act, 33 U.S.C. §2701, *et. seq.*"   *Id.*

The limitation action was transferred to this Court on August 16, 2010 to be part of MDL 2179.  *See* EDLA Case No 10-2771, Doc. 1.   The Court held its initial pretrial conference with

3

liaison counsel on September 16, 2010—*i.e.* two months before Alabama joined the MDL and four months before AG Strange became States' liaison counsel.  *See* PTO 26.  At this initial conference, "[t]he Court scheduled the Limitation trial, including issues of liability and allocation of fault, to take place commencing in October, 2011."  MDL 2179 Doc. 312.  In other words, Alabama transferred into a *fait accompli*; the limitation and liability bench trial was inevitable. The question was how we would deal with it.

3.  *The Fifth Circuit's <u>Luera</u> Decision*:  The Fifth Circuit lighted our path when it released its decision in *Luera v. M/V Alvenus*, 635 F.3d 181 (5th Cir. 2011), on March 7, 2011.  We discuss *Luera* in detail *infra* at 24-25.  Relevant here, the Fifth Circuit held that a claimant who pleaded both Rule 9(h) admiralty claims and diversity jurisdiction claims in the same complaint had the right to elect whether to proceed to the bench in admiralty or to a jury on all claims.  The Fifth Circuit rejected forcing a claimant into a "Hobson's Choice" between pleading Rule 9(h) claims or protecting the right to a jury trial on other claims "when a third option remains—upholding the constitutional guarantee of a jury trial" for the claims pleaded outside of admiralty jurisdiction and Rule 9(h).  *Id.* at 195.

4.  *Alabama's First Amended Complaint*:  Alabama amended its complaint on April 5, 2011; four weeks after *Luera* was released.  *See* MDL2179 Doc. 1872.  Alabama re-pled its OPA and state-law causes of action, *see id.* at ¶¶205-368, and added a new, separate section raising claims under general maritime law.  *See id.* at ¶¶94-204.  Alabama pleaded jurisdiction in separate paragraphs:  §1331 admiralty jurisdiction for our maritime claims, *id.* at ¶33, and §1332 federal question jurisdiction for our OPA claims, *id.* at ¶34.  Following *Luera*, Alabama acknowledged that Rule 9(h) governed our claims raised under §1331 admiralty jurisdiction, and we omitted any mention of Rule 9(h) for our OPA claims to protect our jury demand.  *Id.* at ¶33-34.

Alabama demanded a jury trial "for any and all claims pleaded herein in which a jury trial is available by law."   *Id.* at ¶369.   We recognized that the Transocean limitation action would be tried to the bench under Rule 9(h), and that we would be subject to that bench trial when Alabama filed a claim against Transocean.   *Id.* at ¶370.   We then added:

> Neither the State's pleading of general maritime claims, nor its participation in the bench trial(s) on limitation and liability issues common to the MDL amounts to a waiver of the State's right to a jury trial. ***The State cannot be forced into a Hobson's Choice***. Once the MDL Court determines the common factual and legal issues regarding limitation and liability, the State reserves its right to seek a remand of all remaining issues and claims that uniquely apply to the State of Alabama—including, but not limited to, the quantification of the State's damages—to the originating transferor district, the Middle District of Alabama, for a trial by jury.

*Id.* at ¶371.   (emphasis added).   We emphasize our use of "Hobson's Choice" because it was intentional.   We knew this argument would come, so we included language from *Luera* to highlight Alabama's conscious desire to invoke *Luera's* protection of the right to a jury trial for the claims we pleaded outside of Rule 9(h).

5. *Alabama's Claim in Limitation*:   Two weeks later, Alabama filed its answer and complaint in limitation against Transocean.   *See* EDLA Case No. 10-2771, Doc. 323 ("Alabama Limitation Answer").   Alabama did not raise an OPA claim against any party, and we pleaded as a defense that "Petitioner's Complaint does not apply to the State's claims arising under the Oil Pollution Act of 1990 ("OPA")."   *Id.* at 4.   Alabama again recognized that the limitation action would proceed under Rule 9(h), and we again reserved our jury trial rights over our other claims:

> By filing this Answer and Claim in Limitation, the State intends to be—and upon information and belief, will be—a participant in the MDL Court's February 27, 2012 limitation trial under Rule 9(h) of the Federal Rules of Civil Procedure. By participating in the aforementioned trial, the State does not waive its right to, and its request for, a trial by jury on the claims raised in it First Amended Complaint in MDL 2179.

*Id.* at ¶109.

5

6. *Alabama's 2013 Complaints*:   Alabama presented its OPA economic damages claims to BP for the last time in January 2013.   After 90 days passed without a response, Alabama filed new complaints against BP, TO, HESI, Anadarko, and MOEX in the Middle District of Alabama, and the complaints were transferred to MDL 2179 on May 15, 2013.   *See* EDLA Case Nos. 13-2645, 13-2646, 13-2647, 13-2813.   These new complaints raised the same claims, pleaded the same jurisdictional bases, and contained essentially the same reservation language (including *Luera's* use of "Hobson's Choice") as our April 2011 First Amended complaint.   *See* EDLA Case No. 13-2813, Doc. 1-2 at ¶¶236-38 ("2013 BP Complaint").

**B. Alabama's OPA Economic Damage Claims**

Alabama identified the following categories of OPA economic damages in its Rule 26(a) initial disclosures:

1.  Lost Tax Revenues;

2.  Lost Revenues to State Departments;

3.  Financial Impact to State Public Services;

4.  State Response and Recovery Costs; and,

5.  Physical Property Damage to State Lands (not NRD) and Resulting Increased Public Service Costs.[1]

*See* 33 U.S.C. §2702(b).   The question presented is whether the Seventh Amendment guarantees a jury trial for one or more of these statutory tort claims for money damages.

---

[1] The State's OPA claim for natural resource damages has not been a subject of Phase 1 discovery and was thus not a part of Alabama's initial disclosure.  In case the Court decides to try Alabama's OPA and general maritime compensatory damage claims simultaneously, as the *Luera* decision allows it to do, *see* Issue IV, the State also disclosed its general maritime claim for "economic losses resulting from damage to the State's Proprietary Interests." While Alabama has chosen to prosecute its OPA claims against BP (as Responsible Party), Transocean and HESI are also presently participating in pre-trial discovery.

ARGUMENT

> *"[T]he Seventh Amendment jury guarantee extends to statutory claims unknown to the common law, so long as the claims can be said to sound basically in tort, and seek legal relief."*
>
> - *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 709 (1999).

OPA creates a statutory tort claim for money damages, the quintessential form of "legal relief" entrusted to juries by the Seventh Amendment. *Id.* The analysis is that straightforward, and every court to apply it has reached the same conclusion. *See infra* at 22-23.

BP tries to complicate the matter by dragging admiralty into the equation; first by claiming that statutory OPA claims are admiralty claims *per se*, and if that fails, by claiming that a vessel owner can transform statutory OPA claims into admiralty claims by filing a petition to limit liability and forcing claimants into concursus. But admiralty has no business here. Congress crafted OPA's statutory cause of action to *free* claimants from admiralty's perceived impediments to swift and complete relief—impediments like proof of fault, the *Robin's Dry Dock* rule, and the Limitation Act. Alabama took advantage of OPA's statutory break from admiralty by pleading federal question jurisdiction, not admiralty jurisdiction. And Transocean's limitation action, which excludes OPA causes of action, cannot drag Alabama's OPA claims back into admiralty.

## I. Alabama's OPA Claims Invoke the Court's Federal Question Jurisdiction, not its Admiralty Jurisdiction.

BP's lead argument is that the Court has "admiralty jurisdiction" over Alabama's OPA claims, and claims brought under admiralty jurisdiction carry no right to a jury trial. BP Br. 3-11. But Alabama pleaded federal question jurisdiction under 28 U.S.C. §1331 to invoke the Court's original jurisdiction over OPA's statutory cause of action, *see* 33 U.S.C. §2717(b), and thus protect our demand that a jury decide our statutory rights: "The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights

7

and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis v. Loether*, 415 U.S. 189, 194 (1974); *see also* Schoenbaum, *Admiralty and Maritime Law* § 3-2 ("[A] litigant is free to invoke federal question or diversity jurisdiction, if applicable, even in an admiralty case. The chief advantage of this course is to provide the basis for a jury trial."). As master of the complaint, Alabama's choice controls the jurisdictional debate.

1.  *Estoppel*:   BP should be estopped from arguing that the Court does not have federal question jurisdiction over Alabama's OPA claims.   When answering Alabama's amended complaint, BP responded:  "The BP parties admit that proper OPA claims present federal questions pursuant to 28 U.S.C. §1331."[2]  MDL 2179 Doc. 4905 at 19.  BP should not be allowed renege on its jurisdictional admission.

2.  *"Admiralty Statute"*:   That said, BP has apparently switched course and now contends that OPA claims *exclusively* invoke the Court's admiralty jurisdiction.   BP proclaims OPA is an "admiralty statute;" thus, OPA claims are general maritime claims *per se* and fall exclusively under the Court's admiralty jurisdiction. BP Br. 3-5. That argument fails for at least three reasons.

First, OPA's plain language demonstrates that OPA claims are mutually exclusive with general maritime claims and that OPA claims do not invoke admiralty jurisdiction *per se*:

> (e)  Except as otherwise provided in this Act, this Act does not affect
>> (1) Admiralty or maritime law; or
>> (2) the jurisdiction of the district courts of the United States with respect to civil actions under admiralty and maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

33 U.S.C. §2751(e).  OPA's admiralty savings clause makes sense only if OPA claims are considered statutory causes of actions, distinct in nature from the "civil actions under admiralty and maritime jurisdiction" that Congress felt needed explicit saving.  *Id.*  Furthermore, that

---

[2]  The parties have agreed that the Defendants' answers to Alabama's First Amended Complaint (2011) will serve as their answers to Alabama's new complaints (2013), without need of re-filing the answers.

Congress granted state courts concurrent jurisdiction over OPA damages claims, *see* 33 U.S.C. §2717(c), lends credence to OPA raising a §1331 federal question, for which federal jurisdiction is not exclusive, rather than §1333 admiralty jurisdiction, where federal jurisdiction is exclusive.

Second, OPA economic damage claims are not governed by general maritime law.   OPA damages are strict liability; thus, an OPA claimant need not prove the hallmarks of maritime torts—duty, negligence, and damage to a proprietary interest—to garner relief.   Judge Ellison acknowledged OPA's freedom from admiralty when he excluded the States' OPA claims from the limitation injunction, *see* Ellison Order at 4, and this Court acknowledged OPA's break from admiralty when it held that Alabama raised distinct, viable compensatory claims under OPA (against RPs) and maritime law (against non-RPs).   MDL 2179 Doc. 4578 at 26.

Third, other marine-based statutes provide federal question jurisdiction, thereby opening the Seventh Amendment's door to a jury trial.   Take OCSLA and the CWA for example.   The CWA grants district courts original jurisdiction over penalty trials arising under the CWA, *see* 33 U.S.C. §1319(b), and the Supreme Court has held that the Seventh Amendment guarantees that CWA penalty actions be tried to a jury.[3]   *See Tull v. United States*, 481 U.S. 412 (1987).

OCSLA similarly vests federal district courts with original jurisdiction over OCSLA claims.   *See* 43 U.S.C. §1331(a)(1).   The Fifth Circuit has held that OCSLA's jurisdictional provision ensures that "OCSLA provides a basis for federal jurisdiction other than admiralty" and thus "both maritime jurisdiction and OCSLA jurisdiction may exist side-by-side."   *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013).   The Court reaffirmed this principle last week in the Louisiana DA's state-penalties appeal: "OSCLA Section 1333(a)(1) and admiralty

---

[3] Notably, OPA created the CWA penalty action raised by the United States against BP.   *See* Pub. L. 101-380, §4301 (now codified at 33 U.S.C. §1321(b)(7)).   If BP is correct that OPA's inherent nature as an "admiralty statute" precludes jury trials, then one of these oddities must be true:  (a) OPA silently eradicated the Supreme Court's decision in *Tull* that CWA penalty actions are subject to jury trials, or (b) OPA's penalty provisions are subject to a jury trial thanks to the *Tull* opinion, while OPA's damages provisions are not.

law constitute alternative, not overlapping, regimes of federal law." *In re: Deepwater Horizon*, 2014 WL 700065, at *5 (5th Cir. Feb. 24, 2014). In an unpublished 2011 opinion, the Fifth Circuit held that an OCSLA plaintiff was entitled to a jury trial when he pleaded both §1331 federal question jurisdiction and §1333 admiralty jurisdiction because the parties had stipulated that there was no Rule 9(h) election. *See Apache Corp. v. Global Santa Fe Drilling Co.*, 435 Fed.Appx. 322, 324-26 (5th Cir. July 13, 2011).

OCSLA and the CWA are every bit the "admiralty statute" that OPA is. BP Br. 3. If OCSLA and CWA claimants receive jury trials on federal questions, then so can OPA claimants.

3. *Diversity Jurisdiction*: Finally, if BP argues in reply that pleading §1331 federal question jurisdiction for OPA claims constitutes a *per se* Rule 9(h) election, then Alabama reserves the right to amend its complaint to plead §1332 diversity jurisdiction over its OPA claims, as we did in our original complaint. *See* Fed. R. Civ. P. 15(a)(2) (court should "freely give" leave to amend); *Luera,* 635 F.3d at 187 ("Provided that there is no prejudice to the court or to the defendants, a plaintiff should be permitted to amend her complaint to change her Rule 9(h) election."). BP will not be prejudiced because (a) Alabama has demanded a jury from day one, (b) fact discovery is just starting on Alabama's OPA damages, and (c) trial is likely a year away.

## II.   The Seventh Amendment Entitles Alabama to a Jury Trial on All of Its OPA Claims for Economic Damages.

Once jurisdiction is settled, the question is whether the Seventh Amendment applies to statutory tort claims for money damages due to an injury to property.[4]   The answer is firmly yes.

---

[4] Alabama agrees with BP that our right to a jury trial must come from the Seventh Amendment because OPA is silent on the subject of jury trials. *See* BP Br. 3.

**A.** **If *Any* of Alabama's OPA Claims Are "Legal" in Nature, then *All* of Alabama's OPA Claims Can Be Tried to the Jury.**

The test to determine whether the Seventh Amendment entitles parties to a jury trial on a statutory claim is rooted in English history: "The Seventh Amendment thus applies not only to common-law causes of actions but also to statutory causes of action 'analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty.'" *City of Monterey*, 526 U.S. at 708-09, *quoting Granfinanciera v. Nordberg*, 492 U.S. 33, 41-42 (1989). In other words, if the claim would have been raised in a common law court in 1791, then a jury right attaches; if it would have been raised in a court equity or admiralty instead, no right attaches.

If *any* of Alabama's claims passes this historic test, then *all* of Alabama's claims arising from the same facts can be tried to the jury—even our Rule 9(h) admiralty claims. *See Luera*, 635 F.3d at 195, *quoting Fitzgerald v. U.S. Lines Co.* 374 U.S. 16, 21 (1963) ("when one of a plaintiff's claims carries with it the right to a jury trial, the remaining claims, though premised on admiralty jurisdiction, may also be tried to a jury 'when both arise out of one set of facts.'"); *Tull v. United States*, 481 U.S. 412, 425 (1987) ("if a legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact").[5]

**B.** ***Law v. Equity*: Tort Actions for Money Damages were Common Law Actions, not Equitable Ones.**

Alabama does not seek equity. BP injured our property, and we seek money damages, not an injunction or some other form of equitable relief. The Supreme Court has adopted a two-part test to decide whether a claim is 'at law' or 'at equity' for Seventh Amendment purposes: (1) "compare the statutory action to 18th-century actions brought in the courts of England prior to

---

[5] The *Luera/Fitzgerald* rule defeats Halliburton's argument that it cannot be subjected to a jury trial for compensatory economic damages because Alabama pleaded only general maritime claims against it. HESI Br. 2-4.

the merger of the courts of law and equity" and (2) "examine the remedy sought and determine whether it is equitable or legal in nature." *Tull*, 481 U.S. at 417. "[C]haracterizing the relief sought is more important than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial." *Id.* at 421.   So we start there.

1. *Relief Sought*:   Alabama seeks money damages for each of its OPA economic damage claims.   "Generally, an action for money damages was 'the traditional form of relief offered in the courts of law.'"   *Chauffers, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990) *quoting Curtis*, 415 U.S. at 196.   There are two exceptions in which money awards may be considered equitable:   (1) "where they are restitutionary, such as in action[s] for disgorgement of improper profits," *id.*, and (2) where the money award is "incidental to or intertwined with injunctive relief." *Terry*, 494 U.S. at 571.   Neither exception applies here.

Property Damage:   Alabama seeks money damages alone for its (non-NRD) property damage.   Alabama does not seek injunctive relief, and there is no restitution involved because Alabama seeks only what it lost, not anything BP gained.   So neither exception applies.

Lost Revenue & Increased Service Costs:   Alabama seeks money damages to replace the monies it lost, not an injunction or any monies that BP gained.   So neither exception applies.

Response and Removal Costs:   Alabama seeks a money award to replace its response costs, but we acknowledge that the majority of courts have held that response costs are a form of restitution, and are thus equitable in nature.   *See generally United States v. Viking Resources, Inc.*, 607 F.Supp.2d 808 (S.D. Tex. 2009) (listing cases and finding OPA response costs equitable). But, as the Texas District Court acknowledged, "the conventional wisdom as to the nature of the response cost remedy is open to question, particularly in light of the Supreme Court's opinion in *Great–West Life & Annuity Ins. v. Knudson*, 534 U.S. 204 (2002)." *Id.* at 830, n.79.

12

In *Knudson*, the Supreme Court warned that "not all relief falling under the rubric of restitution is available in equity.  In the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity." 534 U.S. at 212.  Thus, "whether [restitution] is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." *Id.*

Here, the basis of Alabama's claim is a negligent trespass onto its property; a clear action at law. *See infra* at 13-14.  Thus, Alabama would have sought remuneration in a legal action "on the case," not in equity.  Equity is a particularly bad fit here because Alabama does not seek to recapture something that BP wrongly possesses. *See Knudson*, 534 U.S. at 212 ("for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession").

2. *Nature of the Action*:  Alabama's OPA economic damage claims most comfortably fall into the following common-law causes of action:   (1) action for trespass and (2) action on the case.  Actions for trespass "remedied direct, forcible tortuous injuries," *City of Monterey*, 526 U.S. at 729 (Scalia J. concurring), or as Blackstone put it, "entry on another man's land without a lawful authority, and doing some damage, however inconsiderable, to his real property." 3 W. Blackstone, *Commentaries on the Laws of England*, ch. 12, p. 208-09 (1768).  An action for trespass "on the case" was brought "if the injury [was] only consequential." *Id.* at 209.  An action on the case could also be brought to recover damages caused by a "private nuisance," if the nuisance could not be removed.[6]  *Id.* at 220; *see also* Restat. (Second) of Torts §821D (cmt. D).

At common law, the trespasser could be either the Defendant or his negligently-released property.  Blackstone used cattle farmers as an example:

---

[6] Blackstone defined a private nuisance as "any thing done to the hurt or annoyance of the lands, tenements, or hereditaments of another." Blackstone, *supra* at 216.

13

> [I]f by his negligent keeping they stray upon the land of another (and much more if he permits or drives them on) and they there tread down his neighbor's herbage and spoil his corn or his trees, this is a trespass for which the owner must answer in damages.

Blackstone, *supra* at 211; *see also Star v. Rookesby*, 1 Salk. 335 (1711) (noting that "[e]ither trespass or case" applied in an action resulting from Defendant's cattle entering Plaintiff's close). By analogy, if oil (rather than cows) had spilled onto a person's property and injured it, the property owner would have brought an action for trespass for the property damage and/or an action on the case for the consequential damages.

Property Damage:   OPA property damage claims are most analogous to common law actions for trespass. OPA requires proof of "damages to, or economic losses resulting from destruction of, real or personal property," 33 U.S.C. §2701(b)(2)(B), like trespass required "direct, forcible tortuous injuries" to property.   *City of Monterey*, 526 U.S. at 729 (Scalia J. concurring). Alabama's property damage claim is also analogous to an action on the case due to private nuisance; although we think trespass the better analogy due to the direct injury to property. Regardless, property damage claims based on negligent trespass or nuisance are common law tort actions that entitled property owners to a jury.   *Id.* at 716 (regarding trespass and nuisance: "in these actions, as in other suits at common law, there was a right to trial by jury."); *see also Pernell v. Southall Realty*, 416 U.S. 363, 370 (1974) ("This Court has long assumed that ... actions for damages to a person or property ... are actions at law triable to a jury"); *Ross v. Bernhard*, 396 U.S. 531, 533 (1970) ("The Seventh Amendment ... entitle[s] the parties to a jury trial in actions for damages to a person or property"); *City of Monterey*, 526 U.S. at 709 ("common-law tort actions provide redress for interference with protected personal or property interests").

Lost Revenue & Increased Costs:   OPA revenue loss claims are analogous to actions on the case, which "remedied indirect or consequential harms" stemming from the trespass onto

property.  *Id.* at 729 (Scalia, J. concurring).   For the State to recover lost tax revenue under OPA, we must show that our "loss of taxes" was "due to the injury, destruction, or loss of real property, personal property, or natural resources."   33 U.S.C. §2701(b)(2)(D).   In other words, we must show that our tax loss was a consequence of an injury to property—*i.e.* an action for trespass on the case.   The same holds true for increased service costs, which under OPA, must be "caused by a discharge of oil." 33 U.S.C. §2702(b)(2)(F).

BP declares that it couldn't find "any actions analogous to a sovereign seeking lost taxes based on a party defendant injuring a plaintiff," BP. Br 19, and thus Alabama's claims cannot be considered an action at law.   But the test is not whether Alabama can cite an 18th-Century case with a similar fact pattern.   The Seventh Amendment "requires trial by jury in actions unheard of at common law," *Tull*, 481 U.S. at 420; so, the Court is looking for an "analogous common-law cause of action" (*e.g.* action for trespass, debt, or replevin), *id.* at 417,   not conducting "an abstruse historical search for the nearest 18th-century analog."[7]  *Id*. at 421.

Response and Removal Costs:   Alabama's claim for response and removal costs is analogous to a legal action on the case because Alabama is seeking to "remed[y] indirect or consequential harms" stemming from the trespass of BP's oil onto Alabama's property.   *City of Monterey*, 526 U.S. at 729 (Scalia, J. concurring).   Again, we recognize that the majority of courts have held that response costs resemble equitable actions for restitution.   But the question "whether [restitution] is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought."   *Knudson*, 534 U.S. at 212.   An OPA claim for removal costs must "result from" a discharge of oil.   33 U.S.C. §2702(a).   Alabama's removal

---

[7] For example, the Supreme Court has found that the Seventh Amendment guarantees a right to a jury trial in an action for breach of a union's duties under a collective bargaining agreement, even though collective bargaining agreements were illegal in 18th-century England, because it was most analogous to a legal action for breach of contract.   *See Chauffers, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565-70 (1990).

costs resulted from a trespass of oil onto property.   Accordingly, Alabama's claim for removal costs is a trespass on the case, which is a common law action heard by a jury.

Of course, even if the Court finds that Alabama's claim for removal costs is analogous to an equitable action, Alabama's claims for property damage, lost revenue, and/or increased service costs would have been actions at law; thus, our removal costs claim can be heard by the same jury. *See Tull*, 481 U.S. at 425 ("if a legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact").

### C.   *Law vs. Admiralty*:   The English Common Law Courts, Not Admiralty Courts, Had Jurisdiction Over Land-Based Injuries in 1791.

Alabama's injuries occurred on land.   English admiralty courts did not gain tort jurisdiction over land-based injuries until the 1840's; American admiralty courts finally got it in 1948.  *See infra* at 18-19.   BP deals with this dilemma in two ways:   (1) It tries to change the Seventh Amendment test and (2) it tries to bend history.   Both attempts fail.

1.  *1791 vs. 2010*:   BP argues that the phrase "Suits at common law" has two different meanings when applying the Seventh Amendment:   It means 1791 English common law when judging "whether an action should be considered either legal or equitable," BP Br. 6, n.2., but refers to present-day American legal actions when "considering whether an action is maritime" or legal in nature. *Id.* at 5-6.   Applying the latter, modern-day test, BP argues that each of Alabama's OPA claims invokes admiralty jurisdiction, so none can be deemed "Suits at common law" under the Seventh Amendment. *See* BP Br. 18 (lost tax revenue); 21 (NRD); 24 (removal costs).

But the meaning of "Suits at common law" doesn't change: "the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791."  *Curtis*, 415 U.S. at 193.   Reference to 18th-Century English law is therefore required across the board—law, equity, and admiralty:

> The Court has construed this language to require a jury trial on the merits in those actions that are analogous to "Suits at common law." Prior to the Amendment's

adoption, a jury trial was customary in suits brought in the English *law* courts. In contrast, ***those actions that are analogous to 18th-century cases tried in courts of equity or admiralty do not require a jury trial***. …

To determine whether a statutory action is more similar ***to cases that were tried in courts of law than to suits tried in courts of equity or admiralty***, the Court must examine both the nature of the action and of the remedy sought.

*Tull*, 481 U.S. at 417 (emphasis added).[8]

2. *Admiralty jurisdiction in 1791*:   Applying the correct historic test, BP argues that "Alabama's claims would have sounded in admiralty under 18th century English law. Where an occurrence began at sea but had consequences on land, it fell within English admiralty jurisdiction."   BP Br. 13.   But BP's extension of admiralty tort jurisdiction to land-based injuries in 1791 is historically flawed, a flaw that BP masks with an expert report.   Specifically, BP conflates the jurisdiction of two distinct English admiralty courts: the Instance Court and the Prize Court.   We unmask BP's error below.   In the process, we provide additional support for our motion to strike Professor James Oldham's expert opinions.   *See* MDL 2179 Doc. 12387.

Instance Jurisdiction (pre-1791):   The English common law courts frequently usurped the jurisdiction of the Court of Admiralty (also called the "Instance Court") between the Fourteenth and Nineteenth Centuries.[9]   *See* 1 *Benedict on Admiralty*, Ch. 2-3 (7th rev. ed. 2004); Schoenbaum, *Admiralty and Maritime Law* §1-5.   Relevant here, two statutes were passed during the reign of King Richard that stripped the Instance Court's jurisdiction over torts with land-based injuries, ensuring that such disputes were heard exclusively in the courts of law:

- 13 Rich II, c.5 (1389):   "the admirals and their deputies shall not meddle from henceforth with anything done within the realm, but only of a thing done upon the sea."

---

[8] Assuming *arguendo* that BP is right, and present-day jurisdiction controls the Seventh Amendment analysis, Alabama still prevails.   As detailed in Issue I, Alabama invoked the Court's §1331 federal question jurisdiction, not the Court's §1333 admiralty jurisdiction.   Alabama's OPA claims are therefore before a court of law, not admiralty.

[9] "The Court of Admiralty is called the Instance Court; the other the Prize Court." *Lindo v. Rodney*, 2 Doug 614.

- <u>15 Richard II, c.3</u> (1391): "of all manner of contracts, pleas, and quarrels, and all other things rising within the bodies of the counties (*infra corpus comitatus*), as well as by land as by water, and also of wreck of the sea, the Admiral's court shall have no manner of cognizance, power nor jurisdiction."

*See Benedict* §35; Schoenbaum §1-5 (discussing and quoting the statutes). We attach the latter statute as Exhibit A. When America revolted and adopted its own court system, these statutes still constrained the English Instance Court; thus, admiralty tort jurisdiction was confined to "[c]ollisions and injuries to property or persons on the high seas." 1 *Benedict on Admiralty* §51.

American courts adopted England's "locality" test for admiralty tort jurisdiction, along with England's exclusion of admiralty tort jurisdiction for land-based injuries:

- *The Plymouth*, 70 U.S. 20, 36-37 (1865): "[T]he simple fact that it originated there, but, the whole damage done upon land, the cause of action not being complete on navigable waters, affords no ground for the exercise of the admiralty jurisdiction."

- *The Admiral Peoples*, 295 U.S. 649, 651 (1935): "This is one of the border cases involving the close distinctions which from time to time are necessary in applying the principles governing the admiralty jurisdiction. That jurisdiction in cases of tort depends upon the locality of the injury. It does not extend to injuries caused by a vessel to persons or property on the land. Where the cause of action arises upon the land, the state law is applicable."

- *Askew v. American Waterways Ops., Inc.*, 411 U.S. 325, 340 (1973): "Historically, damages to the shore or to shore facilities were not cognizable in admiralty."

This exclusion of land-based injuries is why "sea-to-shore pollution [was] historically within the reach of the police power of the States," not general maritime law. *Askew*, 411 U.S. at 343.

Instance Jurisdiction (post-1791): England extended admiralty tort jurisdiction to land-based injuries through a series of statutes passed between 1840 and 1873. *See* Schoenbaum, §1-5. These English statutes "gave the Admiralty general jurisdiction over actions concerning … claims for any damages done by a ship," thereby repudiating the exclusions of the Richard statutes. *Id.*; *see also* 1 *Benedict on Admiralty* §52 (discussing these statutes, and noting that "by the year 1873, that court [Admiralty] had … jurisdiction of any claim for damage done by any ship").

18

The United States followed suit in 1948, when Congress passed the Admiralty Extension

Act.   46 U.S.C. §30101(a).   Congress recognized that the AEA was necessary in 1948 because

> Under existing law, admiralty and maritime jurisdiction in respect of claims arising out of maritime torts is extended by the United States courts to only those cases where injury is done upon navigable waters, and ***not to those where injury is done to persons or property situated on land, even though the injury is caused by a vessel situated on navigable waters***.

H. Conf. Rep. 80-1523 at 1 (1948)(emphasis added).[10]   Congress recognized that it was following

in British footsteps:   "The bill will bring United States practice respecting maritime torts into

accord with that followed by the British, who by a series of statutes beginning in 1840, have

restored admiralty jurisdiction in situations of this character."   *Id.* at 2.

Prize Jurisdiction:    While the Prize Court belonged to the England's Court of Admiralty, it

was "entirely distinct and independent" from the Instance Court:

> In the English maritime jurisprudence the jurisdiction of the admiralty court on the instance side, and the jurisdiction in prize, are entirely distinct and independent of each other. When exercising one, it is called the instance court, and the prize court when exercising the other. The rules of procedure and adjudication in the latter are said to be no more like those which prevail in the former, than they are like those of any court in Westminster Hall.

*The Siren*, 80 U.S. 389, 391 (1871).   The Prize Court exercised one exclusive jurisdiction:

"Admiralty has jurisdiction, not only of the question, 'prize or not prize', but of all its

consequences: and many of them agree, that the Admiralty has the sole and exclusive jurisdiction."

*Le Caux v. Eden*, 2 Doug 602 (1781).

Professor Oldham discusses the leading prize jurisdiction case, *Lindo v. Rodney*, 2 Doug

613 (1782), in his declaration.   BP Br. Exh. 1 at ¶25.   But he omits the most salient point for this

case—*i.e.* the clear line of demarcation between the Prize Court's jurisdiction over prize captures

and the Instance Court's jurisdiction over torts.   So, we attach the opinion as Exhibit B.   In

---

[10] The House Conference Report is Exhibit B to BP's brief.

*Lindo*, Admiral Rodney captained the English sea forces who took various goods from the island of St. Eustatius. *Id.* British subject Lindo, who claimed ownership of the goods, challenged the Prize Court's jurisdiction to declare "prize or not prize" because the goods were taken on land. *Id.* His complaint was largely predicated on the previously-mentioned King Richard statutes, *see* Exh. A, which forbid the Admiralty Court's jurisdiction over land-based injuries. *Id.* at 615. Lord Mansfield began his opinion by distinguishing between the Prize and Instance Courts:

> The Court of Admiralty is called the Instance Court; the other the Prize Court.
>
> The manner of proceeding is totally different.
>
> ***The whole system of litigation and jurisprudence in the Prize Court is peculiar to itself: it is no more like the Court of Admiralty, than it is to any Court in Westminster-Hall*** [i.e. any common law court] . . . .
>
> The nature of the action excludes, not the locality.

*Id.* at 614 (emphasis added). Lord Mansfield then addressed the King Richard statutes that blocked the Instance Court's jurisdiction over torts causing land-based injuries:

> These statutes manifestly relate to the usurpations of the Instance Court of Admiralty, in causes civil and marine, to contracts, pleas, and quarrels, only triable at law. There is not a word in any of the statutes applicable to the Prize Court[.]...
>
> These statutes don't exclude the common law in any case, and they confine the Admiralty by the locality of the thing done; which is the cause of action: it must be done on the high sea. If done in ports, havens, or rivers, within the body of a county of the realm, the admiralty is excluded.

*Id.* at 615 (discussing the "Statutes of 13 and 15 Ric. 2 and 2 Hen. 4") (emphasis added). Because Lord Mansfield found that (a) the King Richard statutes did not confine the jurisdiction of the Prize Court, just the Instance Court, and (b) the Prize Court was the only court with jurisdiction to determine "prize or not prize," he rejected Lindo's attempt to move the prize claim to the courts of law. *Id*. 615-20. The same ruling came down in *Le Caux v. Eden*, for the same reasons, which is why Lord Mansfield's *Lindo* opinion was added as a 7-page footnote to *Le Caux*. *See* Exhibit B.

The *Lindo* and *Le Caux* opinions establish the following dichotomy in 1782:

|  | **Instance Court** | **Prize Court** |
|---|---|---|
| **Causes of Action** | **Civil and Marine: Contracts, Pleas, Quarrels, etc.** | **Prizes** |
| **Jurisdiction** | **Locality** "Collisions and injuries to property or persons on the high seas" | **Subject Matter** "Prize or Not Prize, and all its Consequences" |
| **Relationship with Common Law Courts** | **Common Law Courts Had Concurrent Jurisdiction** | **Exclusive Jurisdiction** |

BP's Argument:   Again, BP argues that "Alabama's claims would have sounded in admiralty under 18th century English law. Where an occurrence began at sea but had consequences on land, it fell within English admiralty jurisdiction."   BP Br. 13.   But as the chart above demonstrates, civil tort actions fell on the Instance side of the Admiralty Court, and Alabama's land-based injuries would have fallen outside the scope of Instance Court jurisdiction.

BP cites two pieces of authority for its contrary position, but both rely on prize/captures, not civil torts rising from a vessel accident.  *See* BP Br. 12 (relying on a quote from ¶17 of Professor Oldham's report, which discusses three prize/capture scenarios); BP Br. 13 (citing Professor Oldham's recitation of prize cases at ¶¶19-26 of his report).   That BP conflates the Prize and Instance Courts' jurisdiction dooms its historical argument and casts further doubt on the use of Professor Oldham's expert opinions, which we have moved to strike as improper under Rule 702.[11]   *See* MDL2179 Doc. 12387.

---

[11] For example, neither BP nor Professor Oldham discusses the difference between the Prize and Instance Courts' jurisdiction, even though that difference was case-determinative in the *Lindo* opinion relied upon by the Professor. *See* BP. Exh. 1 at ¶25.   Nor did BP or Professor Oldham inform the Court that England had to pass statutes beginning in the 1840's to extend admiralty jurisdiction to cover land-based injuries caused by a vessel on navigable waters, even though the statutes are discussed on page 2 of BP's Exhibit 2.

History is clear: English and American admiralty courts lacked jurisdiction over vessel accidents causing land-based injuries in 1791, as proved by Supreme Court cases (*The Plymouth*, *The Admiral Peoples*, and *Askew*), leading admiralty treatises (Benedict and Schoenbaum), and the fact that England and the United States passed admiralty extension acts to rid themselves of the restriction.   Accordingly, land-based injuries like Alabama's would have been remedied in a court of law in 1791 and are thus covered by the Seventh Amendment.

### D.   Three Courts Have Held that an OPA Damages Case Was Entitled to a Jury; None Have Held Otherwise.

Three courts have denied a motion to strike a jury trial in an OPA damages claims.   We have not discovered an OPA case granting such a motion, nor have the Defendants cited one. *See* BP Br. 5, n.1 (citing the three cases discussed in this section).

First, and most compelling, is the First Circuit's opinion in *South Port Marine, LLC v. Gulf Oil Ltd. Partnership*, 234 F.3d 58 (1st Cir. 2000).   The Court held that a marina was entitled to a jury trial on its OPA claims for property damage and lost profits—essentially the same claims at issue here.   Like BP, Gulf Oil argued that the case "was comparable to a claim in admiralty to which the Seventh Amendment's guarantee of trial by jury does not apply."   *Id.* at 62.   Applying the 1791 locality test, the First Circuit "agree[d] with the district court that in 1791, South Port would have brought its claim for damages to its marina under the common law rather than in admiralty," *id.* at 62, because "South Port's floating docks are 'extensions of the land' in the sense of that phrase in eighteenth century admiralty jurisprudence."   *Id.* at 64.   Both the district court and the First Circuit noted that the Admiralty Extension Act's expansion of admiralty tort jurisdiction to land-based injuries in 1948 did not "divest the claim of its original common law character and its attendant right to trial by jury." *Id.* at 64, n.1.

Second, the District Court of Oregon granted a jury trial for an oyster harvester's OPA claim. *Clausen v. M/V Carissa*, 171 F.Supp.2d 1127 (D.Or. 2001).   The focus again turned on 1791 law versus admiralty, and the district court found a jury right because the court deemed oyster harvesting more analogous to agriculture than a traditional maritime activity.   *Id.* at 1135.

Third, a Texas district court denied the United States' motion to strike the Defendant's jury demand in an action for removal costs and NRD.   *See Viking Resources, Inc.*, 607 F.Supp.2d 808. While lost revenue was not claimed, *Viking Resources* is helpful in two respects.   First, it affirms the rule that if just "one legal component of the remedy" is subject to a jury trial, then the whole case can be tried to the jury.   *Id.* at 832.   The court found the diminution of property value component of NRD to be legal; consequently, the court ordered "that the entire case be tried to a jury."   *Id.*   Second, the court held that removal costs to be equitable in nature, but "acknowledge[d] that the conventional wisdom as to the nature of the response cost remedy is open to question, particularly in light of the Supreme Court's opinion in *Great–West Life & Annuity Ins. v. Knudson,* 534 U.S. 204 (2002)."   *Id.* at 830, n.79.

* * *

The precedent is overwhelming: statutory tort actions seeking money damages for property damage and consequential economic losses are legal in nature and thus entitled to a jury.   As a result, Alabama is entitled to a jury trial on *all* of its OPA economic damage claims, even if the Court considers one or more components of Alabama's case equitable in nature.

We have pretermitted argument regarding the jury trial right for natural resource damages ("NRD") and maritime punitive damages because the Court's order limited the scope of this briefing to "OPA compensatory damages," *see* MDL 2179 Doc. 12126, and the parties have focused Phase 1 discovery solely on Alabama's compensatory economic damage claims listed

*supra* at 6, excluding NRD and punitive damages.   That said, Alabama reserves its jury demand

for all legal claims and will be prepared to address the Seventh Amendment's application to NRD

and punitive damages if the Court grants oral argument and wishes to discuss either.[12]   *See Viking*

*Resources, Inc.*, 607 F.Supp.2d at 832 (holding that an OPA NRD claim is entitled to a jury trial).

**III.    Pleading General Maritime and Limitation Claims Did Not Strip Alabama's Seventh Amendment Right to a Jury Trial for its OPA Claims.**

Claimants needn't choose between pleading a Rule 9(h) admiralty claim or protecting their

jury rights for state-law, diversity, and/or federal question claims.   They can plead them all, then

choose whether to proceed to the bench under Rule 9(h) or to a jury on the non-admiralty claims.

**A.    Plaintiffs Can Plead General Maritime Claims under Rule 9(h) Without Forfeiting Their Right to a Jury Trial on OPA Damage Claims.**

*Luera v. M/V Alvenus* is directly on point.   Melinda Luera was injured while performing

her duties as a longshore worker.   635 F.3d at 183.   Luera pleaded §1333 admiralty jurisdiction

over her *in rem* claims and §1332 diversity jurisdiction over her *in personam* claims against the

vessel's owners and managers.   *Id.*   Luera demanded a jury trial, and the defendants argued that

she was not entitled to a jury because the admiralty claims automatically invoked Rule 9(h). *Id.*

The Fifth Circuit determined that the case was "controlled by the Supreme Court's decision

in *Fitzgerald v. United States Lines Co.,* 374 U.S. 16 (1963)," *id.* at 191, in which the Court held

that a Jones Act claim entitled the plaintiff to a jury trial even though he also pleaded the pure

admiralty claims of unseaworthiness and maintenance and cure.   Applying *Fitzgerald*, the Fifth

Circuit held that Luera was entitled to a jury trial on her *in personam* claims, despite the pleading

of Rule 9(h) *in rem* claims, because the "tradition [of trying admiralty claims to the bench] cannot

---

[12]   Alabama's right to a jury trial on punitive damages may be influenced by the outcome of the Louisiana DA's appeal over state-law penalties, an appeal that just received a panel opinion.   *See In re: Deepwater Horizon*, 2014 WL 700065 (5th Cir. Feb. 24, 2014).   Alabama reserves the right to seek relief under state law, if reinstated.

trump Luera's constitutional right to a jury trial for her non-admiralty claims, and the non-jury component of admiralty jurisdiction must give way to the Seventh Amendment."[13]   *Id.* at 196.

The Fifth Circuit noted that a contrary ruling would place claimants in an unfair position:

> [A] plaintiff in Luera's position would be left with a Hobson's choice: she could either plead her *in personam* claims together with her *in rem* claims but waive her right to a jury trial, or she could preserve her right to a jury trial by pleading her *in personam* claims only and forgo a legally cognizable *in rem* claim.

*Id.* at 195.   The Court rejected the Hobson's Choice:   "Plaintiffs should not be required to make such a choice when a third option remains—upholding the constitutional guarantee of a jury trial for the *in personam* claims."   *Id.*

Alabama followed *Luera* to a T.   We pleaded §1333 admiralty jurisdiction over our general maritime claims.   *See* Alabama Amended Complaint at ¶33.   In separate paragraphs, we pleaded §1332 federal question jurisdiction over our OPA claims; we did not invoke Rule 9(h); and we demanded a jury trial.   *Id.* at ¶¶34, 369-71.   As a result, *Luera* mandates that Alabama's pleading of Rule 9(h) claims does not affect Alabama's right to a jury on its OPA claims.

### B.   Plaintiffs Can Participate in a Limitation Bench Trial and Still Receive a Jury Trial for OPA Damages.

Alabama's participation in Transocean's limitation action, which the Court scheduled before Alabama's OPA case, changes nothing.   The Limitation Act is Transocean's shield from liability; not a sword that BP (or even TO) can use to gut Alabama's Constitutional right to a jury once the limitation action ends.   *See Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152 (1957) ("For us to expand the jurisdictional provisions of the [Limitation] Act to prevent respondent from now proceeding in her state case would transform the Act from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their common-law rights.").

---

[13] The Fifth Circuit noted that "by its plain language, Rule 9(h) applies to 'claims' and not to entire cases," *Luera*, 635 F.3d at 190, thus the pleading of some Rule 9(h) claims does not infect the entire complaint.   *Id.*

BP's attempt to tie the fate of Alabama's OPA claims to Transocean's limitation petition is dubious for a number of reasons:

- OPA claims are not subject to the Limitation Act or Admiralty Rule F;

- OPA claims were exempted from this limitation action by Judge Ellison;

- Alabama did not file an OPA claim against anyone in the limitation action; and,

- Alabama did not file a claim of any kind against BP in the limitation action.[14]

But most dubious is BP's argument that Transocean's limitation petition empowers the Court to brush aside Alabama's Constitutional right to a jury, against our will.  Four circuit courts of appeal have stated to the contrary, including the Fifth Circuit.

### 1. Once Limitation Is Decided, Claimants Can Elect to Leave the Limitation Action to Vindicate their Constitutional Right to a Jury.

BP is half right, half wrong.  Yes, discretion exists to extend the limitation action to quantify individual damages.   But the discretion lies with the claimant, not the Court.   The Court need not take our word for it; here is the Fifth Circuit opinion that BP buries in a footnote:

> We suspect that back of this strenuous effort to get the right to try these actions first in the state court is the apprehension that unless it is done the this fashion the plaintiff-claimants will be irrevocably denied their right to jury trials even though they succeed in their confident expectation of defeating limitation on the merits. But this is a misapprehension erroneously deduced from the acknowledged power of the admiralty court to adjudicate the whole case and grant full relief even though limitation is denied.   This is a protection to those compelled under the monition and restraining orders to litigate in an unchosen forum. *The claimants are the ones to determine whether such full relief from the admiralty is desired or needed. If they do not desire it, the admiralty court in its decree denying the right to limitation can make certain that they are free to pursue the petitioner in any other forum having requisite jurisdiction.*

*Pershing Auto Rentals, Inc. v. Gaffney*, 279 F.2d 546, 552 (5th Cir. 1960) (emphasis added); *see also Fecht v. Makowski*, 406 F.2d 721, 722-23 (5th Cir. 1969) (holding that "where no limitation is

---

[14]   *See* 33 U.S.C. §2704 (setting forth OPA's own limits on liability); *Bouchard Transp. Co. v. Updegraff*, 147 F.3d 1344, 1350 (11th Cir. 1998) ("OPA 90 is not subject to Rule F").

possible," the court has no power to "adjudicate the issue of liability against the wishes of the

damage claimants").[15]   The Fifth Circuit is not alone; "[e]ach circuit that has considered this

question has ruled that once limitation is denied, plaintiffs should be permitted to elect whether to

remain in the limitation proceeding or to revive their original claims in their original fora:"[16]

- First Circuit: "That everyone may claim against the second bond even though limitation is denied is established by *Hartford Accident & Indemnity Co. v. Southern Pacific Co.*, 1927, 273 U.S. 207 (1927).  We do not, however, read that decision as changing the prior rule, that the plaintiff may elect to return to the original libel."  *Narragansett Fishing Corp. v. F/V Bob n Barry*, 425 F.2d 733 (1st Cir. 1970) *citing Pershing Auto Rentals*, 279 F.2d 546.

- Second Circuit:   "If, however, the owner shall be found not to be entitled to a limitation, his liability will be unlimited and there will be no need for a concourse to marshal the various claims. In that event the claims will no longer be 'subject to limitation' . . . At that time the claimants may elect to pursue their claims to judgment in the admiralty court or pursue their rights under the Jones Act."  *In re Wood's Petition*, 230 F.2d 197, 199 (2nd Cir. 1956).

- Fourth Circuit:   "[I]f the limitation-of-liability is denied, then the claimants may elect to proceed with their original actions before any jury authorized and demanded in those actions."  *Pickle v. Char Lee Seafood*, 174 F.3d 444, 450 (4th Cir. 1999).

- Ninth Circuit:   "The District Court properly denied the petition for limitation. However, instead of freeing the claimants to pursue their claims in separate actions, if they so desired, the court ordered a reference for the proof of damage to the claimants. They should be free to remain in the limitation proceeding or sue elsewhere.  The injunction restraining separate litigation is dissolved as to the claimants appearing herein."  *The Silver Palm*, 94 F.2d 776, 780 (9th Cir. 1937).

The Fourth's Circuit's *Wheeler* opinion is particularly instructive here.   The Plaintiffs elected to

leave the limitation action to execute their jury demand.   764 F.2d at 1010.   But the district court

struck their jury demand, reasoning (as BP does) "that since plaintiffs had, pursuant to order of

court, filed claims in the limitation proceedings, their cases should be tried as a continuation of that

proceeding and not as separate, transferred actions."  *Id.*   The Fourth Circuit reversed, noting that

---

[15] BP mentions *Pershing Auto Rentals* in a footnote, only to say that it is subservient to later statements made by this district court (Sear, J.) that a limitation court can trump a claimant's wishes.  *See* BP Br. 16, n.7.   Respectfully, Judge Sear's opinion does not overweigh the First, Second, Fourth, Fifth, and Ninth Circuits' contrary opinions.

[16] *Wheeler v. Marine Navigation Sulphur Carriers Inc.*, 764 F.2d 1008, 1011 (4th Cir. 1985).

"[w]ith the reason for concursus and restraint of other proceedings removed, no reason remained to deprive plaintiffs of their choice of forum or of their statutory right to jury trials." *Id.* at 1011.

The post-limitation "election" rule properly balances the competing rights brought into a limitation action. In this case, Transocean has a statutory right to have an admiralty court determine if its liability is limited. *See* 46 U.S.C. §30501 *et seq.* Alabama has three enforceable rights: (1) a Constitutional right to try its OPA case to a jury, *see* U.S. Constit. Amend VII; (2) a statutory right to be remanded from the MDL back to the transferor district, *see* 28 U.S.C. §1407(a); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 32-41 (1998); and, (3) the statutory "savings to suitors" clause, which protects against admiralty courts dispatching common law rights. *See* 28 U.S.C. §1333(1).

Once this Court finds or denies limitation, Transocean's statutory right will be vindicated. Transocean will then stand in the same shoes as BP and HESI; none will have a right to a bench trial. *See Luera*, 635 F.3d at 196 ("neither does any statute, rule, or constitutional provision provide Appellants with a *right* to a bench trial. The practice of trying admiralty claims to the bench is simply one of custom and tradition").

Only Alabama will be left with enforceable rights, and we've elected to enforce them. Mandating Alabama to remain in the limitation action—an action created by Transocean—to try its OPA case to the bench would violate all of those rights: the Seventh Amendment right to a jury trial, the *Lexecon* right to remand, and the savings to suitors clause. BP's argument that the Court has the discretion to violate so many of Alabama's rights is, in the words of the Fifth Circuit, "a misapprehension erroneously deduced from the acknowledged power of the admiralty court to adjudicate the whole case and grant full relief even though limitation is denied." *Pershing Auto Rentals*, 279 F.2d at 552.

### 2. OPA Is Strict Liability; Thus, Alabama's OPA Case Does Not Present Factual Issues Decided in the Phase 1-2 Trial.

Transocean claims that the issues decided in the limitation trial are "intertwined" with Alabama's OPA case, so Alabama's OPA trial is already proceeding to the bench in limitation and should continue doing so. *See* TO Br. 6-8. But OPA damages are strict liability; thus, Alabama's OPA case shares no factual issues with those decided by the Court in Phases 1 and 2:

| Transocean's Limitation and Liability Trial | Alabama's OPA Damages Trial |
|---|---|
| • Seaworthiness<br>• Fault / Negligence<br>• Privity<br>• Knowledge<br>• Gross Negligence / Recklessness | • Individual Causation<br>• Quantum of Damages |

*Compare* 33 U.S.C. §2702 (OPA damages) *with* PTO 41/CMO 4 (Phase 1-2 trial plan). As a result, there is no fact for a jury to re-decide.[17]

Transocean tries to rope gross negligence into Alabama's OPA trial by arguing that if Alabama intends to go after Transocean for surface discharges, Transocean would be entitled to limit its OPA liability, unless the surface discharge was proximately caused by gross negligence or a federal safety violation. *See* TO Br. at 6 *citing* 33 U.S.C. §2704(a),-(c). That argument is irrelevant here. Alabama has chosen to prosecute its OPA claim against BP, and BP is barred from raising OPA's $75 million cap as a defense. *See* MDL 2179 Doc. 925. So, the gross negligence exception to OPA's liability limits has no place in Alabama's OPA trial.

Finally, even if some of the factual issues overlap (and they don't), the Fifth Circuit stated in *Pershing Auto Rentals* that "after a trial by the admiralty court on the issue of the right to limit, such a finding if encompassing liability as well would be *res judicata* leaving only the question of

---

[17]That no factual overlap exists is readily understood when it is recalled that Phases 1-2 ended without the oil ever reaching land, while Alabama's OPA case starts with oil hitting our property.

damages for state court jury consideration." 279 F.2d at 552. This statement indicates that a limitation claimant can use liability findings from a limitation action for subsequent "jury consideration," even though liability was tried to the bench. Because OPA is a strict liability statute, we need not delve into the implications of that rule here.

### 3. Alabama Did Not Waive *Luera's* Protection When It Correctly Noted that Transocean's Limitation Trial Must Be Tried to the Bench.

Transocean also argues that Alabama waived its right to an OPA jury when we stated that Transocean's limitation action was properly tried to the bench.[18] *See* TO Br. 4-5 (citing the joint trial plan and reply brief). This argument conflates two distinct proceedings, governed by distinct sets of rules, in distinct forums: (1) TO's limitation trial and (2) Alabama's OPA damages trial.

As for the limitation trial, the Court got it right. When a vessel owner seeks exoneration and limitation, and multiple claimants seek damages exceeding the value of the vessel, an admiralty court holds a bench trial to determine limitation *and liability* to avoid duplicative litigation and potentially conflicting liability findings among state and district courts:

> In genuine "multiple-claims-inadequate-fund" cases, the courts have not allowed damage claimants to try liability and damages issues in their chosen fora, even if they agree to return to the admiralty court to litigate the vessel owner's privity or knowledge. This is because, without a *concursus* in the admiralty court, the claimants could secure judgments in various courts that, in the aggregate, exceed the limitation fund.

*Beiswenger Enterprises Corp. v. Carletta*, 86 F.3d 1032, 1038 (11th Cir. 1996) *quoting Pershing Auto Rentals*, 279 F.2d at 549-50 (5th Cir. 1960). Alabama's alleged waiver comes from saying that the Court correctly applied this law to the limitation stage of the case. Surely, Alabama cannot be required to needlessly attack the Court's correct application of the law governing the limitation action, just to protect our rights in a separate OPA action after limitation ends.

---

18 BP notes that Alabama filed a brief in support of the Court's trial plan in Cameron mandamus proceeding, *see* BP Br. 15, and BP attaches a snippet of our Fifth Circuit brief as an exhibit. *See* BP Br. Exh. 3. But unlike Transocean, BP does not argue that our brief constituted a waiver of our jury trial right.

Waiver, if any, would come from Alabama asking the Court(s) to try its OPA case (*i.e.* individual causation and quantum of damages) to the bench.   But we did precisely the opposite:

- Joint Trial Plan (reply brief):   "The adoption and advancement of the proposed joint trial plan by the Plaintiff's Steering Committee and the State of Alabama should not be construed as a waiver of the right (if any) of any plaintiff to invoke a jury trial with respect to some or all of that plaintiff's claims arising from the Spill. The State of Alabama, in particular, has demanded a jury trial against the Defendants, including the Limitation Petitioners, in the transferor court, in both their original and amended complaints. . . . The Plaintiff's goal is to preserve and protect the State of Alabama's right (and that of other plaintiffs, where properly invoked) to seek a trial by jury on all claims not decided in the Rule 9(h) limitation and liability trial."   MDL2179 Doc. 2130 at 11, n.17.

- CA5 Brief re: Cameron Mandamus: "After the common issues are tried in the limitation and liability bench trial, Alabama reserves the right to press its request for a jury trial on the remaining issue(s) of damages."   *See* CA5 Case No. 11-30987, Doc. 00511658535 at 28.

Alabama has consistently pleaded its desire to try its OPA case to the jury, without waiver.

### 4.  The Practical Effects Argument Favors a Jury Trial.

BP contends that the Court should force Alabama to try its OPA case to the bench in limitation because, if the Court ruled otherwise, "[p]otentially hundreds or thousands of jury trials would be held," putting "an incredible burden on this Court and the judiciary."   BP Br. 17-18. BP's argument is irrelevant because the Court has no discretion to force Alabama to remain in the limitation action.[19]  Plus, if practical effects were relevant, they favor would Alabama.

1.  While district courts across the Gulf Region could be burdened if OPA cases are sent home for jury trials, the flip-side is frightening.   Imagine the burden on this Court and Magistrate Shushan if *every one* of those "hundreds or thousands" of OPA trials must be tried to the bench as part of the limitation action.   Or imagine being one of the "hundreds or thousands" of limitation claimants who must wait in line over the next 20+ years for his turn; not to mention the MDL

---

[19] Furthermore, the Supreme Court has rejected the premise of BP's argument: "[T]here can be no reason why a shipowner, under such conditions [*i.e.* limitation not possible], should be treated any more favorably than an airline, bus, or railroad company.   None of them can force a damage claimant to trial without a jury.   They, too, must suffer a multiplicity of suits."   *Lake Tankers Corp.*, 354 U.S. at 154.

31

transferees who did not file a limitation claim, and thus would have to wait until these "hundreds or thousands" of limitation bench trials ends and the MDL breaks.   Congress wrote OPA to provide swift recovery free of the Limitation Act, not to be dragged out 20+ years in a limitation action.

2.   Finding waiver based on participation in the limitation trial would punish those claimants who fought the plaintiffs' side of the liability battle, while rewarding those claimants who sat on the sidelines.   Such a result would create a perverse incentive for future claimants to sit on their rights against a vessel owner to save their common law rights—and would potentially run afoul of the savings to suitors clause. *See* 28 U.S.C. §1333(1).

## IV.   The Court Has a Choice: Try Just Alabama's OPA Compensatory Claims to a Jury, or Try Alabama's OPA and Maritime Compensatory Claims to a Jury.

The Seventh Amendment requires that Alabama's OPA compensatory damage claims be tried to a jury.   The rest is discretionary.

When faced with a hybrid complaint like Alabama's, "[t]he court [is] left with two options: try the case partially to the jury and partially to the bench, or try the entire case to the jury." *Luera*, 635 F.3d at 195.   We pretermit a detailed discussion of case management here, saving it instead for pretrial conference and/or briefing scheduled by the Court.   For now, we simply note two options that Rule 42(a) and the *Luera* decision open for Phase 1 of Alabama's trial:

A.   <u>OPA-Only Compensatory</u>:   The Court could try to a jury just Alabama's OPA claims for economic damages against BP, saving Alabama's general maritime claims for compensatory and punitive damages for a later phase; or,

B.   <u>OPA + Maritime Compensatory</u>: The Court could try to a jury all of Alabama's economic damage claims (OPA and general maritime), against all liable Defendants, thereby setting the basis for a Phase 2 trial for punitive damages under maritime law.

Alabama will be prepared to discuss these options, and any others, as the Court directs.

## CONCLUSION

For the reasons outlined above, Alabama respectfully asks the Court to

1. Deny BP's motion to strike Alabama's jury trial demand with regard to Alabama's OPA claims for compensatory economic damages; and,

2. Grant Alabama's motion to strike Professor James Oldham's expert opinions.

Respectfully Submitted,

LUTHER J. STRANGE
    *Attorney General*

/s/ Corey L. Maze
COREY L. MAZE
    *Special Deputy Attorney General*

WINFIELD J. SINCLAIR
    *Assistant Attorney General*

501 Washington Avenue
Montgomery, AL 36130

Phone:   (334) 242-7300
Fax:       (334) 242-4891
Email:   cmaze@ago.state.al.us

Attorneys for the State of Alabama

33

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on **March 7, 2014**.

    /s/ Corey L. Maze
COREY L. MAZE
   *Special Deputy AG, State of Alabama*

34