UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig | * | MDL 2179 |
|    "Deepwater Horizon" in the | * | |
|    Gulf of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | |
| This Document Relates To: | * | JUDGE BARBIER |
| | * | |
| No. 13-5804 | * | MAG. JUDGE SHUSHAN |

ORDER & REASONS

Before the Court is Elton Johnson's Motion to Enforce Settlement Agreement with BP (Rec. Doc. 11734) and BP's Motion for Summary Judgment (Rec. Doc. 11993). These motions were heard on the briefs without oral argument. For the reasons set forth below, the Court will grant Johnson's motion and deny BP's motion.

I. Background

Elton Johnson was employed by Tidewater Marine, L.L.C. ("Tidewater") aboard the M/V DAMON BANKSTON, a vessel that was adjacent to the DEEPWATER HORIZON mobile offshore drilling unit at the time of the blowout and explosion on April 20, 2010. Following the casualty, Johnson alleged he was injured when the explosion rocked the BANKSTON, causing him to be thrown against a bulkhead. He claimed various personal injuries, including to his head, shoulder, back, as well as post-traumatic stress disorder.

Johnson hired an attorney who filed suit against BP and Tidewater in Louisiana state court. That suit was removed to this Court and consolidated with Multidistrict Litigation 2179 ("MDL 2179"). Meanwhile, Johnson's attorney began negotiating a settlement of his claims through the Gulf Coast Claims Facility ("GCCF"), operated by Mr. Kenneth Feinberg. The GCCF was established by BP in the aftermath of the DEEPWATER HORIZON casualty, primarily to fulfill

BP's obligations as a "responsible party" under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701, *et seq*. However, BP also authorized Mr. Feinberg and the GCCF to settle non-OPA claims, including specifically claims for personal injury or death arising out of the April 20 blowout or its aftermath.

On September 23, 2011, the GCCF, acting on behalf of BP, issued a Final Determination letter to Johnson through his attorney. The letter offered to pay Johnson a total of $2,698,095 in full settlement of his entire personal injury claim. Johnson was instructed that "[t]o accept [this] offer, sign [the enclosed form] and return it to the GCCF no later than 90 days after the date of this letter." The letter made clear that the offer was in consideration for Johnson releasing "any claims for bodily injury that you have or may have in the future against BP and all other potentially responsible parties with regard to the [DEEPWATER HORIZON casualty], and prevents you from submitting any bodily injury claims seeking payment from a court." The letter also cautioned that since the amount exceeded $500,000, no payment would be made until the expiration of the 14-day period in which BP could exercise its right to appeal.

On September 24, 2011, Mr. Johnson signed the form, indicating that he accepted the settlement offer. The 14-day appeal period expired without an appeal by BP. This should have caused the GCCF to send the required release form to Johnson for signing so that the settlement check could be issued. Instead, **after** the GCCF had received Johnson's acceptance, but before the release was sent, the GCCF was provided certain information by a third party to the settlement, Tidewater, which alleged that Johnson may have either fabricated or at least exaggerated his injuries.[1]

---

[1] Notably, Tidewater was apparently paying maintenance and cure benefits to Johnson despite its concerns about his claim.

2

On October 5, 2013, **before** the 14-day appeal period had expired, counsel for Tidewater emailed a letter to counsel for BP advising of its concerns about the Johnson settlement, stating that it believed the settlement was "excessive and unreasonable," and that there were defenses available to Tidewater and BP.  Tidewater urged BP to appeal the GCCF award to Johnson.

On the same day, counsel for BP replied by emailed letter, and advised Tidewater that "BP will not appeal the GCCF's settlement with Mr. Johnson," but pointing out that "BP reserves its right to seek indemnification from Tidewater for all BP funds the GCCF pays to settle Mr. Johnson's claim."  As noted, the 14-day appeal period expired without BP filing an appeal.

After receiving the information from Tidewater, the GCCF followed up with its own investigation, and ultimately sent Johnson another letter, dated February 22, 2012, advising that "there is insufficient reliable evidence to support this claim.  Accordingly, the claim has been denied." The GCCF's letter acknowledged that it had previously "sent Mr. Johnson a determination letter on September 23, 2011, offering him $2,698,096 to finally resolve his claim.  **In order to receive the offered Final Payment, Mr. Johnson was required to and did return an election to accept the offer.**" (emphasis added)

Because the GCCF failed or refused to send the release form to Mr. Johnson, he never executed a release, and no settlement check issued.

Johnson first sought to enforce the settlement agreement by intervening in an existing personal injury case in a Texas state court.  BP removed the case to the federal court in the Southern District of Texas ("SDTX"), and asked the Judicial Panel on MultiDistrict Litigation ("JPML") to transfer the case to MDL 2179, pending before the undersigned.  Before the JPML could act, however, the district judge in SDTX instructed BP to file a motion for summary judgment, which

was granted after finding that no valid settlement agreement had been formed. Johnson appealed to the Fifth Circuit, and after briefing and oral argument, the summary judgment was vacated and the case remanded to the SDTX with instructions to transfer the case to the Eastern District of Louisiana. *BP Exploration & Production, Inc. v. Johnson*, 538 F. App'x 438, 440 (5th Cir. 2013) (per curiam).

Following transfer to this Court and consolidation with MDL 2179, the parties filed cross-motions on the issue of whether there was a binding and enforceable settlement agreement with respect to Elton Johnson's personal injury claims.

## II. Discussion

Despite the somewhat convoluted procedural path that this case has traveled, this case at bottom raises a simple question: Was there a valid offer and acceptance between BP (through its authorized claims facility, the GCCF) and Elton Johnson? For the following reasons, the Court finds that the undisputed evidence is that a valid and enforceable settlement agreement was reached in this case.

1. BP contracted with Mr. Feinberg and his law firm, Feinberg Rozen, and authorized creation of the GCCF for the purpose of fulfilling BP's obligations as a "responsible party." BP also authorized Mr. Feinberg and the GCCF to settle claims for personal injury and death arising out of the DEEPWATER HORIZON casualty.

2. Elton Johnson filed suit against BP (and others) for personal injuries he allegedly suffered aboard the DAMON BANKSTON, as a result of the DEEPWATER HORIZON explosion on April 20, 2010.

3. Mr. Johnson also filed a claim with the GCCF seeking compensation for his personal

injuries. After lengthy negotiations, on September 23, 2011, the GCCF sent a letter to Johnson offering to settle all of his claims for a total of $2,698,095. The letter made clear that this offer was in consideration for Johnson releasing not only BP, but all potential parties who might have been responsible for the DEEPWATER HORIZON casualty. The letter advised Johnson that in order to accept this offer, he should sign an enclosed acceptance form and return it to the GCCF within 90 days. It also cautioned that there was a 14-day period during which BP had a right to appeal.

4. On September 24, 2011, Mr. Johnson signed the acceptance form and returned it the GCCF, well within the 90-day window.

5. BP did not exercise its right to appeal within the 14-day appeal period.

The substantive claims in this case are based on Johnson's Jones Act and General Maritime Law claims against BP and Tidewater arising out of the DEEPWATER HORIZON casualty. As such, the claims are maritime in nature, and federal maritime law applies when determining the validity and substance of an agreement to settle them. *Borne v. A&P boat Rentals No. 4, Inc.*, 780 F.2d 1254, 1256 (5th Cir. 1986); *Chilsan Merch. Marine Co. v. M/V K Fortune*, 110 F. Supp. 2d 492, 496 (E.D. La. 2000); *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1354 (S.D. Fla. 2007). When presented with a settlement agreement and asked to enforce it, a court must first determine if a binding agreement was reached and, if so, what the agreement provides. *E.N. Bisso & Son, Inc. v. World Marine Transp. & Salvage*, 1996 WL 28520, at *3 (E.D. La. 1996) (citing *Lee v. Hunt,* 483 F. Supp. 826, 834 (W.D. La. 1979)). The Fifth Circuit regards a settlement agreement as a contract and courts are instructed to enforce them as they would a contract. *See Guidry v. Halliburton Geophysical Servs.*, 976 F.2d 938, 940 (5th Cir.1992).

Therefore the first question that must be resolved is whether a binding agreement was

reached. In order for a compromise agreement to exist between the parties, there must have been proper acceptance of an offer. *Bisso*, 1996 WL 28520, at *3. It is undisputed that the parties did reach an agreement on the material terms of a settlement when Johnson signed the acceptance form and returned it to the GCCF as instructed. Although the agreement was conditioned upon BP's right to appeal the award within 14 days, BP elected not to appeal.

Under maritime law, an oral agreement to settle a case or controversy is binding and is commonplace in the industry. *Kossick v. United Fruit Co.*, 365 U.S. 731, 734 (1961); *Chilsan*, 110 F. Supp. 2d at 496. In general, "when two parties have made a contract and have expressed it in a writing to which they have both asserted as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purposes of varying or contradicting the writing." *Har-Win, Inc. v. Consol. Grain & Barge Co.*, 794 F.2d 985, 987 (5th Cir.1986) (citing *Battery S.S. Corp. v. Refineria Panama, S.A.*, 513 F.2d 735, 738 (2d Cir.1975)). There is no argument that the parties did not reach an agreement, and in fact it was memorialized in writing with the exchange of a determination letter from the GCCF (acting on behalf of BP) and the acceptance letter signed and returned by Johnson. Nothing more was required to confirm a valid and binding settlement.

It is axiomatic that settlement agreements are a favored means of resolving disputes. *See, e.g.*, *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) (citing *Hennessy v. Bacon*, 137 U.S. 78, 85 (1890)). Because it is presumed that the parties making settlements have consulted their own interests, settlement agreements should not be taken lightly or be interfered with or impeached. *Thibaut v. Ourso*, 605 F.Supp. 1, 2-3 (M.D. La.1981); *see also Hennessy,* 137 U.S. at 85. "It is well settled that in the absence of fraud, mistake, or other circumstance going to the validity of the

6

agreement, a settlement voluntarily entered into cannot be repudiated by either party or set aside by the court." *Bisso*, 1996 WL 28520, at *5; *see also Thibaut,* 605 F. Supp. at 3.

BP essentially makes two arguments in its attempt to invalidate the settlement agreement. First, BP argues that there was no binding settlement because the required release was never signed by Johnson. Of course, the reason the release was not signed is because the GCCF failed or refused to forward a release to Johnson, even though it admittedly had received his timely acceptance of the settlement offer. It cannot be the case that a party can unilaterally undo an otherwise binding agreement simply by refusing to furnish or execute the closing documents that are required. In every settlement, there is typically a binding agreement, either orally or in writing, which is then followed by preparation and execution of formal closing documents. There is clear federal case law, for example, enforcing a settlement agreement over the objection of a litigant who changes his mind (for whatever reason) and later refuses to execute the closing documents. *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981) ("If a party to a Title VII suit who has previously authorized a settlement changes his mind when presented with the settlement documents, that party remains bound by the terms of the agreement.").

BP's second argument is that the GCCF later came into possession of evidence that Johnson may have fabricated or exaggerated his injury, and therefore he is guilty of fraud which vitiates any settlement agreement. As noted above, however, BP was made aware of Tidewater's suspicions about whether Johnson's accident had occurred as he alleged or whether he had exaggerated his injuries. This information was provided to counsel for BP around the same time that the GCCF made its offer to Johnson, and during the 14-day period in which BP had the right to appeal or contest the settlement award. Despite being made aware of these concerns, BP elected to forgo its

right to appeal, and allowed the settlement agreement to become final.  Moreover, the very investigative report that BP now relies upon to show fraud does nothing of the sort.  In fact, the "Executive Summary" of this independent report commissioned by the GCCF states that "a Finding of Potential Fraud is not supported by this investigation."  The substance of the investigation found that several of Johnson's fellow workers did not corroborate his allegations of how his accident occurred or whether he complained of injury at the time of the DEEPWATER HORIZON casualty.  This does not create a basis for undoing a binding settlement agreement.   At best, this might have created a unilateral mistake of fact on the part of the GCCF or BP.  However, "a settlement agreement cannot be avoided based on a simple unilateral mistake of fact."  *Mid-South Towing Company v. Har-Win, Inc.*, 733 F.2d 386, 391 (5th Cir. 1984) (rejecting party's attempt to invalidate a settlement on the basis that it would not have approved the settlement if it had been aware of the existence of two additional surveys that had been performed).

"Compromises of disputed claims are favored by the courts.  . . .  One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted."  *Id.* at 391-92.

In *Strange v. Gulf & South American Steamship Company*, 495 F.2d 1235 (5th Cir. 1974), the Fifth Circuit rejected a longshoreman's opposition to enforcement of a settlement agreement between him and the shipowner-defendant.  The longshoremen claimed the agreement was based on a mutual mistake by the parties concerning his medical condition at the time of the settlement.  This alleged mistake went to the strength or value of the plaintiff's case on the merits.  The court held that because the parties negotiated at arms-length and there was no taint of fraud or coercion,

the settlement was binding despite a claim of mutual mistake. The court explained:

> There would be little security in the settlement of a personal injury claim if the binding effect of such a settlement depended upon the certainty of the extent and outcome of the injuries involved. It is the very consequences of these uncertainties which the parties seek to foreclose by settlement and to take their chances on their outcome.

*Id.* at 1237.

In this case, there is undisputed evidence that a binding settlement agreement was reached between Elton Johnson and the GCCF acting on behalf of BP. The agreement was to pay the total sum of $2,698,095 to Johnson in full settlement of all of his personal injury claims arising out of the DEEPWATER HORIZON casualty. In exchange, Johnson agreed to waive and release all potential claims against not only BP, but against any other party who might be liable in the casualty. Since this was an agreement to settle claims under federal maritime law, there was no particular formality required for it to be enforceable. Nonetheless, there was an exchange of writings between the GCCF and Johnson confirming the settlement. The arguments made by BP in its attempt to avoid payment of the settlement are unavailing.

Accordingly,

IT IS ORDERED that BP's Motion for Summary Judgment (Rec. Doc. 11993) is DENIED; Elton Johnson's Motion to Enforce Settlement Agreement (Rec. Doc. 11734) is GRANTED.

New Orleans, Louisiana, this 10th day of March, 2014.

_____
United States District Court

9