IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig 'Deepwater Horizon' in the Gulf of Mexico On April 20, 2010 | * * * * | MDL 2179 |
| | * | JUDGE BARBIER |
| | * * | SECTION J |
| This filing relates to: Matter of Van Vui | * * | |
| | * * * | MAGISTRATE JUDGE WILKINSON |
| (Including Civil Action No. 12-970) | * * | MAG DIV. 2 |

* * * * * * * * * * * * * * ** * * * * * * * * * * * * *

# PETITION FOR WRIT OF REVIEW;
# PETITION FOR WRIT OF MANDAMUS;
# or, PETITION FOR TRIAL DE NOVO

Pursuant to Rule 18 of the Rules Governing the Third Party Claims Dispute

Resolution Process, the Cao Law Firm requests judicial review de novo of the ruling of

1

the Third Party Claim Dispute Adjudicator.  In the alternative, the Cao Law Firm requests under the Due Process Clause of the Fifth Amendment to the United States Constitution for a Writ of Mandamus requiring the Claims Administrator, Patrick Juneau, to institute a system of review and/or appeal of the court-annexed dispute resolution process; or, in the alternative, the Cao Law Firm, under the Due Process Clause of the Fifth Amendment to the United States Constitution respectfully requests a trial de novo.

## I.  STATEMENT OF FACTS

Mr. Vui Van is a resident of Plaquemines Parish, and he is married to Co Thi Nguyen with whom he lives and resides at 111 Avenue C, City of Buras, State of Louisiana.  Together they owned and operated two shrimping vessels, a 44 ft. ice vessel bearing Louisiana registration number LA-2565-FE, and a 35 ft. ice vessel bearing Louisiana registration number LA-4556-AP.  Exhibit A, Affidavit of Van Vui and Co Thi Nguyen.  After the Deepwater Horizon Oil Spill, Mr. Vui registered both of his vessels for the Vessel of Opportunity Program (hereinafter "VOO").  The Master Charter Agreement between Mr. Vui and BP in connection with the LA-2565-FE was registered under the contract number HOU-0596.  Exhibit B, Master Charter Agreement for the vessel LA-2565-FE.  The Master Charter Agreement for the vessel LA-4456-AP was designated as HOU-2448.  The vessel LA-2565-FE was hired by BP to participate in the Vessel of Opportunity Program, while the LA-4456-AP was not hired.

On March 16, 2011, Mr. Vui hired the Cao Law Firm to represent him in his VOO claim for the vessel LA-2565-FE.  Exhibit C, Cao Law Firm Retainer's in connection with the vessel LA-2565-FE.  Mr. Vui never terminated his contract with the

2

Cao Law Firm in regards to the vessel LA-2565-FE.  The Cao Law Firm continues to represent Mr. Vui from March 16, 2011, to this very day.

On October 5, 2011, Mr. Vui hired WWG to represent him in his VOO claim for the non-hired vessel LA-4556-AP.  <u>Exhibit D, WWG's Contract with Van Vui in connection with the LA-4556-AP</u>.  A brief review of WWG's contract shows Mr. Van's intent was clear—he did not want WWG to represent him in anything except for his VoO claim for the vessel LA-4556-AP.  Mr. Van initialed "No" all of the provisions of the contract except for provision number 3 that specifically specifies his VoO claim.  Even the top of the first page of WWG's contract specifically states the name of the business as "LA-4556-AP".

According to Mr. Vui and his wife, about two weeks after signing a contract with WWG for the vessel LA-4556-AP, they were contacted by an assistant of WWG, a person by the name of "Ms. Trang", who told them about a "short form" against Transocean.  Mr. Van and his wife returned to WWG on October 18, 2011 to further understand the details of the Short Form Joinder.  During conversation with Ms. Trang, Mr. Van specifically asked whether filing the short form would affect his seafood claims with the Gulf Coast Claims Facility (hereinafter "GCCF") and she answered, "No".  They were informed by the assistant that the Short Form Joinder only applies to Transocean Ltd. and that the Vans could choose to continue representing themselves in all seafood claims with the GCCF.  <u>Exhibit A, Affidavit of Van Vui and Co Thi Nguyen</u>.  Thus, Mr. Vui initialed article "1" of WWG's October 18, 2011 Contract, authorizing WWG to represent him in all court proceedings against Transocean Ltd.  He then initialed "No" at provision 2 of the October 18, 2011 Contract, unequivocally preserving his seafood

3

claims to himself.  Finally, pursuant to the contract that he signed with WWG on October 5, 2011, he continued to allow WWG to represent him in connection with his VoO claim for the vessel LA-4556-AP in the October 18, 2011 Contract.  Exhibit E, WWG's October 18, 2011 contract.

Several months later WWG's assistant, Trang, again contacted the Vans, and requested a meeting to discuss their seafood compensation claims.  The Vans went to WWG on May 29, 2012, to hear what the assistant had to say.  When they got there, Ms. Trang pulled out a Summary Sheet and informed the Vans that WWG could get for them $579,908.00 within one month if they were to allow WWG to file their seafood claims.  Exhibit F, WWG's Summary Sheet.  But the Vans informed WWG that they had already retained the Cao Law Firm for all of their seafood related claims, and that they absolutely did not want WWG's involvement in these claims.  Exhibit G, Cao Law Firm's May 3rd, 2012, seafood claims contract with Vui Van.  WWG's assistant then asked Mr. Van to sign the Summary Sheet, explaining to him that signing the document served only as an acknowledgment that a Summary Sheet was presented and explained.  In addition, the assistant told Mr. Van that if he wanted WWG to represent him in his seafood claims, he would have to initial the provision on the Summary Sheet that states: "I direct that Waltzer, Wiygul & Garside submit a claim on my behalf".  Mr. Van, again, told the assistant that they have already retained the Cao Law Firm for their seafood claims and refused to initial the provision.  As they were leaving, Ms. Trang insisted that the Vans take home the Summary Sheet and think the proposal over.

After the May 29, 2012 meeting, the same assistant from WWG continued to hound the Vans by calling their homes and unethically demanding that Mr. Van sign his

seafood claims over to WWG, telling them that the newly implemented program under DHECC did not allow for multiple representation.  Mr. Van got so angry with WWG that on July 31, 2012, he asked a friend to draft a termination letter to WWG and delivered on the same day.  Exhibit H,  Van Vui's Termination letter to WWG. After the termination, WWG asserted a lien on all of Mr. Vui's claims asserting monetary interests based on the alleged contract that Mr. Vui signed with WWG.

When the DHECC became operational on, or about, June of 2012, the Cao Law Firm filed all of Mr. Vui's seafood related claims for both the LA-2565-FE and the LA-4556-AP.  Through the work of the Cao Law Firm, Mr. Van Vui was able to receive significant compensations for his seafood claims.  Exhibit I, Seafood Compensation Vessel Owner's Claim Form for the vessel LA-2565-FE (Yellow Form); Exhibit J, Eligibility Notice for Seafood Compensation Vessel Owner's Claim for the vessel LA-2565-FE; Exhibit K, Sea Compensation Vessel Owner's Claim Form (Yellow Form) for the vessel LA-4556AP; Exhibit L, Eligibility Notice for Seafood Compensation Vessel Owner's Claim for the vessel LA-4556-AP; Exhibit M, Seafood Compensation Boat Captain's Claim Form for the vessels  LA-2565-FE and LA-4556-AP; Exhibit N, Eligibility Notice for Seafood Compensation Boat Captain's Claim for the vessels LA-2565-FE and LA-4556-AP.

The Cao Law Firm also filed a VoO Claim for the Vessel LA-2565-FE pursuant to a contract signed by Mr. Van with the Cao Law Firm dated March 16, 2011, above. Exhibit O, VOO Claim Form for the LA-2565-FE; Exhibit P, Eligibility Notice for the VoO claim of LA-2565-FE.  Once the Vans terminated WWG on July 31, 2012, the Cao Law Firm took over the filing of their VoO claim for the vessel LA-4556-AP.  Exhibit Q,

5

<u>VOO Claim Form for the vessel LA-4556-AP; Exhibit R, Eligibility Notice for VoO Claim of vessel LA-4556-AP</u>.

Subsequent to accepting the award money as proposed in the eligibility notices issued by DHECC, the Claims Administrator dispersed Mr. Vui's claim awards, but holding back 25% of the award money because of the lien asserted by WWG. Eventually, the fee dispute between the Claimant, Van Vui and WWG was transferred to the Third Party Dispute Resolution Process implemented pursuant to an Order of this Court dated July 26th, 2013.  The Third Party Dispute Resolution Process is a court sanctioned arbitration process through which all Claimants and/or parties who are involved in the DHECC's claims process must utilize to resolve disputes.  The parties are not given a choice to whether or not accept this Third Party Dispute Resolution Process. All rules governing this program are drafted by the Claims Administrator and approved by this Court.  The parties to the dispute do not sign any contractual document laying out the rules of arbitration, and do not have any saying with respect to who the Adjudicator would be.  All decisions associated with the formation and implementation of the Third Party Dispute Resolution Process, based on information and belief, are made by the DHECC Claims Administrator.  The rules, as instituted by the Claims Administrator, allows the Adjudicator to address all legal issues whether or not the parties consented to the Adjudicator's jurisdiction.

## II.   LAW AND ARGUMENT

**A) The court-annexed Third Party Dispute Resolution Process violates the Claimant's Procedural Due Process under the Fifth Amendment to the U.S. Constitution.**

The most fundamental question here is whether this Honorable Court has the power to impose this court-annexed arbitration process under the DHECC. For a federal court to have jurisdiction on a matter, the parties must be diverse, or there is an issue concerning federal law. In this situation, the parties to the arbitration process are not diverse, and the issues being arbitrated are not issues concerning federal law, but rather state contract law, and state codes of professional conduct.

With that being said, the first question that must be addressed is whether the arbitration process implemented by the Claims Administrator in the Third Party Dispute Resolution Program is a contractual binding program subject to the Federal Arbitration Act (FAA), or a non-binding court-annexed program. This distinction is succinctly provide by Amy J. Schmitz in her article, "Nonconsensual + Nonbinding = Nonsensical? Reconsidering Court-Connected Arbitration Programs". 10 CDZJCR 587. As described by Ms. Schmitz, court-annexed arbitration is premised on a court order or judicial mandate, and the court order requires the parties to participate in the proceeding, without the parties' consent.

The Third Party Dispute Resolution Process in the Matter of Van Vui is a court-annexed program as the program was implemented pursuant to an Order of this Court. Although the intent of the Third Party Dispute Resolution Process is to efficiently and effectively resolve disputes between parties over various issues in connection with the DHECC, the process is fraught with constitutional challenges. The U.S. Supreme Court has made it clear on many occasions with respect to nature of the arbitration process. First and foremost, arbitration "is a matter of consent, not coercion." Volt v. Board of Trustees of Leland Standford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103

L.Ed.2d 488.  Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must "give effect to the [parties'] contractual rights and expectations."  Id.  The parties' "intentions control," Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444, and the parties are "generally free to structure their arbitration agreements as they see fit," Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76.  They may agree to limit the issues arbitrated and may agree on rules under which an arbitration will proceed.  They may also specify with whom they choose to arbitrate their disputes.  See EEOC v. Waffle House, Inc., 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755.  Underscoring the consensual nature of private dispute resolution, the Supreme Court has held that parties are "generally free to structure their arbitration agreements as they see fit."  Mastrobuono, Supra, at 57.  According to the Supreme Court, nothing in the Federal Arbitration Act authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement.  Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

In this case, The Third Party Dispute Resolution Process has violated all the rules governing the arbitration process in violation of the Due Process Clause of the Fifth Amendment and therefore cannot be binding.  Not only are the parties compel to arbitrate, they have no saying on the rules of arbitration, they have no saying of the issues being arbitrated, and they have no saying on who should serve as the arbitrator.  All this was decided by the DHECC Claims Administrator.

According to Ms. Schmitz, court-annexed arbitration must, in its very nature, be non-binding and generally provides for a trial de novo: "Court-connected mandated arbitration has raised constitutional and other concerns due to its involuntary nature. Courts have entertained challenges of mandatory programs on grounds that they violate federal and state jury trial, due process, court access, equal protection, and separation of powers rights. [FN82] From these challenges, arguments based on federal and state constitutional rights to a jury trial on legal causes of action have carried the most weight. [FN83] Furthermore, such state constitutional challenges may be stronger than such federal challenges due to the states' jury access provisions. [FN84]  These challenges have produced a rule requiring that court-ordered arbitration of legal claims traditionally tried by a jury must be subject to trial de novo."

Justice Broussard Mosk of the California Supreme Court said it best in his concurring opinion in the case <u>Lyons v. Wickhorst</u>, 42 Cal.3d 911, 727 P.2d 1019, 231 Cal.Rptr. 738:

> Article I, section 16 of the California Constitution gives to all its citizens the inviolate right to trial by jury.  This right has been long protected and cherished in our jurisprudence . . . [T]he compulsory arbitration proceeding cannot operate as a substitute for the constitutional guarantee of a jury trial. . . .

Id, pg. 923.

### B. The Adjudicator did not have the power to resolve contractual disputes between the Claimant, Van Vui, and WWG.

Even if this Honorable Court were to construe that this arbitration process is constitutional, contractual and binding pursuant to the FAA, Title 9 U.S.C. section 10(a) provides instances in which vacating an arbitration final ruling is warranted:

9

>   (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>   (1) where the award was procured by corruption, fraud, or undue means;
>   (2) where there was evident partiality or corruption in the arbitrator, or either of them;
>   (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>   (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

At issue in this case is whether the arbitrator exceeded his or her powers in adjudicating this fee dispute. In this regard, the parties really do not know what powers the arbitrator is vested by the courts. This is all done pursuant to the rules imposed by the Court and/or the Claims Administrator. With that being said, this case involves more than a simple fee dispute between two law firms. In a simple fee dispute between law firms representing, for example, a motor vehicle accident matter, the issue of contractual consent usually does not arise.

But this case is different, in adjudicating a fee split between two different law firms, the arbitrator must first rule on the issue of contractual consent in connection with the various claims of the Claimant. Here, the Claimant never consented to have his dispute with WWG be resolved through the Third Party Dispute Resolution Process. Whether the adjudicator has the plenary power is highly questionable, unless such power is given by the Claimant. Here, no such power was given. All parties were ordered to

submit a Statement of Dispute and evidence to support their contentions. The arbitrator then ruled on all issues disputed irrelevant of whether or not authority was provided. The arbitrator, in essence, serves as judge and jury in all matters affecting the rights of others beyond the two disputing law firms.

> **1. Assuming that the power to resolved contractual dispute was given to the Adjudicator by the parties, the Adjudicator erred in finding a contingency fee agreement exists between Mr. Vui and WWG in regards to the vessel LA-2565-FE.**

The most fundamental tenet regulating the interpretation of contracts is the determination of the common intent of the parties. The U.S. Fifth Circuit Court of Appeals, in Walpold v. E. Eric Guirard & Associates, 442 F.3d 269, 271 (5th Cir. 2006) held that any contingency fee agreements contracted in Louisiana must be interpreted under Louisiana law. According to Louisiana Civil Code article 1927, a "contract is formed by the consent of the parties established through offer and acceptance." The parties' intent is to be determined by the words of the contract when they are clear and explicit. Sullivan v. State, Department of Transportation and Development, 623 So. 2d 28, 30 (La. App. 1st Cir.), writ denied, 629 So. 2d 1179 (La. 1993). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So. 2d 466, 479, writ denied, (La. 1994). However, when the terms of the agreement are unclear, ambiguous or will lead to absurd consequences, the court may go beyond the original agreement to determine the true intent of the parties. Sullivan, 623 So. 2d at 30. Doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract. LSA-C.C. art. 2053. In case of doubt that cannot be resolved, a provision in a

contract must be interpreted against the party who furnished its text.  LSA-C.C. art. 2056; Spohrer v. Spohrer, 610 So. 2d 849, 853 (La. App. 1st Cir. 1992).

In the Final Decision issued by the Adjudicator of the Third Party Claims Dispute Process dated February 7, 2014, the Adjudicator found that there was a contingency fee agreement between Mr. Van Vui and WWG in regards to the Vessel of Opportunity claim for the vessel LA-2565-FE.  This ruling is clearly erroneous.  If this Honorable Court were to review the contracts submitted by WWG, this Court will see that nowhere in the documents is the phrase "LA-2565-FE" is mentioned.  WWG's October 5, 2011, contract, page one, specifically expresses: "Name of Business: LA-4556-AP".  Again, WWG's October 18, 2011, contract unequivocally limits its representation to the VOO claim of the vessel LA-4456-AP.  Moreover, Mr. Vui and his wife both attested in their affidavit attached hereto that they only retained WWG in connection with their VOO claim for the vessel LA-4556-AP, which corroborates the intent expressed in the WWG contracts.  Had the Claimant intended to have WWG represent him in his VOO claim for the vessel LA-2565-FE, WWG would have written this vessel identification number onto its contracts as it did for the vessel LA-4556-AP.

**2. The Adjudicator erred in finding that there was consent on the part of Mr. Vui to have WWG represent him in his seafood compensation claims.**

In the case at bar, there was clearly no consent on the part of Mr. Vui to have WWG represent him in his seafood compensation claims.  Exhibit A, Affidavit of Van Vui and Co Thi Nguyen.  Mr. Vui first signed a retainer with WWG on October 5, 2011, but only in regards to the VOO claim of his non-hired vessel, the LA-4556-AP.  This is

not disputed. In the said contract, Mr. Vui specifically marked "No" at Provision 1, which states, "I am hiring your firm to pursue my claim in Court". In the same contract, the Claimant also marked "No" at Provision 2, which states, "I am hiring your firm to pursue my claim with the GCCF". The choice made by Mr. Vui at Provision 2, thus, unequivocally and unambiguously conveys Mr. Vui's intent that he did not want WWG to represent him in his seafood claims as the only claims that were being administered by the GCCF were the economic losses suffered by commercial fishermen and other business entities.

On October 18, 2011, Mr. Vui revised his contract with WWG in regards to Provision 1, thinking that the provision only applies to the filing of the Short Form Joinder against Transocean for him in federal court. Other former clients of WWG had the same understanding when they retained WWG to represent them in connection with the Short Form Joinder against Transocean Ltd. <u>Exhibit S, Contract of Sony Thuong with WWG and Affidavit of Hue Phan; Exhibit T, Contract of Chamroeun Duong with WWG and Affidavit of Chamroeun Duong</u>. However, the Claimant again marked "No" at Provision 2 of the October 18, 2011 contract, re-emphasizing the contention that he never consented to have WWG represent him in his seafood claims.

WWG argues that the first provision of the contract anticipates its representation of Mr. Vui's loss of income claim under the Seafood Compensation Program of the DHECC. The first provision of the WWG's contract reads:

> 1.  I am hiring your firm to protect my interests in Court.
>
> I hire Waltzer & Wiygul Law Firm ("W&W") to be my attorney, to represent me and/or my business in all court proceedings relating to the Deepwater Horizon oil spill, including the

13

>proceedings before Judge Barbier in the Eastern District of Louisiana, Case No. MDL 2179.

This provision is at best ambiguous. At the time of the signing of the contract, there was no Seafood Compensation Program under the DHECC. This program was not instituted until the early part of 2012 after the "Settlement Agreement" was finalized. So what does the phrase "*all court proceedings*" mean? It could not mean "filing my seafood claims with the DHECC" because such program did not exist at the time of WWG's contract with Mr. Vui. And if it means "filing my seafood claims with the GCCF," then Mr. Vui had explicitly rejected such contention my marking "No" at Provision 2 of WWG's contracts. WWG's contract unequivocally states that GCCF claims were not included in the contract and that the Claimants shall proceed to handle seafood related claims under the GCCF on their own. To simple fishermen like Mr. Vui, whether the seafood claims are under the GCCF or the DHECC, they are one and the same. As a matter of fact, all documents submitted to the GCCF by Mr. Vui to have his seafood claims assessed were eventually transferred to the Seafood Compensation Program of the DHECC. Furthermore, money received under the GCCF by Mr. Vui was deducted from the amount offered by the DHECC. Any interpretation connecting the ambiguous provision of the WWG's contract to somehow connect "all proceedings in court" to "I authorize WWG to represent me in my seafood claims" would contradict all the actions of Mr. Vui after the construction of his contracts with WWG. See LSA-C.C. art. 2053. As Mr. Vui attested, which is corroborated by his wife and other former clients of WWG whose affidavits are attached hereto, he signed the second contract with WWG simply for the

filing of the Short Form Joinder against Transocean.  WWG has used this confusion to take advantage of simple fishermen.

The US Fifth Circuit Court of Appeals is very explicit in its handling of ambiguities in a written contract—any ambiguity must be construed against the party who furnished its text.  <u>Wampold</u>, <u>supra</u>.  In this case it must be construed against WWG.  If a court were to look at the conduct of the parties before and after the formation of the contract, this Court clearly sees that Mr. Vui did not want WWG to represent him in connection to any seafood loss of income claims under the GCCF or the DHECC.  Why would Mr. Vui continue to handle on his own his seafood claims under the GCCF after signing a contract with WWG?  Why did Mr. Vui sign a seafood loss of income contract with the Cao Law Firm if he had already retained WWG to perform the task?  Why would Mr. Vui, in his termination letter to WWG, convey his disagreement in regards to the extent of WWG's representation of his claims.  <u>Exhibit H, Mr. Vui's Termination Letter to WWG</u>.  This disagreement could only mean a lack of consent.

In <u>Wampold v. E. Eric Guirard & Associates</u>, 442 F.3d 269 (5th Cir. 2006), a case that has an analogous set of facts to this case, the Fifth Circuit Court of Appeals, ruled that the phrase "gross proceeds of recovery" in a standard contingency fee contract does not encompass future, post-judgment monthly benefits.  In Wampold, the plaintiff, represented by Thomas Pittenger, suffered serious injuries as a result of a motor vehicle accident.  <u>Id</u>, pg. 270.  A stand-form contingency fee agreement furnished by Pittenger entitled him to a fee in the form of "an undivided vested interest in [Wampold's] claim, to be paid from the gross proceeds of recovery" in certain percentages.  <u>Id</u>.  In a state-court trial, the jury returned a verdict in favor of Wampold finding that the plaintiff

15

would be entitled to disability benefits as long as he remained disabled.  Id.  Following settlement, Pittenger sent Wampold a final disbursement statement, which Wampold signed, acknowledging that "[t]his constitutes a full and final settlement of all amount due me [Wampold] arising out of this matter."  Id.  Subsequently, Wampold continued to received monthly post-judgment disability payments, which Pittenger continued to assert monetary interest.  Id.  Pittenger contends that his contingency fee agreement anticipates any and all future benefits arising out the accident in which he represented Wampold.  The District Court granted summary judgment to Wampold, interpreting the term "gross proceeds of recovery" against Pittenger as not including Wampold's future disability benefits.  Id, pg. 271.  On appeal the Fifth Circuit affirmed.  Id, pg. 273.

Similarly in this case, WWG wants the Court to construe "any court proceedings" to "all future claims in all of its forms."  Yet, any contingency fee agreement must be clear in its intent and specific in relation to the boundary of representation.  Clearly, the interpretation that WWG wants this Court to accept is not what was contemplated by Mr. Vui.  His disagreement to WWG's interpretation is expressed in his termination letter to WWG.  Exhibit H, supra.  Like the Fifth Circuit in Wampold, this Court cannot construe WWG's contract to encompass claims that did not even exist at the signing of the contract.

### 3. The Adjudicator erred in finding that WWG performed a substantial amount of work that led to Mr. Vui's awards.

If WWG is to have any interest in Mr. Vui's claims at all, it would only be in connection with any money that WWG had gotten for him under the VoO Compensaton Program for the non-hired vessel, the LA-4556-AP.  It is disputed, however, whether the

16

VoO amount of $5,700.00 received for the LA-4556-FE was through the work of WWG or the Cao Law Firm.  Pursuant to the Louisiana Rules of Professional Conduct, WWG would only be entitled to a percentage of the $5,700.00 if it has provided meaningful legal services to Mr. Vui.  As Mr. Vui's Claimant Details from the DHECC clearly shows, all activities related to Mr. Vui's claims were all performed after WWG had been terminated by Mr. Vui.  <u>Exhibit U, DHECC Claimant Details</u>.  In other words, all the work submitted for Mr. Vui in connection with all of his claims was done by the Cao Law Firm.  All of the settlement proceeds that Mr. Vui received were from the claims filed by the Cao Law Firm.  All activities rendered for Mr. Vui, which enabled him to receive $55,100.00 in VOO money and $623,595.51 in seafood compensation under the DHECC were all performed by the Cao Law Firm. These activities are clearly shown in the Claimant Details Document.  For the Adjudicator to find in favor of WWG in connection with the work performed on behalf of Mr. Vui's claims is clearly contrary to the facts as of this case.

### III.     RELIEF REQUESTED

The Cao Law Firm therefore requests that this Honorable Court vacate the Final Decision of the Adjudicator and review this fee dispute de novo.  The Cao Law Firm also requests that a stay be issued to the Administrator requesting him to not disperse any

funds held in trust pursuant to the liens asserted by Waltzer, Wiygul & Garside these constitutional issues are resolved.

Respectfully Submitted,

S:// Anh "Joseph" Cao
Cao Law Firm
2439 Manhattan Blvd., Ste. 302
Harvey, Louisiana 70058
Tel: 504-367-5001
Email: acao@loyno.edu

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing response has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court of the Eastern District of Louisiana by using the CM/ECF System, which will send notice in accordance with the procedures established in MDL 2179, on this 7th day of March, 2014.

S:// Anh "Joseph" Cao
Cao Law Firm
2439 Manhattan Blvd., Ste. 302
Harvey, Louisiana 70058
Tel: 504-367-5001
Email: acao@loyno.edu