# EXHIBIT T

Waltzer & Wiygul
504-340-6300
#1199

## BP SPILL LEGAL SERVICES CONTRACT
## BOTH FEDERAL COURT, GCCF and VOO

Name of Individual or Authorized Agent: __CHAM ROBUN DUONG__

Name of Business: __F/V MISS JENNIFER__

I wish to have Waltzer & Wiygul Law Firm represent me in my claims relating to the Deepwater Horizon oil spill. I understand that there are several kinds of claims that I may have. By choosing yes or no below I understand that I am hiring Waltzer & Wiygul to help me with specific kinds of claims. If I do not choose to have Waltzer & Wiygul help me with any part of my claim, I understand that the firm will do nothing on that claim, and it is my responsibility.



1. I am hiring your firm to pursue my claim in Court.
   (Yes)   No __C.D.__ Initial

I hire Waltzer & Wiygul Law Firm ("W&W") to be my attorney, to represent me and/or my business in all court proceedings relating to the Deepwater Horizon oil spill, including the proceeding before Judge Barbier in the Eastern District of Louisiana, Case No. MDL 2179.

> Fee: I agree to pay Waltzer & Wiygul a contingent fee for representing me in court, set at twenty five percent (25%) of the gross amount received from the settlement or prosecution of my court case. W&W may lower this fee, but not raise it, without my having to sign a new agreement. I will not owe W&W any fees if W&W fails to recover for me in Court.

2. I am hiring your firm to pursue my claim with the GCCF.   Yes   (No) __C.D.__ Initial

I hire Waltzer & Wiygul Law Firm ("W&W") to be my attorney, to represent me and/or my business in all my claims with the Gulf Coast Claims Facility ("GCCF"). You represent me for all spill claims including claims for my economic loss.

> Fee: I agree to pay W&W a contingent fee of eighteen percent (18%) of any funds sent to me by GCCF after the date of signing this contract. W&W may lower these fees, but not raise them, without my having to sign a new agreement. I will not owe W&W any fees if W&W does not recover for me.

3. I am hiring your firm to pursue my VOO claim.   (Yes)   No __C.D.__ Initial

I am hiring Waltzer & Wiygul to pursue my claim resulting from my participation in the Vessel of Opportunity program.

> Fee: I agree to pay W&W a contingent fee of eighteen percent (18%) of any funds sent to me by BP or any other party for any VOO claim after the date of signing this contract. If my VOO claim has to go to court, the fee will be the 25% of whatever is recovered from the

settlement or prosecution of the court case.

**4. Your firm has full authority to protect my interests in the claims I hired you to pursue.**

I empower Waltzer & Wiygul to take any action W&W deems appropriate to represent me in the claims I have hired the firm to pursue. This includes investigating and prosecuting claims for relief and damages against all responsible parties, and asserting my claims in any class action or separate from any class action. I also authorize W&W to negotiate a resolution of my claims, subject to my approval.

**5. What I should do if GCCF sends a check directly to me.**

GCCF often sends checks directly to the claimant. If I get a check from GCCF, issued after the date of this contract, I agree to bring the check to W&W. W&W will put the funds into Waltzer & Wiygul's trust account, and, after deducting any costs and fees, disburse to me those funds.



**6. What costs I will pay and when.**

Waltzer & Wiygul have explained that some costs will be expended in proving my case in court (e.g. filing fees, court costs, deposition, travel costs, expert costs). The Court may also order that I pay a proportional share of the class action costs, related to proving common facts and common injuries. These costs are shared by me and all other claimants. I will pay these direct and proportional costs from any settlement or judgment funds recovered in my court case. I will not pay any costs up front and I will never owe more money in costs than I receive. I will assist W&W in holding down costs by responding to requests for information in a timely manner.

**7. Final claims and releases.**

Because signing a final release will likely end my court case, I do agree to notify W&W before I accept a final offer or sign a final release. I retain the right to make any decision I wish.

**8. How any settlement or award will be divided.**

I agree that W&W will deduct its attorneys' fees from my gross recovery in the court case, then deduct my direct and proportional expenses. I will receive the balance. In no event will the amount of fee W&W receives for work directly attributable to my case exceed the amount of money I receive in the end.

**9. My claim is one of many and my lawyer is part of a collaborative effort in court.**

W&W represents many plaintiffs with claims both similar and different from mine in this spill. W&W is also working with other lawyers in this court case for the common benefit, for the good of entire class of individuals harmed by the spill. I give my consent for W&W to represent other plaintiffs in this spill and to do "common benefit" work. I specifically waive any conflict of interest this may produce. I believe W&W is proceeding in the best interest of all individuals similarly situated to me, and to litigate and settle all of our claims in a manner fairest to all. I

retain the right, however, to timely approve or disapprove of any settlement or other agreement with respect to my claims, or opt out of any class, as provided by law.

10. My lawyer may have other lawyers help him with my claim.

W&W has explained to me, and I already knew, that this is a very large, complex case. Because of the resources needed to prosecute this case, including my own claim, I permit W&W to team with other lawyers and firms who in W&W's judgment may assist in the facilitation or prosecution of my case. W&W will at all times remain responsible to me for my case.

11. This is our entire deal.

I agree that this contract alone governs our relationship, that it has not been modified orally or in writing, that it supersedes all prior contracts and may be amended only in writing by consent of both parties. If any clause is deemed invalid, all remainder shall continue in full force.

12. You are my only lawyer.

I am hiring you to handle the parts of my BP case I checked above. I will not hire other lawyers to handle these pieces of my BP case. I discharge any other lawyer I did hire, or may have hired, prior to this date. You have my permission to tell that lawyer so.

This 22nd day of March, 2012.

_[signature]_
Waltzer & Wiygul
3715 Westbank Expressway, Suite 13
Harvey, Louisiana 70058
Tel: (504) 340-6300 / fax (504) 270-0930

14899 Chef Menteur Hwy., Suite D
New Orleans, Louisiana 70129
Tel: (504) 254-1403 / fax (504) 254-1133; or

1011 Iberville Drive
Ocean Springs, MS 39564
Tel: (228) 872-1125 / fax (228) 872-1125

joel@waltzerlaw.com or robert@walkerlaw.com
See: www.bpclaims.us or www.waltzerlaw.com

Client's Signature: Channie Truong    title: owner & captain
Printed Name: Champeam Duong
Address: 105 W. Gulf Dr.
Buras, LA 70041
Phone: 504-912-1927
Fax/Business: 504-912-1927

WW Class Contingent Fee K-Atty - 4/17/11

## AFFIDAVIT

STATE OF LOUISIANA
PARISH OF JEFFERSON:

BE IT KNOWN THAT on this 8th day of November, 2013, before me, the undersigned Notary, PERSONALLY CAME AND APPEARED:

### CHAMROEUN DUONG

a person of the full age of majority and resident of Plaquemines Parish, State of Louisiana, who declared under oath to me, the Notary, under the penalty of perjury the following:

1) I, Chamroeun Duong, am a resident of Plaquemines Parish;

2) I own and operate a 38 ft. shrimping vessel "F/V Miss Jennie D;"

3) I operate my fishing vessel in the Gulf of Mexico, therefore the BP Oil Spill of April 20, 2010 nearly destroyed my livelihood;

4) After the oil spill there were many plaintiffs firms coming from out of state, and I was skeptical of them, so I wanted to handle all of the claims myself and did not want any firm to be involved in my personal economic loss seafood claims;

5) Thus, when the GCCF was established after the oil spill, I filed all claims for myself;

6) On or about August 17, 2011 I hired the Cao Law Firm to pursue my claim against BP for violating the Master Vessel Charter Agreement, i.e. the Vessel of Opportunity (VoO) claim;

7) I continued to handle my GCCF claim on my own;

8) On, or about, March of 2012, a fisherman friend of mine asked me whether or not I have signed a "short form against Transocean" because the deadline was approaching;

9) I asked him what "What short form?", and he said Waltzer, Wiygul & Garside (WWG) would file the "short form" for me;

10) On March 22, 2012, I went over to WWG with the intent of asking them to only file a Short From Joinder against Transocean for me;

11) When I got to WWG, Ms. Binh greeted me and showed me WWG's contract;

12) She then enquired about my VoO claim, and I told her the Cao Law Firm was

representing me;

13) Ms. Binh then told me that WWG could not file a short form for me in federal court unless I discharge the Cao Law Firm from the VoO claim;

14) Based on her representation, I discharge the Cao Law Firm on March 22, 2012;

15) Ms. Binh then asked me about my Gulf Coast Claims Facility (GCCF) claim, and I told her I did not want WWG to represent me in my GCCF claim;

16) I initialed "No" at provision No. 2 of WWG's contract;

17) After signing the contract, I then left;

18) But I grew very unhappy with them for their services;

19) On May 18, 2012, I went to WWG to discharge them;

20) When I got to the firm, I went to see Ms. Binh and told her that I wanted to discharge WWG;

21) She went and told Mr. Waltzer who came out and tried to convince me to stay with them;

22) He then went into Ms. Binh's office and brought out the Summary Sheet and told me that they could get me $216,427.00 if I were to sign with them;

23) After signing the Summary Sheet acknowledging that they have explained the Summary Sheet to me, I told them that I still wanted to discharge them;

24) Mr. Waltzer then resumed his attempt to try to convince me to remain with them, and I sat there and listened without saying a word;

25) He finally gave up and said, "This is a bad conversation, go ahead and discharge him."

26) A secretary drafted a discharge letter, I signed it and left.

27) On July 26, 2012, I returned to the Cao Law Firm and asked them to resume representing me on my VoO claim;

28) I also signed a contract with the Cao Law Firm on July 26, 2012 for my seafood economic loss claim;

29) This was my first time signing an official contract with a firm for my seafood economic loss claim;

30) The Cao Law Firm continues to represent me for all of my claims to this very day;

31) I also authorize the Cao Law Firm to use my affidavit for other people who are in the same situation as I am against WWG.

_____
CHAMROEN DUONG

Sworn to and subscribed on this 8th day of November, 2013.

_____
ANH CAO (BAR NO. 26836)
NOTARY PUBLIC