# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, | * * * * | MDL No. 2179 |
| | * | Section: J |
| This Pleading applies to: | * * | Judge Barbier |
| All Cases | * * * | Magistrate Judge Shushan |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**BP'S MEMORANDUM OF LAW IN OPPOSITION TO
TRANSOCEAN'S, ALABAMA'S, AND PLAINTIFFS' JOINT MOTION
<u>FOR LEAVE TO SUPPLEMENT PHASE TWO TRIAL RECORD</u>**

March 10, 2014

*/s/ Don K. Haycraft*
Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Paul D. Collier
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000

C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP Exploration & Production Inc., BP America Production Co., and BP p.l.c.*

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................1

II. LEGAL STANDARD............................................................................................................2

III. ARGUMENT.........................................................................................................................3

    A. BP Would Be Unduly Prejudiced By Reopening the Phase Two Record. ..............4

        1. BP Would Be Unduly Prejudiced By Admitting Testimony From An Unrelated Criminal Trial In Which It Did Not Participate. ...................4

        2. BP Would Be Unduly Prejudiced If This Testimony Were Admitted Because It Will Necessitate BP Having to Supplement the Record. ...................................................................................................5

    B. Mr. Kirton's Testimony Is Not Sufficiently Probative to Reopen the Record. ........................................................................................................................7

        1. Mr. Kirton's Testimony Is Not "New" Probative Evidence. ........................7

        2. Reopening the Phase Two Record to Admit Mr. Kirton's Testimony Will Invite Further Procedural Disruption................................9

    C. The Moving Parties Have No Bona Fide Reason For Failing to Obtain Mr. Kirton's Testimony During the MDL-2179 Proceeding.......................................10

IV. CONCLUSION....................................................................................................................13

# **TABLE OF AUTHORITIES**

**Cases**

*Chaabi v. United States.*,
  544 A.2d 1247 (D.C. 1998) .................................................................................................. 5

*Dixon v. United States*,
  333 F.2d 348 (5th Cir. 1964) ................................................................................................ 2

*Garcia v. Woman's Hosp. of Texas*,
  97 F.3d 810 (5th Cir. 1996) ..................................................................................... 2, 3, 11, 12

*Greer v. Tidewater, Inc.*,
  Civ. A. 01-105, 2002 WL 1041862 (E.D. La. May 20, 2002) (Barbier) .......................... passim

*Harris v. United States*,
  834 A.2d 106 (D.C. 2003) .................................................................................................... 5

*In re Marques*,
  358 B.R. 188 (Bankr. E.D. Pa. 2006) .................................................................................. 11

*Johns v. Cottom*,
  284 A.2d 50 (D.C. 1971) ...................................................................................................... 5

*Lirette v. Popich Bros. Water Trans., Inc.*,
  660 F.2d 142 (5th Cir. 1981) ........................................................................................ 3, 7, 8

*Lussier v. Runyon*,
  50 F.3d 1103 (1st Cir. 1995) .............................................................................................. 3, 4

*Mercexchange, L.L.C. v. eBay, Inc.*,
  467 F. Supp. 2d 608 (E.D. Va. 2006) ................................................................................. 3, 4

*Rivera-Flores v. Puerto Rico Tel. Co.*,
  64 F.3d 742 (1st Cir. 1995) ......................................................................................... 3, 11, 12

*Robinson v. C.I.R.*,
  70 F.3d 34 (5th Cir. 1995) ............................................................................................. 11, 12

*United States v. Woo*,
  917 F.2d 96 (2d Cir. 1990) .................................................................................................... 5

**Rules**

Fed. R. Evid. 801(d)(2)(D) ...................................................................................................... 4, 5

## I.	INTRODUCTION

This Court closed the Phase Two record on November 7, 2013, after receiving testimony from fifty witnesses and admitting over 1,000 trial exhibits into evidence. (Rec. Doc. 11944.) Now, after having ample opportunity to provide evidence in support of their assertions, Transocean, the Plaintiffs' Steering Committee, and the State of Alabama (collectively, the "Moving Parties") seek to reopen the record with so-called "new" evidence from the *Mix* criminal trial, none of which merits such an outcome for several reasons.

First, the testimonial excerpts that the Moving Parties seek to admit are not the significant admissions that they contend. It is only through the distorted lens of their submission that this testimony may appear to have any probative value. The testimony of George ("Bill") Kirton, the BP Engineering Manager for the Top Kill team, from the Kurt Mix criminal proceeding does not "confirm that BP's lies about the oil flow rate in May 2010 corrupted the source control process," as the Moving Parties contend. Rather, Mr. Kirton's testimony, as well as other evidence from the same trial, is consistent with and supports the Phase Two evidentiary record showing that flow rate estimates based on unknown and uncertain well conditions did not influence source control decisions, such as the decision to implement Top Kill.

Second, BP Exploration & Production Inc. and BP America Production Company (collectively BP)[1] will suffer undue prejudice if the Court were to admit this testimony from a criminal trial where BP was not a party, did not participate, and where the parties had interests that differed from BP. BP therefore did not have the required procedural and evidentiary safeguards that it would have otherwise been afforded had Mr. Kirton's testimony been properly obtained in the MDL-2179 proceedings. Further, if admitted, BP would itself, at a minimum,

---

[1] While BP p.l.c. is also a named defendant to certain claims brought by the Moving Parties, there is no evidence that it had any direct role in the events leading to the April 20 blowout or the subsequent response.

need to parse through 2,800 pages of trial record in the *Mix* proceeding, and other potentially relevant sources, to identify responsive evidence to supplement the Phase Two record to put the Moving Parties' excerpted testimony in its proper light.

Third, the Moving Parties offer no justification for failing to pursue the testimony they now seek to admit. Despite making the Top Kill procedure the centerpiece of their Phase Two source control claims, the Moving Parties chose not to depose Mr. Kirton. The Moving Parties' belated effort to remedy this oversight by seeking to backdoor testimony from an unrelated criminal trial is improper. It is not "new" evidence that warrants reopening the record when the Moving Parties had access to obtain the testimony but failed due to their own lack of diligence. *Greer v. Tidewater, Inc.*, Civ. A. 01-105, 2002 WL 1041862, *2 (E.D. La. May 20, 2002) (Barbier).

A court should exercise extreme care before reopening the record to admit additional evidence, *Dixon v. United States*, 333 F.2d 348 (5th Cir. 1964), and each of these factors – the undue prejudice to BP, the lack of probative value, and the lack of the Moving Parties' diligence in pursuing this testimony – weigh heavily against re-opening the record here. Because the Moving Parties have not met their burden to justify reopening the record, BP respectfully requests that the Court deny the Moving Parties' motion.

## II.   LEGAL STANDARD

Before reopening the record to admit evidence, the Court should consider "the importance and probative value of the evidence, the reason for the moving party's failure to introduce the evidence earlier, and the possibility of prejudice to the non-moving party." *Greer*, 2002 WL 1041862, *2; *Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 814 (5th Cir. 1996). A court, therefore, is well within its discretion to refuse to reopen the record where the new evidence is insufficiently probative to offset the procedural disruption or prejudice to the non-

2

moving party.  *Garcia*, 97 F.3d at 814; *Rivera-Flores v. Puerto Rico Tel. Co.*, 64 F.3d 742, 746 (1st Cir. 1995).  For example, "new" evidence that is simply cumulative of admitted evidence is an insufficient reason to reopen the record.  *Lirette v. Popich Bros. Water Trans., Inc.*, 660 F.2d 142, 145 (5th Cir. 1981).

If the Court does reopen the record, it may not "under ***any*** circumstances consider evidence advanced by one party concerning disputed material facts that the opposing party is not presented an opportunity to challenge."  *Mercexchange, L.L.C. v. eBay, Inc.*, 467 F. Supp. 2d 608, 617 (E.D. Va. 2006) (emphasis added), *see Lussier v. Runyon*, 50 F.3d 1103, 1114 (1st Cir. 1995) ("[J]udges may not defenestrate established evidentiary processes, thereby rendering inoperative the standard mechanisms of proof and scrutiny…").  Our system is one of managed adversarial relationships and BP is entitled to the evidentiary and procedural guarantees afforded by that system.  *Mercexchange*, 467 F. Supp. 2d at 617; *Lussier*, 50 F.3d at 1114-15.  Though the record should remain closed, if reopened, at a minimum, BP should be granted a fair and equal opportunity to investigate the facts and fully develop the evidence.  *Mercexchange*, 467 F. Supp. 2d at 617.

### III.   ARGUMENT

The Moving Parties ignore the undue prejudice that BP would suffer from reopening the record to admit Mr. Kirton's excerpted testimony, and they offer no explanation, much less a credible justification, for failing to obtain his testimony during the MDL-2179 proceedings.  Further, Mr. Kirton's testimony, when read in context, is consistent with the Phase Two record, and therefore not of sufficient probative value to outweigh the procedural disruption and prejudice to BP.  The Moving Parties simply have failed to meet their burden to support reopening the record.

### A.     BP Would Be Unduly Prejudiced By Reopening the Phase Two Record.

#### 1.     BP Would Be Unduly Prejudiced By Admitting Testimony From An Unrelated Criminal Trial In Which It Did Not Participate.

The United States and Mr. Mix, through their counsel, were the only parties to examine Mr. Kirton during the *Mix* criminal trial, and neither had the same legal interests in developing Mr. Kirton's testimony as BP had during the Phase Two proceeding. BP had neither the opportunity to examine Mr. Kirton on the issues that were relevant to Phase Two, nor the ability to assert the procedural safeguards for ensuring that his testimony was properly admitted. *See Mercexchange*, 467 F. Supp. 2d at 617; *Lussier*, 50 F.3d at 1114-15.

It is a fundamental judicial principle that a court cannot consider new evidence concerning disputed adjudicative facts. *Lussier*, 50 F.3d at 1113 (overturning trial court's admission of a post-trial status report concerning disability benefits which it used to reduce its previous award); *Mercexchange*, 467 F. Supp. 2d at 616-18 (reopening the record but only after granting all parties the ability to conduct further depositions and discovery into the new evidence submitted); *Greer*, 2002 WL 1041862, *2 (denying motion to reopen the record on the grounds that admitting new evidence would necessitate additional testimony and discovery). Yet this is exactly what the Moving Parties seek to do, asking the Court to supplement the record with testimony that was obtained outside the Phase Two trial and beyond the "evidentiary and procedural guarantees" to which BP is entitled. *Lussier*, 50 F.3d at 1115.

The Moving Parties disregard the prejudice that BP would suffer and merely contend that Mr. Kirton's testimony is admissible under Fed. R. Evid. 801(d)(2)(D) as a party-opponent admission. Their position ignores, however, that Mr. Kirton's testimony is being admitted after the Phase Two record has been closed and thus contravenes a fundamental premise of the party-opponent evidentiary rule — *i.e.*, that the party-opponent is afforded the opportunity to explain

4

the assertion.  Rule 801(d)(2) allows for admission of party-opponent statements because it reasons that the party-opponent will have "the full opportunity to put himself on the stand, [to] explain his former assertion," and to "rebut the testimony, thereby avoiding the danger prevented by the hearsay rule…"  *Chaabi v. United States*, 544 A.2d 1247, 1248 (D.C. 1998) (internal punctuation omitted) (quoting 4 J. Wigmore, Evidence § 1048, at 3-5 (Chadbourn rev. 1972); *Johns v. Cottom*, 284 A.2d 50, 53 (D.C. 1971)); *Harris v. United States,* 834 A.2d 106, 116 (D.C. 2003); *see also* 6 Handbook of Fed. Evid. § 801:15 (7th ed.).  Stated differently, allowing admissions without a properly laid foundation "has validity only if in fact the admitting party has the opportunity to refute the hearsay admission, [and the] opportunity to refute is not just the generalized opportunity to contradict the fact asserted in the admission…but to explain the specific circumstances and nature of the admission itself…"  *Chaabi*, 544 A.2d at 1249.

The Moving Parties' request circumvents BP's right to explain Mr. Kirton's testimony, the safeguard that would have been available had the Moving Parties properly pursued Mr. Kirton's testimony through the MDL-2179 proceeding.  Admissions may not be received into evidence if, as is clearly the case here, their "probative value is substantially outweighed by countervailing circumstances such as prejudice, confusion of the issues, cumulative testimony, or undue delay."  *Harris*, 834 A.2d at 116 (internal punctuation omitted); Fed. R. Evid. 403.

### 2. BP Would Be Unduly Prejudiced If This Testimony Were Admitted Because It Will Necessitate BP Having to Supplement the Record.

The Moving Parties' effort to introduce Mr. Kirton's testimony further prejudices BP where the Moving Parties have grossly mischaracterized what this excerpted testimony conveys. Although the Moving Parties would like to apply blindly Rule 802(d)(2) to admit this testimony, it does not give them license to use Mr. Kirton's statements "to introduce a 'red herring.'" *Harris*, 834 A.2d at 116 (quoting *United States v. Woo*, 917 F.2d 96, 98 (2d Cir. 1990)).

As one example, the Moving Parties allege that this excerpted testimony conveys "BP's policy of concealing flow rate information even from its own employees" because Mr. Kirton "was not aware of BP's internal flow rate modeling showing rates much higher than 5,000 BOPD." (Joint Mot. For Leave to Supplement Phase II Trial Record (Rec. Doc. 12233) ("Br.") 8 (citing Mix Crim. Tr. 1482:15-19 (Kirton) (testifying about U.S. Exh. 13)[2]; *see also* Br. 5 (alleging Mr. Kirton did not learn that Mr. Mix and Dr. Rygg had modeled flow rates far higher than 5,000 bopd prior to Top Kill).) Mr. Kirton, however, testified in the same proceeding that before Top Kill commenced, he received, but did not review, a BP memorandum that included flow rate numbers higher than 5,000 bopd. (U.S. Exh. 13 (attached as Exh. A) (prior to Top Kill Mr. Kirton received an email stating "Bottom line - do not anticipate underground flow based on this data set," which attached hydraulic modeling results from Mr. Mix and Dr. Rygg that included flow rates higher than 5,000 bopd); Exh. B (excerpts of testimony from the *Mix* trial) at 1480-83 (Kirton) (testifying about U.S. Exh. 13: "So I looked at the e-mail, I saw the bottom line, I read the bottom line, and I didn't feel like I needed to go any further and open this attachment and read it.").) The Moving Parties, therefore, are wrong when they assert that Mr. Kirton's testimony confirmed "BP's policy of concealing flow rate information even from its own employees," because he did receive flow-rate numbers that exceeded 5,000 bopd. Thus, to the extent such information was relevant, Mr. Kirton had modeling estimates under various hypothetical conditions available to him for evaluating Top Kill. (*See also* Exh. B at 1513, 1528-29 (Kirton) (testifying that he received modeling results before Top Kill that included flow-rate numbers, under assumed modeling conditions, up to 110,000 and 87,000 bopd).

---

[2] An excerpt of U.S. Exhibit 13 was admitted during Phase Two as TREX 150252, underscoring that these materials are not "new" evidence.

6

This example alone highlights that BP will be unduly prejudiced if the Moving Parties are permitted to submit excerpted testimony along with self-serving characterizations that are demonstrably wrong when the full transcript is reviewed. If the Court admits Mr. Kirton's excerpted testimony, BP would be forced to examine thousands of pages from the *Mix* trial record, in addition to all other potentially applicable sources, to submit evidence in response to the Moving Parties' submission.

### B. Mr. Kirton's Testimony Is Not Sufficiently Probative to Reopen the Record.

#### 1. Mr. Kirton's Testimony Is Not "New" Probative Evidence.

Courts routinely reject requests to reopen the record where, as here, "new" evidence is simply cumulative of admitted evidence. *Lirette*, 660 F.2d at 145. Mr. Kirton's testimony on Top Kill, when considered as a whole, and not through the self-serving lens of the Moving Parties' submission, is consistent with the evidence presented during Phase Two. Thus, despite the Moving Parties' attempt to distort it, Mr. Kirton's testimony is neither new nor probative.

For example, the Moving Parties assert that "Kirton admitted under oath that BP's plan for the *Top Kill* assumed a flow rate from the well of 5,000 BOPD," which "demonstrates that BP's policy of not sharing flow rate information internally or externally directly corrupted BP's evaluation, selection, and pursuit of the *Top Kill operation*." (Br. 7 (emphasis added) (citing *Mix* Crim. Tr. 1476:1-25, 1486:9-12 (Kirton)); *see also* Br. 1, 3.) To support their contention, the Moving Parties rely on excerpts where Mr. Kirton testified that Dr. Rygg's modeling used an assumed 5,000 bopd flow rate. (Exh. B at 1476). But as Mr. Kirton's own testimony establishes, as well as Phase Two documentary evidence and testimony, Dr. Rygg's modeling was directed to Momentum Kill,[3] not the Top Kill operation as a whole.[4] (Exh. B at 763, 1475-

---

[3] The terms "Dynamic Kill" and "Momentum Kill" were often used interchangeably during the Response. For clarity, the term "Momentum Kill" is used here throughout.

7

76, 1485-86 (Kirton); Phase II Tr. at 170 (Wilson), 1059 (Adams) (Dr. Rygg's modeling was limited to the Momentum Kill portion of Top Kill) (attached as Exh. C); Rygg Dep. 207 (attached as Exh. D) (Dr. Rygg's modeling did not take into account the Junk Shot component of Top Kill); U.S. Exh. 17 (attached as Exh. E)[5]; Cook Dep. 616-18 (attached as Exh. F) (modeling presented to the Federal Science Team during Kill the Well on Paper ("KWOP") related to the limits of Momentum Kill and did not consider how Junk Shot would impact the overall Top Kill procedure).) The Moving Parties thus are seeking to introduce a "red herring" – because Mr. Kirton's excerpted testimony pertains to Dr. Rygg's modeling of Momentum Kill, it is entirely consistent with the evidence adduced during Phase Two that Momentum Kill, but not Top Kill, was dependent on flow rate. (*See* TREX 9245.0002 (KWOP participants informed that "modeling indicates that a dynamic kill can be achieved for a well flowing oil at a rate of 5000 STBpd."); TREX 9135 (federal scientist discussing 5,000 bopd flow rate used at KWOP meeting).) Mr. Kirton's testimony simply does not support the Moving Parties' contention that the Top Kill operation was designed around a 5,000 bopd flow rate estimate.

Again, only with the Moving Parties' distortions does Mr. Kirton's testimony even give the appearance of being probative. Because the testimony, when taken in context, is cumulative of the Phase Two record, there is no justification for reopening the record to admit it. *See Lirette*, 660 F.2d at 145 (5th Cir. 1981).

---

[4] Contrary to the Moving Parties' claims, Mr. Kirton did not testify that the purpose of the KWOP meeting was to discuss work performed "in preparing for the Top Kill" and to determine whether "to attempt the Top Kill." (Br. 4 (citing Mix Crim. Tr. 1483-84).) Indeed, Mr. Kirton did not use the term "Top Kill" at all when describing the KWOP meeting, (*see* Exh. B at 1483-85 (Kirton)) and the Phase Two evidence established that KWOP only addressed the Momentum Kill portion of the operation. (*See* BP's Phase Two Proposed Findings of Fact and Conclusions of Law (Rec. Doc. 12047) § II.B.2.(d)(4).a.). This represents one more attempt by the Moving Parties to incorrectly blur the distinction between Momentum Kill and Top Kill to make flow-rate estimates relevant to the Top Kill procedure. (*See* BP Post-Trial Reply Br. (Rec. Doc. 12226) 16-17.)

[5] U.S. Exhibit 17 was admitted during Phase Two as TREX 9245.

8

### 2.     Reopening the Phase Two Record to Admit Mr. Kirton's Testimony Will Invite Further Procedural Disruption.

Even if this evidence were "new" or probative, which it is not, it would not justify the disruption that would be caused by reopening the record. As this Court has previously found, reopening the record will often necessitate additional discovery or testimony by the non-moving party, which only adds to the procedural disruption. *Greer*, 2002 WL 1041862, *2 (denying motion to reopen the record to include medical records received by counsel prior to trial which would necessitate additional discovery and the submission of additional testimony). As discussed previously, were this testimony admitted, BP must be afforded the opportunity to also submit additional evidence related to Top Kill.

For example, BP would seek to submit testimony establishing, among other things, that the federal government generated independent flow-rate estimates in excess of 5,000 bopd in advance of Top Kill. (Exh. B at 1410-11 (Redmond) (federal scientist calculated flow rates ranging from 7,496 to 37,505 bopd before Top Kill commenced); 1198 (Baker) (the National Laboratories presented flow-rate calculations of 7,495 bopd to 37,505 bopd on May 16, ten days before Top Kill commenced).) BP would also submit evidence establishing that the National Laboratories recommended proceeding with Top Kill. (Exh. B at 1421 (Ammerman) (federal scientist testified that the National Laboratories "agreed with BP's assessment [of Top Kill]" and "recommended to proceed" with the operation).)

In addition, there is also evidence to rebut the Moving Parties' contention that flow-rate numbers in excess of 15,000 bopd were not discussed at the KWOP meeting. (Br. 1.) Testimony provided at the *Mix* trial established that BP's contractors shared flow-rate numbers in excess of 15,000 bopd at the KWOP meeting. (Exh. B at 2349, 2350, 2367, 2405-06, 2419-20, 2414 (Rygg).) Specifically, BP contractor Dr. Rygg testified at the *Mix* trial that he

9

presented modeling work at the KWOP meeting, where the United States was present, which showed potential flow rates higher than 15,000 bopd with worst-case flow rates ranging from 37,000 to 87,000 bopd.  (Exh. B at 2393-95, 2397-99 (Rygg).)  This testimony directly contradicts the Moving Parties' distorted assertion that BP and its contractors failed to share flow-rate numbers in excess of 15,000 bopd with the federal government before Top Kill.

Because of the inevitable procedural disruption that reopening the record creates, this Court has rejected such requests unless there is a showing that the new evidence has significant probative value.  *Greer*, 2002 WL 1041862, *2.  Here, Mr. Kirton's testimony does not justify the procedural disruption.

Further, if the Phase Two record is reopened to add Mr. Kirton's testimony, the Court can fully expect similar motions will be filed.  As the Court is well aware, many cases related to the *Deepwater Horizon* incident are pending, including several before this Court.  If the record is reopened for this submission, it will only invite the parties to seek further opportunities to submit "new" evidence to the Court.[6]

### C. The Moving Parties Have No Bona Fide Reason For Failing to Obtain Mr. Kirton's Testimony During the MDL-2179 Proceeding.

It is each party's responsibility to include all evidence it deems necessary to proving its claims in the original record.  "A premium must necessarily be placed on preparation and diligence, and evidence which is simply the product of an afterthought, no matter how pertinent it may have been if timely offered, will not, except in the most extraordinary circumstances, be received at this late stage of the proceedings."  4 Handbook of Fed. Evid. § 611:5 (7th ed.).  Parties are not entitled to fish through other proceedings for the evidence they failed to properly

---

[6] For example, BP could submit deposition testimony from witnesses such as Kelly McAughan or Jasper Peijs recently taken in MDL 2185 regarding their work on flow rate modeling that directly refutes incorrect assertions made by Moving Parties in Phase Two.  As such, the record would remain open indefinitely.

introduce in their own case, especially when they had every opportunity to gather that information in the first place.

Accordingly, the law is clear that a motion to reopen the record should be denied where the evidence the party seeks to present was "available at trial, or could have been obtained with reasonable diligence." *Greer*, 2002 WL 1041862, *2; *Robinson v. C.I.R.*, 70 F.3d 34, 39 (5th Cir. 1995). Courts routinely deny requests to reopen the record where the moving party fails to offer a "bona fide explanation" for its failure to introduce the new evidence before it rested its case. *See, e.g.*, *Rivera-Flores*, 64 F.3d at 747; *Greer*, 2002 WL 1041862, *2 (denying motion to reopen the record partially based on counsel's admission that the "new" evidence was received by counsel prior to trial). Bona fide explanations include a "misunderstanding among the parties and trial court" or an "ambiguity of the rules of practice and procedure." *In re Marques*, 358 B.R. 188, 198 (Bankr. E.D. Pa. 2006); *Garcia*, 97 F.3d at 814. The Moving Parties allege that it may be an abuse of discretion to refuse to reopen the record to consider probative evidence, (Br. 6) but the failure to present the proof necessary for a judgment in the Moving Parties' favor rests with them, not the Court. *Marques*, 358 B.R. at 198 ("[T]he failure to put in to evidence all the proof necessary for a judgment is fatal error.")

The Moving Parties can offer no reasonable justification for failing to obtain testimony from Mr. Kirton as part of the MDL-2179 proceedings, which alone is fatal to their request. *Greer*, 2002 WL 1041862, *2 (denying the request to reopen the record in part based on the finding that there was no sufficient justification as to why the evidence was not submitted during trial). The Moving Parties have been on notice for years that Mr. Kirton had a role in the Top Kill operations: in at least fourteen depositions dating back to 2011, deponents testified about Mr. Kirton's Top Kill involvement and identified him as the Engineering Manager for the Top

11

Kill team.  (*See* Exh. D (excerpts from Allen Dep. 362-63; Brannon Dep. 157-58; Chu Dep. 304-05; DeCoste Dep. 192; Holt Dep. 19-20, 69-70, 166-70, 239-40, 294, 308-09, 561-62, 573-75; Landry Dep. 631-32; Patteson Dep. Vol. II 100-103; Quitzau Dep. 54-55, 175, 284; Ross Dep. 155-56, 158; Rygg Dep. 209-10, 282-83; Thierens Dep. 109-11; Tooms Dep. 200, 304-05; Vargo Dep. 40-41; Yilmaz Dep. at 418).)  With full knowledge of his Top Kill role, the Moving Parties elected not to depose him in MDL-2179 and instead, prioritized the depositions of hundreds of other individuals.  While Mr. Kirton's testimony in *United States v. Mix* came after the conclusion of the Phase Two trial, the parties had every opportunity to identify Mr. Kirton as a witness in MDL-2179 and chose not to do so.

This situation bears no resemblance to the circumstances under which courts grant requests to reopen the record, and the Moving Parties cite no cases in which a court reopened a record to admit testimony that otherwise could have been obtained had the moving party been more diligent.  *See, e.g.*, *Rivera-Flores*, 64 F.3d at 747-48 (where plaintiff refrained from introducing certain evidence based on her reasonable interpretation of an ambiguous court order, she was entitled to reopen the record to present evidence); *Garcia*, 97 F.3d at 814 (plaintiff subpoenaed a witness critical to her claims who failed to appear).  With reasonable diligence, the Moving Parties could have obtained Mr. Kirton's testimony through the proper procedures in this matter.  *Robinson*, 70 F.3d at 39.  Reopening the record to add more evidence to the extensive Phase Two record because of the Moving Parties' lack of diligence is not appropriate.

The Moving Parties contend that BP's prior motion to supplement the record with information disclosed in Halliburton's post-trial guilty plea agreement (Rec. Doc. 11005) somehow weighs in favor of reopening the record in this instance.  (Br. 5)  Yet, the evidence is distinguishable and none of the bases for reopening the record to admit Halliburton's plea

12

agreement apply here.  The Halliburton plea agreement contains a factual allocution that was provided by Halliburton in a case in which Halliburton was a key party: the defendant.  Unlike Mr. Kirton's testimony, which BP did not have the chance to develop as it was not a party to the *Mix* case, Halliburton's factual allocution is a full, stand-alone admission by Halliburton that was developed and affirmatively put forth by Halliburton as part of its guilty plea.  Further, BP sought to enter Halliburton's criminal plea in its entirety, rather than the cherry-picked excerpts taken out of context that the Moving Parties seek to introduce.

## IV. CONCLUSION

Respectfully, BP requests that this Court deny the Joint Motion for Leave to Supplement the Phase Two Trial Record.  Should the Court be inclined to grant the Moving Parties' motion, BP requests an opportunity to identify and proffer additional evidence in response to the testimony identified by the Moving Parties.

March 10, 2014                                    Respectfully submitted,

*/s/ Don K. Haycraft*
Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Paul D. Collier
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000

C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP Exploration & Production Inc., BP America Production Co., and BP p.l.c.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 10th day of March 2014.

*/s/ Don K. Haycraft*
Don K. Haycraft