## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | **MDL No. 2179** |
| This document relates to: | **Section: J** |
| | **District Judge Barbier** |

In Re: Oil Spill by the Oil Rig "Deepwater

Horizon" in the Gulf of Mexico, on April
20, 2010

This document relates to:

- **10-4182** *(Alabama v. BP)*
- **10-4183** *(Alabama v. Transocean, et al)*
- **13-2645** *(Alabama v. Anadarko & MOEX)*
- **13-2646** *(Alabama v. Transocean)*
- **13-2647** *(Alabama v. Halliburton)*
- **13-2813** *(Alabama v. BP)*

**MDL No. 2179**

**Section: J**

**District Judge Barbier**

**Magistrate Judge Shushan**

---

## THE STATE OF MISSISSIPPI'S MEMORANDUM IN SUPPORT OF THE STATE OF ALABAMA'S OPPOSITION TO BP'S MOTION TO STRIKE JURY TRIAL DEMAND

---

Pursuant to this Court's order of January 14, 2014, the State of Mississippi offers this memorandum in support of the State of Alabama's opposition to the motion to strike its jury demand filed by BP America Production Company, BP Exploration & Production Inc. and BP p.l.c. (collectively referred to herein as "BP").

Jim Hood
550 High Street, Ste. 1200
Jackson, MS 39201
T: 601.359.3680
F: 601.359.4231

ATTORNEY GENERAL OF
THE STATE OF MISSISSIPPI

Michael C. Moore
D. Lee Martin
Jonathan B. Compretta
MIKE MOORE LAW FIRM, LLC
P.O. Box 321048
Flowood, MS 39232-1048
T: 601.933.0070
F: 601.933.0071

SPECIAL ASSISTANT
ATTORNEYS GENERAL OF
THE STATE OF MISSISSIPPI

William M. Quin II
MCCRANEY MONTAGNET QUIN
& NOBLE, PLLC
602 Steed Road, Ste. 200
Ridgeland, MS 39157
T: 601.707.5725
F: 601.510.2939

SPECIAL ASSISTANT
ATTORNEY GENERAL OF
THE STATE OF MISSISSIPP

# TABLE OF CONTENTS

**Page(s)**

I. SUMMARY OF THE ARGUMENT ...........................................................................1

II. ARGUMENT ..........................................................................................................2

    I. Alabama's claim for OPA damages is tantamount to the common law writs of trespass and nuisance ..........................................................................2

    II. Alabama seeks money damages and such are clearly legal in nature ....................4

        A. Tax losses sustained by the plaintiff due to the fault of the defendant are recoverable in a common law action ........................................................4

            1. Alabama has Article III standing ...................................................6

            2. OPA does not bar a right to trial by jury.........................................7

        B. Alabama's natural resource damages claim is legal in nature ....................8

        C. Alabama's removal costs claim is legal in nature .......................................8

III. CONCLUSION......................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                     Pages(s)

*Amato v. KPMG, LLP,*
    2006 U.S. Dist. LEXIS 57091 (M.D. Penn. 2006) ............................................................5

*Bancroft v. Indemnity Ins. Co.,*
    203 F. Supp. 49 (W.D. La. 1962)....................................................................................4

*Borst v. Chevron Corp.,*
    36 F. 3d 1308, 1324 (5th Cir. 1994) ...........................................................................7, 8

*Carey v. Klutznick,*
    637 F. 2d 834, 838 (2nd Cir. 1980)..................................................................................6

*Chauffers, Teamsters, and Helpers, Local No. 391 v. Terry,*
    494 U.S. 558, 110 S.Ct. 1339, 1348, 108 L. Ed. 2d 519 (1990).......................................9

*Chiles v. Thornburgh,*
    865 F. 2d 1197, 1208 (11th Cir. 1989) ............................................................................6

*City of New York v. Milhelm Attea & Bros., Inc.,*
    2012 U.S. Dist. LEXIS 116533, *40 (E.D. N.Y. 2012).....................................................6

*City of Willacoochee, Georgia v. Baldrige,*
    556 F. Supp. 551, 553-554 (S.D. Ga. 1983) ...................................................................6

*Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.,*
    521 So. 2d 857, 860 (Miss. 1988)...................................................................................4

*Deloitte, Haskins & Sells v. Green,*
    403 S.E. 2d 818, 819-20 (Ct. App. Ga 1991)...................................................................4

*Department of Energy v. Louisiana,*
    690 F. 2d 180, 187 (TECA 1982)....................................................................................6

*Eckert Cold Storage, Inc. v. Behl,*
    943 F. Supp. 1230, 1234-35 (E. D. Cal. 1996) ................................................................5

*Estate of Smith v. Underwood,*
    487 S.E.2d 807, 814 (N.C. App. 1997)............................................................................5

*Great-West Life & Annuity Ins. v. Knudson,*
    534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002) ............................................7, 9

*Henderson v. Domingue,*
    626 So. 2d 555 (La. App. 3rd Cir. 1993) ...................................................................4

*Iowa ex rel. Miller v. Block,*
    771 F.2d 347, 353 (8th Cir. 1985) ..........................................................................5

*Jewish Hospital of St. Louis v. Boatman's National Bank,*
    633 N.E.2d 1267, 1279 (Ill. App. 1994) ................................................................4

*Jobe v. International Ins. Co.,*
    933 F. Supp. 844, 860 (D. Ariz. 1995) ..................................................................5

*Lambert v. Matthews,*
    757 So. 2d 1066, 1069 (Miss. App. 2000) .............................................................4

*Leaf River Forest Products v. Ferguson,*
    662 So. 2d 648, 664 (Miss. 1995) ..........................................................................4

*Love Petroleum Co., Inc. v. Jones,*
    205 So. 2d 274, 275 (Miss. 1967) ..........................................................................4

*Mississippi Mills Co. v. Smith,*
    69 Miss. 299, 11 So. 26 ..........................................................................................4

*Pennsylvania v. Krepe,*
    533 F. 2d 668, 672-73 (D.C. Cir. 1976) .................................................................6

*People ex rel. Hartigan v. Cheney,*
    726 F. Supp. 219, 225 (C.D. Ill. 1989) ..................................................................6

*Reich v. Continental Casualty Co.,*
    33 F. 3d 754, 756 (7th Cir. 1994) ..........................................................................9

*Ross v. Bernhard,*
    396 U.S. 531, 538 (1970) ........................................................................................3

*Seippel v. Jenkens & Gilcrest, P.C.,*
    341 F. Supp. 2d 363, 384 (S.D. N.Y. 2004) ..........................................................5

*Sonleitner v. Superior Court,*
    322 P. 2d 496, 497 (Cal. App. 1958) .....................................................................1

*Southland Co. v. Aaron,*
    221 Miss. 59, 72 So. 2d 161 (1954) .......................................................................4

*Standard Oil Co. v. Arizona,*
738 F. 2d 1021, 1031 n. 11 (9th Cir. 1984) ................................................3, 4

*State of Vermont Dep't of Taxes v. Hechanova,*
2010 Vt. Super. LEXIS 2 (Vt. Super. 2010)...................................................1

*Thomas v. Harrah's Vicksburg Corp.,*
734 So. 2d 312 (Miss. 1999)..........................................................................4

*Tull v. United States,*
481 U.S. 412, 417-418 (1987) ........................................................................2

*United States v. New Mexico,*
642 F. 2d 397 (10th Cir. 1981) ......................................................................4

*United States v. Viking Resources, Inc.,*
607 F. Supp. 2d 808, 830-33 (S.D. Tex. 2009) ....................................7, 8, 9, 10

*Vogt v. Abish,*
603 F. Supp. 321 (S.D.N.Y. 1987) ................................................................4

*Williams v. Ely,*
668 N.E.2d 799 (Mass. 1996).........................................................................5

*Yarbrough v. Cooper,*
559 S.W.2d 917, 920-21 (Tex. App. 1977) ....................................................4

*Youn v. Maritime Overseas Corp.,*
623 So. 2d 1257 (La. 1993). ..........................................................................5

## OTHER AUTHORITIES

*The Constitutional Status of Tort Law:*
*Due Process and the Right to a Law for the Redress of Wrongs,*
115 Yale L.J. 524, 547-48 (2005).............................................................1, 2

William Blackstone, 3 Commentaries .................................................................1, 2, 3

Julia A. Dahlbert, Note*: States as Litigants in Federal Court:*
*Whether the Seventh Amendment Right to Jury Trial Applies to States,*
37 Hastings L.J. 637 (1986)...........................................................................4

1 Dan B. Dobbs,
*Law of Remedies 4.2(3), at 579-81 & 5.2(5), at 727 (2nd ed. 1993)* .........................9, 10

Edward Coke, The Second Part of the Institutes of the Lawes of England (1642) ........................3

*Miss. Law of Torts*, § 2-4 and 2-4(a)..........................................................................4

*Miss. Law of Torts*, § 9-2 ..........................................................................................4

*Restatement of Restitution* § 160, Comment a, 641-42 (1936) ..................................9

*Restatement (Second) of Torts* § 821B (1965)..........................................................4

2 The Selected Writings of Sir Edward Coke 870(Steve Sheppard ed., 2003) ............3

## SUMMARY OF THE ARGUMENT

BP is not a corporate taxpayer that is delinquent in making its payments to a governmental taxing authority. BP is a tortfeasor whose conduct caused damage to state governments, and among the damage caused, is losses of tax revenue, response costs and injuries to natural resources.[1] The common law has always granted an injured party the right to sue a wrongdoer for redress of his injuries.[2] As Professor Goldberg explained when discussing Blackstone's *Commentaries*, "[t]he immediate purpose of the typical common law suit was to permit the victim to obtain a pecuniary satisfaction from the wrongdoer as an 'equivalent' to a literal restoration of his rights… Accordingly, a jury would ordinarily be asked to assess damages based on the gravity of the wrongdoer's misconduct toward the victim as well as its consequences for the victim."[3]

It should be readily apparent that Alabama's request for OPA damages is legal in nature. The tax losses and natural resource damages suffered by Alabama are classic tort damages that are routinely allowed in courts all across the country. Moreover, Alabama's plea for response costs is simply a demand that BP pay money to rectify the harm BP has caused the State. This is a legal remedy. Accordingly, BP's motion to strike should be denied.

---

[1] Thus, this case is distinguished from cases in which a taxpayer was found to have no right to a jury trial when contesting a tax assessment. *See, e.g., State of Vermont Dep't of Taxes v. Hechanova*, 2010 Vt. Super. LEXIS 2 (Vt. Super. 2010); *Sonleitner v. Superior Court*, 322 P. 2d 496, 497 (Cal. App. 1958).

[2] *The Constitutional Status of Tort Law: Due Process and the Right to a Law for the Redress of Wrongs*, 115 Yale L. J. 524, 547-48 (2005) (discussing, WILLIAM BLACKSTONE, 3 COMMENTARIES).

[3] *Id.* at 548-49 (discussing, 3 BLACKSTONE *117, 121, 128, 138-39, 146, 220, 397-98).

## ARGUMENT

BP's application of the "two-part test to determine whether an action is a suit at common law under the *Seventh Amendment*"[4] is fatally flawed. As illustrated *infra*, it is clear that Alabama's claim for OPA damages entitles the State to a jury trial.

**I.    Alabama's claim for OPA damages is tantamount to the common law writs of trespass and nuisance.**

English courts described private wrongs or civil injuries as "an infringement or privation of the private or civil rights belonging to individuals, considered as individuals."[5] Professor John C.P. Goldberg explained the system of redress for private wrongs in 18th century England thusly:

> The private wrongs recognized by English municipal law are defined by the common law writs of trespass and case. These actions articulate clusters of relational duties – obligations that require one to act, or refrain from acting, in specified ways toward others so as to avoid interfering with their rights or interests. Blackstone, as Locke had, treated each breach of such a duty as an injuring of that other – i.e., a deprivation of the other's right. He also followed Locke in seeing tort law as a grant to victims of special remedial privileges or powers by which to respond to their injuries. The primary avenue of redress for victims, he explained, is the common law courts; in particular their recognition, under the writs of trespass and case, of "personal actions" for "torts" and "contracts." Blackstone's list of personal tort actions is today entirely recognizable, including assault, battery, defamation, false imprisonment, malicious prosecution, medical malpractice, nuisance, and trespass to land.[6]

Blackstone took great pains to emphasize the importance of allowing a victim to obtain full redress for his injuries, including his identification of certain "auxiliary subordinate rights" afforded Englishmen by the English Constitution. Among these was "the right to apply to the

---

[4] BP's Memo. Supp. Mtn. Strike, p. 19 (quoting, *Tull v. United States*, 481 U.S. 412, 417-418 (1987) (citations omitted)).

[5] *The Constitutional Status of Tort Law: Due Process and the Right to a Law for the Redress of Wrongs*, 115 Yale L. J. 524, 547-48 (2005) (quoting, WILLIAM BLACKSTONE, 3 COMMENTARIES, *2).

[6] *Id.* at 548 (citing, 3 BLACKSTONE *117-18, 120-28, 138 and 157).

courts of justice for redress of injuries"[7] which Blackstone explained this way: "[F]or injury done to him *in bonis, in terries, vel persona*, by any other subject … [the Englishman] may take his remedy by the course of the law, and have justice and right for the injury done to him, freely without sale, **fully without any denial**, and speedily without delay."[8] The right to obtain full redress for injuries was so strong "that the victim, not royal officials, determined whether to set the law of redress 'in motion' and that, once an action for redress was commenced, no one, not even the King, had the right to call it off."[9] Moreover, juries had wide discretion in setting common law damages and were allowed to consider the harm caused the victim as well as the nature of the defendant's conduct.[10]

BP's inability to locate "any actions analogous to a sovereign[11] seeking lost taxes based on a private party defendant injuring a private party plaintiff"[12] is inapposite. The Supreme Court has counseled that "[t]he *Seventh Amendment* question depends upon the nature of the issue to be tried rather than the character of the overall action."[13] And federal appellate courts have recognized that States are entitled to the *Seventh Amendment* right to a jury trial when properly

---

[7] *Id.* at 550 (citing, 1 BLACKSTONE *136-141).

[8] *Id.*at 551 (quoting, 3 BLACKSTONE *137, who was quoting, EDWARD COKE, THE SECOND PART OF THE INSTITUTES OF THE LAWES OF ENGLAND (1642), *reprinted in* 2 THE SELECTED WRITINGS OF SIR EDWARD COKE 870(Steve Sheppard ed., 2003)) (emphasis added).

[9] *Id.* at 555 (citing, 1 BLACKSTONE *138; 3 BLACKSTONE *22; 4 BLACKSTONE *433, 391).

[10] *Id.* at 549 n. 127 (citing, 3 BLACKSTONE *121, 397-98).

[11] It is important to recognize that states are not considered "sovereign when suing in the federal courts. They do not control the court system or enjoy special powers." *Standard Oil Co. v. Arizona*, 738 F. 2d 1021, 1031 n. 11 (9th Cir. 1984), cert. denied, 105 S. Ct. 815 (1985). The right to a jury trial is even more pronounced when "the states are suing in their proprietary, not sovereign, capacities, just as an injured individual or corporation would sue." *Id.* at 1030.

[12] BP's Memo. Supp. Mtn. Strike, p. 19.

[13] *Ross v. Bernhard*, 396 U.S. 531, 538 (1970).

invoked.[14] Thus, the question is whether an 18th century cause of action existed that allowed full and complete recovery of damages as a result of the conduct at issue in the case at bar. The common law actions of trespass[15] and nuisance[16] fit the bill in this case.

## II.   Alabama seeks money damages that are clearly legal in nature.

### A. Tax losses sustained by the plaintiff due to the fault of the defendant are recoverable in a common law action.

Courts around the country routinely allow plaintiffs to recoup tax losses as a form of common law damages.[17] An example of such is the Louisiana appellate decision of *Henderson v.*

---

[14] *Standard Oil Co. v. Arizona*, 738 F. 2d 1021 (9th Cir. 1984), cert. denied, 105 S. Ct. 815 (1985); *United States v. New Mexico*, 642 F. 2d 397 (10th Cir. 1981); see also, Julia A. Dahlbert, Note: *States as Litigants in Federal Court: Whether the Seventh Amendment Right to Jury Trial Applies to States*, 37 Hastings L.J. 637 (1986).

[15] For instance, in Mississippi, "[t]he cause of action for the tort of trespass to land protects a person's interest in the exclusive possession of his land. Trespass can be committed simply by going upon the land of another, as well as placing objects on the land of another.... If damage was done either to the property itself or to an activity carried out on the property, the owner can recover for such damage." Weems & Weems, *Miss. Law of Torts*, § 2-4 and 2-4(a) (citing, *Thomas v. Harrah's Vicksburg Corp.*, 734 So. 2d 312 (Miss. 1999)).

[16] In Mississippi, the private nuisance action is a "nontrespassory invasion of another's interest in the use and enjoyment of his property" that arises when a landowner uses "his property in such a way as to unreasonably annoy, inconvenience or harm others." *Miss. Law of Torts*, § 9-2 (citing, *Lambert v. Matthews*, 757 So. 2d 1066, 1069 (Miss. App. 2000)). A public nuisance is an unreasonable interference with a right common to the general public which may arise when (i) the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or (ii) when the conduct is proscribed by statute, ordinance or administrative regulation, or (iii) when the conduct is of a continuing nature or has produced a permanent or long lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right. *Id.* at § 9-3 (citing, *Leaf River Forest Products v. Ferguson*, 662 So. 2d 648, 664 (Miss. 1995); *Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*, 521 So. 2d 857, 860 (Miss. 1988) (quoting, *Restatement (Second) of Torts* § 821B (1965)). In both actions, the plaintiff may recover "the difference between the value of the property before and after the creation of the nuisance," as well as "special damages as may accrue to him as a direct result of the nuisance." *Id.* at § 9-4 (citing, *Love Petroleum Co., Inc. v. Jones*, 205 So. 2d 274, 275 (Miss. 1967); *Mississippi Mills Co. v. Smith*, 69 Miss. 299, 11 So. 26; *Southland Co. v. Aaron*, 221 Miss. 59, 72 So. 2d 161 (1954)).

[17] See, e.g., *Bancroft v. Indemnity Ins. Co.*, 203 F. Supp. 49 (W.D. La. 1962) (accountant negligently advised client that stock sale will not yield taxable income; accountant liable for tax because client would not have sold shares but for negligent advice); *Yarbrough v. Cooper*, 559 S.W.2d 917, 920-21 (Tex. App. 1977) (allowing recovery in legal malpractice claim measured by plaintiff's $43,000 tax liability); *Vogt v. Abish*, 603 F. Supp. 321 (S.D.N.Y. 1987) (accountant failed to inform client of $15,000 capital loss, causing client to forego sheltering $15,000 capital gain in subsequent years; accountant liable for taxes on $15,000 of capital gains); *Deloitte, Haskins & Sells v. Green*, 403 S.E.2d 818, 819-20 (Ct. App. Ga. 1991) (accountant negligently advised plaintiff that sale of business would result in $30,00 tax liability when actual tax liability was $650,000; accountant may be liable for tax assessment because but for advice plaintiff would not have sold business); *Henderson v. Domingue*, 626 So. 2d 555 (La. App. 3rd Cir. 1993) (allowing recovery in legal malpractice action of damages measured by plaintiff's tax liability); *Jewish Hospital of St. Louis v. Boatman's National Bank*, 633 N.E.2d 1267, 1279 (Ill. App. 1994) (accountant may be liable

4

*Domingue*[18] in which an attorney was sued for legal malpractice. The attorney-defendant
stipulated to liability but contended his negligence did not harm former clients "who had retained
him to represent them in an income tax dispute between them and the Internal Revenue Service
(IRS)."[19] The trial court ruled in favor of the former clients and awarded $130,000 in damages,
which was calculated to represent the tax lien levied against them by the IRS.[20] The Louisiana
Third Circuit Court of Appeal affirmed because the "trier of fact's discretion in the [assessment]
of an award of damages is 'great, and even vast, so that an appellate court should rarely disturb
such an award.'"[21]

BP fails to cite a single case that actually holds "the common law does not recognize
causes of action for lost tax revenues or public expenditures."[22] Instead, BP cites decisions in
which states were found to lack Article III standing to sue the federal government over policy
decisions.[23] BP also cites three decisions in which courts have found the plaintiff had no right to

---

for estate's tax assessment when it negligently failed to render advice that could have led to tax avoidance); *Jobe v. International Ins. Co.*, 933 F. Supp. 844, 860 (D. Ariz. 1995) (applying Arizona law in concluding that appropriate measure of damages is the "difference between what the [taxpayers] would have owed if the tax returns had been properly prepared and they owe now because of the professional's negligence, plus incidental damages"), order withdrawn pursuant to settlement, 1 F. Supp. 2d 1403 (D. Ariz. 1997); *Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1234-35 (E. D. Cal. 1996) (allowing recovery in accounting malpractice action of damages measured by plaintiff's tax liability); *Williams v. Ely*, 668 N.E.2d 799 (Mass. 1996) (allowing recovery in legal malpractice action of damages measured by plaintiff's gift tax liabilities); *Estate of Smith v. Underwood*, 487 S.E.2d 807, 814 (N.C. App. 1997) (affirming an award of damages in a legal/accounting malpractice action that was measured by a tax liability wrongfully incurred by plaintiff); *Seippel v. Jenkens & Gilcrest, P.C.*, 341 F. Supp. 363, 384 (S.D. N.Y. 2004) (recognizing that Virginia law may allow recovery of damages measured by the tax liability incurred by the plaintiff in a fraudulent tax shelter action); *Amato v. KPMG, LLP*, 2006 U.S. Dist. LEXIS 57091 (M.D. Penn. 2006).

[18] 626 So. 2d 555 (La. App. 3rd Cir. 1993).

[19] *Id.* at 556.

[20] *Id.* at 558.

[21] *Id.* (quoting, *Youn v. Maritime Overseas Corp.*, 623 So. 2d 1257 (La. 1993)).

[22] BP's Memo. Supp. Mtn. Strike, p. 19.

[23] *Iowa ex rel. Miller v. Block*, 771 F.2d 347, 353 (8th Cir. 1985) (finding an absence of Article III standing when the State of Iowa argued that "but for the Secretary's implementation of these disaster relief programs, agriculture production will suffer, which will dislocate agriculturally-based industries, forcing unemployment up and state tax

a jury trial when presented with statutory frameworks wholly different than OPA.[24] None of these authorities are applicable.

### 1. Alabama has Article III standing.

The courts in the Article III decisions cited by BP so ruled because the states alleged only "generalized grievance[s] that [do] not give rise to standing."[25] However, "[a] state has standing to sue in its sovereign capacity when it has suffered an economic injury."[26] Numerous courts have found Article III standing when a government has alleged the defendant caused direct harm to its financial interest.[27] So it is in the case *sub judice*. Alabama has alleged direct harm to its financial interest – losses of tax revenue, increased public expenditures, the diminution of the value of natural resources and response costs - caused by BP's tortuous conduct. Article III standing is simply not an issue in this case.

---

revenues, down."); *Pennsylvania v. Krepe*, 533 F. 2d 668, 672-73 (D.C. Cir. 1976) (finding an absence of Article III standing when the State of Pennsylvania challenged the Small Business Administration's failure to allegedly provide sufficient disaster relief following a hurricane); *People ex rel. Hartigan v. Cheney*, 726 F. Supp. 219, 225 (C.D. Ill. 1989) (finding an absence of Article III standing when the State of Illinois sued the federal government attempting to enjoin the closure of an Air Force Base).

[24] BP's Memo. Mtn. Strike, p. 20.

[25] *Hartigan*, 726 F. Supp. at 226.

[26] *Chiles v. Thornburgh*, 865 F. 2d 1197, 1208 (11th Cir. 1989).

[27] See, *City of New York v. Milhelm Attea & Bros., Inc.*, 2012 U.S. Dist. LEXIS 116533, *40 (E.D. N.Y. 2012) ("The City was deprived of tax revenue to which it was entitled the minute the defendants' cigarettes were trafficked into City limits. This lost tax revenue is clearly an injury sufficient for Article III purposes."); see also, *City of Willacoochee, Georgia v. Baldrige*, 556 F. Supp. 551, 553-554 (S.D. Ga. 1983) (finding Article III standing when city filed suit against the federal government to challenge the accuracy of its population count because "[i]t is beyond peradventure that these programs, particularly the revenue-sharing and CETA programs, distribute funds based on data from the Census Bureau and that the loss of these funds due to an inaccurate census would be a distinct and palpable injury."); *Chiles v. Thornburgh*, 865 F. 2d 1197, 1208 (11th Cir. 1989) ("A state has standing to sue in its sovereign capacity when it has suffered an economic injury"); *Department of Energy v. Louisiana*, 690 F. 2d 180, 187 (TECA 1982) (finding Louisiana had standing because "it will lose revenues if the position of the DOE is sustained… Louisiana is faced with refunding royalties and severance tax payments already made if the position with DOE is sustained."); *Carey v. Klutznick*, 637 F. 2d 834, 838 (2nd Cir. 1980) (finding Article III standing because "[t]he individual plaintiffs in this case have alleged concrete harm in the form of dilution of their votes and decreased federal funds flowing to their city and state…").

### 2. OPA does not bar a right to trial by jury.

The three cases cited by BP in support of its argument that Alabama's claim for monetary damages "do[es] not establish a legal right"[28] are easily distinguished. The issue in *Atlas Roofing Co., Inc. v. Occupational Safety and Heath Review Commission*[29] was "whether the *Seventh Amendment* prevents Congress from assigning to an administrative agency … the task of adjudicating violations of OSHA."[30] The issue presented by this motion is whether OPA bars a jury trial, not whether an administrative agency can be properly vested with fact finding.

The issue in *Borst v. Chevron Corp.*[31] was whether an ERISA claim could be tried to a jury. The Fifth Circuit determined it could not because ERISA was clearly based on the law of trusts and the plaintiffs' "request for distribution of surplus assets [was] analogous to an action for disgorgement of improper profits."[32] Unlike the plaintiffs in *Borst*, Alabama does not exclusively seek equitable relief. OPA damages are legal in nature.[33]

Finally, *Rex v. Cia. Pervana de Vapores*[34] addressed whether the language of the *Foreign Sovereign Immunities Act* barred trial by jury. The Third Circuit explained the plain language of *28 U.S.C. § 1330(a)* granted jurisdiction to the federal courts of "nonjury civil action[s]" and that this grant was reinforced by *28 U.S.C. § 1441(d)*'s clear statement that actions against foreign

---

[28] BP's Memo. Supp. Mtn. Strike, p. 20.

[29] 430 U.S. 442, 97 S. Ct. 1261, 51 L. Ed. 2d 464 (1977).

[30] 430 U.S. at 449.

[31] 36 F. 3d. 1308, 1323-24 (5ᵗʰ Cir. 1994).

[32] *Id.* at 1324.

[33] *United States v. Viking Resources, Inc.*, 607 F. Supp. 2d 808, 830-33 (S.D. Tex. 2009); *Great-West Life & Annuity Ins. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002); see also, cases cited *supra* at fn. 17.

[34] 660 F. 2d 61 (3ʳᵈ Cir. 1981).

sovereigns removed to federal court "shall be tried by the court without a jury."[35] By contrast, OPA contains no language addressing a claimant's right to a jury trial.

### B. Alabama's natural resource damages claim is legal in nature.

Only one federal district court has addressed whether OPA natural resource damage claims give rise to a *Seventh Amendment* right to a jury. In *United States v. Viking Resources, Inc.*,[36] the Southern District of Texas concluded that a right to a jury trial exists because "at least one component of natural resource damages – the diminution in value of those natural resources pending restoration – is legal in nature. It amounts to compensating the plaintiff for injury to its property, much like damages recovered in nuisance or trespass – both classic *legal* causes of action."[37] The court relied in large part on *In re Acushnet River & New Bedford Harbor*[38] in which the Massachusetts district court determined that CERCLA natural resource damages "are essentially equivalent to money damages recoverable in tort for injury to property under a nuisance or trespass theory – 'precisely the type [of damages] a common law court could award.'"[39] This court should follow *Viking Resources* and find that Alabama's natural resource damages claim is at least partly legal in nature.

### C. Alabama's removal costs claim is legal in nature.

As the Fifth Circuit has recognized, there are only "two exceptions to the general rule that a claim seeking monetary recovery is legal in nature."[40] These are when the claim "is

---

[35] *Id.* at 64.

[36] 607 F. Supp. 2d 808, 830-33 (S.D. Tex. 2009).

[37] *Id.* at 832 (emphasis in original).

[38] 712 F. Supp. 994, 999 (D. Mass. 1989).

[39] *Viking Resources*, 607 F. Supp. 2d at 831 (quoting, *In re Acushnet*, 712 F. Supp. at 1000).

[40] *Borst v. Chevron Corp.*, 36 F. 3d 1308, 1324 (5th Cir. 1994).

restitutionary in nature or is intertwined with claims for injunctive relief."[41] *Viking Resources* concluded that the recovery of removal costs under OPA was restitutionary in nature but acknowledged "that the conventional wisdom as to the nature of the response cost remedy is open to question, particularly in light of the Supreme Court's opinion in *Great-West Life & Annuity Ins. v. Knudson*."[42]

In *Knudson*, the Supreme Court noted that the issue of whether restitution is legal in nature depends on "the basis for the plaintiff's claim and the nature of the underlying remedies sought."[43] The Court explained:

> In cases in which the plaintiff "could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him," the plaintiff had a right to restitution *at law* through an action derived from the common law writ of assumpsit. In such cases, the plaintiff's claim was considered legal because he sought "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).[44]

In the instant case, Alabama is not claiming BP holds "particular funds that, in good conscience, belong[s] to [Alabama]."[45] The State seeks to impose a personal liability on BP to pay a sum of money to rectify damage it has caused. As Dobbs has recognized, damages of this nature "are analogous to repair costs and consequential damages that a private landowner-

---

[41] *Id.* (citing, *Chauffers, Teamsters, and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 1348, 108 L. Ed. 2d 519 (1990)).

[42] *Viking Resources*, 607 F. Supp. 2d at 830 n. 79 (citing, *Great-West Life & Annuity Ins. v. Knudson,* 534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002)).

[43] 534 U.S. at 213 (quoting, *Reich v. Continental Casualty Co.*, 33 F. 3d 754, 756 (7th Cir. 1994)) (internal quotations omitted).

[44] *Id.* (quoting, *Restatement of Restitution* § 160, Comment a, 641-42 (1936)) (emphasis in original).

[45] *Id.* at 214.

plaintiff might recover in similar situations" and thus "closely resemble familiar common law types of damages."[46] This court should find accordingly and deny BP's motion to strike.

## CONCLUSION

Alabama is entitled to a trial by jury. It has alleged a cause of action pursuant to OPA that is tantamount to a writ of trespass for which damages were allowed at the common law in the 18th century. These damages are clearly legal in nature. Accordingly, BP's motion to strike should be denied.

Respectfully submitted on this the 10th day of March 2014.

By:    /s/ *William M. Quin II*
       William M. Quin II (MS Bar #10834)
       MCCRANEY MONTAGNET QUIN & NOBLE, PLLC
       602 Steed Road, Ste. 200
       Ridgeland, MS 39157
       T: 601.707.5725
       F: 601.510.2939
       wquin@mmqnlaw.com

       SPECIAL ASSISTANT ATTORNEY GENERAL OF THE
       STATE OF MISSISSIPPI, BY AND ON BEHALF OF THE
       STATE OF MISSISSIPPI

---

[46] *Viking Resources*, 607 F. Supp. 2d at 830 n. 79 (quoting, 1 Dan B. Dobbs, *Law of Remedies* 4.2(3), at 579-81 & 5.2(5), at 727 (2nd ed. 1993)).

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 10th day of March, 2014.

/s/ *William M. Quin II*
William M. Quin II