UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| Nos. 10-2179; 10-4536; 10-2771 | * | |
| | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \*

### ANADARKO'S MEMORANDUM IN OPPOSITION TO THE UNITED STATES' MOTION FOR DISCOVERY INTO ANADARKO'S AFFILIATES

BINGHAM McCUTCHEN LLP

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
Thomas R. Lotterman
tom.lotterman@bingham.com
David B. Salmons
david.salmons@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, N.W.
Washington, D.C. 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street
Suite 1300
New Orleans, LA 70112
Telephone (504) 592-0691
Facsimile (504) 592-0696

**I.      INTRODUCTION**

The Government has moved for discovery into Anadarko Petroleum Corporation's ("Anadarko") "financial relationships and transactions" with its wholly-owned subsidiaries, and for discovery of "information related to any asset transfers made among" Anadarko's wholly-owned subsidiaries.  U.S. Motion at 5.  The Government's motion is meritless, and bespeaks only an effort to increase the burden and complexity of the Penalty Phase.  The Government feigns "need" for this limitless fishing expedition on the false premise that asset transfers among Anadarko's subsidiaries are relevant to Anadarko's overall financial condition and—according to the Government—such transactions could impact the amount of a CWA penalty that Anadarko can viably sustain.

The Government's request is a ruse.  Anadarko's financial reporting is on a *consolidated* basis.  Thus, whether assets reside with one subsidiary or another is irrelevant to Anadarko's consolidated financial condition, and to an economic impact analysis.  Accordingly, the Court should deny the Government's motion because the discovery will serve no legitimate purpose.  A straightforward evaluation of Anadarko's financial position can readily be made from Anadarko's publicly filed and audited consolidated financial statements.

**II.     ARGUMENT**

Under the CWA's "economic impact" penalty factor, the Court may consider Anadarko's overall financial condition in order to calibrate an appropriate penalty amount that will not endanger Anadarko's capacity to remain in business.  *See U.S. v. Gulf Park Water Co., Inc.*, 14 F. Supp. 2d 854, 868 (S.D. Miss. 1998).  That analysis is comparatively easy here, because Anadarko is a parent company and its overall financial condition is regularly reported in consolidated financial statements.  Any discovery into the minutiae underlying the consolidated

financials, that is, into Anadarko's subsidiaries' profits, losses, assets and liabilities, would be duplicative. All of that information is already incorporated into Anadarko's consolidated financial statements "as though the parent and subsidiaries operated as a single entity." *In re Intelligroup Securities Litigation*, 468 F. Supp. 2d 670, 698 (D.N.J. 2006) (citations omitted); Accounting Standards Codification 810-10-10-1 ("The purpose of consolidated financial statements is to present, primarily for the benefit of the owners and creditors of the parent, the results of operation and the financial position of a parent and all its subsidiaries as if the consolidated group were a single economic entity."). The Government cites *nothing* to the contrary that would authorize the discovery it seeks.

For this reason, to streamline the "economic impact" penalty analysis, Anadarko offered, in lieu of discovery, to stipulate to information in Anadarko's 2007-2013 Forms 10-K as filed with the Securities and Exchange Commission (SEC). Ex. 2 to U.S. Motion (January 10, 2014 e-mail from Thomas R. Lotterman, counsel for Anadarko, to Steve O'Rourke (ENRD), counsel for the United States and attachment). Without explanation, the Government rejected Anadarko's proposal.

      **A.**    **Anadarko's Consolidated Financial Statements Reflect Its Subsidiaries' Profits, Losses, Assets, Liabilities and Intercompany Transactions.**

The Government pretends it has never heard of consolidated financial statements before, and suggests something nefarious in Anadarko's accounting to justify discovery into the financial positions and transactions of Anadarko's wholly-owned subsidiaries. *See* U.S. Motion at 5. The Government's suspicion is unwarranted. Anadarko Petroleum Corporation is registered with the SEC and therefore must file consolidated financial statements prepared in conformity with generally accepted accounting principles. The consolidated financial statements include the accounts of Anadarko, as the parent company, and all the entities in which it holds a

controlling interest (subsidiaries). 17 C.F.R. § 210.3A-02; *see also Consolidated and Combined Statements*, Warren Gorham & Lamont GAAP Practice Manual 32.2 (2014) ("Consolidated statements are often more meaningful than separate statements and are necessary for a fair presentation when one of the entities in the group directly or indirectly has a controlling interest in the other entities."). In addition, the consolidated financial statements included in the Form 10-K must be audited by an independent auditing firm. The Government points to no irregularity in Anadarko's independently audited and publicly filed consolidated financial statements, and cites nothing to support the notion that the Court requires more information to consider the "economic impact" penalty factor. Burdensome discovery of Anadarko's subsidiaries would shed no more light on the overall financial condition of the company than the information Anadarko has already made public.

Under U.S. Generally Accepted Accounting Principles ("GAAP") and SEC regulations, a parent company must file consolidated financial statements for subsidiaries that it controls. Barry J. Epstein *et al.*, *Handbook of Accounting and Auditing* C13.01 (2013). Consolidated financial statements "present the results of operations and the financial position of a parent company and its subsidiaries as though they were a single company." *Id.* Accordingly, all of Anadarko's subsidiaries' profits, losses, assets and liabilities are combined with Anadarko's profits, losses, assets and liabilities "as though they were a single company." *See id.*

Nonetheless, the Government complains that Anadarko's wholly-owned subsidiaries may have transacted business with each other, or that Anadarko as the parent may have transferred assets to or among its wholly-owned subsidiaries, which are not reported on Anadarko's consolidated financial statements. The Government claims to need discovery to understand "ultimately what impact the [intercompany] transfers had on the financial condition of the parent

3

company."  U.S. Motion at 6.  But the Government is confused about basic accounting concepts.  Transactions between and among Anadarko and its wholly-owned subsidiaries *have no net impact on Anadarko's overall financial condition.*  See In re Intelligroup Securities Litigation, 468 F. Supp. 2d 670, 698 (D.N.J. 2006) ("*intercompany* accounting . . . [has] no effects" on parent company's "net income figures") (emphasis in original).

"As consolidated financial statements are based on the assumption that they represent the financial position and operating results of a single economic entity, such statements shall not include gain or loss on transactions among the entities in the consolidated group."  Accounting Standards Codification 810-10-40-1.  Indeed, it is precisely because intercompany transactions are irrelevant to the parent's net financial condition that the SEC's rules *require* consolidated financial statements to exclude all intercompany transactions, and to exclude all intercompany profits and losses.  17 C.F.R. § 210.3A–04 ("[T]here shall be eliminated intercompany items and transactions between persons included in the [] consolidated financial statements being filed.").

### B.  No Recent Events or Intercompany Transactions among Subsidiaries Warrant Additional Discovery.

Because intercompany transactions have no net impact on the parent's financial condition, and because all subsidiaries' gains and losses with third parties are consolidated and reported as the parent company's gains and losses, neither of the events the Government relies on in its Motion merits discovery of Anadarko's subsidiaries.  U.S. Motion at 5.

*First,* the Government recounts that, in 2011-2012, Anadarko transferred interests in oil and gas leases in the Gulf of Mexico from Anadarko and one or more of Anadarko's wholly-owned subsidiaries to another of Anadarko's wholly-owned subsidiaries.  *Id.*  This is true, but irrelevant.  As a simple matter of addition and subtraction, no matter which of Anadarko's wholly-owned subsidiaries holds interests in Gulf of Mexico leases, and no matter what the

4

terms of those intercompany transactions may have been, the consolidated value of Anadarko and its subsidiaries is neither increased nor decreased. *See Consolidated and Combined Statements*, WGL GAAP Practice Manual 32.3.6 (2014) (parent to subsidiary transactions have no effect on net income and are eliminated in consolidated financials).

*Second*, nothing about the recent bankruptcy court decision involving one of Anadarko's wholly-owned subsidiaries, Kerr-McGee Corporation, warrants additional discovery. In that unrelated case, the bankruptcy court ruled that Kerr-McGee is liable in an as-yet undetermined amount for transactions that occurred before Anadarko acquired Kerr-McGee as a subsidiary in late 2006. *In re Tronox, Inc.*, 503 B.R. 239 (Bankr. S.D.N.Y. 2013). And the bankruptcy court earlier ruled that Anadarko should be dismissed from the case, because the complaint failed to allege that Anadarko had any involvement in, or shared any liability for, the allegedly fraudulent transactions. *In re Tronox Inc.*, 450 B.R. 432, 443-44 (Bankr. S.D.N.Y. 2011).

The Government asserts that it needs discovery in this case to "better understand . . . whether there was any overall financial impact on the parent company" from the bankruptcy court's ruling against Kerr-McGee. U.S. Motion at 6. But the Government already knows that Kerr-McGee is a wholly-owned subsidiary of Anadarko, and it is *obvious* that a substantial judgment against Anadarko's wholly-owned subsidiary could have a potentially negative impact on Anadarko's consolidated financial position in the short term. Indeed, the bankruptcy court itself put it well, noting that "[a]s a purchaser, Anadarko may find that the company it bought is worth substantially less because of liabilities that the law does not permit [] Kerr–McGee to avoid. . . ." *In re Tronox Inc.*, 450 B.R. at 443.

The Government's request for discovery on this issue is especially puzzling, because Anadarko already has disclosed in its consolidated financial statements the anticipated impact of

5

the *In re Tronox Inc.* proceeding on the company's overall financial condition.  *See* Anadarko Petroleum Corporation's 2013 Form 10-K, attached hereto as Ex. A, at 33-35; 48; 51-56; 63-71; 91-95; 122-27.  Of course, there is not yet a set amount for Kerr-McGee's liability.  But Kerr-McGee's ultimate liability—whenever that is decided and whatever the amount—will be reported on Anadarko's consolidated financial statement as a component of Anadarko's overall financial condition, just like the profits or losses of Anadarko's other wholly-owned subsidiaries.

### C. The Government's Discovery Requests Are Neither "Limited" Nor "Targeted" to Any Relevant Issue.

The Government characterizes its discovery requests as "limited and targeted."  U.S. Motion at 7.  Nothing could be further from reality.  The Government's requests suggest an expansive and unnecessary fishing expedition into Anadarko's and its subsidiaries' finances, unrelated to anything having to do with the CWA case.  The Court should put a stop to this needless effort now.  For just a few examples:

- "Describe how Anadarko evaluated or evaluates potential capital expenditures and investments for each year, 2005 to the present and Identify the Information setting forth such evaluation" (Interrogatory No. 15);[1]

- "State the basis for Anadarko's assumption of debt financing for each year, 2005 to the present and Identify the Information setting forth that basis.: (Interrogatory No. 16);

- "Identify and describe Anadarko policies and targets for key financial ratios or measures, including but not limited to Income before Interest and Tax, Net Debt to Adjusted Capital, Current Ratio, Quick Ratio, and Cash Flow from Operations, and Free Cash Flow for each year, 2005 to the present, including the Information that serves as the basis for such policies." (Interrogatory No. 20)

"U.S. First Set of Discovery Requests to Defendant Anadarko Petroleum Corporation For The Penalty Phase, attached hereto as Ex. B.

It is not at all clear why the Government thinks such documents are relevant.  What the Government thinks it is going to do with documents relating to, *e.g.*, Anadarko's capital

---

[1] The Government's requests define "Anadarko" to include all of Anadarko's subsidiaries.

expenditures, debt financing, and financial policies from 2005—a full five years before the *Deepwater Horizon* spill—is a complete mystery. Whatever the Government's intent in propounding such requests, the records it seeks have nothing to do with the CWA's "economic impact" penalty factor, or any other issue in this case. Responding to the Government's voluminous requests would entail collecting and producing millions of pages of Anadarko's and its subsidiaries' records. This would be time-consuming, burdensome, expensive, and for all the reasons explained, in the end would add nothing useful to the Court's evaluation of Anadarko's overall financial condition.

### III.  CONCLUSION

For all the foregoing reasons, the Court should stop the Government's unnecessary foray into Anadarko's and its subsidiaries' finances before it begins, and deny the Government's Motion for Discovery.

Respectfully submitted,

DATED: March 12, 2014  **BINGHAM McCUTCHEN LLP**

/s/ *James J. Dragna*_____
James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
Thomas Lotterman
tom.lotterman@bingham.com
David B. Salmons
david.salmons@bingham.com
Randall M. Levine
randall.levine@bingham.com
Bingham McCutchen LLP

7

2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

**KUCHLER POLK SCHELL
WEINER & RICHESON, LLC**

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA 70112
Telephone (504) 592-0691
Facsimile (504) 592-0696

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on March 12, 2014.

/s/ *James J. Dragna*
James J. Dragna
