# Exhibit B

55122172
Mar 10 2014
05:41PM

UNITED STATES DISTRICT OF COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL | § | MDL No. 2179 |
| RIG "DEEPWATER HORIZON" | § | |
| IN THE GULF OF MEXICO, | § | SECTION: J |
| ON APRIL 20, 2010 | § | |
| | § | JUDGE BARBIER |
| | § | MAG. JUDGE SHUSHAN |

THIS DOCUMENT RELATES TO ALL CASES

THE UNITED STATES'
FIRST SET OF DISCOVERY REQUESTS TO
DEFENDANT ANADARKO PETROLEUM CORPORATION
FOR THE PENALTY PHASE

The United States of America propounds the following discovery requests and requests for admission to defendant Anadarko Petroleum Corporation to be answered pursuant to Federal Rules of Civil Procedure 26, 33, 34 and 36 within 30 days of service.

INSTRUCTIONS

1.	Produce all Information responsive to these requests in a format consistent with the requirements of Pretrial Order 16.

2.	To the extent that you withhold any information responsive to these requests, provide a privilege log in accordance with the requirements of Pretrial Order 14.

3.	Supplement your responses to these requests in accordance with the requirements of Federal Rule of Civil Procedure 26(e).

4.	If any responses to these discovery requests were previously provided in whole or part, provide the date and Identify the document in which the response was made.

## **DEFINITIONS**

As used herein, the following terms are defined as follows:

1. "Anadarko Petroleum Corporation" refers to Defendant Anadarko Petroleum Corporation, a Delaware corporation with its principal place of business in Texas.

2. "Anadarko E&P Company LP" refers to, without limitation, the interests of Anadarko E&P Company LP, including relevant predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

3. "Anadarko" refers to, without limitation, the interests of Anadarko Petroleum Corporation, including relevant predecessors, successors, subsidiaries, including without limitation Defendant Anadarko E&P Company LP, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

4. "BP" means the BP group or BP plc and its subsidiaries, including relevant predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its/their behalf.

5. "Communication" means any writing transmitted between persons or oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, meetings, memoranda, telegraphic, telex, computer and facsimile communications or transmittals of documents, Electronically Stored Information (ESI) and all documents concerning such writings or oral conversations. "Communication" as used herein specifically includes internal writings, oral conversations or

meetings among the officers, board members, employees or other representatives of any defendant.

6. "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDAs), minicomputers and mainframe computers.

7. "Control" refers to ownership, possession, or custody of the Information, or the legal right to secure the Information or copy thereof from any person or public or private entity having physical possession thereof.

8. "Endicott Island" refers to illegal dumping of hazardous wastes at Endicott Island, Alaska for which BP Exploration Alaska, Inc. (BPXA), in a plea agreement announced in September 1999, admitted that it failed to notify authorities of the release of hazardous substances and failed to provide adequate environmental oversight of its facilities, and pay a $500,000 criminal fine and serve a term of probation.

9. "Identify," whether or not capitalized, when used with respect to: (a) an individual, shall mean to provide the individual's full name, job title, and employer during the period referred to, and current or last-known address and telephone number and business address and telephone number; (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); and (c) Information, shall mean to provide the date, title, subject matter, author(s), and recipient(s) or the Bates number(s).

10. "Incident" shall mean the loss of control of the MC252 Well and the fire and explosion(s) on board, and resulting sinking of, Transocean's Deepwater Horizon rig, in addition to the resulting oil spill in the Gulf of Mexico.

11. "Information" shall have the meaning set forth in Pretrial Order 22, Paragraph 2.

12. The "Joint Operating Agreement" means the Joint Operating Agreement for the Macondo Prospect, entered into by MOEX Offshore 2007 and BP, and ratified by the Anadarko Defendants on or about December 17, 2009.

13. "Lease" means the Oil and Gas Lease of Submerged Lands under the Outer Continental Shelf Lands Act, "Serial Number OCS-g 32306" pertaining to "All of Block 252, Mississippi Canyon, OCS Official Protraction diagram, NH 16-10," also known as the Macondo Prospect, an oil and gas prospect in the Gulf of Mexico, off the coast of Louisiana.

14. The "Lease Exchange Agreement" means the agreement by and between Anadarko E&P Company LP, Anadarko Petroleum Corporation, and BP Exploration & Production Inc., executed on or about December 17, 2009.

15. "Macondo Prospect" means the Macondo Prospect (Mississippi Canyon Block 252, abbreviated MC252) an oil and gas prospect in the Gulf of Mexico, off the coast of Louisiana. The prospect was the site of the Deepwater Horizon drilling rig explosion on April 20, 2010.

16. "Macondo Well" means the exploratory well drilled and constructed pursuant to the Lease as defined herein.

17. "Person" refers to, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

18. "Prudhoe Bay" refers to the two oil spills discovered in March and August 2006 along a pipeline owned by a BP Exploration Alaska, Inc. (BPXA) in Prudhoe Bay, Alaska, for which BPXA pleaded guilty to Clean Water Act violations and agreed to pay a $12 million fine,

pay $4 million to the National Fish and Wildlife Foundation, pay $4 million in criminal restitution to the State of Alaska, and serve a term of probation.

19. "Relating to," "referring to," "regarding," "concerning," "reflecting" or "with respect to" refers to, without limitation, the following concepts: discussing, describing, reflecting, concerning, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

20. "Response" refers to oil spill response efforts, undertaken pursuant to Section 311 of the Federal Water Pollution Control Act, 33 U.S.C § 1321 and 40 CFR Part 300, to contain, collect, remove, disperse, and minimize the impact of hydrocarbons released from the Macondo well in connection with the Deepwater Horizon incident (including through the use of technologies such as controlled in situ burning, dispersants, skimming, and the placement of booms), including any activities BP seeks to introduce evidence of, reference, or discuss in the Penalty Phase.  This includes any natural resource damage costs, or any expenses related to determining, researching, and investigating those damages.

21. "Stage-Gate" means a project management or investment decision-making process or technique in which a company initiative or project, including but not limited to drilling an exploration well, is divided into "stages" or "phases" separated by "gates," where continuation of the process is typically decided by a manager or steering committee based on information available at the time.

22. "Texas City" refers to the explosion and fire occurring at a BP petroleum refinery in Texas City, Texas in March 2005, for which BP Products North America, Inc. pleaded guilty

5

and agreed to pay a $50 million criminal fine under the Clean Air Act and serve a term of probation.

23. "Well Participation Agreement" means the agreement entitled "Macondo Prospect Well Participation Agreement Deepwater Gulf of Mexico, made by and between BP Exploration & Production Inc., Anadarko Petroleum Corporation and Kerr McGee Oil & Gas Corporation, executed on or about December 17, 2009.

24. "You" or "your" shall mean Anadarko.

## INTERROGATORIES

1. Identify each and every person who participated in answering these interrogatories, indicating the number of each interrogatory for which each person supplied information.

2. What is Anadarko's basis for its Dividend Policy 2005 to the present, including the considerations it takes into account?

3. What is Anadarko's basis for determining when to sell shares of stock 2005 to the present, including the considerations it takes into account?

4. What is Anadarko's basis for determining when to obtain debt financing on the bond market 2005 to the present, including the considerations it takes into account?

5. Describe Anadarko's expectation for oil and gas prices over the next five years, and Identify the basis for that expectation and the Information supporting that expectation.

6. Identify all contingent liabilities held by Anadarko, including the range of potential financial exposure of the contingent liabilities, the status of the resolution of the risk, the likely timing and steps to resolve the risk, and the entity's official assessment of the financial exposure.

7. Identify any outstanding issues or uncertainties with BPXP regarding its indemnification obligations to Anadarko for damage claims arising under theOil Pollution Act, natural resources damage claims and associated damage assessment costs, and any claims arising under the Operating Agreement for the Macondo Well as referenced in the December 31, 2012 Anadarko SEC 10K.

8. Identify and describe each reorganization (s) of Anadarko E&P Company LP subsequent to the Macondo spill, including the transfer, sale or disposition of Anadarko E&P Company LP assets, Identifying the consideration provided and explaining the rationale and basis therefore.

9. Identify and describe any transfer or sale of assets to a third party by Anadarko Petroleum Corporation, including any of its subsidiaries, subsequent to the Macondo spill, Identifying the assets transferred, the consideration provided and explaining the rationale and basis therefore.

10. Identify whether and how Anadarko applied or implemented any aspect of its project management or "Stage-Gage" processes to any decision, action, or activity related to the Macondo Prospect, including but not limited to any decision, action or activity related to the Macondo Joint Operating Agreement, the Lease, the Lease Exchange Agreement, the Well Participation Agreement, any of the Authorizations for Expenditure, or Macondo Well drilling operations or Exploratory Operations at Objective Depth (as defined in the Macondo Joint Operating Agreement, section 10.2).

11. Identify and describe any of Anadarko's project management or "Stage-Gate" processes (including strategies, policies, protocols, practices or techniques) that were in place during the timeframe 2005-2010, including, but not limited to processes that relate to:

identification of the decision-makers at each "Gate"; identification and management of environmental and safety risks associated with deepwater drilling operations; and identification of any uncertainties associated with a deepwater drilling project or initiative; decisions to become a non-operating partner in an oil and gas project; and means of incorporating input from non-operating parties.

12. Identify and describe any of Anadarko's project management or "Stage-Gate" processes (including strategies, policies, protocols, practices or techniques) that were implemented after the April 20, 2010, Incident including, but not limited to processes that relate to: identification of the decision-makers at each "Gate"; identification and management of environmental and safety risks associated with deepwater drilling operations; and identification of any uncertainties associated with a deepwater drilling project or initiative; decisions to become a non-operating partner in an oil and gas project; and means of incorporating input from non-operating parties.

13. Identify and describe Anadarko's environmental audit program or any company-wide plan to ensure compliance with environmental regulations for each year, 2005 to the present and identify any Information that explains such programs.

14. State whether Anadarko performed general (i.e., non-financial and non-economic) due diligence or analysis, or in any way considered BP's prior criminal violations and the causes thereof or the incidents at Texas City, Prudhoe Bay and Endicott Island in determining whether or not to partner with BP in exploration or production project in the Gulf of Mexico and describe what that due diligence or analysis involved including an Identification of any Information discussing or setting forth such due diligence or analysis.

15. Describe how Anadarko evaluated or evaluates potential capital expenditures and investments for each year, 2005 to the present and Identify the Information setting forth such evaluation.

16. State the basis for Anadarko's assumption of debt financing for each year, 2005 to the present and Identify the Information setting forth that basis.

17. Identify each payment Anadarko has made related to the Incident, including but not limited to payments for Response activities, settlements or any other payments made to and on behalf of Anadarko related to the Macondo oil spill.

18. Identify each payment Anadarko has received related to the Incident, including but not limited to settlements and insurance payments made to and on behalf of Anadarko related to the Macondo oil spill and the associated insurance policy.

19. State the basis for Anadarko's dividend payments for each year, 2005 to the present and Identify the Information referring or relating to that basis.

20. Identify and describe Anadarko policies and targets for key financial ratios or measures, including but not limited to Income before Interest and Tax, Net Debt to Adjusted Capital, Current Ratio, Quick Ratio, Cash Flow from Operations, and Free Cash Flow for each year, 2005 to the present, including the Information that serves as the basis for such policies and targets.

21. Identify any evidence of your involvement, participation, contributions, or offers related to efforts to minimize or mitigate the effects of the discharge.

22. Identify, describe, and provide the location of every oil and gas exploration or production project on which you have partnered with BP, including as co-lessee, co-owner, operator, non-operator, or investor, from 1999 to the present.

23. Identify any exploration or production wells that you have drilled in the Gulf of Mexico, including the location of each well and whether it is considered a deepwater well, from 2005-present.

24. Provide the basis for Anadarko's position that a penalty in this matter as discussed on page 127 of its 2012 SEC 10-K filing will not be material.

25. Identify and describe or summarize Anadarko's "Best Practices" policies and procedures with respect to partnering with other parties in deepwater exploration and production, both Anadarko's Best Practices when it is in the role of a non-operator and when it is in the role of an operator, including without limitation policies and practices regarding well design and planning, temporary abandonment design and planning, completion design and planning, and cementing design and planning.

## REQUESTS FOR PRODUCTION

1. Provide all consolidating financial statements and associated organization charts reflecting the management reporting and legal entity relationships of subsidiaries to the parent entity and U.S. Federal and State income tax returns for each year, 2005 to the present.

2. Provide all supporting worksheets and calculations for Discounted Cash Flow value of proven reserves disclosed in 2012 in accordance with Financial Accounting Standards Board policies and guidance documents.

3. Provide any Information that identifies, summarizes, introduces, explains, describes, or evaluates any of Anadarko's formal or informal programs, protocols, policies, practices, methods, assessments, software, or techniques to identify or manage environmental and safety hazards and impacts related to deepwater drilling operations that were in place for each year, 2005-2010, including but not limited to integrity management and process safety

protocols, practices and procedures or bridging documents that you had in place applicable to all phases of offshore exploratory wells, including but not limited to planning and drilling operations, mobile offshore drilling units, platforms or rigs.

4. Provide any Information that identifies, summarizes, introduces, explains, or describes any of Anadarko's project management or "Stage-Gate" processes (including strategies, policies, protocols, practices or techniques) that were in place for each year from 2005 to the present, including but not limited to such documents or communications that relate(d) to: identification of the decision-makers at each "Gate"; identification and management of environmental and safety risks associated with deepwater drilling operations; and identification of any uncertainties associated with a deepwater drilling project or initiative; decisions to become a non-operating partner in an oil and gas project; and means of incorporating input from non-operating parties.

5. Provide all meeting minutes, notes, resolutions, policies, procedures, directives, and decisions for Anadarko Petroleum Corporation's Board of Director meetings, and Board of Director committee meetings for each year, 2008 to the present.

6. Provide all spreadsheets and computations supporting the graphic on page 5 of Mr. Danny Brown's presentation at the Johnson Rice Energy Conference on October 2, 2013 and any updates to this computation and graphic to present.

7. Provide all spreadsheets and computations reflecting or evaluating Anadarko's financial projections for 2014 and forward including any sensitivity analyses that Anadarko performs, including any sensitivity of such projections to assumptions of oil and gas prices.

8. Provide all Information relating to Anadarko's position that a penalty in this matter as discussed on page 127 of its 2012 SEC 10-K filing will not be material.

9.      Provide all Information reflecting Anadarko's decisions to issue and buy back company shares of stock for each year, 2005 to the present.

10.     Provide Information related to the reorganization or transfer of assets from Anadarko E&P Company LP or Anadarko Petroleum Corporation to other Anadarko entities, including the consideration provided and any rationale or basis therefore, as well as any assets transferred into Anadarko E&P Company LP or Anadarko Petroleum Corporation as part of any reorganization.

11.     Provide all Information related to Anadarko's loans, revolving credit agreements or any other debt for each year, 2005 to the present, including Information related to any Anadarko entity providing any other Anadarko entity a guarantee related to debt financing and the amount and nature of that debt financing.

12.     Provide any Information demonstrating that Anadarko performed general (i.e., non-financial and non-economic) due diligence or analysis of BP, or in any way considered BP's prior criminal violations and the causes thereof or the incidents at Texas City, Prudhoe Bay and Endicott Island in determining whether or not to partner with BP in exploration or production project in the Gulf of Mexico.

13.     Provide all documents relevant to the impact, effect or seriousness of the Incident, Response and spill on human health, economic interests, or the environment, including, but not limited to: (1) any documents demonstrating the lack of or limitations to any harm caused, or the (degree of ) success of Response Actions; (2) documents related to any claims made by private parties to BP, including investigation of those claims, correspondence, settlement, payments etc. under any framework, including but not limited to the BP claims facility, the oil spill trust, the GCCF, the Economic and Property Damages Settlement, the

Medical Benefits Settlement, or settlements with rig workers or families of rig workers; (3) any documents related to any independent analysis conducted by BP regarding the impact, effect or seriousness of the Incident, Response and spill on human health, economic interests, or the environment; (4) the "Medical Encounters" and "Injury and Illness" databases, as well as the underlying Information from which these databases were created; and (5) any documents demonstrating BPXP's positive impacts to the local economy and community.

14.     Provide all Information identified in response or relating to any contention set forth in response to any of the United States' Penalty Phase Interrogatories or Requests for Admission.

15.     Provide all Information rebutting, refuting, or calling into question any aspect of any factual contention Anadarko intends to proffer at trial in the Penalty Phase..

## REQUESTS FOR ADMISSION

1.     Admit that the Incident caused actual and potential injury or harm to human health, the environment, and the economy within the Gulf Coast Region (as defined in 33 U.S.C. § 1321(a)(33)).

2.     Admit that the payment of a $4.6 billion civil penalty would not materially impact the operation of Anadarko.

3.     Admit that, if Anadarko were required to pay a civil penalty to the United States of $4.6 billion, Anadarko could continue its business operations.

4.     Admit that Anadarko derived little or no economic benefit from the Incident.

5.     Admit that Anadarko had the right to but did not meet with BP concerning HSE matters or request an HSE plan in connection with the Macondo Well.

6.     Admit that Anadarko had the right to but did not visit the *Deepwater Horizon* rig.

7. Admit that Anadarko did not pay toward the costs of Response to the Incident, after its pro rata payments to BP were drawn down in May, 2010, through September, 2010.

8. Admit that BP advised Anadarko that Anadarko was in default under the Joint Operating Agreement for Anadarko's failures to make its pro rata payments in response to BP's invoices after the Incident.

9. Admit that Anadarko did not pay toward the costs of Response for the Incident, after May, 2010, until it settled its claims against BP in the course of the MDL litigation in October, 2011.

10. Admit that Anadarko's settlement with BP resolved Anadarko's claim that BP was grossly negligent, BP's claims against Anadarko, and future natural resource damages.

11. Admit that Anadarko to date has not paid a penalty within the meaning of Section 311(b)(8) for the Macondo Incident.

Respectfully submitted,

| | |
|---|---|
| BRIAN HAUCK | ROBERT G. DREHER |
| Deputy Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| PETER FROST | SARAH HIMMELHOCH |
| Directory, Torts Branch, Civil Division | MICHAEL McNULTY |
| Admiralty and Aviation | Senior Litigation Counsel |
| STEPHEN G. FLYNN | NANCY FLICKINGER |
| Assistant Director | Senior Attorney |
| SHARON SHUTLER | RICHARD GLADSTEIN |
| MALINDA LAWRENCE | PATRICK CASEY |
| LAURA MAYBERRY | DANIEL S. SMITH |
| Trial Attorneys | Senior Counsel |
| | A. NATHANIEL CHAKERES |
| | JUDY HARVEY |
| | RACHEL KING |
| | ERICA PENCAK |
| | ABIGAIL ANDRE |
| | RACHEL HANKEY |
| | BRANDON ROBERS |
| | Trial Attorneys |
| R. MICHAEL UNDERHILL, T.A. | /s/ Sarah D. Himmelhoch |
| Attorney in Charge, West Coast Office | STEVEN O'ROURKE |
| Torts Branch, Civil Division | Senior Attorney |
| U.S. Department of Justice | Environmental Enforcement Section |
| 7-5395 Federal Bldg., Box 36028 | U.S. Department of Justice |
| 450 Golden Gate Avenue | P.O. Box 7611 |
| San Francisco, CA 94102-3463 | Washington, D.C. 20044 |
| Telephone: 415-436-6648 | Telephone: 202-514-2779 |
| Facsimile: 415-436-6632 | Facsimile: 202-514-2583 |
| E-mail: mike.underhill@usdoj.gov | E-mail: steve.o'rourke@usdoj.gov |
| | KENNETH A. POLITE, JR. |
| | United States Attorney |
| | Eastern District of Louisiana |
| | SHARON D. SMITH |
| | Assistant United States Attorney |
| | Eastern District of Louisiana |
| | 650 Poydras Street, Suite 1600 |
| | New Orleans, LA 70130 |
| | Telephone: (504) 680-3000 |
| | Facsimile: (504) 680-3184 |
| | E-mail: sharon.d.smith@usdoj.gov |

15

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

                  /s/ Sarah D. Himmelhoch