IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | *  MDL NO. 2179 <br> * <br> *  SECTION: J <br> * |
| This document relates to: | * <br> *  HONORABLE CARL J. BARBIER |
| Actions within B3 Pleading Bundle | * <br> *  MAGISTRATE JUDGE SHUSAN |
| and | * <br> * |
| 12-968, Plaisance, et al. v. BP Exploration& Production Inc., et al. | * <br> * |

**MOTION TO APPORTION ATTORNEY FEES, FOR INJUNCTIVE RELIEF, AND FOR DAMAGES DERIVED FROM CLAIMS SUBMITTED PURSUANT TO THE MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT
IN ACCORDANCE WITH SECTION XXVII, and
MOTION TO STAY PENDING FLORIDA STATE COURT ACTION**

**NOW INTO COURT,** come Jason L. Melancon, Melancon | Rimes, LLC, Marx D. Sterbcow, and Sterbcow Law Group, LLC (collectively referred to hereafter as "PETITIONERS"). Jason L. Melancon ("MELANCON") is the managing partner of Melancon | Rimes, LLC ("MR"), a Louisiana law firm.  Marx D. Sterbcow ("STERBCOW") is the managing partner of Sterbcow Law Group, LLC ("SLG"), also a Louisiana law firm. PETITIONERS respectfully aver as follows:

**INTRODUCTION**

1.

This motion to apportion attorney fees, for injunctive relief, and for damages arises from a dispute between two Louisiana attorneys, their respective law firms, and a Florida law firm (i.e. Downs Law Group, P.A.) ("DOWNS GROUP") and its individual partner Craig T. Downs

("CRAIG DOWNS") and associates Jeremy Friedman ("FRIEDMAN") and Daniel Perez ("PEREZ"). The dispute concerns the agreed upon sharing of attorney fees received from individuals who submitted claims pursuant to the *DEEPWATER HORIZON* MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT ("SETTLEMENT AGREEMENT"). The dispute concerns a written attorney fee sharing agreement and/or the entitlement to attorney fees arising from client executed contingency fee agreement expressly identifying active counsel as DOWNS, MELANCON, and STERBCOW.

2.

As pertaining to the motion to stay the Florida state court action, prior to the SETTLEMENT AGREEMENT becoming final and definitive on February 13, 2014, PETITIONERS filed a complaint in Florida state court. *Sterbcow Law Group, LLC and Melancon | Rimes, LLC v. The Downs Law Group, P.A., Craig T. Downs, Jeremy Friedman, and Daniel Perez*, 11th Judicial District Circuit, County of Miami-Dade, State of Florida. *See* Exhibit "A." Section XXVII of the SETTLEMENT AGREEMENT now provides that this Honorable Court has exclusive jurisdiction over all parties, medical benefits class members, and their counsel with respect to all disputes concerning the implementation and enforcement of the SETTLEMENT AGREEMENT. PETITIONERS seeks an order staying the Florida litigation considering this Honorable Court's exclusive and ancillary jurisdiction over attorney fee disputes.

3.

By way of background, members of the DOWNS GROUP initially reached out to SLG and MR for assistance in marketing and in signing Louisiana residents as medical claims benefit clients, who were reportedly suffering from those conditions identified in the SETTLEMENT

AGREEMENT.  DOWNS GROUP further requested that MR and SLG act as *pro hac vice* sponsor for DOWNS GROUP in an effort to object to the proposed SETTLEMENT AGREEMENT.  DOWNS GROUP further requested that MELANCON personally stand before this Honorable Court to orally address those objections presented, to which request MELANCON complied.

4.

DOWNS GROUP further pursued PETITIONERS' assistance during the medical claims benefits process because Florida law prevented DOWNS GROUP from advancing medical costs for those clients needing medical evaluations before claim submission, whereas Louisiana law did not proscribe such prohibitions against Louisiana attorneys.

5.

DOWNS GROUP further requested access to MR's and SLG's Louisiana offices for client meetings located in South Louisiana.  SLG provided supplies and refreshments for all client meetings.

6.

DOWNS GROUP eventually hired a non-Louisiana licensed attorney, who worked every day at SLG's offices, primarily on the BP medical claims benefits clients.  DOWNS GROUP never paid any remuneration for the constant use of SLG's office space.

7.

The DOWNS GROUP employee informed STERBCOW that DOWNS GROUP was advancing medical costs for many Louisiana based clients, and DOWNS GROUP consistently used the offices of SLG and MR to sign contingency fee agreement with Louisiana based clients.

8.

In exchange for the efforts of MR and SLG, DOWNS GROUP proposed a written attorney fee sharing arrangement whereby MR and SLG would receive compensation totaling a percentage of recovery obtained by DOWNS GROUP equivalent to the amount of 10% of the total recovery for all clients who submitted a medical benefits claim pursuant to the SETTLEMENT AGREEMENT.

9.

In accordance with the agreement, DOWNS GROUP drafted and executed contingency fee contracts with thousands of mutual clients, which contracts expressly included "Jason L. Melancon, Esq." and "Marx D. Sterbcow, Esq." as active counsel. MR and SLG dutifully performed all requested tasks in accordance with active co-counsel status.

10.

On September 24, 2013, while working at the office of SLG, the DOWNS GROUP employee provided STERBCOW with the first list of mutual clients spanning over 1,700 names. Around early October 2013, the DOWNS GROUP employee notified STERBCOW that DOWNS GROUP might not share the attorney fees derived from those medical benefit claims submitted pursuant to the SETTLEMENT AGREEMENT with MR and SLG.

11.

Accordingly, MR requested via email a list of mutual clients. DOWNS GROUP only provided a list of 73 names. When MR and SLG confronted DOWNS GROUP about the discrepancy, DOWNS GROUP indicated that PETITIONERS were not co-counsel for over 1,700 mutual clients, and possibly over 1,000 Louisiana residents. Emails provided from the DOWNS GROUP employee showed a subsequent conspiracy by CRAIG DOWNS,

FRIEDMAN, AND PEREZ to send out letters advising the mutual clients that MELANCON and STERBCOW were not co-counsel, despite being expressly identified on the contingency fee contracts.  The emails further expressed the intent to have all clients execute new contingency fee agreements without MELANCON and STERBCOW identified on same.

12.

PETITIONERS submit that DOWNS GROUP fraudulently induced MR and SLG to enter into a co-counsel arrangement.  DOWNS GROUP sought to obtain the legal and practical benefits of marketing and signing over 1,000 Louisiana resident clients without any real expectation of ultimately fulfilling its contractual obligations.

13.

MR and SLG seek to enforce (1) the terms of the written co-counsel agreement or (2) the underlying contingency fee contracts, thereby rightfully sharing in their portion of those attorney fees derived from the medical benefits claims process set forth in the SETTLEMENT AGREEMENT.  In the alternative, MR and SLG seeks to have the DOWNS GROUP stricken as counsel of record for all Louisiana clients given their unauthorized practice of law in marketing and signing Louisiana residents and further holding an office space in Louisiana without a licensed Louisiana attorney; thereby naming MR and SLG as the exclusive counsel of record for all Louisiana client.  Finally, MR, SLG, MELANCON, and/or STERBCOW further seek compensatory, statutory, and punitive damages and attorney fees and costs as otherwise provided by law.

## PARTIES

14.

Jason L. Melancon ("MELANCON") is a named plaintiff herein.  He is domiciled in the State of Louisiana, and manages the plaintiff law firm of Melancon | Rimes, LLC ("MR"), a Louisiana limited liability company.

15.

Marx D. Sterbcow ("STERBCOW") is a named plaintiff herein.  He is domiciled in the State of Louisiana, and manages the plaintiff law firm of Sterbcow Law Group, LLC ("SLG"), a Louisiana limited liability company.

16.

Craig T. Downs ("CRAIG DOWNS") is a named defendant herein.  He is domiciled in the State of Florida, and manages the defendant law firm of Downs Law Groups, P.A. ("DOWNS GROUP"), a Florida based company.

17.

Jeremy Friedman ("FRIEDMAN") is a named defendant herein.  He is domiciled in the State of Florida, and is an associate with defendant DOWNS GROUP.

18.

Daniel Perez ("PEREZ") is a named defendant herein.  He is domiciled in the State of Florida, and is an associate with defendant DOWNS GROUP.

## JURISDICTION

19.

Exclusive jurisdiction is before the Eastern District of Louisiana pursuant to Section XXVII of the SETTLEMENT AGREEMENT. On or about February 13, 2014, the remaining appeal related to the SETTLEMENT AGREEMENT was dismissed before the United States Fifth Circuit Court of Appeals; therefore, the SETTLEMENT AGREEMENT became final and definitive and thus regulates all matters pertaining to the medical benefits claims process. The SETTLEMENT AGREEMENT provides that this Honorable Court shall retain continuing and exclusive jurisdiction over the parties and their counsel and all medical benefits class members with respect to the terms of the medical settlement agreement. The agreement further provides that any disputes or controversies arising out of or related to the administration or enforcement of the SETTLEMENT AGREEMENT shall be made by motion to the Court.

20.

It is well settled that a federal court may resolve controversies over attorneys' fees when the dispute arises from litigation before it, under both the court's ancillary jurisdiction and its inherent power to regulate attorneys who practice before it. See, e.g., *Cluett, Peabody & Co. v. CPC Acquisition Co.,* 863 F.2d 251 (2d Cir.1988); *Pay Television of Greater New York, Inc. v. Sheridan,* 766 F.2d 92 (2d Cir.1985); *American Federation of Tobacco–Growers v. Allen,* 186 F.2d 590 (4th Cir.1951); *Iowa v. Union Asphalt & Roadoils, Inc.,* 409 F.2d 1239 (8th Cir.1969); *Jenkins v. Weinshienk,* 670 F.2d 915 (10th Cir.1982). This jurisdiction continues even after the original dispute has gone to judgment or been settled. *Novinger v. E.I. DuPont de Nemours & Co.,* 809 F.2d 212 (3d Cir.), cert. denied, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); *Sherrier v. Richard,* 600 F.Supp. 527 (S.D.N.Y.1984). In addition, where the dispute concerns

fees to be paid out of proceeds of the litigation, the court's ancillary jurisdiction arises from its authority to control the distribution of those proceeds. See, e.g., *Grimes v. Chrysler Motors Corp.,* 565 F.2d 841 (2d Cir.1977).

**FACTUAL BACKGROUND**

21.

In or around August, 2012, FRIEDMAN of DOWNS GROUP contacted STERBCOW of SLG regarding a possible co-counsel arrangement. FRIEDMAN advised STERBCOW that DOWNS GROUP signed several Spanish speaking Florida residents as clients. These clients experienced medical problems after working the BP clean-up operation.

22.

FRIEDMAN advised STERBCOW that DOWNS GROUP wanted to market and to sign Spanish speaking Louisiana residents that also worked in the BP clean-up operation. FRIEDMAN asked STERBCOW whether he would be interested in helping them not only secure Louisiana residents as clients, but also whether STERBCOW would assist them in obtaining *pro hac vice* status in the above captioned matter.

23.

STERBCOW of SLG reached out to MELANCON of MR about working with DOWNS GROUP. STERBCOW and MELANCON worked on a number of cases in co-counsel arrangements, with MELANCON generally handling the direct litigation efforts. MELANCON agreed to work on the medical benefits claims with STERBCOW and left to STERBCOW the contractual negotiations with DOWNS GROUP.

24.

Ultimately, STERBCOW reached an agreement with DOWNS GROUP' representatives regarding the work to be performed by MR and SLG in exchange for a percentage of the recovery from all medical benefits clients signed by DOWNS GROUP.  After verbal discussions, on or about August 26, 2012, FRIEDMAN of DOWNS GROUP solely drafted and emailed STERBCOW of SLG a proposed "attorney participation agreement."  See Exhibit "B."  The agreement outlined the roles performed by MR and SLG and provided MR and SLG with 10% of any recovery obtained from the medical benefits claims process.  STERBCOW executed the contract in writing, while MELANCON agreed to its terms in a separate email.  See Exhibit "C."  Although DOWNS GROUP' representatives now claim to have never agreed to these terms and intentionally refused to execute the contract it delivered, nevertheless, DOWNS GROUP' representatives ratified the agreement by performance of same.

25.

The "attorney participation agreement" further memorialized the obligation by MR and SLG to sponsor Craig Down, FRIEDMAN, and PEREZ and/or other employees or agents of DOWNS GROUP for *pro hac vice* status before this Honorable Court.  DOWNS GROUP agents further expressed their intention to market Louisiana residents through print, yard sign, and radio advertisements given MR's and SLG's direct participation.  DOWNS GROUP agents requested that MR and SLG provides their office for the purposes of signing contingency fee contracts with Louisiana residents.  DOWNS GROUP agents discussed Florida limitations on paying advanced medical costs, where the claims process required proof of ailments, and MR and SLG right to pay such advanced costs under Louisiana law.

26.

Following execution of the "attorney participation agreement," DOWNS GROUP agents further placed the names of MELANCON and STERBCOW on each contingency fee contract executed with each medical benefits client through sometime around November of 2013. See Exemplar Contingency Fee Contracts attached as Exhibit "D" and "E."

27.

Following execution of the "attorney participation agreement," PETITIONERS dutifully performed all obligations as set forth in said agreement. In fact, PETITIONERS far surpassed the scope of their representation as set forth in same. For example, MELANCON spoke on behalf of certain objectors at the fairness hearing for the SETTLEMENT AGREEMENT.

28.

MR and SLG agreed to assist DOWNS GROUP, in particular with respect to marketing and to signing Louisiana residents, because Louisiana Supreme Court Rule XVII §13(B)(7) prohibited DOWNS GROUP from actively soliciting Louisiana residents without a co-counsel arrangement. Section 13(B)(7) entitled "No Solicitation" provides that no out-of-state attorney is authorized to hold himself out, to non-lawyers who have not requested the out-of-state lawyer's presence, as available to assist in potential suits; and out-of-state attorneys may not solicit, advertise, or otherwise hold themselves out in publications directed solely to this state as available to assist in litigation in this state.

29.

To the extent that DOWNS GROUP actively solicited Louisiana residents without having MR and SLG act as co-counsel of record, which DOWNS GROUP now contends, DOWNS GROUP, CRAIG DOWNS, FRIEDMAN, and PEREZ violated Louisiana Supreme Court Rule

XVII §13(B)(7), and, therefore, engaged in the unauthorized practice of law in Louisiana by actively soliciting Louisiana residents as client in both print and radio advertising.

30.

Eventually, DOWNS GROUP representatives requested that SLG provide its New Orleans area law office not only for the purpose of meeting with clients, but also to staff said office with a full-time Spanish speaking attorney employee, Amled Perez. This DOWNS GROUP employee was not licensed to practice law in the State of Louisiana. Perez Depo. 16:1-16:25.

31.

MR and SLG agreed to assist DOWNS GROUP with providing its employee with SLG's New Orleans area law office because pursuant to Louisiana Rules of Professional Responsibility Rule 5.5 entitled "Unauthorized Practice of Law; Multijurisdictional Practice of Law," a lawyer not admitted to practice in Louisiana shall not establish an office or other systematic and continuous presence in Louisiana for the practice of law.

32.

To the extent that DOWNS GROUP instructed its employee to establish an office or other systematic or continuous presence in this jurisdiction for the purpose of signing Louisiana residents without SLG and MR acting as co-counsel, which DOWNS GROUP now contends, DOWNS GROUP, CRAIG DOWNS, FRIEDMAN, and PEREZ violated Louisiana Rules of Professional Responsibility Rule 5.5, and, therefore, engaged in the unauthorized practice of law in Louisiana.

33.

The DOWNS GROUP employee eventually informed STERBCOW that DOWNS GROUP did not consider MR, SLG, STERBCOW, or MELANCON as co-counsel on all medical benefits claims cases. MELANCON issued an email requesting a listing of all mutual clients to date. DOWNS GROUP replied with a list of only 73 clients. The DOWNS GROUP contractor worker provided a listing of all medical claims benefit employees, including over 1,000 Louisiana residents. See Exhibit "F."

34.

After DOWNS GROUP representatives confirmed in writing that they would not honor the "attorney participation agreement," MR, SLG, STERBCOW, and MELANCON retained a Florida attorney to file a state court proceeding in Florida. During the pendency of the Florida litigation, the final appeal of the medical benefits SETTLEMENT AGREEMENT was dismissed. This dismissal made the SETTLEMENT AGREEMENT the governing instrument over all facets of the medical claims benefits process.

35.

MR, SLG, STERBCOW, and MELANCON file the instant motion to have this Honorable Court resolve the underlying dispute under its exclusive jurisdiction. PETITIONERS seek to have this Court decide the attorney fee apportionment, issue an injunction against remitting any attorney fees until resolution of said dispute, and to further render judgment for compensatory, statutory, and/or punitive damages as permitted by any applicable Louisiana, Florida, or federal law.

## LEGAL THEORIES OF RECOVERY

## COUNT ONE: ENFORCEMENT OF CONTINGENCY FEE AGREEMENTS AND BREACH OF JOINT VENTURE AND FIDUCIARY DUTY

38.

The contingency fee agreement and/or "attorney participation agreement" constitute a joint venture between DOWNS GROUP and MR and SLG. Co-joint venturers owe fiduciary duties towards one another. PETITIONERS seek to enforce the contingency fee agreements and allege that DOWNS GROUP, through its defendant agents, breached the joint venture and fiduciary duties relative to same.

39.

MR, SLG, STERBCOW, and MELANCON seek compensatory damages in the amount of attorney fees derived from the contingency fee agreement, or, in the alternative, the "attorney participation agreement," against DOWNS GROUP for violations of those Florida and Louisiana state laws governing joint ventures and fiduciary duties.

## COUNT TWO: BREACH OF CONTRACT

36.

In the alternative, DOWNS GROUP breached the "attorney participation agreement" by refusing to remit the agreed upon compensation as defined by paragraph two of this agreement relating to all medical claims benefit clients arising under the SETTLEMENT AGREEMENT and by unilaterally terminating said contract.

37.

In the alternative, MR, SLG, STERBCOW, and MELANCON seek compensatory damages against DOWNS GROUP for violations of those Florida and Louisiana state laws governing breach of contract.

**COUNT THREE: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP**

40.

In addition to the "attorney participation agreement," DOWNS GROUP drafted each contingency fee executed by mutual clients. Each contingency fee contract expressly identified "Jason L. Melancon, Esq." and "Marx D. Sterbcow, Esq." as co-counsel with respect to the BP medical claims benefits class members, thereby engaging PETITIONERS as active co-counsel.

41.

An email dated October 22, 2013 evidences internal discussions between DOWNS GROUP agents, including CRAIG DOWNS, FRIEDMAN, and PEREZ, to notify the mutual clients in writing for the purpose of stating that MR, SLG, STERBCOW, and/or MELANCON were not the medical benefits class members' attorneys. See Exhibit "G." To the extent that DOWNS GROUP and its defendant agents notified the mutual clients of same, said act constitutes a knowing and wanton attempt to tortuously interfere with the business relationship with said jointly represented clients. DOWNS GROUP also removed the names of MELANCON and STERCOW from future contingency fee agreements. See Exhibit "H."

42.

MR, SLG, STERBCOW, and MELANCON seek compensatory, statutory, and punitive damages, along with attorney fees and costs, against DOWNS GROUP, CRAIG DOWNS, FRIEDMAN, and PEREZ, for violations of those Florida and Louisiana state laws governing the tortious interference with business relationships.

**COUNT FOUR: UNFAIR TRADE PRACTICES**

43.

DOWNS GROUP and its defendant agents, including CRAIG DOWNS, FRIEDMAN, and PEREZ, fraudulently and knowingly induced MR, SLG, STERBCOW, and MELANCON to assist defendants for the purpose of circumventing Louisiana's prohibitions against out-of-state attorney marketing and signing Louisiana clients.

44.

DOWNS GROUP and its defendant agents, including CRAIG DOWNS, FRIEDMAN, and PEREZ, fraudulently and knowingly induced MR, SLG, STERBCOW, and MELANCON to assist defendants for the purpose of circumventing Louisiana's prohibitions against out-of-state attorney establishing an office or other systematic and continuous presence in this jurisdiction for the practice of law.

45.

DOWNS GROUP and its defendant agents, including CRAIG DOWNS, FRIEDMAN, and PEREZ, fraudulently and knowingly induced MR, SLG, STERBCOW, and MELANCON to assist in securing Louisiana residents as clients with full knowledge that they never intended to share in any attorney fees subsequently derived from all mutual Louisiana residents.

46.

MR, SLG, STERBCOW, and MELANCON seek compensatory, statutory, and punitive damages, along with attorney fees and costs, for violations of those Florida and Louisiana state laws governing unfair trade practices and fraudulent practices.

## COUNT FIVE: INJUNCTIVE RELIEF

47.

PETITIONERS have been co-counsel pursuant to either the "attorney participation agreement" or the underlying contingency fee agreements themselves.

48.

Now that the SETTLEMENT AGREEMENT is both final and definitive, all qualifying, mutual medical claims benefit class member clients are entitled to receive settlement determinations and payments from said SETTLEMENT AGREEMENT, with all attorney fees derived from said payments.

49.

Defendants have collectively prevented PETITIONERS from rightfully sharing in their proper apportionment of attorney fees.  With approximately 1,700 total mutual clients, PETITIONERS have no adequate recourse to these earned fees but for injunctive relief; therefore, establishing irreparable harm without injunctive relief relative to said fees.

50.

MR, SLG, STERBCOW, and MELANCON seek injunctive relief requiring the preservation of all attorney fees derived from all medical claims benefits paid until such time as this Honorable Court apportions those attorney fees.  PETITIONERS seek injunctive relief requiring the deposition of disputed attorney fees into an interest bearing banking account until said resolution of same.  PETITIONERS do not wish to hold up any settlement payments, save those reserved attorney fees, to the underlying mutual clients.

**WHEREFORE**, **PETITIONERS** pray for the following relief:

A. That the Eastern District of Louisiana issue an order permanently enjoining and staying the prior filed Florida state court action where this Honorable Court has exclusive and ancillary jurisdiction over attorney fee disputes arising over attorney fee allocations derived from the MEDICAL CLAIMS BENEFITS SETTLEMENT AGREEMENT.

B. That the Eastern District of Louisiana conduct an evidentiary hearing and issue judgment thereafter declaring the proper apportionment of attorney fees between Melancon | Rimes, LLC, Sterbcow Law Group, LLC, Jason L. Melancon, Marx D. Sterbcow, and the Downs Law Group, P.A for all medical claims benefit clients.

C. That there be further judgment rendered herein awarding statutory and/or punitive damages against the Downs Law Group, P.A. and its defendant agents Craig T. Downs, Jeremy Friedman, and Daniel Perez, as otherwise permitted under any Louisiana, Florida, or federal law.

D. That there be judgment rendered herein further awarding attorney fees and costs against Downs Law Group, P.A. and its defendant agents Craig T. Downs, Jeremy Friedman, and Daniel Perez, as otherwise permitted under any Louisiana, Florida, or federal law.

E. In the alternative, that there be judgment rendered herein extinguishing the contingency fee contracts between the Downs Law Group, P.A. and/or its defendant agents Craig T. Downs, Jeremy Friedman, and Daniel Perez for the unauthorized practice of law in Louisiana, and thereby appointing the law firms Melancon | Rimes, LLC and Sterbcow Law Group, LLC to solely and to exclusively act on behalf of those Louisiana clients, only, and to apportion all attorneys fees derived from the Louisiana clients to the law firms of Melancon | Rimes, LLC and Sterbcow Law Group, LLC exclusively.

Respectfully Submitted:
**Melancon | Rimes**                                   **Sterbcow Law Group, LLC**


s/ Jason L. Melancon                                    s/ Marx D. Sterbcow

**Jason L. Melancon, La. Bar No. 28152**    **Marx D. Sterbcow, La. Bar No. 28425**
**Robert C. Rimes, La. Bar No. 28740**        1734 Prytania Street
**Rachel Abadie, La. Bar No. 34413**           New Orleans, LA 70130
8706 Jefferson Hwy., Suite B                         Telephone: (504) 523-4930
Baton Rouge, LA 70809                                  Fax: (888) 241-6248
Telephone: (225) 303-0455
Fax: (225) 303-0459
**The McKee Law Group, LLC**


s/ Robert J. Mckee

**Robert J. McKee, FL Bar No. 972614**
17150 Royal Palm Blvd., Suite 1
Weston, FL 33327
Telephone: (954) 888-9877
Fax: (954) 217-0150

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | * * * * | **MDL NO. 2179** **SECTION: J** |
| **This document relates to:** | * * | **HONORABLE CARL J. BARBIER** |
| **Actions within B3 Pleading Bundle** | * * | **MAGISTRATE JUDGE SHUSAN** |
| **and** | * * | |
| **12-968, Plaisance, et al. v. BP Exploration& Production Inc., et al.** | * * | |

**CERTIFICATE OF SERVICE**

I hereby certify that in accordance with the Eastern District of Louisiana's electronic filing procedures, this document has been electronically filed. A Notice of Electronic Filing will be sent by the Court to all counsel of record who have consented to email notification and electronic service. This document is available for viewing and downloading from the Court's ECF system. Service to all known counsel of record who have not consented to email notification and electronic service has been made via U.S. Mail, postage prepaid.

Signed this 13th day of March, 2014 at Baton Rouge, LA.

　　　　　　　　　　　　　　　　　　　　　　　　s/Jason L. Melancon