IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 SECTION: J |
| This document relates to: | * * | |
| Actions within B3 Pleading Bundle | * | HONORABLE CARL J. BARBIER |
| and | * * | MAGISTRATE JUDGE SHUSAN |
| 12-968, Plaisance, et al. v. BP Exploration& Production Inc., et al. | * * * | |

MEMORANDUM IN SUPPORT OF
MOTION TO APPORTION ATTORNEY FEES, FOR INJUNCTIVE RELIEF, AND FOR
DAMAGES DERIVED FROM CLAIMS SUBMITTED PURSUANT TO THE MEDICAL
BENEFITS CLASS ACTION SETTLEMENT AGREEMENT
IN ACCORDANCE WITH SECTION XXVII, and
MOTION TO STAY PENDING FLORIDA STATE COURT ACTION

MAY IT PLEASE THE COURT:

COME NOW, Movers Melancon | Rimes, LLC ("MR"), Sterbcow Law Group, LLC ("SLG"), Jason L. Melancon ("MELANCON"), and Marx D. Sterbcow ("STERBCOW") (collectively referred to hereafter as "PETITIONERS"), who file this *Memorandum in Support of Motion to Stay Florida State Court Proceedings*, and respectfully aver as follows:

FACTUAL AND PROCEDURAL BACKGROUND

Sometime in or around August 2012, attorneys with the Florida law firm of Downs Law Group, P.A. ("DOWNS GROUP") reached out to PETITIONERS for assistance in marketing and in signing Louisiana residents as possible medical claims benefit clients. DOWNS GROUP reported that a number of Spanish speaking Florida residents that worked during the BP clean-up

were reportedly suffering from conditions identified in the Deepwater Horizon Medical Benefits

Class Action Settlement Agreement ("SETTLEMENT AGREEMENT").   DOWNS GROUP

indicated that other Spanish speaking workers within Louisiana were likely suffering from the

same conditions and possibly needed legal representation.  DOWNS GROUP sought to actively

solicit Spanish speaking clients residing within Louisiana.

DOWNS GROUP further expressed its desire to object to the various portions of the

proposed SETTLEMENT AGREEMENT.  DOWNS GROUP requested that MR and SLG act as

*pro hac vice* sponsors before this Honorable Court in a collective effort to object to the proposed

SETTLEMENT AGREEMENT.   DOWNS GROUP requested that MELANCON personally

stand before this Honorable Court to orally address those objections made on behalf of numerous

Spanish speaking workers.   MELANCON agreed and presented those clients' collective

arguments before this Honorable Court.  These Spanish speaking clients were referred to by this

Honorable Court as the "Sterbcow Objectors."

DOWNS GROUP further pursued PETITIONERS' assistance during the medical claims

benefits process because Florida law prevented DOWNS GROUP from advancing medical costs

for those clients needing medical evaluations before medical claims benefits submission,

whereas Louisiana law did not proscribe such prohibitions against Louisiana attorneys.  During

the objection hearing, MELANCON expressed the difficulties in having medical benefits class

members diagnosed by physicians (whereas Louisiana attorneys could pay advanced costs for

medical treatment, Florida attorneys were prohibited by law from such advanced payments).

Finally, DOWNS GROUP requested continued access to MR's and SLG's Louisiana

offices for meetings of South Louisiana clients, in particular.  SLG and MR provided conference

room facilities, supplies, and refreshments for all client meetings.   DOWNS GROUP

consistently used the offices of SLG and MR to sign contingency fee agreement with hundreds, if not over 1,000, Louisiana based clients.

DOWNS GROUP eventually hired a non-Louisiana licensed attorney, Amled Perez, who worked every day at SLG's New Orleans area offices. This DOWNS GROUP attorney primarily worked on signing BP medical claims benefits clients because of her Spanish speaking abilities. DOWNS GROUP never paid any remuneration for the constant use of SLG's office space. This DOWNS GROUP employee informed STERBCOW that DOWNS GROUP was advancing medical costs for many Louisiana based clients.

In exchange for the efforts of MR and SLG, DOWNS GROUP proposed a written attorney fee sharing arrangement whereby MR and SLG would receive compensation totaling a percentage of recovery obtained by DOWNS GROUP equivalent to the amount of 10% of the total recovery for all clients who submitted a medical benefits claim pursuant to the SETTLEMENT AGREEMENT. The document entitled "Attorney Participation Agreement" is attached as Exhibit "B" to the accompanying motion. STERBCOW signed his name to the agreement, and MELANCON indicated his acceptance of those terms in a separate email given a pending hurricane approaching Louisiana's shoreline. See Exhibit "C."

In accordance with the agreement, DOWNS GROUP drafted and executed contingency fee contracts with thousands of mutual clients, which contracts expressly included "Jason L. Melancon, Esq." and "Marx D. Sterbcow, Esq." as active counsel. See exemplar English and Spanish contracts at Exhibits "D" and "E," respectively. MR and SLG dutifully performed all requested tasks in accordance with active co-counsel status.

On September 24, 2013, while working at the office of SLG, the DOWNS GROUP employee provided STERBCOW with a list of mutual clients spanning over 1,700 names. See

list of mutual clients at Exhibit "F."   Around early October 2013, the DOWNS GROUP

employee then notified STERBCOW that DOWNS GROUP might not share the attorney fees

derived from those 1,700 medical benefit clients who submitted claims pursuant to the

SETTLEMENT AGREEMENT.

Accordingly, MR requested via email a list of mutual clients.  DOWNS GROUP only

provided a list of 73 names.  See Exhibit "G."  When MR and SLG confronted DOWNS

GROUP about the discrepancy, DOWNS GROUP indicated that PETITIONERS were not co-

counsel for over 1,700 mutual clients, and possibly over 1,000 Louisiana residents.

Emails provided from the DOWNS GROUP attorney showed a subsequent conspiracy by

DOWNS GROUP's managing partner and associate attorneys to send out letters to all clients

advising the mutual clients that MELANCON and STERBCOW were not co-counsel, despite

being expressly identified on the contingency fee contracts.  *See* Exhibit "H."  The emails further

expressed the intent to have all clients execute new contingency fee agreements without

MELANCON and STERBCOW identified on same.  PETITIONERS obtained a copy of an

unexecuted contract drafted by DOWNS GROUP that intentionally withdrew the names of Marx

Sterbcow and Jason Melancon.  See Exhibit "I."

As a result of their dispute, on December 27, 2013, SLG and MR filed a complaint in

Florida state court.  *Sterbcow Law Group, LLC and Melancon | Rimes, LLC v. The Downs Law*

*Group, P.A., Craig T. Downs, Jeremy Friedman, and Daniel Perez*, 11th Judicial District Circuit,

County of Miami-Dade, State of Florida.  See Exhibit "A."  SLG and MR initially filed the

complaint before the Florida tribunal because (1) the "Attorney Participation Agreement"

contained a forum selection clause providing for a Florida venue and (2) the SETTLEMENT

AGREEMENT remained on appeal, and, thus, was not binding upon all medical benefits class members.

However, on February 13, 2014, the remaining appeal relative to the SETTLEMENT AGREEMENT was dismissed; therefore, the SETTLEMENT AGREEMENT became both final and definitive as a matter of law.   Specifically, Section XXVII of the SETTLEMENT AGREEMENT provides that this Honorable Court has exclusive jurisdiction over all parties, medical benefits class members, and their counsel with respect to all disputes concerning the implementation and enforcement of the SETTLEMENT AGREEMENT.

Accordingly, PETITIONERS seek relief before this Honorable Court in accordance with the Section XXVII of the SETTLEMENT AGREEMENT.

## LAW AND ARGUMENT

**A. THIS HONORABLE COURT HAS EXCLUSIVE JURISDICTION OVER DISPUTES BETWEEN ATTORNEYS CONCERNING ATTORNEY FEES DERIVED FROM CLAIMS SUBMITTED PURSUANT TO THE SETTLEMENT AGREEMENT**

It is well settled that a federal court may resolve controversies over attorneys' fees when the dispute arises from litigation before it, under both the court's ancillary jurisdiction and its inherent power to regulate attorneys who practice before it. See, e.g., *Cluett, Peabody & Co. v. CPC Acquisition Co.,* 863 F.2d 251 (2d Cir.1988); *Pay Television of Greater New York, Inc. v. Sheridan,* 766 F.2d 92 (2d Cir.1985); *American Federation of Tobacco–Growers v. Allen,* 186 F.2d 590 (4th Cir.1951); *Iowa v. Union Asphalt & Roadoils, Inc.,* 409 F.2d 1239 (8th Cir.1969); *Jenkins v. Weinshienk,* 670 F.2d 915 (10th Cir.1982). This jurisdiction continues even after the original dispute has gone to judgment or been settled. *Novinger v. E.I. DuPont de Nemours & Co.,* 809 F.2d 212 (3d Cir.), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); *Sherrier v. Richard,* 600 F.Supp. 527 (S.D.N.Y.1984). In addition, where the dispute concerns

fees to be paid out of proceeds of the litigation, the court's ancillary jurisdiction arises from its authority to control the distribution of those proceeds. See, e.g., *Grimes v. Chrysler Motors Corp.,* 565 F.2d 841 (2d Cir.1977).

In *Baer v. First Options of Chicago,* 72 F.3d 1294 (7th Cir.1995), the Seventh Circuit said that supplemental jurisdiction over a post-settlement lawyer-verses-lawyer fee dispute was proper in light of two facts. The first was that the district court exercised affirmative control over the disputed fees. *Id.* at 1300; *cf. Fulton Nat'l Bank of Atlanta v. Hozier,* 267 U.S. 276, 280, 45 S.Ct. 261, 262 (1925) (holding that ancillary jurisdiction over a subsidiary controversy is proper where the dispute "has a direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit."). Secondly, the settlement agreement, which was brought to the district court for its approval, specifically acknowledged the dispute and included a provision for its resolution. *Baer,* 72 F.3d at 1300; *cf. Kokkonen v. Guardian Life Ins.,* 511 U.S. 375, 381–82, 114 S.Ct. 1673, 1677 (1994) (noting that a district court may, in its discretion, set forth as one of the terms of its order its continuing jurisdiction over the settlement agreement); *Schmidt v. Zazzara,* 544 F.2d 412, 414 (9th Cir.1976) (exercising ancillary jurisdiction after main action concluded where court expressly retained jurisdiction over attorney's fees dispute).

In the instant action, the SETTLEMENT AGREEMENT provides for this Honorable Court's exclusive and ancillary jurisdiction.  Section XXVII expressly provides that the Court shall retain jurisdiction over named parties, all medical benefits class members, and their attorneys.  The section provides for the resolution of any dispute or controversy arising out of or related to the implementation, administration, and enforcement of the SETTLEMENT AGREEMENT by motion to the Court.  The SETTLEMENT AGREEMENT further provides

that all parties and medical benefits settlement class members are deemed to have submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute.

PETITIONERS herein seek to enforce their legal right to attorney fees, first and foremost, by virtue of the contingency fee agreements executed with all medical benefits settlement class member clients; therefore, the subject motion implicates PETITIONERS' right to a portion of the claims benefits paid. This necessarily implicates the Court's regulation governing the distribution of class member process.

Moreover, jurisdiction is warranted because this Court possesses authority to regulate attorneys that practice before it. In the instant action, MR and SLG through MELANCON and STERBCOW, respectively, sponsored DOWNS GROUP's *pro hac vice* status to appear before this Honorable Court, thereby further granting jurisdiction over the subject attorney fee dispute. MR and SLG further seek the Court's authority to regulate attorneys that practice before it where DOWNS GROUP engaged in the unauthorized practice of law, where it actively solicited Louisiana resident clients via print and radio advertising without considering Louisiana law firms as co-counsel over those clients. DOWNS GROUP further engaged in the unauthorized practice of law where it permitted a non-Louisiana licensed employee to keep a continuous office presence at SLG's New Orleans office for the express purpose of signing up Spanish speaking Louisiana resident clients, again without considering Louisiana law firms as co-counsel.

**B. PETITIONERS SEEK TO ENFORCE THEIR RIGHTFUL SHARE OF ATTORNEY FEES CONTRACTUALLY OWED PURSUANT TO THE CONTINGENCY FEE CONTRACTS, OR, IN THE ALTERNATIVE, THE ATTORNEY PARTICIPATION AGREEMENT**

There exist two primary written instruments Petitioners seek to enforce: (1) the contingency fee contracts with the mutual clients, or, (2) in the alternative, the "Attorney Participation Agreement."   As it relates to the contingency fee contracts, the relevant English provision identifying PETITIONERS as counsel of record at Paragarph 8 states:

> Craig Downs, Esquire will be the attorneys primarily responsible for this matter, additionally Marx Sterbcow, Esquire and Jason Melancon, Esquire will assist with this matter.  The Client understands and agrees that other members of the Firm, associates or paralegals may assist lead counsel in the preparation and trial of the case.

See exemplar contracts at Exhibits "D" and "E."  Upon information and belief, nearly all medical claims benefits clients signed a contingency fee agreement containing this provision, until DOWNS GROUP drafted a new contingency fee contract excluding PETITIONERS following the apparent dispute over fees in October 2013.

As it relates to all contingency fee contracts executed by Louisiana residents, which the Louisiana Supreme Court governs all areas of legal practice within the State of Louisiana, the Louisiana Supreme Court recognized in *McCann v. Todd*, 203 La. 631, 14 So.2d 469 (1943), that two or more attorneys jointly undertaking to represent their client formed a joint venture.  Absent an agreement to the contrary, the attorneys are entitled to equally share in the compensation.  In such a case, the amount of time and labor furnished by the two attorneys is immaterial to the division of fees.  *McCann*, 14 So.2d at 472.  The joint venture theory applies where the attorneys have executed a single contingency fee contract.  *See Dukes v. Matheny*, 2002-0652 (La. App. 1 Cir. 2/23/04), 878 So. 2d 517, 520, *writ denied,* 2004-1920 (La. 11/8/04), 885 So. 2d 1132; *DeFrancesch v. Hardin,* 510 So.2d 42, 45 (La.App. 1st Cir.), *writ denied,* 513 So.2d 819

(La.1987); *see also Krebs v. Mull,* 97-2643 (La.App. 1st Cir.12/28/98), 727 So.2d 564, 569, *writ denied,* 99-0262 (La.3/19/99), 740 So.2d 119; *Rice, Steinberg, & Stutin, P.A.,* 716 So.2d at 11; *Fontenot & Mitchell v. Rozas, Manuel, Fontenot & McGee,* 425 So.2d 259 (La.App. 3rd Cir.1982), *writ denied,* 432 So.2d 268 (La.1983).

Thus, PETITIONERS are legally entitled to an equal share of all attorney fees derived from each mutual client pursuant to the contingency fee agreement, absent a separate agreement. The contingency fee contract herein identified three primarily responsible attorneys: Craig Downs, Marx Sterbcow, and Jason Melancon; therefore, pursuant to Louisiana law, each attorney is entitled to an equal 1/3 division of all attorney fees derived from each medical benefits class member claim submitted pursuant to the SETTLEMENT AGREEMENT.

However, PETITIONERS note that the "Attorney Participation Agreement" could qualify as a separate agreement as discussed in the aforementioned cases. See Exhibit "B." This agreement provides for a non-equal distribution of attorney fees. The applicable fee sharing provision at Paragraph 2 provides:

> COMPENSATION: As Compensation for these services, Co-Counsel shall be entitled to receive a percentage of the recovery obtained by Downs Law Group, P.A. in the lawsuit described herein equivalent to the amount of 10%.

As per the agreement, rather than an equal division, PETITIONERS should receive 10% of the total amount each client receives from those claims submitted by each client pursuant to the SETTLEMENT AGREEMENT.

However, PETITIONERS note that DOWNS GROUP and its agents have judicially declared the "Attorney Participation Agreement" void as a matter of law in Florida judicial proceedings. In their Answer, DOWNS GROUP and defendant agents stated in Paragraph 9: "Denied that any specific conduct by Downs would be legal cause for ratification of the

agreement."  See Exhibit "J."  Moreover, DOWNS GROUP judicially declared the invalidity of the "Attorney Participation Agreement" because it only applied to the law firms, MR and SLG, whereas the contingency fee agreements named Marx Sterbcow and Jason Melancon individually.  See Exhibit "K" at page 2.  Moreover, DOWNS GROUP has also previously stated that the "Attorney Participation Agreement" only applied to those 73 clients they identified in the October 18, 2013 email.

Accordingly, DOWNS GROUP and defendant agents should be precluded from arguing the validity of the "Attorney Participation Agreement" to subvert the equal sharing of attorney fees pursuant to Louisiana's joint venture law.  "Statements made in a previous stuit by an attorney before the court can be imputed to a party and subject to judicial estoppel."  *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003).  "[J]udicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in…some earlier proceeding."  *Hall*, *Id*. at 397.  "[A] party cannot advance one argument and then, for convenience or gamesmanship after that argument has served its purpose, advance a different and inconsistent argument."  *Hall*, *Id*.; *citing Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 818 (5th Cir. 2022).

Accordingly, PETITIONERS will voluntarily stipulate to the non-validity of the "Attorney Participation Agreement," assuming of course the Court finds PETITIONERS as co-counsel pursuant to the contingency fee agreements themselves.

Accordingly, PETITIONERS pray for an equal 1/3 distribution of attorney fees derived from each medical benefits class member's claims submitted as per the contingency fee contracts.  In the alternative, should the Court enforce the "Attorney Participation Agreement", PETITIONERS pray to receive 10% of the total claim paid for attorney fees for those 73 clients

identified in the October 18, 2013 email and an equal 1/3 distribution of attorney fees for all

other clients.

**C. IN THE ALTERNATIVE, PETITIONERS SEEK TO BE NAMED EXCLUSIVE COUNSEL OF RECORD FOR ALL LOUISIANA RESIDENT CLIENTS WHERE DOWNS GROUP AND ITS AGENTS ENGAGED IN THE UNAUTHORIZED PRACTICE OF LAW IN LOUISIANA**

By now claiming that the "Attorney Participation Agreement" was invalid from its

inception, DOWNS GROUP and its agents judicially admit that they intended to violate

provisions regarding the unauthorized practice of law in Louisiana.  DOWNS GROUP took

affirmative steps to market and to sign Louisiana clients without co-counsel admitted to practice

law in the State of Louisiana.  DOWNS GROUP advertised for Spanish speaking Louisiana

residents and promoted their legal services in Louisiana through print, signage, and radio

advertising.  DOWNS GROUP further stationed a non-Louisiana attorney employee in a New

Orleans area with the intention of having that attorney sign contingency fee contracts with

Louisiana residents.  Finally, DOWNS GROUP may have violated their own Florida rules of

professional responsibility by agreeing to pay medical providers located in Louisiana on a

contingency fee basis, absent Louisiana co-counsel that may pay advanced medical costs.

By their own judicial admissions, DOWNS GROUP signed up potentially over 1,000

Louisiana residents in non-compliance with Louisiana Supreme Court rules governing the

unauthorized practice of law in Louisiana.  Louisiana Supreme Court Rule XVII §13(B)(7)

prohibited DOWNS GROUP from actively soliciting Louisiana residents without a co-counsel

arrangement.  Section 13(B)(7) entitled "No Solicitation" provides that no out-of-state attorney is

authorized to hold himself out, to non-lawyers who have not requested the out-of-state lawyer's

presence, as available to assist in potential suits; and out-of-state attorneys may not solicit,

advertise, or otherwise hold themselves out in publications directed solely to this state as available to assist in litigation in this state.

Moreover, Louisiana Rules of Professional Responsibility Rule 5.5 entitled "Unauthorized Practice of Law; Multijurisdictional Practice of Law," provides that a lawyer not admitted to practice in Louisiana shall not establish an office or other systematic and continuous presence in Louisiana for the practice of law.

DOWNS GROUP violated both Section 13(B)(7) and Rule 5.5, unless PETITIONERS were co-counsel for all Louisiana clients. DOWNS GROUP even went so far as to identify the Spanish speaking radio station source for Louisiana clients. And there is no question that the DOWNS GROUP attorney employee, Amled Perez, who is also not a licensed Louisiana attorney, maintained a consistent office presence at SLG's New Orleans area office. Perez Depo. 16:1-16:25.

The bottom line is that PETITIONERS fully believed that they were co-counsel on all mutual medical benefits clients' claims, and particularly those Louisiana residents, because of DOWNS GROUPS' systematic marketing and signing of Louisiana client at MR's Baton Rouge office and SLG's Harahan area office. Should the Court conclude that DOWNS GROUP engaged in the authorized practice of law in marketing Louisiana residents as medical benefits settlement clients, then PETITIONERS pray that this Honorable Court enforce the contingency fees contract and identify Jason Melancon and Marx Sterbcow as exclusive counsel for all Louisiana resident clients.

D. **PETITIONERS FURTHER SEEK STATUTORY AND/OR PUNTIVE DAMAGES FOR THE DOWNS GROUP'S FRAUDULENT INDUCEMENT TO ACT AS CO-COUNSEL FOR THE PURPOSE OF MARKETING AND SIGNING LOUISIANA RESIDENT CLIENTS THROUGH A CONTINUED OFFICE PRESENCE IN LOUISIANA**

As clearly evidenced in the October 22, 2013 email between DOWNS GROUP's partner Craig Downs and its associated attorneys Jeremy Friedman and Daniel Perez, they were so concerned about the dispute they discussed ways to tell the mutual client that Marx Sterbcow and Jason Melancon were not co-counsel.  See Exhibit "G."  The letter stated in pertinent part:

Finally, please be advised that we had initially agreed that the law firms of Melancon Rimes and the Sterbcow Law Group would provide assistance to the objection and appeal only.  As these issues are no longer pending, these entities are no longer acting on your behalf.  This will have no effect on any recovery that you may have, however, we wanted to keep you informed as to any developments related to your case.

The best part of the email thereafter states only between the DOWNS GROUP agents:

Something like that.  **_Sure it is self serving_** but it can't hurt and we do have an obligation to keep the clients advised.  (Emphasis added)

This email clearly indicates an attempt to knowingly and wantonly interfere with PETITIONERS legal representation of those medical benefits clients.

Moreover, the DOWNS GROUP attorney employee also provided STERBCOW with a copy of a subsequently drafted contingency fee contract for execution with all future clients.  This contingency fee contract drafted post-dispute conspicuously fails to mention Marx Sterbcow and Jason Melancon as co-counsel.

As it relates to interference with those Louisiana residents' contingency fee contracts, Louisiana's unfair trade practices law states that a violation occurs when the defendant engages in fraud, misrepresentation, deception or other unethical conduct.  *Marshall v. Citicorp Mortg.*, *Inc.*, 601 So.2d 669, 670 (La.App. 5 Cir. 1992).  The definition of what constitutes unfair trade

practices is left to the courts.  *Id.*  Louisiana's unfair trade practices act further provides for treble damages if the court finds the unfair or deceptive method, act, or practice was knowingly used. La. R.S. 51:1409(A).

Where the instant dispute involves the collection of disputed attorneys fees, those fess constitute the measure of actual, compensatory damages.  Accordingly, PETITIONERS seek treble damages in the amount of three times those disputed attorney fees should this Honorable Court find the DOWNS GROUP knowingly used an unfair or deceptive method, act, or practice to deny Louisiana resident clients their rightful access to Louisiana licensed counselors identified as their legal representation on the contingency fee contracts.

## CONCLUSION

For the above and foregoing reasons, PETITIONERS respectfully pray for an order providing for all such relief as identified on the accompanying motion.

Respectfully Submitted:

| **Melancon | Rimes** | **Sterbcow Law Group, LLC** |
| --- | --- |

s/ Jason L. Melancon                            s/ Marx D. Sterbcow

**Jason L. Melancon, La. Bar No. 28152**        **Marx D. Sterbcow, La. Bar No. 28425**
**Robert C. Rimes, La. Bar No. 28740**          1734 Prytania Street
**Rachel Abadie, La. Bar No. 34413**            New Orleans, LA 70130
8706 Jefferson Hwy., Suite B                    Telephone: (504) 523-4930
Baton Rouge, LA 70809                           Fax: (888) 241-6248
Telephone: (225) 303-0455
Fax: (225) 303-0459
**The McKee Law Group, LLC**

s/ Robert J. Mckee

**Robert J. McKee, FL Bar No. 972614**
17150 Royal Palm Blvd., Suite 1
Weston, FL 33327
Telephone: (954) 888-9877
Fax: (954) 217-0150