# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "*Deepwater Horizon*" in the Gulf of Mexico, on April 20, 2010 | : : : : : | MDL No. 2179 SECTION: J JUDGE BARBIER MAG. JUDGE SHUSHAN |
| This Document Relates to: 10-4536 | | |

………………………………………………...

## CLEAN WATER ACT – PENALTY PHASE

## UNITED STATES' REPLY TO BPXP'S OPPOSITION TO MOTION IN *LIMINE* TO PERMIT RELEVANT EVIDENCE CONCERNING BP P.L.C. AND ITS AFFILIATES

*Table of Contents*

Table of Authorities ............................................................................................................... ii

I. BPXP'S Opposition Demonstrates that BP p.l.c. and Affiliates Should Be Considered for Penalty Purposes ............................................................................................................... 1

II. BP'S Position That Its Affiliates Are Relevant Only to the Mitigation Penalty Factor Is Not Supported by the Statute or Case Law ............................................................................... 3

III. BP Inaccurately Characterizes the Positions of the Parties ....................................................... 5

*Table of Authorities*

**Cases**

Atlantic States Legal Found. Inc v. Universal Tool & Stamping Co.,
786 F. Supp. 743 (N.D. Ind. 1992) ................................................................................ 4

Bond Pharm., Inc v. Anazaohealth Corp., No. 3:11-CV-58-CWR-FKB, 2012 WL 3052902
(S.D. Miss. July 25, 2012) ............................................................................................ 5

Idaho Conservation League v. Atlanta Gold Corp., 879 F. Supp. 2d 1148 (D. Idaho 2012) ......... 4

In re: Carroll Oil Co., 10 E.A.D. 635, Docket No. 8-99-05, 2002 WL 1773052 (EAB 2002)....... 4

In re: New Waterbury, Ltd., 5 E.A.D. 529, Docket No. TSCA-I-88-1069, 1994 WL 615377
(EAB 1994) .................................................................................................................. 4

PIRG v. Powell Duffryn Terminals, Inc., 720 F. Supp. 1158 (D.N.J. 1989), rev'd on other
grounds, 913 F. 2d 64 (3d Cir. 1990)............................................................................ 4

Public Interest Research Group of New Jersey v. Magnesium Elektron, Inc., No. 89-3193 (JCL),
1995 WL 461252 (D. N.J. Mar. 9, 1995)...................................................................... 4

United States v. Citgo Petroleum Corp., Civil Action No. 2:08-cv-0893, 2011 WL 10723934
(W.D. La. Sept. 29, 2011, rev'd 723 F. 3d 547 (5th Cir. 2013) .................................... 4

United States v. Kirk, Criminal No. SA11-CR-449(2)-DAE, 2013 WL 6198221
(W.D. Tex. Nov. 27, 2013) ........................................................................................... 5

United States v. Municipal Auth. of Union Township, 150 F. 3d 259 (3d Cir. 1998) .............. 1, 4

**Statutes**

33 U.S.C. § 1321(b)(8) ................................................................................................... 1,4

**Rules**

Fed. R. Evid. 103 ................................................................................................................ 5

**Other Authorities**

Wright & Graham, 21 Fed. Prac. & Proc. Evid §§ 5037.4, 5037.10 and 5037.15  (2d ed. 2005).. 5

To fashion a civil penalty that achieves the statutory purposes of Section 311(b)(8) of the Clean Water Act ("CWA") - deterrence and retribution - the Court should consider the actions of the BP Group.[1] It is clearly within the Court's discretion to consider BP Exploration and Production, Inc.'s ("BPXP") affiliates in fashioning a penalty, as the courts did in United States v. Municipal Authority of Union Township ("Dean Dairy"), 150 F. 3d 259 (3rd Cir. 1998), and similar cases. Since BPXP is staffed by and relies on BP p.l.c. and other BP affiliates in order to carry out drilling and mineral extraction in the Gulf of Mexico, no other course fits the facts. The record demonstrates that the BP Group, not simply BPXP, was deeply involved in the Macondo well both before and after the disaster. Nothing in BPXP's Opposition to the United States' Motion counters this critical fact.

I.  **BPXP's Opposition Demonstrates that BP p.l.c. and Affiliates Should be Considered for Penalty Purposes.**

In its Opposition, BPXP contends that BPXP is separate from the other entities within the BP Group and "has a distinct corporate identity and set of operations." (BP Br. at 4). None of the evidence that BPXP cites in support of this proposition was produced in discovery or placed into the trial record. Instead, BPXP relies solely on a statement in its 2013 Annual Report that was signed the same day as its Opposition was filed.[2] The record in this litigation contradicts BPXP's position, and, as set forth in detail in the U.S. MIL on Affiliates, demonstrates that BP's operations do not match its corporate structure. BPXP solely functions as an entity that holds

---

[1] The BP Group is defined as "BP p.l.c and its subsidiaries." Ex. # 1 to the United States' Motion *in Limine* to Permit Relevant Evidence Concerning BP p.l.c. and its Affiliates, Rec. Doc. 12355-4 (U.S. MIL on Affiliates), (BP Annual Report at 3, TREX-06833).

[2] BP's 2013 Annual Report states that "BPXP is the Group company that conducts exploration and production operations in the Gulf of Mexico." (Rec. Doc. 12465-5 at 39, 281). BP's previous annual reports did not contain this statement. Ex. #1 (BP Annual Report for 2012, at 162-169); Ex. #2 (BP Annual Report for 2011 at 160-163). However, even BP's 2013 Annual report makes clear that everything at issue in this case is overseen by the BP Group, not BPXP. (Rec. Doc. 12465-5 at 49-50).

leases,[3] not as an active business organization that directs operations.[4]  Indeed, in its Initial Disclosures, of the 19 BP individuals listed by BP as likely to have discoverable information, only three are identified as having roles solely with BPXP.[5]

In fact, for the first time in this litigation, BPXP admits that "[BPXP] maintains no payrolled employees."  BP asserts that it "**expects** the evidence will show that BPXP **generally** is charged, and BPAP [BP America Production Company] credited, for personnel costs associated with the work performed on BPXP operational assets by BPAP payrolled employees."  BP Br. at 4 (emphasis added).  Since BPXP has no employees, all functions were and are performed by other BP entities.[6]  BPXP contends it plans to introduce evidence showing that it "marshalled resources for the response effort and in doing so bore the vast majority of the cost of the response personnel and resources of other BP affiliates." (BP Br. at 2).   BPXP did not "marshal" the response effort.[7]  Rather, as described in the United States' MIL on Affiliates,

---

[3] None of the listed members of the BPXP board of directors have played **any** role in this litigation.  Rather they appear to be professional board servers for the BP Group.  Brenda Pennington, for instance, serves on the boards of directors of 45 BP corporate affiliates.  *See* Ex. #3 (Brenda Pennington Spreadsheet).  Further, according to State filings, BPXP board has three not six directors, as BPXPs brief states.  *See* Ex. #4 (Delaware Filings).

[4] Mr. Lamar McKay testified while BPXP held leases, "the operating structure, the way you manage all the assets, is organized in businesses that don't perfectly match this legal entity structure." *See* U.S. MIL Affiliates, *See* Rec. Doc. 2355-15 (MacKay, TR 594:17-596:6).

[5] *See,* Ex. #5 (BPXP Initial Disclosures). Twelve individuals are listed as employed solely by BP p.l.c. or other BP affiliates.  The two potential witnesses listed for economic impact on the violator are BP p.l.c. treasurers.  Three are listed as having roles with both the Gulf Coast Restoration Organization ("GCRO") and BPXP.

[6] For example, BP argued in insurance litigation with Transocean ("TO") that BP was entitled to insurance proceeds from the TO policies, defining BP to include the corporate chain from BPXP up to BP p.l.c.  *See* Ex.#9 (BP Brief at 1 n.2).  BP also argued that it paid for the TO insurance coverage by bargaining for TO to pay premiums for both parties. *See,* Ex. #10 (BP Reply Brief at 4-5).

[7] *See,* Rec. Doc. 12465-7.  The General Service Agreement between BPXP and BPAP, produced for the first time in BPXP's Opposition does not support the claim that BPXP "marshaled" the personnel and resources of BP affiliates.  The Agreement states, "the Services to be provided [must] be … **mutually agreed** upon." *Id.*

after the disaster, BP p.l.c. formed the Gulf Coast Restoration Organization ("GCRO") to manage and fund the response action.[8]  Thus, to reach the corporate behavior that is to be deterred, the Court should exercise its discretion to consider evidence concerning BP p.l.c. and other BP affiliates.

BP's view that BPXP must be the focus of the litigation (at least for select penalty factors) will increase discovery and complicate the trial.  There is virtually nothing on the record concerning transactions with BPXP because BP was not forthcoming on this issue in response to Phase I discovery *see,* US MIL on Affiliates at 9-10.  Since BP files consolidated financial statements, there is no public financial information available on BPXP or any other subsidiary.

## II. BP's Position that Its Affiliates are Relevant Only to the Mitigation Penalty Factor is Not Supported by the Statute or Case Law.

Illogically, BP maintains that "to the extent that BPXP utilized personnel and resources from certain of its corporate affiliates, those entities may become relevant **only** to the mitigation factor."  BP Br. at 2. BP erroneously contends that its positions are consistent with the language of the specific CWA penalty factors.  But the **one factor** for which BP argues the Court should consider the conduct of all BP entities – the mitigation factor – is one of the few that is expressly

---

Further, the BP Group is so intertwined that the Amendment to the Service Agreement is signed by the same person for both BPAP and BPXP.

Nor did BPXP employees did lead the response.  US MIL on Affiliates at 6-7; Ex. #6 (Hayward Depo. 804:11-805:4, testifying – under questioning by counsel for BP- that he led the response).  Indeed, BP's own advertising campaigns suggest the BP Group is directing efforts.  *See* http://www.youtube.com/watch?v=LLBTT7Mvk2Q http://www.linkedin.com/pub/jonathan-parker/55/639/29a; http://www.publicintegrity.org/2011/04/20/4269/bps-iris-cross-starred-two-disaster-pr-campaigns.

[8] BPXP also suggests the United States incorrectly asserted that BP p.l.c. said that it would pay all legitimate claims, including civil penalties resulting from the incident. However, BP p.l.c.'s Annual Reports have consistently stated that "BP" not "BPXP" will pay whatever civil penalties are awarded under the CWA.  *See* Ex. #7 (BP Annual Report for 2010 at 38); Rec. Doc. 12465-5 (BP Annual Report for 2013 at 40, 140, 142).

limited to the "violator."[9] The fact is that the BP Group has staffed, funded, and run the response just as it has staffed, funded, and run BPXP in general. This is precisely the type of evidence that is relevant to determining the impact of the penalty on the violator.[10]

The role of BP p.l.c. and affiliates is central to the actions and finances of BPXP, as was the case in United States v. Municipal Authority of Union Township ("Dean Dairy"), 150 F.3d 259 (3rd Cir. 1998), and similar cases.[11] Contrary to BP's assertion, case law in the Fifth Circuit supports the consideration of a parent's finances when evaluating the economic impact factor. *See* United States v. Citgo Petroleum Corp., 2011 WL 10723934 (W.D. Sept. 29, 2011), *vacated and remanded,* 723 F.3d 547 (5th Cir. 2013). The evidence shows, as was the case in *Dean Dairy,* that BPXP paid dividends to BP p.l.c. in the years preceding the Macondo disaster.[12] BPXP states "the evidence will show that BPXP has neither declared nor paid a dividend in any form to any parent or affiliate company **since April 20, 2010."** But BP's statement glaringly omits mention of dividends paid before the incident.

---

[9] That factor provides "the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge." *See also*, Rec. Doc. 12460 at 22. The penalty factors "any history of prior violations," "degree of culpability," or "other matters as justice may require" do not include statutory language restricting the Court's consideration to the "violator." 33 U.S.C. § 1321(b)(8).

[10] For example, other BP entities made payments to the Coast Guard for response costs *See, e.g.,* Ex. #8.

[11] As the Third Circuit reasoned "[t]he consideration of a parent's financial condition in assessing a penalty on a subsidiary is a far cry from piercing the corporate veil and holding the parent liable for the actions of its subsidiary; here the penalty was assessed against the subsidiary alone.... The court simply undertook a fact-specific assessment that examined the role of the parent in the operations of the subsidiary, particularly with regard to the issue of pollution of the nearby waters and actions that could have resolved it." Dean Dairy, at 268-269. See *also* Idaho Conservation League v. Atlanta Gold Corp., 879 F. Supp. 2d 1148, 1170 (D. Idaho 2012); Public Interest Research Group of New Jersey v. Magnesium Elektron, Inc., 1995 WL 461252 *19 (D.N.J.); Atlantic States Legal Found. Inc v. Universal Tool & Stamping Co., 786 F. Supp. 743, 753 (N.D. Ind. 1992); PIRG v. Powell Duffryn, 720 F. Supp. 1158, 1166 (D.N.J. 1989); In re Carroll Oil Company, 2002 WL 1773052 (E.P.A.); In re: new Waterbury, Ltd, 1994 WL 6153777 (E.P.A.).

[12] In 2009, BPXP was asked to produce $7 billion for dividends to BP p.l.c. (Rec. Doc 12460 at 9, ft 31, 32).

### III. BP Inaccurately Characterizes the Positions Taken by the Parties.

Contrary to BP's assertions, the United States does not seek a ruling that is premature, sweeping, or vague. BP Br. at 1. In its MIL on Prior Incidents, BP has asked the Court to *categorically* exclude any evidence related to a number of penalty factors, beyond matters involving BPXP under Section 311 of the CWA. The United States simply seeks a similar categorical ruling that evidence regarding other BP entities can be considered. It does not at this time seek a ruling that any specific evidence should be admitted at trial. U.S. MIL Aff. at 2-3.[13]

BPXP now admits that **some** evidence relating to the BP Group may be relevant to the economic impact of the penalty. BP Br. at 2, 7-8. In prior negotiation of this issue, however, BP unfairly offered to provide a limited set of "sufficient to show" financial documents from BPXP and its affiliates, contingent on the United States agreeing "that the roles and activities of BPXP and its affiliates in the DWH are relevant to the 'mitigation factor,'" and forgoing its other requests for information from BPXP and its affiliates. BP Br. at 2, Rec. Doc. 12465-1. Contrary to BP's assertion, the United States did not "reject outright" BP's offer to provide such information, but responded that it could not agree to BP's proposal "unless BP [could] also agree that the roles and activities of BPXP and its affiliates are relevant to other penalty factors."[14]

---

[13] It is well-established that motions in *limine* may be used to secure a pretrial ruling that certain evidence is admissible. Revised Fed. R. Evid. 103 permits definitive motions in *limine* whether they are seeking a ruling either "admitting or excluding" the evidence. A motion in *limine* may be an appropriate way of ruling on a particular topic, not only on a specific bit of testimony or a single document. *See* United States v. Kirk, 2013 WL 6198221 *1-2 (W.D. Tex.); Bond Pharmacy, Inc v. Anazaohealth Corp., 2012 WL 3052902 (S.D. Miss.) *2; Wright & Graham, 21 Fed. Prac. & Proc. Evid §§ 5037.10, 5037.15, 5037.4 (2d ed. 2005).

[14] *See*, Rec. Doc. 12465-3.

Respectfully submitted,

| | |
|---|---|
| BRIAN HAUCK | ROBERT G. DREHER |
| Deputy Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| PETER FROST | SARAH HIMMELHOCH |
| Director, Torts Branch, Civil Division | MICHAEL MCNULTY |
| Admiralty and Aviation | Senior Litigation Counsel |
| STEPHEN G. FLYNN | NANCY FLICKINGER |
| Assistant Director | Senior Attorney |
| SHARON SHUTLER | RICHARD GLADSTEIN |
| MALINDA LAWRENCE | PATRICK CASEY |
| LAURA MAYBERRY | Senior Counsel |
| Trial Attorneys | A. NATHANIEL CHAKERES |
| | JUDY HARVEY |
| | RACHEL KING |
| R. MICHAEL UNDERHILL, T.A. | ERICA PENCAK |
| Attorney in Charge, West Coast Office | ABIGAIL ANDRE |
| | RACHEL HANKEY |
| | BRANDON ROBERS |
| | Trial Attorneys |

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
Facsimile:   202-514-2583
E-mail:  steve.o'rourke@usdoj.gov
KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA  70130
Telephone:  (504) 680-3000
Facsimile:  (504) 680-3184
E-mail:  sharon.d.smith@usdoj.gov

Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date: March 13, 2014.                                               /s/ Steven O'Rourke

                                                                                                 U.S. Department of Justice