UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "*Deepwater Horizon*" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates to: 10-4536 ……………………………………………... | : : | JUDGE BARBIER MAG. JUDGE SHUSHAN |

**CLEAN WATER ACT – PENALTY PHASE**

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF THE UNITED STATES TO LIMIT EVIDENCE ABOUT THE "SERIOUSNESS" FACTOR**

*Table of Contents*

I.   The Billions of Dollars of Economic and Environmental Harm Caused by the Spill Establish Indisputably the Very Serious Extent of the Violation .........................................1

II.  BP is not Entitled to Further Discovery on Topics Already Indisputably Addressed by the Evidence ...............................................................................................................................4

*Exhibit List*

| Exh. # | Description |
|---|---|
| 1 | Notice of Errata |
| 2 | BP Annual Report and Form 20-F 2012, Pages 42, 167, 237 |
| 3 | BP Exploration & Production Inc.'s First Set of Discovery Requests to the United States of America Relating to the Clean Water Act Penalty Phase, dated March 10, 2014 |
| 4 | Defendant BP Exploration & Production Inc.'s Initial Disclosures Relating to the Clean Water Act Penalty Phase, dated March 10, 2014 |

i

BP's opposition to limit evidence regarding the "seriousness" factor primarily errs by refuting strawman arguments instead of the United States' actual arguments. BP argues that seriousness is not a "binary" or yes/no element, but requires an assessment of the <u>extent</u> of the seriousness of the violation. BP Opp. at 1-9. We agree that the inquiry is not binary. The critical inquiry here is whether the existing evidence establishes the <u>extent</u> of the seriousness of the harm. *Accord* BP Opp. at 5. The undisputed evidence available to the Court establishes that the Spill caused harm in the multiple billions of dollars and killed people. App. A ¶¶2, 4-5.[1] This evidence does not focus on establishing actual <u>damages</u>, but that is not required in a <u>penalty</u> proceeding; precise accounting of damages from the Spill is the subject of other proceedings.

BP's second error is to equate the broad scope of potential discovery with an absolute right to take as much discovery as it desires, regardless of need or burden to the other party. From this erroneous premise, BP concludes that this Court would commit reversible error if BP is not allowed far-reaching discovery into the ongoing NRD process.[2] BP Opp. at 10-15. But none of BP's authorities nullify the usual Rule 26 inquiry: the extent of discovery begins with the need for evidence on a given topic, and then if there is a need for such evidence, the Court balances the relative benefits against the burdens of discovery. Applying the usual standard, BP has no need for or entitlement to further discovery regarding the "seriousness" factor.

I.  **The Billions of Dollars of Economic and Environmental Harm Caused by the Spill Establish Indisputably the Extremely Serious Extent of the Violation.**

BP argues that the Court must consider "<u>*The Extent To Which*</u> The Spill Harmed The Environment, The Economy, And Human Health." BP Opp. at 5 (emphasis in original). But BP

---

[1] The United States submits one correction to its previously-filed Appendix A as Exhibit 1 to this brief.

[2] The cases BP cites to support its Due Process argument are inapplicable. *Trinity Marine Nashville, Inc. v. Occupational Safety & Health Review Comm'n*, 275 F.3d 423 (5th Cir. 2001) never mentions Due Process and <u>*Diamond Roofing Co., Inc. v. Occupational Safety and Health Review Com'n,*</u> 528 F.2d 645 (5th Cir. 1976) only mentions it once in a footnote about the interpretation of an OSHA regulation but provides no analysis. Further, the Due Process issue BP alleges is misplaced because the United States agrees that the seriousness inquiry is not binary and BP can present evidence of its efforts to mitigate.

then completely ignores the facts presented by the United States: BP neither denies the accuracy of these facts nor explains why these facts do not establish "the extent to which the Spill harmed the environment, the economy, and human health."

Regarding economic losses, BP has paid over $11 billion to individuals and businesses, with billions more to be paid. *See* App. A ¶¶ 27-29; BP 2012 Annual Report at 42, 167, 237 (Exhibit 2). Yet BP's only acknowledgement of the magnitude of the economic losses is to argue that this Court must ignore it, because Economic Damage payments are not "an admission of any liability . . . or recognition of the validity of any allegation of fact or law . . . ." BP Opp. at 11, *quoting* Economic Damage Settlement. BP's argument is unavailing. First, the quoted language applies only to the Economic Damage settlement, not the nearly $7 billion paid by BP outside of that settlement. App. A ¶ 28. Second, the United States points to the settlement and prior payments to establish that the spill was serious, (App. A ¶¶ 27-36), not to establish a precise value of those claims.[3] Short of adjudicating all settled and unsettled claims, this Court simply could not determine the exact amount of economic losses caused by the Spill.

The same pattern applies to environmental harm. BP has created a $1 billion fund for early restoration in the NRD process, and BP has paid approximately $2.5 billion in the criminal settlement for environmental restoration. App. A ¶¶ 11-13. The point of these facts is not to ask this Court to make precise findings of environmental harm in the CWA penalty phase, but simply to establish that the magnitude of the harm is in the billions of dollars – and thus very serious.[4]

---

[3] This is why Fed. R. Evid. 408 is inapplicable: the settlements are not offered to show "amounts" or "validity" of a claim, but rather to show the Spill's seriousness. BP's collateral estoppel argument certainly does not apply to its criminal plea. *Heck v. Humphrey*, 512 U.S. 477, 486 (1994) ("[C]ivil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments.")

[4] Yet another panel of the Fifth Circuit recently confirmed the extent of the "seriousness" of this oil spill. Judge Denis' concurring opinion described the "unprecedented spill that affected thousands of businesses across the Gulf Coast and surrounding regions," *In Re Deepwater Horizon*, 13-30315 (March 3, 2014) at 15, while Judge Clement's dissent stated, "The Deepwater Horizon tragedy took eleven lives and caused great damage to our environment and region." *Id*. at 19.

Last but certainly not least, the Spill killed eleven men, injured many others, and caused actual and potential injuries to thousands of response workers and residents. App. A. ¶¶ 18-25.

Based on the above facts, we submit that there are only two questions to be asked in determining whether further evidence of "seriousness" need be taken:

1. Is it beyond reasonable dispute that the economic and environmental harms from the Spill have amounted to billions of dollars?

2. If the answer to the first question is "yes," is a precise determination of those amounts necessary to determine a civil penalty?

BP's opposition adroitly avoids both of these questions.[5] Based on the facts in Appendix A and other cited materials, the answer to the first question is "yes." Moreover, the answer to the second question is a clear "no." Potential environmental harm is sufficient to prove seriousness under the CWA factors; precise determination of harm is not required. *See, e.g.*, *United States v. Gulf Park Water Co., Inc.*, 14 F. Supp. 2d 854, 859-60 (S.D. Miss. 1998) ("the United States does not have the burden of quantifying the harm caused by the defendants."); *see also* United States' CWA Section 311(B) Burden Of Proof Memorandum (Rec. Doc. 12479).

The other penalty cases BP cites involving consideration of actual environmental harm are not to the contrary. *See* cases in BP Opp. at 5-6. However, there is no indication in those opinions that evidence of "seriousness" would have been taken if the general magnitude of the economic, human health, and actual environmental harm from those violations had already been known, and none of those cases held that potential environmental harm was an insufficient basis for determining seriousness. Further, BP's citing the number of witnesses in other cases (*e.g.*, 23 witnesses in *Citgo*) is also misleading: the number of witnesses in Phases One and Two already exceeds any of those cases. Finally, even as to factors requiring mathematical computations

---

[5] While APC was not a party to the multi-billion dollar settlements referenced in Appendix A, unless APC actually contends that the Spill did not cause billions of dollars in financial and environmental harm, there is no more need for evidence from APC on the "seriousness" factor than there is from BP.

- 3 -

using established methods, such as economic benefit, the Fifth Circuit requires only a "reasonable approximation," not precision. *United States v. Citgo Petroleum Corp.*, 723 F.3d 547, 552 (5th Cir. 2013) (a range of 5 orders of magnitude is insufficient). In contrast, courts' consideration of "seriousness" has been much broader and less mathematical than the relatively narrow "economic benefit" factor, but in any event, the record here already establishes the general magnitude of the Spill's effects in dollar terms, which was not so in other cases.

Last, BP's demand that the Court quantify environmental harm is at odds with the CWA and the Court's discretion under the statute. *United States v. Citgo Petroleum Corp.*, 723 F.3d 547, 551 (5th Cir. 2013) (explaining that courts must consider all the factors, but how factors are considered is highly discretionary). Courts enjoy similarly broad discretion to exclude evidence under FRE 403's balancing inquiry. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 128 S. Ct. 1140, 170 L. Ed. 2d 1 (2008); *Old Chief v. United States*, 519 U.S. 172, 183 n.7 (1997).

**II.    Bp Is Not Entitled to Further Discovery on Topics Already Indisputably Addressed by the Evidence.**

BP claims entitlement to NRD discovery so that it can defend itself against the United States' seriousness case. This is another strawman: evidence already presented or conceded by BP establishes that the Spill was gravely serious in the MDL 2179 record.[6] Therefore, BP's proposed NRD discovery is unnecessary.[7] Because the proposed discovery would also cause significant burden (*See* NOAA Decl., Rec. Doc. 12373-7), it should be denied under Rule 26's balancing inquiry. Fed. R. Civ. P. 26(b)(2)(C)(iii). The Fifth Circuit's treatment of Rule 26

---

[6] BP's "evidence" downplaying the seriousness of the Spill is nothing more than an effort at irrelevant confusion and misdirection. To take but one example, BP cites a Fish and Wildlife Service document to say that there was only one dead "threatened" bird, and that bird was not visibly oiled. BP Opp. at 6. But a casual glance at the document shows that *thousands* of birds were found dead, oiled, or both. Apparently BP contends that these thousands of bird deaths do not count toward the "seriousness" of the Spill because most of them were not listed as threatened or endangered. "Evidence" of this sort does not alter the undisputed fact that the overall environmental harm is in the billions of dollars.

[7] BP argues that the United States' seriousness proposal is unconstitutional because it excludes evidence of BP's response and mitigation efforts, but that is inaccurate—such evidence will come in through stipulations or under the mitigation factor.

- 4 -

supports this conclusion. *Crosby v. Louisiana Health Serv. & Indem. Co.,* 647 F.3d 258, 264 (5th Cir. 2011) (citations omitted) (courts "must be mindful of the limitations placed on the frequency and extent of discovery under … Rule 26(b). [It] has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.").[8] In any event, any balancing should also weigh what BP does not acknowledge – that it has much environmental data from the United States in hand already and will be receiving more – and also what BP neither confirms nor denies: Whether it has collected its own data that could be relevant to environmental harm.

Alternatively, if the Court does hear evidence on the extent of financial, environmental, and human health harms from the Spill, we make two points. First, BP argues it needs discovery into the ongoing NRDA, but does not (and cannot) explain why the same level of fact finding is not needed for economic or human health harms. If detailed findings were required for environmental harm, the same would be required for human health and economic loss. Second, any discovery into the NRD process should be limited to data gathered by the natural resource agencies. BP already has most of this data, and the agencies could work with BP to produce the remainder, subject to Pretrial Order 14, and subject to the rights of any State agencies to seek to withhold information. But inquiry into the agencies' ongoing analysis of this data should be precluded: it would interfere with the agencies' ongoing work, and BP's expert(s) surely can draw conclusions from this data without the agencies' unfinished analyses.[9]

---

[8] BP's recently filed RFPs (Exhibit 2) provide many examples of the unwieldy discovery discouraged by the Fifth Circuit and Rule 26. For instance: "213. All documents referring or relating to any environmental, human health, economic, or other impact (including indirect, modeled, potential, or future impact) of the Deepwater Horizon Spill and/or Response Activities, including but not limited to all analyses, evaluations, assessments, studies, or reports." BP's Initial Disclosures also illustrate the problem with BP's approach on seriousness: of the 37 witnesses listed, at least 12 would testify on the seriousness factor, exceeding the total number of witnesses BP brought to either Phase One or Two of trial.

[9] Providing BP with the data would address BP's objections to the United States' alternative proposal in our opening brief; BP argued that the United States possesses data in the NRD process that BP does not. For parity's sake, if the United States must produce data from the NRD process, then BP should be required to produce any data it has gathered but not yet shared.

Respectfully submitted,

| | |
|---|---|
| BRIAN HAUCK | ROBERT G. DREHER |
| Deputy Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| PETER FROST | SARAH HIMMELHOCH |
| Director, Torts Branch, Civil Division | MICHAEL MCNULTY |
| Admiralty and Aviation | Senior Litigation Counsel |
| SHARON SHUTLER | NANCY FLICKINGER |
| MALINDA LAWRENCE | Senior Attorney |
| LAURA MAYBERRY | PATRICK CASEY |
| Trial Attorneys | RICHARD GLADSTEIN |
| R. MICHAEL UNDERHILL, T.A | DANIEL S. SMITH |
| Attorney in Charge, West Coast Office | Senior Counsel |
| | ABIGAIL ANDRE |
| | A. NATHANIEL CHAKERES |
| | ANNA CROSS |
| | RACHEL HANKEY |
| | JUDY HARVEY |
| | RACHEL KING |
| | ERICA PENCAK |
| | BRANDON ROBERS |
| | GORDON YOUNG |
| | Trial Attorneys |

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
Facsimile:   202-514-2583
E-mail:  steve.o'rourke@usdoj.gov
KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana

Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date: March 13, 2014.                                    /s/ Steven O'Rourke
                                                               U.S. Department of Justice