# Exhibit 2

**TO UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF MOTION OF THE UNITED STATES TO LIMIT EVIDENCE ABOUT THE "SERIOUSNESS" FACTOR**

Case 2:10-md-02179-CJB-DPC   Document 12511-2   Filed 03/13/14   Page 2 of 5

# Annual Report and Form 20-F 2012

bp.com/annualreport





Building a stronger, safer BP

or economic injury, actions for breach of contract, violations of statutes, property and other environmental damage, securities law claims and various other claims. See Legal proceedings on pages 162-169.

BP is subject to a number of investigations related to the Incident by numerous federal and State agencies. See Legal proceedings on pages 162-169. The types of enforcement action pursued and the nature of the remedies sought will depend on the discretion of the prosecutors and regulatory authorities and, in some circumstances, their assessment of BP's culpability, if any, following their investigations. Under the Clean Water Act, any finding of gross negligence for purposes of penalties sought against BP would result in significantly higher fines and penalties than the amounts for which we have provided and would also have a material adverse impact on the group's reputation, would affect our ability to recover costs relating to the Incident from other parties responsible under OPA 90 and could affect the fines and penalties payable by BP with respect to the Incident under enforcement actions outside the Clean Water Act context.

On 3 March 2012, BP reached an agreement (comprising two separate settlement agreements) with the Plaintiffs' Steering Committee (PSC) in the Multi-District Litigation pending in New Orleans (MDL 2179) to resolve the substantial majority of legitimate private economic and property damages claims and medical benefits claims stemming from the Incident. The settlement agreement in respect of economic and property damages claims was approved by the Court on 21 December 2012, and the settlement agreement in respect of medical benefits claims was approved on 11 January 2013. The PSC settlement is uncapped except for economic loss claims related to the Gulf seafood industry. The cost of the PSC settlement is expected to be paid from the $20-billion Deepwater Horizon Oil Spill Trust fund (Trust). As at 31 December 2011, the estimate of items covered by the settlement with the PSC for Individual and Business claims was $7.8 billion. During 2012, BP increased its estimate of the cost of claims administration by $280 million and also increased the estimate by a further $400 million as described below.

Business economic loss claims received by the Deepwater Horizon Court Supervised Settlement Program (DHCSSP) to date are being paid at a significantly higher average amount than previously assumed by BP in formulating the original estimate of the cost. Further, BP's initial estimate of aggregate liability under the settlement agreements was premised on BP's interpretation of certain protocols established in the economic and property damages settlement agreement. As part of its monitoring of payments made by the court-supervised claims processes operated by the DHCSSP for the economic and property damages settlement, BP identified multiple claim determinations that appeared to result from an interpretation of the settlement agreement by that settlement's claims administrator that BP believes was incorrect. This interpretation produced a higher number and value of awards than the interpretation BP assumed in making the initial estimate. Pursuant to the mechanisms in that settlement agreement, the claims administrator sought clarification from the court on this matter and on 30 January 2013, the court initially upheld the claims administrator's interpretation of the agreement.

In its unaudited fourth quarter and full year 2012 results announcement dated 5 February 2013, BP stated that if the initial trend of higher average payments than assumed by BP in its original estimate of the cost continued, then it was likely that BP's estimate of these claims would be increased significantly. Management's initial assessment of the ruling regarding the interpretation of the settlement agreement led to an increase in the estimated cost of the settlement with the PSC of $400 million, bringing the total estimated cost to $8.5 billion. This estimate was based upon management's initial assessment of the ruling's impact on claims already submitted to and processed by the DHCSSP. At that time, BP was seeking reversal of the court's decision in relation to this matter, management concluded that it was not possible to estimate reliably the impact of the interpretation on any future claims not yet received or processed by the DHCSSP.

On 6 February 2013, the court reconsidered and vacated its ruling of 30 January 2013 and stayed the processing of certain types of business economic loss claims. The court lifted the stay on 28 February 2013. On 5 March 2013, the court affirmed the claims administrator's interpretation of the economic and property damages settlement agreement and rejected BP's position as it relates to business economic loss claims. BP strongly disagrees with the decision of 5 March 2013 and the current implementation of the agreement by the claims administrator. BP intends to pursue all available legal options, including rights of appeal, to challenge this ruling.

Other business economic loss claims have continued to be paid at a higher average amount than previously assumed by BP in determining its initial estimate of the total cost. Management has continued to analyse the claims in the period since 5 February 2013 to gain a better understanding of whether or not the number and average value of claims received and processed to date are predictive of future claims (and so would allow management to estimate the total cost of the Settlements reliably). Management has concluded based upon this analysis that it is not possible to determine whether the claims experience to date is, or is not, an appropriate basis for determining the total cost. Therefore, given the inherent uncertainty that exists as BP pursues all available legal options to challenge the recent ruling and the higher number of claims received and higher average claims payments than previously assumed by BP, which may or may not continue, management has concluded that no reliable estimate can be made of any business economic loss claims not yet received or processed by the DHCSSP.

Therefore, BP's estimate of the cost of business economic loss claims at 31 December 2012 now includes only the estimated cost of claims already received and processed by the DHCSSP. An amount of $0.8 billion previously provided for future claims not yet received and processed by the DHCSSP has been derecognized, with a corresponding reduction in the reimbursement asset and therefore no net impact on the income statement, as no reliable estimate can be made for this liability. It is therefore disclosed as a contingent liability in Note 43. A provision will be re-established when a reliable estimate can be made of the liability as explained more fully below.

BP's current estimate of the total cost of those elements of the PSC settlement that can be estimated reliably, which excludes any future business economic loss claims not yet received or processed by the DHCSSP, is $7.7 billion.

If BP is successful in its challenge to the court's ruling, the total estimated cost of the settlement agreement will, nevertheless, be significantly higher than the current estimate of $7.7 billion, because business economic loss claims not yet received or processed are not reflected in the current estimate and the average payments per claim determined so far are higher than anticipated. If BP is not successful in its challenge to the court's ruling, a further significant increase to the total estimated cost of the settlement will be required. However, there can be no certainty as to how the dispute will ultimately be resolved or determined. To the extent that there are insufficient funds available in the Trust fund, payments under the PSC settlement will be made by BP directly and charged to the income statement.

As previously disclosed, significant uncertainties exist in relation to the amount of claims that are to be paid and will become payable through the claims process. There is significant uncertainty in relation to the amounts that ultimately will be paid in relation to current claims, and the number, type and amounts payable for claims not yet reported. In addition, there is further uncertainty in relation to interpretations of the claims administrator regarding the protocols under the economic and property damages settlement agreement and judicial interpretation of these protocols, and the outcomes of any further litigation including in relation to potential opt-outs from the settlement or otherwise.

While BP has determined its current best estimate of the cost of those aspects of the settlement with the PSC that can be measured reliably, it is possible that the actual cost could be significantly higher than this estimate due to the uncertainties noted above. In addition, the provision will be re-established for remaining business economic loss claims and the estimate will increase as more information becomes available, the interpretation of the protocols is clarified and the claims process matures, enabling BP to estimate reliably the cost of these claims. See Financial statements – Note 36 on page 235 and Note 43 on page 253 for further information.

The Gulf of Mexico oil spill has damaged BP's reputation. This, combined with other past events in the US (including the 2005 explosion at the Texas City refinery and the 2006 pipeline leaks in Alaska), may lead to an increase in the number of citations and/or the level of fines imposed in relation to any alleged breaches of safety or environmental regulations.

See Legal proceedings on pages 162-169 and Financial statements – Note 2 on page 194.

Each agreement provides that class members will be compensated for their claims on a claims-made basis, according to agreed compensation protocols in separate court-supervised claims processes. The compensation protocols under the Economic and Property Damages Settlement provide for the payment of class members' economic losses and property damages. In addition many economic and property damages class members will receive payments based on negotiated risk transfer premiums (RTPs), which are multiplication factors designed, in part, to compensate claimants for potential future damages that are not currently known, relating to the Incident. The Economic and Property Damages Settlement and the Medical Benefits Class Action Settlement are not an admission of liability by BP. The settlements are uncapped except for economic loss claims related to the Gulf seafood industry under the Economic and Property Damages Settlement and the $105 million to be provided to the Gulf Region Health Outreach Program under the Medical Benefits Class Action Settlement.

As part of its monitoring of payments made by the court-supervised claims processes operated by the Deepwater Horizon Court Supervised Settlement Program (DHCSSP) for the Economic and Property Damages Settlement, BP identified multiple business economic loss claim determinations that appeared to result from an interpretation of the Economic and Property Damages Settlement Agreement by that settlement's claims administrator that BP believes was incorrect. This interpretation produced a higher number and value of awards than the interpretation BP assumed in making the initial estimate. Pursuant to the mechanisms in the Economic and Property Damages Settlement Agreement, the claims administrator sought clarification from the court on this matter and on 30 January 2013, the court initially upheld the claims administrator's interpretation of the agreement. On 6 February 2013, the court reconsidered and vacated its ruling of 30 January 2013 and stayed the processing of certain types of business economic loss claims. The court lifted the stay on 28 February 2013. Other business economic loss claims have continued to be paid at a higher average amount than previously assumed by BP in determining its initial estimate of the total cost. On 5 March 2013, the court affirmed the claims administrator's interpretation of the agreement and rejected BP's position as it relates to business economic loss claims. BP strongly disagrees with the ruling of 5 March 2013 and the current implementation of the agreement by the claims administrator. BP intends to pursue all available legal options, including rights of appeal, to challenge this ruling.

BP initially estimated the cost of the Settlements, including claims administration costs, to be approximately $7.8 billion (including the $2.3-billion commitment to help resolve economic loss claims related to the Gulf seafood industry). During the third quarter 2012, BP increased its estimate of the cost of claims administration by $280 million, and during the fourth quarter by a further $400 million as described in Financial statements – Note 36 on pages 236-239 herein. Subsequently, management has continued to analyse the business economic loss claims in the period since 5 February 2013 to gain a better understanding of whether or not the number and average value of claims received and processed to date are predictive of future claims (and so would allow management to estimate the total cost of the Settlements reliably). Management has concluded based upon this analysis that it is not possible to determine whether this claims experience to date is, or is not, an appropriate basis for determining the total cost. Therefore, given the inherent uncertainty that exists as BP pursues all available legal options to challenge the recent ruling and the higher number of claims received and higher average claims payments than previously assumed by BP which may or may not continue, management has concluded that no reliable estimate can be made of any business economic loss claims not yet received or processed by the DHCSSP.

BP's current estimate of the total cost of those elements of the Settlements that can be estimated reliably, which excludes any future business economic loss claims not yet received or processed by the DHCSSP, is $7.7 billion. If BP is successful in its challenge to the court's ruling, the total estimated cost of the Settlements will, nevertheless, be significantly higher than the current estimate of $7.7 billion, because business economic loss claims not yet received or processed are not reflected in the current estimate and the average payments per claim determined so far are higher than anticipated. If BP is not successful in its challenge to the court's ruling, a further significant increase to the total estimated cost of the Settlements will be required. However, there can be no certainty as to how the dispute will ultimately be resolved or determined. To the extent that there are insufficient funds available in the Trust fund, payments under the PSC settlement will be made by BP directly and charged to the income statement.

Significant uncertainties exist in relation to the amount of claims that are to be paid and will become payable through the claims process. There is significant uncertainty in relation to the amounts that ultimately will be paid in relation to current claims, and the number, type and amounts payable for claims not yet reported. In addition, there is further uncertainty in relation to interpretations of the claims administrator regarding the protocols under the Economic and Property Damages Settlement and judicial interpretation of these protocols, and the outcomes of any further litigation including in relation to potential opt-outs from the settlement or otherwise. While BP has determined its current best estimate of the cost of those aspects of the Settlements that can be measured reliably, it is possible that the actual cost could be significantly higher than this estimate due to the uncertainties noted above. In addition, a provision will be re-established for remaining business economic loss claims and the estimate will increase as more information becomes available, the interpretation of the protocols is clarified and the claims process matures, enabling BP to estimate reliably the cost of these claims. For more information, see Financial statements – Note 36 on pages 236-239 of this report.

All class member settlements under these agreements are payable under the terms of the Trust. Other costs to be paid from the Trust include State and Local government claims, state and local response costs, natural resource damages and related claims, and final judgments and settlements. The Trust may not be sufficient to satisfy all of these claims including those under the settlement agreements. Should the Trust not be sufficient, payments under the settlement agreements would be made by BP directly.

The Economic and Property Damages Settlement provides for a transition from the Gulf Coast Claims Facility (GCCF) to a new court-supervised claims programme, to administer payments made to qualifying class members. A court-supervised transitional claims process was in operation while the infrastructure for the new settlement claims process was put in place. During this transitional period (now concluded), the processing of claims that have been submitted to the GCCF continued, and new claimants submitted their claims. BP agreed not to wait for final approval of the Economic and Property Damages Settlement to pay claims. The economic and property damages claims process is under court supervision through the settlement claims process established by the Economic and Property Damages Settlement.

Under the Economic and Property Damages Settlement, class members release and dismiss their claims against BP not expressly reserved by that agreement. The Economic and Property Damages Settlement also provides that, to the extent permitted by law, BP assigns to the PSC certain of its claims, rights and recoveries against Transocean and Halliburton for damages with protections such that Transocean and Halliburton cannot pass those damages through to BP. Under the Medical Benefits Class Action Settlement, class members release and dismiss their claims against BP covered by that settlement, except that class members do not release claims for Later-Manifested Physical Conditions.

On 2 May 2012, the court overseeing the federal multi-district litigation proceedings pending in New Orleans (MDL 2179) issued orders preliminarily and conditionally certifying the Economic and Property Damages Settlement Class and the Medical Benefits Settlement Class and preliminarily approving the proposed Economic and Property Damages Settlement and the proposed Medical Benefits Class Action Settlement. Under US federal law, there is an established procedure for determining the fairness, reasonableness and adequacy of class action settlements. Pursuant to this procedure, an extensive notice programme to the public was implemented to explain the settlement agreements and class members' rights, including the right to "opt out" of the classes, and the processes for making claims. The court set a deadline of 31 August 2012 (later extended to 7 September 2012) for class members objecting to the Economic and Property Damages Settlement and/or the Medical Benefits Class Action Settlement to file their objections with the court and a deadline of 1 October 2012 (later extended to 1 November 2012) for class members to opt out of the Economic and Property Damages Class and/or the Medical Benefits Settlement Class. The Deepwater Horizon Court Supervised Settlement Program (DHCSSP), the new claims facility operating under the frameworks established by the Economic and

Additional disclosures

**36. Provisions** continued

and the laws of certain non-US jurisdictions, as well as claims by private parties under US federal securities laws and other state and federal statutes. See Legal proceedings on pages 162-171 for further information.

The litigation and claims provision includes amounts that can be estimated reliably for the future cost of settling Individual and Business Claims, and State and Local Claims under OPA 90, including certain amounts as set forth below related to the settlements with the PSC, the cost of the agreement with the US government to resolve all federal criminal claims, and claims administration costs and legal fees. During 2012, a provision was recognized in the amount of $525 million in respect of the cost of the agreement with the US Securities and Exchange Commission (SEC) to resolve all of the US government's federal securities claims against the company (the SEC settlement). The remaining obligation for the SEC settlement at 31 December 2012 has been reclassified to other payables (as discussed below).

BP announced on 3 March 2012 that a proposed settlement had been reached with the Plaintiffs' Steering Committee (PSC), subject to final written agreement and court approvals, to resolve the substantial majority of legitimate economic loss and property damage claims and exposure-based medical claims (Individual and Business claims) stemming from the Deepwater Horizon accident and oil spill. The PSC acts on behalf of the individual and business plaintiffs in the multi-district litigation proceedings pending in New Orleans (MDL 2179). The proposed settlement was an adjusting event after the 2011 reporting period and BP's estimate at that time of the cost of the settlement of $7.8 billion was therefore reflected in the 2011 financial statements. On 18 April 2012, BP announced that it had reached definitive and fully documented settlement agreements with the PSC consistent with the terms of that settlement. In November 2012, the court held a fairness hearing with respect to the Economic and Property Damages Settlement Agreement and Medical Benefits Settlement Agreement and subsequently granted final approval to the Economic and Property Damages Settlement on 21 December 2012 and to the medical benefits settlement on 11 January 2013. See Legal proceedings on pages 162-171 for further information.

Under the terms of the PSC settlement agreement, several qualified settlement funds (QSFs) were established during the year. These QSFs, which are funded through the Trust, each relate to specific elements of the agreement and are available to make payments to claimants in accordance with those elements of the agreement.

The total amount allocated to the seafood industry under the PSC settlement is fixed at $2.3 billion and thus amounts contributed from the Trust to the seafood compensation fund extinguish BP's liability, so the provision and related reimbursement asset are derecognized, irrespective of whether amounts have been paid out of the fund to claimants. Utilization of the provision in 2012 included $2,230 million contributed to the seafood compensation fund. Additionally, a further $67 million was paid to seafood industry claimants through the transition claims process. At 31 December 2012, $1,847 million remained in the seafood compensation fund for which the related provision and reimbursement asset had been derecognized.

As at 31 December 2011, the provision for items covered by the settlement with the PSC for Individual and Business claims was $7.8 billion. During 2012, BP increased its estimate of the cost of claims administration by $280 million and also increased the provision by a further $400 million as described below.

Business economic loss claims received by the Deepwater Horizon Court Supervised Settlement Program (DHCSSP) to date are being paid at a significantly higher average amount than previously assumed by BP in formulating the original estimate of the cost. Further, BP's initial estimate of aggregate liability under the settlement agreements was premised on BP's interpretation of certain protocols established in the Economic and Property Damages Settlement Agreement. As part of its monitoring of payments made by the DHCSSP, BP identified multiple claim determinations that appeared to result from an interpretation of the settlement agreement by the claims administrator that BP believes was incorrect. This interpretation produced a higher number and value of awards than the interpretation BP assumed in making the initial estimate. Pursuant to the mechanisms in the settlement agreement, the claims administrator sought clarification from the court on this matter and on 30 January 2013, the court initially upheld the claims administrator's interpretation of the agreement.

In its unaudited fourth quarter and full year 2012 results announcement dated 5 February 2013 (the 'preliminary announcement'), BP stated that if the initial trend of higher average payments than assumed by BP in its original estimate of the cost continued, then it was likely that BP's provision for these claims would be increased significantly. Management's initial assessment of the ruling regarding the interpretation of the settlement agreement led to an increase in the estimated cost of the settlement with the PSC of $400 million, bringing the total estimated cost to $8.5 billion. This estimate was based upon management's initial assessment of the ruling's impact on claims already submitted to and processed by the DHCSSP. At that time, BP was seeking reversal of the court's decision in relation to this matter, and management concluded that it was not possible to estimate reliably the impact of the interpretation on any future claims not yet received or processed by the DHCSSP.

On 6 February 2013, the court reconsidered and vacated its ruling of 30 January 2013 and stayed the processing of certain types of business economic loss claims. The court lifted the stay on 28 February 2013. On 5 March 2013, the court affirmed the claims administrator's interpretation of the agreement and rejected BP's position as it relates to business economic loss claims. BP strongly disagrees with the ruling of 5 March 2013 and the current implementation of the agreement by the claims administrator. BP intends to pursue all available legal options including rights of appeal, to challenge this ruling. Other business economic loss claims continue to be paid at a higher average amount than previously assumed by BP in determining its initial estimate of the total cost. Management has continued to analyse the claims in the period since 5 February 2013 to gain a better understanding of whether or not the number and average value of claims received and processed to date are predictive of future claims (and so would allow management to estimate the total cost reliably). Management has concluded, based upon this analysis, that it is not possible to determine whether the claims experience to date is, or is not, an appropriate basis for estimating the total cost. Therefore, given the inherent uncertainty that exists as BP pursues all available legal options to challenge the recent ruling, and the higher number of claims received and higher average claims payments than previously assumed by BP, which may or may not continue, management has concluded that no reliable estimate can be made of any business economic loss claims not yet received or processed by the DHCSSP.

Therefore, the provision for business economic loss claims at 31 December 2012 included in these financial statements now includes only the estimated cost of claims already received and processed by the DHCSSP. As a consequence, an amount of $0.8 billion previously provided for future claims not yet received or processed by the DHCSSP, has been derecognized, with a corresponding reduction in the reimbursement asset and therefore no net impact on the income statement, as no reliable estimate can be made for this liability. It is therefore disclosed as a contingent liability in Note 43. A provision will be re-established when a reliable estimate can be made of the liability as explained more fully below.

BP's current estimate of the total cost of those elements of the PSC settlement that can be estimated reliably, which excludes any future business economic loss claims not yet received or processed by the DHCSSP, is $7.7 billion.

If BP is successful in its challenge to the court's ruling, the total estimated cost of the settlement agreement will, nevertheless, be significantly higher than the current estimate of $7.7 billion because business economic loss claims not yet received or processed are not reflected in the current estimate and the average payments per claim determined so far are higher than anticipated. If BP is not successful in its challenge to the court's ruling, a further significant increase to the total estimated cost of the settlement will be required but BP will continue to challenge the current interpretation and implementation of the settlement agreement by the claims administrator using all legal avenues available, including rights of appeal. However, there can be no certainty as to how the dispute will ultimately be resolved or determined. To the extent that there are insufficient funds available in the Trust fund, payments under the PSC settlement will be made by BP directly and charged to the income statement.