# Exhibit 3

**TO UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF MOTION OF THE UNITED STATES TO LIMIT EVIDENCE ABOUT THE "SERIOUSNESS" FACTOR**

E-SERVICE

55122799
Mar 10 2014
08:43PM

File & ServeXpress

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "*Deepwater Horizon*" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 |
| | : | SECTION: J |
| This Document Relates To: 10-4536 | : | Honorable CARL J. BARBIER |
| …………………………………………... | : | Magistrate Judge SHUSHAN |

## BP EXPLORATION & PRODUCTION INC.'S FIRST SET OF DISCOVERY REQUESTS TO THE UNITED STATES OF AMERICA RELATING TO THE CLEAN WATER ACT PENALTY PHASE

Pursuant to Federal Rules of Civil Procedure 26, 33, and 34, BP Exploration & Production Inc. ("BPXP") propounds the following requests for production of documents, interrogatories, and requests for admission to the United States of America to be responded to within 30 days of service. BPXP requests that all documents and electronically stored information responsive to the following discovery requests be produced to the offices of Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654. By serving these discovery requests, BPXP does not admit or concede the relevance or admissibility of information or documents responsive to the requests.

## I. REQUESTS FOR PRODUCTION

213. All documents referring or relating to any environmental, human health, economic, or other impact (including indirect, modeled, potential, or future impact) of the *Deepwater Horizon* Spill and/or Response Activities, including but not limited to all analyses, evaluations, assessments, studies, or reports.

214. All documents referring or relating to the amount, distribution, concentration, location, duration, thickness, volume, fate, transformation, transport, weathering, or biodegradation of Oil-Related Materials and/or Dispersants in the Environment on or after April 20, 2010, relating

to the *Deepwater Horizon* Spill, including but not limited to all documents from the United States Department of Homeland Security sources, all aerial imagery from airplanes and satellites, all documents referring or relating to the weather and sea conditions when and where such Oil-Related Materials and/or Dispersants were present, and all documents referring or relating to efforts to sample or measure Oil-Related Materials or Dispersants.

215.   All documents referring or relating to the toxicity, lethal, sub-lethal, or other biological effect, or lack thereof, of Oil-Related Materials and/or Dispersants, including but not limited to all documents referring or relating to toxicology testing methods and protocols, exposure media (including without limitation water-accommodated fractions), test results, criteria for evaluating the toxicity, lethal, sub-lethal, or other biological effect, and all documents referring or relating to the relationship between toxicology test methods, protocols, and results, and between observed, measured, or modeled exposure conditions in the Gulf of Mexico.

216.   All documents referring or relating to the recovery, restoration, or rehabilitation of the Environment, including but not limited to Organisms; human health; and/or the economy from any impacts of the *Deepwater Horizon* Spill and/or Response Activities.

217.   All documents referring or relating to the likelihood or possibility, or lack thereof, of the future presence of Oil-Related Materials in the Environment or exposure of Oil-Related Materials to Organisms, including but not limited to exposure from future oiling of shoreline, beaches, or barrier islands.

218.   All documents referring or relating to searcher bias, observer bias, observation bias, or errors in collecting or observing sea turtles, reptiles, birds, marine mammals, fish, invertebrates, or other wildlife in any analysis, evaluation, estimate, assessment, measure, study, or report of the impact of the *Deepwater Horizon* Spill and/or Response Activities.

219.   All documents referring or relating to any Environmental Model, including but not

2

limited to a working copy of all computer programs used in any Environmental Model, with detailed instructions on the use of the programs; a copy of the computer code with annotations and documentation detailing the code functionality and use; all parameters, databases, inputs, and other information used, considered, or reviewed in connection with any Environmental Model; sources of such parameters, databases, inputs, and information; and all results, manifestations, and outputs of any Environmental Model.

220.    All documents referring or relating to efforts by BPXP, the Unified Command, or other entities to respond to, or otherwise mitigate, minimize, or prevent environmental, economic, or human health effects or impacts of the *Deepwater Horizon* Spill, including but not limited to documents commending, praising, or otherwise commenting on the response and mitigation efforts.

221.    All documents referring or relating to the "BP Deepwater Horizon Oil Spill: Incident Specific Preparedness Review (ISPR);" the "On Scene Coordinator Report *Deepwater Horizon* Oil Spill;" and the reports and other work of the Operational Science Advisory Team, such as the "Summary Report for Sub-Sea and Sub-Surface Oil and Dispersant Detection: Sampling and Monitoring" (OSAT-1 Report), the "Summary Report for Fate and Effects of Remnant Oil in the Beach Environment" (OSAT-2 Report), the "Investigation of Recurring Residual Oil in Discrete Shoreline Areas in the Eastern Area of Responsibility" (the OSAT-3 Report); including but not limited to the preparation and publication of the documents and appendices, such as drafts, notes, communications, or outlines.

222.    All documents referring or relating to any analysis, assessment, evaluation, or study of the amount of Oil-Related Materials that was contained, collected, dispersed, burned, removed, or cleaned up in connection with Response Activities and/or any natural processes, including but not limited to documents relating to the preparation and publication of the "Oil Budget Calculator,

Deepwater Horizon, Technical Documentation," and its appendices, dated November 2010, such as drafts, interview notes, communications, or outlines.

223.    All documents referring or relating to the use or potential use of Corexit 9500, Corexit 9527, or other dispersant in connection with the Response Activities, including but not limited to all communications between or among the United States Coast Guard, the Unified Command, the Environmental Protection Agency, National Oceanic and Atmospheric Administration, and any other federal, state, or other governmental department, agency, entity, or body, or any representative or employee thereof, regarding the use (or limitations on use), safety (including but not limited to impact on the environment, human health, and Gulf Coast communities), and/or effectiveness of Dispersants in connection with Response Activities.

224.    All documents referring or relating to any analysis, evaluation, determinations, or study of shoreline oiling, impact (including but not limited to impact on the environment, human health, and Gulf Coast communities), monitoring, and cleanup in connection with the *Deepwater Horizon* Spill and/or Response Activities, including but not limited to documents relating to whether cleanup completion standards had been satisfied.

225.    All documents referring or relating to the economic impact of a Clean Water Act penalty on BPXP or on any other BP entity, any "economic benefit to the violator," or any "history of prior violations" in connection with this action.

226.    All documents referring or relating to "the degree of culpability involved" and its effect on the amount of any Clean Water Act penalty to be paid by BPXP, other than any document admitted into evidence by the Court during the Phase 1 or Phase 2 trials or previously produced in discovery for those phases.

227.    All documents identified in the responses to the Interrogatories set forth below.

## II.    INTERROGATORIES

31.    Identify all documents and information within the United States' custody, possession, or control from which there are images, videos, or graphics that purport to show MC252 oil on the water's surface in either federal or state waters.

32.    Identify any models and/or analyses, including drafts, and the results of any such models and/or analysis, within the United States' custody, possession, or control that assess the actual or potential distribution, fate, transport, transformation, and direct and indirect effects of Oil-Related Materials from the *Deepwater Horizon* Spill.

33.    Identify the reasons for the decision to close and/or reopen any commercial or recreational fisheries in the Gulf of Mexico during or following the *Deepwater Horizon* Spill and all persons with knowledge of, and all documents related to, those decisions.

34.    Identify all persons with knowledge of, and all documents related to, the wildlife (including bird, sea turtles, and marine mammals) rehabilitation centers established in the Gulf of Mexico during or following the *Deepwater Horizon* Spill, including the names and titles of any and all individuals who worked at such wildlife rehabilitation centers.

35.    Identify any coldwater communities the United States contends were harmed by the *Deepwater Horizon* Spill and describe the extent and nature of alleged harm.

36.    Identify any and all documents and information related to the bioavailability (or lack thereof) to fish, shellfish, or other aquatic organisms of any MC252 oil, including without limitation source, fresh, weathered, or biodegraded MC252 oil.

37.    Identify all persons with knowledge of, and all documents related to, the OSAT-1 Report, the OSAT-2 Report, and the OSAT-3 Report.

38.    Identify all persons with knowledge of, and documents related to, the current marine mammal Unusual Mortality Event ("UME") in the Gulf of Mexico.

39.     Identify all preliminary and/or final results of testing of toxicity of Oil-Related Materials and/or Dispersants, resulting from the *Deepwater Horizon* Spill and/or Response Activities, to Organisms and all persons with knowledge of, and documents related to such testing.

40.     Identify all background rates of land loss and erosion on shorelines in the Gulf Coast states and all persons with knowledge of, and all documents related to, such rates of land loss and erosion.

41.     Identify the size, distribution, and health of the population of any and all avian species that reside for any part of the year in the Gulf Coast states and all persons with knowledge of, and all documents related to that size, distribution, and population.

42.     Identify any natural resources that the United States contends have not fully recovered from injuries resulting from the *Deepwater Horizon* Spill and the bases for any such contention.  As part of your response, identify the persons most knowledgeable about, and all statements, documents, and other materials that describe or reflect, the bases for your contention.

43.     Identify any natural resources the United States contends have fully recovered from injuries resulting from the *Deepwater Horizon* Spill and the bases for any such contention.  As part of your response, identify the persons most knowledgeable about, and all statements, documents, and other materials that describe or reflect, the bases for your contention.

44.     Identify and describe any effects of increased awareness and human presence in the Gulf of Mexico on the observation of injured wildlife (including sea turtles, marine mammals, and birds) during or after the *Deepwater Horizon* Spill.

45.     Identify any human health impact, including but not limited to any potential or future health impact, that resulted from the *Deepwater Horizon* Spill and/or Response Activities and all persons with knowledge of, and all documents related to, such human health impact(s).

46.     Identify and describe in detail any and all sampling, monitoring, testing, and

analysis that demonstrate exposure to Oil-Related Materials and/or Dispersants, resulting from the *Deepwater Horizon* Spill and/or Response Activities, at levels sufficient to cause any impact on human health, and identify all documents related to that sampling, monitoring, testing, and analysis.

47.     Identify any analyses, studies, assessments, or evaluations regarding the nature, extent, or degree of effectiveness of the efforts to respond to, or otherwise mitigate, minimize, or prevent environmental, human health, economic, or other effects of, the *Deepwater Horizon* Spill, including any statements commending response efforts or determinations that any aspect of the response was effective or successful.   As part of your response, identify the persons most knowledgeable about, and all statements, documents, and other materials that describe or reflect, the analyses, studies, assessments, evaluations, or determinations.

48.     Identify any way in which the United States contends that BPXP or any other entity did not effectively respond to, or otherwise mitigate, minimize, or prevent the environmental, human health, economic or other effects of, the *Deepwater Horizon* Spill, and the bases for any such contention.   As part of your response, identify the persons most knowledgeable about, and all statements, documents, and other materials that describe or reflect, the bases for your contention.

49.     Identify any decisions or actions by BPXP, the Unified Command, or other agency or entity that limited or constrained efforts to respond to, or otherwise mitigate, minimize, or prevent, the environmental, human health, economic or other effects of, the *Deepwater Horizon* Spill.   As part of your response, identify the persons most knowledgeable about, and all statements, documents, and other materials that describe or reflect on, such decisions and actions.

50.     Identify the total amount of Oil-Related Materials that you contend were contained, collected, dispersed, burned, cleaned up as a result of the Response Activities, as well as the amount of Oil-Related Materials that were removed through natural processes, including the

portions of the total volume attributable to each process (for example, through the use of skimming, boom, dispersants, *in situ* burning, shoreline cleanup, and natural processes), and a detailed description of how you performed these analyses.  As part of your response, please identify the persons most knowledgeable about, and all statements, documents, and other materials that describe or reflect, the analyses.

51.    Describe in detail all bases for any contention by the United States that use of Corexit 9500 and/or Corexit 9527 during the Response was ineffective or had any counterproductive or harmful effects on the environment or human health.  As part of your response, please identify the persons most knowledgeable about, and all statements, documents, and other materials that describe or reflect, the alleged ineffectiveness or counterproductive or harmful effects of Corexit 9500 and/or Corexit 9527.

52.    Identify any Response Activities that were not conducted at the direction and under the oversight of the Unified Command, and for each such activity, describe the activity in detail, the persons or entities involved, the outcome or result of the activity, the cost associated with the activity (including any amounts paid by BPXP), and the reasons why such activity was not conducted at the direction and under the oversight of the Unified Command.

53.    Identify the bases for the assertion by the United States that "the degree of culpability involved" should increase the amount of any Clean Water Act penalty to be paid by BPXP, and documents you intend to rely on to support such a contention other than documents admitted into evidence by the Court during the Phase 1 or Phase 2 trials.

54.    Identify the bases for any assertion by the United States that "the economic impact of the penalty on the violator," "economic benefit to the violator," "history of prior violations," or "other matters as justice may require" should increase the amount of any Clean Water Act penalty to be paid by BPXP, and documents you intend to rely on to support such a contention.

8

55.     Identify the bases for your denial of any Request for Admission propounded by BPXP in connection with this action.

## III.   <u>REQUESTS FOR ADMISSION</u>

514.     Admit that coastal land subsidence, habitat conversion and fragmentation, decreasing water quality, invasive species, contamination from agricultural run-off, population growth, and/or other anthropogenic effects have diminished the natural resources of the northern Gulf of Mexico coastal ecosystem.

515.     Admit that oil and polycyclic aromatic hydrocarbons ("PAHs") exist naturally in the Gulf of Mexico and are released through natural seeps in the seafloor.

516.     Admit that microbes exist in the Gulf of Mexico that consume oil discharged from natural seeps and that these microbes consumed MC252 oil discharged during the *Deepwater Horizon* Spill.

517.     Admit that background rates of wetland loss in Louisiana are greater than the rate of wetland loss that is or may be attributable to the *Deepwater Horizon* Spill.

518.     Admit that 2011 was the most productive year for Brown Pelican nesting in the northern Gulf of Mexico since Hurricane Katrina in 2005.

519.     Admit that shorelines characterized as heavily oiled decreased from a maximum of 360 km (224 miles) to 22.4 km (14 miles) by one year after the incident, and to 6.4 km (4 miles) by two years after the incident.

520.     Admit that the decision to build sand barrier berms to attempt to mitigate the effects of the *Deepwater Horizon* Incident was not an appropriate removal action under the Oil Pollution Act, 33 U.S.C. §§ 2701 *et seq*.

521.     Admit that the decision to open the Mississippi River diversions in 2010 to attempt to mitigate the effects of the *Deepwater Horizon* Incident was not an appropriate removal action

under the Oil Pollution Act, 33 U.S.C. §§ 2701 *et seq.*

522.   Admit that based on monitoring as of September 13, 2013, the Environmental Protection Agency had not seen onshore levels of pollutants resulting from the *Deepwater Horizon* Spill and/or Response Activities that are of concern for long-term health effects.

523.   Admit that the Unified Command directed all efforts to respond to, or otherwise mitigate, minimize, or prevent the effects of, the *Deepwater Horizon* Spill, including the use of skimming, boom, controlled *in situ* burns, dispersants, and the Shoreline Cleanup Assessment Technique during the Response.

524.   Admit that the use of controlled *in situ* burning, coupled with dispersant applications, during the Response significantly reduced the amount of oil that might otherwise have impacted near-shore habitats and environmentally sensitive areas.

525.   Admit that the use of dispersants during the Response prevented millions of gallons of oil from impacting sensitive shorelines of Gulf States.

526.   Admit that the Response effectively mitigated the environmental and other effects of the *Deepwater Horizon* Spill.

527.   Admit that all applications of dispersants during the Response occurred under the guidance of Environmental Protection Agency and with the direct approval of the Federal On-Scene Coordinator.

528.   Admit that BPXP was very proactive and placed no limits on what was needed to make the response successful.

**IV.**   **DEFINITIONS**

1.   "Communication" or "communications," whether or not capitalized, shall mean any transmission of information by one or more persons to one or more persons by any means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes,

telecopies, e-mail, computer linkups, written memoranda, and face-to-face conversations; "communication" includes all documents and electronically stored information ("ESI") containing, summarizing, or memorializing any communication.

2.      "*Deepwater Horizon* Incident" or "Incident," whether or not capitalized, shall mean the events leading to (i) the loss of life and injuries on the *Deepwater Horizon* rig on or about April 20, 2010, and (ii) the eventual sinking of the rig on April 22, 2010, including the blowout, explosions, and fire.

3.      "*Deepwater Horizon* Oil Spill," the "Oil Spill," or the "Spill," whether or not capitalized, means the discharge of hydrocarbons that occurred in connection with the *Deepwater Horizon* Incident.

4.      "Dispersants," whether or not capitalized, shall mean (i) dispersants, (ii) dispersant constituents, (iii) derivatives of any of the foregoing from biological, chemical, photochemical or other processes, or (iv) any aggregation, mixture or combination of any of the foregoing with any other material including, without limitation, organic matter, inorganic matter, sediments, biological exudates, sand and water.

5.      "Document" or "documents," whether or not capitalized, shall have the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a), including ESI, and includes the original and any identical or non-identical copy, regardless of origin or location, of any writing or record of any type or description, including but not limited to all writings; records; contracts; agreements; communications (intra- or inter-company); correspondence; memoranda; letters; facsimiles; electronic mail (e-mail); minutes, recordings, transcripts, and summaries of meetings, or recordings of meetings, speeches, presentations, conversations, or telephone calls (whether recorded in writing, mechanically, or electronically); handwritten and typewritten notes of any kind; statements; reports; voice recordings; desk calendars; diaries; logs; drafts; studies; analyses;

11

schedules; forecasts; surveys; invoices; receipts; data of any kind; computer data; working copies of computer programs; computer codes; computer printouts; financial statements; balance sheets; profit and loss statements; statements of earnings; statements of net worth; credit reports; statements of operations; audit reports; financial summaries; statements of lists of assets; work papers; pictures; photographs; videos; computer animations; drawings; computer cards; tapes; discs; printouts and records of all types; instruction manuals; policy manuals and statements; books; pamphlets; cancelled checks; check stubs; and any writing, notes, or information of any kind from any other device or medium by which information or intelligence of any type is transmitted, recorded, or preserved, or from which intelligence or information can be perceived.

6.      "Environment" or "Environmental," except when used as or in a proper noun, shall refer to (i) air, surface and subsurface water, beaches, land and sediments, and the organic and inorganic constituents of the foregoing, (ii) Organisms (as defined below), (iii) natural resources, (iv) ecosystems, (v) niches and other habitats and (vi) combinations or assemblages of any of the foregoing, in each case in or near the Gulf of Mexico or in or near any other location that may have been affected by Oil-Related Materials (as defined below) regardless whether in a natural state or modified by human activity.

7.      "Environmental Model" shall mean and refer to any environmental modeling (whether summary, analytical, or otherwise) and analyses of the impact of the *Deepwater Horizon* spill and/or Response Activities, including without limitation SIMAP, OILMAP, and any other spill impact modeling; and Atlantis, ECOSIM, ECOPATH, and any other ecosystem, food web, or trophic transfer modeling.

8.      "Identify," whether or not capitalized, when used with respect to: (a) an individual, shall mean to provide the individual's full name, job title, and employer during the period referred to, and current or last-known address and telephone number and business address and telephone

12

number (designating which); (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); and (c) a document, shall mean to provide the date, title, subject matter, author(s), recipient(s), and Bates number(s).

9.      "Including" or "includes," whether or not capitalized, shall mean "including but not limited to" or "including without limitation."

10.      "MC252 Well" shall mean the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo Prospect of Mississippi Canyon 252 in the outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

11.      "Oil-Related Materials" shall mean any of the following from the *Deepwater Horizon* Oil Spill or response thereto: (i) oil, (ii) polycyclic aromatic hydrocarbons ("PAHs"), (iii) hydrocarbons, (iv) other oil or gas constituents, and (v) well drilling and closure materials, including without limitation, drilling muds and fluids and materials injected into the well-head. Oil-Related Materials also shall include (i) derivatives of any of the foregoing from biological, chemical, photochemical, burning or other processes, (ii) any aggregation, mixture or combination of any of the foregoing with any other material including, without limitation, organic matter, inorganic matter, sediments, biological exudates, sand and water; or (iii) any combination of the foregoing.

12.      "Organisms" shall refer to any and all members of the six kingdoms of life including animals, plants, fungi, protists, archaea, and bacteria.

13.      "Person," whether or not capitalized, shall mean any individual as well as any entity, including any proprietorship, partnership, corporation, firm, committee, government agency or subdivision or consultant, or any other organization.

14.      "Relating to" or "related to," whether or not capitalized, when referring to any given subject matter, shall mean any document that constitutes, comprises, involves, contains,

embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

15.     "Response Activities," "*Deepwater Horizon* Response," or the "Response," whether or not capitalized, shall mean any and all activities performed to respond to, or otherwise mitigate, minimize, or prevent, the environmental, human health, economic or other effects of, the *Deepwater Horizon* Spill.

16.     "Unified Command" shall mean the structure, organization, and team established to oversee and manage the response to the *Deepwater Horizon* Oil Spill following the Incident.

17.     "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities, any employees, agents or assigns of these departments, agencies, and instrumentalities, and any person who possesses information or documents within the custody and control of these departments, agencies, and instrumentalities.

18.     "You," "your," and "yours," whether or not capitalized, shall mean the United States.

## V.     <u>INSTRUCTIONS</u>

1.     The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

2.     Unless otherwise specified, respond to all requests for production by searching for documents created on or after April 20, 2005.

3.     Produce all documents in the order in which they appear in your files.  Documents that, in their original condition, are stapled, clipped, or otherwise fastened together shall be produced in this same condition.

4.     Produce all documents within your possession, custody, or control including all documents in the possession, custody, or control of any United States government employee,

agent, representative, consultant, attorney, accountant, advisor, or other person(s) directly or indirectly connected with you or subject to your control, or any government department, agency, or any other government subdivision.

5.      If any responsive document has been lost, destroyed, removed from, or is no longer in your possession, custody, or control for any reason, please identify the document, its last known location, and the circumstances surrounding its loss, destruction, or removal.

6.      If you contend that any responsive document is protected from disclosure pursuant to any privilege or work-product doctrine, please specifically set forth the privilege being asserted and any factual or legal basis for its assertion.  Also set forth the date and title of the document, its subject matter generally, its author(s) and recipient(s), and its Bates number(s).

7.      Each paragraph is to be construed independently and not by or with reference to any other paragraph for purposes of limiting the scope of any particular request.

8.      If no documents responsive to a particular request exist, or if such documents exist but are not in your possession, custody, or control, then your response to that request shall so state.

9.      These requests are conditioned upon the Court granting BPXP's pending motions *in limine*.  BPXP reserves the right to supplement these requests if these motions are not granted.  To the extent the Court otherwise limits the scope of discovery, BPXP also reserves the right to revise and/or supplement these discovery requests to reflect these scope limitations.

10.     Pursuant to the Federal Rules of Civil Procedure, these requests are continuing and you must revise or supplement your responses and production whenever new or additional responsive information becomes known.

Dated:  March 10, 2014                          Respectfully submitted,

   /s/ J. Andrew Langan

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

and

Don K. Haycraft (Bar # 14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

*Attorneys for BP Exploration & Production*
*Inc.*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 on this 10th day of March, 2014.


        <u>/s/ Don K. Haycraft</u>
        Don K. Haycraft