UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010 | * * * * | MDL No. 2179  SECTION "J"  JUDGE BARBIER |
| This Document Relates to: Nos. 10-2179; 10-4536; 10-2771 | * * * * * | MAGISTRATE NO. 1  MAGISTRATE SHUSHAN |
| * * * * * * * * * * * * | | |

ANADARKO'S REPLY IN FURTHER
SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
ALL EVIDENCE REGARDING ANADARKO'S CULPABILITY

BINGHAM McCUTCHEN LLP

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
Thomas R. Lotterman
tom.lotterman@bingham.com
David B. Salmons
david.salmons@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, N.W.
Washington, D.C. 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street
Suite 1300
New Orleans, LA 70112
Telephone (504) 592-0691
Facsimile (504) 592-0696

## I. INTRODUCTION

The Court has repeatedly ruled that, as a non-operating investor, Anadarko had no operational control over the *Deepwater Horizon*, and as a matter of law Anadarko was not negligent, breached no legal duty, did not cause or contribute to the discharge, and bears no fault. The Government disputes none of this. Indeed, the Government finally concedes that this Court's prior rulings apply to the CWA case, and that Anadarko's conduct—investing in oil production and having contractual access to limited drilling data—is insufficient to show that Anadarko was negligent or at fault for the discharge. U.S. Opp. at 9.

"Culpability" means "fault," "negligence," "blameworthiness" or a "breach of legal duty."[1] There is no other way to define the word. It follows from the Court's prior rulings that Anadarko's "degree of culpability" for purposes of the CWA's penalty factor is *zero* as a matter of law, and no more evidence or argument is necessary or should be permitted on the point. Nonetheless, the Government contends that even though Anadarko admittedly was not negligent, it still has some "degree of culpability" because the Court has held Anadarko strictly liable as a partial owner of the Macondo Well, and because Anadarko invested in OCS exploration with BP. U.S. Opp. at 7. The Government's arguments make no sense, are unsupported by authority, and do violence to the CWA's text and structure.

The Government's Opposition also proves it would have nothing new or relevant to introduce about Anadarko in the Penalty Phase. The Government recites the same tired litany of charges about Anadarko's investment in the Macondo Prospect and limited access to certain forms of operational data, U.S. Opp. at 3-6, all of which the Court already has dismissed as irrelevant to Phases One and Two. The same facts are still irrelevant, for the same reasons: they

---

[1] BLACK'S LAW DICTIONARY 379 (6th ed. 1990); WEBSTER'S THIRD NEW INTERNATIONAL DICT. 552 (1993).

1

do not show that Anadarko had operational control, or that it caused or contributed to the discharge. They prove the *opposite*. Anadarko's motion *in limine* should be granted.

## II. ARGUMENT

### A. The Government Conflates "Strict Liability" with "Culpability."

The Government principally argues that, because the Court has held Anadarko strictly liable as a partial owner of the Macondo Well, Anadarko must bear some "degree of culpability" for purposes of penalty assessment. U.S. Opp. at 3. That argument improperly confuses and conflates the CWA *liability* analysis with the distinct CWA *penalty* analysis.

Conduct is irrelevant to the CWA's strict liability provisions, which apply to "*any person*" who owns a vessel or facility "from which oil … is discharged" in harmful amounts. 33 U.S.C. § 1321(a)(2),(7) (emphasis added). Accordingly, no one disputes the Government's *non sequitur* that it "simply does not need to prove negligence" in this case. U.S. Opp. at 2. But strict liability, by itself, connotes no culpability or moral failing warranting punishment.

If liability and culpability were the same, there would be no point to the CWA's careful separation of the liability and culpability considerations. Congress included the "degree of culpability" and other penalty assessment factors because of the unfairness that could result from imposing strict penalty liability on faultless owners, and to permit courts to fairly calibrate CWA penalties according to culpability.[2] The Government would undermine that intent by attributing to the strict liability finding a culpability element included nowhere in the statute.

All of the Government's cases disprove its flawed construction. If "strict liability" for a discharge alone amounted to some "degree of culpability," then *every defendant* held strictly liable under the CWA would automatically be "culpable." Yet the Government's cited cases

---

[2] *See Leslie Salt Co. v. U.S.*, 55 F.3d 1388, 1397 (9th Cir. 1995) (notwithstanding CWA's strict liability, "[d]istrict courts retain the broad discretion to set a penalty commensurate with the defendant's culpability" and "in its consideration … the district court could assess a civil penalty of only a nominal amount.").

2

holding facility or vessel owners strictly liable also hold that they had no "degree of culpability" because they were not "negligent" or at "fault" for the discharge. *See U.S. v. Coastal States Crude Gathering*, 643 F.2d 1125, 1128 (5th Cir. 1981) (affirming $1,000 CWA penalty against strictly liable owner who bore "no fault" for the discharge); *U.S. Tex-Tow, Inc.*, 589 F.2d 1310, 1313 (7th Cir. 1978) (affirming $350 CWA penalty against owner who had no "degree of culpability"); *U.S. v. Marathon Pipe Line*, 589 F.2d 1305, 1308 n.10 (7th Cir. 1978) (affirming $2000 CWA penalty against strictly liable owner with no "degree of culpability").[3] If the Government's strained interpretation were correct, this would be impossible.

> **B.  The Government Offers No Alternative to the Ordinary Definition of "Culpability" as "Fault," "Negligence," or "Breach of Legal Duty."**

Taking a slightly different tack, the Government argues that the phrase "degree of culpability" may be stretched to permit consideration even of Anadarko's *non-negligent* conduct. U.S. Opp. at 9. Setting aside for the moment that a penalty statute must be strictly construed (as the Government concedes, U.S. Opp. at 14, n. 35), the argument makes no sense. If Anadarko was not negligent and breached no legal duty, then by definition Anadarko acted reasonably and in a manner consistent with the standard of care for a non-operating OCSLA lessee. *See Bourg v. Texaco Oil Co., Inc.*, 578 F.2d 1117, 1121 (5th Cir. 1978) (OCSLA lessee who did not exercise operational control owed no duty and therefore its conduct was not unreasonable). This only underscores the Government's overreach in this case.[4]

The Court should reject the Government's attempts to muddy the meaning of "degree of culpability." The phrase is used regularly in criminal and civil penalty contexts, and courts have

---

[3] In contrast to the extravagant penalties the Government seeks here, $3500 is the largest CWA penalty ever assessed against a non-negligent owner to be affirmed in court. *Montauk Oil Transp. Corp. v. Tug El Zorro Grande*, 54 F.3d 111, 113 (2d Cir. 1995).

[4] *See also Phoenix Constr. Servs., Inc*., 11 E.A.B. 379, 2004 WL 1059751, at *28 n. 87 (EAB 2004) ("'the lack of any culpability may . . . indicate that no penalty action is appropriate'") (quotation omitted).

no trouble understanding that "degree of culpability" refers, "in descending order of culpability," to "purpose, knowledge, recklessness, and negligence." *U.S. v. Bailey*, 444 U.S. 394, 404 n. 4 (1980) (distinguishing "strict liability" from crimes or violations which require culpability). This is the same definition courts and agencies use in the CWA context, and which applies here.[5]

The Government cites *nothing* to the contrary. Its entire argument is based on one sentence from *U.S. v. CITGO Petrol. Corp.*, 723 F. 3d 547 (5th Cir. 2013), in which the Fifth Circuit observed that negligence is a "higher degree of culpability than strict liability." U.S. Opp. at 1, 9. There is nothing significant in this truism. Some degree of culpability (i.e., negligence) is obviously a "higher degree of culpability" than no degree of culpability at all (i.e., strict liability). In fact, the Fifth Circuit's opinion in *CITGO* only further reinforces the correct construction, because the Fifth Circuit affirmed the lower court's findings as to the "degree of culpability" factor that CITGO was "fully at fault for the spill" and was "negligent." *Id.* at 553.

The Government also argues that the meanings of "culpability" typically used in the cases—"breach of legal duty" "negligence," and "fault"—are too restrictive, because "culpability" can also mean "deserving of blame or condemnation," "evil," or "improper." U.S. Opp. at 10-11. But these non-legal terms do not connote conduct *less than negligence*.

  C.  **The Government's Evidence Is Irrelevant Under Any Factor.**

The Government's "culpability" evidence is irrelevant in all events, and should be excluded entirely—including under the "justice" factor. The Government argues, yet again, that Anadarko's approval of BP's funding requests ("AFEs") implies responsibility. U.S. Opp. at 3. But the Court has already rejected this argument. B1 Order, Rec. Doc. 3830, at 28. Repetition and the passage of time have not improved it. The contention that Anadarko "received extensive

---

[5]  *See, e.g.*, *U.S. v. General Motors Corp.*, 403 F. Supp. 1151, 1164–65 (D. Conn. 1975) ("[T]he defendant was not negligent or at fault in any way for this discharge of oil. In other words, its culpability was zero . . . ."); *Smith Farm Enters., LLC*, CWA Appeal No. 08-02, 2011 WL 946993, at *52 (EAB Mar. 16, 2011).

4

information of the status of drilling operations," U.S. Opp. at 5, is similarly stale. B1 Order, Rec. Doc. 3830, at 28 (holding Anadarko's "access to information" irrelevant). The Government now asserts that Anadarko did not review BP's safety history or plans before investing. U.S. Opp. at 4. But it is well settled that Anadarko had no authority, much less a legal duty, to approve or reject BP's plans.[6] Moreover, if this alone were enough to make Anadarko "culpable," then the Government would be far more culpable than Anadarko since it actually *approved* BP's plans and issued BP's operating permits. The Government fails to explain why Anadarko is not entitled to rely on the regulatory approval and enforcement process to ensure safe drilling operations, just like all other Gulf citizens. The Government also observes that Anadarko once suggested that BP drill deeper "if it was safe and prudent" to do so, but BP rejected the idea. U.S. Opp. at 6. This only confirms the Court's long-held conclusion that "BP was solely responsible for the drilling." B1 Order, Rec. Doc. 3830, at 28.

Finally, the Government's aspersions that Anadarko's *investment* in mineral exploration on the OCS is somehow "evil," and that contracting with BP by itself merits a substantial punishment, are unworthy of serious consideration. U.S. Opp. at 7. The Government has no legitimate interest in punishing Anadarko for its admittedly non-negligent conduct. And it would contravene good public policy to deter non-operators like Anadarko from investing in the development of OCS resources, which benefits the Gulf economy, contributes substantial royalties to the Government's treasury, and inures to the public's general benefit. The Government's threadbare arguments to the contrary should be rejected.

### III. CONCLUSION

For the all the foregoing reasons, the Court should grant Anadarko's Motion *in Limine* to Exclude All Evidence of Anadarko's Culpability.

---

[6] *See Fruge ex rel. Fruge v. Parker Drilling Co.,* 337 F.3d 558 (5th Cir. 2003).

5

|  |  |
|---|---|
|  | Respectfully submitted, |
| DATED: March 13, 2014 | **BINGHAM McCUTCHEN LLP** |
|  | /s/ *James J. Dragna* |
|  | James J. Dragna |
|  | jim.dragna@bingham.com |
|  | Bingham McCutchen LLP |
|  | 355 South Grand Avenue |
|  | Suite 4400 |
|  | Los Angeles, California 90071-3106 |
|  | Telephone (213) 680-6436 |
|  | Facsimile (213) 680-8636 |
|  |  |
|  | Ky E. Kirby |
|  | ky.kirby@bingham.com |
|  | Thomas R. Lotterman |
|  | tom.lotterman@bingham.com |
|  | David B. Salmons |
|  | david.salmons@bingham.com |
|  | Randall M. Levine |
|  | randall.levine@bingham.com |
|  | Bingham McCutchen LLP |
|  | 2020 K Street, NW |
|  | Washington, DC 20006-1806 |
|  | Telephone (202) 373-6000 |
|  | Facsimile (202) 373-6001 |
|  |  |
|  | **KUCHLER POLK SCHELL WEINER & RICHESON, LLC** |
|  |  |
|  | Deborah D. Kuchler, T.A. (La. Bar No. 17013) |
|  | dkuchler@kuchlerpolk.com |
|  | Janika Polk (La. Bar No. 27608) |
|  | jpolk@kuchlerpolk.com |
|  | Robert Guidry (La. Bar No. 28064) |
|  | rguidry@kuchlerpolk.com |
|  | 1615 Poydras Street, Suite 1300 |
|  | New Orleans, LA 70112 |
|  | Telephone (504) 592-0691 |
|  | Facsimile (504) 592-0696 |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on March 13, 2014.

                                                     /s/ *James J. Dragna*
                                                              James J. Dragna