UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY  THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * | MDL NO. 2179  SECTION J |
| This document relates to:  No. 10-4536 | * * * * * * | HONORABLE CARL J. BARBIER  MAGISTRATE JUDGE SHUSHAN |

**BPXP'S REPLY IN SUPPORT OF ITS COMBINED
MOTION IN LIMINE TO EXCLUDE FROM THE PENALTY PHASE
(1) ADDITIONAL EVIDENCE OF CULPABILITY AND
(2) EVIDENCE RELATING TO UNRELATED PRIOR INCIDENTS**

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

*Attorneys for BP Exploration & Production Inc.*

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.     The CWA's Statutory Language Defines The Standard For Assessing Penalties. ...................................................................................................................... 2

    A.     Only Section 311 Violations Fall Within the Text of the Statute. .......................... 3

    B.     Only Violations Committed by the Violator Should Be Considered. ...................... 5

    C.     The Other Violations Are Not Admissible Under the "Degree of Culpability Involved" or "Other Matters As Justice May Require" Factors. .......... 6

II.     There Is Nothing Speculative About The Threat Of Mini-Trials ................................ 7

III.     BPXP's Motion Is Not Premature. ............................................................................... 10

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Regions Hosp. v. Shalala*,
  522 U.S. 448 (1998) .................................................................................................... 3

*U.S. v. CITGO Petroleum Corp.*,
  723 F.3d 547 (5th Cir. 2013) .................................................................................. 5, 6

*U.S. v. CITGO Petroleum Corp.*,
  No. 08-893, 2011 WL 10723934 (W.D. La. Sept. 29, 2011) ....................................... 5

**Statutes**

33 U.S.C. § 1321(b)(8) .................................................................................................... 4

Fed. R. Evid. 403 .......................................................................................................... 10

**Regulations**

136 Cong. Rec. H6933-02,
  1990 WL 111529 (1990) ............................................................................................ 3

**INTRODUCTION**

The United States' opposition brief fails to point to any violations of the Clean Water Act by BPXP. Instead, the U.S. has combed through history to compile a list of non-CWA violations from around the world by entities other than BPXP, including incidents that occurred ten to fifteen years before the *Deepwater Horizon* incident. In so doing, the U.S. overreaches, suggesting that the Court may allow evidence of any type of prior violation by any BP entity anywhere, at any time, or even "any behavior that is blameworthy" (U.S. Opp'n at 24), as long as the end result is a higher, and purportedly more deterring, penalty. But the statutory language of the CWA guides the courts in applying the penalty factors under the Act, not the U.S.'s self-serving preference for "maximum deterrence." Congress could have written a statute that directed courts to consider any and all evidence in assessing a penalty to achieve maximum deterrence, but Congress instead directed courts to consider eight factors in assessing the appropriate penalty.

The U.S. also claims that there is no genuine threat of mini-trials, cumulative evidence, delay, or waste of time. But the U.S.'s own brief shows why that threat is real and indeed inevitable. The U.S. contends that it "does not seek to introduce evidence of BP's environmental and safety history . . . to show what caused the Macondo blowout," but instead "to show that the management and process safety failures that caused the Macondo catastrophe were similar to those that caused BP's other major environmental and safety disasters." (U.S. Opp'n at 15) The U.S. fails to acknowledge, however, that comparing the causes of prior incidents to the causes of the *Deepwater Horizon* incident will necessarily require the parties to relitigate the hotly disputed causation evidence from the Phase 1 trial. Moreover, the U.S.'s suggested "streamlined" presentation focuses solely on its own affirmative case, and wholly ignores BPXP's due process rights to cross-examine and present its own counter-evidence.

1

The U.S.'s misleading description of the Endicott Island incident from the mid-1990's is just one example illustrating why mini-trials will be inevitable if the Court permits evidence of unrelated prior incidents.  The U.S. characterizes Endicott as "similar to the situation at Macondo" based on the presence of a contractor-operated drilling rig.  (U.S. Opp'n at 12)  But Endicott was not even remotely similar to the *Deepwater Horizon* incident.  Rather, Endicott involved a delay in reporting a contractor's illegal dumping activity.  If the U.S. introduces evidence of Endicott and other prior incidents, BPXP will then present its own evidence providing correction and context for each of the incidents, leading to the multiple trials within trials predicted by the Court in its order excluding such evidence from Phase 1.

Ironically, the U.S. seeks to introduce these incidents to provide what it contends is even further evidence establishing BP's alleged process safety failures—an issue fully tried in Phases 1 and 2—while at the same time contending that no evidence whatsoever should be admitted relating to the "seriousness" of the violation—an issue that has not been tried.  This inherently inconsistent position reveals the U.S.'s true motivation:  to relitigate the causation issues of Phases 1 and 2 while ignoring the statutory factors that should be the focus of the Penalty Phase.

## ARGUMENT

The U.S.'s attempt to introduce evidence of as many as ten prior incidents, regardless of whether the incident involved BPXP or a violation of Section 311, is contrary to the CWA's statutory language and will be far from the "streamlined presentation" depicted by the U.S.  This issue should be resolved now, before the parties and the Court incur considerable time and expense pursuing fact and expert discovery relating to inadmissible evidence.

### I. THE CWA'S STATUTORY LANGUAGE DEFINES THE STANDARD FOR ASSESSING PENALTIES.

Under the U.S.'s reasoning, any prior violation can be considered no matter how

dissimilar, distant in time, or otherwise unrelated to the violation at issue. The U.S.'s argument tries to bend the wording of the CWA to fit its view of maximum deterrence, but even the goal of deterrence does not automatically lead to the admission of any particular evidence or to a particular penalty amount. BPXP's reading of the CWA is neither narrow nor cramped, but instead properly focuses on the statutory language. According to the U.S.'s virtually unbounded interpretation of the CWA, Congress would have needed to include only the "other matters as justice may require" factor. The fact that Congress directed courts to consider seven other, more specific factors demonstrates that the U.S.'s interpretation cannot be correct. *See Regions Hosp. v. Shalala*, 522 U.S. 448, 467 (1998) ("[A] cardinal rule of statutory construction [is] that significance and effect shall, if possible, be accorded to every word.").

The U.S.'s references to legislative history are also unavailing. The legislative history confirms that the specific penalty factors, and not simply "deterrence," are controlling:

> But we also need to give agency officials and judges *some basic parameters to follow*. A legitimate business should be afforded *some reasonable expectations* about its potential liability exposure. Therefore, although we have not placed an outside cap on the $1,000 per barrel criterion, *the conferees have specifically included various factors to be considered in determining the amount of penalties*. Particular weight should be given to the degree of culpability, the economic impact of the penalty on the violator, efforts taken to mitigate the spill, and other matters as justice and fairness require.

136 Cong. Rec. H6933-02, 1990 WL 111529 (1990) (statement of Rep. Stangeland) (emphasis added). Thus, the CWA's text and structure, as well as the legislative history, confirm that the goal of deterrence does not mean, as the U.S. contends, that evidence of any dissimilar and unrelated violation should be considered in assessing the CWA penalty.

### A. Only Section 311 Violations Fall Within the Text of the Statute.

Contrary to the U.S.'s position, the term "violations" in "history of prior violations" must mean Section 311 violations. The U.S. contends that because Section 311(b)(7)(A) refers to

3

violations "of paragraph (3)," and because similar language does not appear in Section 311(b)(8) (the provision listing the penalty factors), this brings into play the principle that "where Congress includes particular language in one section of a statute, but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion."  (U.S. Opp'n at 16) (internal quotations omitted)  The U.S.'s argument fails, however, because the word "violation" unmodified by the "of paragraph (3)" language appears several times in Section 331(b)(8) itself, and each time the context makes clear that its use refers to Section 311 violations (in those cases, the violation that is being penalized).  33 U.S.C. § 1321(b)(8) ("the seriousness of the *violation* or *violations*, the economic benefit to the violator, if any, resulting from the *violation*") (emphasis added).

Moreover, the U.S. offers no principled way to limit what "violation" means, and continues to suggest that the factor encompasses virtually any type of violation identified by "federal, state, and international agencies."  (U.S. Opp'n at 2 n.3)  The U.S., evidently recognizing that it should offer some sort of limiting principle, suggests that "violations of other statutes and other facilities can be relevant where (as here) they show patterns of conduct that are helpful in deciding the size of a penalty that should be assessed for a later violation."  (U.S. Opp'n at 15 n. 57)  Of course, this "limitation" finds no support in the actual language of the statute; nor does it offer any objective guidance to courts or parties.[1]

Furthermore, contrary to the U.S.'s argument, the Fifth Circuit's decision in *CITGO* did not "issue sufficient guidance."  (U.S. Opp'n at 19)  The District Court in *CITGO* found merely

---

[1] The U.S.'s March 12, 2014 submission suggests that it "may present evidence" concerning "potential incidents" allegedly involving a "failure to report information to MMS at a small number of BPXP wells in the Gulf of Mexico." (March 12, 2014 U.S. Submission at 6)  Unless the U.S. can demonstrate an actual and proven violation of Section 311 by BPXP, however, this evidence is likewise inadmissible.

that "Citgo is guilty of prior violations," and did not address what types of violations are appropriate to consider. *United States v. CITGO Petroleum Corp.*, 2011 WL 10723934, at *7 (W.D. La. Sept. 29, 2011). The Fifth Circuit remanded the district court's findings on this factor without discussion of its scope. *See United States v. CITGO Petroleum Corp.*, 723 F.3d 547, 553 (5th Cir. 2013). Neither of these decisions cite to Section 309. The U.S. overreaches in suggesting *CITGO* provides "sufficient guidance" on the scope of the factor, including whether it may include non-Section 311 violations or violations committed by non-defendants.

Finally, the U.S. reads its EPA settlement policy in an illogical manner. As BPXP explained in its opening brief, the policy's language "relate[s] to Section 311 spills," including the phrase "'any violation of an environmental statute that relates to the respondent's ability to prevent or mitigate a discharge in violation of Section 311(b)(3).'" (BPXP's Br. at 14) The language relied on by the U.S. recognizes that "[r]elated violations … could include certain operation and maintenance violations that indicate a respondent's inattention to pollution control requirements." (U.S. Opp'n, Ex. 54 at 4) This language only confirms that the policy is focused on *related* violations, and only those that increase the chance of a Section 311 violation. Contrary to the U.S.'s view, violations of unrelated statutes at other facilities involved in different operations do not fall within the policy's framework.

### B. Only Violations Committed by the Violator Should Be Considered.

The "history of prior violations" factor should cover only violations committed by BPXP. Although the "prior violations" factor does not expressly include the phrase "by the violator," it is the only reasonable interpretation. The nature of each factor determines which factors relate to the violator and which relate to other relevant circumstances. (BPXP's Br. at 14-15)

The U.S. contends that violations by other BP entities should be considered because Judge Vance "rejected contentions that prior violations should be limited to BPXP in reviewing

5

the criminal plea." (U.S. Opp'n at 22)  The U.S. inaccurately describes the circumstances of Judge Vance's ruling.  None of the parties in the criminal proceeding argued that it would be improper to consider the history of other BP companies in determining whether to accept the criminal plea, and thus the issue presented by this motion was not before Judge Vance.  In any event, Judge Vance was applying the federal sentencing statutes, not the CWA penalty factors.

As BPXP explained in its Opposition to the U.S.'s Motion in Limine to Permit Relevant Evidence Concerning BP p.l.c. and Other BP Affiliates (Rec. Doc. 12465), the determination of whether evidence related to BP entities other than BPXP should be considered need not be identical for each of the factors.  Instead, that determination should be governed by: (1) the language of each specific penalty factor at issue and the precedent guiding the Court's application of that factor, (2) the specific "action" of the BPXP affiliates at issue, and (3) the discovery and evidence relating to the specific affiliate's "action."

### C. The Other Violations Are Not Admissible Under the "Degree of Culpability Involved" or "Other Matters As Justice May Require" Factors.

The U.S. fails to cite any precedent, other than its own misinterpretation of *CITGO*, to support its overbroad reading of the "degree of culpability involved" factor.  In *CITGO*, the Fifth Circuit approved the district court's analysis of this factor based on CITGO's level of fault *as it related to the violation in question*:  "The district court considered CITGO's 'degree of culpability' and found that it was 'fully at fault' *for the spill* and was negligent." *CITGO*, 723 F.3d at 553 (emphasis added).  Other courts also have equated "degree of culpability involved" with evidence of the party's level of fault. (BPXP's Br. at 4-5)

Under the U.S.'s interpretation of *CITGO*, the culpability factor incorporates "any behavior that is blameworthy or meriting condemnation."  (U.S. Opp'n at 24)  This approach, however, would lead to the illogical conclusion that evidence regarding anything that could be

6

characterized as misconduct, without limitation, committed by any BP entity at any time in history is admissible.  Congress clearly could not have intended such a result.

Nor does the U.S. explain why evidence of other incidents should be deemed relevant to the "degree of culpability involved" when there is a separate penalty factor specifically addressing the issue of prior violations.  Additionally, as explained in BPXP's opening brief, allowing the U.S. to shoehorn evidence of unrelated prior incidents into the "other factors as justice may require" factor would avoid the intent of the statute and render the other enumerated penalty factors meaningless. (BPXP Br. at 16-18)

## II.  THERE IS NOTHING SPECULATIVE ABOUT THE THREAT OF MINI-TRIALS.

The U.S. contends that BPXP's argument concerning mini-trials, delay, and wasted time is a "red herring."  To the contrary, as the Court has previously recognized, the introduction of prior incidents creates a "real danger of creating a 'trial within a trial.'"[2]  Nothing about the Penalty Phase diminishes that danger.

Much of the U.S.'s evidence will be cumulative, which is evident from the U.S.'s own brief, which states that it intends to go back into "the risky drilling practices that were a cause of the Macondo disaster" (U.S. Opp'n at 30) and attempts to compare the causes of prior incidents to the *Deepwater Horizon* incident.  At trial, for the U.S. to attempt to establish the similarity of those causes, and for BPXP to rebut those contentions, both parties will have to rehash disputed

---

[2] The U.S. suggests the Court's concern was overblown, because no witnesses were removed from the Phase 1 witness lists immediately after the Court excluded evidence of prior violations.  But the U.S. fails to note that there were no trial witnesses whose testimony related solely to prior incidents, and so it is not surprising that none were dropped right after the Court's ruling.  In any event, the U.S. mistakenly focuses on number of witnesses, when the real issue is total trial time.  The Court's ruling significantly reduced total trial time by, for example, excluding a large portion of the proposed testimony of Dr. Bea, whose expert report was submitted in redacted form as a result of the Court's order.  And because Dr. Bea's testimony was limited, BP did not need to call experts Kathleen Sutcliffe and Morris Burch, whose opinions in part rebutted Dr. Bea's opinions relating to prior incidents.

7

Phase 1 causation issues. In fact, it is telling that the U.S.'s opposition brief cites 24 different exhibits, three expert reports, seven fact depositions, and three witnesses' trial testimony from Phases 1 or 2. These documents and testimony involve familiar issues.[3]

Despite its promise of a "streamlined presentation focusing on very few incidents," the U.S. has stated that it intends to introduce evidence relating to as many as *ten* different prior incidents. That is not, we submit, "very few," particularly given BPXP's due process right to present its own counter evidence. For example, with respect to each incident, BPXP would be entitled to present evidence on topics such as: (1) when and how the other incident occurred; (2) which BP entity and third parties were involved in the other incident; (3) what lessons were learned from the other incident; (4) how those lessons were shared within BP and the industry; (5) the status of implementing each of the lessons as of April 20, 2010; and (6) how the other incident and its cause(s) differed from the *Deepwater Horizon* incident.

In addition, BPXP would be entitled to put the prior incidents into context by, for example, introducing evidence of prior incidents experienced by other companies, including companies that plaintiffs' experts such as Dr. Bea have commended for their process safety practices. BPXP also would be entitled to present evidence relating to BP's overall safety performance over time, to rebut the U.S.'s assertion that these prior incidents reflect a company with a poor safety record that fails to learn lessons. Indeed, to the extent that the U.S. intends to use evidence concerning past incidents to demonstrate an alleged pattern, BPXP would be entitled to rebut the U.S.'s assumptions and present its own evidence.

---

[3] This includes: the Bly Report (TREX 000001 attached to U.S.'s brief as Ex. 41); E&P Drilling and Well Operations Practice (DWOP) (TREX 000093; Ex. 43); emails between John Guide and David Sims (TREX 001144; Ex. 48); DWH Follow Up Rig Audit (TREX 003405; Ex. 42); Risk Mitigation Plan (TREX 004171; Ex. 51); GoM D&C Recommended Practice for Management of Change (TREX 006291; Ex. 46); and expert reports TREX 005990 (Glen Benge; Ex. 49); TREX 008141/061117 (Gene Beck; Ex. 39); TREX 020001 (Robert Bea; Ex. 40).

Anticipating this problem with introducing evidence of as many as ten prior incidents, the U.S. focuses on the number of witnesses required to address these incidents, speculating that the U.S. will need to call only three witnesses to address this topic. (Rec. Doc. 12351 at 7)  Putting aside that it is difficult to imagine three witnesses addressing all of this evidence, the U.S. wholly ignores any witnesses BPXP might call to rebut the U.S.'s evidence.  Moreover, it is the total trial time, not the number of witnesses, that should be the concern here.

Of course, some of the differences between the incidents the U.S. cites and the *Deepwater Horizon* incident are readily apparent, as the Court noted in its Phase 1 ruling.  The Court's ruling correctly recognized the lack of "any substantial similarity between the prior incidents and the Macondo casualty" and that these prior incidents were "not sufficiently similar to the Deepwater Horizon incident." (Rec. Doc. 5634 at 3-4)

In its response brief, the U.S. discusses the three incidents noted in the Court's prior order, and mentions only one additional incident, Endicott Island.  In an apparent effort to overcome the Court's previous findings that Texas City, Grangemouth, and Prudhoe Bay were dissimilar to *Deepwater Horizon*, the U.S. claims that the Endicott "took place at a drilling rig operated by a contractor offshore . . . similar to the situation at Macondo where the *Deepwater Horizon* was operated by Transocean." (U.S. Opp'n at 12)

The Endicott incident, which involved conduct that occurred in 1993-1995, is no more similar to *Deepwater Horizon* than the other incidents previously identified by the U.S.  While technically "off-shore," Endicott is a manmade island built for the purpose of extracting and processing oil reserves. (*See* TREX 022375 at 27, attached hereto as Ex. A)  And while Endicott involved a drilling rig, it was not an oil spill but instead involved a delay by BP Exploration Alaska Inc. (BPXA) in reporting a contractor's illegal dumping activity.  After initially learning

9

of allegations that the contractor was injecting hazardous substances into wells, BPXA investigated for two weeks before reporting the conduct to authorities. (*Id.* at 31) As a result, BPXA ultimately pled guilty for its failure to immediately report this activity. (*Id.* at 9)

The U.S.'s inaccurate and misleading comparison of Endicott to *Deepwater Horizon* confirms that the threat of mini-trials, delay, and cumulative evidence is real. Whether or not the U.S. fulfills its promise of a "streamlined presentation" during its case, which is doubtful if even one prior incident is discussed, BPXP will have the right to cross-examine and to present its own evidence on each incident, resulting in the mini-trials the Court previously predicted.

### III. BPXP'S MOTION IS NOT PREMATURE.

The U.S.'s arguments related to the supposed prematurity of BPXP's motion are misplaced. It would be counterproductive for the parties to engage in extensive discovery, especially discovery that would inevitably result in disputes and consume judicial resources, before this motion is decided. Rule 403's reference to evidence that is a "waste of time" is not surplusage. The benefit of excluding evidence which would waste time is only available if the Court can make the determination *before* it has to sit through the entire presentation. Here, the details of the other incidents have no bearing on the issue before the Court and the probative value is substantially outweighed by the time needed to present and rebut the evidence.

Finally, the issues and practical concerns raised by this motion do not involve only Rule 403, but also concern the proper interpretation of the CWA statutory language. Thus, in addition to Rule 403 concerns, this motion raises questions that should be resolved before the parties embark on extensive discovery relating to ten prior incidents.

### CONCLUSION

For the foregoing reasons, the Court should preclude the introduction of (i) additional evidence regarding BPXP's culpability, and (ii) evidence relating to unrelated prior incidents.

Date: March 13, 2014					Respectfully submitted,


/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

***Attorneys for BP Exploration & Production Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 13th day of March, 2014.

/s/ Don K. Haycraft
Don K. Haycraft