**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| **In Re:** | **Oil Spill by the Oil Rig** | : | **MDL NO. 2179** |
| | **"Deepwater Horizon" in the** | : | |
| | **Gulf of Mexico, on** | : | **SECTION: J** |
| | **April 20, 2010** | : | |
| | | : | **JUDGE BARBIER** |
| **This Document Relates to:** | | : | |
| **Case No. 2:10-cv-04536** | | : | **MAG. JUDGE SHUSHAN** |

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

<u>**UNITED STATES' REPLY TO ANADARKO'S OPPOSITION TO MOTION FOR**</u>
<u>**DISCOVERY OF ANADARKO SUBSIDIARIES AND AFFILIATES AS RELEVANT TO**</u>
<u>**ECONOMIC IMPACT OF PENALTY ON APC**</u>

**INTRODUCTION**

The Court ordered the United States to brief a discovery dispute hinted at by Anadarko

Petroleum Corporation ("APC" or "Anadarko") that concerned discovery into certain

information pertaining to APC's wholly-owned subsidiaries.  Anadarko has filed its response.[1]

The United States agrees with Anadarko that, as a general proposition, where the parent

company files consolidated financial statements, discovery concerning the economic impact of

the penalty on a parent company is much simpler than assessing the impact on a subsidiary.  That

does not mean, however, that all discovery concerning subsidiaries is prohibited.  The limited

information that the United States is seeking here is appropriate.  APC does not identify the

specific discovery requests at issue and the scope of Anadarko's concerns still are unclear,

although it now appears to seek a blanket prohibition on any inquiry into its subsidiaries.

---

[1] Consistent with the Court's instructions, on March 3, 2014, the United States emailed its opening brief
to the Court in lieu of filing on the docket.  Anadarko filed its brief on the docket.  Accordingly, the
United States is now filing this Reply Brief on the record, and has requested that the US Opening Brief be
docketed as well.

Contrary to Anadarko's assertions, the discovery the United States seeks concerning Anadarko subsidiaries is relevant and appropriate and is not onerous.

**I.      The limited information that the United States seeks here is relevant, appropriate, and not burdensome.**

Anadarko contends that, because Anadarko is a parent company that regularly reports its financial condition in consolidated financial statements, the analysis of the economic impact on it is "comparatively easy," Anadarko Br. at 1.  The United States agrees that, as a general proposition, discovery into "the minutiae" of the inter-company transactions and detailed reconstruction of the financial condition of the Anadarko subsidiaries are not necessary here. Indeed, discovery related to the economic impact of the penalty on APC should be significantly simpler than discovery related to the economic impact of the penalty on BP p.l.c.'s wholly-owned subsidiary BPXP, if the Court holds that it will only consider evidence concerning BPXP. The fact that the Anadarko defendant in the CWA Penalty Phase is the parent company greatly reduces the need for discovery of Anadarko subsidiaries.

Nonetheless, simply because a parent company files consolidated financial statements does not mean that it should be completely insulated from any inquiry into the performance of certain subsidiaries, or from inquiry into reorganization and movement of assets.  Anadarko did not identify specific discovery requests that it found troubling, so the United States is again in the position of trying to set forth Anadarko's concerns, prior to discussing them with Anadarko. However, the discovery requests that pertain to subsidiaries are likely to fall into three Groups, two of which the United States does not believe are controversial for Anadarko:

*First,* the United States has asked for "consolidating financial statements" which are summary documents containing information for each subsidiary that Anadarko has compiled

already in order to generate the consolidated financial statements that are publicly reported.[2]

This already-compiled information is not onerous to produce:  since it is gathered for public

reporting, it does not require reaching down into the detailed subsidiaries' accounting.  This

existing summary accounting information is necessary for an understanding of the performance

of subsidiaries, so that the United States can better determine trends and the relative contribution

of internal components to APC's overall performance. Consolidated financial statements can

mask that evidence, but such information will factor into any forward-looking analysis of the

economic impact of the penalty on Anadarko.  This request is very important to the United

States' analysis, supplants the need for other, more burdensome discovery, and was not identified

as controversial in Anadarko's brief.

   *Second*, other requests potentially pertain to Anadarko subsidiaries directly or

tangentially but are limited in scope and should not be onerous to produce.[3]  These requests are

neither controversial nor burdensome.

   *Third,* a few discovery requests pertain to the redistribution of assets from APC and

AEP.[4]  The United States would be remiss not to pose at least some inquiry given evidence that,

during the pendency of this litigation and the *In re Tronox Inc.* litigation, 503 B.R. 239 (Bkrptcy.

S.D.N.Y. 2013), assets were transferred out of both APC and AEP.  Evidence that leases were

---

[2]  Requests for Production # 1 (consolidating financial statements, etc.).

[3]  These requests may include: Interrogatories #4 (debt financing); #6 (material contingent liabilities (may already be publicly reported)); # 7 (uncertainties in BPXP indemnification); #17 (payments for Incident); #18 (payments received from Incident); and Requests for Production # 6 (back-up documents to a presentation on projections); #7 (financial projections and sensitivity); # 11 (debt financing and credit, internal guarantees).

[4]  These requests are:  Interrogatories # 8 and 9; and Requests for Production # 10.

moved into Anadarko Offshore is public information,[5] but evidence that other assets were moved

into AEP (now Anadarko Onshore) is not readily publicly available, nor has the United States

been able to locate a discussion of the reorganization in Anadarko's public filings. Confirmation

that appropriate consideration was provided to both corporate entities, and some explanation of

the reasons for the transfer, may reflect on Anadarko's financial performance going forward and

is appropriate.

Fairness demands that the United States receive all of the foregoing, limited information.

Anadarko has unfettered access to all tiers of its financial discovery and designated two

corporate fact witnesses for this penalty factor.[6]

The United States expects that sufficient information exists at the parent level for most of

the remaining financial discovery requests[7] (or the request is not financial)[8], including all three

requests cited by Anadarko, *see*, Anadarko Br. at 6, but has not had an opportunity to confirm

that expectation with Anadarko.  Until the United States is able to confirm that sufficient parent-

---

[5] Note that the government approved the reassignment of these leases.

[6] APC designated Margaret C. Douglas, Senior Vice President and Chief Accounting Officer, Anadarko Petroleum Corporation for "general information regarding Anadarko's finances. " *See* Ex. # 1.  She or some other APC employee may be a 30(b)(6) deponent as well when the US takes a deposition of Anadarko.

[7] For the following requests, it is likely that sufficient information exists at the parent level: Interrogatories # 2 (dividend policies); # 3 (basis for determining when to sell shares); # 4 (basis for determining when to obtain debt financing on bond market); #5(expectation for oil and gas prices in future); # 15(how evaluates capital expenditures); # 16 (basis for assumption of debt financing); #19 (basis for dividend payments); # 20 (targets for certain metrics); # 24 (support for statement that penalty will have  no material effect); and Requests for Production # 2 (discounted cash flow worksheets); #8 (materiality of penalty); and # 9 (decisions to buy back stock).

[8] The following are non-financial requests: Interrogatories # 10, # 11, # 12, # 13, # 14, # 21, # 22, # 23, # 25; and Requests for Production # 3, # 4, # 5, # 12, # 13, # 14, and # 15.

level information exists, a blanket prohibition on discovery into the subsidiaries is premature and unwarranted.

**II.      Discovery of the parent company is necessary unless Anadarko stipulates an ability to pay the statutory maximum penalty.**

The Court has only required briefing of the United States' discovery into the financial condition of the Anadarko subsidiaries and discussion of the remaining discovery is beyond the scope of this briefing.  Although in its most recent Annual Report Anadarko claimed that any CWA penalty would not have a material impact on its operations,[9] Anadarko refused to stipulate to that statement.  Anadarko further refused to stipulate to other narrative statements that it could pay a potential statutory maximum penalty.[10]  Anadarko may claim that it has an inability to pay a CWA civil penalty, and therefore, discovery into Anadarko's financial condition over time is necessary.  Even now, however, as stated in the US Opening Brief, if Anadarko were to stipulate to an ability to pay the statutory maximum civil penalty in this matter, this issue would be resolved and the United States would not need to present evidence on this penalty factor with respect to Anadarko.

---

[9]  Anadarko stated in its public reporting that "the Company believes that its exposure to CWA penalties will not materially impact the Company's consolidated financial position, results of operations, or cash flows." (Anadarko Petroleum Company Form 10-K for the year ending December 31, 2013, p.130)

[10] Anadarko claims in its Opposition that "[w]ithout explanation, the Government rejected Anadarko's proposal [to stipulate]."  Anadarko Br. at 2.  That statement simply is not consistent with the parties' prior discussions.  Anadarko did agree to stipulate to a number of relevant facts taken directly from its Annual Reports, and the United States indicated that it was willing to forego some document requests if the stipulation were finalized, but the stipulations were not completed.

Respectfully submitted,

BRIAN HAUCK                                    ROBERT G. DREHER
Deputy Assistant Attorney General             Acting Assistant Attorney General
Civil Division                                Environment & Natural Resources Division
PETER FROST                                   SARAH HIMMELHOCH
Director, Torts Branch, Civil Division        MICHAEL MCNULTY
Admiralty and Aviation                        Senior Litigation Counsel
SHARON SHUTLER                                NANCY FLICKINGER
MALINDA LAWRENCE                              Senior Attorney
LAURA MAYBERRY                                PATRICK CASEY
Trial Attorneys                               RICHARD GLADSTEIN
R. MICHAEL UNDERHILL, T.A                     DANIEL S. SMITH
Attorney in Charge, West Coast Office         Senior Counsel
                                              ABIGAIL ANDRE
                                              A. NATHANIEL CHAKERES
                                              ANNA CROSS
                                              RACHEL HANKEY
                                              JUDY HARVEY
                                              RACHEL KING
                                              ERICA PENCAK
                                              BRANDON ROBERS
                                              GORDON YOUNG
                                              Trial Attorneys


                                              /s/ Steven O'Rourke
                                              STEVEN O'ROURKE
                                              Senior Attorney
                                              Environmental Enforcement Section
                                              U.S. Department of Justice
                                              P.O. Box 7611
                                              Washington, D.C. 20044
                                              Telephone:  202-514-2779
                                              Facsimile:   202-514-2583
                                              E-mail:  steve.o'rourke@usdoj.gov
                                              KENNETH A. POLITE, JR.
                                              United States Attorney
                                              Eastern District of Louisiana
                                              SHARON D. SMITH
                                              Assistant United States Attorney
                                              Eastern District of Louisiana

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.


Date:  March 17, 2014.                                      /s/  Steven O'Rourke
                                                             U.S. Department of Justice