# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010 | * * * * | MDL No. 2179 |
| | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: Nos. 10-2179; 10-4536; 10-2771 | * * * | |
| | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| * * * * * * * * * * * * | | |

## ANADARKO'S OPPOSITION TO
## THE UNITED STATES' MEMORANDUM ON BURDEN OF PROOF

BINGHAM McCUTCHEN LLP

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
Thomas R. Lotterman
tom.lotterman@bingham.com
David B. Salmons
david.salmons@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, N.W.
Washington, D.C. 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street
Suite 1300
New Orleans, LA 70112
Telephone (504) 592-0691
Facsimile (504) 592-0696

I.     INTRODUCTION

For practical case-management purposes, Anadarko and the Government appear to agree on the order of proof for the Penalty Phase trial, and the need to exchange simultaneous expert reports and rebuttal expert reports. While Anadarko and the Government disagree about how the burden of proof and persuasion is allocated in a CWA penalty case, and disagree about the appropriate methodology the Court should use here, neither issue is yet implicated at this early stage. To the extent the Court considers the burden or methodology issues, Anadarko's positions are as follows.

II.    ARGUMENT

A.     **The Government Bears the Ultimate Burden of Proof.**

The Government argues that the burden of proof in a CWA civil penalty action is on *the defendant*, not the Government, because the Court should use a "top-down" penalty assessment methodology. But the Government erroneously conflates penalty assessment *methodology*—a question left entirely to the Court's discretion—with burden of proof. These are completely different issues.

Whatever methodology the Court employs, the Government is still the plaintiff seeking to impose substantial civil penalties on Defendants, and therefore always bears the ultimate burden to prove that the penalty it seeks is appropriate. *See Student Public Interest Research Group of New Jersey, Inc. v. Monsanto Co.*, CIV. A. No. 83–2040, 1988 WL 156691 at *16 (D.N.J. 1988) *aff'd* 870 F.2d 652 (3d Cir. 1989) (in applying top-down method to assess CWA penalty, the court "expressly reject[ed] plaintiffs' argument that, in setting a penalty, the court should place the burden on the defendant to establish facts justifying some amount less than the maximum allowed by law. That would, in [the court's] view, be a novel and wholly untenable principle to apply to any civil penalty statute."). Courts thus generally hold that, in imposing civil penalties,

1

the Government bears the burden to prove that the statutory penalty assessment factors support the Government's proposed penalty.  *See Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 80 (3d Cir. 1990) (holding that under the CWA "determination of economic benefit or other factors will not require an elaborate or burdensome evidentiary showing," but noting that it is "plaintiffs' burden."); *Balice v. U.S. Dept. of Agriculture*, 203 F.3d 684, 691 n.4 (9th Cir. 2000) (in administrative context, "[w]here a statute requires an agency to consider specific mitigating factors before assessing a civil penalty … the agency [has] the burden of producing evidence showing that a proposed penalty is reasonable in light of those factors.").

Nothing in the CWA indicates that Congress meant to shift the usual allocation of burden from plaintiff to defendant.  If, for example, Congress had intended the CWA's penalty factors to be affirmative defenses, on which the defendant bears the burden of proof, it would have said so expressly.  *See Merritt v. U.S.*, 960 F.2d 15, 18 (2d Cir. 1992) (government has burden of proof for purposes of civil penalty assessment under the Shipping Act because, had Congress intended a different result, "it could have written" the factors "into the statute as an affirmative defense and shifted the burden of going forward with evidence onto the defendant.").  That Congress did not do so in Section 311 of the CWA evinces the intent to maintain the ordinary balance, and the Government must bear the burden to prove the penalty it seeks is appropriate.

> **B.     The Court Need Not Address Assessment Methodology Now, But If It Does, The Court Should Reject the Government's "Top-Down" Method.**

The "top-down" methodology the Government advocates is not required by the CWA, and would not be appropriate under the circumstances.  The "top-down" approach assumes the starting point for assessing a CWA penalty is the maximum penalty amount, with reductions based on the Court's assessment of the eight penalty factors set forth in section 311(b)(8).  The

Fifth Circuit has *never* mandated use of the top-down approach, and has expressly rejected the argument that a "top-down" assessment methodology is required. *U.S. ex rel. Adm'r of E.P.A. v. CITGO Petroleum Corp.*, 723 F.3d 547, 552 (5th Cir. 2013) (citations omitted) (rejecting argument that district court improperly refused to apply top down approach).

The "top-down" approach would be especially ill-suited to Anadarko. As the Government has recently conceded, this Court ruled "that Anadarko was not negligent or at fault for the blowout…." United States' Opposition to Motion *in Limine* of Defendant Anadarko Petroleum Corporation to Exclude all Evidence Regarding Anadarko's Culpability [Rec. Doc. 12462] at 9. The maximum possible penalty under the CWA therefore would be wildly disproportionate and grossly excessive in light of Anadarko's lack of operational control over the *Deepwater Horizon*, and complete lack of culpability or fault for the discharge. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 504 (2008) ("The common sense of justice would surely bar penalties that reasonable people would think excessive for the harm caused in the circumstances."); *Leslie Salt Co. v. U.S.*, 55 F.3d 1388, 1397 (9th Cir. 1995) ("District courts retain the broad discretion to set a penalty commensurate with the defendant's culpability" and "in its consideration … the district court could assess a civil penalty of only a nominal amount.").

Anadarko does not dispute the significance of the spill, but unlike others, including the Government, Anadarko was not the operator of the *Deepwater Horizon*, had no operational control, and was not a regulator charged with overseeing the operation. And since, as this Court previously found, the purpose of the CWA is to punish and deter, culpability must be one of the most important factors to consider, since it would be irrational and unfair to impose maximum punishment on someone who has done no wrong. *See BMW of North America, Inc., v. Gore,* 517

U.S. 559, 575-76 (1996) ("[P]unitive damages may not be grossly out of proportion to the severity of the offense.") (quotation omitted).

It would make far more sense for the Court to set a penalty based on Anadarko's "degree of culpability"—which is zero—and consider the remaining factors to fashion a penalty that is both consonant with Anadarko's non-negligent conduct, and rationally related to the CWA's legislative purposes.[1] Indeed, due process requires no less. *See U.S. v. Tex-Tow, Inc.*, 589 F.2d 1310, 1313 (7th Cir. 1978) (where liable party is without fault, "absolute liability in the case of the civil penalty is not unduly harsh or unreasonable" such as would violate due process "in view of the limited nature of the liability [maximum of $5,000] and the flexibility afforded by the statutory directive that …. in setting the amount of the penalty, [the Court] take into account the charged party's … degree of culpability").[2]

### C. The Court Should Direct the Government to State a Firm Position with Respect to the Relevance of Each Penalty Factor.

Much of the confusion on these points (and Anadarko's concern) can be traced directly to the Government's longstanding refusal to take any firm position on the application of the CWA penalty factors to this case, and its policy of obfuscation when it comes to explaining its penalty rationale. This is unfair and prejudicial to the Defendants, who must be able to prepare their defenses. For example, in its March 3 Submission, (p. 5), the Government takes *three distinct positions* on the "economic benefit" factor.

---

[1] Although the penalty assessment is discretionary with the Court, contrary to the United States' claims, the alternative "bottom-up" approach would be more appropriate than starting with a maximum penalty in this case. *See U.S. v. Municipal Authority of Union Tp.*, 150 F.3d 259, 265 (3d Cir. 1998) (affirming district court's use of "bottom-up" methodology).

[2] *See also U.S. v. Georgetown Univ.*, 331 F. Supp. 69, 71 (D.D.C. 1971) ("[C]ases like the one here involving strict liability … do necessitate some element of control by those indicted …When one is not in control of facilities which lead to a violation … the ultimate result or damage to persons or property should be examined in the light of the Congressional policy to impose strict liability upon only those corporations or individuals who have it peculiarly within their power through the exercise of due diligence to protect the public.").

4

*First*, the Government asserts that "BP might argue that there was no economic benefit in this case, but the United States believes that the defendants realized an economic benefit from BP's actions at Macondo." *Second,* the Government *disclaims* any intent to make "economic benefit" a part of its penalty assessment case, because in the Government's view, the "economic benefit" factor is immaterial. *Third,* the Government just as quickly reverses course, and states that "[i]f we are put in the position of rebutting a claim by the defendants that there is no economic benefit …, then *we reserve the right to present evidence on all approaches [that show economic benefit] including illegal profits, market share and the like*." *Id*. at p. 4, n.5.[3] (emphasis supplied). Thus, the Government appears to be planning to hold back its expert's affirmative economic benefit opinion until rebuttal, at which point it will spring an "economic benefit" claim on the Defendants. *See* United States' Memorandum on the Burden of Proof for the Penalty Factors in Section 311(b) of the Clean Water Act at 3 n.2. This fudging, whether intentional or not, prompted Anadarko's request for clarification from this Court.

This is no way for the Government to prosecute a civil penalty case. *Cf. U.S. v. Municipal Authority of Union Tp.*, 150 F.3d 259, 267 (3d Cir. 1998) ("[T]he government gave [defendant] ample notice that it was pursuing this theory of economic benefit" by setting out the Government's theory in a pretrial memorandum.). By forcing Anadarko to anticipate what the Government might or might not say about "economic benefit," the Government would turn fair procedure inside out. If the Government believes that the "economic benefit" factor is material and warrants a CWA penalty, then the Government should simply say so at the outset and permit the Defendants to rebut its argument. If the Government does not believe "economic benefit" is

---

[3]   In its March 12, 2014 Submission (page 4), we are again told that the United States does not plan to put on any affirmative evidence regarding this factor in the Penalty Phase trial, but reserves the right to put on "rebuttal" evidence.

5

material, then it should agree to stipulate that the Defendants received no economic benefit from the violations, and remove the factor from the list to be addressed at trial.

### III.   CONCLUSION

For the foregoing reasons, Anadarko respectfully requests that the Court reject the burden of proof arguments and top-down penalty approach advocated by the Government.

Respectfully submitted,

DATED: March 17, 2014                               **BINGHAM McCUTCHEN LLP**

/s/ *James J. Dragna*
James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
Thomas Lotterman
tom.lotterman@bingham.com
David B. Salmons
david.salmons@bingham.com
Randall M. Levine
randall.levine@bingham.com
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

**KUCHLER POLK SCHELL
WEINER & RICHESON, LLC**

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)

                                              rguidry@kuchlerpolk.com
                                              1615 Poydras Street, Suite 1300
                                              New Orleans, LA 70112
                                              Telephone (504) 592-0691
                                              Facsimile (504) 592-0696

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on March 17, 2014.

                                                                                      _/s/ *James J. Dragna*_
                                                                                         James J. Dragna