**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | **MDL NO. 2179** **SECTION J** |
| This document relates to: 10-4536. | * * * * * * * * | **Honorable CARL J. BARBIER** **Magistrate Judge SHUSHAN** |

---

### BP EXPLORATION & PRODUCTION INC.'S MEMORANDUM IN OPPOSITION TO THE MOTION OF THE UNITED STATES TO DEFINE THE BURDEN OF PROOF

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000

Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000

Don K. Haycraft (Bar # 14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 662-5985

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.*

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION................................................................................................................1

ARGUMENT.......................................................................................................................2

I.  **The United States Bears the Burden of Proof on All Aspects of CWA Section 311 Penalties.** ............................................................................................................2

    A.  When Applying Penalty Provisions, the Burden of Proof Is Fixed Firmly on the Plaintiff............................................................................................2

    B.  CWA Section 311's Use of a Multi-Factor Penalty Analysis Does Not Alter the Burden of Proof. ......................................................................................5

II.  **The Burden of Proof Is Foundational to Trial Structure and Thus to Discovery and Logistics, and the Court Was Right to Call for Early Resolution of Any Dispute.**...........................................................................................10

III.  **The "Top Down" Approach Provides No Reason to Shift the Burden of Proof to the Defendants; In Any Event, the "Top Down" Approach Is Legally Invalid.** ...........................................................................................................................11

    A.  "Top Down" Calculation of a Penalty Is a Thinly Veiled Attempt to Shift the Burden of Proof from Plaintiff to Defendants.......................................11

    B.  The CWA Does Not Permit the "Top Down" Approach......................................13

CONCLUSION ....................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.,*
  897 F.2d 1128 (11th Cir. 1990) ............................................................................ 9, 13

*Baca v. Commissioner,*
  326 F.2d 189 (5th Cir. 1964) ................................................................................ 1, 13

*Coeur D'Alene Tribe v. Asarco Inc.,*
  280 F. Supp. 2d 1094 (D. Idaho 2003) ...................................................................... 3

*Colorado Trust for Prot. & Benefits v. Souder, Miller & Assocs., Inc.,*
  870 F. Supp. 2d 1173 (D. Colo. 2012) ...................................................................... 3

*Director OWCP v. Greenwich Collieries,*
  512 U.S. 267 (1994) ................................................................................................ 7, 9

*Foremost-McKesson, Inc. v. Provident Secs. Co.,*
  423 U.S. 232 (1976) ................................................................................................... 4

*General Ice Cream Corp. v. Benson,*
  113 F. Supp. 107 (N.D.N.Y. 1953) ........................................................................... 4

*Gonzales v. NOAA,*
  420 F. App'x 364 (5th Cir. 2011) .............................................................................. 2

*Gross v. FBL Fin. Servs., Inc.,*
  557 U.S. 167 (2009) ................................................................................................... 1

*Jerry Rossman Corp. v. Commissioner,*
  175 F.2d 711 (2d Cir. 1949) ...................................................................................... 3

*Massachusetts v. EPA,*
  549 U.S. 497 (2007) ................................................................................................... 7

*Prill v. NLRB,*
  755 F.2d 941 (D.C. Cir. 1985) ................................................................................. 15

*Public Citizen, Inc. v. EPA,*
  343 F.3d 449 (5th Cir. 2003) ................................................................................... 12

*Public Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc.,*
  913 F.2d 64 (3d Cir. 1990) ........................................................................................ 3

*Ross v. Marshall,*
  426 F.3d 745 (5th Cir. 2005) ................................................................................... 15

*Schaffer v. Weast,*
  546 U.S. 49 (2005) ..................................................................................................... 1

*Student Pub. Interest Research Grp. of N.J., Inc. v. Monsanto Co.*,
    18 Envtl. L. Rep. 20,999, 1988 WL 156691 (D.N.Y. 1988)....................................... 2

*Tull v. United States*,
    481 U.S. 412 (1987) .................................................................................... 3, 5

*United States v. Allegheny Ludlum*,
    366 F.3d 164 (3d Cir. 2004) ..................................................................... 14, 15

*United States v. CITGO Petroleum Co.*,
    723 F.3d 547 (5th Cir. 2013)............................................................ 6, 11, 12, 15

*United States v. Cundiff*,
    555 F.3d 200 (6th Cir. 2009) ............................................................................. 3

*United States v. Egan Marine Corp.*,
    No. 08-C-3160, 2011 WL 8144393 (N.D. Ill. Oct. 13, 2011)............................ 8, 11

*United States v. Marathon Pipe Line Co.*,
    589 F.2d 1305 (7th Cir. 1978) ........................................................................... 4

*United States v. Marine Shale Processors*,
    81 F.3d 1329 (5th Cir. 1996) ............................................................................. 6

*United States v. Municipal Auth. of Union Twp.*,
    929 F. Supp. 800 (M.D. Pa. 1996) ..................................................................... 9

*United States v. Scruggs*,
    No. G-06-776, 2009 WL 500608 (S.D. Tex. Feb. 26, 2009) .................................. 14

*United States v. Smithfield Foods, Inc.*,
    191 F.3d 516 (4th Cir. 1999) ............................................................................. 9

*United States v. Smithfield Foods, Inc.*,
    972 F. Supp. 338 (E.D. Va. 1997) ...................................................................... 9

*Waterkeeper Alliance, Inc. v. Hudson*,
    No. Civ. A. WMN-10-487, 2012 WL 6651930 (D. Md. Dec. 20, 2012)................... 3

*World Ins. Co. of Omaha, Neb. v. Pipes*,
    255 F.2d 464 (5th Cir. 1958) ........................................................................ 1, 3

## Statutes

33 U.S.C. § 1309(d) .............................................................................................. 3

33 U.S.C. § 1321(b)(3), (7)..................................................................................... 1

33 U.S.C. § 1321(b)(8) ........................................................................... 2, 7, 12, 14

## Other Authorities

Brief of the U.S. in *United States v. CITGO Petroleum Corp.*,
    No. 11-31117 (5th Cir. Apr. 13, 2012)................................................................ 8

## INTRODUCTION

"Penalties in civil actions are not favored by the courts, and should not be imposed except in cases that are clear and free from doubt."  *World Ins. Co. of Omaha, Neb. v. Pipes*, 255 F.2d 464, 472 (5th Cir. 1958).  Clean Water Act ("CWA") Section 311 authorizes a range of civil penalties for oil spills.  33 U.S.C. § 1321(b)(3), (7).  Those penalties range from zero to what the government contends is the maximum of $4,300 per barrel of oil in cases of gross negligence or willful misconduct.  *Id.* § 1321(b)(7)(A), (D) (adjusted for inflation).[1]  Penal statutes commonly allow a range of punishments, and for that and other reasons they are controlled by the canon requiring the narrow construction of such statutes.  *Baca v. Commissioner*, 326 F.2d 189, 191 (5th Cir. 1964) ("The law does not lightly impose penalties ….").

It is equally canonical that plaintiffs, like the U.S. here, bear the burden of proof by default.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) ("Where the statutory text is 'silent on the allocation of the burden of persuasion,' we 'begin with the ordinary default rule that plaintiffs bear the risk of failing to prove their claims.'  *Schaffer v. Weast*, 546 U.S. 49, 56 (2005) ….").  Nothing in CWA Section 311 alters that default rule to shift the burden of proof away from the U.S. in any action it brings for penalties under the Act.  Yet, eschewing those bedrock principles and turning the law on its head, the U.S. argues in general that "it is the defendants' burden to persuade the Court to award a penalty less than that maximum."  U.S. Br. 2.  For this, the U.S. admits "there is a paucity of precedent."  *Id.*  But what the U.S. fails to grasp is that even the cases it offers have never grappled with the general principles of statutory construction that plainly control.  And for that reason, its cases are unavailing.

Judge VanArtsdalen said it best nearly a quarter-century ago when the top-down approach the U.S. urges be used here was pioneered by a citizen enforcement group:  "I

---

[1] By referencing the $4,300 per barrel maximum penalty that the United States believes is applicable, U.S. Compl. ¶ 75, Rec. Doc. 1 in Case No. 2:10-cv-04536 (Dec. 15, 2010), BPXP does not mean to withdraw from — and indeed fully maintains here — its Ninth Affirmative Defense, Rec. Doc. 1858 at 33 (Apr. 4, 2011).  This defense notes that the actual maximum penalty amount, even were the Court to find gross negligence or willful misconduct, is $4,000 per barrel.  This is because the Coast Guard established by regulation prior to the *Deepwater Horizon* Incident a lesser inflation-adjusted penalty for CWA Section 311 violations than EPA did.  Indeed, the ninth BPXP defense is an illustration of the very same canons and principles of law operative here that any lack of clarity in CWA Section 311 (or its implementing regulations) must be construed ***against*** the U.S., given that it is a penal statute that the Court is called on to construe here.

expressly reject plaintiffs' argument that, in setting a penalty, the court should place the burden on the defendant to establish facts justifying some amount less than the maximum allowed by law.  That would, in my view, be a novel and wholly untenable principle to apply to any civil penalty statute." *Student Pub. Interest Research Grp. of N.J., Inc. v. Monsanto Co.*, 18 Envtl. L. Rep. 20,999, 1988 WL 156691, *16 (D.N.Y. 1988).  The top-down approach runs afoul of core American legal principles.

## ARGUMENT

### I.    The United States Bears the Burden of Proof on All Aspects of CWA Section 311 Penalties.

In the government's latest attempt to simplify its burdens under Section 311 of the Clean Water Act, the U.S.'s argument boils down to a proposal of a 7-to-1 split on the burden of proof for the eight penalty factors: the government proposes to shoulder the burden on BPXP's "economic benefit" from its Gulf drilling operations, while shifting to Defendants the burden on the other seven factors.  *See* U.S. Br. 5-7, 33 U.S.C. § 1321(b)(8).  The U.S.'s proposal is inconsistent with the fact that it is the plaintiff and Section 311 is a penalty provision.  Although the government is correct that precedent applying Section 311 to oil spills is virtually non-existent, general doctrines that the U.S. wholly ignores fully answer the question of which side bears the burden of proof.

### A.    When Applying Penalty Provisions, the Burden of Proof Is Fixed Firmly on the Plaintiff.

At the most fundamental level, the United States is the plaintiff, and, absent an express reason to depart from the normal rule, the plaintiff bears the burden.  Precedent shows that this rule applies in the context of civil penalties.  In order to shift the burden to the defendants, a statute must do so expressly.  Hence, in *Gonzales v. NOAA*, 420 F. App'x 364 (5th Cir. 2011), the Fifth Circuit explained that "[t]he federal regulations that implement the Magnuson-Stevens Act ***state that the violator has the burden of proving an inability to pay*** the civil penalty by providing verifiable, complete, and accurate financial information to NOAA." *Id.* at 368 (citing 15 C.F.R. § 904.108(c)) (emphasis added).  Where the penalty-imposing statute does not

2

expressly shift the burden of proof to the defendant, there is no basis for discarding the established rule that the government as plaintiff bears that burden.   Moreover, the most analogous CWA precedent at the Court of Appeals level recognizes that the burden squarely rests with the U.S.   *See Public Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 80 (3d Cir. 1990) (referring to the "***plaintiff's burden*** for this factor [*i.e.,* the economic benefit factor in the analogous 33 U.S.C. § 1309(d)] (emphasis added); *cf. United States v. Cundiff*, 555 F.3d 200, 213 (6th Cir. 2009) (holding that federal government must prove a series of elements to establish a CWA violation).[2]

This principle is consistent and operates in tandem with the equally ubiquitous rule that penalty provisions — whether civil or criminal — should be interpreted narrowly.   The Supreme Court has recognized that an analogous civil penalty provision of the Clean Water Act "exacts punishment" by going beyond what is necessary to restore the status quo and instead allowing the government to collect payments of a "punitive nature."   *Tull v. United States*, 481 U.S. 412, 422-23 & n.7 (1987); *accord* U.S. Br. 4 (conceding that "the primary purpose of civil penalties is deterrence and retribution").   As such, it is unquestionably a penalty provision.   Such provisions are "not favored by the courts" and should be applied narrowly.   *World Ins. Co. of Omaha*, 255 F.2d at 472.   Honoring the general rule that requires the plaintiff to carry the burden of proof is thus an indispensable step toward ensuring that CWA penalties apply only within the narrow boundaries envisioned by Congress.   The alternative burden favors heavy penalties over lighter ones, turning the penalty canon on its head.

More fundamentally still, the harsh "top down" approach advocated by the U.S. is incompatible with due process and a just and fair rule of law, which does not seek to maximize the penalty for every offense.   *Jerry Rossman Corp. v. Commissioner*, 175 F.2d 711, 714 (2d Cir. 1949) (L. Hand, J.) ("One may indeed argue, as the Commissioner does, that the more unsparing

---

[2] The District Courts are in accord.   *See, e.g., Coeur D'Alene Tribe v. Asarco Inc.*, 280 F. Supp. 2d 1094, 1102 (D. Idaho 2003) (concluding that the United States as plaintiff bore the burden of proving a CWA claim); *Waterkeeper Alliance, Inc. v. Hudson*, No. Civ. A. WMN-10-487, 2012 WL 6651930, at *16 (D. Md. Dec. 20, 2012) (holding that that in a citizen suit under the CWA the plaintiff bore the burden of proof); *Colorado Trust for Prot. & Benefits v. Souder, Miller & Assocs., Inc.*, 870 F. Supp. 2d 1173, 1176 (D. Colo. 2012) (stating that citizen group plaintiffs bore burden of proving that defendant violated the CWA).

and relentless was the pursuit of offenders, however innocent they may have been of any wilful violation of the regulations, the more solicitous would they become to comply, and the more effective would be the enforcement of the Act.  That has been a school of penology since the time of Draco; but it has not been the only school, and, as we read Commissioner v. Heininger, *supra*, the Supreme Court did not accept it.").

The U.S. does not address these bedrock principles.  The closest it comes is citing a case from the Seventh Circuit that purports to interpret one factor, the "degree of culpability" factor, in CWA Section 311.  U.S. Br. 8 (citing *United States v. Marathon Pipe Line Co.*, 589 F.2d 1305 (7th Cir. 1978)).  That case merely holds that the CWA is a strict liability statute, and that no greater quantum of liability is needed for the imposition of more than nominal penalties.  *Marathon Pipe Line*, 589 F.2d at 1308.  But *Marathon Pipeline* says nothing to upend the standard allocation of burdens.  It does not, for example, relieve the U.S. from the burden of showing that a discharge occurred in federally jurisdictional waters.  The case likewise does not extend strict liability to the penalty factors themselves — its sole concern was the threshold culpability necessary to impose more than nominal penalties.  *Id.*  Moreover, the strict liability nature of CWA penalties actually supports BPXP's argument for placing the burden on the government.  As the Supreme Court has explained, "[i]t is inappropriate to reach the harsh result of imposing . . . liability without fault on the basis of unclear language.  If Congress wishes to impose such liability, we must assume it will do so expressly or by unmistakable inference." *Foremost-McKesson, Inc. v. Provident Secs. Co.*, 423 U.S. 232, 251-52 (1976); *General Ice Cream Corp. v. Benson*, 113 F. Supp. 107, 109 (N.D.N.Y. 1953) ("Penalties and forfeiture are harsh and should be avoided whenever possible ...."), *aff'd*, 217 F.2d 646 (2d Cir. 1954). Properly understood, Congress's creation of strict liability for the threshold question of ***whether*** to impose a penalty under the CWA confirms that traditional standards apply to the subsidiary question of ***how much*** the penalties should be.  In the former provision, Congress showed that it knows how to alter traditional liability burdens when it wants to.  The absence of similar alteration, either "expressly or by unmistakable inference," in 33 U.S.C. § 1321(b)(8) shows that

Congress did not intend to tilt the conventional burdens-of-proof playing field in favor of the U.S.

The U.S. fails to offer any reason why the quantification of penalties under the CWA must be read to depart from the standard rule that it bears the burden in applying civil penalty provisions.  Absent a clear statement from Congress (which is manifestly lacking here), the U.S.'s clear status as a plaintiff, especially one seeking penalties under Section 311, ends the inquiry into which party bears the burden.

**B.     CWA Section 311's Use of a Multi-Factor Penalty Analysis Does Not Alter the Burden of Proof.**

Pervading the U.S.'s brief is the view that the Court's duty to consider eight penalty factors somehow justifies shifting the burden to Defendants.  *E.g.,* U.S. Br. 2, 4.  If anything, the wide range of penalties authorized by Section 311 is a reason for insisting on consistency and rigor in the process by which those penalties and any facts underlying the factors are found.

This Court enjoys a certain latitude in selecting a penalty amount under Section 311.  Conceptually, the CWA authorizes penalties as low as zero dollars, 33 U.S.C. § 1321(b)(7)(A), and as high as $4,000 per barrel of oil, *supra* n.1.  The U.S. misses that this is the conceptual starting point in the statute, instead arguing that "[a] civil penalty is mandatory," as if a penalty range that includes zero supported any inference whatsoever.  U.S. Br. 4.  Adding to this mistake about where the statute begins, the disfavor attending civil penalty provisions and the silence of the statute in attempting to reallocate the burden of proof is enough to defeat any proposed departure from the traditional allocation of the burden of proof to the U.S. here.

The range of judicial discretion available when applying the eight factors is likewise irrelevant to the question of which party bears the burden of proof.  The Supreme Court has noted that "highly discretionary calculations that take into account multiple factors are necessary in order to set civil penalties under the Clean Water Act."  *Tull*, 481 U.S. at 427.  That discretion is not absolute, however.  It must rely on legally and factually correct premises about the violation and the specific penalty factors at issue.  The Fifth Circuit has twice vacated district courts' assessment of CWA penalties because the calculations in the trial court were built on

faulty foundations.  *See United States v. CITGO Petroleum Co.*, 723 F.3d 547, 551 (5th Cir. 2013); *United States v. Marine Shale Processors*, 81 F.3d 1329, 1339 (5th Cir. 1996).  These cases are instructive.  The error in *CITGO* was a legal one (failing to make a finding on the amount of economic benefit derived by the polluter, 723 F.3d at 553), while the *Marine Shale* court erred in a factual finding (specifically, the "characterization of [defendant's] motive," 81 F.3d at 1339).  The lesson from Fifth Circuit precedent is that the CWA affords a certain degree of judicial latitude, but only when firmly cabined within the statute's legal parameters and consistent with the underlying facts of the case.

For this controversy, the burden of proof is a legal issue that permeates each of the eight factors.  The U.S. is correct that the factors are not akin to the elements of a cause of action (which was one of BPXP's points in opposing the U.S.'s seriousness motion, where the U.S. is arguing spills are either serious or not serious) — as to each of which the plaintiff must prevail in order to win.  U.S. Br. 2.  Nevertheless, *CITGO* illustrates that each factor demands independent analysis.  *See* 723 F.3d at 553-54 (walking through each of the factors and passing on whether the district court's relevant findings on that factor were reversible error or not).  In fact, the entire basis for vacating and remanding *CITGO* was the absence of a distinct finding on one of the eight factors.  *Id.*  Because each factor requires its own analysis and application of law to fact, courts must be governed by a rule of decision when the factual evidence is in equipoise as to any factor.

In this way, the United States as CWA plaintiff was assigned the traditional plaintiff's burden of proof by Congress, which is well aware of the default rule the Supreme Court established long ago.  That the CWA Section 311 penalty factors are not binary, *see* Rec. Doc. 12463 (Mar. 6, 2014), does not minimize the need for such a rule.  Even noting that the factors operate along a continuum (which was BPXP's key point in the seriousness dispute), facts underlying factors — as distinct from the factors themselves — are binary.  This is the nature of facts — they either are or they are not.  And it is precisely for situations in which the U.S. contends some fact *is true* and Defendants then counter, arguing such a fact *is not true*, that the

law first defined the concept of which side in contested litigation bears the burden of proof.  *See, e.g., Director OWCP v. Greenwich Collieries*, 512 U.S. 267, 281 (1994) (inherent in the allocation of a burden of proof is that "when the evidence is evenly balanced," the party bearing the burden "must lose").  For example, if the United States contends that a certain species was severely impacted by the spill while BPXP maintains that it was not, the court will need to resolve the dispute according to standard burdens of proof.  Before the court can apply its discretion to weigh the evidence on the seriousness of species impacts and put such evidence in context (*i.e.*, by fully considering the seriousness factor concerning species impacts), it must have first resolved any underlying factual disputes.  Ignoring the burden of proof in the name of judicial discretion, as the government calls on this Court to do, is thus an invitation to legal error.

The most peculiar aspect of the government's position is that, of the eight CWA penalty factors, the United States accepts its burden of proof on one, while arguing that Defendants bear the burden on the other seven.  This position makes no sense.  Nothing in CWA Section 311 purports to split apart the various factors and afford them different treatment for burden-of-proof purposes.  Statutory grants of discretion are not "roving license[s] to ignore the statutory text," *Massachusetts v. EPA*, 549 U.S. 497, 533 (2007), which can and must take on their meaning in light of the application of the ordinary rules of statutory construction.  Also, the *Gross* and *Weast* cases from the Supreme Court make clear that in the face of statutory silence, burdens of proof should not be assigned to defendants.  That default rule militates even more strongly against adopting a position of ***selectively*** assigning burdens of proof to a defendant of only a subset of statutory provisions when the statute is wholly silent on the assignment of burdens of proof.

The government's position appears to be that if a defendant derived only a slight economic benefit from the conduct leasing to an oil spill, *see* 33 U.S.C. § 1321(b)(8), then, pursuant to a single decision from the Northern District of Illinois, the defendant must bear the burden of proof on the remaining seven factors in arguing for a penalty less than the statutory maximum.  *See* U.S. Br. 5-7.  The government's reasoning here is exactly backwards.

Of all the penalty factors set forth in environmental statutes, "economic benefit" has been the one that the United States has emphasized the most. For example, it its opening appellate brief before the Fifth Circuit in *CITGO*, the United States argued that economic benefit "is a critical consideration in a penalty determination because 'the goal of the economic benefit analysis is to prevent a violator from profiting from its wrongdoing.'" Brief of the U.S. in *United States v. CITGO Petroleum Corp.*, No. 11-31117, at 55 (5th Cir. Apr. 13, 2012). The United States further argued that the economic benefit "inquiry is necessary if the penalty scheme is to have credible deterrent effect." *Id.* The Government argued that the penalty set by the district court should have been higher because the economic benefit was great, and the Court of Appeal indeed remanded for a further economic benefit consideration. Now, remarkably, the United States essentially turns around 180 degrees to argue that CWA 311 penalties should presumptively be higher — with the Court's analysis to begin at the statutory maximum and having to justify any reductions — precisely because the economic benefit is nominal or non-existent. But that fact means that any defendant in that position is ***not*** starting off in the black with an unrecouped economic benefit (in fact, it beyond dispute here that BPXP is already tens of billions of dollars in the red), and so any penalty will have a further deterrent effect. The penal canon as applied to CWA Section 311 requires all penalty analysis to proceed from the bottom-up. But even if the penalty methodology could vary with the facts, if ever there were a case to start at zero and rigorously justify any penalty based on the factors, then it is this case.

The United States' new approach is based on *United States v. Egan Marine Corp.*, No. 08-C-3160, 2011 WL 8144393 (N.D. Ill. Oct. 13, 2011).[3] Wielding this case, it asserts that the "top-down" approach for calculating penalties must apply where the second penalty factor indicates that the defendant did not derive significant economic benefit from the events leading to the spill. U.S. Br. 5; *see also infra* Part III (discussing the "top-down" approach generally).

---

[3] *Egan Marine* offers scant explanation for why it places such pivotal weight on the second factor. 2011 WL 8144393, at *6. The relevant passage states, in its entirety: "In this case, no one appears to contend that EMC stood to gain significantly from this explosion or even from any of the lax safety practices alleged by the Government. Accordingly, the 'bottom-up' approach seems inapposite." *Id.* For its part, the United States does nothing to put flesh on the bones of *Egan Marine*'s conclusory holding. As discussed *infra* Part III, this Court should demand better authority for such a rewriting of the Clean Water Act.

On this one factor, the government concedes that it has the burden, but it maintains that carrying this burden has the effect of shifting all the other burdens to BPXP: "[W]here the United States has carried its . . . burden of producing evidence showing that 'top down' is the right approach [*i.e.,* showing limited economic gain], the burden is now on the defendants to persuade the Court to order a penalty less than the statutory maximum." *Id.* at 7.

How as single factor (the "economic benefit to the violator") can shift the burden on all of the others — or even why the government uniquely has the burden on that factor alone in the first place consistent with the government's general theory of BPXP bearing the burden on all penalty factors — goes entirely unexplained.[4]  What is clear, however, is that the government's position is utterly unmoored from the statute.  Since the CWA uses the same language to introduce all eight factors in a single list, the government simply has no textual or structural basis for treating "the economic benefit to the violator" differently from the others.  Any burden-of-proof argument based on the text and structure of the CWA must therefore assign the burden on all eight factors to one party.[5]  In fact, the Eleventh Circuit has vacated roughly analogous CWA penalties that appeared to turn on only one factor.  *Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1142 (11th Cir. 1990) (finding an abuse of discretion when the court

---

[4] Indeed, heightening the irrationality of *Egan Marine* on this point, the case's reasoning is entirely upside-down.  One would think that in order to level the playing field as between violators that derived different levels of economic benefit from the same violation, the greater the economic benefit a violator has secured by its conduct, the greater any penalty should be so as to erase the resulting economic benefit and punish such a violator.  Whereas violative conduct that did not result in as great an economic benefit would warrant a lesser penalty.  Yet *Egan Marine* effectively discards the bottom-up method that is more favorable to a violator than the top-down method, *see United States v. Smithfield Foods, Inc.*, 191 F.3d 516, 528 (4th Cir. 1999), because economic benefit is low, which should instead tend to minimize rather than maximize the penalty.  *Egan Marine*'s conclusion that the bottom-up method as discussed in case law starts with economic benefit to the violator is correct as far as it goes.  *See, e.g., United States v. Smithfield Foods, Inc.*, 972 F. Supp. 338, 354 (E.D. Va. 1997).  But *Egan Marine* is **unique in its conclusion** that where there is little or no economic benefit, the "top down" approach of penalty maximization must instead be used.  *Egan Marine*'s leap of illogic in that respect runs entirely contrary to the "bottom up" case law.  *See, e.g., United States v. Municipal Auth. of Union Twp.*, 929 F. Supp. 800, 806 (M.D. Pa. 1996) (noting that the "bottom up" approach is the majority view and explaining that the logic of the "bottom up" approach's focus on economic benefit is that deterrence requires that in addition to recouping economic benefit, the penalties set based on a consideration of the other penalty factors must provide additional deterrence on top of erasing economic benefit).  Whereas, under *Egan Marine*'s approach, the lack of economic benefit somehow automatically translates into maximized penalties, defeating the "bottom up" approach's whole point that violations without economic benefit are **less blameworthy**.

[5] In this brief, BPXP adopts the Supreme Court's understanding of a burden of proof as a "burden of persuasion."  *See Greenwich Collieries*, 512 U.S. at 272-76 (describing two-plus centuries of legal development and noting this as the consensus "generally accepted in the legal community").  The government has not called for the contrasting "burden of production" to be assigned in any particular way (not even in footnote 8 of its brief, which briefly adverts to burdens of production).  This is likely because BPXP's incentives to present evidence on the factors tending to reduce the penalty are crystal clear and because if no evidence were presented, for instance, on mitigation (and that is a phantom problem here), then a violator would not be able to claim mitigation efforts should reduce the penalty.

made its determination "based solely on the good faith efforts of [defendant] to comply with the law," which represents only one of the factors in 33 U.S.C. § 1319(d)).

Because the statutory text does not authorize, let alone clearly authorize, any departure from the standard rule that plaintiffs bear the burden of proof, the United States must carry the burden on any factual issues that bear on penalty size.  This is especially true in light of courts' narrow construction of penalty provisions.  By contrast, the U.S. strains to shift most of the burden to Defendants based on an unpublished and ill-reasoned decision from a single district court (in which the United States sought far-lesser penalties in the thousands of dollars) and adopt an unnatural construction of the CWA that places seven-eighths of the burden on Defendants.  This Court should reject the government's arbitrary statutory contortions.

## II.   The Burden of Proof Is Foundational to Trial Structure and Thus to Discovery and Logistics, and the Court Was Right to Call for Early Resolution of Any Dispute.

The United States refuses to accept that it is the plaintiff.  It argues that the burden of proof is irrelevant to case management because "any concerns that burden of proof questions may rise from the management of expert report deadlines . . . can be addressed by adopting the United States' proposal that expert reports should be served in two simultaneous rounds."  U.S. Br. 1.  The government's proposed "solution" is effectively a denial of the parties' relative roles in this Phase.  It is a procedural counterpart to the government's legal error of maintaining that it need not act like a plaintiff in shouldering the burden of proof.  As with the latter error, this Court should reject this companion argument as well.

In anticipation of the pre-trial conference scheduled for March 21, 2014, this Court ordered the United States to "file a brief detailing what it believes is the burden of proof for each [penalty] factor with citation to authority."  Order, Rec. Doc. 12392, at 6 (Feb. 21, 2014).  The Order was partly in response to Anadarko's observation that the government had asserted inconsistent positions on which party bears the burden on the various factors.  *See* Case Management Submission, Rec. Doc. 12341, at 6 (Feb. 14, 2014).  Anadarko also pointed out that the allocation of burdens has consequences for the sequence of certain discovery procedures, especially the preparation and disclosure of expert reports.  *Id.*  Anadarko observed, and BPXP

10

agrees, that allowing the United States to insist upon simultaneous production of expert reports will give the government an "unfair advantage."  Instead, the government, as the plaintiff and party bearing the burden of proof, should make its reports available first, allowing Defendants' experts to respond — as the Court required in the Phase 2 trial.  After all, it is Anadarko and BPXP that are on trial initiated by a plaintiff who is indisputably seeking the largest CWA penalties in American legal history.

The U.S. cites no authority supporting its request to shrug off the important burden-of-proof issue simply because the Court could potentially order simultaneous discovery.  The self-serving procedural points the U.S. makes here themselves just embody the government's predetermined conclusion as to which of the parties should enjoy the traditional reactive advantages afforded to defendants, especially in civil penalty actions.

### III.    The "Top Down" Approach Provides No Reason to Shift the Burden of Proof to the Defendants; In Any Event, the "Top Down" Approach Is Legally Invalid.

What the United States casts as little more than one of two competing penalty accounting "options" is, as Judge VanArtsdalen recognized in *Monsanto*, actually a full-blown shift of the burden of proof onto BPXP and Anadarko with no foundation in logic or in the text of the CWA.  The Fifth Circuit has never adopted the so-called "top down" approach, and this Court should not adopt it now either.  Indeed, this case should result in the interment of that deeply flawed methodology to civil penalty assessment.

#### A.    "Top Down" Calculation of a Penalty Is a Thinly Veiled Attempt to Shift the Burden of Proof from Plaintiff to Defendants.

For all of the reasons discussed in Part I *supra*, the CWA neither authorizes nor requires courts to place the burden on defendants to advocate for lesser penalties.  Yet, the "top down" approach does precisely that.  As the *Egan Marine* court summarized it, "[t]he 'top-down' approach starts with the maximum applicable penalty, and deducts based on the mitigating factors."  2011 WL 8144393, at *6.  By transforming what the Fifth Circuit calls "penalty factors," *CITGO*, 723 F.3d at 551, into "mitigating factors," the *Egan Marine* court shifts the burden to the party seeking mitigation and away from the party that, far more fundamentally, is

seeking penalties.  If a court follows this radical recharacterization of the Section 311 factors, the resulting flip in the burden of proof appears perfectly natural.

The transformation from penalty factors to mitigating factors is foreclosed by Fifth Circuit precedent and the text and operation of the CWA, however.  Although the Fifth Circuit has not yet ruled on whether the "top down" or "bottom up" method is required for calculating CWA penalties, *CITGO*, 723 F.3d at 552, it has twice described the Section 311 factors and their analogues in other statutes as "penalty factors."  *Id.* at 551; *Public Citizen, Inc. v. EPA*, 343 F.3d 449, 462 (5th Cir. 2003) (describing penalty factors in the Clean Air Act, 42 U.S.C. § 7413(e)).  Moreover, the text of the CWA confirms that the factors in question are best understood as building from the bottom up to a penalty the District Court must justify its adoption of, not chipping away at a penalty that is otherwise clear in its maximal amount.  ***First***, the statute introduces the factors with: "***In determining*** the amount of a civil penalty under paragraphs (6) and (7), the Administrator, Secretary, or the court, as the case may be, ***shall consider*** . . . ." 33 U.S.C. § 1321(b)(8) (emphasis added).  This language accordingly indicates that the factors drive the ***creation*** of a penalty, rather than the reduction of some predetermined starting point specified elsewhere in the same statute.  If the statute operated in the opposite direction, it would announce the maximum penalty and then explain how a defendant might whittle it down; it does not.  ***Second***, the statute places responsibility on the "Administrator, Secretary, or the court" ***to*** "***consider***" the factors, which is consistent with assigning decisionmakers in administrative or judicial enforcement cases the responsibility for deciding on the penalty amount.  Thus, overall, the concepts of "determining the amount of a civil penalty" after "consider[ing]" eight factors provide strong textual support for starting from zero and working up to a penalty of some determined and considered size.  CWA Section 311 does not reflect that Congress established maximum penalties as a default rule and then set courts (or agencies, when penalties are set administratively) to the task of justifying a departure downward from maximized penalties.

Although the United States purports to be choosing between two accounting methods, the effect of choosing the "top down" approach is to shift the burden to Defendants in contravention

of binding precedent and the text of the CWA, both of which make clear that Section 1321(b)(8) contains penalty factors, not mitigation factors. The shift is linguistically subtle but enormously consequential, and this Court should not allow it to slide by.

**B.** **The CWA Does Not Permit the "Top Down" Approach.**

With the true stakes in focus, this Court should not permit the U.S. to rewrite the CWA. The text affords no support for the "top down" approach, and the courts that have adopted it have failed to explain how they can read the CWA differently than every other penal statute, let alone explain what words in the CWA could plausibly be read to overcome the default rule that the plaintiff seeking penalties bears the burden of proof. The "top down" approach is legal error, and the Court should take the first step in this historically significant case to put a swift end to it.

The CWA asks courts to exercise their discretion in assessing penalties along a continuum from zero to $4,000 per barrel. *See supra* n.1. Aside from a congressionally defined minimum penalty of $100,000 (pre-inflation) in cases of gross negligence or willful misconduct, *id.* § 1321(b)(7)(D), the statute does not in any fashion guide the Court to the high end of the penalty range. In fact, the inclusion of a $100,000 minimum penalty in cases of elevated culpability demonstrates that Congress knew how to impose a mandatory minimum penalty when it wanted to. Reading into this reticulated penalty scheme a presumption that the defendant should receive the maximum penalty is a departure from the text of the statute and an inherent abuse of discretion. *See generally Tyson Foods*, 897 F.2d at 1142 (noting that improper consideration of penalty factors constitutes an abuse of discretion). Section 311 stands silent, placing no thumb on the scale in favor of maximum penalties. This statutory silence, combined with the canon that "[t]he law does not lightly impose penalties," *Baca*, 326 F.2d at 191, is sufficient to require a clear statement from Congress before applying the enormously draconian "top down" method of penalty calculation the U.S. urges.

The U.S. fails to justify attaching its burden-shifting, "top down" approach to the CWA. As summarized above, linchpin of the government's argument for applying the "top down" method is its own asserted factual finding — normally a job for a court — that it has already

13

proved that Defendants derived little economic benefit from the conduct leading to the spill.  *See supra* Part I.B; *see also* U.S. Br. 5-7.  As the government summarizes its position, "[t]he facts already submitted in evidence in this case weigh heavily in favor of a top-down approach to civil penalty calculation."  U.S. Br. 9; *id.* at 5 ("The 'top-down' method is the most appropriate means . . . under the facts of this case.").  But burden of proof is not a factual issue.  It is purely legal. The government's confusion arises from concluding that *Egan Marine*'s illogical and unlawful holding that low "economic benefit to the violator," 33 U.S.C. § 1321(b)(8)[2], automatically triggers the "top down" method for all of the other factors is somehow binding in CWA penalty cases.  U.S. Br. 5-6.  Seizing on this theory, the government argues that "[b]ecause the defendants, as in *Egan Marine*, realized only a comparatively small economic benefit . . . the Court should calculate the civil penalty using the 'top-down' approach . . . ."  *Id.* at 6.  There is no statutory authority for creating this trigger.  *Egan Marine* itself cites nothing for the inference that *de minimis* economic benefits justify shifting the burden of proof to the defendant, and no other courts have cited *Egan Marine* for the proposition.  The U.S. cannot be allowed to seize on two authority-free sentences in an unpublished decision to justify a radical change in the text of the CWA read against the backdrop of the ordinary canons of statutory interpretation.

The remaining cases in the U.S.'s brief are inapposite for other reasons.  Many of them simply note that both the "top down" and "bottom up" approaches to CWA penalties were used, without sanctioning one or the other method.  For example, the U.S. cites *Tyson Foods* to support its claim that "the 'top-down' method is the most appropriate means for calculating a civil penalty under the facts of this case."  U.S. Br. 5 n.4.  That interpretation is an overly ambitious reading of *Tyson Foods*, in which the method of calculating CWA penalties was not before the court.  *See also United States v. Allegheny Ludlum Corp.*, 366 F.3d 164, 178 n.6 (3d Cir. 2004) (noting the existence of "top down" cases but considering and approving a penalty calculated under the "bottom up" approach).  Other cases in the U.S. brief simply misstate controlling precedent.  *Compare United States v. Scruggs*, No. G-06-776, 2009 WL 500608, at *3 (S.D. Tex. Feb. 26, 2009) ("The Fifth Circuit endorsed the 'top-down' methodology for calculating the

14

appropriate penalty") *with CITGO*, 723 F.3d at 552 ("This circuit has never held that a particular approach must be followed").  Many of the cases refusing to scrutinize the government's "top down" theory do so on the grounds that courts enjoy discretion in calculating penalties.  *E.g., Allegheny Ludlum*, 366 F.3d at 178 n.6.  Here, however, the issue is front and center.

Critically, a discretion misunderstood is a discretion abused.  *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) ("A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence.") (internal quotations and citations omitted); *cf. Prill v. NLRB*, 755 F.2d 941, 942 (D.C. Cir. 1985) ("Because the Board misconstrued the bounds of the law, its opinion stands on a faulty legal premise and without adequate rationale.").  As a result, to even select a penalty amount while operating under the serious mistake that the "top down" approach is a viable model is itself an error of law and thus an abuse of discretion.  The misapprehension that the "top down" approach is a valid option thus must be rejected — else it threatens to infect the entire trial with legal error.

The single most accurate statement in the government's brief is that there exists a "dearth of case law" discussing the burdens that apply in Section 311.  U.S. Br. 9.  The lack of controversy on this point does not, however, support the government's ambitious reading of the illogical *Egan Marine* case.  Rather, it shows that the text of the CWA carries its ordinary meaning, as interpreted against the traditional presumptions that apply to penal statutes.  The "top down" approach remains a dangerous innovation ignoring the statutory text and the controlling canons.  This Court should expressly reject the "top down" approach and require that the United States shoulder the customary burden of all plaintiffs seeking civil penalties.

## CONCLUSION

This Court should resolve the question of which party bears the burden of proof on CWA Section 311's penalty factors.  Longstanding canons of interpretation and general precedent confirms that the party seeking civil penalties appropriately bears the burden of proof.  Moreover, the top-down method — contrary to both the penal canon and to the rules on assigning burdens of proof — should be rejected.  The United States' motion must be denied.

March 17, 2014

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000

Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000

Respectfully submitted,

 /s/ Don K. Haycraft
Don K. Haycraft (Bar # 14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 662-5985

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of March 2014.

/s/ Don K. Haycraft
Don K. Haycraft