UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| In Re: | Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : : | MDL NO. 2179 SECTION: J JUDGE BARBIER |
| This Document Relates to: Case No. 2:10-cv-04536 | | : : | MAG. JUDGE SHUSHAN |

**UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION FOR DISCOVERY REGARDING THE FINANCIAL INFORMATION AND ACTIVITIES OF SUBSIDIARIES AND AFFILIATES AS RELEVANT TO THE ECONOMIC IMPACT OF A CLEAN WATER ACT CIVIL PENALTY ON ANADARKO PETROLEUM CORPORATION**

**INTRODUCTION**

This submission responds to the Court's Order Regarding Preparation for Discovery in the Penalty Phase, Rec. Doc. 12392, requiring the United States to submit a motion if it contends that the financial information or activities of any APC subsidiaries or affiliates should be considered in connection with the economic impact penalty factor set forth in Section 311(b)(8) of the Clean Water Act ("CWA"), 33 U.S.C. § 1321(b)(8). The Court has held Anadarko Petroleum Corporation ("APC" or "Anadarko") strictly liable under the CWA Section 311 because it was an admitted owner of the Macondo Well at the time of the blowout.[1] The CWA now directs that the Court "shall consider" each of the eight statutory penalty factors in CWA Section 311(b)(8), including the economic impact of the penalty on the violator. The Court may consider the economic impact factor in determining a penalty amount appropriate to deter future violations by the company; a penalty "must be high enough to insure that polluters cannot simply

---

[1] Order and Reasons [As to the United States', Transocean's, and Anadarko's Cross-Motions for Partial Summary Judgment Regarding Liability under the CWA and OPA] (Feb. 22, 2012), Rec. Doc. 5809, at 23-24.

1

absorb the penalty as a cost of doing business." *PIRG v. Powell Duffryn Terminals, Inc.*, 720 F. Supp. 1158, 1166 (D.N.J. 1989); *United States v. Gulf Park Water Co., Inc.*, 14 F. Supp. 2d 854, 869 (S.D. Miss. 1998) (same).

In an effort to limit discovery and evidence on this factor as to Anadarko, the United States proposed a stipulation stating that Anadarko could pay $4.6 billion (its maximum exposure for a Clean Water Act civil penalty assuming a 5 million barrel discharge of oil) without a material impact on the company's consolidated financial position, results of operations, or cash flows. Anadarko declined to agree to this stipulation, and Anadarko may put on an affirmative case at trial that its penalty should be decreased because it lacks the ability to pay a large penalty amount.[2] Accordingly, the United States seeks discovery into the finances of APC (the parent corporation), as well as APC's assets and liabilities, which include information related to the subsidiaries and affiliates it owns. Exactly how those finances collectively impact APC's ability to pay a large penalty without materially impacting its ongoing business operations is the subject of expert opinion, and would be detailed in an expert report. The value of APC's ongoing business operations and its ability to generate cash for penalty purposes is not a question of law, but rather of fact, and an expert opinion on the subject is likely to be helpful to the finder of fact. Fed. R. Evid. 702. As the United States has stated in prior filings,[3] we are prepared to disclose experts on this topic.

APC is the parent company and therefore the discovery issues are very different from the detailed discovery required of BPXP. Nonetheless, some targeted discovery into the status and condition of at least certain wholly-owned subsidiaries is warranted, because (1) it appears that

---

[2] We do not know whether APC will put on an affirmative case on this factor until it provides its Rule 26(a) disclosures or expert reports, or the stipulations required by the Court.

[3] *See* Clean Water Act Penalty Phase Rule 26(f) Report of the United States (Feb. 14, 2014), Rec. Doc. 12351, at 10-11.

Anadarko has moved operations and assets from defendants APC and Anadarko E&P Company LP (AE&P) during the pendency of this lawsuit; and (2) it appears that some of the assets were moved into a subsidiary of APC, formerly known as Kerr-McGee (KMG), which now is subject to a multi-billion dollar ruling in unrelated litigation. That ruling could impact assets necessary for payment and/or quantities of any penalty imposed in the instant case. If APC agrees to stipulate that it can pay a penalty at the statutory maximum without adversely affecting its business operations, however, then the United States would agree that this discovery is no longer necessary.

## BACKGROUND

In December 2013, the United States proposed a set of stipulations regarding the financial position of APC.  Subsequently, the United States exchanged draft requests for production with Anadarko seeking limited and targeted information about its subsidiaries and affiliates.  Ex. 1 (draft RFPs exchanged with Anadarko).  The United States in the draft RFPs sought organizational charts or summary information documenting the corporate relationship between APC and its subsidiaries and affiliates; consolidated financial statements at the subsidiary level; and consolidated U.S. Federal income tax returns including all subsidiary level work sheets, for years 2005-2014.  *Id.* at 8, 10-12.  In addition, the United States included requests for documents associated with the reorganization of one of APC's subsidiaries, AE&P, *id.* at 12, which is also a defendant in the United States' OPA and CWA action although the United States has stipulated that it will not seek a CWA penalty from AE&P.[4]  APC would not agree to a stipulation indicating that it could pay a maximum penalty of $4.6 billion without undue hardship.  Ex. 2, at 17 (Anadarko's redline to stipulations proposed by United States).  Negotiations involving the

---

[4] Stipulated Order Regarding Anadarko Entities, Rec. Doc. 5930.

3

stipulations and document requests are ongoing[5] but Anadarko has indicated that a "significant discovery dispute is looming," particularly with respect to discovery of financial information and activities regarding Anadarko's subsidiaries.  Case Management Submission by Anadarko Petroleum Corporation and Anadarko E&P Company LP (filed Feb. 14, 2014), Rec. Doc. 12341, at 4.  Even though the United States is submitting this brief to meet the Court's deadline, the United States expects that discussions with Anadarko will continue in an attempt to resolve this and any other discovery disputes.

## ARGUMENT

The Supreme Court in *Tull v. United States* held that a court may "seek to deter future violations by basing the penalty on its economic impact."  481 U.S. 412, 423 (1987).  *See also Gulf Park*, 14 F. Supp. 2d at 859 n.3.  In strengthening the penalty provisions in Section 311(b) in 1990, Congress recognized that "what we need to do is raise the cost of carelessness and to emphasize prevention.  One of the best ways to induce the oil industry to operate more safely, I believe, is to make sure that they pay heavily when there is a spill."  S. Hrg. 101-265 at 155, Three Recent Oil Spills Before the S. Comm. of Environment and Public Works, 101st Cong. 265 (1989) (statement of Rep. Schneider).  Otherwise, the violators and others will be tempted to roll the dice on the monetary tradeoffs between fulfilling their duty to prevent oil spills and paying to pollute the environment.  A penalty amount that is inadequate to achieve deterrence is of particular concern in cases involving companies with the financial resources of Anadarko.

---

[5] Although the February 14, 2014 Anadarko Case Management Submission is not specific, based on those discussions, the United States believes that the potential dispute arises from questions concerning the reorganization and transfer of assets among or between subsidiaries, and that the requests concerning organizational charts and related summary information about the corporate structure is not controversial.  Moreover, if Anadarko and the United States finalize the stipulation regarding the economic impact of the penalty, the United States indicated that it will withdraw several RFPs.  Of course, with the new discovery limits, the precise RFPs and numbering may be modified.

APC is a parent company that holds or wholly owns a large number of subsidiaries, which contribute significantly to its value. Under this factor, it is appropriate for a court to consider Anadarko's market value, assets, earnings, debt capacity and prospective cash flows, all of which are inherently intertwined with those of its subsidiaries.

Currently, the finances of APC subsidiary companies—and full nature of APC's financial stakes in and relationships with its subsidiaries—are "black boxes" obscured by the consolidated public statements of the parent company. As a general matter, transactions among affiliates within the APC corporate group are not arms-length. By their very nature, they present opportunities for APC to tactically and independently manage earnings at the subsidiary level, and then publicly report only the consolidated results.

In the instant case, discovery into APC's financial relationships and transactions with its subsidiaries, including information related to any asset transfers made among the entities, is warranted due to two recent and concurrent events. First, approximately a year-and-a-half after the April 2010 blowout, Anadarko began to consolidate its oil and gas leases in the Gulf of Mexico under one of its subsidiaries, Kerr-McGee Oil & Gas Corporation,[6] which is now operating under a new name, Anadarko US Offshore Corporation.[7] APC and AE&P, who in June 2011 collectively held an interest in nearly 370 leases in the Gulf of Mexico, have now entirely divested their interests in those leases, primarily, if not exclusively, to Anadarko US

---

[6] Kerr-McGee Oil & Gas Corporation, while not a defendant in this litigation, was involved in the Macondo Prospect as a co-signatory, with APC and BP Exploration & Production Inc., to the Well Participation Agreement, which provided, if feasible, for the processing and handling of all production from the Macondo Prospect Area via a subsea tieback to the Pompano Platform, which was co-owned by BP and Kerr-McGee Oil & Gas Corporation. *See* Ex. 3 (Excerpts of Well Participation Agreement, Ex. 1943, at 1, 5).

[7] *See* Ex. 4 (documentation submitted to Bureau of Ocean Energy Management (BOEM) on name change) (Public Information Query for ACTIVE-INACTIVE-LEASES, *available at*: https://www.data.boem.gov/homepg/data_center/other/WebStore/pimaster.asp?appid=11).

Offshore.[8]  Also, effective January 1, 2013, AE&P converted to a Delaware limited liability company and changed its name to Anadarko E&P Onshore LLC.[9]  Any remuneration to APC or AE&P (or its successor company) by Anadarko US Offshore is masked in consolidated financial statements, and investigation into subsidiary-level financial statements is required to determine whether fair market value was obtained for these asset transfers, and ultimately what impact the transfers had on the financial condition of the parent company.

Second, information that sheds light on APC's relationship to the Kerr-McGee subsidiary and on these transfers from APC into Kerr McGee is also potentially relevant in light of a recent bankruptcy court decision that Kerr-McGee Corporation and certain related defendant companies, all of which since a 2006 acquisition are subsidiaries of APC, fraudulently conveyed assets to avoid its environmental liabilities.  *See In re Tronox Inc.*, 503 B.R. 239 (Bkrtcy. S.D.N.Y. 2013).  Depending on the outcome of future proceedings, the damage amount to be imposed on the APC subsidiaries could be between $5.1 and $14.1 billion.  *Id.* at 337.  The United States believes these assets are still available in evaluating the economic impact of the CWA penalty on Anadarko but needs to better understand the assets transfers from APC and AE&P to Kerr-McGee to determine whether there was any overall financial impact on the parent company.

---

[8] *Compare* Ex. 5, at 7 (report showing AE&P interest in 49 GOM leases as of June 6, 2011) *and* Ex. 6, at 8-9 (report showing APC interest in 318 GOM leases as of June 6, 2011) *to* Ex. 7 (excerpted report showing APC and AE&P with no active GOM lease interests and Anadarko US Offshore Corporation with approximately 400 lease interests) ("Lease Owner by Owner Report," *available at*: https://www.data.boem.gov/homepg/data_center/leasing/leasing.asp).  *See also* Exs. 8, 9 (showing example assignments of lease interests from APC and AEP, respectively, to Anadarko US Offshore in 2011-12 timeframe) (Public Information Query for ACTIVE-INACTIVE-LEASES, *available at*: https://www.data.boem.gov/homepg/data_center/other/WebStore/pimaster.asp?appid=11).

[9] List of Subsidiaries at December 31, 2012, Exhibit 21 to Anadarko SEC Filing (*available at:* http://www.sec.gov/Archives/edgar/data/773910/000119312513065430/d464688dex21.htm).

These recent events demonstrate the need to obtain discovery of APC's subsidiaries and affiliates, as such information may be relevant to the financial status of the parent company, and in assessing an appropriate penalty for APC that will adequately deter future violations. As the draft document production requests show, the United States is seeking limited and targeted discovery, and it is expected that any evidence at trial will be through an expert witness who relies on the defendants' own documentation.[10]

## CONCLUSION

The Motion of the United States should be granted.

Respectfully submitted,

| | |
|---|---|
| BRIAN HAUCK | ROBERT G. DREHER |
| Deputy Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| PETER FROST | SARAH HIMMELHOCH |
| Director, Torts Branch, Civil Division | MICHAEL MCNULTY |
| Admiralty and Aviation | Senior Litigation Counsel |
| SHARON SHUTLER | NANCY FLICKINGER |
| MALINDA LAWRENCE | Senior Attorney |
| LAURA MAYBERRY | PATRICK CASEY |
| Trial Attorneys | RICHARD GLADSTEIN |
| R. MICHAEL UNDERHILL, T.A | DANIEL S. SMITH |
| Attorney in Charge, West Coast Office | Senior Counsel |
| | ABIGAIL ANDRE |
| | A. NATHANIEL CHAKERES |
| | ANNA CROSS |
| | RACHEL HANKEY |
| | JUDY HARVEY |
| | RACHEL KING |
| | ERICA PENCAK |
| | BRANDON ROBERS |
| | GORDON YOUNG |
| | Trial Attorneys |

---

[10] As previously explained in our other submissions, the facts discovered may be relevant to the Court's consideration under multiple factors under Section 311(b)(8) of the CWA.

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
Facsimile:   202-514-2583
E-mail:  steve.o'rourke@usdoj.gov
KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana

Attorneys for the UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

By email of today's date, I was instructed to serve this document by email only. I hereby certify that the above and foregoing document has been served on appropriate Penalty Phase counsel by e-mail.

Date:  March 3, 2014.                                      /s/  Steven O'Rourke
                                                           U.S. Department of Justice