# Exhibit 1

To United States' Memorandum in Support of Motion for Discovery
Regarding the Financial Information and Activities of Subsidiaries and
Affiliates as Relevant to the Economic Impact of a Clean Water Act Penalty
on Anadarko Petroleum

| From: | O'Rourke, Steve (ENRD) |
|---|---|
| Sent: | Friday, January 17, 2014 4:16 PM |
| To: | Lotterman, Thomas R.; Kirby, Ky E.; Dragna, Jim; *Joel.Gross@aporter.com (Joel.Gross@aporter.com); Karis, Hariklia (hkaris@kirkland.com); mbrock@cov.com; *Brian.Israel@aporter.com (Brian.Israel@aporter.com); DeSantis, Karen McCartan (kdesantis@kirkland.com); Langan, Andrew (alangan@kirkland.com) |
| Cc: | Flickinger, Nancy (ENRD); Casey, Patrick (ENRD); Hankey, Rachel (ENRD); Fidler, Danielle; John.S.Luce@uscg.mil; Andre, Abigail (ENRD); Tierney, Cate |
| Subject: | RE: MDL 2179 -- CWA Penalty Phase Draft Requests for Production. |
| Attachments: | Draft Phase 3 RFPs to BP.pdf; Draft Phase 3 RFPs to APC.pdf |

Dear Counsel:

      This e-mail is to continue our Rule 26(f) pre-trial planning and consulting for the Penalty Phase. Pursuant to our previous meetings, our draft Requests for Production are provided herewith. We anticipate receiving your draft requests today as well.

      As discussed, we are not "serving" these and thus the deadlines of Rule 34 are not triggered. We anticipate that the Defendants will – at a mutually agreed date – indicate which of the requests will be accepted and which rejected. Thereafter, we will work up a schedule for document productions and motion practice, if any.

      We have declined to send any requests regarding environmental harm. As we have said previously, we believe that environmental harm issues should be limited to publicly available information. To the extent that the Defendants seek discovery of environmental harm issues, we will oppose it. However, if the Court does require discovery of environmental harm issues, we reserve the right to serve RFPs regarding environmental harm issues, including NRD matters.

      We have also declined to send any requests regarding efforts to mitigate and the claims processes, as those sets of stipulations appear to be further along (except for the issue of what "BP" means). If those stipulations fall through, we will serve requests at that time. We did request access to two databases on human health impacts. If sufficient stipulations are reached, we may be able to withdraw those.  We recognize that there may be privacy issues.

      We have also declined to send any requests regarding prior violations. We may well seek specific documents on specified prior incidents as discovery and case development proceeds, but at this time are not requesting broad-ranging "kitchen sink" type of productions on this topic.

      For economic benefit, we have not provided any requests at this time, but may have some targeted requests for a later date. We anticipate such requests would be for interrogatories, RFAs, or 30(b)(6), but there may be some document productions associated.

       We of course will request the custodial files of any deponents, including any witnesses listed on either Defendant's witness list, as well as any documents identified on either Defendant's exhibit list.

Finally, for all topics, as more information becomes available we may seek more discovery. To the extent the Defendants request documents on a topic that we did not request today, we reserve the right to serve RFPs similar in scope to whatever the Defendants may request. We reserve the right to modify the draft Requests before they are officially served, and our right to send additional requests for production.

Thank you,
Steve


Steven O'Rourke
Environmental Enforcement Section
U.S. Department of Justice
Mail: P.O. Box 7611 Washington, D.C. 20044-7611
Overnight: ENRD Mail Room, 601 D Street, N.W. Washington D.C. 20004
Telephone: (202) 514-2779
Facsimile: (202) 514-2583
E-mail:  steve.o'rourke@usdoj.gov

*Discussion Draft*

# UNITED STATES DISTRICT OF COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE: OIL SPILL BY THE OIL** | § | **MDL No. 2179** |
| **RIG "DEEPWATER HORIZON"** | § | |
| **IN THE GULF OF MEXICO,** | § | **SECTION: J** |
| **ON APRIL 20, 2010** | § | |
| | § | **JUDGE BARBIER** |
| | § | **MAG. JUDGE SHUSHAN** |

**THIS DOCUMENT RELATES TO ALL CASES**

### THE UNITED STATES' PHASE III
### FIRST SET OF REQUESTS FOR PRODUCTION
### <u>TO DEFENDANT ANADARKO PETROLEUM COMPANY</u>

The United States of America propounds the following Requests for Production to

defendant Anadarko Petroleum Company to be answered pursuant to Federal Rules of Civil

Procedure 26 and 34 within 30 days of service.

### INSTRUCTIONS

1.     Produce all Information responsive to these requests in a format consistent with

the requirements of Pretrial Order 16.

2.     To the extent that you withhold any information responsive to these requests,

provide a privilege log in accordance with the requirements of Pretrial Order 14.

3.     Supplement your responses to these requests in accordance with the requirements

of Federal Rule of Civil Procedure 26(e).

4.     If any responses to these discover requests were previously provided in whole or

part, provide the date and Identify the document in which the response was made.

*Discussion Draft*

## <u>DEFINITIONS</u>

As used herein, the following terms are defined as follows:

1.      "Anadarko Petroleum Company" refers to Defendant Anadarko Petroleum Company, a Delaware corporation with its principal place of business in Texas.

2.      "Anadarko E&P Company LP" refers to, without limitation, the interests of Anadarko E&P Company LP, including relevant predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

3.      "Anadarko" refers to, without limitation, the interests of Anadarko Petroleum Corporation, including relevant predecessors, successors, subsidiaries, including without limitation Defendant Anadarko E&P Company LP, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

4.      "BP" means the BP group or BP plc and its subsidiaries, including relevant predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its/their behalf.

5.      "Communication" means any writing transmitted between persons or oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, meetings, memoranda, telegraphic, telex, computer and facsimile communications or

2

*Discussion Draft*

transmittals of documents, Electronically Stored Information (ESI) and all documents concerning such writings or oral conversations. "Communication" as used herein specifically includes internal writings, oral conversations or meetings among the officers, board members, employees or other representatives of any defendant.

6.      "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDAs), minicomputers and mainframe computers.

7.      "Control" refers to ownership, possession, or custody of the Information, or the legal right to secure the Information or copy thereof from any person or public or private entity having physical possession thereof.

8.      "Identify," whether or not capitalized, when used with respect to: (a) an individual, shall mean to provide the individual's full name, job title, and employer during the period referred to, and current or last-known address and telephone number and business address and telephone number; (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); and (c) Information, shall mean to provide the date, title, subject matter, author(s), and recipient(s) or the Bates number(s).

9.     "Incident" shall mean the loss of control of the MC252 Well and the fire and

explosion(s) on board, and resulting sinking of, Transocean's Deepwater Horizon

rig, in addition to the resulting oil spill in the Gulf of Mexico.

10.    "Information" shall have the meaning set forth in Pretrial Order 22, Paragraph 2.

11.     The "Joint Operating Agreement" means the Joint Operating Agreement for the

Macondo Prospect, entered into by MOEX Offshore 2007 and BP, and ratified by

the Anadarko Defendants on or about December 17, 2009.

12.    "Lease" means the Oil and Gas Lease of Submerged Lands under the Outer

Continental Shelf Lands Act, "Serial Number OCS-g 32306" pertaining to "All of

Block 252, Mississippi Canyon, OCS Official Protraction diagram, NH 16-10,"

also known as the Macondo Prospect, an oil and gas prospect in the Gulf of

Mexico, off the coast of Louisiana.

13.    The "Lease Exchange Agreement" means the agreement by and between

Anadarko E&P Company LP, Anadarko Petroleum Corporation, and BP

Exploration & Production Inc., executed on or about December 17, 2009.

14.    "Macondo Prospect" means the Macondo Prospect (Mississippi Canyon Block

252, abbreviated MC252) an oil and gas prospect in the Gulf of Mexico, off the

coast of Louisiana. The prospect was the site of the Deepwater Horizon drilling

rig explosion on April 20, 2010.

15.    "Macondo Well" means the exploratory well drilled and constructed pursuant to

the Lease as defined herein.

16.　"Person" refers to, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

17.　"Relating to," "referring to," "regarding," "concerning," "reflecting" or "with respect to" refers to, without limitation, the following concepts: discussing, describing, reflecting, concerning, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

18.　"Stage-Gate" means a project management or investment decision-making process or technique in which a company initiative or project, including but not limited to drilling an exploration well, is divided into "stages" or "phases" separated by "gates," where continuation of the process is typically decided by a manager or steering committee based on information available at the time.

19.　"Well Participation Agreement" means the agreement entitled "Macondo Prospect Well Participation Agreement Deepwater Gulf of Mexico, made by and between BP Exploration & Production Inc., Anadarko Petroleum Corporation and Kerr McGee Oil & Gas Corporation, executed on or about December 17, 2009.

20.　"You" or "your" shall mean Anadarko.

*Discussion Draft*

## <u>REQUEST FOR PRODUCTION</u>

1.     Provide all consolidating financial statements at the subsidiary level for each year, 2005-2014.

2.     Provide all consolidating U.S. Federal income tax returns including all subsidiary level work sheets for each year, 2005-2014.

3.     Provide all supporting worksheets and calculations for Discounted Cash Flow value of proven reserves disclosed in 2012 in accordance with Financial Accounting Standards Board.

4.     Provide any documents or communications that identify, summarize, introduce, explain, or describe any of Anadarko's project management or "Stage-Gate" processes (including strategies, policies, protocols, practices or techniques) that were in place for each year, 2005-2010, including but not limited to such documents or communications that relate to:  identification of the decision-makers at each "Gate"; identification and management of environmental and safety risks associated with deepwater drilling operations; and identification of any uncertainties associated with a deepwater drilling project or initiative;  decisions to become a non-operating partner in an oil and gas project; and means of incorporating input from non-operating parties.

5.     Provide any documents or communications that demonstrate that Anadarko applied or implemented any aspect of its project management or "Stage-Gage" processes to any decision, action, or activity related to the Macondo Prospect, including but not limited to any decision, action or activity related to the Macondo

Joint Operating Agreement, the Lease, the Lease Exchange Agreement, the Well

Participation Agreement, any of the Authorizations for Expenditure, or Macondo

Well drilling operations or Exploratory Operations at Objective Depth (as defined

in the Macondo Joint Operating Agreement, section 10.2).

6.      Provide any documents or communications that identify, summarize, introduce,

explain, or describe any of Anadarko's project management or "Stage-Gate"

processes (including strategies, policies, protocols, practices or techniques) that

were implemented after the April 20, 2010, Incident including, but not limited to

such documents or communications that relate to:  identification of the decision-

makers at each "Gate"; identification and management of environmental and

safety risks associated with deepwater drilling operations; and identification of

any uncertainties associated with a deepwater drilling project or initiative;

decisions to become a non-operating partner in an oil and gas project; and means

of incorporating input from non-operating parties.

7.      Provide any documents or communications that identify, summarize, introduce,

explain, describe, or evaluate any of Anadarko's formal or informal programs,

protocols, policies, practices, methods, assessments, software, or techniques to

identify or manage environmental and safety hazards and impacts related to

deepwater drilling operations that were in place for each year, 2005-2010.  This

includes, but is not limited to, integrity management and process safety protocols,

practices and procedures or bridging documents that you had in place applicable

to all phases of offshore exploratory wells, including but not limited to planning and drilling operations, mobile offshore drilling units, platforms or rigs.

8.    Provide any documents or communications that identify, summarize, introduce, explain, describe, or evaluate any of Anadarko's formal or informal programs, protocols, policies, practices, methods, assessments, software, or techniques to identify or manage environmental and safety hazards and impacts related to deepwater drilling operations that were implemented after the Incident on April 20, 2010.  This includes, but is not limited to, integrity management and process safety protocols, practices and procedures or bridging documents that you had in place applicable to all phases of offshore exploratory wells, including but not limited to planning and drilling operations, mobile offshore drilling units, platforms or rigs.

9.    Provide documents that identify, summarize, introduce, explain, describe, or evaluate Anadarko's environmental audit program or any company-wide plan to ensure compliance with environmental regulations for each year, 2005-2014.

10.    Provide all Anadarko Petroleum Corporation Board of Director and Board of Director committee meeting minutes, notes, resolutions, policies or procedures, directives, and decisions for each year, 2005-2014.

11.    Provide all Anadarko Petroleum Corporation officer meetings, minutes, notes, policies or procedures, directives, or decisions for each year, 2005-2014.

12. Provide all spreadsheets and computations supporting the graphic on page 5 of Mr. Danny Brown's presentation at the Johnson Rice Energy Conference on October 2, 2013.

13. Provide all documents related to forward looking estimates of oil and gas prices that Anadarko reviews and considers in determining its projections and the potential variability around those projections for each year, 2005-2014.

14. Provide all spreadsheets and computations evaluating Anadarko's financial projections for 2014 and forward including any sensitivity analyses that Anadarko performs.

15. Provide all spreadsheets or other computations showing the sensitivity of projections for 2014 and forward of Anadarko to assumptions of oil and gas prices.

16. Provide all documents reflecting Anadarko's position that a penalty in this matter as discussed on page 127 of its 2012 SEC 10-K filing will not be material.

17. Provide all documents reflecting the basis for Anadarko's dividend payments for each year, 2005-2014.

18. Provide all documents reflecting Anadarko's decisions to issue and buy back stocks for each year, 2005-2014.

19. Provide all documents reflecting how Anadarko evaluates potential capital expenditures and investments for each year, 2005-2014.

20. Provide all documents reflecting the basis for Anadarko's assumption of debt financing for each year, 2005-2014.

*Discussion Draft*

21.     Provide all documents related to loans, revolving credit agreements or any other debt held by Anadarko for each year, 2005-2014.

22.     Provide all documents related to insurance payments made to and on behalf of Anadarko related to the Macondo oil spill and the associated insurance policy.

23.     Provide all documents reflecting Anadarko policies and targets for key financial ratios or measures, including but not limited to Net Debt to Adjusted Capital, Current Ratio, Quick Ratio, and Free Cash Flow for each year, 2005-2014.

24.     Provide all documents reflecting payments Anadarko has made or received related to the Incident.

25.     Provide the un-redacted Indemnification Agreement with BP related to Macondo well costs, and all subsequent correspondence or other documentation related to the coverage or amendments to the agreement.

26.      Provide all documents for each year, 2005-2014 discussing or evaluating Anadarko's bond ratings.

27.     Provide all documents describing the reorganization (s) of Anadarko E&P Company LP subsequent to the Macondo spill, including the transfer, sale or disposition of Anadarko E&P Company LP assets, and explaining the rationale and basis therefore.

28.     Provide all documents describing the reorganization of subsidiary entities holding former Anadarko E&P Company LP assets and explaining the basis and rationale therefore.

*Discussion Draft*

29.   Provide all organizational charts, lists, diagrams or other summary company-wide information showing the relationships, state of registration and incorporation, and ownership percentages of divisions, direct and indirect subsidiaries, affiliates, and any other entities in which Anadarko has held or holds a controlling ownership (more than 50%) for each year, 2005-2014.

*Discussion Draft*


Dated: [          ], 2014.


ROBERT DREHER
Acting Assistant Attorney General
Environment & Natural Resources Division

JAMES NICOLL
Senior Counsel
NANCY FLICKINGER
DEANNA CHANG
Senior Attorney
SARAH HIMMELHOCH
Senior Litigation Counsel
SCOTT CERNICH
A. NATHANIEL CHAKERES
JUDY HARVEY
Trial Attorneys

STUART F. DELERY
Acting Assistant Attorney General
Civil Division

PETER F. FROST
Director, Torts Branch, Civil Division
Aviation & Admiralty Litigation
STEPHEN G. FLYNN
Assistant Director
MICHELLE T. DELEMARRE
SHARON K. SHUTLER
JILL DAHLMANN ROSA
JESSICA SULLIVAN
JESSICA L. MCCLELLAN
MALINDA LAWRENCE
Trial Attorneys
U.S. Department of Justice
Torts Branch, Civil Division
PO Box 14271
Washington, DC 20044
(202) 616-4100
(202) 616-4002 fax


_____
STEVEN O'ROURKE
Senior Attorney
Sarah D. Himmelhoch
Senior Litigation Counsel
U.S. Department of Justice
Environmental Enforcement Section
PO Box 7611
Washington, DC 20044
(202) 514-2779
steve.o'rourke@usdoj.gov

R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
7-5395 Federal Bldg., Box 36028
450 Golden Gate Ave.
San Francisco, CA 94102-3463
(415) 436-6648
(415) 436-6632 fax
mike.underhill@usdoj.go

*Discussion Draft*

DANA J. BOENTE
United States Attorney

SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras St., Suite B-210
New Orleans, LA 70130

Attorneys for the UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this [   ] day of [   ], 2014.

[          ]