# Exhibit 1

## DECLARATION OF DANIEL A. CANTOR

1. I am a partner in the law firm of Arnold & Porter LLP, resident in the firm's Washington, D.C. office. I am counsel for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. (collectively, "BP") in the above-captioned case. I am over the age of 18 and, if called, competent to testify to the facts set forth herein.

2. In connection with my representation of BP, I have participated in numerous meetings with the Court Supervised Settlement Program ("CSSP" or "Settlement Program") and Class Counsel regarding data access. I previously represented BP in connection with the Gulf Coast Claims Facility ("GCCF").

### Access to Claims Data

3. During the negotiation of the Settlement Agreement, the parties agreed that they should have full access to claims-related data, but that no party should have the ability to interfere with the Settlement Program's evaluation of a claim while the evaluation is in process. Thus, it was agreed that both parties would have full access to all claims data at all times, but that documents and work papers showing the Settlement Program's evaluation and assessment of a given claim (referred to in Section 4.4.14 as a "Claim File") would not be provided to either party until a determination on the claim was issued.

4. Class Counsel Steve Herman has claimed that the second sentence of Section 4.4.14 of the Settlement Agreement, which only restricts access to "Claim Files" and does not place any restrictions on access to "Claims-related data," was a drafting error. Pls.' Mot. Ex. 2, Herman Email to Cantor (Feb. 13, 2013). This is incorrect. The fact that the Settlement Agreement restricts pre-determination access to "Claim Files" but permits full and unfettered access to "Claims-related data" reflects the negotiated, purposeful agreement reached by the parties.

1

5. On June 26, 2012, the Claims Administrator held a Claims Administration Panel meeting. I recall that the attendees included Claims Administrator Patrick Juneau, CSSP General Counsel Christine Reitano, CSSP CEO David Odom, Orran Brown of BrownGreer, Lynn Greer of BrownGreer, James Roy, Steve Herman (by telephone), Mark Holstein, Keith Moskowitz, Judge Shushan, and me.

6. The participants had an extensive discussion regarding data access rights under the Settlement Agreement, including Section 4.4.14. The discussion was led by Orran Brown on behalf of the Claims Administrator. Mr. Brown illustrated on the conference room whiteboard a detailed grid concerning data access. Class Counsel, BP, and the CSSP all agreed that both Class Counsel and BP would have access to "Claims-related data" at all times during the process, but that the CSSP's work papers (referred to in the Settlement Agreement as the "Claim File") would not be available to the parties until the CSSP issued a determination on a given claim.

7. Shortly after the June 26, 2012 Claims Administration Panel meeting, Class Counsel sent a series of emails raising questions regarding data access. In a response dated June 28, 2012, I explained that the questions raised by Class Counsel had been addressed at the prior meeting, and suggested a brief conference call to make sure all parties had a shared understanding of the outcome of the Claims Administration Panel meeting.

8. A follow-up conference call was held on July 2, 2012. I recall that the attendees included Mr. Brown, Mr. Odom, Ms. Reitano, Mr. Herman, and me. During the call, the data access rights agreed to at the June 26, 2012 Claims Administration Panel meeting were reviewed, and all parties once again confirmed their understanding and agreement to these rights and parameters.

2

9. For the following seven months, the CSSP made "Claims-related data" available to BP.

10. In February 2013, Class Counsel raised anew certain questions about data access rights. In March 2013, the Claims Administrator held another meeting among Class Counsel, BP, and the CSSP to address data access. At that meeting, the Claims Administrator informed the parties that the parameters for data access had been agreed to at the June 2012 Claims Administration Panel meeting, and the Claims Administrator intended to follow the agreement previously reached by the parties.

Teleconferences Concerning Data Issues Among CSSP and BP Technical Personnel

11. In June 2012, the Claims Administrator changed his policy with regard to communications between the parties and the Claims Administration Vendors. Prior to the summer of 2012, the Claims Administrator had permitted and at times encouraged the parties to have direct communications with the Claims Administration Vendors. At the June 26, 2012 Claims Administration Panel meeting, the Claims Administrator announced a new rule, to be effective in early July, pursuant to which the parties would not have direct communications with the Claims Administration Vendors without first obtaining approval from the Settlement Program. On June 27, 2012, Ms. Reitano sent an email to the parties confirming that the Claims Administrator had appointed her as his designee for purposes of communications with the Claims Administration Vendors.

12. During the summer and fall of 2012, questions arose regarding the CSSP's data. I made requests for permission for BP technical representatives to contact the CSSP technical representatives, and Ms. Reitano approved such communications.

3

13. In November 2012, the Claims Administrator's data experts at BrownGreer informed BP's technical representatives that they would like to have an ongoing weekly call. On November 16, 2012, I sent an email to Ms. Reitano to confirm that the CSSP had approved these ongoing meetings: My email to Ms. Reitano stated: "I understand that the BG data folks suggested to BP data folks that it would make sense for them to have a weekly technical data call. I assume that is ok but just wanted to confirm. Thanks." On the same day, Ms. Reitano responded, confirming that the conferences were authorized: "It's ok, thanks for confirming, Dan."

14. Class Counsel's suggestion that BrownGreer looked to me for approval of their request to have weekly meetings with BP's technical representatives is not true. Pls.' Mot. at 9. These technical meetings were approved by CSSP General Counsel (and the Claims Administrator's designee) Ms. Reitano. As BP's counsel, I approved BP's participation in the meetings requested by the CSSP and approved by Ms. Reitano.

## Information Provided to the Special Master

15. The "list of approximately 700 claims" that BP provided to the Freeh Group was provided pursuant to a Court-authorized process that permitted the Special Master to receive claims information.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 11th day of March, 2014 in Washington DC.

_____
Daniel A. Cantor