# Exhibit 5

**BROWNGREER ‖ PLC**

# MEMORANDUM

TO: Christine Reitano

FROM: Michael Palmer
BrownGreer PLC

DATE: February 7, 2013

RE: BP and Class Counsel's Access to Claims Information and Data

## I. Introduction.

Pursuant to the First Amended Order Creating Transition Process ("Transition Order") and the Order Regarding Settlement Implementation ("Implementation Order"), all claim files, claims-related materials, and data (collectively, "Claims Information") from the Gulf Coast Claims Facility (the "GCCF") and Transition Process have been transferred to the Deepwater Horizon Economic and Property Damages Settlement Program ("Settlement Program"). All Claims Information is deemed Confidential under Pre-Trial Order No. 13 pursuant to Section 4.4.1 of the Deepwater Horizon Economic and Property Damages Settlement Agreement ("Settlement Agreement"). However, the June 29, 2012, Order Regarding the Confidentiality of Claims Information of the Claims Administrator of the Deepwater Horizon Economic and Property Damages Settlement Agreement ("Confidentiality Order") modified, amended, and superseded the provisions of Pre-Trial Order No. 13 with regard to Claims Information in the Settlement Program.

The Settlement Agreement and other relevant Orders govern how and when individuals may access Claims Information. Generally, Class Counsel and BP may access Claims Information at any time, but shall only have access to detailed review data including calculation information, denial reasons, or incompleteness reasons after the Settlement Program issues a notice to a claimant.

## II. Transition Order.

The Transition Order made all Claims Information submitted to the GCCF available to the Settlement Program. Paragraph 18 provides:

> Any and all claims forms and related claims files and claims data (collectively, "Materials"), including but not limited to documents and electronically stored data, that are in the possession, custody or control of the GCCF, shall be made available to the Transition Process, and the Court Supervised Claims Program. BP will be given access as needed for the purpose of processing or administering claims under its OPA process and for purposes of class notice. The entity receiving the Materials shall be responsible for

# 420301
2/7/13                                        1

the cost of such copying and transferring. The GCCF shall provide the Court Supervised Claims Program with original documentation of any Materials. The GCCF shall provide BP with the original of each and every GCCF Release and Covenant Not to Sue executed by claimants with a copy to the Administrator. For purposes of this paragraph, Materials transferred and made available to the Transition Process and Court Supervised Claims Program shall be provided to the Claims Administrator. For purposes of this paragraph, BP shall identify for the GCCF in writing a designee for purpose of receipt of Materials transferred pursuant to this Paragraph.

**III.    Provisions in the Implementation Order.**

Paragraph 3 provides:

That all claims-related information and data ("Claims Information") previously submitted to the Gulf Coast Claims Facility (the "GCCF") and all Claims Information submitted to the Transition Process shall be transferred to the Court Supervised Settlement Program.

Paragraph 4 provides:

That the Court Supervised Settlement Program is authorized to maintain such Claims Information for the duration of the claims administration process, and that such Claims Information is deemed "confidential" under Pre-Trial Order No. 13. However, nothing in this Paragraph 4 shall prevent the Claims Administrator from publicly reporting Claims Information that does not contain personally identifiable claimant information, (and such non-personally identifiable Claims Information shall not be considered "confidential" under Pre-Trial Order No. 13).

With regard to access to information by BP and Class Counsel, Paragraph 9 of the Implementation Order provides:

That BP and Class Counsel shall have access to all Claim Files and Claims Information for any legitimate purpose including, without limitation, the operation of BP's separate OPA facility, prosecuting and defending appeals, reviewing and auditing the Settlement Program, reporting financial results, and pursuing indemnification, contribution, subrogation, insurance and other claims from third parties. However, BP and Class Counsel shall not have access to any individual Claim File for a Claim that is being processed and has not yet been resolved in the Settlement Program, except if the Claim File is needed by BP, a Claimant, or their counsel, to prosecute or defend an Appeal.

**IV.    Provisions in the Confidentiality Order.**

Paragraph 6 governs access to Claims Information by Class Counsel and the BP Parties. It provides:

Class Counsel and the BP Parties shall have access to Claims Information as provided in the Settlement Agreement and any Order of this Court (including previously entered

2

#420301
2/7/13

Orders in connection with the Settlement Agreement).

**V.     Provisions in the Settlement Agreement.**

Section 4.4.1 contains a provision allowing the United States District Court for the Eastern District of Louisiana to issue an Order transferring all Claims Information from the GCCF or Transition Process to the Settlement Program. It also states that all Claims Information is deemed confidential under Pre-Trial Order No. 13. Both of these provisions were adopted in the Implementation Order as mentioned in Section III above.

Section 4.4.14, which discusses access to information by claimants, BP, and Class Counsel, provides:

> The Claimant may request and receive reasonable access to his, her, or its Settlement Program and/or Transition Process Claim File and supporting information, but only after issuance of a Final Determination of the Claim in part or in whole. Access by a Claimant to his, her, or its GCCF Claim File may be granted at the discretion of the Settlement Program Administrator. Claimants shall be provided reasonable access to all materials submitted by or on behalf of such Claimant to the GCCF, Transition Process, and/or Settlement Program. BP and Class Counsel shall have access to all Claim Files and Claims-related data transferred to or generated in the Settlement Program for any legitimate purpose including, without limitation, the operation of BP's separate OPA facility, prosecuting and defending appeals, reviewing and auditing the Settlement Program, reporting financial results, and pursuing indemnification, contribution, subrogation, insurance and other claims from third parties. However, BP and Class Counsel shall not have access to any Claim Files for Claims that are being processed and have not yet been resolved in the Settlement Program except if the Claim File is needed by BP, a Claimant, or their counsel to prosecute or defend an Appeal.

Section 5.11.2 provides:

> The Claims Administrator will submit a list, on a weekly basis for the first year, and thereafter on a monthly basis, to Lead Class Counsel and BP's Counsel, identifying the Claims that have been paid and the amounts of the payments, as well as those that are pending.

Section 5.11.5 provides:

> The Claims Administrator shall also submit a list, on a weekly basis for the first year, and thereafter on a monthly basis, to the Lead Class Counsel and BP's Counsel identifying any Claims that have been appealed pursuant to the Appeal Process.

Section 6.1.2.1.1 provides:

> Within 30 days of issuance of notice in writing to the Claimant of a final

3

determination of a Claim by the Settlement Program, a Claimant may request in writing reconsideration by the Settlement Program of that determination on the grounds that the Settlement Program committed a calculation error, failed to take into account relevant information or data or otherwise failed to follow the standards governing the determination. The Settlement Program will also maintain a website where a form of request for reconsideration may be filed. The Settlement Program shall provide access to the Claimant and the BP Parties of all forms, calculations and worksheets relied upon by the Settlement Program in reaching the final determination.

Section 6.1.2.4 provides:

... The BP Parties may Appeal a final compensation award determination only where the Compensation Amount determined by the Settlement Program is in excess of $25,000. The BP Parties shall receive notice of an award on the same date that notice is provided to the Economic Class Member and shall have the following time periods within which to exercise their Appeal right for Claims in the following monetary ranges: (a) for awards of $25,000 to $250,000 the BP Parties shall have ten days from the date of notice of the award to Appeal; (b) for awards of $250,001 to $500,000 the BP Parties shall have fifteen days from the date of notice of the award to Appeal; and (c) for awards of greater than $500,001 the BP Parties shall have twenty days from the date of the notice of the award to Appeal. …

Section 6.2 provides:

… All Appeals where the issue is the Compensation Amount shall be conducted using a baseball process in which the Claimant and the BP Parties exchange and submit in writing to the Appeal Panelist or Appeal Panel their respective proposals ("Initial Proposal") for the base Compensation Amount they propose the Claimant should receive. The Appeal Panelists or Appeal Panel may consider only the following documentation: the Initial and Final Proposal and any memorandum in support thereof; the complete record of the Claimant in the Settlement Program; the Agreement and all of its attachments; Court rulings on similar issues; and prior Appeal rulings on similar issues. The Claimant and the BP Parties must exchange and submit a final proposed base compensation amount ("Final Proposal") to the Appeal Panelist or Appeal Panel. Either Party shall have five (5) days to accept the other Party's Final Proposal and end the Appeal. Without an agreed resolution, the Appeal Panelist or Appeal Panel must choose to award the Claimant either the Final Proposal by the Claimant or the Final Proposal by the BP Parties but no other amount. The Claimant and the BP Parties may choose to reach a compromise at any point up to the time the Appeal Panelist or Appeal Panel issues its decision. Once the Appeal Panelist or Appeal Panel issues a decision, it shall be final. The base compensation amount will then be presented to the Claims Administrator to further process the Claim as appropriate.

Section 6.8 provides:

Immediately upon issuance of final written notice from the Claims Administrator

of a determination of a Claim, the Settlement Program shall provide BP, Lead Class Counsel, Claimant and Claimant's counsel (if Claimant is represented) with electronic access to the full record of the Claim at issue.

### VI. Current Access to Claims Information.

#### A. Implementing Rules from the Settlement Agreement and Relevant Orders.

We designed the DWH Portal to be an interactive tool to allow claimants and law firms to have access to Claims Information, statuses, and Notices. The DWH Portal is the primary mechanism for claimants and law firms to check the status of their claims. Even if a claimant submits hard copy materials, he/she can view those materials and his/her status after he/she registers for access to the DWH Portal. The DWH Portal has been in place since the launch of the Settlement Program on June 4, 2012, although we have added many enhancements to further accommodate claimants and law firms in the claims submission and review process. In addition to claimants, we also grant access to individuals from both BP and Class Counsel based on provisions in the Settlement Agreement, relevant Orders, and agreement by the Parties.

The Settlement Agreement provisions above were not clear on what information and which documents claimants, BP, and Class Counsel could see or when. On July 25, 2012, BrownGreer submitted a memorandum to the Claims Administrator addressing several outstanding issues and requesting input from the Parties. The memorandum included a question from Class Counsel regarding when the Settlement Program would provide claimants with access to all Claims Information relied upon in reaching a final determination and other issues related to Appeals.

After meeting with the Parties and with their agreement, we put these rules in place on August 2, 2012:

1. Claimants, their lawyers and the Parties may see everything in the claimant's file except review worksheets and calculations at any time.

2. Claimants and Parties cannot see calculations and workbooks until after the Settlement Program issues a notice to a claimant.

#### B. BP and Class Counsel's Access to Claims Information through the DWH Portal.

We currently show BP and Class Counsel all Claims Information except detailed review data such as calculation information, denial reasons, or incompleteness reasons. We reveal detailed review data to the claimant and to both Parties after we issue the first Eligibility Notice to a claimant. The DWH Portal offers BP and Class Counsel nearly identical levels of access, with 22 DWH reports updated daily for both BP and the PSC, as well as links to the five Court Reports filed by the Claims Administrator. Both Parties have Results Search, the View Last Review function, read only version of Global Notes, Payments, Documents, and Reviewer History. Both Parties also have access to summary reports on Settlement Program activities including issued Notices, Payments and Releases, Intake, Appeals, Damage Categories, CAC activity, etc.

5

In addition to the 22 reports referenced above, BP has one report on its portal that is not made available to the PSC. While both Parties have access to the 8377 Appeals Report, which provides a list of filed appeals as required by Section 5.11.5 of the Settlement Agreement, only BP has access to the 8345 Report, which provides a list of all Claims that are subject to an Appeal from BP under the terms of the Settlement Agreement. This report provides BP with deadlines for noting its appeals. Although these deadlines do not apply to the PSC, we can add this report to the PSC portal at any time. Similarly, only BP has portal functionality allowing it to submit or waive a right to an Appeal. Because the PSC does not have identical appeal privileges to BP, this feature is not required on the PSC portal.

### C. Weekly Uploads to Secure FTP Site.

In addition to the items listed above, BP has access to weekly Excel files showing many of the data points that are used to generate the reports on the DWH Portal. Upon BP's request, BrownGreer began generating Excel downloads of specified data points once a week and placing Excel files on an FTP site. These Excel files show a claim-level breakdown of the same information as the DWH Portal reports. At present, only BP, Chris Reade, and Orterio Villa have access to the FTP site where we place the weekly files. We can provide designated members of the PSC with access to the same FTP site and the weekly Excel files we post there.

## VII. Conclusion.

We currently give both Parties similar access to Claims Information in alignment with the provisions in the Settlement Agreement and relevant Orders. The differences between BP and Class Counsel's access to Claims Information are:

1. We give BP access to the 8345 Report, which provides a list of Claims that are subject to a BP Appeal.

2. We give BP access to an Appeals menu used to indicate whether or not BP wishes to submit or waive a right to an Appeal.

3. BP has access to weekly Excel files showing specified data points used to create the reports we place on the BP and PSC portals.

#420301
2/7/13