# Exhibit 7

**From:** David Welker <dwelker@dheclaims.com>
**Date:** 13 January 2014 20:35:02 GMT
**To:** "Robinson, Geir" <Geir.Robinson@uk.bp.com>
**Subject: RE: BP OIL - BOT Program**

Geir, Please forgive the delay. I've reviewed the e-mail chain below and appreciate the disagreement. I've sought counsel from Chris Reade who in fact indicated that since BP began running their "scripts" overnight, it has not negatively impacted the efficiency of the system. Additionally, Mr. Reade has indicated he will work with Steve Olp regarding this issue and within the next 30-45 days, work to get the information BP is entitled to receive, through more direct channels. Hopefully this is responsive to your question and concerns. Regards, Dave W.

**From:** Robinson, Geir [mailto:Geir.Robinson@uk.bp.com]
**Sent:** Monday, January 13, 2014 8:46 AM
**To:** David Welker
**Subject:** FW: BP OIL - BOT Program

Dave

Please see below as discussed

Please let me know your thoughts

Thanks

Geir


**From:** Holstein, Mark E
**Sent:** Monday, January 13, 2014 2:34 PM
**To:** Robinson, Geir
**Subject:** FW: BP OIL - BOT Program

**From:** Holstein, Mark E
**Sent:** Monday, January 13, 2014 8:33 AM
**To:** Steve Herman
**Cc:** Judge Shushan; Frank Piantidosi; James P. Roy (LC & EC); Soren Gisleson; Keith Moskowitz; Tommy Thomassie; Holstein, Mark E
**Subject:** RE: BP OIL - BOT Program

Steve,

Your response confirms the absence of an issue here.

First, as you acknowledge, BP has been acting pursuant to the Claims Administrator's Policy 378. Thus, there is simply no basis for you to allege a violation by BP where BP has by your own admissions followed the governing rules of the CSSP.

Second, you selectively and inaccurately quote from Dan Cantor's November 9, 2013 letter. Contrary to your suggestion, nowhere in his letter did Dan suggest that the Settlement Agreement in any way precludes the data at issue here. To the contrary, Dan explained:

> Section 4.4.14 of the Settlement Agreement provides: "BP and Class Counsel shall have access to all Claim Files and Claims-related data transferred to or generated in the

1

>Settlement Program for any legitimate purpose including, without limitation, the operation of BP's separate OPA facility, prosecuting and defending appeals, reviewing and auditing the Settlement Program, reporting financial results, and pursuing indemnification, contribution, subrogation, insurance and other claims from third parties.  However, BP and Class Counsel shall not have access to any Claim Files for Claims that are being processed and have not yet been resolved in the Settlement Program except if the Claim File is needed by BP, a Claimant, or their counsel to prosecute or defend an Appeal."  Similar language is also contained in the Court's Order Regarding Settlement Implementation.  As this language makes clear, the Settlement Agreement provides for full, unhindered access to "Claims-related data."  There are no limitations on the parties' access to "Claims-related data."  The data made available by the CSSP to both Class Counsel and BP in the weekly Excel download--objective data regarding claims filed--constitutes "Claims-related data" under Section 4.4.14, and therefore both parties have full access to such data at all times.
>
>The only limitation in Section 4.4.14 is irrelevant to the issue at hand.  This limitation, which was agreed to by the parties to ensure that there would be no interference with the Settlement Program's evaluation of a claim while it is in process, simply requires that the Settlement Program not provide its internal work papers and evaluation of claims (referred to in the Settlement Agreement as the Settlement Program's "Claim Files") until the claim is determined.  The objective data provided in the weekly Excel is not a Claim File.

In sum, the Settlement Agreement permits and indeed requires the data access that is currently being provided by the Claims Administrator.  All parties agreed at the June 2012 Panel meeting to the protocol that has been in place for more than 1.5 years .  This was reconfirmed during the July 2, 2012 teleconference.  When you took issue with data access in March 2013 notwithstanding your prior agreement, the Claims Administrator looked at the issue again, and once again concluded that both Class Counsel and BP are entitled to all Claims Data.. The only limitation on information access is pre-determination internal work papers and evaluation of claims.   Please respect the transparency that is a central component of the Settlement Agreement and that the Claims Administrator has repeatedly maintained is a core policy of the CSSP.  Thank you.

**Mark Holstein**
BP Legal
501 Westlake Park Blvd.
Houston, Texas 77079
Phone: 281-366-8895
Mobile: 630-362-8167


**From:** Steve Herman [mailto:SHERMAN@hhklawfirm.com]
**Sent:** Tuesday, January 07, 2014 1:05 PM
**To:** Holstein, Mark E
**Cc:** Judge Shushan; Frank Piantidosi; James P. Roy (LC & EC); Soren Gisleson; Keith Moskowitz; Tommy Thomassie
**Subject:** BP OIL - BOT Program

Why do both the Settlement Agreement and the Court's Order expressly state:  "BP and Class Counsel shall not have access to any Claim Files for Claims that are being processed and have not yet been resolved in the Settlement Program except if the Claim File is needed by BP, a Claimant, or their counsel to prosecute or defend an Appeal" ?

2

Because, in BP Counsel's own words: "to ensure that there would be no interference with the Settlement Program's evaluation of a claim while it is in process." [Letter from Dan Cantor to Pat Juneau, Nov. 9, 2013, p.2.]

The Claims Administrator has never disagreed with a straightforward interpretation of the clear and unambiguous language in the Court's Order and the Settlement Agreement.

Rather, the Claims Administrator recalls (with all due respect, we believe erroneously) that Jim and/or I "agreed" to depart from the language of the Settlement Agreement (and/or the Court's Order).

As set forth in our e-mail to Mr. Juneau dated October 24, 2013: **(i)** Class Counsel did not agree that BP would be provided with access to Claimant- or Claim-specific documents or information until after there was a formal Eligibility Determination or Denial by the Program; **(ii)** even assuming *arguendo* that we did purport to "agree" to that at some point in time, we likely had no authority to "agree" to something that was expressly prohibited by not only the Settlement Agreement but also by Court Order, and **(iii)** to the extent that any previous "agreement" was made, it is hereby revoked.

See attached.


**From:** Holstein, Mark E
**Sent:** Tuesday, January 07, 2014 12:32 PM
**Subject:** RE: BP-OIL, BOT program

Dear Judge Shushan and Frank:

Happy New Year.  I am disappointed that the New Year is beginning with Class Counsel's effort to generate a dispute regarding BP's access to Settlement Program data through the Settlement Program Claims Portal.  As set forth in the attached emails from BP and explained further below, there is no merit to Mr. Herman's allegations that BP has violated or is violating the Confidentiality Order or any provision of the Settlement Agreement.  To the contrary, BP's access has at all times been in compliance with these provisions as interpreted and administered by the Settlement Program.

Mr. Herman is correct that this issue was resolved quite some time ago.  In fact, it was initially resolved at the outset of the Settlement Program when the Claims Administrator presented data access protocols at a panel meeting that Your Honor attended in late June 2012.  These protocols implemented the terms of the Settlement Agreement by providing for transparency and broad data access to both Class Counsel and BP, with the exception of pre-determination claims analysis and Settlement Program work product.   At that meeting, all parties, including Class

Counsel, agreed to the protocols proposed by the Claims Administrator that remain in effect to this day. Shortly after the June 2012 Panel meeting, a follow up teleconference was held among Class Counsel, BP, and the Claims Administrator's Office during which the agreement regarding the protocol was reconfirmed. The Claims Administrator thereafter implemented the protocols agreed to by all involved and made available on a weekly basis the very data that Mr. Herman is now objecting to. BP subsequently has accessed data in accordance with the protocols established by the Claims Administrator.

In or around March 2013, Class Counsel challenged the Claims Administrator's data access protocols to which Class Counsel had previously agreed. At the request of the Claims Administrator, the parties presented positions on the issue, a panel meeting was conducted and the Claims Administrator declined to change the data access protocols he had established at the outset of the Settlement Program and to which he found Class Counsel had previously agreed. Instead, the Claims Administrator reconfirmed and memorialized his data access policies through Policy No. 378 (see below), which was adopted by the Settlement Program after thorough vetting with the Parties at Settlement Panel meetings. Class Counsel and BP both deferred to Policy 378, which the Settlement Program has implemented to govern Class Counsel's and BP's access to claims information. Notably, Mr. Herman's email completely ignores the long-standing data access policies established by the Claims Administrator at the outset of the Settlement Program and ultimately re-affirmed and memorialized in Policy No. 378. Mr. Herman also fails to mention that under the Claims Administrator's policy Class Counsel has had the same data access rights as BP and can obtain the exact same data as BP (which, of course, belies Class Counsel's contention that it should get access to the data BP has accessed).

To address specifically the key points in Mr. Herman's email:

- To the extent BP (including its experts) is electronically retrieving information through the Claims Portal, it is doing so through a web browser such as Internet Explorer. BP does use some "scripts" that BP and its retained experts use to help control their Internet Explorer web browsers while accessing the authorized CSSP web portal . The scripts are used to automate the downloading of select data and documents from the Claims Portal. This enables the authorized downloading to be performed more quickly and efficiently than could be done manually. The scripts are manually instructed to search for specified data or documents from claims files to which access is authorized through the portal. They do not permit BP to obtain information not authorized by the Settlement Program;

- Contrary to the suggestion in Mr. Herman's email, both Class Counsel and BP are equally authorized to obtain certain claim-specific information prior to the Settlement Program's determination of a claim. That is expressly authorized by Policy No. 378, which only prohibits the parties from obtaining access to Settlement Program workbooks prior to determination of a claim. Policy No. 378 provides:

4

> ***Access to Confidential Information Before Issuance of an Eligibility Notice or a Denial Notice.***
>
> Before the Claims Administrator issues an Eligibility Notice or Denial Notice on a Claim:
>
> **(a) Claimant and Claimant's Counsel:** Shall have Access to the Claimant's Claim File and the Claims Database pertaining to the Claimant, but shall not have access to the Accountant Workbooks, Claim Review Details or Global Notes relating to the Claim or the Claimant or to any Confidential Information relating to any other Claimants.
>
> **(b) BP and Class Counsel:** Shall have equal Access to Claim Reports and to the Claim Files and Claims Database on all Claimants and Claims, but shall not have Access to Accountant Workbooks, Claim Review Details or Global Notes relating to a particular Claim or Claimant.

- Pursuant to the provisions quoted above, BP has received claims information through the Claims Portal as authorized by the Claims Administrator and also data extracts prepared by the Settlement Program's Vendor Brown Greer and made available to BP through a file transfer site that BP is able to access to retrieve the data placed there by Brown Greer with the knowledge and approval of the Claims Administrator. Thus, the only claims information obtained by BP has been that to which access has been authorized by the Settlement Program pursuant to its longstanding policies.

- There also is no IT efficiency issue. In September 2013, certain BP experts pulled authorized data from the Portal during business hours, which the Settlement Program indicated was overloading its IT system. After the Program advised BP of this issue, BP altered the schedule to obtain the data overnight, thereby eliminating the problem. We have confirmed with Chris Reade of the Settlement Program that there is no impairment of the Settlement Program's IT system or operations from BP's accessing of authorized data through the Portal.

For all of these reasons, BP respectfully submits that there is no issue as to which the Court's assistance is required.

Thank you.

**Mark Holstein**
BP Legal
501 Westlake Park Blvd.
Houston, Texas 77079
Phone: 281-366-8895
Mobile: 630-362-8167

**From:** Steve Herman
**Sent:** Friday, January 03, 2014 5:32 PM
**To:** Judge Shushan; Frank Piantidosi
**Subject:** BP-OIL, BOT program

Dear Judge Shushan and Frank,

I hope you both had a nice Holiday Season.

I was under the impression that this issue had been resolved.

While I am not completely sure about the terminology Keith is using, (see below), it sounds like BP is still continuing to electronically access and retrieve claim-specific data from the Settlement Program prior to the formal Determination or Denial of a Claim. This, as we understand, creates potential IT efficiency and/or integrity issues - separate and in addition to the ongoing violation of the Settlement Agreement and Court Order.

We would greatly appreciate your assistance in addressing these issues.

Thanks, and best wishes, - Steve

---

**From:** "Moskowitz, Keith" <keith.moskowitz@dentons.com>
**Date:** January 3, 2014, 5:17:33 PM CST

Soren and Steve —

My email responded accurately and completely to the questions Soren raised and accurately set forth the facts.  As set forth in the email, BP's only access to any claims data has been through the CSSP portal and BP has only viewed and retrieved data it was authorized by the CSSP to review and retrieve, consistent with the provisions of the Settlement Agreement.    As to Soren's other assumptions, and your apparent skepticism regarding the facts set forth in my prior email, the only "clarification" I can provide is that the statements in the email are accurate.   There is no legitimate issue here and there is no merit to the stated position asserted in Steve's email of January 2 that "BP has been in continuous violation of Section 4.4.14 and the Court's Confidentiality Order."   Accordingly, BP declines Class Counsel's offer to be given access to, or a review of, BP's use of BP's privileged and proprietary work-product within Internet Explorer operating on the computers of BP or its experts.   Moreover, there is no basis for terminating BP's access to the portal consistent with the Settlement Agreement and BP will oppose any effort to do so as violative of its rights under the Settlement Agreement.

Best Regards,

Keith

6

**From:** Soren Gisleson
**Sent:** Monday, December 30, 2013 12:59 PM

Keith,

Thanks for the below email but it really does not explain much and is directly contrary to what both the CAO and Chris Reade informed us a couple of months ago.  As you remember, Mr. Reade reported to you that BP was running a BOT program every night and slowing down the system significantly, even to the point that it crashed.  Consequently, Mr. Reade had to somehow tweak your access to ensure it would not crash again.  Such a significant drain on such a complex, sophisticated system as the CSSP's is vastly different from what you are explaining below.

Of further significance is that you do not confirm that you have been using this program since the CSSP opened on 6/4/12 (merely stating that the CSSP has known about it for "several months") nor do you respond to my specific request of whether it is collecting pre-eligibility data.  Your failure to respond to either of these inquiries, leads me to conclude that you have been running this program from Day 1 and that it collects pre-eligibility data.

Should you wish to clarify these assumptions, please do so by the close of business on Friday January 3, 2014 at 5:00 pm.  We would even be willing to view your BOT in action at a demonstration or watch a video of you using the tool.

Sincerely,

Soren

**From:** Moskowitz, Keith
**Sent:** Thursday, December 26, 2013 4:11 PM
**Subject:** RE: BP-OIL, BOT program

Soren:

Your December 16 email reflects a misunderstanding of the facts.

First, and most significantly, BP cannot and does not run any type of program on the Claims Administrator's servers, as you claim.
Second, the only access BP has had to CSSP data has been through the CSSP web portal to which both BP and Class Counsel have access.  Such access is expressly permitted under both Settlement Agreement section 4.4.14 and the Court's Confidentiality Order, which specifically permit the parties to download information for "any legitimate purpose including, without limitation  . . . prosecuting and defending appeals, reviewing and auditing the Settlement Program, reporting financial results  . . .."

Third, what you appear to be referring to are "scripts" that BP and its retained experts use to help control their Internet Explorer web browsers while accessing the authorized CSSP web portal .  The scripts are used to automate the downloading of select data and

documents from the portal to which BP has authorized access under the Agreement.  This enables the authorized downloading to be performed more quickly and efficiently than could be done manually.   The scripts are manually instructed to search for specified data or documents from claims files to which access is authorized through the portal.  The scripts are run approximately weekly.   It is our understanding that the CSSP has been aware of BP's  use of these automated scripts for more efficient downloading for several months.

Fourth,  there is no claimant information safety issue.   BP retrieves data from the secure CSSP web portal using Internet Explorer, just as you do.  BP and its experts are, as we expect you are, mindful of their obligations under the applicable Confidentiality Agreement.

In light of these facts, I am sure you will understand why BP declines to agree to your requests to cease using scripts when accessing the CSSP web portal or to send you copies of data which already is equally and fully available to Class Counsel through the portal.   As for your request for copies of the scripts,  BP also respectfully declines that request.   Class Counsel is free to consult with its own experts if it wishes to develop such scripts to facilitate its claims review, but BP has no obligation to provide such work product to plaintiffs.

Best Regards,

Keith


**From:** Soren Gisleson
**Sent:** Thursday, December 19, 2013 11:57 AM

Keith,

Just to confirm yesterday's discussion.  I discussed our concerns and understanding of the BOT program.  You informed me that you were still unclear about what the BOT program was but that we would be receiving a written correspondence soon stating BP's position.

Thanks,

Soren

**From:** Soren Gisleson
**Sent:** Monday, December 16, 2013 4:40 PM
**To:** Moskowitz, Keith
**Cc:** Steve Herman; 'Jim Roy'
**Subject:** BP-OIL, BOT program

Keith,

Recently, we became aware for the first time that BP has been running a BOT program every night on the Claims Administrator's servers that scrapes data and transmits that data back to BP.  Based on our understanding, BP has been doing this since Day One.  It is our position that, (in addition to the breach of Section 4.4.14 of the Agreement and violation of Paragraph 9 of the Court's Order Regarding Settlement Implementation, which have been

previously brought to BP's attention), this qualifies as an ex parte retrieval of information from the Claims Program. We are entitled to this data and any program that allows this data to be accessed. Putting aside the propriety of your actions, we owe a duty to the Claimants to ensure that their information is protected. If you are retrieving the data and transmitting it over the internet, we need to determine (in conjunction with our experts) whether this information is safe.

Please allow this email to serve as a formal request that this practice cease immediately and for all past data (and the software necessary to access that data) be sent to us in its native format within 10 days of today's date.

As always, I am free to speak by phone.

Thank you,

Soren

Soren E. Gisleson, Esq.
Partner
Herman, Herman & Katz
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Direct Dial: 504-680-0569/Office: 504-581-4892/Fax: 504-561-6024

*This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us (collect) immediately at (504) 581-4892 and ask to speak with the message sender. Also, we would appreciate your forwarding the message back to us and deleting it from your system. Thank you.*

**CONFIDENTIAL ATTORNEY WORK PRODUCT**

 Please consider the environment before printing this e-mail

9

```
CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged information intended
solely for the addressee.  Please do not read, copy, or disseminate it
unless
```

```
you are the addressee.  If you have received it in error, please call us
(collect) immediately at (504) 581-4892 and ask to speak with the message
sender.  Also, we would appreciate your forwarding the message back to us
and
deleting it from your system.  Thank you.
```

This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.