| | |
|---|---|
| **From:** | Steve Herman |
| **To:** | David Welker; Frank Piantidosi (piantidosi@freehgroup.com) |
| **Cc:** | Jim Roy; Pat Juneau; Michael Juneau; jdf@sessions-law.com; Thomas Souther (souther@freehgroup.com); paw@freehgroup.com; "balhoff@pabmb.com"; Randi Ellis (ellis@pabmb.com) |
| **Subject:** | BP Oil - Potential Seafood Program "Fraud" Investigations |
| **Date:** | Wednesday, February 26, 2014 2:50:39 PM |
| **Attachments:** | 2.24.14.pdf |

Dear Frank and Dave,

We would appreciate it if you could advise as to the number, nature and status of Seafood Program potential "fraud" investigations. We have been getting a lot of questions regarding the potential impact on the Second Round Distribution, as well as the specific triggers or other criteria that HUB and/or the Freeh Group might be using to initiate an investigation.

While we have been told repeatedly that these investigations were focusing on the Casey Thonn type situation involving amended or unfiled tax returns, based on the reports that we have been getting recently, it seems like these investigations are now extending to virtually any inconsistency in the underlying claim.

A discrepancy in catch information from over three-to-four years ago is not in and of itself an indicia of "fraud", and BP's bad faith attempts to blow up the Settlement by attacking the Program and/or the Claimants (*see, e.g.,* attached) should not be a motivating factor in driving these investigations.

The Seafood Compensation Program, the SWS Policies issued thereunder, and Sections 4.3.7 and 4.3.8 of the Settlement Agreement recognized and anticipated that there would likely be discrepancies between the frequently inaccurate and incomplete available trip ticket data, the good faith recollection and belief of a Claimant about what types of catch he or she was brining in during the Benchmark Period, and their formal Income Tax Returns (if any). These Commercial Fishermen were promised a Claimant-Friendly Program, with liberal documentation requirements, that accepted *either* available trip ticket data or tax returns, and were intended to view discrepancies in light most favorable to the Claimant. Indeed, these Claimants were invited and encouraged to present truthful, accurate and good faith documents and information in a way that would *maximize* his or her claim.

Class Counsel understand – and fully endorse – reasonable and appropriate efforts to prevent truly fraudulent recoveries, but respectfully suggest that the

original purpose and intent of the Settlement Agreement, its language, its structure, and its Program, must be a guiding factor in the instigation, nature, scope and/or resolution of any necessary investigation.

Any light that you could shed on the volume and timing would be appreciated.

Thanks.

# More problems with the Gulf Settlement:
# Fishy patterns in seafood compensation claims.

As part of the Gulf Settlement, BP established a $2.3 billion Seafood Compensation Program to help shrimpers and fishermen who suffered financial losses due to the spill. Unfortunately, as with other aspects of the Gulf Settlement, the Seafood Compensation Program appears to be tainted by questionable, potentially fraudulent claims. In fact, some all too familiar patterns have emerged:

- Some claims are supported by sworn statements from claimants that conflict with their tax returns, official trip tickets, and even subsequent statements about the amounts they earned and the species they fished.
- To receive higher compensation amounts, many claimants reported that they predominantly or exclusively shrimped, even though their paperwork suggested that they were catching numerous species.
- Some claimants filed sworn statements that describe working only during a limited period of months, which inflates their benchmark earnings and increases their alleged "losses."
- Numerous awards project surprisingly large increases in estimated 2010 earnings, based on sworn statements, sometimes written by family members, and at odds with amounts earned in the prior year, as indicated in tax returns.
- Numerous sworn personal statements from different claimants have identical or near-identical language, including grammatical errors.

Former FBI Director and Federal Judge Louis Freeh has begun to investigate the Seafood Program, and we understand that he has already found reason for suspicion in many of the approved seafood claims he's examined so far.

One billion dollars has already been awarded and paid by the Seafood Compensation Program. How many of these seafood compensation claims had obvious red flags like these? It's wrong and it's unfair to all of the hard-working people of the Gulf who deserve a reliable claims process.

BP remains committed to paying all legitimate claims of real people who suffered real financial losses from the spill. But we will take whatever legal steps necessary to ensure that fraud is not rewarded and claims money goes to claimants who actually deserve it.

For more, go to **theStateoftheGulf.com** or follow **@StateoftheGulf**.

