IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by | * | MDL NO. 2179 |
| the Oil Rig "Deepwater Horizon" | * | |
| in the Gulf of Mexico, on April 20, 2010 | * | SECTION J |
| | * | |
| This document relates to: | * | |
| All Cases and No. 12-970 | * | Honorable CARL J. BARBIER |
| | * | |
| | * | Magistrate Judge SHUSHAN |

**BP'S SURREPLY IN OPPOSITION TO
MOTION TO PROTECT AND PRESERVE CLAIMANT CONFIDENTIALITY
AND TO ENFORCE THE ORDERS OF THE COURT**

BP respectfully files this surreply to address new arguments and factual assertions introduced by Class Counsel for the first time on reply.  Class Counsel take the incredible position that the parties to a multi-billion-dollar settlement agreement have no right to view data regarding claims filed with the Program until the claims are resolved.  This runs counter to the express terms of the Settlement Agreement, is inconsistent with the Claims Administrator's established policy, and contradicts the parties' implementation agreement (which itself tracks the terms of the Settlement Agreement).  Moreover, Class Counsel's motion is counter to the principles of transparency that are crucial to the operation of a functional claims program.

First, The Settlement Agreement expressly provides that the parties are entitled to all ***Claims-related data*** at all times.  *See* BP Opp'n at 2-3.  If the parties had meant to limit pre-determination access to "general, aggregate, nonclaimant-specific data," Reply at 4, they would have said so and would not have given unrestricted access to "Claims-related data."  Class Counsel make a new argument in reply that the definition of the term "Claim" in the Settlement Agreement somehow supports their view.  Reply at 1.  But this definition confirms that the term "Claims-related data" includes data regarding *each* claim filed with the Settlement Program.

The parties' and the Court's prior use of the terms now at issue further confirms that "Claims-related data" includes the data that the CSSP properly has made available to both parties. In the Court's Transition Process Order [Rec. Doc. 5995]–drafted by the parties and approved by the Court before the Settlement Agreement was entered—Paragraph 18 provides: "Any and all claims forms and related claims files and ***claims data*** (collectively, 'Materials'), including but not limited to documents and electronically stored data, that are in the possession, custody or control of the GCCF, shall be made available to the Transition Process, and the Court Supervised Claims Program." (emphasis added). When the Order instructed the GCCF to make available to the Settlement Program "claims data," clearly it did not use that term to mean only "general, aggregate, nonclaimant-specific data," as Class Counsel now suggest "claims data" means. *See* Reply at 4. The Transition Order used the term "claims data" to refer to the database of claim-specific data, concerning each of the GCCF claims. Indeed the Transition Process could not have functioned with only general, aggregate information. The Settlement Agreement used the same terminology, and gave BP and Class Counsel full access.

Second, Class Counsel's insurmountable problem is that the Claims Administrator officially interpreted Section 4.4.14 to permit the access BP has always enjoyed. This policy—in effect since June 2012 and codified in April 2013—goes unmentioned in Class Counsel's original memorandum or reply. Instead, Class Counsel make a new argument that a series of e-mails supports their "recollection" that they did not agree to the implementation of the Claims Administrator's policy. *See* Reply at 2-3. No evidence supports this new argument.

All of the competent evidence establishes that Class Counsel agreed on June 26, 2012, and again on July 2, 2012, that all parties are entitled to pre-determination data at all times. BP counsel testified to this fact in his declaration. Cantor Decl. ¶¶ 3, 6, 8, and 10. Likewise, the

CSSP General Counsel authored an email confirming that this agreement occurred: "[i]t was agreed . . . Claimants, Class Counsel and BP have full access to the claims file and claims information, except for the Claims Administrator's calculations, at any time." Class Counsel Mem. Ex. 1, 2/12/2013 e-mail of C. Reitano.  And one of plaintiffs' attorneys confirmed in yet another email that both the Claims Administrator and his lead vendor at BrownGreer recalled that Class Counsel had so agreed.  Class Counsel Mem. Ex. 4, 3/12/2013 e-mail of J. Creevy ("Pat [Juneau] and Orran [Brown] believe that this access policy was agreed to by the parties at a meeting held back in June [2012]."). Class Counsel offer no evidence to the contrary. *Augman v. Seacor Marine, L.L.C.*, No. CIV.A. 07-1508, 2007 WL 4326910, *1 (E.D. La. Dec. 6, 2007) ("Unsworn assertions are not evidence.").[1]

Third, the remainder of Class Counsel's arguments are irrelevant (as they do not inform what the Settlement Agreement means) and, more troublingly, are factually inaccurate.  As an initial matter, Class Counsel persist with the incorrect statement that BP representatives had "secret," unapproved meetings with the CSSP, and allege that BP "controlled the agenda" for the meetings.  Reply at 3.  This is not true.  *See* Cantor Decl. ¶¶ 11-14.  The weekly meetings at issue were requested by the CSSP and its vendors, not BP.  Whether to invite Class Counsel was a decision of the CSSP, but in no way were the meetings "secret."  They were approved by the CSSP General Counsel, Ms. Reitano.  Ms. Reitano had previously approved meetings that

---

[1] Nothing in Exhibit 3 to BP's opposition supports Class Counsel's position.  The e-mails Class Counsel cite in Reply were sent after the June 26, 2012 meeting at which the agreement was reached, and confirm BP's position.  Because Class Counsel's post-meeting e-mails took a position directly at odds with their agreement, BP suggested an additional conference to confirm that there was no misunderstanding at the Claims Administration Panel meeting.  On July 2, 2012, the agreement regarding data access was reconfirmed.  Cantor Decl. ¶ 8.  Class Counsel ***do not dispute*** this July 2, 2012 reconfirmation and offer no contrary e-mails.

3

occurred prior to her November 16, 2012 approval of weekly going-forward meetings. Nor did BP "control" what was discussed. Most importantly, there is zero support for Class Counsel's allegation that the resolution of claims was discussed. All of the agenda points referred to by Class Counsel address the type of data to be provided, not how a claim should be resolved.

In addition, Class Counsel make the wholly unsupported assertion that BP may have "sold, pooled or otherwise shared" claimant data with "the data analytics company SAS."[2] *See* Reply at 4. Class Counsel do not offer a shred of evidence in support of this contention. As Class Counsel know, BP made clear at the original meeting that it has not sold, pooled, or shared claimant data with SAS. SAS is a computer software manufacturer, which came up at a recent IT workstream meeting because the Claims Administrator is considering licensing SAS technology to use in connection with the CSSP's anti-fraud process. SAS provided a demonstration of its software to both BP and Class Counsel. There is no basis for Class Counsel's claim that BP provided claims data to SAS.

To the extent that Class Counsel takes issue with BP's sharing of claims data with its own experts or is requesting information about BP's experts, *see* Reply at 4, their allegations and request are baseless. The Confidentiality Order explicitly allows Claims Information to be shared with necessary other persons. *See, e.g.*, Rec. Doc. 6822 ¶ 13 ("Each Authorized Recipient may disclose the Claims Information to such other persons as is reasonably necessary for the implementation of such purpose, including experts, consultants, counsel, and other advisors, and the direct staff of any of the foregoing.").

---

[2]  Notably, each of the five e-mails attached to Class Counsel's Reply were sent *after* Class Counsel's motion was filed, necessitating this surreply.

4

Finally, Class Counsel introduce a new, unsupported allegation that transparency should be eliminated because of BP's communications with the Freeh Group, which Class Counsel describe as "BP's continuing efforts to directly and/or indirectly influence the investigation, evaluation, delay and denial of Claims." Reply at 5. Class Counsel have not identified a single instance in which BP or the Freeh Group interfered with the processing of a claim.

Class Counsel's argument reflects a fundamental misunderstanding of the role of the Special Master. Per the Court's orders, the Special Master is expressly authorized to "communicate *ex parte* with the Court and the parties." [Rec. Doc. 10564 at 3]. Indeed, the Special Master has asked BP for its views on certain issues and to provide examples in the data. To the extent that Class Counsel contend that the Special Master is prohibited from conferring with the parties and obtaining information, the claim is meritless and contrary to the Special Master's mandate. Cooperating with the Special Master and providing examples of potential problems is not an improper attempt to influence the processing or payment of claims. Rather, it is part of an authorized process to provide examples of claims that the Freeh Group might find useful to review in pursuing its mandate to assist the Claims Administrator and ensure the integrity of the CSSP. [Rec. Doc. 10564 at 2]. There is no support for Class Counsel's allegation that the Freeh Group has been improperly influenced by BP's provision of data. *See* Reply at 5.[3] Class Counsel's position does, however, raise the question of why Class Counsel are so intent on avoiding fraud detection and restricting the Freeh Group's investigation.

---

[3] Similarly, there is no basis for Class Counsel's attack on BP for providing suggestions to the CSSP. The Claims Administrator has made clear from the outset that he welcomes input and suggestions from both parties. Class Counsel attacks BP for providing comments to the CSSP regarding the fraud checklist. However, Mr. Welker responded that he had in fact "requested input from the parties regarding the [fraud] checklists." *See* Reply, Ex. C.

March 18, 2014

Mark Holstein
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX  77079
Telephone:  (281) 366-2000
Telefax:  (312) 862-2200

Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Telephone:  (202) 942-5000
Telefax:  (202) 942-5999

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 662-5985
Telefax:  (202) 662-6291

Jeffrey Lennard
Keith Moskowitz
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606
Telephone:  (312) 876-8000
Telefax:  (312) 876-7934

*OF COUNSEL*

Respectfully submitted,

   */s/ Kevin M. Downey*   
Kevin M. Downey
F. Lane Heard III
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 434-5000
Telefax:  (202) 434-5029

   */s/ Don K. Haycraft*   
S. Gene Fendler (Bar #05510)
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Telefax:  (312) 862-2200

Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 879-5000
Telefax:  (202) 879-5200

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.
AND BP AMERICA PRODUCTION COMPANY*

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 18th day of March, 2014.

                                                                             */s/ Don. K. Haycraft*
                                                                              Don K. Haycraft