UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL No. 2179 |
| *"DEEPWATER HORIZON"* in the | : | |
| GULF OF MEXICO, on APRIL 20, 2010 | : | SECTION: J |
| | : | |
| This document relates to: | : | JUDGE BARBIER |
| | : | |
| No. 12-970 | : | MAG. JUDGE SHUSHAN |

**CLASS COUNSEL'S RESPONSE TO BP'S SUR-REPLY BRIEF
IN FURTHER SUPPORT OF MOTION TO PROTECT AND PRESERVE CLAIMANT
CONFIDENTIALITY AND TO ENFORCE THE ORDERS OF THE COURT**

By focusing solely on the meaning of the term "Claims-related data" in Section 4.4.14 of the Settlement Agreement and associated Orders of the Court, BP completely ignores and disregards the fact that, (whatever "Claims-related data" means), BP's access is modified and limited by the word "*however*".[1] In particular:

> *However,* BP and Class Counsel shall <u>not</u> have access to any Claim Files for Claims that are being processed and have not yet been resolved in the Settlement Program except if the Claim File is needed by BP, a Claimant, or their counsel to prosecute or defend an Appeal.[2]

The Claims Administrator's Policy upon which BP relies defines a "Claim File" as:

> The Registration Form of a Claimant and the Claim Form, supporting documents and other materials presented by a Claimant or any party relating to a Claimant or Claim by the Claimant…[3]

Hence, under the clear, express and unambiguous language of the Settlement Agreement, the Court's Order, and the Claims Administrator's Policy, BP does *not* get access to the information or data contained within the Registration Form, the Claim Form, or any supporting documents or other materials, until *after* there is a formal Eligibility Determination.

---

[1] Such access is also modified and limited to a "legitimate purpose".
[2] SETTLEMENT AGREEMENT, Section 4.4.14 (emphasis supplied); ORDER REGARDING SETTLEMENT IMPLEMENTATION (May 22, 2012) [Doc 6573] ¶9 (emphasis supplied).
[3] CLAIMS ADMINISTRATOR POLICY (April 9, 2013) [BP Exhibit 9] [Doc 12535-9], ¶1(d).

Contrary to BP's characterization of its own agreement as "incredible",[4] BP Counsel has, at least twice, confirmed the fairly straightforward reasoning and rationale – *i.e.* because Class Counsel insisted that the Settlement Program must be *independent* of BP's direction, influence or control, the Parties agreed, in BP Counsel's own words, "to ensure that there would be no interference with the Settlement Program's evaluation of a claim while it is in process."[5]

BP relies on a Policy that was not issued until more than *nine months* after the Settlement Program started to receive Claimant-specific information, and is, with all due respect to the Claims Administrator, flatly contrary to the express language of the Settlement Agreement and associated Orders of the Court.  The first Policy Memo, which is dated March 19, 2013, does not attempt to draw any distinction, (as BP does), between "Claims-related data" and "Claims Files", but rather, expressly provides that "BP and Class Counsel: Shall have equal Access to Claim Reports and to the *Claim Files* and Claims Database on all Claimants and Claims."[6] Respectfully, there is no way to reconcile that policy with the clear and express language, purpose and intent of the Settlement Agreement.

Rather, it was based on BrownGreer's (purported) recollection of a (purported) 'agreement' by Co-Lead Class Counsel to allow BP to have access to the Claims Files,[7] (access which, for over nine months, BrownGreer had already been providing). This purported 'agreement' is flatly and unequivocally contradicted by the contemporaneous e-mails from Co-Lead Class Counsel that BP has submitted.[8]  Moreover, it is doubtful that Class Counsel would have had the authority to 'agree' to something that was directly contrary to the express terms of

---

[4] *See* BP SUR-REPLY BRIEF, at p.1.

[5] LETTER FROM BP COUNSEL DAN CANTOR (March 11, 2013) [Doc 12413-4], p.2; *see also,* DECLARATION OF BP COUNSEL DAN CANTOR [Doc 12535-1] ¶3 ("no party should have the ability to interfere with the Settlement Program's evaluation of a claim while the evaluation is in process").

[6] CLAIMS ADMINISTRATOR POLICY MEMO (March 19, 2013) [BP Exhibit 8] [Doc 12535-8], ¶2(b).

[7] *See* REITANO E-MAIL (Feb. 7, 2013) [BP Exhibit 6] [Doc 12535-6] ("*We turned to our Vendor* to provide a complete explanation of the access that currently exists, as well as the Orders, Terms, and Decisions governing that access") (emphasis supplied); BROWNGREER MEMO (Feb. 7, 2013) [BP Exhibit 5] [Doc 12535-5] ¶VI(A)(1).

[8] *See* REPLY BRIEF [Doc 12539], pp.2-3; *quoting* BP EXHIBIT 3 [Doc 12535-3]; (*see also,* BP EXHIBIT 2 [Doc 12535-2]).

the Settlement Agreement and at least one Order of the Court.  Finally, it was clear that any such (purported) 'agreement' by Class Counsel, as of at March 2013, had been expressly revoked.

While complaining about BP's rights to "transparency",[9] BP does not contradict the fact that:

- Class Counsel were not aware that BP had access to Claimant-specific pre-Determination data until February of 2013;

- Class Counsel were not aware that BP and BrownGreer were having secret weekly calls until January 2014;

- Despite Mr. Juneau's instructions that there be no *ex parte* communications directly with Program Vendors, BP had weekly calls with BrownGreer from July 2012 thru November 2012, when Mr. Reitano ostensibly approved "technical" data calls;

- Neither Mr. Juneau nor Chris Reade were aware that BP and BrownGreer were having weekly calls (or any calls) until the end of 2013 or January 2014;

- Class Counsel did not learn that BP was running "scripts" or "BOTs" or had some other direct electronic access to the BrownGreer IT system until October of 2013;

- Class Counsel have not been provided with the "List of 700" and/or other Claims that BP has encouraged the Freeh Group to investigate for potential / alleged "fraud";

- Class Counsel have not been provided with the "Be On the Lookout (BOLO) List";

- Class Counsel have not been provided with the checklists, algorithms, requests, demands, protocols, or other suggestions that BP has made or provided to the Freeh Group and/or the Program regarding the potential review, processing, investigation, evaluation, suspension, denial and/or claw-back of Claims;

- BP did not respond to Class Counsel's request for the steps, if any, that BP has taken to ensure or confirm that its outside vendors or consultants (including, but not limited to, a data analytics company such as SAS) have not shared, sold or otherwise pooled Claimant-specific data which is protected as "confidential" under Pre-Trial Order No. 13 and the associated Settlement Implementation Orders of the Court.[10]

---

[9] As noted: "Transparent in the sense that each CLAIMANT would know (a) in advance, the Frameworks by which his/her claim would be processed; and (b) at the time of denial/determination, the basis upon which his/her claim had been calculated or denied. (No one ever expressed any significance or concern about the inner workings of the Settlement Program, much less the confidential information contained within Claims Files, being 'transparent' to BP.)" HERMAN E-MAIL TO CANTOR (Nov. 11, 2013) [Doc 12413-10].

[10] The question is not whether BP sold, pooled or otherwise shared Claimant-specific data. *See* BP SUR-REPLY BRIEF, p.4.  The question is whether one of BP's vendors or consultants, (such as KPMG, Alix Partners, Compass-Lexicon, some type of "investigator" that BP may have hired, or a data analytics company such as SAS), may have sold, pooled or otherwise shared confidential data with unknown third parties.

**Conclusion**

For the above and foregoing reasons, and for the reasons stated in Class Counsel's Motion, Memorandum, Reply Brief, and Exhibits, Plaintiffs respectfully request the Court to enforce the terms of the Settlement Agreement and its own Court Orders, to eliminate BP's access to confidential Claim-specific data, files and other information prior to a formal Eligibility Determination, and to order that all such confidential and unauthorized data be returned.

This 19th day of March, 2014.

Respectfully submitted,

| | |
|---|---|
| /s/   Stephen J. Herman | /s/ James Parkerson Roy |
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No.11511 |
| **HERMAN HERMAN & KATZ LLC** | **DOMENGEAUX WRIGHT ROY & EDWARDS LLC** |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhklawfirm.com | E-Mail: jimr@wrightroy.com |
| *Co-Lead Class Counsel* | *Co-Lead Class Counsel* |

**CERTIFICATE OF SERVICE**

**WE HEREBY CERTIFY** that the above and foregoing Response will be filed into the record electronically *via* the Court's ECF System, and served upon All Counsel *via* Lexis-Nexis File & Serve this 19th day of March, 2014, in accordance with Pre-Trial Order No. 12.

/s/ James Parkerson Roy and Stephen J. Herman