IN THE UNITED STATES DISTRICT COURT

FOR THE

EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | Oil Spill by the Oil Rig | ) | |
| | "Deepwater Horizon" | ) | MDL 2179 |
| | In the Gulf of Mexico. | ) | SECTION J |
| | On April 20, 2010 | ) | |
| | | | |
| This document relates to: | | ) | JUDGE BARBIER |
| No. 12-970, Bon Secour | | ) | |
| Fisheries, Inc., et al v. BP | | ) | MAG. JUDGE SHUSHAN |
| | | ) | |
| And All Actions | | ) | |

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF**
<u>**MOTION TO CONFIRM ARBITRATION AWARD**</u>
<u>**FOR CLAIMANT 100089377**</u>

E. J. Saad  (AL861451)
Matthew Andrews  (AL167247)
ATTORNEYS FOR CLAIMANT 100089377
E.  J. SAAD LAW FIRM
TELEPHONE: 251-660-0888
FAX:  251-660-0777
ejsaad@ejsaadlaw.com
mandrews@ejsaadlaw.com

Frederick T. Kuykendall, III
KUYKENDALL & ASSOCIATES, LLC
ATTORNEYS FOR CLAIMANT 100089377
AL Bar No.: ASB4462A59F
Federal Bar No.: KUYKF4462
Telephone:  (251)928-4008
Fax: (251)928-2151
ftkuykendall@yahoo.com

James M. Garner (195890
Martha Y. Curtis (20446)
Kevin M. McGlone (28145)
Telephone: (504)299-2133
Fax: (504)299-2333
Sher Garner Cahill Richter Klein & Hilbert, L.L.C.
jgarner@SHERGARNER.com
mcurtis@SHERGARNER.com
kcglone@SHERGARNER.com

# TABLE OF CONTENTS

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

I.   THE AGREEMENT'S APPEAL PROCESS,
     AS SET OUT IN SECTION 6, IS AN
     ARBITRATION AGREEMENT SUBJECT TO
     THE FEDERAL ARBITRATION ACT AND
     THE RESULTING AWARD IS BINDING ON
     THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

     A.   The Settlement Agreement Is Governed
          By Maritime Law And The Arbitration
          Agreement Contained Therein Is Subject
          To The Federal Arbitration Act, 9
          U.S.C.S. §1 et al . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

     B.   The Dispute Resolution Procedure Established
          By Section 6, CLAIMS APPEAL PROCESS,
          Is An Arbitration Agreement . . . . . . . . . . . . . . . . . . . . . .   8

II.  THE ARBITRATORS' AWARD, AS ISSUED
     BY THE APPEAL PANEL ON SEPTEMBER
     29, 2013, IS FINAL AND DUE TO BE
     CONFIRMED UNDER THE FEDERAL
     ARBITRATION ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

III. THE FIFTH CIRCUIT COURT OF APPEALS'
     OPINION AND DECISIONS OF THE DISTRUCT
     COURT MUST BE APPLIED CONSISTENT
     WITH CONTROLLING FEDERAL LAW AND
     CANNOT DISRUPT AN ARBITRATION AWARD
     EXCEPT ON GROUNDS PERMITTED BY
     SECTIONS 10 AND 11 OF THE FEDERAL
     ARBITRATION ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

IV.     THE CLAIMS ADMINISTRATOR HAS A MINISTERIAL
        DUTY TO PAY CLAIMANT-377'S CLAIM AND SHOULD BE
        DIRECTED TO DO SO BY THE COURT . . . . . . . . . . . . . . . . . . . . .     23


Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     25

## TABLE OF AUTHORITIES

<u>Cases</u>

<u>ASW Allstate Painting & Constr. Co. v. Lexington Ins. Co.</u>,
188 F.3d 307 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

<u>AT&T Tech., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643,
106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) . . . . . . . . . . . . . . . . . . . 5, 16, 20

<u>AT&T Mobility, LLC v. Vincent Concepcion</u>, S.A., 131 S.Ct. 1740
179 L.Ed.2d 742 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14, 20

<u>Alford v. Kuhlman Elec. Corp.</u>, 716 F.3d 909 (5th Cir. 2013) . . . . . . . . . . 3

<u>Alsem Indus. V. M/V Nick</u>, 1999 U.S. Dist LEXIS 20109 *5
(E.D. La. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>American Almond Produ. Co. v. Consolidated Pecan S. Co.</u>,
144 F.2d 448 (2nd Cir. 1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>American Federation of State, County and Municipal Employees,</u>
<u>Local 1902, AFL-CIO v. Metropolitan Water District of</u>
<u>Southern California v. Bullard</u>, 126 Cal. App. 4th 247,
24 Cal. Rptr. 3d 285 (Cal. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . 9, 10. 12, 13

<u>Am. Heritage Life Ins. Co. v. Lang</u>, 321 F.3d 533 (5th Cir. 2003) . . . . . . 5

<u>Apache Bohai Corp. LDC v. Texaco China BV</u>, 480 F.3d 397
(5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>Armstrong v. Assocs. Int'l Holding Corp.</u>, 242 Fed. Appx. 955
(5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15, 16, 17, 20

<u>Bain v. Bank</u>, 2013 U.S. App. LEXIS 18180 (5th Cir. 2013) . . . . . . . . . . 22

<u>Banks v. Mitsubishi Motors Credit of Am.</u>, 156 Fed. Appx. 710
(5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 16

<u>Beverly Enterprises-Mississippi v. Powell</u>, 244 Fed. Appx. 577
(5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Brook v. Peak Int'l, Ltd.</u>, 294 F3d 668 (5th Cir. 2002) . . . . . . . . . . . . . 13

<u>Bulko v. Morgan Stanley DW, Inc.</u>, 450 F.3d 622 (5th Cir. 2006) . . . . . 13

<u>Cargill Ferrous International v. The M/V Anatoli</u>, 935 F. Supp.
    833 (E.D. La. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

<u>Carter v. Countrywide Credit Indus., Inc.</u>, 362 F.3d 294
    (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5, 16, 17

<u>Cheng-Canindin v. Renaissance Hotel Associates</u>, 50 Cal. App. 4th 676,
    57 Cal. Rptr. 2d 867 (Cal. App. 1996) . . . . . . . . . . . . . . . . . . . .    9. 10, 12, 13

<u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 121 S.Ct. 1302,
    149 L.Ed.2d 234 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

<u>Citigroup Global Markets, Inc. v. Bacon</u>, 562 F.3d 349 (5th Cir. 2009) . .    22

<u>Citizens Bank v. Alafabco, Inc.</u>, 539 U.S. 52, 2123 S.Ct. 2037,
    156 L.Ed.2d 46 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

<u>Gerardo  Gerson and Rivadavia, S.A. v. UBS Financial Services,</u>
    <u>Inc.</u>, 2012 U. S. Dist. LEXIS 128128 *6 (S.D. Fla. 2012) . . . . . . .    3

<u>GMC v. Pamela Equities Corp.</u>, 146 F.3d 242 (5th Cir. 1998) . . . . . . . . .    9, 14

<u>Grant v. Houser</u>, 469 Fed. Appx. 310, 315 (5th Cir. 2012) . . . . . . . .    3, 5, 8, 15, 16

<u>Guidry v. Halliburton Geophysical Services, Inc.</u>, 976 F.2d 938
    (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

<u>Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.</u> 304 F.3d 476
    (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

<u>Hall Street Assocs., L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576, 128 S. Ct.
    1396, 170 L. Ed. 2d 254 (2008) . . . . . . . . . . . . . . . . . . . . . . . . .    3, 20, 21, 22, 23

<u>Hamel-Schwulst v. Country Place Mortg. Ltd.</u>, 406 Fed. Appx. 906
    (5th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23

<u>Hooters of America, Inc. v. Phillips</u>, 39 F. Supp. 2d 582
    (D S.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9, 12, 13

<u>In re: Deepwater Horizon</u>, 2013 US App. LEXIS 20188 (5th Cir. 2013) . . .    2

<u>In re: Oil Spill</u>, 808 F.Supp.2d 943 (E.D. La. 2011) . . . . . . . . . . . . . . . .    7

<u>In re Raymark Indus., Inc.</u>, 831 F.2d 550 (5th Cir. 1987) . . . . . . . . . . . .    3

In re Travelers Indem. Co., 2004 U.S. Dist LEXIS 30074
  (D. Conn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Investment Partners v. Glamour Shots, 298 F.3d 314 (5th Cir. 2002). . . . 10

Kabia v. Koch, 713 N.Y.S. 2d 250 (Civ. Ct. N.Y. 2000) . . . . . . . . . . . . . 9, 12, 13

Klein v. Nabors Drilling USA, LP, 710 F.3d 234 (5th Cir. 2013) . . . . . . 4, 15, 20

Martel v. Ensco Offshore Co., 449 Fed. Appx. 351 (5th Cir. 2011) . . . . . . 22, 23

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). . . . . . . . . . . . 3, 5, 10, 14, 16

Nat'l Union Fire Ins. Co. v. Circle, Inc., 915 F.2d 986 (5th Cir. 1990) . . . 3

Nitro-Lift Techs., LLC v. Howard, 133 S. Ct. 500, 133 S.Ct. 500,
    184 L. Ed. 2d 328  (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14

Noffke v. Bakke, 760 N.W.2d 156 (Wis. 2009) . . . . . . . . . . . . . . . . . . 25

QPro, Inc. v.  RTD Quality Servs. USA, 761 F.Supp.2d 492
    (S.D. Texas 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16

Prasad v. Bullard, 51 So.3d 35 (La. App., 5 Cir. 2010) . . . . . . . . . . . . 9, 12

Robertson v. J.C. Penney Co., Inc., 484 F.Supp.2d 561 (S.D. Miss. 2007) . 19

Rogers v. KBR Technical Services, Inc., 2007 U.S. Dist. LEXIS
    83070 *9-*10 (S.D. Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Rolls Royce Industrial Power v. M.V. Fratzis M., 1995 U.S. Dist. LEXIS
    22219 *36 (S.D. N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Sam Reisfeld & Son Import Co. v. Eteco, 530 F.2d 679 (5th Cir. 1976) . . . . 5

Shales v. Discover Card Servs., 2002 U.S. Dist. LEXIS
    16502 *6 (E.D. La. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sheason/American Express, Inc. v. McMahon, 482 U.S. 220, 207
    S.Ct. 2332, 96 L.Ed.2d 185 (1987) . . . . . . . . . . . . . . . . . . . . . . . . 65

Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852,
    79 L.Ed.2d 1 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574,
  80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) . . . . . . . . . . . . . . . . . . . . . . . .      4, 16, 20

Swift Industries, Inc. v. Botany Industries, Inc., 466 F.2d 1125
  (3d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      10

The Householder Group v. Caughran, 354 Fed. Appx. 848 (5th Cir. 2009) . . . .      21, 23

Tricon Energy Ltd. V. Vinmar Int'l, Ltd., 718 F.3d 448 (5th Cir. 2013) . . . . . .      6, 16

Tokura Constr. Co. v. Corporacion Raymond, S.A., 533 F.Supp. 1271
  (S.D. Tex. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      10

Trustees of Empire State Carpenters Annuity v. Lynnview Construction
  Corp., 2013 U. S. Dist. LEXIS*13-14 (E.D.N.Y. 2013) . . . . . . . . . . . . .      3

Turner Marine Fleeting v. Quality Fab & Mech., 2002 U.S. Dist. LEXIS
  24258 (E.D. La. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      3

United States v. O'Keefe, 128 F.3d 885 (5th Cir 1997) . . . . . . . . . . . . . . . . . .      25

United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 51 S.Ct 502,
  75 L.Ed. 1148 (1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      25

Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc., 666
  F.3d 932 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      4, 14

Washington Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260 (5th Cir. 2004) . . .      5

Watkins v. Fly, 136 F.2d 578 (5th Cir 1948) . . . . . . . . . . . . . . . . . . . . . . . . . .      5. 19

Webb v. Invertacorp., Inc., 89 F.3d 252 (5th Cir. 1996) . . . . . . . . . . . . . . . . .      5, 15

Woods v. PAM Transp., Inc.-LU, 440 Fed. Appx. 265 (5th Cir. 2012) . . . . . .      22

**Statutes**

Federal Arbitration Act, (FAA). 9 U.S.C. §§1-9 . . . . . .   3, 4, 5,  6, 7, 8, 10, 13, 14, 15, 21, 22, 23

9 U.S.C. §§1-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      8

9 U.S.C. §2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      8

9 U.S.C. §6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

9 U.S.C. §9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 23

9 U.S.C. §10-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

**Miscellaneous:**

Black's Law Dictionary, Ninth Ed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## STATEMENT OF THE FACTS

This matter arises out of a settlement agreement, ("Settlement Agreement" or "Agreement"), reached by a class of parties with BP Exploration & Production, Inc. and BP America Production Company (jointly referred to as "BP") on April 18, 2012. (Doc. 6430-1 at 118). The Settlement Agreement was approved by the Court on May 3, 2012. (Doc. 8139).

Claimant 100089377, (Claimant-377) is a trucking/transportation operation, NAICS 484121, in Houston County, Alabama and was open for business prior to and during April 20, 2010 to April 16, 2012. (Ex. 1). Claimant-377's physical location is in Economic Loss Zone D. (Ex. 2). Claimant-377 is an Economic Class Member entitled to present a claim under the Agreement. Claimant-377 submitted its Settlement Registration Claim Form and Business Economic Loss Claim Form on July 25, 2012. (Exs. 1, 2). Claimant-377 presented its supporting contemporaneous financial data, kept on an accrual basis of accounting, which was reviewed, reconciled and approved by the Claims Administrator. (Ex. 7). On July 8, 2013, the Claims Administrator issued an Eligibility Notice which determined that Claimant-377's claim qualified for payment and set the Award Amount at $1,468,463.73. (Ex. 3). Claimant-377 properly executed the Full and Final Release, Settlement, and Covenant Not to Sue and timely returned it to the Claims Administrator. (Ex. 3, 18). On June 27, 2013, BP timely filed a Notice of Appeal requesting that Claimant-377's claim be submitted to the Appeal Panel as provided by the Agreement. (Ex. 4). BP and Claimant-377 conducted the arbitration in the prescribed manner with each submitting their respective position to the three-member Panel. (Exs. 4, 5, 6, 7, 8. 9, 10). On August 29, 2013, the Panel's Decision was issued which established a Compensation Amount of $1,172,574.98 and a .25 Risk Transfer Premium Multiplier, (RTP). (Ex. 11, 12). Based on the Panel's Decision, a Post-Appeal Eligibility Notice was issued by the Claims Administrator on August 30, 2013, which totaled $1,527,091.98, which included the 5% Review Cost increase in the Post-Appeal Compensation Amount. (Ex. 13). On September 13, 2013, BP made a Request for Discretionary Court Review as allowed under the Agreement and governing

Rules. (Sec. 6.6, Doc. 10185-1 at 3-4). (Ex. 14, 15).   On September 30, 2013, a Denial of Request for Discretionary Court Review Notice was issued. (Ex. 17).

On October 2, 2013, the United States Fifth Circuit Court of Appeals issued its opinion In re: Deepwater Horizon, 2013 US App. LEXIS 20188 (5th Cir. 2013), which reversed the District Court's ruling and "instruct[ed] the district court to expeditiously craft a narrowly-tailored injunction. . . ." Id. at *59.   In keeping with the Fifth Circuit's instructions, the District Court issued a Preliminary Injunction Related to BEL Claims on October 18, 2013, which required the Claims Administrator to temporarily suspend action on Business Economic Loss claims then pending at any stage in the Claims Appeal Process. (Docs. 11697 and 11790).   In response to a subsequent order of the Fifth Circuit, the Court revised its preliminary injunction on December 5, 2013 and issued an order maintaining the December 5 Order on December 24, 2013. (Doc. 12055).   Although Claimant-377's Post-Appeal Eligibility Notice had been issued prior to the Fifth Circuit's opinion, it had not been paid and payment is presently being withheld based on the subsequent Preliminary Injunction. (Docs. 11697, 11790, 12055). See, also, In re: Deepwater Horizon, 2013 US App. LEXIS 20188.   On January 10, 2014, the Fifth Circuit affirmed the District Court's class certification and settlement approval rulings and found that Article III standing and the requirements of Fed. R. Civ. P. 23 had been satisfied. (Doc. 512496788). See, also, In re: Deepwater Horizon, 2014 U.S. App. LEXIS 575 (5th Cir. La. 2014).   On March 3, 2014, the Fifth Circuit affirmed the District Court's ruling of December 24, 2013; the Court ordered "[t]he injunction prohibiting payment of the relevant claims is vacated." (Doc. 512550220). See, also, In re: Deepwater Horizon, 2014 U.S. App. LEXIS 3967.

## **STANDARD OF REVIEW**

This motion seeks confirmation of an arbitration award issued by a three member arbitration panel (Panel or Appeal Panel), acting pursuant to the Settlement Agreement between BP and the Economic Class Members, which includes the Claimant-377.

2

There is a strong presumption in favor of arbitration under the Federal Arbitration Act, (FAA), which requires an expedited and summary hearing of motions to enforce arbitration and arbitration awards. See, Grant v. Houser, 469 Fed. Appx. 310, 315 (5th Cir. 2012), citing, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). See, also, 9 U.S.C. §2. As stated in Grant:

> "[T]here is a strong presumption in favor of arbitration under the FAA. *See 9 U.S.C. § 2; see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).* Accordingly, **for ruling on a motion to compel arbitration, the FAA requires "an expeditious and summary hearing, with only restricted inquiry into factual issues"**. *Moses H. Cone Mem'l Hosp., 460 U.S. at 22.* The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence. *See Banks, 156 F. App'x at 712.* (emphasis added).

469 Fed. Appx. at 315. The law requires a motion to compel arbitration or enforce an arbitration award to be expeditiously set for hearing and restricts the scope of inquiry into factual issues. See, also, Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 578, 128 S. Ct. 1396, 1400, 170 L. Ed. 2d 254 (2008); Trustees Of Empire State Carpenters Annuity v. Lynnview Construction Corp., 2013 U.S. Dist. LEXIS *13-14 (E.D.N.Y. 2013); Gerardo Gerson and Rivadavia, S.A. v. UBS Financial Services, Inc., 2012 U.S. Dist. LEXIS 128128 *6 (S.D. Fla. 2012). Therefore, the Court's consideration of this motion should be expeditiously heard and subject to a restricted inquiry into the factual issues. Id.

An agreement to settle a claim, i.e., a settlement agreement, is a contract. See, e.g., Alford v. Kuhlman Elec. Corp., 716 F.3d 909, 912 (5th Cir. 2013)(settlement agreements are contracts); Guidry v. Halliburton Geophysical Services, Inc., 976 F.2d 938, 940 (5th Cir. 1992)(a settlement agreement is a contract); In re Raymark Indus., Inc., 831 F.2d 550, 553 (5th Cir. 1987)(settlements are contracts). Where a settlement agreement is clear and unambiguous, interpretation is a question of law and the contract's language is to be given its plain meaning. See, Alford, 716 F.3d at 712; Nat'l Union Fire Ins. Co. v. Circle, Inc., 915 F.2d 986, 989 (5th Cir. 1990); Turner Marine Fleeting v. Quality Fab & Mech., 2002 U.S. Dist. LEXIS 24258 (E.D. La.

2002). If the agreement is ambiguous, the court's interpretation is subject to review only for clear error and the court may consider extrinsic evidence as part of its interpretation. Id.

Courts should be mindful of the "national policy favoring arbitration" as embodied in the FAA. See, e.g., Nitro-Lift Techs., LLC v. Howard, 133 S. Ct. 500, 502, 133 S.Ct. 500, 501, 184 L. Ed. 2d 328, 331 (2012); AT&T Mobility, LLC v. Concepcion, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011); Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc., 666 F.3d 932, 936 (5th Cir. 2012). As stated in AT&T Mobility:

> "[T]he FAA was designed to promote arbitration. They have repeatedly described the Act as '**embod[ying] [a] national policy favoring arbitration**,' *Buckeye Check Cashing, 546 U.S., at 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038*, and 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary,' [citations omitted] Thus, in *Preston* v. *Ferrer*, holding preempted a state-law rule requiring exhaustion of administrative remedies before arbitration, we said: '**A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results,'** which objective would be 'frustrated' by requiring a dispute to be heard by an agency first. *552 U.S., at 357-358, 128 S. Ct. 1396, 170 L. Ed. 2d 254*. **Federal Arbitration Act is designed to promote arbitration.**" (emphasis added).

131 S.Ct. at 1749, 179 L.Ed.2d at 755. Accordingly, if the Settlement Agreement contains a dispute resolution provision that constitutes an arbitration agreement, the Court should enforce it to the fullest, consistent with the national policy embodied in the FAA. Id.

The initial question of whether the parties have an agreement to arbitrate is one for the Court to decide. See, Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); Armstrong v. Assocs. Int'l Holding Corp., 242 Fed. Appx. 955, 957 (5th Cir. 2007); Klein v. Nabors Drilling USA, LP, 710 F.3d 234 (5th Cir. 2013). As stated in Armstrong:

> "**To determine whether the parties agreed to arbitrate a dispute, the district court considers: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement.** *Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996).* **When a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive**

4

**assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.**'" (emphasis added).

242 Fed. Appx. 955, 957. See, also, AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (quoting Steelworkers v. Warrior & Gulf Navigation Co ., 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960).

When deciding whether the parties agreed to arbitrate the dispute, the Court must give due regard to the federal policy favoring arbitration. See, Webb v. Invertacorp., Inc., 89 F.3d 252, 258 (5th Cir. 1996).   Normally, arbitration agreements are contractual and parties who submit to such an agreement are bound by its terms. See, Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 537 (5th Cir. 2003).   The enforceability of an arbitration clause is governed exclusively by the FAA. See, Beverly Enterprises-Mississippi v. Powell, 244 Fed. Appx. 577, 579 (5th Cir. 2012); Sam Reisfeld & Son Import Co. v. Eteco, 530 F.2d 679, 681 (5th Cir. 1976). The FAA creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate. See, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 942, 74 L.Ed.2d 765, 786 fn. 32 (1983).

Under the mandate of the Federal Arbitration Act, the party seeking to compel or enforce arbitration need only prove the existence of the agreement to arbitrate by a preponderance of the evidence. See, Grant, 469 Fed. Appx. at, 315; Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 297 (5th Cir. 2004); Banks v. Mitsubishi Motors Credit of Am., 156 Fed. Appx. 710, 712 (5th Cir. 2005)(arbitration agreement proven by preponderance of evidence). Once the preponderance bar is crested, "the burden shifts to the party opposing arbitration to demonstrate either that the agreement is invalid or, at a minimum, to allege the dispute is outside of the agreement's scope." See, Grant, 469 Fed. Appx. at, 315, citing, Carter, 362 F.3d at 297.   The party seeking to avoid arbitration must prove that the arbitration clause was the product of fraud, coercion or such ground as exists at law or in equity for revocation of contracts. Id.  As stated in Washington Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260 (5th Cir. 2004):

"The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). **Courts conduct a bifurcated inquiry to determine whether parties should be compelled to arbitrate a dispute. *Id*. First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable. *Id*.**" (emphasis added).

364 F.3d at 263. "Underlying an evaluation of the existence and validity of any such agreement is a strong federal policy favoring the enforcement of arbitration agreements in commercial and maritime matters." See, Alsem Indus. v. M/V Nick, 1999 U.S. Dist LEXIS 20109 *5 (E.D. La. 1999); Cargill Ferrous International v. The M/V Anatoli, 935 F. Supp. 833, 837 (E.D. La. 1996), *citing*, Sheason/American Express, Inc. v. McMahon, 482 U.S. 220, 226, 207 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987).

If there is any ambiguity regarding the scope of arbitration, the court must apply a presumption in favor of arbitration. See, QPro, Inc. v. RTD Quality Servs. USA, 761 F.Supp.2d 492, 497 496-97 (S.D. Texas 2011). In determining whether a particular issue is to be arbitrated, courts should construe the parties' intentions "generously". See, Tricon Energy Ltd. v. Vinmar Int'l, Ltd., 718 F.3d 448, 458 (5th Cir. 2013). It is this standard of review that applies in deciding whether the Settlement Agreement contains an arbitration provision and whether the panel's decision in favor of Claimant-377 is an arbitration award which is entitled to be confirmed under the provisions of the Federal Arbitration Act.

## ARGUMENT

**I.      THE AGREEMENT'S APPEAL PROCESS, AS SET OUT IN SECTION 6, IS AN ARBITRATION AGREEMENT SUBJECT TO THE FEDERAL ARBITRATION ACT AND THE RESULTING AWARD IS BINDING ON THE PARTIES.**

By this motion, Claimant-377 seeks to confirm the Panel's Decision as an arbitration award that is subject to the Federal Arbitration Act, (FAA). 9 U.S.C. §§1-9.  If the Panel Decision is an arbitration award, it is subject to the FAA and must be confirmed.

A.    **The Settlement Agreement Is Governed By Maritime Law And The Arbitration Agreement Contained Therein Is Subject To The Federal Arbitration Act, 9 U.S.C.S. §1 *et al.***

The underlying dispute arises out of a blowout, explosion and fire that occurred aboard the *Deepwater Horizon* semi-submersible offshore drilling rig on April 20, 2010, while the rig was engaged in drilling activities on the "Macondo Well" on the Outer Continental Shelf off the coast of Louisiana. (Doc. 8138 at 1). The parties to the Settlement Agreement agreed that General Maritime Law would be applied to interpretation of the Agreement. (Settlement Agreement at Sec. 36.1). The parties to an agreement may agree to a choice-of-law provision, which will be upheld as long as the selected law does not undermine the goals and policies of the FAA. See, ASW Allstate Painting & Constr. Co. v. Lexington Ins. Co., 188 F.3d 307, 310 (5th Cir. 1999). The Settlement Agreement resolved disputes arising out of a controversy that is subject to the admiralty jurisdiction of the Court. See, In re: Oil Spill, 808 F.Supp.2d 943, 951 (E.D. La. 2011). Section 1 of the FAA provides, in part:

> "'**Maritime transaction**s', as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, **collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction;**" (emphasis added).

9 U.S.C. §1. The facts giving rise to the underlying controversy and the written agreement of the parties both support a finding that the Settlement Agreement is a "maritime transaction" as defined by the FAA.

Under §2 FAA, a written arbitration clause in a contract to settle a controversy arising out of a maritime transaction is valid and enforceable. Section 2 of the FAA provides:

> "**A written provision in any maritime transaction** or a contract evidencing a transaction involving commerce **to settle by arbitration a controversy thereafter arising out of such contract or transaction,** or the refusal to perform the whole or any part thereof, **or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable,** save upon such grounds as exist at law or in equity for the revocation of any contract." (emphasis added).

9 U.S.C. §2. Such arbitration provisions are fully governed by the FAA. <u>See</u>, 9 U.S.C.S. §§1-2.

<u>See</u>, <u>also</u>, <u>Citizens Bank v. Alafabco, Inc.</u>, 539 U.S. 52, 56, 2123 S.Ct. 2037, 156 L.Ed.2d 46

(2003); <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 121 S.Ct. 1302, 1307, 149 L.Ed.2d 234

(2001); <u>Grant v. Houser</u>, 469 Fed. Appx. at 313. Therefore, the Settlement Agreement, with its

dispute resolution clauses, should be enforced by the Court under the provisions of the FAA. <u>Id.</u>

**B. The Dispute Resolution Procedure Established By Section 6, CLAIMS APPEAL PROCESS, Is An Arbitration Agreement.**

Section 6 of the Settlement Agreement contains a written agreement of the parties for the

final resolution of certain disputes arising under the Agreement with the resolution to be made by

impartial panelists. (Settlement Sec. 6 at 55-61). As stated in Section 5.11.4:

> **"Claimants shall have the right to appeal the determination related to the denial or award of a Total Compensation Amount pursuant to the Appeal Process as more fully set forth in Section 6 below."** (emphasis added).

(Settlement Sec. 5.11.4). In like manner, if BP is dissatisfied with an award, BP's remedy is to

appeal to an Appeal Panel.[1] (Settlement Sec. 6.1.2.4). Section 6.1.2.4 provides:

> **"The BP Parties may Appeal a final compensation award determination only where the Compensation Amount determined by the Settlement Program is in excess of $25,000. The BP Parties shall receive notice of an award on the same date that notice is provided to the Economic Class Member and shall have the following time periods within which to exercise their Appeal right for Claims** in the following monetary ranges: (a) for awards of $25,000 to $250,000 the BP Parties shall have ten days from the date of notice of the award to Appeal; (b) for awards of $250,001 to $500,000 the BP Parties shall have fifteen days from the date of notice of the award to Appeal; and (c) for awards of greater than $500,001 the BP Parties shall have twenty days from the date of the notice of the award to Appeal."

(Settlement Sec. 6.1.2.4). In either case, once the Claims Administrator issues an Eligibility

Notice, the only dispute resolution procedure available under the Settlement Agreement is to

---

[1]     Under the Agreement, BP waived its right to challenge any award that does not exceed $25,000. (Settlement Sec. 6.1.2.4).

appeal to an Appeal Panel. (Settlement Sec. 6).  Claimant-377 submits the process set out in

Section 6 is an arbitration agreement.

Arbitration is a "method of dispute resolution involving one or more neutral third parties

who are usually agreed to by the disputing parties and whose decision is binding." Black's Law

Dictionary, 119 (9th ed. 2009). As stated in GMC v. Pamela Equities Corp., 146 F.3d 242, 246

(5th Cir. 1998):

> "**Arbitration is the reference of a particular dispute to an impartial third person chosen by the parties to a dispute who agree, in advance, to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard.**" (emphasis added).

146 F.3d at 246. See, also, American Federation of State, County and Municipal Employees,

Local 1902, AFL-CIO v. Metropolitan Water District of Southern California, 126 Cal. App. 4th

247, 257-58, 24 Cal. Rptr. 3d 285, 291 (Cal. App. 2005).  As stated in American Federation:

> "One appellate court surveyed the various definitions of arbitration and quoted from Black's Law Dictionary that arbitration is ' **"[a] process of dispute resolution in which a neutral third party (arbitrator) renders a decision after a hearing at which both parties have an opportunity to be heard.** Where arbitration is voluntary, the disputing parties select the arbitrator who has the power to render a binding decision." [Citation.]' [Citations.] ... '**[A]lthough [an] arbitration can take many procedural forms, a dispute resolution procedure is not an arbitration unless there is [1] a third party decision maker, [2] a final and binding decision, and [3] a mechanism to assure a minimum level of impartiality with respect to the rendering of that decision.**'" (emphasis added).

126 Cal. App. 4th at 257-58, 24 Cal. Rptr. 3d at 291.  See, also, Hooters of America, Inc. v.

Phillips, 39 F. Supp. 2d 582, 618-19 (D S.C. 1998); Prasad v. Bullard, 51 So.3d 35, 38 (La. App.,

5 Cir. 2010); Kabia v. Koch, 713 N.Y.S. 2d 250, 254 (Civ. Ct. N.Y. 2000); Cheng-Canindin v.

Renaissance Hotel Associates, 50 Cal. App. 4th 676, 684, 57 Cal. Rptr. 2d 867, 872 (Cal. App.

1996).  Given the thousands of awards to claimants envisioned by the parties, it was prudent that

a method be agreed upon to address dissatisfaction by Claimant or BP.  It was and is impractical

that each of these disputes be presented to the Court for resolution.  In recognition of this need

for a streamline dispute resolution method, the parties agreed, in writing, to address such

disputes by presentation of the dispute to a neutral panel that would return a decision that was binding on the parties. See, Section 6 of the Settlement Agreement.

Section 6 does not use the word "arbitration", but such nomenclature is not required. No particular language is required to create an arbitration agreement. See, American Federation, 126 Cal. App. 4th at 257-58, 24 Cal. Rptr. 3d at 291. As stated in American Federation:

> "The MOU section 6.7 **does not mention the words arbitration, arbitrate, or arbitrator. However, the absence of this terminology is not a determining factor in deciding whether the agreement is one for arbitration.** (*Cheng-Canindin v. Renaissance Hotel Associates (1996) 50 Cal.App.4th 676, 683-684 [57 Cal. Rptr. 2d 867]*, quoting *Painters Dist. Council No. 33 v. Moen (1982) 128 Cal. App. 3d 1032, 1036 [181 Cal. Rptr. 17]*.) '**More important is the nature and intended effect of the proceeding.**'" (emphasis added).

126 Cal. App. 4th at 257-58, 24 Cal. Rptr. 3d at 291. It is not required that an agreement contain the word "arbitration" nor any specific terminology to create a valid arbitration agreement. Id.

If the agreement creates an arbitration process, regardless of the presence or absence of the use of the word "arbitration", the agreement must be acknowledged to be an arbitration agreement and must be enforced in accord with the FAA. Id. See, also, Cheng-Canindin, 50 Cal. App. 4th at 684, 57 Cal. Rptr. 2d at 872. Arbitration proceedings are not held to the same technical rules of pleading and evidence as lawsuits in federal courts. See, e.g., Swift Industries, Inc. v. Botany Industries, Inc., 466 F.2d 1125, 1129 n.10 (3d Cir. 1972); American Almond Produ. Co. v. Consolidated Pecan S. Co., 144 F.2d 448 (2nd Cir. 1944); Tokura Constr. Co. v. Corporacion Raymond, S.A., 533 F.Supp. 1271, 1278 (S.D. Tex. 1982). When considering an agreement, the Court must always be mindful of the federal policy under the FAA that "requires a liberal reading of arbitration agreements." See, Moses H. Cone Mem'l Hosp., 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785. "The Fifth Circuit is resoundingly clear that all doubts concerning arbitration are resolved in favor of arbitration, so strong is the presumption in favor of it." See, Shales v. Discover Card Servs., 2002 U.S. Dist. LEXIS 16502 *6 (E.D. La. 2002), *citing*, Investment Partners v. Glamour Shots, 298 F.3d 314, 316 (5th Cir. 2002).

Sections 5.11.4 and 6.1.2.4 of the Settlement Agreement allow BP or the Claimant to invoke the dispute resolution process if either is dissatisfied with a decision of the Claims Administrator.[2] See, Sections 5.11.4 and 6.1.2.4.  Section 6.1.2.2 allows an aggrieved Claimant to dispute the Claims Administrator's determination by appealing to a neutral single-member panel or a three-member panel, who has the authority to consider the evidence, weigh arguments and make a final decision. See, Section 6.1.2.2.1.  The Settlement Agreement provides:

> "Appeals shall be heard by either a single-member **APPEAL PANEL** or a three-member Appeal Panel depending on the value of the Claim being appealed." (emphasis in original).

Section 6.1.2.2.1.  If the Claim amount is under $1,000,000, the parties agreed the dispute would be resolved by a single person denominated as the "single-member Appeal Panel". See, Section 6.1.2.2.5.1.  Where the amount of the Claim is $1,000,000 or more, the parties agreed the dispute would be resolved by a three-member Appeal Panel. See, Section 6.1.2.2.5.2.

The Settlement allows the Claimant to seek review of any denial or award by the Claims Administrator within 30 days of the issuance of a final written notice from the Settlement Program of a determination. See, Section 6.1.2.3.  In like manner, BP may dispute any award in excess of $25,000 that is made to a Claimant by the Claims Administrator by timely filing a notice of appeal; thereby invoking arbitration. See, Section 6.1.2.4.  The arbitrator or arbitrators considers the dispute *de novo*. See, Section 6.4.  The mechanism for considering a dispute is specified and provides for neutrality in the decision making; to-wit:

> "6.2 Appeals Compensation Method. **All Appeals where the issue is the Compensation Amount shall be conducted using a baseball process** in which the Claimant and the BP Parties exchange and submit in writing to the Appeal Panelist or Appeal Panel their respective proposals ("Initial Proposal") for the base Compensation Amount they propose the Claimant should receive. **The Appeal Panelists or Appeal Panel may consider only the following documentation:**

---

[2]    Section 6.1.1.1 allows a Claimant to seek review of a denial based on insufficient documentation by a separate Documentation Reviewer and without prejudice to the Claimant's rights.  Because this review of documentation is still within the Claims Administrator's claims handling process, it is not final or binding on the Claimant. (Sec. 6.1.1.1).

**the Initial and Final Proposal and any memorandum in support thereof; the complete record of the Claimant in the Settlement Program; the Agreement and all of its attachments; Court rulings on similar issues; and prior Appeal rulings on similar issues.** . . . . The Claimant and the BP Parties may choose to reach a compromise at any point up to the time the Appeal Panelist or Appeal Panel issues its decision. **Once the Appeal Panelist or Appeal Panel issues a decision, it shall be final. The base compensation amount will then be presented to the Claims Administrator to further process the Claim as appropriate.**" (emphasis added).

Section 6.2. The Settlement Agreement further requires neutral and impartial procedures to be applied to the dispute resolution process as set out in Exhibit 25 to the Agreement. <u>See</u>, Section 6.3. The Exhibit 25 procedures may be supplemented by additional procedures as necessary by the Settlement Program so long as the additions are not inconsistent with Exhibit 25. <u>Id.</u> The Claims Administrator issued extensive procedures and rules for the filing and briefing of appeals to the panels, which assure neutrality and uniformity in the arbitration process. <u>See</u>, Doc. 6430-44 at 126-127; Rules Governing the Appeals Process, DWH 128-142; Order Establishing Rules Governing Discretionary Court Review of Appeal Determinations, Doc. 10185 at DWH 143-148. Whether the Claimant or BP initiates the dispute resolution process, the requirement that the parties follow uniform procedures assures a measure of impartiality in the rendering of decisions. <u>See</u>, Section 6.3. This mechanism assures impartiality with respect to the rendering of arbitral decisions. <u>See</u>, <u>Hooters of America</u>, 39 F. Supp. 2d at 618-19; <u>Prasad</u>, 51 So.3d at 38; <u>Kabia</u>, 713 N.Y.S. 2d at 254; <u>American Federation</u>, 126 Cal. App. 4th at 257-58, 24 Cal. Rptr. 3d at 291; <u>Cheng-Canindin</u>, 50 Cal. App. 4th at 684, 57 Cal. Rptr. 2d at 872.

The Settlement Agreement provides that the decision makers, whether comprised of a single-member or a three-member panel, are drawn from a pool of between 10 to 20 persons from a list of at least 30 individuals who were jointly selected by the parties for their experience and qualifications. <u>See</u>, Section 6.1.2.2.3. If there are vacancies, the parties to the Agreement nominate additional candidates. <u>Id.</u> If one panelist is to decide the disputed claim, the individual is selected randomly from the list of approved decision makers. <u>See</u>, 6.1.2.2.5.1. If a three-

member panel is to decide the dispute, one of the members is randomly selected from a sub-list of panelists from the Claimant's home state and the other two members are randomly selected from the remaining pool of decision makers. Id.  Where the parties have agreed to a method for selecting the arbitrator(s), that method should be honored by the court so long as the parties abide by its terms of the selection process. See, Bulko v. Morgan Stanley DW, Inc., 450 F.3d 622, 625 (5th Cir. 2006)(arbitrators must be selected pursuant to the method provided in the agreement); Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co. 304 F.3d 476, 489-90 (5th Cir. 2002)(FAA provides that parties may determine the method of selecting arbitrators); Brook v. Peak Int'l, Ltd., 294 F3d 668, 673 (5th Cir. 2002)(courts generally enforce arbitrator selection clauses strictly allowing for 'trivial departures'). If agreed in the arbitration agreement, the Court can be directly involved in naming the arbitrator(s) and can even name one or more of the arbitrators. See, e.g., In re Travelers Indem. Co., 2004 U.S. Dist LEXIS 30074 (D. Conn. 2004)(arbitrator agreement was honored by the court that directed that an arbitrator be named by the judge of the federal district court having jurisdiction). This process assures disputes are decided by neutral and competent panelists that are selected in a manner agreed by the parties.

Valid arbitration agreements must provide that the decision of the arbitrator(s) is final and binding on the parties. See, e.g, Hooters of America, 39 F. Supp. 2d at 618-19; American Federation, 126 Cal. App. 4th at 257-58, 24 Cal. Rptr. 3d at 291; Kabia, 713 N.Y.S. 2d at 254; Cheng-Canindin, 50 Cal. App. 4th at 684, 57 Cal. Rptr. 2d at 872.  This requirement is specifically addressed in Section 6.2, which states, in pertinent part:

> "The Claimant and the BP Parties may choose to reach a compromise at any point up to the time the Appeal Panelist or Appeal Panel issues its decision. **Once the Appeal Panelist or Appeal Panel issues a decision, it shall be final.** The base compensation amount will then be presented to the Claims Administrator to further process the Claim as appropriate." (emphasis added).

Section 6.2.  Under the Settlement Agreement, once the Claims Administrator issues an Award or Denial of a claim, BP or the Claimant-377 can challenge the decision before a neutral panel of arbitrators, who are empowered to make a final and binding decision on the

13

issues. Id.  This process is arbitration. See, GMC, 146 F.3d at 246.  In accordance with FAA requirements and the federal policy favoring arbitration, the arbitration provisions of the Settlement Agreement must be enforced and the Panel's Decision confirmed. See, e.g., Nitro-Lift Techs., 133 S. Ct. 500, 133 S.Ct. 500, 184 L. Ed. 2d 328; AT&T Mobility, 131 S.Ct. 1740, 179 L.Ed.2d 742; Moses H. Cone Mem'l Hosp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765; Volvo Trucks N. Am., 666 F.3d 932.

## II.     THE ARBITRATORS' AWARD, AS ISSUED BY THE APPEAL PANEL ON SEPTEMBER 29, 2013, IS FINAL AND DUE TO BE CONFIRMED UNDER THE FEDERAL ARBITRATION ACT.

Claimant-377 submitted its Settlement Registration Claim Form and Business Economic Loss Claim Form on July 25, 2012. (Exs. 1, 2).  Claimant-377 presented its supporting contemporaneous financial data, kept on an accrual basis of accounting, which was reviewed, reconciled and approved by the Claims Administrator. (Ex. 7).  On July 8, 2013, the Claims Administrator issued an Eligibility Notice which determined that Claimant-377's claim qualified for payment and set the Award Amount at $1,468,463.73. (Ex. 3). Claimant-377 properly executed the Full and Final Release, Settlement, and Covenant Not to Sue and timely returned it to the Claims Administrator. (Ex. 18).  On July 27, 2013, BP filed a Notice of Appeal requiring Claimant-377 to submit to arbitration by the Appeal Panel. (Ex. 4).

BP initiated the arbitration and both parties participated in the prescribed manner with each party submitting its position to the three-member arbitration panel.  (Exs. 5, 6, 7, 8, 9, 10). Claimant-377 prevailed in arbitration and a Panel's Decision or arbitrators' award was issued August 29, 2013 by the Panel. (Ex. 11).  In accordance with Rule 17 (e) of the Rules Governing the Appeals Process, the Claims Administrator issued a Post-Appeal Eligibility Notice on August 29, 2013, which totaled $1,527,091.98. (Exs. 12, 13).  See, R. G. App. Pro. Rule 17(e).

Pursuant to Rule 14 of the Rules Governing Discretionary Court Review of Appeal Determinations, BP was allowed to request discretionary review by the Court by submitting its request within fourteen (14) days of notice of the Panel's Decision. See, R.G. Dis. Ct. Rev. Rules

14

13 and 15.  On September 13, 2013, BP made a Request for Discretionary Court Review. (Sec. 6.6, Doc. 10185-1 at 3-4). (Exs. 14, 15).  On September 30, 2013, a Denial of Request for Discretionary Court Review Notice was issued. (Ex. 17).   The arbitrators' award of $1,527,091.98 is final and should be confirmed.

Section 9 of the Federal Arbitration Act provides for confirmation of arbitration awards, in part, as follows:

> **"If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitrate  on may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this *title [9 USCS §§ 10, 11]*."** (emphasis added).

9 U.S.C. §9.  A motion or application to confirm an arbitration award is timely made if made within one year of the date of the award.  Id.  Under Section 18.1, the United States District Court for the Eastern District of Louisiana has jurisdiction to enforce the Settlement Agreement, including the arbitration provisions of Section 9.  See, Section 18.1.  Therefore, this motion to confirm is properly brought before this Court seeking to enforce the arbitration award of August 29, 2013.  See, 9 U.S.C. §6 (motion or application to court under FAA shall be made and heard in the manner provided for motions).

The question of whether the parties have an agreement to arbitrate is one for the Court to decide.  See, Southland Corp., 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1; Armstrong, 242 Fed. Appx. at 957; Klein, 710 F.3d 234.  As stated in Armstrong:

> **"To determine whether the parties agreed to arbitrate a dispute, the district court considers: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement.** *Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996).*  **When a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"** (emphasis added).

15

242 Fed. Appx. 955, 957. See, also, AT&T Tech., 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648, *citing*, Steelworkers, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409.

For a contract that contains an arbitration provision, "there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute.'" See, Armstrong, 242 Fed. Appx. at 957. In the instant matter, the Settlement Agreement is signed by and binding upon BP. (Doc. 6430 at 118). The evidence presented, including BP's initiating and then actively engaging in the arbitration process, is more than sufficient to establish that the parties entered into a binding arbitration agreement regarding Claimant-377's claim. See, Settlement Agreement, Doc. 6430. See, also, Grant, 469 Fed. Appx. at, 315; Carter, 362 F.3d at 297; Banks, 156 Fed. Appx. at 712. Section 6 of the Settlement Agreement is an arbitration agreement. See, Armstrong, 242 Fed. Appx. at 957.

The remaining question is whether the dispute between Claimant-377 and BP falls within the scope of the arbitration provision of the Settlement Agreement. Id. On June 27, 2013, BP filed a Notice of Appeal requesting that Claimant-377's claim be submitted to the Appeal Panel as provided by the Agreement. (Ex. 4). BP obviously believed and conceded that the dispute regarding the Claims Administrator's award to Claimant-377 was to be resolved by arbitration. Once, as here, these two questions have been answered in the affirmative, the proponent of arbitration has met its burden. See, Moses H. Cone Mem'l Hosp., 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785; Tricon Energy, 718 F.3d at 458; Grant, 469 Fed. Appx. at, 315, *citing*, Carter, 362 F.3d at 297; QPro, 761 F.Supp.2d at 496-97. As stated in Grant:

> "The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence. *See Banks, 156 F. App'x at 712.*"
>
> \*          \*          \*          \*
>
> **"Because of the strong presumption in favor of arbitration, the burden shifts to the party opposing arbitration to demonstrate either that the agreement is invalid or, at a minimum, to allege the dispute is outside of the agreement's scope."** (emphasis added).

16

469 Fed. Appx. at, 315.  The burden is on BP to prove the arbitration provision of the Settlement Agreement is invalid or that the Claims Administrator's determination for Claimant-377 is outside the scope of the arbitration agreement. See, 469 Fed. Appx. at, 315, *citing*, Carter, 362 F.3d at 297; ASW Allstate Painting & Constr. Co. v. Lexington Ins. Co., 188 F.3d 307, 311 (5th Cir. 1999)(if party opposes arbitration and denies validity of agreement, the burden is on said party to prove invalidity).   For factual and contractual reasons, BP cannot demonstrate the Settlement Agreement is invalid or that the dispute is outside the scope of the arbitration agreement.

The Settlement Agreement allows BP or the Claimant-377 to challenge the Claims Administrator's Award to Claimant-377. See, Section 5.11.4 and Section 6.1.2.4.  BP elected to participate in the arbitration process when it entered the Settlement Agreement and again when it filed a Notice of Appeal requesting Claimant-377's claim be submitted to an Appeal Panel. (Doc. 6430; Ex 4).  Under Section 6.1.2.4, the scope of the arbitration is described as:

> **"The BP Parties may Appeal a final compensation award determination only where the Compensation Amount determined by the Settlement Program is in excess of $25,000."** (emphasis added).

Section 6.1.2.4 Doc. 6430-1 at 62.   Claimant-377's Award exceeded $25,000. (Ex. 3).   BP elected to invoke arbitration and gave as its grounds that the Claims Administrator's Award for Claimant-377 was improper and should be rejected by the arbitrators. (Exs. 4, 5, 8).  Without question, the scope of the arbitration was precisely within the scope set out in Section 6.1.2.4 and R. G. App. Pro. Rule 7 (b). Compare, Section 6.1.2.4 and R. G. App. Pro. Rule 7 (b) with BP's Notice of Appeal.  (Ex. 4).  Since the scope of the arbitration was within the scope permitted by the Settlement Agreement, the second question in Armstrong is answered in the affirmative. See, Armstrong, 242 Fed. Appx. at 957.  Hence, it is clear that the parties have an agreement to arbitrate the dispute under the Settlement Agreement and that the arbitration itself was conducted under the terms of said agreement.

BP cannot contend the Settlement Agreement is invalid.  BP induced Claimant-377 and thousands of other businesses to join the settlement and execute a release in favor of BP. (Ex. 18).  BP did this by contracting to honor and be bound by the terms of the Settlement Agreement. (Doc. 6430-1 at DWH-123).   One of the contractual commitments made by BP is in Section 17.1, which states:

> "**The Parties agree to support the final approval and implementation of this Agreement and defend it against objections, appeal, or collateral attack.** Neither the Parties nor their Counsel, directly or indirectly, will encourage any person to object to the Economic and Property Damages Settlement. Nothing in this Agreement shall impair BP's right to take any action to defend itself in any trial where BP is a party." (emphasis added).

Section 17.1.  BP's only reservation to this promise was that BP would be allowed to defend itself in trials where BP was a party. Id.  Any objection or attack by BP on the validity of this Agreement is a breach of contract and a denial of Claimant-377's benefit of the bargain as promised by the Settlement Agreement.[3]

BP's covenant not to object, appeal or collaterally attack was made after extensive negotiations and with BP having full knowledge of the rights it was surrendering.  As stated in Recitals D and F of the Settlement Agreement:

> "D.   Plaintiffs contend they would prevail in litigation. **BP disputes and denies the Plaintiffs' claims, has raised various affirmative and legal and other defenses, and contends that it would prevail in litigation.**
> \*          \*          \*          \*
> F.     **BP has concluded that, in light of the costs, risks, burden, and delay of litigation, Settlement in this complex litigation is appropriate. In this regard, BP and BP's Counsel agree that this Agreement is fair, reasonable, and an adequate resolution of the Deepwater Horizon Economic Litigation.**" (emphasis added)

---

[3]     Claimant submitted its Settlement Registration Claim Form on July 25, 2012. (Ex. 1).  At that time, Claimant could have opted out of the Settlement, but chose to participate based on the contractual promises made by BP.  Every action taken by BP to object, appeal and attack the settlement is breach of contract by BP.  BP should be compelled to honor its agreement.

Recitals D & F.  BP knew it had defenses to Plaintiffs' claims and believed it would prevail. (Recital D).  BP was aware of its defenses against the Plaintiffs' claims.  Yet BP contractually surrendered these rights in favor of receiving Plaintiffs' release of BP's liabilities. Id.

By freely and voluntarily surrendering these rights under the Settlement Agreement, BP gained the enormous benefit of resolving thousands of disputes with the Economic Loss Class. (Settlement Agreement).   Such a knowing, intelligent and voluntary surrender of rights constitutes a waiver of those rights under the law. See, e.g.,  Watkins v. Fly, 136 F.2d 578, 580 (5th Cir 1948)(waiver is intentional relinquishment of known right); Robertson v. J.C. Penney Co., Inc., 484 F.Supp.2d 561, 567 (S.D. Miss. 2007)(voluntary waiver made with knowledge of the rights waived is binding on party); Rolls Royce Industrial Power v. M.V. Fratzis M., 1995 U.S. Dist. LEXIS 22219 *36 (S.D. N.Y. 1995)(voluntary and explicit surrender of known right is wavier and is enforceable).  When this promise was made, both BP and Plaintiffs knew there were risks associated with the settlement.  BP admits this knowledge and voluntarily went forward with the settlement.  As part of the Agreement, BP agreed to defend the settlement against "objections, appeal, or collateral attack" and, by extension, not to participate in the making of such "objections, appeal, or collateral attack". (Section 17.1).  BP's agreement is a knowing, intelligent and intentional waiver of its right to object, appeal or collaterally attack the Settlement Agreement and BP should be bound by its contract.

BP expressly agreed that the terms of the Agreement, including all Recitals and the dispute resolution provisions of Sections 6 and 17.1, are contractual and not mere recitals. See, Section 26.1.  As stated in Section 26.1:

> Plaintiffs, the Economic Class, and each Economic Class Member and the **BP Parties expressly and each agree that the terms of this Agreement, and all provisions hereof, including all representations, promises, agreements, covenants and warranties, and including the Exhibits thereto, are contractual and not a mere recital and shall survive the execution of this Agreement.** (emphasis added).

Section 26.1.  BP is contractually obligated to support the validity of the Agreement and part of that obligation is to support and abide by the arbitration clause set out in the Settlement.  BP has waived any right to object, appeal or collaterally attack the validity of the Settlement Agreement. BP cannot claim, much less establish, that the Settlement Agreement is invalid as a grounds for resisting arbitration. See, Armstrong, 242 Fed. Appx. at 957; Klein, 710 F.3d 234  See, also, AT&T Tech., 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648, *citing*, Steelworkers, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409.

Even if BP were not prohibited from attacking its validity as a defense to arbitration, however, it could not do so because the Agreement, including its arbitration provision, is entirely valid.  BP sought peace and reached a settlement with the Economic Loss Class Members after extensive negotiations.  BP accepted the arbitration provisions of Section 6 and exercised its rights to arbitrate the Claims Administrator's award to Claimant-377. (Exs. 4, 5, 6, 7, 8, 9, 10). The arbitrators' decision upheld the Claims Administrator's Award. (Ex. 11).  BP continued the process by seeking discretionary review of the Appeal Panel's decision by the Court. (Ex. 14). On September 30, 2013, BP's Request for Discretionary Review was denied. (Ex. 17).   The arbitrators' decision awarding Claimant-377 $1,527,091.98 must be enforced as provided by the Settlement Agreement, the Federal Arbitration Act and applicable case law.

## III.    THE FIFTH CIRCUIT COURT OF APPEALS' OPINION AND DECISIONS OF THE DISTRICT COURT MUST BE APPLIED CONSISTENT WITH CONTROLLING FEDERAL LAW AND CANNOT DISRUPT AN ARBITRATION AWARD EXCEPT ON GROUNDS PERMITTED BY SECTIONS 10 AND 11 OF THE FEDERAL ARBITRATION ACT.

The Fifth Circuit and the District Court in the instant case are restrained by both federal statutory law and controlling opinions of the United States Supreme Court from directing action affecting arbitration awards beyond the scope of judicial review allowed by the Federal Arbitration Act. See, AT&T Mobility, 131 S.Ct. at 1752, 179 L.Ed.2d at 758 (parties may not contractually expand the grounds or nature of judicial review of arbitration agreement); Hall Street, 552 U.S. at 584, 128 S. Ct. at 1403, 170 L. Ed. 2d at 263 (only grounds for judicial review

of arbitration provided in §§10 and 11 of FAA).  Since the Settlement Agreement contains an arbitration provision that is subject to the FAA, the arbitration provisions must be applied consistent with controlling statutory and case law, including the United States Supreme Court decision in Hall Street. Id.  No action by the Fifth Circuit or the District Court can or should be taken that would affect an arbitration award unless that action is consistent with Hall Street's mandate and directives. Id.

In the instant matter, the arbitration between Claimant-377 and BP has reached its final resolution with an arbitrators' award issued and the amount payable calculated. (Exs. 11, 12). There can be no reconsideration, modification or reversal of Claimant-377's arbitration award, except consistent with FAA §§10 and 11, because to do so would violate the Hall Street decision Id.  In Hall Street, the United States Supreme Court specifically rejected a contractual arbitration provision that allowed subsequent judicial review of the arbitrators' award on grounds different from those provided by the FAA. Id.  The rejected contractual provision stated, in part:

> "[t]he United States District Court for the District of Oregon may enter judgment upon any award, either by confirming the award or by vacating, modifying or correcting the award.  The Court shall vacate, modify or correct any award:  (i) where **the arbitrator's findings of facts are not supported by substantial evidence, or (ii) where the arbitrator's conclusions of law are erroneous.**" App. to Pet. for Cert. 16a." (emphasis added).

552 U.S. at 579, 128 S. Ct. at 1400-01, 170 L. Ed. 2d at 260.  The Hall Street Court held the district court could only vacate, modify or correct an arbitrator's decision based on the very limited grounds allowed by FAA §§10 and 11. Id.

The Supreme Court also rejected "manifest disregard" as grounds for vacating, altering or amending an arbitrator's decision. See, Hall Street, 552 U.S. at 584, 128 S. Ct. at 1403, 170 L. Ed. 2d at 263. See, also, The Householder Group v. Caughran, 354 Fed. Appx. 848, 850 (5th Cir. 2009)(Hall Street prohibits consideration of whether arbitrators erred in questions of law or fact). As stated in Hall Street:

> "**We now hold that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification.**"

*                    *                    *                    *

"Hall Street is certainly right that the FAA lets parties tailor some, even many features of arbitration by contract, including the way arbitrators are chosen, what their qualifications should be, which issues are arbitrable, along with procedure and choice of substantive law.  But to rest this case on the general policy of treating arbitration agreements as enforceable as such would be to beg the question, which is **whether the FAA has textual features at odds with enforcing a contract to expand judicial review following the arbitration.**

**To that particular question we think the answer is yes, that the text compels a reading of the §§ 10 and 11 categories as exclusive.**" (emphasis added).

552 U.S. at 584 and 586, 128 S. Ct. at 1403 and 1404, 170 L. Ed. 2d at 263 and 264.

As set out by the Fifth Circuit in <u>Martel v. Ensco Offshore Co.</u>, 449 Fed. Appx. 351 353-54 (5th Cir. 2011):

> "**Under the Federal Arbitration Act ("FAA"), there are four statutory bases upon which an arbitration award may be vacated:**
> **(1) where the award was procured by corruption, fraud, or undue means;**
>
> **(2) where there was evident partiality or corruption in the arbitrators, or either of them;**
>
> **(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or**
>
> **(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award [\*354] upon the subject matter submitted was not made.**
> ***9 U.S.C. § 10(a).* These are the exclusive grounds according to which a district court may vacate an arbitration award.** *Hall St. Assoc., L.L.C. v. Mattel, Inc., 552 U.S. 576, 584, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008).*" (emphasis added).

449 Fed. Appx. at 353-54. <u>See</u>, <u>e.g.</u>, <u>Bain v. Bank</u>, 2013 U.S. App. LEXIS 18180 (5th Cir. 2013)("manifest disregard of the law" is not a basis for vacatur or modification); <u>Woods v. PAM Transp., Inc.-LU</u>, 440 Fed. Appx. 265, 269 (5th Cir. 2012)("manifest disregard" not grounds for vacatur or modification); <u>Citigroup Global Markets, Inc. v. Bacon</u>, 562 F.3d 349, 358 (5th Cir.

22

2009)(judicial review of arbitration award strictly limited to grounds in FAA §§10 and 11).  A mistake of law or fact by the arbitrator is not grounds for vacating an arbitration award. See, Hamel-Schwulst v. Country Place Mortg. Ltd., 406 Fed. Appx. 906, 914 (5th Cir. 2010)(court cannot vacate arbitration award based on merits of party's claim or defense); Apache Bohai Corp. LDC v. Texaco China BV, 480 F.3d 397, 409-10 (5th Cir. 2007)(arbitrator's findings of facts must be accepted as true); Rogers v. KBR Technical Services, Inc., 2007 U.S. Dist. LEXIS 83070 *9-*10 (S.D. Tex. 2007)(mere mistake of law or fact insufficient to vacate award).

The arbitration between Claimant-377 and BP had been fully resolved before any of the operative Fifth Circuit opinions were issued. (Exs. 11, 12).  BP did not make a motion to vacate, alter or amend as required by the FAA.  Given the facts, no valid motion could be made by BP.  Neither the Fifth Circuit nor the District Court can direct that any completed arbitration award be set aside or re-examined. See, Hall Street, 552 U.S. at 584, 128 S. Ct. at 1403, 170 L. Ed. 2d at 263. See, also, Martel, 449 Fed. Appx. at 353-54; The Householder Group, 354 Fed. Appx. at 850.  The District Court must respect and apply the limits on review of an arbitrators' award and must confirm the award consistent with the FAA and controlling law. Id.

## IV.   THE CLAIMS ADMINISTRATOR HAS A MINISTERIAL DUTY TO PAY CLAIMANT-377'S CLAIM AND SHOULD BE DIRECTED TO DO SO BY THE COURT.

Section 9 of the FAA mandates that the Court "grant an order confirming the arbitrator's award unless the award is vacated, modified or corrected as prescribed in sections 10 and 11 of this *title [9 USC §§10, 11]*." See, 9 U.S.C. §9.  See, also, Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S. Ct. 1396, 1402, 170 L. Ed. 2d 254 (2008).  In the instant matter, the mandate of Section 9 is further supported by the contractual provisions of the Settlement Agreement and the Court's approved Rules Governing Discretionary Court Review of Appeal Determinations.  Rule 18 of the Rules Governing Discretionary Court Review of Appeal Determinations states:

"If no Request has been submitted to the Appeals Coordinator on or before the 15[th] day following service of the Notice of Appeal Panel Decision, **the Claims Administrator shall proceed with payment of the claim in accordance with the Appeal Panel decision, or if the Appeal Panel denied the claim, the Claims Administrator shall close the claim.**" (emphasis added).

R. G. Dis. Ct. Rev. Rule 18. The Panel's Decision set Claimant-377's Compensation Amount of $1,172,574.98 and a .25 Risk Transfer Premium Multiplier. (Ex. 11). The Claims Administrator's ministerial duty is to "proceed with payment". R. G. Dis. Ct. Rev. Rule 18. To calculate the amount owed to Claimant-377, the Claims Administrator followed Rule 17 (e)(4) of the Rules Governing Appeals Procedure, which states:

"(e) Post-Appeal Eligibility Notice: **The Claims Administrator will apply the decision of the Appeal Panel in a Post-Appeal Eligibility Notice. As applicable the Post-Appeal Eligibility Notice will reflect the following:**

      *      *      *      *

    (4) Assessment of 5% Review Cost for BP Appeals: **If the Appeal Panel awards the same amount as the claimant's Eligibility Notice or the amount of the claimant's Final Proposal, the Claims Administrator shall add 5% of the total pre-RTP Compensation Amount listed in the Eligibility Notice to the Award Amount.** The 5% Review Cost Assessment shall not be applied if the appeal is withdrawn, settled, or administratively closed prior to the Appeal Panel issuing an award." (emphasis added).

R. G. Dis. Ct. Rev. Rule 17(e)(4). The Claims Administrator's mandatory duty to pay is set out in Rule 18 and the formula to calculate the exact amount to be paid is set out in Rule 17(e)(4).

In the instant matter, Claimant-377's claim has proceeded through the full path set out in the Settlement Agreement. Claimant-377 submitted its claim to the Claims Administrator. (Ex. 1, 2). The Claims Administrator subjected Claimant-377's claim to a thorough review and analysis; resulting in an Award. (Exs. 3, 7). The Claims Administrator's determination was disputed by BP and a demand for arbitration (denominated an "Appeal") was filed. (Ex. 4). The arbitration was conducted without objection by BP and the arbitrators issued their award (denominated as the Panel's Decision). (Ex. 11). When BP's Request for Discretionary Review was denied, the Claims Administrator's duty became ministerial and consists only of

"proceed[ing] with payment of the claim in accordance with the Appeal Panel decision. . . ." R. G. Dis. Ct. Rev. Rule 18.  Pursuant to Rule 17(e)(4), the Claims Administrator was required to multiply the pre-RTP Compensation Amount ($1,172,574.98) by the RTP of .25 to determine the 5% Review Cost and add the RTP Amount.   The resulting mathematical amount was $1,527,091.98. (Ex. 13).  The payment process is clerical and requires no discretion.

The arbitration process is fully complete, final and binding.  All that remains is for the Claims Administrator to complete his duty to "proceed with payment. . . ." R. G. Dis. Ct. Rev. Rule 18.  As stated in United States v. O'Keefe, 128 F.3d 885, 890 (5th Cir 1997), defines a "ministerial act" as "an act that is essentially clerical and does not involve the exercise of discretion or judgment." Id. at 890.  See, also, United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 420, 51 S.Ct 502, 504, 75 L.Ed. 1148 (1931)("ministerial duty" is a duty in which "the obligation to act [is] peremptory, and plainly defined").  In Noffke v. Bakke, 760 N.W.2d 156, 168 (Wis. 2009), the Wisconsin Supreme Court defined "ministerial duty" as:

> **"A ministerial duty is one that 'is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.'" (emphasis added).**

760 N.W.2d at 168.  Payment of the Post-Appeal Award to Claimant-377 is a ministerial duty of the Claims Administrator under the law and the Settlement Agreement.

## CONCLUSION

Under the terms of the Settlement Agreement, the Federal Arbitration Act and applicable law, Claimant-377 prays the Court to grant the order confirming the arbitrators' award (Panel Decision) in favor of Claimant-377.  Further, Claimant-377 prays the Court to direct the Claims Administrator to perform his ministerial duty by paying to Claimant-377 the calculated Total Compensation Amount of $1,527,091.98.

RESPECTFULLY SUBMITTED,

s/E. J. Saad
E. J. SAAD (AL861451)
ejsaad@ejsaadlaw.com

s/ Matthew Andrews
MATTHEW ANDREWS (AL167247)
mandrews@ejsaadlaw.com

ATTORNEYS FOR CLAIMANT-377, INC.

OF COUNSEL:
E. J. SAAD LAW FIRM
6207 COTTAGE HILL ROAD, SUITE G
MOBILE, ALABAMA 36609
PHONE: 251-660-0888
Fax: 251-660-0777

/s/ Frederick T. Kuykendall, III
S/Frederick T. Kuykendall, III
ftkuykendall@yahoo.com
ATTORNEY FOR CLAIMANT -377
OF COUNSEL:
KUYKENDALL & ASSOCIATES, LLC
AL Bar No.: ASB4462A59F
Federal Bar No.: KUYKF4462
P.O. Box 2129
Fairhope, Alabama 36533
Phone: (251) 928-4008
Fax: (251) 928-2151

s/James M. Garner
James M. Garner (Bar No. 19589)

s/ Martha Y. Curtis
Martha Y. Curtis (Bar No. 20446)

s/Kevin M. McGlone
Kevin M. McGlone (Bar No. 28145)
Attorneys for Claimant -377

OF COUNSEL:
Sher Garner Cahill Richter Klein & Hilbert, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, LA 70112
Phone: (504) 299-2133
Fax: (504) 299-2333
jgarner@SHERGARNER.com
mcurtis@SHERGARNER.com
kmcglone@SHERGARNER.com