# Exhibit 12

DWH: 
Claim ID: 41841

Written Reasons and Opinion:

BP raises three issues in its appeal. The third issue can be disposed of as just another variation of the "revenue smoothing/expense matching" argument, which is foreclosed by the Court's orders on point.

BP's next argument is that the Settlement Program erred in recognizing as a variable expense $339,700 in "Brokerage Expense ▮▮▮." The ▮▮▮ in question is ▮▮▮▮▮▮, another company owned by Claimant's principal, ▮▮▮▮▮▮. BP says that such "intercompany/related party transactions" should be disregarded by analogy to "Policy 328," which BP quotes as saying, in the revenue context, "intercompany sales/related party transactions [do not occur] under the normal course of operations in an arm's length transaction." BP then argues that by analogy the same principle should apply to expenses. Claimant challenges BP's purported quote from Policy 328 as being nowhere to be found in that policy. That turns out to be true. That policy says absolutely nothing about "intercompany/related party transactions" but, rather, simply says that three particular items "shall not typically be treated as 'revenue' for purposes…" of BEL claims, those items being "(a) insurance proceeds, (b) interest income, and (c) gains or losses from the sales of assets." By no stretch of the imagination can Policy 328 be construed to say what BP attributes to it. Independent of that, Claimant explains to the Panel's satisfaction the nature of the "Brokerage Expense ▮▮▮" expense item in its "Response and Final Proposal" and the Panel finds no error in its classification as a variable expense. Document 10249375 lists ▮▮▮ brokerage income from Claimant during the period in issue, August – December, 2010, showing that it was figured at 15% per each of the approximately 116 loads ▮▮▮ obtained for Claimant, which would be an expense in each instance to Claimant. It's clear that ▮▮▮ generated a lot of income for Claimant which necessarily varied depending on the number of loads developed by ▮▮▮ for Claimant each day, so the 15% fee correspondingly varied. BP's remaining argument is that the Program misclassified as coming within the variable cost category listed in Exhibit 4D as "Discounts and Rebates," a discount option Claimant frequently exercised with its customer Publix, whereby it could get paid by that grocery store chain within seven days of billing, in exchange for a 1% charge, as opposed to having to wait the usual 30 to 60 days for payment. BP insists this should be classified as "Interest Expense," an Exhibit 4D fixed cost. Given the discretion given to the Accountant Reviewers to classify items, the Panel finds no error in their classification of these charges as "Discounts and Rebates."

Decision: August 28, 2013