UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179 SECTION J JUDGE BARBIER |
| | * * | MAG. JUDGE SUSHAN |
| THIS DOCUMENT APPLIES TO: No. 12-00311 | * * | **JURY TRIAL DEMANDED** |

## DEFENDANT LIBERTY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON CAMERON'S § 541 CLAIM

For an extra-contractual claim under § 541 of the Texas Insurance Code, Cameron must prove, among other things, that (1) LIU's policy covers its claim; and (2) Cameron's liability was "reasonably clear" at the time of settlement.[1] Cameron can show neither.

*First,* under Texas law, an insurer is not liable under § 541 if there is a "bona fide coverage dispute." As the Fifth Circuit recently held, a reasonable, if ultimately erroneous, policy interpretation cannot give rise to a § 541 claim. LIU had two independent and reasonable bases for its coverage position: (1) LIU's decision not to fund Cameron's settlement was grounded in its reasonable determination that the Policy was excess of Cameron's *potential* right to indemnity from Transocean. As this Court held, LIU's interpretation of its "other insurance" condition was "reasonable."[2]; and (2) LIU reasonably concluded that Cameron's release of its valuable indemnification rights in the settlement violated the policy's "Transfer of Rights"

---

[1]    Rec. Doc. No. 7129, at p. 28 (order setting out elements of Section 541 claim).

[2]    *Id.* at p. 20.

requirement and forfeited coverage.   As the Court has confirmed, LIU is relieved of any

obligation under Texas law if Cameron's transfer of these rights materially breached the Policy.[3]

       ***Second***, Cameron's liability was not "reasonably clear" at the time of the

settlement for two independent reasons: (1) Cameron had a claim for contractual indemnity from

Transocean, which would have covered any claim under the LIU policy; and (2) putting aside the

right to indemnity, Cameron ultimately was exonerated of all liability by this Court.

## I.   BACKGROUND

**A.   LIU Policy.**

       In 2006, Cameron, through its broker Marsh, Inc., approached LIU about

underwriting an excess layer in Cameron's insurance tower.   As part of that underwriting

process, Cameron discussed its practice of limiting or capping its liability on products sold.[4]

Cameron understood that underwriters would rely on its representation that it had standard

practice of limiting or capping its liability assess the insurer's possible risk and determine

whether to issue a policy.[5]   Based on Cameron's representations, LIU understood that Cameron's

customer contracts included indemnity agreements limiting or capping its liability.[6]   LIU also

understood that Cameron would look first to its customer indemnity agreements to cover

---

[3]    *Id.* at p. 25.

[4]    *See* R. Lee Depo., attached as Ex. A, at 57:3 to 64:24.

[5]    *See id.* at p. 64:12-18.  Indeed, as Cameron stated to this Court, "'A fundamental purpose of risk allocation in the offshore drilling industry is to create a clear line of demarcation so each party will be able to evaluate its risk exposure and obtain appropriate insurance (or elect to self-insure).'"  Rec. Doc. No. 4524-1, at pp. 1-2.

[6]    *See* Account Summary, at LIU09343 & 9349, attached as Ex. B ("Have dedicated insurance department that reviews all contracts with customers and our insured caps their exposure to claim payments.").

catastrophic losses.[7]  Indeed, without such contractual limits on liability in Cameron's favor, LIU would not have underwritten Cameron's risk.[8]

LIU issued an excess insurance policy to Cameron ("the Policy") providing $50 million in limits above $103 million in underlying coverage, subject to all Policy terms and conditions.[9]  The Policy includes a unique Condition that its coverage is excess of "any type of . . . *indemnification or other mechanism by which an insured arranges for funding of legal liabilities*:"

### CONDITIONS
. . .
F.    Other Insurance

> If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of such other insurance.  Nothing herein will be construed to make this policy subject to the definitions, terms, conditions and exclusions of such other insurance.   However, this provision will not apply if the other insurance is specifically written to be excess of this policy.
>
> ***Other insurance includes any type of self-insurance, indemnification or other mechanism by which an Insured arranges for funding of legal liabilities.***[10]

The Policy also provides, as a condition of coverage, that Cameron must do nothing to impair any subrogation rights that Liberty may have:

O.    Transfer of Rights of Recovery

> 1. If any Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us.  The Insured

---

[7]    *See* A. Mandel Depo., attached as Ex. C, at 58:13 to 67:15, 109.

[8]    *Id.* at 109 (absent Cameron's representations on limited or capped liability through indemnities, LIU "[w]ouldn't [have] touch[ed] this account with a ten-foot pole" given the potential for catastrophic loss).

[9]    *See* LIU Excess Policy, attached as Ex. D.  At the time of the loss, the Policy was in effect.

[10]    *Id.* at LIU01501 (emphasis added).

942528_1

must do nothing after loss to impair these rights and must help us enforce them.[11]

## B.   The *Deepwater Horizon* Incident and Cameron's Indemnity Claim

Following the *Deepwater Horizon* incident, hundreds of lawsuits were filed naming Cameron, Transocean, BP and other defendants and third-party defendants. Just as had been represented to LIU, Cameron had contractual indemnity agreements which limited its liability for losses arising from the *Deepwater Horizon* incident. Specifically, under the Terms and Conditions for the sale of the Deepwater Horizon blowout preventer equipment and the Master Service Agreement ("MSA"), Transocean agreed to indemnify Cameron for losses caused by pollution by passing through indemnity to which it was entitled.[12] Transocean had such an indemnity contract with its customer BP – namely, the Drilling Contract for construction, use and operation of the *Deepwater Horizon*.[13]

Cameron demanded that Transocean defend and indemnify Cameron against the *Deepwater Horizon* claims based on the parties' contracts.[14] Transocean denied the tender in

---

[11]   Illinois Nat'l Policy Number, attached as Ex. E, at § VI, ¶ O; *see also* Ex. D, at LIU01498 (adopting terms of INIC Policy).

[12]   *See, e.g.*, Purchase Order's Terms & Conditions, attached as Ex. F ("In the event that Purchaser [Transocean] is entitled to indemnity *under any contract* with its customers or suppliers with respect to pollution, loss of hydrocarbons, damage to reservoirs, loss of hole or other damages associated with blowout or loss of well control. *Purchaser [Transocean] will provide Seller [Cameron] with the benefit of such indemnity to the fullest extent possible.*"); Transocean-Cameron Master Services Agreement, attached as Ex. G ("Transocean agrees that *if Transocean is entitled to indemnity under any contract with its customers or suppliers with respect to pollution,* loss of hydrocarbons, damage to reservoirs, loss of hole or other damages associated with blowout or loss of well control, *Transocean will provide Contractor [Cameron] with the benefit of such indemnity to the fullest extent possible.*").

[13]   Drilling Contract, attached as Ex. H. As Cameron has explained, "[W]hen the Drilling Contract was signed, BP and Transocean surely anticipated that Transocean would give a pollution indemnity to its suppliers, following the time-honored practice of allocating pollution risk back to the operator." Rec. Doc. No. 4865, at p. 8.

[14]   *See* CIC0001734, attached as Ex. I; B. Eastman Depo., attached as Ex. J, at 211:11 to 212:9.

4

part, but nevertheless tendered to BP Cameron's claim.[15]   Transocean also promised to "of course, pass onto Cameron any indemnity it is able to obtain (and pass) from BP."[16]

Repeatedly and consistently, Cameron assured LIU *both* that Cameron's liability was expected to be minimal *and* that it expected to be indemnified for any liability.   For example, Cameron told LIU only days after the spill, "[I]n our industry it is normal practice for equipment manufacturers and service providers to seek indemnification for pollution, loss of hydrocarbons, damage to reservoirs, loss of hole or other damages associated with blowouts or loss of well control." [17]   In May 2010, Cameron forwarded to LIU a Morgan Stanley report concluding that it was "highly unlikely" that Cameron would have any liability in connection with the spill and that "contractual protections likely provide legal cover for [Cameron]."[18]   In 2011, Cameron represented that it "d[id] not believe [it had] any liability" and "if there was found to be any liability, Cameron [was] expecting to be fully indemnified and defended by the parties[.]").[19]

Cameron also repeatedly and consistently represented in public filings after the spill that its liability was minimal *and* that it had limited its liability, if any, through its indemnity agreements:

- In filings with the Securities and Exchange Commission, Cameron repeatedly stated, "Based on the facts known to date, the Company is of the opinion that there was no

---

[15]   *See* CIC 15156, attached as Ex. K; Ex. J (B. Eastman Depo.), at 214:16 to 216:10.

[16]   *See* CIC0014934, attached as Ex. L; Ex. J (B. Eastman Depo.), at 209:19 to 211:5.

[17]   CIC0000246-48, attached as Ex. M; T. Black Depo., attached as Ex. N, at 177:17 to 183:8.

[18]   LIU 11975-89, attached as Ex. O.

[19]   MARSH 001903, attached as Ex. R.

defect in or failure of the [blowout preventer] that caused or contributed to the explosion."[20]

- Concerning its indemnity agreements, Cameron stated:

  The applicable contracts between Cameron and Transocean entities . . . provide that in the event Transocean is entitled to indemnity under any contract with its customers or suppliers for pollution or other damages associated with blowout or loss of well control, Transocean will provide Cameron with the benefit of such indemnity to the fullest extent possible. Transocean has publicly stated that it has a full pollution indemnity from BP, although BP has so far declined to acknowledge any obligation under the indemnity.[21]

Cameron promised to vigorously pursue its indemnities if necessary, and to tap into insurance only as a last resort: "If it is ultimately determined that the Company bears some responsibility, and therefore liability, for the costs and damages caused by this event, we will rely on our contractual indemnity rights and then, if and to the extent necessary and available, on our insurance coverage."[22]   Finally, Cameron did not record any Deepwater Horizon liability on its balance sheets, as this liability was not considered "probable" and "reasonably estimable."[23]

## E.    Cameron's Motion for Summary Judgment and its Settlement with BP

In late 2011, Transocean moved for summary judgment to enforce its right to contractual indemnity from BP.[24]   Five days later, Cameron moved for summary judgment on its indemnity claim against Transocean.[25]   These motions were set for hearing on December 16,

---

[20]   *See* March 31, 2011 10-Q, attached as Ex. P, at p. 15; Ex. J (B. Eastman Depo.), at to 166:11 to 174:5; June 30, 2011 10-Q, attached as Ex. Q, at p. 13; Ex. J (B. Eastman Depo.), at 181:21 to 189:21.

[21]   Ex. P (3/31/11 10-Q), at p. 15; *see also* Ex. Q (6/30/11 10-Q), at p. 14.

[22]   Ex. P (3/31/11 10-Q), at p. 17; *see also* Ex. Q (6/30/11 10-Q), at p. 14; Ex. J (B. Eastman Depo.), at 190:5 to 193:17 (discussing Cameron's "three-pronged" strategy to contest liability, then look to contractual indemnities, then look to insurance).

[23]   C. Sledge Depo., attached as Ex. U, at 37:5 to 41:5.

[24]   *See* Rec. Doc. No. 4477.

[25]   *See* Rec. Doc. No. 4524.  In connection with this Motion, LIU adopts Cameron's Motion, Memorandum, Reply, and all exhibits thereto.  *See* Rec. Doc. Nos. 4524 & 4865.  Cameron's VP and deputy general

942528_1

2011.  With the indemnity claims set to be resolved, Cameron engaged in settlement negotiations with BP and sought the insurers' consent to a settlement with BP.  LIU clearly and consistently informed Cameron that (1) it objected to any proposed settlement that required Cameron to release and transfer its valuable indemnification rights (and impaired LIU's subrogation rights); and (2) LIU's Policy had not attached pursuant to the Policy's Other Insurance Condition, providing the Policy was excess of "any type of . . . indemnification or other mechanism by which an insured arranges for funding of its legal liabilities, which included the Transocean contractual indemnity right."[26]

Over LIU's objection, on December 16, 2011, BP and Cameron reached a settlement in which BP agreed to indemnify Cameron for certain pollution claims in exchange for $250 million.  As part of the agreement, Cameron bargained away its contractual right to indemnify from Transocean:  Specifically, Cameron agreed "not to pursue, demand, litigate, or otherwise seek any Claims for . . . indemnity . . . including against Transocean under the Transocean Contracts" and transferred its indemnity rights to BP.[27]  Cameron then demanded that LIU contribute its limits to the settlement.  Because LIU's policy was excess of Cameron's indemnity claim pursuant to the OIC and because Cameron's settlement gave away valuable indemnity rights over LIU's objection, LIU declined to contribute its limits to the settlement.

---

counsel, Brad Eastman, testified that Cameron filed its motion because it believed the indemnity rights were enforceable. Ex. J (B. Eastman Depo.), at 62:9 to 63:19.

[26]     *See* CIC0005127-29, attached as Ex. S.

[27]     Settlement Agreement, attached as Ex. T, at ¶ 4.3. Cameron also assigned the indemnity claim to BP. *Id.* at ¶ 4.5.

7

Having bargained away its right to indemnity, Cameron withdrew its motion for summary judgment on the morning of the December 16, 2011 hearing.[28]  Only one month later, the Court ruled that the Drilling Contract obligated BP to indemnify Transocean for compensatory damages asserted by third parties against Transocean related to sub-surface pollution.[29]  This ruling would have allowed Transocean to pass to Cameron "the benefit of such indemnity to the fullest extent possible[,]" had Cameron not already forfeited its right to this indemnity.  Moreover, Cameron participated in the Phase I MDL trial in 2013 and, consistent with Cameron's own predictions, this Court ultimately found that Cameron was not liable in connection with the spill: "I've heard no evidence during this trial or seen no evidence to support a finding of negligence against Cameron that could have in any way caused or contributed to the accident[.]"[30]  This Court also rejected the product liability claims against Cameron.[31]

## II.    ARGUMENT AND AUTHORITIES

### A.    Liability Must Be "Reasonably Clear" to Prevail Under § 541.060(a).

Texas Insurance Code § 541.060(a) (emphasis added) provides, in relevant part:

> (a) It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary: . . .
>
> (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:
>
> (A) a claim with respect to which **the insurer's liability has become reasonably clear**[.]

---

[28]    *See* Rec. Doc. No. 4941.

[29]    *In re Oil Spill by the Oil Rig Deepwater Horizon*, 841 F. Supp. 2d 988 (E.D. La. 2012).

[30]    Rec. Doc. No. 9136.

[31]    *Id.*

As this Court observed, applying the *Rocor* test, an insurer's liability is not "reasonably clear" unless: (1) the policy covers the claim; (2) the insured's liability is reasonably clear; (3) the claimant has made a proper settlement demand within policy limits; and (4) the demand's terms are such that an ordinarily prudent insurer would accept it.[32]   Cameron bears the burden of proving all four elements and as set forth below, cannot meet that burden as to elements (1) or (2).

**B.     Liability Is Not "Reasonably Clear" Because LIU's Coverage Position Is Based on a Reasonable Interpretation of its Policy.**

Where a bona fide coverage dispute exists, the insured cannot establish the first element of the *Rocor* test.  *See  Mid-Continent Cas. Co. v. Eland Energy, Inc.*, No. 06-1576, 2009 WL 3074618, at **38-39 (N.D. Tex. 2009);  *see also Harris v. Am. Protec. Ins. Co.*, 158 S.W.3d 614, 624 (Tex. App. – Fort Worth 2005) (A "bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith [under Texas Insurance Code § 541].") (citing *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 193 (Tex. 1998)).  "Texas courts have clearly ruled that . . . extra-contractual tort claims [under the Insurance Code] require the same predicate for recovery as bad faith causes of action in Texas." *Id.* at *16 (internal quotes omitted).  As with a common law claim, "'an insurer will not be faced with a tort suit for challenging a claim of coverage if there was *any reasonable basis for denial of that coverage*.'" *Id.* (emphasis added).

---

[32]     Rec. Doc. No. 7129 (quoting *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002)).

Applying this rule, in *Lawyers Title Insurance Corp. v. Doubletree Partners, L.P.*, No. 12-40692, 2014 WL 127131, at **14-16 (5th Cir. 2014), the Fifth Circuit recently dismissed a § 541 claim where the insurer's denial of the claim was based on a reasonable, if ultimately erroneous, interpretation of the policy. In *Doubletree*, the parties disputed whether the insurer's policy covered an insured's claim for diminution in value. The Fifth Circuit found the policy ambiguous and resolved the ambiguity in favor of the insured. Nonetheless, the Fifth Circuit **dismissed the insured's § 541 claim** because the insurer had a reasonable basis for denial of coverage:

> Doubletree did not offer evidence that creates a genuine dispute of fact as to whether there was a "reasonable basis for the denial of coverage." As we have already noted, both Lawyers Title and Doubletree have offered reasonable interpretations of the reformed policy. Although we adopt Doubletree's interpretation under the well-known contra-insurer rule, Lawyers Title's interpretation of the reformed policy, under which Doubletree's claim is not covered, is also reasonable. **Lawyers Title thus had a reasonable basis for its denial of coverage.**

*Id.* at **15-16;[33] *see also Mid-Continent Cas. Co.*, 2009 WL 3074618, at **38-39 (insured not entitled to summary judgment on § 541 for failure to fund class action settlement where bona fide dispute existed on coverage).

As in *Doubletree*, LIU had a reasonable basis under the Policy for not contributing to the Cameron-BP settlement. Indeed, here LIU had not one, but two reasonable bases.

---

[33] *See also Henry v. Mutual of Omaha Ins. Co.*, 503 F.3d 425, 428-30 (5th Cir. 2007) ("[insurer] cannot be found in bad faith unless it knew (or should have known) that it had no reasonable basis for its decisions and rejected [insured's] claim for coverage anyway"); *Higginbotham*, 103 F.3d at 460 (summary judgment for insurer on Texas Insurance Code claim); *Flint-Lambert, P.C. v. Gulf Ins. Co.*, No. 04-184, 2005 WL 2042062, at *4 n.4 (N.D. Tex. 2005) (same; insurer's interpretation "provided it a reasonable basis for denying the claim").

10

### 1.  LIU's Position Was Based on a Reasonable Interpretation of its OIC.

LIU reasonably concluded that its Policy had not attached based on the language of the "Other Insurance" condition ("OIC").  LIU's OIC provides that the Policy is excess of "any type of . . . [indemnification]."[34]  It is undisputed that, at the time of the settlement with BP, Cameron had a contractual indemnity agreement with Transocean that, on its face, covered the claims arising from the Deepwater Horizon incident.  Because the OIC made the Policy excess of Cameron's right to indemnification and Cameron had a right to indemnity from Transocean, which was never determined, the Policy was not triggered.[35]

Indeed, this Court already has ruled that LIU's interpretation of its OIC was reasonable in deciding LIU's motion for judgment on the pleadings.  Concerning LIU's OIC argument, the Court observed that "[t]here are *two reasonable interpretations* that could be given to applies."[36]  The Court explained: [37]

> There are two reasonable interpretations that could be given to "applies."  It could mean that Liberty's coverage is excess of any "other insurance" that might *potentially* apply to Cameron's loss, despite the fact that (1) Transocean has denied that it owes Cameron indemnification and (2) the validity/scope of the indemnity clauses in the Cameron-Transocean Contracts has never been judicially determined.  However, "applies" could also mean that Liberty's coverage attaches unless "other insurance" *actually and presently* applies.  Under this interpretation, Transocean's refusal to provide indemnity would mean that there is no "other insurance" that "applies" to Cameron's loss.

---

[34]     Ex. D, at LIU01501.

[35]     Rec. Doc. No. 6438-3, at pp. 11-16.

[36]     Rec. Doc. No. 7129, at p. 20 (emphasis added).

[37]     Solely "for purposes of deciding *this motion* [the motion for judgment on the pleadings], the Court resolved the interpretation issues in Cameron's favor. *Id.* (emphasis added).

942528_1

In doing so, the Court noted that Texas courts had not addressed the issue,[38] and thus interpreting the unique language of LIU's OIC presented an issue of first impression.[39] Thus, the Court found LIU's interpretation – that "Liberty's coverage is excess of any 'other insurance' that might *potentially* apply to Cameron's loss" – was reasonable.[40]   Because LIU did not contribute to Cameron's settlement based on a reasonable interpretation that its Policy had not attached, LIU cannot be liable under Texas Insurance Code § 541.

### 2. LIU's Position Was Based on a Reasonable Interpretation of the Transfer of Rights Prohibition.

Moreover, LIU had a *second* contractual basis for not contributing to the Cameron/BP settlement:   Cameron's settlement with BP impaired LIU's subrogation rights. Under the Policy, the insured must "do nothing after loss to impair" the insurer's rights to recover all or part of any payment *and* must help the insurer enforce its rights.[41]  As part of the Cameron/BP settlement agreement, Cameron bargained away its contractual right to pursue indemnity from Transocean.[42]   This action impaired LIU's rights by preventing LIU from recovering any settlement payment from liable parties, such as BP and Transocean.[43]   LIU repeatedly cautioned Cameron that LIU did not consent to Cameron's transfer of its indemnity

---

[38]    *Id.* at p. 18.

[39]    *Id.* at p. 18.

[40]    *Id.*

[41]    Ex. D, at § VI, ¶ O.

[42]    *See* Ex. T, at ¶¶ 4.3, 4.5.

[43]    In this litigation, Cameron, *for the first time,* takes the position that LIU's subrogation rights were preserved in the settlement agreement.  That is not the case.  LIU can only stand in the shoes of Cameron on a subrogation claim.  Cameron's release of its rights of indemnity from Transocean leaves LIU with no shoes in which to stand.

rights as part of the settlement.[44]   Nonetheless, in breach of the Policy requirements, Cameron agreed to a settlement in which the indemnity rights were released.  Cameron's violation relieved LIU of any obligation to contribute to the settlement.

LIU's position that release of Cameron's indemnity rights extinguished coverage rests on settled Texas law.  *See, e.g., Mendez v. Allstate Prop. & Cas. Ins. Co.*, 231 S.W.3d 581, 585 (Tex. App. –Dallas 2007) ("Courts have traditionally held that when an insured extinguishes an insurer's subrogation rights the insured is precluded from recovery under the policy.").[45] Indeed, this Court confirmed LIU's understanding that Cameron's waiver of its indemnity rights *may* forfeit coverage, although it could not decide the issue on the pleadings alone.  Rec. Doc. No. 7129, at p. 25 (Liberty may be excused from coverage "if Cameron released legally valid and enforceable indemnity claims against Transocean").  Because LIU reasonably concluded based on settled law that Cameron forfeited coverage when it transferred and waived its indemnity rights against Transocean, LIU had a reasonable basis for refusing to contribute its Policy limits to the Cameron/BP settlement.

LIU continues to believe that its interpretation of its Policy language is correct. But, as demonstrated above, **at a minimum**, LIU's coverage position is reasonable.  As the Fifth Circuit's *Doubletree* decision just last month confirms, because there is a "bona fide dispute about [LIU's] liability on the contract," LIU cannot be liable under § 541 as a matter of law.

---

[44]   *See, e.g.,* Ex. S (objecting to "non-economic aspects of the proposed settlement"; "such action will jeopardize any coverage which Cameron might otherwise have under the LIU policy").

[45]   *See also Foundation Reserve Ins. Co. v. Cody*, 458 S.W.2d 214, 216 (Tex. Civ. App., 1970, no pet.) ("where a person insured under a contract which contains a right of subrogation on behalf of the insurance company settles with or releases a wrongdoer from liability for a loss before payment has been made by the insurance company, the latter's right of subrogation is thereby destroyed.  Having done this, the insured forfeits any claim for indemnity under the policy.") (citation omitted).

13

C.      **Cameron's Liability Was Not "Reasonably Clear."**

Cameron's § 541 claim fails for a second reason:  Cameron cannot show that its liability was "reasonably clear" at the time of the Cameron/BP settlement.

"To establish liability [under § 541] for the insurer's failure to reasonably attempt settlement of a claim against the insured, the insured must show . . . [that] the insured's liability is reasonably clear."  *Rocor*, 77 S.W.3d at 255.  When the insurer relies on evidence demonstrating that the claim against the insured is defensible, the insured's liability is not "reasonably clear."  *See Gulf Ins. Co. v. Jones*, No. 00-0330L, 2003 WL 22208551, at **9-10 (N.D. Tex. 2003).  In *Jones*, the court granted summary judgment dismissing a § 541 claim brought against a liability insurer for failing to settle a third-party claim, despite the fact that the claim resulted in an excess judgment against the insured.  The insurer's liability was not "reasonably clear", the *Jones* court held, because the insurer made a reasonable assessment of the claim and determined that the claim was defensible. *Id.*

As in *Jones*, Cameron cannot prevail on its section 541 claim because its liability was not "reasonably clear" at the time of settlement for the following two reasons:

*First,* Cameron believed, and the Court ultimately agreed, that it had no liability for the *Deepwater Horizon* claims.  Repeatedly, Cameron advised its insurers and the public that it faced minimal or no liability in connection with Deepwater Horizon.  Cameron's SEC filings from 2011 plainly state that Cameron was "of the opinion that there was no defect in or failure of the [blowout preventer] that caused or contributed to the explosion."[46]  Indeed, Cameron never recorded any Deepwater Horizon liability on its balance sheets, as this liability was not

---

[46]      Ex. P, at p. 15; Ex. Q, at p. 13.

considered "probable" and "reasonably estimable."[47]   Cameron also forwarded to LIU a Morgan

Stanley report stating that liability was "highly unlikely".[48]   Consistent with its own assessment,

Cameron ultimately *prevailed* in the Phase I trial and this Court determined that there was "no

evidence to support a finding of negligence against Cameron that could have in any way caused

or contributed to the accident[.]"[49]   This evidence clearly shows that Cameron's potential

exposure when the settlement occurred was far from "reasonably clear" and may have been

nonexistent.

   ***Second,*** to the extent Cameron faced *any* liability, Cameron potentially was

entitled to indemnity from Transocean / BP, and this indemnity indisputably was not determined

at the time of settlement.   Contrary to its present position that its indemnity claim was

questionable, Cameron argued to this Court in November 2011 that its rights were clear:

> The . . . oil spill claims . . . are unambiguously covered by the pollution
> indemnities provided to Cameron by Transocean.   The Drilling Contract
> indemnity provisions are unquestionably an "indemnity under [a] contract" with a
> Transocean customer within the meaning of the "pollution cost" provision of the
> Transocean agreements to indemnify Cameron.   Transocean was obligated to
> "provide" Cameron "with the benefit" of that Drilling Contract indemnity.   The
> Drilling Contract had already been executed when Transocean agreed to protect
> Cameron "to the fullest extent possible," and was referenced in the Transocean
> agreements with Cameron.   When interpreted in light of Drilling Contract 25.2,
> "provid[ing] the benefit of" the Drilling Contract "indemnity" necessarily entitles
> the benefitted party to the same indemnification set out in the Drilling Contract.
> Inasmuch as BP agreed by that indemnification to "bear the expense of" loss of
> reservoir and to "assume full responsibility" for pollution costs, the "benefit of the
> indemnity" is complete relief from all responsibility for loss of reservoir or
> pollution costs.   Under the unambiguous terms of the Transocean/Cameron

---

[47]   Ex. U (C. Sledge Depo.), at 37:5 to 41:5.

[48]   Ex. O (Morgan Stanley Report).

[49]   Rec. Doc. No. 9136.

agreements, Transocean must "provide" Cameron precisely that "benefit of" the Drilling Contract indemnity.[50]

Indeed, according to Cameron, enforcement of indemnity claims is "vital" as a policy matter to enable a company involved in offshore drilling "'to measure the risk exposures it will absorb *or insure*.'"[51]

Consistent with Cameron's briefing, Cameron's Deputy General Counsel testified that Cameron believed its indemnity rights were enforceable when Cameron moved for summary judgment in late 2011[52]   And, following Cameron's release of its indemnification claim and dismissal of its summary judgment motion, this Court ultimately agreed with Cameron and ruled that BP was required to indemnify Transocean for subsurface pollution claims under the Drilling Contract.[53]  This ruling would have allowed Transocean to provide Cameron "the benefit of such indemnity to the fullest extent possible[,]" as Transocean had promised to do.[54]

Because Cameron's right to indemnity from Transocean was not determined at the time of settlement, the extent of Cameron's liability in the Deepwater Horizon litigation was not "reasonably clear," as Cameron's Tony Black conceded.[55]   Given Cameron's own assessment that its exposure was minimal and its unresolved indemnity claim, Cameron cannot meet its burden to show that its liability was "reasonably clear" as *Rocor* requires.

---

[50]   Rec. Doc. No. 4524-1, at pp. 21-22.

[51]   *Id.* at 19 (emphasis added).

[52]   Ex. J (B. Eastman Depo.), at 62:9 to 63:19.

[53]   Rec. Doc. No. 5446.

[54]   *See* Ex. L.

[55]   Ex. N (T. Black Depo.), at 234:19 to 235:22 (agreeing that when Cameron settled with BP it was not reasonably clear whether Cameron would be fully indemnified by Transocean); *see also id.* at 197:10 to 198:21 (agreeing that, in late 2011, it was "not reasonably clear" that Cameron would be liable to any other party in the MDL litigation).

942528_1

### III.    CONCLUSION

For at least two reasons, Cameron cannot meet its burden to show that LIU's liability was "reasonably clear" when it settled with BP for $250 million.  First, LIU reasonably disputed coverage for the settlement, as two separate Policy provisions potentially relieved it of any obligation to contribute to the settlement.  Second, Cameron's own liability was not "reasonably clear," as Cameron repeatedly represented to the public and its insurers *both* that it had little or no liability *and* its indemnity agreements would insulate it from any liability. Because Cameron cannot show that LIU's liability for the BP settlement was "reasonably clear," the Court should grant LIU's Motion and dismiss with prejudice Cameron's claim under Texas Insurance Code § 541.060(a)(2).

Respectfully submitted,

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
Celeste Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
    FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana  70112
504.589.9700 (Telephone)
504.589.9701 (Facsimile)

and

Christopher W. Martin, PRO HAC VICE
Federal I.D. 13515
Gary L. Pate, PRO HAC VICE
Federal I.D. 29713
808 Travis, Suite 1800
Houston, Texas 77002
713-632-1700 (Telephone)
713-222-0101 (Facsimile)

Attorneys for Liberty Insurance
   Underwriters, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of March, 2014.

*/s/ Judy Y. Barrasso*

942528_1