UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * * | MDL NO. 2179<br><br>SECTION J<br><br>JUDGE BARBIER<br><br>MAG. JUDGE SUSHAN |
| THIS DOCUMENT APPLIES TO: No. 12-00311 | * * | **JURY TRIAL DEMANDED** |

**LIBERTY INTERNATIONAL UNDERWRITERS, INC.'S STATEMENT OF UNCONTESTED CONTESTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON CAMERON'S § 541 CLAIM**

Liberty International Underwriters, Inc. ("Liberty") submits this Statement of Uncontested Material Facts in support of its Motion for Partial Summary Judgment on Cameron's § 541 Claim.

1.     During LIU's underwriting process, Cameron discussed with LIU its practice of limiting or capping its liability on products sold.  *See* R. Lee Depo., Ex. A to LIU's Memo., at 13:1-16, 57:3 to 64:24.  Cameron understood that LIU would use this information to determine Cameron's risk exposure in deciding whether to underwrite the risk.  *Id.* at p. 64:12-18.

2.     LIU issued to Cameron an excess insurance policy, no. LQ1-B71-198583-046, effective from July 1, 2009 to July 1, 2010 ("LIU Excess Policy" or the "Policy").  *See* LIU Excess Policy, Ex. D to LIU's Memo.  The Policy was part of Cameron's insurance tower and provides $50 million in limits above $103 million in underlying coverage subject to all Policy terms and conditions.

1

3.    The Policy provides,

**CONDITIONS**

. . .

F.    Other Insurance

If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of such other insurance. Nothing herein will be construed to make this policy subject to the definitions, terms, conditions and exclusions of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

Other insurance includes any type of self-insurance, indemnification or other mechanism by which an Insured arranges for funding of legal liabilities.

4.    The First Underlying Policy provides,

O.    Transfer of Rights of Recovery

1. If any Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The Insured must do nothing after loss to impair these rights and must help us enforce them.

Ex. E to LIU's Memo.  The LIU Policy adopts this term.

5.    On April 20, 2010, during the Policy period, a blowout of the Macondo well occurred, causing an explosion and fire aboard the *Deepwater Horizon*.  These events gave rise to hundreds of lawsuits, naming Cameron, Transocean, BP and others as defendants and third-party defendants.  These lawsuits were consolidated in multi-district litigation.

6.    At the time of the blowout, Cameron was party to contractual indemnity agreements with Transocean including (1) the Terms and Conditions for the sale of the Deepwater Horizon blowout preventer equipment, and (2) the Master Service Agreement.  *See* Exs. F & G to LIU's Memo.  Likewise, Transocean was party to an indemnity agreement with

2

BP, the Drilling Contract for construction, use and operation of the *Deepwater Horizon*. Ex. H to LIU's Memo.

7.     Cameron demanded that Transocean defend and indemnify Cameron against the *Deepwater Horizon* claims. Ex. I to LIU's Memo.  Transocean tendered Cameron's claim to BP and promised to "of course, pass onto Cameron any indemnity it is able to obtain (and pass) from BP." Exs. K & L to LIU's Memo.

8.     After the blowout, Cameron represented to LIU that Cameron's liability was expected to be minimal and it expected to be indemnified for any liability.  *See* Exs. M & O to LIU's Memo.

9.     In SEC filings in 2011, Cameron publicly represented that its liability in connection with the blowout was minimal and it had limited its liability, if any, through its indemnity agreements. Exs. P & Q to LIU's Memo.

10.     In late 2011, Cameron moved for summary judgment on its indemnity claim against Transocean. Rec. Doc. No. 4524.  At the time this motion was filed, Cameron believed its indemnity rights were enforceable. Ex. J to LIU's Memo., at 62:9 to 63:19.

11.     In December 2011, Cameron entered into a Confidential Settlement Agreement with BP.  *See* Settlement, Exh. T to LIU's Memo.  In the Settlement, Cameron agreed not to pursue its indemnity claim against Transocean.  *Id.* at ¶ 4.3.  Cameron also assigned the indemnity claim to BP.  *Id.* at ¶ 4.5.

12.     Cameron withdrew its motion for summary judgment on the morning of the December 16, 2011 hearing. Rec. Doc. No. 4941.

3

13.     In the Phase I MDL trial in 2013, the Court found that Cameron was not liable in connection with the Deepwater Horizon incident.  Rec. Doc. No. 9136.

14.     This Court has found that the Policy's "Other Insurance" Condition is subject to two reasonable interpretations.  Rec. Doc. No. 7129.

Respectfully submitted,

_/s/ Judy Y. Barrasso_
Judy Y. Barrasso, 2814
Celeste, Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
   FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana  70112
504-589-9700 (Telephone)
504-589-9701 (Facsimile)

and

Christopher W. Martin, Federal I.D. 13515
Gary L. Pate. Federal I.D. 29713
MARTIN, DISIERE, JEFFERSON
   & WISDOM, L.L.P.
808 Travis, Suite 1800
Houston, Texas 77002
713-632-1700 (Telephone)
713-222-0101 (Facsimile)

Counsel for Liberty International
   Underwriters, Inc.

950193_1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of March 2014.

<u>  /s/ Judy Y. Barrasso      </u>

950193_1