# LIBERTY INTERNATIONAL UNDERWRITERS

## EXCESS INSURANCE POLICY





Liberty International Underwriters.
Member of Liberty Mutual Group

CONFIDENTIAL

LIU 01482
**Exhibit A**

# Excess Insurance Policy

## LIBERTY INSURANCE UNDERWRITERS INC.
(A New York Stock Insurance Company, hereinafter the "Insurer")
55 Water Street, 18th Floor; New York, NY 10041
Toll-free number: 1-800-677-9163

### EXCESS LIABILITY POLICY DECLARATIONS

**Policy Number:** LQ1B71198583046
**Renewal of:** LQ1B71198583036
**Broker:** Marsh, USA Inc.
1000 Main Street- Suite 300
Houston, Texas 77002

**Item 1:** NAMED INSURED AND MAILING ADDRESS
CAMERON INTERNATIONAL CORPORATION
1333 WEST LOOP SOUTH
Suite 1700
Houston, TX 77027-9118

(as Per First Underlying Insurance Policy)

**Item 2:** POLICY PERIOD
From: **July 1, 2009**    To: **July 1, 2010**
12:01 AM Standard Time at the mailing address of the Named Insured shown.

**Item 3:** **POLICY PREMIUM:** $210,000.00    **POLICY MINIMUM PREMIUM:** $0.00

TRIA Premium:    Rejected

**Total Annual Premium:**    $210,000.00

Premium Basis: (x) Flat ()Auditable

**Item 4:** LIMITS OF LIABILITY

Our liability under this policy will not exceed the following limit: 100.00% percent of "loss" excess of the Underlying Insurance stated in Item 5 of the Declarations, but for no greater than:

$50,000,000.00 -Each Occurrence

$50,000,000.00 -Aggregate Limit (where applicable)

1  2
0100-XS (03 00)

CONFIDENTIAL

LIU 01483

# Excess Insurance Policy

| Item 5: | SCHEDULE OF UNDERLYING INSURANCE |
|---|---|

First Underlying Insurance Policy
Insurer: Illinois National Insurance Company         Applicable Limit(s)
Policy Number: 27471353                              $25,000,000.00    -Each Occurrence
Policy Period: 7/1/2009 to 7/1/2010                  $25,000,000.00    -Aggregate Limit(where applicable)

Other Underlying Insurance-
(Excess of First Underlying Insurance Policy)
Insurer: Various Companies                           Applicable Limit(s)
Policy Number: As per on file with company           $75,000,000.00    -Each Occurrence
Policy Period: 7/1/2009 to 7/1/2010                  $75,000,000.00    -Aggregate Limit(where applicable)

| Item 6: | FORMS AND ENDORSEMENTS attached hereto: |
|---|---|

See Forms and Endorsement Schedule – 0104-XS (Ed. 03/00)

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS IN THE DECLARATIONS, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE COVERAGE AS STATED IN THIS POLICY.

*[signature]*                                         *[signature]*
PRESIDENT                                             VICE PRESIDENT and SECRETARY
David A. Cohen                                        Dexter R. Legg

CONFIDENTIAL                                                                                      LIU 01484

# Excess Insurance Policy

## LIBERTY INSURANCE UNDERWRITERS INC.
(A New York Stock Insurance Company, hereinafter the "Insurer")
55 Water Street, 18th Floor; New York, NY 10041
Toll-free number: 1-800-677-9163

### EXCESS FORMS AND ENDORSEMENTS SCHEDULE

| | |
|---|---|
| **Effective Date:** July 1, 2009 | **Expiration Date:** July 1, 2010 |
| **Policy Number:** LQ1B71198583046 | |
| **Issued To:** CAMERON INTERNATIONAL CORPORATION | |

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| Form Number | Form Name | Endorsement No. |
|---|---|---|
| 0100-XS (03/00) | Excess Policy Liability Declarations | |
| 0104-XS (Ed. 03/00) | Excess Forms and Endorsements Schedule | |
| 0188-XS (Ed. 03/00) | Asbestos Exclusion | 1 |
| 0200-XS (04 07) | Crisis Communication Management Insurance Endorsement | 2 |
| 0102-XS (Ed. 03/00) | Nuclear Energy Liability Exclusion Endorsement | 3 |
| 0160-XS (Ed. 03/00) | Pollution Limitation Endorsement Follow Form | 4 |
| Excess 4011 (05/06) | War Liability Exclusion | 5 |
| E-TX-XS (Ed. 03 02) | Texas Amendatory Endorsement | 6 |
| TRIA-EX-E001-0208 | Exclusion of Certified Acts of Terrorism | 7 |
| LIUNOTICE-TX-002-0209 | Texas Notice | |
| 0101-XS (Ed. 03 00) | Excess Liability Policy | |



0104-XS (03 00)

CONFIDENTIAL

LIU 01485

# Excess Insurance Policy

## LIBERTY INSURANCE UNDERWRITERS INC.
(A New York Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO.   1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| | |
|---|---|
| Named Insured: | CAMERON INTERNATIONAL CORPORATION |
| Policy Number: | LQ1B71198583046 |
| Effective Date: | July 1, 2009 |

## ASBESTOS EXCLUSION

This policy does not apply to:

Any "loss", including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations or the fees of attorneys, experts, or consultants arising out of or related in any way, whether directly or indirectly to:

(1) asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust, including, but not limited to, manufacture, mining, use, sale, installation, removal, or distribution activities;

(2) exposure to testing for, monitoring of, cleaning up, removing, containing or treating of asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust; or

(3) any obligation to investigate, settle or defend, or indemnify any person against any claim or suit arising out of, or related in any way, either directly or indirectly, to asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust.

This endorsement does not change any other provision of the policy.

| 1 | 1 |
|---|---|

0188-XS (Ed. 03/00)

CONFIDENTIAL

LIU 01486

# Excess Insurance Policy

## LIBERTY INSURANCE UNDERWRITERS INC.
(A New York Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO.   2

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| | |
|---|---|
| Named Insured: | CAMERON INTERNATIONAL CORPORATION |
| Policy Number: | LQ1B71198583046 |
| Effective Date: | July 1, 2009 |

### CRISIS COMMUNICATIONS MANAGEMENT INSURANCE ENDORSEMENT

It is understood and agreed that this policy shall not be subject to the terms and conditions of Endorsement Form Number, As per on file with company, (Crisis Communications Management Insurance) of Policy Number: 27471353, issued by Illinois National Insurance Company, and under no circumstances shall this Policy provide coverage for Crisis Management Loss as defined herein.

All other terms, conditions and exclusions of the Policy remain unchanged.

0200-XS (04 07)

CONFIDENTIAL

LIU 01487

# Excess Insurance Policy

## LIBERTY INSURANCE UNDERWRITERS INC.
(A New York Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO.    3

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| | |
|---|---|
| Named Insured: | CAMERON INTERNATIONAL CORPORATION |
| Policy Number: | LQ1B71198583046 |
| Effective Date: | July 1, 2009 |

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

This endorsement changes the policy as follows:

This policy does not apply to:

A. Any "loss":

1. with respect to which any Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic, Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an Insured under any such policy but for its Limit of Insurance: or

2. resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    a) a person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    b) any Insured is, or had this policy not been issued would be entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material," if:

1. The "nuclear material,"

    a) is at any "nuclear facility" owned by, or operated by or on behalf of, any insured; or

    b) has been discharged or dispersed therefrom;

2. the "nuclear material" is contained in "spent fuel" or "nuclear waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any Insured; or

| 1 | 3 |
|---|---|

0102-XS (Ed. 03/00)

CONFIDENTIAL

LIU 01488

## Excess Insurance Policy

---

3. the injury or "nuclear property damage" arises out of the furnishing by any Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion B.3 applies only to "nuclear property damage" to such "nuclear facility" and any property therein.

As used in this Exclusion:

1. "Hazardous properties" include radio-active, toxic or explosive properties.
2. "Nuclear facility" means:
    a) any "nuclear reactor."
    b) any equipment or device designed or used for:
        (1) separating the isotopes of uranium or plutonium,
        (2) processing or utilizing "spent fuel," or
        (3) handling, processing or packaging "nuclear waste";
    c) any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
    d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "nuclear waste," and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;
3. "Nuclear material" means "source material," special nuclear material" or "by-product material," "special nuclear material" or "by-product material".
4. "Nuclear property damage" includes all forms of radioactive contamination of property.
5. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.
6. "Nuclear Waste" means any "nuclear waste" material:
    a) containing "by-product material" other than the tailings of "nuclear wastes" produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and
    b) resulting from the operation by any person or organization of any "nuclear facility" included within the definition of "nuclear facility" under Paragraph 2(a) or 2(b).
7. "Source material," "special nuclear material," and by-product material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

| 2 | 3 |
|---|---|

0102-XS (Ed. 03/00)

CONFIDENTIAL

LIU 01489

## Excess Insurance Policy

8. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

This endorsement does not change any other provisions of the policy.

0102-XS (Ed. 03/00)

CONFIDENTIAL

LIU 01490

# Excess Insurance Policy

## LIBERTY INSURANCE UNDERWRITERS INC.
(A New York Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO.   4

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| | |
|---|---|
| Named Insured: | CAMERON INTERNATIONAL CORPORATION |
| Policy Number: | LQ1B71198583046 |
| Effective Date: | July 1, 2009 |

### POLLUTION LIMITATION ENDORSEMENT-FOLLOW FORM

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

This insurance does not apply to:

Any "loss," including but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants, arising out of or in anyway related to:

1. The actual, alleged, or threatened presence, discharge, dispersal, seepage, migration, release, or escape of "pollutants," however caused.

2. Any request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in anyway respond to or assess the effects of "pollutants." This includes demands, directives, complaints, suits, orders or requests brought by any governmental entity or by any person or group of persons.

3. Steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any "loss," costs, charges, or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials, which are intended to be or have been recycled, reconditioned or reclaimed.

However, it is agreed that this exclusion does not apply to any "loss" described above for which coverage is afforded under Illinois National Insurance Company **Policy Number:** 27471353, **Form Number:** As per on file with company, and then for no broader coverage than is afforded by such insurance (hereafter referred to as "Underlying Pollution Coverage").

| 1 | 2 |
|---|---|

0160-XS (Ed 03/00)

CONFIDENTIAL                                                                                                                       LIU 01491

## Excess Insurance Policy

In the event that the "Underlying Pollution Coverage is amended or deleted after the inception date of this policy the Company must be so advised in writing within fourteen (14) days after the effective date of such amendment or deletion. Any amendment which broadens coverage under the "Underlying Pollution Coverage" shall not be binding upon the Company unless its agreement is acknowledged in writing by an authorized representative of the Company.

All other terms and conditions of this policy remain unchanged.

2  2
0160-XS (Ed 03/00)

CONFIDENTIAL

LIU 01492

# Excess Insurance Policy

## LIBERTY INSURANCE UNDERWRITERS INC.
(A New York Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 5

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| | |
|---|---|
| Named Insured: | CAMERON INTERNATIONAL CORPORATION |
| Policy Number: | LQ1B71198583046 |
| Effective Date: | July 1, 2009 |

### WAR LIABILITY EXCLUSION ENDORSEMENT

It is hereby agreed that the Policy shall be amended as follows:

This Policy does not apply to any "loss", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

All other terms, conditions, and exclusions of this policy remain unchanged.

Excess 4011 (05/06)

CONFIDENTIAL

LIU 01493

# Excess Insurance Policy

## LIBERTY INSURANCE UNDERWRITERS INC.
(A New York Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO.   6

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| | |
|---|---|
| Named Insured: | CAMERON INTERNATIONAL CORPORATION |
| Policy Number: | LQ1B71198583046 |
| Effective Date: | July 1, 2009 |

### TEXAS AMENDATORY ENDORSEMENT

It is agreed that Section V., Condition C., is amended by adding the following to paragraph 2:

Any written notice of cancellation will state the reasons therefore.

It is further agreed that Section V., Condition C., is amended by adding the following:

9. If this is a policy that is in its initial policy period and has been in effect for more than sixty (60) days following the date on which the policy was issued, or if this is a renewal or continuation of a policy we issued, we may not cancel this policy except for one or more of the following reasons:

   a) Nonpayment of premium;

   b) Fraud in obtaining the policy;

   c) An increase in hazard within the control of the Insured which would produce an increase in rate;

   d) Our placement into supervision, conservatorship, or receivership, if the cancellation or nonrenewal is approved or directed by the supervisor, conservator, or receiver; or

   e) Loss of our reinsurance covering all or part of the risk covered by the policy

**Nonrenewal**

10. We may choose not to renew this policy by delivering written notice to the Named Insured at the last address shown in the Declarations. We will provide written notice of nonrenewal at least sixty (60) days prior to the expiration of the policy, except that if we have been placed in supervision, conservatorship or receivership and we choose not to renew the policy with the approval or at the direction of the supervisor, conservator or receiver only, we will only be required to provide notice of nonrenewal at least ten (10) days prior to expiration of the policy. Any notice of nonrenewal shall state the reasons for the nonrenewal. A transfer of coverage for the Named Insured within the same insurance group will not be considered a refusal to renew.

11. If we fail to provide notice of nonrenewal at least sixty (60) days before the expiration of the policy, the policy will remain in effect until the sixty-first (61st) day after we have provided the Named Insured with such notice. Earned premium for any such continuation of coverage beyond the expiration date of the policy will be calculated pro rata based on the previous year's rates.

12. We may not cancel or refuse to renew this policy based solely on the fact you are an elected official.

| 1 | 2 |
|---|---|

E-TX-XS (Ed. 03 02)

CONFIDENTIAL

LIU 01494

# Excess Insurance Policy

It is further agreed that Section V., Condition E., is amended by adding the following:

5. We will provide written notice to the Named Insured of our receipt of an initial offer to compromise or settle a claim made against you under this policy. We will provide such notice within ten (10) days after we receive the offer to compromise or settle.

6. Within thirty (30) days after the date of any settlement of a claim under this policy, we will notify the Named Insured in writing of such settlement.

This endorsement does not change any other provision of the policy.

2   2
E-TX-XS (Ed. 03 02)

CONFIDENTIAL

LIU 01495

# Excess Insurance Policy

## LIBERTY INSURANCE UNDERWRITERS INC.
(A New York Stock Insurance Company, hereinafter the "Insurer")

ENDORSEMENT NO. 7

| | |
|---|---|
| Named Insured: | CAMERON INTERNATIONAL CORPORATION |
| Policy Number: | LQ1B71198583046 |
| Effective Date: | July 1, 2009 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION OF CERTIFIED ACTS OF TERRORISM**

This endorsement modifies insurance provided under the following:

**Excess Insurance Policy**

A. The following exclusion is added:

This insurance does not apply to any "loss" arising out of or related in any way, whether directly or indirectly to:

**TERRORISM**

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or underlying insurance.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

TRIA-EX-E001-0208    Includes copyrighted material of Insurance Services Office, Inc., used with its permission

CONFIDENTIAL

LIU 01496

# Excess Insurance Policy

## TEXAS NOTICE

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may call Liberty International Underwriters' toll-free telephone number for information or to make a complaint at: | Usted puede Illamar al numero de telefono gratis de Liberty International Underwriters' para informacion o para someter una queja al: |
| 1-800-344-0197 | 1-800-344-0197 |
| You may also write to Liberty International Underwriters at:<br>Presidential Service Team<br>Liberty International Underwriters<br>175 Berkeley St. MS 10B<br>Boston, MA 02116 | Usted tambien puede escribir a Liberty International Underwriters:<br>Presidential Service Team<br>Liberty International Underwriters<br>175 Berkeley St. MS 10B<br>Boston, MA 02116 |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companies, coberturas, derechos o quejas al: |
| 1-800-252-3439 | 1-800-252-3439 |
| You may write the Texas Department of Insurance:<br>P. O. Box 149104<br>Austin, TX 78714-9104<br>FAX # (512) 475-1771<br>Web: http://www.tdi.state.tx.us<br>E-mail: consumerprotection@tdi.state.tx.us | Puede escribir al Departamento de Seguros de Texas:<br>P. O. Box 149104<br>Austin, TX 78714-9104<br>FAX # (512) 475-1771<br>Web: http://www.tdi.state.tx.us<br>E-mail: consumerprotection@tdi.state.tx.us |
| **PREMIUM OR CLAIM DISPUTES:**<br>Should you have a dispute concerning your premium or about a claim you should contact the (agent) (company) (agent or the company) first. If the dispute is not resolved, you may contact the Texas Department of Insurance | **DISPUTAS SOBRE PRIMAS O RECLAMOS:**<br>Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el (agente) (la compania) (agente o la compania) primero. Si no se resuelve la disputa, puede entonces comunicarse con el Departamento de Seguros de Texas. |
| **ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document. | **UNA ESTE AVISO A SU POLIZA:** Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |

1　1
LIUNOTICE-TX-002-0209

CONFIDENTIAL

LIU 01497

# Excess Insurance Policy

## LIBERTY INSURANCE UNDERWRITERS INC.
(A New York Stock Insurance Company, hereinafter the "Insurer")
55 Water Street, 18th Floor; New York, NY 10041
Toll-free number: 1-800-677-9163

## EXCESS LIABILITY POLICY

There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Words and phrases in quotation marks have special meaning and can be found in the Definitions or the specific policy provision where they appear.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, and subject to all terms of this policy, we agree with you to provide coverage as follows:

INSURING AGREEMENTS

I. **COVERAGE**

   We will pay on behalf of the Insured "loss" that results from an occurrence during the "policy period." We will pay "loss" in excess of the Underlying Insurance shown in Item 5. of the Declarations, but only up to an amount not exceeding our Limits of Liability as shown in Item 4. of the Declarations. Except for any definitions, terms, conditions and exclusions of this policy, the coverage provided by this policy is subject to the terms and conditions of the First Underlying Insurance Policy, as shown in Item 5. of the Declarations.

   The inclusion or addition hereunder of more than one Insured shall not operate to increase our Limits of Liability beyond that shown in Item 4. of the Declarations.

   We will be furnished a complete copy of the First Underlying Insurance Policy described in Item 5. of the Declarations.

II. **LIMITS OF LIABILITY**

   A. The Limits of Liability shown in Item 4. of the Declarations and the rules below describe the most we will pay regardless of the number of:

      1. Insureds;
      2. claims made or suits brought; or
      3. persons or organizations making claims or bringing suits.

   B. The Limits of Liability of this policy will apply as follows:

      1. This policy applies only in excess of the Underlying Insurance shown in Item 5. of the Declarations.
      2. The aggregate limit shown in Item 4. of the Declarations is the most we will pay for all "loss" that is subject to an aggregate limit provided by the First Underlying Insurance Policy. The aggregate limit applies separately and in the same manner as the aggregate limits provided by the First Underlying Insurance Policy.
      3. Subject to Paragraph B.2. above, the occurrence limit shown in Item 4. of the Declarations is the most we will pay for all "loss" arising out of any one occurrence to which this policy applies.

| 1 | 4 |

0101-XS (Ed. 03 00)

CONFIDENTIAL

LIU 01498

# Excess Insurance Policy

4. Subject to Paragraphs B.2. and B.3. above, if the limits of liability of the Underlying Insurance shown in Item 5. of the Declarations are reduced or exhausted solely by payment of "loss", such insurance provided by this policy will apply in excess of the reduced Underlying Insurance or, if all such coverage is exhausted, will apply as underlying insurance subject to the same terms, conditions, definitions and exclusions of the First Underlying Insurance Policy, except for any definitions, terms, conditions and exclusions of this policy.

5. The Limits of Liability of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Liability.

## III. DEFENSE

A. We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

B. We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for "loss" under this policy. If we exercise such right, we will do so at our own expense.

C. If the limits of liability of the Underlying Insurance shown in Item 5. of the Declarations are exhausted solely by payment of "loss", we shall have the right but not the duty to investigate and settle any claim or assume the defense of any suit which, in our opinion, may give rise to a "loss" under this policy. Such investigation or defense shall be at our own expense. We may, however, withdraw from the defense of such suit and tender the continued defense to you if our applicable Limits of Liability shown in Item 4. of the Declarations are exhausted by payment of "loss."

## IV. DEFINITIONS

"Loss" means those sums which you are legally obligated to pay as damages, after making proper deductions for all recoveries and salvage, which damages are covered by the First Underlying Insurance Policy.

"Policy period" means the period from the inception date of this policy to the expiration date stated in the Declarations, or any earlier date of cancellation or termination.

## V. CONDITIONS

A. Appeals

In the event you or the insurer(s) of the Underlying Insurance shown in Item 5. of the Declarations elects not to appeal a judgment in excess of the amount of the Underlying Insurance, we may elect to appeal at our expense. If we do so elect, we will be liable for the costs and additional interest accruing during this appeal. In no event will this provision increase our liability beyond the applicable Limits of Liability as set forth in Section II. of this policy and as shown in Item 4. of the Declarations.

B. Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any Insured will not relieve us from our obligation to pay "loss" covered by this policy.

In the event of bankruptcy, insolvency or refusal or inability to pay, of the insurer(s) of the Underlying Insurance shown in Item 5. of the Declarations, the insurance afforded by this policy will not replace such Underlying Insurance, but will apply as if the Underlying Insurance was fully available and collectible.

C. Cancellation

| 2 | 4 |

0101-XS (Ed. 03 00)

CONFIDENTIAL

LIU 01499

## Excess Insurance Policy

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect
2. We may cancel this policy. If we cancel because of non-payment of premium, we will mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we will mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1. of the Declarations will be sufficient to prove notice.
3. The "policy period" will end on the day and hour stated in the cancellation notice.
4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force.
5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.
6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.
7. The Named Insured shown in Item 1. of the Declarations will act on behalf of all other Insureds with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.
8. Any of these provision that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

D. **Maintenance of Underlying Insurance**

During the "policy period", you agree:

1. To keep the policies listed in the Schedule of Underlying Insurance as shown in Item 5. of the Declarations in full force and effect;
2. That the Limits of Liability of the policies listed in the Schedule of Underlying Insurance as shown in Item 5. of the Declarations will be maintained except for any reduction or exhaustion of aggregate limits by payment of "loss" in claims or suits covered by the Underlying Insurance.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

E. **Notice of Occurrence**

1. You must see to it that we are notified as soon as practicable of an occurrence which may result in a "loss" covered under this policy. To the extent possible, notice will include:

    a) how, when and where the occurrence took place;

    b) the names and addresses of any injured persons and witnesses;

    c) the nature and location of any injury or damage arising out of the occurrence.

2. If a claim or suit against any Insured is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.
3. You and any other involved Insured must:

| 3 | 4 |
|---|---|

0101-XS (Ed. 03 00)

CONFIDENTIAL

LIU 01500

## Excess Insurance Policy

    a) immediately send us copies of any demands, notices, summonses or legal documentation received in connection with a claim or suit;

    b) authorize us to obtain records and other information;

    c) cooperate with us in the investigation, settlement or defense of the claim or suit; and

    d) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

4. The Insureds will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**F. Other Insurance**

If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of such other insurance. Nothing herein will be construed to make this policy subject to the definitions, terms, conditions and exclusions of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

Other insurance includes any type of self-insurance, indemnification or other mechanism by which an Insured arranges for funding of legal liabilities.

**G. Terms Conformed to Statute**

The terms of this policy which are in conflict with the statutes of the state where this policy is issued are amended to conform to such statutes. If we are prevented by law or statute from paying on behalf of the Insured, then we will, where permitted by law or statute, indemnify the Insured.

**H. When "Loss" is Payable**

Coverage under this policy will not apply unless and until you or the insurer(s) of the Underlying Insurance shown in Item 5. of the Declarations has paid or is obligated to pay the full amount of such Limits of Liability.

When the amount of "loss" has finally been determined, we will promptly pay on your behalf the amount of "loss" covered under this policy.

In Witness Whereof, the Insurer has caused this policy to be executed and attested, but this Policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the Insurer.

*[signature]*
PRESIDENT
David A. Cohen

*[signature]*
VICE PRESIDENT and SECRETARY
Dexter R. Legg

4   4
0101-XS (Ed. 03 00)

CONFIDENTIAL

LIU 01501