# Memorandum

**To:** Patrick A. Juneau
      Claims Administrator

**From:** Class Counsel

**Re:** Proposed BEL Policy for "Matching" Revenue and Expenses
      *Policy Keeper No. 495 (dated 2/12/2014)*

**Date:** February 27, 2014

 

As we have previously briefed to both the Claims Administrator and to the Court, Class Counsel believe that there is no basis under either the Settlement Agreement nor the U.S. Fifth Circuit's BEL Opinion[1] to:

- Further "match" claims submitted under an accrual-based accounting method;[2]

- Average or "smooth" or otherwise move or re-allocate revenue that has been properly recorded under a cash, accrual, percentage-of-completion or other standard and accepted accounting method;[3] or

- Require BEL Claimants to prepare or provide additional documentation that is not required under Exhibit 4A, including particularly pre-Benchmark year documents, post-Compensation year documents, and/or new monthly P&Ls where monthly P&Ls that were actually prepared in the ordinary course of business (and/or Contemporaneous monthly P&Ls prepared from underlying business records in accordance with the Settlement's terms and the Claims

---

[1] Appeal No. 13-30315, dated Oct. 2, 2013, and reported as In re Deepwater Horizon, 732 F.3d 326 (5th Cir. 2013).

[2] *See* CLASS COUNSEL *IN CAMERA* SUBMISSION (Oct. 9, 2013) [Doc 11728-1] pp.1-2; CLASS COUNSEL *IN CAMERA* SUBMISSION (Oct. 18, 2013) [Doc 11728-4] pp.2-4; MEMO TO CLAIMS ADMINISTRATOR (Oct. 23, 2013) [Doc 11728-1] pp.5-6; CLASS COUNSEL BRIEF ON THE BEL REMAND ISSUE [Doc 11862] p.1; CLASS COUNSEL SUBMISSION OF PROPOSAL FOR MATCHING EXPENSES [Doc 11885] pp.1-2; CLASS COUNSEL COMMENTS ON BP "MATCHING" PROPOSALS [Doc 11898] pp.2-4.

[3] *See* CLASS COUNSEL *IN CAMERA* SUBMISSION (Oct. 9, 2013) [Doc 11728-1] p.1; MEMO TO CLAIMS ADMINISTRATOR (Oct. 23, 2013) [Doc 11728-1] pp.1-4; CLASS COUNSEL BRIEF ON THE BEL REMAND ISSUE [Doc 11862] pp.1-2; CLASS COUNSEL SUBMISSION OF PROPOSAL FOR MATCHING EXPENSES [Doc 11885] pp.1-2; CLASS COUNSEL STATEMENT: REVENUE RECOGNITION [Doc 11885-2] pp.1-4; CLASS COUNSEL COMMENTS ON BP "MATCHING" PROPOSALS [Doc 11898] pp.2-4.

Administrator's existing Policies) have already been submitted to the Settlement Program.[4]

Additionally, and at the same time, Claimants should be provided with the opportunity to submit accrual-based or other sufficiently matched monthly P&Ls, to be evaluated in the manner that BEL Claims have been historically processed under Exhibit 4C.

The Claims Administrator and the Program Accountants concede that the proposed new Agricultural / Educational Institution Framework departs from the Exhibit 4C analysis,[5] and that the proposed new Professional Services Framework not only departs from the Exhibit 4C analysis,[6] but also departs from any standard or accepted accounting methodology.[7]   Class Counsel respectfully submit that the Claims Administrator does not have the authority to abandon the negotiated terms of the Settlement Agreement, and could ensure sufficient matching for these two industry groups (as well as the Construction Industry claims) using the basic Average Variable Margin methodology set forth in Proposed Attachment B.   This approach is supported by not only the absence of industry-based alternative frameworks within Exhibit 4C for BEL Claims,[8] but is also required by Section 4.4.7, which dictates that that the compensation criteria for each of the claims categories "will apply equally to all Claimants."

---

[4] While the Claimant should be given the *choice* to submit revised Contemporaneous P&Ls or other additional documentation, either to maximize the value of the Claim under Section 4.3.8 and/or to assist the Program Accountants in processing the Claim more quickly and efficiently, the Claimant should not be *required* to expend this time, money or effort, in light of Exhibit 4A, Section 4.3.7, and the BEL Opinion. *See* CLASS COUNSEL *IN CAMERA* SUBMISSION (Oct. 9, 2013) [Doc 11728-1] pp.3-4; CLASS COUNSEL COMMENTS ON BP "MATCHING" PROPOSALS [Doc 11898] pp.5-6, 10.

[5] The Claims Administrator specifically concedes that "a deviation from the existing methodology set forth in Exhibit 4C was deemed necessary." *See* ATTACHMENT D to Proposed Policy No. 495 (Feb. 12, 2014). (Significantly, the new methodology eliminates the negotiated right for a Claimant to select the number of months used for the Compensation Period.)  During the meeting with the Program Accountants on February 20, 2014, Mr. John Petzold, from PwC, further acknowledged that the proposed Agriculture / Educational Framework is not based on the Settlement Agreement, but is a new methodology, which, when using only one benchmark year, effectively eliminates the "Step Two" Calculation to which the BEL Claimant is entitled under Exhibit 4C.

[6] The Claims Administrator specifically concedes that "deviation from the existing methodology set forth in Exhibit 4C was deemed necessary." *See* ATTACHMENT E to Proposed Policy No. 495 (Feb. 12, 2014).

[7] During the meeting with the Program Accountants on February 20, 2014, Mr. Ted Martens, from PwC, acknowledged that the "straight line averaging" approach to revenue (or expenses) cannot be found in any accepted accounting methodology with respect to (at least) a contingent fee situation, where a fee is not earned unless and until a judgment or settlement is paid.  *See also, generally,* CLASS COUNSEL STATEMENT: REVENUE RECOGNITION [Doc 11885-2]; BRIEF OF *AMICI CURIAE* CERTIFIED PUBLIC ACCOUNTING SOCIETIES, No.13-30315 (June 24, 2013); FASB CONCEPTS STATEMENT 5, Recognition and Measurement in Financial Statements of Business Enterprises, paragraph 83(b); Con 6, Page 35, Footnote 56 references Concepts Statement 5 (Par. 83 and Footnote 50); SECURITIES AND EXCHANGE COMMISSION STAFF ACCOUNTING BULLETIN NO. 104 ("SAB 104"), Topic 13 and 1; KIESO, WEYGANDT & WARFIELD, *Intermediate Accounting* (14th Ed.), at p.60; DECLARATION OF DR. MARK KOHLBECK, CPA (Feb. 18, 2013) [Doc 8963-80], ¶¶ 6, 10; PANZECA DECLARATION (Feb. 18, 2013) [Doc 8963-85] ¶¶ 23, 27; DECLARATION OF ALLEN CARROLL (Jan. 16, 2013) [Doc 8963-77], p.2; ASHER DECLARATION (Jan. 15, 2013) [Doc 8963-78], ¶¶ 7-8; STUTES DECLARATION (Jan. 17, 2013) [Doc 8963-79], ¶¶ 6-7; SUPPLEMENTAL CARROLL DECLARATION (Feb. 18, 2013) [Doc 8963-87], ¶¶ 10, 13-14.

[8] *See also, e.g.,* MEMO TO CLAIMS ADMINISTRATOR (Oct. 23, 2013) [Doc 11728-1] pp.6-7; CLASS COUNSEL BRIEF ON THE BEL REMAND ISSUE [Doc 11862] p.9.

Submitted herewith are further objections, comments and suggestions from Class Counsel in red on the Claims Administrator's February 12, 2014 Proposed Policy No. 495.

Class Counsel, however, respectfully take this opportunity to specifically address two issues, and to strongly encourage the Claims Administrator to make these two changes to the Proposed Policy, in addition to the more general issues that have been previously briefed to the Claims Administrator and to the Court:

1. Even assuming *arguendo* that some "smoothing" or other re-allocation of revenue should occur for Exhibit 4C purposes,[9] there is absolutely no basis under the Settlement Agreement or the current BEL Opinion to thereafter re-visit the issue of Causation under Exhibit 4B.

2. Any matching of "corresponding variable expenses" to revenues should be performed by the Program Accountants utilizing solely the variable expenses incurred (and, as proposed, the revenues experienced) within the relevant Benchmark and Compensation years.

## The Program Should Not Alter or Revisit the Causation Test under Exhibit 4B

Even assuming *arguendo* that some "smoothing" or other re-allocation of revenue should occur for Exhibit 4C purposes,[10] there is absolutely no basis under the Settlement Agreement or the current BEL Opinion to thereafter re-visit the issue of Causation under Exhibit 4B.

The entire basis of the BEL Opinion – as well as the District Court's decision on remand – centered on the "Variable Profit" definition and specifically the interpretation of "corresponding variable expenses" in Exhibit 4C.[11]

The Causation Test found in Exhibit 4B is a pure revenue test, which has nothing to do with expenses. The terms "Variable Profit" and "variable expenses" are found nowhere in the Exhibit 4B Framework.

Judge Southwick specifically noted in the BEL Opinion that: "**No one on appeal is challenging Exhibit 4B.**"[12]

---

[9] Class Counsel, of course, disagree with any re-allocation of revenue.

[10] Class Counsel, of course, disagree with any re-allocation of revenue.

[11] *See* BEL OPINION, pp.9-10, 16-24 (732 F.3d at 332, 336-339); ORDER AND REASONS (Dec. 24, 2013) [Doc 12055] pp.4-5.

[12] BEL OPINION, p.39 (732 F.3d at 347) (Southwick, J., concurring); *see also,* BEL OPINION, p.37 (732 F.3d at 346) (Southwick, J., concurring) (does not join in Part II of Judge Clement's opinion, because it implies "an invalidity to the Settlement Agreement's *causation framework, which no one challenges*") (emphasis supplied).

Moreover, and as reflected by the ADDENDUM TO CAUSATION REQUIREMENTS FOR BUSINESS ECONOMIC LOSS CLAIMS AND COMPENSATION FRAMEWORK FOR BUSINESS ECONOMIC LOSS CLAIMS, the two tests are not only separate and distinct, but the Claimant is expressly permitted to use *different* *months* for the Causation Test than for the Compensation analysis.

The three Scenarios included as examples within this ADDENDUM further reflect that the Causation Test under Exhibit 4B would be applied first.

It likely goes without saying that, in the ordinary course of human events, B comes before C.

On November 2, 2013, Class Counsel asked BP to provide "any and all support for the proposition stated in Footnote 1 of BP's November 1st Letter that the Compensation Framework in Exhibit 4C would be applied *before* the Causation Test under Exhibit 4B"?[13]   To the best of Class Counsel's knowledge and recollection, BP did not respond.  Nor are Class Counsel aware of any discussions, written communications or other evidence that the Parties intended or agreed that the Compensation Framework would be applied first.[14]

Class Counsel understand and acknowledge that some issues regarding Exhibit 4B appear to be under consideration by the BEL Panel.

However, under the existing and controlling BEL Opinion – and the District Court's Order of December 24, 2013 estopping BP from changing its previously well-established position regarding the interpretation of Exhibit 4B – there is no basis to alter or re-visit the Exhibit 4B Causation analysis based on adjustments to "corresponding variable *expenses*" under Exhibit 4C.

### The New Matching Frameworks Should Not Require Submission or Examination of Revenues Experienced, Expenses Incurred, or Events Occurring Before the Benchmark Years or After 2010

Initially, Class Counsel note that Claimants should be given the *choice* to submit revised Contemporaneous P&Ls or other additional documentation, either to maximize the value of the Claim under Section 4.3.8 and/or to assist the Program Accountants in processing the Claim more quickly and efficiently.

---

[13] E-Mail from Herman to Brown, et al (Nov. 2, 2013).

[14] *See, e.g.,* GODFREY E-MAIL (Feb. 17, 2012) [Doc 8963-58] No.2 ("The Compensation Framework is not the "causation test," which determines eligibility to claim that there was a loss *caused by* the oil spill. Rather, once the causation test has been satisfied (or presumed, as in Zone A for example), the Compensation Framework is designed to determine the compensation amount for a post-spill loss") (some *emphasis* in original; some emphasis added); HOLSTEIN LETTER TO JUNEAU (re Alternative Causation) (Sept. 28, 2012) [Doc 8963-67] ("If a claimant has submitted the required documentation under the Business Economic Loss (BEL) Documentation Requirements (Ex. 4A), and these documents … establish that the claim satisfies the requirements of the BEL Causation Framework (Ex. 4B), *then* Claimant Compensation should be calculated pursuant to the provisions of the BEL Compensation Framework (Ex. 4C)") (emphasis supplied).

Having said that, the new Compensation Frameworks should not *require* Claimants to submit, nor Program Accountants to consider, monthly P&Ls or other documentation regarding revenues experienced, expenses incurred, or other events occurring either before the Benchmark or after the Compensation years.

Both Benchmark Period and Compensation Period are defined terms under Section 38.10 and Section 38.36 of the Settlement Agreement, which "shall" have the meanings explicitly set forth for BEL Claims in Exhibit 4C. The Documentation provisions for BEL Claims set forth in Exhibit 4A only allow the Claims Administrator to request source documents for the applicable monthly Benchmark and Compensation P&Ls, or to request additional information where there is a discrepancy between those P&Ls and the applicable tax returns; P&Ls for 2011 are only required where Causation is not presumed for the Claimant's type of business in Zones B, C and D.

Moreover, under accrual-based accounting methodologies, the "matching" of expenses to revenues and other adjustments to monthly P&Ls are typically made based on the business' fiscal year. With respect to monthly, or even annual, profit & loss statements, accountants do not generally look to revenues experienced or expenses incurred (nor to "economic activities" occurring) either before or after the relevant calendar year.

Hence, to the extent the Program is required to "sufficiently match" the expenses to revenues for Exhibit 4C purposes, the Program Accountants should be able to do that sufficiently based on the Benchmark and Compensation P&Ls and other documentation that have already been provided.

With respect to the Average Variable Margin Methodology in particular, Claimants should be provided with the opportunity to utilize a May 2010 – April 2011 period, (as suggested by the Claims Administrator), or the Claimant's own Fiscal Year, but should not be *required* to do so. For the Benchmark Period, the Program should be able to perform a sufficient pre-Spill Average Variable Margin calculation from the 2007-2009, 2008-2009, or 2009 financials. With respect to the Compensation Period, the Program should be able to perform a sufficient Average Variable Margin calculation from the 2010 calendar year financials or from the eight-month post-Spill May – December 2010 period.[15]

There is no provision under the Settlement Agreement for any inquiry or examination of 2011 expenses under Exhibits 4A or 4C. (Only, in some cases, revenue, under Exhibit 4B.)

Particularly with respect to Year-End Bonuses, it would not be appropriate to move such Payroll Expenses into the next calendar year. Likewise, it would be inappropriate to move year-end inventory adjustments into the next calendar year.

With respect to the Construction, Agriculture / Education, and Professional Services Frameworks, the Program Accountants should be able to match the expenses to the revenue over the Benchmark and Compensation years, without requiring the Claimant to submit, or the

---

[15] The Claimant should also have the choice of using the Claimant's 2010 Fiscal Year.

Program Accountants to examine, revenues experienced, expenses incurred, contracts entered into, "economic activities", or other events occurring either before the Benchmark or after the Compensation years.

The Fifth Circuit, in the BEL Opinion, rejected Class Counsel's argument (and the initial finding of both the Claims Administrator and the District Court) that BP's proffered interpretation would require the submission and examination of documents outside of the Documentation Requirements upon which the Parties agreed that Compensation would be determined in Exhibit 4A.  With reference to the Exhibit 4A Documentation Requirements, the BEL Panel specifically noted that:

> These documents presumably would allow accountants fairly, if at times imperfectly, to "match" revenues and expenses if such were required.[16]

And further that:

> The difference is between what claimants had to present – either cash-basis or accrual-basis claims – and what the Administrator was thereafter to do.[17]

Finally, Judge Clement notes that:

> …the Benchmark and Compensation periods were referring to months of the same name, *without any complex analysis of what type of business activities took place within those months.*[18]

There is absolutely nothing within Exhibit 4A, the BEL Opinion, or the District Court's Order of December 24, 2013, that would in any way require a matching of revenue to expenses (or other activities or occurrences) prior to the relevant 2007-2009 benchmark years or after 2010.

With respect to the Professional Services Proposal in particular, the new and additional documentation requirements are so onerous that many Claimants will not be able to support their Claim.  Requiring a Claimant to submit information that would allow a "straight line" re-allocation of every dollar collected over a multi-year period is unreasonable, impractical, and a direct departure from the negotiated provisions of Exhibit 4A, as well as the Compensation Framework contained within Exhibit 4C.

---

[16] BEL OPINION, p.20 (732 F.3d at 337).

[17] BEL OPINION, p.20 (732 F.3d at 338).

[18] BEL OPINION, p.24 (732 F.3d at 340) (emphasis supplied).

**<u>Additional Comments, Objections and Suggestions</u>**

Class Counsel respectfully incorporate by reference all additional comments, objections and suggestions contained within the attached "red-line" to the Claims Administrator's February 12, 2014 Proposed Policy No. 495, submitted contemporaneously herewith.

Enclosures
cc: Counsel for BP

## POLICY ANNOUNCEMENT

## POLICY 495:  BUSINESS ECONOMIC LOSS CLAIMS:
### MATCHING OF REVENUE AND EXPENSES

**[Class Counsel Comments, Objections and Suggestions – Feb. 27, 2014] [1]**

## Introduction

The District Court has instructed the Claims Administrator "to adopt and implement an appropriate protocol or policy for handling BEL claims in which the claimant's financial records do not match revenue with corresponding variable expenses."  (Rec. Doc. 12055, p. 37 of 43).

Based upon the U.S. 5th Circuit Court of Appeals' decision of October 2, 2013 and the District Court's Order & Reasons of December 24, 2013 on remand, the Claims Administrator understands that the following principles are to be applied in evaluating BEL claims under Exhibit 4C of the Settlement Agreement:

1.  The Settlement Agreement contemplates that loss calculations are to be based upon accounting records that sufficiently match revenues with expenses.

2.  The Settlement Agreement's "provision for subtracting corresponding variable expenses requires that revenue must be matched with the variable expenses incurred by a claimant in conducting its business, and that does not necessarily coincide with when revenue and variable expenses were recorded." (Rec. Doc. 12055, p.5 of 43).

    [The basis of the BEL Panel's decision, upon which Judge Barbier's December 24th Order is also based, is that the term "corresponding variable expenses" within part 2 of the Variable Profit definition "could be interpreted to mean that the expenses to be subtracted must be those that 'correspond' to the revenue earned and that the 'same time period' refers to the Benchmark period on the one hand, and to the Compensation period on the other, whichever is being calculated. In other words, sum the monthly revenue over the [Benchmark or Compensation] period and then subtract *corresponding* expenses over the same [Benchmark or Compensation] time period." BEL OPINION, p.18 (732 F.3d at 337) (emphasis in original).  This clearly indicates that the line item to be adjusted is expenses – not revenue.[2]]

---

[1] Class Counsel are submitting contemporaneously herewith a Memorandum to the Claims Administrator dated February 27, 2014.  The general objections stated therein, as well as the objections and other comments set forth by Class Counsel in response to the Underlying Issues / Principles contained herein are respectfully incorporated and asserted throughout this Proposed Policy.  The failure to object to any specific proposed term or provision should not be deemed a waiver of any objection to, nor agreement with, the Proposed Framework or sub-part in question.

[2] See also Part I(D) of the BEL OPINION, at p.25 (732 F.3d at 340), *and, generally* CLASS COUNSEL STATEMENT: REVENUE RECOGNITION [Doc 11885-2].

3. Some claimant-submitted contemporaneous accounting records inherently match revenues with expenses sufficiently for purposes of the Settlement Agreement. Others do not. (732 F. 3d at 334, 335)

4. For those "unmatched claims," the claimant-submitted accounting records are to be adjusted "in light of the necessity of revenue and expense matching to realistic measurement of economic loss." (732 F. 3d at 346 – 347).

[Claimants should be provided with the opportunity to submit accrual-based or other sufficiently matched monthly P&Ls, to be evaluated in the manner that BEL Claims have historically been processed under Exhibit 4C.]

## Policy Development Process

In the process of developing this policy as directed by the Court, the Claims Administrator has conducted extensive consultations with the Court Supervised Settlement Program ("CSSP") Accounting Vendors (PricewaterhouseCoopers and Postlethwaite & Netterville) and has received significant input from both BP and Class Counsel. The Claims Administrator's efforts in this regard have included:

- Both BP and Class Counsel made written submissions detailing the frameworks that they propose be implemented to accomplish the "matching" required by the Court. These written submissions were reviewed in detail by the Claims Administrator and the CSSP Accounting Vendors.

- An extended Q&A session was conducted to allow the CSSP Accounting Vendors to gain a more complete understanding of the proposals submitted by both sides. There were numerous participants in this informational session, including BP, Class Counsel, accounting experts representing both parties, CSSP Accounting Vendors, the Claims Administrator and various members of the CAO staff.

- The CSSP Accounting Vendors conducted numerous independent working sessions over a period of approximately three months.

- The Claims Administrator and the CSSP Accounting Vendors conducted several joint working sessions over a period of approximately two months.

- This final written policy has been adopted only after such thorough input, analysis, consideration and consultation.

## Underlying Issues / Principles

Based upon the CSSP's experience in reviewing claims and analyzing accounting records submitted to the CSSP since the inception of this settlement program and in light of the rulings and directives received from the Court, the Claims Administrator, in consultation with the CSSP Accounting Vendors, has arrived at the following conclusions relative to the "matching" issues at hand:

2

444895
2/12/14 [Class Counsel Comments, 2/27/14]

1.  The claimant's method of accounting (cash vs. accrual vs. other) is not necessarily determinative of whether revenues and expenses are sufficiently "matched" as per the orders of the Court.

    [Class Counsel respectfully disagree. The entire basis of the BEL Opinion was that, because accrual-basis claims are generally matched, and because the Parties presumably intended that all Class Members be treated the same, then cash-basis claims should also generally be matched in the way that accrual-basis claims are.[3] This same logic was adopted by Judge Barbier upon remand: "it is clear that the parties did discuss and were in agreement that similarly situated claimants must be treated alike."[4]  While Class Counsel respectfully disagree that the original interpretation and application of Exhibit 4C resulted in anything to the contrary,[5] there is no basis to alter the existing matching in accrual-basis claims, which the BEL Opinion indicates BP "insisted upon" and repeatedly describes as both "sufficient" and "required".[6]]

    ---

    [3] *See generally* CLASS COUNSEL *IN CAMERA* SUBMISSION (Oct. 9, 2013) [Doc 11728-1] pp.1-2; CLASS COUNSEL *IN CAMERA* SUBMISSION (Oct. 18, 2013) [Doc 11728-4] pp.5-6; MEMO TO CLAIMS ADMINISTRATOR (Oct. 23, 2013) [Doc 11728-1] pp.5-6; CLASS COUNSEL BRIEF ON THE BEL REMAND ISSUE [Doc 11862] p.1; CLASS COUNSEL SUBMISSION OF PROPOSAL FOR MATCHING EXPENSES [Doc 11885] pp.1-2; CLASS COUNSEL COMMENTS ON BP "MATCHING" PROPOSALS [Doc 11898] pp.2-4.

    [4] ORDER AND REASONS (Dec. 24, 2013) [Doc 12055] p.3.

    [5] The underlying assumption to BP's argument is that two hypothetical businesses suffering identical losses but keeping their books differently would be treated differently under the Settlement Agreement.  However, the reality is that similar businesses of a similar size and nature typically keep their books under similar accounting methodologies.  Class Counsel are not aware of the hypothetical "two jet ski rental shops just down the beach from each other" that kept their books differently and were therefore treated in materially different ways.  Class Counsel believe that most jet ski rental shops of the same general size and nature will likely keep their books in the same or similar ways.  Indeed, BP's complaints focus on certain groups of businesses – *e.g.* construction, agriculture, professional services – who *all* keep their books under similar cash-basis methodologies.  The Settlement, moreover, treats all Class Members similarly by applying the same common, objective and transparent frameworks to all businesses, based on their Contemporaneous business records.  Finally, BP's argument (and, frankly, the Claims Administrator's initial P&L Policy) ignores the fact that the Settlement Program should maximize the Compensation Amount of each and both of the hypothetical Claimants under Section 4.3.8. *See, e.g.,* OPPOSITION TO BP MOTION FOR RECONSIDERATION (Feb. 18, 2013) [Doc 8963-54] p.28; HERMAN DECLARATION (Nov. 12, 2013) [Doc 11833-1] ¶8.

    [6] *See* BEL OPINION, p.12 (732 F.3d at 334) ("BP acknowledged that many claims presented data that "*sufficiently match*" revenue and expenses. This is because they apply the *accrual* accounting recognition and matching principles BP advances here as a matter of their ordinary record-keeping") (emphasis supplied); BEL OPINION, p.15 (732 F.3d at 335) ("Regardless of whether Exhibit 4C requires matching when it has not been undertaken in the ordinary course of record-keeping, it cannot be said to permit ignoring *sufficiently matched* data from *accrual-basis* claimants") (emphasis added); BEL OPINION, p.16 fn.5 (732 F.3d at 336 n.5) ("As to *accrual-basis* claimants, matching is '*required*' in the sense that claimants are not permitted to present statements which contain inconsistent methodologies. This means that if a claimant's records are already matched, it must submit them in that form") (emphasis supplied); BEL OPINION, p.18 (732 F.3d at 337) ("the agreement cannot be read to permit ignoring '*sufficiently-matched*' revenue and expenses from *accrual-basis* claimants") (emphasis supplied); BEL OPINION, p.20 (732 F.3d at 338) ("At least as to claims presented on an *accrual-basis,* not only did BP not assent to ignoring the need for matching revenues with expenses, it clearly *insisted on it*") (emphasis supplied); BEL OPINION, p.24 (732 F.3d at 339) ("We remand because the district court did not acknowledge the *requirement* of matching that is foundational for *accrual-basis* claims and it did not then explain why it was interpreting the same Exhibit 4C language that leads to matching for accrual-based claims as not requiring the matching of cash-basis

3

2. Different industries tend to present different issues and require different methodologies in terms of trying to achieve sufficient "matching."

   [This may be true in the abstract, or as a matter of accounting generally, but there is nothing in the Settlement Agreement that would indicate that the Parties intended or agreed to apply multiple, fundamentally different compensation frameworks to BEL Claims based on the type of business or industry. Indeed, Section 4.4.7 dictates that the compensation criteria for each of the claims categories "will apply equally to all Claimants."[7]]

3. In an effort to achieve sufficient "matching" in such a way that the accounting records may serve as a basis for "realistic measurement of economic loss," differing analyses are required depending upon the specifics of the particular business, including industry type and nature and duration of revenue or expense cycles.

   [Consistent with this observation, during the meeting with the Program Accountants on February 20, 2014, Mr. Charles Hacker, from PwC, indicated that, in developing Proposed Policy No. 495, the Program Accountants were attempting to achieve a "realistic measure of economic loss." In addition to what is noted *supra,* there is no indication or directive from the BEL Panel that the Claims Administrator was to tear up the Agreement, start from scratch, and develop a completely new methodology that would attempt to "achieve a realistic measure of economic loss." The BEL Panel was simply weighing the two proffered interpretations of "corresponding" under Exhibit 4C, and concluded that, *as between the two,* BP's proffered interpretation was *more* in line with "economic reality". Upon remand, Judge Barbier agreed that the word "corresponding" within the definition of "Variable Profit" should be interpreted to suggest the type of matching of expenses to revenue that one would typically find in accrual-based accounting profit & loss statements. *However,* this does not in any way suggest or imply that the entire 4C Compensation Framework should be tossed out the window in favor of some new and unspecified standard of "realistic measure of economic loss" – particularly in cases where such methodologies would violate accepted accounting principles.]

---

claims") (emphasis supplied); BEL OPINION, p.38 (732 F.3d at 346) (Southwick, J., concurring) ("Part I of the panel opinion identifies the crucial question for remand:  should matching be required for *all* claims when it is clearly *required* for many?") (emphasis added).  *See also, e.g.,* BEL OPINION, p.19 (732 F.3d at 337) ("Because cash accounting does not inherently recognize the relationships between cash flows and their underlying transactions, the term 'corresponding variable expenses' reasonably could imply an accrual-style framework inherent in Exhibit 4C"); BEL OPINION, p.21 (732 F.3d at 338) ("The record creates a different perplexity, namely, why would parties who agree as to the propriety of matching for one set of claims reject it for other claims?").

   [7] *See also, e.g.,* MEMO TO CLAIMS ADMINISTRATOR (Oct. 23, 2013) [Doc 11728-1] pp.6-7; CLASS COUNSEL BRIEF ON THE BEL REMAND ISSUE [Doc 11862] p.9.

4

4.  It is not feasible in the context of a class-wide settlement involving thousands of different claims, with each claimant's financial information potentially spanning a time period in excess of four years, to attempt to match specific expenses to specific revenues on an individual transaction by transaction basis.  The time, effort and expense required under this approach would be prohibitive.  Further, it is unlikely that such individualized matching of specific expenses to specific revenues would be possible based on information and documentation available to the claimants or the CSSP.

    [Class Counsel strongly agree, and further suggest that this is supported by Judge Clement's BEL Opinion.[8]]

5.  If a claimant's contemporaneous P&Ls submitted to the CAO are deemed to be 'sufficiently matched' based on an assessment by the CSSP Accounting Vendors, such P&Ls will be utilized in calculating compensation under the Settlement Agreement.  In utilizing such contemporaneous P&Ls, corrections will be made for any accounting "errors" identified in the ordinary course, by the CSSP Accounting Vendors.[9]  [See comments in fn.9]

6.  It is the CSSP's considered assessment that, for the majority of claimants, sufficient "matching" of revenue and expenses will be best accomplished through an annual variable margin methodology which totals variable expenses for each fiscal year ending April 30 and allocates them to each month on a pro-rata basis

---

[8] *See, e.g.,* BEL OPINION, p.20 (732 F.3d at 337) (the documents identified in Exhibit 4A "presumably would allow accountants fairly, if at times imperfectly, to 'match' revenues and expenses if such were required"); BEL OPINION, p.20 (732 F.3d at 337) ("the difference is between what claimants had to present … and what the Administrator was thereafter to do"); BEL OPINION, p.24 (732 F.3d at 340) ("the Benchmark and Compensation periods were referring to months of the same name, *without any complex analysis of what type of business activities took place within those months*") (emphasis supplied).

[9]  "Errors" will be defined as accounting transactions that have been inappropriately recorded in the claimant's contemporaneous P&Ls and will include, but not be limited to: duplicate accounting entries; debit entries recorded as credits or vice versa; mistakes in applying accounting principles; oversights or misinterpretation of the facts; input or calculation errors; and/or postings to the incorrect revenue and/or expense categories.  In general, accounting estimates now determined to be inaccurate based on subsequent events will not be considered accounting errors, if the entries were made in good faith with the best available information at the time.  [The "errors" that are corrected must be clear, unambiguous and objective.  Class Counsel believe that "mistakes in applying accounting principles" is too broad, and allows for too much subjectivity.  Moreover, the "mistakes in applying accounting principles" are clearly related to issues *other than* the potential failure to "match" expenses to revenues, which is being dealt with separately.  The Claims Administrator has already developed a Policy for excluding certain items from the calculation of "revenue".  While Class Counsel have disagreed with some of the Claims Administrator's decisions in this regard (*see* Memo dated Aug. 28, 2013), these "error" adjustments should be limited to (at most) the items specified in Policy No. 328.  In addition to the clarifying sentence regarding good faith entries at the end of the Errors definition, the Claims Administrator should also make clear that: "Good faith revenue and/or expense allocations which are generally consistent with some accepted accounting methodology and the Claimant's own customary allocations of revenues and/or expenses shall not be considered errors."  Finally, Contemporaneous P&Ls should generally be accepted in light of Exhibit 4A, the liberal definition of "Contemporaneous" in Section 38.38, and the Claimant-friendly requirements of Sections 4.3.7 and 4.3.8;  the BEL Opinion should not be a license or excuse to disregard the terms of the Settlement Agreement, to inject overly subjective determinations, or to conduct a forensic audit of each claim.]

5

444895
2/12/14 [Class Counsel Comments, 2/27/14]

of monthly revenues for the same period. This approach reasonably accomplishes sufficient "matching" and is the most feasible methodology in the context of a class-wide settlement.

[While Class Counsel generally agree with this Annual Variable Margin approach, we do not believe that it should be based on a May-to-April Fiscal Year, (as set forth in Class Counsel's Memorandum to the Claims Administrator dated February 27, 2014. Claimants should have the *choice* to utilize a May-to-April Average Variable Margin period if they so desire, but should not be *required* to do so. Rather, the Program should generally derive an Average Variable Margin from either the twelve-month calendar period, or from the eight-month post-Spill May-to-December 2010 period.]

7.  Depending on the specifics of a given business, it may be appropriate to make adjustments to the claimant's financials as to the timing of the recognition of either revenues or expenses or both.

[Class Counsel do not believe that either the Settlement Agreement or the BEL Opinion supports the averaging or "smoothing" or other moving or re-allocation of revenue.[10] Parts I(B) and I(C) of the BEL Opinion – and Judge Barbier's decision on remand – all turn on the interpretation of "corresponding variable *expenses*".[11] The only part of the BEL Opinion that directly addresses revenue specifically <u>rejects</u> BP's argument that spikes in revenue should be averaged, smoothed, or otherwise adjusted based upon "comparable" economic activities.[12]]

8.  The operating characteristics of certain businesses will not lend themselves to the application of an annual variable margin methodology. The following industries in particular each warrant a customized methodology in order to achieve sufficient matching in a way that reasonably depicts economic reality for purposes of loss measurement: construction, agriculture, education and professional services.

---

[10] *See generally* Class Counsel *In Camera* Submission (Oct. 9, 2013) [Doc 11728-1] p.1; Memo to Claims Administrator (Oct. 23, 2013) [Doc 11728-1] pp.1-4; Class Counsel Brief on the BEL Remand Issue [Doc 11862] pp.1-2; Class Counsel Submission of Proposal for Matching Expenses [Doc 11885] pp.1-2; Class Counsel Statement: Revenue Recognition [Doc 11885-2] pp.1-4; Class Counsel Comments on BP "Matching" Proposals [Doc 11898] pp.2-4.

[11] *See* BEL Opinion, pp.9-10, 16-24 (732 F.3d at 332, 336-339); Order and Reasons (Dec. 24, 2013) [Doc 12055] pp.4-5.

[12] BEL Opinion, p.25 (732 F.3d at 340) ("BP's primary concern seems to be the uneven cash flows of certain types of businesses. We accept this possibility, but we see nothing in the agreement that provides a basis for BP's interpretation. Despite the potential existence of this kind of distortion, the parties may not have considered it, agreed to ignore it, or failed for other reasons to provide clearly for this eventuality. The district court was correct that BP's proposed interpretation is not what the parties agreed"); *see also*, Order and Reasons [Doc 12055] pp.5-6.

444895
2/12/14 [Class Counsel Comments, 2/27/14]

[For the reasons *supra,* and as more fully set forth in Class Counsel's Memorandum to the Claims Administrator dated February 27, 2014, as well as *infra* herein, Class Counsel disagree.]

9. In order to achieve sufficient "matching," adjustments to the claimant's contemporaneous accounting records are best made by the CSSP Accounting Vendors after appropriate inquiry and gathering of additional documents and/or information, if necessary, from the claimant.

[As set forth more fully in Class Counsel's Memorandum to the Claims Administrator dated February 27, 2014, Claimants should generally be given the *choice* to submit revised Contemporaneous P&Ls or other additional documentation, either to maximize the value of their Claims under Section 4.3.8 and/or to assist the Program Accountants in processing the Claim more quickly and efficiently. But Claimants should not be *required* to prepare or provide additional documentation that is not required under Exhibit 4A, including particularly pre-Benchmark year documents, post-Compensation year documents, and/or new monthly P&Ls where monthly P&Ls that were actually prepared in the ordinary course of business (and/or Contemporaneous monthly P&Ls prepared from underlying business records in accordance with the Settlement's terms and the Claims Administrator's existing Policies) have already been submitted to the Settlement Program.[13]   Consistent with Section 4.3.7, the Program Accountants should provide assistance to Claimants, and any additional burden resulting from the new matching Policy should be minimized.]

10. Consideration of whether revenues and expenses are sufficiently matched necessarily involves an element of professional judgment.  The CSSP recognizes and reserves the right of the CSSP Accounting Vendors to exercise such professional judgment to achieve sufficient matching as ordered by the Court.

[Understood.  But this should not give free license to set aside the terms of the Settlement Agreement, to inject unnecessary elements of subjectivity, to conduct a forensic audit of each claim, or to replace the Exhibit 4C Compensation Framework with a Program Accountant's individual sense of some other "realistic measure of economic loss".]

[To the extent that Program Accountants apply professional judgment to deviate from the ordinarily prescribed objective frameworks – in particular, adjustments for "errors" in Contemporaneous P&Ls, the decision to further "match" Claims which do not otherwise exceed one or more of the objective triggers, and/or the

---

[13] *See, e.g.,* BEL OPINION, p.20 (732 F.3d at 337) (the documents identified in Exhibit 4A "presumably would allow accountants fairly, if at times imperfectly, to 'match' revenues and expenses if such were required"); BEL OPINION, p.20 (732 F.3d at 337) ("the difference is between what claimants had to present … and what the Administrator was thereafter to do"); BEL OPINION, p.24 (732 F.3d at 340) ("the Benchmark and Compensation periods were referring to months of the same name, *without any complex analysis of what type of business activities took place within those months*") (emphasis supplied).

444895
2/12/14 [Class Counsel Comments, 2/27/14]

<span style="color:red">decision that a Claim is sufficiently matched despite exceeding one or more of the triggers – the Program should document the specific bases upon which such determination is made.]</span>

## Statement of Policy

The Claims Administrator thus adopts the following "policy for handling BEL claims in which the claimant's financial records do not match revenue with corresponding variable expenses" as ordered by the Court.

## I.    Identification of "unmatched claims."

A.    The criteria to be used in identifying "unmatched claims," other than with respect to Failed Businesses, Failed Start-Up Businesses and Start-Up Businesses, will be the same as those set out in the Declaration of Patrick A. Juneau, Claims Administrator, dated October 25, 2013.

<span style="color:red">[As has been briefed previously, and as set forth further *supra,* Class Counsel do not believe that any additional matching of expenses is necessary for accrual-based claims.]</span>

The process for identifying those claims whose submitted financial records fail to sufficiently match revenues with expenses shall be the following:

If the monthly profit and loss statements submitted by a claimant, adjusted by the CSSP Accounting Vendors for any identified errors, meet any one of the following criteria, then the claim shall be identified for a further matching analysis as described below:

1.    negative total revenue  is recorded for any month included within the Benchmark Year(s), Compensation Year or 2011;

2.    total revenue recorded in any month included in the Benchmark Year(s), Compensation Year or 2011 exceeds 20% of the claimant's annual revenue for the year which includes that month;

<span style="color:red">[We understand that when this criteria is triggered, the Program then examines the Claim to see whether there is an explanation other than some issue re "matching".   Many tourism businesses are seasonal.   The bunching of revenue is part of the naturally recurring business cycle, and has nothing to do with a failure to "match" expenses.  To subject these businesses to a new matching policy would inappropriately disadvantage some of the businesses most clearly and directly affected by the Spill.]</span>

444895
2/12/14 <span style="color:red">[Class Counsel Comments, 2/27/14]</span>

3. the monthly profit and loss statements or other documentation submitted shows that the claimant's business experienced a period of dormancy during the Benchmark Year(s), Compensation Year or 2011;

[As noted above, many tourism / seasonal businesses will experience a period of "dormancy"; this is generally not indicative of a "matching" issue.]

4. total variable expenses when summed up are negative for any month within the Benchmark Year(s) or Compensation Year;

5. total variable expenses for any month within the Benchmark Year(s) or Compensation Year exceed 25% of the claimant's annual variable expense for the year which includes that month;

[See above]

6. variable margin percentages when compared between any two months included within the Benchmark Year(s) and Compensation Year vary by more than 50 percentage points; or,

7. in any given month within the Benchmark Year(s) or Compensation Year, the variance between that month's percentage of annual revenues as compared to that same month's percentage of annual variable expenses exceeds 8 percentage points.

[This threshold – to the extent even necessary – is too low.]

Any claim, whether based on accrual or cash-basis records, that does not fall within one of the foregoing seven criteria shall be presumed to be "sufficiently matched," provided, however, that if in the professional judgment of the CSSP Accounting Vendors, a claimant's financial records contain other significant indicia that the claim may not be "sufficiently matched," the CSSP reserves the right to identify such claim for further matching analysis as set forth below.

[Again, Class Counsel do not believe that these triggers should be applied to accrual-based claims. Moreover, Class Counsel believe that the existing seven triggers should be adequate to catch any and all "un-sufficiently matched" claims. The Program Accountants should not have to apply their professional judgment to further match claims that were not otherwise triggered. Assuming *arguendo* that such accounting judgment is retained, the bases for any additional matching should be documented by the Program Accountants.]

With respect to any claims where matching is determined to be an issue as set forth in this paragraph I.A. above, the CSSP Accounting Vendors will exercise their professional

judgment to determine whether that claim is "sufficiently matched" based upon the evaluation of the information submitted and available to them, including, when applicable, the nature and complexity of the industry or business in question, particularly with regard to claims based upon cash-basis accounting records.

For those claims determined *to* be sufficiently matched, the CSSP Accounting Vendors will utilize claimant-submitted accounting records (adjusted for any identified accounting errors) to calculate compensation as set forth in the Settlement Agreement.

For those claims determined *not* to be sufficiently matched, the CSSP Accounting Vendors will adjust the claimant-submitted accounting records as outlined in paragraph II below in order to achieve sufficient matching as per the orders of the Court.

B.      As to Failed Businesses and Failed Start-Up Businesses and as to Start-Up Businesses, identification of "unmatched claims" will be determined as set out in Attachments F and G to this policy.

II.      **Adjustment of "unmatched claims . . . in light of the necessity of revenue and expense matching to realistic measurement of economic loss."**

For those claims determined under paragraph I above *not* to be sufficiently matched, the below methodologies will be utilized to achieve sufficient matching as per the orders of the Court.

A.      Determination of Applicable Methodology.

Claims will be assigned to an industry type for purposes of these methodologies using NAICS codes as outlined in **Attachment A**. To the extent that in the professional judgment of the CSSP Accounting Vendors assignment to a methodology by such NAICS code is inappropriate based on that claimant's particular business activities, the CSSP reserves the right to revise the applicable methodology to achieve sufficient matching as ordered by the Court.

[As otherwise noted, Class Counsel believe that Exhibit 4C, as interpreted by both the BEL Panel and Judge Barbier, requires application of a single Framework or Policy to all BEL Claims. Nevertheless, and assuming *arguendo*, that different industry-based frameworks might be applied, Class Counsel assume that the Program Accountants will use their judgment to assign the Claim to the appropriate standard framework, (and *not* create some type of Claimant-specific framework or methodology).]

B.      General Annual Variable Margin Methodology for "Unmatched" Claims.

See **Attachment B**.

444895
2/12/14 [Class Counsel Comments, 2/27/14]

C.   <u>Construction Claims.</u>

**See Attachment C.**

D.   <u>Agriculture and Educational Institutions Claims.</u>

**See Attachment D.**

E.   <u>Professional Services Claims.</u>

**See Attachment E.**

F.   <u>Failed Businesses and Failed Start-Up Businesses.</u>

**See Attachment F.**

G.   <u>Start-Up Businesses.</u>

**See Attachment G.**

Under the above methodologies, the guiding principle has been to utilize the claimant's contemporaneous P&Ls where there is no indicia of a mismatch of revenue and expenses. Where matching issues have been identified the approach has been, wherever possible, to amend the P&Ls utilized as inputs to the compensation calculation, but not alter the manner in which the calculation has been performed.

As it relates to amending the inputs to better match income with corresponding expenses, the methodologies require the reallocation of revenue, expenses or both. [Revenue should not be re-allocated to accomplish "matching", but only in the case of a clear, objective and unambiguous error.]  To bifurcate the performance of the business pre-spill and post-spill, the reallocation of revenue and/or expenses will be analyzed over a May to April time period for both the Benchmark and Compensation Periods.

Claimants may be <u>required</u> [should be "asked" – not "required"] to provide additional information under the methodologies outlined in the attachments.  This may include information prior to the Benchmark Period or subsequent to the Compensation Period. [As set forth in Class Counsel's Memo to the Claims Administrator dated February 27, 2014, Class Counsel disagree.] Further, claimants with assumed causation will be required to provide information for 2011 as a consequence of the methodologies requiring an analysis of the May through April time period. [As set forth in Class Counsel's Memo to the Claims Administrator dated February 27, 2014, Class Counsel disagree.  Claimants should be entitled to maximize their compensation (and/or minimize any additional and unnecessary burden) by matching expenses over **(a)** the 2010 Calendar Year, **(b)** the Eight-Month May-December Post-Spill Compensation Period, **(c)** the Claimant's own Fiscal Year, or **(d)** the May 2010 – April 2011 Period, as proposed.]

444895
2/12/14 [Class Counsel Comments, 2/27/14]

## **BEL Claims – Matching of Revenues and Expenses**

## **ATTACHMENT A - NAICS CODES ASSIGNED TO MATCHING FRAMEWORK**

In developing a methodology to address claims that have been deemed not to be 'sufficiently matched,' several methodologies have been developed to address unique factors common to the manner in which certain industries operate and record their financial information:

- Annual Variable Margin Methodology (otherwise referred to as "Short Revenue Cycle") – Attachment B

- Construction – Attachment C

- Agriculture and Educational Institutions – Attachment D

- Professional Services – Attachment E

This document summarizes NAICS codes that will likely fall into each methodology.  However, it is important to note that a claimant with a given NAICS code will not automatically be assigned to a given methodology by virtue of the NAICS code if, in the opinion of the Claims Administrator's office, there are factors that indicate that revenues and expenses would be more sufficiently matched by applying an alternative methodology.  Some businesses within a certain three-digit NAICS Subsector may be treated under a different methodology from others within the same Subsector.

In identifying those NAICS codes that would most likely fall into each methodology, focus has been paid to those 'specialty' methodologies – Construction, Professional Services and Agriculture & Educational Institutions – with all other NAICS codes defaulting to the Annual Variable Margin (Short Revenue Cycle) methodology.

Set out below is a summary of how the NAICS codes are presently assigned.

A1

## BEL Claims – Matching of Revenues and Expenses

## ATTACHMENT A - NAICS CODES ASSIGNED TO MATCHING FRAMEWORK

# Construction

**236xxx - Construction of Buildings**

| | |
|---|---|
| 2361XX | Residential Building Construction |
| 2362XX | Nonresidential Building Construction |

**237xxx - Heavy and Civil Engineering Construction**

| | |
|---|---|
| 2371XX | Utility System Construction |
| 2372XX | Land Subdivision |
| 2373XX | Highway, Street, and Bridge Construction |
| 2379XX | Other Heavy and Civil Engineering Construction |

**238xxx - Specialty Trade Contractors**

| | |
|---|---|
| 2381XX | Foundation, Structure, and Building Exterior Contractors |
| 2382XX | Building Equipment Contractors |
| 2383XX | Building Finishing Contractors |
| 2389XX | Other Specialty Trade Contractors |

**336xxx - Transportation Equipment Manufacturing**

| | |
|---|---|
| 3361XX | Motor Vehicle Manufacturing |
| 3362XX | Motor Vehicle Body and Trailer Manufacturing |
| 3363XX | Motor Vehicle Parts Manufacturing |
| 3364XX | Aerospace Product and Parts Manufacturing |
| 3365XX | Railroad Rolling Stock Manufacturing |
| 3366XX | Ship and Boat Building |
| 3369XX | Other Transportation Equipment Manufacturing |

[These 336xxx NAICS Codes relate to Manufacturing, and would not be expected to have the same type of arguable matching issues that might arguably be found re traditional Construction.]

A2

**BEL Claims – Matching of Revenues and Expenses**

**ATTACHMENT A - NAICS CODES ASSIGNED TO MATCHING FRAMEWORK**

321xxx - Wood Product Manufacturing

| | |
|---|---|
| 3211XX | Sawmills and Wood Preservation |
| 3212XX | Veneer, Plywood, and Engineered Wood Product Manufacturing |
| 3219XX | Other Wood Product Manufacturing |

[These 321xxx NAICS Codes relate to Manufacturing, and would not be expected to have the same type of arguable matching issues that might arguably be found re traditional Construction.]

# Agriculture and Educational Institutions

111xxx – Crop Production

| | |
|---|---|
| 1111XX | Oilseed and Grain Farming |
| 1112XX | Vegetable and Melon Farming |
| 1113XX | Fruit and Tree Nut Farming |
| 1114XX | Greenhouse, Nursery, and Floriculture Production |
| 1119XX | Other Crop Farming |

112xxx - Animal Production

| | |
|---|---|
| 1121XX | Cattle Ranching and Farming |
| 1122XX | Hog and Pig Farming |
| 1123XX | Poultry and Egg Production |
| 1124XX | Sheep and Goat Farming |
| 1129XX | Other Animal Production |

113xxx – Forestry & Logging

| | |
|---|---|
| 1131XX | Timber Tract Operations |
| 1132XX | Forest Nurseries and Gathering of Forest Products |
| 1133XX | Logging |

115xxx – Support Activities for Agriculture and Forestry

| | |
|---|---|
| 1151XX | Support Activities for Crop Production |
| 1152XX | Support Activities for Animal Production |
| 1153XX | Support Activities for Forestry |

[These 115xxx NAICS Codes include retail establishments like seed and feed stores, which do not have the arguable matching issues that might arguably be found in the traditional farming business.]

A3

**BEL Claims – Matching of Revenues and Expenses**

**ATTACHMENT A - NAICS CODES ASSIGNED TO MATCHING FRAMEWORK**

**611xxx – Educational Services**

| 6111XX | Elementary and Secondary Schools |
|--------|----------------------------------|
| 6112XX | Junior Colleges |
| 6113XX | Colleges, Universities, and Professional Schools |
| 6114XX | Business Schools and Computer and Management Training |
| 6115XX | Technical and Trade Schools |
| 6116XX | Other Schools and Instruction |
| 6117XX | Educational Support Services |

## Professional Services

**561xxx - Administrative and Support and Waste Management and Remediation Services**

| 5611XX | Office Administrative Services |
|--------|-------------------------------|
| 5612XX | Facilities Support Services |
| 5613XX | Employment Services |
| 5614XX | Business Support Services |
| 5615XX | Travel Arrangement and Reservation Services |
| 5616XX | Investigation and Security Services |
| 5617XX | Services to Buildings and Dwellings |
| 5619XX | Other Support Services |

[Office Administrative Services, Facilities Support Services, Employment Services, Travel Arrangement and Reservation Services, and "Other Support Services" are overbroad and include businesses that are not "Professional Services" and do not have the arguably matching issues that have been identified.  They include seasonal / tourism businesses (*e.g.* travel agency and reservation booking services), and will inappropriately narrow recovery to the very types of businesses most clearly and directly affected by the Spill.]

**541xxx - Professional, Scientific, and Technical Services**

| 5411XX | Legal Services |
|--------|----------------|
| 5412XX | Accounting, Tax Preparation, Bookkeeping, and Payroll Services |
| 5413XX | Architectural, Engineering, and Related Services |
| 5414XX | Specialized Design Services |
| 5415XX | Computer Systems Design and Related Services |
| 5416XX | Management, Scientific, and Technical Consulting Services |
| 5417XX | Scientific Research and Development Services |
| 5418XX | Advertising, Public Relations, and Related Services |
| 5419XX | Other Professional, Scientific, and Technical Services |

[Agricultural, Engineering and Related Services is going to include engineers that are part of the Construction industry;  Other Professional, Scientific and Technical Services is too broad.]

A4

## BEL Claims – Matching of Revenues and Expenses

## ATTACHMENT A - NAICS CODES ASSIGNED TO MATCHING FRAMEWORK

**922xxx - Justice, Public Order, and Safety Activities**

| 9221XX | Justice, Public Order, and Safety Activities |
|--------|----------------------------------------------|

[What are these?  Security Guards and Ambulance Services?  Why would they have the types of arguable matching issues that have been identified with Professional Services such as attorneys?]

A5

**BEL Claims – Matching of Revenues and Expenses**

**ATTACHMENT B** - **"Annual Variable Margin Methodology"**

The methodology outlined below – "the Annual Variable Margin Methodology" - shall be applied to adjust a claimant's contemporaneous P&Ls that have been deemed not to be "sufficiently matched." This methodology will not apply to claims whose submitted P&L's have been deemed "sufficiently matched," which claims will be processed under the methodology set forth in Exhibit 4C, utilizing the contemporaneous P&Ls.  This methodology will not apply to claimants in the construction, agriculture or educational industries, nor will it apply to professional services firms, for which tailored methodologies have been developed. [As set forth above, Class Counsel disagree.]  [Assuming *arguendo,* in the alternative, if an alternative framework or methodology is provided to some BEL Claimants, it should be made available to all BEL Claimants who might choose to attempt to utilize that framework / methodology to maximize his or her claim, per Section 4.4.7 and Section 4.3.8.]  Furthermore, this methodology does not apply to claimants who meet the definition of a Start-Up Business, Failed Business or Failed Start-up Business.

The approach outlined below does not alter the structure as to how compensation is calculated under the Settlement Agreement but does, if matching issues are identified, amend the P&Ls utilized in such calculations.  The calculations of both Step 1 and 2 compensation will be consistent with that prescribed by Exhibit 4C of the Settlement Agreement.

**Annual Variable Margin Methodology**

1. The claimant's contemporaneous P&Ls will be analyzed by the CSSP Accounting Vendors for potential accounting errors, and indicators of insufficient matching of revenue and variable expenses.  Such analysis will require, if considered necessary, explanations and additional information and documentation from the claimant.  [See comments above. Should be consistent with Exhibit 4A, the definition of Contemporaneous, and the Claimant-friendly provisions of Sections 4.3.7 and 4.3.8, as well as the directive to apply the BEL Framework consistently to all BEL Claimants under Section 4.4.7.  Subjective determinations or an undefined standard of "realistic

B1

## BEL Claims – Matching of Revenues and Expenses

## ATTACHMENT B - "Annual Variable Margin Methodology"

measure economic loss" should not be a substitute for Exhibit 4C.  There should not be a forensic audit of each claim.]

2.   If the CSSP Accounting Vendors identify an error(s)[14] in how the claimant has accounted for revenue or expenses, correcting entries will be made to the P&Ls to assign revenue and expenses to the appropriate month.  Where revenue has been restated a causation analysis will be re-performed (if causation is not presumed) to confirm that the claimant meets the revenue pattern test per Exhibit 4B of the Settlement Agreement.  [We understand this to be limited to revenue adjustments for clear, objective and unambiguous errors.  See *supra*.  For the reasons set forth more fully in Class Counsel's Memorandum to the Claims Administrator dated February 27, 2014, we do not believe that either the Settlement Agreement nor the BEL Opinion would dictate that revenue be moved, "smoothed" or otherwise re-allocated for "matching" purposes, nor, assuming any such revenue re-allocation *arguendo,* does either the Settlement Agreement or the existing BEL Opinion dictate any change, alteration or re-visiting of the Causation Test in Exhibit 4B.]

3.   If adjustments made in accord with 2. above result in revised P&Ls that are deemed to be sufficiently matched, the claim will be processed and compensation calculated under the methodology set forth in Exhibit 4C using such P&Ls.

4.   If adjustments made in accord with 2. above result in revised P&Ls that are not deemed to be sufficiently matched, the claim will be analyzed to calculate the "Corresponding Variable Expenses," calculated as follows:

---

[14] "Errors" will be defined as accounting transactions that have been inappropriately recorded in the claimant's contemporaneous P&Ls and will include, but not be limited to: duplicate accounting entries; debit entries recorded as credits or vice versa; mistakes in applying accounting principles [see comments in fn.9 *supra*]; oversights or misinterpretation of the facts; input or calculation errors; and/or postings to the incorrect revenue and/or expense categories.  In general, accounting estimates now determined to be inaccurate based on subsequent events will not be considered accounting errors, if the entries were made in good faith with the best available information at the time. [see comments and suggestions in fn.9 *supra*]

## BEL Claims – Matching of Revenues and Expenses

## ATTACHMENT B - "Annual Variable Margin Methodology"

[With respect to both the Benchmark and Compensation Period calculations, we think it would be helpful for the Claims Administrator to set forth specifically how Payroll Expenses are to be treated, which months will be available as minimum months, and how such expenses will be allocated.]

a.   Benchmark Period[15]:

- The time period over which revenues and variable expenses will be compared is May to April, thereby bifurcating the result of operations pre-spill from those post-spill.[16]

   [As set forth in Class Counsel's Memorandum to the Claims Administrator dated February 27, 2014, this is inconsistent with the Settlement Agreement  (and the BEL Opinion).  For the Benchmark Period, the Program should be able to perform a sufficient pre-Spill average variable margin calculation from the 2007-2009, 2008-2009, or 2009 financials.  With respect to the Compensation Period, the Program should be able to perform a sufficient average variable margin from the 2010 financials, or from the eight-month post-Spill May-December 2010 period.  Particularly with respect to year-end bonuses and inventory adjustments, it would not be appropriate to move into the next calendar year.  (The Claimant should be provided with the choice to ask the Program to use the proposed May-to-April Fiscal Year, or its own ordinary Fiscal Year, if the Claimant so desires.)]

- Monthly Corresponding Variable Expenses for each year of the Benchmark Period will be calculated based on the percentage relationship between the sum of all variable expenses for the three (3) respective 12-month periods (i. e.,  May 2009 - April 2010; May 2008 - April 2009; May 2007 - April 2008, as provided) [see Feb. 27th Memo and above]  prior

---

[15]   Benchmark Period for the purpose of calculating the annual variable margin expense percentage could be either May 2009 to April 2010; the average of the two periods May 2008 to April 2009 and May 2009 to April 2010; or the average of the three periods May 2007 to April 2008, May 2008 to April 2009 and May 2009 to April 2010

[16]   With respect to claimants for whom causation is presumed under the Settlement Agreement, this methodology will require claimants to produce 2011 financial records. [Exceeds Documentation Requirements under Exhibit 4A (and BEL Opinion); see Memo to Claims Administrator dated Feb. 27, 2014]

**BEL Claims – Matching of Revenues and Expenses**

**ATTACHMENT B** - **"Annual Variable Margin Methodology"**

to the spill and total revenue for the same annual period.  This will yield a separate Variable Expense percentage for each year of the Benchmark Period.

- This variable expense percentage (specific for each individual year of the Benchmark Period) is applied to the specific monthly revenue amounts in the Benchmark Period to calculate the Corresponding Variable Expenses for each month.

b.  Compensation Period:

- Monthly Corresponding Variable Expenses during the Compensation Period will be calculated based on the percentage relationship between the sum of all variable expenses for the 12-month period following the date of spill, (i.e., May 2010 – April 2011) [see *supra* and Feb. 27th Memo], and total revenue for the same period.

- This variable expense percentage is applied to the specific monthly revenue amounts in the Compensation Period to calculate the Corresponding Variable Expenses for each month.

c.  Variable Margin – (Calculated for the Benchmark Period only for Step 2 compensation calculation):

i.   Sum Variable Profit from May through December of the periods selected by the claimant to be used for the Benchmark Period (i.e. Optimal Benchmark Period).

ii.  Sum total revenue from May through December of the periods selected by the claimant to be used for the Benchmark Period. (i.e. Optimal Benchmark Period).

iii. Calculate Variable Margin percent as Variable Profit calculated in (i) divided by total revenue calculated in (ii).

5.   The P&Ls, restated for the Corresponding Variable Expenses calculated in Step 4 above, are utilized as the input for calculating compensation under Exhibit 4C of the Settlement Agreement:

**BEL Claims – Matching of Revenues and Expenses**

**ATTACHMENT B** - **"Annual Variable Margin Methodology"**

o   Step 1 of the compensation calculation is determined as the difference in Variable Profit between the 2010 Compensation Period selected by the claimant and the Variable Profit over the comparable months of the Benchmark Period.  The Compensation Period is selected by the claimant to include three or more consecutive months between May and December 2010.

o   Step 2 of the compensation calculation is based on the claimant's growth in revenue in January through April of 2010 relative to the same months of the claimant-selected Benchmark Period.  The claimant may select a six-consecutive month period between May to December, unless the claimant chose a seven-consecutive-month or eight-consecutive-month period in Step 1, in which case that same period of identical consecutive months shall be used for Step 2:

   ▪   To compute the Claimant Specific Factor, the total revenue from January 2010 to April 2010 will be compared to:

      •   Revenue for the period January 2009 to April 2009, where the Optimum Benchmark Period comprises 2009/10 P&Ls.

      •   Average revenue for the periods January 2009 to April 2009 and January 2008 to April 2008, where the Optimum Benchmark Period comprises 2008/09 and 2009/10 P&Ls.

      •   Average revenue for the periods January 2009 to April 2009, January 2008 to April 2008, and January 2007 to April 2007 where the Optimum Benchmark Period comprises 2007/08, 2008/09 and 2009/10 P&Ls.

**<u>BEL Claims – Matching of Revenues and Expenses</u>**

**<u>ATTACHMENT B</u>** - **"<u>Annual Variable Margin Methodology</u>"**

**Illustrative Example - Annual Variable Margin Methodology**

Assume that the claimant has an Optimal Benchmark Period of select months in 2008/09 (the average of 2008/2009).

The contemporaneous P&Ls provided by the Claimant:

| 2008 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 275 | 300 | 325 | 325 | 900 | 600 | 325 | 300 | 350 | 325 | 300 | 275 | 4,600 |
| Variable expenses | (150) | (125) | (125) | (300) | (125) | (275) | (150) | (150) | (225) | (150) | (175) | (125) | (2,075) |
| Variable expenses as a % of revenue | 55% | 42% | 38% | 92% | 14% | 46% | 46% | 50% | 64% | 46% | 58% | 45% | 45% |

| 2009 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 300 | 325 | 350 | 350 | 500 | 800 | 350 | 275 | 275 | 350 | 325 | 300 | 4,500 |
| Variable expenses | (175) | (125) | (275) | (225) | (275) | (300) | (125) | (225) | (275) | (175) | (100) | (150) | (2,425) |
| Variable expenses as a % of revenue | 58% | 38% | 79% | 64% | 55% | 38% | 36% | 82% | 100% | 50% | 31% | 50% | 54% |

| 2010 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 375 | 350 | 350 | 375 | 300 | 225 | 225 | 250 | 275 | 275 | 275 | 225 | 3,475 |
| Variable expenses | (175) | (125) | (225) | (200) | (125) | (75) | (150) | (150) | (125) | (150) | (100) | (125) | (1,725) |
| Variable expenses as a % of revenue | 47% | 36% | 64% | 53% | 42% | 33% | 67% | 60% | 45% | 55% | 40% | 56% | 50% |

| 2011 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 250 | 275 | 250 | 275 | 300 | 325 | 300 | 300 | 325 | 350 | 350 | 375 | 3,675 |
| Variable expenses | (125) | (150) | (100) | (175) | (175) | (250) | (125) | (175) | (150) | (150) | (175) | (125) | (1,875) |
| Variable expenses as a % of revenue | 50% | 55% | 40% | 64% | 58% | 77% | 42% | 58% | 46% | 43% | 50% | 33% | 51% |

**To calculate the Corresponding Variable Expenses:**

| | |
|---|---|
| Benchmark Revenue May 2008 - April 2009 | 4,700 |
| Benchmark Variable Expenses May 2008 - April 2009 | (2,175) |
| Variable expenses as a % of revenue | 46% |

| | |
|---|---|
| Benchmark Revenue May 2009 - April 2010 | 4,625 |
| Benchmark Variable Expenses May 2009 - April 2010 | (2,350) |
| Variable expenses as a % of revenue | 51% |

| | |
|---|---|
| Total Revenue May 2010-April 2011 | 3,075 |
| Total Variable Expenses May 2010-April 2011 | (1,550) |
| Variable expenses as a % of Revenue | 50% |

B6

## BEL Claims – Matching of Revenues and Expenses

## ATTACHMENT B - "Annual Variable Margin Methodology"

Applying the corresponding variable expenses percentages, the P&Ls would be restated as follows:

| 2008 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 275 | 300 | 325 | 325 | 900 | 600 | 325 | 300 | 350 | 325 | 300 | 275 | 4,600 |
| Variable expenses | | | | | (416) | (278) | (150) | (139) | (162) | (150) | (139) | (127) | (2,129) |
| Variable expenses as a % of revenue | | | | | 46% | 46% | 46% | 46% | 46% | 46% | 46% | 46% | |

| 2009 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 300 | 325 | 350 | 350 | 500 | 800 | 350 | 275 | 275 | 350 | 325 | 300 | 4,500 |
| Variable expenses | (139) | (150) | (162) | (162) | (254) | (406) | (178) | (140) | (140) | (178) | (165) | (152) | (2,226) |
| Variable expenses as a % of revenue | 46% | 46% | 46% | 46% | 51% | 51% | 51% | 51% | 51% | 51% | 51% | 51% | |

| 2010 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 375 | 350 | 350 | 375 | 300 | 225 | 225 | 250 | 275 | 275 | 250 | 225 | 3,475 |
| Variable expenses | (191) | (178) | (178) | (191) | (151) | (113) | (113) | (126) | (139) | (139) | (126) | (113) | (1,757) |
| Variable expenses as a % of revenue | 51% | 51% | 51% | 51% | 50% | 50% | 50% | 50% | 50% | 50% | 50% | 50% | |

| 2011 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 250 | 275 | 250 | 275 | | | | | | | | | |
| Variable expenses | (126) | (139) | (126) | (139) | | | | | | | | | |
| Variable expenses as a % of revenue | 50% | 50% | 50% | 50% | | | | | | | | | |

Step 1 and Step 2 compensation would be computed as:

| | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Benchmark Period (Average 2008/09 and 2009/10)** | | | | | | | | | | | | | |
| Revenue | 700 | 700 | 338 | 288 | 313 | 338 | 313 | 288 | 338 | 338 | 350 | 363 | 4,663 |
| Variable expenses | (335) | (342) | (164) | (139) | (151) | (164) | (152) | (140) | (165) | (164) | (170) | (176) | (2,263) |
| Variable Profit | 365 | 358 | 173 | 148 | 162 | 173 | 161 | 148 | 173 | 173 | 180 | 186 | 2,400 |
| Variable Profit % | 52% | 51% | 51% | 52% | 52% | 51% | 51% | 51% | 51% | 51% | 51% | 51% | 51% |
| | | | | | | | | | | | | | |
| **Compensation Period (2010/11)** | | | | | | | | | | | | | |
| Revenue | 300 | 225 | 225 | 250 | 275 | 275 | 250 | 225 | 250 | 275 | 250 | 275 | 3,075 |
| Variable expenses | (151) | (113) | (113) | (126) | (139) | (139) | (126) | (113) | (126) | (139) | (126) | (139) | (1,550) |
| Variable Profit | 149 | 112 | 112 | 124 | 136 | 136 | 124 | 112 | 124 | 136 | 124 | 136 | 1,525 |
| Variable Profit % | 50% | 50% | 50% | 50% | 50% | 50% | 50% | 50% | 50% | 50% | 50% | 50% | 50% |

**Step 1**
Optimum Benchmark Period identified as May to Dec

| | |
|---|---|
| Total variable profit May to December (Benchmark) | 1,687 |
| Total variable profit May to December (Compensation) | 1,004 |
| Step 1 Compensation (pre-RTP) | 683 |

**Step 2**
Optimum Benchmark Period from May to December, 2008 and 2009

| | |
|---|---|
| Revenue Jan 2010 to April 2010 | 1,450 |
| Revenue Jan to April (average for 2008 & 2009) | 1,275 |
| Revenue increase/(decrease) | 175 |
| Revenue Increase/(decrease) Percentage | 12% |
| Claimant Specific Growth Factor | 10% [Max of 10%, Min of -2%] |
| General Adjustment Factor | 2% |
| | |
| Revenue for the Benchmark Period (2008 & 2009) | 3,275 |
| Incremental Revenue | 393 |
| Variable profit for benchmark period | 52% |
| Step 2 compensation (pre-RTP) | 202 |

B7

## BEL Claims – Matching of Revenues and Expenses

## ATTACHMENT C - Construction Methodology

The methodology outlined below – "the Construction Methodology" – is a deviation from the Annual Variable Margin Methodology described in Attachment B.  This methodology is premised on the assumption that variable expenses of a construction claimant are more accurately recorded on monthly P&Ls than are revenues.  Percentage of completion accounting for revenue by a construction company is based on estimates that may only be updated at the end of reporting periods rather than a monthly basis. [But what if the Claimant accurately performs a percentage-of-completion analysis every month?  The Proposed Framework incorrectly assumes that all jobs have the same profit margin, so that properly matched P&Ls would be rejected.  Items such as production bonuses are going to cause more revenue allocated to the month of the production bonus.]  As such, matching issues may arise when significant adjustments are recorded to reflect more accurate estimates at quarter and/or year ends.  The Construction Methodology calls, therefore, to reallocate revenues in order to best achieve sufficient matching of revenue and expenses. [This reallocation of revenues does not match expenses to revenues;  it "matches" revenue to effort – which will often be contrary to accepted revenue recognition accounting principles.[17]]

The restatement of the P&Ls to more accurately match revenue and expenses involves a multi-step process.  The initial step requires an analysis of the financial results of the claimant based on its fiscal year (i.e., its annual financial reporting date).  Analyzing P&Ls for the 12 months that comprise a claimant's fiscal year typically yields a more accurate and compete record of the results of operations for

---

[17] *See, e.g.,* DECLARATION OF DR. MARK KOHLBECK, CPA (Feb. 18, 2013) [Doc 8963-80], ¶¶ 6, 10, ("Moving revenue properly recognized in one period under accrual-basis of accounting (GAAP) to another period (for example, in an effort to smooth earnings) is a form of earnings management and is considered unacceptable for financial reporting purposes by the accounting profession"); *see also,* PANZECA DECLARATION (Feb. 18, 2013) [Doc 8963-85] ¶¶ 23, 27; DECLARATION OF ALLEN CARROLL (Jan. 16, 2013) [Doc 8963-77], p.2; ASHER DECLARATION (Jan. 15, 2013) [Doc 8963-78], ¶¶ 7-8; STUTES DECLARATION (Jan. 17, 2013) [Doc 8963-79], ¶¶ 6-7; SUPPLEMENTAL CARROLL DECLARATION (Feb. 18, 2013) [Doc 8963-87], ¶10 ("GAAP recognition rules and 'matching' most often apply to expense recognition not revenue recognition"), ¶13 ("BP's proposal to move revenue to match expenses is backwards and violates the very concept referred to as matching in BP's out of date textbook"), ¶14 ("The matching approach that BP advocates is not matching in any sense recognized in the accounting world, but is merely an allocation formula that artificially moves revenue into months before or after it was earned based on variable expenses").

## BEL Claims – Matching of Revenues and Expenses

### ATTACHMENT C - Construction Methodology

the 12 months then ended, as in the CSSP Accounting Vendor's experience there is typically a 'true-up' or 'hard close' performed at the end of the year. [As set forth in the Memo to the Claims Administrator dated February 27, 2014 and *supra*, the Program should allow, but not require the Claimant to submit monthly P&Ls or other documents that pre-date the Benchmark Years or post-date 2010.  Where the Claimant's Fiscal Year deviates from the Calendar Year, this approach deviates from Exhibit 4A and Exhibit 4C.] Annual revenues will be reallocated to each month of the fiscal year, based on that month's percentage of variable expenses to annual variable expenses.  [As set forth in the February 27th Memo and *supra*, Class Counsel do not believe that either the Settlement Agreement nor the BEL Opinion allows revenues to be averaged, re-allocated or "smoothed".]

A further adjustment is necessary to bifurcate the performance of the business pre-spill from that post-spill.  By basing the computation of compensation using P&Ls on a fiscal or calendar year basis, any decline in variable profit margin experienced by the claimant in the Compensation Period will be somewhat mitigated by any higher variable profit margin generated during the four month period January to April.  Accordingly, the P&Ls will be restated on a May to April period in both the Benchmark and Compensation Periods.  This is achieved by reallocating variable profit / revenues to each month, based on each month's percentage of variable expenses to annual variable expenses measured over each May to April time period. [First, this presents the same issues as noted in the February 27th Memo and *supra* re extending the Exhibit 4A Documents and the Exhibit 4C analysis beyond the Benchmark and Compensation Years.  Moreover, this second / further adjustment seems unnecessary, and somewhat arbitrary, in (again) re-allocating revenue and/or in re-allocating expenses.  To the extent revenues are being re-allocated a second time, it seems unnecessary (as well as contrary to the BEL Opinion and Exhibit 4C).  With respect to a re-allocation of expenses, if the assumption, as stated by the Claims Administrator above, is that "variable expenses of a construction claimant are more accurately recorded on monthly P&Ls than are revenues," then there is no reason to move or re-allocate expenses.  Indeed, the entire rationale for the first step of this methodology was to move the (presumably "incorrectly" recorded)

C2

**BEL Claims – Matching of Revenues and Expenses**

**ATTACHMENT C** - **Construction Methodology**

revenue to the (presumably "correctly" recorded) expenses.  Every allocation will necessarily result in some element of error;  a double-reallocation will produce an unreasonable distortion that will not present an accurate depiction of the "economic reality" of the Claimant.]

This Construction Methodology shall be applied to adjust a construction claimant's contemporaneous P&Ls that have been deemed not to be "sufficiently matched."  This methodology will not apply to claims whose submitted  P&Ls were prepared under either a percentage of completion or completed contract basis of accounting that are deemed "sufficiently matched," which claims will be processed under the methodology set forth in Exhibit 4C, utilizing the contemporaneous P&Ls.  This revised methodology does not apply to a construction claimant that meets the definition of a Start-Up Business, Failed Business or Failed Start-up Business.

The approach outlined below does not alter the structure as to how compensation is calculated under the Settlement Agreement but does amend the P&Ls utilized in such calculations.  The calculations of both Step 1 and 2 compensation will be consistent with that prescribed by Exhibit 4C of the Settlement Agreement.

As a consequence of restating monthly revenue based on that month's variable expenses as a percentage of annual variable expenses, the revenue recorded on the restated P&Ls can no longer be attributed to individual customers.  Accordingly, the restated P&Ls  cannot be utilized for the purpose of determining causation for any claimant required to satisfy a Customer Mix Test.  Under the Construction Methodology, for any claimant required to satisfy a Customer Mix Test to demonstrate causation, the CSSP will utilize the contemporaneous P&Ls for the causation assessment, but will utilize the restated P&Ls for computing compensation.  [See comment in fn.18][18]

---

[18]  This would supersede, for construction companies only, Policy 464 as it relates to the requirement to utilize the same P&Ls for determining causation and calculating compensation. [Should make it clear that the Claimant can

C3

**BEL Claims – Matching of Revenues and Expenses**

**ATTACHMENT C - Construction Methodology**

[Is Causation under the non-Customer Mix Tests (*e.g.* the V-Test) being re-calculated under Exhibit 4B after re-allocation of revenue?  If so, Class Counsel object, for the reasons stated in the Memo to the Claims Administrator dated February 27, 2014, and above.]

**Construction Methodology**

1.    The claimant's contemporaneous P&Ls will be analyzed by the CSSP Accounting Vendors for potential accounting errors, [see above] and indicators of insufficient matching of revenue and variable expenses.  Such analysis will require, if considered necessary, explanations and additional information and documentation from the claimant.  [see above]

2.    If the CSSP Accounting Vendor identifies an error(s) [see above][19] in how the claimant has accounted for revenue or variable expenses, correcting entries will be made to the P&Ls to assign revenue and variable expenses to the appropriate month.

3.    If adjustments made in accord with 2. above result in revised P&Ls that are deemed to be sufficiently matched, the claim will be processed and compensation calculated under the methodology set forth in Exhibit 4C using such P&Ls.

4.    If adjustments made in accord with 2. above result in revised P&Ls that are not deemed to be sufficiently matched, the claim will be analyzed under the Construction Methodology as follows:

   a.    Allocation based on Claimant's Fiscal Year-End [see above] [20]:

---

choose to use different months.  This (and/or the language in the body of the framework *supra*), could arguably be construed to mean that the Program will automatically use the same months, but with restated / reallocated P&Ls for those same months.  Based on what we were told in the meeting with the Program Accountants on February 20, 2014, by contrast, and consistent with Section 4.3.8, the Claimant should be allowed to use different months' P&Ls (albeit re-allocated) to maximize his or her Compensation Amount.]

[19] "Errors" will be defined as accounting transactions that have been inappropriately recorded in the claimant's contemporaneous P&Ls and will include, but not be limited to: duplicate accounting entries; debit entries recorded as credits or vice versa; mistakes in applying accounting principles [see above]; oversights or misinterpretation of the facts; input or calculation errors; and/or postings to the incorrect revenue and/or expense categories.  In general, accounting estimates now determined to be inaccurate based on subsequent events will not be considered accounting errors, if the entries were made in good faith with the best available information at the time. [see above]

C4

## BEL Claims – Matching of Revenues and Expenses

### ATTACHMENT C - Construction Methodology

    i.    For each year measured using the claimant's fiscal year (e.g., January 2011 – December 2011; January 2010-December 2010; January 2009 - December 2009; January 2008 - December 2008; January 2007 - December 2007, as provided) each month's variable expenses as a percentage of that period's total variable expenses will be computed.  If the claimant's fiscal year-end is different than the tax year, the tax year will be utilized as the basis for computing the variable expense percentage.

    ii.    Annual revenue for each fiscal year will be reallocated to individual months by multiplying total annual revenue by each month's percentage of total variable expenses (as computed in accord with i. above).

b.    Benchmark Period[21]: Allocation based on May to April Periods

    i.    For each separate period of the Benchmark Period (e.g., May 2009 - April 2010; May 2008 - April 2009; May 2007 - April 2008, as provided) each month's variable expenses as a percentage of that period's total variable expenses will be computed.  The time period over which variable profit and variable expenses will be compared is May to April, thereby bifurcating the results of operations pre-spill from those post-spill.  <span style="color:red">[See Comments above. Additionally, this seems unnecessary for the Benchmark Years; all Benchmark Months and Years are, by definition, pre-Spill.]</span>

    ii.    Annual revenue for each year will be reallocated to individual months by multiplying total annual revenue by each month's percentage of total variable expenses (as computed in accord with  i. above).  <span style="color:red">[see above]</span>

c.    Compensation Period:

---

[20] A claimant's fiscal/tax year may require additional information/documentation that may extend prior to the Benchmark Period and subsequent to the Compensation Period. <span style="color:red">[Class Counsel object. See Feb. 27th Memo and above.]</span>

[21] Benchmark Period for the purpose of calculating the annual variable expense percentage could be either May 2009 to April 2010; the average of the two periods May 2008 to April 2009 and May 2009 to April 2010; or the average of the three periods May 2007 to April 2008, May 2008 to April 2009 and May 2009 to April 2010)

## BEL Claims – Matching of Revenues and Expenses

## ATTACHMENT C - Construction Methodology

    i.    Each month's variable expenses for the period May 2010 to April 2011 as a percentage of total variable expenses for the period will be computed.

    ii.    Total revenue for the period May 2010 to April 2011 will be reallocated to individual months by multiplying total revenue by each month's percentage of total variable expenses (as computed in accord with i. above). [see above]

d.    Variable Margin – (Calculated for the Benchmark Period only for Step 2 compensation calculation):

    i.    Sum Variable Profit from May through December of the periods selected by the claimant to be used for the Benchmark Period (i.e. Optimal Benchmark Period).

    ii.    Sum total revenue from May through December of the periods selected by the claimant to be used for the Benchmark Period. (i.e. Optimal Benchmark Period).

    iii.    Calculate Variable Margin percent as Variable Profit calculated in (i) divided by total revenue calculated in (ii).

5.    The P&Ls, restated for the Corresponding Revenues calculated in accord with Step 4 above, are utilized as the input for calculating compensation under Exhibit 4C of the Settlement Agreement:

    o    Step 1 of the compensation calculation is determined as the difference in Variable Profit between the 2010 Compensation Period selected by the claimant and the Variable Profit over the comparable months of the Benchmark Period.  The Compensation Period is selected by the claimant to include three or more consecutive months between May and December 2010.

    o    Step 2 of the compensation calculation is based on the claimant's growth in revenue in January through April of 2010 relative to the same months in the claimant-selected Benchmark Period.  The claimant may select a six-consecutive month period between May to December, unless the claimant chose a seven-consecutive-month or eight-

C6

**BEL Claims – Matching of Revenues and Expenses**

**ATTACHMENT C - Construction Methodology**

consecutive-month period in Step 1, in which case that same period of identical consecutive months shall be used for Step 2:

- ▪ To compute the Claimant Specific Factor, the total revenue from January 2010 to April 2010 will be compared to:
  - Revenue for the period January 2009 to April 2009, where the Optimum Benchmark Period comprises 2009/10 P&Ls.
  - Average revenue for the periods January 2009 to April 2009 and January 2008 to April 2008, where the Optimum Benchmark Period comprises 2008/09 and 2009/10 P&Ls.
  - Average revenue for the periods January 2009 to April 2009, January 2008 to April 2008, and January 2007 to April 2007 where the Optimum Benchmark Period comprises 2007/08, 2008/09 and 2009/10 P&Ls.

**Illustrative Example – Construction Claims**

Assume that the claimant has an Optimal Benchmark Period of select months in 2008/09 (the average of 2008/2009).

The contemporaneous P&Ls provided by the claimant:

C7

## BEL Claims – Matching of Revenues and Expenses

### ATTACHMENT C - Construction Methodology

| 2008 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 275 | 300 | 375 | 275 | 400 | 350 | 275 | 400 | 350 | 250 | 300 | 275 | 3,825 |
| Variable expenses | (175) | (150) | (150) | (200) | (125) | (225) | (175) | (175) | (250) | (175) | (200) | (150) | (2,150) |
| Variable Profit | 100 | 150 | 225 | 75 | 275 | 125 | 100 | 225 | 100 | 75 | 100 | 125 | 1,675 |
| Variable Profit % | 36% | 50% | 60% | 27% | 69% | 36% | 36% | 56% | 29% | 30% | 33% | 45% | 44% |

| 2009 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 375 | 250 | 350 | 425 | 325 | 450 | 325 | 400 | 325 | 175 | 500 | 300 | 4,200 |
| Variable expenses | (200) | (150) | (300) | (250) | (200) | (125) | (150) | (250) | (300) | (200) | (125) | (175) | (2,425) |
| Variable Profit | 175 | 100 | 50 | 175 | 125 | 325 | 175 | 150 | 25 | (25) | 375 | 125 | 1,775 |
| Variable Profit % | 47% | 40% | 14% | 41% | 38% | 72% | 54% | 38% | 8% | -14% | 75% | 42% | 42% |

| 2010 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 325 | 250 | 400 | 350 | 275 | 175 | 300 | 175 | 325 | 400 | 150 | 225 | 3,350 |
| Variable expenses | (225) | (200) | (275) | (250) | (125) | (100) | (125) | (175) | (300) | (175) | (125) | (150) | (2,225) |
| Variable Profit | 100 | 50 | 125 | 100 | 150 | 75 | 175 | 0 | 25 | 225 | 25 | 75 | 1,125 |
| Variable Profit % | 31% | 20% | 31% | 29% | 55% | 43% | 58% | 0% | 8% | 56% | 17% | 33% | 34% |

| 2011 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 275 | 300 | 125 | 450 | 300 | 375 | 275 | 400 | 325 | 425 | 225 | 375 | 3,850 |
| Variable expenses | (150) | (125) | (175) | (200) | (200) | (275) | (150) | (200) | (175) | (175) | (200) | (150) | (2,175) |
| Variable Profit | 125 | 175 | (50) | 250 | 100 | 100 | 125 | 200 | 150 | 250 | 25 | 225 | 1,675 |
| Variable Profit % | 45% | 58% | -40% | 56% | 33% | 27% | 45% | 50% | 46% | 59% | 11% | 60% | 44% |

C8

## BEL Claims – Matching of Revenues and Expenses

### ATTACHMENT C - Construction Methodology

Allocate revenue based on claimant's fiscal year

| 2008 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 311 | 267 | 267 | 356 | 222 | 400 | 311 | 311 | 445 | 311 | 356 | 267 | 3,825 |
| Variable expenses | (175) | (150) | (150) | (200) | (125) | (225) | (175) | (175) | (250) | (175) | (200) | (150) | (2,150) |
| Variable Profit | 136 | 117 | 117 | 156 | 97 | 175 | 136 | 136 | 195 | 136 | 156 | 117 | 1,675 |
| Variable Profit % | 44% | 44% | 44% | 44% | 44% | 44% | 44% | 44% | 44% | 44% | 44% | 44% | 44% |

| 2009 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 346 | 260 | 520 | 433 | 346 | 216 | 260 | 433 | 520 | 346 | 216 | 303 | 4,200 |
| Variable expenses | (200) | (150) | (300) | (250) | (200) | (125) | (150) | (250) | (300) | (200) | (125) | (175) | (2,425) |
| Variable Profit | 146 | 110 | 220 | 183 | 146 | 91 | 110 | 183 | 220 | 146 | 91 | 128 | 1,775 |
| Variable Profit % | 42% | 42% | 42% | 42% | 42% | 42% | 42% | 42% | 42% | 42% | 42% | 42% | 42% |

| 2010 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 339 | 301 | 414 | 376 | 188 | 151 | 188 | 263 | 452 | 263 | 188 | 226 | 3,350 |
| Variable expenses | (225) | (200) | (275) | (250) | (125) | (100) | (125) | (175) | (300) | (175) | (125) | (150) | (2,225) |
| Variable Profit | 114 | 101 | 139 | 126 | 63 | 51 | 63 | 88 | 152 | 88 | 63 | 76 | 1,125 |
| Variable Profit % | 34% | 34% | 34% | 34% | 34% | 34% | 34% | 34% | 34% | 34% | 34% | 34% | 34% |

| 2011 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 266 | 221 | 310 | 354 | 354 | 487 | 266 | 354 | 310 | 310 | 354 | 266 | 3,850 |
| Variable expenses | (150) | (125) | (175) | (200) | (200) | (275) | (150) | (200) | (175) | (175) | (200) | (150) | (2,175) |
| Variable Profit | 116 | 96 | 135 | 154 | 154 | 212 | 116 | 154 | 135 | 135 | 154 | 116 | 1,675 |
| Variable Profit % | 44% | 44% | 44% | 44% | 44% | 44% | 44% | 44% | 44% | 44% | 44% | 44% | 44% |

## BEL Claims – Matching of Revenues and Expenses

### ATTACHMENT C - Construction Methodology

Allocation based on a May to April Period:

| | |
|---|---|
| Total variable expenses May 2008 to April 2009 | 2,375 |
| Total variable expenses May 2009 to April 2010 | 2,475 |
| Total variable expenses May 2010 to April 2011 | 1,925 |

| Benchmark variable expenses | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Variable expenses as a percentage of total expenses - 2008 | 7% | 6% | 6% | 8% | 5% | 9% | 7% | 7% | 11% | 7% | 8% | 6% |
| Variable expenses as a percentage of total expenses - 2009 | 8% | 6% | 13% | 11% | 8% | 5% | 6% | 10% | 12% | 8% | 5% | 7% |
| Variable expenses as a percentage of total expenses - 2010 | 9% | 8% | 11% | 10% | 6% | 5% | 6% | 9% | 16% | 9% | 6% | 8% |
| Variable expenses as a percentage of total expenses - 2011 | 8% | 6% | 9% | 10% | 10% | 14% | 8% | 10% | 9% | 9% | 10% | 8% |

| | |
|---|---|
| Total revenue May 2008 to April 2009 | 4,183 |
| Total revenue May 2009 to April 2010 | 4,072 |
| Total revenue May 2010 to April 2011 | 3,070 |

| 2008 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 311 | 267 | 267 | 356 | 220 | 396 | 308 | 308 | 440 | 308 | 352 | 264 |
| Variable expenses | (175) | (150) | (150) | (200) | (125) | (225) | (175) | (175) | (250) | (175) | (200) | (150) |
| Variable Profit | 136 | 117 | 117 | 156 | 95 | 171 | 133 | 133 | 190 | 133 | 152 | 114 |
| Variable Profit % | 44% | 44% | 44% | 44% | 43% | 43% | 43% | 43% | 43% | 43% | 43% | 43% |

| 2009 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 352 | 264 | 528 | 440 | 329 | 206 | 247 | 411 | 494 | 329 | 206 | 288 | 4,094 |
| Variable expenses | (200) | (150) | (300) | (250) | (200) | (125) | (150) | (250) | (300) | (200) | (125) | (175) | (2,425) |
| Variable Profit | 152 | 114 | 228 | 190 | 129 | 81 | 97 | 161 | 194 | 129 | 81 | 113 | 1,669 |
| Variable Profit % | 43% | 43% | 43% | 43% | 39% | 39% | 39% | 39% | 39% | 39% | 39% | 39% | 41% |

| 2010 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 370 | 329 | 452 | 411 | 199 | 159 | 199 | 279 | 478 | 279 | 199 | 199 | 3,596 |
| Variable expenses | (225) | (200) | (275) | (250) | (125) | (100) | (125) | (175) | (300) | (175) | (125) | (150) | (2,225) |
| Variable Profit | 145 | 129 | 177 | 161 | 74 | 59 | 74 | 104 | 178 | 104 | 74 | 89 | 1,371 |
| Variable Profit % | 39% | 39% | 39% | 39% | 37% | 37% | 37% | 37% | 37% | 37% | 37% | 37% | 38% |

| 2011 | Jan | Feb | Mar | Apr |
|---|---|---|---|---|
| Revenue | 239 | 199 | 279 | 319 |
| Variable expenses | (150) | (125) | (175) | (200) |
| Variable Profit | 89 | 74 | 104 | 119 |
| Variable Profit % | 37% | 37% | 37% | 37% |

C10

# BEL Claims – Matching of Revenues and Expenses

## ATTACHMENT C - Construction Methodology

### Step 1 and Step 2 compensation is calculated as follows:

|  | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Benchmark Period (Average 2008/09)** | | | | | | | | | | | | | |
| Revenue | 275 | 301 | 277 | 360 | 467 | 319 | 279 | 276 | 361 | 297 | 490 | 426 | 4,127 |
| Variable expenses | (163) | (175) | (163) | (213) | (275) | (188) | (163) | (163) | (213) | (175) | (288) | (250) | (2,425) |
| Variable Profit | 112 | 126 | 115 | 147 | 192 | 131 | 116 | 114 | 149 | 122 | 203 | 176 | 1,702 |
| Variable Profit % | 41% | 42% | 41% | 41% | 41% | 41% | 42% | 41% | 41% | 41% | 41% | 41% | 41% |
| | | | | | | | | | | | | | |
| **Compensation Period (2010)** | | | | | | | | | | | | | |
| Revenue | 199 | 159 | 199 | 279 | 478 | 279 | 199 | 239 | 239 | 199 | 279 | 319 | 3,070 |
| Variable expenses | (125) | (100) | (125) | (175) | (300) | (175) | (125) | (150) | (150) | (125) | (175) | (200) | (1,925) |
| Variable Profit | 74 | 59 | 74 | 104 | 178 | 104 | 74 | 89 | 89 | 74 | 104 | 119 | 1,145 |
| Variable Profit % | 37% | 37% | 37% | 37% | 37% | 37% | 37% | 37% | 37% | 37% | 37% | 37% | 37% |

**Step 1**

Optimum Benchmark Period identified as May to Dec

| | |
|---|---|
| Total variable profit May to December (Benchmark) | 1,053 |
| Total variable profit May to December (Compensation) | 759 |
| Step 1 Compensation (pre-RTP) | 295 |

**Step 2**

Optimum Benchmark Period from May to December, 2008 and 2009

| | |
|---|---|
| Revenue Jan 2010 to April 2010 | 1,563 |
| Revenue Jan to April (average for 2008 & 2009) | 1,393 |
| Revenue increase/(decrease) | 170 |
| Revenue Increase/(decrease) Percentage | 11% |
| Claimant Specific Growth Factor | 10%  [Max of 10%, Min of -2%] |
| General Adjustment Factor | 2% |
| | |
| Revenue for the Benchmark Period (2008 & 2009) | 2,553 |
| Incremental Revenue | 306 |
| Variable profit for benchmark period | 41% |
| Step 2 compensation (pre-RTP) | 126 |

C11

**BEL Claims – Matching of Revenues and Expenses**

**ATTACHMENT D – Agriculture and Educational Institutions Methodology**

The methodology outlined below – "the Agriculture and Educational Institutions Methodology" – deviates from the methodologies described previously in Attachments B and C. Given the specific characteristics of the agriculture and educational industries, the Claims Administrator, in consultation with the CSSP Accounting Vendors, believes it necessary to use a twelve month comparison of operations in order to achieve "revenue and expense matching to <u>realistic measurement of economic loss</u>" as directed by the Court. [As noted *supra*, the BEL Opinion resolved a discreet dispute about how the word "corresponding" which modifies "variable expenses" within the Variable Profit definition was to be interpreted;  it is not a license to substitute the Exhibit 4C Compensation Framework with some unspecified new test for either BP's or the Program Accountant's view of "realistic measurement of economic loss".]

In considering options to resolve agriculture and educational institution claims that are not sufficiently matched, <u>a deviation from the existing methodology set forth in Exhibit 4C was deemed necessary</u>, [Class Counsel agree that this Proposed Framework completely re-writes the Settlement Agreement[22]] due to the nature of an agriculture business/academic institution's business and how this translates into calculating compensation that reflects economic reality.  The majority of agriculture and educational institutions claims presented to the program to date have maintained books and records on a cash basis.  The timing of revenue can vary considerably from one year to the next influenced in large part by weather patterns impacting the timing of planting and harvesting, and commodity prices that influence the decision to either sell on harvesting or holding produce in storage for sale at a future date.  Recording revenue when cash is received for the produce can, therefore, result in considerable timing differences a) in the months that sales are recorded from one year to the next, [this is

---

[22] During the meeting with the Program Accountants on February 20, 2014, Mr. John Petzold, from PwC, further acknowledged that the proposed Agriculture / Educational Framework is not based on the Settlement Agreement, but is a new methodology, which, when using only one benchmark year, effectively eliminates the "Step Two" Calculation to which the BEL Claimant is entitled under Exhibit 4C.

D1

**BEL Claims – Matching of Revenues and Expenses**

**ATTACHMENT D – Agriculture and Educational Institutions Methodology**

essentially the "comparable months" argument which was expressly rejected by the BEL Panel[23]] and b) because of a mismatch of revenue as compared to the expenses incurred in planting, growing and harvesting such crops.  Similarly, expenses may also fluctuate based on the timing of planting and harvesting, as well as decisions to purchase materials in bulk to be used over a prolonged period of time. To effectively negate these impacts, comparing operating results over a longer period of time, in this case a year, was deemed to yield results that would most closely align to economic reality.

In the context of achieving sufficient matching to realistic measurement of economic loss for agriculture and educational claims, this methodology deviates from the calculation described in Exhibit 4C of the Settlement Agreement in the following respects:

- The Step 1 calculation is amended [Class Counsel respectfully suggest that the Claims Administrator is without authority to "amend" the Settlement Agreement; the policy should be limited simply to the sufficient matching of expenses] as follows:

    o The comparison of three or more comparable months of the Benchmark and Compensation Periods in calculating Step 1 compensation is eliminated, replaced by comparing the average annual Variable Profit of the Benchmark Period to the annual Variable Profit of the Compensation Period.  Average annual Variable Profit of the Benchmark Period comprises the revenue less variable expenses from May to April of 2009/10 only; average of 2009/10 and 2008/09; or average of 2009/10, 2008/09 and 2007/08.  Annual Variable Profit for the Compensation Period is the variable profit reported for the year May 2010 to April 2011.

---

[23] BEL OPINION, p.25 (732 F.3d at 340) ("BP's primary concern seems to be the uneven cash flows of certain types of businesses. We accept this possibility, but we see nothing in the agreement that provides a basis for BP's interpretation. Despite the potential existence of this kind of distortion, the parties may not have considered it, agreed to ignore it, or failed for other reasons to provide clearly for this eventuality. The district court was correct that BP's proposed interpretation is not what the parties agreed"); *see also*, ORDER AND REASONS [Doc 12055] pp.5-6.

D2

**BEL Claims – Matching of Revenues and Expenses**

**ATTACHMENT D – Agriculture and Educational Institutions Methodology**

- The Step 2 calculation is <u>amended</u> [see above] as follows:

  - The Claimant Specific Factor will be computed based on those years included in the contemporaneous P&Ls presented by the claimant. It will be based on the average historical growth year over year, for those years presented in the Benchmark Period. Where only one year of contemporaneous P&Ls are provided, no growth can be computed and the claimant will be provided a Claimant Specific Factor of 0%. [As noted by Mr. Petzold during the meeting with the Program Accountants on February 20, 2014, this effectively eliminates the Step 2 Compensation.] If the calculated Claimant Specific Factor falls below -2% or exceeds +10%, then it will be set at -2% or +10%, as applicable.

  - The Claimant Specific Factor, adjusted for the General Adjustment Factor of 2%, will be applied to the average <u>annual</u> revenue (May through April) of those years presented in the Benchmark Period (i.e., over the same years used to compute the Claimant Specific Factor), rather than a six to eight month consecutive period between May and December of the Benchmark Period.[24] [This is not only inconsistent with the Settlement Agreement, but is also unnecessary to accomplish what is required under the BEL Opinion: The Program can easily match (*i.e.* re-allocate) the Benchmark Variable Expenses to the monthly Benchmark Revenues, and can match (*i.e.* re-allocate) the post-Spill Variable Expenses based on the monthly post-Spill May–December 2010 Revenue.]

---

[24]     Under the Settlement Agreement, for a claimant that chooses a seven-consecutive-month or eight-consecutive-month period in Step 1, the same period of identical consecutive months must be used for Step 2.

## **BEL Claims – Matching of Revenues and Expenses**

### **ATTACHMENT D – Agriculture and Educational Institutions Methodology**

The Agriculture and Educational Institutions Methodology shall be applied to adjust a claimant's contemporaneous P&Ls that have been deemed not to be "sufficiently matched."  This methodology will not apply to claims whose submitted P&Ls have been deemed "sufficiently matched," which claims will be processed under the methodology set forth in Exhibit 4C, utilizing the contemporaneous P&Ls.  This methodology does not apply to an agriculture claimant or educational institution claimant that meets the definition of a Start-Up Business, Failed Business or Failed Start-up Business.


**Agriculture Methodology**

1.     The claimant's contemporaneous P&Ls will be analyzed by the CSSP Accounting Vendors for potential accounting errors, [see above] and indicators of insufficient matching of revenue and variable expenses.  Such analysis will require, if considered necessary, explanations and additional information and documentation from the claimant. [see above]

2.     If the CSSP Accounting Vendor identifies an error(s)[25] in how the claimant has accounted for revenue or variable expenses, correcting entries will be made to the P&Ls to assign revenue and variable expenses to the appropriate month.  Where revenue has been restated a causation analysis will be re-performed (if causation is not presumed) to confirm that the claimant meets the revenue pattern test per Exhibit 4B of the Settlement Agreement. [For the reasons stated in the Memo to the Claims Administrator dated February 27, 2014, and above, any re-allocation of revenue for Exhibit 4C Compensation purposes should not result in any alteration or re-vising of the Causation analysis under Exhibit 4B.]

---

[25] "Errors" will be defined as accounting transactions that have been inappropriately recorded in the claimant's contemporaneous P&Ls and will include, but not be limited to: duplicate accounting entries; debit entries recorded as credits or vice versa; mistakes in applying accounting principles [see above]; oversights or misinterpretation of the facts; input or calculation errors; and/or postings to the incorrect revenue and/or expense categories.  In general, accounting estimates now determined to be inaccurate based on subsequent events will not be considered accounting errors, if the entries were made in good faith with the best available information at the time. [see above]

**BEL Claims – Matching of Revenues and Expenses**

**ATTACHMENT D – Agriculture and Educational Institutions Methodology**

3.     If adjustments made in accord with 2. above result in revised P&Ls that are deemed to be sufficiently matched, the claim will be processed and compensation calculated under the methodology set forth in Exhibit 4C using such P&Ls.

4.     If adjustments made in accord with 2. above result in revised P&Ls that are not deemed to be sufficiently matched, the claim will be analyzed under the Agriculture or Educational Institutions Methodology (based on the claimant's industry) as follows:

Step 1 Calculation:

a.     Variable Profit per Benchmark Period

   i.     Benchmark Period Variable Profit will be computed based on the contemporaneous P&Ls as provided by the claimant (as adjusted in accord with 2 above), for the periods May 2007 to April 2008 ("2007/08"), May 2008 to April 2009 ("2008/09") and May 2009 to April 2010 ("2009/10"), by deducting variable expenses (as defined in the Settlement Agreement) from revenue.  [Why not just average from the annual Benchmark calendar year expenses?  Again, all Benchmark Years and Months are, by definition, pre-Spill.  Alternatively, the Program Accountants could work from the Claimant's Fiscal Year.]

   ii.     The average Variable Profit for the Optimum Benchmark Years will be computed.

b.     Variable Profit per Compensation Period

   i.     Compensation Period Variable Profit will be computed based on the contemporaneous P&Ls provided by the claimant (as adjusted in accord with  2 above), for the period May 2010 to April 2011 by deducting variable expenses (as defined in the Settlement Agreement) from revenue. [For reasons stated in the February 27th Memo and *supra,* a Claimant should not be required to submit, nor should the Program Accountants generally examine, January–April 2011 for Exhibit 4C Compensation purposes.]

c.     Step 1 compensation

D5

## BEL Claims – Matching of Revenues and Expenses

### ATTACHMENT D – Agriculture and Educational Institutions Methodology

i. Average annual Variable Profit for the Optimum Benchmark Years will be compared to the annual Variable Profit for the Compensation.  The difference represents Step 1 Compensation, prior to applying the applicable Risk Transfer Premium ("RTP").

Step 2 Calculation:

a. Claimant provides contemporaneous P&Ls for the years 2007 to 2011

i. The growth or decline in revenue as stated on the claimant's contemporaneous P&Ls (as amended for accounting errors noted at 2. above) between the year May 2007 to April 2008, and May 2008 and April 2009, will be calculated.

ii. The growth or decline in revenue as stated on the claimant's contemporaneous P&Ls (as amended for accounting errors noted at 2. above) between the year May 2008 to April 2009, and May 2009 and April 2010, will be calculated.

iii. A simple average of the percentage gains computed for both periods (growth or decline) will be computed by dividing the sum of the two numbers by two.  The resultant percentage represents the Claimant Specific Factor.  If the calculated number falls below -2% or exceeds +10%, then the Claimant Specific Factor will be set at -2% or +10% as applicable. [see above]

iv. Incremental Revenue will be calculated by multiplying the average annual revenue for the years May 2007-April 2008, May 2008-April 2009 and May 2009-April 2010 (i.e., the same period that the Claimant Specific Factor was computed) by the sum of the Claimant Specific Factor (computed at iii. above) and the General Adjustment Factor of +2%.

v. Variable Margin will be computed by dividing the total Variable Profit for the three year period May 2007 to April 2010 by total revenue for the same period.

vi. Incremental revenue (computed at iv. above) multiplied by the calculated Variable Margin (computed at v. above) represents the Step 2 compensation pre-RTP adjustment.

b. Claimant provides contemporaneous P&Ls for the years 2008 to 2011 [exceeds requirements of Exhibit 4A]

### BEL Claims – Matching of Revenues and Expenses

### ATTACHMENT D – Agriculture and Educational Institutions Methodology

i.  The increase or decline in revenue as stated on the claimant's contemporaneous P&Ls (as amended for accounting errors noted at 2. above) between the year May 2008 to April 2009, and May 2009 and April 2010, will be calculated.  The resultant percentage represents the Claimant Specific Factor.  If the calculated number falls below -2% or exceeds +10%, then the Claimant Specific Factor will be set at -2% or +10% as applicable.

ii.  Incremental Revenue will be calculated by multiplying the average annual revenue for the years May 2008-April 2009 and May 2009-April 2010 (i.e., the same period that the Claimant Specific Factor was computed) by the sum of the Claimant Specific Factor (computed at i. above) and the General Adjustment Factor of +2%.

iii.  Variable Margin will be computed by dividing the total Variable Profit for the two year period May 2008 to April 2010 by total revenue for the same period.

iv.  Incremental revenue (computed at ii. above) multiplied by the calculated Variable Margin (computed at iii. above) represents the Step 2 compensation pre-RTP adjustment.

c.  Claimant provides contemporaneous P&Ls for the years  2009 to 2011

i.  Claimants will be given a Claimant Specific Factor of 0%.

ii.  Incremental Revenue will be computed by multiplying the annual revenue for the year May 2009-April 2010 by the sum of the Claimant Specific Factor (0%) and the General Adjustment Factor of +2%.

iii.  Variable Margin will be computed by dividing Variable Profit for the year May 2009 to April 2010 by total revenue for the same period.

iv.  Incremental revenue (computed at ii. above) multiplied by the calculated Variable Margin (computed at iii. above) represents the Step 2 compensation pre-RTP adjustment.

**Educational Institutions Methodology**

Claimants deemed "Educational Institutions" will follow the same methodology as that set out above for Agriculture claimants, but results will not be evaluated using annual results from May to April

## BEL Claims – Matching of Revenues and Expenses

## ATTACHMENT D – Agriculture and Educational Institutions Methodology

of any given year.  Instead, the CSSP Accounting Vendors will assess the business to identify the unique "academic year" (e.g., "August to July").  The academic year will be utilized to evaluate annual results.

[Exceeds the matching of corresponding expenses under the BEL Opinion;  re-writes the Agreement]

[The Claimant should be provided with the opportunity to establish that its Contemporaneous records, as submitted, support the revenue being for the tuition in the Loss Period of April to December 2010, and are the same for the Benchmark Period, thus avoiding the new methodology.]

**Illustrative Example – Agriculture Claims**

Assume that the claimant has an Optimal Benchmark Period the average of 2007/08, 2008/2009 and 2009/10.  Applying the Methodology described above to the contemporaneous P&Ls, the calculation of compensation is set forth below:

| 2007 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 25 | 60 | 5 | 5 | 0 | 5 | 5 | 35 | 125 | 325 | 50 | 200 | 840 |
| Variable expenses | 60 | 3 | 11 | 11 | 20 | 30 | 5 | 15 | 225 | 150 | 20 | 50 | 600 |
| Variable profit | (35) | 57 | (6) | (6) | (20) | (25) | 0 | 20 | (100) | 175 | 30 | 150 | 240 |
| Variable profit as a % of revenue | -140% | 95% | -120% | -120% | 0% | -500% | 0% | 57% | -80% | 54% | 60% | 75% | 29% |

| 2008 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 60 | 15 | 0 | 0 | 0 | 5 | 15 | 35 | 25 | 70 | 100 | 515 | 840 |
| Variable expenses | 60 | 3 | 11 | 11 | 20 | 30 | 5 | 15 | 35 | 20 | 20 | 450 | 680 |
| Variable profit | 0 | 12 | (11) | (11) | (20) | (25) | 10 | 20 | (10) | 50 | 80 | 65 | 160 |
| Variable profit as a % of revenue | 0% | 80% | 0% | 0% | 0% | -500% | 67% | 57% | -40% | 71% | 80% | 13% | 19% |

| 2009 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 0 | 15 | 5 | 5 | 0 | 395 | 85 | 25 | 5 | 100 | 30 | 220 | 885 |
| Variable expenses | 0 | 5 | 10 | 15 | 10 | 25 | 85 | 215 | 15 | 10 | 20 | 110 | 520 |
| Variable profit | 0 | 10 | (5) | (10) | (10) | 370 | 0 | (190) | (10) | 90 | 10 | 110 | 365 |
| Variable profit as a % of revenue | 0% | 67% | -100% | -200% | 0% | 94% | 0% | -760% | -200% | 90% | 33% | 50% | 41% |

| 2010 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 5 | 0 | 20 | 0 | 0 | 10 | 0 | 0 | 95 | 270 | 45 | 5 | 450 |
| Variable expenses | 75 | 0 | 110 | 15 | 60 | 35 | 25 | 25 | 15 | 20 | 60 | 5 | 445 |
| Variable profit | (70) | 0 | (90) | (15) | (60) | (25) | (25) | (25) | 80 | 250 | (15) | 0 | 5 |
| Variable profit as a % of revenue | -1400% | 0% | -450% | 0% | 0% | -250% | 0% | 0% | 84% | 93% | -33% | 0% | 1% |

| 2011 | Jan | Feb | Mar | Apr |
|---|---|---|---|---|
| Revenue | 125 | 230 | 40 | 5 |
| Variable expenses | 0 | 425 | 5 | 20 |
| Variable profit | 125 | (195) | 35 | (15) |
| Variable profit as a % of revenue | 100% | -85% | 88% | -300% |

Benchmark Period Revenue - May 2007 to April 2010
Compensation Period Revenue - May 2010 to April 2011

D8

**BEL Claims – Matching of Revenues and Expenses**

**ATTACHMENT D – Agriculture and Educational Institutions Methodology**

The Step 1 and Step 2 compensation would be computed as follows:

**Compensation Calculation  - Step 1**

| | | |
|---|---|---|
| Average Annual Revenue in Benchmark Period | 832 | |
| Average Annual Variable Expenses in Benchmark Period | 638 | |
| Average Variable Profit in Benchmark Period | 193 | [A] |
| Average Variable Profit Percentage in Benchmark Period | 23% | |
| | | |
| Revenue in Compensation Period | 825 | |
| Variable Expenses in Compensation Period | 695 | |
| Variable Profit in Compensation Period | 130 | [B] |
| Variable Profit Percentage in Compensation Period | 16% | |
| | | |
| Difference in variable profit from Benchmark to Compensation Period | 63 | [A-B] |
| Total Step 1 compensation Pre-RTP | **63** | |

**Compensation Calculation - Step 2**
*Claimant Provided 3 years in the Benchmark Period*

| | | |
|---|---|---|
| Revenue May 2007 to April 2008 | 820 | [C] |
| Revenue May 2008 to April 2009 | 790 | [D] |
| Growth / (decline) in revenue | (30) | [E=D-C] |
| Percentage growth / (decline) in revenue | -4% | [F=E/C] |
| Revenue May 2008 to April 2009 | 790 | [G] |
| Revenue May 2009 to April 2010 | 885 | [H] |
| Growth / (decline) in revenue | 95 | [J=H-G] |
| Percentage growth / (decline) in revenue | 12% | [K=J/G] |
| Claimant Specific Factor | 4% | [L=(K+F)/2] |
| General Adjustment Factor | 2% | [M] |
| Adjusted Growth Factor | 6% | [N=L+M] |
| Average Annual Revenue for Benchmark Period (May 2007- April 2010) | 832 | [O] |
| Incremental Revenue | 51 | [P=N*O] |
| Average Variable Profit Margin during Benchmark Period | 23% | |
| **Adjusted Step 2 Compensation (pre-RTP)** | **12** | |

D9