# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL NO. 2179 |
| | * | SECTION J |
| | * | |
| This document relates to: | * | Judge Barbier |
| | * | |
| Case Nos. 10-2771, 10-4182, 10-4183, 13-02645, 13-cv-02646, 13-cv-02647, 13-cv-02813 | * * * | Magistrate Judge Shushan |

---

## BP'S REPLY IN SUPPORT OF MOTION TO STRIKE
## THE STATE OF ALABAMA'S JURY DEMAND

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Paul D. Collier
R. Chris Heck
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
F. Chad Morriss
Maureen F. Browne
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Joel M. Gross
Lawrence A. Schneider
Arnold & Porter LLP
555 12th Street, N.W.
Washington, DC 20004
Telephone: (202) 942-5705
Facsimile: (202) 942-5999

*Attorneys for BP p.l.c., BP Exploration & Production Inc.,
and BP America Production Company*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  THERE IS NO JURY RIGHT FOR OPA CLAIMS. ........................................................ 2

    A.  OPA Is A Maritime Statute. ............................................................................ 2

    B.  As A Maritime Statute, OPA Lacks A Jury Trial Right. ........................................ 5

    C.  Historical Analysis Should Not Be Used, And In Any Case Supports BP. ............ 7

II. THE COURT MAY TRY ALABAMA'S CLAIMS AS PART OF THE
    LIMITATION ACTION, EVEN IF IT DENIES LIMITATION. .................................... 11

III. ALABAMA'S INDIVIDUAL CLAIMS LACK ANY JURY TRIAL RIGHT FOR
     ADDITIONAL REASONS. ......................................................................................... 14

    A.  Alabama's Claims For Tax Revenues And Public Expenditures Are
        Sovereign In Nature And Do Not Provide A Jury Trial Right. ........................... 14

    B.  Alabama's NRD Claims Are Equitable And Thus Lack A Jury Trial Right. ........ 16

    C.  Alabama's Removal Cost Claim Is Equitable And Lacks A Jury Trial
        Right. ........................................................................................................... 18

    D.  The Court Should Decide All Claims For Which Alabama Does Not Have
        A Jury Trial Right. ........................................................................................ 19

CONCLUSION ........................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**Cases**

*Access Telecom, Inc. v. MCI Telecomms. Corp.*,
197 F.3d 694 (5th Cir. 1999) ................................................................................... 10

*Allison v. Citgo Petroleum Corp.*,
151 F.3d 402 (5th Cir. 1998) ................................................................................... 19

*Apache Corp. v. Global Santa Fe Drilling Co.*,
435 Fed. App'x 322 (5th Cir. 2011) .......................................................................... 7

*Atlas Roofing Co. v. Occupational Safety Comm'n*,
430 U.S. 442 (1977) ........................................................................................... 15, 16

*Biagas v. Hornbeck Offshore Services, LLC*,
2006 WL 2228952 (E.D. La. Aug. 3, 2006) .............................................................. 7

*British Transp. Comm'n v. United States*,
354 U.S. 129 (1957) ................................................................................................. 13

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
526 U.S. 687 (1999) ........................................................................................... 14, 16

*Crowell v. Benson*,
285 U.S. 22 (1932) ..................................................................................................... 7

*Duet v. Falgout Offshore, LLC*,
2010 WL 1817766 (E.D. La. May 5, 2010) .............................................................. 7

*Exec. Jet Aviation, Inc. v. City of Cleveland*,
409 U.S. 249 (1972) ................................................................................................... 9

*Exxon Co., U.S.A. v. Sofec, Inc.*,
517 U.S. 830 (1996) .............................................................................................. 3, 5

*Fitzgerald v. U.S. Lines Co.*,
374 U.S. 16 (1963) ................................................................................................... 19

*Great-West Life & Annuity Ins. v. Knudson*,
534 U.S. 204 (2002) ................................................................................................. 19

*In re Acushnet River & New Bedford Harbor*,
712 F. Supp. 994 (D. Mass. 1989) .......................................................................... 18

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*In re Clearsky Shipping Corp.*,
   1998 WL 308011 (E.D. La. 1998) ........................................................... 11

*In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*,
   836 F.2d 750 (2d Cir. 1988) .................................................................. 6

*In re Deepwater Horizon*,
   2014 WL 700065 (5th Cir. Feb. 24, 2014) ............................................ 10

*In re Oil Spill by Amoco Cadiz*,
   699 F.2d 909 (7th Cir. 1983) ............................................................ 3, 5

*In re Waterman S.S. Corp.*,
   1992 WL 41714 (E.D. La. Feb. 27, 1992) ............................................ 11

*Karim v. Finch Shipping Co.*,
   265 F.3d 258 (5th Cir. 2001) .......................................................... 11, 13

*Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil*,
   704 F.2d 1038 (8th Cir. 1983) .......................................................... 19

*Lake Tankers Corporation v. Henn*,
   354 U.S. 147 (1953) ............................................................................ 12

*Lewis v. Lewis & Clark Marine, Inc.*,
   531 U.S. 438 (2001) .............................................................................. 4

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
   583 F.3d 656 (9th Cir. 2009) ................................................................ 6

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) ............................................................................ 14

*NLRB v. Jones & Laughlin Steel Corp.*,
   301 U.S. 1 (1937) ........................................................................... 15, 17

*Offshore Logistics, Inc. v. Tallentire*,
   477 U.S. 207 (1986) .............................................................................. 4

*Pershing Auto Rentals, Inc. v. Gaffney*,
   279 F.2d 546 (5th Cir. 1960) .......................................................... 11, 12

*Porter v. Warner Holding Co.*,
   328 U.S. 395 (1946) ............................................................................ 17

*Raffray v. Gulf Logistics, LLC*,
   2010 WL 5055849 (E.D. La. Dec. 2, 2010) .......................................... 7

## TABLE OF AUTHORITIES (CONT'D)

<u>Page(s)</u>

*Rex v. Cia. Pervana de Vapores, S.A.*,
  660 F.2d 61 (3d Cir. 1981) ............................................................................ 16

*Rodrigue v. Aetna Casualty & Surety Co.*,
  395 U.S. 352 (1969) ...................................................................................... 6

*Romero v. Int'l Terminal Operating Co.*,
  358 U.S. 354 (1959) ...................................................................................... 5

*Ross v. Bernhard*,
  396 U.S. 531 (1970) ...................................................................................... 14

*Russell v. Atlantic & Gulf Stevedores*,
  625 F.2d 71 (5th Cir. 1980) ............................................................................ 6

*South Port Marine vs. Gulf Oil Ltd. P'ship*,
  234 F.3d 58 (1st Cir. 2000) ......................................................................... 7, 8

*Strong v. BP Exploration & Prod., Inc.*,
  440 F.3d 665 (5th Cir. 2006) .......................................................................... 6

*Tanguis v. M/V Westchester*,
  153 F. Supp. 2d 859 (E.D. La. 2001) ............................................................. 4

*Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*,
  87 F.3d 150 (5th Cir. 1996) ............................................................................ 6

*Tull v. United States*,
  481 U.S. 412 (1987) ............................................................................... passim

*United States v. Ne. Pharm. & Chem. Co.*,
  810 F.2d 726 (8th Cir. 1986) ......................................................................... 17

*United States v. Viking Res., Inc.*,
  607 F. Supp. 2d 808 (S.D. Tex. 2009) ............................................................ 18

*United States v. Wade*,
  653 F. Supp. 11 (E.D. Pa. 1984) ..................................................................... 18

*Universe Sales Co., Ltd. v. Silver Castle, Ltd.*,
  182 F.3d 1036 (9th Cir. 1999) ........................................................................ 10

*Waring v. Clarke*,
  46 U.S. 441 (1847) .................................................................................... 7, 8

*Wheeler v. Marine Navigation Sulphur Carriers*,
  764 F.2d 1008 (4th Cir. 1985) ........................................................................ 12

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Williams v. Shipping Corp. of India,*
  653 F.2d 875 (4th Cir. 1981) ........................................................................... 15

*Wilmington Trust v. United States Dist. Ct. for the Dist. of Haw.,*
  934 F.2d 1026 (9th Cir. 1991) ......................................................................... 19

**Statutes**

33 U.S.C. § 2702(b) ........................................................................................ 18

33 U.S.C. § 2706(f) ......................................................................................... 17

33 U.S.C. § 2717 ........................................................................................... 3, 4

33 U.S.C. § 2718 .............................................................................................. 3

33 U.S.C. § 2751(c) .......................................................................................... 2

33 U.S.C. § 905 ................................................................................................ 4

42 U.S.C. § 1983 ............................................................................................. 16

43 U.S.C.A. § 1333 ........................................................................................... 6

**Other Authorities**

2 Thomas J. Schoenbaum, Admiralty & Maritime Law § 15-1 (5th ed.) ................................ 4

2 Thomas J. Schoenbaum, Admiralty & Maritime Law § 21-10 (5th ed.) ........................... 20

H.R. Rep. No. 101-653 (1990), *reprinted in* 1990 U.S.C.C.A.N. 779 (Conf. Rep.) ..................... 3

**Rules**

Fed. R. Civ. P. 44.1 .......................................................................................... 10

Alabama's dominating strategy for its opposition brief is to ignore the arguments and authorities establishing that it has no right to a jury trial. Alabama ignores cases establishing that OPA is a maritime statute, including pre-OPA cases holding that oil spills were within admiralty jurisdiction. Alabama ignores that other maritime statutes such as LHWCA, DOHSA and the Limitation Action do not provide a jury trial right. Alabama ignores Supreme Court precedent holding that American admiralty jurisdiction is broader than that of 18th century England. Alabama ignores cases from this district holding that a limitation court has discretion to determine damages even if limitation is denied. Alabama ignores case law showing that the common law did not recognize actions for lost tax revenues or increased public expenditures. Although all Gulf States have filed briefs opposing BP's motion, they cannot fill the gaps in Alabama's arguments.[1]

**First**, Alabama cannot overcome BP's arguments that OPA is a maritime statute for which there is no right to a jury trial. Alabama concedes that its jury trial demand depends on OPA, the text of which does not provide a jury trial right. Alabama nonetheless claims it can choose whether to have a jury when it brings claims under a maritime statute, but cites no on-point case law for this claim and ignores Fifth Circuit precedent rejecting it. Other States argue that OPA is not a maritime statute, but are unable to distinguish OPA from other statutes sounding in admiralty.

**Second**, Alabama admits that it voluntarily chose to file claims in the Limitation Action, which it knew would be tried to the bench. Alabama now claims that it — not this Court — has the sole discretion to determine whether its damages claims remain part of the Limitation Action

---

[1] Pursuant to the Court's order, Rec. Doc. 12552, no more than fifteen pages of this reply addresses arguments raised by Alabama. For organizational purposes, the arguments of the other States are addressed along with Alabama's arguments. Specifically, parts of pages 1, 3-5, 15, 16-18, and 20 address arguments by the other States.

if limitation is denied.  But the authorities Alabama cites for this argument do not support this conclusion, as explained by cases from this district that Alabama ignores.

**Third**, Alabama's individual claims lack a jury trial right for additional reasons. Alabama does not cite any historical claims from 18th century England that allowed recovery of lost tax revenues or public expenditures.  Whether these claims seek money damages is not determinative as they involve sovereign rights, for which there often is not a trial by jury. Further, Alabama's claims for NRD and removal costs are restitutionary and equitable, and thus do not provide a jury trial right.  The same conclusion applies to Alabama's punitive damages claim, which is maritime.

## I.      THERE IS NO JURY RIGHT FOR OPA CLAIMS.

Alabama agrees with BP that OPA's text does not provide for a jury trial right, Ala. Br. 10 n.4.  Thus, a jury trial could be required only if actions under OPA are "Suits at common law" under the Seventh Amendment.  BP Br. 3.  But OPA is an admiralty statute.  *Id.* at 3-4.  The Supreme Court and Fifth Circuit have held that other admiralty statutes such as DOHSA, LHWCA, and the Limitation Act do not provide a jury trial right.  *Id.* at 4-5.

### A.      OPA Is A Maritime Statute.

Acknowledging that a fundamental question for whether Alabama has a jury trial right is whether OPA is an admiralty statute, each of the States offer varying arguments contending that OPA is not a maritime statute.  None, however, are convincing.

**First**, Alabama asserts that OPA's savings clause, 33 U.S.C. § 2751(c), is inconsistent with OPA being a maritime statute, but this is not the case.  The savings clause simply makes clear that while OPA changes certain rules of maritime law ("Except as otherwise provided in this Act …"), the remainder of maritime law remains the same.  The savings clause does not alter OPA's nature as an admiralty statute.  To the contrary, it supports BP's argument.  Oil spills that

began at sea and affected land were within admiralty jurisdiction prior to OPA's passage.  *See In re Oil Spill by Amoco Cadiz*, 699 F.2d 909, 913 (7th Cir. 1983); *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 834-35 (1996).  The savings clause shows that OPA does not change this status.  Indeed, Texas cites legislative history stating that OPA does not affect admiralty jurisdiction, Tex. Br. 5 n.9, which shows that Congress intended for oil spills occurring at sea and affecting land to continue to sound in admiralty.  H.R. Rep. No. 101-653, at 159 (1990), *reprinted in* 1990 U.S.C.C.A.N. 779, 838 (Conf. Rep.) (The savings clause "of the House bill clarifies that the House bill does not affect admiralty and maritime law or the jurisdiction of the District Courts of the United States with respect to civil actions under admiralty and maritime jurisdiction … .");  *see also id.* ("It is not the intent of the Conferees to change the jurisdiction in incidents that are within the admiralty and maritime laws of the United States.").

**Second**, Texas claims that OPA refers to the Limitation Act as "other law," citing 33 U.S.C. § 2718.  Tex. Br. 5.  This is incorrect.  Section 2718 is titled "Relationship to other law" and explains how OPA and laws such as the Limitation Act relate to other State laws and federal statutes.  33 U.S.C. § 2718.  OPA's text is contrary to Texas's argument and supports BP.  That section groups OPA and the Limitation Act (an admiralty statute with no right to a jury trial) together and treats them similarly.  *E.g.*, 33 U.S.C. § 2718(a) ("Nothing in this Act or the Act of March 3, 1851 [the Limitation Act] shall …"); 33 U.S.C. § 2718(c) ("Nothing in this Act, the Act of March 3, 1851 …").

**Third**, Alabama also asserts that 33 U.S.C. § 2717(c), which provides State and federal courts with concurrent jurisdiction for removal costs, is inconsistent with OPA being an admiralty statute based on Alabama's claim that "federal jurisdiction is exclusive" over admiralty.  Ala. Br. 9.  Alabama is incorrect, as state and federal courts have concurrent

jurisdiction over certain admiralty claims.  *E.g.*, *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 445-46 (2001).  Moreover, the reason for § 2717(c)'s language is because § 2717(b) grants federal courts exclusive jurisdiction over most claims under OPA.  Section 2717(c) merely carves out part of § 2717(b)'s grant of otherwise exclusive jurisdiction.

**Fourth**, Alabama, joined by Louisiana, argues that OPA provides different remedies and causes of action than traditional admiralty law.  Ala. Br. 9; La. Br. 3-4.  But neither explains why this matters to whether a statute sounds in admiralty.  All admiralty statutes change some aspects of maritime common law:  the Limitation Act provides unique remedies ship owners did not have before, 2 Thomas J. Schoenbaum, Admiralty & Maritime Law § 15-1 (5th ed.), DOHSA creates an exclusively admiralty remedy not previously available under maritime law, *see Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 212-16 (1986), and so forth.  Yet each of these statutes is maritime in nature and does not provide a jury trial right.  BP Br. 4-5.  Indeed, *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859 (E.D. La. 2001), cited by Louisiana, La. Br. 5-6, notes that "traditional maritime remedies for oil spills pre-date OPA."  *Id.* at 867.

**Fifth**, although Alabama does not attempt to distinguish the maritime nature of OPA from LHWCA, DOHSA, or the Limitation Action, Louisiana tries to do so by making distinctions without a difference.  La. Br. 4-5.  Louisiana asserts that LHWCA § 905(b) is maritime because it did not create any new remedies, but does not cite any case or provide any explanation as to why creating new remedies prevents a statute from sounding in admiralty.  Louisiana ignores that DOHSA created a new remedy and is an admiralty statute.  *See Offshore Logistics*, 477 U.S. at 212-16.  For DOHSA, Louisiana points to statutory language referring to admiralty jurisdiction.  Such language is not in the LHWCA or Limitation Act, yet those statutes sound in admiralty and do not provide a jury trial right.  Finally, Louisiana states that the

Limitation Act does not itself provide admiralty jurisdiction but again does not explain why this makes a difference.  Louisiana's assertion, in fact, only strengthens BP's arguments.  The Limitation Act shows that even if a statute does not provide an additional source of admiralty jurisdiction it remains maritime in nature and therefore no jury trial right arises.

**Sixth**, Louisiana cites a district court case involving a truck leaking fuel into navigable waters in arguing that OPA is not an admiralty statute, La. Br. 3, but this decision is not on-point.  That opinion was about the scope of a release and did not decide whether that case was governed by admiralty.  By contrast, this Court has already held that admiralty jurisdiction exists over the *Deepwater Horizon* incident.  Rec. Doc. 3830 at 7-8.  In addition, cases such as *Exxon* and *Amoco Cadiz* hold that oil spills fall within admiralty jurisdiction.  *See Amoco Cadiz*, 699 F.2d at 913; *Exxon*, 517 U.S. at 834-35.  Moreover, Congress controls the scope of admiralty jurisdiction within broad constitutional bounds, and is free to expand the court's jurisdiction under statutes such as OPA.  *See Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 361 (1959).

### B.      As A Maritime Statute, OPA Lacks A Jury Trial Right.

Because OPA is essentially maritime in nature and its text does not provide for jury trials, OPA does not provide a jury trial right.  BP Br. 3-5.  Alabama and the other States cannot overcome this basic principle.

**First**, Alabama asserts that it can choose whether to proceed under federal question jurisdiction or admiralty.  As demonstrated by Supreme Court and Fifth Circuit law regarding LHWCA, DOHSA, and the Limitation Act, even if the plaintiff wants a jury trial such statutes do not carry a right to a jury trial because of their maritime nature.  BP Br. 4-5.  For example, limitation actions are tried to the bench because of their admiralty nature, regardless of whether plaintiffs might otherwise proceed in state or federal court on the law side with a jury.  *See In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 755 (2d Cir.

1988).  Similarly, even when a plaintiff pleads federal question jurisdiction for LHWCA, there is still no right to a jury trial under that maritime statute.  *Russell v. Atlantic & Gulf Stevedores*, 625 F.2d 71, 72 (5th Cir. 1980).  The same is true for DOHSA.  *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 661 (9th Cir. 2009).  Because OPA sounds in admiralty, there is no right to a jury trial regardless of the form of jurisdiction pled.

**Second**, Alabama cites OCSLA and the CWA to argue that admiralty statutes can have a constitutional right to jury.  Alabama is mistaken about the nature of OCSLA as well as precedent regarding the CWA.

As the Supreme Court explained in *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352 (1969), under OCSLA's plain language, admiralty principles do not apply to the areas covered by OCSLA.  "[I]t is apparent that the Congress decided that these artificial islands, though surrounded by the high seas, were not themselves to be considered within maritime jurisdiction."  *Id.* at 365-66.  Thus, OCSLA provides for the use of land-based law and is not a maritime statute.  OPA contains no such language, and OPA's saving clause indicates that sea-to-land spills remain within admiralty jurisdiction, *supra* at 2-3.

Alabama also is incorrect that OCSLA provides a jury trial right.  OCSLA borrows from State or federal law, and thus follows that law in determining whether a jury trial is available.  For example, where both OCSLA and maritime law apply, the case is governed by maritime law.  *See Strong v. BP Exploration & Prod., Inc.*, 440 F.3d 665, 670 (5th Cir. 2006); *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996).[2]  This includes trying the

---

[2]  Other federal statutes may also apply to areas covered by OCSLA, 43 U.S.C.A. § 1333(a), which could displace maritime law.  43 U.S.C.A. § 1333.  For example, BP has argued that OPA displaces maritime law, Rec. Doc. 1440 at 13-17, although the Court did not agree with BP's position, Rec. Doc. 3830 at 24-26.  (BP continues to reserve all of its rights to appeal that ruling.)  Such displacement only confirms that OCSLA follows other law, either State or federal, in determining whether there is a jury trial right.

case to the bench. *Raffray v. Gulf Logistics, LLC*, 2010 WL 5055849, *4 (E.D. La. Dec. 2, 2010); *Duet v. Falgout Offshore, LLC*, 2010 WL 1817766, at *5 (E.D. La. May 5, 2010).[3]

Regarding the CWA, Alabama cites *Tull v. United States*, 481 U.S. 412 (1987). Alabama's reliance on *Tull* is misplaced as the Supreme Court held that under the CWA the remedy is determined by the bench, not a jury. *Id.* at 426-47. Thus, *Tull* actually supports trying Alabama's remedies to the bench.

Alabama seeks to rely on *Tull's* liability holding, even though the remedy and not liability is what is at issue. Evaluating Alabama's argument requires determining what *Tull* held. *Tull* addressed only whether liability for the CWA was a legal or equitable action. *Id.* at 422-25. The Supreme Court did not consider whether the CWA was an admiralty statute. *Id.* Thus, *Tull* does not support holding that OPA is not an admiralty statute. Holding that there is no jury trial under OPA is necessary to be consistent with the Supreme Court's holding in *Crowell v. Benson*, 285 U.S. 22, 45 (1932) and the holdings of the Fifth Circuit and other circuits regarding DOHSA, LHWCA, the Jones Act, and the Limitation Act. BP Br. 4-5, 8.

**Third**, Alabama and other States cite to *South Port Marine vs. Gulf Oil Ltd. P'ship*, 234 F.3d 58 (1st Cir. 2000) and two cases following it. Each case fails to consider arguments and precedent showing that OPA does not have a jury trial right. BP Br. 5-11. The States do not address the flaws that BP exposed in these non-binding cases.

## C.    Historical Analysis Should Not Be Used, And In Any Case Supports BP.

The Supreme Court held in *Waring v. Clarke*, 46 U.S. 441, 458-59 (1847) that American

---

[3]   Alabama's citation to the unpublished, non-precedential decision in *Apache Corp. v. Global Santa Fe Drilling Co.*, 435 Fed. App'x 322 (5th Cir. 2011) does not change this result. *Apache* depended on the plaintiff invoking OCSLA as a basis of jurisdiction. As explained in the text, OCSLA provides for use of non-admiralty principles. Here, Alabama premised jurisdiction only on OPA itself, not OCSLA. Case No. 2:13-cv-00252-MEF-TFM, Rec. Doc. 5 at 5; *Biagas v. Hornbeck Offshore Services, LLC*, 2006 WL 2228952, at *4 (E.D. La. Aug. 3, 2006). Moreover, *Apache* did not concern OPA or any other maritime statute. It thus did not change the rule that there is no constitutional jury trial right for maritime statutes.

admiralty jurisdiction is broader than 18th century English admiralty jurisdiction.  BP Br. 5-6.
Thus, instead of looking to English legal history, this Court should look to what other courts
actually do and hold — if the statute is admiralty in nature, then there is no right to a jury trial.
BP Br. 6.  Alabama does not even cite *Waring*, much less try to distinguish it.

Moreover, the test used to distinguish legal versus equitable claims has not been used to
determine admiralty jurisdiction.  BP Br. 6 n.2.  The law-equity test looks both to 18th century
English practice and whether "the remedy sought … is legal or equitable in nature."  *Tull*, 481
U.S. at 417-18.  Characterizing the relief as legal or equitable is the test's "more important"
prong.  *Id.* at 421.  But this "more important" prong is inapplicable in determining whether a
cause of action sounds in admiralty rather than law because of the overlap in remedies and
jurisdiction.  English admiralty courts could award money damages just as law courts did.  BP
Br. Ex 1, Oldham Decl. ¶¶ 28-30.  Also, admiralty courts and law courts generally had
concurrent jurisdiction over cases.  Oldham Decl. ¶ 28; Ala. Br. 21.  No State cites any case
besides *South Port* and its progeny that has applied the law-equity test to determine whether an
action sounds in admiralty.  As for *South Port*, it ignored the "more important" part of the test
and relied on inaccurate history, and thus is not persuasive.

Alabama also fails to address any of the contradictions that would arise from using a
historical test to determine admiralty jurisdiction.  Alabama does not address how such a test
could be consistent with holding bench trials under the AEA.  BP Br. 7.  Nor does Alabama
address precedent regarding the lack of jury trial rights for maritime statutes and claims, which
does not look to history.  *Id.* at 8.

Alabama attempts to distort BP's argument to contend that BP is arguing that "Suits at
common law" means different things in 1791 and 2010.  Ala. Br. 16.  This is incorrect.  From

1791 forward, the constitutional scope of admiralty jurisdiction has encompassed sea-to-land injuries. BP Br. 7-10. BP's position is that a different test applies to determine whether a claim sounds in law or admiralty than one uses to determine whether a claim sounds in law or equity.

Finally, even if one looks at history, that history supports BP. BP Br. 10-13. In discussing the Supreme Court's interpretation of admiralty jurisdiction, Alabama simply cites cases it likes, while ignoring those that contradict its arguments for a locality test. Ala. Br. 18; *compare* BP Br. 10-12. But the Supreme Court has explained that its historical jurisprudence had "never explicitly held that a maritime locality is the sole test of admiralty tort jurisdiction" and had found admiralty jurisdiction over events occurring partly on land on numerous occasions. *Exec. Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 259-60 (1972).

Alabama's discussion of 18th century English law is likewise one-sided. Ala. Br. at 17-22. Prize cases, which Alabama claims should be ignored, are part of English admiralty jurisdiction and should be considered in determining its historical scope. Moreover, Alabama's claim that instance jurisdiction did not recognize any claims occurring partly on land is incorrect. Contemporary treatises explained that for admiralty in general if the cause arose upon the sea but consequences occurred on land, then admiralty jurisdiction existed. Oldham Decl. ¶¶ 17-18. For example, theft of goods from a ship that were brought on land was within admiralty's instance jurisdiction. *Id.*; *see also* Exhibit 6 (examples of English non-prize cases holding that events occurring partly on land were within admiralty jurisdiction). Moreover, English courts sitting in instance jurisdiction applied prize cases such as *Le Caux* to instance cases. Oldham Decl. ¶ 27. Thus, 18th century English admiralty law — both in prize and instance jurisdiction — recognized admiralty jurisdiction over events occurring partly on land. BP Br. 13.

Alabama also claims that, because England and the United States passed statutes to

clarify how admiralty jurisdiction extends over sea-to-land incidents, admiralty must have lacked any such jurisdiction, but that conclusion is wrong. Ala. Br. 17-19. The pre-AEA rule was not that admiralty jurisdiction never existed over sea-to-land controversies, but rather that whether such jurisdiction existed often depended on fine factual differences. BP Br. 7, 10-11. Congress passed the AEA to clarify admiralty jurisdiction's scope. *Id.* at 7. Similarly, English admiralty jurisdiction also extended over certain sea-to-land incidents. The King Richard statutes cited by Alabama do not change this, as by their language they concern events occurring in the realm or counties (that is, on land), not events occurring at sea that may cause injury on land. Such laws no more mean that admiralty jurisdiction was absent over all sea-to-land injuries than the AEA.

BP's application of the historical test is further supported by the Fifth Circuit's recent *Deepwater Horizon* opinion upholding preemption of State law. That decision explains that the events of the *Deepwater Horizon* incident occurred within navigable, federal waters. The oil that allegedly caused injury to Alabama "simply migrated into state waters." *In re Deepwater Horizon*, 2014 WL 700065, *4 n. 8 (5th Cir. Feb. 24, 2014); *see also id.* at *5, 10. The Fifth Circuit's opinion further supports that the substance and consummation of the event occurred in navigable waters and so admiralty jurisdiction would have existed under either historical test.

Finally, Alabama's motion to strike Professor Oldham's opinions is meritless. Alabama ignores that experts regularly testify about foreign law. Rec. Doc. 12387. In "determining foreign law the court may consider any relevant material or source, including testimony … ." Fed. R. Civ. P. 44.1. "[E]xpert testimony accompanied by extracts from foreign legal material is the basic method by which foreign law is determined." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 713 (5th Cir. 1999); *see also Universe Sales Co., Ltd. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1038 (9th Cir. 1999) (same). Parties previously have attached declarations about

10

foreign law to their briefs, such as in the litigation over the Mexican States' claims.  *E.g.*, Rec. Docs. 8176; 8167-7; 8167-11.   Here, Professor Oldham's testimony concerns 18th century English law, which is foreign law.  Thus, there is no basis to strike his declaration.

## II.   THE COURT MAY TRY ALABAMA'S CLAIMS AS PART OF THE LIMITATION ACTION, EVEN IF IT DENIES LIMITATION.

Alabama and the other States do not dispute that the purpose of a limitation action is to achieve a "complete and just disposition of a many cornered controversy," *Karim v. Finch Shipping Co.*, 265 F.3d 258, 264 (5th Cir. 2001), that a Limitation Action court's jurisdiction may continue after denying limitation, and that numerous limitation action courts have determined damages after limitation has been denied.  BP Br. 13-16.

Alabama does dispute whether the Court or plaintiff has the discretion to have damages determined as part of the Limitation Action.   Cases from this district hold that the limitation court has discretion to decide damages even if limitation is denied.   BP Br. 16, citing *In re Clearsky Shipping Corp.*, 1998 WL 308011, at *2 (E.D. La. 1998) and *In re Waterman S.S. Corp.*, 1992 WL 41714, at *6 (E.D. La. Feb. 27, 1992).   BP does not claim that Fifth Circuit precedent is "subservient" to *Clearsky* and *Waterman*, Ala. Br. 27 n.15, but rather that *Clearsky* and *Waterman* interpret cases such as *Pershing Auto Rentals, Inc. v. Gaffney*, 279 F.2d 546, 552 (5th Cir. 1960) and explain their actual holdings.   Those holdings leave discretion to this Court regarding whether to determine damages.

For example, the actual holding of *Pershing* is that a district court erred by modifying an injunction to let plaintiffs proceed with trial of their state court suits when a limitation action had been filed.   279 F.2d at 550-52.   The passage on which Alabama relies comes at the end of the opinion and is not necessary to the holding.   *Id.* at 552.   The passage simply does not state that district courts have no discretion in deciding whether to adjudicate damages.   *Id.*   *Waterman*

explained that in "*Pershing*, Judge Brown recognized the power of the federal court to adjudicate the entire case even though limitation is denied" and that "it is in my discretion whether to adjudicate the case in its entirety or whether to allow the claimants to return to state court if limitation is denied."  1992 WL 41714, at *5.

Alabama also emphasizes *Wheeler v. Marine Navigation Sulphur Carriers*, 764 F.2d 1008 (4th Cir. 1985), but that case's facts are sharply different than those presented here.  The Eastern District of Virginia court denied limitation, declined to retain jurisdiction, and lifted the injunction so that plaintiffs could pursue their claims in Pennsylvania federal court.  *Id.* at 1010. Thus, the plaintiffs were no longer part of the limitation action and so were free to pursue their original claims.  *Wheeler* does not state that the district court lacks any discretion to determine damages for a claim that is part of a limitation action.  This same thread carries through the rest of the cases cited by Alabama.  None of them states that a district court lacks discretion to decide damages as part of a limitation action or considered a case similar to the facts here.

Alabama also cites *Lake Tankers Corporation v. Henn*, 354 U.S. 147 (1953), Ala. Br. 25, but that case is inapposite.  In *Lake Tankers*, the aggregate amount of claims was less than the value of the vessels and pending freight.  354 U.S. at 148.  Thus, there was no concursus and no proper limitation action.  *Id.* at 152.  By contrast, here the claims exceed the value of the *Deepwater Horizon*, this court has been determining liability without a jury pursuant to a Limitation Action, and the Court has jurisdiction over Alabama as part of that Limitation Action.

Alabama also seeks to emphasize the importance of the jury trial right as trumping the Limitation Act.  Yet *Pershing* states that the findings of the limitation action court regarding liability are binding on the parties in subsequent litigation, 279 F.2d at 552, even though limitation actions are tried by the bench for claims where liability would otherwise be decided by

a jury.  Indeed, Alabama admits that it knew that by participating in the Limitation Action its claims would be tried without a jury.  Ala. Br. 4.  Thus, an alleged jury trial right does not trump the admiralty nature of the Limitation Act.

Alabama also notes that its OPA claims were not enjoined, Ala. Br. 9, but that does not mean that those claims cannot be resolved as part of the Limitation Action.  The purpose of the Limitation Action is to provide "a complete and just disposition of a many cornered controversy," which includes related claims.  *Karim*, 265 F.3d at 264.  A "necessary concomitant of jurisdiction in a factual situation such as this one [is] that the Court have power to adjudicate all of the demands made and arising out of the same disaster."  *British Transp. Comm'n v. United States*, 354 U.S. 129, 138 (1957).  Alabama's OPA claims arise out of the same incident as the claims in the Limitation Action.  Moreover, as Transocean explained, Alabama's OPA and maritime law claims overlap.  Transocean's Br. 6-8.

BP has explained that several factors weigh in favor of the Court exercising its discretion to decide Alabama's damages claims.  BP Br. 17-18.  Alabama's arguments to the contrary are unavailing.  Alabama claims that trying the cases to this Court would result in delay, Ala. Br. 31-32, but the opposite is true.  This Court deciding damages would allow the parties to be governed by clearer rules that may allow them to value and resolve cases more rapidly.  Indeed, presumably that is the point of the Alabama test case along with the private plaintiff OPA test cases.  *E.g.*, Rec. Doc. 11031.  By contrast, having multiple different courts will create uncertainty and thus delay, particularly if each OPA case is tried to a jury.

Alabama claims that trying its damages to the bench would "punish" it for participating in the liability trial.  Ala. Br. 32.  Having the Court decide damages is not a "punishment."  It is a natural consequence of participating in a limitation action tried to the bench.

III.   **ALABAMA'S INDIVIDUAL CLAIMS LACK ANY JURY TRIAL RIGHT FOR ADDITIONAL REASONS.**

    A.   **Alabama's Claims For Tax Revenues And Public Expenditures Are Sovereign In Nature And Do Not Provide A Jury Trial Right.**

Alabama does not cite a single case holding, or even suggesting, that causes of action for lost tax revenues or increased public expenditures must be tried to a jury. Instead, Alabama argues for the jury trial right to be extended to such claims based on the two-pronged test of cases such as *Tull*, but Alabama's arguments are flawed.

Under the first prong of the test, the question is whether the cause of action "either was tried at law at the time of the founding or is at least analogous to one that was." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376 (1996); *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 708-09 (1999). Moreover, as Mississippi points out, whether a jury trial right exists "depends upon the nature of the issue to be tried rather than the character of the overall action." *Ross v. Bernhard*, 396 U.S. 531, 538 (1970); Miss. Br. 3. Thus, the question is not whether there are cases "with a similar fact pattern," Ala. Br. 15, but whether the issue of lost tax revenues and increased public expenditures, or some analogous claim, was tried to juries in 18th century England.

As BP has explained, no such claims or analogues for lost tax revenues or public expenditures existed in 18th century England. BP Br. 19-20. Neither Alabama nor any of the other States cites any 18th century English precedent providing for recovery of such claims or a plausible analogue. The only evidence on this point is Professor Oldham's review of 18th century English law claims, which uncovered nothing analogous to an action for lost tax revenues or increased public expenditures. Oldham Dec. ¶¶ 31-33. Indeed, complex financial disputes were typically handled by Chancery courts sitting without a jury. *Id.* ¶ 33. As neither claims for lost tax revenues or public expenditures nor any analogues were heard by law courts

in 18th century England, the Seventh Amendment does not require that such claims be tried to a jury. *See Atlas Roofing Co. v. Occupational Safety Comm'n*, 430 U.S. 442, 459 (1977); *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48-49 (1937); *Williams v. Shipping Corp. of India*, 653 F.2d 875, 881-82 (4th Cir. 1981).

Unable to overcome the absence of such case law, Alabama and other States make a handful of meritless arguments. **First**, they cite actions for trespass on the case or nuisance, but provide no evidence that these actions allowed recovery of lost tax revenues or increased public expenditures in law courts. Ala. Br. 14-15; Miss. Br. 2-3. Indeed, trespass and private nuisance actions at common law were brought by private parties for individual harm allegedly caused; such actions had nothing to do with lost tax revenues or increased public expenditures, nor are they even remotely analogous. **Second**, Florida attempts to distinguish BP's cases establishing that there is no common law action for lost tax revenues or increased public expenditures by arguing that these cases involve standing. Fla. Br. 6. But that is the point — at common law, such claims are too indirect to allow recovery by States. That OPA grants standing for such claims now is irrelevant to the question at issue, which is whether such claims were decided by juries in 18th century England. **Third**, Mississippi cites cases concerning disputes between two private parties where one party caused another to pay additional taxes and a handful of cases where States were suing for losses directly caused to them. Miss. Br. 5-6. Both categories of case are sharply different from here, where Alabama — as a third party — is seeking lost tax revenues based on alleged harms one private party committed against another.

On the second prong of the test, Alabama argues that because it seeks money damages its claims are legal in nature, but admits that there are exceptions. Alabama tries to limit non-legal money damages to two exceptions, Ala. Br. 12, but Supreme Court case law demonstrates a

variety of circumstances where a claim for money damages is not legal in nature.  For example, decisions hold that there is no right to a jury trial where the government sues in its sovereign capacity to enforce public rights, *Atlas Roofing*, 430 U.S. at 450, or in suits for money damages against domestic or foreign sovereigns, *Rex v. Cia. Pervana de Vapores, S.A.*, 660 F.2d 61, 67 (3d Cir. 1981).  These cases establish a principle that claims based on sovereign rights may not be "Suits at common law" under the Seventh Amendment.  Alabama is not bringing a garden variety tort action for money damages, but instead is suing for lost tax revenues and public expenditures that are peculiarly within the powers of a sovereign.  Alabama and the other States do not cite cases involving States making claims peculiar to their sovereign natures.  The cases they do cite involve typical private party actions on established claims that are inapposite to the questions here.  *E.g., City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 715 (1990) (holding that there is a jury trial right for actions under 42 U.S.C. § 1983 to recover damages for interference with property interests).

Finally, functional concerns weigh in favor of finding no jury trial right.  BP Br. 20-21.  In short, proper application of the Seventh Amendment test shows that Alabama is not entitled to a jury for these claims.

### B.   Alabama's NRD Claims Are Equitable And Thus Lack A Jury Trial Right.

As discussed in BP's opening brief, neither statutory text nor the Seventh Amendment provides a jury trial right for Alabama's NRD claims.  BP Br. 21-24.  Although Alabama declines to brief whether it has a jury trial right for its NRD claims, Ala. Br. 23-24, other States contend that the Seventh Amendment provides a jury trial right for Alabama's NRD claims, but they fail to substantiate the existence of such a right under the *Tull* framework.

*Tull* first requires this Court to "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity."  481 U.S. at

16

417.  Despite BP's contention that NRD claims — *i.e.*, claims asserted by a public trustee of natural resources — find no analog in such 18th-century actions, BP's Br. 21, the States chose to ignore this aspect of the *Tull* framework and offer no rebuttal.  The States' decision is understandable because there are no historical analogues to which they could point — NRD claims were "unknown to the common law."  *NLRB*, 301 U.S. at 48-49.

The State claimants pay only slightly more attention to the second prong of *Tull*:  whether "the remedy sought . . . is legal or equitable in nature."  481 U.S. at 417-18.  The States assert that NRD claims are legal in nature, and thus subject to a jury trial right, because they seek relief akin to that recovered in a common law nuisance or trespass action.  Miss. Br. 8; Fla. Br. 9.  However, nowhere in their briefs do the States respond to BP's argument that Alabama's NRD claims are restitutionary and therefore equitable in nature.

Unlike damages recovered in a common law nuisance or trespass action, OPA explicitly restricts Alabama's use of any NRD recovery to assessing and restoring injured natural resources.  BP Br. 22 (citing 33 U.S.C. § 2706(f)).  Under this limitation, NRD claims are inherently restitutionary in nature — *i.e.*, they are "limited to 'restoring the status quo.'"  *Tull*, 481 U.S. at 424 (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946)).  No such limits are imposed on traditional common law damages awards, which a successful claimant may spend freely.  OPA NRD claims thus are analogous to cost recovery actions, which the courts have uniformly held to be equitable.  *See, e.g.*, *United States v. Ne. Pharm. & Chem. Co.*, 810 F.2d 726, 749 (8th Cir. 1986) (CERCLA response cost claims are equitable).

Rather than respond to this argument, the States instead cite a few district court decisions and suggest that the courts have definitively resolved that the Seventh Amendment confers a jury trial right upon OPA NRD claims.  Fla. Br. 8-10; Tex. Br. at 3-4; Miss. Br. 8.  Only one district

court, and no appellate court, has addressed this question in the OPA context, *see United States v. Viking Res., Inc.*, 607 F. Supp. 2d 808, 830-33 (S.D. Tex. 2009), and courts remain divided on this question in the context of the analogous CERCLA claim, *compare United States v. Wade*, 653 F. Supp. 11, 13 (E.D. Pa. 1984) (CERCLA NRD claims are equitable), *with In re Acushnet River & New Bedford Harbor*, 712 F. Supp. 994, 999 (D. Mass. 1989) (CERCLA NRD claims are legal).  Moreover, neither *Viking Resources* nor *Acushnet River* rebut or even address the fact that OPA's restrictions on the use of an NRD recovery demonstrate that NRD claims are restitutionary, and therefore equitable.[4]

This Court should agree with the longstanding position of the United States (the States' co-plaintiff and co-trustee for natural resources) that OPA NRD claims are equitable, and therefore do not confer a jury trial right under the Seventh Amendment.  BP Br. 21-24; *see also* BP Br. Ex. 5 at 10-12.[5]

### C.     Alabama's Removal Cost Claim Is Equitable And Lacks A Jury Trial Right.

Courts have consistently held that claims for removal costs are equitable.  BP Br. 24-25. Alabama and the other States do not cite any cases holding that a party receives a jury trial for removal cost claims.   Instead, Louisiana argues that removal costs should be considered damages, La. Br. 8-9, but OPA treats "removal costs" and "damages" as two separate categories. 33 U.S.C. § 2702(b).  Moreover, Louisiana does not cite any precedent indicating that the label

---

[4] The United States asserted this argument in *Viking Resources*, but the court did not address it.  *Compare* Ex. 5 to BP's Br., Pl. United States' Mem. in Supp. of Mot. to Strike Jury Demand of Defs. at 10-12, 2009 WL 956005, *Viking Res.*, 607 F. Supp. 2d 808, *with Viking Res.*, 607 F. Supp. 2d at 830-33.

[5] BP also notes that the State claimants fail to respond to its re-examination clause concern.  *See* BP's Br. 24 n.9. Alabama proposes "two options" for a trial plan, both of which would violate the re-examination clause to the extent that the same facts underlying its NRD claims and other claims would be decided by different juries.  *See* Ala. Br. 32.  Alabama presumably avoids discussing this sequencing problem because the only two constitutional solutions are ones that the State clearly hopes to avoid:  (i) bench trials for all of its claims, or (ii) if jury trials were required, a single jury trial to resolve all Alabama's claims that would be tried to a jury.

attached to a remedy controls over its form.  Alabama and Mississippi cite to *Great-West Life & Annuity Ins. v. Knudson*, 534 U.S. 204 (2002), Ala. Br. 12-13, Miss. Br. 9, but *Knudson* did not involve jury trial rights but rather what relief is available under ERISA.  Moreover, even though *Knudson* was decided over a decade ago, the States do not cite a single case relying on it to hold that removal costs must be tried to a jury.  *Knudson* simply is not applicable here.

   **D.    The Court Should Decide All Claims For Which Alabama Does Not Have A Jury Trial Right.**

   Finally, Alabama's claim that if it has a right to a jury trial on any claim then it has a jury right to all claims is incorrect.  The Supreme Court decision on which its argument is based, *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16 (1963), involved a suit where all the causes of actions were based on closely related theories and facts.  In those circumstances, "[o]nly one trier of fact should be used for the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments."  *Id.* at 21.  The cases Alabama cites refer to a jury deciding claims arising from one of set of facts and that present common issues.  Ala. Br. 11.  By contrast, where a court is deciding separate issues, some of which are governed by admiralty and others not, the bench may decide the admiralty claims while the jury decides the other claims.  *E.g.*, *Wilmington Trust v. United States Dist. Ct. for the Dist. of Haw.*, 934 F.2d 1026, 1032 (9th Cir. 1991); *Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil*, 704 F.2d 1038, 1042 (8th Cir. 1983).  Cases involving both legal and equitable claims apply a similar principle; the jury decides any common issues, but the bench decides issues for the equitable claims that are separate from the legal claims.  *E.g.*, *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423-24 & n. 21 (5th Cir. 1998).

   Alabama's case involves damages for separate claims, which involve separate issues.  For example, a jury decision on the amount of Alabama's alleged property damages is separate from

its alleged claims for lost tax revenues and increased public expenditures.  Thus, even if the Court finds that Alabama is entitled to a jury trial on one damages claim, other claims for which Alabama has no jury trial right should be tried to the bench.  See 2 THOMAS J. SCHOENBAUM, ADMIRALTY &MARITIME LAW § 21-10 (5th ed.) (discussing trial options for cases involving admiralty and non-admiralty claims, including bifurcation or holding one trial where the jury decides only non-admiralty issues).[6]

## CONCLUSION

As explained in BP's memorandum and this reply, the Court should strike Alabama's demand for a jury trial and order that Alabama's alleged damages be tried to the bench.

---

[6] Because Alabama's punitive damages claims are based on maritime law, Alabama is not entitled to a jury.  BP Br. 25.  The only State that addresses punitive damages is Florida, which claims that because Alabama's other claims should receive a jury trial, its punitive damages claims should as well.  Fla. Br. 8 n.9.  This argument fails because Alabama is not entitled to a jury trial on any other claims.  Even if it were, then as explained in the text punitive damages should still be tried to the bench as such damages are separate from those of other claims.

Date:  March 25, 2014                                   Respectfully submitted,


                                                        /s/ Don K. Haycraft
                                                        Don K. Haycraft (Bar #14361)
                                                        R. Keith Jarrett (Bar #I6984)
                                                        Liskow & Lewis
                                                        701 Poydras Street, Suite 5000
                                                        New Orleans, Louisiana 70139-5099
                                                        Telephone: (504) 581-7979
                                                        Facsimile: (504) 556-4108

                                                        and

                                                        Richard C. Godfrey, P.C.
                                                        J. Andrew Langan, P.C.
                                                        Paul D. Collier
                                                        R. Chris Heck
                                                        Kirkland & Ellis LLP
                                                        300 North LaSalle Street
                                                        Chicago, IL 60654
                                                        Telephone: (312) 862-2000
                                                        Facsimile: (312) 862-2200

                                                        Robert C. "Mike" Brock
                                                        F. Chad Morriss
                                                        Maureen F. Browne
                                                        Covington & Burling LLP
                                                        1201 Pennsylvania Avenue, NW
                                                        Washington, DC 20004-2401
                                                        Telephone: (202) 662-5985

                                                        Joel M. Gross
                                                        Lawrence A. Schneider
                                                        Arnold & Porter, LLP
                                                        555 12th Street N.W.
                                                        Washington, DC 20004
                                                        Telephone: (202) 942-5705
                                                        Facsimile: (202) 942-5999

                                                        *Attorneys for BP p.l.c., BP Exploration &*
                                                        *Production Inc., and BP America Production*
                                                        *Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 25th day of March, 2014.

/s/ Don K. Haycraft
Don K. Haycraft