UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | SECTION: "J" |
| | : | |
| This Document Applies to: | : | JUDGE BARBIER |
| | | MAG. JUDGE SHUSHAN |
| No. 12-970, Bon Secour Fisheries, Inc., et al. | : | |
| v. BP Exploration & Production Inc., et al. | : | |

**RESPONSE OF CASEY THONN
TO THE MOTION OF THE SPECIAL MASTER FOR
RETURN OF PAYMENTS MADE TO CASEY THONN**

NOW INTO COURT, through undersigned counsel, comes Casey Thonn, who respectfully submits the following as his response to the Motion of the Special Master for Return of Payments Made to Casey Thonn ("Thonn") ("Response").

## INTRODUCTION

Louis Freeh, Special Master, has filed a Motion for Return of Payments Made to Casey Thonn. Thonn asserts that the relief requested in the Motion by the Special Master cannot be granted based upon the following:

1) Thonn accepts and adopts the reasons set forth in the objections filed by Glen Lerner, Jonathan Andry and Andry Lerner to the Court's Order of September 6, 2013, Rec. Doc. 11830, and would reiterate that the Special Master cannot serve as both a fact finder and an advocate and, thus, has no authority to either file or pursue the instant Motion.

2) Investigators hired by the Gulf Coast Claims Facility ("GCCF") reasonably
believed that the information contained in the unfiled tax returns of Thonn as to his $156,000.00 of business income was in fact accurate.

3) Before any clawback of payments made to Thonn could be ordered, the Court must conduct an evidentiary hearing and determine that Thonn committed fraud. The Court cannot base its decision on the papers alone, including the declaration of Lloyd Day because it contains inadmissible hearsay.

1

## BACKGROUND

The pleadings filed by the Special Master in connection with the claim of Thonn present an incomplete recitation of the facts. Specifically, the Special Master failed to advise the Court of the following: (i) the tax return and amended returns (that were not filed with the IRS) that are the focus of the alleged fraud committed by Thonn were in fact filed by Thonn or on behalf of Thonn with the GCCF; (ii) the returns bore no indicia of fraud perceptible to Casey Thonn, in particular the amended return filed by Thonn contains a certification under penalty of perjury by a third-party registered tax preparer that the Form 1040 which contained the business income gross income calculation, and which the Special Master contends formed the basis for the Thonn award, had in fact been filed with the IRS; (iv) the investigative arm of the GCCF, GuidePost, undertook an investigation of the Thonn claim to determine if the business revenue of $156,000.00 contained in the allegedly unfiled tax return was correct and concluded it was accurate based upon documentation separate and apart from the unfiled tax return and amended return.

## FACTS

*The Thonn Tax Returns*

In late March of 2011, Thonn filed a claim with the GCCF. The documentation that was contained in the Thonn filings with the GCCF included his 2009 original tax return ("Original Return") and an amended 2009 tax return ("Amended Return") prepared by O.W. Favre of Otis Income Tax, Inc. ("Otis") of Slidell, Louisiana. The Original Return and the Amended Return were prepared by a "paid preparer." The term "paid preparer" is a designation given to tax preparers by the IRS. It denotes that the party preparing the tax return is, in fact, a person registered with the IRS to prepare or file a tax return.

Each paid preparer when registered by the IRS is provided with a pin number for the filing of returns. Page 2 of the 2009 Thonn tax return contains the Preparer Tax Identification Number ("PTIN") for Otis Income Tax, Inc., which identifies to the IRS and others that the return was prepared by a "paid preparer". Current IRS regulations regarding tax preparers who file more than eleven (11) returns requires that returns be filed electronically with the IRS or the preparer is required to obtain a signed and dated statement from the taxpayer that the taxpayer will in fact file the return.1 26 U.S.C. § 6011(c)(3).

A review of the Original Return (Exhibit "B" to the Special Master's Motion) reveals the following:

1) Page two of the Original Return shows Thonn's occupation as unemployed; and

2) Schedule C of the Original Return reflects $156,000.00 in income and designates Thonn's occupation as a "fisherman."

After the Original Return was prepared, the Amended Return (Form 1040x) (Exhibit "B" to the Special Master's Motion) was prepared by Otis in March of 2011. The Amended Return did not amend the $156,000.00 of business revenue and, in fact, confirms the $156,000.00 of income (compare line 1 of the Amended Return to line 37 of the Original Return). More importantly, the Amended Return contains a certification from Otis signed by Favre (not Thonn) that stated:

> **Under penalties of perjury, I declare that I (Favre) have filed an original return and that I (Favre) have examined this amended return. . . and to the best of my knowledge and belief, this amended return is true, correct and complete. Declaration of preparer (other than taxpayer) is based on all information about which preparer has any knowledge.**

Nothing on the face of either the Original Return or the Amended Return would cause Thonn to question whether his Original Return or the Amended Return was in fact filed with the IRS. The fact any of his returns are not signed is not significant because most returns that are electronically filed by the tax preparers contain no client signatures. The returns referred to in the Amended Returns Declaration signed by Otis Favre are the Original Return and the Amended Return submitted to the GCCF and not the Form 1040A attached as Exhibit "D" to the Special Master's Motion.

### *GCCF Investigation of Thonn's Income and Claim*

On December 15, 2010, Brown Greer (a professional retained by the GCCF) reviewed the Thonn claim submissions and referred the claim to its investigative arm, GuidePost. The investigation was triggered by an alleged inconsistency in the Original Return submitted by Thonn wherein he listed himself as both unemployed and as a fisherman. Materials furnished to Thonn's prior counsel, Andry Lerner, by the Special Master, revealed that the Guidepost investigators were satisfied with the business income asserted by Thonn on the claims form and the unfiled Original Return and Amended Return.

3

The investigative report concluded that the $156,000.00 in business revenue was "probably correct." The investigator's notes base the "no fraud conclusion" on materials separate and apart from Thonn's Original Return and the Amended Return which included: (i) copies of statements from relatives and customers of Thonn; and (ii) bank documents showing direct deposits from Danos & Curole Staffing. The investigative notes concluded that, based upon all of the documentation submitted, "Casey Thonn shrimped in 2009 the entire season and after expenses and depreciation of his boat and equipment he made $55,822.00."

Thonn was advised that Otis Favre was interviewed by GuidePost and that material supporting Thonn's Original Return calculations were provided to the Special Master and were not included in the material submitted to the Court taken by the GuidePost investigators. The Special Master has yet to produce to Thonn and/or his present or former counsel the investigative notes from the Otis Favre interview or the documents GuidePost received from Thonn. The Special Master merely advised that they were furnished with access to the GuidePost data base but that they could not "vouch for its completeness or accuracy" and used this reasoning as the sole basis for not producing the notes or material they received from GuidePost incident to the Otis Favre interview or documentation.

### *Summary of Claims Submitted by Casey Thonn*

Casey Thonn is a commercial fisherman that suffered losses as a result of the Oil Spill. Thonn's prior counsel, Andry Lerner, filed five claims on his behalf. As of October 13, 2013, Thonn had received three settlement checks: VoO settlement check in the amount of $49,400.00 (Claim 20741), a Seafood Vessel Owner settlement check in the amount of $166,652.10 (Claim 19690) and a Boat Captain settlement check in the amount of $190,350.25 (Claim 19691)—a total of $406,402.35

Claims on behalf of Thonn were filed with the GCCF on or about March 28, 2011. The 2009 Original Return and an Amended 2009 tax return were filed with the both the GCCF and the DHECC. Thonn and his prior counsel submitted additional financial material to the GCCF to substantiate Thonn's business revenue in 2009.

In April of 2013, after Casey Thonn retained Andry Lerner to represent him in his claim, Andry Lerner, on behalf of Thonn, filed a claim with the DHCC. The DHCC replaced GCCF as the party reviewing and addressing the claims against BP pursuant to the settlement agreement approved by this Court. When the claim form was filed with the DHCC the documentation that

4

was contained in the GCCF Thonn file, including the Original and Amended Returns, were electronically transferred over to the DHCC.

On June 19, 2012, Coastal Claims Group ("Coastal") was retained by Thonn's prior counsel, Andry Lerner, to prepare an expert report for Thonn's Vessel Owner and Boat Captain's claims. Coastal prepared compensation calculations for the Vessel Owner and Boat Capital claims asserted by Thonn. The report was based upon the Original Return and the Amended Return and other documentation previously submitted to the GCCF.

Ultimately, after review by BP and an appeal, the Thonn claims were allowed. The damages received by Thonn incident to his claim are the following:

    Claim 19690 - $166,652.10

    Claim 19691 - $190,350.25

    Claim 20741 - $ 49,400.00

Out of the damage awards, the following disbursements were made:

1. Claim ID 19690

| | |
|---|---:|
| 1. Amount Received on Claim | $166,652.10 |
| 2. Attorneys Fee – Andry Lerner | ($30,330.42) |
|     (a) Andry Lerner | $ 16,665.21 |
|     (b) Glen Lerner & Associates | $ 16,665.21 |
|         (i) Paid to Sutton | $ 16,665.21 |
| 3. Coastal | ($ 9,440.00) |
| 4. Andry Law Group Postage | ($ 13.96) |
| Net to Casey Thonn | $123,367.73 |

2. Claim ID 19691

| | |
|---|---:|
| 1. Amount Received on Claim | $190,350.25 |
| 2. Attorney Fees | |
|     (a) Andry Lerner | $ 19,035.02 |
|     (b) Glen Lerner Associates | $ 19,035.02 |
|         (i) Paid to Sutton | $ 19,035.02 |
| 3. Andry Law Group 3 ($ 4,840.10) | |
| Net to Casey Thonn | $147,431.55 |

5

3. Claim ID 20741

|   |   |
|---|---|
| 1. Amount Received on Claim | $ 49,400.00 |
| 2. Andry Lerner | $ 4,940.00 |
| 3. Glen Lerner & Associates | $ 4,940.00 |
|    (i) Paid to Sutton | $ 4,940.00 |
| 4. Coastal Claims | $ 1,792.50 |
| Net to Casey Thonn | $ 37,993.36 |

Casey Thonn was not aware that any funds from any of his settlements would be paid to Sutton until after his claim was settled for several months and/or he was contacted by the Special Master.

## LAW AND ARGUMENT

### The Special Master's Filing Exceeds His Rule 53 Authority

The Special Master's Motion must be dismissed for a threshold reason: he lacks the authority under Rule 53 to file the Motion. As an officer of the Court, the Special Master does not have the power to act as a litigant, any more than the Court itself does.

### Declaration Submitted by the Special Master in Support of the Special Master's Motion is Inadmissible Hearsay

In support of the Special Master's Motion is a declaration of Lloyd Day that contains his recollection of his interviews with Otis Favre, Margaret Favre, Joell E. Offner, and Charles Sunny Nuccio for events that occurred over three or four years ago. Each statement in the declaration attributable to the four people is inadmissible hearsay and lacks any credibility or evidentiary value. In connection with the aforementioned interviews, the Special Master has not submitted to the Court and has not provided counsel or any of the parties copies of the interview notes or transcripts.

The statements attributable to Otis Favre and Margaret Favre warrant the following observations that would be material with respect to the witnesses' credibility when this matter is tried and witnesses are put under oath:

(1) A comparison of Paragraph 4 of the Day Declaration with Paragraph 6 of the Day Declaration reveals that Otis Favre prepared the Original Return and the Amended Return and that the 1040A was prepared by his wife. The fact that the returns were prepared by two different people could explain why Otis Favre could not explain the 1040A and his wife did not believe Thonn had any revenue;

(2) Why did Otis Favre prepare the Original Return and the Amended Return and certify under penalty of perjury in the Amended Return that the business income in the Original Return and the Amended Return were true and correct if he believed that Thonn was unemployed or had no business income;

(3) The Amended Return was prepared by Otis Favre after the 1040A form was prepared and filed. A review of the three returns, the Investigator's notes, and Mancuso Affidavit raise questions that go to the issue of whether Thonn committed fraud when he claimed $156,000.00 of business income. The questions are the following:

   (a) On what documents did Otis Favre base the business income figures in the Original Return and Amended Return; and

   (b) Did Otis Favre, when he prepared the Amended Return, know that a 1040A had been prepared by his wife and filed with the IRS that did not reflect $156,000.00 of business income;

(4) What is meant by Joell Offner's contention that Thonn was unemployed? Did she mean that he was not employed by a third person but was in fact "self-employed";

(5) Did Thonn have a bank account or source of income in 2009 that his ex-wife Joell E. Offner knew nothing about? The marital issues between Thonn and his wife Joell Offner at the time cast doubt on how much Joell Offner truly knew about Thonn's business;

(6) The statements attributable to Nuccio only establish a question of Nuccio's credibility to be weighed by a Court. It is impossible to tell from the Day Declaration exactly how much Nuccio paid Thonn in 2009;

(7) A conflict exists between the GuidePost notes that conclude that no fraud was committed by Thonn and the Day declaration that implies that fraud was committed by Thonn. Without an evidentiary hearing, it is impossible for this Court to determine which of the two investigators' findings are correct.

7

## CONCLUSION

Based upon the foregoing, this Court should deny the Motion of the Special Master Louis Freeh for the Return of Payments Made to Casey Thonn, or alternatively, set the matter for an evidentiary hearing.

Respectfully submitted,


/S/ Frank G. DeSalvo
_____
**FRANK G. DeSALVO (#4898)**
739 Baronne Street
New Orleans, Louisiana 70113
Telephone:  (504) 524-4191
Facsimile:   (504) 821-0036

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing Response of Casey Thonn to the Motion of the Special Master For the Return of Payments Made to Casey Thonn to has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Lousiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 25 day of March, 2014.

/s/ Frank G. DeSalvo
_____