UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * | MDL 2179 Section J |
| This Document Applies to: | * * | Judge Barbier |
| *No. 12-970, Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al* | * * * | Mag. Judge Shushan |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**COASTAL CLAIMS GROUP, LLC'S SUR-REPLY
TO THE REPLY OF THE SPECIAL MASTER'S MOTION FOR RETURN
OF PAYMENTS MADE TO CASEY C. THONN AND OTHERS**

NOW COMES Coastal Claims Group, LLC ("CCG"), through undersigned counsel, and respectfully requests that this Honorable Court dismiss the *Motion of the Special Master for Return Payments Made to Casey C. Thonn and Others*, as it relates to CCG.  More specifically, CCG presents this Sur-Reply to this Court in response to the Special Master's assertions claiming that CCG was paid based on a contingency fee basis and that, due to this assertion, the law requires an order forcing CCG to repay payments it received based upon the theory of restitution.  For the reasons more fully set forth below, CCG requests that this Court grant its *Motion to Dismiss Motion of the Special Master for Return Payments Made to Casey C. Thonn and Others*.

**I.     FACTS**

The pertinent facts have been fully addressed in CCG's *Motion to Dismiss (Rec. Doc.   )* and are specifically adopted as if copied herein, in extenso.  In response to CCG's *Motion to Dismiss*, the Special Master has filed a *Reply of the Special Master to Motion to Dismiss of*

1

*Coastal Claims Group, LLC to Motion for Return of Payments Made to Casey C. Thonn and Others*. In this Reply, the Special Master makes the incorrect and misleading assertion that CCG was paid by Andry Lerner pursuant to a contingency fee agreement. Based on this false premise, the Special Master cites inapplicable law from other jurisdictions to make a misleading argument that CCG should be required to pay money to the DHECC (an entity from which CCG was never paid) for legitimate and good faith work it performed for a law firm and which was billed on an *hourly basis.* The law of this jurisdiction clearly provides that CCG cannot be forced to repay fees for good faith and honest work that it performed in connection with Casey Thonn's ("Thonn") claims. To combat this very inconvenient legal problem, the Special Master has diligently cited law from other jurisdictions and ignored the controlling laws from Louisiana, the Eastern District of Louisiana, or the Fifth Circuit. As will be addressed below, these arguments raised in the Special Master's Reply are immaterial to CCG's Motion as the Special Master has misconstrued the facts and law, while completely ignoring the law of this jurisdiction.

## II.  LAW AND ANALYSIS

The Special Master's Reply represents to this Court that CCG was paid based on a contingency fee agreement and, therefore, the law provides a direct remedy against CCG for "restitution" to an entity that did not pay and was not a party to the agreement. However, the Special Master's characterization of the agreement between CCG and Andry Lerner as a contingency fee agreement is a blatant and offensive mischaracterization of evidence and completely contrary to even a cursory reading of the agreement and the invoice issued to Andry Lerner. However, even if the agreement between CCG and Andry Lerner was a contingency fee agreement (which CCG vehemently disputes) the controlling law of this jurisdiction does not provide the Special Master an avenue of recovery.

The allegations of the Special Master in his Reply are flawed for three reasons.  First, CCG's fee was **not** based upon a contingency fee arrangement, which the Special Master points out is the "relevant factor" in this determination.  Since CCG was not paid upon a contingency fee and the Special Master admits that all of his argument is based upon the fee being contingent, all legal support offered by the Special Master is fatally flawed.  However, purely in the alternative, the law cited by the Special Master specifically pertains to attorney's fees, not other professionals.  Third, the law in Louisiana is profoundly different than the law of other states cited by the Special Master.

**1. CCG was not paid based upon a contingency fee agreement**

All of the Special Master's allegations and cited law rely upon the false factual premise that CCG was to be paid based upon a contingency fee.  According to Black's Law Dictionary, a contingency fee is "usually calculated as a percentage of the client's net recovery." Black's Law Dictionary (9th ed. 2009).  Under Louisiana law, a contingency fee means an agreed upon fee that is either "fixed or contingent." La.R.S. 37:218(B).  La.R.S. 37:218 is the Louisiana statute that defines what is considered a contingency fee and the rules governing contingency fees under Louisiana law.  It should be noted that these laws are directed toward attorneys, not CPA's, however these laws provide guidance as to whether a fee is contingent or not.[1]

The Middle District of Louisiana decided the exact matter that is at issue in this dispute; whether a particular set of fees should be considered a contingency fee.  *In re Aldar Investmetns, Inc.*, 330 B.R. 540 (Bankr. M.D.La. 2005). There the court determined that the Louisiana legislature was quite specific and that "[o]nly fees that are *fixed* or *contingent*" are to be

---

[1] Although there are no Louisiana statutes regarding contingency fees related to professionals other than attorneys, the relationship between an attorney and his client is a much closer relationship than that between the attorney's client, Thonn in this case, and a CPA, CCG in this matter.  With this distant relationship in mind, the law would clearly hold attorney's under closer scrutiny than a CPA, and thus, if an attorney's fee is not considered a contingency fee, then in no way would a Louisiana court view the payments to CCG as a contingency either.

construed as contingency fees.  *Id*. at 546.  Specifically, "**the language of the statutes does not suggest that they apply to fees generated on an hourly basis, which by their nature are not 'fixed,' and not contingent** on the outcome of the litigation."  *Id.* at 547 (emphasis added) (noting that the operation of La.R.S. 37:218 "giving attorneys 'an interest in the subject matter of a suit …' as their fee is contrary to the customary operation of an hourly billing arrangement between client and attorney.").  Analyzing the intent of the Louisiana legislature, the court held that:

> Had the legislature intended that R.S. 37:218 apply to engagements involving fees billed by the hour, it could have used the word *hourly* in the statute. Alternatively, the drafters of R.S. 37:218 could have encompassed a wider range of fee agreements subject to the privilege by not using any limiting, specific terms such as *fixed* or *contingent,* to describe the fees the privilege protects. However, to suggest that hourly fees are included in the provisions of the statute impermissibly stretches the statute's plain language. The reasonable conclusion is that the term *fee* as defined in La. R.S. 37:218 does not include fees that are billed on an hourly basis.

*Id.* at 547.

Clearly CCG and Andry Lerner, LLC entered into an agreement by which CCG would charge Andry Lerner, LLC based upon hours worked on each file.  The "Service Invoice" generated by CCG and sent to Andry Lerner, LLC for work performed on the Casey Thonn account, breaks down the amount of money charged in quarter-hour increments.  *See Service Invoice attached hereto as Exhibit A*.  The invoice details the total hours worked by adjusters, administrators, and CPAs.  The administrators and adjustors were billed at a rate of $110.00 an hour while the CPAs were billed at $160.00 an hour.  This agreement is an hourly fee agreement – plain and simple.  How the Special Master could argue to this Court that an invoice generated based upon the hourly billing for work performed is a "contingency fee" agreement is incredulous.

4

In what can only be perceived as an effort to mislead this Court, the Special Master takes language in the agreement between CCG and Andry Lerner completely out of context and misconstrues the language. That language is as follows:

> Qualifying files – for all files deemed y CCG to qualify as compensable under the terms of the Court Approved Settlement Agreement, upon receipt of a completed claim package from CCG *and following settlement of the claim*, **[Andry Lerner] will issue payment of said invoices payable by [Andry Lerner] to CCG** *within 15 days of [Andry Lerner's] receipt of settlement funds* on said claims from the CSCP or other third party. Any invoice amounts that are not directly paid by the CSCP will be considered as an expert fee and added as an expense to the claim.

The Special Master emphasized for the Court the language italicized, but specifically left out of its emphasis the bold and underline language which place the italicized language in context and make it clear that the agreement merely refers to the date that the invoice amount is **DUE** not that the amount is contingent upon settlement. Furthermore, the Special Master cites the CPA code of conduct which provides the definition of a contingent fee as one "in which the **amount** of the fee is otherwise dependent upon the finding or result of such service. AICPA Code of Professional Conduct § 302 (emphasis added).

As the law and definitions cited above convey, the relevant factor for contingency fee agreement is that the **"amount"** of the fee is contingent upon the outcome of the claim. The CCG contract has no mention of the amount due being conditioned on the outcome of the claim, it merely states that invoiced hourly fees are due within fifteen (15) days of Andry Lerner receiving payment of the settlement amount[2]. Nowhere does the contract say that if the claim is denied then CCG does not get paid. Furthermore, the contract specifically states that any monies billed by CCG that are not paid by the DHECC are to be considered an "expert fee." Clearly,

---

[2] In practice, it is not uncommon for experts to agree to wait until the final determination of litigation to collect their fees. Practically speaking, this allows experts to garner more work from the plaintiff's bar by not requiring the attorney to over extend on litigation fees. However, that does not mean that the amount of the fee is then contingent on the litigation.

5

any payments invoiced to Andry Lerner by CCG had to be paid regardless of the outcome of the settlement.

The fact that CCG billed Andry Lerner, LLC based on an hourly rate and not based on a contingency fee defeats all arguments made by the Special Master in his Reply that this was a contingency fee agreement. The Special Master recognizes that the "relevant factor" in his argument is that CCG was paid based on a contingency fee, and because this allegation is clearly wrong, the Special Master has failed to raise any legal or factual argument for why this Court should not dismiss CCG from this baseless and erroneous claim for restitution.

2. **The law cited by the Special Master precludes CCG from paying restitution**

Even if the Special Master were correct that the CCG agreement was a contingency fee agreement, his arguments would still fail. The Special Master cites case law, none from any jurisdiction relevant to this proceeding, which the Special Master claims gives him the right to restitution from CCG. However, each of these cases is directly applied to attorneys, not other professionals like CCG. The Special Master further cites to *Comment k* of Section 74 of the Restatement (First) of Restitution. However, the Kansas court that the Special Master cites determined that this Comment is only relevant in cases that involved contingency fees because "the attorney assumes, along with the client, the inherent risks of litigation." *Excel Corp. v. Jimenez*, 269 Kan. 291, 302 (2000).

CCG did not enter into any contractual agreement with Thonn nor did CCG enter into a contingency fee arrangement with Andry Lerner. Thus, *Comment k* is irrelevant to this litigation. The applicable comment from the restatement is *Comment h*. That comment reads:

> An attorney or other agent of the judgment creditor who receives payment from the judgment debtor … and who pays it to the judgment creditor before reversal **is not liable if the judgment was valid before reversal and if he had no knowledge of any fraud used in securing it**. Under the same conditions he is

6

> under no duty to repay money which he received on account of the judgment creditor and which he retains as payment for services or for a debt owed by the judgment creditor to him since he received the money as a bona fide purchaser.

*Comment h* to Section 74 of the Restatement (First) of Restitution (emphasis added).

CCG had no knowledge of any fraudulent conduct on the part of Thonn until the Special Master served a subpoena on CCG. Therefore, according to the Restatement cited by the Special Master, CCG is under no duty to repay payments received for services it performed in favor of the judgment creditor, Thonn.

### 3.  CCG cannot be ordered to pay restitution under Louisiana law

The Special Master cites a bevy of case law from jurisdictions including the Eighth Circuit, Kansas, Colorado, and New York to support his allegations that CCG can be ordered to pay restitution **if** payment is made under a contingency fee arrangement. However, the Special Master fails to direct this Court to the law of Louisiana. Why? The law that applies to this controversy is clearly the law of Louisiana and/or the Fifth Circuit. The Special Master has yet to cite a single case, statute, or other source of law that controls this dispute because the law that controls this proceeding is unfavorable to the Special Master's cause. Louisiana law clearly instructs that CCG cannot be ordered to repay monies it received in good faith for services rendered pursuant to a claim for restitution. Specifically, even though CCG is not an attorney and their relationship to Thonn is even further removed than that of an attorney, Louisiana courts have held that attorneys are third parties to the litigation, and as third parties, an attorney cannot be pursued under a theory of restitution. *Great American Indemnity Co. v. Dauzat*, 157 So.2d 308 (La.App. 3 Cir. 1963); *Louisiana Health Service & Indemnity Co. v. Cole*, 418 So.2d 1357 (La.App. 2 Cir. 1982). The law of Louisiana should be all this Court needs to end these needless and meritless proceedings against a good faith vendor.

7

## CONCLUSION

Wherefore, CCG prays that this Court dismiss the Special Master's *Motion for Return of Payments to Casey C. Thonn and Others* as it relates to CCG. The Special Master's Reply characterizing the agreement between CCG and Andry Lerner as a contingency fee agreement is clearly erroneous. CCG did not have a contingency fee agreement with Andry Lerner. CCG billed Andry Lerner on an hourly basis, and therefore the arguments raised in the Special Master's Reply are completely meritless. Moreover, even if the agreement were a contingency fee agreement, under the law of this jurisdiction, CCG cannot be ordered to repay monies that it was paid in good faith for services.

Respectfully submitted,

s/Jason R. Kenney
STAINES & EPPLING
ANTHONY J. STAINES (12388)
JASON R. KENNEY (29933)
COREY C. PARENTON (32918)
3500 N. Causeway Blvd., Suite 820
Metairie, LA  70002
Telephone:  (504) 838-0019
Fax: (504) 838-0043
Counsel for Coastal Claims Group, LLC

## CERTIFICATE OF SERVICE

I do hereby certify that on the 31st day of March, 2014 a copy of the foregoing pleading was filed electronically with the Clerk of Court using CM/ECF System. Notice of this filing will be sent to counsel by operation of the court's electronic system.

s/Jason R. Kenney