

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re: Oil Spill by the Oil Rig        MDL NO. 2179
       "Deepwater Horizon" in the Gulf
       of Mexico, on April 20, 2010        SECTION J

Applies to: *All Cases*        JUDGE BARBIER
       MAGISTRATE JUDGE SHUSHAN

---

REPORT BY THE CLAIMS ADMINISTRATOR OF THE DEEPWATER HORIZON ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT ON THE STATUS OF CLAIMS REVIEW

| STATUS REPORT NO. | 19 | DATE | March 31, 2014 |
|---|---|---|---|

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In re:  Oil Spill by the Oil Rig               MDL NO. 2179
   "Deepwater Horizon" in the Gulf
   of Mexico, on April 20, 2012          SECTION J

Applies to: *All Cases*                      JUDGE BARBIER
                 MAGISTRATE JUDGE SHUSHAN

## REPORT BY THE CLAIMS ADMINISTRATOR OF THE DEEPWATER HORIZON ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT ON THE STATUS OF CLAIMS REVIEW

### STATUS REPORT NO. 19, DATED MARCH 31, 2014

The Claims Administrator of the Deepwater Horizon Economic and Property Settlement Agreement (Settlement Agreement) submits this Report to inform the Court of the status of the implementation of the Settlement Agreement as of February 28, 2014[1].  The Claims Administrator will provide any other information in addition to this Report as requested by the Court.

### I.  STATUS OF THE CLAIMS REVIEW PROCESSES AND CLAIM PAYMENTS

**A. Claim Submissions.**

**1. Registration and Claim Forms.**

The Claims Administrator opened the Settlement Program with needed functions staffed and operating on June 4, 2012, just over 30 days after the Claims Administrator's appointment. The Claims Administrator's Office (CAO) has received 210,932 Registration Forms and 259,884 Claim Forms since the Program opened, as shown in the Public Statistics for the Deepwater

---

[1] The Claims Administrator has adjusted the timing of the data used in creating the Court Status Report to coincide with the end of the calendar month in order to better reflect the status of the Program over the relevant month. Because of this adjustment, for Court Status Report No.19, the data provided since the last report in the tables below will not cover a full month.  However, in future Reports, the tables will provide the monthly change in data.

Horizon Economic and Property Damages Settlement (Public Report) attached as Exhibit A. Additionally, claimants have begun, but not fully completed and submitted, 12,702 Claim Forms. The Forms are available online, in hard copy, or at Claimant Assistance Centers located throughout the Gulf.  Of the total Claim Forms submitted and the Claim Forms begun but not fully completed and submitted, 9% have been filed or are being filed within the Seafood Program, 17% have been filed or are being filed within the Individual Economic Loss (IEL) framework, and 39% have been filed or are being filed within the Business Economic Loss (BEL) framework (including Start-Up and Failed BEL Claims).  *See* Ex. A, Table 2.  Deepwater Horizon (DWH) staff at the Claimant Assistance Centers assisted in beginning and/or completing 36,520 of these Claim Forms.  *See* Ex. A, Table 3.  The thirteen Claimant Assistance Centers that are currently open also provide other forms, including Personal Representative Forms, Subsistence Interview Forms, and Sworn Written Statements and Authorizations.

> **2.   Minors, Incompetents, and Deceased Claimants.**

The table below describes the claims filed on behalf of minors, incompetents, and deceased claimants in the Settlement Program.

| Table 1.  Minors, Incompetents, and Deceased Claimants. | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | Minor Claimants | | Incompetent Claimants | | Deceased Claimants | |
| | | Total | Change Since Last Report | Total | Change Since Last Report | Total | Change Since Last Report |
| 1. | Claims Filed | 61 | 0 | 93 | 0 | 442 | +38 |
| 2. | Claims Within GADL Review | 2 | 0 | 1 | 0 | N/A | N/A |
| 3. | Eligible for Payment | 12 | +1 | 50 | 0 | 181 | +2 |
| 4. | Approval Orders Filed | 8 | 0 | 48 | +2 | 162 | +2 |

3.  **Third Party Claims.**

The CAO receives, processes, and pays the claims and/or liens asserted by attorneys, creditors, governmental agencies, or other third parties (Third Party Claims) against the payments to be made by the CAO to eligible claimants under the Settlement Agreement in accordance with Court Approved Procedure Order No. 1 (as entered September 9, 2012, and amended March 11, 2013).

The CAO requires a third party claimant to submit enforcement documentation soon after the initial Third Party Claim assertion, and the CAO notifies the claimant of an Enforced Third Party Claim against a potential Settlement Payment as soon as the CAO receives sufficient documentation of such an assertion, regardless of where the underlying Settlement Program Claim is in the review process.  The claimant may, but is not required to, object to the Third Party Claim at this time.  After the CAO sends an Eligibility Notice to the affected Settlement Program Claimant against whom an Enforced Third Party Claim has been asserted (meaning that both the underlying claim and the Third Party Claim are payable), the CAO sends the claimant/claimant's attorney and the third party claimant a Notice of Valid Third Party Claim, and the claimant has twenty (20) days to notify the CAO of any objection to the Third Party Claim.

The CAO continues to process and pay Third Party Claims as reflected in Table 2 below.

| | Table 2.  Third Party Claims. | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Type of Third Party Claim ("TPC")** | **TPCs Asserted** | **TPCs Asserted Against Claimants With a DHECC ID** | **TPCs[2] Asserted Against Payable Claims** | **Valid TPCs Asserted Against Payable Claims** | **Claims with TPCs Paid/ Ready for Payment (TPClmt)** | **Claims with TPCs Paid/ Ready for Payment (Clmt)** |
| 1. | **Attorney's Fees** | 2,135 | 1,939 | 410 | 263 | 261 | 557 |
| 2. | **IRS Levies** | 708 | 657 | 62 | 51 | 49 | 83 |
| 3. | **Individual Domestic Support Obligations** | 376 | 239 | 100 | 75 | 77 | 101 |
| 4. | **Blanket State-Asserted Multiple Domestic Support Obligations** | 4 states | N/A | N/A | N/A | 0 | 0 |
| 5. | **3rd Party Lien/Writ of Garnishment** | 750 | 426 | 37 | 12 | 7 | 7 |
| 6. | **Claims Preparation/ Accounting** | 4,447 | 4,239 | 111 | 75 | 29 | 39 |
| 7. | **TOTAL** | **8,416** | **7,500** | **720** | **476** | **423** | **787[3]** |

Any disputes over Third Party Claims must be resolved by agreement of the parties or through a dispute resolution process.  The CAO sends a Notice of Third Party Claim Dispute to all parties involved in a disputed Valid Third Party Claim.  If the claimant and third party claimant are unable to resolve their dispute by agreement and if the dispute is over a Third Party Claim for attorney's fees or fees associated with work performed in connection with a Settlement Program Claim, the claimant and third party claimant may participate in the Third Party Claims Dispute Resolution Process and will receive a Request for Third Party Claim Dispute Resolution Form with the Notice of Third Party Claim Dispute.  To date, the CAO has sent 112 Notices of Third Party Claim Dispute to notify parties with eligible disputes that they may submit a Request Form if they are unable to resolve their dispute by agreement.

---

[2] Although the CAO will not know whether a Valid TPC is asserted against a payable claim until the Eligibility Notice goes out, the streamlined enforcement requirements allow the CAO to assess validity earlier in the process.
[3] If the TPC amount is in dispute, the CAO pays the claimant the undisputed portion of the Settlement Payment. Also, a TPC can be asserted against one or more Settlement Program Claims.  For these reasons, this total may not be equal to the total of the two preceding columns.

Table 3 provides additional information about participation in the Third Party Claims

Dispute Resolution Process.

| Table 3.  Third Party Claims Dispute Resolution Process. | | | |
|---|---|---|---|
| Request Forms Received for Eligible Disputes | Records Provided to Adjudicator | Disputes Withdrawn | Final Decisions[4] |
| 82 | 60 | 41 | 17 |

To date, the CAO has removed 1,481 lien holds following parties' releasing their claims

or resolving disputes.[5]

**B.  Claims Review.**

The CAO completed its first claim reviews and issued its first outcome notices on July

15, 2012, and its first payments on July 31, 2012.  There are many steps involved in reviewing a

claim so that it is ready for a notice.

**1.   Identity Verification.**

The Claimant Identity Verification review is the first step in the DWH claims review

process.  The Identity Verification team conducts searches based on the Taxpayer Identification

Numbers (TIN) of claimants to confirm that the claimant's name and TIN exist and correspond

with each other.  The Identity Verification team has initiated verifications for 184,844 claimants.

Of those, the CAO has matched the TIN and claimant's name to public records databases and

verified identity for 99,143 claimants from the initial query through LexisNexis and/or Dun &

Bradstreet.  The CAO has reviewed the remaining 85,701 claimants to determine whether

claimant identity could be verified after searching for typographical errors and name changes or

---

[4] Several factors impact when a Dispute is ripe for the Adjudicator to issue a Final Decision, including whether the Adjudicator has requested additional documentation or granted a Telephonic Hearing.
[5] This number may fluctuate because of reassertions of released or disallowed liens.

after reviewing official documentation from the Internal Revenue Service or Social Security Administration. Of the remaining 85,701 claimants, the CAO has verified the identity of 81,652.

If the CAO cannot verify a claimant's identity after review, but it appears that additional documentation may allow the CAO to verify a claimant's identity, the CAO issues a Verification Notice to the claimant requesting such documentation. The Verification Notice types include the SSN Notice, ITIN Notice, and EIN Notice. The table below contains information on the number of claimants verified by the CAO during an initial Identity Verification review in addition to the type and number of TIN Verification Notices issued when the CAO could not verify identity after the initial review.

| Table 4. Identity Verification Review Activity. | | | | | |
|---|---|---|---|---|---|
| | **Outcome** | **Claimants Reviewed Since Last Report** | **Monthly Percentage** | **Total Claimants Reviewed** | **Total Percentage** |
| 1. | **Verified During Review** | 1,767 | 78.36% | 63,276 | 77.45% |
| 2. | **SSN Notice Issued** | 67 | 2.97% | 2,662 | 3.26% |
| 3. | **ITIN Notice Issued** | 5 | 0.22% | 431 | 0.53% |
| 4. | **EIN Notice Issued** | 416 | 18.45% | 15,325 | 18.76% |
| 5. | **Total Reviewed** | **2,255** | **100%** | **81,694** | **100%** |

The CAO reviews the documentation that claimants submit in response to the Verification Notice to determine whether it is sufficient to verify identity. The table below contains information on the number of Verification Notices issued, the number of claimants whose identities the CAO has verified after claimants responded to the Notice, and the average time, in days, it takes the claimant to provide documentation sufficient to verify the claimant's identity after the CAO issued the Notice.

| Table 5. Identity Incompleteness Activity. | | | | | |
|---|---|---|---|---|---|
| | **Notice Type** | **Notices Issued** | **Number Cured** | **Percentage Cured** | **Days to Cure** |
| 1. | **SSN Notice** | 2,662 | 2,106 | 79.11% | 51 |
| 2. | **ITIN Notice** | 431 | 369 | 85.61% | 31 |
| 3. | **EIN Notice** | 15,325 | 12,897 | 84.16% | 32 |
| 4. | **Total Issued** | **18,418** | **15,372** | **83.46%** | **38** |

When a claimant submits a Subsistence claim stating that he or she fished to sustain his or her basic personal and/or family's dietary needs, the CAO verifies the identities of the claimed family members.  To do so, the CAO attempts to match each claimed family member's name and TIN to ensure that the family member exists and that the family member is who the claimant says he or she is.  The CAO first attempts to match each family member's name and TIN to public records databases through LexisNexis.  To date, the CAO has verified through LexisNexis 44,971 family members' names and TINs, which were associated with 18,433 claims.  If a family member's identity cannot be verified through LexisNexis, the CAO reviews the claim file to determine whether the family member's identity can be verified using information contained within the file.  After each family member's identity has been verified or reviewed, the Subsistence team reviews the claim to determine eligibility for payment.

| Table 6.  Subsistence Family Member Identity Verification Activity. | | | | | |
|---|---|---|---|---|---|
| | | Awaiting Review | Change from Last Report | Reviewed | Change from Last Report |
| 1. | Number of Claims | 2,358 | (1,977) | 5,047 | 2,413 |
| 2. | Number of Family Members | 9,341 | (7,733) | 21,108 | 9,552 |

## 2.  Employer Verification Review (EVR).

The EVR process ensures that all employees of the same business are treated uniformly and that each business is placed in the proper Zone.  The review also walks through the intricate analysis necessary to assign the proper NAICS code to a business.  The EVR team has completed the EVR analysis for 216,125 businesses and rental properties.

From February 1, 2014, through February 28, 2014, the team completed the EVR process for 4,662 businesses and rental properties.  The CAO identified an average of 181 new businesses and rental properties to review per day and completed the EVR review for an average

of 167 businesses and rental properties per day.  The CAO continues to review new businesses and rental properties on a first-in, first-out basis.

### 3.  Exclusions.

The Exclusions review process ensures that claims and claimants excluded under the Settlement Agreement are appropriately denied.  The Exclusions team guides the reviewers and the EVR team when questions arise during the Exclusion review.  Table 7 below shows the number of Denial Notices issued to date for each Exclusion Reason and the team responsible for making such a determination.

| Table 7.  Exclusions. | | | | |
|---|---|---|---|---|
| | **Exclusion Reason** | **Team Responsible** | **Denial Notices Since Last Report** | **Total Denial Notices** |
| 1. | GCCF Release | Exclusions | 34 | 7,399 |
| 2. | BP/MDL 2179 Defendant | | 6 | 334 |
| 3. | US District Court for Eastern District of LA | | 0 | 22 |
| 4. | Not a Member of the Economic Class | Claims Reviewers | 0 | 230 |
| 5. | Bodily Injury | | 0 | 6 |
| 6. | BP Shareholder | | 0 | 8 |
| 7. | Transocean/Halliburton Claim | | 0 | 0 |
| 8. | Governmental Entity | Claims Reviewers/ EVR | 7 | 757 |
| 9. | Oil and Gas Industry | | 40 | 949 |
| 10. | BP-Branded Fuel Entity | | 0 | 42 |
| 11. | Menhaden Claim | EVR | 0 | 18 |
| 12. | Financial Institution | | 3 | 252 |
| 13. | Gaming Industry | | 7 | 707 |
| 14. | Insurance Industry | | 2 | 180 |
| 15. | Defense Contractor | | 5 | 358 |
| 16. | Real Estate Developer | | 11 | 221 |
| 17. | Trust, Fund, Financial Vehicle | | 0 | 14 |
| 18. | **Total Denial Notices from Exclusions** | | **115** | **11,497** |

4. **Claimant Accounting Support Reviews.**

A special team handles Claimant Accounting Support (CAS) reviews.  CAS reimbursement is available under the Settlement Agreement for IEL, BEL, and Seafood claims. After a claim has been determined to be payable and the Compensation Amount has been calculated, the CAS team reviews accounting invoices and CAS Sworn Written Statements submitted by the claimant.  Table 8 includes information on the number of CAS reviews the CAO has completed to date, whether the Accounting Support documentation was complete, and the dollar amounts reimbursed for each Claim Type.

| | Table 8.  Claimant Accounting Support Reviews. | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **Claim Type** | **CAS Review Result** | | | | **Total CAS Reviews** | | **CAS $ Amount Reimbursed** | |
| | | **Complete** | | **Incomplete** | | | | | |
| | | **Since Last Report** | **Total to Date** | **Since Last Report** | **Total to Date** | **Since Last Report** | **Total to Date** | **Since Last Report** | **Total to Date** |
| 1. | **BEL** | 104 | 10,370 | 11 | 1,029 | 115 | 11,399 | $0.00 | $15,628,756.96 |
| 2. | **IEL** | 42 | 2,593 | 7 | 408 | 49 | 3,001 | $689.00 | $329,687.28 |
| 3. | **Seafood** | 18 | 3,858 | 0 | 773 | 18 | 4,631 | $1,447.96 | $1,563,016.49 |
| 4. | **TOTAL** | **164** | **16,821** | **18** | **2,210** | **182** | **19,031** | **$2,136.96** | **$17,521,460.73** |

5. **Quality Assurance Review.**

The Quality Assurance (QA) process addresses three fundamental needs of the Settlement Program: (a) it ensures that all claims are reviewed in accordance with the provisions of the Settlement Agreement by targeting anomalous claim results through data metrics analysis; (b) it provides a mechanism to monitor reviewer performance and the tools necessary to efficiently and effectively provide feedback to reviewers; and (c) it identifies areas of review resulting in high error rates that require retraining or refined review procedures and data validations.

The CAO has implemented a reviewer follow-up process for all claim types.  The CAO provides daily follow-up to reviewers in the event a QA review of a particular claim produces a result different than that of the original review.  The CAO also has a report that identifies specific reviewers who require retraining and reveals whether there are issues that warrant refresher training for all reviewers.  Table 9 shows, by Claim Type, the number of claims identified for QA review through the database QA process, as well as the number of QA reviews that have been completed, the number in progress, and the number awaiting commencement.

| | Table 9.  Quality Assurance Reviews. | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Claim Type** | **Total Claims Needing QA To Date** | **QA Reviews Completed** | **% of QA Reviews Completed** | **QA Reviews in Progress** | **Claims Awaiting QA Review** | **QA Reviews Completed Since Last Report** |
| 1. | Seafood | 25,174 | 25,027 | 99% | 112 | 35 | 71 |
| 2. | IEL | 27,405 | 26,101 | 95% | 1,040 | 264 | 262 |
| 3. | BEL | 24,305 | 24,085 | 99% | 156 | 64 | 251 |
| 4. | Start-Up BEL | 1,975 | 1,958 | 99% | 8 | 9 | 15 |
| 5. | Failed BEL | 2,066 | 2,038 | 99% | 9 | 19 | 7 |
| 6. | Coastal RP | 20,176 | 20,159 | 100% | 9 | 8 | 147 |
| 7. | RPS | 825 | 825 | 100% | 0 | 0 | 14 |
| 8. | VoO | 7,799 | 7,795 | 100% | 1 | 3 | 21 |
| 9. | Subsistence | 32,968 | 21,378 | 65% | 1,460 | 10,130 | 907 |
| 10. | Wetlands RP | 4,174 | 3,957 | 95% | 35 | 182 | 167 |
| 11. | VPD | 1,420 | 1,417 | 100% | 0 | 3 | 11 |
| 12. | **TOTAL** | **148,287** | **134,740** | **91%** | **2,830** | **10,717** | **1,873** |

### 6.  Claim Type Review Details.

Table 10 provides information, by Claim Type, on the number of claims filed, the number of claims that have been reviewed to Notice, the number of claims remaining to be reviewed to Notice, and the number of claims reviewed to either a Notice or "Later Notice" to date.  Table 10 divides the claims reviewed to a "Later Notice" into separate sections: (1) claims

reviewed following the submission of additional materials by a claimant in response to an

Incompleteness Notice, and (2) claims receiving Notices after the CAO conducts a

Reconsideration review.

| Table 10.  Throughput Analysis of Claims Filed and Notices Issued. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **A. Claims Reviewed to First Notice** | | | | | | | | | |
| | **Claim Type** | **Status of All Claims Filed** | | | | | **Productivity From 2/11/14 Through 2/28/14** | | |
| | | **Total Claims Filed To Date** | **Reviews Completed to Notice or Closed** | | **Claims Remaining to Review** | | **New Claims Filed** | **Avg. Daily Claims Filed** | **Reviews Completed to First Notice** | **Avg. Daily Reviews to First Notice** |
| **1.** | **Seafood** | 24,613 | 24,277 | 99% | 336 | 1% | 27 | 2 | 36 | 2 |
| **2.** | **IEL** | 39,617 | 34,369 | 87% | 5,248 | 13% | 1,141 | 63 | 690 | 38 |
| **3.** | **IPV/FV** | 271 | 254 | 94% | 17 | 6% | 1 | <1 | 0 | 0 |
| **4.** | **BEL** | 93,167 | 47,944 | 51% | 45,223 | 49% | 1,167 | 65 | 2,264 | 126 |
| **5.** | **Start-Up BEL** | 5,173 | 3,722 | 72% | 1,451 | 28% | 74 | 4 | 64 | 4 |
| **6.** | **Failed BEL** | 3,488 | 2,748 | 79% | 740 | 21% | 41 | 2 | 8 | <1 |
| **7.** | **Coastal RP** | 33,707 | 33,012 | 98% | 695 | 2% | 462 | 26 | 507 | 28 |
| **8.** | **Wetlands RP** | 13,585 | 5,339 | 39% | 8,246 | 61% | 200 | 11 | 198 | 11 |
| **9.** | **RPS** | 1,506 | 1,469 | 98% | 37 | 2% | 19 | 1 | 20 | 1 |
| **10.** | **Subsistence** | 34,637 | 11,989 | 35% | 22,648 | 65% | 534 | 30 | 530 | 29 |
| **11.** | **VoO** | 8,703 | 8,642 | 99% | 61 | 1% | 12 | <1 | 19 | 1 |
| **12.** | **VPD** | 1,417 | 1,373 | 97% | 44 | 3% | 2 | <1 | 7 | <1 |
| **13.** | **TOTAL** | **259,884** | **175,138** | **67%** | **84,746** | **33%** | **3,680** | **204** | **4,343** | **241** |
| **B. Claims Reviewed to Later Notice** | | | | | | | | | |
| | **Claim Type** | **Initial or Preliminary Incompleteness Response** | | | **Follow-Up Incompleteness Responses** | | | **Requests for Reconsideration** | | |
| | | **Total Responses** | **Claims with Later Notice** | **Remaining Claims** | **Total Responses** | **Claims with Later Notice** | **Remaining Claims** | **Total Requests** | **Claims with Later Notice** | **Remaining Claims** |
| **1.** | **Seafood** | 5,895 | 5,356 | 539 | 2,795 | 2,532 | 263 | 3,631 | 3,306 | 325 |
| **2.** | **IEL** | 15,797 | 13,575 | 2,222 | 7,621 | 6,102 | 1,519 | 4,730 | 3,908 | 822 |
| **3.** | **IPV/FV** | 89 | 84 | 5 | 34 | 33 | 1 | 38 | 34 | 4 |
| **4.** | **BEL** | 26,006 | 15,656 | 10,350 | 10,124 | 4,590 | 5,534 | 3,909 | 2,556 | 1,353 |
| **5.** | **Start-Up BEL** | 2,160 | 1,572 | 588 | 1,250 | 619 | 631 | 423 | 253 | 170 |
| **6.** | **Failed BEL** | 950 | 726 | 224 | 575 | 300 | 275 | 436 | 302 | 134 |
| **7.** | **Coastal RP** | 5,089 | 4,940 | 149 | 1,417 | 1,356 | 61 | 1,702 | 1,644 | 58 |
| **8.** | **Wetlands RP** | 354 | 246 | 108 | 77 | 57 | 20 | 491 | 385 | 106 |

| | Table 10. Throughput Analysis of Claims Filed and Notices Issued. | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 9. | RPS | 265 | 243 | 22 | 73 | 70 | 3 | 181 | 179 | 2 |
| 10. | Subsistence | 4,990 | 955 | 4,035 | 995 | 113 | 882 | 181 | 83 | 98 |
| 11. | VoO | 920 | 903 | 17 | 384 | 373 | 11 | 621 | 610 | 11 |
| 12. | VPD | 765 | 717 | 48 | 343 | 323 | 20 | 233 | 219 | 14 |
| 13. | TOTAL | 63,280 | 44,973 | 18,307 | 25,688 | 16,468 | 9,220 | 16,576 | 13,479 | 3,097 |

C. **Claim Payments.**

1. **Notices and Payments.**

The CAO issued its first payments to claimants on July 31, 2012. Tables 4 and 5 of the Public Report attached in Exhibit A provide detail on the notices and payments issued to date. As of February 28, 2014, the CAO has issued 63,799 Eligibility Notices to unique claims with Payment Offers totaling over $4.98 billion. As of that date, the CAO has made over $3.84 billion in payments on 56,500 claims.[6]

2. **Claimants in Bankruptcy.**

The CAO reviews each claimant who indicates an open bankruptcy on the Registration Form (Debtor Claimant) to determine whether the claimant has submitted sufficient documentation from the applicable bankruptcy court to issue payment. If the CAO determines that the claimant is not a Debtor Claimant per the Procedure for Disposition of Claims by Claimants in Bankruptcy (Proc-445), or if the claimant submits sufficient documentation for the CAO to issue payment on all active claims, the CAO will remove the Bankruptcy Hold. Table 11 provides information about the status of claimants identified as Debtor Claimants, including information on notices issued to those claimants.

---

[6] The Court-ordered injunction addressing revenue and expense matching and causation issues has affected the number of Eligibility Notices with Payment Offers and Payments issued. See section I.E for additional information on the injunction addressing revenue and expense matching and causation issues.

| Table 11.  Claimants in Bankruptcy. | | | |
|---|---|---|---|
| **1.** | **Identified Claimants in Bankruptcy** | **Total** | **Change Since Last Report** |
| **(a)** | **Claimants with Active Bankruptcy Holds** | 1,794 | +11 |
| **(b)** | **Claimants with Removed Bankruptcy Holds** | 898 | +26 |
| **2.** | **Bankruptcy Notices Issued** | **Total** | **Change Since Last Report** |
| **(a)** | **Representative of Claimant in Bankruptcy Notices** | 322 | +5 |
| **(b)** | **Bankruptcy Trustee Communication Notices** | 58 | 0 |
| **(c)** | **Bankruptcy Trustee Informational Notices** | 46 | +3 |

On December 5, 2013, the CAO re-issued the Procedure for Disposition of Claims by Claimants in Bankruptcy (Proc-445) to Class Counsel and BP for comment.  The revised version changes the procedures for Chapter 12 and 13 debtors with regard to who must sign the appropriate Release and whether the CAO's office may communicate with the debtor when a trustee has been appointed.  On December 17, 2013, BP submitted proposed modifications to the revised version of the Procedure.  The CAO is currently reviewing BP's proposed modifications and developing further revisions to the Procedure.

   D.  **Re-Reviews, Reconsiderations, and Appeals.**

      1.  **Re-Reviews and Outcomes.**

The CAO implemented a Re-Review process beginning on January 18, 2013, that provides claimants with the opportunity to request a Re-Review of their claim within 30 days of the issuance of an Eligibility or Denial Notice if the claimant has additional documentation not previously submitted to support their claim.  Following a Re-Review, claimants receive a Post Re-Review Notice, from which they may then request Reconsideration if they wish.  To date, there have been 65,642 Eligibility and Denial Notices issued from which claimants can or could seek Re-Review.  Of those, 884 are still within the 30 day window to seek Re-Review and Re-Review has not yet been requested, leaving 64,758 claims for which the window to seek Re-Review has passed.  Of those, claimants have requested Re-Review of 4,659 claims.  Thus, the

rate of Re-Review from all final determinations is 7.2%.  The rate of Re-Review from Eligibility
Notices is 4.4%, while the rate of Re-Review from Denial and Incompleteness Denial Notices is
14.0%.

Table 12 summarizes the Re-Reviews the CAO has completed, the number of Post Re-
Review Notices the CAO has issued, and whether the outcome of the Re-Review resulted in an
award that was higher than (↑), lower than (↓),or the same as (↔) the outcome previously issued.
The table also includes information on whether an original Exclusion Denial was confirmed or
overturned on Re-Review.  The number of Notices issued is fewer than the number of reviews
completed because there is a 36-hour lag between the time when the review is completed and the
time when the Notice is issued.

| Table 12.  Re-Reviews. | | | | |
|---|---|---|---|---|
| A.   Re-Review Requests and Reviews | | | | |
| | Claim Type | Requests Received To Date | Reviews Completed To Date | | |
| | | | Total | Completed Since Last Report | Average Weekly Reviews |
| 1. | Seafood | 811 | 784 | 7 | 14 |
| 2. | IEL | 684 | 633 | 9 | 11 |
| 3. | IPV/FV | 11 | 11 | 0 | <1 |
| 4. | BEL | 1,525 | 1,353 | 29 | 24 |
| 5. | Start-Up BEL | 116 | 101 | 3 | 2 |
| 6. | Failed BEL | 149 | 129 | 7 | 2 |
| 7. | Coastal RP | 820 | 814 | 19 | 15 |
| 8. | Wetlands RP | 272 | 255 | 5 | 5 |
| 9. | RPS | 81 | 81 | 1 | 1 |
| 10. | Subsistence | 87 | 62 | 7 | 1 |
| 11. | VoO | 57 | 57 | 0 | 1 |
| 12. | VPD | 46 | 42 | 0 | <1 |
| 13. | TOTAL | 4,659 | 4,322 | 87 | 78 |

| B.  Re-Review Notices Issued | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | Notices Issued | | Outcome of Re-Review Notice | | | |
| | Claim Type | Total Issued to Date | Weekly Average | Compensation Amount for Eligible Claims | | | Exclusions/Denials | |
| | | | | ↑ | ↓ | ↔ | Confirmed | Overturned |
| 1. | Seafood | 718 | 13 | 387 | 29 | 215 | 84 | 3 |
| 2. | IEL | 561 | 10 | 142 | 37 | 191 | 188 | 3 |
| 3. | IPV/FV | 11 | <1 | 0 | 0 | 0 | 11 | 0 |
| 4. | BEL | 1,022 | 18 | 253 | 42 | 83 | 635 | 9 |
| 5. | Start-Up BEL | 68 | 1 | 16 | 3 | 5 | 43 | 1 |
| 6. | Failed BEL | 93 | 2 | 1 | 2 | 0 | 90 | 0 |
| 7. | Coastal RP | 755 | 14 | 42 | 5 | 97 | 586 | 25 |
| 8. | Wetlands RP | 188 | 3 | 6 | 1 | 9 | 171 | 1 |
| 9. | RPS | 45 | <1 | 1 | 0 | 2 | 42 | 0 |
| 10. | Subsistence | 40 | <1 | 6 | 4 | 2 | 28 | 0 |
| 11. | VoO | 56 | 1 | 7 | 5 | 17 | 25 | 2 |
| 12 | VPD | 40 | <1 | 19 | 0 | 11 | 9 | 1 |
| 13. | TOTAL | 3,597 | 65 | 880 | 128 | 632 | 1,912 | 45 |

### 2.  Reconsideration Reviews and Outcomes.

To date, there have been 127,265 Eligibility, Denial, and Incompleteness Denial Notices issued from which claimants can or could seek Reconsideration.  Of those, 1,647 are still within the 30 day window to seek Reconsideration and Reconsideration has not yet been requested, leaving 125,618 claims for which the window to seek Reconsideration has passed.  Of those, claimants have requested Reconsideration of 16,576 claims.  Thus, the rate of Reconsideration from all final determinations is 13.2%.  The rate of Reconsideration from Eligibility Notices is 5.6%, while the rate of Reconsideration from Denial and Incompleteness Denial Notices is 22.1%.

Table 13 summarizes the Reconsiderations the CAO has completed, the number of Post-Reconsideration Notices the CAO has issued, and whether the outcome of the Reconsideration review resulted in an award that was higher than (↑), lower than (↓), or the same as (↔) the outcome previously issued. The table also includes information on whether an original Exclusion

15

Denial was confirmed or overturned on Reconsideration.  The number of Notices issued is fewer than the number of reviews completed because there is a 36-hour lag between the time when the review is completed and the time when the Notice is issued.

| Table 13.  Reconsideration. | | | | | |
|---|---|---|---|---|---|
| **A.  Reconsideration Requests and Reviews** | | | | | |
| | **Claim Type** | **Requests Received To Date** | **Reviews Completed To Date** | | |
| | | | **Total** | **Completed Since Last Report** | **Average Weekly Reviews** |
| **1.** | Seafood | 3,631 | 3,458 | 42 | 46 |
| **2.** | IEL | 4,730 | 4,193 | 178 | 55 |
| **3.** | IPV/FV | 38 | 34 | 0 | <1 |
| **4.** | BEL | 3,909 | 3,308 | 198 | 44 |
| **5.** | Start-Up BEL | 423 | 354 | 20 | 5 |
| **6.** | Failed BEL | 436 | 398 | 8 | 5 |
| **7.** | Coastal RP | 1,702 | 1,661 | 77 | 22 |
| **8.** | Wetlands RP | 491 | 447 | 6 | 6 |
| **9.** | RPS | 181 | 180 | 2 | 2 |
| **10.** | Subsistence | 181 | 131 | 13 | 2 |
| **11.** | VoO | 621 | 615 | 2 | 8 |
| **12.** | VPD | 233 | 227 | 2 | 3 |
| **13.** | TOTAL | 16,576 | 15,006 | 548 | 198 |

| **B.  Reconsideration Notices Issued** | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Claim Type** | **Notices Issued** | | **Outcome of Reconsideration Notice** | | | |
| | | **Total Issued to Date** | **Weekly Average** | **Compensation Amount for Eligible Claims** | | | **Exclusions/Denials** | |
| | | | | ↑ | ↓ | ↔ | **Confirmed** | **Overturned** |
| **1.** | Seafood | 3,306 | 47 | 779 | 102 | 472 | 1,648 | 305 |
| **2.** | IEL | 3,908 | 55 | 348 | 30 | 101 | 2,537 | 892 |
| **3.** | IPV/FV | 34 | <1 | 0 | 0 | 0 | 32 | 2 |
| **4.** | BEL | 2,556 | 36 | 411 | 30 | 193 | 1,046 | 876 |
| **5.** | Start-Up BEL | 253 | 4 | 18 | 2 | 13 | 76 | 144 |
| **6.** | Failed BEL | 302 | 4 | 5 | 0 | 0 | 237 | 60 |
| **7.** | Coastal RP | 1,644 | 23 | 99 | 17 | 373 | 971 | 184 |
| **8.** | Wetlands RP | 385 | 5 | 20 | 1 | 30 | 314 | 20 |
| **9.** | RPS | 179 | 3 | 1 | 0 | 3 | 162 | 13 |
| **10.** | Subsistence | 83 | 1 | 2 | 0 | 1 | 73 | 7 |

| Table 13.  Reconsideration. | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11. | VoO | 610 | 9 | 59 | 4 | 121 | 370 | 56 |
| 12 | VPD | 219 | 3 | 50 | 2 | 16 | 83 | 68 |
| 13. | **TOTAL** | **13,479** | **191** | **1,792** | **188** | **1,323** | **7,549** | **2,627** |

### 3.  Appeals.

#### (a) BP Appeals.

To date, the CAO has issued 18,820 Eligibility Notices that meet or exceed the threshold amount rendering them eligible for appeal by BP.  Of those, 28 Notices are still within the timeframe in which BP can file an appeal and BP has not yet done so, leaving 18,792 Notices that BP has either appealed or for which the deadline for BP to file an appeal has passed.  Of those 18,792 Notices, BP has filed 3,925 appeals, a 20.9% appeal rate.  However, out of the 3,925 Notices BP has appealed, BP has subsequently withdrawn 270 of those appeals, while another 1,315 have been resolved for a compensation amount the same as or greater than that in the pre-Appeal Eligibility Notice (excluding the 5% compensation increase that a claimant who prevails upon appeal receives).  Thus, out of the 3,925 Notices BP has appealed, 1,585 have either been withdrawn or resolved for a compensation amount the same as or greater than that in the Eligibility Notice.  Removing those 1,585 Notices from the 3,925 Notices BP has appealed provides a more representative and indicative "rate of disagreement" of  2,340 out of 18,792 Notices appealed by BP, or a 12.5% "rate of disagreement".

Table 14 provides summary information on the status of BP appeals.

| Table 14.  Status of BP Appeals. | | | | |
|---|---|---|---|---|
| A.   Appeal Filing/Resolution | | | | |
| | **Status** | **As of Last Report** | **Since Last Report** | **Total** |
| 1. | **BP Appeals Filed** | **3,921** | **4** | **3,925** |
| 2. | **Appeals Resolved** | **2,402** | **1** | **2,403** |
| a. | Withdrawn | 269 | 1 | 270 |

| Table 14. Status of BP Appeals. | | | | |
|---|---|---|---|---|
| b. | Panel Decided | 1,495 | 1 | 1,496 |
| c. | Settled by Parties | 383 | 0 | 383 |
| d. | Remanded by Panel | 113 | 0 | 113 |
| e. | Administratively Closed | 8 | 0 | 8 |
| f. | Closed for Reconsideration Review | 134 | -1 | 133 |
| **B. Pending Appeals** | | | | |
| 3. | **In Pre-Panel Baseball Process** | **1,283** | | |
| 4. | **Currently Before Panel** | **111** | | |
| 5. | **Under Discretionary Review** | **128** | | |
| 6. | **TOTAL PENDING** | **1,522** | | |

### (b) Claimant Appeals.

Before a claimant may file an appeal, the claimant must request Reconsideration and receive a Post-Reconsideration Eligibility or Denial Notice. To date, the CAO has issued 7,195 Post-Reconsideration Eligibility and Denial Notices. Of those, 144 Notices are still within the timeframe in which the claimant can file an appeal and the claimant has not yet done so, leaving 7,051 Notices that the claimant has either appealed or for which the deadline for the claimant to file an appeal has passed. Of those 7,051 Notices, claimants have filed 1,261 appeals, a 17.9% appeal rate. Of the 1,261 claimant appeals, 757 are appeals of Post-Reconsideration Denial Notices, while 504 are appeals of Post-Reconsideration Eligibility Notices.

Table 15 provides summary information on the status of Claimant Appeals.

| Table 15. Status of Claimant Appeals. | | | | |
|---|---|---|---|---|
| **A. Appeal Filing/Resolution** | | | | |
| | **Status** | **As of Last Report** | **Since Last Report** | **Total** |
| **1.** | **Claimant Appeals Filed** | **1,236** | **25** | **1,261** |
| **2.** | **Appeals Resolved** | **759** | **27** | **786** |
| a. | Panel Decided | 628 | 23 | 651 |
| b. | Settled by Parties | 73 | 0 | 73 |
| c. | Remanded by the Panel | 20 | 3 | 23 |
| d. | Administratively Closed | 8 | 0 | 8 |

| Table 15.  Status of Claimant Appeals. | | | | |
|---|---|---|---|---|
| e. | Withdrawn | 30 | 1 | 31 |
| B.  Pending Appeals | | | | |
| 3. | In Pre-Panel Baseball Process | 108 | | |
| 4. | In Pre-Panel Non-Baseball Process | 214 | | |
| 5. | Currently Before Panel | 70 | | |
| 6. | Under Discretionary Review | 83 | | |
| 7. | TOTAL PENDING | 475 | | |

### (c)  Resolved Appeals.

As reported in the tables above, 3,189 appeals have been resolved.  Table 16 provides a summary of these resolved appeals by Claim Type.  The comparison between the Post-Appeal award amount and the award amount within the original notice does not take into consideration the 5% increase in compensation that a claimant who prevails upon appeal receives.

| Table 16.  Outcome After Appeal. | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Claim Type | Appeals Settled or Decided by Panel | | | | | | Withdrawn | Admin. Closed | Closed Because Claimant Asked For Recon. | Total |
| | Compensation Amount after Appeal Compared to That of Original Notice | | | | | | | | | |
| | Higher | Lower | Same | Denial Upheld | Denial Over-turned | Remand | | | | |
| 1. Seafood | 56 | 19 | 122 | 29 | 2 | 15 | 48 | 4 | 8 | 303 |
| 2. BEL | 55 | 462 | 1,149 | 137 | 43 | 81 | 199 | 6 | 105 | 2,237 |
| 3. Wetlands RP | 3 | 1 | 4 | 29 | 2 | 0 | 3 | 0 | 16 | 58 |
| 4. Coastal RP | 34 | 1 | 19 | 51 | 2 | 1 | 6 | 1 | 0 | 115 |
| 5. RPS | 0 | 4 | 7 | 32 | 0 | 0 | 2 | 0 | 0 | 45 |
| 6. VoO | 16 | 30 | 37 | 33 | 18 | 5 | 26 | 3 | 0 | 168 |
| 7. IEL | 15 | 29 | 48 | 42 | 6 | 23 | 9 | 2 | 4 | 178 |
| 8. IPV | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 2 |
| 9. VPD | 0 | 24 | 28 | 12 | 0 | 11 | 8 | 0 | 0 | 83 |
| 10. Total | 179 | 570 | 1,414 | 366 | 74 | 136 | 301 | 16 | 133 | 3,189 |

### (d) Incompleteness Appeals.

The Appeal for Insufficient Documentation (Incompleteness Appeal) allows Economic Class Members to have their claims reviewed by a separate Documentation Reviewer when the CAO denies their claims because of insufficient documentation.  The Documentation Reviewer reviews the claimant's documentation to determine whether the Program correctly denied the claim.

Before sending the claim to the Documentation Reviewer, the CAO reviews the appeal request along with any newly submitted documents.  If the claimant has submitted the requested documentation and cured the incompleteness, the CAO issues the appropriate Notice.  If the claimant still has not submitted the requested documentation, the CAO sends the claim to the Documentation Reviewer for review.

Before a claimant may file an appeal of an Incompleteness Denial, the claimant must request Reconsideration and receive a Post-Reconsideration Incompleteness Denial Notice.  To date, the CAO has issued 3,698 Post-Reconsideration Incompleteness Denial Notices.  Of those, 147 Notices are still within the timeframe in which the claimant can file an appeal, leaving 3,551 Notices for which the claimant's appeal deadline has passed.  Of those 3,698 Notices eligible for appeal, 1,726 (46.7%) appeal requests have been filed.

Table 17 provides summary information on the status of Incompleteness Appeals.

| Table 17.  Incompleteness Appeals. | | | | |
|---|---|---|---|---|
| A.  Incompleteness Appeal Filing/Resolution | | | | |
| | Status | As of Last Report | Since Last Report | Total |
| 1. | Incompleteness Appeals Filed | 1,639 | 87 | 1,726 |
| 2. | Appeals Resolved | 1,249 | 73 | 1,322 |
| a. | Withdrawn/Closed | 4 | 0 | 4 |
| b. | Cured | 159 | 11 | 170 |
| c. | Incompleteness Denial Affirmed | 1,064 | 59 | 1,123 |

| Table 17.  Incompleteness Appeals. | | | | |
|---|---|---|---|---|
| d. | Incompleteness Denial Overturned | 22 | 3 | 25 |
| B.  Pending Incompleteness Appeals | | | | |
| 3. | In Pre-Documentation Reviewer Process | 365 | | |
| 4. | Currently Before Documentation Reviewer | 39 | | |
| 5. | TOTAL PENDING | 404 | | |

As reported in Table 17 above, 1,322 Incompleteness Appeals have been resolved.

### E.  Court-Ordered BEL Claim Suspension.

BP appealed the District Court's order, issued on March 5, 2013, that affirmed the Claims Administrator's interpretation of the Settlement Agreement that the BEL framework does not require the matching of revenues and expenses within claimant-submitted profit and loss statements.  On October 2, 2013, the Fifth Circuit Court of Appeals reversed the District Court's ruling and remanded the case to the District Court for further consideration.  The District Court immediately entered an order to suspend the issuance of any final determination notices or payments on all BEL claims, including Start-Up and Failed BEL claims, until the Court could create an appropriately narrowly-tailored preliminary injunction.  In the months following, the Court has reviewed the issue of matching of revenues and expenses as well as issues concerning causation.

### 1.  Preliminary Injunction Continuing BEL Claim Suspension.

As required by the October 18, 2013 preliminary injunction, the Claims Administrator provided the District Court with a declaration outlining the criteria that the CAO would use to determine whether a BEL claim is supported by sufficiently-matched, accrual-basis accounting.  On November 12, 2013, the CAO resumed issuing Incompleteness Notices to BEL claims.  The CAO added language to all BEL Incompleteness Notices to inform claimants that additional

information regarding the issue of matching revenues and expenses may be required at a later point in the review process.

After the District Court issued its preliminary injunction, BP filed an emergency motion objecting to the District Court's holding that causation was not an issue that the Court would address on remand.  On December 2, 2013, the Fifth Circuit remanded the issue of causation and ordered that the District Court must address causation in its preliminary injunction.   In response to the Fifth Circuit's ruling, the District Court issued an amended preliminary injunction on December 5, 2013, that ordered the CAO to temporarily suspend the issuance of final determination notices and payments to BEL claims until the Court resolves the BEL issues that are the subject of the pending remand.

On December 24, 2013, the District Court addressed the issues that the Fifth Circuit had placed on remand.  It reversed its previous holding that the Settlement Agreement does not require the matching of revenues and expenses and remanded the matter to the CAO with instructions to adopt and implement an appropriate protocol or policy for handling BEL claims in which the claimant's financial records do not match revenues with corresponding variable expenses.  Further, the District Court also found that whether a business economic loss is "as a result of" the Deepwater Horizon Incident for purposes of the Settlement is determined exclusively by Settlement Agreement Exhibit 4B.

On February 12, 2014, the CAO announced Policy 495 regarding the Matching of Revenue and Expenses for BEL claims to the Parties and provided the Parties with the opportunity to respond to the policy.  Policy 495 details the methodology that the CAO Accounting Vendors will use to handle BEL claims in which the claimant's financial records do not match revenues with corresponding variable expenses.  Both BP and Class Counsel responded to the Policy Announcement with memoranda detailing their comments, objections,

and suggested edits, and a Panel Meeting was requested.   The CAO will review the Parties'
comments and schedule a Panel Hearing with the Parties to evaluate the Policy.

The CAO continues to adhere to the December 5, 2013 preliminary injunction not only
by refraining from issuing any final determinations notices or payments for any BEL claims but
also by continuing to process BEL claims and to issue Incompleteness Notices for BEL claims
until the CAO receives further guidance from the Court.

Additionally, the CAO is processing all IEL claims that do not qualify for eligibility
solely on the basis of the employer's satisfaction of the BEL revenue-pattern causation
requirements.  The CAO has developed and applied measures within the system to stop all
Notices and payments to IEL claimants specifically affected by the Court's injunction.  These
claims remain on hold until the CAO Accounting Vendors evaluate the associated BEL claim for
matching issues.

**2.   Processing of Appealed Claims.**

The December 5, 2013 amendment to the October 18, 2013 preliminary injunction
applies to all claims currently in the claims appeal process.  In response to this Order, the CAO
has temporarily suspended the Appeals Process for all BEL claims in the "baseball" process,
which includes all BEL claims with Eligibility Notices.  The CAO will continue the Appeals
Process as it relates to the following claim groups: (1) non-BEL claims, and (2) BEL claims in
the "non-baseball" process, including all BEL claims issued Denial Notices for which the CAO
has determined that neither revenue and expense matching nor causation, as addressed in the
Fifth Circuit's ruling, are issues that have been raised as a basis for appeal.

## II.    CLAIMANT OUTREACH EFFORTS

The CAO has continued its Claimant Outreach efforts since the previous Court Status Report as detailed below:

### A.  Law Firm Contacts.

The Law Firm Contact team continued to service firms by providing statuses, answering questions about notices, and acting as liaisons between reviewers and firms to request additional documentation pertinent to claims review.  Firm Contacts participated in outreach to firms whose claimants submitted incomplete 4506-T Request for Tax Return Transcript forms.  The team also continued outreach to firms representing claimants who did not provide complete documentation required for a settlement payment.

### B.  Claimant Communications Center (CCC).

The CCC continued claimant outreach efforts across all claim types and review teams. The CCC consistently participates in the ongoing SWS-12A research calls to employers, in the calls confirming Deadline Relief Request approvals, and in the calls confirming changes in claimant representation status.  Finally, the CCC conducted outreach to inform claimants of missing documents required to issue payment.

### C.  Claimant Assistance Centers (CACs).

The CACs complete outreach assignments as a secondary task to meeting with claimants and answering DWH-related questions.  The CACs continued Claimant Outreach Program calls to claimants who have incomplete claims and who have commenced but have not completed claim forms.  The CACs continue claimant outreach to claimants who are required to complete a new Form 4506-T.  To date, CACs have helped to complete over 91,000 calls for the Claimant Outreach Program.

D. **Summary of Outreach Calls.**

The table below summarizes some of the Claimant Outreach Program efforts as of February 28, 2014.

| | Location | Calls Made | Incomplete Claims Affected | Claims With New Docs After Call | % of Claims With New Docs After Call | Claimants Visiting CAC After Call | % of Claimants Visiting CAC After Call |
|---|---|---|---|---|---|---|---|
| | **Table 18.  Outreach Call Volume.** | | | | | | |
| 1. | BrownGreer | 91,672 | 29,750 | 23,593 | 79% | 10,666 | 36% |
| 2. | Garden City Group | 71,003 | 8,530 | 6,330 | 74% | 652 | 8% |
| 3. | P&N | 34,524 | 7,869 | 7,084 | 90% | 191 | 2% |
| 4. | PwC | 810 | 356 | 346 | 97% | 9 | 3% |
| 5. | **TOTAL** | **198,009** | **46,505** | **37,353** | **80%** | **11,518** | **25%** |

III.    FIFTH CIRCUIT OPINION AFFIRMING DISTRICT COURT APPROVAL OF DWH ECONOMIC AND PROPERTY SETTLEMENT

The District Court issued an order on December 21, 2012, certifying the Economic and Property Settlement Class and granting final approval of the Settlement Agreement after addressing and rejecting each of the Objectors' arguments.  The Objectors appealed the District Court's order citing various provisions of Rule 23 and requested that the Fifth Circuit remand with instructions to withdraw approval of the Settlement Agreement and to decertify the class. Additionally, BP argued on appeal that two Policy Announcements issued by the Claims Administrator regarding the interpretation and application of the Settlement Agreement had subsequently brought the Settlement Agreement into violation of Rule 23, the Rules Enabling Act, and Article III of the U.S. Constitution.

A three judge panel for the Fifth Circuit Court of Appeals considered each of the arguments presented by the Objectors and BP.  On January 10, 2014, the Fifth Circuit affirmed

the District Court's order approving the Settlement Agreement and certifying the class by a 2-1 majority.  Based on the Court's previous decisions, the Fifth Circuit rejected the arguments presented by the Objectors and BP under Article III because "'it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered,' because we 'assume arguendo the merits' of their claims at the Rule 23 stage". (Court Op. at 48 (citations omitted)(emphasis added in opinion)).  Further, the Court also rejected the argument of the Objectors and BP under Rule 23, citing that "'[c]lass certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct."  Id.


### IV.    CONCLUSION

The Claims Administrator offers this Report to ensure that the Court is informed of the status of the Program to date.  If the Court would find additional information helpful, the Claims Administrator stands ready to provide it at the Court's convenience.


_____/s/ Patrick Juneau_____
PATRICK A. JUNEAU
CLAIMS ADMINISTRATOR

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/EDF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 31st day of March, 2014.

         /s/ Patrick Juneau
PATRICK A. JUNEAU
CLAIMS ADMINISTRATOR