UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL 2179<br><br>SECTION: "J" |
| This Document Applies to: | JUDGE BARBIER |
| No. 12-970, Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al. | MAG. JUDGE SHUSHAN |

## MEMORANDUM OF LAW TO SUPPORT GLEN J. LERNER'S MOTION FOR DISCOVERY REGARDING EXPEDITED CLAIMS

Glen J. Lerner respectfully asks this Court to order the Special Master to produce evidence regarding expedited claims and attempts to expedite claims filed with the Deepwater Horizon Economic & Real Property Claims Center. Lerner's request is based on recently disclosed information demonstrating that the Claims Administrator's Office ("CAO") expedited the processing and payment of over 400 claims, none of which was filed by Lerner's law firm, AndryLerner LLC. The requested evidence is discoverable because it shows that the very conduct that Lerner is accused of – attempting to expedite the processing of claims – was commonplace and, in fact, sanctioned by the CAO. The Special Master has asked the Court to impose severe sanctions against Lerner that would substantially damage his professional reputation and property rights, including the deprivation of legal fees. The doctrine of "unclean hands," which the Special Master has recommended as grounds for sanctions, does not support punishment for Lerner for conduct that others engaged in and which the CAO permitted to occur. Indeed, the evidence shows that no AndryLerner claim was expedited or received favorable

4447469.1

preference.[1] Yet, it is Lerner who stands accused of misconduct by the Special Master.[2] This Court's *de novo* review of the Special Master's findings and recommendations must take into account that others pushed the CAO to expedite claims, many successfully. This evidence shows that Lerner cannot be sanctioned for acting with "unclean hands," and Lerner is entitled to its disclosure.

## BACKGROUND

The Special Master has accused Glen J. Lerner of, in essence, conspiracy to expedite claims.[3] Lerner has specifically denied improperly expediting or attempting to expedite any claims or any other alleged wrongdoing.

Recently, documents from the CAO surfaced in a blog entitled, "theamericanzombie.com," showing that numerous claims unrelated to AndryLerner, LLC, were, in fact, expedited by the CAO. *See generally* www.theamericanzombie.com (*last visited* Mar. 31, 2014). A copy of the blog is attached as Exhibit A. Emails embedded within the blog reflect discussions among CAO employees and vendors about the expediting of claims. For example, on September 17, 2012, one claimant's lawyer emailed CAO employee Christine Reitano,

---

[1] As explained in Lerner's response to the Special Master's Report, the payment of fees to Sutton was for a case referral, not to influence claims. *See* Rec. Doc. 11988.

[2] Notwithstanding access to the CAO's books and records (including email communications) and its employees, the Special Master appears not to have identified, let alone investigated, this sizeable effort to expedite claims. Nothing in the Special Master's Report, nor anything received by Lerner in the discovery afforded thus far, suggests that the Special Master made any effort to look into a process that pushed certain claimants to the front of the line contrary to CAO policy.

[3] *See* Special Master's Report (Rec. Doc. 11287) at 6 ("The evidence discloses repeated efforts by Mr. Sutton, at times acting at the specific behest and to the special advantage of Mr. Jon Andry and Mr. Lerner, to determine the status of their DHECC claims, facilitate their processing and expedite payments."). *Id.* at 21 ("More specifically, Mr. Lerner and Mr. Jon Andry, who represented hundreds of claimants before the DHECC, utilized Mr. Sutton as their "insider" at the CAO to track and to expedite their pending claims.").

2

stating: "Per our meeting last week, Pat [Juneau] mentioned for members of the PSC to send along claim numbers for claims that have been filed and *are larger claims* that perhaps *could be looked at more quickly*." See Ex. A (Mar. 11, 2014 posting) (emphasis added). In another email, dated September 20, 2012, Reitano discussed with, among others, Brown Greer and Mr. Juneau, the process of "expedit[ing]" claims "forwarded [by the] PSC." *Id.* Additionally, Reitano stated that "Class Counsel would like to expedite review of roughly 24 claims across different claim types for each of the major objectors." *Id.*

In yet a third email, dated October 17, 2012, Bill Atkinson of Brown Greer sent to, among others, Dave Odom of the CAO, a "report of all expedited claims." Attached to the Atkinson email is a two-page chart showing that the CAO expedited the processing of 409 claims. According to the chart, the 409 claims included clients of 26 different law firms. AndryLerner was not one of the 26. *Id.*

The CAO responded to the disclosure of these emails on March 14, 2014. According to the CAO:

> To avoid confusion as to who should opt-out versus who should stay in the class, it was important for the class as a whole to have a *representative sample* of paid claims across all of the claim types in order for them to assess which was the better path forward for them. This could not be accomplished in the time required using the first-in/first-out (FIFO) method outlined in the Settlement Agreement, which method had been used for the summer of 2012, because many of the claims were incomplete and therefore not ready for processing.
>
> After discussion with the Court, BP and the PSC, it was determined that a larger number of claims should be examined before the fairness hearing so that the Court, the parties, objectors and claimants could see how the settlement program was working.
>
> . . .
>
> The Claims Administrator, with the knowledge and input of the PSC and BP, asked the PSC to provide a listing of such cases and *a sampling* was taken of those cases. This action had nothing to do with trying to expedite a claim for any particular attorney or party.

3

*Id.* (Mar. 14, 2014 posting) (emphasis added).

The emails on their face contradict the CAO's explanation of "sampling" claims to prepare for the fairness hearing. Rather, it appears that selected law firms – not including AndryLerner – were permitted to put forward claims for processing at the request of the CAO. A true "sampling" of claims would not have permitted any particular lawyer or group of lawyers to self-select claims, including "larger claims," to be placed ahead of other claims ready for processing.

Moreover, BP has disputed the CAO's explanation that, with BP's consent, it merely "sampled" claims in advance of the fairness hearing. According to a BP spokesperson:

> BP was aware of efforts by the Claims Administrator in the Fall of 2012 to get the CSSP up and running, including how to make the claims process more efficient and, correspondingly, increase the amount of claim payments in advance of the final approval hearing in November 2012.
>
> However, there are other aspects of your blog postings -- including the e-mails from PSC members to the Claims Administrator you present -- that BP was not aware of, but we are concerned about them and are trying to look into them now.

*Id.* (Mar. 26, 2014 posting).

The Special Master had access to all of the CAO's internal records, including its entire email database, as well as the ability to interview the CAO's personnel. *See* Rec. Doc. 12026-1 (Declaration of Gregory A. Paw). Yet, the Special Master's Report is silent on what appears to be an effort to expedite hundreds of claims, including certain "larger claims." Nor does the discovery thus far afforded to Lerner show that the Special Master questioned any CAO employee about the over 400 expedited claims. In short, it appears that the Special Master either did not discover or ignored a significant undertaking to identify select claims for expedited processing.

## ARGUMENT

By ordering the Special Master to produce "relevant" portions of the investigative record, Rec. Doc. 11442, this Court recognized that Lerner is entitled to disclosure of evidence that might tend to lead to admissible evidence in aid of his defense. *See* Fed. R. Civ. P. 26(b)(1). The evidence sought in this motion meets the standard of "relevance" because it tends to show that Lerner's alleged effort to expedite claims was not, as the Special Master has alleged, the product of "unclean hands," but instead was ordinary behavior that, at least for over 400 claims, resulted in expedited processing.

"Unclean hands" is an equitable doctrine that evaluates the moral turpitude of the alleged wrongdoer's conduct. The doctrine applies only to "unconscionable act[s]" and "violations of conscience" affecting the equitable relations between the parties. *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933); *see also Dahl v. Pinter*, 787 F.2d 985, 988 (5th Cir. 1986) ("conduct must be morally reprehensible" for the doctrine to apply). "Unconscionable" or "reprehensible" conduct, by definition, must be evaluated against and bear some relationship to accepted or ordinary behavior. In other words, conduct cannot be "unconscionable" or "reprehensible" if it is sanctioned by the parties or is accepted practice.

The three emails disclosed in the blog show that expediting claims or attempting to expedite claims is not at all unusual or atypical. The emails show the CAO itself asking select counsel to submit claims for expedited processing and expediting over 400 of them. Such expediting of claims contradicts the CAO's policy to process claims on "first-in-first-out" basis.[4]

---

[4] *See* Rec. Doc. 5995 at 2 ("New claims may be filed during the Transition Process until such time as the Court Supervised Claims Program is established and operation as set forth above. New claims submitted shall be processed and evaluated *in the order they are received.* Non-deficient claims previously pending with the GCCF shall be processed and evaluated prior to any new claims filed after the creation of the Transition Process.") (emphasis added).

It also apparently occurred without BP's full knowledge. As noted, the Special Master has accused Lerner of, in essence, conspiring to expedite claims. Lerner cannot be guilty of "unclean hands" for allegedly doing the same thing as others. The apparent pervasiveness with which lawyers tried to get their claims moving – and some succeeded – demonstrates that Lerner was not doing anything out of the ordinary, let alone anything "unconscionable" or "reprehensible."

Given that the newly discovered evidence only recently appeared in the public domain, Lerner has good cause for seeking this discovery at this juncture. Since the Special Master already has the information, the Special Master cannot claim prejudice and no undue delay will be caused by allowing the discovery, as the Court has not yet set an evidentiary hearing on this matter. Lerner requests that the Court order the Special Master to produce the following evidence:

- All documents from the CAO (including its vendors) discussing or involving the expediting/sampling of claims or attempts to expedite claims, including but not limited to emails.

- All reports of interviews conducted by the Special Master regarding the expediting/sampling of claims or attempts to expedite claims.

- All documents gathered by the Special Master from parties outside the CAO regarding expediting/sampling claims or attempts to expedite claims.

- All reports, analyses, summaries or other documents relating to the investigation by the Special Master of the expediting/sampling of claims or attempts to expedite claims.

4447469.1

- All complaints regarding the expediting/sampling of claims or attempts to expedite claims that are in the possession or control of the Special Master or that were reviewed by him.

Lerner further seeks permission to interview or depose CAO officials and employees who possess knowledge concerning the expediting/sampling of claims or attempts to expedite claims.

For the foregoing reasons, Glen J. Lerner respectfully requests that this Court grant his Motion for Discovery Regarding Expedited Claims.

Date: March 31, 2014  Respectfully submitted,

*/s/ William W. Taylor, III*
William W. Taylor, III (D.C. Bar #84194)
Amit P. Mehta (D.C. Bar #467231)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036-5802
Telephone: (202) 778-1865
Facsimile: (202) 822-8106
amehta@zuckerman.com

AND

Pauline F. Hardin (La. Bar #6542)
Jones Walker LLP
201 St. Charles Avenue
49th Floor
New Orleans, LA 70170
Telephone: (504) 582-8110
Fax: (504) 589-8110
phardin@joneswalker.com

*Attorneys for Glen J. Lerner*

4447469.1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum have been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 31st day of March, 2014.

                                                                                            */s/ William W. Taylor, III*
                                                                                            William W. Taylor, III