# EXHIBIT A

[search box]  G+ Share  3  More    Next Blog»         Create Blog  Sign In

# American Zombie

Independent Investigative Journalism and Commentary from New Orleans, LA

---

Wednesday, March 26, 2014

## DHECC: BP responds to my story on the PSC expedited claims

After publishing my story on the email chain I received detailing efforts within the Deepwater Horizon Economic Claims Center to expedite Plaintiff Steering Commitee's (PSC) personal claims ahead of other class claimants, I received a response from Claims Administrator, Patrick Juneau, implying that the PSC claims were expedited as part of "sampling program" in preparation for a fairness hearing that occurred in November of 2012, about six months after the office officially opened.

In that response, Mr. Juneau made the following statements:

"After discussion with the Court, BP and the PSC, it was determined that a larger number of claims should be examined before the fairness hearing so that the Court, the parties, objectors and claimants could see how the settlement program was working. "

and

"The Claims Administrator, with the knowledge and input of the PSC and BP, asked the PSC to provide a listing of such cases and a sampling was taken of those cases."

I then replied to the Claims Office asking them for a minutes entry from the Court of when this discussion took place but I have yet to receive a response.  I sent that request again today.

I also contacted BP's corporate office via email and asked them if they had participated in this discussion and if they were aware and approved the actions taken by the Claims Administrator as he stated.  I received and official response from BP's Head of Communications, Geoff Morrell:

"BP was aware of efforts by the Claims Administrator in the Fall of 2012 to get the CSSP up and running, including how to make the claims process more efficient and, correspondingly, increase the amount of claim payments in advance of the final approval hearing in November 2012.

However, there are other aspects of your blog postings -- including the e-mails from PSC members to the Claims Administrator you present -- that BP was not aware of, but we are concerned about them and are trying to look into them now."

While it appears the company was involved in "discussions" with the Claims

---

### Zombie be who?



**Dambala - Jason Brad Berry**
New Orleans, Sovereign City-State

ashedambala@gmail.com

View my complete profile

### Snake Gods need love too



### The Truitt Law Firm, Inc.



Zombie recommends Truitt Law for you legal needs

### Dozidotes



Check out Dozidotes jewelry made right here in Nawlins'!

Administrator it appears they may not have been aware that the PSC attorneys were expediting their own claims with the knowledge of Juneau.

I am still trying to find any court documentation of the discussions on the matter and I would like to find out if Judge Barbier was aware that the PSC claims were expedited as well.

Stay tuned.

Posted by Dambala - Jason Brad Berry at 3/26/2014 08:53:00 PM

42 comments:    ✉️    Links to this post

Labels: BP, DHECC, expedited claims, Patrick Juneau

---

Tuesday, March 25, 2014

## Paper chase...

Hey folks...I need to do some work at Kinko's tomorrow morning that is going to hit my wallet rather hard.  I hate to virtually panhandle but if you are following the work I'm doing on the DHECC and you actually care...please drop a few bucks in my Paypal account >>>>>>.

I have a shit-ton of stuff I need to "Kinko". Thanks.

Posted by Dambala - Jason Brad Berry at 3/25/2014 08:58:00 PM

2 comments:    ✉️    Links to this post

---

Tuesday, March 18, 2014

## DHECC: Up is down

Forgive my confusion, I was going back through the fairness hearing transcript over the weekend and I ran across Mr. Juneau's testimony to the court regarding the success rate of the claims process....here is that conversation between Judge Carl Barbier and Claims Administrator Patrick Juneau:

THE COURT: Have you ever before, either as a lawyer or as a claims administrator, seen a program where, in advance of even court approval, whether or not the court has approved this settlement, there is a claims administration office set up, and claims are being paid?

MR. PATRICK JUNEAU: No, sir. I can tell you, not one

---

### Consider It Done in NOLA



Consider It Done

Errands run, groceries made...contact CID NOLA

### Follow by Email



Email address...    Submit

### Blog Archive

Blog Archive ▼

### Followers



Join this site
with Google Friend Connect

Members (106)    More »

Already a member? Sign in

### Brains I Feed On

adrostos

Aminaminamina... Say What?!!

animamundi

Ashley Morris

b.rox

Becky Houtman...great writer

BigEZBear

Blog of New Orleans

Cenlamar

case, and I think I've been maybe a special master 40 or
45 times, from California, to the East Coast, to Minnesota, I
have never, ever been in a case and never heard of a case --
there may be one, but not to my knowledge -- that ever
authorized the processing and payment of claims before a
fairness hearing. This is the first. This is the first case
I've ever been involved in.
Which means you're a year ahead of the learning
curve and a year ahead of the timeline in getting the money
out. That's number one.
The second part of your question was, in terms of
when allocations go out and the acceptance rate, **I have never
had, in all of the cases I've been involved in, nor any of the
ones that I have knowledge of, have approached that acceptance
rate.**

THE COURT: How would you compare this settlement
program, from your perspective being involved in this one and
being involved in other ones, in terms of the speed, I guess,
with which it has started, got up and running, and the speed
with which it's paying claims?

MR. PATRICK JUNEAU: Well, in the railroad world, I
would say this is the Panama Limited of processes. **I've never
been involved in a project that has gotten up this quick, had
the involvement with the volume we had to deal with, and to
either have started it earlier or gotten it paid this quickly.**

**It's been a remarkable experience for me.**

Now, this is the response Mr. Juneau sent me as to why the PSC members'
claims were expedited:

In response to your recent inquiry, we thought that you should be made aware of
the actual facts. In the fall of 2012 the DHECC Program was fast approaching the
fairness hearing and the opt-out deadline. To avoid confusion as to who should
opt-out versus who should stay in the class, it was important for the class as a
whole to have a representative sample of paid claims across all of the claim types
in order for them to assess which was the better path forward for them. **This
could not be accomplished in the time required using the first-in/first-
out (FIFO) method outlined in the Settlement Agreement, which method
had been used for the summer of 2012, because many of the claims
were incomplete and therefore not ready for processing.**

After discussion with the Court, BP and the PSC, it was determined that a larger
number of claims should be examined before the fairness hearing so that the
Court, the parties, objectors and claimants could see how the settlement program
was working. As noted above, **since the program had encountered
problems with a lot of the claims not having complete documentation it
was difficult to come up with claims that could be analyzed and
determined, so a sample of sufficiently documented claims was needed.**

So I'm a little confused. No...I'm very confused.

confederacy of dunces

Cryptogon

Daily Kingfish

Dangerblond...hell yeah

Disenfranchised Citizen

Ernie the Attorney

Fiyou on the Bayou

G-Bitch...fuckin' eh

Gentilly Girl

George Washington's Blog

Good Children

Gumbo Pie

HammHawk

http://frogpondish.blogspot.com/

Huff Po

Humid City...Loki is da schnizzel

humidhaney

ilostmyipod

Independent Nix

Keep It Trill

Library Chronicles

Liprapslament

Maitri's VatulBlog

Metroblogging

Mikeb302000

Minor Wisdon

Mitchell's Musings

Moldy City

Moose Denied

New Orleans Ladder - Edtilla

New Orleans Slate

NOLA

Noladishu

NOLAFemmes

In the fairness hearing, Mr. Juneau told the judge that everything was going just swimmingly. In his response to me he states that there were so many problems with incomplete claims coming in that they had to expedite the PSC claims to use them as samples for the fairness hearing.

Nowhere, absolutely nowhere in the fairness hearing can I find any mention of the results of the purported "sampling" initiative.

So far I have not received a reply from the Claims Office in my request for the minutes entry of the conversation which they said took place between the Claims Office, the PSC, BP and the court. It is my understanding that if any conversation took place with the court, there must be a minutes entry.

If I don't receive a reply from the CA, I'm going to make the request for the minutes to the court (Judge Barbier) and ask him if he was aware that the PSC claims were expedited. Hopefully we can get some answers.

Posted by Dambala - Jason Brad Berry at 3/18/2014 01:06:00 PM

8 comments:    Links to this post

Labels: DHECC, Expediting claims, Judge Carl Barbier, Patrick Juneau

---

Friday, March 14, 2014

## DHECC - Response to the last post

I received a more detailed response yesterday from the DHECC Claims Administration Office in respect to the article I posted regarding expedited claims:

In response to your recent inquiry, we thought that you should be made aware of the actual facts. In the fall of 2012 the DHECC Program was fast approaching the fairness hearing and the opt-out deadline. To avoid confusion as to who should opt-out versus who should stay in the class, it was important for the class as a whole to have a representative sample of paid claims across all of the claim types in order for them to assess which was the better path forward for them. This could not be accomplished in the time required using the first-in/first-out (FIFO) method outlined in the Settlement Agreement, which method had been used for the summer of 2012, because many of the claims were incomplete and therefore not ready for processing.

After discussion with the Court, BP and the PSC, it was determined that a larger number of claims should be examined before the fairness hearing so that the Court, the parties, objectors and claimants could see how the settlement program was working. As noted above, since the program had encountered problems with a lot of the claims not having complete documentation it was difficult to come up with claims that could be analyzed and determined, so a sample of sufficiently documented claims was needed.

NolaMotion

Northwest Carrollton

Official Rising Tide Blog

people get ready

Pistolette

Public Sphere Nola

Ray in New Orleans

right hand thief

Scout Prime

Slabbed

Slimbolala

SMORGASBLOG...possibly funnier than the Onion...ht to erster

SophMom

Spocko's Brain

Squandered Heritage

Suspect Device

Thanks, Katrina

The 3rd Battle of New Orleans

The Chicory

The Frog Pond

the garden of irks and delights

The Hungry Termite

The Nation

The Truth and other Lies

thoughts of the dark rose

travelling mermaid

We Could Be Famous

Wet Bank Guide

Wonkette

Copyright



American Zombie by Dambala, AsheDambala, Jason Brad Berry is licensed under a Creative Commons Attribution-

The Claims Administrator, with the knowledge and input of the PSC and BP, asked the PSC to provide a listing of such cases and a sampling was taken of those cases. This action had nothing to do with trying to expedite a claim for any particular attorney or party. Pursuant to that request, claims were submitted, a sampling taken and determinations were made, and those results were made available to the Court and the parties at the time of the fairness hearing. During this same time frame some of the objectors were taking the position that in order to be able to determine whether or not to opt out, they needed to see at the time of the fairness hearing a determination on the type of claims they were handling. We therefore took samples of claims from the several of the objectors and made determinations which were also available at the time of the fairness hearing. It is interesting to note that over 60% of the claims that were considered were not represented by the PSC.

The issues as they stood at that time and the above outline of facts are supported by the e-mails recently made public which were subject to confidentiality.

I have reviewed the Fairness Hearing transcript as well as the Claims Administrator's reports. I have yet to see any mention of the sampling program. Upon receiving this response, I replied with the following request:

Thank you and Mr. Juneau for the response.

This reply states that Mr. Juneau had a discussion with the Court, BP and the PSC regarding the sampling process. Could you please provide me with the minute entry for this discussion? It's my understanding that any conference with the Court is supposed to generate a minute entry in the record. I would like to review this minute entry.

I didn't receive a reply today but I hope to get a reply on Monday.

Posted by Dambala - Jason Brad Berry at 3/14/2014 09:38:00 PM
12 comments:    Links to this post
Labels: Claims administration office, DHECC, expedited claims

---

Tuesday, March 11, 2014

## DHECC - Proof positive of claims being expedited by the PSC

For the past year and a half I've been reporting on issues that have occurred with the BP oil spill multi-district litigation settlement and the Claims Office of the Deepwater Horizon Economics Claims Center (DHECC).

From the beginning, I was approached by multiple sources that made claims of fraud and manipulation within the DHECC process. Most of the allegations

NonCommercial-NoDerivs 3.0 United States License.
Based on a work at theamericanzombie.com. Permissions beyond the scope of this license may be available at ashedambala@gmail.com.



involved issues that were instigated by members of the Plaintiff Steering Committee (PSC)....the lawyers chosen to represent all the class claimants along the Gulf Coast in their lawsuit against BP.

Typically...frustratingly..... almost every one of my sources refused to go on the record and I've had a difficult time providing hard proof of the allegations.

My luck changed last week.

## Allegations

There are two main issues I've been researching regarding the misconduct of specific PSC members:

1.  The allegation that some PSC firms sold access to the claim "formula" before the claims office opened.  In fact, it now appears some of the PSC firms entered into joint venture agreements with other law firms around the Gulf Coast without disclosing the nature of their involvement to either the claimants or the claims office.

2.  That members of the PSC had their own private claims expedited before other claimants who had filed ahead of them.

## The Rules of the Settlement

Before I get to the evidence, I want to point out again that by order of Federal Judge Carl Barbier, the claims which come into the DHECC must be processed in the order they are received:

10.  New claims may be filed during the Transition Process until such time as the Court Supervised Claims Program is established and operational as set forth above. **New claims submitted shall be processed and evaluated in the order they are received.** Non-deficient claims previously pending with the GCCF shall be processed and evaluated prior to any new claims filed after the creation of the Transition Process.

## A Breach of the Settlement?

Last week, I received an unmarked envelope in the mail that contained a series of email exchanges between employees of the Claims Office and other DHECC officials.  Among those involved in the conversation included Claims Administrator Pat Juneau, court vendor Brown and Greer, and members of the PSC.

These emails clearly suggest that PSC members were not only expediting their own claims, they were actually issuing directives to the employees of the Claims Office.  In fact, it looks like they were even holding back specific claims from being processed for political reasons.

Keep in mind the PSC lawyers are supposed to be representing all the claimants in this settlement process, not just their own personal clients.

## Trying to get answers

A year ago in March of 2013, I filed a FOIA request with the DHECC in an effort to find out if any PSC members had expedited their own claims within the office. My request was denied:

A little help

After the denial, I drafted a personal letter to Judge Barbier asking him to redact claimants' private information and make the claim data public so the public could be assured the process was operating according to the standards he had ordered:

The DHECC - Examining the "Claims" - Part 1

Judge Barbier never responded to my letter.

I made contact today with the Claims Office and requested an interview with Claims Administrator Pat Juneau. My interview request was denied but he did agree to provide statements and facts to any questions I had. I responded by asking him (via email) if he was aware of any claims that may have been expedited in the office, particularly ones that were being represented by PSC attorneys. This was his response:

"The Deepwater Horizon Claims Center processes claims as they are submitted.

In the early stages of the process prior to the Fairness Hearing, and at the request of all parties, the Claims Administration Office had to select sample claims from each claim type that had the required and sufficient documentation to determine the accuracy of the claims process.

Following this sample selection for the Fairness Hearing, claims are processed as they are received. "

I replied and asked him exactly how many claims were used in the sample selection and what specific time period this sampling occurred. I didn't receive a response as of my publishing this post.

**The Evidence**

The first email exchange I received in the anonymous package is from PSC attorney Calvin Fayard to former Claims Office employee Christine Reitano with a carbon copy sent to Claims Administrator Pat Juneau.

ITEM 1:

Fayard email exchange request to expedite



As you can see the claim # is blacked out, so I am unable to identify what claim Fayard was asking to be expedited.  But note that Fayard says "Pat mentioned for members of the PSC to send along claim numbers for claims that have been filed and ARE LARGER (emphasis mine) claims that perhaps could be looked at more quickly."  Juneau then responds and orders Reitano to contact Brown and Greer with a request to expedite Fayard's claim.

ITEM 2:

The second email goes even further into the process and features directives dictated to the Claims Office by two PSC members, Steve Herman and Jim Roy:

Email exchange with Herman and Roy directives



>4.  How is the program reviewing private oyster leaseholders at present
> - in or out; has this issue been on the "spreadsheet for the parties"
>does it need to be decided by neutral/claim administrator?
>
>5.  Joe Rice's question, does the SWS-25 read to require claimant to
>include all owners' %'s;  If not, does that mean that Wendy's approval
>of the form means that BP is no longer requiring that submission per
>Keith's
>9/17 letter?
>
>
>This email (and any attachments) is confidential and is intended for
>use solely by the properly named addressee. If you are not the intended
>recipient, any use, dissemination, forwarding, copying or printing of
>this email without the consent of the originator is strictly prohibited.
>Although this email (and any attachments) are believed to be free of
>any virus or other defect, it is the responsibility of the recipient to
>ensure that it is virus free, and no responsibility is accepted by the
>sender for any loss or damage arising in any way from its use. If you
>have received this email in error, please immediately notify the sender
>by reply email or by telephone at 504-934-4999.

This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If
you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without
the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be
free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no
responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have
received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.

The first directive in this email states that the Claims Office should only expedite three of the PSC members requested claims, across two or more claim types.

The second directive in this email is very interesting in that it orders the Claims Office to review and expedite roughly 24 claims across different claim types for six of the law firms that were considered major objectors at the time:  Rick Kuykendall, Sher Garner, Smith Stag, Farrel & Patel, Brent Coon and The Buzbee Law Firm.

It's not clear why Herman and Roy would have ordered the objectors' claims to be expedited along with their own but one possibility is that it could have been a tactic to eliminate these law firms' objector's status against the settlement.

I contacted three of the six objectors firms, two of them confirmed for me, off the record, that they were unaware their claims had been expedited.

One firm, Brent Coon, confirmed, on the record, that he was unaware any of his claims had been expedited.

After looking at the email exchange, Coon also called my attention to the relevance of the 3rd directive which orders the Claims Office to cease and desist reviewing the "class representative" claims (i.e., Lake Eugenie).  Apparently the PSC wanted to hold up these claims because if they were processed too early it would negate their ability to qualify as a "class rep claim".  Coon suggested that if the PSC had those claims sequestered without the consent of the claimants, that could be as big an issue as having their own claims expedited.

And I would also note Odom's curious response to the Herman and Roy directives:

> "There was a question regarding item 3 of your email from the accountants.  Are they supposed to stop processing all claims for Class Representatives?  I assume this would be all of the PSC?  If so, what are the accountants supposed to tell the Class Representatives that have been calling them?  What happens to the claims?"

Directives 1, 2 and 3 in this email show a pattern by the PSC to manipulate the claims process as defined by the court.  The other interesting revelation of this email is that is demonstrates that the Claims Office was apparently taking directives from the PSC members with Pat Juneau's knowledge and consent.  It's not the PSC's role to give directives to the Claims Office.

**ITEM 3:**

The third email exchange contains an actual matrix from Brown and Greer of 409 claims per law firm and claim type that were expedited previous to September 27, 2012:

**Email exchange with expedited claim matrix up to Sept. 27, 2012**







| | Summary of Expedited Claims by Status | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Claim Type | | | | | | |
| Firm | Business Economic Loss | Start-Up Business Economic Loss | Failed Business Economic Loss | Coastal Real Property | Wetlands Real Property | Individual Economic Loss | Seafood | Total Number |
| 1. Awaiting Review | 32 | 8 | 1 | 0 | 0 | 0 | 24 | 65 |
| 2. In BG Review | 38 | 1 | 2 | 60 | 1 | 9 | 70 | 181 |
| 3. In Accountant Review | 46 | 0 | 0 | 0 | 0 | 0 | 1 | 47 |
| 4. Eligibility Notice | 7 | 0 | 0 | 0 | 0 | 0 | 65 | 72 |
| 5. Incompleteness Notice | 34 | 0 | 0 | 0 | 0 | 0 | 6 | 40 |
| 6. Denial Notice | 3 | 0 | 0 | 0 | 0 | 0 | 1 | 4 |
| 7. Totals | 160 | 9 | 3 | 60 | 1 | 9 | 167 | 409 |

That's 409 claims that were expedited for both the PSC firms and objectors (with at least three of them unaware this had happened). There are obviously other law firms on the matrix but I have no idea why these particular law firms' claims were expedited.

In the email exchange, Bill Atkinson of Brown and Greer states that they didn't know which three claims to expedite for each objector (per the PSC request) so they just randomly chose the objectors' claims. This would seem to validate the assertion by the objectors I spoke with that they had no idea that their claims had been expedited.

## Sampling?

I suppose it is possible that these claims mentioned in the emails were expedited as part of the sampling process but that doesn't seem likely. Please note I did not show Juneau the emails. Had he agreed to the interview I would have shown them to him to get his immediate response. I point this out to note that his response was not directly to the emails but the general question of whether or not claims, particularly PSC member's claims, had been expedited. Also note that he never actually said claims had been expedited but his answer suggests some were for the sampling process alone.

The claims in these emails don't appear to be part of a sampling process and there is no mention of sampling associated with them in the email chain. There are a number of other reasons the sampling suggestion wouldn't make sense. I contacted two lawyers familiar with MDL claims processes (not associated with the DHECC) and they brought up the following points:

- The entire reason a Claims Administrator is appointed is to avoid having the PSC members calling the shots within the office. The Administrator is supposed to be an unbiased arbitrator in the MDL process. The fact that they selectively chose PSC firms' and objectors' claims to sample would not make sense and it's highly unlikely that BP would have agreed to this. I suppose we'll find out if BP people read this post.

- The whole reason for conducting a sample in the first place is questionable considering Feinberg had already been processing claims in the GCCF for some time.

- Why were over 400 claims used for a sampling process and why were they specifically chosen from PSC filings? It would make more sense to pull the first 10 to 20 claims from each claim type. Plus, the PSC samples were most likely all accurate as they understood the filing requirements better than most. This would tilt the sampling process negating the reason to conduct one in the first place. The whole purpose of running a sample would be to discover potential problems.

- Juneau suggested the sample claims were pulled "in the early stages of the process" before the fairness hearing. This fairness hearing did occur approximately one month (November 2012) after these emails exchanges but it seems unlikely they would be sampling claims in the 11th hour, four months after the Claims Office opened for business in June of 2012. Also, if there was a sample that occurred, you would think Juneau should have reported the results in a spreadsheet to the Court and especially in preparation for the fairness hearing. I haven't been able to find any such report (if anyone is aware of that report please contact me).

- Why did Calvin Fayard specify that the PSC members were allowed to expedite "larger" claims? If you were conducting an accurate sample, it seems you would want all type of claims across the spectrum.

If all these claims were expedited for sampling purposes, the sampling process itself needs to be questioned.

## A Blind Eye?

The revelations provided in the emails are not a surprise to me. What is a surprise to me is that Special Master Louis Freeh hasn't addressed these issues. He must have this email chain as he obtained Christine Reitano and David Odom's DHECC email databases during his investigation. I must assume he is aware of the issues and he recognizes that they are a clear violation of the terms of the settlement.

In my opinion, these revelations are much more serious than the single claim, Thonn, that Freeh focused on in his first report. I believe the issue he mentioned on page 60 of the first report is much more serious than the Thonn claim as well because it suggests actual fraud occurred in respect to the seafood claims....allegedly by an unnamed PSC firm.

In fact, expediting a claim (for the Andry Law Firm) is exactly the charge Freeh levied against Lionel Sutton. Here we have 409 claims that were expedited, many for PSC members. Is this not worthy of investigation?

The possibility for selective prosecution is of great concern here, as is the overall fiduciary duty to the class claimants by the PSC attorneys. I believe these issues need to be addressed and explained by Louis Freeh, the PSC attorneys, Pat Juneau and in particular Judge Carl Barbier....they simply can't ignore this.

## The Real Problem

The processing of claims has recently slowed to a near halt. Many of the claimants who properly filed claims are now being asked to go back and meet new requirements that didn't exist at the beginning of the program. IF PSC attorneys got their own clients paid ahead of other class claimants it is a clear fiduciary breach under MDL standards.

Many of the hard working people of the Gulf Coast...the shrimpers, the oyster fishermen....the people who have suffered the most from this disaster have yet to receive compensation while it appears these PSC attorneys have paid themselves first. I'm going to introduce AZ readers to some of these folks down

the road.

Contrary to Mr. LeCesne's opinion....I believe this is a very big deal.

Attribution note:  This website is under a Creative Commons license and any reference to this post and its material should follow the CC guidelines.

The entire email exchange referenced in this post can also be obtained at the following link but if republished it must be attributed to the American Zombie blog and/or "independent, investigative journalist, Jason Brad Berry":

http://www.scribd.com/doc/211748455/DHECC-Master-Email-Exchange-regarding-expedited-claims-of-PSC

Posted by Dambala - Jason Brad Berry at 3/11/2014 08:23:00 PM

23 comments:        Links to this post

Labels: Calvin Fayard,  DHECC,  Expediting claims,  Fraud,  Herman and Herman,
Jim Roy,  PSC attorneys

---

Sunday, March 09, 2014

## The Wisner Trust: Horse trading in Louisiana's wild, wild justice system

It was recently brought to my attention that the Wisner heirs had filed a complaint with the U.S district court, Eastern District of Louisiana in respect to the five JV attorneys hired by Mayor Mitch Landrieu to represent The Wisner Trust Advisory Committee in their case against BP for the damages inflicted upon Wisner properties during the 2010 Macondo oil spill.

I received that complaint last week.   Apparently it has already been dismissed by Federal Judge Sarah S. Vance:

Complaint against JV attorneys representing Wisner Trust v. BP

The five law firms I refer to as the "JV (joint venture) attorneys" are: Herman, Herman & Katz;  Domengeaux, Wright, Roy & Edwards;  Fayard & Honeycutt; Fred Herman and Leger & Shaw.  Three of these firms...Herman, Roy and Fayard....also serve on the Plaintiff Steering Committee for the Deepwater Horizon Economic Claims Center.

These JV attorneys also represent The City of New Orleans as well as Orleans Parish Prison in their lawsuits against BP.

Keep in mind that public entities are not allowed to enter the settlement program (DHECC), only private individuals.  Public claims against BP for the oil spill must be filed in open court.

## The Great Wisner Train Robbery

For over a year, AZ has documented the shenanigans that occurred with the Wisner Trust Advisory Committee and how Mayor Landrieu, along with his appointee to the Trust, Michael Sherman, manipulated the five-seat committee in order to create a "hostile takeover":

American Zombie: The Wisner Fund - Battle for the Bayou - Part I

American Zombie: The Wisner Fund - Battle for the Bayou - Part 2

Immediately after two Mayoral cronies, Anthony Lorino for Tulane and Ron Gardner of LSU, were placed on the board by their respective entities; Michael Sherman called a vote to fire the Trust's existing legal counsel in their case against BP and replace them with the aforementioned JV attorneys.  Having the majority three-man vote needed to pass a motion, Sherman, Lorino and Gardner succeeded in their plan to fire the environmental law firm Waltzer and Wiygul in order to bring the JV attorneys on board.

After over a year of documenting this story, I've uncovered so many conflicts of interest with the JV attorneys and falsifications by City attorneys, specifically former Executive Counsel to the Mayor, Michael Sherman......it's difficult to keep up with them all.

In respect to conflict of interest issues, the most notable was in Part 2, when I posted an email chain between Sherman, Steve Herman and BP attorneys, Mark E. Holstein and  Nathan Block.  There, Herman was providing Holstein and Block with privileged information from a Wisner Trust Advisory Committee executive session.  Keep in mind....this is the plaintiff attorney providing the defense's attorney with privileged information from the claimant.  I'm not sure how a conflict of interest gets any more explicit than that and it's right there in black and white.

And the obfuscation and dissembling has continued even after Sherman quietly resigned his position as a city attorney to seek the brights lights of show business as an on-air legal analyst for WDSU (officially making him a public figure).

Indeed, the Mayor's counsel won a major victory in Orleans Civil District Court, per Ad Hoc Orleans Civil District Court (CDC) Judge Melvin Zeno, partially on the premise that The Wisner Trust Advisory Committee should have no oversight on the City's portion of the Wisner proceeds because an oversight body already existed in City Council.  Sherman's successor to the Wisner trustee position, Erica Beck, sat through the entire hearing listening to her colleague, City Attorney Sharonda Williams, make the City Council oversight argument to Judge Zeno in order to avoid oversight from the Advisory Committee.

One month later Beck stood in front of City Council and told them no one in the Mayor's office envisioned City Council having oversight over the Wisner funds:

American Zombie: What wicked webs we weave...

One of the biggest revelations the blog uncovered was a complaint filed in may of 2013 against BP by the JV attorneys on behalf of the Orleans Parish Sheriffs Office (OPSO).  In that complaint, the JV attorneys claimed the Sheriffs Office

had suffered economic losses, per taxes, because of the damage to Wisner property:

American Zombie: "Complaints"

1.  In item 31 of the Wisner complaint this grievance for OPSO is listed:
"...including New Orleans, was a foreseeable result of the oil spill. The adverse impacts to these industries resulted in reduced economic activity in New Orleans which is heavily dependent on the seafood, tourism and petrochemical industries. Due to the foreseeable adverse impact on these industries, the Sheriff of Orleans has lost, and continues to lose, ad valorem property tax revenues and other taxes."

The only problem with that is that there is no Wisner property in Orleans Parish. This claim is fraudulent...pure and simple...and it was filed by the JV attorneys.

If you read the comment section of that post, you will see an exchange I had with an anonymous commenter who claimed the inclusion of Wisner in the Orleans Parish Sheriffs Office complaint was simply a "cut and paste" error.  A simple mistake on behalf of the law firm that filed it.  That would be a potentially multi-million dollar cut and paste error but the commenter assured me this happens all the time.

I'm curious if the legal filing was retracted or amended since last May....if not....it's still fraudulent... and it's still pending in Orleans Parish CDC.

I also noted that a "loss of natural resources" from Wisner land was claimed on behalf of the City and OPSO but was curiously absent from the Wisner claim filed by the JV attorneys:

Item #2

Why would they fraudulently file a claim for OPSO in respect to Wisner while downplaying losses for the Wisner Trust, itself?  Let me provide a thesis.

**Art of the horse trade:**

a clever and often secret agreement made by powerful people who are usually trying to get an advantage over others

Getting back to the Wisner heirs complaint filed with U.S district court, Eastern District of Louisiana  and the items within it I found to be of the greatest significance...the main problem with the JV attorneys representing the City, OPSO and Wisner is the potential for them to "horse trade", as Wisner heir Michael Peneguy refers to it on Page 28, item # 20 of the complaint.  The scenario being that the JV attorneys could be using the Wisner settlement as leverage to increase the amount on other settlements they are representing such as the City's or OPSO's:

20. As noted above, the City of New Orleans owns a 34.8% beneficial interest in the Wisner Donation.  Because the City of New Orleans has its own BP claim there have been concerns among the Wisner beneficiaries that the City of New Orleans might try to "horse trade" with the Wisner Donation's claim in order to obtain a benefit for the City. For instance, it  is feared that an agreement might be negotiated whereby the Donation's very large property damage claim might be settled for something less than is really deserved, in exchange for the City receiving a larger payment for its separate claim.

After having followed this story for over a year, I believe this is exactly what is happening. Keep in mind that any money awarded to Winser by BP has very strict guidelines in how it must be spent...but not so with the City.

In filing this complaint with the U.S district court, Eastern District of Louisiana against the JV attorneys, the heirs hired University of Mississippi law professor, Benjamin Cooper, to offer a legal opinion on the possible conflict of interest issues. In his affidavit, he offers the opinion that a conflict does indeed exist with bullet points to that effect in items 10 -12 on pages 10 through 13:



Click on the pic to expand or refer to the original document

These bullet points tellingly reflect Mayor Landrieu's MO with the Wisner Trust Advisory Committee since he took office and first placed Michael Sherman as his appointee. Herman and Herman attorney and the point person for the JV attorneys on Wisner, Soren Giselson, echoes the Mayor's mantra perfectly, "...the ultimate decision-making authority should rest with the Mayor, as Trustee".

Waltzer and Wiygul were originally hired by the Committee after an extensive vetting process to find an environmental law firm that would have the best understanding of the damage incurred to the Wisner property from the BP spill. Shortly after Sherman was appointed and the Committee was politcally stacked, W&W was then inexplicably removed at Sherman's suggestion and replaced with the JV attorneys.

But even with the crony votes on the Committee (Lorino and Gardner) following orders to approve the hiring of the JV attorneys the move was not congruent with Rule 1.0(e) of the Louisiana Rules of Professional Conduct regarding "Informed Consent" which states:

> (e) "Informed consent" denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.

In items 18 - 20 Cooper details how not only did they JV lawyers fail to obtain the

required waiver from the Committee, they admitted that a potential conflict could exist due to their existing joint representation with the City of New Orleans in its case against BP.  However, they failed to explain to the Committee what that potential conflict may be.

Cooper also details how the JV attorneys presented the Committee with a proposed contract in the 11th hour, one day, before the September 25, 2012 meeting in which they were being asked to vote on its approval.  Cooper argues that there was no possible way the entire Committee could have vetted the JV attorneys' contract or sought outside legal advice as to their potential conflicts of interest within that 24-hour time frame.

Nonetheless, in that meeting Michael Sherman, Anthony Lorino, and Ron Gardner provided the 3 votes needed to contract the JV attorneys with the heirs and the Salvation Army casting the two minority dissenting votes.

Basically, the JV attorneys were steam-rolled in as the new counsel to replace Waltzer and Wiygul.  Later on in the complaint...we get a pretty good idea why.

In item number 23 on page 18, we discover that the JV attorneys created a contingency fee arrangment within their contract.  Cooper points out that under LRPC 1.5 (a), a lawyer "shall not make an agreement for, charge, or collect an unreasonable fee...".  He later points that there is almost no chance of the Donation not being able to recover a substantial damage amount and that even Soren Giselson has publicly acknowledged as much.  The Donation could have easily paid attorneys on an hourly basis and considering most of the leg work had already been accomplished by Waltzer and Wiygul the addition of a contingency fee is most likely inappropriate in this case.

He also points out that even though the heirs have requested the details of the contingency fee, the JV attorneys have failed to provide them.  Which brings me to a final point, independent of the complaint filed with the U.S district court, Eastern District of Louisiana.

## There's only one Marshall in this town

Months ago, the heirs stopped receiving update statuses from the Wisner Field Inspector on the ongoing effects of the BP oil washing in on Wisner property. Michael Peneguy contacted the Field Inspector by email asking why the update statuses had stopped.  The Field Inspector replied that he was told by JV attorney Soren Giselson to stop sending updates to the Advisory Committee. After further inquiry by Peneguy to Giselson, City Attorney and current Mayoral appointee to the Advisory Committee, Erica Beck, informed Peneguy that she had instructed Giselson not to reply to him because she didn't want to "jeopardize the Committee's position with respect to its BP claim."

From: Erica N. Beck [mailto:enbeck@nola.gov]
Sent: Monday, February 10, 2014 11:14 AM
To: Michael J. Peneguy; Soren Giselson
Cc: Edward W. Donation; Anthony P. Lorino; Dr. Frank Opelika; Ed Buddy; Ron E. Gardner; William A. Peneguy; william_owens@uss.salvationarmy.org
Subject: RE: Message from Forrest

Mike, I know everyone on the Committee has the game goal here with respect to the BP claim, and I also know it is not anyone's intent to jeopardize the Committee's position with respect to its BP claim.  Accordingly, I am asking Soren to not respond to your inquiry for now.  Such a request should be authorized by the Committee and not come from one individual member without authorization from the Committee.  We can address this issue at the next committee meeting.

So understand this...Beck is ordering the JV attorneys not to share information with the Wisner Trust Advisory Committee....the counsel's clients.  Apparently the clients don't have the right to see information held by their attorneys in their own lawsuit.

This isn't surprising though if you look at the objectives of the Mayor and the JV attorneys.  The mayor believes the entire Trust is his...or rather the City's.  Actually I can't tell which.  The Lens calls actions like this being a bully (read the comment section)...the TP dutifully polished the turd and called it political hardball....other people call it being a productive asshole.

I call it not only unethical but quite possibly illegal.

**The government, court and media roundup?**

Both times I visited Wisner Beach, In February and October of 2013, to document the constant barrage of oil washing onshore there was a backlash from the Mayor's office towards the heirs for allowing me on the property.  The first trip I took in February resulted in Michael Sherman creating a "media policy" where the Advisory Committee would have to approve anyone wanting to visit the beach.  But Sherman didn't seem to think he needed Committee approval when he went on camera with John Snell of Fox 8.  Snell and Fox 8 had their cameras on the beach the same day I did.  (The beginning of that Snell story looks vaguely familiar does it not?)

Any rational legal person may look at this evidence and think at the very least there is an obvious malpractice suit waiting in the wings.  But the Mayor, his City attorneys and the JV attorneys may have even lassoed that bucking bronc....remember the City is now claiming that the heirs were never actually heirs to begin with.  Even though Ad Hoc Judge Zeno handed the mayor most everything he wanted in the hearing without much legal explanation, he refrained from ruling on the matter of the heirs' standing.  If the court decides the heirs aren't really heirs...they can't file a malpractice suit can they?

I recently made a post about "The $ Estate".  What I mean by The $ Estate is that I believe there are a a select few people within the city that have enough power and money to control all four estates of our democracy: executive, legislative, judicial and the press.  The three basic branches of government speak for themselves in this matter but the influence these power brokers have over the fourth estate, the press, may be a little harder to see.

If you scrape the surface, it reveals itself.

I find it curious that the Times-Picayune's "Louisiana Purchased" series focused on politicians and campaign bundling but left Mayor Landrieu out of the fray.  I did point out back in February of 2013, a year ago, that three of the JV attorneys contributed at least 10%, possibly as high as 15% or more, of Mayor Landrieu's campaign contributions for 2012 through campaign bundling.  Herman and Herman alone accounted for approximately $71,000 of $755,882.

I guess it never occurred to the TP to look at the Mayor's campaign contributions.  I wonder why?

Seems like the $ Estate is truly above the justice system, eh?  Well....maybe not.

Stay tuned to AZ this week, cowpokes...this rodeo could get interesting.

Posted by Dambala - Jason Brad Berry at 3/09/2014 06:46:00 PM

3 comments:    ✉    Links to this post

Labels: Calvin Fayard, Herman and Herman, JV attorneys, Michael Sherman, ODC complaint, PSC attorneys, The Wisner Trust, Wisner Beach

---

Thursday, February 27, 2014

## DHECC - Special Master Blaster run Bartertown!

Yesterday, the Coastal Claims Group (CCG) filed a motion to dismiss Greg Paw's (Freeh Group) attempt to claw back money from the Thonn claim. As AZ noted last month, Freeh and Paw must not have understood how claims and referrals work, as they severely overstated the amount of money they were attempting to claw back from the parties involved in the claim.

In CCG's case...they received nothing from the claim to begin with but Paw demanded they pay back $20,182.50. Here is the motion to dismiss filed by CCG:

CCG Motion to dismiss motion of the special master for return of payments made to Casey C. Thonn and others

I was having a hard time believing my eyes as I was reading this last night. CCG's attorney contacted Greg Paw to inform him that the special master was mistaken in including them in the claw back to which Paw replied:

> "Please let us know if your client does contest the Court's jurisdiction, as we will then review whether the DHECC should continue to consider documents prepared by your client given your client's [sic] assertion that it is not subject to the Court's oversight for such submissions."

Uhhh...what? The motion called that a "thinly-veiled threat"....I would call it something else but it didn't stop there. In a second email, within the week, Paw made the thinly-veiled threat clearer:

> "[y]our client should be aware that how it addresses this motion will have a bearing on its future ability to play any role in the DHECC claims process."

That....is what I would call extortion. CCG can call it whatever the hell they want but I call it extortion...pure and simple. The fact that Paw replied this way is harrowing. The fact that he put the threats on paper (email) is either stupid beyond belief or brash beyond belief...or both.

Instead of recognizing they made a mistake...a tens of thousands of dollars mistake...Paw threatens CCG to either shut up about it and pay up or they will stop processing CCG's other claims. I think that's the very definition of extortion, is it not?



I've been told Paw used to work for Chris Christie...I wonder who taught whom?

I will link the exhibits later.

Posted by Dambala - Jason Brad Berry at 2/27/2014 04:31:00 PM

25 comments:    Links to this post

Labels: DHECC, Extortion, Greg Paw, Louis Freeh

| Home | Older Posts |
|------|-------------|

Subscribe to: Posts (Atom)

Powered by Blogger.