UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | * | |
| GULF OF MEXICO, on | * | SECTION J |
| APRIL 20, 2010 | * | |
| | * | JUDGE BARBIER |
| | * | MAG. JUDGE SUSHAN |
| **THIS DOCUMENT APPLIES TO:** | * | |
| No. 12-311 | * | **JURY TRIAL DEMANDED** |

LIBERTY INSURANCE UNDERWRITERS, INC.'S
OPPOSITION TO PLAINTIFF CAMERON INTERNATIONAL, INC.'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

# EXHIBIT 2

| | |
|---|---|
| Christopher W. Martin | Judy Y. Barrasso, 2814 |
| Federal I.D. 13515 | Celeste, Coco-Ewing, 25002 |
| Robert G. Dees | BARRASSO USDIN KUPPERMAN |
| Federal I.D. 13899 | FREEMAN & SARVER, L.L.C. |
| 808 Travis, Suite 1800 | 909 Poydras Street, 24th Floor |
| Houston, Texas 77002 | New Orleans, Louisiana 70112 |
| 713-632-1700 (Telephone) | 504.589.9700 (Telephone) |
| 713-222-0101 (Facsimile) | 504.589.9701 (Facsimile) |

Attorneys for Liberty Insurance Underwriters, Inc.

Page 1

1

2  UNITED STATES DISTRICT COURT

3  EASTERN DISTRICT OF LOUISIANA

4  ------------------------------------X

5  In re: OIL SPILL BY THE OIL RIG

6  "DEEPWATER HORIZON" IN THE

7  GULF OF MEXICO, ON APRIL 20, 2010

8

9  Applies to:

10  12-311, Cameron Int'l Corp. v. Liberty

11  Ins. Underwriters, Inc., a/k/a Liberty

12  Int'l Underwriters

    ------------------------------------X

13

14

15       VIDEOTAPED DEPOSITION OF PAUL KOEPFF

16              New York, New York

17              August 15, 2013

18

19

20

21

22

23

24  Reported by:

    Bonnie Pruszynski, RMR

25  JOB 64642

Page 2

7  August 15, 2013
8  9:06 a.m.

12  Videotaped deposition of PAUL
13  KOEPFF, held at the offices of Clyde & Co LLP,
14  405 Lexington Avenue, New York, New York,
15  before Bonnie Pruszynski, a Registered
16  Professional Reporter, Registered Merit
17  Reporter, Certified LiveNote Reporter and
18  Notary Public of the State of New York.

Page 3

2  APPEARANCES:
3  WILLKIE FARR & GALLAGHER
4  Attorneys for Cameron
5      787 Seventh Avenue
6      New York, New York 10019
7  BY:  JEFFREY KORN, ESQ.
8       JAMES CAPUTO, ESQ.

10  BARRASSO USDIN KUPPERMAN FREEMAN & SARVER
11  Attorneys for the Defendant Liberty International
12      909 Poydras Street
13      New Orleans, Louisiana 70112
14  BY:  JUDY BARRASSO, ESQ.
15      -and-
16  MARTIN DISIERE JEFFERSON & WISDOM
17      808 Travis, Suite 1800
18      Houston, Texas 77002
19  BY:  GARY PATE, ESQ.
20  CLYDE & CO US
21  Attorneys for the witness
22      405 Lexington Avenue
23      New York, New York 10174
24  BY:  MICHAEL KNOERZER, ESQ.
25  ALSO PRESENT:  Michael Pinero, CLVS

Page 4

     P. Koepff
     THE VIDEOGRAPHER: This is the
start of the tape labeled number one in
the videotape deposition of Paul Koepff
in the matter In re: Oil Spill by the Oil
Rig "Deepwater Horizon" in the Gulf of
Mexico, on April 20, 2010.
     Today is August 15, 2013. The time
is approximately 9:06 a.m.
     Appearances have already been noted
by the court reporter.
     Will the court reporter please
swear in the witness?
     (Witness sworn.)
     MS. BARRASSO: Before we get
started, we just want to put on the
record -- Judy Barrasso for Liberty
Insurance Underwriters -- Mr. Koepff is a
lawyer appearing here today, and he has
represented several insurers in the
Deepwater Horizon matter, including
Liberty.
     And liberty is not waiving any
privileges by virtue of his testimony
today, and we don't consider this a

Page 5

     P. Koepff
waiver of the attorney-client or the work
product privilege.
     And we'd ask, Mr. Korn, you give us
the same courtesy that you asked for, for
Mr. Eastman, to steer clear of questions
that clearly would invade the privileges.
     MR. KORN: We will take it as it
goes. There is going to be a segment of
my questioning which will ask for
information that I believe that you are
going to contend is covered by the
attorney-client or attorney work product
privileges.
     I will let you know when I am about
to do that, and my expectation is that
you are going to be instructing the
witness on those questions. I just want
to be clear about what is and is not
within, you know, the claimed privilege
in this matter.
     So I will let you know. As I said,
I'm expecting you to instruct the witness
to not answer those questions, and I'm
expecting him to follow those

Page 250

```
1          P. Koepff
2   subrogation rights?
3       A    It was expressing its objections
4   and reservations on that issue.
5       Q    Okay, thank you.
6           MS. BARRASSO:  Jeff, was this
7   marked as an exhibit yesterday or before?
8           MR. KORN:  I think before.  I think
9   Mr. Pate had marked it.
10          MR. PATE:  Yes, that had been
11  marked.
12          MS. BARRASSO:  We'll have to find
13  out the exhibit number.
14  BY MS. BARRASSO:
15      Q    Mr. Koepff, before lunch, Mr. Korn
16  had been asking you about the final
17  settlement agreement which is part of
18  Exhibit -- Engel Exhibit 16 in your stack.
19      A    Yep, I have it.
20      Q    And Mr. Korn had asked you
21  specifically about paragraph 4.4.  Since we
22  broke for lunch, have you had an opportunity
23  to review the other provisions of the
24  BP-Cameron settlement agreement?
25      A    Yes, over lunch, you asked me to
```

Page 251

```
1          P. Koepff
2   read the whole agreement, and I did that.
3       Q    Okay.  And having read that, what
4   effect -- can you tell us what effect the
5   BP-Cameron settlement agreement had, if any,
6   on Liberty's subrogation rights?
7           MR. KORN:  Objection to form.
8       A    Well, there is a paragraph 4.5 on
9   page seven that reads, "To the fullest extent
10  allowed by law, Cameron hereby assigns all
11  title -- all right, title and interest to all
12  claims that the Cameron-releasing parties
13  have asserted or could assert against any
14  third parties," which would include, I think,
15  BP, "including any indemnification claims
16  against Transocean."
17          So, that would also mean they're
18  transferring any rights of contractual
19  indemnification that Cameron had against
20  Transocean under the Transocean contracts.
21          "And further including claims for
22  fines, penalties, sanctions or punitive or
23  other exemplary damages arising out of the
24  DWH incident to BP, and BP accepts right,
25  title."
```

Page 252

```
1          P. Koepff
2           That does not have any exception or
3   carve-out for any of what are called the
4   releasing insurers, or any carve-out for
5   Liberty.  So, my view would be, this
6   provision means that Cameron no longer has
7   any right to pursue contractual indemnity
8   from Transocean, and as a consequence, if
9   someone had a subrogation claim and wanted to
10  base it on the contractual right of indemnity
11  that Cameron had against Transocean, they no
12  longer can assert that, because it's been
13  transferred to BP, everything about it.
14          So, hypothetically, if Liberty
15  wanted to pursue subrogation based on
16  contractual indemnity against BP -- I'm
17  sorry, against Transocean, and then
18  Transocean against BP, BP would say, sorry,
19  Charlie, Liberty, you don't have that kind of
20  subrogation claim, because, as a result of
21  this agreement, Cameron transferred and
22  assigned all of that, so they no longer had
23  that right.
24          And that's true for all insurers,
25  including Liberty, as I read 4.5.  And then I
```

Page 253

```
1          P. Koepff
2   went back now and looked at 4.4, and, you
3   know, now that I look at the language of 4.4
4   in the light of 4.5, it seems to me 4.5
5   stands independent of 4.4, because 4.4
6   doesn't deal with carving out the transfer of
7   contractual indemnity claims.
8           It purports to say it's -- Cameron
9   is not releasing a subrogation right of
10  Liberty, but that doesn't take away from the
11  fact that Cameron has transferred away or
12  assigned away its right of contractual
13  indemnity for Transocean, and as I said
14  earlier this morning, that's when I did this,
15  now that I look at 4.4, Cameron -- I mean,
16  Cameron can't release any subrogation or the
17  rights of Liberty.  And as I recall it now
18  even more specifically, I think there were
19  letters that had to be written by each
20  insurer that was settling with Cameron, where
21  they consented or agreed that Cameron could
22  waive subrogation rights on their behalf.
23          So, I am not so sure now that
24  Liberty has -- in fact, I would say I am
25  being kind.  I don't think Liberty has a
```

Page 254

1  P. Koepff
2  subrogation claim anymore as a result of this
3  settlement agreement.
4     Q   So, after Cameron executed this
5  agreement with BP, is it correct, as you
6  understand it, that Liberty -- that LIU had
7  no further subrogation rights that could have
8  been based upon Cameron's indemnity rights
9  against Transocean?
10        MR. KORN: Objection. Form.
11    A   Well, as I said, as a result of
12 this agreement, Cameron no longer had any
13 contractual rights of indemnity from
14 Transocean, because they had been assigned
15 and transferred away. Therefore, any insurer
16 like Liberty could not have a subrogation
17 claim, because there was no longer a
18 contractual indemnity to base it on.
19        MS. BARRASSO: I have no further
20    questions. Let me just note for the
21    record that the Chubb letter dated
22    December 2nd, 2011, bearing Bates number
23    CIC 4180, that I asked Mr. Koepff about,
24    has previously been identified as Eastman
25    Exhibit 113.

Page 255

1  P. Koepff
2        MR. KORN: Okay. I have a few
3    redirect questions for you. We can stay
4    on the record, if that's okay with
5    everybody.
6  EXAMINATION
7  BY MR. KORN:
8     Q   So, I want to direct your
9  attention, Mr. Koepff, back to the BP-Cameron
10 settlement agreement.
11        MS. BARRASSO: I'm sorry, I took
12    it.
13    A   I got it, I think. Yeah.
14    Q   Do you have that in front of you?
15    A   Yes.
16    Q   Okay. Now, when I first asked you
17 about section 4.4 of the BP settlement
18 agreement, it was your testimony that you
19 viewed this as an indication that BP was not
20 insisting on a waiver of subrogation as to
21 Liberty, and that's how you read the
22 provision.
23    A   Without looking at anything else,
24 that's right.
25    Q   And now that you have reviewed the

Page 256

1  P. Koepff
2  Cameron-BP settlement agreement over lunch
3  and spoke with Liberty's counsel, you have a
4  different opinion?
5        MS. BARRASSO: Object to the form.
6     A   I -- first of all, I did not speak
7  with Liberty's counsel. They asked me to
8  review this entire agreement, since I wasn't
9  able to do that this morning. And as I did
10 say this morning, and I know I said it this
11 morning, I didn't think language in 4.4 that
12 Cameron is not releasing a subrogation claim
13 against others, which Liberty might have,
14 made sense to me. And I am not going to go
15 over my testimony. It will stand for itself.
16 Okay.
17        So, that was one thing. But then
18 over lunch, I was asked by Ms. Barrasso to
19 read the entire agreement, and be able to
20 answer questions about the effect of this
21 settlement agreement. That's all I have
22 done. I hadn't read 4.5 until lunchtime.
23        And now that I have read
24 paragraph 4.5, I can see that is separate and
25 independent from 4.4, and 4.4 doesn't affect

Page 257

1  P. Koepff
2  4.5. So, I can tell you with some degree of
3  certainty, absolute certainty, that 4.5 means
4  any insurer of Cameron, including Liberty,
5  has no subrogation claim based on contractual
6  indemnity, because four -- under 4.5, Cameron
7  gave that away.
8     Q   That is your legal opinion?
9     A   Well, that is my analysis of 4.5.
10 We can call it a legal opinion.
11    Q   You remember testifying earlier
12 that the BP settlement agreement speaks for
13 itself, and that it's not your job to
14 interpret the agreement?
15    A   Well, I don't know what I said
16 earlier. I will agree with you it speaks for
17 itself.
18    Q   Will you also agree that it's not
19 your job to interpret the agreement?
20        MS. BARRASSO: Object to the form.
21    A   Well, if I am asked a question, to
22 give -- I agree with you that it's not my job
23 to do a lot of things in life; right? But if
24 I am at a deposition, and someone asks me a
25 question about something, I will answer it,

```
1

2                C E R T I F I C A T E

3    STATE OF NEW YORK    )

4                         : SS.

5    COUNTY OF NEW YORK   )

6

7                                    I, BONNIE

8    PRUSZYNSKI, a Notary

9        Public with and for the State of New York,

10       do hereby certify:

11           That PAUL KOEPFF, the witness

12       whose deposition is hereinbefore set forth,

13       was duly sworn by me and that such deposition

14       is a true record of the testimony given by

15       the witness.

16           I further certify that I am not related

17       to any of the parties to this action by

18       blood or marriage, and that I am in no way

19       interested in the outcome of this matter.

20           IN WITNESS WHEREOF, I have hereunto

21       set my hand this 20th of August, 2013.

22

23                        _____

24                        Bonnie Pruszynski

25
```