UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | * | |
| GULF OF MEXICO, on | * | SECTION J |
| APRIL 20, 2010 | * | |
| | * | JUDGE BARBIER |
| | * | MAG. JUDGE SUSHAN |
| **THIS DOCUMENT APPLIES TO:** | * | |
| **No. 12-311** | * | **JURY TRIAL DEMANDED** |

**LIBERTY INSURANCE UNDERWRITERS, INC.'S
OPPOSITION TO PLAINTIFF CAMERON INTERNATIONAL, INC.'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

# <u>EXHIBIT 13</u>

Christopher W. Martin
Federal I.D. 13515
Robert G. Dees
Federal I.D. 13899
808 Travis, Suite 2000
Houston, Texas 77002
713-632-1700 (Telephone)
713-222-0101 (Facsimile)

Judy Y. Barrasso, 2814
Celeste, Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana  70112
504.589.9700 (Telephone)
504.589.9701 (Facsimile)

Attorneys for Liberty Insurance Underwriters, Inc.

Page 1

1

2    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF LOUISIANA
3    ----------------------------------X
     In Re:  OIL SPILL BY THE OIL RIG
4    "DEEPWATER HORIZON" IN THE GULF OF
     MEXICO, ON APRIL 20, 2010,
5

6    Applies to:
7    12-311, Cameron Int'l Corp. v. Liberty
     Ins. Underwriters, Inc., a/k/a Liberty
8    Int'l Underwriters
9

     ----------------------------------X
10

11

12           VIDEO DEPOSITION OF JAMES ENGEL
13              New York, New York
14               May 29, 2013
15

16

17

18

19

20

21   Reported by:
22   Rebecca Schaumloffel, RPR, CLR
23   Job No.  61441
24

25

Page 2

```
 1
 2
 3
 4                 May 29, 2013
 5                 9:26 a.m.
 6
 7
 8
 9        Video deposition of James Engel,
10   held at the offices of WILLKIE, FARR &
11   GALLAGHER, 787 Seventh Avenue, New York, New
12   York, before Rebecca Schaumloffel, a
13   Registered Professional Reporter, Certified
14   Livenote Reporter and Notary Public of the
15   State of New York.
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1
 2   A P P E A R A N C E S:
 3
 4   WILLKIE FARR & GALLAGHER
        Attorneys for Cameron
 5      787 Seventh Avenue
        New York, New York 10019
 6   BY: JEFFREY KORN, ESQ.
            DOUGLAS MISHKIN, ESQ.
 7
 8
 9   STONE PIGMAN WALTHER WITTMANN
        Attorneys for Cameron
10      546 Carondelet Street
        New Orleans, Louisiana 70130
11   BY: CARMELITE BERTAUT, ESQ.
12
13
14   MARTIN DISIERE JEFFERSON & WISDOM
        Attorneys for the Defendant
        808 Travis
15      Dallas, Texas 77002
     BY: CHRISTOPHER MARTIN, ESQ.
16
17
18   BARRASSO USDIN KUPPERMAN FREEMAN &
     SARVER
19      Attorneys for the Defendant
        909 Poydras Street
20      New Orleans, Louisiana 70112
     BY: JUDY BARRASSO, ESQ.
21
22
23   ALSO PRESENT:
24      Dale Swindell, videographer
25
```

Page 4

```
 1
 2
 3        THE VIDEOGRAPHER:  This is the
 4   start of media labeled number one of
 5   the videotaped deposition of James D.
 6   Engel in the matter of In Re Oil Spill
 7   By the Oil Rig "Deepwater Horizon" In
 8   the Gulf of Mexico on April 20, 2010.
 9   This deposition is being taken in the
10   individual case Cameron International
11   Corp. V Liberty Insurance
12   Underwriters, civil action number
13   12-311.  This deposition is being held
14   at 787 Seventh Avenue, New York, New
15   York on May 29, 2013, at approximately
16   9:26 a.m.
17        My name is Dale Swindell from
18   TSG Reporting, Incorporated.  I am the
19   certified legal specialist.  The Court
20   Reporter is Rebecca Schaumloffel in
21   association with TSG Reporting.
22   Counsel will be noted on the Court
23   Reporter's record.
24        Will the Court Reporter please
25   swear in the witness.
```

Page 5

```
 1              J. ENGEL
 2   J A M E S  D.  E N G E L, called as a
 3   witness, having been duly sworn, testified
 4   as follows:
 5   EXAMINATION BY
 6   MR. KORN:
 7        Q.   Good morning.
 8        A.   Good morning.
 9        Q.   Could you please state your full
10   name and address for the jury.
11        A.   James David Engel; 2 Leather Leaf
12   Court, Medford, New Jersey.
13        Q.   And, Mr. Engel, where are you
14   employed today?
15        A.   Liberty International
16   Underwriters here in New York.
17        Q.   And what is your position at
18   Liberty?
19        A.   Senior vice-president and chief
20   claim officer of Liberty International
21   Underwriters, U.S. region.
22        Q.   What does it mean to be the chief
23   claim officer of Liberty International?
24        A.   I am responsible for all of their
25   claim matters.
```

Page 134

J. ENGEL
1
2    Q.   Why was he retained when you
3  already had Mr. Koepff as your counsel?
4    A.   Because Mr. Martin is an expert
5  in Texas law which governs our policy.
6    Q.   So you sought expert legal advice
7  on Texas law from Mr. Martin in connection
8  with Cameron's claim; is that fair?
9    A.   Yes.
10   Q.   Do you know what the Latin term
11 contra proferentem means?
12   A.   No.
13   Q.   Are you familiar with the rules
14 of contract interpretation for -- that apply
15 to insurance policies?
16   A.   When you say "the rules" --
17   Q.   Do you know how insurance
18 policies are interpreted?
19   A.   Based on their plain language is
20 my understanding.
21   Q.   Do you know of any presumptions
22 that apply as a matter of law when it comes
23 to the interpretation of provisions of
24 insurance policies?
25   A.   Be more specific, please.

Page 135

J. ENGEL
1
2    Q.   I think the question is, do you
3  know of any presumption that applies as a
4  matter of law when it comes to the
5  interpretation and provisions of insurance
6  policies?  You can answer that no if you
7  don't know of any presumption.
8    A.   We have a duty to our insured.
9    Q.   What is the duty that you had to
10 your insured?
11   A.   To be fair in our interpretation
12 of the policy.
13   Q.   That's your understanding of
14 the --
15   A.   Yes.
16   Q.   -- duties of the insurance
17 company?
18   A.   Yes.
19   Q.   Do you know whether there are any
20 differences in the Texas law that apply to
21 the -- that cover the duties for an insurance
22 company?
23   A.   Well, Texas has certain
24 provisions that apply.  Like, for example, if
25 there is a coverage dispute, then Texas law

Page 136

J. ENGEL
1
2  says that you don't pay any chase because if
3  you pay and the decision is found in your
4  favor, you have lost your money.  So Texas
5  law says that you ask the Court for a finding
6  on the disputed point of law.
7    Q.   Is that why you didn't pay
8  Cameron?
9    A.   No, we didn't pay Cameron because
10 our policy hadn't attached.
11   Q.   You understood there was a
12 difference -- that Cameron had a different
13 view of that interpretation, right?
14   A.   Yeah, they definitely had a
15 different view.  Frankly, I thought that it
16 surprised them that they didn't know that
17 that language existed in our policy.  That
18 was my impression.
19   Q.   What do you mean Cameron was
20 surprised, from your perspective?
21   A.   Well, I believe when Mr. Koepff
22 first advised Cameron's counsel of that
23 provision, they acted surprised about that,
24 about that fact.  The fact that we -- that
25 our policy had different language in it than

Page 137

J. ENGEL
1
2  the rest of the other policies in the tower.
3    Q.   Is it your understanding that
4  Liberty International has an obligation to
5  tell its insureds its policy attaches
6  and when it doesn't attach?
7    A.   I think that's fair as long as
8  there is the potential for the policy to
9  attach.
10   Q.   Where Liberty's view is that the
11 policy doesn't attach, does it have an
12 obligation to tell the insureds that the
13 policy does not attach?
14   A.   It does not attach?
15   Q.   Um-hum.
16   A.   I thought I just answered that.
17 That's a fair expectation of the insurer when
18 it's aware that its policy might be
19 implicated.
20   Q.   To make sure I understand, if the
21 claim is submitted to Liberty International
22 by an insured, it presumably thinks that its
23 claim is -- its policy is going to be
24 implicated by the claim, right?
25   A.   No, not necessarily.  We receive

Page 288

C E R T I F I C A T E

STATE OF NEW YORK        )

              :  SS.:

COUNTY OF NASSAU         )


          I, REBECCA SCHAUMLOFFEL, a Notary

Public for and within the State of New York,

do hereby certify:

          That the witness whose examination

is hereinbefore set forth was duly sworn and

that such examination is a true record of the

testimony given by that witness.

          I further certify that I am not

related to any of the parties to this action

by blood or by marriage and that I am in no

way interested in the outcome of this matter.

          IN WITNESS WHEREOF, I have hereunto

set my hand this 20th day of May, 2013.

          _____

          REBECCA SCHAUMLOFFEL