## MEMORANDUM IN SUPPORT

### I.  Background

#### A.  GCCF-Related Claims

In August 2010 BP established a $20 billion trust to pay claims of individuals and businesses affected by the *Deepwater Horizon* oil spill. Payment of the claims, including those involving lost earnings or profits, originally occurred through the "GCCF".  Between August 2010 and early 2012, the GCCF paid approximately $6 billion to claims associated with Gulf Coast residents.

While the GCCF was ongoing and settlement offers were being made to claimants, the PSC was conducting litigation alongside class action settlement efforts purportedly for the common benefit of all putative class members under MDL 2179.  Funds for their time and effort were allegedly paid up front by the PSC members.[1] In order to recoup its costs, and to access BP's $20 billion trust fund, the PSC asked the Court to approve the formation of an "escrow" account whereby it could collect a 6% surcharge, or 6 cents of every dollar, from all settlement offers made through the GCCF.[2]  Without this request the PSC could not access BP's trust fund because it was a third party administrative settlement program under the Oil Pollution Act ("OPA"). The PSC considered the escrow account to be a special reserve fund that could be used for reimbursement of its time representing the putative class during litigation and class settlement efforts.[3]

Push back from BP was immediate.[4]  BP felt that the PSC could not take any percentage of settlement funds from GCCF claimants, which would have been an "unprecedented extension

---

[1] Rec. Doc. 4507-1 at pages 5, 23-24 of 43.
[2] Rec. Doc. 4507 at page 2 of 6.
[3] Rec. Doc.  4507-1 at pages 5, 9 of 43.
[4] Rec. Doc. 4696.

of the common benefit doctrine" by the Court.[5]   Regardless, on January 18, 2012 the Court authorized the PSC to collect hold-back fees from settlement offers and place them into a court-supervised escrow account called the MDL 2179 Reserve Account.[6] The Court noted that hold-back fees would not be applied to the following:

- Settlement offers issued from the GCCF on or before December 30, 2011.[7]

- Settlement offers issued from the GCCF for claims not associated with MDL 2179.[8]

By March 8, 2012, the BP Defendants and Class Counsel reached a settlement under MDL 2179.  As part of the Settlement Agreement the GCCF would be terminated, despite its success.  In its place BP would allocate up to $600,000,000 to compensate the PSC for "all common benefit and/or Rule 23(h) attorneys' fees, costs and expenses incurred at any time" associated with settlement class claims.[9] The amount was considered equivalent to a 6% value of legal benefits provided to class members. Thus the trade-off for BP shutting down the GCCF was the Settlement Agreement requiring claimants to adhere to documentation requirements more stringent than required under the GCCF.  The result has been a win situation for BP which has compensated claimants affected by the *Deepwater Horizon* oil spill for an amount far less than the $20 billion it projected to distribute under the GCCF.

As part of the Settlement Agreement, the GCCF would transition into a new claims process called the Court Supervised Settlement Program ("Settlement Program").[10]  Prior to that time the Transition Claims Process continued to settle GCCF-related claims until the Settlement

---

[5]  Rec. Doc. 4696 at page 2 of 9.
[6]  Rec. Doc. 5274.
[7]  Rec. Doc. 5274.
[8]  Rec. Doc. 5274.
[9]  Rec. Docs. 6276; 6430-46.
[10]  Rec. Doc. 7110-3 at pages 9-10 of 41.

Program opened on June 6, 2012.[11] Since MDL-related GCCF claims assessed during the Transition Claims Process were considered to be under the settlement class, the PSC could not collect hold-back fees from related settlement offers since it was already being compensated for its time under the $600,000,000 common fund of the Settlement Agreement.[12] Allowing the PSC to collect the 6% in hold-back fees along with fees from the $600,000,000 common fund would amount to attorney fee double-dipping.  That is why on October 16, 2012 the Court ordered the Settlement Program to immediately refund all "6% hold-back amounts from payments made to Gulf Coast Claims Facility ("GCCF") claimants who had opted for 60% payments and who remain in the economic settlement class" during the Transition Claims Process.[13] Even Class Counsel and BP agreed that all claimants who received 60% transition payments were entitled to a refund of hold-back fees from the MDL 2179 Reserve Account.

Prior to the implementation of the Transition Claims Process another category of GCCF-related claims were being assessed hold-back fees. They included GCCF claims associated with actions filed in, or removed to, federal court (whether or not a remand had been filed) or were state court plaintiffs represented by counsel who participated in, or had access to, discovery conducted in the MDL. Similar to GCCF claims provided with settlement offers before December 30, 2011[14], these claims were presented with settlement offers between January 1, 2012 and February 26, 2012.  Even though the claims were settled prior to the start of the Transition Claims Process, the Settlement Program withheld from the settlement offers 6% hold-

---

[11] Rec. Doc. 5995.
[12] Rec. Doc. 6428.
[13] Rec. Doc. 7660.
[14] Rec. Doc. 5274.

back fees.[15] This occurred despite prior orders that required the GCCF—not the Settlement Program—to pay the claims:

> "22. Effective immediately, the GCCF shall no longer accept, process or pay claims submitted to it, except as provided herein, provided however that the GCCF shall pay those claims for which all of the following occurred: (i) the GCCF sent the claimant a determination letter offering a sum certain prior to 11:59 pm, EST on February 26, 2012; (ii) the claimant accepted in writing the sum certain set forth in the determination letter and the GCCF received the executed release prior to 11:59 pm, EST on February 26, 2012; and (iii) neither BP not the claimant filed an appeal with the GCCF prior to the date on which this Order is entered."[16]

### B.      Refund of GCCF-Related 6% Hold-Back Fees

Despite assurances that claimants would receive prompt payment of their GCCF settlement offers, numerous BCA clients have yet to receive refunds for 6% hold-back fees improperly deducted from their GCCF-related final payment offers. (See **Attachment A**, with private information redacted.  It also includes claimant information associated with the other law firms who have joined in this motion). This has occurred despite BCA clients receiving letters from the Claims Administrator stating that they were entitled to a refund of the fees. (See **Attachment B**, with private information redacted.)  Furthermore, even though the BCA law firm has repeatedly requested the Settlement Program to refund the fees to its clients, little, if anything has been done by the Settlement Program to ensure that it occurs. This lack of cooperation is best summarized by an April 2013 email from the Settlement Program's Ms. Robin Keator, who confirmed a continued delay in paying transition claims associated with 60% Final Payment Offers**:**

> "I received confirmation now as to how the 6% MDL holdback is to be reimbursed to Claimants with Transition Payments. One of the Settlement vendors is handling the process of issuing 6% reimbursement, which is to be separate from the processing of DHW claims compensation.  The language that

---

[15] Rec. Doc. 7613 at page 2 of 7.
[16] Rec. Docs. 5988 and 5995.

went out with some payments and Notices was outdated, and we are working to have this corrected; I am very sorry for the confusion it has caused.  We have been confirming with the vendor that Claimants that received correspondence, with that outdated language, are included on the list of 6% reimbursements to be issued."  (See **Attachment C**, with private information redacted.)

It has now been 15 months since the Court's October 16, 2012 hold-back order requiring that a refund of 6% holdback fees previously withheld from 60% Final Payment Offers "should now be made".[17]  It has been 24 months since the Court issued its January 18, 2012 Order clarifying that hold-back fees were not to be taken from non-MDL 2179 settlement offers.[18]  It has also been 24 months since the Court made it clear that hold-back fees were not to be taken from settlement offers involving GCCF claims made before February 26, 2012.[19]  Therefore refunds of hold-back fees involving GCCF-related GGCF settlement offers to BCA claimants should have occurred long ago.

The unnecessary administrative delays that the BCA clients have experienced regarding the refund of 6% hold-back fees have involved the Claims Administrator, BP, the Brown-Greer law firm or the Price Waterhouse accountants.  Many hours have been expended by the BCA law firm to resolve the matter, as evidenced by continuous back and forth emails, telephone calls and conference calls between the BCA law firm and the Settlement Program.  The effort has produced the refund of 6% in hold-back fees for one client—which constitutes an acknowledgement by the Settlement Program that 6% hold-back refunds can and should be made to all BCA clients. (See **Attachment D**, with private information redacted.)  However, due to continued administrative hold-ups, the rest of the refunds are not being issued. This is unfortunate.  It is also in violation of the OPA and the Court's orders as described herein.

---

[17] Rec. Doc. 7660.
[18] Rec. Doc. 5274.
[19] Rec. Doc. 5995.

## II. Argument

The Settlement Program is obligated to refund the 6% hold back fees improperly withheld from settlement offers made to BCA clients. The settlement funds include (a) GCCF-related offers presented before February 26, 2012, (b) GCCF-related offers <u>not</u> associated with MDL 2179, (c) 60% Total Final Payment Offers approved during the Transition Claims Process, and (d) GCCF interim claim offers that are not the result of any common benefit work produced by the PSC. This Court has ample authority to require a refund of the fees under Item 18 of the Settlement Agreement which allows the Court to retain continuing jurisdiction over the "qualified settlement fund"[20], and Item 4.4.7 of the Agreement which states that "[t]he Settlement Program and its Claims procedures shall be subject to the ongoing supervision of the Court."[21]   A full accounting of the amounts of 6% hold back fees improperly withheld from BCA clients is listed in **Attachment A** (which includes claimant information associated with the other law firms who have joined in this motion). Due to the confidential nature of the settlement information contained in the attachment, it is in redacted form and filed separately under seal with the Court.

(a) ***Court order precludes application of hold-back fees to GCCF claims provided settlement offers before February 26, 2012.***

As noted herein, on January 18, 2012 the Court authorized the PSC to collect hold-back fees from settlement offers which were to be placed into the MDL 2179 Reserve Account.[22] However the Court made it clear that hold-back fees were not to be taken from settlement offers involving GCCF claims in the MDL 2179 if made before February 26, 2012 as long as certain

---

[20] Rec. Doc. 8139 at page 6 of 15.
[21] Rec. Doc. 6430-1 at page 25 of 123.
[22] Rec. Doc. 5274.

conditions were satisfied in advance.[23]  Those conditions have been met for the following BCA clients who have had hold-back fees improperly taken from their GCCF-related offers settled *before* February 26, 2012 (which include the distribution and acceptance of GCCF determination letters without appeals):

| GCCF/DHECC Claimant # | Name |
|---|---|
| 3181138/100041254 | TRAN, JOHNNY |
| 3414867/100041794 | BRANAN, WILLIAM |
| 3522046/100042177 | DONOIAN, JOSEPH |
| 3504595/100029793 | FIELDS, TED |
| 1120716/100040776 | TOLBERT, PATRICIA |
| 1005103/100014978 | BEACH RESORT INVESTMENT |
| 1136241/100040848 | CAPTAIN DAVES SEAFOOD MARKET |
| 1021070/100035347 | LE, NHAC |
| 1070775/100038448 | TOLBERT ENTERPRISES |
| 1079066/100038897 | PHAM, JOSEPH |
| 1102895/100039835 | LY, PHUC |
| 3352478/100038435 | MADISONS |
| 3506831/100030751 | FISHERMANS REEF - VRB |
| 3504595/100029793 | FIELDS, TED |
| 3414375/100041796 | NGUYEN, DUNG |
| 1166156/100040903 | NGUYEN, TONY |
| 1132791/100040852 | DANG, THANH |
| 3142551/100041164 | DINH, CHU |
| 3169140/100037211 | SARTINS WEST |
| 1100411/100039838 | NGUYEN, NGU |
| 3451062/100041911 | RILEY, MARK |
| 1084383/100039181 | TRAN, MY |
| 3406313/100041810 | PHAM, CODY |
| 3352112/100081194 | FARMER BOYS CATFISH KITCHENS INTERNATIONAL |
| 3313091/100041546 | VO, TON |

---

[23] "(i) the GCCF sent the claimant a determination letter offering a sum certain prior to 11:59 pm, EST, on February 26, 2012; (ii) the claimant accepted in writing the sum certain set forth in the determination letter and the GCCF received the executed release prior to 11:59 pm, EST, on February 26, 2012, and (iii) neither BP nor the claimant filed an appeal with the GCCF prior to the date on which this Order is entered." (See Rec. Doc. 5995 at page 5 of 5.)

| GCCF/DHECC Claimant # | Name |
|---|---|
| 3402447/100041819 | TRAN, KEVIN |
| 3384872/100041763 | ROBINSON, RUSSELL |
| 3167998/100041289 | DO, MINH |
| 3307179 | DUONG, VAN |
| 3542633/100042266 | RAJABI-MUGADAM, OLEG |
| 3437085 | LOPEZ-ORTIZ, DARLIN |
| 1113744/100119194 | PHAM, HOI |
| 3316946/100119210 | PHAM, ICH |
| 3072658/100113358 | ROSS, DANIEL |
| 3578588/100112471 | NGUYEN, TRAM |
| 3123193/100119556 | CATES, BESSIE |

The BCA clients respectfully request that the Court enforce its First Amended Order Creating the Transition Process[24] and require the Settlement Program to immediately refund these BCA clients the 6% hold-back fees taken from their GCCF-related settlement offers.  The BCA clients also request that the Court require the PSC to include interest, as deemed by the Court, for the delay in paying the refund.

> **(b) Court order precludes application of hold-back fees to GCCF claims not in MDL 2179.**

Under its January 18, 2012 Order, the Court made it clear that hold-back fees were not to be taken from settlement offers made to GCCF claims <u>not</u> associated with MDL 2179.[25] However hold-back fees have been improperly taken from the following BCA claim offers not associated with MDL 2179:

| GCCF/DHECC Claimant # | Name |
|---|---|
| 1020093/100119214 | NGUYEN, DANNY |
| 1094829/100119200 | NGUYEN, VUI |
| 1106421/100119198 | TRAN, CHRIS |
| 3310035/100112464 | PHAM, AN |

[24] Rec. Doc. 5995.
[25] Rec. Doc. 5274.

| GCCF/DHECC Claimant # | Name |
|---|---|
| 3146106/100119199 | NGUYEN, NGHIA |
| 3508274/100112447 | MAI, DUY |
| 3114286/100119204 | FOY, MAURICE |

The Court has no jurisdiction over GCCF claimants who are not before it. Consequently it has no authority to authorize the deduction of hold-back fees from payments made to parties not associated with MDL 2179. As held by the Fourth Circuit in *In re Showa Denko K.K. L-Tryptophan Products Liability Litigation-II*, 953 F.2d 162 (4th Cir. 1992), certain provisions of the district court's hold back order were invalidated because they "compel[led] contributions from plaintiffs in state or federal litigation who are not before the court and *by claimants who have chosen not to litigate but to compromise their claims outside of the court*." *Id.* at 166, emphasis added. As the court explained, "[c]laimants who have not sued and plaintiffs in state and untransferred federal cases have not voluntarily entered the litigation before the district court nor have they been brought in by process. The district court simply has no power to extend the obligations of its order to them." *Id.*; *see also*, *e.g.*, *In re Baycol Prods.*, No. MDL 1431MJD/JGL, 2004 WL 1058105, at *3 (D. Minn. May 3, 2004) (concurring with *Showa Denko* that a transferee court's jurisdiction in an MDL is limited to cases and controversies between persons who are properly parties to the cases transferred; holding that since no class had yet been certified, putative class members were not before the court and, by choosing to settle, were opting out of the class); *In re OSB Antitrust Litig.*, 2009 U.S. Dist. LEXIS 17361 at *14 (E.D. Pa. Mar. 4, 2009) (citing *Showa-Denko* and holding that the court had no jurisdiction over opt-out plaintiffs). Therefore the BCA clients not associated with MDL 2179 respectfully request that the Court require the Settlement Program to immediately refund them the 6% hold-

back fees taken from their GCCF-related settlement offers, and require the PSC to include interest, as deemed by the Court, for the delay in paying the refund.

> ### (c) Court orders preclude application of hold-back fees to GCCF claims associated with 60% Total Final Payment Offers.

As noted herein, on October 16, 2012 the Court ordered the Settlement Program to immediately refund all 6% hold-back amounts from payments made to GCCF claimants who opted for 60% payments but remained in the settlement class during the Transition Claims Process.[26] However hold-back fees were improperly taken from numerous BCA claimants who accepted 60% Total Final Payment Offers, and have not been refunded to date. They include the following:

| GCCF/DHECC Claimant # | Name |
|---|---|
| 1120716/100040776 | TOLBERT, PATRICIA |
| 1070775/100038448 | TOLBERT ENTERPRISES |
| 1005103/100014978 | BEACH RESORT INVESTMENT |
| 3566164/100042538 | HOANG, JOHN |
| 1102895/100039835 | LY, PHUC |
| 1123277/100040802 | NGUYEN, UT VAN |
| 3375268 | PHAN, THUY |
| 3311657/100041555 | DO, DE |
| 1166156/100040903 | NGUYEN, TONY |
| 3262342/100041458 | SMITH, CYNTHIA |
| 1025228/100014975 | SEA CHAMPS SEAFOOD |
| 3414375/100041796 | NGUYEN, DUNG |
| 3226662/100012433 | DANEAULT, RICK |
| 3441645/100041930 | SCOTT, JAMES |
| 1038708/100036770 | BUI, PHONG |
| 3425208/100041866 | THOMPSON, GERARD |
| 1040757/100036769 | NGUYEN, JIMMY |
| 1025614/100035339 | T&J MARINE |
| 3008437/100040979 | HOANG, HOAN |

---

[26] Rec. Doc. 7660.

| GCCF/DHECC Claimant # | Name |
|---|---|
| 3504595/100029793 | FIELDS, TED |
| 3238148/100041425 | ALVARDO, JOAQUIN |
| 3330996/100041603 | LAM SIMONS, UYEN |
| 3317336/100038454 | NGUYEN, TIEN |
| 1148230/100040824 | VONGPANYA, KAREN |
| 3419373/100037951 | MCCUMBERS, DAVID |
| 1100411/100039838 | NGUYEN, NGU |
| 1134864/100036685 | TRUONG, THEM |
| 1073753/100035466 | SANDERS, PAUL |
| 1027240/100035337 | TL&S |
| 1066700/100030768 | MOSES, WILLIAM |
| 3231611/100033564 | HA, DUONG |
| 3406313/100041810 | PHAM, CODY |
| 3142551/100041164 | DINH, CHU |

The BCA clients respectfully request that the Court enforce its Order Concerning Refund of transition Payments[27] and require the Settlement Program to immediately refund to them the 6% hold-back fees taken from their GCCF-related settlement payments, and require the PSC to include interest, as deemed by the Court, for the delay in paying the refund.

> ### (d) Hold-back fees should not apply to GCCF interim and final quick pay claims that did not profit from common benefit work.

When the Court authorized the creation of the MDL 2179 Reserve Account and subsequent clarifying orders, it did not directly address claims *already* receiving partial, "interim" or quick pay final offers from the GCCF *prior to* operation of the Transition Claims Program. These claims, which were already associated with settlement arrangements previously arranged by the GCCF, should not be subject to the 6% hold-back fee—similar to GCCF-related claims which settled prior to December 30, 2011.[28] Like the earlier claims, the interim payment

---

[27] Rec. Doc. 7660.
[28] Rec. Doc. 5274.

claims have never benefitted from the PSC's efforts, and neither OPA nor common benefit principles support the PSC's withdrawal of hold-back fees from such settlement offers.

     *i. OPA precludes assessment of common benefit fees against claimants who settled their claims previously with the GCCF.*   Under 33 U.S.C. § 2714 of OPA, BP was required to establish a *Deepwater Horizon* procedure that ensured parties damaged by its oil spill were compensated under a straightforward and non-judicial claims process that provided prompt compensation to claimants. The claims process contemplated by OPA is designed to maximize claimant recoveries, while avoiding the delay and expense of litigation. Under OPA the term "claim" means "a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an oil spill incident." 33 U.S.C. § 2701(3). In the event that a claim for damages is either denied or not paid by the responsible party within 90 days, the claimant may elect to commence an action in court against the responsible party or to present the claim to the Oil Spill Liability Trust Fund. 33 U.S.C. § 2713(c). Thus the overarching purpose of OPA's mandatory dispute resolution process is 'to encourage settlement and avoid litigation.'" *Boca Ciega Hotel, Inc. v. Bouchard Trans. Co.*, 51 F. 3d 235, 240 (11th Cir. 1995).

     Victims of the *Deepwater Horizon* oil spill who submitted claims and settled them through negotiations with the GCCF were simply following OPA. Such efforts were not the result of common benefit work by the PSC.  OPA's statutory requirements and the creation of the GCCF have led to the resolution of many claims, and the PSC cannot legitimately claim responsibility for the GCCF or its activities, especially when BP, a designated "Responsible Party" already established in accordance with OPA a $20 billion fund to compensate claimants back on June 16, 2010—well before the creation of MDL 2179.[29]   Therefore the PSC is not

---

[29] Rec. Doc.4682 at p. 5.

entitled to hold-back fees associated with claims afforded GCCF-related interim or final quick pay offers.

ii. *The PSC may not assess fees for claimants who settled their claims with the GCCF since they did not profit from common benefit work.* Under the common fund doctrine, litigation costs are spread to all beneficiaries of a group so that active beneficiaries are not saddled with the entire burden, while other beneficiaries benefit from the work at no cost to themselves. *See Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  It "reflects the traditional practice in courts of equity…[and] rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  However to recover fees under the common benefit doctrine, the PSC must show that its efforts were a success and conferred a common benefit. In the words of the Fifth Circuit, an "[a]ttorney's fee may…be awarded to a successful litigant whose success confers 'a substantial benefit' on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them."  *Rogers v. Air Line Pilots Ass'n, Int'l*, 988 F.2d 607, 616 (5th Cir. 1993) (quoting *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 393-94 (1970)).

MDL courts have consistently cited the common fund doctrine as a basis for assessing common benefit fees in favor of attorneys who render legal services beneficial to <u>all</u> MDL plaintiffs.  *See In re Genetically Modified Rice Litig*., MDL No. 06–1811, 2010 U.S. Dist. LEXIS 19168 at *133 (E.D. Mo. Feb. 24, 2010); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig*., MDL No. 05–1708, 2008 U.S. Dist. LEXIS 17535 at *19-20 (D. Minn. Mar. 7, 2008).  Common funds therefore are usually established to pay for work done by a PSC that

benefit an entire class of people making a recovery. *In re Zyprexa*, 594 F.3d 113, 130 (2d Cir. 2010).  If one looks at the history of MDLs in the United States, it is evident that the PSCs shared with their claimants discovery packets, trial packages, and other work-products such that they were up to date on the status of the litigation and strategies that were being implemented for the prosecution of the case.[30] Due to these common benefits, the PSCs were awarded common benefit fees. Yet in this case, even before the start of the Transition Claims Process on March 6, 2013, the PSC neither produced a trial package, conducted bellwether trials, held informational meetings for attorney's and claimants, produced copies of expert reports, or gave extensive updates on the litigation to non-PSC attorneys. What the PSC did do was hold several meetings around the country to explain the settlement they reached with BP.  That effort only benefitted the people who participated in the settlement.

Under MDL 2179, the PSC has never substantively demonstrated how its work confers a benefit onto claimants who resolved their claims under OPA through negotiations with the GCCF.  *See*, *e.g.*, *In re Vioxx Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 153 at *10-11 (E.D. La. Jan. 3, 2012) (denying hold-back request due to the lack of a connection between work done by the PSC and the plaintiffs' recoveries). That is why the Court stated hold-back fees were <u>not</u> to

---

[30]  *See*, MDL NO. 330, In Re Swine Flu Immunization Products Liability Litigation, MDL NO. 926 In Re Breast Implant Products Liability Litigation, MDL NO. 1014, In Re Orthopedic Bone Screw Products Liability Litigation, MDL NO. 1038, In re Norplant Contraceptives Products Liability Litigation, MDL NO. 1148 In Re Latex Gloves Products Liability Litigation, MDL NO. 1203 In Re Diet Drugs  (Phentermine /Fenfluramine / Dexfenfluramine) Products Liability Litigation, MDL NO. 1348 In Re Rezulin Products Liability Litigation, MDL NO. 1355 In Re Propulsid Products Liability Litigation, MDL NO. 1401 In Re Sulzer Orthopedics Inc. Hip Prosthesis and Knee Prosthesis Products Liability Litigation, MDL NO. 1407 In Re Phenylpropanolamine (PPA) Products Liability Litigation, MDL NO. 1657 In Re Vioxx Products Liability Litigation, MDL NO. 1699 In Re Bextra and Celebrex Litigation, MDL NO. 1708 In Re Guidant Corp. Implantable Defibrillators Products Liability Litigation, and MDL NO. 1873 In Re FEMA Trailer Formaldehyde Litigation.

be applied to settlement offers from the GCCF: (a) issued on or before December 30, 2011[31], (b) not associated with MDL 2179[32], and settled before the start of the Transition Claims Process[33].

Since all GCCF-related interim or final quick claim payments accepted before the start of the Transition Claims Process do not benefit from the PSC's efforts, the BCA clients respectfully and additionally request that the Court require the Settlement Program to immediately refund to them the 6% hold-back fees taken from their settlement payments, and require the PSC to include interest, as deemed by the Court, for the delay in paying the refund. Alternatively, if any of these claims are considered under the umbrella of Transition Claims Process, or the Settlement Program, they should still be refunded 6% hold-back fees since they would be no different than those claimants who opted for 60% payments but remained in the settlement class during the Transition Claims Process.[34] Otherwise allowing the PSC to collect the 6% in hold-back fees from these interim and quick pay GCCF claims, along with fees from the $600,000,000 common fund, would amount to attorney fee double-dipping.

### III.   Conclusion

For several months BCA clients have been experiencing problems with the Settlement Program regarding refunds of the hold-back fees. Despite their efforts to ensure that their clients, as noted herein, are refunded the 6% in hold-back fees, payments have not been made to date. Therefore in order to resolve the matter, the BCA law firm, on behalf of the BCA class members, respectfully requests that the Court enforce refunding of 6% hold-back fees from the MDL 2179 Reserve Account, with interest, improperly withheld from: (a) GCCF offers presented before February 26, 2012, (b) GCCF claim offers not associated with MDL 2179, (c) 60% Total Final

---

[31] Rec. Doc. 5274.
[32] Rec. Doc. 5274.
[33] Rec. Doc. 5995.
[34] Rec. Doc. 7660.

Payment Offers during the Transition Claims Process, and (d) GCCF interim claim offers that are not the result of any common benefit work produced by the PSC.  As shown herein, this Court has ample authority to require a refund of the fees under the Economic and Property Damages Settlement Agreement.

Dated:  April 15, 2014

Respectfully submitted,
/s/ Brent W. Coon
Brent W. Coon
Federal Bar No. 9308
Texas Bar No. 04769750
215 Orleans
Beaumont, Texas 77701
Tel.: (409) 835-2666
Fax: (409) 835-1912

*Attorney for BCA Clients*

As Joined by the Following:

/s/ Salvadore Christina, Jr.
Salvadore Christina, Jr.
(Bar No. 27198)
Daniel E. Becnel Jr.
(LA Bar No. 2926)
106 W. 7th Street, P. O. Drawer H
Reserve, LA 70084
(985) 536-1186
(985) 536-6445 Fax
E-mail:  dbecnel@becnellaw.com

/s/ Elizabeth A. Citrin
Elizabeth A. Citrin,
(MS Bar No. 101368)
Elizabeth A. Citrin, P.C.
28311 North Main Street
Daphne, AL  36526
Phone:  (251) 626-8808
Fax:  (251) 626-8868
E-mail:  elizabeth@elizabethcitrin.com

/s/ Jennifer Kim Chau
Jennifer Kim Chau
(TEXAS BAR NO. 24069094)
The Chau Law Firm
723 Main Street, Suite 1015
Houston, Texas 77002
Phone: (281) 888 – 7982
Facsimile: (281) 764 – 6799

/s/ David Kraus
David Krause
(Mississippi Bar #101188)
David Kraus Law Firm
P.O. Box 646
Ocean Springs, MS 39566
1211 Government Street
Ocean Springs, MS 39564
Phone: (228) 235-1587
E-mail:  krause@law-dog.com

/s/ Charles F. Herd Jr.
Charles F. Herd, Jr.
(State Bar No. 09504480)
THE LANIER LAW FIRM, P.C.
6810 FM 1960 West
Houston, TX 77069
Telephone: (713) 659-5200
Facsimile: (713) 659-2204

/s/ Wallace J.D. Weylie
Wallace J.D. Weylie
Weylie Law Group, P.A.
5029 Central Avenue
St. Petersburg, FL 33710
Telephone: (727) 698-6515
Facsimile: (855) 685-5316

## CERTIFICATE OF SERVICE

I certify that this document has been filed with the Clerk of the Court and served by ECF on April 15, 2014, upon:

Attorneys for the Defendants:

Richard C. Godfrey, P.C. J. Andrew
Langan, P.C. Wendy L. Bloom
KIRKLAND & ELLIS LLP 300 North
LaSalle Street Chicago, IL 60654
Telephone: 312-862-2000

Jeffrey Lennard
SNR Denton US LLP
233 South Wacker Drive Suite 7800
Chicago, IL 60606
Telephone: 312-876-8000

Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP 655
Fifteenth Street, N.W. Washington, DC
20005 Telephone: 202-879-5000

Don K. Haycraft
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000 New
Orleans, LA 70139
Telephone: 504-581-7979

Attorneys for Class Plaintiffs:

Stephen Jay Herman
Soren E. Gisleson
HERMAN HERMAN & KATZ LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Telephone: 504-581-4892
Fax: 504-561-6024

James Parkerson Roy
DOMENGEAUX, WRIGHT, ROY & EDWARDS
556 Jefferson Street - Suite 500
Lafayette, LA 70501
Telephone: 337-233-3033
Fax: 337-233-2796

Elizabeth Joan Cabraser
LIEFF, CABRASER, HEIMANN & BERNSTEIN
275 Battery Street - 29th Floor
San Francisco, CA 94111
Telephone: 415-956-1000
Fax: 415-956-1008

Samuel Issacharoff
NEW YORK UNIVERSITY SCHOOL OF LAW
40 Washington Square, S. - Suite 41 1J
New York, NY 10012
Telephone: 212-998-6580
Fax: 212-995-4590

Respectfully submitted,

/s/ Brent W. Coon

*Attorney for BCA Clients*