## MEMORANDUM IN SUPPORT

### A. Background

In August 2010, BP established a $20 billion trust to pay the claims of individuals and businesses affected by the April 2010 *Deepwater Horizon* oil spill.  Payment of the claims, including those involving lost earnings or profits, originally occurred through the GCCF which was supervised by BP. By March 8, 2012, BP and Class Counsel reached a class action Settlement Agreement associated with the litigation known as *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*.  As part of the settlement, the GCCF shut down its doors and all outstanding claims were transferred to the Settlement Program which is managed by a Claims Administrator under the oversight of the Court.  During the three month period between the close of the GCCF and start of the Settlement Program, GCCF claims were to be processed by the court-ordered Transition Claims Process.[1]

During the Transition Claims Process, if a Transition Claimant previously accepted an offer from the GCCF to settle his claim, he could receive up front 60% of the offer without signing a release.[2]  Payment of the remaining 40% of the offer (called the "GCCF Final Offer Payment") depended on whether the Transition Claimant was a class member or opted-out of the settlement class.  If the claimant opted-out of the class, he could receive the GCCF Final Offer Payment subject to the execution of a release.[3]  If the Transition Claimant was a class member, he could recover a GCCF Final Offer in an amount greater than the 40% balance if the Settlement Program determined that it was warranted based upon an assessment of the claimant's information and documentation under the requirements of the Settlement Agreement.[4]

---

[1] Rec. Doc. 5995; Rec. Doc. 7660; Rec. Doc. 6085.
[2] Rec. Doc. 5995 at page 2 of 5, Item 12.
[3] Rec. Doc. 5995 at page 2-3 of 5, Item 12; Rec. Doc. 6430-1 at page 17 of 123.
[4] Rec. Doc. 5995 at page 2-3 of 5, Item 12; Rec. Doc. 6430-1 at page 17 of 123.

Regardless, according to the Claims Administrator's Policy number Pol-357 v3, class members who received 60% of GCCF offers were guaranteed the minimum 40% balance of their initial GCCF settlement offers:

> "Claimants who received a 60% payment from the GCCF <u>will</u> "receive the greater of (a) the remaining 40% of the GCCF offer, or (b) the Economic Class Settlement Payment minus any amount previously paid by the Transition Process," as provided in Section 4.2.3.1 of the Settlement Agreement…"[5]

Once the Transition Claims Process ended and the Settlement Program began, claim-related information and documentation were transferred from the GCCF to the Settlement Program so that final settlement offers could be made.[6] The Settlement Program was to notify claimants if additional documentation was needed for finalization of their claims.[7]

### B.  Non-Payment of GCCF Remaining 40% Final Offers

It has now been nearly *two years* since the Court preliminary approved the Settlement Agreement.  Despite assurances by the Court and the Settlement Agreement that the claims of Transition Claimants would be reviewed "as soon as practicable" on a "schedule to be established by the Claims Administrator"[8], the BCA Transition Claimants listed below have yet to receive confirmation that their GCCF claims were reviewed by the Claims Administrator and that their GCCF Final Offer Payments will be released in a timely manner.  The claimants include:

| No. | Last Name | First Name | Company Name | Claim Number |
|---|---|---|---|---|
| 1 | MCCUMBERS | DAVID | McCumbers Seafood | 3419373 |
| 2 | NGUYEN | LOC PHI | | 3027742 |
| 3 | TRAN | HUNG | | 3051776 |
| 4 | NGUYEN | TONY | | |
| 5 | VU | HANH | | 3161878 |
| 6 | NGUYEN | TIEN HUU | | 3317336 |

---

[5] See Exhibit A, emphasis added.
[6] Rec. Doc. 7110-4 at page 17-18 of 25: Item 4.2.3.
[7] Rec. Doc. 7110-4 at page 17 of 25.
[8] Rec. Doc. 6430-1 at page 24 of 123.

| No. | Last Name | First Name | Company Name | Claim Number |
|-----|-----------|------------|--------------|--------------|
| 7 | NGUYEN | KIEN | | 3174887 |
| 8 | DINH | CHU | | 3142551 |
| 9 | ALVARADO | JOAQUIN | | 3238148 |
| 10 | LAM | UYEN | | 3330996 |
| 11 | NESLER | ANGELICA | | 3249357 |
| 12 | NGUYEN | THU TRANG THI | | 3248471 |
| 13 | NGUYEN | DUNG  NGOC | | 3414375 |
| 14 | PHAN | THUY | | 3375268 |
| 15 | FIELDS | TED | | 3504595 |
| 16 | SOTELO | CARLO | | 3338830 |
| 17 | DANEAULT | RICHARD "RICK" | | 3226662 |
| 18 | | CHARLES HONACHER | GRANDE DESIGNER FLOORCOVERING INC | 3016435 |
| 19 | TAYLOR | NADIYAH | | 3083980 |
| 20 | BENSON | YOKO | | |
| 21 | NORMAN | RICHARD | | 1017676 |
| 22 | WALTERS | JOHN | | 1030993 |
| 23 | | JASON AND HOLLIE BAILEY | J AND H INVESTMENTS LLC | 3486058 |
| 24 | | PAUL FRASER III | DIVE AND RESCUE EDUCATORS INC | 1125781 |
| 25 | WALLER | JOHN | | 3221429 |
| 26 | | CHARLES BROOKS | BROOKS AND SON ENTERPRISE LLC | 1116067 |
| 27 | ANTONE | BRITTANY | | 3045094 |
| 28 | PAINE | CHARLES | | 3566496 |
| 29 | GIOVANNELLI | STEPHEN | | 3560472 |
| 30 | SCOTT | JAMES | | 3441645 |
| 31 | BRANAN | WILLIAM | | 3414867 |
| 32 | HAY | MICHAEL | | 3075418 |
| 33 | ORSINI | JOSHUA | | |
| 34 | DONOIAN | JOSEPH | | |
| 35 | | PATRICK MORAN | PATMAR WATERS LLC DBA HAMPTON INN | 3492921 |
| 36 | SMITH | CYNTHIA | | 3262342 |
| 37 | DIAMOND | SHERRIA | | 3276241 |

One of the reasons for the delay in processing and awarding BCA Transition Claimants their

GCCF Final Offer Payments is because the Settlement Program believes, contrary to the

assurances in the Settlement Agreement and by the Court, that it is not bound by any claims processing schedule:

> "This is an official communication from the Claims Administrator for the Deepwater Horizon Economic and Property Damages Settlement Program ("Settlement Program"). Thank you for your email. We have received your request for the remaining 40% balance of your client's Transition Process Final Payment <u>and we will send the Release to you as soon as possible</u>; however, <u>there is no specific timeframe for the Release mailing</u>."[9]

Other reasons for the nearly two-year delay in processing GCCF Final Offer Payments by the Settlement Program include:

(a) Issuing email auto-replies that do not address whether claims will be processed or whether final releases of offers will be issued;[10]

(b) Blocking claimant access to claim information under the Settlement Program website claiming inconsistencies with a client's legal representation;[11]

(c) Denying issuance of final 40% payments for months even though final releases were accepted;[12]

(d) Instituting run-arounds so as to stagnate the processing of claims for months through multiple reviews of claims;[13] and

(e) Requiring individuals to revoke their valid opted-out status with the approval of BP prior to the payment of claims.[14]

This stagnation in processing the remaining GCCF 40% Final Offers involving BCA Transition Clients is unfortunate, especially when the Court, under its Preliminary Approval

---

[9]  See Attachment B, emphasis added.
[10] See Exhibits B, C, and D.
[11] See Exhibit E.
[12] See Exhibit F.
[13] See Exhibits G, H and I.
[14] See Exhibit J.

Order of the Settlement Agreement, stated that processing of claims during the Transition Claims Process was to occur "without delay".[15]

One particular scenario best exemplifies the considerable effort the BCA law firm has expended in securing the remaining 40% GCCF Final Offer Payments made to BCA Transition clients.  Before the November 2012 deadline, a BCA client opted-out of the settlement class and accepted an offer of $2,000 on his claim.  Although the client signed a release, payment the 40% balance was held up due to opt-out paperwork requirements created by the Settlement Program and BP. The client was told that he could not receive the 40% balance of his GCCF offer until he returned to the Settlement Program a form that allowed him to state (for a second time) that he had opted-out of the settlement class.  But in order to complete the form, the client needed an opt-out number assigned to his claim by the Settlement Program.  When the client asked for the opt-out number, rather than immediately provide it, the Settlement Program waited 4-5 months to determine that it was not needed after all.  So the client submitted the opt-out form to the Settlement Program without the opt-out number.  Later, after experiencing another long delay, the client was informed by the Settlement Program that in order to receive the remaining settlement funds, he needed to submit another form revoking his opt-out status.  Once he re-entered back into the class, the client would be paid the remaining balance of his GCCF offer.

Despite the Settlement Program's considerable delay in processing the claims of BCA Transition Claimants, and as shown in the example above, the BCA law firm has diligently tried to produce all documents that the Settlement Program requires for final evaluation of their 40% GCCF Final Offer Payments.  While many documents have been sent to the Settlement Program, others cannot be produced for justifiable reasons.  Yet the Settlement Program continues to take the position that several BCA Transition Claimants must still produce the additional documents

---

[15] Rec. Doc. 6418 at page 30 of 47.

and until that occurs, their claims will not be evaluated—despite assurances that their claims will be prioritized for review and funding. Therefore at this time the Settlement Program and the BCA Transition Claimants are at an impasse.  In fact, for some clients the Settlement Program has even taken the liberty to close their accounts.  To resolve the situation, the Settlement Program needs to assess the BCA Transition Claims with the documents already before it, and either: (1) make offers above the 40% balances, or (2) pay the *minimal* 40% balances owed to the clients.

The BCA law firm has expended numerous hours in urging the Settlement Program into reviewing the claims of its Transition Claimants who are owed, at a minimum, a 40% balance of their remaining GCCF Final Offers.  The Settlement Program's unwillingness to expeditiously resolve their claims has raised the frustration level of BCA Transition Claimants who have waited nearly *two years* along the sidelines.  Some of these individuals, who are members of the settlement class, are no longer interested in waiting to find out whether their claims qualify for awards in excess of their 40% balances under the terms of the Settlement Agreement.  Having lost hope in the Settlement Program, they prefer to walk away with the remaining or minimal 40% of their original GCCF offers.  The BCA law firm has repeatedly brought forth this concern, along others involving various administrative delays, to the Settlement Program during frequent conference calls, individual telephone calls, and follow-up emails.  Regardless of the reason, the reality is that BCA claims associated with remaining GCCF 40% Final Offers are not being reviewed, final offers are not being made, and releases are not being issued.

### C.  Argument

Although a settlement agreement is a contract, once it is incorporated into a judgment, it becomes a court decree. *White Farm Equipment Co. v. Kupcho,* 792 F.2d 526, 529 (5th

Cir.1986). Consequently "[f]ederal courts have the inherent power to enforce settlement agreements entered into by the parties litigant in a pending case, to determine compliance with procedural prerequisites, and to determine when, if ever, a party may repudiate a contractually binding settlement agreement." *Id.* citing to *Howard v. Chris-Craft Corp.*, 562 F. Supp. 932, 936 (E.D.Tex.1982) and *Mid-South Towing Co. v. HarWin, Inc.*, 733 F.2d 386, 389 (5th Cir.1984).

BP and Class Counsel reached a class action Settlement Agreement on March 8, 2012. As part of the settlement, the GCCF closed its doors and all outstanding claims were transferred to the Settlement Program for processing.  During the transition period, Claimants with GCCF offers wishing to settle their claims immediately received 60% of their settlements along with a promise that they may be eligible to recover an amount greater than the remaining 40% balance if the Settlement Program determined that, based upon an assessment of the claimant's information and documentation, it was warranted.[16]  Still, according to the Claims Administrator's Policy number Pol-357 v3, class members who received 60% of GCCF offers were guaranteed the minimum 40% balance of their initial GCCF settlement offers.

Under the Court's Preliminary Approval Order of the Settlement Agreement, the processing of claims during the Transition period was to occur "without delay".[17]  The Settlement Agreement also requires that Transition Claimants receive uninterrupted and "prompt financial relief" for their GCCF-related claims.[18]  As stated under Item 4.4.2 of the Agreement, if claims are transferred to the Settlement Program, they are to be reviewed under a reasonable timeframe:

> "The Settlement Program shall as soon as practicable after the Claim frameworks are finalized, but on a schedule to be established by the Claims Administrator, review the claims-related information and data submitted to the GCCF and/or

---

[16] Rec. Doc. 5995 at page 2-3 of 5, Item 12; Rec. Doc. 6430-1 at page 17-18 of 123: Item 4.2.3.
[17] Rec. Doc. 6418 at page 30 of 47.
[18] Rec. Doc. 7110-4 at page 18 of 25; Rec. Doc. 6266, attached order at page 14, Items 11 and 13.

Transition Process for each Pending Transition Claimant to determine what, if any, additional information may be necessary or desirable for such claimants to pursue that claim under this Agreement. The Settlement Program <u>shall then notify</u> each such Pending Transition Claimant of what, if any, additional information may be necessary or desirable to pursue such claim(s) under the terms of the Settlement Agreement."[19]

As noted herein, the Settlement Program has taken the position in emails involving BCA Transition Claimants that there is no deadline for the processing of GCCF Final Offer Payments. It has also carried out several delay tactics to ensure that BCA Transition Claims are not timely processed.  However the Settlement Program's considerable hold-up in processing the claims is contrary to: (1) the binding Settlement Agreement which requires claims to be reviewed "as soon as practicable" under a "schedule established by the Claims Administrator",[20] (2) the Court's March 8, 2012 First Amended Order Creating Transition Process requiring Transition Claimants be paid their remaining GCCF offers,[21] and (3) the Claims Administrator's April 23, 2013 policy identified as Pol-357 v3, by which states claimants *will receive* the balances of their GCCF offers.[22]

The BCA law firm initially identified about 70 Transition Claims requiring resolution of their GCCF 40% Final Offer Payments since the start of the Settlement Program.  At this time, only half of these claims have been resolved through final disposition.  There is no reason for the Settlement Program to further delay the processing the 40% Final Offers involving 37 BCA Transition Claimants.  They have gone through the gauntlet of producing documentation to the Settlement Program yet have received repeated delays in the evaluation of their Transition Claims such that it is now time, under the Court's directive, that they move forward post-haste toward an expeditious resolution.

---

[19] Rec. Doc. 6430-1 at page 24 of 123, Item 4.4.2, emphasis added.
[20] Rec. Doc. 6430-1 at page 24 of 123, Item 4.4.2.
[21] Rec. Doc. 5995)
[22] See Exhibit A.

### D.  Requested Relief

As noted herein, numerous BCA Transition Claimants have long endured the Settlement Program's unwillingness to process their 40% payments related to their previous GCCF offers. Waiting nearly two years to find out about the final value of their claims—which were already settled prior to approval of the Settlement Agreement—is completely unnecessary and unjustified.

WHEREFORE, the BCA law Firm respectfully prays, on behalf of the BCA Transition Claimants, that the Court require the Claims Administrator to follow the Settlement Agreement, the Court's March 8, 2012 First Amended Order Creating the Transition Process, and the Claims Administrator's April 23, 2013 revised policy identified as Pol-357 v3 and *prioritize the immediate review and disposition of the 40% GCCF Final Offers of all BCA Transition Claimants* noted herein, including all Transition Claimants similarly situated, whether they are class members or have opted-out of the settlement class, under an expedited schedule determined by the Court.  The Court's authority to address this matter is found via its inherent power to enforce settlement agreements under *White Farm Equipment Co. v. Kupcho,* 792 F.2d 526 (5th Cir.1986)*,* under Item 18 of the Settlement Agreement which states that the Court is to retain continuing jurisdiction over the "qualified settlement fund"[23], and under Item 4.4.7 of the Settlement Agreement which states "[t]he Settlement Program and its Claims procedures shall be subject to the ongoing supervision of the Court."[24]

In addition, and in order to ensure prompt resolution of the BCA Transition Claims, the BCA law firm suggests that the Court authorize the Claims Administrator to immediately release *at a minimum* the remaining 40% of the Final GCCF Offers, and that if he determines that based

---

[23] Rec. Doc. 8139 at page 6 of 15.
[24] Rec. Doc. 6430-1 at page 25 of 123, Item 4.4.7.

on a Transition Claimant's information and documentation an award greater than the 40% is warranted, a supplemental payment will be made by the Settlement Program with the approval of the Court under a designated deadline.  The BCA Transition Claimants can sign a provisional release related to their previous 60% payments, plus the remaining 40% of their GCCF offer, but reserve their final release of their claims as to the supplemental award, if any, at a later date.

Dated: April 15, 2014                    Respectfully submitted,

/s/ Brent W. Coon

Brent W. Coon
Federal Bar No. 9308
Texas Bar No. 04769750
215 Orleans
Beaumont, Texas 77701 Tel.:
(409) 835-2666 Fax: (409)
835-1912

*Attorney for BCA Clients*

## CERTIFICATE OF SERVICE

I certify that this document has been filed with the Clerk of the Court and served by ECF on April 15, 2014, upon:

Attorneys for the Defendants:

> Richard C. Godfrey, P.C. J. Andrew
> Langan, P.C. Wendy L. Bloom
> KIRKLAND & ELLIS LLP 300 North
> LaSalle Street Chicago, IL 60654
> Telephone: 312-862-2000
>
> Jeffrey Lennard
> SNR Denton US LLP
> 233 South Wacker Drive Suite 7800
> Chicago, IL 60606
> Telephone: 312-876-8000
>
> Jeffrey Bossert Clark
> Steven A. Myers
> KIRKLAND & ELLIS LLP 655
> Fifteenth Street, N.W. Washington, DC
> 20005 Telephone: 202-879-5000
>
> Don K. Haycraft
> LISKOW & LEWIS
> One Shell Square
> 701 Poydras Street, Suite 5000 New
> Orleans, LA 70139
> Telephone: 504-581-7979

Attorneys for Class Plaintiffs:

> Stephen Jay Herman
> Soren E. Gisleson
> HERMAN HERMAN & KATZ LLP
> 820 O'Keefe Avenue
> New Orleans, LA 70113
> Telephone: 504-581-4892
> Fax: 504-561-6024

James Parkerson Roy
DOMENGEAUX, WRIGHT, ROY & EDWARDS
556 Jefferson Street - Suite 500
Lafayette, LA 70501
Telephone: 337-233-3033
Fax: 337-233-2796

Elizabeth Joan Cabraser
LIEFF, CABRASER, HEIMANN & BERNSTEIN
275 Battery Street - 29th Floor
San Francisco, CA 94111
Telephone: 415-956-1000
Fax: 415-956-1008

Samuel Issacharoff
NEW YORK UNIVERSITY SCHOOL OF LAW
40 Washington Square, S. - Suite 41 1J
New York, NY 10012
Telephone: 212-998-6580
Fax: 212-995-4590

Respectfully submitted,

/s/ Brent W. Coon
*Attorney for BCA Clients*