# EXHIBIT 4

E-SERVICE

55062144
Feb 26 2014
07:02PM

File & ServeXpress

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: 2:10-cv-02454, 2:10-cv-01768 | : : : : | DISTRICT JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |
| …………………………………………….. | : | |

## BP EXPLORATION & PRODUCTION INC. AND BP AMERICA PRODUCTION CO.'S RESPONSES AND OBJECTIONS TO THE CENTER FOR BIOLOGICAL DIVERSITY'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION

Defendants BP Exploration & Production Inc. and BP America Production Company (collectively, "BP"), by their undersigned Counsel, and, pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, hereby submit the following responses to the Center for Biological Diversity's First Set of Interrogatories, Requests for Production, and Requests for Admission.

## SPECIFIC RESPONSES AND OBJECTIONS

BP responds as follows to the Center for Biological Diversity's specific interrogatories, requests for production, and requests for admission, subject to and without waiving its general objections, each and every one of which are specifically incorporated into each individual response below.[1]

## INTERROGATORIES

1.      Identify the date and time that you and/or your Agents began injecting drilling muds, including the ingredients added to the drilling muds, into the Macondo Well as part of the 'top kill' procedure.

---

[1] BP's general objections are set forth at pages 14-22.

**RESPONSE:**

BP objects to this interrogatory on the grounds that "injecting" is vague, ambiguous, and undefined.

Subject to its specific and general objections, BP states that the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for the Center for Biological Diversity as it is for BP; therefore, in accordance with Federal Rule of Civil Procedure 33(d), BP refers the Center for Biological Diversity to documents previously produced in response to the Plaintiff Steering Committee's ("PSC") Request for Production No. 350.

BP further states that pumping of the Top Kill procedure proper began at "approximately" 1 p.m. on May 26, 2010, per the Wild Well Control post-Top Kill memo.  *See* BP-HZN-2179MDL01628947 at 6.  Prior to that, a limited amount of mud was pumped in as part of the diagnostic testing in the afternoon/evening of May 25.  *Id*. at 1, 3-5.

To the extent the Center for Biological Diversity's request seeks additional information, BP objects on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

2.      Identify the date and time that you and/or your Agents received federal permission to inject drilling muds, including the ingredients added to drilling muds, into the Macondo Well as part of the 'top kill' procedure.  As part of your answer, identify who within the federal government granted that permission.

**RESPONSE:**

BP objects to this interrogatory on the grounds that "injecting" is vague, ambiguous, and undefined.

Subject to its specific and general objections, BP states that the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for the Center for Biological Diversity as it is for BP; therefore, in accordance with Federal Rule of Civil

Procedure 33(d), BP refers the Center for Biological Diversity to documents previously produced in response to the PSC's Request for Production No. 350.

BP further states that, according to the White House (May 27, 2010), Top Kill was "approved by the Coast Guard, acting on the validation of government scientists and in consultation with the National Incident Commander Thad Allen." TREX 9133 at 1.

Per their signatures on the procedure, a first revision of the Top Kill procedure was approved by the Federal On Scene Coordinator, Admiral Mary Landry, on 5/23/10 (no time recorded); and by Lars Herbst of MMS on 5/23/10 at 7:35 (no indication of whether a.m. or p.m.). *See* TREX 8983 at 1.

Per their signatures on the procedure, a second revision of the Top Kill procedure was approved by the Federal On Scene Coordinator, Admiral Mary Landry, on 5/25/10 (no time recorded); and by Michael Saucier of MMS on 5/25/10 at 7:40 p.m. *See* TREX 10557 at 1.

A final "Go/No Go" meeting was scheduled between BP, MMS, and the USCG on May 26 at 10 a.m. CDT. *See* TREX 10682 at 1. BP was given the final go-ahead for Top Kill-proper by Secretary of Energy Dr. Steven Chu and FOSC Admiral Landry at approximately 11 a.m. CDT on May 26, 2010. *See* TREX 11313 (Secretary Chu puts on hold for 15 mins, then go ahead given); TREX 11305 at 3 (Secretary Chu-approved talking points note that he and the Federal Science Team "verified that it did make sense to go forward with the 'top kill' attempt," and that "[t]he U.S. government gave the final go ahead" mid-morning on May 26); TREX 141758 at 1.

To the extent the Center for Biological Diversity's request seeks additional information, BP objects on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

3.      Identify the date and time that you and/or your Agents began pumping methanol into the Macondo Well to prevent the formation of hydrates.

**RESPONSE:**

BP objects to this interrogatory on the grounds that "pumping" is vague, ambiguous, and undefined, and that this interrogatory implies, contrary to the facts, that BP pumped or otherwise put "methanol into the Macondo Well to prevent the formation of hydrates."

Subject to its specific and general objections, BP states that the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for the Center for Biological Diversity as it is for BP; therefore, in accordance with Federal Rule of Civil Procedure 33(d), BP refers the Center for Biological Diversity to documents previously produced in response to the PSC's Requests for Production No. 350.

BP further states that methanol was not pumped "into the Macondo Well." Methanol was injected into devices intending to collect oil that had exited the Macondo well to prevent the formation of hydrates within those collection devices. The use of methanol for hydrate inhibition was first deployed during installation of the Riser Insertion Tube Tool ("RITT") on or about May 15, 2010. *See* HCG043-007773 at 2; signed procedure attached to BP-HZN-2179MDL05612166 (BP-HZN-2179MDL05612166 at 8); (BP-HZN-2179MDL05066511 (JIC Press Release).

To the extent the Center for Biological Diversity's request seeks additional information, BP objects on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

4.      Identify the date and time that you and/or your Agents received federal permission to inject methanol into the Macondo Well to prevent the formation of hydrates. As part of your answer, identify who within the federal government granted that permission.

4

**RESPONSE:**

BP objects to this interrogatory on the grounds that "inject" is vague, ambiguous, and undefined, and that this interrogatory implies, contrary to the facts, that BP injected or otherwise put "methanol into the Macondo Well to prevent the formation of hydrates."

Subject to its specific and general objections, BP states that the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for the Center for Biological Diversity as it is for BP; therefore, in accordance with Federal Rule of Civil Procedure 33(d), BP refers the Center for Biological Diversity to documents previously produced in response to the PSC's Request for Production No. 350.

As noted above, methanol was not "injected into the Macondo Well to prevent the formation of hydrates." Methanol was used to inhibit the formation of hydrates in several collection devices. BP further states that permission granted by Adm. Landry on 5/12/10 by letter; also procedure signed off by Landry 5/12/10 at 4:20 p.m. and Saucier 5/12/10 at 1:35 p.m. *See* Letter attached to BP-HZN-2179MDL05612166 (BP-HZN-2179MDL05612227); *see also* signed procedure attached to BP-HZN-2179MDL05612166 (BP-HZN-2179MDL05612166 at 8) (signed procedure for RITT/Top Hat (different Top Hat from one actually deployed) has methanol injection as part of it).

To the extent the Center for Biological Diversity's request seeks additional information, BP objects on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

## **REQUESTS FOR PRODUCTION**

1.      All documents related to your answer to Interrogatory No. 1.

**RESPONSE:**

BP objects to this request on the grounds that it is overbroad, unduly burdensome, cumulative, and duplicative.  BP further objects to this request to the extent it uses vague, ambiguous, and undefined terms and phrases including "injecting."

BP further objects to this request on the grounds that it is duplicative of the data and information requested by the PSC's Request for Production No. 350.

Subject to its specific and general objections, BP has identified in its response to Interrogatory No. 1 previously produced documents and/or trial exhibits sufficient to show the date and time that BP and/or its Agents began using drilling muds as part of the Top Kill procedure.  Plaintiff Center for Biological Diversity should obtain these documents from the PSC, which has Court-ordered responsibility to conduct discovery on behalf of all MDL 2179 plaintiffs.  *See* PTO #8, Rec. Doc. 506, at 3.

To the extent the Center for Biological Diversity's request seeks additional documents, BP objects on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

2.      All documents related to your answer to Interrogatory No. 2.
**RESPONSE:**

BP objects to this request on the grounds that it is overbroad, unduly burdensome, cumulative, and duplicative.  BP further objects to this request to the extent it uses vague, ambiguous, and undefined terms and phrases including "injecting."

6

BP further objects to this request on the grounds that it is duplicative of the data and information requested by the PSC's Request for Production No. 350.

Subject to its specific and general objections, BP has identified in its response to Interrogatory No. 2 previously produced documents and/or trial exhibits sufficient to show the date and time that BP and/or its Agents received federal permission, and who within the federal government granted that permission, to use drilling muds as part of the Top Kill procedure. Plaintiff Center for Biological Diversity should obtain these documents from the PSC, which has Court-ordered responsibility to conduct discovery on behalf of all MDL 2179 plaintiffs. *See* PTO #8, Rec. Doc. 506, at 3.

To the extent the Center for Biological Diversity's request seeks additional documents, BP objects on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

3.      All documents related to your answer to Interrogatory No. 3.

**RESPONSE:**

BP objects to this request on the grounds that it is overbroad, unduly burdensome, cumulative, and duplicative.  BP further objects to this request to the extent it uses vague, ambiguous, and undefined terms and phrases including "pumping," and this request implies, contrary to the facts, that BP  pumped or otherwise put "methanol into the Macondo Well to prevent the formation of hydrates."

BP further objects to this request on the grounds that it is duplicative of the data and information requested by the PSC's Request for Production No. 350.

Subject to its specific and general objections, BP has identified in its response to Interrogatory No. 3 previously produced documents and/or trial exhibits sufficient to show the

date and time that BP and/or its Agents began using methanol to prevent the formation of hydrates.  Plaintiff Center for Biological Diversity should obtain these documents from the PSC, which has Court-ordered responsibility to conduct discovery on behalf of all MDL 2179 plaintiffs.  *See* PTO #8, Rec. Doc. 506, at 3.

To the extent the Center for Biological Diversity's request seeks additional documents, BP objects on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

4.      All documents related to your answer to Interrogatory No. 4.

**RESPONSE:**

BP objects to this request on the grounds that it is overbroad, unduly burdensome, cumulative, and duplicative.  BP further objects to this request to the extent it uses vague, ambiguous, and undefined terms and phrases including "injecting," and this request implies, contrary to the facts, that BP injected or otherwise put "methanol into the Macondo Well to prevent the formation of hydrates."

BP further objects to this request on the grounds that it is duplicative of the data and information requested by the PSC's Request for Production No. 350.

Subject to its specific and general objections, BP has identified in its response to Interrogatory No. 4 previously produced documents and/or trial exhibits sufficient to show the date and time that BP and/or its Agents received federal permission, and who within the federal government granted that permission, to use methanol to prevent the formation of hydrates. Plaintiff Center for Biological Diversity should obtain these documents from the PSC, which has Court-ordered responsibility to conduct discovery on behalf of all MDL 2179 plaintiffs.  *See* PTO #8, Rec. Doc. 506, at 3.

To the extent the Center for Biological Diversity's request seeks additional documents, BP objects on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

5.     Produce all results of all samples taken of the oil from the Macondo Well, including the oil recovered from the Macondo Well, up until July 15, 2010.

**RESPONSE:**

BP objects to this request on the grounds that it is overly broad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence.  The only claim that the Center for Biological Diversity has remaining after the Fifth Circuit's decision affirming in part and remanding in part is under EPCRA, and the only claim asserted under EPCRA alleges the release of "hazardous substances," and "hazardous substances" is explicitly defined to exclude petroleum.  *See* 42 U.S.C. § 9601(14).

BP further objects to this request on the grounds that it is ambiguous, undefined, and burdensome in that "results" is undefined and the request calls for sample results without limit as to the location or purpose of the samples.

BP understands the Center for Biological Diversity's request for "samples taken of the oil from the Macondo Well" to mean samples of oil taken from the Macondo reservoir and oil as it was discharged to Gulf waters.  Oil originating from the reservoir was discharged to Gulf waters from the *Deepwater Horizon* and its appurtenances only.

Subject to its specific and general objections, after a reasonable search BP identifies the following previously produced documents:

The following are the Pressure Volume Temperature (PVT) reports produced in Phase 2 of MDL-2179 that contain results of samples of oil taken from the Macondo reservoir:

| Bates Begin | Bates End |
|---|---|
| BP-HZN-2179MDL03752657 | BP-HZN-2179MDL03752681 |
| BP-HZN-2179MDL05665326 | BP-HZN-2179MDL05665326 |
| BP-HZN-2179MDL00063382 | BP-HZN-2179MDL00063382 |
| BP-HZN-2179MDL06723543 | BP-HZN-2179MDL06723574 |
| BP-HZN-2179MDL00063016 | BP-HZN-2179MDL00063016 |
| BP-HZN-2179MDL00063084 | BP-HZN-2179MDL00063084 |
| BP-HZN-2179MDL00009448 | BP-HZN-2179MDL00009448 |
| BP-HZN-2179MDL00449158 | BP-HZN-2179MDL00449158 |
| BP-HZN-2179MDL01617510 | BP-HZN-2179MDL01617510 |
| BP-HZN-2179MDL01883206 | BP-HZN-2179MDL01883206 |
| BP-HZN-2179MDL04440689 | BP-HZN-2179MDL04440690 |
| BP-HZN-2179MDL04440732 | BP-HZN-2179MDL04440732 |
| BP-HZN-2179MDL04440977 | BP-HZN-2179MDL04440977 |
| BP-HZN-2179MDL04440978 | BP-HZN-2179MDL04440998 |

Also, CoreLab produced a report of the sampling performed at the Macondo reservoir located at BP-HZN-2179MDL00009448.

Additionally, Schlumberger produced an analysis of oil collected during the incident located at BP-HZN-2179MDL04190810 - BP-HZN-2179MDL04190847.

Plaintiff Center for Biological Diversity should obtain these documents from the PSC, which has Court-ordered responsibility to conduct discovery on behalf of all MDL 2179 plaintiffs. *See* PTO 8, Rec. Doc. 506, at 3.

To the extent the Center for Biological Diversity's request seeks additional documents, BP objects on the grounds that it is overbroad, unreasonable, unduly burdensome, and seeks information not relevant to the claims or defenses of any party.

## REQUESTS FOR ADMISSION

1.      Admit that you and/or your Agents injected at least 450 barrels of "spacer," composed of two different "pills," known as Form-A-Set and Form-A-Squeeze, into the Macondo Well's wellbore within one week prior to the Incident.

**RESPONSE:**

BP objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party.  The Center for Biological Diversity's Amended Complaint contains no allegation about or related to "spacer."

Subject to its specific and general objections, this request is admitted-in-part and denied-in-part.  BP admits that on April 20, 2010 an approximately 454 barrel spacer was used at the Macondo Well.  The spacer was designed and approved by M-I Swaco and pumped by Transocean.  *See* L. Lindner 9/14/11 Dep. Tr. at 564-65; L. Lindner 9/14/11 Dep. Tr. at 231-33; MDL Ex. 2810 B. Billon 6/24/11 Dep. Tr. at 510-512.  The spacer consisted of Form-A-Set, Form-A-Squeeze, weighting materials, and a viscosity enhancer.  *See* TREX 8173.54-55; TREX 8174.3-10; TREX 1018.

2.      Admit that the "spacer" that was injected into the wellbore, as described *supra* in Request For Admission No. 1, was unnecessary to the development of the Macondo Well.

**RESPONSE:**

BP objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party.  The Center for Biological Diversity's Amended Complaint contains no allegation about or related to "spacer."

BP further objects to this request as vague and ambiguous to the extent that "unnecessary to the development of the Macondo Well" is undefined.  The spacer used on the Macondo Well was designed and approved by M-I Swaco and pumped by Transocean and was an appropriate spacer to use during the activities on April 20, 2010 prior to temporary abandonment.  *See*

L. Lindner 9/14/11 Dep. Tr. at 564-65; L. Lindner 9/14/11 Dep. Tr. at 231-33; MDL Ex. 2810

B. Billon 6/24/11 Dep. Tr. at 510-512; TREX 8173.54-55; TREX 8174.3-10.   During the

procedures conducted on April 20, 2010, the *Deepwater Horizon* crew responsible for

maintaining well control needed to have sufficient hydrostatic pressure to control the well.  *See*

TREX 8173.54-55; TREX 8174.3-10.  A 16 ppg spacer (as used on April 20, 2010) provided the

necessary hydrostatic pressure to control the well.  *See* TREX 8173.54-55; TREX 8174.3-10.

Therefore, BP denies request for admission number two.


　　　　3.　　　　Admit that the "spacer" that was injected into the wellbore, as described *supra* in
Request For Admission No. 1, was unnecessary to the production of oil from the Macondo Well.

**RESPONSE:**

　　　　BP objects to this request on the grounds that it seeks information not relevant to the

claims or defenses of any party.  The Center for Biological Diversity's Amended Complaint

contains no allegation about or related to "spacer."

　　　　BP further objects to this request as vague and ambiguous to the extent that "unnecessary

to the production of oil from the Macondo Well" is undefined.  The spacer used on the Macondo

Well was designed and approved by M-I Swaco and pumped by Transocean and was an

appropriate spacer to use during the activities on April 20, 2010.  *See* L. Lindner 9/14/11 Dep.

Tr. at 564-65; L. Lindner 9/14/11 Dep. Tr. at 231-33; MDL Ex. 2810  B. Billon 6/24/11 Dep. Tr.

at 510-512; TREX 8173.54-55; TREX 8174.3-10.  During the procedures conducted on April 20,

2010, the *Deepwater Horizon* crew responsible for maintaining well control needed to have

sufficient hydrostatic pressure to control the well.  *See* TREX 8173.54-55; TREX 8174.3-10.  A

16 ppg spacer (as used on April 20, 2010) provided the necessary hydrostatic pressure to control

the well.  *See* TREX 8173.54-55; TREX 8174.3-10.  Therefore, BP denies request for admission

number three.

4. Admit that the "spacer" that was injected into the wellbore, as described *supra* in Request For Admission No. 1, was unnecessary to the exploration of the Macondo Well.

**RESPONSE:**

BP objects to this request on the grounds that it seeks information not relevant to the claims or defenses of any party. The Center for Biological Diversity's Amended Complaint contains no allegation about or related to alleged "spacer."

BP further objects to this request as vague and ambiguous to the extent that "unnecessary to the exploration of the Macondo Well" is undefined. The "exploration for the Macondo Well" was completed on April 9, 2010 when the Transocean crew finished drilling to total depth. *See* TREX 41063, TREX 41116. Between April 9, 2010 and April 20, 2010 when the M-I Swaco designed spacer was pumped into the wellbore by the Transocean crew, there was no "exploration" occurring; rather the well was being prepared for temporary abandonment and completion. As the spacer pumped on April 20, 2010 was after exploration had been completed, BP cannot admit or deny this request.

5. Admit that you and/or your Agents injected at least 30,000 barrels of used drilling muds into the Macondo Well as part of the "top kill" procedure.

**RESPONSE:**

BP objects to this request as vague and ambiguous to the extent that "used drilling muds" and "injected" are undefined. Between 28,000 and over 30,000 barrels of mud were used during the Top Kill procedure. *See* BP-HZN-2179MDL01628947 at 2 (WWCI memo) ("over 28,000 bbls"); TREX 11305 at 2 (Secretary Chu Talking Points) (30,000 bbls); BP-HZN-2179MDL05493172 at 3172 (OSAT exchange) (30,992 bbls). Therefore, BP denies request for admission number five.

6.      Admit that you and/or your Agents injected at least 168,000 gallons of methanol into the Macondo Well after the Incident and before July 15, 2010.

**RESPONSE:**

BP objects to this request as vague and ambiguous to the extent that "injected" is undefined.  Approximately 168,000 gallons of methanol was used in connection with the response, including 11,330 gallons used at the wellhead, but "at least 168,000 gallons of methanol" was not put into the well.  *See* BP-HZN-2179MDL00000711 at 0716 (Markey letter). Therefore, BP denies request for admission number six.

**GENERAL OBJECTIONS**

BP asserts the following objections to each and every one of the Center for Biological Diversity's interrogatories, requests for production, and requests for admission including any definitions or instructions associated therewith (collectively, "the Center for Biological Diversity's Discovery Requests").  These general objections are incorporated by reference into each specific response set forth by BP and are neither waived nor limited by any specific responses.

1.      BP objects to the Center for Biological Diversity's Discovery Requests because they are duplicative and unduly burdensome in that they seek information and documents related to the "top kill" procedure and other source control efforts.  The top kill procedure and other source control efforts were the subject of extensive discovery in the Phase 2 proceedings, which the Center for Biological Diversity can coordinate with the PSC to access.

2.      BP objects to the Center for Biological Diversity's Discovery Requests because they do not comply with Pretrial Order No. 11 ("PTO 11").  PTO 11 applies to CBD's claim (as well as any other "related cases originally filed in" the MDL Court) and provides that "[a]ll . . . requests for discovery . . . shall be initiated by ***and/or coordinated through the Plaintiff***

***Steering Committee*** ("PSC"), to be filed by and through Plaintiffs' Liaison Counsel." *Id.* at 13 (emphasis added). PTO 11 was intended by the Court to avoid unnecessary duplication of discovery in related cases.

3.      BP objects to the Center for Biological Diversity's Discovery Requests to the extent they seek documents or information not related to the issues to be tried in this remand and especially to those that go to issues not made part of the operative complaint at the time of the remand.

4.      BP objects to the Center for Biological Diversity's Discovery Requests as duplicative and unduly burdensome to the extent they seek documents or information already produced to the parties in Phase 1 and Phase 2 of MDL-2179.

5.      BP objects to the Center for Biological Diversity's Discovery Requests to the extent they call for information, seek discovery, or attempt to impose any obligations beyond that permitted or authorized by the Federal Rules of Civil Procedure or the Rules and Orders of this Court.

6.      BP objects to the Center for Biological Diversity's Discovery Requests to the extent they call for the production of ESI in any manner other than required under Federal Rule of Civil Procedure 34, the Rules and Orders of the Court, and ongoing negotiations and discussions among counsel.

7.      BP objects to the Center for Biological Diversity's Discovery Requests to the extent they seek information or documents protected by the attorney-client privilege, the work-product doctrine, the joint defense or common interest privilege, or any other applicable privilege, exemption, or immunity. BP will identify specific documents withheld on these grounds in accordance with the schedule set forth in, and provide the information required by,

the Court's Pretrial Order #14, and such further Orders of the Court and ongoing negotiations and discussions among counsel.  BP incorporates any forthcoming privilege logs and all related information into this general objection to the extent necessary to preserve against any waiver of any applicable privilege or immunity from discovery.

8.      BP objects to the Center for Biological Diversity's Discovery Requests to the extent they seek information or documents relating to the settlement or potential settlement of disputes on the grounds that such information is not relevant to any party's claim or defense, is not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, is protected from disclosure and dissemination under Federal Rule of Evidence 408, and that discovery of such information would be prejudicial to the efforts of BP and any opposing parties to resolve their disputes in a fair and efficient manner.

9.      BP objects to the Center for Biological Diversity's Discovery Requests to the extent they call for information or documents not within BP's possession, custody, or control. All responses are made on behalf of BP only, and are limited to information and documents within BP's possession, custody, or control.

10.     BP objects to the Center for Biological Diversity's Discovery Requests to the extent they are unduly burdensome, duplicative, premature, oppressive, and/or overbroad, including, without limitation, as to subject matter and/or time period, and where compliance with specific requests would be unreasonably difficult as well as prohibitively expensive or time-consuming.

11.     BP objects to the Center for Biological Diversity's Discovery Requests to the extent they are not limited to information or documents relevant to any party's claim or defense, or to the extent they seek discovery of information or documents not admissible at trial and not

reasonably calculated to lead to the discovery of admissible evidence, including, but not limited to, requests seeking information or documents concerning other incidents, accidents, or other events at BP facilities or locations other than the Macondo Well or that are otherwise unrelated to the *Deepwater Horizon.*

12.    BP objects to the Center for Biological Diversity's Discovery Requests as premature to the extent they call for expert discovery or seek information or documents which may not be identified until all fact and expert discovery is complete.

13.    BP objects to the Center for Biological Diversity's Discovery Requests to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

14.    BP objects to the Center for Biological Diversity's Discovery Requests to the extent they seek the disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to, restrictions imposed in connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

15.    BP objects to the Center for Biological Diversity's Discovery Requests to the extent they seek documents already in the possession of the Center for Biological Diversity or equally available to the Center for Biological Diversity from sources other than BP, including publicly available sources and discovery responses accessible to the PSC.

16. BP objects to the Center for Biological Diversity's "Definitions" to the extent they seek to impose any meaning or interpretation onto the requests other than that evident from the plain and ordinary meaning of the words used therein. BP further objects to, and will read and respond to, the Center for Biological Diversity's "Definitions" as follows:

(1) The Center for Biological Diversity's definition of "Agents" is extremely overbroad and includes individuals and entities that may not be considered agents of BP under the applicable law. BP will read and respond to the Center for Biological Diversity's requests with the understanding that the term "agent" as used in these requests means person, employee, contractor, group, organization, corporation, partnership, limited liability corporation or other business or legal entity under any type of form or contractual relationship with the defendants, but do not concede that any such parties are, in fact, agents of BP.

(2) The Center for Biological Diversity's definition of "Defendants" and "defendants" is vague and overbroad and potentially includes entities wholly unrelated to the Macondo Incident. BP will read and respond to the Center for Biological Diversity's requests with the understanding that the term "Defendant" or "defendants" means BP America Production Company and BP Exploration and Production Inc.

(3) The Center for Biological Diversity's definition of "Document" and "documents" is improper to the extent it includes items outside the scope of Federal Rule of Civil Procedures 34(a)(1)(A). BP will read and respond to the Center for Biological Diversity's requests with the understanding that the term "document" means the items listed in Federal Rule of Civil Procedure 34(a)(1)(A).

(4) The Center for Biological Diversity's definition of "*DEEPWATER HORIZON*" is unobjectionable.

18

(5)     The Center for Biological Diversity's definition of "Macondo Well" is unobjectionable.

(6)     The Center for Biological Diversity's definition of "Incident" is unobjectionable.

(7)     The Center for Biological Diversity's definition of "Oil" is vague, overbroad, and inconsistent.  Additionally, the Center for Biological Diversity's definition is not tied to any specialized usage in the petroleum industry.  Further, "any other form of hydrocarbon" is overbroad and beyond any commonly accepted definition of "oil."  BP will thus read and respond to the Center for Biological Diversity's requests on the basis that the term "oil" will be understood as a matter of standard English usage in the context in which the term is used in Request for Production No. 5 and Request for Admission No. 3.

(8)     The Center for Biological Diversity's definition of "Person" and "persons" is vague and overbroad and inconsistent given that there are two different definitions of person; it includes any number of things that are not people in any sense of the word.  BP will read and respond to the Center for Biological Diversity's requests with the understanding that the term "person" has its plain and ordinary meaning in standard English usage.

(9)     The Center for Biological Diversity's definition of "Identify" is overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to distinguish one individual from any other.  It is also improper in that it would inject an additional four interrogatories into each identified person in any interrogatory response.  BP will read and respond to the Center for Biological Diversity's requests with the understanding that the term "identify" mean an individual's name, and where the context reasonably requires, his or her employer and title.

(10)     The Center for Biological Diversity's definition of "Relating to," "related to," "referring to," "regarding, "concerning," or "with respect to," is vague and overbroad; they render these and innumerable other words void of any independent meaning.  BP will read and respond to the Center for Biological Diversity's requests with the understanding that these terms have their plain and ordinary meaning in standard English usage.

(11)     The Center for Biological Diversity's definitions of "and" and "or" are vague, overbroad, and confusing; they render the words equivalent and therefore deprive them of independent meaning and inconsistent with standard English usage.  BP will read and respond to the Center for Biological Diversity's requests with the understanding that the term "and" means and in standard English usage, and the term "or" means or in standard English usage.

(12)     The Center for Biological Diversity's instruction to treat all verbs as possessing all possible tenses is vague, overbroad, and confusing; it renders many of the Center for Biological Diversity's requests unnecessarily nonsensical, contorted, and duplicative.  BP will read and respond to plaintiffs' requests as written.

(13)     The Center for Biological Diversity's instruction to treat the present tense as including the past and future tenses is vague, overbroad, and confusing; it renders many of the Center for Biological Diversity's requests unnecessarily nonsensical, contorted, and duplicative. BP will read and respond to the requests as written, not as imagined to give the broadest possible application.

(14)     The Center for Biological Diversity's definition of "any and all," "all," is vague, overbroad, and confusing; it renders the words unnecessarily ambiguous and necessarily converts many of plaintiffs' requests into nonsensical requests for duplicative information.  BP will read and respond to the Center for Biological Diversity's requests with the understanding

that the term "any" means any in standard English usage and "any and all" means any and all in standard English usage.

(15)     The Center for Biological Diversity's instruction to treat all terms of a specific gender as referring to all genders is vague, overbroad, and confusing; it renders many of plaintiffs' requests unnecessarily nonsensical, contorted, and duplicative. BP will read and respond to the Center for Biological Diversity's requests as written, not as imagined.

17.     These responses are made without waiving, in any manner, BP's right to object to the use of any information or documents provided in response to these requests at any trial or evidentiary hearing on grounds of privilege, relevance, materiality, authenticity, hearsay, or any other ground permitted by any applicable law or rule.

18.     To the extent BP states it will produce documents in response to the requests, BP will produce such documents on a rolling basis with such reasonable speed as BP can locate and process them, without sacrificing a meaningful review for responsiveness, privilege, and confidentiality, as this is the only feasible and physically possible method given the scope and breadth of the requests.

19.     To the extent that BP responds that it will search for and produce responsive documents, BP is only undertaking to make a good faith effort to conduct a reasonable search of non-privileged documents of the files and records of those individuals likely to have meaningful information responsive to a request as maintained in the ordinary course of business, and/or to apply a reasonable set of search terms, including those the parties have already agreed upon,  to available collections of ESI as maintained in the ordinary course of business reasonably likely to yield a meaningful amount of information responsive to a request.  BP is not offering or promising to search for and produce every document or piece of information that may exist in the

possession, custody, or control of any of the BP entities' tens of thousands of employees and agents where any such items are not included within the results of a reasonable search as described above.

20.     Where documents are identified, BP incorporates into its response all similar documents, which are equally available to the Center for Biological Diversity via electronic searches of BP's production.

21.     BP's decision, now or in the future, to provide information or documents notwithstanding the objectionable nature of any of the definitions or instructions, or the document requests themselves, should not be construed as:  (a) a stipulation that the material is relevant or admissible, (b) a waiver of BP's general objections or the objections asserted in response to specific requests, or (c) an agreement that requests for similar information will be treated in a similar manner.

22.     BP reserves the right to modify, amend, or supplement its responses, which are made based on the current status of its knowledge, understanding, belief, and searches for documents.  The investigation of facts and information relating to these requests is continuing, and, therefore, these responses are not intended as an admission or a representation that additional information or documents do not exist.

## **VERIFICATION**

I, Charles Holt, the Managing Well Operations Manager at BP Global Wells Institute, having undertaken a reasonable inquiry under the circumstances into the process by which the foregoing response to interrogatories were compiled, hereby certify, under penalty of perjury, that, to the best of my knowledge, information, and belief, the foregoing response accurately reflects the information available to BP America Production Company and BP Exploration & Production Inc. as specified therein.

State of Texas          :
                                :          ss.
County of Harris       :

Sworn and ascribed to before me
this 24 day of February, 2014



Notary Public

GLORIA CAZARES
MY COMMISSION EXPIRES
February 4, 2018

Dated: February 26, 2014

Respectfully submitted,

**AS TO RESPONSES TO
INTERROGATORIES**
By: /s/ Charles Holt
501 Westlake Park Blvd.
Houston, Texas 77079

*BP Exploration & Production Inc. and
BP America Production Co.*

**AS TO OBJECTIONS AND TO
RESPONSES TO REQUESTS FOR
DOCUMENTS**

By: /s/ J. Andrew Langan, P.C.

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Timothy A. Duffy, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP Exploration & Production
Inc. and BP America Production Co.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 26th day of February, 2014.

<u>/s/ Don K. Haycraft</u>