# EXHIBIT 7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: 2:10-cv-02454, 2:10-cv-01768 | DISTRICT JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |
| …………………………………………... | |

**BP EXPLORATION & PRODUCTION INC. AND BP AMERICA PRODUCTION CO.'S RESPONSES AND OBJECTIONS TO THE CENTER FOR BIOLOGICAL DIVERSITY'S SECOND SET OF REQUESTS FOR ADMISSION**

Defendants BP Exploration & Production Inc. and BP America Production Company (collectively, "BP"), by their undersigned Counsel, and, pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, hereby submit the following responses to the Center for Biological Diversity's Second Set of Requests for Admission.

**SPECIFIC RESPONSES AND OBJECTIONS**

BP responds as follows to the Center for Biological Diversity's specific requests for admission, subject to and without waiving its general objections, each and every one of which are specifically incorporated into each individual response below.[1]

**REQUESTS FOR ADMISSION**

7.   Admit that the oil that was discharged from the Macondo Well contained more than 0.1% benzene.

**RESPONSE:**

BP objects to the extent that this request calls for premature expert discovery.

---

[1] BP's general objections are set forth at pages 7-15.

KE 30222839.4

BP objects that the request is vague and ambiguous with regards to, for example, the phrase "oil that was discharged" as it does not specify the pressure or temperature of the oil or the location of the oil. BP further objects that the request is vague and ambiguous with regards to the phrase "discharged from the Macondo Well" as it does not specify the location in the well system or the time of discharge. BP further objects to this request given that no oil was discharged "from the well," as BP and Anadarko have explained in their consolidated appeals in the Fifth Circuit from the district court's grant of summary judgment on the United States' Clean Water Act civil penalty claim (argued December 5, 2013). Instead, oil originating from the reservoir was discharged to Gulf waters from the *Deepwater Horizon* and its appurtenances only.

BP further objects that the request is vague and ambiguous with regards to the term "0.1%" because the request does not specify whether the request is for a percentage by weight, mole, or volume. Additionally, "0.1%" is vague and ambiguous because, for example, it does not specify the relevant temperature and pressures when calculating percentage.

BP further objects to this request on the grounds that it is not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. The only claim that the Center for Biological Diversity has remaining after the Fifth Circuit's decision affirming in part and remanding in part is under EPCRA, and the only claim asserted under EPCRA alleges the release of "hazardous substances," and "hazardous substances" is explicitly defined to exclude petroleum. *See* 42 U.S.C. § 9601(14).

Without waiving these objections, BP responds as follows:

Requestor can review the reports cited in BP's response to RFP 5. According to a Schlumberger PVT report (BP-HZN-2179MDL04190810), the weight percentage of benzene in a monophasic fluid was 0.03% - 0.06%, depending on the sample. Upon a reasonable inquiry

2

and as this request is framed, BP is unable to admit or deny this request for admission. To the extent a response is deemed required, denied.

8. If you deny Request for Admission No. 7, then admit that the oil that was discharged from the Macondo Well contained more than 0.01% benzene.

**RESPONSE:**

BP objects to the extent that this request calls for premature expert discovery.

BP objects that the request is vague and ambiguous with regards to, for example, the phrase "oil that was discharged" as it does not specify the pressure or temperature of the oil or the location of the oil. BP further objects that the request is vague and ambiguous with regards to the phrase "discharged from the Macondo Well" as it does not specify the location in the well system or the time of discharge. BP further objects to this request given that no oil was discharged "from the well," as BP and Anadarko have explained in their consolidated appeals in the Fifth Circuit from the district court's grant of summary judgment on the United States' Clean Water Act civil penalty claim (argued December 5, 2013). Instead, oil originating from the reservoir was discharged to Gulf waters from the *Deepwater Horizon* and its appurtenances only.

BP further objects that the request is vague and ambiguous with regards to the term "0.01%" because the request does not specify whether the request is for a percentage by weight, mole, or volume. Additionally, "0.01%" is vague and ambiguous because, for example, it does not specify the relevant temperature and pressures when calculating percentage.

BP further objects to this request on the grounds that it is not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. The only claim that the Center for Biological Diversity has remaining after the Fifth Circuit's decision affirming in part and remanding in part is under EPCRA, and the only claim

3

asserted under EPCRA alleges the release of "hazardous substances," and "hazardous substances" is explicitly defined to exclude petroleum.  *See* 42 U.S.C. § 9601(14).

Without waiving these objections, BP responds as follows:

Requestor can review the reports cited in BP's response to RFP 5.  According to a Schlumberger PVT report (BP-HZN-2179MDL04190810), the weight percentage of benzene in a monophasic fluid was 0.03% - 0.06%, depending on the sample.  Upon a reasonable inquiry and as this request is framed, BP is unable to admit or deny this request for admission.  To the extent a response is deemed required, denied.

9. Admit that the oil that was discharged from the Macondo Well contained more than 0.1% toluene.

**RESPONSE:**

BP objects to the extent that this request calls for premature expert discovery.

BP objects that the request is vague and ambiguous with regards to, for example, the phrase "oil that was discharged" as it does not specify the pressure or temperature of the oil or the location of the oil.  BP further objects that the request is vague and ambiguous with regards to the phrase "discharged from the Macondo Well" as it does not specify the location in the well system or the time of discharge.  BP further objects to this request given that no oil was discharged "from the well," as BP and Anadarko have explained in their consolidated appeals in the Fifth Circuit from the district court's grant of summary judgment on the United States' Clean Water Act civil penalty claim (argued December 5, 2013).  Instead, oil originating from the reservoir was discharged to Gulf waters from the *Deepwater Horizon* and its appurtenances only.

BP further objects that the request is vague and ambiguous with regards to the term "0.1%" because the request does not specify whether the request is for a percentage by weight,

4

mole, or volume.  Additionally, "0.1%" is vague and ambiguous because, for example, it does not specify the relevant temperature and pressures when calculating percentage.

BP further objects to this request on the grounds that it is not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence.  The only claim that the Center for Biological Diversity has remaining after the Fifth Circuit's decision affirming in part and remanding in part is under EPCRA, and the only claim asserted under EPCRA alleges the release of "hazardous substances," and "hazardous substances" is explicitly defined to exclude petroleum.  *See* 42 U.S.C. § 9601(14).

Without waiving these objections, BP responds as follows:

Requestor can review the reports cited in BP's response to RFP 5.  According to a Schlumberger PVT report (BP-HZN-2179MDL04190810), the weight percentage of toluene in a monophasic fluid was 0.02-0.17%, depending on the sample.  Upon a reasonable inquiry and as this request is framed, BP is unable to admit or deny this request for admission.  To the extent a response is deemed required, denied.

10.     Admit that the oil that was discharged from the Macondo Well contained more than 0.1% xylene.

**RESPONSE:**

BP objects to the extent that this request calls for premature expert discovery.

BP objects that the request is vague and ambiguous with regards to, for example, the phrase "oil that was discharged" as it does not specify the pressure or temperature of the oil or the location of the oil.  BP further objects that the request is vague and ambiguous with regards to the phrase "discharged from the Macondo Well" as it does not specify the location in the well system or the time of discharge.  BP further objects to this request given that no oil was discharged "from the well," as BP and Anadarko have explained in their consolidated appeals in

5

the Fifth Circuit from the district court's grant of summary judgment on the United States' Clean Water Act civil penalty claim (argued December 5, 2013). Instead, oil originating from the reservoir was discharged to Gulf waters from the *Deepwater Horizon* and its appurtenances only.

BP further objects that the request is vague and ambiguous with regards to the term "0.1%" because the request does not specify whether the request is for a percentage by weight, mole, or volume. Additionally, "0.1%" is vague and ambiguous because, for example, it does not specify the relevant temperature and pressures when calculating percentage. BP also objects that the request is vague and ambiguous with regards to the term "xylene" as xylene has different characteristics (i.e., xylene may be be any of three different isomers, typically labeled as m-xylene, o-xylene, and p-xylene).

BP further objects to this request on the grounds that it is not relevant to the claims or defenses of any party and not reasonably calculated to lead to the discovery of admissible evidence. The only claim that the Center for Biological Diversity has remaining after the Fifth Circuit's decision affirming in part and remanding in part is under EPCRA, and the only claim asserted under EPCRA alleges the release of "hazardous substances," and "hazardous substances" is explicitly defined to exclude petroleum. *See* 42 U.S.C. § 9601(14).

Without waiving these objections, BP responds as follows:

Requestor can review the reports cited in BP's response to RFP 5. According to a Schlumberger PVT report (BP-HZN-2179MDL04190810), the weight percentage of xylenes in a monophasic fluid was 0.07-0.25%, depending on the sample and the xylene isomer. Upon a reasonable inquiry and as this request is framed, BP is unable to admit or deny this request for admission. To the extent a response is deemed required, denied.

**GENERAL OBJECTIONS**

BP asserts the following objections to each and every one of the Center for Biological Diversity's interrogatories, requests for production, and requests for admission including any definitions or instructions associated therewith (collectively, "the Center for Biological Diversity's Discovery Requests"). These general objections are incorporated by reference into each specific response set forth by BP and are neither waived nor limited by any specific responses.

1. BP objects to the Center for Biological Diversity's Discovery Requests because they are duplicative and unduly burdensome in that they seek information and documents related to the "top kill" procedure and other source control efforts. The top kill procedure and other source control efforts were the subject of extensive discovery in the Phase 2 proceedings, which the Center for Biological Diversity can coordinate with the PSC to access.

2. BP objects to the Center for Biological Diversity's Discovery Requests because they do not comply with Pretrial Order No. 8 ("PTO 8") and Pretrial Order No. 11 ("PTO 11"). Per PTO 8, the Plaintiff Steering Committee is responsible for "[c]onducting all discovery in a coordinated and consolidated manner on behalf and for the benefit of all plaintiffs." *Id.* at 3. PTO 11 also applies to CBD's claim (as well as any other "related cases originally filed in" the MDL Court) and provides that "[a]ll . . . requests for discovery . . . shall be initiated by ***and/or coordinated through the Plaintiff Steering Committee*** ("PSC"), to be filed by and through Plaintiffs' Liaison Counsel." *Id.* at 13 (emphasis added). PTO 8 and PTO 11 were intended by the Court to avoid unnecessary duplication of discovery in related cases.

3. BP objects to the Center for Biological Diversity's Discovery Requests to the extent they seek documents or information not related to the issues to be tried in this remand and

7

especially to those that go to issues not made part of the operative complaint at the time of the remand.

4.     BP objects to the Center for Biological Diversity's Discovery Requests as duplicative and unduly burdensome to the extent they seek documents or information already produced to the parties in Phase 1 and Phase 2 of MDL-2179.

5.     BP objects to the Center for Biological Diversity's Discovery Requests to the extent they call for information, seek discovery, or attempt to impose any obligations beyond that permitted or authorized by the Federal Rules of Civil Procedure or the Rules and Orders of this Court.

6.     BP objects to the Center for Biological Diversity's Discovery Requests to the extent they call for the production of ESI in any manner other than required under Federal Rule of Civil Procedure 34, the Rules and Orders of the Court, and ongoing negotiations and discussions among counsel.

7.     BP objects to the Center for Biological Diversity's Discovery Requests to the extent they seek information or documents protected by the attorney-client privilege, the work-product doctrine, the joint defense or common interest privilege, or any other applicable privilege, exemption, or immunity.  BP will identify specific documents withheld on these grounds in accordance with the schedule set forth in, and provide the information required by, the Court's Pretrial Order #14, and such further Orders of the Court and ongoing negotiations and discussions among counsel.  BP incorporates any forthcoming privilege logs and all related information into this general objection to the extent necessary to preserve against any waiver of any applicable privilege or immunity from discovery.

8. BP objects to the Center for Biological Diversity's Discovery Requests to the extent they seek information or documents relating to the settlement or potential settlement of disputes on the grounds that such information is not relevant to any party's claim or defense, is not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, is protected from disclosure and dissemination under Federal Rule of Evidence 408, and that discovery of such information would be prejudicial to the efforts of BP and any opposing parties to resolve their disputes in a fair and efficient manner.

9. BP objects to the Center for Biological Diversity's Discovery Requests to the extent they call for information or documents not within BP's possession, custody, or control. All responses are made on behalf of BP only, and are limited to information and documents within BP's possession, custody, or control.

10. BP objects to the Center for Biological Diversity's Discovery Requests to the extent they are unduly burdensome, duplicative, premature, oppressive, and/or overbroad, including, without limitation, as to subject matter and/or time period, and where compliance with specific requests would be unreasonably difficult as well as prohibitively expensive or time-consuming.

11. BP objects to the Center for Biological Diversity's Discovery Requests to the extent they are not limited to information or documents relevant to any party's claim or defense, or to the extent they seek discovery of information or documents not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, including, but not limited to, requests seeking information or documents concerning other incidents, accidents, or other events at BP facilities or locations other than the Macondo Well or that are otherwise unrelated to the *Deepwater Horizon*.

12. BP objects to the Center for Biological Diversity's Discovery Requests as premature to the extent they call for expert discovery or seek information or documents which may not be identified until all fact and expert discovery is complete.

13. BP objects to the Center for Biological Diversity's Discovery Requests to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

14. BP objects to the Center for Biological Diversity's Discovery Requests to the extent they seek the disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to, restrictions imposed in connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

15. BP objects to the Center for Biological Diversity's Discovery Requests to the extent they seek documents already in the possession of the Center for Biological Diversity or equally available to the Center for Biological Diversity from sources other than BP, including publicly available sources and discovery responses accessible to the PSC.

16. BP objects to the Center for Biological Diversity's "Definitions" to the extent they seek to impose any meaning or interpretation onto the requests other than that evident from the plain and ordinary meaning of the words used therein. BP further objects to, and will read and respond to, the Center for Biological Diversity's "Definitions" as follows:

(1) The Center for Biological Diversity's definition of "Agents" is extremely overbroad and includes individuals and entities that may not be considered agents of BP under the applicable law. BP will read and respond to the Center for Biological Diversity's requests with the understanding that the term "agent" as used in these requests means person, employee, contractor, group, organization, corporation, partnership, limited liability corporation or other business or legal entity under any type of form or contractual relationship with the defendants, but do not concede that any such parties are, in fact, agents of BP.

(2) The Center for Biological Diversity's definition of "Defendants" and "defendants" is vague and overbroad and potentially includes entities wholly unrelated to the Macondo Incident. BP will read and respond to the Center for Biological Diversity's requests with the understanding that the term "Defendant" or "defendants" means BP America Production Company and BP Exploration and Production Inc.

(3) The Center for Biological Diversity's definition of "Document" and "documents" is improper to the extent it includes items outside the scope of Federal Rule of Civil Procedures 34(a)(1)(A). BP will read and respond to the Center for Biological Diversity's requests with the understanding that the term "document" means the items listed in Federal Rule of Civil Procedure 34(a)(1)(A).

(4) The Center for Biological Diversity's definition of "*DEEPWATER HORIZON*" is unobjectionable.

(5) The Center for Biological Diversity's definition of "Macondo Well" is unobjectionable.

(6) The Center for Biological Diversity's definition of "Incident" is unobjectionable.

11

(7) The Center for Biological Diversity's definition of "Oil" is vague, overbroad, and inconsistent. Additionally, the Center for Biological Diversity's definition is not tied to any specialized usage in the petroleum industry. Further, "any other form of hydrocarbon" is overbroad and beyond any commonly accepted definition of "oil." BP will thus read and respond to the Center for Biological Diversity's requests on the basis that the term "oil" will be understood as a matter of standard English usage in the context in which the term is used in Request for Production No. 5 and Request for Admission No. 3.

(8) The Center for Biological Diversity's definition of "Person" and "persons" is vague and overbroad and inconsistent given that there are two different definitions of person; it includes any number of things that are not people in any sense of the word. BP will read and respond to the Center for Biological Diversity's requests with the understanding that the term "person" has its plain and ordinary meaning in standard English usage.

(9) The Center for Biological Diversity's definition of "Identify" is overbroad; it includes a request for detailed information far beyond whatever may be reasonably necessary to distinguish one individual from any other. It is also improper in that it would inject an additional four interrogatories into each identified person in any interrogatory response. BP will read and respond to the Center for Biological Diversity's requests with the understanding that the term "identify" mean an individual's name, and where the context reasonably requires, his or her employer and title.

(10) The Center for Biological Diversity's definition of "Relating to," "related to," "referring to," "regarding, "concerning," or "with respect to," is vague and overbroad; they render these and innumerable other words void of any independent meaning. BP will read and

12

respond to the Center for Biological Diversity's requests with the understanding that these terms have their plain and ordinary meaning in standard English usage.

(11) The Center for Biological Diversity's definitions of "and" and "or" are vague, overbroad, and confusing; they render the words equivalent and therefore deprive them of independent meaning and inconsistent with standard English usage. BP will read and respond to the Center for Biological Diversity's requests with the understanding that the term "and" means and in standard English usage, and the term "or" means or in standard English usage.

(12) The Center for Biological Diversity's instruction to treat all verbs as possessing all possible tenses is vague, overbroad, and confusing; it renders many of the Center for Biological Diversity's requests unnecessarily nonsensical, contorted, and duplicative. BP will read and respond to plaintiffs' requests as written.

(13) The Center for Biological Diversity's instruction to treat the present tense as including the past and future tenses is vague, overbroad, and confusing; it renders many of the Center for Biological Diversity's requests unnecessarily nonsensical, contorted, and duplicative. BP will read and respond to the requests as written, not as imagined to give the broadest possible application.

(14) The Center for Biological Diversity's definition of "any and all," "all," is vague, overbroad, and confusing; it renders the words unnecessarily ambiguous and necessarily converts many of plaintiffs' requests into nonsensical requests for duplicative information. BP will read and respond to the Center for Biological Diversity's requests with the understanding that the term "any" means any in standard English usage and "any and all" means any and all in standard English usage.

(15) The Center for Biological Diversity's instruction to treat all terms of a specific gender as referring to all genders is vague, overbroad, and confusing; it renders many of plaintiffs' requests unnecessarily nonsensical, contorted, and duplicative. BP will read and respond to the Center for Biological Diversity's requests as written, not as imagined.

17. These responses are made without waiving, in any manner, BP's right to object to the use of any information or documents provided in response to these requests at any trial or evidentiary hearing on grounds of privilege, relevance, materiality, authenticity, hearsay, or any other ground permitted by any applicable law or rule.

18. To the extent BP states it will produce documents in response to the requests, BP will produce such documents on a rolling basis with such reasonable speed as BP can locate and process them, without sacrificing a meaningful review for responsiveness, privilege, and confidentiality, as this is the only feasible and physically possible method given the scope and breadth of the requests.

19. To the extent that BP responds that it will search for and produce responsive documents, BP is only undertaking to make a good faith effort to conduct a reasonable search of non-privileged documents of the files and records of those individuals likely to have meaningful information responsive to a request as maintained in the ordinary course of business, and/or to apply a reasonable set of search terms, including those the parties have already agreed upon, to available collections of ESI as maintained in the ordinary course of business reasonably likely to yield a meaningful amount of information responsive to a request. BP is not offering or promising to search for and produce every document or piece of information that may exist in the possession, custody, or control of any of the BP entities' tens of thousands of employees and

agents where any such items are not included within the results of a reasonable search as described above.

20. Where documents are identified, BP incorporates into its response all similar documents, which are equally available to the Center for Biological Diversity via electronic searches of BP's production.

21. BP's decision, now or in the future, to provide information or documents notwithstanding the objectionable nature of any of the definitions or instructions, or the document requests themselves, should not be construed as: (a) a stipulation that the material is relevant or admissible, (b) a waiver of BP's general objections or the objections asserted in response to specific requests, or (c) an agreement that requests for similar information will be treated in a similar manner.

22. BP reserves the right to modify, amend, or supplement its responses, which are made based on the current status of its knowledge, understanding, belief, and searches for documents. The investigation of facts and information relating to these requests is continuing, and, therefore, these responses are not intended as an admission or a representation that additional information or documents do not exist.

Dated: March 3, 2014

Respectfully submitted,

By: /s/ J. Andrew Langan, P.C.

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Timothy A. Duffy, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile:  (312) 862-2200

and

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP Exploration & Production Inc. and BP America Production Co.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 3rd day of March, 2014.

/s/ Don K. Haycraft