IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by<br>    the Oil Rig "Deepwater Horizon"<br>    in the Gulf of Mexico, on April 20, 2010<br><br>This document relates to:<br>    *Center for Biological Diversity, Inc. v. BP<br>    America Inc., et al.*, Nos. 2:10-cv-01768 &<br>    2:10-cv-02454 | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | MDL NO. 2179<br><br>SECTION J<br><br><br>Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |

## BP'S MOTION FOR SUMMARY JUDGMENT

Defendants BP America Inc. and BP Exploration & Production Inc. (collectively "BP") hereby move for summary judgment.

Plaintiff's sole remaining claim in this litigation, long delayed by Plaintiff Center for Biological Diversity's ("CBD's") inaction, is that BP failed to provide the notice required by Section 304 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11004.  For a host of reasons — most rooted directly in the statute's text — that claim cannot survive summary judgment.

*First,* Congress did not enact EPCRA in a vacuum; the statute fits within a broader scheme of federal laws related to pollution, including oil pollution.  Indeed, EPCRA even borrows its definition of "hazardous substance" from another statute (*viz*, CERCLA), which expressly excludes oil and its constituent chemicals.  42 U.S.C. § 9601(14).  EPCRA similarly does not extend to the two other chemicals that Plaintiff would attempt to squeeze into the reporting requirement.  Methane gas, according to the EPA, is not a hazardous substance under the relevant statutes.  EPA, Office of Solid Waste and Emergency Response, Directive No. 9360.0-8, *CERCLA Removal Actions at Methane Release Sites*, at 1 (Jan. 23, 1986).  Likewise, drilling mud lies outside the statutory scope because EPCRA and CERCLA both borrow from the Resource Conservation and Recovery Act ("RCRA"), under which "[d]rilling fluids, produced waters, and other wastes associated with the exploration, development, or production

1

of crude oil, natural gas or geothermal energy" are not hazardous wastes.  40 C.F.R. § 261.4(b)(5).  (Indeed, several of CBD's non-oil EPCRA claims, including its claims regarding drilling-fluid and dispersant releases are also barred for failure to provide the requisite 60-day notice of such releases that all proper citizen suits must provide.)  When this case was before the Fifth Circuit, that Court noted BP's argument based on the petroleum exclusion, but declined to rule on it because it was not a basis for this Court's initial dismissal.  *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 428 n.4 (5th Cir. 2013).  The time is now right to apply the statutory exclusions and end this over-lengthened case.

**Second,** the release in question did not come from an EPCRA-regulated "facility."  Only the "owner or operator of a facility" has an obligation to provide EPCRA reports, and only these persons are liable in citizen suits like this one.  42 U.S.C. § 11046(a)(1)(A).  Under the statutory definition, however, the *Deepwater Horizon* was not a "facility."  EPCRA confines facilities to stationary sources, with a very limited carve-out for a handful of mobile sources — drilling rigs not among them.  42 U.S.C. § 11049(4).  Moreover, the *Horizon* does not match the qualifying language that accompanies the defined term "facility" — *i.e.,* reporting duties only apply to that subset of facilities "at which a hazardous chemical is produced, used, or stored."  42 U.S.C. § 11004(a)(3).  The *Deepwater Horizon* did not produce, use, or store oil.  It was a drilling vessel engaged in temporary well abandonment operations when the *Deepwater Horizon* Incident began.  Lastly, Plaintiff has alleged only that Transocean owned the *Deepwater Horizon*, Am. Compl. ¶ 66, and has not supplied any evidence that BP was an owner or operator of the rig.  Thus, even if the rig were an EPCRA facility, BP would not be liable to report releases therefrom.  BP's only liability could attach as an owner of the well being drilled there.  But no release came from the well, and natural reservoirs certainly lie outside the definition of a facility.  By its terms, EPCRA does not apply to the spill in question.

**Third,** the undisputed facts continue to establish what this Court held in its original decision dismissing Plaintiff's EPCRA claims: the case is moot because "data regarding the spill and its cleanup are easily accessible."  Rec. Doc. 2784, at 8 (June 6, 2011).  The Fifth Circuit

remanded on this issue for further factual development.  As the appellate court noted, however, "[i]f the information required by EPCRA's reporting provisions may indeed be easily located from alternate sources, it may be that a further order from the district court would provide no meaningful relief . . . ."  *CBD*, 704 F.3d at 430.  The record is now complete, and the accuracy of this Court's original holding is confirmed by the plethora of information available in the months following the spill and that continues to be available, included as supplemented by Transocean in its civil settlement with the United States, which included an extinguishment of EPCRA claims.  BP is, of course, equally able to rely on information that Transocean agreed to place in the public domain to settle any possible (but unfiled and now extinguished) EPCRA claim by the United States against Transocean.  Moreover, BP and Transocean both provided a steady and abundant stream of information to federal officials (there are no relevant state or local authorities 50 miles offshore) and to the public.  With the record now in place, the mootness of this case is beyond doubt, and "a further order from the district court would provide no meaningful relief." *Id.*

*Finally*, the two remaining reasons for granting BP's Motion for Summary Judgment are not specific to the provisions of EPCRA.  They are, however, no less forceful.  Most glaringly, Plaintiff has given every indication that one or more of its claims will fail to comport with Article III and prudential standing doctrine since CBD has, at most, attempted to demonstrate standing as to its claims for failure to report oil and dispersant releases, and even there its showings are suspect.  *See, e.g.,* CBD Response to Interrogatory No. 4 (admitting that CBD's declarant, Dr. Thrasher, has never treated any patients for spill-related illness).  Critically, CBD must establish "specific facts" necessary to show a particularized harm to its members; that is the linchpin of Article III standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  While the Fifth Circuit entertained the case on the easily satisfied **motion-to-dismiss standards** for standing via the CBD's Amended Complaint and conclusory affidavits, the opportunity to provide evidence (against which prior affidavits would need to be assessed) changes the governing legal standard at the current summary judgment stage, and under that standard Plaintiff appears poised to fail to show injury as to one or more of its claims.

Additionally, Plaintiff's claims are barred by the equitable doctrine of laches. This case was pending on remand for over a year before Plaintiff took even the first useful and procedurally proper step toward asserting its rights. This delay, for which Plaintiff offers no explanation, proves that there was never any urgent or real need for the information to begin with. It also tilts the balance of equities in favor of BP and against the injunction CBD seeks.

Date: April 15, 2014

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
richard.godfrey@kirkland.com
andrew.langan@kirkland.com

Joel M. Gross
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, DC 20004
Telephone: (202) 942-5705
Facsimile: (202) 942-5999

Kerri L. Stelcen
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 715-1047
Facsimile: (212) 715-1399

Respectfully Submitted,

/s/ Don K. Haycraft
Don K. Haycraft
Devin C. Reid
LISKOW & LEWIS LLP
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 556-4128
Facsimile: (504) 556-4108
dkhaycraft@liskow.com
dcreid@liskow.com

Jeffrey Bossert Clark
Joseph A. Eisert
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
jeffrey.clark@kirkland.com
joseph.eisert@kirkland.com
dominic.draye@kirkland.com

**ATTORNEYS-IN-CHARGE FOR DEFENDANTS BP AMERICA INC. AND BP EXPLORATION & PRODUCTION INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 15th day of April, 2014.

/s/ Don K. Haycraft
Don K. Haycraft