IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | *<br>*<br>*<br>* | MDL NO. 2179<br><br>SECTION J |
| This document relates to: 2:10-cv-01768, 2:10-cv-02454 | *<br>*<br>*<br>*<br>* | Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |

### BP'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

In accordance with Federal Rule of Civil Procedure 56(c) and Local Rule 56.1, Defendants BP America Inc. and BP Exploration & Production Inc. (collectively "BP") submit the following Statement of Undisputed Material Facts in support of BP's Motion for Summary Judgment.

For purposes of BP's present Motion for Summary Judgment:

1. The *Deepwater Horizon* was a Mobile Offshore Drilling Unit that was used to drill the MC 252 Well prior to April 20, 2010. *See* Stipulated Facts Concerning Source Control Events, Rec. Doc. 7076, at 5 (Ex. 1).

2. The *Deepwater Horizon* platform was owned by Triton Asset Leasing GmbH and operated by Transocean Deepwater Inc. *See* Transocean's Response to Separate Statement of Plaintiff United States in Support of Second Motion for Partial Summary Judgment, Rec. Doc 5103-1, at ¶¶ 43-44 (Ex. 2).

3. On April 20, 2010, at 9:51 p.m. CDT, an explosion occurred on the *Deepwater Horizon* located in the Gulf of Mexico approximately 42 miles southeast of Venice, Louisiana. *See* Stipulated Facts Concerning Source Control Events, Rec. Doc. 7076, at ¶ 21 (Ex. 1).

4. At 10 pm, the U.S. Coast Guard was informed of the explosion and fire aboard the *Deepwater Horizon*. *See* On Scene Coordinator Report at 1 (page 21 of 244 in the pdf) (Ex. 3). At 1:37 am on April 21, 2010, BP informed the Coast Guard's National Response Center of the

*Deepwater Horizon* incident as it was occurring. *See* Incident Description, www.nrc.uscg.mil/reports/rwservlet?standard_web+inc_seq=937680 (Apr. 21, 2010) (last visited June 11, 2012) (website down for maintenance on April 15, 2014).

5. On April 22, 2010, a remotely operated underwater vehicle ("ROV") discovered two sources of hydrocarbon release. It was later determined that one release point was the end of the *Deepwater Horizon* riser, and the other was the end of the drill pipe that extended from the riser. *See* Stipulated Facts Concerning Source Control Events, Rec. Doc. 7076, at ¶ 27 (Ex. 1).

6. The oil discharged into the Gulf came from the *Deepwater Horizon* and/or its appurtenances (*i.e.,* the discharged oil touched water most proximately as it emerged from the vessel and parts thereof). *See* United States' Statement of Undisputed Material Facts in Support of Plaintiff United States' Second Motion for Partial Summary Judgment, Rec. Doc. 4836-2, at ¶¶ 15-16 (Ex. 4); Stipulated Facts Concerning Source Control Events, Rec. Doc. 7076, at ¶¶ 27, 40 (Ex. 1); BP's Responses to Anadarko's Statement of Undisputed Material Facts, Rec. Doc. 5265, at ¶ 18 (Ex. 5).

7. Hydrocarbons flowed from the *Deepwater Horizon* and/or its appurtenances into the Gulf of Mexico until July 15, 2010. *See Center for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 418 (5th Cir. 2013).

8. The MC 252 Well was shut in at approximately 2:24 p.m. CDT on July 15, 2010. *See* Stipulated Facts Concerning Source Control Events, Rec. Doc. 7076, at ¶ 137 (Ex. 1).

9. On September 19, 2010, the National Incident Commander concluded that the MC 252 Well was killed. *See* Stipulated Facts Concerning Source Control Events, Rec. Doc. 7076, at ¶ 165 (Ex. 1); *CBD*, 704 F.3d at 418.

10. During the 86 days that oil flowed into the Gulf of Mexico, the United States, through the Federal On-Scene Coordinator ("FOSC"), the Unified Command (comprised of 14 federal agencies) and the National Incident Command, engaged in an environmental response that involved monumental efforts. Based on information then available to the Court, "[a]lmost

50,000 people, including over 17,000 National Guard members, and over 4,000 vessels were deployed in the Gulf of Mexico and the coastal region." *CBD*, 704 F.3d at 418.

11. BP and Transocean were in constant communication and fully cooperated with the FOSC, the federal agencies comprising the Unified Command, and the participating state agencies. *See* On Scene Coordinator Report, at 21-78, 111-148 (Ex. 3).

12. On April 29, 2010, the United States Coast Guard classified the *Deepwater Horizon* spill as a "spill of national significance" pursuant to 40 C.F.R. § 300.323. Order granting Nalco's Motion for Summary Judgment, Rec. Doc. 8037, 15 (Ex. 6). This designation is reserved for a spill "so complex that it requires extraordinary coordination of federal, state, local, and responsible party resources to contain and clean up the discharge." 40 C.F.R. § 300.5. Spills of this nature are subject to exclusive federal government direction. *See* 33 U.S.C. § 1321(c)(2)(A) ("the President shall direct all Federal, State, and private actions to remove the discharge or to mitigate or prevent the threat of the discharge").

13. On April 23, 2010, it was announced that BP had established a dedicated website, www.deepwaterhorizonresponse.com, to provide information to the public regarding the incident and the response. *The Ongoing Administration-Wide Response to the Deepwater BP Oil Spill*, The White House Blog, *available at* http://www.whitehouse.gov/blog/2010/05/05/ongoing-administration-wide-response-deepwater-bp-oil-spill (Ex. 7).

14. On May 25, 2010, BP announced that it had created four websites dedicated to providing state-specific spill information for residents of Alabama, Florida, Louisiana, and Mississippi. *See* Press Release, *BP Announces Launch of State-specific Response Web Sites*, *available at* http://www.bp.com/en/global/corporate/press/press-releases/bp-announces-launch-of-state-specific-response-web-sites.html (Ex. 8).

15. In July 2010, the National Incident Command created a website, restorethegulf.gov, to provide news and information about the spill, response, and recovery efforts. *See* Press Release, *Administration Launches New, Centralized, Streamlined Oil Spill*

*Response Website*, *available at* http://www.restorethegulf.gov/release/2010/07/07/administration-launches-new-centralized-streamlined-oil-spill-response-website (Ex. 9).

16. The United States and BP also successfully opposed the Sierra Club's attempt to intervene into the United States' Clean Water Act (CWA) and Oil Pollution Act case in a decision issued by Magistrate Judge Shushan later affirmed by Judge Barbier. *See* Rec. Docs. 3065; 5059. The Sierra Club never appealed that decision.

17. During the spill response and cleanup, the Center for Biological Diversity ("CBD") filed suit against BP. CBD sent its original notice letter to BP on June 1, 2010 and sent a supplemental letter two days later on June 3, 2010. *See* No. 2:10-cv-2454, Rec. Docs. 1-2 (Ex. 10), 1-3 (Ex. 11). CBD's first complaint, filed June 18, 2010, alleged only violations of Section 306 of the CWA; CBD later amended this complaint on August 2, 2010 to add a claim under the Emergency Planning and Community Right-to-Know Act ("EPCRA"). CBD's initial complaint was jurisdictionally invalid, however, because it was filed fewer than 60 days after the CBD provided a notice letter to BP, as required under EPCRA. 42 U.S.C. § 11046(d). As a result, CBD filed a nearly identical lawsuit on August 4, 2010. It then amended that second complaint on November 26, 2010. *See* Rec. Doc. 813 (filed Nov. 26, 2010) (Ex. 12) ("Amended Complaint"). None of CBD's notice letters mention methanol, drilling mud, or dispersants.

18. The *Deepwater Horizon* was not a production vessel. Nor was it a storage vessel. Instead, it was a mobile offshore drilling unit ("MODU"), *see* 33 U.S.C. § 2701(18) (explaining that "'mobile offshore drilling unit' means a vessel (other than a self-elevating lift vessel) capable of use as an offshore facility"), and was engaged first in drilling and then in preparing to abandon an exploratory well. National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling, 92, 103 (http://www.gpo.gov/fdsys/pkg/GPO-OILCOMMISSION/pdf/GPO-OILCOMMISSION.pdf) (Ex. 13).

19. The *Deepwater Horizon* was in the process of preparing the Macondo well for abandonment when the explosion and ensuing spill occurred. *See* On Scene Coordinator Report, at 1 (Ex. 3).

20. BP admits that BP America Production Company, as successor to Vastar Resources Inc., and Transocean Holdings LLC, as successor to R&B Falcon Corp., were parties to a drilling contract concerning the use of the *Deepwater Horizon*. *See* Drilling Contract by and between Vastar Resources, Inc. and R&B Falcon Drilling Co. (Dec. 9, 1998), as amended (Ex. 14) (*available at* http://www.mdl2179trialdocs.com/releases/release201303141200012/TREX-01356A.pdf). BP did not operate the *Deepwater Horizon* as a matter of law. Instead, operational tasks were assigned under the contract exclusively to Transocean. *See id.* at 16 (Article 15.1) ("CONTRACTOR shall be ***solely responsible*** for the operation of the Drilling Unit, including, without limitation, supervising moving operations, and the positioning of the Drilling Unit on drilling locations as required by COMPANY, as well as such operations on board the Drilling Unit as may be necessary or desirable for the safety of the Drilling Unit.") (emphasis added).

21. In June of 2011, this Court dismissed all of CBD's claims, noting that the EPCRA claim must fail because "data regarding the spill and cleanup are easily accessible." *In re Oil Spill by Oil Rig Deepwater Horizon*, 792 F. Supp. 2d 926, 931 (E.D. La. 2011).

22. The Fifth Circuit upheld the dismissal of CBD's other claims, but remanded as to CBD's EPCRA claim. The Fifth Circuit held as follows: "If the information required by EPCRA's reporting provisions may indeed be easily located from alternate sources, it may be that a further order from the district court would provide no meaningful relief to the Center and its members. Such a conclusion, although not affecting the Center's standing, might render the claim moot. But we are simply unable to decide that question on this record, and the case therefore must be remanded to the district court for further proceedings." *CBD*, 704 F.3d at 430-31 (citation omitted). Hence, the decision indicated that further factual findings concerning the availability of the relevant information could moot this case.

23. CBD's Amended Complaint alleges that Defendants discharged and failed to report under EPCRA: "benzene, toluene, naphthalene, polynuclear aromatic hydrocarbons (PAHs) (including, but not limited to, phenanthrene, benzanthracenes, benzopyrenes, benzofluoranthene, chrysenes, dibenzanthracenes, and indenopyrenes), fluoranthene, haloethers,

halomethanes, methane, arsenic, cadmium, copper, mercury, and nickel." Amended Compl. ¶ 65.

24. Each of the chemicals that CBD lists as a basis for the alleged reporting violation is a natural component of crude oil. *See* CBD Response to Request for Admission No. 2 (Ex. 15).

25. Crude Oil and its constituent chemicals are specifically excluded from the definition of hazardous substances in CERCLA, and therefore are exempted from the reporting requirements for hazardous substances under EPCRA Section 304. 42 U.S.C. § 9601(14); Final Rule, 50 Fed. Reg. 13,456, 13,460 (Apr. 4, 1985); Mem. from Francis S. Blake to J. Winston Porter, Scope of the CERCLA Petroleum Exclusion Under Sections 101(14) and 104(a)(2), 1987 WL 123926 (July 31, 1987); EPA, Superfund Reportable Quantities, What Substances Are Covered?, *available at* www.epa.gov/oerrpage/superfund/policy/release/rq/index.htm (last visited Apr. 3, 2014).

26. Drilling Mud, Cement, and other wastes associated with the production of crude oil are excluded from the definition of "Hazardous Wastes" and are thus excluded from the reporting requirements of Section 304 of EPCRA. 40 C.F.R. § 261.4(b)(5).

27. Naturally occurring methane gas is not considered a hazardous waste and is exempted from the reporting requirements of Section 304 of EPCRA. EPA, Office of Solid Waste and Emergency Response, Directive No. 9360.0-8, *CERCLA Removal Actions at Methane Release Sites*, at 1 (Jan. 23, 1986).

28. Any use of chemical dispersants to remediate the effects of the spill was directed by the U.S. Government as part of the comprehensive response effort. *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico,* MDL 2179, 2012 WL 5960192 at *16 (E.D. La. Nov. 28, 2012); *see also* 33 U.S.C. §1321(c)(2)(A). The only dispersants applied during the response were approved by EPA as part of the National Oil and Hazardous Substances Pollution Contingency Plan Product Schedule. *See* 40 C.F.R. § 300.915(a)(7), (8).

29.     Plaintiff's case was remanded to this Court on January 9, 2013.  Plaintiff took no effective action concerning it for nearly a year.  In fact, the delay would have continued if counsel for BP had not informed CBD that it failed to file its pleadings on remand with this Court and instead only served them via LexisNexus File & Serve.  The delay in bringing EPCRA claims on remand threatens to prejudice BP because they prolong this litigation.  CBD has offered no explanation for why it delayed so long before taking action on remand.  Since the information CBD seeks is publicly available, there are no environmental advantages to requiring duplicative disclosure.

30.     The Clean Water Act reserves to the federal government control over all operations in response to a significant oil spill.  Indeed, federal law specifies that "[t]he President shall direct all Federal, State, and private actions to remove" a substantial spill.  33 U.S.C. § 1321(c)(2)(A); *see also CBD*, 704 F.3d at 425 (noting the "extraordinary powers granted to the President to oversee and direct the emergency response to the oil spill"); 59 Fed. Reg. 47,384, 47,399-400 (Sept. 15, 1994) ("When directing a response, the [F]OSC is more than managing the response.  He or she has specific legal authority to guide the activities of all parties responding to a discharge, and all actions would have to be authorized or approved by the [F]OSC.").

31.     Thus, BP's response efforts were directed by the Unified Command, and in particular the FOSC.  In fact, the Fifth Circuit concluded that "BP participated in the response activities at the direction of the federal authorities."  *CBD*, 704 F.3d at 418.

32.     EPCRA requires that "immediately" after a release occurs, "the owner or operator of [the] facility" must provide eight items of information "to the extent known at the time of the notice and so long as no delay in responding to the emergency results."  42 U.S.C. §§ 11004(b)(1), (2).  This information is: (1) the chemical name; (2) whether the chemical is extremely hazardous; (3) estimate of the quantity released; (4) time and duration of the release; (5) media into which the release occurred; (6) any known or anticipated health risks and, where necessary, advice regarding medical attention for exposed individuals; (7) proper precautions; and (8) the name and telephone number of a contact person.  *See id.* § 11004(b)(2).  Afterwards,

when "practicable," a follow-up notice is required that contains the same information as the initial notice along with information regarding "actions taken to respond to and contain the release," known or anticipated health risks and "advice regarding medical attention." *Id.* § 11004(c).

33. EPCRA data regarding the spill and cleanup are easily accessible from various websites.

34. EPCRA requires disclosure of "[t]he chemical name or identity of any substance involved in the release."  42 U.S.C. § 11004(b)(2)(A).  Here, petroleum and the dispersants Corexit® EC9500A and Corexit® EC9527A were involved in the releases that CBD's case is based on.  This information is available at the following websites, among others:

- Centers for Disease Control and Prevention, Frequently Asked Questions, http://www.restorethegulf.gov/sites/default/files/imported_pdfs/external/content/document/2931/818379/1/FAQ.pdf (Ex. 16)

- Material Safety Data Sheet, http://usresponse.bp.com/external/content/document/2911/963799/1/English_Mississippi_Canyon28june.pdf (Ex. 17)

- Table of Chemical Constituents Commonly Found in Crude Oil, http://emergency.cdc.gov/gulfoilspill2010/pdf/chemical_constituents_table.pdf (Ex. 18)

- Transcript, EPA and NOAA Press Conference Call on Dispersant Use and Approval (May 12, 2010), at 19, http://epa.gov/bpspill/dispersants/may12transcript-final.pdf (Ex. 19)

- EPA Response to BP Spill in the Gulf of Mexico: Dispersants, http://www.epa.gov/bpspill/dispersants.html (Ex. 20)

35. EPCRA requires disclosure of "[a]n indication of whether the substance is on the list referred to in section 11002(a) of this title."  42 U.S.C. § 11004(b)(2)(B).  EPA has not designated petroleum, Corexit® EC9500A or Corexit® EC9527A as an extremely hazardous substance.  *See* 40 C.F.R. Part 355, App'x A & B.  Public information, moreover, sets forth the constituent parts of petroleum that can contain hazardous substances.  This information is available at the following websites (including, in some instances, links from these websites), among others:

- Centers for Disease Control and Prevention, Frequently Asked Questions, http://www.restorethegulf.gov/sites/default/files/imported_pdfs/external/content/document/2931/818379/1/FAQ.pdf (Ex. 16)

- Centers for Disease Control and Prevention, 2010 Gulf of Mexico Oil Spill, http://emergency.cdc.gov/gulfoilspill2010/ (Ex. 21)

- U.S. Department of Health & Human Services, Information for Health Professionals, http://www.hhs.gov/gulfoilspill/healthprofessionals.html (Ex. 22)

- Table of Chemical Constituents Commonly Found in Crude Oil, http://emergency.cdc.gov/gulfoilspill2010/pdf/chemical_constituents_table.pdf (Ex. 18)

36. EPCRA requires disclosure of "[a]n estimate of the quantity of any such substance that was released into the environment." 42 U.S.C. § 11004(b)(2)(C). This information is available at the following website:

- BP, Containing the Leak, http://www.bp.com/en/global/corporate/gulf-of-mexico-restoration/deepwater-horizon-accident-and-response/containing-the-leak.html (Ex. 23)

- The Ongoing Administration-Wide Response to the Deepwater BP Oil Spill (Aug. 9, 2010), http://www.restorethegulf.gov/release/2010/08/09/ongoing-administration-wide-response-deepwater-bp-oil-spill (Ex. 24)

37. EPCRA requires disclosure of "[t]he time and duration of the release." 42 U.S.C. § 11004(b)(2)(D). This information is available at the following websites, among others:

- Deepwater Horizon, Accident Investigation Report 21-29, http://www.bp.com/liveassets/bp_internet/globalbp/globalbp_uk_english/incident_response/STAGING/local_assets/downloads_pdfs/Deepwater_Horizon_Accident_Investigation_Report.pdf (Ex. 25)

- National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling 129-170, http://www.gpo.gov/fdsys/pkg/GPO-OILCOMMISSION/pdf/GPO-OILCOMMISSION.pdf (Ex. 13)

- On Scene Coordinator Report: Deepwater Horizon Oil Spill 1-2, http://www.uscg.mil/foia/docs/dwh/fosc_dwh_report.pdf (Ex. 3)

- EPA, The Federal Government Response: Dispersant Use in the BP Oil Spill, http://www.restorethegulf.gov/sites/default/files/imported_pdfs/external/content/document/2931/835583/1/Fact%20Sheet%20Dispersants%20july%2029%202010-1.pdf (Ex. 26)

38. EPCRA requires disclosure of "[t]he medium or media into which the release occurred." 42 U.S.C. § 11004(b)(2)(E). This information is available at the following websites, among others:

9

- Deepwater Horizon, Accident Investigation Report 21-29, http://www.bp.com/liveassets/bp_internet/globalbp/globalbp_uk_english/incident_response/STAGING/local_assets/downloads_pdfs/Deepwater_Horizon_Accident_Investigation_Report.pdf (Ex. 25)

- National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling 129-170, http://www.gpo.gov/fdsys/pkg/GPO-OILCOMMISSION/pdf/GPO-OILCOMMISSION.pdf (Ex. 13)

39.     EPCRA requires disclosure of "[a]ny known or anticipated acute or chronic health risks associated with the emergency and, where appropriate, advice regarding medical attention necessary for exposed individuals."  42 U.S.C. § 11004(b)(2)(F).  This information is available at the following websites (including, in some instances, links from these websites), among others:

- Health & Safety, http://www.restorethegulf.gov/health-safety (Ex. 27)

- Health Monitoring, http://usresponse.bp.com/go/doc/2911/963787/Health-monitoring (Ex. 28)

- Material Safety Data Sheet, http://usresponse.bp.com/external/content/document/2911/963799/1/English_Mississippi_Canyon28june.pdf (Ex. 17)

- U.S. Department of Health & Human Services, Information for Health Professionals, http://www.hhs.gov/gulfoilspill/healthprofessionals.html (Ex. 22)

- U.S. Department of Health & Human Services, Crude Oil Spills and Health, http://disasterinfo.nlm.nih.gov/dimrc/oilspills.html (Ex. 29)

- U.S. Department of Labor, OSHA's Efforts to Protect Workers, https://www.osha.gov/oilspills/index.html (Ex. 30)

- Deepwater Horizon Incident Response Recordable Injury & Illness Data, http://usresponse.bp.com/external/content/document/2911/1022279/1/2.18.2011%20Deepwater%20Horizon%20Incident%20Response%20Recordable%20Injury%20&%20Illness%20Data.pdf (Ex. 31)

- Louisiana Department of Health and Hospitals, Oil Spill Health Effect Summary, MS Canyon 252 Oil Spill Surveillance Report, http://www.dhh.louisiana.gov/assets/docs/SurveillanceReports/OilSpillHealth/_OilSpillSurveillance2010_17.pdf (Ex. 32)

- U.S. Food and Drug Administration, Deepwater Horizon Oil Spill: Questions and Answers, http://www.fda.gov/Food/RecallsOutbreaksEmergencies/Emergencies/ucm221563.htm (Ex. 33)

- Centers for Disease Control and Prevention,, Health Surveillance, http://emergency.cdc.gov/gulfoilspill2010/2010gulfoilspill/health_surveillance.asp (Ex. 34)

40.     EPCRA requires disclosure of "[p]roper precautions to take as a result of the release, including evacuation (unless such information is readily available to the community

10

emergency coordinator pursuant to the emergency plan)." 42 U.S.C. § 11004(b)(2)(G). This information is available at the following websites, among others:

- Centers for Disease Control and Prevention, What to Expect from the Oil Spill and How to Protect Your Health, http://emergency.cdc.gov/gulfoilspill2010/what_to_expect.asp (Ex. 35)

- Centers for Disease Control and Prevention, What's Coming Ashore from the Oil Spill, http://emergency.cdc.gov/gulfoilspill2010/coming_ashore.asp (Ex. 36)

- U.S. Department of Labor, OSHA's Efforts to Protect Workers, https://www.osha.gov/oilspills/index.html (Ex. 30)

41. EPCRA requires disclosure of "[t]he name and telephone number of the person or persons to be contacted for further information." 42 U.S.C. § 11004(b)(2)(H). BP has established a hotline for this very purpose. This information is available at the following website:

- Contacts, http://www.bp.com/en/global/corporate/gulf-of-mexico-restoration/contacts.html (Ex. 37)

42. EPCRA requires disclosure of information regarding "actions taken to respond to and contain the release." 42 U.S.C. § 11004(c)(1). This information is available at the following websites (including, in some instances, links from these websites), among others:

- Containing the Leak, http://www.bp.com/en/global/corporate/gulf-of-mexico-restoration/deepwater-horizon-accident-and-response/containing-the-leak.html (Ex. 23)

- Environmental Protection Agency, EPA Response to BP Spill in the Gulf of Mexico, http://www.epa.gov/bpspill/ (Ex. 38)

- Environmental Protection Agency, Questions and Answers about the BP Oil Spill in the Gulf Coast, http://www.epa.gov/bpspill/qanda.html (Ex. 39)

- Completing the Response, http://www.bp.com/en/global/corporate/gulf-of-mexico-restoration/deepwater-horizon-accident-and-response/completing-the-response.html (Ex. 40)

- On Scene Coordinator Report: Deepwater Horizon Oil Spill 21-78, http://www.uscg.mil/foia/docs/dwh/fosc_dwh_report.pdf  (Ex. 3)

43. EPCRA requires disclosure of information regarding "any known or anticipated acute or chronic health risks associated with the release." 42 U.S.C. § 11004(c)(2). This information is available at the following websites, among others:

11

- Centers for Disease Control and Prevention, Frequently Asked Questions, http://www.restorethegulf.gov/sites/default/files/imported_pdfs/external/content/document/2931/818379/1/FAQ.pdf (Ex. 16)

- Centers for Disease Control and Prevention, 2010 Gulf of Mexico Oil Spill, http://emergency.cdc.gov/gulfoilspill2010/ (Ex. 21)

- Health Monitoring, http://usresponse.bp.com/go/doc/2911/963787/Health-monitoring (Ex. 28)

- Deepwater Horizon Incident Response Recordable Injury & Illness Data, http://usresponse.bp.com/external/content/document/2911/1022279/1/2.18.2011%20Deepwater%20Horizon%20Incident%20Response%20Recordable%20Injury%20&%20Illness%20Data.pdf (Ex. 31)

- Health and Safety in the Response Effort, http://www.bp.com/sectiongenericarticle800.do?categoryId=9048926&contentId=7082616 (Ex. 41)

44. EPCRA requires disclosure of information regarding "where appropriate, advice regarding medical attention necessary for exposed individuals." 42 U.S.C. § 11004(c)(3). This information is available at the following websites (including, in some instances, links from these websites), among others:

- Centers for Disease Control and Prevention, What to Expect from the Oil Spill and How to Protect Your Health, http://emergency.cdc.gov/gulfoilspill2010/what_to_expect.asp (Ex. 35)

- Centers for Disease Control and Prevention, 2010 Gulf of Mexico Oil Spill, http://emergency.cdc.gov/gulfoilspill2010/ (Ex. 21)

- Material Safety Data Sheet, http://usresponse.bp.com/external/content/document/2911/963799/1/English_Mississippi_Canyon28june.pdf (Ex. 17)

- U.S. Department of Health & Human Services, Crude Oil Spills and Health, http://disasterinfo.nlm.nih.gov/dimrc/oilspills.html (Ex. 29)

45. EPCRA requires notice be provided to local emergency planning authorities. 42 U.S.C. § 11004. CBD alleges that Defendants violated EPCRA by "failing to adequately report, such releases to local and State emergency planning committees." Amended Compl. ¶ 93. The *Deepwater Horizon* spill occurred "nearly fifty miles offshore" in a "federal enclave." *In re: Deepwater Horizon*, --- F.3d ----, 2014 WL 700065, at *5, *9 (5th Cir. Feb. 24, 2014). In the unpopulated federal waters above the Outer Continental Shelf, there is no local or State emergency planning committee.

Date: April 15, 2014

Joel M. Gross
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, DC 20004
Telephone: (202) 942-5705
Facsimile: (202) 942-5999

Kerri L. Stelcen
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 715-1047
Facsimile: (212) 715-1399

Respectfully Submitted,

/s/ Don K. Haycraft
Don K. Haycraft
Devin C. Reid
LISKOW & LEWIS LLP
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 556-4128
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Jeffrey Bossert Clark
Joseph A. Eisert
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

**ATTORNEYS-IN-CHARGE FOR DEFENDANTS BP AMERICA INC. AND BP EXPLORATION & PRODUCTION INC.**

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 15th day of April, 2014.

                                                /s/ Don K. Haycraft
                                                Don K. Haycraft