# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf Of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| This document applies to: *2:10-cv-04536* | JUDGE BARBIER |
| | MAGISTRATE SHUSHAN |

## TRANSOCEAN'S RESPONSE TO SEPARATE STATEMENT OF PLAINTIFF UNITED STATES IN SUPPORT OF SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 4820)

Pursuant to Rule 56 of the Federal *Rules of Civil Procedure* and Rule 56.2 of the Local Rules of this Court, Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC and Triton Asset Leasing GmbH (collectively "Transocean Defendants") hereby respond to the Separate Statement submitted by Plaintiff United States in support of its Second Motion For Partial Summary Judgment (Dkt. 4820).

| United States Material Fact | Transocean Response |
|---|---|
| 1. BP acquired Lease OCS-G 32306 for Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10 ("Lease"), effective June 1, 2008.<br><br>• Answer of BP at ¶¶ 24, 25, United States v. BP Exploration & Production, Inc., et al., 2:10-cv-04536 (E.D. La.) ("BP Answer") [Rec. Doc. 1858].<br><br>• Answer of APC at ¶¶ 24, 25, United States v. BP Exploration and Production, Inc., et al., 2:10-cv-04536 (E.D. La.) ("APC Answer") [Rec. Doc. 1860].<br><br>• Statement of Undisputed Material Facts ("First | 1. Undisputed.<br><br>Anadarko's and BP's Answers to the United States Complaint are hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1. |

| | |
|---|---|
| SMF") in Support of United States' Motion for Partial Summary Judgment ("First MSJ") at ¶ 1, United States v. BP Exploration and Production, Inc., et al., 2:10-cv-04536 (E.D. La.) [Rec. Doc. 2587] (citing Ex. 1 to First MSJ, Declaration of Ann H. Glazner ¶¶ 1, 3; Ex. 2 to First MSJ, Oil and Gas Lease of Submerged Lands under OCSLA, OCS-G 32306, Block 252, Mississippi Canyon). | |
| 2.  An exploratory well was constructed on Block 252, Mississippi Canyon, the "Macondo Well."<br><br>• Answer of Transocean at ¶ 41, United States v. BP Exploration & Production, Inc., et al., 2:10-cv-04536 (E.D. La.) ("Transocean Answer") [Rec. Doc. 1420] (admitting that "on or about October 2009 drilling began in Block 252 of Mississippi Canyon").<br><br>• APC Answer ¶41 (admitting that "drilling operations for an exploratory well within Block 252, Mississippi Canyon, Official Protraction Diagram NH 16-10, pursuant to Lease No. OCS-G 32306 began on or about October of 2009").<br><br>• Supplemental Objections and Responses of Defendant Anadarko Petroleum Corporation to Revisions to the United States' First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions, Sept. 20, 2011 ("APC Discovery Responses"), APC Response to U.S. Request for Admission ("RFA") No. 1 (admitting that "an exploratory well was constructed on the Macondo Prospect, the 'Macondo Well'") (Ex. 34 hereto).<br><br>• First SMF ¶ 15 (citing Ex. 3 to First MSJ, Report to the President, January 2011, National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling at 90-104 ("Commission Report") available at http://www.oilspillcommission.gov/final-report; Ex. 10 to First MSJ, BOEMRE Declaration of David Troquet at ¶ 3). | 2.  Undisputed.<br><br>Anadarko's Answer to the United States Complaint is hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1.<br><br>Anadarko's responses to the United States Requests for Admission are hearsay and not admissible as to the Transocean Defendants.  *See* Transocean's Evidentiary Objections §2.<br><br>The Presidential Commission Report [Ex. 9 (not Ex. 3) to First SMF] is inadmissible hearsay.  *See* Transocean's Evidentiary Objections §4. |

| | |
|---|---|
| 3.  The Macondo Well is located on the Outer Continental Shelf approximately 50 miles from the Mississippi River delta.<br><br>• APC Discovery Responses, RFA No. 2 (Ex. 34 hereto).<br><br>• BP Answer ¶ 1.<br><br>• First SMF ¶ 15 (citing government reports and websites, including Ex. 3 to First MSJ, Commission Report, at viii, 197-98; Ex. 14 to First MSJ, NASA's Satellite Image of the Gulf of Mexico on April 25, 2010). | 3.  Undisputed.<br><br>BP's Answer to the United States Complaint is hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1.<br><br>Anadarko's responses to the United States Requests for Admission are hearsay and not admissible as to the Transocean Defendants.  *See* Transocean's Evidentiary Objections §2.<br><br>The Presidential Commission Report [Ex. 9 (not Ex. 3) to First SMF] is inadmissible hearsay.  *See* Transocean's Evidentiary Objections §4. |
| 4.  From at least October 1, 2009, the MODU *Transocean Marianas* was owned and/or operated by the Transocean Defendants.  In or about October 2009, the *Transocean Marianas* began to be used for drilling of the Macondo Well.<br><br>• BP Answer ¶ 43.<br><br>• Transocean Answer ¶ 43 [Rec. Doc. 1420] (admitting that "on October 1, 2009, one or more of the Transocean Defendants were the managing owners, owners pro hac vice, and/or operators of the MODU Transocean Marianas, and that the Transocean Marianas engaged in drilling activities at the BP well").<br><br>• APC Answer ¶ 43 (admitting that "that Transocean Marianas, a mobile offshore drilling unit, was used for the drilling operations within Block 252, Mississippi Canyon, Official Protraction Diagram NH 16-10, pursuant to Lease No. OCS-G 32306 starting on or about October of 2009 and ending on or about November 2009"). | 4.  Disputed that the *Transocean Marianas* was owned or operated by any of the Transocean Defendants other than Transocean Holdings LLC.  The Transocean Defendants' Answer to the United States Complaint cited supports only that "**one or more** of the Transocean Defendants were the managing owners, owners pro hac vice, and/or operators of the MODU Transocean Marianas" (emphasis added.)<br><br>Undisputed that (1) Triton Asset Leasing GmbH was the legal owner of the *Transocean Marianas* and bareboat chartered the vessel to Transocean Holdings LLC; (2) Transocean Holdings LLC bareboat chartered the Transocean Marianas from Triton Asset Leasing GmbH and had a drilling contract for the vessel with BP pursuant to which beginning in or about October 2009 the vessel was used in drilling operations at the Macondo Well; and (3) by virtue of the bareboat charter, Transocean Holdings LLC was both the owner *pro hac vice* and the operator of the |

| | |
|---|---|
| | *Transocean Marianas.*<br><br>BP's and Anadarko's Answers to the United States Complaint are hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1. |
| 5.  Beginning on or about February 2010, the MODU *Deepwater Horizon* replaced the *Transocean Marinas* for the purpose of continuing the drilling of the Macondo Well.  Drilling of the Macondo Well using the *Deepwater Horizon* continued in February 2010 and through March and a portion of April 2010.<br><br>• BP Answer ¶ 44.<br><br>• APC Answer ¶ 44.<br><br>• Transocean Answer ¶ 44 (admitting that "the Deepwater Horizon engaged in drilling activities at the BP well after the *Transocean Marianas* ceased drilling activities at the BP well and that the Deepwater Horizon was on location at the BP well in March and a portion of April 2010"). | 5.  Undisputed.<br><br>Anadarko's and BP's Answers to the United States Complaint are hearsay and not admissible evidence as to the Transocean Defendants.  *See* Transocean's Evidentiary Objections §1. |
| 6.  The *Deepwater Horizon* is a vessel.<br><br>• BP Answer ¶ 11. *See also* BP Answer ¶ 12 (admitting that the BOP, riser and associated equipment all constitute "appurtenances").<br><br>• Transocean Answer ¶ 11, 85.<br><br>• Transocean's Response to BP Parties' First Set of Requests for Admission ("Transocean Responses to BP RFAs"), RFA No. 1 (Ex. 36 hereto).<br><br>• Transocean Responses to BP's RFAs, RFA No. 3 (admitting that the blow-out preventer ("BOP") are appurtenances of the *Deepwater Horizon*) (Ex. 36 hereto). | 6.  Undisputed.<br><br>BP's Answer to the United States Complaint is hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1. |
| 7.  The *Deepwater Horizon* is a mobile offshore | 7.  Undisputed. |

| | |
|---|---|
| drilling unit.<br><br>• Transocean Answer ¶ 1.<br><br>• Transocean Complaint and Petition for Exoneration from or Limitations of Liability, No. 2:10-cv-00771, ¶ 6 and *passim* (originally filed in S.D. Tx. May 13, 2010) (Ex. 38 hereto).<br><br>• BP Answer ¶ 1. | BP's Answer to the United States Complaint is hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1. |
| 8.  Casings, tubulars, the well head and/or other components of the Macondo Well were installed in the wellbore prior to April 20, 2010.<br><br>• BP Answer ¶ 45 (admitting that "As of April 20, 2010, various sub-sea equipment and components of the Macondo Well had been installed on or below the seafloor of the Outer Continental Shelf, including, but not limited to, the well casing and the well head").<br><br>• Transocean Answer ¶ 45 (admitting that "as of April 20, 2010, the BP well contained certain well casing").<br><br>• APC Discovery Responses, RFA No. 3 (admitting that "strings of casing, cement, production casing, casing hanger, casing accessories, and the well head were installed in the Macondo Well prior to April 20, 2010") (Ex. 34 hereto).<br><br>• First SMF ¶¶ 10, 11 (citing Ex. 3 to First MSJ, Commission Report at 90-94; Ex. 10 to First MSJ, BOEMRE Declaration of David Troquet at ¶ 3). | 8.  Undisputed.<br><br>BP's Answer to the United States Complaint is hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1.<br><br>Anadarko's responses to the United States Requests for Admission are hearsay and not admissible as to the Transocean Defendants.  *See* Transocean's Evidentiary Objections §2.<br><br>The Presidential Commission Report (Ex. 9 [not Ex. 3] to First SMF) is inadmissible hearsay.  *See* Transocean's Evidentiary Objections §4. |
| 9.  The Macondo Well is an "offshore facility" for purposes of the Clean Water Act, 33 U.S.C. § 1321(b), and the Oil Pollution Act, 33 U.S.C. § 2701 et al.<br><br>• BP Answer ¶ 42 (admitting that the Macondo Well is an "offshore facility" under the Clean Water Act). | 9.  Undisputed.<br><br>BP's Answer to the United States Complaint is hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1. |

Case 2:10-md-02179-CJB-DPC   Document 12636-4   Filed 04/15/14   Page 7 of 34
Case 2:10-md-02179-CJB-SS   Document 12036-1   Filed 01/03/14   Page 6 of 33

| | |
|---|---|
| 10.  The Macondo Well cement job was critical for maintaining well control.<br><br>• Deposition of Jonathan Sprague ("Sprague Dep."), Mar. 21, 2011, at 83:9-84:9. (Ex. 33 hereto). | 10.  Undisputed. |
| 11.  The Macondo Well's cement job failed to prevent hydrocarbons from migrating into the wellbore.<br><br>• Sprague Dep., at 140:15-141:4 (Ex. 33 hereto).<br><br>• BP's Memorandum in Support of its Motion for Spoliation Sanctions, Dec. 5, 2011 [Rec. Doc. 4799] at 4 ("There is no serious dispute that Halliburton's cement job failed to isolate hydrocarbons in the Macondo Well."). | 11.  Undisputed.<br><br>BP's Memorandum in Support of its Motion for Spoliation Sanctions is hearsay and not admissible evidence as to the Transocean Defendants.  *See* Transocean's Evidentiary Objections §3. |
| 12.  On April 20, 2011, there was a blowout of the Macondo Well, and fires and explosions on the drilling rig Deepwater Horizon.<br><br>• APC Answer ¶ 13.<br><br>• APC Response to US RFA No. 4 (Ex. 34 hereto).<br><br>• BP Answer ¶ 1 (admitting that "this action arises from the loss of control of the Macondo well on April 20, 2010, which resulted in one or more explosions or fires on the Mobile Offshore Drilling Unit ('MODU') *Deepwater Horizon*").<br><br>• Transocean Answer ¶¶ 1, 47 (admitting that "on April 20, 2010 an explosion and fire occurred aboard the Mobile Offshore Drilling Unit ('MODU') *Deepwater Horizon* while located on the Macondo Prospect in Mississippi Canyon Block 252 ('BP well')"… and that on that date "there was a blowout of the BP well, including oil and gas").<br><br>• First SMF ¶ 12 (citing Ex. 9 to First MSJ, Commission Report, at vi-viii). | 12.  Undisputed.<br><br>Anadarko's and BP's Answers to the United States Complaint are hearsay and not admissible evidence as to the Transocean Defendants.  *See* Transocean's Evidentiary Objections §1.<br><br>Anadarko's responses to the United States Requests for Admission are hearsay and not admissible as to the Transocean Defendants.  *See* Transocean's Evidentiary Objections §2.<br><br>The Presidential Commission Report is inadmissible hearsay.  *See* Transocean's Evidentiary Objections §4. |

| 13. Eleven men died as a result of the blowout. <br><br> • APC Answer ¶ 58. <br><br> • Transocean Answer ¶ 58. <br><br> • BP Answer ¶ 58. | 13. Undisputed. <br><br> Anadarko's and BP's Answers to the United States Complaint are hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1. |
| --- | --- |
| 14. Following the blowout on April 20, 2010, there was a discharge of oil into the Gulf of Mexico. <br><br> • BP Answer ¶ 60 (admitting that "a still undetermined amount of oil was discharged into and upon waters of the Gulf of Mexico"). <br><br> • Transocean Answer ¶¶ 60, 61 (admitting that oil has leaked from the "BP well" into the Gulf of Mexico). <br><br> • APC Discovery Responses, RFA No. 6 (admitting that oil was discharged into the Gulf of Mexico) (Ex. 34 hereto). <br><br> • First SMF ¶ 13 (citing reports and government websites, including Ex. 9 to First MSJ, Commission Report, at 131-136, 139-71; NASA Satellites' View of Gulf Oil Spill Over Time, *available at* http://www.nasa.gov/topics/earth/features/oilspillvideo.html). | 14. Undisputed that following the blowout on April 20, 2010, there was a discharge of oil below the surface of the water from the Macondo Well into the Gulf of Mexico. <br><br> Disputed that there was a discharge of oil into the Gulf of Mexico on or above the surface of the water. The United States has not submitted evidence (let alone admissible evidence) to show that there was a discharge of oil on or above the surface of the water. Even if there were any evidence of oil from the Macondo Well that reached the *Deepwater Horizon*, it would have combusted before it reached the surface of the water. *See* United States Complaint (Doc. #1 in Case No. 10-cv-4536) ¶57 ("As a result of the April 20, 2010 uncontrolled well event and uncontrolled blowout, multiple explosions and fires occurred aboard the *Deepwater Horizon*."); Winslow Deposition, April 20, 2011, at 10:25-11:21, 146:22-147:9, 167:20-168:6, 172:18-173:3, 173:8-20, 176:1-12, 183:11-25, 203:23-204:11, 205:10-18, 207:9-14, 221:2-12, 241:16-18, 259:13-22, 260:1-22 (Exhibit 1 attached) (explosions and huge fire on *Deepwater Horizon* continuing until the vessel sank; water was not on fire until after the rig sank; no evidence of discharge on or above surface of the water). <br><br> BP's Answer to the United States Complaint is hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1. |

| | Anadarko's responses to the United States Requests for Admission are hearsay and not admissible as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §2.<br><br>The Presidential Commission Report is inadmissible hearsay. *See* Transocean's Evidentiary Objections §4. |
|---|---|
| 15.  Oil from the MC 252 reservoir flowed through the Macondo Well and was discharged to the Gulf of Mexico from the Deepwater Horizon and then from the broken riser pipe and/or BOP after the *Deepwater Horizon's* sinking.<br><br>•  APC Supplemental Response to U.S. RFA 6 ("Oil from the MC 252 reservoir flowed through the Macondo Well and was discharged to the Gulf of Mexico from the Deepwater Horizon and then from the broken riser pipe and/or BOP after the Deepwater Horizon's sinking.") (Ex. 34 hereto).<br><br>•  BP Answer ¶ 61 (admitting that "on and for a period of time after April 20, 2010, oil flowed from the Macondo well, some of which flowed into and upon waters of the Gulf of Mexico and some of which reached the shoreline of the United States .. . [and] at certain times on or after April 20, 2010, oil flowed, *inter alia*, through the BOP stack, the marine riser, and/or other equipment."). | 15.  Disputed.  No admissible evidence is submitted as to the Transocean Defendants to support this statement.  Anadarko's responses to the United States Requests for Admission are hearsay and not admissible as to the Transocean Defendants.  *See* Transocean's Evidentiary Objections §2. BP's Answer to the United States Complaint is hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1<br><br>Disputed that oil was discharged from the *Deepwater Horizon* into the Gulf of Mexico.  The United States has not submitted any evidence (let alone admissible evidence as to the Transocean Defendants) to support that oil was discharged into the Gulf of Mexico from the *Deepwater Horizon*.  Even if there were any evidence of oil from the Macondo Well that reached the *Deepwater Horizon*, it would have combusted before it reached the surface of the water.  *See* United States Complaint (Doc. #1 in Case No. 10-cv-4536) ¶57 ("As a result of the April 20, 2010 uncontrolled well event and uncontrolled blowout, multiple explosions and fires occurred aboard the *Deepwater Horizon*."); Winslow Deposition, April 20, 2011, at 10:25-11:21, 146:22-147:9, 167:20-168:6, 172:18-173:3, 173:8-20, 176:1-12, 183:11-25, 203:23-204:11, 205:10-18, 207:9-14, 221:2-12, 241:16-18, |

| | |
|---|---|
| | 259:13-22, 260:1-22 (Exhibit 1 attached) (explosions and huge fire on *Deepwater Horizon* continuing until the vessel sank; water was not on fire until after the rig sank; no evidence of discharge on or above surface of the water).<br><br>In particular, disputed that oil was discharged into the Gulf of Mexico <u>from</u> the BOP or riser or <u>from</u> the vessel within the meaning of the civil penalty provisions of the Clean Water Act ("CWA"), 33 U.S.C. §1321(b)(7)(A).  Even if BP's Answer were admissible against the Transocean Defendants, the language cited by the United States does not support that oil was discharged into the Gulf of Mexico "from" the riser or BOP.  *See* BP Answer ¶61 ("oil flowed, *inter alia*, **through** the BOP stack, the marine riser, and/or other equipment." (emphasis added)). |
| 16.  The discharge also emanated from the *Deepwater Horizon* vessel, including from its appurtenances the BOP and riser, into the Gulf of Mexico.<br><br>• BP Answer ¶ 61 (admitting that "at certain times on or after April 20, 2010, oil flowed, *inter alia*, through the BOP stack, the marine riser, and/or other equipment").<br><br>• Macondo Well Incident: Transocean Investigation Report, Vol. 1 (June 2011), Dep. Ex. 4248 (Ex 25 hereto), Section 3.4.3, at 153-57.<br><br>• Deposition of William Ambrose, July 18, 2011, at 26-28 (Ex 27 hereto) (authenticating Dep. Ex. 4248 as Transocean Investigation Report).<br><br>• Transocean: BOP Video (Transocean video with animation of *Deepwater Horizon* BOP showing passage of oil and hydrocarbons through the BOP), available at http://www.deepwater.com/fw/main/BOP-Video-1079.html. | 16.  Undisputed that oil was discharged from the Macondo Well through the BOP and riser into the Gulf of Mexico below the surface of the water.<br><br>Disputed that oil was discharged from the *Deepwater Horizon* into the Gulf of Mexico.  The United States has not submitted any evidence (let alone admissible evidence as to the Transocean Defendants) to support that oil was discharged from the *Deepwater Horizon*. Even if there were any evidence of oil from the Macondo Well that reached the *Deepwater Horizon*, it would have combusted before it reached the surface of the water.  *See* United States Complaint (Doc. #1 in Case No. 10-cv-4536) ¶57 ("As a result of the April 20, 2010 uncontrolled well event and uncontrolled blowout, multiple explosions and fires occurred aboard the *Deepwater Horizon*."); Winslow Deposition, April 20, 2011, at 10:25-11:21, 146:22-147:9, 167:20-168:6, 172:18-173:3, |

| | 173:8-20, 176:1-12, 183:11-25, 203:23-204:11, 205:10-18, 207:9-14, 221:2-12, 241:16-18, 259:13-22, 260:1-22 (Exhibit 1 attached) (explosions and huge fire on *Deepwater Horizon* continuing until the vessel sank; water was not on fire until after the rig sank; no evidence of discharge on or above surface of the water). |
| | |
| | Disputed that oil was discharged into the Gulf of Mexico <u>from</u> the BOP or riser or <u>from</u> the vessel within the meaning of the civil penalty provisions of the CWA, 33 U.S.C. §1321(b)(7)(A).  The Transocean Investigation Report (Ex. 25) and the Transocean BOP Video at most show only that oil flowed from the Macondo Well <u>through</u> the BOP and riser into the Gulf of Mexico below the surface of the water. BP's Answer to the United States' Complaint is hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1.  Even if BP's Answer were admissible against the Transocean Defendants, the language cited by the United States does not support that oil was discharged into the Gulf of Mexico "from" the riser or BOP. *See* BP Answer ¶61 ("oil flowed, *inter alia*, **through** the BOP stack, the marine riser, and/or other equipment." (emphasis added)). |
| 17.  The oil caused a film or sheen or discoloration on the surface of the water.<br><br>• APC Discovery Responses, RFA No. 7 (admitting "there was a film, sheen, or discoloration on the surface of some portions of the Gulf of Mexico") (Ex. 34 hereto).<br><br>• First SMF ¶ 14 (citing to reports and government websites, including links to photographs documenting extensive oil slicks). | 17.  Undisputed that oil released from the Macondo Well below the surface of the water caused a film, sheen or discoloration on the surface of the water.<br><br>Anadarko's responses to the United States Requests for Admission are hearsay and not admissible as to the Transocean Defendants.  *See* Transocean's Evidentiary Objections §2.  The Presidential Commission Report cited in First SMF ¶14 is inadmissible hearsay.  *See* Transocean's |

| | Evidentiary Objections §4. |
|---|---|
| | Disputed that a "film", "sheen" or "discoloration" on the surface of the water was caused by oil discharged from the *Deepwater Horizon*. The United States has not submitted any evidence to support that oil was discharged from the *Deepwater Horizon*. Even if there were any evidence of oil from the Macondo Well that reached the *Deepwater Horizon*, it would have combusted before it reached the surface of the water. *See* United States Complaint (Doc. #1 in Case No. 10-cv-4536) ¶57 ("As a result of the April 20, 2010 uncontrolled well event and uncontrolled blowout, multiple explosions and fires occurred aboard the *Deepwater Horizon*."); Winslow Deposition, April 20, 2011, at 10:25-11:21, 146:22-147:9, 167:20-168:6, 172:18-173:3, 173:8-20, 176:1-12, 183:11-25, 203:23-204:11, 205:10-18, 207:9-14, 221:2-12, 241:16-18, 259:13-22, 260:1-22 (Exhibit 1 attached) (explosions and huge fire on *Deepwater Horizon* continuing until the vessel sank; water was not on fire until after the rig sank; no evidence of discharge on or above surface of the water). |
| | Disputed that a "film", "sheen" or "discoloration" on the surface of the water was caused by oil discharged from the BOP or riser or from the vessel within the meaning of the civil penalty provisions of the CWA, 33 U.S.C. §1321(b)(7)(A). The United State's citation to paragraph 14 of its Statement of Undisputed Material Facts in support of its first Motion for Partial Summary Judgment supports only that there was a film, sheen or discoloration on the surface of the water. It does not identify or address the source of the oil causing the film, sheen or discoloration. |
| 18. The discharge of oil was in such quantities as | 18. Undisputed that the discharge of oil |

| | |
|---|---|
| may be harmful. <br><br> • BP Answer ¶ 64 (admitting that "Deepwater Horizon Spill was a discharge of oil 'in such quantities as may be harmful,' within the meaning of CWA, 33 U.S.C. § 1321(b)(3)"). | from the Macondo Well was in such quantities as may be harmful. <br><br> BP's Answer to the United States Complaint is inadmissible hearsay as to the Transocean Defendants.  *See* Transocean's Evidentiary Objections §1. <br><br> Disputed that there was any discharge of oil from the *Deepwater Horizon* in a quantity as may be harmful or in any quantity.  The United States has not submitted any evidence (let alone admissible evidence as to the Transocean Defendants) to support that oil was discharged from the *Deepwater Horizon*.  Even if there were any evidence of oil from the Macondo Well that reached the *Deepwater Horizon*, it would have combusted before it reached the surface of the water.  *See* United States Complaint (Doc. #1 in Case No. 10-cv-4536) ¶57 ("As a result of the April 20, 2010 uncontrolled well event and uncontrolled blowout, multiple explosions and fires occurred aboard the *Deepwater Horizon*."); Winslow Deposition, April 20, 2011, at 10:25-11:21, 146:22-147:9, 167:20-168:6, 172:18-173:3, 173:8-20, 176:1-12, 183:11-25, 203:23-204:11, 205:10-18, 207:9-14, 221:2-12, 241:16-18, 259:13-22, 260:1-22 (Exhibit 1 attached) (explosions and huge fire on *Deepwater Horizon* continuing until the vessel sank; water was not on fire until after the rig sank; no evidence of discharge on or above surface of the water). <br><br> Disputed that there was any discharge of oil from the BOP or riser or from the vessel within the meaning of the civil penalty provisions of the CWA, 33 U.S.C. §1321(b)(7)(A), in a quantity as may be harmful or in any quantity. |
| 19.  Some of the oil spread to within 200 nautical miles of the United States' coastline. | 19.  Undisputed that oil from the Macondo Well spread to within 200 nautical miles of |

| | |
|---|---|
| • APC Discovery Responses, RFA No. 5 ("Responding Party [APC] further admits that, in some areas, oil migrated to within 200 nautical miles of the United States' coastline.") (Ex. 34 hereto).<br><br>• BP Answer ¶ 63 (admitting that "some of the oil [from the Macondo Well] reached the shoreline of the United States.").<br><br>• First SMF ¶ 15 (citing to government reports and websites, including links to photographs documenting extensive oil slicks). | the United States coastline.<br><br>Anadarko's responses to the United States Requests for Admission and BP's Answer to the United States Complaint are hearsay and not admissible as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §§ 1. 2. The Presidential Commission Report cited in First SMF ¶15 is inadmissible hearsay. *See* Transocean's Evidentiary Objections §3.<br><br>Disputed that there was any oil discharged from the *Deepwater Horizon,* let alone oil that spread to within 200 nautical miles of the United States coastline. The United States' citation to paragraph 15 of its Statement of Undisputed Material Facts in support of its first Motion for Partial Summary Judgment provides no evidence to show that any oil discharged from the *Deepwater Horizon* spread to within 200 miles of the United States' coastline. The United States has not submitted any evidence (let alone admissible evidence as to the Transocean Defendants) to support that oil was discharged from the *Deepwater Horizon.* Even if there were any evidence of oil from the Macondo Well that reached the *Deepwater Horizon*, it would have combusted before it reached the surface of the water. *See* United States Complaint (Doc. #1 in Case No. 10-cv-4536) ¶57 ("As a result of the April 20, 2010 uncontrolled well event and uncontrolled blowout, multiple explosions and fires occurred aboard the *Deepwater Horizon*."); Winslow Deposition, April 20, 2011, at 10:25-11:21, 146:22-147:9, 167:20-168:6, 172:18-173:3, 173:8-20, 176:1-12, 183:11-25, 203:23-204:11, 205:10-18, 207:9-14, 221:2-12, 241:16-18, 259:13-22, 260:1-22 (Exhibit 1 attached) (explosions and huge fire on *Deepwater Horizon* continuing until the vessel sank; water was not on fire until after the rig sank; no evidence of discharge |

| | on or above surface of the water). |
|---|---|
| | Disputed that there was any discharge of oil <u>from</u> the BOP or riser or <u>from</u> the vessel within the meaning of the civil penalty provisions of the CWA, 33 U.S.C. §1321(b)(7)(A). |
| | Even if the language from BP's Answer cited by the United States were admissible as to the Transocean Defendants, as quoted by the United States it would support only that "some of the oil [**from the Macondo Well**] reached the shoreline of the United States." (emphasis added.) |
| 20. Some of the oil spread to within 3 miles of the coastline of the United States and onto adjoining shorelines.<br><br>• APC Discovery Responses, No. 8 (admitting that, in some areas, oil migrated to within 3 miles of the coastline of the United States) (Ex. 34 hereto).<br><br>• BP Answer ¶ 61, 63 (admitting that some of the oil from the Macondo Well reached the shoreline of the United States).<br><br>• First SMF ¶15 (citing to government records and websites, including links to photographs documenting extensive oil slicks). | 20. Undisputed that oil from the Macondo Well spread to within 3 miles of the United States coastline and onto adjoining shorelines.<br><br>Anadarko's responses to the United States Requests for Admission and BP's Answer to the United States Complaint are hearsay and not admissible as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §§ 1, 2. The Presidential Commission Report cited in First SMF ¶15 is inadmissible hearsay. *See* Transocean's Evidentiary Objections §4.<br><br>Disputed that there was any oil discharged from the *Deepwater Horizon,* let alone oil that spread to within 3 miles of the coastline of the United States and onto adjoining shorelines. The United State's citation to paragraph 15 of its Statement of Undisputed Material Facts in support of its first Motion for Partial Summary Judgment provides no evidence to show that any oil discharged from the *Deepwater Horizon* spread to within 3 miles of the United States' coastline and/or onto adjoining shorelines. The United States has not submitted any evidence (let alone admissible evidence as to the Transocean |

|  | Defendants) to support that oil was discharged from the *Deepwater Horizon*.

Even if there were any evidence of oil from the Macondo Well that reached the *Deepwater Horizon*, it would have combusted before it reached the surface of the water. *See* United States Complaint (Doc. #1 in Case No. 10-cv-4536) ¶57 ("As a result of the April 20, 2010 uncontrolled well event and uncontrolled blowout, multiple explosions and fires occurred aboard the *Deepwater Horizon*."); Winslow Deposition, April 20, 2011, at 10:25-11:21, 146:22-147:9, 167:20-168:6, 172:18-173:3, 173:8-20, 176:1-12, 183:11-25, 203:23-204:11, 205:10-18, 207:9-14, 221:2-12, 241:16-18, 259:13-22, 260:1-22 (Exhibit 1 attached) (explosions and huge fire on *Deepwater Horizon* continuing until the vessel sank; water was not on fire until after the rig sank; no evidence of discharge on or above surface of the water).

Disputed that there was any discharge of oil <u>from</u> the BOP or riser or <u>from</u> the vessel within the meaning of the civil penalty provisions of the CWA, 33 U.S.C. §1321(b)(7)(A).

Even if the language from BP's Answer cited by the United States were admissible as to the Transocean Defendants, it would support only that "some of the oil **from the Macondo Well** reached the shoreline of the United States".  (emphasis added.) |
|---|---|
| 21.  The uncontrolled flow of oil continued for several months thereafter.

•  BP Answer ¶ 1 (admitting that following the loss of well control which resulted in the explosions or fires on the Deepwater Horizon, "oil flowed into the Gulf of Mexico from the Macondo well for 87 days"). | 21.  Undisputed that oil from the Macondo Well continued to flow for several months after April 20, 2010.

Anadarko's response to the United States discovery and BP's Answer to the United States Complaint are not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections |

| | |
|---|---|
| • APC Discovery Responses, RFA No. 6 (admitting that "oil flowed from the Macondo Well and was discharged into the Gulf of Mexico . . ." and that "oil flowed from April 20, 2010 to July 15, 2010") (Ex. 34 hereto).<br><br>• Transocean's Brief in Response to the Court's Order Re: Requested Briefing on Trial Plan Issues [Rec. Doc. 2665] at 2 (referring to the time period from when the oil discharge began until July 15, 2010, the date "the Macondo Well was capped").<br><br>• First SMF ¶15 (citing to government records and websites documenting oil flow over time). | §§ 1, 2. The Presidential Commission Report cited in First SMF ¶15 is inadmissible hearsay. *See* Transocean's Evidentiary Objections §4.<br><br>Disputed that there was any oil discharged from the *Deepwater Horizon,* let alone oil that continued to flow for several months. The United States' citation to paragraph 15 of its Statement of Undisputed Material Facts in support of its first Motion for Partial Summary Judgment provides no evidence to show that any oil discharged from the *Deepwater Horizon* as opposed to a discharge from the Macondo Well continued to flow for several months after April 20, 2010. Even Transocean's statement in a brief directed to Trial Plan Issues were admissible evidence against the Transocean Defendants in support of this Motion for Partial Summary Judgment, the cited statement from the brief does not support that any oil discharged from the *Deepwater Horizon* as opposed to a discharge from the Macondo Well continued to flow for several months after April 20, 2010.<br><br>Disputed that there was any discharge of oil <u>from</u> the BOP or riser or <u>from</u> the vessel within the meaning of the civil penalty provisions of the CWA, 33 U.S.C. §1321(b)(7)(A).<br><br>Even if the language from BP's Answer cited by the United States were admissible as to the Transocean Defendants, it would support only that "oil flowed into the Gulf of Mexico **from the Macondo well** for 87 days")." (emphasis added.) Similarly, even if Anadarko's response to the United States Request for Admission cited by the United States were admissible against the Transocean Defendants, it would support only that "oil flowed **from the Macondo Well** and was discharged into the Gulf of |

| | Mexico." (emphasis added.) |
|---|---|
| 22. The Macondo Well was capped on July 15, 2010.<br><br>• APC Discovery Responses, RFA No. 6 (admitting that "oil flowed from the Macondo Well and was discharged into the Gulf of Mexico . . ." and that "oil flowed from April 20, 2010 to July 15, 2010") (Ex. 34 hereto).<br><br>• BP Answer ¶ 1 (admitting that following the loss of well control which resulted in the explosions or fires on the Deepwater Horizon, "oil flowed into the Gulf of Mexico from the Macondo well for 87 days").<br><br>• Transocean's Brief in Response to the Court's Order Re: Requested Briefing on Trial Plan Issues [Rec. Doc. 2665] at 2 (referring to July, 15, 2010 as date. | 22. Undisputed.<br><br>Anadarko's response to the United States discovery and BP's Answer to the United States Complaint are hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §§ 1, 2. |
| 23. On or about November 18, 2009, BP and MOEX executed a Lease Exchange Agreement, whereby BP assigned to MOEX a 10% interest in the Lease. (Ex. 1 hereto).<br><br>• BP Answer ¶ 27 (admitting that "BPXP and MOEX entered into a Lease Exchange Agreement, pursuant to which BPXP assigned to MOEX an undivided 10% Record Title Interest in the Lease").<br><br>• Deposition of Michael Beirne ("Beirne Dep."), July 27, 2011, at 230 (Ex. 28 hereto) (authenticating Dep. Ex. 1244 (Ex. 1 hereto), as the final copy of the Lease Exchange Agreement between BP and MOEX excluding the exhibits to the Agreement). | 23. The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants.<br><br>Further, BP's Answer to the United States Complaint is hearsay and not admissible as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1. |
| 24. After MOEX and BP executed the assignment, it was submitted to MMS, which approved the assignment on February 23, 2010.<br><br>• BP Answer ¶ 28. | 24. The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants.<br><br>Further, BP's Answer to the United States Complaint is hearsay and not admissible as |

| | to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1. |
|---|---|
| 25.  BP assigned a 22.5% Record Title Interest in the Lease to A E&P Company LP ("A E&P"), effective October 1, 2009.  BP executed the assignment on or about December 17, 2009, A E&P submitted the assignment to MMS on February 11, 2010, and MMS approved the assignment on February 23, 2010.<br><br>• Deposition of Jim W. Bryan ("Bryan Dep."), May 6, 2011, at 94-95 (Ex. 29 hereto) (authenticating Dep. Ex. 1944 (Ex. 4 hereto), as containing the documents filed by Anadarko, and approved by MMS, for BP's assignment to A E&P of 22.5% Record Title Interest in the Lease).<br><br>• APC Answer ¶¶ 29, 30.<br><br>• BP Answer ¶¶ 29, 30.<br><br>• First SMF ¶¶ 2, 3 (citing Ex. 1 to First MSJ, Declaration of Ann H. Glazner, ¶ 4, and Ex. 3 to First MSJ, Assignment of Record Title Interest Conveying 22.5% Interest in MC 252 to Anadarko A E&P). | 25.  The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants.<br><br>Further, BP's and Anadarko's Answers to the United States Complaint are hearsay and not admissible as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1. |
| 26.  BP assigned a 2.5% Record Title Interest in the Lease to APC.  BP executed the assignment on or about December 17, 2009, APC submitted the assignment to MMS on or about February 12, 2010, and MMS approved the assignment on February 23, 2010.<br><br>• Bryan Dep., at 94-95 (Ex. 29 hereto) (authenticating Dep. Ex. 1944 (Ex. 4 hereto), as containing the documents filed by Anadarko, and approved by MMS, for BP's assignment to APC of 2.5% Record Title Interest in the Lease).<br><br>• APC Answer ¶¶ 29, 31.<br><br>• BP Answer ¶¶ 29, 31. | 26.  The Transocean Defendants object that statement is irrelevant as to the Transocean Defendants.<br><br>Further, BP's and Anadarko's Answers to the United States Complaint are hearsay and not admissible as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1. |

| | |
|---|---|
| • First SMF ¶¶ 4, 5 (citing Ex. 1 to First MSJ, Declaration of Ann H. Glazner ¶ 5; Ex. 4, Assignment of Record Title Interest Conveying 2.5% Interest in MC 252 to APC). | |
| 27.  On or about December 17, 2009, APC, AE&P and BP executed a Lease Exchange Agreement, whereby BP assigned to APC and AE&P collectively a 25% interest in the Lease. (Ex. 2 hereto).<br><br>• APC Answer ¶ 29.<br><br>• BP Answer ¶ 29.<br><br>• Bryan Dep., at 69-70 (Ex. 29 hereto) (authenticating the APC-AE&P-BP Lease Exchange Agreement, Dep. Ex. 1942, Ex. 2 hereto).<br><br>• APC Discovery Responses, RFA No. 36 (Ex. 34 hereto) (admitting that a true, complete and accurate copy of the Lease Exchange Agreement is Bates No. ANA-MDL-000030651-000030681) (This is the same document as Dep. Ex. 1942, Ex. 2 hereto, but stamped with a different Bates number range).<br><br>• Beirne Dep., at 98:18-99:15 (Ex. 28 hereto) (explaining that Dep. Ex. 2824 is "a lease exchange agreement that sets out the exchange between BP and two Anadarko entities for their assignment of a portion of BP's interests in Macondo for an assignment of some other leases from the two Anadarko entities") (Dep. Ex. 2824 is the same document as Dep. Ex. 1942, Ex. 2 hereto, but stamped with a different Bates number range and containing marginalia on the first page). | 27.  The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants.<br><br>Further, Anadarko's responses to the United States Requests for Admission and BP's Answer to the United States Complaint are hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §§ 1, 2. |
| 28.  A E&P assigned its 22.5% Record Title Interest in the Lease to APC. A E&P submitted the assignment to MMS on or about April 20, 2010, and MMS approved the assignment on April 28, 2010. APC and A E&P had agreed to an effective date of April 1, 2010. | 28. The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants.<br><br>Further, Anadarko's responses to the United States Requests for Admission are not admissible as to the Transocean |

| | |
|---|---|
| • APC Discovery Responses, Supplemental Response to Interrogatory No. 7 (stating that the assignment form transferring AEP's 22.5% interest to APC was sent to MMS on April 20, 2010 and was approved on April 28, 2010) (Ex. 34 hereto). <br><br> • Bryan Dep., at 100-03 (Ex. 29 hereto) (discussing A E&P's assignment of 22.5% interest to APC). <br><br> • A E&P Memorandum in Support of Motion to Dismiss United States Complaint [Rec Doc. 1861], Ex. 5, Assignment Forms (Ex. 5 hereto). <br><br> • First SMF ¶ 7 (citing Ex. 1 to First MSJ, Declaration of Ann H. Glazner, ¶ 8; Ex.). | Defendants. *See* Transocean's Evidentiary Objections §2. A Memorandum filed by A E&P in support of a Motion to Dismiss is also inadmissible hearsay as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §3. |
| 29. As of April 20, 2010, MMS had not approved the A E&P reassignment of its interest in the Lease, and A E&P held 22.5% of the Lease. <br><br> • First SMF ¶ 8 (citing A E&P Memorandum in Support of Motion to Dismiss United States' Complaint [Rec. Doc. 1861], Ex. 5; First MSJ, Ex. 1, Declaration of Ann H. Glazner, ¶ 8). <br><br> • Assignment of Record Title Interest Conveying 22.5& Interest in MC 252 from A E&P to APC, Dep. Ex. 1945 (Ex. 5 hereto) (indicating MMS approval date of April 28, 2010). | 29. The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants. <br><br> Further, a Memorandum filed by A E&P in support of a Motion to Dismiss is inadmissible hearsay as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §3. |
| 30. After its assignments to MOEX, APC and AE&P, BP retained a 65% interest in the Lease. <br><br> • BP Answer ¶ 33 (admitting that "as of April 20, and continuing through at least April 28, 2010, BPXP held a 65% interest in the Lease"). <br><br> • Beirne Dep., at 99-100 (Ex. 28 hereto). | 30. The Transocean Defendants objects that this statement is irrelevant as to the Transocean Defendants. <br><br> Further, BP's Answer to the United States Complaint is hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1. |
| 31. On or about December 17, 2009, BP, APC and an APC subsidiary, Kerr-McGee Oil and Gas Corporation, also entered into a Well Participation Agreement for the Macondo | 31. The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants. |

| | |
|---|---|
| Prospect, whereby APC would own a 25% interest in the Macondo Well. (Ex. 3 hereto). <br><br> • Bryan Dep., at 75-76 (Ex. 29 hereto) (authenticating the Well Participation Agreement, Dep. Ex. 1943 (Ex. 3 hereto)). <br><br> • APC Discovery Responses, RFA No. 25 and Interrogatory No. 2(x) (Ex. 34 hereto) (admitting that true, complete and accurate copy of the Well Participation Agreement is ANA-MDL-000030613 through ANA-MDL-000030650) (same document as Dep. Ex. 1943, Ex. 3 hereto). <br><br> • Beirne Dep., at 249 (Ex. 28 hereto). <br><br> • APC Discovery Responses, RFA No. 12 (admitting that APC "signed a well participation agreement which indicates that APC has agreed to participate in the Initial Exploratory Well. The IEW was defined as 'consisting of all tangible personal property in the well.'") (Ex. 34 hereto). <br><br> • Deposition of Nicholas G. Huch ("Huch Dep."), May 16, 2011, at 262:13-264:19 (Ex. 31 hereto). | Further, Anadarko's responses to the United States Requests for Admission are hearsay and not admissible as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §2. |
| 32.  As consideration for its 25% proportionate share of the Macondo Well, BP and APC agreed that APC would pay "1/3 for 1/4," or 33.33% of up to 110% of the estimated costs of the Macondo Well as set forth in the Initial Authorization for Expenditure. <br><br> • Section 4.1 of the Well Participation Agreement (Ex. 3 hereto). <br><br> • APC Discovery Responses, RFA No. 25 and Interrogatory No. 2(x) (Ex. 34 hereto) (admitting that true, complete and accurate copy of the Well Participation Agreement is ANA-MDL-000030613 through ANA-MDL-000030650) [authenticating Well Participation Agreement] (Ex. 3 hereto). <br><br> • Bryan Dep., at 51:2-52:24 (Ex. 29 hereto). <br><br> • Beirne Dep., at 209:7-23 (Ex. 28 hereto) | 32.  The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants. <br><br> Further, Anadarko's responses to the United States Requests for Admission are hearsay and not admissible as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §2. |

| | |
|---|---|
| 33.  On or about November 18, 2009, BP and MOEX executed a Joint Operating Agreement that set forth their agreement among themselves as to their rights and responsibilities, operational duties, accounting mechanism, and many other terms as to the Macondo Prospect.  The Anadarko Defendants executed a Ratification and Joinder of the Joint Operating Agreement on or about December 17, 2009. All signatories agreed that the Joint Operating Agreement would be retroactively effective as of October 1, 2009.<br><br>• Ex. 8 to First MSJ [Dep. Ex. 1243].<br><br>• APC Answer ¶ 27, 29.<br><br>• BP Answer ¶ 29 (admitting that "on December 17, 2009, BPXP entered into a Ratification and Joinder of Operating Agreement with MOEX, Anadarko Petroleum and Anadarko E&P Company LP, effective October 1, 2009").<br><br>• Bryan Dep., at 84-87 (Ex. 29 hereto) (authenticating and discussing Dep. Ex. 1243, Ex. 8 to First MSJ).<br><br>• Huch Dep., at 173-76 (Ex. 31 hereto) (same).<br><br>• BP Exploration & Production Inc.'s Responses and Objections to the United States' First Set of Interrogatories and Second Set of Requests for Production ("BP Discovery Responses"), Interrogatory No. 32 (Ex. 35 hereto) (providing Bates Nos. for final, signed operating agreement, BP-HZN-2179MDL00054328 through BP-HZN-2179MDL00054572) (This Bates range is, in relevant part, substantively the same document as Ex. 8 to First MSJ [Dep. Ex. 1243]). | 33.  The Transocean Defendants objects that this statement is irrelevant as to the Transocean Defendants.<br><br>Further, Anadarko's responses to the United States Requests for Admission and Anadarko's and BP's Answers to the United States Complaint are hearsay and not admissible evidence as to the Transocean Defendants.  *See* Transocean's Evidentiary Objections §§ 1, 2. |
| 34.  BP is liable as an "operator" of the Macondo Well under the CWA, 33 U.S.C. § 1321(b)(7). | 34.  Undisputed.. |
| 35.  Pursuant to BP's obligations under its Agreements with MOEX and Anadarko, BP prepared an Authorization for Expenditure for the | 35.  Undisputed.<br><br>BP and Anadarko responses to United |

| | |
|---|---|
| drilling of the initial exploratory well, Macondo Well. The AFE was executed by BP, MOEX, and Anadarko (Exs. 6, 7 hereto).<br><br>• BP Discovery Responses, Interrogatory No. 26 (Ex. 35 hereto) (identifying "signed Authorizations for Expenditure for the Macondo Well" at Bates Nos. BPHZN-2179MDL00057193 through BP-HZN-2179MDL00057208) (Initial AFE as executed by BP, Anadarko and MOEX, included in Ex. 6 attached hereto, is Bates Nos. BP-HZN-2179MDL00057193-00057198)<br><br>• Beirne Dep., at 105 (Ex. 29 hereto) (Q: All right. Explain to us: What is an authorization for expenditure? A. It's my understanding it is a document that's generated under the joint operating agreement that provides for the funding of an operation or drilling of a well").<br><br>• Deposition of Alan O'Donnell ("O'Donnell Dep."), May 5, 2011, at 127-28 (Ex. 32 hereto) (authenticating Dep. Ex. 1919 (Ex. 7 hereto) as initial AFE executed by Anadarko).<br><br>• APC Discovery Responses, RFA No. 37 (Ex. 34 hereto) (admitting that Bates range for Dep. Ex. 1919 (Ex. 7 hereto) is a true, complete and accurate copy of the initial Authorization for Expenditure). | States Requests for Admission are hearsay and not admissible as to the Transocean Defendants.  *See* Transocean Evidentiary Objections §2. |
| 36.  Two supplemental AFEs were prepared to cover additional costs related to the drilling of the Macondo Well. These AFEs were executed by BP, MOEX, and Anadarko. (Exs. 6, 8, 9 hereto).<br><br>• BP Discovery Responses, Interrogatory No. 26 (Ex. 35 hereto) (identifying "signed Authorizations for Expenditure for the Macondo Well" at Bates Nos. BPHZN-2179MDL00057193 through BP-HZN-2179MDL00057208). (First and Second Supplemental AFEs executed by BP, Anadarko and MOEX, included in Ex. 6 attached hereto, are Bates Nos. BP-HZN-2179MDL00057199-00057205). | 36.  Undisputed.<br><br>Anadarko responses to United States Requests for Admission are hearsay and not admissible as to the Transocean Defendants.  *See* Transocean Evidentiary Objections §2. |

| | |
|---|---|
| • O'Donnell Dep., at 131-32; 135-36 (Ex. 32 hereto) (authenticating Dep. Exs. 1920 and 1921, respectively the First and Second Supplemental AFEs executed by Anadarko (Exs. 8 and 9 hereto).<br><br>• APC Discovery Responses, RFA Nos. 38 and 39 (Ex. 34 hereto) (admitting that Bates range for Dep. Exs. 1920 and 1921, Exs. 8 and 9 hereto, represent true, complete and accurate copies of the First and Second Supplemental AFEs). | |
| 37.  A fourth AFE was prepared to authorize funding for the production casing for the Macondo Well.  This AFE was executed on or around April 15, 2010, by BP, MOEX and Anadarko. (Exs. 6, 10 hereto).<br><br>• BP Discovery Responses, Interrogatory No. 26 (Ex. 35 hereto) (identifying "signed Authorizations for Expenditure for the Macondo Well" at Bates Nos. BPHZN- 2179MDL00057193 through BP-HZN-2179MDL00057208.  (The executed AFEs for the production casing executed by BP, Anadarko and MOEX, included in Ex. 6 attached hereto, is Bates Nos. BP-HZN-2179MDL00057206-00057208).<br><br>• Beirne Dep., at 266-68 (Ex. 28 hereto) (discussing Anadarko's execution of the production casing AFE).<br><br>• O'Donnell Dep., at 139-142 (Ex. 32 hereto) (authenticating Dep. Ex. 1922, Production Casing AFE, Ex. 10 hereto).<br><br>• APC Discovery Responses, RFA No. 40 (Ex. 34 hereto) (admitting that Bates range for Dep. Ex. 1922, Ex. 10 hereto, is a true, complete and accurate copy of the Production Casing AFE). | 37.  Undisputed.<br><br>Anadarko responses to United States Requests for Admission are hearsay and not admissible as to the Transocean Defendants.  *See* Transocean Evidentiary Objections §2. |
| 38.  From January through May, 2010, BP sent "Joint Interest Billings" (JIBs) or invoices to co-owners MOEX and APC, which requested reimbursement to BP for the MOEX and APC's proportionate share of costs of casing and other physical components of the Macondo Well. | 38.  Undisputed.<br><br>BP Responses to United States Requests for Admission are hearsay and not admissible as to the Transocean Defendants.  *See* Transocean Evidentiary |

| | |
|---|---|
| • Anadarko invoices – Dep. Exs. 4204; 4206; 4208; 4210; 4212 (Exs. 15, 17, 19, 21 and 23 hereto). | Objections §2. |
| • APC Discovery Responses, Interrogatory No. 17 (Ex. 34 hereto) (identifying Bates numbers for requests for payment sent by BP to APC pursuant to the Macondo JOA that correspond to Bates Numbers of Dep. Exs. 4204; 4206; 4208; 4210; 4212). | |
| • MOEX invoices – Dep. Exs. 2891; 2893; 2895; 2896; (Exs. 11, 12, 13 and 14 hereto). | |
| • BP Discovery Responses, RFA No. 27 (Ex. 35 hereto) (identifying Bates numbers for "joint interest billings to Anadarko and MOEX for the Macondo Well")  (These Bates numbers include the same Bates ranges or substantively the same documents as Dep. Exs. 2891; 2893; 2895; 2896; 4204; 4206; 4208; 4210; 4212.). | |
| • Beirne Dep., at 237-38 (Ex. 28 hereto) (confirming that an invoice for the Macondo Well contained itemization of tangible equipment). | |
| 39.  The JIBs itemized tangible equipment – physical assets, such as the well head and casing – which was included as part of the proportionate costs to be reimbursed by APC and MOEX. | 39.  Undisputed. |
| • Beirne Dep., at 237-38 (Ex. 28 hereto) (confirming that an invoice for the Macondo Well contained itemization of tangible equipment). | |
| • Deposition of Jeremy Byrd ("Byrd Dep."), July 13, 2011, at 76:1-21 (Ex. 30 hereto) (confirming that an invoice to APC for the Macondo Well included costs of "tangible controllable equipment"). | |
| • Anadarko invoices – Dep. Exs. 4204; 4206; 4208; 4210; 4212 (Exs. 15, 17, 19, 21, and 23 hereto). | |

| | |
|---|---|
| • MOEX invoices – Dep. Exs. 2891; 2893; 2895; 2896 (Exs. 11, 12, 13, and 14 hereto). | |
| 40. The JIBs for Macondo well costs did not include BP's proportionate share of the Macondo Well. BP retained a 65% ownership interest in the Macondo Well.<br><br>• MOEX invoices – Dep. Exs. 2891; 2893; 2895; 2896 (Exs. 11, 12, 13 and 14 hereto) (identifying MOEX's 10% share of costs).<br><br>• Anadarko invoices – Dep. Exs. 4204; 4206; 4208; 4210; 4212 (Exs. 15, 17, 19, 21 and 23 hereto) (identifying Anadarko's 33.33% share of costs up to April, where promote was exceeded and it was billed for a 25% share of costs). | 40. Undisputed. |
| 41. BP is a Delaware corporation.<br><br>• BP Answer ¶ 15. | 41. Undisputed.<br><br>BP's Answer to the United States Complaint is hearsay and not admissible evidence as to the Transocean Defendants. *See* Transocean's Evidentiary Objections §1. |
| 42. The Transocean Defendants admits that one or more of the Transocean Defendants were the owners, owners *pro hoc vice*, and/or operators of the MODU *Deepwater Horizon*.<br><br>• Transocean Answer ¶¶ 19-21, 74.<br><br>• Drilling Contract No. 980249, RBS-8D Semisubmersible Drilling Unit, between Vastar Resources, Inc. and R&B Falcon Drilling Co., Dep. Ex. 4271 (Ex. 24 hereto). | 42. Undisputed that "**one or more** of the Transocean Defendants were the owners, owners *pro hac vice*, and/or operators of the MODU *Deepwater Horizon*." (emphasis added.) |
| 43. The Transocean Defendants have admitted their ownership of the *Deepwater Horizon* in pleadings, discovery, and public reports.<br><br>• Complaint and Petition for Exoneration from or Limitations of Liability, No. 2:10-cv-02771, ¶ 6 (originally filed in S.D. Tx. May 13, 2010) ("Petitioners were at all time material hereto the | 43. Undisputed that Defendant Triton Asset Leasing GmbH was the owner of the *Deepwater Horizon*.<br><br>Disputed that any other Transocean Defendant owned the *Deepwater Horizon*. The Complaint and Petition for Exoneration from or Limitations of |

| | |
|---|---|
| Owner, Managing Owners, Owners Pro Hac Vice … of the MODU Deepwater Horizon, etc., and/or are considered "owners" of the vessel under the Limitation of Liability Act, 46 U.S.C. 30501 et seq., as a party sought to be held liable "as owner" of the MODU…") (Ex. 38 hereto). | Liability (Ex. 38) cited by the United States does not show that any particular Transocean entity was an owner of the *Deepwater Horizon*. Instead, it is alleged in paragraph 6 of that pleading only that "Petitioners were at all times material hereto the Owner, Managing Owners, Owners *Pro Hac Vice,* and/or Operators, of the MODU *Deepwater Horizon,* etc., **and/or are considered 'owners' of the vessel under the Limitation of Liability Act**, 46 U.S.C. 30501 *et seq.,* as a party or parties sought to be held liable 'as owner' of the MODU *Deepwater Horizon . . . .*" (emphasis added.) The general reference to "Transocean" in the response to BP's Interrogatory No. 34 cited (Ex. 37) and in the Internal Investigation Report cited (Ex. 25) are generic references and do not support that any particular Transocean entity owned the *Deepwater Horizon*, particularly given Defendants' specific response cited by the United States from BP's RFA Nos. 5, 6 (Ex. 36) that "'Triton Asset Leasing GmbH was the owner of the Deepwater Horizon' . . . 'and no other entity'". |
| • Transocean's Response to BP Parties' First Set of Requests for Admission ("Transocean RFA Responses"), RFA Nos. 5, 6 ("TO admits that Triton Asset Leasing GmbH was the owner of the Deepwater Horizon" … "and no other entity.") (Ex. 36 hereto). | |
| • Transocean's Response to BP Parties' First Set of Interrogatories, Interrogatory No. 34 ("Transocean owns more than 130 rigs, but only two, the Marianas and Deepwater Horizon, performed work on the Macondo Well.") (Ex. 37 hereto). | |
| • Macondo Well Incident: Transocean Internal Investigation, June 2011, at 9 ("Transocean was contracted by BP Exploration & Production Inc. (BP) to provide the Deepwater Horizon rig and personnel to drill the Macondo well …"). (Ex. 25 hereto). | |
| 44. The Transocean Defendants have admitted their operation of the MODU *Deepwater Horizon* in pleadings and discovery. | 44. Undisputed that Defendant Transocean Deepwater Inc. operated the *Deepwater Horizon*. |
| • Complaint and Petition for Exoneration from or Limitations of Liability, No. 2:10-cv-02771, ¶ 6 (originally filed in S.D. Tx. May 13, 2010) ("Petitioners were at all time material hereto the Owner, Managing Owners, Owners Pro Hac Vice … of the MODU Deepwater Horizon, etc., and/or are considered "owners" of the vessel under the Limitation of Liability Act, 46 U.S.C. 30501 et seq., as a party sought to be held liable "as owner" of the MODU…") (Ex. 38 hereto). | Disputed that any other Transocean entity operated the *Deepwater Horizon*. The Complaint and Petition for Exoneration from or Limitations of Liability (Ex. 38) cited by the United States does not show that any particular Transocean entity operated the *Deepwater Horizon*. Instead, it is alleged in paragraph 6 of that pleading only that "Petitioners were at all times material hereto the Owner, Managing Owners, Owners *Pro Hac Vice,* **and/or** Operators, of the MODU *Deepwater Horizon,* etc., **and/or are considered 'owners' of the vessel under the Limitation of Liability Act**, 46 U.S.C. 30501 *et seq.,* as |
| • Transocean RFA Responses, RFA Nos. 7 and 44 ("TO was involved in the day-to-day operations of the *Deepwater Horizon*") (Ex. 36 hereto). | |

| | |
|---|---|
| • Transocean RFA Responses, RFA No. 12 (OIMs are employed by Transocean Deepwater Inc. and Jimmy Harrell was the OIM aboard the *Deepwater Horizon* on April 20, 2010) (Ex. 36 hereto).<br><br>• Transocean RFA Responses, RFA No. 17 (The OIM was the senior Transocean manager onboard who coordinated rig operations while a well is being drilled with BP's well site leaders and generally managed the Transocean crew.) (Ex. 36 hereto).<br><br>• Transocean RFA Responses, RFA No. 21 (The Transocean person in charge holds overriding authority in situations involving safety and pollution prevention based upon written procedures, policies, recognized industry safe working practice, and relevant codes and standards.) (Ex. 36 hereto). | a party or parties sought to be held liable 'as owner' of the MODU *Deepwater Horizon* . . .'" (emphasis added.) The general reference to "Transocean" in the response to responses to the United States Requests for Admission are generic references only and do not support that any particular Transocean entity operated the *Deepwater Horizon*, particularly given Defendants' specific response cited by the United States to BP's Request for Admission No. 12 (Ex. 36) that the OIM aboard the *Deepwater Horizon* was employed by Defendant Transocean Deepwater Inc. |
| 45.  The Transocean Defendants are corporations.<br><br>• Transocean Offshore Deepwater Drilling Inc. is a Delaware corporation.  Transocean Answer ¶ 21.<br><br>• Transocean Holdings LLC is a Delaware corporation. Transocean Answer ¶ 20.<br><br>• Transocean Deepwater Inc. is a Delaware corporation. Transocean Answer ¶ 22.<br><br>• Triton Asset Leasing GmbH is a Swiss corporation. Transocean Answer ¶ 19. | 45.  Undisputed. |
| 46.  Beginning in January, 2010, and continuing through May, 2010, APC received requests for payment from BP for costs associated with the construction of the Macondo Well in the form of invoices and cash call advances, which it paid timely.  APC paid invoices from BP for its proportionate share of the costs of the components that were installed in the Macondo Well.<br><br>• APC Discovery Responses, Interrogatory No. | 46.  The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. |

| | |
|---|---|
| 2(g) ("APC made payments on certain Joint Interest Billing invoices ('JIBs') from BP which provide a description of the items as covered as set forth therein," and referring the United States to certain JIBs) (Ex. 34 hereto). | |
| • APC Discovery Responses, Interrogatory Nos. 17 and 18 (providing tables linking invoices to payments) (Ex. 34 hereto). | |
| • January 2010 Invoice (Dep. Ex. 4204, Ex. 15 hereto); Payment (Dep. Ex. 4205, Ex. 16 hereto); Byrd Dep., at 74:7-76:21; 79:16-80:1 (Ex. 30 hereto) (authenticating invoice and remittance; confirming APC's payment in full on February 26, 2010). | |
| • February 2010 Invoice (Dep. Ex. 4206, Ex. 17 hereto); Payment (Dep. Ex. 4207, Ex. 18 hereto); Byrd Dep., at 82:12-20; 82:25 (Ex. 30 hereto) (authenticating invoice and remittance; confirming APC's payment on March 25, 2010). | |
| • March 2010 Invoice (Dep. Ex. 4208, Ex. 19 hereto); Payment (Dep. Ex. 4209, Ex. 20 hereto); Byrd Dep., at 85:2-6; 85:19-20; 87:4-16 (Ex. 30 hereto) (authenticating invoice and remittance; confirming APC's payment in full on April 23, 2010). | |
| • April Invoice (Dep. Ex. 4210, Ex. 21 hereto); Payment (Dep. Ex. 4211, Ex. 22 hereto); Byrd Dep., at 89:2; 89:6-9; 89:13-15; 91:24; 92:2-13 (Ex. 30 hereto) (authenticating invoice and remittance; confirming that APC paid on June 1, 2010 in full for all Macondo Well-related costs, less costs of response to incident). | |
| • May Invoice (Dep. Ex. 4212, Ex. 23 hereto); Byrd Dep., at 92:17; 94:18-21; 94:23-95:2; 96:7-9; 96:11-97:16 (Ex. 30 hereto) (explaining that well-related costs specified on May invoice were paid through cash call advances, not a physical check). | |
| 47. In the invoices, which also include costs associated with other Wells, the costs for the | 47. The Transocean Defendants object that this statement is directed to the liability of |

| | |
|---|---|
| Macondo Well are identified and tracked by the reference number to the Authorization for Expenditure executed by APC for the Macondo Well.<br><br>• Byrd Dep., at 30:22-31:2; 40:11-17 (Ex. 30 hereto). | the Anadarko Defendants and is irrelevant as to the Transocean Defendants. |
| 48.  The invoices were itemized to include strings of casing, cement, production casing, casing hanger, casing accessories, and the well head.<br>• Byrd Dep., at 76:1-21 (Ex. 30 hereto) (confirming that January invoice to APC for Macondo includes costs of "tangible controllable equipment"). | 48.  The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. |
| 49.  APC paid its 33.33% (or, 25% after 110% of the well costs of the initial AFE was exceeded) proportionate share of costs associated with the Macondo Well, including the costs of the tangible personal property, from October 1, through April 20, 2010.  It did not pay any of the costs of the incident or response to the explosion and spill.  The final costs were paid through draw-down of a cash advance or cash call.<br><br>• Byrd Dep., at 92:17; 94:18-21; 94:23-95:2; 96:7-9; 96:11-97:16 (Ex. 30 hereto) (explaining that Macondo well-related costs specified on May invoice were paid through cash call advances, not a physical check).<br><br>• Byrd Dep., at 79:16-19; 79:22-80:1 (Ex. 30 hereto) (explaining that January invoice included costs dating from the spudding of the Macondo well in October 2009).<br><br>• Bryan Dep., at 51:2-52:24 (Ex. 29 hereto). | 49.  The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. |
| 50.  APC paid the proportionate share of costs sent to it on its own behalf.<br><br>• Byrd Dep., at 87:17-88:16 (Ex. 30 hereto) ("Anadarko Petroleum Corporation . . .[is] the only party that's being billed on this invoice for 33 percent."). | 50.  The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. |
| 51.  APC was a partial owner of the components that were installed in the Macondo Well, including | 51.  The Transocean Defendants object that this statement is directed to the liability of |

| | |
|---|---|
| the strings of casing, cement, production casing, casing hanger, and the well head.<br><br>• Byrd Dep., at 68:7-19; 67:17-24 (stating that APC's payment of invoices listing equipment meant that APC would hold a share in such equipment) (Ex. 30 hereto).<br><br>• Huch Dep., at 257:25-258:23 (stating that APC intended to own the tangible personal property comprising the Macondo Well, and clarifying that tangible personal property included equipment associated with the well, such as downhole pipe, wellheads, and casing equipment downhole) (Ex. 31 hereto).<br><br>• APC Discovery Responses, RFA No. 12 (admitting that APC "signed a well participation agreement which indicates that APC has agreed to participate in the Initial Exploratory Well. The IEW was defined as 'consisting of all tangible personal property in the well.'") (Ex. 34 hereto).<br><br>• Huch Dep., at 262:13-264:19 (Ex. 31 hereto). | the Anadarko Defendants and is irrelevant as to the Transocean Defendants. |
| 52.  APC was a partial owner of tangible personal property comprising the Macondo Well.<br><br>• APC Discovery Responses, RFA Nos. 12, 13, 33 (Ex. 34 hereto). | 52.  The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. |
| 53.  APC was an owner of the Macondo Well.<br><br>• APC Discovery Responses, RFA No. 33 (In response to a contention interrogatory, APC responded that "it does not contend that APC is not a partial owner in the Macondo Well) (Ex. 34 hereto). | 53.  The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. |
| 54.  Anadarko E&P is a limited liability company incorporated in the State of Delaware.<br><br>• APC Answer ¶ 16. | 54.  The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. |
| 55.  Anadarko Petroleum Corporation is a corporation incorporated in the State of Delaware. | 55.  The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant |

| • APC Answer ¶ 17. | as to the Transocean Defendants. |

Respectfully submitted,

By:    /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel GiesberClingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Sutherland Asbill& Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,

By:    /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com

-and-

By:    /s/ Brad D. Brian.
Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com,
allen.katz@mto.com

-and-

By:    /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 1070)
Richard J. Hymel (Louisiana, No. 20230)
Preis& Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129
-and-
601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, efk@preisroy.com

Of Counsel:
John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

*Counsel for Triton Asset Leasing GmbH,
Transocean Holdings LLC, Transocean
Offshore Deepwater Drilling Inc. and
Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been electronically filed through the Court's CM/ECF system and served on all counsel of record though LexisNexis File & Serve, in accordance with Pretrial Order No. 12, which will send a notice of electronic filing to all counsel of record on this 9th day of January, 2012.

/s/  Kerry J. Miller
KERRY J. MILLER