# EXHIBIT 15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010 <br><br> **This Document Relates to:** <br> 2:10-cv-01768 & 2:10-cv-02454 | MDL NO. 2179 <br> SECTION: J <br> JUDGE BARBIER <br> MAG. JUDGE SHUSHAN |

## CENTER FOR BIOLOGICAL DIVERSITY'S RESPONSES AND OBJECTIONS TO BP DEFENDANTS' FIRST SET OF DISCOVERY REQUESTS

Plaintiff Center for Biological Diversity (the "Center") provides the following responses and objections to Defendants BP Exploration & Production, Inc. and BP America Production Co.'s First Set of Interrogatories, Requests for Admission and Requests for Production.

**INTERROGATORY NO. 1:**

Identify and describe in detail all facts supporting your contention in paragraph 11 of the Amended Complaint that "[CBD] has standing in this suit to protect its own interests and those of its individual members in a representative capacity" at the time it filed the Amended Complaint. Respond to this interrogatory with the manner and degree of evidence required at this stage of the litigation, i.e., on cross-motions for summary judgment as scheduled in the January 6 Order. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 781, 883-889 (1990).

**CENTER'S RESPONSE:**

The Center objects to Interrogatory No. 1 in its entirety. The Fifth Circuit has already determined that the Center has standing to maintain its EPCRA claim. *Center for Biological Diversity, Inc. v. BP America Production Co., et al.*, 704 F.3d 413, 429-432 (5th Cir. 2013) ("At least one member specifically averred that he had not seen any reports from BP documenting the substances that were released in the spill despite his search for such reports. This is the kind of

concrete information injury that the statute was designed to redress."); *id*. at 432 ("the Center has standing to assert its claim for relief based on defendants' alleged failure to comply with the reporting requirements of EPCRA").  The Fifth Circuit did not instruct Judge Barbier to reconsider this issue on remand.  Furthermore, the Court based its standing decision not on the allegations pled in the Amended Complaint, but primarily on the averments made by the Center's members in their detailed standing declarations.  *Id*. at 429 (discussing the Center's standing declarations as proof of standing under EPCRA).  Under the "mandate rule," the Court is prohibited from reexamining this issue, and the propounded discovery is therefore irrelevant and moot.  *See, e.g., U.S. v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006).

Without waiving that objection, the Center responds as follows.  All facts supporting this contention are fully detailed in the Center's standing declarations.  These declarations are more than sufficient to sustain the Center's burden at the summary judgment stage.  *See Lujan*, 504 U.S. at 561 (plaintiffs must set forth "by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken as true.").  The Center hereby incorporates the content of its standing declarations in full in response to this Interrogatory.  ECF Nos. 1984-2 through 1984-10.  To paraphrase, the Center's members believe they were exposed to contamination from the Incident, attempted to ascertain what their potential chemical exposures from the Incident may have been, and could not locate any EPCRA reports filed by BP, because none exist.

The Center intends to supplement its past standing declarations in preparation for the upcoming cross-motions for summary judgment.  Accordingly, and without waiving its prior objection, the Center provides the following additional information that may be responsive to

this Interrogatory.  The Center will supplement its response to this Interrogatory as is appropriate under the Federal Rules:

- Adam Keats:  Mr. Keats is a member, donor, and employee of the Center.  He has travelled to the coasts of Florida and Texas at least four times before the spill occurred, and has been to coastal Texas twice since the spill.  During his post-spill travel, Mr. Keats was wary about entering the Gulf waters for fear being exposed to contaminants in those waters.  Mr. Keats has skin allergies that may be exacerbated by contact with contaminated water.  Mr. Keats did go swimming in the ocean, but only at the very southern tip of South Padres Island.  He is returning to the Gulf this May, and plans on spending time around the coast watching various bird species.  The best vantage point to view some bird species is from the shallow waters near the Mississippi River Delta.  Unfortunately, Mr. Keats is reluctant to enter those waters because he does not know what contaminants he could be exposed to while in the water.  Mr. Keats has looked for information on the internet about what types and quantities of contaminants entered the Gulf of Mexico from the spill, but has not been able to locate that information.  He would use that information to inform himself, and possibly his physician, about the potential health risks he could suffer from being exposed to Gulf waters, especially concerning his skin allergies.
- Gabe Scott:  In addition to what Mr. Scott has previously declared, which is fully incorporated by reference herein, Mr. Scott also reviewed Material Data Safety Sheets for crude oil and the dispersants applied by BP.  He has not yet found any information about the specific types and amounts of materials released from the Macondo Well or the Deepwater Horizon, despite looking for that information.  He

CBD'S RESP. AND OBJS. TO BP DEFS' FIRST SET OF DISC. REQS.                    3

       also called Orleans Parish seeking any reports filed by BP under EPCRA, and was told there was none and that the Parish would be following up with Mr. Scott at a later time.

- Allison Sondak:  In addition to what Ms. Sondak has declared previously, which is fully incorporated by reference herein, Ms. Sondak has also refrained from canoeing or kayaking in Gulf waters since the spill occurred.  She has ceased these activities primarily because she fears what chemicals could still be in the Gulf and what impacts they could have on her health.  She would use EPCRA reports to inform herself about these concerns, if they were available.  At the very least, Ms. Sondak would know what chemicals she could potentially be exposed to through contact with Gulf waters, what steps she could take to reduce or avoid exposure, and what medical attention she could seek if she was exposed.  Furthermore, Ms. Sondak plans on opening a commercial kitchen in New Orleans in the near future with a focus on local cuisine.  She is concerned about serving local seafood in her restaurant because she does not know what specific chemicals or amounts were released from the spill into the ocean.  If EPCRA reports about the spill were in existence, Ms. Sondak would use that information to educate herself and future customers about the possible health risks associated with the seafood she intends on serving in her commercial kitchen.  She again recently searched for the type of information that would be in an EPCRA report about the spill on the internet, but did not find that information.
- Catherine Craig: In addition to what Ms. Craig has declared previously, which is fully incorporated by reference herein, Ms. Craig previously tried to find a laboratory that would test for whether chemicals associated with the oil spill were in Ms. Craig's

body. The laboratory she contacted told her that they did not know what specific chemicals were released from the spill, and therefore did not know what chemicals to test for. Ms. Craig has been suffering chronic sinus infections since after the spill occurred, and her doctor does not know why she is getting these infections. If Ms. Craig had access to EPCRA reports, she would provide that information to her doctor such that the doctor could assess whether Ms. Craig's sinus infections are caused or influenced by chemicals she may have been exposed to from the spill. She has not yet uncovered information identifying the exact types or quantities of chemicals released from the spill.

**INTERROGATORY NO. 2:**

Identify and describe in detail how the alleged injuries of each of Declarants Crutcher, Sondak, Craig, Celano, Taylor, Scott, Hunt, Duchin, Thrailkill (and any other declarant CBD has asserted or may in the future assert provide it and its members standing and/or keeps CBD's remaining claims from being moot): (a) are fairly traceable to the absence of any EPCRA report BP allegedly was required to submit; and (b) how the filing of any such EPCRA report would redress their alleged injuries.

**CENTER'S RESPONSE:**

The Center objects to Interrogatory No. 2 in its entirety. The Fifth Circuit has already determined that the Center has standing to maintain its EPCRA claim, including that its members' injuries would be redressed by the filing of EPCRA reports. *Center for Biological Diversity, Inc. v. BP America Production Co., et al.,* 704 F.3d 413, 429-432 (5th Cir. 2013) ("At least one member specifically averred that he had not seen any reports from BP documenting the substances that were released in the spill despite his search for such reports. This is the kind of

CBD'S RESP. AND OBJS. TO BP DEFS' FIRST SET OF DISC. REQS.                                          5

concrete information injury that the statute was designed to redress."); *id*. at 432 ("the Center has standing to assert its claim for relief based on defendants' alleged failure to comply with the reporting requirements of EPCRA"). The Fifth Circuit did not instruct Judge Barbier to reconsider this issue on remand. Furthermore, the Court based its standing decision not on the allegations pled in the Amended Complaint, but primarily on the averments made by the Center's members in their detailed standing declarations. *Id*. at 429 (discussing the Center's standing declarations as proof of standing under EPCRA). Under the "mandate rule," the Court is prohibited from reexamining this issue, and the propounded discovery is therefore irrelevant and moot. *See, e.g., U.S. v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006).

The Center also objects to this Interrogatory as having at least two discrete subparts, pertaining to (a) traceability and (b) redressability. Judge Shushan's Order only allowed up to 10 interrogatories to be served, and BP represented that it would abide by that Order. *See* Jan. 28, 2014 Letter from Andrew Langan to Judge Shushan, p. 2 (BP discovery would be served "on the same terms and timetable set forth in the Court's Order for discovery against BP."). Including these subparts (and the additional subparts of other Interrogatories), BP has propounded discovery that goes well beyond the Court's Order.

Without waiving these objections, the Center responds as follows. The relevant injuries sustained by the Center's members are informational in nature, as explicitly recognized by the Fifth Circuit. *See Center for Biological Diversity, Inc.*, 704 F.3d at 429-430. They arise out of BP's failure to submit the required reports under EPCRA. Accordingly, they are not just "fairly" traceable, but *directly* traceable to BP's misconduct. Along those same lines, the Fifth Circuit held that the filing of the EPCRA reports would redress the Center's members' injuries. *Id*. at 432 ("The defendants' failure to submit the required written emergency notice is thus a

continuing violation of EPCRA's provisions. An order from the district court that the defendants comply with EPCRA's reporting requirement for that release could therefore redress the Center's claimed informational injury."); *see also Sierra Club, Inc. v. Tyson Foods, Inc.*, 299 F. Supp. 2d 693, 703-706 (W.D. Ky. 2003). Thus, an order from the Court requiring BP to file the requisite EPCRA reports will redress the informational injury sustained by the Center's members. In addition, civil penalties will provide redressability.

**INTERROGATORY NO. 3:**

Describe all measures undertaken by Declarants Crutcher, Sondak, Craig, Celano, Taylor, Scott, Hunt, Duchin, Thrailkill (and any other declarant CBD has asserted or may in the future assert provide it and its members standing and/or keeps CBD's remaining claims from being moot) to locate the type, amount, nature, and health effects of substances allegedly released during the *Deepwater Horizon* Incident, including information searches.

**CENTER'S RESPONSE:**

The Center objects to this Interrogatory as being irrelevant. The Center's standing declarations clearly lay out that its members attempted to obtain information about the chemicals released as part of the spill, but could not find that information. Without waiving that objection, the Center provides the following additional response as to those members that the Center intends to use for standing purposes:

- Allison Sondak: Ms. Sondak searched for information about the type, amount, nature, and health effects of substances released during the Incident in the newspapers, including "nola.com;" on governmental websites concerning the spill; using general internet searches; and on the Center's website.

- Gabriel Scott: Mr. Scott searched for information about the type, amount, nature, and health effects of substances released during the Incident in the newspapers, including "nola.com;" on governmental websites concerning the spill, including the EPA's website and "Restorethegulf.gov;" and by reviewing the Material Data Safety Sheets for crude oil. Mr. Scott also attempted to contact the local emergency planning commission for Orleans Parish on February 27, 2014, to obtain copies of any reports filed by BP. He was told there were no such reports, and that someone from the Parish would be getting back to Mr. Scott to confirm that no reports had been filed.

- Adam Keats: Mr. Keats searched for information about the type, amount, nature, and health effects of substances released during the Incident in the newspapers and on the internet.

- Catherine Craig: Ms. Craig searched for information about the type, amount, nature, and health effects of substances released during the Incident in the newspapers and in local news websites; on governmental websites concerning the spill, including the EPA's website, the CDC's website, and "Restorethegulf.gov;" and by reviewing the Center's own website.

**INTERROGATORY NO. 4:**

Identify the number of patients treated by Declarant David Thrasher who were exposed, or believed they were exposed, to each substance allegedly released during the *Deepwater Horizon* Incident, and which you allege were subject to EPCRA reporting.

**CENTER'S RESPONSE:**

The Center objects to Interrogatory No. 4 as being irrelevant. Dr. Thrasher's declaration does not state that he treated any patients who were exposed to contamination from the Incident, only that such information is generally useful in treating patients from a medical perspective.

CBD'S RESP. AND OBJS. TO BP DEFS' FIRST SET OF DISC. REQS.                                8

Without waiving this objection, the Center responds as follows: Dr. Thrasher does not believe he has treated any patients that were exposed, or believe they were exposed, to substances released during the Incident.

**INTERROGATORY NO. 5:**

For each patient included in the total identified in response to Interrogatory No. 4, identify and describe in detail: (a) the nature of the illness, condition, or injury claimed; (b) the approximate dates of treatment; (c) the information that was allegedly not available to Dr. Thrasher but was allegedly relevant to the person's treatment;; (d) how the illness, condition, or injury is fairly traceable to the absence of any EPCRA report BP allegedly was required to submit; (e) how the filing of any such EPCRA report would redress the illness, condition, or injury claimed; and (f) identify each chemical or substance that you allege was subject to EPCRA reporting and to which the patient was allegedly exposed.  In its response to this interrogatory, CBD may take appropriate steps to protect individuals' privacy, e.g., referring to each person as Patient A, Patient B, etc.

**CENTER'S RESPONSE:**

The Center objects to this Interrogatory as having at least six discrete subparts.  Judge Shushan's Order only allowed up to 10 interrogatories to be served, and BP represented that it would abide by that Order.  *See* Jan. 28, 2014 Letter from Andrew Langan to Judge Shushan, p. 2 (BP discovery would be served "on the same terms and timetable set forth in the Court's Order for discovery against BP.").  Including these subparts (and the additional subparts of other Interrogatories), BP has propounded discovery that goes well beyond the Court's Order.

Without waiving this objection, the Center responds as follows: there are no such patients.  *See* Response to Interrogatory No. 5, *supra*.

**INTERROGATORY NO. 6:**

CBD'S RESP. AND OBJS. TO BP DEFS' FIRST SET OF DISC. REQS.                                              9

For each release in excess of a reportable quantity which you allege that BP failed to report under EPCRA, identify and describe in detail: (a) where the release itself occurred; (b) the geographic areas which you contend were likely to be affected by the release; (c) the basis of such contentions; (d) the specific connection of Declarants Crutcher, Sondak, Craig, Celano, Taylor, Scott, Hunt, Duchin, Thrailkill (and any other declarant CBD has asserted or may in the future assert provide it and its members standing and/or keeps CBD's remaining claims from being moot) to those areas, the nature of their alleged injuries as fairly traceable to such areas, and how the filing of any such EPCRA report would redress their alleged injuries; and (e) who you contend were the Local Emergency Planning Committee and State Emergency Planning Commissions for such areas.

**CENTER'S RESPONSE:**

The Center objects to this Interrogatory as having at least seven discrete subparts. Judge Shushan's Order only allowed up to 10 interrogatories to be served, and BP represented that it would abide by that Order. *See* Jan. 28, 2014 Letter from Andrew Langan to Judge Shushan, p. 2 (BP discovery would be served "on the same terms and timetable set forth in the Court's Order for discovery against BP."). Including these subparts (and the additional subparts of other Interrogatories), BP has propounded discovery that goes well beyond the Court's Order.

In addition, the Center objects to this Interrogatory as requesting information for which it is BP's legal responsibility to determine and provide. The places of release, and the extent and effects of release are exactly the type of information that EPCRA requires and that BP has failed to provide under EPCRA. It is not the Center's obligation to do the job that BP was supposed to do.

Without waiving that objection, the Center responds as follows:

CBD'S RESP. AND OBJS. TO BP DEFS' FIRST SET OF DISC. REQS.          10

(a):   As alleged in the Amended Complaint, all releases of hazardous substances above EPCRA reportable quantities, as they concern the BP Defendants, originated from the Macondo Well through the Deepwater Horizon.

(b):   The geographical areas which may have been impacted by the releases include, but are not limited to, the ocean; the atmosphere and air in and around the Gulf of Mexico; the Gulf of Mexico; the shores, tidal lands, marshes, coastal wetlands, and coastlines of the Gulf of Mexico; the states of Alabama, Florida, Louisiana, Mississippi, and Texas.

(c):   Contentions raised in (a) and (b) are primarily based upon: widespread and commonly accepted knowledge that the Macondo Well leaked massive amounts of oil, methane, hydrocarbons, and other materials into the ocean; information and statements made by BP to the public and on BP's websites; Declaration of Daniel C. Snyder, ECF No. 1819-1; publicly available information from numerous sources, including restorethegulf.gov; and the National Commission on the BP Deepwater Horizon Oil Spill Report to the President.

(d):   The specific "connections" between the Center's standing declarants are specifically laid out in the Center's standing declarations, which have been provided to BP.  The Center fully incorporates the contents of those declarations in response to this subpart.  The Center objects to the remainder of this subpart for the same reasons articulated *supra*; namely, that the Fifth Circuit has already found that the Center has standing to pursue its EPCRA claims, that its members sustained an information injury by virtue of the fact that BP has not filed any EPCRA reports, that those members' injuries are directly traceable to BP's omissions, and that the injuries would be redressed by the filing of EPCRA reports.

(e):   There are at least five state emergency response commissions: one each for Alabama, Mississippi, Texas, Louisiana, and Florida.  Information about those commissions, including

their contact information is publicly available at: < http://www2.epa.gov/epcra-tier-i-and-tier-ii-reporting/state-emergency-response-commissions-contacts#al>.  There are dozens of local emergency response commissions for these areas.  The Center identifies some of the likely LEPCs as follows:

- Texas: Jefferson, Chambers, Galveston, Brazoria, Matagorda, Jackson, Calhoun, Aransas, Refugio, San Patricio, Nueces, Kleberg, Kenedy, Willacy, and Cameron.  The contact information for local emergency response commissions for these counties is publicly available at < https://www.dshs.state.tx.us/tiertwo/lepc.shtm>.

- Alabama: Mobile and Baldwin.  The contact information for Mobile County is publicly available at <http://www.mcema.net/AboutMCEMA/LocalEmergencyPlanningCommittee.aspx>.  The contact information for Baldwin County is publicly available at < http://www.co.baldwin.al.us/PageView.asp?edit_id=668>.

- Louisiana: Cameron, Vermillion, Iberia, St. Mary, Terrebonne, LaFourche, Jefferson, Plaquemines, St. Bernard, and Orleans.  The contact information for these commissions is available at <www.lsp.org/pdf/rtk_lepclist.pdf>.

- Mississippi: Hancock, Harrison, and Jackson.  The contact information for these commissions is available at <www.msema.org/wp-content/uploads/.../local_emergency_planning.pdf>.

- Florida: LEPC Districts 1, 2, 3, 5, 8, 9, and 11.  The contact information for these LEPCs is available at <http://www.floridadisaster.org/hazmat/LEPC/>.

**INTERROGATORY NO. 7:**

Identify each individual involved in gathering information for, compiling, and/or analyzing the information contained in Paragraphs 1, 2, 60, 61, 62, 65, 66 and 67 of the

CBD'S RESP. AND OBJS. TO BP DEFS' FIRST SET OF DISC. REQS.                12

Amended Complaint.

**CENTER'S RESPONSE:**

The Center objects to this Interrogatory as having numerous subparts, i.e., requesting information about different and potentially discrete issues in one omnibus question, that is improper.  Notwithstanding this objection, the Center presumes that reference to the "Amended Complaint" is to the Amended Complaint filed August 2, 2010, ECF No. 439.   The Center, furthermore, objects to this Interrogatory in its entirety.  The information sought is protected under the attorney work-product and/or attorney-client privilege.

**INTERROGATORY NO. 8:**

Identify and describe in detail the source(s) for the information contained in Paragraphs 1, 2, 60, 61, 62, 65, 66 and 67 of the Amended Complaint, including information searches.

**CENTER'S RESPONSE:**

The Center objects to this Interrogatory as having numerous subparts, i.e., requesting information about different and potentially discrete issues in one omnibus question, that is improper.  Notwithstanding this objection, the Center presumes that reference to the "Amended Complaint" is to the Amended Complaint filed August 2, 2010, ECF No. 439.   The Center objects to this Interrogatory in its entirety.  The information sought is protected under the attorney work-product and/or attorney-client privilege.

**INTERROGATORY NO. 9:**

For any of the Declarants Crutcher, Sondak, Craig, Celano, Taylor, Scott, Hunt, Duchin, Thrailkill (and any other declarant CBD has asserted or may in the future assert provide it and its members standing and/or keeps CBD's remaining claims from being moot) alleging injuries involving an aversion to the use of Gulf natural resources including, for instance, swimming in

Gulf waters, recreating on Gulf beaches, or consuming Gulf fish or shellfish, explain why: (a) government reopenings of fishing areas; (b) the resumption of Gulf tourism and recreation activities by thousands of individual residents and individuals since the well was capped on July 15, 2010 and permanently sealed on September 19, 2010; and (c) other remedial Response Activities do not independently preclude an inference of future injury.

**CENTER'S RESPONSE:**

The Center objects to this Interrogatory as having at least three discrete subparts.  Judge Shushan's Order only allowed up to 10 interrogatories to be served, and BP represented that it would abide by that Order.  *See* Jan. 28, 2014 Letter from Andrew Langan to Judge Shushan, p. 2 (BP discovery would be served "on the same terms and timetable set forth in the Court's Order for discovery against BP.").  Including these subparts (and the additional subparts of other Interrogatories), BP has propounded discovery that goes well beyond the Court's Order.

The Center objects to this Interrogatory as being completely irrelevant.  BP misunderstands the nature of the injuries sustained.  As the Fifth Circuit described, the injury under EPCRA is *informational* in nature.  BP's failure to provide the required EPCRA reports gives rise to the injuries complained of, and the filing of those reports will redress the Center's members' injuries.  Preclusion of "an inference of future injury" is only possible if BP files the requisite reports under EPCRA.

**INTERROGATORY NO. 10:**

For each of the Declarants Crutcher, Sondak, Craig, Celano, Taylor, Scott, Hunt, Duchin, Thrailkill (and any other declarant CBD has asserted or may in the future assert provide it and its members standing and/or keeps CBD's remaining claims from being moot), identify and describe in detail all facts that support your prior assertions that CBD's EPCRA claims as

premised on purported injury to its individual members/Declarants is not moot and that support any continued assertion CBD may make that its EPCRA claims are not moot.

**CENTER'S RESPONSE:**

Until such time that BP files the requisite reports under EPCRA, the Center's members' injuries are not moot. The reports have not yet been filed, and therefore an ongoing violation of EPCRA still exists.

**REQUEST FOR ADMISSION NO. 1:**

Admit that each of the eleven categories of information specified under 40 C.F.R. § 355.40 was submitted in writing by BP to the United States Coast Guard and/or the Minerals Management Service and/or any government agency operating in conjunction with the Unified Command during the Response Activities for each alleged release in excess of a reportable quantity which you allege BP failed to report under EPCRA.

**CENTER'S RESPONSE:**

The Center cannot admit or deny this request. After a reasonable inquiry, the Center lacks the requisite knowledge and information as to whether BP submitted in writing to "the United States Coast Guard and/or the Minerals Management Service and/or any government agency operating in conjunction with the Unified Command during the Response Activities" the information specified by 40 C.F.R. § 355.40, "for each alleged release in excess of a reportable quantity[.]" The Center is aware that BP submitted substantial information to Unified Command as part of the Response Activities, which may have included some or all of the information identified in 40 C.F.R. § 355.40, but is not in possession of that information. If that information has indeed been submitted, then the Center requests that BP disclose to it the documents BP provided to the identified federal agencies.

**REQUEST FOR ADMISSION NO. 2:**

Admit that that each of the following substances, to the extent you contend (including in Paragraphs 61 and 65 of the Amended Complaint) that a reportable quantity of such substance was released in connection with the Deepwater Horizon Incident, is a natural component of crude oil: benzene; toluene; polynuclear aromatic hydrocarbons (including phenanthrene, benzanthracenes, benzopyrenes, benzofluoranthene, chrysenes, dibenzanthracenes, indenopyrenes), ethylbenzene; arsenic; nickel; fluoranthene; haloethers; halomethanes; methane; benz(a) anthracene; benzo(b) fluoranthene; benzo(k) fluoranthene; benzo(e) pyrene; benzo(a) pyrene; indeno(1,2,3) cd pyrene; dibenzo(a, h) anthracene; naphthalene; chrysene; cadmium; copper; mercury.

**CENTER'S RESPONSE:**

The Center neither admits nor denies this request based on the request being compound and vague and ambiguous. Notwithstanding this objection, the Center admits that the substances listed above are natural components of crude oil but not that the crude oil was the only source of such substances.

**REQUEST FOR PRODUCTION NO. 1:**

All documents considered, used or relied upon relating to the allegations in Paragraphs 1, 2, 60, 61, 62, 65, 66 and 67 of the Amended Complaint.

**CENTER'S RESPONSE:**

The Center objects to this Request for Production in its entirety. All documents "considered, used, or relied upon" are protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

**REQUEST FOR PRODUCTION NO. 2:**

All documents referring or relating to measures undertaken by any of Declarants Crutcher, Sondak, Craig, Celano, Taylor, Scott, Hunt, Duchin, Thrailkill (and any other declarant CBD has

asserted or may in the future assert provide it and its members standing and/or keeps CBD's remaining claims from being moot) to locate the type, amount, nature and health effects of substances allegedly released during the Deepwater Horizon Incident and Response Activities, including information searches.

**CENTER'S RESPONSE:**

There are no responsive documents. The Center will supplement its response to this request if responsive documents are discovered.

**REQUEST FOR PRODUCTION NO. 3:**

All documents referring or relating to the information concerning the Deepwater Horizon Incident or Response Activities that allegedly was not available to Dr. Thrasher but that was relevant to his treatment of patients; how Dr. Thrasher sought to obtain the relevant information; or how the absence of the information sought allegedly affected his treatment decisions.

**CENTER'S RESPONSE:**

There are no responsive documents. The Center will supplement its response to this request if responsive documents are discovered.

**REQUEST FOR PRODUCTION NO. 4:**

All documents referring or relating to your answers to the interrogatories propounded herein.

**CENTER'S RESPONSE:**

The Center objects to this Request for Production as being overly broad and unduly burdensome. There is no time or content restriction as to this Request. Without waiving these objections, the Center responds as follows: there are no responsive documents that are not otherwise protected from disclosure as attorney-client privileged communications or under the attorney work-product doctrine. The Center will supplement its response to this request if responsive, non-privileged documents come to light.

**REQUEST FOR PRODUCTION NO. 5:**

       To the extent you deny Request for Admission No. 2, all documents supporting your denial.

**CENTER'S RESPONSE:**

       No response is warranted.

Verification of these responses will be forthcoming.

DATED This 3rd Day of March, 2014.

                        s/Charles M. Tebbutt  
                        Charles M. Tebbutt  
                        Daniel C. Snyder  
                        Law Offices of Charles M. Tebbutt, P.C.  
                        941 Lawrence St  
                        Eugene, OR 97405  
                        Tel: (541) 344-3505  
                        Fax: (541) 344-3516  
                        charlie.tebbuttlaw@gmail.com

                        Marc Fink  
                        Center for Biological Diversity  
                        209 East 7th Street  
                        Duluth, MN  55805  
                        Tel:  (218) 525-3884  
                        Fax: (218) 582-3884  
                        mfink@biologicaldiversity.org

                        Damon A. Kirin, LSBA 24729  
                        Diliberto & Kirin, L.L.C.  
                        3636 S. I 10 Service Road, W., Ste 210  
                        Metairie, LA  70001  
                        Tel: (504) 828-1600  
                        Fax: (504) 828-1555  
                        kirin@attorneys-louisiana.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 3rd Day of March, 2014.

                                                s/ Daniel C. Snyder
                                                Daniel C. Snyder
                                                Law Offices of Charles M. Tebbutt, P.C.