U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   APR 18 2014

WILLIAM W. BLEVINS
CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA (New Orleans)**

**JOSEPH CANNISTRA,**
　　　Plaintiff,

vs.

Case No:  **2:12-cv-03048-CJB-SS**

Lead Case No: **2:10-md-02179-CJB-SS**
In Re: Oil Spill by the Oil Rig "Deepwater
Horizon" in the Gulf of Mexico
on April 20, 2010

**TRANSOCEAN HOLDINGS, L.L.C.;**
**TRANSOCEAN OFFSHORE**
**DEEPWATER DRILLING, INC.;**
**TRANSOCEAN DEEPWATER, INC.;**
**TRANSOCEAN, L.T.D.; BP AMERICA, INC.;**
**BP, PLC; BP EXPLORATION AND**
**PRODUCTION, INC.; BP PRODUCTS**
**NORTH AMERICA, INC.; HALLIBURTON**
**ENERGY SERVICES, INC.; and**
CAMERON INTERNATIONAL CORPORATION
f/k/a Cooper-Cameron Corporation
　　　Defendants.
_____/

**Section " J "**

**JURY TRIAL DEMANDED**

TENDERED FOR FILING

APR 18 2014

**FIRST AMENDED COMPLAINT** U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

COMES NOW, JOSEPH CANNISTRA, filing in his own behalf, and sues Transocean

Holdings, L.L.C.; Transocean Offshore Deepwater Drilling, Inc.; Transocean Deepwater, Inc.;

Transocean, L.T.D.; BP America, Inc.; BP, PLC; BP Exploration and Production, Inc.; BP

Products North America, Inc.; Halliburton Energy Services, Inc.; and Cameron International

Corporation, Inc. f/k/a Cooper-Cameron Corporation, Inc and alleges:

**INTRODUCTION**

1.　　　This is an action by an individual Plaintiff who owned and operated a restaurant

prior to and after the April 20, 2010 incident known as the Oil Spill by the Oil Rig "Deepwater

Fee _____
Process _____
X  Dktd _____
X  CtRmDep _____
Doc. No _____

Horizon" in the Gulf of Mexico. This matter was originally filed December 11, 2012 in the Middle District of Florida, Tampa Division as Case No: 8:2012-cv-02791 the complaint was styled as "Action For Economic Loss Settlement". The case was transferred on January 6, 2013 to the Eastern District of Louisiana as Case No: 2:12-cv-03048-CJB-SS and assigned to the lead case involving the  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico filed as Lead Case No: 2:10-md-02178-CJB-SS.  Plaintiff has opted out of any class settlement and is bringing this action on his own behalf.

2.      As a result of the crude of over 200 million gallons of crude oil from the Macondo Well, MC-252 which resulted in the worst maritime disaster in United States history Plaintiff has suffered economic damages which are the subject matter of this action.

3.      Plaintiff has suffered economic injury, damage and losses as a result of the oil spill caused by Defendants.


**PARTIES**

4.      Plaintiff, Joseph Cannistra, an individual, whose address is 812 Orange Avenue East, Tampa, Florida 33613 was conducting business as The Gathering Restaurant, in Largo, Florida on April 20, 2010 as a sole proprietor and owner. The address of the restaurant was 14100 Walsingham Road, Largo, Florida,       located on the Gulf Coast area in Pinellas County, Florida.

5.      Defendant, Transocean Holdings, L.L.C., is a foreign limited liability company whose principal place of business in the United States is 4 Greenway Plaza, Suite 700, Houston, TX 77046.

6.     Defendant, Transocean Offshore Deepwater Drilling, Inc., is a foreign corporation whose principal place of business in the United States is 4 Greenway Plaza, Houston, TX 77046.

7.     Defendant, Transocean Deepwater, Inc., is a foreign corporation whose principal place of business in the United States is 4 Greenway Plaza, Houston, TX 77046.

8.     Defendant, Transocean, L.T.D., is a foreign limited company whose principal place of business in the United States is 4 Greenway Plaza, Houston, TX 77046.

9.     Defendant, BP, P.L.C., is a foreign corporation

10.     Defendant, BP America, is a foreign corporation

11.     Defendant, BP Exploration and Production, Inc., is a foreign corporation registered in the State of Florida and whose principal address is 501 Westlake Park Blvd, Houston, TX 77079 and whose registered agent for Florida is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

12.     Defendant, BP Products North America, Inc., is a foreign corporation registered in the State of Florida and whose principal address is 150 West Warrenville Road, Naperville, IL 60563 and whose registered agent for Florida is The Prentice-Hall Corporation Systems, Inc., 1201 Hays Street, Tallahassee, FL 32301.

13.     Defendant, Halliburton Energy Services, Inc., is a foreign corporation registered in the State of Florida and whose principal address is 3000 N Sam Houston Pkwy East, Houston, TX 77032 and whose registered agent is Capital Corporate Services, Inc., 155 Office Plaza Drive, Suite A, Tallahassee, FL 32301.

14.     Defendant, Cameron International Corporation, is a foreign corporation registered in the State of Florida and whose principal address is 1333 West Loop South, Suite 1700, County

Harris, Houston, TX 77027 and whose registered agent is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324

## JURISDICTION AND VENUE

15.     Jurisdiction exists before this Court pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime Jurisdiction."

16.     In addition, this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1333, and the Admiralty Extension Act, 46 U.S.C. $ 30101 with pendant claims under the Jones Act, 46 U.S.C. §688.

17.     The claims presented herein are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Plaintiff hereby designates this case as an admiralty or maritime case.

18.     This Court has personal jurisdiction over BP Exploration and Production, Inc., BP Products North America, Inc., BP America, Halliburton Energy Services, Inc. and Cameron International Corporation because each is registered to do business in Florida and Louisiana, does business in Florida and Louisiana, and has a registered agent in Florida and Louisiana.

19.     This Court may exercise personal jurisdiction over BP P.L.C., BP Exploration And Production, Inc., BP Products North America, Inc., Transocean Offshore, Deepwater Drilling, Inc., Transocean Deepwater, Inc., Halliburton Energy Services, Inc. and Cameron International Corporation pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure, the federal long-arm jurisdiction provision, because claims in this action arise under federal law, the

exercise of jurisdiction over BP P.L.C., BP Exploration And Production, Inc., BP Products North America, Inc., Transocean Offshore, Deepwater Drilling, Inc., Transocean Deepwater, Inc., Halliburton Energy Services, Inc. and Cameron International Corporation is consistent with the United States Constitution and laws.

20.    This Court also has jurisdiction over BP P.L.C., BP Exploration And Production, Inc., BP Products North America, Inc., Transocean Offshore, Deepwater Drilling, Inc., Transocean Deepwater, Inc., Halliburton Energy Services, Inc. and Cameron International Corporation pursuant to Florida's long-arm statute (Fl.Stat.Ann. §48.193 and Louisiana's long-arm statute (La. Rev. Stat. Ann. 8 13:320 1 (B)), in combination with Rule 4(k)(l)(A) of the Federal Rules of Civil Procedure. Plaintiffs' causes of action arise out of wrongful conduct committed by BP P.L.C., BP Exploration And Production, Inc., BP Products North America, Inc., Transocean Offshore, Deepwater Drilling, Inc., Transocean Deepwater, Inc., Halliburton Energy Services, Inc. and Cameron International Corporation directly or indirectly by its agents, which caused injury or damage in Florida and Louisiana by an offense or quasi-offense committed through an act or omission outside of Florida and Louisiana. These acts or omissions took place both before the blowout resulting in the oil spill, which is described more fully below, and in the negligent conduct of BP P.L.C., BP Exploration And Production, Inc., BP Products North America, Inc., Transocean Offshore, Deepwater Drilling, Inc., Transocean Deepwater, Inc., Halliburton Energy Services, Inc. and Cameron International Corporation after the blowout in attempting to contain the oil spill. BP P.L.C.,BP Exploration And Production, Inc., BP Products North America, Inc., Transocean Offshore, Deepwater Drilling, Inc., Transocean Deepwater, Inc., Halliburton Energy Services, Inc. and Cameron International Corporation

regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in Florida and Louisiana. BP P.L.C., BP Exploration And Production, Inc., BP Products North America, Inc., Transocean Offshore, Deepwater Drilling, Inc., Transocean Deepwater, Inc., Halliburton Energy Services, Inc. and Cameron International Corporation has had continuous and systematic contacts with Florida and Louisiana (and with the United States more generally).

21.     In addition, this Court also has personal jurisdiction over BP P.L.C. under agency principles because BP P.L.C.'s agents, BP America, BP Products North America, Inc. and BP Exploration and Production, Inc., do business in Florida and Louisiana. In BP P.L.C. Annual Report for 2009, in which it presents a consolidated financial statement that includes BP America and BP Exploration, BP P.L.C. states that it "controls both BP America and BP Exploration, among other subsidiaries, meaning that it has "the power to govern the financial and operating policies of the [subsidiary] so as to obtain benefit from its activities ..."

22.     BP P.L.C.'s direct, joint and/or assumed responsibility and/or liability for safety and well control, both before and/or after the explosions and blowout on April 20,2010, is further evidenced by the announcement of the Macando Project on the BP website hosted and copyrighted by BP P.L.C., the publication of information concerning the casualty and spill on the BP website hosted and copyrighted by BP, the express and/or implied acceptance of responsibility by officers of BP P.L.C., the presence (upon information and belief) of a BP P.L.C. officer or employee on the Deepwater Horizon for the celebration that occurred shortly before the explosions and fire, the direct participation of BP P.L.C. employees in the post-casualty investigation, the direct participation of BP P.L.C. officers and employees in the governmental

post-casualty investigations, the direct participation of BP P.L.C. officers and employees in the post-casualty well-control efforts, and the direct participation of BP P.L.C. in the establishment and/or funding of the Escrow Fund and/or Gulf Coast Claims Facility.

23.     Venue is appropriate in this District under 28 U.S.C. §1391, because the events or omissions giving rise to the claims asserted herein occurred in this District. Venue is also appropriate in this District consistent with 28 U.S.C. §1407 and the Transfer Order of the Judicial Panel on Multidistrict Litigation, *see In re Oil Spill by the Oil Rig "Deepwater Horizon " in the Gulf of Mexico, on April 20, 201 0,* 731 F.Supp. 2d 1352 (J.P.M.L. 2010), as well as this Court's Pretrial Order No. 20 (Rec. Doc. No. 904), which allows plaintiffs to directly file complaints arising out of the *Deepwater Horizon* incident in this District.

## FACTUAL ALLEGATIONS

24.     Transocean Holdings, Transocean Offshore, and Transocean Deepwater (collectively "Transocean") are the owners and/or operators of the Deepwater Horizon, a semi-submersible mobile drilling rig, which was performing completion operations for BP, BP Exploration, BP America, and BP Products on the outer Continental Shelf, at the site from which the oil spill now originates.

25.     BP, BP Exploration, BP America, and BP Products (collectively "BP")are the holders of a lease granted by the Minerals Management Service that allows BP to drill for oil and perform oil production-related operations at the site of the oil spill, and on April 20,2010 operated the oil well that is the source of the oil spill.

26.     Upon information and belief, Cameron manufactured and/or supplied the

Deepwater Horizon's blow-out preventers ("BOP'S") that failed to operate upon the explosion, which should have prevented the oil spill. The BOP'S were defective because they failed to operate as intended.

27.     Halliburton was engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed these duties, increasing the pressure at the well and contributing to the fire, explosion and resulting oil spill.

28.     At all times material hereto, the Deepwater Horizon was owned, manned, possessed, managed, controlled, chartered and/or operated by Transocean and/or BP.

29.     Transocean, or its predecessors, is the designer of the Deepwater Horizon.

30.     The fire and explosion on the Deepwater Horizon, its sinking and the resulting oil spill were caused by the combined and concurring negligence of Defendants, which renders them liable, jointly and severally, to Plaintiff for all Plaintiff's damages.

31.     Defendants knew of the dangers associated with deep water drilling and failed to take appropriate measures to prevent damage to Plaintiff, Florida's and the Gulf of Mexico's marine and coastal environments, where Plaintiff works, owns property and businesses and earns a living.

32.     The spilled oil has caused, and will continue in the future to cause, a dangerous environmental contamination of the Gulf of Mexico and its shorelines, substantially damaging the Gulf or Mexico's natural resources.

33.     The oil spill and the contamination have caused, and will continue to cause, loss of revenue to persons and businesses who are being prevented from using the Gulf of Mexico, including but not limited to the loss of income from the operation of restaurants.

34.   There are many other potential effects from the oil spill that have not yet become known, and Plaintiffs reserve the right to amend this Complaint once additional information becomes available.

35.   Plaintiff owned and operated a restaurant in Pinellas County, Florida known as The Gathering Restaurant.

36.   Plaintiff purchased the restaurant in 2009.

37.   The restaurant had been in business for approximately thirty years prior to April 20, 2010.

38.   After April 20, 2010, and as a direct result of the oil spill incident described above, Plaintiff was forced to close the restaurant due to economic losses and loss of tourism which was a large part of the restaurant customer base.

39.   On or about March 10, 2011, Plaintiff received an interim payment from the Gulf Coast Claims Facility in the amount of $36,767.94. Claim number 1101464.

40.   Plaintiff subsequently submitted applications for additional interim payments but has neither received any further funds. Upon communicating with the Gulf Coast Claims Facility Plaintiff has been unable to make any further progress or been able to gather any additional information.  The Gulf Coast Claims Facility continually makes redundant requests for the same information but fails to grant status or provide other information.

41.   The amount received is wholly inadequate to compensate Plaintiff for the damages caused by Defendants.

42.   Plaintiff continues to suffer damages as a result of inadequate compensation.

43.   Plaintiff was forced to bring this lawsuit to avoid being barred from recovery due

to limitations of time for suits against Defendants.

44.     Defendants have acted in bad faith in the settlement of claims for damages and economic losses caused by Defendants.

45.     Plaintiff has made every reasonable attempt to mitigate the damages and losses caused by Plaintiffs.

## COUNT I - NEGLIGENCE

46.     Plaintiff incorporates and re-alleges paragraphs 1 through 45 above.

47.     The fire, explosion, and resulting oil spill were caused by the concurrent negligence of the Defendants.

48.     The fire, explosion, and resulting oil spill were caused by the joint negligence and fault of Defendants in the following non-elusive particulars:

A.     Failing toe properly operate the Deepwater Horizon Oil Rig;

B.     By operating the Deepwater Horizon in such a manner that a fire and explosion occurred on board, causing it to sink and resulting in and oil spill; which has affected the Gulf of Mexico beaches including those along the Florida West Coast;

C.     Failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose;

D.     Acting in a careless and negligent manner without due regard for the safety of others;

E.     Failing to promulgate, implement, and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon which, if they had been so

promulgated, implemented, and enforced, would have averted the fire, explosion, sinking

and oil spill;

      F.      Operating the Deepwater Horizon with untrained or unlicensed personnel;

      G.      Failing to take appropriate action to avoid or mitigate the accident;

      H.      Negligent implementation of policies and procedures to safely conduct

offshore operations in the Gulf of Mexico;

      I.      Failing to ascertain that the D3eepwater Horizon and its equipment were

free from defects or were in proper working order;

      J.      Failure to timely bring the oil release under control;

      K.      Failure to provide appropriate accident prevention equipment;

      L.      Failure to properly and responsibly react to danger signs;

      M.      Providing blowout prevention equipment that was defective, insufficient,

improperly maintained or improperly operated;

      N.      Improperly conducting well and well cap cementing operations;

      O.      Failure to properly design, equip or maintain the Deepwater Horizon Oil

Rig;

      P.      Failure to install or deploy and acoustic switch to stop the flow of oil in

the event of a failure; and,

      Q.      Such other acts of negligence and omissions as will be shown at the trial of

this action.

      49.     The injuries to Plaintiff were also caused or aggravated by the fact that

Defendants negligently failed to take necessary actions to mitigate the danger associated with

their operations.

50.     Plaintiff has been damaged by his inability, among other things, to operate his restaurants as a direct result of the oil spill and fear of the public of the deleterious effects of the spill.

51.     Plaintiff is entitled to a judgment finding Defendants liable to Plaintiff for damages suffered as a result of Defendants' negligence and awarding Plaintiff adequate compensation therefore in an amount determined by the trier of fact.


## COUNT II - WANTONNESS

52.     Plaintiff incorporates and re-alleges paragraphs 1 through 45 above.

53.     The fire, explosion, and resulting oil spill were caused by the concurrent negligence of the Defendants.

54.     The fire, explosion, and resulting oil spill were caused by the joint negligence and fault of Defendants in the following non-elusive particulars:

     A.     Failing toe properly operate the Deepwater Horizon Oil Rig;

     B.     By operating the Deepwater Horizon in such a manner that a fire and explosion occurred on board, causing it to sink and resulting in and oil spill; which has affected the Gulf of Mexico beaches including those along the Florida West Coast;

     C.     Failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose;

     D.     Acting in a careless and negligent manner without due regard for the safety of others;

E.     Failing to promulgate, implement, and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon which, if they had been so promulgated, implemented, and enforced, would have averted the fire, explosion, sinking and oil spill;

F.     Operating the Deepwater Horizon with untrained or unlicensed personnel;

G.     Failing to take appropriate action to avoid or mitigate the accident;

H.     Negligent implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

I.     Failing to ascertain that the D eepwater Horizon and its equipment were free from defects or were in proper working order;

J.     Failure to timely bring the oil release under control;

K.     Failure to provide appropriate accident prevention equipment;

L.     Failure to properly and responsibly react to danger signs;

M.     Providing blowout prevention equipment that was defective, insufficient, improperly maintained or improperly operated;

N.     Improperly conducting well and well cap cementing operations;

O.     Failure to properly design, equip or maintain the Deepwater Horizon Oil Rig;

P.     Failure to install or deploy and acoustic switch to stop the flow of oil in the event of a failure; and,

Q.     Such other acts of wantonness and omissions as will be shown at the trial of this action; and,

R.     Acting in a manner that justifies imposition of punitive damages.

55.     The injuries to Plaintiff were also caused or aggravated by the fact that Defendants wantonly failed to take necessary actions to mitigate the damage associated with their operations.

56.     Defendants' intentional actions or inactions which caused the oil spill were directly caused injury to Plaintiff.

57.     Defendants' actions or inactions which caused to oil spill were reasonably foreseeable and such wanton conduct was conducted with disregard to rights of others and their property.

58.     Plaintiff has been damaged by his inability, among other things, to operate his restaurants as a direct result of the oil spill and fear of the public of the deleterious effects of the spill.

59.     Plaintiff is entitled to a judgment finding Defendants liable to Plaintiff for damages suffered as a result of Defendants' negligence and awarding Plaintiff adequate compensation therefore in an amount determined by the trier of fact.


## COUNT III - NUISANCE

60.     Plaintiff incorporates and re-alleges paragraphs 1 through 45, 48 and 54 above.

61.     The actions of Defendants, as alleged resulted in an invasion by a substances containing oil and other pollutants that interfered and continues to interfere with Plaintiff's right to enjoy his property and caused hurt, inconvenience, and damages to Plaintiff.

62.     The nuisance created by Defendants caused special damages to Plaintiff in which

the public does not participate.

.      63.     The injury and damages to Plaintiff were proximately caused by the nuisance,

specifically, the oil spill and other pollutants resulting from the Defendants' actions and failure of

duty.

64.     Plaintiff is entitled to a judgment finding Defendants liable to Plaintiff for

damages suffered as a result of Defendants' nuisance and awarding Plaintiff adequate

compensation therefore in an amount to be determined by the trier or fact.


## COUNT IV - STRICT LIABILITY

65.     Plaintiff incorporates and re-alleges paragraphs 1 through 45, 48 and 54 above.

66.     The actions and activities of Defendants as alleged and described above,

including, but not limited to, drilling and transporting oil and other pollutants in the Gulf of

Mexico, constitutes an abnormally dangerous and ultra hazardous activity that carries with it a

high degree of risk of harm to individuals, land or chattels or others.

67.     The injuries and damages suffered by Plaintiff were the kind of harm, the

possibility of which makes the Defendants' activities abnormally dangerous or ultra hazardous

activities.

68.     The alleged and above described injuries and damages to the Plaintiff were

proximately caused by said abnormally dangerous or ultra hazardous activity.

69.     Plaintiff is entitled to a judgment finding Defendants liable to Plaintiff for

damages suffered as a result of Defendants' abnormally dangerous or ultra hazardous activity and

Plaintiff is entitled to an award adequately compensation in an amount determined by the trier of

fact.

## COUNT V - OIL POLLUTION ACT
### (33 U.S.C. §2701, et.seq.)

70.     Plaintiff incorporates and re-alleges paragraphs 1 through 45, 48 and 54 above.

71.     The Oil Pollution Act, 33 U.S.C. §2701, et seq. (the "OPA"), imposes liability

upon a "responsible party for a . . . vessel or a facility from which oil is discharged . . . into or

upon navigable waters or adjoining shorelines" for the damages that result from such incident as

well as removal costs. 33 U.S.C. §2702.

72.     The Coast Guard has named BP as the responsible party for the down drill hole

release of oil; thus, BP is strictly liable pursuant to Section 2702 of the OPA for all the damages

resulting from the Deepwater Horizon Incident.

73.     Defendants are not entitled to limit their liability under Section 2704(a) of the

OPA because the Deepwater Horizon Incident was proximately caused by their gross negligence,

willful misconduct, or violation of applicable safety, construction or operating regulations. 33

U.S.C. §2704(c).

74.     Moreover, in its "Statement of BP Exploration & Production Inc. Re Applicability

of Limitation of Liability Under Oil Pollution Act of 1990," filed on October 19, 2010, BP

waived the statutory limitation on liability under the OPA.

75.     As a result of the Deepwater Horizon Incident, Plaintiffs have not been able to use

natural resources (air and water, and potentially wetlands and other areas and spaces that have

and/or may become contaminated by the spilled oil), and they are entitled to recover from

Defendants for such damages in amounts to be determined by the trier of fact, in addition to the damages as set forth below.

76. As a result of the Deepwater Horizon Incident, Plaintiffs are entitled to damages pursuant to Section 2702(b)(2)(B), which provides for recovery of damages to real or personal property, including "[D]amages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property, including the diminution in the value of their property."

77. As a result of the Deepwater Horizon Incident, Plaintiffs are entitled to damages pursuant to Section 2702(b)(2)(C), which provides for recovery for "[D]amages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources."

78. As a result of the Deepwater Horizon Incident, Plaintiffs are entitled to damages pursuant to Section 2702(b)(2)(E), which provides for "[D]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant."

79. To the extent required by law, and/or by consent or stipulation by BP, Plaintiffs have satisfied, or will have satisfied, all of the administrative requirements of 33 U.S.C. §2713(a) and (b), as to each and all defendants, by the submission of their claims to the Gulf Coast Claims Facility (the "GCCF") and/or BP and/or its agents or designees.

80. In its "Statement Of BP Exploration & Production Inc. Re Applicability Of Limitation Of Liability Under Oil Pollution Act of 1990" filed on October 19, 2010, BP waived

Page 17 of 18

the statutory limitation on liability under the OPA.

## **GENERAL PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally as follows:

        A.       Economic and compensatory damages in amounts to be determined at trial or settlement;

        B.       Punitive damages;

        C.       Pre-judgment and post-judgment interest at the maximum rate allowable by law; and,

        D.       Any other relief that this Honorable Court deems just and appropriate.

I HEREBY CERTIFY that the above facts are true and correct to my best knowledge and belief.

Respectfully Submitted

Joseph Cannistra, Pro Se
812 Orange Ave East
Tampa, Florida 33613
(813) 442-5005 Home Telephone
(813) 403-8587 Cellular Telephone
email: joe7street@yahoo.com

# PRIORITY
## ★ MAIL ★
# EXPRESS™

WRITE FIRMLY TO MAKE ALL COPIES LEGIBLE.

CUSTOMER USE ONLY

FROM: (PLEASE PRINT)                PHONE (     )

PAYMENT BY ACCOUNT (if applicable)

DELIVERY OPTIONS (Customer Use Only)

☐ SIGNATURE REQUIRED

TO: (PLEASE PRINT)                PHONE (     )

ZIP + 4® (U.S. ADDRESSES ONLY)

ORIGIN (POSTAL SERVICE USE ONLY)

☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

**UNITED STATES POSTAL SERVICE ®**

**PRIORITY ★ MAIL ★ EXPRESS™**

E F 0 8 1 4 1 0 8 1 1 U S

DELIVERY (POSTAL SERVICE USE ONLY)

LABEL 11-F, JANUARY 2014   PSN 7690-02-000-9996

3-ADDRESSEE COPY

**UNITED STATES POSTAL SERVICE.**

$19.99
0007981421

MOWU
USPS
3630

007

AL USE

ect International details.

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may