UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J<br><br>JUDGE BARBIER |
| **THIS PLEADING APPLIES TO:**<br>No. 12-311 | * * * | MAG. JUDGE SHUSHAN<br><br>**JURY TRIAL DEMANDED** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**CAMERON'S REPLY IN FURTHER SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS CLAIMS
FOR BREACH OF CONTRACT, INDEMNITY, AND DEFENSE EXPENSES**

**I.   LIBERTY'S "OTHER INSURANCE" DEFENSE SHOULD BE REJECTED AS A MATTER OF LAW.**

In its opposition brief, Liberty does not deny that Cameron suffered a loss covered by the Liberty Policy when it settled with BP.  Liberty also does not deny that Transocean had refused to pay, and was not paying, Cameron's loss.  Nevertheless, Liberty continues to insist (although it is no longer its central argument) that its payment obligation is excused by its "Other Insurance" clause—even though Cameron had no "other insurance" that "applies" to its loss when Liberty's payment obligation came due.  Liberty is wrong as a matter of law.

**A.   Cameron Did Not Have Any "Other Insurance" That "Applies" To Cameron's Loss When It Settled With BP.**

When Liberty was seeking judgment on the pleadings, after thorough briefing and argument, this Court held that the "Other Insurance" clause is susceptible to "two reasonable interpretations"—one of which affords coverage to Cameron because "Transocean's refusal to provide indemnity would mean that there is no 'other insurance' that 'applies' to Cameron's loss." (Order & Reasons at 20, Aug. 16, 2012, Dkt. 7129.)  Now, recognizing that this decision is

dispositive, Liberty tries to take a second bite at the apple, arguing that it has "the only reasonable logical interpretation under the facts here where Cameron transferred away its indemnity rights." (Liberty Opp. at 2.)  Liberty's argument should be rejected.

As an initial matter, no reason exists for the Court to revisit whether Cameron's interpretation of the term "applies" is reasonable.  This issue was decided almost two years ago after full briefing and argument and Liberty should not be permitted to relitigate it now.  In fact, in support of its own motion for partial summary judgment, Liberty affirmatively asserts as an uncontested material fact that the Court has found the "Other Insurance" clause is "subject to two reasonable interpretations."  (Dkt. 12578-15 at 4, Stmt. No. 14.)

Liberty's proffered justification for reopening this issue is without merit.  Liberty asserts that its interpretation is the only "reasonable logical interpretation" because "Cameron transferred away its indemnity rights." (Liberty Opp. at 2)  Leaving aside that Cameron expressly preserved Liberty's subrogation rights, transferring contractual indemnity claims has nothing to do with whether Cameron has "other insurance" that "applies" to its loss.  This is not a question of whether the "net amount" owed by Liberty has been changed.  Rather, the issue is whether Cameron had a source of other insurance that "applies" to an admittedly covered loss when that source denied any obligation to pay.

In addition, Liberty does not explain why its interpretation—that "applies" means "might potentially apply"—is the only reasonable interpretation.  The words "might" and "potentially" do not even appear in the provision, and courts should not add language under the guise of interpretation. *See Gamma Grp., Inc. v. Transatlantic Reinsurance Co.*, 242 S.W.3d 203, 212 (Tex. Ct. App. 2007).  Liberty's interpretation also renders the Liberty Policy illusory, leaving an unintended $50 million gap in Cameron's insurance tower for blowouts—the very risk that

2

Cameron sought to insure. An interpretation of a policy provision that leads to such an absurd result should be rejected. *See Progressive Cnty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). In sum, Liberty's interpretation is not reasonable—let alone the only reasonable interpretation as Liberty argues—and should be rejected.

By contrast, under Cameron's interpretation, the Court need not insert the words "actually and presently" before "applies"; "applies" is already in the present tense. Cameron's interpretation, unlike Liberty's, is also faithful to the purpose of "other insurance" provisions: preventing policyholders from receiving double recovery. (Cameron SJ Br. at 10-11, 13.) It is also consistent with cases that have addressed "other insurance" clauses under similar circumstances. *See Rhone-Poulenc, Inc. v. Int'l Ins. Co.*, 1996 WL 328011, at *13 (N.D. Ill. June 11, 1996) ("[T]he only reasonable construction of [the 'other insurance' clause] is that it may be applied by [the insurer] as a shield against [the insured's] claim, but only if other carriers have acknowledged coverage"). And it is an interpretation that two of Cameron's other insurers endorsed even though they could have taken the same position as Liberty. (Cameron SJ Br. at 16.) Even Liberty's witnesses agree that Cameron does not have "other insurance" under these circumstances. (Rogin Dep. at 52-53 (Ex. A annexed hereto) (testifying that "you don't have other insurance that covers the loss" when the other insurer denies coverage); Robertson Dep. at 160-61 (Ex. B annexed hereto) (testifying that contractual indemnities do not function as other insurance "if they are not honored").)

The two cases on which Liberty relies—*Sherwin-Williams Co. v. Ins. Co. of the State of Pennsylvania*, 105 F.3d 258 (6th Cir. 1997), and *Manpower Inc. v. Ins. Co. of Pennsylvania*, 807 F. Supp. 2d 806 (E.D. Wis. 2011)—are not to the contrary. Those cases did not address or interpret "other insurance" clauses or apply Texas law. Rather, they considered whether an

3

excess policy that provides "difference in conditions" coverage is triggered where coverage under the primary policies above which they are expressly written is contested.  Those cases are therefore distinguishable for the same reasons that the authorities cited by Liberty in support of its Rule 12(c) motion were distinguishable:  they "were referring to the various layers of insurance within an insurance tower.  Transocean, however, is not an underlying insurer within Cameron's tower of insurance."  (Order & Reasons at 14, Aug. 16, 2012, Dkt. 7129.)

The recent decision by the Texas Court of Appeals in *Certain Underwriters at Lloyd's of London v. Cardtronics, Inc.*, 2014 WL 943130 (Tex. Ct. App. Mar. 11, 2014), is much closer to this case.  There, the court considered whether an insured needed to exhaust its legal remedies against a third party under a provision stating the insurer was obligated to pay only "the amount of loss [the insured] cannot recover" from the third party.  *Id.* at *4.  After observing that "an explicit statement of such a requirement is wholly absent from the policy," the court held this was not the insured's risk and a conclusive determination of the third party's liability was not required before the insurer had to pay.  *Id.* at *6-9.  This reasoning applies with equal force here.  Notably, the court distinguished *Sherwin-Williams* and *Manpower* because they "address the extent to which an insured must pursue a recovery from a primary insurer or demonstrate that no primary coverage is available before seeking recovery from an excess insurer."  *Id.* at *8-9.

### B. "Other Insurance" Does Not Include Non-Insurance Contractual Indemnities Such As The Purported Transocean Indemnity.

The purported Transocean indemnities are just that—contractual indemnities.  They are considered "non-insurance transfers" of risk, not "insurance," as Liberty's own insurance expert conceded and this Court has recognized.  (Robertson Dep. at 36 (Ex. B); Order & Reasons at 28, Jan. 26, 2012, Dkt. 5446 (distinguishing "insurance contracts" from "an indemnity clause").)

In its opposition brief, Liberty does not explain how such "non-insurance" contractual indemnities—as opposed to insurance indemnities—can fall within the definition of "other insurance." Nor does Liberty have any answer for the testimony of Denise Morris, the person Liberty identified as most knowledgeable about its "Other Insurance" clause, who said she never before even heard that Liberty's clause covers contractual indemnities and admitted that "an argument could be made either way" about whether the "definition of 'other insurance' did not include contractual indemnities." (Morris Dep. at 56-57 (Ex. 3 to Cameron SJ Br.).) Liberty also does not dispute that AIG Excess, which could have taken the same position as Liberty, "did not read [Liberty's 'Other Insurance' clause] as allowing contractual indemnification to serve as other insurance in this context." (Martin Dep. at 61-62 (Ex. 26 to Cameron SJ Br.).)

In short, there is no genuine dispute that Cameron's interpretation of the definition of "other insurance" not to include "*non*-insurance" indemnities is reasonable.

### C.  No Sophisticated Insured Exception Exists Or Should Be Applied Here.

Liberty does not and cannot dispute that Cameron's reasonable interpretation must prevail unless some new "sophisticated insured exception" is adopted and applied in this case. Cameron respectfully urges the Court to reject Liberty's invitation to do so.

As the Fifth Circuit observed, "[t]he Texas Supreme Court has never recognized a sophisticated insured exception to the general rule of interpreting insurance coverage clauses, nor has it ever indicated *contra proferentem* would not apply in construing these clauses." *In re Deepwater Horizon*, 728 F.3d 491, 499 (5th Cir. 2013).[1] To the contrary, in cases involving sophisticated insureds in the oil and gas industry, the Texas Supreme Court has invoked and

---

[1] The question certified in *Ranger* is specific to the facts of that case, which involves the interpretation of an additional insured provision in the Drilling Contract and related policy provisions that were drafted with the involvement of the insureds. *See In re Deepwater Horizon*, 728 F.3d at 499-500. It has no bearing here.

5

applied the *contra proferetem* rule. *See, e.g., Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660, 668 (Tex. 2008).

In any event, this is clearly not the case to deviate from the established rule in Texas that, "if a contract of insurance is susceptible of more than one reasonable interpretation, [a court] must resolve the uncertainty by adopting the construction that most favors the insured." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). Even in *Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting, Ltd.*, 729 F. Supp. 2d 814 (N.D. Tex. 2010), the lone case cited by Liberty, the court applied the "sophisticated insured exception" only where the insured played a role in drafting the policy and was "not presented a policy that contains non-negotiable terms." *Id.* at 825. Here, by contrast, Liberty does not dispute that the Liberty Policy was drafted by Liberty using its standard terms and conditions, and Liberty did not negotiate with Cameron. (*See* Mandel Dep. at 45-47 (Ex. 4 to Cameron SJ Br.) (Liberty "never" negotiated the terms of its excess liability policy and "never" did so with Cameron); Morris Dep. at 54 (Ex. 3 to Cameron SJ Br.) ("this is the form that everyone gets."); SOF ¶ 5.) As Liberty's underwriter agreed: "Liberty required Cameron to accept its standard terms and conditions if it wished to purchase insurance from Liberty." (Mandel Dep. at 47.)[2]

Finally, even if the Court could not rely on interpretive canons to construe the Liberty Policy as a matter of law, Cameron would still be entitled to summary judgment. The only evidence of intent in the record is that, when Liberty sold Cameron the Liberty Policy, the parties expected Liberty to pay claims where, as here, a potential indemnitor like Transocean denied

---

[2] Liberty's statement that "some terms in the Policy were negotiated and changed" (Liberty Opp. at 14) is patently false. The single page of cited testimony involves the retroactive date of an endorsement to a predecessor policy issued in 2006. This is not a "term or condition" of the Liberty Policy and does not transform the Liberty Policy into a manuscript insurance policy, as Liberty suggests. In all events, Liberty's witnesses' testimony establishes that the Policy's terms and conditions were not negotiable.

responsibility.  Cameron adduced clear testimony from Mr. Mandel that this was the case.  (*See* Cameron SJ Br. at 12-13.)  While Liberty may belittle its own underwriter's knowledge of the policy he sold, Liberty does not controvert that testimony with any evidence speaking to a contrary intent.  Not a scintilla of evidence has been cited by Liberty in opposition.  Given that Liberty has the burden to prove its "Other Insurance" defense (Order & Reasons at 19, Aug. 16, 2012, Dkt. 7129), Liberty cannot overcome summary judgment merely by undermining the credibility of its own witnesses.  *See Celotext Corp. v. Cartrett*, 477 U.S. 317, 325 (1986).

## II.     LIBERTY'S IMPAIRMENT-OF-SUBROGATION DEFENSE SHOULD BE REJECTED AS A MATTER OF LAW.

### A.     Liberty Does Not Have Any Subrogation Rights Because It Wrongfully Denied Insurance To Cameron.

Liberty does not dispute that under Texas law an insurer waives its subrogation rights when it unconditionally denies liability.  (Cameron SJ Br. at 17-18.)  The only remaining question, therefore, is whether Liberty did so before BP and Cameron settled.  It did.

Cameron previously demonstrated that Liberty repeatedly and unequivocally told Cameron starting November 7, 2011, that it would not have any liability to pay any portion of any settlement with BP, under any circumstances, because of its "Other Insurance" position.  (Cameron SJ Br. at 6, 17; SOF ¶ 17.)  Liberty's opposition confirms this was the case.  As Liberty concedes, "Liberty advised that the Policy had not yet attached" based on its "Other Insurance" position.  (Liberty Opp. at 6.)  Thus, before Cameron settled with BP for $250 million (*i.e.*, above Liberty's stated $103 million attachment point), Liberty told Cameron it was not liable to pay Cameron's losses because Cameron had a claim for potential indemnification against Transocean which, in Liberty's (erroneous) view, meant its policy had not yet attached.

Liberty asserts, however, that telling Cameron its policy "had not yet attached" does not count as a repudiation because Liberty did not outright "deny" coverage. (Liberty Opp. at 6.) That is just wrong. Cameron repeatedly asked Liberty to pay and Liberty refused. No matter how Liberty now chooses to mince words, that is a denial of Cameron's claim.

More than a month before the settlement, Liberty told Cameron it would not pay Cameron's covered loss in any settlement with BP based on its "Other Insurance" position. That was an unconditional and wrongful denial of liability—regardless of how Liberty may seek to characterize it—and it waived Liberty's subrogation rights. Indeed, under similar circumstances, the Fifth Circuit held that an insurer repudiated its obligations and waived its rights by claiming the policy did not attach based on its "erroneous view that coverage existed only for liability in excess of $1,000,000." *See Scottsdale Ins. Co. v. Knox Park Const., Inc.*, 488 F.3d 680, 688-89 (5th Cir. 2007). The result should be the same here.

### B. Cameron And BP Expressly Preserved In The BP-Cameron Settlement Any Subrogation Rights That Liberty Might Have Had.

Despite agreeing that paragraph 4.4 of the BP-Cameron Settlement, by its plain terms, "purports to preserve Liberty's subrogation rights," Liberty argues that those same rights were extinguished in paragraphs 4.3 and 4.5. (Liberty Opp. at 4.) Liberty is wrong.

Paragraph 4.4 expressly states that Liberty's subrogation rights are preserved "notwithstanding any other provision of this Agreement." This language—which is conspicuously omitted from Liberty's brief—means that paragraph 4.4 overrides all other provisions of the agreement. To the extent paragraphs 4.3 and 4.5 conflict with paragraph 4.4,

8

paragraph 4.4 governs and preserves Liberty's subrogation rights. Paragraphs 4.3 and 4.5 may not be read in isolation, as Liberty has done here.[3]

That Liberty's subrogation rights were preserved, including its right to assert claims against Transocean, is also confirmed by paragraph 4.6. Paragraph 4.6 obligates Cameron to secure, by settlement or judgment, a waiver of Liberty's "subrogation" rights against Transocean and other third parties. This provision—which Liberty also ignores—would be superfluous if the parties already extinguished those very claims in paragraphs 4.3 and 4.5.

Simply put, Liberty's interpretation renders paragraphs 4.4 and 4.6 meaningless. Liberty's construction thus runs afoul of the "basic principle of contract interpretation" that no terms should be interpreted as "meaningless or superfluous." *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004). Liberty offers no response.

Nor does Liberty respond to the fact that BP confirmed that Liberty's subrogation rights, including its "rights to subrogate and assert the same claims" as Cameron against Transocean, "were not extinguished or impaired under the BP-Cameron Settlement by release, assignment to BP, or otherwise." (BP Mot. to Quash at 8-9, June 13, 2013, Dkt. 10388). BP and Cameron are the only parties to the settlement agreement and they agree that they preserved Liberty's rights. Their expressed intent should be enforced. *See Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979) ("The court should adopt the construction of the instrument as placed upon it by the parties unless there is clear language in the instrument indicating an intention to the contrary.").

Finally, Liberty does not cite a single case in which a policyholder that bargained for an express provision preserving its insurer's rights nonetheless breached its obligation to preserve those rights. Cameron's approach to preserving Liberty's subrogation rights, by contrast, has

---

[3] Paragraph 4.3 is also only a covenant not to sue and cannot be enforced by Transocean as a non-party.

been widely accepted as the "preferable manner for the discharge of the obligation of the insured not to prejudice the subrogation rights of the insurer." *See Weinberg v. Transamerica Ins. Co.*, 465 N.E.2d 819, 822 (N.Y. 1984); *see also* COUCH ON INSURANCE § 224:102.

### III. THE LIU POLICY COVERS CAMERON'S MDL DEFENSE EXPENSES.

The parties have exhaustively briefed Cameron's entitlement to defense expenses. The crux of the issue is whether the Liberty Policy—which addresses only the duty to defend—eliminates Liberty's obligation to pay defense expenses as incorporated from the INIC Policy. Here, Liberty's witnesses confirmed that if defense expenses are covered outside policy limits by the underlying layer (as they are here) then they are also covered outside policy limits by the Liberty Policy. (Cameron Br. at 22.) Liberty devotes five pages to this issue in its opposition but does not attempt to controvert this clear testimony. Cameron's interpretation is thus reasonable and must be adopted under Texas law. *See Hudson Energy*, 811 S.W.2d at 555.

*/s/ Phillip A. Wittmann*

Phillip A. Wittmann, 13625
    pwittmann@stonepigman.com
Carmelite M. Bertaut, 3054
    cbertaut@stonepigman.com

STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
504-581-3200
504-581-3361 (fax)

WILLKIE FARR & GALLAGHER LLP
Mitchell J. Auslander
Jeffrey B. Korn
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
mauslander@willkie.com

*Attorneys for Cameron International Corporation*

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 22nd day of April, 2014.

                                                       */s/ Phillip A. Wittmann*