IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by | * | MDL NO. 2179 |
|   the Oil Rig "Deepwater Horizon" | * | |
|   in the Gulf of Mexico, on April 20, 2010 | * | SECTION J |
| | * | |
| This document relates to: | * | |
| All Cases and No. 12-970 | * | Honorable CARL J. BARBIER |
| | * | |
| | * | Magistrate Judge SHUSHAN |
| | * | |

**BP'S MEMORANDUM IN SUPPORT OF
MOTION TO CLARIFY OR AMEND ORDER REGARDING
CLASS COUNSEL'S MOTION TO PROTECT AND PRESERVE
CLAIMANT CONFIDENTIALITY AND TO ENFORCE
<u>THE ORDERS OF THE COURT</u>**

Pursuant to Federal Rule of Civil Procedure 59(e), BP respectfully asks the Court to amend its March 25, 2014 Order [Rec. Doc. 12591] (hereinafter "Order") to allow BP access to pre-determination claims information necessary for BP's exercise of its Claims Appeal Process rights under Section 6 of the Settlement Agreement.[1]  This modification is necessary to address an inconsistency between the Order and both Section 4.4.14 of the Settlement Agreement and this Court's May 22, 2012 Order, which recognized the need for access to pre-determination claim files in order "to prosecute or defend an Appeal."  As we illustrate below, in some

---

[1] BP respectfully disagrees with the Order's interpretation of Section 4.4.14 more generally for the reasons set forth in its Opposition to Motion to Protect and Preserve Claimant Confidentiality and to Enforce the Orders of the Court [Rec. Doc. 12535] and its Sur-Reply [Rec. Doc. 12540].  BP maintains that it has a right to all information of the kinds that the CSSP previously provided and that it may use this information pursuant to Section 4.4.14 of the Settlement Agreement for the purposes for which it has been used.  For this reason, BP believes that the Order should be altered in full, because its rejection of BP's arguments in favor of the current policy reflect clear errors of law and violate both the terms of the settlement agreement and the parties' agreed-upon interpretation.  BP reserves all rights, including the right to appeal.

instances, the pre-determination claims of third parties contain information important in a potential or pending appeal. BP's appeal rights under the Settlement Agreement will be violated, and tangible injury will result, if access is not restored for this purpose.

BP also requests clarification or amendment of the Court's direction to "destroy all data . . . relating to claims in which a Denial Notice or an Eligibility Notice has not been issued."[2] BP and the PSC are conferring in an effort to propose jointly a stipulation that addresses this issue. But, in the absence of such a stipulation, the Court should confirm that the "data" that need be destroyed is the pre-determination claims data, provided by the CSSP, which resides in active databases of BP or its representatives. Compliance with the Order as so clarified or amended meets the purposes of the Order. Because the now-reversed policy of the Claims Administrator was in place for more than one-and-a-half years, during which time the Claims Administrator provided data regarding hundreds of thousands of claims to the parties, it would be unduly burdensome if not impossible to identify and destroy all information that may contain some reference to or be in some way derived from the data. Moreover, additional destruction would be inconsistent with contrary legal duties, court orders, and document preservation.

## LEGAL STANDARD

The Court may clarify its original order.[3] Similarly, motions for reconsideration, *i.e.*, to alter or amend a judgment, may be filed pursuant to Rule 59(e) "to correct a clear error of law or prevent manifest injustice."[4] Although the Court "has considerable discretion" in deciding

---

[2] Order at 2. This Order was amended on April 10, 2014 [Rec. Doc. 12659] to extend the deadline to comply with the Order.

[3] *See, e.g.*, Order Amending and Superseding the Court's Previous Orders [Rec. Doc. 5274], Jan. 18, 2012 (granting Motion for Clarification).

[4] *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002).

whether to grant relief under Rule 59(e),[5] it is the Court's duty to grant relief "if it is deemed in the interest of justice to do so."[6]

## ARGUMENT

I. **Access to Pre-Determination Data is Necessary for BP, Class Counsel, and Claimants to Exercise Their Rights Under the Settlement Agreement.**

BP respectfully requests that the Court amend the Order to make clear that BP has a right of access under the Settlement Agreement to pre-determination claim files when necessary to evaluate, prosecute, or defend an appeal. Section 4.4.14 of the Settlement Agreement states:

> BP and Class Counsel shall not have access to any Claim Files for Claims that are being processed and have not yet been resolved in the Settlement Program *except if the Claim File is needed by BP, a Claimant, or their counsel to prosecute or defend an Appeal*.

(Emphasis added). This provision of the Settlement Agreement cannot be read *never* to allow BP access to pre-determination claim files.[7] It states explicitly that BP *is* entitled to access when such access is *necessary to prosecute or defend an appeal*.[8] This Court's May 22, 2012 Order Regarding Settlement Implementation used nearly identical language.[9]

---

[5] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[6] *See* 11 Charles Alan Wright *et al.*, Federal Practice and Procedure § 2803 (3d ed. 2013).

[7] As explained in BP's original Opposition, the term "Claim Files" refers to the workpapers of the CSSP, and the parties are entitled at all times to all other information regarding a claim. This request for clarification and amendment is necessary in light of the Court's rejection of that reading and its broader interpretation of "Claim Files" in the Order. BP respectfully reserves and does not waive its original position, and continues to maintain that the Court's contrary ruling should be reconsidered because it rests on clear errors of law for the reasons previously set forth in BP's submissions.

[8] The Order states, "The Claims Administrator is instructed to promptly take all steps necessary to comply with the terms of Section 4.4.14 and deny both BP and Class Counsel access to any individual claim file before the Program issues a Denial Notice or an Eligibility Notice." Order at 1-2. It is impossible to deny "access to any individual [pre-determination] claim file" and "comply with the terms of Section 4.4.14," because Section 4.4.14 expressly and unambiguously permits access for the purpose of prosecuting or defending an appeal.

3

Access to pre-determination claim files is necessary to allow BP to exercise its Claims Appeal Process rights under Section 6 of the Settlement Agreement. Although it is not possible to identify every instance in which appeal of an award requires reference to a claim that has not yet been resolved, we include here a few examples where BP's access has been instrumental in appealing improper awards by the CSSP.

The prosecution and defense of appeals concerning Coastal Real Property Claims under Section 5.7.1 of the Settlement Agreement requires access to information about other pending claims. For example, with regard to Claim No. [Redacted], the CSSP awarded the claimant more than $1.7 million based on the claimant's alleged ownership of all units in a condominium building.[10] When reviewing the award, BP searched the CSSP's claims data, including then-authorized pre-determination data, and discovered that other claimants had also filed claims for the same units.[11] Upon further investigation, BP determined that the claimant did not own all of the units and that the award had been in error. BP appealed, and the Appeals Panel reversed the award and remanded. On remand, the CSSP recognized the error and denied the claim. Access to pre-determination claims information allowed BP to exercise its Section 6 Claims Appeal Process rights and ultimately correct this error and others like it.[12]

---

BP has not accessed pre-determination claim files since the Court's Order on March 25, 2014, to the detriment of its work on appeals of determined claims.

[9] That order holds that "BP and Class Counsel shall not have access to any individual Claim File for a Claim that is being processed and has not yet been resolved in the Settlement Program, *except if the Claim File is needed by BP, a Claimant, or their counsel, to prosecute or defend an Appeal*." Rec. Doc. 6573 at ¶ 9 (emphasis added).

[10] Ex. 1, Declaration of Daniel A. Cantor ¶ 4.

[11] *Id.*

[12] *Id.*

Individual Economic Loss ("IEL") claims pursuant to Section 5.3.6 of the Settlement Agreement depend on information from an individual's employer, which is contained in a separate claim file. For example, pursuant to Exhibit 8A of the Settlement Agreement, causation is established for an IEL claim if the claimant's employer has filed a BEL claim with the Settlement Program and established causation or received compensation from the GCCF or the claimant submits a sworn written statement from the claimant's employer "articulat[ing] in detail how the claimant's losses . . . are causally related to the DWH Spill."[13] When BP exercises its rights to prosecute or defend an IEL appeal, it must search the CSSP Portal to determine (i) whether the claimant's employer has a separate BEL claim, and, if so, (ii) whether the CSSP found that the employer satisfied the requirements of Exhibit 4B of the BEL framework, as well as (iii) whether the claimant's employer received a prior payment from the GCCF.[14] In addition, owner and officer payroll costs are treated as fixed costs in the BEL compensation framework that are inherently included in BEL compensation, such that owners and officers of businesses may not also be compensated under the IEL framework for the same loss.[15]

A recent Appeal Panel Decision illustrates the importance of this information. For Claim No. Redacted, the CSSP awarded the IEL claimant over $80,000.[16] The claimant, who was a 50% owner in a business that filed a BEL claim, was also pursuing an IEL claim.[17] BP explained that the IEL claim should be denied because it was for the same loss for which the business was

---

[13] Settlement Agreement, Ex. 8A ¶ I.B.2.b.ii.

[14] Ex. 1, Cantor Decl. ¶ 7.

[15] *See* Settlement Agreement § 38.84 & Ex. 8A at p.1; Policy No. 363 (Apr. 23, 2013); *see also* Ex. 1, Cantor Decl. ¶ 8.

[16] Ex. 2, Appeal Panel Decision (Claim ID Redacted); *see also* Ex. 1, Cantor Decl. ¶ 10.

[17] *Id.*

seeking to recover via its BEL claim.[18] The Appeal Panel agreed, stating "[h]ere, Claimant's alleged losses are related entirely to his self-employment for a business for which he is a 50% owner and officer. As Policy Decision 363 explains, Claimant's wages are treated as a fixed expense and are already factored into the compensation amount paid to the business in the event that it is given an award under the BEL framework. Accordingly, Claimant is precluded from pursuing this IEL claim, in addition to his company's BEL claim."[19] Without access to the related BEL claim via the Portal, BP would not have been able to make the necessary showing on appeal that the IEL claim was duplicative of the BEL claim.

Under the Seafood Compensation Program, too, it is sometimes necessary to access claims information from an undetermined claim when prosecuting or defending an appeal of a determined claim. This includes instances when (a) multiple claimants are asserting ownership status for a given oyster lease or a given vessel, (b) multiple claimants are asserting captain status for a given vessel, or (c) the vessel owner's catch data calls into question the claim of the captain or deckhand.

For example, in Claim No. [Redacted], the CSSP made an award to a claimant for an oyster leasehold in which the claimant did not hold an interest.[20] BP discovered this fact in its review of the information regarding two different claimants, who actually held the leasehold interest.[21]

---

[18] See id.

[19] Ex. 2, Appeal Panel Decision (Claim ID [Redacted]).

[20] Ex. 1, Cantor Decl. ¶ 14.

[21] Id.

The claims of the true owners had not yet been determined.[22] BP appealed, and the claimant agreed to reduce its award by $71,000.[23]

An amendment to the Order that allows BP to access pre-determination claim files for the purpose of evaluating, prosecuting, or defending an appeal is essential to permit BP to exercise its Claims Appeal Process rights under Section 6 of the Settlement Agreement. Failure to grant such relief would be manifestly unjust, would tangibly injure BP, and would constitute a clear error of law, as it would contradict the unambiguous terms of the Settlement Agreement and the May 22, 2012 Order.

## II. Only Pre-Determination Data in Active Databases Should be Destroyed.

### A. A Broader Reading of the Order Would Impose Unreasonable Obligations on BP.

Beginning in the summer of 2012, and later through CSSP Policy No. 378, the Claims Administrator authorized BP and Class Counsel to have access to information regarding all claims. This information fell into two general categories: (1) data from the CSSP provided via FTP download (originally distributed in weekly Excel files, later provided in daily SQL files); and (2) documents made available on CSSP's Portal. BP maintained active databases from both of these categories.

Class Counsel's Motion focused solely on access to pre-determination data.[24] As a result, the issue of what "data," if any, should be destroyed was not briefed by the parties. BP respectfully requests that the Court clarify that the Order only requires the destruction of pre-

---

[22] *Id.*

[23] *Id.*

[24] *See* Rec. Doc. 12413 at 2 (Class Counsel "respectfully ask the Court to eliminate BP's access to confidential Claim-specific data, files and other information prior to a formal Eligibility Determination.").

7

determination claims data in active databases, not derivative filings, memoranda, e-mails, other documents, and pieces of information manually downloaded from the Portal during the extended time period when the CSSP made this data available to the parties pursuant to a formal policy. The attached declarations of Russell E. Stalters, Exhibit 3, and H. Neal Lenhoff, Exhibit 4, explain these databases, as well as other potential sources of data.

Identifying and destroying pre-determination claims information contained in active databases is difficult, but feasible. With respect to data from the CSSP provided via FTP, BP's current understanding is that this will require BP to destroy pre-determination claims data in a limited number of databases (possessed by BP and its consultants). With respect to documents made available on the CSSP Portal, BP's current understanding is that it will delete information from its files (and those of its consultants) that were created through bulk downloads for claimants that do not have a determined claim.[25] This information is contained in a finite number of locations and can be removed from the computer systems on which it resides.

On the other hand, identifying and destroying all documents and information that contain or make reference to predetermination claims information would be infeasible, unduly burdensome, and staggeringly expensive. Such information is contained in court filings and in an enormous number of other electronic files and documents in BP's possession (we presume Class Counsel also has many such documents). The impact of the Order on BP, if interpreted

---

[25] For information provided by the CSSP through the Portal, BP will follow the procedure the Claims Administrator implemented for documents that still reside on the Portal. In those instances where a single claimant has both determined and pre-determined claims, the CSSP's database does not draw a distinction as to what documents relate to the determined claim versus the pre-determined claim. "In exercising their rights of access, both Class Counsel and BP are to do so in good faith and so as to utilize only those documents pertinent to the claim for which the relevant notice has been issued." Ex. 5, Letter from Patrick Juneau (Mar. 27, 2014).

more broadly than BP's understanding, would be unfairly and unduly burdensome in its scope and cost, given that BP received this data from the Claims Administrator pursuant to then-applicable policies of the Court Supervised Settlement Program that permitted it.

As this Court recognized, the Claims Administrator "acted appropriately at the time" when it issued CSSP Policy No. 378.[26] That policy provided Class Counsel and BP access to "Claim Files and Claims Database on all Claimants and Claims" with limited exceptions relating to the CSSP's work on those claim files.[27] BP, in relying upon this policy and receiving data and claims information from the CSSP, likewise acted appropriately, for the Claims Administrator's policy expressly confirmed the parties' agreement that they were entitled to have access to the data. BP has made use of this data for numerous purposes, including financial reporting, the CSSP appeals process, and submissions to this Court. As a result, information derived from the original data has spread in a way that would cost millions of dollars and take a lengthy period of time to identify, locate, and destroy—if even possible to completely destroy all such information.

This information was used daily, and BP had no reason at the time to segregate pre-determination claims data from the massive flow of information generated throughout the *Deepwater Horizon* litigation and claims processes. As a result, this information is referenced or contained amongst an extraordinary number of e-mails and files across outside attorneys and consultants, as well as the internal files of many BP personnel.[28]

---

[26] *See* Order at 2 n.1.

[27] Policy No. 378 ¶ 2(b) (Apr. 9, 2013).

[28] Even the task of identifying with certainty every attorney or other consultant who may have received some e-mail or other document that makes reference to this information is itself a massive undertaking. As the Court could well imagine, review of each custodian's electronic files and paper documents, on an individual basis, to assess whether they contain pre-determination claims information would take many months, if not years.

If the Court does not limit the Order to the active databases, BP would have to undertake a search of the files of every BP employee, outside counsel, consultant, or other vendor that has worked on issues related to the CSSP to locate references to such information or assure itself and the Court that a particular custodian is not in possession of such information. This could require BP to review immense quantities of electronic and hard-copy correspondence, memos, and work product created since the CSSP began providing access to data until the time the CSSP ceased that access, and to destroy noncompliant documents.[29] The details of what information exists and examples of the efforts required to destroy it are set forth in the attached declarations.[30]

The burden arises from more than the volume of material. A single e-mail or memo may contain numerous pieces of information, some derived from pre-determination claims data, some not—and it will be difficult or impossible even to ascertain with any degree of certainty whether

---

[29] Some sources, such as backup tapes are not reasonably accessible for the purpose of destroying data. BP understands the Order to exclude inaccessible sources, as prior discovery orders have done. *See* Pretrial Order No. 11 at 8 (requiring BP to submit a description of sources of electronic data that are "alleged to be not reasonably accessible due to undue burden or cost") [Rec Doc. 569]; BP Defendants' Identification of Electronic Data That Is Not Reasonably Accessible Because of Undue Burden or Cost (describing "Data stored on disaster recovery media") [Rec. Doc. 832]. If the Order included inaccessible data, compliance with the order would take enormous additional time, effort, and resources, as detailed in the attached declaration. *See* Ex. 4, Declaration of H. Neal Lenhoff (describing a process that would be incredibly onerous and cost between $3-6 million for a single consultant firm).

[30] *See* Ex. 3 (Stalters Declaration) and Ex. 4 (Lenhoff Declaration). Furthermore, a broader reading of the Court's Order could require destruction of drafts of pleadings and declarations submitted to the Court as well as copies of filed documents, which relied on pre-determination claims. *See, e.g.,* Sider Decl. (Feb. 3, 2013) (filed in camera); Sider Decl. (Feb. 18, 2013) at 10 [Rec. Doc. 8963-46]; Supp. Sider Decl. (March 14, 2013) [Rec. Doc. 8964-18]; Sider Decl. (Aug. 5, 2013) [Rec. Doc. 10937-3]; Sider Decl. (Oct. 9, 2013) (filed in camera); Sider Decl. (Nov. 7, 2013) [Rec. Doc. 11819-3]; BP Memorandum in Support of Motion to Amend Scheduling Order at 13 n.28 (Nov. 7, 2013) [Rec. Doc. 11819-1] (discussing pattern of increasing claims from Zone D and citing five Sider Declarations); BP Opposition to Class Counsel's Objection the Appeal Panel's Consideration of Facts Submitted by BP [Rec. Doc. 12062]; Order Regarding Class Counsel's Objection at 1-2 [Rec. Doc. 12517] (ALM had filed 55 claims with the Settlement Program . . . .").

certain information was derived in part from pre-determination data.  In any event, it will take massive amounts of attorney review time to determine what information constitutes pre-determination information.  Additionally, there is no way to scrub these electronic files and paper documents of information that relates to pre-determination claims without also destroying information that relates to other issues.

To illustrate the burden imposed by destruction beyond active databases, the following tasks could be necessary:

- Locate, review, and destroy documents, emails and other communications, and work product in the possession of BP employees, including financial reporting employees, who received information based in part on compilations and statistical analyses of pre-determination claims data.

- Locate, review, and destroy documents, emails and other communications, and work product in the possession of BP's counsel, including—at a minimum—the six law firms that appear on this brief.

- Locate, review, and destroy documents, emails and other communications, and work product in the possession of consultants and experts who assisted BP's counsel.

- Locate, review, and destroy hard copy documents, including a review of any of the 5,357 boxes of documents currently held by BP's Gulf Coast Restoration Organization that may contain any claims information.

- Locate, review, and destroy e-mail summaries prepared by counsel and sent to outside counsel and internal BP employees that may have referenced, in part, information derived from pre-determination claims data, among other information.

This would be a tremendous task, if possible at all.  Although BP is evaluating potential solutions, there is no clear way to locate or segregate this information for destruction.  To be

clear, the vast majority of this information is general in nature and has allowed the Company to track its upcoming obligations under the Settlement.[31]

BP's initial estimate is that such an endeavor would take several months, if not longer—necessitating further extension of the Court's deadline[32]—and involve documents in the possession of many dozens of employees, consultants, and attorneys.

### B.   If the Court's Order Were Interpreted to Require Destruction Beyond Active Databases, It Could Implicate BP's Legal Obligations.

The destruction of data implicates legal obligations that bind BP.  For example, documents relied on for BP's financial reporting—including pre-determination claims information—generally may not be destroyed.  Violation of these requirements could have civil and criminal implications.

BP is required by law to prepare its audited financial statements in accordance with International Financial Reporting Standards ("IFRS").[33]  Among other things, IFRS requires appropriate recognition and measurement of provisions and the disclosure of contingent liabilities.[34]  The UK Companies Act requires that BP maintain adequate "accounting records" that are sufficient to, among other things: (i) disclose with reasonable accuracy, at any time, the financial position of BP at that time; and (ii) enable the directors of BP to ensure that any accounts required to be prepared comply with the requirements of the Companies Act and

---

[31]   Admittedly, BP cannot fully describe the content of every e-mail, note, and other document from the extended time during which the CSSP provided pre-determination claims files and information without the same search that BP submits is overly burdensome and unnecessary.

[32]   *See* Amended Order [Rec. Doc. 12659] (extending the deadline for BP and Class Counsel's certification to May 27, 2014).

[33]   *See* Regulation (EC) No 1606/2002 (Article 4); UK Financial Conduct Authority, Disclosure Rules and Transparency Rules, Rule 4.1.6.

[34]   *See* Int'l Accounting Standards, IAS 37 (2012).

12

IFRS.[35] These records must be kept for 6 years.[36] In addition, as a public company with securities registered pursuant to the Securities Exchange Act of 1934, BP is required to "make and keep books, records, and accounts." Section 13(b) (2) (15 U.S.C. §78m). Pre-determination claims information was relied on for BP's financial reporting and destruction of these records would be inconsistent with BP's legal obligations.

This Court's Pretrial Order #1 (Aug. 8, 2010) [Rec. Doc. 2] also requires all parties and their counsel to preserve documents. Documents in the possession of BP and its counsel that fall under PTO #1 may also contain information derived, in whole or part, from pre-determination claims data. Thus, if the Order is broader than BP's understanding, it may conflict with PTO #1.[37]

Moreover, as this Court knows, BP is involved in many litigations and investigations stemming from the Deepwater Horizon oil spill. Were the Order to require the destruction of e-mails, memos, and other documents that contain some kernel of information derived from BP's prior access to pre-determination claims, BP may find that the Order conflicts with document requests, subpoenas, court orders and document preservation obligations. To avoid destruction of information that could be called for in future litigation or investigations, BP requests that the

---

[35] (UK) Companies Act, 2006 § 386.

[36] *Id.* at § 388.

[37] In addition, if the Order were interpreted more broadly than BP's understanding, it could require destruction of those backup tapes (as well as a great deal of other data) from the time period prior to July 1, 2013, not covered by the Court's order regarding resumption of normal practices of backup tapes. Order Regarding BP's Motion to Return to Normal Practice Regarding Backup Tapes for Data Created after July 1, 2013 [Rec. Doc. 11040, Aug. 19, 2013].

Court clarify or amend its Order to limit BP's destruction to pre-determination data contained in active databases.[38]

### III. BP Believes the Parties Will be Able to Agree on Many of the Issues Raised.

As the Court knows, the parties have been meeting and conferring in an effort to address some of the issues presented by this Motion. We are hopeful that that process will lead to a stipulation. The parties will provide updates to Judge Shushan regarding these issues as directed.

### CONCLUSION

For these reasons, BP respectfully requests that the Court reconsider the Order in full, or at the very least that it amend the Order to clarify that (i) BP may access and use pre-determination data for the purpose of evaluating, prosecuting, or defending an appeal pursuant to its Claims Appeal Process rights under Sections 4.4.14 and 6 of the Settlement Agreement; and (ii) the Order only applies to active databases.

---

[38] If the Court does require more expansive destruction of documents than what BP understands is required pursuant to the Order, BP requests that the Court confirm that any destruction pursuant to its Order will not violate PTO #1 or other applicable preservation requirements.

April 22, 2014

Mark Holstein
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX  77079
Telephone:  (281) 366-2000
Telefax:  (312) 862-2200


Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Telephone:  (202) 942-5000
Telefax:  (202) 942-5999

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 662-5985
Telefax:  (202) 662-6291

Jeffrey Lennard
Keith Moskowitz
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606
Telephone:  (312) 876-8000
Telefax:  (312) 876-7934

***OF COUNSEL***

Respectfully submitted,

    */s/ Kevin M. Downey*  
Kevin M. Downey
F. Lane Heard III
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 434-5000
Telefax:  (202) 434-5029


    */s/ Don K. Haycraft*  
S. Gene Fendler (Bar #05510)
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Telefax:  (312) 862-2200

Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 879-5000
Telefax:  (202) 879-5200

***ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.
AND BP AMERICA PRODUCTION COMPANY***

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 22nd day of April, 2014.

                                                        */s/ Don. K. Haycraft*
                                                        Don K. Haycraft