# Exhibit 1

# DECLARATION OF DANIEL A. CANTOR

1.  I am a partner in the law firm of Arnold & Porter LLP, resident in the firm's Washington, D.C. office. I am counsel for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. (collectively, "BP"). I am over the age of 18 and, if called, competent to testify to the facts set forth herein.

2.  In connection with my representation of BP, I oversee BP's efforts in connection with the CSSP appeals process pursuant to Section 6 of the Settlement Agreement. Accordingly, I have personal knowledge of issues that arise in the course of CSSP appeals.

3.  The review of certain CSSP awards and subsequent prosecution and defense of appeals pursuant to Section 6 of the Settlement Agreement requires knowledge of and access to information concerning other claims that have not yet been determined. It is not possible to identify every instance in which this intersection between a post-determination claim on appeal and a second claim that has not yet been resolved may arise as new scenarios continue to emerge. However, I have seen this intersection occur in a number of different contexts to date, including, without limitation, the Coastal Real Property Damage Framework, the Individual Economic Loss ("IEL") framework, the Business Economic Loss ("BEL") framework, and the Seafood Compensation Program. A rule prohibiting BP from accessing information regarding claims that have not yet been determined directly prejudices BP's ability to exercise its rights under Section 6 of the Settlement Agreement to prosecute and defend appeals.

## Coastal Real Property Framework

4.  The prosecution and defense of appeals concerning Coastal Real Property Framework awards sometimes requires access to information about other pending claims. For example, with regard to Claim No. [Redacted], the CSSP awarded the claimant more than $1.7

million based on the claimant's alleged ownership of all the units in the condominium building at issue. When reviewing the award, BP searched the CSSP's claims data, including then authorized pre-determination data, and discovered that other claimants had filed claims for the units at issue. Upon further investigation, BP determined that the claimant did not own all of the units and that the award had been in error. BP appealed, and the Appeals Panel reversed the award and remanded. On remand, the CSSP recognized that its prior $1.7 million award had been in error, and denied the claim. Access to pre-determination claims information was important to identifying the $1.7 million plus error by the CSSP, exercising BP's appeals rights, and ultimately correcting this very large error.

5.  A similar situation arose in connection with Claim No. [Redacted], which involved a claim for Coastal Real Property Damage filed for a second building by the same claimant that filed Claim [Redacted], discussed above. With regard to Claim No. [Redacted], the CSSP awarded the claimant more than $1.8 million. Once again, in reviewing the CSSP data, including then authorized pre-determination data, BP learned that other claimants had filed separate claims asserting ownership for the units at issue. BP appealed and the Appeals Panel fully reversed the award, finding that the claimant was entitled to $0. Thus, for appeals regarding this one claimant, access to pre-determination data in connection with the Section 6 appeals process was important in identifying and reversing more than $3.5 million in erroneous CSSP awards.

IEL Framework

6.  The IEL Framework causation test requires knowledge of certain information concerning the claimant's employer. Pursuant to Exhibit 8A of the Settlement Agreement, causation is established for an IEL claim if (i) the claimant's employer has filed a BEL claim with the Settlement Program and established causation or received compensation from the GCCF

2

(referred to in Exhibit 8 as an "Eligible Employer") or (ii) the claimant submits a sworn written statement ("SWS") from the claimant's employer "articulating[s] in detail how the claimant's losses…are causally related to the Spill." Settlement Agreement, Ex. 8 at 14. The Settlement Agreement instructs the Claims Administrator to assess the "credibility and reliability" of the employer SWS. *Id.*

7. Thus, where BP is exercising its rights to prosecute or defend an IEL appeal, it is necessary to search the claims data to determine (i) whether the claimant's employer has a separate BEL claim, and, if so, whether the CSSP found that the employer satisfied the Settlement Agreement's causation requirements and (ii) whether the claimant's employer received a prior payment from the GCCF. In addition, where a claimant submits an employer SWS, it is necessary to search the claims data to determine whether the declarant has his or her own claim, as that goes to the credibility and reliability of the SWS.

8. Another way in which BEL and IEL claims are related is that owner payroll costs are treated as fixed costs in the BEL compensation framework and thus alleged losses in owner wages are inherently included in BEL compensation. *See* Settlement Agreement § 38.84 & Ex. 8A at p.1; CSSP Policy No. 363 (Apr. 23, 2013). Under the Settlement Agreement and CSSP policy, the CSSP may not issue an IEL award to an owner of a business where the business has filed its own BEL claim: "If the business has filed a BEL claim and any Owner or Officer of the business has filed any IEL claims, and the Claims Administrator has identified the connection among the claims before any claimant is awarded a payment, the Claims Administrator will compensate the business entity for the loss and will deny the claims of the Owners and Officers." CSSP Policy No. 363.

3

9. The necessity of evaluating the status of the employer's and the declarant's claims when reviewing an IEL award is illustrated by the following claims.

Claim No. Redacted

10. The CSSP awarded the IEL claimant, which owned 50% of the business from which claimant asserted lost earnings, over $80,000. BP searched the claims data to determine whether the business had a pending IEL claim. It did. In its appeal, BP explained that the IEL claim should be denied because it was for the same loss for which the business was seeking to recover via its BEL claim. The Appeal Panel agreed, stating "[h]ere, Claimant's alleged losses are related entirely to his self-employment for a business for which he is a 50% owner and officer. As Policy Decision 363 explains, Claimant's wages are treated as a fixed expense and are already factored into the compensation amount paid to the business in the event that it is given an award under the BEL framework. Accordingly, Claimant is precluded from pursuing this IEL claim, in addition to his company's BEL claim."

Claim No, Redacted

11. The CSSP awarded Claimant more than $280,000. Claimant had filed an employer SWS. BP searched the claims data and learned that the employer had a pending BEL claim. BP appealed, noting that the employer SWS fell far short of the Settlement Agreement's requirement for "detail" and the fact of the pending BEL claim further called the credibility and reliability of the employer SWS into question. The Appeals Panel agreed on both points. In addition to finding the text of the SWS "conclusory", the Appeals Panel held: "In conclusion, the self-serving aspect of the employer's sworn statement, coupled with the fact that the employer's claim is still outstanding, brings this Panelist to find that this matter should be remanded with instructions to investigate and develop evidence from objective, neutral sources

to test the conclusions made in the employer's sworn statement…" If BP did not have access to pre-determination claims data, it could not have identified the self-interest of the employer, which self-interest the Appeals Panel found material in its decision.

### BEL Framework

12. The Claims Administrator has properly concluded that under the BEL Framework "intercompany sales" and "related party transactions that are not arm's length transactions" do not typically constitute revenue for purposes of the BEL framework. Policy 328. This means, for example, if a claimant who received an award records revenue in its financial records from a non-arms length transaction with a related party, the proceeds from that transaction do not constitute revenue for purposes of the BEL award. In order to exercise its Section 6 appeals rights and to assess whether the CSSP has properly implemented this rule, BP must be able to access the financial records of the party that entered into the related party transaction with the claimant, even if that party's BEL claim has not yet been determined.

### Seafood Compensation Program

13. Under the Seafood Compensation Program, it is sometimes necessary to access claims information from a second undetermined claim when prosecuting or defending an appeal of a determined claim.

14. In Claim [Redacted], the CSSP awarded the claimant for an oyster leasehold in which the claimant did not hold an interest. BP discovered this fact in its review of the information regarding two different claimants, who actually held the leasehold interest. The claims of the true owners had not yet been determined. BP appealed, and the claimant agreed to reduce the award by $71,000 to remove the compensation for the lease in which the claimant did not hold

an interest. Thus, information from the pre-determined claims was important to identifying and correcting the CSSP's error.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of April, 2014 in Washington, DC.

_____
Daniel A. Cantor