# Exhibit 3

**DECLARATION OF RUSSELL E. STALTERS**

1. I am the Director, Information and Data Management and Chief Architect for BP Gulf Coast Restoration Organization ("GCRO"). I am over the age of 18 and, if called, competent to testify to the facts set forth herein.

2. I oversee Information Technology and the management of information and data for BP's GCRO. I have personal knowledge of issues relating to BP's collection and storage of data.

## I. SQL Database from CSSP

3. <u>SQL database</u>. The GCRO maintains an active database in SQL form, consisting of data received from the CSSP. This is the principal internal means by which BP personnel track and analyze CSSP pre- and post-determination claims information.

4. <u>SQL data</u>. Since August 2012, 235 individual data sets in either SQL or Microsoft Excel format have been received from the CSSP and are stored on numerous BP servers (Production, Operational Acceptance Test, and Test servers). These data sets were automatically downloaded from the CSSP's FTP site when the CSSP made them available. Each time BP received that file from the CSSP, the new information was added to BP's database and the download from CSSP saved. Some of this data would be pre-determination and some post-determination.

5. This database was used to answer queries from different groups within GCRO, as well as queries from outside consultants and attorneys.

6. It is possible to segregate pre-determination and post-determination claims data within the active SQL database.

1

**II.     Information from CSSP's Portal**

7. <u>Portal access</u>.  The CSSP provided individual claim files to the parties through a "Portal."  All parties had access to this source until the Order.  The Portal contained claim files grouped by claimant for claimants who had a determined claim and for claimants who did not have a determined claim.

8. BP and its consultants received files from the Portal in two ways:

- <u>Bulk downloads</u>—BP developed a script, which allowed an individual who was provided access by the CSSP to automate the otherwise manual process of accessing and downloading multiple claim files.  These files are kept in a limited number of locations (active databases).

- <u>Individual downloads</u>—Any individual who was provided access by the CSSP had the ability to download a file during the course of their work.  These files were not tracked at the time and could be on hundreds of different computers and would be very difficult to locate and segregate from information related to determined claims.

**III.    Derivative Documents from the SQL Database and other Potential Sources of Pre-Determination Claims Data**

9. <u>Hard-copy information</u>.  Individuals in the Claims area of GCRO would likely have printed various reports and copies of information that could contain pre-determination data. GCRO employees retain printed materials and preserve that material in banker boxes.  GCRO does not keep a page-by-page register of every piece of paper in any individual box.  In order to recover any such documents that may contain pre-determination data, we would need to sort through each page of each box that is known to contain claims-related documents.  As of April 5,

2014, GCRO's box register indicated that we currently have 5,357 boxes associated with claims documentation.

10. E-mail.  BP maintains e-mail Exchange databases, which contain the active e-mail boxes of all BP employees.  In order to delete e-mails that may contain pre-determination data or derivative information thereof, BP would have to manually review the active e-mail accounts of potentially hundreds of employees for the nearly two-year period that pre-determination claims data was made available by the CSSP.

11. SharePoint.  Certain Claims Analysts and/or adjustors may have stored various documents and data files within our GCRO document storage areas which are hosted on a Microsoft SharePoint application.  Files would need to be individually reviewed, beginning with those saved by individuals working in Claims and on our Claims data/documents.

12. Geographical Information Systems.  Certain sets of data from the CSSP have been loaded into our Geographical Information Systems.  It is possible that some of this data includes pre-determination data.  BP and the CSSP use a third-party (GCR) for some mapping services.  Some pre-determination claims data may have been provided to GCR (or they may have obtained it directly from the CSSP) in order to provide the CSSP with certain mapping capabilities.

13. PC hard drives.  Individuals who have been assigned a BP computer may store information on their PC hard drive.  When individuals leave their assignments at GCRO, they typically go through a demobilization process.  As part of this process for individuals who have been assigned a BP computer, either the entire PC, or in most cases, the internal hard-drive and any other electronic storage devices (e.g., thumb drives, CDs, or other external devices) are collected and packed for long-term storage.  In order to locate any potential pre-determination

data/information, we would need to identify former staff and contractors who may have had files that were likely to contain pre-determination data, and recover from offsite storage those PC hard drives and devices, and search them. These PC hard drives are encrypted and would need to be unencrypted before any search and discovery of pre-determination files could be carried out.

**IV.   Disaster Recovery Backup Data**

14. The backup processes described herein are maintained for the purpose of business continuity and disaster recovery. They are not actively used for information retrieval and are not reasonably accessible. *See* BP Defendants' Identification of Electronic Data That is Not Reasonably Accessible Because of Undue Burden or Cost, Dec. 1, 2010 (Rec. Doc. 832).

15. <u>Data stored on disaster recovery media</u>. The BP Defendants create various disaster recovery media (tapes and servers) on a daily, weekly, or other basis. Since the onset of litigation, the BP Defendants have created and stored such data on well over 10,000 media. Moreover, the BP Defendants presently create and store an additional 100-200 disaster recovery media every day. These media are stored in multiple locations. A single custodian may have his or her data backed up on dozens of devices in many locations. Each piece of disaster recovery media can hold in excess of one terabyte of data. I am not aware of an automated method to segregate and destroy pre-determination data from amongst this disaster recovery media.

16. <u>E-mail backup</u>. BP backs up e-mail every day. The nightly backups of the BP e-mail servers' content are written on to tapes which are then stored by BP at an offsite facility, principally in the UK. To recover an individual's e-mail as it existed on a single day, BP must locate and restore the e-mail database that contains the individual's mailbox for that day. That process can take up to two weeks including off-site tape recovery, database queuing and restoration and the targeting and harvesting of respondent e-mails. If BP was then required to delete all evidence of pre-determination claims data on e-mail backups, the process would be

4

even more complex. After harvesting the original e-mail data from a certain day, it would be necessary to delete respondent data from the restored server and create a new backup tape to replace the original backup tape, because the process of data destruction voids the integrity of the original backup. To destroy all copies of pre-determination claims data that may exist, it would be necessary to extract each user's e-mail from each day and search those messages for the data/information. The process for a single day would take approximately two weeks (excluding the potentially immense time necessary to actually locate the responsive e-mails). There are over 548 days of data in question, since the CSSP began to make this information available. Assuming only one BP e-mail database is involved in this exercise then the process in all would take more than 5,475 days or approximately 15 years. The chances that only one database is involved is very low thus this could take even longer by a factor of 15 years.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22nd day of April, 2014 in Houston, Texas.

_____
Russell E. Stalters

5