UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | *   MDL NO. 2179<br>*<br>*   SECTION J<br>*<br>*   JUDGE BARBIER |
| APPLIES TO: No. 12-311 | *   MAG. JUDGE SHUSHAN<br>* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS, INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFF CAMERON INTERNATIONALCORPORATION'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Liberty Insurance Underwriters, Inc. ("Liberty") serves the following supplemental answers and objections to Plaintiff Cameron International Corporation's First Set of Interrogatories.

**GENERAL OBJECTIONS**

1.  Liberty objects to plaintiff's First Set of Interrogatories to the extent they seek information protected by the attorney-client privilege, work-product doctrine, and/or any other privilege or protection recognized by law. Any inadvertent production of information subject to privilege or protection does not constitute a waiver by Liberty of that privilege or protection.

2.  Liberty objects to plaintiff's First Set of Interrogatories to the extent they seek information that is confidential, proprietary, and/or that constitutes trade secrets. Any inadvertent production of information subject to privilege or protection does not constitute a waiver by Liberty of that privilege or protection.

EXHIBIT 15

1

837920_1

3. Liberty objects to plaintiff's First Set of Interrogatories to the extent they seek information or documents not within Liberty's possession, custody, or control.

4. Liberty objects to plaintiff's First Set of Interrogatories to the extent they seek information neither relevant to the issues posed by the pleadings nor reasonably calculated to lead to the discovery of admissible evidence.

5. Liberty objects to plaintiff's First Set of Interrogatories, including without limitation the Definitions and Instructions, to the extent they seek to impose obligations and/or discover information beyond the scope of discovery permitted by the Federal Rules of Civil Procedure.

6. Liberty objects to the definition of "You", "Your", and "Liberty" contained in Cameron's First Set of Interrogatories. The stated definitions are overbroad and exceed the scope of discovery permitted by the Federal Rules of Civil Procedure. Moreover, the definitions improperly could include attorneys or others who are not Liberty and not within Liberty's control. Finally, the definition improperly includes persons and entities other than the named defendant, Liberty Insurance Underwriters, Inc., including without limitation Liberty's "parents, subsidiaries, affiliates, predecessors and successors in interest, and any of its officers, directors, partners, employees, and agents."

7. Liberty objects to the definition of "Cameron Policies" contained in Cameron's First Set of Interrogatories. The stated definition is overbroad and exceeds the scope of discovery permitted by the Federal Rules of Civil Procedure. "Cameron Policies" properly should include only policies issued to Cameron by Liberty Insurance Underwriters, Inc. from January 2010 through the present.

8. Liberty objects to the extent that Cameron's First Set of Interrogatories defines the relevant time period as 2006 to present. This time period is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The relevant time period properly should be limited to January 1, 2010 to the date this suit was filed.

9. Any representation made by Liberty that it will provide or make available responsive information is not meant to imply that such requested information or documents actually exist, but merely that the requested information or documents will be produced to the extent known or available.

10. Liberty reserves the right to supplement, amend, or alter its responses at any time.

11. Liberty reserves the right to challenge the admissibility of the documents herein produced at trial or at any hearing in this matter or any other matter.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify all persons involved in Liberty's review or assessment of Cameron's claim under the Liberty Policy relating to the Deepwater Horizon Incident.

**RESPONSE TO INTERROGATORY NO. 1:**

Liberty objects to this Interrogatory as vague and ambiguous and invasive of the attorney-client privilege with reference to the term "involved." Subject to this objection and without waiving the same, the following Liberty employees were assigned to the adjustment of Cameron's insurance claim:

        James Engel - Chief Claim Officer - US & Latin America

        Jessica Rogin - VP - Environmental & Casualty Claims

        Jeffrey Roberts - AVP Claims

As Cameron is well aware, Paul Koepff of Clyde & Co. represented Liberty, among others, in connection with Cameron's coverage claim arising from its settlement with BP. Liberty also retained Chris Martin of Martin, Disiere, Jefferson & Wisdom, L.L.P. and Judy Y. Barrasso of Barrasso Usdin Kupperman Freeman & Sarver, L.L.C. in connection with Cameron's claim.

**INTERROGATORY NO. 2:** Identify all persons involved in Liberty's decision not to provide payment to or on behalf of Cameron in connection with its claim under the Liberty Policy relating to the Deepwater Horizon Incident.

**RESPONSE TO INTERROGATORY NO. 2:**

Liberty objects to this Interrogatory as vague and ambiguous and invasive of the attorney-client privilege with reference to the term "involved". Liberty further objects to this Interrogatory as misleading and assuming facts not in evidence with reference to the terms "Liberty's decision not to provide payment to or on behalf of Cameron." Subject to this objection and without waiving the same, the following Liberty employees made decisions with respect to the payment of Cameron's insurance claim:

> James Engel - Chief Claim Officer - US & Latin America
>
> Jessica Rogin - VP - Environmental & Casualty Claims
>
> Jeffrey Roberts - AVP Claims

**INTERROGATORY NO. 3:** Identify all reasons why Liberty decided in December 2011 not to provide payment to or on behalf of Cameron in connection with its claim under the Liberty Policy relating to the Deepwater Horizon Incident.

**RESPONSE TO INTERROGATORY NO. 3:**

At the time of the Macondo Well incident, Cameron carried an excess casualty insurance policy with Liberty in the amount of $50 million for covered "loss" above $103 million in underlying coverage. As stated in the Policy's "Other Insurance" condition, this coverage was excess of any contractual indemnification rights of Cameron, including Cameron's

4

indemnification rights against Transocean. In addition, the Liberty Policy and underlying policy prohibited the transfer or impairment of Liberty's subrogation rights. These rights are described in the first underlying policy's "Transfer of Rights of Recovery" condition, to which the Liberty Policy generally follows form. In November, 2011, Cameron filed a Motion for Summary Judgment seeking to enforce its indemnification rights against Transocean. Upon agreeing to settle with BP, Cameron agreed, in breach of the Policy, to release its indemnity rights against Transocean over Liberty's objections. Cameron's release of valid and enforceable indemnity rights without Liberty's consent impaired Liberty's subrogation rights to Liberty's prejudice. Cameron's actions also breached the Policy's "Notice of Occurrence" condition, which states that an insured shall not "voluntarily make a payment, assume any obligation, [or] assume any obligation" without Liberty's consent. Accordingly, Cameron's actions extinguished coverage under the Liberty Policy.

**INTERROGATORY NO. 4:** Identify all documents that support, refute or otherwise relate to the reasons identified in response to Interrogatory No. 3.

    **RESPONSE TO INTERROGATORY NO. 4**:

    Liberty Insurance Underwriters Policy No. LQ1-B71-198583-046, effective dates of July 1, 2009 to July 1, 2010.

    Drilling Contract between Transocean and BP.

    Purchase Order's Terms & Conditions between Cameron and Transocean.

    Master Service Agreement between Cameron and Transocean.

    Document 7129 on file with this Court.

    Cameron's Motion for Summary Judgment, Memorandum in Support, Reply Memorandum and attached exhibits.

    Settlement Agreement between BP and Cameron.

**INTERROGATORY NO. 5:** State Your interpretation of the word "applies" in the "Other Insurance" provision of the Liberty Policy and identify all facts that support Your interpretation.

**RESPONSE TO INTERROGATORY NO. 5:**

Liberty objects to this Interrogatory as vague and ambiguous with respect to "Your interpretation." "Your," as defined in Cameron's own Interrogatories, means "defendant Liberty Insurance Underwriters, Inc. and all of its parents, subsidiaries, affiliates, predecessors and successors in interest, and any of its officers, directors, partners, employees, and agents." With this broad definition of "Your," it cannot be determined whom specifically within Liberty's corporate structure Cameron is referring. Liberty further objects that this Interrogatory improperly seeks a legal conclusion.

Subject to all objections, Liberty contends that the Policy is not ambiguous and speaks for itself with respect to the plain language of the "Other Insurance" clause. The word "applies" should be interpreted consistently with its plain and ordinary meaning, as required by Texas and Louisiana law. Here, Liberty contends that other insurance "applies to a 'loss'" as stated in the Other Insurance condition if such other insurance and/or indemnification (1) exists, and (2) may provide coverage or indemnification that overlaps, in whole or in part, with the coverage of the Liberty Policy.

**INTERROGATORY NO. 6:** State Your interpretation of the following sentence from Section 4.4 of the BP Settlement: "Notwithstanding any other provision of this Agreement, including paragraphs 4.2 and 4.3, Cameron is not releasing any subrogation or other rights of Liberty Insurance Underwriters Inc." and identify all facts that support Your interpretation.

**RESPONSE TO INTERROGATORY NO. 6:**

Liberty objects to this Interrogatory as vague and ambiguous with respect to the terms "Your interpretation." "Your" as defined in Cameron's own Interrogatories means "defendant Liberty Insurance Underwriters, Inc. and all of its parents, subsidiaries, affiliates, predecessors and successors in interest, and any of its officers, directors, partners, employees, and agents." With this broad definition of "Your," it cannot be determined whom specifically within Liberty's

corporate structure Cameron is referring. Liberty also objects that this Interrogatory improperly seeks a legal conclusion and unfairly and improperly purports to take a sentence out of context.

Subject to all objections, the quoted provision neither is an agreement or obligation of any party. Rather, the sentence purports to make a self-serving statement that the effects or consequences of provisions containing agreements and obligations are that Cameron did not release Liberty's subrogation rights, notwithstanding express agreements and conduct to the contrary. Specifically, paragraph 4.5 of the Settlement Agreement, among others, provides that Cameron indisputably assigned to BP or released its "indemnification claims against Transocean under the Transocean Contracts." Cameron has admitted that it released its indemnity rights in its Complaint and Memoranda filed herein, among others. Liberty, a subrogated insurer, can only stand in Cameron's shoes under well-established law. By assigning or releasing its indemnity claims against Transocean, Cameron precluded Liberty from pursuing these rights through subrogation, rendering any subrogation right meaningless. Cameron extinguished Liberty's valuable subrogation rights by the non-monetary aspects of its settlement with BP and by withdrawing its pending claim for indemnity from Transocean contemporaneously with its settlement with BP.

**INTERROGATORY NO. 7:** Identify all meetings, telephone calls, discussions, or other oral or written communications between Liberty (including, but not limited to, its counsel) and BP (including, but not limited to, its counsel) relating to Cameron, the Cameron Policies, or the BP Settlement.

**RESPONSE TO INTERROGATORY NO. 7:**

Liberty objects to this Interrogatory as vague and indefinite with respect to the time frame and specific subject matters to which Cameron is referring. Liberty further objects that the Interrogatory potentially seeks communications protected by the work product doctrine. Subject to all objections, Liberty is not aware of any meetings or discussions with BP or its counsel

7

regarding "Cameron, Cameron Policies or the BP Settlement." Any meetings or communications by Liberty regarding "Cameron, Cameron Policies or the BP Settlement" would largely be confined to representatives of the insured.

**INTERROGATORY NO. 8:** Identify all meetings, telephone calls, discussions, or other oral or written communications between Liberty (including, but not limited to, its counsel) and Transocean (including, but not limited to, its counsel) relating to Cameron, the Cameron Policies, or the BP Settlement.

    **RESPONSE TO INTERROGATORY NO. 8**:

    Liberty objects to this Interrogatory as vague and indefinite with respect to the time frame and specific subject matters to which Cameron is referring. Liberty further objects that the Interrogatory potentially seeks communications protected by the work product doctrine. Subject to all objections, Liberty is not aware of any meetings with Transocean or its counsel regarding "Cameron, Cameron Policies or the BP Settlement." Any meetings or communications by Liberty regarding "Cameron, Cameron Policies or the BP Settlement" would largely be confined to representatives of the insured. Liberty's counsel conferred with Transocean's counsel after the hearing on Liberty's Motion for Judgment on the Pleadings on July 13, 2012.

**INTERROGATORY NO. 9:** Identify all facts that Liberty considered in underwriting the Cameron Policies and state how they affected the premium that Cameron was charged by Liberty.

    **RESPONSE TO INTERROGATORY NO. 9**:

    Liberty objects to the terms "all facts" as overly-broad and requiring an extensive narrative answer as some of the facts considered were based on meetings, telephone calls, and other verbal communications which would be too voluminous and extensive to recount in narrative form within this singular Interrogatory answer. Subject to this objection and without waiving the same, because the answer to this Interrogatory primarily may be derived by examination of the underwriting file for the Liberty Excess Policy and because the burden of

deriving and ascertaining the answer to this Interrogatory is substantially the same for Plaintiff, Liberty hereby elects pursuant to Federal Rule of Civil Procedure 33(d) to answer this Interrogatory by producing the underwriting file which is attached and bates labeled as LIU 00001-LIU 00615 and LIU 00919 – LIU 01501.

**INTERROGATORY NO. 10:** Identify the person most knowledgeable at Liberty about the "Other Insurance" provision in Liberty Policy form 0100-XS(03 00).

>  **RESPONSE TO INTERROGATORY NO. 10**:

Liberty responds that the person "most knowledgeable" about the "Other Insurance" provision is Denise Morris, Senior Vice President, LIU Excess Casualty.

**INTERROGATORY NO. 11:** Identify when Liberty Policy form 0100-XS(03 00) was first drafted.

>  **RESPONSE TO INTERROGATORY NO. 11**:

Liberty responds that, upon information and belief, Liberty Policy form 0100-XS(03 00) was first used by Liberty in one or more insurance policies in late 1999 or early 2000.

**INTERROGATORY NO. 12:** Identify when Liberty first bound an insurance policy based on Liberty Policy form 0100-XS(03 00).

>  **RESPONSE TO INTERROGATORY NO. 12**:

See Response to Interrogatory No. 11.

**INTERROGATORY NO. 13:** Identify when You first decided that the Liberty Policy had not attached in connection with Cameron's claim under the Liberty Policy relating to the Deepwater Horizon Incident because of its "Other Insurance" provision.

>  **RESPONSE TO INTERROGATORY NO. 13**:

By November 2011, Liberty had realized that attachment could be an issue, given Cameron's outstanding indemnity claims against Transocean, which Cameron was pursuing through, among other things, a Motion for Summary Judgment, which had not been resolved. However, Liberty did not make any decision concerning attachment until after the BP settlement

had been reached that implicated Liberty's layer of coverage and simultaneously impaired Liberty's subrogation rights over its objection. Such a settlement was reached on or about December 12, 2011.

**INTERROGATORY NO. 14:** Identify when You first communicated to any of Cameron's other insurers that the Liberty Policy had not attached in connection with Cameron's claim under the Liberty Policy relating to the Deepwater Horizon Incident because of its "Other Insurance" provision.

### RESPONSE TO INTERROGATORY NO. 14:

By November 2011, Liberty had realized that attachment could be an issue in the future if a settlement ever implicated Liberty's layer, given Cameron's outstanding indemnity claim, which had not been resolved. Liberty communicated this possibility to the other insurers around November 7, 2011. However, as stated in response to Interrogatory No. 13 above, Liberty did not make any decision concerning attachment until after the settlement had been reached that implicated Liberty's layer of coverage and simultaneously impaired Liberty's subrogation rights over its objection. Such a settlement was reached on or about December 12, 2011.

**INTERROGATORY NO. 15:** Identify when You first communicated to Cameron Your position that the Liberty Policy had not attached in connection with Cameron's claim under the Liberty Policy relating to the Deepwater Horizon Incident because of its "Other Insurance" provision.

### RESPONSE TO INTERROGATORY NO. 15:

Liberty repeatedly communicated to Cameron that it did not agree to waive its subrogation rights. By November 2011, Liberty had realized that attachment could be an issue, given Cameron's outstanding indemnity claim against Transocean, which was the subject of Cameron's Motion for Summary Judgment which had not been resolved. Liberty communicated this to Cameron around November 7, 2011. However, as stated in Response to Interrogatory No. 13 above, Liberty did not make any decision concerning attachment until after the settlement had

been reached that implicated Liberty's layer of coverage and simultaneously impaired Liberty's subrogation rights over its objection. Such a settlement was reached on or about December 12, 2011.

**INTERROGATORY NO. 16:** Identify all reasons why Liberty believes that Section 4.4 of the BP Settlement did not preserve Liberty's subrogation rights.

**RESPONSE TO INTERROGATORY NO. 16**:

*See* Liberty's Response to Interrogatory No. 6.

**INTERROGATORY NO. 17:** Identify when Liberty first notified Transocean that Liberty has or might have a potential claim for subrogation relating to Cameron's claim under the Liberty Policy relating to the Deepwater Horizon Incident.

**RESPONSE TO INTERROGATORY NO. 17**:

Liberty objects to the request as mischaracterizing relevant facts. Subject to the objections, Cameron pursued its own indemnity claim against Transocean with Liberty's consent and support when it filed its Motion for Summary Judgment on or about November 8, 2011. (Rec. Doc. No. 4524). Liberty never had the opportunity to assert a subrogation claim on its own behalf against Transocean because simultaneously with agreeing to pay an amount that would reach Liberty's layer, Cameron released or assigned its indemnity rights against Transocean, thereby impairing Liberty's subrogation rights.

**INTERROGATORY NO. 18:** Identify any other instance, at any time, in which Liberty took the position that "Other Insurance," as defined in the Liberty Policy, existed where the source of such "Other Insurance" denied payment to Liberty's insured.

**RESPONSE TO INTERROGATORY NO. 18**:

Liberty objects that Interrogatory No. 18 is vague, inarticulate, imprecise, and seeks information not within Liberty's custody or control. Liberty further objects that Interrogatory No. 18 seeks confidential information pertaining to other insureds and insurers not a party to this lawsuit over whom Liberty has no control. Finally, Liberty objects to the Interrogatory as

unduly burdensome, as responding would require a file by file review of claims files. Such an undertaking is unduly burdensome and invasive of the privacy of other insureds. Without undertaking such a review, Liberty responds that it is unaware of any instance where Liberty denied payment based on its Other Insurance provision.

**INTERROGATORY NO. 19:** Identify any instance in which Liberty was found liable for acting in bad faith based on its handling of a claim.

### RESPONSE TO INTERROGATORY NO. 19

Liberty objects to this request as unduly burdensome, harassing, abusive, vague, obscure, overly-broad in scope, and lacking in any reasonable degree of specificity as this Interrogatory fails to identify the type of claim (*e.g.* property, casualty, professional liability, etc.), the type of policy implicated, or the time period of the claim or litigation, and the jurisdiction. Liberty objects to this Interrogatory as lacking in relevance as each claim and the handling of each claim is unique and has no relevance or bearing on the facts concerning Cameron's claim. Moreover, Liberty objects to this Interrogatory as lacking relevance as each court, each jury, and each lawsuit is unique and any finding of bad faith in one court may have no relevance or bearing on how a judge or jury would decide the same set of facts in another lawsuit. Further, to answer fully requires a file by file review to determine what happened in each particular claim file. Without undertaking such a review, Liberty is unaware of any instance in which Liberty Insurance Underwriters has been held liable for bad faith claims handling. Subject to these objections and without waiving the same, given the lack of specificity and dramatic over-breadth of this Interrogatory, a meaningful answer cannot be provided.

**INTERROGATORY NO. 20:** Identify any counsel on whose advice you intend to rely in the defense of any claim in this action and describe any such advice.

**RESPONSE TO INTERROGATORY NO. 20**:

Liberty objects to this Interrogatory as lacking in relevance as Liberty has not asserted the affirmative defense of reliance on the advice of counsel. As such, this Interrogatory is objectionable and invasive of the attorney-client privilege. Please refer to the Answer and Affirmative Defenses of Liberty Insurance Underwriters, Inc.

Respectfully submitted,

*/s/ Catherine Giarrusso*

Judy Y. Barrasso, 2814
Celeste, Coco-Ewing, 25002
Catherine F. Giarrusso, 29875
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
504.589.9700 (Telephone)
504.589.9701 (Facsimile)

OF COUNSEL:

Christopher W. Martin
Federal I.D. 13515
Gary L. Pate
Federal I.D. 29713
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
808 Travis, Suite 1800
Houston, Texas 77002
713-632-1700 (Telephone)
713-222-0101 (Facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all counsel of record by U.S. mail, postage prepaid, hand delivery, facsimile transmission or email on this 25th day of February, 2013.

*/s/ Catherine Giarrusso*

13

837920_1