UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * | MDL NO. 2179 SECTION J |
| | * | JUDGE BARBIER |
| **THIS PLEADING APPLIES TO:** No. 12-311 | * * | MAG. JUDGE SHUSHAN |
| | * | **JURY TRIAL DEMANDED** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF CAMERON INTERNATIONAL CORPORATION'S
RESPONSE TO DEFENDANT LIBERTY INSURANCE UNDERWRITERS'
STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT ON CAMERON
INTERNATIONAL CORPORATION'S FORFEITURE OF COVERAGE**

Plaintiff Cameron International Corporation ("Cameron") respectfully submits this response to Defendant Liberty Insurance Underwriters' Statement Of Uncontested Material Facts In Support Of Its Motion For Partial Summary Judgment On Cameron International Corporation's Forfeiture of Coverage. (Rec. Doc. No. 12580-12).

1. **Liberty Statement:** LIU issued to Cameron an excess insurance policy, no. LQ1-B71-198583-046, effective from July 1, 2009 to July 1, 2010 ("LIU Excess Policy" or the "Policy").  *See* LIU Excess Policy, Ex. A to LID's  Memo.  The Policy was part of Cameron's insurance tower and provides $50 million in limits above $103 million in underlying coverage subject to all Policy terms and conditions.

    **Cameron Response:**  Admitted.  Cameron refers to the complete policy issued by Liberty for its contents.

2. **Liberty Statement:** The First Underlying Policy provides,

> O.   Transfer of Rights of Recovery
> 1.  If any Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The Insured must do nothing after loss to impair these rights and must help us enforce them.
>
> Ex. B to LID's Memo. The LIU Policy adopts this term.

**Cameron Response:** Admitted. Cameron refers to the complete policy issued by Illinois National Insurance Company ("INIC") for its contents.

3. **Liberty Statement:** The Policy provides,

> **V.   CONDITIONS ...**
>
> E.   Notice of Occurrence ...
> 4.   The Insureds will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.
>
> Exh. A to LIU's Memo.

**Cameron Response:** Admitted. Cameron refers to the complete policy issued by Liberty for its contents.

4. **Liberty Statement:** On April 20, 2010, during the Policy period, a blowout of the Macondo well occurred, causing an explosion and fire aboard the Deepwater Horizon. These events gave rise to hundreds of lawsuits, naming Cameron, Transocean, BP and others as defendants and third-party defendants. These lawsuits were consolidated in multi-district litigation.

**Cameron Response:** Admitted.

5. **Liberty Statement:** At the time of the blowout, Cameron was party to contractual indemnity agreements with Transocean including (1) the Terms and Conditions for the sale of the Deepwater Horizon blowout preventer equipment, and (2) the Master Service

Agreement.  *See* Exs. D & E to LIU's Memo.  Likewise, Transocean was party to an indemnity agreement with BP, the Drilling Contract for construction, use and operation of the *Deepwater Horizon*. Ex. C to LIU's Memo.

**Cameron Response:**  Admitted, except Cameron denies that the referenced exhibits are "indemnity agreements."  Cameron refers to the complete agreements between Cameron and Transocean, and between BP and Transocean, for their contents.  Cameron further notes that Transocean refused to indemnify Cameron under their agreements for pollution liabilities.

6. **Liberty Statement:** Cameron demanded that Transocean defend and indemnify Cameron against the Deepwater Horizon claims. Ex. F to LIU's Memo. Transocean tendered Cameron's claim to BP and promised to "of course, pass onto Cameron any indemnity it is able to obtain (and pass) from BP." Exs. H & I to LIU's Memo.

   **Cameron Response:**  Admitted, except Cameron denies that Transocean agreed to honor any indemnity for pollution liabilities.  Transocean agreed to honor certain "knock-for-knock" indemnities, but it refused to honor any contractual indemnity for pollution liabilities.  Moreover, after the referenced exhibits were written, Transocean denied that it owed any indemnity for pollution liabilities to Cameron and disputed the validity and enforceability of any such indemnities in court.

7. **Liberty Statement:** In late 2011, Cameron moved for summary judgment on its indemnity claim against Transocean.  Rec. Doc. No. 4524.  When this motion was filed, Cameron believed its indemnity rights were enforceable. Ex. G to LIU's Memo., at 62:9 to 63:19.

**Cameron Response:** Admitted that, when it moved for summary judgment, Cameron believed it had a reasonable basis to seek summary judgment, which basis was denied and disputed by both Transocean and BP.

8. **Liberty Statement:** In December 2011, Cameron entered into a Confidential Settlement Agreement with BP. *See* Settlement, Exh. P to LIU's Memo. In the Settlement, Cameron agreed not to pursue its indemnity claim against Transocean. *Id.* at ¶ 4.3. Cameron also assigned the indemnity claim to BP. *Id* at ¶ 4.5.

    **Cameron Response:** Denied, except Cameron admits that it entered into a Confidential Settlement Agreement with BP on December 15, 2011 and refers to the Confidential Settlement Agreement for its contents. Cameron further states that BP and Cameron, in the Confidential Settlement Agreement, expressly agreed to preserve Liberty's subrogation rights "notwithstanding any other provision" in that agreement, including but not limited to paragraphs 4.3 and 4.5.

9. **Liberty Statement:** Cameron withdrew its motion for summary judgment on the morning of the December 16, 2011 hearing. Rec. Doc. No. 4941.

    **Cameron Response:** Admitted. Cameron's summary judgment motion against Transocean was withdrawn without prejudice on December 16, 2011.

10. **Liberty Statement:** In January 2012, the Court held that the Drilling Contract obligated BP to indemnify Transocean for third-party compensatory damage claims against Transocean related to sub-surface pollution, even if the claim is the result of Transocean's own strict liability, negligence, or gross negligence. Rec. Doc. No. 5446.

    **Cameron Response:** Paragraph 10 of Liberty's Statement of Uncontested Facts purports to describe a decision by this Court at Dkt. 5446. No response is required.

1157046v1

Respectfully Submitted,

*s/ Phillip A. Wittmann*

Phillip A. Wittmann, 13625
    pwittmann@stonepigman.com
Carmelite M. Bertaut, 3054
    cbertaut@stonepigman.com

STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
504-581-3200
504-581-3361 (fax)

WILLKIE FARR & GALLAGHER LLP
Mitchell J. Auslander
Jeffrey B. Korn
787 Seventh Avenue
New York, New York  10019
 (212) 728-8000
mauslander@willkie.com

*Attorneys for Cameron International Corporation*

## CERTIFICATE OF SERVICE

       I hereby certify that the above and foregoing has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23rd day of April, 2014.

                                                                  */s/ Phillip A. Wittmann*