UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: Oil Spill by the Oil Rig | * | MDL 2179 |
| | * | |
| "Deepwater Horizon" in the Gulf of | * | SECTION J |
| | * | JUDGE BARBIER |
| Mexico, on April 20, 2010 | * | MAG. JUDGE SHUSHAN |

*****************************************************************************

**MEMORANDUM IN SUPPORT OF MOTION**
**TO ENFORCE SETTLEMENT RELEASE**

MAY IT PLEASE THE COURT:

Claimants' *Motion to Enforce Settlement Release* is based on clear terms of the Release that BP proposed and that Claimants accepted. Those terms assured Claimants that if it accepted the terms of the Release, and the consideration offered, that any future court decisions would have no impact on Claimants or the terms of the Releases.

The Release at issue was executed and accepted before the United States Fifth Circuit's "BEL" Panel's decision.[1] Thus an enforceable Release currently exists – and existed before the "BEL" Panel's decision. Furthermore, an appeal from the Release must follow the policies that existed at the time the Release was executed. To allow subsequent legal proceedings to change the terms of the appeal policy would violate the express terms of the Release. For these reasons, which are discussed in more detail below, this Court should grant the Motion.

1. **The Terms Of The Release Are Clear**.

BP proposed — and Claimant accepted — a Release that guaranteed that both parties would be bound by the terms of the Release. "The attached Full and Final

[1] Case No. 13-30315.

Release, Settlement, and Covenant Not to Sue ('Individual Release') is a binding legal document."[2]

Such language is common in many releases and it is axiomatic that a release is a contract. What is unique, however, is the detail that BP's Release includes about the enforceability of the Release – even if subsequent court decisions change the terms of the proposed settlement. For example, the fifth paragraph on page 2 of 20 states:

> The settlement payment you have been offered arises under the auspices of the federal District Court in New Orleans presiding over the multidistrict litigation titled In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (MDL No. 2179). A class action settlement has been proposed in that case, but the Court has not yet given final approval of that proposed settlement. If the Court does approve the proposed class action settlement, an appellate court could reverse the approval. In addition, it is possible that the terms of the proposed settlement may change in the future - for better or for worse - as a result of further legal proceedings. However, if you sign this Individual Release, none of those uncertain future events will affect you. **By signing this Individual Release you are forever waiving and releasing all claims that you may have against BP (except for Expressly Reserved Claims) in exchange for the compensation being provided.** In fact, even if the Court does not approve the proposed class action settlement agreement or the approval is reversed by an appellate court, you shall continue to be bound by this Individual Release.[3]

Claimants are required to sign an "Acknowledgment" affirming that they "read and understand" this information.[4] Paragraph 16 of the Definitions section of the Release further confirms the effectiveness of the Release, irrespective of future court decisions:

> 16. **Continuing Effectiveness of Agreement.** This **Individual Release** shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the **Released Parties** in any current or future litigation. **THIS INDIVIDUAL RELEASE SHALL ALSO REMAIN EFFECTIVE REGARDLESS OF WHETHER THE SETTLEMENT AGREEMENT RESOLVING THE CLAIMS OF THE ECONOMIC**

[2] Exhibit 1, Page 2 of 20, second paragraph

[3] Id., fifth paragraph. Underlined for emphasis. Bold in Original.

[4] Id., page 3 of 20

**CLASS IS APPROVED**.

The Release is also clear that the monies referenced in the Release, as well as assurances like the ones above, constitute the consideration offered for such a broad release.

> 3. **Release is Comprehensive. Claimant** agrees and acknowledges that the consideration granted in Paragraph 2 above constitutes full, complete, and total satisfaction of all of the **Released Claims** against the **Released Parties.** In addition, Claimant agrees and acknowledges that the consideration granted in Paragraph 2 above also constitutes full, complete, and total satisfaction of all of **Claimant's Compensatory Damage Claims** against the **Transocean Parties** and the **Halliburton Parties.** (Page 10 of 20.)
>
> •••
>
> 6. **Consideration.** Claimant agrees that this **Individual Release** is entered into in consideration of the agreements, promises, and mutual covenants set forth in this **Individual Release** and for such other good and valuable consideration the receipt a nd sufficiency of which are hereby acknowledged. (Page 10 of 20.)

Finally, the Release is the exclusive remedy for a claimant to pursue and there are no other enforceable agreements to the contrary:

> 8.(b.) This **Individual Release** shall be the exclusive remedy for any and all **Released Claims** by or on behalf of **Claimant** against any and all **Released Parties**, and **Claimant** shall not recover, directly or indirectly, any sums from any **Released Parties** for any **Released Claims** other than those received for the **Released Claims** under the terms of this **Individual Release.** (Page 11 of 20.)
>
> . . .
>
> **15.** **Superseding Nature of Agreement**. This **Individual Release** constitutes the final, complete, and exclusive agreement and understanding between **BP** and **Claimant** and supersedes any and all other agreements, written or oral,between BP and Claimant with respect to such subject matter of this **Individual Release** in settlement of Claims arising out of or related to the **Deepwater Horizon Incident.** (Page 13 of 20.)

2. **Interpretation of these Terms is Straightforward.**

Of course, BP negotiated these terms[5] and proposed that they be incorporated into the Release submitted to this Court for approval.[6] And these exact terms were eventually agreed-to by Claimants on October 2, 2013, October 7, 2013 and September 19, 2013.[7]

Under the terms of the Release:

- BP offers a "settlement payment" to the Claimant under the terms of a class action settlement overseen by this Court;
- The Claimant is informed that the "terms of the proposed settlement may change in the future — for better or for worse — as a result of future legal proceedings."
- Despite that possibility, the Release expressly states that "none of those uncertain future events will affect you" if the Claimant will just sign the Release.
- Further, the terms of the Release "shall remain effective regardless of any appeals or court decisions" that relate "in any way to the liability" of BP and that might occur in the future.
- The Claimants agree to the terms of the Release by executing and returning the Release.

Thus, while the monies offered in the Release are obviously important, so are the other "agreements, promises, and mutual covenants." Two of the most critical of those "agreements, promises, and mutual covenants" are the assurance that any future court decisions would have no impact on the Claimant (if the Claimant accepted the terms of the Release) and that the Release is a "binding legal document."

---

[5] Doc. 6430-1, Section 25.1 of Settlement Agreement states that, "This Agreement shall be deemed to have been mutually prepared by the Parties . . ."

[6] See Exhibit 26 to Settlement Agreement (Doc. 6430-45).

[7] Exhibit 1

BP anticipated that "the terms of the proposed settlement may change in the future-for better or for worse-as a result of further legal proceedings." BP also assured Claimant, "However, if you sign this Individual Release, none of those uncertain future events will affect you" and that "This Individual Release shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the Released Parties in any current or future litigation."

Claimants accepted BP's terms and those terms are clear. Any other "further legal proceedings" or "uncertain future events" do not affect the agreement between Claimant and BP. Based on these clear terms, Claimants ask this Court to enforce the terms of this Release.

3. **Federal Courts Can Enforce Terms of a Release**.

As this Court has noted in another case, federal courts have held under a great variety of circumstances that a settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced. *Magee v. Ensco Offshore. Co*., 2013 WL 2389910 (E.D. La.,May 30, 2013), citing *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967). Further, when interpreting a contract under general maritime law, the "court may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous." *Magee*, citing *Corbitt v. Diamond M. Drilling Co*., 654 F.2d 329, 332-33 (5th Cir.1981) (citing *Hicks v. Ocean Drilling and Exploration Co*., 512 F.2d 817, 825 (5th Cir.1975)). The "basic principle of contract interpretation in [maritime] law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." *Magee*, citing *Chembulk Trading LLC v. Chemex Ltd*., 393 F.3d 550, 555 (5th Cir.2004) (citing *Foster Wheeler Energy Corp. v.*

*An Ning Jiang MV*, 383 F.3d 349, 354 (5th Cir.2004)).[8] Words in a contract are given their plain meaning as understood by a reasonable person. *Sander v. Alexander Richardson lnv.'s*, 334 F.3d 712, 716 (8th Cir. 2003).

A reasonable person cannot debate that the terms of the Release are clear and unambiguous and form an enforceable contract.

**4. Appeal Procedures Must Apply the Policies that Existed at the Time of the Execution of the Release.**

The appeal from an executed Release must apply the policies that existed from the date of execution of the Release. To allow BP to benefit from "further legal proceedings" to change the terms of the appeal policies would contradict the exact language that the Release sought to enforce. "This individual release shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the Released Parties in any current or future litigation." The process and procedures for completing the appeal must be those that were in place at the time the Release was executed. Accordingly the appeal policies in place at the time of the execution of the Release must be applied to the appeal process.

BP and the Claimants are bound at the time the Release is executed. Only BP would appeal from a fully executed Release as the Claimants execution of the Release indicates an acceptance of the Release and is thereby bound by the terms of same. If BP were allowed to incorporate a change in terms at the appellate process from a fully executed Release then they would be operating outside the clear and express terms of the Release. BP would in substance not be bound by the terms of the Release even though the Claimant clearly was.

Furthermore, BP could have negotiated an exception to the finality of the Release by carving out changes to the terms of the agreement during an appeal period but did not do so. In

[8] The Settlement Agreement is to be interpreted pursuant to maritime law. Doc. 6430-1, Section 36.1.

fact BP sought to go to great lengths to explain to the Claimant the finality of such a Release and the fact that a Claimant could not come back if a Claimant's situation improved. BP must not be allowed to benefit when violating the Release is beneficial to them by seeking to change the policies of the appeal.

**5. The Court Should Enforce the Terms of the Release.**

The parties can argue about the effects of the rulings on the various issues that have occurred in the judicial system since the "BEL" Panel's October 2, 2013 decision. What cannot be debated are the explicit terms of the executed Release as outlined above. The Release specifically considers that "current or future litigation" may change the terms of the settlement. But equally clear is that such future happenings would have no effect on Claimant, if the Claimant accepted what was then offered and just signed the Release. That is what happened – before any arguably adverse decision was ever handed down. Thus, an enforceable contract (release) existed on October 2, 2013, October 7, 2013 and September 19, 2013, respectively. It still does. For all of these reasons, Claimants ask that the terms of the Release be enforced.

Respectfully submitted, this 23th day of April, 2014.

***/s/ Gerald Joseph Diaz, Jr.***
GERALD JOSEPH DIAZ, JR.
BRANDON C. JONES
THE DIAZ LAW FIRM
208 Waterford Square, Ste 300
Madison, MS 39110
Telephone: (601) 607-3456
Facsimile: (601) 607-3393
jdiaz@msattorneys.com
brandon@msattorneys.com

***/s/ Timothy W. Porter***
TIMOTHY W. PORTER
La. Bar Roll No. 24863
PORTER & MALOUF, P.A.
P.O. Box 12768
Jackson, Mississippi 39236
Telephone: (601) 957-1173
Facsimile: (601) 957-7366
tim@portermalouf.com
*Attorney for Claimants*

CERTIFICATE OF SERVICE

I hereby certify that on this 23th day of April, 2014, the above and foregoing Memorandum in Support of Motion to Enforce Settlement Release has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve, and that the foregoing was electronically filed with the Clerk of Court of the Eastern District of Louisiana using the CM/ECF System, which sent a notice of electronic filing in accordance with the procedures established in MDL 2179.

***/s/ Gerald Joseph Diaz, Jr.***
GERALD JOSEPH DIAZ, JR.
BRANDON C. JONES
THE DIAZ LAW FIRM
208 Waterford Square, Ste 300
Madison, MS 39110
Telephone: (601) 607-3456
Facsimile: (601) 607-3393
jdiaz@msattorneys.com
brandon@msattorneys.com