UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: Oil Spill by the Oil Rig          MDL No. 2179
"Deepwater Horizon"
in the Gulf of Mexico,
on April 20, 2010          SECTION: J

This Document Relates to:

All Cases          JUDGE BARBIER
         MAG. JUDGE SHUSHAN

_____/

**MEMORANDUM IN SUPPORT OF**
**MOTION TO APPOINT SPECIAL MASTER**

1

# TABLE OF AUTHORITIES

**CASES**

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.,*
  55 F.3d 768, 820 (3d Cir.1995) ......................................................................12

*In re High Sulfur Content Gasoline Products,*
  517 F.3d 220 (5th Cir.2008) ..................................................................... 12, 13

*Strong v. BellSouth Telecommunications, Inc.,*
  137 F.3d 844, 849 (5th Cir.1998) ...........................................................12, 13


**RULES**

Fed. R. Civ. P. 23 ................................................................................................ 12

Fed. R. Civ. P. 53 .............................................................................................3, 16


**TREATISES**

*Manual for Complex Litigation* § 14.231 (4th ed. 2004)..............................................13

**MAY IT PLEASE THE COURT:**

Appearing in proper person, comes Economic and Property Damages Class Member Kevin LeMaire ("Mover") respectfully to request that the Court enter an order appointing a Special Master pursuant to Rule 53 of the Federal Rules of Civil Procedure and the inherent authority of the Court, for the purpose of reviewing, auditing, or testing the voluminous submissions of attorney and law firm time and expense records for accuracy and appropriateness. Based upon information and belief, there are no controls, policies, procedures, or practices currently in place to discourage, detect or prevent inaccurate and inappropriate time and expense submissions. This appointment should additionally include the duty to examine and investigate past and pending time and expense records submitted to the Court through the Administrator of the Common Benefit Fee Fund, and to report to the Court any irregularities, inaccuracies or improper submissions. Finally, it is respectfully requested that this appointment include the duty to make any necessary recommendations to the Court for controls, policies, procedures, and practices essential to establish a well-defined and transparent process to verify the accuracy and appropriateness of all time and expense submissions.

## BACKGROUND

Beginning December 15, 2010, and continuing through the present, attorney and law firm time and expense records have been submitted to Mr. Philip Garrett, CPA, who was *retained* by Plaintiffs' Liaison Counsel to assist and provide accounting services to Plaintiffs' Liaison Counsel, the Plaintiff's Steering Committee, and supposedly the Court in MDL 2179. Mr. Garrett's retention by Plaintiffs' Liaison Counsel was approved by the Court. *See* Pretrial Order No. 9 ("PTO No. 9"). (R.Doc. 508).

According to Section II(4) of PTO No. 9, all time and expense records shall be submitted to the Philip Garrett website, either electronically or manually.

Also according to Section II(4) of PTO No. 9, time and expense submissions must be submitted timely, on a monthly basis, to PG electronically or manually at the website set up to handle time/billing submissions www.GarrettCo-CCMS.com/bp/. Section II(4) also says, if the submission is made manually instead of electronically, it will be submitted together with a summarization of the total of member firm time broken down by each separate name of time keeper and Litigation Task Definition, the time spent during the preceding month and the accumulated total of all time incurred by the firm during the particular reporting period.

*Importantly*, Section II(5) of PTO No. 9 says the summary report forms shall be certified by a senior partner in each firm attesting to the accuracy and correctness of the monthly submission.

Since being retained by the attorneys in this MDL proceeding, Mr. Garrett has assisted in "compiling submissions" and providing reports to Plaintiffs' Liaison Counsel who are to submit the reports to the Court on a monthly basis. Those reports are to include both time and expenses and summarize, with back-up detail, the submissions of all firms. *See* PTO No. 9, Section I(3).

By Order of the Court dated May 17, 2012, a separate Common Benefit Fund was established pursuant to the terms of the Economic and Property Damages Settlement Agreement and the Medical Benefits Class Action Settlement Agreement ("Medical Settlement Agreement") (collectively, the "Settlement Agreements") for the payment of common benefit attorneys' fees and costs to Economic Class Counsel ("ECC") and the other Common Benefit Attorneys ("CBA") who have submitted time and costs in compliance with PTO No. 9, subject to approval and order of the Court. (R.Doc. 6532).

4

In that same Order, Mr. Garrett, who by all accounts is <u>still</u> retained by Plaintiffs' Liaison Counsel in this proceeding, was also appointed by the Court as the Administrator of the Common Benefit Fee Fund ("Administrator"). (R.Doc. 6532).

Based upon recent communications with Co-Lead Class Counsel, Stephen A. Herman, it is Mover's reasonable belief that, between December 15, 2010 and the present, there have been no procedures, protocols, guidelines or any other methodology established or utilized by Mr. Garrett or Plaintiffs' Liaison Counsel to review, test, audit, reject and approve of attorney and law firm time and, possibly, expense submissions.

There are time and expense reporting standards and procedures found within PTO No. 9 (including Litigation Task Definitions found in "Exhibit A" to that PTO), and Pretrial Order No. 56 (amending PTO No. 9). However, it is unclear if any disinterested court officer is verifying if even those standards and procedures are being obeyed. It appears Plaintiffs' Liaison Counsel and the CPA/staff they retained are "compiling submissions" and are presumably preparing monthly reports for the Court.[1] At present, other than the certification of a "summary report form" by a senior partner in each firm, who are all interested parties, the time submissions are not subjected to any method or procedure that would discourage, prevent, detect or protect against possible inappropriate billing activity.

It also appears no disinterested court officer, such as a Special Master, has been working with the Court to review, audit, or test the voluminous attorney and law firm time and expense records for potential inappropriate billing practices such as, but not limited to, billing unqualified clerical staff as paralegals or law clerks, billing clerical work as paralegal work, unauthorized or unnecessary secretarial or clerical overtime, overstaffing, redundancy, duplication of work,

---

[1] Section I(3) of PTO No. 9 requires that submission of time and expense records to Mr. Garrett and the Court shall be considered as if submitted under seal. (R.Doc. 508).

5

unproductive or excessive time, dereliction of required billing judgment, or that expenses for such items as mileage, hotels, airfare, and meals were necessary, reasonable and expended in connection with work that was performed for the benefit of the Class as a whole.

Mover has been a paralegal in the State of Louisiana for nearly 25 years where he has worked almost exclusively on environmental and toxic tort matters. Mover is very knowledgeable about the nature and type of work performed by individuals who qualify by experience, education and training as paralegals. Mover has had to prepare, review, audit and maintain time and expense records for submission to courts in connection with class action litigation and settlements, as well as for submission to legal billing auditors employed by the Louisiana Department of Insurance and the Louisiana Department of Justice. Mover has many years of experience as a paralegal on numerous class action matters in Louisiana and other state and federal courts, and is familiar with billing procedures used by class action attorneys and law firms, including some appointed by this Honorable Court to the Plaintiffs' Steering Committee.[2]

During the years of keeping, reviewing, editing, and even auditing legal billing records in connection with class action matters, Mover has seen bookkeepers, secretaries and other clerical staff billed as paralegals when they had absolutely no paralegal experience, training or education. Additionally, the work performed by the unqualified "paralegals" was work not even remotely legal in nature, but was billed at the higher paralegal rate. Mover has seen first-hand the billing of redundant work, such as circulating documents to practically every person on a staff within a law firm for review and billing for something that was not even within the realm of their duties, and which did nothing to benefit the class. Another practice Mover has frequently seen is where

---

[2] Mover is not claiming to be an expert or authority in legal billing. Mover is, however, attempting to explain to the Court the basis upon which Mover makes his reasonable request that a Special Master be appointed.

a law firm bills time for staff members whose job is to keep track of and enter into the computer database the firm's time and expenses that will eventually be presented to the Court in support of an attorney fee petition. This particular type of work generates absolutely no benefit to the class members.

Mover respectfully feels it is neither cynical nor unreasonable to believe that attorneys may inappropriately bill time and expenses in an effort to inflate or bulk up the proposed "value" of any actual contribution to benefit the Class Members, while hoping to increase the size of his/her share of the Common Benefit Fee Fund.

Class Members, including Mover, have a strong interest in, and genuinely care about, honesty and integrity in all aspects of the Settlement Agreements, including where there may be any unreasonable and unfair windfall profit to attorneys and law firms as a result of inaccurate or inappropriate time and expense billing. Any inaccurate or inappropriate billing is unreasonable and unfair to the Class Members who must not only certify that the documents and information they submit to the Deepwater Horizon Economic Claims Center ("DHECC") are accurate and correct, but must also have their submissions subjected to layers of disinterested review, auditing, testing, investigation and confirmation - all designed to discourage, detect and prevent any inappropriate, inaccurate, and fraudulent claims.

After searching the Court records of this matter, Mover has not been able to locate or acquire any information or records in the public domain that informs Class Members of any procedures, protocols, guidelines or any other methodology used by the Administrator, a Special Master, or anyone else, to review, test, audit, reject and approve of time and expense submissions for eventual payment and reimbursement from Common Benefit Fee Fund.

With no information publicly available, Mover next submitted a formal request on March 24, 2014 to the Administrator of the Common Benefit Fund, Philip Garrett, CPA, seeking information or documents responsive to the following questions:

> a. Does the Administrator and those under his supervision independently verify whether or not each individual identified as a paralegal on time and expense records submitted by the ECC and CBAs is actually a person qualified by education, training or experience and who performs specifically delegated substantive legal work for which a lawyer is responsible?
>
> b. Does the Administrator and those under his supervision use a definition, guideline, or criteria other than the current ABA definition of "paralegal" to verify whether or not each individual identified as a paralegal on time and expense records submitted by the ECC and CBAs is actually a paralegal performing actual paralegal work? If so, would you identify the source of the definition, guideline, or criteria?
>
> c. Are the ECC and CBAs required to provide the Administrator, including those under his supervision, with resumes, paralegal certificates or diplomas, or other verifiable documents detailing the education, experience and training of the individual being billed as a paralegal?
>
> d. Does the Administrator and those under his supervision perform some type of examination of the paralegal time and expense records to determine if the work billed as "paralegal" work is non-clerical, non-duplicative, and substantive legal work? Can you provide any details on what these examinations involve?
>
> e. Is billing for paralegal time that was not expended for the common benefit of the class allowed?
>
> f. Is billing for paralegal expenses and costs that were not expended in connection with work for the common benefit of the class allowed?
>
> g. Is time submitted for paralegal work that was actually secretarial or clerical work paid at a paralegal rate, or at a secretarial or clerk rate?

*See*, **Exhibit A**, March 24, 2014 letter from Kevin LeMaire to Philip Garrett, CPA, and copied to Class Counsel, counsel for the BP Parties, and Bridgett Rosa, Office Manager for Philip A. Garrett, CPA.

As of the date of this motion, Mr. Garrett has not provided any written or oral response to the questions in Mover's March 24, 2012 correspondence. In fact, neither Mr. Garrett nor his Office Manager has even returned Mover's phone calls and voice mail.

8

On April 21, 2014, Mover sent a written correspondence to Co-Lead Class Counsel, Stephen J. Herman, Esq. and James Parkerson Roy, Esq., explaining to them that Mover is attempting to determine what guidelines, procedures, protocols and methods are used by the Administrator and anyone acting under his supervision to perform their review, testing, auditing, rejection, and approval of paralegal time and expense submissions by the ECC and CBA. *See* **Exhibit B**, April 21, 2014 letter from Kevin LeMaire to Messrs. Herman and Roy, p.1, ¶1.

Mover's correspondence also stated that he would like to know what qualifications the Court in the *In re: Deepwater Horizon* MDL 10-2179 case is requiring an individual to possess in order to be reimbursed at paralegal/legal assistant rates, and what work or tasks qualify as paralegal/legal assistant work. *See* **Exhibit B**, p.1, ¶1.

Mover explained his concerns, then requested Co-Lead Class Counsel to respond to the questions presented to the Administrator on March 24, 2014, and for the names only of each individual for whom each ECC and CBA has submitted paralegal or legal assistant time and expense records to the Administrator in connection with this matter. *See* **Exhibit B**, p.2, ¶¶2-4.

In an email response later that evening, Mr. Herman provided the following statement to Mover:

> "No common benefit fee petition has been submitted to the Court. No common benefit paralegal or other attorney / staff time has been or is being "reimbursed" or awarded. Ultimately, the Court will establish any guidelines, procedures, protocols and/or other methods to determine whether and how to compensate law firms that have contributed to the common benefit of Economic and/or Medical Class Members and/or other Plaintiffs in MDl 2179 for their efforts. At this point, I think your request (even assuming and without conceding that you have standing and the request is appropriate) is premature."

*See* **Exhibit C**, April 21, 2014 email message from SHERMAN@hhklawfirm.com.

Because Mr. Herman's email statement did not answer any of the questions or requests, Mover submitted a more detailed and specific correspondence to Mr. Herman on April 22, 2014.

9

In his reply, Mover attempted to clarify what Mr. Herman said in his non-responsive email statement, as well as to reiterate to Mr. Herman his concerns and the importance of the information requested. *See* **Exhibit D**, April 22, 2014 letter from Kevin LeMaire to Mr. Herman.

In an email response later that night, Mr. Herman provided the following statement to Mover:

> "<u>Since BP has agreed to pay common benefit fees and expenses over and above the Class Members' recoveries, I am not sure why you would have any interest or care</u>, but, for whatever it's worth, paralegal time is submitted with attorney time for whatever consideration the Court might ultimately give it, when a common benefit fee petition is submitted. It's not (at least to my knowledge) being submitted by firms as a Held Cost, and has definitely not been "reimbursed" as a Shared Expense."

*See* **Exhibit E**, April 22, 2014 email message from SHERMAN@hhklawfirm.com. Emphasis added.

Mr. Herman's *"BP is paying the bill; why would you care"* statement only amplified Mover's concerns about inaccurate or inappropriate billing going undetected and Mover's concerns are no longer limited to paralegal time and expense. There are no measures or procedures yet in place to discourage, detect, prevent or correct inaccurate or inappropriate time and expense submissions. The Administrator simply correlates the time and expense submissions, and then prepares a summary report to be presented to the Court. The only semblance of a "procedure" presently in place to insure the time and expense submission is accurate and correct is the certification submitted each month by a senior partner from each of the law firms competing to get their share of the hundreds of millions of dollars in the Common Benefit Fee and Expense Fund.

Mover replied to this communication from Mr. Herman with the following email message:

10

"Just so I can be certain I am completely understanding what you've told me, you have no knowledge of any paralegal/legal assistant time being submitted to Mr. Garrett for any reason between December 10, 2010 and the present in connection with the referenced matter?"

See **Exhibit F**, April 22, 2014 email message from Mover to Mr. Herman at 5:44 pm.

Mr. Herman then replied to Mover:

"I did not say that. I do not understand your motives. Please let me know if you have a question about your lawsuit or claim. Otherwise, I think I have answered you (sic) questions. Best wishes.

See **Exhibit F**, April 22, 2014 email reply message from Mr. Herman to Mover at 6:41 pm.

Then, at 2:07 am on April 23, 2014, Mr. Herman sent Mover another email (this one not copied to all Class Counsel as all prior emails had been) providing the following statements:

"- Shared Expenses are submitted to Liaison Counsel for approval. Tens of millions of dollars in Shared Expenses were incurred by Common Benefit Attorneys. Since the Settlement with BP, we have been reimbursed. Paralegal time is not submitted, billed or reimbursed as a Shared Expense.

- Held Expenses are submitted to Mr. Garrett. They are being "held". No one has asked the Court to review, award or order that they be reimbursed to the Common Benefit Attorneys. But, in any event, to my knowledge, paralegal time has never been submitted as a Held Expense.

- Attorney and Paralegal Time are submitted to Mr. Garrett. However, Mr. Garrett does not determine whether or how to value such common benefit time. Those decisions will be made by the Court. Because PSC / Class Counsel / Common Benefit Attorneys have never made a common benefit fee petition, the Court has had no reason to establish any criteria for how such common benefit time may or may not be valued."

See **Exhibit G**, April 23, 2014 email message from Mr. Herman at 2:07 am.

Based upon the foregoing statements from Mr. Herman, one can reasonably conclude that no one, particularly no disinterested individual or entity, is in place to review, audit, or test the accuracy and appropriateness of the voluminous attorney and law firm time and expense submissions in this matter to date.

11

## ARGUMENT

### I. Protection From Abuse Through Inaccurate Billing Practices Does Not Exist

The Court has a duty under Rule 23 of the Federal Rules of Civil Procedure to protect absent class members and supervise class actions. To fulfill its duty to review and approve class action settlement agreements, the Court is obligated to explore the manner in which fees of class counsel are to be paid and the reasonableness of the amount paid for their services. *In re High Sulfur Content Gasoline Products,* 517 F.3d 220 (5th Cir.2008); *Strong v. BellSouth Telecommunications, Inc.,* 137 F.3d 844, 849 (5th Cir.1998). The purpose of this requirement is to protect the nonparty members of the class, and minimize conflicts between the attorneys and the class, and the named plaintiffs and the absentees. *Id.* Emphasis added. The Court's examination of attorneys' fees also guards against the public perception that attorneys use the class action to obtain large fees at the expense of the class. *Id., citing, In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.,* 55 F.3d 768, 820 (3d Cir.1995).

This Honorable Court is not bound by any agreement of the PSC, Class Counsel and the BP Parties as to the amount of attorneys' fees. Furthermore, the fact that the BP Parties will pay the fees from their own funds does not limit the Court's obligation to review the reasonableness of the agreement as to fees. *Strong,* 137 F.3d at 849-50. "Even when the district court finds the settlement agreement to be untainted by collusion, fraud, and other irregularities, the court must thoroughly review the attorneys' fees agreed to by the parties in the proposed settlement agreement." *Id.,* at 850. To fulfill its duty, the court must not cursorily approve the fee provision of a class settlement or delegate that duty to the parties. *In re High Sulfur Content,* 517 F.3d at 228. Emphasis added.

12

A "clear sailing" agreement exists which provides that the BP Parties will not oppose the application for Common Benefit Fees as long as it does not exceed a stated amount, here six hundred million ($600,000,000) dollars. That "clear sailing" agreement increases the risk of a conflict of interest and courts have a greater duty to police such agreements. The Court's duty to review attorneys' fees is no less compelling in common fund cases like this case, where a separate fund to pay attorneys' fees is created as part of the class action settlement. *See Strong*, 137 F.3d at 849.

Although exacting judicial review of fee applications may be burdensome, it is "necessary to discharge the [court's] obligation to award fees that are reasonable and consistent with governing law." *In re High Sulfur Content*, 517 F.3d at 228, *citing Manual for Complex Litigation* § 14.231 (4th ed. 2004).

> "<u>On a broad public level, fee disputes, like other litigation with millions at stake, ought to be litigated openly</u>. Attorneys' fees, after all, are not state secrets that will jeopardize national security if they are released to the public. As The Third Circuit has noted, "'[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view.'" *United States v. Cianfrani*, 573 F.2d 835, 851 (3d Cir. 1978). <u>From the perspective of class welfare, publicizing the process leading to attorneys' fee allocation may discourage favoritism and unsavory dealings among attorneys even as it enables the court better to conduct oversight of the fees</u>. If the attorneys are inclined to squabble over the generous fee award, they are well positioned to comment — publicly — on each other's relative contribution to the litigation."

*In re High Sulfur Content*, 517 F.3d at 228. Emphasis added.

A disinterested Special Master, through sound legal bill auditing protocols, procedures, and methodology, would be able to examine time and expense submissions to determine if they are accurate and appropriate, and if they reflect the exercise of adequate billing judgment, to insure that unqualified, duplicative, redundant, unproductive or excessive time is not part of the

13

submission, and that expenses for such items as mileage, hotels, airfare, and meals were necessary, reasonable and actually expended in connection with genuine work that was performed for the common benefit of the Class.

Attached as a limited example is a May 5, 2010 email from James "Jim" Roy to all plaintiffs' counsel in the "Gulf Oil Pollution" litigation inviting them to "The Last Louisiana Seafood Supper" for Food, Drinks and Fun on St. Charles Avenue following a 5pm plaintiffs' attorney meeting. *See,* **Exhibit H.** This is a type of questionable attorney activity and expense that Mover would look for if he had access to the sealed time and expense submissions. There may even be time billed for clerical staff that assisted in preparing for and attending such a gala. However, a Special Master would have access to those submissions and could determine if any of the Food, Drinks and Fun was inappropriately billed as a Shared or Held Expense.

Class Members, including Mover, have a strong interest in, and care significantly about, any opportunity and potential for attorneys and law firms to receive an unfair and improper windfall profit or unreasonable fees, particularly if that windfall is achieved through any type of inaccurate or inappropriate billing for time and expense. The fact the BP entities, and not the Class, are paying the fees and reimbursing the expenses does not change the interest or lessen the concerns of Mover that only accurate and appropriate time and expense submissions be made in connection with this proceeding to be considered by the Court.

On February 28, 2014, the Common Benefit Fee Qualified Settlement Fund had a balance of $208,508,987.08 with an additional fund of $22,403,867.78 being held by the Clerk of Court.[3] The BP Parties have agreed to pay up to $600,000,000, if awarded by the Court, for attorney fees and expenses in connection with the Settlement Agreements. It is in the best interest of the ECC,

---

[3] *See* R.Doc. 12639-1, April 4, 2014 letter from Philip A. Garrett, CPA to Honorable Judge Carl Barbier.

PSC, Liaison Counsel and other CBA to seek to have the Court award them the maximum amount of fees they will individually seek.

To Mover's knowledge, the Common Benefit Fee Fund is the only Qualified Settlement Fund in the MDL 2179 proceedings that is not being reviewed, audited or tested in some way by completely disinterested officers of the Court.

Unlike the layers of authentication, verification, certification and fraud detection, prevention and protection procedures in place at the DHECC, the Common Benefit Fee Fund is being handled by interested parties - Liaison Counsel and the CPA they retained. They generate a report without any review, auditing, or testing from any disinterested officer of the Court, and submit that summary report to the Court.

As this Honorable Court is aware, even the multitude of layers of detection, prevention and protection at the DHECC has not prevented several attorneys from standing accused of improper conduct after an investigation conducted by a disinterested officer of the Court. *See* September 6, 2013 *Report of Special Master Louis J. Freeh*, R.Doc 11287, and January 17, 2014 *Report of Special Master Louis J. Freeh*, R.Doc 12174. Mover very respectfully avers the appointment of a Special Master as requested is necessary and not premature.

## CONCLUSION

There is absolutely nothing wrong with lawyers ethically and legally earning substantial attorney fees in this matter. However, if inaccurate or inappropriate billing enters into the calculation of those fees, then any award based upon those billings would be manifestly unreasonable and unfair. Based upon the available public record, only those having an interest in those fees are policing themselves and providing summary reports to the Court.

For the reasons set forth herein, it is respectfully urged that the Court GRANT Mover's Motion to Appoint Special Master.

Respectfully submitted,

By: _____

Kevin LeMaire, *in proper person*
16438 Spanish Oaks Boulevard
Prairieville, Louisiana 70769
Telephone: (225) 335-5521
Email: kuhnrod@aol.com