UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010<br><br>**This Document Relates to:**<br>2:10-cv-02454, 2:10-cv-01768 | )  MDL NO. 2179<br>)<br>)  SECTION: J<br>)<br>)  JUDGE BARBIER<br>)  MAG. JUDGE SHUSHAN<br>)<br>)<br>)  **PLAINTIFF'S LR 56.2 RESPONSE TO BP**<br>)  **DEFENDANTS' STATEMENT OF**<br>)  **UNDISPUTED MATERIAL FACTS (ECF**<br>)  **No. 12676-2)** |

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.2, Plaintiff Center for Biological Diversity, Inc. (the "Center") respectfully submits this Response to BP Defendant's Statement of Undisputed Material Facts, ECF No. 12676-2.

1. Uncontested.

2. Uncontested, except as to the use of the word "operated."  There is a question about who was operating various parts of the well operation but not the platform itself.  *See also* contested fact 20.

3. Uncontested.

4. Uncontested.

5. Contested to the extent that BP claims that the "source" of the oil that was discharged into the ocean was the *Deepwater Horizon* riser.  As the Court has held, "the uncontrolled movement of oil **began in the well**."  ECF No. 5809 at 19 (emphasis added).

6. Contested.  The source of the oil that was discharged into the Gulf was the Macondo Well, not from the *Deepwater Horizon* or its appurtenances.  *Id.*; *see also* ECF No. 12673-5, Ex. 1 at ¶ 61 (Center's Statement of Material Facts) (BP admitting that oil flowed

1

"from the Macondo well, some of which flowed into and upon the Gulf of Mexico and some of which reached the shoreline of the United States."

7.  Contested.  The source of the oil that was discharged into the Gulf was the Macondo Well, not from the *Deepwater Horizon* or its appurtenances.  *Id*.; *see also* ECF No. 12673-5, Ex. 1 at ¶ 61 (Center's Statement of Material Facts) (BP admitting that oil flowed "from the Macondo well, some of which flowed into and upon the Gulf of Mexico and some of which reached the shoreline of the United States." ). Leakage continued to occur from the risers into August.

8.  Uncontested.

9.  Uncontested.

10. Uncontested.

11. Contested.  BP cites to nearly a hundred pages to support this assertion, without any particularized citation to specific passages in the Report.  The pages do not indicate that BP or Transocean were in "constant" communication with all federal and state agencies, and do not support Defendants' claim that they "fully cooperated" with said agencies.  The document also contains inadmissible hearsay and double hearsay, and is therefore inadmissible as evidence.

12. Uncontested.

13. Contested.  Exhibit 7 merely states, at page 18 (BP did not provide the pinpoint cite), that "a response website with consolidated information was established at http://www.deepwaterhorizonresponse.com." It does not indicate who established the website.

14. Uncontested.

15. Uncontested.

16. Uncontested.

17. Contested. The Center's initial complaint was not "jurisdictionally invalid." It was premised upon, *inter alia*, the discharge of toxic pollutants under the Clean Water Act. In such situations, Congress authorized citizens to file immediate suit. 33 U.S.C. § 1365(b). Furthermore, the Center's notice letters specifically stated that hazardous substances were released into the environment which required reporting under EPCRA and CERCLA, "including, *but not limited to*," benzene, toluene, and xylene.

18. Contested. The *DEEPWATER HORIZON* was used in connection with the production of oil. The common definition of the term "production" means the "process of making something for sale or use." The *DEEPWATER HORIZON* was used in the "process of making" oil for sale, as it took the initial steps of well exploration and development to begin the pumping of oil from the Macondo Reservoir.

19. Uncontested at this time.

20. Contested. There are facts in dispute that may prove that BP was an "operator" of the *DWH*. For instance, BP may have exercised a degree of control over the *DWH* that would cause it to be considered an "operator" under EPCRA. Furthermore, the contract cited by BP pertains to movement of the *DWH* only, not to drilling activities that were overseen and directed by BP personnel. *See, e.g.,* ECF No. 12673-2 (Center's Statement of Undisputed Material Facts) at ¶ 16 (discussing BP's involvement in ordering personnel aboard the *DWH* to inject excess spacer into the well such that BP could avoid the reporting and disposal requirements of the Resource Conservation and Recovery Act).

21. Contested. The Court dismissed the D1 Master Complaint, not the Center's complaints.

22.    Contested.  The passage cited by BP is not a legal holding, but dicta.  Relevant here, the Fifth Circuit also stated:

> "The defendants' insistence that the claim is moot because information about the spill is already publicly available is unavailing, at least on the current record. First, the claim that information about the disaster may be found by hunting on the Internet ignores the fact that EPCRA places an affirmative statutory duty on the owner or operator of the facility to report the information. Second, it ignores the EPCRA requirement that reports provided by owners or operators be maintained by state emergency planning authorities and be made available to the public at a designated location. *See* 42 U.S.C. §§ 11001(a), 11044(a). The obvious advantage of this requirement is to have vital health information available in one easily accessible place. Finally, although the defendants claim that the information is otherwise readily available, their citation to several government web sites is unconvincing. Our review of those web sites reveals a voluminous amount of information about the spill and the Government's response, but the specific information required by EPCRA is not immediately apparent." 704 F.3d 413, 430.

23.    Contested.  The amended complaint alleges that Defendants "have discharged [and] continue to discharge, or are reasonably likely to continue to discharge, pollutants, *including but not limited to*, oil and toxic pollutants, and chemical dispersants.  Discharge of the toxic pollutants, as identified in 40 C.F.R. § 401.15, likely include, *but are not limited to*, benzene, toluene, naphthalene, polynuclear aromatic hydrocarbons (PAHs)…fluoranthene, arsenic, cadmium, copper, mercury and nickel." ECF No. 439 at ¶ 60 (emphasis added).  The amended complaint further alleges that "[u]pon information and belief, BP knows the quantities, or at least the range of quantities, of toxic pollutants released into the environment associated with the oil spilled from the Deepwater Horizon well and platform." *Id*. at ¶ 66; *see also* ¶ 93 (alleging that Defendants violated EPCRA "[b]y releasing numerous hazardous substances in excess of the applicable reportable quantities into the Gulf of Mexico[.]").

24.    Contested.  The chemicals identified in the Center's amended complaint are not exhaustive.  But for the purposes of the Center's Motion for Partial Summary Judgment, the Center admits that benzene, toluene, and xylene are natural components of crude oil.

4

25. Contested. This is a legally argument, not a factual assertion. The application and interpretation of the "petroleum exclusion" is at issue in this case. The Center contends that "hazardous substances" include specifically listed fractions of crude oil, per the plain language of CERCLA. 42 U.S.C. § 9601(14) ("The term [hazardous substance] does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph.").

26. Contested. Only wastes associated with the exploration, development, or production of crude oil are exempted from the definition of "hazardous wastes" by regulation. 40 C.F.R. § 261.4(b)(5). But a substance must be *actually* associated with these activities. For instance, the injection of excess "spacer" into the Macondo Well to avoid disposal requirements of hazardous wastes does not qualify for this exemption. *See* ECF No. 12673-2 at ¶ 16 (BP instructed crew to inject excess spacer to avoid hazardous waste reporting and disposal requirements). Furthermore, any materials used in connection with source control events do not qualify for this exemption, as ceasing the uncontrolled flow of oil from the Macondo Well is not the same as the exploration, development, or production of crude oil.

27. Contested. The cited document makes no mention of EPCRA and constitutes inadmissible hearsay.

28. Uncontested at this time.

29. Contested. There was no meaningful delay in the Center's actions. First, at the time this claim was remanded, the Court was preparing for the first Phase of trial in this matter. The Center believed that any motions filed during or after the Phase I trial would have been set aside due to the priorities of the Court. Second, as fully explained in the Center's "Motion to Lift Stay Under Pretrial Orders 11 & 25 and for Leave to Proceed Before Magistrate Judge," the

Center's individual complaints had been stayed by Order of the Court. The Center had no framework within which to prosecute its case. Only after it sought leave of the Court, which was granted after a status conference on January 6, 2014, did the Center have the ability to continue its case. Third, the aforementioned motion was served on the BP and Transocean Defendants, as well as every other party on the MDL-2179 service list, on September 13, 2013, just over four months after the final day of the Phase I trial. *See* LN54156388. Due to an inadvertent error on the Center's part, the motion was not filed on that date. The Center was later alerted to this fact and promptly filed the motion with the Court. ECF No. 11954 (December 12, 2013). BP offers no evidence that it has been prejudiced in any way by these reasonable actions. There has been no prolonging of this litigation, given that a third trial is still scheduled in this MDL, and BP itself has filed numerous appeals to the Fifth Circuit. Finally, the information required under EPCRA is not publicly available, as BP has not filed the *specific reports* that are required by the statute. There will be no duplicative disclosure by ordering the Defendants to comply with their affirmative statutory duty, and an environmental benefit will result because the next time an oil spill occurs, EPCRA reports will be promptly filed.

30. Uncontested.

31. Contested. BP personnel were involved in making decisions about source control. *See* ECF No. 12673-2 at ¶ 40 (outlining BP's involvement in decision-making about source control efforts).

32. Uncontested.

33. Contested. The Center's members have searched for the information required by EPCRA on the internet and have not found it. *Id*. at ¶ 38; *see also* Exs. 10-13 (Center's members' declarations).

34.     Contested.  The cited information does not identify the "chemical name or identity of *any* substance involved in the release."  42 U.S.C. § 11004(b)(2)(A) (emphasis added).  This information is supposed to be readily-accessible in one location – a followup written report available to the public.  42 U.S.C. § 11004(c) ("such owner or operator shall provide a written followup emergency notice (or notices, as more information becomes available) setting forth and updating the information required under subsection (b) of this section").  Here, Exhibit 16 only identified oil as the chemical being released.  The exhibit mentions benzene, but none of the other hazardous substances contained in oil, such as xylene and toluene.  Exhibit 17 fails to mention whether any of the hazardous substances contained in the oil, such as benzene, toluene, and xylene, were released from the spill.  Exhibit 18 is merely a chart identifying the typical chemical constituents of oil, not the "chemical name or identify of any substance *involved in the release*."  42 U.S.C. § 11004(b)(2)(A) (emphasis added).  Exhibit 19 is a transcript that generically mentions the dispersants used during the spill.  It fails to identify what hazardous substances were contained in those dispersants.  Exhibit 20 is a print-off from a EPA website that contains dozens of links to other webpages.  It does not identify what hazardous substances were involved in the release, other than vaguely referencing "dispersants."

35.     Contested. Many of the constituents contained in oil are "specifically listed" as hazardous substances by EPA, including benzene, toluene, and xylene.  Furthermore, EPCRA notice requires "[a]n indication of whether *the substance* is" designated as a hazardous substance.  42 U.S.C. § 11004(b)(2)(B)(emphasis added).  This information is supposed to be readily-accessible in one location – a followup written report available to the public.  42 U.S.C. § 11004(c) ("such owner or operator shall provide a written followup emergency notice (or notices, as more information becomes available) setting forth and updating the information

7

required under subsection (b) of this section"). As used in the statute, "the substance" refers backs to the "chemical name or identify of any *substance involved in the release*." 42 U.S.C. § 11004(b)(2)(A)(emphasis added). As pointed out in Para. 34, *supra*, none of the exhibits provided by Defendants indicate all the hazardous substances were actually released during the spill. They mention only oil and dispersants, not any of the hazardous chemicals contained in those substances. Exhibit 16 does not identify whether any of the substances discussed in the exhibit – oil and benzene – are "on the list referred to in section 11002(a) of this title." 42 U.S.C. § 11004(b)(2)(B). Exhibit 21 does not identify whether any of the substances discussed therein were released during the spill or are "on the list referred to in section 11002(a) of this title." 42 U.S.C. § 11004(b)(2)(B). Exhibit 22 does not identify whether any of the substances discussed therein were released during the spill or are "on the list referred to in section 11002(a) of this title." 42 U.S.C. § 11004(b)(2)(B). Exhibit 18 does not identify whether any of the substances discussed therein were released during the spill or are "on the list referred to in section 11002(a) of this title." 42 U.S.C. § 11004(b)(2)(B).

36.     Contested. The statute requires "[a]n estimate of the quantity of *any such substance* that was released into the environment." 42 U.S.C. § 11004(b)(2)(C). This information is supposed to be readily-accessible in one location – a followup written report available to the public. 42 U.S.C. § 11004(c) ("such owner or operator shall provide a written followup emergency notice (or notices, as more information becomes available) setting forth and updating the information required under subsection (b) of this section"). As used in the statute, "any such substance" refers back to the "chemical name or identify of any *substance involved in the release*." 42 U.S.C. § 11004(b)(2)(A). As pointed out in Para. 34, *supra*, none of the exhibits provided by Defendants indicate all the hazardous substances were actually released

8

during the spill. They mention only oil and dispersants, not any of the hazardous chemicals contained in those substances. Exhibit 23 merely states BP's position that 3.26 million barrels of oil were released during the spill, not an identification of the quantity of other hazardous substances that were released. Exhibit 24 similarly fails to identify a quantification of hazardous substances released during the spill, and only vaguely discusses the amount of oil that has been captured or removed by authorities and responders.

37. Contested. EPCRA requires that the "time and duration of the release" be readily-accessible in one location – a followup written report available to the public. 42 U.S.C. § 11004(c) ("such owner or operator shall provide a written followup emergency notice (or notices, as more information becomes available) setting forth and updating the information required under subsection (b) of this section"); 42 U.S.C. § 11004(b)(2)(D). The "release" refers back to the "chemical name or identify of any *substance involved in the release*." 42 U.S.C. § 11004(b)(2)(A). None of the cited exhibits state the time and duration of the release of all hazardous substances involved in the spill in one, accessible place. Exhibit 25 does not discuss the total time or duration of the release of hazardous substances, but focuses on events from early October 6, 2009 to May 5, 2010. Defendants cite to 41 pages of a narrative in Exhibit 13, which do not describe the "time and duration of the release" in one, easily-accessible location. A person would need to read through voluminous materials to obtain that information. Exhibit 3 does not describe, in one location, the time and duration of the release. It contains a generic chronology of events before, during, and after the spill. Exhibit 26 does not state the "time and duration of the release" of dispersants, only that they were used and that that usage stopped as of July 15, 2010.

38.     Contested.  EPCRA requires that the "media or medium into which the release occurred" be accessible in one location – a followup written report available to the public.  42 U.S.C. § 11004(b)(2)(E).  The "release" refers back to the "chemical name or identify of any *substance involved in the release*."  42 U.S.C. § 11004(b)(2)(A).  None of the cited exhibits state the media or medium into which the release of all hazardous substances involved in the spill occurred in one, accessible place.  Defendants cite to 10 pages in Exhibit 25 and 41 pages of Exhibit 13 as containing this information, but provide no pin-point cite where this *specific* information can be found.

39.     Contested.  The information required under 42 U.S.C. § 11004(b)(2)(F) is supposed to be readily-accessible in one location – a followup written report available to the public.  42 U.S.C. § 11004(c) ("such owner or operator shall provide a written followup emergency notice (or notices, as more information becomes available) setting forth and updating the information required under subsection (b) of this section").  As used in the statute, the "known or anticipated acute or chronic health risks *associated with the emergency*" refers back to the "chemical name or identify of any *substance involved in the release*."  42 U.S.C. § 11004(b)(2)(A).  That information is not available in one location for all hazardous substances released during the spill, and the exhibits cited by Defendants cannot meet this requirement.  Exhibit 27 does not identify any known or anticipated health risks of all hazardous substances released during the spill, and does not provide any type of medical advice for those who have been exposed.  Exhibit 28 does not identify any known or anticipated health risks of all hazardous substances released during the spill, and does not provide any type of medical advice for those who have been exposed.  Exhibit 17 is merely a MSDS sheet for crude oil; it fails completely to identify the health risks of other hazardous substances released during the spill,

10

including substances contained in oil.  Exhibit 22 discusses some of the potential health threats for exposure to dispersants in an occupational setting, but not for any other hazardous substances released during the spill.  It also fails to identify any chronic health risks associated with dispersant exposure. Exhibit 29 discusses general health precautions related to exposure to an oil spill, but not to any other specific hazardous substances, such as benzene, toluene, and xylene.  Exhibit 30 is focused on occupational exposures, not exposures to the public.  It also does not identify any known or anticipated health risks of all hazardous substances released during the spill, and does not provide any type of medical advice for those who have been exposed.  Exhibit 31 merely references the recorded occupational injuries and illnesses from April 22, 2010 to February 18, 2011.  It does not identify any known or anticipated health risks of all hazardous substances released during the spill, and does not provide any type of medical advice for those who have been exposed.  Exhibit 32 does not identify any known or anticipated health risks of all hazardous substances released during the spill, and does not provide any type of medical advice for those who have been exposed.  Instead, it is just a report of recorded illnesses during the spill.  Exhibit 33 does not identify any known or anticipated health risks of all hazardous substances released during the spill, and does not provide any type of medical advice for those who have been exposed.  It generally discuses dispersants and their impact on seafood.  Exhibit 34 does not identify any known or anticipated health risks of all hazardous substances released during the spill, and does not provide any type of medical advice for those who have been exposed.

      40.    Contested.  For notice to be sufficient under EPCRA, it must include **each** of the items listed in 42 U.S.C. § 11004(b)(2)(A)-(G), to the extent known at the time of notice and so long as no delay in responding to the emergency results.  The followup notice(s) must also "set[] forth and updat[e]" the information required in § 11004(b)(2)(A)-(G), and include the additional

information required in § 11004(c)(1)-(3).  Piecemeal publication of the required notice and followup information does not satisfy the statute.  Here, Exhibits 35 and 36 do not list chemical names, nor do they indicate whether any substances are listed in § 11002(a).  § 11004(b)(2)(A)-(B).  Exhibit 36 actually states that "[l]ight crude oil is a liquid mix of thousands of different chemicals in oil," without naming any of those "thousands" of chemicals.  ECF No. 12676-42 (BP Ex. 36).  Exhibits 35 and 36 do not provide an estimate of the quantity of substances released or the time and duration of the release.  § 11004(b)(2)(C)-(D).  While they include additional links for more information, they do not link to the "name and telephone number" of the person to be contacted.  § 11004(b)(2)(H).  Exhibit 30 focuses on the Occupational Safety & Health Administration's (OSHA) efforts to protect persons deployed to respond to the oil spill.  While this page (and its various embedded links) provide precautions important to response personnel, it is not designed to inform the general public on proper precautions to take as a result of the release.  § 11004(b)(2)(G).  Much of the information required by § 11004(b)(2)(A)-(H) is also not readily discernible from this page; for example, the contact information listed in BP's Exhibit 37 is not apparent in Exhibit 30.

     41.    Contested.  Exhibit 37 includes **only** a general phone number to obtain additional information.  It was not set up for purposes of EPCRA or for any release subject to EPCRA's reporting requirements.  Moreover, the cited hyperlink does not currently work.  Beyond these errors, the cited exhibit does not list chemical names, nor does it indicate whether any substances are listed in § 11002(a).  § 11004(b)(2)(A)-(B).  It does not provide an estimate of the quantity of substances released or the time and duration of the release.  § 11004(b)(2)(C)-(D).  It includes no mention of known or anticipated health risks nor advice regarding medical attention necessary for exposed individuals, and it includes no listing of proper precautions to take as a result of the

release.  § 11004(b)(2)(F)-(G).  It does not include any of the additional followup information required by § 11004(c)(1)-(3).

42. Contested.  Exhibits 23, 38, 39, and 40 do not list chemical names, nor do they indicate whether any substances are listed in § 11002(a).  § 11004(b)(2)(A)-(B).  Exhibits 38 and 39 do not provide an estimate of the quantity of substances released or the time and duration of the release.  § 11004(b)(2)(C)-(D).  While they include additional links for more information, they do not link to the "name and telephone number" of the person to be contacted (as identified in BP's Exhibit 37).  § 11004(b)(2)(H).  Exhibits 38 and 39 also state that EPA is "no longer updating these pages on a regular basis."  Much of the information required by § 11004(b)(2)(A)-(H) is also not readily discernible from this page; for example, the contact information listed in BP's Exhibit 37 is not apparent on Exhibit 30.  Exhibit 3, the On Scene Coordinator (OSC) Report (requested by the National Response Team on Nov. 18, 2010), was not submitted until September 2011, some 16 months after the explosion on the *Deepwater Horizon*.  Exhibit 3 at 2 (report cover page).  The contents and structure of the OSC Report are outlined in 40 C.F.R. § 300.165(b); requirements for emergency notification to the public are not identified as components of this Report.  The OSC Report is thus a separate summary of information that is not designed to serve the purposes of EPCRA.  In any event, the OSC Report was not a written followup emergency notice provided by the "owner or operator," since it was not published or produced by BP.  BP also cites 57 pages as containing this information.

43. Contested.  Exhibit 16 does not list chemical names, nor does it indicate whether any substances are listed in § 11002(a); it also do not provide an estimate of the quantity of substances released or the time and duration of the release.  § 11004(b)(2)(A)-(D). Exhibit 16 also does not satisfy the requirements for followup emergency notices because it does not

identify actions taken to contain the release as required by § 11004(c)(1).  It also fails to identify all hazardous substances released during the spill.  While Exhibit 21 identifies some chemical names and their associated health risks, it fails to include an estimate of the quantities of these substances released or the time and duration of release.  § 11004(b)(2)(A)-(D).  It also fails to identify all hazardous substances released during the spill.  Exhibit 28 links to various health monitoring reports, and names certain constituents present in crude oil, but does not include an estimate of the quantity of substances released or the time and duration of the release.  § 11004(b)(2)(C)-(D).  It also fails to identify all hazardous substances released during the spill.  Exhibit 31 summarizes injuries and illnesses (primarily occupational illnesses and injuries) reported by response workers after those injuries and illnesses occurred, but fails to include any of the information required by § 11004(b)(2)(A)-(G) and § 11004(c)(1)-(3).  Exhibit 41 does not list chemical names, nor does it indicate whether any substances are listed in § 11002(a); it also do not provide an estimate of the quantity of substances released or the time and duration of the release.  § 11004(b)(2)(A)-(D).  Finally, none of these exhibits include the "name and telephone number" of the person to be contacted (as identified in BP's Exhibit 37).  § 11004(b)(2)(H).

  44. Contested.  None of the exhibits cited lists chemical names, nor do they indicate whether any substances are listed in § 11002(a); they also fail to provide an estimate of the quantity of substances released or the time and duration of the release.  § 11004(b)(2)(A)-(D).  They also fail to identify all hazardous substances released during the spill, and therefore do not discuss what medical attention to seek for individuals exposed to those substances.  Exhibit 35 offers absolutely no specific advice regarding medical attention for those exposed to hazardous substances from the spill.  Exhibit 21 is designed for "health professionals" and also fails to provide specific advice regarding medical attention for all hazardous substances released during

the spill; instead, it pertains only to "light crude." Exhibit 17 similarly fails to identify all hazardous substances released during the spill, and therefore does not offer specific advice regarding medical attention for exposures to those substances. Exhibit 29 is also meant for health care professionals, so it is not written in a way that the average person may understand. It also fails to identify all hazardous substances released during the spill, and thus does not offer specific advice regarding medical attention for exposures to those substances.

45. Contested. BP admitted that oil from the Macondo Well reached the shores of the Gulf Coast states, including Florida, Louisiana, Texas, Alabama, and Mississippi. ECF No. 12673-2 at Ex. 1, ¶ 61. Each of these states have state emergency planning committees, and each of the seaside counties have local emergency planning committees. These areas were likely affected by the spill. 42 U.S.C. § 11004(b).

DATED this 5th Day of May, 2014.

Respectfully submitted,

        s/Charles M. Tebbutt
        Charles M. Tebbutt
        Daniel C. Snyder
        Law Offices of Charles M. Tebbutt, P.C.
        941 Lawrence St.
        Eugene, OR 97401
        Ph: 541-344-3505
        E-mail: charlie.tebbuttlaw@gmail.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 5, 2014, I electronically served the foregoing on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF System, which will send notification of such filing in accordance with the procedures established in MDL 2179.

                                          s/ Charles M. Tebbutt
                                          Charles M. Tebbutt
                                          Law Offices of Charles M. Tebbutt, P.C.