# EXHIBIT B

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SIERRA CLUB, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>BNSF RAILWAY COMPANY,<br><br>  Defendant. | CASE NO. C13-0967-JCC<br><br>ORDER DENYING DEFENDANT BNSF RAILWAY COMPANY'S MOTION TO DISMISS |

This matter comes before the Court on Defendant BNSF's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt. No. 38.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.[1]

## I. <u>BACKGROUND</u>

The above-captioned matter is a Clean Water Act "citizen" suit in which seven environmental advocacy organizations allege that BNSF Railway Company—an operator of railway lines that run from Wyoming to Washington—violates federal law by allowing its

---

[1] After the parties completed briefing on the instant motion and after BNSF's motion to dismiss for failure to state a claim was denied in the companion Eastern District of Washington case, Plaintiffs moved to file a second amended complaint in this matter. (Dkt. No. 71.) The proposed amendments involve the Rule 12(b)(6) arguments raised in the companion case. That motion will addressed in a separate order.

ORDER DENYING DEFENDANT BNSF
RAILWAY COMPANY'S MOTION TO DISMISS
PAGE - 1

DECLARATION OF DANIEL C. SNYDER
EXHIBIT B

railcars to discharge coal and related pollutants into protected waterways within Washington. (Dkt. No. 32.) Plaintiffs are Sierra Club, Puget Soundkeeper Alliance, RE Sources for Sustainable Communities ("RE Sources"), Columbia Riverkeeper, Friends of the Columbia Gorge, Inc., Spokane Riverkeeper, and Natural Resources Defense Council ("NRDC"). (*Id.*) Plaintiffs allege that each organization has members who "live, work, and recreate in the State of Washington." (*Id.* at ¶ 11.) They seek declaratory and injunctive relief against BNSF under the Clean Water Act for the allegedly unpermitted discharges, as well as "remedial relief, the imposition of civil penalties, and the award of costs, including attorney and expert witness fees." (*Id.* at ¶ 6.)

The thrust of Plaintiffs' allegations is as follows. Each time a BNSF train carrying coal travels through the state of Washington, it discharges coal, petroleum coke, and other coal byproducts "through holes in the bottoms and sides of the rails cars and by spillage or ejection from the open tops of the rail cars and trains." (*Id*. at ¶ 54.) Such discharges are alleged to be "especially frequent or severe when the[] coal trains pass over rough rail tracks, track changes, bridges, and switches; during transportation of coal over bumpy terrain, in windy conditions, at high operating speed, during steep descents and ascents and through sag-areas spanning steep ascent and descent reaches of track[]; during and after precipitation events; at moments of high crosswinds; and during derailments." (*Id.* at ¶ 58.) According to Plaintiffs, these discharges result in coal or related byproducts landing in protected waters each time a coal-carrying train "travel[s] adjacent to, over, [or] in proximity to waters of the United States." (*Id.* at ¶ 54, 62.) Because BNSF "has never obtained a NPDES permit allowing its discharges of coal pollutants . . . from rail cars and trains[,]" Plaintiffs allege that each discharge constitutes an unpermitted and unlawful discharge under the CWA. (*Id.* at ¶ 64.)

On April 2, 2013, Plaintiffs provided BNSF, the EPA Administrator and Regional Administrator, and the State of Washington notice of their intent to sue under the Clean Water Act for the allegedly unlawful discharges. (*Id.* at ¶ 8.) Plaintiffs supplemented the notice on May

ORDER DENYING DEFENDANT BNSF
RAILWAY COMPANY'S MOTION TO DISMISS
PAGE - 2

DECLARATION OF DANIEL C. SNYDER
EXHIBIT B

9, 2013 by informing BNSF and the government agencies that Spokane Riverkeeper and NRDC would also join the suit. (*See id.*, Exs. A, B.) More than sixty days after the original notice, on June 4, 2013, Plaintiffs filed the instant lawsuit. (Dkt. No. 1.) After voluntarily dismissing numerous defendants, Plaintiffs filed an amended complaint on July 29, 2013, which named only BNSF as Defendant.[2] (Dkt. No. 32.) BNSF then filed the instant motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Defendant raises two primary arguments: (1) Plaintiffs failed to provide sufficient notice of their intent to sue, as required under the Clean Water Act; and (2) Plaintiffs lack Article III standing to maintain the suit. (Dkt. No. 38.) The Court addresses each in turn.

## II. DISCUSSION

### A. Standard of Review

An action may be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. "When subject matter jurisdiction is challenged under [Rule] 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. A plaintiff [] must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Tosco Corp. v. Comt'ys for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (citations and internal quotations omitted). On a Rule 12(b)(1) challenge based on the pleadings, the Court assumes the plaintiff's factual allegations to be true and draws all reasonable inferences in its favor. *Doe v. See*, 557 F.3d 1066, 1073 (9th Cir. 2009). In doing so, a court must presume that "general allegations embrace those specific facts that are necessary to support the

---

[2] After completing briefing on the instant motion to dismiss, Plaintiffs sent BNSF a second supplemental Notice of Intent to Sue and moved to file a second amended complaint more than sixty days thereafter. The Court has not considered this supplemental Notice or the proposed amended complaint in considering the instant motion to dismiss. Rather, the Court concludes that the initial notices of intent were sufficient to withstand BNSF's motion to dismiss.

ORDER DENYING DEFENDANT BNSF
RAILWAY COMPANY'S MOTION TO DISMISS
PAGE - 3

DECLARATION OF DANIEL C. SNYDER
EXHIBIT B

claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). If a defendant challenges the factual underpinnings of the allegations, this presumption is removed and courts may look beyond the complaint in resolving the dispute. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

### B. Plaintiffs' Notices of Intent

In order to bring a citizen suit under the Clean Water Act, private plaintiffs must first notify alleged violators, as well as the EPA Administrator and the State, of their intent to sue at least sixty days before filing a complaint. 33 U.S.C. § 1365(b)(1)(A). A failure to provide sufficient notice deprives the Court of jurisdiction to consider a citizen plaintiff's claim. *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2009) ("The giving of a 60 day notice . . . is a jurisdictional necessity."); *Waterkeepers Northern California v. AG Industrial Mfg., Inc.*, 375 F.3d 913, 915 (9th Cir. 2003) ("[C]ompliance with this notice provision is required for jurisdiction.").

In order to comply with this requirement, a citizen plaintiff must send an intent-to-sue letter that contains:

> sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135(a). The letter must also state the name, address, and telephone number of counsel representing the citizen plaintiff. 40 C.F.R. § 135.3(c). The purposes of the notice provision are to provide the responsible government agencies the opportunity to take enforcement action and to enable the alleged violator to comply with the statute in order to avoid the citizen suit. *San Francisco Baykeeper, Inc. v. Tosco Corp*, 309 F.3d 1153, 1157 (9th Cir. 2002) (citing *Gwaltney of Smithfield v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59–61 (1987)).

ORDER DENYING DEFENDANT BNSF
RAILWAY COMPANY'S MOTION TO DISMISS
PAGE - 4

DECLARATION OF DANIEL C. SNYDER
EXHIBIT B

The notice requirement is "strictly construed" in the sense that notices must be provided and its basic requirements, such as identifying the plaintiff, may not be omitted. *Nat. Res. Def. Council v. Southwest Marine, Inc.*, 236 F.3d 985, 998 (9th Cir. 2000); *see*, *e.g.*, *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1355 (9th Cir. 1995) (affirming dismissal of citizen suit where notice letter did not provide identity or contact information of plaintiffs). But as the Ninth Circuit has made clear, plaintiffs need not "list every specific aspect or detail of every alleged violation." *Cmty. Ass'n v. Bosma Dairy*, 305 F.3d 943, 951 (9th Cir. 2002). The "key language in the notice regulation is the phrase 'sufficient information to permit the recipient to identify' the alleged violations and bring itself into compliance." *Id.* Notice is sufficient if it is "reasonably specific as to the nature and time of the alleged violations." *Ecological Rights Found. v. Pacific Gas and Elec. Co.*, 713 F.3d 502, 519 (9th Cir. 2013) (citation omitted); *see Tosco*, 309 F.3d at 1155 (notice sufficient if it is "specific enough to give the accused company the opportunity to correct the problem").

Here, Plaintiffs' notices of intent were "sufficiently specific to inform [BNSF] about what it was doing wrong." *Tosco*, 309 F.3d at 1159. At the outset, Plaintiffs' letter explains that BNSF allegedly violates 33 U.S.C. § 1311(a) because it discharges coal and other pollutants into waters of the United States without an NPDES or dredge/fill permit. (Dkt. No. 39-1, Ex. A at 5.) Thus, Plaintiffs' theory and the specific section of the CWA at issue are each clearly established in the letter. Additionally, it is beyond dispute that the notices specified the "person responsible for the alleged violations" (*id.* at 2–3 (naming BNSF as potential defendant and explaining that because "BNSF operates rail lines in [Washington], which rail lines [are used] for coal transport[,]" it is subject to CWA requirements); the name, address, telephone numbers of the organizations giving notice (*see id.* at 7–8); and the name and contact information for the notifiers' counsel (*Id.* at 8). There can be no dispute that these aspects of the notices satisfy the regulatory requirements.

//

ORDER DENYING DEFENDANT BNSF
RAILWAY COMPANY'S MOTION TO DISMISS
PAGE - 5

DECLARATION OF DANIEL C. SNYDER
EXHIBIT B

1    The notices also explain "the activity alleged to constitute a violation," see 40 C.F.R. § 135(a), in straightforward terms. The first sentence explains that BNSF and others were going to be sued for "discharg[ing] coal, coal chunks, coal dust, metabolites or related byproducts of coal, and other substances or materials added to the coal including, but not limited to, surfactants and suppressants, and petroleum coke ("petcoke") and its byproducts [] into waters of the United States throughout the State of Washington." (Dkt. No. 39-1, Exs. A, at 2–3; Ex. B. at 3.) The waters into which BNSF allegedly discharges, the notices state, are "under or in proximity to the rail lines and rail cars such that pollutants discharge into them from the rail cars." (*Id.*) The letters go on to explain in further detail how BNSF's coal-carrying rail cars discharge the specified pollutants when the trains either cross or travel near protected waters. (*Id.*, Ex. A at 4.) For example, the notice explains that numerous factors result in the discharges, the first being the fact that the train cars are "open-top."[3] (*Id.* at 4.) Because the cars are open-top, they are likely to lose coal dust when the cars vibrate, travel over bumpy and windy terrain, or operate at high speeds, among other things. (*Id*. at 4–5.) Plaintiffs also note that because the rail cars have holes in the sides, bottoms, and other places, and are not watertight, they may discharge pollutants in that manner as well. (*Id.* at 5.) Given the specificity with which Plaintiffs describe BNSF's alleged violations, the Court is satisfied that BNSF was provided with sufficient information to figure out the nature of the violations for which it is being sued.

//

---

[3] In Reply, Defendant makes the untenable argument that Plaintiffs merely invented the term "inadequately enclosed rail cars" in their opposition to avoid Defendant's "proximate cause" argument. The problems with this assertion are numerous. First, Defendant is merely engaging in a game of semantics. Plaintiffs' notices identified as the *first* factor resulting in the discharges the fact that "rail cars used for transporting coal and petcoke are open-top, that is to say that they are not covered or enclosed, but are open to the air." (*See* Dkt. No. 39-2, Ex. B at 4.) To suggest that Defendant could not understand this statement to mean that the rail cars were "inadequately enclosed" is absurd. (*See id.* at 4–5 (asserting that pollutants are "shaken out" of rail cars—that is, out of rail cars that are "open-top"). Second, regardless of the game of semantics in which Defendant attempts to engage the Court, Defendant nowhere points to authority that *requires* Plaintiff to demonstrate the "sole" proximate cause to a discharge. Regardless of BNSF's assertion, the Court fails to see why it should do anything other than decide, as governing authority requires, whether the letter provided BNSF notice with reasonable specificity to identify the nature of the discharges. This test is clearly satisfied here.

ORDER DENYING DEFENDANT BNSF
RAILWAY COMPANY'S MOTION TO DISMISS
PAGE - 6

DECLARATION OF DANIEL C. SNYDER
EXHIBIT B

1          Finally, the Court turns to the requirement that the notices identify the dates and locations
2   of the violations at issue. 40 C.F.R. § 135(a). BNSF devotes a large portion of its briefing to
3   arguing that it was not provided sufficient notice because the letters did not specify the location
4   of every discharge and provided only a range of dates—from April 2008 to present—rather than
5   the dates of each discharge. (Dkt. No. 38 at 16–19.) And indeed, Plaintiffs' notices did not in fact
6   list the specific date and location of every discharge. Instead, the notices identified the location
7   and dates in definitional terms, and expressly explained that more specific information is in
8   BNSF's possession. As to the location, Plaintiffs explained that the violations allegedly occur at
9   every location where BNSF's railcars pass over or near a protected waterway. While broad, this
10  description is not necessarily lacking in specificity—it provides BNSF with a method to
11  determine the location of the violations: Where its trains go over or next to waterways. This is
12  "reasonably specific" and in accord with Ninth Circuit precedent. *Cf. Tosco*, 309 F.3d at 1159;
13  *Waterkeepers*, 375 F.3d at 917–18. As to the dates, Plaintiffs again provided a mechanical way
14  for BNSF to determine when its alleged violations occurred: Since 2008, every time BNSF coal-
15  carrying trains passed over or next to protected waterways. BNSF certainly has schedules of its
16  own trains; by reviewing those schedules, Defendant could easily determine when trains in
17  Washington were scheduled to pass over or next to waterways. *See Tosco*, 309 F.3d at 1158
18  ("finding that "[the defendant] is obviously in a better position than [the plaintiff] to identify the
19  exact dates, or additional dates" on which violations occurred); *Paolino v. JF Realty, LLC*, 710
20  F.3d 31, 38 (1st Cir. 2013) (reviewing Ninth Circuit case law and explaining that "the Ninth
21  Circuit has twice found that a notice letter alleging continuing unlawful discharges of pollutants
22  need not list every date on which such discharges occurred" where other information in the
23  notice allowed the defendants to identify the violations and take remedial action).
24          Similar notices have been held sufficient by the Ninth Circuit. For example, in *Tosco*, the
25  court held sufficient a notice letter that provided no specific dates when the alleged spillage of
26  petroleum coke occurred, but instead explained that the violations occurred "on each day when

ORDER DENYING DEFENDANT BNSF
RAILWAY COMPANY'S MOTION TO DISMISS
PAGE - 7

DECLARATION OF DANIEL C. SNYDER
EXHIBIT B

the wind has been sufficiently strong to blow" pollutants into the adjacent waterway. *Tosco*, 309 F.3d at 1159. Similarly, the Court held in *Waterkeepers* that a notice letter was sufficient where it explained that violations occurred "on every rain event over 0.1 inches" rather than providing exact dates. *Waterkeepers*, 375 F.3d at 917–18. In each case, the Ninth Circuit reasoned that the notice requirements are to be strictly construed—that is, the basic requirements must be present—but how *specific* the notice must be is a separate question. As to the latter, the Court made clear that the lack of an exhaustive "list" of violations or dates was not dispositive. The requisite determination is whether the descriptions provided enable the putative *defendant* to determine the dates and locations of the noticed violations.

Here, Plaintiffs' notice falls squarely within the holding of *Tosco* and its progeny insofar as it regards discharges that occurred while trains traveled over or directly next to protected waterways. While the notices did not provide an exhaustive list of every alleged violation, they explained what BNSF is allegedly doing wrong, explained where and when the violations occur on a continuing basis, referenced the fact that BNSF is in possession of the data to determine the *exact* list of dates and locations since 2008, and even provided an appendix of dates and locations where it believed BNSF to have discharged pollutants in the manner described. To require more than Plaintiffs are able to provide given their available data would be to require the "impossible" upon citizens seeking to enforce the law. *Cf. Waterkeepers*, 375 F.3d at 917–18 ("The point of the . . . notice requirement is not to prove violations, it is to inform the polluter about what it is doing wrong[.]"). Congress was clear that such burdens are not placed upon citizen plaintiffs. *See Bosma Dairy*, 305 F.3d at 800 ("Congress did not intend to unduly burden citizens by requiring them to basically carry out the job of the agency.").

Defendant attempts to avoid this conclusion by distinguishing *Tosco*. BNSF reasons that in that case, the Court dealt with only one unknown variable: the dates of the alleged discharges. Here, BNSF explains, the alleged violations could have occurred in numerous locations, on numerous dates, and could have involved numerous pollutants. The Court is not persuaded.

ORDER DENYING DEFENDANT BNSF
RAILWAY COMPANY'S MOTION TO DISMISS
PAGE - 8

DECLARATION OF DANIEL C. SNYDER
EXHIBIT B

*Tosco*'s facts may be superficially different, but the principle of the case is what matters. If, based on the information provided, BNSF can determine why it is being sued and what it could do to comply with the statute, the notice is sufficient. Plaintiffs cannot, of course, "simply allege that violations occurred within a broad period of time with no additional information." *Friends of Frederick Seig Grove # 94 v. Sonoma Cty. Water Agency*, 124 F. Supp.2d 1161, 1168 (N.D. Cal. 2000). But that is not what Plaintiffs have done. The notices here provided lengthy descriptions of the nature of the violations, the specific pollutants allegedly discharged, and ways to determine when and where the discharges occurred. This is sufficient under *Tosco*. *See*, *e.g.*, *Pacific Gas and Elec. Co.*, 713 F.3d at 519 (rejecting overly literal reading of notice requirement and holding that "[Plaintiff]'s notice that preservative-treated utility poles owned by [Defendant] and/or other entities in four counties allegedly discharged pollutants during days of significant precipitation was sufficient to advise [Defendant] of [Plaintiff]'s claims, especially where [Plaintiff] identified representative poles and referenced [Defendant]'s superior ability to ascertain the locations of other poles that might be at issue.").

Having concluded that Plaintiffs' notices of intent were sufficient to support this lawsuit, the Court turns to Defendant's argument that Plaintiffs lack Article III standing.

### C. Article III Standing

Standing, which is an "essential and unchanging" requirement of federal jurisdiction, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), requires that parties have "a personal stake in the outcome of the controversy [so] as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Allen v. Wright*, 468 U.S. 737, 770 (1984). To maintain an action in federal court, a member of one of the Plaintiff organizations[4] must show: (1) the member has suffered or will suffer an "injury in fact,"

---

[4] When, as here, an organization seeks to invoke federal jurisdiction, it must prove: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

ORDER DENYING DEFENDANT BNSF
RAILWAY COMPANY'S MOTION TO DISMISS
PAGE - 9

DECLARATION OF DANIEL C. SNYDER
EXHIBIT B

which is concrete and particularized, as opposed to conjectural or hypothetical; (2) the injury is fairly traceable to the conduct complained of; and (3) the injury is likely redressable by a favorable decision. *Defenders of Wildlife*, 504 U.S. at 560–61. At the pleading stage, general allegations of harm suffice, since the Court "presumes that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Wildlife Fed'n*, 497 U.S. at 889 (1990); *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002) ("A plaintiff needs only to plead general factual allegations of injury in order to survive a motion to dismiss[.]").

The Court first addresses BNSF's threshold argument that Plaintiffs need to "establish standing for each claimed discharge at each location of each named water from April 2008 to the present" because "[i]f properly pleaded, each alleged discharge corresponds to a discrete event giving rise to potential liability." (Dkt. No. 66 at 7.) Such a burden would undoubtedly be a herculean task given the scope of Plaintiffs' allegations. However, BNSF misstates the law and asks too much of Plaintiffs, at least at this early stage of the litigation.

Defendant cites only this Court's order in *Washington Toxics Coalition v. EPA* to support its argument. No. C01-0132, 2002 WL 34213031 (W.D. Wash. July 2, 2002). There, the plaintiff challenged under the Endangered Species Act the EPA's failure to properly consult regarding the effects of its pesticide registrations on threatened and endangered salmonids. *Id.* at *2. Before reaching the defendant's standing argument, the Court held that each registration at issue constituted a separate "agency action" that could be challenged. *Id.* at *5. In light of that holding, and the elevated burden upon plaintiffs bringing procedural-rights claims to demonstrate causation for standing purposes, this Court found that plaintiffs had standing to challenge the registration of only the fifty-five pesticide active ingredients for which they had introduced evidence to show causation. The reason was that based on the facts presented, each registration

---

At issue is whether a member of one of the Plaintiff organizations would otherwise have standing to sue in his or her own right.

ORDER DENYING DEFENDANT BNSF
RAILWAY COMPANY'S MOTION TO DISMISS
PAGE - 10

DECLARATION OF DANIEL C. SNYDER
EXHIBIT B

constituted a new action and each pesticide was "unique in chemical composition, hazardousness, and application." *Id*. at *36 n.23. Absent "[s]ome scientific or competent declaratory evidence addressing these properties, such as the pertinent similarities between pesticides," this Court could not determine that the registration of other pesticide active ingredients were fairly traceable to plaintiffs' alleged harm under the standard set forth in *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996). *Id*.

       That ruling is neither binding nor persuasive in light of the relevant facts and law in the instant matter. Here, Plaintiffs indeed allege multiple continuing violations of the CWA, but they assert one central claim: Defendant's operation of train cars, which because of their design and use routinely discharge the same coal pollutants, systematically and continually violates the CWA prohibition of unauthorized discharges. (Dkt. No. 32 at ¶¶ 55–59.) Unlike *Washington Toxics*, Plaintiffs here are not challenging multiple "agency actions," have not challenged various types of conduct with different scientific links to the asserted harm, and are not "procedural-rights" plaintiffs challenging the EPA's failure to act. Given the differences between this matter and *Wash. Toxics*, the lack of any additional case law to support BNSF's position, and the standard of review at this stage—which instructs that general allegations of harm suffice and that the Court need not speculate as to the plausibility of Plaintiffs' allegations—the Court finds that BNSF's threshold argument lacks merit.

       **1.**    **Injury in Fact**

       To satisfy the "injury in fact" requirement, Plaintiffs must establish that a member has suffered or will imminently suffer a concrete and particularized injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992). Demonstrating harm to recreational or aesthetic interests is sufficient for standing:

> [A]n individual can establish "injury in fact" by showing a connection to the area of concern sufficient to make credible the contention that the person's future life will be less enjoyable—that he or she really has or will suffer in his or her degree of aesthetic or recreational satisfaction—if the area in question remains or becomes environmentally degraded.

ORDER DENYING DEFENDANT BNSF
RAILWAY COMPANY'S MOTION TO DISMISS
PAGE - 11

DECLARATION OF DANIEL C. SNYDER
EXHIBIT B

*Ecological Rights Found.*, 230 F.3d at 1149; *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 183 (2000).

Plaintiffs allege that their "environmental, health, aesthetic, and recreational interests of [Plaintiffs'] members have been, are being, and will be adversely affected" by the purported coal discharges. (*See* Dkt. No. 32 at ¶¶12, 15, 18, 21, 24, 27, 31.) Plaintiffs intimate that their members will uniquely suffer, given their geographic proximity, recreational use of the waters, and aesthetic and health interests in impacted waters. (*Id.* at ¶¶ 13, 16, 19, 22, 24, 28, 32.) These generalized allegations are sufficient to show injury in fact at this stage of the proceedings.

### 2. Causation

Next, a plaintiff must show a "substantial likelihood" that the alleged injury can be fairly traced to the defendant's challenged conduct. *Ecological Rights. Found.*, 230 F.3d at 1152. This does not require "pinpointing the origins of particular molecules"; rather, "a plaintiff must merely show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the specific geographic area of concern." *Natural Res. Defense Council v. Sw. Marine, Inc.*, 236 F.3d 985, 995 (9th Cir. 2000). The causal chain need not be "airtight," but it cannot be too speculative, or rely on conjecture about the behavior of other parties." *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 748–49 (N.D. Cal. 2011).

Plaintiffs state that their members have suffered an injury which is caused by their proximity to or use of impacted waters. (*See, e.g.,* Dkt. No. 32 at ¶¶ 12 ("Members of Sierra Club use and enjoy the waters and lands into and onto which Defendant's railcars discharge, including waters in the immediate vicinity of, and downstream from, Defendant's discharges into waters of the United States.").) BNSF argues that "Plaintiffs' failure to identify the geographic relationship or distance between any member's alleged use and any alleged discharge location prevents them from establishing that their alleged injuries are fairly traceable to BNSF's contested conduct." (Dkt. No. 38 at 20.) In particular, BNSF maintains that the use of non-specific language—that Plaintiffs live or otherwise enjoy the waters "in the immediate vicinity of, and downstream from,

Defendant's discharges into waters of the United States"—does not provide a clear nexus to satisfy the "fairly traceable" requirement of standing. (*Id.* at 18–22.)

The Court is not persuaded. The cases on which Defendant relies are factual challenges from later stages in the litigation where more specificity is required by a plaintiff.[5] Plaintiffs' allegations, while somewhat bare, are sufficient to state a plausible claim at this early point of the lawsuit. Therefore, Plaintiffs have sufficiently pleaded causation.

In response to Defendant's facial challenge, Plaintiffs submitted twenty-one declarations, to further demonstrate that BNSF causes or has caused Plaintiffs injury. By challenging the sufficiency of these declarations, Defendant now asserts a factual challenge to Plaintiffs' standing. *See, e.g.*, *Cal. Sportfishing Prot. Alliance v. All Star Auto Wrecking, Inc.*, 860 F. Supp. 2d 1144, 1151 (E.D. Cal. 2012) (factual attack raised in response brief to individual affidavits). BNSF argues in its reply brief that the declarations "do not remedy the geographic vagueness originally identified." (Dkt. No. 66 at 9.) To illustrate this point, BNSF highlights the declaration of Columbia Riverkeeper member Kathleen Seabrook. (*Id.* at 9–10.) However, a careful reading of Ms. Seabrook's declaration demonstrates a close tie between an injury related to a specific area on the Columbia River and likely coal discharges to that stretch of river. Ms. Seabrook states that she particularly enjoys windsurfing at a spot on the Columbia River known as Doug's Beach. (Dkt. No. 49 at ¶ 6.) She alleges that after "even a few hours of windsurfing at Doug's Beach," her car will be covered in a fine layer of what she believes to be coal dust. (*Id.* at ¶ 9.) She also claims that in the summer of 2012 near Doug's Beach, she "observed a coal train moving slowly nearby and saw piles of coal left on the tracks in its wake that I believe came off

---

[5] Defendant cites *Nat'l Wildlife Fed.*, 497 U.S. at 886; *Gulf Restoration Network v. Hancock Cnty. Dev., LLC*, 772 F. Supp. 2d 761 (S.D. Miss. 2011); *Sierra Club, Long Point Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 558 n.24 (5th Cir. 1996); and *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 f.3d 358 (5th Cir. 1996) in support of its arguments that standing requires more than pleading use of waters "in the vicinity" or "downstream" from CWA violations. However, standing in each of these cases was examined at the summary judgment stage. As the Supreme Court specifically noted in *Nat'l Wildlife Fed.*, the specificity required for standing is heightened at the summary judgment stage in comparison to the pleading stage. *See* 497 U.S. at 886–89.

ORDER DENYING DEFENDANT BNSF
RAILWAY COMPANY'S MOTION TO DISMISS
PAGE - 13

DECLARATION OF DANIEL C. SNYDER
EXHIBIT B

the tops and out of the bottom of the cars and went into the river as well." (*Id.* at ¶ 14.) As a result of coal discharges, she is reluctant to continue windsurfing in the Columbia River. (*Id.* at ¶15.) In short, Defendant's illustrative example that Plaintiffs lack causation demonstrates just the opposite. At this stage, this Court cannot conclude that Plaintiffs lack standing to proceed.

### 3. Redressability

This Court need not linger over the redressability prong. Outside of challenging that certain relief is unavailable, an argument the Court addresses below, BNSF does not challenge that Plaintiffs have adequately pleaded redressability. This Court is likewise satisfied that Plaintiffs' injuries would be redressed by a favorable decision in this matter.

### D. The Court's Jurisdiction to Order Remediation or Restoration

Lastly, Defendant argues that Plaintiffs' request for injunctive relief in the form of restoration or remediation must be dismissed in its entirety because it is contrary to the CWA's plain language. (Dkt. No. 38 at 28.) In response, Plaintiffs argue that Defendant waived this issue by not supporting its contention with applicable case law and that even if not waived, the argument is without merit because the Court may fashion limited equitable measures that are "reasonably calculated" to remedy an established wrong. Upon review, both sides veer too far from the appropriate answer. The Court declines to strike Plaintiffs' request for injunctive relief at this time in light of clear Ninth Circuit authority that permits district courts to fashion limited equitable relief in enforcing standards, limitations, or orders that have been violated.

The citizen suit provision authorizes a district court "enforce such an effluent standard or limitation . . . and to apply any appropriate civil penalties under section 309(d) of this Act." 33 U.S.C. § 1365(a). As explained by the Ninth Circuit, a district court's equitable powers under the CWA are "limited to enforcing standards, limitations, and orders that have been violated" and its authority does not allow equitable measures that "are wholly unrelated to a violation of an existing standard, limitation, or order." *Nat. Res. Def. Council v. Southwest Marine, Inc.*, 236 F.3d 985, 1000 (9th Cir. 2000). While limited, however, the Court of Appeals has also held that a

court's "authority to 'enforce' an existing requirement is more than the authority to declare that the requirement exists and repeat that it must be followed." *Id.* Rather, "so long as the district court's equitable measures are reasonably calculated to 'remedy an established wrong,'" such measures are permissible. *Id.* (citing *Alaska Ctr.*, 20 F.3d at 986).

In light of this clear authority authorizing limited equitable measures that are reasonably calculated to remedy an established wrong, the Court cannot dismiss Plaintiffs' request for injunctive relief on the pleadings given that the specific injunctive relief sought has not yet been the subject of any briefing before the Court. *See also U.S. Pub. Interest Research Grp. v. Atlantic Salmon of Maine, LLC*, 339 F.3d 23, 32 (1st Cir. 2003) (discussing *Southwest Marine* and explaining that "[n]othing in [33 U.S.C. § 1365(a)] precludes, as a part of this enforcement authority, measures remediating the harm caused by an existing violation."). Defendants' "plain language" interpretation was squarely rejected by the Ninth Circuit in *Southwest Marine* when the Court declined to limit the district court's equitable authority under § 1365(a) to merely telling Defendants they must, in the future, abide by the law. 236 F.3d at 1000. While the Court declines to consider Defendant's argument waived, the Court need not accept Defendant's previously-rejected argument at face value. Defendant's motion to dismiss Plaintiffs' request for injunctive relief is denied.[6]

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. No. 38) is DENIED.

//
//
//
//
//

---

[6] While the Court denies Defendant's motion, it expresses no opinion as to the propriety of granting injunctive relief at this stage, especially in light of the generalized nature of Plaintiffs' requests.

ORDER DENYING DEFENDANT BNSF
RAILWAY COMPANY'S MOTION TO DISMISS
PAGE - 15

DECLARATION OF DANIEL C. SNYDER
EXHIBIT B

1  DATED this 12th day of March 2014.

*/s/ John C. Coughenour*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFENDANT BNSF
RAILWAY COMPANY'S MOTION TO DISMISS
PAGE - 16

DECLARATION OF DANIEL C. SNYDER
EXHIBIT B