## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: | OIL SPILL BY THE OIL RIG | ) | MDL NO. 2179 |
| | "DEEPWATER HORIZON" IN | ) | SECTION: J |
| | THE GULF OF MEXICO, ON | ) | |
| | APRIL 20, 2010 | ) | |
| | | ) | Judge Barbier |
| Relates to: | 2:14-cv-657 | ) | Mag. Judge Shushan |
| | Melancon \| Rimes, LLC, et al. | ) | |
| | v. Downs Law Group, LLC, et al | ) | |
| | | ) | |

## MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' JOINT MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

Plaintiffs Melancon | Rimes, LLC, Jason L. Melancon, Sterbcow Law Group, LLC, and Marx D. Sterbcow file this memorandum in opposition to Defendants' motion to dismiss pursuant to F.R.C.P. Rule 12(b)(2), (b)(3), and (b)(6), and respectfully aver as follows:

### INTRODUCTION

Plaintiffs' suit for treble damages and equitable relief stem from a their right to attorney fees derived from contingency fee agreements executed with thousands of mutual clients. The present dispute involves two Plaintiff Louisiana law firms and one Defendant Florida law firm. Plaintiffs' prayers for treble damages and equitable relief stem from the intentional interference with contingency fee agreements executed by mutual clients, including over one thousand Louisiana residents. Defendants knowingly took action to remove Plaintiffs' names from signed contingency fee agreements after Plaintiffs learned of Defendants' intentions to keep the overwhelming majority of attorney fees for themselves. The mutual clients at issue involve individuals who submitted or will submit claims pursuant to the Deepwater Horizon Medical Benefits Class Action Settlement Agreement ("SETTLEMENT AGREEMENT").

Initially, Defendants seek to enforce a non-mandatory forum selection clause. Under prevailing federal Fifth Circuit jurisprudence, the clause at issue (1) does not provide the Florida courts with exclusive jurisdiction, such that concurrent jurisdiction exists in other courts; and (2) the clause merely provided the Florida court with personal jurisdiction over the parties. Furthermore, the Defendants cannot enforce the subject clause where the district court retained exclusive jurisdiction over all disputes arising from the underlying SETTLEMENT AGREEMENT. Finally, Defendants should be judicially estopped from enforcing a contractual provision contained within a contract that Defendants factually declared invalid for lack of ratification on their part.

Second, Defendants further argue that this Honorable Court lacks personal jurisdiction over the Defendants. Defendants' argument fails where Defendants engaged in ongoing business activities designed to solicit and to sign Louisiana residents located within the Eastern District of Louisiana. Moreover, Defendants jointly made an appearance before this Honorable Court by jointly filing an objection to the SETTLEMENT AGREEMENT. Most importantly, the SETTLEMENT AGREEMENT expressly provides that this Honorable Court possesses personal jurisdiction over all class action clients and their attorneys, who seek to derive economic benefit from the underlying SETTLEMENT AGREEMENT.

Finally, Defendants argue that Plaintiffs failed to state a cause of action. Plaintiffs submitted evidence of the contingency fee contracts evidencing their names and Defendants' subsequent attempts to remove Plaintiffs' names from same. Plaintiffs have more than adequately stated a plausible cause of action for treble damages and other equitable relief.

For the above and foregoing summarized reasons, as more fully articulated below, Plaintiffs pray that this Honorable Court deny Defendants' motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.      Defendants Sought Plaintiffs' Assistance in Securing Louisiana Medical Benefits Clients, and in Further Objecting to the Proposed Medical Benefits Settlement Agreement**

In August 2012, Defendant Jeremy Friedman, a Florida licensed attorney with the Downs Law Group, ("Friedman") contacted Plaintiff Marx D. Sterbcow, a Louisiana licensed attorney with the Sterbcow Law Group, ("Sterbcow") about working together to represent a large number of Hispanic individuals who worked on the BP Oil Spill cleanup.   Exhibit "B" to Complaint. These Hispanic individuals were exposed to noxious and/or toxic cleanup chemicals used during the cleanup process.  Specifically, Friedman asked Sterbcow to assist in filing an objection to the then-proposed SETTLEMENT AGREEMENT and in further securing other workers living in Louisiana.  The objection centered on obtaining medical evaluations prior to making a medical benefits claim, as opposed to medical evaluations after already receiving a monetary award from the claim.

Sterbcow contacted Plaintiff Jason L. Melancon, ("Melancon") a Louisiana attorney with Melancon | Rimes, LLC, to assist with the Florida law firm's litigation request.  After mutual discussion, Sterbcow and Melancon consented to the terms and conditions contained within an Attorney Participation Agreement.   Exhibit "A" to Complaint.   Thereafter, Melancon and Sterbcow assisted the Downs Law Group with filing the objection, notice of appeal, strategic decision making, developing legal theories, and further permitted the use of their Baton Rouge and New Orleans area offices for the purpose of signing Louisiana based clients.

**B.      Defendants Included Plaintiffs on Each Clients' Contingency Fee Agreement**

As previously agreed, Downs Law Group attorneys and staff personally met and executed contingency fee contracts with the Spanish speaking clients.  In conformity with model rules of

professional responsibility, Downs Law Group presented contingency fee agreements that identified Melancon and Sterbcow as co-counsel on the BP related matters.  Exhibits "C" and "D" to Complaint.  Plaintiffs attached exemplary contingency fee contracts written in both Spanish and English as proof of Plaintiffs' names being identified on the contracts.

**C.     Plaintiffs Learned that Defendants Did Not Intend to Honor the Contingency Fee Agreements, and that Defendants Intentionally Sent Each Client a New Contingency Fee Agreement Excluding Plaintiffs' Names**

As part of the parties' ongoing litigation efforts, Sterbcow supervised a Downs Law Group attorney, Ms. Amled Perez.  Ms. Perez was exclusively licensed to practice law in the Commonwealth of Puerto Rico.  She exclusively worked in Sterbcow's New Orleans area office; meeting and signing potential Spanish speaking BP clients.  Paragraphs 6, 10, 35.  Sometime in October or September 2013, Ms. Perez notified Sterbcow that the Downs Law Group did not consider Sterbcow and Melancon co-counsel on the vast majority of the BP Oil Spill client cases.  Paragraph 38.  Accordingly, in October 2013, Melancon requested a listing of all mutual clients.  Paragraph 38.  The Downs Law Group provided a list containing only 73 clients out of well over 1,700 clients who executed contingency fee contracts containing the names of Melancon and Sterbcow.  Exhibit "F" to Complaint.  Obviously, a dispute immediately arose amongst Plaintiffs and Defendants.

Immediately after the dispute arose, Friedman of the Downs Law Group exchanged intra-office emails outlining a proposed letter to be sent to each mutual client.  Paragraph 39.  Exhibit "G" to Complaint.  The email proposed sending a letter that fraudulently claimed Melancon and Sterbcow no longer represented each client's legal interests.  Accordingly, the letter requested each client to sign a new contingency fee contract that excluded the names of Melancon and

Sterbcow.  Friedman wrote to his managing partner, Craig T. Downs: "Sure it is self serving but it can't hurt and we do have an obligation to keep the clients advised."

Upon information and belief, the managing partner, Craig T. Downs, ratified the letter and accompanying contingency fee agreements, which no longer contained the names of Melancon and Sterbcow.  The letters were sent from Downs Law Group's Florida offices to each mutual client.  Paragraph 40.  Exhibit "H" and "I" to Complaint.

### D.  While the Medical Benefits Settlement Agreement Remained Pending on Appeal, Plaintiffs Filed Suit in Florida State Court

In December 2013, the SETTLEMENT AGREEMENT remained pending on appeal before the United States Court of Appeals for the Fifth Circuit.  Accordingly, Plaintiffs filed suit in Florida state court.  Plaintiffs sought to enforce the contingency fee contracts and/or attorney participation agreement.

In several responsive pleadings, such as Defendants' *Answer* at paragraph 9, Defendants denied the legal validity of the contingency fee contracts and the attorney participation agreement.  Exhibit "1" attached hereto.  Defendants therein claimed to take no actions that ratified the Attorney Participation Agreement ("Denied that Defendant Downs ever executed the agreement…Denied that any specific conduct by Downs would be legal cause for ratification of the agreement.")  Exhibit 1 at page 2.  In yet another pleading, Defendants judicially declared the invalidity of the Attorney Participation Agreement because it only applied to Plaintiff law firms, where the contingency fee agreements only identified Plaintiff attorneys individually.  See Exhibit "2" attached hereto.  Thus, Defendants judicially declared in multiple pleadings that the Attorney Participation Agreement was legally invalid, so as to keep it from becoming legally valid and binding contract.  Defendants have taken every measure to deny Plaintiffs their rightful share of attorney fees.

**E.    After the Medical Benefits Settlement Agreement Became Final on February 13, 2014, Plaintiffs Filed a Motion Pursuant to the Exclusive Jurisdiction Provision Contained in Section XXVII at Doc. 12509**

After filing the Florida state court action, on February 13, 2014, the final appeal relative to the SETTLEMENT AGREEMENT was dismissed with prejudice; therefore, the SETTLEMENT AGREEMENT obtained the force and effect of *res judicata*.    The SETTLEMENT AGREEMENT and its provisions became final and definitive over all aspects of the medical claims benefits claims process and all class member rights thereto.    Accordingly, on March 13, 2014, Plaintiffs filed a *Motion to Apportion Attorney Fees, For Injunctive Relief, and for Damages Derived from Claims Submitted Pursuant to the Medical Benefits Class Action Settlement Agreement in Accordance with Section XXVII, and Motion to Stay Pending Florida State Court Action*.    See Document 12509-3.

Plaintiffs originally filed a motion before the Eastern District of Louisiana pursuant to Section XXVII of the SETTLEMENT AGREEMENT.    Section XXVII retained exclusive jurisdiction over all disputes arising by virtue of the SETTLEMENT AGREEMENT.    SECTION XXVII retained exclusive and personal jurisdiction over all parties, medical benefits class members, and their respective counsel, with respect to all disputes concerning the implementation and enforcement of the SETTLEMENT AGREEMENT.    Plaintiffs further requested a stay of the Florida litigation considering this Honorable Court's exclusive and ancillary jurisdiction over attorney fee disputes arising by virtue of claims made pursuant to the SETTLEMENT AGREEMENT.

F.     **Judge Barbier Ruled That the Dispute Over Attorney Fees Was Subject to Resolution by the Claims Administrator According to Section XXIA.8)(d), That Plaintiffs Could Dismiss Their Pending Florida Suit Without Federal Court Interference, and Plaintiffs Could File a Separate Suit Seeking Further Relief Before this Honorable Court**

On March 20, 2014, Judge Barbier ruled on Plaintiffs' motion.  As it related to Plaintiffs' request to apportion attorney fees derived from the medical benefits claims process, this Honorable Court held that "a Claims Administrator has been appointed to administer the settlement, including the '…resolution of liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments of interests of any type;….'  Section XXIA.8)(d) Medical Benefits Class Settlement Agreement as amended May 1, 2012."

As it related to Plaintiffs' prayers to stay the Florida litigation, the Court wrote: "Second, Petitioners are able to dismiss the Florida suit on their own initiative and do not need the assistance of the Undersigned."

As it related to Plaintiffs' prayers for treble damages and other equitable relief, the Court wrote: "Lastly, if Petitioners seek further relief, they may file a separate action stating their claims."  Based on the foregoing, the Court denied the motion.

G.     **Plaintiffs Filed the Instant Action Seeking Further Relief in the Form of Treble Damages and Equitable Relief as Provided by the March 20, 2014 Order**

As a result of Judge Barbier's March 20, 2014 Order, Plaintiffs acted as follows: (1) Plaintiffs submitted a claim/lien for their apportionment of attorney fees before the Claims Administrator appointed to oversee the SETTLEMENT AGREEMENT; (2) Plaintiffs voluntarily dismissed the Florida state court action without prejudice; and (3) Plaintiffs filed the instant action seeking "further relief" as provided for the March 20, 2014 Order.

## LAW AND ARGUMENT

I.  **Defendants Cannot Enforce the Subject Clause Where: (1) The Subject Clause Does Not Provide for Exclusive Jurisdiction by the Florida Courts; (2) This Honorable Court's Exclusive Jurisdiction Preempts a Private Forum Selection Clause, and (3) Defendants Judicially Declared the Contract Invalid for Lack of Consent**

   A.  **Under Governing Fifth Circuit's Precedence in *Caldas & Sons*, the Clause At Issue Does Not Constitute an Exclusive Jurisdiction Forum Selection Clause, But Merely Acts As an Admission of Personal Jurisdiction,**

The Defendants primarily base their motion to dismiss on the following clause, which

Defendants erroneously claim to provide for sole jurisdiction in Miami-Dade County courts:

> All parties to this Agreement, hereby submit to the jurisdiction of all courts located in Miami-Dade County, Florida with respect to any action or proceeding arising out of this Agreement and hereby waives any venue or other objection which it may have to any such action or proceeding being brought in any court located in Miami-Dade County, Florida.

The clause at issue is not an exclusive forum selection clause, but rather grants personal

jurisdiction over the parties to the Florida court and waives any defense or objection thereto.

In *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75 (9th Cir. 1987), the parties

consented to a clause stating: "The courts of California, County of Orange, shall have

jurisdiction over the parties in any action at law relating to the subject matter or the interpretation

of this contract."  The Ninth Circuit held that unless the word "exclusive" is used in a forum

selection clause, there exists concurrent jurisdiction in other courts ("Although the word "shall"

is a mandatory term, here it mandates nothing more than Orange County courts have

jurisdiction.").  Hunt, Id. at 76-77.

In *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123 (5th Cir. 1994), the federal Fifth

Circuit expressly adopted the *Hunt* court's reasoning and analysis.  Relying on *Hunt*, the Fifth

Circuit held that the clause at issue merely granted personal jurisdiction to the court and did not

expressly declare the court as the exclusive forum for jurisdiction:

> The only thing certain about the clause contained in the…contract is that the parties consented to the personal jurisdiction of the Zurich courts.  Beyond that, however, the language does not clearly indicate that the parties intended to declare Zurich to be the exclusive forum for the adjudication of disputes arising out of the contract.

Therefore, Fifth Circuit provides that absent the use of the word "exclusive" or some other language that declares a particular court the exclusive forum for adjudication of disputes, other courts have concurrent jurisdiction over the dispute.  Thus, there is a marked distinction between a clause granting personal jurisdiction over the parties and one granting exclusive jurisdiction.

As it pertains to the clause herein, the instant clause does not provide for "exclusive" jurisdiction before the Miami-Dade County courts.  In fact, the clause at issue does not even use the word "shall" in referring to the selection of jurisdiction.  Accordingly, there is no contractual language declaring Miami-Dade County courts as the exclusive forum for the adjudication of all disputes.  This result is further warranted where Defendants drafted the clause, and all ambiguities must be inferred against the drafter.  Consequently, there exists concurrent jurisdiction in this Honorable Court.  Furthermore, as recognized in *Hunt* and *Caldas & Sons*, a proper reading of the provision merely states that the parties consented to the personal of the Miami-Dade County courts.

Defendants also argue that Plaintiffs' allegation pertaining to the subject clause in their Florida suit judicially estops Plaintiffs from filing suit in any other court with concurrent jurisdiction.  First, Plaintiffs' legal counsel in Florida, Mr. Robert McKee, merely alleged that venue was proper in Miami-Dade County because of the personal jurisdiction admission.  At no time have Plaintiffs alleged or maintained that the Miami-Dade county courts have exclusive jurisdiction over this proceeding.

Notwithstanding, the extent to which the subject clause legally affects the jurisdictional analysis is governed by federal Fifth Circuit jurisprudence, not a statement of venue contained within a petition.  The Fifth Circuit's decision of *Caldas & Sons*, *supra*, governs the instant legal analysis, not Plaintiffs' venue allegation contained within a petition.  The Fifth Circuit's ruling clearly provides that other courts possesses concurrent jurisdiction, unless the subject clause clearly grants exclusive jurisdiction to a single court.

> **B.  Notwithstanding Concurrent Jurisdictional Principles, the District Court's Retention of Exclusive Jurisdiction Preempts the Subject Private Party Clause at Issue**

Defendants further argue that the exclusive jurisdiction provision contained at Section XXVII of the SETTLEMENT AGREEMENT does not preempt the alleged private party clause.  Notwithstanding, the exclusive jurisdiction clause at Section XXVII in fact preempts a private party forum selection clause because this Court's retention of exclusive jurisdiction invokes judicial authority, as opposed to private party contract's preferential statement of jurisdiction.

In *Flanagan v. Arnaiz*, 143 F.3d 540 (9th Cir. 1998), the Ninth Circuit explained that a district court's retention of jurisdiction invokes ***judicial authority*** where a private party forum selection clause does not.  The parties in *Flanagan* entered into a settlement agreement.  The settlement agreement provided: "The Court shall retain jurisdiction of this action for purposes of resolving any disputes that may arise in the future regarding the settlement agreement, its terms or the enforcement thereof."  *Id.* at 543.  The district court signed a "Stipulated Order," which adopted the settlement agreement.  The order contained nearly an identical exclusive jurisdiction provision.  Following the settlement agreement, the plaintiffs sued several defendants in state court based on various jurisdictional arguments.  The Defendants obtained from the federal court

an injunction against the state court proceedings based upon the retention of jurisdiction provision contained within the settlement agreement and Stipulated Order.

The *Flanagan* plaintiffs argued that the jurisdictional clause in the court's order did not contain the words "exclusive jurisdiction," as generally required in a private party forum selection clause; therefore, the plaintiffs argued that the state and federal courts had concurrent jurisdiction.  The court rejected this argument.  The court explained that "a court order exercises judicial authority, while a forum selection clause in a private contract does not."  (Citations omitted)  The court held that the retention of jurisdiction in the stipulated order amounted to a retention of exclusive jurisdiction to enforce the settlement agreement.  *Flanagan*, *Id*. at 545. The court explained:

> The reason why exclusivity is inferred is that it would make no sense for the district court to retain jurisdiction to interpret and apply its own judgment to the future conduct contemplated by the judgment, yet have a state court construing what the federal court meant in the judgment.  Such an arrangement would potentially frustrate the federal district court's purpose.

*Flanagan*, *Id*.  Accordingly, the court acknowledged that a court's retention of jurisdiction involves different legal principles than a private party forum selection clause ("The context of retention of jurisdiction, a provision for future enforcement of a settlement order, implies that the retention was meant to be exclusive.").  *Flanagan*, *Id*.

In the decision *In re American Exp. Financial Advisors Securities Litigation*, 672 F.3d 113 (2nd Cir. 2011), the United States District Court for the Southern District of New York entered into a class action settlement agreement.  The agreement provided that the district court retained exclusive jurisdiction over disputes arising from the class litigation.  The plaintiffs did not exclude themselves from the class action by exercising their opt-out rights.  The court held that the district court properly retained jurisdiction over the parties and class members by

retaining exclusive jurisdiction in a separate provision.  Where the district court intended to place its judicial imprimatur on a settlement, the court retains jurisdiction to oversee the enforcement; therefore, the Second Circuit held that the exclusive jurisdiction vested with the district court preempted the parties' prior agreement to arbitrate disputes.  *In re American Exp.*, *Id*. at 130-135.

In the instant action, the SETTLEMENT AGREEMENT at Section XXVII expressly provided for "exclusive jurisdiction" over all parties, medical benefits class members, and their counsel with respect to all disputes concerning the implementation and enforcement of the settlement agreement.  The Defendants erroneously interpret this provision to mean that this Honorable Court lacks jurisdiction over attorneys representing medical benefits class action members, despite the fact that any attorney compensation derives from the SETTLEMENT AGREEMENT ("[T]he settlement provision the Plaintiffs rely upon, i.e. XXVII, relates solely to the parties to the litigation, their counsel, and the class members.")  Defendants Memorandum, p. 4 of 11.  There exists no legal or reasonable basis for other to interpret and apply its own judgment in determining class member or attorney compensation rights arising by virtue of the SETTLEMENT AGREEMENT.

Under Defendants' erroneous interpretation, class members or their attorneys would potentially face litigation in a multitude of venues, thereby producing conflicting interpretations of contractual rights under the SETTLEMENT AGREEMENT.  The *Flanagan* court reasoned that such exclusive jurisdiction clauses are intended to prevent these patchwork litigation rulings, particularly when dealing with a class action settlement agreement of this magnitude.  This reasoning is particularly true where an attorney seeks to enforce his attorney fees derived from medical benefits claims process set forth by the SETTLEMENT AGREEMENT.  As explained in *Flanagan*, this Honorable Court's order adopting the SETTLEMENT AGREEMENT's

exclusive jurisdiction clause exercises a degree of judicial authority that preempts all private party forum selection clauses.

Furthermore, all rights owed to the class action medical benefits class member squarely owes by virtue of the SETTLEMENT AGREEMENT.   As of February 13, 2014, the SETTLEMENT AGREEMENT obtained the force and effect of *res judicata*; therefore, the SETTLEMENT AGREEMENT governs all class member rights, including any rights to fees owed to the class member's attorneys.

As explained by Judge Barbier in his March 20, 2014 Order, Plaintiffs claims for allocation of attorney fees themselves must be decided by the Claims Administrator pursuant to Section XXI(A.8)(d) Medical Benefits Class Settlement Agreement as amended May 1, 2012. As it related Plaintiffs' claims for additional relief, Section XXVII provided this Honorable Court with exclusive jurisdiction to determine all disputes arising by virtue of the SETTLEMENT AGREEMENT, particularly a dispute centered around an attorney's right to fees owed by virtue of the medical benefits claims process.

### C. In the Alternative, Defendants Are Judicially Estopped from Enforcing a Provision Within a Contract, Which They Previously Factually Declared Invalid in a Prior Judicial Proceeding on

Not surprisingly, Defendants now seek to enforce an alleged forum selection clause contained within the Attorney Participation Agreement, which contract Defendants previously declared invalid for lack of consent.   In their *Answer* to Plaintiff's state court petition, Defendants at paragraph 9 declared the subject Attorney Participation Agreement legally invalid. Defendants denied any conduct otherwise ratifying said agreement ("Denied that any specific conduct by Downs would be legal cause for ratification of the agreement.")   This included intentionally refusing to sign the Attorney Participation Agreement so as to make said contract

invalid.   Finally, at page 2 of Exhibit "2," Defendants declared the Attorney Participation Agreement legally invalid because it applied to the law firms of Melancon | Rimes, LLC and Sterbcow Law Group, LLC, whereas the contingency fee agreements personally named Marx Sterbcow and Jason Melancon in their individual capacities.

Accordingly, Defendants should be precluded from seeking enforcement of any provision contained within the Attorney Participation Agreement pursuant to the doctrine of judicial estoppel.   "Statements made in a previous suit by an attorney before the court can be imputed to a party and subject to judicial estoppel."  *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003).   "[J]udicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in…some earlier proceeding."  Hall, Id. at 397.   "[A] party cannot advance one argument and then, for convenience or gamesmanship after that argument has served its purpose, advance a different and inconsistent argument."  *Hall, Id.*; *citing Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 818 (5th Cir. 2012).

Defendants thought it strategically convenient to argue the invalidity of the Attorney Participation Agreement before the Florida state court.   Defendants sought to negate the Plaintiffs' earned fees by casting doubt onto the validity of the Attorney Participation Agreement.  Now that disputes concerning the SETTLEMENT AGREEMENT'S medical claims process are subject to exclusive jurisdiction before this Honorable Court, Defendants hope to enforce the subject clause possessed within a contract Defendants' declared invalid.  Defendants cannot seek to enforce a contractual provision after declaring that they intentionally refused to ratify the underlying agreement.  It is the Defendants' gamesmanship that seeks to improperly keep jurisdiction before their more favored court.  Defendants should be judicially estopped from taking factually inconsistent positions.

Knowing Plaintiffs judicial estoppel position from Plaintiffs' originally filed motion at Document 12509-3 at page 10, Defendants conveniently argue that Plaintiffs should be judicially estopped from denying the enforcement of the forum selection clause.  Defendants argue that Plaintiffs should be bound to the clause because Plaintiffs now seek to enforce the Attorney Participation Agreement.  First, as a point of clarification, Plaintiffs only pled the enforcement of the Attorney Participation Agreement in the alternative.  Plaintiffs intend to seek enforcement of the contingency fee contracts, only, in light of Defendants' judicial and factual declaration that they never ratified the Attorney Participation Agreement; therefore, Plaintiffs do not seek to enforce the Attorney Participation Agreement, unless this Honorable Court should find the contingency fee contracts invalid.  Second, Defendants seek to enforce the subject clause at issue, not Plaintiffs; therefore, Defendants' judicial assertions relative to the Attorney Participation Agreement are relevant, not Plaintiffs' alternative legal position.

## II.   This Honorable Court Possess Personal Jurisdiction Over the Defendants

### A. For Well Over One Year, Defendants Actively Solicited Louisiana Clients Living Within the Eastern District of Louisiana for Making Medical Benefits Claims

Defendants argue that this Honorable Court lacks personal jurisdiction over the Defendant law firms and attorneys.  Defendants incredibly argue, "There is no allegation that any of the individual Defendants have a business presence in the state."  Defendants argue that Plaintiffs failed to allege minimum business contacts within the subject venue justifying personal jurisdiction.  A brief overview of Plaintiffs' complaint quickly dismisses Defendants' fraudulent assertions before this Honorable Court.

Defendants actively solicited Plaintiff law firms and attorneys located within Louisiana for well over one year.  Defendants sought Plaintiffs' assistance in marketing and in signing

Louisiana residents who worked the BP clean up and reportedly suffered from those conditions listed in the SETTLEMENT AGREEMENT.  Paragraphs 3 and 26-27.  All Defendant attorneys flew into New Orleans, Louisiana for BP related matters.  In particular, Mr. Daniel Perez flew into Louisiana on numerous occasions to use Plaintiffs' offices for the purpose of client meetings.  Paragraphs 5 and 23.  Defendants hired and directed Amled Perez, an employee attorney with Downs Law Group, to maintain a permanent office presence at Marx Sterbcow's New Orleans area office for the purpose of meeting and signing Spanish speaking clients. Paragraph 6.

Moreover, Defendants actively solicited clients located within the Eastern District of Louisiana through the use of radio advertisements and yard signage.  Paragraph 30.  Defendants entered into contracts with Louisiana physicians for the payment of medical examinations prior to making medical benefits claims.  Paragraph 6.  Defendants used Plaintiffs' offices located in both Baton Rouge and New Orleans for the purpose of meeting clients.   Paragraph 7. Defendants executed contracts with Louisiana citizens located within the Eastern District of Louisiana, and mailed said clients fraudulent letters and new contingency fee contracts terminating Louisiana plaintiffs representation rights.   Paragraphs 11 and 12.   Defendants directed undersigned counsel to file a notice of appeal relative to our mutual clients' filed objections.  Paragraph 33.

Accordingly, there is no question that Defendants satisfied the minimum contracts analysis by engaging in numerous business activities within the boundaries of the Eastern District of Louisiana.  Moreover, Defendants engaged in these business activities expressly for the purpose of making medical benefits damages claims.  For Defendants to even suggest that this Honorable Court lacks personal jurisdiction constitutes a complete fraud upon the Court.

These Defendants know full well their numerous contacts within the State of Louisiana as it relates to the underlying subject matter.

> **B. On Behalf of Mutual Clients, Defendants Filed a Joint Objection to the Medical Benefits Class Action Settlement Agreement and Each Defendant Personally Attended the Fairness Hearing**

In addition to engaging in numerous business activities within the Eastern District of Louisiana, all Defendant attorneys all flew into Louisiana for the express purpose of attending the fairness hearing on the SETTLEMENT AGREEMENT.   While Defendant attorneys requested that undersigned counsel orate the attorneys' collective arguments, Craig T. Downs, Jeremy Friedman, and Daniel Perez each sat in the audience during said presentation.  Moreover, each attorney voluntarily chose to represent medical benefits class members; therefore, each Defendant attorney knowingly consented to the personal jurisdiction of this Court, as further ratified in Section XXVII of the underlying SETTLEMENT AGREEMENT.

## III.   Plaintiffs Stated a Valid Cause of Action and Associated Legal Remedies Against Defendants

> **A. The Defendants Erroneously Rely Upon Florida Law Breach of Contract Law, Particularly Considering that Louisiana Supreme Court and Louisiana Law Governs an Attorney's Right to Compensation Derived from Contingency Fee Contracts Executed by Louisiana Citizens**

Defendants err in their assertion that Plaintiffs' instant suit alleged a breach of contract. Plaintiffs have not alleged a breach of contract claim, where the SETTLEMENT AGREEMENT appointed the Claims Administrator to handle all claims, liens, or disputes arising from the medical benefits claims process, including disputed claims for attorney fees.   Plaintiffs intentionally identified one legal theory of remedy: Louisiana's Unfair Trade Practices Act, La. R.S. 51:1401, *et seq*.   As mandated by Judge Barbier's March 20, 2014 Order, Plaintiffs filed their basic claim for attorney fees before the Claims Administrator pursuant to Section

XXIA.8)(d).  Plaintiffs' instant suit seeks damages not for breach of contract, but rather seeks "further relief" in the form of treble damages under unfair trade practice law and other equitable relief should the Court determine that Downs Law Group engaged in the unauthorized practice of law in the State of Louisiana.

The underlying legal basis for Plaintiffs' prayers herein derive from those over one thousand contingency fee contracts expressly identifying the names of Melancon and Sterbcow as co-counsel on all BP related matters.  Louisiana resident clients executed the majority of contingency fee contracts at issue.

Plaintiffs filed suit under Louisiana law because the Louisiana Supreme Court governs all practice of law located within the State of Louisiana, and the Louisiana Supreme Court applies Louisiana law when regulating the practice of law within its borders.  Defendants cannot usurp an attorney's right to compensation under contingency fee contract governed by Louisiana law by relying exclusively upon a private party choice of law provision.

In Louisiana, the general rule is that where parties stipulate the state law governing the contract, Louisiana conflict of laws principles require the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary, or strong public policy considerations justifying the refusal to honor the contract as written.  *Associated Press v. Toledo Investments, Inc.*, 389 So.2d 752 (La.App. 3 Cir. 1980).  However, the instant action does not involve an ordinary contract, but rather two licensed Louisiana attorneys' right to attorney fees originating from over 1,000 contingency fee contracts executed with Louisiana citizens.  "Since the Supreme Court is the head of Louisiana's judicial system, it is the final arbiter of the exercise of inherent judicial power."  *Bester v. Louisiana Supreme Court Committee on Bar Admissions*, 2000-1360

(La. 2/21/01), 779 So.2d 715, 717.  "This Court has exclusive and plenary power to define and regulate all facts of the practice of law…."  *Bester*, *Id*. at 717.

As it relates to attorney compensation, "Although the basic relationship between client and lawyer may be contractual, that association is nonetheless subject to the inherent authority of the Louisiana Supreme Court to positively affect that fiduciary relationship through its power to regulate the practice of law."  *Skannal v. Jones Odom Davis & Politz, LLP*, 48,016 (La.App 2 Cir. 9/25/13), 124 So.3d 500, 508; *citing Chittenden v. State Farm Mut. Auto. Ins. Co.*, 00-0414 (La. 5/15/01), 788 So.2d 1140.  "Louisiana courts have long approved of the contingent fee contract to compensate attorneys."  *Skannal*, *Id*.; *citing O'Rourke v. Cairnes*, 95-3054 (La. 11/25/96), 683 So.2d 697.  "Therefore, any dispute relative to an attorney-client relationship is subject to close scrutiny of the Louisiana Supreme Court and is resolved under codal provisions as illuminated by the Louisiana Rules of Professional Conduct."  *Skannal*, *Id*.

Accordingly, the Supreme Court has the power to regulate attorney compensation pursuant to contingency fee contracts executed by Louisiana citizens.  No private party choice of law provision can affect the application of Louisiana law as declared by the Louisiana Supreme Court.  As such, Louisiana law, as pronounced by the Louisiana Supreme Court, determines Plaintiffs' entitlement to attorney fees derived from those contingency fee agreements, and thus Plaintiffs' right to treble damages flowing as a consequence of Defendants' fraudulent efforts to negate the underlying contingency fee contracts.  Defendants' attempt to dismiss the underlying suit based exclusively on Florida contract law must therefore fail as a matter of law.

**B. Plaintiffs' Unfair Trade Practice Claims Sound in Part on the Fiduciary Duty Between Attorneys that Jointly Represent Clients Under Contingency Fee Contracts**

Defendants erroneously argue that Plaintiffs have failed to allege that the Defendants owed any type of fiduciary duty.  Yet, the Louisiana Supreme Court in *McCann v. Todd*, 203 La. 631, 14 So.2d 469, 471-472 (1943), held long ago that a joint venture is formed when two or more attorneys jointly agree to represent a client under a contingency fee agreement ("An agreement by an attorney who has been retained to prosecute claims on a contingent fee to share the fee with the other lawyer who is employed to act as counsel in the litigation establishes between them the relation of joint adventurers and not of employer and employee.").   In Louisiana, a joint venture is governed by partnership law.  *Cajun Elec. Power Co-op, Inc. v. McNamara*, 452 So.2d 212 (La.App. 1 Cir. 1984).  Thus, pursuant to the Louisiana Supreme Court, attorneys working pursuant to a contingency fee agreement owe fiduciary duties amongst each other ("The fiduciary duty owed to a partner or a co-joint venture is one such obligation."). Accordingly, Defendants' argument that Plaintiffs failed to cite legal authority for a breach of fiduciary duty must fail as a matter of law.

Furthermore, and as previously stated, the Louisiana Supreme Court possesses plenary power to regulate all attorney disputes relative to an attorney-client relationship.  This includes an attorney's right to compensation under a contingent fee contracts with Louisiana citizens. Herein, Plaintiffs allege that the Defendants knowingly sought to interfere with Plaintiffs' legal rights existing by virtue of contingency fee contracts executed within the State of Louisiana. Defendants fraudulently manipulated contingency fee agreements executed by Louisiana citizens, thereby illegally affecting Plaintiffs' contingency fee rights.

Such attempts to affect attorney compensation rights under contingency fee agreements are clearly subject to scrutiny by the Louisiana Supreme Court and the application of Louisiana law.  Accordingly, Plaintiffs stated a valid claim of unfair trade practices under Louisiana law, where Defendants knowingly violated the underlying fiduciary duty owed between co-counsel on Louisiana contingency fee contracts.  Defendants engaged in their fraudulent endeavor to usurp Plaintiffs' contingency fee based compensation rights with Louisiana citizens.  There is no reason to believe that the Louisiana Supreme Court would not otherwise apply the law of Louisiana in determining exemplary damages caused by unfair trade practices involving an attorney's compensation rights under a Louisiana contingency fee contract.

In Louisiana, the definition of what constitutes unfair trade practices is left to the courts. The jurisprudence holds that to recover under the Louisiana Unfair Trade Practices Act, plaintiff must prove some element of fraud, misrepresentation, deception or other unethical conduct on the defendant's part.  That conduct includes acts which offend established public policy and/or acts which are immoral, unethical, oppressive, or unscrupulous.  *Marshall v. Citicorp Mortg. Inc.*, 601 So.2d 669 (La.App. 5 Cir. 1992).  Thus, the fiduciary duty owed between Plaintiffs and Defendants forms part and parcel of proving the immoral, unethical, oppressive, and unscrupulous behaviors characteristic of an unfair trade practice claim.

In the case *sub judice*, Defendants knowingly presented new contingency fee contracts that excluded the names of Marx Sterbcow and Jason Melancon from said contracts. Defendants mailed out letters to all mutual clients that fraudulently represented Plaintiffs' representation of their legal interests.  Defendants' own writing evidence the deceptive nature of their intentions: "***Sure it is self serving but it can't hurt*** and we do have an obligation to keep

the clients advised." But for Ms. Perez voluntarily turning over this email as evidence of Defendants' unscrupulous intentions, Defendants' email would have never seen the light of day.

In summary, Defendants cannot rely upon Florida law in determining Plaintiffs rights to treble damages for violating contingency fee agreements executed by Louisiana residents. Furthermore, Plaintiffs more then explained in great factual detail the underlying breach of fiduciary duty forming the unethical, fraudulent, and unscrupulous behavior underpinning Plaintiffs' unfair trade practices claim.

### C. Just Like the Fiduciary Duty Owed Under Louisiana Law, Plaintiffs Allegations of Fraudulent Behaviors Form the Underlying Basis for Plaintiffs' Unfair Trade Practices Claim

Again, Plaintiffs did not cite fraud as an independent legal theory of recovery. Rather, Plaintiffs alleged fraudulent acts forming the unethical and unscrupulous behaviors underpinning Plaintiffs' unfair trace practices claim.

Notwithstanding, Defendants argue that Plaintiffs have not alleged any facts evidencing a fraud. At paragraph 39, Plaintiffs cited the letter sent to each mutual client. Once again, these letters were sent out to each and every mutual client the very day that the subject dispute over attorney fees arose, October 22, 2014. The subject letters fraudulently misrepresented that Plaintiff law firms would only provide assistance in filing an objection and appeal, only, notwithstanding that for months Defendants used Plaintiffs' Louisiana office to solicit and sign these very Louisiana resident clients.

Louisiana Civil Code Article 1953 defines fraud as a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. The two essential elements of fraud are the intent to defraud

or gain an unfair advantage and actual or probable damage.  *Dutton & Vaughan, Inc. v. Spurney*, 600 So.2d 693, 698 (La.App. 4 Cir. 1992).

There is no factual dispute regarding Defendants' sending out the misleading letters with the intent to defraud or gain an unfair advantage.  The whole purpose was for all mutual clients to execute new contingency fee contracts excluding Plaintiffs' names.  Defendants knew full well of the actual or probable damage to Plaintiffs.  The entire reason for sending the new contingency fee contracts was to remove Plaintiffs' names from the contingency fee contracts with the intent to deny Plaintiffs' their rightful compensation.  Thus, Plaintiffs have further stated a plausible fraud claim.  Accordingly, Plaintiffs claim that these fraudulent behaviors, in addition to the prior discussed breach of fiduciary duty, form the basis for Plaintiffs' unfair trade practice claim.

## CONCLUSION

Plaintiffs have affirmatively shown that there exists no legal ground for dismissing this action on the purported forum selection clause.  Under governing Fifth Circuit jurisprudence, the subject clause never intended for exclusive jurisdiction within the Florida court system; the subject clause is preempted by the exclusive jurisdiction clause contained within the SETTLEMENT AGREEMENT; and the Defendants should be judicially estopped from enforcing any contractual provision contained within the Attorney Participation Agreement, which contract Defendants previously declared invalid for lack of ratification and consent.

Plaintiffs have further affirmatively shown the numerous business activities with which the Defendants engaged within the Eastern District of Louisiana.  For Defendants to suggest that this Honorable Court lacks personal jurisdiction constitute a fraud on the Court.

Finally, Plaintiffs have not made a claim for breach of contract or fraud. Plaintiffs' complaint clearly and unequivocally identified one legal theory: Louisiana Unfair Trade Practice Law. Plaintiffs followed Judge Barbier's March 20, 2014 Order and now seek their rightful share of attorney fees from the Claims Administrator. However, given Defendants' wholly unscrupulous and fraudulent attempt to negate Plaintiffs' contingency fee contract rights, Plaintiffs filed the instant action seeking treble damages under Louisiana's Unfair Trade Practice Act, as well as other equitable relief. Plaintiffs' allegations pertaining to breach of fiduciary duty and fraud owed under Louisiana law merely constitute the underlying claims of unscrupulous and deceitful behavior exhibited by Defendants.

**WHEREFORE**, Plaintiffs pray that this Honorable Court deny Defendants' motion to dismiss in its entirety.


**Respectfully Submitted:**

**Melancon | Rimes, LLC**                    **Sterbcow Law Group, LLC**


s/ Jason L. Melancon                          s/Marx D. Sterbcow
Jason L. Melancon, La. Bar No. 28152          Marx D. Sterbcow, La. Bar No. 28425
Robert C. Rimes, La. Bar No. 28740            1734 Prytania Street
Rachel Abadie, La. Bar No. 34413              New Orleans, LA 70130
8706 Jefferson Hwy., Suite A                  Telephone: (504) 523-4930
Baton Rouge, LA 70809                         Fax: (888) 241-6248
Telephone: (225) 303-0455
Fax: (225) 303-0459

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| IN RE: | **OIL SPILL BY THE OIL RIG** | ) | **MDL NO. 2179** |
| | **"DEEPWATER HORIZON" IN** | ) | **SECTION: J** |
| | **THE GULF OF MEXICO, ON** | ) | |
| | **APRIL 20, 2010** | ) | |
| | | ) | **Judge Barbier** |
| **Relates to:** | **2:14-cv-657** | ) | **Mag. Judge Shushan** |
| | **Melancon | Rimes, LLC, et al.** | ) | |
| | **v. Downs Law Group, LLC, et al** | ) | |
| | | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on counsel for Defendants named herein via email delivery and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Signed this 6th day of May, 2014 at Baton Rouge, Louisiana.

s/ Jason L. Melancon