UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section: J |
| | : | |
| This Document Applies to: | : | The Hon. Carl J. Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | The Hon. Sally Shushan |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

RESPONSE OF THE SPECIAL MASTER
TO COASTAL CLAIMS GROUP'S SUR-REPLY TO THE MOTION OF THE
SPECIAL MASTER FOR RETURN OF PAYMENTS MADE TO CASEY C. THONN AND OTHERS

COMES NOW Special Master Louis J. Freeh, and respectfully submits his Response to the Coastal Claims Group, LLC's Sur-Reply ("Sur-Reply") to the Special Master's motion seeking return of payments made to Casey C. Thonn and others ("Motion").

1. Coastal Claims Group, LLC ("CCG") states that the Special Master incorrectly concluded that CCG was paid a contingency fee for work on Thonn's claim to the Deepwater Horizon Economic Claims Center ("DHECC"). Sur-Reply at 3. Stating that "the relevant factor for contingency fee agreement is that the **'amount'** of the fee is contingent upon the outcome of the claim," CCG says its work was not contingent because the amount of its fee was determined by hours worked on each DHECC case file. *Id.* at 5 (emphasis original).

2. CCG's definition of a "contingency" fee agreement is overly narrow. Contingency fees are not limited only to arrangements in which the "amount" of the fee is calculated as a percentage of an amount recovered or is otherwise dependent upon the outcome of such service. Contingency fees also include those in which the "existence" of an obligation to pay a fee itself depends on a specified outcome, regardless of the manner in which the amount of the fee is calculated, as was the case for CCG's work for Thonn.

3. As explained in the Special Master's prior filing, the American Institute of Certified Public Accountants ("AICPA") definition of a "contingent fee" describes two separate scenarios where an accountant's fee arrangement would qualify as a contingent fee. The scenario applicable in this case is a "fee established for the performance of any service pursuant to an arrangement in which no fee will be charged unless a specified finding or result is attained." AICPA Code of Professional Conduct § 302; *see also KPMG, LLP v. SEC*, 289 F.3d 109, 116 (D.C. Cir. 2002) (noting that section 302 covers accounting services for "fees the *existence or amount* of which are contingent on particular 'findings' or 'results' of those services") (emphasis added). Nothing in this definition requires that the fee be established as a percentage of the result attained or that the fee amount be dependent upon the result achieved.

4. The AICPA Code of Professional Conduct has direct application to CCG, which submitted a form to the DHECC indicating that the preparer of Thonn's claim was a Certified Public Accountant with the required active license in good standing, and thus subject to the AICPA Code. *See* Motion at Ex. B at 13-14.

5. The AICPA's definition of "contingent fee" has been adopted verbatim by the Louisiana legislature for use in the state statutory scheme governing the accounting profession. *See* La. Rev. Stat. § 37:83 L(3). While Louisiana courts have not further defined the phrase, an Oregon appellate court addressing the identical statutory language held that a contingent fee includes those in which the payment itself — regardless of amount — is contingent upon a certain outcome. *See Sherry v. Bd. of Accountancy*, 157 P.3d 1226, 1230 (Or. Ct. App. 2007) ("[T]he *sine qua non* of a 'contingent fee' agreement is whether the accountant's ultimate entitlement to a fee depends on the results achieved.").

- 2 -

6. Consistent with the definition from Section 37:83 L(3), CCG and Andry Lerner entered into a contingent fee agreement for the accounting services CCG provided regarding Thonn's DHECC claims.  Although the "amount" CCG billed Andry Lerner for work on Thonn's claims was calculated based on hourly rates, the "existence" of the payment was entirely contingent upon the settlement of Thonn's DHECC claims.  The contingent nature of this fee agreement is supported by both the language of the agreement, *see* Sur-Reply at 5 (payment of CCG's invoices was only after "receipt of a completed claim package from CCG and following settlement of the claim"), and the actual timing of payments made by Andry Lerner to CCG.  *See* Motion at 5 (detailing CCG's receipt of *partial* payments of its invoice only after DHECC paid each *separate* claim).

7. Nothing in the agreement provides CCG with a right of payment for work performed on "files deemed by CCG to qualify as compensable" unless and until the DHECC pays the claim.  *See* Doc. Rec. 12423 at Ex. 2 at ¶ 3(a) (addressing CCG compensation for "Qualifying Files").  In fact, the agreement provides that Andry Lerner is only responsible for paying any part of CCG's invoice where a claimant decides to "opt-out" of the settlement or where Andry Lerner elects to proceed on a claim "that CCG deems not qualified under the terms of the Court Approved Settlement Agreement."  *See id.* at ¶ 3(a), (c).

8. For the above reasons and those stated in the Special Master's previous filings, the Special Master asks the Court to enter a judgment requiring Coastal Claims Group, LLC

- 4 -

to make restitution to the DHECC for the accounting support fees collected by CCG under its contingency fee agreement for Thonn's fraudulent seafood claims.

                              Respectfully submitted,

                              _____/s/ Louis J. Freeh_____
                              Louis J. Freeh
                              Special Master

Dated:  April 1, 2014