UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY OIL RIG "DEEPWATER HORIZON IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL NO.:  2179<br><br>SECTION:  "J"<br><br>MAGISTRATE:  01 |

*This Pleading Applies to Case No. 2:11-cv-01806*

<u>**MEMORANDUM IN SUPPORT OF**</u>
<u>**PLAINTIFF'S FIRST SUPPLEMENTAL AND AMENDING**</u>
<u>**MOTION TO REMAND**</u>

MAY IT PLEASE THE COURT:

<u>INTRODUCTION</u>

In a reported decision involving another of the myriad of separate lawsuits that have been consolidated into the captioned matter, this Honorable Court denied a motion for remand filed by plaintiff State of Louisiana.  *In re Oil Spill by Oil Rig Deepwater Horizon*, 747 F.Supp.2d 704 (E.D.La. 2010), *affirmed* 745 F.3d 157 (5th Cir. 2014).  The instant case is for all relevant purposes procedurally identical with that case except for one critical and ultimately determinative detail. The defendants in the lawsuit giving rise to the relevant portion of *In re Oil Spill* were all residents of a jurisdiction other than Louisiana, thereby creating complete diversity of citizenship.  In this matter, however, one of the defendants, Donald Vidrine, is a resident of Louisiana.[1]  As will be demonstrated below, this single distinction makes all of the difference, and it results in this matter needing to be remanded because this Court lacks subject-matter jurisdiction over it.

---

[1]      See Rec. doc. 1 (Defendant Vidrine's Notice of Removal), at ¶ 1, where he admits to being domiciled in Louisiana.

In addition, as a supplemental/alternative ground, remand is also required because although the instant suit might otherwise fall under the jurisdictional provisions of the Class Action Fairness Act ("CAFA"), which is codified at 28 U.S.C § 1332(d), it most certainly falls squarely within CAFA's "'local controversy" exception, which not only takes this suit out of the parameters of CAFA but mandates its remand to state court.  Indeed, this is precisely the sort of class action for which the "local controversy" exception was enacted.

<u>UNDERLYING RELEVANT FACTS</u>

On April 20, 2011, plaintiff Tim Terrell filed a lawsuit entitled "Class Action Petition for Damages" against defendants BP p.l.c. and Donald Vidrine with the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana, bearing Docket Number 58-682-B with that court.[2]  Mr. Terrell's petition seeks monetary damages for himself and the class of individuals he seeks to represent arising from the April 20, 2010 explosion, fire, and sinking of the DEEPWATER HORIZON mobile offshore drilling unit.  As this Honorable Court is very well aware, that accident resulted in the release of millions of gallons of oil into the Gulf of Mexico until it was capped approximately three months later.

In addition to claims for lost income, mental suffering and aggravation, medical expenses, and all other damages as are appropriate, the petition specifically seeks to recover for the "loss of enjoyment of life and recreational expenses" suffered by the plaintiff class.  Significantly, the claims asserted in the petition are based solely on Louisiana law, not federal law.  Rec. doc. 1-1, at ¶¶ 4-6.  The petition was properly brought in Plaquemines Parish because it is the domicile of the plaintiff and many other individuals of the proposed class, as well as the physical locale of a

---

[2]      A photocopy of that pleading was attached to the challenged Notice of Removal and is part of the record of this matter as Rec. doc. 1-1.

substantial portion of the claimed damages.  *Cacamo v. Liberty Mut. Fire Ins. Co.*, 1999-3479, pp.

3-10 (La. 6/30/00); 764 So.2d 41, 43-47; La.C.Cv.P. art. 592; La.C.Cv.P. art. 74.

Defendant Donald Vidrine was personally served with the pleading on July 11, 2011.  He

filed his notice of removal to this Honorable Court on July 27, 2011.  The basis relied upon by the

defendant to justify his removal of Mr Terrell's lawsuit is what he asserts to be the independent

jurisdiction granted to federal court for actions arising under the Outer Continental Shelf Lands

Act ("OCSLA") and the related federal-question/federal-enclave nature of the action.

Immediately upon filing, the matter was transferred to and consolidated with MDL No.

2179, "In re: Oil Spill by the Oil Rig 'Deepwater Horizon'".  Pursuant to Pretrial Order No. 11

originally issued in that matter on October 19, 2010, all of the consolidated claims were separated

into Pleading Bundles for purposes of further pleadings.[3]  That same Pretrial Order also states the

following:

> All cases subsequently added to this proceeding as a tag-along action or by removal
> or transfer to or original filing with this Court shall be assigned to a Pleading
> Bundle, as necessary or appropriate, in accordance with the above.

Rec. doc. 5-1, at p. 5.  But the fundamental cause of action asserted by Mr. Terrell on behalf of the

proposed class – the loss of recreational opportunities and attendant expenses caused to Louisiana

residents by the oil spill – does not readily conform to any of the defined bundles.  And undersigned

counsel have been unable to locate any pleading filed or order issued that assigned this particular

suit to a particular bundle.  Thus, it appears that Case No. 11-1806 has not been assigned to a

bundle and therefore has remained largely if not entirely unaffected by any of the later proceedings

taking place in the MDL.

---

[3]    A copy of Pretrial Order No. 11 was filed into the instant particular case at the time of the consolidation, on
July 27, 2011, as Rec. doc. 5-1.

<u>LAW AND ARGUMENT</u>

**Preliminary Statement**

The United States Supreme Court has held that a party never waives its right to object to a defect in subject matter jurisdiction. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S. Ct. 2099, 2104 (1982). Consequently, the lack of subject matter jurisdiction may be raised at any time, by any party, or by the court. Fed. R. Civ. P. 12(h)(3); *Baca v. King*, 92 F.3d 1031, 1034 (10th Cir. 1996). Accordingly, the Court has an independent obligation to ensure that subject matter jurisdiction over this action exists, notwithstanding the fact that this action has been pending in this Court since July 26, 2011. *United States v. Hays*, 515 U.S. 737, 742 (1995); *Olden v. LaFarge Corp.*, 383 F.3d 495, 498 (6th Cir. 2004), *cert. denied* 545 U.S. 1152, 125 S.Ct. 2990, 162 L.Ed.2d 910 (2005).

**Neither OCSLA Nor Maritime Law Give The Court Subject Matter Jurisdiction.**

*1. Removal and Remand in General*

It is certainly true that "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, *may* be removed by the defendant . . . to the district court of the United States." 28 U.S.C. § 1441(a)(emphasis added); *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 808 (1986). But it is also true that such an action *shall* be remanded to the originating court pursuant to 28 U.S.C. § 1447(c), at any time the district court appears to lack jurisdiction over the matter. *See St. Joe Company v. Transocean Offshore Deepwater Drilling Inc.*, 774 F.Supp.2d 596, 600 (D.Del. 2011)("After a defendant removes a state case to federal court, the plaintiff may file a motion to remand, and the district court *must* remand if there is no federal jurisdiction . . . .")(emphasis added). After removal of the action, a plaintiff may move for remand if "it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

Section 1447(b) sets out the two permissible grounds for such jurisdiction in the context of removal: (1) where the action is "founded on a claim or right arising under the Constitution, treaties or laws of the United States," or (2) where none of the defendants "is a citizen of the State in which such action is brought."  *See Beneficial National Bank v. Anderson*, 539 U.S. 1, 6, 123 S. Ct. 2058, 2062, 156 L.Ed.2d 1 (2003)("As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim.").  Since neither of those criteria are satisfied in this case, the matter should be remanded.

The statute generally governing questions of removal – 28 U.S.C. § 1441 – should be strictly construed against removal.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *Sikirica v. Nationwide Insurance Company*, 416 F.3d 214, 219 (3rd Cir. 2005); *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir. 1979).  As the U.S. Supreme Court has repeated on several occasions: "Due regard for the rightful independence of state governments . . . requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32, 123 S. Ct. 366, 370, 154 L. Ed. 2d 368 (2002), quoting *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934).  Thus, a challenged removal should be upheld only when the arguments in favor of remand have no merit whatsoever.  *Acuna* v. *Brown* & *Root, Inc.,* 200 F.3d 335,339 (5th Cir. 2000)("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction.").

Also, when faced with a motion to remand like this one, the party removing a lawsuit to federal court – in this matter, defendant Vidrine – bears the burden of proving that federal subject matter jurisdiction is proper.  *Kokhonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 114 S.Ct. 1673 (1994); *Winters v. Diamond Shamrock Chemical Company*, 149 F.3d

387, 397 (5th Cir. 1998); *Dale v. Family Guaranty Life Insurance Company*, 205 F.Supp.2d 620, 621 (S.D.Miss. 2002).

In other words, the removing party carries the burden of establishing that a state-court action is properly removable to federal court. *Manguno v. Prudential Prop. & Cas. Ins.,* 276 F.3d 720, 723 (5th Cir. 2002); *see also Coury v. Prot,* 85 F.3d 244, 248 (5th Cir. 1996)("[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court."); *Sid Richardson Carbon & Gasoline Co. v. lnterenergy Res.,* 99 F.3d 746, 751 (5th Cir. 1996) ("A party invoking the removal jurisdiction of the federal courts bears a *heavy burden*") (emphasis added). Accordingly, removal statutes are construed "strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.,* 97 F.3d 100, 106 (5th Cir. 1996). All doubts about the propriety of removal are to be resolved against federal jurisdiction and in favor of remand. *Manguno,* 276 F.3d at 723. Similarly, all factual allegations are evaluated in the light most favorable to the plaintiff. *Guillory v. PPG Industries, Inc.,* 434 F.3d 303, 308 (5th Cir. 2005).

As a general rule, with a limited relevant exception discussed below, the determination as to whether an action is removable is evaluated solely with reference to the allegations in the complaint, the so-called "well-pleaded complaint" rule. That rule, as the Fifth Circuit has noted, is "based on the theory that the plaintiff is 'the master of her complaint.'" *Medina* v. *Ramsey Steel Company, Inc.,* 238 F.3d 674,680 (5th Cir. 2001), citing *Carpenter v. Wichita Falls Independent School District,* 44 F.3d 362, 366 (5th Cir. 1995). As such, "[a] determination that a cause of action presents a federal question depends upon the allegations of the plaintiff's well-pleaded complaint." *Medina,* 238 F.3d at 680. Accordingly, under the well-pleaded complaint rule, as this Honorable Court itself has said: "[W]hen a plaintiff has a choice between federal and state law claims, she may proceed in state court on the exclusive basis of state law, thus defeating the

defendant's opportunity to remove." *In re Oil Spill,* 747 F.Supp.2d at 707 (internal quotations and citation omitted).  Moreover, even the existence of a federal pre-emption defense does not justify removal.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93, 107 S.Ct. 2425, 2430, 96 L. Ed.2d 318 (1987).

> 2.  *OCSHA Does Not Apply Here.*

The claims pleaded in this case are solely claims by Louisiana plaintiffs, for injury occurring in Louisiana for which Louisiana law provides a remedy.  Defendant Vidrine has asserted a right to removal because the Court has jurisdiction over the plaintiff's claims under the provisions of the OCSLA.  But the resolution of jurisdiction does not end the inquiry.  The relevant law does not give defendant a right to removal unless plaintiff's claims also "arise under" federal law, which they do not.

OCSLA was enacted in 1953 as a declaration of federal sovereignty over the outer continental shelf, beyond the limit of three geographic miles from the coast lines of adjacent states. Up to the three mile limit, state sovereignty is recognized under the Submerged Lands Act of 1953, 43 U.S.C. § 1301, *et. seq.*  While the OCSLA statute is complex, two provisions are primarily relevant to this remand motion.  Section 1349 grants federal courts jurisdiction, but not exclusive jurisdiction, over disputes arising out of certain operations on the Outer Continental Shelf.

Plaintiff does not challenge the fact that under Fifth Circuit precedent this Court has jurisdiction over this action under OCSLA Section 1349.4.  As this Court explained in *In re Oil Spill,* the Courts have applied a two part test to determine whether Section 1349 jurisdiction is present.  First, the Court must decide "whether the activities that caused the injury can be classified as an 'operation conducted on the outer Continental Shelf' and whether that 'operation' involved the exploration or production of minerals." *Id.,* at 708.  In *Tennessee Gas Pipeline* v. *Houston*

*Casualty Insurance Co.,* 87 F.3d 150 (5th Cir. 1996), a tug boat collided with a platform rig. Tennessee Gas, the owner of the platform, alleged that its "platform was affixed to the OCS and was used to extract and transport minerals from the OCS." The Fifth Circuit held: "This was clearly enough physical activity on the OCS to constitute an operation." *Id.*, at 154. The Court concluded that jurisdiction existed under Section 1349. *Id.* Plaintiff here concedes that under Fifth Circuit precedent, the "operations" test has been met.

Second, the Court must determine whether the claims alleged "arise[] out of, or in connection with the operation." *In re Oil Spill,* 747 F.Supp.2d at 708. Here, unlike *Tennessee Gas,* under the allegations of the complaint, the tort in question did not take place on the Outer Continental Shelf, but within Louisiana territory, or within the three miles ceded to Louisiana under the Submerged Lands Act. To the extent that there is any ambiguity on that point, that ambiguity is, as a matter of law, resolved in favor of remand. *Lorenz* v. *Tex Workforce Commission,* 211 Fed.Appx. 242,245 (5th Cir. 2006).

Again, the plaintiff concedes that under this Court's ruling in *In re Oil Spill,* the second part of the test has been met as well. In *In re Oil Spill,* the State of Louisiana sought to pursue certain statutory remedies for injuries to wildlife and aquatic life in Terrebonne Parish resulting from oil and/or other contaminants entering into the territorial waters of Louisiana. Those injuries are analogous to the injuries suffered by the plaintiff and the other members of the putative class. This Court nonetheless found that the "arising out of" test was met "because the oil and other contaminants would not have entered into the State of Louisiana's territorial waters 'but for' Defendants' drilling and exploration operation." *In re Oil Spill,* 747 F. Supp. 2d at 708. Accordingly, Section 1349 jurisdiction was found in that case.

Defendant's next burden is to prove that the claims in this case "arise out of" federal law. Petitioner vigorously contests that assertion by Defendant.  The grant of jurisdiction over a dispute does not mean that the dispute arises out of federal law.  "Congress did grant United States district courts 'original jurisdiction of cases and controversies arising out of or in connection with any operations conducted on the outer Continental Shelf. .. .' 43 U.S. C. § l333(b) n. 5.  It is black letter law, however, that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action.  *Mims v. Arrow Financial Services, LLC*, --- U.S. ---,132 S.Ct. 740, 743, 181 L.Ed.2d 881 (2012) ("[T]he grant of jurisdiction to one court does not, of itself, imply that the jurisdiction is to be exclusive."), quoting *United States v. Bank of New York & Trust Co.,* 296 U.S. 463, 479, 56 S.Ct. 343, 80 L.Ed. 331 (1936).  District courts routinely have jurisdiction over diversity actions where state law governs (*see,* 28 U.S.C. § 1332), and have long had jurisdiction over admiralty and maritime claims.  28 U.S.C. § 1333.  Yet it is beyond question that maritime law claims do not "arise under" Federal law.  As this Court has held:

> It is well settled that maritime law claims do not arise under the laws of the United States.  It is therefore true that unless a defendant is not a citizen of the state in which the action was brought, § 1441 (b) does not allow maritime law claims to be removed to federal court.  This is true even if the court has both OCSLA and admiralty jurisdiction because the Fifth Circuit has not determined that finding that a court has OCSLA jurisdiction is synonymous with finding that a plaintiffs claim arises under the laws of the United States.  See *Tenn. Gas Pipeline,* 87 F.3d at 156; *See also Walsh* v. *Seagull Energy Corporation,* 836 F.Supp. 411,417-18 (S.D. Tex. 1993); *Rivas* v. *Energy Partners of Delaware,* No. Civ. A 99-2742, 2000 U.S. Dist. LEXIS 1230, 2000 WL 127290, *5 (E.D. La. Feb. 1, 2000) (stating "the Fifth Circuit has never held that where OCSLA and general maritime law overlap, the case is removable without regard to citizenship"); 28 U.S.C. § 144J(b).

*In re Oil Spill,* at 709.

In order to determine whether OCSLA causes state law claims to be treated as claims "arising under" Federal law, the Court must refer to OCSLA Section 1333, which addresses "Laws

and regulations governing lands."   The relevant sub-section is Section 1333 (a)(2)(A) which provides, in relevant part:

> (2) (A) To the extent that they are applicable and not inconsistent with this Act or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending seaward and defining each such area.  All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States.  State taxation laws shall not apply to the outer Continental Shelf.

43 U.S.C. § 1333(a)(2)(A).

The location requirement contained in sub-section (2)(A) is sometimes referred to as the "situs covered by OCSLA (i.e. the subsoil, seabed or artificial structures permanently or temporarily attached thereto)." *Golden* v. *Omni Energy Services Corp.,* 242 Fed.Appx. 965, 967 (5th Cir. 2007).  Accordingly, whether the claims in this case pass the "situs" test, and are held to have occurred on the subsoil, seabed or artificial structures permanently or temporarily attached to the Outer Continental Shelf, is the critical question.  If they did occur on the OCSLA "situs," then federal law might apply.  Here, however, the plaintiff's Petition does not assert any federal law claims, but only state law claims.  If the tort took place and was complete on the OCSLA "situs," then federal law as surrogate for state law would apply.  *See Hufnagel v. Omega Serv. Indus.,* 182 F.3d 340, 350 (5th Cir. 1999).  In the former case the claims would clearly arise under federal law.  In the latter case, the law is uncertain, but it would be at least arguable that the claims would arise under state law.

As discussed above, the plaintiff's Petition in this case must be construed in favor of remand, and therefore in favor of a construction that the tortious acts occurred only outside the

required "situs," within the exclusive jurisdiction of the laws of Louisiana.  As a result, those claims do not arise "under the Constitution, treaties or laws of the United States," and are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 144l(b).  Since defendant Vidrine is a citizen of Louisiana, and is properly joined and has been served, removal is improper.

3. *Application of the* In Re Oil Spill *decision*

This Court's ruling in *In re Oil Spill*, as recently affirmed by the Fifth Circuit, fully supports the analysis above.  Although finding jurisdiction under Section 1349, the Court notably did not find that the claim in that case, strikingly similar to the claim in this case, was one "arising under" federal law for the purpose of Section 1333. The Court held:

> Plaintiff's arguments related to OCSLA § 1333 is not applicable to whether this Court has jurisdiction in this matter. . . . [N]either the Supreme Court nor the Fifth Circuit has held that the situs requirement has to be satisfied for jurisdiction to be proper under§ 1349.

*In re Oil Spill,* 747 F.Supp.2d at 709 n. 1.

The Court expressly declined to find that the claims were "arising under" federal law, and ruled instead:

> Nevertheless, Defendants in this matter are not citizens of Louisiana (the state in which the action was brought). Therefore, because this court has original jurisdiction under 43 U.S.C. § 1349(b)(l), it does not matter whether Plaintiff's claims do not arise under the laws of the United States.  This matter is removable because "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).

*Id.* at 709; *accord, Hufnagel v. Omega Serv. Indus.,* 182 F. 3d 340, 350 (5th Cir. 1999) (OCSLA does not necessarily transform maritime claims falling within its jurisdictional grant into claims arising under federal law.  OCSLA does not displace general maritime law, substantive maritime law continues to govern where both OCSLA and general maritime law could apply); *see also,*

*Smith v. Penrod Drilling,* 960 F.2d 456, 459 (5th Cir. 1992) ("When an event occurs on an OCSLA situs but also is governed by maritime law, maritime law controls.").

To the same effect is *St. Joe Company v. Transocean Offshore Deepwater Drilling Inc.*, 774 F.Supp.2d 596 (D.Del. 2011), where plaintiff had commenced an action in Delaware Superior Court against certain defendants asserting claims under Florida law arising out of the Deepwater Horizon oil spill.  The case was removed to Delaware District Court.  The court there found that Florida law applied and the plaintiff's motion for a remand should be granted, holding:

> [T]he Court concludes that, even if it were bound to follow Fifth Circuit precedent, no Fifth Circuit authority compels the conclusion that the forum defendant rule does not apply here.  Thus, again, the Court applies the plain and unambiguous language of § 1441 (b), which, here, precludes removal to federal court due to the presence of a forum defendant.

*Id.*, at 612.  In reaching its conclusion, the *St. Joe* court relied on this Court's ruling in *In re Oil Spill.  See id.*, at 611 n. 12.

### 4. Maritime Law and the "Saving to Suitor" Clause

Further, the plaintiff's Petition makes clear that Deepwater Horizon was "a floating, dynamically positioned, vessel ... for the purpose of drilling an oil well in approximately 5000 ft. of water . . . ."  Rec. doc. 1-1, at ¶ 3.  It has long been settled law in the Fifth Circuit that oil drilling operating conducted from a vessel is maritime activity  *See, e.g., Dupre v. Penrod Drilling Corp.,* 993 F.2d 474, 477-78 (5th Cir. 1993) (concluding that contract for supply and use of vessel for drilling, completing, and tying back wells is maritime); *Campbell v. Sonat Offshore Drilling, Inc.,* 979 F.2d 1115, 1120-21 (5th Cir. 1992) (stating that contract for the operation of a drilling vessel upon navigable waters is maritime); *Smith v. Penrod Drilling Corp.,* 960 F.2d 456, 460 (5th Cir. 1992) (concluding that contract for drilling of well from jack up boat is maritime); *Davis & Sons, Inc. v. Gulf Oil Corp.,* 919 F.2d 313, 316-17 (5th Cir. 1990) (concluding that contract for servicing

production equipment is maritime); *Lewis v. Glendel Drilling Co.,* 898 F.2d 1083, 1086-88 (5th Cir. 1990) (stating that contract for drilling of well, when performed from a movable platform, is maritime); *Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 538 (5th Cir. 1986) (holding contract for the provision of drilling services on a vessel to be maritime); *Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge,* 424 F.2d 684, 691(5th Cir. 1970) (stating that maritime commerce includes oil and gas drilling operations on navigable waters).  To the extent that such claims arise under maritime law, claims also can be raised under Louisiana law because of the "Saving to Suitors" clause.  *See In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 315-16 (5th Cir. 2012), *cert. dismissed* --- U.S. ---, 133 S.Ct. 96, 183 L.Ed.2d 735 (U.S. 2012); *Ballard Shipping Co. v. Beach Shellfish,* 32 F.3d 623 (lst Cir. 1994).

Thus, since neither OCSLA nor maritime law provide a legitimate basis for federal-question jurisdiction over this matter, and since defendant Vidrine's status as a Louisiana citizen serves to defeat complete diversity as per 28 U.S.C. 1441(b)(2) and *In re Oil Spill*, this matter should be remanded to Louisiana state court.

**The District Court Must Decline Jurisdiction Under CAFA**

*1. Background of CAFA*

CAFA expanded the definition of diversity of citizenship and confers original jurisdiction over a matter where the amount in controversy exceeds $5 million, and at least one of the plaintiffs is diverse from at least one of the defendants.  *See* 28 U.S.C. § 1332(d)(2)(A) and (d)(6)).  This vast expansion of federal jurisdiction under the diversity statute was created by Congress in response to perceived state court "abuses of the class action device . . . [that] . . . undermine the national judicial system, the free flow of interstate commerce, and the concept of diversity

jurisdiction" and which in turn, "mak[e] judgments that impose their view of the law on other States and bind the rights of the residents of those States." *See* 28 U.S.C. § 1711(a)(2) and (a)(4).

But CAFA also imposes strict limitations on when a federal court may exercise its jurisdiction over actions seeking remedies for class members who are overwhelmingly citizens of the forum State, and where the defendants' illegal actions against those class members take place in that State.  In enacting CAFA, Congress clearly stated its desire to "assure fair and prompt recoveries for class members with legitimate claims, [and to] restore the intent of the framers of the United States Constitution by providing for Federal court jurisdiction of interstate claims of national importance."  28 U.S.C. § 1711(b)(1) and (b)(2).

As a result, when Congress expanded federal diversity jurisdiction over class actions through CAFA, it deliberately left room for state courts to continue adjudicating claims that involve overwhelmingly intrastate claims.  *See generally* 28 U.S.C. §§ 1712–1714.  In so recognizing that state courts are in fact capable of handling disputes that overwhelmingly involve protection of its citizens and application of its law, Congress mandated federal courts decline jurisdiction over class actions designed to remedy such injustices.  Thus, even if the Court otherwise has jurisdiction under Section 1332(d)(2) of CAFA, the Court would lose that jurisdiction under the "home state" or "local controversy" exception" to CAFA jurisdiction set out in 28 U.S.C. § 1332(d)(4).  *Sundy v. Renewable Environmental. Solutions, L.L.C.*, 2007 WL 2994348, *4 (W.D.Mo. 2007).

Many, if not most, of the policy concerns that motivated Congress to enact CAFA simply are not implicated where the suit qualifies for the "local controversy" exception.  By enacting CAFA, Congress was responding to what it perceived as abusive practices by plaintiffs and their attorneys in litigating major interstate class actions in state courts, which had : "harmed class

members with legitimate claims and defendants that ha[d] acted responsibly," "adversely affected interstate commerce," and "undermined public respect for our judicial system." *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 47 (1st Cir. 2009), quoting CAFA § 2(a), 119 Stat. at 4. According to Congress, these abusive practices included forum-shopping to take advantage of potential state court biases against foreign defendants. *See* CAFA § 2(a)(4)(B), 119 Stat. at 5. But where, as here, at least one of the defendant is also a citizen of the forum state, the concern for bias simply does not arise. Likewise, Congress in enacting CAFA was concerned that state courts were "making judgments that impose their view of the law on other States and bind the rights of the residents of those States." *Id*. § 2(a)(4)(C), 119 Stat. at 5. But again, that potential problem is not implicated where the class members are largely citizens of the forum state.

### 2. Mandatory Remand – the "Local Controversy" Exception

The "local controversy" exception is "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 682 (7th Cir. 2006). Remand of this matter is required under the "local controversy" exception contained in 28 U.S.C. § 1332(d)(4)(A), which provides that a district court shall decline to exercise diversity jurisdiction under paragraph (2) —

> (A) (i) over a class action in which —
>
> > (I) *greater than two-thirds of the members* of all proposed plaintiff classes in the aggregate *are citizens of the State* in which the action was originally filed;
> >
> > (II) at least 1 *defendant* is a defendant —
> >
> > > (aa) from whom *significant relief is sought* by members of the plaintiff class;
> > >
> > > (bb) whose alleged *conduct forms a significant basis for the claims* asserted by the proposed plaintiff class;

and

(cc)   who is a *citizen of the State* in which the action was
originally filed; and

(III)   *principal injuries* resulting from the alleged conduct or any
related conduct of each defendant were incurred in the
State in which the action was originally filed; and

(ii) during the *3-year period preceding* the filing of that class action,
no other class action has been filed asserting the same or similar
factual allegations against any of the defendants on behalf of the
same or other persons

28 U.S.C. § 1332(d)(4)(A)(emphasis added).[4]

Accordingly, CAFA establishes a "local controversy" test that district courts must perform

in any class action removed under the new and expanded definition of diversity of citizenship.  *Id.*

Essentially, the district court must now take into account the citizenship of the entire plaintiff class,

the citizenship of at least one defendant, and the "significance" of that defendant's actions.  *Evans*

*v. Walter Industries, Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006).  Additionally, the test examines

the locus of "principal injuries" and whether they occurred in the forum state.  Finally, this test

examines whether any of the defendants have been subjected to class actions of the "same or

similar" allegations over a three-year period.  28 U.S.C. §1332(d)(4)(A). When each of these

factors is demonstrated, a district court is not just allowed but required to decline jurisdiction.

### a. "Citizenship" of Class Members – § 1332(d)(4)(A)(i)(I)

Plaintiff does not anticipate Defendants will ever stipulate that greater than two-thirds of

the class members are citizens of Louisiana in spite of the clearly local focus of the class-wide

relief sought.  Plaintiff also acknowledges that his initial pleading does not contain a definitive

---

[4]        Section 1332(d)(4)(B) provides an alternative basis for mandatory remand where two-thirds or more of
the plaintiff class and the "primary defendants" are citizens of the State in which the action is filed.

definition of the class he is seeking to represent. [5]  But he does hereby stipulate that this class be limited to residents of Louisiana who suffered the loss of enjoyment of outdoor recreational opportunities because of the Defendants' actions.  *See Caruso v. Allstate Insurance Company*, 469 F. Supp. 2d 364, 367 (E.D. La. 2007) ("plaintiffs' assertion that they represent a class of individuals covered by homeowner's policies for homes that are located in Louisiana creates a reliable presumption that this is a class of Louisiana residents.").

The Senate Report on the Class Action Fairness Act of 2005 (S. Rep. No. 14, 109th Cong., 1st Sess. [2005], 2005 WL 627977) on the "Local Controversy Exception" is informative concerning this issue:

> The purpose of this exception was to allow cases involving environmental torts such as a chemical spill to remain in state court if both the event and the injuries were truly local, even though there are some out-of-state defendants.

*Id.*, at 47.  This legislative history provides substantial support for the conclusion that this case should be remanded due to the locally defined matter.

In sum, the Class and any Sub-Classes to be hereafter defined unquestionably will surpass the two-thirds threshold needed to satisfy the first prong of CAFA's local controversy exception.

### b. "Significant" Louisiana Defendant – § 1332(d)(4)(A)(i)(II)

The second prong of the local controversy exception requires at least one defendant be a citizen of the forum State and that Plaintiff alleges the local defendant's conduct constitutes a "significant basis" for the claims asserted and from whom "significant relief" is sought.  28 U.S.C.

---

[5]    In considering the propriety of removal, the district court generally must restrict itself "to the plaintiff's pleading, which controls."  *Griffin v. Ford Consumer Fin. Co.*, 812 F. Supp. 614 (W.D.N.C. 1993) (quoting *American Fire and Casualty Co. v. Finn*, 341 U.S. 6 (1950)); *see also Boggs v. Lewis*, 863 F.2d 662 (9th Cir. 1988) (in assessing whether a plaintiff's claims were properly removable, Court of Appeals looked to plaintiff's pleadings); *Union Planters Nat'l Bank of Memphis v. CBS, Inc.*, 557 F.2d 84 (6th Cir. 1977) (as a general rule, removability is determined by the plaintiff's pleadings).

§ 1332(d)(4)(A)(i)(II).   While CAFA does not define these terms, courts have found them applicable in situations similar to this one.  *See, e.g.*, *Haynes v. EMC Mortgage Corp.*, 2010 WL 1445650, at *4 (N.D.Cal. 2010)(local defendant's conduct "was so deeply intertwined with that of [out-of-state] defendant that it cannot be disregarded as a significant defendant"); *Kaufman v. Allstate New Jersey Insurance Company*, 561 F.3d 144, 157 (3rd Cir. 2009); *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009).

As indicated above, Plaintiff's Petition names as a defendant Donald Vidrine, unquestionably a resident of Louisiana.  The Petition alleges defendants Vidrine and BP p.l.c. are jointly and severally liable for violations of Louisiana law and the plaintiff's right to enjoy the natural environment.  Unfortunately, Plaintiff is but one of the thousands of unfortunate victims of the Defendants' joint misconduct that resulted in massive, devastating, and long-lasting damage to Louisiana flora and fauna.  None of Defendants' actions as alleged in the Plaintiff's Petition are insignificant.  Moreover, both Defendants are significant targets for damages and remedial relief.

Without question, Plaintiff has established that defendant Vidrine is a Louisiana citizen from whom significant relief is sought, and whose conduct is a significant contributor to the acts described in his Petition.  *See, e.g.*, *Coffey*, 581 F.3d at 1245 ("The statutory language is unambiguous, and a 'defendant from whom significant relief is sought' does not mean a 'defendant from whom significant relief may be obtained.' There is nothing in the language of the statute that indicates Congress intended district courts to wade into the factual swamp of assessing the financial viability of a defendant as part of this preliminary consideration, which is one of six issues for a court to consider when deciding whether the 'local controversy exception' is met").  Accordingly, Plaintiff has met his burden under the "significant defendant" prong of the local controversy exception. 28 U.S.C. §1332(d)(4)(A)(i)(II).

### c. *"Principal Injuries" in Louisiana – § 1332(d)(4)(A)(i)(III)*

In explaining its policy behind the third prong of the local controversy exception, the Senate Report again identifies a hypothetical environmental contamination case as the poster child for establishing alleged "principal injuries" occurring in the forum state. *See* Senate Report, *supra* at p. 40. The report specifically contemplates:

> For example, a class action in which local residents seek compensation for property damage resulting from a chemical leak at a manufacturing plant in that community would fit this criterion, provided that the property damage was limited to residents in the vicinity of the plant.

*Id.*, at p. 40.

It is without question that the damages claims are limited to the harm experienced by the class members here in Louisiana. *See, e.g.*, *American General Financial Services v. Griffin*, 685 F. Supp. 2d 729, 735 (N.D.Ohio 2010)("Griffin must next show that the 'principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed.'").

While the harm in this matter may spread farther than would be true of an explosion at an industrial facility, it is nevertheless limited to within Louisiana. *See Coleman v. Estes Express Lines, Inc.*, 627 F.3d 1096, 1100 (9th Cir. 2010)('local Controversy' exception intended to identify "a controversy that uniquely affects a particular locality and to ensure that it is decided by a state rather than a federal court.")(internal quotations and citations omitted). Accordingly, Plaintiff has met his burden under the "principal injuries" prong of the local controversy exception. 28 U.S.C. §1332(d)(4)(A)(i)(III).12

### d. *"Previous" Class Actions – § 1332(d)(4)(A)(ii)*

The fourth and final prong to the local controversy exception requires Plaintiff to demonstrate that no other class action asserting the same or similar factual circumstances has been

filed against any of the Defendants in the previous three years.  28 U.S.C. §1332(d) (4)(A)(ii).  As stated in the Senate Report, *supra*, the purpose of this requirement is to test whether the controversy is indeed localized, and to ensure overlapping or competing class actions are not excluded from Federal Court and thus beyond the coordinating authority of the Judicial Panel on Multi-District Litigation.  *See id.*, at p. 41.  "The legislative history [of CAFA] makes clear that the 'local controversy' exception is not overcome merely because purported classes overlap in significant respects.  Nor is the exception mooted when the purported class actions are identical in other incidental respects, such as arising out of the same event and including a common defendant.  Rather, the determinative factor is whether *similar factual allegations* have been made against the same defendant in multiple actions."  *Rasberry v. Capitol County Mutual Fire Insurance Co.*, 609 F.Supp.2d 594, 605 (E.D. Tex. 2009)(emphasis in original).

The Plaintiff Class in this matter consists of current and/or former Louisiana residents, and to be certain, the injuries resulting from Defendants' activities occurred in Louisiana.  Without question, the instant case clearly is not the type of case Congress was worried about when it set out to prevent inconsistent application of law or inconsistent results across interstate plaintiffs.  Further, Plaintiff believes that none of the Defendants to this action have been subject to a class action for the conduct specifically described in the plaintiff's Petition, and as elaborated upon here, in the last three years.  Plaintiff has, therefore, met his burden under this final test.

Plaintiff has demonstrated this case fits the "local controversy" exception envisioned by Congress in its passage of CAFA.  The class, controversy, acts, omissions and injuries are particularly localized within the borders of Louisiana and suffered by citizens of Louisiana.  Accordingly, the Plaintiff respectfully requests that this Court remand this action under 28 U.S.C. § 1332(d)(4)(A).

**Plaintiff Should Be Awarded Costs and Attorney's Fees**

Finally, 28 U.S.C. § 1447(c) allows a plaintiff who is successful in compelling the remand of a removed case to recover from the removing party "payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal."  Mr. Terrell is convinced that the facts of this case justify such an award.  Not only was the defendant's removal of this action without sound legal basis, but Mr. Terrell believes it was done primarily as a litigation tactic to unreasonably delay and postpone the defendants' ultimate "day of reckoning" in connection with the claims asserted in this suit.   Mr. Terrell and undersigned counsel stand ready to provide the Court with any additional information it may deem necessary to make such an award.

<u>CONCLUSION</u>

For the reasons set out above, this Honorable Court lacks proper subject-matter jurisdiction over this matter, and the plaintiff's Motion to Remand, as supplemented and amended herein, should be granted, thereby, remanding this suit to the state court in which it was originally file.  In addition, the Court should award the plaintiff attorney's fees and expenses associated with the bringing of this motion.

Respectfully submitted:

**TALLEY, ANTHONY, HUGHES
& KNIGHT. L.L.C.**

BY: _/s/ Craig J. Robichaux _____
     CRAIG J. ROBICHAUX (#17119)
2250 7th Street
Mandeville, Louisiana 70471
Telephone:  (985) 624-5010
Fax:  (985) 624-5306
Email: craig.robichaux@talleyanthony.com

    -- and --

Byard "Peck" Edwards & Associates, L.L.C.
Byard "Peck" Edwards, Jr. (#5282)
902 C.M. Fagan Drive

Suite G
Hammond, LA  70403
Telephone: (985) 902-7514
Facsimile: (985) 902-7515
Email: byardedwards@bellsouth.net

ATTORNEYS FOR PLAINTIFF
TIM TERRELL

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2014, I electronically filed the foregoing Memorandum in Support of Plaintiff's First Supplemental and Amending Motion for Remand with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record (there being no unrepresented parties) by operation of the court's electronic filing system.

_____/s/ Craig J. Robichaux_____
CRAIG J. ROBICHAUX