UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179 "J"(1) JUDGE BARBIER MAG. JUDGE SUSHAN |
| **THIS DOCUMENT APPLIES TO:** **No. 12-00311** | * * | **JURY TRIAL DEMANDED** |

## LIU'S REPLY IN SUPPORT OF ITS MOTIONS FOR PARTIAL SUMMARY JUDGMENT[1]

### I. Cameron's Forfeiture of Coverage

#### A. Cameron's Indemnity Claim Is Valid and Enforceable.

As LIU has shown, Cameron's indemnity rights are valid and enforceable if (1) BP owed indemnity to Transocean; and (2) Transocean was obligated to "provide [Cameron] with the benefit" of the BP indemnity. Satisfying the first prong, the Court held in January 2012 that "BP is required to indemnify Transocean for compensatory damages asserted by third parties against Transocean related to pollution that did not originate on or above the surface of the water, even if the claim is the result of Transocean's strict liability (including OPA and unseaworthiness), negligence, or gross negligence."[2]

Cameron claims the Court's ruling did not resolve the BP/Transocean indemnity because it left open "whether Transocean breached the Drilling Contract or committed an act that materially increased BP's risk or prejudiced its rights."[3] This issue, according to Cameron, is "clearly beyond the scope of this case." If the Court accepts Cameron's position that the Court cannot resolve Cameron's indemnity claim given the current procedural posture, this only highlights the prejudice to LIU resulting from Cameron's withdrawal of its indemnity motion

---

[1] As the Court ordered (Rec. Doc. No. 12610), Liberty Insurance Underwriters, Inc. ("LIU") submits this Reply in support of its Motion for Partial Summary Judgment Concerning Cameron's Forfeiture of Coverage (Rec. Doc. No. 12580) and its Motion for Summary Judgment on Cameron's § 541 claim (Rec. Doc. No. 12578).
[2] *In re Oil Spill by the Oil Rig Deepwater Horizon*, 841 F. Supp. 2d 988, 1009 (E.D. La. 2012).
[3] The Court described BP's arguments on this point as "doubtful". *Id.* at 1007.

1

hours before the hearing. The Court should not allow Cameron to hide behind a procedural posture it created. Moreover, as the party opposing summary judgment, Cameron must come forward with some evidence showing that the otherwise enforceable indemnity is void because of Transocean's alleged breach.[4] Cameron has failed to do so. Absent such proof, the Court's ruling that BP owes indemnity must stand.

Relying on Cameron's own summary judgment arguments to this Court, LIU also has shown that Transocean was required to "provide [Cameron] with the benefit" of the BP indemnity. Cameron responds that the indemnity was "hotly contested" and LIU has offered only "unsupported factual allegations" precluding summary judgment. Cameron's argument is astonishing considering that Cameron moved for summary judgment on the same issue and LIU adopted the very pleadings and evidence Cameron filed in support of its motion. Indeed, in its Reply brief, Cameron argued to this Court,

> Cameron's interpretation of the clear and unambiguous language of the Transocean pollution indemnity obligation is the only reasonable interpretation presented. Cameron is therefore entitled . . . to summary judgment . . . holding that Transocean has breached its obligation to provide Cameron the benefit of the Drilling Contract pollution indemnity "to the fullest extent possible."[5]

Summary judgment on this legal issue of contract interpretation was proper when Cameron sought it in 2011 and remains so today when only the moving party has changed. Cameron's business decision to transfer valid and enforceable indemnity claims to BP, thereby preventing LIU from recovering from Transocean and/or BP any payments on Cameron's behalf, forfeited coverage under the Policy.

---

[4] See, e.g., Hudson v. Forest Oil Corp., 2003 WL 21276385, at *4 (E.D. La. 2003) (Barbier, J.) (rejecting intervenor's claim that indemnification clause was invalid where there was "no evidence that [indemnitee] . . . acted in any way which caused an increase in the risk, or prejudiced the rights of [indemnitors]").

[5] Rec. Doc. No. 4865, at p. 9.

## B.    <u>LIU Did Not Anticipatorily Breach the Policy.</u>

Cameron argues the Court should not consider whether its indemnity rights were valid, because LIU anticipatorily breached the Policy by denying coverage to Cameron based on the Other Insurance Clause ("OIC"), relieving Cameron of its obligation to preserve LIU's subrogation rights. Under Texas law, anticipatory breach is a *positive and unconditional refusal* to perform a contract in the future, expressed either before performance is due or after partial performance.[6] It requires conduct showing a *fixed intention* to abandon, renounce, and refuse to perform the contract.[7] LIU never unconditionally denied coverage to Cameron. Rather, LIU repeatedly communicated to Cameron its *conditional* coverage position based on the OIC and Transfer of Rights provision.[8] Indeed, LIU advised that once all underlying insurance and indemnities were exhausted, the Policy would attach and coverage *would be afforded* subject to the Policy's other terms, conditions and provisions. And, LIU repeatedly requested to discuss with Cameron its position regarding the proposed BP settlement and its effect on coverage and even offered to pay some amount towards the settlement.[9] Cameron did not accept the amount offered. In short, LIU never unconditionally denied liability and did not waive its subrogation rights. Therefore, at the time of settlement, Cameron was bound by all Policy requirements, which it breached by transferring its indemnity rights to BP.

In addition, if Cameron is correct that LIU anticipatorily breached the Policy on November 7, 2011, which LIU disputes, Cameron had the right to treat the Policy as terminated

---

[6] *Van Polen v. Wisch*, 23 S.W.3d 510, 516 (Tex.App.—Houston [1st Dist.] 2000, pet. denied); *see also Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004) ("In Texas, in order to prevail on a claim for anticipatory breach, a plaintiff must establish . . . an absolute repudiation of the obligation[.]").

[7] *In re Braddock*, 64 S.W.3d 581, 585 (Tex.App.—Texarkana 2001, no pet.) (citing *Hubble v. Lone Star Contracting Corp.*, 883 S.W.2d 379, 382 (Tex. App. – Fort Worth 1994, writ denied)).

[8] *See* Ex. O (11/7/11 letter); Cam. Exs. 5 (12/14/11 letter) & 6 (12/13/11 letter).

[9] *See* Cam. Ex. 6 (12/13/11 letter) ("LIU remains willing to discuss separately with Cameron its Other Insurance provision contained in our policy and any of the positions taken herein."); Cam. Ex. 5 (12/14/11 letter) ("LIU desires to negotiate a settlement with Cameron which recognizes the unique coverage issues which you and I have previously discussed and which are set forth in my prior letters on behalf of LIU[.]").

3

960127_1

and sue LIU immediately.[10] Cameron chose *not* to pursue this option and instead treated the contract as still in existence and ultimately sued LIU for breach *after* the time for performance was due.[11] Under Texas law, "'a contract cannot be thus treated, for one purpose, as subsisting, and, for another purpose, as at an end. Upon such a repudiation . . . the other may make his choice between the two courses open to him, but can neither confuse them together nor take both.'"[12] Cameron elected its remedy by ignoring LIU's purported anticipatory breach, and Cameron is foreclosed from now "confus[ing] . . . together" this claim *and* a breach of contract claim.

### C. Cameron Did Not Preserve LIU's Right to Recover from Transocean.

Cameron insists that it preserved LIU's rights in Paragraph 4.4 of the settlement. Cameron's interpretation is implausible considering that Cameron *never once* mentioned this supposed preservation of LIU's rights in December 2011 or at any point before filing suit, although Cameron and LIU continued to negotiate during this time period. Indeed, Cameron did not raise this issue until June 2012, five months after filing suit.[13] Setting aside Cameron's delay in asserting this novel interpretation, Cameron's argument reflects a fundamental misunderstanding of the Transfer of Rights provision. At most, paragraph 4.4 only "preserves" LIU's technical right to step into Cameron's shoes through subrogation and pursue whatever rights Cameron may have, if any. But the right to subrogate already was LIU's under the Policy and no agreement between Cameron and a third-party could change this. The Transfer of Rights

---

[10] See *Teleresource Corp. v. Accor N. Am., Inc.*, No. 02-12-00475, 2014 WL 975736, at *4 (Tex. App. – Fort Worth 2014).

[11] See Am. Compl., Rec. Doc. No. 6287 at ¶ 63 (alleging that "[t]he Liberty Insurance Policy is a valid and enforceable contract between Cameron and Liberty"); *id.* at ¶¶ 62-66 (alleging breach of contract claim against LIU).

[12] See *Teleresource Corp.*, 2014 WL 975736, at *4 (quoting *Greenwall Theatrical Circuit Co. v. Markowitz*, 79 S.W. 1069, 1071-72 (Tex. 1904)).

[13] See Rec. Doc. No. 6697-2, at pp. 23-24.

4

provision aims at something else entirely: preservation of *Cameron's own* "rights to recover", which LIU acquires upon payment. Cameron bargained away its *own* right to recover from Transocean in paragraphs 4.3 and 4.5 of the settlement, leaving only empty shoes for LIU to step into.[14] Cameron's transfer of its *own* rights against Transocean violated the Policy and forfeited coverage.[15]

Cameron also relies on BP's self-serving, post-execution statements contained in a Motion to Quash to prove the meaning of paragraph 4.4. These statements are hearsay and are not relevant or admissible to interpret the settlement agreement, the terms of which are clear. Moreover, the Court previously denied LIU discovery concerning the Cameron/BP settlement finding no ambiguity.[16]

### D. Cameron's Transfer of Its Rights Occurred "After Loss".

Cameron contends that it did not sustain a "loss" until it settled, and thus its transfer of its indemnity rights in the settlement agreement was not "after loss" and did not violate the Policy. Cameron apparently relies on the INIC Policy's definition of "loss" as "those sums actually paid as judgments or settlements[.]"[17] However, the INIC Policy's definitions apply *only* to terms that "appear in bold print[.]"[18] As "loss" is *not* in bold print in the Transfer of Rights provision, the definition does not apply. Moreover, Cameron's own pre-settlement correspondence

---

[14] Cameron argues that paragraph 4.3 is merely a "covenant not to sue" and "does not release any claims against Transocean[.]" According to a leading insurance treatise, however, "A covenant by the insured not to sue the wrongdoer will have the same effect as a release." 1 INS. CLAIMS & DISPUTES § 3.7 (6th ed. 2013); *see also Shepherd v. State Farm Mut. Auto. Ins. Co.*, 607 F. Supp. 75, 76 (S.D. Miss. 1985) ("State Farm's ability to recover from Amini or his insurer is dependent entirely on [the insured's] rights. By foreclosing her own right to sue, [insured] has abrogated State Farm's rights."); *Northern Ins. Co. v. B. Elliot, Ltd.*, 323 N.W.2d 683, 689-90 (Mich. Ct. App. 1982) (insured's covenant not to sue seller of defective product barred insurer's subrogation action).

[15] Nor does paragraph 4.6 of the settlement demonstrate that LIU's rights were preserved. Paragraph 4.6 addresses coverage claims against "any Cameron Insurer," not merely LIU, and thus this paragraph is *not* narrowly tailored to address the Cameron/LIU dispute, as Cameron now suggests.

[16] Rec. Doc. No. 10642.

[17] Ex. B, at MARSH 001132.

[18] *Id.* at MARSH 001056.

5

referencing a "date of loss" of 4/20/10 shows that it well knows that the "loss" the Policy contemplates occurred on April 20, 2010, when Cameron faced potential liability arising from the Deepwater Horizon incident.[19] Cameron cannot avoid its own statements acknowledging that "loss" occurred on the date of the blowout, long before the settlement.

## II. Cameron's § 541 Claim[20]

### A. LIU's Reasonable Policy Interpretation Forecloses Liability Under § 541.

As Cameron concedes, a bona fide coverage dispute relieves an insurer of liability under Texas Insurance Code § 541.060(a)(2)(A).[21] LIU has shown that Texas courts regularly grant summary judgments for insurers dismissing § 541 claims, contrary to Cameron's position that such claims *always* present disputed factual issues.[22] Cameron claims summary judgment is not proper because a fact issue exists concerning whether LIU *knew or should have known* that it had no reasonable basis for its coverage positions.[23] Cameron's argument misses the mark. LIU's coverage positions were reasonable and thus extrinsic evidence bearing on LIU's subjective intent is completely irrelevant.[24]

#### 1. Transfer of Rights

Cameron claims that LIU "was well aware" that Cameron preserved LIU's rights in the settlement agreement. To the contrary, Cameron never once informed LIU of this purported

---

[19] See CIC0012323 (discussing "loss" identified as "Deepwater horizon Explosion and Fire" on April 10, 2010), CIC0000135 (referring to "date of loss" of "04/20/2010"), CIC0000146 (same), attached *in globo* as Ex. V.

[20] Cameron has asserted two claims under Texas Insurance Code § 541.060(a): (1) LIU misrepresented a material fact or policy provision relating to the coverage at issue; and (2) LIU failed to attempt in good faith to settle a claim with respect to which its liability has become reasonably clear. Only the second claim is at issue in this motion.

[21] *See, e.g., Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, No. 12-40692, 2014 WL 127131, **15-16 (5th Cir. 2014).

[22] *Henry v. Mut. of Omaha Ins.*, 503 F.3d 425 (5th Cir. 2007); *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997); *Flint-Lambert, P.C. v. Gulf Ins. Co.*, No. 04-184, 2005 WL 2042062, at *4 (N.D. Tex. 2005).

[23] Opp., at p. 24.

[24] *See Henry*, 503 F.3d at 430 (affirming summary judgment for insurer where "there is no genuine question of fact whether MOIC had a reasonable basis to reject [insured's] claim").

6

preservation of its rights, although the parties communicated almost daily concerning this issue.[25] Moreover, as discussed above, LIU contends that Cameron's purported "preservation" of LIU's subrogation rights in paragraph 4.4 is meaningless because Cameron gave away its indemnity claim to BP in paragraphs 4.3 and 4.5. As LIU has shown, Texas law supports LIU's position that Cameron's release of its indemnity rights forfeited coverage.[26] This Court confirmed LIU's understanding, finding that Liberty may be excused from coverage "if Cameron released legally valid and enforceable indemnity claims against Transocean[.]"[27] LIU's position that Cameron impaired LIU's subrogation rights by transferring its indemnity claim is, at minimum, a reasonable one. Accordingly, LIU is immune from liability under section 541.060(a)(2)(A).

### 2. Other Insurance Clause

LIU's position based on the OIC that the LIU Policy had not attached because Cameron had not exhausted its right to "indemnification" from Transocean also was imminently reasonable, even if LIU does not ultimately prevail. As LIU has shown, this Court already has found that the there are "two reasonable interpretations" of the OIC.[28] And, in so finding, the Court observed that there was no controlling Texas law on the issue.[29] This should end the inquiry, and the Court should disregard Cameron's lengthy and irrelevant discussion of extrinsic evidence supposedly showing LIU's subjective intent.[30]

---

[25] *See* Ex. S (11/7/11 letter); Cam. Exs 5 (12/14/11 letter) & 6 (12/13/11 letter).
[26] *Mendez v. Allstate Prop. & Cas. Ins. Co.*, 231 S.W.3d 581, 585 (Tex. App. – Dallas 2007) ("Courts have traditionally held that when an insured extinguishes an insurer's subrogation rights the insured is precluded from recovery under the policy.").
[27] Rec. Doc. No. 7129, at p. 25.
[28] Rec. Doc. No. 7129, at p. 20.
[29] *Id.* at 18.
[30] Cameron claims, "Under Texas law, as Liberty knew or should have known, an insurer's reasonable interpretation is not a basis to deny insurance when that insurer knows that the policyholder's interpretation is also reasonable." Opp., at p. 26. To be clear, LIU's position is that its interpretation of the OIC is the *only* reasonable one considering the facts presented here. Nevertheless, the issue for purposes of Cameron's bad faith claim is *only* whether LIU's interpretation was reasonable, even if LIU does not ultimately prevail.

7

Even if the Court considers Cameron's evidence, which it should not, the evidence does not show that LIU's coverage position was pretextual:

- **Testimony of LIU's Underwriters** – these witnesses clearly testified that they are not claims personnel and did not know how the LIU Policy applied to a particular claim.[31]

- **James Engel's alleged statements during confidential settlement negotiations** – Even if Cameron's VP and CFO's testimony concerning Engel's statements is accurate, which LIU denies, Sledge testified only that Engel said he was "going to pay something" under the LIU Policy.[32] Offering to "pay something" *in settlement* where coverage is disputed is *not* an admission that LIU actually believed it owed anything.

- **Correspondence and testimony of other insurers concerning the OIC's meaning** – the LIU Policy's language is clear and the opinions of these strangers to the Policy concerning its meaning are completely irrelevant.

Nor is it relevant that this is the first time LIU took this position based on the OIC. The OIC's clear language supports LIU's position and Cameron has not shown that LIU previously adjusted a claim involving the same facts presented here.[33] Accordingly, as LIU has shown, a bona fide dispute concerning *two separate provisions of the LIU Policy* prevents Cameron from showing that LIU's liability for the settlement was reasonably clear, and LIU's motion should be granted.

### B.  A Dispute Concerning Cameron's Liability Forecloses Liability Under § 541.

As LIU has shown, because Cameron's liability was not "reasonably clear" when it settled, Cameron's § 541 claim fails.[34] LIU reasonably assessed the claim and found it defensible for two distinct reasons. *First*, Cameron potentially had no liability for the Deepwater

---

[31] A. Mandel Depo., attached as Ex. W, at 54:16 to 55:19, 67:12 to 68:2, 92:8-17, 90:21 to 91:4.

[32] Cam. Ex. 1, at 161:10-12.

[33] Cameron also rehashes its argument that LIU took an inconsistent position in an unrelated declaratory judgment action involving a different policy subject to a different state's law. Opp., at p. 26. LIU responded to this argument in its Opposition to Cameron's summary judgment motion and adopts that response here. Rec. Doc. No. 12623, at pp. 18-19.

[34] *See Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 255 (Tex. 2002) ("To establish liability [under 541] for the insurer's failure to reasonably attempt settlement of a claim against the insured, the insured must show . . . [that] the insured's liability is reasonably clear."); *Gulf Ins. Co. v. Jones*, No. 00-0330L, 2003 WL 22208551, at **9-10 (N.D. Tex. 2003) (granting summary judgment dismissing insured's § 541 claim where insurer reasonably assessed the claim and determined it was defensible).

8

Horizon claims, as its SEC filings represented.[35] Indeed, because Cameron itself concluded liability was not "probable" or "reasonably estimable," Cameron never recorded any Deepwater Horizon liability on its balance sheets.[36] And, Cameron ultimately prevailed in the Phase I trial and was exonerated of all liability, consistent with its predictions.[37] *Second*, Cameron's pending indemnity claim against Transocean could have completely eliminated Cameron's liability, if any. Cameron argued to this Court in November 2011 that it was entitled to indemnity as a matter of law and Cameron's General Counsel testified Cameron believed its rights were enforceable when the motion was filed.[38] And, Cameron's Tony Black conceded that Cameron's liability was not reasonably clear when Cameron settled because of the pending indemnity claim.[39]

Cameron responds that LIU is "asking the Court to accept as a matter of law that Cameron's potential exposure at the time of the BP-Cameron Settlement was minimal or non-existent."[40] LIU asks no such thing. Instead, LIU merely asks the Court to find that LIU had a *reasonable basis to defend the claim* and thus Cameron's liability was not "reasonably clear." Texas law requires no more than this.[41] Accordingly, Cameron's evidence that Cameron *potentially* faced liability, and this liability was *disputed*, does not defeat summary judgment. To the contrary, evidence showing the existence of a dispute only demonstrates that Cameron's

---

[35] *See* Ex. P, at p. 15 (Cameron was "of the opinion that there was no defect in or failure of the [blowout preventer] that caused or contributed to the explosion"); Ex. Q, at p. 13.
[36] *See* Ex. U, at 37:5 to 41:5.
[37] Rec. Doc. No. 9136.
[38] Rec. Doc. No. 4524-1, at pp. 21-22; Ex. J, at 62:9 to 63:19.
[39] Ex. N, at 234:19 to 235:22, 197:10 to 198:21.
[40] Opp., at p. 28.
[41] *See, e.g., Gulf Ins. Co.*, 2003 WL 22208551, at *3 (summarily dismissing Texas Insurance Code claim where "adjuster[] was aware of and considered the evidence in the case" and insured testified that "it was reasonable for the insurance company to believe that the claims in the Jones Lawsuit were defensible").

liability was *not reasonably clear*.[42]  Nor does Cameron's settlement demonstrate reasonably clear liability, as Cameron contends.  If anything, the excess judgment scenario in *Gulf Insurance* -- in which the factfinder actually *rejected* the insurer's liability assessment – presented a stronger case for bad faith.  Yet, the *Gulf* court still found as a matter of law that the insurer was not in bad faith because it reasonably believed the claim against the insured was defensible.[43]

Finally, contrary to Cameron's claim, the record is replete with evidence that LIU did not actually believe Cameron's liability was reasonably clear.  If Cameron's decision to settle indicates Cameron believed its liability was reasonably clear, despite Cameron's public statements to the contrary, LIU's non-participation in the settlement shows the opposite.  And, LIU's correspondence with Cameron repeatedly raised the issue of Cameron's unresolved indemnity claim and its potential impact on Cameron's exposure.[44]

Cameron has shown, at most, that its liability was "potential" or "disputed" when it settled with BP.  Such a dispute only confirms that Cameron's liability was not "reasonably clear" as § 541 requires.  Accordingly, the Court should grant LIU's motion.

---

[42] This evidence includes other insurers' testimony that Cameron "potentially" faced loss, as well as James Engel's testimony that Cameron's exposure could range from "from zero up to perhaps a billion dollars." Opp., at p. 29. This evidence shows, at most, that persons with intimate knowledge of Cameron's potential liability agreed that it was uncertain and could be non-existent.

[43] *Gulf Ins. Co.*, 2003 WL 22208551, at **3-4, 9-10.

[44] *See, e.g.*, Ex. S (11/7/11 letter) (observing that "uncertainties" with respect to Cameron's indemnity claim "do[] not negate the fact that Cameron has a contractual right to be indemnified by Transocean" and urging Cameron to "submit appropriate papers in support of [Transocean's summary judgment motion]").

10

Respectfully submitted,

/s/ Judy Y. Barrasso
Judy Y. Barrasso, 2814
Celeste Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
   FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
504.589.9700 (Telephone)
504.589.9701 (Facsimile)

and

Christopher W. Martin, PRO HAC VICE
Federal I.D. 13515
Gary L. Pate, PRO HAC VICE
Federal I.D. 29713
808 Travis, Suite 1800
Houston, Texas 77002
713-632-1700 (Telephone)
713-222-0101 (Facsimile)

Attorneys for Liberty International
   Underwriters, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum In Support Of Liberty Insurance Underwriters, Inc.'s Opposition To Plaintiff Cameron International, Inc.'s Motion For Partial Summary Judgment has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 13th day of May, 2014.

/s/ Judy Y. Barrasso