# Exhibit 1



E-SERVICE
55325190
Apr 18 2014
04:37PM
File & ServeXpress

**UNITED STATES DISTRICT OF COURT**
**EASTERN DISTRICT OF LOUISIANA**

_____

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL | § | MDL No. 2179 |
| RIG "DEEPWATER HORIZON" | § | |
| IN THE GULF OF MEXICO, | § | SECTION: J |
| ON APRIL 20, 2010 | § | |
| | § | JUDGE BARBIER |
| _____ | § | MAG. JUDGE SHUSHAN |

**THIS DOCUMENT RELATES TO ALL CASES**

**THE UNITED STATES' FIRST SET OF DISCOVERY REQUESTS**
**TO DEFENDANTS  BP EXPLORATION & PRODUCTION INC.**
**AND ANADARKO PETROLEUM CORPORATION IN THE PENALTY PHASE**

The United States of America propounds the following discovery requests and requests

for admission to defendant BP Exploration & Production Inc**.** and Anadarko Petroleum

Corporation to be answered pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 36 in

accordance with the schedule to be determined by the Court.

**INSTRUCTIONS**

1.      Produce all Information responsive to these requests in a format consistent with

the requirements of Pretrial Order 16.

2.      To the extent that you withhold any information responsive to these requests,

provide a privilege log in accordance with the requirements of Pretrial Order 14.

3.      Supplement your responses to these requests in accordance with the requirements

of Federal Rule of Civil Procedure 26(e).

4.      If any responses to these interrogatories or requests for admission were previously provided in whole or part, provide the date and Identify the document in which the response was made.

5.      Each of the requests for production below should be read to exclude Information already produced to the United States in discovery in this multi-district litigation.

## DEFINITIONS

As used herein, the following terms are defined as follows:

1.      "Anadarko," "Anadarko Petroleum Corporation" and "APC" means Anadarko Petroleum Corporation and its consolidated subsidiaries, unless stated otherwise.


2.       "BP" means BP plc and its subsidiaries, including relevant predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its/their behalf.

3.      "BP Exploration & Production Inc." ("BPXP") means the BP entity that bid for and was awarded the right to lease Mississippi Canyon Block 252 ("MC-252").  BPXP is a Delaware corporation with its principal place of business in Texas.  BPXP includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

4.      "BP America Production Company" ("BPAPC") was a party to the drilling contract concerning the use of the Deepwater Horizon to drill the Macondo well. BP America Production Company is a Delaware corporation with its principal place of business in Texas. BPAPC includes its predecessors, successors, subsidiaries, departments, and divisions, together

with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

5.     "BP Company North America Inc." is a Delaware corporation with its principal place of business in Illinois.  BP Company North America Inc. includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

6.     "BP Corporation North America Inc." is an Indiana corporation with its principal place of business in Texas.   BP Corporation North America Inc. includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

7.     "BP America Inc." is a Delaware corporation with its principal place of business in Texas.  BP America Inc. includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

8.     "BP Holdings North America" is a UK private limited company with its principle place of business in the United States.  BP Holdings North America includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

9.     "BP p.l.c." or "BP plc" means the parent corporation of the BP group of companies.  The company was incorporated in 1909 in England and changed its name to BP p.l.c. in 2001.

10.      "Communication" means any writing transmitted between persons or oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, meetings, memoranda, telegraphic, telex, computer and facsimile communications or transmittals of documents, Electronically Stored Information ("ESI") and all documents concerning such writings or oral conversations. "Communication" as used herein specifically includes internal writings, oral conversations or meetings among the officers, board members, employees or other representatives of any defendant.

11.      "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDAs), minicomputers and mainframe computers.

12.      "Consolidating financial statements" means the financial reports (income statement, balance sheets, and statement of cash flows) for each subsidiary and the eliminations and adjustments that are made in preparing the ultimate consolidated financial statement for the parent company.

13.      "Control" refers to ownership, possession, or custody of the Information, or the legal right to secure the Information or copy thereof from any person or public or private entity having physical possession thereof.

14.      "Identify," whether or not capitalized, when used in an Interrogatory with respect to: (a) an individual, shall mean to provide the individual's full name, job title, and employer during the period referred to, and current or last-known address and telephone number and

4

business address and telephone number; (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); and (c) Information, shall mean to provide the date, title, subject matter, author(s), and recipient(s) or the Bates number(s).

16.     "Incident" shall mean the loss of control of the MC252 Well and the fire and explosion(s) on board, and resulting sinking of, Transocean's Deepwater Horizon rig, in addition to the resulting oil spill in the Gulf of Mexico.

17.     "Information" shall have the meaning set forth in Pretrial Order 22, Paragraph 2.

18.     "Lease" means the Oil and Gas Lease of Submerged Lands under the Outer Continental Shelf Lands Act, "Serial Number OCS-g 32306" pertaining to "All of Block 252, Mississippi Canyon, OCS Official Protraction diagram, NH 16-10," also known as the Macondo Prospect, an oil and gas prospect in the Gulf of Mexico, off the coast of Louisiana.

19.     "Macondo Prospect" means the Macondo Prospect (Mississippi Canyon Block 252, abbreviated MC252) an oil and gas prospect in the Gulf of Mexico, off the coast of Louisiana. The prospect was the site of the Deepwater Horizon drilling rig explosion on April 20, 2010.

20.     "Macondo Well" means the exploratory well drilled and constructed pursuant to the Lease as defined herein.

21.     "Material Transaction" means a transaction for the subject entity that meets the standards of materiality as described in SEC Staff Accounting Bulletin No. 99 - Materiality and by the FASB Statement of Financial Accounting Concepts No. 2.

22.     "Person" refers to, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

23.     "Relating to," "referring to," "regarding," "concerning," "reflecting" or "with respect to" refers to, without limitation, the following concepts: discussing, describing, reflecting, concerning, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

24.     "Response" refers to oil spill response efforts, undertaken pursuant to Section 311 of the Federal Water Pollution Control Act, 33 U.S.C § 1321 and 40 CFR Part 300, to contain, collect, remove, disperse, and minimize the impact of hydrocarbons released from the Macondo well in connection with the Deepwater Horizon incident (including through the use of technologies such as controlled in situ burning, dispersants, skimming, and the placement of booms), including any activities BP seeks to introduce evidence of, reference, or discuss in the Penalty Phase.  This includes any natural resource damage costs, or any expenses related to determining, researching, and investigating those damages.

25.     "You" or "your" shall mean BP or Anadarko, as applicable.

## REQUEST FOR PRODUCTION TO BPXP

1.     Provide all consolidating financial statements at the subsidiary level for BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., and BP Holdings North America for each year, 2005-2014.

2.      Provide all consolidated U.S. Federal income tax returns including all subsidiary level work sheets and consolidating accounting for BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America, and BP plc for each year, 2005-2014.

3.      Provide all documents related to any BP entity's Material Transactions with BPXP, including all policies or practices affecting the pricing of such transactions for each year, 2005-2014.

4.      Provide all spreadsheets and computations evaluating BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America, and BP plc financial projections for 2014 and forward including any sensitivity analyses (including assumptions of oil and gas prices) that BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America, and BP plc have performed.

5.      Provide all documents authored by, addressed to, received by, or that identify Brenda Pennington, D.B. Pinkert or Denise Robertson (BPXP Board members); Brenda Pennington or Denise Robertson (BPAPC Board members); K.D. Heulitt, R.J. Pillari, P.D. Wessells (BP America, Inc. Board members); and Brenda Pennington and Denise Robertson (BP Company North America Inc. Board members) related to the Macondo Incident.

6.      Provide all BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., and BP Holdings North America, Board of Director, Board of Director committee, and officer meeting resolutions and decisions for each year, 2008-2014.

7.      Provide all documents, including any organizational charts, that identify and describe how BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America, and BP plc relate functionally or operationally to the BP Exploration and Production business segment and the Gulf of Mexico Strategic Performance Unit ("GOM SPU"), including any documents that identify the officers and management of each entity and their position within or relationship to the BP Exploration and Production business segment and the GOM SPU for each year, 2005-2014.

8.      Provide all documents of BP entity guarantees for obligations of BPXP for each year, 2005-2014, including all documents reflecting BPCNA's decision to provide guarantees for Macondo Well or Incident obligations of BPXP, and the involvement of BP plc.

9.      Provide all documents related to loans, revolving credit agreements or any other debt held by BPXP for each year, 2005-2014.

10.     Provide all documents reflecting BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America, and BP plc policies and targets for key financial ratios or measures, including but not limited to Net Debt to Adjusted Capital, Current Ratio, Quick Ratio, and Free Cash Flow, for each year, 2005-2014.

11.     Provide all documents reflecting the basis for BPCNA's indemnification agreement with Anadarko for Macondo well costs, and all documents reflecting the basis for BPCNA's guarantee of BPXP's Guilty Plea Agreement payments, *United* States *v. BP*

*Exploration & Production, Inc.*, No. 2:12-cr-00292 (E.D. La. Nov. 15, 2012), and the resulting

Judgment (E.D. La. Jan. 29, 2013).

12.    Provide all documents that describe and identify BPXP's policies and its payment

history regarding payment of distributions or dividends for 2005 to present.

13.    Provide all documents that describe and identify all of BPXP's current contingent

liabilities and any BP entity providing BPXP a corporate guarantee or debt financing, including

the potential financial exposure of the contingent liabilities, the status of the resolution of the

risk, the likely timing and steps to resolve the risk, and the official assessment of the financial

exposure.

14.    Provide all documents that describe and identify the BP entity or entities that

provided the following services to BPXP in 2005 to present: (a) legal; (b) accounting and

finance; (c) environmental; (d) scientific; (e) well-drilling technology and design; (f) personnel

(including any secondment agreements); and (f) human resources.

15.    Provide all documents that describe and identify all asset divestment sale

proceeds used to meet the obligations arising from the Incident including, the assets sold, the

dates of the sales, the owners of the assets sold, amounts received from the sales, and which BP

entity received the amounts from the sales, for the period 2009 to present.

16.    Provide all documents or records relating to any payment, transfer, loan, or any

other Material Transaction between BPXP and any other BP corporate entity for the period 2005

to present.

17.    Provide all documents that identify the source (including divestments) of monies

paid, loaned, or transferred, or services provided by any BP entity, including accounting records,

contracts, and records of payments from 2010 to the present related to the Incident, the Response or any efforts to mitigate the effects of the discharge.  This request includes records relating to payments 1) for work performed during the Response, or efforts to mitigate the effects of the discharge 2) for early restoration projects, 3) to perform actions required under the Guilty Plea Agreement, (*United States v. BP Exploration & Production, Inc.*, No. 2:12-cr-00292 (E.D. La. Nov. 15, 2012), and the resulting Judgment (E.D. La. Jan. 29, 2013)), 4) made to any state, city, parish or government entity (including any state or federal health organization such as the Gulf of Mexico Research Initiative, the National Fish and Wildlife Foundation, the National Institute of Environmental Health Sciences in the form of a grant, or for any costs related to the spill and its response), or 5) paid through the BP Claims Facility, the Deepwater Horizon Oil Spill Trust established by the August 6, 2010 agreement, the Gulf Coast Claims Facility, and the BP Claims Program which began accepting claims on June 4, 2012.

18.     Provide all data relevant to the environmental impact, effect or seriousness of the Incident, the Response, or the efforts of the Defendants to minimize or mitigate the effects of their discharge, excluding data already provided to the federal Natural Resource Damage Trustees.

19.     Provide all documents relevant to the impact, effect, or seriousness of the Incident, Response, or the efforts of the Defendants to minimize or mitigate the effects of their discharge on human health, including, but not limited to: (1) documents related to any medical claims made by private parties to BP, including investigation of those claims, correspondence, settlement, payments etc. under any framework, including but not limited to the BP claims facility, the oil spill trust, the GCCF, the  Medical Benefits Settlement, or settlements with rig

workers or families of rig workers; (2) any documents related to any analysis conducted by BP regarding the impact, effect or seriousness of the Incident, Response and spill on human health; and (3) the "Medical Encounters" and "Injury and Illness" databases, as well as the underlying Information from which these databases were created.

20.     Provide all documents used by BP to evaluate the economic impact of the Spill on the economy of the Gulf States and the United States as a whole, excluding documents related to specific claims submitted as part of the Economic and Property Damages settlement.

21.     Provide all documents related to any fact that BP contends that the court should consider in connection with the penalty factor "any other matters that justice may require."

22.     Provide all documents identified in response or relating to any contention set forth in response to any of the United States' Penalty Phase Interrogatories or Requests for Admission and rebutting, refuting, or calling into question any aspect of any factual contention BP intends to proffer at trial in the Penalty Phase.

23.     Provide the audit, report, recommendations, and findings of the Task Force convened to provide the Grangemouth Complex Director with prioritized actions and recommendations for changes to site procedures and organization as a result of a power failure, steam line rupture, and fire on the Fluidised Catalytic Cracking Unit that occurred at the Grangemouth complex in May and June 2000.

## <u>INTERROGATORIES TO BPXP</u>

1.     Identify the members of the Boards of Directors and officers of BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North

11

America Inc., BP America Inc., BP Holdings North America, and BP plc, for each year 2008-2014.

2.　　Identify which BP corporate entity, employed and paid the following persons: Tony Hayward, Robert Dudley, Andrew Inglis, Lamar McKay, Douglas Suttles, James Dupree, David Rainey, Kevin Lacey, Brian Morel, Mark Hafle, Bret Cocales, John Guide, Robert Kaluza, Don Vidrine, Trevor Hill, Mike Mason, and David Sims for each year, for each year, 2010-2011.

3.　　Identify each of the "substantial voluntary monetary commitments" referenced in BP's submission to Magistrate Judge Shushan of March 3, 2014 and state the basis for your contention that such commitments "improved public health, the environment and the economies of" the Gulf States.

4.　　Identify each "technological achievement[] and industry leading safety advancement[]" referenced in BP's submission to Magistrate Judge Shushan of March 3, 2014 and state the basis for your contention that such achievements and advancements "were substantial, innovative and highly valuable and have improved standards in other companies throughout the industry."

5.　　Identify each "effort[] to improve deepwater drilling safety since the *Deepwater Horizon* incident," referenced in BP's submission to Magistrate Judge Shushan of March 3, 2014.

6.　　Identify each penalty obtained against other companies and each environmental incident referenced in BP's submission to Magistrate Judge Shushan of March 3, 2014, and how you contend the penalty in this should be "calibrated" to the penalty to be imposed for BPXP's violations of the Clean Water Act.

12

7.      Identify each "action or decision" taken or made by the United States referenced in BP's submission to Magistrate Judge Shushan of March 3, 2014 and state whether and how each such action "made BPXP's remediation and response efforts less effective, and thereby increased BPXP's potential liabilities for the Incident."

8.      Identify any actions that BPXP contends are Response Activities (as defined in BPXP's discovery requests) that were not conducted at the direction and under the oversight of the Unified Command, and for each such activity, describe the activity in detail, the persons or entities involved, the outcome or result of the activity, the cost associated with the activity (including any amounts paid by BPXP or other BP entities and Identifying those entities), and the reasons why such activity was not conducted at the direction and under the oversight of the Unified Command.

## REQUESTS FOR PRODUCTION TO ANADARKO

1.      Provide all consolidating financial statements at the subsidiary level for each year, 2010-2014 on a quarterly basis.

2.      Provide all spreadsheets and computations evaluating Anadarko's financial projections for 2014 and forward including any sensitivity analyses (including assumptions of oil and gas prices) that Anadarko performs.

3.      Provide all documents related to loans, revolving credit agreements or any other debt held by Anadarko for each year, 2010-2014.

4.      Provide all documents related to insurance payments made to and on behalf of Anadarko related to the Macondo oil spill and the associated insurance policy.

5.      Provide all documents reflecting Anadarko policies and targets for key financial

ratios or measures, including but not limited to Net Debt to Adjusted Capital, Current Ratio,

Quick Ratio, and Free Cash Flow for each year, 2005-2014.

6.      Provide all documents reflecting payments Anadarko has made or received related

to the Incident.

7.      Provide all documents that describe and identify any contingent liabilities held by

Anadarko, including the range of potential financial exposure of the contingent liabilities, the

status of the resolution of the risk, the likely timing and steps to resolve the risk, and the entity's

official assessment of the financial exposure.

8.      Provide all documents that describe and identify any transfer or sale of assets to a

third party in excess of $100 Million (One Hundred Million Dollars) by Anadarko Petroleum

Corporation, subsequent to the Macondo spill, Identifying the assets transferred, the

consideration provided and explaining the rationale and basis therefore.

9.      Provide all documents that describe and identify any evidence of your

involvement, participation, contributions, or offers related to efforts to minimize or mitigate the

effects of the discharge.

10.     Provide all Anadarko Petroleum Corporation Board of Director and Board of

Director committee and officer meeting resolutions and decisions for each year 2008-2014 .

11.     Provide all documents that support or may contradict any fact that

Anadarko contends that the court should consider in connection with the penalty factor "any

other matters that justice may require," including, if Anadarko so contends, (1) government

oversight, approvals, and compliance requirements for deepwater drilling generally and for the

Macondo well specifically; (2) government enforcement actions, including criminal actions, with

respect to the Incident; (3) pre- and post-Incident regulatory guidance, recommendations and practice regarding deepwater drilling and enforcement history as it relates to operators, contractors, and non-operating parties; (4) the importance and benefits of offshore oil development both locally and nationally and contributions by Anadarko to the local economy and community affected by the Incident; (5) benefits to the United States of offshore oil development, including royalties; (6) industry custom and practice (including contractual relationships) between designated operators and non-operators; (7) potential and actual impacts on (i) non-operators; (ii) investment in offshore oil development, (iii) offshore drilling operations, and (iv) industry custom and practice (including contractual relationships) if penalties (or threat of penalties) are imposed on non-operators; and (8) efficacy of penalties against non-operators.

12.     Provide all Information identified in response or relating to any contention set forth in response to any of the United States' Penalty Phase Interrogatories or Requests for Admission and rebutting, refuting, or calling into question any aspect of any factual contention Anadarko intends to proffer at trial in the Penalty Phase.

## INTERROGATORIES TO ANADARKO

1.     If you contend that government oversight, approvals, and compliance requirements for deepwater drilling generally and for the Macondo well specifically are pertinent to the civil penalty factor of "any other matters that justice may require," identify each such

oversight, approval, and compliance requirement and state the reasons that Anadarko contends each such action or requirement is relevant.[1]

2.      If you contend that pre- and post-Incident regulatory guidance, recommendations and practice regarding deepwater drilling and enforcement history as it relates to operators, contractors, and non-operating investors, are pertinent to the civil penalty factor of "any other matters that justice may require," identify each such guidance, recommendation and practice and state the reasons that Anadarko contends each such guidance, recommendation, or practice is relevant.

3.      Identify with specificity the benefits of offshore oil development locally and nationally and Anadarko's contributions to the local economy and community affected by the Incident that Anadarko contends is relevant to the penalty factor "any other matters that justice may require."

4.      If Anadarko contends that any of the topics concerning non-operators and operators listed in Anadarko's March 3, 2014 submission to Magistrate Judge Shushan (Topics Nos. 6, 7, and 8 in its discussion of the "other matters as justice may require" penalty factor) are relevant to the penalty determination, please set forth the basis for that contention, and specifically identify (i) the industry customs and practices between operators and non-operating participating parties that it contends are relevant; (ii) the potential and actual impacts on investment, etc. (as enumerated in Topic # 7 of Anadarko's March 3, 2014 submission to Magistrate Judge Shushan) of a civil penalty for extremely serious unlawful discharges that it

---

[1]  The United States is deleting former Interrogatory No. 2 based on Anadarko's confirmation that it is withdrawing its contention that the Court should consider "government enforcement actions, including criminal actions" under the final penalty factor of "any other matters that justice requires." *See*, April 18, 2014 email from Thomas Lotterman to Nancy Flickinger and others.

contends are relevant; and (iii) your contentions concerning the efficacy of penalties against non-operators, and state the reasons why such topics are relevant.

5.      Identify any evidence of your involvement, participation, contributions, or offers related to efforts to minimize or mitigate the effects of the discharge.

6.      Identify any exploration or production wells that you have drilled in the Gulf of Mexico, including the location of each well and whether it is considered a deepwater well, from 2005-present.

7.      Describe the economic impact of Anadarko's Settlement Agreement filed on April 3, 2014 (Dkt. No. 635) in *In re: Tronox*, Adv. Pro. No. 09-01198-alg (Bankr. S.D.N.Y.), if any, on Anadarko's on-going business operations.

## REQUESTS FOR ADMISSION TO BPXP

1.      Admit that BP entities other than BPXP provided resources including personnel and equipment prior to, during, and in Response to the Incident.

2.      Admit that BP entities other than BPXP provided funding for costs prior to, during, and in Response to the Incident.

3.      Admit that if BPXP was required to pay an $18 billion civil penalty in this case, that BPXP could continue its business operations.

4.      Admit that if BPXP was required to pay an $18 billion civil penalty in this case, that BP could continue its business operations.

5.      Admit that BPXP is not an employing entity.[2]

---

[2] *See* BP Exploration & Production Inc.'s Memorandum In Opposition to the United States' Motion *In Limine* to Permit Relevant Evidence Concerning BP P.L.C. and Other BP Affiliates at 4, *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, Plaisance et al. v. BP Exploration & Production, Inc.*, et al., No. 2:10-md-02179, 12-CV-968 (E.D. La. March 6, 2014), Rec. Doc. 12465). Responses of BP to EPA's Questions of October 12, 2012, filed as Exhibit 11 to Plaintiff

6.     Admit that BP sold assets not owned by BPXP to help meet obligations arising from the Incident.

7.     Admit that on August 23, 2010, the claims process was transitioned to the Gulf Coast Claims Facility (GCCF) from which more than $6.3 billion was paid for claims to individuals and businesses.[3]

8.     Admit that the Macondo Incident was an extremely serious violation.

## REQUESTS FOR ADMISSION TO ANADARKO

1.     Admit that the Incident caused actual and potential injury or harm to human health, the environment, and the economy within the Gulf Coast Region (as defined in 33 U.S.C. § 1321(a)(33)).

2.     Admit that the Macondo Incident was an extremely serious violation.

3.     Admit that if Anadarko were required to pay a civil penalty of $2 billion in this case, Anadarko could continue its business operations.

4.     Admit that if Anadarko were required to pay a civil penalty of $3 billion in this case, Anadarko could continue its business operations.

5.     Admit that if Anadarko were required to pay a civil penalty of $4 billion in this case, Anadarko could continue its business operations.

6.     Admit that if Anadarko were required to pay a civil penalty of $4.6 billion in this case, Anadarko could continue its business operations.

---

United States' Motion *In Limine* to Permit Relevant Evidence Concerning BP P.L.C. and Other BP Affiliates, *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, No. 2:10-md- 02179 (E.D. La. Feb. 14, 2014), Rec. Doc. 12355-11 at 39.

[3] The BP Parties' Answer to Plaintiffs' Amended Class Action Complaint for Private Economic Losses and Property Damages ¶ Introduction, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, No. 2:10-md-02179 (E.D. La. May 7, 2012), Rec. Doc. 6453.

7.     Admit that Anadarko did not make any *pro rata* payments under the Joint Operating Agreement toward the costs of Response to the Incident while the discharge was on-going.

8.     Admit that BP advised Anadarko that Anadarko was in default under the Joint Operating Agreement for Anadarko's failures to make its *pro rata* payments in response to BP's invoices after the Incident.

9.     Admit that Anadarko did not make any payments under the Joint Operating Agreement toward the costs of Response for the Incident, until it settled its claims against BP in the course of the MDL litigation in October, 2011.

10.     Admit that Anadarko's settlement with BP resolved Anadarko's claim that BP was grossly negligent, BP's claims against Anadarko, and future natural resource damages claims.

Respectfully submitted,

| | |
|---|---|
| BRIAN HAUCK | ROBERT G. DREHER |
| Deputy Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| PETER FROST | MICHAEL MCNULTY |
| Director, Torts Branch, Civil Division | SARAH HIMMELHOCH |
| Admiralty and Aviation | Senior Litigation Counsel |
| SHARON SHUTLER | NANCY FLICKINGER |
| MALINDA LAWRENCE | Senior Attorney |
| LAURA MAYBERRY | PATRICK CASEY |
| Trial Attorneys | RICHARD GLADSTEIN |
| R. MICHAEL UNDERHILL, T.A | DANIEL S. SMITH |
| Attorney in Charge, West Coast Office | Senior Counsel |
| | ABIGAIL ANDRE |
| | A. NATHANIEL CHAKERES |
| | ANNA CROSS |
| | RACHEL HANKEY |
| | JUDY HARVEY |
| | RACHEL KING |

19

ERICA PENCAK
BRANDON ROBERS
GORDON YOUNG
Trial Attorneys

/s/ Sarah D. Himmelhoch
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
Facsimile:  202-514-2583
E-mail:  steve.o'rourke@usdoj.gov
KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

/s/ Sarah D. Himmelhoch