# Exhibit 3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re:   Oil Spill by the Oil Rig | *   MDL No. 2179 |
| "*Deepwater Horizon*" in the Gulf of | * |
| Mexico, on April 20, 2010 | *   SECTION:  J |
| | * |
| **Applies to:  *U.S. v. BP Exploration & Prod. Co.,*** | *   JUDGE BARBIER |
| **No. 2:10-cv-04536.** | *   MAGISTRATE JUDGE SHUSHAN |
| *  *  *  *  *  *  *  *  *  *  *  *  *  * | * |

**DEFENDANT ANADARKO PETROLEUM CORPORATION'S
OBJECTIONS, ANSWERS AND RESPONSES TO THE UNITED STATES' FIRST SET
OF DISCOVERY REQUESTS TO DEFENDANTS BP EXPLORATION &
PRODUCTION INC. AND ANADARKO PETROLEUM CORPORATION
FOR THE PENALTY PHASE**

**GENERAL OBJECTIONS AND RESERVATION OF RIGHTS**

1.       Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure,
Anadarko Petroleum Corporation ("APC"), through undersigned counsel, objects to the United
States' First Set of Discovery Requests to Defendants BP Exploration & Production, Inc. and
Anadarko Petroleum Corporation for the Penalty Phase ("Requests"), served on APC on April
18, 2014, including the accompanying definitions and instructions, insofar as they conflict with,
or purport to impose obligations beyond, those of the Federal Rules of Civil Procedure or the
Rules and Orders of this Court.  APC will only respond to the Requests directed specifically to
APC (and not those directed to BP) and will do so only in accordance with such Rules and
Orders.

2.       APC objects to the Requests to the extent they seek documents or information
denied by or outside the scope of Judge Barbier's March 21, 2014 ruling or Magistrate Judge
Shushan's March 31, 2014 ruling (Rec. Doc. 12592 and 12611).

3.      APC objects to the Requests to the extent they seek documents or information protected by the attorney-client privilege, the work product doctrine, the common interest principle, or any other privilege or protection.  APC will identify specific documents withheld on these grounds in accordance with, and provide the information if and as required by, the Court's Orders or agreements among counsel.  APC does not intend to, and expressly does not, waive any such privileges or protections in producing documents or otherwise responding to these Requests.  The inadvertent disclosure of any privileged or otherwise protected information shall not be deemed or construed to constitute a waiver of the right to assert any applicable privilege or protection with respect to any such information or any other information or matter and shall not preclude or waive APC's right to retract such disclosure.

4.      APC objects to the Requests to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination as may be embodied in a protective order entered by the Court.

5.      APC objects to the Requests to the extent they seek disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to, restrictions imposed in connection with proceedings before the *Deepwater Horizon* Joint Investigation Team, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

6.      APC objects to the Requests to the extent they purport to require APC to set forth or state legal conclusions or its contentions or positions applicable to specific legal issues.

2

7.      APC objects to the Requests to the extent they seek documents or information that already were produced, are already in the United States' possession, are publicly available, or are as accessible by the United States as they are by APC.

8.      APC objects to the Requests to the extent they are vague, ambiguous, duplicative, repetitive, redundant, unreasonably cumulative, or otherwise excessive, oppressive or harassing.

9.      APC objects to the Requests to the extent that they are overly broad, unduly burdensome, seek information that is not relevant to the United States' Clean Water Act ("CWA") claim or APC's defenses, or are not reasonably calculated to lead to the discovery of admissible evidence.

10.      APC objects to the Requests to the extent they seek to require APC to provide information beyond what is available to it after conducting a reasonable search of its own files and after making reasonable inquiries.

11.      APC objects to the Requests to the extent that that they purport to require APC to produce documents in formats different from those formats specified for various categories of documents in Pre-Trial Order No. 16.  APC will produce documents in .tif format unless such documents are required by Pre-Trial Order No. 16 or any subsequent order to be produced in a different format.

12.      APC objects to the definition of "Anadarko" as overly broad and improperly seeking party discovery regarding non-party entities in violation of Judge Barbier's March 21, 2014 Order (Rec. Doc. 12592) denying the United States' request for financial discovery of Anadarko's subsidiaries and affiliates.  APC will respond to the Requests only on behalf of APC and will not produce subsidiary or affiliate financial information except to the extent that there is an order requiring it to do so.  There is only one such order and that is Magistrate Judge Shushan's March 31, 2014 Order (Rec. Doc. 12611) and that requires production only of the

quarterly consolidating financials described in Ky Kirby's letter of March 28, 2014 for the period from 2010 to present.

13.     APC objects to the definition of "You" or "your" as overly broad and improperly seeking party discovery regarding non-party entities.  APC will respond to the Requests only as set forth in 12 above.

14.     The documents and information provided in APC's responses to the Requests reflect APC's present knowledge, information and belief, and may be subject to change or modification based on APC's further discovery, or on facts or circumstances which may subsequently come to APC's attention.

15.     In responding to the Requests, APC expressly reserves its right to object to the admission into evidence of any and all documents or information made available in response to any Request on any ground including, but not limited to, the ground that the document, information or Request is irrelevant and immaterial to the issues in this action.  Nothing in APC's responses to any Request should be construed as an admission respecting the admissibility or relevance of any fact or document or of the truth or accuracy of any characterization of any kind contained in the Request.

16.     APC reserves its right to supplement its responses as may be appropriate in light of information learned during discovery, to present additional facts and/or contentions and to raise any applicable objections based upon information subsequently obtained and/or evaluated in light of developments in the law, developments in the underlying action, or any other relevant information that APC may subsequently obtain.

17.     APC objects to the Requests to the extent they purport to require APC to re-produce the document productions of other parties that have been made in these litigations either

4

pre- or post-consolidation, or in connection with investigations such as that conducted by the *Deepwater Horizon* Joint Investigation Team.

18.     APC objects to the extent the United States seeks information or documents not in the possession of APC, including, but not limited to, information or documents in the possession of outside counsel, consultants, third parties, or vendors or to the extent the United States seeks to require APC to create documents not already in existence.

19.     These General Objections are incorporated by reference into each of the following responses, and any objection or response by APC to any instruction or request is made without waiver of, and subject to, these General Objections.

20.     APC understands that the United States does not intend affirmatively to offer any evidence that might arguably fall into the "any other matters that justice may require" factor as it pertains to APC.  APC reserves its right to introduce additional evidence under the "any other matters that justice may require" factor or under any other factor to the extent necessary to rebut evidence that the United States may choose to introduce under that factor.

<u>**SPECIFIC OBJECTIONS AND RESPONSES**</u>

<u>**INTERROGATORIES**</u>

<u>**Interrogatory No. 1:**</u>

If you contend that government oversight, approvals, and compliance requirements for deepwater drilling generally and for the Macondo well specifically are pertinent to the civil penalty factor of "any other matters that justice may require," identify each such oversight, approval, and compliance requirement and state the reasons that Anadarko contends each such action or requirement is relevant.

A/75998705.2

**Answer to Interrogatory No. 1:**

APC incorporates its General Objections.  APC further objects to this Interrogatory to the extent it requests information that has already been produced and is in the possession, custody, or control of the United States.  In addition, APC objects on the grounds that this Interrogatory is premature because this potential contention is a matter being considered by an expert retained by APC who may or may not submit an expert report that deems and analyzes government oversight, approvals, and compliance requirements for deepwater drilling generally and for the Macondo well specifically as pertinent to the civil penalty factor of "any other matters that justice may require."

Subject to and without waiving these objections, APC answers as follows: if APC determines that it will make this contention under the penalty factor of "any other matters as justice may require," and if APC determines that it will submit an expert report(s) and testimony making this contention, then APC will provide the requested information in its expert report(s) and in such materials considered or relied on by the expert(s) as required by, and on the schedule established by, the Court for expert discovery.  Any information considered or relied upon by the expert with respect to such a contention will be independently researched and developed by the expert and will not be provide to the expert by APC.

**Interrogatory No. 2:**

If you contend that pre- and post-Incident regulatory guidance, recommendations and practice regarding deepwater drilling and enforcement history as it relates to operators, contractors, and non-operating investors, are pertinent to the civil penalty factor of "any other matters that justice may require," identify each such guidance, recommendation and practice and state the reasons that Anadarko contends each such guidance, recommendation, or practice is relevant.

6

**Answer to Interrogatory No. 2:**

APC incorporates its General Objections.  APC further objects to this Interrogatory to the extent it requests information that is already in the possession, custody, or control of the United States.  In addition, APC objects on the grounds that this Interrogatory is premature because this potential contention is a matter being considered by an expert retained by APC who may or may not submit an expert report that deems and analyzes pre- and post-Incident regulatory guidance, recommendations and practice regarding deepwater drilling and enforcement history as it relates to operators, contractors, and non-operating investors to be pertinent to the civil penalty factor of "any other matters that justice may require."

Subject to and without waiving these objections, APC answers as follows: if APC determines that it will make this contention under the penalty factor of "any other matters as justice may require," and if APC determines that it will submit an expert report(s) and testimony making this contention, then APC will provide the requested information in its expert report(s) and in such materials considered or relied on by the expert(s) as required by, and on the schedule established by, the Court for expert discovery.  Additionally, to the extent APC may contend that regulatory guidance, recommendations and practice (including any government enforcement actions) are pertinent to the penalty factor of "any other matters that justice may require," it is the *absence* of any regulatory guidance, recommendations and practice (including any government enforcement actions) with respect to, or against non-operating investors that is pertinent.  Since there is no such guidance, recommendation, or practice (and no enforcement action beyond this one) that APC is aware of, APC does not have any information responsive to this Interrogatory.

**Interrogatory No. 3:**

Identify with specificity the benefits of offshore oil development locally and nationally and Anadarko's contributions to the local economy and community affected by the Incident that Anadarko contends is relevant to the penalty factor "any other matters that justice may require."

**Answer to Interrogatory No. 3:**

APC incorporates its General Objections.  APC further objects to this Interrogatory to the extent it requests information that is already in the possession, custody, or control of the United States.  In addition, APC objects in part on the grounds that this Interrogatory is premature because it is a matter being considered by an expert retained by APC who may or may not submit an expert report that deems and analyzes (i) the benefits of offshore oil development locally and nationally and (ii) APC's contributions to the local economy and community affected by the Incident.

Subject to and without waiving these objections, APC answers as follows: if APC determines that it will make this contention under the penalty factor of "any other matters as justice may require," and if APC determines that it will submit an expert report(s) and testimony making this contention, then APC will provide the requested information, including in its expert report(s) and in such materials considered or relied on by the expert(s) as required by, and on the schedule established by, the Court for expert discovery.

Additionally, APC states that it has contributed to the local and national economy in the following ways:

- providing jobs for approximately 5,700 total employees as of December 31, 2013, Anadarko Petroleum Corporation, *2013 Form 10-K*, p. 24;

- providing approximately 530 APC jobs in APC's Gulf of Mexico-related operations;

- providing thousands of additional jobs for contractors related to APC's Gulf of Mexico-related operations;

- providing indirect jobs and investments in supporting industries related to APC's Gulf of Mexico-related operations;

- providing monies for bids on leases, rental payments on leases, and royalties to the United States related to its oil and gas leases; for example, in 2013, APC paid approximately $171,000,000 in offshore Gulf of Mexico royalties to the Office of Natural Resources Revenue ("ONRR"); in 2012, APC paid approximately $183,000,000 in such royalties;

- contributing $21,855,000 to Rockefeller Philanthropy Advisors for the Fund for Gulf Coast Communities, an initiative established with the goal of aiding people affected by the Incident, increasing community resilience, and building stronger local philanthropic institutions across the Gulf Coast;

- contributing to a better understanding of deepwater drilling and response actions, including by participation in the Marine Well Containment Company, Clean Gulf Associates, and Marine Spill Response Corporation, as further described in APC's 10-Ks;

- funding research in connection with oil and gas exploration, drilling, and containment, including various joint industry projects;

- contributing $1,100,000 to a memorial in honor of those who died during the explosion and fire aboard the *Deepwater Horizon* on April 20, 2010.

APC also incorporates its response to Request for Production No. 11, sub-item (4).

**Interrogatory No. 4:**

If Anadarko contends that any of the topics concerning non-operators and operators listed in Anadarko's March 3, 2014 submission to Magistrate Judge Shushan (Topics Nos. 6, 7, and 8

9

in its discussion of the "other matters as justice may require" penalty factor) are relevant to the penalty determination, please set forth the basis for that contention, and specifically identify (i) the industry customs and practices between operators and non-operating participating parties that it contends are relevant; (ii) the potential and actual impacts on investment, etc. (as enumerated in Topic # 7 of Anadarko's March 3, 2014 submission to Magistrate Judge Shushan) of a civil penalty for extremely serious unlawful discharges that it contends are relevant; and (iii) your contentions concerning the efficacy of penalties against non-operators, and state the reasons why such topics are relevant.

**<u>Answer to Interrogatory No. 4:</u>**

APC incorporates its General Objections.  APC further objects to this Interrogatory to the extent it requests information that is already in the possession, custody, or control of the United States.  APC also objects to this Interrogatory because it is compound and therefore exceeds the number of Interrogatories and Requests permitted by the Court.  In addition, with respect to sub-items (ii) and (iii), APC objects on the grounds that this Interrogatory is premature because these potential contentions are being considered by an expert retained by APC who may or may not submit an expert report that deems these matters pertinent to the civil penalty factor of "any other matters that justice may require."  APC also objects to the term "extremely serious unlawful discharges" as undefined and highly subjective.

Subject to and without waiving these objections, APC answers as follows:  APC does not contend the Court should consider sub-item (i) "the industry customs and practices between operators and non-operating participating parties that it contends are relevant," in connection with the penalty factor of "any other matters as justice may require," except as it may relate to sub-item (ii).  With respect to sub-items (ii) and (iii), if APC determines that it will make any of these contentions under the penalty factor of "any other matters as justice may require," and if

10

APC determines that it will submit an expert report(s) and testimony making these contentions, then APC will provide the requested information in its expert report(s) and in such materials considered or relied on by the expert(s) as required by, and on the schedule established by, the Court for expert discovery. Any such information considered or relied upon by the expert in that event will be independently researched and obtained by the expert and will not be provided to the expert by APC or otherwise be APC-specific.

**Interrogatory No. 5:**

Identify any evidence of your involvement, participation, contributions, or offers related to efforts to minimize or mitigate the effects of the discharge.

**Answer to Interrogatory No. 5:**

APC incorporates its General Objections. APC further objects to this Interrogatory to the extent it requests documents already in the possession, custody, or control of the United States.

Subject to and without waiving these objections, APC states that it has been involved in, contributed to, participated in, and offered assistance in connection with numerous efforts to minimize or mitigate the effects of the discharge. APC made its resources and personnel available for source control efforts and did not refuse any requests for assistance from the Federal On-Scene Coordinator. The specific minimization or mitigation activities in which APC participated include, but are not limited to, the following:

- providing boats immediately after the incident for fire control efforts;

- providing pipe, wellhead housings, pad eye bosses, life/torque eye bosses, bolt-on life/torque eyes, adapters, cap screws, slope indicator mounting brackets, weld-on flanges, pin connectors, a deep swallow support plate, a wellhead housing joint, and other materials for source control efforts;

11

- dedicating personnel and consultants for source control and related mitigation efforts, including Bob Quitzau, Tim Dean, Mike Lemker, Dennis McDaniel, Steve Woelfel;

- efforts to analyze engineering issues related to the *Deepwater Horizon*'s blowout preventer;

- efforts to plan logistics related to source control methods, including the "top hat," "junk shot," and "top kill" processes;

- efforts with field operations team to implement various source control methods;

- efforts to plan, drill, and monitor the relief well;

- efforts to design and implement the final cement job to permanently plug the Macondo well;

- efforts to remove the old blowout preventer and install a new blowout preventer;

- providing input in meetings regarding the wrap-up of source control efforts;

- providing engineering advice throughout the source control efforts.

Documentary and testimonial evidence relating to APC's participation in mitigation efforts and lack of decision-making authority over the management of the relief efforts was produced during discovery in Phases 1 and 2, including, but not limited to:

- Deposition of Darrell Hollek dated June 22, 2011;

- Deposition of Bob Quitzau dated May 25-26, 2011;

- Deposition of Bob Quitzau dated November 1-2, 2012;

- Deposition of Larry McMahan dated June 29-30, 2011;

- Deposition of Erick Cunningham dated March 24, 2011;

- Deposition of Richard Lynch dated May 19-20, 2011;

- Deposition of Mark Mazella dated May 24, 2011;

A/75998705.2

- Deposition of David Rainey dated June 2-3, 2011;

- Deposition of James Dupree dated June 17, 2011;

- Deposition of Andy Inglis dated July 22, 2011;

- Deposition of Gordon Birrell dated September 15, 2011;

- Deposition of Richard Vargo dated March 30, 2011;

- Deposition of Richard Vargo dated August 22, 2012;

- Deposition of Pat Campbell dated July 12-13, 2011;

- Deposition of Manian Ramesh dated January 30, 2012;

- Deposition of Michael Saucier dated July 27-28, 2011;

- Deposition of Bryan Domangue dated September 21, 2011;

- Deposition of Admiral Thad Allen dated September 24-25, 2012;

- Deposition Exhibit 2354;

- Deposition Exhibit 2641, ANA-MDL-000241068;

- Deposition Exhibit 2642, ANA-MDL-000244164;

- Deposition Exhibit 2645, ANA-MDL-000262012;

- Deposition Exhibit 2646, ANA-MDL-000262036;

- Deposition Exhibit 2648, ANA-MDL-000258665;

- Deposition Exhibit 2649, ANA-MDL-000261855;

- Deposition Exhibit 2650, ANA-MDL-000258607;

- Deposition Exhibit 2651, ANA-MDL-000240783;

- Deposition Exhibit 2657, ANA-MDL-000276761;

- Deposition Exhibit 8524;

- Deposition Exhibit 8535, HAL-0504107-111;

- Deposition Exhibit 9100;

- Deposition Exhibit 9120, HCG267-004011;

- Deposition Exhibit 9975, BP-HZN-2179MDL06126363;

- ANA-MDL-000021765;

- ANA-MDL-000021766 - ANA-MDL-000021778;

- ANA-MDL-000021029 - ANA-MDL-000021031;

- ANA-MDL-000093528 - ANA-MDL-000093529;

- ANA-MDL-000093284 - ANA-MDL-000093285;

- ANA-MDL-000094151 - ANA-MDL-000094153;

- ANA-MDL-000101699;

- ANA-MDL-000193825 - ANA-MDL-000193826;

- ANA-MDL-000199661 - ANA-MDL-000199663;

- ANA-MDL-000232237;

- ANA-MDL-000262062 - ANA-MDL-000262068;

- ANA-MDL-0000262087 - ANA-MDL-0000262087;

- ANA-MDL-000263106;

- ANA-MDL2-000122985 - ANA-MDL2-000122987;

- ANA-MDL2-000122905 - ANA-MDL2-000122910;

- ANA-MDL2-000054870 - ANA-MDL2-000054876;

- ANA-MDL2-000074498 - ANA-MDL2-000074503;

- DRQ00057430 - DRQ00057432;

- DRQ00071015- DRQ00071022;

- DRQ00074515-DRQ00074516;

14

- DRQ00074521-DRQ00074524;

- DRQ00074525-DRQ00074528;

- BP-HZN-2179MDL01594412 - BP-HZN-2179MDL01594414;

- BP-HZN-2179MDL02180118 - BP-HZN-2179MDL02180119;

- BP-HZN-2179MDL03455159 - BP-HZN-2179MDL03455161;

- BP-HZN-2179MDL05072122 - BP-HZN-2179MDL05072127;

- BP-HZN-2179MDL05855327 - BP-HZN-2179MDL05855331;

- BP-HZN-2179MDL05857224 - BP-HZN-2179MDL05857225;

- BP-HZN-2179MDL05855977 - BP-HZN-2179MDL05855979;

- BP-HZN-2179MDL00413983;

- BP-HZN-2179MDL00723581;

- IMS172-003636 - IMS172-003637;

- IMS172-004371 - IMS172-004373;

- Stipulated Facts Concerning Source Control Events, ¶1 MDL No. 2179 (E.D. La. Aug. 9, 2012) [Rec. Doc. 7076];

- United States' Second Response to BP Exploration & Production Inc.'s Second Set of Discovery Requests to the United States of America, Responses to RFAs 156-157, 159-161, 188, Aug. 29, 2011;

- United States of America's Revised Responses to the Applicable Requests Contained within the Various Defendants' Second Joint Discovery Requests to Plaintiffs, Response to RFA 69, Sept. 19, 2011;

- United States of America's Revised Responses to the Applicable Requests Contained within the Various Defendants' Second Joint Discovery Requests to Plaintiffs, Supplemented Response to RFA 69, November 7, 2011;

- The United States' Second Response to Various Defendants' First Joint Discovery Requests to the United States Related to Phase Two, Response to RFAs 11, 94, 95, Feb. 14, 2012.

APC also contributed monies to efforts to respond to the oil spill and mitigate its potential impacts.  These contributions include, but are not limited to:

- entering into a settlement agreement with BP Exploration and Production Inc. ("BPXP") under which Anadarko paid $4,000,000,000 to BPXP that BPXP was required, by the terms of the settlement agreement, to use to pay the claims of "Persons" (as that term is defined in the settlement agreement) whose injuries or damages arise out of or relate to the *Deepwater Horizon* Incident;

- contributing $21,855,000 to Rockefeller Philanthropy Advisors for the Fund for Gulf Coast Communities, an initiative established with the goal of aiding people affected by the Incident, increasing community resilience, and building stronger local philanthropic institutions across the Gulf Coast;

- contributing $1,100,000 to a memorial in honor of those who died during the explosion and fire aboard the *Deepwater Horizon* on April 20, 2010.

APC will produce in connection with Request for Production Nos. 6 and 9 documents reflecting APC's mitigation efforts that have not already produced in this litigation.

**Interrogatory No. 6:**

Identify any exploration or production wells that you have drilled in the Gulf of Mexico, including the location of each well and whether it is considered a deepwater well, from 2005-present.

**Answer to Interrogatory No. 6:**

APC incorporates its General Objections.  APC further objects to this Interrogatory as overly broad in scope and time period, and as vague and ambiguous to the extent that it unclear whether the question seeks information regarding wells on which APC is or was the designated operator, wells in which APC is not or was not the designated operator and holds/held a non-operating interest, or both.  In addition, APC objects to this Interrogatory because it seeks information that is not relevant to the United States' Clean Water Act claim against APC or the penalty factors to be considered with respect to that claim.  APC also objects on the grounds that the information requested is as accessible to the United States as it is to APC.

Subject to and without waiving these objections, APC answers as follows:  The Outer Continental Shelf Lands Act authorizes the federal government to grant mineral leases and prescribe regulations governing oil and natural gas activities on the Outer Continental Shelf, including those in the Gulf of Mexico.  Under these regulations, a permit to drill ("APD") gives an operator approval to begin the process of drilling a well.  The Bureau of Safety and Environmental Enforcement provides statistics on the well permits that have been issued for the Gulf of Mexico at http://www.bsee.gov/Exploration-and-Production/Permits/Status-of-Gulf-of-Mexico-Well-Permits/.

A list of wells in the Gulf of Mexico for which APC has obtained approval for an application for an APD from 2005 to present can be obtained through the eWell APD/AST/ABP Online Query at the Bureau of Safety and Environmental Enforcement's website at

A/75998705.2

http://www.data.bsee.gov/homepg/data_center/plans/apdform/master.asp.   The query result provides information regarding, among other things, the Well Type, the Water Depth, and the location of the well under the approved permit.   The APDs listed include those for a new well involving an operator drilling an original wellbore hole in the seafloor to a geologic target, and revisions to a new well involving a change to the drilling of new well, which may be necessary for safety purposes, such as if an operator determines it necessary to set a liner deeper in the wellbore due to results from a formation integrity test.   Other APDs include those for a bypass, a revision to a bypass, a sidetrack and a revision to a sidetrack.   This query contains APDs and revisions that were submitted electronically through eWell since April 2004.

In addition, the Bureau of Ocean Energy and Management provides leasing information for offshore drilling in the Gulf of Mexico, including offshore statistics by water depth.   *See, e.g.,* http://www.data.boem.gov/homepg/data_center/leasing/leasing.asp.   A list of active leases for which APC is identified as the "designated operator" as of April 1, 2014 is available at http://www.data.boem.gov/homepg/pubinfo/repcat/lease/pdf/1360.pdf.   The Bureau of Ocean Energy Management also maintains a database of Exploration and Development Plans—the Exploration and Development Plans Online Query, which can be searched by Operator, at http://www.data.boem.gov/homepg/data_center/plans/plans/master.asp.   Exploration Plans describe the exploration activities planned by an operator for a specific lease.   A Development Operations Coordination Document is a plan that describes development and production activities proposed by an operator for a lease or group of leases.

While the United States may maintain additional databases and may have additional information not referenced here, APC also directs the United States to the Technical Information Management System (TIMS), which is maintained by the United States.   A portion of this

A/75998705.2

database has previously been produced by the United States in this case.  This database also may include data related to APC's drilling activities in the Gulf of Mexico.

The above databases are publicly available and are as accessible by the United States as they are by APC.  In addition, APC will produce a list of wells it has, as the designated operator, drilled in the Gulf of Mexico from 2010 to present.

**Interrogatory No. 7:**

Describe the economic impact of Anadarko's Settlement Agreement filed on April 3, 2014 (Dkt. No. 635) in *In re: Tronox*, Adv. Pro. No. 09-01198-alg (Bankr. S.D.N.Y.), if any, on Anadarko's on-going business operations.

**Answer to Interrogatory No. 7:**

APC incorporates its General Objections.  APC further objects to this Request to the extent it asks for speculation or for information that is not reasonably ascertainable at this time.

Subject to and without waiving these objections, APC answers as follows:  the economic impact of the *In re: Tronox* settlement on APC has been discussed in the Form 8-K and press release attached thereto filed by APC on April 3, 2014, and will be discussed in APC's next 10-Q, which will be filed during the week of May 5, 2014.  APC has agreed to pay a total of $5,150,000,000 to the Anadarko Litigation Trust, which includes the United States as a beneficiary, in exchange for, among other things, a complete release of all claims asserted against APC's subsidiary Kerr McGee Corporation and various of its subsidiaries.  In addition, APC has agreed to pay interest on this amount from the date that the settlement is lodged with the U.S. Bankruptcy Court for the Southern District of New York through the payment of the settlement amount.  The interest rate will be 1.5% for the first 180 days after the lodging of the settlement agreement, and 1.5% plus one-month LIBOR thereafter, as defined by the settlement agreement.

19

APC currently anticipates that the settlement will be approved and the settlement payment will be made prior to the end of the third quarter of 2014, but the timing of approval and payment is uncertain. APC currently expects to fund the settlement payment through utilizing a combination of cash and accessing APC's credit facility.

## REQUESTS FOR PRODUCTION

**Request for Production No. 1:**

Provide all consolidating financial statements at the subsidiary level for each year, 2010-2014 on a quarterly basis.

**Response to Request for Production No. 1:**

APC incorporates its General Objections. APC further objects to this Request because the defined term "consolidating financial statements" is beyond the scope of Judge Barbier's March 21, 2014 Order (Rec. Doc. 12592) denying financial discovery into APC's subsidiaries and affiliates, Ky Kirby's March 28, 2014 letter to Magistrate Judge Shushan regarding consolidating financials, and Judge Shushan's March 31, 2014 Order (Rec. Doc. 12611) requiring production of the consolidating financial described in Ms. Kirby's March 28 letter.

Subject to and without waiving these objections, APC responds as follows: in accordance with Judge Shushan's March 31, 2014 order, APC will produce the quarterly consolidating financial statements it has created and maintained from 2010 to the present as described and offered in Ms. Kirby's letter to Magistrate Judge Shushan of March 28, 2014. APC will designate these documents as Highly Confidential and takes the position that this information should not be produced or disclosed to any person employed by BP since this information is highly sensitive, is not relevant to BP's defenses in this case and its disclosure to an APC-competitor will cause competitive injury to APC.

**Request for Production No. 2:**

Provide all spreadsheets and computations evaluating Anadarko's financial projections for 2014 and forward including any sensitivity analyses (including assumptions of oil and gas prices) that Anadarko performs.

**Response to Request for Production No. 2:**

APC incorporates its General Objections.  APC also objects to this Request because the undefined terms "computations," "financial projections," and "sensitivity analyses" are overly broad, vague, and ambiguous.  APC further objects to this Request on the grounds that the burden and expense of the proposed discovery outweighs any likely benefit.  APC undertakes numerous financial projections that involve scores of employees and management.

Subject to and without waiving these objections, APC states that it will produce the following documents from 2009 to present, which set out certain Company financial projections and other data:

The following Investor Conferences and Transcripts:

- 2014 Anadarko Investor Conference, Sustained Growth With Unmatched Optionality presentation and transcript, Mar. 4, 2014;

- 2013 Anadarko Investor Conference, Predictable Growth and Differentiating Value presentation and transcript, Feb. 20, 2013;

- 2012 Anadarko Investor Conference, Growth and Value Today and into the Next Decade presentation and transcript, Mar. 13, 2012;

- 2011 Investor Conference Call presentation and transcript, Feb. 24, 2011;

- 2010 Investor Conference presentation and transcript, Mar. 2, 2010;

- 2009 Anadarko Investor Conference presentation and transcript, March 10, 2009.

Documents from the following Earnings Conference Calls:

- Year-End 2013 Review presentation and transcript, Feb. 3, 2014;

- Third-Quarter 2013 Review presentation and transcript, Nov. 5, 2013;

- Second-Quarter 2013 presentation and transcript, July 30, 2013;

- First-Quarter 2013 transcript, May 7, 2013;

- Fourth-Quarter 2012 transcript, Feb. 5, 2013;

- Third-Quarter 2012 transcript, Oct. 30, 2012;

- Second-Quarter 2012 transcript, July 31, 2012;

- First-Quarter 2012 transcript, May 1, 2012;

- Fourth-Quarter 2011 transcript, Feb. 7, 2012;

- Third-Quarter 2011 transcript, Nov. 1, 2011;

- Second-Quarter 2011 transcript, July 26, 2011;

- First-Quarter 2011 transcript, May 3, 2011;

- Fourth-Quarter and Full-Year 2010 presentation and transcript, Feb. 1, 2011;

- Third-Quarter 2010 transcript, Nov. 2, 2010;

- Second-Quarter 2010 presentation and transcript, Aug. 4, 2010;

- First-Quarter 2010 transcript, May 4, 2010;

- Fourth-Quarter 2009 transcript, Feb. 2, 2010;

- Third-Quarter 2009 transcript,  Nov. 3, 2009;

- Second-Quarter 2009 transcript, Aug. 4, 2009;

- First-Quarter 2009 presentation and transcript, May 7, 2009.

The following Other Presentations and Documents:

- Anadarko Petroleum Corporation Non-GAAP Financial Measure Definitions, Feb. 3, 2014;

- Johnson Rice Energy Conference presentation, Oct. 2, 2013;

- Bank of America Merrill Lynch 2013 Global Energy Conference presentation, Nov. 20-22, 2013;

- Capital One Southcoast Energy Conference presentation, Dec. 11-13, 2013;

- Wells Fargo Securities 2013 Energy Symposium presentation, Dec. 10-11, 2013;

- Credit Suisse 2014 Energy Summit presentation, Feb. 12, 2014;

- Howard Weil Energy Conference presentation, Mar. 24, 2014.

The following announcements regarding Capital Program and Guidance:

- Anadarko Announces 2014 Capital Program and Guidance, Mar. 3, 2014;

- Anadarko Announces 2013 Capital Program and Guidance, Feb. 20, 2013;

- Anadarko Announces 2012 Capital Program, Guidance and Highlights of Tomorrow's Investor Conference, Mar. 12, 2012;

- Anadarko Announces 2011 Capital Program and Guidance, and Reaffirms Five-Year Plan, Feb. 24, 2011;

- Anadarko Announces 2010 Capital Program, Guidance and Highlights of Today's Investor Conference, Mar. 2, 2010;

- Anadarko Announces 2009 Capital Program, Feb. 11, 2009.

The following Press Releases:

- Anadarko Announces 2013 Fourth-Quarter and Full-Year Results, Feb. 3, 2014;

- Anadarko Announces Third-Quarter 2013 Results, Nov. 4, 2013;

- Anadarko Announces Second-Quarter 2013 Results, July 29, 2013;

- Anadarko Announces First-Quarter 2013 Results, May 5, 2013;

- Anadarko Announces 2012 Fourth-Quarter and Full-Year Results, Feb. 4, 2013;

- Anadarko Announces Third-Quarter Results, Oct. 29, 2012;

- Anadarko Announces Second-Quarter Results, July 30, 2012;

- Anadarko Announces First-Quarter Results, Apr. 30, 2012;

- Anadarko Announces 2011 Fourth-Quarter and Full-Year Results, Feb. 6, 2012;

- Anadarko Announces Third-Quarter Results, Oct. 31, 2011;

- Anadarko Announces Settlement With BP, Oct. 17, 2011;

- Anadarko Schedules Third-Quarter 2011 Earnings Conference Call for November 1, Oct. 4, 2011;

- Anadarko Announces Second-Quarter Results, July 25, 2011;

- Anadarko Announces First-Quarter Results, May 2, 2011;

- Anadarko Announces 2010 Fourth-Quarter and Full-Year Results, Jan. 31, 2011;

- Anadarko Announces Third-Quarter Results, Nov. 1, 2010;

- Anadarko Announces Second-Quarter Results, Aug. 3, 2010;

- Anadarko Announces First-Quarter Results, May 3, 2010;

- Anadarko Announces 2009 Fourth-Quarter and Full-Year Results, Feb. 1, 2010;

- Anadarko Announces Third-Quarter Results, Nov. 2, 2009;

- Anadarko Announces Second-Quarter Results, Aug. 3, 2009;

- Anadarko Announces First-Quarter Results, May 6, 2009;

- Anadarko Announces Highlights of 2009 Investor Conference, Mar. 10, 2009.

The burden of searching for and producing any other documents would far outweigh the benefit that might be derived given that no further documents are legitimately needed for purposes of evaluating the economic impact on APC of a penalty under the CWA. However, if any dispute remains regarding whether additional documents should be produced under this

Request, APC offers to produce the following highly sensitive documents solely as a compromise and only if it will resolve any disputes, including any motion to compel, with respect to this Request for Production of Documents:  PowerPoint presentations shown to ratings agencies for the years 2009-2014.

In the event that APC's offer of compromise is accepted and APC produces the immediately foregoing documents, it will designate them as Highly Confidential and takes the position that the documents and underlying information will not be produced and may not be disclosed to any person other than the United States, (including not to anyone employed by BP or any other non-party to this Penalty Phase) since the information contained in these documents is highly sensitive financial information and not relevant to BP's defenses in this case, and its disclosure to a competitor of APC could cause competitive injury to APC.

### Request for Production No. 3:

Provide all documents related to loans, revolving credit agreements or any other debt held by Anadarko for each year, 2010-2014.

### Response to Request for Production No. 3:

APC incorporates its General Objections.  APC further objects to this Request on the grounds that the burden and expense of the proposed discovery outweighs any likely benefit. APC's total debt between 2010 and 2103 ranged from $13,013,000,000 to $15,230,000,000, and its total debt as of December 31, 2013 was $13,565,000,000.  Producing all documents related to that debt would be unduly burdensome and that burden would far outweigh the benefit of any documents sought by this request.

Subject to and without waiving these objections and pursuant to Federal Rule of Civil Procedure 26(b), APC will produce its revolving credit agreements for 2013 and 2014, as well as

quarterly reports from 2013 and 2014, which show the status of such revolving credit facilities. APC also will produce its relevant 10-Ks showing its level of debt in 2013 and 2014.

**Request for Production No. 4:**

Provide all documents related to insurance payments made to and on behalf of Anadarko related to the Macondo oil spill and the associated insurance policy.

**Response to Request for Production No. 4:**

APC incorporates its General Objections.  APC further objects to this Request on the grounds that the burden and expense of the proposed discovery outweighs any likely benefit.

Subject to and without waiving these objections, APC will produce all insurance policies under which payments related to the Incident have been made to or on behalf of APC.  APC will also produce non-privileged responsive information in its possession, custody, or control, if any, sufficient to show payments made to or on behalf of APC under these insurance policies related to the Incident.

**Request for Production No. 5:**

Provide all documents reflecting Anadarko policies and targets for key financial ratios or measures, including but not limited to Net Debt to Adjusted Capital, Current Ratio, Quick Ratio, and Free Cash Flow for each year, 2005-2014.

**Response to Request for Production No. 5:**

APC incorporates its General Objections.  APC further objects to this Request on the ground that it seeks disclosure of proprietary, sensitive, and highly confidential business information that is irrelevant and for which there is no legitimate need given the matters to be addressed in the penalty phase.  APC also objects to this Request because the undefined terms "targets," "key financial ratios or measures," "current ratio," and "quick ratio" are overly broad,

26

vague, and ambiguous.   In addition, APC objects to the Request to the extent it requests information extending back as far as five years prior to the Incident.

Subject to and without waiving these objections, APC states as follows:   APC does not maintain written policies and targets for key financial ratios or measures, including but not limited to Income before Interest and Tax, Net Debt to Adjusted Capital, Current Ratio, Quick Ratio, Cash Flow from Operations, and Free Cash Flow.   APC will produce the following documents from 2009 to present, which set out certain Company financial data and guidance, including total revenue, EBITDAX, net income, cash flow from operating activities, capital expenditures, free cash flow, adjusted free cash flow, discretionary free cash flow, total long-term debt, debt to EBITDAX, debt to capitalization, net E&P debt per proved developed BOE, and other data:

The following Investor Conferences and Transcripts:

- 2014 Anadarko Investor Conference, Sustained Growth With Unmatched Optionality presentation and transcript, Mar. 4, 2014;

- 2013 Anadarko Investor Conference, Predictable Growth and Differentiating Value presentation and transcript, Feb. 20, 2013;

- 2012 Anadarko Investor Conference, Growth and Value Today and into the Next Decade presentation and transcript, Mar. 13, 2012;

- 2011 Investor Conference Call presentation and transcript, Feb. 24, 2011;

- 2010 Investor Conference presentation and transcript, Mar. 2, 2010;

- 2009 Anadarko Investor Conference presentation and transcript, March 10, 2009.

Documents from the following Earnings Conference Calls:

- Year-End 2013 Review presentation and transcript, Feb. 3, 2014;

- Third-Quarter 2013 Review presentation and transcript, Nov. 5, 2013;

- Second-Quarter 2013 presentation and transcript, July 30, 2013;

- First-Quarter 2013 transcript, May 7, 2013;

- Fourth-Quarter 2012 transcript, Feb. 5, 2013;

- Third-Quarter 2012 transcript, Oct. 30, 2012;

- Second-Quarter 2012 transcript, July 31, 2012;

- First-Quarter 2012 transcript, May 1, 2012;

- Fourth-Quarter 2011 transcript, Feb. 7, 2012;

- Third-Quarter 2011 transcript, Nov. 1, 2011;

- Second-Quarter 2011 transcript, July 26, 2011;

- First-Quarter 2011 transcript, May 3, 2011;

- Fourth-Quarter and Full-Year 2010 presentation and transcript, Feb. 1, 2011;

- Third-Quarter 2010 transcript, Nov. 2, 2010;

- Second-Quarter 2010 presentation and transcript, Aug. 4, 2010;

- First-Quarter 2010 transcript, May 4, 2010;

- Fourth-Quarter 2009 transcript, Feb. 2, 2010;

- Third-Quarter 2009 transcript,  Nov. 3, 2009;

- Second-Quarter 2009 transcript, Aug. 4, 2009;

- First-Quarter 2009 presentation and transcript, May 7, 2009.

The following Other Presentations and Documents:

- Anadarko Petroleum Corporation Non-GAAP Financial Measure Definitions, Feb. 3, 2014;

- Johnson Rice Energy Conference presentation, Oct. 2, 2013;

28

- Bank of America Merril Lynch 2013 Global Energy Conference presentation, Nov. 20-22, 2013;

- Capital One Southcoast Energy Conference presentation, Dec. 11-13, 2013;

- Wells Fargo Securities 2013 Energy Symposium presentation, Dec. 10-11, 2013;

- Credit Suisse 2014 Energy Summit presentation, Feb. 12, 2014;

- Howard Weil Energy Conference presentation, Mar. 24, 2014.

The following announcements regarding Capital Program and Guidance:

- Anadarko Announces 2014 Capital Program and Guidance, Mar. 3, 2014;

- Anadarko Announces 2013 Capital Program and Guidance, Feb. 20, 2013;

- Anadarko Announces 2012 Capital Program, Guidance and Highlights of Tomorrow's Investor Conference, Mar. 12, 2012;

- Anadarko Announces 2011 Capital Program and Guidance, and Reaffirms Five-Year Plan, Feb. 24, 2011;

- Anadarko Announces 2010 Capital Program, Guidance and Highlights of Today's Investor Conference, Mar. 2, 2010;

- Anadarko Announces 2009 Capital Program, Feb. 11, 2009.

The following Press Releases:

- Anadarko Announces 2013 Fourth-Quarter and Full-Year Results, Feb. 3, 2014;

- Anadarko Announces Third-Quarter 2013 Results, Nov. 4, 2013;

- Anadarko Announces Second-Quarter 2013 Results, July 29, 2013;

- Anadarko Announces First-Quarter 2013 Results, May 5, 2013;

- Anadarko Announces 2012 Fourth-Quarter and Full-Year Results, Feb. 4, 2013;

- Anadarko Announces Third-Quarter Results, Oct. 29, 2012;

- Anadarko Announces Second-Quarter Results, July 30, 2012;

- Anadarko Announces First-Quarter Results, Apr. 30, 2012;

- Anadarko Announces 2011 Fourth-Quarter and Full-Year Results, Feb. 6, 2012;

- Anadarko Announces Third-Quarter Results, Oct. 31, 2011;

- Anadarko Announces Settlement With BP, Oct. 17, 2011;

- Anadarko Schedules Third-Quarter 2011 Earnings Conference Call for November 1, Oct. 4, 2011;

- Anadarko Announces Second-Quarter Results, July 25, 2011;

- Anadarko Announces First-Quarter Results, May 2, 2011;

- Anadarko Announces 2010 Fourth-Quarter and Full-Year Results, Jan. 31, 2011;

- Anadarko Announces Third-Quarter Results, Nov. 1, 2010;

- Anadarko Announces Second-Quarter Results, Aug. 3, 2010;

- Anadarko Announces First-Quarter Results, May 3, 2010;

- Anadarko Announces 2009 Fourth-Quarter and Full-Year Results, Feb. 1, 2010;

- Anadarko Announces Third-Quarter Results, Nov. 2, 2009;

- Anadarko Announces Second-Quarter Results, Aug. 3, 2009;

- Anadarko Announces First-Quarter Results, May 6, 2009;

- Anadarko Announces Highlights of 2009 Investor Conference, Mar. 10, 2009.

The burden of searching for and producing any other documents would far outweigh the benefit that might be derived given that no further documents are legitimately needed for purposes of evaluating the economic impact on APC of a penalty under the CWA.  However, if any dispute remains regarding whether additional documents should be produced under this Request, APC offers to produce the following highly sensitive documents solely as a

compromise and only if it will resolve any disputes, including any motion to compel, with respect to this Request for Production of Documents:  PowerPoint presentations shown to ratings agencies for the years 2009-2014.

In the event that APC's offer of compromise is accepted and APC produces the immediately foregoing documents, it will designate them as Highly Confidential and takes the position that the documents and underlying information will not be produced and may not be disclosed to any person other than the United States, (including not to anyone employed by BP or any other non-party to this Penalty Phase) since the information contained in these documents is highly sensitive financial information and not relevant to BP's defenses in this case, and its disclosure to a competitor of APC could cause competitive injury to APC.

**Request for Production No. 6:**

Provide all documents reflecting payments Anadarko has made or received related to the Incident.

**Response to Request for Production No. 6:**

APC incorporates its General Objections.

Subject to and without waiving these objections, APC will produce non-privileged responsive information in its possession, custody or control, if any, reflecting payments APC has made or received related to the Incident.

**Request for Production No. 7:**

Provide all documents that describe and identify any contingent liabilities held by Anadarko, including the range of potential financial exposure of the contingent liabilities, the status of the resolution of the risk, the likely timing and steps to resolve the risk, and the entity's official assessment of the financial exposure.

**<u>Response to Request for Production No. 7:</u>**

APC incorporates its General Objections.  APC further objects to this Request because it seeks disclosure of irrelevant and unnecessary confidential business information or proprietary material.  In addition, APC objects to this Request because it is not limited in scope by dollar value, type of liability, or otherwise.   APC also objects to this Request because the terms "contingent liabilities," "financial exposure," and "official assessment" are undefined, overly broad, vague, and ambiguous.

Subject to and without waiving these objections, APC answers as follows: APC's SEC filings set out the various legal proceedings and contingencies facing APC.  The legal proceedings include personal injury claims; title disputes; tax disputes; royalty claims; contract claims; contamination claims relating to oil and gas production, transportation, and processing; and environmental claims, including claims involving assets owned by acquired companies and claims involving assets previously sold to third parties and no longer a part of the APC's current operations.   APC is also subject to various environmental-remediation and reclamation obligations arising from federal, state, and local laws and regulations.

The outcome and impact on the company of these legal proceedings cannot be predicted with certainty.  The financial data in the SEC filings indicates what expense and liability accruals, if any, APC is recording for those proceedings, with some of the expenses and accruals reported in the aggregate.

APC will produce its 10-Qs and 10-Ks from 2010 to present, which discuss APC's most significant legal proceedings and contingencies during those time periods.  Additionally, APC will produce partially redacted lists of significant civil, environmental, and tax lawsuits/claims that make up the contingent liabilities reported by APC in its SEC filings.

**Request for Production No. 8:**

Provide all documents that describe and identify any transfer or sale of assets to a third party in excess of $100 Million (One Hundred Million) by Anadarko Petroleum Corporation, subsequent to the Macondo spill, Identifying the assets transferred, the consideration provided and explaining the rationale and basis therefore.

**Response to Request for Production No. 8:**

APC incorporates its General Objections.  APC further objects to this Request on the grounds that the burden and expense of the requested discovery outweighs any likely benefit given the extreme breadth of a request for "all documents."  APC also objects to this Request because the undefined terms "assets," and "rationale and basis" are overly broad, vague, and ambiguous.

Subject to and without waiving these objections, APC responds as follows:  APC will produce press releases and presentations regarding such transfers or sales.  APC will also provide Purchase Sales Agreements sufficient to show each transfer or sale of assets to a third party in excess of $100 million subsequent to the Incident, subject to confidentiality provisions contained in the Purchase Sales Agreements.  APC will designate these Purchase Sales Agreements as Highly Confidential and takes the position that this information will not be produced and may not be disclosed to any person employed by BP since this information is highly sensitive commercial information, is not relevant to BP's defenses in this case and its disclosure to an APC-competitor will cause competitive injury to APC.

**Request for Production No. 9:**

Provide all documents that describe and identify any evidence of your involvement, participation, contributions, or offers related to efforts to minimize or mitigate the effects of the discharge.

**Response to Request for Production No. 9:**

APC incorporates its General Objections.  APC further objects to this Request to the extent it requests documents already in the possession, custody, or control of the United States.

Subject to and without waiving these objections, APC incorporates its Answer to Interrogatory No. 5 and will produce the documents identified therein that have not been previously produced, if any.

**Request for Production No. 10:**

Provide all Anadarko Petroleum Corporation Board of Director and Board of Director committee and officer meeting resolutions and decisions for each year 2008-2014.

**Response to Request for Production No. 10:**

APC incorporates its General Objections.  APC also objects to this Request on the grounds that it seeks disclosure of irrelevant and unnecessary information and is a fishing expedition for which the burden of production far outweighs any benefits it might yield.  APC also objects to this Request because the undefined terms "committee and officer meeting," "resolutions," and "decisions" are overly broad, vague, and ambiguous.

Subject to and without waiving these objections, and absent agreed-to narrowing of this request, APC will not produce any responsive documents.  APC is willing to continue to meet and confer with the United States regarding this Request.

**Request for Production No. 11:**

Provide all documents that support or may contradict any fact that Anadarko contends that the court should consider in connection with the penalty factor "any other matters that justice may require," including, if Anadarko so contends, (1) government oversight, approvals, and compliance requirements for deepwater drilling generally and for the Macondo well specifically; (2) government enforcement actions, including criminal actions, with respect to the

34

Incident; (3) pre- and post-Incident regulatory guidance, recommendations and practice regarding deepwater drilling and enforcement history as it relates to operators, contractors, and non-operating parties; (4) the importance and benefits of offshore oil development both locally and nationally and contributions by Anadarko to the local economy and community affected by the Incident; (5) benefits to the United States of offshore oil development, including royalties; (6) industry custom and practice (including contractual relationships) between designated operators and non-operators; (7) potential and actual impacts on (i) non-operators; (ii) investment in offshore oil development, (iii) offshore drilling operations, and (iv) industry custom and practice (including contractual relationships) if penalties (or threat of penalties) are imposed on non-operators; and (8) efficacy of penalties against non-operators.

**Response to Request for Production No. 11:**

APC incorporates its General Objections.  APC further objects to this Request to the extent it requests documents already produced or already in the possession, custody, or control of the United States.  APC also objects to this Request because it is compound, and therefore exceeds the number of Requests permitted by the Court.  APC further objects to this Request as premature because these possible contentions are under consideration by experts retained by Anadarko who may or may not deem these contentions to be worthy of consideration under any of the penalty factors.

Subject to and without waiving these objections, APC responds as follows:

As to Request sub-item (1), such documents with respect to the Macondo Well have already been produced in this litigation.  If APC decides to pursue the subject of sub-item (1) as a contention and submit an expert report to that effect, then it will produce the requested information in connection with expert discovery, including in the expert's report and in considered or relied-on documents on the schedule established by the Court for expert discovery.

35

As to Request sub-item (2), APC states that it does not contend the Court should consider this subject.

As to Request sub-item (3), if APC determines to pursue the subject of sub-item (3) as a contention and submit an expert report to that effect, then it will produce the requested information in connection with expert discovery, to the extent there is anything responsive, including in the expert's report and in considered or relied-on documents on the schedule established by the Court for expert discovery.

As to Request sub-item (4), APC will produce non-privileged information reflecting those items described in response to Interrogatory No. 3 to the extent not previously produced. If APC determines to pursue the subject of sub-item (4) as a contention and submit an expert report to that effect, then it will produce any additional responsive information in connection with expert discovery, including in the expert's report and in considered or relied-on documents on the schedule established by the Court for expert discovery.

As to Request sub-item (5), APC will produce all non-privileged responsive studies or reports in its possession, custody, or control, if any. If APC determines to pursue the subject of sub-item (5) as a contention and submit an expert report to that effect, then it will produce additional responsive information, if any, in connection with expert discovery, including in the expert's report and in considered or relied-on documents on the schedule established by the Court for expert discovery.

As to Request sub-item (6), APC states that it does not contend the Court should consider this issue, except to the extent it is addressed in sub-item (7).

As to Request sub-items (7) and (8), if APC determines to pursue the subject of sub-item (7) and (8) as contentions and submits an expert report to that effect, then it will produce the

requested information in connection with expert discovery, including in the expert's report and in

considered or relied-on document on the schedule established by the Court for expert discovery.

**Request for Production No. 12:**

Provide all Information identified in response or relating to any contention set forth in

response to any of the United States' Penalty Phase Interrogatories or Requests for Admission

and rebutting, refuting, or calling into question any aspect of any factual contention Anadarko

intends to proffer at trial in the Penalty Phase.

**Response to Request for Production No. 12:**

APC incorporates its General Objections.  APC also objects to this Request because it is

duplicative of other Requests to the extent they request production of documents relating to

contentions.  APC further objects because it is not APC's obligation to review all of its

documents and engage in evaluation of that information to ascertain whether it would be

considered by the United States or anyone else to "rebut, refute or call into question any aspect

of any factual contention" APC may proffer.

Subject to and without waiving these objections, and absent agreed-to narrowing of this

request, APC will not produce any responsive documents.  APC is willing to continue to meet

and confer with the United States regarding this Request.


**REQUESTS FOR ADMISSION**

**Request for Admission No. 1:**

Admit that the Incident caused actual and potential injury or harm to human health, the

environment, and the economy within the Gulf Coast Region (as defined in 33 U.S.C. §

1321(a)(33)).

**Answer to Request for Admission No. 1:**

APC incorporates its General Objections.  APC further objects to this Request because it requests information that is irrelevant to the Clean Water Act penalty factors.  In addition, APC objects to this Request to the extent it asks for speculation or opinion as to "potential" injuries or harm and requests information not in the possession of APC.  APC further objects to this Request because the undefined terms "actual and potential injury or harm," "human health, "the environment," "the economy," and "Gulf Coast Region" are overly broad, vague, and ambiguous.  APC also objects to this Request because it is compound and therefore exceeds the number of Requests for Admission permitted by the Court.

Subject to and without waiving these objections, APC answers as follows:  APC admits that an explosion and fire occurred on the mobile offshore drilling unit *Deepwater Horizon* on April 20, 2010, resulting in the loss of eleven lives and injuries to workers onboard the *Deepwater Horizon* and the release of oil into the waters of the Gulf of Mexico.  APC also admits that a quantity of oil no greater than 3.26 million stb flowed from the *Deepwater Horizon* and, after 810,000 stb were collected, a quantity of oil no greater than 2.45 million stb was released into and upon waters of the Gulf of Mexico and came to rest on certain shorelines of the United States.  APC further admits that at certain concentrations oil may be harmful to natural resources and human health.

In addition, APC admits that substantial amounts of money have been paid or will be paid to resolve claims for damages, personal injury and medical monitoring for asserted harms or potential harms alleged to have resulted from the Incident.  While APC admits that there have been numerous claims filed alleging economic damages, natural resources or property damages, and physical injury or medical monitoring related to the Incident, APC has no knowledge as to the cause or veracity of such claims, and the mere settlement of such claims does not establish

that the Incident caused such harms.  Moreover, APC disputes that economic and property damages, medical monitoring claims, or the mere filing of claims seeking such damages, even if settled, are relevant to assessing the seriousness of the violation penalty factor under the Clean Water Act.  Such claims, if valid, are compensable under other statutes, specifically the Oil Pollution Act.

Except as expressly admitted, APC denies this Request.

**Request for Admission No. 2:**

Admit that the Macondo Incident was an extremely serious violation.

**Answer to Request for Admission No. 2:**

APC incorporates its General Objections.  APC further objects to this Request because the term "extremely serious" is undefined and highly subjective.

Subject to and without waiving these objections, APC answers as follows: APC admits that the Macondo Incident was serious.  Except as expressly admitted, APC denies this Request.

**Request for Admission No. 3:**

Admit that if Anadarko were required to pay a civil penalty of $2 billion in this case, Anadarko could continue its business operations.

**Answer to Request for Admission No. 3:**

APC incorporates its General Objections.  APC further objects to this Request to the extent it asks for speculation or information that is not reasonably ascertainable at this time.

Subject to and without waiving these objections, APC answers as follows:  APC cannot admit or deny this Request for the following reasons.  First, it is unclear when APC might be required to pay a civil penalty, if any, in this case.  Trial is currently scheduled to begin in January 2015, and to conclude in February 2015; therefore, a penalty might not be assessed until late 2015 or beyond, assuming no appeal is taken.  At this point in time, APC lacks the requisite

knowledge or information to admit or deny this Request for Admission and therefore denies same.   APC reserves the right to amend this Answer as additional information becomes available, including after APC's next 10-Q, which will be filed during the week of May 5, 2014.

If APC is required to pay a penalty of $2,000,000,000 or higher, the payment coupled with numerous uncertainties and risks regarding future events may affect APC's future business operations by restricting its ability to invest this money as capital into its business for its shareholders.   There are numerous uncertainties and risks that might affect APC's future business operations and its ability to invest capital into its business.   Those uncertainties and risks regarding future events, as discussed in APC's 10-Qs and 10-Ks under the Risk Factors section, include the following:

- APC's assumptions about energy markets;

- production levels;

- reserves levels;

- operating results;

- competitive conditions;

- technology;

- availability of capital resources, levels of capital expenditures, and other contractual obligations;

- supply and demand for, the price of, and the commercializing and transporting of natural gas, crude oil, natural gas liquids (NGLs), and other products or services;

- volatility in the commodity-futures market;

- weather;

- inflation;

- availability of goods and services, including unexpected changes in costs;

- drilling risks;

- future processing volumes and pipeline throughput;

- general economic conditions, either internationally or nationally or in the jurisdictions in which APC or its subsidiaries are doing business;

- APC's potential inability to timely obtain or maintain permits, including those necessary for drilling and/or development projects;

- legislative or regulatory changes, including retroactive royalty or production tax regimes; hydraulic-fracturing regulation; deepwater drilling and permitting regulations; derivatives reform; changes in state, federal, and foreign income taxes; environmental regulation; environmental risks; and liability under federal, state, foreign, and local environmental laws and regulations;

- ability of BP Exploration & Production Inc. (BP) to meet its indemnification obligations to APC for *Deepwater Horizon* events, including, among other things, damage claims arising under the Oil Pollution Act of 1990 (OPA), claims for natural resource damages (NRD) and associated damage-assessment costs, and any claims arising under the Operating Agreement (OA) for the Macondo well, as well as the ability of BP Corporation North America Inc. (BPCNA) and BP p.l.c. to satisfy their guarantees of such indemnification obligations;

- current and potential legal proceedings, or environmental or other obligations related to or arising from Tronox Incorporated (Tronox);

- civil or political unrest or acts of terrorism in a region or country;

- creditworthiness and performance of the APC's counterparties, including financial institutions, operating partners, and other parties;

- volatility in the securities, capital, or credit markets and related risks such as general credit, liquidity, and interest-rate risk;

- APC's ability to successfully monetize select assets, repay its debt, and the impact of changes in the APC's credit ratings;

- disruptions in international crude oil cargo shipping activities;

- physical, digital, internal, and external security breaches;

- supply and demand, technological, political, and commercial conditions associated with long-term development and production projects in domestic and international locations.

**Request for Admission No. 4:**

Admit that if Anadarko were required to pay a civil penalty of $3 billion in this case, Anadarko could continue its business operations.

**Answer to Request for Admission No. 4:**

APC incorporates its General Objections. APC further objects to this Request to the extent it asks for speculation or information that is not reasonably ascertainable at this time.

Subject to and without waiving these objections, APC answers as follows: APC incorporates its answer to Request for Admission No. 3.

**Request for Admission No. 5:**

Admit that if Anadarko were required to pay a civil penalty of $4 billion in this case, Anadarko could continue its business operations.

**Answer to Request for Admission No. 5:**

APC incorporates its General Objections.  APC further objects to this Request to the extent it asks for speculation or information that is not reasonably ascertainable at this time.

Subject to and without waiving these objections, APC answers as follows: APC incorporates its answer to Request for Admission No. 3.

**Request for Admission No. 6:**

Admit that if Anadarko were required to pay a civil penalty of $4.6 billion in this case, Anadarko could continue its business operations.

**Answer to Request for Admission No. 6:**

APC incorporates its General Objections.  APC further objects to this Request to the extent it asks for speculation or information that is not reasonably ascertainable at this time.

Subject to and without waiving these objections, APC answers as follows: APC incorporates its answer to Request for Admission No. 3.

**Request for Admission No. 7:**

Admit that Anadarko did not make any *pro rata* payments under the Joint Operating Agreement toward the costs of Response to the Incident while the discharge was on-going.

**Answer to Request for Admission No. 7:**

APC incorporates its General Objections.  APC further objects to this request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  In addition, APC objects to the undefined phrase "under the Joint Operating Agreement" as vague and ambiguous.

Subject to and without waiving these objections, APC answers as follows: APC admits that it did not make any payments to BP that were specifically designated as *pro rata* payments made under the Joint Operating Agreement for response costs while the discharge was ongoing, but APC did make payments in response to invoices from BP after April 20, 2010.  APC states, however, that it incurred costs in responding to the explosion onboard the *Deepwater Horizon*

and in participating in source control efforts.  Except as expressly admitted, APC denies this Request.

**Request for Admission No. 8:**

Admit that BP advised Anadarko that Anadarko was in default under the Joint Operating Agreement for Anadarko's failures to make its *pro rata* payments in response to BP's invoices after the incident.

**Answer to Request for Admission No. 8:**

APC incorporates its General Objections.  APC further objects to this request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  In addition, APC objects to the term "failures" as potentially misleading.

Subject to and without waiving these objections, APC answers as follows: APC admits that it refused to pay the majority of the invoices it received from BP after April 20, 2010 for the reasons stated in its response letters to BP.  Except as expressly admitted, APC denies this Request.

**Request for Admission No. 9:**

Admit that Anadarko did not make any payments under the Joint Operating Agreement toward the costs of Response for the Incident, until it settled its claims against BP in the course of the MDL litigation in October, 2011.

**Answer to Request for Admission No. 9:**

APC incorporates its General Objections.  APC further objects to this Request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  In addition, APC objects to the undefined phrase "under the Joint Operating Agreement" as vague and ambiguous.

Subject to and without waiving these objections, APC answers as follows: APC admits that it did not make any payments to BP that were specifically for the costs of the Response and were specifically designated as being made under the Joint Operating Agreement prior to its settlement with BP in October, 2011.  APC states, however, that it (i) incurred costs in responding to the explosion onboard the *Deepwater Horizon*, (ii) incurred costs in participating in source control efforts, and (iii) contributed $21,855,000 to the Fund for Gulf Coast Communities.  Except as expressly admitted, APC denies this Request.

**Request for Admission No. 10:**

Admit that Anadarko's settlement with BP resolved Anadarko's claim that BP was grossly negligent, BP's claims against Anadarko, and future natural resource damages claims.

**Answer to Request for Admission No. 10:**

APC incorporates its General Objections.  APC also objects to this request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  In addition, APC objects to the undefined term "resolved" because it is vague, ambiguous, and inapplicable with respect to future natural resource damage claims.

Subject to and without waiving these objections, APC answers as follows: APC admits that its settlement with BP resolved APC's claim that BP was grossly negligent and BP's claims against APC related to the Incident.  APC further admits that, under the settlement agreement, BP agreed to indemnify APC against future natural resource damages claims arising from the Incident.  Except as expressly admitted, APC denies this Request.

45

Dated:  April 28, 2014                                  Respectfully submitted,


                                                        ____/s/ Thomas R. Lotterman____
                                                        Thomas R. Lotterman
                                                        Thomas.Lotterman@bingham.com
                                                        Ky E. Kirby
                                                        Ky.Kirby@bingham.com
                                                        BINGHAM MCCUTCHEN LLP
                                                        2020 K Street, NW
                                                        Washington, DC 20006-1806
                                                        Telephone (202) 373-6000
                                                        Facsimile (202) 373-6001

                                                        James J. Dragna
                                                        Jim.Dragna@bingham.com
                                                        BINGHAM MCCUTCHEN LLP
                                                        355 South Grand Avenue
                                                        Suite 4400
                                                        Los Angeles, California 90071-3106
                                                        Telephone (213) 680-6436
                                                        Facsimile (213) 680-8636

                                                        Deborah D. Kuchler, (La. Bar No. 17013)
                                                        Janika Polk (La. Bar No. 27608)
                                                        Robert Guidry (La. Bar No. 28064)
                                                        KUCHLER POLK SCHELL
                                                        WEINER & RICHESON, LLC
                                                        1615 Poydras Street, Suite 1300
                                                        New Orleans, LA  70112

                                                        **ATTORNEYS FOR ANADARKO
                                                        PETROLEUM CORPORATION**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Defendant Anadarko Petroleum Corporation's Objections, Answers and Responses to the United States' First Set of Discovery Requests to Defendants BP Exploration & Production Inc. and Anadarko Petroleum Corporation for the Penalty Phase have been served on all counsel via electronic mail.

*/s/ Tom Lotterman*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| In re: | Oil Spill by the Oil Rig "*Deepwater Horizon*" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179 SECTION: J |
| | | | |
| **Applies to:** *U.S. v. BP Exploration & Prod. Co.,* No. 2:10-cv-04536. | | * * | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |

* * * * * * * * * * * * * *

### VERIFICATION

I, Darrell Hollek, am an authorized representative of Anadarko Petroleum Corporation in this action, and, pursuant to Fed. R. Civ. Pro. 33 and 36, I declare under penalty of perjury under the laws of the United States that I have read the foregoing DEFENDANT ANADARKO PETROLEUM CORPORATION'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' FIRST SET OF DISCOVERY REQUESTS TO DEFENDANTS BP EXPLORATION & PRODUCTION INC. AND ANADARKO PETROLEUM CORPORATION FOR THE PENALTY PHASE and that the answers made in response to Interrogatories 3, 5 and 6 are true, current and complete to the best of my knowledge, information and belief.

Name: *Darrell E. Hollek*

Darrell E. Hollek

Title: Senior Vice President, Deepwater Americas Operations

Dated: April 28, 2014

STATE OF TEXAS
COUNTY OF MONTGOMERY

SUBSCRIBED TO AND SWORN BEFORE ME on April 28, 2014.

TRACIE M. BEVERS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
SEPT. 21, 2014

Notary Public

48

A/75998705.2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | Oil Spill by the Oil Rig | *   MDL No. 2179 |
| | "*Deepwater Horizon*" in the Gulf of | * |
| | Mexico, on April 20, 2010 | *   SECTION: J |
| | | * |
| **Applies to:** | ***U.S. v. BP Exploration & Prod. Co.,*** | *   JUDGE BARBIER |
| **No. 2:10-cv-04536.** | | *   MAGISTRATE JUDGE SHUSHAN |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>VERIFICATION</u>

I, Robert G. Gwin, am an authorized representative of Anadarko Petroleum Corporation

in this action, and, pursuant to Fed. R. Civ. Pro. 33 and 36, I declare under penalty of perjury

under the laws of the United States that I have read the foregoing DEFENDANT ANADARKO

PETROLEUM CORPORATION'S OBJECTIONS AND RESPONSES TO THE UNITED

STATES' FIRST SET OF DISCOVERY REQUESTS TO DEFENDANTS BP EXPLORATION

& PRODUCTION INC. AND ANADARKO PETROLEUM CORPORATION FOR THE

PENALTY PHASE and that the answers made in response to Interrogatories 3 and 7 are true,

current and complete to the best of my knowledge, information and belief.

Name: _____
Robert G. Gwin

Title:   Executive Vice President, Finance and
Chief Financial Officer

Dated: April 28, 2014

STATE OF TEXAS
COUNTY OF MONTGOMERY

SUBSCRIBED TO AND SWORN BEFORE ME on April 28, 2014.

_____
Notary Public

CANDICE YVETTE SANCHEZ
Notary Public, State of Texas
My Commission Expires
April 16, 2016

49

A/75998705.2