UNITED STATES DISTRICT OF COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: 10-4536 | : : | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |
| …………………………………………... | : | |

# BPXP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL THE UNITED STATES TO PRODUCE DISCOVERY IN THE CLEAN WATER ACT PENALTY PHASE

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985
Facsimile: (202) 662-6291

*Attorneys for BP Exploration & Production Inc.*

## **TABLE OF CONTENTS**

Page

BACKGROUND ................................................................................................................ 2

ARGUMENT .................................................................................................................... 2

I.     THE US MUST SUPPLEMENT RESPONSES TO BPXP'S INTERROGATORIES ...... 3

II.    THE US MUST PRODUCE DOCUMENTS RESPONSIVE TO BPXP'S REQUESTS . 5

III.   THE US MUST PRODUCE DEPONENTS CRITICAL TO BPXP'S DEFENSE .......... 11

     A.    The US Must Produce Essential Fact Witnesses. .................................................. 11

     B.    The US Must Designate Representatives to Testify Regarding BPXP's Rule 30(b)(6) Topics. ................................................................................................ 13

CONCLUSION ................................................................................................................ 14

Pursuant to Federal Rule of Civil Procedure 37, Defendant BP Exploration & Production Inc. ("BPXP") moves to compel the United States ("US") to produce documents, information, and witnesses that are indisputably relevant to the issues before the Court in the Clean Water Act Penalty Phase. The US refuses to provide discovery requested by BPXP on issues that are the subject of mirror requests that the US itself has served on BPXP and that the US has expressly acknowledged in its discovery responses are relevant to this case. The US does not claim that the requested discovery is irrelevant; rather, it relies on a series of unfounded and novel objections to avoid its discovery obligations—refusing, for example, to produce documents under a non-existent "Natural Resource Damages Assessment ("NRDA") privilege" (even though BPXP's requests do not call for NRDA analysis) and to produce witnesses under a so-called "big wig" exception. Neither of these excuses the US from its discovery obligations. Nor do unsupported assertions of burden as BPXP has narrowly tailored its document requests to targeted searches of a select file sets, mindful of the scope of prior productions.

The US refuses to produce several categories of relevant discovery. *First*, the US has failed to answer straightforward interrogatories regarding the environmental impact of the spill and BPXP's mitigation efforts, including ones that closely track requests that the US itself has served. *Second*, the US rejects BPXP's requests that it conduct targeted searches for relevant documents, standing on inflated claims of the scope of the requests and the US's prior document productions. *Third*, the US refuses to make essential witnesses available for deposition or to designate Rule 30(b)(6) witnesses on topics that are critical to BPXP's defenses, including topics that again, the US has included in its own discovery requests to BPXP.

Despite lengthy meet-and-confer discussions, the parties have been unable to resolve disputes over some of BPXP's discovery requests. Accordingly, BPXP requests that the Court

grant its motion to compel and order the US to supplement its answers to Interrogatories 2, 6, 7, 8, 10, 11, and 12; produce the documents requested by BPXP in Request for Production Nos. 3, 4, 6, 11, and 13; and produce the witnesses BPXP has requested for deposition.

## BACKGROUND

On April 4, 2014, the parties exchanged discovery requests.[1] (Rec. Doc. 12688) They exchanged draft responses to requests for production on April 15, 2014 and had a meet-and-confer on April 16, 2014 regarding these responses. (*See id.*) BPXP thereafter engaged in lengthy meet-and-confer discussions with the US, including on April 23, April 25, May 2, May 5, and May 8 and exchanged numerous letters and emails. (*See, e.g.*, Apr. 24, 2014 Ltr. H. Karis to S. Himmelhoch, Ex. A ("Karis Ltr.").) Similarly, pursuant to the Court's Scheduling Order, the parties exchanged draft Rule 30(b)(6) Deposition Notices on April 11, 2014.[2] (Rec. Doc. 12688) They participated in meet-and-confers regarding these notices, including on April 30, May 5, and May 8, and exchanged numerous correspondence. (*See e.g.*, May 6, 2014 Email A. Langan to S. O'Rourke, Ex. B.) Despite these efforts, the parties have been unable to resolve the issues presented in BPXP's Motion to Compel and this Memorandum in support thereof.

## ARGUMENT

The US cannot withhold key documents, information, and witnesses based on unwarranted objections. It is axiomatic that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

---

[1] Because the US' initial discovery requests exceeded the limitation allowed by the Court, the US later served revised discovery requests on April 21, 2014, pursuant to Court Order.

[2] The US sent amended draft Rule 30(b)(6) topics on April 21, 2014, because its initial draft Rule 30(b)(6) deposition notice exceeded the limitations established by the Court.

2

I.  **THE US MUST SUPPLEMENT RESPONSES TO BPXP'S INTERROGATORIES.**

The US has failed to provide substantive answers to several of BPXP's interrogatories seeking information relevant to the "seriousness" and "mitigation" penalty factors: (1) erosion rates on the Gulf coast, which are relevant to the extent that the US contends that the *Deepwater Horizon* spill accelerated shoreline erosion (Interrogatory 2); (2) the US's analyses of the nature, extent, or degree of effectiveness of BPXP's mitigation efforts (Interrogatory 6); (3) any contentions that BPXP did not effectively mitigate effects of the spill (Interrogatory 7); (4) any actions that the US claims limited or constrained mitigation efforts (Interrogatory 8); (5) the amount of oil that was contained, collected, dispersed, burned, or otherwise removed during the Response (Interrogatory 10); (6) any contentions that dispersants were ineffective, counterproductive, or harmful (Interrogatory 11); and (7) activities that were not conducted under the direction of the Unified Command (Interrogatory 12). (*See* Apr. 4, 2014 Defs.' First Set of Disc. Reqs., at Interrogs. 2, 6, 7, 8, 10, 11, & 12, Ex. C.)

*First*, without answering, the US objects to the interrogatories as purportedly seeking "premature expert opinions." But a party may not evade fact discovery on the grounds that its "expert must evaluate the material" first. *See Bohannon v. Honda Motor Co.*, 127 F.R.D. 536, 538 (D. Kan. 1989) (ordering complete response to an interrogatory asking plaintiff to detail "the alleged defect in [a] vehicle that caused or contributed to the accident"—despite plaintiff's objection that the request called for expert analysis); *King v. E.F. Hutton & Co.,* 117 F.R.D. 2, 5 (D.D.C. 1987) ("It is no answer for plaintiffs to assert that they will need discovery or to consult with an expert to determine their losses. They should have answered the interrogatories with such information as they then possessed…."). The US's objections to requested *fact* discovery on the ground that *expert* discovery has not yet begun are improper.

*Second*, the US's non-specific references to its entire past and future document productions are insufficient. (*See* Apr. 25, 2014 US's Resp. to Defs.' First Set of Disc. Reqs., at Interrogs. 2, 6, 7, 8, 10, 11 & 12, Ex. D.)  While Rule 33(d)(1) permits a party to answer an interrogatory by referencing documents, it expressly requires that the records must be specified "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1).  As the Rule's Advisory Notes explain, "directing the interrogating party to a mass of business records … [is] an abuse of the option" because "a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived." Fed. R. Civ. P. 33, Adv. Notes (1980).

In its responses to BPXP's interrogatories, the US furnishes little or no information that would permit BPXP to locate the documents being referenced.  In response to Interrogatory 6, for example, which calls for the US to identify any existing analysis or studies of BPXP's mitigation efforts, the US responds simply that it "intends to rely upon the information exchanged in Phases 1 and 2, as well as the data produced in response to requests for production 1, 8, 10, and 13 as part of its response to Defendants' contentions regarding their efforts to mitigate their violations, as well as additional information identified by its experts as relevant to the Defendants' contentions." (*See* US's Resp., at Interrog. 6, Ex. D.)  The US did not identify any particular documents that it contended answered the interrogatory.  The US's practice of repeatedly pointing BPXP generically to prior productions—the discovery equivalent of telling BPXP to "go fish"—fails to meet the Rule's requirements.  *See Akers v. Shaw Envtl., Inc.*, No. 09-915, 2011 WL 867524, at *3-4 (W.D. La. Mar. 14, 2011) (holding inadequate under Federal Rule 33(d) references to "unspecified and in globo documents" and the response "please see all documents attached hereto as well as documents previously produced").

4

*Third,* the relevance of the information that BPXP seeks is confirmed by the fact that the US propounded discovery requests seeking virtually identical information. BPXP answered those requests. (*See* Apr. 28, 2014 BPXP Resp. to US's First Set of Disc. Reqs., at RFP 18 and Interrogs. 7-8, Ex. E.) With BPXP's comprehensive responses in hand, the US cannot now claim that such requests are improper.

## II. THE US MUST PRODUCE DOCUMENTS RESPONSIVE TO BPXP'S REQUESTS.

BPXP has requested that the US conduct targeted searches of a limited number of files for documents responsive to BPXP's document requests. Nevertheless, the US refuses in many instances even to search for the requested documents, standing on unfounded objections based on exaggerated assertions of burden of the scope of the requests and of the US's prior productions. Each of BPXP's requests is discussed below.

**Request for Production No. 3**

In Request No. 3, BPXP requests documents relating to the observation, collection, recovery, or rehabilitation of wildlife during the Response. During meet-and-confer discussions, BPXP requested that search terms be run on the files of five specific custodians. The proposed terms seek information regarding the phenomenon known as "observer bias" or "searcher bias," which results in the recovery of more naturally (*i.e.*, non spill-related) injured wildlife than normal. The US refuses to perform any requested searches for three custodians.[3]

The US refuses to conduct any search of the files of Dr. Robert Haddad (NOAA) and Dr. Kevin Reynolds (US Fish & Wildlife Service), claiming that Dr. Haddad's and Dr. Reynolds'

---

[3] While the US has agreed to search the files of Barbara Schroeder (NOAA National Sea Turtle Coordinator) and Lori Schwacke (NOAA Hollings Marine Lab), it objects to extending the search date beyond January 31, 2011, on the grounds that these two individuals were working on the NRDA after that date. BPXP has already sought compromise by seeking targeted searches of only five custodians. Performing searches limited to January 2011 on only these two custodians is not an adequate response.

roles with respect to wildlife issues were part of the NRDA.  Request No. 3, however, expressly requests certain information regarding wildlife during the Response; *it does not seek NRDA analysis*.  Furthermore, the searches that BPXP requests are specifically targeted to seek information regarding searcher bias.  In addition, Dr. Haddad in particular had an important role in the Response as a lead member of the Joint Analysis Group ("JAG"), which provided analysis to the Unified Area Command to help direct Response efforts.

The US also refuses to search the files of Teri Rowles on the grounds that her files were searched in Phases 1 and 2, and to "re-collect from this custodian would be burdensome." (*See* US's Resp., at RFP No. 3, Ex. D.)  Dr. Rowles is the NOAA Marine Mammals Health and Stranding Program Coordinator.  Her files likely contain information regarding searcher bias with respect to wildlife collected during the Response.  The searches conducted in prior phases were not designed to elicit any documents related to wildlife. (*See* Rec. Doc. 4365 (listing terms searched), Ex. F.)  Previously conducted search strings did not include terms like "wildlife," "dolphin," "turtle," "observation," or "rehabilitation."[4]  BPXP is entitled to such discovery, and its compromise for limited, targeted searches of only five custodians is not unduly burdensome.

**Request for Production No. 4**

In Request No. 4, BPXP requests documents relating to any Mississippi River Diversions undertaken in connection with the *Deepwater Horizon* Incident.  As set forth in BPXP's response to Interrogatory No. 8, in April 2010 the State of Louisiana—without Unified Command

---

[4] For all five custodians, the US objects to the search string: ("stranding" NEAR5 "rates"), arguing that"[c]ollecting documents relating to discussion of these rates goes beyond the Court's limitation to the production of data rather than analysis." (US's Resp., at RFP No. 15, Ex. D.)  Again, BPXP is not seeking NRDA analysis regarding wildlife.  Rather, the proposed search targets documents related to wildlife stranding rates observed during the Response and related discussion about searcher bias, which are relevant to allegations of the seriousness of the environmental impact.

approval—decided to open gates at diversion structures to divert flow from the Mississippi River into marsh lands, which likely resulted in negative impacts to the environment.

The US objects to BPXP's request, arguing that responsive documents are not relevant to the Penalty Phase and that its document production in prior phases of this litigation is sufficient. Neither objection has merit. *First*, because the US's failure to intervene in Louisiana's decision to conduct the diversions affected mitigation efforts and likely resulted in negative environmental impacts, the requested discovery is relevant to multiple statutory factors, including seriousness, mitigation, and "other matters as justice may require." The US has acknowledged the relevance of the diversions, asserting that "diversions of freshwater to prevent the oil from reaching the shoreline may have had adverse impacts on particular natural resources." (*See* US's Resp., at Interrog. 8, Ex. D.) During the meet-and-confer on May 5, the US refused to forgo introducing evidence and argument regarding the impact of the diversions at the Penalty Phase trial. The US cannot have it both ways: it cannot reserve the right to present evidence on the diversions at trial while arguing that such evidence is irrelevant for purposes of fact discovery.

*Second*, the US's reliance on its prior productions is misplaced. During meet-and-confer discussions, the US acknowledged that searches conducted in prior phases were not designed to locate documents related to the diversions. The US cannot now rely on searches conducted in prior phases on topics entirely different from the Mississippi River diversions to satisfy its obligations in the Penalty Phase.

**Request for Production No. 11**

In Request No. 11, BPXP requests documents relating to analyses of the amount of oil that was contained, collected, dispersed, burned, removed, or cleaned up in connection with the

7

Response or natural processes. Such documents are relevant to the effectiveness of BPXP's mitigation efforts. During meet-and-confer discussions, BPXP requested that targeted search terms be run in the Coast Guard Archive and in the files of three NOAA custodians who authored the Oil Budget Calculator, a federal publication concerning the fate of oil during the Response. (Karis Ltr., Ex. A.) The US refuses to perform any of the requested searches, again relying on the scope of its prior productions. (US's Resp., at RFP No. 11, Ex. D.)

The US does not contend that such a search would be burdensome but rather relies on the blanket assertion that the searches of the Archive that it conducted in prior phases of the litigation are sufficient. (US's Resp., at RFP No. 11, Ex. D.) That is not so. During Phases 1 and 2, the US failed to conduct searches for documents concerning Penalty Phase issues including, for example, BPXP's efforts to mitigate or prevent effects of the spill. The US disclosed as much in the September 2011 Status Report it submitted to the Court. (*See* Rec. Doc. 3928, Ex. G.) There, the US represented that it would *not* respond to Penalty Phase-related discovery until "greater clarity [was] provided regarding the scope of Phase III discovery." (*See id*. at 2-4, fn. 2; Att. 2 (characterizing requests as related to a "Subsequent Phase" of litigation); Att. 7-10 (with a single exception, no searches were run in Coast Guard, NOAA, EPA, or DOI files to locate documents responsive to RFPs relating to a "Subsequent Phase" of litigation).)[5] Moreover, the US has admitted that a number of reviewers may have withheld from production even documents captured by the limited searches conducted in Phases 1 and 2 on the grounds that documents were relevant to Penalty Phase. (*See* US's Resp, at 3-4, Ex. D.) In light of the

---

[5] Of the requests characterized as "Subsequent Phase," one RFP for which the US searched for responsive documents during Phases 1 and 2, RFP No. 126, appears to relate to potential lethal or sub-lethal effects of the use of Corexit dispersants in surface or subsea applications. In addition, with the exception of one set of terms related to the Presidential Commission, the US's prior searches of the Coast Guard Archive were limited to documents dated on or before January 31, 2011. (*See* Attach. 1 to Order Re Deadlines for US's Prod. of Docs. (Rec. Doc. 4365) at 4-7, Ex. F.)

8

US's representations to the Court about the limited scope of its Phase 1 and 2 productions, additional, targeted searches, including of the Coast Guard Archive, are appropriate.[6]

The US's reliance on the prior searches in response to Request 11 in particular is misplaced. The US points to a prior search which was restricted to documents containing the terms "dispersant," "dispersed oil," or "oil budget," and asserts that it will not search for or produce any additional information. As with its other Penalty Phase document requests, BPXP has considered the scope of the US's prior productions and narrowly crafted proposed search criteria to identify any additional materials responsive to its requests. For example, BPXP's proposed search would identify documents relating to the amount of oil that was effectively burned or cleaned up during the Response, which would not have been identified by the US's prior searches. The US has refused to consider any additional searches or date restrictions to identify documents responsive to Request 11. BPXP's proposed search is narrowly-tailored and doesn't present an undue burden on the US, and the US does not present any basis for contending otherwise. BPXP therefore requests that the US be compelled to run BPXP's proposed searches and produce non-privileged responsive documents.

**Requests for Production Nos. 6 and 13**

In Request Nos. 6 and 13, BPXP requests documents relating to the cleanup, impact, and/or recovery of the Gulf coast shorelines. BPXP's efforts to protect the shoreline, and the recovery of the shoreline are relevant to the seriousness and mitigation penalty factors. During meet-and-confer discussions, BPXP sought to streamline its request and proposed one set of searches, covering both RFPs. Specifically, BPXP requested that targeted search terms be run in the Coast Guard Archive and the custodial files of Frank Csulak, Toni Debosier, and Dr.

---

[6] The parties do not agree concerning the requirement to produce custodial files in the Penalty Phase and expect that this may be the subject of separate briefing before this Court.

Jacqueline Michel, all of whom were actively involved in shoreline protection efforts during the Response. The US refuses to perform the requested searches. (*See* US's Resp., at RFP Nos. 6 & 13, Ex. D.)

Once again, the US objects to searching the files of Dr. Michel, and the other NOAA custodians, on the ground that some of their documents may relate to purportedly privileged analysis relating to the NRDA. Before their involvement in the government's NRDA process, however, Dr. Michel, Mr. Csulak and Ms. Debosier played important roles for the US during the Response, with Dr. Michel serving as the US SCAT Team Lead. The US cannot shield fact witnesses with relevant knowledge of contested issues from discovery by designating them consulting experts. *See, e.g.*, *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props.*, 01 CIV. 9291 (JSM), 2002 WL 1455346, at *6 (S.D.N.Y. July 3, 2002) (a party could not "retroactively insulate fact witnesses from answering questions regarding their knowledge of the facts" by designating them as experts).

Moreover, even if any of such NRDA documents were privileged,[7] BPXP's requests do not seek production of NRDA analysis and, in any event, as discussed, the fact that a witness may have some privileged or otherwise protected documents in her files is not grounds to shield production of relevant, nonprivileged documents. *See, e.g., United States v. El Paso Co.,* 682 F.2d 530, 539 (5th Cir. 1982) ("The privilege must be specifically asserted with respect to particular documents."). The files of these witnesses, who played active roles during the Response, contain relevant, nonprivileged information. Tellingly, the US again proposes no

---

[7] Courts have previously rejected claims by the government that documents and information collected or created by a trustee like the US in connection with a NRDA are protected by the work product privilege, holding that such information is discoverable in Clean Water Act litigation because it was developed by the government "for the equally important purpose of managing and restoring the environment." *See*, *e.g.*, *United States v. CITGO Petroleum Corp.*, No. 2:08-CV-00893, 2010 WL 1754167, at *5 (W.D. La. Apr. 29, 2010) (rejecting as "meritless" the US's position that NRDA documents were protected from discovery by CITGO in Clean Water Act litigation).

10

alternative searches and instead stands on its blanket refusal to conduct *any* searches of their files.

The US's abject refusal to conduct additional, targeted searches for documents in the Coast Guard Archive is similarly indefensible. As with its other Requests, BPXP has proposed targeted search terms, which are not duplicative of prior searches. (*See* Karis Ltr., Ex. A.) BPXP has further raised the possibility of date limitations and modified search terms, which the US refuses to consider. The US should conduct the limited searches requested by BPXP and produce documents responsive to Request No. 11.

### III.   THE US MUST PRODUCE DEPONENTS CRITICAL TO BPXP'S DEFENSE.

#### A.   The US Must Produce Essential Fact Witnesses.

The US refuses to present key fact witnesses for deposition, relying on two types of unfounded evidentiary objections. *First*, the US refuses to produce Dr. Jane Lubchenco, Rear Admiral Paul Zukunft, and Rear Admiral Steven Poulin for deposition under what the US has termed the "big wig exception," because these witnesses are or were high-ranking government officials. *Second*, the US refuses to produce Dr. Robert Haddad and Dr. Jacqueline Michel for deposition based on their involvement with the government's NRDA process, despite the knowledge that those individuals have with respect to separate and distinct fact issues involving the Response and other issues. (*See* Apr. 25, 2014 Ltr. S. O'Rourke to H. Karis, Ex. H.)

The US's refusal to produce Dr. Lubchenco, Rear Admiral Zukunft and Rear Admiral Poulin under the "big wig" exception is unfounded. In general, any individual competent to be a witness may be compelled to testify as to relevant facts within her knowledge. *See* Fed. R. Evid. 601 & 602. This rule extends to high-ranking officials, whose depositions may be taken "where the official has first-hand knowledge related to the claim being litigated." *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007). Indeed, the US acknowledges that in previous phases,

11

it has produced "high-ranking government officials," including Admiral Allen and others, "for depositions, given the importance of the case and the need for their testimony to shed light on disputed issues." (*See* O'Rourke Ltr., Ex. H, at 4.).

Dr. Lubchenco, Admiral Zukunft, and Rear Admiral Poulin each have personal knowledge of facts that are important to BPXP's defenses in this multi-billion dollar case.

- *Dr. Jane Lubchenco*: Dr. Lubchenco was the NOAA Administrator from 2009-2013. She led NOAA's efforts during the *Deepwater Horizon* Response and has unique knowledge of facts related to BPXP's mitigation efforts and environmental impact and recovery. She is an environmental scientist who made numerous statements, including as NOAA Administrator, regarding environmental recovery, including that impacts were not as serious as initially feared.

- *Rear Admiral Paul Zukunft*: Rear Admiral Zukunft served as the Federal On-Scene Coordinator ("FOSC") responsible for the Response in 2010. As FOSC, Admiral Zukunft directed the Response and has first-hand knowledge of BPXP's efforts to mitigate and prevent the effects of the spill, including through the use of controlled *in situ* burning, skimming, booming, dispersants, and shoreline cleanup efforts.

- *Rear Admiral Steve Poulin*: Rear Admiral Poulin was the Federal Incident Commander at the Mobile Incident Command Post, with responsibility for the Response across Alabama, Florida, and Mississippi. He has knowledge of BPXP's efforts to mitigate and prevent the effects of the spill across those three states.

The US's objections to producing Dr. Michel and Dr. Haddad due to their involvement in allegedly NRDA privileged work are likewise unfounded. Even assuming *arguendo* that such work were privileged, a witness's knowledge of privileged information is not grounds on which to shield her from deposition. *See*, *e.g.*, *El Paso Co.*, 682 F.2d at 539. Dr. Michel and Dr. Haddad have first-hand knowledge relevant to BPXP's defenses, and BPXP is entitled to their depositions.

- *Dr. Jacqueline Michel*: Dr. Michel is a geochemist who, as discussed, served as the US SCAT Team Lead during the Response. She prepared shoreline treatment recommendations and led efforts to protect and clean up the Gulf Coast. As such, Dr. Michel has unique knowledge of facts related to the SCAT program, BPXP's shoreline protection efforts, and environmental impact and recovery during the Response.

- *Dr. Robert Haddad*:  Dr. Haddad is Chief of the Assessment & Restoration Division within NOAA's Office of Response and Restoration.  He is the lead member of JAG, which provided analyses to the Unified Area Command during the Response to help direct efforts such as the placement of booms, use of dispersants, and skimming.  Dr. Haddad has knowledge of facts relating to mitigation efforts and environmental impact and recovery during the Response.[8]

The US should be compelled to produce Dr. Lubchenco, Rear Admiral Zukunft, Rear Admiral Poulin, Dr. Michel and Dr. Haddad for deposition.

  B. **The US Must Designate Representatives to Testify Regarding BPXP's Rule 30(b)(6) Topics.**

The US's objections to BPXP's Rule 30(b)(6) topics are without merit.  (*See, e.g.,* May 8, 2014 Ltr. S. Himmelhoch, Ex. K.)  As discussed, the US cannot avoid discovery by claiming, incorrectly, that topics call for expert testimony.  *See Bohannon*, 127 F.R.D. at 538; *King,* 117 F.R.D. at 5.  BPXP's noticed topics do not call for expert testimony, and BPXP is entitled to discovery of the *facts* underlying the US's allegations.  *See id.*  Nor can the US stand on relevance objections, particularly where BPXP's topics track those that the US has noticed. BPXP is entitled to depose a US representative on the following topics:

- *Topic 1*:  BPXP's first Rule 30(b)(6) topic requests a witness knowledgeable about the nature and extent of environmental impacts from the spill, information that bears on the "seriousness" penalty factor.  The US has made clear that it intends to allege that the environmental harm resulting from this violation was "gravely serious."  (*See, e.g.*, Memo in Supp. of US Mot. to Limit Evid. (Rec. Doc. 12373-2), at 2, Ex. I.)  Indeed, the US has noticed a substantively equivalent Rule 30(b)(6) topic.  (US Rule 30(b)(6) Dep. Notice, at Topic 4, Ex. J.)  Contrary to the US's assertions, BPXP is ***not*** seeking a witness to testify regarding NRDA analysis, but rather facts regarding the alleged environmental impact, as well as mitigation and recovery.

- *Topic 2(a)*:  BPXP's topic 2(a) calls for a witness to testify regarding analyses or assessments of the effectiveness of BPXP's spill response efforts, including skimming, booming, dispersant application, controlled *in situ* burning, shoreline assessment and cleanup, and other mitigation efforts.  The US refuses to present a witness on this

---

[8] The US offered to produce Dr. Carl Childs for deposition as a "substitute witness" for Drs. Haddad and Michel.  Dr. Childs lacks knowledge of issues on which BPXP seeks to depose Drs. Michel and Haddad, however.  For example, unlike Drs. Michel and Haddad , Dr. Childs did not lead the SCAT team or JAG during the Response, and he did not make recommendations regarding shoreline treatment.

subtopic, claiming that the information sought is designed to discover information about NRDA claims. This is not so. Topic 2(a) expressly relates to the Response, not NRDA. Nor does the topic seek privileged information, but rather, nonprivileged information regarding BPXP's mitigation efforts. The proper means for addressing the US's concern about NRDA analysis or privileged information is for the US to lodge appropriate objections if and when such issues arise during the deposition, as done during every deposition.

- *Topic 4*: BPXP's fourth Rule 30(b)(6) topic relates to the collection, observation, and rehabilitation of birds, turtles, mammals, and other wildlife during the Response. As discussed above in connection with BPXP's Request for Production No. 3, facts regarding the collection, observation, and rehabilitation of wildlife during the Response are relevant to the seriousness and mitigation penalty factors.

- *Topic 5*: BPXP's fifth Rule 30(b)(6) topic relates to BPXP's efforts to protect and clean the shoreline and impacts to the shoreline from the spill. As discussed more fully above in relation to BPXP's Requests for Production No. 6 and 13, this information is relevant to the Court's analysis of the "seriousness" and "mitigation" penalty factors, and the US's objection to this area of inquiry is a similarly unfounded.

- *Topic 6*: BPXP's sixth Rule 30(b)(6) topic relates to the freshwater diversion structures on the Mississippi River in 2010. As detailed above, the US has acknowledged the relevance of information regarding freshwater diversions. (*See* US's Resp., at Interrog. 8, Ex. D) ("diversions of freshwater to prevent the oil from reaching the shoreline may have had adverse impacts on particular natural resources."). Nonetheless, it attempts to avoid discovery on this topic.

## **CONCLUSION**

For the foregoing reasons, BPXP respectfully requests that the Court grant its Motion to Compel the United States to Produce Discovery in the Clean Water Act Penalty Phase.

Date: May 13, 2014                              Respectfully submitted,

                                                                <u>/s/ Don K. Haycraft</u>
Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

***Attorneys for BP Exploration & Production Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 13th day of May, 2014.

/s/ Don K. Haycraft
Don K. Haycraft