# Exhibit H



**U.S. Department of Justice**

Environment and Natural Resources Division

90-5-1-1-10026

*Steven O'Rourke*
*Environmental Enforcement Section*　　　　　　　　　　　　　　　　*Telephone (202) 514-2779*
*U.S. Mail: P.O. Box 7611, Washington, DC 20044-7611*　　　　　　*Facsimile (202) 514-2583*
*Overnight Mail:  601 D Street N.W., Washington, DC, 20004*
*E-mail: steve.o'rourke@usdoj.gov*

January 17, 2014

By E-mail
Hariklia Karis
Andrew Langan
Kirkland & Ellis
300 North LaSalle
Chicago, Illinois 60654

　　　　Re:　　MDL 2179, Case 10-4536 Penalty Phase
　　　　　　　　– Fact Depositions.

Dear Carrie & Andy:

　　　　BP's First Amended Initial Disclosures list a number of United States witnesses for whom the burden of a deposition outweighs the benefit these witnesses would provide to the Court and the parties in the form of unique information relating to issues of factual dispute that will be tried in this phase. Some of the witnesses are either current or former high-ranking government officials whose testimony is unlikely to be helpful in resolving disputed facts. Other witnesses are individuals who are exclusively working on the ongoing Natural Resource Damages ("NRD") Assessment, and thus BP's request for their depositions is nothing more than a transparent attempt to evade the Court's clear direction against litigating the NRD case during this Phase. For these reasons, BP should not be permitted to depose the following witnesses:

- Admiral Paul Zukunft
- Rear Admiral Steven Poulin
- Dr. John Howard
- Dr. Jane Lubchenco
- Dr. Robert Haddad
- Dr. Jacqueline Michel

I.      **Current and Former High-Level Government Officials**

Admiral Paul Zukunft is presently in line to become the next Commandant of the Coast Guard. He is scheduled to assume this command in June. Therefore, a deposition during the time period June 9-July 18 would significantly interfere with Admiral Zukunft's considerable duties as he completes his transition into this role.

Further, based on the issues in dispute, his deposition is not necessary. Admiral Zukunft was the Federal On-Scene Coordinator for the Spill for the period of July 12, 2010 through December 17, 2010. The well was shut in and dispersant applications ceased within the first few days of Admiral Zukunft's tenure. To the extent BP seeks information about the Admiral's impressions of the scope of the environmental harm posed by the spill and the effectiveness of mitigation measures, Admiral Zukunft largely relied upon the observations of the myriad responders regarding the extent of the threat posted by the spill and the effectiveness of the response. Those observations and reports have long since been produced to BP. Indeed, many of the underlying facts are the subject of stipulations, and the reports issued are topics on BP and Anadarko's proposed 30(b)(6) notice to the United States.

To the extent BP decides that it nonetheless needs personal testimony from a Federal On-Scene Coordinator (FOSC), there are five other FOSCs on BP's revised 26(a) disclosures.[1] BP has already deposed the two FOSCs whose tenures immediately pre-dated Admiral Zukunft.[2] To put it another way, BP is seeking the depositions of eight FOSCs. The United States has been willing to produce witnesses with personal knowledge of disputed issues, but the number of FOSC witnesses ensures duplication and wasteful effort. The marginal benefit that may accrue to the parties from Admiral Zukunft's testimony (and likely the testimony of most of the other FOSCs as well) is vastly outweighed by the burden to the Coast Guard as its new Commandant assumes command at the outset of hurricane season.

Similarly, Rear Admiral Steven Poulin has recently assumed the role of Judge Advocate General of the Coast Guard. Thus, it will be a significant burden on the Coast Guard for Admiral Poulin to appear for a deposition. Rear Admiral Poulin, much like Admiral Zukunft, did occupy an operational role during the response, but for largely the same reasons, his testimony is highly unlikely to add any new information to the case. Rear Admiral Poulin was based in the Mobile, Alabama Incident Command Post, and BP has yet to identify any significant issues of factual dispute related to the operations out of that Incident Command Post. Any observations of environmental effects, or the effectiveness of response activities, within his area of command by first-hand observers have been documented and produced, and many of the underlying facts are the subject of stipulations that either have been or are in the process of being negotiated. The

---

[1] These include, in order of tenure as FOSC: Captain Lincoln Stroh, Captain James Hanzalik, Captain Julia Hein, Captain Duke Walker, and Captain Thomas Sparks.

[2] Rear Admiral Mary Landry and Admiral James Watson.

burden on the Coast Guard of having its JAG sit for a deposition is significant. Therefore, this deposition should not go forward.

Dr. John Howard is the Director of the National Institute of Occupational Safety and Health (NIOSH), a component of the Centers for Disease Control and Prevention. As the head of this agency, Dr. Howard has significant duties that would be disrupted by being asked to sit for a deposition. NIOSH was involved in the response, principally to help ensure that response workers were not put at risk. Dr. Howard, however, was not himself directly involved in the response. Thus, he has little direct personal knowledge to offer the Court and the Parties.

Dr. Howard has written summaries of the agency's role in the response.[3] The facts stated in the papers are not in dispute, and BP/Anadarko's proposed 30(b)(6) topic regarding human health and safety would cover the issues addressed in the article. Indeed, a 30(b)(6) deposition on human health and safety is a far more efficient method of developing the factual record on these topics. Because Dr. Howard was not personally involved in the response, there is not likely to be any additional benefit to him testifying in addition to any 30(b)(6) witness. That benefit would be far outweighed by the burden to the agency of Dr. Howard sitting for a deposition. Thus, this deposition should be quashed.

Dr. Jane Lubchenco was involved in the response as the Administrator of NOAA. BP has indicated it believes she has information relevant to the impact of the spill on the environment. Judge Barbier has indicated that this information is of limited relevance to this phase, and is more properly part of the NRD phase of litigation. Even to the extent that this information is relevant to the Penalty phase, Dr. Lubchenco is not an appropriate witness.

NOAA was involved in a sprawling array of issues related to the spill response, from weather tracking to seafood safety to data management, and BP has not identified with any sort of specificity what issues it believes Dr. Lubchenco may be able to testify about. Dr. Lubchenco has publicly summarized the various applications of science that government agencies brought to the response,[4] but as the agency's Administrator at the time, Dr. Lubchenco was not the person performing the actual, on-the-ground scientific work. Furthermore, all of NOAA's scientific work during the response has long since been publicly disseminated, and to the best of our understanding, the underlying facts are not subject to substantial dispute. Certain reports written or co-written by NOAA staff (namely, the Operational Science Advisory Team Reports or "OSAT Reports") are the subject of BP and Anadarko's proposed 30(b)(6) notice, and this is the

---

[3] David Michaels and John Howard, "Review of the OSHA-NIOSH Response to the Deepwater Horizon Oil Spill: Protecting the Health and Safety of Cleanup Workers," *PLOS Currents: Disasters*, Jul. 18, 2012, *available at* http://currents.plos.org/disasters/article/review-of-the-osha-niosh-response-to-the-deepwater-horizon-oil-spill-protecting-the-health-and-safety-of-cleanup-workers/ (last visited April 14, 2014).

[4] Jane Lubchenco et al., "Science in Support of the *Deepwater Horizon* Response," *Proceedings of the National Academy of Sciences*, published online ahead of print Dec. 3, 2012, *available at* http://www.pnas.org/content/early/2012/11/29/1204729109 (last visited April 14, 2014).

most appropriate avenue for BP to obtain testimony about NOAA's work during the response as it relates to environmental recovery. There is quite simply no unique, relevant information that BP is likely to obtain from Dr. Lubchenco on these issues. Furthermore, given that Dr. Lubchenco is no longer an employee or contractor of the United States, she is likely to incur a significant personal burden if she needs to appear for a deposition.

Conclusion. In previous phases, the United States has been willing to produce select high-ranking government officials for depositions, given the importance of the case and the need for their testimony to shed light on disputed issues. For example, given the allegations made by the aligned parties regarding BP's source control actions, Secretary Chu (who had direct firsthand knowledge of some of the disputed events) was deposed. Likewise, given her unique role as the head of the Flow Rate Technical Group (and given that nearly every aspect of the Quantification case was sharply disputed), Dr. Marcia McNutt was deposed. These circumstances, however, do not apply to the witnesses BP seeks to depose in the Penalty Phase. The testimony BP seeks is either covered by 30(b)(6) topics or is largely irrelevant, duplicative, and based on second- or third-hand reports from agency staff. There are quite simply no compelling circumstances that would justify the depositions of so many high-ranking officials. The testimony they are expected to provide would be almost entirely duplicative of information available from other witnesses or documents.

## II.     BP's Improper Attempt to Obtain NRD Discovery

Dr. Robert Haddad and Dr. Jacqueline Michel are an employee and contractor, respectively, of NOAA, who are currently involved in conducting the NRD Assessment. Dr. Haddad, as Chief of NOAA's Assessment and Restoration Division, is the head of NOAA's NRD efforts. He has been nearly exclusively working on NRD matters since May 2010. His involvement in the response was minor, and was primarily ensuring that NOAA's NRD work was consistent with its response science work. He played a role in winding down NOAA's response-specific Science Group, and in that capacity he reviewed the first OSAT Report. BP and Anadarko have proposed a 30(b)(6) topic on the OSAT-1 Report, and thus the United States will produce a 30(b)(6) witness will be able to testify fully as to that report. In summary, Dr. Haddad's testimony will not be needed to fill any factual or evidentiary gaps. Moreover, Dr. Haddad is privy to innumerable privileged communications regarding the NRD case.

Dr. Michel is a contractor who is working full-time in support of NOAA's NRD Assessment. As such, a deposition of Dr. Michel would inevitably veer into this ongoing NRD work, given how eager BP has been to pull the NRD case into the Penalty Phase. Moreover, any of her work as a non-testifying expert is protected under Fed. R. Civ. P. 26(b)(4).Thus, Dr. Michel should not be deposed at this time.

During the response, Dr. Michel was involved in the Shoreline Cleanup Assessment Technique (SCAT) efforts, which sought to collect data on the degree and extent of shoreline

oiling. To the extent that discovery into the SCAT work is permissible Penalty phase discovery rather than premature NRD discovery, BP and Anadarko will be able to obtain testimony such testimony via 30(b)(6) deposition. A 30(b)(6) deposition, rather than a fact deposition, would enable BP to discover relevant information, but in a manner that would ensure that the case does not veer into premature NRD discovery.

BP has indicated that one of the reasons it wants a deposition of Dr. Michel is to determine whether she "overheard" any positive comments about BP during the response. This rationale is grossly insufficient to justify the deposition of any witness. Whatever comment that was overheard (if there were in fact any) would certainly be hearsay, and would carry almost no relevance to any issues in dispute this phase. The United States is not alleging that BP violated FOSC or NIC directives (other than those activities which resulted in criminal sanctions), and BP's role in the response has been discussed publicly by numerous United States witnesses and reports. BP should not be permitted to take depositions simply to shake the trees to try to find statements that are duplicative and largely irrelevant to the issues of this case.

In summary, BP continues to try to turn a relatively straightforward penalty trial into a sprawling, amorphous NRD case, in contravention of clear direction from the Court. The depositions of Dr. Haddad and Dr. Michel are for the transparent purpose of invading the ongoing NRD Assessment and dragging NRD issues into this phase of trial. The response work of these individuals can be easily covered in 30(b)(6) depositions. There is minimal legitimate purpose for fact depositions of these witnesses, and they should not go forward during this phase of the case.

### III. The "One Deposition Rule" Should Remain in Effect.

Finally, the Court's longstanding One Deposition Rule, as set forth in PTO 17, is still in effect. Therefore, the United States will not be producing those witnesses who have previously been deposed (namely, Admiral Thad Allen and Admiral James Watson) absent an order of the Court. BP has advocated tirelessly to the Court that it is the strongest supporter of the One Deposition Rule[5] and has repeatedly resisted attempts to have its witnesses be re-deposed, even in instances where parties plainly lacked the time to cover issues of importance to their claims[6] and plainly lacked relevant documents at the time of the deposition.[7] BP has characterized the rule as a "fundamental tenet"[8] of this litigation, and one of the "first commandments"[9] of MDL

---

[5] *See, e.g.,* Dkt. 1082, Status Conf. Jul. 21, 2011, 37:15-38:5.

[6] Dkt. 2263, Status Conf. Apr. 29, 2011, 33:11-34:9.

[7] Dkt. 5558, Status Conf. Jan. 27, 2012, 88:14-89:13 ("This is what we bought with a multi-phase hurry up approach…the trade-offs are inevitable.").

[8] Dkt. 2263, Status Conf. Apr. 29, 2011, 33:11-34:9.

[9] Dkt. 3471, Status Conf. July 29, 2011, 65:18-66:9.

cases, and has steadfastly refused to waive the rule in the case of its own witnesses.[10] There are no extenuating circumstances here that would compel the re-deposition of either Admiral Allen or Admiral Watson. BP had all of the documents from these witnesses prior to their depositions, and had the full opportunity to ask each witness whatever questions it wished.

Please let us know whether a further discussion could be fruitful, or whether you intend to move to compel. Thank you.

Sincerely,

/s/ Steve O'Rourke
Steven O'Rourke

---

[10] Dkt. 3892, Status Conf. Aug. 26, 2011, 24:12-26:12 ("There is a sign on my head that says Not Waiving One Deposition Rule.")