# Exhibit J

*April 21 merged Draft for meet and confer discussions*

## UNITED STATES DISTRICT OF COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL | § | MDL No. 2179 |
| RIG "DEEPWATER HORIZON" | § | |
| IN THE GULF OF MEXICO, | § | SECTION: J |
| ON APRIL 20, 2010 | § | |
| | § | JUDGE BARBIER |
| | § | MAG. JUDGE SHUSHAN |

**THIS DOCUMENT RELATES TO ALL CASES**

### DEPOSITION NOTICE OF DEFENDANTS BP EXPLORATION & PRODUCTION INC. AND ANADARKO PETROLEUM CORPORATION

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and PRE-TRIAL ORDER NO. 17 (as supplemented and amended by PRE-TRIAL ORDER 27)—designate and produce one or more officers, managers, agents, employees, or other representatives of  BP Exploration & Production Inc. and Anadarko Petroleum Corporation, to discuss the Areas of Inquiry identified below. In identifying each of the Areas of Inquiry below, the United States is not seeking to discover privileged or work product information, waiving any applicable privilege or work product claim, or making any representation as to the existence or scope of responsive, non-privileged information with respect to any particular Area of Inquiry.  The depositions shall take place in New Orleans unless otherwise scheduled by the Court and parties, and the times of the depositions will be scheduled in conjunction with the designees' fact depositions in their individual capacities, or otherwise as may be scheduled with Judge Shushan and the parties.

1

*April 21 merged Draft for meet and confer discussions*

## **DEFINITIONS**

As used herein, the following terms are defined as follows:

1.      "Anadarko," "Anadarko Petroleum Corporation" and "APC" means Anadarko Petroleum Corporation and its consolidated subsidiaries, unless stated otherwise.

2.      "BP" means BP plc and its subsidiaries, including relevant predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its/their behalf.

3.      "BP Exploration & Production Inc." ("BPXP") means the BP entity that bid for and was awarded the right to lease Mississippi Canyon Block 252 ("MC-252").  BPXP is a Delaware corporation with its principal place of business in Texas.  BPXP includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

4.      "BP America Production Company" ("BPAPC") was a party to the drilling contract concerning the use of the Deepwater Horizon to drill the Macondo well. BP America Production Company is a Delaware corporation with its principal place of business in Texas. BPAPC includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

5.      "BP Company North America Inc." is a Delaware corporation with its principal place of business in Illinois.  BP Company North America Inc. includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

2

*April 21 merged Draft for meet and confer discussions*

6.      "BP Corporation North America Inc." is an Indiana corporation with its principal place of business in Texas.   BP Corporation North America Inc. includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

7.      "BP America Inc." is a Delaware corporation with its principal place of business in Texas.  BP America Inc. includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

8.      "BP Holdings North America" is a UK private limited company with its principle place of business in the United States.  BP Holdings North America includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

9.      "BP p.l.c." or "BP plc" means the parent corporation of the BP group of companies.  The company was incorporated in 1909 in England and changed its name to BP p.l.c. in 2001.

10.     "Consolidating financial statements" means the financial reports (income statement, balance sheets, and statement of cash flows) for each subsidiary and the eliminations and adjustments that are made in preparing the ultimate consolidated financial statement for the parent company.

11.      "Identify," whether or not capitalized, with respect to: (a) an individual, shall mean to provide the individual's full name, job title, and employer during the period referred to, and current or last-known address and telephone number and business address and telephone

3

*April 21 merged Draft for meet and confer discussions*

number; (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); and (c) Information, shall mean to provide the date, title, subject matter, author(s), and recipient(s) or the Bates number(s).

12.    "Incident" shall mean the loss of control of the MC252 Well and the fire and explosion(s) on board, and resulting sinking of, Transocean's Deepwater Horizon rig, in addition to the resulting oil spill in the Gulf of Mexico.

13.    "Information" shall have the meaning set forth in Pretrial Order 22, Paragraph 2.

14.    "Lease" means the Oil and Gas Lease of Submerged Lands under the Outer Continental Shelf Lands Act, "Serial Number OCS-g 32306" pertaining to "All of Block 252, Mississippi Canyon, OCS Official Protraction diagram, NH 16-10," also known as the Macondo Prospect, an oil and gas prospect in the Gulf of Mexico, off the coast of Louisiana.

15.    "Macondo Prospect" means the Macondo Prospect (Mississippi Canyon Block 252, abbreviated MC252) an oil and gas prospect in the Gulf of Mexico, off the coast of Louisiana. The prospect was the site of the Deepwater Horizon drilling rig explosion on April 20, 2010.

16.    "Macondo Well" means the exploratory well drilled and constructed pursuant to the Lease as defined herein.

17.    "Material Transaction" means a transaction for the subject entity that meets the standards of materiality as described in SEC Staff Accounting Bulletin No. 99 - Materiality and by the FASB Statement of Financial Accounting Concepts No. 2.

*April 21 merged Draft for meet and confer discussions*

18.     "Person" refers to, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

19.     "Relating to," "referring to," "regarding," "concerning," "reflecting" or "with respect to" refers to, without limitation, the following concepts: discussing, describing, reflecting, concerning, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

20.     "Response" refers to oil spill response efforts, undertaken pursuant to Section 311(c) of the Federal Water Pollution Control Act, 33 U.S.C § 1321(c) and 40 CFR Part 300, to contain, collect, remove, disperse, and minimize the impact of hydrocarbons released from the Macondo well in connection with the Deepwater Horizon Incident (including through the use of technologies such as controlled in situ burning, dispersants, skimming, and the placement of booms), including any activities BP or APC seeks to introduce evidence of, reference, or discuss in the Penalty Phase.  This includes any natural resource damage costs, or any expenses related to determining, researching, and investigating those damages.

21.

## AREAS OF INQUIRY OF BPXP

1.     BPXP's role in and impact on the economy of the local community, Gulf of Mexico region, and the United States, including harm to the economy from the Deepwater Horizon oil spill

2.     BP's knowledge and adoption of existing technologies and safety practices, including but not limited to deepwater drilling safety practices and technology, prior to and since

5

*April 21 merged Draft for meet and confer discussions*

the Incident, including all factual bases for BPXP's contentions that it has developed

technological and safety advancements during the Response that were substantial, innovative,

highly valuable, and have improved industry standards, as well as all factual bases for BPXP's

contention that it has taken an industry-leading role and expended considerable effort in

improving deepwater drilling safety since the Incident..

~~3.     BP's knowledge and adoption of existing deepwater drilling safety practices and~~

~~technology prior to and since the Incident, including all factual bases for BPXP's contention that~~

~~it has taken an industry-leading role and expended considerable effort in improving deepwater~~

~~drilling safety since the Incident.~~

~~4.     Penalties sought and obtained against other companies, in other environmental~~

~~incidents, that BPXP contends the Court should consider in this case, including any similarities~~

~~or differences between those incidents and the Deepwater Horizon Incident and Spill.~~

~~5.~~3.     BP's knowledge during the spill of any potential risks of harm to human health or

the environment, including acute, chronic, or cumulative risks, associated with dispersants, and

BP's consideration of such risks when requesting approval to apply dispersants during the

Response.

~~6.~~4.     All factual bases for BPXP's contentions regarding the environmental impact,

lack of impact, and/or recovery, (including but not limited to Fish, Shoreline Environment, and

Wildlife), whether positive or negative, from the Deepwater Horizon Incident and Spill and the

subsequent Response, including without limitation impact or lack of impact from Oil-Materials,

Dispersants, any Response Activities, and/or any Mississippi River Diversions attempted,

undertaken, discussed, or considered.

*April 21 merged Draft for meet and confer discussions*

7.5.    BP's knowledge of all injuries or illnesses sustained during the Incident  and the subsequent Response, including but not limited to medical claims,  and with respect to such medical claims, investigation of those claims, correspondence, settlement, payments, etc., under any framework, including but not limited to the BP claims facility, the oil spill trust, the GCCF, the  Medical Benefits Settlement, or settlements with rig workers or families of rig workers; and all analyses conducted by BP regarding the impact, effect or seriousness of the Incident and Response on human health.

8.6.    BP's knowledge of the "Medical Encounters" and  "Injury and Illness" databases, including, but not limited to, the underlying Information from which these databases were created, the process by which the databases were created, the fields available, the structure and number tables,  any modifications or upgrades, the applications in which the databases operate, data entry and recall procedures, indexing and searching capability, quality assurance processes and controls, access restrictions, security precautions, the manner in which information from these databases can be accessed, and the ability to generate reports, queries, and other subsets of data.

9.7.    All factual bases for BPXP's contentions regarding actions taken or decisions made by the United States that may have made the any mitigation, remediation and/or Response efforts less effective.

10.8.   The financial performance, historical trends and future projections for BP, including without limitation facts, analyses, policies and practices regarding the following:

*April 21 merged Draft for meet and confer discussions*

     a. The data, metrics and other information bearing on the financial performance and status of BP as publicly reported in its Annual 20-F filings with the United States, SEC and/or the United Kingdom.

     b. Any of BP's contingent liabilities that, alone or combined, could have a significant impact on BP's financial performance or status, and for each such liability, the nature of the liability, the probability of its occurrence and the potential magnitude and timing of its financial impact.

     c. Any unused or available credit lines or debt capacity available to BP, including likely terms.

     d. The basis for BP's forward-looking projections for 2014 and into the future.

     e. The contribution of exploration, production and related operations both as a global segment and in the Gulf of Mexico to BP's profitability.

     f. Plans, proposals, or suggestions under development or consideration by BP, whether preliminary or otherwise, to sell further assets.

~~11.~~9. The factual basis for any contention that a civil penalty of up to $18 billion would have a significant adverse impact on the business operations of BPXP, taking into account without limitation ~~(taking into account~~ its historical financial relationships with other BP entities both pre- and post- Incident, ~~), and including without limitation the following information~~ and its financial and corporate~~ion~~ relationship with ~~for~~ each of ~~BPXP,~~ BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America and BP p.l.c. from 2005 to the present, including without limitation:

*April 21 merged Draft for meet and confer discussions*

      a.  Sources and uses of funds and transfers between or among BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America and/or BP p.l.c. or loans between or among those BP entities.

      b.  Sources and uses of funds and transfers between BPXP and any other BP entity, whether referenced above or not, and loans between BPXP and any other BP entities, whether referenced above or not.

      c.  Payment of dividends from each of BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America and BP p.l.c. to another BP corporate entity, including the amount of and history of dividends paid by BPXP to any other BP corporate entity.

      d.  Practices regarding one or more of BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America or BP p.l.c. financing the investments, operations, or other expenditures of other BP entities, and instances where that occurred.

      e.  Inter-company transactions, including those pursuant to service agreements (involving employees, technical, engineering, commercial, marketing, environmental, legal, tax, banking, investment, financial, accounting, administrative, or other services) or secondment agreements and any other transactions;

*April 21 merged Draft for meet and confer discussions*

     f.    Basis for the allocation of overhead or services provided by one BP entity to other BP entities;

     g.    Transfer and inter-company pricing policies and practices for the pricing of goods or services provided by one BP entity to another;

     h.    Guarantees of debt or other obligations by one BP entity for another; and,

     i.    Sales or other transfers of goods, services or assets from BPXP or from BP to unaffiliated third parties, i.e. any non-BP entity.

~~12.~~10.  Any expenditure(s) that any BP entity has made in connection with the Incident or Response or any other mitigation activities that BPXP contends should diminish its obligation to pay a civil penalty, and the facts concerning each such expenditure including:

     a.    Identification of the expenditure, including which BP entity or entities incurred costs at any stage related to the expenditure;

     b.    Which BP entity financed the expenditure, initially and ultimately, including inter--BP company transfers or sales of assets;

     c.    The accounting and tax treatment of the expenditures for all involved BP entities including before and after tax costs;

     d.    Any BP entity providing guarantees for the expenditure;

     e.    Impact of the expenditure on BP's financial condition and operational capability at the time and into the future;

     f.    Any debt owed by BPXP as a result of such expenditure and to whom or what entity such debt is owed.

*April 21 merged Draft for meet and confer discussions*

~~Any facts, information and analyses that BPXP contends are relevant to any of the eight penalty factors in 33 U.S.C. § 1321(b)(8) to the extent not already covered by or included in any of the foregoing topics.~~

~~The civil penalty amount that BPXP contends would force it to discontinue its business operations if imposed by the Court in this case, and the factual basis for that contention.~~

~~The civil penalty amount that BPXP contends would force BP to discontinue its business operations if imposed by the Court in this case, and the factual basis for that contention.~~

## AREAS OF INQUIRY OF ANADARKO

1.    Anadarko's ("APC") Gulf of Mexico offshore operations' role in and impact on the economy of the local community, Gulf of Mexico region, and the United States, including harm to the economy from the Deepwater Horizon oil spill.

2.    The financial performance, historical trends and future projections for Anadarko, including without limitation facts, analyses, policies and practices regarding the following:

    a.    The data, metrics and other information bearing on the financial performance and status of APC as publicly reported in its Annual Form 10-K and Quarterly Form 10-Q filings with the United States SEC.

    b.    Any of APC's contingent liabilities that, alone or combined, could have a significant impact on APC's financial performance or status; and for each such liability, the nature of the liability, the probability of its occurrence and the potential magnitude and timing of its financial impact.

      c.   Any unused or available credit lines or debt capacity available to APC, including likely terms.

      d.   The basis for APC's forward-looking projections for 2014 and into the future.

      e.   The contribution of exploration, production and related operations both as a global segment and in the Gulf of Mexico to APC's profitability.

      f.   Plans, proposals, or suggestions under development or consideration by Anadarko, whether preliminary or otherwise, to sell further assets.

3.     Facts and information regarding any sale or transfer of assets to third parties (i.e., non-APC companies or affiliates) from 2008 to 2014, including the amount, date, and the APC company or affiliate and third party involved in the transfer.

4.     Any expenditure(s) made by any APC entity since 2010 in connection with the Incident, Response or any other  mitigation activities that APC contends should diminish its obligation to pay a civil penalty; and the facts concerning each expenditure, including without limitation for each:

      a.   Identification and description of the expenditure, including the purpose and scope, and which APC entity or entities were involved at any stage.

      b.   Whether and to what extent the expenditure was expensed or capitalized and, for the latter, the useful life or lives assumed for tax-related purposes.

      c.   Any other tax credits or incentives (e.g., local, State or Federal) APC gained for the expenditure.

      d.   The impact of the expenditure on Anadarko's financial condition and operational capability at the time and into the future.

*April 21 merged Draft for meet and confer discussions*

5.     The economic impact, if any, of the recent settlement filed on April 3, 2014 (Dkt. No. 635) in *In re: Tronox*, Adv. Proc. No. 09-01198-alg (Bankr. S.D.N.Y.) on APC's on-going business operations and its position regarding whether that settlement in any way impacts APC's ability to finance a civil penalty in this litigation.

6.     All facts, analyses, and any other information that supports or may contradict Anadarko's contentions regarding its efforts to minimize or mitigate the effects of the Incident and Response including facts, analyses, and any other information related to the following topics that Anadarko contends are relevant and are cited in its First Amended Initial Disclosures served on April 4, 2014:  Anadarko's offers of assistance after the Incident and its role in responding to the Incident; Anadarko's $4 billion settlement with BP in relation to the Incident; and Anadarko's contribution to the Rockefeller Philanthropy Advisor's Fund for Gulf Communities.

7.     All facts, analyses, and any other information that supports or may contradict Anadarko's contentions regarding the benefit to the United States of offshore drilling development, including, but not limited to:  Anadarko's payments or non-payments of royalties to the United States, or any disputes regarding royalties to the United States, including with respect to oil collected from the Macondo Incident.

8.     All facts, analysis, and any other information that supports or may contradict Anadarko's contentions regarding the "other matters as justice may require" penalty factor, including, if Anadarko contends such topics are relevant, its contentions related to (1) government oversight, approvals, and compliance requirements for deepwater drilling generally and for the Macondo well specifically; (2) ~~government enforcement actions, including criminal actions, with respect to the Incident; (3)~~ pre- and post-Incident regulatory guidance,

13

*April 21 merged Draft for meet and confer discussions*

recommendations and practice regarding deepwater drilling and enforcement history as it relates to operators; (34) industry custom and practice (including contractual relationships) between designated operators and non-operators; (45) potential and actual impacts on (i) non-operators; (ii) investment in offshore oil development, (iii) offshore drilling operations, and (iv) industry custom and practice (including contractual relationships) if penalties (or threat of penalties) are imposed on non-operators; and (56) efficacy of penalties against non-operators, contractors, and non-operating parties.

9.      All facts, analyses or any other information that supports or may contradict Anadarko's contentions in the Penalty Phase regarding the impact, effect or seriousness of the Incident and Response on the environment, human health, and the economy, to the extent that Anadarko's contentions or facts, information or analyses are separate and independent from BP's contentions in the Penalty Phase.

10.      Any facts, information and analyses that Anadarko contends are relevant to any of the eight penalty factors in 33 U.S.C. § 1321(b)(8) to the extent not already covered by or included in the foregoing topics.

11.      The civil penalty amount that Anadarko contends would force it to discontinue its business operations if imposed by the Court in this case, and the factual basis for that contention.

*April 21 merged Draft for meet and confer discussions*

Respectfully submitted,

BRIAN HAUCK
Deputy Assistant Attorney General
Civil Division
PETER FROST
Director, Torts Branch, Civil Division
Admiralty and Aviation
SHARON SHUTLER
MALINDA LAWRENCE
LAURA MAYBERRY
Trial Attorneys
R. MICHAEL UNDERHILL, T.A
Attorney in Charge, West Coast Office

ROBERT G. DREHER
Acting Assistant Attorney General
Environment & Natural Resources Division
MICHAEL MCNULTY
SARAH HIMMELHOCH
Senior Litigation Counsel
NANCY FLICKINGER
Senior Attorney
PATRICK CASEY
RICHARD GLADSTEIN
DANIEL S. SMITH
Senior Counsel
ABIGAIL ANDRE
A. NATHANIEL CHAKERES
ANNA CROSS
RACHEL HANKEY
JUDY HARVEY
RACHEL KING
ERICA PENCAK
BRANDON ROBERS
GORDON YOUNG
Trial Attorneys

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
Facsimile:  202-514-2583
E-mail:  steve.o'rourke@usdoj.gov
KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana

15

*April 21 merged Draft for meet and confer discussions*

SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana