# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LL&T Ice, Inc. | * | CASE NO: 2:14-cv-560 |
| Plaintiff | * | JUDGE |
| *VERSUS* | * | MAGISTRATE |
| BP, P.L.C.; BP America Production Company; BP Exploration & Production, Inc.; Transocean, Ltd.; Transocean Offshore Deepwater Drilling, Inc.; Transocean Deepwater, Inc.; Transocean Holdings, LLC; Triton Asset Leasing GmbH; Halliburton Energy Services, Inc.; Halliburton Company; and Sperry Drilling Services, a division of Halliburton Energy Services, Inc. | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, LL&T Ice, Inc., who respectfully represents as follows:

### Nature of the Action

1.



Plaintiff files this Complaint to recover damages resulting from the explosion, sinking and subsequent discharge of oil from the Deepwater Horizon Mobile Offshore Drilling Unit (hereinafter "Deepwater Horizon") that occurred on or about April 20, 2010 in Mississippi Canyon 252 on the Outer Continental Shelf directly adjacent to the coast of Louisiana. The explosion caused over 200 million gallons of oil to spill into the Gulf of Mexico. The oil discharge created a massive oil slick on the surface of the Gulf of Mexico and oil plumes underneath the surface of the Gulf of Mexico. The oil discharge was extremely toxic and hazardous and resulted in a massive closure of commercial fishing grounds in Louisiana, Mississippi, Alabama and Florida.

## Parties

2.

Plaintiff is a commercial business with its principle place of business in Dulac, Louisiana. Plaintiff is a landing site and seafood dock where commercial fishermen first land and unload their catch. Its business is directly related to commercial fishing/shrimping in the Gulf of Mexico and in the Coastal Zone pursuant to 43 U.S.C. §1331(e).

3.

As a direct result of the oil spill and subsequent closure of commercial fishing grounds, Plaintiff has suffered and will continue to suffer significant economic damages, including but not limited to past, present and future earnings and lost earning capacity.

4.

Defendants herein are the following:

(a)  BP, P.L.C. is a British public limited company with its corporate headquarters in London, England. BP, P.L.C. is the global parent company of the worldwide business

operating under the "BP" logo. BP, P.L.C. operates its various business divisions, such as the "Exploration and Production" division within BP Exploration and BP America, through vertical business arrangements aligned by product or service groups. BP, P.L.C.'s operations are worldwide, including in the United States. Defendants BP Exploration and BP America are wholly-owned subsidiaries of BP, P.L.C. and are sufficiently controlled by BP, P.L.C. so as to be BP P.L.C.'s agents in Louisiana and the U.S. more generally. Plaintiff adopts and incorporates by reference all jurisdictional allegations against BP, P.L.C. set forth in Paragraphs 212-218 of the Amended B1 Master Complaint (Doc. No. 1128) filed in MDL 2179, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010.*

(b) BP America Production Company is a Delaware corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over BP America Production Company because BP America Production Company is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana.

(c) BP Exploration & Production, Inc. is a Delaware corporation with its principal place of business in Warrenville, Illinois. BP Exploration & Production, Inc. was designated a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution Act of 1990, 33 U.S.C. §2714. This court has personal jurisdiction over BP Exploration & Production, Inc. because it is registered to do business in Louisiana, does business in Louisiana and has a registered agent in Louisiana;

(d) Transocean, Ltd. is a foreign corporation organized and existing under the laws of Switzerland but that is doing business in the State of Louisiana and within this District;

(e) Transocean Offshore Deepwater Drilling, Inc. is a foreign corporation organized and existing under the laws of the State of Delaware but that is doing business in the State of Louisiana and within this District;

(f) Transocean Deepwater, Inc. is a foreign corporation organized and existing under the laws of the State of Delaware but that is doing business in the State of Louisiana and within this District;

(g) Transocean Holdings, LLC is a foreign corporation organized and existing under the laws of the State of Delaware but is doing business in the State of Louisiana and within this District;

(h) Triton Asset Leasing GmbH ("Triton") is a Swiss limited liability company with its principal place of business in Zug, Switzerland. Triton is affiliated with Transocean Ltd. and is an owner, managing owner, owner *pro hac vice*, and/or operator of the Deepwater Horizon.

(i) Halliburton Energy Services, Inc. is a foreign corporation organized and existing under the laws of the State of Delaware but that is doing business in the State of Louisiana and within this District; and

(j) Halliburton Company is a foreign corporation doing business in the State of Louisiana and within this District.

(k) Sperry Drilling Services (formerly Sperry Sun Drilling Services) is a division of Halliburton (formerly Sperry Sun Drilling Services) and was responsible for

mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations.

5.

BP, P.L.C., BP America Production Company and BP Exploration & Production, Inc., are collectively referred to herein as "BP."

## Jurisdiction and Venue

6.

This Honorable Court has subject matter jurisdiction over all claims asserted in this action pursuant to 28 U.S.C. §1332 as this is a civil action between citizens of different states where the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs; 28 U.S.C. §1333 as this is a civil action of admiralty or maritime jurisdiction; and 28 U.S.C. §1331 as this is a civil action involving the laws or treaties of the United States, including but not limited to general maritime law, general maritime products liability law, and the Oil Pollution Act, 33 U.S.C. §2701, et seq.

7.

This Court has personal jurisdiction over each of the Defendants as each either does business in Louisiana or has significant contacts within Louisiana to justify the exercise of personal jurisdiction consistent with the laws of the State of Louisiana and the Constitution of the United States of America.

8.

Venue in this District is proper and appropriate pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

**Allegations of Fact**

9.

Plaintiff adopts and incorporates as if copied herein, *in extenso*, the factual allegations, causes of action, and prayer for relief in the Amended B1 Master Complaint (Doc. No. 1128) filed in MDL No. 2179, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, including any supplements or amendments thereto.

10.

To the extent necessary, Plaintiff timely opted out of the *Deepwater Horizon* Economic and Property Damages Settlement Agreement ("Deepwater Horizon Settlement").

11.

Plaintiff has satisfied "presentment" under 33 U.S.C. §§2702(b) and 2713 through claims made and asserted with either BP immediately after the spill, the Gulf Coast Claims Facility, or BP after opting out of the Deepwater Horizon Settlement. Plaintiff's claims made and asserted with BP's agents and/or representatives satisfy "presentment" and Plaintiff's claims are ripe for adjudication.

12.

The Deepwater Horizon is and was at all times pertinent hereto owned and/or operated by Defendants Transocean Ltd., Transocean Holdings, LLC, Transocean Offshore Deepwater Drilling, Inc. and/or Transocean Deepwater, Inc. (collectively "Transocean"). The Deepwater Horizon is a semi-submersible offshore mobile drilling unit that was being utilized to perform oil

drilling and oil completion operations for Defendants BP, PLC, BP America Production Company, BP Exploration and Production, Inc., BP America, Inc., and BP Products North America, Inc. (collectively "BP") on or about April 20, 2010 in Mississippi Canyon Block 252 on the Outer Continental Shelf.

13.

BP is a designated holder of a lease granted by the Minerals Management Service to perform the oil drilling and oil completion operations, and on April 20, 2010 BP was operating the oil well that is the source of the oil discharge. BP is the specifically designated operator of the lease granted by the Minerals Management Service. BP is strictly liable for all activities and damages surrounding the explosion, sinking and subsequent oil discharge from the site in Mississippi Canyon Block 252 on the Outer Continental Shelf where the Deepwater Horizon was operating.

14.

Halliburton Company and Halliburton Energy Services, Inc. (collectively "Halliburton") were engaged in cementing operations on or about the Deepwater Horizon at all times pertinent hereto, including at the time of the explosion and subsequent sinking and oil discharge. Upon information and belief, Halliburton performed its cementing operations negligently and improperly, allowing highly combustible gas and other combustible material to escape from the well and subsequently ignite.

15.

Sperry Drilling Services, a division of Halliburton, was response for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid

levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations. Upon information and belief, Sperry Drilling Services performed its operations negligently and improperly resulting in the subsequent explosion of the Deepwater Horizon.

16.

Plaintiff specifically avers and asserts that the Shipowner's Limitation of Liability Act, 46 U.S.C. § 183, et seq. does not apply to the claims asserted in this manner, specifically including but not limited to any claims asserted under the Oil Pollution Act, 33 U.S.C. § 12701 et seq ("OPA") insofar as it abrogates the Shipowner's Limitation of Liability Act. Accordingly, any stay issued by any Court as a result of invocation of the Shipowner's Limitation of Liability Act has no force and effect on this matter.

17.

Plaintiff hereby asserts by adoption and reference a claim in the Complaint and Petition of Triton Asset Leasing GmbH, et al., No. 10-2771; and adopts and incorporates the Master Answer [Rec. Doc. 244] to the Complaint and Petition of Triton Asset Leasing GmbH, et al., in No. 10-2771.

18.

BP has been named the responsible party under the OPA and has publicly accepted responsibility pursuant to the OPA. The OPA's liability cap does not apply in this matter as BP has publicly accepted and admitted that the liability cap does not apply. Irrespective of any such admission(s), the liability cap does not apply as BP was grossly negligent in all respects surrounding the operation of the Deepwater Horizon and in causing the explosion, sinking and oil discharge. In addition to damages under the OPA, BP is also responsible for all other damages under maritime and/or state laws.

19.

Plaintiff is entirely reliant upon the commercial shrimp and seafood industry for its business success. The viability of the domestic shrimp and seafood industry has been severely damaged by the Deepwater Horizon explosion, oil discharge and subsequent actions by Defendants. Plaintiff has suffered, and will continue to suffer, severe economic losses as a result of the damage caused to the commercial fishing and shrimping industry. Those losses are direct, immediate and irreversible.

20.

The United States shrimp industry has been under siege for years from unfairly traded and dumped imports from overseas. The Deepwater Horizon explosion and oil discharge significantly decreased the supply and/or demand for domestic shrimp, leading to a substantial increase in imported shrimp and a consequent loss of market share for gulf shrimp. This loss is ongoing and irreversible causing severe, long-term and potentially permanent economic and non-economic damages to Plaintiffs. This loss includes damage to the ongoing Antidumping cases against pending before the International Trade Administration and International Trade Commission.

21.

As a result of the Deepwater Horizon Oil Spill, the commercial seafood industry in the Gulf Coast areas and Gulf of Mexico was severely impacted, causing severe and irreversible injury to Plaintiff.

**Causes of Action**

22.

Plaintiff adopts and incorporates as if adopted herein, *in extenso*, the factual allegations, causes of action, and prayer for relief, raised in the Amended B1 Master Complaint (Doc. No. 1128) filed in MDL No. 2179, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, including any subsequent supplemental or amending complaints thereto. Plaintiff's causes of action include, but are specifically not limited to claims under the Oil Pollution Act, general maritime law and state law.

**First Cause of Action: Negligence, Gross Negligence and Strict Liability**

23.

Plaintiff re-avers and re-alleges each and every allegation previously set forth above with the same force and effect as if copied herein *in extenso*.

24.

Upon further information and belief, the blow-out, fire, explosion and resulting oil discharge and damages were caused by the concurrent, joint negligence, gross negligence and strict liability fault of all of the Defendants in the following non-exclusive particulars:

a. Failing to properly operate the Deepwater Horizon in a safe and reasonable manner;

b. Operating the Deepwater Horizon in such a manner that a fire and explosion occurred on board, causing it to sink and resulting in a massive discharge of oil;

c. Failing to properly inspect the Deepwater Horizon to make sure that its equipment and personnel were fit for their intended purpose;

d. Acting in a careless, negligent and reckless manner without due regard for the safety of others and for the potential consequences of an explosion and oil discharge;

e. Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon which, if they had been so promulgated, implemented and enforced, would have avoided the fire, explosion, sinking, oil discharge and damages;

f. Operating the Deepwater Horizon with untrained and unlicensed personnel;

g. Inadequate and negligent training and hiring of personnel;

h. Failing to take appropriate action to avoid or mitigate the accident and resulting damages;

i. Negligent implementation of safety policies and procedures;

j. Employing untrained or inadequately trained employees and/or failing to properly train their employees;

k. Failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

l. Failing to timely warn;

m. Failing to timely bring the oil discharge under control:

n. Failing to provide appropriate accident prevention and remediation equipment;

o. Failing to observe and read gauges that would have indicated excessive pressures in the well;

p. Failing to react to danger signs;

q. Manufacturing and/or selling and/or providing BOP's that did not work properly;

r. Conducting well and well cap cementing operations improperly;

s. Failing to provide, monitor, and utilize adequate mud control;

t.   Acting in a manner that justifies imposition of punitive damages: and

u.   Any other acts of negligence and omissions as will he shown at the trial of this matter:

25.

In addition, and in the alternative, the blow-out, fire, explosion, sinking and resulting oil spill and damages were caused by defective equipment, including the BOP's that were in the care, custody, and control of Defendants and over which the Defendants had custody or *garde*. Defendants knew or should have known of these defects and Defendants are, therefore, strictly liable for them.

26.

The injuries to Plaintiff were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations, and failed to have an adequate plan in place to address a blow-out and/or explosion and fire of the magnitude that occurred and containment of the spill that occurred.

27.

All of the foregoing acts and/or omissions by Defendants proximately caused and/or contributed to Plaintiff's injuries and damages. As a direct and proximate cause of Defendants acts and/or omissions, Plaintiff has suffered damages associated with inconvenience sustained by the closure and pollution of the Gulf water areas, harbors, marinas, and waterways including loss of earnings and earnings potential which directly depend on supply and demand of shrimp and other seafood from the Gulf of Mexico.

28.

In addition to the negligent actions described above, and in the alternative thereto, the injuries and damages suffered by Plaintiff were caused by the acts and/or omissions of the Defendants that are beyond proof by the Plaintiff, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than that the fire, explosion, sinking and oil spill resulted from the negligence of Defendants. Furthermore, the fire, explosion, sinking and the resulting oil spill would not have occurred had the Defendants exercised the high degree of care imposed on them, and as such, Plaintiff pleads the doctrine of *res ipsa loquitur*.

29.

Defendant BP is also liable to Plaintiff for causing damages to the shrimp and seafood industry as a result of actions and inactions in the performance of its obligations as the Responsible Party under the Oil Pollution Act. As the Responsible Party under the Oil Pollution Act BP had the statutory responsibility to process and adjust economic loss claims in a fair and reasonable manner. BP failed to carry out its statutory responsibilities and negligently administered its obligations to pay economic loss claims under the Oil Pollution Act for the following, non-exclusive reasons:

a.  Negligently failing to timely and adequately compensate Plaintiffs for economic losses that were adequately presented according to BP's claims guidelines resulting in past, present and future economic losses; and

b.  Negligently paying economic loss claims either during the initial claims process or in the Deepwater Horizon court settlement in a disproportionate manner to different sectors within the seafood industry, thereby altering the conditions of competition and distorting the economies of the domestic seafood industry, resulting in past, present and future economic losses.

30.

Plaintiff is entitled to judgment finding Defendants liable to Plaintiff for damages suffered as a result of Defendants' negligence, gross negligence, and strict liability and awarding Plaintiff adequate compensation in amounts determined by the trier of fact.

### Second Cause of Action: Oil Pollution Act

31.

Plaintiff re-avers and re-alleges each and every allegation previously set forth above with the same force and effect as if copied herein *in extenso*.

32.

The OPA imposes liability upon a responsible party for discharges from facilities including facilities such as the Deepwater Horizon. 33 U.S.C. § 2702. BP has been named and has accepted responsibility under the OPA. As such, BP is strictly liable to Plaintiff for all damages and removal costs, as well as reimbursement of attorney's fees and costs.

### Punitive Damages Under All Claims

33.

Plaintiff re-avers and re-alleges each and every allegation previously set forth above with the same force and effect as if copied herein *in extenso*.

34.

Defendants engaged in conduct so reckless, willful, wanton and in such utter and flagrant disregard for the safety and health of the public and the environment in their activities leading up to and/or during the blowout, explosions, fire and Oil Spill, as alleged herein, that an award of punitive damages against them is warranted and necessary.

35.

Defendants engaged in the following reckless, wanton, malicious and/or grossly negligent conduct:

a. Failed to properly maintain and/or operate the Deepwater Horizon;

b. Operated the Deepwater Horizon in such a manner the safety and integrity of the vessel and the well were disregarded to save time and money;

c. Ignored warnings that the integrity of the well, the cementing job, and the vessel were in jeopardy;

d. Failed to promulgate, implement, and enforce proper rules and regulation to ensure the safe operations of the Deepwater Horizon;

e. Violated MMS regulations for the safe design and operation of the wells and drilling rigs in the Gulf of Mexico;

f. Failed to take appropriate action to avoid or mitigate the accident;

g. Failed to implement policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

h. Failed to ensure that the Deepwater Horizon and its equipment were free from defects, properly maintained and/or in proper working order;

i. Failed to provide appropriate disaster prevention equipment; and

j. Failed to have an appropriate emergency spill response plan or readily available spill response equipment.

36.

Defendants' reckless, wanton and/or gross negligent conduct, as described herein, warrants and necessitates the imposition of punitive damages at the highest level, because

Defendants' conduct was motivated by financial gain, injured and endangered human and environmental health and safety, and caused devastating, irreversible and permanent damage to Plaintiff.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following:

a.   Economic, compensatory, special, general, and punitive damages in amounts to be determined at trial;

b.   Loss or damage to real or personal property;

c.   Loss of natural resources;

d.   Pre-judgment and post-judgment interest at the maximum rate allowable by law;

e.   Attorney's fees and costs of litigation;

f.   All such other and further special and equitable relief available under all applicable state and federal laws and any relief the Court deems just and appropriate; and

g.   A trial by jury as to all Defendants.

Respectfully submitted:
**LEAKE & ANDERSSON, LLP**

BY: Edward T. Hayes
Edward T. Hayes, Esq. T.A. (#25700)
Adam D. Whitworth, Esq. (#34149)
1100 Poydras Street, Suite 1700
New Orleans, LA 70163-1701
Telephone: (504) 585-7500
Facsimile: (504) 585-7775
Email: ehayes@leakeandersson.com
          awhitworth@leakeandersson.com

**ATTORNEYS FOR PLAINTIFF**