

**U.S. Department of Justice**
Environment and Natural Resources Division
Environmental Enforcement Section

90-5-1-1-10026

*Steven O'Rourke*     *Telephone (202) 514-2779*
*U.S. Mail: P.O. Box 7611, Washington, DC 20044-7611*     *Facsimile (202) 514-2583*
*Overnight Mail: 601 D Street N.W., Washington, DC, 20004*
*E-mail: steve.o'rourke@usdoj.gov*

May 15, 2014

<u>*Via E-Mail*</u>
Honorable Sally Shushan
United States Magistrate Judge
Eastern District of Louisiana

      Re:    *US v. BP & APC*, 10-4536 Penalty Phase: Fact Deposition Issues

Dear Judge Shushan:

      You instructed me to prepare a response to a May 14, 2014 email from Ms. Karis to you entitled "Penalty Phase - Custodian File Production," specifically about the two witnesses in category "C" of her letter (Mssrs. Bamfield and Houge). Using Ms. Karis's lettering categories, this letter also points out where there may be disputes on any other categories.

      A.    *Rule 30(b)(6) witnesses.*

      This category does not appear to be in dispute at this time (other than the custodial file issue). For comparison's sake, the U.S. is putting up 12 witnesses as 30(b)(6) designees, compared to BPXP's six. Beyond those 12 are several additional designees who would be required depending on how the Court rules on Topics 1, 2(a), 4, 5, and 6.

      B.    *BPXP's "May call" Fact witnesses.*

      For this category, we have asked BPXP to either: (1) provide a proposed deposition date; or (2) drop the witness from its "may call" list, in which case the deposition need not be set and no custodial file need be produced. From our view, these 6 witnesses are entirely in BPXP's discretion to put up or pull down, and BPXP decides whether the deposition goes forward. BPXP has never clearly agreed with or objected to our request to set dates for (or drop) Wallace, Zimmer, Cross or Taylor.[1] Thus, we do not understand whether these are in dispute.

      Regarding Duane Wilson, BPXP's position is that it "may call" him at trial, but need not produce his custodial file nor set his deposition. In other words, BPXP expects us to cross him "blind" at trial. This position is plainly contrary to the Rules. BPXP added Mr. Wilson to its initial disclosures after the hearing on March 21, so the United States could not have anticipated

---

[1] BP has provided a deposition date for Dr. Heron.

1

at that time that BPXP would seek to supplement the extensive fact discovery taken with respect to the BP Texas City refinery incident in Phase One. Again, if BPXP can state that he is not a "may call" witness, the deposition and file need not be produced.

For comparison's sake, the US has three "may call; witnesses, and will produce them for deposition (two of whom are also 30(b)(6) designees).

     C.    *Bamfield and Hogue.*

Under the current bidding, BPXP will get the depositions of 19 US witness (and several more if the Court rules against us on the disputed 30(b)(6) topics), while the U.S. gets 16 depositions of BP witness (or as few as 10, if BPXP drops the Category B witnesses from its "may call" list). Under these circumstances, the question of whether any specific BP witnesses are "unreasonably cumulative" under Rule 26(b)(2)(C) should not even arise. But BPXP has focused on Mr. Bamfield and Mr. Houge as unreasonably cumulative of the other 5 fact witnesses and two 30(b)(6) topics. Oddly, BPXP's position that the seven witnesses from different subsidiaries are cumulative belies its position that the subsidiaries the Group are separate and distinct.[2]

Of the 7 BP fact witnesses the US selected to depose: two are from BP p.l.c., two are from BP Corp. North America Inc., one is from BP's Gulf Coast Restoration Organization, and two are former BPXP Directors. BPXP seems to posit that only one witness from BP p.l.c. is allowed and only one from BPNA, and that BPXP -- not the US -- gets to decide which one.

*Mr. Bamfield.* BPXP argued that Mr. Bamfield is cumulative of Mr. Bucknall. In its Amended Initial Disclosures, BPXP identified Nick Bamfield as the BP p.l.c. Deputy Group Treasurer "who may have information concerning the economic impact of a Clean Water Act penalty on BPXP."   That Mr. Bamfield's has relevant factual knowledge is supported by documents produced by BPXP. For instance, the attached Exhibit A ("BP p.l.c. Group results Second quarter and half year 2010") shows that a portion of the section entitled "Financial Impact of the response," was "**BEING REDRAFTED BY NICK BAMFIELD TO REFLECT LATEST POSITION,**" (emphasis original), and it relates to how BP has flexibility and capitol to meet its financial costs. Meanwhile, Mr. Bucknall's name is nowhere mentioned in the document. *See* BP-HZN-2179MDL07704796-4803.  Indeed, its Mr. Bamfield- not Bucknall – who BP itself cited in an article explaining the importance of BP's centralized treasury:

> BP Treasury, . . . its primary remit is to act as BP's in-house global bank, ensuring it has the right funding, liquidity and currency in the right amount on the right day, and in the right place. This centralisation is key to the way that BP's treasury team interacts with the outside world, according to deputy group treasurer, Nick Bamfield. "The typical model

---

[2] One reason we requested these depositions is to prove that the BP Group entities are so interrelated that the finances of the Group are relevant to the penalty to be paid by BPXP. But, BP itself is the one who keeps this question at issue. If BP would simply stipulate that "BPXP means the BP Group, including BP p.l.c. and its subsidiaries for purposes of the Penalty Phase," or had not opposed our motion in limine on that topic, then our need for this discovery would evaporate. Because BP keeps this at issue, we need the discovery.

2

that we use, wherever we can, is to fund ourselves centrally," he explains. "This allows us to use the strength of the group's balance sheet and credit rating, so that we can issue directly into the global direct capital market. Banks tend to have higher costs of borrowing, so this allows us to go directly to investors issuing bonds."[3]

In 2010, Mr. Bamfield's title is listed as the "VP Corporate Finance & Pension Investments, BP Treasury, reflecting a set of responsibilities that are both relevant and separate from that of the overall Group Treasurer Mr. Bucknall. *See e.g.*BP-HZN-2179MDL06650704, BP-HZN-2179MDL06631173. While stating that Mr. Bucknall has cumulative knowledge, BPXP has thus far produced no documents from his custodial files. In contrast, Mr. Bamfield is identified as the custodian of 44 documents related to projections on BP's finances.

*Mr. Houge* is the "Manager of Group Funding" at BPNA, but BPXP would have us instead be limited to the deposition of Mr. Smith (CFO of BPNA).In its recent preliminary production, the defendant listed Mr. Houge as the custodian for the loans that BPXP produced. Because we are trying to learn about how the BP Group is able to leverage funds across Group entities, the "Manager of Group Funding" seems quite relevant. And frankly, since BPXP picked Mr. Smith over Mr. Houge, it appears that Houge has information that BPXP finds to be not desirable, which is the very point of a discovery deposition.

For comparison's sake, BPXP wants to take the depositions of the following witnesses whom the US is *not* calling at trial:

Captain James Hanzalik (FOSC – Cumulative of Landry and Watson)
Captain Julia Hein (FOSC – Cumulative of Landry, Watson, and Hanzalik)
Captain Duke Walker (FOSC– Cumulative of Landry, Watson, Hanzalik and Hein)
Dr. John Howard (cumulative of 30(b)(6) topic 10)
Dr. Jane Lubchenco (cumulative of 30(b)(6) topic 2, "oil budget" topics, dep. of Henry)
Dr. Jacqueline Michel (cumulative of 30(b)(6) topic 5).

Notably, BPXP is seeking these witnesses to find out what BPXP, itself, did in its own mitigation efforts, as compared to our requests to seek BPXP's secret internal financial information that we otherwise have no knowledge of. We are prepared to produce these witnesses and their files, but if the Court chooses to impose a rule in the Penalty Phase that only "may call" witnesses can be deposed, such a rule should apply equally to the above-listed witnesses, because we have stated that we do not intend to call them at trial. Further, if BPXP's implied "one witness per entity" rule is applied regarding Bamfield and Houge, it should also prohibit most of these depositions.

---

[3] http://www.bp.com/en/global/corporate/press/bp-magazine/issue-four-2011/bp-treasury.html

    D. *Pennington and D. Robertson.*[4]

    This category does not appear to be in dispute at this time (other than the custodial file issue).

                 Respectfully submitted,

                 /s/ Steve O'Rourke
                 Steven O'Rourke

cc: Mike O'Keefe, Law Clerk to Magistrate Judge Shushan
   BPXP Penalty Phase Counsel
   APC Penalty Phase Counsel

---

[4] These witnesses have both sat during the incident on the BPXP Board of Directors, who BP claims oversaw the operations of the company, yet they have never been deposed nor have their files been searched and produced.. See BPXP's Opp. Pl.'s MIL Re: BP Entities at 4 (Rec. Doc. 12465).