

**U.S. Department of Justice**
Environment and Natural Resources Division
Environmental Enforcement Section

90-5-1-1-10026
_____

*Steven O'Rourke*  *Telephone (202) 514-2779*
*U.S. Mail: P.O. Box 7611, Washington, DC 20044-7611*  *Facsimile (202) 514-2583*
*Overnight Mail: 601 D Street N.W., Washington, DC, 20004*
*E-mail: steve.o'rourke@usdoj.gov*

April 10, 2013

<u>**Via E-Mail**</u>
Honorable Sally Shushan
United States Magistrate Judge
Eastern District of Louisiana

Re:   *US v. BP & APC*, 10-4536 Penalty Phase:  Quashing 5 fact depositions.

Dear Judge Shushan:

I write regarding five specific fact witness depositions.

For the following three witnesses, the burden of a deposition outweighs any benefit they would provide to the Court and the parties in the form of unique information relating to issues of factual dispute that will be tried in this phase. These are current or former high-ranking government officials whose testimony is unlikely to be helpful in resolving disputed facts. BP should not be permitted to depose the following witnesses:

- Admiral Paul Zukunft (Commandant, USCG)
- Rear Admiral Steven Poulin (JAG, USCG)
- Dr. Jane Lubchenco (former Administrator, NOAA)

Two other witnesses are individuals who are exclusively working on the ongoing Natural Resource Damages (NRD) Assessment, and thus BP's request for their depositions is a transparent attempt to evade the Court's clear direction against litigating the NRD case during this Phase. BP should not be permitted to depose the following witnesses:

- Dr. Robert Haddad (chief of NOAA's NRD Assessment Division)
- Dr. Jacqueline Michel (expert witness on NRD)
- Note that Dr. Lubchenco, as head of NOAA, also worked on NRD matters.

1. **Current and Former High-Level Government Officials**

The scope of permissible fact discovery under Rule 26 is not absolute. Fact discovery may be curtailed when "the burden or expense of the proposed discovery outweighs its likely benefit…" Fed. R. Civ. P. 26(b)(2)(C)(iii). Similarly, a protective order preventing discovery

1

may be issued to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…" Fed. R. Civ. P. 26(C)(1).

As the Court is aware, the United States has been willing, in appropriate circumstances, to permit the deposition of high-level officials when the need for their testimony is necessary to illuminate disputed issues. The Depositions of Secretary Steve Chu, Dr. Marcia McNutt, and Admiral James Watson went forward because BP and the aligned parties sought factual information regarding disputed issues. After meeting and conferring with BP, the United States has agreed to produce for a deposition in this Phase Dr. John Howard, who is currently the Director of the National Institute for Occupational Safety and Health.

This does not mean, however, that BP should have *carte blanche* to depose any current or former high-level agency officials it likes. In the case of current high-level government officials, such depositions pose the distinct risk of disrupting agency operations. Thus, they should only occur if the testimony needed truly casts light on important, disputed issues. *See Alexander v. F.B.I.,* 541 F. Supp. 2d. 273, 274 (D.D.C. 2008); *Cf. Babin v. Breaux*, 2012 WL 83672, (M.D. La., Jan. 11, 2012) (denying deposition of Governor on the grounds that he was indirectly connected to events at issue and superior discovery alternatives, including document discovery and a 30(b)(6) deposition, existed). Here, the proposed 30(b)(6) depositions of the United States, combined with the voluminous document productions that have been or will be produced, are more than sufficient to provide BP with the information it is seeking.

Admiral Paul Zukunft is presently in line to become the next Commandant of the Coast Guard. He is scheduled to assume this command in June. Therefore, a deposition during the time period June 9-July 18 would significantly interfere with Admiral Zukunft's considerable duties as he completes his transition into this role.

Further, based on the issues in dispute, his deposition is not necessary. Admiral Zukunft was the Federal On-Scene Coordinator for the Spill for the period of July 12, 2010 through December 17, 2010. The well was shut in and dispersant applications ceased within the first few days of Admiral Zukunft's tenure. To the extent BP seeks information about the Admiral's impressions of the scope of the environmental harm posed by the spill and the effectiveness of mitigation measures, Admiral Zukunft largely relied upon the observations of the myriad responders regarding the extent of the threat posed by the spill and the effectiveness of the response. Those observations and reports have long since been produced to BP. Indeed, many of the underlying facts are the subject of stipulations, and the reports issued are topics on BP and Anadarko's proposed 30(b)(6) notice to the United States.

To the extent BP decides that it nonetheless needs personal testimony from a Federal On-Scene Coordinator (FOSC), there are <u>five</u> other FOSCs on BP's revised 26(a) disclosures.[1] BP has already deposed the two FOSCs whose tenures immediately pre-dated Admiral Zukunft.[2] To put it another way, BP is seeking the depositions of six FOSCs. The United States has been willing to produce witnesses with personal knowledge of disputed issues, but the number of

---

[1] These include, in order of tenure as FOSC: Captain Lincoln Stroh, Captain James Hanzalik, Captain Julia Hein, Captain Duke Walker, and Captain Thomas Sparks. BP requested the depositions of Hanzalik, Hein and Walker.
[2] Rear Admiral Mary Landry and Admiral James Watson.

2

FOSC witnesses ensures duplication and wasteful effort. The marginal benefit that may accrue to the parties from Admiral Zukunft's testimony (and likely the testimony of most of the other FOSCs as well) is vastly outweighed by the burden to the Coast Guard as its new Commandant assumes command at the outset of hurricane season.

Similarly, <u>Rear Admiral Steven Poulin</u> has recently assumed the role of Judge Advocate General of the Coast Guard. Thus, it will be a significant burden on the Coast Guard for Admiral Poulin to appear for a deposition. The issues of attorney-client privilege and attorney work product are acute in this context – these pose challenges analogous to what an in-house counsel would face if he or she were deposed.

The Fifth Circuit has applied a three-part test to determine whether in-house counsel should be deposed. The deposition is only appropriate if "no other means exist to obtain the information, the information sought is relevant and non-privileged, and the information is crucial to the preparation of the case." *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cr. 1999). Here, BP fails on both the first and third prongs of the test. Rear Admiral Poulin, much like Admiral Zukunft, did occupy an operational role during the response, but for largely the same reasons, his testimony is highly unlikely to add any new information to the case. Any observations of environmental effects, or the effectiveness of response activities, within his area of command by first-hand observers have been documented and produced, and many of the underlying facts are the subject of stipulations that either have been or are in the process of being negotiated. There is unlikely to be significant new information that is relevant to a disputed issue from this deposition. The difference with *Nguyen* is stark. In that case, the defendant asserted a good-faith affirmative defense to an FLSA suit. *Id.* at 203. The plaintiff had already exhausted alternative avenues of discovery regarding the basis for that defense, and in-house counsel was the sole available source of information relating to the insurer's good faith affirmative defense. *Id.* at 208-09. That is the paradigmatic example for when the deposition of an attorney is appropriate. Here, by contrast, with ample alternative avenues of discovery available, BP cannot meet its burden, and this deposition should not go forward.

Finally, <u>Dr. Jane Lubchenco</u> was involved in the response as the Administrator of NOAA. BP has indicated it believes she has information relevant to the impact of the spill on the environment. Judge Barbier has indicated that this information is of limited relevance to this phase, and is more properly part of the NRD phase of litigation. Even to the extent that this information is relevant to the Penalty phase, Dr. Lubchenco is not an appropriate witness. While she is no longer the agency head (and thus the agency would not suffer the same disruptive effect as it would with the Coast Guard depositions listed above), the witness herself should not be forced to bear the significant personal burden that would come with preparing and appearing for a deposition like this one.

NOAA was involved in a sprawling array of issues related to the spill response, from weather tracking to seafood safety to data management, and BP has not identified with any sort of specificity what issues it believes Dr. Lubchenco may be able to testify about. Dr. Lubchenco has publicly summarized the various applications of science that government agencies brought to

the response,[3] but as the agency's Administrator at the time, Dr. Lubchenco was not the person performing the actual, on-the-ground scientific work. Furthermore, all of NOAA's scientific work during the response has long since been publicly disseminated, and to the best of our understanding, the underlying facts are not subject to substantial dispute. Much of this work, including certain reports written or co-written by NOAA staff (namely, the Operational Science Advisory Team Reports and the Oil Budget Calculator) are the subject of BP and Anadarko's proposed 30(b)(6) notice, and this is the most appropriate avenue for BP to obtain testimony about NOAA's work during the response as it relates to environmental recovery. There is quite simply very little, relevant information that BP is likely to obtain from Dr. Lubchenco on these issues. Given the personal burden likely to be incurred by Dr. Lubchenco to adequately prepare and appear for a deposition at which BP is unlikely to obtain any new significant information, this deposition should not go forward. Moreover, Dr. Lubchenco was involved at NOAA in discussions regarding NRD, the topic of the following section, which is another reason her deposition should be prohibited.

### 2. BP's Improper Attempt to Obtain NRD Discovery

Dr. Robert Haddad and Dr. Jacqueline Michel are an employee and contractor, respectively, of NOAA, who are currently involved in conducting the NRD Assessment.

Dr. Michel is a contractor who is working full-time in support of NOAA's NRD Assessment. As such, a deposition of Dr. Michel would inevitably veer into this ongoing NRD work, given how eager BP has been to pull the NRD case into the Penalty Phase. Thus, Dr. Michel should not be deposed at this time. During the response, Dr. Michel was involved in the Shoreline Cleanup Assessment Technique (SCAT) efforts, which sought to collect data on the degree and extent of shoreline oiling. To the extent that discovery into the SCAT work is permissible Penalty phase discovery rather than premature NRD discovery, BP and Anadarko will be able to obtain testimony such testimony via 30(b)(6) deposition. A 30(b)(6) deposition, rather than a fact deposition, would enable BP to discover relevant information, but in a manner that would ensure that the case does not veer into premature NRD discovery.

BP has indicated that one of the reasons it wants a deposition of Dr. Michel is to determine whether she "overheard" any positive comments about BP during the response. This feeble rationale is grossly insufficient to justify the deposition of any witness. Whatever comment that was overheard (if there were in fact any) would certainly be hearsay, and would carry almost no relevance to any issues in dispute this phase. The United States is not alleging that BP violated FOSC or NIC directives (other than those activities which resulted in criminal sanctions), and BP's role in the response has been discussed publicly by numerous United States witnesses and reports. BP should not be permitted to take depositions simply to shake the trees to try to find statements that are duplicative and largely irrelevant to the issues of this case.

---

[3] Jane Lubchenco et al., "Science in Support of the *Deepwater Horizon* Response," *Proceedings of the National Academy of Sciences*, published online ahead of print Dec. 3, 2012, *available at* http://www.pnas.org/content/early/2012/11/29/1204729109 (last visited April 14, 2014).

4

      <u>Dr. Haddad</u>,[4] as Chief of NOAA's Assessment and Restoration Division, is the head of NOAA's NRD efforts. He has been almost exclusively working on NRD matters since May 2010. His involvement in the response was minor, and was primarily ensuring that NOAA's NRD work was consistent with its response science work. He played a role in winding down NOAA's response-specific Science Group, and in that capacity he reviewed the first OSAT Report. BP and Anadarko have proposed a 30(b)(6) topic on the OSAT-1 Report, and thus the United States will produce a 30(b)(6) witness will be able to testify fully as to that report. In summary, Dr. Haddad's testimony will not be needed to fill any factual or evidentiary gaps. The United States has offered an alternative fact witness, Dr. Carl Childs, who is knowledgeable about the OSAT Reports and the SCAT work, as someone who could testify about these matters without the attendant risk of premature NRD discovery. BP has indicated that it believes Dr. Childs (along with any additional 30(b)(6) witnesses) may be a replacement for Dr. Haddad, with certain conditions. It is possible that this could be worked out, but the United States will oppose any effort whereby BP ends up taking the Childs deposition and then seeks that of Dr. Haddad.

      In summary, BP continues to try to turn a relatively straightforward penalty trial into an NRD case, in contravention of clear direction from the Court. The depositions of Dr. Haddad and Dr. Michel are for the transparent purpose of invading the ongoing NRD Assessment and dragging NRD issues into this phase of trial. The response work of these individuals can be easily covered in 30(b)(6) depositions, and by Mr. Childs. There is minimal legitimate purpose for fact depositions of these witnesses, and they should not go forward during this phase of the case.

                                Respectfully submitted,

                                <u>/s/ Steve O'Rourke</u>
                                Steven O'Rourke

cc:    Mike O'Keefe, Law Clerk to Magistrate Judge Shushan
       BP Penalty Phase Counsel
       APC Penalty Phase Counsel

---

[4] After BP's First Amended Initial Disclosures listed these witnesses (among others), we notified BP of our objections on April 25, 2014. The parties have had discussions since then, but have not been able to resolve the issue. On May 12, BP specifically asked for the deposition of "Dr. Robert Haddad/Dr. Carl Childs" so there may be some partial resolution.