# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

Matthew T. Regan, P.C.
To Call Writer Directly:
(312) 862-2431
matthew.regan@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

May 15, 2014

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
500 Poydras Street, Room B-345
New Orleans, LA  70130

Re:   MDL 2179: Test Case Draft Scheduling Order

Dear Judge Shushan:

In accordance with Your Honor's request, please accept this letter as BP's response to the issues raised in the Court's email of May 13, 2014 and in advance of today's 2:00 p.m. telephonic conference.

At the threshold, BP does not believe that the PSC's proposal of segregating discovery and summary judgment for the seven test cases into a narrower subset of "common issues" – however defined – is warranted or consistent with the goal the test cases are intended to promote: presentation of OPA causation issues, including the issue of losses claimed as a result of the federal moratoria and other broad regulatory actions, in the context of specific facts.  As Judge Barbier noted in denying a motion to dismiss on pure legal grounds, OPA causation is a "highly factual analysis," claims under OPA are "fact specific," and moratoria loss claims present an an "attenuated causation analysis" that will need to be scrutinized. *See Rec. Doc. 3830, July 26, 2011 Order and Reasons as to Motions to Dismiss the B1 Master Complaint at 32, 33*.  The scheduling order for the preparation of the test cases thus should be oriented to presenting the most complete and specific factual record on these issues to the Court for summary judgment.

Consistent with those goals, to date the parties and Your Honor have gone through an extensive effort to identify a diverse set of test case plaintiffs from a range of industry segments precisely for the purpose of framing the breadth of "fact specific" questions that can arise from OPA damages claims.  To conduct the highly factual analysis of attenuated causation arguments at issue, Judge Barbier will require a fulsome understanding of the test case plaintiffs' companies, their industries, and their historical business performance in those industries.  The Court will also need to receive from plaintiffs a detailed proof of the specific claimed losses, to determine the alleged source of those losses, and whether the losses from such events are recoverable under OPA or not.  It would be inconsistent and counterproductive to now take those

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 15, 2014
Page 2

seven plaintiffs and *limit* fact and/or expert discovery on their OPA claims to a smaller number of "common issues" prior to summary judgment. Nor would it be efficient; under the PSC proposal, using "common issues" would lead to a less complete record for summary judgment and a longer time period to resolve the test cases.

As to legal issues, clearly there are fundamental legal questions that will be the focus of these test cases, just as was presented at the motion to dismiss stage. The parties have significant differences as to the proper interpretation of the OPA statutory language and its application to facts established for each test case plaintiff. The Court has already denied a motion to dismiss on pure legal grounds, and made clear that the facts will be a key component of evaluating the legal contours of these claims. For this reason, while one can frame a generic common issue such as "what is the standard of causation under OPA," or "what qualifies under the law as an 'incident' under OPA," or "is a plaintiff's failure to allege a qualifying 'incident' under OPA a failure of proof or an affirmative defense," attempts to add further detail to the most basic legal or legal/fact questions necessarily turns into a legal debate that should be reserved for the parties' respective summary judgment filings, where there will be citations to authority and the developed factual record.

The PSC told the Court on Tuesday that it believes individual damages "quantum" proofs represent separate, individual issues that should not be part of the first round of expert discovery or before the Court for summary judgment because they are too individualized or in the "weeds." However, the motion to dismiss hearing and order, and the Court's subsequent request for this test case procedure, make clear that such individualized factual detail is precisely the kind of information necessary to frame and resolve the Moratoria Loss and other OPA damages legal issues in play. Test case discovery on quantum should be conducted now in order to *highlight* the individualized facts and allow the Court to examine what these seven plaintiffs have specifically identified as their damages – including the precise source, the timing of alleged damage, and the amount. For test case plaintiffs who are class members, this specificity is of critical importance to determine if they have even articulated a Moratoria Loss independent of other claimed damages.

With a specific record, the Court can then evaluate whether the alleged damages in part or whole qualify for recovery under OPA, which in turn will give the parties guidance as to how the law may apply to other non-test case claims. If there is no specific statement in the record by the test case plaintiffs at the time of summary judgment as to what each alleges as its specific damages claims – including source, timing, and amount – the Court will not have the specific facts necessary to evaluate many of the significant legal issues on OPA application and causation implicated by the fact specific claims.

Taken together, the "highly factual" nature of these claims, the "attenuated causation analysis," and the significant legal disagreements about the interpretation of the statute at issue make any bifurcation of discovery to specific "common issues" at odds with the test-case

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 15, 2014
Page 3

concept. The better approach is for full discovery and summary judgment to take place. After that occurs, the parties and the Court can revisit the question of common trials among the seven plaintiffs. The parties will have guidance from the Court based on its full evaluation of the factual and legal merit of the seven plaintiffs' claims, and the parties can determine if trial efficiencies can be gained by combining certain issues or facts from more than one test case plaintiff for subsequent trial.

Turning to the four specific questions identified in Your Honor's email, and subject to BP's objection to common issues limitations on discovery discussed above and during the telephonic hearing on Tuesday, the Court's first question asked for BP's reaction to the list of PSC common issues in its submission to the Court. Thus:

1.      BP believes that the subject matter of PSC's first proposed common issue can be subject to stipulation, but would use a simpler formulation that, BP, as lessee of the area in which the *Deepwater Horizon* MODU offshore facility was located, is a responsible party under OPA.

2.      The PSC's second common issue and its broad statement regarding the extent and location of oiling is the subject of other proceedings in this case where the specific location and impact of oil will be litigated, and therefore could have consequences beyond what is intended. There may be alternative stipulations that could be reached as to the specific circumstances of each test case plaintiff, but as framed, this alleged common issue is too broad.

3.      The PSC's third common issue implicates mixed questions of fact and law for resolution. Importantly, the PSC's third common issue does not accurately quote the language of OPA. Instead, the PSC has paraphrased the requirements of OPA, and thus presented not the statute but its legal interpretation of the statute in the statement of the "common issue." If there is a common issue about OPA, it should only employ the statutory language. One framework would be "Can each/any of the test claimants satisfy the requirements that would demonstrate that they have a meritorious cause of action under 33 U.S.C. 2702(b)(2)(E)?" More specifically, in order to establish OPA liability, the test case plaintiff will have to prove that the damages qualify under section 2702(b) and are "due to the injury, destruction or loss of real property, personal property or natural resources." In addition, a test case plaintiff will also have to establish that any claimed injury is "as a result" of an OPA "incident" under section 2702(a). The scope and definition of whether a plaintiff's alleged injuries, once specified, are "as a result of" an OPA "incident" and whether any alleged damages are "due to" damage to property or natural resources are both factual and legal questions for resolution by the Court. Such analysis will be tied to the specific facts of each claimant's alleged damages as well as the legal questions of the scope of "incident," the scope of "due to," and other statutory requirements of OPA.

Equally important, for test case plaintiffs that are participants in the Court Supervised Settlement Program (CSSP), such plaintiffs must specifically identify and produce evidence to support what portion of their alleged damages are a "Moratoria Loss" defined as "any loss

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 15, 2014
Page 4

whatsoever caused by or resulting from federal regulatory action or inaction directed at offshore oil industry activity – including shallow water and deepwater activity – that occurred after May 28, 2010, including the federal moratoria on offshore permitting and drilling activities imposed on May 28, 2010 and July 12, 2010 and new or revised safety rules, regulations, inspections or permitting practices." Such losses need to be specifically identified and the evidence supporting such losses put forth *before* summary judgment, to then frame the legal issues for the Court of whether (i) such Moratoria Losses exist for these CSSP participants and (ii) are compensable. It may be that non-class member test case plaintiffs also claim a Moratoria Loss or non-Moratoria loss, for which specific proof will also be required to determine if the loss is compensable under the language and causation standards applicable to OPA.

    4. As to PSC fourth and fifth common issues with respect to affirmative defenses, BP agrees that whether a superseding and intervening cause defense is available under OPA is a legal question. However, under Fifth Circuit precedent, proving a superseding and intervening cause defense – such as those set forth in PSC common issue five – is question of fact. *Becker v. Tidewater, Inc.*, 586 F.3d 358, 372 (5th Cir. 2009). Taken together, this renders the question of affirmative defenses a mixed question of fact and law. In addition, BP believes that the test case plaintiffs will need to put forth evidence of their specifically claimed damages to show that such damages meet the threshold requirements for recovery under OPA – which is not an affirmative defense but rather a burden borne by plaintiffs alone. With respect to the federal moratorium, by example, BP does not agree that the moratorium only bears relevance as a superseding or intervening cause. Instead, at most, BP need only show that the moratorium, and not the spill, was the cause of some particular quantum of damages of the test case plaintiffs. The burden of proof and persuasion as to the overall issue of OPA causation rests on plaintiffs and cannot be shifted to BP. Plaintiffs effectively attempt to shift the burden of proof as to moratoria issues, for instance, by framing BP's potential defenses as affirmative defenses as opposed to the fact that it is the plaintiffs who must show that any claimed damages they assert are caused by the spill.

    A different framing of issues 4 and 5 could present the question: "Are BP's defenses to OPA liability based on causation by the Deepwater Moratorium, the slowing and/or stopping of Shallow Water Permits with respect to oil and gas exploration in the Gulf of Mexico, and/or other specified issues, defenses based on a failure by a particular plaintiff to carry its burdens of proof and persuasion to establish OPA causation as to that claimant's assertion of a cause of action under 33 U.S.C. 2702(b)(2)(E) or, alternatively, to prevail on those defenses does BP have the burden to establish that the foregoing events were superseding or intervening causes of the loss of a particular plaintiff?" As we stated on Tuesday, because the parties do not agree on whether such defenses are in fact "affirmative defenses" in whole or part, it is difficult to have a scheduling order that sets expert report deadlines on the basis of whether or not something is an affirmative defense. Instead, the simpler approach is for the PSC to present its expert reports as plaintiff, BP can then present its expert reports as defendant, and the PSC can reply. The Court can then answer the PSC's "affirmative defense" legal question as part of summary judgment

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 15, 2014
Page 5

with a full factual record, and make the legal burden clear for particular defenses for any necessary trials thereafter.

Finally, if there is no detailed presentation by plaintiffs as to the amount and specific timing of a plaintiff's alleged damages, it will be difficult to evaluate whether and to what extent an affirmative defense applies to that alleged, specified loss. This is another reason why plaintiffs should be required to present their specific damages experts before summary judgment.

The Court has also asked BP to prepare a list of "common issues." As set forth above, BP disagrees that it is appropriate to identify common issues for the purpose of bifurcating pre-trial discovery preparations. However, at this preliminary stage, there are areas that BP anticipates would be relevant to more than one test case trial:

- Can each/any of the test claimants satisfy the requirements that would demonstrate that they have a meritorious cause of action under 33 U.S.C. 2702(b)(2)(E)?

- Does the event from which plaintiffs' specific damages arise qualify as an "incident" under OPA? This is a combined question of law and fact focused on what an individual claims is the incident that caused the damages as well as the timing and amount of specific damages claimed.

- What causation standard applies to pure economic loss damages under OPA and what facts are necessary to establish the highly factual link for attenuated causation such as moratoria claims?

- For test case plaintiffs that are participants in the Court Supervised Settlement Program (CSSP), have such plaintiffs specifically identified and produced evidence to prove that a portion of their alleged damages are a "Moratoria Loss" defined as "any loss whatsoever caused by or resulting from federal regulatory action or inaction directed at offshore oil industry activity – including shallow water and deepwater activity – that occurred after May 28, 2010, including the federal moratoria on offshore permitting and drilling activities imposed on May 28, 2010 and July 12, 2010 and new or revised safety rules, regulations, inspections or permitting practices," and if such Moratoria Losses have been demonstrated, are such losses legally compensable under OPA?

- Are BP's defenses to OPA liability based on causation by the Deepwater Moratorium, the slowing and/or stopping of Shallow Water Permits with respect to oil and gas exploration in the Gulf of Mexico, and/or other specified issues, defenses based on a failure by a particular plaintiff to carry its burdens of proof and persuasion to establish OPA causation as to that claimant's assertion of a cause of action under 33 U.S.C. 2702(b)(2)(E) or, alternatively, to prevail on those defenses does BP have the burden to

**KIRKLAND & ELLIS LLP**

The Honorable Sally Shushan
May 15, 2014
Page 6

       establish that the foregoing events were superseding or intervening causes of the loss of a particular plaintiff?

- For plaintiffs that can meet the definition of "incident" and other threshold requirements under OPA, is there an intervening and/or superseding cause of the damages being alleged by the plaintiff? This is a mixed question of law and fact focused, again, on what an individual plaintiff claims as damages and what the precise event that allegedly caused those damages.

- Within certain industries applicable to the test case plaintiffs, have there been macroeconomic shifts that are relevant to the performance and viability of their business, *i.e.* a shift away from shallow gas drilling in the Gulf of Mexico to on-shore drilling due to the massive expansion of on-shore hydraulic fracturing ("fracking")?

- Once the plaintiffs articulate the time period in which they claim damages have occurred, are those time periods of alleged damage too remote to be recoverable under OPA?

- Did any physical oil from MC252 or threat of physical oil from MC252 impact a test case plaintiff's business or did test case plaintiff's alleged damages arise from oil, or the threat of oil, from other sources?

- Have the plaintiffs alleged a substantial and sufficiently well-defined threat of oil to trigger OPA liability?

- Have the test case plaintiffs mitigated their alleged damages and/or benefitted from oil spill effects and response efforts, macroeconomic changes in the Gulf oil industry, the Government action in the summer of 2010 or from changes in regulations?

- How did the test case plaintiffs' independent business decisions (i.e. level of borrowing, financing decisions, loss of contracts to other test case plaintiffs, acquisitions made, asset disposals, changes in leadership, new business segment growth, shutting down old business segments, etc.) impact their business performance during the time period the plaintiff now asserts it suffered a loss compensable under OPA?

This list may be over or under inclusive, given that no discovery has taken place and that only the PSC has access to the details underlying the specific claims that will be alleged by the test case plaintiffs. The list is, however, representative of the types of mixed fact and law inquiries that BP expects the parties will present at summary judgment as to some or all plaintiffs.

       Finally, the Court has also asked BP to identify its potential affirmative defenses. Without having the opportunity to review the test case plaintiffs' forthcoming amended complaints as contemplated by the draft scheduling order, and without waiver of additional

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 15, 2014
Page 7

defenses that BP may present in response to those forthcoming complaints, BP anticipates that it will pursue the first, third, fifth, sixth, seventh, fifteenth, sixteenth, twentieth, twenty-third and twenty-fifth affirmative defenses as identified in its September 9, 2011 Answer to First Amended B1 Master Complaint.  Those defenses are:

FIRST DEFENSE:  The allegations of the Complaint fail to state a claim upon which relief may be granted.

THIRD DEFENSE:  Plaintiffs' damages or injuries, if any, were the result of an occurrence and/or accident unforeseeable by the BP Parties and for which the BP Parties cannot be held legally responsible.

FIFTH DEFENSE:  Any alleged negligence by the BP Parties, which the BP Parties specifically deny, was not the proximate cause or sole proximate cause of Plaintiffs' alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged.  Similarly, BP denies that the applicable causal test or tests established by the Oil Pollution Act can be met by the Plaintiffs.

SIXTH DEFENSE:  Plaintiffs' alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which the BP Parties are not legally responsible, and which preclude the finding of liability against the BP Parties.

SEVENTH DEFENSE:  In accordance with the *Exxon Co., U.S.A. v. Sofec, Inc.,* 517 U.S. 830 (1996), one or more superseding and/or intervening causes preclude any finding of liability on the part of the BP parties.

FIFTEENTH DEFENSE:  Plaintiffs' claims are barred, in whole or in part, because Plaintiffs are not entitled under the law to the damages that they seek, the alleged damages sought are too speculative and uncertain, and because of the impossibility of the ascertainment and allocation of such damages.

SIXTEENTH DEFENSE:  Plaintiffs' damages are barred, in whole or in part, by a failure to mitigate damages.

TWENTIETH DEFENSE:  Many of the claims in this Master Complaint fail to comport with one or more requirements of presentment as defined by the Oil Pollution Act of 1990 and its case law.

TWENTY-THIRD DEFENSE:  The BP Parties cannot be held liable for any damages resulting from actions taken pursuant to federal, state, or local government control, direction, delegation, or authorization.  Similarly, the BP Parties may not be held liable for any damages

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 15, 2014
Page 8

resulting from the actions of any BP Parties exacerbated by federal, state, or local government actions.

   TWENTY-FIFTH DEFENSE:  To the extent the BP Parties are found liable to Plaintiffs for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by any prior payment to and/or release of liability from Plaintiffs who received funds through the BP claims process and/or the GCCF.  Furthermore, any settled claims accompanied by releases of rights against the BP Parties may no longer be maintained.

   As always, we appreciate the Court's time and consideration in this matter.

                Respectfully submitted,

                /s/ Matthew T. Regan, P.C.

                Matthew T. Regan, P.C.

cc (via electronic mail):

  PSC via:
  Jim Roy, Steve Herman, Paul Sterbcow and
  Duke Williams