

**U.S. Department of Justice**

Environment and Natural Resources Division
Environmental Enforcement Section

90-5-1-1-10026

*Steven O'Rourke*  *Telephone (202) 514-2779*
*U.S. Mail: P.O. Box 7611, Washington, DC 20044-7611*  *Facsimile (202) 514-2583*
*Overnight Mail: 601 D Street N.W., Washington, DC, 20004*
*E-mail: steve.o'rourke@usdoj.gov*

May 16, 2014

<u>Via E-Mail</u>
Honorable Sally Shushan
United States Magistrate Judge
Eastern District of Louisiana

  Re: *US v. BP & APC*, 10-4536 Penalty Phase: Fact Deposition Issues

Your Honor:

  This letter responds to your May 15, 2014 (4:05 p.m.) email instructing counsel to provide a summary for the 16 witnesses identified in Ms. Karis's email of May 14 at 4:554 p.m. Yesterday, you received a letter from me that provided the requested information regarding the two witnesses in Category "C" (Messrs. Bamfield and Houge), so that information will not be repeated here. This letter will address the other three categories from Ms. Karis' letter. In general, we seek the depositions for one of three reasons: (1) BP designated the witness as a 30(b)(6) (Category A); (2) BP "may call" the witness at trial so we want the deposition to avoid surprise at trial (Category A and B); or (3) the witness may have information regarding financial issues and the relationship between the various BP entities, Judge Barbier authorized at the March 21, 2014 hearing (Category A, C, and D). In some instances the witnesses fit into more than one of those reasons.

  **Category A**: BP identified these witnesses as 30(b)(6) witnesses, so there seems to be no dispute that these depositions should occur. The United States did specifically request the depositions of Mr. Smith, Mr. Robertson, and Mr. Bucknall, so we describe them with more detail.

  1. Richard Morrison: Topics 1 and 2. BP will provide a job description and description.
  2. Laura Folse: Topic 4. BP will provide a job description and description.
  3. Mike Utsler: Topic 7. BP will provide a job description and description.

  4. <u>Brian Smith</u>: Topic 9. US also requested his deposition. BP's disclosures identify Mr. Smith as the "BP Corporation North America Inc, Chief Financial Officer BP America and Vice President Structured Finance Western Hemisphere," and he appears to have held that position since at least 2008.  He is disclosed as having knowledge about BPXP's liabilities related to the spill, financial position of BPXP, and the economic impact of a penalty on BPXP – despite his position in parent companies, not BPXP.  This disclosure indicates Mr. Smith may

1

have knowledge regarding all the parent companies for which Judge Barbier permitted discovery, as his position is associated with several parent companies.  Although his files do not appear to have been searched in previous phases (as he is not identified as a custodian), documents produced with his name indicated he has previously worked in the Gulf of Mexico and may have further knowledge regarding the relationship between the business unit and the corporate entities.

     5.    <u>David Bucknall</u>: Topic 8. US also requested his deposition.  BP's disclosures identify Mr. Bucknall as the BP P.L.C. Group Treasurer with knowledge regarding the economic impact of a penalty on BPXP, despite his position at the parent company, not BPXP. It is not clear how long he has held this position, as documents identify him as taking the position of Executive Assistant to Byron Grote on April 20, 2010. He also, however, in public documents is identified as a recent (2012) Director to multiple BP companies (including parent companies to BPXP) both in the United States and internationally, including BP Capital Markets p.l.c., BP Car Finance Ltd., BP Corporate Holdings Ltd., BP Finance p.l.c, BP Global Investments Ltd, BP Holdings North America Ltd., BP Pipelines Ltd., and BP Shipping Ltd., among others, indicating his access to knowledge of how the BP Group and its affiliates – including BPXP-- relate.  Mr. Bucknall also appears to serve on a BP Executive Board Committee regarding Risk Management after the incident, and therefore has personal knowledge on matters BPXP has identified that it seeks to introduce as "other matters," such as BP's changes to safety after the incident.  Although his custodial files do not appear to have been searched in previous phases (as he is not identified as a custodian), documents produced reflect that Mr. Bucknall also appears to have been directly involved in press releases explaining BP's financial position after the spill, directly relevant to the economic impact factor (no other fact witnesses are referenced).  See BP-HZN-2179MDL04695724.

     6.    <u>Mike Robertson</u>: Topic 10. US also requested his deposition.  Mike Robertson was identified by BP in its Rule 26(a) disclosure as GCRO (Gulf Coast Restoration Organization) Director of Finance and Performance Management and as a person who may have information pertaining to BPXP's liabilities relating to the Incident (including BPXP payment of costs associated with response activities and mitigation efforts), the financial position of BPXP, and/or the economic impact of a Clean Water Act penalty on BPXP.  Mr. Robertson is clearly relevant to BPXP financial issues:  he was the custodian or source of about 9 of the 28 financial documents produced by BP on April 24, 2014, and 14 of the 79 financial documents produced to the United States on May 15, 2014.  These documents included the unaudited financial statements and unaudited final and quarterly reports for BPXP 2011-2013, and the SMOG (standard measurement of oil and gas) forward-looking projections, all of which are some of the key documents that the United States is seeking in discovery and which, according to the file names in the metadata, appear to have been pulled from Mr. Robertson's laptop.  BP has not provided any financial witnesses from BPXP so Mr. Robertson will be critical.

    **Category B**: BP "may call" these witnesses at trial. Accordingly, the United States is entitled to their depositions (and custodial files) to avoid surprise at trial. Because BP has identified them, we expect that BP will provide a job description and description, and provide no further information.

7. Richard Heron
8. Danny Wallace
9. Tom Zimmer
10. Iris Cross
11. Elliott Taylor
12. Duane Wilson (BP has objected, and we addressed that objection in our letter of May 15).

**Category C**:   The United States addressed this category in a letter yesterday, May 15.

13. Nick Bamfield
14. Jared Hogue

**Category D**:

15. Brenda Pennington
16. Denise Robertson

The United States requested the depositions of Brenda Pennington and Denise Robertson. As stated in the United States' Second Amended Disclosures, Brenda Pennington and Denise Robertson likely have knowledge about the connection between the BP entities because they are listed as board members of BPXP, BP America Production Company (BPAPC), and BP Company North America Inc. (BPCNA). According to the State of Delaware Annual franchise Tax Reports, Pennington and Robertson were two of the three members of the BPXP board of directors from 2010-2013 and the only two members of the boards of directors of BPAPC and BPCNA from 2010-2013. During a meet and confer, counsel for BP informed us that BPXP's submissions to the State are correct for 2010-2011, but incorrect for 2012-2013. We still would like to take the depositions of Pennington and Roberts because they were board members during the Incident and Response.

Their testimony may be relevant to several penalty factors including the economic impact of the penalty on the violator; the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge; and any other matters as justice may require. As BP has recognized, the Court should undertake a fact-specific assessment that examines the role of the parents in the operations of the subsidiary, including whether the parent company was siphoning off profits from the subsidiary, as part of assessing whether to consider the financial resources of a parent corporation in evaluating the economic impact of a penalty on a violator. BPXP's Opp. Pl's MIL at 9, Rec. Doc. 12465. Testimony from Tony Hayward, William Castell, Andy Inglis, and others as well as BP plc board and committee minutes show that BP plc was heavily involved in the operation of BPXP. BP has contended that "BPXP's operations are overseen by a Board of six directors." BPXP's Opp. Pl.'s MIL at 4, Rec. Doc. 12465. Documents produced by the defendant yesterday reveal that on December 22, 2009, Pennington and Robertson authorized a $12 billion dividend from BPXP to BPAPC, and that they had also signed off on dividends from BPXP to  BP Products North America Inc. (BPPNA) (see attached). In March 2010, when Pennington was on the BPXP board and authorized a dividend from BPXP to BPPNA, she also was on the BPPNA board. Testimony from BPXP

3

board members Pennington and Robertson is necessary to determine the role, if any, that BPXP played in the decision-making or oversight related to the Incident and Response. Without knowing the role, if any, that Pennington and Denise Robertson played, and without a prior custodial production from them, it is unreasonable to conclude that their deposition testimony would be cumulative.

**Conclusion.**

The United States seeks fact depositions of 7 BP witnesses, plus any Rule 30(b)(6) witnesses and any "may call" witnesses. BP gets fact depositions of 7 US witnesses (albeit with Mr. Childs replacing Dr. Haddad), plus any Rule 30(b)(6) witnesses and any "may call" witnesses. Those terms are equal and fair. If the Court changes those terms, we request that any such changes apply to both sides (*i.e.,* that if BP witnesses are shielded from deposition, so are the US witnesses).

                                      Respectfully submitted,

                                      /s/ Steve O'Rourke
                                      Steven O'Rourke

cc:    Mike O'Keefe, Law Clerk to Magistrate Judge Shushan
       BP Penalty Phase Counsel
       APC Penalty Phase Counsel