**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:   Oil Spill by the Oil Rig "Deepwater Horizon in the Gulf of Mexico," on April 20, 2010 | : : : : | MDL No. 2179  Section J |
| This Document Relates To: 2:10-cv-01768 & 2:10-cv-02454 | : : : | District Judge Barbier Magistrate Judge Shushan |

**JOINT REPLY BRIEF IN SUPPORT OF BP EXPLORATION AND PRODUCTION INC.'S AND BP AMERICA INC.'S MOTION FOR SUMMARY JUDGMENT AND TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC.'S, MOTION FOR SUMMARY JUDGMENT**

Steven L. Roberts
Rachel Giesber Clingman
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002

Kerry J. Miller (Bar # 24562)
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163

Brad D. Brian
Daniel B. Levin
MUNGER TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071

***ATTORNEYS FOR TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC.***

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654

Jeffrey Bossert Clark
Joseph A. Eisert
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

Joel M. Gross
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, DC 20004

Kerri L. Stelcen
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022

***ATTORNEYS FOR BP EXPLORATION AND PRODUCTION INC. AND BP AMERICA INC.***

## TABLE OF CONTENTS
Page

INTRODUCTION ............................................................................................................................ 1
ARGUMENT .................................................................................................................................... 2
    I.    CBD Cannot Avoid the Petroleum Exclusion. ................................................... 2
    II.    EPCRA Also Does Not Apply on Other Statutory Grounds. ......................... 4
        A.    The *Deepwater Horizon* Is Not an EPCRA Facility. .............................................. 4
        B.    EPCRA Does Not Apply to Releases on the Outer Continental Shelf. .................. 5
    III.    Nor Can the Additions of Spacer and Drilling Mud to the Macondo Well Save CBD's Claim. ................................................................................................................. 6
    IV.    CBD's Case Fails to Comport with Article III. ............................................................. 7
        A.    The Fifth Circuit Did Not Relieve CBD of the Duty to Demonstrate Standing. ..... 8
        B.    CBD's Declarations Do Not Establish a Concrete and Particular Injury. .............. 9
        C.    This Case Is Moot Since a New Report Would Provide No Meaningful Relief. ... 9
CONCLUSION ............................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Bankers Assn. v. Nat'l Credit Union Admin.*,
  38 F. Supp. 2d 114 (D.D.C. 1999) .................................................................................... 3

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001) .......................................................................................................... 5

*Cont'l Title Co. v. Peoples Gas Light & Coke Co.*,
  1999 WL 1250666 (N.D. Ill. 1999) .................................................................................. 4

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
  704 F.3d 413 (5th Cir. 2013) ...................................................................................... 1, 10

*Envtl. Conservation Org. v. City of Dallas*,
  529 F.3d 519 (5th Cir. 2008) ............................................................................................ 9

*FOCUS v. Allegheny Cnty. Ct. of Common Pleas*,
  75 F.3d 834 (3d Cir. 1996) ............................................................................................... 8

*Hallstrom v. Tillamook County*,
  493 U.S. 20 (1989) ............................................................................................................ 7

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
  634 F.3d 787 (5th Cir. 2011) ............................................................................................ 8

*In re Condor Ins. Ltd.*,
  601 F.3d 319 (5th Cir. 2010) ............................................................................................ 5

*In re Oil Spill by Oil Rig Deepwater Horizon in the Gulf of Mexico*,
  MDL No. 2179 WL 5960192 (E.D. La. Nov. 28, 2012) .................................................. 7

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .......................................................................................................... 8

*Niecko v. Emro Marketing Co.*,
  769 F. Supp. 973 (E.D. Mich. 1991) ................................................................................ 3

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) .......................................................................................... 3

*Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp.*,
  509 F.3d 216 (5th Cir. 2007) ............................................................................................ 3

*Tex. Comm. on Natural Res. v. Bergland*,
  573 F.2d 201 (5th Cir. 1978) .......................................................................................... 10

*United States v. Gonzalez-Lopez*,
  335 F.3d 793 (8th Cir. 2003) .................................................................................................. 7

*United States v. Nat'l Ass'n of Sec. Dealers, Inc.*,
  422 U.S. 694 (1975) ................................................................................................................ 3

*United States v. Pineiro*,
  470 F.3d 200 (5th Cir. 2006) .................................................................................................. 8

*Wademan v. Concra*,
  13 F. Supp. 2d 295 (N.D.N.Y. 1998) ...................................................................................... 3

*Washington Envtl. Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013) ................................................................................................ 8

*Wilshire Westwood Assocs. v. Atl. Richfield Corp.*,
  881 F.2d 801 (9th Cir. 1989) .............................................................................................. 2, 3

*Wyble v. Gulf S. Pipeline Co.*,
  308 F. Supp. 2d 733 (E.D. Tex. 2004) .................................................................................... 8

**Statutes**

40 C.F.R. § 261.4(b)(5) ................................................................................................................. 7

42 U.S.C. § 11001(b) ................................................................................................................. 5, 6

42 U.S.C. § 11004(b)(1), (c) ......................................................................................................... 5

42 U.S.C. § 11046(d) .................................................................................................................... 7

42 U.S.C. § 11049(4) ................................................................................................................. 4, 5

42 U.S.C. § 9601(14)(F) ............................................................................................................... 4

**Other Authorities**

126 Cong. Rec. H11796 (Rep. Mikulski) .................................................................................... 3

Gulf Region Health Outreach Program Library,
  http://www.gulfregionhealthoutreach.com/Pages/default.aspx ............................................. 10

http://www.epa.gov/ceppo/web/content/reporting/faq_subs.htm
  (last visited May 12, 2014) ..................................................................................................... 3

http://www.epa.gov/superfund/training/hrstrain/htmain/1stat.htm................................................ 2

**INTRODUCTION**

CBD has had nearly four years to prepare its case against BP and Transocean. Yet CBD still can offer **(1)** no precedent even suggesting that EPCRA requires a report for a crude oil spill, much less the most publicized and studied oil spill in history. And even if CBD could sustain such an unprecedented claim under the terms of EPCRA, **(2)** the Defendants should still prevail on summary judgment because CBD's case flunks Article III, which is a threshold barrier to CBD's suit. No statutory provision or legal decision requires BP and Transocean to reduce to a single document information that is — and has been for nearly four years — readily accessible to anyone in the world via the Internet.

CBD's Opposition only further dilutes its claim. CBD has, at this point, conceded away any ability to seek penalties. *See Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 427 (5th Cir. 2013) ("Center abandoned its civil penalty claims in order to obtain a final appealable judgment …."). So all that remains is a request for an injunction, and even that is narrow in the extreme. CBD does not dispute that BP and Transocean provided "immediate notice" of the spill when they notified the National Response Center literally within minutes. CBD seeks an injunction ordering a follow-up "emergency" report describing an oil spill that ended in July 2010. An injunction is an equitable remedy. There is nothing equitable about compelling the performance of an act that benefits no one.

*The Merits.* CBD also has no answer to the petroleum exclusion. In their Motion for Summary Judgment, Defendants showed that the plain language of the statute, every case interpreting that plain language, and the considered views of EPA all confirm that EPCRA's reporting requirement does not apply to crude oil and the constituents it naturally contains. Nevertheless, citing no precedent, CBD argues that the petroleum exclusion does not apply here. Hence, CBD's case boils down to asking the Court untenably to: (a) disregard judicial and EPA interpretation of the petroleum exclusion; (b) effectively rewrite federal regulations to require an element of specific intent that appears nowhere in them; and (c) find Defendants liable for obeying spill response directives issued by the United States.

*Article III.*  Even if CBD could state a statutory claim, however, it still could not escape summary judgment.  The few remaining shards of this case must be viewed through the lens of Article III: even assuming that a follow-up report somehow were required by statute, CBD would still not be entitled to relief because all the information it purports to seek is already available to the public, meaning both that the case is moot and that CBD lacks standing.  The time to close the door on CBD's significantly pruned and now-hollow case has arrived.

## ARGUMENT

### I.  CBD CANNOT AVOID THE PETROLEUM EXCLUSION.

At the outset, CBD's claim falters on the petroleum exclusion.  It is black-letter law that chemicals that comprise crude oil are excluded from CERCLA's definition of "hazardous substances" and so from EPCRA's requirements to report as to such substances.  *See, e.g.*, http://www.epa.gov/superfund/training/hrstrain/htmain/1stat.htm ("Crude petroleum includes a number of hazardous substances that would otherwise be CERCLA hazardous substances, such as benzene, toluene, xylene, and ethylbenzene. . . .  When they are part of, or released directly from, a petroleum product, they cannot be used in scoring.").  In the absence of *any* authority supporting its contention that Defendants were required to report the releases of the benzene, toluene, and xylene in the crude oil here, *see* Opp. at 7 n.3, CBD resorts to accusing a U.S. Court of Appeals of ignoring controlling law, *see id.* at 5, and to dismissing EPA's long-held view as not "rational," *id.* at 5-6.  This Court should reject CBD's position, for at least four reasons:

*First*, were this Court to adopt CBD's view that the chemicals that make up petroleum are outside of the petroleum exclusion, *every* discharge of oil would be actionable under CERCLA and EPCRA because *all* petroleum includes these chemicals.  *See, e.g.*, *Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 803 (9th Cir. 1989) ("We take judicial notice that benzene, toluene, xylene, ethylbenzene and lead also are all indigenous components of crude oil."); CBD's Opposition to BP's UMF ¶ 24 ("the Center admits that benzene, toluene, and xylene are natural components of crude oil").  This result is both absurd and completely contradicted by the legislative history of CERCLA.  *See, e.g.*, 126 Cong. Rec. H11796 (Rep.

Mikulski) ("[T]here are no oil-related provisions [in CERCLA]."). CBD offers no explanation why Congress would purport to exclude petroleum from a reporting requirement with one hand while eviscerating that exclusion with the other hand. Arguments of this type, which render statutory language meaningless, inherently fail. *See, e.g.*, *Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp.*, 509 F.3d 216, 222 (5th Cir. 2007) ("We cannot interpret a statute in such a way as to render significant portions of it a nullity.") (citation omitted).

***Second***, CBD offers no credible reason for this Court to reject the Ninth Circuit's reasoning in *Wilshire*. Instead, CBD resorts to accusing the Ninth Circuit of "interject[ing] its own beliefs" into its statutory analysis. Opp. at 5. Not only is the Ninth Circuit's analysis consistent with ordinary principles of statutory interpretation, but numerous other courts have adopted *Wilshire*'s reasoning. *See e.g.*, *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153-54 (8th Cir. 1999); *Wademan v. Concra*, 13 F. Supp. 2d 295, 302 (N.D.N.Y. 1998). All CBD does is recite its contention that the exclusion is "clear," "plain," and "unambiguous," Opp. at 4-6, and that it does not apply here. CBD's purportedly textual argument has failed before. *Niecko v. Emro Mktg. Co.*, 769 F. Supp. 973 (E.D. Mich. 1991). In *Nieco*, the court rejected an effort to "discredit the holding . . . of *Wilshire Westwood* . . . as an 'aberration' and disregard that decision as contrary to the 'plain meaning' of [CERCLA Section 101(14)]." *Id.* at 982. Instead, the *Nieco* court commended the Ninth Circuit's "thorough analysis."

***Third***, CBD provides no support for its contention that EPA's "decades old" interpretation of the petroleum exclusion is not "rational," other than to announce that the "statute says exactly the opposite." Opp. at 5. Contrary to CBD's suggestion, the age of the EPA interpretation only enhances its merit. *See, e.g.*, *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 132 (D.D.C. 1999) (explaining that a longstanding agency opinion is "entitled to considerable weight" (following *United States v. Nat'l Ass'n of Sec. Dealers, Inc.*, 422 U.S. 694, 719 (1975))). EPA's position is "longstanding" and continues today. *See, e.g.*, http://www.epa.gov/ceppo/web/content/reporting/faq_subs.htm (last visited May 19, 2014) ("EPA interprets CERCLA . . . to exclude crude oil . . . including the hazardous substances, such

as benzene, that are indigenous in those petroleum substances . . . .").

***Finally***, contrary to CBD's claims, the clause on which it relies — "not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph," 42 U.S.C. § 9601(14)(F) — has meaning even if this Court agrees with EPA. This clause merely prevents the release of listed components of refined oil products followed by a releaser's claim that no reporting is needed because the component is a "fraction" of oil. That, quite rightly, is not allowed. *See, e.g.*, *Cont'l Title Co. v. Peoples Gas Light & Coke Co.*, 1999 WL 1250666, at *12 (N.D. Ill. 1999). The clause CBD hangs its hopes on means nothing more. There is no basis to read the clause — as CBD does — as gutting the whole of the exclusion.

## II. <u>EPCRA ALSO DOES NOT APPLY ON OTHER STATUTORY GROUNDS.</u>

### A. <u>The *Deepwater Horizon* Is Not an EPCRA Facility.</u>

CBD's argument that the *Deepwater Horizon* qualified as a "facility" under EPCRA because it was a "stationary item" fails for two reasons. ***First***, the *Deepwater Horizon* was not "stationary." It was a vessel that employed a "complex thruster technology to stabilize itself," Rec. Doc. 3830 at 6, and it was in constant motion in order to maintain its position above the Macondo well in the face of currents and winds. The fact the rig "did not move locations to a new well or drilling site after it began drilling the Macondo Well," Opp. at 10, does not establish generally or on these facts that it was "stationary" when navigating above the Well.[1]

***Second***, there is no merit to CBD's argument that an object that moves under its own power becomes a "stationary item," and thereby a "facility" under EPCRA, if it is temporarily at rest. The *Deepwater Horizon*, well known as a "***M***ODU," is not called a ***mobile*** offshore drilling unit for no reason. The meaning of "stationary item" must be understood with reference to the specific words that precede it — "buildings," "equipment," and "structures," 42 U.S.C. § 11049(4) — all of which are fixed and immobile. *See, e.g.*, *Circuit City Stores, Inc. v. Adams*,

---

[1] CBD notes that a different court held the *Deepwater Horizon* to be a "stationary source" under the Clean Air Act, Opp. at 10. But the Clean Air Act definition of "stationary source" is materially different from EPCRA's definition of "facility," *see* Rec. Doc. 12676-1 at 16 n.13, and that decision is both not binding and under review by the Fifth Circuit. *See* 5th Cir. Case No. 12-20243.

532 U.S. 105, 114-15 (2001). In fact, for purposes of EPCRA's emergency reporting provision, Congress expressly deemed the term "facility" to include certain types of mobile objects — "motor vehicles, rolling stock, and aircraft" — **but not vessels**. *See, e.g.*, *In re Condor Ins. Ltd.*, 601 F.3d 319, 324 (5th Cir. 2010) (when Congress enumerates exceptions, additional exceptions are not to be implied).[2] There is simply no basis to sweep "at rest" vessels into the statutory definition.

### B. EPCRA Does Not Apply to Releases on the Outer Continental Shelf.

CBD argues that because EPCRA requires notification to local and state emergency responders for the areas 'likely to be affected' by a release," "[i]t does not matter if a 'release' subject to the statute occurs on the Outer Continental Shelf if that release is likely to affect local communities …." Opp. at 11 (quoting 42 U.S.C. § 11004(b)(1), (c).). It is CBD, however, not Defendants, that "grossly misread[s] the statute." *Id.* This is true for two reasons.

*First*, there is no indication in the statute that Congress intended EPCRA to apply to releases occurring in exclusive federal enclaves that could impact States. Instead, the statute presumes that all covered releases will occur within state boundaries, as the structure of the statute reveals. Indeed, the statute provides for the creation of multi-state emergency planning districts, and when such a district is created, the States involved "shall indicate which facilities subject to the requirements of this subchapter ***are within such emergency planning district***." 42 U.S.C. § 11001(b) (emphasis added). Needless to say, neither the *Deepwater Horizon* nor the Macondo well could ever be deemed as falling within such a multi-state district because the well and the vessel were both located on the Shelf's exclusive federal enclave when the release of crude oil happened. It is hard to imagine clearer textual and structural evidence that EPCRA is exclusively focused on each State and its subdivisions receiving information about releases within their own boundaries — with a limited exception (first requiring the creation of a multi-

---

[2] CBD argues that a vessel not making way from one location to another is a "stationary item" because it is analogous to "equipment." Opp. at 11. That misunderstands the statute. "Equipment," like all the other examples of "stationary items" in § 11049(4), is not capable of self-propulsion. Congress recognized that objects capable of self-propulsion would not qualify as "stationary items"; for that reason, it included the deeming provision for "motor vehicles, rolling stock, and aircraft." But it deliberately excluded vessels from that second list.

state district) concerning releases from a facility located in one State but also affecting others. The releases upon which CBD bases its claim here fit into neither category.[3]

***Second***, in addition to the strong textual and structural evidence that EPCRA presumes that all sources of releases are housed within state boundaries, CBD ignores the fact that even if EPCRA could apply to facilities scores of miles beyond state borders, there is no indication that the Gulf States took the necessary steps under EPCRA to establish a multi-state emergency planning district. "In emergency planning areas *that involve more than one State, the State emergency response commissions of all potentially affected States may designate emergency planning districts and local emergency planning committees by agreement*." 42 U.S.C. § 11001(b) (emphasis added). Congress thus explicitly contemplated what to do in a situation where multiple States are potentially to be impacted by releases — and Congress did not leave the matter up to any specific State. Here, CBD does not — because it cannot — argue that the impacted States entered into a multi-state agreement to create a multi-state emergency planning district designed to extend miles out into the Gulf — far beyond state boundaries — to police hazardous substance releases that might come ashore.

### III.   NOR CAN THE ADDITIONS OF SPACER AND DRILLING MUD TO THE MACONDO WELL SAVE CBD'S CLAIM.

CBD's whole case hinges on the release of benzene, toluene, and xylene. Opp. at 7 n.3. Hence, unless the Court were to tolerate CBD's apparent desire to dribble out its case, one new substance not referenced in its 60-day notice letter at a time, the petroleum exclusion defense alone is enough of a basis to grant BP and Transocean summary judgment and an exit from this wasteful dispute. However, CBD's reliance on the releases of drilling mud and spacer is equally flawed. *See* Joint Br. in Supp. of Summ. J. Mot. at 11. CBD acknowledges, as it must, that drilling mud and spacer are excluded from CERCLA's definition of hazardous substances. Nonetheless, CBD attempts to duck this obstacle by claiming that additions of these substances were "unrelated to the 'refining process,'" either because too much spacer was "injected by BP

---

[3] Constrained by space limitations, BP rests on prior briefing on its BP-specific argument that the release in this instance did not occur from the Macondo well but from the *Deepwater Horizon*, which BP did not own or operate.

- 6 -

prior to the blowout . . . to *avoid* the reporting and disposal requirements under RCRA," or "to stop the uncontrolled *release* of oil" during the spill response. Opp. at 6-7. Once again, CBD's arguments are non-starters.

Even if Defendants had injected spacer prior to the blowout for the purposes alleged by CBD, it would not alter the applicability of the RCRA exclusion. On its face, the regulation has no intent requirement: it applies whenever wastes are "associated with" crude oil exploration activities. *See* 40 C.F.R. § 261.4(b)(5). Needless to say, a court cannot give effect to language that does not exist. *See, e.g.*, *United States v. Gonzalez-Lopez*, 335 F.3d 793, 798 (8th Cir. 2003) ("We simply cannot read language into the guideline that clearly is not there."). Instead, the Court must take the regulation as EPA wrote it. In any event, BP notes there is no factual evidence of the alleged ill intent. What is cited by CBD — the 2010 testimony of a drilling engineer on the rig — shows that "pills" of a particular size were used for a more benign reason: they already had such pills readily at hand. *See* Rec. Doc. 1819-3, Ex. M (Attached to Ex. 3 to CBD UMF) at 21. Accordingly, the only evidence cited by CBD contradicts its own argument.

Similarly, and perhaps most straightforward of all, any claims related to those substances are barred by EPCRA's 60-day notice requirement because CBD never mentioned them in its notice letters. It is a firm prerequisite to bringing an action under EPCRA that the plaintiff provide a written 60-day notice as required in 42 U.S.C. § 11046(d). *See Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 26 (1989) (explaining in the context of a parallel duty that "compliance with the 60-day notice provision is a mandatory, not optional, condition precedent for suit"). Here, CBD's notice letters did not identify either drilling mud or spacer.[4]

## IV.     CBD'S CASE FAILS TO COMPORT WITH ARTICLE III.

Even were this Court to accept CBD's unprecedented statutory arguments, it would still

---

[4] BP also urges this final point — even if the exclusion did not apply, CBD does not dispute that (1) the United States through the FOSC "exercised ultimate decision-making authority over response activities," *In re Oil Spill by Oil Rig Deepwater Horizon in the Gulf of Mexico*, MDL No. 2179, 2012 WL 5960192, at *9 (E.D. La. Nov. 28, 2012); or that (2) the United States itself is not subject to EPCRA reporting requirements. See CBD UMF Opp. ¶ 30. The activities directed by the FOSC included "Top Kill" — the injection of drilling mud into the Macondo well in an effort to seal it. Because the United States directed the application of most drilling mud and spacer pumped into the well, any associated "release" of such substance is not subject to EPCRA reporting

run afoul of Article III's standing and mootness doctrines.

### A. The Fifth Circuit Did Not Relieve CBD of the Duty to Demonstrate Standing.

CBD claims that by finding that the allegations in CBD's pleadings could survive a motion to dismiss (where general allegations of injury are sufficient), the Fifth Circuit established the "law of the case," precluding this Court from considering standing *at all* on remand. That is not how Article III works. Nothing in the panel's holding disrupts the requirement that "each element of standing . . . be supported with the manner and degree of evidence required *at the successive stages of the litigation*, such that general factual allegations suffice at the pleading stage while *specific facts are required in response to a summary judgment motion*." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 802 n.41 (5th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (emphasis added). Indeed, the law is plain that "plaintiffs upon remand still bear the burden of proving standing whenever it is challenged." *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 839 (3d Cir. 1996); *see also Washington Envtl. Council v. Bellon*, 732 F.3d 1131, 1143 n.6 (9th Cir. 2013) (rejecting standing where a matter "involved a different procedural posture (a motion to dismiss, rather than summary judgment)"). That is the posture here: Defendants challenge — for purposes of summary judgment — the factual basis for CBD's claims of actual harm, and CBD must now come forward with "specific facts." *Lujan*, 504 U.S. at 561.

The lone case cited by CBD, *United States v. Pineiro*, 470 F.3d 200 (5th Cir. 2006), is utterly irrelevant. *Pineiro* does not address standing at all; rather, it addressed whether the "mandate rule," a "specific application of the law of the case doctrine," prevented a sentencing judge, on remand, from recalculating a criminal defendant's total offense level. *Id.* at 203-06. CBD has failed to meet its burden, and that alone is grounds for granting summary judgment for BP and Transocean. *See, e.g.*, *Wyble v. Gulf S. Pipeline Co.*, 308 F. Supp. 2d 733, 745 (E.D. Tex. 2004) (rejecting claim that "denial of a motion to dismiss conclusively established standing for every subsequent phase of the litigation").

### B.  CBD's Declarations Do Not Establish a Concrete and Particular Injury.

Despite CBD's insistence that it has satisfied its burden on summary judgment, *see* Opp. at 1, a closer look at its member declarations proves otherwise. Far from establishing the requisite "concrete and particular" injury to a "substantive" interest, the Scott, Craig, and Keats Declarations assert only that these individuals searched for information that they were unable to find, and that this ***might conceivably*** impact them in the future. Specifically:

- Declarants Scott and Keats aver that they would use the information in an EPCRA report to evaluate their "*potential* health risks" and that each would provide it to his doctor "***if*** [he] became seriously ill with no obvious diagnosis." Scott Decl. ¶ 8; Keats Decl. ¶ 9 (emphasis added). Neither alleges that they have actually suffered any health effects.

- Declarant Craig misses the mark by speculating that "part of the reason" for her sinus infections was "exposure[] . . . to water and air contaminated by oil and dispersants," Craig Decl. ¶ 7, and that the information in an EPCRA report *might* help her doctor "diagnose whether [her] sinus problems are related to exposures to chemicals from the spill," and "assess [her] *potential* risks to other health problems," *id.* ¶ 8 (emphasis added). Ms. Craig does not assert that her physicians have been unable to provide treatment without an EPCRA report; the physicians themselves have likewise not stated that the report is needed.

Equally ineffective are the Declarants' assertions that they contacted the LEPCs in their States earlier this year and requested EPCRA reports submitted by Defendants. *See* Scott Decl. ¶ 9; Keats Decl. ¶ 10; Craig Decl. ¶ 10. Such declarations are useless and circular in that they unsurprisingly state that Declarants could not locate follow-up reports that CBD's counsel well knows BP and Transocean concede do not exist because they were not filed with the LEPCs.

### C.  This Case Is Moot Since a New Report Would Provide No Meaningful Relief.

Moreover, the EPCRA reports CBD seeks to have ordered by this Court would not redress the claimed injuries. Instead, all of the information CBD purports to seek is readily available. This means both that CBD lacks standing and that the claim is moot: after all, "[m]ootness is the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524-25 (5th Cir. 2008) (finding a citizen suit moot).

The Fifth Circuit instructed that the claim here could be moot if "a further order from the district court would provide no meaningful relief to the Center and its members" because the

- 9 -

information required under EPCRA could be easily located elsewhere. *CBD*, 704 F.3d at 430. Now that all the facts are before the Court, it is plain that this case compels precisely that result. CBD attempts to avoid this result by claiming that even if Defendants had provided all of the information required in a follow-up report, they would have violated the statute by virtue of not having provided it "in one document," "available to the public at a specific location." Opp. at 16. This contention misses the point of injury and redressability. BP did far more than provide a single copy of a report to a local planning office: it posted information on the ***world-wide web***.[5]

Aside from formatting and location issues, the only actual deficiencies that CBD alleges in the information provided by Defendants is that it does not: (1) "actually identify any of the discrete hazardous substances involved in the release"; or (2) specify whether any of the substances released are listed in CERCLA Section 102(a). Opp. at 18. ***But CBD's own pleadings already identify the three substances it says should have been reported.*** Indeed, such information appears in the very materials that CBD's Declarant claims to have reviewed. Scott Decl. ¶ 5. The only "relief" an EPCRA report would provide now is information that CBD — and anyone with a computer (or, if computer illiterate, the ability to ask a public librarian to run searches) — can already access. This case is thus moot. On the issue of laches, BP and Transocean are content to stand on the prior briefing. CBD slept on its rights.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motions for summary judgment as to CBD's EPCRA claim.

---

[5] In addition, BP has established the Gulf Region Health Outreach Program Library, http://www.gulfregionhealthoutreach.com/Pages/default.aspx. This repository, implemented as part of the Medical Class Settlement, provides extensive information about the composition of MC-252 oil and dispersants, as well as information on health effects and occupational safety. This library is another repository of information about the spill readily accessible to the public, by the Medical Settlement's very design. BP further notes that courts have recognized the doctrine of "functional equivalence" in the National Environmental Policy Act ("NEPA") context. *See, e.g., Tex. Comm. on Natural Res. v. Bergland*, 573 F.2d 201, 207 (5th Cir. 1978) ("NEPA compliance has not been required when the agency's organic legislation mandated specific procedures for considering the environment that were 'functional equivalents' of the impact statement process"). The existing body of information, including both the prior web materials BP has pointed to in this briefing and the medical library, would readily support a finding that BP and Transocean had made publicly available more than the "functional equivalent" of an EPCRA report.

Dated: May 19, 2014

/s/ Brad D. Brian

Steven L. Roberts
Rachel Giesber Clingman
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002

Kerry J. Miller (Bar # 24562)
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163

Brad D. Brian
Daniel B. Levin
MUNGER TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071

***ATTORNEYS FOR TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC.***

Respectfully submitted,

/s/ Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Jeffrey Bossert Clark
Joseph A. Eisert
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Joel M. Gross
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, DC 20004
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

Kerri L. Stelcen
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 715-1000
Facsimile: (212) 715-1399

***ATTORNEYS FOR BP EXPLORATION AND PRODUCTION INC. AND BP AMERICA INC.***

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 19th day of May, 2014.

                                                     /s/ Don K. Haycraft