UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010<br><br>**This Document Relates to:**<br>**2:10-cv-02454, 2:10-cv-01768** | ) MDL NO. 2179<br>)<br>) SECTION: J<br>)<br>) JUDGE BARBIER<br>) MAG. JUDGE SHUSHAN<br>)<br>)<br>) **REPLY IN SUPPORT OF PLAINTIFF'S**<br>) **MOTION FOR PARTIAL SUMMARY**<br>) **JUDGMENT AGAINST BP DEFENDANTS**<br>) **ON COUNT 7 OF AMENDED**<br>) **COMPLAINT, ECF No. 12673** |

Submitted by:

Charles M. Tebbutt
Daniel C. Snyder
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
Ph: 541-344-3505

## TABLE OF CONTENTS

Table of Authorities .................................................................................................................. ii

Argument .................................................................................................................................... 1

I.   **THE PETROLEUM EXCLUSION IS INAPPLICABLE.** ........................................... 2

II.  **BP INJECTED HAZARDOUS SUBSTANCES INTO THE WELL.** ........................ 5

III. **EPCRA APPLIES TO RELEASES FROM THE MACONDO WELL.** .................... 7

IV.  **THE CENTER HAS STANDING.** ............................................................................. 8

V.   **THE CENTER'S CLAIM IS NOT MOOT** .................................................................. 9

VI.  **LACHES IS LEGALLY AND FACTUALLY UNSUPPORTABLE.** ...................... 10

Conclusion ............................................................................................................................... 10

**TABLE OF AUTHORITIES**

<u>CASES</u>

*Center for Biological Diversity, Inc. v. BP America Prod. Co.*,
    704 F.3d 413 (5th Cir. 2013) ................................................................................8, 9-10

*Center for Biological Diversity, Inc. v. Marina Point Development Co.*,
    566 F.3d 794 (9th Cir. 2009) ................................................................................... 7

*City of New York v. Exxon Corp.*, 766 F. Supp. 177 (S.D. N.Y. 1991) ......................................5-6

*Clinton County Com'rs v. U.S. E.P.A.*, 116 F.3d 1018 (3d Cir. 1997) ..........................................5

*Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*,
    305 F.3d 943 (9th Cir. 2002). ..................................................................................6-7

*Crooks v. Harrelson*, 282 U.S. 55 (1930) ...............................................................................3

*Debham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074 (1st Cir. 1986) ...............5

*Demarest v. Manspeaker*, 498 U.S. 184 (1992) .....................................................................3

*Diversified Services, Inc. v. Simkins Industries, Inc.*, 974 F. Supp. 1448 (S.D. Fla. 1997).......4-5

*Esso Standard Oil Co. (Puerto Rico) v. Rodriguez-Perez*,
    2004 WL 2238894 at *10 (D. P.R. 2004) ..................................................................4-5

*Environmental Def. Fund, Inc. v. Alexander*, 614 F.2d 474 (5th Cir. 1980) ............................. 10

*FEC v. Akins*, 54 U.S. 11 (1998)............................................................................................ 8

*MacDonald v. General Motors Corp.*, 110 F.3d 337 (6th Cir. 1997)......................................... 2

*National Cotton Council of America v. E.P.A.*, 553 F.3d 927 (6th Cir. 2009) ............................5

*Pacific Dawn, LLC v. New Orleans Marine Service, Inc.*, 2012 WL 686034 (E.D. La. 2012).. 10

*Packard v. C.I.R.*, ___ F.3d ___, 2014 WL 1243863 (11th Cir. 2014) .......................................3

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) .......................................................4

*Robbins v. Chronister*, 435 F.3d 1238 (10th Cir. 2006) ..........................................................3

*Sierra Club, Inc. v. Tyson Foods, Inc.*, 299 F. Supp. 2d 693 (W.D. Ky. 2003)............................ 8

*Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998)........................................................ 8

*U.S. v. Alcan Aluminum Corp.,* 964 F.2d 252 (3d Cir. 1992) ............................................. 5-6

*United States v. Rabanal*, 508 F.3d 741 (5th Cir. 2007) ........................................................ 3

*Wademan v. Concra*, 13 F. Supp. 2d 295 (N.D. N.Y. 1998) .................................................. 5

*Wilderness Soc'y, Inc. v. Rey,* 622 F.3d 1251 (9th Cir. 2010) ................................................ 9

*Wilshire Westwood Associates v. Atlantic Richfield Corp.,* 881 F.2d 801 (9th Cir. 1989) ....... 2-4

STATUTES
42 U.S.C. § 9601(14) ............................................................................................... 3, 4, 5

42 U.S.C. § 9601(14)(F) .................................................................................................. 2

42 U.S.C. § 9601(19) ...................................................................................................... 6

42 U.S.C. § 9601(33) ...................................................................................................... 4

42 U.S.C. § 9603(a) ........................................................................................................ 6

42 U.S.C. § 11004 ........................................................................................................... 1

42 U.S.C. § 11004(a) ...................................................................................................... 7

42 U.S.C. § 11004(b) .................................................................................................. 7, 9

42 U.S.C. § 11004(c) ...................................................................................................... 9

42 U.S.C. § 11044 ........................................................................................................... 9

REGULATIONS
40 C.F.R. § 261.4(b)(5) .................................................................................................. 6

40 C.F.R. § 302.4 ................................................................................................... 2, 4, 6

OTHER MATERIALS
132 Cong. Rec. S14932 .................................................................................................. 4

Plaintiff, Center for Biological Diversity (the "Center"), respectfully submits that BP has conceded the elements of the Center's claim in its Response to the Center's Statement of Undisputed Material Facts, ECF No. 12825.  BP only disputes ¶¶ 9, 12, 16, and 19 of the Center's SOMF.  *Id*.  BP has thus admitted that benzene, toluene, and xylene were released at reportable levels under CERCLA and EPCRA *each day* of the spill.  LR 56.2 (material facts admitted unless controverted).   BP also admits that it was the owner of the Macondo Well, a stationary structure located in the United States' jurisdiction, ECF No. 12673-2 at ¶¶ 1-8 ("SOMF"); that oil "flow[ed] from the Macondo Well into the Gulf of Mexico" until July 15, 2010, reaching the Gulf Shore, *id*. at ¶¶ 13-14; that spacer, used drilling muds, and methanol were pumped into the Well, *id*. at ¶¶ 17-18; that no EPCRA reports about these releases have been filed, *id*. at ¶¶ 36-37; and concedes that the Center's members have unsuccessfully searched for EPCRA reports and the type of information that would be contained therein.  *Id*. at ¶ 38.  Based on these admissions, summary judgment should be granted in the Center's favor.

Factually, BP contests its role as an operator of the Macondo Well and the *DWH*.  ECF No. 12825 at ¶¶ 1-7.  But by admitting that it was an owner of the Macondo Well, *supra*, BP has made itself a liable party under EPCRA.  42 U.S.C. § 11004 ("owner *or* operator").  While there may be contested facts over BP's status as an "operator" of the *DWH*, that dispute is immaterial for the present motion, which only targets BP as an "owner" of the Macondo Well, a "facility" under EPCRA.  BP further argues that oil did not "flow from" the Well, but this fact is clearly established by the Court's CWA decision, ECF No. 5809 at 19, 22, and BP's failure to contest Para. 14 of the Center's SOMF ("Oil continued to flow from the Macondo Well and into the Gulf of Mexico until at least July 15, 2010").  BP also asserts that this is a "legal conclusion," ECF No. 12825 at ¶ 9, but that is not the case, for BP admitted the *fact* that "oil **flowed from the**

1

*Macondo Well*, some of which flowed into and upon waters of the Gulf of Mexico[.]" SOMF at ¶ 12. Such a conclusion ordinarily requires "evidentiary proof," and therefore it is not a legal conclusion. *MacDonald v. General Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997). In this case, the relevant facts are admitted.

## I.     THE PETROLEUM EXCLUSION IS INAPPLICABLE.

On its face, the petroleum exclusion is inapplicable to "specifically listed fractions" of crude oil. 42 U.S.C. § 9601(14)(F) states, in no uncertain terms, that:

> The term [hazardous substance] does not include petroleum, including crude oil or any fraction thereof ***which is not otherwise specifically listed or designated as a hazardous substance*** under subparagraphs (A) through (F) of this paragraph…

(emphasis added). Benzene, toluene, and xylene, which are fractions of crude oil, are "specifically listed or designated" as hazardous substances. 40 C.F.R. § 302.4. Under the plain statutory language, they fall outside of the petroleum exclusion and are "hazardous substance[s]" subject to EPCRA's reporting requirements.

The Ninth Circuit's non-binding decision in *Wilshire Westwood Associates v. Atlantic Richfield Corp.*, 881 F.2d 801 (9th Cir. 1989), ignores the words Congress chose when delineating the petroleum exclusion. The Center has extensively briefed the flawed reasoning in *Wilshire Westwood*, ECF No. 12673-3 at pp. 14-18; ECF No. 12820 at 4-5, and has thoroughly explained why this Court should not follow the Ninth Circuit's erroneous statutory construction.

BP asserts that the *Wilshire Westwood* decision rests upon the canon of construction that the words of a statute must be given their plain meaning unless "nonsensical." BP Opposition at 9. It then argues that Center's construction makes the petroleum exclusion "nonsensical" because every discharge of oil would fall outside of the petroleum exclusion. Contrary to the *Wilshire Westwood* decision, Congress meant what it said: if a discharge of crude oil contains

2

fractions that are "otherwise specifically listed" as hazardous substances, then *those fractions are "hazardous substances" under the statute*. Consequently, if those fractions are released in amounts that exceed their reporting thresholds, then CERCLA and EPCRA's emergency notification provisions are triggered. BP conceded as much when it reported releases of benzene from oil burns at the surface of the ocean. ECF No. 1819-1 at ¶ 6 & Ex. A, pp. 1-2.

Furthermore, this plain-meaning construction does not cause an "absurd" result, as BP contends. *United States v. Rabanal*, 508 F.3d 741, 743 (5th Cir. 2007) (plain meaning of statute must be effectuated unless "it leads to an absurd result"). "The absurdity exception to the plain-meaning rule only comes into play where the absurdity is 'so gross as to shock the general moral or common sense.'" *Packard v. C.I.R.*, ___ F.3d ___, 2014 WL 1243863 at *3 (11th Cir. 2014) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)). Put differently:

> One claiming that the plain, unequivocal language of a statute produces an absurd result must surmount a formidable hurdle. It is not enough to show that the result is contrary to what Congress (or, perhaps more accurately, some members of Congress) desired. In other words, we cannot reject an application of the plain meaning of the words in a statute on the ground that we are confident that Congress would have wanted a different result. Instead, we can apply the doctrine only when it would have been unthinkable for Congress to have intended the result commanded by the words of the statute—that is, when the result would be "so bizarre that Congress could not have intended it.

*Robbins v. Chronister*, 435 F.3d 1238, 1241 (10th Cir. 2006) (en banc) (citing *Demarest v. Manspeaker*, 498 U.S. 184, 190-91 (1992)). Here, BP essentially admits that the plain language of 42 U.S.C. § 9601(14) means that "specifically listed" fractions of crude oil are "hazardous substances" – it is, after all, relying upon the absurdity exception. BP Opposition at 9-10. But BP proffers no evidence, no citations, and no legislative history to "surmount [its] formidable hurdle." This is of no surprise, given that the legislative history of the definition of "hazardous substance" is nonexistent. *See Wilshire Westwood*, 881 F.2d at 805 ("There is virtually no legislative history contemporaneous with the enactment of CERCLA directly relevant to the

3

scope of the petroleum exclusion.").[1]  More to the point, the Center's proposed construction does not mean that every oil spill must be reported under CERCLA and EPCRA.  Only those spills that concurrently release specifically listed fractions of crude oil in amounts that exceed their reportable quantities would be subject to the emergency notification provisions.  And not all fractions of crude oil are "specifically listed."  For instance, methylnaphthalene is a fraction of crude oil but not a listed "hazardous substance."  ECF No. 12676-24 (BP Ex. 18) (methylnaphthalene is found in crude oil); 40 C.F.R. 302.4 (not identifying methylnaphthalene as a hazardous substance).  The same is true for octane and nonane.  *Id*.  Thus, the construction advanced by the Center is not "absurd," for it requires that ***only*** "specifically listed fractions" of crude oil be deemed "hazardous substance[s]," which is ***exactly what the statute says***.

That other cases have followed the erroneous *Wilshire Westwood* holding without any explanation or analysis should not sway this Court from conducting its own, independent construction of the petroleum exclusion.  *See, e.g., Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir. 1999) (affirming district court's summary judgment on grounds that appellants failed to put forth evidence that contaminants were not found "naturally in petroleum," and citing, without independent analysis, the *Wilshire Westwood* holding); *Wademan v. Concra*, 13 F. Supp. 2d 295, 302 (N.D. N.Y. 1998) (not conducting any form of statutory interpretation);

---

[1] Nonetheless, the *Wilshire Westwood* court engaged in a strained attempt to construe other legislative history in support of its supposed "plain meaning" interpretation.  For instance, it looked to the history of the "Superfund Amendments and Reauthorization Act of 1986" or SARA amendments, which added a definition for the term "pollutant or contaminant" to 42 U.S.C. § 9601(33).  *Id*. at 807-8.  That definition included the identical petroleum exclusion language as 42 U.S.C. § 9601(14).  The Court then cited a statement by Senator Simpson, who noted that the SARA amendments "will not diminish the scope of the present petroleum exclusion...[which] excludes from the definition of 'hazardous substances' all types of petroleum, including crude oil, crude oil tank bottoms, refined fractions of crude oil, and tank bottoms of such ***which are not specifically listed or designated as a hazardous substance*** under the other subparagraphs of that provision."  *Id*. at 808 (citing 132 Cong. Rec. S14932) (emphasis added).  The Center submits that this legislative history *supports* its plain language interpretation: fractions of crude oil which are "specifically listed" as hazardous substances do not fall within the petroleum exclusion, just as Senator Simpson stated.  The Ninth Circuit also conceded that it was "not clear" that Congress knew of EPA's erroneous interpretation that the petroleum exclusion encompassed specifically listed fractions of crude oil, but dismissed this reality because "these postenactment developments lend credence to our plain meaning construction."  *Id*.

4

*Esso Standard Oil Co. (Puerto Rico) v. Rodriguez-Perez*, 2004 WL 2238894 at *10 (D. P.R. 2004) (merely citing *Wilshire Westwood* without any independent analysis); *Diversified Services, Inc. v. Simkins Industries, Inc.*, 974 F. Supp. 1448, 1453 (S.D. Fla. 1997) (no independent analysis). Moreover, just because EPA has interpreted a statute in one way does not make that interpretation correct. *See, e.g., National Cotton Council of America v. E.P.A.*, 553 F.3d 927, 936 (6th Cir. 2009) (rejecting EPA interpretation that pesticides were not "pollutants" under CWA, because the "plain language" was "unambiguous" that pesticides were pollutants).

The text of 42 U.S.C. § 9601(14) is devoid of ambiguity. A plain meaning interpretation does not cause absurd results, but rather effectuates congressional intent. When the statutory language is as clear as it is here, the Court must not "act as a super-legislature and second-guess the policy choices that Congress made." *Clinton County Com'rs v. U.S. E.P.A.*, 116 F.3d 1018, 1025 (3d Cir. 1997) (en banc) (rejecting earlier Circuit Court construction of CERCLA's citizen suit provision that relied upon absurdity exception and instead effectuating plain language of statute). The Court should therefore construe the statute as intended, and give liberal meaning to the term "hazardous substance." *Debham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir. 1986) (courts obligated to construe CERCLA liberally).

## II.   BP INJECTED HAZARDOUS SUBSTANCES INTO THE WELL.

Even if the Court determines that the petroleum exclusion applies to the oil flowing from the Macondo Well, the Center still prevails on its EPCRA claim under the facts of this case. Where hazardous substances that are unrelated to the refining process have been added to crude oil, that oil is removed from the petroleum exclusion. *Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 541 (6th Cir. 2001) ("petroleum products mixed with hazardous substances not constituent elements of petroleum are hazardous

5

substances"); *United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 266 (3d Cir. 1992); *City of New York v. Exxon Corp.*, 766 F. Supp. 177, 186-87 (S.D. N.Y. 1991). It is undisputed that BP added hazardous substances to the Well: excess spacer that had no connection with oil exploration or development: 30,000 barrels of drilling muds containing ethylene glycol and caustic soda (sodium hydroxide); and methanol. ECF No. 12673-2 at ¶¶ 16-19. BP's only opposition is that these substances are not "hazardous substances" and that the Center's notice letter does not mention them. BP Opposition at 13. Both arguments are wrong.

First, these are hazardous substances. The excess "spacer" is not exempt by EPA regulation because it was ***not*** "associated" with the exploration, development, or production of oil. Instead, it was dumped by BP into the Well to avoid environmental regulations. BP's assertions about Leo Linder's testimony[2] are belied by the fact BP unequivocally told him not to keep the "pills" because BP "didn't want to have to dispose of them," and if the pills were not put into the Well, they would not be "an exempt waste[.]" ECF No. 12673-7, Ex. 3 (Ex. M at pp. 33-36). The "drilling muds" were similarly unrelated to *any* "exploration, development, or production of crude oil." 40 C.F.R. § 261.4(b)(5). Rather, they were used to try to *stop* the flow of oil. As such, because their hazardous constituents – ethylene glycol and caustic soda[3] – were added to the crude oil vitiates the petroleum exclusion. The injection of methanol, another hazardous substance, 40 C.F.R. § 302.4, further vitiates the exclusion.[4]

Second, the hazardous substances that BP added to the oil did not need to be identified in the Center's notice letters. The Center was only obligated to provide notice that alerted BP to the time frame in which violations occurred and the nature of those violations. *Cmty. Ass'n for*

---

[2] While BP asserts the testimony is from Stephen Bertone, the cited testimony is that of Mr. Linder.
[3] 40 C.F.R. § 302.4 (listing both).
[4] These releases were not "federally permitted," as BP contends. 42 U.S.C. § 9603(a); 42 U.S.C. § 9601(19) (definition of "federally permitted" does not include measures approved by the FOSC).

6

*Restoration of the Env't v. Henry Bosma Dairy,* 305 F.3d 943, 951-53 (9th Cir. 2002). The Center's notices did just that, explaining that BP violated EPCRA by failing to report the release of hazardous substances released from the well. Ex. A at 4, ECF No. 1-2 (2:10-cv-02454-CJB-SS). The Center was not required to notify BP about hazardous wastes added to the fiasco that only came to light months after litigation, for the Center did not possess knowledge about those substances at the time notice was sent. *Center for Biological Diversity v. Marina Point Development Co.,* 566 F.3d 794, 801 (9th Cir. 2009) (notice does not require the impossible).

### III.  EPCRA APPLIES TO RELEASES FROM THE MACONDO WELL.

BP first claims that EPCRA does not apply to the outer continental shelf. BP Opposition at 14. This argument is refuted by the statute, which requires emergency notification to "any area likely affected" by the release of hazardous substances. 42 U.S.C. § 11004(b). BP admits that its oil reached the Gulf shoreline. That the communities inhabiting the Gulf shoreline were affected by the spill is beyond question.

Second, BP does not dispute that the Macondo Well is a "facility" for purposes of EPCRA. *See* Response to the Center's Statement of Undisputed Material Facts, ECF No. 12825 (nowhere disputing ¶¶ 2-8 of Center's SOMF). BP also does not dispute that "oil continued to flow ***from the Macondo Well into the Gulf of Mexico*** until at least July 15, 2010." SOMF at ¶ 14 (emphasis added); ECF No. 12825 (not disputing this Para.). This Court has already found that "the uncontrolled movement of oil began in the well…[t]he riser and BOP, by contrast, were merely passive conduits through which oil flowed." ECF No. 5809 at 19, 22. This finding applies with equal weight under EPCRA. 42 U.S.C. § 11004(a) ("owner or operator" must report releases of hazardous substances "*from* a facility") (emphasis added).

7

## IV.     THE CENTER HAS STANDING.

BP's standing arguments would rewrite Supreme Court law on informational injuries. It is irrefutable that a plaintiff suffers a constitutional injury "when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *FEC v. Akins*, 54 U.S. 11, 21 (1998); *see also Sierra Club, Inc. v. Tyson Foods, Inc.*, 299 F. Supp. 2d 693, 703-06 (W.D. Ky. 2003) (denial of right to be informed of releases through EPCRA reports being filed afforded standing). BP cites *Steel Co. v. Citizens for Better Env't* for the proposition that standing was rejected where plaintiffs "could not show a personal interest" in EPCRA reports, but that is a blatant misrepresentation: the defendant in *Steel Co.* **filed** its tardy EPCRA report **before** plaintiffs filed suit and, as a result, the Supreme Court found no redressable injury. 523 U.S. 83, 88 (1998). BP has not filed any EPCRA reports, and thus an order from the Court requiring them to do so redresses a cognizable injury. *Center for Biological Diversity, Inc. v. BP America Prod. Co.*, 704 F.3d 413, 430 (5th Cir. 2013). Furthermore, the decision in *Wilderness Soc'y, Inc. v. Rey* is not related to an "informational statute," and, in any event, supports the Center's standing. There, the Ninth Circuit reasoned that an informational injury gives rise to standing where the statute in question is designed to provide information to the public, *just like EPCRA*. 622 F.3d 1251, 1259-60 (9th Cir. 2010). The Court then found that the plaintiff lacked standing because the statute it was suing under was designed to increase public participation, not provide information to the public. *Id*. *Wildnernes Soc'y* supports the Center.

BP further argues that the Center's standing declarations do not demonstrate a cognizable injury-in-fact. BP Opposition at 19. Quite the opposite, the Center's declarations show that: (1) its members have sought out the information required by EPCRA, but not located it; (2) have contacted emergency planners to obtain EPCRA reports, but not received them; and (3) have a

8

demonstrated interest in obtaining such information, for health and business reasons. *See, e.g.*, ECF No. 12673-16 at ¶¶ 3-9 (Declaration of Gabriel Scott detailing Mr. Scott's interests in and efforts to obtain EPCRA-required reports); ECF No. 12673-17 at ¶¶ 3-11 (Declaration of Catherine Craig stating Ms. Craig's interests in and efforts to obtain EPCRA-required reports). Under EPCRA, an informational statute, this is all that standing requires.

## V.     THE CENTER'S CLAIM IS NOT MOOT.

EPCRA requires specific information to be made publicly available in one document, located at specific locations. 42 U.S.C. § 11004(b), (c) (identifying information for followup written notification); 42 U.S.C. § 11044 (stating that information must be publicly available at designated locations). Compliance with these statutory provisions cannot be found through the diffuse availability of generic information about the oil spill, most of which does not include the specific information required by EPCRA, located across a variety of sources. No court has ever held as much, and this Court should not create a new defense that allows EPCRA violators to evade liability simply because some information is locatable somewhere on the internet, placed there by entities other than the "owner or operator" of the "facility" from which the "release" occurred. It is these "owner[s] or operator[s]" upon which EPCRA places an affirmative duty.

BP's arguments about the "timeliness" of available data are disingenuous, for BP was obligated to file emergency notices "as soon as practicable" after the releases from the Well. 42 U.S.C. § 11004(c). Defendants assert that "[l]iterally anyone" can find this information in "a few minutes" using "Google," but provide no support for that proposition. Indeed, the Center's members have searched the internet for the very specific information required by the statute *and have not found it*. *See* ECF Nos. 12673-14 – 12673-17 (Center's standing declarations). More to the point, "the intent of EPCRA is [not] met by requiring the public to search for a needle in a

9

cyberspace haystack." *CBD v. BP*, 704 F.3d at 431 n.5.  Finally, just because it may be common knowledge in the oil industry that oil contains benzene, toluene, and xylene does not mean the general public knows the constituents of the oil, the amount of the release, or can easily access this information.  BP Opposition at 20.  Indeed, EPCRA was enacted by Congress so that citizens would not need to search through "Faith, Keyes, and Clark's Industrial Chemicals," and exhaustively search for information on the internet, in order to ascertain their exposures to hazardous substances as a result of BP's oil spill.

## VI.  LACHES IS LEGALLY AND FACTUALLY UNSUPPORTABLE.

BP's laches defense is meritless.  Legally, BP cannot show that the Center has delayed asserting its EPCRA claim, as BP has been on notice about this claim since June 1, 2010, the date of the Center's notice letter.  Factually, BP proffers no evidence that it has suffered any type of cognizable prejudice under the laches doctrine, and cannot show that the Center delayed, let alone inexcusably delayed, from seeking relief from the pretrial orders that indefinitely stayed its complaints.  *Environmental Def. Fund, Inc. v. Alexander*, 614 F.2d 474, 478 (5th Cir. 1980) (laches requires defendant to prove an (1) inexcusable (2) delay in asserting a claim (3) that causes undue prejudice); *Pacific Dawn, LLC v. New Orleans Marine Service, Inc.*, 2012 WL 686034 at *4 (E.D. La. 2012) (citation omitted) (undue prejudice established by proving a "disadvantage in asserting and establishing" a defense, such as "loss of records, destruction of evidence, fading memories, or unavailability of witnesses[.]").  Laches does not apply.

## CONCLUSION

For the foregoing reasons, the Center respectfully requests that the Court grant the Center's Motion for Partial Summary Judgment.

DATED this 19th Day of May, 2014.

Respectfully submitted,

         s/Charles M. Tebbutt
         Charles M. Tebbutt
         Daniel C. Snyder
         Law Offices of Charles M. Tebbutt, P.C.
         941 Lawrence St.
         Eugene, OR 97401
         Ph: 541-344-3505
         E-mails: charlie.tebbuttlaw@gmail.com
         dan.tebbuttlaw@gmail.com

## CERTIFICATE OF SERVICE

  I hereby certify that on May 19, 2014, I electronically served the foregoing on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF System, which will send notification of such filing in accordance with the procedures established in MDL 2179.

         s/ Charles M. Tebbutt
         Charles M. Tebbutt
         Law Offices of Charles M. Tebbutt, P.C.