UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "*Deepwater Horizon*" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: 10-4536 | : | Honorable CARL J. BARBIER |
| …………………………………………………... | : | Magistrate Judge SHUSHAN |

**UNITED STATES' OPPOSITION TO BP'S MOTION TO COMPEL
PENALTY PHASE DISCOVERY**

  THE COURT:  Can BP not admit that this was an extremely serious environmental violation?
  MR. LANGAN:  Your Honor, it was a serious event.
  THE COURT:  Extremely serious?
  MR. LANGAN: I think we could say that.

Tr. of Hearing at 68 (Mar. 21, 2014) (Ex. 1).

  Despite this admission by its own counsel, BP seeks to compel onerous discovery regarding the environmental impacts of its violations in the hopes of proving either that the violations were not quite as bad as everyone expected or that the Gulf of Mexico region is somehow better off now than before BP and its co-defendant discharged millions of gallons of oil into the Gulf of Mexico.  The United States opposes BP's motion because it has provided substantial discovery responses already, by its supplemental responses attached hereto is agreeing to provide even more substantial discovery, and because the additional information BP seeks exceeds the limits imposed by this Court.  For the reasons set forth below, therefore, BP's motion should be denied.

**I.  CERTAIN OF BP'S DEMANDS ARE NOW MOOT**

  BP's motion to compel sought three categories of relief:  supplementation of responses to certain interrogatories and requests for production; deposition of certain fact witnesses; and

designation of Rule 30(b)(6) witnesses on certain topics in its notice to the United States. This Court has already disposed of BP's request that the United States produce Dr. Jane Lubchenco, Rear Admiral Steve Poulin, Rear Admiral Paul Zukunft, Dr. Jacqueline Michel, and Dr. Robert Haddad for deposition and, therefore, this brief will not address that request.

Further, the United States notified the Court that it would stand on its prior submission to the Court regarding the Rule 30(b)(6) witnesses, as well as the formal objections to be served by agreement of the parties on May 21, 2014. *See* Letters to Judge Shushan (Ex. 2). Thus, this opposition does not address BP's arguments as to the Rule 30(b)(6) notice.

## II.  THE UNITED STATES' INTERROGATORY RESPONSES, PARTICULARLY AS SUPPLEMENTED ARE SUFFICIENT

BP seeks to compel a response on seven interrogatories that it contends are "straightforward" and parallel to the discovery served upon it by the United States. BP, however, mischaracterizes the state of the parties' contentions and the inappropriate breadth and number of its interrogatories.

As a threshold matter, BP exceeded the permissible number of discovery requests by more than seven. In a single interrogatory, BP sought a detailed response as to each of its requests for admission. As such, it has posed far more than the permissible combined total of requests for production and interrogatories. *See, e.g., Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 (C.D. Cal. 1998) (holding that when a set of interrogatories requires a response for each request for admission that is not fully admitted "defendants are plainly attempting to convert requests for admissions into interrogatories"); s*ee also Estate of Manship v. United States*, 232 FRD 552, 557 (M.D. La. 2005).

More importantly, however, an examination of the individual interrogatories and the United States' responses reveals that the United States' responses are more than adequate and appropriate,

2

particularly in light of the supplementation provided with this opposition.  *See* United States First Supplemental Discovery Responses to Defendants' Penalty Phase Discovery (Ex. 3).  A clear example of this is BP's Interrogatory 2.  While BP claims it is a simple discovery request, it is in fact a startlingly broad request calling for a topic that is the subject of significant scientific research and discussion.  BP's interrogatory seeks the "background rates" of "land loss and erosion" over every inch of the coastline of the ninth largest body of water in the world – a coastline that is estimated to run over 3,500 miles.  U.S. EPA, "General Facts about the Gulf of Mexico," *available at* http://www.epa.gov/gmpo/about/facts.html (last modified Jan. 30, 2014).  Similarly, BP seeks the identification of "all documents relating to" and "all persons with knowledge of" this land loss, regardless of whether the documents are in the custody of the United States or the persons are employed by the United States.

In the face of such overbreadth, the United States was within its rights to simply refuse to answer the interrogatory.  *See U.S. v. 216 Bottles, More or Less, Sudden Change by Lanolin Plus Lab. Div. Hazel Bishop Inc.*, 36 F.R.D. 695, 702 (E.D. N.Y. 1965) ("it would be unreasonable to require claimant to search for facts and compile outside data and citations to literature not within its possession or known to it.").  Instead, the United States directed BP to the vast array of publicly available information that the United States has posted on the internet.

Despite BP's protestations to the contrary, moreover, it is clear from the face of this interrogatory that BP is seeking discovery to assist it in early preparation for its defense of the United States' claims for natural resource damages.  The United States has offered time and again to confine its evidence relating to the seriousness and environmental impact of BP's violations to the public record.  BP, however, has refused.  If BP were truly seeking, as it claims, to discover the foundation of the United States contentions, it could have stipulated to the use of publicly available

3

information and avoided an overly broad interrogatory.  Only if one considers BP's interest in discovering the details of the natural resources damage assessment does it become clear why BP is so adamant for a more detailed response to this interrogatory.

Several other of BP's interrogatories are similarly overbroad and inappropriate.  For instance, BP seeks to compel a further answer to an interrogatory seeking an identification of each and every action taken by any party during the time period of the Response that did not constitute a removal action under the Oil Pollution Act (Interrogatory 12).  Charles Alan Wright & Arthur R. Miller, et al., 8B Fed. Practice & Procedure § 2174 (3d ed.) ("a party cannot ordinarily be forced to prepare its opponent's case.").  The compound nature of this interrogatory is obvious – it seeks the United States to identify each action taken during the response and identify whether it is a removal action under the statute.  Moreover, the United States provided a sufficient response by providing an identification of what it considered to be documented response activities.

BP's further complaints regarding the United States' interrogatory responses arise because BP is seeking expert testimony before the United States has completed its analysis.  BP's interrogatories seeking information regarding the "effectiveness of BPXP's mitigation efforts" or whether the dispersants were "ineffective, counterproductive, or harmful" clearly require expert analysis.  In a circumstance in which the United States has not yet developed the expert testimony it intends to proffer on a subject, it is entirely proper to notify the Defendants of that fact and to identify the pool of information the United States will make available to its experts.  *See* Fed. R. Civ. P. 26(b)(4)(B) (granting the protections of Rule 26(b)(3)(A) & (B) to draft opinions).  That is precisely what the United States has done with respect to these interrogatory responses.

BP contends that the United States has not provided sufficient detail regarding the documents being relied upon in its interrogatory responses.  BP's contention that the United States

"repeatedly point[ed]" "generically" to its prior productions is incorrect.  For instance, in response to Interrogatory 12 the United States identified the three categories of documents that it was relying upon:  Incident Action Plans, National Incident Commander directives, and Unified Command directives.  These document descriptions are sufficient to locate the documents referenced in the fully searchable data provided to BP.  Similarly, in response to Interrogatories 10 and 11, the United States identified the specific prior discovery requests it was referencing.  As BP is well aware, the search terms used to identify documents responsive to particular discovery requests were negotiated between BP and the United States and identified with great specificity in the United States' prior discovery responses and in the United States' status report to the Court.  *See* Rec. Doc. No. 2348.  BP can run that search string in the searchable materials that the United States produced and arrive at a list of particular documents. Similarly, in response Interrogatory 6, the United States specifically directed BP to responses to particular document requests served in the Penalty Phase, including a search string negotiated with BP.  For Interrogatories 7 and 8, the United States directed BP to the documents cited in its and the PSC's proposed findings of fact for Phase 2, again a clearly identifiable category of documents.  Finally, for Interrogatory 2, the United States directed BP to specific websites, even providing the web address.  Thus, BP could easily identify the specific documents to which the United States was pointing and the United States' responses in no way constitute a reference to "a mass of business records" or a direction to "go fish." *See Akers v. Shaw Envtl., Inc.*, No. 09-915, 2011 WL 867524, at *3-4 (W.D. La. Mar. 14, 2011).

  BP's contention that the United States has served "discovery requests seeking virtually identical information" is an incorrect exaggeration.  Nowhere does the United States seek an interrogatory response identifying the rate of land loss for every inch of a 3,500 mile coastline, or

5

an identification of every single action that any party may have taken in response to the spill. Rather, the United States' request for production 18 seeks simply "data" – a parallel not to the interrogatories BP cites but to BP's request for production 1 (the United States' response to which is not a subject of the motion to compel).

Further, the United States did not interpose an interrogatory regarding all actions undertaken in the response.  Rather, in its Interrogatory 7, the United States pointed to a specific factual allegation made by BP in its submission to the Court and requested the factual basis for that contention – very much akin to the Court's direction to the United States to identify the specific past violations upon which it would rely in support of the Defendants' history of violations.  The United States' Interrogatory 8 is similarly directed at a specific contention BP has made to the Court and is seeking only information regarding the specific actions referred to in BP's filing.

The United States has undertaken a good faith effort to respond to BP's extremely broad interrogatories despite BP's exceeding the limit on the number of available discovery requests.  Moreover, the United States has supplemented its interrogatory responses to reflect additional information requested by BP or identified in the course of collecting and producing responsive documents.  A simple reading of the interrogatory responses, particularly as supplemented, will demonstrate that the United States' responses satisfy the requirements of the Federal Rules of Civil Procedure and no further responses should be compelled.

**III.  THE UNITED STATES' RESPONSES TO THE DOCUMENT REQUESTS WERE SUFFICIENT**

Despite having announced to the Court just last week that a minimum of eight weeks is required between the agreement to search terms and the production of documents, BP moves to compel further responses to five requests for production (3, 4, 6, 11, and 13) for which it only proposed search terms on April 25, 2014 –four weeks before the deadline for production of

documents. Because of the short time frame available, the significant overlap between the United States' prior document searches and the requested new searches, and the specific request to use search strings likely to pull in large quantities of analysis for the natural resources damage assessment in custodians whose primary focus was that assessment, BP's motion to compel must fail.

### A. BP's Requests Seek Analysis Rather than Data

BP's request for production 3 seeks information regarding the observation and collection of wildlife. The parties have agreed on the production of the data relating to the number of creatures collected and the mortality rates of these creatures. In addition, in its supplemental response the United States has agreed to produce files from many of the operating bases from which wildlife were tracked.

BP's request for production 4 seeks all information related "to the effects or potential effects of any . . . Mississippi River Diversions." In its supplemental response, the United States identifies two collections of documents it is willing to produce. First, on or very close to May 27, 2014, the United States will produce the documents provided in response to a FOIA request served by the State of Louisiana. Second, the United States has identified certain custodians involved in the review of the diversions at the Army Corps of Engineers. The United States will produce the non-privileged documents from this collection as quickly as possible.

BP's request for production 6 seeks information regarding the impact or recovery of the shoreline. Similarly, BP's request for production 13 seeks "any analysis, evaluation, determination, or study of shoreline oiling, impact . . ., monitoring, and cleanup . . . ." Importantly, the most significant body of data relating to this issue is already in BP's possession – the Shoreline Cleanup Assessment Technique or SCAT team data. In addition, the United States has queried the

relevant agencies and in its supplemental responses identified and agreed to produce repositories of response data not previously available to BP.

BP's request for production 11 seeks analysis regarding the amount of oil "contained, collected, dispersed, burned, removed, or cleaned up." As BP acknowledges by expressly referring to it in its request, the United States undertook a specific analysis of this question in the "Oil Budget Calculator" – a document that was the subject of substantial discovery in phase 2 and which was completed before the discovery cut off used for phase 2. Moreover, the United States has agreed in response to request for production 1 to produce all the environmental sampling data.

In other words, the United States has agreed to produce *data* sought by these requests and BP cannot contend otherwise. Rather, BP complains about the refusal to search for the analysis of the accuracy of this data that was being conducted by individuals specifically assigned to the natural resources damage assessment.

### B.  The Court Has Placed the Discovery of Analysis Outside of the Bounds of Fact Discovery

BP's effort to get at analysis rather than data flies directly in the face of the Court's instructions at the outset of discovery in this Phase and this Court's protection of Drs. Haddad and Michel from deposition covering the assessment. *See* Order, May 19, 2014 Rec. Doc. 12892 at 1. During the March 21 Status Conference, Judge Barbier could not have been clearer about whether BP was entitled to draft assessment work:

> MS. KARIS: Fair enough. So in addition to not having the underlying data, part of what BP is requesting is the analysis of some of that data that has been conducted by the United States.
> THE COURT: The problem with that is, as I understand it, a lot of this analysis is very preliminary and scientists talking to each other. I don't think you're entitled to that. You may be entitled to data, but I don't think you're entitled to that.

Tr. of Hearing at 78 (Mar. 21, 2014). BP is using the Court's direction to produce *data* as cover to

pry into assessment work the Court has clearly placed out of bounds for the Penalty Phase:

> THE COURT: So it seems to me that the Court shouldn't, and I don't think is required to, put such a fine point on the seriousness that we say, you know, I have to say, okay, this was the extent of the damage to this species of fish or this extent of this other damage, because then we would be trying the NRDA case.

Tr. of Hearing at 69 (Mar 21, 2014). BP's overbroad discovery requests also contradict what BP has told the Court it planned to present on environmental harm at trial:

> MR. BROCK: I think what we have in mind is a presentation to Your Honor using some data that we have, some data and information that they have that we don't have access to at this point, a summary presentation that would allow Your Honor to understand, big picture, injury to the Gulf, resiliency of the Gulf, restoration that has taken place and how that has impacted the issues, as well as how our interventions during the time of the spill and immediately thereafter were helpful to the recovery that's occurred. Those types of conduct things that we think as a matter of policy should be encouraged.

Tr. of Hearing at 73 (Mar. 21, 2014).  In its explanation, BP makes no mention of need for the type of draft assessment and communication documents it now seeks through discovery.

BP also inflates cited case law on this matter. For example, BP suggests the Court in *Citgo* decided that the United States, unlike BP, is prohibited from asserting the work product protection with respect to work related to the natural resources damage assessment.  That contention is incorrect—the *Citgo* Court simply held that no *blanket* work product protection exists over such documents.  Further, the dispute in *Citgo* arose when the United States claimed it need not produce a privilege log for any assessment work because it was unduly burdensome and the work was all protected work product. *U.S. v. CITGO Petroleum Corp.*, 2010 WL 1754167 at *3 (W.D.La. 2010).  Ultimately, the Court did not require production of all assessment documents, but protected privileged communications and draft expert reports and allowed the United States to withhold documents by articulating specific grounds for privilege claims.

Further, in *Citgo*, the United States' expert relied directly on a *final* assessment, and thus

put the assessment at issue. Here, the United States' assessment is ongoing and in draft form—no final assessment exists.

Moreover, in *Citgo*, prior to trial the Court had not heard anything about the environmental harm caused by the spill. The same cannot be said here. As explained by Judge Barbier in the March 21 Status Conference, the Court has plenty of information about environmental harm in the record of this and related cases of which he can take judicial notice:

> THE COURT: We can argue about the recovery. But, you know, I think there are many facts on this area from which the Court, frankly, could take judicial notice, and then the experts can opine as they wish. But I'm not going to allow this to evolve into a NRDA case.

Tr. of Hearing at 84 (Mar. 21, 2014); *see also* Clean Water Act – Penalty Phase: Motion of the United States to Limit Evidence About the "Seriousness" Factor (Doc. No. 12373) ("Seriousness Motion"), its brief in support of the Seriousness Motion, its reply in support of the Seriousness Motion, and the United States' Clean Water Act – Penalty Phase Rule 26(f) Report of the United States (Doc. No. 12351) ("US 26(f) Report"). In short, BP is simply wrong when it contends that the United States has no work product protection over draft assessment documents and analyses.

### C. BP's Requested Searches would be Burdensome

BP has suggested that the searches BP proposes are "limited"  An examination of the search terms however, belies that claim. One of the search strings BP proposes is:

> ((("Amount*" OR "quantif*" OR "quantit*" OR "volume*" OR "bopd" OR "bpd" OR "barrel*" OR "pound*" OR "ton*" OR "measur*") NEAR15 ("oil*" OR "hydrocarbon*") NEAR15 ("contain*" OR "collect*" OR "dispers*" OR "burn*" OR "skim*" OR "remov*" OR "clean*"))

When parsed, for example, BP is asking the United States to search ten years worth of files of individuals for documents that contain the term: "amount" near "oil" near "skim". BP has requested that this search be run in the files of individuals such as Bill Lehr, a senior scientist in

the Emergency Response Division of the National Oceanic and Atmospheric Administration who has been involved in a number of responses to subsurface oil spills.  *See* Lehr Dep. at 52-57.  Common sense tells one that such a broad search in such a custodian's files will find a large number of documents that hit on the search terms, but are not actually relevant to this action.  The burden of collecting, reviewing, and producing these documents in this short time frame is undue, particularly in light of the United States' prior productions.

BP cites the United States' refusal to respond to discovery explicitly and exclusively directed to issues beyond Phase 1 and 2 as a basis for discounting the substantial amount of Phase 3 information collected in response to the Phase 1 and 2 searches.  As BP is aware from the first Penalty Phase production made by the United States – many Penalty Phase documents were collected in response to the Phase 1 and 2 discovery searches.  That experience demonstrates that search strings such as those proposed by BP would be extremely burdensome to implement.

The United States has identified and produced numerous documents previously withheld as deliberative process that relate to the very issues BP has raised in its motion to compel.  Accordingly the substantial burden imposed by the broad search terms proposed by BP is undue and BP's motion should be denied.

## IV.     CONCLUSION

On its face, BP's discovery is designed to obtain early discovery related to an unfiled claim and to tie the United States into knots over document discovery so that it cannot adequately prepare for the depositions and expert presentations that are scheduled in this Phase.  The United States' responses to discovery are appropriate and sufficient and BP's motion to compel should be denied.

Respectfully submitted,

BRIAN HAUCK
Deputy Assistant Attorney General
Civil Division
PETER FROST
Director, Torts Branch, Civil Division
Admiralty and Aviation
SHARON SHUTLER
MALINDA LAWRENCE
LAURA MAYBERRY
Trial Attorneys
R. MICHAEL UNDERHILL, T.A
Attorney in Charge, West Coast Office

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
MICHAEL McNULTY
SARAH HIMMELHOCH
Senior Litigation Counsel
NANCY FLICKINGER
Senior Attorney
PATRICK CASEY
RICHARD GLADSTEIN
DANIEL S. SMITH
Senior Counsel
ABIGAIL ANDRE
A. NATHANIEL CHAKERES
ANNA CROSS
RACHEL HANKEY
JUDY HARVEY
RACHEL KING
ERICA PENCAK
BRANDON ROBERS
GORDON YOUNG
Trial Attorneys

/s/ Sarah D. Himmelhoch
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
Facsimile:   202-514-2583
E-mail:  steve.o'rourke@usdoj.gov
KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed using the ECF filing system for the U.S. District Court for the Eastern District of Louisiana and served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

/s/ Sarah D. Himmelhoch