# EXHIBIT 2

## United States' Opposition to BP's
## Motion to Compel Penalty Phase Discovery



**U.S. Department of Justice**
Environment and Natural Resources Division
Environmental Enforcement Section

90-5-1-1-10026
_____

*Sarah D. Himmelhoch*                                                  *Telephone (202) 514-0180*
*U.S. Mail:  P.O. Box 7611, Washington, DC  20044-7611*                *Facsimile (202) 514-2583*
*Overnight Mail:   601 D Street N.W., Washington, DC, 20004*
*E-mail: sarah.himmelhoch@usdoj.gov*


May 8, 2014


BY ELECTRONIC MAIL

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
  Eastern District of Louisiana
Hale Boggs Federal Building
United States Courthouse
500 Poydras Street
New Orleans, LA 70130
Sally_Shushan@laed.uscourts.gov

          Re:     MDL 2179 - 10-4536 Penalty Phase Preparation

Dear Judge Shushan:

          Despite numerous discussions between the United States and BP regarding the scope of
environmental discovery and an extensive meet and confer session on the 30(b)(6) proposed by
BP in its April 11, 2014 30(b)(6) Deposition Notice to the United States,  the parties have been
unable to resolve disputes about certain 30(b)(6) topics proposed by BP.  The United States
believes that BP's requests for testimony in Topics 1, 2(a), 2(b), 4, 5, 6, 7 and 10 seek
information that should be limited to expert testimony, are overbroad and burdensome, seek
information irrelevant to this phase, or constitute attempts to evade this Court's clear instruction
on March 21, 2013 against litigating the NRD case during the penalty phase.  *See* Ex. 1 (BP's
Proposed Rule 30(b)(6) Topics). The United States is not willing to present a witness on Topics
1, 2(a), 2(b), 4, 5, 6, 7, or 10 as drafted for the reasons set forth below.

          As an overarching matter, the United States has offered to pull down its 30(b)(6) topics 3-
6 if BP pulls down 1, 2(a), 4, 5, and 10 because, in addition to other reasons discussed below, all
these topics call for expert testimony. *See also* Ex. 2 (US's Proposed Rule 30(b)(6) Topics).
Requiring 30(b)(6) testimony on an expert-driven topic several months prior to the issuance of
expert reports raises a fundamental issue regarding the timing of expert productions: the
environmental harm materials on which the experts will rely will be disclosed with their reports.
Both sides' experts will testify about the relevance and strengths and weaknesses of those
materials during their depositions.  Previewing an area of expert testimony through fact

witnesses requires not only premature disclosure of expert consideration materials but also requires duplicative agency testimony that will be provided through an expert.  The topics specifically addressing environmental harm (BP's 1, 2(a), 4, 5 and United States' topic 4) all also tread into environmental assessment work Judge Barbier has held to be out of bounds for this Phase.  The topics specifically addressing human health harm present unique privacy concerns that will be best addressed by expert witnesses who have had time to carefully consider the material available and redact any privacy information. BP has responded to this proposal but its response does not resolve the United States' objections.  *See* Ex. 3 (BP Response and US Counter-Response).

Topic 1

These topics seek information about the United States' knowledge of the environmental impacts of the *Deepwater Horizon* Spill, including shoreline impacts and impacts on Wildlife, as well as potential mitigation of such environmental impact.  Topic 1, for example, requests testimony regarding the United States' "knowledge of, role, involvement, and efforts in determining the nature and extent of any environmental impacts as to which You contend there has been no or limited recovery to date, any associated data, analyses or determination of such impacts."  By requesting testimony about the United States' knowledge without any time limitation and by seeking testimony about analysis and determinations that are not yet final, these requests seek to probe the ongoing NRD Assessment process, calling for testimony about privileged internal agency communications.  The Court clearly indicated that ongoing analysis from the NRD Assessment was not discoverable in the penalty phase:

> MS. KARIS: Fair enough.  So in addition to not having the underlying data, part of what BP is requesting is the analysis of some of that data that has been conducted by the United States.
> THE COURT: The problem with that, as I understand it, a lot of this analysis is very preliminary and scientists talking to each other.  I don't think you're entitled to that.  You may be entitled to data, but I don't think you're entitled to that. . . .

Tr. of Hearing at 78 (Mar. 21, 2014). Thus, discovery in this phase is restricted to data; by seeking testimony about the United States' knowledge of environmental impacts, including analyses and determinations made, BP is going far beyond the lines drawn by the Court to protect the ongoing NRD Assessment.

More fundamentally, the United States believes that seeking 30(b)(6) testimony regarding the environmental impact of the spill in this case is unnecessary.  There is at this juncture no finalized view within any agency of the United States about the nature or extent of recovery of the Gulf to date, given the ongoing NRD Assessment.  The environmental harm case will be presented by experts by both the United States and BP.

Topic 2

Topic 2 seeks information regarding the United States' knowledge of the nature, extent, and degree of effectiveness of response and alleged mitigation efforts with regard to

environmental, human health, economic, and other effects.  The topic is overbroad and precludes effective testimony by any witness for the United States because the agencies responsible for investigating environmental, human health, economic, and other effects are disparate, and preparing a witness on all of these areas is impossible.  BP is aware of this issue, as it specifically separated out topics concerning environmental damage, human health, economic impact in later topics, such as Topics 4, 9, and 10.  Thus, an attempt to obtain testimony in a catch-all topic is guaranteed to be a waste of discovery resources because no witness or set of witnesses can be adequately briefed on this full set of topics.

In addition, as drafted, each of the subtopics of Topic 2 either seeks information that is part of the NRD Assessment or seeks information to which BP and third parties have far superior access.   Subtopic (a), for example, seeks analyses, studies, and assessments of the effectiveness or success of Response activities, including environmental rehabilitation and restoration efforts. Subtopic (a) is a stalking horse intended to provide Defendants a preview of the natural resource damages claims not yet brought by the United States.  The United States will not present a witness on Subtopic (a) as drafted.

<u>Topics 4 and 5</u>

Topics 4 and 5 seek information regarding the United States' "knowledge of and role, in the collection, observation, and rehabilitation of" Wildlife during the response and the United States' "knowledge of shoreline impacts from the Deepwater Horizon Spill and subsequent recovery," including associated analyses.  The United States is concerned that this Topic, like Topic 1, is an attempt to invade privileged and preliminary NRD work.  For example, in Topic 5, BP specifically requests information concerning "subsequent recovery."  Any analysis of recovery of the Gulf is integrally linked to the ongoing NRD assessment.  The Court granted the United States' motion to preclude evidence of seriousness to the extent it invades the ongoing NRD Assessment.  Tr. of Hearing at 81-84 ("But I'm not going to allow this to evolve into a NRDA case. We're just not going to go there.").  Topic 4 is also unduly burdensome. Because it requests testimony on the United States' role in, and collection, observation and rehabilitation of many types of animals, the United States would be required to provide at least 6 scientists to properly respond, several of whom are working on the ongoing NRD assessment. The United States proposes narrowing Topics 4 and 5 to testimony regarding data from the response period itself, excluding testimony regarding ongoing analyses (including recovery).  Without such narrowing of Topics 4 and 5, the United States cannot produce witnesses on these topics.

<u>Topics 2(b) and 10(d)</u>

Topics 2(b) and 10(d) generally seek testimony regarding any statements "commending" Response Activity and whether such efforts successfully mitigated harm to the environment and human health. The United States cannot provide a witness on 2(b) and 10(d) as written because the topics are essentially asking for testimony about the results of a document search (the topics call for a witness to testify about all "statements" "commending" various BP actions).   In their requests for production, BP has also asked for documents containing statements commending BP.  The United States has agreed to run the document search for BP on that RFP, and will produce the results to BP. BP will therefore have the same ease of access to any statements it

believes commend the company for its response as does the United States.  A deposition would be highly unlikely to provide additional useful information. In light of that fact, depositions on these topics would also be unduly burdensome. These topics are also vague. It is improper to require a representative of the United States to testify about what anyone has ever written about the response that BP may interpret as a commendation—guesses a 30(b)(6) witness may make about the meaning of any such statements will be of as much value as BP's own assumptions.

Topic 6

BP requests testimony regarding the United States' knowledge of, role, and involvement in the operation of freshwater diversion structures in the Mississippi River in 2010.  As the United States articulated in its response to the corresponding Request for Production, the Mississippi River Diversions were not performed by the Defendant and, therefore, cannot constitute efforts by the Defendants to mitigate the effects of their violations.  The attempt to explore an area that is not relevant to any of the factors at issue is not justified, and BP has not articulated any reason it should be entitled to such testimony.

Topic 7

In Topic 7, BP seeks testimony about the United States' knowledge of the amount of oil removed by numerous processes, as well as the preparation and publication of the Oil Budget Calculator.  The United States believes that what the Court needs to know for the penalty phase was already addressed in prior phases and that any more detailed analysis of the fate and transport of oil and dispersants will be an issue in the NRD Assessment and the NRD phase; BP's efforts thus appear to be both an attempt to both prematurely discover the United States' ongoing analyses and to prematurely lock the United States into positions that will necessarily change as those analyses are conducted and completed.  Nonetheless, in the interest of compromise, the United States is prepared to present a witness to testify about areas that do not call for testimony on fate and transport mechanisms.   There is, however, one additional restriction on the scope of Topic 7: during Phase 1, BP sought and elicited 30(b)(6) testimony from the United States regarding the preparation of flow rate calculations, flow rate estimates, and the drafting and releases processes for the Oil Budget Calculator.  Thus, those areas should be excluded from this topic to avoid duplication of efforts.

For these reasons the United States respectfully requests a ruling that it need not produce Rule 30(b)(6) witnesses on topics 1, 2(a), 2(b), 4, 5, 6, 7 and 10 proposed by BP in its April 11, 2014 30(b)(6) Deposition Notice to the United States.

Respectfully submitted,

/s/ Sarah D. Himmelhoch

Sarah D. Himmelhoch

cc:     Andy Langan
        Ky Kirby

4

# EXHIBIT 1 to

# Letter from S. Himmelhoch to Judge Shushan

# May 8, 2014

## UNITED STATES DISTRICT OF COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:   Oil Spill by the Oil Rig "Deepwater | : | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: All Actions | : | JUDGE BARBIER |
| | : | MAG. JUDGE SHUSHAN |
| …………………………………………... | : | |

### DEFENDANTS' 30(b)(6) DEPOSITION NOTICE
### OF THE UNITED STATES IN THE PENALTY PHASE

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and Pre-Trial Order No. 17 (as supplemented and amended by Pre-Trial Order No. 27), the United States shall designate and produce one or more officers, managers, agents, employees, or other representatives of the United States to testify on its behalf as to the areas of inquiry described below. The times and locations of the depositions will be scheduled in conjunction with the designees' fact depositions in their individual capacities, where applicable, or otherwise as may be scheduled by the Court and the parties. The depositions will take place before a notary public or some other person authorized to administer oaths and will be recorded by audio, stenographic, and videographic means.

### DEFINITIONS

1.    "*Deepwater Horizon* Incident" or "Incident," whether or not capitalized, shall mean the events leading to (i) the loss of life and injuries on the *Deepwater Horizon* rig on or about April 20, 2010, and (ii) the eventual sinking of the rig on April 22, 2010, including the blowout, explosions, and fire.

2.    "*Deepwater Horizon* Oil Spill," the "Oil Spill," or the "Spill," whether or not capitalized, means the discharge of hydrocarbons that occurred in connection with the *Deepwater Horizon* Incident.

3.    "Dispersants," whether or not capitalized, shall mean (i) dispersants, (ii) dispersant constituents, (iii) derivatives of any of the foregoing from biological, chemical, photochemical, or other processes, or (iv) any aggregation, mixture, or combination of any of the foregoing with

any other material including without limitation organic matter, inorganic matter, sediments, biological exudates, sand and water.

4.     "Environment" "Environmental," or "Environmental Resources," whether or not capitalized, shall refer to (i) air, surface, and subsurface water, beaches, land and sediments, and the organic and inorganic constituents of the foregoing, (ii) Organisms (as defined below), (iii) natural resources, (iv) ecosystems, (v) niches and other habitats, and (vi) combinations or assemblages of any of the foregoing, in each case in or near the Gulf of Mexico or in or near any other location that may have been affected by Oil-Related Materials (as defined below) regardless whether in a natural state or modified by human activity.

5.     "Non-operating investor or party" or "NOI" means any person or entity that holds an ownership interest in a lease or facility related to offshore gas or oil exploration, drilling, or production operations but is not the designated operator for purposes of activities under that lease or on that facility.

6.     "Oil-Related Materials" shall mean any of the following from the *Deepwater Horizon* Oil Spill or response thereto: (i) oil, (ii) polycyclic aromatic hydrocarbons ("PAHs"), (iii) hydrocarbons, (iv) other oil or gas constituents, and (v) well drilling and closure materials, including without limitation drilling muds and fluids and materials injected into the well-head. Oil-Related Materials also shall include (i) derivatives of any of the foregoing from biological, chemical, photochemical, burning or other processes, (ii) any aggregation, mixture, or combination of any of the foregoing with any other material including without limitation organic matter, inorganic matter, sediments, biological exudates, sand and water; or (iii) any combination of the foregoing.

7.     "Organisms" shall refer to any and all members of the six kingdoms of life including animals, plants, fungi, protists, archaea, and bacteria.

8.      "Response Activities" or the "Response," whether or not capitalized, shall mean any and all activities performed to respond to, or otherwise mitigate, minimize, or prevent any environmental, human health, economic, or other effects of, the *Deepwater Horizon* Spill.

9.      "Unified Command" shall mean the structure, organization, and team established to oversee and manage the response to the *Deepwater Horizon* Spill following the Incident.

10.     "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities, any employees, agents or assigns of these departments, agencies, and instrumentalities, and any person who possesses information or documents within the custody and control of these departments, agencies, and instrumentalities.

11.     "Wildlife" shall mean all non-domesticated vertebrate animals including without limitation birds, mammals, amphibians, and reptiles, but not including fish.

12.     "You," "your," and "yours," whether or not capitalized, shall mean the United States.

2

## AREAS OF INQUIRY

     1.     Your knowledge of, role, involvement, and efforts in determining the nature and extent of any environmental impacts from the *Deepwater Horizon* Spill, including any environmental resources as to which You contend there has been no or limited recovery to date, and any associated data, analyses or determination of such impacts.

     2.     Your knowledge of the nature, extent, and degree of effectiveness of the efforts to respond to, or otherwise mitigate, minimize, or prevent any environmental, human health, economic, or other effects of, the *Deepwater Horizon* Spill, including but not limited to:

     a.   any analyses, studies, or assessments of the effectiveness or success of the Response Activities (including but not limited to skimming; booming; dispersant application; controlled *in situ* burning; shoreline monitoring, assessment, and cleanup; environmental rehabilitation or restoration efforts; and other health and economic mitigation efforts) in mitigating or minimizing the actual or potential effects of the Spill;

     b.   statements commending the Response Activities, including determinations that any aspect of the Response Activities was effective or successful, and BPXP's role and involvement in and commitment to the Response Activities;

     c.   any response or cleanup activities that were not conducted at the direction and under the oversight of the Unified Command;

     d.   any decisions or actions (or inactions) by the Unified Command, BPXP, or other agency or entity that limited, impeded, delayed, or reduced the effectiveness of efforts to respond to, or otherwise mitigate, minimize, or prevent any environmental, human health, economic, or other effects of, the *Deepwater Horizon* Spill; and

     e.   any contention that BPXP or any other entity did not effectively respond to, or otherwise mitigate, minimize, or prevent any actual or potential environmental, human health, economic or other effects of the Spill, and the bases for any such contention.

     3.     Your knowledge of and role in dispersant operations during the Response, including the selection, approval, use, limitations on use, safety, effectiveness, and effects of dispersants and dispersant constituents, including Corexit 9500 and/or Corexit 9527, and BPXP's role and involvement in those dispersant operations.

     4.     Your knowledge of and role, in the collection, observation, and rehabilitation of birds, turtles, mammals, reptiles, and other Wildlife during the Response, including associated data, and BPXP's role and involvement in such collection, observation, and rehabilitation.

5.    Your knowledge of shoreline impacts from the *Deepwater Horizon* Spill and subsequent recovery, including the nature, extent, duration, monitoring, and cleanup of shoreline oiling; efforts to mitigate impacts to the shoreline during the Response and the effectiveness of those efforts; and associated data and analyses.

6.    Your knowledge of, role, and involvement in the operation of freshwater diversion structures on the Mississippi River in 2010, including communications and/or analyses regarding (i) plans and the decision(s) to operate such freshwater diversion structures and (ii) any anticipated effects of those operations on water, sediment, and/or organisms.

7.    Your knowledge of the amount of oil and any analysis of the amount of Oil-Related Materials that You contend was contained, collected, dispersed, burned, removed, or cleaned up in connection with Response Activities and/or any natural processes, including but not limited to the amounts attributable to each process (for example, through the use of skimming, boom, dispersants, *in situ* burning, shoreline cleanup, and natural processes), and the preparation and publication of the "Oil Budget Calculator, Deepwater Horizon, Technical Documentation," and its appendices, dated November 2010.

8.    Your knowledge of the facts in and the preparation and publication of "BP *Deepwater Horizon* Oil Spill: Incident Specific Preparedness Review (ISPR);" the "On Scene Coordinator Report for the *Deepwater Horizon* Oil Spill;" and the reports and other work of the Operational Science Advisory Team, including but not limited to the "Summary Report for Sub-Sea and Sub-Surface Oil and Dispersant Detection: Sampling and Monitoring" (OSAT-1 Report), the "Summary Report for Fate and Effects of Remnant Oil in the Beach Environment" (OSAT-2 Report), and the "Investigation of Recurring Residual Oil in Discrete Shoreline Areas in the Eastern Area of Responsibility" (OSAT-3 Report), including the findings and conclusions of such reports.

9.    Your knowledge of, role, involvement, and efforts in determining the nature and extent of any economic impacts of the *Deepwater Horizon* Spill and subsequent economic recovery, including BPXP's efforts to mitigate or minimize such impacts, and any associated data, analyses, or determination of such impacts.

10.    Your knowledge of any actual, potential, or future human health impact that resulted from or that may result from the *Deepwater Horizon* Spill and/or Response Activities, and of efforts undertaken to assess any such impact including but not limited to:

    a.  efforts to analyze, evaluate, determine, or study any actual, potential, or future impact on human health, including such efforts relating to the seriousness or lack of seriousness of any such impact on human health;

    b.  efforts to sample, monitor, or test Oil-Related Materials and/or Dispersants as part of any assessment of any actual, potential, or future impact on human health;

    c.   efforts to respond to, or otherwise mitigate, minimize, or prevent, any actual, potential, or future impact on human health;

    d.   statements commending Response Activities or mitigation efforts that affected any actual, potential, or future impact on human health, including determinations that any aspect of Response Activities or mitigation efforts relating to human health was effective or successful;

    e.   any contention that BPXP or any other entity did not effectively respond to, or otherwise mitigate, minimize, or prevent any actual, potential, or future impact on human health; and

    f.   any information regarding levels of pollutants that are of concern for long-term health effects.

11.    Any policies or guidance of the federal government regarding:

    a.   issuance of notices of violation, non-compliance, or incidents against non-operating investors or parties (collectively "NOIs") for violations of federal law applicable to leasing and operations activities on the outer Continental Shelf;

    b.   enforcement, calculation, and application of administrative or civil penalties against NOIs for violations of federal law applicable to leasing and operations activities on the outer Continental Shelf;

    c.   any notices actually issued to and enforcement actions actually taken against NOIs for violations of federal law applicable to leasing and operations activities on the outer Continental Shelf; and

    d.   any settlements, consent decrees, consent orders, administrative orders or other court orders or judgments related to any notices or enforcement actions identified in response to (c).

12.    Any policies, guidance, fair market value procedures, resource evaluations, modeling, or analyses conducted regarding leasing of oil and gas by the United States on the outer Continental Shelf, the Gulf of Mexico, or the Macondo Prospect (Mississippi Canyon Block 252 in particular), including without limitation lease sales, bids on leases, surety bonds, bonuses, royalties and royalty relief, rental payments, or other monetary payments owed to the United States; revenue sharing with the States; and energy security, economic, or other benefits to the United States, any State, or local region.

Dated:  April 11, 2014

Respectfully submitted,

\_\_\_\_DRAFT_____
Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985
and

Don K. Haycraft (Bar # 14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

*Attorneys for BP Exploration & Production Inc.*

and


BINGHAM McCUTCHEN LLP
/s/ James J. Dragna_____
James J. Dragna
jim.dragna@bingham.com
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com

Thomas Lotterman
tom.lotterman@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

*Attorneys for Anadarko Petroleum Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 on this 11th day of April, 2014.

___DRAFT_____

# EXHIBIT 2 to

# Letter from S. Himmelhoch to Judge Shushan

# May 8, 2014

*April 21 merged Draft for meet and confer discussions*

**UNITED STATES DISTRICT OF COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL | § | MDL No. 2179 |
| RIG "DEEPWATER HORIZON" | § | |
| IN THE GULF OF MEXICO, | § | SECTION: J |
| ON APRIL 20, 2010 | § | |
| | § | JUDGE BARBIER |
| | § | MAG. JUDGE SHUSHAN |

**THIS DOCUMENT RELATES TO ALL CASES**

## DEPOSITION NOTICE OF DEFENDANTS BP EXPLORATION & PRODUCTION INC. AND ANADARKO PETROLEUM CORPORATION

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and PRE-TRIAL ORDER NO. 17 (as supplemented and amended by PRE-TRIAL ORDER 27)—designate and produce one or more officers, managers, agents, employees, or other representatives of  BP Exploration & Production Inc. and Anadarko Petroleum Corporation, to discuss the Areas of Inquiry identified below. In identifying each of the Areas of Inquiry below, the United States is not seeking to discover privileged or work product information, waiving any applicable privilege or work product claim, or making any representation as to the existence or scope of responsive, non-privileged information with respect to any particular Area of Inquiry.  The depositions shall take place in New Orleans unless otherwise scheduled by the Court and parties, and the times of the depositions will be scheduled in conjunction with the designees' fact depositions in their individual capacities, or otherwise as may be scheduled with Judge Shushan and the parties.

1

*April 21 merged Draft for meet and confer discussions*

## **DEFINITIONS**

As used herein, the following terms are defined as follows:

1.      "Anadarko," "Anadarko Petroleum Corporation" and "APC" means Anadarko Petroleum Corporation and its consolidated subsidiaries, unless stated otherwise.

2.      "BP" means BP plc and its subsidiaries, including relevant predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its/their behalf.

3.      "BP Exploration & Production Inc." ("BPXP") means the BP entity that bid for and was awarded the right to lease Mississippi Canyon Block 252 ("MC-252").  BPXP is a Delaware corporation with its principal place of business in Texas.  BPXP includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

4.      "BP America Production Company" ("BPAPC") was a party to the drilling contract concerning the use of the Deepwater Horizon to drill the Macondo well. BP America Production Company is a Delaware corporation with its principal place of business in Texas. BPAPC includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

5.      "BP Company North America Inc." is a Delaware corporation with its principal place of business in Illinois.  BP Company North America Inc. includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

2

*April 21 merged Draft for meet and confer discussions*

6.      "BP Corporation North America Inc." is an Indiana corporation with its principal place of business in Texas.   BP Corporation North America Inc. includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

7.      "BP America Inc." is a Delaware corporation with its principal place of business in Texas.  BP America Inc. includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

8.      "BP Holdings North America" is a UK private limited company with its principle place of business in the United States.  BP Holdings North America includes its predecessors, successors, subsidiaries, departments, and divisions, together with all current and former directors, officers, employees, agents, representatives, or persons acting on its behalf.

9.      "BP p.l.c." or "BP plc" means the parent corporation of the BP group of companies.  The company was incorporated in 1909 in England and changed its name to BP p.l.c. in 2001.

10.      "Consolidating financial statements" means the financial reports (income statement, balance sheets, and statement of cash flows) for each subsidiary and the eliminations and adjustments that are made in preparing the ultimate consolidated financial statement for the parent company.

11.       "Identify," whether or not capitalized, with respect to: (a) an individual, shall mean to provide the individual's full name, job title, and employer during the period referred to, and current or last-known address and telephone number and business address and telephone

3

number; (b) any entity other than an individual, shall mean to provide the entity's full name and

current or last-known address (designating which); and (c) Information, shall mean to provide

the date, title, subject matter, author(s), and recipient(s) or the Bates number(s).

12.     "Incident" shall mean the loss of control of the MC252 Well and the fire and

explosion(s) on board, and resulting sinking of, Transocean's Deepwater Horizon rig, in addition

to the resulting oil spill in the Gulf of Mexico.

13.     "Information" shall have the meaning set forth in Pretrial Order 22, Paragraph 2.

14.     "Lease" means the Oil and Gas Lease of Submerged Lands under the Outer

Continental Shelf Lands Act, "Serial Number OCS-g 32306" pertaining to "All of Block 252,

Mississippi Canyon, OCS Official Protraction diagram, NH 16-10," also known as the Macondo

Prospect, an oil and gas prospect in the Gulf of Mexico, off the coast of Louisiana.

15.     "Macondo Prospect" means the Macondo Prospect (Mississippi Canyon Block

252, abbreviated MC252) an oil and gas prospect in the Gulf of Mexico, off the coast of

Louisiana. The prospect was the site of the Deepwater Horizon drilling rig explosion on April

20, 2010.

16.     "Macondo Well" means the exploratory well drilled and constructed pursuant to

the Lease as defined herein.

17.     "Material Transaction" means a transaction for the subject entity that meets the

standards of materiality as described in SEC Staff Accounting Bulletin No. 99 - Materiality and

by the FASB Statement of Financial Accounting Concepts No. 2.

*April 21 merged Draft for meet and confer discussions*

18.     "Person" refers to, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

19.     "Relating to," "referring to," "regarding," "concerning," "reflecting" or "with respect to" refers to, without limitation, the following concepts: discussing, describing, reflecting, concerning, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

20.     "Response" refers to oil spill response efforts, undertaken pursuant to Section 311(c) of the Federal Water Pollution Control Act, 33 U.S.C § 1321(c) and 40 CFR Part 300, to contain, collect, remove, disperse, and minimize the impact of hydrocarbons released from the Macondo well in connection with the Deepwater Horizon Incident (including through the use of technologies such as controlled in situ burning, dispersants, skimming, and the placement of booms), including any activities BP or APC seeks to introduce evidence of, reference, or discuss in the Penalty Phase.  This includes any natural resource damage costs, or any expenses related to determining, researching, and investigating those damages.

21.

## AREAS OF INQUIRY OF BPXP

1.     BPXP's role in and impact on the economy of the local community, Gulf of Mexico region, and the United States, including harm to the economy from the Deepwater Horizon oil spill

2.     BP's knowledge and adoption of existing technologies and safety practices, including but not limited to deepwater drilling safety practices and technology, prior to and since

5

*April 21 merged Draft for meet and confer discussions*

the Incident, including all factual bases for BPXP's contentions that it has developed

technological and safety advancements during the Response that were substantial, innovative,

highly valuable, and have improved industry standards, as well as all factual bases for BPXP's

contention that it has taken an industry-leading role and expended considerable effort in

improving deepwater drilling safety since the Incident.

~~3.      BP's knowledge and adoption of existing deepwater drilling safety practices and~~

~~technology prior to and since the Incident, including all factual bases for BPXP's contention that~~

~~it has taken an industry-leading role and expended considerable effort in improving deepwater~~

~~drilling safety since the Incident.~~

~~4.      Penalties sought and obtained against other companies, in other environmental~~

~~incidents, that BPXP contends the Court should consider in this case, including any similarities~~

~~or differences between those incidents and the Deepwater Horizon Incident and Spill.~~

~~5.~~3.    BP's knowledge during the spill of any potential risks of harm to human health or

the environment, including acute, chronic, or cumulative risks, associated with dispersants, and

BP's consideration of such risks when requesting approval to apply dispersants during the

Response.

~~6.~~4.    All factual bases for BPXP's contentions regarding the environmental impact,

lack of impact, and/or recovery, (including but not limited to Fish, Shoreline Environment, and

Wildlife), whether positive or negative, from the Deepwater Horizon Incident and Spill and the

subsequent Response, including without limitation impact or lack of impact from Oil-Materials,

Dispersants, any Response Activities, and/or any Mississippi River Diversions attempted,

undertaken, discussed, or considered.

6

*April 21 merged Draft for meet and confer discussions*

7.5.    BP's knowledge of all injuries or illnesses sustained during the Incident  and the subsequent Response, including but not limited to medical claims,  and with respect to such medical claims, investigation of those claims, correspondence, settlement, payments, etc., under any framework, including but not limited to the BP claims facility, the oil spill trust, the GCCF, the  Medical Benefits Settlement, or settlements with rig workers or families of rig workers; and all analyses conducted by BP regarding the impact, effect or seriousness of the Incident and Response on human health.

8.6.    BP's knowledge of the "Medical Encounters" and  "Injury and Illness" databases, including, but not limited to, the underlying Information from which these databases were created, the process by which the databases were created, the fields available, the structure and number tables,  any modifications or upgrades, the applications in which the databases operate, data entry and recall procedures, indexing and searching capability, quality assurance processes and controls, access restrictions, security precautions, the manner in which information from these databases can be accessed, and the ability to generate reports, queries, and other subsets of data.

9.7.    All factual bases for BPXP's contentions regarding actions taken or decisions made by the United States that may have made the any mitigation, remediation and/or Response efforts less effective.

10.8.   The financial performance, historical trends and future projections for BP, including without limitation facts, analyses, policies and practices regarding the following:

*April 21 merged Draft for meet and confer discussions*

  a. The data, metrics and other information bearing on the financial performance and status of BP as publicly reported in its Annual 20-F filings with the United States, SEC and/or the United Kingdom.

  b. Any of BP's contingent liabilities that, alone or combined, could have a significant impact on BP's financial performance or status, and for each such liability, the nature of the liability, the probability of its occurrence and the potential magnitude and timing of its financial impact.

  c. Any unused or available credit lines or debt capacity available to BP, including likely terms.

  d. The basis for BP's forward-looking projections for 2014 and into the future.

  e. The contribution of exploration, production and related operations both as a global segment and in the Gulf of Mexico to BP's profitability.

  f. Plans, proposals, or suggestions under development or consideration by BP, whether preliminary or otherwise, to sell further assets.

~~11.~~9.  The factual basis for any contention that a civil penalty of up to $18 billion would have a significant adverse impact on the business operations of BPXP, taking into account without limitation ~~(taking into account~~ its historical financial relationships with other BP entities both pre- and post- Incident, ~~), and including without limitation the following information~~ and its financial and corporate~~ion~~ relationship with ~~for~~ each of ~~BPXP,~~ BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America and BP p.l.c. from 2005 to the present, including without limitation:

8

*April 21 merged Draft for meet and confer discussions*

   a.   Sources and uses of funds and transfers between or among BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America and/or BP p.l.c. or loans between or among those BP entities.

   b.   Sources and uses of funds and transfers between BPXP and any other BP entity, whether referenced above or not, and loans between BPXP and any other BP entities, whether referenced above or not.

   c.   Payment of dividends from each of BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America and BP p.l.c. to another BP corporate entity, including the amount of and history of dividends paid by BPXP to any other BP corporate entity.

   d.   Practices regarding one or more of BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America or BP p.l.c. financing the investments, operations, or other expenditures of other BP entities, and instances where that occurred.

   e.   Inter-company transactions, including those pursuant to service agreements (involving employees, technical, engineering, commercial, marketing, environmental, legal, tax, banking, investment, financial, accounting, administrative, or other services) or secondment agreements and any other transactions;

*April 21 merged Draft for meet and confer discussions*

  f. Basis for the allocation of overhead or services provided by one BP entity to other BP entities;

  g. Transfer and inter-company pricing policies and practices for the pricing of goods or services provided by one BP entity to another;

  h. Guarantees of debt or other obligations by one BP entity for another; and,

  i. Sales or other transfers of goods, services or assets from BPXP or from BP to unaffiliated third parties, i.e. any non-BP entity.

12.10. Any expenditure(s) that any BP entity has made in connection with the Incident or Response or any other mitigation activities that BPXP contends should diminish its obligation to pay a civil penalty, and the facts concerning each such expenditure including:

  a. Identification of the expenditure, including which BP entity or entities incurred costs at any stage related to the expenditure;

  b. Which BP entity financed the expenditure, initially and ultimately, including inter--BP company transfers or sales of assets;

  c. The accounting and tax treatment of the expenditures for all involved BP entities including before and after tax costs;

  d. Any BP entity providing guarantees for the expenditure;

  e. Impact of the expenditure on BP's financial condition and operational capability at the time and into the future;

  f. Any debt owed by BPXP as a result of such expenditure and to whom or what entity such debt is owed.

*April 21 merged Draft for meet and confer discussions*

~~Any facts, information and analyses that BPXP contends are relevant to any of the eight~~

~~penalty factors in 33 U.S.C. § 1321(b)(8) to the extent not already covered by or included~~

~~in any of the foregoing topics.~~

~~The civil penalty amount that BPXP contends would force it to discontinue its business~~

~~operations if imposed by the Court in this case, and the factual basis for that contention.~~

~~The civil penalty amount that BPXP contends would force BP to discontinue its business~~

~~operations if imposed by the Court in this case, and the factual basis for that contention.~~

### AREAS OF INQUIRY OF ANADARKO

1.      Anadarko's ("APC") Gulf of Mexico offshore operations' role in and impact on the economy of the local community, Gulf of Mexico region, and the United States, including harm to the economy from the Deepwater Horizon oil spill.

2.      The financial performance, historical trends and future projections for Anadarko, including without limitation facts, analyses, policies and practices regarding the following:

     a.   The data, metrics and other information bearing on the financial performance and status of APC as publicly reported in its Annual Form 10-K and Quarterly Form 10-Q filings with the United States SEC.

     b.    Any of APC's contingent liabilities that, alone or combined, could have a significant impact on APC's financial performance or status; and for each such liability, the nature of the liability, the probability of its occurrence and the potential magnitude and timing of its financial impact.

11

    c.   Any unused or available credit lines or debt capacity available to APC, including likely terms.

    d.   The basis for APC's forward-looking projections for 2014 and into the future.

    e.   The contribution of exploration, production and related operations both as a global segment and in the Gulf of Mexico to APC's profitability.

    f.   Plans, proposals, or suggestions under development or consideration by Anadarko, whether preliminary or otherwise, to sell further assets.

3.      Facts and information regarding any sale or transfer of assets to third parties (i.e., non-APC companies or affiliates) from 2008 to 2014, including the amount, date, and the APC company or affiliate and third party involved in the transfer.

4.      Any expenditure(s) made by any APC entity since 2010 in connection with the Incident, Response or any other  mitigation activities that APC contends should diminish its obligation to pay a civil penalty; and the facts concerning each expenditure, including without limitation for each:

    a.   Identification and description of the expenditure, including the purpose and scope, and which APC entity or entities were involved at any stage.

    b.   Whether and to what extent the expenditure was expensed or capitalized and, for the latter, the useful life or lives assumed for tax-related purposes.

    c.   Any other tax credits or incentives (e.g., local, State or Federal) APC gained for the expenditure.

    d.   The impact of the expenditure on Anadarko's financial condition and operational capability at the time and into the future.

*April 21 merged Draft for meet and confer discussions*

5.      The economic impact, if any, of the recent settlement filed on April 3, 2014 (Dkt.

No. 635) in *In re: Tronox*, Adv. Proc. No. 09-01198-alg (Bankr. S.D.N.Y.) on APC's on-going

business operations and its position regarding whether that settlement in any way impacts APC's

ability to finance a civil penalty in this litigation.

6.      All facts, analyses, and any other information that supports or may contradict

Anadarko's contentions regarding its efforts to minimize or mitigate the effects of the Incident

and Response including facts, analyses, and any other information related to the following topics

that Anadarko contends are relevant and are cited in its First Amended Initial Disclosures served

on April 4, 2014:  Anadarko's offers of assistance after the Incident and its role in responding to

the Incident; Anadarko's $4 billion settlement with BP in relation to the Incident; and

Anadarko's contribution to the Rockefeller Philanthropy Advisor's Fund for Gulf Communities.

7.      All facts, analyses, and any other information that supports or may contradict

Anadarko's contentions regarding the benefit to the United States of offshore drilling

development, including, but not limited to:  Anadarko's payments or non-payments of royalties

to the United States, or any disputes regarding royalties to the United States, including with

respect to oil collected from the Macondo Incident.

8.      All facts, analysis, and any other information that supports or may contradict

Anadarko's contentions regarding the "other matters as justice may require" penalty factor,

including, if Anadarko contends such topics are relevant, its contentions related to (1)

government oversight, approvals, and compliance requirements for deepwater drilling generally

and for the Macondo well specifically; (2) ~~government enforcement actions, including criminal actions, with respect to the Incident; (3)~~ pre- and post-Incident regulatory guidance,

*April 21 merged Draft for meet and confer discussions*

recommendations and practice regarding deepwater drilling and enforcement history as it relates to operators; (34) industry custom and practice (including contractual relationships) between designated operators and non-operators; (45) potential and actual impacts on (i) non-operators; (ii) investment in offshore oil development, (iii) offshore drilling operations, and (iv) industry custom and practice (including contractual relationships) if penalties (or threat of penalties) are imposed on non-operators; and (56) efficacy of penalties against non-operators, contractors, and non-operating parties.

9.      All facts, analyses or any other information that supports or may contradict Anadarko's contentions in the Penalty Phase regarding the impact, effect or seriousness of the Incident and Response on the environment, human health, and the economy, to the extent that Anadarko's contentions or facts, information or analyses are separate and independent from BP's contentions in the Penalty Phase.

10.      Any facts, information and analyses that Anadarko contends are relevant to any of the eight penalty factors in 33 U.S.C. § 1321(b)(8) to the extent not already covered by or included in the foregoing topics.

11.      The civil penalty amount that Anadarko contends would force it to discontinue its business operations if imposed by the Court in this case, and the factual basis for that contention.

*April 21 merged Draft for meet and confer discussions*

Respectfully submitted,


BRIAN HAUCK
Deputy Assistant Attorney General
Civil Division
PETER FROST
Director, Torts Branch, Civil Division
Admiralty and Aviation
SHARON SHUTLER
MALINDA LAWRENCE
LAURA MAYBERRY
Trial Attorneys
R. MICHAEL UNDERHILL, T.A
Attorney in Charge, West Coast Office

ROBERT G. DREHER
Acting Assistant Attorney General
Environment & Natural Resources Division
MICHAEL MCNULTY
SARAH HIMMELHOCH
Senior Litigation Counsel
NANCY FLICKINGER
Senior Attorney
PATRICK CASEY
RICHARD GLADSTEIN
DANIEL S. SMITH
Senior Counsel
ABIGAIL ANDRE
A. NATHANIEL CHAKERES
ANNA CROSS
RACHEL HANKEY
JUDY HARVEY
RACHEL KING
ERICA PENCAK
BRANDON ROBERS
GORDON YOUNG
Trial Attorneys

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
Facsimile:   202-514-2583
E-mail:  steve.o'rourke@usdoj.gov
KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana

15

*April 21 merged Draft for meet and confer discussions*

<div style="margin-left: 45%;">

SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana

</div>

# EXHIBIT 3 to

# Letter from S. Himmelhoch to Judge Shushan

# May 8, 2014

## Himmelhoch, Sarah (ENRD)

| | |
|---|---|
| **From:** | Himmelhoch, Sarah (ENRD) |
| **Sent:** | Thursday, May 08, 2014 10:29 AM |
| **To:** | 'Langan, Andrew'; O'Rourke, Steve (ENRD); Karis, Hariklia; Kirby, Ky E. |
| **Cc:** | *mbrock@cov.com; Nomellini, Mark J.; Jakola, Katie; *Brian.Israel@aporter.com; Andre, Abigail (ENRD); DeSantis, Karen McCartan; Horizon, Deepwater; Lotterman, Thomas R.; Dragna, Jim; Halverson, David M. |
| **Subject:** | RE: MDL2179-, 10-4536 Penalty Phase -- Numbers of Depositions |

Andy –

Thank you for your response to our offer to mutually withdraw all environmental and human health impact Rule 30(b)(6) topics.  Unfortunately, your proposal would leave us with no opportunity to discover BP's positions with respect to environmental and human health impacts, while imposing a significant burden upon the United States.  For these reasons, we cannot accept your offer.  I believe we are now at an impasse with respect to these issues and will bring the issue to Judge Shushan for resolution.

Sarah D. Himmelhoch
Senior Litigation Counsel for E-Discovery
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
202-514-0180 (phone)

---

**From:** Langan, Andrew [mailto:alangan@kirkland.com]
**Sent:** Tuesday, May 06, 2014 7:57 PM
**To:** O'Rourke, Steve (ENRD); Karis, Hariklia; Himmelhoch, Sarah (ENRD); Kirby, Ky E.
**Cc:** *mbrock@cov.com; Nomellini, Mark J.; Jakola, Katie; *Brian.Israel@aporter.com; Andre, Abigail (ENRD); DeSantis, Karen McCartan; Horizon, Deepwater; Lotterman, Thomas R.; Dragna, Jim; Halverson, David M.
**Subject:** RE: MDL2179-, 10-4536 Penalty Phase -- Numbers of Depositions

Dear Steve,

      Thank you for your May 5 mail below responding to our proposal of last Wednesday, April 30, regarding depositions of fact witnesses.

      We decline the US's proposal below for several reasons.  First, we continue to believe it is premature to identify BPXP's trial witnesses  now, when written discovery has just begun and no depositions have been taken.  We view the US's proposal for "may call" witnesses as requiring precisely that.  As you are aware, BPXP provided a list of potential witnesses who may be called upon to testify in its initial and supplemental Rule 26(a) disclosures.  We will once again review our list to determine if any names can be withdrawn but beyond that, we believe that those individuals are potential witnesses.  Moreover, to streamline the process, as we indicated during our meet and confer last week, we propose that the parties first discuss fact witnesses and then identify 30(b)(6) witnesses, as doing so may decrease the total number of fact witnesses necessary for deposition and total number of deposition bundles to be submitted for trial.

      Perhaps a compromise the parties might consider is to have the parties identify the top 10 witnesses each side wishes to depose, allow the other side a couple of days to determine how many deponents it needs to present on Rule 30(b)(6) topics beyond the individuals identified for deposition, and then discuss those

additional witnesses, and whether additional deponents are required.  It may be the case that very few, if any, additional witnesses are required.

Then, if during the course of discovery, any individual is identified as a witness to be called to trial, that fact can be disclosed to the other side and their deposition can be taken.  This will allow each party to take the depositions required to support its case and also allow the other side an opportunity to examine a witness if he/she is identified as a trial witnesses.

Please let us know if this proposal is acceptable.

Second, BPXP does not agree with the various fact witness restrictions the US has asserted for at least 6 of the government's current and former employees.  (See your April 25, 2014 letter, which has a January 17, 2014 date, which we think is an error.)  BPXP timely and properly disclosed such witnesses in its Rule 26(a) submissions.  As an initial matter, BPXP agrees to not deposing previously deposed witnesses, specifically, Admirals Allan and Watson.  However, the other witnesses to which the US has asserted objections to their depositions, including Poulin, Zukunft, Lubchenco, Haddad and Michel, each have relevant fact information that BPXP has never been permitted to discover.

Specifically, you have objected to certain witnesses because you assert they have substantial NRD involvement.  In the interest of compromise and cooperation, in response to your offer, we will agree to depose Dr. Childs, whom you say has greater knowledge than Dr. Haddad,  in lieu of Dr. Haddad, provided that the U.S. also agrees to produce Dr. Michel for deposition.  If Dr. Childs cannot answer the questions that would have been appropriate for Dr. Haddad, we reserve the right to seeks Dr. Haddad's deposition.

As for the other witness in this category, namely Jaqueline Michel, the US SCAT Team Lead during the Response, it is BPXP's view that she is required to appear for deposition pursuant to the federal rules.  To the extent that she or any other witnesses have access to privileged information through their NRD or involvement in privileged work streams, if questions are asked during their depositions that call for such information, appropriate objections can be lodged at that time.  We do not agree that merely because a witness has been involved in NRD related work, all their testimony is off limits.  Such a restriction and objection is broader than the limitation the court imposed for NRD related work and broader than the federal rules permit.  These witnesses also have substantial non-NRD related knowledge.  BPXP is permitted to discover such information.  As you are likely aware, some of BPXP's current and former employees also have substantial NRD  related knowledge and involvement, but we are not objecting to their depositions, though we reserve the right to assert appropriate objections during the depositions.

DOJ has identified category of individuals as "high level government officials" and objected to their deposition (except we note that DOJ no longer objects to the deposition of Dr. Howard).  We likewise do not agree that their depositions are off limits.  Indeed, some of these witnesses are no longer with the US government.

Separately but relatedly, you have also asked about each side potentially "pulling down" topics identified in the parties' draft Rule 30(b)(6) deposition notices.  Specifically, during the May 1 telephone conference with the Court, the U.S. proposed that it would withdraw topics 3-6 of its Rule 30(b)(6) notice in exchange for BPXP's withdrawal of topics 1, 2(a), 4, 5 and 6.  At this point, BPXP cannot agree to withdraw topics 1, 2(a), or 4 from the draft defense notice.  In exchange for the U.S.'s withdrawal of topics 3-6 as offered by the U.S., however, BPXP is willing to withdraw  BPXP's topic 5 (on the condition that Jacqui Michel, Jane Lubchenco and Carl Childs be made available for deposition).  In addition, as part of this arrangement, BPXP would also withdraw topic 6 in return for the USA agreeing to run searches of particular custodians pursuant to search terms we would propose (and to which the USA would reasonably agree)  re the Mississippi River diversion.  As another part of this compromise, with respect to topic 1, we would also agree to exclude questioning regarding non-public NRDA information, but BPXP should be able to ask about public statements

and publications related to the environment, even if part of the NRDA.  Please let us know if this proposal is acceptable to you.

We look forward to further discussing these issues with you.  If we cannot reach an agreement on the fact witnesses, we will require the court's assistance before we finalize the list of deponents and deposition dates.  Further, given the various open issues facing the parties, we should discuss the way forward given the May 12 deadline the parties face per the Court's April 21 scheduling order.


Best regards

Andy Langan


**J. Andrew Langan, P.C.**

**KIRKLAND & ELLIS LLP**
300 North LaSalle Street Chicago, IL 60654
Tel. +1-312-862-2064  Fax +1-312-862-2200

andrew.langan@kirkland.com

---

**From:** O'Rourke, Steve (ENRD) [mailto:Steve.O'Rourke@usdoj.gov]
**Sent:** Monday, May 05, 2014 2:21 PM
**To:** Karis, Hariklia; *Sarah.Himmelhoch@usdoj.gov; Kirby, Ky E.
**Cc:** *mbrock@cov.com; Langan, Andrew; Nomellini, Mark J.; Jakola, Katie; *Brian.Israel@aporter.com; *abigail.andre@usdoj.gov; DeSantis, Karen McCartan; *deepwater.horizon@usdoj.gov; Lotterman, Thomas R.; Dragna, Jim; Halverson, David M.
**Subject:** MDL2179-, 10-4536 Penalty Phase -- Numbers of Depositions

Dear Counsel:

I write regarding the number of depositions. We understand the bidding as follows:

-BP proposes that BP and the US each can take 10 to 12 depositions, with each side getting to depose whoever they want from the witnesses listed in the 26(a) disclosures. That limit includes anyone who is also designated a 30(b)(6) designee. To the extent that BP "may call" witnesses at trial that the US had not named for deposition, there will be additional depositions of those witnesses, above the limit of 10 (or 12). If I have misunderstood your offer, please correct my error.

-The US proposed that each side could take five depositions from those listed in the 26(a) disclosures, and that each party could also identify up to five additional "may call" witnesses to support its case, and those five would have their depositions taken too. That would yield a hard limit of 10 fact witnesses to be bundled for trial (in addition to Rule 30(b)(6) designees).

-Under either proposal, the US and APC will discuss depositions separately, and not as part of the BP-US discussions.

We do not agree with BP's proposal, as it gives an uncertain number of depositions, and uncertain number of transcripts to be bundle for trial. The US would also be at some level guessing at who BP might call to trial when selecting the initial 10.

Therefore, as a compromise between our two proposals, we suggest that the limit be 12 (an increase from our first proposal). Seven of those twelve would be affirmative depositions, selected by the opposing party, and five would be

3

"may call" witnesses selected by the offering party. No witness who does not sit for deposition can appear at trial. That would yield a hard limit of 12 fact witnesses to be bundled for trial (in addition to Rule 30(b)(6) designees), and eliminate any "work around" witnesses.

As to the 30(b)(6) designees, we all seem to agree that identifying the Rule 30(b)(6) designees by name, this week, is the goal, although the exact date remains unclear.

Regarding the 30(b)(6) topics, last week we had proposed to mutually drop all topics about human health or environmental harm (essentially to agree that those topics would be for expert rather than 30(b)(6) witnesses). Please let us know whether you have decided to agree with that idea or not.

Finally, we are considering the limit on the number of expert witnesses and will get back to you shortly.

Thank you,
Steve

Steven O'Rourke
Environmental Enforcement Section
U.S. Department of Justice
Mail: P.O. Box 7611 Washington, D.C. 20044-7611
Overnight: ENRD Mail Room, 601 D Street, N.W. Washington D.C. 20004
Telephone: (202) 514-2779
Facsimile: (202) 514-2583
E-mail:  steve.o'rourke@usdoj.gov

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



**U.S. Department of Justice**
Environment and Natural Resources Division
Environmental Enforcement Section

90-5-1-1-10026

*Sarah D. Himmelhoch*                                                    *Telephone (202) 514-0180*
*U.S. Mail:  P.O. Box 7611, Washington, DC  20044-7611*                  *Facsimile (202) 514-2583*
*Overnight Mail:   601 D Street N.W., Washington, DC, 20004*
*E-mail: sarah.himmelhoch@usdoj.gov*

May 13, 2014

BY ELECTRONIC MAIL

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
 Eastern District of Louisiana
Hale Boggs Federal Building
United States Courthouse
500 Poydras Street
New Orleans, LA 70130
Sally_Shushan@laed.uscourts.gov

        Re:    <u>MDL 2179 - 10-4536 Penalty Phase Preparation</u>

Dear Judge Shushan:

        I write to follow up on the letter I submitted on May 8, 2014 regarding BP's proposed deposition topics.  The parties have continued to meet and confer and have been able to reach agreement on certain topics.  Specifically, in return for the United States' withdrawing its reciprocal topics on human health, BP has agreed to withdraw its topics 2, as it relates to human health, and 10.  *See* Exhibit 1.  Accordingly, the United States withdraws its motion with respect to those two topics.

        In addition, the parties are very close to resolving the United States' objection to topic 2.b.  *See* Exhibit 2.  Accordingly, it may be appropriate to place any ruling on that topic in abeyance until after BP has had an opportunity to respond to the United States' offer.

        Finally, I wanted to clear up some confusion that may have been created by the United States' schedule for deposition.  In the desire to make scheduling as efficient as possible, the United States included dates and designees for some of the topics that were the subject of my May 8, 2014 letter.  In doing so, we did not waive or withdraw our objection to those topics.  Rather, we were making sure that, in the unlikely event our objections are overruled, there was space for the depositions on the calendar.

        I appreciate your continued attention to this matter and look forward to discussing these and other issues with you and the Defendants during our Thursday status conference.

                                        Respectfully submitted,

                                        /s/ Sarah D. Himmelhoch

                                        Sarah D. Himmelhoch

cc:     Andy Langan
        Ky Kirby

**EXHIBIT 1 to Letter from Himmelhoch to Judge Shushan (May 13, 2014)**

**Himmelhoch, Sarah (ENRD)**

| | |
|---|---|
| **From:** | Pencak, Erica (ENRD) |
| **Sent:** | Monday, May 12, 2014 10:02 AM |
| **To:** | DeSantis, Karen McCartan; Andre, Abigail (ENRD) |
| **Cc:** | Himmelhoch, Sarah (ENRD); O'Rourke, Steve (ENRD); 'jim.dragna@bingham.com'; 'Thomas.Lotterman@bingham.com'; 'Ky.Kirby@bingham.com'; *mbrock@cov.com; *dkhaycraft@liskow.com; Langan, Andrew; Karis, Hariklia; Jakola, Katie; Nomellini, Mark J.; *Brian.Israel@aporter.com; *Elissa.Preheim@aporter.com; Johnson, Ebony; Pruitt, Andrew |
| **Subject:** | RE: Penalty Phase: May 8 meet and confer: human health issues |

Dear Karen,

Thank you for your email.  We will get back to you on other follow-up items in subsequent emails, but wanted to send this response as soon as possible, due to today's deadline regarding deposition scheduling:

Regarding human health 30(b)(6) topics, we are in agreement to drop the human health-related topics – BP will drop Topic 2 as it pertains to human health, and Topic 10, and the US will drop Topics 3, 5, and 6.  There will be no 30(b)(6) witnesses made available for deposition on human health issues from either side.  We are agreeing to drop Topic 6 conditioned on your agreement that BP will produce "some agreed upon form of explanatory information about the database."

Best regards,
Erica

---

**From:** DeSantis, Karen McCartan [mailto:kdesantis@kirkland.com]
**Sent:** Friday, May 09, 2014 9:21 PM
**To:** Andre, Abigail (ENRD)
**Cc:** Himmelhoch, Sarah (ENRD); Pencak, Erica (ENRD); O'Rourke, Steve (ENRD); 'jim.dragna@bingham.com'; 'Thomas.Lotterman@bingham.com'; 'Ky.Kirby@bingham.com'; *mbrock@cov.com; *dkhaycraft@liskow.com; Langan, Andrew; Karis, Hariklia; Jakola, Katie; Nomellini, Mark J.; *Brian.Israel@aporter.com; *Elissa.Preheim@aporter.com; Johnson, Ebony; Pruitt, Andrew
**Subject:** RE: Penalty Phase: May 8 meet and confer: human health issues

Dear Abby,

Thank you and Erica for coming to our offices for the human health meet and confer yesterday. It was a productive session. We appreciate your follow-up email and are sending updates and clarifications as follows:

Stipulations

-We are working on and will soon circulate prefatory language for the proposed Additional Stipulated Facts Concerning the Medical Benefits Class Action Settlement. We understand that you will review and respond.

    --  Regarding the Medical Benefits Class Action Settlement, our broader team has discussed the fact that the settlement and supporting documents are a matter of Court record, and the Court may not want the documents moved into evidence, particularly if the parties can simply reference documents in the record. This should be a topic of further discussion for the parties.

-We look forward to your response regarding our proposed stipulation concerning rig workers.

RFPs

-After broader discussion today regarding prospective production of the medical encounters database and the injury and illness database, BPXP will agree to produce a redacted version of the medical encounters database and some agreed upon form of explanatory information about the database, provided that the U.S. and BPXP can agree that BPXP will not be obligated to produce any other documents requested in the U.S.'s RFP 19, and provided that the U.S. will continue to agree to produce the custodial file of John Howard, updated custodial files of U.S. custodians identified on BPXP's 26(a) disclosure, using broad, previously agreed-upon search terms; daily OSHA reports; and public records relating to the ongoing NIEHS study.  We would not ask that the U.S. produce any additional analyses on human health issues (unless relied upon by experts). Based on our conversation yesterday, we believe that a redacted medical encounters database will provide the database information in which you are interested. It may be useful for us to have a further meet and confer by telephone regarding the injury and illness database and our reasons for not agreeing to produce that database.

Witnesses/Files

-We have considered our discussion of yesterday regarding the prospect of agreement between the U.S. and BPXP that specific 30(b)(6) topics relating to human health--U.S. topics 3, 5, and 6; and BPXP topic 2 (only as it pertains to human health) and topic 10-- would be dropped from our respective notices and that no 30(b)(6) witnesses would be made available for deposition on human health issues. BPXP is willing to enter into such a mutual agreement with the U.S., and we know that you are having discussions within your team regarding your interest in entering such an agreement, understanding, of course, that the agreement would be limited to human health issues and would have no bearing on discussions concerning environmental issues and environmental topics covered in our respective 30(b)(6) notices.

-Also, as discussed, next week, we will be removing the names of some witnesses with knowledge of human health issues from our Rule 26(a) disclosure.

-Regarding custodial files, we discussed at our conference precedent from prior phases and what might be reasonable with respect to witnesses on human health. We do not recall that we specifically discussed either precedent or future practice with respect to 30(b)(6) witnesses who might also serve as fact witnesses. Regardless, it is our understanding that the broader teams representing both BPXP and the U.S. are having discussions regarding custodial file production in the Penalty Phase, including discussion yesterday afternoon, and those discussions and separate correspondence will dictate how custodial file productions are handled for witnesses in this phase of the litigation.

While this email is not intended to summarize all areas discussed yesterday or all areas for follow-up, I wanted you to have this information today so that we can continue to move ahead.

Thanks,
Karen

**Karen McCartan DeSantis**

KIRKLAND &ELLIS  LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel (202) 879-5217
Fax (202) 879-5200

karen.desantis@kirkland.com

---

**From:** Andre, Abigail (ENRD) [mailto:Abigail.Andre@usdoj.gov]
**Sent:** Friday, May 09, 2014 1:58 PM
**To:** DeSantis, Karen McCartan
**Cc:** *Sarah.Himmelhoch@usdoj.gov; *erica.pencak@usdoj.gov; *steve.o'rourke@usdoj.gov; 'jim.dragna@bingham.com';
'Thomas.Lotterman@bingham.com'; 'Ky.Kirby@bingham.com'; *mbrock@cov.com; *dkhaycraft@liskow.com; Langan,
Andrew; Karis, Hariklia; Jakola, Katie; Nomellini, Mark J.; *Brian.Israel@aporter.com; *Elissa.Preheim@aporter.com
**Subject:** RE: Penalty Phase: May 8 meet and confer: human health issues

Dear Karen,

Thanks again for hosting the human health meet-and-confer yesterday.  We felt that it was very productive.  As
promised, here is a list of agreements and the follow-up tasks.  We're working on ours and will send you updates as soon
as we can.

Stipulations
- BP agreed to draft and circulate prefatory language to the proposed Stipulated Facts Concerning the Medical
  Benefits Class Action Settlement and the US agreed to review and comment on that language
  o If the parties cannot quickly come to mutually agreeable language, the both BP and the US agreed to
    discuss with their larger teams the idea of jointly moving to enter the medical benefits settlement
    agreement into evidence for the Penalty Phase.
    ▪ the US noted that we would want to move in the settlement agreement in its entirety, including
      all attachments and appendices, and that for the sake of completeness, it would make sense to
      enter the economic and property damages settlement agreement as well
    ▪ BP noted that that there is a good deal of expert-like testimony in the declarations attached to
      the medical benefits settlement agreement and requested assurance that the US would not
      object to BP's presentation of expert testimony at trial as cumulative or duplicative of the
      testimony contained in the declarations.
      • We continue to argue that all evidence about human health, environmental, or other
        harms are cumulative and a waste of time, per our motion on the "Seriousness" factor,
        and reserve the right to renew that objection. If that objection is overruled, then the US
        agrees that it would not further object to BP's expert testimony at trial as being
        specifically duplicative of the testimony contained in the declarations to the medical
        benefits settlement agreement.
      • We also reserve the right to object to BP's expert testimony at trial as cumulative on
        other grounds (if it is so).
    ▪ We suggest that when we move in the medical settlement and its documents we also move in
      the economic settlement in its entirety.

- The US agreed to review and provide comments on BP's proposed stipulation  on the personal injury and
  wrongful death settlements

RFPs
- After discussing the Medical Encounters Database and the Injury and Illness Database, including the fact that
  these databases were provided to the Claims Administrator after the parties to the Medical Benefits Class Action
  Settlement jointly moved the Court to Order BP to produce the databases (see Section XXI.B. of the Medical
  Benefits Class Action Settlement Agreement and Rec. Doc. 6505, attached), the US requests that BP reconsider
  its decision to refrain from producing these databases in response to RFP 19(3).

- o The US confirmed it was no longer seeking the underlying information on which these databases were created
- BP RFP 8.  The US reported that "commending" search string BP requested in meet-and-confer is being tested and may need revision because of the number of hits we're seeing for the word "good." As written, the string is pulling any document that says, e.g., good morning or good evening. The United States is working to minimize this and will follow up on progress.

ROGs

- The United States agreed to reach out to agencies to see whether further agency publications on human health may be expected between now and trial. As we stated in the meeting, we will not prevent agencies from publishing and do not believe we have any obligation to update you about this topic. That said, we have committed to follow up with EPA and CDC and will do so. We also agreed to look into whether there is data/analysis that the agencies have but have not made public.

30(b)(6) Topics

- BP and the US agreed to take back to their teams the idea of mutually dropping BP's Topic 10, the human health aspects of BP's Topic 2, and the US's Topics 3, 5, and 6, even if the environmental harm teams could not agree to mutually drop their 30(b)(6) topics.
- We also discussed the idea of approaching the United States' Topic 6, which asks for testimony on the databases requested in US RFP 19(3), by some means other than a 30(b)(6). For example, an explanatory affidavit or some other admissible agreement that what BP provides is reliable, accurate, etc.

Production of Expert reliance Materials: We agreed that both parties have an ongoing duty to produce expert materials that are not publicly available and have not previously been produced that are provided by counsel to the expert.

Custodial files: We agreed that custodial files need not be produced for 30b6 witnesses but should be produced for fact witnesses, including any fact witness who is also a 30b6 witness. BP also suggested it would pull down some of its fact witnesses on human health.

This email is not intended to encompass all of the topics we discussed, but rather the areas of follow-up that the parties agreed to.  Please feel free to supplement as necessary.

Best regards,


Abby


Abby André
Trial Attorney
Environmental Enforcement Section
U.S. Department of Justice
Mail: P.O. Box 7611 Washington, D.C. 20044-7611
Overnight: ENRD Mail Room, 601 D Street, N.W. Washington D.C. 20004
phone: (202) 305-2775
email: Abigail.Andre@usdoj.gov


**From:** DeSantis, Karen McCartan [mailto:kdesantis@kirkland.com]
**Sent:** Monday, May 05, 2014 8:45 PM
**To:** Andre, Abigail (ENRD)

Cc: Langan, Andrew; Karis, Hariklia; Jakola, Katie; Nomellini, Mark J.; *Brian.Israel@aporter.com; *mbrock@cov.com; Himmelhoch, Sarah (ENRD)
Subject: Penalty Phase: May 8 meet and confer: human health issues

Abby,

I am attaching three documents that may serve to facilitate discussion regarding both proposed human health stipulations and discovery on human health issues at our meet and confer scheduled for Thursday, May 8. The documents include 1) a document that simply cuts and pastes into one document all U.S. and BPXP discovery requests and responses pertaining to human health issues, along with all 30(b)(6) topics pertaining to human health (and we expect that this document will aid efficient discussion of discovery); 2) a very short set of proposed stipulations concerning the medical settlement that we have drafted for your consideration and for our discussion regarding the prospect of agreeing on stipulations concerning health claims; and 3) for everyone's convenience, BPXP's proposed human health stipulations that were submitted to the Court in March.

We ask that you please send to us any additional proposed stipulations that you would like to discuss on Thursday, as well as a description of other matters, if any, that you would like for us to address at the meeting.

Thanks,
Karen



Karen McCartan DeSantis
Kirkland and Ellis, LLP
655 Fifteenth Street, NW
Washington, DC 20005

(202) 879 5217


*********************************************************
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*********************************************************

*********************************************************
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*********************************************************

**EXHIBIT 2 to Letter from Himmelhoch to Judge Shushan (May 13, 2014)**

## Himmelhoch, Sarah (ENRD)

| | |
|---|---|
| **From:** | Himmelhoch, Sarah (ENRD) |
| **Sent:** | Tuesday, May 13, 2014 3:23 PM |
| **To:** | 'Langan, Andrew'; O'Rourke, Steve (ENRD); Andre, Abigail (ENRD); Casey, Patrick (ENRD); Hankey, Rachel (ENRD) |
| **Cc:** | Horizon, Deepwater; Karis, Hariklia |
| **Subject:** | RE: MDL 2179 Penalty Phase Discovery |

Andy –

Responding with respect to your item no. 2 below.  In her letter, Ms. Karis proposed the following search string for Coast Guard and Dr. Michel:

> In the Coast Guard Archive and in the files of custodian Jacqui Michel: (("BP" OR "Deepwater Horizon" OR "DWH" OR "RP") NEAR10 ("effective*" OR "efficient*" OR "prompt*" OR "quick*" OR "competent" OR "commend*" OR "excellent" OR "great" OR "good" OR "well done" OR "nice*"))

We have tested the search in the Coast Guard archives and discovered that the inclusion of the terms "Deepwater Horizon" and "DWH" result in a very high number of hits in documents that are not responsive to the request.  Similarly, using "good" results in the collection of all emails to and from BP that have the terms "good morning" or "good afternoon", etc., again resulting in a very high percentage of false positives.

Accordingly, we propose running a modified search string:

> ((BP OR RP) W/10 (effective* OR efficient* OR prompt* OR quick* OR competent OR commend* OR excellent OR great OR "well done" OR nice*))

We would run this string in the Coast Guard archive for the time period April 20, 2010 through December 31, 2013 and in Dr. Michel's custodial files for the period April 20, 2010 through January 31, 2011 if BP is willing to withdraw its topic 2.d. from the proposed Rule 30(b)(6) notice.

Please advise if this is acceptable to you.

Sarah D. Himmelhoch
Senior Litigation Counsel for E-Discovery
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
202-514-0180 (phone)

---

**From:** Langan, Andrew [mailto:alangan@kirkland.com]
**Sent:** Monday, May 12, 2014 4:40 PM
**To:** O'Rourke, Steve (ENRD); Andre, Abigail (ENRD); Himmelhoch, Sarah (ENRD); Casey, Patrick (ENRD); Hankey, Rachel (ENRD)
**Cc:** Horizon, Deepwater; Karis, Hariklia
**Subject:** FW: MDL 2179 Penalty Phase Discovery

Resending due to error message I got

**J. Andrew Langan, P.C.**

**KIRKLAND & ELLIS LLP**
300 North LaSalle Street Chicago, IL 60654
Tel. +1-312-862-2064  Fax +1-312-862-2200

andrew.langan@kirkland.com

---

**From:** Langan, Andrew
**Sent:** Monday, May 12, 2014 3:15 PM
**To:** *steve.o'rourke@usdoj.gov; *Sarah.Himmelhoch@usdoj.gov; *deepwater.horizon@usdoj.gov; *abigail.andre@usdoj.gov; *rachel.hankey@usdoj.gov; *patrick.casey@usdoj.gov
**Cc:** *mbrock@cov.com; Jim Dragna; Lotterman, Thomas R.; Ky Kirby; Karis, Hariklia
**Subject:** FW: MDL 2179 Penalty Phase Discovery

Dear Counsel:

Four more subjects to raise if I may please:

1.  With respect to our email earlier today (below), we have a correction to our designation for Topic 8.  We will not be designating Mr. Stott to cover that topic and are withdrawing his name.  We should be able to provide the specific person or persons covering No. 8 shortly.

2. Also, we write to follow up on our prior discussions concerning BPXP's Rule 30(b)(6) topics and Document Request No. 8.  In Sarah's May 8 letter to Judge Shushan, the United States objected to producing Rule 30(b)(6) witnesses on BPXP's topics 1, 2(a), 2(b), 4, 5, 6, 7 and 10.   From the proposed deposition schedule that we received from Steve today, however, it appears that the US is now willing to produce witnesses on BPXP's 30(b)(6) topics, except for topics 2(b) and topic 10 (per agreement with BPXP).   Please let us know if that is incorrect and that designation is being made subject to the prior objection by the United States.

3.  With respect to BPXP's topic 2(b), Sarah stated in her May 8 letter to Judge Shushan that "The United States has agreed to run the document search" proposed by BPXP for Document Request 8, regarding statements praising or commending the Response, and "will produce the results to BP."    BPXP makes the following proposal:  if the U.S. runs the proposed searches of the US Coast Guard Archive and Dr. Michel's files as proposed in Ms. Karis' April 24 letter with respect to Document Request 8, then BPXP will agree to withdraw its 30(b)(6) topic 2(b).  Please let me know if this proposal is acceptable to you.

4. The scheduling order dated April 21 (Rec Doc 12688) contemplates that a "joint submission" about Rule 30(b)(6) and fact witnesses is due today.   We assume this means to the Court.    I would propose a short note to MJ Shushan be sent today that informs the Court all three parties have started that process, provided fact and 30(b)(6) dep  dates (with more to come), and that we can update the Court Thursday.  And note the Court may need to resolve some issues.   Is that ok?

Best regards


Andy


**J. Andrew Langan, P.C.**

**KIRKLAND & ELLIS LLP**

300 North LaSalle Street Chicago, IL 60654
Tel. +1-312-862-2064  Fax +1-312-862-2200

andrew.langan@kirkland.com

**From:** Langan, Andrew
**Sent:** Monday, May 12, 2014 10:03 AM
**To:** *steve.o'rourke@usdoj.gov; *Sarah.Himmelhoch@usdoj.gov; *deepwater.horizon@usdoj.gov; *abigail.andre@usdoj.gov; *rachel.hankey@usdoj.gov; *patrick.casey@usdoj.gov
**Cc:** Karis, Hariklia; mbrock@cov.com; Jim Dragna; Lotterman, Thomas R.; Ky Kirby
**Subject:** MDL 2179 Penalty Phase Discovery

Dear Counsel:

Per our discussion on May 8, here is BPXP's update on its Rule 30(b)(6) designations and fact witness scheduling issues, as contemplated by the Court's scheduling order.

**<u>Rule 30(b)(6) Designation and Scheduling</u>**

At this time, BPXP is prepared to make the following designations of Rule 30(b)(6) designees, along with proposed deposition dates.

| Topic(s) | Name | Date for Deposition |
|---|---|---|
| 1, 2 | Richard Morrisson | June 20, 2014 |
| 4 | Laura Folse | June 16 |
| 7 | Mike Utsler | June 27 |
| 8 | Ronnie Stott | July 16 |
| 9 | Brian Smith | July 11 |

These designations are subject to (a) BPXP's prior objections as stated during the parties' meet and confer sessions;   (b) BPXP's formal objections to the USA notice which per the May 8 discussions will be served on May 21, 2014;   and (c) ongoing discussions with the United States regarding deleting certain additional  topics from each sides' Rule 30(b)(6) notice.

In addition, the parties have discussed, and it is BPXP's understanding, that generally speaking fact depositions in the Penalty Phase will be of 7 hours duration and conducted in New Orleans, although some exceptions may be made by agreement or for good cause shown;   we may propose that some of the 30(b)(6) (or fact)  depositions be conducted outside New Orleans.

We understand that per recent discussions, the United States is dropping topics 3, 5 and 6 from the USA notice.  Also, the parties are discussing stipulations and other arrangements that would end any need for a designee as to Topic 10.  For this reason, BPXP is not making a designation on Topic 10 but will be prepared to do so promptly if these discussions are not successful.

**<u>BPXP Fact Witness Deposition Scheduling</u>**

Subject to BPXP's prior objections noted during the parties' meet and confer discussions, BPXP states that it has secured a few dates for deposition of the witnesses that the United States has requested, and are working on dates for the others, as follows:

| Name | Deposition Date |
|------|-----------------|
| Nick Bamfield | TBD |
| David Bucknall | TBD |
| Jared Houge | July 18 |
| Brenda Pennington | TBD |
| Denise Robertson | TBD |
| Mike Robertson | July 10 |
| Brian Smith | July 11 |

BPXP notes that it does not waive any objections it may have to production of fact witnesses that may be burdensome, exceed applicable limits on discovery, or are otherwise objectionable.  By providing potential dates for these individuals, we do not agree that all their depositions should be taken, and reserve the right to address certain of these depositions with the Court.

In addition, consistent with requests made by the United States in recent meet and confer discussions about dropping witnesses from BPXP's Amended Rule 26(a) disclosures served April 4 whom BPXP does not anticipate calling at trial (and thus whose depositions can be foregone), BPXP also wishes to disclose at this time that it does not intend to call the following fact witnesses at trial of the Penalty Phase:

Ken Lindeman
Gabe Cuadra
Maris Travis
Heidi Grether
Bea Stong
Fred Tremmel

BPXP hereby amends its prior Rule 26(a) disclosures, including its Amended Rule 26(a) disclosures served April 4, to drop these witnesses.

## Fact Witnesses Depositions that BPXP Wishes to Conduct of Government Witnesses

At this time, BPXP desires to take at least following depositions of fact witnesses associated with the United States (in addition to the USA Rule 30(b)(6) designees) and the three government witnesses identified by the United States as potential trial witnesses (Lieutenant Frank Kulesa, Captain Meredith Austin, and Captain Roger Laferriere):

Dr. Robert Haddad/Dr. Carl Childs
Captain James Hanzalik
Captain Julia Hein
Dr. John Howard
Dr. Jane Lubchenco
Dr. Jacqueline Michel
Rear Admiral Steve Poulin
Captain Duke Walker

Rear Admiral Paul Zukunft

Meet and confer discussions continue on fact witnesses sought by both sides.  BPXP is aware of the United States' positions about the witnesses that BPXP has requested and also, of the possibility that further discussions about fact witnesses to be deposed by both sides may result in fewer and/or different witnesses being deposed.

Best regards

Andy Langan

**J. Andrew Langan, P.C.**

**KIRKLAND & ELLIS LLP**
300 North LaSalle Street Chicago, IL 60654
Tel. +1-312-862-2064  Fax +1-312-862-2200

andrew.langan@kirkland.com

*********************************************************
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*********************************************************