UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: 10-4536 | : : | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |
| ……………………………………………... | : | |

# BPXP'S MEMORANDUM IN OPPOSITION TO THE UNITED STATES' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND <u>RESPONSES TO INTERROGATORIES</u>

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985
Facsimile: (202) 662-6291

*Attorneys for BP Exploration & Production Inc.*

**Table of Contents**

INTRODUCTION ...........................................................................................................................1

I.  The US's Discovery Requests Remain Overbroad and Are Not "Limited." ........................1

II. BPXP Has Already Produced—and Will Continue to Produce—Discovery that Exceeds the Court's "Limited" Discovery Requirement. .....................................................4

  A.  RFP 1—Financial Statements: The US Mischaracterizes the Extent to Which BPXP Has Produced—and Will Produce—Responsive Documents. ..........................................................................................................5

  B.  RFP 2—Tax Information: The US Cannot Articulate the Need for the Requested Duplicative Discovery. ..........................................................................7

  C.  The US's Analogy to the BP Claims Program and Court-Supervised Settlement Program Is Flawed. ................................................................................8

  D.  RFPs 3, 12, and 14—Transactions with BPXP Affiliates: The US's Claim that BPXP Will Not Provide Responsive Discovery is Entirely Inaccurate. ................................................................................................................9

  E.  RFP 4—Projection Information: BPXP Has Produced Responsive Documents. .........................................................................................................11

  F.  RFPs 5 and 6 and Interrogatories 1 and 6—Information Concerning the Board of Directors of BPXP and Six of Its Affiliates: BPXP Has Produced Responsive Documents and Information. ...........................................11

III. The US's Contention that BPXP's Objections and Responses to Its Discovery Requests Are Deficient Is Without Merit. .........................................................................15

**INTRODUCTION**

The United States ("US") seeks an extraordinary volume of materials through exceptionally overbroad discovery requests focused on a single factor under the Clean Water Act ("CWA"), namely "the economic impact of the penalty on the violator."  Its Motion to Compel such discovery is unfounded and contravenes clear discovery limitations.  At the March 21, 2014 hearing, Judge Barbier stated unambiguously that "I think that the government's request for discovery" with respect to the economic impact factor "seemed *way, way tremendously overbroad*, beyond the scope of what is necessary here." (Mar. 21, 2014 Status Conference & Mot. Hr'g at 50, Ex. A (emphasis added).)  While the Court permitted some discovery into BPXP's corporate relationships within the BP Group, it ordered there be only "*limited* discovery regarding the relationship between BP p.l.c., BPXP, and other BP affiliates." (Mar. 21, 2014 Status Conference and Mot. Hr'g Min. Order at 2 (Rec. Doc. 12592), Ex. B (emphasis added).)

Thus, the US's Motion to Compel should be denied for two fundamental reasons:  (1) the discovery sought by the US, even after ostensible attempts to "narrow" its requests, violates the Court's admonition and remains "way, way tremendously overbroad" and far beyond the "limited" discovery authorized by Judge Barbier for this factor, imposing a substantial and unnecessary burden on BPXP to produce; and (2) BPXP has already produced—and will continue to produce—discovery related to the economic impact factors that not only meets but exceeds the "limited" discovery contemplated by the Court.

**I.     The US's Discovery Requests Remain Overbroad and Are Not "Limited."**

Despite Judge Barbier's comments at the March 21 hearing, the US's economic-impact discovery requests remain unwarranted, excessive, and unduly burdensome.  The chart below compares (1) examples from the US's January 17 requests that Judge Barbier characterized as "way, way tremendously overbroad" and (2) the text of the April 18 final requests now at issue.

| **January 17 Requests** | **April 18 Requests** |
|---|---|
| 18. Provide all documents authored by, addressed to, received by, or that identify Brenda Pennington, D.B. Pinkert or Denise Robertson (BPXP Board members); Brenda Pennington or Denise Robertson (BPAPC Board members); K.D. Heulitt, R.J. Pillari, P.D. Wessells (BP America, Inc. Board members); and Brenda Pennington and Denise Robertson (BP Company North America Inc. Board members) related to the Macondo Incident. | 5. Provide all documents authored by, addressed to, received by, or that identify Brenda Pennington, D.B. Pinkert or Denise Robertson (BPXP Board members); Brenda Pennington or Denise Robertson (BPAPC Board members); K.D. Heulitt, R.J. Pillari, P.D. Wessells (BP America, Inc. Board members); and Brenda Pennington and Denise Robertson (BP Company North America Inc. Board members) related to the Macondo Incident. |
| 5. Provide all consolidating financial statements at the subsidiary level including BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America, BP Products North America Inc., and BP plc for each year, 2005-2014. | 1. Provide all consolidating financial statements at the subsidiary level for BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., and BP Holdings North America for each year, 2005-2014. |
| 6. Provide all consolidating U.S. Federal income tax returns including all subsidiary level work sheets for BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America, BP Products North America Inc., and BP plc for each year, 2005-2014. | 2. Provide all consolidated U.S. Federal income tax returns including all subsidiary level work sheets and consolidating accounting for BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America, and BP plc for each year, 2005-2014. |
| 13. Provide all documents related to material BP entity transactions with BPXP, including all policies or practices affecting the pricing of such transactions for each year, 2005-2014. | 3. Provide all documents related to any BP entity's Material Transactions with BPXP, including all policies or practices affecting the pricing of such transactions for each year, 2005-2014. |
| 15. Provide all spreadsheets and computations evaluating BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America, BP Products North America Inc., and BP plc financial projections for 2014 and forward including any sensitivity analyses that BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America, BP Products North America Inc., and BP plc perform. | 4. Provide all spreadsheets and computations evaluating BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America, and BP plc financial projections for 2014 and forward including any sensitivity analyses (including assumptions of oil and gas prices) that BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America, and BP plc have performed. |
| 19. Provide all BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America, BP Products North America Inc., and BP plc Board of Director and Board of Director committee meeting minutes, notes, resolutions, policies, procedures, directives, and decisions for each year, 2005-2014. | 6. Provide all BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., and BP Holdings North America, Board of Director, Board of Director committee, and officer meeting resolutions and decisions for each year, 2008-2014. |

As the above chart illustrates, the US's minor edits to its initial discovery after Judge Barbier's comments, such as changing requests from a ten-year period to a seven-year period,[1] are superficial and do not meaningfully address the serious overbreadth problem.

The US's April 18 requests are *broader* in many respects than the January 17 requests. For example, current requests for the first time include RFP 17, which seeks "*all documents* that identify the source (including divestments) of monies paid, loaned, or transferred, or services provided by any BP entity, including *accounting records, contracts, and records of payments from 2010 to the present related to the Incident, the Response or any efforts to mitigate the effects of the discharge*." (Apr. 18, 2014 US First Set of Disc. Reqs. to Defs., at RFP 17, Ex. C.[2]) The US seeks literally hundreds of thousands of documents including invoices, checks, and other documentation relating to the over $40 billion in liabilities incurred by BPXP in connection with the *Deepwater Horizon* Spill. The US fails to mention this RFP in its motion. In addition, RFP 3 seeks "all documents related to any BP entity's Material Transactions with BPXP, including all policies or practices affecting the pricing of such transactions for each year, 2005-2014," including a "detailed chart of accounts payable and receivable balances from 2005-2014." (*Id.*; *see also* US Proposed Order at 1.) RFP 8 seeks any document that "identif[ies] payment of distributions or dividends." (*Id.*) These requests extend to voluminous detailed documentation, when summary documentation would suffice, and would require months to produce.

---

[1] Compare January 17 RFP 19 with April 18 RFP 6. In other instances, the US has left the ten-year period intact. Compare, for example, January 17 RFPs 5, 6, and 13 with April 18 RFPs 1, 2, and 3.

[2] The US states that its "request includes records relating to payments 1) for work performed during the Response, or efforts to mitigate the effects of the discharge 2) for early restoration projects, 3) to perform actions required under the Guilty Plea Agreement, (*United States v. BP Exploration & Production, Inc.*, No. 2:12-cv-00292 (E.D. La. Nov. 15, 2012), and the resulting Judgment (E.D. La. Jan. 29, 2013)), 4) made to any state, city, parish or government entity (including any state or federal health organization such as the Gulf of Mexico Research Initiative, the National Fish and Wildlife Foundation, the National Institute of Environmental Health Sciences in the form of a grant, or for any costs related to the spill and its response), or 5) paid through the BP Claims Facility, the *Deepwater Horizon* Oil Spill Trust established by the August 6, 2010 agreement, the Gulf Coast Claims Facility, and the BP Claims Program which began accepting claims on June 4, 2012." (*Id.*)

The US's excessively overbroad requests are based on a flawed understanding of Judge Barbier's March 21, 2014 Order.  During the parties' meet and confer on April 25, the US argued that its requests were in compliance with the March 21 Order regarding "*limited* discovery regarding the relationship between BP p.l.c., BPXP, and other BP affiliates," because it was seeking discovery about entities that directly or indirectly own BPXP—not discovery from, as the US described it, "BP Singapore."[3]  The US misinterprets Judge Barbier's order as permitting extremely overbroad discovery so long as it is "limited" to seven affiliate companies.  As BPXP explained during the same meet and confers, the plain text of the Court's order permits only "*limited* discovery *regarding the relationship between BP p.l.c., BPXP, and other BP affiliates*."  (Ex. B (emphases added).)  The US's requests do not satisfy the Court's limitation.

II.     **BPXP Has Already Produced—and Will Continue to Produce—Discovery that Exceeds the Court's "Limited" Discovery Requirement.**

The US's central argument—that BPXP "has made few commitments to produce the materials requested"—is simply unfounded.  (*See* Mem. in Supp. of the US's Mot. to Compel Prod. of Docs. and Resps. to Interrogs. at 1 (Rec. Doc. 12858) ("US Br.").)  As explained in detail below and demonstrated by the attached exhibits, BPXP has already produced far more documents than necessary to meet the "limited discovery" permitted by the Court on the economic-impact factor and will produce a significant volume of additional documents in the coming weeks.[4]

---

[3]     Specifically, the US noted that several of its requests sought discovery regarding seven entities: "BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America, and BP plc." (Ex. C.)

[4]     The US seeks to fault BPXP for not producing documents sooner than the May 27 deadline for substantial completion of document production.  For example, the US argues that "any other BPXP financial data related to BPXP's economic role must be produced to the US in response to RFP 21." (US Br. at 12.)  In this regard, the US's motion is simply not ripe.  First, the deadline has not yet passed.  Second, BPXP has produced and will continue to produce documents sufficient to support its contentions regarding BPXP's positive impact on the economy, and has already committed to produce the requested documents. (Exs. E-AA.)

> **A.    RFP 1—Financial Statements:  The US Mischaracterizes the Extent to Which BPXP Has Produced—and Will Produce—Responsive Documents.**

1. BPXP Financial Statements

The US makes several erroneous representations about RFP 1, which seeks "all consolidating financial statements at the subsidiary level for BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., and BP Holdings North America for each year, 2005-2014." (Ex. C, at RFP 1.[5])  As explained below, each of these claims is incorrect:

- BPXP 2014 Financial Reports:  The US incorrectly asserts that BPXP has declined to produce financial reports for 2014.  (US Br. at 1.)  BPXP committed from its initial discovery responses to produce 2014 financial reports, and it produced the first quarter 2014 BPXP financial reports as soon as they became available.  (*See* Exs. E-1 - E-2.)  BPXP will continue to produce additional quarterly BPXP reports as they become available.

- BPXP 2013 Financial Reports:  As the US concedes in its motion, BPXP has produced all 2013 quarterly financial reports.  (*See* Exs. F-1 - F-8.)

- BPXP 2011 and 2012 Financial Reports:  During the parties' meet and confer on May 13, BPXP offered to produce its 2011 and 2012 financial reports, in exchange for the US's agreeing to scale back its demands in RFP 17.  The US agreed to consider this request only after BPXP produced these summary documents.  BPXP has now produced the 2011 and 2012 BPXP reports, as well as other summary documentation.  (*See* Exs. G-1 - G-13.)

- BPXP Trial Balance Covering 2009-2013 Period:  BPXP has produced trial balance documentation covering the 2009-2013 period.  (*See* Ex. H.)  These trial balances contain data used in the balance-sheet and income-statement information in BPXP's financial reports, and were used in creating BPXP's quarterly financial reports which began in 2011.  They also contain data relating to accounts payable and accounts receivable between BPXP and other entities.

2. Non-BPXP Financial Statements

---

[5]    At a minimum, the US seeks at least sixty financial statements: six entities over a period of ten years, even without including quarterly financial statements.  (Some entities, including BPXP, produce financial reports not just on a yearly basis but on a quarterly basis.  Other entities, including BPAPC and BP Company North America, do not regularly produce financial reports.)

BPXP is the sole BP entity named as a defendant in the US's CWA complaint and the sole responsible BP party under OPA. Indeed, the US has acknowledged that BPXP is "the liable party in this proceeding." (Rec. Doc. 12355 at 1.) That said, BPXP has previously explained that "to the extent documents requested by the United States relate to the economic impact of the penalty on BPXP (*e.g.*, documents sufficient to summarize certain intercompany loans and other material transactions between the BP Group and BPXP), they may be relevant depending on the specific evidence at issue." (Rec. Doc. 12465 at 7 ("BPXP Entities Br.").).

Consistent with BPXP's understanding, on March 21, Judge Barbier ordered "*limited* discovery regarding the relationship between BP p.l.c., BPXP, and other BP affiliates." (Ex. B, at 2). In accordance with the Court's order, BPXP has produced the following financial-statement discovery[6] regarding non-BPXP entities:

- BP p.l.c. Financial Statements:  BPXP has produced the 2010-2013 quarterly and annual financial statements of BP p.l.c., which are also publicly available. (Ex. I.)

- BP Corporation North America Inc. Financial Statements:  BP has produced the 2013 annual financial statements of BP Corporation North America Inc., which are not publicly available. (Ex. J.)

- BP America Inc. Financial Statements:  BPXP has produced the 2013 annual financial statements of BP America Inc., which are not publicly available. (*See, e.g.*, Ex. K.)

- BP Holdings North America Financial Statements:  BPXP has produced the 2012 financial statements of BP Holdings North America, which are the most recent financial statements available for this entity. (*See, e.g.*, Ex. L.)

- BP America Production Company ("BPAPC") Financial Reports:  BPXP has produced quarterly financial statements of BPAPC for the second and third quarters 2013, which are not publicly available and are the only financial statements that exist for the 2013-2014 period for that entity. (*See, e.g.*, Exs. M-1 - M-2.)

- BP Company North America Inc:  BP Company North America Inc. does not prepare financial statements.

---

[6]  Additional, non-financial-statement discovery for non-BPXP entities is discussed *infra*.

BPXP has already provided financial statement discovery that easily meets the "limited" requirements of Judge Barbier's March 21 Order. And BPXP has done so not just for BPXP itself, but also for the affiliated entities encompassed by the Court's March 21 Order.

### B. RFP 2—Tax Information: The US Cannot Articulate the Need for the Requested Duplicative Discovery.

The US does not dispute that the information contained in the tax records it seeks in response to RFP 2 would be duplicative of the information in the financial statements BPXP has produced. Each year, BP America Inc. files a consolidated US federal tax return that includes each of the US-based BP Group entities listed in RFP 2. Throughout the parties' meet and confers, BPXP persistently asked the US what additional information it seeks from tax returns that is not already in the numerous financial statements BPXP was producing. The US responded that it could not answer because it had not yet seen the financial statements. BPXP has now produced numerous financial statements. (Exs. E-M.)

The annual consolidated financial statements for BP America Inc. (which also include each of the US-based BP Group entities listed in RFP 2) serve as the starting point for the BP America Inc. federal tax return, contain the financial information upon which the tax return is based, and also take into account BP America Inc.'s tax liabilities at the federal, state, and local levels. Accordingly, the financial information reflected in BP America Inc.'s tax return does not provide additional information relevant to the issues in the Penalty Phase, beyond what is already provided in the BP America Inc. financial statements (attached as Ex. K).

Simultaneously with this response, BPXP is providing *in camera* to the Court BP America Inc.'s latest consolidated federal tax return, which BPXP believes will: (1) demonstrate to the Court that this information is not useful in determining the economic impact of the penalty on BPXP; and (2) enable the Court to compare such tax information with the data in the financial

7

statements BPXP has produced. (Ex. K.) Because the tax return is not useful in determining the economic impact of the penalty on BPXP, there is no basis for its production to the US, particularly in view of its status as taxpayer confidential materials.

In addition, BPXP will produce documents sufficient to summarize its royalty payments to the US from 2009 to the present.

### C. The US's Analogy to the BP Claims Program and Court-Supervised Settlement Program Is Flawed.

The US contends that "the types of standard financial records and timeframes that the U.S. requests in this case are the very same types of financial documents and time frames that BP demands from businesses in the BP claims program including: (1) profit and loss statements 2007 to present; (2) annual and monthly financial statements 2007 to present; and (3) federal tax returns, with attachments and schedules, 2007 through the present." (US Br. at 2.) This statement mixes apples and oranges.

Both the BP Claims Program instituted by BP to accommodate non-class members, opt-outs, and class members with expressly reserved claims and the Court-Supervised Settlement Program ("CSSP") require tax returns from individuals and businesses filing claims for economic damages, in some cases dating back to 2007.[7] The objective of both the BP Claims Program and the CSSP is to evaluate claims by individuals or businesses for economic damages related to the *Deepwater Horizon* Spill—an event that occurred on April 20, 2010.[8] In contrast, the relevant statute here is the CWA, and the relevant factor under the CWA is the "economic

---

[7] *See* www.bp.com at "Claims Information;" BP Claims Program—Claim Form for Individuals and Businesses, Ex. DD; *see also* Econ. & Prop. Damages Settlement Agreement As Am. On May 2, 2012, at exs. 4A/4C and 8A, Ex. EE.

[8] In the case of the BP Claims Program, BP accepts claims under the Oil Pollution Act of 1990. In the case of the Economic and Property Damages Settlement Agreement, the Agreement was negotiated to resolve claims brought by named plaintiffs alleging federal statutory and maritime claims for violations of OPA, negligence, gross negligence, willful misconduct, strict liability, negligence *per se*, and nuisance. (*See* Settlement Agreement at 1, Recitals B and C (Rec. Doc. 6430-1); s*ee also* Ex. EE.)

impact of the *penalty* on the violator." *See* 33 U.S.C. § 1321(b)(8) (emphasis added). That "penalty" will not be assessed until 2015 at the earliest.

Documents relating to financial performance during 2007-2010 are relevant and necessary to assess claims of economic damage from an event occurring in 2010, but the US has not explained how these are relevant to assess the impact of a penalty that will occur in 2015 at the earliest. Additionally, the OPA/maritime damages inquiry at stake in the BEL settlement program is inherently retrospective because the amount of loss attributable in any case to the spill is subject to debate and so strict documentary verification is required to police against fraud or overpayment.

### D. RFPs 3, 12, and 14—Transactions with BPXP Affiliates: The US's Claim that BPXP Will Not Provide Responsive Discovery Is Entirely Inaccurate.

The US's assertion that "BP has not agreed to provide the limited discovery requested of the six entities between BPXP and BP p.l.c." is simply not so. (*See* US Br. at 4.) BPXP has produced significant documentation relevant to the financial relationship between BPXP and its parent and affiliate companies. In addition to the non-BPXP financial statements discussed above at page 6, BPXP has also produced:

1. RFP 3

BPXP has produced or will produce the following information relating to its material transactions with affiliates:

- The US claims that the BP Group "siphoned off profits" from BPXP. Far from siphoning off profits from BPXP,      REDACTED
  and has produced documentation relating to that injection. (Ex. N.)

- BP entities have provided credit to BPXP on a discretionary basis. BPXP has agreed to undertake a reasonable search for financing or loan agreements between BPXP and other BP entities for the time period January 1, 2009, to the present and has already produced      REDACTED      (Exs. O-1 - O-2.)

9

- BPXP has agreed to undertake a reasonable search for guarantees of BPXP obligations by BP entities, for the time period 2009 to the present, regardless whether they relate to the *Deepwater Horizon* Incident. Examples of such guarantees already produced by BPXP are appended. (Ex. P-1 - P-3.)

- BPXP has produced trial balance information showing accounts payable and accounts receivable owed between it and its affiliates, for each quarter from 2009 to the present. (Ex. H.)

- BPXP has produced portions of its Group Reporting Manual providing guidance with regard to intercompany transactions and balances and their elimination in the BP Group's consolidated accounts. (Ex. Q.)

- BPXP has produced documents showing terms and policies relating to the marketing of hydrocarbons between BPXP and other BP entities. (Example attached as Ex. R.)

2. RFP 12:

BPXP agreed to produce documents sufficient to summarize BPXP's payment of dividends from 2007 to the present.[9] (Ex. S-1 - S-14.)

3. RFP 14

- BPXP agreed to produce the services agreements between BPXP and BP America Production Company dated December 31, 2005 and dated December 31, 2001. (Exs. T-1 - T-2.) BPXP has undertaken a reasonable search for other services agreements between BPXP and other BP entities and has produced services agreements between BPXP and other entities governing research and development and technical services in connection with exploration and production activities.[10]

- The US claims that although "BPXP utilized personnel and resources from certain of its corporate affiliates and compensated those affiliates," BPXP "has refused to affirmatively identify which corporate entity or entities in the chain have employed these individuals." (US Br. at 7.) BPXP has never "refused" to provide this information. BPXP has produced a listing of individuals employed by other BP entities whose services BPXP has employed (Ex. V.), and will undertake a reasonable search for documents sufficient to show the payroll entity for these employees.

---

[9] The US incorrectly claims that the BP Group "siphoned off" BPXP's profits through dividends. In fact, prior to 2010, BPXP periodically declared and paid formal dividends to its shareholder companies, including quarterly preferred-share dividends and a single common-share dividend in the three years preceding the Incident. As the US concedes, BPXP has not paid a dividend since April 20, 2010. These facts are in marked contrast to *Dean Dairy*, which describes a corporate parent's **post-incident** "siphoning off profits" from the violator. *United States v. Mun. Auth. of Union Twp.* ("*Dean Dairy*"), 150 F.3d 259, 268 (3d Cir. 1998).

[10] The US claims that it "found a document indicating that BPXP has no employees, a fact BP did not volunteer but which it now admits." (US Br. at 1.) This is not candid. That information was included in a letter to the US from a BP attorney on October 24, 2012. (Ex. U.) Moreover, BPXP generally is charged, and other BP entities are credited, for personnel costs associated with the work performed on BPXP operational assets by the payrolled employees of those entities. (*See* BPXP Entities Br. at 4.)

10

> **E.     RFP 4—Projection Information:  BPXP Has Produced Responsive Documents.**

The US states that "the financial projections sought by RFP 4 could be contained in a single document." (US Br. at 9.) BPXP has already produced in full detail its Standard Measure of Oil and Gas Analysis for its Gulf of Mexico assets, which provides the relevant information for BPXP. (Ex. W.) BPXP has also produced numerous credit agency reports that provide their own financial projections. (Examples attached as Ex. X.)

> **F.     RFPs 5 and 6 and Interrogatories 1 and 6—Information Concerning the Board of Directors of BPXP and Six of Its Affiliates:  BPXP Has Produced Responsive Documents and Information.**

1.     RFPs 5 and 6

BPXP has already provided or agreed to provide the following:

- BPXP has produced a significant volume of documentation relating to the Board of BP p.l.c., including Board minutes and related materials. (*See, e.g.*, Ex. Y.)

- BPXP has undertaken a reasonable search for and will produce all resolutions of the BPXP Board from 2009 to the present. (*See, e.g.*, Ex. Z.)

- BPXP has undertaken a reasonable search for and will produce BP Corporation North America Inc. Board resolutions "relating to BPCNA's indemnification agreement with Anadarko for Macondo well costs, and all documents reflecting the basis for BPCNA's guarantee of BPXP's Guilty Plea Agreement payments, *United States v. BP Exploration & Production, Inc.*, No. 2:12-cv-00292 (E.D. La. Nov. 15, 2012), and the resulting Judgment (E.D. La. Jan. 29, 2013)," to the extent not privileged.

To the extent that RFPs 5 and 6 seek additional information, those requests go far beyond the "limited" discovery authorized by Judge Barbier. The US has provided no basis for needing every "officer meeting and decision" for six different BP entities for a seven-year period (RFP 6) or every email shared by directors of multiple BP entities relating to the incident (RFP 5).

During the parties' meet and confer discussions on April 16 and April 23, the US stated that it is not seeking to "pierce the corporate veil." The US nonetheless claims that the expansive discovery from the Boards of six BP entities (in addition to the BP p.l.c. Board materials that the

11

US already has) is necessary because the US "currently has little information about the extent to which BPXP's corporate parents 'had complete control over whether and when [BPXP] would achieve compliance.'" (US Br. at 6 (citing *Dean Dairy*, 150 F.3d at 268-69).) But even the Third Circuit's decision in *Dean Dairy*—which is heavily relied upon by the US but not controlling here—did not look to any Board resolutions to determine the parent's involvement.[11] Indeed, the word "Board" and the phrase "Board of Directors" do not appear in the *Dean Dairy* decision. Instead, the *Dean Dairy* case examined the parent's operational involvement based on the facts that (1) the parent company "had complete control over whether and when [the violator] would achieve compliance" with its wastewater permit; and (2) the parent company "was siphoning off profits" from its subsidiary throughout the time the subsidiary was facing wastewater problems. *Dean Dairy*, 150 F.3d at 268-69 (internal quotations omitted). Here, the operational involvement of BP p.l.c. and the BP Group in the *Deepwater Horizon* Incident were exhaustively examined in Phase One (*see* BPXP Entities Br. at 12), and are not proper topics of discovery in the Penalty Phase.

2. Interrogatory 1

The US argues that it "seeks to know not only the identities of the present officers and directors of BPXP, but also the identities of those at the time of the Incident and the Response."

---

[11] The US (incorrectly) states: "Even BPXP has cited *Dean Dairy*, to suggest that the Court should undertake a 'fact specific assessment that examined the role of the parent[s] in the operations of the subsidiary, particularly with regard to the issue of pollution of the nearby waters and actions that could have resolved it." (US Br. at 5). As explained in BPXP's Entities Brief, it was the US (not BPXP) that cited to *Dean Dairy*:

> **The United States** does not cite any Fifth Circuit case law in support of its position on the economic impact factor, but cites **the Third Circuit's decision in Dean Dairy.** (US Br. at 12-13) (*citing United States v. Mun. Auth. of Union Twp.*, 150 F.3d 259, 268 (3d Cir. 1998) ("*Dean Dairy*")). **Even the Third Circuit in Dean Dairy**, however, recognized that the extent of consideration given to the parent's financial resources depends on the facts and circumstances of the specific CWA case. *Dean Dairy*, 150 F.3d at 268. In *Dean Dairy*, as part of a "fact-specific assessment that examined the role of the parent in the operations of the subsidiary….

(BPXP Entities Br. at 9 (emphasis added).)

(US Br. at 7.) BPXP has produced a document identifying its directors and officers at all periods from April 20, 2010, to present. (Ex. AA.) BPXP is also submitting with this memorandum a declaration explaining why certain BPXP director information included in Delaware Franchise Tax Reports relied upon by the US in Appendix A to its Motion to Compel is outdated. (Ex. BB.)

    3.    Interrogatory 6

In response to the Court's February 21, 2014, directive that the parties list any topics that they believe are pertinent to the "other matters as justice may require" factor, BPXP submitted that the factor "requires that a penalty here be compared to and calibrated with penalties sought and obtained against other companies, both in relation to this case and other environmental incidents." (March 3, 2014, BPXP's Submission in Resp. to Court's Feb. 21, 2014, Order re Prep. for Disc. in the Penalty Phase, Exhibit 11, Ex. CC.) The US's Interrogatory No. 6, which relates to that portion of BPXP's March 3, 2014 submission,[12] improperly seeks BPXP's purely legal arguments related to this issue.[13]

---

[12] Interrogatory No. 6 provides: "Identify each penalty obtained against other companies and each environmental incident referenced in BP's submission to Magistrate Judge Shushan of March 3, 2014, and how you contend the penalty in this should be 'calibrated' to the penalty to be imposed for BPXP's violations of the Clean Water Act." (Ex. C at Interrog. 6.) With respect to penalties sought and obtained against other penalties in this case, BPXP responded that "information concerning the civil penalties assessed under Section 311 of the Clean Water Act against other companies with respect to the *Deepwater Horizon* incident is part of the record in these proceedings and is the subject of a stipulation among the parties." (Ex. D at Interrog. 6.) In its Motion to Compel, the government does not make any arguments concerning any alleged deficiency with respect to that portion of BPXP's response, but addresses its arguments exclusively towards BPXP's alleged failure "to identify the specific penalties for other environmental incidents to which it contends the Macondo penalty should be compared." (US Br. at 8; *see also id.* (claiming that "the United States must prepare a defense considering all penalties imposed in prior environmental incidents, a universe of thousands of cases").)

[13] Although Rule 33 provides that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact," Fed. R. Civ. P. 33(a)(2), the Advisory Committee Notes further explain that "interrogatories may not extend to issues of 'pure law,' i.e., **legal issues unrelated to the facts of the case**." Fed. R. Civ. P. advisory committee's note (1970) (emphasis added). The circumstances of penalties assessed against other companies in other matters do not relate to the facts of this case, but instead to the "facts" in those other matters. Numerous public records, including case reporters, government publications and websites, and similar materials report the "facts" of those matters. BPXP intends to use these records in the same manner that a party in any case uses legal authorities or precedent—to support its legal arguments. Interrogatories seeking the specific legal precedents upon which a party will rely are inappropriate. *Cf.*

For this reason, there is no basis for the US's argument that it "must prepare a defense considering all penalties imposed in prior environmental incidents, a universe of thousands of cases." (US Br. at 8.) Instead, as with any legal issue briefed by the parties, the US will have the opportunity to respond to BPXP's legal arguments (or to present any similarly self-authenticating documents concerning penalties in other matters).

This situation is also not comparable to the Court's previous directive that the government disclose the prior violations upon which it intended to present evidence at trial. (US Br. at 8.) As a preliminary matter, the Court ordered that disclosure, so the entire framework for discovery exchanged between the parties is inapplicable. Nonetheless, an interrogatory seeking such information would be an appropriate contention interrogatory; a defendant's prior violations relate directly to the facts relevant to the assessment of a penalty under Section 311 of the CWA, because the statute explicitly directs the Court to consider defendant's "history of prior violations."[14] Finally, because both parties will present experts concerning such prior violations, the government's identification of such violations was necessary to "narrow[ ] and sharpen[ ] the issues. . ." and to permit expert discovery to proceed smoothly. Fed. R. Civ. P. advisory committee's note (1970).

---

*Nautilus Ins. Co. v. Raatz*, No. 08-c-6182, 2011 WL 98843 (N.D. Ill. Jan. 12, 2011) (denying motion to compel response to interrogatory seeking identification of "any case law or statute upon which [Plaintiff] is relying" because interrogatory improperly requested legal conclusions and work product) (internal quotation mark omitted).

    Contrary to the US's contention, the Advisory Committee Notes support BPXP's position, not that of the government. A response "identify[ing] the specific penalties for other environmental incidents" will not assist the parties "'in narrowing and sharpening the issues, which is a major purpose of discovery.'" (US Br. at 8 (citing Fed. R. Civ. P. advisory Committee's note (1970)).) As with any legal authority, no fact or expert discovery or live trial testimony is necessary to introduce them to the Court. Reports and other documents concerning penalties assessed in other cases will be admissible as, for example, self-authenticating documents under Federal Rule of Evidence 902(5) which provides for the self-authentication of "Official Publications [that is,] book[s], pamphlet[s], or other publication[s] purporting to be issued by a public authority." The parties will then brief the legal issues concerning how, if at all, other penalties assessed in other matters should affect the penalty assessed against BPXP.

[14] For the reasons previously stated in its February 14, 2014, Motion in Limine (Rec. Doc. 12347), BPXP continues to maintain that the particular incidents identified by the government are not relevant to the assessment of any penalty against BPXP.

### III. The US's Contention that BPXP's Objections and Responses to Its Discovery Requests Are Deficient Is Without Merit.

BPXP's objections are fully and sufficiently explained and supported by specific facts and grounds. The fact that certain key objections are repeated for multiple discovery requests is appropriate when a party also provides the reasons for the objections. *See Preferred Carolinas Realty, Inc. v. Am. Home Realty Network, Inc.*, No. 1:13-cv-181, 2014 WL 1320133, at *6 n.1 (M.D.N.C. Mar. 28, 2014). The vast majority of BPXP's objections set out in abundant detail the facts and grounds supporting the objection, and all of BPXP's objections do so with sufficient particularity. For instance, BPXP's objection RFP 2 is supported by nearly a page of further elaboration. Even a cursory review makes plain that BPXP's objections are not merely "cut and pasted" from request to request.

It is likewise appropriate and sufficient for BPXP to list its standard objections and support them with references to general objections. *See, e.g.*, *Hager v. Graham*, 267 F.R.D. 486, 492 (N.D. WVa. 2010). For example, BPXP's objections to RFP 12 are supported by BPXP's General Responses and Objections No. 1 and 6. These objections describe with particularity and with reference to specific facts how RFP 12's demand for documents from 2005 through 2014 is inconsistent with timeframes imposed by the Court during the March 21 status conference. Such objections are proper and compliant because they are supported by sufficient detail to enable this Court to evaluate the objection on the merits. *See Convertino v. U.S. Dep't of Justice*, 565 F. Supp. 2d 10, 13 (D.D.C. 2008); *Hager*, 267 F.R.D. at 492.

BPXP is also submitting with this memorandum responses to the US's Proposed Order. (Ex. FF.)

### CONCLUSION

For the foregoing reasons, the United States' Motion to Compel should be denied.

May 20, 2014                                         Respectfully submitted,

                                                 */s/ Don K. Haycraft*
Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 662-5985
Facsimile: (202) 662-6291

***ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.***

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of May, 2014.

                                                       /s/ Don K. Haycraft
                                                       Don K. Haycraft