# EXHIBIT T-1

## GENERAL SERVICES AGREEMENT

This Agreement is made and entered into effective for all purposes as of the 31st day of December, 2001, by and between **BP EXPLORATION & PRODUCTION INC**, a company organized and existing under the laws of the State of Delaware (hereinafter referred to as "**BPX&P**"), and **BP AMERICA PRODUCTION COMPANY**, a company organized and existing under the laws of the State of Delaware (hereinafter referred to as "**Company**"). BPX&P and the Company may sometimes be referred to individually as a "Party" and collectively as the "Parties".

**WITNESSETH**

**WHEREAS**, the Company has knowledge, expertise, and experience which can contribute and support various aspects of the business of BPX&P; and

**WHEREAS**, BPX&P shall require certain advice, support, work and services to assist it in the conduct of such businesses and operations; and

**WHEREAS**, the Company is ready, willing and able to provide to BPX&P, or procure the provision of, such advice, support, work and services on the terms and conditions hereinafter set forth.

**NOW THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:**

**ARTICLE I - DEFINITIONS**

1.1   Unless the context otherwise requires, the following terms shall, in this Agreement and in the recitals hereto, have the following meanings:

"Affiliate" shall mean a company or other juridical entity, excluding a governmental agency or body, that directly or indirectly controls, is controlled by, or is under common control with a party hereto. "Control" for this purpose shall, in the case of a company with outstanding voting stock, require the direct or indirect ownership of, or power to vote, the outstanding shares of such company's stock, constituting more than fifty percent (50%) of the votes of any class of such company's outstanding voting stock. Notwithstanding any other provision hereof to the contrary, BPX&P shall, for purposes of this Agreement, not be considered an Affiliate of the Company.

"Agreement" shall mean this Agreement entitled "General Services Agreement."

"Services" shall mean the advice, support, work and services (technical and other), to be provided by the Company to BPX&P pursuant generally to the terms and conditions of this Agreement. Such advice, support, work and services to be provided by the Company shall include, but not be limited to, engineering services, scientific studies, project investigation and development, including the provision and utilization of information and reports, in any format including hard copy, magnetic or electronic, on current and developing technologies and services and the performance or procurement of work and

CONFIDENTIAL

services (technical, engineering, commercial, marketing, environmental, legal, tax, banking, treasury, investment, financial, accounting, administrative or other), required by BPX&P.

## ARTICLE 2 - PURPOSE AND SCOPE

2.1    The purpose of this Agreement is to define and set forth the terms and conditions under which the Company shall provide the Services to BPX&P on a non-exclusive basis. The Services to be provided under this Agreement shall be of the type, scope and duration as mutually agreed upon by the Company and BPX&P. Without limiting the generality of the foregoing, the Company agrees to act in the capacity of paying agent on behalf of BPX&P in respect of operations offshore the Gulf of Mexico in which BPX&P acts as operator and in such capacity, the Company may initiate, generate, distribute and settle on BPX&P's behalf any joint interest billings, cash calls or joint account settlements in respect of any matters associated with the services performed hereunder.

2.2    The Company undertakes to perform the Services with its own personnel in an efficient, workmanlike and cost effective manner. The Company shall have the right, in its performance of the Services hereunder, to subcontract the Services to any third party contractors; provided that third party contractors may only be used if the Company does not or is not able to provide the Services, and provided further that any rebates received from a third party contractor related to Services provided shall be credited to BPX&P. Notwithstanding any subcontract as aforesaid, the Company shall nevertheless remain liable to BPX&P for the acts and omissions of its contractors and subcontractors in accordance with and subject to the provisions of this Agreement.

2.3    The Company shall provide BPX&P with invoices that describe the Services provided. BPX&P shall pay to the Company remuneration for the Services so provided pursuant to a rate schedule, together with any other costs incurred by the Company as part of performing such Services. The rate schedule shall be updated by the Company as frequently as needed to ensure that such rates reflect the rates charged for similar services to 100% owned Company Affiliates. The intent of the Parties is to allow the Company to fully recover the costs to the Company of providing any Services (which costs will reflect the benefits of any discounts received by the Company), but not to return any profit to the Company. In addition, the terms and conditions under which the procurement of equipment or materials are to be acquired from the Company and its Affiliates shall not exceed the terms and conditions under which similar equipment or materials could be acquired from unrelated third parties (considering, among other factors, price, quality, availability for delivery and fitness for the particular purpose) and shall reflect the benefits of any discounts received by the Company in the procurement of such equipment and materials.

2.4    The Company shall provide the Services at such location or locations as may be mutually agreed with BPX&P. Nothing contained herein shall operate to transfer ownership of any assets held by the Company onshore or in the coastal waters of the States of Texas, Alabama, Mississippi, Florida and Louisiana to BPX&P and this agreement shall under no circumstances be construed to mean that BPX&P owns or holds a property interest in any assets owned or held by the Company until such time as a transfer of such assets is executed between the Company and BPX&P.

BP-HZN-2179MDL07817980

## ARTICLE 3 - RELATIONSHIP OF PARTIES

In its performance of the Services under the terms and conditions of this Agreement, the Company shall, for the purposes hereof, be an independent contractor and nothing contained herein shall be deemed or construed to create a partnership, association or trust between the Parties hereto, or as authorising either Party to act as agent, servant or employee for the other Party for any purpose under this Agreement whatsoever except as expressly set forth herein.

## ARTICLE 4 - REMUNERATION - INVOICE AND PAYMENT

4.1   The Company shall submit its invoices to BPX&P, supported by such documentation for the charges as may be reasonably required for BPX&P to determine appropriateness of the charge. Invoices will be rendered monthly to BPX&P or at such other intervals as may be mutually agreed between the parties. BPX&P shall pay the Company invoices within the time period and in the manner specified in such invoices. In the event any expenses are incurred by the Company in currency other than U.S. Dollars, the amount to be invoiced shall be calculated at the commercial rate of exchange or the rate in effect for such purpose (from the non-U.S. Dollar currency to U.S. Dollars) actually received by the Company for the transaction.

4.2   To the extent that payments to be made under this Agreement attract withholding taxes, value added taxes, sales/service taxes, and/or municipal taxes, the amount of such taxes shall be added to the amount payable by BPX&P to the Company for the Services. With respect to each invoice payment, BPX&P shall inform the Company as to whether BPX&P shall withhold any amounts in the course of making payment for such Services. The Company shall reflect the amount of any withholding tax BPX&P believes it is required to withhold as a separate and additional item on the invoice, which shall be added to the amount payable by BPX&P for the Services.

4.3   In the event that BPX&P does not approve an invoice, or any portion thereof, BPX&P shall promptly notify the Company of the disputed item or items. BPX&P shall pay all undisputed portions of any invoice pursuant to the terms hereof. The Parties hereto shall immediately meet to resolve any amounts in dispute as soon as possible after notification by BPX&P of any such dispute.

## ARTICLE 5 - TAXES

5.1   The Company shall, subject to the provisions of Article 4.2 and 5.2 hereof, be responsible for, and shall release, defend, indemnify and hold BPX&P harmless from the reporting, filing and payment of any taxes, duties, charges or fees (and any related fines, penalties, or interest), imposed directly or indirectly on the Company or its contractors, employees, agents or servants as a result of the Company's performance of the Services under this Agreement.

5.2   The payments provided for in the invoices are exclusive of any value added taxes, sales/service taxes, municipal taxes and withholding taxes that may be imposed on such payments by the taxing authorities having jurisdiction. Subject to BPX&P's right to verify that such taxes apply to the payments made hereunder, BPX&P shall pay to the

BP-HZN-2179MDL07817981

Company or withhold from the Company, as the case may be, the amount of such taxes upon receipt of an invoice including the amount of such taxes, issued in compliance with the applicable tax laws. Notwithstanding any provision to the contrary in this Agreement, the Company shall not be liable for, and shall not indemnify BPX&P against any taxes, duties, charges or fees, (or any related fines, penalties or interest) that BPX&P is required to withhold from payments to the Company. The Company shall use its best efforts to avail itself of any and all exemptions from and/or reductions of such taxes.

## ARTICLE 6 - LIABILITY AND INDEMNITY

6.1   Standard of Care and Liability

Subject to the terms and conditions hereinafter provided, the Company shall exercise all reasonable skill, care and diligence in the discharge of its obligations under this Agreement, but the liability of the Company, its Affiliates and third party contractors, to BPX&P with respect to any loss or damage of whatsoever nature or howsoever caused which in any way arises out of or in connection with the performance or non-performance of the Company's obligations under this Agreement or in tort shall be limited to cases of willful misconduct on the part of the Company. In the case of willful misconduct, the Company's liability shall, subject to the other provisions of this Article 6, then extend solely to the proper performance of the obligation in question at its own cost. BPX&P agrees that it shall undertake no proceedings against any person other than the Company under the provisions of this Agreement.

6.2   BPX&P's Indemnity

Except in the event of the gross negligence or wilful misconduct of the Company, BPX&P shall bear all loss, expense and damage and agrees to release, defend, indemnify and save the Company, its Affiliates and its and their respective directors, officers, employees, servants or agents, harmless from and against all claims, liabilities, damages, and expenses (including without limitation attorneys' fees and other legal costs and expenses), and irrespective of insurance coverages, when arising out of, associated with or incident to this Agreement **whether or not occasioned by or the result in whole or in part of the negligence or fault, whether sole, concurrent, joint, active, or passive, of BPX&P or the unseaworthiness of any vessel or unairworthiness of any aircraft; it being the Parties' intention that the indemnities provided for in this Article 6.02 are to apply (1) without regard to any conflicting rules of liability under any applicable law or regulation and (2) without regard to any successful limitation or exoneration of liability proceeding filed by or on behalf of the Company pursuant to the laws of any state, and (3) whether or not the claim, liability, damage or expense in question is (i) predicated on negligence, strict liability, statutory duty, or contractual indemnity, or (ii) sought directly or indirectly by way of recovery, indemnification or contribution by any person or entity against BPX&P.**

6.3   BPX&P or the Company, as the case may be, shall promptly give to the other Party Notice of any claim made or proceedings commenced for which BPX&P or the Company claims to be entitled to indemnification or other relief under this Agreement. Such Notice shall state with as much detail as is reasonably practicable the facts and circumstances giving rise to the claim and shall be given as soon as possible after the Party seeking

CONFIDENTIAL

indemnity or relief hereunder (referred to in this Article 6.3 as the "Indemnitee") becomes aware of such claim or proceeding. The Party against whom such indemnity or relief is sought (referred to in this Article 6.3 as the "Indemnitor") shall confer with the Indemnitee concerning the defense of any such claim or proceedings but, subject to the remainder of this Article 6.3, the Indemnitor or its insurer shall retain control of the conduct of such defense including, but not limited to, the selection and management of counsel. Notwithstanding the foregoing, however, neither Party shall effect settlement of or compromise any such claim or proceedings without having obtained the prior written consent of the other Party, but if Indemnitee does not consent to a settlement which the Indemnitor is willing to accept, then Indemnitor's liability shall be limited to the amount for which the lawsuit could have been settled. The Indemnitee may, upon Notice to the Indemnitor and at the Indemnitee's sole cost and expense, select its own counsel to participate in and be present for the defense of any such claim or proceeding, provided such counsel shall not take any action in the course of such claim or proceeding to prejudice the defense of such claim or proceeding.

6.4     BPX&P shall be responsible for, defend, indemnify and hold the Company harmless from and against all losses, claims, suits, demands, liabilities, costs, expenses (including legal, court, experts' and investigative fees) and causes of action (In Rem or otherwise) of every kind or nature with respect to pollution, including clean-up costs arising out of or in connection with the performance of this Agreement by the Company and/or BPX&P.

## ARTICLE 7 - INSURANCE

7.1     The Company shall take out and maintain insurance to fulfill the requirements of any governmental authority or other regulatory body having jurisdiction over the Company, or the Services to be provided hereunder. In respect of any such insurance, the Company shall obtain from its insurers a waiver of all rights of subrogation against BPX&P.

7.2     BPX&P shall take out and maintain insurance to fulfill the requirements of any governmental authority or other regulatory body having jurisdiction over BPX&P. In respect to any such insurance, BPX&P shall obtain from its insurers a waiver of all rights of subrogation against the Company and its Affiliates.

## ARTICLE 8 - AUDIT

The Company shall maintain a complete and correct set of records pertaining to all aspects of this Agreement.  BPX&P, in order to verify that all transactions between BPX&P and the Company under this Agreement satisfy all of the terms and conditions of this Agreement, shall have the right to periodically inspect and audit relevant records relating to the Services provided to the relevant Company, and payments therefore within a period of two (2) years after the completion of the respective Services, provided that the Company shall have the right to exclude any proprietary matters, trade secrets, formulas, processes, from such inspection and audit. Should the results reveal that payments have been made incorrectly, appropriate adjustments will be made between the Parties hereto.

CONFIDENTIAL

## ARTICLE 9 -TITLE

Technical information (including drawings, designs, specifications, electronically recorded and stored data and calculations), developed or arising during the Services or in connection with the performance thereof (excluding patent, design, copyright, trade mark, trade name, and all other industrial and intellectual property rights of the Company, its Affiliates and the contractors thereof), belong to BPX&P, and BPX&P shall have full access thereto and use thereof.

## ARTICLE 10 - ASSIGNMENT

This Agreement is not assignable in whole or in part, except that either party may assign this Agreement, in whole or in part, to an Affiliate.

## ARTICLE 11 - EFFECTIVE DATE AND DURATION

This Agreement shall be deemed to have come into full force and effect as of the 1st day of January, 2002, and, subject to the conditions for earlier termination specified herein, shall continue in full force thereafter until terminated by either party hereto giving the other party at least thirty (30) days   prior written notice of termination.   Notwithstanding the foregoing, BPX&P may terminate this Agreement for unsatisfactory performance at any time.  BPX&P will have no liability hereunder to the Company after the effective date of termination other than to pay for satisfactory Services provided by the Company hereunder prior to the termination date and to fulfill its obligations regarding confidentiality, non-use and transfer contained in Article 14.

## ARTICLE 12 - FORCE MAJEURE

12.1   A failure or omission by either Party hereto to carry out or observe any of the terms or conditions of this Agreement (other than the failure to pay money pursuant to the terms hereof), shall not give rise to any claim against the Party failing or omitting to carry out or observe any of the terms or conditions hereof, or be deemed a breach of this Agreement by such Party if such failure or omission resulted from any cause or event reasonably beyond the control of such Party.

12.2   A Party invoking the provisions of Article 12.1 hereof shall take all actions that are reasonable under the circumstances to remedy the force majeure situation and to proceed with the performance of its obligations hereunder.

12.3   Notice of any event of force majeure and any abatement thereof shall forthwith be given to the other Party by the Party hereto claiming the benefit of Article 12.1 hereof.

## ARTICLE 13 - APPLICABLE LAW AND DISPUTE RESOLUTION

13.1   Applicable Law

This Agreement shall be governed by, construed, interpreted and applied in all respects in accordance with the laws of the State of Texas, without reference or regard to any conflict of law or choice of law rules or principles.

CONFIDENTIAL

BP-HZN-2179MDL07817984

13.2    Arbitration

Any dispute as to any matter or operation arising out of or in connection with this Agreement, including, without limitation, any dispute as to the validity, construction, enforceability or breach of this Agreement, shall be exclusively and finally settled by arbitration, to which BPX&P and the Company hereby irrevocably agree to submit, and any Party hereto may submit such a dispute to arbitration.

(a)    Arbitration proceedings shall be conducted before a single arbitrator in accordance with the then-current Arbitration Rules of the American Arbitration Association ("the Rules"); provided that the terms of this Agreement shall prevail in the event of any conflict between this Article 13 and the Rules.

(b)    In any arbitration proceeding hereunder:

(i)    The proceedings shall, unless otherwise agreed in writing, be held in Houston, Texas in the United States of America.

(ii)    The decision of the arbitrator shall be final and binding on the Parties hereto, and shall be enforceable in any court of competent jurisdiction; and

(iii)    All monetary awards shall be made and payable in U.S. Dollars.

(c)    The costs of arbitration shall be borne in the manner determined by the arbitration tribunal.

(d)    In case of arbitration, the Parties hereto shall endeavor to continue their performance of this Agreement during the arbitral proceedings.

(e)    Each Party hereto irrevocably waives any and all claims to immunity in regard to the arbitration proceedings and any proceedings to enforce, recognize or execute any arbitral award rendered by a tribunal constituted pursuant to this Agreement including, without limitation, immunity from service of process, sovereign immunity, immunity from jurisdiction of any court, and immunity of such of its property as is of a commercial nature from execution.

**ARTICLE 14 - CONFIDENTIALITY**

All information obtained by the Company in the conduct of the Services shall be confidential and shall not be disclosed by the Company to any non-affiliated third party, either during the term of this Agreement or thereafter except:

(a)    to such extent as may be required to perform the Services;

(b)    as may be required by law, order, decree, regulation or rule issued by a competent authority;

(c)    to the extent such information is in the public domain as of the effective date hereof, or thereafter comes into the public domain;

BP-HZN-2179MDL07817985

(d)    to the extent such information is known to the Company or an Affiliate thereof prior to the effective date of the performance of the respective Services to be provided hereunder.

## ARTICLE 15 - NOTICES

15.1    Manner of Notices

(a)    All notices, notifications, advisements, submissions, approvals or other communications (herein referred to as "Notice" or "Notices"), which may be or are required to be given hereunder, shall be in writing and shall, subject to the provisions of this Agreement, be deemed to have been properly and effectively given and delivered to a Party hereto, when:

    (i)    Delivered in person to the address of the Party hereto as provided below;

    (ii)    Transmitted by facsimile upon the actual receipt of such facsimile by the recipient Party hereto;

    (iii)    Delivered by mail. Notices sent by mail shall be deemed to have been received by the addressee Party ten (10) days following the date of posting of each respective Notice delivered by mail hereunder.

(b)    Any Party hereto may notify the others of changes of address in accordance with this Article by Notice thereof to the other Parties hereto, and any such address shall upon receipt of such Notice by the other Parties become the address of the notifying Party for the service of Notices hereunder.

15.2    Addresses

For the purpose of the service of Notices hereunder, the respective addresses of BPX&P and the Company are, as of the date hereof, as set forth below:

|  | **BP America**<br>**Production Company** | **BP Exploration**<br>**& Production Inc.** |
|---|---|---|
| Address: | 501 WestLake Park Blvd.<br>Houston, TX  77079-2696 | 501 WestLake Park Blvd.<br>Houston, TX 77079 |
| Facsimile: | (281) 366-5109 | (281) 366-5109 |
| Attention: | Legal Group | Legal Group |

## ARTICLE 16 - COMPLIANCE WITH LAWS AND REGULATIONS

The Company shall at all times conduct the Services in accordance with all applicable laws, rules, and regulations of government and other bodies having jurisdiction over the performance of the Services, provided that in no event shall the Company, in the conduct of Services, be required to violate any law, rule, regulation, decree or order of the United States of America.

BP-HZN-2179MDL07817986

## ARTICLE 17 - WAIVER

No waiver by either Party hereto of any provision of this Agreement shall be binding unless made expressly and in writing. Furthermore, any such waiver shall relate only to such matter, non-compliance or breach as it expressly relates thereto and shall not apply to any subsequent or other matter, non-compliance or breach.

## ARTICLE 18 - HEADINGS

The headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

IN WITNESS WHEREOF, the duly authorized and empowered representatives of the Parties hereto have executed this Agreement as of the day and year first above written, effective for all purposes as provided herein.

Signed for and on behalf of:

**BP America Production Company**

By: _____

Name: _G.Fonseca Onofre_

Title: _Attorney in Fact_

Signed for and on behalf of:

**BP Exploration & Production Inc.**

By: _____

Name: _James H. Dupree_

Title: _Attorney in Fact_

CONFIDENTIAL

# EXHIBIT T-2

## AMENDED AND RESTATED
## GENERAL SERVICES AND AGENCY AGREEMENT

This Agreement is made and entered into effective for all purposes as of the 31st day of December, 2005, by and between BP EXPLORATION & PRODUCTION INC., a company organized and existing under the laws of the State of Delaware (hereinafter referred to as "BPX&P"), and BP AMERICA PRODUCTION COMPANY, a company organized and existing under the laws of the State of Delaware (hereinafter referred to as "Company"). BPX&P and the Company may sometimes be referred to individually as a "Party" and collectively as the "Parties."

### WITNESSETH

**WHEREAS,** the Company has knowledge, expertise, and experience that can contribute and support various aspects of the business of BPX&P;

**WHEREAS,** BPX&P shall require certain advice, support, work, goods and services to assist it in the conduct of such businesses and operations;

**WHEREAS,** the Company is ready, willing and able to perform for BPX&P, or to procure, such advice, support, work, goods and services on the terms and conditions hereinafter set forth;

**WHEREAS,** the Company has been acting on BPX&P's behalf under the General Services Agreement dated December 31, 2001 (the "Agreement"); and

**WHEREAS,** the Company and BPX&P desire to amend the Agreement in certain respects and to restate the Agreement in its entirety as follows;

### NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

### ARTICLE I - DEFINITIONS

1.1    Unless the context otherwise requires, the following terms shall, in this Agreement and in the recitals hereto, have the following meanings:

"Affiliate" shall mean a company or other juridical entity, excluding a governmental agency or body, that directly or indirectly controls, is controlled by, or is under common control with, a Party hereto. "Control" for this purpose shall, in the case of a company with outstanding voting stock, require the direct or indirect ownership of, or power to vote, the outstanding shares of such company's stock constituting more than fifty percent (50%) of the votes of any class of such company's outstanding voting stock. Notwithstanding any other provision hereof to the contrary, BPX&P shall, for purposes of this Agreement, not be considered an Affiliate of the Company.

"Agreement" shall mean this Agreement, entitled "Amended and Restated General Services and Agency Agreement."

"Services" shall mean the advice, support, work, goods and services (technical and other), to be performed or acquired by the Company on behalf of BPX&P pursuant generally to the terms and conditions of this Agreement. Such advice, support, work, goods and services to be performed or acquired by the Company shall include, but not be limited to, engineering services, scientific studies, project investigation and development, including the provision and utilization of information and reports, in any format, including hard copy, magnetic or electronic, on current and developing technologies and services required by BPX&P and the performance or acquisition of work, goods and services (technical, engineering, commercial, marketing, environmental, legal, tax, banking, treasury, investment, financial, accounting, administrative or other) required by BPX&P.

## ARTICLE 2 - PURPOSE AND SCOPE

2.1     The purpose of this Agreement is to set forth the terms and conditions under which the Company shall perform or acquire the Services on behalf of BPX&P on a non-exclusive basis. The Services to be performed or acquired under this Agreement shall be of the type, scope and duration as mutually agreed upon by the Company and BPX&P. Without limiting the generality of the foregoing, the Company agrees to act in the capacity of paying agent on behalf of BPX&P in respect of operations offshore the Gulf of Mexico in which BPX&P acts as operator and, in such capacity, the Company may initiate, generate, distribute and settle on BPX&P's behalf any joint interest billings, cash calls or joint account settlements in respect of any matters associated with the Services performed hereunder.

2.2     The Company undertakes to perform or acquire the Services with its own personnel in an efficient, workmanlike and cost effective manner. The Company shall have the right, in its performance or acquisition of the Services hereunder, to subcontract the Services to any third party contractors; provided, however, that third party contractors may be used only if the Company does not or is not able to perform or acquire the Services, and provided further that any rebates received from a third party contractor related to Services performed or acquired shall be credited to BPX&P. Notwithstanding any subcontract as aforesaid, the Company shall nevertheless remain liable to BPX&P for the acts and omissions of its contractors and subcontractors in accordance with and subject to the provisions of this Agreement.

2.3     In accordance with the procedures of Article 4.1, the Company may provide BPX&P with invoices that describe the Services performed or acquired. BPX&P shall pay to the Company remuneration for the Services described in such invoices pursuant to a rate schedule, together with any other costs incurred by the

BP-HZN-2179MDL07817989

Company as part of performing or acquiring such Services. The rate schedule shall be updated by the Company as frequently as needed to ensure that such rates reflect the rates charged for similar services performed or acquired on behalf of 100% owned Company Affiliates. The intent of the Parties is to allow the Company to fully recover the costs to the Company of performing or acquiring any Services (which costs will reflect the benefits of any discounts received by the Company), but not to return any profit to the Company.

2.4     The Company shall perform the Services at such location or locations as may be mutually agreed with BPX&P.

## ARTICLE 3 - RELATIONSHIP OF PARTIES

Subject to the terms and conditions of this Agreement, BPX&P hereby designates and appoints the Company as its agent and as general contractor, and the Company accepts such appointment, in connection with any drilling and development work required by BPX&P in respect of operations offshore the Gulf of Mexico in which BPX&P acts as operator, including the design, construction, transportation, and installation of offshore platforms.

## ARTICLE 4 - REMUNERATION - INVOICE AND PAYMENT

4.1     In the event that the Company expends its own funds while acting in its capacity as agent of BPX&P, the Company may submit invoices to BPX&P, supported by such documentation for the charges as may be reasonably required for BPX&P to determine appropriateness of the charge. Such invoices may be rendered monthly to BPX&P or at such other intervals as may be mutually agreed between the parties. BPX&P shall pay the Company invoices within the time period and in the manner specified in such invoices. In the event any expenses are incurred by the Company in currency other than U.S. Dollars, the amount to be invoiced shall be calculated at the commercial rate of exchange or the rate in effect for such purpose (from the non-U.S. Dollar currency to U.S. Dollars) based upon the amount actually expended by the Company for the transaction. The Company may also allow BPX&P, subject to BPX&P's concurrence, to settle billings directly with third parties for costs incurred by the Company as agent for BPX&P.

4.2     To the extent that payments to be made under this Agreement attract withholding taxes, value added taxes, sales/service taxes, and/or municipal taxes, the amount of such taxes shall be added to the amount payable by BPX&P to the Company for the Services. With respect to each invoice payment, BPX&P shall inform the Company as to whether BPX&P shall withhold any amounts in the course of making payment for such Services. The Company shall reflect the amount of any withholding tax BPX&P believes it is required to withhold as a separate and additional item on the invoice, which shall be added to the amount payable by BPX&P for the Services.

BP-HZN-2179MDL07817990

4.3    In the event that BPX&P does not approve an invoice, or any portion thereof, BPX&P shall promptly notify the Company of the disputed item or items. BPX&P shall pay all undisputed portions of any invoice pursuant to the terms hereof. The Parties hereto shall immediately meet to resolve any amounts in dispute as soon as possible after notification by BPX&P of any such dispute.

**ARTICLE 5 - TAXES**

5.1    The Company shall, subject to the provisions of Article 4.2 and 5.2 hereof, be responsible for, and shall release, defend, indemnify and hold BPX&P harmless from, the reporting, filing and payment of any taxes, duties, charges or fees (and any related fines, penalties, or interest) imposed directly or indirectly on the Company or its contractors, employees, agents or servants as a result of the Company's performance of the Services under this Agreement.

5.2    The payments provided for in the invoices are exclusive of any value added taxes, sales/service taxes, municipal taxes and withholding taxes that may be imposed on such payments by the taxing authorities having jurisdiction. Subject to BPX&P's right to verify that such taxes apply to the payments made hereunder, BPX&P shall pay to the Company or withhold from the Company, as the case may be, the amount of such taxes upon receipt of an invoice including the amount of such taxes, issued in compliance with the applicable tax laws. Notwithstanding any provision to the contrary in this Agreement, the Company shall not be liable for, and shall not indemnify BPX&P against any taxes, duties, charges or fees, (or any related fines, penalties or interest) that BPX&P is required to withhold from payments to the Company. The Company shall use its best efforts to avail itself of any and all exemptions from and/or reductions of such taxes.

**ARTICLE 6 - LIABILITY AND INDEMNITY**

6.1    Standard of Care and Liability

Subject to the terms and conditions hereinafter provided, the Company shall exercise all reasonable skill, care and diligence in the discharge of its obligations under this Agreement, but the liability of the Company, its Affiliates and third party contractors to BPX&P with respect to any loss or damage of whatsoever nature or howsoever caused that in any way arises out of or in connection with the performance or non-performance of the Company's obligations under this Agreement or in tort shall be limited to cases of gross negligence or willful misconduct on the part of the Company. In the case of willful misconduct, the Company's liability shall, subject to the other provisions of this Article 6, extend solely to the proper performance of the obligation in question at its own cost. BPX&P agrees that it shall undertake no proceedings against any person other than the Company under the provisions of this Agreement.

6.2    BPX&P's Indemnity

CONFIDENTIAL

BP-HZN-2179MDL07817991

Except in the event of the gross negligence or willful misconduct of the Company, BPX&P shall bear all loss, expense and damage and agrees to release, defend, indemnify and save the Company, its Affiliates and its and their respective directors, officers, employees, servants or agents ("Company Group"), harmless from and against all claims, liabilities, damages, and expenses (including without limitation attorneys' fees and other legal costs and expenses), and irrespective of insurance coverages, when arising out of, associated with or incident to this Agreement whether or not occasioned by or the result in whole or in part of the negligence or fault, whether sole, concurrent, joint, active, or passive, of Company Group or the unseaworthiness of any vessel or unairworthiness of any aircraft; it being the Parties' intention that the indemnities provided for in this Article 6.2 are to apply (1) without regard to any conflicting rules of liability under any applicable law or regulation and (2) without regard to any successful limitation or exoneration of liability proceeding filed by or on behalf of BPX&P pursuant to the laws of any state, and (3) whether or not the claim, liability, damage or expense in question is (i) predicated on negligence, strict liability, statutory duty, or contractual indemnity, or (ii) sought directly or indirectly by way of recovery, indemnification or contribution by any person or entity against the Company.

6.3     BPX&P or the Company, as the case may be, shall promptly give to the other Party Notice of any claim made or proceedings commenced for which BPX&P or the Company claims to be entitled to indemnification or other relief under this Agreement. Such Notice shall state with as much detail as is reasonably practicable the facts and circumstances giving rise to the claim and shall be given as soon as possible after the Party seeking indemnity or relief hereunder (referred to in this Article 6.3 as the "Indemnitee") becomes aware of such claim or proceeding. The Party against whom such indemnity or relief is sought (referred to in this Article 6.3 as the "Indemnitor') shall confer with the Indemnitee concerning the defense of any such claim or proceedings but, subject to the remainder of this Article 6.3, the Indemnitor or its insurer shall retain control of the conduct of such defense including, but not limited to, the selection and management of counsel. Notwithstanding the foregoing, however, neither Party shall effect settlement of or compromise any such claim or proceedings without having obtained the prior written consent of the other Party, but if Indemnitee does not consent to a settlement which the Indemnitor is willing to accept, then Indemnitor's liability shall be limited to the amount for which the lawsuit could have been settled. The Indemnitee may, upon Notice to the Indemnitor and at the Indemnitee's sole cost and expense, select its own counsel to participate in and be present for the defense of any such claim or proceeding, provided such counsel shall not take any action in the course of such claim or proceeding to prejudice the defense of such claim or proceeding.

6.4     BPX&P shall be responsible for, defend, indemnify and hold the Company harmless from and against all losses, claims, suits, demands, liabilities, costs,

CONFIDENTIAL

expenses (including legal, court, experts' and investigative fees) and causes of action (In Rem or otherwise) of every kind or nature with respect to pollution, including clean-up costs arising out of or in connection with the performance of this Agreement by the Company and/or BPX&P, whether or not occasioned by or the result in whole or in part of the negligence or fault, whether sole, concurrent, joint, active, or passive, of Company or the unseaworthiness of any vessel or unairworthiness of any aircraft; it being the Parties' intention that the indemnities provided for in this Article 6.4 are to apply (1) without regard to any conflicting rules of liability under any applicable law or regulation and (2) without regard to any successful limitation or exoneration of liability proceeding filed by or on behalf of BPX&P  pursuant to the laws of any state, and (3) whether or not the claim, liability, damage or expense in question is (i) predicated on negligence, strict liability, statutory duty, or contractual indemnity, or (ii) sought directly or indirectly by way of recovery, indemnification or contribution by any person or entity against Company.

## ARTICLE 7 - INSURANCE

7.1     The Company shall take out and maintain insurance to fulfill the requirements of any governmental authority or other regulatory body having jurisdiction over the Company or the Services to be provided or acquired hereunder. In respect of any such insurance, the Company shall obtain from its insurers a waiver of all rights of subrogation against BPX&P.

7.2     BPX&P shall take out and maintain insurance to fulfill the requirements of any governmental authority or other regulatory body having jurisdiction over BPX&P. In respect of any such insurance, BPX&P shall obtain from its insurers a waiver of all rights of subrogation against the Company and its Affiliates.

## ARTICLE 8 - AUDIT

The Company shall maintain a complete and correct set of records pertaining to all aspects of this Agreement. BPX&P, in order to verify that all transactions between BPX&P and the Company under this Agreement satisfy all of the terms and conditions of this Agreement, shall have the right to periodically inspect and audit relevant records relating to the Services performed or acquired hereunder, and payments therefor within a period of two (2) years after the completion of the respective Services, provided that the Company shall have the right to exclude any proprietary matters, trade secrets, formulas, processes, from such inspection and audit.  Should the results reveal that payments have been made incorrectly, appropriate adjustments will be made between the Parties hereto.

## ARTICLE 9 -TITLE

BP-HZN-2179MDL07817993

Technical information (including drawings, designs, specifications, electronically recorded and stored data and calculations), developed or arising during the Services or in connection with the performance thereof (excluding patent, design, copyright, trade mark, trade name, and all other industrial and intellectual property rights of the Company, its Affiliates and the contractors thereof),belong to BPX&P, and BPX&P shall have full access thereto and use thereof.

## ARTICLE 10 - ASSIGNMENT

This Agreement is not assignable in whole or in part, except that either Party may assign this Agreement, in whole or in part, to an Affiliate.

## ARTICLE 11- EFFECTIVE DATE AND DURATION

This Agreement shall be deemed to have come into full force and effect as of the [1st day of January, 2006], and, subject to the conditions for earlier termination specified herein, shall continue in full force thereafter until terminated by either Party hereto giving the other Party at least thirty (30) days prior written notice of termination. Notwithstanding the foregoing, BPX&P may terminate this Agreement for unsatisfactory performance at any time. BPX&P will have no liability hereunder to the Company after the effective date of termination other than to pay for satisfactory Services performed or acquired by the Company hereunder prior to the termination date and to fulfill its obligations regarding confidentiality, non-use and transfer contained in Article 14.

## ARTICLE 12 - FORCE MAJEURE

12.1   A failure or omission by either Party hereto to carry out or observe any of the terms or conditions of this Agreement (other than the failure to pay money pursuant to the terms hereof), shall not give rise to any claim against the Party failing or omitting to carry out or observe any of the terms or conditions hereof or be deemed a breach of this Agreement by such Party if such failure or omission resulted from any cause or event reasonably beyond the control of such Party.

12.2   A Party invoking the provisions of Article 12.1 hereof shall take all actions that are reasonable under the circumstances to remedy the force majeure situation and to proceed with the performance of its obligations hereunder.

12.3   Notice of any event of force majeure and any abatement thereof shall forthwith be given to the other Party by the Party hereto claiming the benefit of Article 12.1 hereof.

## ARTICLE 13 - APPLICABLE LAW AND DISPUTE RESOLUTION

13.1   Applicable Law

CONFIDENTIAL

This Agreement shall be governed by, construed, interpreted and applied in all respects in accordance with the laws of the State of Texas, without reference or regard to any conflict of law or choice of law rules or principles.

13.2    Arbitration

Any dispute as to any matter or operation arising out of or in connection with this Agreement, including, without limitation, any dispute as to the validity, construction, enforceability or breach of this Agreement shall be exclusively and finally settled by arbitration, to which BPX&P and the Company hereby irrevocably agree to submit, and any Party hereto may submit such a dispute to arbitration.

(a)    Arbitration proceedings shall be conducted before a single arbitrator in accordance with the then current Arbitration Rules of the American Arbitration Association (the "Rules"); provided that the terms of this Agreement shall prevail in the event of any conflict between this Article 13 and the Rules.

(b)    In any arbitration proceeding hereunder:

(i)    The proceedings shall, unless otherwise agreed in writing, be held in Houston, Texas in the United States of America.

(ii)    The decision of the arbitrator shall be final and binding on the Parties hereto and shall be enforceable in any court of competent jurisdiction; and

(iii)    All monetary awards shall be made and payable in U.S. Dollars.

(c)    The costs of arbitration shall be borne in the manner determined by the arbitration tribunal.

(d)    In case of arbitration, the Parties hereto shall endeavor to continue their performance of this Agreement during the arbitral proceedings.

(e)    Each Party hereto irrevocably waives any and all claims to immunity in regard to the arbitration proceedings and any proceedings to enforce, recognize or execute any arbitral award rendered by a tribunal constituted pursuant to this Agreement including, without limitation, immunity from service of process, sovereign immunity, immunity from jurisdiction of any court, and immunity of such of its property as is of a commercial nature from execution.

## ARTICLE 14 - CONFIDENTIALITY

CONFIDENTIAL

BP-HZN-2179MDL07817995

All information obtained by the Company in the performance or acquisition of the Services shall be confidential and shall not be disclosed by the Company to any non-affiliated third party, either during the term of this Agreement or thereafter except:

    (a)    to such extent as may be required to perform or acquire the Services;

    (b)    as may be required by law, order, decree, regulation or rule issued by a competent authority;

    (c)    to the extent such information is in the public domain as of the effective date hereof or thereafter comes into the public domain;

    (d)    to the extent such information is known to the Company or an Affiliate thereof prior to the effective date of the performance or acquisition of the respective Services to be performed or acquired hereunder.

## ARTICLE 15 - NOTICES

15.1    Manner of Notices

    (a)    All notices, notifications, advisements, submissions, approvals or other communications (herein referred to as "Notice" or "Notices") that may be or are required to be given hereunder shall be in writing and shall, subject to the provisions of this Agreement, be deemed to have been properly and effectively given and delivered to a Party hereto, when:

        (i)    Delivered in person to the address of the Party hereto as provided below;

        (ii)    Transmitted by facsimile upon the actual receipt of such facsimile by the recipient Party hereto; or

        (iii)    Delivered by mail. Notices sent by mail shall be deemed to have been received by the addressee Party ten (10) days following the date of posting of each respective Notice delivered by mail hereunder.

    (b)    Any Party hereto may notify the others of changes of address in accordance with this Article by Notice thereof to the other Parties hereto, and any such address shall upon receipt of such Notice by the other Parties become the address of the notifying Party for the service of Notices hereunder.

15.2    Addresses

BP-HZN-2179MDL07817996

For the purpose of the service of Notices hereunder, the respective addresses of BPX&P and the Company are, as of the date hereof, as set forth below:

|          | BP America<br>Production Company          | BP Exploration<br>& Production Inc.       |
|----------|-------------------------------------------|-------------------------------------------|
| Address: | 501 WestLake Park Blvd.<br>Houston, TX 77079-2696 | 501 WestLake Park Blvd.<br>Houston, TX 77079 |
| Facsimile:<br>Attention: | (281) 366-5109<br>Legal Group | (281) 366-5109<br>Legal Group |

## ARTICLE 16 - COMPLIANCE WITH LAWS AND REGULATIONS

The Company shall at all times perform or acquire the Services in accordance with all applicable laws, rules, and regulations of government and other bodies having jurisdiction over the performance of the Services, provided that in no event shall the Company, in the performance of Services, be required to violate any law, rule, regulation) decree or order of the United States of America.

## ARTICLE 17 - WAIVER

No waiver by either Party hereto of any provision of this Agreement shall be binding unless made expressly and in writing. Furthermore, any such waiver shall relate only to such matter, non-compliance or breach to which it expressly relates and shall not apply to any subsequent or other matter, non-compliance or breach.

## ARTICLE 18 – HEADINGS

The headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

IN WITNESS WHEREOF, the duly authorized and empowered representatives of the Parties hereto have executed this Agreement as of the day and year first above written, effective for all purposes as provided herein.

Signed for and on behalf of:

Signed for and on behalf of:

**BP America Production Company**

**BP Exploration & Production Inc.**

By: _____

By: _____

Name: D. A. MOTTASHGD

Name: D. A. MOTTASHGD

BP-HZN-2179MDL07817997

Title: PSCM MANAGER          Title: PSCM MANAGER

CONFIDENTIAL                                                    BP-HZN-2179MDL07817998