UNITED STATES DISTRICT OF COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER MAG. JUDGE SHUSHAN |
| …………………………………………………... | : | |

**BP EXPLORATION & PRODUCTION INC.'S RESPONSES
TO THE UNITED STATES' PROPOSED ORDER
REGARDING UNITED STATES' MOTION TO COMPEL DISCOVERY**

BPXP responds as follows to the United States' Proposed Order Regarding Its Motion to Compel Discovery.

**RESPONSES**

1. For RFP #1 – Produce the financial statements at the subsidiary level for BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., and BP Holdings North America for each year, 2005-2014. If such financial statements and trial balances do not exist, the defendant shall provide the United States the financial statements that do exist, specify the entities that do not have them and the years for which they were not maintained, provide an appropriate written verification and amend its responses to discovery requests accordingly.

**RESPONSE:**

The United States seeks ten separate years of financial statements for six different entities, including various entities that maintain financial statements on a quarterly basis. BPXP has already provided financial statement discovery that easily meets the "limited" requirements of Judge Barbier's March 21 order, and further production of financial statements or financial reports for these entities for more remote time periods would be overbroad and unduly burdensome. BPXP has produced its quarterly financial reports for 2011 through 2014 (Exs. E - G) and trial balance documentation covering the 2009-2013 period (Ex. H), as well as the most recent available financial statements or financial reports for the other BP entities named in

proposed paragraph 1 or noted that financial statements or financial reports were not prepared (Exs. J-M).

2.  For RFP #2 – Produce the consolidated U.S. Federal income tax returns for BP America Inc., including subsidiary level worksheets and consolidating accounting for each year, 2005-2014.

**RESPONSE:**

The information sought in proposed paragraph 2 – including tax returns going back ten years – is cumulative, overly broad, and unduly burdensome. As discussed in BPXP's response, the financial information reflected in BP America Inc.'s tax return provides no additional information relevant to the penalty phase beyond what is already provided in the financial statements that have been produced to the United States. BPXP has made available for the Court's *in camera* review the latest BP America Inc. consolidated federal tax return, which BPXP believes will demonstrate that this information is cumulative and not useful in determining the economic impact of the penalty on BPXP.

3.  For RFP #3 – Produce (a) a detailed chart of accounts payable and receivable balances from 2005-2014; (b) financing or loan agreements in place or in effect between BPXP and other BP entities from 2005-2014; (c) a representative sample of documents clarifying what BP contends is "sufficient to summarize" both (i) policies relating to the pricing of intra-Group debt between BPXP and other BP entities; and (ii) injections of equity by BP entities into BPXP from 2005 to 2014 (as well as the subsequent production of such summary documents if they are found adequate); and (d) all service agreements in effect between BPXP and other BP entities from 2005-2014.

**RESPONSE:**

The information sought in proposed paragraph 3 – including "detailed" accounting information going back ten years – is overly broad and unduly burdensome. BPXP has already produced documents that easily meet the "limited" requirements of Judge Barbier's March 21 order with respect to RFP 3, as discussed on pages 9-10 of BPXP's response brief. BPXP has already produced documents relating to each category sought by the United States in proposed

paragraph 3, including: (a) trial balance information showing accounts payable and accounts receivable owed between it and its affiliates for each quarter from 2009 to the present (Ex. H); (b) several financing or loan agreements (including interest rate terms) between BPXP and other BP entities for the time period January 1, 2009 to the present (Ex. O); (c) documentation relating to a `Redacted` (Ex. N); (d) multiple service agreements between BPXP and other BP Group entities (Ex. T); (e) guarantees of BPXP's obligations by other entities (Ex. P); and (f) documents showing terms and policies relating to the marketing of hydrocarbons between BPXP and other BP entities (Ex. R).

The United States' proposed paragraph 3 is also improper in that it seeks to require BPXP to create new documents in response to a request for production, including a "single detailed chart of accounts payable and receivable balances" (in subtopic (a)) and a "summary document" (in subtopic (c)).

4.     For RFP #4 – Produce the current or most recent final, board of director authorized multi-year budgets that include future projections for BPXP and each of the entities in the line of ownership up to BP p.l.c.  In the alternative, the defendant may verify that it will be bound by credit agency reports for purposes of this litigation.

**RESPONSE:**

The US states that "the financial projections sought by RFP 4 could be contained in a single document." (USA Br. at 9). BPXP has already produced its Standard Measure of Oil and Gas Analysis for its Gulf of Mexico assets (Ex. W), which provides financial projection information relevant to BPXP.  BPXP has also produced numerous credit agency reports that provide their own financial projections.

Moreover, the United States' request that BPXP adopt the statements of third-party rating agency reports is overly broad and unduly burdensome.  BPXP has already produced more than 270 pages of such credit rating agency reports in this penalty phase (Ex. X).  This request that

BPXP "verify that it will be bound" is also inappropriate for a document request; the credit rating agency reports were prepared by third parties.

5.     For RFP #5 – Produce all documents authored by, addressed to, received by, or that identify Brenda Pennington, D.B. Pinkert, Denise Robertson, K.D. Heulitt, R.J. Pillari, and P.D. Wessells related to the Macondo Incident.

**RESPONSE:**

Proposed paragraph 5 seeks discovery that is irrelevant, overly broad and unduly burdensome. Paragraph 5 also far exceeds the "limited discovery" ordered by the Court and conflicts with the Court's May 19, 2014 order significantly limiting the production of custodial files in view of the limited period allocated for discovery. To the extent the United States asserts that it requires information regarding the Board of Directors of BPXP or any of its parent companies, BPXP has already agreed to provide all resolutions of the BPXP Board from 2009 to the present, as well as the Board materials for certain of its parent companies as described on page 11 of BPXP's opposition brief.

Moreover, because proposed paragraph 5 is focused on Board members, it is not reasonably calculated to lead to the discovery of admissible evidence. Even the Third Circuit's decision in *Dean Dairy* – which is heavily relied upon by the US but not controlling here – did not look to any Board documentation to determine the economic impact of the penalty on the violator. Indeed, the word "Board" and the phrase "Board of Directors" do not appear in the *Dean Dairy* decision. *US v. Mun. Auth. of Union Twp.*, 150 F.3d 259, 268 (3d Cir. 1998). Instead, the *Dean Dairy* case examined the parent's operational involvement based on the facts that (1) the parent company "had complete control over whether and when [the violator] would achieve compliance" with its wastewater permit; and (2) the parent company "was siphoning off profits" from its subsidiary throughout the time the subsidiary was facing wastewater problems.

*Dean Dairy*, 150 F.3d at 268-69 (internal quotations omitted).  Here, the operational involvement of BP p.l.c. and the BP Group in the *Deepwater Horizon* Incident were exhaustively examined in Phase One (*see* BPXP Entities Brief at 12) and are not proper topics of discovery in the Penalty Phase.

      6.     For RFP #6 – Produce all BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., and BP America Inc. Board of Director, Board of Director committee, and officer meeting resolutions and decisions for each year, 2008-2014.  If such resolutions and decisions do not exist for all or certain of the entities, the defendant shall provide the United States with an appropriate written verification and amend its responses to discovery requests accordingly.

**RESPONSE:**

BPXP has already agreed to provide all resolutions of the BPXP Board from 2009 to the present, as well as voluminous documentation relating to the Board of BP p.l.c., including Board minutes and related materials, and has undertaken a reasonable search for and will produce BP Corporation North America Inc. Board resolutions as described on page 11 of BPXP's opposition brief.  To the extent that RFP 6 seeks additional information, it goes far beyond the "limited" discovery authorized by Judge Barbier.

Moreover, as discussed above in the response to request 5, even the Third Circuit's decision in *Dean Dairy* – which is heavily relied upon by the US but not controlling here – did not look to any Board resolutions or documentation.

      7.     For RFP #s 9-10 – Provided that the defendant produces the required information in response to RFP #s 1, 3, and 4, no additional documents will be required for RFP #s 9-10.
**RESPONSE:**

BPXP has already produced documents that easily meet the "limited" requirements of Judge Barbier's March 21 order with respect to RFPs 1-3, as well as documents relating to RFP's 9 and 10, including financing or loan agreements between BPXP and other BP entities for the

time period January 1, 2009 to the present (Ex. O). BPXP agrees that it is required to produce no additional documents for RFP #s 9-10.

8. For RFP #12 – Produce all documents that identify BPXP's payment of distributions or dividends for 2005 to present.

**RESPONSE:**

This request is extraordinarily overbroad and unduly burdensome. It would require BPXP to locate any document "identif[ies] payment of distributions or dividends," regardless of whether it is a brief discussion of dividends or is duplicative of other documents. Moreover, BPXP has already agreed to produce documents sufficient to summarize BPXP's payment of dividends from 2007 to the present in response to RFP 12. Discovery regarding dividends issued in 2005, nearly a decade before the time of trial, is inconsistent with the requirement of "limited discovery," as is the United States' request for "all documents" when documents sufficient to summarize BPXP's dividend payments are adequate to provide the relevant information.

9. For RFP #13 – Provided that the defendant identifies all liabilities that the defendant's fact or expert witnesses will testify to at trial, and provided that the defendant discloses sufficient information that the United States can evaluate each such contingent liability or debt, the defendant's response will be sufficient.

**RESPONSE:**

First, to the extent this request asks BPXP to identify liabilities that expert witnesses will testify to, it is premature in light of the schedule for expert discovery. Indeed, the nature and extent of BPXP's liabilities may change between the present date and the time of trial. In addition, this request to identify "all liabilities" – as opposed to the identification of liabilities in summary form – is extraordinarily overbroad and unduly burdensome, including because BPXP has incurred over $41 billion in liabilities relating to the *Deepwater Horizon* incident. Those liabilities are supported by hundreds of thousands of pages of invoices, checks, and other back-

up.  "Identification" of such liabilities – beyond the summary information provided by BPXP – goes "beyond the scope of what is necessary here."  (Mar. 21, 2014, Tr. at 50).

Finally, paragraph 9 improperly requires BPXP to provide certain information that is better known to the United States than to BPXP.  For example, the amount of future BPXP liabilities for the Clean Water Act and for the NRD is driven in part by claims asserted by the United States.  The United States already possesses extensive information regarding the potential extent of such BPXP liabilities.

10. For RFP #14 – In addition to the service agreements and contracts in place 2005-present, the defendant shall provide summary accounting information tracking the payments made by BPXP to the BP entities. The defendant must, at a minimum, identify BP entities that provided the seven specific services requested by the United States for each year and the amounts paid.

**RESPONSE:**

BPXP has already produced documents that easily meet the "limited" requirements of Judge Barbier's March 21 order with respect to RFP 14, including multiple service agreements between BPXP and other BP Group entities.  (Exhibits T-1 and T-2).  In proposed paragraph 10, the United States improperly seeks (1) to amend and expand its RFP 14 to extend to additional documents, including the apparent creation of a new document not sought in RFP 14 that would provide "summary accounting information tracking the payments made by BPXP to the BP entities" and (2) to convert its RFP 14 into an interrogatory asking BPXP to identify certain BP entities.  *Compare* April 18 RFP #14 ("Provide all documents that describe and identify the BP entity or entities that provided the following services to BPXP in 2005 to present: (a) legal; (b) accounting and finance; (c) environmental; (d) scientific; (e) well-drilling technology and design; (f) personnel (including any secondment agreements); and (f) human resources.") *with* USA Proposed Order ¶ 10 ("[T]he defendant shall provide summary accounting information [and] identify BP entities that provided the seven specific services requested . . . .").  The service

7

agreements produced by BPXP are sufficient to provide information properly sought under RFP 14. In addition, information regarding accounts payable and accounts receivable between BPXP and other entities is included in the trial balances produced by BPXP (Ex. H).

11.     For RFP #15 – The United States has indicated it is willing to accept summary information on these asset divestments. BP must provide contemporaneous accounting records, generated for business purposes or for public reporting, reflecting in spreadsheet form the following information: the BP entity owning the asset, the names/description of the asset, the date of the sale of the asset, the book or carrying value of the asset, the sales price of the asset, and the gain on the sale of the asset. In the event this information does not exist, BP must produce Purchase and Sale document for the major transactions.

**RESPONSE:**

BPXP has already produced documents which are sufficient to summarize the divestments by the BP Group since April 20, 2010.  These include (1) the BP p.l.c. Investor Update presentation dated March 4, 2014; (2) the BP Annual Reports and Forms 20-F 2010-2013; and (3) the BP p.l.c. 4Q & Full Year 2013 Results Presentation dated February 4, 2014. The United States includes no discussion of RFP 15 in its motion to compel and so provides no support for proposed paragraph 11.  Despite this, the United States improperly attempts to force BPXP either to provide a single document meeting the United States' detailed criteria or to provide Purchase and Sale documents (many of which are governed by confidentiality restrictions) for transactions across the globe.  That attempt violates the Court's direction that there by "limited discovery" on the relationship of BPXP to the BP Group, and the United States has offered no support for it.

12.     For RFP #16 - Provided that the defendant produces the required information in response to RFP #s 3, 9, 12-15, no additional documents will be required for RFP #16.

**RESPONSE:**

BPXP has already produced numerous documents relating to RFP 16, as well as documents relating to RFP's 9 and 10, including trial balance information showing accounts

8

payable and accounts receivable owed between it and its affiliates for each quarter from 2009 to the present (Ex. H); financing or loan agreements (including interest rate terms) between BPXP and other BP entities (Exs. O-1 and O-2); documentation relating to a Redacted (Ex. N); and multiple service agreements between BPXP and other BP Group entities (Exs T-1 and T-2). BPXP agrees that it is required to produce no additional documents for RFP #16.

13. For Interrogatory #1 – Identify the members of the Boards of Directors of BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., and BP America Inc. for each year, 2005-2014.

**RESPONSE:**

BPXP has produced a document identifying its directors and officers at all periods from April 20, 2010 to present, and information regarding the Board of Directors of BP p.l.c. is publicly available. This information meets the "limited" requirements of Judge Barbier's March 21 order. The United States represented that it "seeks to know not only the identities of the present officers and directors of BPXP, but also the identities of those at the time of the Incident and the Response. *See*, RFP 7 & Interrog. 1." (USA Br. at 7.) BPXP has produced this information.

The United States' proposed paragraph 13 now improperly seeks to expand the scope of information sought by its interrogatory 1 (which sought information from 2008 to 2014), by seeking information as far back as 2005. *Compare* April 18 Interrogatory #1 ("Identify the members of the Boards of Directors and officers of BPXP, BP America Production Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP Holdings North America, and BP plc, *for each year 2008-2014*.") (emphasis added) *with* USA Proposed Order ¶ 13 ("for each year, *2005-2014*") (emphasis added). This attempt to amend its

request by means of a motion to compel is improper, and, in any event, discovery regarding the BPXP Board from prior to the Incident is unnecessary and overbroad given the limited scope of discovery.

Moreover, as discussed above, even the Third Circuit's decision in *Dean Dairy* —which is heavily relied upon by the US but not controlling here—did not look to any Board resolutions to determine the economic impact of the penalty on the violator.

14.     For Interrogatory #2 – Identify which BP corporate entity, employed and paid Tony Hayward, Robert Dudley, Andrew Inglis, Lamar McKay, Douglas Suttles, James Dupree, David Rainey, Kevin Lacey, Brian Morel, Mark Hafle, Bret Cocales, John Guide, Robert Kaluza, Don Vidrine, Trevor Hill, Mike Mason, and David Sims for 2010-2011.
**RESPONSE:**

Discovery regarding the individuals listed in interrogatory 2 took place in Phases 1 and 2 of this litigation, in which the United States had full opportunity to participate. The United States provides little or no discussion of this request in its Motion to Compel and provides no explanation why this inquiry is appropriate given Judge Barbier's order regarding "limited" discovery. Furthermore, all but two of these witnesses have already been deposed in MDL-2179.

15.     For Interrogatory #6 – Identify each penalty obtained against other companies and each environmental incident referenced in BP's submission to the Court of March 3, 2014, and how you contend the penalty should be "calibrated" to the penalty to be imposed for BPXP's violations of the Clean Water Act.

**RESPONSE:**

As explained on pages 13-15 of BPXP's opposition brief, interrogatory 6 is not a proper contention interrogatory, but instead improperly seeks BPXP's purely legal arguments related to this issue.