CORRECTED May 20, 2014
# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED MAY 2 0 2014
WILLIAM W. BLEVINS
CLERK

No. 13-30095

MD 10-2179-J

IN RE: DEEPWATER HORIZON – APPEALS OF THE ECONOMIC AND PROPERTY DAMAGE CLASS ACTION SETTLEMENT

Appeals from the United States District Court
for the Eastern District of Louisiana

## ON PETITION FOR REHEARING EN BANC

Before DAVIS, GARZA, and DENNIS, Circuit Judges.

ORDER:

The court having been polled at the request of one of its members, and a majority of the judges who are in regular active service and not disqualified not having voted in favor (Fed. R. App. P. 35 and 5TH Cir. R. 35), the petition for rehearing en banc is DENIED.*

In the en banc poll, five judges voted in favor of rehearing (Judges Jolly, Jones, Clement, Owen and Elrod) and eight judges voted against rehearing (Chief Judge Stewart and Judges Davis, Dennis, Prado, Southwick, Haynes, Graves and Higginson).

ENTERED FOR THE COURT:

 /s/ W. Eugene Davis

United States Circuit Judge

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

---

* Judge Smith is recused and did not participate in the consideration of the petition for rehearing en banc.

No. 13-30095

EDITH BROWN CLEMENT, Circuit Judge, dissenting from Denial of Rehearing En Banc, joined by JOLLY and JONES, Circuit Judges:[1]

Today the court approves a class action settlement agreement that permits payment for economic losses "without regard to whether such losses resulted or may have resulted from a cause other than the Deepwater Horizon oil spill." This violates the fundamental Article III requirement that "there must be a causal connection between the injury and the conduct complained of," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and the principle that Rule 23 "must be interpreted in keeping with Article III," *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 613 (1997). In this class settlement, Rule 23 is not being used to aggregate similar constitutional cases and controversies, but to impermissibly extend the judicial power of the United States into administering a private handout program. We dissent from denial of rehearing en banc.[2]

I

The Claims Administrator's policy interpretation, permitting payment "without regard" to whether an injury was caused by the oil spill, creates the principal defect in this case.[3] The interpretation yields an irreconcilable conflict with Section 1.3.1.2 of the Class Definition (which appears identically in the Settlement Agreement and Complaint), requiring that Business

---

[1] Judge Garza would join this dissent if he had been able to vote as an active member of the en banc panel.

[2] Here, the focus is on the Article III standing deficiency resulting from the Claims Administrator's interpretation. Judge Garza's initial dissent for this, the certification panel, identifies several additional problems with the court's treatment of Rule 23(a) and the Rules Enabling Act. These remain significant issues in this case, and are incorporated by reference. *See In re Deepwater Horizon*, 739 F.3d 790, 821–29 (5th Cir. 2014) (Garza, J., dissenting).

[3] This Claims Administrator issued the interpretation on October 10, 2012. On April 9, 2013, the district court formally adopted the interpretation. *See* Order of April 9, 2013, 2:10-MD-2179, ECF No. 9232.

Case 2:10-md-02179-CJB-DPC Document 12927 Filed 05/20/14 Page 3 of 10
Case: 13-30095 Document: 00512636271 Page: 3 Date Filed: 05/19/2014

No. 13-30095

Economic Loss class members suffered injuries "*as a result of* the Deepwater Horizon incident." (emphasis added). Moreover, it creates an irreconcilable conflict with Article III. The federal courts are not limited by the parties' contentions when acting on Article III jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer *for itself, even when not otherwise suggested, and without respect to the relation of the parties to it.*") (emphasis added). Accordingly, whether BP previously supported the Claims Administrator's interpretation, or whether it previously believed Article III standing to be satisfied, is not germane. To maintain the role of the courts in our system of divided powers, we have the independent duty to enforce the limitations of Article III.

The Settlement Agreement operates through a series of interconnected legal documents, one of which is Exhibit 4B—"Causation Requirements for Business Economic Loss Claims." Section I of Exhibit 4B establishes that certain individuals and entities, based solely on their geographical location or the nature of their enterprise, "are not required to provide *any evidence* of causation."[4] This subset of claimants is entitled to a presumption of causation. Standing alone, geographical proximity, or the nature of one's enterprise, is insufficient to satisfy Article III causation, which requires a "causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. However, but for the Claims Administrator's interpretation, Exhibit 4B's relationship to the Class Definition would have kept causation as an element

---

[4] For example, Section I.1 states, "If you are a business in Zone A, *you are not required to provide any evidence of causation* unless you fall into one of the exceptions agreed to by the parties, and listed in footnote (1)." Section I.5 states, "If you are in Zone A, B, or C, and you meet the 'Charter Fishing Definition' *you are not required to provide any evidence of causation.*" (emphases added).

3

Case 2:10-md-02179-CJB-DPC Document 12927 Filed 05/20/14 Page 4 of 10
Case: 13-30095 Document: 00512636271 Page: 4 Date Filed: 05/19/2014

No. 13-30095

of class members' claims—claimants would have been required to have suffered injury "as a result of" the oil spill.

The Claims Administrator's interpretation fundamentally changed this balance, establishing that he would:

> "compensate eligible Business Economic Loss and Individual Economic Loss claimants for all losses payable under the terms of the Economic Loss frameworks in the Settlement Agreement, *without regard to whether such losses resulted or may have resulted from a cause other than the Deepwater Horizon oil spill* provided such claimants have satisfied the specific causation requirements set out in the Settlement Agreement." (emphasis added).

This decision effectively negates the requirement that injuries be "as a result of" the oil spill. These two positions—that injury must be "as a result of" the oil spill, and that compensation is available "without regard to whether such losses resulted" from the oil spill—are plainly irreconcilable. Thus, the Claims Administrator's interpretation renders Section 1.3.1.2's causation language nugatory—all that remains are the terms of Exhibit 4B. The district court confirmed this understanding. On December 24, 2013, responding to a remand order in No. 13-30315, the district court established "that whether a business economic loss is 'as a result of' the Deepwater Horizon incident for purposes of the Settlement is determined exclusively and conclusively by Exhibit 4B."[5]

Beyond geographical proximity or the nature of a claimant's enterprise, Exhibit 4B provides no specific causation requirements for a subset of the class.[6] Because the Claims Administrator will pay claims to this subset "without regard" to whether their injuries were caused by the oil spill, the class includes members for which there is absolutely no requirement of causation.

---

[5] *See* Order and Reasons [Responding to Remand of Business Economic Loss issues], 2:10–MD2179, ECF No. 12055, at 18.").

[6] In fact, the section header in Exhibit 4B for this group of claimants makes plain that, "There is No Causation Requirement."

4

Case 2:10-md-02179-CJB-DPC Document 12927 Filed 05/20/14 Page 5 of 10
Case: 13-30095 Document: 00512636271 Page: 5 Date Filed: 05/19/2014

No. 13-30095

Consequently, this settlement class may include individuals or entities who could never truthfully allege or establish an injury "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S at 660 (internal quotations and alterations omitted).[7]

The Claims Administrator's interpretation of the Settlement's causation requirement is essential to determining whether this class certification is "in keeping with Article III." *Amchem*, 521 U.S. at 613. Notwithstanding this significance, the certification panel majority did not address the interpretation in concluding that Article III is satisfied.[8] This position is untenable.

While the interpretation does not directly reference Section 1.3.1.2's requirement that class members suffer losses "as a result of" the oil spill, it has the clear effect of rendering that language void. The interpretation addresses the requirements of Exhibit 4B, which is incorporated into the Class Definition—a key portion of the Complaint.[9] Moreover, Exhibit 4B begins by noting that it does not apply to "Entities, Individuals or Claims not included within the Economic Class definition."[10] So, when the Claims Administrator interprets the Settlement Agreement to allow compensation "*without regard to whether such losses resulted . . . from a cause other than the Deepwater Horizon*

---

[7] Because the class definition can include those without allegations of causation sufficient to satisfy Article III, it cannot be certified under the test for Article III standing at the settlement class certification stage established in *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006). *Deepwater Horizon*, 739 F.3d at 822–26 (Garza, J., dissenting) (citing *Lujan*, 504 U.S. at 560). *See infra* Part II.

[8] *In re Deepwater Horizon*, 739 F.3d at 808 ("[T]he evidentiary standard to be applied by the Claims Administrator . . . is not a matter of Article III standing," but rather "a question of interpreting the Settlement Agreement and applying it to each individual claim . . . .").

[9] Section 1.3.1 of the Class Definition states: "The following are summaries of the Damage Categories, which are fully described in the attached Exhibits 1A-15."

[10] Footnote 1 of Exhibit 4B states: "This Causation Requirements for Business Economic Loss Claims does not apply to (1) Start-up Businesses; (ii) Failed Businesses; (iii) Entities, Individuals or Claims not included within the Economic Class definition; and (iv) Claims covered under the Seafood Program."

Case 2:10-md-02179-CJB-DPC Document 12927 Filed 05/20/14 Page 6 of 10
Case: 13-30095 Document: 00512636271 Page: 6 Date Filed: 05/19/2014

No. 13-30095

*oil spill*," its application is no longer limited to those within the class definition—that is, to those with injury "as a result of" the oil spill. To the contrary, claimants can participate "without regard" to the cause of their claimed injuries. This defies the Article III requirement there must be an injury "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560.

## II

The Claims Administrator's interpretation yields a settlement class that may include individuals and entities without any ability to allege or establish an injury fairly traceable to the oil spill. Whether this violates Article III standing turns on the "manner and degree of evidence required at [this] stage of the litigation." *Id.* at 561. The elements of Article III standing, including causation, "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, [which] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.* In *Lujan*, the Supreme Court identified three "stages of litigation" during which the standing elements must be supported: pleading, summary judgment, and trial. *Id. Lujan* does not identify the requisite standards for establishing standing during a Rule 23 class certification, and the Courts of Appeals have now adopted conflicting approaches on this important matter.[11]

In *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006), the district court certified a *settlement class* and approved a settlement agreement resolving claims arising from the defendant's allegedly fraudulent marketing of foreign currency options. In considering whether the certification satisfied Article III standing, the Second Circuit held that "no class may be certified that

---

[11] *See In re Deepwater Horizon*, 739 F.3d at 799–802 (describing "two analytical approaches" for evaluating Article III standing for the purposes of class certification under Rule 23).

6

No. 13-30095

contains members lacking Article III standing," and that Article III requires the class to "be defined in such a way that anyone within it would have standing." *Denney*, 443 F.3d at 264. *Denney* requires courts to ensure that the composition of the proposed class includes only those with claims that would satisfy the standing elements—injury, causation, and redressability.

In *Kohen v. Pacific Investment Management Co.*, 571 F.3d 672 (7th Cir. 2009), the Seventh Circuit adopted a different approach. The district court had certified a *pre-trial class* to pursue claims alleging the defendant-investment firm violated the Commodity Exchange Act by cornering a futures market for Treasury Notes. The Seventh Circuit evaluated Article III standing by analyzing the status of the named plaintiffs alone. *Id.* at 676. The *Kohen* test evaluates Article III standing for a pre-trial class certification by looking only at the status of the named plaintiffs.[12]

Here, the panel opinion did not adopt either of these approaches, holding that the settlement class certification satisfies Article III under either test. *See In re Deepwater Horizon*, 739 F.3d at 802. There is no dispute that the named plaintiffs have sufficiently alleged standing, and that the certification could pass muster under *Kohen*. However, because the Claims Administrator's interpretation expands the class beyond those with plausible allegations of causation, the certification fails the *Denney* test—the class now "contains members lacking Article III standing." *Denney*, 443 F.3d at 264. Because the relevant stage of litigation in this case is the certification of a settlement class, *Denney* provides the correct test.

There are sound reasons to evaluate Article III standing differently for pre-trial and settlement class certifications under Rule 23. Primarily, the

---

[12] Showing further division among the Circuits, in *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306-07 (3d Cir. 1998), the Third Circuit evaluated Article III standing for a settlement class by looking to the status of named plaintiffs alone.

7

Case 2:10-md-02179-CJB-DPC Document 12927 Filed 05/20/14 Page 8 of 10
Case: 13-30095 Document: 00512636271 Page: 8 Date Filed: 05/19/2014

No. 13-30095

settlement certification stage is more advanced in the life cycle of a class action than the pre-trial certification stage. When a settlement class is certified, all is resolved at the point of certification. However, in a pre-trial certification, the class must reach additional waypoints in the litigation—summary judgment, trial on the merits, or ultimately a settlement—to resolve the dispute. Accordingly, *Lujan*'s graduated approach for demonstrating the standing elements compels holding settlement class certifications to a higher standard than pre-trial certifications—the settlement certification stage has progressed further into the "successive stages of the litigation." *Lujan*, 504 U.S. at 561.

On its facts, *Denney* addresses Article III standing for a settlement class, whereas *Kohen* concerns a pre-trial class. Furthermore, the nature of the test adopted in each case reflects a distinction between these stages. At the pre-trial certification stage, *Kohen* focuses exclusively on the status of named plaintiffs, and explicitly assumes the standing elements will be held to greater scrutiny at subsequent stages of the litigation. *Kohen*, 571 F.3d at 677 ("If the case goes to trial, this plaintiff may fail to prove [Article III] injury."). But *Denney* checks compliance with Article III by looking to the entire composition of the proposed class. In this, *Denney* requires the certifying court to carefully scrutinize the class definition and project its potential makeup to determine whether it could contain members without injury fairly traceable to the defendant's conduct. It is entirely appropriate that the two tests have different focal points. This difference in focus shows judicial recognition that there are no additional opportunities to address standing after a settlement class is certified—settlement fully resolves the legal proceedings, leaving only administrative processing. The *Denney* approach appreciates that Article III

Case 2:10-md-02179-CJB-DPC Document 12927 Filed 05/20/14 Page 9 of 10
Case: 13-30095 Document: 00512636271 Page: 9 Date Filed: 05/19/2014

No. 13-30095

standing is a central component of a federal court's power and, accordingly, provides a more robust test for the conclusive settlement certification stage.[13]

Accordingly, determining whether this Settlement Agreement complies with the tenets of Article III standing required the panel to adopt the *Denney* approach. It did not do so. And, to the extent it purported to apply Denney in the alternative, it failed to evaluate the class definition as actually implemented pursuant to the Claims Administrator's interpretation. The en banc court has refused to correct these jurisdictional errors.

### III

The Claims Administrator and the District Court have established that Exhibit 4B provides the sole methodology for determining which claimants are eligible to recover. So long as the Settlement is interpreted to permit compensation "without regard" to the cause of a claimant's injuries, it is insufficient to ensure that all members of the proposed class have adequately alleged constitutional standing, a necessary component of our jurisdiction. *See Lujan*, 504 U.S. at 560 ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."). Causation has been entirely eliminated for a broad swath of Business Economic Loss claimants. The en banc court could have easily corrected this error by decertifying the offending segment of the Business Economic Loss class, or reversing the Claims Administrator's interpretation. However, it has eschewed both courses of action. We respectfully dissent.

---

[13] *Denney* and *Kohen* provided different tests for Article III standing under Rule 23. The conflict between these approaches can be patently resolved by applying them to different stages of a class action litigation—settlement class certification and pre-trial certification. However, no court has yet harmonized the cases in this way, and they remain in clear conflict.

# United States Court of Appeals
## FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE  
CLERK

TEL. 504-310-7700  
600 S. MAESTRI PLACE  
NEW ORLEANS, LA 70130

May 19, 2014

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 13-30095    In Re: Deepwater Horizon
                USDC No. 2:10-MD-2179
                USDC No. 2:10-CV-7777
                USDC No. 2:12-CV-970
                USDC No. 2:10-CV-2771
                USDC No. 2:12-CV-2953
                USDC No. 2:12-CV-964

Enclosed is an order entered in this case.

Sincerely,

LYLE W. CAYCE, Clerk

By: *Jamei R. Cheramie*
Jamei R. Cheramie, Deputy Clerk

Mr. N. Albert Bacharach Jr.
Mr. William W. Blevins
Mr. Robert C. Mike Brock
Mr. George Howard Brown
Ms. Elizabeth Joan Cabraser
Mr. Jeffrey Bossert Clark Sr.
Mr. Brent Wayne Coon
Mr. Timothy A. Duffy
Mr. Miguel Angel Estrada
Mr. Soren E. Gisleson
Mr. Richard Cartier Godfrey
Mr. Kevin Walter Grillo
Mr. Don Keller Haycraft
Mr. Stephen Jay Herman
Mr. Thomas George Hungar
Mr. Samuel Issacharoff
Mr. James Andrew Langan
Mr. Scott Payne Martin
Mr. Theodore B. Olson
Mr. John Jacob Pentz III
Mr. James Parkerson Roy
Mr. Stuart Cooper Yoes