# IN RE: DEEPWATER HORIZON LITIGATION
## MDL NO. 2179

| | |
|---|---|
| JAMES PARKERSON ROY | STEPHEN J. HERMAN |
| Domengeaux Wright Roy & Edwards, LLC | Herman, Herman & Katz, LLC |
| 556 Jefferson St., Suite 500 | 820 O'Keefe Ave. |
| Lafayette, LA 70501 | New Orleans, LA 70113 |
| E-Mail: jmr@wrightroy.com | E-Mail: Sherman@hhklawfirm.com |
| Telephone: (337) 233-3033 | Telephone: (504) 581-4892 |
| Fax: (337) 233-2796 | Fax: (504) 561-6024 |

May 14, 2014

*Via* E-Mail

The Honorable Sally Shushan
United States Magistrate Judge
500 Poydras Street, Room B345
New Orleans, Louisiana 70130
E-mail: Sally_Shushan@laed.uscourts.gov

Re: <u>Transition Claims</u>

Dear Judge Shushan,

On February 26, 2012, the Parties reached an agreement-in-principle on two key elements of what would ultimately become the Economic & Property Damages Class Action Settlement. After clearing these two hurdles, the Parties felt relatively confident that a settlement would be reached. A pressing question for both Parties therefore became the transition from BP's Gulf Coast Claims Facility (GCCF) to what would ultimately become the Court-Supervised Settlement Program.

Class Counsel insisted, and BP agreed, that the Class Member would be guaranteed to receive at least the current GCCF Offer, or whatever he or she would be entitled to under the new Settlement Agreement Frameworks, whichever was greater.

At the same time, the Parties were concerned about a potential back-lash from Class Members who had an offer and were anxious to be paid.

So, the Parties agreed that the claimant would be paid 60% of the final GCCF Offer immediately, while retaining the right to receive the greater of the remaining 40% of the GCCF Offer and/or additional compensation under the Class Settlement.

May 14, 2014
Page -2-

From BP's standpoint, the key issue was obtaining a release. Indeed, both the Transition Order and the ultimate Settlement Agreement expressly provide that "the claimant has a right to additionally recover from the Court Supervised Claims Program the greater of: the remaining 40% of the GCCF offer, or the class settlement payment minus any amount previously paid by the Transition Process, *in exchange for a release*."[1]

It was Class Counsel who wanted to ensure that claimants would have a reasonable opportunity to study the Settlement Agreement before prematurely executing a GCCF Release.[2]

The election to participate in the Settlement Program, or not, was a *transition* issue. It is memorialized in the Parties' agreed "Order Creating Transition Process" and Section 4.2.3.1 appears and is contained within the "Transition Claims Process" section of the Settlement Agreement.

Once the opt-out period ended, and Class Members who had not opted out were conclusively bound to the terms of the Economic & Property Damages Class Settlement Agreement, the Class Member would be guaranteed to get *"the greater of"* the remaining 40% on the GCCF Offer or what he or she might additionally be entitled to under the Compensation Frameworks set forth in the Settlement Agreement.[3]

There was never any discussion or agreement between the Parties about what would happen if a Class Member still had no Eligibility Determination from the Program in 2014.

---

[1] FIRST AMENDED ORDER CREATING TRANSITION PROCESS [Doc 5995] (March 8, 2012) ¶12(B) (emphasis supplied); *see also,* SETTLEMENT AGREEMENT, Section 4.2.3.1 ("in exchange for an Individual Release in the form attached hereto as Exhibit 26"); *see also, e.g.,* TRANSITION ORDER, ¶12(A) (allowing Opt-Outs to collect the remaining 40% "subject to executing a release").

[2] At the time this was decided, on Feb. 26, 2012, the settlement negotiations were still confidential. The existence of an Agreement-in-Principle would not be disclosed until March 2, 2012, and the specific terms and provisions of the Settlement Agreement would not be made publicly available until April 18, 2012.

[3] To the best of Class Counsel's knowledge and recollection, BP has never disputed, and does not now dispute, that BP agreed to this.

May 14, 2014
Page -3-

BP never suggested, and Class Counsel never agreed, that, in that situation, the Class Member would have to make a formal election to either get the remaining 40% or wait, even longer, to see what his or her ultimate Eligibility Determination(s) might be.

Indeed, this is contrary to the entire structure of the Settlement Program, which allows Claimants to collect on claims once they have been determined, while still retaining the right to seek additional amounts to which they would be owed under the Settlement Agreement. *See* SETTLEMENT AGREEMENT, Section 4.4.8 and Exhibit 26, ¶18.  ✓ this

Even putting aside BP's arguable unclean hands or other bad faith in delaying the determination of the claims, by suing the Claims Administrator, seeking to enjoin the Settlement Program, successfully enjoining BEL Claims, threatening to withhold administrative funding, and arguing that settlement approval be vacated or reversed on appeal, there is absolutely no reasonable basis, justification or other consideration in making Class Members wait for a formal Eligibility Determination before he or she can recover the remaining 40% of the GCCF Offer, which is indisputably the *least* that he or she is entitled to under the Settlement Agreement.

<u>The Resolution of Previous Disputes over the Language in Section 4.2.3.1 Took Into Account the Contextual and Textual History and Intent – in BP's Favor</u>

Section 4.2.3.1 provides that:

> If the claimant receiving the 60% payment is an Economic Class Member, the claimant has a right to additionally recover from the Settlement Program the greater of: (a) the remaining 40% of the GCCF offer, or (b) the Economic Class Settlement Payment minus any amount previously paid by the Transition Process, in either case in exchange for an Individual Release in the form attached hereto as Exhibit 26

BP currently suggests that the language in Section 4.2.3.1 be construed to require a formal election of either the remaining 40% on the GCCF Offer <u>or</u> the (total) Economic

Class Settlement Payment (for all Settlement Program Claims) minus the amounts previously paid, (and without regard to further rights or reservations under the Individual Release).

This construction of Section 4.2.3.1:

a. Renders "the greater of" language superfluous, because the Class Member could elect the lesser of. (In truth, the "greater of" is a substantive provision, which was intended and agreed by the Parties to make clear that Class Members who participated in the Settlement would be guaranteed to receive the greater of the two amounts; the election language, by contrast, was the procedure to be followed during the "Transition Claims Process");

b. Ignores the fact that "Economic Class Settlement Payment" is not a defined term, and could just as easily refer to the specific Payment that is analogous to the GCCF Offer, (as the Settlement Agreement expressly allows for multiple Payments on multiple different Claims);

c. Imports the word "total" which does not appear in the Settlement Agreement;

d. Imports the phrase "for all Settlement Program Claims" which does not appear in the Settlement Agreement; and,

e. Ignores the provisions of the "Individual Release in the form attached hereto as Exhibit 26" which expressly reserves to the Claimant the right to make additional claims and to receive other additional compensation under Paragraph 18.

During the Summer of 2012, some Class Members and their attorneys argued, along these lines, that the GCCF Offer should only be compared to the single "Payment" that would be due under the Class Settlement Agreement for the analogous Class Settlement Claim. Rather than pressing a strict textual interpretation, Class Counsel acknowledged that, (with the exception of VoO Charter and Vessel Damage Claims, discussed *infra*), the intent of the Parties was to provide the Class Member with the greater of the remaining 40% GCCF Offer and the total value of all Class Settlement Claims.

As to VoO Charter Compensation and/or Vessel Damage, it was not, however, Class Counsel's intent to factor in the value of those claims. The GCCF did not recognize or compensate either VoO Charter or Vessel Damage Claims, and those claims were expressly

May 14, 2014
Page -5-

reserved in the GCCF Release. Indeed, the Parties agreed that these Claims would be compensated under the Settlement Agreement even if the Claimant had previously executed a GCCF Release. *See* SETTLEMENT AGREEMENT, Section 2.2.6. Hence, it was always Class Counsel's understanding and intent that a Class Member should have been able to accept the remaining 40% on the GCCF Offer, and then also assert additional VoO Charter Compensation and/or Vessel Damage Claims.

BP, however, argued, and the Transition Coordinator agreed, that acceptance of the remaining 40% on the GCCF Offer (*in connection with the Transition Process*) would result in a waiver of any and all further Settlement Program Claims.

Strictly construed, Section 4.2.3.1 requires the use of the Exhibit 26 Individual Release. While the form of the document is generally the same, the Settlement Program modified the "40% Request" release by entering an override in the system which – despite the clear and express language of Paragraph 18(i) – prevents the Claimant from submitting and the Program from processing VoO Charter, Vessel Damage, and other additional Claims.

Now having reaped the benefit of this departure from strictly construed terms and provisions of the Settlement Agreement – not to mention a two-year delay (so far) on having to make these payments – BP seeks to switch positions, and now argue for the strictest construction of the election language, beyond the "Transition Claims Process", and beyond the Opt-Out and Settlement Approval periods, to compel a further delay that was not ever discussed, negotiated, contemplated, nor agreed upon by the Parties.

May 14, 2014
Page -6-

### BP's Construction Fails to Give Full Meaning and Effect to the "Greater Of"

If, as noted, it were intended that a Class Member were required to make a formal election between the remaining 40% of the GCCF Offer and the total Economic Class Settlement Compensation (minus any amount previously paid), it would render the "greater of" language superfluous.

The "greater of" language is the substantive, permanent, centerpiece of the agreement, which would guarantee that those Class Members who elected to participate in the Settlement Program would be entitled to the *greater of* the two amounts.

In the meantime, for those who might not formally enter into the Settlement Program, (*i.e.* during the "Transition Claims Process"), such Class Members would be able to make an election to simply take the remaining 40% in exchange for an Individual Release.

But there is no basis (nor was it ever discussed, contemplated nor agreed upon) to have Class Members who did formally participate in the Class Settlement to have to – in, say, 2014 – make a formal election to either accept the remaining 40% or wait, further, indefinitely, for the Eligibility Determinations.

Rather, he or she should be able to get the remaining 40%, to which he or she is inarguably entitled, and reserve his or her rights to pursue additional claims and/or compensation, consistent with Section 4.4.8 of the Settlement Agreement and Paragraph 18 of the "Individual Release in the form attached hereto as Exhibit 26."[4]

---

[4] SETTLEMENT AGREEMENT, Section 4.2.3.1.

May 14, 2014
Page -7-

### It Makes Perfect Sense to Treat the Remaining 40% on the GCCF Offer as a Separate and Distinct Settlement Program "Claim"

BP seems to argue that the remaining 40% on a GCCF Offer should be treated as *part of* the analogous Settlement Program Claim(s). BP contends, for example, that the remaining 40% can be treated as part of a "BEL Claim" which BP contends should be enjoined, (even though BP's GCCF made the GCCF Offer, unilaterally, without regard to the Exhibit 4B and 4C criteria that form the basis of the injunctions on BEL Claims); and/or that the GCCF Offer is effectively part of a single IEL or Seafood Claim, for example, the release of which would not reserve an "additional Claim" under Paragraph 18(i) of the Release.

[handwritten margin note: not a BEL claim]

This, however, is inconsistent with both the previous positions that were taken by BP and the nature of the GCCF as opposed to the Settlement Program.

Putting the VoO Charter and Vessel Damage issues aside, the GCCF Offer was an *in globo* offer, on all claims, in exchange for a full and final release. The GCCF (at least as we understand it) did not distinguish between and among the various different Claim Categories like the Settlement Agreement does. (And, as noted, the Settlement Agreement specifically contemplates and agrees that Claimants will be able to be paid on multiple different claims, at different times, as preserved in the release.) BP, as noted, during the Transition Process, successfully opposed arguments and attempts by some Class Members to limit the GCCF Offer to an analogous Settlement Program Claim; rather, BP argued that the "greater of" would be made on a total compensation basis – *i.e.* the GCCF Offer versus Total Compensation from *all* Claims (including VoO Charter and Vessel Damage Claims).

In addition, it is inconsistent with the way that the Claims Administrator has treated Settlement Program Claims. The Program, in this regard, allows multiple different "Claims"

May 14, 2014
Page -8-

within a single Claims Category to be processed, released, and paid separately, as long as they fall within Section 4.4.8's six-month window. Indeed, the Program *required* Claimants to file multiple separate Seafood Program Claims, broken up by not only Catch Type, but also by Vessel, by Owner versus Captain, etc. Multi-Facility Claims are also treated as separate "Claims" for Section 4.4.8 and Individual Release purposes. Nor is there anything within the Settlement Agreement or existing policies that prevents a single Claimant from asserting multiple BEL, or multiple IEL, or multiple Seafood, or other Claims.

Indeed, with respect to the Individual Releases that have been executed in exchange for a 40% payment, the Settlement Program has inserted "40% Request" as the "*Claims Type*" in order "to distinguish these requests from other submitted claims that have progressed to an Eligibility Notice."[5]

It makes perfect sense, therefore, to treat the remaining 40% as a separate and distinct "claim" under the Settlement Program, which can be paid and released without prejudice to additional compensation to which the Class Member may be entitled from additional Settlement Program Claims.

Additional Noteworthy Points

In an e-mail from BP Counsel to the Transition Coordinator dated May 31, 2012, BP comments that:

> ...we propose the following treatment of the transition claims with outstanding 60% offers as of June 4th: (1) these transition claimants will be offered 100% of their transition awards in exchange for executing releases; or, (2) these transition claimants can enter the settlement program and, if they are class members, these transition claimants will be entitled to receive the greater of 100% of the transition award or the settlement payment determined by the Settlement Program in exchange for executing

---

[5] E-MAIL FROM DAVID SMITH TO STEVE HERMAN, ET AL (May 12, 2014).

a release. This proposed procedure is consistent with the Transition Order because it affords the transition claimants with the opportunity to receive the greater of a transition award determined by the Transition Process or settlement payment determined by the Settlement Program. Furthermore, ***there is no basis to withhold 40% of the transition award as of June 4th given that the Transition Process will be terminated and the Settlement Program will have commenced operations.***[6]

While BP Counsel was not addressing the precise issue before the Court, he implicitly acknowledges that the 40% was primarily intended to be withheld during the Transition Process, and that the primary consideration for the greater-of allowance, from BP's point of view, was not a timing or delay issue, but rather, "in exchange for executing a release."

Such an intent regarding the temporary election period is also reflected in the e-mail exchange between the Transition Coordinator and Class Counsel. On June 5, 2012, Class Counsel commented that: "It was my understanding from our conversation with Judge Shushan last week that, if someone decided at this point that he or she simply wanted to accept the 40%, and was willing to execute a Release, that *he or she could execute a Release and get the other 40% in fairly short order."* In response, the Transition Coordinator communicated with BP Counsel on June 6th that: "we will proceed with providing the old GCCF release for someone who asks for 40% of their Transition Offer: (1) if they are an opt-out; (2) a non-class member; or (3) *a class member who does not go into the Settlement Program but asks for the 40% now.*"[7]

The "election" that was contemplated was the decision on whether to participate in the Settlement Program, and the delay that was contemplated was a delay from "now" until the Settlement was approved and underway.[8] There was no intent or agreement that Class

---

[6] E-MAIL FROM KEITH MOSKAWITZ TO LYNN GREER, ET AL (May 31, 2012) (emphasis supplied).

[7] E-MAILS BETWEEN LYNN GREER, BP COUNSEL AND CLASS COUNSEL (June 5-6, 2012) (emphasis supplied).

[8] BP Counsel have recently referred to the 40% election as a "Quick Pay". First of all, the "Quick Pay" GCCF Offers were something else entirely, which (despite Class Counsel's requests) BP *refused* to treat as a Final GCCF Offer under Section 4.2.3.1. Further, while this election may have been analogous to a "quick pay" in the Summer of 2012, there is nothing "quick" about it, two years later.

May 14, 2014
Page -10-

Members who went into the Settlement Program would make an "election" in May of 2014 to get their 40% in May of 2014, yet forfeit their rights to additional claims or compensation, in order to avoid further delays. Rather, once the Opt-Out Date passed, and people were bound to the Settlement Program, the Settlement Agreement provided Claimants with – in BP Counsel's own words – "the greater of 100% of the transition award or the settlement payment determined by the Settlement Program in exchange for executing a release."

<u>Particularly in Light of BP's Conduct with Regard to the Settlement, BP Should Not Reap Further Benefit, and Claimants Should Not Be Further Prejudiced, by Additional Delay</u>

BP has already been the beneficiary of a favorable substantive interpretation of Section 4.2.3.1. BP has also been the beneficiary of a two-year delay. Despite BP's express consent to Sections 16.1 and 17.1 of the Settlement Agreement, BP has significantly (and, in many ways, we would suggest, inappropriately) delayed the processing of Claims. Now, after obtaining these benefits, BP seeks to compel an overly strict construction of Section 4.2.3.1, to pressure Claimants to forfeit the rights and interests under the Settlement Agreement that were promised to them over two years ago. For these reasons, Class Members should be permitted to execute the Exhibit 26 Individual Release; receive the remaining 40% on their GCCF or Transition Offers; and continue to pursue any other rights, claims or compensation to which they are entitled under the Class Settlement Agreement.

Respectfully submitted,

STEPHEN J. HERMAN
JAMES PARKERSON ROY
*Co-Lead Class Counsel*

cc: Patrick A. Juneau, Claims Administrator
    Lynn Greer, Transition Coordinator
    Counsel for BP