# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Jeffrey Bossert Clark
To Call Writer Directly:
(202) 879-5960
jeffrey.clark@kirkland.com

655 Fifteenth Street, N.W.
Washington, D.C. 20005

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

May 14, 2014

**Via E-Mail**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court, Eastern District of Louisiana
500 Poydras Street, Room B345
New Orleans, LA 70130

      Re:    GCCF Transition Claims and 40% Remainder Payments

Dear Judge Shushan:

In response to your May 7, 2014 request, BP hereby submits its position on the processing and payment of Gulf Coast Claims Facility ("GCCF") 40% remainder amounts. In sum, the text of the Settlement Agreement is clear, and it forecloses the payment of 40% remainders to any claimant that has submitted a Court-Supervised Settlement Program ("CSSP") claim until that claims process has run its course — unless such a claimant now opts to sign a release, leading to the termination of claims processing. Claimants were given a clear election between taking the 40% remainder in full satisfaction of all of their claims or entering the CSSP process in an attempt to receive more for their claims than the 40%. Moreover, since the Settlement Agreement provision in question is unambiguous, it is unnecessary and would be improper to consult parol evidence to vary the writing. Lastly, it is clear that the arguments proposed by Class Counsel are not only inconsistent with the Settlement Agreement, they have also only been recently assembled based on policy rationales and assertions of changed

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 14, 2014
Page 2

circumstances. Such arguments cannot justify rewriting the terms of the Settlement Agreement.

**I.** ***The Plain Text of the Settlement Agreement Precludes Remainder Payments to GCCF Claimants Prior to the Completion of the CSSP Claims Process.***

    **1.**    The Settlement Agreement provision primarily at issue here is Section 4.2.3.1:

> If a non-expired GCCF offer was pending as of March 8, 2012, and if the claimant elects to accept the offer, then the Transition Process will pay 60% of the offer on an interim basis without requiring a release. If the claimant receiving the 60% payment is an Economic Class Member, the claimant has a right to additionally recover from the Settlement Program the greater of: (a) the remaining 40% of the GCCF offer, or (b) the Economic Class Settlement Payment minus any amount previously paid by the Transition Process, in either case in exchange for an Individual Release in the form attached hereto as Exhibit 26, which shall contain terms substantially similar to the Release described in Section 10.

This plain text gave former GCCF claimants a straightforward choice between two options: (A) sign a release and take a 40% remainder payment without filing a claim with the CSSP; or (B) file a claim with the CSSP to see if they could achieve a more favorable outcome. If a claimant chose the second option (what we call "Path B"), then the ultimate payment will be the greater of (i) the 40% GCCF remainder, or (ii) the CSSP payment minus the 60% transition payment that has already been paid.

    **2.**    The purpose of Section 4.2.3.1 was to give claimants a "quick pay"-like option, as your Honor correctly recalled at the April 24 telephone hearing. Claimants wanting to avoid the attendant delay that comes with additional claims processing could simply sign a release, terminate their claims, and receive the rest of their full GCCF payment. Path A claimants thus chose prompt payment over the chance of a higher payout, whereas Path B claimants sought higher payouts but at the price of enduring the inherent delay involved in the CSSP process.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 14, 2014
Page 3

3. This is the only reading of the provision that creates a true election of remedies — take the 40% now or enter into the CSSP process in the hopes of getting a higher payment. If Path B allowed claimants to get the 40% payment quickly *and* go through the CSSP claims process, why would any claimant have ever picked Path A? Path B would then offer both the immediacy of the 40% remainder payment, as well as the chance for a better payout in the CSSP process. Reinterpreting 4.2.3.1 to allow Path B claimants to obtain 40% payments now not only contradicts the plain text and self-evident purpose of the provision, it would also be manifestly unfair to the claimants who had already chosen Path A — looking back, they would have signed away their ability to seek a higher claim payment and in effect gotten nothing in return.

4. Section 4.2.3.1 requires the completion of the claims process before each Path B claimant can recover his or her payment. The Path B claimant's final payment is in part based on the calculation of "the Economic Class *Settlement Payment* minus any amount previously paid by the Transition Process . . . ." Section 4.2.3.1 (emphasis added). This is, of course, not a sum certain ascertainable in advance of the conclusion of the claims process or something that can be defined in isolation from that process. Indeed, Section 38.134 defines a "Settlement Payment" as "the Total Compensation Amount to be paid to a Claimant for any Claim made pursuant to the terms of the Agreement, including the Frameworks in the exhibits." Of course, it goes without saying that the clause "pursuant to the terms of the Agreement" means *all* of the applicable terms of the Agreement defining the ultimate claims award, including claims formulae and the processes for claims submission, documentary review, and quality checking, etc.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 14, 2014
Page 4

5. There is also a basic functional problem with Class Counsel's proposal — if a Path B claimant was now permitted to sign a release and collect the 40% remainder payment, that claimant would then be barred from recovering any additional payments from the Settlement Program. Your Honor again rightly recognized this fact at the April 24th telephonic hearing. Section 2 of the Individual Release provides that the only further payments a claimant can receive from the CSSP once the release is signed are on Section 4.4.8 additional claims (*e.g.*, a claimant signing a release to be paid on a Seafood claim later files an IEL claim). There is no exception in Section 2 of the Individual Release for recovering additional monies under Section 4.2.3.1 of the Agreement. Most importantly, this reinforces that the intention here concerning Transition Claimants was that such Path B claimants were supposed to sign releases only after the claims process had been fully finalized.

## II. *Parol Evidence Does Not Need to Be Consulted Here Because Section 4.2.3.1 Is Unambiguous; Nevertheless, Parol Evidence Supports the Plain-Text Interpretation.*

6. The plain text of Section 4.2.3.1 is not only controlling, it is unambiguous. Thus the interpretation of Section 4.2.3.1 neither requires nor permits the use of parol evidence. Fifth Circuit precedent is clear on this issue — "courts interpreting contracts may resort to parol evidence only when the contract is ambiguous." *Dameware Dev., L.L.C. v. Am. Gen. Life Ins. Co.*, 688 F.3d 203, 208 n.5 (5th Cir. 2012); *see also McLane Foodservice, Inc. v. Table Rock Restaurants, L.L.C.*, 736 F.3d 375, 378 (5th Cir. 2013) ("If the contract is ambiguous, courts may consider parol evidence for the purpose of ascertaining the parties' intent.").

7. Yet even if parol evidence is consulted, the history of how the parties interpreted

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 14, 2014
Page 5

the provision at issue here is entirely consistent with a plain-text reading of Section 4.2.3.1. For instance, a June 5, 2012 email from Lynn Greer to Annika Martin explained that under Section 4.2.3.1, "[b]ecause *there is no way to know the greater of the remaining 40% or the amount a claimant is entitled to under the new Settlement Program <u>unless the claimant goes through the new Settlement Program</u>*, we had interpreted that section to mean that an eligible Class Member needs to go into the Program." Ex. 1 (previously brought to your Honor's attention in Steve Herman's April 24, 2012 email) (emphasis added). Thus it was made clear at the time that claimants who made the Path B election could not get the 40% payment until the claims process had run its course.[1] Moreover, after Lynn Greer offered up this basic textual interpretation, she closed by soliciting disagreement from the parties, noting that "[i]f this is not correct, then we will need to seek clarification from the Parties." *See* Ex. 1. We have not seen contemporaneous evidence that any disagreement emerged from Class Counsel, underscoring that their current argument that Path B claimants can receive 40% payouts now *and still enter the CSSP* to seek to receive more than the 40% is a newfound interpretation of the Agreement first devised by Class Counsel only within the last few months.

8. Additionally, the final version of the June 2012 letter to GCCF Transition Offer Claimants contained the same interpretation. The letter states that Path B claimants will "receive

---

[1] Class Counsel has argued that a May 2012 Email from Keith Moskowitz to Lynn Greer provides evidence to the contrary, but the quotation used (as Class Counsel concedes) is taken out of context. The point of Mr. Moskowitz's statement was that when the Transition Process terminated, GCCF claimants could take 100% of their GCCF offer, sign a release, and be done. This conclusion is entirely consistent with the current position of both the CSSP and BP. *See also* Ex. 4, pdf page 7 of 9 (Email from J. Clark to Magistrate Judge Shushan).

**KIRKLAND & ELLIS LLP**

The Honorable Sally Shushan
May 14, 2014
Page 6

payment *after the Settlement Program's review of your claim is complete* and you execute a Release." *See* Ex. 2 (CSSP June 2012 letter to GCCF Transition Claimants) (emphasis added). Class Counsel had the chance to offer input into the language in this letter and yet signed off on it back in 2012. This makes it abundantly clear that Class Counsel's current argument is at odds with the Parties' original understanding of the provision, and thus is of new vintage.

### III. *Class Counsel's Interpretation of 4.2.3.1 Is Entirely New, and Based on Mere Policy Arguments Rather Than on the Text of the Provision.*

9.  Class Counsel's new interpretation of 4.2.3.1 is based on policy, not the text of the contract. That is, Class Counsel seems to be arguing that no Path B plaintiff could have anticipated that the BEL aspect of the claims process would be enjoined and thus that the claims process could have dragged out this long. Hence, Class Counsel argues, the circumstances have changed, and out of a sense of "fairness," the Path B claimants should now be enabled to obtain the 40% payment right away while also pursuing CSSP claims. Mr. Herman admitted as much during the April 24 telephonic hearing with your Honor, as well as in an email that same evening. *See* Ex. 3 (April 24 email from S. Herman to Judge Shushan, L. Greer, and J. Clark) (stating that "[t]he administrative decision that Class Counsel *may have agreed seemed reasonable in June 2012* does not make sense (particularly given BP's post-settlement conduct) two years later") (emphasis added). Indeed, during the April 24 teleconference, Mr. Herman went further and indicated that the real impetus for his new argument was pressure he experienced during a group meeting with non-Class Counsel lawyers, who urged Mr. Herman to advocate the changed-circumstances approach because they were unhappy with the BEL stay.

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 14, 2014
Page 7

**10.** There are several other problems with Class Counsel's approach. *First*, the Settlement Agreement specifically contemplated that the claims process could go past April 2014. *See* Section 4.4.4. One of the reasons for this is that the Parties knew that disputes could arise about the meaning of the Settlement Agreement (and its validity as a result of those disagreements). And, of course, they also knew that appeals always take a fair amount of time to resolve.

**11.** *Second*, Class Counsel's approach is not the way that this Settlement Agreement or any contract should be read or interpreted. The purpose of contracts is to provide stability and to govern a wide array of future circumstances (seen and unforeseen) according to their text. This is especially important here where the class is so large and varied. There are narrow exceptions that let courts make adjustments for changed circumstances under doctrines such as impossibility, but Class Counsel has not invoked this (or any similar) doctrine and it would be too late to do so now. Nor could Class Counsel successfully invoke impossibility since the interpretation BP and the CSSP share has been, is, and will continue to be fully administrable. Nothing about that interpretation has become "impossible" because of new or supposedly unanticipated developments.

**12.** *Third*, this is the exact sort of consequence that the Path B claimants agreed to bear when they decided to forego the quick 40% GCCF remainder payment in return for a chance at a higher payout. By choosing Path B, the claimants effectively opted to subject themselves to the inherent delay in CSSP claims processing as well as to a newfound level of

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 14, 2014
Page 8

scrutiny of their claims. The CSSP applies the highly detailed provisions of a 1,000+-page Agreement whereas the GCCF protocols were much shorter and simpler by comparison. To allow Class Counsel now to try to use supposedly unanticipated changes in circumstance as a reason to rewrite Section 4.2.3.1 would turn that provision on its head. Moreover, it would amount to such a significant alteration of the Agreement that re-noticing the Agreement under Federal Rule of Civil Procedure 23 would be required to carry it out. No claimant contemplating the Path A vs. Path B election, prior to the close of the November 1, 2012 opt-out period, could have anticipated that two years later the Agreement would be effectively rewritten such that only the Path B option made any rational sense, leaving Path A in the dust as a wholly inferior option.

13.     Very recently, Mr. Herman sent several e-mails to the CSSP and BP's counsel suggesting that Class Counsel intends to argue that the CSSP has somehow proceeded improperly by not allowing claimants selecting the 40% "quick pay" or Path A option to also file additional claims in the program under Section 4.4.8. *See* Ex. 4 ("So it's the same Release, but Paragraph 18(i) is effectively nullified/overridden/disregarded (?)"); *see also* Individual Release ¶ 18(i) (cross-referencing Section 4.4.8 of the Settlement Agreement). This new argument that Class Counsel has also only recently begun to advance should be rejected for numerous reasons.

14.     *First*, Section 4.4.8 reserves to a claimant *entering the CSSP* for the purpose of filing one sort of claim under the Settlement Agreement the ability to file other types of claims within 6 months from the date of payment on their first claim (except as to claims in the Seafood Program, where all claims had to have been filed within 30 days of final approval of the

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 14, 2014
Page 9

Settlement by the District Court). *See also* Section 5.11.9 (containing the Seafood Program timing exception); http://www.deepwaterhorizonsettlements.com/KeyDates.aspx (noting that the seafood claims deadline was January 22, 2013). Once again, however, claimants that have chosen or that in future choose to take the 40% "quick pay" option are not entering the program. Hence, they simply have no additional CSSP claims to pursue under any of its programs and they accordingly possess no reserved rights to file additional claims under Section 4.4.8.

     **15.**    *Second*, the CSSP agrees with BP's interpretation above, as it made clear in an e-mail sent on May 12, 2014 (Ex. 4) in response to questions posed by Steve Herman:

> [W]hen we accept a submitted 40% Release ... we place a code on that claimant to: (1) close any submitted DWH claims that are in process or pending review; and (2) prohibit the submission of any new DWH claim forms through the DWH portal. Claimants who return an Exhibit 26 Release that triggers payment for any claim type other than "40% Release" receive a code that allows them to submit additional claims to the program for 180 days as prescribed by Section 4.4.8 of the Settlement Agreement.

     **16.**    *Third*, the argument Class Counsel implicitly mounts in Exhibit 4 runs contrary to the purpose of the "quick pay" option in Section 4.2.3.1. Nothing in the textual interpretation of Section 4.2.3.1 that BP urges or the way in which the CSSP has proceeded here deprives Transition Claimants of any rights. They are free to enter the Program and in doing so retain their rights to file any form of claim the Settlement Agreement permits. But what claimants are not free to do is collect the 40% remainder under the "quick pay"-like option and then try to argue — after they have signed a release — that their rights are unchanged.

     **17.**    *Fourth*, as noted above, the CSSP (in consultation with the parties) opted to

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
May 14, 2014
Page 10

proceed in Path A situations by entering a special code in the internal processing records of such transition claimants, instead of by drafting a different release for use by these claimants that selected that "quick pay" option. To the extent that Class Counsel argues that this CSSP decision is in error or that it somehow sheds light on how to interpret the Agreement, Class Counsel are wrong. Section 4.2.3.1 contemplates that a tailored release could have been designed concerning transition claimants (reflecting that they are not identically situated to non-transition claimants). *See* Section 4.2.3.1 (referring only to "an Individual Release in the form attached hereto as Exhibit 26, which shall contain terms ***substantially similar to*** the Release described in Section 10") (emphasis added). Here, the CSSP opted to capture the difference between Path A vs. Path B claimants by means of embedding a special internal processing code into the files of the Path A quick-pay group. *See* Ex. 4. The CSSP could, to the very same effect, have crafted a slightly different release. But the fact that the CSSP chose to proceed via internal coding instead of by working with the parties to craft a different release is a distinction without a difference — and one Class Counsel has never challenged until recently.

### CONCLUSION

For all of the foregoing reasons, we respectfully request that your Honor reject any attempts by Class Counsel to alter or rewrite how Section 4.2.3.1 is written or being applied in practice by the CSSP to date.

Respectfully submitted,

/s/ Jeffrey Bossert Clark

enc.