# Exhibit B

E-SERVICE
55450667
May 14 2014
08:16PM
File & ServeXpress™

UNITED STATES DISTRICT OF COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : | MDL No. 2179 |
| | : | SECTION: J |
| This Document Relates To: 10-4536 | : | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |
| ………………………………………………... | : | |

**DEFENDANTS' 30(b)(6) DEPOSITION NOTICE**
**OF THE UNITED STATES IN THE PENALTY PHASE**

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and Pre-Trial Order No. 17 (as supplemented and amended by Pre-Trial Order No. 27), the United States shall designate and produce one or more officers, managers, agents, employees, or other representatives of the United States to testify on its behalf as to the areas of inquiry described below. The times and locations of the depositions will be scheduled in conjunction with the designees' fact depositions in their individual capacities, where applicable, or otherwise as may be scheduled by the Court and the parties. The depositions will take place before a notary public or some other person authorized to administer oaths and will be recorded by audio, stenographic, and videographic means.

**DEFINITIONS**

1. "*Deepwater Horizon* Incident" or "Incident," whether or not capitalized, shall mean the events leading to (i) the loss of life and injuries on the *Deepwater Horizon* rig on or about April 20, 2010, and (ii) the eventual sinking of the rig on April 22, 2010, including the blowout, explosions, and fire.

2. "*Deepwater Horizon* Oil Spill," the "Oil Spill," or the "Spill," whether or not capitalized, means the discharge of hydrocarbons that occurred in connection with the *Deepwater Horizon* Incident.

3. "Dispersants," whether or not capitalized, shall mean (i) dispersants, (ii) dispersant constituents, (iii) derivatives of any of the foregoing from biological, chemical, photochemical, or other processes, or (iv) any aggregation, mixture, or combination of any of the foregoing with

any other material including without limitation organic matter, inorganic matter, sediments, biological exudates, sand, and water.

4. "Environment" "Environmental," or "Environmental Resources," whether or not capitalized, shall refer to (i) air, surface, and subsurface water, beaches, land and sediments, and the organic and inorganic constituents of the foregoing, (ii) Organisms (as defined below), (iii) natural resources, (iv) ecosystems, (v) niches and other habitats, and (vi) combinations or assemblages of any of the foregoing, in each case in or near the Gulf of Mexico or in or near any other location that may have been affected by Oil-Related Materials (as defined below) regardless whether in a natural state or modified by human activity.

5. "Non-operating investor or party" or "NOI" means any person or entity that holds an ownership interest in a lease or facility related to offshore gas or oil exploration, drilling, or production operations but is not the designated operator for purposes of activities under that lease or on that facility.

6. "Oil-Related Materials" shall mean any of the following from the *Deepwater Horizon* Oil Spill or response thereto: (i) oil, (ii) polycyclic aromatic hydrocarbons ("PAHs"), (iii) hydrocarbons, (iv) other oil or gas constituents, and (v) well drilling and closure materials, including without limitation drilling muds and fluids and materials injected into the well-head. Oil-Related Materials also shall include (i) derivatives of any of the foregoing from biological, chemical, photochemical, burning, or other processes, (ii) any aggregation, mixture, or combination of any of the foregoing with any other material including without limitation organic matter, inorganic matter, sediments, biological exudates, sand, and water; or (iii) any combination of the foregoing.

7. "Organisms" shall refer to any and all members of the six kingdoms of life including animals, plants, fungi, protists, archaea, and bacteria.

8. "Response Activities" or the "Response," whether or not capitalized, shall mean any and all activities performed to respond to, or otherwise mitigate, minimize, or prevent any environmental, human health, economic, or other effects of, the *Deepwater Horizon* Spill.

9. "Unified Command" shall mean the structure, organization, and team established to oversee and manage the response to the *Deepwater Horizon* Spill following the Incident.

10. "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities, any employees, agents or assigns of these departments, agencies, and instrumentalities, and any person who possesses information or documents within the custody and control of these departments, agencies, and instrumentalities.

11. "Wildlife" shall mean all non-domesticated vertebrate animals including without limitation birds, mammals, amphibians, and reptiles, but not including fish.

12. "You," "your," and "yours," whether or not capitalized, shall mean the United States.

## AREAS OF INQUIRY

1. Excluding any non-public analysis conducted as part of the *Deepwater Horizon* Natural Resource Damages Assessment ("NRDA"), your knowledge of, role, involvement, and efforts in determining the nature and extent of any environmental impacts from the *Deepwater Horizon* Spill, including any environmental resources as to which You contend there has been no or limited recovery to date, and any associated data, analyses, or determination of such impacts.

2. Your knowledge of the nature, extent, and degree of effectiveness of the efforts to respond to, or otherwise mitigate, minimize, or prevent any environmental, economic, or other effects of, the *Deepwater Horizon* Spill, including but not limited to:

   a. any non-NRDA analyses, studies, or assessments of the effectiveness or success of the Response Activities (including but not limited to skimming; booming; dispersant application; controlled *in situ* burning; shoreline monitoring, assessment, and cleanup; environmental rehabilitation or restoration efforts; and other economic mitigation efforts) in mitigating or minimizing the actual or potential effects of the Spill;

   b. any response or cleanup activities that were not conducted at the direction and under the oversight of the Unified Command;

   c. any decisions or actions (or inactions) by the Unified Command, BPXP, or other agency or entity that limited, impeded, delayed, or reduced the effectiveness of efforts to respond to, or otherwise mitigate, minimize, or prevent any environmental, economic, or other effects of, the *Deepwater Horizon* Spill; and

   d. any contention that BPXP or any other entity did not effectively respond to, or otherwise mitigate, minimize, or prevent any actual or potential environmental, economic, or other effects of the Spill, and the bases for any such contention.

3. Your knowledge of and role in dispersant operations during the Response, including the selection, approval, use, limitations on use, safety, effectiveness, and effects of dispersants and dispersant constituents, including Corexit 9500 and/or Corexit 9527, and BPXP's role and involvement in those dispersant operations.

4. Your knowledge of and role, in the collection, observation, and rehabilitation of birds, turtles, mammals, reptiles, and other Wildlife during the Response, including associated data, and BPXP's role and involvement in such collection, observation, and rehabilitation.

5. Excluding any non-public analysis conducted as part of the *Deepwater Horizon* NRDA, your knowledge of shoreline impacts from the *Deepwater Horizon* Spill and subsequent recovery, including the nature, extent, duration, monitoring, and cleanup of shoreline oiling;

efforts to mitigate impacts to the shoreline during the Response and the effectiveness of those efforts; and associated data and analyses.

6. Your knowledge of, role, and involvement in the operation of freshwater diversion structures on the Mississippi River in 2010, including communications and/or analyses regarding (i) plans and the decision(s) to operate such freshwater diversion structures and (ii) any anticipated effects of those operations on water, sediment, and/or organisms.

7. Your knowledge of the amount of oil and any analysis of the amount of Oil-Related Materials that You contend was contained, collected, dispersed, burned, removed, or cleaned up in connection with Response Activities and/or any natural processes, including but not limited to the amounts attributable to each process (for example, through the use of skimming, boom, dispersants, *in situ* burning, shoreline cleanup, and natural processes), and the preparation and publication of the "Oil Budget Calculator, Deepwater Horizon, Technical Documentation," and its appendices, dated November 2010.

8. Your knowledge of the facts in and the preparation and publication of "BP *Deepwater Horizon* Oil Spill: Incident Specific Preparedness Review (ISPR);" the "On Scene Coordinator Report for the *Deepwater Horizon* Oil Spill;" and the reports and other work of the Operational Science Advisory Team, including but not limited to the "Summary Report for Sub-Sea and Sub-Surface Oil and Dispersant Detection: Sampling and Monitoring" (OSAT-1 Report), the "Summary Report for Fate and Effects of Remnant Oil in the Beach Environment" (OSAT-2 Report), and the "Investigation of Recurring Residual Oil in Discrete Shoreline Areas in the Eastern Area of Responsibility" (OSAT-3 Report), including the findings and conclusions of such reports.

9. Your knowledge of, role, involvement, and efforts in determining the nature and extent of any economic impacts of the *Deepwater Horizon* Spill and subsequent economic recovery, including BPXP's efforts to mitigate or minimize such impacts, and any associated data, analyses, or determination of such impacts.

10. Any policies or guidance of the federal government regarding:

   a. issuance of notices of violation, non-compliance, or incidents against non-operating investors or parties (collectively "NOIs") for violations of federal law applicable to leasing and operations activities on the outer Continental Shelf;

   b. enforcement, calculation, and application of administrative or civil penalties against NOIs for violations of federal law applicable to leasing and operations activities on the outer Continental Shelf;

   c. any notices actually issued to and enforcement actions actually taken against NOIs for violations of federal law applicable to leasing and operations activities on the outer Continental Shelf; and

4

        d. any settlements, consent decrees, consent orders, administrative orders or other court orders or judgments related to any notices or enforcement actions identified in response to (c).

11. Any policies, guidance, fair market value procedures, resource evaluations, modeling, or analyses conducted regarding leasing of oil and gas by the United States on the outer Continental Shelf, the Gulf of Mexico, or the Macondo Prospect (Mississippi Canyon Block 252 in particular), including without limitation lease sales, bids on leases, surety bonds, bonuses, royalties and royalty relief, rental payments, or other monetary payments owed to the United States; revenue sharing with the States; and energy security, economic, or other benefits to the United States, any State, or local region.

Dated:  May 14, 2014

Respectfully submitted,

 /s/ J. Andrew Langan
Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Don K. Haycraft (Bar # 14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP Exploration & Production Inc.*

and

BINGHAM McCUTCHEN LLP
/s/ James J. Dragna
James J. Dragna
jim.dragna@bingham.com
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
Thomas Lotterman
tom.lotterman@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

*Attorneys for Anadarko Petroleum Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 on this 14th day of May, 2014.

                                                  /s/ Don K. Haycraft
                                                  Don K. Haycraft