

**U.S. Department of Justice**
Environment and Natural Resources Division
Environmental Enforcement Section

90-5-1-1-10026

*Steven O'Rourke*                                                                 *Telephone (202) 514-2779*
*U.S. Mail: P.O. Box 7611, Washington, DC 20044-7611*         *Facsimile (202) 514-2583*
*Overnight Mail: 601 D Street N.W., Washington, DC, 20004*
*E-mail: steve.o'rourke@usdoj.gov*

May 27, 2014

<u>Via E-Mail</u>
Honorable Sally Shushan
United States Magistrate Judge
Eastern District of Louisiana

   Re:   *US v. BP & APC*, 10-4536 Penalty Phase: Fact Deposition Issues

Your Honor:

   The United States writes to clarify two issues raised by the Court's Order of May 23, 2014 and seeks relief from the Court in accordance with that Order.

**I.   BP has not shown good cause to add Mr. Bray as a "may call" witness.**

   In its letter of May 22, 2014, BPXP sought to replace the depositions of Denise Robertson and Brenda Pennington with that of Special Counsel Steven Bray. In its Order of May 23, 2014, recognizing that the U.S. objected to the substitution of Bray for Pennington and Robertson, the Court instructed the United States to choose a single deponent between Robertson and Pennington, but did not expressly address the addition of Mr. Bray as a witness. BPXP has now informed the United States that it intends to add Mr. Bray as a "may call" witness and present him for deposition. May 23, 2014 Email from Langan. The United States does not believe that BPXP has demonstrated good cause for seeking to add Mr. Bray as a witness at this late date, given the cumulativeness of his testimony and the burden to the parties and Court.

   According to the Court's Order Regarding Preparation for Discovery in the Penalty Phase, the parties were required to provide their initial disclosures to each other by March 10, 2014. (Rec. Doc. 12392 at 6). Subsequently, under the Court's Order Regarding the Penalty Phase Schedule, the parties were required to amend their Rule 26 disclosures on April 4, 2014, meet and confer on fact witnesses May 5-May 9, and submit a joint final schedule for depositions on May 12, 2014. (Rec. Doc. 12,688). Now, after all of these deadlines have passed, BPXP seeks to add a new witness, but has not offered any demonstration of "good cause" required to amend the scheduling order under Rule 16(b)(4).

   Ironically, BP has done the opposite of showing good cause, by itself contending that Mr. Bray is cumulative of other witnesses that were disclosed in accordance with Court Ordered deadlines. BPXP has now sought to preclude the deposition of multiple fact witnesses the United

1

States has requested to support its case on the grounds that the witnesses are cumulative.[1] BPXP represented to the Court that Pennington and Denise. Robertson should be precluded because they overlap with Bucknall, Bamfield, Mike Robertson, Smith, and Houge and Rule 30(B)(6) topics (although no additional witnesses are actually being presented by BPXP on these topics), making the deposition "excessive and cumulative" because they relate to the same penalty factor. See Doc. 12,889 at 6. Yet, now BPXP seeks to add cumulative testimony without explanation as to how it does not violate the very same principles on which it sought to preclude multiple depositions from the United States.

BPXP cannot demonstrate good cause for seeking to add additional witnesses on the same subject area it has previously maintained other witnesses are cumulative. Its May 22nd letter explains that Mr. Bray is familiar with the same corporate governance issues as Pennington and Robertson. Doc. 12925 at 2. Furthermore, BPXP provides no explanation for its late disclosure or any suggestion of good cause for this addition. In its May 16nd letter, BPXP contends the United States could have sought to include witnesses in Rule 26 disclosures because their names appeared on documents previously produced. See Doc. 12889 at 6. Yet, the same is true for Mr. Bray and BPXP's ability to identify him as a witness with knowledge on corporate governance.

Furthermore, Mr. Bray's deposition and documents are likely to raise significant issues regarding privilege difficult to resolve with the short schedule for fact discovery. Given BP's selection of an in-house senior attorney to testify, questions regarding the scope of any privilege any BP entity intends to assert regarding documents or testimony must be resolved well in advance, and are likely to burden both the Court and the parties. According to his resume posted online, Mr. Bray currently serves as Special Counsel and Secretary to the BP p.l.c. Board, Gulf of Mexico Committee. Prior to that time, he was Vice President, Senior Attorney and Corporate Secretary at BP America. Mr. Bray's roles as both counsel and officer/director complicates any claims of privilege by BPXP, yet the documents previously disclosed demonstrate that it has indeed maintained privilege over his communications. BPXP seeks to call Mr. Bray to speak to corporate governance issues, however BPXP cannot selectively exercise privilege claims over matters in the same subject area.[2] Determining the scope of privilege and any subject matter waiver is a fact intensive exercise that will require extensive involvement of the Court. Give the short time frame in fact discovery, the burden of resolving privilege issues is not reasonable in light of the cumulative nature of Mr. Bray's testimony.

For those reasons, BP should not be allowed to call Mr. Bray.

---

[1] BPXP's letter of May 16, 2104 mistakenly informed the Court that the United States had not included these witnesses in its Rule 26 disclosures; they were included in Amended disclosures in accordance with Court deadlines.

[2] It is a widely held that there is a waiver of the attorney-client privilege where the party has injected the issue into the litigation. See e.g. Conkling v. Turner, 883 F.2d 431, 434-5 (5th Cir. 1989) ("The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party). A party must be prevented from disclosing communications that support its position while simultaneously concealing communications that do not. See e.g. Weil v. Investment/Indicators, Research & Management, 647 F.2d 18, 24 (9th Cir. 1981) (quoting VIII J. Wigmore, Evidence § 2291, at 636 (McNaughton rev. 1961) for the proposition that fairness dictates that a privilege holder "cannot be allowed, after disclosing as much as he pleases, to withhold the remainder); Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1349-50 (Fed. Cir. 2005).

## II.   Cumulative depositions of U.S. Witnesses

In accord with the Court's preclusion of cumulative testimony, the United States herby requests that the Court preclude the depositions of Captain Hanzalik and Captain Hein as cumulative.

The United States asked for seven affirmative or "discovery" depositions, *i.e.*, our opportunity to learn information about BP's finances and corporate governance that BP would not otherwise want us to have. The United States proposed to the Court and BPXP that each party be allowed a specific number of affirmative depositions, in addition to "may call" and Rule 30(b)(6) witnesses. BPXP rejected this contention, and the Court has now agreed, precluding witnesses as cumulative regardless of the number. On this basis, the Court has precluded depositions of Mr. Houge and permitted only one from either Pennington or Robertson, which means that the United States gets only five affirmative depositions. BPXP in comparison has sought seven "affirmative" depositions of US witnesses (not on our "may call" list). Until now, the United States had not objected to BPXP's request having attempted to reach agreement on an equal allocation of affirmative depositions from each side. Now that the Court has ruled otherwise, the United States requests that the same standards for depositions requested be applied to those sought by BPXP as those from the United States. The basis for precluding the requested depositions from the United States is the cumulative nature of the deposition. However, the seven witnesses BPXP has requested from the United States are far more cumulative than those which have now been precluded. In accord with its previous Orders, the depositions of Captain Hanzalik and Captain Hein should also be precluded.

BPXP has contended that the deposition of seven witnesses in addition to Rule 30 (b)(6) depositions all related to one penalty factor is "excessive and cumulative." Dkt. 12889 at 6. Yet, virtually all of BPXP's Rule 30(b)(6) topics and the factual depositions sought relate to the penalty factor concerning Defendant's efforts to mitigate, minimize or prevent the effects of the spill. Indeed, one topic includes "your knowledge of the nature, extent, and degree of effectiveness of the efforts to respond to, or otherwise mitigate, minimize, or prevent any environmental, human health, economic, or other effects of the Deepwater Horizon Spill,"[3] In addition to this topic, fact depositions by BPXP include eight witnesses from the United States on this same penalty factor. BPXP disclosures state that all of the following eight witnesses who are being deposed relate to the same topic (emphasis added):

1. <u>Captain Meredith Austin</u> (U.S. Coast Guard, former Incident Commander (Houma, LA)): Captain Austin may have *information concerning efforts to respond to, or otherwise mitigate, minimize, or prevent the effects of, the Deepwater Horizon spill*. Captain Austin may also have information concerning any environmental, human health, and other effects, and subsequent recovery, related to the Deepwater Horizon spill and/or response activities.

---

[3] In addition, BPXP seeks Rule 30(b)(6) depositions on multiple other topics which it also contends are related to "efforts to mitigate" including topics 4 (on collection of wildlife), 5 (efforts to mitigate shoreline), and 7 ( oil contained, collected, dispersed, burned or removed as part of response activities).

3

2. Roger Laferriere (U.S. Coast Guard, former Incident Commander (Houma, LA)): Captain Laferriere may have *information concerning efforts to respond to, or otherwise mitigate, minimize, or prevent the effects of, the Deepwater Horizon spill*.
3. Captain Larry Hewett (U.S. Coast Guard, former Incident Commander (Houma, LA)): Captain Hewett may have information *concerning efforts to respond to, or otherwise mitigate, minimize, or prevent the effects of, the Deepwater Horizon spill*.
4. Captain James Hanzalik (U.S. Coast Guard, former Federal On Scene Coordinator): Captain Hanzalik may have *information concerning efforts to respond to, or otherwise mitigate, minimize, or prevent the effects of, the Deepwater Horizon spill*.
5. Captain Julia Hein (U.S. Coast Guard, former Federal On Scene Coordinator): Captain Hein may have *information concerning efforts to respond to, or otherwise mitigate, minimize, or prevent the effects of, the Deepwater Horizon spill.*
6. Captain Duke Walker (U.S. Coast Guard, former Federal On Scene Coordinator): Captain Walker may have *information concerning efforts to respond to, or otherwise mitigate, minimize, or prevent the effects of, the Deepwater Horizon spill.*
7. Jane Lubchenco (National Oceanic and Atmospheric Administration, former Administrator): Dr. Lubchenco may have *information concerning efforts to respond to, or otherwise mitigate, minimize, or prevent the effects of, the Deepwater Horizon spill*, and the environmental effects, and subsequent recovery, related to the *Deepwater Horizon* spill and/or response activities.
8. Jacqueline Michel (Research Planning, Inc., SCAT Technical Advisor): Dr. Michel may have *information concerning efforts to respond to, or otherwise mitigate, minimize, or prevent the effects of, the Deepwater Horizon spill*, including through shoreline protection, monitoring, and cleanup and other efforts. Dr. Michel may also have information concerning the environmental and other effects, and subsequent recovery, related to the *Deepwater Horizon* spill and/or response activities.

Moreover, in addition to the eight witnesses above, BPXP seeks to present its own witnesses Richard Morrison, Loren Folse, Tom Zimmer, Mike Utsler, and Iris Cross all to address this same factor. *See* BPXP Amended Disclosures. That is fourteen witnesses regarding one penalty factor, in comparison to the seven witnesses BPXP maintained was "excessive and cumulative." This also excludes the many Coast Guard deponents who have already been deposed on this factor including Admirals Allen, Watson and Landry. Additionally, BPXP has never demonstrated how any of the above eight witnesses from the United States have any information that is not already within BPXP's possession concerning defendant's own efforts to mitigate (actions by the United States is not one of the penalty factors). If seven depositions regarding one penalty factor is excessive and cumulative, then surely the depositions of eight witnesses which are cumulative of both previous depositions and defendants own witnesses are also. The United States has now been precluded from taken two of those seven depositions, based on BPXP's contention that cumulative depositions should be precluded. The United States requests that the depositions of Captains Hein and Hanzalik also be precluded, as this is warranted for the same reasons.

> Respectfully submitted,
> /s/ Steve O'Rourke
> Steven O'Rourke