# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 13-30315

---

D.C. Docket No. 2:10-MD-2179
D.C. Docket No. 2:12-CV-970
D.C. Docket No. 2:12-CV-970
D.C. Docket No. 2:10-MD-2179
D.C. Docket No. 2:13-CV-492
D.C. Docket No. 2:10-MD-2179
D.C. Docket No. 2:12-CV-970
D.C. Docket No. 2:10-MD-2179
D.C. Docket No. 2:12-CV-970

United States Court of Appeals
Fifth Circuit

**FILED**

March 3, 2014

Lyle W. Cayce
Clerk

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   MAY 29 2014

WILLIAM W. BLEVINS
CLERK

IN RE: DEEPWATER HORIZON

-------------------------------------------------------------------

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON
SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY,
INCORPORATED; LFBP 1, L.L.C., doing business as GW Fins; PANAMA
CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER
FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD
LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on
behalf of themselves and all others similarly situated; HENRY HUTTO;
BRAD FRILOUX; JERRY J. KEE,

        Plaintiffs - Appellees

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP PIPE LINE COMPANY,

        Defendants - Appellants

-------------------------------------------------------------------

Fee
Process
X Dktd
CtRmDep
Doc. No.

Consolidated with: 13-30329

IN RE: DEEPWATER HORIZON

-------------------------------------------------------------------

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON
SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY,
INCORPORATED; LFBP 1, L.L.C., doing business as GW Fins; PANAMA
CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER
FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD
LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on
behalf of themselves and all others similarly situated; HENRY HUTTO;
BRAD FRILOUX; JERRY J. KEE,

    Plaintiffs - Appellees

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

              Defendants - Appellants

-------------------------------------------------------------------

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY

    Plaintiffs - Appellants

v.

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON
SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY,
INCORPORATED; LFBP 1, L.L.C., doing business as GW Fins; PANAMA
CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER
FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD
LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on
behalf of themselves and all others similarly situated; HENRY HUTTO;
BRAD FRILOUX; JERRY J. KEE,

    Intervenor Defendants - Appellees

DEEPWATER HORIZON COURT SUPERVISED SETTLEMENT

PROGRAM; PATRICK A. JUNEAU, in his official capacity as Claims Administrator of the Deepwater Horizon Court Supervised Settlement Program administering the Deepwater Horizon Economic and Property Damages Settlement Agreement, and in his official capacity as Trustee of the Deepwater

Defendants - Appellees

-----------------------------------------------------------------------------

Consolidated with 13-31220

IN RE:  DEEPWATER HORIZON

-----------------------------------------------------------------------------

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY, INCORPORATED; LFBP 1, L.L.C., doing business as GW Fins; PANAMA CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on behalf of themselves and all others similarly situated; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE,

Plaintiffs - Appellees

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP PIPE LINE COMPANY,

Defendants - Appellants

-----------------------------------------------------------------------------

Consolidated with 13-31316

IN RE:  DEEPWATER HORIZON

-----------------------------------------------------------------------------

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY, INCORPORATED; LFBP 1, L.L.C., doing business as GW Fins; PANAMA CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on

behalf of themselves and all others similarly situated; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE,

        Plaintiffs - Appellees

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

        Defendants - Appellants

Appeals from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before DENNIS, CLEMENT and SOUTHWICK, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the December 24, 2013, ruling of the District Court is affirmed. The injunction prohibiting payment of the relevant claims is vacated.

IT IS FURTHER ORDERED that appellants pay to appellees the costs on appeal to be taxed by the Clerk of this Court.

JAMES L. DENNIS, Circuit Judge, concurring in part and concurring in the judgment.

EDITH BROWN CLEMENT, Circuit Judge, dissenting.

ISSUED AS MANDATE:    2 8 MAY 2014

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
        Deputy

New Orleans, Louisiana    2 8 MAY 2014

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————————

No. 13-30315

————————

United States Court of Appeals
Fifth Circuit

**FILED**

March 3, 2014

Lyle W. Cayce
Clerk

IN RE:  DEEPWATER HORIZON

-----------------------------------------------------------------------------------

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON
SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY,
INCORPORATED; LFBP 1, L.L.C., doing business as GW Fins; PANAMA
CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER
FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD
LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on
behalf of themselves and all others similarly situated; HENRY HUTTO;
BRAD FRILOUX; JERRY J. KEE,

            Plaintiffs - Appellees

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP PIPE LINE COMPANY,

            Defendants - Appellants

-----------------------------------------------------------------------------------

Consolidated with: 13-30329

IN RE: DEEPWATER HORIZON

-----------------------------------------------------------------------------------

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON
SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY,
INCORPORATED; LFBP 1, L.L.C., doing business as GW Fins; PANAMA
CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER
FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD
LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on

No. 13-30315

behalf of themselves and all others similarly situated; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE,

Plaintiffs - Appellees

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

Defendants - Appellants

--------------------------------------------------------------------

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY

Plaintiffs - Appellants

v.

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY, INCORPORATED; LFBP 1, L.L.C., doing business as GW Fins; PANAMA CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on behalf of themselves and all others similarly situated; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE,

Intervenor Defendants - Appellees

DEEPWATER HORIZON COURT SUPERVISED SETTLEMENT PROGRAM; PATRICK A. JUNEAU, in his official capacity as Claims Administrator of the Deepwater Horizon Court Supervised Settlement Program administering the Deepwater Horizon Economic and Property Damages Settlement Agreement, and in his official capacity as Trustee of the Deepwater

Defendants - Appellees

No. 13-30315

---------------------------------------------------------------------------------

Consolidated with 13-31220

IN RE:  DEEPWATER HORIZON
-----------------------------------------------------------------------------

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON
SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY,
INCORPORATED; LFBP 1, L.L.C., doing business as GW Fins; PANAMA
CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER
FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD
LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on
behalf of themselves and all others similarly situated; HENRY HUTTO;
BRAD FRILOUX; JERRY J. KEE,

          Plaintiffs - Appellees

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP PIPE LINE COMPANY,

          Defendants - Appellants

---------------------------------------------------------------------------------

Consolidated with 13-31316

IN RE:  DEEPWATER HORIZON
----------------------------------------------------------

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON
SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY,
INCORPORATED; LFBP 1, L.L.C., doing business as GW Fins; PANAMA
CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER
FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD
LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on
behalf of themselves and all others similarly situated; HENRY HUTTO;
BRAD FRILOUX; JERRY J. KEE,

          Plaintiffs - Appellees

No. 13-30315

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

Defendants - Appellants

---

Appeals from the United States District Court
for the Eastern District of Louisiana

---

Before DENNIS, CLEMENT and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

This appeal concerns issues arising under a Settlement Agreement approved by the district court in December 2012. Relevant to us today is that the settlement provided a mechanism for presenting and processing claims for business losses caused by the April 2010 *Deepwater Horizon* disaster in the Gulf of Mexico. The district court made two rulings as directed by our October 2013 remand. One concerned an accounting question, which was resolved in a sufficiently satisfactory manner as not to be appealed by any party. The other ruling was that the Settlement Agreement did not require those submitting claims for certain business losses to provide evidence of causation. BP Exploration and Production, Inc. appeals that ruling and also argues that an injunction is required to stop payments on such claims. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal was originally briefed in May and June of 2013 and orally argued in July. BP's argument at that time concerned contract interpretation. Its appeal was from an order of the district court entered on March 5, 2013.

4

That order affirmed a Policy Statement issued by the claims administrator on January 15, 2013. BP asserted that the district court and claims administrator's interpretations of Exhibit 4C of the Settlement Agreement were erroneous because they did not require matching of revenues and expenses in claims processing. On October 2, 2013, this panel, writing three separate opinions, remanded with guidance to the district court for reconsidering the necessity of matching revenues and expenses when processing Business and Economic Loss ("BEL") claims. *See In re Deepwater Horizon*, 732 F.3d 326, 332-39 (5th Cir. 2013) ("*Deepwater Horizon I*").

Additionally, in a part of the opinion for the court that no other panel member joined, Judge Clement wrote on a separate but related issue. She determined that if the Settlement Agreement's causation evidentiary framework was interpreted not to require proof of a nexus between the *Deepwater Horizon* disaster and a claimant's damages, the Settlement Agreement would violate Article III, Federal Rule of Civil Procedure 23, and the Rules Enabling Act. *Id.* at 342-43. Because that issue had not been briefed or argued, Judge Southwick wrote that it was inappropriate to resolve it. *Id.* at 346 (Southwick, J. concurring). Nonetheless, he called the analysis "logical" and joined in requiring the district court to consider, on remand, the relevance of causation to the extent the parties argued the point. *Id.*

On remand, the district court, in three different orders spread over several weeks, indicated that it did not believe this court had required an evaluation of the causation issue. On December 2, 2013, we clarified that Judges Clement and Southwick had agreed in their separate October opinions that, if raised, the district court must consider the Article III and other causation arguments on remand. We acknowledged that our issuance of multiple "opinions may have created interpretive difficulties on the remand,

but the district court erred by not considering the arguments on causation." Yet again today, we each express ourselves individually. Two of us do at least say in tandem, clearly we trust, "affirm."

On December 24, the district court held that the Settlement Agreement requires matching of revenues and expenses. The court directed the claims administrator to implement that interpretation. As of that ruling, the entirety of BP's initial argument, namely, that the initial interpretations of Exhibit 4C were incorrect, was successful. Also at that point, though, the district court rejected BP's arguments with respect to the new issue of whether Article III, Rule 23, and the Rules Enabling Act permitted the parties to agree to a settlement that dealt with causation in this manner. To answer that second question, the district court analyzed the terms of the Settlement Agreement and an October 10, 2012, Policy Statement by the claims administrator to which BP had not objected. The district court concluded that the language of the Settlement Agreement did not require extrinsic inquiry into causation and that the Settlement Agreement had not violated Article III, Rule 23, or the Rules Enabling Act by eschewing the need for evidence of causation.

BP renewed its emergency motion for an injunction with this court on December 30, challenging only the district court's rejection of its causation arguments. No party appealed the district court's instruction to the claims administrator to implement the district court's interpretation of the Settlement Agreement with respect to matching.

While this panel has been addressing questions arising out of the claims administrator's interpretation of the Settlement Agreement, another panel considered the chronologically earlier question of the validity of the certification of the class by the district court on December 21, 2012, and the approval of the Settlement Agreement. In a January 10, 2014, decision, what

6

No. 13-30315

we will refer to as the "certification panel" determined the class certification and settlement approval did not contravene Article III, Rule 23, or the Rules Enabling Act. *See In re Deepwater Horizon*, 739 F.3d 790, 795 (5th Cir. 2014) (*Deepwater Horizon II*).

The certification panel declined to analyze issues arising from the interpretation and implementation of the settlement after its approval by the district court, but the panel held that all Article III, Rule 23, and Rules Enabling Act concerns were resolved at the class certification and settlement approval stage. *Id.* at 804. We directed letter briefing on the impact of that decision on the remaining issues before this panel for resolution. We now consider the issues that we conclude remain before us.

## DISCUSSION

Contract interpretation is a question of law we review *de novo. Waterfowl L.L.C. v. United States*, 473 F.3d 135, 141 (5th Cir. 2006). BP argues that the district court erred in concluding that the Settlement Agreement's causation framework did not violate Article III, Federal Rule of Civil Procedure 23, and the Rules Enabling Act. Only part of this issue was resolved on January 10 by the certification panel when it concluded that the certification of a class and the approval of the Settlement Agreement were proper. What this panel now must decide is whether the implementation of the Settlement Agreement is defective.

BP contends that Section 1.3.1.2 of the class definition and footnote 1 of Exhibit 4B establish a requirement that claimants prove with evidence that they are proper class members. Section 1.3.1.2 states: "Economic Damage Category. Loss of income, earnings or profits suffered by Natural Persons or Entities as a result of the **DEEPWATER HORIZON INCIDENT**." Footnote

7

No. 13-30315

1 of Exhibit 4B states: "This Causation Requirements for Business Economic Loss Claims does not apply to . . . Entities, Individuals, or Claims not included within the Economic Class definition." We will discuss the referenced footnote later.

The class definition was relied upon by the certification panel when it concluded that the Settlement Agreement complied with Article III:

> Under the plain terms of the Class Definition, a "person or entity" is included "in the Economic Class only if their Claims meet the descriptions of one or more of the Damage Categories described" in Section 1.3.1 of the Class Definition. Of these "Damage Categories," the only category that BP has identified as giving rise to Article III difficulties is the "Economic Damage Category" under Section 1.3.1.2. This section of the Settlement Agreement, however, explicitly limits claims to those based on "[l]oss of income, earnings or profits suffered by Natural Persons or Entities as a result of the DEEPWATER HORIZON INCIDENT," subject to exclusions for participants in certain industries. As contemplated by the Class Definition, therefore, the class contains only persons and entities that possess Article III standing.

*Deepwater Horizon II*, 739 F.3d at 803 (footnotes omitted). The panel also determined that the class definition and the amended complaint satisfied the requirements of Rule 23 and the Rules Enabling Act. *Id.* at 804 & n.53.

The Settlement Agreement was approved in the same December 2012 district court order that certified the class. The certification panel's opinion notes that the terms of this settlement substitute for at least some of the contested factual development that occurs in cases that do not have simultaneous certification and settlement. *Id.* at 806-08. Despite the settlement, the individual claims still had to be processed. Thus, we now examine the methodology for presenting and processing those claims, as written in the Settlement Agreement and as interpreted by the claims administrator in the October 10, 2012, Policy Statement.

8

No. 13-30315

Causation for BEL claims is primarily addressed in Exhibit 4B to the Settlement Agreement. It provides for the use of proof of loss as a substitute for proof of causation. Exhibit 4B exempts claimants located within certain geographic regions and in certain industries from presenting any evidence of causation. That exemption appears in a section under the heading "Business Claimants for Which There is No Causation Requirement." It continues: "If you are a business in [geographic] Zone A, you are not required to provide any evidence of causation unless you fall into one of the exceptions agreed to by the parties, and listed in footnote (1)." Claimants not within the exempt criteria must only meet one of a set of quantitative tests based on their revenue patterns during the pre- and post- *Deepwater Horizon* disaster periods.

BP seeks to override the explicit language disclaiming the need for evidence of causation by focusing on this footnote that appears in Exhibit 4B: "This Causation Requirements for Business Economic Loss Claims does not apply to . . . Entities, Individuals, or Claims not included within the Economic Class definition." Wielding this footnote, BP seeks to dismantle the complex framework of exemptions, presumptions, and formulas that allow business claimants to submit evidence of their income and expenses before and after the BP-caused disaster. BP, in essence, is arguing that only if a claimant can prove its injuries are traceable to BP's conduct will Exhibit 4B's forswearing of the need for proof of traceability to BP's conduct apply. There likely is a more nuanced manner in which BP would characterize its argument, but this fairly captures its essence. We reject the argument, of course.

We acknowledge, though, that BP is pointing out a possible inconsistency between what the certification panel says it found to satisfy Article III – namely, a requirement that class members be able to trace their claims to the defendant's conduct – and the way the Settlement Agreement is written and

9

has been implemented.   In effect, BP argues that Exhibit 4B cannot be interpreted to exclude a requirement of causation because the certification panel held that requirement to be a feature of the class definition.  BP argues, then, that even if the class were properly certified under Article III based upon this definition, a settlement that abandons such a requirement, or at least a settlement later interpreted and implemented as not including such a requirement, was simultaneously approved.  This, according to BP, reanimates Article III, Rule 23, and Rules Enabling Act issues put to rest by the certification panel.   We disagree with the premise of abandonment and therefore we never reach the applicability of these fundamental issues to the questions that remain before us.[1]  Neither the Settlement Agreement's terms nor its implementation ignore causation.   Instead, the parties explicitly contracted that traceability between the defendant's conduct and a claimant's injury would be satisfied at the proof stage, that is, in the submission of a claim, by a certification on the document that the claimant was injured by the *Deepwater Horizon* disaster.  We explain.

The parties agreed to a form that BEL claimants would submit to make a claim.   The introductory section of the form states: "The **Business Economic Loss Claim** is for businesses . . . that assert economic loss *due to the spill*."  (Italics added). The end of the form requires the claimant "certify and declare under penalty of perjury" that all of the information in the claim form is "true and accurate to the best of my knowledge."  The claimant further attests "I understand that false statements or claims made in connection with this Claim Form may result in fines, imprisonment, and/or any other remedy

---

[1] We observe that the difficulties that BP points out as to causation are outgrowths of the definition of the class and the terms of the Settlement Agreement that were sustained by the Certification panel.  We do not perceive any basis for saying Article III, Rule 23, and the Rules Enabling Act are violated at the claims processing stage that has not already been addressed by the prior panel.

No. 13-30315

available by law . . . and that suspicious claims will be forwarded . . . for possible investigation and prosecution." Every claim BP argues suffers from some causal-nexus infirmity should have with it an attestation from the claimant or an attorney that the economic loss was caused by the spill.

In light of our reading of the Settlement Agreement, claim form, letter briefing, and the voluminous record in this appeal, we conclude the Settlement Agreement does not require a claimant to submit *evidence* that the claim arose as a result of the oil spill. Each claimant does attest, though, under penalty of perjury, that the claim in fact was due to the *Deepwater Horizon* disaster. The attestation, of course, applies to all assertions on the claims form, including the financial figures and other details. Suspicious forms would be subject to investigation. These requirements are not as protective of BP's present concerns as might have been achievable, but they are the protections that were accepted by the parties and approved by the district court. It was a contractual concession by BP to limit the issue of factual causation in the processing of claims. Causation, or in Rule 23 terms, traceability, was not abandoned but it was certainly subordinated.

There is nothing fundamentally unreasonable about what BP accepted but now wishes it had not.[2] One event during negotiations in the fall of 2012 suggests reasons for just requiring a certification. The claims administrator, in working through how the proposed claims processing would apply in specific situations, submitted a hypothetical to BP and others. It posited three accountants being partners in a small firm located in a relevant geographic region. One of the three partners takes medical leave in the period immediately following the disaster, thus reducing profits in that period

---

[2] Though the approach may have been reasonable, that fact does not make it legally valid. As we have already held, though, the Certification panel precedentially resolved validity.

11

No. 13-30315

because that partner is not performing services for the firm. At least some of the firm's loss, then, would have resulted from the absence of the partner during his medical leave. BP responded that such a claim should be paid. We raise this not for the purpose of analyzing an issue we conclude is not relevant to our decision, namely, whether BP is estopped from its current arguments. Instead, we mention it in order to identify the practical problem mass processing of claims such as these presents, a problem that supports the logic of the terms of the Settlement Agreement. These are business loss claims. Why businesses fail or, why one year is less or more profitable than another, are questions often rigorously analyzed by highly-paid consultants, who may still reach mistaken conclusions. There may be multiple causes for a loss. As with the hypothetical accountants, all of the loss may be attributable to the missing partner, or some of the loss may be traceable to the *Deepwater Horizon* disaster. The difficulties of a claimant's providing evidentiary support and the claims administrator's investigating the existence and degree of nexus between the loss and the disaster in the Gulf could be overwhelming. The inherent limitations in mass claims processing may have suggested substituting certification for evidence, just as proof of loss substituted for proof of causation. Because the Settlement Agreement at least requires a formal assertion of the causal nexus, we conclude that what the certification panel relied upon in approving the class definition and Settlement Agreement remained in place during the processing of claims.

The dissent concludes we require too little as to causation. We see the extent of our colleague's disagreement to be as follows. All of us accept that the class definition and Settlement Agreement require that membership in the class be based on harm from BP's conduct, as the Certification Panel previously held. We also agree that the provision in Exhibit 4B that disclaims the need

12

for evidence of causation is at least generally applicable. We part analytical ways when identifying the role of the claims administrator regarding suspicious or implausible claims.  The dissent would require the claims administrator to "ensure that claims are not paid that are not plausibly traceable to the spill," thus placing the onus on the claims administrator to ensure that implausible claims are adequately scrutinized such that those lacking a causal nexus are rejected.

We do not agree that we should order the claims administrator to perform that gatekeeping function.  There is no language in the Settlement Agreement nor in BP's briefing, supplemental submissions, or emergency motions, about a procedure to be followed when an attestation of a nexus seems at odds with the specifics of the claim.  Far from proposing a specific procedure or even guidelines for crafting one, the entirety of BP's requested relief, exemplified in its Renewed Motion for Injunction, is "a permanent injunction barring the [claims administrator] from issuing or paying awards to claimants whose alleged injuries are not traceable to the spill."  BP identifies its desired relief but does not identify a part of the Settlement Agreement that in any way suggests that each submitted claim would be examined as to whether it satisfies a traceability requirement.

Relevant to this concern is that BP did not object in this appeal to a decision made in October 2012 that the claims administrator was not to look at potential alternative causes for claimants' losses.  Though we are reluctant to say that all claims must be accepted no matter how clear the absence of the required nexus may be, no one has concerned itself in this appeal with the when, by whom, and how of analyzing such suspicious claims after they are submitted.  It seems to us that absent any specific provision in the Settlement Agreement, and no one suggests there is one, such concerns are to be addressed

No. 13-30315

in the usual course of processing individual claims. The Settlement Agreement contained many compromises. One of them was to provide in only a limited way for connecting the claim to the cause. The claims administrator, parties, and district court can resolve real examples of implausible claims as they resolve other questions that arise in the handling of specific claims.

We affirm the district court's December 24, 2013, order interpreting the Settlement Agreement. An injunction has been in place preventing payment of BEL claims pending the resolution of all of these issues. Between the certification panel's decision of January 10 and ours today, all issues presented to this panel have been resolved. On the other hand, petitions for rehearing *en banc* of the certification panel's decision on which we have relied have been filed. We can anticipate that our decision might not persuade all parties either. We conclude that the injunction should be dissolved, but the injunction remains in place until the mandate of the court is issued.

The December 24, 2013, ruling of the district court is AFFIRMED. The injunction prohibiting payment of the relevant claims is VACATED.

JAMES L. DENNIS, Circuit Judge, concurring in part and concurring in the judgment:

The Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.*, imposes strict liability on those responsible for oil spills "into or upon the navigable waters or adjoining shorelines" of the United States. *Id.* § 2702. It provides for recovery of removal costs and of six categories of damages that "result from" such incidents, including damages for "loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources." *Id.* § 2702(b)(2)(E).

The oil spill from BP's Macondo oil well and Deepwater Horizon drilling rig into the Gulf of Mexico, which continued from April 20 to July 15, 2010, caused damages in all of the six OPA categories. Following the unprecedented spill that affected thousands of businesses across the Gulf Coast and surrounding regions, it seemed apparent that BP's liability for business economic loss (*viz.*, "loss of profits or impairment of earning capacity") could be enormous. However, the full scope of § 2702(b)(2)(E) liability, which is defined as affording recompense for business economic loss "due to" property and environmental damage that "result[s] from" a covered oil spill, had not yet been, and still has not been, judicially construed. Furthermore, the scope of such liability was, and still is, subject to intense scholarly debate.[1]

For these and other reasons, BP and the economic-loss claimants entered a settlement agreement adopting clearer definitions and formulas for the

---

[1] *See* John C. P. Goldberg, *Liability for Economic Loss in Connection with the Deepwater Horizon Spill*, 30 MISS. C. L. REV. 335 (2011); David W. Robertson, *The Oil Pollution Act's Provisions on Damages for Economic Loss*, 30 MISS. C. L. REV. 157 (2011); John C. P. Goldberg, *OPA and Economic Loss: A Reply to Professor Robertson*, 30 MISS. C. L. REV. 203 (2011); David W. Robertson, *OPA and Economic Loss: A Response to Professor Goldberg*, 30 MISS. C. L. REV. 217 (2011).

payment of such claims. At their request, the district court approved the settlement agreement as a class-action settlement in its consent decree.

Within days of the district court's judgment, however, BP brought this litigation, which has evolved into BP asking the courts to interpret the settlement agreement and consent decree to require certain economic-loss claimants to prove, with trial-type evidence, that their losses were caused by the oil spill, regardless of whether they have met the definitions and formulas provided by the settlement agreement and consent decree. The district court rejected BP's demands, and BP appealed. The majority of this panel, first, addressing an issue of how damages should be calculated, vacated the district court's judgment and remanded with instructions to determine whether the claims administrator was converting claimants' accrual-method accounting data into cash-method data. Second, addressing whether claimants must satisfy causation requirements external to the settlement agreement's text, the majority of this panel ordered the district court to "expeditiously craft" a "narrowly-tailored injunction" that would allow "those who experienced actual injury traceable to loss from the Deepwater Horizon accident to continue to receive recovery but those who did not do not receive their payments" pending further decision of the court. *In re Deepwater Horizon*, 732 F.3d 326, 345-46 (5th Cir. 2013) (Clement, J.). I dissented from the panel majority's vacatur and remand because, in my view, BP's action was an unwarranted attempt to change the terms of the settlement agreement and the district court's judgment rejecting that attempt should have been affirmed. *Id.* at 361 (Dennis, J., concurring in part and dissenting in part).

Next, after the district court issued an injunction, BP filed an "emergency motion" in this court seeking to have this panel order the district court to expand the injunction's scope. BP's Mot. (Doc. No. 195, filed Nov. 21,

No. 13-30315

2013).  A majority of this panel remanded to the district court and ordered it to give further "expeditious consideration" in the first instance to the "issue of causation" and to revise the injunction as found needed.  *In re Deepwater Horizon*, No. 13-30315 (5th Cir. filed Dec. 2, 2013).  I dissented from the panel's remand and order because I thought the district court had acted correctly and I agreed with the reasons it had assigned; moreover, I stated that BP's belated attempt to raise the issue of causation of damages under the OPA clearly did not survive BP's entering voluntarily into the settlement agreement and consent decree and failing to raise the causation issue in the initial proceedings in the district court and appeal.  *Id.* (Dennis, J., dissenting).

After this second remand, the district court, first, granted BP certain partial relief it sought regarding the court's interpretation of the settlement agreement's provisions for calculating damages and ordered the claims administrator to adopt and implement a policy for matching revenue and corresponding variable expenses when calculating business-economic-loss claims.  Second, the district court held that the settlement agreement would be interpreted as written without any judicial gloss.  Third, the district court held that BP was judicially estopped from pursuing its causation arguments because those arguments contradicted numerous representations BP had made to the district court and this circuit court regarding how the settlement agreement should be interpreted and implemented.   The district court explained, essentially, that BP had long maintained that the settlement agreement's definitions and formulas were the sole relevant provisions for processing claims, and such statements on BP's part clearly contradicted BP's new arguments that claimants must also prove causation with supporting evidence.  And the district court rejected BP's arguments under Article III, Rule 23, and the Rules Enabling Act. *In re: Oil Spill by the Oil Rig "Deepwater*

17

No. 13-30315

*Horizon" in the Gulf of Mexico, on April 20, 2010*, No. 10-MD-2179 (E.D. La. filed Dec. 24, 2013).

BP has now lodged another appeal and motion with this panel, seeking to have this court, not the district court, "permanently enjoin" the claims administrator from processing claims from claimants who have not proven with trial-type evidence that their "alleged injuries" are "traceable to the Deepwater Horizon oil spill." BP's Mot. (Doc. No. 231, filed Dec. 30, 2013).

Although I continue to adhere to the views I expressed previously in this case, I now join Judge Southwick in affirming the district court's December 24, 2013 order interpreting the settlement agreement as written and declining to add, by judicial gloss, any additional requirements, procedures, or other provisions not contained in the text of the settlement agreement and consent decree and its attached exhibits. I agree with Judge Southwick that BP's renewed motion for an injunction should be denied and that no injunction against the payment of business-economic-loss claims shall continue. I also agree that we are bound by the certification panel's Article III, Rule 23, and Rules Enabling Act rulings in its January 10, 2014 opinion and decision. Accordingly, for these reasons, I concur in the above-described conclusions reached by Judge Southwick and in the judgment he has written for the majority of this panel.

No. 13-30315

EDITH BROWN CLEMENT, Circuit Judge, dissenting.

A majority of this panel (1) affirms the district court's December 24, 2013 order, (2) denies BP's motion for a permanent injunction against the issuance or payment of awards to claimants whose injuries are not traceable to the Deepwater Horizon oil spill, and (3) holds that this panel is bound by the certification panel's rulings on Article III, Rule 23, and the Rules Enabling Act.[1] I respectfully dissent.

The judicial power of federal courts extends only to cases and controversies. There are but three irreducible constitutional requirements: an injury in fact, a causal connection between the injury and the conduct complained of, and that the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Despite the modern development of class actions under our law, the extent of our judicial power remains unchanged. It extends only to cases and controversies—redressable injuries with a causal connection. *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

The Deepwater Horizon tragedy took eleven lives and caused great damage to our environment and region. Cases and controversies abounded. In light of this, the parties sought to negotiate a settlement agreement that would resolve these issues on an enormous, class-wide basis, one of the largest settlements in history. This was a settlement that would compensate claimants for "[l]oss of income, earnings or profits . . . as a result of the" spill. Settlement Agreement § 1.3.1.2. The agreement was signed and the class was certified on December 21, 2012, with the support of the parties.

---

[1] Judge Dennis "concur[s] in the above-described conclusions reached by Judge Southwick and in the judgment he has written for the majority of this panel." While this opinion refers to Judge Southwick's opinion as speaking for the "majority," it is worth noting that little of his analysis and reasoning carries the support of two panel members.

19

No. 13-30315

Two subsequent decisions of the Claims Administrator brought the parties into conflict. One was the Policy Statement endorsed by the district court in an order of March 5, 2013, that established the accounting methodology to be used to measure payments for Business Economic Loss claims under Exhibit 4C of the Settlement Agreement. The other was a Policy Statement that was issued on October 10, 2012, and adopted by the district court on April 9, 2013, that laid out a position on "Causation Requirements" in Exhibit 4B. It stated:

> The Claims Administrator will thus compensate eligible Business Economic Loss and Individual Economic Loss claimants for all losses payable under the terms of the Economic Loss frameworks in the Settlement Agreement, without regard to whether such losses resulted or may have resulted from a cause other than the Deepwater Horizon oil spill provided such claimants have satisfied the specific causation requirements set out in the Settlement Agreement.

On October 2, 2013, a majority of our panel agreed that Exhibit 4C required matching of revenues and expenses, and remanded to the district court with the additional instruction to consider the issue of causation if raised by the parties. *In re Deepwater Horizon*, 732 F.3d 326 (5th Cir. 2013) ("*Deepwater Horizon I*"). On remand, the district court declined to address the causation issues, and after a renewed motion to our panel, we remanded again on December 2, 2013, with instructions to consider the causation issues BP raised.

On December 24, 2013, the district court issued an order requiring the Claims Administrator to match revenue and expenses as directed by our October 2 opinion and subsequent order of December 2. This resolved the first dispute raised by the Claims Administrator's Policy Statement, and no party has appealed this issue.

The district court also addressed the second disputed issue in an order that analyzed the causation issues we directed the court to consider. It held that BP was judicially estopped from arguing that individuals and entities whose injuries were not fairly traceable to the oil spill should not be able to recover. BP responded with an additional motion asking this court to put in place a permanent injunction to ensure that the Claims Administrator considers causation before paying out claims.

Meanwhile, another panel of this court heard challenges to the certification of the class action in this case and released an opinion on January 10, 2014, upholding the district court's certification of the Settlement Agreement.[2]  The majority of that panel found no issue with upholding the certification of the Settlement Agreement, because the agreement as written "explicitly limits claims to those based on '[l]oss of income, earnings or profits suffered by Natural Persons or Entities *as a result of* the DEEPWATER HORIZON INCIDENT,' . . . .  As contemplated by the Class Definition, therefore, the class contains only persons and entities that possess Article III standing." *In re Deepwater Horizon*, 739 F.3d 790, 803 (5th Cir. 2014) ("*Deepwater Horizon II*").

The certification panel declined to address the Claims Administrator's interpretation of the Settlement Agreement, leaving that issue for our panel's consideration in light of our retention of jurisdiction. As the certification panel stated, "[t]he evidentiary standard to be applied by the Claims Administrator . . . is a question of interpreting the Settlement Agreement and applying it to

---

[2] While the decision of the certification panel is binding under our circuit's rule of orderliness, that opinion was careful to limit its holding to the class certification and settlement approval context. In addition, it was arguably premature for that panel to rule on the certification issue before ours had issued a final ruling on the proper interpretation of the Settlement Agreement. Much of the confusion, delay, and additional briefing in these cases could have been avoided if the cases had been consolidated into one panel.

each individual claim, and we are not called upon to address those issues in this appeal." *Id.* at 808. The opinion further acknowledged:

> The parties now vigorously dispute how this evidentiary framework was intended to work. For its part, BP has argued in its subsequent submissions to the *Deepwater Horizon I* panel that "the Claims Administrator must make a threshold determination whether the claimant has suffered loss as a result of the spill" and that under footnote 1 of Exhibit 4B this "threshold determination must be made *before* applying the causation criteria outlined in Exhibit 4B." The named plaintiffs hold a different view.

*Id.* at 807–08.

While the certification panel majority does not address what occurred after class certification, Judge Garza's dissent traces the ostensible elimination of the causation requirement to the Policy Statement of the Claims Administrator.   That interpretation stated that the program would "compensate . . . claimants . . . *without regard to whether such losses resulted or may have resulted from a cause other than the Deepwater Horizon oil spill.*" *Id.* at 823 (Garza, J., dissenting).  This reading "effectively eliminated" the language requiring causation. *Id.* at 823 n.5.

The majority adopts the view that the agreement as written does not eliminate causation or traceability, but "subordinate[s]" it. Specifically, Judge Southwick agrees with the certification panel that causation was contemplated by the Settlement Agreement.  He points to the Business Economic Loss claim form informing claimants that, "[t]he Business Economic Loss Claim is for businesses . . . that assert economic loss due to the spill." Deepwater Horizon Economic and Property Settlement Business Economic Loss Claim Form (Purple Form) 1.  Nine pages later, the form requires the claimant to certify under penalty of perjury "that the information provided in this Claim Form is true and accurate to the best of my knowledge." *Id.* at 9. "Every claim BP

argues suffers from some causal-nexus infirmity should have with it an attestation from the claimant or an attorney that the economic loss was caused by the spill." To the majority, this attestation satisfies any concerns about causation.

The form certainly provides further evidence that causation was a critical part of the Settlement Agreement. The difficulty is that the interpretation and implementation of the agreement eliminated this requirement when the Exhibit 4B Policy Statement informed claimants that they would be compensated whether or not their injuries "resulted . . . from a cause other than the Deepwater Horizon oil spill." These decisions and pronouncements may not have been relevant for the certification panel majority, which declined to analyze issues that arose from the interpretation and implementation of the settlement after its approval by the district court, but they are crucial in assessing "whether the implementation of the Settlement Agreement is defective." This interpretation that submitting forms that lack colorable causation was acceptable under the agreement was relied upon by attorneys, who urged uninjured plaintiffs to file claims "[i]f the numbers work." BP Br. 77, Doc. 00512230427 (May 5, 2013) (citing R.16719). These attorneys were not urging perjury: they were merely interpreting the agreement in light of the Claims Administrator's interpretation that was upheld by the district court. How can they be pursued for false statements for relying on these legally binding pronouncements, much less an individual, unrepresented claimant who lacks even this level of legal sophistication? This Policy Statement effectively eliminated the need for a claimant to allege injury traceable to BP's conduct, and therefore raises once again the Constitutional concerns that the majority claims were "put to rest by the certification panel."

No. 13-30315

The elements of standing do not end at certification, but continue to be vital throughout "the successive stages of litigation." *Lewis*, 518 U.S. at 358. Because this is a settlement class action, there are no successive stages of litigation: the certification stage and the proof stage have been combined. If someone is a member of the class, they recover. But while the certification panel analyzed the agreement as written, the subsequent implementation has expanded those who can recover even to those who cannot trace their injuries to BP's conduct. This agreement, as implemented, is using the powers of the federal courts to enforce obligations unrelated to actual cases or controversies.

Judge Southwick's opinion points out the challenge of proving causation when multiple causes are at stake by offering the hypothetical of an accounting firm that experienced economic loss after the disaster in part because one of its three partners took medical leave. It is admittedly difficult to isolate multiple causes, and that is not what Article III requires. Even in that example, an argument can be made that the disaster impacted part of the firm's losses. If so, these claimants can colorably assert injury due to the spill and are appropriate members of this class. A more fitting example here would be an accounting firm in Zone A where all three partners went on medical leave for several months after the disaster. The profits of their firm drop precipitously, but in no way due to the negligence of BP. Under Judge Southwick's reasoning, the Settlement Agreement requires BP to pay these losses as well so long as they sign a claim form. But these plaintiffs have no injury traceable to BP's actions, and would not have standing to maintain a suit individually under *Lujan*. Nonetheless, because of the majority's ruling here, these claimants will recover.

Perhaps recognizing that its ruling would lead to absurd results in at least a small number of cases, the majority states that the "[t]he claims

24

administrator, parties, and district court can resolve real examples of implausible claims as they resolve other questions that arise in the handling of specific claims." But I do not see how this statement provides any comfort in light of the district court's ruling that BP is judicially estopped from arguing causation. And the majority declines to rule one way or the other on judicial estoppel, which it inexplicably concludes is "an issue . . . not relevant to our decision." In the end, we are left with the majority's holding that the Claims Administrator does not need to perform the "gatekeeping function" of ensuring that claims are not paid that are not plausibly traceable to the spill. Claimants whose losses had absolutely nothing to do with Deepwater Horizon or BP's conduct will recover as a result of this ruling.

The number of claimants ultimately affected by this issue may well be small, but the constitutional principles are important because they assure the vigorous and fair resolution of disputes and respect the limitations on the power of the federal judiciary. I would reverse the district court's holding on judicial estoppel and permanently enjoin the Claims Administrator from paying awards to claimants whose injuries are not traceable to the Deepwater Horizon oil spill.

I respectfully dissent.