# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT



**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**FILED**   MAY 29 2014

**WILLIAM W. BLEVINS**
**CLERK**

No. 13-30095

D.C. Docket No. 2:10-MD-2179
D.C. Docket No. 2:10-CV-7777
D.C. Docket No. 2:12-CV-970
D.C. Docket No. 2:10-CV-2771
D.C. Docket No. 2:12-CV-2953
D.C. Docket No. 2:12-CV-964

United States Court of Appeals
Fifth Circuit

**FILED**
January 10, 2014

Lyle W. Cayce
Clerk

IN RE: DEEPWATER HORIZON - APPEALS OF THE ECONOMIC AND PROPERTY DAMAGE CLASS ACTION SETTLEMENT

Appeals from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before DAVIS, GARZA, and DENNIS, Circuit Judges.

### J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that costs be taxed against Defendant-Appellee BP.

EMILIO M. GARZA, Circuit Judge, dissenting.

ISSUED AS MANDATE:   2 8 MAY 2014

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
                Deputy

New Orleans, Louisiana                2 8 MAY 2014

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 10, 2014

Lyle W. Cayce
Clerk

No. 13-30095

IN RE: DEEPWATER HORIZON — APPEALS OF THE ECONOMIC AND
PROPERTY DAMAGE CLASS ACTION SETTLEMENT

Appeals from the United States District Court
for the Eastern District of Louisiana

Before DAVIS, GARZA, and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This is an interlocutory appeal from the district court's order certifying a class action and approving a settlement under Rule 23 of the Federal Rules of Civil Procedure.[1]  The ongoing litigation before the district court encompasses claims against British Petroleum Exploration & Production, Inc. ("BP") and numerous other entities.  All these claims are related to the 2010 explosion aboard the *Deepwater Horizon*, an offshore drilling rig, and the consequent discharge of oil into the Gulf of Mexico.

Several of the original appellants in this case have moved to dismiss their appeals voluntarily, and we have granted those motions.  We accordingly do not consider the arguments unique to those appellants.  The three groups of appellants remaining before us—the "Allpar Objectors," the "Cobb Objectors," and the "BCA Objectors"—all filed objections with the district court opposing class certification and settlement approval based on various

---

[1] *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010,* 910 F. Supp. 2d 891 (E.D. La. 2012).

No. 13-30095

provisions of Rule 23.  The Objectors' arguments were each addressed and rejected by the district court in its order of December 21, 2012.  The Objectors have now appealed the district court's order and ask this court to remand with instructions to decertify the class and withdraw approval from the Settlement Agreement.

BP also now asks this court to vacate the district court's order, although BP is not formally an appellant and, in fact, BP originally supported both class certification and settlement approval before the district court.  In addition to its own set of new arguments under Rule 23, BP also raises additional arguments regarding the Article III standing of certain class members to make claims under the Settlement Agreement.  Unlike the Objectors, however, BP argues that the Settlement Agreement can be salvaged if "properly construed and implemented."  In BP's view, all of the problems that invalidate the class settlement under Article III and Rule 23 result from two Policy Announcements issued by the Claims Administrator, Patrick Juneau, who was appointed under the Settlement Agreement by the district court.

As set forth below, we cannot agree with the arguments raised by the Objectors or BP.  The district court was correct to conclude that the applicable requirements of Rule 23 are satisfied in this case.  Additionally, whether or not BP's arguments regarding Exhibits 4B and 4C are correct as a matter of contract interpretation, neither class certification nor settlement approval are contrary to Article III in this case.  Accordingly, the district court's order is affirmed.

I.

The factual background of this case is described in more extensive detail in the district court's opinion, *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891 (E.D. La. 2012), and in a previous decision by a different panel of this court, *In re Deepwater Horizon*,

No. 13-30095

732 F.3d 326 (5th Cir. 2013) ("*Deepwater Horizon I*"). As explained in *Deepwater Horizon I*, BP leased the *Deepwater Horizon* drilling vessel to drill its Macondo prospect off the Louisiana coast. On April 20, 2010, an exploratory well associated with the drilling vessel blew out. After the initial explosion and during the ensuing fire, the vessel sank, causing millions of barrels of oil to spill into the Gulf of Mexico. Numerous lawsuits were filed against a variety of entities, and many of these lawsuits were transferred by the Judicial Panel on Multidistrict Litigation to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1407.

To satisfy its obligations under the Oil Pollution Act ("OPA"), BP initially established its own claims process and later funded the claims process administered by the Gulf Coast Claims Facility ("GCCF") in order to begin paying out claims immediately rather than at the conclusion of litigation. BP then began negotiating a class settlement in February 2011 and jointly worked with the Plaintiffs' Steering Committee ("PSC") to transfer claims from the GCCF to a program supervised directly by the district court.

On April 16, 2012, the PSC filed an Amended Class Action Complaint and a proposed Settlement Agreement for the district court's preliminary approval. In accordance with the terms of the Settlement Agreement, the district court appointed Patrick Juneau as Claims Administrator of the settlement program. Although the Settlement Agreement had not yet received the district court's final approval under Rule 23 of the Federal Rules of Civil Procedure, the Claims Administrator began reviewing claims left unresolved by the GCCF and processing new claims in June 2012 as provided for in Section 4 of the parties' Settlement Agreement, entitled "Implementation of the Settlement."

On August 13, 2012, after a preliminary hearing and the distribution of notifications to the absent members of the proposed class, BP and the PSC

No. 13-30095

moved for final approval of the Settlement Agreement and certification of the class defined at paragraph 306 of the Amended Class Action Complaint. The Allpar Objectors, Cobb Objectors, and BCA Objectors all filed objections with the district court opposing class certification and settlement approval based on various provisions of Rule 23. After conducting a fairness hearing on November 8, 2012, to consider the views of these Objectors and numerous others in accordance with Rule 23(e), the district court issued a final order certifying the class and approving the parties' Settlement Agreement on December 21, 2012. The district court emphasized in particular that the "uncapped compensation" available under the Settlement Agreement would "ensure that a benefit paid to one member of the class will in no way reduce or interfere with a benefit obtained by another member."[2] The Objectors appealed.

BP supported the Settlement Agreement during the proceedings leading up to and including the district court's order of December 21, 2012. BP now argues that two Policy Announcements issued by the Claims Administrator regarding the interpretation and application of the Settlement Agreement—both of which were adopted in orders by the district court—have subsequently brought the Settlement Agreement into violation of Rule 23, the Rules Enabling Act, and Article III of the U.S. Constitution.

One of these two Policy Announcements by the Claims Administrator addresses the interpretation and application of the Settlement Agreement's Exhibit 4C, entitled "Compensation Framework for Business Economic Loss Claims." The Policy Announcement was endorsed on March 5, 2013, by the district court in an order that became the subject of the appeal heard by Judges Dennis, Clement, and Southwick in *Deepwater Horizon I*. The Settlement

---

[2] *Id.* at 918.

4

No. 13-30095

Agreement's Exhibit 4C establishes a formula for measuring the payments made to class members as compensation for business-related economic loss. The text of Exhibit 4C, however, does not explicitly identify the accounting methodology that the Claims Administrator should apply when interpreting this payment formula. BP argued before the other panel that the Claims Administrator's interpretation of Exhibit 4C fails to reflect the parties' intent to apply the accrual method of accounting, rather than the cash method, when evaluating the financial records of all prospective claimants. The PSC disagreed and argued that the cash method of accounting could also be used by the Claims Administrator if a prospective claimant ordinarily used the cash method in its own business accounting and bookkeeping.

After considering the parties' arguments, a majority of the panel in *Deepwater Horizon I* remanded the case for further proceedings to reexamine the contractual interpretation questions arising under Exhibit 4C.[3] The district court issued an additional ruling on December 24, 2013,[4] which BP has appealed once again.[5]

The second Policy Announcement by the Claims Administrator addresses the interpretation and application of Exhibit 4B of the Settlement Agreement, entitled "Causation Requirements for Businesses [*sic*] Economic Loss Claims." Whereas the Settlement Agreement's Exhibit 4C established a formula for the measurement of economic loss, Exhibit 4B set forth criteria for prospective claimants to demonstrate to the Claims Administrator that their losses were caused by the *Deepwater Horizon* oil spill. In the Policy Announcement, the Claims Administrator explained:

---

[3] *Deepwater Horizon I*, 732 F.3d at 346.
[4] Order of December 24, 2013 (Rec. Doc. 12055) ("Responding to Remand of Business Economic Loss Issues").
[5] BP's Notice of Appeal (Rec. Doc. 12066).

No. 13-30095

> The Settlement Agreement does not contemplate that the Claims Administrator will undertake additional analysis of causation issues beyond those criteria that are specifically set out in the Settlement Agreement. Both Class Counsel and BP have in response to the Claims Administrator's inquiry confirmed that this is in fact a correct statement of their intent and of the terms of the Settlement Agreement. The Claims Administrator will thus compensate eligible Business Economic Loss and Individual Economic Loss claimants for all losses payable under the terms of the Economic Loss frameworks in the Settlement Agreement, without regard to whether such losses resulted or may have resulted from a cause other than the Deepwater Horizon oil spill provided such claimants have satisfied the specific causation requirements set out in the Settlement Agreement.[6]

The record reflects that no party ever formally objected to this second Policy Announcement, and the district court adopted this Policy Announcement in an order docketed on April 9, 2013. That order was never independently appealed to this court. In the initial brief that BP filed in this appeal on August 30, 2013, BP took "no position on the relevance *vel non*" of the second Policy Announcement with respect to the lawfulness of class certification and settlement approval in this case.

BP also has never suggested that the Claims Administrator was incorrect to state that "[b]oth Class Counsel and BP have . . . confirmed that [the second Policy Announcement] is in fact a correct statement of their intent and of the terms of the Settlement Agreement." In fact, the record contains an e-mail message from Judge Barbier to a number of participants in this litigation documenting a "discussion" on December 12, 2012, during which it

---

[6] *See* Declaration of Andrew T. Karron, Ex. 19-R, at 2 (Rec. Doc. 8963-71).

6

No. 13-30095

was confirmed that "Counsel for BP and the PSC agree with the Claims Administrator's objective analysis of causation with respect to his evaluation of economic damage claims," as set forth in the second Policy Announcement.[7] The record reflects no declared objection or disagreement with the district court's e-mail. This e-mail was later cited in the district court's order adopting the Policy Announcement on April 9, 2013.

In the supplemental brief that BP filed in this appeal on October 11, 2013, however, BP argued that the lawfulness of the Settlement Agreement was equally threatened by both Policy Announcements' effects on the interpretation and application of Exhibits 4B and 4C. According to BP, both of these Policy Announcements by the Claims Administrator permit claimants without any actual injuries caused by the oil spill to participate in the class settlement and receive payments. According to BP, this result brings the class settlement into violation of Rule 23, the Rules Enabling Act, and Article III.

II.

Before we reach the questions regarding class certification and settlement approval under Rule 23, we must resolve the Article III question as a threshold matter of jurisdiction.[8] Questions of law relating to constitutional standing are reviewed *de novo*.[9] "Facts expressly or impliedly found by the district court in the course of determining jurisdiction are reviewed for clear error."[10] "An appellate court may not consider new evidence furnished for the first time on appeal and may not consider facts which were not before the

---

[7] *See id.*, Ex. 19-V (Rec. Doc. 8963-75).
[8] *Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002).
[9] *Bonds v. Tandy*, 457 F.3d 409, 411 (5th Cir. 2006).
[10] *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 721 (5th Cir. 2007).

No. 13-30095

district court at the time of the challenged ruling."[11]

The abuse-of-discretion standard governs this court's review of both the district court's certification of the class and its approval of the settlement under Rule 23.[12]  This court exercises *de novo* review as to whether the district court applied the correct legal standard.[13]  Importantly, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[14]

## III.

As explained in its supplemental brief, the crux of BP's standing argument is that Article III "preclude[s] certification of a settlement class that includes members that have suffered no injury" or "who suffered no harm caused by the *Deepwater Horizon* incident."  In BP's view, because an unidentified number of such individuals have received and may continue to receive payments under the class settlement, Article III requires this court to reverse the district court's order of December 21, 2012.

In two respects, BP is correct.  First, the elements of Article III standing do indeed include both an injury in fact and a causal connection to the defendant's conduct.[15]  Second, under the previous decisions of this circuit, both of these elements must be present as a threshold matter of jurisdiction

---

[11] *Quesada v. Napolitano*, 701 F.3d 1080, 1084 n.9 (5th Cir. 2012); *Ramchandani v. Gonzales*, 434 F.3d 337, 339 n.1 (5th Cir. 2005); *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999).

[12] *Cole*, 484 F.3d at 723; *see Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 310 (5th Cir. 2000); *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).

[13] *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 304 (5th Cir. 2009).

[14] *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).

[15] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

No. 13-30095

whenever a district court certifies a class under Rule 23.[16]

It is striking, however, that BP makes no attempt to identify a standard that we should apply to determine whether these elements are satisfied in this case. The frequent references in BP's briefs to the "vast numbers of members who suffered no Article III injury" are disconnected from any discussion of pleading requirements, competent evidence, or the standards of proof by which the parties' contentions are evaluated during different stages of litigation. In particular, BP's arguments fail to explain how this court or the district court should identify or even discern the existence of "claimants that have suffered no cognizable injury" for purposes of the standing inquiry during class certification and settlement approval.

In the following sections, therefore, we review the law governing the standard applicable to Article III questions in the specific context of Rule 23, and then turn to examine the facts of the present case. As explained below, although the relevant authorities suggest two possible approaches to Article III questions at the class certification stage, both of these approaches require us to reject BP's standing argument. Whichever test is applied, therefore, Article III does not mandate reversal in this case.

### A.

As the Supreme Court explained in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), the elements of Article III standing are constant throughout litigation: injury in fact, the injury's traceability to the defendant's conduct, and the potential for the injury to be redressed by the relief requested. As *Lujan* emphasized, however, the standard used to establish these three elements is not constant but becomes gradually stricter as the parties proceed through "the successive stages of the litigation." In *Lewis v. Casey*, 518 U.S.

---

[16] *See Cole*, 484 F.3d at 721-22; *Rivera*, 283 F.3d at 318-19.

No. 13-30095

343, 358 (1996), the Supreme Court reaffirmed this formulation:

> Since they are not mere pleading requirements, but rather an indispensable part of the plaintiff's case, each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.[17]

*Lujan* and *Lewis* provide a useful blueprint, therefore, but do not comprehensively address all conceivable stages of litigation in which Article III standing may need to be addressed. This quoted passage does not explain, in particular, how courts are to evaluate standing for the purposes of class certification and settlement approval under Rule 23.

In attempting to answer this question, courts have followed two analytical approaches. According to one approach, which has been endorsed by three Justices concurring in *Lewis*,[18] several circuits, and an influential

---

[17] *Lewis*, 518 U.S. at 358 (quoting *Lujan*, 504 U.S. at 561) (alterations and internal quotation marks omitted).

[18] *Id.* at 395-96 (Souter, J., concurring in part, dissenting in part, and concurring in the judgment; joined by Ginsburg, J., and Breyer, J.).

No. 13-30095

treatise,[19] the inquiry hinges exclusively on the Article III standing of the "named plaintiffs" or "class representatives." This test requires courts to ignore the absent class members entirely:

> Unnamed plaintiffs need not make any individual showing of standing in order to obtain relief, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court. Whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions.[20]

In the years since *Lewis*, this approach to the standing inquiry during class certification has been followed by the Seventh,[21] Ninth,[22] and Third Circuits.[23] Additionally, the Tenth Circuit has adopted this test at least in "class action[s] seeking prospective injunctive relief" and arguably also in class actions for damages as well.[24] As stated in a frequently cited decision by the Seventh

---

[19] W. RUBENSTEIN, A. CONTE & H. NEWBERG, NEWBERG ON CLASS ACTIONS § 2:3 (5TH ED. 2011) ("These passive members need not make any individual showing of standing because the standing issue focuses on whether the named plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court.").

[20] *Lewis*, 518 U.S. at 395-96 (Souter, J., concurring in part, dissenting in part, and concurring in the judgment) (alterations and internal quotation marks omitted).

[21] *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 676-78 (7th Cir. 2009).

[22] *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020-21 (9th Cir. 2011) ("On the contrary, our law keys on the representative party, not all of the class members, and has done so for many years . . . . In a class action, standing is satisfied if at least one named plaintiff meets the requirements . . . ." (internal quotation marks and citations omitted)).

[23] *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306-07 (3d Cir. 1998) ("There is also ample evidence that each named party has suffered an 'injury in fact' . . . . Thus, the named plaintiffs satisfy Article III. The absentee class members are not required to make a similar showing . . . .").

[24] *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1197-98 (10th Cir. 2010) ("First, only named plaintiffs in a class action seeking prospective injunctive relief must demonstrate

No. 13-30095

Circuit, *Kohen v. Pacific Investment Management Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009), it is "almost inevitable" that "a class will . . . include persons who have not been injured by the defendant's conduct[] . . . because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown." According to *Kohen*, however, even this "inevitability" does not preclude Article III standing during the Rule 23 stage.[25]

Other circuit decisions have not necessarily ignored absent class members. According to these decisions, courts must ensure that absent class members possess Article III standing by examining the class definition. Importantly, however, this approach does not contemplate scrutinizing or weighing any evidence of absent class members' standing or lack of standing during the Rule 23 stage. The most frequently cited formulation of this test is found in the Second Circuit's decision in *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006): "We do not require that each member of a class submit evidence of personal standing. At the same time, no class may be certified that contains members lacking Article III standing. The class must therefore be defined in such a way that anyone within it would have standing."[26] The Eighth Circuit has also applied this test,[27] as have the

---

standing by establishing they are suffering a continuing injury or are under an imminent threat of being injured in the future. . . . '[A] class will often include persons who have not been injured by the defendant's conduct. . . . Such a possibility or indeed inevitability does not preclude class certification.'" (quoting *Kohen*, 571 F.3d at 677)).

[25] *Kohen*, 571 F.3d at 677.

[26] *Denney*, 443 F.3d at 263-64 (citations omitted).

[27] *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) (citing *Denney*, 443 F.3d at 263-64).

No. 13-30095

Seventh[28] and Ninth Circuits,[29] despite both these latter circuits' statements in other decisions that absent class members are irrelevant to the Article III inquiry.[30]

If this case actually required us to do so, it might not be a simple task to choose between the *Kohen* test and the *Denney* test based on this roughly even split of circuit authority.[31]  It is also perhaps unclear whether our circuit has already adopted the *Kohen* test in *Mims v. Stewart Title Guaranty Co.*, 590 F.3d 298 (5th Cir. 2009).  Citing *Kohen*, we stated in *Mims* that "[c]lass certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct."[32]  Although this particular statement was made in the context of analyzing Rule 23 rather than Article III, we elsewhere concluded in *Mims* that "[t]here is no serious question that the plaintiffs have standing" after explicitly analyzing only "the named plaintiffs."[33]

---

[28] *Adashunas v. Negley*, 626 F.2d 600, 603 (7th Cir. 1980) ("In order to state a class action claim upon which relief can be granted, there must be alleged at the minimum (1) a reasonably defined class of plaintiffs, (2) all of whom have suffered a constitutional or statutory violation (3) inflicted by the defendants.").

[29] *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012) (citing *Denney*, 443 F.3d at 263-64).

[30] *See Kohen*, 571 F.3d at 677; *Stearns*, 655 F.3d at 1020-21.

[31] No clear guidance is provided by the Supreme Court's decision with the greatest relevance to Article III questions arising due to a class settlement, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997).  The Supreme Court implied in that case that a district court could not approve a class settlement containing class members who had not yet manifested any health problems from their past exposures to asbestos.  If these "exposure-only" plaintiffs' claims were not yet ripe, the Supreme Court suggested, then their inclusion in a class action would not be "in keeping with Article III constraints."  *Amchem*, 521 U.S. at 612-13.  The Supreme Court did not ultimately reach the ripeness question, however, because the asbestos-litigation class failed under a Rule 23 inquiry that the Supreme Court considered "logically antecedent to the existence of any Article III issues."  *Id.*  It is therefore unclear how the Supreme Court would eventually have approached its ripeness determination.

[32] *See Mims*, 590 F.3d at 308.

[33] *See id.* at 302.

13

No. 13-30095

Judge Clement's opinion in *Deepwater Horizon I*, however, did not mention *Mims*, distinguished *Kohen* on its facts, and instead applied the *Denney* test.[34] In Part II of her opinion, which Judge Southwick did not join and from which Judge Dennis dissented, Judge Clement explained that absent class members' standing is indeed relevant to jurisdiction over a class action. She also agreed with *Denney* that absent class members' standing should be evaluated based on how a class is "defined" and on whether the absent class members are "alleged" to have colorable claims.[35]  As Judge Clement emphasized several times, when an absent class member is "unable to plead the causation element," the absent class member's "non-colorable claims do not constitute Article III cases or controversies."[36]  In Judge Clement's view, if absent class members include persons who "concede" that they have no "causally related injury," then a district court lacks jurisdiction to certify the class.[37]  Judge Clement also agreed with *Denney* that Article III does not require a showing that an absent class member "can *prove* his case" at the Rule 23 stage, so long as the absent class member "can *allege* standing."[38]

This case is not a vehicle, however, for us to choose whether *Kohen* or *Denney* articulated the correct test.  Nor does this case require us to decide whether *Mims* has already adopted the *Kohen* test as a matter of Fifth Circuit law.  For the purposes of the present case, these questions are entirely

---

[34] *See Deepwater Horizon I*, 732 F.3d at 340-42, 344 & n.12 (describing the "judicial role to ensure that *class definitions* comply with statutory and constitutional strictures" (emphasis added)).

[35] *Id.* at 340-42 (quoting *Adashunas*, 626 F.2d at 603, and *Denney*, 443 F.3d at 263-64).  Judge Clement also cited frequently to Judge Jordan's dissent in *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 346 (3d Cir. 2011) (en banc) (Jordan, J., dissenting), which proposed a test that could be applied to "a class complaint requesting relief" without looking to any additional items of proof.

[36] *Deepwater Horizon I*, 732 F.3d at 340-42.

[37] *See id.* at 343.

[38] *Id.* at 340-42.

14

No. 13-30095

academic because BP's standing argument fails under both the *Kohen* test and the *Denney* test. As explained in the next section, both the named plaintiffs and the absent class members contemplated by the class definition include only persons and entities who can allege causation and injury in accordance with Article III.

## B.

Looking first to the *Kohen* test for standing, it is clear that the class action in this case survives Article III because the named plaintiffs have each alleged injury in fact, traceability to the defendant's conduct, and redressability by the relief requested.[39] The named plaintiffs set forth their allegations in the operative pleading in this case, the Amended Class Action Complaint for Private Economic Losses and Property Damages, which was filed with the district court on May 2, 2012.[40] The Amended Class Action Complaint explains that "Plaintiffs are individuals and/or entities who have suffered economic and property damages *as a result of the Deepwater Horizon Incident.*"[41] This document thereafter identifies each of the fifteen named plaintiffs individually and explains in detail how each has suffered economic damages due to the "lack of adequate supplies of seafood to process and sell," a "severe reduction in tourist-related bookings," a drop in "demand for marine tourism," "a loss on the sale of . . . residential property," and numerous other types of economic injury and property damage.[42]

Each one of these named plaintiffs satisfies the elements of standing by identifying an injury in fact that is traceable to the oil spill and susceptible to redress by an award of monetary damages. Under the *Kohen* test, that is the

---

[39] *See Kohen*, 571 F.3d at 677.

[40] *See In re Oil Spill*, 910 F. Supp. 2d at 902 (citing Amended Class Action Complaint (Rec. Doc. 6412)).

[41] Amended Class Action Complaint 6-13 (Rec. Doc. 6412) (emphasis added).

[42] *Id.*

15

No. 13-30095

end of the inquiry.  As explained in *Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007), which addressed the Article III standing of named plaintiffs during class certification under Rule 23, we found it "sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they *allege* they have suffered."[43]  At the Rule 23 stage, *Cole* provides that "a federal court must assume *arguendo* the merits of [each named plaintiff's] legal claim."[44]  Indeed, BP has never argued that any of the named plaintiffs lack Article III standing.  Accordingly, there is no question that the *Kohen* test is satisfied in this case.[45]

Applying the *Denney* test to the definition of the class proposed for certification, we come to the same conclusion.  The Class Definition is set forth in paragraph 306 of the Amended Class Action Complaint and is reproduced in its entirety in Appendix B of the district court's order.  Under the plain terms of the Class Definition, a "person or entity" is included "in the Economic Class only if their Claims meet the descriptions of one or more of the Damage Categories described" in Section 1.3.1 of the Class Definition.  Of these "Damage Categories," the only category that BP has identified as giving rise to Article III difficulties is the "Economic Damage Category" under Section 1.3.1.2.[46]  This section of the Settlement Agreement, however, explicitly limits claims to those based on "[l]oss of income, earnings or profits suffered by Natural Persons or Entities *as a result of* the DEEPWATER HORIZON INCIDENT," subject to exclusions for participants in certain industries.[47]  As contemplated by the Class Definition, therefore, the class contains only

---

[43] *Cole*, 484 F.3d at 723 (emphasis added).
[44] *Id.* (quoting *Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007) (internal quotation marks omitted)).
[45] *See Kohen*, 571 F.3d at 677.
[46] *See In re Oil Spill*, 910 F. Supp. 2d at 965-67.
[47] *Id.* (emphasis added).

No. 13-30095

persons and entities that possess Article III standing.

Even if the "definition" of the class were interpreted for the purposes of the *Denney* test to include the entire Amended Class Action Complaint, rather than just the provisions set forth in paragraph 306, the result would be no different. The Amended Class Action Complaint includes numerous allegations of injuries to the absent class members caused by the oil spill. For example, the sections of the Amended Class Action Complaint directed toward the satisfaction of the Rule 23(a) requirements for numerosity, commonality, and typicality each emphasize causation and actual damages with respect to each member of the class:

> The Class consists of tens of thousands of individuals and businesses that have been economically damaged by the spill . . . . Each Class member's claim arises from the same course of planning, decisions, and events, and each Class member will make similar legal and factual arguments to prove Defendants' outrageous, willful, reckless, wanton, and deplorable conduct and liability . . . . The claims in this Second Amended Master Class Action Complaint are typical of the claims of the E&PD Class in that they represent the various types of non-governmental economic losses and property damage caused by the Deepwater Horizon Incident.[48]

Accordingly, using Judge Clement's formulation of the standard, the class in this case does not include any members who "concede" that they lack any "causally related injury."[49] This ends the Article III inquiry under the *Denney* test, which does "not require that each member of a class submit evidence of personal standing"[50] so long as every class member contemplated by the class

---

[48] Amended Class Action Complaint 108-10 (Rec. Doc. 6412).
[49] *Deepwater Horizon I*, 732 F.3d at 343.
[50] *Denney*, 443 F.3d at 263.

17

No. 13-30095

definition "can *allege* standing."[51]

Our decision in *Cole* confirms that "it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they *allege* they have suffered" because for each class member we "must assume *arguendo* the merits of his or her legal claim" at the Rule 23 stage.[52] Although *Cole* addressed the standing of named plaintiffs rather than absent class members, it would make no sense to apply a higher evidentiary standard to absent class members than to named plaintiffs. We also stated in *In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012), that even the absent class members are "linked" under Rule 23 to the "common complaint, and the possibility that some may fail to prevail on their individual claims will not defeat class membership." Whether the *Kohen* test or the *Denney* test is applied, therefore, we find that Article III and the Rules Enabling Act[53] are satisfied in this case.

---

[51] *Deepwater Horizon I*, 732 F.3d at 340-42.

[52] *Cole*, 484 F.3d at 721-23 (emphasis added) (quoting *Parker*, 478 F.3d at 377 (internal quotation marks omitted)).

[53] Under the Rules Enabling Act, 28 U.S.C. § 2072(b), "[t]he Federal Rules of Civil Procedure cannot work as substantive law." *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011). In this case, the substantive law is neither Rule 23 nor any other Federal Rule of Civil Procedure, but the OPA and federal maritime law, under which the named plaintiffs raised a variety of different claims in the Amended Class Action Complaint. Despite making several references to the Rules Enabling Act in their supplemental briefs, neither BP nor the Objectors have contested this basic point. The Rules Enabling Act therefore is not violated. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406-08 (2010) (plurality opinion) ("A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged."); *id.* at 431-36 (Stevens, J., concurring in part and concurring in the judgment) (agreeing that Rule 23 does not violate the Rules Enabling Act so long as no substantive state law is displaced in a diversity case); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 312-13 (3d Cir. 2011) (en banc) (concluding that a district court's "approval of the parties' settlement should not be considered a recognition or expansion of substantive rights" under the Rules Enabling Act).

No. 13-30095

C.

In concluding this analysis, we note the possibility that the application of a stricter evidentiary standard might reveal persons or entities who have received payments under Exhibits 4B and 4C and yet have suffered no loss resulting from the oil spill. But courts are not authorized to apply such a standard for this purpose at the Rule 23 stage. Under *Lujan* and *Lewis*, of course, this is precisely what the district judge must do at summary judgment and what the finder of fact must do at trial.[54] Without ever saying so explicitly, BP implies that we should also resolve Article III questions at the Rule 23 stage by looking to evidence of certain prospective claimants' standing. That is, BP cites to items of evidence—in particular, a series of declarations by economists, Henry H. Fishkind, A. Mitchell Polinsky, J. Richard Dietrich, and Hal Sider. These economists' declarations, in BP's view, demonstrate that the Claims Administrator has awarded payments under his interpretations of Exhibits 4B and 4C to persons and entities that likely were not injured by the *Deepwater Horizon* incident. It is unclear from BP's submissions during this appeal whether BP asks us to evaluate this proof by applying a summary-judgment standard or a preponderance-of-the-evidence standard. Ultimately, we can do neither in this case.

With respect to the evidence cited by BP regarding these claimant's standing, we emphasize two points. First, and most obviously, none of this evidence was ever considered by the district court prior to December 21, 2012, the date when the district court certified the class and approved the settlement.[55] The cited versions of these economists' declarations were filed

---

[54] *Lewis v. Casey*, 518 U.S. at 358 (citing *Lujan*, 504 U.S. at 560-61).

[55] The record contains an e-mail message from Judge Barbier documenting a "discussion" on December 12, 2012, during which it was confirmed that "Counsel for BP and

No. 13-30095

with the district court on March 20, 2013, and none of them is dated earlier than January 15, 2013. Even though standing is a jurisdictional matter, any "facts expressly or impliedly found by the district court" in the course of "making its jurisdictional findings" must be accepted on appeal unless they are clearly erroneous.[56]   Additionally, under the settled law of this circuit, "an appellate court may not consider new evidence furnished for the first time on appeal and may not consider facts which were not before the district court at the time of the challenged ruling."[57]   We therefore cannot consider the economists' declarations cited by BP or draw any conclusions from them.

Second, BP has cited no authority—and we are aware of none—that would permit an evidentiary inquiry into the Article III standing of absent class members during class certification and settlement approval under Rule 23. It is true that a district court may "probe behind the pleadings" when examining whether a specific case meets the requirements of Rule 23, such as numerosity, commonality, typicality, and adequacy.[58] But the Supreme Court cautioned in *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013), that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may

---

the PSC agree with the Claims Administrator's objective analysis of causation with respect to his evaluation of economic damage claims," as set forth in the second Policy Announcement. *See* Declaration of Andrew T. Karron, Ex. 19-V (Rec. Doc. 8963-75). But no party has suggested that any of the expert declarations that have been presented to this court were considered by Judge Barbier either during this "discussion" or at any time previously. In fact, given that BP and the named plaintiffs were both still in agreement with the Claims Administrator on that date, it seems more likely that the expert declarations were not shared with Judge Barbier.

[56] *Cole*, 484 F.3d at 721; *Pederson v. La. State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000).

[57] *Quesada*, 701 F.3d at 1084 n.9; *Ramchandani*, 434 F.3d at 339 n.1; *Theriot*, 185 F.3d at 491 n.26.

[58] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

No. 13-30095

be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."

Relevant circuit authority confirms the inappropriateness of reviewing evidence of absent class members' standing at the Rule 23 stage. *Mims* and *Kohen* suggest that such evidence is simply irrelevant, inasmuch as "[c]lass certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct."[59] *Denney* and Judge Clement's opinion in *Deepwater Horizon I*, for their part, also "do not require that each member of a class submit evidence of personal standing"[60] so long as the class is defined so that every absent class member "can *allege* standing."[61] Our older decision in *Cole* confirms that it would be improper to look for proof of injuries beyond what the claimants identified in the class definition can "*allege* they have suffered" at this stage.[62] Despite BP's urging, therefore, even a district court could not consider the evidence regarding absent class members' standing at the Rule 23 stage.

Of course, had the class in this case been certified under Rule 23 for further proceedings on the merits rather than for settlement, the district court might ultimately have had occasion to apply a stricter evidentiary standard. As the district court said explicitly, "certain causation issues . . . would have to be decided on an individual basis were the cases not being settled," including "for example, the extent to which the *Deepwater Horizon* incident versus other

---

[59] *See Mims*, 590 F.3d at 302, 308.

[60] *Denney*, 443 F.3d at 263-64.

[61] *Deepwater Horizon I*, 732 F.3d at 340-42.

[62] *See Cole*, 484 F.3d at 721-23 (emphasis added) (quoting *Parker*, 478 F.3d at 377 (internal quotation marks omitted)).

No. 13-30095

factors caused a decline in the income of an individual or business."[63]  As early as October 6, 2010, the district court anticipated that "issues relating to damages" could and would be "severed and tried separately" from other issues relating to liability,[64] in accordance with this court's previous case law[65] and Rule 23(c)(4).[66]  In its submissions to the district court, BP also contemplated the possibility of "a trial of an economic damage test case" and "presentations of proof and comparative responsibility."[67]  Such proceedings would have provided opportunities for BP to inquire more deeply into individual claimants' evidence of Article III standing under the applicable evidentiary standards described in *Lujan* and *Lewis*.[68]  In the absence of any motion for summary judgment or trial predicated upon the Article III standing of those absent class members, however, it would be premature and improper for a court to apply evidentiary standards corresponding to those later stages of litigation.

Indeed, it would make no practical sense for a court to require evidence of a party's claims when the parties themselves seek settlement under Rule 23(e).  Logically, requiring absent class members to prove their claims prior to settlement under Rule 23(e) would eliminate class settlement because there would be no need to settle a claim that was already proven.  Such a rule would

---

[63] *In re Oil Spill*, 910 F. Supp. 2d at 924.

[64] Scheduling Order of October 6, 2010, at 3 (Rec. Doc. 473).

[65] This court has previously "approved mass tort or mass accident class actions when the district court was able to rely on a manageable trial plan—including bifurcation" of "class-wide liability issues" and issues of individual damages.  *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006) (analyzing *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1017-18, 1024 & n.9 (5th Cir. 1992)).

[66] *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed.").

[67] Defs.' Memorandum of October 6, 2010, at 6, 8 (Rec. Doc. 488).

[68] *Lewis*, 518 U.S. at 358 (citing *Lujan*, 504 U.S. at 560-61).

22

No. 13-30095

thwart the "overriding public interest in favor of settlement" that we have recognized "[p]articularly in class action suits."[69]   The legitimacy of class settlements is reflected not only in Rule 23(e) but also in the special regime that Congress has created to govern class settlements under 28 U.S.C. §§ 1711-15.   Through the procedural mechanism of a class settlement, defendants "are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless, provided that the class is properly certified under Rules 23(a) and (b) and the settlement is fair under Rule 23(e)."[70]   By entering into class-wide settlements, defendants "obtain[] releases from all those who might wish to assert claims, meritorious or not" and protect themselves from even those "plaintiffs with non-viable claims [who] do nonetheless commence legal action."[71]

This is certainly not to say, on the other hand, that the Claims Administrator must afford the same deference to the absent class members' allegations that we apply when addressing Article III issues at the Rule 23 stage.   Naturally, the Claims Administrator is not bound to apply the *Denney* test or the *Kohen* test but must follow whatever instructions are set forth in Exhibit 4B, Exhibit 4C, and the other provisions of the parties' detailed Settlement Agreement.   In his concurrence to *Deepwater Horizon I*, Judge Southwick succinctly observed that Exhibits 4B and 4C created an evidentiary framework intended to "simplif[y] the claims process by making proof of loss a

---

[69] *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir. 2004) (acknowledging the "strong judicial policy favoring the resolution of disputes through settlement" and affirming both class certification and settlement approval (internal citation and quotation marks omitted)).

[70] *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 243-44 (2d Cir. 2012).

[71] *Sullivan*, 667 F.3d at 310.

No. 13-30095

substitute for proof of factual causation."[72]  The parties now vigorously dispute how this evidentiary framework was intended to work.  For its part, BP has argued in its subsequent submissions to the *Deepwater Horizon I* panel that "the Claims Administrator must make a threshold determination whether the claimant has suffered loss as a result of the spill" and that under footnote 1 of Exhibit 4B this "threshold determination must be made *before* applying the causation criteria outlined in Exhibit 4B."   The named plaintiffs hold a different view.

The evidentiary standard to be applied by the Claims Administrator, however, is not a matter of Article III standing.  It is a question of interpreting the Settlement Agreement and applying it to each individual claim, and we are not called upon to address those issues in this appeal.

IV.

We turn now to examine the Rule 23 arguments raised by BP, the Allpar Objectors, the Cobb Objectors, and the BCA Objectors.  In addressing Rule 23, BP and the Allpar Objectors have made nearly identical arguments.  They challenge class certification and settlement approval under a variety of provisions of Rule 23 based on the same central premise discussed above in the context of Article III—that a class cannot be certified when it includes persons who have not actually been injured.  The Cobb Objectors also expressly adopt BP's arguments by reference and add only a single additional argument.  According to the Cobb Objectors, the named plaintiffs did not adequately represent the class under Rule 23(a)(4) because there were no subclasses formed to represent residents of different states, particularly residents of Texas, and no subclass formed to represent those potential claimants who

---

[72] *Deepwater Horizon I*, 732 F.3d at 346 (Southwick, J., concurring in Parts I and III of the majority opinion).

No. 13-30095

would have been "better off under the GCCF claims process." As explained below, the objections of the Allpar Objectors, the Cobb Objectors, and BP have no merit.

For their part, the BCA Objectors—who refer to themselves in this way because they are represented by Brent Coon & Associates—were among the 12,970 objectors who "failed to comply with the requirements of the Preliminary Approval Order in that they failed to provide written proof of class membership and, therefore, forfeited and waived their objections."[73] The district court's Preliminary Approval Order provided that any class member who wished to object to the Settlement Agreement must do so in writing by August 31, 2012, and include "written proof of class membership" with his or her objection, "such as proof of residency, ownership of property and the location thereof, and/or business operation and the location thereof."[74] As the record shows, the BCA Objectors' objection was filed timely but was incomplete. This submission included thousands of claimants' names listed in a chart spanning more than 150 pages but lacked even a single claimant's proof of residency, property ownership, or business operation.[75]

On November 7, 2012, the night before the fairness hearing and two months after the deadline for filing written objections, the BCA Objectors filed a Motion for Leave to File Reply Memorandum Late and in Excess of Ordinary

---

[73] See In re Oil Spill, 910 F. Supp. 2d at 936 (citing Report on Objections to and Opt-Outs from the Economic and Property Damages Settlement as Amended on May 2, 2012 (Rec. Doc. 8001)).

[74] Id. at 935-36 (internal quotation marks omitted).

[75] See id. (citing Report on Objections to and Opt-Outs from the Economic and Property Damages Settlement as Amended on May 2, 2012 (Rec. Doc. 8001)); see also Report on Objections to and Opt-Outs from the Economic and Property Damages Settlement as Amended on May 2, 2012, Ex. L, at 3-538 (Rec. Doc. 8001-18) (identifying each one of the 11,245 objectors represented by Brent Coon & Associates as lacking "Standing Proof"); Plaintiffs Represented by Brent Coon & Associates' Motion in Opposition and Objections to the Economic Class Settlement, Ex. 1 (Rec. Doc. 7224-2).

No. 13-30095

Page Limitations. On November 8, 2012—the morning of the fairness hearing—the district court issued an order striking this filing for untimeliness. The result of this, according to the district court's order of December 21, 2012, was that the BCA Objectors' challenges to class certification and settlement approval were therefore forfeited and waived. In the notice of appeal filed with this court, the BCA Objectors have once again appended a lengthy list including thousands of names listed alphabetically on a chart, but no written proof of residency, property ownership, or business operation.

The district court's instruction to provide proof of class membership was a legitimate exercise of its discretion under Rule 23(d)(1)(A) and Rule 23(d)(1)(C) to "issue orders that[] . . . determine the course of proceedings" and "impose conditions . . . on intervenors" in a class action. As the Supreme Court recognized in *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), a district court presiding over a class action "has both the duty and the broad authority" to enter such orders to minimize "the potential for abuse" during such proceedings.[76] Although a district court's discretion under Rule 23(d) is "not unlimited,"[77] the district court plainly acted within its discretion in finding that the BCA Objectors forfeited and waived their objections by disobeying the reasonable requirements of the Preliminary Approval Order. Moreover, in an unpublished case with equivalent facts, *Feder v. Electronic Data Systems Corp.*, 248 F. App'x 579, 580 (5th Cir. 2007), we dismissed an appeal from a district court's order on class certification and settlement approval based on

---

[76] *Gulf Oil Co.*, 452 U.S. at 100; *see also Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 353 (6th Cir. 2009) ("Rule 23 gives the district court broad discretion in handling class actions, authorizing 'orders that . . . impose conditions on the representative parties or on intervenors.'") (alteration in original); *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 759 (7th Cir. 2000).

[77] *Gulf Oil Co.*, 452 U.S. at 100.

No. 13-30095

the objector's failure to "prove his membership in the class" in accordance with the district court's reasonable documentation requirements. We see no meaningful difference between the present case and the facts of *Feder*. As we explained in *Feder*, "the right to object to settlement in a . . . class action must rest on something more than the sort of bare assertions" now offered by the BCA Objectors.[78]

Accordingly, because the BCA Objectors did not substantiate their membership in this class, the district court did not abuse its discretion under Rule 23(d)(1)(A) and Rule 23(d)(1)(C) in finding that the BCA Objectors "forfeited and waived" their objections to the class certification and settlement approval.[79] We therefore will not consider the merits of their objections.

In the remaining sections, we address the arguments raised by BP, the Allpar Objectors, and the Cobb Objectors in relation to the individual provisions of Rule 23.

## A.

BP, the Allpar Objectors, and (by reference) the Cobb Objectors have all challenged certification of the class under Rule 23(a)(2), which requires a demonstration that "there are questions of law or fact common to the class." These arguments rest entirely on a selective quotation from *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), and must be rejected. As the Supreme Court stated in *Wal-Mart*, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"[80] Based on this single sentence, it is now suggested that either the diversity of the class members'

---

[78] *See Feder*, 248 F. App'x at 581; *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (holding that objectors had standing to object specifically because they had "complied" with the requirements of the settlement notice).

[79] *See In re Oil Spill*, 910 F. Supp. 2d at 936.

[80] *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

No. 13-30095

economic injuries or the inclusion of members who "have suffered no injury at all" might preclude class certification.

When quoted in its entirety, however, the relevant passage from *Wal-Mart* demonstrates why both of these arguments are meritless:

> Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.[81]

As this passage shows, the Supreme Court's use of the phrase, "the same injury," in *Wal-Mart* (and decades previously in *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)) does not support BP's argument. To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims. But this contention need not relate specifically to the damages component of the class members' claims. Even an instance of

---

[81] *Wal-Mart*, 131 S. Ct. at 2551 (citation omitted) (quoting *Falcon*, 457 U.S. at 157).

No. 13-30095

injurious conduct, which would usually relate more directly to the defendant's liability than to the claimant's damages, may constitute "the same injury." This is confirmed by the example given by the Supreme Court in the above passage from *Wal-Mart*, "discriminatory bias on the part of the same supervisor," which is itself not a type of damages, but an instance of injurious conduct that violates Title VII. Later in the same decision, the Supreme Court stated that another type of injurious conduct on the part of the defendant, "a companywide discriminatory pay and promotion policy," would also have satisfied the "same injury" test for commonality under Rule 23(a)(2).[82]

Accordingly, as these two examples from *Wal-Mart* demonstrate, the legal requirement that class members have all "suffered the same injury" can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse. This aspect of the law is therefore unchanged since our decision in *Bertulli v. Independent Association of Continental Pilots*, 242 F.3d 290, 298 (5th Cir. 2001), in which we upheld certification of a class action because "virtually every issue prior to damages [wa]s a common issue." As we indicated in *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012), the principal requirement of *Wal-Mart* is merely a single common contention that enables the class action "to generate common *answers* apt to drive the resolution of the litigation." These "common answers" may indeed relate to the injurious effects experienced by the class members, but they may also relate to the defendant's injurious conduct. "[E]ven a single common question will do."[83]

The above passage from *Wal-Mart* also demonstrates that district courts do not err by failing to ascertain at the Rule 23 stage whether the class

---

[82] *Id.* at 2556.
[83] *Id.* (alterations and internal quotation marks omitted).

No. 13-30095

members include persons and entities who have suffered "no injury at all." As the Supreme Court explained, a "contention" regarding the class members' injury is sufficient to satisfy Rule 23, so long as the party seeking certification can show that this contention is "common" to all the class members, is "central" to the validity of their claims, and is "capable" of classwide resolution. There is no need to resolve the merits of the common contention at the Rule 23 stage or to attempt prematurely the "determination of its truth or falsity."[84] Although Rule 23 "does not set forth a mere pleading standard" and a court may need to "probe behind the pleadings before coming to rest on the certification,"[85] Rule 23 does not therefore become a dress rehearsal for the merits.[86]   As the Supreme Court repeated last term in *Amgen*, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[87]   In other words, to satisfy the commonality requirement under Rule 23(a)(2), the parties may potentially need to provide evidence to demonstrate that a particular contention is common, but not that it is correct.

The district court's certification of this class, therefore, did not violate Rule 23(a)(2).  After reviewing expert evidence, the district court found that numerous factual and legal issues were central to the validity of all the class members' claims. These included "[w]hether BP had a valid superseding cause defense," "[w]hether BP used an improper well design that unreasonably heightened the risk," "[w]hether the cement mixture was unstable, and, if so, whether BP should have prevented its use," "[w]hether BP took appropriate

---

[84] *See id.* at 2551.
[85] *See id.* (quoting *Falcon*, 457 U.S. at 160).
[86] *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013); *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012).
[87] *Amgen*, 133 S. Ct. at 1195.

No. 13-30095

and timely steps to stop the release of hydrocarbons from the well," "whether these decisions (individually or collectively) constitute negligence, gross negligence, or willful misconduct," "[w]hether BP is a responsible party under OPA," "[w]hether BP could limit its liability under § 2704 of OPA," "[w]hether punitive damages are available as a matter of law," and whether BP "failed to mitigate the damages of the class."[88] Neither BP nor the remaining Objectors find fault with any of the items on the district court's long list of common issues. Because "even a single common question will do" under *Wal-Mart*, this list was more than sufficient.[89]

Accordingly, the commonality arguments raised by BP, the Allpar Objectors, and the Cobb Objectors do not require decertification of the class. Although all of the factual and legal questions identified by the district court are more closely related to BP's injurious conduct than to the injurious effects experienced by the class members, they nonetheless demonstrate that the class members claim to have suffered the "same injury" in the sense that *Wal-Mart* used this phrase.[90] Additionally, the district court did not err by failing to determine whether the class contained individuals who have not actually suffered any injury, because this would have amounted to a determination of the truth or falsity of the parties' contentions, rather than an evaluation of those contentions' commonality. This was not required by *Wal-Mart*, and was expressly ruled out in *Amgen*.[91] We therefore reject the challenges raised by BP, the Allpar Objectors, and the Cobb Objectors under Rule 23(a)(2).[92]

---

[88] *In re Oil Spill*, 910 F. Supp. 2d at 922-23.

[89] *See Wal-Mart*, 131 S. Ct. at 2556 (alterations and internal quotation marks omitted).

[90] *Id.* at 2551 (quoting *Falcon*, 457 U.S. at 157).

[91] *Amgen*, 133 S. Ct. at 1194-95.

[92] In a one-sentence footnote in its initial brief, BP adds that "the claims of the representative parties are no longer typical of the claims of the class" in light of the Claims Administrator's interpretations and directs our attention to the Supreme Court's statement

No. 13-30095

## B.

BP and the Objectors also challenge class certification and settlement approval under Rule 23(a)(4), which requires a demonstration that "the representative parties will fairly and adequately protect the interests of the class." According to this argument, an impermissible "intraclass conflict" is created by the Claims Administrator's interpretation of Exhibits 4B and 4C because the claimants now include some persons and entities that have suffered injuries, and other persons and entities that allegedly have not. As it has been interpreted, BP argues, the Settlement Agreement "would almost necessarily make injured members worse off than they might have been had non-injured members been excluded from the class." According to BP, had the injured class members been represented by named plaintiffs negotiating exclusively on their behalf, they could have used their increased bargaining power during settlement negotiations to demand a more favorable formula for awarding payments.

The district court must be upheld, however, unless its decision constituted an abuse of discretion. In this case, the district court found that the named plaintiffs were "clearly adequate" to protect the interests of the class as they included "individuals and businesses asserting each category of loss"

---

that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *See Wal-Mart*, 131 S. Ct. at 2551 n.5 (alteration in original) (internal quotation marks omitted). The Allpar Objectors also have not differentiated in any way between their commonality argument under Rule 23(a)(2) and their typicality argument under Rule 23(a)(3). To the extent that the references to "typicality" by BP and the Allpar Objectors constitute a separate argument under Rule 23(a)(3), that argument is rejected. For the same reasons given with respect to their commonality argument, neither BP nor the Allpar Objectors have demonstrated that the district court abused its discretion in finding that "[t]ypicality is satisfied here, as the class representatives—like all class members—allege economic and/or property damage stemming directly from the *Deepwater Horizon* spill." *In re Oil Spill*, 910 F. Supp. 2d at 915.

No. 13-30095

and were assisted by adequate counsel.[93]  After reviewing declarations by each of the named plaintiffs, the district court found that they had "participated in the settlement negotiations" and taken "an active role in the prosecution of this class action."[94]  After reviewing expert testimony, the district court also found that the class action was structured to assure adequate representation of all interests within the class and to prevent intraclass conflict.  Finally, the district court concluded that the "uncapped compensation" available under the Settlement Agreement would "ensure that a benefit paid to one member of the class will in no way reduce or interfere with a benefit obtained by another member."[95]

Although BP made no objection to the district court's order certifying the class and approving the Settlement Agreement, BP asks this court to find an intraclass conflict of interest because the claimants allegedly include persons and entities that have suffered no injury.  In support of this allegation, BP presents us with a series of economists' declarations that had not been provided to the district court when the class was certified.  But our previous decisions prevent us from considering this evidence for the first time on appeal.[96]  Moreover, even if we were to accept BP's contention that the class does include uninjured persons, *Mims* and *Rodriguez* would foreclose decertification of the class on this basis.  As we stated in *Mims* in the context of the Rule 23 requirements, "[c]lass certification is not precluded simply because a class may include persons who have not been injured by the

---

[93] *In re Oil Spill*, 910 F. Supp. 2d at 916-17.

[94] *Id.* at 916 (quoting *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 325 (N.D. Tex. 2011)).

[95] *Id.* at 918.

[96] *Quesada*, 701 F.3d at 1084 n.9; *Ramchandani*, 434 F.3d at 339 n.1; *Theriot*, 185 F.3d at 491 n.26.

33

No. 13-30095

defendant's conduct."[97]  As we stated in *Rodriguez*, "the possibility that some [absent class members] may fail to prevail on their individual claims will not defeat class membership."[98]

By contrast, we can consider the argument that the Cobb Objectors have raised under Rule 23(a)(4), which was passed upon by the district court.  The Cobb Objectors argue that "class members from Texas, Louisiana, Alabama, Florida and Mississippi" should have been divided into their own subclasses, as should those class members who "were better off under the GCCF claims process."

Although the creation of subclasses is sometimes necessary under Rule 23(a)(4) to avoid a "fundamental conflict," there is no need to create subclasses to accommodate every instance of "differently weighted interests."[99]  In this case, because the class members' claims arise under federal law rather than state law, we are not persuaded that there is any fundamental conflict between the "differently weighted interests" of class members from different geographical regions.  Although geographical criteria were indeed incorporated into the Settlement Agreement, the reason for this is both obvious and acknowledged in the Cobb Objectors' brief.  That is, "causation becomes more

---

[97] *Mims*, 590 F.3d at 308.

[98] *Rodriguez*, 695 F.3d at 370 (internal quotation marks omitted).

[99] *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 186 (3d Cir. 2012) (quoting *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 429 (6th Cir. 2012)); *see also In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011); *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) ("For a conflict of interest to defeat the adequacy requirement, that conflict must be fundamental." (internal quotation marks omitted)); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009) ("An absence of *material* conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy . . . ." (emphasis added)); *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) ("Significantly, the existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy.").

difficult" for a claimant to establish "the further one moves from the coast" and, in particular, the further one moves from the Macondo reservoir where the *Deepwater Horizon* incident occurred.

As the district court expressly found, the differences between the formulas applicable in the different geographic zones were "rationally related to the relative strengths and merits of similarly situated claims."[100]   The identification of objective, geographically-based criteria therefore easily distinguishes this case from *In re Katrina Canal Breaches Litigation*, 628 F.3d 185, 194 (5th Cir. 2010), in which the district court improperly approved a class settlement that sought simply to "punt[] the difficult question of equitable distribution from the court to the special master, without providing any more clarity as to how fairness will be achieved."   The district court's rigorous consideration of the expert evidence demonstrates that it did not abuse its discretion in declining to require subclasses for claimants based in Texas, Louisiana, Alabama, Florida, and Mississippi.

We also must reject the Cobb Objectors' argument that an intraclass conflict exists between class members who were "better off under the GCCF claims process" and those who were not.   Most critically, the Cobb Objectors have failed to provide any details about the cause of these claimants' current disadvantage.  In their brief, the Cobb Objectors repeat several times that some number of claimants are now "forced to meet arbitrary loss and recovery benchmarks" under the Settlement Agreement, whereas these same claimants apparently could have recovered under the GCCF without doing so.   After considering substantial expert testimony, however, the district court found explicitly that the Settlement Agreement's compensation criteria were not

---

[100] *See In re Oil Spill*, 910 F. Supp. 2d at 917-18.

No. 13-30095

arbitrary, but "detailed" and "objective."[101]   Nothing in the Cobb Objectors' arguments demonstrates that the district court's conclusions on this question constituted an abuse of discretion.   Finally, even if some claimants were practically disadvantaged by the procedures of the court-administered claims process in comparison to the procedures of the GCCF, this mechanical discrepancy is only another example of "differently weighted interests" rather than a "fundamental conflict" of interests.[102]   As the Sixth and Third Circuits have held, "each class member naturally derives different amounts of utility from any class-wide settlement" based on his or her unique circumstances, but this does not put all such class members in fundamental conflict with one another.[103]   Without a more detailed description of the disadvantage experienced by the group that was supposedly "better off" under the GCCF, we cannot agree with the Cobb Objectors that the district court's certification of this class was an abuse of discretion.

### C.

BP and the Objectors also argue that class certification was improper under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members."   According to BP and the Objectors, the Supreme Court's recent decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013)—which was decided three months after the district court certified the class—precludes certification under Rule 23(b)(3) in any case where the class members' damages are not susceptible to a formula for classwide measurement.

This is a misreading of *Comcast*, however, which has already been

---

[101] *Id.*
[102] *Dewey*, 681 F.3d at 186 (quoting *Gooch*, 672 F.3d at 429).
[103] *See id.*

36

No. 13-30095

rejected by three other circuits.[104]   As explained in greater detail below, *Comcast* held that a district court errs by premising its Rule 23(b)(3) decision on a formula for classwide measurement of damages whenever the damages measured by that formula are incompatible with the class action's theory of liability.  As the court explained, "[t]he first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event."[105]  This rule may reveal an important defect in many formulas for classwide measurement of damages.   But nothing in *Comcast* mandates a formula for classwide measurement of damages in all cases.  Even after *Comcast*, therefore, this holding has no impact on cases such as the present one, in which predominance was based not on common issues of damages but on the numerous common issues of liability.  In the present case, the district court did not include a formula for classwide measurement of damages among its extensive listing of the "common issues" that weighed in favor of certification.  The district court always recognized that the class members' damages "would have to be decided on an individual basis were the cases not being settled," as would "the extent to which the *Deepwater Horizon* incident versus other factors caused a decline in the income of an individual or business."[106]  The holding of *Comcast* cited by BP and the Objectors, therefore, is simply inapplicable here.

As recalled above, the district court set forth a considerable list of issues that were common to all the class members' claims.  Nearly all of these issues related to either the complicated factual questions surrounding BP's involvement in the well design, explosion, discharge of oil, and cleanup efforts

---

[104] *See Butler*, 727 F.3d at 800; *In re Whirlpool Corp.*, 722 F.3d at 860; *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).
[105] *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1435 (2013) (quoting FED. JUDICIAL CTR., REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 432 (3D ED. 2011) (emphasis omitted)).
[106] *In re Oil Spill*, 910 F. Supp. 2d at 924.

No. 13-30095

or the uncertain legal questions surrounding interpretation and application of the OPA. Accordingly, BP and the Objectors are quite correct to suggest that, although the analysis of BP's injurious conduct gives rise to numerous common questions, the class members' damage calculations give rise primarily to individual questions that are not capable of classwide resolution.

But this is not fatal to class certification. As we stated in *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003), "[e]ven wide disparity among class members as to the amount of damages" does not preclude class certification "and courts, therefore, have certified classes even in light of the need for individualized calculations of damages." Accordingly, as we recognized in *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006), it is indeed "possible to satisfy the predominance . . . requirements of Rule 23(b)(3) in a mass tort or mass accident class action" despite the particular need in such cases for individualized damages calculations. On this basis, therefore, we have previously affirmed class certification in mass accident cases,[107] as in other cases in which "virtually every issue prior to damages is a common issue."[108]

In particular, as we explained in *Madison v. Chalmette Refining, L.L.C.*, 637 F.3d 551, 556 (5th Cir. 2011), predominance may be ensured in a mass accident case when a district court performs a sufficiently "rigorous analysis" of the means by which common and individual issues will be divided and tried. In many circuits, this has been accomplished by means of multi-phase trials under Rule 23(c)(4), which permits district courts to limit class treatment to

---

[107] *See Steering Comm.*, 461 F.3d at 603 (analyzing *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1022-23 (5th Cir. 1992)).

[108] *Bertulli*, 242 F.3d at 298.

No. 13-30095

"particular issues" and reserve other issues for individual determination.[109] Accordingly, *Chalmette Refining* instructed district courts to consider rigorously how they plan to "adjudicate common class issues in the first phase and then later adjudicate individualized issues in other phases" of the multi-phase trial before the final decision is made to certify a class.[110]

Heeding our instruction in *Chalmette Refining*, therefore, the district court planned "to manage such litigation by breaking it down into separate phases, as the [district court] was prepared to do prior to the parties' reaching a settlement."[111] From the beginning of the litigation, the district court had anticipated that "issues relating to damages" would be "severed and tried separately" from other issues relating to liability.[112] The initial phases of this litigation would therefore have focused on common questions, including which defendants bore responsibility for the well blowout, how much oil escaped from the Macondo reservoir, who bore responsibility for the inability of the defendants to contain the flow earlier, where the oil finally came to rest, and how the efforts to disperse the oil were conducted.[113] "[A]bsent the Settlement," the district court would then have been obliged to determine in later phases how "responsible party status would translate into compensation" under the OPA.[114]

The district court was well aware, therefore, that the class members' damages "would have to be decided on an individual basis were the cases not being settled," as would "the extent to which the *Deepwater Horizon* incident

---

[109] *Butler*, 727 F.3d at 800; *In re Whirlpool Corp.*, 722 F.3d at 860; *Leyva*, 716 F.3d at 514.

[110] *Chalmette Ref.*, 637 F.3d at 556.

[111] *In re Oil Spill*, 910 F. Supp. 2d at 932.

[112] Scheduling Order of October 6, 2010, at 3 (Rec. Doc. 473).

[113] *In re Oil Spill*, 910 F. Supp. 2d at 921-23.

[114] *Id.* at 924.

No. 13-30095

versus other factors caused a decline in the income of an individual or business."[115]   Accordingly, the district court did not list the calculation of the claimants' damages either in its list of "common questions of fact" or in its list of "common questions of law."[116]   But even without a common means of measuring damages, in the district court's view, these common issues nonetheless predominated over the issues unique to individual claimants.  As the district court explained, "[t]he phased trial structure selected by the Court prior to the parties' arrival at a settlement agreement reflected the central importance of common issues to this case."[117]

In rendering this conclusion, the district court did not abuse its discretion.  The phased trial of common issues in this case would undoubtedly prevent the repetitious re-litigation of these common issues by each individual claimant in thousands of separate lawsuits.  In accordance with our directive in *Chalmette Refining*, the district court also rigorously analyzed how it would adjudicate "common class issues in the first phase" and "individualized issues in other phases."[118]  As required by *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997), this class action would indeed "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  This class action therefore satisfies Rule 23(b)(3).

This analysis is not changed by the Supreme Court's recent decision in *Comcast*.  BP and the Objectors suggest that, three months after the district court certified the class and approved the settlement, *Comcast* brought about a revolution in the application of Rule 23(b)(3).  According to this argument,

---

[115] *Id.*
[116] *Id.* at 921-23.
[117] *Id.* at 921.
[118] *See Chalmette Ref.*, 637 F.3d at 556.

No. 13-30095

*Comcast* declared "that certification under Rule 23(b)(3) requires a reliable, common methodology for measuring classwide damages." This reading is a significant distortion of *Comcast*, and has already been considered and rejected by the Seventh Circuit, the Sixth Circuit, and the Ninth Circuit in the months since *Comcast* was decided.[119]

The principal holding of *Comcast* was that a "model purporting to serve as evidence of damages . . . must measure only those damages attributable to th[e] theory" of liability on which the class action is premised.[120] "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."[121]   In this case, however, the district court's inquiry into predominance was never premised on such a formula.  As our three fellow circuits have already concluded, we agree that the rule of *Comcast* is largely irrelevant "[w]here determinations on liability and damages have been bifurcated" in accordance with Rule 23(c)(4) and the district court has "reserved all issues concerning damages for individual determination."[122] Even after *Comcast,* the predominance inquiry can still be satisfied under Rule 23(b)(3) if the proceedings are structured to establish "liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members."[123]  As explained above, this is precisely how the district court planned to calculate the claimants' damages, which

---

[119] *See Butler,* 727 F.3d at 800; *In re Whirlpool Corp.,* 722 F.3d at 860; *Leyva,* 716 F.3d at 514.

[120] *Comcast Corp.,* 133 S. Ct. at 1433.

[121] *Id.*

[122] *In re Whirlpool Corp.,* 722 F.3d at 860; *see also Butler,* 727 F.3d at 800; *Leyva,* 716 F.3d at 514.

[123] *Butler,* 727 F.3d at 800; *see also In re Whirlpool Corp.,* 722 F.3d at 860; *Leyva,* 716 F.3d at 514.

No. 13-30095

"would have to be decided on an individual basis were the cases not being settled."[124] The principal holding of *Comcast* therefore has no application here.

As an additional matter relating to the predominance inquiry, we also address BP's suggestion that *Comcast* prohibits class certification in the present case because payments are made under the Settlement Agreement's Exhibits 4B and 4C to claimants "who have suffered no injury." In BP's view, payments made under such a formula are not "attributable" to the class action's theory of liability and therefore violate *Comcast*. In support of this argument, BP also has cited our decision in *Bell Atlantic*, which stated (very similarly to *Comcast*) that the predominance inquiry under Rule 23(b)(3) cannot be satisfied when it is premised on a formula for classwide measurement of damages that "is clearly inadequate."[125]

This argument must also be rejected. Neither *Comcast* nor *Bell Atlantic*, nor any other decision that BP has identified, has suggested that predominance under Rule 23(b)(3) can be defeated by a formula for making voluntary payments under a settlement agreement. Both *Comcast* and *Bell Atlantic* addressed formulas for measuring damages in class actions that had been certified for further proceedings on the merits, and neither made any mention of a settlement agreement. The *Amchem* decision, moreover, which did involve a settlement class proposed for certification under Rule 23(b)(3), explained that the predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy, *questions that preexist any settlement*."[126] Indeed, as stated elsewhere in *Amchem*, the existence of a settlement agreement allows the district court to dispense altogether with considering at least one of the Rule 23(b)(3) concerns:

---

[124] *In re Oil Spill*, 910 F. Supp. 2d at 924.
[125] *Bell Atl.*, 339 F.3d at 307.
[126] *Amchem*, 521 U.S. at 623 (emphasis added).

No. 13-30095

"the likely difficulties in managing a class action." Under *Amchem*, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."[127]

We cannot therefore conceive of why or how a formula for making voluntary payments under a settlement agreement could threaten the predominance of common questions over individual questions in litigation. Indeed, the reason that BP has identified no authority for this proposition is that it is nonsensical. A question of law or fact that is "common" under Rule 23 is one that enables the class action "to generate common answers apt to drive the resolution of the litigation."[128] But after a class action has been settled, by definition the litigation has been resolved and the questions have been answered. For the commonality and predominance inquiries to have any meaning at all, therefore, they must be considered independently from the resolution provided in a settlement—which is precisely what *Amchem* instructs.[129] The arguments raised by BP and the Objectors regarding Rule 23(b)(3) must therefore be rejected.[130]

---

[127] *Id.* at 620.

[128] *Wal-Mart*, 131 S. Ct. at 2551 (emphasis omitted); *M.D.*, 675 F.3d at 840.

[129] *Amchem*, 521 U.S. at 623 (explaining that the predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement."). It is worth recalling here that even though the settlement class in *Amchem* failed the predominance inquiry, this was not due to any feature of the settlement. This was because, rather, the district court had impermissibly taken into consideration factors such as the class members' "interest in receiving prompt and fair compensation," which was a factor unrelated to the case or controversy that they hypothetically would have litigated had the class action not been settled. Such factors are external to the predominance inquiry. *See id.*

[130] Neither the Cobb Objectors nor the Allpar Objectors have made any arguments under the second requirement of Rule 23(b)(3), that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." BP has raised this

No. 13-30095

## D.

BP and the Objectors have also argued that, by virtue of the Class Administrator's interpretations of Exhibits 4B and 4C, the class notice distributed to absent class members has been rendered deficient. Under Rule 23(c)(2)(B), "[t]he notice must clearly and concisely state in plain, easily understood language . . . the nature of the action," "the definition of the class certified," "the class claims, issues, or defenses," and other items of information relating to opting out, making objections, and the consequences of the judgment. Without tying their argument to any particular provision of Rule 23(c)(2)(B), BP and the Objectors contend that class members should have been informed of the likelihood that the prospective claimants would include uninjured persons and entities.

In our circuit, however, "[i]t is not required[] . . . that class members be made cognizant of every material fact that has taken place prior to the notice."[131]   Moreover, as we held in *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1104 (5th Cir. 1977), and as at least four of our fellow circuits have agreed, the class notice must describe the proceedings in

---

argument but has not differentiated in any meaningful way between its "predominance" argument and "superiority" argument. Citing *Amchem*, BP argues essentially that the class action would not be superior to individual lawsuits because a class action only satisfies Rule 23(b)(3) when it "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. As we already have decided in the context of the predominance inquiry, however, the district court did not abuse its discretion in finding that this requirement was met in this case. *See In re Oil Spill*, 910 F. Supp. 2d at 928. Accordingly, BP's argument as to superiority under Rule 23(b)(3) is also rejected.

[131] *In re Corrugated Container Antitrust Litig.*, 611 F.2d 86, 88 (5th Cir. 1980) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977)) (original alterations, quotation marks, and parentheses omitted).

No. 13-30095

"objective, neutral terms."[132] The contention that BP and the Objectors now suggest should have been incorporated into the class notice is neither "objective" nor "neutral" but is an adversarial position that would have been inappropriate for inclusion in a class notice.

Additionally, in *Katrina Canal Breaches*, in which we found a statement in a class notice to be "slightly misleading" regarding a point of Louisiana law, we held that the notice was not rendered deficient because "the statement as written [wa]s accurate in its essential point."[133] Here, the class definition was explained in the notice to include persons and entities with economic loss and property damage "arising out of the 'Deepwater Horizon Incident.'" Accordingly, even if we were to accept that the class notice could have been improved by adding the word, "allegedly," this minor legal ambiguity would not be enough to render the class notice deficient. The district court therefore did not abuse its discretion in finding the class notice sufficient under Rule 23(c)(2)(B).

## E.

BP and the Objectors also argue that the Claims Administrator's interpretations of Exhibits 4B and 4C preclude approval of the Settlement Agreement under Rule 23(e), which requires a district court to ensure that all class settlements are "fair, reasonable, and adequate." Even the cases cited by BP, however, emphasize that the purpose of Rule 23(e) is "to protect the

---

[132] *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007) ("Rule 23(e) does not require the notice to set forth every ground on which class members might object to the settlement . . . ."); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962-63 & n.7 (9th Cir. 2009) (requiring the class notice to be "scrupulously neutral"); *In re Traffic Exec. Ass'n E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980) (same); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975) (same).

[133] *See In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 199 (5th Cir. 2010).

45

No. 13-30095

nonparty members of the class."[134]   No case cited by BP or the Objectors suggests that a district court must also safeguard the interests of the defendant, which in most settlements can protect its own interests at the negotiating table.  As we stated in *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004), "[t]he gravamen of an approvable proposed settlement is that it be fair, adequate, and reasonable and is not the product of collusion between the parties."[135]   As is abundantly clear from the current controversy surrounding the proper interpretation of Exhibits 4B and 4C, and as the district court expressly found,[136] the Settlement Agreement was concluded in an arms-length negotiation that was free of collusion.

BP also makes a novel argument regarding our decision in *Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983), in which we explained that the application of Rule 23(e) should hinge on the analysis of six factors.  These factors are: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.[137]   In the present case, the district court conducted a lengthy and detailed analysis of the proposed settlement under each of the six *Reed* factors.[138]   In the district court's view, none of the *Reed* factors counseled

---

[134] *Wilson v. Sw. Airlines, Inc.*, 880 F.2d 807, 818 (5th Cir. 1989) (quoting *Piambino v. Bailey*, 610 F.2d 1306, 1327 (5th Cir. 1980)); *see also All Plaintiffs v. All Defendants*, 645 F.3d 329, 334 (5th Cir. 2011) (citing *Strong v. BellSouth Telecomm'cns, Inc.*, 137 F.3d 844, 849 (5th Cir. 1998)).

[135] *Newby*, 394 F.3d at 301 (internal quotation marks omitted).

[136] *In re Oil Spill*, 910 F. Supp. 2d at 931.

[137] *Reed*, 703 F.2d at 172.

[138] *In re Oil Spill*, 910 F. Supp. 2d at 931-39.

No. 13-30095

against approving the settlement.

BP's argument ignores the six *Reed* factors altogether.  Rather, BP relies on a short quotation from *Reed* to suggest that district courts should also ensure that settlement agreements are based on a "fair approximation of [class members'] relative entitlement."  This quotation is clearly taken out of context.[139]  No other decision by our court or by any district court has ever cited *Reed* for such a proposition.  Nor can any of the six *Reed* factors be easily related to the "fair approximation" analysis that BP proposes.  Even attempting to analyze BP's argument under the fifth factor discussed in *Reed*, "the range of possible recovery," BP has identified no reason to believe that the payments made under the Settlement Agreement fall outside the class members' range of "possible" recovery in litigation.

F.

Last of all, BP and the Objectors have argued that, by virtue of the Class Administrator's interpretations of Exhibits 4B and 4C, Rule 23's implicit "ascertainability" requirement is not satisfied.  As we held in *Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012): "[I]n order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."[140]  According to this argument, the Claims Administrator's two Policy Announcements render the class definition irrational and therefore violate the ascertainability requirement.  However, as we found in *Rodriguez*, "the possibility that some [claimants] may fail to prevail on their individual claims will not defeat class membership" on the basis of the ascertainability requirement.[141]  Accordingly, this final

---

[139] *See Reed*, 703 F.2d at 175.
[140] *Dell*, 669 F.3d at 639 (5th Cir. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam)).
[141] *Rodriguez*, 695 F.3d at 370 (internal quotation marks omitted).

47

No. 13-30095

argument by BP and the Objectors is rejected. In the absence of any other arguments addressing this implicit component of Rule 23, we find that the district court did not abuse its discretion in finding that the settlement class satisfies the ascertainability requirement.

V.

To conclude, the numerous arguments that BP and the Objectors have raised with respect to each of the provisions of Rule 23 are variants, for the most part, of a single argument. Based on our previous decisions, we would reject this argument even if we could consider BP's evidence and accept its factual premise, which we cannot. Under *Mims* and *Rodriguez*, "[c]lass certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct."[142] The result is no different, moreover, under Article III. As we wrote in *Cole*, "it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they *allege* they have suffered," because we "assume *arguendo* the merits" of their claims at the Rule 23 stage.[143]

For the foregoing reasons, therefore, we AFFIRM the district court's order of December 21, 2012.

AFFIRMED.

---

[142] *Mims,* 590 F.3d at 308; *see Rodriguez,* 695 F.3d at 370 ("[T]he possibility that some [absent class members] may fail to prevail on their individual claims will not defeat class membership.").

[143] *Cole,* 484 F.3d at 723 (emphasis added) (quoting *Parker,* 478 F.3d at 377 (internal quotation marks omitted)).

No. 13-30095

EMILIO M. GARZA, Circuit Judge, dissenting:

The majority finds Article III causation satisfied by language in the complaint and Settlement Agreement, notwithstanding the Claims Administrator's controlling interpretation rendering this language void, eliminating all causation requirements for a broad swath of the class and allowing individuals or entities to participate in the settlement even though they lack a justiciable claim. "Rule 23's requirements must be interpreted in keeping with Article III . . . ." *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 613 (1997). Standing is an essential component of Article III's case-or-controversy requirement, and it mandates that "there must be a causal connection between the injury and the conduct complained of." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). That is, whether a class member was economically injured is immaterial if that loss was not caused by the oil spill. Absent an actual causation requirement for all class members, Rule 23 is not being used to simply aggregate similar cases and controversies, but rather to impermissibly extend the judicial power of the United States into administering a private handout program. Because Article III does not permit this, I respectfully dissent.

## I

While the three elements of Article III standing—injury, causation, and redressability—remain constant throughout the litigation, the standard of proof necessary to demonstrate these elements becomes progressively more demanding through "the successive stages of the litigation." *Lujan*, 504 U.S. at 560; *ante*, at 9. I agree with the majority we must evaluate standing according to the standard of proof for the Rule 23 class certification and settlement approval stage. I disagree with the majority, however, that Article III standing is satisfied in this case under the *Denney* test. I also disagree that *Kohen*,

49

No. 13-30095

which by its facts addresses only pre-trial certification of a litigation class, applies to the certification of a settlement class.

## A

In *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006), a class action settlement case like ours, the Second Circuit determined that "[n]o class may be certified that contains members lacking Article III standing. The class must therefore be defined in such a way that *anyone within it* would have standing." *Id.* (internal citations omitted) (emphasis added). The *Denney* test fundamentally recognizes that a class certification decision opens the doors of federal court to all members of that class. The federal courts are only open to justiciable cases.[1]  Thus, *Denney* correctly appreciates that, at the end of litigation, settlement class certification stage, courts should verify that the class definition is limited to those with justiciable cases, that is, to those that would have standing.  As the majority notes, the touchstone of this test is whether the class definition encompasses only persons and entities that possess Article III Standing. *Ante* at 16.

The majority holds that the extant settlement class is necessarily limited to those class members with claims causally connected to the oil spill, that is, to those with standing. *Id.*  It bases this holding exclusively upon Section 1.3.1.2 of the Class Definition, which is contained in both the Amended Complaint and the Settlement Agreement. It totally, and erroneously, ignores language in other documents, including Exhibit 4B and the Claims Administrator's Policy Announcement, which materially affects the status of the causation requirement.  Section 1.3.1.2 summarizes an economic damage

---

[1] *See, e.g., Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("[Standing] is founded in concern about the proper—and properly limited—role of the courts in a democratic society. [It] is the threshold question in every federal case, determining the power of the court to entertain the suit.").

No. 13-30095

category for "[l]oss of income, earnings or profits suffered by Natural Persons or Entities *as a result of* the DEEPWATER HORIZON INCIDENT." (emphasis added). Certainly, this language encompasses a causation requirement.[2] However, the inquiry does not end there. Other documents with significant bearing on the Class Definition's treatment of causation must also be examined.

Section 1.3.1 of the Class Definition incorporates by reference Exhibit 4B: "Causation Requirements for Business Economic Loss Claims." Section 1 of Exhibit 4B establishes that certain individuals and entities, based on their location or the nature of their enterprise, "are not required to provide any evidence of causation."[3] These groups are entitled to a presumption of causation.[4] Construed together, Section 1.3.1.2 of the Class Definition and Section 1 of Exhibit 4B establish that individuals and entities alleging a loss *caused by* the oil spill need not submit evidence of that causation when making a claim for payment.[5] Such a construction seemingly preserves a threshold

---

[2] Under the Oil Pollution Act, 33 U.S.C. § 2702(a), liability extends to removal costs and specified damages categories "that result" from an oil discharge incident.

[3] For example, Section I.1 states, "If you are a business in Zone A, you are not required to provide any evidence of causation unless you fall into one of the exceptions agreed to by the parties, and listed in footnote (1)." Section I.5 states, "If you are in Zone A, B, or C, and you meet the "Charter Fishing Definition" you are not required to provide any evidence of causation." *See infra* Part II (explaining why geographic and enterprise-based requirements alone do not comply with the cause-in-fact requirement of Article III and the substantive law governing the class claims).

[4] These groups are in contrast to other groups of claimants that must provide evidence of causation according to the requirements of one of several revenue loss models defined in the Settlement Agreement—e.g., the "Modified V-Shaped Revenue Pattern," or "Proof of Spill-Related Cancellations."

[5] Exhibit 4B's presumption of causation substitutes a claimant's geographical location, or the nature of a claimant's enterprise, for proof of causation. There is an open question as to whether this substitution, even in conjunction with Section 1.3.1.2, would satisfy Article

No. 13-30095

causation requirement while simply eliminating the need for specific evidence to prove it when making a settlement claim. In other words, causation ostensibly remains an *element* of a claim even though *proof* is not a central feature of the claims process. Significantly, Section 1.3.1.2 and Section I of Exhibit 4B does not end our inquiry: The Claims Administrator has issued a controlling interpretation of the Class Definition's causation requirements.

The Claims Administrator is specifically charged with implementing and administering the Settlement in Section 4.3.1 of the Settlement Agreement. Pursuant to this charge he issued an interpretive decision about causation for economic losses, in which he explained that he would:

> "compensate eligible Business Economic Loss and Individual Economic Loss claimants for all losses payable under the terms of the Economic Loss frameworks in the Settlement Agreement, *without regard to whether such losses resulted or may have resulted from a cause other than the Deepwater Horizon oil spill* provided such claimants have satisfied the specific causation requirements set out in the Settlement Agreement." (emphasis added).

The Claims Administrator further determined that "the Settlement Agreement does not contemplate that the Claims Administrator will undertake additional analysis of causation issues beyond those criteria that are specifically set out in the Settlement Agreement." In short, the Claims Administrator established that the Settlement Agreement requires no proof of causation, beyond the specific requirements of Exhibit 4B. And, the district court has repeatedly affirmed this determination.[6] Essentially, this interpretation renders Section

---

III's cause-in-fact element. However, on the facts before us, the Claims Administrator's interpretation has effectively eliminated Section 1.3.1.2's "as a result of" language.

[6] The Claims Administrator issued the Policy Announcement on October 10, 2012, just over two months *before* the District Court entered the final class certification order. On December 12, 2012, the district court acknowledged awareness of the interpretation in an email to the parties. And, on April 9, 2013, the district court issued an order adopting the

1.3.1.2's causation language nugatory—all that matters is Exhibit 4B. There is no longer a threshold requirement that the economic losses stand "as a result of" the Deepwater Horizon incident, and at least five groups[7] of Business Economic Loss claimants will never be required to provide any proof of causation. That is, there is no causation requirement in the Settlement Agreement—*as actually implemented*—for a significant segment of the class. Surely, the words "as a result of" remain in the text of the Class Definition, the Amended Complaint, and the Settlement Agreement, but, in truth, they have no significance to determining who is eligible to participate in the settlement.

Consequently, this class can encompass individuals or entities who could never truthfully allege or establish standing, at any stage of the litigation. Thus, it fails under *Denney*. As explained in *Lujan*, Article III standing irreducibly requires that the injury be "fairly traceable to the challenged *action of the defendant*, and not the result of the independent action of some third party not before the court." 504 U.S. at 660 (internal quotations and alterations omitted). The elimination of a causation requirement for these Business Economic Loss claimants renders the Settlement Agreement unconstitutional in this respect.

At the settlement class certification stage, *Denney* does "not require that each member of a class submit evidence of personal standing." *Denney* 443 F.3d at 263. The test is whether each member contemplated by the definition can *allege* standing. *Ante* at 21. And for the purposes of standing allegations, we

---

interpretation. On December 24, 2013, responding to the remand in No. 13-30315 (Before Judges Dennis, Clement, and Southwick), the district court issued an order finding "that whether a business economic loss is "as a result of" the Deepwater Horizon incident for purposes of the Settlement is determined exclusively and conclusively by Exhibit 4B." *See* Order and Reasons [Responding to Remand of Business Economic Loss issues], 2:10-MD-2179, ECF No. 12055, at 18.

[7] *See* Exhibit 4B, §§ I.1–5.

No. 13-30095

"assume *arguendo* the merits of [the] legal claim." *Cole v. General Motors Corp.*, 484 f.3d 717, 723 (5th Cir. 2007). But here, at the settlement class certification stage, these standards are not met. Because the interpretation has nullified the causation language of Section 1.3.1.2 of the complaint, there is no guarantee that each member of the class meets the standing requirements of Article III. Thus, it is quite possible that claimants eligible for Exhibit 4B's presumption of causation can fully participate in the settlement even though their injuries, if any, are not fairly traceable to the Deepwater Horizon incident. *Cf. Lujan*, 504 U.S. at 560. *Denney* requires that the class must "be defined in such a way that *anyone* within it would have standing." *Denney*, 443 F.3d at 264 (emphasis added). Absent a causation requirement for certain segments of Business Economic Loss claimants, this Class Definition includes those who would not.[8]

The majority avoids the fatal impact of the Policy Announcement by concluding that "the evidentiary standard to be applied by the Claims Administrator [ ] is not a matter of Article III standing," but rather "a question of interpreting the Settlement Agreement and applying it to each individual claim . . . ." *Ante* at 24. If this case involved only a question of degree—say, what evidence is sufficient to establish causation—I might agree with this

―――――――――――――

[8] On appeal, BP has presented particular evidence that the Administrator has made awards to persons and entities that "likely were not injured" by the oil spill. *Ante*, at 19. The majority holds that this evidence cannot be considered on appeal because it was not presented to the district court. *Id.* Taking this as true, there is no need to evaluate specific evidence to determine that the class definition, as currently interpreted, can include individuals or entities that cannot trace their injury to the oil spill. Looking at the totality of the relevant documents, it is clear that the Class Definition is overbroad. Exhibit 4B creates a presumption of causation for those that work in a specific area or occupation, and the "as a result of" language, stripped of meaning by the Claims Administrator, no longer bounds these individuals or entities. Thus, the class definition directly includes business claimants for which there is no causation requirement. Geographic and enterprise-based factors alone, all that are required under Section I of Exhibit 4B, are insufficient to satisfy the causal connection required by Article III. *See infra* Part II.

54

No. 13-30095

conclusion. In that case, *some* form of causation would remain intact. However, the issue here is not what evidence is sufficient, but rather whether causation has been entirely written out of the settlement. Certainly, this is within the bounds of an Article III inquiry. *See Lujan*, 504 U.S. at 560 (holding that a causal connection is in irreducible component of Article III standing).

Furthermore, the majority strongly suggests that the Claims Administrator's interpretation is not before us in this appeal. *Ante* at 23. While the policy interpretation is not literally part of the district court's December 21, 2012 certification order, the document directly before us, it is clearly an integral aspect of how the Class Definition and the Settlement Agreement operate. The *Denney* test for verifying Article III standing at the class settlement stage of litigation requires the reviewing court to analyze the class definition. It is not possible to perform a true and accurate analysis while ignoring the controlling interpretation of this definition.[9]

The Claims Administrator's interpretation must be treated as part and parcel of the Settlement Agreement and Class Definition for several reasons. First, the very district court that certified the class and oversees the settlement's implementation has repeatedly affirmed this interpretation.[10] Second, the interpretation issued before the district court entered the final certification order and the record demonstrates the district court was aware of this.[11] Third, the Settlement Agreement provides that the Claims

---

[9] The majority further suggests that the Claims Administrator's interpretation of causation in the class definition has been waived on appeal because "no party ever formally objected" to it, and because BP initially took "no position on the relevance *vel non*" of the policy interpretation. *Ante* at 6–7. Be this as it may, "we are certainly free ourselves to raise an issue of standing as going to Article III jurisdiction . . . ." *Lewis v. Casey*, 518 U.S. 343, 394 (1996) (quoting *Mount Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 278, (1977)).

[10] *See supra* note 6.

[11] *Id.*

No. 13-30095

Administrator will have authority to make policy decisions and to issue guidance. It is illogical to disregard a pronouncement on the meaning of the Settlement issuing from the very entity the Settlement established for this purpose.

Lastly, Article III cannot be so easily duped by sleight of hand. Here, the district court certified a class based on the written Class Definition in the Amended Complaint and Settlement Agreement. This definition initially included "as a result of"—a clear causation requirement. Because of the Claims Administrator's interpretation, it no longer does. The district court certified a class settlement agreement that, in pertinent part, no longer exists. And now, on appeal, the majority limits its standing analysis to the defunct text of Section 1.3.1.2. In essence, this analysis finds Article III satisfied by what has been transformed into an empty pleading allegation. But Article III demands more. A key function of the standing requirement is to "identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 496 U.S. 149, 155 (1990). Claims for damages that are not "fairly traceable to the defendant's conduct," *Lujan*, 504 U.S. at 660, are not such disputes. Today's opinion improperly welcomes them into federal court.

## B

The majority further determines that this settlement class certification satisfies Article III standing under the *Kohen* test, which requires that the named plaintiffs—as opposed to absent class members—can satisfy Article III's standing requirements. *Kohen*, 571 F.3d at 676; *ante* at 15. While I agree that the named plaintiffs' standing is uncontested in this case, *Kohen* does not apply. As also observed by Judge Clement in *Deepwater Horizon I*, 732 F.3d at 344 n.12, *Kohen* does not concern an end of litigation settlement class certification. This distinguishing factor is crucial.

No. 13-30095

In *Kohen*, the court determined that the "possibility or indeed inevitability" that the defined class will "often include persons who have not been injured by the defendant's conduct" does not preclude class certification. Thus, the court looked only to the named plaintiffs to satisfy Article III standing. However, *Kohen* concerns a pre-trial litigation class certification, not a final settlement class certification, and in this presupposes that there will be a further stage where the Article III standing requirements will be proven up. *Kohen*, 571 F.3d at 677 ("If the case goes to trial, this plaintiff may fail to prove injury."). The *Kohen* opinion relies on the fact that jurisdiction alleged at the pleading stage of a class action litigation must eventually be substantiated. *Id.* But, in a settlement class certification, like that at bar, there will be no additional stages for substantiating standing. The settlement ends the litigation. Accordingly, the *Kohen* "named plaintiffs only" formula for evaluating Article III standing is inapplicable here.

Additionally, the *Kohen* court actually embraces *Denney's* focus on the class definition for verifying Article III standing. *Kohen* specifically rejected defendant-appellant' PIMCO's argument that the district court needed to verify each class members' individual standing before certifying the class— that is, absent class members needed to *prove* standing before certification. *Id.* at 676. According to the *Kohen* court, the burden of proving standing at the pre-trial class certification stage lies with the named plaintiffs alone. But *Kohen* simultaneously recognizes that a "class should not be certified if it is *apparent* that it contains a great many persons who have suffered no injury at the hands of the defendant . . . ." *Id.* at 677. (emphasis added). The court specifically noted that "if the class definition *clearly were overbroad*, this would be a compelling reason to require that it be narrowed." *Id.* at 678. So, without concern for proof of standing, *Kohen* recognizes that, even at the pre-trial class certification stage, a certification does not comply with Article III if it embraces

No. 13-30095

a swath of claimants who cannot claim injury-in-fact, causation, or redressability. Here, in light of the controlling interpretation, the class definition does exactly that for certain groups of Business Economic Loss claimants. *See supra* Part I.A.

## C

In conclusion, this interpretation creates an overbroad class definition, which "includes people who have no legal claim whatsoever." *Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 340 (3d Cir. 2011) (Jordan, J. dissenting). Under its terms, a segment of claimants could enter federal court and receive redress for injuries that need not have been caused by the defendant's conduct. Without a causation requirement for class membership, this Settlement Agreement encompasses individuals and entities that do not possess the requisite justiciable case or controversy. From an administrative perspective the elimination of causation may be more efficient, but it is also violates Article III, which does not permit the federal courts to administer private handout programs. Accordingly, the district court's Rule 23 certification is not in keeping with Article III constraints. *See Amchem,* 521 U.S. at 613.

## II

In addition to straying beyond Article III jurisdictional constraints, the Claims Administrator's interpretation, by eliminating the causation requirement, violates at least two aspects of Rule 23, and runs afoul of the Rules Enabling Act, 28 U.S.C. § 2702(b).

## A

Rule 23(a)(2) requires, as a necessary prerequisite to class certification, that "there are questions of law or fact common to the class." In *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011), the Supreme Court interpreted this provision to require that the members of the class have "suffered the same injury." This requires that the class members' claims

No. 13-30095

"depend upon a common contention," the "truth or falsity [of which] will resolve an issue that is central to the validity of *each one of the claims* in one stroke." *Id.* (emphasis added).  The majority asserts that the commonality requirement is satisfied by myriad questions of law and fact about BP's injurious conduct. *See ante*, at 30–31 (listing common questions). Certainly, these contentions are central to *many* class member's claims.  But Rule 23(a)(2) and *Wal-Mart* require more—the common contentions must go to the validity of *each one of the claims*.  Because this class includes a segment of claimants whose injuries need not have been caused by the oil spill, this cannot be so. For example, "[w]hether BP used an improper well design that unreasonably heightened the risk [of an incident]" says nothing about the validity of a claim for economic injuries caused by factors other than the oil spill.  As long as the class impermissibly aggregates those whose injuries were purportedly caused by the oil spill with those without any arguable claim of such causation, questions concerning BP's liability are insufficient to satisfy Rule 23(a) commonality.

The same argument applies with full force to the Rule 23(a)(3) requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Cf. ante*, at 31 n.92.  The Supreme Court has observed that the "commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart*, 131 S. Ct. at 2550–51 n.5. The majority holds that typicality is satisfied because "the class representatives—like all class members—allege economic and/or property damage stemming directly from the Deepwater Horizon spill." *Ante*, at 31 n.92. (quoting *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010,* 910 F. Supp. 2d 891, 915 (E.D. La. 2012)).  This disregards the unavoidable fact that causation, initially alleged in Section 1.3.1.2, has been effectively written out by the Claims Administrator.  Given the Claims Administrator's controlling

No. 13-30095

interpretation, all class members do not allege injury "stemming directly" from the oil spill. *Cf. id.*

Rule 23 certification requires that the proposed class meets all the prerequisite requirements of Rule 23(a). *See* W. RUBENSTEIN, A. CONTE & H. NEWBERG, NEWBERG ON CLASS ACTIONS § 3:1 (5th ed. 2011). Commonality and typicality are absent here.

## B

The Rules Enabling Act requires that that the rules of procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2702(b). The class action rules must be applied in keeping with this mandate. *See Amchem*, 521 U.S. at 613. It follows that Rule 23's aggregation function cannot be used to "create new rights and then settle claims brought under them." *Deepwater Horizon I*, 732 F.3d at 342; *see Sullivan*, 667 F.3d at 343 (Jordan, J. dissenting) ("Rule 23 [serves] to efficiently handle claims recognized by law, not to create new claims.").

This Settlement Agreement resolves claims arising under General Maritime Law (tort principles of federal common law) and the Oil Pollution Act, 33 U.S.C. § 2702(a). Each of these claims contains some sort of causation element. In order to prevail in a negligence action, a plaintiff must establish that the defendant's breach of duty is the but-for and proximate cause of the injury complained of.[12] Under the Oil Pollution Act, a plaintiff must demonstrate that the costs and damages sought "result from" an oil spill incident. Thus, under the controlling substantive law, there is no right to recover damages for injuries not caused by the defendant's breach. This

---

[12] The Amended Class Action complaint asserts claims for negligence, gross negligence and willful misconduct, and breach of contract under general maritime law. The breach of contract claims pertain only to Vessels of Opportunity ("VoO") claimants.

No. 13-30095

settlement, however, allows individuals and entities whose injuries were not caused by the oil spill to claim and receive damage payments. *See supra*, Part I.A. That is, the set of eligible claimants is not congruent with the set of actual (those injured by the spill) claimants, the latter being merely a subset of the former. Thus, the settlement eliminates an essential component of the underlying cause of action, creating a legal right for some class members where none exists at law. This violates the Rules Enabling Act—by bringing claimants without causally related injuries into the class, Rule 23's aggregation function has been improperly used to expand substantive rights.[13]

### III

What makes this case unique, perhaps, is that causation is contemplated on the face of the core documents—the Amended Complaint, Class Definition, and the Settlement Agreement—but eliminated in application by the Claims Administrator's interpretation. In evaluating whether Article III's causation requirement for standing has been properly demonstrated at the settlement class certification stage, I would look to the class definition as it has been authoritatively interpreted, not simply as it is ostensibly written. Today, the majority takes another path, turning a blind eye to the Claims Administrator's interpretation.

The concerns identified in this dissent each stem from a common problem:  causation has been eliminated for a broad swath of Business Economic Loss claimants.  For the foregoing reasons, this requires that the class be decertified. However, this does not necessarily mean that a Settlement Agreement, writ large, is entirely unworkable or that Rule 23 is inapplicable. I simply observe that this attempted global settlement fails in a narrow, but

---

[13] *See Deepwater Horizon I*, 732 F.3d at 339–44 (offering additional insights into the impact of the causation policy on Article III, Rule 23 and the Rules Enabling Act).

No. 13-30095

significant, regard. I would vacate the class certification and Settlement Agreement, and remand to allow the parties and the district court to design a solution that complies with Article III, Rule 23, and the Rules Enabling Act.

Respectfully, I dissent.