IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 <br><br> SECTION J |
| This Document Relates To:  10-4536 | * * * * | Honorable CARL J. BARBIER <br><br> Magistrate Judge SHUSHAN |

**BPXP'S MEMORANDUM IN OPPOSITION TO THE UNITED STATES'
MOTION TO COMPEL PRODUCTION OF THE INJURY AND ILLNESS DATABASE**

Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 662-5985

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.*

1

## INTRODUCTION

The United States ("US") has sought discovery from BP Exploration & Production Inc. ("BPXP") of two databases containing information about human health issues in the aftermath of the *Deepwater Horizon* ("DWH") incident: the Medical Encounters ("ME") Database and the Injury & Illness ("I&I") Database.[1] BPXP has objected to production of both databases on grounds including that they lack relevance or probative value regarding the seriousness of any human health impact of the DWH incident. *See* BPXP's Resps. to the US' First Set of Disc. Reqs., at 18 (Ex. B). These databases are not relevant to the US's effort to present evidence of the seriousness of the DWH incident under the Clean Water Act ("CWA"), 33 U.S.C. § 1321(b)(8).

BPXP has nonetheless agreed to meet the US half-way by producing the ME Database. However, BPXP continues to object to production of the largely redundant and otherwise irrelevant I&I Database, which would be excessively burdensome for BPXP to produce—either in whole or in the summary format that the US has said would be an acceptable alternative. *See* Email from E. Pencak to K. DeSantis (May 27, 2014 03:24 PM Central Standard Time), Rec. Doc. 12958-2, at 2 (Ex. C). For reasons set forth in this Opposition, the US's motion to compel production of an additional database should be denied.

## BACKGROUND

By way of compromise following meet-and-confer sessions, and notwithstanding its objections, BPXP agreed to produce to the US—and did produce, on May 27, 2014—a redacted version of the ME Database. *See* Email from K. DeSantis to A. Andre (May 9, 2014, 9:21 PM)

---

[1] A comprehensive description of each database and its respective purpose is in the attached Declaration of David R. Dutton, Ph.D, CIH ("Dutton Decl.") (Ex. A). It would be more accurate to refer to the "I&I Database" as the "I, I & I Database," or the "*Incident*, Illness and Injury Database," based both on the terminology used by those most familiar with the database and the types of information reported therein. *See, e.g.*, *id.* ¶¶ 8-10. Nonetheless, for the sake of consistency and brevity, we refer to the database throughout as the "I&I Database."

(Ex. C, at 8). The ME Database contains over 20,000 entries concerning visits to medic stations by response workers and members of the public, and provides a description of each injury or illness reported at a medic station, the location and time of the incident, and the disposition of the incident, among other information. The ME Database was produced with all personal identifying information redacted. Crucially, no burdensome redaction of personal identifying information was needed prior to its recent production to the US because the redacted version of the ME Database had previously been provided by BPXP to the National Institute of Environmental Health Sciences ("NIEHS").

Like the ME Database, the I&I Database lacks probative value regarding the seriousness of the DWH incident; is largely redundant of the ME Database already produced to the US, but additionally contains entries concerning incidents wholly irrelevant to the issue of human health impact, such as property, vessel, and vehicle damage that resulted in no actual injury; and has never had the extensive, private medical and identifying information contained in the database redacted by BPXP (as it has not been provided to NIEHS or any other governmental entity). As a result, BPXP has not agreed to produce the I&I Database.

On May 27, 2014, the US advised BPXP that it would no longer request the I&I Database if BPXP were to agree to produce an updated version of a summary of the database located at http://www.osha.gov/oilspills/DeepwaterData.pdf. *See* Email from E. Pencak to K. DeSantis (May 27, 2014 03:24 PM Central Standard Time), Rec. Doc. 12958-2, at 3 (Ex. C, at 2). BPXP explained to the US that the referenced summary document contains excerpted (and redacted) information from the I&I Database involving OSHA-recordable incidents requiring medical treatment and days away from work, and that significant time and effort would be required from BPXP in order to update that summary. *See* Email from K. DeSantis to E. Pencak (May 28,

2014 3:13 PM) (Ex. C, at 1). BPXP also requested that the US review the recently produced ME Database to determine whether it was still the position of the US that it needed information from the I&I Database. However, before even reviewing the ME Database, the US nonetheless insisted on obtaining from BPXP the I&I Database. *See* Email from E. Pencak to K. DeSantis (May 29, 2014 6:50 PM) (Ex. C, at 1).[2]

The US's Motion to Compel Production of the I&I Database should be denied for three fundamental reasons: (1) the I&I Database lacks relevance or probative value regarding the seriousness of the impact of the DWH incident; (2) BPXP has already produced a very extensive and sufficient database, the ME Database, in a good-faith effort to accommodate the US; and (3) production of the I&I Database would be cumulative and duplicative of the ME Database, would require production of information that is otherwise irrelevant and a waste of both the parties' and this Court's limited time and resources, and would be unduly burdensome for BPXP to produce.

**I.     The I&I Database, Like the ME Database, Is Irrelevant and Lacks Probative Value.**

Neither the ME Database nor the I&I Database has any inherent probative value, and neither is relevant or necessary to assessment of any human health impact of the DWH incident. Both databases are comprised of a significant number of entries that have not been verified for accuracy or consistency. *See* Declaration of David R. Dutton, Ph.D, CIH ¶ 12 ("Dutton Decl.") (Ex. A). As a result, no entry in and of itself constitutes proof of injury or actual impact to human health resulting from the incident. Indeed, the unverified information existing in both databases could be misleading to the parties and to the Court. Additionally, both databases are comprised of entries reflecting individuals' subjectively reported health conditions, ranging from

---

[2] It is unclear whether the US even reviewed the ME Database prior to filing its present motion to compel the I&I Database.

insect bites and sunburn to dizziness and fatigue.  *See* Dutton Decl. ¶ 6, 11.  Reports of heat-related health conditions are predominant in both databases.  *Id.*  However, both databases lack uniformly sufficient information about either causes of heat-related conditions or prior medical history.  *Id.*  In light of the limited utility of these databases, BPXP should not be required to produce the I&I Database in addition to the ME Database, which it agreed to produce only by way of compromise.  If the US should attempt to use the ME Database or information therein as evidence of any human health impact, BPXP will establish for the Court the limited utility of that database.

## II.   The ME Database Provides Comprehensive Information Concerning Reports of Health-Related Incidents During the Response.

Production of the I&I Database is unnecessary because any database information that could be construed as relevant to any human health impact is largely represented in the ME Database, already produced by BPXP to the United States.  *See* Dutton Decl. ¶¶ 10, 12.  The ME Database tracks over 20,000 visits by over 13,000 individuals—including response workers and members of the general public—to medical care facilities established by BPXP in Louisiana, Alabama, Mississippi, and Florida.  *Id.* ¶ 4.  The database, as produced, includes a description of each individual's medical issue and symptoms, the treatment(s) provided, the location of the reported incident, and the ultimate disposition of the case (i.e., whether the worker returned to work or was referred for further treatment), among other information.  The information from the ME Database was used as a tool during the response by industrial hygiene and safety groups to identify areas for improvements to the response protocol.  *Id.*

**III.    The I&I Database Is Largely Duplicative of the Produced ME Database; It Otherwise Contains Irrelevant and Non-Probative Entries; and It Would Be Unduly Burdensome for BPXP to Produce the Database.**

   *1.    The I&I Database Is Duplicative of the ME Database.*

The I&I Database serves a different purpose than the ME Database. The I&I Database was designed to help BPXP meet Occupational Safety and Health Administration ("OSHA") and other agency reporting obligations. *Id.* ¶ 8. Thus, this database tracks numerous types of work-related incidents, including many entirely unrelated to injury, illness, or medical treatment. *Id.* In fact, of the approximately 8,000 total entries in the I&I Database, over 20% of the entries are unrelated to medical treatment. *Id.* Of the medical treatment entries, almost 83% consist of minor first-aid incidents that do not rise to the level of recordable incidents under OSHA guidelines. *Id.* Additionally, the I&I Database contains only incidents reported by response workers, whereas the roughly 20,000-entry ME Database contains incidents reported by both response workers and the public.

For several reasons, the relevant entries in the I&I Database are largely duplicative of the more extensive ME Database. Reporting guidelines require that all medical entries from the I&I Database from the beginning of the response through September 30, 2010, be reported in the ME Database. *Id.* ¶ 10. This represents the most active period of the response, and, consequently, the frequency of injury and illness reporting was highest at this time. *Id.* ¶ 9. Thus, the ME Database substantially, if not completely, incorporates medical entries from the I&I Database for the most active period of the response, when the frequency of injury and illness reporting was highest and most reflective of any claimed response-related injuries and illnesses. *Id.* ¶¶ 9-12.

   *2.    Any Additional I&I Database Information Is Irrelevant.*

As BPXP repeatedly advised the United States in meet-and-confer sessions, any non-redundant entries in the I&I Database involve primarily irrelevant and extraneous information

6

entirely outside the scope of the issues to be tried in the Penalty Phase of this litigation. As a result, production of this additional information is both unnecessary and distracting, and would serve only to side-track the parties and waste the limited time of both the parties and the Court.

Among the non-medical entries contained in the I&I Database (i.e., those entries not also in the ME Database) are certain categories of recordable and non-recordable OSHA incidents involving, for example, damage to property, a piece of equipment or machinery falling in a common area, vessel or vehicle accidents, and certain categories of potential workplace incidents known as "high potential incidents," or "HiPos."[3] The US has no reasonable basis on which to demand this information about incidents associated with *potential* rather than *actual* harm, as these incidents have no relevance to the seriousness of any impact of the DWH incident on human health.

### 3.     *Production of the I&I Database Would Unduly Burden BPXP.*

Production of I&I Database would be unduly burdensome for BPXP. The database of over 8,000 entries—totaling approximately 1,800 pages—contains not just columns exclusively containing personal identifying information, but also personal identifying information woven into descriptions of reported incidents or medical conditions. It would be necessary to review every entry in the database in order to identify and redact all such information.[4] Such a task would be unduly burdensome for BPXP and is not reasonable given the availability of information already provided to the US through production of the comprehensive ME Database.[5]

---

[3]   A HiPo is an event that *theoretically* could have resulted in injury, illness, or significant property damage but *did not*.

[4]   If the Court were to order BPXP to produce an unredacted database to the US—even under protective order—certain privacy issues may arise, including notice requirements that may be triggered prior to any release of private medical information, and BPXP would fully explore these issues and brief the Court.

[5]   The US certainly recognizes the importance of protecting medical privacy as reflected in the US's response to BPXP's RFP 13, in which the US responds: "The United States further objects to this request for production of

Given the non-probative, duplicative, and irrelevant nature of the information in the I&I Database, and thus its negligible value to the US, any such burden would be excessive and unjustified.

## CONCLUSION

For the foregoing reasons, the US' Motion to Compel Production of the I&I Database should be denied.

June 5, 2014                                                                 Respectfully submitted,

                                                                                                                      */s/ Don K. Haycraft*
Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 662-5985

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.*

---

documents because it ***seeks discovery of individual medical records generated or possessed by the United States in the course of the response because the intrusion into individual patients' privacy outweighs the marginal benefit to be derived from such documents given the issues that are relevant to this phase of the litigation***." *See* US' Resp. to Defs.' First Set of Disc. Reqs. to the US, at 14 (emphasis added) (Ex. D).  The US should accord the same respect to BPXP's efforts to protect medical privacy, particularly when the US has received from BPXP, as it has here, other information that should satisfy its request.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of June, 2014.

/s/ Don K. Haycraft
Don K. Haycraft