# EXHIBIT D

E-SERVICE
55541409
Jun 04 2014
11:21AM
File & ServeXpress™

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| In re: | Oil Spill by the Oil Rig "*Deepwater Horizon*" in the Gulf of Mexico, on April 20, 2010 | : | MDL No. 2179 |
| | | : | SECTION: J |
| This Document Relates To: 10-4536 | | : | Honorable CARL J. BARBIER |
| ………………………………………………... | | : | Magistrate Judge SHUSHAN |

**UNITED STATES' SECOND SUPPLEMENTAL RESPONSE TO DEFENDANTS' FIRST SET OF DISCOVERY REQUESTS TO THE UNITED STATES OF AMERICA RELATING TO THE CLEAN WATER ACT PENALTY PHASE**

The United States of America by its undersigned Counsel, and pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, as well as the instructions of Magistrate Judge Shushan, hereby submits the following objections and second supplemental responses to Defendants' First Set of Discovery Requests to the United States of America Relating to the Clean Water Act Penalty Phase.

Except as explicitly set forth herein, the responses and objections set forth in United States' First Supplemental Response to Defendants' First Set of Discovery Requests to the United States of America Relating to the Clean Water Act Penalty Phase are unchanged.

## II. REQUESTS FOR PRODUCTION

3. All documents referring or relating to the observation, collection, recovery, restoration, or rehabilitation of Wildlife during, or as part of, any Response Activities.

**OBJECTIONS:** The United States objects to this request for production for the reasons set forth in its Seriousness Motion, its brief in support of the Seriousness Motion, its reply in support of the Seriousness Motion, and the US 26(f) Report. Moreover, the United States objects to this request as overbroad in light of the Court's ruling cited in the United States' objections to Request for Production 1. The United States will produce data on the requested subjects, but not

analysis, opinion, or other discussion of these topics.

The United States further objects to this request for production because by seeking "all documents referring or relating to" the listed activities it seeks privileged materials including materials protected by the attorney-client, the work product, and other privileges and protections. The United States will identify any documents withheld solely on the basis of privilege as required and to the extent required by PTO 14 and it amendments.

The United States further objects to this request as overly broad with respect to time because instruction 2 below states that "Unless otherwise specified, respond to all requests for production by searching for documents created on or after April 20, 2005." Because this request seeks information specific to the Defendants' violations, the United States objects to searching for any records created on or before April 20, 2010.

**RESPONSE**:  Subject to, and without waiving, the foregoing objections, the United States responds as follows:

The United States directs BP to the documents produced in Phase 1 and Phase 2, especially the information such as agency daily reports setting forth observations regarding the effects on wildlife and fisheries.  In particular, attached to this response as Attachment 2 is an inventory of the daily briefing books for the National Incident Commander, which provide a good summary of the information responsive to this request.

NOAA has provided data to BP for marine mammals as required by a negotiated data-sharing plan.  That data is identified by category in Exhibit 1.

A turtle data-sharing plan has been negotiated for necropsy and histopathology results; however the plan has not yet been signed.  Once the plan has been executed, the data will be sent to BP within the time frames specified in Exhibit 1.  In addition, BP already has data stemming

from cooperative turtle work.

To the United States' knowledge, there was no collection of oysters in the response beyond that for the human health assessment.  NOAA Status and Trends routinely collected oysters pursuant to their own mission, and the United States will investigate whether this organization collected oysters during the Response.

Moreover, the inventory of birds collected as part of the Response Activities and Natural Resources Damage Assessment is available on the internet at http://www.fws.gov/home/dhoilspill/pdfs/ConsolidatedWildlifeTable042011.pdf.  The United States will provide the underlying data summarized on that sheet before the deadline for production of documents.

During meet and confer discussions BP requested that the United States apply certain search terms to the custodial files of Bob Haddad, NOAA; Kevin Reynolds, U.S. Fish & Wildlife Service; Barbara Schroeder, NOAA; Teri Rowles, NOAA; and Lori Schwacke, NOAA.  The United States will not search the files of Dr. Bob Haddad and Dr. Kevin Reynolds because their role with respect to these issues was as part of the Natural Resources Damage Assessment. Therefore, there is no reasonable likelihood of finding information that is responsive to this request and still within the limits imposed by the Court as described in the objections to request for production 1.

Further, collection from each of the identified custodians, but especially Drs. Haddad and Reynolds, would be unduly burdensome because of the likelihood that the responsive documents would be privileged.  Each of the identified individuals' have been assigned primarily if not exclusively to work on the Natural Resources Damage Assessment and, therefore, much of their materials are likely to be privileged.

The United States will not agree to search the files of Teri Rowles because she was a custodian whose files were searched in Phase 1 and Phase 2 and to re-collect from this custodian would be burdensome, particularly in the available.

With respect to the remaining two custodians, Ms. Schroeder and Ms. Schwacke, the United States will search their primary work computers and work email box and any known archives for the time period April 20, 2010- January 31, 2011. The United States objects to extending the search beyond that date because these two individuals were working almost exclusively on Natural Resource Damages Assessment after January 31, 2011 and, therefore, the burden of privilege review for the later time period outweighs the likelihood that some additional information may be discovered.  The United States will use a modified version of the search terms proposed by Ms. Karis in her letter of April 25, 2014, but will need to test and modify the terms before deciding on the final terms.  The United States will advise BP of the final search terms once they have been developed.  In addition to any refinements need to prevent over collection of irrelevant material, the United States anticipates modifying BP's proposed search terms in several respects:

a.      BP's proposed search strings contained no terms that would limit the searches to information related to the Gulf of Mexico, relevant animals, and observations during the response.  In accordance with the Court's limitation on discovery related to the Natural Resources Damage Assessment, the United States has added such limiting phrases.

b.      The United States has combined some of the search strings to reduce duplication.

c.      BP also proposed a search string for "("stranding" NEAR5 "rates")".  The United States declines to implement this search string because data relating to the stranding rates is captured in the data to be produced as identified in Exhibit 1.  Collecting documents relating to discussion of these rates goes beyond the Court's limitation to the production of data rather than analysis in this Phase of the Litigation.

Once it has completed the searches, the United States reserves the right to (1) exclude documents that are responsive to the search terms but not actually responsive to the request;

(2) assert privilege over documents that are responsive to the search terms; (3) modify the search terms to address the syntax rules of the particular software being used to conduct the search so long as the search terms to not substantively alter the search terms; and (4) to modify the search terms to address patterns of over-collection identified during the collection.  The United States will notify BP of any changes made to the search terms during collection.  The United States also notes that it may need to seek an extension of time to produce responsive documents, depending on how rapidly the search proceeds and the volume of materials responsive to the search terms.

**SUPPLEMENTAL RESPONSE**:  With respect to the custodians Ms. Schroeder and Ms. Schwacke, the United States has collected all information in their custodial files related to the Deepwater Horizon incident for the period April 20, 2010 to January 31, 2011 and will produce the documents responsive to this request from those custodial files.  In addition, the United States has confirmed that NOAA Status and Trends did collect oyster data, which will be produced before the deadline for production of documents.

In addition, while reviewing the collection of photographs identified by NOAA in response to request for production 2 above, the United States located the custodial records of several individuals involved in wildlife observation at several different locations, including Venice, Mobile, and Houma. The United States will produce the non-privileged contents of those custodial files as close to May 27, 2014 as practicable.

**SECOND SUPPLEMENTAL RESPONSE**:  Subject to and without waiving its objections, the United States further responds as follows:

Pursuant to the Order Regarding BPXP's Motion to Compel Discovery from U.S. (Rec. Doc. 12950), the United States will search the custodial file of Terri Rowles for the time period April 20, 2010 to December 31, 2012.  The United States will use the same search terms as those

used for Barbara Schroeder and Lori Schwake:

    a.    (great* OR more OR increas* OR high* OR large*) w/5 ((human OR people OR observ* OR volunteer* OR boat* OR vessel* OR responder* OR call*) w/15 (turtle* or dolphin* OR "marine mammal*" OR "Kemp's ridley" OR loggherhead* OR whale* OR cetacean* OR strand* OR carcass*))

    b.    (greater OR increas* OR high* OR more OR large* OR heightened) w/5 ((aware* OR sight* OR observ* OR find* OR document* OR report* OR record* OR attention OR recogn* OR detect*) w/15 (turtle* or dolphin* or "marine mammal" or "Kemp's ridley" OR kemp* OR loggherhead* OR whale* OR cetacean* OR "trand" OR carcass*))

    c.    Wildlife w/5 reconnaissance

    d.    (observ* OR searcher*) w/5 bias

The United States is in the process of collecting the mailbox of Dr. Rowles and will conduct the search and produce non-privileged documents as soon as practicable.  The United States will provide a date certain for completion of the production once it has determined the volume of responsive information.

    6.    All documents referring or relating to the impact, lack of impact, and/or recovery of the Shoreline Environment from Oil-Related Materials, Dispersants, and/or any Response Activity.

    **OBJECTIONS**:  The United States incorporates by reference its objections to requests for production 1 and 2 above.

    In meet and confer discussions, BP has requested that the United States conduct the following searches for documents created between April 20, 2010 and the present:

In the Coast Guard Archive: (("MC252" OR "oil*" OR "tar*") AND ("effect*" OR "impact*" OR "injur*" OR "recover*" OR "health*" OR "damag*" OR "clean*" OR "remov*" OR "monitor*" OR "treat*" OR "survey*" OR "set-aside*" OR "STR") AND ("shore" OR "intratidal" OR "nearshore" OR "intertidal" OR "beach*" OR "marsh*"OR "wetland*" OR "Barataria" OR "Middle Ground" OR "Middleground" OR "Jimmy"))

NOAA Custodian Frank Csulak: (("MC252" OR "oil*" OR "tar*") AND ("effect*" OR "impact*" OR "injur*" OR "recover*" OR "health*" OR "damag*" OR "clean*" OR "remov*" OR "monitor*" OR "treat*" OR "survey*"

OR "set-aside*" OR "STR") AND ("shore" OR "intratidal" OR "nearshore" OR "intertidal" OR "beach*" OR "marsh*"OR "wetland*" OR "Barataria" OR "Middle Ground" OR "Middleground" OR "Jimmy"))

NOAA Custodian Toni Debosier: (("MC252" OR "oil*" OR "tar*") AND ("effect*" OR "impact*" OR "injur*" OR "recover*" OR "health*" OR "damag*" OR "clean*" OR "remov*" OR "monitor*" OR "treat*" OR "survey*" OR "set-aside*" OR "STR") AND ("shore" OR "intratidal" OR "nearshore" OR "intertidal" OR "beach*" OR "marsh*"OR "wetland*" OR "Barataria" OR "Middle Ground" OR "Middleground" OR "Jimmy"))

Custodian Jacqui Michel: (("MC252" OR "oil*" OR "tar*") AND ("effect*" OR "impact*" OR "injur*" OR "recover*" OR "health*" OR "damag*" OR "clean*" OR "remov*" OR "monitor*" OR "treat*" OR "survey*" OR "set-aside*" OR "STR") AND ("shore" OR "intratidal" OR "nearshore" OR "intertidal" OR "beach*" OR "marsh*"OR "wetland*" OR "Barataria" OR "Middle Ground" OR "Middleground" OR "Jimmy"))

Custodian Mark Hester: (("MC252" OR "oil*" OR "tar*") AND ("effect*" OR "impact*" OR "injur*" OR "recover*" OR "health*" OR "damag*" OR "clean*" OR "remov*" OR "monitor*" OR "treat*" OR "survey*" OR "set-aside*" OR "STR") AND ("shore" OR "intratidal" OR "nearshore" OR "intertidal" OR "beach*" OR "marsh*"OR "wetland*" OR "Barataria" OR "Middle Ground" OR "Middleground" OR "Jimmy"))

The United States objects to running this additional search in the files of Jacquie Michel. As discussed during the April 16, 2014, Dr. Michel is an expert working on the United States' Natural Resources Damage Assessment.  The United States also objects to the searches for the other NOAA custodians because they are equally likely to intrude upon the Natural Resources Damage Assessment work.  Any search of these files is unduly burdensome because it exceeds the limitation on discovery into Natural Resources Damage Assessment work other than data as set forth in the United States' objections to request for production 1.

The United States objects to running this search in the Coast Guard archives because it is essentially a search for information regarding harm and human health effects, which exceeds the limit on discovery of analyses as opposed to data imposed by the Court and discussed above. Accordingly, the United States will not agree to these additional search strings.

**RESPONSE**:  Subject to and without waiving its objections, the United States responds as follows:

The United States incorporates by reference its response to requests for production 1 and 2 above.  In addition, BP already has access to the SCAT survey data generated as part of the response.  Accordingly, BP already has sufficient information responsive to this request and the United States will not conduct any further searches or productions of documents responsive to this request for production.

**SUPPLEMENTAL RESPONSE**:  Subject to and without waiving its foregoing objections, the United States further responds as follows:

The United States has confirmed with the United States Coast Guard, EPA, and NOAA that the data collected by the SCAT teams was collected and stored on BP's servers and is, therefore, already in the possession of BP.  In addition, the United States has inquired of the EPA, NOAA, and the Department of the Interior as to whether these agencies have maintained any repositories of environmental data and/or wildlife observations collected during the response.  EPA has identified no such repositories other than those that are publicly available on its website.  The Department of the Interior notified Defendants of the existence of the Cassini server in response to discovery requests served in Phases 1 and 2.  The United States offered defendants access to that server, but no party accepted the United States' offer.

NOAA identified several repositories:

a.    The National Oceanographic Data Center maintains some response data, all of which is available online and accessible at http://www.nodc.noaa.gov/deepwaterhorizon/

b.    The National Geophysical Data Center maintains data related to the response, most of which has already been provided to BP through noaanrda.org or other data sources.

NGDC did identify approximately .75 terabytes of sonar data that has not yet been made available to BP.  This data will be produced to BP as close to May 27, 2014 as practicable.

c.      NOAA's Seattle offices maintained an FTP server that was used to share response data with, among others, BP during the response.  The GIS data on that site may not yet have been provided to BP and therefore is being copied for production as close to May 27, 2014 as practicable.

**SECOND SUPPLEMENTAL RESPONSE**:  Subject to and without waiving its objections, the United States further responds as follows:

Pursuant to the Order Regarding BPXP's Motion to Compel Discovery from U.S. (Rec. Doc. 12950), the United States has notified BP that it will make the 10 terabytes of Deepwater Horizon data on the Cassini server available for inspection at the U.S. Geological Service's office in Denver, Colorado or through a webinar on a mutually agreeable date in June.

11.      All documents referring or relating to any analysis, assessment, evaluation, or study of the amount of Oil-Related Materials that was contained, collected, dispersed, burned, removed, or cleaned up in connection with Response Activities and/or any natural processes, including but not limited to documents relating to the preparation and publication of the "Oil Budget Calculator, Deepwater Horizon, Technical Documentation," and its appendices, dated November 2010, such as drafts, interview notes, communications, and outlines.

**OBJECTIONS:**  The United States objects to this request for production for the reasons set forth in its Seriousness Motion, its brief in support of the Seriousness Motion, its reply in support of the Seriousness Motion, and the US 26(f) Report.  The United States also incorporates by reference its objections to request for production 1.

The United States further objects to this request for production because by seeking "all documents referring or relating to" the amount of oil it seeks privileged materials including materials protected by the attorney-client, work product, and other privileges and protections.

9

The United States will identify any documents withheld solely on the basis of privilege as required and to the extent required by PTO 14.

In addition, the face of this discovery requests suggests that BP is using discovery for the Penalty Phase as a stalking horse to conduct discovery related to claims in other cases pending in the MDL, thereby attempting to skirt the greater restriction on third party discovery. Any such attempt is improper and therefore objectionable.

Further, the United States objects to this request as duplicative of information already requested and received in response to discovery served in Phase 1 and 2.  Specifically, in response to BP's requests for production 73 and 78-85, the United States searched for records that contained the following search string:

> ("MC252" OR "Deepwater Horizon" OR "Deep Water Horizon" OR "DWH" OR "Macondo" OR "Mississippi Canyon Block 252" OR "Transocean" OR "BP" OR "GOM" OR "Gulf of Mexico" OR ("Gulf" AND "Spill")) AND ("dispersed oil" OR "oil budget")[1]

*See* Doc. No. 3928-6 at 2, 3928-7 at 2, 3928-8 at 2, 3928-9 at 1-2, 3928-10 at 2.  Further, in response to BP's requests for production 123-137, the United States searched agreed locations and custodians for and produced all non-privileged documents responsive to the following search string:

> ("DWH" OR "Deepwater Horizon" or "MC252" OR "BP" OR "Transocean" OR "GOM" OR ("Gulf" AND "spill") OR "Macondo" OR "Mississippi Canyon Block 252") AND ("corexit" OR "9500%" OR "9527%" OR "dispersant" OR "brat%") AND ("permit%" OR "limit%" OR "control" OR "decision" OR "quantit%" OR "subsea" OR "surface" OR "volume" OR "amount" OR "appl%" OR "deci%" OR "direct%" OR "analy%" OR "identi%" OR "addendum" OR "use" OR "respons%" OR "alternative" OR "determin%" OR "guideline" OR "metric%" OR "fate" OR "dispersed oil" OR "harm" OR "effect*" OR "predict%" OR "injur%" OR "toxic" OR "SMART" OR "waiv%" OR "approv%" OR "measure" OR "assess" OR "shore" OR "coast%" OR "land" OR "inventor%" OR "deny" OR "deploy%" OR "benefit")

---

[1] Irrelevant elements of the search string have been omitted.

Doc. No. 3928-6 at 3, 3928-7 at 3, 3928-8 at 3, 3928-9 at 3, 3928-10 at 5, 3928-11 at 1.  In

addition, the United States produced all non-privileged records within the files of the National

Commission on the BP/Deepwater Horizon Oil Spill.

These searches constitute a reasonable search for information responsive to this request

for production.  Accordingly, the United States will not search for or produce any additional

documents responsive to this request.

In addition, the United States objects to this request for production as seeking information

already in the possession of BP and as unreasonably cumulative or duplicative.  BP employees or

contractors participated in the development of the Oil Budget Calculator.

In meet and confer discussions, BP has requested that the United States conduct searches

described below for documents created between April 20, 2010 and the present:

> In the Coast Guard Archive: (("Amount*" OR "quantif*" OR "quantit*" OR "volume*" OR "bopd" OR "bpd" OR "barrel*" OR "pound*" OR "ton*" OR "measur*") NEAR15 ("oil*" OR "hydrocarbon*") NEAR15 ("contain*" OR "collect*" OR "dispers*" OR "burn*" OR "skim*" or "remov*" or "clean*"))

> In the Coast Guard Archive: ("OBC" OR "Oil Budget") AND ("Draft*" OR "outlin*" OR "interview*" OR "note*"))

> NOAA Custodian Bill Lehr: (("Amount*" OR "quantif*" OR "quantit*" OR "volume*" OR "bopd" OR "bpd" OR "barrel*" OR "pound*" OR "ton*" OR "measur*") NEAR15 ("oil*" OR "hydrocarbon*") NEAR15 ("contain*" OR "collect*" OR "dispers*" OR "burn*" OR "skim*" OR "remov*" OR "clean*"))

> USGS Custodian Sky Bristol: (("Amount*" OR "quantif*" OR "quantit*" OR "volume*" OR "bopd" OR "bpd" OR "barrel*" OR "pound*" OR "ton*" OR "measur*") NEAR15 ("oil*" OR "hydrocarbon*") NEAR15 ("contain*" OR "collect*" OR "dispers*" OR "burn*" OR "skim*" OR "remov*" OR "clean*"))

> NIST Custodian Antonio Possolo: (("Amount*" OR "quantif*" OR "quantit*" OR "volume*" OR "bopd" OR "bpd" OR "barrel*" OR "pound*" OR "ton*" OR "measur*") NEAR15 ("oil*" OR "hydrocarbon*") NEAR15 ("contain*" OR "collect*" OR "dispers*" OR "burn*" OR "skim*" OR "remov*" or "clean*"))

The United States objects to conducting these additional searches for several reasons.

11

First, extending the time period from January 31, 2011 to the present.  As stated repeatedly during the face to face meeting regarding these discovery requests, the United States has conducted a reasonable inquiry of the individuals involved in working on the budget calculator and confirmed that the only work performed on the oil budget calculator after January 31, 2011 was software programming designed to make the calculator a tool that could be universally used to calculate oil budgets in future spills.  As such, searches for documents created after January 31, 2011 are not reasonably calculated to lead to the discovery of relevant information in this Phase of the Litigation.

Second, the custodian files that BP wants the United States to searches were each part of the earlier collection of documents from Phases 1 and 2.  These searches included strings that were sufficient to identify documents related to the oil budget calculator, the search strings included the terms "oil budget" and "dispersed oil" and "skim*" and "burn."  Accordingly, the search BP is requesting is duplicative of the searches already conducted.  Had BP wanted to include these additional terms, it was free to negotiate that in the Phase 2 discovery period, as none of these terms are uniquely related to the Penalty Phase.

Third, BP's proposed search strings are in no way limited to restrict the search to information related to the Defendants' violations or even to the Gulf of Mexico.  As such, these proposed searches are facially overbroad.  Accordingly, the United States will not agree to conduct these additional searches.

**RESPONSE**:  Subject to, and without waiving, the foregoing objections, the United States responds as follows:

The United States incorporates by reference its responses to previously served requests for production 73, 78-85, and 123-127, as well as the Rule 30(b)(6) testimony of Mark Miller.

**SUPPLEMENTAL RESPONSE**:  Subject to and without waiving its objections, the

United States further responds as follows:

Pursuant to the Order Regarding BPXP's Motion to Compel Discovery from U.S.

(Rec. Doc. 12950), the United States will search the Coast Guard Archive for the time

period April 20, 2010 to December 31, 2013 using the following search string:

oil AND (microb* OR biodegrad* OR degrad* OR dilut* OR microrgan* OR evaporat* OR sediment* OR dissolut* OR oxidat* OR nitrogen OR phosphorus OR bacteria* OR bioremediation)

In addition, the United States will search the custodial files of Bill Lehr, Sky Bristol, and

Antonio Possolo, for the time period April 20, 2010 to December 31, 2013 using the following

search string:

(DWH OR "Deepwater Horizon" OR MC252) AND ("oil w/5 water") AND ((natural W/5 transform*) OR microb* OR biodegrad* OR degrad* OR "natural*w/5 dispers*" OR (weathering W/5 slick) OR dilut* OR turbulence or microrgan* OR "wave action" OR evaporat* OR sedimentation OR dissolut* OR oxidat* OR nitrogen OR phosphorus OR benzene OR toluene OR bacteria* OR bioremediation OR bury OR buri*)

The United States is in the process of collecting the appropriate mailboxes for Bill Lehr, Sky

Bristol, and Antonio Possolo, and will conduct the search and produce non-privileged documents

as soon as practicable after BP has responded to the proposed search terms.  The United States

will provide a date certain for completion of the production once it has determined the volume of

responsive information.

13.     All documents referring or relating to any analysis, evaluation, determination, or study of shoreline oiling, impact (including but not limited to any impact on the environment, human health, and Gulf Coast communities), monitoring, and cleanup in connection with the *Deepwater Horizon* Spill and/or Response Activities, including but not limited to documents relating to whether cleanup completion standards had been satisfied.

**OBJECTIONS**:  The United States hereby incorporates by reference its objections and

response to Requests for Production 1, 2, and 6. In addition the United States objects to this

request for production because it seeks information protected from disclosure pursuant to the

Public Health Service Act, 42 U.S.C. 241(d) and any certificates issued pursuant to that Act.

The United States, through the National Institute of Environmental Health Sciences is currently

engaged in a large study of the human health impacts of the Incident, but this study has not yet

been completed.  Except as explicitly set forth below, the United States will not search for or

produce records from that study because of the privacy obligations imposed by the Act and

because the study is not yet complete.

The United States further objects to this request for production of documents because it

seeks discovery of individual medical records generated or possessed by the United States in the

course of the response because the intrusion into individual patients' privacy outweighs the

marginal benefit to be derived from such documents given the issues that are relevant to this

phase of the litigation.

The United States also objects to this request for production on the grounds that it seeks

information that is not reasonably calculated to lead to the discovery of admissible evidence.  As

the Court noted in the March 21, 2014 hearing when it limited discovery on the seriousness

penalty factor, detailed information regarding human health and environmental impacts is not

necessary to determine whether the Defendants' violations were serious and, therefore, the

burden of collecting and producing this information outweighs the benefit in this case.  In fact,

the face of this discovery requests suggests that BP is using discovery for the Penalty Phase as a

stalking horse to conduct discovery related to claims in other cases pending in the MDL, thereby

attempting to skirt the greater restriction on third party discovery. Any such attempt is improper

and therefore objectionable.

**RESPONSE**:  Subject to and without waiving the foregoing objections, the United States

responds as follows:

In addition to the data that will be produced as described in response to request for production 1, the United States will conduct a search of the Department of Labor's Occupational Safety and Health Administration's ("OSHA") centralized repository for Deepwater Horizon records and will produce daily reports compiled by OSHA during the initial stages of the response that summarize the monitoring of human health effects of the spill.  In addition, OSHA maintains information regarding its participation in the response on its website: https://www.osha.gov/oilspills/index.html.

The United States also refers defendants to EPA's BP Spill website at http://www.epa.gov/bpspill/, including but not necessarily limited to http://www.epa.gov/bpspill/qanda.html.

In addition, the National Institute of Environmental Health Sciences has published some preliminary observations regarding the human health effects of the spill and the United States will conduct a reasonable search for the information that has been made public regarding this study.  These documents will be produced on or before the deadline for producing documents to be instituted by the Court.

**SUPPLEMENTAL RESPONSE:**  The United States hereby incorporates by reference its foregoing second supplemental response to request for production 6.

III. **INTERROGATORIES**

10.      Identify the total amount of Oil-Related Materials that you contend were contained, collected, dispersed, burned, and cleaned up as a result of the Response Activities, as well as the amount of Oil-Related Materials that were removed through natural processes, including the portions of the total volume attributable to each process (for example, through the use of skimming, boom, dispersants, *in situ* burning, shoreline cleanup, and natural processes), and a detailed description of how you performed these analyses.  As part of your response, please identify the persons most knowledgeable about, and all statements, documents, and other materials that describe or reflect, the analyses.

15

**OBJECTIONS**:  The United States objects to this interrogatory for the reasons set forth in its Seriousness Motion, its brief in support of the Seriousness Motion, its reply in support of the Seriousness Motion, and the US 26(f) Report.  Moreover, the United States objects to this request as overbroad in light of the Court's ruling cited in the United States' objections to Request for Production 1.

In addition, the United States objects to this request for production as calling for the premature disclosure of expert opinions.  As the United States has already disclosed, the United States anticipates that its evidence regarding the actual and potential environmental harm caused by the Defendants' violation will be presented through expert testimony that will be disclosed in accordance with the schedule to be established by the Court.

The United States further objects to this interrogatory because it seeks information not reasonably calculated to lead to the discovery of admissible evidence in this Phase of the litigation.  The focus of the penalty phase is the seriousness of the Defendants' violations, not whether other activities have also impacted the environment of the Gulf of Mexico.  If interpreted to call for discovery into the detailed environmental impact of Defendants' violations or the removal actions, this interrogatory is a stalking horse intended to provide Defendants a preview of the natural resource damages claims not yet brought by the United States.

**RESPONSE**:  Subject to, and without waiving its objections, the United States responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), the United States directs Defendants to the documents produced in response to previously served requests for production 73, 78-85, and 123-127, as well as the Rule 30(b)(6) testimony Mark Miller.

**SUPPLEMENTAL RESPONSE:** Subject to and without waiving the foregoing

objections, the United States provides the following supplemental response:

As stipulated in 810,000 barrels of "Collected Oil" were collected during the spill. "Collected Oil" is oil that flowed from the subsurface reservoir, through the well, through the blow-out preventer, and never came into contact with any ambient sea water, and was not released to the environment in any way (other than via flaring approved by the FOSC).  See Stipulation Mooting BP's Motion for Partial Summary Judgment Against the United States, Rec. Doc. 8620 (Feb. 19, 2013).

**SECOND SUPPLEMENTAL RESPONSE:**  Subject to and without waiving the foregoing objections, the United States provides the following supplemental response:

Pursuant to the Order Regarding BPXP's Motion to Compel Discovery from U.S. (Rec. Doc. 12950), the United Sates hereby states that the ultimate fate of the oil-related materials discharged from the explosion and eighty-seven day discharge from Defendants' well is still the subject of scientific inquiry during the course of the natural resources damage assessment. Reserving its right to provide more detailed or refined analysis in later phases such as a claim for natural resource damages, for purposes of the Penalty Phase the United States will rely upon stipulations and other proof submitted in Phase 2 as well as the Oil Budget Calculator's estimate of the amounts of oil contained, collected, dispersed, burned, and cleaned up as a result of the Response Activities.  The estimates based upon the proof submitted in Phase 2 and the Oil Budge Calculator are summarized in the attached table:

| Calculated Values | Cumulative |
|---|---|
| **Discharged** | **5,000,000** |
| Recovered via RITT and Top Hat | 810,000 |
| Dispersed Naturally | 763,948 |
| Evaporated or Dissolved in the waters of the Gulf | 1,242,668 |
| **Available for Recovery** | 2,183,384 |
| Chemically dispersed | 418,075 |
| Burned | 263,900 |

| Skimmed | 156,694 |
|---|---|
| **Remaining in the Waters of the Gulf** | 1,344,715 |

*See* TREX-9182 at A2.7; United States' Proposed Findings of Fact for Quantification Segment of the Phase Two Trial, Rec. Doc. 12048-1 (Dec. 20, 2013); Stipulation Mooting BP's Motion for Partial Summary Judgment Against the United States, Rec. Doc. 8620 (Feb. 19, 2013).

The United States identifies the authors and contributors to the Oil Budget Calculator Technical Documentation as the individuals most knowledgeable about the Calculator estimates, which constitute the United States contentions, as of May 1, 2014, regarding the total amount of oil-related materials that were contained, collected, dispersed, burned, and cleaned up as a result of Response Activities.  Those authors and contributors are:

Lehr, Bill National Oceanic and Atmospheric Administration (NOAA)
Bristol, Sky U.S. Geological Survey (USGS)
Possolo, Antonio National Institute of Standards and Technology (NIST)
Allen, Alan, Spiltec
Boufadel, Michel, Temple University
Coolbaugh, Tom, ExxonMobil
Daling, Per, SINTEF
Fingas, Merv, Environment Canada (retired)
French McCay, Debbie, Applied Science Associates
Goodman, Ron Innovative, Ventures Ltd.
Jones, Robert NOAA
Khelifa, Ali, Environment Canada
Lambert, Pat, Environment Canada
Lee, Ken, Fisheries and Oceans Canada
Leifer, Ira University of California Santa Barbara
Mearns, Alan, NOAA
Overton, Ed, Louisiana State University
Payne, James, Payne Environmental Consultants
Beegle-Krause, C.J., NOAA
Farr, Jim, NOAA
Galt, Jerry, NOAA
Hammond, Steve, U.S. Geological Survey
Lasheras, Juan, University of California San Diego
Mabile, Nere, BP
Miller, Mark, NOAA
Svekovsky, Jan, Ocean Imaging

Yapa, Pooji, Clarkson University

The United States also identifies the witnesses who testified on behalf of the United States in the

Quantification Phase trial and depositions as other individuals knowledgeable about the total

amount of oil discharged, an input into the question of how much was collected, burned, etc.

11.     Identify and describe in detail all bases for any contention by the United States
that use of Corexit 9500 and/or Corexit 9527 during the Response was ineffective or had any
counterproductive or harmful effects on the environment or human health.  As part of your
response, please identify the persons most knowledgeable about, and all statements, documents,
and other materials that describe or reflect, the alleged ineffectiveness or counterproductive or
harmful effects of Corexit 9500 and/or Corexit 9527.

**OBJECTIONS**:  The United States objects to this interrogatory for the reasons set forth

in its Seriousness Motion, its brief in support of the Seriousness Motion, its reply in support of

the Seriousness Motion, and the US 26(f) Report.  Moreover, the United States objects to this

request as overbroad in light of the Court's ruling cited in the United States' objections to

Request for Production 1.

In addition, the United States objects to this request for production as calling for the

premature disclosure of expert opinions.  As the United States has already disclosed, the United

States anticipates that its evidence regarding the actual and potential environmental harm caused

by the Defendants' violation will be presented through expert testimony that will be disclosed in

accordance with the schedule to be established by the Court.

The United States further objects to this interrogatory because it seeks information not

reasonably calculated to lead to the discovery of admissible evidence in this Phase of the

litigation.  The focus of the penalty phase is the seriousness of the Defendants' violations, not

whether other activities have also impacted the environment of the Gulf of Mexico.  If

interpreted to call for discovery into the detailed environmental impact of Defendants' violations

or the removal actions, this interrogatory is a stalking horse intended to provide Defendants a

19

preview of the natural resource damages claims not yet brought by the United States.

**RESPONSE**:  Subject to, and without waiving its objections, the United States responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), the United States directs the Defendants to the documents produced in response to previously served requests for production 73, 78-85, and 123-127 and the foregoing requests for production 1 and 2.

**SUPPLEMENTAL RESPONSE:**  Subject to and without waiving the foregoing objections, the United States provides the following supplemental response:

Pursuant to Federal Rule of Civil Procedure 33(d), the United States directs Defendants to the Rule 30(b)(6) testimony that will be provided in response to Topic 3, including but not limited to the testimony of Mace Baron and Robyn Conmy.

**SECOND SUPPLEMENTAL RESPONSE**:  Subject to and without waiving its objections, the United States further responds as follows:

Pursuant to the Order Regarding BPXP's Motion to Compel Discovery from U.S. (Rec. Doc. 12950), the United Sates hereby states "whether the use of Corexit 9500 and/or Corexit 9527 during the response was ineffective or had any counterproductive or harmful effects on the environment or human health."  The United States does not contend that Corexit 9500 and/or Corexit 9527, as used to chemically disperse oil during the Response, were ineffective at reducing the amount of oil on the surface of the Gulf and thereby reducing the amount of surface oil that reached shorelines.

Although the long-term environmental effects of Corexit 9500 and/or Corexit 9527 are not fully understood, it was well known at the time of the Response that the use of chemical dispersants involves a balancing of oil exposure for surface-dwelling and shoreline species

(which may be reduced with dispersant application) and exposure for aquatic life below the

surface (which may be increased with dispersant application).  Thus, the use of mechanical

methods of oil recovery has generally been prioritized over the use of chemical dispersants (and

was in this Response).  The environmental effects of the use of dispersants in this Response

(which included subsurface dispersant application and the use of a larger quantity of dispersants

than had previously been applied in domestic oil spills) are still being investigated as part of the

ongoing natural resources damage assessment.

The United States also reserves the right to contend that there is at least a risk that

Corexit 9500 and/or Corexit 9527 may have adverse effects on human health when applied in the

quantity and manner used in this response.

EPA's fact sheet on the Incident states:

**Are any human health effects expected as a result of using the dispersants?**

People working with dispersants are strongly advised to use a half face filter mask or an
air-supplied breathing apparatus to protect their noses, throats, and lungs, and they should
wear nitrile or PVC gloves, coveralls, boots, and chemical splash goggles to keep
dispersants off skin and out of their eyes. CDC provides more information on reducing
occupational exposures while working with dispersants during the Gulf Oil Spill Response.

*See* http://www.epa.gov/bpspill/dispersants-qanda.html.

The National Institute of Occupational Safety and Health's (NIOSH) website states:

NIOSH recommends that worker exposures to petroleum distillates, 2-
butoxyethanol and similar cleaning agents in dispersants be reduced to prevent
harmful respiratory and dermal health effects. Workers can be protected by taking
the following steps:
* Mix and load dispersants in well ventilated areas.
* Use automated spraying systems to apply dispersants when available.
* Remain upwind of the mists that are generated if spray systems are manned.
* Wear nitrile gloves during mixing, loading, or spraying of dispersants to
  prevent skin irritation.
* Wear protective eyewear when mixing, loading, or spraying dispersants.
* Wash hands and any other body parts exposed to dispersants thoroughly with
  soap and water.
* If personal air monitoring indicates the above steps are not effective at

reducing exposures below applicable OELs, then respiratory protection would be needed. Respirators should be used as part of a comprehensive respiratory protection program that includes proper selection, training, and maintenance. The NIOSH respirator topic page at http://www.cdc.gov/niosh/topics/respirators/ provides information for safety and health officers who are designated to establish and conduct such programs.

*See* http://www.cdc.gov/niosh/topics/oilspillresponse/dispersants.html

The potential or actual adverse impacts of Corexit 9500 and/or Corexit 9527 may be the subject of expert testimony on behalf of the United States.  The United States will disclose any such expert testimony in accordance with the schedule set forth by the Court.

Persons in the employ of the United States during the response most knowledgeable about the concerns regarding the potential adverse environmental or health impacts of Corexit 9500 and/or Corexit 9527 include:

> Mace Baron (environmental)
> Robin Conmy (environmental)
> Roger Laferriere (environmental)
> Lisa Jackson (environmental)
> Dana Tulis (environmental)
> Thad W. Allen (overall knowledge of concerns raised during response)
> Jane Lubchenco (environmental)
> John Howard  (human health/worker safety)
> Peter Koufopoulos (human health/seafood safety)
> Dr. Ronald Benner (human health/seafood safety)

## IV.    REQUESTS FOR ADMISSION

### B.    Requests for Admission Propounded by Anadarko.

16.    Admit that the Minerals Management Service (now Bureau of Safety and Environmental Enforcement) has not imposed any penalties, under the Outer Continental Shelf Lands Act, against any non-culpable non-operating lessees on the Outer Continental Shelf for violations by the designated operators of offshore oil drilling regulations.

**OBJECTIONS:**  The United States objects to this request for admission as calling for information that is not relevant to any issue in the penalty phase of this litigation.  The

imposition of a civil penalty is a case and fact specific matter and the imposition or non-imposition of a civil penalty on other entities has no bearing on the appropriate penalty to be imposed upon a party that is liable for one of the largest environmental disasters in the Nation's history.

Further, the United States objects to this request to the extent it seeks to create a category of violators not recognized under OCSLA – the "non-culpable non-operating lessees."  Neither OCSLA nor the Clean Water Act distinguishes between such parties when establishing the penalties to be imposed for violation of these statutes.  In its tracking systems, BSEE does not identify whether the violators penalized under OCSLA are designated operators, operating lessees, or non-operating lessees.  This request imposes a substantial burden upon BSEE to determine whether it has imposed any civil penalties, under the Outer Continental Shelf Lands Act, against any non-culpable non-operating lessees on the Outer Continental Shelf for violations of offshore oil drilling regulations.

**RESPONSE**:  Subject to and without waiving its objections, the United States responds as follows:

In its tracking systems, DOI does not identify whether the violators fined under the Outer Continental Shelf Lands Act are designated operators or "non-operating investors."  Therefore, in order to determine whether DOI has imposed any penalties, under the Outer Continental Shelf Lands Act, against any non-culpable non-operating lessees on the Outer Continental Shelf for violations by the designated operators of offshore oil drilling regulations the Department would be required to investigate the case file of every single penalty imposed under the statute since its enactment, a manifestly unreasonable inquiry.  For this reason, based on a *reasonable* inquiry, the United States cannot admit or deny this request.

23

**SUPPLEMENTAL RESPONSE**:  Subject to and without waiving its objections, the United States further responds as follows:

The United States admits that, based upon a thorough review of the information maintained from January 1, 2007 to December 31, 2013, by the Minerals Management Service (now Bureau of Safety and Environmental Enforcement (BSEE)), neither BSEE nor its predecessor agencies has assessed any civil penalties pursuant to 43 U.S.C. § 1350 (Sec. 24 of the Outer Continental Shelf Lands Act (OCSLA)), for violation of the regulations promulgated under OCSLA governing offshore oil and gas drilling operations, against any lessee that is not the operator, as those terms are defined in 30 C.F.R. § 250.105.

Respectfully submitted,

JOSHUA WILKENFELD
Acting Deputy Assistant Attorney General
Civil Division
PETER FROST
Director, Torts Branch, Civil Division
Admiralty and Aviation
SHARON SHUTLER
MALINDA LAWRENCE
LAURA MAYBERRY
Trial Attorneys
R. MICHAEL UNDERHILL, T.A
Attorney in Charge, West Coast Office

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
MICHAEL MCNULTY
SARAH HIMMELHOCH
Senior Litigation Counsel
NANCY FLICKINGER
Senior Attorney
PATRICK CASEY
RICHARD GLADSTEIN
DANIEL S. SMITH
Senior Counsel
ABIGAIL ANDRE
A. NATHANIEL CHAKERES
ANNA CROSS
RACHEL HANKEY
JUDY HARVEY
RACHEL KING
ERICA PENCAK
BRANDON ROBERS
GORDON YOUNG
Trial Attorneys

/s/ Sarah D. Himmelhoch
STEVEN O'ROURKE
Senior Attorney

24

Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
Facsimile:  202-514-2583
E-mail:  steve.o'rourke@usdoj.gov
KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

/s/ Sarah D. Himmelhoch