

| | | |
|---|---|---|
| 820 O'Keefe Avenue<br>New Orleans, Louisiana<br>70113-1116<br><br>p: (504) 581-4892<br>f: (504) 561-6024<br>e: info@hhklawfirm.com<br><br>hhklawfirm.com | Harry Herman (1914-1987)<br>Russ M. Herman*<br>Maury A. Herman*<br>Steven J. Lane<br>Leonard A. Davis*<br>James C. Klick[1]<br>Stephen J. Herman<br>Brian D. Katz<br>Soren E. Gisleson<br>Joseph E. Cain | Jennifer J. Greene[2]<br>John S. Creevy<br>Aaron Z. Ahlquist[3]<br>Craig M. Robinson<br>Adam H. Weintraub[4]<br>Mikalia M. Kott[5]<br>Donald A. Mau<br>Danielle Treadaway Hufft<br><br>Of Counsel:<br>Herbert A. Cade<br>Morton H. Katz*<br>Joseph A. Kott, M.D., J.D. |

This Firm and its Partners Are Also Partners in Herman Gerel, LLP

\* A Professional Law Corporation
[1] Also Admitted in Texas
[2] Also Admitted in Arkansas
[3] Also Admitted in Tennessee
[4] Also Admitted in New Jersey & Pennsylvania
[5] Also Admitted in Colorado

June 2, 2014

*Via Email*

Nathan Block
BP Senior Counsel, GCRO
BP America, Inc.
737 N. Elridge Pkwy
E3 7.185
Houston, TX 77079
Nathan.block@bp.com

         RE:    **Wisner Access Agreement**
                  **Our File No.: 27818-0936**

Dear Mr. Block,

Please allow this letter to serve as Wisner's response to BP's May 22, 2014 letter attempting to terminate the Access Agreement. For the reasons that follow, the Agreement is not capable of being unilaterally canceled by BP: (1) the Access Agreement is a private agreement with BP which contains its own duties and obligations; (2) BP's reliance upon whatever the Coast Guard may have decided (erroneously) ignores the Access Agreement's contractual obligation to employ best practices, regardless of cost; and (3) the Access Agreement vests Wisner with the exclusive right to determine when the clean-up is concluded and, thus, when the Access Agreement will end.

Due to these reasons, Wisner makes the instant demand:

1. As for Breach 1, Wisner demands that you agree to perform the remediation and assessment methods outlined in the Wisner Science Team's *Remedial Plan for Breach 1 DWH Oil Contamination, Fourchon Beach, Louisiana*, attached as Exhibit "A".

2. As for Assessment of the wetlands and near-shore oil mats, Wisner demands that you agree to perform the methods outlined in the Wisner Science Team's *Scientific Assessment of Remediation of MC252 Oil on Fourchon Beach, Wetlands, and Offshore Region, Louisiana*, attached as Exhibit "B".



EXHIBIT H

Time is of the essence. With the Caminada II Project a mere 8-12 months away, resulting in the burial of oil over these sensitive areas, the work must begin as soon as practicable. Should we not hear from you by close of business **Wednesday June 4, 2014**, Wisner will seek immediate relief from the District Court.

**The History of Oiling on the Wisner Property**

The Wisner Donation owns approximately 35,000 acres of land in lower Lafourche Parish, generally bounded by Bayou Lafourche, Caminada Bay and the Gulf of Mexico, extending north to Leeville, Louisiana. The southern boundary is located between Belle Pass on the west and Elmer's Island on the east. This land is referred to as the Donation's "Fourchon" property.

From south to north, the Fourchon property includes approximately nine miles of native sandy beaches and dunes, natural bayous and channels, unique and rare mangrove forests, salt pans, tidal flats, and salt water marsh. These beach and wetland areas are critical habitat for hundreds of species of plants and animals, several rare and endangered species, and form a vital buffer against storms storm-surge flooding, and sea level rise for areas inland. Fourchon beach is naturally sand-starved shore and maintaining as much sand as possible is vitally important to the integrity of the entire beach-wetland system.

BP oil first arrived in large quantities at the Donation's Fourchon property on or around May 20, 2010. Through the ensuing months, additional fresh oil periodically appeared. Each time, the oil that was not immediately recovered was quickly covered by sand. In many cases the buried oil is found in large sheets referred to as "tar mats."

In July 2010, waves and storm surge associated with tropical storms Alex and Bonnie deposited fresh oil emulsion in areas above the ordinary high tide line. In addition, during these tropical events, oil penetrated the beach. Oil entered the washover fans and channels and natural bayous, as well as the Donation's bays, salt flats, mangrove and saltwater marshes found behind the beach crest. Tidal action, waves and wind have also carried this oil into the saltwater marshes in the interior of the Wisner Donation's property.

Oil containment booms, snare boom designed to catch oil, anchors for boom, and other equipment were deployed on the Donation's property. On a daily basis, cleanup workers removed oil contaminated sediments, most in the form of oil impregnated sands and shell material, from Fourchon beach. At its peak, Unified Command engaged over 1500 men and women in a single day removing oil contaminated from private property on Fourchon beach. The response effort included hundreds of vehicles driving across the beach as well as heavy equipment, tents, and support facilities.

Since late May 2010, tar balls and tar patties, and droplets and sheen from the BP spill have continued to settle on the Donation's Fourchon beach property. Oil that was buried on the beach is periodically uncovered by wind and wave action. As oil from the MC252 spill approached the Donation's property in May of 2010,the Donation was forced to focus on responding, in order to preserve the trust property. From that time forward, a large majority of the Donation's time and resources have of necessity been spent on response related issues.

The Donation was required to provide daily on-scene monitoring, assessment and site supervision, often for as much as 18 hours a day.   The Donation was also required to retain scientific advisers to provide specific scientific input and advice on response assessment and removal methodology, and to accurately measure the extent of the contamination affecting the Fourchon property.
30.   The Donation was also required to retain experts in environmental matters and emergency response, including attorneys to provide advice on the BP response

Given its location, Wisner is believed to be the location where the highest amount of oiled material has been recovered.   By your own account, BP estimates that approximately 10 million pounds of oily material have been removed from the Wisner beach.   Wisner believes that number is significantly higher.   BP has never replaced the oiled sand with clean sand which is critical for sustaining the integrity of the beach.

**The Access Agreement**

The Access Agreement obligates BP to remove the oil from the Property, employ the highest industry standards in removing the oil, reimburse Wisner to monitor and assess BP's remediation efforts, and turn over all documents and data obtained during the process.   The Access Agreement granted BP access to the Donation's Fourchon property for purposes of conducting response activities.   Unlike adjoining landowners, Wisner did not charge BP a rental or lease fee for BP's occupation of Wisner property in connection with the spill response.   Rather, the Access Agreement contained a number of terms ensuring that Wisner had full operational rights that the Property was being properly remediated.

First among these terms was that BP was responsible for removing the oil and paying restoration costs.   CITE   To ensure that the restoration was to be properly conducted, the Access Agreement provided as follows:  "The highest industry standards shall be used to insure environmentally sensitive practices while carrying out operations on the Wisner Property."    *Access Agreement*, ¶ 8.   *See also id.* at ¶ 9 ("Nothing herein shall be construed to diminish [Wisner's] right to choose and control restoration activities upon its lands.   Nothing herein shall act as a waiver or release of any obligation [BP] may owe [Wisner] as a result of oil released from Deepwater Horizon incident.").

For the Access Agreement to operate properly, all clean up operations were under the direction of BP.   BP could not assign or transfer any of its obligations under the Agreement.   *Id.* at ¶ 14.   BP was only allowed to use people or parties under its direct control to access Wisner Property.   *Id.*

As for cancelling the Agreement, only Wisner possessed the right to cancel at will.   *Id.* at ¶12.   Wisner at all times also possessed the right to exclude any individual from its property at its sole discretion.   *Id.*    Given its control over the direction of assessment and remediation, coupled with BP's obligation to reimburse all expenses, Wisner must approve of any decision to declare the Property clean.

BP now stands in breach of the Access Agreement in the following non-exclusive ways:   (1) BP has unilaterally purported to cancel the Access Agreement, implicitly refusing to abide by its obligations thereunder; (2) BP never made any independent assessment that the Property was fully remediated based upon the "highest industry standards"; (3) by unilaterally refusing to perform its obligations under the Access Agreement, BP has interfered with Wisner's ability to assess whether the property has been fully remediated and restored; and (4) BP's unilateral "cancellation" of the

Access Agreement is effectively a rejection of Wisner's reasonable and appropriate proposed assessment and remediation plans.

**Wisner's Immediate Demands Pursuant to the Access Agreement**

The Access Agreement imposes upon BP the separate obligation to assess, remediate, and restore Wisner's property. This obligation is distinct and independent of any activities by the U.S. Coast Guard or the Joint Incident Command. BP's attempt to rely upon the Federal on Scene Coordinator is a breach of the Access Agreement. Wisner demands that the following activities commence as soon as practicable:

1. The assessment and remediation outlined in the Wisner Science Team's *Remedial Plan for Breach 1 DWH Oil Contamination, Fourchon Beach, Louisiana*, attached as Exhibit "A".

2. The wetland and near shore assessment outlined in the Wisner Science Team's *Scientific Assessment of Remediation of MC252 Oil on Fourchon Beach, Wetlands, and Offshore Region, Louisiana*, attached as Exhibit "B".

As the Wisner Science Team outlined in their Report, there are large quantities of oil still present at Breach 1. It is unfortunate that while the Access Agreement had been in place for almost four years, you provided Wisner with no forewarning or opportunity to discuss before unilaterally cancelling. Please respond to these demands for specific performance by the close of business this Wednesday June 4, 2014. If we do not hear from you by that time, we will treat your silence as another rejection.

Sincerely,

SOREN E. GISLESON, ESQ.

cc:   Greg Johnson, Esq.
      Amanda Phillips
      Steve Herman, Esq.
      Jim Roy, Esq.
      Calvin Fayard, Esq.
      Fred Herman, Esq.
      Walter Leger, Jr.
      Bob Wright, Esq.
      Tom Barbera, Esq.
      Blayne Honeycutt, Esq.