UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>This Document Relates to:<br><br>No. 12-970 | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

**MEMORANDUM IN SUPPORT OF
CLASS COUNSEL'S MOTION TO ALTER OR AMEND
ORDER ADOPTING MATCHING POLICY NO. 495**

Eligible Business Economic Loss (BEL) Claimants in the Court-Supervised Settlement Program and the Economic & Property Damages Settlement Class ("Claimants") respectfully submit the following memorandum in support of their Motion to Clarify and/or Alter or Amend the Court's May 28, 2014 Order Dissolving Preliminary Injunction Related to BEL Claims & Implementation of Policy 495: Matching of Revenue and Expenses [Doc 12948]:

**MAY IT PLEASE THE COURT:**

On May 28, 2014, the Court issued its Order Dissolving Preliminary Injunction Related to BEL Claims & Implementation of Policy 495: Matching of Revenue and Expenses [Doc 12948] (hereinafter "Order").  The Order provides that Policy No. 495 shall be applied to all BEL Claims currently in the claims process at any point short of final payment, including those claims currently in the claims appeal process, save and except those claims that had prior to October 3, 2013, received a final Eligibility Notice or Denial Notice and either (a) no timely appeal had been filed or (b) the claim did not satisfy the criteria of an appealable claim under the terms of the Settlement Agreement.

Page | 1

Eligible Claimants seek clarification that certain claims are unaffected by the recently adopted Policy 495, namely: **(a)** claims currently in the appeals process where no party raised matching as an issue on appeal, **(b)** claims which completed the appeals process where no matching issue was raised, and **(c)** claims which completed the appeals process because they were compromised between BP and the Claimant in the settlement program appeal. Claims in these categories should not be subject to recalculation or serial appeals. Indeed, the new policy should not apply to any Claim where the Claimant executed an Individual Release predicated on a BEL Eligibility Determination.

### A. <u>CLAIMS APPEALED ON ISSUES OTHER THAN MATCHING SHOULD PROCEED WITHOUT APPLICATION OF POLICY 495</u>

Throughout the implementation of the claims process, the Court carefully balanced BP's right to preserve its matching arguments with the Claimants' right to be paid on a timely basis. While the Court initially denied BP's attempts to impose matching, it allowed BP to raise the issue in program appeals in order to prevent waiver of the issue as to those specific claims. The Court's April 24, 2013 Order made BP's obligation clear by requiring BP to designate if its appeal included the "Matching of Revenue of Expenses issue" that the Court had resolved against BP.[1] If BP did not contend that matching was an issue in the appeal of an individual BEL Claim, BP was effectively conceding that the Claim was sufficiently matched, and the issue was waived.

After the Fifth Circuit's October 2, 2013 decision, and the entry of a preliminary injunction relating to matching, the Court continued to allow final payment of claims when BP did not raise the matching issue. The Court's October 3, 2013 Order in response to the Fifth Circuit's October 2, 2013 opinion directed the Administrator to identity and stay payment of

---

[1] Doc. 9538.

those claims and appeals that raised matching as an issue, but ordered all other appeals to continue.[2]

The Court's October 18, 2013 Preliminary Injunction[3] provided that an appealing party was obligated to specifically preserve matching as an issue in any appeal if it wished to prevent a waiver of that issue. That injunction directed the Program to "review such appeals to determine whether any party raised the matching of revenues and expenses as a basis for appeal." If the issue was not raised, the injunction did not prevent resolution of the appeal and payment of the claim.

The Court reiterated the requirement that a party must raise the matching issue in connection with any appeal, or the issue would be waived, in its November 5, 2013 Order clarifying the matching preliminary injunction.[4] That order explicitly provides that appeals that did not raise the matching issue should continue unaffected by the October 18 matching preliminary injunction. But for the Court's December 5, 2013 injunction staying payment of all claims based on BP's "arguments on causation,"[5] BEL Claims that were appealed where matching was not raised would have been paid while the matching policy was being developed and implemented.

BP followed the Court's direction to designate "matching" as one of the grounds for many appeals, and explicitly raised the matching issue for all claims where BP contended the Claimant's profit and loss statements were not sufficiently matched. However, BP appealed many other claims, raising a myriad of other issues, and not raising, designating or otherwise

---

[2] Doc. 11566.

[3] Preliminary Injunction Related to BEL Claims, Doc. 11697.

[4] Order Clarifying Preliminary Injunction Regarding Claims Currently in the Appeals Process, Doc. 11790.

[5] Order Awarding Preliminary Injunction Related to BEL Claims, Doc. 11928.

preserving the matching issue. BP must have believed, in those cases, that the Claim was sufficiently matched. In fact, the Court-Supervised Settlement Program identified over 100 claims falling into this category, and, consistent with the Court's November 5, 2013 clarification of the matching injunction, sent repeated sets of notices to BP and Class Counsel indicating that the Program intended to continue to process the appeals of these claims because no matching issue had been presented or preserved with respect to such claims.[6]

The Order is unclear whether the Court intended to abandon the procedures set out in the matching preliminary injunction, as clarified by the November 5, 2013 order, relating to appeals that did not include the matching issue. The Court's prior orders, as well as the Rules Governing the Appeals Process,[7] provide that any dispute over matching was waived for claims currently in the appeals process where the issue was not preserved. Consequently these claims should not be subject to re-calculation under Policy 495, the issuance of a second eligibility notice, and a potential new appeal. Claimants seek clarification that the procedures set out in the November 5, 2013 order continue to apply, and that said claims are not subject to recalculation.

### B. CLAIMS THAT COMPLETED THE APPEALS PROCESS AND THAT DID NOT INVOLVE MATCHING SHOULD BE PAID WITHOUT APPLICATION OF POLICY 495

Claimants also seek clarification that a second category of claims, which are no longer in the claims process, should be paid without further review or recalculation. There are a group of claims where matching was not raised on appeal and which completed the appeals process, and

---

[6] *See, e.g.,* E-Mail from Jennifer Goodwin dated May 16, 2014 (attached as Exhibit A).

[7] Rules Governing the Appeals Process, "Rule 14. Issues on Appeal. The issues on appeal shall be limited to those originally raised by the appellant claimant or BP in the Request for Appeal Form/Notice of Appeal, except that if the appellee had a right to bring an appeal and is consolidating that appeal under Rule 9, the appellee may raise a new issue in its Initial Proposal, and the appellant may address such issue in its Final Proposal. As provided in Rule 9, a claimant may raise issues and seek additional compensation in the event of a BP appeal, even where the claimant did not seek Reconsideration."

were merely awaiting payment when the Court issued the December 5, 2013 Order staying the payment of all claims based on the causation issue.[8] In these cases, BP failed to seek any further review of the appellate issues decided, and the appeals process was completed. There is no basis to subject these claims to recalculation, as there was no further avenue for review of the final determination of the amount of the claim. As discussed above, BP waived the matching issue when it appealed the claims without preserving the issue, conceding that the Claims were sufficiently matched. There is no justification for recalculating the claims after the appealed issues have been resolved.

### C. COMPROMISED CLAIMS SHOULD BE PAID WITHOUT APPLICATION OF POLICY 495

A third group of claims include situations where the parties compromised the claim during the appeal process and reached a specific agreement on the amount that would be paid. Under the Rules Governing the Appeals Process, the parties may reach a compromise at any time in the process, and when they reach an agreement, the "appeal process shall end."[9] Since there is no longer an active appeal in these cases, the parties' Claim-specific compromise agreement should be binding, and the claim should be paid as agreed without further calculation. At the time of the agreement resolving the appeal, both parties had to recognize the possibility that new policies could be adopted that would change the claim calculation. Both parties agreed to settle for a specific claim payment, and the Program should honor that agreement.

### D. THE TERMS OF THE APPROVED RELEASE EXECUTED BY CLAIMANTS PREVENTS APPLICATION OF POLICY 495

Claims where an Individual Release was executed by the Claimant based on and in consideration for a BEL Eligibility Determination should also be recognized, without re-

---

[8] Preliminary Injunction Related to BEL Claims, Doc. 11928.
[9] Rules Government the Appeals Process, Rule 17(c).

calculation of the Claim under the new matching policy. The Parties agreed in the Release that subsequent developments would not alter the claim determination while the matter was on appeal. The Release language itself confirms that the claim as calculated at that time would be paid even if subsequent court decisions might result in changes to the amount of the calculated payment. For example, the notice of Important Information which precedes the Acknowledgement signed by the Claimant states that:

> The settlement payment you have been offered arises under the auspices of the federal District Court in New Orleans presiding over the multidistrict litigation titled In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (MDL No. 2179). A class action settlement has been proposed in that case, but the Court has not yet given final approval of that proposed settlement. If the Court does approve the proposed class action settlement, an appellate court could reverse the approval. In addition, **it is possible that the terms of the proposed settlement may change in the future - for better or for worse - as a result of further legal proceedings**. **However, if you sign this Individual Release, none of those uncertain future events will affect you. By signing this Individual Release you are forever waiving and releasing all claims that you may have against BP (except for Expressly Reserved Claims) in exchange for the compensation being provided.** In fact, even if the Court does not approve the proposed class action settlement agreement or the approval is reversed by an appellate court, you shall continue to be bound by this Individual Release.[10]

Section 13.4 of the Settlement Agreement provides that the Agreement "shall remain in full for and effect notwithstanding the discovery after the date of this Agreement or at any other time of any additional facts or law, or changes in the law,"[11] and Paragraph 16 of the Individual Release provides that the Individual Release "shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the Released Parties."[12] *See also, generally,* 29 WILLISTON ON CONTRACTS §73:1 (4th ed.) ("a release is a binding agreement between the parties under which at least one party to the agreement relinquishes an existing claim or cause of action

---

[10] SETTLEMENT AGREEMENT, Exhibit 26, at p.1 (some emphasis in original; some emphasis added).
[11] SETTLEMENT AGREEMENT, Section 13.4.
[12] SETTLEMENT AGREEMENT, Exhibit 26, ¶16.

against another party to the agreement"); <u>Philadelphia Indem. Ins. Co. v. SSR Hospitality, Inc.</u>, 459 F.App'x 308, 312-13 (5th Cir. 2012); <u>Johnson v. Manpower Prof'l Servs. Inc.</u>, 442 F. App'x 977, 984 (5th Cir. 2011); <u>Weingart v. Allen & O'Hara</u>, 654 F.2d 1096, 1103 (5th Cir. 1981) ("The construction and enforcement of a release or settlement agreement are governed by general principles of contract law").

Thus, the parties' bargain was complete when the Claimant accepted an Eligibility Notice or a Post Appeal Eligibility Notice and signed the stipulated and Court-approved Release.

Particularly where BP failed to appeal the Eligibility Determination based on a claim of insufficient matching, the Settlement Agreement precludes an adjustment to the amount of the award based the outcome of BP's legal proceedings based on the "corresponding variable expenses" interpretation.

The terms of the bargain are set forth in the four corners of the Release negotiated and approved by the parties. The Release specifically contemplated the possibility that legal proceedings could subsequently alter the amount of the compensation, and the parties explicitly agreed that no recalculation under those circumstances would occur.

## Conclusion

For the above and foregoing reasons, the Class Counsel's Motion to Clarify and/or to Alter or Amend should be granted.

This <u>7th</u> day of <u>June</u>, <u>2014</u>.

Respectfully submitted,

| /s/ Stephen J. Herman | /s/ James Parkerson Roy |
|---|---|
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No.11511 |
| **HERMAN HERMAN & KATZ LLC** | **DOMENGEAUX WRIGHT ROY & EDWARDS LLC** |

| | |
|---|---|
| 820 O'Keefe Avenue<br>New Orleans, Louisiana 70113<br>Telephone: (504) 581-4892<br>Fax No. (504) 569-6024<br>E-Mail: sherman@hhklawfirm.com<br>*Lead Class Counsel* | 556 Jefferson Street, Suite 500<br>Lafayette, Louisiana 70501<br>Telephone: (337) 233-3033<br>Fax No. (337) 233-2796<br>E-Mail: jimr@wrightroy.com<br>*Lead Class Counsel* |

## ECONOMIC & PROPERTY DAMAGES CLASS COUNSEL

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

Brian H. Barr
LEVIN, PAPANTONIO
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office: (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT, DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office: (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Office:  (212) 558-5802
Telefax: (212) 344-5461
E-Mail:  rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail:  rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &

TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Memorandum will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pre-Trial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of June, 2014.

/s/ Stephen J. Herman and James Parkerson Roy