

U.S. Department of Justice

Environment and Natural Resources Division

90-5-1-1-10026

*Environmental Enforcement Section*   *Telephone (202) 305-0371*
*P.O. Box 7611*   *Facsimile (202) 514-0097*
*Ben Franklin Station*   *dan.smith2@usdoj.gov*
*Washington, DC 20044-7611*

June 12, 2014

BY ELECTRONIC MAIL

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

    Re:    MDL 2179: Custodial Search Terms

Dear Judge Sushan:

    BP seeks to significantly restrict the search results for the custodial files of the two fact witnesses that it is required to provide to the United States. It seeks these restrictions not to eliminate terms that are generating a high percentage of unresponsive material, but simply to reduce the volume of material it has to review and produce.

    The primary change that BP proposes is to exclude from production any email that does not expressly mention some variation of BPXP. BP now seems to take the position that documents that are not about BPXP are irrelevant. It bases this conclusion of the March 21, 2014 status conference, the same status conference at which BP's counsel stated "[w]e've never said that there's no relevance to group finances." Hearing Tr., 51:10–11, Mar. 21, 2014. The phrase that BP quotes, "regarding the relationship between BP p.l.c., BPXP, and other affiliates," does not mean that a document is not relevant because it does not address BPXP and another BP affiliate. Judge Barbier made that clear when he said, "I'm going to allow [the United States], if [it] wish[es], to get discovery from BP with respect to the relationship between the entities, between BPXP, BP America, BP p.l.c. and I guess any other entity that's in their direct line." *Id.* at 54:19–22.

    Limiting the search results to documents that expressly mention BPXP would be fundamentally unfair. As your honor has recognized in granting the United States' motion to compel with respect to its first request for production, the scope of discovery in this matter includes documents about six other BP entities. *See* ECF No. 12945. It is unlikely that the custodians, who did not work for BPXP, will have many documents that expressly mention BPXP. Moreover, documents that do not expressly mention BPXP can nonetheless be about BPXP or the relationship between the six affiliates. Documents that do not expressly mention BPXP may also be highly relevant to the United States' arguments that BP's internal centralized banking system can make funds available to BP subsidiaries whenever BP so chooses. For example, under BP's formulation of the search terms, a document in the files of Nick Bamfield that describes the ability of BP plc to make unlimited intercompany transfers to a subsidiary to

pay civil penalties would not be produced if it did not expressly name BPXP as the subsidiary. Indeed, as noted in the United States memorandum concerning affiliates mention of the entity "BPXP" is remarkably absent from the Phase I and Phase II trial and discovery. Doc. 12355-1 at 8-10. Rather, BP consistently referred solely to "BP" throughout trial, without distinguishing entities illustrating that limitation to references to "BPXP" will inappropriately exclude relevant documents.

BP's proposal for limiting the search terms is not phrased in terms of responsiveness, but simply burden. Yet BP has not shown that the burden of the proposed search terms "outweighs the likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b) (2)(C)(iii). While the United States has collected, reviewed, and produced approximately 1.7 million documents in this phase, BP balks at adding 26,000 more documents to its production of approximately 187,000 documents.[1] The United States is not demanding that BP produce all of those documents, only that it review those documents to determine whether they are responsive to the United States' requests for production. Even if these searches required the review of ten times as many documents, the effort required would not be disproportionate to the importance of the issues at stake in this litigation. And although time is extremely limited, the United States has put forth the resources necessary to review and produce comparable volumes of documents requested by BP.

A search string that returns fewer documents is not necessarily a better search. The effectiveness of a search is measured in terms of recall, i.e., how many of the responsive documents it finds, and precision, i.e., how few of the unresponsive documents it finds. Michael R. Arkfeld, *Arkfeld on Electronic Discovery and Evidence* § 5.4(D)(3) (3d ed. 2010). The fact that BP's search terms would find fewer documents provides no information about either recall or precision. Nor does the fact that the United States' search strings found three unresponsive documents indicate that the search is overbroad. Search terms are difficult to design, and even the best-designed terms will have imperfect recall and precision. *United States v. O'Keefe*, 537 F. Supp. 2d 14 (D.D.C. 2008) ("Whether search terms or 'keywords' will yield the information sought is a complicated question involving the interplay, at least, of the sciences of computer technology, statistics and linguistics. . . .") The difficult with BP's proposal is that it is simply not built on premises of quality, testing, or cooperation. *See William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D 134, 136 (S.D.N.Y. 2009). ("This Opinion should serve as a wake-up call to the Bar in this District about the need for careful thought, quality control, testing, and cooperation with opposing counsel in designing search terms . . . .") BP's proposal also indicates that it has unreasonable expectations about the level of effort appropriate to this litigation.

The United States' search terms do not circumvent the Court's ruling on the United States' motion to compel. The Court did not rule that certain categories of documents were irrelevant or beyond the scope of discovery. The Court simply ruled that BP was not required to provide further response to some requests for production. The United States inferred that this was a ruling on burden vs. benefit of those particular requests, which were aimed at documents

---

[1] These numbers do not include as "documents" the raw data that the United States and BP have each produced.

within the possession, custody, or control of BP. The calculus of burden vs. benefit is very different here, where the scope of the collection is limited to two individuals.

With respect to Bamfield, there are seven differences between BP and the United States with respect to the search terms. The United States originally proposed two search strings to be used for each of the custodial files to be produced by BP. BP responded by striking out several search terms that it considers overbroad or that it believes will return a high percentage of non-responsive documents. The United States accepted some, but not all, of BP's proposed changes, or made other changes to accommodate BP's concern. Some of those changes have reduced the volume of responsive document by thousands. The remaining differences are summarized in the table below.

| BP's Markup of U.S. Proposal | U.S. Counterproposal |
|---|---|
| ~~board w/5 (directors OR minutes OR resolution* OR decision)~~ | board w/5 ~~(directors OR minutes OR resolution* OR decision)~~ w/5 Bamfield |
| ~~liabilit* OR distribution* OR divestment* OR dividend*~~ | ~~liabilit* OR~~ distribution* OR divestment* OR dividend* |
| ~~finance w/5 (debt OR liquidity OR agreement OR statement OR internal OR projection* OR forecast OR budget)~~ | finance w/5 (debt OR ~~liquidity OR agreement OR statement OR~~ internal OR ~~projection*~~ OR forecast ~~OR budget~~) |
| ~~forecast w/5 (prove* OR unprove* OR "cash flow" OR analyst*)~~ | forecast w/5 ~~(prove* OR~~ unprove* ~~OR "cash flow" OR analyst*)~~ |
| ~~(agreement OR fund*) w/5 (trust OR settlement OR claim*)~~ | (agreement OR fund*) w/5 (trust OR settlement OR claim*) |
| ~~Treasury~~ | treasury w/5 (guidance OR policy OR agreement*) |
| AND ("BP Exploration and Production" OR "BP Exploration & Production" OR BPXP OR BPEP) | ~~AND ("BP Exploration and Production" OR "BP Exploration & Production" OR BPXP OR BPEP)~~ |

As discussed above, the most important of these differences is the last one. The United States seeks documents from these custodians that contain certain key financial terms AND one of the following: (1) the name of one of the six companies in the chain between BPXP and BP, plc; (2) a reference to the Deepwater Horizon, Macondo, or the Gulf spill; or (3) the Gulf Coast Claims Facility or Restoration Organization. BP argues that the United States should not receive *any* of those documents, unless they also expressly refer to BPXP. A document that fails to expressly mention BPXP is not *per se* unresponsive or irrelevant. *United States v. Mun. Auth. of Union Twp*. ("Dean Dairy"), 150 F.3d 259, 268 (3rd Cir. 1998) ("Other courts in CWA cases have looked to the assets and finances of the violator's parent in evaluating the economic impact of the penalty on a violator") (citing *Atl. States Legal Found., Inc. v. Universal Tool & Stamping Co.*, 786 F. Supp. 743, 753 (N.D. Ind. 1992). Therefore, the searches should not be limited to documents that include those additional terms.

With respect to BPXP's other custodial witness, Steve Bray, BP would strike out several more terms from the list originally provided by the United States.[2] BP justifies this on the grounds that Bray did less work in accounting and would have less relevant material. If that is true, one would reasonably expect that the search terms will generate fewer hits, but Mr. Bray in fact has more documents containing the relevant search terms than Mr. Bamfield. BP has not shown that those documents are less likely to be relevant to the Parties' contentions. In the absence of actual information from BP regarding the recall and precision of the proposed search terms, BP has failed to provide the Court with a basis to reject the United States' proposal.

Finally, with respect to the date for Mr. Bamfield's deposition, the United States is amenable to conducting this deposition on July 24, 2014, however, the United States requests that BP produce his documents simultaneously with Mr. Bray's on July 9, 2014.

For the foregoing reasons, the United States respectfully requests that the Court order BP to run the searches in its exhibit A.

Respectfully Submitted,

/s/ Daniel S. Smith

Daniel S. Smith
Senior Counsel

cc: Mark Nomellini
Peter Bartoszek
Robert C. Brock
J. Andrew Langan
Hariklia Karis
Ky Kirby
Jim Dragna
Thomas Lotterman
Steve O'Rourke
Sarah Himmelhoch

---

[2] For Bray, the United States proposed only one search term in addition to those for Bamfield: (board w/5 director* w/5 resolution*).

4