# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | **MDL NO. 2179** **SECTION J** |
| Applies to:  *13-706* | * * * * * * | **HONORABLE CARL J. BARBIER** **MAGISTRATE JUDGE SHUSHAN** |

## BP EXPLORATION & PRODUCTION INC.'S ANSWER TO THE AMENDED COMPLAINT FOR DAMAGES OF BISSO MARINE, LLC

Defendant BP Exploration & Production Inc. ("BPXP") by its undersigned counsel, and pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answers the Amended Complaint of Bisso Marine, LLC (Rec. Doc. 12988) as follows:[1]

**TO THE HONORABLE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF LOUISIANA AND THE JUDGES THEREOF:**

The Complaint of Bisso Marine Company, Inc. (hereinafter "Bisso"), a Texas corporation authorized to do and doing business in this state and judicial district at all material times, with respect represents: [Note that Bisso later became a Louisiana LLC, as reflected in the Amended Complaint.]

1.     Made defendant herein is BP Exploration & Production, Inc. (hereinafter "BP Exploration" or "BP"), a Delaware corporation with its principal place of business in Houston, Texas. BP Exploration was a lease holder and the designated operator in the lease granted by the former Minerals Management Service (now Bureau of Ocean Energy Management, Regulation and Enforcement) allowing it to perform oil exploration, drilling, and production-related operations in Mississippi Canyon Block 252 and drill the "Macondo" well where the blowout

---

[1]   Discovery with regard to the subject matter of the allegations in plaintiff's Complaint is ongoing and not complete, and certain information thus remains unavailable to BPXP at this time, and BPXP therefore specifically reserves the right to amend or supplement its answers and affirmative defenses to the allegations in Plaintiff's Amended Complaint as additional facts and expert opinions become known to them.

occurred and the oil spill originated. BP Exploration was designated as a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution of 1990 (OPA), 33 U.S.C. §2701. This court has personal jurisdiction over BP Exploration, because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

**ANSWER:**

BPXP admits that BPXP is a Delaware corporation with its principal place of business in Houston, Texas, that it was a partial lease holder in the lease granted by the MMS/BOEMRE pursuant to which it was allowed to perform oil exploration and offshore drilling activities in Mississippi Canyon Block 252, in which the Macondo Well was located, and that BPXP was, together with other entities, designated as Responsible Parties under the Oil Pollution Act ("OPA") for the release of oil. As a Responsible Party under OPA, BPXP has expressed its commitment to pay all legitimate OPA claims.  BPXP further admits that it is subject to this Court's jurisdiction.   BPXP denies that the spill originated from the well because the spill originated from the *Deepwater Horizon*.

2.      At all material times, Bisso was engaged in the marine salvage and commercial diving businesses, which includes all pipeline and offshore construction activity, performing salvage, diving and other related services in the navigable waters in the Gulf of Mexico in water depths of typically 300 feet or less.

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, and therefore denies them.

3.      Bisso has complied with the suit prerequisite contained in OPA by submitting a "sum certain" and a brief description of the claim as well as some supporting documentation to the Responsible Party, BP Exploration, thereby satisfying the presentment requirement described in 33 U.S.C. §2713. The claim has either been denied or not settled by any person by payment within 90 days after the date upon which the claim was presented.

**ANSWER:**

BPXP is still engaging in the presentment consultation process with the PSC; *see* OPA Test Case Scheduling Order, Rec. Doc. 12972, ¶7; and thus reserves all of its rights on the issue of presentment. BPXP denies as a general matter that submitting "some supporting documentation" is the applicable OPA standard for presentment.

4.   BP Exploration is the "Responsible Party" for the Oil Spill under OPA, 33 U.S.C. §2714. Because of the strict liability of Responsible Parties for all damages due to and arising from the Spill and its environmental devastation, Plaintiff does not need to set forth factual allegations to support culpability. Nonetheless, out of an abundance of caution, Plaintiff sets forth the following factual allegations.

**ANSWER:**

BPXP admits that the U.S. Coast Guard named BPXP, as well other entities, as Responsible Parties under the Oil Pollution Act. As a Responsible Party under OPA, BPXP has expressed its commitment to pay all legitimate OPA claims. BPXP denies the remaining allegations of this paragraph to the extent they concern the conduct or liability of BPXP or what the Plaintiff must set forth to state a valid OPA claim against BPXP.

## BACKGROUND FACTS

5.   At all times relevant herein, the vessel Deepwater Horizon was leased to BP for drilling exploratory wells at the Macondo prospect site, pursuant to the December 9, 1998, Drilling Contract between Vastar Resources, Inc. and R&B Falcon Drilling Co. for RBS-8D Deepwater Horizon ("Drilling Contract"), and later amendments to that agreement.

**ANSWER:**

BPXP admits that BP America Production Company ("BPAP"), as successor to Vastar Resources Inc., and Transocean Holdings LLC, as successor to R&B Falcon Corp., were parties to a drilling contract concerning the use of the *Deepwater Horizon* and that the *Deepwater Horizon* was engaged in drilling activities at the Macondo prospect site at the time of the Incident.

6.      On April 20, 2010, while temporarily abandoning a subsea oil well located at the Macondo prospect site in the area of the Gulf of Mexico known as Mississippi Canyon 252 ("Macondo well"), employees and agents of BP and its subcontractors aboard the vessel Deepwater Horizon lost control of the well and caused a massive blowout.

**ANSWER:**

BPXP admits that on April 20, 2010, there was a loss of control of the well being drilled by the vessel *Deepwater Horizon* in the Gulf of Mexico, and that there followed one or more fires and explosions, the sinking of the vessel, and a release of oil into the Gulf of Mexico. BPXP also admits that the loss of well control was caused in part by the conduct of BP's contractors.

7.      After the Deepwater Horizon sank, oil and gas gushed out of the damaged well and into the Gulf of Mexico for over twelve weeks, damaging and contaminating real and personal property, and doing immense and long-lasting damage to the environment and economies of the Gulf states and businesses, including Plaintiff and others working in and near the Gulf of Mexico. Meanwhile, BP downplayed the severity of the Spill and was unprepared for the massive clean-up effort required.

**ANSWER:**

BPXP admits that on April 20, 2010, there was a loss of control of the well being drilled by the vessel *Deepwater Horizon* in the Gulf of Mexico, and that there followed one or more fires and explosions, the sinking of the vessel, and a release of oil into the Gulf of Mexico. BPXP denies the remaining allegations of this paragraph.

8.      Prior to the Spill, BP had actual and/or constructive knowledge of significant problems related to the Deepwater Horizon's equipment and maintenance that could lead to loss of life, serious injury, and/or environmental damage, including problems with the vessel's Blowout Preventer ("BOP"), electronic fire and gas and alarm systems, computer software systems, purge air systems, and other vessel equipment.

**ANSWER:**

BPXP denies the allegations of this paragraph.

9.     Further, Defendants failed to plan, monitor, control, and contain the well, and failed to mitigate the risk and potential damages associated with deepwater drilling.

**ANSWER:**

BPXP denies the allegations of this paragraph.

10.    As described more fully below, the loss of well control and resulting harm was due to the negligent, reckless, callous, and grossly negligent actions on the part of BP and its subcontractors before, during, and after the blowout, including long-standing wanton misconduct by Defendants' corporate management.

**ANSWER:**

BPXP denies the allegations of this paragraph.

**PRE-BLOWOUT FACTS**

11.    BP and its subcontractors struggled with the high temperature, high pressure Macondo well repeatedly before the catastrophic events of April 20, 2010. In emails weeks before the blowout, BP employees referred to the Macondo well as "crazy," a "nightmare" well, and the "well from hell."

**ANSWER:**

BPXP admits that the text of the emails described in this paragraph speak for themselves, however the entire text of the documents should be considered.[2]  BPXP denies the allegations of this paragraph to the extent that they differ or deviate from the original documents quoted from. BPXP denies the remaining allegations of this paragraph to the extent they are directed at BPXP or are inconsistent with the emails described in this paragraph. BPXP adopts and incorporates by reference Document 2074, the BP Parties' Counter-Complaint, Cross-Complaint and Third Party Complaint Against Transocean and Claim in Limitation, Document 2075, BPXP's Cross-Claim

---

[2]     By referencing these emails, BPXP neither admits nor implies that the documents or the referenced statements are admissible into evidence and expressly reserves all objections to the use or admissibility of the documents or the referenced statements.

and Third Party Complaint Against Transocean, and Document 2082, BP's Cross-Complaint and Third-Party Complaint Against Halliburton, all of which were served on all counsel on April 20, 2011. BPXP admits the remaining allegations of this paragraph to the extent they are alleged by one or more of the BP Parties in Document Nos. 2074, 2075, and 2082 and deny the remaining allegations of this paragraph to the extent they are inconsistent with the allegations in Document Nos. 2074, 2075, and 2082. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph to the extent they are not directed at the conduct or liability of BPXP and are not addressed in Document Nos. 2074, 2075, and 2802, and therefore denies those remaining allegations.

12.     Deepwater Horizon workers struggled to control the problematic well throughout drilling, having suffered numerous kicks, ballooning and lost return events due to the dangerous geological characteristics and narrow drilling margins at Macondo.

**ANSWER:**

BPXP admits that a kick occurred at the Macondo Well on March 8, 2010.  BPXP adopts and incorporates by reference Document 2074, the BP Parties' Counter-Complaint, Cross-Complaint and Third Party Complaint Against Transocean and Claim in Limitation, Document 2075, BPXP's Cross-Claim and Third Party Complaint Against Transocean, and Document 2082, BP's Cross-Complaint and Third-Party Complaint Against Halliburton, all of which were served on all counsel on April 20, 2011. BPXP admits the remaining allegations of this paragraph to the extent they are alleged by one or more of the BP Parties in Document Nos. 2074, 2075, and 2082 and deny the remaining allegations of this paragraph to the extent they are inconsistent with the allegations in Document Nos. 2074, 2075, and 2082. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph to the extent they are not directed at the conduct or liability of BPXP and are

not addressed in Document Nos. 2074, 2075, and 2802, and therefore denies those remaining allegations.

13.    As these problems caused the drilling schedule to fall farther behind schedule and over budget, BP and its subcontractors maintained an unreasonable rate of penetration in the drilling effort at Macondo to a point where drilling compromised the BP petrophysics crew's ability to predict down hole conditions and provide guidance on foreseeable hazards.

**ANSWER:**

BPXP denies the allegations of this paragraph to the extent they concern the conduct or liability of BPXP.  BPXP adopts and incorporates by reference Document 2074, the BP Parties' Counter-Complaint, Cross-Complaint and Third Party Complaint Against Transocean and Claim in Limitation, Document 2075, BPXP's Cross-Claim and Third Party Complaint Against Transocean, and Document 2082, BP's Cross-Complaint and Third-Party Complaint Against Halliburton, all of which were served on all counsel on April 20, 2011. BPXP admits the remaining allegations of this paragraph to the extent they are alleged by one or more of the BP Parties in Document Nos. 2074, 2075, and 2082 and deny the remaining allegations of this paragraph to the extent they are inconsistent with the allegations in Document Nos. 2074, 2075, and 2082. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph to the extent they are not directed at the conduct or liability of BPXP and are not addressed in Document Nos. 2074, 2075, and 2802, and therefore denies those remaining allegations.

14.    Further, BP's drilling rate and failure to maintain a safe drilling margin violated federal regulations. On December 7, 2011, the federal Bureau of Safety and Environmental Enforcement ("BSEE") cited BP for four counts of violation of 30 C.F.R. § 250.427(b) for BP's knowing failure to suspend drilling operations at Macondo when the federally mandated safe drilling margin was no longer present in the well.

**ANSWER:**

BPXP denies that it violated federal regulations.   BPXP has contested the citations referred to in this paragraph.

15.     Pursuant to its Drilling Contract, BP was paying approximately $500,000 per day to lease the Deepwater Horizon, not including contractors' fees. BP had planned for the drilling work at Macondo to take 51 days, at a cost of approximately $96,000,000.

**ANSWER:**

BPXP admits that the combination of costs incurred under the Drilling Contract with Transocean including day rate charges, day labor rate charges and other charges, totaled approximately $500,000 per day. BPXP denies the remainder of the allegations of this paragraph.

16.     At the time of the blowout, drilling at Macondo was already months behind schedule, costing BP over $1 million per day in vessel lease and contractor fees and putting them increasingly over budget. This excess cost put the Macondo project in conflict with BP's recent mandate of a 7% reduction in costs for all of its drilling operations in the Gulf of Mexico. In spite of the difficult and dangerous nature of the Macondo well, BP made multiple decisions about the drilling plan for purely economic reasons, even though those decisions introduced unnecessary risks and increased the risk of a catastrophic blowout of the well.

**ANSWER:**

BPXP denies the allegations of this paragraph to the extent they concern the conduct or liability of BPXP.   BPXP adopts and incorporates by reference Document 2074, the BP Parties' Counter-Complaint, Cross-Complaint and Third Party Complaint Against Transocean and Claim in Limitation, Document 2075, BPXP's Cross-Claim and Third Party Complaint Against Transocean, and Document 2082, BP's Cross-Complaint and Third-Party Complaint Against Halliburton, all of which were served on all counsel on April 20, 2011. BPXP admits the remaining allegations of this paragraph to the extent they are alleged by one or more of the BP Parties in Document Nos. 2074, 2075, and 2082 and deny the remaining allegations of this paragraph to the extent they are inconsistent with the allegations in Document Nos. 2074, 2075,

and 2082. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph to the extent they are not directed at the conduct or liability of BPXP and are not addressed in Document Nos. 2074, 2075, and 2802, and therefore denies those remaining allegations.

17.    In order to reduce costs and save time on the dilatory and over-budget Macondo well, BP intentionally violated industry guidelines and government regulations, and ignored warnings from their own employees and contractors on the Deepwater Horizon.

**ANSWER:**

BPXP denies the allegations of this paragraph to the extent they concern the conduct or liability of BPXP.  BPXP adopts and incorporates by reference Document 2074, the BP Parties' Counter-Complaint, Cross-Complaint and Third Party Complaint Against Transocean and Claim in Limitation, Document 2075, BPXP's Cross-Claim and Third Party Complaint Against Transocean, and Document 2082, BP's Cross-Complaint and Third-Party Complaint Against Halliburton, all of which were served on all counsel on April 20, 2011. BPXP admits the remaining allegations of this paragraph to the extent they are alleged by one or more of the BP Parties in Document Nos. 2074, 2075, and 2082 and deny the remaining allegations of this paragraph to the extent they are inconsistent with the allegations in Document Nos. 2074, 2075, and 2082. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph to the extent they are not directed at the conduct or liability of BPXP and are not addressed in Document Nos. 2074, 2075, and 2802, and therefore denies those remaining allegations.

18.    This emphasis on speed and money over safety led to numerous errors and omissions by BP and its subcontractors, which, in turn, caused and/or contributed to the blowout and the subsequent Spill. Among these errors and omissions showing callous disregard for safety were the following:

     a.       Decision to use a Long String instead of a Liner

     b.       Decision to use six instead of twenty-one Centralizers

     c.       Decision not to run a Bottoms Up Circulation

     d.       Decision to pump a cement slurry that was defective in design, inadequately tested, and had a very low probability of success

     e.       Decision to pump a defective cement slurry without waiting for all necessary cement slurry test results

     f.       Decision not to run a Cement Bond Log

     g.       Decision to run a positive pressure test without waiting for the cement to set

     h.       Decision to run a negative pressure test without waiting for a full risk assessment

     i.       Decision to displace to seawater before validating that a proper barrier to flow was in place despite clear signs that the cement did not work, zonal isolation and well integrity had not been achieved, and that the hydrocarbons were likely to flow into the well.

     j.       Decision to order simultaneous operations to occur during critical abandonment phase

**<u>ANSWER:</u>**

BPXP denies the allegations of this paragraph to the extent they concern the conduct or liability of BPXP. BPXP adopts and incorporates by reference Document 2074, the BP Parties' Counter-Complaint, Cross-Complaint and Third Party Complaint Against Transocean and Claim in Limitation, Document 2075, BPXP's Cross-Claim and Third Party Complaint Against Transocean, and Document 2082, BP's Cross-Complaint and Third-Party Complaint Against Halliburton, all of which were served on all counsel on April 20, 2011. BPXP admits the remaining allegations of this paragraph to the extent they are alleged by one or more of the BP Parties in Document Nos. 2074, 2075, and 2082 and deny the remaining allegations of this paragraph to the extent they are inconsistent with the allegations in Document Nos. 2074, 2075, and 2082. BPXP lacks knowledge or information sufficient to form a belief about the truth of the

remaining allegations of this paragraph to the extent they are not directed at the conduct or liability of BPXP and are not addressed in Document Nos. 2074, 2075, and 2802, and therefore denies those remaining allegations.

19.   Given the history of the Macondo well, and the decisions BP made to save time and money completing the well, they should have been particularly attuned to any signs of trouble during the temporary abandonment phase on April 20, 2010. But instead of the requisite vigilance, BP and its subcontractors failed to properly monitor the well and ignored and/or missed an increasingly ominous series of warnings and red flags exhibited by the well in the hours before the fatal blowout.

**ANSWER:**

BPXP denies the allegations of this paragraph to the extent they concern the conduct or liability of BPXP.  BPXP adopts and incorporates by reference Document 2074, the BP Parties' Counter-Complaint, Cross-Complaint and Third Party Complaint Against Transocean and Claim in Limitation, Document 2075, BPXP's Cross-Claim and Third Party Complaint Against Transocean, and Document 2082, BP's Cross-Complaint and Third-Party Complaint Against Halliburton, all of which were served on all counsel on April 20, 2011. BPXP admits the remaining allegations of this paragraph to the extent they are alleged by one or more of the BP Parties in Document Nos. 2074, 2075, and 2082 and deny the remaining allegations of this paragraph to the extent they are inconsistent with the allegations in Document Nos. 2074, 2075, and 2082. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph to the extent they are not directed at the conduct or liability of BPXP and are not addressed in Document Nos. 2074, 2075, and 2802, and therefore denies those remaining allegations.

20.   As a result, BP and its subcontractors did not appreciate the severity of the well control situation until the mud began spilling out of the riser onto the vessel deck at about 9:41 p.m., 49 minutes after the leak had started at the bottom of the well.

**ANSWER:**

BPXP admits that hydrocarbons began to flow into the well from the reservoir at approximately 20:52 hours. However, the Transocean drill crew and Halliburton Sperry-Sun mudlogger either did not observe or did not recognize the increasing indications of flow given the fact that the first well control actions were not taken until around approximately 21:41, 49 minutes after the leak had started at the bottom of the well. BPXP denies the allegations of this paragraph to the extent they concern the conduct or liability of BPXP.  BPXP adopts and incorporates by reference Document 2074, the BP Parties' Counter-Complaint, Cross-Complaint and Third Party Complaint Against Transocean and Claim in Limitation, Document 2075, BPXP's Cross-Claim and Third Party Complaint Against Transocean, and Document 2082, BP's Cross-Complaint and Third-Party Complaint Against Halliburton, all of which were served on all counsel on April 20, 2011. BPXP admits the remaining allegations of this paragraph to the extent they are alleged by one or more of the BP Parties in Document Nos. 2074, 2075, and 2082 and deny the remaining allegations of this paragraph to the extent they are inconsistent with the allegations in Document Nos. 2074, 2075, and 2082. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph to the extent they are not directed at the conduct or liability of BPXP and are not addressed in Document Nos. 2074, 2075, and 2802, and therefore denies those remaining allegations.

21.     BP has pled guilty to criminal charges, including eleven counts of seaman's manslaughter pursuant to 18 U.S.C. § 1115, for the grossly negligent actions of its employees and agents in failing to analyze properly the results of the negative pressure test and cease all operations at that time.

**ANSWER:**

BPXP denies that its employees and agents engaged in grossly negligent actions.  The criminal plea accepted by Judge Vance is a matter of public record and speaks for itself.  *See*

*United States v. BP Exploration and Production, Inc.*, No. 2:12-cr-00292-SSV-DEK (Jan. 29, 2013).

22.     At approximately 9:48 p.m., the gas sucked into the Deepwater Horizon's engine #3 caused the engine to rapidly overspeed. The vessel lost power a minute later, followed by two explosions that ignited the gas enveloping the vessel. The blaze intensified as damage from the explosions and fire opened new flow paths for the flammable gaseous hydrocarbons spewing out of the well. These flow paths continued unabated until the vessel sank on April 22, 2010.

**ANSWER:**

BPXP admits that at approximately 9:48 p.m. on April 20, 2010, at least one engine went into overspeed. BPXP also admits that the vessel lost power approximately a minute later, which was immediately followed by two explosions. BPXP further admits that the Transocean crew's decision to divert the escaping fluids and gases through the mud-gas separator rather than the starboard overboard diverter line vented gas directly down onto and throughout the rig, creating multiple ignition sources and flow paths for the gases.  Further, BPXP admits that the vessel sank on April 22, 2010.  BPXP denies the remaining allegations in this paragraph.

23.     Decisions, tradeoffs, actions, and inactions by BP, including the risky well design, procedures that deviated from industry norms, and failure to identify and train for foreseeable risks all unnecessarily created and enhanced the risks associated with the drilling and temporary abandonment of the Macondo well. This reckless behavior culminated in insufficient well monitoring and failure to recognize the signs of an influx for 49 minutes prior to the blowout. Underlying it all, BP and its subcontractors' corporate cultures of trading risk identification and safety for speed, production, and profit made this catastrophe inevitable.

**ANSWER:**

BPXP denies the allegations of this paragraph to the extent they concern the conduct or liability of BPXP.  BPXP adopts and incorporates by reference Document 2074, the BP Parties' Counter-Complaint, Cross-Complaint and Third Party Complaint Against Transocean and Claim in Limitation, Document 2075, BPXP's Cross-Claim and Third Party Complaint Against Transocean, and Document 2082, BP's Cross-Complaint and Third-Party Complaint Against

Halliburton, all of which were served on all counsel on April 20, 2011. BPXP admits the remaining allegations of this paragraph to the extent they are alleged by one or more of the BP Parties in Document Nos. 2074, 2075, and 2082 and deny the remaining allegations of this paragraph to the extent they are inconsistent with the allegations in Document Nos. 2074, 2075, and 2082. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph to the extent they are not directed at the conduct or liability of BPXP and are not addressed in Document Nos. 2074, 2075, and 2802, and therefore denies those remaining allegations.

24.     Leading up to the disaster on April 20, 2010, discord, recklessness, and gross negligence pervaded the actions of the BP onshore well team. E-mails from individuals such as Wells Team Leader John Guide and his supervisor, BP's operations leader at Macondo, Operations Manager David Sims, exemplified this callous disregard for human and environmental health and safety.

**ANSWER:**

BPXP denies the allegations of this paragraph to the extent they concern the conduct or liability of BPXP.  BPXP adopts and incorporates by reference Document 2074, the BP Parties' Counter-Complaint, Cross-Complaint and Third Party Complaint Against Transocean and Claim in Limitation, Document 2075, BPXP's Cross-Claim and Third Party Complaint Against Transocean, and Document 2082, BP's Cross-Complaint and Third-Party Complaint Against Halliburton, all of which were served on all counsel on April 20, 2011. BPXP admits the remaining allegations of this paragraph to the extent they are alleged by one or more of the BP Parties in Document Nos. 2074, 2075, and 2082 and deny the remaining allegations of this paragraph to the extent they are inconsistent with the allegations in Document Nos. 2074, 2075, and 2082. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph to the extent they are not directed at the conduct or

liability of BPXP and are not addressed in Document Nos. 2074, 2075, and 2802, and therefore denies those remaining allegations.

25.     The substantial evidence of BP's misguided priorities and imprudent decisions regarding the Macondo well is all part of a long-standing culture of complacency in BP's deepwater drilling operations. Corporate leaders from Houston to London did not take potentially catastrophic risks of deepwater drilling seriously, did not identify foreseeable risks unique to deepwater drilling, and allowed those risks to result in the April 20, 2010 disaster.

**ANSWER:**

BPXP denies the allegations of this paragraph.

## POST-BLOWOUT FACTS

26.     On the night of April 20, after the explosions ignited the vessel, the resulting gasfueled fire on the Deepwater Horizon raged for two days until she finally sank on April 22, 2010. The Deepwater Horizon was connected to the wellhead at the seafloor by a 5,000-foot marine riser pipe, and as the vessel sank to the seafloor, it dragged the riser down with it, bending and breaking the pipe before finally tearing away from it completely. Immediately oil and natural gas began to gush from the open end of the riser and from at least two places along its twisted length.

**ANSWER:**

BPXP admits that one or more fires and explosions occurred on the *Deepwater Horizon* April 20, 2010, that the vessel sank on April 22, 2010, and that the riser bent and broke as the vessel sank, resulting in the release of hydrocarbons. BPXP denies the remaining allegations of this paragraph.

27.     For 87 days, the gushing oil and gas continued unabated, and the Spill's fast-growing oil slick made landfall on April 30, 2010, affecting increasingly larger areas of the Coastal Zone and ultimately the entire Gulf of Mexico.

**ANSWER:**

BPXP admits that hydrocarbons flowed into the Gulf of Mexico from April 20, 2010 until the well was capped on or around July 15, 2010, and that some of the hydrocarbons reached the shorelines of Louisiana, Mississippi, Alabama, and Florida. BPXP denies that for 87 days the

Spill went unabated. BPXP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph, and therefore denies them.

28.     From the outset, BP intentionally downplayed and concealed the severity of the Spill. BP's initial leak estimate of 1,000 barrels per day was found by government investigators to be a fraction of its actual measured leakage amount of 50,000 barrels per day. An internal BP document proves that the company's own analysis had shown that the rate of oil flow could reach as high as 100,000 barrels, or 4,200,000 gallons, per day.

**ANSWER:**

BPXP admits that an internal BP document hypothesized that the flow rate up the casing could be as high as 100,000 barrels per day "if BOP and wellhead are removed and if we have incorrectly modeled the restrictions.[3]" BP-HZN- 2179MDL01443509.  BPXP denies any and all allegations of wrongdoing against BPXP, including allegations that it downplayed, understated, or concealed the severity of the Spill. BPXP denies the remaining allegations of this paragraph.

29.     Despite known existing technology and methods, BP Chief Operating Officer Doug Suttles admitted that as of April 20, 2010, BP did not have a response plan with "proven equipment and technology" that could contain the Macondo well. BP p.l.c. CEO Tony Hayward stated that "BP's contingency plans were inadequate," and that the company had been "making it up day to day." In its official statement, BP made the same admission: "All of the techniques being attempted or evaluated to contain the flow of oil on the seabed involve significant uncertainties because they have not been tested in these conditions before."

**ANSWER:**

BPXP admits that the statement "All of the techniques being attempted or evaluated to contain the flow of oil on the seabed involve significant uncertainties because they have not been

---

[3]     By referencing the BP-HZN-2179MDL01443509, BPXP neither admits nor implies that this document or the referenced statement is admissible into evidence and expressly reserves all objections to the use or admissibility of the document or the referenced statement.

tested in these conditions before," was released, and that Doug Suttles and Tony Hayward stated

the above quoted language. BPXP denies the remaining allegations of this paragraph.

30.     Upon information and belief, BP actually hindered efforts to kill the Macondo well and stop the flow of oil and gas into the Gulf waters. Engineers knowledgeable about deepwater blowout response told BP how to kill the well in June 2010. But BP chose to ignore the engineers' well-kill procedure because BP did not want to damage the well – or its chance to make a profit at Macondo. Because BP hoped to retap the Macondo well and its massive reservoir, they intentionally ignored expert advice that could have killed the well many weeks earlier.

**ANSWER:**

BPXP denies the allegations of this paragraph.

31.     These gross failures and intentional acts ensured that this Oil Spill became the largest environmental disaster in the history of the United States.

**ANSWER:**

BPXP denies the allegations of this paragraph.

32.     Due to the events, actions, and inactions of BP described herein, commercial offshore activity in the Gulf of Mexico and surrounding waters ceased, and individuals and entities that rely on the use of the Outer Continental Shelf and its resources to generate revenues suffered both immediate and long-term economic harm.

**ANSWER:**

BPXP admits that as a Responsible Party under OPA it has expressed its commitment to

pay all legitimate OPA claims caused by the Spill.  BPXP denies the remaining allegations of

this paragraph.

**FOR A FIRST CAUSE OF ACTION**

33.     The April 20, 2010 blowout of the Macondo well and consequent explosion, fire, vessel sinking and massive oil spill prohibited Bisso from engaging in its marine salvage and commercial diving operations, which includes all pipeline, offshore construction activity, and other related services, in the navigable waters of the Gulf of Mexico in water depths of typically 300 feet or less.

**ANSWER:**

BPXP denies the allegations of this paragraph.

34.     BP Exploration was named the responsible party under the Oil Pollution Act, 33 U.S.C. §2701, et seq. ("OPA"), and is therefore strictly liable to Bisso for economic damages that resulted from the blowout, explosion, fire and resulting massive oil spill.

**ANSWER:**

BPXP admits that the U.S. Coast Guard named BPXP, as well as other entities, as

Responsible Parties under the Oil Pollution Act. As a Responsible Party under OPA, BPXP has

expressed its commitment to pay all legitimate OPA claims. BPXP denies the remaining

allegations of this paragraph to the extent they concern the conduct or liability of BPXP.  BPXP

lacks knowledge or information sufficient to form a belief about the truth of the remaining

allegations of this paragraph, and therefore denies them.

35.     Commencing on April 20, 2010 and continuing through today and into the foreseeable future, Bisso has suffered and will continue to suffer economic damages in the form of past and future lost revenues, lost business opportunities and diminution in asset values due to the April 20, 2010 casualty described herein, in amounts to be proven at trial of this cause.

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the

allegations of this paragraph concerning Bisso's purported damages and therefore denies them.

BPXP denies Bisso's legal conclusions in this paragraph.

36.     There were no other events, occurrences, actions or inactions that caused Bisso losses, no superseding or intervening cause(s) of Bisso losses, and no other events, occurrences, actions or inactions that factually or legally relieve or reduce BP Exploration's strict liability or the damages owed to Bisso under OPA.

**ANSWER:**

BPXP lacks knowledge or information sufficient to form a belief about the truth of the

allegations of this paragraph concerning Bisso's purported damages and therefore denies them.

BPXP denies the remainder of Bisso's allegations in this paragraph.  BPXP also specifically denies Bisso's legal conclusions in this paragraph.

37.     Jurisdiction of this cause of action against BP Exploration is based upon the general maritime law of the United States.

**ANSWER:**

Jurisdiction of Bisso's action exists under 28 U.S.C. § 1333(1).

38.     Jurisdiction also exists before this Court pursuant to the Oil Pollution Act, 33 U.S.C. § 2717(b).

**ANSWER:**

BPXP admits the allegations of this paragraph.

39.     Bisso brings all claims and causes under Federal Rule of Civil Procedure 9(h) and demands a trial by judge on said claims and causes.

**ANSWER:**

This paragraph concerns an election and also a jury trial request by Bisso and thus does not require a response by BPXP.  Moreover, to proceed as a valid OPA test case under this Court's governing orders, Bisso accepted that it would proceed exclusively via a bench trial.

**WHEREFORE**, based on the foregoing, Bisso Marine, LLC prays for judgment in its favor and against defendant BP Exploration & Production, Inc., for compensatory damages as alleged herein in an amount reasonable under the circumstances of this cause, for legal interest at the maximum allowable rate on those amounts for which Bisso Marine, LLC is entitled to obtain legal interest, for all reasonable claim preparation expenses, for litigation costs, and for any additional general and equitable relief as the facts of this cause may require.

**ANSWER:**

BPXP denies that Bisso is entitled to any relief in this action.

## GENERAL DENIAL

BPXP denies all allegations in the Amended Complaint not specifically admitted herein, including any allegations contained in subparts, footnotes, and argument headings.

## AFFIRMATIVE DEFENSES

BPXP sets forth its affirmative defenses below. But by setting forth these affirmative defenses, the BPXP does not assume the burden of proving any facts, issues, or elements of a cause of action where such burden properly belongs to Plaintiff.

## FIRST DEFENSE

The allegations of the Complaint fail to state a claim upon which relief may be granted.

## SECOND DEFENSE

The blowout, explosion, and subsequent oil spill were caused by the unseaworthy condition(s) of the MODU *Deepwater Horizon*, and/or unseaworthy conditions, breach of contract or breaches of duty and breaches of warranty, express or implied, attributable to other entities, and the negligence of employees, agents, officers and directors of those other entities. The aforesaid unseaworthiness and negligence was within the knowledge or privity of those other entities and accordingly, plaintiff's claims should be dismissed as to BPXP.

## THIRD DEFENSE

Plaintiff's damages or injuries, if any, were the result of an occurrence and/or accident unforeseeable by BPXP and for which BPXP cannot be held legally responsible.

## FOURTH DEFENSE

The events culminating in the injuries and damage to Plaintiff were not the result of any negligence, fault, or want of due care on the part of BPXP. Furthermore, Plaintiff has the burden of proof on this issue, and Plaintiff cannot meet that burden.

## FIFTH DEFENSE

Any alleged negligence by BPXP, which BPXP specifically denies, was not the proximate cause or sole proximate cause of Plaintiff's alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged. Additionally, BPXP denies that the applicable causal test or tests established by the Oil Pollution Act can be met by the Plaintiff.

## SIXTH DEFENSE

Plaintiff's alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which BPXP is not legally responsible, and which preclude the finding of liability against BPXP.

## SEVENTH DEFENSE

In accordance with the *Exxon Co., U.S.A. v. Sofec, Inc.,* 517 U.S. 830 (1996), one or more superseding and/or intervening causes preclude any finding of liability on the part of BPXP.

## EIGHTH DEFENSE

The Plaintiff's claims are barred by the operation and effect of releases of claims and liability on the part of BPXP.

## NINTH DEFENSE

To the extent BPXP is found liable to Plaintiff for any damages or injuries, BPXP is entitled to have any reward or recovery mitigated or reduced accordingly by the contributory or comparative negligence of other individuals, entities, or vessels.

## TENTH DEFENSE

To the extent BPXP is found liable to Plaintiff for any damages or injuries, BPXP is entitled to contractual indemnity from other parties or entities.

### ELEVENTH DEFENSE

To the extent BPXP is found liable to Plaintiff for any damages or injuries, BPXP is entitled to indemnity from other parties or entities.

### TWELFTH DEFENSE

To the extent BPXP is found liable to Plaintiff for any damages or injuries, BPXP is entitled to contribution from other parties or entities.

### THIRTEENTH DEFENSE

To the extent BPXP is found liable to Plaintiff for any damages or injuries, BPXP is entitled to subrogation from other parties or entities.

### FOURTEENTH DEFENSE

To the extent BPXP is found liable to Plaintiff for any damages or injuries, BPXP is entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities.

### FIFTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff is not entitled under the law to the damages that it seeks, the alleged damages sought are too speculative and uncertain, and because of the impossibility of the ascertainment and allocation of such damages.

### SIXTEENTH DEFENSE

Plaintiff's damages are barred, in whole or in part, by a failure to mitigate damages.

### SEVENTEENTH DEFENSE

BPXP denies that it is liable to any extent as alleged in the Complaint, and claims exoneration from any and all liability for all losses, damages, and injuries incurred by Plaintiff as a result of the allegations contained in the Complaint and for any other damages or claims which exist or may arise, but have not been specifically pled.

**EIGHTEENTH DEFENSE**

Claims in this Complaint may fail to comport with one or more requirements of presentment as defined by the Oil Pollution Act of 1990 and its case law. Retroactive compliance with OPA presentment requirements is not permissible.

**NINETEENTH DEFENSE**

BPXP may only be held liable for its own conduct and may not be held liable derivatively for the conduct of any other entity.

**TWENTIETH DEFENSE**

BPXP cannot be held liable for the negligence of BPXP's contractors or subcontractors or other parties as the actions of independent contractors cannot be imputed to BPXP.

**TWENTY-FIRST DEFENSE**

BPXP cannot be held liable for any damages resulting from actions taken pursuant to federal, state, or local government control, direction, delegation, or authorization. Similarly, BPXP may not be held liable for any damages resulting from the actions of BPXP exacerbated by federal, state, or local government actions.

**TWENTY-SECOND DEFENSE**

BPXP did not violate any federal, state, or local statute, regulation, or other legally imposed mandate, restriction, or guidance.

**TWENTY-THIRD DEFENSE**

To the extent BPXP is found liable to Plaintiff for any damages or injuries, BPXP is entitled to have any reward or recovery mitigated or reduced accordingly by any prior payment to and/or release of liability from Plaintiff who may have received funds through the BP claims process, the GCCF, and/or the CSSP. Furthermore, any settled claims accompanied by releases of rights against BPXP may no longer be maintained.

23

## TWENTY-FOURTH DEFENSE

BPXP cannot be held to be responsible under OPA for any losses caused by prevailing macro-economic conditions including but not limited to tight credit conditions.

## TWENTY-FIFTH DEFENSE

To the extent this action was not filed in compliance with OPA's presentment requirements, it would need to be refiled as a new action and thus would fall outside the applicable statute of limitations.

## TWENTY-SIXTH DEFENSE

To the extent this action was not filed in compliance with OPA's presentment requirements, it would need to be refiled as a new action and thus its allegations would become subject to the doctrine of laches.

BPXP specifically reserves the right to amend or supplement its affirmative defenses and this Answer as additional facts concerning its defenses become known.

Dated:  June 23, 2014

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
202-662-5985

Emily Johnson Henn
Covington & Burling LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418
650-632-4715

Respectfully submitted,

/s/  J. Andrew Langan, P.C.
Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL  60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Christopher W. Keegan
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:  (414) 439-1400
Facsimile:   (414) 439-1500

Jeffrey Bossert Clark
Dominic E. Draye
Thomas P. Weir
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200

*Attorneys for BP Exploration & Production, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23rd day of June, 2014.

/s/ J. Andrew Langan, P.C.