UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on April 20, 2010<br><br>THIS DOCUMENT RELATES TO:<br>Andry Law Group, et al. v. CNA Financial, et al.<br>Civil Action No:           2:14-cv-600 | MDL No:         2179<br><br>Section:         J (Barbier)<br>Mag:              1 (Shushan) |

## DEFENDANTS CNA FINANCIAL CORPORATION'S AND CONTINENTAL CASUALTY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

*Of Counsel:*
**RICHARD A. SIMPSON**
D.C. Bar No. 411893
(admitted *pro hac vice*)
**BENJAMIN C. EGGERT (T.A.)**
D.C. Bar No. 474218
(admitted *pro hac vice*)
**WILEY REIN LLP**
1776 K Street NW
Washington, DC  20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
Email:
rsimpson@wileyrein.com
beggert@wileyrein.com

**DAVID S. DALY** (#20774)
**ALLEN & GOOCH, ALC**
3900 N Causeway Blvd
Suite 1450
Metairie, LA  70002
Telephone: (504) 836-5290
Facsimile: (504) 836-5295
Email: DavidDaly@AllenGooch.com

*Counsel for Defendants CNA Financial Corporation and Continental Casualty Company*

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | Introduction | | 4 |
| II. | Statement of Undisputed Facts | | 6 |
| | A. | The Freeh Corruption Investigation | 6 |
| | B. | The Freeh Report | 7 |
| | C. | The Show Cause Order | 8 |
| | D. | The Responses to the Show Cause Order | 8 |
| | E. | The Clawback Motion and Order | 9 |
| | F. | The Policy | 10 |
| | G. | Plaintiffs' Request for Coverage | 11 |
| III. | Argument | | 12 |
| | A. | Legal Standard | 12 |
| | B. | The Freeh Corruption Investigation Does Not Seek Covered Damages | 13 |
| | C. | CNA Financial Is Not a Proper Party | 17 |
| IV. | Conclusion | | 18 |

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Bolton v. City of Dallas*,
 472 F.3d 261 (5th Cir. 2006) ...........................................................................................9

*Friend v. Attorneys Liability Protection Society*,
 131 F.3d 134, 1997 WL 746761 (4th Cir. 1997) ............................................................13

*Lamar Advertising Co. v. Continental Casualty Co.*,
 396 F.3d 654 (5th Cir. 2005) .........................................................................................10

*Martco Ltd. Partnership v. Wellons, Inc.*,
 588 F.3d 864 (5th Cir. 2009) .........................................................................................10

*Pias v. Continental Casualty Insurance Co.*,
 No. 2:13-CV-00182-PM-KK, 2013 WL 4012709 (W.D. La. Aug. 6, 2013) .............. *passim*

*Republic West Insurance Co. v. Spierer, Woodward, Willens, Denis & Furstman*,
 68 F.3d 347 (9th Cir. 1995) ...........................................................................................13

**STATE CASES**

*Bernard v. Ellis*,
 111 So. 3d 995, 1002 (La. 2012) .....................................................................................9

*Brewster v. Hunter*,
 38 So. 3d 912, 918 (La. Ct. App. 2010) ........................................................................10

*Central Louisiana Electric Co. v. Westinghouse Electric Corp.*,
 579 So. 2d 981 (La. 1991) ...............................................................................................9

*Continental Casualty Co. v. Brady*,
 907 P.2d 807 (Idaho 1995) ............................................................................................13

*Continental Casualty Co. v. Donald T. Bertucci, Ltd.*,
 926 N.E.2d 833 (Ill. Ct. App. 2010) ..............................................................................13

*Felice v. St. Paul Fire & Marine Insurance Co.*,
 711 P.2d 1066 (Wash. Ct. App. 1985) ..........................................................................13

*Louisiana Insurance Guarantee Ass'n v. Interstate Fire & Casualty Co.*,
 630 So. 2d 759 (La. 1994) ...............................................................................................9

*Magnon v. Collins*,
 739 So. 2d 191 (La. 1999) ........................................................................................9, 10

*Sanborn v. Oceanic Contractors, Inc.*,
   430 So. 2d 232 (La. Ct. App. 1983), *aff'd in pertinent part, rev'd on other grounds*,
   448 So. 2d 91 (La. 1984) ......................................................................................................14

*Steptore v. Masco Construction Co.*,
   643 So. 2d 1213 (La. 1994) ..................................................................................................10

*Tana v. Professional Prototype I Insurance Co.*,
   55 Cal. Rptr. 2d 160 (Cal. Ct. App. 1996) ............................................................................13

*Thomas v. Livingston Parish Sheriff's Office*,
   923 So. 2d 662 (La. Ct. App. 2005) ......................................................................................14

*Willis v. Tunica Hardwood Co.*,
   347 So. 2d 1300 (La. Ct. App. 1977) ....................................................................................14

**STATE STATUTES**

La. Civ. Code Ann. art. 2046 ......................................................................................................9

**RULES**

Fed. R. Civ. P. 56(a) ...................................................................................................................9

**I.      INTRODUCTION**

Plaintiffs Jonathan Andry ("Andry") and his law firm, The Andry Law Group, LLC ("The Andry Law Group" and, together, "Plaintiffs"), contend that Defendant Continental Casualty Company ("Continental")[1] has a duty under the lawyers professional liability policy at issue to provide a defense in connection with a corruption investigation arising out of Plaintiffs' representation of claimants in the *Deepwater Horizon* settlement program (the "DH Settlement Program").

The DH Settlement Program is overseen by this Court in the multi-district litigation captioned *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, No. 10-md-02179-CJB-SS (E.D. La.) (the "*Deepwater Horizon* MDL"). An independent investigation by court-appointed Special Master Louis J. Freeh ("Freeh") concluded that a lawyer on the settlement claims administrator's staff—Lionel "Tiger" Sutton ("Sutton")—conspired with Andry and another attorney to hide "referral fees" routed to Sutton through entities associated with Andry. Freeh found that, in exchange for the "referral fees," Sutton "facilitated" DH Settlement Program claims by Plaintiffs' clients and expedited a $7.9 million direct economic business loss claim under the DH Settlement Program by another law firm that Andry owned, which is not a party here and is not insured under the policy at issue.

---

[1] As explained below in Section III.C., Plaintiffs have improperly named CNA Financial Corporation ("CNA Financial") as a Defendant. CNA Financial is not a party to the insurance contract at issue and therefore owes no contractual or common law duties or obligations to Plaintiffs of any kind.

Based on Freeh's report, this Court issued an order requiring Andry and any law firms associated with him to show cause why they should not be precluded from representing clients and receiving legal fees in connection with the DH Settlement Program, and why a $7.9 million direct claim by Andry's other law firm should not be denied, as sanctions for their alleged misconduct. Andry and others challenged the conclusions reached by Freeh, who has also now "clawed back" tens of thousands of dollars in legal fees generated from the DH Settlement Program. Plaintiffs seek coverage under their insurance policy for legal fees and expenses incurred in connection with Freeh's investigation and report and the show cause order (together, the "Freeh Corruption Investigation"). After Continental denied coverage because such legal fees and expenses were not insured under the policy, Plaintiffs brought this lawsuit.

This case presents straightforward issues of insurance contract interpretation. Under those principles, Continental is entitled to summary judgment in its favor because the Freeh Corruption Investigation seeks no covered "damages." In particular, the policy at issue defines the term "damages" *as not including* "legal fees," "sanctions," or any kind of injunctive relief. Because the Freeh Corruption Investigation seeks to prevent Plaintiffs from collecting legal fees and representing DH Settlement Program claimants going forward and to "claw back" legal fees already paid to Plaintiffs, there is no coverage here.

This case is indistinguishable in principle from Judge Minaldi's decision last year in *Pias v. Continental Casualty Insurance Co.*, No. 2:13-CV-00182-PM-KK, 2013 WL 4012709, at *6 (W.D. La. Aug. 6, 2013), which held that a dispute about the recovery of fees and sanctions "cannot constitute covered damages under the policy" and thus "Continental did not owe a duty to defend or indemnify." There is no reason for a different outcome here. In short, the policy

5

plainly does not insure the matters at issue in the Freeh Corruption Investigation, and Continental thus has no coverage obligation as a matter of law.

## II. STATEMENT OF UNDISPUTED FACTS

### A. The Freeh Corruption Investigation

Plaintiffs represented individuals and businesses harmed by the BP *Deepwater Horizon* explosion and oil spill and presented claims for compensation pursuant to the *Deepwater Horizon* Economic and Property Damages Settlement Agreement as Amended on May 2, 2012 (the "Settlement Agreement"), which was approved by the Court in the *Deepwater Horizon* MDL in 2012. Defendants' Statement of Material Facts ("DSOMF") ¶ 1. The Settlement Agreement established the court-supervised DH Settlement Program administered by the Claims Administrator's Office and Claims Administrator Patrick Juneau, who reports to Judge Carl Barbier of the United States District Court for the Eastern District of Louisiana. DSOMF ¶ 1. In July 2013, Judge Barbier appointed Freeh as Special Master for the purpose of conducting an independent, external investigation of the DH Settlement Program "to ensure the integrity of the program for the benefit of the parties and the public." DSOMF ¶ 2. The Special Master issued a report detailing the findings of his investigation on September 6, 2013 (the "Freeh Report"). DSOMF ¶ 3.

Plaintiff Andry and several law firms associated with him (all of which have similar names) were among those investigated by the Special Master. DSOMF ¶ 4. First, Andry is the sole agent of Plaintiff The Andry Law Group. DSOMF ¶ 5. Second, Andry and Glen Lerner ("Lerner") are or were partners in the law firm AndryLerner, LLC ("AndryLerner"), which is not a party to this case. DSOMF ¶ 6. Third, Andry and his brother, Gilbert Andry, also are or were partners in The Andry Law Firm, LLC ("The Andry Law Firm"), which also is not a party to this case. DSOMF ¶ 7. Despite their similar names, Plaintiff The Andry Law Group, AndryLerner,

and The Andry Law Firm are each separate and distinct entities.  DSOMF ¶ 8.  During the relevant time period, AndryLerner and Plaintiff The Andry Law Group together had 675 claims pending before the DH Settlement Program.  DSOMF ¶ 9.  The Andry Law Firm (which is neither a party nor an insured under the policy at issue) filed its own business economic loss claim directly with the DH Settlement Program for approximately $7.9 million.  DSOMF ¶ 10.

As part of the Freeh Corruption Investigation, Freeh interviewed Andry and issued subpoenas to Andry and his associated law firms.  DSOMF ¶ 11.  Plaintiffs retained outside counsel in connection with the Freeh Corruption Investigation and Freeh's request.  DSOMF ¶ 12.

### B. The Freeh Report

The Freeh Report concluded that Andry and Lerner had utilized their relationship with Sutton and his position as a staff attorney at the DH Settlement Program Claims Administrator's Office for the benefit of their clients at AndryLerner and The Andry Law Group, and that Andry had used Sutton to facilitate and expedite The Andry Law Firm's $7.9 million direct claim.  DSOMF ¶ 13.  The Freeh Report also found that Andry and Lerner had paid Sutton over $40,000 in fees for referring claimants to AndryLerner and The Andry Law Group.  DSOMF ¶ 14.

Based upon these findings, the Freeh Report recommended that the United States Department of Justice consider whether Andry had violated federal criminal statutes regarding fraud, money laundering, conspiracy, or perjury.  DSOMF ¶ 15.  The Freeh Report also recommended that the State Bar of Louisiana determine whether Andry's conduct violated any disciplinary rules, including those relating to the division of fees.  DSOMF ¶ 16.  The Freeh Report further recommended that the Court consider applying the doctrine of "unclean hands" to ban Andry and any law firms affiliated with him from representing any clients in connection

with the DH Settlement Program or from collecting any fees as to such representations, and to disallow The Andry Law Firm's $7.9 million claim. DSOMF ¶ 17.

### C. The Show Cause Order

Following publication of the Freeh Report, on September 6, 2013, Judge Barbier issued an order in the *Deepwater Horizon* MDL that Andry and "any associated law firms," among others, show cause why the Court should not adopt the findings and recommendations of Freeh (the "Show Cause Order"). DSOMF ¶ 18. Specifically, Judge Barbier identified Freeh's recommendations:

(a) Disallowing The Andry Law Firm's $7.9 million claim under the Unclean Hands Doctrine;

(b) Disqualifying Attorney[] Jon Andry [among others], as well as any associated law firms, from representing [DH Settlement Program] claimants (or collecting fees from such claimants) under the Unclean Hands Doctrine.

DSOMF ¶ 19. In other words, the Freeh Report "recommended sanctions against the Show Cause Parties." DSOMF ¶ 19. The Show Cause Order also granted additional powers to Freeh as Special Master, including the authority to "initiate legal action to 'clawback' the payment of any fraudulent claims." DSOMF ¶ 20.

### D. The Responses to The Show Cause Order

While Plaintiff The Andry Law Group filed no response to the Show Cause Order, Andry, AndryLerner, and The Andry Law Firm each filed responses and/or objections to the Freeh Report. DSOMF ¶ 21. In particular, AndryLerner objected to the Freeh Report's recommendation that it be disqualified from representing or collecting fees from DH Settlement Program claimants because those "proposed sanctions" would divest it of property rights, harm its employees and creditors, and harm and divest the contractual rights of lawyers who referred cases to it, and because "[t]he proposed sanctions are punitive in nature and are not related to any

8

harm allegedly caused by the Andry Lerner law firm to any party." DSOMF ¶ 22. The Andry Law Firm likewise objected that the disallowance of its business loss claim was a "$7 million sanction" and on the basis that the Freeh Report had improperly "conflated" The Andry Law Firm and AndryLerner. DSOMF ¶ 23. In short, it is undisputed that the Show Cause Order seeks sanctions against Andry and his affiliated law firms.

### E. The Clawback Motion and Order

Pursuant to the Show Cause Order, on January 8, 2014, Freeh moved for the return of payments of $357,002.35 made to Casey C. Thonn ("Thonn"), a client of AndryLerner, by the DH Settlement Program (the "Clawback Motion"). DSOMF ¶ 24. The Clawback Motion alleged that AndryLerner and its partners, Andry and Lerner, had helped Thonn submit false claims and had failed to detect the fact that Thonn was submitting false documents to the DH Settlement Program. DSOMF ¶ 24. The Clawback Motion sought restitution of any payment the attorneys had received based on Thonn's claims. DSOMF ¶ 25.

On April 29, 2014, the Court granted the Clawback Motion, ordering AndryLerner, Andry, and Lerner to make full restitution to the DH Settlement Program of their collected fees (the "Clawback Order"). DSOMF ¶ 26. The Court observed: "The instant clawback motion only seeks to recover that which was incorrectly and unjustifiably paid to . . . AndryLerner." DSOMF ¶ 27. The Court held that restitution was "both proper and necessary" because AndryLerner would be "unjustly enriched" if it were allowed to keep fees that were not owed to it under its contingency fee arrangement with Thonn, which predicated Thonn's obligation to pay for AndryLerner's legal services on a favorable outcome in his DH Settlement Program claim.

DSOMF ¶ 28. In sum, the Clawback Motion and Order concerned AndryLerner's forfeiture and restitution of legal fees to the DH Settlement Program.[2]

### F. The Policy

Continental issued Lawyers Professional Liability Policy No. 425308379 to The Andry Law Group for the policy period of January 1, 2013 to January 1, 2014 (the "Policy"). DSOMF ¶ 29. The Policy has a $3 million per claim and aggregate limit of liability (exclusive of claim expenses), subject to a $10,000 per claim deductible (inclusive of claim expenses). DSOMF ¶ 30. The Andry Law Group is the "Named Insured," and Jonathan Andry, as a lawyer of The Andry Law Group, is an Insured under the Policy. DSOMF ¶ 31.

Subject to all of the Policy's applicable terms, conditions, and exclusions, the Policy's Insuring Agreement provides that:

> The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable . . . .

DSOMF ¶ 32.

The Policy defines "damages" to include "judgments, awards, [and] settlements (including pre-judgment interest) . . ." DSOMF ¶ 33. "Damages," however, do not include:

> A.  legal fees, costs and expenses paid or incurred or charged by any **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

---

[2] A second clawback motion recently was filed by the Special Master, which also implicates fees collected by AndryLerner. *See* 6/10/14 Motion for Return of Payments to Jerrod Burrle (Docket Entry No. 13010 in the *Deepwater Horizon* MDL).

  B.  civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule, including but not limited to awards under 18 U.S.C. §1961, et seq., Federal Rules of Civil Procedure 11 or 28 U.S.C. §1927 and state statutes, regulations, rules or law so providing, and injuries that are a consequence of any of the foregoing;

  C.  punitive or exemplary amounts [unless the law applicable to the **claim** mandates such coverage];

  D.  the multiplied portion of multiplied awards;

  E.  injunctive or declaratory relief;

  F.  any amount for which an Insured is absolved from payment by reason of any covenant, agreement or court order.

DSOMF ¶ 33.

### G.  Plaintiffs' Request for Coverage

On October 15, 2013, after having incurred legal expenses for months without Continental's written consent, Andry tendered notice of the Freeh Corruption Investigation to Continental[3] and requested coverage under the Policy. DSOMF ¶ 34. Andry indicated that he had incurred approximately $200,000.00 in legal fees and costs as of that date. *See* Notice from Andry. Continental responded to Andry's notice on October 22, 2013, requesting further information about the Freeh Corruption Investigation. DSOMF ¶ 35. On November 21, 2013, Andry responded to Continental's letter with copies of the Freeh Report and the Show Cause Order, asserting that there was a "claim" against him because "a 'demand' for money has been made" and that "[t]here is no doubt that the government is suing me for 'damages' under the policy definition." DSOMF ¶ 36. By letter dated January 7, 2014, Continental informed Andry

---

[3] Plaintiffs' Petition jointly refers to CNA Financial and Continental as "CNA." However, as discussed in Section III.C below, the insurer identified in the Policy is Continental. *See* Declaration of David S. Daly ("Daly Decl."), Ex. 10, Policy, Declarations ("Insurance is provided by Continental Casualty Company.").

11

that the Policy does not provide coverage for the Freeh Corruption Investigation. DSOMF ¶ 37. Andry then filed this insurance coverage lawsuit in Louisiana state court, which was timely removed to this Court. DSOMF ¶ 38.

## III.   ARGUMENT

There is no possibility of coverage under the Policy, and Continental therefore has no duty to defend or indemnify Plaintiffs in connection with the Freeh Corruption Investigation.

### A.   Legal Standard

The interpretation of an insurance policy generally is a question of law suitable for summary disposition by the Court. *Bernard v. Ellis*, 111 So. 3d 995, 1002 (La. 2012).[4] "An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code." *Magnon v. Collins*, 739 So. 2d 191, 196 (La. 1999) (citing *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759 (La. 1994)). "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Bernard*, 111 So. 3d at 1002; *see also La. Ins. Guar. Ass'n*, 630 So. 2d at 763 (collecting cases). "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Magnon*, 739 So. 2d at 197; *see also* La. Civ. Code Ann. art. 2046. Under Louisiana law, the insured bears the burden of proving that a claim is covered by the policy. *See Cent. La. Elec. Co.*

---

[4] "Summary judgment is appropriate where the record demonstrates that there is no issue of material fact and the moving party is entitled to judgment as a matter of law." *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.").

*v. Westinghouse Elec. Corp.*, 579 So. 2d 981, 986 n.11 (La. 1991) ("In an action on an insurance policy, the insured has the burden of proving facts which bring his claim within the coverage of the policy.").

"[A]n insurer's duty to defend suits brought against an insured 'is broader than [its] duty to indemnify' the insured." *Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 660 (5th Cir. 2005) (citations omitted). "[T]he insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiff's petition, and the insurer is obligated to defend the insured, unless the petition unambiguously excludes coverage." *Brewster v. Hunter*, 38 So. 3d 912, 918 (La. Ct. App. 2010). An insurer must look to the four corners of the petition or demand against the insured and the four corners of the policy to determine whether it has a duty to defend. *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009); *Steptore v. Masco Constr. Co.*, 643 So. 2d 1213 (La. 1994). "Importantly, however, an insurer's duty to defend is not triggered where 'the pleadings . . . do not reveal a possibility of liability [because] there is not a claim that would be covered by [the] policy.'" *Pias*, 2013 WL 4012709 at *6 (quoting *Elliott v. Cont'l Cas. Co.*, 949 So. 2d 1247, 1252 (La. 2007)).

### B. The Freeh Corruption Investigation Does Not Seek Covered Damages

There is no possibility for coverage for the Freeh Corruption Investigation because it only seeks relief that is not within the Policy's definition of "damages." Clear and unambiguous policy terms, such as the definition of "damages" here, must be given their full effect. *Magnon*, 739 So. 2d at 197; *see also Pias*, 2013 WL 4012709, at *8 (no duty to defend or indemnify where no possibility of covered damages under an identical definition of damages).

"Damages," as defined by the Policy, explicitly does not include:

    A.    legal fees, costs and expenses paid or incurred or charged by any **Insured**, no matter whether claimed as restitution of specific funds, forfeiture,

13

      financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

  B. civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule, including but not limited to awards under 18 U.S.C. §1961, et seq., Federal Rules of Civil Procedure 11 or 28 U.S.C. §1927 and state statutes, regulations, rules or law so providing, and injuries that are a consequence of any of the foregoing;

  \*\*\*

  E. injunctive or declaratory relief ….

Policy, § III.  In other words, the Policy does not cover (1) legal fees paid or incurred or charged by any Insured, (2) sanctions, penalties, or forfeitures, or (3) injunctive relief.

  All of the relief contemplated by the Freeh Corruption Investigation falls within these categories of relief and thus do not qualify as "damages."  Specifically, the Show Cause Order seeks three primary forms of relief: (1) disqualifying Andry and his associated law firms from representing DH Settlement Program claimants or collecting fees from such claimants; (2) disallowing The Andry Law Firm's $7.9 million direct claim; and (3) allowing the Special Master to "clawback" the fees in connection with any fraudulent claims.

  *First*, an order precluding Plaintiffs from representing claimants before the DH Settlement Program or collecting fees from such claimants would constitute a penalty, sanction, or forfeiture, all of which are not included within the Policy's definition of "damages" under subparagraph B.  Both the Court and Andry's law firms have described the recommendations of the Freeh Report as proposed "sanctions."  *See* Declaration of David S. Daly ("Daly Decl."), Ex. 5, February 28, 2014 Order ("The [Freeh] Report recommended *sanctions* against the Show Cause Parties." (emphasis added)); Daly Decl., Ex. 7, AndryLerner Objections at 2 ("The proposed *sanctions* are punitive in nature and are not related to any harm allegedly caused by the Andry Lerner law firm to any party." (emphasis added)).  Such an order would also constitute

14

injunctive relief, which is likewise excluded from the definition of "damages" under subparagraph E.

*Second*, an order disallowing the direct claim by The Andry Law Firm, which is also not an insured under the Policy,[5] would also constitute a penalty, sanction, or forfeiture, again none of which are covered "damages."  The Andry Law Firm itself described the proposed action under the Show Cause Order as a "$7 million sanction," arguing that it was not "proportionate to any blameworthiness of [its] conduct."  Daly Decl., Ex. 3, The Andry Law Firm Objections at 24.

*Third*, to the extent the Show Cause Order allows any fees previously paid to Plaintiffs in connection with their representation of DH Settlement Program claimants to be "clawed back," those amounts would constitute "legal fees, costs and expenses paid or incurred or charged by any Insured," sought as restitution or as a sanction for Plaintiffs' wrongdoing, and are not included with in the definition of "damages" under subparagraph A.  In fact, pursuant to the Show Cause Order, the Court has already ordered restitution of attorneys' fees paid to AndryLerner[6] and specifically held that this restitution was for legal fees that were "incorrectly and unjustifiably paid to … AndryLerner."  *See* Daly Decl., Ex. 8, Clawback Order at 22-26.

Because there is *no possibility* of covered "damages," the Policy does not afford coverage for the Freeh Corruption Investigation.  Indeed, this Court previously has reached the same

---

[5] The Andry Law Firm unquestionably is not an Insured under the Policy.  As noted above, The Andry Law Firm is an entity separate from The Andry Law Group.  *See* Daly Decl., Ex. 3, The Andry Law Firm Objections at 6.  In addition, assuming that Andry's ownership interest in The Andry Law Firm is greater than 10%, the Owned Entity Exclusion would also preclude coverage for any claim based on or arising out of legal services performed directly or indirectly for The Andry Law Firm.  *See* Daly Decl., Ex. 10, Policy, § IV.H.

15

conclusion under virtually identical facts and policy language. *See Pias*, 2013 WL 4012709, at *8. In *Pias*, the court held that there were no covered damages, under an identical definition in a lawyers professional liability policy also issued by Continental, where the underlying claimant sought only (1) the return of fees she had paid her attorney and (2) sanctions from the court for the attorney's conduct in representing her. *Id.* at *8. The *Pias* court held that, "because the costs incurred by Pias in the fee dispute matter are clearly not covered 'damages' . . . under the Policy, Continental did not owe a duty to defend or indemnify Pias in the Lopez fee dispute matter." *Id.*

Courts nationwide have reached the same result as in *Pias*. *See Cont'l Cas. Co. v. Donald T. Bertucci, Ltd.*, 926 N.E.2d 833, 842 (Ill. Ct. App. 2010) (policy did not cover suit by client against insured for taking excessive fee in breach of fee agreement where damages provision excluded "legal fees, costs and expenses paid or incurred or charged by the Insured, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing"); *Tana v. Prof. Prototype I Ins. Co.*, 55 Cal. Rptr. 2d 160, 163-64 (Cal. Ct. App. 1996) (policy did not cover suit by client against insured attorney for retaining excessive amount of attorney's fees where damages provision excluded "legal fees, costs, and expenses"); *Cont'l Cas. Co. v. Brady*, 907 P.2d 807, 811 (Idaho 1995) (policy did not cover suit by client against insured for taking unreasonably

---

(continued from the previous page)

[6] AndryLerner is not a party to this action, and it is not clear whether it is seeking coverage in connection with the Freeh Corruption Investigation or the Clawback Motion and Order. Regardless, there is no possibility of covered damages on AndryLerner's part for the reasons discussed above.

high fee in breach of fee agreement where damages provision excluded "any fine, penalty, or claim for return of fees").[7]

Here, because none of the relief sought in connection with the Freeh Corruption Investigation constitutes covered "damages" under the Policy, Continental has no duty to defend or indemnify Plaintiffs.

### C. CNA Financial Is Not a Proper Party

Finally, in any event, summary judgment should be granted in favor of CNA Financial because CNA Financial did not issue the Policy to The Andry Law Group and owes no duty or legal obligation to Plaintiffs whatsoever. The only insurer identified on the Policy is Continental. *See* Daly Decl., Ex. 10, Policy, Declarations ("Insurance is provided by Continental Casualty Company."). CNA Financial is not a party to the insurance contract, and therefore Plaintiffs are not in privity of contract with CNA Financial and cannot maintain a breach of contract or declaratory judgment claim against CNA Financial. *See, e.g.*, *Thomas v. Livingston Parish Sheriff's Office*, 923 So. 2d 662, 668 (La. Ct. App. 2005) (no cause of action is stated under a breach of contract theory when the parties are not in privity); *Sanborn v. Oceanic Contractors, Inc.*, 430 So. 2d 232, 233 (La. Ct. App. 1983), *aff'd in pertinent part, rev'd on other grounds*, 448 So. 2d 91 (La. 1984) ("Absent privity of contract, a cause of action cannot be

---

[7] Moreover, courts have widely held that the term "damages" does not include monies wrongfully obtained. Even in the absence of the express limitation on the scope of "damages" contained in the Policy, it would be clear that "the ordinary meaning" of "damages" "would not include a court-ordered refund of . . . attorneys' fees. Such a refund, after all, sounds not in damages, but in restitution." *Friend v. Attorneys Liab. Prot. Soc'y*, 131 F.3d 134, 1997 WL 746761, at *2 (4th Cir. 1997) (unpublished); *see also Felice v. St. Paul Fire & Marine Ins. Co.*, 711 P.2d 1066, 1069 (Wash. Ct. App. 1985) (no coverage for claim seeking to compel attorney "to return funds he allegedly had wrongfully taken as compensation for his services"); *Republic W. Ins. Co. v. Spierer, Woodward, Willens, Denis & Furstman*, 68 F.3d 347, 352 (9th Cir. 1995) (holding that attorney's return of an unearned retainer does not constitute "damages" because "[r]estitutionary payments . . . are not 'damages'").

asserted based on breach of contract . . ."); *Willis v. Tunica Hardwood Co.*, 347 So. 2d 1300, 1302 (La. Ct. App. 1977) (one who is not a party to a contract cannot be held liable for the breach thereof). Accordingly, Plaintiffs' claims against CNA Financial fail as a matter of law.

## IV. CONCLUSION

For the reasons discussed above, Defendants are entitled to summary judgment that there is no coverage for the Freeh Corruption Investigation under the Policy and that Continental has no duty to defend or indemnify Plaintiffs in connection with the Freeh Corruption Investigation. Regardless of how the Court rules on this issue, however, CNA Financial is entitled to summary judgment because it is an improperly named party.

WHEREFORE, based on the facts and the applicable law stated in the Memorandum, Defendants respectfully request that this Court grant judgment in favor of Defendants on all claims.

Dated: June 30, 2014                                    Respectfully submitted,

*Of Counsel:*                                           By: **/s/ David S. Daly**
**RICHARD A. SIMPSON**                                  **DAVID S. DALY** (#20774)
D.C. Bar No. 411893                                     **ALLEN & GOOCH, ALC**
(admitted *pro hac vice*)                               3900 N Causeway Blvd
**BENJAMIN C. EGGERT (T.A.)**                           Suite 1450
D.C. Bar No. 474218                                     Metairie, LA 70002
(admitted *pro hac vice*)                               Telephone: (504) 836-5290
**WILEY REIN LLP**                                      Facsimile: (504) 836-5295
1776 K Street NW                                        Email: DavidDaly@AllenGooch.com
Washington, DC 20006
Telephone: (202) 719-7000                               *Counsel for Defendants CNA Financial*
Facsimile: (202) 719-7049                               *Corporation and Continental Casualty*
Email: rsimpson@wileyrein.com                           *Company*
Email: beggert@wileyrein.com

## CERTIFICATE OF SERVICE

I certify that on June 30, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ David S. Daly
**DAVID S. DALY**