# EXHIBIT 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig<br>"Deepwater Horizon" in the Gulf<br>of Mexico, on April 20, 2010 | MDL NO. 2179<br><br>SECTION J |
| Applies to: *All Cases* | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

**ORDER**

**[Regarding BP's Motion to Order Production of Certain Documents
by Special Master Freeh and to Set Schedule (Rec. doc. 12254]**

**Background**

In 2012, BP and the PSC reached an agreement to settle claims brought by non-governmental private claimants for economic damages from the Deepwater Horizon oil spill. In accord with the agreement, the Court established the Court Supervised Settlement Program ("CSSP"), which began operation on June 4, 2012. On July 2, 2013, the Court appointed Louis J. Freeh as Special Master.

> Certain recent events have arisen that led to the resignation of a staff attorney at the CSSP. An internal investigation by the CSSP is underway. However, the Court has concluded that in order to ensure the integrity of the program for the benefit of the parties and the public, an independent, external investigation of this matter should be performed. This type of investigation cannot be effectively and timely addressed by an available district judge or magistrate judge of this district. Accordingly, the Court has decided to appoint Mr. Freeh as Special Master for this purpose. . . .
>
> The duties of this appointment will not involve traditional special master roles involving mediation, discovery, fact finding, or substantive law. This appointment is limited to: a) performing the aforementioned independent external investigation; b) fact finding as to any other possible ethical violations or other misconduct within the CSSP; and c) examining and evaluating the internal compliance program and anti-corruption controls within the CSSP, and making any necessary recommendations to design and to implement additional such controls, policies, procedures, and practices to ensure the integrity of the CSSP.

Rec. doc. 10564 at 2. The Special Master was instructed to perform his duties independently of BP, the PSC and the CSSP. Id. at 3.

On September 6, 2013, the Special Master provided a report ("First Report") concerning two former CSSP employees and others. Sanctions were recommended against those parties. Rec. doc. 11287. In response, the Court noted:

> While the conduct of certain Claims Administrator Office employees and vendors described in the Report is problematic, the Special Master finds that should not prevent the CSSP from continuing to fairly and efficiently process and pay legitimate claims in a timely manner.

Rec. doc. 11288 at 2. The Special Master was ordered to undertake additional duties, including:

> In conjunction with the Claims Administrator's Office, the Special Master shall examine and investigate: conflicts of interest by parties involved in the CSSP; any past or pending claims submitted to the CSSP which are deemed to be suspicious; make any necessary referrals to the United States Department of Justice or to other appropriate authorities; initiate legal action to "clawback" the payment of any fraudulent claims; and do this in a manner which does not delay or impede the payment of legitimate claims. . . .

Rec. doc. 11288 at 2-3.

The former CSSP employees and others (the "Show Cause Parties") were required to show cause why the Court should not adopt the recommendations of the Special Master. Pursuant to Rule 53(f), the Show Cause Parties and any other interested party were given until January 17, 2014 to file responses, objections or motions to the First Report. Rec. docs. 11288 and 11979.

On September 23, 2013, BP responded to the First Report and sought limited injunctive relief asking that all program payments be suspended pending implementation of the recommendations contained in the First Report. BP did not file objections to the First Report. Rec. doc. 11471.[1]

---

[1] Rule 53(f)(2) allows a party to file objection to or a motion to adopt or modify a master's report no later than 21 days after a copy is served. As to the First Report, that time has passed as to BP.

2

Prior to January 17, 2014, the Show Cause Parties filed objections to the First Report. Rec. docs. 11990, 12165, 12169 and 12172.

On January 17, 2014, the Special Master issued his Second Report. Rec. doc. 12174. The report concerned a potential conflict of interest and breach of confidentiality by the CSSP Appeals Coordinator who resigned on October 7, 2013. Id. at 1. The Second Report also criticized two other CSSP employees who resigned on December 20, 2013.

The Special Master recommended that the CAO should: (1) continue to educate its staff on the high ethical expectations concerning confidential information, conflicts of interest and recusal; (2) develop appropriate staff positions dedicated to fielding claim status questions; (3) develop an appropriate communication policy, including requiring usage of official email; and (4) involve the Fraud, Waste and Abuse Coordinator at the start and at each phase of investigations. Id. at 6-7.

On January 21, 2014, BP sent a letter to the Special Master requesting production of: (1) documents provided to the Show Cause parties in response to the Court's order that they be provided information relevant to the portions of the First Report concerning them (Rec. doc. 11412); (2) documents cited in the First Report; (3) documents relating to the factual basis for the disclosures and recommendations in the Second Report; and (4) other information relevant to the Special Master's findings as to misconduct, conflicts of interest and deficiencies in internal controls. Rec. doc. 12193 (Exhibit 1). The Office of the Special Master responded that the request should be brought to the attention of the Court. Rec. doc. 12254 (Exhibit 2).

On January 29, 2014, BP filed its motion to order production of the documents. Rec. doc. 12254. It contends that: (1) it has a compelling need to evaluate the documents; (2) Rule 53 and

3

due process require their disclosure; and (3) it seeks relevant documents. Responses were received from the Special Master, some of the Show Cause Parties, and others. Rec. docs. 12308, 12312, 12313, 12314, 12315, 12316, 12318 and 12321. BP submitted a reply. Rec. doc. 12354.

### **Rule 53 of the Federal Rules of Civil Procedure**

In 2003, Rule 53 was revised extensively. The amendments clarified the provisions that govern the appointment and function of masters for all purposes. Pursuant to Rule 53(a)(1)(C), pretrial and post-trial masters may be appointed to address pretrial and post-trial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district. Fed. R. Civ. P. 53 Advisory Committee's Note, 2003 Amendments ("Committee's Note"). "Some forms of . . . investigations . . . are familiar examples of duties that a judge might not feel free to undertake." Committee's Note (Pretrial and Post-Trial Masters).

The order of appointment must state "the nature of the materials to be preserved and filed as the record of the master's activities;" and the "method of filing the record. . . ." Fed. R. Civ. P. 53(b)(2)(C) and (D).

> It is not feasible to prescribe the nature of the record without regard to the nature of the master's duties. The records appropriate to discovery duties may be different from those appropriate to encouraging settlement, investigating possible violations of a complex decree, or making recommendations for trial findings. A basic requirement, however, is that the master must make and file a complete record of the evidence considered in making or recommending findings of fact on the basis of evidence. The order of appointment should routinely include this requirement unless the nature of the appointment precludes any prospect that the master will make or recommend evidence-based findings of fact.

Committee's Note (Subdivision (b)).

> The report is the master's primary means of communication with the court. The materials to be provided to support review of the report will depend on the nature of the report. The master should provide all portions of the record preserved under Rule 53(b)(2)(C) that the master deems relevant to the report.

4

Id. (Subdivision (f)).

> The court may direct that additional materials from the record be provided and filed. Given the wide array of tasks that may be assigned to a pretrial master, there may be circumstances that justify sealing a report or review record against public access--a report on continuing or failed settlement efforts is the most likely example. A post-trial master may be assigned duties in formulating a decree that deserve similar protection. Such circumstances may even justify denying access to the report or review materials by the parties, although this step should be taken only for the most compelling reasons. Sealing is much less likely to be appropriate with respect to a trial master's report.

Committee's Note (Subdivision (f)). The tasks assigned to the master bear on decisions on whether additional material from the record is to be provided, whether a report is sealed, and whether the parties are denied access to the report and the review materials.

BP cites U.S. v. City of New York, 2013 WL 2477182 at *5 (E.D.N.Y. 2013). The U.S. alleged that certain aspects of the City's policies for selecting entry-level firefighters violated Title VII. After entry of summary judgment in favor of the U.S. and intervening claimants, there was a claims process. Pursuant to Rule 53, Special Masters were appointed to issue findings and conclusions on the eligibility of individual claimants for monetary and hiring relief. Recommendations were made regarding particular claimants, and some objected. The Special Masters submitted to the court a copy of the file for each objecting claimant with the evidence relied upon by the Special Masters in making their determination. These Special Masters were trial masters making recommendations on whether a person was entitled to monetary damages and hiring relief. The issues before the court did not concern duties comparable to the duties assigned to Special Master Freeh.

BP also cites cases arising from the National Vaccine Injury Compensation Program ("Vaccine Program"), including Hines on Behalf of Sevier v. Secretary of Dept. of Health and Human Services, 940 F.2d 1518 (C.A. Fed. 1991). In Hines, the plaintiff appealed the judgment

5

from the U.S. Claims Court denying her compensation under the Vaccine Program. The Claims Court had accepted the Special Master's decision as a trial master denying her claim. Rule 53 was not at issue. Instead, the plaintiff argued that before the Special Master relied upon a medical textbook, Fed. R. Evid. 201(e) and the principles of fundamental fairness required that she be given an opportunity to be heard. Id. at 1526.

The Court finds that BP's authorities are inapplicable to a master appointed to conduct an investigation into a court-supervised settlement program.

### Arguments of BP and Special Master

BP contends that while recommendations in the Second Report are prudent, more action may be necessary.

> Of special importance are the documents underlying Special Master Freeh's four recommendations as to controls. BP agrees with the thrust of the Special Master's recommendations and welcomes efforts to establish controls and efficiencies that have been consistently lacking. But the question is whether additional action is also required. Access to the evidence underlying these recommendations would provide BP with the "full picture" of the "analytical process by which [Special Master Freeh's] ultimate findings were reached." It would significantly advance BP's evaluation of whether Special Master Freeh's current recommendations are adequate to ensure the integrity of the CSSP or whether BP must exercise its rights under Rule 53 to file a motion to modify the Special Master's report.

Rec. doc. 1254 at 11 (footnote omitted).

BP argues that its status as the party that is funding the CSSP and who is owed contractual and fiduciary duties, demonstrates a compelling reason for production of the information. It contends that the Special Master does not possess a compelling reason for withholding the information. Even accepting the Special Master's arguments, BP urges it is entitled to at least some of the information sought by it. It contends there is no reason to withhold information already produced to the Show Cause Parties.

6

Even though the Special Master has not made any findings and recommendation adverse to BP, it urges that there is no basis under Rule 53 to deny it access to the information reviewed and developed by the Special Master. It contends that the Reports, even with extensive footnotes, are insufficient to determine whether more action than recommended by the Special Master is required.

BP further urges that if the Court had conducted the investigation, it would have been in open court and on the record. Inasmuch as the Special Master is standing in the shoes of the Court, it should be required to produce the documents.

The Special Master responds that procedural protections under Rule 53 consistently arise in circumstances where the moving party objects to a finding or recommendation. Unlike the Show Cause Parties, the Special Master has not made any adverse findings or recommendations concerning BP. The Special Master contends that the two Reports provide ample detail to support the findings and recommendations. The Special Master argues that these factors demonstrate that the Court has complied with the procedural requirements of Rule 53(f) and no further disclosure of information by the Special Master is required.

In addition, the Special Master contends that there are compelling reasons for not disclosing the information to BP. The parties agreed to keep confidential certain information concerning aspects of the claims appeal process and information concerning in-process claims that have not yet been resolved in the settlement program (for example, the October 2, 2013 email discussed in the Second Report). Some of the material sought by BP would require disclosure of the mental process behind the two Reports. The Special Master was not required to produce such information to the Show Cause Parties. Rec. doc. 12026 at 6.

7

## Analysis

The First Report recommended sanctions against the Show Cause Parties. The Special Master was ordered to provide them access to information relevant to portions of the First Report concerning each of them. Rec. docs. 11412 and 11442. The Special Master's findings and recommendations regarding the Show Cause Parties were not adverse to BP. As noted, BP did not object or move to modify the First Report. BP has not demonstrated a compelling need for the documents produced to the Show Cause Parties and it is not entitled to those documents.

The Special Master was not appointed as a trial master. The appointment was for the purpose of conducting an investigation of the operation of the settlement program. BP's argument presupposes that if it is in possession of all that the Special Master reviewed, BP may determine that the Special Master's recommendations fall short of what is required. BP ignores the qualifications of Louis Freeh and the Freeh Group to conduct the investigation described in the order of appointment. Mr. Freeh served as Deputy United States Attorney for the Southern District of New York, United States District Court Judge for the Southern District of New York and Director of the Federal Bureau of Investigation. The Freeh Group is a global risk management firm serving in the areas of business integrity and compliance, safety and security, and investigations and due diligence. Rec. doc. 10564 (Attachment). BP has not established that it is more qualified to conduct the investigation than Mr. Freeh and the Freeh Group. This is a Court-supervised settlement program. If BP's relief is granted, there is risk it will become a BP-supervised settlement program.

BP has not demonstrated a compelling reason for production of any of the documents sought in its motion, while the Special Master has presented compelling reasons why they should

not be produced.

IT IS ORDERED that BP's motion to order production of certain documents by Special Master Freeh and to set schedule (Rec. doc. 12254) is DENIED.

New Orleans, Louisiana, this 28th day of February, 2014.

_____
**CARL J. BARBIER**
**United States District Judge**