# EXHIBIT 14



**P. O. Box 8317, Chicago, IL 60680-8317**
**Consultant's Location:  Collinsville, Illinois**
**CNA is a paperless environment.**
**Please contact me by email at patrice.wilson@cna.com**

*M. Patrice Wilson*

*Claim Consultant*
*Lawyers Professional Liability*
*Telephone:  618-345-0825*
*E-mail:  patrice.wilson@cna.com*

January 7, 2014

By Certified Mail/Return Receipt Requested

Jonathan Andry, Esq.
The Andry Law Group, LLC
610 Baronne Street
New Orleans, LA  70113

| Re: | File No: | LWA08743 |
|---|---|---|
| | Policyholder: | The Andry Law Group, LLC |
| | Regarding: | Deepwater Horizon MDL |
| | Policy Number: | 425308379 |
| | Policy Term: | 1/1/2013 – 1/1/2014 |
| | Policy Limits: | $3,000,000 / $3,000,000 |
| | Deductible: | $10,000 each claim, inclusive of claim expenses |
| | Firm Retroactive Date: | 10/5/1990 |

Dear Mr. Andry:

As you know, Continental Casualty Company ("Continental") issued Lawyers Professional Liability Policy No. 425308379 to The Andry Law Group, LLC ("The Andry Law Group") for the **policy period** of January 1, 2013 to January 1, 2014 (the "Policy").[1]  The Policy has a $3 million per **claim** and aggregate limit of liability.  **Claim expenses** are outside of the limits of liability.  The Policy has a $10,000 per **claim** deductible, inclusive of **claim expenses**.

By email dated October 14, 2013, you notified Continental that Louis Freeh, in his capacity as Special Master for the Deepwater Horizon Multi-District Litigation (the "Deepwater Horizon MDL"), had issued a report on September 6, 2013 (the "Freeh Report") concluding that you had attempted to corrupt the processes used by the Deepwater Horizon Economic & Real Property Claims Center (the "DHECC"). You notified Continental that you had been "forced" to retain counsel during the course of the Special Master's investigation. You also advised Continental that Judge Barbier, the United States District Court judge presiding over the Deepwater Horizon MDL, had ordered you to show cause why the Special Master's report should not be adopted (the "Show Cause Order").  You then asked Continental to reimburse you for approximately $200,000 "in legal fees and costs" that you incurred both before and after the issuance of the Freeh Report and the Show Cause Order.

---

[1] Terms bolded herein are defined in the Policy.

Mr. Jonathan Andry                              -2-                              January 7, 2014

By letter dated October 22, 2013, Continental advised you that it needed additional information before it could determine whether this matter is covered by the Policy.  Continental reserved its rights under the Policy, advising you that certain terms and conditions in the Policy could limit or preclude coverage for this matter.

On November 21, 2013, you sent Continental a letter, again requesting reimbursement of certain fees and expenses that you have incurred both before and after the issuance of the Show Cause Order.  You enclosed a copy of the Freeh Report and the Show Cause Order.  You also requested that CNA agree to, and pay for, the retention of the Unglesby Law Firm in connection with this matter, which you assert is covered by the Policy.

This letter responds to your correspondence dated November 21, 2013.  As explained below, based on the information presently known to Continental, there is no coverage for this matter under the Policy because there has been no **claim** made against an **Insured**.  Even if the Show Cause Order, or some portion thereof, could be considered to be a **claim** made against an **Insured**, the Policy still would not afford coverage for this matter because there is no possibility of covered **damages.**

The position set forth in this letter is based on the information available to Continental at this time.  Continental invites you to submit any additional information you may have regarding these matters to the extent that you disagree with Continental's coverage position.

I. FACTUAL BACKGROUND

Continental understands that the Freeh Report is the result of a 66-day investigation conducted by Special Master Freeh regarding allegations of ethical violations in connection with the settlement procedures used by the DHECC.  The district court appointed Mr. Freeh pursuant to Federal Rule of Civil Procedure 53 and the court's inherent power.  Pursuant to this appointment, Mr. Freeh investigated you and a number of law firms with which you are affiliated, including:  (1) The Andry Law Firm, an LLC you formed with your brother Gibb Andry in 1995; (2) The AndryLerner Law Firm, an entity you formed in 2012 with Glen Lerner; and (3) The Andry Law Group, a firm you founded in September 2009 and the entity that is listed as the **Named Insured** in the Policy's Declarations.  Continental understands that Mr. Freeh issued one or more documents subpoenas to you and also interviewed you under oath.

The Freeh Report makes extensive factual findings in its 93 pages.  To summarize, the Freeh Report concludes that you improperly utilized a personal relationship and a referral fee arrangement with Lionel "Tiger" Sutton, an attorney who worked at the DHECC, in order to expedite and facilitate both:  (1) the claims of certain clients of The AndryLerner Law Firm and The Andry Law Group seeking compensation for damages allegedly caused by the Deepwater Horizon oil spill; and (2) a direct "Business Economic Loss" claim by The Andry Law Firm, which sought approximately $7.9 million in alleged damages from the DHECC.

The Freeh Report makes a number of recommendations with respect to you.  First, the Freeh Report recommends that you be referred to the U.S. Attorney's Office for the Eastern District of Louisiana for investigation of whether you violated federal criminal statutes regarding fraud, money laundering, conspiracy or perjury.  Second, the Freeh Report recommends that your conduct be reviewed by the appropriate professional bar committees in your licensing jurisdiction(s).  Third, the Freeh Report recommends that the district court overseeing the Deepwater Horizon MDL apply the "unclean hands" doctrine to:

(a) "Prohibit [Mr. Andry and any associated law firms] from representing any claimants before the DHECC, or from receiving any related legal fees, based on their conduct;"
(b) "Disallow The Andry Law Firm's pending $7,818,693.95 award based on the conduct of Messrs. Jon Andy and Gibby Andry in their dealings with the DHECC and Mr. Sutton while Mr. Sutton was employed at the [DHECC]."

Mr. Jonathan Andry                                      -3-                                      January 7, 2014

The Show Cause Order issued by the district court directed you "and any associated law firms" to show cause why the Freeh Report's recommendations should not be adopted.  Continental understands that you—on behalf of yourself and The Andry Law Firm—have sought and received several extensions of the time to respond to the Show Cause Order and have not yet responded.


II. COVERAGE ANALYSIS

Based on the information presently known to Continental, the Policy does not afford coverage for this matter.

At the outset, we direct your attention to the Policy's Insuring Agreement, which provides that "[t]he **Company** agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **policy period**[.]" Policy, Section I.A.  The Policy defines **claim**, in turn, to mean "a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money or services arising out of an act or omission, including **personal injury**, in the rendering of or failure to render **legal services."**  Policy, Section III, Definitions.

In your letter of November 21, 2013, you appear to assert that the Show Cause Order constitutes a covered **claim** because it is the equivalent of a demand for money that exposes you to the possibility of "suffering significant adverse financial consequences."  Your position misconstrues the Policy's language in two critical respects.  First, that portion of the Show Cause Order concerning a possible forfeiture of The Andry Law Firm's direct claim for business economic loss from the DHECC seeks relief only with respect to The Andry Law Firm, an entity that is not the **Named Insured** under the Policy and does not otherwise fall within the Policy's definition of **Insured**.  *See* Policy, Section III, Definitions.  Therefore, the portion of the Show Cause Order regarding the possible disallowance of The Andry Law Firm's alleged "business losses" cannot constitute a **claim** "made against the **Insured**," as required by the Policy's Insuring Agreement.

With respect to the portion of the Show Cause Order that relates to a possible ban on your representation of claimants before the DHECC, the relief contemplated is prospective in nature and, if granted, would not require you to repay any past amounts earned or otherwise take corrective action.  Accordingly, the latter portion of the Show Cause Order—the only provision that arguably seeks relief with respect to an **Insured** under the Policy—does not involve any demand "for money or services" and therefore does not constitute a **claim** as defined by the Policy.

Finally, your argument that the Show Cause Order is "akin to" being sued for professional negligence also misses the mark.  You have not been named in, or served with, a lawsuit asserting any sort of cause of action for malpractice, nor is it clear that Mr. Freeh or the federal government would have standing to bring such a suit.

Even assuming, for the sake of argument, that the Show Cause Order (or a portion thereof) did constitute a **claim** made against an **Insured**, the Policy would not afford defense or indemnity coverage for this matter because there is no possibility of covered **damages**.  The policy defines **damages** to mean "judgments, awards and settlements (including pre-judgment interest), provided any settlements negotiated with the assistance and approval of the **Company**."  Policy, Section III, Definitions.  **Damages** do not, however, include:

     A.     legal fees, costs and expenses paid or incurred or charged by any **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

      B.      civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule, including but not limited to awards under 18 U.S.C. §1961, et. seq., Federal Rules of Civil Procedure 11 or 28 U.S.C. §1927 and state statutes, regulations, rules or law so providing, and injuries that are a consequence of any of the foregoing;

      C.      punitive or exemplary amounts, unless the law applicable to the **claim** mandates such coverage;

      D.      the multiplied portion of multiplied awards;

      E.      injunctive or declaratory relief;

      F.      any amount for which an Insured is absolved from payment by reason of any covenant, agreement or court order.

Policy, Section III, Definitions, as amended by the "Punitive Damages Coverage Endorsement."

Here—contrary to your assertion that "[t]here is no doubt that the government is suing me for 'damages' under the policy definition"—each form of relief contemplated by the Show Cause Order is expressly excluded from the definition of **damages.**

First, an order disallowing The Andry Law Firm's direct DHECC claim for "business economic loss" would constitute a penalty or sanction for your purported misconduct or would otherwise represent a "forfeiture"—all of which are excepted from the definition of **damages** pursuant to Subparagraph B above.[2]

Likewise, an order precluding you and any associated law firms, including The Andry Law Group, from representing claimants before the DHECC in the future would constitute injunctive relief that is excluded from the definition of **damages** pursuant to Subparagraph E above.

Finally, to the extent the Show Cause Order could be interpreted as suggesting that fees previously paid to you in connection with your representation of claimants before the DHECC should be "clawed back," such amounts would represent "legal fees, costs and expenses paid or incurred or charged by any **Insured**" sought as restitution for your wrongdoing.  Such an award therefore would not constitute covered **damages** pursuant to Subparagraph A above.  Accordingly, even if the Show Cause Order (or some portion thereof) did constitute a **claim** made against an **Insured**, the Policy still would not afford coverage for this matter.

The coverage position set forth above is based on the information presently known to Continental and is not intended to be exhaustive.  Numerous other terms, conditions and exclusions in the Policy might also serve to limit or bar coverage for this matter, including but not limited to:

- The provision in the Insuring Agreement that conditions the availability of coverage on the **Insured**'s lack of pre-inception knowledge that the acts or omission at issue might reasonably be expected to be the basis of such **claim,** *see* Policy, Section I.A.3;
- The provision in the Insuring Agreement that conditions the availability of coverage on the absence of other applicable insurance coverage, *see* Policy, Section I.A.4;

---

[2] Moreover, as explained above, The Andry Law Firm is not an **Insured** under the Policy and therefore the portion of the Show Cause Order relating to the disallowment of The Andry Law Firm's claim for "business economic loss" does not in any event constitute a **claim** "made against the **Insured**," as is required to trigger coverage under the Policy in the first instance.

Mr. Jonathan Andry                            -5-                            January 7, 2014

- The definition of **Legal Services**, which expressly does not include "services performed by an **Insured** for the person or entity specified below, or any entity that is operated, managed or owned by such entity or an affiliate, subsidiary or parent thereof:  Glen Lerner & Glen Lerner, LLC," *see* Policy, Section III, Definitions, as amended by the "Specific Client or Third Party Exclusion Endorsement";
- The definition of **claims expenses**, which is limited to "fees charged by attorneys *designated by the Company* or by the **Insured** *with the Company's written consent*," *see* Policy, Section III, Definitions, as amended by "Amendatory Endorsement – Louisiana" (emphases added);
- The condition in the Policy precluding the **Insured** from "voluntarily mak[ing] any payment . . . or incur[ring] any expense without the consent of the **Company**," Policy, Section V.E.3; and
- The exclusion barring coverage for **claims** "based on or arising out of any dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing by an **Insured**," *see* Policy, Section IV.A, Exclusions, as amended by "Lawyers Amendatory Endorsement."

III. CONCLUSION

Based on the information known to Continental, as set forth above, Continental has concluded that there is no coverage for this matter.  Accordingly, Continental will not be reimbursing you for the legal fees you have previously incurred, nor will Continental be providing you with a defense in connection with the Show Cause Order.

To the extent that you disagree with the position set forth in this letter, Continental invites you to submit any additional information you may have regarding this matter.  In the meantime, Continental continues to reserve all of its rights under the Policy and applicable law.

If you have any questions or concerns about the content of this letter or the handling of the claim, please contact me.

Sincerely,

M. Patrice Wilson
Claim Consultant

LWA08743/The Andry Law Group LLC

Copy via email to expedite delivery