UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE ANDRY LAW GROUP, LLC; | * | CIVIL ACTION 14-CV-00600 |
| JONATHAN ANDRY | * | |
| Plaintiffs | * | JUDGE: SSV |
| vs. | * | |
| | * | MAGISTRATE: JCW |
| CNA FINANCIAL CORPORATION; | * | |
| CONTINENTAL CASUALTY COMPANY | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DECLARATORY RELIEF**

*I.     Introduction*

Plaintiffs move for Partial Summary Judgment on their declaratory relief claim to establish Continental Casualty Company's ("Continental") duty to defend claims against Plaintiffs resultant from U.S. District Judge Carl Barbier's demands for services arising out of an act or omission in the rendering of or failure to render legal services in the litigation captioned *In re: Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010. MDL No. 2179.* Continental has abrogated its duty to defend Plaintiffs for covered claims, and should be ordered to reimburse Plaintiffs for the costs of defense paid thus far and to provide a defense for ongoing claims.

Plaintiffs seek a speedy resolution to this controversy as Continental's unjust denial of coverage has created undue hardship for Plaintiffs. Declaratory relief is appropriate as such a judgment "will serve a useful purpose in clarifying and settling the legal relations in issue," as well as "terminate and afford

-1-

relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *Concise Oil & Gas Partnership v Louisiana Intrastate Gas Corp.*, 986 F2d 1463, 1471 (5th Cir. 1993).

## II.     Facts

On January 18, 2013, Continental entered into an agreement with The Andry Law Group, LLC, and Jonathan B. Andry to provide professional liability insurance for Jonathan B. Andry, The Andry Law Group, LLC, and its associates. In exchange for valuable consideration, Continental issued Lawyers Professional Liability Policy No. 425308379 to the Andry Law Group, LLC for the policy period of January 1, 2013 to January 1, 2014 ("the Policy"). The Policy has a $3 million per claim and aggregate limit of liability, with a $10,000 per claim deductible, inclusive of claims expenses.[1]

Pursuant to its policy, Continental obligated itself to provide Plaintiffs with a defense for all claims or "demands for service" arising out of an act or omission in the rendering of or failure to render legal services lodged against Plaintiffs. This duty to defend was one of the most, if not *the* most, important consideration in Mr. Andry's entering into this particular insurance contract. Specifically, the Insuring Agreement included the following covenant:

> "The **Company** shall have the right and duty to defend in the **Insured's** name and on the **Insured'**s behalf a **claim** covered by this Policy even if any of the allegations of the **claim** are groundless, false or fraudulent."

Continental defined the term *claim* in it's Policy as follows:

> "**Claim** means a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render **legal services**."

This clear language mandates that if Plaintiffs, as named insureds, receive a demand for services arising

---

[1] A copy of the Policy is attached as Exhibit "1" and incorporated herein by reference.

out of an act or omission in the rendering of or failure to render legal services, then they have received a *claim* triggering Continental's duty to defend.

There is no dispute that Jonathan Andry and the Andry Law Group, LLC ("ALG") are named insureds under the Policy.

There is also no dispute that Plaintiffs performed legal services during times relevant to the Policy period. In particular, Plaintiffs represented individuals and businesses harmed by the BP Deepwater Horizon explosion and subsequent oil spill that occurred on or about April 20, 2010. *In re: Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010. MDL No. 2179.* This representation required the submission of claims for compensation pursuant to the Deepwater Horizon Economic and Property Settlement Agreement As Amended on May 2, 2012 (the "Settlement Agreement"). The Settlement Agreement established the Deepwater Horizon Court-Supervised Settlement Program (the "CSSP"), administered by the Claims Administrator Patrick Juneau, who directed the settlement process through the Claims Administrator's Office (the "CAO"). U.S. District Judge Carl Barbier retained jurisdiction of the entire settlement process, with the Claims Administrator's Office regularly reporting to the Court.

One of the Claims Administrator's ("CA") paramount functions was to interpret portions of the Settlement Agreement for the parties. From the outset, the primary defendant BP Exploration & Production, Inc. ("BP") objected to many of the CA's interpretations of the Settlement Agreement, and sought Judge Barbier's intervention in interpreting different payment provisions of the Settlement Agreement. Judge Barbier's denial of BP's requests resulted in numerous appeals to the U.S. Court of Appeal for the Fifth Circuit, and BP's appeal efforts continue as of the date of filing of this motion. BP's appeal strategy and its unprecedented media campaign are an acknowledged effort to countermand its

previous acceptance of many of the transparent terms of the Settlement Agreement.[2] In addition, BP established a "hotline" to allow the reporting of suspected transgressions in the administration of the settlement. Numerous reports were investigated, with one such report lodged against employees of the Claims Administrator's Office. On or about May 28, 2013, BP claimed it received a tip from a "confidential informant" that Lionel Sutton was receiving improper attorney referral fee payments for BP claims while he was also employed with the Claims Administrator's Office. Upon learning of this report and in furtherance of its internal compliance program, the CAO instigated an investigation of Mr. Sutton and his wife Christine Reitano and reported the findings to Judge Barbier in a closed door meeting on or about June 20, 2013. Judge Barbier determined, in great part due to BP's urging, that an independent investigation would be undertaken. On July 2, 2013, Judge Barbier appointed former FBI Director Louis J. Freeh as Special Master, pursuant to Federal Rule of Civil Procedure 53, to conduct an expansive investigation into the allegations concerning the two CAO lawyers and to make recommendations to the Court based upon his findings. (*See* Exhibit 2).

On July 17, 2013, the Court ordered Mr. Andry to appear just two days later for hearing on July 19, 2013, to explain the rendering of legal services for claimants before the Deepwater Horizon Court-Supervised Settlement Program. (*See* Exhibit 3). In compliance with this Order, Mr. Andry appeared through counsel. After that hearing, and with no finding of fault against Mr. Andry or any other parties, the Court allowed the Special Master's investigation to continue. (*See* Exhibit 4).

The Special Master then launched a compulsory inquest requiring that Plaintiffs perform various services, such as personally appearing for a sworn interview and producing thousands of pages of

---

[2] During this same period BP's stock price rose dramatically, increasing from approximately $35.00 per share to approximately $50.00 per share.

documents. Plaintiffs were obligated to comply with the Court's demands for services pursuant to numerous codes of professional conduct; including the ABA Model Rules of Professional Conduct related to Candor Toward the Tribunal, the ABA Model Code of Professional Responsibility related to the Disclosure of Information to Authorities, the Rules of Professional Conduct of the Louisiana State Bar Association, and Local Rule 83.2.3 of the Local Civil Rules of the United States District Court for the Eastern District of Louisiana.

The Special Master conducted a 66-day investigation with which Plaintiffs fully cooperated. The retention and assistance of outside counsel was a necessary component to assure adequate compliance with these demands for service. Mr. Andry appeared for his sworn interview represented by counsel on July 30, 2013. Thereafter, the Special Master presented Mr. Andry with a *subpoena duces tecum* that required him to compile and produce thousands of pages of emails and other documents. The Special Master also demanded that similar services be performed by employees of Mr. Andry's legal practice, including the requirement that various staff members appear to give their own sworn statements. Plaintiffs complied with each Court and/or Special Master demand in a timely fashion, and Mr. Andry personally paid for the retention of outside counsel to meet these demands for service.

On September 6, 2013, the Special Master issued a report containing numerous allegations and recommendations, including recommendations focused on Plaintiffs' rendering of legal services for clients before the Deepwater Horizon Court-Supervised Settlement Program. On that same day, in light of the Special Master's report, the Court ordered Plaintiffs to respond to the proposed recommendations of the Special Master and to perform additional services (over and above responding to the Special Master's Report) to maintain compliance with the Court's authority. (*See* Exhibit 5). Understandably, Plaintiffs took serious issue with the allegations and conclusions of the Special Master's report: one that

is based solely on hearsay, innuendo, and inference. Plaintiffs have since been required to illustrate the paucity of admissible evidence by securing affidavits of individuals identified in the Special Master's report, securing the complete email communication strings of such individuals, securing complete exhibits, and retaining experts: all for presentation to the Court in response to the Court's demands for service. Plaintiffs have expended and advanced hundreds of thousands of dollars in legal and expert fees. These obligations to the Court continue, as does the need for continued representation by competent counsel. Plaintiffs still await their "de novo" hearing before Judge Barbier to establish the truth based on admissible evidence. Moreover, Plaintiffs are still incurring substantial attorney's fees associated with their defense, and the "de novo" hearing will add to these costs significantly.

On October 14, 2013, Mr. Andry tendered to Continental written notice of the Court's demand to provide services in response to its investigation. (*See* Exhibit 6). Mr. Andry requested that Continental fulfill the covenants of its insurance policy and defend Plaintiffs, as its insureds, for the demands presented by the Court. By letter dated October 22, 2013, Continental responded to the Mr. Andry's notification by requesting additional information regarding the Court's investigation. (*See* Exhibit 7).

On November 21, 2013, Mr. Andry responded to the defendants' October 22, 2013, letter, and furnished the requested information (including the Special Master's Report and the Court's Order). (See Exhibit 8). Therein, Mr. Andry explained why the Court's demand for services triggered coverage under the Policy, all in fulfillment of conditions precedent of the Policy. On January 7, 2014, Continental categorically denied it owed coverage under the Policy because there had "been no claim made against an Insured." (*See* Exhibit 9, p. 2). Continental erroneously refused to reimburse the legal fees and costs advanced by Mr. Andry in complying with the demands presented by the Court, and refused to provide a defense for the ongoing demand for services from the Court.

Thereafter, Plaintiffs were left with no choice but to file suit to enforce Continental's contractual obligations.

## III.    Argument

### A.    *Partial Summary Judgment Is Appropriate to Determine The Legal Issue Of Coverage*

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.Proc., Rule 56. In a diversity jurisdiction action, as here, the Court must "look to the substantive law" of the state in which the case arose "to ascertain whether genuine issues of material fact are present." *McKee v. Brimmer*, 39 F.3d 94, 96 (5th Cir (Miss.),1994), *citing Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 177-78 (5th Cir.), *reh'g denied*, 920 F.2d 259 (1990).

"Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment." *Cutsinger v. Redfern*, 2008-2607 (La. 5/22/09), 12 So.3d 945, 949 (La. 2009), *citing Bonin v. Westport Insurance Corporation*, 05-0886 (La. 5/17/06), 930 So.2d 906, 910. "An insurance policy is a conventional obligation constituting the law between an insured and the insurer, and an insurance agreement/policy governs the nature of the relationship." La.Civ.Code, art.1983; *Peterson v. Schimek*, 98-1712 (La. 3/2/99), 729 So.2d 1024, 1028. As such, "courts are guided by certain principles of construction and should interpret insurance policies the same way they do other contracts, by using the general rules of contract interpretation as set forth in [the] Civil Code." *Lightfoot v. Hartford Fire Ins. Co.*, 2012 WL 1014985, *3 (E.D. La.,2012) *citing Peterson*, at 1028.

In *Continental Casualty Co. v. Smith*, 243 F. Supp. 2d 576, 579-80 (Judge Vance E.D. La. 2003), this Court set forth the standard to be applied in a matter such as this:

"C. Interpreting the Insurance Policy

...

Under Louisiana law, courts use the general rules of contract interpretation to construe insurance policies. See *Trinity Industries, Inc. v. Insurance Co. of North America*, 916 F.2d 267, 269 (5th Cir.1990) (citing *Breland v. Schilling*, 550 So.2d 609, 610 (La.1989)). The parties' intent, as reflected by the words of the policy, determines the extent of coverage. *Ledbetter v. Concord General Corp.*, 665 So.2d 1166, 1168 (La.1996). **Unless the words have acquired a technical meaning, their intent is to be determined by their general, plain and popular meaning**. La. Civ.Code Ann. art. 2047 (West 2002). **Courts should consider the policy as a whole and interpret the policy to fulfill the reasonable expectations of the parties in light of the customs and usages of the industry**. See *Trinity Industries*, 916 F.2d at 269. **But if the wording of the policy is ambiguous, then it should be construed to effect, not deny, coverage**. See *Yount v. Maisano, 627 So.2d 148, 151 (La.1993).* **In other words, ambiguous provisions must be strictly construed against the insurer, though not to such a degree that the language of the policy is perverted**. *Reynolds v. Select Properties, Ltd., 634 So.2d 1180, 1183 (La.1994); Commercial Union Insurance Company v. Advance Coating Co.*, 351 So.2d 1183, 1185 (La.1977); see also *FDIC v. Barham*, 995 F.2d 600, 603 (5th Cir.1993).

In determining an insurer's duty to defend suits brought against an insured, the Court looks to the four corners of the insurance contract and the four corners of the petition in the underlying litigation. *Vaughn v. Franklin*, 785 So.2d 79, 83-84 (La.Ct.App.2001). **This is the so-called 'eight-corners rule.' The insurer must defend the insured if 'there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded.'** *Complaint of Stone Petroleum Corporation*, 961 F.2d 90, 91 (5th Cir.1992). **In making this determination, the complaint is 'liberally interpreted**.' *Id*." [Emphasis added].

Applying these concepts to the present case, Continental must defend Plaintiffs because coverage is not unambiguously excluded. There is no dispute that Mr. Andry and Andry Law Group, LLC are named insureds of Continental's policy. There is no dispute that, at all times relevant hereto, the named insureds were providing legal services for and on behalf of clients injured by the BP oil spill. There is also no dispute that the Court made demands for service that Plaintiffs were obligated to honor.

Continental presently denied coverage based only upon its inconsistent position that there has "been no claim made against an Insured." However, Continental's policy language, as well as its own

...
...

prior court submissions, substantiate Plaintiffs' assertion that Judge Barbier's (and by caveat the Special Master's) orders to Plaintiffs are demands for services based on the general and plain meaning of those words.

    **B.**    ***Continental's Policy Unambiguously Effects Coverage For A Demand For Service***

Continental's policy establishes its contractual duty:

> "The **Company** shall have the ... duty to defend in the **Insured's** name and on the **Insured's** behalf a **claim** covered by this Policy even if any the allegations of the **claim** are groundless, false or fraudulent."

Continental defines a "claim" covered by this policy as

> "**Claim** means a demand received by the **Insured** for money or services arising out of an act or omission ... in the rendering of or failure to render **legal services**."

Because Continental's Policy defines the term "claim," it is unnecessary for this Court to search for additional meaning for this term. The "Louisiana Supreme Court instructs that '[c]ourts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms.'" *American Intern. Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 262 (5th Cir. 2003), *quoting Cadwallader v. Allstate Ins. Co.,* No. 2002-C-1637 (La.2003) 848 So.2d 577, 580.  When such a term is clear and unequivocal, the policy obligations "must be enforced as written." *Premium Finance Co., Inc. v. Employers Reinsurance Corp.*, 979 F.2d 1091, 1093 (5th Cir.,1992).

Therefore, the sole consideration for the Court to address is:

> Do Judge Barbier's Orders mandating Plaintiffs' participation in the court sponsored Special Master investigation constitute a "demand received by an insured for services arising out of an act or omission in the rendering of or failure to render legal services."

The unequivocal answer to this question is YES; and as such, Continental is obligated to provide Plaintiffs with a defense.

The term "services" was not assigned a technical meaning by Continental in its Policy, so this Court should apply the generally prevailing meaning to that term. The Court can and should look to dictionaries and treatises to ascertain the generally prevailing meaning of the term "services." La. Civ.Code Ann., art. 2047; *American Deposit Ins. Co. v. Myles*, 2000-C-2457 (La.2001) 783 So.2d 1282,1287. *Black's Law Dictionary* defines the term "service," as it relates to contracts, as a "[d]uty or labor to be rendered by one person to another, the former being bound to submit his will to the direction and control of the latter. The act of serving the labor performed or the duties required." "Performance of labor for benefit of another, or at another's command...." *Black's Law Dictionary* 1368 (6th Ed. 1990) (*See* Exhibit 10). Clearly then, the general, plain and popular meaning of the term "services" must include Judge Barbier's compulsion for performance by Plaintiffs as was required by their professional duties and obligations to the Court.

As a regulated profession, attorneys are required to comply with a number of codes of conduct; the failure to do so results in disciplinary sanctions. Plaintiffs were bound to comply with the Court's orders requiring their respective service or potentially face reprisal from both the State Bar and the Court. For example, the Louisiana Supreme Court has specified that the appropriate discipline for an attorney who knowingly disobeyed a federal district court's rulings ... was suspension. *In re Miniclier*, 2011-1859 (La. 11/4/11) 74 So.3d 687. In *Miniclier*, an attorney found to have violated Rule 3.4[3] and Rule 3.5(d)[4] of the Rules of Professional Conduct was disciplined because he "knowingly violated duties owed to the

---

[3] Relative to knowing disobedience of an obligation under the rules of a tribunal.

[4] Relative to engaging in conduct intended to disrupt a tribunal.

legal system." *Id*., at 694.  Similarly, had Mr. Andry ignored the Orders to participate in the investigation, he most likely would have faced discipline because the "baseline sanction for [such] misconduct is suspension." *Id*.

Louisiana law clearly substantiates the reasoning that Judge Barbier's Orders constituted a "demand for services" as contemplated by the clear language of Continental's Policy, thereby triggering Continental's duty to defend.  Because it is undisputed that a claim against Plaintiffs was made, Continental is obligated to provide Plaintiffs with a defense.

### C. *Continental Has Consistently Applied Liberal Interpretations of the Term "Demand For Service"*

Continental has consistently maintained and espoused a liberal interpretation of the term "demand for service" under its policy to avoid coverage in previous litigation.  In such instances, Continental offered such broad interpretations of the terms "claim" and "demand for services" as to include a change of signature names on stock certificates, the production of the client files, a request for the lawyer to refrain from engaging in harmful conduct and/or a request from the client to the firm instructing the attorney to send a complete copy of a file and signed retainer agreement to the client.

For example, in *Simpson & Creasy, P.C v. Continental Casualty Company*, 770 F.Supp.2d 1351 (USDC D.C. Georgia 2011), an insured law firm brought an action against Continental, its professional liability insurer, seeking declaratory relief with respect to a coverage dispute for a policy that contained nearly identical language as the policy herein.  In that case, Continental successfully argued that a termination letter from the client (sent prior to the policy period) constituted a claim.  In particular, Continental's position was that a faxed letter from the firm's client was a demand for service as contemplated by the policy because the letter instructing the attorney to "[s]end my complete file

including my copy of your retainer and the hourly rate I signed. Send my complete file to the address below" constituted a demand for services. The Court agreed with Continental's position, ruling that "these events constituted a demand for services" because the files and documentation requested arose out of legal services, "especially given how broadly the Policy defines it." *Id.*, at 1357.  Additionally, the Court found that a letter on behalf of the former client requesting the changing of signature names of stock shares to include both the former client and the attorney was a "demand for services" that "was sufficient to comprise a 'claim' as that term has been defined in the Policy." *Id.*, at 1358.

Similarly, in *Continental Cas. Co. v. Jewell, Moser, Fletcher & Holleman*, 2005 WL 1925964 (E.D.Ark.,2005), Continental was again successful at eluding coverage on a motion for summary judgment by convincing the court that "the meaning of 'services' as used in the definition of a claim in the [insured's] policy..include[d] a request to the lawyer for the production of client files or to refrain from engaging in harmful conduct." *Id.*, at *2.  Here again, the relevant policy language is nearly identical to the language in Plaintiffs' policy, defining "claim" as "a demand received by the Insured for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render legal services." *Id.*, at *1.

These cases reveal that Continental broadly interprets the term "demand for services" in its policies, and this Court should likewise adopt a broad interpretation.  When Continental's broad interpretation is applied to the facts of the present case, Continental is clearly obligated to provide Plaintiffs a defense.  Plaintiffs submit that if administrative activities resulting from a "demand to send the complete file" constitutes a demand for services,  then clearly court orders invoking professional obligations falls within the ambit of the terms "claim" and "demand for services" as contemplated in Continental's Policy.

Indeed, Plaintiffs contend that in light of the broad interpretation given these terms, Continental should be judicially estopped from advancing materially inconsistent arguments. "Judicial estoppel is an equitable doctrine that 'prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.'" *Hopkins v. Cornerstone America*, 545 F.3d 338, 347 (5th Cir.2008) (*quoting Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir.2003)). "Judicial estoppel applies to protect the integrity of the courts-preventing a litigant from contradicting its previous, inconsistent position when a court has adopted and relied on it." *Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 303 (5th Cir.1998). "Judicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 749,750, 121 S.Ct. 1808, 1815 (U.S.,2001).

The U.S. Fifth Circuit Court of Appeal has identified two bases for judicial estoppel: "(1) it may be applied only where the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept that previous position." *Hall*, supra at 396, quoting *Ahrens v. Perot Systems Corp.*, 205 F.3d 831, 833 (5th Cir.2000). As discussed below, both factors are satisfied in the instant matter, thus the doctrine of judicial estoppel should be applied.

First, Continental has maintained its interpretation that a "demand for services" constitutes a "claim" pursuant to the language of its Policy. In both the *Simpson & Creasy* and *Jewell* cases, Continental posited that a claim was established upon the Insured's receipt of a demand for services arising out of the rendering of legal services. Any position to the contrary here would be disingenuous and should be estopped. *New Hampshire*, 532 U.S. at 749, 121 S.Ct. at 1814; *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996).

Secondly, Continental successfully convinced the courts in both the *Simpson & Creasy* and *Jewell*

matters that a claim was established upon the Insured's receipt of a demand for services arising out of the rendering of legal services. In so doing, Continental was able to avoid coverage to the detriment of its insureds. Again, estoppel is appropriate because the "threat to judicial integrity" is readily apparent: Continental's present position contradicts prior court determinations established by Continental's submissions to those courts. See *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999) (The purpose of the doctrine is "to protect the integrity of the judicial process", by "prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest").

In addition to the two factors primarily relied upon by the Fifth Circuit, the U.S. Supreme Court in *New Hampshire* articulated a third: "whether the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 751, 121 S.Ct. at 1808. Clearly, Plaintiffs are prejudiced by Continental's inconsistent position. Continental has capriciously denied coverage to Plaintiffs based upon an interpretation of its Policy that contradicts its successful position in previous actions. Continental's capricious denial of coverage has forced Plaintiffs to provide their own defense at considerable expense. Allowing Continental to benefit from such a reversal will force Plaintiffs to endure continued hardship, and will have a disastrous effect on Plaintiffs' ability to defend themselves against the factually unsupported and unfounded allegations of the Special Master's Report, despite having a valid insurance contract in place.

### D. *Any Ambiguities In Continental's Policy Must Be Interpreted in Favor Of Coverage*

As referenced above, an insurance policy is a contract between the parties that is construed by employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The words and phrases used in a policy are to be construed using their plain, ordinary, and generally prevailing

meaning; and where they are clear, unambiguous, and expressive of "the intent of the parties, the agreement must be enforced as written." *Ledbetter v. Concord General Corp.*, 95–C–0809 (La.,1996) 665 So.2d 1166, 1169; La. Civ.Code art. 2046. Any ambiguous contractual provision is to be construed against the drafter, or in the insurance context, in favor of coverage to the insured. La. Civ.Code art. 2056, *Reynolds v. Select Properties, Ltd.*, 93-C-1480 (La. 1994) 634 So.2d 1180, 1183, *citing Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co.*, 93-0911, p. 5, (La.1994) 630 So.2d 759, 763-64; *Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc.*, 2006-C-1827 (La.2007) 958 So.2d 634, 638. Thus any ambiguity in the meaning of the terms "demand for service" or "claim" as stated in the Policy would be construed in favor of coverage.

Plaintiffs submit that the aforementioned jurisprudence substantiates that the language of Continental's Policy clearly and unambiguously mandates that Continental provide Plaintiffs with the relief sought. First, Continental cannot dispute that Plaintiffs are named insureds under the policy. Second, Continental cannot dispute that Plaintiffs were engaged in the performance of legal services at all times relevant hereto. Finally, Continental cannot reasonably dispute that the Orders requiring Plaintiffs to participate in the Court's investigation constitute a "claim" under its Policy.

Continental's primary argument, that there has not been a claim made against an insured, confuses the obligation to indemnify with the obligation to defend. Under Louisiana law, "it is well-settled that an insurer's duty to defend is much broader in scope than the insurer's duty to provide coverage." *Elliott v. Continental Cas. Co.*, 2006-CC-1505 (La.,2007) 949 So.2d 1247, 1250, *citing Suire v. Lafayette City-Parish Consol. Government*, 04-1459 (La.4/12/05); 907 So.2d 37, 51-52; *Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 660 (5th Cir.2005). An insured's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. *Meloy v. Conoco,*

*Inc.*, 86-CQ-1466 (La.1987) 504 So.2d 833, 838, *citing Steptore v. Masco Const. Co., Inc.*, 93-2064 (La.8/18/94); 643 So.2d 1213, 1218. Indeed, the insurer is obligated to provide/furnish a defense unless the claim unambiguously excludes coverage. *Id.,* at 1218.

To avoid coverage, Continental must establish that Judge Barbier's Orders requiring service from the Plaintiffs are unambiguously excluded by the Policy. In light of the defendant's prior positions on what constitutes a "demand for services," Continental can only rely upon its erroneous position that "the Policy would not afford defense or indemnity coverage for this matter because there is no possibility of covered damages." (*See* Ex. 9, p. 3). Yet this position is belied both by Louisiana jurisprudence and Continental's own policy language.

Continental's duty to defend arises whenever there is even a possibility of liability under the policy. "Liability is a broad legal term which is usually held to include every kind of legal obligation." *Mayfield v. First Nat. Bank of Chattanooga, Tenn.*, 137 F.2d 1013, 1019 (6th Cir. 1943). In Louisiana, "'liability' is defined as 'the quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment.'" *Hoffman v. Travelers Indem. Co. of America*, --- So.3d ----, 2014 WL 1800079 *3 (La.,2014). Because Continental has not defined the term "liable" in it Policy, it cannot reasonably argue that Plaintiffs' were not obligated to respond to the Court's demand for services. In an industry so heavily regulated as the practice of law, numerous professional regulations and codes of conduct mandate Plaintiffs' compliance to the Court's Orders, with established precedent justifying suspension from the profession for non-compliance. Upon receipt of Judge Barbier's Orders, Plaintiffs became "legally obligated" to respond to the demand for services.

In addition, Continental's refusal to fulfill its duty to defend Plaintiffs "because there is no

possibility of covered damages" is disingenuous. Continental's covenant to defend specifically contemplates that it will defend its insured even if any of the "allegations ... are groundless, false, or fraudulent." It is fully expected that groundless or false allegations will be effectively defeated, without the insured ever needing the indemnification provision of the policy to be satisfied. Yet even with the distinct possibility that there will be no indemnification payments, the insurer must still satisfy its duty to defend the insured.

Plaintiffs submit that the clear and unambiguous language of the policy provides for coverage because a claim was clearly made against Continental's insureds. To the extent, however, that this Court finds there is any ambiguity in the relevant terms of Continental's Policy, then those terms must be strictly construed in favor of providing coverage to the insured Plaintiffs. Such a construction leads to the inexorable conclusion that Judge Barbier's demand for Plaintiffs' services constituted a claim under the Policy that triggered coverage under Continental's policy. Further, because Continental has abrogated its duty to defend Plaintiffs for covered claims, Continental should be ordered to reimburse Plaintiffs for the costs of defense paid thus far and to provide a defense for ongoing claims.

### III.   *Conclusion*

It is well established in Louisiana law that "when contract is not ambiguous or does not lead to absurd consequences, it will be enforced as written and its interpretation is a question of law for a court to decide." *American Deposit*, supra at 1286.

Plaintiffs are entitled to Partial Summary Judgment on their declaratory relief claim to establish Continental Casualty Company's duty to defend claims against Plaintiffs resultant from U.S. District Judge Carl Barbier's demands for services arising out of an act or omission in the rendering of or failure to render legal services in the litigation captioned *In re: Oil Spill by Oil Rig "Deepwater Horizon" in the*

*Gulf of Mexico, on April 20, 2010. MDL No. 2179.* Continental has abrogated its duty to defend Plaintiffs for covered claims, and should be ordered to reimburse Plaintiffs for the costs of defense paid thus far and to provide a defense for ongoing claims.

                                              Respectfully submitted:

                                              **JOANEN LAW FIRM**

                                      By:   */s/ Scott Joanen*
                                          L. Scott Joanen (#21431)
                                          3535 N. Causeway Blvd., Ste. 201
                                          Metairie, Louisiana  70002
                                          Telephone:  (504) 833-3036
                                          Facsimile:    (504) 833-7366
                                          Email:  scott@joanenlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 10th day of June, 2014.

                                                    */s/ Scott Joanen*
                                                    Scott Joanen