UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THE ANDRY LAW GROUP, LLC;** | * | **CIVIL ACTION 14-CV-00600** |
| **JONATHAN ANDRY** | * | |
| **Plaintiffs** | * | **JUDGE: SSV** |
| vs. | * | |
| | * | **MAGISTRATE:  JCW** |
| **CNA FINANCIAL CORPORATION;** | * | |
| **CONTINENTAL CASUALTY COMPANY** | * | |
| **Defendants** | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFFS' STATEMENT OF UNCONTESED FACTS

1. On January 18, 2013, The Andry Law Group, LLC, and Jonathan B. Andry entered into an agreement with Continental to provide professional liability insurance for Jonathan B. Andry, The Andry Law Group, LLC, and its associates.

2. In exchange for valuable consideration, Continental issued Lawyers Professional Liability Policy No. 425308379 to the Andry Law Group, LLC for the policy period of January 1, 2013 to January 1, 2014 ("the Policy").

3. The Policy has a $3 million per claim and aggregate limit of liability, with a $10,000 per claim deductible, inclusive of claims expenses.

4. Pursuant to its policy, Continental obligated itself to provide Plaintiffs with a defense for all claims or "demands for service" arising out of an act or omission in the rendering of or failure to render legal services lodged against Plaintiffs.

5. The Policy's Insuring Agreement included the following covenant:

    "The **Company** shall have the right and duty to defend in the **Insured's** name and on the **Insured'**s behalf a **claim** covered by this Policy even if any of the allegations of the **claim** are groundless, false or fraudulent."

6. Continental defined the term *claim* in it's Policy as follows:

> "**Claim** means a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render **legal services**."

7. Jonathan Andry and the Andry Law Group, LLC ("ALG") are named insureds under the Policy.

8. During the Policy period, Plaintiffs engaged in the representation of individuals and businesses harmed by the BP Deepwater Horizon explosion and oil spill that occurred on or about April 20, 2010. *In re: Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010.* MDL No. 2179.

9. Plaintiffs representation of *Oil Spill* clients required the presentation of claims for compensation pursuant to the Deepwater Horizon Economic and Property Settlement Agreement As Amended on May 2, 2012 (the "Settlement Agreement").

10. The Settlement Agreement established the Deepwater Horizon Court-Supervised Settlement Program (the "CSSP"), administered by the Claims Administrator Patrick Juneau, who directed the settlement process through the Claims Administrator's Office (the "CAO").

11. U.S. District Judge Carl Barbier retained jurisdiction of the entire Deepwater Horizon Economic and Property Settlement process, with the Claims Administrator's Office regularly reporting to the Court.

12. One of the Claims Administrator's ("CA") paramount functions was to interpret portions of the Settlement Agreement for the parties.

13. From the outset, the primary defendant BP Exploration & Production, Inc. ("BP") objected to many of the CA's interpretations of the Settlement Agreement, and sought intervention from Judge Barbier instructing a different interpretation of the payment provisions of the Settlement Agreement.

14. Judge Barbier's denial of BP's requests resulted in numerous appeals to the U.S. Court of Appeal for the Fifth Circuit, and BP's appeal efforts continue as of the date of filing of this motion.

15. BP established a "hotline" to allow the reporting of suspected transgressions in the administration of the settlement.

16. On or about May 28, 2013, BP claimed it received a tip from a "confidential informant" that Lionel Sutton was receiving improper attorney referral fee payments for BP claims while he was also employed with the Claims Administrator's Office.

17. Upon learning of this report and in furtherance of its internal compliance program, the CAO instigated an investigation of Mr. Sutton and his wife Christine Reitano and reported the findings to Judge Barbier in a closed door meeting on or about June 20, 2013.

18. Judge Barbier determined, in great part due to BP's urging, that an independent investigation would be undertaken.

19. On July 2, 2013, Judge Barbier appointed former FBI Director Louis J. Freeh as Special Master, pursuant to Federal Rule of Civil Procedure 53, to conduct an expansive investigation into the allegations concerning the two CAO lawyers and to make recommendations to the Court based upon his findings.

20. On July 17, 2013, the Court ordered Mr. Andry to appear just two days later for hearing on July 19, 2013, to explain the rendering of legal services for claimants before the Deepwater Horizon Court-Supervised Settlement Program.

21. In compliance with the July 17, 2013 Order, Mr. Andry appeared for hearing on July 19, 2013 through counsel.

22. After that hearing, and with no finding of fault against Mr. Andry or any other parties, the Court allowed the Special Master's investigation to continue.

23. The Special Master thereafter launched a compulsory inquest requiring that Plaintiffs perform various services, such as personally appearing for a sworn interview and producing thousands of pages of documents.

24. Plaintiffs were obligated to comply with the Court's demands for services pursuant to numerous codes of professional conduct; including the ABA Model Rules of Professional Conduct related to Candor Toward the Tribunal, the ABA Model Code of Professional Responsibility related to the Disclosure of Information to Authorities, the Rules of Professional Conduct of the Louisiana State Bar Association, and Local Rule 83.2.3 of the Local Civil Rules of the United States District Court for the Eastern District of Louisiana.

25. The Special Master conducted a 66-day investigation with which Plaintiffs fully cooperated.

26. The retention and assistance of outside counsel was a necessary component to assure adequate compliance with these demands for service.

27. Mr. Andry appeared for his sworn interview represented by counsel on July 30, 2013.

28. The Special Master presented Mr. Andry with a subpoena duces tecum that required him to compile and produce thousands of pages of emails and other documents.

29. The Special Master demanded that services be performed by employees of Mr. Andry's legal practice, including the requirement that various staff members appear to give their own sworn statements.

30. Plaintiffs complied with each Court and/or Special Master demand in a timely fashion, and Mr. Andry personally paid for the retention of outside counsel to meet these demands for service.

31. On September 6, 2013, the Special Master issued a report containing numerous allegations and recommendations, including recommendations focused on Plaintiffs' rendering of legal services for clients before the Deepwater Horizon Court-Supervised Settlement Program.

32. On September 6, 2013, the Court ordered Plaintiffs to respond to the proposed recommendations of the Special Master.

33. The Court's Order required Plaintiffs to perform additional services (over and above responding to the Special Master's Report) to maintain compliance with the Court's authority.

34. Plaintiffs have secured affidavits of individuals identified in the Special Master's report, secured the complete email communication strings of such individuals, secured complete exhibits, and retaining experts: all for presentation to the Court in response to the Court's demands for service.

35. Plaintiffs have expended and advanced hundreds of thousands of dollars in legal and expert fees.

36. Plaintiffs are still incurring substantial attorney's fees associated with their defense, and a "de novo" hearing will add to these costs significantly.

37. On October 14, 2013, Mr. Andry tendered to Continental written notice of the Court's demand to provide services in response to its investigation.

38. Mr. Andry requested that Continental fulfill the covenants of its insurance policy and defend Plaintiffs, as its insureds, for the demands presented by the Court.

39. By letter dated October 22, 2013, Continental responded to the Mr. Andry's notification by seeking additional information about the Court's investigation.

40. On November 21, 2013, Mr. Andry responded to the defendants' October 22, 2013, letter, and furnished the requested information (including the Special Master's Report and the Court's Order).

41. In the November 21, 2013 letter, Mr. Andry explained why the Court's demand for services triggered coverage under the Policy, all in fulfillment of conditions precedent of the Policy.

42. By letter dated January 7, 2014, Continental categorically denied it owed coverage under the Policy because there had "been no claim made against an Insured."

43. Continental has not defined the term "service" in its Policy.

44. *Black's Law Dictionary* defines the term "service," as it relates to contracts, as a "[d]uty or labor to be rendered by one person to another, the former being bound to submit his will to the direction and control of the latter. The act of serving the labor performed or the duties required." "Performance of labor for benefit of another, or at another's command...." *Black's Law Dictionary* 1368 (6th Ed. 1990).

45. Continental has not defined the term "liable" in its Policy

46. In Louisiana, "'liability' is defined as 'the quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment.'" *Hoffman v. Travelers Indem. Co. of America*, --- So.3d ----, 2014 WL 1800079 *3 (La.,2014).

.

                Respectfully submitted:

                **JOANEN LAW FIRM**

                By: /s/ Scott Joanen
                L. Scott Joanen (#21431)
                3535 N. Causeway Blvd., Ste. 201
                Metairie, Louisiana 70002
                Telephone: (504) 833-3036
                Facsimile: (504) 833-7366
                Email: scott@joanenlaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 10th day of June, 2014.

                                                                            */s/ Scott Joanen*
                                                                             Scott Joanen