UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>This Document Relates to:<br><br>No. 12-968 | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

CLASS COUNSEL'S MEMORANDUM
IN RESPONSE TO THE COURT'S ORDER OF JUNE 26, 2014
REGARDING CLAIMS FOR CHRONIC SPECIFIED PHYSICAL CONDITIONS

Class Counsel, on behalf of the Medical Benefits Settlement Class, respectfully submit the following memorandum in response to the Court's Order of June 26, 2014 [Doc 13069]:

**MAY IT PLEASE THE COURT:**

The fundamental question presented for the Court's interpretation is whether a claim for a Chronic Specified Physical Condition (SPC) which first manifested during the initial 24-72 hours after exposure must be treated as a claim for a Later-Manifested Physical Condition (LMPC) where the medical tests or other evidentiary support for the chronic nature of the condition was not obtained until after April 16, 2012.

Relying on Section VIII.B.1 of the Settlement Agreement, the Claims Administrator determined that such claims must be treated as Later-Manifested Physical Conditions.[1,2] That provision, which is contained within the body of the Medical Benefits Class Settlement

---

[1] *See* GARRETSON MEMO (May 13, 2014) [Doc 12862], p.2.

[2] Class Counsel note that, (unlike the Economic & Property Damages Settlement Agreement), the Medical Benefits Settlement does not vest the Claims Administrator with broad authority to interpret and apply the agreement, but rather, vests the primary authority to interpret and implement the Agreement with the Court. *See* MEDICAL SETTLEMENT, Section XXVII; (*see also* Section XVIII.A.13).

1

Agreement, was intended to ensure that a Medical Class Member who ultimately developed a Later-Manifested Physical Condition that was arguably covered by the LHWCA or a State Workers Compensation scheme would be able to forego pursuit of a Back-End Litigation Option (BELO) lawsuit in order to make a claim for workers compensation benefits instead.

It is, of course, Class Counsel's position that this election has absolutely nothing to do with Chronic SPCs, but arises only in the context of a Classmember seeking to assert BELO actions with respect to Later-Manifested Physical Conditions.

Nevertheless, as interpreted by the Claims Administrator, a conflict arises between the terms of the Settlement Agreement and the language that appears in the Specified Physical Condition Matrix (Exhibit 8).

Specifically, Section II and Table III of the Specified Physical Condition Matrix (Exhibit 8) list specific conditions which all are required to first *manifest* within 24-72 hours of exposure.[3] At the same time, a Later-Manifested Physical Condition is defined within the body of the Medical Benefits Settlement Agreement as "a physical condition that is first diagnosed in a Medical Benefits Settlement Class Member after April 16, 2012."[4] The Claims Administrator takes from this that a "a class member may simultaneously fall within the definition of both if his chronic physical condition first manifested itself before April 16, 2012 but was only first diagnosed after that date."[5] This was never intended.[6] A condition that *manifested* within 24-72

---

[3] Nowhere in Exhibit 8 does the word "*diagnosis*" appear. Rather, Exhibit 8 speaks in terms of Chronic Conditions that are "established", "documented" or "supported" by medical tests or other evidence submitted by the Class Member to the Medical Benefits Claims Administrator.

[4] *See* MEDICAL SETTLEMENT AGREEMENT, Section II.VV.

[5] *See* GARRETSON MEMO (May 13, 2014) [Doc 12862], p.2.

[6] BP's position, which was adopted by the Claims Administrator, ignores the words "Later" and "Manifested" as used in the term Later-Manifested Physical Condition – which appears in the Settlement Agreement approximately 48 times. Rather than writing "Later-Manifested" out of the Settlement Agreement, the LMPC Definition was intended to refer to only those medical conditions (like, for example, cancers) that develop or manifest after the initial 24-72 hour time-frames set forth in the Specified Physical Condition Matrix.

hours of exposure was to be treated as a Specified Physical Condition – either Acute or Chronic. The Claims Administrator's interpretation to the contrary sets up a conflict, in this regard, between the definition of LMPC that appears in the body of the Agreement and the definition of a Specified Physical Condition which appears in Exhibit 8.[7]  In the event of such a conflict, the terms of the Specified Physical Condition Matrix (Exhibit 8) prevail.

> Specifically, Section XXX.D of the Medical Settlement Agreement instructs that:
>
> > With the exception of Exhibits 8, 9, and 12, any inconsistency between this MEDICAL SETTLEMENT AGREEMENT and any attachments, exhibits, or appendices hereto shall be resolved in favor of this MEDICAL SETTLEMENT AGREEMENT.

Clearly, then, any inconsistency between the Medical Settlement Agreement and Exhibit 8 shall be resolved in favor of Exhibit 8 (the Specified Physical Condition Matrix).

That the distinction between a Chronic SPC and a Later-Manifested Physical Condition would be premised on the date of *manifestation,* as opposed to *diagnosis,*[8] is further supported by the understanding of BP's attorneys and experts during the settlement approval process.  For example:

- BP Counsel, in BP's Brief in Support of Final Approval, refer to the "Preservation of Class Members' rights to sue BP for compensatory damages for physical conditions that *manifest* at a later date."[9]

- BP and Class Counsel's Joint Expert, Professor Coffee, understood that: "The purpose of BELO is to allow class members with *subsequently manifested,*

---

[7] BP's interpretation also conflicts with the SPC definition contained within the body of the Agreement, at Section II.QQQQ ("first manifested or was exacerbated within the timeframes set forth in Exhibit 8").

[8] Again, Exhibit 8 does not utilize the word "*diagnosis*".  Rather, the SPC Matrix speaks in terms of Chronic Conditions that are "established", "documented" or "supported".

[9] BP BRIEF IN SUPPORT OF FINAL APPROVAL [Doc 7112-1] p.15 (emphasis supplied).  *See also, e.g.,* BP BRIEF IN SUPPORT OF FINAL APPROVAL [Doc 7112-1] p.29 ("The [Specified Physical Condition] Matrix does *not* include potentially latent conditions, which are discussed in greater detail below in connection with the Back-End Litigation Option") (emphasis supplied); BP BRIEF IN SUPPORT OF FINAL APPROVAL [Doc 7112-1] p.62 ("payment to a Class Member with a qualifying Specified Physical Condition in no way affects the claim of, or the possible compensation available to, a Class Member who claims a Later-Manifested Physical Condition in the future").

- *more severe* injuries to pursue compensation for those injuries or conditions in mediation or individual litigation."[10]

- In her declaration of August 12, 2012, BP's Expert Dr. Herzstein confirmed that the conditions identified in Exhibit 8, Section III, to the Medical Settlement Agreement are Chronic Specified Physical Conditions.[11] Moreover, in discussing Later Manifested Physical Conditions, Dr. Herzstein repeatedly (and correctly) refers to them as "latent diseases, such as *cancers*"[12] and acknowledges that:

    - "there is no medical basis to assert that a latent disease allegedly caused by contact with oil and/or dispersants *could develop* before April 16, 2012"[13]

    - "To the extent latent diseases, such as cancers, could be caused by contact with oil and/or dispersants in sufficient amounts and for sufficient duration, such diseases *would not be expected to manifest in class members for years* after their exposure to these substances."[14]

- BP Counsel, in the parties' Joint Proposed Findings, asked the Court to conclude that: "BP presented evidence that, to the extent that latent diseases could be caused by exposure to oil and/or dispersants at sufficient doses, such diseases would not be expected to *manifest* in Class Members for years after exposure. (Herzstein Decl. ¶ 16.) Accordingly, to the extent that Class Members *manifest* a latent condition that they attribute to their exposure to oil and/or dispersants, the Back-End Litigation Option, not the Matrix, provides an appropriate mechanism for Class Members to seek compensation for such conditions."[15]

This was also the understanding of Class Counsel's Expert, Dr. Harbut, who told the Court and the Class prior to approval that "if a class-member *develops* a *later-manifesting*

---

[10] COFFEE DECLARATION [Doc 7113-2] p.36 (emphasis supplied). Professor Coffee also understood that "class members who *later develop more serious injuries* that they attribute to the Deepwater Horizon Incident are provided with a 'Back-End Litigation Option for Later-Manifested Physical Conditions' ('BELO') under Section VIII of the Medical Benefits Settlement Agreement." COFFEE DECLARATION [Doc 7113-2] p.12.

[11] *See* DECLARATION OF DR. JESSICA HERZSTEIN [Rec. Doc. 7112-7] (Aug. 12, 2012) at ¶¶13-15.

[12] *See* DECLARATION OF DR. JESSICA HERZSTEIN [Rec. Doc. 7112-7] (Aug. 12, 2012) at ¶¶26-28 (emphasis supplied).

[13] DECLARATION OF DR. JESSICA HERZSTEIN [Rec. Doc. 7112-7] (Aug. 12, 2012) at ¶26 (emphasis supplied).

[14] DECLARATION OF DR. JESSICA HERZSTEIN [Rec. Doc. 7112-7] (Aug. 12, 2012) at ¶28 (emphasis supplied).

[15] JOINT PROPOSED FINDINGS [Doc 7946] pp.128-129 (emphasis supplied).

medical condition, he or she may seek compensation from BP through a back-end litigation option."[16]

Indeed, this appears to have been the understanding of this Honorable Court, who noted in the Preliminary Approval Order that: "The 'Back-End Litigation Option' provides a mediation/litigation process for class members that *manifest* a physical condition in the future claimed to be due to exposure to oil and/or chemical dispersant."[17]

Under the Settlement Agreement, a Specified Physical Condition is "identified" in Exhibit 8; arose out of the Class Member's exposure to *Deepwater Horizon* related substances; and "*first manifested* or was exacerbated within the timeframes in Exhibit 8."[18]  The Agreement directs the Claims Administrator to:

> Provide compensation to those Medical Benefits Settlement Class Members who have or have had one or more of the Specified Physical Conditions and who have been determined by the Claims Administrator to qualify for compensation pursuant to the proof requirements and other criteria set forth in Section XXI.C-F and Exhibit 8.[19]

To deny such compensation to qualified Class Members who meet the definition and requirements for a Chronic Specified Physical Condition would not only be inconsistent with Exhibit 8, but would effectively read the term "Later-Manifested" out of the Settlement Agreement, and run contrary to both the Agreement's definition of "Specified Physical Condition" (Section II.QQQQ) and Section IV.A.

---

[16] HARBUT DECLARATION [Doc 7116-1] p.15 (emphasis supplied).

[17] PRELIMINARY APPROVAL ORDER [Doc 6419] p.7 (emphasis supplied).

[18] MEDICAL SETTLEMENT AGREEMENT, Section II.QQQQ (emphasis supplied).

[19] MEDICAL SETTLEMENT AGREEMENT, Section IV.A.

**Conclusion**

For the above and foregoing reasons, and for the reasons stated in Class Counsel's original Memorandum to Judge Shushan dated March 28, 2014,[20] and the Motion to Strike,[21] Class Counsel's Motion to Strike the April 14, 2014 Declaration of Dr. Herzstein should be granted, and the Court should interpret the Medical Benefits Class Settlement Agreement to afford compensation to Classmembers suffering from Chronic Specified Physical Conditions, even where the evidence, proof or other support for such chronic condition was not obtained until after the Settlement Agreement was executed and made available to the public in April of 2012.

This 4th day of July, 2014.

Respectfully submitted,

| | |
|---|---|
| /s/ Stephen J. Herman | /s/ James Parkerson Roy |
| Stephen J. Herman, La. Bar No. 23129 | James Parkerson Roy, La. Bar No. 1511 |
| Herman Herman & Katz LLC | Domengeaux Wright Roy & Edwards LLC |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, LA 70113 | Lafayette, LA 70501 |
| Tel: (504) 581-4892 | Tel: (337) 233-3033 |
| Fax: (504) 569-6024 | Fax: (337) 233-2796 |
| E-Mail: sherman@hhklawfirm.com | E-Mail: jimr@wrightroy.com |
| *Co-Lead Class Counsel* | *Co-Lead Class Counsel* |

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the above and foregoing Memorandum will be filed into the record electronically *via* the Court's ECF system and served on All Counsel *via* the Lexis-Nexis File & Serve system in accordance with Pre-Trial Order No. 12, this 4th day of July, 2014.

/s/ Stephen J. Herman and James Parkerson Roy

---

[20] Doc. 12862-1.

[21] Doc. 12909-2.