

**U.S. Department of Justice**

Environment and Natural Resources Division

90-5-1-1-10026

*Environmental Enforcement Section*  *Telephone (202) 305-0371*
*P.O. Box 7611*  *Facsimile (202) 514-0097*
*Ben Franklin Station*  *dan.smith2@usdoj.gov*
*Washington, DC 20044-7611*

July 7, 2014

BY ELECTRONIC MAIL

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

    Re:    MDL 2179: Claims of Privilege Regarding BP Fact Witness Steven Bray

Dear Judge Sushan:

    The United States requests a ruling compelling BP to produce the specified documents on the first and second installments of its privilege log for Steven Bray. After reviewing the first installment of 59 entries and the second installment of 103 entries on the Bray privilege log provided on July 2nd and 3rd, 2014, the United States challenges, and asks the Court to review *in camera*, the entries as identified on the privilege log spreadsheets submitted to the Court on July 3rd and 7th, 2014.

    Generally, the United States has asserted the following objections and challenges: (1) facts learned by Mr. Bray, even the course of legal representation, are not rendered privileged by virtue of being provided to counsel; (2) many of the descriptions do not provide enough detail to tell whether the disclosure is privileged legal advice or non-privileged business advice; and (3) to the extent any of the factual information available to Mr. Bray regarding corporate structure and governance is privileged, BP has waived the privilege. The United States does not challenge BP's claims of privilege over factual information about stock exchanges and regulatory filings because BP has not put those facts at issue in the litigation with Mr. Bray's expected testimony, as it has with corporate structure and governance. However, because BP is withholding factual information and documents on those other topics, it should be precluded from eliciting testimony from Mr. Bray on those subjects at deposition or at trial.

**Background**

    Mr. Bray's employment history with BP includes roles in corporate governance not only for BPXP, but also for BP America and BP p.l.c. According to Kirkland & Ellis, LLP's May 22 letter to the Court, Mr. Bray has served as Vice President and Secretary of BPXP from 2009 to the present and has broad knowledge of the corporate governance issues on which the United States seeks affirmative discovery. In fact, according to BPXP's Appointment History, Mr. Bray served as director of BPXP from November 1, 2009 until January 14, 2011. According to his resume posted online, Mr. Bray currently serves as special counsel and secretary to the BP p.l.c.

Board, Gulf of Mexico Committee, and he served prior to that time as vice president, senior attorney and corporate secretary at BP America.

Despite the Court's May 29, 2014 order encouraging BP to determine whether another person can testify to corporate structure and governance issues without presenting the attorney-client privilege issues likely associated with the production of documents and his deposition, BP has chosen to proceed with Mr. Bray. BP suggested, in seeking to add Mr. Bray in lieu of Ms. Pennington and Ms. Robertson, that Mr. Bray, a lawyer, has "superior knowledge" to either of those two individuals on corporate governance matters. After maintaining that Ms. Pennington and Ms. Robertson should be precluded from deposition as cumulative witnesses, BP added Mr. Bray to its may-call list on the same cumulative subject area. BP acknowledged in its May 29 letter that "some issues of privilege may arise, depending on the questions asked," and recently estimated that it will assert privilege claims over approximately 800 documents. Although the final number of privilege assertions is likely to be much less than 800, BP likely will assert privilege claims for well over 200 documents.

1. **BP Has Not Made Valid Claims of Privilege over the Challenged Documents**

The attorney-client privilege protects communications made in confidence to an attorney by a client for the purpose of obtaining legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). The communication is privileged, but the facts themselves are not. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney"); *see also Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1007 (5th Cir. 1992) ("the attorney-client privilege protects only evidence of client communications; it does not protect against discovery of underlying facts from their source merely because those facts have been communicated to an attorney") (citing *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982)); *City of Philadelphia, Pa. v. Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962) ("The protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?,' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.") BP cannot claim materials as privileged merely because they were conveyed to an attorney or appear in an attorney's files. 8 Fed. Prac. & Proc. Civ. § 2017 (3d ed.) ("A document, which would be subject to discovery in the client's possession, does not become privileged because the client sends it to the attorney.")

2. **BP's Privilege Descriptions Do Not Provide Adequate Information**

Where the privilege is asserted over legal advice, and not factual information, BP must clearly demonstrate that it is asserting the privilege over actual legal advice, not business advice. Where a company employee is an in-house attorney, but also has responsibilities outside the lawyer's sphere, that employee's advice is protected only upon a "clear showing" that the employee "gave it in a professional legal capacity." *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984); *see also Valente v. Pepsico, Inc.*, 68 F.R.D. 361, 367 (D. Del. 1975) (where inside counsel is engaged in giving business advice or mere technical information, no privilege applies). BP's

privilege log, with its *ipse dixit* assertions that communications were "for the purpose of seeking legal advice" provide no information, much less a clear showing, that Mr. Bray, who sometimes served as an officer or director, was providing legal advice as counsel, and not offering business advice.

3. **Any Claims of Attorney-Client Privilege Over Factual Information Provided to Mr. Bray About Corporate Structure and Governance Have Been Waived**

Even if BP could claim privilege over the factual information known to Mr. Bray or in his files, the way in which BP has injected the issue into the litigation has resulted in a waiver of the privilege over factual information on the subject matter of corporate structure and governance. As detailed in earlier briefs, BP argues that the Court should focus on BPXP when determining the economic impact of the penalty, and that raises issues about the relationship between BP p.l.c. and its subsidiaries. On its privilege logs, BP has withheld "information and documents" about financial reserves, corporate restructuring, finance agreements, and other subjects that may be relevant to the ability of BPXP to reduce the economic impact of a penalty. The privilege log asserts that such information and documents were communicated to Mr. Bray in order to obtain legal advice. In ordinary circumstances, that might be acceptable to the United States. Here, however, the United States may not be able obtain the same factual information from individuals who obtained it outside the attorney-client relationship because BP has objected to "cumulative" discovery, limited the United States' access to other witnesses and their files, while representing that Mr. Bray would be able to answer questions based on his superior knowledge of the issues. This strategy has committed BP to a course of action that requires the disclosure of facts known to Mr. Bray, regardless of the capacity in which he learned those facts. *See Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, 2014 WL 29451, at *6 (M.D. La. Jan. 3, 2014) ("Ultimately, the question is whether the privilege holder has committed itself to a course of action that will require the disclosure of a privileged communication.").

Courts have found the attorney-client privilege waived when allowing the information to be withheld would be manifestly unfair to the opposing party. *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) ("The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party"). BP should not be permitted to control which specific aspects of an issue are protected by disclosing certain communications that support its position on an issue while simultaneously concealing communications that do not. *In re Shell Oil Refinery*, 812 F. Supp. 658, 663 (E.D. La. 1993) ("Lawyers and clients may not abuse the privilege by selectively disclosing privileged communications for their own benefit and invoke the privilege as to other related communications to the detriment of the other litigant"). In essence, "courts need not allow a claim of privilege when the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege." *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982). When the holder of the privilege makes its confidential communications a material issue in the litigation, "fairness demands treating the defense [or claim] as a waiver of the privilege." *Forever Green*, 2014 WL 29451, at *6 (citing Conkling, 883 F.2d at 434); *see also Asset Funding Group, LLC v. Adams & Reese, LLP*, No. 07-2965, 2008 WL 4186884, at *4 (E.D.La. Sept. 9, 2008) ("Waiver includes conduct which would make it unfair for the client to insist on the privilege thereafter."); *Nguyen v. Excel Corp.*, 197 F.3d 200,

207 n.18 (5th Cir. 1999) (recognizing "a client's inability to, at once, employ the privilege as both a sword and a shield."); *In re Grand Jury Proceedings*, 219 F.3d 175, 188 (2d Cir. 2000) ("[T]he animating principle behind waiver is fairness to the parties."); *Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18, 24 (9th Cir. 1981) (stating the proposition that fairness dictates that a holder of the attorney-client privilege cannot disclose as much as it wants and then withhold the remainder).

BP has broadly waived its claims of privilege with respect to factual information known to Mr. Bray with respect to corporate structure and governance. Where the attorney-client privilege is waived *by a disclosure*, the waiver extends to undisclosed communications or information only if: (i) the waiver is intentional; (ii) the disclosed and undisclosed information concerns the same subject matter; and (iii) they ought in fairness to be considered together. FED. R. EVID. 502(a) ("subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner"). However, Rule 502 governs only certain waivers by disclosure. As written in the Advisory Committee Note (Nov. 28, 2007):

> Other common-law waiver doctrines may result in a finding of waiver even where there is no disclosure of privileged information or work product." *See, e.g., Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999) (reliance on an advice of counsel defense waives the privilege with respect to attorney-client communications pertinent to that defense); *Ryers v. Burleson*, 100 F.R.D. 436 (D.D.C. 1983) (allegation of lawyer malpractice constituted a waiver of confidential communications under the circumstances).

BP's injection of issues about corporate structure and governance, and its assurances to the Court that Mr. Bray is an adequate source of discovery for the United States, have waived any privilege that might apply to factual information without regard to any particular disclosure.

The extent of BP's waiver should reach all factual information about corporate governance and structure known to Mr. Bray, regardless of the source. Normally, "there is no bright line rule for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005) (noting that case law is of limited assistance in determining the scope of a waiver given, again, the fact-intensive nature of the issues presented). However, a defendant's initial overreach in asserting its privilege may also be a factor in determining the scope of the waiver. Where a waiver "is generated by the injection of an *entire defense*, the magnitude of the waiver must be *proportionately larger*… the waiver must pertain to all documents bearing upon the subject matter of the defense. Otherwise, the party interposing the defense is free to divulge only those documents that are most favorable to his defense; this is precisely the inequitable result that the waiver doctrine seeks to avoid." *United States v. Exxon Corp.*, 94 F.R.D. 246, 249 (D. D.C. 1981) (emphasis added). Therefore, if BP seeks to put its in-house counsel on the stand to inject a full-throated defense of its business practices within the civil penalty context, the resulting waiver should also be sufficiently broad in scope to prevent prejudice to the plaintiff. *See also In re Grand Jury Proceedings*, 219 F.3d at 188 ("as the animating principle behind waiver is fairness to the parties, if the court finds that the privilege

was waived, then the waiver should be tailored to remedy the prejudice to the government.") Here, that requires access to all factual information about corporate structure and governance.

The United States seeks disclosure of the withheld documents to the extent the document contain factual information. Where legal advice and factual information is combined, BP should be required to redact only the legal advice and produce the remainder. In addition, the first and second installments of the privilege log include a large number of entries related to matters beyond corporate structure and governance. For instance, the vast majority of entries on the second installment allegedly relate to stock exchange announcements (6, 7, 9-11, 13-14, 18-21, 24, 29, 31-34, 36-42, 44, 47, 49, 52-56, 60-62, 64-68, 70-72, 74, 76-77, 80, 82, 85-86, 88, 90, 97, 99, 102-103) and regulatory filings (8, 15-17, 22, 25, 27, 30, 35, 43, 45-46, 48, 50, 57, 63, 73, 75, 78, 87, 89, 95, 98, 100-101). As long as Mr. Bray does not testify as to those matters, there will be no prejudice to the United States. However, if BP were to elicit testimony on those topics, it would waive the privilege and render the discovery provided by BP inadequate, making it difficult to proceed with the current trial schedule.[1] This problem would be avoided if Mr. Bray were precluded from giving admissible testimony on those topics.

                                    Respectfully Submitted,

                                    /s/ Daniel S. Smith

                                    Daniel S. Smith

cc:    Mark Nomellini
        Peter Bartoszek
        Robert C. Brock
        J. Andrew Langan
        Hariklia Karis
        Ky Kirby
        Jim Dragna
        Thomas Lotterman
        Steve O'Rourke
        Sarah Himmelhoch

---

[1] As stated in Wright and Miller, most cases hold "that discovery is permissible of privileged matter to the extent it is contemplated that the privilege will be waived at trial." 8 Fed. Prac. & Proc. Civ. § 2016.6 (3d ed.)