**M E M O R A N D U M**

TO: The Honorable Sally Shushan

FROM: BP Counsel

DATE: April 29, 2014

RE: *In re Deepwater Horizon*, MDL No. 2179
Treatment of Conditions First Diagnosed After April 16, 2012

I. **The Court Should Not Consider the Downs Law Group's Untimely and Improper Submission.**

On April 23, 2014, after the Court had expressly instructed the parties that there was to be no further briefing on Class Counsel's Memorandum addressing the definition of a "Later-Manifested Physical Condition" ("LMPC") under the Medical Settlement Agreement ("MSA"), the Downs Law Group ("Downs") submitted another memorandum purportedly addressing the issue raised by Class Counsel.[1] BP respectfully requests that the Court not consider this improper and untimely submission. BP should not be required to respond repeatedly, in piecemeal fashion, to such submissions by a plaintiffs' firm whose interests are represented in Class Counsel's prior submission.

In addition, even if the Court considers Downs' memorandum, it is wholly without merit and simply misses the mark of the contract interpretation issue raised by Class Counsel. The issue is not, as Downs contends, whether individual Class Members can receive compensation under the MSA. Rather, the issue is which of the agreed upon compensation procedures is appropriate for conditions that are first diagnosed after April 16, 2012. On this point, the MSA is clear and unambiguous: a "physical condition that is first diagnosed in a Medical Benefits Settlement Class Member after April 16, 2012," is an LMPC, and the claimant's remedy is available exclusively through the Back-End Litigation Option ("BELO") or workers' compensation statutes.[2] Downs fails even to note this plain language, and its argument regarding individual claims is an improper attempt to have claims decided by the Court *en masse* rather than individually by the Claims Administrator, as the MSA requires.

II. **The Plain Language of the MSA Defines All Conditions First Diagnosed After April 16, 2012, As LMPCs.**

The fundamental rule of contract interpretation is that a contract must be read "as a whole," and its words must be "given their plain meaning." *Becker v. Tidewater, Inc.*, 586 F.3d 358, 369 (5th Cir. 2009) (internal quotation marks omitted). It is thus telling that Downs, while arguing how it would like conditions first diagnosed after April 16, 2012, to be treated, never once quotes or discusses the MSA's definition of an LMPC, which squarely addresses that very issue. The MSA defines "Later-Manifested Physical Condition" as "a physical condition that is

---

[1] Memorandum from the Downs Law Group, April 23, 2014 ("Downs Mem.").

[2] MSA § II.VV.

first diagnosed in a Medical Benefits Settlement Class Member after April 16, 2012," and that is alleged to have resulted from prior exposure.[3] The MSA specifically provides that a Class Member with an LMPC has two available means for seeking relief: (1) file suit under workers' compensation law or the Longshore and Harbor Workers' Compensation Act; or (2) seek compensation from BP pursuant to the BELO.[4] The Class Member with an LMPC "may not seek compensation from any Released Party *in any other manner*"—which includes by seeking compensation under the Specified Physical Condition ("SPC") Matrix.[5] Downs ignores these provisions, which unambiguously provide that any and all conditions diagnosed after April 16, 2012, are LMPCs. Although Downs urges a different result, it conspicuously chooses not to address this plain language.[6]

### III. Downs Incorrectly Asserts, Contrary to the Plain Language and Structure of the SPC Matrix, that a Chronic SPC Claim Requires No Proof of Causation.

Downs tips its hand and reveals the true motives for trying to shoehorn as many claims as possible into the SPC category: "The big difference between SPC and BELO *is that causation would have to be proved* [in the BELO process]. . . . This view allows payments to cleanup workers for injuries they sustained *without requiring them to prove causation*."[7] Downs' contention, however, is sorely misplaced for several reasons.

First, the Claims Administrator cannot ignore the plain language of the MSA, as agreed by the parties and approved by the Court, despite Downs' efforts to rewrite that agreement by redefining certain conditions as SPCs rather than LMPCs. As the Court recognized in approving the MSA, the carefully structured timing provisions of the SPC Matrix are designed to establish a causal link between alleged exposure and development of the condition.[8] To modify these timing provisions by allowing conditions that were first diagnosed years after manifestation now to be treated as SPCs would be inconsistent with the purpose and structure of the SPC Matrix and constitute a material modification of the MSA.[9]

---

[3] MSA § II.VV.

[4] MSA § VIII.B(1).

[5] *Id.* (emphasis added).

[6] In a footnote, Downs reiterates Class Counsel's erroneous argument that the SPC Matrix's absence of language regarding a timeframe for presentment is a reason to ignore the express language contained in the definition of LMPC. *See* Downs Mem. at 7 n.10. But, when one reads the contract "as a whole," *Becker*, 586 F.3d at 369, it is unequivocal that a condition first diagnosed after April 16, 2012, is an LMPC and that a condition cannot be both an LMPC and an SPC.

[7] Downs Mem. at 7-8 (emphases added).

[8] Order and Reasons Granting Final Approval of the Medical Benefits Class Action Settlement ("Final Approval Order") at 55, Jan. 11, 2013, Rec. Doc. 8217 (identifying requirements of "short-term exposure and relatively immediate illness" as proof of causation); *see id.* at 40 ("[T]he narrow time-of-manifestation requirements make causation more certain by minimizing the possibility that a condition was the result of an intervening or alternate cause other than exposure."); *id.* at 42 (causation is straightforward "because Class Members *must* manifest a Specified Physical Condition relatively immediately after exposure" (emphasis added)).

[9] MSA § XIV.B, C.

Memo:  The Honorable Sally Shushan
April 29, 2014
Page 3

Second, the proof requirements of the SPC Matrix are structured so that only certain defined medically plausible conditions that may be caused by exposure to oil or dispersants are compensable.  A Class Member seeking compensation for a Chronic Condition must submit three requisite categories of proof:

(1)  **Sworn Declaration –** A declaration "under penalty of perjury" attesting that the claimed condition manifested within a very short time (24-72 hours) of exposure and identifying "the route, circumstances, and date(s) or approximate dates of alleged exposure."[10]  *See In re Deepwater Horizon*, 744 F.3d 370, 376 (5th Cir. 2014) (settlement does not "ignore causation" when it requires a claimant to provide an attestation, under penalty of perjury, that injuries were "due to the spill");

(2)  **Medical Records of Presentment/Treatment of the Persisting Condition –** Two of the three acceptable forms of proof expressly require that the medical record have been prepared during or immediately after the exposure occurred.[11]  The third form of proof requires medical records showing presentment to a medical provider with conditions that are persisting.  For all three types of proof in this category, "***[****t****]****he Claims Administrator shall determine, based on the totality of the evidence in the medical records, whether that evidence more likely than not supports the assertions made in the declaration***,"[12] which in turn contains a requirement of temporal proximity between exposure and manifestation.  Notably, the Court's Order granting final approval to the MSA found that the requirements of "short-term exposure and relatively immediate illness [i.e., manifestation]" made "*causation* . . . straightforward";[13]

(3)  **Supplemental Medical Records of Ongoing Care or Chronic Nature of Condition Caused by Exposure –** Another set of medical records is required to establish the ongoing care/treatment or chronic nature of the condition ***and*** proof that the exposure was related to the condition.[14]  Thus, the third category—which sets forth a requirement unique to Chronic Conditions—includes a clear causation requirement.

---

[10]  MSA Ex. 8, at 4.

[11]  *Id.* at 4-5.

[12]  *Id.* at 4 (emphasis added); *see also id.* at 5 (for records reflecting "transport to a medical facility immediately after the performance of Response Activities:  The Claims Administrator shall review and determine, based on the totality of the evidence . . . whether that evidence more likely than not supports the assertions made in the declaration.").

[13]  Final Approval Order at 55 (emphasis added); *see supra* note 8.  As explained in BP's Memorandum, the types of proof required for a Chronic Condition under the SPC Matrix confirm that the SPC category was reserved for conditions for which medical treatment was received proximate in time to manifestation of the condition.  *See* BP April 14, 2014 Mem. at 5-6.  Downs suggests that a medical diagnosis could be obtained years after manifestation of an SPC.  *See* Downs Mem. at 8 n.10 ("[T]here are no requirements for 'diagnosis made on or before April 16, 2012.'").  Its position is irreconcilable with the proof standards and the compensation scheme under the Matrix.  The MSA explicitly requires medical records establishing presentment, treatment, confirmation and/or diagnoses that were proximate in time to the manifestation of the claimed condition.

[14]  MSA Ex. 8, at 5.

Memo: The Honorable Sally Shushan
April 29, 2014
Page 4

Downs seeks to eliminate any causation requirement from the MSA in contravention of the language and structure of the SPC Matrix and this Court's Order approving the terms of the settlement. Surely, the MSA should not be read to compensate Class Members for an SPC-defined condition that is not related to their exposure from the spill. The positions taken by Downs are unfounded and unsupported and should not be credited by the Court.

### IV. As the Court Ruled in Approving the MSA, the MSA Complies With *Amchem Products, Inc. v. Windsor* and Rule 23.

Downs makes another last ditch effort to reargue an issue that has been previously considered and rejected by the Court. Downs raises the specter of an intra-class conflict—that some Class Members would seek compensation through the SPC Matrix while others would seek compensation through the BELO process—as a purported reason why the Court should disregard the plain language and structure of the MSA.

The Court has held that "[t]o the extent there is some difference between Class Members who manifested a Specified Physical Condition and those who did not [i.e., those who have LMPCs and would sue under the BELO], it is not a difference that creates an intra-class conflict and, accordingly, it is a difference that is irrelevant for Rule 23(a)(4) purposes."[15] As for *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Court concluded that "[t]his case suffers from none of the problems identified in *Amchem*, where the [Supreme] Court noted a potential intra-class conflict between individuals who had already been injured by asbestos and those who had only been exposed to it."[16]

Downs' argument is based on a misreading of *Amchem*. According to Downs, "*Amchem* and its progeny stand for the premise that in order for a class settlement to be binding on all members of a class, there must be no conflict between subclasses of the larger class."[17] If Downs' position were correct, however, then the mere fact that the MSA provided different remedies to Class Members would render it invalid under *Amchem*. The Fifth Circuit has considered this issue and found that only a "'fundamental conflict' of interests" is fatal to class formation. *In re Deepwater Horizon*, 739 F.3d 790, 813-14 (5th Cir. 2014). Multiple appellate decisions make clear that the fact that different class members will receive different amounts and types of compensation based on their different circumstances is not a "fundamental conflict" of interests.[18]

---

[15] *See* Final Approval Order at 47 (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625-26 (5th Cir. 1999)).

[16] *Id.* at 47-48 (citing *Amchem*, 521 U.S. at 626).

[17] Downs Mem. at 9.

[18] *See In re Deepwater Horizon*, 739 F.3d at 814 ("[E]ach class member naturally derives different amounts of utility from any class-wide settlement based on his or her unique circumstances, but this does not put all such class members in fundamental conflict with one another." (internal quotation marks omitted)); *Charron v. Wiener*, 731 F.3d 241, 253-54 (2d Cir. 2013) ("All class settlements value some claims more highly than others, based on their perceived merits, and strike compromises . . . . If these types of compromises automatically created subclasses that required separate representation, the class action procedure would become even more

The interests of Class Members are not in conflict.  Significantly, "this Settlement does not involve a limited fund with no ability for class members to opt out."[19]  The structure of the MSA puts this case on very different footing from *Amchem*.  The concern in *Amchem* was that certain plaintiffs, who had already been injured by asbestos, had negotiated the release of claims belonging to plaintiffs who had only been exposed but had not yet suffered any injury.  *See Amchem*, 521 U.S. at 626.  In other words, the concern was that one group of plaintiffs had sold out another group's claims for pennies on the dollar in order to enhance its own recovery.  That kind of fundamental conflict simply is not present here.[20]  Under the MSA, all Class Members with an SPC condition may seek compensation under the Matrix so long as all the requisite eligibility and proof requirements are met.  All Class Members, who are first diagnosed with any physical condition after April 16, 2012, are entitled to seek relief only through the BELO process or workers' compensation law.

This structure is rational.  Class Members whose physical conditions are first diagnosed ***after*** April 16, 2012 (defined to have LMPCs) are differently situated than Class Members first diagnosed ***before*** April 16, 2012 (who may submit claims under the SPC Matrix).  The former category of claimants was not diagnosed proximate in time to the Deepwater Horizon event, and therefore, their evidentiary proof requirements to establish causation are more stringent under the BELO process.  It is appropriate and prudent that the MSA provides that such claims must utilize a different procedure for recovery.  As the Court found, "[a]ll Class Members retain the right to sue for Later-Manifested Physical Conditions under the Back-End Litigation Option."[21]  Because of this common characteristic, "[t]hose Class Members who developed a Specified Physical

---

cumbersome . . . ."); *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 429 (6th Cir. 2012) ("Although significant conflicts make a plaintiff an inadequate class representative, differently weighted interests are not detrimental."); *UAW v. GMC*, 497 F.3d 615, 629 (6th Cir. 2007) ("[I]f every distinction drawn (or not drawn) by a settlement required a new subclass, class counsel would need to confine settlement terms to the simplest imaginable or risk fragmenting the class beyond repair."); *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) ("[T]he existence of minor conflicts alone will not defeat a party's claim to class certification:  the conflict must be a 'fundamental' one going to the specific issues in controversy.").  The Court properly applied this principle when approving the MSA.  *See* Final Approval Order at 48 ("Subclassing is but one of many available options for limiting the possibility of intraclass conflicts; it is not required as a matter of course."); *id.* ("[S]ubclasses might only be needed when there is a 'fundamental' conflict among class members, but no such conflict exists here.").

[19] *Id.* (quoting, *inter alia*, Supplemental Declaration of John C. Coffee, Jr. ("Coffee Suppl. Decl.") ¶ 13, Oct. 22, 2012, Rec. Doc. 7730-2 ("[T]he fact that overshadows all other considerations [regarding the intra-class conflict] is that this settlement is uncapped.")).

[20] *See* Coffee Suppl. Decl. ¶ 13 ("[T]he gain of any subgroup does not occur at the expense of any other subgroup and they all share a common interest in maximizing recovery.").  Notably, the MSA does not release LMPC claims unless the Class Member fails to submit a timely Notice of Intent To Sue or fails to timely and properly file a BELO lawsuit.  *See* MSA § XVI.B.  Thus, it is incorrect for Downs to assert that, under BP's interpretation, the interests of Class Members with SPCs conflict with those of Class Members with LMPCs.  Recovery by the latter category—Class Members with LMPCs—is not limited by the recovery obtained by the former group.  *Cf. Charron*, 731 F.3d at 252 ("[W]hile the settlement does not provide relief for [a certain category of claims], it does not ***extinguish*** them, or release [the Defendant] from liability . . . . This case therefore does not present the situation the Supreme Court faced in *Amchem* [or] *Ortiz* . . . .").

[21] Final Approval Order at 48.

Condition have every incentive to protect the interests of all Class Members, each of whom retains Back-End Litigation Option rights" for LMPCs.[22]

## V. Downs Does Not Accurately Represent Statements Made During the Settlement Approval Process.

Downs selectively quotes and takes out of context BP counsel's statements made during the settlement approval process.  As a threshold matter, such statements cannot be used to contravene the plain language of the MSA, and Downs makes no legal argument to disregard this well-established principle.[23]  Moreover, a complete review of the record demonstrates that BP has consistently maintained that the definition of LMPC hinges on the date of *diagnosis*, and that conditions first diagnosed after April 16, 2012, are LMPCs for which compensation must be sought through the BELO process:

- "The proposed Settlement also provides a mediation/litigation process for Class Members who seek compensation from BP in the future for a Later-Manifested Physical Condition (i.e., *a condition diagnosed in the class member after the filing of the Medical Class Action Complaint* but claimed to be due to exposure prior to the filing of that complaint) that is claimed to have resulted from exposure . . . ."[24]

- "The Medical Settlement also provides a mediation/litigation process for Class Members who seek compensation from BP in the future for a Later-Manifested Physical Condition (i.e., *a condition diagnosed after the filing of the Medical Class Action Complaint*) that is claimed to have resulted from exposure . . . ."[25]

- "Class Members *diagnosed* with a Later-Manifested Physical Condition have the option to seek compensation for that condition through the Back-End Litigation Option or, as applicable, pursuant to workers' compensation law or the Longshore and Harbor Workers' Compensation Act."[26]

---

[22]  *Id.* at 49.

[23]  *See* BP April 14, 2014 Mem. at 10-11 (discussing legal authorities barring use of parol evidence to alter plain meaning of agreement).  To the extent Downs is suggesting that BP's prior statements judicially estop BP from asserting its interpretation of the MSA, that suggestion is unavailing.  Judicial estoppel applies only when a party's prior representations are "plainly inconsistent" with its current position *and* the party acted intentionally rather than "inadvertently."  *In re Oparaji*, 698 F.3d 231, 235 (5th Cir. 2012).  BP's prior representations are not plainly inconsistent with its current position—BP never stated that a condition first diagnosed after April 16, 2012, could be treated as an SPC.  In addition, any implication that an LMPC is only a condition that first manifests—rather than is first diagnosed—after April 16, 2012, was not intended by BP.

[24]  Joint Memorandum in Support of Preliminary Approval at 9, Apr. 18, 2012, Rec. Doc. 6267-1 (emphasis added).

[25]  BP's Memorandum in Support of Final Approval at 36, Aug. 13, 2012, Rec. Doc. 7112-1 (emphasis added).

[26]  Joint Proposed Findings of Fact ¶ 119, Nov. 20, 2012, Rec. Doc. 7946 (emphasis added).

Downs also ignores similar statements made by Class Counsel during the pre-approval process that defined LMPCs based on the date of *diagnosis*, not the date of manifestation.[27] Downs focuses instead on an isolated statement by BP counsel, taken out of context, that the MSA "preserves the rights of class members to seek compensation for later-manifested physical injuries," and that this category includes "[i]njuries that have not manifested themselves today, that perhaps show up, we hope not, but show up five years from now or ten years from now."[28] This statement is, of course, accurate—the LMPC category does encompass conditions that manifest and are first diagnosed in later years. But the statement was not, and was not represented to be, a comprehensive inventory of conditions that are defined as LMPCs under the plain terms of the MSA. The definition of LMPC—as stated in the MSA and in BP's pre-approval filings—encompasses any physical condition that is first diagnosed after April 16, 2012, and that is alleged to result from exposure. By its plain terms, this definition encompasses later manifested conditions *and* earlier manifested conditions that are first diagnosed after April 16, 2012.

## VI. Downs Advances No Legitimate Reason to Disregard the Plain Language of the MSA.

Rather than addressing the plain language of the MSA, Downs argues the merits of individual claims and threatens a parade of horribles if the MSA were to be implemented according to its plain terms. Its arguments are misplaced and unpersuasive.

First, Downs reiterates Class Counsel's incorrect assertion that, prior to April 16, 2012, Class Members could not have known what medical tests would be required to receive SPC compensation.[29] But as Dr. Jessica Herzstein explained in the declaration attached to BP's Memorandum, physicians treating patients with the Chronic SPC Conditions would have ordered the routine tests identified in the SPC Matrix to diagnose and treat such conditions.[30] Class Members who actually suffered those serious chronic conditions would be expected to seek medical attention and to receive those tests.[31] The proof requirements under the SPC Matrix— negotiated by Class Counsel and BP and approved by the Court—were crafted to encompass the medical tests that would have been performed by practicing physicians treating these conditions without regard to compensation.

---

[27] *See, e.g.*, Class Counsel's Memorandum in Support of Final Approval at 9, Aug. 14, 2012, Rec. Doc. 7116 ("The Medical Settlement provides a mediation/litigation process for class members who seek compensation from BP in the future for a Later-Manifested Physical Condition (i.e., a condition *diagnosed* in the class member after the date on which the Medical Class Action Complaint was filed, but that the class member claims to be due to exposure prior to the Complaint's filing date) that is claimed to have resulted from exposure during the Response Activities to oil and/or dispersants chemicals. . . . Class members *diagnosed* with a Later-Manifested Physical Condition may elect whether to seek relief for that condition pursuant to the BELO or workers' compensation law or the Longshore and Harbor Workers' Compensation Act." (emphases added)).

[28] Preliminary Approval Hearing Transcript at 90, Apr. 25, 2012, Rec. Doc. 6395.

[29] Downs Mem. at 3-4; *see also* Class Counsel Mem. at 2, 5.

[30] Declaration of Dr. Jessica Herzstein ("Herzstein Decl.") ¶ 6, Apr. 14, 2014.

[31] *Id.* ¶¶ 4-6.

Memo: The Honorable Sally Shushan
April 29, 2014
Page 8

Second, Downs devotes an extended discussion to the number of workers that might have been injured, extrapolated from data on past oil spills.[32] But this discussion is irrelevant to the issue before the Court. The MSA does not provide, nor did BP ever agree, that medically implausible claims should be compensated under the MSA. Nor does any party endorse the submission of fraudulent claims.[33] Yet it takes little effort to see how Downs' position invites the submission of manufactured claims. It would allow a Class Member who supposedly began experiencing a serious, chronic SPC immediately after exposure to wait *years* before seeing a medical provider for diagnosis and treatment. There are plaintiffs' firms advertising *today* and offering to arrange such well-after-the-fact diagnoses.[34] As Dr. Herzstein noted in her declaration, it is implausible that Class Members would wait years to seek medical attention for such serious and painful conditions,[35] and BP never agreed to compensate such dubious claims as SPCs. For those Class Members with legitimate physical conditions that were diagnosed after April 16, 2012, and which are claimed to have resulted from exposure, the BELO process is available to provide appropriate relief.

Third, Downs suggests that the Court should rule in favor of Class Counsel's interpretation because BP's interpretation would "flood[]" the Court with tens of thousands of LMPC claims.[36] This attempted scare tactic is unfounded. Since LMPC claims are eligible for mediation, there remain opportunities for resolution in lieu of litigation.[37]

Fourth, Downs mischaracterizes any efforts to ensure that the MSA is implemented correctly as an effort to obstruct or deny effect to the settlement. The MSA is a carefully structured agreement that provides compensation based on the quality of proof submitted. Claimants with diagnoses of certain defined conditions that are proximate to manifestation may seek compensation through the SPC Matrix. Those with diagnoses that occurred after April 16, 2012, must seek compensation through the BELO process.

Finally, Downs contends, in an e-mail that is effectively a sur-reply to its own memorandum, that this issue is ripe because Downs has 77 pending claimants, who were all diagnosed with a condition after April 16, 2012, and are now seeking compensation under the SPC Matrix.[38] As BP previously explained in its submission, the Court should not address the disposition of individual pending claims properly before the Claims Administrator. As Downs candidly admits, its claimants have neither been denied nor received a notice of defect. In any event, the MSA contains no provision whatsoever for Court review of individual claims

---

[32] Downs Mem. at 4-6.

[33] *See* E-mail from Steve Herman to Magistrate Judge Shushan, Apr. 17, 2014 ("Class Counsel believe and agree that reasonable efforts should be undertaken to address any truly fraudulent conduct that might exist in either settlement program.").

[34] BP April 14, 2014 Mem. at 7.

[35] Herzstein Decl. ¶¶ 4-5.

[36] Downs Mem. at 7.

[37] *See* MSA § VIII.C.

[38] *See* E-mail from Craig Downs to Magistrate Judge Shushan, Apr. 24, 2014.

Memo:  The Honorable Sally Shushan
April 29, 2014
Page 9

decisions made by the Claims Administrator, let alone those claims that the Claims Administrator has not even assessed.

## VII.   Conclusion

BP respectfully requests that the Court not consider Downs' Memorandum, which was filed without leave and after the Court had directed the parties that no further briefing would be accepted.  If the Court considers Downs' arguments, it should find them to be without merit.  The MSA expressly defines any physical condition first diagnosed after April 16, 2012 (and satisfying all other requirements) as an LMPC, and compensation is exclusively provided through the BELO process or workers' compensation laws.  The plain language of the MSA should not be disregarded in order to rewrite the agreement and redefine these claims as SPCs.  If the Court is inclined to address the issue at this time, it should (1) reject Downs' (and Class Counsel's) position; (2) direct that conditions first diagnosed after April 16, 2012, be treated as LMPCs pursuant to the express terms of the MSA; and (3) direct that Chronic SPC claims must be supported by medical records establishing presentment, treatment, confirmation and/or diagnoses that were proximate in time to the manifestation of the claimed condition.