UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DOERLE FOOD SERVICES, L.L.C.** | * | **CIVIL ACTION NO.: 13-1495** |
| | * | |
| **VERSUS** | * | |
| | * | **SECTION "J"** |
| **BP EXPLORATION & PRODUCTION,** | * | |
| **INC., ANADARKO PETROLEUM** | * | |
| **CORPORATION, BP AMERICA** | * | |
| **PRODUCTION COMPANY,** | * | |
| **BP, PLC, TRANSOCEAN,** | * | **JUDGE: Carl Barbier** |
| **LTD., TRANSOCEAN OFFSHORE** | * | |
| **DEEPWATER DRILLING, INC.,** | * | |
| **TRANSOCEAN DEEPWATER, INC.,** | * | **MAGISTRATE JUDGE: Sally Shushan** |
| **TRANSOCEAN HOLDING, L.L.C.,** | * | |
| **TRITON ASSET LEASING GMBH,** | * | |
| **HALLIBURTON ENERGY SERVICES,** | * | |
| **INC., CAMERON INTERNATIONAL** | * | |
| **CORPORATION F/K/A COOPER-** | * | |
| **CAMERON CORPORATION,** | * | |
| **ANADARKO** | * | |
| **EXPLORATION&PRODUCTION COMPANY** | * | |
| **LP, MOEX OFFSHORE 2007 LLC, MOEX USA** | * | |
| **CORPORATION, AND MITSUI OIL** | * | |
| **EXPLORATION CO., LTD.** | * | |

*******************************************

## AMENDED COMPLAINT

1.

**NOW INTO COURT,** through undersigned counsel, comes the Claimant, Doerle Food Services, L.L.C. (hereinafter referred to as "Doerle"), who brings its complaint against the Defendants identified herein, who respectfully alleges and avers as follows:

## THE PARTIES

2.

The Claimant, Doerle, is a Louisiana Limited Liability Company with its principal place of business at 113 Kol Drive, Broussard, Parish of Lafayette, State of Louisiana, and additional

1

places of business in Fourchon, Louisiana, Shreveport, Louisiana, and Pasadena, Texas, who operates a wholesale food distribution business, servicing many businesses throughout the Gulf Coast Region.

3.

Made Defendants herein are as follows, and are jointly, severally and strictly liable under The Oil Pollution Act of 1990 (hereinafter referred to as "OPA"), and pursuant to this Complaint:

1. BP EXPLORATION & PRODUCTION, Inc. (hereinafter "BP Exploration"), incorporated in the State of Delaware with a place of business in Louisiana and authorized to do and doing business in the State of Louisiana and within the jurisdiction of this Court with respect to matters sued upon herein.

2. ANADARKO PETROLEUM CORPORATION (hereinafter "Anadarko"), incorporated in the State of Delaware with a place of business in Louisiana and authorized to do and doing business in the State of Louisiana within the jurisdiction of this Court with respect to matters sued upon herein.

3. BP AMERICA PRODUCTION COMPANY (hereinafter "BP America"), a Delaware corporation with its principal place of business in Houston, Texas. BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

4. BP, PLC, ("BP, PLC") is a British public limited company with its corporate headquarters in London, England.

5. ANADARKO E&P COMPANY LP (hereinafter "Anadarko E&P"), is a Delaware limited partnership with its principal place of business in Woodlands,

Texas. Anadarko E&P is registered to do and does business in the State of Louisiana.

6. CAMERON INTERNATIONAL CORPORATION f/k/a COOPER-CAMERON CORPORATION (hereinafter "Cameron"), is a Delaware corporation with its principal place of business in Houston, Texas. Cameron is registered to do and does business in the State of Louisiana.

7. HALLIBURTON ENERGY SERVICES, INC. (hereinafter "Halliburton"), is a Delaware corporation with its principal place of business in Houston, Texas. Halliburton is registered to do and does business in the State of Louisiana.

8. MITSUI OIL EXPLORATION CO., LTD. (hereinafter "MOECO"), is incorporated in Japan and has its principal place of business in Tokyo, Japan.

9. MOEX OFFSHORE 2007 LLC (hereinafter "MOEX Offshore"), is a Delaware corporation with its principal place of business in Houston, Texas. MOEX does business in the State of Louisiana and/or in state and/or federal waters off the coast of Louisiana.

10. MOEX USA CORPORATION (hereinafter "MOEX USA"), is incorporated in Delaware and has its principal place of business in Houston, Texas.

11. TRANSOCEAN DEEPWATER, INC. (hereinafter "Transocean Deepwater"), is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this judicial district.

12. TRANSOCEAN HOLDING, L.L.C. (hereinafter "Transocean Holdings"), is a Delaware corporation with its principal place of business in Houston, Texas, and

       that at all pertinent times was doing business in the State of Louisiana and within this district.

13.   TRANSOCEAN, LTD. (hereinafter "Transocean Ltd.") is a Swiss corporation that maintains substantial U.S. offices in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this judicial district.

14.   TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC. (hereinafter "Transocean Offshore"), is a Delaware corporation with its principal place of business in Houston, Texas, and that at all pertinent times was doing business in the State of Louisiana and within this judicial district.

15.   TRITON ASSET LEASING GMBH (hereinafter "Triton"), is a Swiss limited liability company with its principal place of business in Zug, Switzerland.

16.   WEATHERFORD is hereby dismissed from the instant action with prejudice.

(Sometimes hereinafter referred to collectively as "Defendants".)

## JURISDICTION AND VENUE

4.

This Court has jurisdiction pursuant to the following:

    a. 28 U.S.C. § 1331(Federal Question), and 33 U.S.C. § 2717(b). (The Oil Pollution Act of 1990, hereinafter referred to as "OPA").

    b. La. Rev. Stat. § 13:3201 A (1), because Defendants, either directly or by their agents, transacted business in Louisiana;

    c. La. Rev. Stat. § 13:3201 A (2), in combination with Fed. R. Civ. P. 4 (k)(1)(A), because Defendants, either directly or by their agents, contracted to supply services or things in Louisiana;

4

    d. La. Rev. Stat. § 13:3201 A (3), in combination with Fed. R. Civ. P. 4 (k)(1)(A), because Defendants, either directly or by their agents, caused injury or damage by an offense or quasi-offense committed through an act or omission in Louisiana;

    e. La. Rev. Stat. § 13:3201 B, in combination with Fed. R. Civ. P. 4 (k)(1)(A), on any basis consistent with the Constitution of Louisiana and the Constitution of the United States;

    f. Fed. R. Civ. P. 4(k)(2), federal long-arm jurisdiction provision, because claims in this action arise under federal law, and the exercise of jurisdiction over BP, PLC is consistent with the laws and Constitution of the United States; and

    g. Plaintiff has met the presentation requirements under section 2713(a) of the OPA by submitting a claim to BP, the responsible party, in writing for a sum certain for compensation of damages from the incident on 01/18/2013 via fax and certified mail, claim no. 1004192-01. Ninety days have elapsed since that date and the claim has not been settled by payment.

5.

Venue is proper in the United States District Court for the Eastern District of Louisiana pursuant to this Court's order regarding direct filings in the MDL #2179.

6.

Venue is also proper in the United States District Court for the Eastern District of Louisiana ("this District") pursuant to 28 U.S.C. § 98(a) (Louisiana), § 1391(b) (venue generally), and 33 U.S.C. § 2717(b) (OPA).

## FACTS OF THE CASE

7.

This suit arises from the oil spill in the Gulf of Mexico that began after the April 20, 2010 explosion of the mobile offshore drilling rig, the Deepwater Horizon. At the time of the spill, the Deepwater Horizon was engaged in drilling activities on the Macondo Well, which had a blowout and began to continuously discharge oil into the gulf until July 15, 2010 (the "Deepwater Horizon Spill").

8.

Due to the Deepwater Horizon Spill, many businesses along the Gulf Coast were negatively affected, including the restaurant service industry and the tourism industry. Additionally, during and after the Deepwater Horizon spill, most energy and marine businesses operating in the Gulf of Mexico were unable to conduct normal business operations.

9.

At all times pertinent hereto, Doerle provided wholesale food distribution throughout the Gulf Coast Region.

10.

Doerle sells food and food related products to restaurants, food chains, and other entities including retail and resellers, and marine operations along the Gulf Coast area, including, Mississippi, Texas, and throughout Louisiana.

11.

As a result of the negative impact upon the business operations along the Gulf Coast and the lack of operations in the Gulf of Mexico, Doerle sustained a loss in sales and profits as well as a loss of earning capacity from the decline in operations of certain businesses it had serviced prior to the Deepwater Horizon Spill.

12.

Doerle suffered damages from the Deepwater Horizon Spill due the decline in sales and a loss of earning capacity from specific customers who were affected by the Deepwater Horizon Spill resulting from the decreased tourism, reduced offshore employment, and reduction in marine operations. In addition to loss of profit and earning capacity, Doerle was forced to obtain certain seafood products from new suppliers and at higher costs due to its normal suppliers lack of operations. Doerle also lost vendor incentives and purchase discounts, and obtained an increase in bad debt expense. Moreover, prior to the spill, Doerle was planning to build a new facility in Port Fourchon, Louisiana which was delayed as a result of the Deepwater Horizon Spill, in turn causing additional and prolonged transportation costs to service its customers.

## OPT OUT VALIDITY

13.

Robert G. Jackson, Senior Attorney at Jackson & Jackson, P.L.L.C., also serves as Officer of Doerle in the position of Director of Finance and General Counsel, and as such, is an authorized signatory of the company. Therefore, Doerle validly opted out of the Deepwater Horizon Settlement as the Doerle Opt Out letter was timely submitted and signed by an authorized representative of the company allowing Doerle to make Presentment and file this lawsuit against BP, and its co-defendants under the OPA. See Exhibit A, Certificate of Authority and Ratification by the Managing Directors of Doerle Food Services, L.L.C.

## **CAUSE OF ACTION**

14.

Claimant, Doerle, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph and allegation of this Complaint.

15.

Doerle has sustained "damages" as defined in 33 U.S.C. § 2702(b)(2)(E), for loss of profits and impairment of earning capacity due to the decline in sales from specific customers, which damages may be recovered pursuant to same.

16.

OPA assigns liability to "each responsible party for a vessel or facility from which oil is discharged…for the damages…that result from such incident," in which the "responsible party" for a vessel is defined as "any person owning, operating, or demise chartering the vessel." 33 U.S.C. §§ 2702 (a), 2701.

17.

Pursuant to the Court's Order and Reasons in the matter *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, On April 20, 2010*, Docket Number 2010-md-02179, Doc. 5809 signed on February 22, 2012, BP and Anadarko are the "responsible parties" under the OPA and, therefore, jointly, severally and strictly liable under OPA for removal costs and damages incurred as a result of oil discharged from the Macondo Well between April 20, 2010 and July 15, 2010 in the Gulf of Mexico.

18.

Moreover, in its "Statement of BP Exploration & Production Inc., re: Applicability of Limitation of Liability Under Oil Pollution Act of 1990," filed on October 19, 2010, BP waived the statutory limitation on liability under the OPA.

19.

"BP Exploration" was a leaseholder and the designated operator in the lease granted by the formed Minerals Management Service ("MMS") allowing it to perform oil exploration, drilling, and production-related operations in Mississippi Canyon Block 252, the location known as "Macondo" where the Spill originated.

20.

"BP America" was party to the Drilling Contract with Transocean Ltd. for the drilling of the Macondo well by the drill ship "Deepwater Horizon."

21.

"BP, PLC" is the global parent company of the worldwide business operating under the "BP" logo. Defendants "BP Exploration" and "BP America" are wholly-owned subsidiaries of "BP, PLC," and are sufficiently controlled by "BP, PLC" so as to be "BP, PLC's" agents in Louisiana. "BP, PLC's" Annual Report for 2009 presents a consolidated financial statement that includes "BP America" and "BP Exploration," and which states that "BP, PLC" "controls" both "BP America" and "BP Exploration," meaning that it has the power to govern the financial and operating policies of the [subsidiary] so as to obtain benefit from its activities. Further, "BP, PLC" has expressly and implicitly accepted responsibility for the safety of operations in North American and the Gulf of Mexico.

22.

"BP Exploration," "BP America," and "BP, PLC" are herein collectively identified as "BP." As lease operator of the Macondo prospect site, "BP" was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and relating and overseeing the contractors working on the various aspects of the well and the drilling operations.

23.

"Transocean Ltd.," was an owner, managing owner, owner pro hac vice, and/or operator of the drilling vessel "Deepwater Horizon."

24.

"Transocean Offshore" is affiliated with "Transocean Ltd." and was an owner, managing owner, owner pro hac vice, and/or operator of the drilling vessel "Deepwater Horizon."

25.

"Transocean Deepwater" is affiliated with "Transocean Ltd.," and was an owner, managing owner, owner pro hac vice, and/or operator of the drilling vessel "Deepwater Horizon."

26.

"Transocean Holdings" is affiliated with "Transocean Ltd.," and is a wholly-owned subsidiary of "Transocean Offshore." "Transocean Holdings" is an owner, managing owner, owner pro hac vice, and/or operator of the Deepwater Horizon and participated in the drilling vessel "Deepwater Horizon's" offshore drilling operations at the Macondo prospect, where the spill originated.

27.

"Transocean Holdings" is party to the contract with "BP" regarding the lease of the drilling vessel "Deepwater Horizon" for drilling operations in the Gulf of Mexico. On April 28, 2010, the U.S. Coast Guard named "Transocean Holdings" as a "Responsible Party" under the Oil Pollution Act for the surface oil spill resulting from the blowout which occurred about the drilling vessel "Deepwater Horizon."

28.

"Triton" is affiliated with "Transocean Ltd.," and is an owner, managing owner, owner pro hac vice, and/or operator of the drilling vessel "Deepwater Horizon."

29.

"Transocean Ltd.," "Transocean Deepwater," "Transocean Offshore," "Transocean Holdings," and "Triton" are hereinafter referred to collectively as "Transocean."

30.

At the Macondo site, "Transocean" provided the drilling vessel "Deepwater Horizon" and personnel to operate it. At all times relevant to the spill, "Transocean," subject to "BP's" inspection and approval, was responsible for maintaining well control equipment, such as the blowout preventer and its control systems. "Transocean" also provided operational support for drilling-related activated on board the drilling vessel "Deepwater Horizon," as well as onshore supervision and support for those drilling activities.

31.

"Halliburton" provided engineering services, materials, testing, mixing, and pumping for cementing operations on board the drilling vessel "Deepwater Horizon," as well as onshore engineering support for those operations. Halliburton was responsible for the provision of technical advice about the design, modeling, placement, and testing of the cement that was used

in the Macondo well. At and before the time of the blowout, Halliburton was engaged in cementing operations to isolate the hydrocarbon reservoirs and seal the bottom of the well against the influx of hydrocarbons like gas and oil.

32.

Halliburton's division, Sperry Drilling Services (formerly Sperry Sun Drilling Services), was responsible for mudlogging personnel and equipment on the drilling vessel "Deepwater Horizon," including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations.

33.

Throughout this Complaint, "Halliburton" shall refer to both Halliburton Energy Services, Inc. and its Sperry division.

34.

"BP," "Transocean," and "Halliburton" are collectively referred to herein as the "Drilling Defendants" because they were all involved in the drilling, cementing, and other temporary well abandonment activated aboard the drilling vessel "Deepwater Horizon," and their actions or omissions caused and/or contributed to the spill.

35.

"Cameron" manufactured, designed, supplied, and/or installed the drilling vessel "Deepwater Horizon's" sub-sea emergency well-closure device known as a blowout-preventer ("BOP"), which is, and was at all material times, an appurtenance of the vessel and a part of the vessel's equipment. The Cameron-made BOP that was installed at the Macondo wellhead failed

to operate as intended at the time of the blowout on April 20, 2010, due to its improper design, it being inappropriate for the intended environment or use, and/or possessing product defects.

36.

Intentionally blank

37.

"Anadarko" had a 2.5% leaseholder interest in the Macondo Prospect. Additionally, as of April 28, 2010, Anadarko held a 25% interest in the lease. As the joint holder of a leasehold in an oil or gas lease on land beneath navigable waters, "Anadarko" is liable jointly, severally, and strictly with the "BP" defendants pursuant to the Oil Pollution Act. Further, "Anadarko" had access to Halliburton/Sperry Sun INSITE realtime data that was transmitted from the Deepwater Horizon on April 20, 2010, and therefore knew or should have known of the information indicating a leak in the well in sufficient time to avert the disaster.

38.

"Anadarko E&P" had a 22.5% leaseholder interest in the Macondo Prospect at the time of the spill. As the joint holder of a leasehold in an oil or gas lease on land beneath navigable waters, "Anadarko E&P" is liable jointly, severally, and in solido with the "BP" defendants pursuant to the Oil Pollution Act. Further, "Anadarko E&P" had access to Halliburton/Sperry Sun INSITE realtime data that was transmitted from the Deepwater Horizon on April 20, 2010, and therefore knew or should have known of the information indicating a leak in the well in sufficient time to avert the disaster.

39.

"MOEX USA" a wholly-owned subsidiary of MOECO, had an interest in the Macondo Prospect through its wholly-owned subsidiary, "MOEX Offshore." As the joint holders of a

leasehold interest in an oil or gas lease on land beneath navigable waters, "MOEX USA" and "MOES Offshore" are liable jointly, severally, and in solido with the "BP" defendants pursuant to the Oil Pollution Act.  Further, "MOEX USA" and "MOEX Offshore" had access to Halliburton/Sperry Sun INSITE realtime data that was transmitted from the Deepwater Horizon on April 20, 2010, and therefore knew or should have known of the information indicating a leak in the well in sufficient time to avert the disaster.

40.

"MOEX Offshore," "MOEX USA," and "MOECO" are referred to collectively herein as "MOEX."

41.

On October 1, 2009, "BP Exploration," as operator, and "MOEX Offshore," entered into the Macondo Prospect Offshore Deepwater Operating Agreement. On December 17, 2009, "BP Exploration," "MOEX Offshore," "Anadarko E&P," and "Anadarko" executed a "Joinder" of the Operating Agreement. Subsequently, the parties to the Operating Agreement held the following ownership percentages in the Macondo Prospect: BP Exploration, 65%; MOEX Offshore, 10%; Anadarko E&P, 22.5%; and Anadarko, 2.5%.

## DEFENDANTS' WRONGFUL CONDUCT

42.

BP, Anadarko, and Transocean acted with gross negligence, willful misconduct and reckless disregard for human life by, among other things, using an untested, abnormally large volume of mixer spacer solutions to avoid having to properly dispose of two separate spacer substances as hazardous wastes.

43.

The accident and resulting damages sued upon were the direct and proximate result of the gross, willful, and wanton negligence and fault of BP, Anadarko, and Transocean, and unseaworthy conditions caused, created or allowed to exist by virtue of these Defendants' gross, willful and wanton conduct, as well as the negligence of the other named defendants. Said negligence, fault, conduct and conditions are listed more particularly, but not exclusively, as follows:

A. Negligent failure to properly perform the operation ongoing at the time of the accident in question;

B. Negligent failure to take all appropriate precautions to avoid an accident and explosion of the kind which occurred;

C. Negligent failure to have all proper equipment and gear necessary to perform the job being performed at the time of the accident and explosion in a safe manner;

D. Negligent failure to keep the equipment on board the vessel in proper condition and repair;

E. Negligent failure to properly inspect the rig and all of its equipment and gear;

F. Negligent failure to have sufficient number of properly trained and qualified personnel to perform the job being performed at the time of the accident and explosion in a safe manner;

G. Negligent failure to properly train and/or instruct and/or warn Gordon Lewis Jones and those similarly situated;

H. Negligent violation of government and industry rules, regulations and standards;

I. Proceeding with the operation ongoing prior to the accident in the face of negative pressure and other testing which showed that well integrity had not been established and that there was an extreme risk of a blowout, explosion and fire;

J. Placement of heavy drilling mud with seawater at the time when there was no well integrity, underbalancing the well and allowing hydrocarbons under pressure to flow up to the production casing and past the blow out preventer;

K. Ignoring data showing an influx of pressured hydrocarbons and an increase in drill pipe pressure which were unmistakable signs of an impending blowout or blowout in progress;

L. Failing to take steps to prevent the impending blowout or blowout in progress in the face of test data which called for immediate protective measures to control well; and

M. Any other acts of negligence which may be proven at the trial of this matter.

44.

Doerle is entitled to and hereby seeks compensation from all named Defendants, joint and severally, for damages sustained due to the loss of profits and loss of earning capacity as a result of the Deepwater Horizon Spill.

**PUNITIVE DAMAGES**

45.

Claimant, Doerle, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph and allegation of this Complaint, and asserts that Defendants are liable in punitive damages to Doerle, under federal, statutory, and maritime law because of the willful and wanton misconduct.

**DAMAGES**

46.

As a result of the Deepwater Horizon Spill, Doerle has sustained the following non-exclusive damages:

(a) Loss of profit and loss of earning capacity beginning in May 2010 and through the foreseeable future thereafter;

(b) Damages suffered from loss of vendor incentives and purchase discounts;

(c) Bad debt loss;

(d) Damages sustained from delay of building new facility in Port Fourchon, LA;

(e) Damages from being forced to obtain products from new suppliers, at higher costs;

(f) All costs of bringing this suit; and

(g) Any other items of damages which may be proven at the time of trial in this matter.

## REQUEST FOR TRIAL BY JURY

47.

Plaintiff prays for trial by jury on all issues triable to a jury.

## PRAYER

**WHEREFORE**, Claimant, Doerle Food Services, L.L.C., prays that this Complaint be deemed good and sufficient, and after due proceedings are had, there be final judgment rendered in favor of Claimant, DOERLE FOOD SERVICES, L.L.C., and against all named Defendants, jointly, severally and strictly liable for the following:

(1) Monetary award for the aforementioned damages suffered by the Claimant in an amount to be proven at the trial;

(2) All pre-judgment and post-judgment judicial or contractual interest as allowed by law at the maximum rate;

(3) All costs associated with bringing the instant action; and

(4) All other general and equitable relief to which Claimant may be entitled.

                Respectfully submitted:

                */s/Daniel W. Dilzell*
                J Konrad Jackson, Bar Roll # 26055
                Ronald J. Savoie, Bar Roll #  21072
                Daniel W. Dilzell, Bar Roll #26861
                Matthew A. Moeller, Bar Roll # 29991
                Ashley M. Roussel Bar Roll #34741
                Jackson & Jackson, PLLC
                111 Founders Drive, Suite 400
                Baton Rouge, LA 70810
                Telephone: (225) 756-8801
                Attorneys for Doerle Food Services, L.L.C.

The Defendants will be served in accordance with
Fed. R. Civ. P. 4 through their agent for service of process