


**Nathan Block**
Senior Counsel
GCRO Legal

BP America Inc.
737 North Eldridge Parkway
Houston, Texas 77079

Direct: (281) 366-7418
Cell: (281) 684-6252
Fax: (713) 323-5232
Email: Nathan.block@bp.com

June 4, 2014

Soren Gisleson, Esq.
Herman, Herman & Katz, L.L.C.
820 O'Keefe Ave.
New Orleans, LA   70113-1116

RE:   **Right of Access for Oil Spill Cleanup (Wisner Access Agreement)**

Dear Mr. Gisleson:

In response to your letter of June 2, 2014, we have considered your requests and decline the specific demands presented in your letter. As a threshold proposition, your letter mischaracterizes the nature of the Wisner Access Agreement. The Wisner Access Agreement grants BP a right of access to the Wisner property in order to perform the clean-up operations conducted under the direction of the Unified Command. The Access Agreement does not, as you seem to imply, create any independent or additional clean-up obligations and certainly does not provide Wisner "the exclusive right to determine when the clean-up is concluded." Instead, as you are well aware, the Federal On-Scene Coordinator has properly determined that "no further removal activities are appropriate" on the Wisner Property. As another threshold issue, we believe you are misinterpreting many of the terms of the agreement. BP is within its rights to terminate the Wisner Access Agreement pursuant to the terms of the agreement and Louisiana law. As discussed in our termination notice letter of May 22, 2014, we will, in due course, produce any remaining documents and data owed as of the date of termination.

Though the Wisner Access Agreement does not create any independent clean-up obligations, BP does wish to address your comments regarding its clean-up of the Wisner Donation's property. As you are more than well aware, BP's clean-up effort on the Wisner Donation's property has been detailed, sustained, and extensive. Because the shoreline on the Donation's property is dynamic and because the Donation imposed numerous limitations on the removal efforts, completion of the removal was unnecessarily protracted and complicated. Several projects were undertaken to overcome the limitations imposed on the clean-up and to ensure the recovery of oil that could be removed without causing greater environmental damage. Your letter ignores this reality and appears designed to manufacture the appearance of a greater risk of residual oil than credible data can support.

EXHIBIT 13

Through the course of the clean-up, substantial efforts were undertaken to locate and recover oil. In 2013 alone, through the efforts of the Louisiana Augering and Sequential Recovery (LAASR) project 5,826 excavations were made in an effort to find and recover buried oil. Of that, only 24 excavations found oil exceeding the subsurface endpoints established by the Gulf Coast Incident Management Team's (GCIMT) Shoreline Clean-up Assessment Technique (SCAT) team experts. Coordinated near-shore Snorkel SCAT teams, dug more than 6000 excavations searching for off-shore submerged oil. Finally, the FOSC commissioned OSAT III report specifically evaluated the shoreline dynamics associated with the potential for residual oil. While the OSAT III report does not equate to a guarantee that some amount of additional residual oil can't exist, it is a substantial piece of independent scientific effort that bolsters the conclusions that the search efforts have been extensive. Read in its proper context, the OSAT III report helps explain why the additional assessment suggested by the Donation is superfluous. The Donation was long ago provided access to the reports and data from all of these studies.

The suggestions of your letter cannot be divorced from the vital information about the nature of residual oil. It is important to remember that all of the oil that made landfall was heavily weathered, with the majority of the volatile compounds having evaporated before reaching the shoreline. That information can be found in the OSAT I and OSAT II reports of the IMT's Operations Science Advisory Team (OSAT). Very little toxicological risk to human health or the environment from this material remained even then. In the intervening four years, the remaining diffuse residual oil has further degraded. Of specific important to the Wisner Donation's property, there is clear evidence of oil from other sources having impacted Fourchon Beach. Fingerprinting analysis from Fourchon Beach and the nearby, adjacent beach at Elmer's Island have, of late, increasingly identified material from other sources.

Based on the substantial body of evidence described above, and the limitations imposed by the Donation, the FOSC concluded that further removal efforts were not warranted and declared the removal actions complete. Before making that decision, the FOSC held a series of meetings with the Donation to consider your views. Though you may disagree with his conclusions, the FOSC's decision concisely summarizes that the feasible and realistic efforts that can be made without unnecessarily causing otherwise avoidable damage have been exhausted. Despite this, we acknowledge there may be some potential for weathered residual material to be mobilized at Fourchon Beach. However, the time has passed when you can presume any weathered oil encountered is residual MC252. As such, should the Donation believe it has encountered recoverable oil, notification to the USCG's National Response Center (NRC) is the appropriate mechanism to ensure it is addressed. Pollution Investigators (PI) from the USCG will investigate. The USCG is maintaining dedicated resources to ensure timely and appropriate responses. BP is likewise maintaining readily deployable resources that can be dispatched by the USCG if the USCG identifies material as residual MC252 oil.

Consistent with the Wisner Access Agreement, the highest industry standards were employed in the course of the clean-up conducted under the direction of the Unified Command. That obligation was more than satisfied and does not, as you try to suggest, equate to an obligation to continue remediation efforts to the exhaustion of technological feasibility or to some arbitrary level without regard to other factors, including the greater environmental damage

that can be caused by unnecessary measures. This is clearly reflected by the FOSC's decision, after consultation with scientists from NOAA, that further clean-up efforts are unnecessary and the clean-up operations should be concluded - they would not serve the net environmental benefit and could be counterproductive.

As explained above, the Wisner Access Agreement does not create any independent or additional clean-up obligation for BP beyond the substantial efforts BP has already undertaken at the direction of the FOSC, as described above. Moreover, the remediation plans presented in your letter stretch beyond the purpose and reach of the Wisner Access Agreement which was to provide BP access to the Wisner property in order to conduct clean-up operations under the direction of the Unified Command. The Wisner Donation has presented claims for damages and filed a lawsuit (19 April, 2013) and those claims are pending before with Judge Barbier in MDL 2179. Claims for alleged damage to the property are appropriately in that forum. Your asserted interpretation of BP's obligations under the access agreement would sidestep that process and we do not believe there is any appropriate interpretation of the Wisner Access Agreement that would have such reach.

For all of the reasons stated above, at this time, we are declining your request to implement the work suggested by the Donation. Despite the assertions of your letter, repeated reviews of the available credible data simply do not support the demanded additional efforts. If you have new data or data not yet made available to BP through the GCIMT, we are certainly willing to review and consider that information and may be amenable to a discussion among technical experts to consider that information. In the meantime, we would commend you to utilize the USCG's NRC to report any oiling encountered on Fourchon Beach.

Sincerely,

Nathan Block
Senior Counsel,
BP GCRO