25th JUDICIAL DISTRICT COURT FOR THE PARISH OF PLAQUEMINES

STATE OF LOUISIANA

NO. 61-466                                          DIVISION "B"

GILBERT V. ANDRY, IV and THE ANDRY LAW FIRM, LLC

VERSUS

BP EXPLORATION & PRODUCTION, INC., BP AMERICA PRODUCTION
COMPANY, MICHAEL KUNSELMAN AND MARK HOLSTEIN

**FILED**

JUN 2 3 2014

FILED: _____        _____
                               DEPUTY CLERK
                               BY. CLERK

PETITION FOR DEFAMATION

The petition of plaintiffs, Gilbert V. Andry, IV, a person of the full age of majority and

resident of the Parish of Plaquemines, State of Louisiana, and The Andry Law Firm, LLC, a domestic

corporation licensed to do and doing business in this Parish and State, by and through undersigned

counsel, respectfully represents that:

1.

Made defendants herein are:

1.  **BP Exploration & Production, Inc. (hereinafter "BP")**, a foreign corporation
    authorized to do and doing business in this Parish and State;

2.  **BP America Production Company, (hereinafter "BP")**, a foreign corporation
    authorized to do and doing business in this Parish and State;

3.  **Michael Kunselman**, a person of the full age of majority and resident of the Parish
    of Orleans, State of Louisiana; and

4.  **Mark Holstein**, a person of the full age of majority and resident of the State of
    Texas.

2.

As succinctly summarized by the Plaintiff's Steering Committee in the BP litigation:

> In this case, BP has, so far, plead guilty to eleven felony counts of
> seaman Manslaughter (18 U.S.C. § 1115), one felony count of lying
> to Federal Government (U.S.C.  § 1505), criminal violations of the
> Clean Water Act (33 U.S.C. §1319 (c)(1)(A) & 1321(b)(3), criminal
> violations of the Migratory Bird Treaty Act (16 U.S.C. § 1703 & 707
> (a), and one count of lying to their stockholders and the SEC (15
> U.S.C.  § 8m).  In addition to the criminal guilty pleas, the existing

trial record is replete with further evidence of willful misconduct and the violation of Federal Regulations.

3.

B.P.'s misconduct, and the catastrophic effects of its misconduct, did not end with the spill, however.

4.

BP conducted a media campaign to intimidate the courts and claimants in order to renege on the Settlement Agreement it confected and previously defended.

5.

This campaign of intimidation includes intimidation regarding the adjudication of The Andry Law Firm, LLC BEL claim.

6.

BP has gone to great lengths to attempt to extrajudicially intimidate claimants and the courts, including the claim of The Andry Law Firm, LLC ("The Andry Law Firm") regardless of the falsity of its statements made.

7.

The Andry Law Firm and specifically Gilbert V. Andry, IV has nothing to do with the representation of BP claimants and only filed a claim on behalf of Andry Law Firm at the suggestion of its CPA.

8.

Throughout the BP litigation, BP has consistently and systematically attacked others as it suits B.P.'s interests, including this Honorable Court, Special Master Patrick Juneau, Emeril Lagasse, and the Andry Law Firm, LLC, as well as others.

9.

BP agreed to a settlement; agreed to a claims administrator; agreed to maintain the confidentiality of claims information it received from the claims administrator; agreed to pay claims that met the terms of a settlement agreement it helped confect; and then BP employed any and every method at its disposal to renege on its agreement.

10.

Further, BP has pursued its agenda with callous disregard for the truth and for the damages it has caused to victims along the way including Andry Law Firm and Gilbert V. Andry, IV.

11.

On June 21, 2013, the Associated Press and defendant, Kunselman, falsely reported that The Andry Law Firm's claim had been placed on holed based on erroneous allegations of wrongdoing within the CSSP. The Associated Press Further reported that a confidential source had alleged that former DHECC staff attorney Lionel Sutton had a financial interest in the Andry Law Firm's claim. **This statement is not and never has been true.**

12.

Defendant, Kunselman, negligently and blindly published these falsities without confirmation in a hurried fashion.

13.

A simple reference to either The Claims Office or Louisiana Secretary of State for verification would have indicated the falsity of the statement.

14.

Kunselman sought no corroboration and instead published the falsity.

15.

The associated Press attributed to BP attorney, Mark Holstein, the representation that The Andry Law Firm paid a referral free to Mr. Sutton and "The Andry Law Firm and a related entity represent clients with roughly 675 claims and has its own claim worth more than $7.5 million."

16.

The Associated Press story apparently originated from a letter written by Mr. Holstein to this Court dated the same day, and apparently leaked to the press.

17.

Holstein said the Andry law firm and a related entity represent clients with roughly 675 claims and has its own claim worth more than $7.5 million. But the firm's own claim has been placed on hold, according to Holstein.

18.

The BP letter penned by defendant, Holstein, falsely referenced "Mr. Sutton's expectation and receipt of fee payments from these law firms relating to CSSP awards to claimants at the same time that Sutton, as a fiduciary for the CSSP, was apparently involving himself in claims activity relating to those same firms. Thankfully, the [redacted] own pending BEL claim for more than $7.5 million has been placed on hold."

19.

In reporting this falsity, defendant Kunselman, defamed The Andry Law Firm and member Gilbert V. Andry, IV, who, like The Andry Law firm, did not and does not represent BP claims.

20.

**In fact, no information has ever been presented by anyone suggesting that The Andry Law Firm ever paid any fees to Lionel Sutton related to a BP claim, much less its own claim, because it never did.**

21.

This falsehood perpetrated by BP would soon devolve into the concocting of a fictitious law firm to better hawk the false and malicious storyline that BP desired to feed the public and courts in an attempt to dodge payment of The Andry Law Firm claim and its general obligations to pay BEL claims required by its Settlement Agreement.

22.

Weeks later, on July 16, 2013, BP filed its *Memorandum in Support of its Motion for Emergency Preliminary Injunction* attempting to shut down the CSSP, wherein it continued its false storyline.

23.

The *Memorandum* deceptively conflated two separate law firms: The Andry Law Firm and Andry Lerner, LLC. BP alleged that Lionel Sutton intervened in the CSSP claims process to assure that claims filed by "Law Firm Y" were paid in exchange for kickbacks from "Law Firm Y."

24.

Specifically, BP alleged:

> [I]n March 2013, Mr. Sutton contacted Claim Administration Vendor Postlewaite and Netterville about a claim filed on behalf of a law firm connected to Mr. Sutton (collectively referred to herein with affiliated entities as "Law Firm Y"). *Id.* at 4. In an apparent effort to ensure it was paid, Mr. Sutton followed up a number of times with the vendor to check the status of Law Firm Y's claim. *Id.*

> Unbeknownst to BP, at the same time Mr. Sutton was intervening in these claims, he was requesting payments from Law Firm Y. *Id.* At 5-6. The limited documents turned over by the CSSP to date include numerous e-mails in which Mr. Sutton requested payments from representatives of Law Firm Y. *Id.* For example, in January 2013, Mr. Sutton asked a named partner at Law Firm Y "did u [sic' check on my fee from [Claimant X]." *Id.* at 5. Later, in March 2013, Mr. Sutton repeatedly e-mailed with the named partner regarding the requested "money." *Id.* at 5. Similar communications continued through June 2013. *Id.* at 6. At the time, Law Firm Y itself had a pending claim before the CSSP for over $7.6 million. *Id.* at 2. ...

> Mr. Juneau has placed a hold on "all claims of clients represented by" Law Firm Y. Ex. 5, 7/2/13 Update on Review of Code of Conduct and Claims Processing Issues at 3. This decision, however, was based on a very narrow investigation. ... Similarly, as of late June, the CSSP only had reviewed 43 of the 675 claims filed by Law Firm Y to identify additional search terms or Sutton Reitano clients. *Id.* at 2. Moreover, the search only focused on Law Firm Y, and did not stretch more broadly to determine whether there were any other similar arrangements.

25.

BP employed the nomenclature "Law Firm Y" as a pseudonym, but "Law Firm Y" obviously referred alternatively to The Andry Law Firm and at other points to Andry Lerner, LLC.

26.

For example, BP alleges that "Law Firm Y" represents the same "675 claimants" that are attributed to The Andry Law Firm in the Associated Press story. Also, "Law Firm Y represents 675 claimants that have completed either a claims form or a registration form to file a claim before the CSSP." Finally, "Similarly, as of late June, the CSSP only had reviewed 43 of the 675 claims filed by the Law Firm Y. ..."

27.

BP also refers to the fact that "Law Firm Y," like The Andry Law Firm, "had a pending claim before the CSSP for over $7.6 million," and cites to Mr. Juneau's letter to this Court regarding The Andry Firm's claim status.

28.

B.P.'s allegations in its Memorandum in Support of its Motion for Emergency Preliminary Injunction, read along with the Associated Press' reporting of the letter sent by counsel for BP to this Court, clearly reveal an attempt to conflate The Andry Law Firm and Andry Lerner, LLC in the mind of this Court and the public.

29.

In publishing this falsity, Gilbert V. Andry, IV, who had nothing to do with the BP litigation other than being a member of a claimant lawsuit only, Gilbert V. Andry, IV was defamed by BP.

30.

BP continued its campaign to attack a fictitious law firm as a straw man on September 11, 2013, when it published an advertisement in the internationally distributed New York Times, the following propaganda:

> Fraud and misconduct in the Gulf settlement claims process have not been confirmed.
> ***
> • A New Orleans law firm tried to exert "improper personal influence" to advance both its own $7.6 million payment award and claims determinations favoring its clients, and "to corrupt" the claims process "in order to enrich" itself.

See BP Advertisement, NEW YORK TIMES, Sept. 11. 2013, referenced by Mark Schleifstein in his article: BP ad in New York Times Repeats Allegations of Misconduct in Oil Spill Claims Office, NOLA.Com (Sept. 17, 2013, 2:54 P.M.). In publishing this falsity, BP defamed Gilbert V. Andry, IV.

31.

First, fraud and misconduct have not been confirmed. Second, as previously explained, The Andry Law Firm and Andry Lerner, LLC are not the same firm. BP knew this but published the false

statement anyway.

32.

The Andry Law Firm is a limited liability company formed in 2000. Andry Lerner, LLC is a limited liability company formed in 2012.

33.

The Andry Law Firm is, and always has been, only a clamant in this litigation, and has never represented a claimant. Andry Lerner, LLC is, and always has been, a firm representing claimants in this litigation only, and has never been a claimant.

34.

Gilbert V. Andry, IV does not share in or have any business or financial interest in Andry Lerner, LLC.

35.

The Andry Law Firm does not share in, or have any business or financial interest in, Andry Lerner, LLC.

36.

Likewise, Andry Lerner, LLC does not share in or have any business or financial interest in either The Andry Law Firm or the perfected BP claim of The Andry Law Firm.

37.

The Andry Law Firm has two members, Gilbert V. Andry, IV and Jonathan B. Andry. The Andry Law Firm properly filed a claim in this litigation in the Summer of 2012 after its CPA, David Kushner of Kushner LaGraize, LLC, suggested that The Andry Law Firm might have a claim based upon the parameters of the BP master settlement agreement.

38.

However, neither Gibby Andry nor The Andry Law Firm has ever represented, nor do they currently represent, any clients in this litigation.

39.

Rather, Jonathan Andry represented claimants through forming The Andry Law Group, and later, Andry Lerner, LLC. The two firms should not be conflated as they repeatedly have been by

BP and the Special Master.

40.

This pattern of repeated confusing of The Andry Law firm and Andry Lerner, LLC reveal a continuation by BP of the "multi-faceted legal and public relations campaign challenging the settlement agreement.

41.

This campaign has consistently confused The Andry Law Firm and Andry Lerner, LLC, conjuring a fictitious law firm that never existed, to promote the interests of BP to the detriment of The Andry Law Firm, Gilbert V. Andry, IV, justice, and the truth.

42.

Two separate and distinct firms mentioned separately do not facilitate B.P.'s desired punch line.

43.

Therefore, BP then employs its allegations of kickbacks for the expediting of a multimillion dollar claim of a fictitious firm to bolster its ongoing campaign to "rewrite or disregard the unambiguous terms of the Settlement Agreement."

44.

This conflation of two separate firms to rescue BP from the settlement agreement BP signed and perfected, but now seeks not to honor, must end.

45.

Continuing its pattern of attacking innocent claimants, BP then proceeded to disparage celebrity chef Emeril Lagasse in an advertisement that ran in national newspapers.

46.

Blaine LeCesne, a Loyola Law School professor closely following the settlement, said it best: "BP's advertising campaign is trying to play on the public's moral outrage, but it's BP that's truly 'insidious' in attacking Lagasse." "He has nothing to apologize for," LeCesne said of the chef. "There is no ethical dilemma implicated by his submission of a claim. It is BP's own self imposed, clumsy efforts to settle this case that generated these potential anomalies of which it is now

complaining." Claims Administrator Patrick Juneau defended the decision to pay Lagasse, just as he previously defended The Andry Law Firm's claim, stating: "This claim satisfied those requirements agreed upon by BP and class counsel." Although BP appealed the program's determination, Juneau explained that "[t]he appeal panelists affirmed the determination of the program and concluded that the claim was correctly processed under the terms agreed upon by BP and the class counsel."

47.

Further, in its disingenuous advertisement, BP apparently revealed confidential claims information regarding the claim of Emeril's Homebase, L.L.C.

48.

Similarly, BP again falsely attacked The Andry Law Firm by publishing a second series of advertisements, beginning January 16, 2014, in the New York Times, the Washington Post and the Wall Street Journal. BP then ran the advertisement again on January 17, 2014 in at least the Wall Street Journal:

> "Another law firm hits the jackpot:
>
> **$7 million award from the Gulf Settlement Program.**
>
> The numbers are indisputable - law firms are some of the biggest beneficiaries of the Gulf Settlement. Check out this $7 million award to The Andry Law Firm.
>
> Under the settlement, claimants must show losses by comparing their profits before the spill to those after the spill. But The Andry Law Firm's claim had a few problems:
>
> - It depended on the inclusion of a contingency fee from work that took place roughly 10 years earlier, when The Andry Law Firm *didn't even exist.*
>
> - The firm's post-spill "losses" were based on a decision to shift its focus to other businesses and had *no apparent connection to the spill.*
>
> Still, in March 2013, the Gulf Settlement Program awarded The Andry Law Firm more than $7 million. However, that huge award was placed on hold when a Court-ordered independent investigation of the Settlement Program by former FBI Director and Federal Judge Louis Freeh revealed even more problems:
>
> - A partner of The Andry Law Firm improperly worked in "concerted action" with a senior Settlement program lawyer

-9-

to *expedite the firm's claim.*

- The same senior Settlement Program lawyer concocted an "elaborate and circuitous channel" for the payment and *"laundering" of referral fees* for other claims from that same partner.

Based on the evidence of serious wrongdoing, Judge Freeh recommended that this conduct be referred to the US Attorney's Office for further investigation under criminal statutes.

BP will continue to shine a light on and fight to stop all abuses of the settlement so that the claims process can return to doing what it was intended to do:   paying the legitimate claims of people and businesses who suffered real financial losses from the spill.

Fore more, go to theStateoftheGulf.com or follow @State of the Gulf."

49.

Nothing contained in BP's advertisement is true.  The falsity of the statements made defame The Andry Law Firm and Gilbert V. Andry, IV.  BP knew the truth but published these statements anyway.

50.

Further, the statements made by BP violate its own settlement agreement as well as orders of the Federal District Court, which prevented BP from arguing alternative causation.

51.

BP made the same arguments to The Andry Law Firm claims during the claims process and appeals process and lost.

52.

In this series of false advertisements, BP revealed confidential claims information of The Andry Law Firm.

53.

Specifically, BP alleges that The Andry Law Firm claim "depended on the inclusion of a contingency fee from work that took place roughly 10 years earlier, when The Andry Law Firm *didn't even exist.*"

54.

This sort of information only could have been obtained by BP through the claims process.

55.

The advertisement further claimed that "the firm's post-spill 'losses' were based on a decision to shift its focus to other businesses and *had no apparent connection to the spill.*"

56.

Of most importance, BP's argument of alternative causation was also made on appeal, ignoring two orders of this Court forbidding BP from raising such a defense.

57.

These allegations clearly disclose, and then wrongly characterize, information gleaned from the confidential information provided to BP through the Claims Administrator.

58.

On June 29, 2012, this Court issued an Order stating, in pertinent part, that:

> **2. *Claims Information.*** Pursuant to Paragraph 18 of the Court's March 8, 2012 First Amended Order Creating Transition Process (Rec. doc. 5995) and Paragraph 3 of the Court's May 22, 2012 Order Regarding Settlement Implementation (Rec. doc. 6573), all claim files and claims-related materials and data submitted to the Gulf Coast Claims Facility (the "GCCF") and in the Transition Process have been transferred to the Claims Administrator. Paragraph 4 of the Order Regarding Settlement Implementation directs that all such Claims Information is deemed "confidential" under Pre-Trial Order No. 13 (Rec. doc. 641). In addition, the Claims Administrator will receive and will generate claim files and claims-related materials and data relating to claims submitted to the Claims Administrator under the Economic and Property Damages Settlement Agreement that contain personal identifying information and other private information regarding claimants that warrant protection from disclosure.
>
> This Order refers to all such GCCF, Transition Process and Economic and Property Damages Settlement Agreement claim files and claims-related materials and data collectively as "Claims Information."
>
> **3. *The Purpose of this Order.*** This Order defines the terms on which third parties may obtain access to Claims Information and the proper use of such information by any recipients of Claims Information, and modifies, amends and supercedes Pre-Trial Order No. 13 with respect to Claims Information.
>
> **4. *Confidentiality of Claims Information.*** All Claims Information shall be kept confidential and shall not be disclosed

except as allowed by this Order or subsequent Order of the Court.

\*\*\*

**6. *Access by Class Counsel and the BP Parties.*** Class Counsel and the BP Parties shall have access to Claims Information as provided in the Settlement Agreement and any Order of this Court (including previously entered Orders in connection with the Settlement Agreement).

\*\*\*

**13. *Use of Claims Information.*** All persons receiving any Claims Information pursuant to this Order ("Authorized Recipients") shall use such information only for the purpose for which the Authorized Recipient was permitted to receive the Claims Information. Each Authorized Recipient may disclose the Claims Information to such other persons as is reasonably necessary for the implementation of such purpose, including experts, consultants, counsel, and other advisors, and the direct staff of any of the foregoing. All such persons shall take such steps as are necessary to preserve the confidentiality of Claims Information and shall use such Claims Information solely for the purpose for which the person was permitted to receive it.

59.

This Order is consistent with the confidentiality provision of the *Settlement Agreement*, which reads:

> 4.4.1. The Parties shall jointly request that the Court issue an order directing that all claims-related information files and data previously submitted to the GCCF and/or that has been submitted to the Transition Process shall be transferred to the Settlement Program. This order shall include a provision that: (a) authorizes the Settlement Program to maintain such claims-related information and data for the duration of the Claims administration process; and (b) authorizes the Claims Administrator to release copies of such information or data to any claimant that submitted that information or data upon the written request of the claimant or the claimant's authorized representative. All such information and data shall be treated by the Settlement Program and the Parties and counsel as "confidential" under Pre-Trial Order No. 13. The Claims Administrator shall issue a status report to the Court documenting the transfer of claims and claims-related information, files and data and thereafter issue a final report to the Court after the transfer of the Transition Claims, claims-related information, files and data is complete.

60.

The *Order* clearly prohibits BP from disclosing claims information to the public. BP even acknowledged same in its *Motion To File Under Seal BP's Unredacted Notices Of Appeal From Denial Of Discretionary Review Of Claim ID XXX948*, stating:

Pursuant to the Court's Order Regarding the Confidentiality of Claims Information of the Claims Administrator of the Deepwater Horizon Economic and Property Damages Settlement Agreement (Rec. Doc. 6822), the BP Defendants, by their attorneys, hereby respectfully request leave to file under seal an unredacted copy of BP's Notice of Appeal from Denial of Discretionary Review of Claim ID XXX948.

Out of an abundance of caution and respect for the Court's orders and processes, BP filed on the public docket a redacted version of this document, redacting confidential identifying information regarding the individual claimant. BP now moves to file under seal an unredacted version of this document for the Court's consideration. Filing of the unredacted version on the docket is necessary and appropriate to enable the Court of Appeals to identify the particular claimant and claim at issue.

61.

Yet, despite the clear *Order* of this Court, BP has chosen to wage a media campaign attacking claimants by purporting to reveal the confidential claims information of the claimants.

62.

Even worse, the conclusions provided by BP interpreting the confidentiality information regarding The Andry Law Firm was and is false, and BP knew it but published advertisement anyway.

63.

The false publication by BP of false conclusions defamed The Andry Law Firm and specifically, Gilbert V. Andry, IV.

64.

The false statements of defendants published by defendants, BP and Holstein, caused damages to The Andry Law Firm, as did the disclosure of confidential information, including but not limited to:

1)   Failure to pay its claim in the amount of $7,900,000, which is final;

2)   Loss of income, past and future;

3)   Loss of reputation;

4)   Costs and expenses incurred in fighting the false publications;

5)   Any and all other damages to be determined at the trial of this matter.

65.

The false statements of defendants published by defendant, Kunselman, caused damages to The Andry Law Firm, as did the disclosure of confidential information, including but not limited to:

1)   Failure to pay its claim in the amount of $7,900.00 which is final;

2)   Loss of income, past and future;

3)   Loss of reputation;

4)   Costs and expenses incurred in fighting the false publications;

5)   Any and all other damages to be determined at the trial of this matter.

66.

The false statements of defendants published by defendants, BP and Holstein, caused damages to Gilbert V. Andry, IV, as did the disclosure of confidential information, including but not limited to:

1)   His share of this fully adjudicated Andry Law firm claim in the amount of $7,900.00;

2)   Loss of income, past and future;

3)   Loss of reputation;

4)   Costs and expenses incurred in fighting the false publications;

5)   Any and all other damages to be determined at the trial of this matter.

67.

The false statements of defendants published by defendant, Kunselman, caused damages to Gilbert V. Andry, IV, as did the disclosure of confidential information, including but not limited to:

1)   His share of this fully adjudicated Andry Law firm claim in the amount of $7,900.00;

2)   Loss of income, past and future;

3)   Loss of reputation;

4)   Costs and expenses incurred in fighting the false publications;

5)   Any and all other damages to be determined at the trial of this matter.

**WHEREFORE,** petitioners, Gilbert V. Andry, IV and The Andry Law Firm, LLC, pray that a certified copy of this petition be served upon the defendants, BP Exploration & Production, Inc., BP America Production Company, Michael Kunselman and Mark Holstein, and that after due

proceedings had, there be judgment rendered herein in favor of Gilbert V. Andry, IV and The Andry

Law Firm, LLC, and against defendants, BP Exploration & Production, Inc., BP America Production

Company, Michael Kunselman and Mark Holstein, jointly, severally and in solido, in an amount

reasonable in the premises, together with legal interest from the date of judicial demand until paid,

all costs of these proceedings and all other just and equitable relief.

Respectfully submitted,

**GIBBY ANDRY, THE ANDRY LAW FIRM, LLC**

By:

**GILBERT V. ANDRY, IV (LSBA #20056)**
828 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 522-1000
Facsimile: (504) 522-8000
**COUNSEL FOR PLAINTIFF**

*SHERIFF PLEASE SERVE:*

**BP EXPLORATION & PRODUCTION, INC.**
Through its registered agent for service:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

**BP AMERICA PRODUCTION COMPANY**
Through its registered agent for service:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

*PLEASE HOLD SERVICE ON:*

**MICHAEL KUNSELMAN**
**and**
**MARK HOLSTEIN**



GILBERT V. "GIBBY" ANDRY, IV

**ATTORNEY**
THE ANDRY LAW FIRM

TELEPHONE: 504-522-1000
FACSIMILE: 504-522-8000
TOLL FREE: 855-88-GIBBY

828 BARONNE STREET | NEW ORLEANS | LOUISIANA 70113 | gandry@gibbyandrylaw.com | www.gibbyandrylaw.com

## FACSIMILE TRANSMITTAL COVER SHEET

**DATE:**  June 23, 2014

**TO:**  Dorothy M. Lundin, Clerk of Court
25th JDC, Parish of Plaquemines
504-297-5195

**FROM:**  Gilbert V. "Gibby" Andry, IV, Esq.

No. of Pages (including cover page): __17__

**RE:**  Gilbert V. Andry, IV, et al v.
BP Exploration & Production, Inc., et al

**COMMENTS:**  Please see attached Petition for Defamation for filing

CONFIDENTIALITY NOTICE

This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone to arrange for return of the documents.

Thank you,

THE ANDRY LAW FIRM

## Transmission Report

| Date/Time | 06-24-2014 | 07:52:19 a.m. | Transmit Header Text | |
|-----------|-----------|---------------|---------------------|---|
| Local ID 1 | 5042975195 | | Local Name 1 | Clerk Of Court |

### This document : Confirmed
### (reduced sample and details below)
### Document size : 8.5"x14"



DOROTHY M. LUNDIN
Clerk of Court & Ex-Officio Recorder
Twenty-Fifth Judicial District Parish of Plaquemines
www.plaqueminesparishclerkofcourt.com

301 Main Street
P.O. Box 40
Belle Chasse
Louisiana 70037

CAROL A. ROBERTS
Chief Deputy Clerk
BCT    (504) 297-5193
FAX    (504) 297-5194

**FAX CONFIRMATION**

To: Gilbert V. "Gibby" Andry, IV          Fax: 504-522-8000

Re: Case Number 61-466                    Division B

Pleading fax filed: Petition

Received and date filed on 6/23/14.

**XXX**Please submit $400.00 for filing fees plus $2/page for exhibits or attachments not sent with the fax along with the following Sheriff's checks:
$48.16 payable to East Baton Rouge Parish Sheriff

_____ There are sufficient funds on account for this filing.

Please submit original along with 3 copies) within 5 days.

Should you have any questions, please call 504-297-5193.

Edward E. Kirby
Deputy Clerk

| Total Pages Scanned : 1 | | | Total Pages Confirmed : 1 | | | | | | |
|------|-----|----------------|------------------------|-----------|-------|------|----------|---------|
| No. | Job | Remote Station | Start Time | Duration | Pages | Line | Mode | Job Type | Results |
| 001 | 856 | 5045868911 | 07:51:30 a.m. 06-24-2014 | 00:00:13 | 1/1 | 1 | EC | HS | CP28800 |

Abbreviations:
HS: Host send          PL: Polled local        MP: Mailbox print       CP: Completed          TS: Terminated by system
HR: Host receive       PR: Polled remote       RP: Report              FA: Fail               G3: Group 3
WS: Waiting send       MS: Mailbox save        FF: Fax Forward         TU: Terminated by user  EC: Error Correct

25th JUDICIAL DISTRICT COURT FOR THE PARISH OF PLAQUEMINES

STATE OF LOUISIANA

NO.   61-466                                         DIVISION "B"

GILBERT V. ANDRY, IV and THE ANDRY LAW FIRM, LLC

VERSUS

BP EXPLORATION & PRODUCTION, INC., BP AMERICA PRODUCTION
COMPANY, MICHAEL KUNSELMAN AND MARK HOLSTEIN

**FILED**
JUL 1 5 2014

FILED: _____          _____
                                          DEPUTY CLERK                      DY. CLERK

## MOTION TO APPOINT SPECIAL PROCESS SERVER

NOW INTO COURT, through undersigned counsel come plaintiff, Gilbert V. Andry, IV,

who requests that the appointment of Special Process Server be made to the following individuals,

who are of the full age of majority and not parties in this matter:

**Angela Ferguson or a representative of
Rapid Response Attorney Services
20180 Park Row, Suite 5523
Katy, Texas 77491**

The purpose for the special appointment is to perfect service of the original Petition for Defamation

in this matter to defendant, Mark Holstein, at 1014 Harbour Sands Dr., Houston, Texas.

WHEREFORE, plaintiffs request that this Honorable Court appoint Rapid Response

Attorney Services as special process servers in the above entitled matter.

Respectfully submitted,

GIBBY ANDRY, THE ANDRY LAW FIRM, LLC

By: _____
GILBERT V. ANDRY, IV (LSBA #20056)
828 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 522-1000
Facsimile: (504) 522-8000
COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been served on counsel for all
parties to this proceeding by placing same in the United States Mail, postage prepaid this ____ day
of _____, 2014.

_____
GILBERT V. ANDRY, IV

25th JUDICIAL DISTRICT COURT FOR THE PARISH OF PLAQUEMINES

STATE OF LOUISIANA

NO.  61-466                                                    DIVISION "B"

GILBERT V. ANDRY, IV and THE ANDRY LAW FIRM, LLC

VERSUS

BP EXPLORATION & PRODUCTION, INC., BP AMERICA PRODUCTION
COMPANY, MICHAEL KUNSELMAN AND MARK HOLSTEIN

FILED: _____          _____
                                     DEPUTY CLERK

## O R D E R

Considering the above and foregoing Motion to Appoint Special Process server:

**IT IS HEREBY ORDERED**, that Angela Ferguson or a representative of Rapid Response

Attorney Services be and is hereby appointed as special process server in the above captioned matter

to perfect service on defendant, Mark Holstein.

**READ, RENDERED AND SIGNED** this _16th_ day of _July_, 2014 in Belle

Chasse, Louisiana.

_____
JUDGE , *proj judge*

*for Div "B"*

2

*CITATION*

FOR RETURN

**GILBERT V ANDRY IV ET AL**

*Versus*

**BP EXPLORATION & PRODUCTION INC
ET AL**



Case: **00061466**
Division: **B**
25th Judicial District Court
Parish of Plaquemines
State of Louisiana



To: BP EXPLORATION & PRODUCTION INC
*THROUGH ITS REGISTERED AGENT FOR SERVICE
CT CORPORATION SYSTEM
5615 CORPORATE BLVD STE 400B
BATON ROUGE LA 70808*

*YOU ARE HEREBY SUMMONED to comply with the demand contained in the Petition of which a true and correct copy (exclusive of exhibits) accompanies this Citation, or make an appearance either by filing a pleading, or otherwise, in the 25th Judicial District Court in and for the Parish of Plaquemines, State of Louisiana, within fifteen (15) days after the service hereof, under the penalty of default.*

*WITNESS MY OFFICIAL HAND AND SEAL OF OFFICE, at Belle Chasse, Louisiana, on this Tuesday, June 24, 2014.*

*Req. By:*
*GILBERT V ANDRY IV
(504) 522-1000
ATTY FOR PLAINTIFF*

I made service on the named party through the
CT Corporation
by tendering a copy of this document to ☐ ANTOINE PIERCE
☐ CHASITY CAILLOUET ☐ TREVOR CAROUTTE

*Deputy Clerk of Court for
Dorothy M. Lundin, Clerk of Court
P.O. Box 40
Belle Chasse, LA 70037*

E. Cummins
Deputy Sheriff, Parish of East Baton Rouge, Louisiana

**Service Information**

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20____ served the above named party as follows:

**Personal Service** on the party herein named _____
**Domiciliary Service** on the party herein named by leaving the same at his/her domicile in the parish in the hands of _____, a person apparently over the age of seventeen years, living and residing in said domicile and whose name and other facts connected with this service, I learned by interrogating the said person, said party herein being absent from his/her residence at the time of said service.

Returned:
Parish of _____ this _____ day of _____, 20____.

Service      $ _____
                                    By: _____
Mileage     $ _____                    *Deputy Sheriff*

Total         $ _____

FILED
JUL 07 2014

DY. CLERK

[ FILED COPY ]

25TH JUDICIAL DISTRICT COURT – PARISH OF PLAQUEMINES

STATE OF LOUISIANA

No: 61-466

Division "B"

GILBERT V. ANDRY, IV AND THE ANDRY LAW FIRM, LLC
-versus-

BP EXPLORATION & PRODUCTION, INC., BP AMERICA PRODUCTION COMPANY,
MICHAEL KUNSELMAN AND MARK HOLSTEIN

FILED:_____          DEPUTY CLERK:_____

**FILED**

**JUL 09 2014**

**AFFIDAVIT**

STATE OF LOUISIANA

PARISH OF PLAQUEMINES

   **BEFORE ME,** the undersigned authority, duly commissioned and qualified in
and for the Parish of Plaquemines, State of Louisiana.

   **PERSONALLY CAME AND APPEARED:** David C. Bell III, a person of the
full age of majority, who after being duly sword, did depose and say:

1. That Natalie Biondolillo, BS, LPI, and/or agents of Exemplar Enterprises, Inc.,
   was appointed as Special Deputy in the above captioned matter on July 02,
   2014 and received process service documents on July 02, 2014.

2. That David C. Bell III, LPI of Exemplar Enterprises, Inc. did serve certified
   true copies of the following pleadings upon, Michael Kunselman, personal
   service, on the **03rd day of July in the year 2014 at 15:20 hours/03:20
   p.m.**

3. Personal service was executed on Michael Kunselman in front of the State
   Capitol Building State Capitol Drive, Baton Rouge, LA 70802 (video
   documentation obtained).

4. Mr. Kunselman was served with a Petition for Defamation.

_____
DAVID C. BELL III, LPI

Sworn to and subscribed before me

This ___ day of _____, 2014

_____
NOTARY

**FOR RETURN**

**GILBERT V ANDRY IV ET AL**

*Versus*

**BP EXPLORATION & PRODUCTION INC
ET AL**



Case: **00061466**
Division: **B**
25th Judicial District Court
Parish of Plaquemines
State of Louisiana

To:   MICHAEL KUNSELMAN
      VIA SPECIAL PROCESS SERVER

YOU ARE HEREBY SUMMONED to comply with the demand contained in the Petition of which a true and correct copy (exclusive of exhibits) accompanies this Citation, or make an appearance either by filing a pleading, or otherwise, in the 25th Judicial District Court in and for the Parish of Plaquemines, State of Louisiana, within fifteen (15) days after the service hereof, under the penalty of default.

WITNESS MY OFFICIAL HAND AND SEAL OF OFFICE, at Belle Chasse, Louisiana, on this Wednesday, July 02, 2014.

Req. By:
GILBERT V ANDRY IV
(504) 522-1000
ATTY FOR PLAINTIFF

*Deputy Clerk of Court for*
Dorothy M. Lundin, Clerk of Court
P.O. Box 40
Belle Chasse, LA  70037

---

### Service Information

Received on the **02** day of **JULY**, 20 **14** and on the **03** day of **JULY**, 20 **14** served the above named party as follows:

**Personal Service** on the party herein named **MICHAEL KUNZELMAN**

**Domiciliary Service** on the party herein named by leaving the same at his/her domicile in the parish in the hands of **N/A**, a person apparently over the age of seventeen years, living and residing in said domicile and whose name and other facts connected with this service, I learned by interrogating the said person, said party herein being absent from his/her residence at the time of said service.

Returned:
Parish of _____ this _____ day of _____, 20 ____.

Service      $_____

Mileage      $_____           By: _____
                                        *Deputy Sheriff*

Total        $_____

*MR. KUNZELMAN WAS PERSONALLY SERVED WITH THE PETITION FOR DEFAMATION IN FRONT OF THE LA STATE CAPITOL BLDG ON STATE CAPITOL DRIVE, BATON ROUGE, LA 70802 ON THURSDAY JULY 03, 2014 AT 15:20 HOURS /03:20 P.M.*

**FILED**
JUL 0 9 2014

[ FILED COPY ]

25th JUDICIAL DISTRICT COURT FOR THE PARISH OF PLAQUEMINES

STATE OF LOUISIANA

NO.  61-466                                              DIVISION "B"

GILBERT V. ANDRY, IV and THE ANDRY LAW FIRM, LLC

VERSUS

BP EXPLORATION & PRODUCTION, INC., BP AMERICA PRODUCTION
COMPANY, MICHAEL KUNSELMAN AND MARK HOLSTEIN

FILED

JUL 0 2 2014

FILED: _____        _____
                                   DEPUTY CLERK        DY CLERK

## MOTION TO APPOINT SPECIAL PROCESS SERVER

NOW INTO COURT, through undersigned counsel come plaintiff, Gilbert V. Andry, IV,

who requests that the appointment of Special Process Server be made to the following individuals,

who are of the full age of majority and not parties in this matter:

**David Bell and/or
Natalie Biondolillo
Exemplar Enterprises, Inc.
887 Avenue A
Westwego, LA 70096-0467**

The purpose for the special appointment is to perfect service of the original Petition for Defamation

in this matter to defendant, Michael Kunselman.

WHEREFORE, plaintiffs request that this Honorable Court appoint David Bell and/or

Natalie Biondolillo of Exemplar Enterprises, Inc., as special process servers in the above entitled

matter.

Respectfully submitted,

GIBBY ANDRY, THE ANDRY LAW FIRM, LLC

By: _____

GILBERT V. ANDRY, IV (LSBA #20056)
828 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 522-1000
Facsimile: (504) 522-8000
**COUNSEL FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the above and foregoing has been served on counsel for all parties to this proceeding by placing same in the United States Mail, postage prepaid this _____ day of _____, 2014.

GILBERT V. ANDRY, IV

25th JUDICIAL DISTRICT COURT FOR THE PARISH OF PLAQUEMINES

STATE OF LOUISIANA

NO.  61-466                                                    DIVISION "B"

GILBERT V. ANDRY, IV and THE ANDRY LAW FIRM, LLC

VERSUS

BP EXPLORATION & PRODUCTION, INC., BP AMERICA PRODUCTION
COMPANY, MICHAEL KUNSELMAN AND MARK HOLSTEIN

FILED: _____          _____
                                          DEPUTY CLERK

**FILED**
JUL 0 2 2014
DY. CLERK

## O R D E R

Considering the above and foregoing Motion to Appoint Special Process server:

**IT IS HEREBY ORDERED**, that David Bell and/or Natalie Biondolillo of Exemplar

Enterprises, Inc. are hereby appointed as special process servers in the above captioned matter.

**READ, RENDERED AND SIGNED** this 2nd day of July , 2014 in Belle

Chasse, Louisiana.

_____
JUDGE   Duty Judge   for "B"