# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig | * | MDL NO. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION J |
| | * | |
| Applies to: | * | JUDGE BARBIER |
| | * | |
| Edward Wisner Donation v. BP Exploration | * | CHIEF MAGISTRATE JUDGE |
| & Production Inc. | * | WILKINSON |
| | * | |
| No. 2:14-cv-1525 | * | |
| | * | |

---

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR BREACH OF CONTRACT, SPECIFIC PERFORMANCE, AND INJUNCTION

# TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................................................... 1

BACKGROUND .................................................................................................... 2

PROCEDURAL HISTORY ................................................................................. 5

ARGUMENT ......................................................................................................... 6

I.       LEGAL STANDARD ................................................................................ 6

II.      THE COURT SHOULD DISMISS PLAINTIFF'S JULY 2014 COMPLAINT
         FOR FAILURE TO STATE A CLAIM................................................... 7
         A.     The Court Should Dismiss Breaches "A" Through "K"......................... 8
         B.     The Court Should Dismiss Prayers for Relief "1" Through "8"............ 15

III.     PLAINTIFF'S JULY 2014 COMPLAINT CONSTITUTES
         IMPERMISSIBLE CLAIMS-SPLITTING AND SHOULD BE DISMISSED ........ 18

IV.      EVEN IF THE COURT ALLOWS THIS CASE TO PROCEED, IT
         SHOULD DISMISS ANY CLAIMS BEYOND THOSE EXPRESSLY
         AVAILABLE UNDER THE ACCESS AGREEMENT OR LOUISIANA
         CONTRACT LAW ................................................................................. 20

V.       THE COURT SHOULD DISMISS THIS CASE FOR LACK OF
         CAPACITY ................................................................................................ 21

CONCLUSION ...................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Cannon Cochran Mgmt. Servs., Inc.*,
  CIV.A. No. 09-4614, 2010 WL 1254527 (E.D. La. Mar. 25, 2010) .........................................7

*Angers ex rel. Angers v. Lafayette Consol. Gov't*,
  No. 07-0949, 2007 WL 2908805 n. 1 (W.D. La. Oct. 3, 2007) .................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................................... 6, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 6, 14

*Bonner v. Henderson*,
  147 F.3d 457 n.14 (5th Cir. 1998) ........................................................................................ 21

*Brown v. Lafayette City-Parish Consol. Gov't*,
  CIV. No. 6:13-2436, 2013 WL 7964514 (W.D. La. Dec. 5, 2013) .........................................7

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
  394 F.3d 285 (5th Cir. 2004)..................................................................................................4

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
  704 F.3d 413 (5th Cir. 2013)..................................................................................................2

*Darby v. Pasadena Police Dep't*,
  939 F.2d 311 (5th Cir. 1991)..................................................................................................7

*Furniture and Accessory Retail Group, Inc. v. Lane Furniture Indus., Inc.*,
  No. 11-60441, 2012 U.S. App. LEXIS 9252 (5th Cir. May 4, 2012) .......................................8

*Grand Heritage Mgmt., LLC v. Murphy*,
  06 CIV. 5977NRB, 2007 WL 3355380 (S.D.N.Y. Nov. 7, 2007) ...........................................7

*Huber v. Calcasieu Marine Nat'l. Bank of Lake Charles*,
  262 So. 2d 404 (La. App. 3 Cir. 1972)................................................................................. 21

*In re Oil Spill By The Rig Deepwater Horizon in Gulf of Mexico*,
  MDL No. 2179, 2012 WL 5960192 (E.D. La. Nov. 28, 2012)................................................2

*In re Therese D. Steckler Trust*,
  678 So. 2d 620 (La. App. 4 Cir. 7/31/96)....................................................................... 21, 22

*Joe Conte Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
  689 So. 2d 60 (La. App. 4 Cir. 1997)
  *writ denied sub nom. Conte v. Toyota Motor Sales, U.S.A.*, 692 So. 2d 1090 (La. 1997) .. 21, 22

*Langston v. Ins. Co. of N. Am.*,
  827 F.2d 1044 (5th Cir. 1987)............................................................................................. 18

*Matter of Super Van Inc.*,
   92 F.3d 366 (5th Cir. 1996) ............................................................................... 19

*Ocean Drilling & Exploration Co., Inc. v. Mont Boat Rental Servs., Inc.*,
   799 F.2d 213 (5th Cir. 1986) ............................................................................... 20

*Oden Metro Turfing, Inc. v. Cont'l Cas. Co.*,
   CIV.A. No. 12-1547, 2012 WL 5423704 (W.D. La. Oct. 10, 2012) ........................................ 7

*Oliney v. Gardner*,
   771 F.2d 856 (5th Cir. 1985) (citation omitted) ........................................ 18, 19, 20

*Olympic Coast Inv., Inc. v. Seipel*,
   208 F. App'x 569 (9th Cir. 2006) .......................................................................... 21

*PaineWebber Inc. v. Bybyk*,
   81 F.3d 1193 (2d Cir. 1996) ................................................................................. 7

*Raby v. Licon*,
   57 F. App'x 210 (5th Cir. 2002) ........................................................................... 6

*Rives v. Franklin Life Ins. Co.*,
   792 F.2d 1324 (5th Cir. 1986) .............................................................................. 21

*S. Snow Mfg. Co. v. SnoWizard Holdings*,
   921 F. Supp. 2d 548 (E.D. La. 2013) ..................................................................... 11

*U.S. Bank Nat'l. Ass'n v. Dumas*,
   2012 CA 1902, 2014 WL 1327966 (La. App. 1 Cir. Apr. 3, 2014) ...................................... 21

*UHS of New Orleans, Inc. v. Am. Med. Clinics, Inc.*,
   CIV. A. 98-1441, 1998 WL 832573 (E.D. La. Nov. 24, 1998) ............................................ 7

*United States v. Am. Commercial Lines, LLC*,
   No. 12-30358 slip op. at 8 (5th Cir. July 16, 2014) .................................................. 19

*Wells Fargo Bank, N.A. v. CCC Atl., LLC*,
   CIV.A. No. 12-521 JEI/JS, 2013 WL 6147751 (D.N.J. Nov. 22, 2013) .................................... 7

*Westfall v. Miller*,
   77 F.3d 868 (5th Cir. 1996) .................................................................................. 6

*Williams v. Classic Locksmith*
   405 Fed. App'x 884 (5th Cir. 2010) ....................................................................... 11

**Statutes**

33 U.S.C. § 1321(c)(2)(A) ...................................................................................... 3, 10

33 U.S.C. § 2701 ................................................................................................... 2

La. Rev. Stat. § 9:1731 .......................................................................................... 22

**Other Authorities**

Clean Water Act ("CWA") § 311 ............................................................................... 2

Oil Pollution Act of 1990, Pub. L. No. 101-380, 104 Stat. 484 (Aug. 18, 1990) .......................... 2

S. Rep. No. 101-94 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722 .................................................. 2

**Rules**

Fed. R. Civ. P. 17(b) ................................................................................................................. 22

Fed. R. Civ. P. 17(b)(3) ............................................................................................................ 22

Fed. R. Civ. Proc. 12(b)(6) ..................................................................................................... 6, 7

La. Civ. Code Art. 2024 .............................................................................................................. 12

La. Civ. Code Art. 2054 .............................................................................................................. 13

La. Code Civ. Proc. Art. 699 ...................................................................................................... 23

## INTRODUCTION

BP Exploration & Production Inc. ("BPXP") respectfully submits this Memorandum in support of its motion to dismiss Plaintiff's Complaint for Breach of Contract, Specific Performance, and Injunction (hereinafter "July 2014 Complaint").  Plaintiff's July 2014 Complaint purports to assert contract claims related to a now-terminated access agreement that gave BPXP the right to access Plaintiff's property for the sole purpose of complying with BPXP's clean-up obligations under the Oil Pollution Act and the Clean Water Act.

The Court should dismiss this case in its entirety because Plaintiff, a trust, lacks capacity to sue.  Even if the Court does not dismiss this case entirely for lack of capacity, all of the breaches alleged and all prayers for relief Plaintiff asserts are insufficiently pleaded and/or rest on obligations that are not imposed by the Access Agreement.  Plaintiff's July 2014 Complaint is premised upon the argument that the Access Agreement gives Plaintiff the sole authority to determine when BPXP's clean-up obligations have been satisfied and the ability to compel BPXP to perform cleanup obligations notwithstanding instructions to the contrary from the Federal On-Scene Coordinator.  But nothing in the agreement supports this premise, and the Plaintiff's interpretation, as alleged in the July 2014 Complaint, blatantly contradicts the plain meaning of the agreement.  BPXP's clean-up obligations are dictated by clearly defined legal standards, and nothing in this Access Agreement abrogates or modifies those standards.  BPXP, therefore, asks the Court to dismiss Plaintiff's July 2014 Complaint in its entirety because Plaintiff's July 2014 Complaint fails for the following reasons: (a) Plaintiff fails to state valid claims; (b) Plaintiff's July 2014 Complaint constitutes impermissible claim splitting; and (c) Plaintiff lacks capacity to bring this suit.

Separately, BP intends on filing its opposition to Plaintiff's Expedited Motion for Preliminary Injunction on or before July 28, consistent with this Court's order.  (Rec. Doc. 13161.)

## BACKGROUND

Following the *Deepwater Horizon* oil spill, BPXP was designated a "responsible party" under the Oil Pollution Act ("OPA"),[1] and the federal government took control of all efforts to clean up oil and protect the Gulf Coast environment, including those operations carried out by BPXP.[2]  Congress enacted OPA "to create a single Federal law providing cleanup authority, penalties, and liability for oil pollution."[3]  When Congress passed OPA, it included within the OPA session law both the provisions now separately codified as OPA and certain provisions amending the preexisting and separate Clean Water Act ("CWA") § 311.[4]  The CWA reserves to the federal government control over all response operations to a significant oil spill.  This is especially true for so-called "substantial" spills.  In such circumstances, federal law specifies that "*[t]he President shall direct all Federal, State, and private actions* to remove" a substantial spill.[5]

It was in this context that BPXP executed access agreements with various entities in order to accommodate landowners, secure uninterrupted access to property, and facilitate compliance with its obligations according to OPA, the CWA, and under the direction of the President's

---

[1] 33 U.S.C. § 2701 et seq.

[2] *See Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 418 (5th Cir. 2013) ("In the face of an extensive oil spill, federal law directs the President to ensure the effective and immediate removal of the oil in accordance with a National Contingency Plan and to direct all federal, state and private actions in that regard. . . Pursuant to these plans, a Federal On-Scene Coordinator ('FOSC') will direct and coordinate all efforts at the scene of the discharge."); *In re Oil Spill By The Rig Deepwater Horizon in Gulf of Mexico*, MDL No. 2179, 2012 WL 5960192, at *9 (E.D. La. Nov. 28, 2012) (describing the establishment of the Unified Area Command and appointment of the FOSC and the National Incident Commander).

[3] S. Rep. No. 101-94, at 9 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 730.

[4] *See* Oil Pollution Act of 1990, Pub. L. No. 101-380, 104 Stat. 484 (Aug. 18, 1990) (OPA Sections 2002, 4201-4202, 4204, 4301, 4304-06 each amend Clean Water Act Section 311).

[5] 33 U.S.C. § 1321(c)(2)(A) (emphasis added).

delegate, the Federal On-Scene Coordinator.[6]   One of those entities was Plaintiff.   In August

2010, BPXP and Plaintiff entered an agreement that allowed BPXP to access Plaintiff's property

for the sole purpose of conducting clean-up operations related to the *Deepwater Horizon* Oil

Spill.   That agreement—part of which Plaintiff attached to its July 2014 Complaint—is entitled

"Right-of-Access for Oil Spill Cleanup Operations" (hereinafter "Access Agreement").

The key terms in this Access Agreement are as follows:

a)   *Sole Purpose for Clean-Up Operations*

**Paragraph 1**: "In consideration of the need for prompt action to address the presence of oil from the BP Deepwater Horizon oil spill (hereafter 'the oil spill'), Grantor does hereby grant unto BP Exploration & Production Inc. ('Grantee'), ***a right of access for the purpose of cleanup operations related to the oil spill***.   This right of access does not grant permission for any other purposes, including research on the impacts of the oil spill."

b)   *Monitor Clean-Up Operations*

**Paragraph 7**: "Grantee recognizes that it is necessary for Grantor to have personnel, additional equipment and appropriate consultants ***to monitor Grantee's cleanup operations***.   Grantee will reimburse Grantor for all such expenses and increased costs, including overtime, incurred by Grantor in connection with cleanup operations. . . .   Grantor shall also have the right, at Grantee's expense, to have consultants of Grantor's choice ***monitor Grantee's operations***."

c)   *Highest Industry Standards To Minimize Damage to the Environment While Carrying Out Operations*

**Paragraph 8**: "The highest industry standards shall be used ***to insure environmentally sensitive practices while carrying out operations on the Wisner Property***."

d)   *Assessing and Restoring Damage Caused By Oil Spill Clean-Up Operations*

**Paragraph 9**: "Grantee shall be responsible for all reasonable costs and expenses associated with assessing damage to Wisner property ***caused by oil spill cleanup operations***.   Grantee shall be responsible for all

---

[6] *See* July 2014 Complaint ¶ 12.

3

> reasonable costs and expenses associated with restoring said damage to said property."

As these provisions show, the Access Agreement—by title and express language—granted BPXP "a right of access for the purpose of cleanup operations related to the oil spill." It secured Plaintiff's consent to BPXP accessing Plaintiff's property for clean-up operations and required BPXP to reimburse the cost for Plaintiff to monitor those clean-up operations. It established certain protocols to ensure that the environment, such as bird nesting areas and sensitive marshlands, would be protected during response operations. There is no provision in the Access Agreement that creates any oil-spill cleanup obligation at all, much less any oil-spill cleanup obligation different or independent from BPXP's cleanup obligation under the OPA/CWA and direction of the Federal On-Scene Coordinator.

BPXP conducted "massive oil spill response operations" on Plaintiff's land under the direction of the Federal On-Scene Coordinator.[7] On May 21, 2014, after nearly four years of cleanup operations, the acting Federal On-Scene Coordinator determined that "no further removal activities appropriate on the property."[8] Pursuant to that direction, BPXP sent Plaintiff a letter dated May 22, 2014, informing Plaintiff that BPXP no longer needed access to the property and requesting that the Plaintiff "provide the following information within 30 days of the date of this letter: (1) all requests for reimbursement of expenses reimbursable under the Agreement, including a detailed accounting thereof; (2) all requests for specific information pursuant to the Agreement; and (3) notice of any claims for indemnification by BPXP under the Agreement."[9]

---

[7] July 2014 Complaint ¶ 8.

[8] July 2014 Complaint ¶ 31.

[9] A copy of BP's May 22, 2014 letter is attached hereto as Exhibit A. The Court can consider the contents of the letter because it is referred to in the Complaint and is central to the Plaintiff's claims. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to

## PROCEDURAL HISTORY

This is not the Plaintiff's first filing related to damages arising out of the *Deepwater Horizon* incident.  More than three years ago, on April 19, 2011, Plaintiff filed its Answer In Limitation and Claim In Limitation, and Cross Claim For Damages, Declaratory and Injunctive Relief ("Answer In Limitation").  (Rec. Doc. 326).  Plaintiff's Answer in Limitation seeks much of the same relief as its July 2014 Complaint, including: (a) contamination assessment costs; (b) contamination removal costs; (c) and lost rent on fishing camps, oyster leases, surface leases and on the lease of the Port of Fourchon.  Two years later, on April 20, 2013, Plaintiff asserted a claim for non-governmental economic loss and property damage (Bundle B1) as an "owner, lessor, or lessee of real property alleged to be damaged, harmed or impacted, physically or economically, including lessees of oyster beds."  (Rec. Doc. 133248.)  At the same time, the Plaintiff also asserted a claim for loss of tax revenue, loss of income, or loss of use claims as a local governmental entity.  (Rec. Doc. 401.)  On April 20, 2013, Plaintiff also filed a complaint for damages pursuant to the OPA and seeking economic, compensatory and punitive damages. (Rec. Doc. 1.)

This latest set of claims started on June 6, 2014, when Plaintiff filed an Expedited Motion for Specific Performance in its OPA action, Case No. 13-1971.  (Rec. Doc. 13002.)  Judge Barbier referred that motion to this Magistrate Judge Division on June 16, 2014.  (Rec. Doc. 13020.)  At a pretrial conference before Magistrate Judge Wilkinson, Plaintiff was warned that its June 6th motion for specific performance was procedurally deficient and it was suggested Plaintiff file a new complaint for the relief it sought in its motion.  (*See* Rec. Doc. 13088.)  On July 1, 2014, Plaintiff filed the July 2014 Complaint.  Including the July 2014 Complaint,

---

dismiss are considered part of the pleadings if they are referred to in the plaintiffs' complaint and are central to her claim.").

Plaintiff now has at least five complaints pending in MDL 2179 related to the *Deepwater Horizon* incident.   Judge Barbier referred the July 2014 Complaint to this Magistrate Judge Division.  (Rec. Doc. 13099.)  Pursuant to Judge Barbier's instructions, (Rec. Doc. 13088), on July 9, 2014, BPXP submitted a letter declining to consent to have the case proceed in this Magistrate Judge Division under Rule 73 because Plaintiff's complaint included prayers for relief based on OPA and general maritime law and which should be heard by Judge Barbier, in due course along with similar claims currently stayed in MDL 2179.   Thereafter, Magistrate Judge Wilkinson issued an order instructing Plaintiff to either dismiss its motion for specific performance or advise the Court that Plaintiff would file the motion in the present case.  (Rec Doc. 13122.)  On July 17, 2014, Plaintiff moved to dismiss without prejudice its Motion for Specific Performance in accordance with Magistrate Judge Wilkinson's order.  (Rec. Doc. 13153.)

## **ARGUMENT**

## I.   **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), Plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[10]   A court "need not strain to find inferences favorable to the plaintiff"[11] and need not "accept as true a legal conclusion couched as a factual allegation."[12]   It is the "plaintiff's obligation to provide the grounds of his entitlement to relief."[13]   "Rule 12(b)(6) dismissal is proper where the facts alleged, if true, do not entitle the plaintiff to a legal remedy."[14]   "[O]nce presented with a motion to dismiss under Rule 12(b)(6), a plaintiff cannot expect the Court to scour the jurisprudence to

---

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).
[11] *Westfall v. Miller*, 77 F.3d 868, 870 (5th Cir. 1996).
[12] *Ashcroft*, 556 U.S. at 678.
[13] *Bell Atl. Corp.* 550 U.S. at 555 (citation, quotations and internal modifications omitted).
[14] *Raby v. Licon*, 57 F. App'x 210 (5th Cir. 2002).

determine whether his scanty factual allegations yield a legal remedy, while he offers no support for his position."[15]

"[L]ack of capacity to be sued is properly brought as a 12(b)(6) motion."[16]   And, "[w]here 'the intent of the parties can be determined from the face of [an] agreement, interpretation is a matter of law,' and a claim turning on that interpretation may be resolved on a motion to dismiss."[17]   Rule 12(b)(6) is also the correct procedure for challenging a prayer for relief.[18]   In sum, "[t]he Court may dismiss based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[19]

## II.   THE COURT SHOULD DISMISS PLAINTIFF'S JULY 2014 COMPLAINT FOR FAILURE TO STATE A CLAIM

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief,"[20] and must contain more than "labels and conclusions."[21]   A complaint is insufficient, therefore, "if it tenders naked assertions devoid of further factual enhancement."[22]   Thus, complaint may be dismissed due to "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[23]   Plaintiff's July 2014 Complaint suffers both defects, as detailed below. Plaintiff's July 2014 Complaint fails for lack

---

[15] *Alexander v. Cannon Cochran Mgmt. Servs., Inc.*, CIV.A. No. 09-4614, 2010 WL 1254527 at *3 (E.D. La. Mar. 25, 2010).

[16] *Oden Metro Turfing, Inc. v. Cont'l Cas. Co.*, CIV.A. No. 12-1547, 2012 WL 5423704 at *2 (W.D. La. Oct. 10, 2012) *report and recommendation adopted*, No. 12-1547, 2012 WL 5424616 (W.D. La. Nov. 1, 2012); *see also Angers ex rel. Angers v. Lafayette Consol. Gov't*, No. 07-0949, 2007 WL 2908805 at *1 n. 1 (W.D. La. Oct. 3, 2007) (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 314 (5th Cir. 1991)).

[17] *Grand Heritage Mgmt., LLC v. Murphy*, 06 CIV. 5977NRB, 2007 WL 3355380 at *4 (S.D.N.Y. Nov. 7, 2007) (citing *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996)); *see also Wells Fargo Bank, N.A. v. CCC Atl., LLC*, CIV.A. No. 12-521 JEI/JS, 2013 WL 6147751 at *2 (D.N.J. Nov. 22, 2013) (holding that court's dismissal, which rested on plain meaning of the contract, was not clear error).

[18] *Brown v. Lafayette City-Parish Consol. Gov't*, CIV. No. 6:13-2436, 2013 WL 7964514 at *1 (W.D. La. Dec. 5, 2013) *report and recommendation adopted*, CIV. No. 6:13-2436, 2014 WL 993522 (W.D. La. Mar. 13, 2014).

[19] *UHS of New Orleans, Inc. v. Am. Med. Clinics, Inc.*, CIV. A. 98-1441, 1998 WL 832573 at *1 (E.D. La. Nov. 24, 1998).

[20] Federal Rule of Civil Procedure 8(a)(2).

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted).

[22] *Id.* (quotation marks, citation, and internal modification omitted).

[23] *UHS of New Orleans, Inc. v. Am. Med. Clinics, Inc.*, CIV. A. 98-1441, 1998 WL 832573 at *1 (E.D. La. Nov. 24, 1998).

of a cognizable legal theory because the breaches Plaintiff alleges and relief Plaintiff requests are not related to any obligations under the Access Agreement.  But even where Plaintiff's alleged breaches or requests for relief are related to an obligation under the Access Agreement, Plaintiff fails to plead facts sufficient to survive a motion to dismiss—at times, pleading no facts to support its conclusory allegations of breach and prayers for relief.  Accordingly, this Court should dismiss Plaintiff's July 2014 Complaint altogether.

### A.  The Court Should Dismiss Breaches "A" Through "K"

#### 1.  *The breaches alleged in paragraphs 35(b) and 35(d)-(g) are not related to any obligation under the Access Agreement or any facts in the July 2014 Complaint and should be dismissed.*

The breach of contract claims asserted in paragraphs 35(b) and 35(d)-(g) are based upon alleged obligations that are not imposed by the Access Agreement.  As such, these claims should be dismissed.[24]

In paragraph 35(b), Plaintiff claims BPXP breached the Access Agreement by "[f]ailing to independently assess that the Property was fully remediated."  The Access Agreement does not contain any term requiring BPXP to independently assess Plaintiff's property to determine whether remediation is complete.  As such, the alleged breach is unrelated to any obligation under the Access Agreement and should be dismissed.

In paragraph 35(d), Plaintiff claims BPXP breached the Access Agreement by "[i]nterfering with the Donation's ability to assess whether the property has been fully remediated and restored."[25]  No provision in the Access Agreement requires BPXP to enable Plaintiff to assess its property.  The Access Agreement contains provisions about sharing data

---

[24] *Furniture and Accessory Retail Group, Inc. v. Lane Furniture Indus., Inc.*, No. 11-60441, 2012 U.S. App. LEXIS 9252, at *2 (5th Cir. May 4, 2012) (affirming 12(b)(6) dismissal of breach of contract action because "the alleged misconduct does not violate the unambiguous contract").

[25] July 2014 Complaint ¶ 35(d).

and the inclusion of Plaintiff in certain meetings related to clean-up operations,[26] but Plaintiff has pleaded no facts suggesting BPXP failed to meet those obligations. On the contrary, Plaintiff states affirmatively that BPXP has met its data sharing obligations.[27] Thus, the claim for that alleged breach should be dismissed.

In paragraphs 35(e)-(g), Plaintiff claims BPXP breached the Access Agreement by (e) "[d]enying reasonable and appropriate proposed assessment and remediation plans"; (f) "[r]efusing to assess and remediate as outlined in the Wisner Science's Team's Remedial Plan for Breach 1 DWH Oil Contamination, Fourchon Beach, Louisiana"; and (g) "[r]efusing to assess and remediate as outlined in the Wisner Science's Team's Scientific Assessment and Remediation of MC252 Oil on Fourchon Beach, Wetlands and Offshore Region, Louisiana."

But no provision of the Access Agreement requires BPXP to assess and remediate the property in accordance with Plaintiff's plans, or allows Plaintiff to dictate whether any clean-up operations must be performed or have been completed. Indeed, it is the President and his designee, the Federal On-Scene Coordinator, who have the exclusive authority to direct clean-up operations.[28]

The Access Agreement allows Plaintiff *to monitor* clean-up operations in order to protect the property from damage due to response operations occurring under the direction of the Federal On-Scene Coordinator.[29] It also provides for Plaintiff to receive "prior notice of" and "the right *to attend* any meetings, briefings or events regarding operations" on its property.[30] The Access Agreement did not, however, provide any right for the Plaintiff to direct those operations.

---

[26] Access Agreement ¶¶ 2-6.
[27] July 2014 Complaint ¶ 28 ("The Access Agreement also required BP to provide Wisner with documentation related to the location, removal, and remediation of all oil from Wisner's Property. For the past four years, it is believed that BP provided this documentation to Wisner.").
[28] 33 U.S.C. § 1321(c)(2)(A).
[29] *See* Access Agreement ¶ 7.
[30] Access Agreement ¶ 7.

Moreover, the Access Agreement does not contain any terms requiring BPXP to assess and remediate any damages other than those caused by cleanup operations:

> Grantee shall be responsible for all reasonable costs and expenses associated with assessing damage to Wisner property **_caused by oil spill cleanup operations_**.  Grantee shall be responsible for all reasonable costs and expenses associated with restoring said damage to said property.[31]

In other words, BPXP agreed only to pay reasonable costs and expenses associated with assessing and restoring damage "**_caused by oil spill cleanup operations_**" such as, for example, "damage to vegetation by vehicles."[32]  BPXP never agreed to assess and remediate in accordance with the Wisner Science Team's plan, which reaches far beyond damages caused by cleanup operations.

The Access Agreement further requires BPXP to use the highest industry standards "to ensure environmentally sensitive practices while carrying out operations."[33]  This provision does not give Plaintiff "full operational rights" regarding cleanup.[34]  Rather, it directs BPXP to use "the highest industry standards" to minimize damages to the environment "while carrying out operations" under the direction of the Federal On-Scene Coordinator.  Moreover, Plaintiff pleaded no facts to support that the assessment or remediation plans BPXP allegedly refused were coextensive with "the highest industry standards" or that the plans BPXP did use pursuant to direction by the Federal On-Scene Coordinator were not consistent with "highest industry standards" to ensure environmentally sensitive practices.

The following reservation also confirms that the Access Agreement was never intended to grant Plaintiff the authority to dictate when clean-up operations ended: "Nothing herein shall act as a waiver or release of any obligation Grantee may owe Grantor as a result of oil released

---

[31] Access Agreement ¶ 9 (emphasis added).
[32] Access Agreement ¶ 9 (emphasis added).
[33] Access Agreement ¶ 8.
[34] July 2014 Complaint ¶ 14.

from the Deepwater Horizon incident."[35]  Such a reservation would be unnecessary, or even nonsensical, if the Access Agreement gave Plaintiff *carte blanche* to dictate when clean-up operations ended and required BPXP to shoulder all related assessment and remediation costs.

In sum, the breach of contract claims asserted in paragraphs 35(b) and 35(d)-(g) seek to hold BPXP liable for obligations that are not stated anywhere in the Access Agreement, and the claims should be dismissed.

### 2. The breach alleged in paragraph 35(a) should be dismissed because it is not related to any obligation under the Access Agreement and the related allegations in Plaintiff's complaint are unsupported legal conclusions.

In paragraph 35(a), Plaintiff claims BPXP breached the Access Agreement by "[c]anceling the Access Agreement."  Plaintiff's assertion is contrary to Louisiana law. The Access Agreement is silent as to its duration.  As a result, the contract was terminable at the will of either party as a matter of law.  La. Civ. Code art. 2024 ("A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party.").  The Fifth Circuit's decision in *Williams v. Classic Locksmith* is illustrative.[36]  In *Classic Locksmith*, the Fifth Circuit held that a contract for delivering mobile homes and travel trailers to FEMA in the wake of Hurricane Katrina was a contract of unspecified duration terminable at the will of either party because FEMA's need for trailers "cannot be described as a single definable moment at which the contract would terminate."[37]  Similarly, BPXP's need to access Plaintiff's property "cannot be described as a single definable moment at which the contract would terminate;" thus, the agreement was terminable at will by either party.[38]

---

[35] Access Agreement ¶ 9.
[36] 405 Fed. App'x 884, 886 (5th Cir. 2010).
[37] *Id.*
[38] *Id.*; *see also* La. Civ. Code art. 2054 ("When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose."); *S. Snow Mfg. Co. v. SnoWizard Holdings*, 921 F. Supp. 2d 548, 570 (E.D. La. 2013).

The Access Agreement granted a *right* of access, not an affirmative *obligation* to access. Thus, the duration of the Access Agreement cannot be construed to extend any longer than the duration of BPXP's need to access Plaintiff's property.   Because the Federal On-Scene Coordinator has declared that no further removal activities are warranted on Plaintiff's property, BPXP's need to access Plaintiff's property has concluded.   Moreover, BPXP's May 22, 2014 letter confirms its intent to satisfy any outstanding obligations under the Access Agreement, including expenses reimbursable under the Agreement, all requests for specific information pursuant to the Agreement, notice of any claims for indemnification by BPXP under the Agreement.

Unable to identify actual contract terms stating the duration of the agreement, Plaintiff suggests that the parties agreed that the Access Agreement would continue indefinitely until terminated by Plaintiff by virtue of its right to revoke BPXP's access rights.[39]   Plaintiff's expansive interpretation of Paragraph 12 must be rejected.  Plaintiff, via Paragraph 12, simply reserved the right to revoke BPXP's right of access.  The right to revoke BPXP's access cannot be reasonably construed to obligate BPXP to continue to access the property when its need for doing so has ended.

Finally, Plaintiff has not stated a cause of action for breach of contract with its contention that "[b]y cancelling the Access Agreement immediately, BP breached the Agreement to reimburse the Donation for expenses incurred to monitor clean-up operations."[40]   BPXP's May 22, 2014 termination letter notified Plaintiff that BPXP would no longer be exercising its right to access the property, but the letter also made clear that BPXP was not disavowing its obligations under the Access Agreement, including, *inter alia*, any obligation to reimburse expenses incurred

---

[39] *See* Access Agreement ¶ 12 ("This Access Agreement is revocable at will by Grantor.  Grantor retains the right to exclude any individual from its property at its discretion, regardless of that individual's relationship with Grantee.").
[40] July 2014 Complaint ¶ 32.

to monitor clean-up operations.[41]  To the contrary, BPXP requested that Plaintiff provide, within 30 days, "all requests for reimbursement of expenses reimbursable under the Agreement."[42] Tellingly, Plaintiff does not identify any such expenses that have been submitted to BPXP and rejected.

### 3.   *Plaintiff has failed to allege sufficient facts to support the breaches alleged in paragraphs 35(c) and 35(h)-(j).*

In paragraph 35(c), Plaintiff claims BPXP breached the Access Agreement by "[f]ailing to ensure that the assessment and remediation methods on the Property were based upon the 'highest industry standards.'"  Here, again, Plaintiff seeks to impose obligations not imposed by the Access Agreement.  The Access Agreement required BPXP to "use the highest industry standards . . . to insure environmentally sensitive practices while carrying out operations on the Wisner Property."[43]  This clause does not, as Plaintiff suggests, impose a clean-up standard, but is expressly directed to protocols aimed at minimizing damage to the environment during clean-up operations such as avoiding heavy equipment in certain areas.  Plaintiff alleges that it "prohibited the use of certain remediation protocols during the last four years which were deemed not to be consistent with best industry practices."[44]  This allegation indicates that BPXP complied with highest industry standards to insure environmentally sensitive practice while carrying out operations.  Alternatively, it could simply mean the Plaintiff insisted on proscriptive prohibitions like the protocols in paragraphs 8(a) and 8(b) of the Access Agreement—Plaintiff does not specify.  Either way, Plaintiff does not plead any facts related to what actions, if any, during clean-up operations were not to the highest industry standards to insure environmentally sensitive practices while carrying out operations.  Plaintiff's conclusory allegations, therefore,

---

[41] 5/22/14 BP Letter, attached hereto as Exhibit A.
[42] *Id.*
[43] Access Agreement ¶ 8.
[44] July 2014 Complaint ¶ 28.

fail to meet its obligation to provide "the grounds of his entitlement to relief."[45]   Because Plaintiff failed to plead enough facts to support the breach of contract claim asserted in paragraph 35(c), it should be dismissed.

In paragraph 35(h), Plaintiff claims BPXP breached the Access Agreement by "[f]ailing to provide all required documentation under the Access Agreement."  The Access Agreement required BPXP to provide Plaintiff with certain documentation and data related to clean-up operations on Plaintiff's property.[46]   But any alleged breach of that obligation is conclusory and unsupportable based on the facts pleaded, particularly, Plaintiff's admission that "[f]or the past four years, it is believed that BP provided this documentation to Wisner."[47]   Plaintiff has not identified any particular documentation to which it is entitled under the Access Agreement.  As such, the breach of contract claim asserted in paragraph 35(h) should be dismissed.

In paragraph 35(i), Plaintiff claims BPXP breached the Access Agreement by "[f]ailing to reimburse costs and expenses pursuant to the Access Agreement."  The Access Agreement obligated BPXP to reimburse certain costs and expenses for Plaintiff "to monitor" BPXP's clean-up operations.[48]   Plaintiff pleads no facts to support the conclusory allegation that BPXP has failed to reimburse costs and expenses pursuant to the Access Agreement.  Indeed, Plaintiff has not identified any cost or expense that BPXP has failed to reimburse.  Because Plaintiff failed to plead enough facts to support the breach of contract claim asserted in paragraphs 35(i), it should be dismissed.

In paragraph 35(j), Plaintiff claims BPXP breached the Access Agreement by "[f]ailing to remove debris and objects placed on the Donation property, including Iron anchors, T-posts,

---

[45] *Bell Atl. Corp.* 550 U.S. at 555 (citation, quotations and internal modifications omitted).
[46] *See* Access Agreement ¶¶ 2-6.
[47] July 2014 Complaint at ¶ 28.
[48] *See* Access Agreement ¶ 7.

snares dirty boom, lightning rods which became hazards on the beach, and failed to remove them after verbal and written demand."  The Access Agreement provides that "[a]t the conclusion of each day, all loose clean up materials, trash and tools must be removed from the beach."[49] Plaintiff has not pleaded that BPXP failed to remove any trash, tools, or anything else from the beach at the close of each day or at the end of clean-up operations.  Because Plaintiff failed to plead facts in support of the breach alleged in paragraph 35(j), it cannot be maintained and should be dismissed.

In paragraph 35(k), Plaintiff also claims "[a]ny and all other breaches that may become known before trial."  By definition, Plaintiff has not pleaded any facts to support this claim, and it should be dismissed.

**B.  The Court Should Dismiss Prayers for Relief "1" Through "8"**

*1.      The second and fourth prayers are really OPA Claims and should be dismissed.*

In its **second** prayer for relief, Plaintiff asks the Court to "[a]ward such sums as necessary to remove the BP Oil contaminants from the Donation's Fourchon property." Here, too, nothing in the Access Agreement indicates that BPXP agreed to compensate Plaintiff for removal costs. Although the July 2014 Complaint alleges that "[t]he Access Agreement obligates BP to remove the oil from the property,"[50] it provides no citation to the Access Agreement whatsoever.  This is simply a legal conclusion couched as a factual allegation.  Moreover, oil removal is properly pleaded as an OPA claim, and is almost exactly the same as second prayer for relief in Plaintiff's Answer in Limitation.[51]

---

[49] *See* Access Agreement ¶ 8(a).
[50] July 2014 Complaint ¶ 13.
[51] *See* No. 10-2771 Rec Doc. 326 at 16 ("Award such sums as necessary to allow Wisner Donation to fully assess the extent and fate of contamination resulting from the MC252 spill.").

Similarly, in its **fourth** prayer for relief, Plaintiff asks the Court to "[a]ward compensation for lost rent on fishing camps, oyster leases, surface leases and on the lease of the Port Fourchon." First, the Access Agreement does not obligate BPXP to reimburse Plaintiff for lost rent on fishing camp leases, oyster leases, or other leases.  Indeed, the Access Agreement is totally unrelated to oyster leases on water bottoms or the lease of the Port Fourchon.  Second, the July 2014 Complaint lacks any factual allegations regarding such losses or how they relate to the Access Agreement.  The only time Plaintiff mentions "fishing camp(s)," "oyster lease(s)," "surface lease(s)" or "the lease of the Port of Fourchon" in this complaint is in its prayer for relief.

Accordingly, the fourth and second prayers for relief should be dismissed.

### 2.  The first and fifth prayers are not tied to any obligations under the contract or allegations in the complaint and should be dismissed.

In its **first** prayer for relief, Plaintiff asks the Court to "[a]ward such sums as necessary to allow Wisner Donation to fully assess the extent and fate of contamination resulting from the BP spill."  Such an award is plainly beyond the scope of the Access Agreement, even under Plaintiff's misinterpretation of the Access Agreement.  The Access Agreement clearly states that BPXP "shall be response for all responsible costs and expenses associated with assessing damage to Wisner property caused by *oil spill cleanup operations*"[52]—not damage caused by the oil spill itself.  Thus, the first prayer for relief is impermissibly broad and should be dismissed.

In its **fifth** prayer for relief, Plaintiff asks the Court to "[e]njoin BP and order it to perform all specific performance of its obligations under the Access Agreement, including, but

---

[52] Access Agreement ¶ 9 (emphasis added); *see also* July 2014 Complaint ¶ 21 ("BP was also 'responsible for all reasonable costs and expenses associated with assessing damage to Wisner property caused by the oil spill cleanup operations.'").

not limited to, assessing the presence of oil, remediating the oil, and employing the highest industry practices."  As discussed above, BPXP properly terminated the Access Agreement consistent with Louisiana law, the Access Agreement does not obligate BPXP to assess or remediate oil, and Plaintiff failed to plead facts to support this prayer for relief.  Therefore, the fifth prayer should be dismissed.

### 3.  The third and sixth Prayers are not tied to any obligations under contract and related allegations in complaint are conclusory and should be dismissed.

In its **third** prayer for relief, Plaintiff asks the Court to "[a]ward such sums as necessary to restore the Wisner Donation property to its condition prior to the BP spill."  Similarly, in its **sixth** prayer for relief, Plaintiff asks the Court to "[e]njoin BP and order it to restore the Property to its pre-spill, pre-response condition."  Again, BPXP never agreed to restore Plaintiff's lands to "its condition prior to the BP spill," and the Access Agreement contains no such obligation. Although the July 2014 Complaint alleges the "Access Agreement contained a number of terms aimed at insuring that . . . the property was returned to its pre-spill condition",[53] this is another legal conclusion couched as a factual allegation.  The third and sixth prayers for relief should be dismissed.

### 4.  The allegations related to the seventh prayer are conclusory, and the prayer should be dismissed.

In its **seventh** prayer for relief, Plaintiff asks the Court to "[a]ward reimbursement of response costs, including the costs of consultants."  To start, Plaintiff failed to limit this prayer for relief to fees available under the Access Agreement.  It is axiomatic that BPXP is not responsible under the Access Agreement for damages or reimbursements not covered by the Access Agreement.  Moreover, Plaintiff failed to support its seventh prayer for relief regarding "reimbursement of response costs" with any allegation that such costs due under the Access

---

[53] July 2014 Complaint ¶ 12.

Agreement have gone or will go uncompensated.  Accordingly, the Court should dismiss Plaintiff's request for those damages.

## III.  PLAINTIFF'S JULY 2014 COMPLAINT CONSTITUTES IMPERMISSIBLE CLAIMS-SPLITTING AND SHOULD BE DISMISSED

Both here and in Plaintiff's other four lawsuits related to the *Deepwater Horizon*, the Plaintiff's fundamental complaint is that its property was oiled during the spill and BPXP is allegedly required to conduct additional clean-up operations or to pay removal costs for additional clean-up operations that were not directed by the Federal On-Scene Coordinator.[54] Plaintiff's decision to file multiple lawsuits with identical and/or overlapping claims is improper and should be rejected: "When a plaintiff files a second complaint alleging the same cause of action as a prior, *pending*, related action, the second complaint may be dismissed."[55]

Each of Plaintiff's previous lawsuits alleges claims for damages and removal costs covering the same property—and in one of Plaintiff's pleadings, the same Access Agreement.[56] Plaintiff's Answer in Limitation, for example, asserts a contract claim based on the same Access Agreement at issue in their July 2014 Complaint—in addition to OPA and maritime claims[57]— and features and almost *verbatim* six of the prayers for relief Plaintiff repeats in the July 2014 Complaint.[58]  Similarly, entire sets of factual allegations in Plaintiff's July 2014 Complaint were

---

[54] *See generally*  No. 14-1525; No. 10-2771 Rec Doc. 326; No. 13-1971 Rec. Doc. 1; No. 12-1971; No. 10-08888, Rec. Doc. 1332248; and No. 10-9999 Rec. Doc. 401.

[55] *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985) (citation omitted); *see also Langston v. Ins. Co. of N. Am.*, 827 F.2d 1044, 1047 (5th Cir. 1987) ("The drafters of the Restatement offer this illustration: a party having causes of action sounding in both tort and contract arising from the same event must assert both claims in a single suit or extinguish forever the claim not raised.").

[56] No. 10-2771 Rec Doc. 326 at 16; *see* No. 13-1971 Rec. Doc. 1 at 8-10 (removal costs, lost rents, and including "all claims for relief raised in the MDL complaints" related to maritime law and OPA); No. 12-1971; No. 10-08888, Rec. Doc. 1332248  at 1 ("Removal and/or clean-up costs"); and 10-9999 Rec. Doc. 401 at 1 ("Damage, Destruction, or Diminution in Value of Property" and "Response, Removal, Clean-Up, Restoration and/or Remediation Costs").

[57] No. 10-2771 Rec Doc. 32615-17 (incorporating B1 Master Complaint and requesting relief under same).

[58] *Compare* No. 10-2771 Rec Doc. 326 at 16-17, *with* No. 14-1525 Rec. Doc. 1 at 10-11.

simply copied in full from another of its complaints.[59]  Moreover, OPA provides the exclusive source of law for an action involving a responsible party's liability for removal costs governed by OPA.[60]  Plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant[s]."[61]  Accordingly, to "protect the defendant from being harassed by repetitive actions based on the same claim," Plaintiff's July 2014 Complaint should be dismissed.[62]

In addition, in prayers one through four, Plaintiff asks the Court for "such sums as necessary [1] to allow Wisner Donation to fully assess the extent and fate of contamination resulting from the BP spill . . . [2] to remove the BP Oil contaminants from the Donation's Fourchon property . . . [3] to restore the Wisner Donation's property to its condition prior to the BP spill . . . [4] for lost rent on fishing camps, oyster leases, surface leases and on the lease of the Port of Fourchon."  Those prayers are found almost *verbatim* in Plaintiff's Answer in Limitation.[63]  The Plaintiff's Answer in Limitation and other complaints also ask for economic damages, which would include lost rents.[64]  The Plaintiff's Complaint For Damages filed on April 20, 2013 and pending in MDL 2179 also seeks the same damages.[65]  Specifically, Plaintiff seeks economic damages, which would include alleged lost rents, under OPA and General Maritime Law.[66]

As described above, those prayers are not based in the Access Agreement because the Access Agreement does not require BP to assess or restore oil spill damage or pay lost rents. Rather, such obligations, if any, arise under OPA because BPXP is a responsible party

---

[59] *Compare* No. 14-1525 Rec. Doc. 1 at ¶¶ 5-9, *with* No. 13-1971 Rec. Doc. 1 at ¶¶ 25-29.
[60] *United States v. Am. Commercial Lines, LLC*, No. 12-30358 slip op. at 8 (5th Cir. July 16, 2014).
[61] *Oliney*, 771 F.2d at 859 (citation omitted).
[62] *Matter of Super Van Inc.*, 92 F.3d 366, 371 (5th Cir. 1996).
[63] No. 10-2771 Rec Doc. 326 at 16-1.
[64] *See supra* at note 56.
[65] No. 13 1971 Rec. Doc. 1 at 9.
[66] *See generally id.*

conducting clean-up operations under the direction of the Federal On-Scene Coordinator. Reimbursement of those of alleged economic losses flows from an OPA cause of action that has been pleaded, on multiple occasions, by the Plaintiff and has been stayed by Judge Barbier pursuant to Pretrial Order 15.  That stay is central to Judge Barbier's management of the *Deepwater Horizon* docket.  Enabling Plaintiff to jump the line and bring its OPA claims outside of the MDL threatens to undermine the deliberate management of MDL 2179 Judge Barbier has maintained for four years.  Allowing Plaintiff to pray for this relief here would also constitute impermissible claims splitting.[67]

## IV.   EVEN IF THE COURT ALLOWS THIS CASE TO PROCEED, IT SHOULD DISMISS ANY CLAIMS BEYOND THOSE EXPRESSLY AVAILABLE UNDER THE ACCESS AGREEMENT OR LOUISIANA CONTRACT LAW

Contrary to BPXP's understanding of the Court's suggestion that Plaintiff file a complaint limited to its contract claims under the Access Agreement as asserted in its motion for specific performance, Plaintiff's July 2014 Complaint appears to include requests for economic loss and property damages that go far beyond its contract claims and the remedies available under Louisiana contracts law.  *See* July 2014 Complaint at 10-11.  To the extent Plaintiff seeks through the July 2104 Complaint any damages beyond those available under the Access Agreement[68] or beyond the remedies for a breach of contract under Louisiana law, those damages rely on causes of action that have not been pleaded.  Moreover, any requests for damages that are not limited to remedies for breach of contract under Louisiana law are duplicative of claims pending before Judge Barbier and stayed pursuant to Pretrial Order No. 15—including Plaintiff's own claims in at least four other lawsuits.

---

[67] *Oliney v. Gardner*, 771 F.2d 856, 857 (5th Cir. 1985) ("When a plaintiff files a second complaint alleging the same cause of action as a prior, *pending*, related action, the second complaint may be dismissed."); s*ee Ocean Drilling & Exploration Co., Inc. v. Mont Boat Rental Servs., Inc.*, 799 F.2d 213, 217 (5th Cir. 1986).

[68] *Compare* July 2014 Complaint at 10 ("Award reimbursement of response costs, including the costs of consultants"), *with id.* ("Award attorney's fees **under the Access Agreement**.")

## V.   THE COURT SHOULD DISMISS THIS CASE FOR LACK OF CAPACITY

As a threshold matter, the Court should dismiss this suit in its entirety because the plaintiff, the Wisner Donation, does not have capacity to sue.  Under Federal Rule of Civil Procedure 17(b), "the law of the state where the court is located" determines the capacity of a trust to sue.[69]  A trust is not a juridical person in Louisiana law, but a "relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another."[70]  Accordingly, a trust lacks the capacity to assert claims on its own behalf.  In Louisiana, "[e]xcept as otherwise provided by law, the trustee of an express trust is the proper plaintiff to sue to enforce a right of the trust estate."[71]  Where a trust—and not the trustee—files suit, the court should dismiss the case for lack of capacity.[72]

In *Joe Conte Toyota, Inc. v. Toyota Motors Sales, USA*, a trust sued on several grounds, including breach of contract.[73]  Defendants filed a peremptory exception of no right of action against the trust, arguing in part, that the trust lacked capacity to bring the claims on its behalf.[74]

---

[69] Fed. R. Civ. P. 17(b)(3); *Olympic Coast Inv., Inc. v. Seipel*, 208 F. App'x 569, 570 (9th Cir. 2006) ("The capacity of an unincorporated association, such as a trust, to sue or be sued is determined 'by the law of the state in which the district court is held.'"); *Rives v. Franklin Life Ins. Co.*, 792 F.2d 1324, 1329 (5th Cir. 1986) ("Rule 17(b) authorizes district courts to determine the capacity of an individual acting in a representative capacity to bring a particular suit. Thus, in the instant case, Rule 17(b) authorized an inquiry into whether … as trustee [plaintiff] was authorized by law to bring this action.").

[70] La. Rev. Stat. § 9:1731; *see also Bonner v. Henderson*, 147 F.3d 457, 460 n.14 (5th Cir. 1998) (noting that Louisiana "recognize[s] trusts as fiduciary relationships rather than legal entities"); *In re Therese D. Steckler Trust*, 678 So. 2d 620, 622 (La. App. 4 Cir. 1996).

[71] La. Code Civ. Proc. art. 699; *Joe Conte Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 689 So. 2d 60, 654-55 (La. App. 4 Cir. 1997) *writ denied sub nom. Conte v. Toyota Motor Sales, U.S.A.*, 692 So. 2d 1090 (La. 1997) (dismissing suit brought by trust for lack of capacity); *see also U.S. Bank Nat'l. Ass'n v. Dumas*, 2012 CA 1902, 2014 WL 1327966 at *6 (La. App. 1 Cir. 4/3/14) ("U.S. Bank, in its capacity as a trustee, is the payee of the promissory note and was in possession of the original promissory note when the petition was filed, and therefore is the proper plaintiff in this proceeding. The trust . . . is a *relationship* and is not a proper plaintiff to enforce the promissory note."); *Huber v. Calcasieu Marine Nat'l. Bank of Lake Charles*, 262 So. 2d 404, 407 (La. App. 3 Cir. 1972) ("Except in special situations not relevant here, the trustee is the proper plaintiff to sue to enforce a right of the trust estate . . . .").

[72] *Joe Conte Toyota*, 689 So. 2d 650 at 654-55.

[73] *Id.* at 651.

[74] *Id.*

The court gave the trust 25 days to amend its pleadings to add the trustee,[75] but the trust's supplemental and amended petition did not purport to add the trustees as parties.[76]  The court dismissed the case for lack of standing, and the appellate court affirmed, explaining the "[t]rustee of an express [trust] is the proper plaintiff to sue to enforce a right of the trust estate."

In this case, Plaintiff concedes it is a "land-holding Complex Trust."[77]  Plaintiff's trustee did not initiate this suit, nor is the trustee a party to this suit.[78]  Like the trust in *Joe Conte Toyota*, Plaintiff is attempting improperly to assert claims on its own behalf.  Because "[t]he trustee is the proper plaintiff to sue to enforce a right of the trust estate,"[79] and the trustee has not brought this case, Plaintiff lacks the capacity to sue, and the Court should dismiss the July 2014 Complaint entirely.[80]

## CONCLUSION

Accordingly, Plaintiff's July 2014 Complaint should be dismissed altogether.

Dated:  July 22, 2014

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
Shannon S. Holtzman (Bar #19933)
Greg L. Johnson (Bar #24477)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Christopher J. Esbrook
KIRKLAND & ELLIS LLP
300 North LaSalle Street

---

[75] *Id.* at 652.
[76] *Id.* at 655.
[77] July 2014 Complaint ¶ 1.
[78] *See* July 2014 Complaint ¶¶ 1-2.
[79] *In re Therese D. Steckler* Trust, 678 So. 2d at 624.
[80] *Joe Conte Toyota*, 689 So. 2d at 655 (dismissing suit brought by trust for lack of capacity).

Chicago, IL  60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

***Attorneys for BP Exploration & Production Inc.***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 22 day of July, 2014.

<u>/s/ Don K. Haycraft</u> _____