IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: Oil Spill by the Oil Rig) | | |
| "Deepwater Horizon" | ) | MDL 2179 |
| In the Gulf of Mexico, | ) | SECTION J |
| On April 20, 2010 | ) | |
| | ) | |
| This document relates to: | ) | JUDGE BARBIER |
| No. 12-970, Bon Secour | ) | |
| Fisheries, Inc., et al v. BP | ) | MAG. JUDGE SHUSHAN |
| | ) | |
| And All Actions | ) | |

**CLAIMANTS' BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM ORDER
AND LEAVE TO FILE AND
<u>MOTION TO CONFIRM ARBITRATION AWARDS AND ORDER PAYMENT</u>**

COME NOW the Plaintiffs-Movants, separately and jointly, and present this brief in support of their motion for relief from order and leave to file and motion to confirm arbitration awards and order payment, to-wit:

## <u>JURISDICTION STATEMENT</u>

The Court has jurisdiction over the admiralty and maritime action brought against BP under 28 U.S.C. § 1333, 33 U.S.C. § 2717(b), and 45 U.S.C. § 30101.

## <u>STATEMENT OF THE FACTS</u>

This matter arises from the settlement agreement, ("Settlement Agreement" or "Agreement"), reached by Plaintiffs with BP Exploration & Production, Inc. and BP America Production Company ("BP") on April 18, 2012. (Doc. 6430-1). The Settlement Agreement was approved by the Court on December 21, 2012. (Doc. 8139).

This motion to confirm is filed by seven Claimants who are so similarly situated that judicial economy favors a single presentation. For privacy reasons, each Claimant is identified by its Claimant Identification Number: Claimants 100118906, 100002435, 100108968, 100085956, 100002391, 100002383, and 100146954. The following chart, entitled "Event Chart", presents the dates of relevant events for each Claimant:

1

| Description | Ex. # | Claimant-906 | Ex. # | Claimant-435 | Ex. # | Claimant-968 | Ex. # | Claimant-956 |
|---|---|---|---|---|---|---|---|---|
| Registration Form | 1 | 9/11/2012 | 15 | 7/19/2012 | 29 | 8/21/2012 | 43 | 7/20/2013 |
| Purple Claim Form | 2 | 9/11/2012 | 16 | 7/20/2012 | 30 | 8/21/2012 | 44 | 7/20/2013 |
| Eligibility Notice (Unsigned) | 3 | 7/26/2013 | 17 | 7/19/2013 | 31 | 7/11/2013 | 45 | 7/11/2013 |
| Signed Eligibility Notice and Release | 4 | 8/12/2013 | 18 | 7/29/2013 | 32 | 7/24/2013 | 46 | 7/29/2013 |
| Notice of BP Appeal | 5 | 8/20/2013 | 19 | 7/30/2013 | 33 | 7/29/2013 | 47 | 7/23/2013 |
| BP's Initial Proposal and Brief | 6 | Timely | 20 | Timely | 34 | Timely | 48 | Timely |
| Claimant's Initial Proposal | 7 | Timely | 21 | Timely | 35 | Timely | 49 | Timely |
| Claimant's Initial Brief | 8 | Timely | 22 | Timely | 36 | Timely | 50 | Timely |
| BP's Final Proposal and Brief | 9 | Timely | 23 | Timely | 37 | Timely | 51 | Timely |
| Claimant's Final Proposal | 10 | 9/12/2013 | 24 | 8/26/2013 | 38 | 8/23/2013 | 52 | 8/16/2013 |
| Claimant's Final Brief | 11 | 9/24/2013 | 25 | 8/26/2013 | 39 | 8/23/2013 | 53 | 8/16/2013 |
| Notice of Appeal Panel's Decision | 12 | 9/25/2013 | 26 | 9/23/2013 | 40 | 9/30/2013 | 54 | 9/30/2013 |
| Post-Appeal Eligibility Notice | 13 | 9/27/2013 | 27 | 9/24/2013 | 41 | 9/30/2013 | 55 | 9/30/2013 |
| BP's Request for Discretionary Review | 14 | 10/9/2013 | 28 | 10/7/2013 | 42 | n/a | 56 | n/a |

| Description | Ex. # | Claimant-391 | Ex. # | Claimant-383 | Ex. # | Claimant-954 |
|---|---|---|---|---|---|---|
| Registration Form | 57 | 7/16/2012 | 71 | 7/20/2012 | 85 | 11/12/2012 |
| Purple Claim Form | 58 | 7/16/2012 | 72 | 7/24/2012 | 86 | 11/12/2012 |
| Eligibility Notice (Unsigned) | 59 | 5/24/2013 | 73 | 8/1/2013 | 87 | 5/28/2013 |
| Signed Eligibility Notice and Release | 60 | 9/20/2013 | 74 | 8/7/2013 | 88 | 6/12/2013 |
| Notice of BP Appeal | 61 | 6/4/2013 | 75 | 8/13/2013 | 89 | 6/13/2013 |
| BP's Initial Proposal and Brief | 62 | Timely | 76 | Timely | 90 | Timely |
| Claimant's Initial Proposal | 63 | Timely | 77 | Timely | 91 | Timely |
| Claimant's Initial Brief | 64 | Timely | 78 | Timely | 92 | Timely |
| BP's Final Proposal and Brief | 65 | Timely | 79 | Timely | 93 | Timely |
| Claimant's Final Proposal | 66 | 7/1/2013 | 80 | 9/6/2013 | 94 | 7/8/2013 |
| Claimant's Final Brief | 67 | 7/1/2013 | 81 | 9/6/2013 | 95 | 7/8/2013 |
| Notice of Appeal Panel's Decision | 68 | 7/29/2013 | 82 | 10/2/2013 | 96 | 10/1/2013 |
| Post-Appeal Eligibility Notice | 69 | 7/31/2013 | 83 | 10/2/2013 | 97 | 10/1/2013 |
| BP's Request for Discretionary Review | 70 | n/a | 84 | n/a | | |

Below, a second chart, entitled "Award Chart", is presented setting out the award amounts and calculation thereof for each of the Claimants:

| | Description | Claimant-906 | Claimant-435 | Claimant-968 | Claimant-956 |
|---|---|---|---|---|---|
| 1 | Eligibility Notice Award Amount | 446,270.09 | 130,543.32 | 410,392.70 | 34,074.91 |
| 2 | Elibibility Notice RPT Amount | 111,567.52 | 32,635.83 | 102,598.18 | 8,518.73 |
| 3 | Plus Claimant Accounting Support | 2,410.00 | 2,610.87 | 4,347.50 | 940.00 |
| 4 | Eligibility Notice Total Award and RPT | 560,247.61 | 165,790.02 | 517,338.38 | 43,533.64 |
| | | | | | |
| 5 | Post-Appeal Award Amount | 441,587.09 | 130,543.32 | 409,396.70 | 27,873.62 |
| 6 | 5% Review Cost | 22,079.35 | 6,527.17 | 20,469.84 | 1,393.68 |
| 7 | Post Appeal RPT Amount | 110,396.77 | 32,635.83 | 102,349.18 | 6,968.41 |
| 8 | Plus Claimant Accounting Support | 2,410.00 | 2,610.87 | 4,347.50 | 940.00 |
| 9 | Post Appeal Total Award and RPT | 576,473.21 | 172,317.19 | 536,563.22 | 37,175.71 |

| | Description | Claimant-391 | Claimant-383 | Claimant-954 |
|---|---|---|---|---|
| 11 | Eligibility Notice Award Amount | 93,264.01 | 143,955.45 | 379,606.04 |
| 12 | Elibibility Notice RPT Amount | 23,316.00 | 35,988.86 | 94,901.51 |
| 13 | Plus Claimant Accounting Support | 782.50 | 2,100.00 | 2,157.50 |
| 14 | Less Prior Spill-Related Payments | - | - | - |
| 15 | Eligibility Notice Total Award and RPT | 117,362.51 | 182,044.31 | 476,665.05 |
| | | | | |
| 16 | Post-Appeal Award Amount | 93,264.01 | 143,955.45 | 378,620.52 |
| 17 | 5% Review Cost | 4,663.20 | 7,197.77 | 18,931.03 |
| 18 | Post Appeal RPT Amount | 23,316.00 | 35,988.86 | 94,655.13 |
| 19 | Plus Claimant Accounting Support | 1,167.50 | 2,100.00 | 2,157.50 |
| 20 | Less Prior Spill-Related Payments | - | - | - |
| 21 | Post Appeal Total Award and RPT | 122,410.71 | 189,242.08 | 494,364.18 |

When referred to separately, a Claimant will be identified by the last three digits of the Claimant Identification Number, for example "Claimant 906". Each of the Claimants is a business located in the State of Alabama, Zone D, and each was involved in a business enterprise that is permitted to make a claim under the terms of the Settlement Agreement. (Exs. 1, 15, 29,43, 57, 71, 85). Each of the Claimants was open for business prior to and during April 20, 2010 to April 16, 2012. (Exs. 1, 15, 29,43, 57, 71, 85). Therefore, each of the Claimants is an Economic Class Member entitled to present a claim under the Agreement.

Each Claimant submitted its Registration Form and Business Economic Loss Claim Form on the date shown on the Event Chart between July 16, 2012 and July 20, 2013. See, Event Chart, *supra* p. 1. (Exs. 1, 15, 29,43, 57, 71, 85). Each Claimant presented its supporting contemporaneous financial data, which was reviewed, reconciled and approved by the Claims Administrator. (Exs. 6, 20, 34, 48, 62, 76, 90). Each Claimant received an Eligibility Notice from the Claims Administrator, which determined that respective Claimant's claim qualified for payment and set the Award Amount as shown on the Award Chart above. See, Award Chart, *supra*, p.2. (Exs. 3, 17, 31, 45, 59 73, 87). Each Claimant properly executed the Full and Final Release, Settlement, and Covenant Not to Sue and timely returned it to the Claims Administrator.[1] (Exs. 4, 18, 32, 46, 60, 74, 88). BP timely filed its respective Notice of Appeal for each Claimant's award seeking review by a single-member Appeal Panel as provided by the Agreement. (Exs. 5, 19, 33, 47, 61, 75, 89). BP and each of the Claimants conducted the arbitration in the prescribed manner with each submitting its respective position to the Appeal Panel. (Exs. 6-11, 20-25, 34-39, 48-53, 62-67, 76-81, 90-95). The Appeal Panel's Decision was issued in favor of each Claimant for the Compensation Amount along with a .25 Risk Transfer

---

[1]      Claimant 391 requested re-review of the initial Eligibility Notice, which was issued on April 24, 2013. (Ex. 55).  Re-review was granted and a Post-Re-Review Eligibility Notice issued on May 24, 2013. (Ex. 55).  BP filed its Notice of Appeal on June 4, 2014, prior to the time elapsing for submission of the Release. (Ex. 57).  After a Post-Appeal Eligibility Notice was issued on July 31, 2103, Claimant 391 signed the Release on September 20, 2013. (Ex. 56).  BP did not seek Discretionary Review by the Court.

Premium Multiplier (RTP), yielding a total Award for each Claimant as shown on the Award Chart. (Exs. 12, 26, 40, 54, 68, 82, 96). See, Award Chart, *supra*, p.2. Based on the Panel's Decision, a Post-Appeal Eligibility Notice was issued by the Claims Administrator to each of the Claimants, yielding a total Award for each Claimant as shown on the Award Chart. (Exs. 13, 27, 41, 55, 69, 83, 97). See, Award Chart, *supra*, p.2. BP filed its Request for Discretionary Court Review of the Post-Appeal Awards for Claimant 906 and Claimant 415. (Sec. 6.6, Doc. 10185-1 at 3-4). (Ex. 14, 28). BP did not file a Request for Discretionary Review for Claimant 391, and the time for such a filing expired. BP's time for filing a Request for Discretionary Review for Claimant 383 and Claimant 954 did not lapse before the Court's injunction was issued.

On October 2, 2013, the United States Court of Appeals for the Fifth Circuit issued its opinion In re Deepwater Horizon, 732 F.3d 326 (5th Cir. 2013), which reversed the District Court's ruling and "instruct[ed] the district court to expeditiously craft a narrowly-tailored injunction. . . ." Id. at *59. In keeping with the Fifth Circuit's instructions, the District Court issued a Preliminary Injunction Related to BEL Claims on October 18, 2013, which required the Claims Administrator to temporarily suspend action on Business Economic Loss claims then pending at any stage in the Claims Appeal Process. (Docs. 11697 and 11790). In response to a subsequent order of the Fifth Circuit, the Court revised its preliminary injunction on December 5, 2013 and issued an order maintaining the December 5 Order on December 24, 2013. (Doc. 12055). Although Claimants' respective Post-Appeal Eligibility Notice had been issued prior to the Fifth Circuit's opinion, it had not been paid. (Docs. 11697, 11790, 12055). See, also, In re Deepwater Horizon, 732 F.3d 326 (5th Cir. La. 2013). On January 10, 2014, the Fifth Circuit affirmed the District Court's class certification and settlement approval rulings and found that Article III standing and the requirements of Fed. R. Civ. P. 23 had been satisfied. See, In re Deepwater Horizon, 739 F.3d 790, 795 (5th Cir. La. 2014). On March 3, 2014, the Fifth Circuit affirmed the District Court's ruling of December 24, 2013; the Court ordered "[t]he injunction prohibiting payment of the relevant claims is vacated." In re Deepwater Horizon, 744 F.3d 370,

375 (5th Cir. La. 2014).  On May 28, 2014, the Fifth Circuit issued the mandate for the Court to

Dissolve and Vacate the injunction and the Court ordered the same. (Doc. 12948).

**STANDARD OF REVIEW**

This motion seeks confirmation of seven arbitration awards issued by seven separate

single member arbitration panels (Panel(s) or Appeal Panel(s)), that issued Awards pursuant to

the Settlement Agreement.   There is a strong presumption in favor of arbitration under the

Federal Arbitration Act (FAA), which requires an expedited and summary hearing on all motions

to enforce arbitration and arbitration awards. See, Grant v. Houser, 469 Fed. Appx. 310, 315 (5th

Cir. 2012), *citing*, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct.

927, 74 L.Ed.2d 765 (1983). See, also, 9 U.S.C. §2.  As stated in Grant:

> "[T]here is a strong presumption in favor of arbitration under the FAA. *See 9
> U.S.C. § 2*; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460
> U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)*. Accordingly, **for ruling on a
> motion to compel arbitration, the FAA requires "an expeditious and
> summary hearing, with only restricted inquiry into factual issues"**. *Moses H.
> Cone Mem'l Hosp., 460 U.S. at 22*. The party seeking to compel arbitration need
> only prove the existence of an agreement to arbitrate by a preponderance of the
> evidence. *See Banks, 156 F. App'x at 712*." (Emphasis added).

469 Fed. Appx. at 315. See, also, Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 578,

128 S. Ct. 1396, 1400, 170 L. Ed. 2d 254, 260 (2008); Trustees Of Empire State Carpenters

Annuity v. Lynnview Construction Corp., 2013 U.S. Dist. LEXIS *13-14 (E.D.N.Y. 2013);

Gerardo Gerson and Rivadavia, S.A. v. UBS Financial Services, Inc., 2012 U.S. Dist. LEXIS

128128 *6 (S.D. Fla. 2012).  This motion should be expedited by the Court with a hearing and

decision based on the restricted inquiry into the factual issues as mandated by federal law. Id.

An agreement to settle a claim, i.e., a settlement agreement, is a contract. See, e.g.,

Alford v. Kuhlman Elec. Corp., 716 F.3d 909, 912 (5th Cir. 2013)(settlement agreements are

contracts); Guidry v. Halliburton Geophysical Services, Inc., 976 F.2d 938, 940 (5th Cir. 1992)(a

settlement agreement is a contract); In re Raymark Indus., Inc., 831 F.2d 550, 553 (5th Cir.

1987)(settlements are contracts).   Where a settlement agreement is clear and unambiguous,

interpretation is a question of law and the contract's language is to be given its plain meaning. See, Alford, 716 F.3d at 712; Nat'l Union Fire Ins. Co. v. Circle, Inc., 915 F.2d 986, 989 (5th Cir. 1990); Turner Marine Fleeting v. Quality Fab & Mech., 2002 U.S. Dist. LEXIS 24258 (E.D. La. 2002). If the agreement is ambiguous, the court may consider extrinsic evidence and its interpretation is subject to subsequent appellate review only for clear error. Id.

The initial question of whether the parties have an arbitration agreement is for the Court to decide. See, Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); Armstrong v. Assocs. Int'l Holding Corp., 242 Fed. Appx. 955, 957 (5th Cir. 2007); Klein v. Nabors Drilling USA, LP, 710 F.3d 234 (5th Cir. 2013). As stated in Armstrong:

> **"To determine whether the parties agreed to arbitrate a dispute, the district court considers: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement.** *Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996).* **When a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"** (Emphasis added).

242 Fed. Appx. 955, 957. See, also, AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (*quoting*, Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)). In addressing these questions, the Court must give due regard to the strong federal policy favoring arbitration. See, Webb v. Invertacorp., Inc., 89 F.3d 252, 258 (5th Cir. 1996).

Under the FAA, the party seeking to compel or enforce arbitration need only prove the existence of the arbitration agreement by a preponderance of the evidence. See, Grant, 469 Fed. Appx. at 315; Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 297 (5th Cir. 2004); Banks v. Mitsubishi Motors Credit of Am., 156 Fed. Appx. 710, 712 (5th Cir. 2005)(arbitration agreement proven by preponderance of evidence). Once the preponderance bar is satisfied, "the burden shifts to the party opposing arbitration to demonstrate either that the agreement is invalid

or, at a minimum, to allege the dispute is outside of the agreement's scope." <u>See</u>, <u>Grant</u>, 469 Fed.

Appx. at 315 (*citing*, <u>Carter</u>, 362 F.3d at 297). The party seeking to avoid arbitration must prove

that the arbitration clause was the product of fraud, coercion or such ground as exists at law or in

equity for revocation of contracts. <u>Id.</u> As stated in <u>Washington Mut. Fin. Group, LLC v. Bailey</u>,

364 F.3d 260 (5th Cir. 2004):

> "The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). **Courts conduct a bifurcated inquiry to determine whether parties should be compelled to arbitrate a dispute.** *Id.* **First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable.** *Id.*" (emphasis added).

364 F.3d at 263; <u>Nitro-Lift Techs., LLC v. Howard</u>, 133 S.Ct. 500, 502, 184, L.Ed.2d 328, 331

(2012). Any ambiguity about the scope of arbitration must be decided in favor or arbitrability

based on the federal presumption in favor of arbitration. <u>See</u>, <u>QPro, Inc. v. RTD Quality Servs.</u>

<u>USA</u>, 761 F.Supp.2d 492, 497 496-97 (S.D. Texas 2011); <u>Tricon Energy Ltd. v. Vinmar Int'l,</u>

<u>Ltd.,</u> 718 F.3d 448, 458 (5th Cir. 2013). This is the standard of review that applies in deciding

whether the Settlement Agreement contains an arbitration agreement and whether the Panels'

awards to the respective Claimants are arbitration awards that must be confirmed and enforced

under the Federal Arbitration Act and relevant federal law.

## <u>ARGUMENT</u>

I.   **THE SETTLEMENT AGREEMENT'S APPEAL PROCESS, AS SET OUT IN SECTION 6, IS AN ARBITRATION AGREEMENT THAT IS SUBJECT TO THE FEDERAL ARBITRATION ACT AND THE RESULTING AWARD IS FINAL AND BINDING ON THE PARTIES.**

   A.   **The Settlement Agreement Is Governed By Maritime Law And Any Arbitration Agreement Contained Therein Is Subject To The Federal Arbitration Act, 9 U.S.C.S. §1 *et al*.**

The underlying dispute arises out of a blowout, explosion and fire that occurred aboard

the *Deepwater Horizon* semi-submersible offshore drilling rig on April 20, 2010, while the rig

was engaged in drilling activities in navigable waters on the "Macondo Well" on the Outer Continental Shelf off the coast of Louisiana. (Doc. 8138 at 1). The parties agreed that General Maritime Law applied to interpretation of the Settlement Agreement. (Settlement Sec. 36.1, Doc. 6430-1 at 94). Parties to an agreement may agree to a choice-of-law provision, which will be upheld as long as it does not undermine the goals and policies of the FAA. See, ASW Allstate Painting & Constr. Co. v. Lexington Ins. Co., 188 F.3d 307, 310 (5th Cir. 1999). The Settlement Agreement resolved disputes arising out of a controversy that is subject to the admiralty jurisdiction of the Court. See, In re: Oil Spill, 808 F.Supp.2d 943, 951 (E.D. La. 2011). Where claims are premised on federal law and maritime jurisdiction, federal and maritime law apply to interpret the Settlement Agreement. Mid-South Towing Co. v. Har-Win, Inc., 733 F.2d 386, 389 (5th Cir. 1984). Section 1 of the FAA provides, in part:

> "'**Maritime transaction**s', as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, **collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction;**"

9 U.S.C. §1 (emphasis added). The underlying facts and the Parties' agreement clearly demonstrate that the Settlement Agreement is a "maritime transaction" as defined by the FAA.

A written arbitration clause in a contract to settle a dispute arising out of a maritime transaction is valid and must be enforced according to its terms. Section 2 of the FAA provides:

> "**A written provision in any maritime transaction** or a contract evidencing a transaction involving commerce **to settle by arbitration a controversy thereafter arising out of such contract or transaction,** or the refusal to perform the whole or any part thereof, **or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable,** save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. §2 (emphasis added). The FAA controls the Court's review of the procedures established by Section 6. See, 9 U.S.C. §§1-2. See, also, Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 2123 S.Ct. 2037, 156 L.Ed.2d 46 (2003); Circuit City Stores, Inc. v. Adams, 532

U.S. 105, 121 S.Ct. 1302, 1307, 149 L.Ed.2d 234 (2001); Grant, 469 Fed. Appx. at 313.  The

Settlement Agreement's arbitration clause must be enforced under the FAA. Id.

**B.    The Dispute Resolution Procedure Established By Section 6 of the Agreement Is An Arbitration Provision.**

Section 6 creates an arbitration agreement.  Arbitration is a "method of dispute resolution

involving one or more neutral third parties who are usually agreed to by the disputing parties and

whose decision is binding." Black's Law Dictionary, 119 (9th ed. 2009). As stated in General

Motors Corporation v. Pamela Equities Corp., 146 F.3d 242, 246 (5th Cir. 1998):

> **"Arbitration is the reference of a particular dispute to an impartial third person chosen by the parties to a dispute who agree, in advance, to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard."** (Emphasis added).

146 F.3d at 246. As stated in Am. Fed.of State, County & Municipal Employees v. Metropolitan

Water Dist.:

> "One appellate court surveyed the various definitions of arbitration and quoted from Black's Law Dictionary that arbitration is ' **"[a] process of dispute resolution in which a neutral third party (arbitrator) renders a decision after a hearing at which both parties have an opportunity to be heard.** Where arbitration is voluntary, the disputing parties select the arbitrator who has the power to render a binding decision.' [Citation.]' [Citations.] ... '[A]lthough [an] **arbitration can take many procedural forms, a dispute resolution procedure is not an arbitration unless there is [1] a third party decision maker, [2] a final and binding decision, and [3] a mechanism to assure a minimum level of impartiality with respect to the rendering of that decision.'"**

126 Cal. App. 4th 247, 257-258 (Cal. App. 2d Dist. 2005) (emphasis added); see also Hooters of

America, Inc. v. Phillips, 39 F. Supp. 2d 582, 618-19 (D.S.C. 1998); Prasad v. Bullard, 51 So.3d

35, 38 (La. App., 5 Cir. 2010); Kabia v. Koch, 713 N.Y.S. 2d 250, 254 (Civ. Ct. N.Y. 2000);

Cheng-Canindin v. Renaissance Hotel Associates, 50 Cal. App. 4th 676, 684, 57 Cal. Rptr. 2d

867, 872 (Cal. App. 1996).

Given the thousands of monetary awards to claimants expected by the parties, it was

prudent that a method be agreed upon to address dissatisfaction by claimant or BP with the

application of the Settlement Agreement and that this process not lead to further protracted

9

litigation. The parties agreed, in writing, that such disputes would be presented to a neutral third-party, who would render a final and binding decision thereon. (Doc. 6430-1 at 58-64).

Section 6 does not use the word "arbitration," but particular nomenclature is not required. No particular language is required to create an arbitration agreement. See, Wolsey, Ltd. v. Foodmaker Int'l Franchising, Inc., 144 F.3d 1205. 1208 (9th Cir. 1998); AMF Inc. v. Brunswick Corp., 621 F. Supp. 456, 460 (E.D.N.Y. 1985), (no magic words such as "arbitrate," "binding arbitration" or "final dispute resolution" needed to invoke FAA). As stated in Wolsey:

> **"Case law following the passage of the [Federal Arbitration] Act reflects unequivocal support of agreements to have third parties decide disputes - the essence of arbitration. No magic words such as 'arbitrate' or 'binding arbitration' or 'final dispute resolution' are needed to obtain the benefits of the Act.** *See City of Omaha v. Omaha Water Co., 218 U.S. 180, 194, 30 S. Ct. 615, 616, 54 L. Ed. 991 (1910)* (dictum) ('a plain case of the submission of a dispute or difference which had to be adjusted . . . was in fact an arbitration, though the arbitrators were called appraisers').
>
> . . . .
>
> **"Arbitration is a creature of contract, a device of the parties rather than the judicial process.** *If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration."*

144 F.3d at 1208 (emphasis added). "The essence of arbitration is that, when the parties agree to submit their disputes to it, they have agreed to arbitrate these disputes through to completion, for example, to an award made by a third party arbitrator." Id. See, also, Hod Carriers & Gen. Laborers Union Local 243 v. 3 Kings Environmental, Inc., 2010 US Dist. LEXIS 76162 (W.D. Wash. 2010)("an arbitration agreement is simply an agreement to submit a dispute to decision by a third party", no "magic words"); PCH Mut. Ins. Co. v. Cas. & Sur., Inc., 750 F. Supp. 2d 125, 143 (D. D, C. 2010)("magic words" not required to establish mandatory arbitration agreement); Bryson v. Gere, 268 F. Supp. 2d 46, 52 (D.D.C. 2002)(no particular language required to create arbitration agreement); American Federation, 126 Cal. App. 4th at 257-58, 24 Cal. Rptr. 3d at 291("[i]f the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration."). BP and Plaintiffs agreed to submit any disputed claim to the third-party "Appeal Panel" for a decision; hence they agreed to arbitration. Id.

BP clearly understood that the process was arbitration as evidenced by its August 13, 2012 memorandum to the Court seeking approval of the Settlement, which states, in part:

> "Appeals as to the amount of compensation will be decided using so-called '**baseball arbitration**' where the appellate panel must select either the amount advanced by the claimant or the amount advanced by BP" (Emphasis added).

(Doc. 7114-1 at 37).[2]  "Baseball arbitration" is a procedure "whereby each party submits a proposal and the arbitrator selects one of the two." Rain CII Carbon, LLC v. ConocoPhillips Co., 674 F.3d 469, 471 (5th Cir. 2012); see also, In re Am. Capital Equip., LLC, 688 F.3d 145, 152 (3rd Cir. 2012)(in "baseball arbitration" each party submits a proposal and the arbitrator selects one or the other); Sage Electrochromics, Inc. v. View, Inc., 2014 US Dist. LEXIS 49168 (N.D. Cal. 2014)(in baseball arbitration, parties have incentive to be reasonable "because arbitrator will choose the more reasonable offer.").  Clearly, the concept of "baseball arbitration" was known to the courts and understood by BP to be an arbitration with the arbitrator selecting either BP's proposal or that of the Claimant in making the arbitral award. Id.; compare Doc. 7114-1 at 37.

BP's representations to the Court about arbitration were not inadvertent. (Doc. 7114-1 at 37). BP's words were intended to secure the Court's approval of the Settlement Agreement. Id. BP prevailed over the objectors and secured the Courts' final approval. (Doc. 8139).  BP cannot now change its position by arguing Section 6 is not an arbitration agreement, for to do so is prohibited by the doctrine of judicial estoppel. See, Flugence v. Axis Surplus Ins. Co., 738 F.3d 126, 129 (5th Cir. 2013) (noting that judicial estoppel applies where (1) a party would assert a position plainly inconsistent with a prior position; (2) the court accepted the prior position; and

---

[2]      BP's reference to "baseball arbitration" referred to Section 6.2, which states, "**All Appeals where the issue is the Compensation Amount shall be conducted using a baseball process in which the Claimant and the BP Parties exchange and submit in writing to the Appeal Panelist or Appeal Panel their respective proposals ("Initial Proposal") for the base Compensation Amount they propose the Claimant should receive. . . . Without an agreed resolution, the Appeal Panelist or Appeal Panel must choose to award the Claimant either the Final Proposal by the Claimant or the Final Proposal by the BP Parties but no other amount.**" (Emphasis added). Doc. 6430-1 at 63.

11

(3) the party did not act inadvertently); <u>Love v. Tyson Foods, Inc.</u>, 677 F.3d 258, 261 (5th Cir. 2012)(equitable doctrine of judicial estoppel protects the judicial system and does not require reliance of parties); <u>Ries v. Paige</u>, 610 F.3d 864, 876 (5th Cir. 2010)(judicial estoppel is means by which courts prevent a party gaining advantage by intentional self-contradiction statement or positions). If BP did not intend to engage in "baseball arbitration" or if it objected to the finality of such arbitration, BP was obligated to candidly inform the Court at the fairness hearing. BP did just the opposite – it intentionally put forth "baseball arbitration" as a reason for approval of the Settlement Agreement. (Doc. 7114-1 at 37). BP is bound by its words under judicial estoppel. <u>See</u>, <u>Flugence</u>, 738 F.3d at 129.

Claimants also understood that Section 6 was an arbitration provision for resolving all disputes regarding Claimant's awards through "baseball **arbitration.**" (Doc. 7104 at 27 (emphasis added)). Section 6 is an arbitration agreement and was touted to be such by BP before this Court. (Doc. 7114-1 at 37). BP cannot later change its position and argue that the process is not "baseball arbitration" or not arbitration of any type based on the doctrine of judicial estoppel. <u>Id.</u> The procedure created in Section 6 is arbitration as was recognized by both BP and Plaintiffs in their memoranda to the Court. (Doc. 7104 at 27, 7114-1 at 37). Under its plain terms, the Settlement Agreement called for arbitration.

Under a valid arbitration agreement, the arbitrator's decision must be final and binding on the parties. <u>See</u>, <u>e.g.</u>, <u>Hooters of America, Inc.</u>, 39 F. Supp. 2d at 618-19; <u>American Federation</u>, 126 Cal. App. 4th at 257-58, 24 Cal. Rptr. 3d at 291; <u>Kabia</u>, 713 N.Y.S. 2d at 254; <u>Cheng-Canindin</u>, 50 Cal. App. 4th at 684, 57 Cal. Rptr. 2d at 872. This requirement is specifically addressed in Section 6.2, which states, in pertinent part:

> "The Claimant and the BP Parties may choose to reach a compromise at any point up to the time the Appeal Panelist or Appeal Panel issues its decision. **Once the Appeal Panelist or Appeal Panel issues a decision, it shall be final.** The base compensation amount will then be presented to the Claims Administrator to further process the Claim as appropriate." (Emphasis added).

(Doc. 6430-1 at 63). The Settlement Agreement provides that, when the Claims Administrator

issued an Award or Denial of a claim, either BP or Claimant could dispute the decision before a neutral panel that was empowered to make a final decision. Id.  This process is the textbook definition of arbitration. See, GMC, 146 F.3d at 246.

### C.   BP's Dispute of Claimants' Awards Was Within The Scope Of The Arbitration Agreement And Was Fully Arbitrated To A Final Award.

Whether parties have agreed to arbitrate is for the Court to decide. See, Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). "To determine whether the parties agreed to arbitrate a dispute, the district court considers: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement." Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996). BP is barred by judicial estoppel from denying the existence of an arbitration agreement. See, Flugence, 738 F.3d at 129; Love, 677 F.3d at 261; Ries, 610 F.3d at 876.

The next question is whether BP's dispute of the "final compensation awards" made by the Claims Administrator for these Claimants was within the scope of the Agreement's arbitration clause.[3]  BP filed Notices of Appeal demanding Claimants' claims be decided by the Appeal Panels and then BP actively participated in each of the arbitrations. (Exhibits 6, 9, 10, 13, 14, 15). In each case, the Appeal Panel issued an award specifically deciding the amount of final compensation due each Claimant. (Exhibits 12, 26, 40, 54, 68, 82, 96). Clearly, the question of Claimants' compensation amounts was within the scope of the arbitration agreement.

By establishing the existence of an arbitration agreement and that the instant disputes fell within the terms of that agreement, Claimants have met the burden of proof under the FAA. See, Moses H. Cone Mem'l Hosp., 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785; Tricon

---

[3]      Section 6.1.2.4 of the Settlement Agreement specifically provides BP the right to appeal the "final compensation awards" made to Claimants by the Claims Administrator to a panel of neutral arbitrator(s) for a final decision. (Doc. 6430-1 at 62).

Energy Ltd. v. Vinmar Int'l, Ltd., 718 F.3d 448, 458 (5th Cir. 2013); Grant, 469 Fed. Appx. at 315 (citing, Carter, 362 F.3d at 297); QPro, Inc. v. RTD Quality Servs. USA, 761 F.Supp.2d 492, 496-97 (S.D. Tex. 2011). The burden now falls to BP to prove the arbitration provision of the Settlement Agreement was invalid or that the instant disputes fall outside the scope of the arbitration agreement. See, ASW Allstate Painting & Constr. Co. v. Lexington Ins. Co., 188 F.3d 307, 311 (5th Cir. 1999)(party denying validity of arbitration agreement has burden to prove invalidity). BP cannot demonstrate that Section 6 of the Settlement Agreement is an invalid arbitration provision or that the dispute is outside the scope of the arbitration provision. See, Flugence, 738 F.3d at 129.

In addition to the reasons noted above, it should also be noted that BP induced these Claimants and thousands of other businesses to file claims and execute releases in favor of BP by contending the Settlement Agreement is valid. (Exhibit 4, 18, 32, 46, 60, 74, 88). BP did this by promising to honor and be bound by the terms of the Settlement. (Doc. 6430-1 at 118). One of BP's contractual promises was in Section 17.1, which states:

> **"The Parties agree to support the final approval and implementation of this Agreement and defend it against objections, appeal, or collateral attack.** Neither the Parties nor their Counsel, directly or indirectly, will encourage any person to object to the Economic and Property Damages Settlement. Nothing in this Agreement shall impair BP's right to take any action to defend itself in any trial where BP is a party." (emphasis added).

(Doc. 6430-1 at 84). BP's only reservation to this promise was that BP would be allowed to defend itself in trials where BP was a party. Id. Every action taken by BP to object, appeal and attack the settlement is breach of contract by BP. BP's attack on Claimants' arbitration awards is a collateral attack on the implementation of this Agreement and a violation of BP's contractual obligations in the Settlement Agreement. Id.

BP's covenant not to object, appeal, or collaterally attack was made after extensive negotiations and with BP having full knowledge of the rights it was surrendering.  As stated in Recitals D and F of the Settlement Agreement:

> "D.   Plaintiffs contend they would prevail in litigation.  **BP disputes and denies the Plaintiffs' claims, has raised various affirmative and legal and other defenses, and contends that it would prevail in litigation."**
>
>     \*        \*        \*
>
> "F.   **BP has concluded that, in light of the costs, risks, burden, and delay of litigation, Settlement in this complex litigation is appropriate.  In this regard, BP and BP's Counsel agree that this Agreement is fair, reasonable, and an adequate resolution of the Deepwater Horizon Economic Litigation."**

(Doc. 6430-1 at 5) (emphasis added).  BP believed it had valid defenses and that it would prevail, yet BP surrendered those rights in favor of receiving Claimants' releases of liability. Id.

By freely and voluntarily surrendering these rights under the Settlement Agreement, BP gained the enormous benefit of resolving thousands of disputes with Economic Loss Class Members and specifically with the instant Claimants. (Doc. 6430-1 at 5, ¶ F).  Such a knowing, intelligent, and voluntary surrender of rights is waiver under the law. See, e.g., Watkins v. Fly, 136 F.2d 578, 580 (5th Cir 1948)(waiver is intentional relinquishment of known right); Robertson v. J.C. Penney Co., Inc., 484 F.Supp.2d 561, 567 (S.D. Miss. 2007)(voluntary waiver made with knowledge of the rights waived is binding on party); Rolls Royce Industrial Power v. M.V. Fratzis M., 1995 U.S. Dist. LEXIS 22219 *36 (S.D. N.Y. 1995)(voluntary and explicit surrender of known right is wavier and is enforceable).  When BP made this promise, BP knew there were risks associated with settlement.  BP intentionally and voluntarily went forward with settlement.

As part of the Settlement Agreement, BP agreed to defend the settlement against "objections, appeal, or collateral attack" and, by extension, not to participate in the making of such "objections, appeal, or collateral attack". (Settlement Sec. 17.1, Doc. 6430-1 at 84).  BP expressly agreed that the terms of the Agreement, including all Recitals and the dispute resolution provisions of Sections 6 and 17.1, were contractual and not mere recitals. (Doc. 6430-1 at 58-64, 84).  As stated in Section 26.1:

Plaintiffs, the Economic Class, and each Economic Class Member and the **BP Parties expressly and each agree that the terms of this Agreement, and all provisions hereof, including all representations, promises, agreements, covenants and warranties, and including the Exhibits thereto, are contractual and not a mere recital and shall survive the execution of this Agreement.**

(Doc. 6430-1 at 90 (emphasis added)). BP cannot now claim the Settlement Agreement is invalid as a grounds for resisting arbitration. See, Armstrong, 242 Fed. Appx. at 957; Klein, 710 F.3d 234 See, also, AT&T Tech., 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (citing, Steelworkers, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409). The Appeal Panels' decisions in favor of Claimants must be enforced as required by FAA and applicable case law.

## II. THE ARBITRATORS' AWARDS, AS ISSUED BY THE APPEAL PANELS, ARE FINAL AND MUST BE CONFIRMED AS REQUIRED BY THE FEDERAL ARBITRATION ACT.

### A. Claimants' Motion To Confirm Is Timely And Must Be Granted Unless It Is Vacated, Modified Or Corrected As Permitted Under Sections 10 And 11 Of The Federal Arbitration Award.

As set out in the Statement of the Facts, each of the Claimants properly made and substantiated their respective claims and received Awards based on the determinations of the Claims Administrator. In reliance on those Awards, each Claimant gave BP a Release of claims, the benefit of which BP accepted. (Exs. 4, 18, 32, 46, 60, 74, 88). BP disputed each Award and demanded a determination by a neutral third-person via the Appeal Panels. (Exs. 5, 19, 33, 47, 61, 75, 89). In each case, the Appeal Panel decided the dispute in favor of the Claimant and a Post-Appeal Award was made in the amounts shown on the Award Chart. (Exs. 12, 26, 40, 54, 68, 82, 96). See, Award Chart, supra, p.2. Under the requirements of the FAA and applicable case law, the Appeal Panels' Decisions are arbitration awards and must be confirmed unless vacated, modified or corrected on grounds allowed by FAA §§10 and 11. 9 U.S.C. §§10 and 11.

Section 9 of the Federal Arbitration Act provides for confirmation of arbitration awards, in part, as follows:

"If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then **at any time within one year after the award is made any party to**

**the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this** *title [9 USCS §§ 10, 11]*.**"** (Emphasis added, brackets in original).

9 U.S.C.S. §9; see also, FIA   Card Services, NA v. Gachiengu, 571 F.Supp.2d 799, 804 (S.D. Tex. 2008), citing, Bernstein Seawell & Kove v. Bosarge, 813 F.2d 726, 731 (5th Cir. 1987). As noted, the Court retained jurisdiction under Section 18.1 of the Settlement Agreement to enter orders enforcing the provisions of the Settlement Agreement, including the payment of claims, evidencing the parties' agreement for either party to seek confirmation of an arbitral award under 9 U.S.C. §9. (Doc. 6430-1 at 84, 85). See, P & P Indus., Inc. v. Sutter Corp., 179 F.3d 861, 867-868 (10th Cir. 1999)(a court has jurisdiction under the FAA to enter judgment if either (1) the agreement provides arbitration shall be final and binding because the only way to accomplish that is through judicial intervention or (2) the arbitration agreement incorporates rules permitting court to enter a judgment); Washington Mut. Bank v. Crest Mortg. Co., 418 F. Supp. 2d 860, 862 (N.D. Tex. 2006)(adopting the second approach listed above).

A motion or application to confirm an arbitration award is timely made if made within one year of the date of the award. Id. Each of the Movant-Claimants has made this motion to confirm the arbitration award within the one year provided by 9 U.S.C. §9. (Exs. 12, 26, 40, 54, 68, 82, 96). See, Award Chart, *supra*, p.2. Claimants' motion to confirm is properly before the Court seeking to enforce the arbitration awards rendered to these seven individual Claimants. See, 9 U.S.C. §6 (motion or application to court under FAA shall be made and heard in the manner provided for motions).

> **B.    BP Failed To Make A Timely Motion To Vacate, Modify Or Correct The Arbitration Awards In The Three Months Required By Section 12 Of The Federal Arbitration Act And Is Barred From Challenging The Claimants' Awards.**

Once a motion to confirm an arbitration is timely made, FAA §9 requires the Court to "grant an order confirming the arbitrator's award unless the award is vacated, modified or corrected as prescribed in sections 10 and 11 of this *title [9 USC §§10, 11]*." (emphasis and

included bracketed information in original). <u>See</u>, 9 U.S.C. §9; <u>see</u> <u>also</u>, <u>Hall Street</u>, 552 U.S. at 584 and 586, 128 S. Ct. at 1403 and 1404, 170 L. Ed. 2d at 263 and 264.

The FAA §12 also contains a "statute of limitations" for the filing of a motion to vacate, modify or correct pursuant to FAA §§10 and 11. <u>See</u>, <u>Martel v. Ensco Offshore Co.</u>, 449 Fed. Appx. 351, 355 n.1 (5th Cir. 2011). FAA §12 states, in pertinent part:

> **"Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."** (emphasis added).

9 U.S.C. §12. A party seeking to vacate an arbitration award must serve the adverse party within three months of the award and, failing to do so, results in a bar to the party's challenge of the award. <u>Id.</u>; <u>also</u>, <u>Martel</u>, 449 Fed. Appx. at 355 n.1("[T]he FAA's three month statute of limitations period governs the period of time within which a party must file a lawsuit in federal court asking the court to vacate, modify, or correct an arbitration."). If the motion to vacate is not filed within the three months, relief cannot be granted. <u>See</u>, <u>Bridgepoint Ventures, LLC v. Panam Mgmt. Group</u>, 524 Fed. Appx. 553, 554 (11th Cir. 2013)("[A] party's failure to move to vacate an arbitral award within the three-month limitations period bars him from raising the alleged invalidity of the award as a defense in opposition to a motion to confirm the award."); <u>Alvarado v. Wells Fargo Advisors, LLC</u>, 2011 US Dist. LEXIS 15301 *10 (S.D. Tex. 2011)(motion to vacate filed after three months of the arbitration award was "untimely" and, hence, denied). BP failed to file motions seeking relief from the arbitration awards issued by the Panels. (Exs. 12, 26, 40, 54, 68, 82, 96). After three months, BP abandoned its only challenge to the arbitration awards. <u>See</u>, <u>Bridgepoint Ventures</u>, 524 Fed. Appx. at 554; <u>Martel</u>, 449 Fed. Appx. at 355 n.1.

> **C. Where There Is A Timely Motion To Confirm An Arbitration Award And No Timely Motion To Vacate, Modify Or Correct, The Court Must Confirm The Award In The Manner Required By Section 9 Of The Federal Arbitration Act.**

In <u>Hamstein Cumberland Music Group v. Williams</u>, 532 Fed. Appx. 538, 543-44 (5th Cir. 2013), the district court *sua sponte* elected to reduce rather than vacate an arbitrator's award

from $634,641.44 to $564,162.51. Id. at 541. See, also, Frontera E. Ga. v. ARAR, Inc., 483 Fed.

Appx. 896, 899 (5th Cir. 2012)(district court must grant confirmation or vacate the award on

grounds permitted by FAA §§10 or 11). The Fifth Circuit, applying a *de novo* standard of

review, concluded vacatur was improper and the award was due to be confirmed. Hamstein, 532

Fed. Appx. at 543-44.  The Hamstein Court, quoting Hall Street Assocs., L.L.C. v. Mattel, Inc.,

552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008), stated:

> "The Supreme Court has noted that **FAA § 9's 'provision for judicial
> confirmation carries no hint of flexibility.'** *Hall St., 552 U.S. at 587*. Thus,
>
> > "**[o]n application for an order confirming the arbitration award,
> > the court 'must grant' the order 'unless the award is vacated,
> > modified, or corrected as prescribed in *sections 10 and 11* of this
> > title.' There is nothing malleable about 'must grant,' which
> > unequivocally tells courts to grant confirmation in all cases, except
> > when one of the 'prescribed' exceptions applies."**
>
> "*Id.* Given that *§§ 10 and 11* of the FAA provide the exclusive means to modify
> or vacate an arbitration award, *id. at 578*, **the district court, faced with
> Hamstein's motion to confirm the award, was required to grant an order of
> confirmation absent recourse to one of the seven, narrow grounds for
> modification or vacatur found in *§§ 10 and 11*.**"

532 Fed. Appx. at 543 (emphasis added).  Faced with a meritorious motion to confirm an

arbitration award, a district court "must grant" the motion unless relief under FAA §§10 or 11 is

required. Id. There is "no hint of flexibility" and no room to revisit the merits of the award. Id.

As with Hamstein, the Court is presented a meritorious motion to confirm the arbitration

awards in favor of Claimants. See, 532 Fed. Appx. at 543. The Court's obligation is "**to grant

an order of confirmation absent recourse to one of the seven, narrow grounds for

modification or vacatur found in *§§ 10 and 11*.**" Id.  The authority of judicial review to refuse

confirmation was limited by Section 9 and Hall Street to the enumerated reasons identified in

FAA sections 10 and 11.  9 U.S.C. §§ 9, 10 & 11; Hall Street, 552 U.S. 576, 128 S. Ct. 1396,

1402, 170 L. Ed. 2d 254.

In the instant case, the questions of vacatur, modification or correction of the arbitrators'

awards is not before the Court because BP elected not to seek relief under FAA §§10 or 11 in the

three month "statute of limitations" period established by FAA §12. See, Martel, 449 Fed. Appx. at 355 n.1; Bridgepoint Ventures, 524 Fed. Appx. at 554; Alvarado, 2011 US Dist. LEXIS 15301 at *10.  Claimants' arbitration awards are timely before the Court on this motion to confirm and the Court "must grant" the requested orders of confirmation. Id.; see also, 9 U.S.C. §9.

## III.   THE COURT MUST APPLY CONTROLLING FEDERAL LAW AND CANNOT DISRUPT AN ARBITRATION AWARD EXCEPT ON GROUNDS PERMITTED BY SECTIONS 10 AND 11 OF THE FEDERAL ARBITRATION ACT.

The arbitrations between Claimants and BP reached final resolution with arbitrators' awards issued and amounts calculated. (Exs. 12, 26, 40, 54, 68, 82, 96). See, Award Chart, *supra*, p. 2.  The Court is constrained by federal law from exercising injunctive power over arbitration awards beyond the limits imposed by the FAA. See, Hall Street, 552 U.S. 576, 128 S. Ct. 1396, 1402, 170 L. Ed. 2d 254; Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co., 304 F.3d 476, 486-87 (5th Cir. 2002).  As stated in Gulf Guar. Life Ins. Co., before the arbitral process is complete, a district court's power to intervene is limited, to-wit:

> **"Under the FAA, jurisdiction by the courts to intervene into the arbitral process prior to issuance of an award is very limited.** *See Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001). **Courts are limited to determinations regarding whether a valid agreement to arbitrate exists and the scope and enforcement of the agreement, including the arbitrability of given underlying disputes under the agreement.** *See id.* at 1085-8.
>
> \*          \*          \*          \*
>
> "9 U.S.C. § 4 (1999). **The FAA does not provide therefore for any court intervention prior to issuance of an arbitral award beyond the determination as to whether an agreement to arbitrate exists and enforcement of that agreement by compelled arbitration of claims that fall within the scope of the agreement even after the court determines some default has occurred. "**

304 F.3d at 486-87 (emphasis added).   Courts are largely prohibited from exercising interlocutory review of arbitration proceedings because there is nothing in the FAA that displaces the limitations on judicial review set by FAA §10 and 11. See, Savers Prop. And Cas. Ins. Co. v Nat'l Union Fire Ins. Co., 748 F.3d 708, 719-20 (5th Cir. 2014).

After an arbitration award is issued, the district court's jurisdiction is strictly limited to confirmation under FAA §9 or relief from the award under FAA §10 or 11 through vacatur, modification or correction upon a timely motion under FAA §12. See, Decker v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 205 F.3d 906 (6th Cir. 2000). As stated by the Decker Court:

> **"Once an arbitration is conducted under a valid arbitration contract, the FAA 'provides the exclusive remedy for challenging acts that taint an arbitration award."** *Corey v. New York Stock Exch., 691 F.2d 1205, 1211 (6th Cir. 1982).* A party may file a petition to vacate an arbitration award . . . .' *9 U.S.C. § 10(a).* In addition, a party may petition a federal court to modify or correct an award . . . .' *9 U.S.C. § 11(a)-(c).* **An arbitrator's award will be binding on the parties unless they challenge the validity of the underlying contract to arbitrate under § 2 of the FAA or seek to vacate, modify, or correct the award under §§ 10 or 11."** (Emphasis added).

205 F.3d at 909. See, also, Hall Street, 552 U.S. 576, 128 S. Ct. 1396, 1402, 170 L. Ed. 2d 254; Hamstein, 532 Fed. Appx. at 543-44; Bridgepoint Ventures, 524 Fed. Appx. at 554; Martel, 449 Fed. Appx. at 355 n.1. Unless the requested injunction is based on grounds allowed by the FAA, it is an impermissible challenge to an arbitration award.[4] Id.

Even if the Panels' awards were based on manifest mistakes of fact or misapplication of law, the awards may not be set aside under the FAA on that basis. See, e.g., Bain v. Bank, 2013 U.S. App. LEXIS 18180 (5th Cir. 2013)("manifest disregard of the law" not basis for vacatur or modification); Woods v. PAM Transp., Inc.-LU, 440 Fed. Appx. 265, 269 (5th Cir. 2012)("manifest disregard" not grounds for vacatur or modification); Citigroup Global Markets, Inc. v. Bacon, 562 F.3d 349, 358 (5th Cir. 2009)(judicial review of arbitration award strictly limited to grounds in FAA §§10 and 11). Under Hall Street and all subsequent case law interpreting the FAA, no judicial review is allowed of an arbitration award except on the limited basis permitted by §§10 and 11 of the FAA. See, Oxford Health Plans, LLC v. Sutter, 133 S. Ct.

---

[4]     Where the arbitration award is subject to the FAA, an injunction may prevent an arbitration award from going into effect until the motion to vacate, modify or correct has been addressed, but no other relief is available to challenge an arbitration award.

2064, 2068; 186 L. Ed. 2d 113, 119 (2013)(Hall Street prohibits vacatur of arbitration award even for patent mistake of law or fact); Hamel-Schwulst v. Country Place Mortg. Ltd., 406 Fed. Appx. 906, 914 (5th Cir. 2010)(court cannot vacate arbitration award based on merits of party's claim or defense); Apache Bohai Corp. LDC v. Texaco China BV, 480 F.3d 397, 409-10 (5th Cir. 2007)(arbitrator's findings of facts must be accepted as true); Rogers v. KBR Technical Services, Inc., 2007 U.S. Dist. LEXIS 83070 *9-*10 (S.D. Tex. 2007)(mistake of law or fact insufficient to vacate award).  The sound policy underpinning these restrictions stated in Oxford Health:

> **"Under the FAA, courts may vacate an arbitrator's decision "only in very unusual circumstances."** *First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).* **That limited judicial review, we have explained, "maintain[s] arbitration's essential virtue of resolving disputes straightaway."** *Hall Street Associates, L. L. C. v. Mattel, Inc., 552 U.S. 576, 588, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008).* **If parties could take "full-bore legal and evidentiary appeals," arbitration would become "merely a prelude to a more cumbersome and time-consuming judicial review process."** *Ibid.*" (emphasis added).

133 S. Ct. at 2068, 186 L. Ed. 2d at 119.  BP's only challenge to Claimants' arbitration awards was by a motion to vacate, modify or correct under FAA §§10 or 11.

Claimants are mindful of the discretionary review provision in Section 6.6 of the Settlement Agreement, which states:

> "6.6  Court Inherent Jurisdiction. The Court maintains the discretionary right to review any Appeal determination to consider whether the determination was in compliance with the Agreement.  Upon reviewing such a determination, the Court shall treat the Appeal determination as if it were a recommendation by a Magistrate Judge."

(Doc. 6430-1 at 64).  Section 6.6 grants the Court the power of judicial review, but the inherent jurisdiction of the Court to inquire into an arbitration award is restricted by the FAA and must be viewed in light of the federal law limitations set out in FAA §§10 and 11. See, Hall Street, 552 U.S. at 579, 128 S. Ct. at 1400-01, 170 L. Ed. 2d at 260; Moses H. Cone Mem'l Hosp., 460 U.S. 1, 103 S.Ct. at 942, 74 L.Ed.2d at 786 n. 32.  However, a request for discretionary review on grounds other than those allowed by FAA §§10, 11 seeks relief that is beyond the jurisdiction of

the Court under the FAA and runs afoul of the Hall Street prohibition against expansion of judicial review of arbitration awards. See, Hall Street, 552 U.S. at 584, 128 S. Ct. at 1403, 170 L. Ed. 2d at 263; Gulf Guar. Life Ins. Co., 304 F.3d at 486-87.   Therefore, even if BP could now request discretionary review of Claimants' awards, BP's requests could go no further than a motion to vacate, modify or correct as permitted by the FAA and would have to be made within the three month period of FAA §12. Id.

BP sought Discretionary Review with respect to only Claimants 906 and 435. (Exhibits 14, 28). Even if a Request for Discretionary Review could be considered as a motion to vacate, alter and amend, which it cannot, there could still be no relief for BP because there exists no grounds for such relief under FAA §§10 or 11.  As set out in Martel v. Ensco Offshore Co., 449 Fed. Appx. 351 353-54 (5th Cir. 2011):

> **"Under the Federal Arbitration Act ("FAA"), there are four statutory bases upon which an arbitration award may be vacated:**
> **(1) where the award was procured by corruption, fraud, or undue means;**
> **(2) where there was evident partiality or corruption in the arbitrators, or either of them;**
> **(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or**
> **(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award [\*354] upon the subject matter submitted was not made.**
>
> **9 U.S.C. § 10(a). These are the exclusive grounds according to which a district court may vacate an arbitration award.** *Hall St. Assoc., L.L.C. v. Mattel, Inc., 552 U.S. 576, 584, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008)."*

449 Fed. Appx. at 353-54 (emphasis added).  An arbitration award cannot be set aside without a motion to vacate, modify or correct and, even then, only if the motion is made within three months of the award. See, Bridgepoint Ventures, 524 Fed. Appx. at 554, Martel, 449 Fed. Appx. at 355 n.1; 449 Fed. Appx. at 353-54.  BP has not asserted that any of these grounds exist and no such assertion could be made in good faith.  Since no grounds for vacatur, alteration or amendment have been raised and since none exist, the Court "must grant" Claimants' motion to

confirm their respective arbitration awards. See, Hamstein, 532 Fed. Appx. at 543-44 (citing, Hall Street, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254).

## IV. THE CLAIMS ADMINISTRATOR HAS A MINISTERIAL DUTY TO PAY EACH OF THE CLAIMANTS' CLAIMS AND SHOULD BE DIRECTED TO DO SO BY THE COURT.

As set out above, the FAA mandates the Court to "grant an order confirming the arbitrator's award unless the award is vacated, modified or corrected as prescribed in sections 10 and 11 of this *title [9 USC §§10, 11]*." See, 9 U.S.C. §9. See, also, Hall Street, 552 U.S. at 584, 128 S. Ct. at 1403, 170 L. Ed. 2d at 263. There are no grounds for vacatur, modification or correction and BP failed to make a timely motion for such relief. Therefore, confirmation of the awards must be granted by the Court. Upon such confirmation, the Claims Administrator has a ministerial duty to pay Claimants in accordance with the Settlement Agreement.

Rule 18 of the Rules Governing Discretionary Court Review of Appeal Determinations, R. G. Dis. Ct. Rev., requires the Claims Administrator to pay the claims. As stated in Rule 18:

> **"If no Request has been submitted to the Appeals Coordinator on or before the 15th day following service of the Notice of Appeal Panel Decision, the Claims Administrator shall proceed with payment of the claim in accordance with the Appeal Panel decision,** or if the Appeal Panel denied the claim, the Claims Administrator shall close the claim." (emphasis added).

Doc. 10185-1 at 4. Calculation of award amounts is governed by Rule 17 (e)(4) of the Rules Governing The Appeals Process, which states:

> "(e) Post-Appeal Eligibility Notice: **The Claims Administrator will apply the decision of the Appeal Panel in a Post-Appeal Eligibility Notice. As applicable the Post-Appeal Eligibility Notice will reflect the following:**
>
>       *           *           *
>
> (4) Assessment of 5% Review Cost for BP Appeals: **If the Appeal Panel awards the same amount as the claimant's Eligibility Notice or the amount of the claimant's Final Proposal, the Claims Administrator shall add 5% of the total pre-RTP Compensation Amount listed in the Eligibility Notice to the Award Amount.**" (emphasis added).

(Exhibit 98). The amount of each Post-Appeal Award is set out in the Awards Chart, *supra*, p.2.

The arbitration processes are fully complete, final and binding.  All that remains is for the Claims Administrator to complete his duty to "proceed with payment. . . ." Doc. 10185-1 at 4. The case of <u>United States v. O'Keefe</u>, 128 F.3d 885, 890 (5th Cir 1997), defines a "ministerial act" as "an act that is essentially clerical and does not involve the exercise of discretion or judgment." <u>Id.</u> at 890.  <u>See, also</u>, <u>United States ex rel. McLennan v. Wilbur</u>, 283 U.S. 414, 420, 51 S.Ct 502, 504, 75 L.Ed. 1148 (1931)("ministerial duty" is a duty in which "the obligation to act [is] peremptory, and plainly defined").  In <u>Noffke v. Bakke</u>, 760 N.W.2d 156, 168 (Wis. 2009), the Wisconsin Supreme Court defined "ministerial duty" as:

> **"A ministerial duty is one that 'is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.'"**

760 N.W.2d at 168 (emphasis added).  Payment of the Post-Appeal Award to Claimants is a ministerial duty of the Claims Administrator under the law and the Settlement Agreement.

## CONCLUSION

Under the terms of the Settlement Agreement, the Federal Arbitration Act and applicable law, Claimants pray the Court to grant the order confirming the arbitrators' awards (Panels' Decisions) in favor of Claimants.  Further, Claimants pray the Court to direct the Claims Administrator to perform his ministerial duty by paying Total Compensation Amounts to Claimant 100118906 the sum of $576,473.21; Claimant 100002435 the sum of $172,317.19; Claimant 100108968 the sum of $536,563.22; Claimant 100085956 the sum of $37,175.71; Claimant 100002391 the sum of $122,410.71; Claimant 100002383 the sum of $189,242.08 and Claimant 100146954 the sum of $494,364.18.  Alternatively, Claimants pray the Court to accept this motion to confirm but to suspend consideration of it on the merits until the United States Circuit Court of Appeal for the Fifth Circuit issues its decision in Case No. 14-30398.

RESPECTFULLY SUBMITTED,

s/E. J. Saad
E. J. SAAD (AL861451)
ejsaad@ejsaadlaw.com

25

s/ Matthew Andrews
MATTHEW ANDREWS (AL167247)
mandrews@ejsaadlaw.com
ATTORNEYS FOR CLAIMANTS

OF COUNSEL:

E. J. SAAD LAW FIRM
6207 COTTAGE HILL ROAD, SUITE G
MOBILE, ALABAMA  36609
Phone:  (251) 660-0888
Fax:      (251) 660-0777