EXHIBIT 11

**RESPONSE AND FINAL PROPOSAL OF**

▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬, LLC, (▬▬▬▬▬▬▬▬▬▬ respectfully submits this Final Offer and Response to BP Exploration & Production, Inc.'s, (BP), Initial Offer with regard to Claimant No. 100118906.  ▬▬▬▬▬▬▬▬▬▬ and BP agree regarding the classification of certain revenue accounts.  ▬▬▬▬▬▬▬▬▬▬ specifically disagrees with BP's arguments regarding whether the Claims Administrator accounted for any variance between profit and loss statements (P&Ls) and tax returns, whether ▬▬▬ ▬▬▬▬▬▬ suffered economic damage under the settlement agreement and the arguments presented regarding the "Matching" and "Smoothing" issues addressed in the Court's Orders of March 5, April 5 and April 9.

### I. "Miscellaneous Income" and "Other Income" should not have been included in Revenue.

▬▬▬▬▬▬▬▬▬▬ and BP agree that "Miscellaneous Income" and "Other Income" are "outside of normal business operations and should not have been included as revenue." (Doc. ID 12004566 at 4, 5).  In its Brief, BP suggests that reclassifying these accounts will reduce ▬▬▬▬▬▬▬▬▬▬'s Compensation Amount by $4,683.00.  ▬▬▬▬▬▬▬▬▬▬ accepts this estimate.  Accordingly, in its Final Proposal, ▬▬▬▬ ▬▬▬▬▬▬ requests an Economic Damages Compensation Amount of $441,587.09.

### II. Standard of Review

Within the Settlement Agreement, when there is variance between a claimant's profit & loss statements and tax returns, the Claims Administrator is directed and empowered to use his discretion to request source documentation from the Claimant.

(Doc. ID 6430-8 at 3; 6430-1 at 21, 22). This is a discretionary act, and while the initial standard of review on Appeal is "De Novo," (Doc. 6279-1 at 60), where the challenged decision arises from the Claim Administrator's discretionary act, the standard of review is abuse of discretion. See, Hebert v. Rodriguez, 430 Fed. Appx. 253, 255 (5th Cir. 2011) (district court's factual findings reviewed under the abuse of discretion standard, while legal conclusions reviewed under "de novo" standard); Becker v. Tidewater, Inc., 586 F.3d 358, 367, 369 (5th Cir. 2009) (under maritime law, trial court's discretionary evidentiary rulings are review under abuse of discretion standard, while contract interpretation reviewed de novo); Cardinal Servs. v. Omega Protein Inc., 304 Fed. Appx. 247, 251, 255 (5th Cir. 2008) (maritime law reviews discretionary evidentiary rulings for abuse of discretion, while questions of law are reviewed de novo). Because the Settlement Agreement is governed by General Maritime Law, the Fifth Circuit's standard of review for discretionary decisions is obligatory. (Settlement Agreement at §36.1).

An administrator's discretionary decision will be overruled by a court under the abuse of discretion standard only if the administrator acted arbitrarily or capriciously. See, Meditrust Financial Serv. Corp. v. Alcorn, 168 F.3d 211 (5th Cir. 1999) ("arbitrary and capricious standard for review of plan administrator's decision"); Wildbur v. Arco Chem Co., 974 F.2d 631, 637 (5th Cir. 1992) (if plan grants discretion to administrator, his discretionary decisions reviewed under abuse of discretion standard, administrator's legal decisions reviewed under de novo standard); Phillips v. Maritime Ass'n – I.L.A. Local Pension Plan, 194 F. Supp. 2d 549, 554 (E.D. Tex. 2001) (administrator's discretionary decisions reviewed under abuse of discretion standard).

Furthermore, under Section 4.3.8 of the Settlement Agreement, the Claims Administrator and his Vendors are instructed to evaluate the Claimant's supporting documents and claim forms:

> "under the terms in the Economic Damage Claim Process to produce the greatest ECONOMIC DAMAGE COMPENSATION AMOUNT that such information and supporting documentation allows under the terms of the ECONOMIC DAMAGE CLAIM FRAMEWORK."

(Doc. 6430-1 at 22). In essence if a Claimant's claim documentation can be seen in two lights, the more favorable one should be used to calculate the claim. BP agreed to this by agreeing to the Settlement Agreement, but through this appeal BP seeks to undue that promise. The Claims Administrator, using his and his Vendor's judgment, has evaluated and accurately determined that the books and records of ▅▅▅▅▅▅▅▅▅ provide an accurate picture of the Limited Liability Company's business history. BP's appeal and its arguments violate the Settlement Agreement, specifically Section 4.3.8; as such, they should be rejected, and the Claimant's award affirmed.

### III. The Claims Administrator Made a Diligent and Thorough Inquiry into the Books and Records of ▅▅▅▅▅▅▅▅▅, LLC.

The BP Parties' Initial Brief suggests that the Claims Administrator failed to account for variance between ▅▅▅▅▅▅▅▅▅ federal tax returns and P&Ls and that additional documentation should have been requested. On November 14, 2012, the Claims Administrator's Vendors addressed this very point as follows:

> "Due to the change in Accounting methodology change in 2008, we are unable to reconcile 2008, 2009, 2010, and 2011 profit and loss statements to 2008, 2009, 2010, and 2011 Tax Returns. Please provide

3

documentation reconciling the aforementioned profit and loss statements to Tax Returns."[1]

(Doc. ID 6366399). On April 4, 2013, ▮▮▮▮▮▮▮▮ provided the Claims Administrator's Vendors with a reconciliation of net income for 2007, 2008, 2009, 2010 and 2011 as well as adjusting entries, tax trial balance and supporting workpapers for 2009, 2010 & 2011. (Doc. ID 9470683, 9453704, 9453710, 9453719, 9453724, 9453730, 9453740, 9453743). The Claims Administrator's Vendors specifically reference these documents in their Accountant Compensation Calculation Schedules: Calculation Notes. (Doc. ID 11402181 at 1, #1). The additional source documents provided by ▮▮▮▮▮▮▮▮ were used by the Accountant Reviewers to ensure that the P&Ls submitted by ▮▮▮▮▮▮▮▮ were complete and accurate and that any differences in revenue or net income were purely a product of the P&Ls being maintained on the Accrual Accounting Method and the Tax Returns being prepared on the Completed Contract Accounting Method. (Doc. ID 9470683, 9470683, 9453704, 9453710, 9453719, 9453724, 9453730, 9453740, 9453743, 4730712, 4730754, 4730789, 4730856, 4730909, 4730959, 4731770, 4732770, 4734400, 4735085) IRS Regulations allow for construction contractors to keep their books on an accrual method (like percentage completion) and file taxes on a different basis such as cash or completed contract. See "Accounting for Construction Contractors – Construction Tax Tips" www.irs.gov. /Businesses/Small-Businesses-&-Self-Employed/Accounting-for-Construction-Contracts-Construction-Tax-Tips. The 2010 adjusting entries were uploaded twice, once for 2010

---

[1] Typographical errors unchanged from original.

and a second time in place of the 2009 adjusting entries. (Doc. ID 12004566 at 3).  This was a purely clerical error; the 2009 adjusting entries are attached hereto and incorporated into this brief. (Exhibit A).  The adjusting entries for 2008 are also attached hereto and incorporated into this brief. (Exhibit B).  This additional documentary support for the claim further demonstrates that ███████████ 2008 books and tax returns were created and maintained using the same Accounting Methods as in 2009, 2010 and 2011. (See, Exhibit B).  Based on these additional documents the Claims Administrator determined in his discretion that the P&Ls submitted by ███████████ were reliable and represented a valid record of the Limited Liability Company's business history.

BP has not shown that there was an abuse of discretion by the Claims Administrator in making this classification, its argument on this issue should be disregarded and the full award for ███████████ confirmed by the Appeal Panelist.

IV.  **The Claims Administrator's Determination that ███████████ suffered Economic Damage under the Settlement Agreement was Correct.**

BP is incorrect in its assessment that if ███████████ Claim was remanded, then it would not qualify under the Settlement Agreement. (Doc. ID 12004566 at 3, 4).  The underlying criticism in BP's Initial Brief appears to be a frustration that ███████████ prepares its tax returns using the Completed Contract Accounting Method and maintains its books using the Accrual Accounting Method. The terms of the Settlement Agreement do not incorporate Generally Accepted Accounting Principles

5

(GAAP) or specific IRS Regulations (other than those associated with the filing of valid tax returns).  However, IRS Regulations allow for construction contractors to keep their books on an accrual method (like percentage completion) and file taxes on a different basis such as cash or completed contract.  See "Accounting for Construction Contractors – Construction Tax Tips" www.irs.gov. /Businesses/Small-Businesses-&-Self-Employed/Accounting-for-Construction-Contracts-Construction-Tax-Tips.  ▮▮▮▮▮▮▮▮▮▮ methods are acceptable and done in the ordinary course of its business.  Because different bases are used, different accounting methods generally produce different revenue or net income in a specific period.  For instance, if ▮▮▮▮▮▮▮▮▮▮ had used a Cash Basis Accounting Method a third set of figures would be produced; however, if properly prepared they too would be accurate.

   As stated above and in ▮▮▮▮▮▮▮▮▮▮'s Initial Offer and Supporting Brief, ▮▮▮▮▮▮▮▮▮▮ has complied with the documentation requirements as set forth in Exhibit 4A of the Settlement Agreement.  Only after a thorough review of the claim documentation submitted by ▮▮▮▮▮▮▮▮▮▮ and additional source documentation submitted at the request of the Claims Administrator's Vendors has the Claims Administrator determined in his discretion that ▮▮▮▮▮▮▮▮▮▮ is a class member, is eligible for an Economic Damages Compensation Award and has calculated that Compensation Award Amount.  BP's arguments lack any footing in the Settlement Agreement and are based on mere speculation.  ▮▮▮▮▮▮▮▮▮▮ has complied with the terms of the Settlement Agreement, BP's arguments should be disregarded, and the requested award should be affirmed by the Appeal Panelist.

**V.     Adoption of Prior Arguments Regarding the "Matching" and "Smoothing" Issues and the Court's Orders of March 5, April 5 and April 9.**

████████████████ adopts its prior facts and arguments as presented in its Initial Offer and Supporting Brief. ████████████████ also directs the Appeal Panelist to footnote 2 of BP's Initial Brief which acknowledges that the "matching" and "moothing" (as BP states the "last two") issues presented by BP in its Appeal is "governed by the Court's prior Orders" of March 5, April 5 and April 9 and therefore should be denied. (Doc. ID 12001665 at 1).

## CONCLUSION

For the reasons stated herein and in its prior brief, ████████████████ asks the Appeal Panelist to issue a finding that the basis of BP's Appeal is unfounded, that ████████ ████████████ has complied with the terms of the Settlement Agreement, and that a Compensation Amount of $441,587.09 with a RTP Multiplier of 0.25 is the appropriate award. Such a result is in keeping with the terms, methods and formulae established by the Settlement Agreement. ████████████████ further requests that the Appeal Panel confirm that the reimbursable accounting support determined by the Claim Administrator is appropriate. The Award granted by the Claim Administrator should be upheld.

s/E. J. Saad
E. J. Saad

s/Matthew Andrews
Matthew I. D. Andrews
Attorneys for Appellee/Respondent,
████████████████, LLC

7

OF COUNSEL:

E. J. SAAD LAW FIRM
6207 Cottage Hill Road, Suite G
Mobile, Alabama  36609
Telephone (251) 660-0888
Fax:  (251) 660-0777
ejsaad@ejsaadlaw.com
mandrews@ejsaadlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Brief has been served on the following named persons by electronic filing on this 6th day of September, 2013:

Richard C. Godfrey, Esq.
Kirkland & Ellis, LLP
300 North LaSalle Blvd.
Chicago, Illinois 60654


R. Keith Jarrett, Esq.
Liskow & Lewis
Suite 500
One Shell Square
701 Poydras Street
New Orleans, Louisiana 70113


          /s/ Matthew Andrews
          Matthew I. D. Andrews

# EXHIBIT A

**December 31, 2009**

|  |  |  |  |
|---|---:|---|---|
|  |  |  | Political Contributions |
| Tax Depr | 16,144.92 |  |  |
| Book Depr | 7,558.44 |  |  |
| Tax > Book | 8,586.48 | Book \ tax Adj | Completed Contract Rev |
|  |  |  | % Comp Rev |
| Tax Depr | 16,144.92 |  | CC Adjustment to Rev |
| AMT Depr | 15,790.46 |  |  |
| Tax > AMT | 354.46 | Amt Adj | Comp Contract Costs |
|  |  |  | Less Costs on WIP @ 12/31 |
| Fed Depr | 16,144.92 |  | CC Adjustment to costs |
| State Depr | 18,323.65 |  |  |
| Fed > State | (2,178.73) | Fed \ state adj | Adjustment to Books |
|  |  |  |  |
| Tax Gain | 840.96 |  |  |
| Book Gain | (2,081.26) |  |  |
| Tax > Book | 2,922.22 |  |  |
|  |  |  |  |
| Tax Gain | 840.96 |  |  |
| AMT Gain | (1,302.04) |  |  |
| Tax > AMT | (2,143.00) |  |  |
|  |  |  |  |
| Tax Gain | 840.96 |  |  |
| State Gain | 840.96 |  |  |
|  | - |  |  |

| | |
|---|---:|
| Prior on open jobs @ 12/31/08 | (200,740) |
| Profit on open Jobs @ 12/31/09 | 175,348 |
| Deferred OH @ 12/31/09 | (36,752) |
| | |
| % comp AMT Adjustment | (62,144) |

|  |  |  |
|---|---:|---|
|  | - |  |
|  | 2,640,463.00 |  |
|  | 1,986,048.00 |  |
|  | **654,415.00** | CR to 501 |
|  | 2,453,449.00 |  |
|  | 1,824,428.00 |  |
|  | **629,021.00** | DR to 601 |
|  | **25,394.00** |  |

|  |  |  |
|---|---:|---|
| Deferred OH at 12/31/08 | - |  |
| Deferred OH at 12/31/09 | 36,752.34 |  |
| Adjustment to deferred OH | 36,752.34 | **Positive # deduct from expense** |
| Total JC @ 12/31/09 | 1,824,428.00 |  |
| JC on jobs in Progress | 1,005,228.00 |  |
| Percent of Total | 55.10% |  |
| Total OH @ 12/31/09 | 66,703.27 |  |
| Amount to be deferred | 36,752.34 |  |

# EXHIBIT B

**December 31, 2008**

|  |  |  |  |
|---|---|---|---|
|  |  |  | Contributions |
| Tax Depr | 18,505.45 |  |  |
| Book Depr | 7,560.28 |  |  |
| Tax > Book | **10,945.17** | Book \ tax Adj | Revenues |
|  |  |  | Less Revenue on WIP @ 12/31 |
| Book Depr | 18,505.45 |  | Completed Contract Revenue |
| AMT Depr | 16,396.13 |  |  |
| Tax > AMT | **2,109.32** | Amt Adj | Costs of Revenue |
|  |  |  | Less Costs on WIP @ 12/31 |
| Fed Depr | 18,505.45 |  | Completed Contract Costs |
| State Depr | 13,058.62 |  |  |
| Fed > State | **5,446.83** | Fed \ state adj | Adjustment to Books |

| | |
|---|---|
| Prior on open jobs @ 12/31/07 | - |
| Profit on open Jobs @ 12/31/08 | 200,740 |
| AMT Adjustment | **200,740** |

| | |
|---|---:|
| | **500.00** |
| | |
| | 2,601,904.00 |
| | 2,031,983.00 |
| | **569,921.00** |
| | |
| | 2,393,338.00 |
| | 1,831,243.00 |
| | **562,095.00** |
| | |
| | **200,740.00** |