EXHIBIT 90

BP'S INITIAL PROPOSAL REGARDING CLAIM NO. 105011

INTRODUCTION

BP Exploration & Production Inc. ("BP") respectfully submits this Memorandum in Support of its Initial Proposal with regard to the appeal of Claim No. 105011 (Claimant ▇▇▇▇▇▇▇▇▇).

Claimant is a plumbing contractor located in ▇▇▇▇▇▇▇▇▇ (Zone D), more than 200 miles from the Gulf of Mexico.  The Settlement Program awarded Claimant $379,606.04 ($476,665.05 post-RTP) despite the fact that Claimant's annual Variable Profit decreased every year from 2007 to 2010, before the Spill.  BP files this appeal because the Settlement Program made four errors in its calculation of the Claimant's Award Amount:  (1) it improperly included non-operating income as revenue; (2) it misclassified certain expenses as fixed when they are variable; (3) it failed to properly allocate payroll; and (4) it failed to subtract variable expenses from the corresponding revenue they generated.[1]

Because it is not possible based on the existing record evidence to perform an accurate calculation of what losses, if any, Claimant has incurred that are compensable pursuant to the terms of the Settlement Agreement, BP recommends that this claim be remanded to the Settlement Program with instructions to obtain accurate data from Claimant and to perform a proper calculation.  If, however, it is determined that a remand is not appropriate in this situation, BP submits an Initial Proposal of $0, as the record evidence does not support an award of any compensation

---

[1] The first two issues are not governed by any of the Court's prior Orders.  To the extent the third issue is addressed by any of the Court's prior Orders, it is appealed solely for purposes of preserving further rights of appeal.  BP respectfully refers the Appeals Panel to the Court's prior Orders.  The fourth issue is governed by the Court's prior Orders and is appealed solely to preserve rights of further appeal.  BP respectfully refers the Panel to the Court's prior Orders.

1

EXPLANATION OF BP'S POSITION

I.     The Settlement Program Erred by Including as Revenue Non-Operating Income

The Business Economic Loss Framework ("BEL Framework") measures changes in economic activity in business operations.  *See* Settlement Agreement, Ex. 4C.  As expressly stated in the Settlement Agreement, "[t]he compensation framework for business claimants compares the *actual profit of a business* during a defined post-spill period in 2010 to the profit that the claimant might have expected to earn in the comparable post-spill period of 2010."  Settlement Agreement, Ex. 4C at 1 (emphasis added).  This methodology places a premium on properly classifying a business's revenue, because only the revenue derived by the business generates the business's variable profits, the "actual profit *of a business*."  *Id.*  (emphasis added).  Accordingly, revenue that is not associated with the business's operations must be excluded, because that revenue does not inform what the business "might have expected to earn" in the absence of the Spill.  *Id.*

Here, the Settlement Program erred by including as revenue reimbursements of expenses which are labeled "Materials Paid by Owner" on Claimant's profit and loss statements.  Cost reimbursement payments are not actual profit derived by the business and are unrelated to what a claimant might have expected to earn in the absence of the Spill.  As the Claims Administrator has expressly recognized, "reimbursed expenses . . . are not typically earned as revenue under the normal course of operations in an arm's length transaction" and therefore "shall not typically be treated as 'revenue' for purposes of the various calculations to be performed under the terms of the Settlement Agreement with regard to entities asserting BEL claims."  *See* Policy 328, Business Economic Loss Claims: Non-Revenue Items of Entities.  Accordingly, the "Materials Paid by Owner" line item should have been excluded from revenue for purposes of calculating

Claimant's compensation. Correcting this error and excluding "Materials Paid by Owner" from revenue reduces Claimant's pre-RTP Compensation Amount by $51,243 ($64,053 post-RTP).

II.     The Settlement Program Misclassified Certain Variable Expenses as Fixed

The Settlement Program erred further by misclassifying certain variable expenses as fixed. Variable expenses "are those that change in relation to the level of sales by a business." *Morton M. Goldberg Auction Galleries, Inc. v. Canco, Inc.*, 650 So.2d 801, 803 (La. Ct. App. 1995). Fixed expenses, on the other hand, "'are those costs that the business must expend regardless of the sales level. For example, something like rent.'" *Id.* "It has been said that fixed costs are those which 'continue if the firm is temporarily shut down, producing nothing at all.'" *Id*.

Courts have routinely found that costs tied directly to output/services, like the costs at issue in this appeal, are variable costs. As the United States Court of Appeals for the Fifth Circuit has explained: "[S]alaried labor costs, rent or depreciation on real estate and certain capital expenses are considered fixed. But inputs like hourly labor, the cost of materials, transport, and electrical consumption at a plant will vary. *Stearns Airport Equipment Co. v. FMC Corp.*, 170 F.3d 518, 532 (5th Cir. 1999). The Court of Appeals of Louisiana similarly has held: "the cost of materials and labor which go directly into production of contract goods are considered variable costs -- they vary with the number of contracts which are performed." *Morton M. Goldberg Auction Galleries, Inc.*, 650 So.2d at 804. The Settlement Agreement adopts this same approach in Exhibit 4D.

Here, the Settlement Program classified Claimant's expenses for "Rent" as fixed when the expense changes with the level of Claimant's business and is thus variable. Although rent is often considered a fixed expense, Claimant itself stated that in this instance this expense "is

3

billed on an irregular job-by-job basis rather than monthly." Contact Notes, 3/6/2013 12:00 AM. The rent apparently was paid to rent space in a shop building, and the shop would have been used less if there were fewer jobs and therefore less revenue. There is thus a direct correlation between Claimant's rent expense and its revenue. As Claimant does more jobs, its rent expense will increase. Thus, this expense should be classified as "Cost of Goods Sold - Variable" on Exhibit 4D to the Settlement Agreement, and per the terms of Exhibit 4D are classified as variable expenses. It appears that the Settlement Program mechanically deemed these expenses as fixed costs because Claimant labeled them "rent" in its financial data, and Exhibit 4D has a fixed category for rent. This was error. The determination of what category in Exhibit 4D an item falls into must be made based on the nature of the item, not the label attached to it on a financial document.

Proper classification of Claimant's expenses for "Rent" as variable reduces compensation by $39,893 ($49,866 post-RTP).

III.     The Settlement Program Failed to Properly Allocate Payroll

In addition, the Settlement Program relied on financial data which failed to allocate payroll throughout the year between officer salaries and payroll tax expense. The average of the two months between May and December 2010 with the lowest payroll expenses constitute the amount of payroll each month that will be considered to be fixed. Settlement Agreement, Ex. 4C. Owner and Officer Compensation is excluded from consideration in this calculation and in any calculation of payroll expenses. *Id.* However, as Claimant has admitted, payroll expenses every month except the month at the end of the year included some portion of Officer Salaries, *i.e.* Owner and Officer Compensation, preventing an accurate calculation of both fixed and variable expenses.

4

Claimant's financial data only separates out Officer Salaries at year end, which means that every month included in Claimant's profit and loss statements includes inaccurate expenses. Claimant stated:

> QuickBooks software normally accumulates all payroll related expenses (salary and taxes) into one account called payroll expenses. *At year end, this total is properly allocated to Officer Salaries and payroll tax expense*, with the remaining other employee salary amounts left in the account called "payroll expenses". The monthly payroll amounts are correct; they are simply combined into "payroll expenses". The "singular payment" you are referring to is not a payment; it is simply the salary allocation adjustment.

DOC ID #18382319 (attached hereto as Exhibit 1). Claimant is wrong that the monthly totals are correct. The monthly payroll data are inaccurate. In December of 2007, 2008, and 2009, Claimant has large *negative* balances in owner compensation which indicate Claimant recorded too much compensation from January – November of 2007, 2008, and 2009. Part of owner compensation in those months should be listed as variable payroll. Further, in 2010, Claimant admitted and the records show that 100% of owner compensation was recorded in December. Of this, Claimant stated, this "singular payment is not a payment, it is simple the salary allocation adjustment". *Id.* This indicates that variable payroll improperly included owner compensation from January – November 2010; the Settlement agreement excludes Owner and Officer Compensation from the compensation calculation. *See* Settlement Agreement, Ex. 4C.

Accordingly, in determining Claimant's compensation, more information about the distribution of Owner and Officer Compensation versus other payroll expenses is needed to accurately allocate Claimant's payroll expense. The Settlement Program erred in issuing an award without obtaining this necessary information. This is yet another reason for remanding this claim.

IV.     The Settlement Program Misapplied the Business Economic Loss Framework

    A.     The Settlement Agreement's Business Economic Loss Framework

The BEL Framework provides negotiated methodologies for evaluating (1) whether any purported losses were caused by the Deepwater Horizon Spill and (2) if so, the amount of the losses. The methodologies for evaluating causation and compensation both involve the comparison of a claimant's performance before and after the Spill on a monthly basis and thus require the accurate and consistent reporting of pre-Spill and post-Spill monthly performance data.

To determine whether a claimant in Zone D, such as this Claimant, established causation, one test which the Settlement Program applies is the "V-Shaped Revenue Pattern" set forth in Exhibit 4B, Section III.A. In order to pass this test, a Claimant must establish:

- "a decline of an aggregate of 15% or more in total revenues over a period of three consecutive months between May-December 2010 compared to the same months in the Benchmark Period selected by the claimant; and

- An increase of an aggregate of 10% or more in total revenues over the same period of three consecutive months in 2011 compared to 2010."

Settlement Agreement, Ex. 4B, Sec. III.A. Because the V-test turns on changes in monthly revenue over time, it is essential that the financial data used as an input for the test properly measure revenue generated during the relevant months. Misapplication of revenue, including failure to attribute revenue to the monthly period(s) in which the revenue was earned, would render the test meaningless. Other causation tests likewise depend on the proper application of revenue over time.

6

If a claimant passes one of the applicable causation tests, the Settlement Program then calculates whether the claimant incurred any loss, which is defined as a reduction in monthly Variable Profit, and, if so, the appropriate amount of compensation.  Compensation is measured by determining the amount of decrease in the claimant's Variable Profits in defined months before and after the Spill.  The Settlement Agreement instructs that Variable Profits are to be calculated as follows:

1. Sum the monthly revenue over the period.

2. Subtract the *corresponding* variable expenses from revenue over the same time period.

Settlement Agreement, Ex. 4C at 2 (emphasis added).  The use of Variable Profit on a monthly basis to measure the compensation amount puts a premium on determining in which months revenue was earned and subtracting the variable expenses incurred in generating the revenue.  If the data entered into the methodology do not assign revenue to the correct months and/or do not properly subtract variable costs, it is impossible to accurately measure Variable Profit.

The BEL Framework documentation requirements underscore that: (1) the relevant measurement unit is the month; (2) profit and loss statements ("P&Ls") must therefore be accurate on a monthly basis; and (3) the accuracy of the monthly P&Ls is to be verified by reference to annual data and/or source materials.  Specifically, Exhibit 4A, Section 4 requires "*Monthly* and annual profit and loss statements" or "alternate source documents establishing *monthly* revenues and expenses for the claimed Benchmark Period."  Settlement Agreement, Ex. 4A, Sec. 4 (emphases added).  That same language makes clear that annual P&L and tax information is required in order to permit the Settlement Program to confirm the accuracy of the monthly P&L data and to identify apparent anomalies in that data.  If anomalies are identified, the Settlement Program is to exercise its discretion to "request source documents for profit and

7

loss statements" so that it may resolve such anomalies and be assured that it is using accurate monthly P&L data. *Id.*

   B. <u>The Settlement Program Did Not Subtract Corresponding Variable Expenses from Revenue, as Required by the Settlement Agreement</u>

  The Settlement Program did not, as required by the Settlement Agreement, subtract corresponding variable expenses from the revenue they generated. Here, Claimant overstated costs and/or understated revenue in the Compensation Period, leading to an award that overcompensated Claimant. Indeed, beyond the errors Claimant admitted with respect to inventory discussed above, fluctuations in Claimant's variable profit percentage confirm that corresponding variable expenses were not subtracted from revenue as required. Variable profit percentage measures the portion of each sale that is profit to the Claimant. Where variable profit percentage is high, that means that the revenue generated by a claimant far exceeds the expenses incurred in generating the revenue. On the other hand, where the variable profit percentage is negative, that means that expenses, before any rent, insurance or other administrative costs were subtracted, already exceed revenue.

  In most businesses, where variable expenses are properly subtracted from the sales they generate, variable profit percentage will fluctuate either minimally or in a predictable pattern over time. Where businesses are selling the same or similar products or services year to year and month to month, some seasonal or general trends may exist, but those operating patterns will be comparable from year to year. While profitability may fluctuate nominally from month to month, repeated and irregular "spikes" over the course of the year are a telltale sign for accountants that corresponding expenses are not subtracted from revenue.

  Claimant's financial data shows significant fluctuations in variable profit percentage from month to month. For example, in the span of one month, Claimant's variable profit percentage

8

in 2010 varied between nearly 0% in April to approximately 50% in May.  In addition to such large fluctuations, there are negative variable profit percentages, which indicate that Claimant was losing money on its business transactions.  These unrealistic variable profit percentages, along with the numerous significant variances, are red flags for the failure to properly subtract variable expenses from corresponding revenue.  Thus, the financial data submitted by Claimant, and relied on by the Settlement Program, shows reported revenue unhinged from the corresponding costs.  This makes it impossible to properly implement the BEL framework.

* * *

Because it is not possible based on the existing record evidence to perform an accurate calculation of what losses, if any, Claimant has incurred that are compensable pursuant to the terms of the Settlement Agreement, BP recommends that this claim be remanded to the Settlement Program with instructions to obtain accurate data from Claimant and to perform a proper calculation.  If, however, it is determined that a remand is not appropriate in this situation, BP submits an Initial Proposal of $0, as the record evidence does not support an award of any compensation.

# Exhibit 1



Claimant: ▮▮▮▮▮▮▮▮▮▮

to:
Andre A Ferrell
03/28/2013 01:23 PM
Hide Details
From: Catherine Mitchell <cmitchell@ejsaadlaw.com>

To: Andre A Ferrell/US/FAS/PwC@Americas-US

1 Attachment



image002.jpg

Andre,

See explanations in red below:

Please provide an explanation be provided to clarify the use of the following line items?

- Cash Discounts certain suppliers and vendors offer discounts on their invoices if paid within 10 days, etc.
- Penalties these are usually IRS penalties if a payroll tax payment was made late or in the wrong amount
- Reimbursements these are business expenses initially paid out of pocket by owner or employee then reimbursed by the company
- Returns and Allowances these are adjustments made to invoices in cases where the customer disputed the full amount
- Retirement Benefits The company sponsors a SIMPLE IRA retirement plan for employees.  This is the 3% company matching expense.

The following explanation will answer all the remaining questions related to Salaries and Payroll Expenses:

<span style="color:red">QuickBooks software normally accumulates all payroll related expenses (salary and taxes) into one account called payroll expenses.  At year end, this total is properly allocated to Officer Salaries and payroll tax expense, with the remaining other employee salary amounts left in the account called "payroll expenses".  The monthly payroll amounts are correct; they are simply combined into "payroll expenses".   The "singular payment" you are referring to is not a payment; it is simply the salary allocation adjustment.

In 2011, the officer salary adjustment was made manually in the workpapers before being entered on the tax return. This is a common practice in many cases. You should be able to see that the total salaries on the tax return agrees with the total salaries on the P&L.  Salaries and wages will also agree with W2s and W3s filed with the IRS and the Social Security Administration.</span>

1. · Officer's Salary - In December 2007-2009, there are year-end adjustments.  Can an explanation be provided to explain these adjustments?

2. Officer's Salary - In December 2010, there was a singular payment for the entire year in salary in December 2010.  Can an explanation be provided for this payment?  If there were payments throughout the year, can the sum be appropriately allocated for the year?

3. Officer's Salary - In 2011 P&L's there were no notations for Owner's Salary, however in the 2011 tax return there is a record for Owners Salary.  Can an explanation be provided to address this discrepancy?

4. Payroll Expenses - In December 2010, there is a significant end of year adjustment.  Can an explanation be provided to explain this adjustment?

Please contact me if you have any further questions or need additional information.

Sincerely,

Cathy Mitchell

6207 Cottage Hill Road
Suite G
Mobile, AL 36609

T: 251.660.0888
F: 251.660.0777

ejsaadlaw.com



E.J. SAAD
LAW FIRM