# Exhibit 1

STATE OF LOUISIANA

PARISH OF LAFOURCHE

### RIGHT-OF-ACCESS FOR OIL SPILL CLEANUP OPERATIONS

The EDWARD WISNER DONATION ("Grantor") grants access to its properties in South Lafourche Parish for the following purposes, and under the following conditions:

(1) In consideration of the need for prompt action to address the presence of oil from the BP Deepwater Horizon oil spill (hereafter "the oil spill"), Grantor does hereby grant unto ~~BP, plc and~~ BP Exploration & Production Inc. ("Grantee"), a right of access for the purpose of cleanup operations related to the oil spill. This right of access does not grant permission for any other purposes, including research on the impacts of the oil spill. Any research activities will be the subject of a separate right of access agreement. This right of access for cleanup operations applies only to the property shown on the plat attached and marked Exhibit A. This property is referred to in this agreement as "the Wisner Property."

(2) Prior to beginning operations, or as they become available, Grantee will provide Grantor with a copy of all work plans, protocols, or contracts ("cleanup documents") relating to Grantee's oil spill cleanup operations on Grantor's property. Copies of any revised, updated or supplemented cleanup documents will be provided to Grantor as soon as they become available.

(3) Grantee will provide Grantor with a list of all Grantee sub-contractors and all Grantee personnel who will be performing cleanup activity on Grantor's property, including each person's company affiliations. This list will be attached to this access agreement as Exhibit B.

(4) Prior to commencing work on Wisner property, Grantee will provide Grantor with the cell phone numbers and email addresses of all onsite supervisory personnel.

(5) Grantee will provide Grantor a weekly summary of all removal/response operations undertaken on Wisner property, including a description of each operation performed, the dates of each operation, and the identity of all companies who worked on each operation.



2

(6) Grantee will provide Grantor with a copy of all waste manifests or other documents detailing all materials removed from Wisner Donation property, the results of all testing of any kind carried out on Grantor's property by Grantee or its contractors or at Grantee's request in connection with operations, and all documentary information such as photographs, video, GPS logs, reports, work logs or journals kept in connection with SCAT assessments and oil removal operations. This information will be provided as received on a weekly basis. If Grantee believes that any oil or oiled waste removed from the Wisner Property is not attributable to the Deepwater Horizon oil spill, Grantee shall segregate that waste and notify Grantor to allow the waste to be documented and samples taken.

(7) Grantee recognizes that it is necessary for Grantor to have personnel, additional equipment and appropriate consultants to monitor Grantee's cleanup operations. Grantee will reimburse Grantor for all such expenses and increased costs, including overtime, incurred by Grantor in connection with cleanup operations. Grantee agrees to cooperate with Grantor's representatives and personnel, and to insure that these personnel have full access to all operations. Grantor's personnel will be given prior notice of and will have the right to attend any meetings, briefings, or events regarding operations on the Wisner Property. Grantee's supervisory personnel will keep Grantor's personnel apprised of the status of all operations on the Wisner Property on a daily basis or as requested. Grantor shall also have the right, at Grantee's expense, to have consultants of Grantor's choice monitor Grantee's operations. Grantee will be invoiced on a biweekly basis for all expenses under this paragraph, payment of which is due within fourteen days of receipt.

(8) The highest industry standards shall be used to insure environmentally sensitive practices while carrying out operations on the Wisner Property. In addition, Grantee shall adhere to, at a minimum, the following specific standards. Grantee shall provide appropriate training to insure that all cleanup personnel are familiar with these protocols.

(a) Beach Protocols

The use of any type of vehicle on the beach area should be limited to the shore face when possible. In particular, ATV's should not be driven off the beach area, through vegetated areas, in the dunes or wash over areas.

3

At the conclusion of each day, all loose clean up materials, trash and tools must be removed from the beach.

In addition to the area over the LOOP pipeline corridor, Exhibit D is a map of the areas of elevated conductivity indicating subsurface pipelines on the beach. These areas are located due west of the staging area, in front of the Chevron facility. Care should be taken to avoid using heavy equipment on this area. Any digging in this area should utilize proper precautions.

(b) Marsh and Upland Protocols

To the extent possible, Grantee shall utilize water access, or access on foot, only, so as to limit the impact on the marshlands, its vegetation and habitats.

No airboats, ATV's, marsh buggies or other equipment are allowed in marsh or wetland areas without specific written permission by Grantor, as well as the presence of the onsite consultant. The marsh area is very sensitive and impacts from clean up may damage the marsh. Clean up efforts of the marsh area must be coordinated with Grantor.

(9) Grantee shall be responsible for all reasonable costs and expenses associated with assessing damage to Wisner property caused by oil spill cleanup operations. Grantee shall be responsible for all reasonable costs and expenses associated with restoring said damage to said property. Examples of such damages include, but are not limited to, damage to vegetation by vehicles, damage to habitat from unattended or abandoned booms, or damage to marsh surface from equipment. Grantor will provide Grantee with a schedule of damaged resources as described herein and an invoice for the cost of restoration. Payment for the cost of restoration will be due within 30 days of receipt of the invoice. Nothing herein shall be construed to diminish Grantor's right to choose and control restoration activities upon its lands. Nothing herein shall act as a waiver or release of any obligation Grantee may owe Grantor as a result of oil released from the Deepwater Horizon incident.

(10) Grantee assumes the responsibility for, and agrees to indemnify and to hold harmless Grantor and its beneficiaries, trustees, principals, employees, officers, agents and contractors, against any claim, loss, damage, liability, cost or expense, including fines, penalties and punitive damage awards, if any, or the violation of any law or regulation, including costs and expenses incident thereto, arising wholly or in part from, or in connection with access given to Grantee

4

under this right-of-access agreement. In the event any administrative charge, proceeding or investigation or any suit is brought against Grantor on the account of such damage, injury or death, Grantee shall, at Grantor's request, appear and defend said suit, at Grantee's sole cost and expense, including provision of any appeal bond, and shall pay any judgment or settlement that may be entered against Grantor, therein when said suit is finally determined. This Paragraph ~~11~~ 10 does not apply to, and Grantee shall not be responsible for, the intentional or reckless misconduct or the active negligence of Grantor, its beneficiaries, trustees, principals, employees, officers, agents and contractors.

(11) In the event Grantor obtains the services of an attorney, or attorneys, to institute suit (a) to enforce any of the provisions of this right-of-access agreement, or (b) to make a claim, or claims, for damages resulting from Grantee's operations under the right-of-access agreement or to make a claim, or claims, for specific performance against Grantee, or (c) to make a claim, or claims, for any active or passive breach by Grantee of this right-of-access agreement, or (d) to make a claim, or claims, for the failure of Grantee to perform under any of the provisions of this right-of-access agreement, then Grantee shall be liable for reasonable fees for the attorney, or attorneys, as incurred by Grantor, and the reasonable costs concomitant thereto, to the extent Grantor prevails ~~in part or in whole, by settlement or by judgment~~.

(12) This access agreement is revocable at will by Grantor. Grantor retains the right to exclude any individual from its property at its discretion, regardless of that individual's relationship with Grantee.

(13) All notifications or delivery of documents or information under this agreement must be made to the following:

GRANTOR: | GRANTEE:

Cathy Norman
Secretary Treasurer/Land Manager
Cell – 504.616.7985
Office – 504/658.4060
Email: wisnerdonation@aol.com

Farley Burge, Jd.
BP Exploration and Production, Inc.
Cell: 713.715.9606
Office: 281.366.2415
Email: farley.burge@bp.com

Until further notice, Grantee must notify Grantor's on site supervisor as well:
Forrest Travirca, FETI & Associates, LLC Cell – 985/232.1483
Email – feti@travirca.com

5

(14) This agreement is not transferable, and conveys no right to Grantee to permit any parties not employed by or under the direct control of Grantee to access the Wisner Property.

(15) This agreement constitutes the entire agreement between the parties, and may be amended only in writing. In the event that any provision of this agreement shall be found invalid, the other provisions of the agreement are deemed to be separable and remain in effect.

IN WITNESS WHEREOF, Grantor has executed this right of access on this 23rd day of August, 2010.

WITNESSES:

Print Name: L. Amanda Phillips

Print Name: Forrest Trowbridge

Print Name:

Print Name:

GRANTOR:

**EDWARD WISNER DONATION**

By: C. Cathy Norman
Print Name: C. Cathy Norman

GRANTEE:

**BP**

By: Brad J. Blyzynski
Print Name: Brad J. Blyzynski

STATE OF LOUISIANA
PARISH OF Lafourche

On this 23 day of Aug 2010, before me appeared _____, who, being duly sworn, did state that he is Grantee's duly authorized agent and that he executed this document on behalf of Grantee as the free act and deed of said corporation.

NOTARY PUBLIC (# 11881   )
Print Name: Joel Waltzer

6



EXHIBIT A

7

## Recommendations for Reduction in Disturbance of Bird Colonies on the Wisner Beach in Relation to Oil Spill Cleanup Activities.

Monitoring Report for
Wisner Advisory Donation
1300 Perdido St. Room 8E06
New Orleans, LA 70112

by

Donald Norman
Norman Wildlife Consulting (NWC)
2112 NW 199th Shoreline, WA 98177

### Summary Recommendations

As part of assessment of impacts of the Deep Horizon Oil Spill, NWC has inventoried the avian resources on the Wisner beach and surrounding wetlands between 15 May to 1 June and makes the following recommendations:

1. Keep all personnel, including SCAT and other NRDA teams out of wetlands, shell mounds, dunes, and upland areas. NRDA and SCAT teams required to do assessments in these areas should record all disturbances that occur during their activities in a written report to Wisner. Areas to avoid are shown in Figures 1 and 2.

2. At the entrance of Belle Pass, no staging or cleanup activities should occur on the shell habitat area above (east) of the beach at the east jetty area. The western edge of the shell beach area is within 200 feet of a mixed species colonial waterbird colony protected by the Migratory Bird Treaty Act, and no staging or cleanup activities must occur on that shell habitat area.

3. Any cleanup activities necessary further up Belle Pass along the edge of the colonial Waterbird colony should have supervision of the Natural Resource Trustees, such as LA Department of Wildlife and Fisheries, US Fish and Wildlife Service, or their designated representatives, as this beach is within 200 feet of the colony. A report on disturbance related to any activities in this area should be submitted to Wisner on a daily basis as such activity occurs.

4. If possible, locate worker tents away from overwash areas and beach nesting areas. This will prevent workers from entering these areas.

8