UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:   Oil Spill by the Oil Rig "*Deepwater* | : | MDL No. 2179 |
| *Horizon*" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: 13-706, 13-810, | : | Honorable CARL J. BARBIER |
| 13-1143, 13-1185, 13-1222, | : | Magistrate Judge SHUSHAN |
| 13-1386 and 13-2006 | : | |

……………………………………………………...

**UNITED STATES' STATEMENT IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE AFFIRMATIVE DEFENSES (Doc. No. 13108) AND MEMORANDUM IN SUPPORT OF MOTION TO QUASH RELATED DISCOVERY SOUGHT BY BP**

**I.   INTRODUCTION**

BP's anticipated resistance to Plaintiffs' motion to strike the company's "supervening cause" defenses in the Oil Pollution Act ("OPA") Test Cases affects the United States; those defenses aim to litigate the conduct of the United States, even though the conduct of BP in causing the Macondo Blowout and its aftermath is the only relevant subject. These legally deficient defenses and discovery that BP has served on the United States in service of those defenses warrant consideration of this Statement and Motion to Quash.  First, the United States administers the statute and therefore has a programmatic stake in how the statute is interpreted. Second, BP's supervening cause defenses may also be asserted against the United States in future litigation – especially anticipated claims for natural resource damages.[1]  Third, BP has already served burdensome, inappropriate, discovery requests upon the United States and may seek additional discovery to support these defenses.

---

[1] The United States reserves its right to make other arguments in any such natural resource damages case. In the interest of brevity, this paper only addresses the issues raised by the Plaintiffs' Motion.

1

The Court should consider this filing, grant Plaintiffs' motion to dismiss, and quash BP's discovery requests now pending against the United States. Quashing the discovery is particularly appropriate where the discovery is very burdensome on the United States and potentially the Court.

## II.    DISCUSSION

### A.    OPA Precludes a "Supervening Cause" Defense[2]

While the United States takes no position on the merits of any given OPA test case, Plaintiffs correctly note that OPA neither provides nor recognizes any type of "supervening cause" defense. OPA imposes strict, joint-and-several liability on responsible parties "[n]othwithstanding any other provision or rule of law, and subject to the provisions of this Act . . . ." 33 U.S.C. § 2702(a). Thus, the defenses available to a responsible party are limited to those set forth in the statute. *See Apex Oil Co., Inc. v. U.S.,* 208 F.Supp.2d 642, 652 (E.D. La. 2002) ("[t]he *only* defenses to strict liability under . . . OPA" [are those set forth in 33 U.S.C. § 2703(a)]) (emphasis added); *Gabarick v. Laurin Maritime (Am.), Inc*., 406 Fed. Appx. 883, 888 (5th Cir. 2010) ("OPA provides a responsible party with a complete defense to liability in certain very narrow circumstances"); *Baby Oil, Inc. v. U.S.,* 938 F. Supp. 640, 648 (E.D. La. 2013) (OPA provides a defense to liability in "narrow circumstances"); S. Rep. 101-94, at 12-13, 1990 U.S.C.C.A.N. 722, 734 (1989) ("Defenses to liability are provided in section 102(h) in three limited circumstances . . . ."); *see also Tug Allie-B, Inc. v. U.S,*, 273 F.3d 936, 943-944 & n. 7 (11th Cir. 2001) (construing a similar statute, the Park Systems Resources Protection Act, and concluding that the enumerated defenses are exclusive "as is customary with strict liability

---

[2] As do the Plaintiffs, the United States disputes the claim that the moratorium and permitting changes were a superseding cause. The moratorium and permitting changes, in fact, resulted from BP and its co-defendants' catastrophic discharge. *See* Doc. No. 13108-1 at 23-24 and n. 28 and citations therein.

statutes."); *see also, e.g., U.S. v. Kramer*, 757 F. Supp. 397, 422-423 (D. N.J. 1991) (interpreting the Superfund statutory language to prevent the defendants from asserting that "the United States was contributorily negligent, caused the harm at the Site or assumed the risk of harm at the Site").

As the Fifth Circuit concluded in a case construing Section 311(f) of the CWA:

After much consideration, Congress endorsed an absolute liability system with limited exceptions, which are to be narrowly construed. In the view of Congress, such a system best protected the public and placed the risk on the responsible party, not on the general public.

*U.S/ v. West of England Ship Owner's Mut. Protection & Indem. Ass'n (Luxembourg)*, 872 F.2d 1192, 1200 (5th Cir. 1989). Because Congress "intended to expand the liability of the discharger" in OPA beyond that provided in the preexisting Clean Water Act regime, *Apex Oil Company v. U.S.*, 208 F. Supp. 2d at 654, exceptions to liability under OPA are also limited to those set forth in the statute and must be narrowly construed.[3]

As the Plaintiffs explain, a responsible party can avoid liability only if it demonstrates that both the discharge and the resulting damages were "caused solely by" (1) an act of God (2) an act of war or (3) an act or omission of a third party. 33 U.S.C. § 2703(a).[4] In construing the identical "caused solely by" language in 311(f) of the CWA, the court in *West of England* found no support for the proposition that Congress intended the terms "solely caused by" or "the sole cause" to equate with the term "the proximate cause." 872 F.2d at 1200. Instead, the court

---

[3] OPA supplants 33 U.S.C. 1321(f) with respect to discharges of oil, stating in relevant part "Subsection[] (f) . . . of section 311 of the Federal Water Pollution Control Act (33 U.S.C. 1321) shall not apply with respect to any incident for which liability is established under section 1002 of this Act." PL 101-380 § 2002(a); Note, 33 U.S.C. § 1321.

[4] To prevail on a third party defense under § 2703(a)(3), the responsible party must also demonstrate that it "exercised due care with respect to the oil concerned . . . " and that "it took precautions against foreseeable acts or omissions of any such third party . . . . " *Id.*

3

opined that "when there are multiple causes of a discharge and one cause is the dominant or proximate cause, to view that dominant or proximate cause as being the sole cause of the discharge would not be faithful to Congressional intent." *Id.*  Thus, the court concluded that a defendant whose act was a contributing cause of the discharge was not entitled to the sole cause defense.  These holdings preclude BP's efforts to evade liability on the grounds that the government regulatory actions in response to the spill were some kind of "supervening" cause.

## II.   The United States Is Not – and Should Not Be – Part of Discovery or Trial of the OPA Test Cases

The Court has already determined that the United States may not be subjected to claims or liability for regulatory activity or inactivity.  *See* Doc. No. 4642 at 3.  The Court granted the United States' motion to dismiss similar claims brought by Transocean for the "reasons . . . essentially as argued by the United States."   Hearing Tr. at 56 (Nov. 11, 2011).  Those reasons included the fact that the United States has not waived sovereign immunity for claims related to regulation of deepwater drilling.  *See* United States' Motion to Dismiss, Doc. No. 2410.

The Plaintiffs' memorandum sets out many other reasons why the United States could not be liable or at fault as a matter of law.  Doc. No. 13108-1 at 27-30.  BP cannot, at least within the constraints of good faith argument, dispute such fundamental precepts of statutory law, constitutional law, sovereign immunity, and subject matter jurisdiction.  Accordingly, no further briefing on the part of the United States is needed on the subject.  If deemed warranted as a result of BP's response to the Plaintiffs' motion, the United States reserves the right to file further briefing regarding its sovereign immunity and other relevant issues.

### III. Judicial Economy Also Weighs in Favor of Early Dismissal of BP's Affirmative Defense and Prohibition of Related Discovery

To bolster its "supervening" cause defense, BP has served the United States with a subpoena for documents that includes twenty-two very broad requests such as: All documents "discussing" any one of ten oil exploration companies, non-privileged documents "discussing" the litigation brought in two cases, and "documents provided by petroleum industry personnel to anyone at the Department of the Interior (DOI) between April 20, 2010 and the present" discussing offshore permitting activities. After those twenty-two broad topics, BP concludes with a request for "communications . . . within DOI or its agencies or with any other persons or entities relating to any of the above topics." *See* BP Subpoena (Ex. 1). [5]

Experience in Phases 1, 2, and the penalty phase of the United States' own case reveal that very broad discovery requests such as BP has served impose a significant burden - on the United States, the Court, and other parties, too. In responding to Phase 1 discovery requests, the United States expended millions of dollars. *See* Status Report of the United States at 4-5 (Doc. No. 3928). More importantly, the complex nature of such productions and BP's aggressive pursuit of every single document consumed hours of the Court's time with only marginal benefit to the pursuit of the truth. At one point, Magistrate Judge Shushan held twice weekly calls simply to address disputes between the United States and BP regarding Phase 1 and Phase 2 productions. Such a substantial investment of the Court's resources should be approached with caution where the discovery sought is from a non-party, the information sought is irrelevant, and

---

[5] BP contends that the discovery is also "relevant to the issue of what caused the government's actions that allegedly harmed the Plaintiffs." *See* Email from Langan to Himmelhoch (Jul. 24, 2014) (Ex. 4). As set forth above, courts have already held that the moratorium was caused by the spill, making this discovery irrelevant even on that point. Moreover, even if such a contention were still available, the balance of cost versus benefit remains weighted against the discovery sought.

5

the party propounding the discovery has failed to demonstrate why the ample, publicly available materials on the topic fall short of satisfying the party's legitimate need.

The legal insufficiency of the defenses warrants barring BP's discovery requests. But however the Court rules on that question, now or later, the balance of benefit and burden created by BP's discovery also warrants quashing BP's requests.

The plain text of Federal Rule of Civil Procedure 45 makes it clear that discovery upon a non-party must be pursued with caution and without the imposition of "significant expense" resulting from compliance with a subpoena. Fed. R. Civ. P. 45(c)(2)(B). As discussed above, similar discovery requests served by BP during Phase 1 and 2 resulted in the expenditure of millions of dollars – undoubtedly a "significant expense." Moreover, an initial exploration of the effort required to respond to BP's current subpoena reveals that a response would require significant expense. *See* Decl. of Tony Irish (July 29, 2014) (Ex. 3) (estimating the burden associated with responding to the BP requests at issue here); *S.E.C. v. Brady*, 238 F.R.D. 429, 438 (N.D. Tex. 2006) (finding a document production requiring hundreds of hours of review and millions of pages of documents to be unduly burdensome).

This significant expense should also be evaluated in light of the substantial discovery BP has already received regarding the moratorium and regulatory changes considered and made as a result of BP's violations. In response discovery served in, *inter alia*, the penalty phase of the United States' claims, the United States has already produced the entire administrative record for the *Hornbeck* matter, as well as several analyses prepared by the Department of the Interior, the Department of Energy, and the Department of Commerce regarding the economic impact of the regulatory changes and permitting decisions affected by BP's violations. *See, e.g.*, Dep. of Marshall Rose as a Rule 30(b)(6) Designee at 18-20, 26-27, 30-34 (June 16, 2014) (Ex. 3)

For all of these reasons, BP should be prohibited from serving discovery upon the United States to support its moratorium defense and the United States respectfully requests entry of the attached order quashing the discovery BP already served upon the United States.

## IV.     Conclusion.

The Court has already ruled that liability under OPA is strict and therefore, BP's "supervening" cause defense must fail.  Moreover, the Court has held that the United States has not waived sovereign immunity with respect to its regulatory actions, and therefore cannot be a part of the OPA test cases.  For that reason, and because the discovery BP seeks from the United States is burdensome and irrelevant, BP's subpoena should be quashed.

Respectfully submitted,

| | |
|---|---|
| JOSHUA WILKENFELD | SAM HIRSCH |
| Acting Deputy Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| PETER FROST | MICHAEL MCNULTY |
| Director, Torts Branch, Civil Division | SARAH HIMMELHOCH |
| Admiralty and Aviation | Senior Level E-Discovery Coordinator |
| SHARON SHUTLER | NANCY FLICKINGER |
| MALINDA LAWRENCE | Senior Attorney |
| LAURA MAYBERRY | PATRICK CASEY |
| Trial Attorneys | RICHARD GLADSTEIN |
| R. MICHAEL UNDERHILL, T.A | DANIEL S. SMITH |
| Attorney in Charge, West Coast Office | Senior Counsel |
| | ABIGAIL ANDRE |
| | A. NATHANIEL CHAKERES |
| | ANNA CROSS |
| | RACHEL HANKEY |
| | JUDY HARVEY |
| | RACHEL KING |
| | ERICA PENCAK |
| | BRANDON ROBERS |
| | GORDON YOUNG |
| | Trial Attorneys |

_____
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
Facsimile:   202-514-2583
E-mail:  steve.o'rourke@usdoj.gov
KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

      /s/