UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE OIL SPILL BY THE OIL RIG | * | CIVIL ACTION: MD 2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO ON APRIL 20, 2010 | * | Honorable CARL J. BARBIER |
| | * | |
| | * | |
| Member Case: Edward Wisner Donation v. BP | * | Magistrate Judge SHUSHAN |
| Exploration & Production, Inc. | * | |
| Civil Action No. 14-1525 | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO CONSIDER
SETTLEMENT DOCUMENTS WITH MOTION FOR PRELIMINARY INJUNCTION**

**NOW COMES** Plaintiff**,** Edward Wisner Donation (hereinafter "Donation" or "Wisner") through undersigned counsel, who submits the instant Memorandum in Support of Motion in Limine to Consider Settlement Documents.  The Donation respectfully moves for an order allowing consideration of the following documents to its Motion for Preliminary Injunction [Rec. Doc. 13152]:  (1) BP and the Donation's position papers; (2) evidence submitted by BP and the Donation in support of the position paper; and (3) the Neutral's determination (collectively referred to as the "Settlement Documents").

**I.      The Settlement**

In 2012, Wisner filed a *Motion for Partial Summary Judgment – Specific Performance of Contractual Access Agreement* in MDL 2179 [Rec. Doc. 5751] which was referred to Magistrate Judge Wilkinson [Rec. Doc. 5928]. *Motion for Partial Summary Judgment*, attached as Exhibit A.  The motion sought to enforce various provisions of the Access Agreement, focusing BP's obligations to provide Wisner with data collection obtained from the oil remediation efforts on the Property, including, but not limited to, Response Planning Documents, Daily Reports, SCAT

1

team information, Aerial photography, Oil Analyses, and Summary of Operations.[1] *Id.* at 11-13. The motion also referenced BP's reimbursement obligation: "BP has also breached the Access Agreement in equally important ways that are not included in the present motion for partial summary judgment. For example, BP has refused to pay for required monitoring and analysis on the Donation's property." *Id.* at 11 n.2.

Before the matter was heard by this Court, and before Wisner filed its motion for summary judgment related to the reimbursement of costs, the parties entered into a settlement agreement.[2] The Settlement Agreement provided, not only for the production of all data and reports generated by the clean-up effort, but also included the settlement of all outstanding costs related to the Wisner Science Team, FETI & Associates, Wisner counsel, and related expenses. *Settlement Agreement – Reimbursement Issues*, at 1-2, attached as Exhibit B.

The Settlement Agreement explains the scope and purpose as follows:



*Settlement Agreement*, ¶ 10. While the Settlement Agreement goes on to express that the ████████████████████████████████████████████████████ *id.*, the parties clearly intended to allow introduction of the agreement and the related materials if enforcement of the Settlement Agreement was needed or a dispute arose. *See, e.g., id.* at ¶ 9 (

---

[1] The terms and conditions of the Access Agreement are described in full in the Wisner Donation's *Expedited Motion for Preliminary Injunction*. [Rec. Doc. 13152]

[2] This Court recognized the dispute as to reimbursement of costs, although ultimately dismissing the motion as moot: "During the conference conducted before me on June 21, 2012, counsel advised the court that a settlement has been reached that will resolve the issues raised in the referenced motion. Record Doc. No. 6730 in MDL 2179 and 478 in C.A. No. 10-2771." [Rec. Doc. 7134]

██████████████████████████); *id.* at ¶ 12 (██████████████████████

████████████████████████████████████████████████████████).

The Settlement Agreement provided for some immediate relief and a structure to resolve the more disputed expenses. The Settlement Agreement provided for ████████████

████████████████████████████████" *id.* at ¶ 4(e), and █████████████

████████████████, *id.* at ¶ 5.

The Settlement Agreement also established the structure of resolving the dispute over the majority of outstanding claimed reimbursements. ████████████████████████

███████████████████████████████████████████. *Joint Instructions* (3/18/13), attached as Exhibit "C". ████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████ *Id.* ███████████████████████

████████ *Id.*

To assist the Neutral, the parties drafted "Joint Instructions". *Id.* The Joint Instructions memorialized the Neutral's appointment, identified the Wisner invoices in dispute, the guiding principles, and a schedule for submissions. *Id.* at 1. Wisner's invoices had been divided into three parts – A, B, and C. Part "A" referred to the invoices of FETI and Associates and some expenses incurred directly by the Wisner Donation. ██████████████████████

██████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████ █████████████████████████████

███████████████████████████████████████████  The attorneys at the time were Waltzer & Wiygul.

## II.  The Settlement Documents

On April 22, 2013, BP and Wisner submitted their initial position papers. Both position papers stated what each party's respective position was with regards to what was reimbursable under the Access Agreement and what was reasonably stated.

### A.  BP's Position Papers

BP's papers are notable for what is not argued. In the face of hundreds of thousands of dollars of Wisner invoices spread over many months directed towards oversight of BP's remediation efforts, BP did not argue that the work performed by the Wisner Science Team exceeded the scope of the Access Agreement. BP Position Paper, at 3 ███████████████ ████████████████████████████████████████ BP merely argued that ████████████████████████████████████████████████████████ Id. at 1. BP repeatedly conceded that ████████████████████████████████████████. Id. at 3, 6, 8.

While BP's Reply submission repeated its early argument ███████████, it recognized ██████████████████████████████████████████████████████████. BP Reply Submission, at 2. BP also conceded that the w████████████████████████ ███████████ Id. BP did not submit any declarations, evidence, or other proof other than Wisner's own invoices. BP only submitted its position papers.

### B.  Wisner's Position Papers

Wisner's Position papers clearly articulated what it has always maintained was the scope of the Access Agreement – reimbursement for assessing and remediating oil: "███████

4

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████ *Wisner Submission to Neutral*, at 6, attached as Exhibit D.  *See also id.* at 7 (emphasis provided) ████████████████████████████████████████

████████████████████████████████████████

Wisner's May 6, 2013 Reply Submission further re-emphasied the scope of the Access Agreement including the oversight of the remediation efforts:  ██████████████

██████████████████████████████████████████████████████████████

██████████████████ Wisner Reply, at 1, attached as Exhibit E.  *See also id.* at 3  ████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████ (emphasis supplied).

With its Reply, Wisner submitted declarations from Dr. Pardue and Dr. Williams to support the invoices.  To demonstrate that his invoices were covered by the Access Agreement, Dr. Pardue declared:



5



Declaration of John Pardue, Ph.D., at ¶¶ 4-5 (emphasis supplied), attached as Exhibit "F".

To demonstrate that his invoices were covered by the Access Agreement, Dr. Pardue declared:



Declaration of Jeffress Williams, Ph.D., at ¶¶ 4-6 (emphasis supplied), attached as Exhibit "G".

### C. The Neutral's Report and Recommendation

On July 8, 2013, the Neutral issued his Report and Recommendation. Report and Recommendation, attached as Exhibit "H". The Neutral recognized that ▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄ Id. at 18 (emphasis supplied).

The Neutral recognized that the ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄



Id. at 19 (emphasis supplied).

The Neutral ultimately recommended ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬. In his Part C discussion, the Neutral picked up on BP's argument that ▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬



Id. at 25 (emphasis supplied).

**III.   The Settlement Documents Are Relevant And Not Barred by the Settlement Agreement or *Fed R. Evid.* 408.**

The Settlement Documents clearly bear upon BP's ultimate defense – that the scope of the Access Agreement does not endow Wisner with the authority to control the cleanup operations. As shown above, the Settlement Documents repeatedly show how Wisner put forth this argument and submitted evidence and argument in support. The Neutral agreed with ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Since the Neutral award, BP has paid hundreds of thousands of dollars for Wisner Science Team remediation related to directing the remediation.

Nothing demonstrates this more than the FETI invoices. Attached as Exhibit "C" to the Access Agreement, BP agreed to reimburse FETI for the following assessment and oil remediation:

> Observe all activities being performed on private property due to oil related cleanup efforts by BP, including all SCAT, NRDA Teams, Wildlife Recovery Units, assigned by BP etc. Prevent entry of unnecessary personnel onto property. *Survey the marsh and water areas for oil intrusion and animal needs*. Provide information to clean up crews necessary *to address the presence of oil* in the marsh to prevent them from causing more damage to the marsh by lack of knowledge of the land and to otherwise assure safe ingress and egress of the property. *Work with USCG and Contractors regarding the overall cleanup plan and result of the cleanup effort*. Identify concerns of Wisner such as removal of buried snare, oil, and related clean up debris. *Identify deposits by securing of Latitude and Longitude positions of those deposits and related information*. Share photographic evidence of these concerns to all concerned parties, *take part in the planning stage meetings* established by USCG. Assess effects of wildlife *as a result of the spill* and its response measures.

*BP Horizon Oil Spill Response Edward Wisner Trust Property (Fourchon Beach and Supporting Marsh) Rate Sheet*, FETI & Assoc., Exhibit "C" to Access Agreement, attached as Exhibit 1 (emphasis supplied) (hereinafter "*BP Oil Spill Response*").

The juxtaposition of the scope outlined in the *BP Oil Spill Response* with BP's argument is not only striking but demonstrates that the subject Settlement Documents are but a smaller piece in the larger dispute of how BP acted pursuant to the Access Agreement when it came time to pay its bills as opposed to its first-ever raised argument that Wisner could not control cleanup operations. BP has paid FETI millions under this Agreement – much of which is directed towards oil remediation – not only for monitoring cleanup operations.

The Settlement Documents are consistent with the FETI payments. While the Settlement Agreement does provide that the submissions and Neutral Report are ▮▮▮▮▮▮▮▮▮▮

████████████, *Settlement Agreement*, ¶ 4(h), the intent of this clause was merely to reiterate *Federal Rule of Evidence* 408.  Rule 408, just like this clause, only pertains to admissibility of the claim for which the settlement negotiations were initiated for.  Rule 408 does not apply to disputes, even between the same parties, that are distinct from the cause of the settlement negotiations.  See Cates v. Morgan Portable Bldg. Corp., 780 F.2d 683, 691 (7th Cir. 1985) ("[Rule 408] provides that statements made in settlement negotiations are not admissible to establish a party's liability, or damages, *in the dispute that was the subject of the negotiation*.") (emphasis supplied).

As an initial matter, the Settlement Agreement's prohibition on admissibility does not apply because this is not a "subsequent proceeding" of the same breach of the same claim.  BP's breach that is the subject of the pending Motion for Preliminary Injunction is different from the breach that was the subject of the Expedited Motion for Specific Performance.  The earlier breach concerned payment of expenses different from those sought here.  Also, the primary relief sought here, oil remediation at Breach 1, is completely separate from the expense reimbursement.

Even Rule 408, like the Settlement Agreement, is not absolute; exceptions abound and district courts have broad discretion to determine if such an exception is present.  *See* Bhandari v. First Nat. Bank of Commerce, 808 F.2d 1082, 1103 on reh'g, 829 F.2d 1343 (5th Cir. 1987) cert. granted, judgment vacated, 492 U.S. 901, 109 S. Ct. 3207, 106 L. Ed. 2d 558 (1989) and opinion reinstated, 887 F.2d 609 (5th Cir. 1989) (finding settlement evidence admissible despite Rule 408 when it was being introduced "to determine whether [party] failed to mitigate damages"). "Whether to admit evidence for another purpose is within the discretion of the trial court; the

9

court's decision will not be reversed in the absence of an abuse of discretion amounting to 'manifest error.'" Belton v. Fibreboard Corp., 724 F.2d 500, 505 (5th Cir. 1984).

Additionally, the Settlement Documents are admissible to impeach BP's position. Where BP has now taken the position for the first time that Wisner could not direct or preclude certain remediation efforts on Wisner beaches, the Settlement Documents clearly demonstrate that BP had knowledge of exactly how Wisner interpreted the Access Agreement, the Neutral interpreted the Access Agreement, and how BP came to interpret the Access Agreement by paying full value of invoices directed unequivocally towards the Donations own oil remediation efforts.

## CONCLUSION

For the above reasons, Wisner respectfully moves the Court to grant the motion and order the relief requested.


Respectfully submitted,

/s Soren Gisleson

| | |
|---|---|
| Stephen J. Herman, La. Bar No. 23129 | James Parkerson Roy, La. Bar No. 11511 |
| Soren E. Gisleson, La Bar No. 26302 | Bob Wright La Bar No. 13691 |
| HERMAN HERMAN & KATZ LLC | DOMENGEAUX WRIGHT ROY |
| 820 O'Keefe Avenue | & EDWARDS LLC |
| New Orleans, Louisiana 70113 | 556 Jefferson Street, Suite 500 |
| Telephone: (504) 581-4892 | Lafayette, Louisiana 70501 |
| Fax No. (504) 569-6024 | Telephone: (337) 233-3033 |
| E-Mail: sherman@hhkc.com | Fax No. (337) 233-2796 |
| E-Mail: sgisleson@hhkc.com | E-Mail: jimr@wrightroy.com |

Calvin C. Fayard, Jr. La. Bar No. 5486
C. Caroline Fayard La. Bar No. 30888
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.com

Fred Herman La Bar No. 6811
Law Offices of Fred Herman
1010 Common St., Suite 3000
New Orleans, LA 70112
Phone: 504-581-7070
Fax: 504-581-7083

Walter Leger, Jr. La. Bar No. 8278
Leger & Shaw
600 Carondelet St., 9th Floor
New Orleans, LA 70130
Phone: (504) 588-9043
Fax: (504) 588-9980

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading has been served upon all counsel of record *via* Lexis-Nexis File & Serve in accordance with Pre-Trial Order No. 12, and filed in the record *via* the Court's ECF electronic filing system, and *via* E-Mail and by U.S. Mail this 30th day of July, 2014.

**/s/Soren Gisleson**