

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In Re: Oil Spill by the Oil Rig** | **MDL NO. 2179** |
| **"Deepwater Horizon" in the Gulf** | |
| **of Mexico, on April 20, 2010** | **SECTION J** |
| | |
| **Applies to:** *All Cases* | **JUDGE BARBIER** |
| | **MAGISTRATE JUDGE SHUSHAN** |

---

**REPORT BY THE CLAIMS ADMINISTRATOR OF THE DEEPWATER HORIZON ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT ON THE STATUS OF CLAIMS REVIEW**

| **STATUS REPORT NO.** | **23** | **DATE** | **July 31, 2014** |
|---|---|---|---|

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In re:  **Oil Spill by the Oil Rig**                                 **MDL NO. 2179**
         **"Deepwater Horizon" in the Gulf**
         **of Mexico, on April 20, 2012**                   **SECTION J**

Applies to: *All Cases*                                          **JUDGE BARBIER**
                                                                          **MAGISTRATE JUDGE SHUSHAN**

**REPORT BY THE CLAIMS ADMINISTRATOR OF THE DEEPWATER HORIZON
ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT ON THE
STATUS OF CLAIMS REVIEW**

**STATUS REPORT NO. 23, DATED JULY 31, 2014**

The Claims Administrator of the Deepwater Horizon Economic and Property Settlement

Agreement (Settlement Agreement) submits this Report to inform the Court of the status of the

implementation of the Settlement Agreement as of June 30, 2014.  The Claims Administrator

will provide any other information in addition to this Report as requested by the Court.

>    **I.**        **STATUS OF THE CLAIMS REVIEW PROCESSES AND CLAIM PAYMENTS**

**A.  Claim Submissions.**

>    **1.  Registration and Claim Forms.**

The Claims Administrator opened the Settlement Program with needed functions staffed

and operating on June 4, 2012, just over 30 days after the Claims Administrator's appointment.

The Claims Administrator's Office and Vendors (CAO)[1] have received 223,899 Registration

Forms and 281,035 Claim Forms since the Program opened, as shown in the Public Statistics for

the Deepwater Horizon Economic and Property Damages Settlement (Public Report) attached as

Exhibit A.  Additionally, claimants have begun, but not fully completed and submitted, 12,618

---

[1] "Claims Administrator's Office", as used within this report, refers to the Claims Administrator and, where applicable, Court-Supervised Settlement Program vendors working with and under the Claims Administrator.

Claim Forms.   The Forms are available online, in hard copy, or at Claimant Assistance Centers located throughout the Gulf.

Of the total Claim Forms submitted and the Claim Forms begun but not fully completed and submitted, 8.6% have been filed or are being filed within the Seafood Program, 16.9% have been filed or are being filed within the Individual Economic Loss (IEL) framework, and 39.0% have been filed or are being filed within the Business Economic Loss (BEL) framework (including Start-Up and Failed BEL Claims).  *See* Ex. A, Table 2.  Deepwater Horizon (DWH) staff at the Claimant Assistance Centers assisted in beginning and/or completing 37,347 of these Claim Forms.  *See* Ex. A, Table 3.

### 2.   Minors, Incompetents, and Deceased Claimants.

The table below describes the claims filed on behalf of minors, incompetents, and deceased claimants in the Settlement Program.

| | | Minor Claimants | | Incompetent Claimants | | Deceased Claimants | |
|---|---|---|---|---|---|---|---|
| | Table 1.  Minors, Incompetents, and Deceased Claimants. | | | | | | |
| | | Total | Change Since Last Report | Total | Change Since Last Report | Total | Change Since Last Report |
| 1. | **Claims Filed** | 75 | -10[2] | 108 | -1[3] | 561 | -13[4] |
| 2. | **Claims Within GADL Review** | 5 | +1 | 3 | +2 | N/A | N/A |
| 3. | **Eligible for Payment** | 12 | 0 | 59 | +5 | 199 | +5 |

[2] Previous versions of Table 1 included claimants who were minors when they filed their claims ("Minor Claimants") but who have later reached the age of majority since filing.  The CAO has removed from Row 1 in Table 1 fifteen claimants who reached the age of majority after filing claims.   Five new Minor Claimants filed claims in the month of June, resulting in a net decrease of 10 claimants.

[3] The number of claimants classified as incompetent ("Incompetent Claimants") decreased by one because an Incompetent Claimant died in June, at which time the claimant was reclassified as a "Deceased Claimant".  No new Incompetent Claimants filed claims in the month of June, resulting in a net decrease of one claimant.

[4] Previous versions of Table 1 included all claimants identified as deceased when they filed their claims, including those claimants who were later reclassified as Estates of the deceased individuals, which have verified representatives and are not subject to Court Approval.  The CAO has removed from Row 1 of Table 1 24 claimants who have been reclassified as Estates after filing claims.  Claims were filed on behalf of 10 new Deceased Claimants in the month of June, while one claimant was reclassified from Incompetent to Deceased (see previous footnote), resulting in a net decrease of 13 Deceased claimants.

| | | | | | | |
|---|---|---|---|---|---|---|
| 4. | **Approval Orders Filed** | 10 | 0 | 51 | +2 | 176 | +4 |

### 3.   Third Party Claims.

The CAO receives, processes, and pays the claims and/or liens asserted by attorneys, creditors, governmental agencies, or other third parties (Third Party Claims) against the payments to be made by the CAO to eligible claimants under the Settlement Agreement in accordance with Court Approved Procedure Order No. 1 (as entered September 9, 2012, and amended March 11, 2013).

The CAO requires a third party claimant to submit enforcement documentation soon after the initial Third Party Claim assertion, and the CAO notifies the claimant of an Enforced Third Party Claim against a potential Settlement Payment as soon as the CAO receives sufficient documentation of such an assertion, regardless of where the underlying Settlement Program Claim is in the review process.  The claimant may, but is not required to, object to the Third Party Claim at this time.  After the CAO sends an Eligibility Notice to the affected Settlement Program Claimant against whom an Enforced Third Party Claim has been asserted (meaning that both the underlying claim and the Third Party Claim are payable), the CAO sends the claimant/claimant's attorney and the third party claimant a Notice of Valid Third Party Claim, and the claimant has twenty (20) days to notify the CAO of any objection to the Third Party Claim.  The CAO continues to process and pay Third Party Claims as reflected in Table 2 below.

**Table 2.  Third Party Claims.**

|    | Type of Third Party Claim ("TPC") | TPCs Asserted | TPCs Asserted Against Claimants With a DHECC ID | TPCs[5] Asserted Against Payable Claims | Valid TPCs Asserted Against Payable Claims | Claims with TPCs Paid/ Ready for Payment (TPClmt) | Claims with TPCs Paid/ Ready for Payment (Clmt) |
|----|-----------------------------------|---------------|------------------------------------------------|----------------------------------------|-------------------------------------------|--------------------------------------------------|------------------------------------------------|
| 1. | Attorney's Fees | 2,489 | 2,288 | 484 | 305 | 326 | 599 |
| 2. | IRS Levies | 911 | 805 | 66 | 55 | 52 | 87 |
| 3. | Individual Domestic Support Obligations | 377 | 240 | 110 | 85 | 85 | 112 |
| 4. | Blanket State-Asserted Multiple Domestic Support Obligations | 4 states | N/A | N/A | N/A | 0 | 0 |
| 5. | 3rd Party Lien/Writ of Garnishment | 995 | 475 | 46 | 17 | 9 | 9 |
| 6. | Claims Preparation/ Accounting | 4,554 | 4,360 | 137 | 99 | 41 | 50 |
| 7. | TOTAL | 9,326 | 8,168 | 843 | 561 | 513 | 857[6] |

The CAO sends a Notice of Third Party Claim Dispute to all parties involved in a disputed Valid Third Party Claim.  If the claimant and third party claimant are unable to resolve their dispute by agreement and if the dispute is over a Third Party Claim for attorney's fees or fees associated with work performed in connection with a Settlement Program Claim, the claimant and third party claimant may participate in the Court-approved Third Party Claims Dispute Resolution Process and will receive a Request for Third Party Claim Dispute Resolution Form with the Notice of Third Party Claim Dispute.  To date, the CAO has sent 107 Notices of Third Party Claim Dispute to notify parties with eligible disputes that they may submit a Request Form if they are unable to resolve their dispute by agreement.  Table 3 provides additional information about participation in the Third Party Claims Dispute Resolution Process.

---

[5] Although the CAO will not know whether a Valid Third Party Claim has been asserted against a payable claim until the Eligibility Notice goes out, the streamlined enforcement requirements allow the CAO to assess validity earlier in the process.

[6] A Third Party Claim can be asserted against one or more Settlement Program claims.  Additionally, if the Third Party Claim amount is in dispute, the CAO pays the claimant the undisputed portion of the Settlement Payment.  For these reasons, this total may not be equal to the total of the two preceding columns.

| Table 3.  Third Party Claims Dispute Resolution Process. | | | | |
|---|---|---|---|---|
| TPC Dispute Notices Issued for Eligible Disputes | Request Forms Received for Eligible Disputes | Records Provided to Adjudicator | Disputes Withdrawn | Final Decisions[7] |
| 107 | 89 | 63 | 55 | 28 |

If the dispute is over a Third Party Claim asserted by a state or federal agency, the claimant must resolve the dispute in accordance with the applicable agency's procedures.  If the dispute is over the amount of a Third Party Claim based on a final judgment of a state or federal court, the CAO must receive either a written agreement between the parties or a copy of a subsequent modifying court order in order to validate the claimant's objection[8]; otherwise, the CAO will issue payment in satisfaction of the judgment to the third party claimant.

To date, the CAO has removed 1,575 lien holds due to parties releasing their Third Party Claims or resolving disputes.[9]

**B.  Claims Review.**

The CAO completed its first claim reviews and issued its first outcome notices on July 15, 2012, and its first payments on July 31, 2012.  There are many steps involved in reviewing a claim so that it is ready for a notice.

**1.  Identity Verification.**

---

[7] Several factors impact when a Dispute is ripe for the Adjudicator to issue a Final Decision, including whether the Adjudicator has requested additional documentation or granted a Telephonic Hearing.

[8] For a claimant to object to a Third Party Claim based on a final judgment of a state or federal court, additional evidence beyond a mere objection is required for the CAO to delay or deny payment of the court-ordered debt.

[9] This number may fluctuate due to reassertions of released or disallowed liens.

The Claimant Identity Verification review is the first step in the DWH claims review process.  The Identity Verification team conducts searches based on the Taxpayer Identification Numbers (TIN) of claimants to confirm that both the claimant's name and TIN exist and correspond with each other.  The Identity Verification team has initiated verifications for 198,580 claimants.  Of those, the CAO has matched the TIN and claimant's name to public records databases and verified identity for 106,582 claimants from the initial query through LexisNexis and/or Dun & Bradstreet.  The CAO has reviewed the remaining 91,988 claimants to determine whether claimant identity could be verified after searching for typographical errors and name changes or after reviewing official documentation from the Internal Revenue Service or Social Security Administration.  Of the remaining 91,988 claimants, the CAO has verified the identity of 89,563.

If the CAO cannot verify a claimant's identity after review, but it appears that additional documentation may allow the CAO to verify the claimant's identity, the CAO issues a Verification Notice to the claimant requesting such documentation.  Verification Notice types include an SSN Notice, an ITIN Notice, and an EIN Notice.  The table below contains information on the number of claimants verified by the CAO during an initial Identity Verification review in addition to the type and number of TIN Verification Notices issued when

| Table 4.  Identity Verification Review Activity. | | | | | |
|---|---|---|---|---|---|
| | Outcome | Claimants Reviewed Since Last Report | Monthly Percentage | Total Claimants Reviewed | Total Percentage |
| 1. | Verified During Review | 347 | 63.3% | 68,675 | 76.1% |
| 2. | SSN Notice Issued | 15 | 2.7% | 2,988 | 3.3% |
| 3. | ITIN Notice Issued | 4 | 0.7% | 450 | 0.5% |
| 4. | EIN Notice Issued | 182 | 33.2% | 18,156 | 20.1% |
| 5. | Total Reviewed | 548 | 100% | 90,269 | 100% |

the CAO could not verify identity after the initial review.

The CAO reviews the documentation that claimants submit in response to the Verification Notice to determine whether it is sufficient to verify identity.  The following table contains information on the number of Verification Notices issued, the number of claimants whose identities the CAO has verified after claimant response to the Notice, and the average time in days for claimants to provide documentation sufficient to verify the claimant's identity after the CAO issued the Notice.

| Table 5.  Identity Incompleteness Activity. | | | | |
|---|---|---|---|---|
| | **Notice Type** | **Notices Issued** | **Number Cured** | **Percentage Cured** | **Days to Cure** |
| 1. | **SSN Notice** | 2,988 | 2,270 | 76.0% | 53 |
| 2. | **ITIN Notice** | 450 | 385 | 85.6% | 31 |
| 3. | **EIN Notice** | 18,156 | 14,878 | 81.9% | 33 |
| 4. | **Total Issued** | **21,594** | **17,533** | **81.2%** | **39** |

When a claimant submits a Subsistence claim stating that he or she fished or hunted to sustain his or her basic personal and/or family's dietary needs, the CAO verifies the identities of the claimed family members.  To do so, the CAO attempts to match each claimed family member's name and TIN to ensure that the family member exists and that the family member was not deceased prior to or at the time of the Spill or is not an overlapping dependent already identified.  The CAO first attempts to match each family member's name and TIN to public records databases through LexisNexis.  To date, the CAO has sent 52,170 family members' names and TINs, associated with 19,736 claims, to LexisNexis for verification.  If a family member's identity cannot be verified through LexisNexis, the CAO reviews the claim file to determine whether the family member's identity can be verified using information contained within the file.  After each family member's identity has been verified or reviewed, the Subsistence team reviews the claim to determine eligibility for payment.

| Table 6.  Subsistence Family Member Identity Verification Activity. | | | | | |
|---|---|---|---|---|---|
| | | Awaiting Review | Change from Last Report | Reviewed | Change from Last Report |
| 1. | Number of Claims | 0 | 0 | 9,023 | 175 |
| 2. | Number of Family Members | 0 | 0 | 37,286 | 731 |

### 2.  Employer Verification Review (EVR).

The EVR process ensures that all employees of the same business are treated uniformly and that each business is placed in the proper Zone.  The review also walks through the analysis necessary to assign the proper NAICS code to a business.  The EVR team has completed the EVR analysis for 234,656 businesses and rental properties.

From June 1, 2014, through June 30, 2014, the team completed the EVR process for 4,270 businesses and rental properties.  The CAO identified an average of 126 new businesses and rental properties to review per day and completed the EVR review for an average of 142 businesses and rental properties per day.  The CAO continues to review new businesses and rental properties on a first-in, first-out basis.

### 3.  Exclusions.

The Exclusions review process ensures that claims and claimants excluded under the Settlement Agreement are appropriately denied.  The Exclusions team guides the reviewers and the EVR team when questions arise during the Exclusion review.  Table 7 below shows the number of Denial Notices issued to date for each Exclusion Reason and the team responsible for making such a determination.

| Table 7.  Exclusions. |
|---|

| | Exclusion Reason | Team Responsible | Denial Notices Since Last Report | Total Denial Notices |
|---|---|---|---|---|
| 1. | GCCF Release | Exclusions | 29 | 7,575 |
| 2. | BP/MDL 2179 Defendant | | 14 | 384 |
| 3. | US District Court for Eastern District of LA | | 0 | 22 |
| 4. | Not a Member of the Economic Class | Claims Reviewers | 6 | 237 |
| 5. | Bodily Injury | | 0 | 6 |
| 6. | BP Shareholder | | 0 | 8 |
| 7. | Transocean/Halliburton Claim | | 0 | 0 |
| 8. | Governmental Entity | Claims Reviewers/ EVR | 8 | 807 |
| 9. | Oil and Gas Industry | | 39 | 1,082 |
| 10. | BP-Branded Fuel Entity | | 0 | 42 |
| 11. | Menhaden Claim | EVR | 0 | 18 |
| 12. | Financial Institution | | 7 | 265 |
| 13. | Gaming Industry | | 3 | 728 |
| 14. | Insurance Industry | | 3 | 189 |
| 15. | Defense Contractor | | 5 | 387 |
| 16. | Real Estate Developer | | 11 | 248 |
| 17. | Trust, Fund, Financial Vehicle | | 0 | 15 |
| 18. | Total Denial Notices from Exclusions | | 125 | 12,013 |

### 4. Claimant Accounting Support Reviews.

A special team handles Claimant Accounting Support (CAS) reviews.  CAS reimbursement is available under the Settlement Agreement for IEL, BEL, and Seafood claims. After a claim has been determined to be payable and the Compensation Amount has been calculated, the CAS team reviews accounting invoices and CAS Sworn Written Statements submitted by the claimant.  Table 8 includes information on the number of CAS reviews the CAO has completed to date, whether the Accounting Support documentation was complete, and the dollar amounts reimbursed for each Claim Type.

**Table 8.  Claimant Accounting Support Reviews.**

| | | Table 8. Claimant Accounting Support Reviews. | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **Claim Type** | **CAS Review Result** | | | | **Total CAS Reviews** | | **CAS $ Amount Reimbursed** | |
| | | **Complete** | | **Incomplete** | | | | | |
| | | **Since Last Report** | **Total to Date** | **Since Last Report** | **Total to Date** | **Since Last Report** | **Total to Date** | **Since Last Report** | **Total to Date** |
| 1. | **BEL** | 7 | 10,550 | 37 | 1,093 | 44 | 11,643 | $24,223.35 | $15,652,980.31 |
| 2. | **IEL** | 24 | 2,947 | 30 | 481 | 54 | 3,428 | $343.35 | $354,062.94 |
| 3. | **Seafood** | 5 | 3,891 | 5 | 788 | 10 | 4,679 | $1,705.62 | $1,581,786.87 |
| 4. | **TOTAL** | **36** | **17,388** | **72** | **2,362** | **108** | **19,750** | **$26,272.32** | **$17,588,830.12** |

## 5. Quality Assurance Review.

The Quality Assurance (QA) process addresses three fundamental needs of the Settlement Program: (a) it ensures that all claims reviewed within the system environment are reviewed in accordance with the provisions of the Settlement Agreement by targeting anomalous claim results through data metrics analysis; (b) it provides a mechanism to monitor reviewer performance and the tools necessary to efficiently and effectively provide feedback to reviewers; and (c) it identifies areas of review resulting in high discrepancy rates that require retraining or refined review procedures and data validations.

The CAO has implemented a reviewer follow-up process for all claim types reviewed within the system environment. The CAO provides daily follow-up to reviewers in the event a QA review of a particular claim produces a result different than that of the original review. The CAO also has a report that identifies specific reviewers who may require retraining and reveals whether there are issues that warrant refresher training for all reviewers. Table 9 shows, by Claim Type, the number of claims identified for QA review through the system of record database QA process, as well as the number of QA reviews that have been completed, the number in progress, and the number awaiting review.

| | Claim Type | Total Claims Needing QA To Date | QA Reviews Completed | % of QA Reviews Completed | QA Reviews in Progress | Claims Awaiting QA Review | QA Reviews Completed Since Last Report |
|---|---|---|---|---|---|---|---|
| | **Table 9.  Quality Assurance Reviews.**[10] | | | | | | |
| 1. | Seafood | 25,357 | 25,221 | 99.5% | 95 | 41 | 22 |
| 2. | IEL | 30,450 | 28,698 | 94.2% | 795 | 957 | 413 |
| 3. | BEL | 28,964 | 26,513 | 91.5% | 178 | 2,273 | 794 |
| 4. | Start-Up BEL | 2,308 | 2,130 | 92.3% | 79 | 99 | 57 |
| 5. | Failed BEL | 2,194 | 2,131 | 97.1% | 10 | 53 | 37 |
| 6. | Coastal RP | 21,164 | 21,125 | 99.8% | 6 | 33 | 220 |
| 7. | Wetlands RP | 5,407 | 5,187 | 95.9% | 114 | 106 | 558 |
| 8. | RPS | 924 | 922 | 99.8% | 2 | 0 | 32 |
| 9. | Subsistence | 40,317 | 26,864 | 66.6% | 1,182 | 12,271 | 1,293 |
| 10. | VoO | 7,887 | 7,879 | 99.9% | 3 | 5 | 17 |
| 11. | VPD | 1,496 | 1,491 | 99.7% | 0 | 5 | 7 |
| 12. | **TOTAL** | **166,468** | **148,161** | **89.0%** | **2,464** | **15,843** | **3,450** |

**6. Claim Type Review Details.**

Table 10 provides information, by Claim Type, on the number of claims filed, the number of claims that have been reviewed to Notice, the number of claims remaining to be reviewed to Notice, and the number of claims reviewed to either a Notice or "Later Notice" to date.  Table 10 divides the claims reviewed to a "Later Notice" into separate sections: (1) claims receiving a Notice based on CAO review following the submission of additional materials by a claimant in response to an Incompleteness Notice, and (2) claims receiving a Notice following a Reconsideration review conducted by the CAO.

---

[10] Table 9 only includes system generated data that arise from Quality Assurance reviews of initial claim reviews that are performed within the confines of the system environment.  Separate from the initial claim review, there are numerous ancillary steps within the overall claim review process in which Quality Assurance activities and measures are performed outside of the system environment.

| Table 10.  Throughput Analysis of Claims Filed and Notices Issued. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **A. Claims Reviewed to First Notice** | | | | | | | | | |
| | Claim Type | **Status of All Claims Filed** | | | | | **Productivity From 6/1/14 Through 6/30/14** | | |
| | | Total Claims Filed To Date | Reviews Completed to Notice or Closed | | Claims Remaining to Review | | New Claims Filed | Avg. Daily Claims Filed | Reviews Completed to First Notice | Avg. Daily Reviews to First Notice |
| **1.** | **Seafood** | 24,723 | 24,413 | 98.7% | 310 | 1.3% | 23 | <1 | 29 | <1 |
| **2.** | **IEL** | 43,023 | 39,227 | 91.2% | 3,796 | 8.8% | 286 | 10 | 707 | 24 |
| **3.** | **IPV/FV** | 284 | 270 | 95.1% | 14 | 4.9% | 0 | 0 | -2[11] | 0 |
| **4.** | **BEL** | 101,520 | 56,111 | 55.3% | 45,409 | 44.7% | 763 | 25 | 1,939 | 65 |
| **5.** | **Start-Up BEL** | 5,541 | 4,006 | 72.3% | 1,535 | 27.7% | 56 | 2 | 56 | 2 |
| **6.** | **Failed BEL** | 3,753 | 2,860 | 76.2% | 893 | 23.8% | 42 | 1 | 28 | <1 |
| **7.** | **Coastal  RP** | 36,076 | 35,490 | 98.4% | 586 | 1.6% | 302 | 10 | 391 | 13 |
| **8.** | **Wetlands RP** | 16,600 | 6,837 | 41.2% | 9,763 | 58.8% | 288 | 10 | 558 | 19 |
| **9.** | **RPS** | 1,640 | 1,616 | 98.5% | 24 | 1.5% | 10 | <1 | 25 | <1 |
| **10.** | **Subsistence** | 37,678 | 13,717 | 36.4% | 23,961 | 63.6% | 336 | 11 | 475 | 16 |
| **11.** | **VoO** | 8,759 | 8,699 | 99.3% | 60 | 0.7% | 7 | <1 | 13 | <1 |
| **12.** | **VPD** | 1,438 | 1,399 | 97.3% | 39 | 2.7% | 3 | <1 | 4 | <1 |
| **13.** | **TOTAL** | **281,035** | **194,645** | **69.3%** | **86,390** | **30.7%** | **2,116** | **71** | **4,223** | **141** |
| **B. Claims Reviewed to Later Notice** | | | | | | | | | |
| | Claim Type | **Initial or Preliminary Incompleteness Response** | | | **Follow-Up Incompleteness Responses** | | | **Requests for Reconsideration** | | |
| | | Total Responses | Claims with Later Notice | Remaining Claims | Total Responses | Claims with Later Notice | Remaining Claims | Total Requests | Claims with Later Notice | Remaining Claims |
| **1.** | **Seafood** | 5,926 | 5,436 | 490 | 2,835 | 2,586 | 249 | 3,721 | 3,399 | 322 |
| **2.** | **IEL** | 16,935 | 14,430 | 2,505 | 8,290 | 6,707 | 1,583 | 5,236 | 4,489 | 747 |
| **3.** | **IPV/FV** | 98 | 87 | 11 | 34 | 33 | 1 | 38 | 36 | 2 |
| **4.** | **BEL** | 31,491 | 17,811 | 13,680 | 12,526 | 6,411 | 6,115 | 4,797 | 2,845 | 1,952 |
| **5.** | **Start-Up BEL** | 2,355 | 1,700 | 655 | 1,384 | 805 | 579 | 508 | 275 | 233 |
| **6.** | **Failed BEL** | 1,014 | 774 | 240 | 631 | 392 | 239 | 464 | 320 | 144 |
| **7.** | **Coastal  RP** | 5,435 | 5,279 | 156 | 1,543 | 1,493 | 50 | 1,867 | 1,806 | 61 |
| **8.** | **Wetlands RP** | 394 | 273 | 121 | 83 | 60 | 23 | 505 | 395 | 110 |

[11] During the month of June, the CAO identified two IPV/FV claimants with prior notices as duplicate claimants, which notices the CAO no longer includes in the population of total claims filed to date.   Because there were no other notices issued on filed IPV/FV claims in the month of June, the total number of IPV/FV claims completed to first notice has decreased by two since the last report.

| Table 10.  Throughput Analysis of Claims Filed and Notices Issued. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 9. | RPS | 305 | 290 | 15 | 106 | 99 | 7 | 201 | 200 | 1 |
| 10. | Subsistence | 5,851 | 1,449 | 4,402 | 1,474 | 278 | 1,196 | 363 | 154 | 209 |
| 11. | VoO | 940 | 921 | 19 | 396 | 382 | 14 | 627 | 618 | 9 |
| 12. | VPD | 783 | 745 | 38 | 360 | 338 | 22 | 255 | 239 | 16 |
| 13. | **TOTAL** | **71,527** | **49,195** | **22,332** | **29,662** | **19,584** | **10,078** | **18,582** | **14,776** | **3,806** |

C. **Claim Payments**.

    1. **Notices and Payments.**

       Tables 4 and 5 of the Public Report attached in Exhibit A provide detail on the notices and payments issued to date.  As of June 30, 2014, the CAO has issued 67,591 Eligibility Notices to unique claims with Payment Offers totaling $5.01 billion.[12]  As of that date, the CAO has made over $3.98 billion in payments on 64,060 claims.[13]

    2. **Claimants in Bankruptcy.**

       The CAO reviews each claimant who indicates an open bankruptcy on the Registration Form (Debtor Claimant) to determine whether the claimant has submitted sufficient documentation from the applicable bankruptcy court to issue payment.  If the CAO determines that the claimant is not a Debtor Claimant per the Procedure for Disposition of Claims by Claimants in Bankruptcy (Proc-445), or if the claimant submits sufficient documentation for the CAO to issue payment on all active claims, the CAO will remove the Bankruptcy Hold.

---

[12] The Payment Offers reported in Table 5 of the Public Report are the sum of active offers.  Eligible Claimants who request Re-Review, Reconsideration, or Appeal may have their offers reduced after a new notice is issued.  If an offer is reduced or rescinded on Re-Review, Reconsideration, or Appeal, it is no longer included in the Payment Offers total.  Although typically the total value of Payment Offers increases monthly, the value decreased in June because several high value Wetlands Real Property claims were reduced on Appeal in this month.

[13] The Court-ordered injunction addressing revenue and expense matching and causation issues, which was dissolved by the District Court on May 28, 2014, has affected the number of Eligibility Notices with payment offers and payments issued.  See section II.B for additional information on the injunction.

Table 11 provides information about the status of claimants identified as Debtor Claimants, including information on notices issued to those claimants.

| Table 11.  Claimants in Bankruptcy. | | | |
|---|---|---|---|
| **1.** | **Identified Claimants in Bankruptcy** | **Total** | **Change Since Last Report** |
| **(a)** | **Claimants with Active Bankruptcy Holds** | 1,909 | +10 |
| **(b)** | **Claimants with Removed Bankruptcy Holds** | 956 | 0 |
| **2.** | **Bankruptcy Notices Issued** | **Total** | **Change Since Last Report** |
| **(a)** | **Debtor Claimant in Bankruptcy Notices**[14] | 343 | +2 |
| **(b)** | **Bankruptcy Trustee Communication Notices** | 71 | +1 |
| **(c)** | **Bankruptcy Trustee Informational Notices** | 59 | +3 |

### D.  Re-Reviews, Reconsiderations, and Appeals.

#### 1.  Re-Reviews and Outcomes.

The CAO implemented a Re-Review process beginning on January 18, 2013, that provides claimants with the opportunity to request a Re-Review of their claim within 30 days of the issuance of an Eligibility or Denial Notice if the claimant has additional documentation not previously submitted to support its claim.  Following a Re-Review, claimants receive a Post Re-Review Notice, from which they may then request Reconsideration if they wish.  To date, there have been 70,950 Eligibility or Denial Notices issued from which claimants can or could seek Re-Review.  Of those, 738 are still within the 30 day window to seek Re-Review and Re-Review has not yet been requested, leaving 70,212 claims for which the window to seek Re-Review has passed.  Of those, claimants have requested Re-Review of 4,934 claims.  Thus, the rate of Re-Review from all final determinations is 7.0%.  The rate of Re-Review from Eligibility Notices is 4.3%, while the rate of Re-Review from Denial Notices is 13.8%.

---

[14] The Debtor Claimant in Bankruptcy Notice was created within Proc-445 version 2 to inform claimants of the appropriate documentation required for payment to be issued.  This Notice effectively replaced the Representative of Claimant in Bankruptcy Notice.  Hereafter, all statistics reported within this Report will be related to Debtor Claimant in Bankruptcy Notices.

Table 12 summarizes the Re-Reviews the CAO has completed, the number of Post Re-Review Notices the CAO has issued, and whether the outcome of the Re-Review resulted in an award that was higher than (↑), lower than (↓),or the same as (↔) the outcome previously issued. The table also includes information on whether an original Exclusion Denial was confirmed or overturned on Re-Review.

| | Table 12.  Re-Reviews. | | | | |
|---|---|---|---|---|---|
| | A.   Re-Review Requests and Reviews | | | | |
| | **Claim Type** | **Requests Received To Date** | **Reviews Completed To Date** | | |
| | | | **Total** | **Completed Since Last Report** | **Average Weekly Reviews** |
| **1.** | **Seafood** | 822 | 802 | 2 | 11 |
| **2.** | **IEL** | 748 | 706 | 12 | 10 |
| **3.** | **IPV/FV** | 11 | 11 | 0 | <1 |
| **4.** | **BEL** | 1,530 | 1,452 | 70 | 20 |
| **5.** | **Start-Up BEL** | 116 | 107 | 4 | 1 |
| **6.** | **Failed BEL** | 150 | 136 | 0 | 2 |
| **7.** | **Coastal RP** | 929 | 927 | 72 | 13 |
| **8.** | **Wetlands RP** | 299 | 288 | 4 | 4 |
| **9.** | **RPS** | 87 | 87 | 3 | 1 |
| **10.** | **Subsistence** | 134 | 98 | 5 | 1 |
| **11.** | **VoO** | 57 | 57 | 0 | <1 |
| **12.** | **VPD** | 51 | 48 | 1 | <1 |
| **13.** | **TOTAL** | **4,934** | **4,719** | **173** | **65** |

| | | Notices Issued or Claims Closed | | Outcome of Re-Review Notice | | | | |
|---|---|---|---|---|---|---|---|---|
| | **Claim Type** | | | **Compensation Amount for Eligible Claims** | | | **Exclusions/Denials** | |
| | | **Total to Date** | **Weekly Average** | ↑ | ↓ | ↔ | **Confirmed** | **Overturned** |
| 1. | **Seafood** | 739 | 10 | 400 | 30 | 219 | 87 | 3 |
| 2. | **IEL** | 641 | 9 | 151 | 54 | 213 | 218 | 5 |
| 3. | **IPV/FV** | 11 | <1 | 0 | 0 | 0 | 11 | 0 |
| 4. | **BEL** | 1,053 | 14 | 253 | 49 | 83 | 659 | 9 |
| 5. | **Start-Up BEL** | 69 | <1 | 16 | 3 | 5 | 44 | 1 |
| 6. | **Failed BEL** | 104 | 1 | 1 | 3 | 0 | 100 | 0 |
| 7. | **Coastal RP** | 835 | 11 | 43 | 5 | 109 | 650 | 28 |
| 8. | **Wetlands RP** | 219 | 3 | 10 | 2 | 18 | 188 | 1 |
| 9. | **RPS** | 86 | 1 | 1 | 0 | 3 | 70 | 12 |
| 10. | **Subsistence** | 53 | <1 | 15 | 4 | 6 | 28 | 0 |
| 11. | **VoO** | 56 | <1 | 7 | 5 | 17 | 25 | 2 |
| 12 | **VPD** | 45 | <1 | 19 | 0 | 13 | 12 | 1 |
| 13. | **TOTAL** | **3,911[15]** | **54** | **916** | **155** | **686** | **2,092** | **62** |

**B.  Re-Review Notices Issued**

## 2. Reconsideration Reviews and Outcomes.

To date, there have been 140,245 Eligibility, Denial, or Incompleteness Denial Notices issued from which claimants can or could seek Reconsideration.  Of those, 5,291 are still within the 30 day window to seek Reconsideration and Reconsideration has not yet been requested, leaving 134,954 claims for which the window to seek Reconsideration has passed.  Of those, claimants have requested Reconsideration of 18,582 claims.  Thus, the rate of Reconsideration from all final determinations is 13.8%.  The rate of Reconsideration from Eligibility Notices is

---

[15] The number of Notices issued lags behind the number of reviews completed for several reasons:  (1) There is a 36-hour lag time between when a review is completed and when the Notice is issued for quality assurance purposes; (2) Many claims require processing ancillary to the review of the claim before a notice can issue, such as Employer Verification or Prior Payment Analysis; and (3) Notice issuance may be delayed by a change in address, attorney, or other claimant-initiated changes.

5.5%, while the rate of Reconsideration from Denial and Incompleteness Denial Notices is 23.3%.

Table 13 summarizes the Reconsiderations the CAO has completed, the number of Post-Reconsideration Notices the CAO has issued, and whether the outcome of the Reconsideration review resulted in an award that was higher than (↑), lower than (↓), or the same as (↔) the outcome previously issued. The table also includes information on whether an original Exclusion Denial was confirmed or overturned on Reconsideration.

| | Table 13.  Reconsideration. | | | | |
|---|---|---|---|---|---|
| | **A.   Reconsideration Requests and Reviews** | | | | |
| | **Claim Type** | **Requests Received To Date** | **Reviews Completed To Date** | | |
| | | | **Total** | **Completed Since Last Report** | **Average Weekly Reviews** |
| **1.** | **Seafood** | 3,721 | 3,530 | 40 | 38 |
| **2.** | **IEL** | 5,236 | 4,832 | 97 | 52 |
| **3.** | **IPV/FV** | 38 | 36 | 0 | <1 |
| **4.** | **BEL** | 4,797 | 3,857 | 385 | 41 |
| **5.** | **Start-Up BEL** | 508 | 403 | 35 | 4 |
| **6.** | **Failed BEL** | 464 | 416 | 14 | 4 |
| **7.** | **Coastal RP** | 1,867 | 1,826 | 49 | 20 |
| **8.** | **Wetlands RP** | 505 | 456 | 1 | 5 |
| **9.** | **RPS** | 201 | 201 | 2 | 2 |
| **10.** | **Subsistence** | 363 | 226 | 18 | 2 |
| **11.** | **VoO** | 627 | 622 | 1 | 7 |
| **12.** | **VPD** | 255 | 249 | 1 | 3 |
| **13.** | **TOTAL** | **18,582** | **16,654** | **643** | **179** |

| | | | | Outcome of Reconsideration Notice | | | | |
|---|---|---|---|---|---|---|---|---|
| | **Claim Type** | **Notices Issued or Claims Closed** | | **Compensation Amount for Eligible Claims** | | | **Exclusions/Denials** | |
| | | **Total to Date** | **Weekly Average** | ↑ | ↓ | ↔ | **Confirmed** | **Overturned** |
| **B. Reconsideration Notices Issued** | | | | | | | | |
| 1. | Seafood | 3,399 | 35 | 762 | 150 | 481 | 1,687 | 319 |
| 2. | IEL | 4,489 | 46 | 129 | 97 | 362 | 2,856 | 1,045 |
| 3. | IPV/FV | 36 | <1 | 0 | 0 | 0 | 34 | 2 |
| 4. | BEL | 2,845 | 29 | 314 | 108 | 221 | 1,156 | 1,046 |
| 5. | Start-Up BEL | 275 | 3 | 10 | 11 | 13 | 83 | 158 |
| 6. | Failed BEL | 320 | 3 | 1 | 5 | 2 | 245 | 67[16] |
| 7. | Coastal RP | 1,806 | 18 | 94 | 22 | 392 | 1,080 | 218 |
| 8. | Wetlands RP | 395 | 4 | 23 | 1 | 31 | 318 | 22 |
| 9. | RPS | 200 | 2 | 1 | 0 | 3 | 179 | 17 |
| 10. | Subsistence | 154 | 2 | 2 | 0 | 1 | 133 | 18 |
| 11. | VoO | 618 | 6 | 58 | 6 | 122 | 376 | 56 |
| 12 | VPD | 239 | 2 | 48 | 4 | 17 | 105 | 65 |
| 13. | TOTAL | 14,776[17] | 151 | 1,442 | 404 | 1,645 | 8,252 | 3,033 |

### 3. Appeals.

#### (a) BP Appeals.

To date, the CAO has issued 18,989 Eligibility Notices that meet or exceed the threshold amount rendering them eligible for appeal by BP. Of those, 41 Notices are still within the timeframe in which BP can file an appeal and BP has not yet done so, leaving 18,948 Notices that BP has either appealed or for which the deadline for BP to file an appeal has passed. Of those 18,948 Notices, BP has filed 3,955 appeals, a 20.9% appeal rate. Table 14 provides summary information on the status of BP appeals.

---

[16] In June, two claimants requested Reconsideration of their Failed BEL Denials for a second time. For this reason, their claims are no longer included in Section B of Table 13, so the number of overturned Failed BEL Denials has decreased by two as compared to the figure within Court Status Report No. 22.

[17] The number of Notices issued lags behind the number of reviews completed for several reasons: (1) There is a 36-hour lag time between when a review is completed and when the Notice is issued for quality assurance purposes; (2) Many claims require processing ancillary to the review of the claim before a notice can issue, such as Employer Verification or Prior Payment Analysis; and (3) Notice issuance may be delayed by a change in address, attorney, or other claimant-initiated changes.

| | Table 14.  Status of BP Appeals. | | | |
|---|---|---|---|---|
| | **A.   Appeal Filing/Resolution** | | | |
| | **Status** | **As of Last Report**[18] | **Since Last Report** | **Total** |
| **1.** | **BP Appeals Filed** | **3,950** | **5** | **3,955** |
| **2.** | **Resolved Appeals** | **2,463** | **28** | **2,491** |
| **(a).** | **Resolved by Panel Decision** | 1,530 | 25 | 1,555 |
| **(b).** | **Resolved by Parties** | 390 | 0 | 390 |
| **(c).** | **Remand to Claims Administrator** | 128 | 1 | 129 |
| **(d).** | **Administratively Closed** | 8 | 0 | 8 |
| **(e).** | **Withdrawn** | 273 | 0 | 273 |
| **(f).** | **Inactive Under Reconsideration/Re-Review** | 134 | 2 | 136 |
| | **B.  Pending Appeals**[19] | | | |
| **1.** | **In "Baseball" Process** | | 1,255 | |
| **2.** | **Submitted to Panel** | | 86 | |
| **3.** | **Under Discretionary Court Review** | | 123 | |
| **4.** | **TOTAL PENDING** | | **1,464** | |

**(b) Claimant Appeals.**

Before a claimant may file an appeal, the claimant must request Reconsideration and receive a Post-Reconsideration Eligibility or Denial Notice.  To date, the CAO has issued 7,512 Post-Reconsideration Eligibility and Denial Notices.  Of those, 86 Notices are still within the timeframe in which the claimant can file an appeal and the claimant has not yet done so, leaving 7,426 Notices that the claimant has either appealed or for which the deadline for the claimant to file an appeal has passed.  Of those 7,426 Notices, claimants have filed 1,340 appeals, an 18.0% appeal rate.  Of the 1,340 claimant appeals, 815 are appeals of Post-Reconsideration Denial

---

[18] According to Court Status Report No. 22, the appeal status for one claim previously under BP Appeal was listed as "Administratively Closed", which claim the CAO has since characterized as "Resolved by Panel Decision".  The appeal statuses for two other claims previously under BP Appeal were listed as "Resolved by Panel Decision" but have since been characterized by the CAO as "Remand to Claims Administrator".  The "As of Last Report" figures for claims "Resolved by Panel Decision", for claims "Administratively Closed", and for claims "Remand[ed] to [the] Claims Administrator" have been appropriately revised to reflect this, as prior period amounts have been reclassified for comparative purposes.

[19] Per the June 27, 2014 Court Order, the Claims Administrator is in the process of returning certain claims pending appeal to the Settlement Program for matching review.

Notices, while 525 are appeals of Post-Reconsideration Eligibility Notices.  Table 15 provides

summary information on the status of Claimant Appeals.

| Table 15.  Status of Claimant Appeals. | | | | |
|---|---|---|---|---|
| **A. Appeal Filing/Resolution** | | | | |
| | **Status** | **As of Last Report**[20] | **Since Last Report** | **Total** |
| **1.** | **Claimant Appeals Filed** | **1,328** | **12** | **1,340** |
| **2.** | **Resolved Appeals** | **990** | **57** | **1,047** |
| (a). | **Resolved by Panel Decision** | 801 | 51 | 852 |
| (b). | **Resolved by Parties** | 81 | 2 | 83 |
| (c). | **Remand to Claims Administrator** | 29 | 3 | 32 |
| (d). | **Administratively Closed** | 42 | 0 | 42 |
| (e). | **Withdrawn** | 37 | 1 | 38 |
| **A.  Pending Appeals**[21] | | | | |
| **1.** | **In "Baseball" Process** | 60 | | |
| **2.** | **In "Non-Baseball" Process** | 62 | | |
| **3.** | **Submitted to Panel** | 104 | | |
| **4.** | **Under Discretionary Court Review** | 67 | | |
| **5.** | **TOTAL PENDING** | **293** | | |

### (c)  Resolved Appeals.

As reported in the tables above, 3,538 appeals have been resolved.  Table 16 provides a

summary of these resolved appeals by Claim Type.  The comparison between the Post-Appeal

award amount and the award amount within the original notice does not take into consideration

the 5.0% increase in compensation that a claimant who prevails upon appeal receives.

| Table 16.  Outcome After Appeal. | | | | | |
|---|---|---|---|---|---|
| **Claim Type** | **Appeals Settled or Decided by Panel** | | **Withdrawn** | **Admin.** | **Total** |

[20] According to Court Status Report No. 22, the appeal statuses for two claims previously under Claimant Appeal were listed as "Resolved by Panel Decision", which claims the CAO has since characterized as "Administratively Closed" and "Resolved by Parties", respectively.  The "As of Last Report" figures for these claim statuses have been appropriately revised to reflect this, as prior period amounts have been reclassified for comparative purposes.

[21] Per the June 27, 2014 Court Order, the Claims Administrator is in the process of returning certain claims pending appeal to the Settlement Program for matching review.

| | | Compensation Amount Following Appeal Compared to That of Original Notice | | | | | | | Closed | Inactive Under Recon./ Re-Review | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Higher | Lower | Same | Denial Upheld | Denial Over-turned | Remand | | | | |
| 1. | Seafood | 69 | 19 | 146 | 40 | 2 | 20 | 50 | 7 | 9 | **362** |
| 2. | IEL | 21 | 54 | 79 | 77 | 9 | 39 | 12 | 17 | 5 | **313** |
| 3. | IPV/FV | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 1 | 0 | **3** |
| 4. | BEL | 56 | 461 | 1,149 | 158 | 48 | 84 | 202 | 7 | 106 | **2,271** |
| 5. | Coastal RP | 36 | 1 | 21 | 86 | 3 | 1 | 8 | 7 | 0 | **163** |
| 6. | Wetlands RP | 3 | 10 | 4 | 34 | 3 | 0 | 3 | 2 | 16 | **75** |
| 7. | RPS | 0 | 4 | 9 | 35 | 0 | 0 | 2 | 2 | 0 | **52** |
| 8. | Subsistence | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 0 | **3** |
| 9. | VoO | 16 | 31 | 45 | 54 | 18 | 6 | 26 | 4 | 0 | **200** |
| 10. | VPD | 2 | 28 | 31 | 16 | 0 | 11 | 8 | 0 | 0 | **96** |
| 11. | **TOTAL** | **203** | **608** | **1,484** | **501** | **84** | **161** | **311** | **50** | **136** | **3,538** |

### (d) Incompleteness Appeals.

The Appeal for Insufficient Documentation (Incompleteness Appeal) allows Economic Class Members to have their claims reviewed by a separate Documentation Reviewer[22] when the CAO denies their claims because of insufficient documentation.  The Documentation Reviewer reviews the claimant's documentation to determine whether the Program correctly denied the claim.

Before sending the claim to the Documentation Reviewer, the CAO reviews the appeal request along with any newly submitted documents.  If the claimant has submitted the requested documentation and cured the incompleteness, the CAO issues the appropriate Notice.  If the claimant still has not submitted the requested documentation, the CAO sends the claim to the Documentation Reviewer for review.

---

[22] On June 19, 2014, considering the resignation of P. Raymond Lamonica, the Court appointed Lynne R. Stern as Documentation Reviewer under Section 6.1.1.1 of the Settlement Agreement from and after May 19, 2014.

Before a claimant may file an appeal of an Incompleteness Denial, the claimant must request Reconsideration and receive a Post-Reconsideration Incompleteness Denial Notice.  To date, the CAO has issued 4,181 Post-Reconsideration Incompleteness Denial Notices.  Of those, 54 Notices are still within the timeframe in which the claimant can file an appeal, leaving 4,127 Notices for which the claimant's appeal deadline has passed.  Of the 4,127 Notices eligible for appeal, 2,013 (48.8%) appeal requests have been filed.  Table 17 provides summary information on the status of Incompleteness Appeals.

| | Table 17.  Incompleteness Appeals. | | | |
|---|---|---|---|---|
| | **A.  Incompleteness Appeal Filing/Resolution** | | | |
| | **Status** | **As of Last Report** | **Since Last Report** | **Total** |
| **1.** | **Incompleteness Appeals Filed** | **1,935** | **78** | **2,013** |
| **2.** | **Appeals Resolved** | **1,582** | **11** | **1,593** |
| (a). | Withdrawn/Closed Claims | 12[23] | 1 | 13 |
| (b). | Cured | 225 | 10 | 235 |
| (c). | Incompleteness Denial Affirmed | 1,309 | 0 | 1,309 |
| (d). | Incompleteness Denial Overturned | 36 | 0 | 36 |
| | **B.  Pending Incompleteness Appeals** | | | |
| **3.** | **In Pre-Documentation Reviewer Process** | 366 | | |
| **4.** | **Currently Before Documentation Reviewer** | 54 | | |
| **5.** | **TOTAL PENDING** | 420 | | |

As reported in Table 17 above, 1,593 Incompleteness Appeals have been resolved.

## II.   SETTLEMENT PROGRAM LEGAL DEVELOPMENTS

### A.  Approval of the DWH Economic and Property Settlement Agreement

---

[23] The total number of Withdrawn/Closed Claims reported in Court Status Report No. 22 was four.  Up and until now, this value has been limited to closures based on an action by the claimant to affirmatively close or withdraw the claim.  However, beginning with this month's report, this number will include all types of closures that occur after an Incompleteness Appeal has been requested, save and except those that occur because the Documentation Reviewer has affirmed the denial.

The District Court issued an order on December 21, 2012, certifying the Economic and Property Settlement Class and granting final approval of the Settlement Agreement after addressing and rejecting each of the Objectors' arguments.  The Objectors appealed the District Court's order citing various provisions of Rule 23 and requested that the Fifth Circuit remand with instructions to withdraw approval of the Settlement Agreement and to decertify the class. Additionally, BP argued on appeal that two Policy Announcements issued by the Claims Administrator regarding the interpretation and application of the Settlement Agreement had subsequently brought the Settlement Agreement into violation of Rule 23, the Rules Enabling Act, and Article III of the U.S. Constitution.

A three judge panel for the Fifth Circuit Court of Appeals considered each of the arguments presented by the Objectors and BP.  On January 10, 2014, the Fifth Circuit affirmed by a 2-1 majority the District Court's order approving the Settlement Agreement and certifying the class.  Based on the Court's previous decisions, the Fifth Circuit rejected the arguments presented by the Objectors and BP under Article III because "'it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered,' because we 'assume arguendo the merits' of their claims at the Rule 23 stage". (Court Op. at 48 (citations omitted).  Further, the Court also rejected the argument of the Objectors and BP under Rule 23, citing that "'[c]lass certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct." *Id*.

On January 21, 2014, BP filed a petition for rehearing en banc of the Appeal Panel's decision.  Moreover, in January, the Objectors filed various petitions for rehearing en banc or for panel rehearing.  The Court dismissed these petitions on May 19, 2014.  The time to seek relief from the United States Supreme Court, however, has not yet passed.

**B.  <u>Court-Ordered BEL Claim Suspension</u>.**

BP appealed the District Court's March 5, 2013 order affirming the Claims Administrator's interpretation of the Settlement Agreement that the BEL framework does not require the matching of revenues and expenses within claimant-submitted profit and loss statements.  On October 2, 2013, the Fifth Circuit Court of Appeals reversed the District Court's ruling and remanded the case to the District Court for further consideration.  The District Court immediately entered an order to suspend the issuance of any final determination notices or payments on all BEL claims, including Start-Up and Failed BEL claims, until the Court could create an appropriately narrowly-tailored preliminary injunction.

   **1.  Injunction Continuing BEL Claim Suspension.**

After the District Court issued its preliminary injunction on October 18, 2013, BP filed an emergency motion objecting to the District Court's holding that causation was not an issue that the Court would address on remand.  On December 2, 2013, the Fifth Circuit remanded the issue of causation and ordered that the District Court address causation in its preliminary injunction.  In response to the Fifth Circuit's ruling, the District Court issued an amended preliminary injunction on December 5, 2013, that ordered the CAO to temporarily suspend the issuance of final determination notices and payments to BEL claims until the Court resolved the BEL issues that were the subject of the remand.

On December 24, 2013, the District Court addressed the issues that the Fifth Circuit had placed on remand.  It reversed its previous holding that the Settlement Agreement does not require the matching of revenues and expenses, and remanded the matter to the CAO with instructions to adopt and implement an appropriate protocol or policy for handling BEL claims in which the claimant's financial records do not match revenues with corresponding variable expenses.  Further, the District Court found that whether a business economic loss is "as a result

of" the Deepwater Horizon Incident for purposes of the Settlement is determined exclusively by Settlement Agreement Exhibit 4B.

BP appealed the District Court's holding, and, on March 3, 2014, the Fifth Circuit Court of Appeals affirmed the District Court's December 24, 2013 holding, but ordered that the injunction remain in place until the Fifth Circuit issued its mandate.  On March 17, 2014, BP filed a petition for rehearing en banc, or alternatively a panel rehearing, requesting that the Fifth Circuit consider jointly both the causation issue at hand and BP's appeal of the approval of the Settlement Agreement and certification of the class (see Section II.A of this Report for additional information).

On May 19, 2014, the Fifth Circuit denied BP's petitions for rehearing, and, in response, on May 21, 2014, BP filed with the Fifth Circuit a motion to stay the mandate lifting the injunction pending its filing of a petition for a writ of certiorari with the Supreme Court of the United States.  On May 27, 2014, the Fifth Circuit denied BP's motion for a stay.  Moreover, on May 28, 2014, the Fifth Circuit issued its mandate, affirming the December 24, 2013 holding of the District Court and vacating the injunction prohibiting payment of BEL claims.  On the same day, the District Court issued an order dissolving and vacating the injunction and ordering the Claims Administrator to resume the processing and payment of BEL claims.  Additionally, on May 28, 2014, BP filed an application with the Supreme Court of the United States requesting that the Supreme Court recall and stay the Fifth Circuit's mandate pending the filing and disposition of its petition for a writ of certiorari.  The Supreme Court denied BP's application on June 9, 2014.

**2. CAO Policy 495.**

While the Fifth Circuit considered the issue of causation, the CAO continued to develop an appropriate protocol or policy for handling BEL claims in which the claimant's financial records do not match revenues with corresponding variable expenses, as instructed within the District Court's December 24, 2013 order.  Pursuant to this instruction, the Claims Administrator developed Policy 495 regarding the Matching of Revenue and Expenses for BEL claims, which details the methodology that the CAO Accounting Vendors will use to perform the requisite matching analyses as required by the Court.  On February 12, 2014, the CAO announced Policy 495 to the Parties and provided the Parties with the opportunity to respond to the Policy.

Following consideration of comments by the Parties, on March 12, 2014, the CAO held a Panel Hearing with the Parties at the request of BP to evaluate the Policy.  The following day, the CAO re-announced Policy 495.  BP responded with a memorandum detailing its comments on the policy and deferred to the decision of the Claims Administrator.  Class Counsel also responded to the policy announcement with a memorandum detailing its comments, objections, and suggested edits and appealed the Policy to the Court in accordance with Section 4.3.4 of the Settlement Agreement.

On May 5, 2014, the Court approved Policy 495 and authorized the Settlement Program to immediately implement the processing of BEL claims pursuant to the Policy.  The Court, however, left in place for the time its preliminary injunction related to BEL claims.  On May 27, 2014, Class Counsel responded, filing a motion requesting the Court alter or amend its Order adopting Policy 495.  Class Counsel seeks to limit the matching triggers and policies to Cash Basis claims and to utilize a single methodology for all insufficiently matched claims, rather than selecting the applicable methodology based on a business's industry.  The District Court has not yet ruled on Class Counsel's motion.

Subsequent to the Fifth Circuit's issuing its mandate with respect to the injunction on May 28, 2014, on the same day, the District Court issued an Order dissolving and vacating the injunction and directing the Claims Administrator to apply Policy 495 to all BEL claims currently in the claims process at any point short of payment (with some minor exceptions), including the vast majority of those claims in the Appeals Process.  At this point, the CAO immediately began the process of issuing payments and final determination notices on BEL claims.

On June 7, 2014, Class Counsel filed a motion requesting the Court alter or amend its Order dissolving the Preliminary Injunction related to BEL Claims.  Class Counsel asserted that the Order may be read to require review under Policy 495 of those Claims that were appealed by BP without raising any issue regarding the "matching" of expenses to revenues.  On June 27, 2014, the District Court issued an Order clarifying the process for evaluating claims under appeal.  The Court instructed the Appeals Coordinator to present to the Parties the list of BEL claims that the Appeals Coordinator believes does not involve matching.  If BP and Class Counsel agree that the claims do not involve the issue of matching, the appeal will go forward on other appeal issues or  the Settlement Program will process the claims without further matching analysis.  The Court also set forth a procedure for the Appeals Coordinator to follow should the Parties contest the issue of matching.  Lastly, the Court instructed the Claims Administrator to promptly pay those claims which had been in the Appeals Process but were compromised between BP and the Claimant

The CAO continues to process all IEL claims that do not qualify for eligibility solely on the basis of the employer's satisfaction of the BEL revenue-pattern causation requirements.  Since the Order dissolving and vacating the injunction, the CAO has been in the process of

revising the previously developed and applied measures within the system which addressed all Notices and payments to IEL claimants specifically affected by the Court's injunction.

### III.    CLAIMANT OUTREACH EFFORTS

The CAO has continued its claimant outreach efforts since the previous Court Status Report as detailed below.

#### A.  **Law Firm Contacts**.

The Law Firm Contact team continued to service firms by providing statuses, answering questions about notices, and acting as a liaison between reviewers and firms to request additional documentation pertinent to claims review.  A large portion of inquires handled by Firm Contacts were related to the District Court's Order lifting the injunction and directing the Claims Administrator to apply Policy 495. Firm Contacts continued to participate in outreach for various claim types and program processes, including Identity Verification and Payment.

#### B.  **Claimant Communications Center (CCC)**.

The CCC continued claimant outreach efforts across all claim types and review teams. The CCC continued to participate in established, on-going outreach efforts, including representation status updates, employer verification, deadline relief confirmation, payment incompleteness, and various claim-specific calls for individual damage categories.  In addition to outreach, the CCC received many inquiries specifically related to the Court's May 28, 2014 Order lifting the injunction and directing the Claims Administrator to apply Policy 495

#### C.  **Claimant Assistance Centers (CACs)**.

The CACs complete outreach assignments as a secondary task to meeting with claimants and answering DWH-related questions.  The CACs continued outreach to claimants who have incomplete claims and who have commenced but have not completed claim forms.  Additionally,

the CACs continued outreach to claimants who are required to complete a new Form 4506-T.  To date, CACs have helped to complete over 116,000 calls for the Claimant Outreach Program.

    **D.  Summary of Outreach Calls.**

The table below summarizes some of the Claimant Outreach Program efforts as of June 30, 2014.

| | Location | Calls Made | Incomplete Claims Affected | Claims With New Docs After Call | % of Claims With New Docs After Call | Claimants Visiting CAC After Call | % of Claimants Visiting CAC After Call |
|---|---|---|---|---|---|---|---|
| | **Table 18.  Outreach Call Volume.** | | | | | | |
| **1.** | BrownGreer | 116,047 | 32,297 | 25,758 | 79.8% | 12,134 | 37.6% |
| **2.** | Garden City Group | 71,602 | 8,621 | 6,454 | 74.9% | 661 | 7.7% |
| **3.** | P&N | 44,834 | 11,164 | 10,015 | 89.7% | 215 | 1.9% |
| **4.** | PwC | 812 | 360 | 349 | 96.9% | 10 | 2.8% |
| **5.** | **TOTAL** | **233,295** | **52,442** | **42,576** | **81.2%** | **13,020** | **24.8%** |

**IV.   CONCLUSION**

The Claims Administrator offers this Report to ensure that the Court is informed of the status of the Program to date.  If the Court would find additional information helpful, the Claims Administrator stands ready to provide it at the Court's convenience.

                                                  _____/s/ Patrick Juneau_____
                                                  PATRICK A. JUNEAU
                                                  CLAIMS ADMINISTRATOR

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 31st  day of July, 2014.


_____/s/ Patrick Juneau_____
PATRICK A. JUNEAU
CLAIMS ADMINISTRATOR