**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO ON APRIL 20, 2010 | MDL No. 10-2179 |
| | SECTION  "J" |
| THIS DOCUMENT APPLIES TO: | JUDGE: CARL BARBIER |
| Civil Action No. 2:13-cv-04755 | MAGISTRATE: SALLY SHUSHAN |

**SUPPLEMENTAL AND AMENDED COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW INTO COURT**, through undersigned counsel comes the Plaintiff, Lonnie Shimer, individually and on behalf of his deceased son, Hunter W. Shimer, with his Supplemental and Amended Complaint for Damages respectfully avers as follows:

**PARTIES**

**PLAINTIFF:**  Lonnie Shimer, individually and on behalf of his deceased son, Hunter W. Shimer.

**DEFENDANTS:**

1.      Defendant, BP EXPLORATION & PRODUCTION, INC., a Delaware corporation at all pertinent times registered to do and doing business in the State of Louisiana, whose principal business establishment and registered business office is 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808 and whose agent for service of process is C.T. Corporation, 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808. BP EXPLORATION & PRODUCTION, INC. was a leaseholder and designated operator of the Macondo well from which the oil spill originated upon which this Complaint is

1

based and was designated as a responsible party by the U.S. Coast Guard under the Oil Pollution Act of 1990, 33 U.S.C. § 2714.

2.      Defendant, BP AMERICA PRODUCTION COMPANY, a Delaware corporation at all pertinent times registered to do and doing business in the State of Louisiana, whose principal business establishment and registered business office in Louisiana is 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808 and whose registered agent for service of process is C.T. Corporation, 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808.  BP AMERICA PRODUCTION COMPANY was party to the contract for the drilling of the Macondo well by the Deepwater Horizon vessel with Transocean, Ltd.

3.      Defendant, BP, P.L.C., a foreign corporation at all pertinent times doing business in the State of Louisiana and within this district through control of its wholly-owned subsidiaries, BP Exploration & Production, Inc. and BP America Production Company (collectively "BP").

4.      Defendant, TRANSOCEAN, LTD., a foreign corporation at all pertinent times doing business in the State of Louisiana and within this district.

5.      Defendant, TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., a Delaware corporation at all pertinent times doing business in the State of Louisiana.

6.      Defendant, TRANSOCEAN DEEPWATER, INC., a Delaware corporation at all pertinent times doing business in the State of Louisiana.

7.      Defendant, TRANSOCEAN HOLDINGS, LLC, a Delaware corporation at all pertinent times doing business in the State of Louisiana.

8.      Defendant, TRITION ASSET LEASING GMBH, a foreign corporation at all pertinent times doing business in the State of Louisiana (collectively "Transocean" with Transocean, Ltd., Transocean Offshore Deepwater Drilling, Inc. and Transocean Holdings, LLC).

9.      Defendant, HALLIBURTON ENTERGY SERVICES, INC., a Delaware corporation at all pertinent times registered to do and doing business in the State of Louisiana whose principal business establishment is 1450 Poydras Street, Suite 2070, New Orleans, Louisiana 70112 and whose registered office is 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808 and whose registered agent in Louisiana is C.T. Corporation System, 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808 (hereinafter " Halliburton").

10.     Defendant, M-I, LLC, a Delaware limited liability company fat all pertinent times registered to do and doing business in the State of Louisiana, whose principal business establishment and registered office is 8550 United Plaza Building II, Suite 305, Baton Rouge, Louisiana 70809, and whose registered agent for service is Capitol Corporate Services, Inc., 8550 United Plaza Building II, Suite 305, Baton Rouge, Louisiana 70809 (hereinafter "M-I").

11.     Defendant, CAMERO INTERNATIONAL CORPORATION, a Delaware corporation at all pertinent times registered to do and doing business in the State of Louisiana, whose principal business establishment in Louisiana is #6 Holloway Blvd., Ville Platte, Louisiana and whose registered office is 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808. Its registered agent for service of process is C.T. Corporation

System, 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808 (hereinafter "Cameron").

12.     Defendant, ANADARKO E&P COMPANY LP, is a Delaware limited partnership at all pertinent times registered to do and doing business in the State of Louisiana, whose principal business establishment in Louisiana is 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808 and whose registered agent in Louisiana is C.T. Corporation System, 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808 (hereinafter "Anadarko").

13.     Defendant, ANADARKO PETROLEUM CORPORATION, CO., is a Delaware corporation at all pertinent times registered to do and doing business in the State of Louisiana, whose principal business establishment in Louisiana is 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808 and whose registered agent in Louisiana is C.T. Corporation System, 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808 (collectively "Anadarko" with Anadarko E&P Company, LP).

14.     Defendant, MOEX OFFSHORE 2007 LLC, is a Delaware corporation at all pertinent times registered to do and doing business in the State of Louisiana (hereinafter "MOEX").

15.     Defendant, MOEX USA CORPORATION, is a Delaware corporation at all pertinent times registered to do and doing business in the State of Louisiana (hereinafter "MOEX").

16.     Defendant, MITSUI OIL EXPLORATION CO., LTD., is a foreign corporation at all pertinent times doing business in the State of Louisiana through control of its wholly-owned subsidiary, MOEX USA Corporation and through control of MOEX Offshore

2007, LLC, a wholly-owned subsidiary of Moex USA Corporation (collectively hereinafter "MOEX").

17.   Defendant, NALCO COMPANY, is a Delaware corporation at all pertinent times registered to do and doing business in the State of Louisiana whose principal business establishment and registered office in Louisiana is 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808 and whose registered agent in Louisiana is C.T. Corporation System, 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808 (hereinafter "Nalco").

18.   Defendant, NALCO FINANCE HOLDINGS, LLC, , a Delaware limited liability company at all pertinent times registered to do and doing business in the State of Louisiana through control of its wholly-owned subsidiary Nalco Holdings, LLC (collectively "Nalco").

19.   Defendant, NALCO HOLDINGS, LLC is a Delaware limited liability company at all pertinent times registered to do and doing business in the State of Louisiana through control of its wholly-owned subsidiary Nalco Holdings, LLC (collectively "Nalco").

20.   Defendant, NALCO HOLDING COMPANY, LLC, is a Delaware limited liability company at all pertinent times registered to do and doing business in the State of Louisiana through control of its wholly-owned subsidiary Nalco Finance Holdings, LLC (collectively "Nalco").

## JURISDICTION AND VENUE

1.   This Court has jurisdiction over this action pursuant to 28 U.S.C., Section 1332(a)(4) because this matter in controversy exceeds the minimum jurisdictional amount of

$75,000.00, exclusive of interest and costs, and this case is between Plaintiff and citizens of a State or of different states.

2.   Jurisdiction is also proper under 28 U.S.C. Section 1331, because the claims asserted by Plaintiffs arise under the laws of the United States of America, including the laws of various states which have been declared, pursuant to 43 U.S.C., Section 1331(f)(1) and1333(a)(2) to be the law of the United States for that portion of the outer continental shelf from which the oil spill originated.  Federal question jurisdiction under 28 U.S.C.§1331 also exists by virtue of Plaintiff's claims brought herein which arise under the Oil Pollution Act of 1990.

3.   In addition, this Court has jurisdiction over this action pursuant to the Oil Pollution Act, 33 U.S.C. § 2717(b) (the OPA").

4.   Pleading in the alternative, jurisdiction also exists over this action pursuant to The Admiralty Extension Act, 46 U.S.C. §30101, which extends the admiralty and maritime jurisdiction of the United States to cases of injury or damage, to personal property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land.

5.   This Honorable Court has jurisdiction over the claims pled herein against the National Oceanic and Atmospheric Administration (hereinafter "NOAA") because NOAA is an agency of the United States government and the claims pled against NOAA are maritime tort claims. Suits in admiralty provide the exclusive jurisdiction for maritime tort claims against the United States. *See* T.*J Falgout Boats, Inc. v. United States*, 508 F.2d 855 (9th Cir.  1974), cert denied, 421U.S.1000, 95 S.Ct. 2398, 44 L.Ed.2d  667 (1975).

## FACTUAL ALLEGATIONS

1.      These cases arise from the April 20, 2010, loss of control of the Macondo well that was being drilled by the Deepwater Horizon drilling vessel and the related explosions on that vessel which caused it to sink and resulted in the discharge of significant amounts of oil that spread throughout the Gulf of Mexico over a period of more than three months.

2.      They also arise due to subsequent additional negligent acts and failure of reasonable care which occurred in Florida territorial waters.

   a)      At all times relevant to this action, the Deepwater Horizon, an ultra-deep water semi-submersible drilling rig, was leased to BP. At the time of its explosion on April 20, 2010, the Deepwater Horizon was being operated by BP for the purposes of drilling an exploratory well at the Macondo prospect on Mississippi Canyon Block 252 on the Outer Continental Shelf, south, west and north of Florida shores and waters.

   b)      The Macondo prospect was being explored pursuant to a ten-year lease, OCS-G32306, granted by the Minerals Management Services on June 1, 2008, and owned at the time of the explosion by BP. The lease allowed BP to drill for hydrocarbons and perform oil production-related operations in the Mississippi Canyon Block 252 area which includes the Macondo prospect. BP was designated the lease operator.

## THE BLOWOUT

1.      At approximately 10 p.m. on April 20, 2010, following cementing operations aboard the vessel Deepwater Horizon, workers were finishing drilling operations for the Macondo well and displacing the drilling mud in the marine riser at the direction of BP in

preparation for completion pursuant to BP's design, when they encountered an uncontrolled influx of highly pressurized hydrocarbons into the wellbore leading to a "blowout" or loss of control of the well.

2. The combustible gas flowing uncontrolled into the wellbore traveled quickly up to the rig floor where it was ignited leading to a fiery explosion on the Deepwater Horizon.

3. Defendant, BP was unable to regain control of the well and the fiery explosions onboard the Deepwater Horizon caused the vessel to be destroyed and sink to the bottom of the Gulf of Mexico.

4. The Deepwater Horizon caused the vessel to be destroyed and sink to the bottom of the Gulf of Mexico.

5. Due to the depth of the Macondo well, BP was also negligent in the selection of a casing material that was vulnerable to collapse under high pressure. BP's negligence in well design and casing selection allowed for an increased risk of a blowout. BP knew or should have known of those risks but chose risk over increased costs.

6. In addition to the casing-related problems, the float collar installed on the final section of casing likely failed to seal properly, which may have allowed hydrocarbons to leak into the casing, contributing to the April 20, 2010 blowout.

7. A float collar is a component installed near the bottom of the casing string on which cement plugs land during the cementing job.

8. Upon information and belief, BP was negligent in operations to install the float collar and/or in neglecting warning signs of a potentially improper installation of the float collar.

8

9.   BP was negligent in preparing the wellbore for cementing operations which led to an increased likelihood that the cement job would fail and a blowout would occur.

10.   BP was negligent in electing to utilize an unsafe cement job design that was unlikely to create a secure barrier against hydrocarbon influxes into the Macondo well.

11.   BP was negligent in the selection of an improper cement mixture that was susceptible to failure under the high pressures and temperatures typical in the Macondo well.

12.   Negligent cementing operations failed to isolate the well bore from hydrocarbon zones and seal the bottom of the well against an influx of gas.   BP was negligent in failing to identify this bad cement job ignoring numerous warning signs in the process.

13.   Upon information and belief, the defective cement job allowed a pathway for highly pressured gas to enter the Macondo wellbore and travel rapidly from there to the rig floor.

14.   BP was negligent in the monitoring and design of the drilling mud program which failed to prevent hydrocarbons from flowing into the wellbore and up to the Deepwater Horizon.

15.   BP was negligent in the decision and design to displace the drilling mud from the marine riser before allowing time for the cement to fully set.

16.   BP was also negligent in conducting and monitoring the displacement operations, failing to recognize the many signs of trouble.

17.   BP was negligent in failing to utilize a casing hanger lockdown sleeve that would have stopped the hydrocarbons from escaping past the wellhead and reaching the rig floor.

18.   BP was negligent in failing to timely identify that hydrocarbons were entering the wellbore during displacement operations and in failing to initiate well control measures.

19.     After hydrocarbons reached the rig floor, the Blowout Preventers (BOP's) for the Deepwater Horizon, failed to activate as designed to prevent the continued uncontrolled flow of gas from the formation.

20.     The BOP utilized by BP was defective and unreasonably dangerous in their manufacture, design, and/or composition, and/or failed to contain adequate warnings and instructions.

21.     BP failed to ensure that the BOP design used on Deepwater Horizon was sufficient for the drilling conditions and program expected at the Macondo site.

22.     BP was negligent in failing to properly maintain the BOP's for the Deepwater Horizon in accordance with safe practices and federal regulations.

23.     BP failed to ensure that the BOP's possessed the necessary technology to properly function including adequate safeguards and redundant systems to prevent blowouts.

24.     BP failed to ensure that the BOP's and all related systems were properly tested to operational conditions and confirmed to be in good working order.

25.     BP was negligent in failing to properly utilize and maintain emergency systems and equipment on board the Deepwater Horizon or to supervise and/or inspect to assure same.

26.     Defendants' negligent actions and/or omissions caused the blowout of the Macondo well leading to the destruction and sinking of the Deepwater Horizon and subsequent uncontrolled discharge of oil into the Gulf of Mexico.

## **FACTUAL ALLEGATIONS OF THE PLAINTIFF**

In July 2010, the Plaintiff and his deceased minor son, Hunter W. Shimer, were present in the Louisiana and Mississippi Gulf Coasts and its adjacent waters.  In late July 2010, the deceased, Hunter W. Shimer, developed lesions on his back and trunk area and a high fever.  He was admitted to Ochsner Northshore Hospital in Slidell, Louisiana on July 24, 2010 with sepsis

syndrome and septic shock with gran negative rod bacterium.  Ultimately, on July 25, 2010, he died for septic shock secondary to chromobacterium violaceum septicaemia.

## CLAIMS FOR RELIEF

## COUNT 1

## Negligence Under General Maritime Law

1.    Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated here.

2.    The existence and breach of Defendants' legal duties are established under general maritime law.

3.    At all times material hereto, Defendants owed duties of ordinary and reasonable care to Plaintiffs in connection with the drilling operations and maintenance of the Deepwater Horizon, including its appurtenances and equipment.  BO additionally owed duties to guard against and/or prevent the risk of an oil spill and to mitigate the harm if an oil spill did occur.

4.    Further, BP owed a duty to Plaintiffs to exercise due care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures.

5.    BP had a heightened duty of care to Plaintiffs because of the great danger associated with exposure to oil, dispersants, and/or other hazardous chemicals.

6.    At all times relevant to this litigation, BP and the other defendants knew or should have known that: (a) crude oil contains chemicals hazardous to human health; (b) chemical dispersants contain chemicals hazardous to human health; (c) Plaintiffs were entitled to adequate and timely warning of the harmful effects of exposure to crude oil and chemical

11

dispersants and the hazardous substances that crude oil and dispersants contain; (d) Plaintiff should have been provided proper protective clothing and respirators when engaged in Oil Spill clean-up and response activities; and (e) failure to exercise reasonable care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures would result in harm to Plaintiffs.

7.     BP breached its duty of care to the Plaintiffs in the following non-exclusive respects:

a) failing to prevent the explosion onboard the Deepwater Horizon;

b) failing to cap the Macondo well in a timely manner;

c) failing to warn Plaintiffs, public officials and government agencies of the harmful effects of crude oil, chemical dispersants and any mixture thereof, and the hazardous chemicals they contain;

d) failing to properly train and equip cleanup and response workers to avoid exposure to hazardous substances encountered in connection with relief efforts;

e) failing to conform to the provisions of the National Contingency Plan relating to the use of aerial chemical dispersants in the proximity of vessels and shallow waters;

f) failing to coordinate and conduct aerial spraying sorties in a manner so as to eliminate the risk of vessels and crewmembers being exposed to aerial chemical dispersants;

g) failing to otherwise exercise reasonable care in the operation, maintenance, handling, design, implementation and execution of the relief and recovery measures;

h)  failing to operate the Deepwater Horizon in a safe manner;

i) operating the Deepwater Horizon in such a manner that a fire and explosion occurred onboard, causing it to sink and resulting in an oil spill;

j) failing to properly inspect the Deepwater Horizon to assure that its equipment and

personnel were fit for their intended purpose;

k) failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon, which, if they had been promulgated, implemented, and enforced, would have averted the fire, explosion, sinking and oil spill;

l) failing to adhere to applicable safety, construction and/or operating regulations, including, but not limited to, regulations designed to prevent the fire, explosion and discharge of oil;

m) failing to properly design and/or engineer the well, drilling program, cementing program, mud program and completion program;

n) failing to take appropriate action to avoid or mitigate the accident;

o) negligent implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

p) failing to properly train their employees;

q) failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

r) failing to timely warn; failing to provide respiratory and dormal protective gear to Plaintiffs

s) failing to provide all reasonable cooperation and assistance requested by the responsible officials in connection with the clean-up and removal activities;

t) failing to ensure that adequate plans, equipment, safeguards, resources and technology were readily available to prevent and/or mitigate the effects of the loss of control of a well and unfettered discharge of oil into the Gulf of Mexico;

u) failing to timely bring the oil release under control, to prevent the spill from

   migrating throughout the Gulf of Mexico;

v) failing to provide appropriate accident prevention equipment; failing to ensure

   that the casing and float collar were properly designed and installed;

w) providing BOP's that failed to function;

x) failing to ensure that BOP's would work as intended;

y) failing to test the BOP's to ensure that they would operate properly;

z) recklessly altering the BOP's and failing to use them in a safe manner;

aa) failing to conduct well cementing operations properly

bb) failing to employ alternative cementing operations in light of known problems

   with the actual cementing operations employed.

cc) failing to have a reasonably adequate well control plan and necessary equipment in

   case of a loss of a well;

dd) failing to exercise reasonable care in the design and implementation of both well

   control efforts and response and recovery efforts;

ee) failing to insure that adequate plans, equipment, safeguards resources and technology

   were available to prevent or mitigate the quantity of hazardous chemicals that would

   enter into and affect the Gulf of Mexico;

ff) recklessly using dispersants so as to cause the greatest migration and widest potential

   for environmental toxic exposures and effects throughout the Gulf.

8.     The blowout and explosions on the Deepwater Horizon, its sinking and the resulting

       spill were caused by the joint and concurrent negligence of the BP Defendants and the

       Transocean and/or Halliburton Defendants named herein.

9.      Defendants' breach of their duties posed an unreasonable risk of harm to Plaintiff.

10.     Plaintiff suffered injury, loss and damages as a direct and proximate result of

Defendants' breach of their aforementioned duties.

## COUNT II

### Gross Negligence Under General Maritime Law

1.   Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if

fully restated herein.

2.   Defendants had a heightened duty of care to Plaintiffs because of the great danger associated

with exposure to oil, dispersants, and/or other hazardous chemicals.

3.   Defendants breached their legal duty to Plaintiffs and failed to exercise reasonable care and acted

with reckless, willful, and wanton disregard in the negligent failure to prevent and contain the oil

spill. Defendants breached their legal duty to Plaintiffs and failed to exercise reasonable care and

acted

4.   Defendants knew or should have known that their willful, wanton and reckless conduct would

cause injury to the Plaintiffs.

5.   Defendants' willful, wanton and reckless and/or grossly negligent conduct is the factual and legal

cause of Plaintiff's injuries and damages.

6.   Defendants were aware at all times relevant hereto that their operations and the acts and/or

omissions described above created an unreasonable risk of harm to the plaintiff and knew that

catastrophic environmental destruction and economic loss would occur if the well being serviced

by the Deepwater Horizon were to blow out.

7.     Defendants were indifferent to this risk of harm.  Defendants intentionally failed to perform the duties owed to Plaintiff in reckless disregard of the consequences their actions and/or omissions would have on Plaintiff.

8.     Moreover, Defendants acted intentionally with knowledge that their acts would probably result in injury or in such a way as to allow an inference of a reckless disregard of the probable consequences if their acts.  Therefore, Defendants are also liable to Plaintiff for gross negligence and/or willful misconduct.

9.     The oil spill and subsequent response and recovery efforts that have caused damage and continue to cause damage to Plaintiff was proximately caused by Defendants' negligence, gross negligence and/or will misconduct.

10.    Further, upon information and belief, the oil spill was proximately caused by the Defendants' violation of applicable federal safety, construction, or operating regulations and/or a person acting pursuant to a contractual relationship with Defendants.

11.    Defendants had a duty to conform their conduct in such a manner as to assure that a blowout would not occur, that the Deepwater Horizon would not be destroyed and sink, that an uncontrolled oil spill would not result and that adequate well control and response measures would exist in case of emergency pursuant to Federal, as well as, Louisiana, Mississippi, Alabama and Florida law.

12.    Defendant failed to conform their conduct to the appropriate legal standard, thereby breaching their duty to assure that a blowout would not occur, that the Deepwater Horizon would not be destroyed and sin, that an uncontrolled oil spill would not result and that adequate well control and response measures would exist and be properly implemented in the case of emergency pursuant to Federal, as well as, Louisiana, Mississippi, Alabama and Florida law.

13. Defendant' substandard conduct in failing to prevent the blowout, the ensuing destruction and sinking of the Deepwater Horizon, and the uncontrolled discharge of oil from the Macondo well into the Gulf of Mexico pursuant to federal and state laws was the cause-in-fact of the injuries, harm and damages suffered by the Plaintiffs.

14. Defendants' substandard conduct in failing to prevent and/or contain the blowout that resulted in the sinking of the Deepwater Horizon and the subsequent oil spill from the Macondo well was the legal cause of the Plaintiff's injuries, harm and damage.

15. In addition, and/or in the alternative, the blowout, fire, explosion, destruction of the Deepwater Horizon and ensuing oil spill were caused by defective equipment and would have been prevented by non-defective equipment, including the BOP and float collar, which were in the care, custody and control of the Defendants and over which the Defendants had *garde.* Defendants knew or should have known of these defects and Defendants are therefore liable for the defects.

16. BP has taken responsibility for the oil spill and cleaning up the oil spill, as former BP Chief Executive, Tony Hayward, had issued a statement on the BP website that BP is "…taking full responsibility for the spill and we will clean it up."  BP has therefore3 admitted its liability for the oil spill.

17. BP's duties are non-delegable.

18. It was foreseeable that the Defendants' action and/or omissions, resulting in the blowout of the Macondo well, the sinking and destruction of the Deepwater Horizon and the ensuing uncontrolled oil spill from the Macondo well, would proximately cause the damage, injury and harm that Plaintiff did suffer and will continue to suffer, as alleged herein.

19.     The injuries to the Plaintiff were also caused by or aggravated by the fact that Defendants failed to take reasonably necessary actions to mitigate the dangers associated with their operations.

20.     As a direct and proximate result of the Defendants' negligence and gross negligence, Plaintiff has suffered and will continue to suffer significant physical, economic and other damages in excess of $75,000.00.

21.     As a direct and proximate result of the negligence of the Defendants, the Plaintiff suffered bodily injury, pain and suffering, mental anguish loss of the capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment.  These losses are either permanent or continuing in nature and Plaintiff will continue to suffer these loses in the future.  The Defendants are liable jointly and severally for Plaintiff's damages resulting for Defendants' negligence and gross negligence.  As a result of Defendants' gross negligence, Plaintiff is also entitled to punitive damages.

### COUNT III

### Negligence Per Se Under General Maritime Law, State and Federal Law

1.     Plaintiffs re-allege each and every allegation set forth in all preceding paragraphs as if fully restated herein.

2.     Defendants' conduct with regard to the manufacture, maintenance and/or operation of oil-drilling vessels such as the Deepwater Horizon, the release of hazardous and toxic  chemicals into the environment, and the application of dispersants and other hazardous chemicals is governed by federal laws and permits issued under the authority of these laws.  These laws and permits create statutory and regulatory standards that are intended to protect and benefit Plaintiff, including, but no limited to, those that govern the National Oil and Hazardous Substances Contingency Plan,

National Oil and Hazardous Substances Contingency Plan, see, e.g. 40 C.F.R. §300.150. BP

failed to adhere to the requirements for response actions established by the National Contingency

Plan, 29 C.F.R. §1910.120. Additionally, BP failed to adhere to regulations set forth in Section

311 of the Clean Water Act, 40 C.F.R. §300 App. E, 30 C.F.R. Part 254 and the Oil Pollution

Act, 33 U.S.C. §2717(b) (the "OPA"). One or more of Defendants violated these statutory and/or

regulatory standards and therefore breached their responsibilities under these regulatory

provisions.

3.    In addition, the Federal Bureau of Safety and Environmental Enforcement ("BSEE")

found that BP violated the following Federal regulations:

a.  BP failed to protect health, safety, property and the environment by failing to perform all

operations in a safe and workmanlike manner, in violation of 30 C.F.R. § 250.107(a)1;

b)  BP did not take measures to prevent unauthorized discharge of pollutants into offshore

waters, in violation of 30 C.F.R. § 250.300;

c)  BP failed to take necessary precautions to keep the well under control at all times, in violation

of 30 C.F.R. § 250.401(a);

d)  BP did not cement the well in a manner that would properly control formation pressures and

fluids and prevent the direct or indirect release of fluids from any stratum through the

wellbore into offshore waters, in violation of 30 C.F.R. § 250.420(1) and (2);

e)  BP failed to conduct an accurate pressure integrity test, in violation of 30 C.F.R. § 250.427;

f)  )  BP failed to maintain the Deepwater Horizon's BOP System in accordance with the

American Petroleum Institute's Recommended Procedure 53 § 18.10.3,  in violation of 30 C.F.R.

§ 250.446(a);

g)  BP failed to obtain approval of the Temporary Abandonment procedures it actually used at the Macondo well, in violation of 30 C.F.R. § 250.1721(a);

h)  BP failed to conduct an accurate pressure integrity test at the 13-/5/8" liner shoe, in violation of 30 C.F.R. § 250.427; and

i)  BP failed to suspend drilling operations at the Macondo well when the safe drilling margin identified in the approval application for the permit to drill was not Maintained, in four separate violations of 30 C.F.R. § 250.427(b).

4. Defendants' violations of these statutory and/or regulatory standards constitute negligence *per se* under Federal law, as well as general maritime law.

5. Defendants' violations of these statutory and/or regulatory standards constitute negligence *per se* under Louisiana, Texas, Mississippi, Alabama and Florida law.

6. Defendants had actual and/or constructive knowledge of the facts and circumstances leading to and causing the incidents described herein, which in turn caused Plaintiff's injuries, and their action and inactions were grossly negligent, reckless, willful and/or wanton.

7. As a direct and proximate cause of Defendants' violation of statutory and/or regulatory standards, the Plaintiffs have suffered injuries and are entitled to damages.

## COUNT IV

### Claims under Louisiana Nuisance Law

1. Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as if fully restated here.

2. BP's oil disaster has significantly interfered with Plaintiff's right to use and enjoy the Gulf of Mexico without oil slicks, chemical dispersants, tar balls and other associated pollution.

3.  Prior to the *Deepwater Horizon* disaster, Plaintiff enjoyed the use of the Gulf of Mexico for fishing, boating and other economic and recreational pursuits, including residing on the Gulf of Mexico.

4.  Since the disaster, Plaintiff has been unable to fish or boat, and many have lost their livelihood.

5.  Moreover, Plaintiff is subjected to foul and harmful odors emanating from the crude oil soaked booms and/or the chemical dispersants.  Tar balls, oil and dispersants mixed with crude oil continue to contaminate the Gulf of Mexico and the Plaintiff's environment.

6.  Plaintiff has a substantial likelihood of success based on the allegation, and Plaintiff's allegations are likely to be proven and are not merely speculative.

## COUNT V

### Strict Liability Under General Maritime Law For Design Defect Against Nalco

1.  Plaintiff realloge and reaver each and every allegation set forth in all preceding paragraphs as fully set forth herein and further state:

2.  Plaintiffs are entitled to recover from Nalco for its defective design of Corexit®.

3.  At all times relevant hereto, Nalco was in the business of designing, manufacturing, marketing, selling and/or distributing the dispersants used in response to oil spills.

4.  Nalco sold and delivered the Corexit® to BP and the Dispersant Defendants immediately after the Oil Spill and placed the chemical dispersants in the stream of commerce.

5.  Nalco knew that the Corexit® would be used without inspection for defects by consumer and in the chemical dispersants at levels, amounts and under conditions different from the general public.

## COUNT VI

### Negligence , Gross Negligence and/or Failure to Warn

## Under Louisiana and Mississippi Law

1.   Plaintiff realalege and reaver each and every allegation set forth in all preceding paragraphs as fully set forth herein and further state:

2.   Plaintiff, Lonnie Shimer, asserts that Defendants are jointly and severally liable for damages under Louisiana law for grossly negligent and/or intentional failure to conduct reasonable inspection and to do what they should have done and for grossly negligent and/or intentional failure to warn.

3.   In order to prevail on a negligence claim, a plaintiff must prove by a preponderance of the evidence each element of negligence: duty, breach of duty, proximate causation and injury. Plaintiff, Lonnie Shimer, asserts a cause of action for negligence pursuant to Louisiana Law against all Defendants.

4.   Defendants owed and breached duties of reasonable care to ensure the safety of their operations and to guard against and prevent injury to the Gulf Coast region residents and tourists and disaster response workers such as Plaintiffs who were located in the environments where Defendants chemical spraying activities occurred.

5.   Defendants owed a duty and failed in their duty to know what products they were spraying or applying onto the waters of the Gulf of Mexico and into the environment where Plaintiffs were located and to know the likely impact that their activities would have upon the environment and the health and welfare of the Gulf Coast region residents and tourists and disaster response workers.  Defendants applied the chemicals and dispersants without regard to the likely short and long term impacts upon human health likely to be caused by the quantity and geographic broad scope of their chemical applications onto hydrocarbons.

6.     Defendants owed a duty and breached the duty to spray chemicals onto the waters of the Gulf of Mexico and into Plaintiff's environment in a way which was consistent with their product labels.

## COUNT VII

## PUNITIVE DAMAGES

1.     Defendant focused primarily on profit while disregarding public and environmental health and safety while undertaking their ultra-hazardous activities on the *Deepwater Horizon.*

2.     Defendants BP, Transocean and Halliburton engaged in conduct so reckless, willful, wanton and in such utter and flagrant disregard for the safety and health of the public and the environment in their activities leading up to and/or during the blowout, explosions, fire and Spill, as alleged herein, that an award of punitive damages against them at the highest possible level is warranted and necessary to impose effective and optimal punishment and deterrence.  Plaintiffs, society and the environment cannot afford and should never be exposed to the risks of another disaster of the magnitude caused by Defendants' misconduct herein.

3.     BP and Transocean focused primarily on profit while disregarding public and environmental health and safety while undertaking their ultra-hazardous activities on the *Deepwater Horizon* by performing a critical well pressure test with untrained unqualified personnel and by callously ignoring and/or misinterpreting abnormal "red flag" pressure test results.

## DAMAGES

The Plaintiff, Lonnie Shiner, seeks damages for the wrongful death of his minor son, Hunter W. Shimer, and survival damages for the conscious pain and suffering experienced by the decedent, Hunter W. Shimer.

     **WHEREFORE**, Plaintiff demands judgment against Defendants in an amount which will adequately compensate them for actual damages herein.  In addition, Plaintiff seeks punitive

damages against Defendants, the amount of said punitive damages to be set by a jury.  Plaintiff

also seeks pre-judgment and post-judgment interest, costs, attorney's fees, along with any other

damages available, and demands trial by jury of all issues triable as of right by jury.

Respectfully submitted,
**JACK W. HARANG, APLC**

/s/ *Jack W. Harang*
Jack W. Harang (LA Bar #15083)
228 Saint Charles Avenue, Suite 501
New Orleans, Louisiana  70130
Telephone:  504.581.7050
Facsimile:   866.441.6281
Email:  jack@jharang.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that the above and foregoing pleading has been served on all
counsel by electronically uploading the same to Lexis Nexis File & Serve and that the foregoing
was electronically filed with the Clerk of Court of the United States District Court for the Eastern
District of Louisiana by using the CM/ECF System on this 5th day of August 2014.