UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 |
| | | SECTION J |
| Applies to: *13-706, 13-810, 13-1143, 13-1185, 13-1222, 13-1386, 13-2006* | * * * * * | JUDGE BARBIER |
| | | MAGISTRATE JUDGE SHUSHAN |

**MEMORANDUM OF BP EXPLORATION & PRODUCTION INC. IN OPPOSITION TO UNITED STATES' MOTION TO QUASH SUBPOENA**

**INTRODUCTION**

In its Motion to Quash (Rec. Doc. 13209-2), the United States nowhere disputes that BPXP's subpoena seeks documents related to the deepwater drilling moratoriums and permitting delays imposed by the Department of the Interior. Nor does the Motion dispute that those same moratoriums and permitting delays are basis for claims for damages by the OPA Test Case Plaintiffs. In other words, the subpoena directly relates to the central facts underlying Plaintiffs' claims; the Government's Motion does not contend otherwise.

Instead, the Motion contends, *first*, that Plaintiffs will prevail in a separate Motion to Strike BPXP's defense of "supervening cause." *See* Mot. 2–4. But the Motion to Quash nowhere rebuts that the subpoena seeks documents relevant to *other* Test Case issues. The Motion to Quash does not even mention the fundamental OPA element requiring that any claimed moratorium losses be "due to" property damage or natural-resources injury. (*See* Part I *infra*.) As Judge Barbier summarized the issue in a hearing three years ago: "the argument on the other side would be . . . [the moratorium] wasn't directly caused by the spill, because . . . they weren't trying to clean up anything. They weren't doing it in direct response to the spill. They were trying to prevent future spills, as I appreciate the purpose of the moratorium." Exhibit A, Hr'g Tr. 94. The Motion to Quash does not even acknowledge this issue, let alone prove that the subpoena requests are irrelevant to it.

*Second*, the Motion to Quash contends that under the law of sovereign immunity, the United States cannot be liable under OPA.  *See* Mot. 4.  But BP is not seeking to hold the United States liable, nor are the Test Plaintiffs.  The Motion to Quash does not contend that a party immune from liability is immune from providing discovery, nor does the Motion furnish any authority for this baseless proposition.  In the absence of such authority, BP does not address this argument further here.

*Third,* and finally, the Motion contends that the subpoena is overbroad and will unduly burden the United States and this Court.  *See* Mot. 5–7.  But the moving papers acknowledge that any such burden is controlled by electronic-search variables, such as the time period covered.  The parties were negotiating these variables when this Motion was filed, and those negotiations continue.  Thus, as is discussed in Part II, this Motion is premature.

I. **THE SUBPOENAED DOCUMENTS ARE RELEVANT TO FUNDAMENTAL OPA ISSUES THAT THE MOTION DOES NOT EVEN DISCUSS, AND WHICH ARE INDEPENDENT OF THE DOCTRINE OF "SUPERSEDING CAUSE."**

The United States' Motion to Quash is based on the premise that OPA precludes a defense based on the doctrine of "supervening cause."  *See* Mot. 2–4 & n.2 (using the terms "superseding cause" and "supervening cause" interchangeably).  The Motion does not dispute that the subpoenaed documents are relevant to this defense, and BP is today filing a separate brief (in opposition to the Plaintiffs' Motion to Strike Affirmative Defenses) in which BP demonstrates the applicability of the superseding cause defense in the OPA Test Cases.

But the subpoenaed documents are also relevant to *other* fundamental issues in the OPA Test Cases.  As BP has repeatedly advised the United States, "BP's discovery is relevant to issues that go beyond superseding cause," such as the threshold elements of an OPA damages claim and whether Plaintiffs mitigated any damages.  *See* Exhibit B, July 24, 2014 email from A. Langan to S. Himmelhoch (describing the relevance of BPXP's requests); July 22, 2014 email from A. Langan to S. Himmelhoch (in same exhibit further down the email string; source of quotation).

The Motion to Quash does not address, let alone rebut, the relevance of the subpoenaed documents to these other issues at the heart of the OPA Test Cases.

Most fundamentally, the subpoenaed documents are relevant to the *prima facie* statutory element of causation.  The OPA Test Case Plaintiffs concede that their claims must satisfy the causation elements of OPA Section 2702(b)(2)(E), which requires that the plaintiff's losses must be "*due to* the injury, destruction, or loss of real property, personal property, or natural resources."  33 U.S.C. § 2702(b)(2)(E)(emphasis added).[1]  Because the Plaintiffs seek to recover for losses allegedly caused by the Government's drilling moratoriums and delayed issuance of drilling permits, then on their own reading of OPA, Plaintiffs must show that these Government actions were "due to the injury, destruction, or loss of real property, personal property, or natural resources," and that the Government's actions were not motivated by other causes, such as the prevention of spills by other drilling rigs.  As Judge Barbier has previously summarized the issue, "the argument on the other side would be . . . [the moratorium] wasn't directly caused by the spill, because . . . they weren't trying to clean up anything.  They weren't doing it in direct response to the spill.  They were trying to prevent future spills, as I appreciate the purpose of the moratorium."  Exhibit A.  Yet the Motion to Quash nowhere even mentions Section 2702(b)(2)(E), and contains no reasoning as to why the subpoenaed discovery is not relevant to whether the moratorium was "due to the injury . . . of natural resources" rather than an attempt to prevent other spills.

The subpoenaed documents are also relevant to whether Plaintiffs' alleged losses from delays in permitting were caused by perceived problems of the oil and gas industry overall. Document Requests 9–15, for example, seek documents concerning the United States' delay in issuing drilling permits.  These documents could show that the delays had little or nothing to do with the *Deepwater Horizon* Incident, which would preclude Plaintiffs from satisfying their threshold burden of establishing the elements of causation under OPA.  Some of the requested documents are also relevant to whether Plaintiffs mitigated their alleged damages by, for

---

[1] *See, e.g.,* Plaintiffs' Motion to Strike 1 (Rec. Doc. 13108), citing OPA Section 2702(b)(2)(E).

example, diligently working to fulfil new regulatory requirements. (Requests Nos. 7–8 seek documents discussing the specific OPA Test Case Plaintiffs.)

The relevance of each document request to an OPA issue (separate and apart from the defense of "superseding cause") is summarized in Exhibit C, *"Relevance of BPXP's Requests."* The Motion to Quash neither discusses the potential relevance of these requests nor even mentions the fundamental OPA elements of the Plaintiffs' *prima facie* case in Section 2702(b)(2)(E), and hence fails to demonstrate that the subpoenaed materials are not reasonably calculated to lead to the discovery of admissible evidence as to those elements and to other issues in the Test Cases.

## II. THE UNITED STATES HAS NOT ESTABLISHED THAT THE SUBPOENA IS UNDULY BURDENSOME, BECAUSE THE PARTIES ARE STILL NEGOTIATING SEARCH PARAMETERS TO DEFINE ITS SCOPE.

As a second requirement to prevail here, the United States must prove that complying with BPXP's subpoena would be unduly burdensome. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). The Motion to Quash cannot meet this standard, because it was filed when negotiations to narrow the subpoena's scope were just beginning.

As this Court is well aware, in modern discovery involving predominantly electronically stored data, the breadth and burden of discovery requests are not defined until the parties attempt to negotiate variables such as search terms and the identity of custodians. Courts look to these parameters to gauge the reasonableness of document requests, because as a practical matter, the burden cannot be assessed until the specifics of the search are defined. *See, e.g.*, *John B. v. Goetz*, 879 F. Supp. 2d 787, 882 (M.D. Tenn. 2010) (limiting custodians and search terms rendered requested document production not unduly burdensome).

Indeed, the United States bases this Motion on the search parameters selected by a Department of Interior discovery manager, who estimated the burden of the subpoena based on his selection of search terms and who imposed no limitation on the scope of the search based on selection of custodians. *See* Mot. 6; Irish Decl. (Rec. Doc. 13209-4). But the United States did

4

not furnish this information to BP to negotiate a narrower scope: the first time BP saw this information was in the papers filed with this Motion.

Five days earlier, BP had invited the United States to make an opening proposal for a subset of potential custodians, and offered to provide such a proposal if the Government preferred that BP open the bidding. *See* Exhibit B, July 24, 2014 email from A. Langan to S. Himmelhoch ("We can furnish you with the identity of custodians and search terms, if the DOI folks don't have some in mind."). In fairness to the United States, their omission of a response to BP's invitation appears to have been an oversight. *See* Exhibit D, July 29, 2014 email from S. Himmelhoch to A. Langan ("I had not realized until I re-read your email today that you were expecting me to propose custodians . . . .").

But the fundamental point is that the parties had not exhausted their attempt to negotiate an agreed-upon scope of response to the subpoena. Indeed, those negotiations had not even begun, and as of this writing they are not yet complete.

Already, the proposals on the table from BP would more than halve the scope of the hypothetical production complained of in the Motion to Quash. For example, in response to the DOI discovery manager's declaration, BP has proposed cutting in half the date range, from four to two years, which would eliminate the need to search an entire database that accounts for approximately half of the documents. *See* Mot. 6; Irish Decl. ¶¶ 3–5 (describing date ranges of two DOI databases); *see also Wiwa*, 392 F.3d at 818 (factors relevant to issue of "burden" include the time period covered by the request).

BPXP simultaneously made six other proposals to narrow the scope of the search, including limiting the number of custodians to 18 for all but one search—a reduction of at least 80% of DOI custodians previously searched in Phases 1–3. *See* Exhibit E, July 31, 2014 email from A. Langan to S. Himmelhoch; *see also* Exhibit F, BPXP Proposals to Narrow Scope of Subpoena, July 31, 2014.

BPXP is also seeking to address the main burden described by the declarant for the United States—manual review to screen out privileged documents. *See* Irish Decl. ¶¶ 15–17.

BPXP has proposed using "negative" search terms to remove documents containing the phrases "Privileged" and "Attorney Work Product" from the production, thereby reducing both the scope of the production and the time needed to manually screen documents for privilege. Courts recognize that this automated process of excluding privileged documents "can significantly reduce the costs of a privilege review." *Zubulake v. UBS Warburg,* 217 F.R.D. 309, 318 (S.D.N.Y. 2003) ("[K]ey words can be run for privilege checks."); *Goetz*, 879 F. Supp. 2d at 883.

BP's offer to exclude altogether documents with these terms provides even more relief (and will likely yield fewer produced documents) than the method previously used in MDL 2179 to reduce the workload for privilege screening. In those instances, the search terms were used to identify which documents would be subject to manual screening. *See, e.g.*, Order Regarding the Protocol for Production of Documents from the U.S.'s DOE Re-Collection (Rec. Doc. 6931) (privilege search terms used to identify documents for manual screening in United States' production); Order Regarding the Protocol for Production of Documents from the U.S.'s Zantaz Archive (Rec. Doc. 5293) (same). Here, BP is not asking for the United States to conduct a manual review, but rather offering to exclude documents with these search terms from the production altogether.

The United States filed this Motion before any of these proposals could be discussed. Courts reject claims of "undue burden" when, as here, the producing entity has not first attempted to negotiate a compromise with the propounding party. *See, e.g., Kipperman v. Onex Corp.,* CIV.A. 1:05CV1242JOF, 2008 WL 4372005, at *8 (N.D. Ga. Sept. 19, 2008) (rejecting defendants' claims of undue burden where defendants failed to work with plaintiff to reduce burden by limiting search terms and custodians); *Ang v. Bimbo Bakeries USA, Inc.,* 13-CV-01196 WHO (NC), 2014 WL 1940178, at *2 (N.D. Cal. May 14, 2014) (rejecting claims of undue burden where party "failed to propose any way to limit the scope of the requested discovery to minimize its burden").

Because the United States filed this Motion and accompanying declaration before reviewing BPXP's proposal, the moving papers do not discuss the actual burden of implementing a tailored search for the documents responsive to BPXP's subpoena. Rather, the moving papers discuss the alleged burden of complying with search terms and date ranges which BPXP is not proposing. Thus, the United States cannot meet its burden of proving that actual compliance with BPXP's subpoena is unduly burdensome.

The Court should therefore deny the United States' Motion and direct counsel to complete their negotiation of reasonable search parameters.

## **CONCLUSION**

The first premise of the Motion to Quash is the inapplicability of BP's defense of superseding cause, an issue that BP addresses in its brief filed in opposition to Plaintiffs' Motion to Strike that defense. But separate and apart from the outcome on the Motion to Strike, BP's subpoena is relevant to fundamental elements of the OPA Plaintiffs *prima facie* case that are not even discussed in the Motion to Quash. The United States therefore has not met its burden of showing that the subjects of this subpoena are irrelevant.

Nor has the United States demonstrated undue burden, because the Motion to Strike was filed while the parties were still in negotiations over the scope of the responsive search, which was halved by BP's offer two days after this Motion was filed, and is still being discussed and compromised today.

Therefore, BPXP respectfully requests that this Court deny the United States' Motion to Quash.

Dated: August 8, 2014                                Respectfully submitted,

Don K. Haycraft (Bar #14361)                          /s/ J. Andrew Langan, P.C.
LISKOW & LEWIS                                       Richard C. Godfrey, P.C.
701 Poydras Street, Suite 5000                       J. Andrew Langan, P.C.
New Orleans, Louisiana 70139                         Matthew T. Regan, P.C.
Telephone: (504) 581-7979                            Elizabeth A. Larsen
Facsimile: (504) 556-4108                            KIRKLAND & ELLIS LLP
                                                     300 North LaSalle Street
Robert C. "Mike" Brock                               Chicago, IL 60654
COVINGTON & BURLING LLP                              Telephone: (312) 862-2000
1201 Pennsylvania Avenue, NW                         Facsimile: (312) 862-2200
Washington, DC 20004-2401
Telephone: (202) 662-5985                            Martin R. Boles
Facsimile: (202) 662-6291                            KIRKLAND & ELLIS LLP
                                                     333 South Hope Street
Emily Johnson Henn                                   Los Angeles, CA 90071
COVINGTON & BURLING LLP                              Telephone: (213) 680-8400
333 Twin Dolphin Drive, Suite 700                    Facsimile: (213) 680-8500
Redwood Shores, CA 94065-1418
Telephone: (650) 632-4715                            Christopher W. Keegan
                                                     KIRKLAND & ELLIS LLP
                                                     555 California Street
                                                     San Francisco, CA 94104
                                                     Telephone: (414) 439-1400
                                                     Facsimile: (414) 439-1500

                                                     Jeffrey Bossert Clark
                                                     Dominic E. Draye
                                                     KIRKLAND & ELLIS LLP
                                                     655 Fifteenth Street, N.W.
                                                     Washington, D.C. 20005
                                                     Telephone: (202) 879-5000
                                                     Facsimile: (202) 879-5200

*Attorneys for BPXP Exploration & Production, Inc.*

**CERTIFICATE OF SERVICE**

     I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of August, 2014.

                                                        */s/ J. Andrew Langan, P.C.*