**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by | * | **MDL NO. 2179** |
| the Oil Rig "Deepwater Horizon" | * | |
| in the Gulf of Mexico, on April 20, 2010 | * | **SECTION J** |
| | * | |
| | * | |
| | * | **Honorable CARL J. BARBIER** |
| | * | |
| This document relates to: | * | **Magistrate Judge SHUSHAN** |
| Nos. 13-706, 13-810, 13-1143, 13-1185, | * | |
| 13-1222, 13-1386, and 13-2006 | * | |
| | * | |

**BPXP'S MEMORANDUM IN OPPOSITION TO THE OPA TEST CASE PLAINTIFFS'
MOTION TO STRIKE AFFIRMATIVE DEFENSES AND MOTION *IN LIMINE*
REGARDING POTENTIAL THIRD-PARTY FAULT**

## Table of Contents

Page

INTRODUCTION..................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.     Both Halves of This Disguised and Premature Motion for Summary Judgment Are Procedurally Improper. .......................................................... 3

    A.    The Motion to Strike Fails to Meet the Controlling Standard of Review.............. 4

        1.    BPXP's Causation Defenses Are Framed to Meet the Plaintiffs' Allegations and Comport With Federal Rule of Civil Procedure 8. .......... 4

        2.    Adjudicating Issues Surrounding OPA Causation Will Require Resolution of Questions of Fact That Preclude a Motion to Strike. .......... 5

        3.    BPXP's Defenses Raise Numerous Questions of Law, Thereby Precluding a Motion to Strike. .................................................................... 6

        4.    Plaintiffs Suffer No Legally Cognizable Prejudice from BPXP's Defenses Regarding Causation. .................................................................. 9

    B.    The Test Plaintiffs Have Not Filed a Valid Motion *In Limine* and Do Not Cite a Single Rule of Evidence Supporting the Relief They Seek........................ 10

    C.    Plaintiffs' Motion Is, in Reality, a Premature Summary Judgment Motion. ........ 11

II.    Plaintiffs' Motion Also Fails as a Matter of Substantive Law. ................................... 12

    A.    Plaintiffs Bear the Burden of Establishing Each Element of Each of Their OPA Claims and Cannot Shift That Burden to BPXP.......................................... 12

    B.    The Plaintiffs' Alleged Moratoria Losses Do Not Fit Within Any Category of OPA Damages. ............................................................................................... 15

        1.    The Plaintiffs Can Press Moratoria-Related Claims Under Only a Single One of OPA's Six Damages Categories. ....................................... 15

        2.    The Coast Guard Has Repeatedly and Categorically Rejected Moratoria Claims as Non-Compensable Under OPA............................. 16

        3.    This Court's Rejection of the BPXP Dealer Claims Credits the Analysis of One of Plaintiff's Own Retained Legal Experts and Rests on the Same Rationale as the Coast Guard's Analysis................... 18

        4.    The Fifth Circuit's *In re Taira Lynn* Decision Supports This Court's Rejection of the BPXP Dealers' Claims, the Coast Guard's Reading of OPA, and BPXP's Arguments That Moratoria Losses Are Not Recoverable Under OPA............................................................. 19

C.  To Be Compensable Under OPA, Any Injuries Must Be Proximately Caused by the Pollution Incident Itself or, at the Very Least, Surmount a Causation Hurdle Specific to OPA That Is Greater Than But-For Causation........................................................................................... 21

1.  When Federal Statutes Do Not Define a Causation Rule With Specificity, the Default Rule Is the Familiar Proximate Cause Standard. ........................................................................................ 21

2.  Proximate Cause Includes an Element of Foreseeability, and BP Will Have No Trouble Demonstrating—on a Complete Record— that the Unlawful Moratoria Were Not Foreseeable............................... 25

3.  Even If a Standard Less Stringent Than Proximate Cause Were to Apply, the Oil Pollution Act Provisions on Which Plaintiffs Rely Include Specific Causation Language....................................................... 26

**III.   None of the Plaintiffs' Remaining Grab Bag of Arguments Can Overcome the Plain Text of OPA Section 2702, the Applicable Judicial Case Law, or the Body of Coast Guard Precedent So as to Allow a Motion to Strike to Be Granted. .................................................................................................. 29**

A.  The Court Should Not Credit the Law Review Articles of Professors Palmer and Robertson or the *Third Restatement* (Physical and Emotional Harm) as Support for Moratoria Claims. ........................................................ 29

1.  The Law Review Articles of Professors Palmer and Robertson Are Clearly Not the Law.................................................................................. 29

2.  The Freshly Minted *Third Restatement of Torts* (Physical and Emotional Harm) Cannot Be Used to Interpret OPA Because It Is Inapposite and in Open Rebellion Against the Proximate Cause Requirement That Federal Courts Regularly Apply in Practice. .............. 33

B.  The Plaintiff's Extended Arguments About the Sovereign Immunity of the United States Are, at Best, *Non Sequiturs*, and in Reality Reveal the Contradictions in Plaintiffs' Tortuous Legal Positions......................................... 34

**CONCLUSION** ..................................................................................................... **35**

## Table of Authorities

Page(s)

**Cases**

*Abene v. Jaybar, LLC,*
  802 F. Supp. 2d 716 (E.D. La. 2011) ................................................................... 4

*Aransas Project v. Shaw,*
  --- F.3d ----, No. 13-40317, 2014 WL 2932514 (5th Cir. June 30, 2014).......... 10, 25

*Aurispa v. Texas Dep't of Commerce,*
  68 F.3d 469 (5th Cir. 1995)................................................................................. 11

*Baisden v. I'm Ready Productions, Inc.,*
  693 F.3d 491 (5th Cir. 2012)............................................................................... 13

*Ballard Shipping Co. v. Beach Shellfish,*
  32 F.3d 623 (1st Cir. 1994).................................................................................. 13

*Barr v. County of Clarion,*
  417 Fed. App'x 178 (3d Cir. 2011) ...................................................................... 7

*Benefiel v. Exxon Corp.,*
  959 F.2d 805 (9th Cir. 1992) ............................................................................... 23

*Canada Life Assurance Co. v. Converium Rückversicherung (Deutschland) AG,*
  335 F.3d 52 (2d Cir. 2003) .................................................................................... 2

*Century Exploration New Orleans, LLC v. United States,*
  2013 WL 4697167 (Fed. Cir. filed Aug. 19, 2013)
  *aff'd*, 745 F.3d 1168 (Fed. Cir. 2014) ............................................................ 26, 28

*City of Columbus v. Ours Garage & Wrecker Service, Inc.,*
  536 U.S. 424 (2002) ............................................................................................ 30

*CSX Transportation, Inc. v. McBride,*
  131 S. Ct. 2630 (2011) ........................................................................................ 22

*David v. Signal Int'l, LLC,*
  No. 08-1220, 2013 WL 2181293 (E.D. La. May 20, 2013).................................... 4

*Dunham-Price Group, LLC v. Citgo Petroleum Corp.,*
  No. 2:07-cv-1019, 2010 WL 1285446 (W.D. La. Mar. 31, 2010) ........................ 21

*Efferson v. Kaiser Aluminum & Chem. Corp.,*
  816 F. Supp. 1103 (E.D. La. 1993) ....................................................................... 7

*Ensco Offshore Co. v. Salazar,*
  No. 10-1941, 2010 WL 4116892 (E.D. La. Oct. 19, 2010) ................................. 25

*Ensco Offshore v. Salazar,*
  No. 10-1941, 2011 WL 1790838 (E.D. La. May 10, 2011) ................................. 25

*Estate of Sanders v. United States,*
  736 F.3d 430 (5th Cir. 2013)............................................................................... 12

*Exxon Co., U.S.A. v. Sofec, Inc.,*
  517 U.S. 830 (1996) ..................................................................................... 6, 7, 8

*Fisher v. Halliburton,*
  667 F.3d 602 (5th Cir. 2012)......................................................................... 11, 12

*Gatlin Oil Co. v. United States*,
    169 F.3d 207 (4th Cir. 1999)..................................................................................... 20, 28

*General Elec. Co. v. U.S. Dept. of Commerce*,
    128 F.3d 767 (D.C. Cir. 1997) ........................................................................................ 13

*Greco v. Velvet Cactus, LLC*,
    No. 13-3514, 2014 WL 2943598 (E.D. La. June 27, 2014).................................... 11

*Hibma v. Odegaard*,
    769 F.3d 1147 (7th Cir. 1985).......................................................................................... 8

*Hornbeck Offshore Servs. v. Salazar*,
    696 F. Supp. 2d 627 (E.D. La. 2010) ......................................................................... 25

*Hornbeck Offshore Servs. v. Salazar*,
    No. 10-1663, 2010 WL 3523040 (E.D. La. Sept. 1, 2010) .................................... 25

*Hussain v. Boston Old Colony Ins. Co.*,
    311 F.3d 623 (5th Cir. 2002)........................................................................................ 11

*In re Claim No. N10036-0023*,
    (Feb. 16, 2011) ................................................................................................................ 18

In re Claim No. N10036-0035 (Scientist/Paleontologist),
    (Nov. 8, 2010) .................................................................................................................. 17

*In re Claim No. N10036-0290*,
    (Mar. 17, 2011)................................................................................................................. 17

*In Re Claimant EIC Assocs., Inc.*,
    Loss of Profits and Earning Capacity (Jan. 23, 2013)............................................. 24

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (La. Plaintiffs)*,
    713 F.3d 807 (5th Cir. 2013)......................................................................................... 27

*In re Oil Spill by Oil Rig Deepwater Horizon*,
    902 F. Supp. 2d 808 (E.D. La. 2012) .................................................................. 18, 19

*In re Settoon Towing LLC*,
    No. 07-1263, 2009 WL 4730969 (E.D. La. Dec. 4, 2009).................................... 21

*In re Taira Lynn Marine Ltd.*,
    444 F.3d 371 (5th Cir. 2006).............................................................. 19, 20, 27, 28

*In re Zippora Pte Ltd.*,
    Claim N08057-0099 (Oct. 22, 2012) ......................................................................... 14

*James v. Chavez*,
    511 F. App'x 742 (10th Cir. 2013)............................................................................. 25

*Law v. Hunt Cnty., Texas*,
    830 F. Supp. 2d 211 (N.D. Tex. 2011)......................................................................... 4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) ................................................................................................... 22

*Louisiana ex rel. Guste v. Testbank*,
    752 F.2d 1019 (5th Cir. 1985).............................................................................. 19, 20

*Marine Overseas Servs., Inc. v. Crossocean Shipping Co., Inc.*,
    791 F.2d 1227 (5th Cir. 1986).......................................................................................... 4

*Murray v. Earle*,
  405 F.3d 278 (5th Cir. 2005) ............................................................................... 7, 8

*New York Life Ins. Co. v. Gamer*,
  303 U.S. 161 (1938) .................................................................................................. 7

*Pacific Operators Offshore, LLP v. Valladolid*,
  132 S. Ct. 680 (2012) ............................................................................................ 22

*Paroline v. United States*,
  134 S. Ct. 1710 (2014) .......................................................................................... 22

*Penn Cent. Transp. Co. v. City of New York*,
  438 U.S. 104 (1978) .............................................................................................. 28

*Petition of Cleveland Tankers, Inc.*,
  791 F. Supp. 669 (E.D. Mich. 1992) ................................................................... 20

*Resolution Trust Co. v. Seale*,
  13 F.3d 850 (5th Cir. 1994) .................................................................................. 32

*Robins Dry Dock & Repair Co. v. Flint*,
  275 U.S. 303 (1927) .............................................................................................. 19

*Scheufler v. Gen. Host Corp.*,
  895 F. Supp. 1411 (D. Kan. 1995) ......................................................................... 8

*Sekco Energy, Inc. v. M/V Margaret Chouest*,
  820 F.Supp. 1008 (E.D. La. 1993) ................................................................. 21, 24

*Singer v. Dorr*,
  38 F.R.D. 167 (E.D. La. 1965) ............................................................................... 9

*Southern Pac. Co. v. Darnelltaenzer Lumber Co.*,
  245 U.S. 531 (1918) .............................................................................................. 24

*United States v. Gaubert*,
  499 U.S. 315 (1991) .............................................................................................. 27

*United States v. U.S. Gypsum Co.*,
  438 U.S. 422 (1978) .............................................................................................. 23

*United States v. X-Citement Video, Inc.*,
  513 U.S. 64 (1994) ................................................................................................ 21

*Urbach v. United States*,
  869 F.2d 829 (5th Cir. 1989) ................................................................................ 25

*Wortley v. Camplin*,
  333 F.3d 284 (1st Cir. 2003) .................................................................................. 7

**Statutes**

5 U.S.C. § 702 .......................................................................................................... 35

33 U.S.C. § 2701(14) ............................................................................................... 27

33 U.S.C. § 2702(a) ........................................................................................... 13, 27

33 U.S.C. § 2702(b)(2)(A) ...................................................................................... 16

33 U.S.C. § 2702(b)(2)(B) ...................................................................................... 16

33 U.S.C. § 2702(b)(2)(C) ...................................................................................... 16

33 U.S.C. § 2702(b)(2)(D) ................................................................. 16

33 U.S.C. § 2702(b)(2)(E) ................................................... 1, 13, 16, 28

33 U.S.C. § 2702(b)(2)(F) ................................................................. 16

33 U.S.C. § 2703 ............................................................................ 15

33 U.S.C. § 2710(b) .......................................................................... 8

33 U.S.C. § 2712(a)(4) ............................................................... 17, 36

33 U.S.C. § 2713(c) .......................................................................... 17

46 U.S.C. § 30507 ............................................................................ 31

**Rules**

Fed. R. Civ. P. 8(b) ........................................................................... 4

Fed. R. Civ. P. 8(c) ........................................................................... 4

Fed. R. Civ. P. 56(a) ........................................................................ 12

Fed. R. Civ. P. 56(d) ........................................................................ 11

Fed. R. Evid. 401 ............................................................................. 11

**Regulations**

33 C.F.R. § 136.105(a) ...................................................................... 13

33 C.F.R. § 136.213(b) ...................................................................... 13

33 C.F.R. § 136.215 .......................................................................... 13

**Other Authorities**

57A Am. Jur. 2d *Negligence* § 421 ..................................................... 7

Black's Law Dictionary (9th ed. 2009) ........................................... 25, 27

Bloomberg,
    *Permitorium to 9-9-9: Viewers' Guide to the Jargon of Debates*, (Oct. 11, 2011) 175C Charles
    Alan Wright et al., Fed. Prac. & Proc.
    § 1381 (3d ed. 2014) ..................................................................... 4

John C. P. Goldberg,
    *Liability for Economic Loss in Connection with the* Deepwater Horizon *Oil Spill*,
    30 Miss. Coll. L. Rev. 335 (2011) ............................................... 14, 24

John C. P. Goldberg,
    *OPA and Economic Loss: A Reply to Professor Robertson*,
    30 Miss. C. L. Rev. 203 (2011) ....................................................... 33

H.R. Rep. No. 101-653 (1990) (Conf. Rep.),
    *reprinted in* 1990 U.S.C.C.A.N. 779 ............................................... 21

2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.37[1],[4] (3d ed. 2014) ..................... 4

Vernon Palmer,
    *The Great Spill in the Gulf . . . and a Sea of Pure Economic Loss: Reflections on the
    Boundaries of Civil Liability*,
    116 Pa. St. L. Rev. 105 (2011) ....................................................... 15

Restatement (Second) of Torts (1965) ............................................... 7, 8

Restatement (Third) of Torts:  Physical and
    Emotional Harm (2009) .................................................................................... 34

David W. Robertson,
    *Criteria for Recovery of Economic Loss Under the Oil Pollution Act of 1990,*
    7 Tex. J. Oil Gas & Energy L. 241 (2011-12)............................................ 22, 30, 33

David W. Robertson,
    *The Oil Pollution Act's Provisions on Damages for Economic Loss,*
    30 Miss. C. L. Rev. 157 (2011) .................................................................... 19, 24

1 Schoenbaum's Admiralty & Mar. Law § 5-3 (5th ed. updated Nov. 2013) .............................. 7

2 Schoenbaum's Admiralty & Mar. Law § 18-
    4 (5th ed. updated Nov. 2013) ...................................................................... 14, 22

Steven Shavell,
    *Should BPXP Be Liable For Economic Losses Due To The Moratorium On Oil Drilling*
    *Imposed After The Deepwater Horizon Accident?,*
    64 Vand. L. Rev. 1995 (2011)........................................................................ 33

5 Charles Alan Wright et al., Fed. Prac. & Proc.
    § 1261 (3d ed. 2014) .................................................................................... 4

5 Charles Alan Wright et al., Fed. Prac. & Proc.
    § 1271 (3d ed. 2014) .................................................................................... 4

5 Charles Alan Wright et al., Fed. Prac. & Proc.
    § 1278 (3d ed. 2014) .................................................................................... 5

5 Charles Alan Wright et al., Fed. Prac. & Proc.
    Civ. § 1269 (3d ed. 2014)............................................................................. 7

## INTRODUCTION

Plaintiffs have filed two motions in one: a motion to strike a host of BPXP's defenses and a mislabeled motion "*in limine*" to squelch any discussion of their inability to satisfy a key element of their affirmative case under the Oil Pollution Act of 1990 ("OPA"): ***causation***.  Both of Plaintiffs' requested forms of relief require them to show: (1) that this Court erred in the B1 process when it noted that OPA causation issues would best be addressed in light of specific facts; (2) that discovery into all causation issues should be disallowed, contrary to the agreed-upon scheduling order that was put in place in June 2014; and (3) that the very design of the test case process (which contemplates contested summary judgment motions and trials) was wrong. None of those showings can be made, especially not at the pleadings stage.

The first legal flaw in Plaintiffs' request is that it treats every issue related to causation as an affirmative defense on which BPXP would bear the burden.  That is incorrect, and BPXP's Answers took care to explain that their listing of causation defenses under the heading of "Affirmative Defenses" did not "assume the burden of proving any facts, issues, or elements of a cause of action where such burden properly belongs to Plaintiff."  *E.g.,* BPXP's Ans. to Bisso Marine, LLC's Compl., Rec. Doc. 13058, at 20 (June 23, 2014).  When it comes to establishing OPA causation, Plaintiffs bear the burden and the Court should reject their attempt to shift that burden to BPXP by lumping all causal questions into a haphazard pleadings-stage motion.

Additionally, as the Supreme Court clarified a few short months ago, proximate causation is presumptively the standard that plaintiffs must meet in stating claims under federal statutes. None of the arguments that Plaintiffs (or the United States) has advanced defeats the application of proximate cause to OPA.  Plaintiffs also face an even more fundamental hurdle—their claims do not fall into a valid category of OPA damages because they cannot be shown to arise "due to the injury, destruction, or loss of real property, personal property, or natural resources."  33 U.S.C. § 2702(b)(2)(E).  Relying not on decided cases (either by the courts or by the Coast Guard, which administers OPA's Oil Spill Liability Trust Fund ("OSLTF")), but on articles penned in the law reviews by Professors Palmer and Robertson, the Plaintiffs argue that the

relevant OPA standard should be mere but-for causation.  Beyond the fact that mere "but-for" causation is inconsistent with Section 2702(b)(2)(E) and the creation of **two causation requirements** in OPA Section 2702, reading the extremely low hurdle of but-for causation into OPA would lead to absurd results.  *See, e.g., Canada Life Assurance Co. v. Converium Rückversicherung (Deutschland) AG*, 335 F.3d 52, 58 (2d Cir. 2003) (Sotomayor, J., on panel) (rejecting the but-for reading of a jurisdictional provision concerning economic loss cases as untenable on grounds of absurdity).  This Court has noted the same absurdity.  B1 oral argument (Rec. Doc. 2702) at 88:25-89:3 ("There has to be a cutoff point somewhere on liability; otherwise, there is no end.  This case would rebound, bounce around the world in terms of people that could say they were indirectly affected.").

Further, BPXP has pled its arguments with more than enough specificity to survive a motion to strike.  Courts disfavor such motions and will not grant them unless the non-movant's arguments are so far-fetched as to bear no connection to the case and where leaving such issues open causes prejudice to the moving party.  This standard of review is designed to ensure that disputes of fact and law are not cut off pre-discovery—before they can be effectively joined.  Here, BPXP's arguments based on proximate cause and the text of OPA—as well as its affirmative defense in the alternative of superseding cause—are integral to assessing the viability of Plaintiffs' claims, and BPXP has presented its defenses with sufficient detail to survive a motion to strike.  As Plaintiffs themselves concede, superseding cause analysis is part and parcel of the umbrella doctrine of proximate cause, *see* PSC Memo., Rec. Doc. 13108-1, at 14 n.14.  These doctrines differ in that a plaintiff's baseline showing of proximate causation is its burden to carry, whereas the affirmative defense of superseding cause is the defendant's burden.  But before the facts are assembled via discovery, it is difficult to test either the sufficiency of a plaintiff's assertion of proximate cause or a defendant's superseding cause defense.

As this Court recognized in its earlier B1 Order and OPA Test Trial scheduling rulings, deciding issues of causation should occur only when the appointed summary judgment period arrives, since facts unearthed in discovery will provide a framework for resolving disputed

issues.  The facts involved as to causation will inherently vary from Plaintiff to Plaintiff, regardless of whether the governing standard is characterized correctly as proximate causation or instead as but-for causation or even some newfangled standard that the Plaintiffs try to cobble together from the two law review articles on which they heavily lean.  Therefore, the Court should neither reverse itself nor hamstring BPXP's defense at the outset of these important cases.

*Part I* below sets outs the procedural errors in Plaintiff's Motion: (1) it cannot meet the high-bar standard of review for motions to strike; (2) it is not a proper motion *in limine*; and (3) it is, in reality, just a disguised and premature motion for summary judgment.  *Part II* describes in detail why the Motion presents OPA theories that fail on the merits: (1) it improperly tries to shift Plaintiffs' burden to prove causation onto BPXP and to block BP's ability to prove up the one affirmative defense that BPXP has presented by cutting off necessary discovery; (2) moratoria-loss claims are not compensable under OPA, under either (a) the Coast Guard's OSLTF decisions, (b) this Court's ruling in the BP Dealer case, or (c) Fifth Circuit precedent; and (3) even apart from these defects, proximate cause must operate as OPA's causal threshold and yet the Plaintiffs' claims will not be able to meet that test.   Finally, *Part III* explains (1) why the law review articles relied on by Plaintiffs cannot bridge the legal defects in their theories; and (2) why Plaintiffs' extended sovereign immunity argument actually supports BP's defenses since the inability of Plaintiffs to sue the federal government under OPA for moratoria losses only reinforces why no monetary remedy for such claims was intended by Congress to apply to any party, public or private.

## ARGUMENT

## I.   Both Halves of This Disguised and Premature Motion for Summary Judgment Are Procedurally Improper.

Although it is styled as both a motion to strike and a motion *in limine*, the Court should recognize the motion for what it actually is: a premature motion for summary judgment that should be denied.  Plaintiffs' filing is an attempt to shift their burden to prove causation onto BPXP, while denying BPXP all necessary discovery.  The Court should reject that ploy.

A.    **The Motion to Strike Fails to Meet the Controlling Standard of Review.**

A motion to strike an affirmative defense under Federal Rule of Civil Procedure 12(f) is a disfavored and "drastic remedy," and will only be granted when "the pleading to be stricken has no possible relation to the controversy."  Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla., 306 F.2d 862, 868 (5th Cir. 1962). [1]  Thus, even if Plaintiff's Motion is treated as a motion to strike, instead of the thinly veiled (and premature) motion for summary judgment that it is, Plaintiffs cannot succeed because the Motion fails to meet the governing standard of review required for a motion to strike.

1.    **BPXP's Causation Defenses Are Framed to Meet the Plaintiffs' Allegations and Comport With Federal Rule of Civil Procedure 8.**

BPXP's causation defenses are sufficient to survive a motion to strike, even if Plaintiffs' mistaken reading of OPA were correct, because these defenses respond directly to the allegations in the complaints.  Federal Rule of Civil Procedure 8 requires BPXP to plead affirmative defenses and any other defenses to each claim asserted.  *Marine Overseas Servs., Inc. v. Crossocean Shipping Co., Inc.*, 791 F.2d 1227, 1233 (5th Cir. 1986); *see also* Fed. R. Civ. P. 8(b) & (c).  Even for defenses that do not have to be pled under Rule 8(c), the desire to avoid any risk of waiver naturally leads to a careful approach by defendants to drafting answers.[2]  As a result, pleading defenses liberally cannot be penalized.[3]

---

[1] *Accord* 5 Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1261 (3d ed. 2014).  In other words, "[a] court must deny a motion to strike a defense if there is any question of law or fact."  *Law v. Hunt Cnty., Texas*, 830 F. Supp. 2d 211, 213 (N.D. Tex. 2011); 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.37[1],[4] (3d ed. 2014) (Rule 12(f) motions are disfavored and "[i]f sufficiency of the defense depends on disputed issues of fact or questions of law, a motion to strike should not be granted.").  And "[e]ven when technically appropriate and well-founded, motions to strike are not [to] be granted in the absence of a showing of prejudice to the moving party."  *Abene v. Jaybar, LLC*, 802 F. Supp. 2d 716, 723 (E.D. La. 2011) (citing 5C Fed. Prac. & Proc. § 1381)  (internal quotations and modifications omitted); *David v. Signal Int'l, LLC*, No. 08-1220, 2013 WL 2181293, at *2 (E.D. La. May 20, 2013) (same).

[2] No prudent defendant can risk that a failure to deny a plaintiff's allegations or failure to plead defenses and denials to those allegations will lead to admissions or waiver.  Fed R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *Marine Overseas Servs., Inc. v. Crossocean Shipping Co., Inc.*, 791 F.2d 1227, 1233 (5th Cir. 1986) ("Generally, an affirmative defense not pled is considered waived [under Rule 8(c)].").

[3] 5 Fed. Prac. & Proc. Civ. § 1271  ("[A] pleader, in order to avoid waiving an otherwise valid defense, often will decide to set up affirmatively matter that technically may not be an affirmative defense but nonetheless might fall within the residuary clause of Rule 8(c).  Normally, that pleader will not be penalized for exercising caution in this fashion even when affirmative pleading proves to be unnecessary."); *see also* 5 Fed. Prac. & Proc. Civ. § 1278.

4

In the test cases, every complaint includes allegations related to negligence, and all but one complaint includes BP Entities beyond BPXP that are not Responsible Parties within the meaning of OPA.[4]  Plaintiffs cannot now complain that BPXP's answers, framed to meet the allegations in the Test Plaintiffs' complaints and to satisfy BPXP's obligations under Rule 8, introduce legal arguments that are improper for BPXP to raise.  Thus, even if BPXP's causation defenses could be stricken on the terms Plaintiffs now advance (and they cannot), BPXP's causation defenses would still prove sufficient to survive a motion to strike.

### 2. Adjudicating Issues Surrounding OPA Causation Will Require Resolution of Questions of Fact That Preclude a Motion to Strike.

Central to Plaintiffs' OPA claims is their obligation to prove what caused their alleged losses.  This Court has recognized the fact-specific nature of that obligation, including the relevance of third-party and government causation.  For instance, the Court stated at oral argument on the B1 motions to dismiss that "the argument on the other side would be . . . [the moratorium] wasn't directly caused by the spill, because . . . they weren't trying to clean up anything. They [the government] weren't doing it in direct response to the spill.  They were trying to prevent future spills, as I appreciate the purpose of the moratorium."  B1 oral argument (Rec. Doc. 2702) at 94:19-21; *see also* Rec. Doc. 3830 at 33 (B1 Order) ("The Court need not define causation under OPA—***necessarily a highly factual analysis***—at this stage of the pleadings.") (emphasis added).  This same logic—which correctly recognized the centrality of disputes about third-party action or inaction to OPA's causation requirements—caused the Court to deny the B1 motion to dismiss and to schedule summary judgment motions in the test cases for after the conclusion of discovery in March 2015.

The PSC itself has acknowledged the fact-bound nature of OPA causation.  In regard to OPA causation, Mr. Herman told this Court during oral argument on the B1 motions to dismiss:

---

[4]  *See, e.g.*, No. 13-1185, Rec. Doc. 1 at ¶¶ 10, 24, 43; No. 10-2179, Rec. Doc. 12993 at ¶¶ 10, 24, 43; No. 13-0706, Rec. Doc. 1 at ¶ 10; No. 10-2179, Rec. Doc. 12988 at ¶ 6; No. 13-1143, Rec. Doc. 1 at ¶¶ 10, 24; No. 10-2179, Rec. Doc. 12990 at ¶¶ 10, 24; No. 13-01386, Rec. Doc. 1 at ¶ 42; No. 10-2179, Rec. Doc. 12994 at ¶ 42; No. 13-1222, Rec. Doc. 1 at ¶¶ 17; No. 13-1222, Rec. Doc. 3 at ¶ 3; No. 10-2179, Rec. Doc. 12991 at ¶ 6; No. 13-01386, Rec. Doc. 1 at ¶¶ 12-12; No. 10-2179, Rec. Doc. 12994 at ¶ 42.

- "[W]e understand that the Court is going to have to draw the line in some cases based on the facts of those specific cases. *We think that that should be done case specific, rather than drawing bright lines.*"  B1 oral argument (Rec. Doc. 2702) at 89:5-8;

- "When you talk about including a legal cause requirement, whatever that is, proximate cause, that's integrally relied to—tied to the issue of foreseeability.  As we briefed, usually you don't decide foreseeability at the pleadings stage."  B1 oral argument (Rec. Doc. 2702) at 92:5-8 (emphasis added);

- "At the very least, *we would contend that this is not ripe to be decided at the pleading stage, but should be developed based on the facts*."  B1 oral argument (Rec. Doc. 2702) at 95:14-16 (emphasis added).

The PSC's current efforts to excise OPA causation from the test cases by using a bright line at the pleadings stage runs 180 degrees contrary to the their prior position.  Yet, exactly as before, questions of fact related to OPA causation that the Court has recognized as central to OPA liability remain—including the government's focus on avoiding or containing future spills as the motivating factor for the moratoria.  This alone precludes Plaintiff's motion to strike.

### 3. BPXP's Defenses Raise Numerous Questions of Law, Thereby Precluding a Motion to Strike.

Both BPXP's OPA defenses and its defense in the alternative of superseding cause raise issues of proximate causation and OPA-specific causation.  As the Supreme Court has recognized, "issues of proximate causation and superseding cause involve application of law to fact."  *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840 (1996).  Thus, BPXP's causation defenses raise questions of law directly related to the controversy in the test cases, and are sufficient to survive a motion to strike.

Moreover, Plaintiffs' attempt to reframe BPXP's superseding cause defense as falling outside OPA by mischaracterizing the doctrine of superseding cause as incompatible with strict liability statutes is unsound and should be rejected:

*First*, proximate cause is often a necessary element of both negligence and strict-liability statutes.  "Whether proceeding under *a strict-liability or negligence theory*, proximate cause is a necessary element of a plaintiff's case; *the concept of proximate cause is the same in negligence and strict-liability cases*, even though there exists an important distinction between the two theories."  57A Am. Jur. 2d *Negligence* § 421 (emphasis added).  This eviscerates the

6

argument advanced by both Plaintiffs and by the United States that OPA's strict-liability nature somehow blots out all of BPXP's causation defenses.

> **Second**, the superseding cause doctrine is just a sub-species of proximate cause doctrine:
>
>> **Causation in admiralty (as well as generally) is properly a two-part analysis**: first, factual causation, whether the particular event or injury would have occurred without an act or omission; **second, proximate or legal causation, whether a superseding cause or a policy consideration should relieve the defendant of liability**.

1 Schoenbaum's Admiralty & Mar. Law § 5-3 (5th ed. updated Nov. 2013).[5]   BPXP's superseding cause defense is just part and parcel of proximate cause analysis. *Sofec*, 517 U.S. at 837 ("**the superseding cause doctrine, which is one facet of the proximate causation requirement**") (emphasis added).[6]

> **Third**, labeling a defense an "affirmative defense" does not alter the substance of the pleadings. *New York Life Ins. Co. v. Gamer*, 303 U.S. 161, 171-72 (1938) (enforcing a specific denial despite affirmative defense label); 5 Fed. Prac. & Proc. § 1269  ("The federal courts have accepted the notion of treating a specific denial that has been improperly denominated as an affirmative defense as though it were correctly labeled.  [R]esearch has not revealed a single reported decision since the promulgation of the federal rules in which an erroneous designation resulted in any substantial prejudice to the pleader.").  Calling BPXP's collection of causation defenses "affirmative defenses" (trying to elevate form over substance) does not make it so, nor does it mean that because BPXP raises one affirmative defense of superseding cause, BPXP has assumed the burden as to all of its causal defenses.

---

[5]  There is no inconsistency in the position BPXP takes here and its long-held position that OPA displaces maritime law concerning the spill.  OPA is a highly detailed remedial statute.  The choices it reflects regarding causes of action and available damage types thereby easily displace the judge-made federal common law, as the Fifth Circuit recently held in *United States v. American Commercial Lines*, --- F.3d ---, 2014 WL 3511882 (5th Cir. July 16, 2014).  BPXP is **not** arguing that proximate cause should be bolted onto OPA because it exists in maritime law.  Rather, just as Supreme Court regularly taps proximate cause analysis in common law cases to interpret federal statutes with causal elements, this Court may take cues from maritime or non-maritime cases for the same purpose.

[6]  *See also Murray v. Earle*, 405 F.3d 278, 290-91 (5th Cir. 2005) (citing Restatement (Second) Torts § 440–41 (1965)); *Efferson v. Kaiser Aluminum & Chem. Corp.*, 816 F. Supp. 1103, 1115 (E.D. La. 1993); 1 Schoenbaum's Admiralty & Mar. Law § 5-3 (5th ed.) ("Another aspect of proximate causation is whether an intervening or superseding cause relieves the defendant of liability.").  Indeed, federal courts routinely examine questions of proximate cause, including superseding causes, when applying federal statutes.  *See, e.g., Barr v. County of Clarion*, 417 Fed. App'x 178, 180-81 (3d Cir. 2011); *Murray*, 405 F.3d at 290-91.

Plaintiffs also try to create a straw man, arguing that even if the government's actions were a superseding cause, the government has sovereign immunity and thus it could not receive an apportioned liability.   The last step in the argument, although not spelled out clearly, is that the inability of the government to receive apportioned liability means that BPXP must therefore be liable.   *See* PSC Memo. at 26 & n.32.   None of this follows.   A superseding cause cuts off liability entirely; therefore, there is no apportionment of fault.   *Sofec*, 517 U.S. 830, 837-38 (1996) ("[T]here is properly no apportionment of comparative fault where there is an absence of proximate causation.").   Most importantly, OPA does not provide for the apportionment of damages among multiple responsible parties.   *Cf.* 33 U.S.C. § 2710(b) (OPA does not permit the transfer of liability).   Plaintiffs endeavor to sow confusion by trying to interject maritime law apportionment concepts into OPA.   This dispute between BPXP and Plaintiffs is about whether Congress provided any OPA damages remedy at all for moratoria claims.   The issue of maritime law apportionment is a resounding *non sequitur*.

Plaintiffs try to sow further confusion by assuming as part of their government immunity arguments that only a subsequent ***negligent*** act can serve as a superseding cause.   But there is no requirement that a superseding cause be a negligent act:   "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."   Restatement (Second) of Torts § 440 (1965).[7]

BPXP's arguments amply demonstrate that, at the very least, there are disputed questions of law with direct relation to OPA causation in the test cases.   Each such dispute raises a question of law sufficient for BPXP's causation defenses to survive a motion to strike.

---

[7] *See also Hibma v. Odegaard*, 769 F.3d 1147, 1156-57 (7th Cir. 1985) (not only the separate criminal acts by fellow inmates assaulting the plaintiff inmate, but ***the duty of protection assumed by a state prison system*** constituted superseding causation precluding liability on the part of those who allegedly framed the plaintiff inmate for crimes); *Murray*, 405 F.3d at 290-91 (defining superseding cause); Black's Law Dictionary 251 (9th ed. 2009). (defining superseding cause without reference to negligence); 1 Schoenbaum's Admiralty & Mar. Law § 5-3 ("later cause of independent origin that was not foreseeable").   Indeed, there is case law specifically holding that a superseding cause defense can protect a defendant from liability for losses that may have been caused by a government moratorium.   *Scheufler v. Gen. Host Corp.*, 895 F. Supp. 1411, 1413 (D. Kan. 1995) (question of whether government moratorium on new irrigation permits was a superseding cause presented an issue of material fact.

**4.    Plaintiffs Suffer No Legally Cognizable Prejudice from BPXP's Defenses Regarding Causation.**

As discussed below, Plaintiffs must prove that their injuries were "due to" damage to property or natural resources that "result from" the spill.  *See infra* Parts II.A-B.  Even if Plaintiffs need not prove proximate causation, they do not dispute that at least some showing of causation will be necessary for them to establish an injury "due to" economic loss "resulting from" harm to real property.  They simply wish to assume away any part of their burden to prove causation for purposes of this motion.  *See* PSC Memo. at 10 ("***Assuming one or more Test Case Plaintiffs is found to have suffered an economic loss as a result of the Spill***, is a 'superseding' cause defense available to BPXP as a matter of law?") (emphasis added).  As such, their theories of causation must and will be tested in the course of Plaintiffs' own affirmative case, and they suffer no legally cognizable prejudice from BPXP's causation-related defenses drawing on the same factual development.  *See, e.g., Singer v. Dorr*, 38 F.R.D. 167, 169 (E.D. La. 1965) (denying motion to strike limitation of liability defense before plaintiff's claims were established as exceeding insurance and subjecting vessel owner to potential liability).

There is similarly no prejudice from BPXP's defenses asserting that BPXP was not negligent. Those defenses are simply framed to satisfy BPXP's obligation under Federal Rule of Civil Procedure 8 to meet the Plaintiffs' stated allegations—which include not only Plaintiffs' strict-liability allegations under OPA but its negligence allegations.  *See supra* Part I.A.2.  Had Plaintiffs not included negligence claims in their complaints, BPXP would not have advanced defenses denying negligence.  What Plaintiffs cannot do is to create a "pleading trap" where they advance negligence allegations and then complain when BPXP meets such allegations consistent with the controlling terms of Rule 8.

Nor can Plaintiffs support a motion to strike by asserting that discovery concerning causation issues is burdensome.  Discovery disputes can and should be resolved separately.  Rule 12(f) jurisprudence cannot mean that prejudice for purposes of assessing motions to strike can be demonstrated merely on the basis of objections—such as those made by virtually every litigant—that discovery requests should be narrower.  For the same reasons, the U.S.'s objections to the

9

breadth of discovery must be rejected as premature because negotiations with the United States as to BPXP's third-party discovery requests remain ongoing. *See* Memo. of BPXP in Opp. to U.S. Mot. to Quash Subpoena at 4-7 (filed simultaneously).

In addition, Plaintiffs' contentions that third-party discovery into government action/inaction is burdensome or irrelevant to OPA causation are flatly contradicted by the third-party discovery that test plaintiff Seahawk Drilling Trust served on Hercules Offshore after the instant motion was filed. *See*, *e.g.*, Subpoena to Produce Documents, at Requests 16-18 (Aug. 5, 2014) (Ex. 1).[8]  In other words, Plaintiffs ask this Court to preclude as irrelevant and burdensome discovery and evidence sought by BPXP that is the very same kind of discovery and evidence Plaintiffs are actively seeking for themselves.

### B.     The Test Plaintiffs Have Not Filed a Valid Motion *In Limine* and Do Not Cite a Single Rule of Evidence Supporting the Relief They Seek.

Whatever Plaintiffs' motion is, it is not a motion *in limine*.  Black's Law Dictionary defines a "motion in limine" as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial."  Black's Law Dictionary 1109 (9th ed. 2009). Nothing in the purported motion *in limine*—the additional form of relief sought by the Plaintiffs in the Motion—refers to the Federal Rules of Evidence or establishes that all evidence of causation is inadmissible.  To the contrary, the Plaintiffs begin their motion by conceding that they bear a burden to show causation, and then attempt to bury that burden by arguing it can be assumed for now to be satisfied.  *See* PSC Memo., at 10.

But causation cannot simply be assumed away.  It is an indispensable element of Plaintiffs' cases, and any evidence concerning causation is, by definition, relevant to Plaintiffs' claims under Federal Rule of Evidence 401.  *See Aransas Project v. Shaw*, --- F.3d ----, No. 13-40317, 2014 WL 2932514, at *11 (5th Cir. June 30, 2014) ("Evidence is relevant where it has the tendency to make a fact more or less probable.") (citing Fed. R. Evid. 401); *Aurispa v. Texas*

---

[8] Contemporaneously with this Memorandum, BPXP is filing the Declaration of Dominic E. Draye, establishing the provenance of all exhibits attached hereto and describing them in one place for the Court's convenience.  The exhibit numbers used in the Declaration mirror those used in this Memorandum.  For Internet sources, the Declaration also includes the full-length url citations, rather than the "tiny url" versions included here.

*Dep't of Commerce*, 68 F.3d 469 (5th Cir. 1995) ("[T]he standard for relevance is a liberal one."); *Greco v. Velvet Cactus, LLC*, No. 13-3514, 2014 WL 2943598, at *2 (E.D. La. June 27, 2014) (denying motion to strike since "[r]ule 401 provides that evidence is relevant as long as it has probative value with respect to any fact of consequence to the determination of the action.").

### C.     Plaintiffs' Motion Is, in Reality, a Premature Summary Judgment Motion.

Plaintiffs have filed a motion with a ponderous title but a simple and singular purpose: to seek partial summary judgment on the causation element of their OPA claims and to eliminate discovery that would expose Plaintiffs' inability to carry their own affirmative burden to prove OPA causation. *See* PSC Mot.,  Rec. Doc. 13108, at ¶ 3 ("[A] superseding cause defense is not available . . . as a matter of law."); *id.* ¶ 8 ("These affirmative defenses should also be stricken . . . .") (referring to numerous defenses in the plural that are not BPXP's burden to prove at all). These arguments are not the subject of a proper motion to strike or *in limine*.  Hence, to the extent that the motion for *in limine* relief is not denied out of hand, at the very least it must be subjected to the summary judgment standard, which it will inherently fail because discovery on such issues is only in its nascent stages and because Plaintiffs' merits arguments are legally deficient. *See* Fed. R. Civ. P. 56(d) (especially subsection (d)(2)).

The Fifth Circuit has long held that it is improper for mere labels or captions to dictate the applicable legal standard. *See Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 623, 633 n.39 (5th Cir. 2002) (courts in this Circuit approach a motion "according to its substance rather than its form or label"); *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012) (treating denial of nominal Rule 12(c) motion as denial of a motion for summary judgment).  The relief that Plaintiffs seek—barring all evidence that government regulatory actions motivated by a desire to avoid future spills (rather than the *Deepwater Horizon* spill) caused their ostensible lost profits— has the inevitable effect of masking a genuine dispute of material fact.  Combined with the requested ruling that "a 'superseding' cause defense is not available . . . as a matter of law," Plaintiffs are transparently moving for summary judgment. PSC Mot., at ¶ 3, *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine

11

dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

As a motion for summary judgment, Plaintiffs' motion is premature, both in terms of the existing record and in light of this Court's scheduling order. **First**, before it can support summary judgment, the record requires fact development. The PSC itself has recognized this principle. "At the very least, we would contend that this is not ripe to be decided at the pleading stage, but should be developed based on the facts." B1 oral argument, Rec Doc. 2702, at 95:14-16 (S. Herman). **Second**, this Court ordered that motions for summary judgment are due March 27, 2015, allowing time for discovery to inform such motions. *See* Scheduling Order for OPA Test Case Trials, Rec. Doc. 12972, at 4 (June 3, 2014). This schedule was set by agreement after the Court *rejected* Plaintiffs' argument that there should be a tiered approach employing an OPA "common issues" hearing to be followed by case-specific damages discovery and trials.[9] With that approach having been rejected, Plaintiffs simply decided to reformulate the arguments they planned to present in the proposed first tier via this improper motion. However Plaintiffs try to package what they seek, it should be rejected and so the present Motion should be denied.

## II.   Plaintiffs' Motion Also Fails as a Matter of Substantive Law.

### A.   Plaintiffs Bear the Burden of Establishing Each Element of Each of Their OPA Claims and Cannot Shift That Burden to BPXP.

Plaintiffs' Motion treats causation—an element as to which they carry the burden—as part of BPXP's "affirmative defenses" and assumes that, in the absence of those defenses, the causation element of their claims is assured. But litigants cannot so easily disown a fundamental element of their cause of action. Although BPXP accepts its burden as to its one relevant and actual affirmative defense (superseding cause), it remains Plaintiffs' task to satisfy the causal links required by the statute.

It is hornbook law that a plaintiff bears the burden of proving every element of his claim. *See, e.g., Estate of Sanders v. United States*, 736 F.3d 430, 436 (5th Cir. 2013). Defendants, in turn, bear the burden of establishing affirmative defenses, *Fisher*, 667 F.3d at 609 n.12, but those

---

[9] *See* Rec. Doc. 12888 (PSC Letter to Magistrate Judge Shushan) (May 19, 2014); *see also* Rec. Doc. 12877 (BPXP's rebuttal Letter to Magistrate Judge Shushan) (May 19, 2014).

do not include the simple argument that a plaintiff has failed in its task of making a *prima facie* case, *see generally Baisden v. I'm Ready Productions, Inc.*, 693 F.3d 491, 506 (5th Cir. 2012) (distinguishing, in the copyright context, between "the question of license (an affirmative defense on which Defendants bore the burden of proof) [and] that of infringement (a claim on which [plaintiff] carried the burden)").

OPA uses ***two separate phrases*** requiring that economic losses must be causally connected to the underlying pollution incident. ***First***, OPA introduces the available damages as those "damages specified in subsection (b) of this section that ***result from*** such incident." 33 U.S.C. § 2702(a) (emphasis added). ***Second***, OPA's economic loss damages categories adds that "[t]he damages referred to in subsection (a)" are those "***due to*** the injury, destruction, or loss of real property, personal property, or natural resources." 33 U.S.C. § 2702(b)(2)(E) (emphasis added). Based on this statutory language, this Court and others have recognized that OPA's economic-loss claims must satisfy some level of causation. *See* Rec. Doc. 3080, at 33; *General Elec. Co. v. U.S. Dept. of Commerce*, 128 F.3d 767, 776 (D.C. Cir. 1997) (noting "OPA's causation requirement"); *Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 630 (1st Cir. 1994) (consulting OPA for guidance in construing Rhode Island's "Little OPA" and reading Section 2702(b)(2)(E) to "incorporate[] the familiar tort limitations of foreseeability and proximate cause. These principles do in some measure limit the burden imposed on maritime shipping."); *see also* John C. P. Goldberg, *Liability for Economic Loss in Connection with the Deepwater Horizon Oil Spill*, 30 Miss. Coll. L. Rev. 335, 344 (2011) (highlighting OPA's two separate causation requirements). Schoenbaum's learned treatise summarizes the import of OPA Section 2702's dual causation requirements as follows:

> ***The "due to" clause, then, is a second layer causation requirement that supplements the "result from" causation requirement in Section 2702(a).*** **[1]** Whereas the "result from" language of the latter section [Section 2702(a)] requires that the damage suffered by the claimant must be ***proximately caused*** by the actual or threatened discharge of oil, **[2]** the "due to" language of Section 2702(b)(2)(E) requires that the claimant's lost profits or earning capacity damages must be ***proximately caused***, ***in addition***, by injury, destruction, or loss of property or natural resources. This ***double proximate cause provision*** is unique to OPA and is designed to filter out remote claims.

2 Schoenbaum's Admiralty & Mar. Law § 18-4 (5th ed. updated Nov. 2013).

The Coast Guard has likewise construed OPA to impose burdens of both production and proof on plaintiffs. *See, e.g.,* 33 C.F.R. §§ 136.105(a) ("The claimant bears the burden of providing all evidence, information, and documentation . . . ."), 136.213(b), 136.215; *see also* (Ex. 2) *In re Zippora Pte Ltd.*, Claim N08057-0099, at 7-8, available at http://tinyurl.com/mymbopy (Oct. 22, 2012) ("The claims regulations associated with OPA provide that a claimant has the burden of establishing that he suffered a loss of profits and then quantifying that loss …."). These administrative precedents, like the judicial precedents cited above, are manifestations of the general rule that a plaintiffs bear the burden of establishing all elements of their causes of action.

Here, Plaintiffs attempt to score an early win on causation without facing up to the magnitude of their task. As noted above, their Motion tellingly suggests that the Court should just assume that they will carry their burden to show OPA causation: "***Assuming*** one or more Test Case Plaintiffs ***is found to have suffered an economic loss as a result of the Spill***, is a 'superseding' cause defense available to BPXP as a matter of law?" PSC Memo., at 10 (emphasis added). This approach—assuming causation and only thereafter considering alternative causes—mischaracterizes BPXP's substantive OPA defenses (described in detail below) and amounts to nothing more than sleight of hand. It assumes that the legal and factual disputes come out in Plaintiffs' favor and then poses a rigged question premised on that threshold assumption. If a litigant could in this way knock out a factually disputed element of his claim without facing any discovery, then the new procedural creature of "motions to strike/motions *in limine*" would supplant motions for summary judgment and they would never fail. Plaintiffs' attempt to assume their way to a major legal and factual victory must be rejected.

Finally, Plaintiffs for the most part ignore the defenses that BPXP has actually pled. As an initial matter, Plaintiffs overlook that the "Affirmative Defenses" section of BPXP's Answers states that "by setting forth these affirmative defenses, BPXP does not assume the burden of proving any facts, issues, or elements of a cause of action where such burden properly belongs to

14

Plaintiff."  *E.g.,* BPXP's Answer to Bisso Marine, LLC's Complaint, Rec. Doc. 13058, at 20 (filed June 23, 2014).  This express statement is unnecessary, of course, as BPXP could not, by complying with Rule 8 and the traditional form for answers, transform an element of Plaintiffs' claims into a presumption that it must rebut.  Nevertheless, Plaintiffs charge ahead, pretending that BPXP has done just that.  They also imagine that BPXP has presented its challenges to causation under 33 U.S.C. § 2703, again with the effect of seeking to shift the burden to BPXP. *Compare* PSC Mot., at ¶ 3 *with id.* ¶ 5.  But BPXP has never invoked Section 2703, which deals with a narrow set of complete defenses to spill liability addressing situations where a responsible party asserts it has no fault whatsoever for a spill.  *See generally infra* Part III.A.1 (rebutting the arguments of Professor Palmer premised on that provision of OPA).[10]

As for BPXP's true affirmative defense, BPXP accepts its burden of proof but does not purport to explain how it has been satisfied, nor should BPXP need do so at this early stage. After developing the evidence that is necessary under proximate cause doctrine BPXP will move for summary judgment.  Until then, the affirmative defense of superseding cause must remain un-adjudicated.

**B.    The Plaintiffs' Alleged Moratoria Losses Do Not Fit Within Any Category of OPA Damages.**

**1.    The Plaintiffs Can Press Moratoria-Related Claims Under Only a Single One of OPA's Six Damages Categories.**

OPA defines six categories of recoverable damages.  Plaintiffs can conceivably recover moratoria-related losses under only one of these categories—regarding lost profits and earning capacity.  33 U.S.C. § 2702(b)(2)(E).  After all, three of the other five categories apply only to government entities.  33 U.S.C. § 2702(b)(2)(A), (D), (F).  Nor are Plaintiffs seeking to recover moratoria-related losses pursuant to the provision permitting recovery for damages for injury or destruction of their real or personal property, *id.* § 2702(b)(2)(B), since the damages they seek

---

[10]   In general, Plaintiffs rely heavily on Professor Palmer's article on OPA (delivered in Hong Kong).  *See* Vernon Palmer, *The Great Spill in the Gulf . . . and a Sea of Pure Economic Loss: Reflections on the Boundaries of Civil Liability*, 116 Pa. St. L. Rev. 105 (2011).  Professor Palmer may be expert in comparing American to European (especially French) law.  He is not an expert in the interpretation of complex U.S. statutes involving administrative law and multiple federal agencies.

are purely consequential.   Finally, the provision permitting recovery for loss of subsistence use is likewise wholly inapplicable to parties seeking economic losses.  *Id.* § 2702(b)(2)(C).

But even OPA's economic loss provision does not permit recovery for moratoria losses:

> (E) **Profits and earning capacity**
> Damages equal to the loss of profits or impairment of earning capacity ***due to the injury, destruction, or loss of real property, personal property, or natural resources***, which shall be recoverable by any claimant.

*Id.*   Plaintiffs seeking moratorium-related recoveries are not seeking a recovery for the consequences of oil damage to their own real or personal property.  Nor do they claim that the oil spill damaged any natural resources in which they have an interest—*i.e.*, they have no claims analogous to fishermen.

Instead, Plaintiffs seek, as to their moratoria-related claims, to recover for losses "due to" the Department of Interior's independent and wholly discretionary regulatory decisions (found in some ways to be illegal) to impose prospective and broad-based moratoria.[11]   Because those losses are not "***due to the injury, destruction, or loss of real property, personal property, or natural resources***," they may not be recovered.  33 U.S.C. § 2702(E).  Accordingly, if the Court is going to substantially resolve the legal disputes concerning causation now, as opposed to simply denying the procedurally defective motion to strike and for *in limine* relief, it ought to do so by ruling in BPXP's favor and rejecting the Plaintiffs' legally defective claims.

### 2.      The Coast Guard Has Repeatedly and Categorically Rejected Moratoria Claims as Non-Compensable Under OPA.

The Coast Guard, through the National Pollution Funds Center and thus exercising its authority under OPA to pay claims from the OSLTF,[12] has flatly rejected moratoria-related claims because they are not recoverable under OPA.

---

[11]   For purposes of this brief, BPXP includes in the term "moratoria" any slow-down in permits (colloquially referred to as the "permitorium" or "permitoria plural").  *See* (Ex. 3) Bloomberg, *Permitorium to 9-9-9: Viewers' Guide to the Jargon of Debates*, available at http://tinyurl.com/opj2l2d (Oct. 11, 2011) (defining "permitorium" as the "contention that [the federal executive] is standing in the way of oil and gas development, costing jobs and maintaining U.S. dependence on foreign oil. The administration banned all deepwater drilling after the spill in April 2010.").

[12]   33 U.S.C. § 2712(a)(4) (Oil Spill Liability Trust Fund ("OSLTF") available to the President to pay OPA claims for uncompensated damages); Executive Order 12,777 (Oct. 18, 1991) (delegating claims functions to the Secretary of the Department in which the Coast Guard is operating).

The National Pollution Funds Center, in administering the Fund, has found that moratoria claims categorically fall outside of OPA:[13]

> FAQ-4:  Will the NPFC [National Pollution Funds Center administered by the Coast Guard under OPA] pay for damages I sustained because of the moratorium on offshore drilling?
>
> A:  Under the law that governs the NPFC's determinations, the NPFC **will not pay** a loss or damage that is a direct result of the moratorium on offshore drilling.

(Ex. 4) National Pollution Funds Center, Deepwater Horizon Claimant FAQs, available at http://tinyurl.com/kr9o3pu (emphasis added).   The Coast Guard's reasoning, as explained in several published NPFC decisions, is persuasive:

> Under 33 USC § 2702(b) and 33 CFR Part 136, a claimant must prove that his loss of income is **due to the injury, destruction or loss of real or personal property or natural resources resulting from the discharge or substantial threat of a discharge of oil**.   All documentary evidence submitted by [claimant redacted] indicates that **his loss directly resulted from a directive issued by the Department of the Interior imposing a six month offshore drilling moratorium** in order to implement new safety requirements.   As a result [claimant's redacted] **claim is determined to be a direct result of the moratorium, not a direct result of an oil discharge**.  **The claim is not compensable under the OPA**.

(Ex. 5) *In re Claim No. N10036-0035 (Scientist/Paleontologist)*, at 3, available at http://tinyurl.com/k7sfl96 (Nov. 8, 2010).

> The moratorium and its regulatory implications for corporate entities and their employees is **not the result of the injury, destruction or loss of property or natural resources as a result of a discharge** or substantial threat of discharge of oil but rather due to permitting requirements[;] therefore, the Claimant's loss is not a damage that may be compensated from the OSLTF [OPA's Oil Spill Liability Trust Fund].   Therefore, this claim is denied upon reconsideration.

(Ex. 6) *In re Claim No. N10036-0290*, at 3 available at http://tinyurl.com/k8welml (Mar. 17, 2011) (emphasis added) (denying the claim of an engineer working at a refinery on a project that was allegedly canceled due to the moratorium).

---

[13]   There is no commitment to the Department of Justice to interpret OPA, only one to the Coast Guard when claimants elect to seek recoveries from the Oil Spill Liability Trust Fund.  And the Coast Guard has exercised that authority to ban all moratoria-related payouts from the OSLTF.  This makes the United States' brief filed in support of the Plaintiffs here puzzling, especially because the Department of Justice has an obligation to defend federal agency positions, yet it is arguing for a position directly opposite to the Coast Guard's.  The Department of Justice does claim that "the United States administers the statute and therefore has a programmatic stake in how the statute is interpreted."  U.S. Statement at 1.  But again this authority is reposed in the Coast Guard.  Thus, as between any interests the Departments of Justice and Interior have of avoiding third-party discovery measured against the Coast Guard's programmatic interests in running the OSLTF claims process, the Coast Guard clearly must prevail.

The Coast Guard appropriately rejected the logic of the Plaintiffs' simplistic "but-for" conclusion that "[b]ecause the Spill caused the Moratorium, it follows logically that the Spill also caused any and all economic damages that resulted from the Moratorium" (PSC Memo., at 23-24):

> *As a result of this event* [i.e., the *Deepwater Horizon* spill], the government instituted additional regulatory oversight and control provisions with respect to offshore drilling …. The NPFC again denies the claim because the ***Claimant has not established that his alleged loss is <u>due to injury, destruction or loss of property or natural resources</u>*** and the resulting discharge or substantial threat of discharge of oil.

(Ex. 7) *In re Claim No. N10036-0023*, at 4 (Feb. 16, 2011) (denying claim based in part on the impact of the moratoria on claimant's assertion that the spill is what caused the cancelation of his contract with a company engaged in a proposed acquisition project) (emphasis added), available at http://tinyurl.com/mlrcnv2.

### 3. This Court's Rejection of the BPXP Dealer Claims Credits the Analysis of One of Plaintiff's Own Retained Legal Experts and Rests on the Same Rationale as the Coast Guard's Analysis.

This Court's prior decision dismissing OPA claims brought by BP-brand dealers similarly negates Plaintiffs' crude "but-for" syllogism (the spill caused moratoria, and the moratoria caused my losses). The same purported syllogism would apply to the BP Dealers' claims: the Spill caused consumer animosity to BPXP's brand, and this animosity caused the BP dealers' ostensible reduced profits and impaired earning capacity. But the Court, citing Professor Robertson's own reasoning,[14] rejected that version of the same basic syllogism:

> [T]o the extent Tobatex argues that BPXP Dealer Claims—those claims based solely on consumer animosity toward BPXP and the BPXP brand—are viable under Subsection (E), the Court disagrees for reasons stated in Professor Robertson's article.

*In re Oil Spill by Oil Rig Deepwater Horizon*, 902 F. Supp. 2d 808, 819 (E.D. La. 2012).

Making the point clearer, the Court quoted Professor Robertson's analysis:

> G owns a gas station in Boise, Idaho that sells Oil Co.-brand gasoline. Although G owns and operates the station as an independent franchise, his station becomes

---

[14]  Professor Robertson is, by his own admission, a retained expert for the PSC. *See* David W. Robertson, *The Oil Pollution Act's Provisions on Damages for Economic Loss*, 30 Miss. C.L. Rev. 157, 157 n.*a1* (2011).

> the target of a boycott by a local environmental group demanding greater
> corporate accountability.  G claims lost income resulting from the boycott....  It
> seems unlikely that the existence of 'injury, destruction, or loss' of resources or
> property played any causal role in producing these damages....  [T]he boycott ...
> would probably have occurred as a result of the reputational effects of the spill,
> regardless of whether the spill had actually produced any 'injury, destruction, or
> loss' of anything physical.

*Id.* at n.11 (quoting David W. Robertson, *The Oil Pollution Act's Provisions on Damages for Economic Loss,* 30 Miss. C. L. Rev. 157, 172–173 (2011)).  Professor Robertson's analysis makes clear that OPA Section 2702(b)(2)(E) damages are simply not available when there is no physical injury to any property or natural resources directly creating the alleged injury that forms the basis for the suit.  And as applied to the moratoria, regardless of whether any particular property or natural resources were injured, the government's decisions created the alleged economic losses, just as it was the actual or potential consumer reactions to the spill that were the true cause of the loss recoveries sought by the BPXP dealers.

> **4.      The Fifth Circuit's *In re Taira Lynn* Decision Supports This Court's
> Rejection of the BPXP Dealers' Claims, the Coast Guard's Reading of
> OPA, and BPXP's Arguments That Moratoria Losses Are Not
> Recoverable Under OPA.**

Even more importantly, the Fifth Circuit has held that claims based on "the injury, destruction, or loss of real property" require physical contact with the pollutant.  *In re Taira Lynn Marine Ltd.*, 444 F.3d 371, 383 (5th Cir. 2006) (denying plaintiffs' claims under Section 2702(b)(2)(E) because they could not establish that "any property damage was caused by the pollution incident, i.e., the release of the gaseous cargo.").  The holding in *Taira Lynn* is thus fully consistent in this respect with this rule for maritime property damage set forth in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927).  *See Taira Lynn*, 444 F.3d at 378-80; *see also Louisiana ex rel. Guste v. Testbank*, 752 F.2d 1019 (5th Cir. 1985) (en banc).  Indeed, the Fifth Circuit introduced its decision by stating:  "The ***primary issue on appeal*** is whether claimants who suffered ***no physical damage to a proprietary interest*** can recover for their economic losses as a result of a maritime allision.  Fourteen businesses and business owners brought claims under the general maritime law [***and***] the Oil Pollution Act of 1990 (OPA), 33

U.S.C. §§ 2701–2761 (2000) ….").  *Taira Lynn*, 444 F.3d at 375 (emphasis added).[15]

*Taira Lynn* involved an allision by a tugboat with a bridge resulting in a discharge of gaseous hydrocarbons that did not result in property damage; however, police evacuated an area around the bridge.  Businesses with no property damage sought revenues lost when, for instance, they had to halt work to evacuate; a manufacturer sought property damages for product ruined when it prematurely terminated operations to evacuate; and a seafood distributor sought property damage for seafood spoiled because officials cut off electricity during the evacuation.  In rejecting these claims, the Fifth Circuit held:

> Even assuming arguendo that OPA applies, none of the claimants has raised an issue of fact as to whether any property damage was caused by the pollution incident, i.e. the release of the gaseous cargo.  A party is liable under OPA if, inter alia, the claimant's damages '*result from such incident,*' i.e. the discharge or threatened discharge of oil.  *See* 33 U.S.C. § 2702(a) (emphasis added) . . . . Any property damage upon which Claimants must rely to recover under § 2702(b)(2)(E) did not result from the discharge or threatened discharge of oil. ***Claimants have not raised an issue of fact as to whether their economic losses are due to damage to property resulting from the discharge of the gas***. Therefore, Claimants cannot recover under OPA . . . .

*Id.* (bold emphasis added) (citing and relying on the analysis in and holding of *Gatlin Oil Co. v. United States*, 169 F.3d 207, 210-11 (4th Cir. 1999)).

Plaintiffs seek to immunize themselves against *In re Taira Lynn* by arguing that it involved a release of gases and not oil, but the Fifth Circuit resolved the case under OPA on the assumption that the release of gaseous hydrocarbons was covered by OPA.[16]  Moreover, *Taira*

---

[15]  The Fifth Circuit's stated OPA holding on page 383 of *Taira Lynn* makes clear that this use at the start of the *Taira Lynn* decision of *Robins Dry Dock*-like verbiage is no mistake—in other words, the opening language was not intended to apply only to claims rooted in maritime law.  Indeed, in the case's briefing, the State of Louisiana (now a plaintiff aligned with the PSC—albeit not as a party to these test cases) filed a brief in which it argued in the same way that none of the claimants at issue in the appeal could recover economic loss damages under OPA because they had no "physical damage caused by the propane/propylene cargo," and OPA "does not provide any avenue for recovery to claimants who have no interest in the appeal should be rejected.  *Taira Lynn*, 44 F.3d at 382; *see also Petition of Cleveland Tankers, Inc.*, 791 F. Supp. 669, 679 (E.D. Mich. 1992) (rejecting this sort of defective reading of OPA when presented with actual claims pressed under such a theory).  OPA's legislative history confirms that Congress intended only a modest expansion of liability beyond *Robins Dry Dock*.  Congress explained that the omission of the ownership condition in 2702(b)(2)(B) ("who owns or leases that property") from 2702(b)(2)(E) was

*Lynn* was applying the prior holding of the Fourth Circuit in *Gatlin Oil*, which plainly involved

an oil spill.  *See id.* at 212 (denying a claim for property damages caused by a fire that followed

on the heels of a discharge of oil because the fire was not part of the discharge itself and thus did

not fall within Section 2702(a)).  Plaintiffs cite *Gatlin* but ignore its key holding.  Thus *Taira*

*Lynn* and *Gatlin Oil*, taken singly or together, foreclose Plaintiffs' moratoria claims here.[17]

### C. To Be Compensable Under OPA, Any Injuries Must Be Proximately Caused by the Pollution Incident Itself or, at the Very Least, Surmount a Causation Hurdle Specific to OPA That Is Greater Than But-For Causation.

#### 1. When Federal Statutes Do Not Define a Causation Rule With Specificity, the Default Rule Is the Familiar Proximate Cause Standard.

In its B1 Order, this Court carefully avoided ruling on the causation standard that applies

under OPA.  Rec. Doc. 3830, at 33 (entered Aug. 26, 2011) ("[T]he Court need not define the

---

intended to provide recoveries for fishermen who rely on the harvest of fish that they do not own until caught.  *See* H.R. Rep. No. 101-653, at 4 (1990) (Conf. Rep.), *reprinted in* 1990 U.S.C.C.A.N. 779, 781 ("Subsection (b)(2)(E) provides that any claimant may recover for loss of profits or impairment of earning capacity resulting from injury to property or natural resources. The claimant need not be the owner of the damaged property or resources to recover for lost profits or income.  *For example*, a fisherman may recover lost income due to damaged fisheries resources, even though the fisherman does not own those resources.") (emphasis added).  Neither OPA nor its legislative history suggest that Section 2702(b)(2)(E) is unique among the six Section 2702(b)(2) damage categories in allowing those with no nexus or the barest of a nexus to the relevant property or resources to recover.  The legislative history concerning fishermen supplies the necessary stopping point.  *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69, 73-78 (1994) (consulting legislative history to avoid a textual absurdity).

At most, the statute could be read to permit recovery only by plaintiffs who can show a very close nexus to the damaged property.  Under such an interpretation, a business owner that rents recreational equipment to visitors at a beach oiled by Macondo reservoir oil could perhaps recover damages due to a downturn in its business.  But the ripple effects of an oil spill in the Gulf reverberate not only through the national economy, but through the world economy.  No causation analysis, not even that of Professor Robertson, would go so far as to allow "any claimant" with any form of nexus whatsoever to recover under Section 2702(b)(2)(E).  Indeed, Professor Robertson concedes that the following hypotheticals are "likely losers" under even his but-for cause interpretation of Section 2702(b)(2)(E):  "geographically-remote tour boat operator, notional Disney World, Nevada resort, Connecticut snorkel seller, Arizona restaurant."  David W. Robertson, *Criteria for Recovery of Economic Loss Under the Oil Pollution Act of 1990*, 7 Tex. J. Oil Gas & Energy L. 241, 251 (2011-12).  Of course, here even if the Moratoria Plaintiffs could show a strong nexus (and they cannot), their claims **categorically fail** for an independent reason, as the Coast Guard has found, because the harms being sued on are not "due to the injury, destruction, or loss of real property, personal property, or natural resources" but to government action.  33 U.S.C. § 2702(b)(2)(E).

[17] The trio of cases Plaintiffs rely on to claim moratoria losses are compensable are irrelevant or flawed.  PSC Mot. at 24 (citing *Dunham-Price Group, LLC v. Citgo Petroleum Corp.*, No. 2:07-cv-1019, 2010 WL 1285446 (W.D. La. Mar. 31, 2010); *In re Settoon Towing LLC*, No. 07-1263, 2009 WL 4730969 (E.D. La. Dec. 4, 2009); *Sekco Energy, Inc. v. M/V Margaret Chouest*, 820 F.Supp. 1008 (E.D. La. 1993)).  *Chouest* is pre-*Taira Lynn*, anticipates none of its analysis, and thus is outdated as precedent.  *Dunham-Price* and *Settoon Towing* both involved claims for economic damages tracing to shutdowns of the Intracoastal Waterway ("ICW") in the wake of spills, and both cases denied **summary judgment** motions filed by OPA defendants arguing such claims are not compensable under Section 2702(b)(2)(E).  More importantly, both *Dunham-Price* and *Settoon Towing* are contrary to *Taira Lynn* because they fail to grapple with *Taira Lynn*'s reliance on *Gatlin Oil*.  The two cases together make clear that losses tracing to the evacuation ordered in *Taira Lynn* or to the ensuing fire in *Gatlin Oil* do not qualify as Section 2702(b)(2)(E) losses because they are not "due to" oil directly injuring property or natural resources. They were "due to" an intervening event.  Losses tracing to ICW shut downs are no different than the types of consequential losses rejected by the Fourth and Fifth Circuits.

precise contours of OPA causation at this time.").  That circumspection has proven wise.  In the intervening years, the Supreme Court has decided no fewer than three cases touching on the default rule of proximate cause in federal statutes.  In light of these decisions, OPA represents an "easy case" in which to apply proximate cause because there Congress reinforced its desire to impose meaningful causation requirements in OPA by including causal language in Section 2702 not just once but twice.  *See supra*, 2 Schoenbaum at § 18-4.

In its most recent pronouncement, the Supreme Court affirmed that proximate cause is the controlling standard for statutes with undefined or poorly-defined causal tests.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014) ("[W]e generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute."); *see also Paroline v. United States*, 134 S. Ct. 1710, 1720 (2014) (citing *Lexmark* for application of proximate cause).  Moreover, *Lexmark* requires an express statement of a different standard to depart from proximate causation.  *Id.*  *Lexmark* also clarified a possible point of confusion that the Court left open two years earlier.  In *Pacific Operators Offshore, LLP v. Valladolid*, 132 S. Ct. 680, 691 (2012), the Court required a "substantial nexus" when interpreting the phrase "occurring as the result of" in OCSLA.  In dissent, Justices Scalia and Alito lamented that "[o]ne might think" that the "substantial causal nexus test" establishes "a new *tertium quid* of causality—somewhere between but-for causality and proximate cause."  *Id.* at 693 (Scalia, J., dissenting) (alterations omitted).  Notably, the Court's opinion in *Lexmark* cleared up the law by citing Justice Scalia's dissent to explain its express endorsement of proximate cause as familiar and defined by "a wealth of precedent."  *Lexmark*, 134 S. Ct. at 1390.  Hence, there is no reason to read *Valladolid* as overruling the long line of Supreme Court decisions adopting proximate cause as the default rule on statutory causation.[18]

---

[18] Plaintiffs cite another recent Supreme Court decision, while omitting any discussion of *Lexmark*.  PSC Memo., at 16 (citing *CSX Transportation, Inc. v. McBride*, 131 S. Ct. 2630 (2011)).  *CSX*, however, interpreted language quite different from the text of Section 2702.  The text there referred to injuries "resulting in whole **or in part**" from a defendant's conduct.  131 S. Ct. at 2634 (emphasis added).  That language is incompatible with proximate causation, implying that Congress intended to lower the bar under that statute.  There is no language to a similar effect in OPA—i.e., OPA does not have language explicitly permitting partial-cause recoveries.  If anything, the departure in *CSX* is the exception that proves the proximate-cause rule as reiterated three years later in *Lexmark*.

It also bears emphasis that courts presume that Congress legislates with knowledge of the interpretive backdrop against which their laws will be construed. *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 437 (1978); *see also Lexmark*, 134 S. Ct. at 1389 (citing this rule in the context of implying proximate causation). This canon is especially applicable in the case of OPA, where two decades ago the Ninth Circuit read proximate causation into a pre-OPA spill-related statute applied to the *Exxon Valdez* spill. *See Benefiel v. Exxon Corp.*, 959 F.2d 805, 807 (9th Cir. 1992) (applying proximate cause to strict-liability damages that are the "***result of discharges***" because "we are confident that Congress in enacting [the Trans-Alaska Pipeline Authorization Act ("TAPAA")] did not intend to abrogate all principles of proximate cause."). *Benefiel* also recognized that proximate causation includes the doctrine of intervening cause and so affirmed dismissal of a complaint alleging that violations of TAPAA led to higher gasoline prices. *Id.* at 807-08 (specifically listing "the decision of the United States Coast Guard to close the Port of Valdez to facilitate clean-up efforts" as falling outside TAPAA). Against this backdrop, Congress is presumed to know that by using causation language in OPA similar to TAPAA's, it would be establishing proximate cause as OPA's causal test.

At the textual level, the combination of the dual statutory phrases "due to" and "resulting from" in 33 U.S.C. § 2702 more than justifies applying the presumptive proximate cause rule to that part of the statute. As Professor Goldberg explained, the inclusion of a two-fold causation threshold for Section 2702(b)(2)(E) claims must be seen as deliberate. *See* Goldberg, 30 Miss. Coll. L. Rev. at 351. Professor Goldberg noted that courts have read "result from" to impose "both an actual causation requirement and a proximate cause limitation." *Id.* at 354. Professor Goldberg also pointed out that the combination of two causation statements must accomplish something more than either phrase operating alone (and "resulting from" was operating alone in *Valladolid*), lest it offend the anti-superfluousness canon. *See id.* at 352; *see also, e.g., Lowe v. SEC*, 472 U.S. 181, 207 n.53 (1985) ("[W]e must give effect to every word that Congress used in the statute."); *cf.* Robertson, 30 Miss. Coll. L. Rev. 157, 197 n. 198 (2011) (conceding that "Professor Goldberg is obviously right that the 'due to' clause must mean something").

In the four months since *Lexmark*, several District Courts have relied on it for the point that proximate causation is the default rule.[19]  Even before *Lexmark*, this District Court applied a proximate causation requirement in OPA cases.  One of the decisions on which Plaintiffs rely, *Sekco Energy, Inc. v. Chouest*, 1993 WL 322942 (E.D. La. Aug. 13, 1993), required proximate causation under Section 2702(b)(2)(E) a full two decades before the Supreme Court's latest pronouncements on the default standard.  The Coast Guard has also reached the same conclusion that proximate cause analysis controls.  (Ex. 9) *See In Re Claimant EIC Assocs., Inc.*, Loss of Profits and Earning Capacity, at 12 (Jan. 23, 2013), available at http://tinyurl.com/p26tne7 (denying economic loss claims where a 2004 oil spill was not the proximate cause).  These decisions, like this Court's rulings on BP Dealer claims, *see infra* Part II.B.3, comport with the rationale underlying proximate causation, which is so fundamental as to appear in the dictionary definition: "In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond."  Black's Law Dictionary 250 (9th ed. 2009) (defining "proximate cause"); *see also Southern Pac. Co. v. Darnelltaenzer Lumber Co.*, 245 U.S. 531, 533 (1918) (Holmes, J.) ("The general tendency of the law is not to go beyond the first step.").

Lastly, *Taira Lynn*, the controlling law in this Circuit, rejected OPA economic loss claims not only on the basis that they did not fit within Section 2702(b)(2)(E)'s requirement that physical harm must be shown to property or natural resources but because "none of the claimants has raised an issue of fact as to whether any property damage ***was caused by*** the pollution incident, i.e., the release of the gaseous cargo."  *Taira Lynn*, 444 F.3d at 383 (emphasis added).

Text and precedent thus confirm that proximate causation is the applicable standard for economic losses "due to" property or natural-resource damages "resulting from" the *Deepwater Horizon* Incident.

---

[19]   *See CC Recovery, Inc. v. Cecil County, Md.*, 2014 WL 2767358, at \*3-\*6 (D. Md. Jun. 17, 2014) (applying *Lexmark* to claims under the Americans with Disabilities Act to require a showing of proximate causation); *City of Los Angeles v. Wells Fargo & Co.*, 2014 WL 2206368, at \*6 (C.D. Cal. May 28, 2014) (interpreting Fair Housing Act and noting that "it is also presumed that a statutory cause of action 'is limited to plaintiffs whose injuries are proximately caused by violations of the statute.'" (quoting *Lexmark*)).

2.     **Proximate Cause Includes an Element of Foreseeability, and BP Will Have No Trouble Demonstrating—on a Complete Record—that the Unlawful Moratoria Were Not Foreseeable.**

BP does not ask the Court to determine foreseeability on the current, incomplete record. It is a factual inquiry best left for summary judgment briefing. *Accord* B1 oral argument (Rec. Doc. 2702) at 92:8 (Mr. Herman: "you don't decide foreseeability at the pleadings stage."). Nevertheless, a legal doctrine inherent in proximate causation underscores the peril in what Plaintiffs ask this Court to do.

Proximate causation includes foreseeability. *Aransas Project v. Shaw*, --- F.3d ----, 2014 WL 2932514, at *15 (5th Cir. Jun. 30, 2014). Importantly, a third-party's subsequent action is, as a matter of law, less foreseeable when it is illegal. *See, e.g., James v. Chavez*, 511 F. App'x 742, 750 n.5 (10th Cir. 2013) ("The unlawful nature of Mr. Murphy's conduct . . . render Mr. Murphy's actions a superseding cause, ***regardless*** of whether his violent response was foreseeable." (emphasis added)); *see also Urbach v. United States*, 869 F.2d 829 (5th Cir. 1989) (holding that a mental hospital did not proximately cause a patient's death when it allowed him to travel to Mexico, where he was imprisoned for starting a fire and, while in prison, killed by other inmates).

In the current case, Plaintiffs' moratoria losses are due to government action that has already been found arbitrary and capricious or otherwise illegal. *See e.g., Hornbeck Offshore Servs. v. Salazar*, 696 F. Supp. 2d 627 (E.D. La. 2010) (moratorium arbitrary and capricious); *Ensco Offshore Co. v. Salazar*, No. 10-1941, 2010 WL 4116892 (E.D. La. Oct. 19, 2010) (new drilling requirements imposed unlawfully); *Ensco Offshore v. Salazar*, No. 10-1941, 2011 WL 1790838 (E.D. La. May 10, 2011) (unlawful delay of drilling permits). Judge Feldman's finding that "no rational nexus exists between the fact of the tragic Deepwater Horizon blowout and placing an attainder of universal culpability on every other deepwater rig operator in the Gulf of Mexico," *Hornbeck Offshore Servs. v. Salazar*, No. 10-1663, 2010 WL 3523040, at *7 (E.D. La. Sept. 1, 2010), therefore takes on double significance. That finding both rejects foreseeability, and supports BPXP's causation defenses—including its superseding cause defense—by

reinforcing that moratoria losses are due to illegal government action without a rational connection to the *Deepwater Horizon* incident.

> ### 3.     Even If a Standard Less Stringent Than Proximate Cause Were to Apply, the Oil Pollution Act Provisions on Which Plaintiffs Rely Include Specific Causation Language.

OPA contains specific requirements for the source of a claimant's injury.  Text and legislative history confirm that compensable losses include only those caused by pollutants themselves—either through harm to property or natural resources.  OPA contains deliberate and comprehensive choices about when to codify maritime law rules and when to depart from them.  None of OPA's departures from maritime law opens the door to making private defendants liable for the consequences of government regulations.

Under Section 2702, "each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil . . . is liable for the removal costs and damages specified in subsection (b) of this section ***that result from such incident***."  33 U.S.C. § 2702(a) (emphasis added).  "***Incident***" is itself a defined term in OPA.  It refers to "any ***occurrence*** or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil."  33 U.S.C. § 2701(14) (emphasis added).  Spill "incident[s]" are not defined to encompass the costs of complying with forward-looking and discretionary regulations designed to consolidate lessons learned from a recent incident and apply them to the future.  Such deliberative steps by an arm of the federal government also do not fit within the definition of an "occurrence."   Black's Law Dictionary 1185 (9th ed. 2009) (defining "occurrence" as "[s]omething that happens or takes place; specif., an accident, event, or continuing condition that results in personal injury or property damage that is neither expected nor intended from the standpoint of an insured party").  The moratoria were not spontaneous accidents; they were, as the government has recognized in other cases related to the same moratoria, exercises of "significant discretion."  Br. of the United States, *Century Exploration New Orleans, LLC v. United States*, 2013 WL 4697167, at 29 (Fed. Cir. filed Aug. 19, 2013).

The Plaintiffs point to the Federal Tort Claims Act ("FTCA") to try to buttress their Motion, but their arguments unwittingly work at cross-purposes. Had the United States been sued for moratoria losses under the FTCA, it undoubtedly would have defended on the ground of the discretionary-function exception. *See, e.g.*, *United States v. Gaubert*, 499 U.S. 315, 323 (1991) ("Where Congress has delegated the authority to an independent agency or to the Executive Branch to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception"); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (La. Plaintiffs)*, 713 F.3d 807 (5th Cir. 2013) (per curiam) (MDL claims that FEMA negligently selected trailer housing were barred by the discretionary-function exception). This point alone breaks the Plaintiffs' mantra that the spill caused the moratoria and the moratoria caused their losses. The moratoria and permitoria were Department of Interior **choices**, **not statutory mandates** imposed on the agency.

Under the plain meaning of OPA, therefore, compensable injuries are those that "result from" the "discharge or substantial threat of discharge of oil" from the vessel or facility. It is not enough to allege the injuries would not have been sustained "but for" the spill. The required link to the pollution event becomes more refined and thus the funnel of liability even more narrow for economic loss claims. The latter **must also** be "due to the injury, destruction, or loss of real property, personal property, or natural resources." 33 U.S.C. § 2702(b)(2)(E).

Plaintiffs are unclear about (i) how the discharge of oil from the Macondo reservoir caused damage to property or resources for which a claimant can recover; and (ii) how that specific harm has caused their loss. *See, e.g.,* PSC Memo., at 10 (promising to establish the necessary chain of causation at some later time). Although Plaintiffs may believe that the Macondo incident (the discharge or threat of a discharge) harmed their property indirectly, via the moratoria, the Fifth Circuit has already foreclosed this theory. *Taira Lynn*, 444 F.3d at 383; *see also supra* Part II.B.4. There, business owners affected by an evacuation order and an accompanying electricity shut off brought claims under Section 2702(b)(2)(E). As explained

27

above, the Fifth Circuit denied these latter claims because they did not allege that "any property damage was caused by the pollution incident, i.e., the release of the gaseous cargo." *Id.* at 383 (citing *Gatlin Oil*, 169 F.3d at 212). *Gatlin Oil* denied a claim for property damages caused by a fire that followed in the wake of a discharge of oil because the fire was not part of the discharge itself and thus did not fall within Section 2702(a), which is a prerequisite for their inclusion in 2702(b)(2). *See also id.* ("Any property damage upon which Claimants must rely to recover under § 2702(b)(2)(E) did not result from the discharge or threatened discharge of oil.").[20]

In the final analysis, what Plaintiffs actually seek are profits lost as a result of government action. Such disfavored claims—the equivalent of "regulatory takings"—could only lie against the government. *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978) (rejecting takings claims against regulations that just "adjust[] the benefits and burdens of economic life to promote the common good."). Indeed, such takings claims are not hypothetical here; they were actually brought. *See Century Exploration New Orleans LLC v. United States*, 110 Fed. Cl. 148, 153 (Ct. Fed. Cl. 2013) (staying adjudication of moratoria takings claims), *aff'd*, 745 F.3d 1168 (Fed. Cir. 2014).

Plaintiffs also attempt to twist the government's sovereign immunity to their own advantage.[21] PSC Memo., at 25-30. But the government's decision not to waive immunity does not at all require or even imply that private parties are liable in the government's stead. It only underscores how unusual it would be for a court to hold that independent federal actions create financial liability *for anyone* without an express instruction from Congress to that effect (lacking here). Viewed in this light, the Coast Guard's categorical ban on moratoria-related claims, *see supra* Part II.B.4, emerges as consistent not only with OPA but with sovereign immunity law.

---

[20] Nor can the Moratoria Plaintiffs even plausibly seek losses due to damages to *another's property*, even if such recovery was not foreclosed by OPA. This is because their moratoria-related losses are *not due to any physical damage to any property at all*. They are instead the result of a denial of a legal permission that the federal government, as owner of the Shelf resources, has the right to withhold under the Outer Continental Shelf Lands Act.

[21] To allay the government's professed concern regarding its own liability, BPXP notes that it agrees that the United States has not waived sovereign immunity with respect to damages claims flowing from the moratoria. Congress allowed that certain regulatory actions the government takes could be judicially reviewed under OPA Section 2717(a), but there is a time limit for doing so, and no damages remedy is provided therein.

Finally, even if this Court were to disagree that the proximate cause standard applies, Plaintiffs have not established any losses "due to" property or natural-resource damage that "result[ed] from" the spill. Their losses arise only from the discretionary actions of a federal agency, which is immune from suit. Neither OPA, nor any other statute, allows Plaintiffs to seek compensation from BPXP for the costs of doing business in a regulated industry.

III.   **None of the Plaintiffs' Remaining Grab Bag of Arguments Can Overcome the Plain Text of OPA Section 2702, the Applicable Judicial Case Law, or the Body of Coast Guard Precedent So as to Allow a Motion to Strike to Be Granted.**

A.   **The Court Should Not Credit the Law Review Articles of Professors Palmer and Robertson or the *Third Restatement* (Physical and Emotional Harm) as Support for Moratoria Claims.**

1.   **The Law Review Articles of Professors Palmer and Robertson Are Clearly Not the Law.**

The plaintiffs base their Motion in large part upon arguments first created by and then drawn from the law review articles of Professors Palmer and Robertson. These law reviews are, of course, not precedent. Moreover, the reasoning in the articles is flawed.

Ironically, other parts of Professor Robertson's analysis were a cornerstone of the Court's rejection of the attenuated BPXP Dealer claims, and that analysis applies with equal force here. *See* Part II.B.3. This alone provides sufficient reason to discount plaintiffs' reliance on him in their Motion. By contrast, note that his assertions regarding moratoria-related recovery are in fact curiously non-committal, especially considering that he is an expert retained by the PSC. *See* David W. Robertson, 7 Tex. J. of Oil, Gas, and Energy L. at 258 ("For example, the Restatement (Third) approach ***would probably support*** OPA coverage of the economic-loss cases flowing from the government's temporary moratorium on offshore oil-and-gas drilling that was imposed in the wake of the Macondo/Deepwater Horizon disaster.") (emphasis added).

Indeed, Professor Robertson concedes that several types of claims would have to be denied on remoteness grounds: "But the Restatement (Third) approach would (or could) exclude hypothetical claimants such as a Minnesota chicken farmer who is deprived of a cheap and effective oyster-shell supplement to chicken feed because Macondo has killed most of the Gulf

of Mexico oysters ….”  *Id.*  This sort of concession only underscores why it is improper and premature to grant a motion to strike.  Robertson might draw moratoria claims in vs. outside of OPA but he recognizes a line must be drawn.  His personal views in that regard, however, are far from enough to meet the stringent standards demanded of successful motions to strike.

Professor Robertson does object to the application of proximate cause.  But he does not dispute that OPA must have logical stopping points.  Plaintiffs seek to eliminate such stopping points, as is illustrated by their unsuccessful attempt to recover for BP Dealer claims that even Professor Robertson was forced to candidly admit could not get off the ground.

Moreover, Professor Robertson’s conclusion that proximate cause analysis does not apply to Section 2702 is based on a reference to proximate cause in Section 2704(c)(1), coupled with the *Russello* canon (*i.e.*, “where Congress includes particular language in one section of a statute, but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion”).  *Id.*  But the *Russello* canon applies only when apples-to-apples comparisons are being made.  *See City of Columbus v. Ours Garage & Wrecker Service, Inc.*, 536 U.S. 424, 435 (2002) (noting inapplicability of *Russello* where provisions in the same statute are distinctly formulated).  Section 2704 deals with OPA’s **liability caps**, not with the separate question of which categories of damages are compensable and can be aggregated at step one before comparing total damages to the liability caps at step two.  The presence of an express reference to proximate cause in the cap provisions in Section 2704 but not in Section 2702 thus proves nothing.

Indeed, if reasoning from the 2704 caps provision could result in lowering OPA’s stated causation requirements, the only result of that would be to pay undeserving claims, in turn exhausting the caps faster, thereby defeating Congress’s purpose in Sections 2702 and 2704, taken together, to pay as many deserving claims as possible up to the capped levels.  For nothing indicates that OPA is designed to provide *pro rata* payment as occurs in Limitation Act cases.  In Limitation Act cases, claimants are slotted to receive reduced recoveries from a limited fund, *see* 46 U.S.C. § 30507, but under OPA claimants can recover in a variety of different courts or in the

Coast Guard forum and thus OPA payments must go out on a first-come/first-served basis.[22]

Professor Palmer's analysis, with its emphasis on Section 2703, fares no better.  Professor Palmer develops at great length his theory that Section 2703 negates proximate cause because it confers on responsible parties only a narrow set of affirmative defenses where acts of God, of war, or the act or omissions of third parties not in contractual privity with the responsible party are the "sole cause" of the spill.

But BPXP has always accepted its responsibility to pay *legitimate* OPA claims that fall *within the terms of the statute* and has never asserted, despite Halliburton's and Transocean's role in causing the spill, that BPXP should be wholly exonerated from OPA liability for spill-caused injuries compensable under Section 2702.  The problem for the moratoria claims is that they are not legitimate claims under Section 2702.  Neither BPXP's commitment nor its OPA legal obligations are boundless or without stopping point.  The text of Section 2703 makes clear its *irrelevance* to Section 2702 causation issues.  Section 2703 establishes an affirmative defense where the "discharge or substantial threat of a *discharge of oil* and the resulting damages [are solely caused by an act of God, etc.]."  Again, BPXP has never argued that *the oil spill* was caused solely by any of the Section 2703(a)(1)-(4) situations.  It has instead admitted that it is one of the multiple parties involved in a spill with multiple causes.  *See* Joint Proposed Findings of Fact & Conclusions of Law, Rec. Doc. 7945, at ¶ 518 (filed Nov. 19, 2012) ("[T]he event was a multi-party, multi-causal event.").  But nothing in Section 2704 establishes that Section 2702's independent causation requirements were thereby stripped away by Congress.  The Coast Guard decisions do not reflect that the agency considered Section 2704 to be even relevant to its analysis of moratoria claims, and that is not surprising.  Professor Palmer's theory is thus revealed as entirely idiosyncratic.  It has never been adopted by any court or agency with the power to adjudicate OPA claims.

---

[22]   Moreover, Professor Robertson appears to have missed that the Coast Guard has reached a very different conclusion than he does and thus he does not grapple with its conclusions.  Indeed, Professor Robertson does not even mention the Coast Guard and its role in administering claims filed under OPA seeking OSLTF recoveries.

No court or agency has done so for good reason, since Professor Palmer runs headlong not only into the Coast Guard's rulings, but into *Taira Lynn*.  How Professor Palmer deals with *Taira Lynn* reveals just how foreign an environment construing a complex federal statute is for him, as opposed to writing about comparative law.  *Taira Lynn* "[r]el[ied] upon the highly technical *Gatlin Oil* reading of the OPA …."  Palmer, 116 Penn. St. L. Rev. at 136 ("I find [this] difficult to explain except in terms of apprehensions about extending the ambit of pure economic loss.").  Professor Palmer simply cannot understand why the Fifth Circuit would focus on the ***text of OPA*** as opposed to resorting exclusively to common law-based policy analysis about whether a broader or narrower ambit for liability was appropriate.  He misses that OPA's interpretation must be driven by text, not tort—and certainly not by naked policy analysis.  Adhering to the text is ***not*** "highly technical."  "Put simply, we need not look to general policy considerations where the particular policy decisions, found in the text of the statute and the history of its enactment, dispose of the case."  *Resolution Trust Co. v. Seale*, 13 F.3d 850, 853 (5th Cir. 1994).

Even aside from the critical point that law review articles are not the law, reliance on the views of law professors is also problematic given that such views are rarely unanimous.  As the titles of some of Professor Robertson's relevant articles indicate, Professor Goldberg of Harvard disagrees with him about how to read OPA.[23]  Moreover, Professor Robertson acknowledges that Professor Shavell's law review article on moratoria issues stands in disagreement with his position.  Robertson, 7 Tex. J. Oil Gas Energy 241, 253 n.70 (2012).  Professor Shavell's article is the most-focused academic piece dedicated to moratoria claims; it does not merely consider them offhandedly, as Robertson does with his half-hearted suggestion that, just maybe, moratoria

---

[23]  Professor Goldberg is ***not*** "BPXP's expert."  He was independently selected by Kenneth Feinberg (not by BP), who himself was chosen by the White House, with BP's concurrence, to be the GCCF administrator.  In contrast to Professor Robertson, who was paid by the PSC, Professor Goldberg has no reason to be partial to BPXP's positions.  *See* Goldberg, *OPA and Economic Loss: A Reply to Professor Robertson,* 30 Miss. C. L. Rev. 203, 204 (2011) ("I was asked to prepare a memorandum interpreting the scope of liability for economic loss under OPA, as well as federal admiralty law and state tort law.  At no time did Mr. Feinberg assert or imply that my job was to construe the law in a manner that would assist him in finding ways to exclude claims… Mr. Feinberg wanted to know—as much as one can know prior to a definitive judicial resolution—the prospects facing different categories of economic loss claimants.  He would hardly have benefited from receiving a skewed report.").

claims might be recoverable under the Third Restatement—if only one squints at them in just the right way. *Compare* Steven Shavell, *Should BPXP Be Liable For Economic Losses Due To The Moratorium On Oil Drilling Imposed After The Deepwater Horizon Accident?*, 64 Vand. L. Rev. 1995 (2011) (answering the title's question in the negative). Professor Shavell admittedly dwells on policy arguments against reading OPA to impose moratorium liability—based on a rationale similar to the long-established ban on considering subsequent remedial measures as evidence of liability. But there is much policy reasoning in Professors Robertson's and Palmer's law review articles as well. The key lesson is that once the analysis devolves into what various law professors think is desirable if they were writing the laws, rather than sticking to the applicable text of the statute and the decided cases, one embarks on a rudderless venture.

> **2.      The Freshly Minted *Third Restatement of Torts* (Physical and Emotional Harm) Cannot Be Used to Interpret OPA Because It Is Inapposite and in Open Rebellion Against the Proximate Cause Requirement That Federal Courts Regularly Apply in Practice.**

Plaintiffs also rely heavily on the *Third Restatement of Torts*, but that document offers little basis for making any conclusions here. *First*, the Plaintiffs base all of their arguments from the "*Third Restatement*" on a particular subdivision of that Restatement. *See* Restatement (Third) of Torts: Physical and Emotional Harm (2009); PSC Mot. at 14, 17, 22-23. But Plaintiffs' claims for moratoria losses are not claims for physical or emotional harm. The moratoria claims are pure, consequential economic loss claims. *Second*, *Plaintiffs' hired expert*, Professor Robertson, is himself unsure of whether this branch of the *Third Restatement* would even support recovery for the moratoria claims. *Third*, the *Third Restatement*, especially the portions of it cited by Plaintiffs, appears to be engaged in a pitched battle against proximate cause. *See, e.g.,* PSC Memo. at 17 & n.17 ("the law has moved away from the notion of 'proximate cause' because it implies, falsely, that only the cause that is closest in time or geography falls within the scope of legal responsibility"). But that is normative analysis designed to try to move the law, not a simple "restatement" of positive law as it now stands. The concept of proximate cause is applied in courts around the country, and it is hard to say accurately that "the law has moved away from the notion of 'proximate cause,'" when the ink is

barely dry on the Supreme Court's *Lexmark* decision, which reiterated that it remains the ***default rule*** of causation for federal statutes. *Lexmark*, 134 S. Ct. at 1390; *see also supra* Part II.C.1. Note as well that the more applicable branch of the Third Restatement (for which two tentative drafts have been released), seems to include no similar material criticizing proximate cause doctrine. *See* (Ex. 10) Restatement (Third) of Torts:  Liability for Economic Harm (tentative draft no. 1 2012 & tentative draft no. 2 2014), available at http://tinyurl.com/mkokeqc. ***Finally***, the *Third Restatement* is aimed at analyzing ***common law tort issues***.  It is thus not the kind of secondary source that can provide a nuanced analysis of a complex federal statute or the administrative law that has grown up around it at the Coast Guard.

>   **B.    The Plaintiff's Extended Arguments About the Sovereign Immunity of the United States Are, at Best, *Non Sequiturs*, and in Reality Reveal the Contradictions in Plaintiffs' Tortuous Legal Positions.**

BPXP does not dispute that the United States has sovereign immunity from damages claims for having put the moratoria and/or the permitoria in place.  The only relevant waiver of sovereign immunity is contained in the APA, 5 U.S.C. § 702, and it only permits judicial review of the Department of Interior's regulatory decisions—with such review having already been conducted both in Judge Feldman's courtroom and on appeal to the Fifth Circuit.  Plaintiffs here are among those that would have benefitted had the plaintiffs in that moratoria litigation versus the Department of the Interior achieved more or more rapid relief against that agency.

But this backdrop does not support the Plaintiffs' twisted logic that because there is no remedy against the Interior Department for damages, therefore BPXP must pay damages.  At the very least, the question of the Interior Department's liability for damages is utterly irrelevant to whether BPXP is liable.  Indeed, if anything, the fact that Congress saw fit to provide only a limited set of injunctive and declaratory remedies to claimants asserting injury traceable to regulatory decisions having a nexus to an oil spill suggest that Congress chose deliberately and did not want monetary damages remedies to be visited on any defendant—public ***or*** private.

Finally, Plaintiffs' sovereign immunity arguments are incoherent.  On the one hand, their arguments for direct liability by BPXP under OPA stress the false syllogism deconstructed

above—BPXP caused the spill and the spill caused the moratorium.  Yet when they try to fit the square peg of the federal government's sovereign immunity from damages into the round hole of using that argument to try to enhance their OPA claims against BPXP, they wind up contradicting themselves.  In their sovereign immunity arguments they repeatedly stress (for the purpose of making arguments from other statutes) that the Interior Department had broad discretion to decide how to use its OCSLA regulatory authority.  *See* PSC Memo. at 28-29.  It is that very discretion, however, that makes the moratoria and permitoria decisions the government's alone and not some sort of inevitable follow-on to the spill.  Indeed, shielding government discretionary acts from monetary damages liability is almost certainly part of what motivated the Coast Guard to declare as a categorical matter that it would pay no moratoria-related claims under OPA.  *See also* 33 U.S.C. § 2712(a)(4) (requiring the OSLTF to pay out "uncompensated damages," meaning that the Coast Guard is tasked with conserving the Fund's resources by not paying invalid claims under OPA).

## CONCLUSION

The Court should deny Plaintiffs' motion to strike and *in limine* by reaffirming its earlier view (previously shared by the Plaintiffs themselves) that the boundaries of OPA causation are best explored after all of the facts are put into the record.  Plaintiffs' attempt here to cut off discovery and secure a disguised grant of summary judgment relief that BPXP is liable for their moratoria claims should be soundly rejected.  Discovery, as well as the affirmative case Plaintiffs must put forward on the record as to how they think they can fit within OPA's textual tests and the crucible of true and full summary judgment motions and trial will best resolve these test cases, not premature motions based on speculative law review articles.

Dated:  August 8, 2014

Respectfully submitted,

Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

Robert C. "Mike" Brock
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
Telephone:  (202) 662-5985
Facsimile:  (202) 662-6291

Emily Johnson Henn
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418
Telephone: (650) 632-4715

_ /s/ J. Andrew Langan, P.C._
Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Matthew T. Regan, P.C.
Elizabeth A. Larsen
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL  60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Martin R. Boles
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500

Christopher W. Keegan
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:  (414) 439-1400
Facsimile:   (414) 439-1500

Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200

*Attorneys for BPXP Exploration & Production, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of August, 2014.

*/s/ J. Andrew Langan, P.C.*