# Exhibit 5

CLAIM SUMMARY / DETERMINATION FORM

Date              : 11/08/2010
Claim Number      : N10036-0035
Claimant          : ▆▆▆▆▆▆▆▆▆▆ Scientist/Paleontologist
Type of Claimant  : Private (US)
Type of Claim     : Loss of Profits and Earning Capacity
Claim Manager     : ▆▆▆▆▆▆▆▆
Amount Requested  : $109,627.00

## FACTS:

On or about April 20, 2010, the Mobile Offshore Drilling Unit Deepwater Horizon exploded and sank in the Gulf of Mexico. As a result of the explosion and sinking, oil was discharged from an offshore facility, located on the Mississippi Canyon, Block 252. This area was leased by BP Exploration and Production, Inc. (BP). The Coast Guard designated the offshore facility as the source of the discharge and BP as the responsible party for the discharge. BP accepted the designation, advertised its OPA claims process and compensated claimants. On May 28, 2010, The U.S. Department of the Interior (DOI) issued a six-month moratorium on deepwater drilling, citing concerns over the safety of deepwater drilling and directing lessees and operators to cease drilling all new deepwater wells and related activities effective May 30, 2010. Lessees and operators conducting current drilling operations were directed to secure the wells and to take all necessary steps to cease operations and temporarily abandon or close the wells. On August 23, 2010 the Gulf Coast Claims Facility (GCCF) began accepting and adjudicating claims on behalf of BP. BP subsequently established a $100 million Rig Workers Assistance Fund to help compensate rig workers impacted by the moratorium on deepwater well activities. The Assistance Fund is administered by the Gulf Coast Restoration and Protection Foundation.

## CLAIM AND CLAIMANT:

Claimant, ▆▆▆▆▆▆▆▆, a paleontologist and sole proprietor, works in the oil industry examining microscopic fossils in rock samples obtained from exploratory oil rigs. He examines the samples to assess their age and potential for further oil exploration and production activities. Oil companies conducting exploratory oil and gas activities contract with him for his services. ▆▆▆▆▆▆▆ receives samples at his home laboratory and occasionally works on a rig when his services are necessary to provide real-time data for critical decision-making.[1] ▆▆▆▆▆▆ reports that he has not worked "since the tragic BP incident on April 20 and subsequent government issued moratorium."[2] He originally submitted a claim to BP on June 05, 2010. He later submitted a claim to the GCCF, which is accepting claims for BP. On September 23, 2010, the GCCF denied his claiming referring ▆▆▆▆▆▆ to the Rig Worker's Compensation Fund.[3] When the GCCF denied his claim, he submitted an optional Oil Spill Liability Trust Fund (OSLTF)

---

[1] Description of claimant's vocation obtained from his personal narrative dated 13 October 2010.
[2] Claimant's personal narrative, page 1.
[3] The 23 September 2010 letter that ▆▆▆▆▆▆ received from the GCCF referred him to the Gulf Coast Restoration and Protection Foundation's (GCRPF) adjudication process; the Rig Worker Assistance Fund (RWAF). According to the organizations website, the GCRPF process "is limited to people who worked on deepwater rigs on May 6." See, GCRPF website retrieved 08 NOV 10 from http://www.gcrpf.org/details/ As a paleontologist who works primarily from home, ▆▆▆▆▆ does not consider himself a "rig worker" and has appealed the GCCF's decision. Further, the "first round" for rig worker claims ended on 30 September 10. ▆▆▆▆▆▆ cannot presently submit to the RWAF. As noted, ▆▆▆▆▆▆ first submitted to the RP (BP) on 05 June 2010.

claim form seeking $109,627.00, asserting that his loss of profits and impairment of earnings capacity resulted from the Deepwater Horizon oil spill.

## *APPLICABLE LAW:*

Under the Oil Pollution Act of 1990 (OPA), 33 USC § 2702(a), responsible parties are liable for removal costs and damages resulting from the discharge or substantial threat of discharge of oil into navigable waters and adjoining shorelines or the exclusive economic zone, as described in Section 2702(b) of OPA.

The OSLTF which is administered by the NPFC, is available, pursuant to 33 USC §§ 2712(a)(4) and 2713 and the OSLTF claims adjudication regulations at 33 CFR Part 136, to pay claims for uncompensated damages. Damages pursuant to 33 CFR §136.231 include claims for loss of profits or impairment of earnings capacity due to injury, destruction or loss of real or personal property or natural resources.

With certain exceptions, a claimant must first present their claim to the responsible party. 33 U.S.C. § 2713(a). If the claim is not settled by any person by payment within 90 days after the date on which it was presented, the claimant may elect to commence an action in court or present the claim to the OSLTF. 33 U.S.C. § 2713(c).

Under 33 CFR § 136.233 a claimant must establish the following:

    (a) That real or personal property or natural resources have been injured, destroyed, or lost.

    (b) That the claimant's income was reduced as a consequence of injury to, destruction of, or loss of property or natural resources, and the amount of that reduction.

    (c) The amount of the claimant's profits or earnings in comparable periods and during the period when the claimed loss or impairment was suffered, as established by income tax returns, financial statements, and similar documents. In addition, comparative figures for profits or earnings for the same or similar activities outside of the area affected by the incident also must be established.

    (d) Whether alternative employment or business was available and undertaken and, if so, the amount of income received. All income that a claimant received as a result of the incident must be clearly indicated and any saved overhead and other normal expenses not incurred as a result of the incident must be established.

Under 33 CFR 136.105(a) and 136.105(e)(6), the claimant bears the burden of providing to the NPFC, all evidence, information, and documentation deemed necessary by the Director, NPFC, to support the claim.

Under 33 CFR 136.235, the amount of compensation allowable for a claim involving loss of profits or impairment of earnings capacity is limited to the actual net reduction or loss of earnings or profits suffered. Calculations for net reductions or losses must clearly reflect adjustments for-

    (a) All income resulting from the incident;
    (b) All income from alternative employment or business undertaken;

  (c) Potential income from alternative employment or business not undertaken, but reasonably available;
  (d) Any saved overhead or normal expenses not incurred as a result of the incident; and
  (e) State, local, and Federal taxes.

## *DETERMINATION OF LOSS:*

### A. Overview

███████ submitted the following list of documentation:

- Optional OSLTF Claim Form Submission dated 13 October 2010.
- Personal narrative dated 13 October 2010.
- Letter from the Gulf Coast Claims Facility dated 23 September 2010 redirecting ███████ to the Rig Worker's Assistance Fund.
- Letter from Shell International Exploration and Production, Inc. dated 07 July 2010 relating to the well-site on the Yucatan South prospect.
- Second Letter from Shell International Exploration and Production, Inc. dated 07 July 2010 relating to the well-site at Vito Sidetrack 3 prospect.
- Letter from Statoil dated 26 August 2010 relating to the well-site Tucker 2 and Krakatoa

The NPFC reviewed the documentation submitted by ███████

1. In his personal narrative and optional OSLTF claim form, ███████ asserts that his loss is moratorium related.
2. The letters provided by ███████ from Shell International Exploration and Production Inc. and Statoil all assert that the work that ███████ would have engaged in was placed on hold due to the moratorium.

### B. Analysis

Under 33 USC § 2702(b) and 33 CFR Part 136, a claimant must prove that his loss of income is due to the injury, destruction or loss of real or personal property or natural resources resulting from the discharge or substantial threat of discharge of oil. All documentary evidence submitted by ███████ indicates that his loss directly resulted from a directive issued by the Department of the Interior imposing a six month offshore drilling moratorium in order to implement new safety requirements.[4] As a result, ███████ claim is determined to be a direct result of the moratorium, not a direct result of an oil discharge. The claim is not compensable under the OPA.

### *AMOUNT:* $0.00

---

[4] U.S. Department of the Interior, MINERALS MANAGEMENT SERVICE, MORATORIUM NOTICE TO LESSEES AND OPERATORS, NTL No. 2010-N04, Effective 30 May 2010. *See,* U.S. Department of the Interior, Minerals Management Service, NATIONAL NOTICE TO LESSEES AND OPERATORS OF FEDERAL OIL AND GAS LEASES, OUTER CONTINENTAL SHELF (OCS) NOTICE TO LESSEES AND OPERATORS, NTL No. 2010-N05, Effective 08 June 2010. (A preliminary injunction was issued against the May 28, 2010 Moratorium and, on June 8, 2010, The DOI revised the rationale to support a drilling suspension, based on drilling configurations and technologies instead of water depth. That action applied to all activities on the Outer Continental Shelf (OCS) suspended under the May 28, 2010 Moratorium and shallow water operations (under 500 feet in depth). *See Also,* See, Decision Memo dated 12 July 2010, From Secretary of the Interior To Director, Bureau of Ocean Energy Management, Regulation and Enforcement, Subject DECISION MEMORANDUM REGARDING THE SUSPENSION OF CERTAIN OFFSHORE PERMITTING AND DRILLING ACTIVITIES ON THE OUTER CONTINENTAL SHELF.

**DETERMINATION:** ▮▮▮▮▮ claim for $109,627.00 to the OSLTF is denied.

Claim Supervisor: ▮▮▮▮▮▮▮▮▮▮    *DENIAL A/[illegible]*

Date: 11/9/10

Supervisor's Comments: