UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL 2179 |
|     "Deepwater Horizon" in the Gulf | * | |
|     of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | |
| This Document Relates To: | * | JUDGE BARBIER |
| | * | |
| No. 12-970 | * | MAG. JUDGE SUSHAN |
| | * | |

**WOODBRIDGE BARIC PRE-SETTLEMENT FUNDING, LLC'S
MEMORANDUM IN OPPOSITION TO SPECIAL MASTER'S
MOTION FOR RETURN OF PAYMENTS MADE TO
JARROD A. BURRLE AND OTHERS (Rec. Doc. 13010)**

Woodbridge Baric Pre-Settlement Funding, LLC ("Woodbridge"), through its undersigned counsel, respectfully offers this Memorandum in Opposition to the Special Master's Motion for Return of Payments Made to Jarrod A. Burrle and Others (Rec. Doc. 13010):

**OVERVIEW**

The Special Master incorrectly likens the pre-settlement funding contracts between Woodbridge and Jarrod A. Burrle to contingency fee contracts between a litigant and his counsel as justification for the repayment by Woodbridge of funds owed by Burrle pursuant to those contracts. Under Louisiana law, these contracts are considered consumer loan agreements. In other jurisdictions, they are considered liens on settlement proceeds. In either case, applicable law does not support the return of funds paid to Woodbridge out of Burrle's settlement with the DHECC. Woodbridge did not act as counsel for Burrle during the claims submission process

1

and was not at all involved with the claims process. Burrle retained his own counsel to negotiate the agreements with Woodbridge, and he warranted when he signed the contracts that all information regarding his claims provided to Woodbridge and his counsel was accurate and complete. For these reasons, the Special Master's motion seeking the return of payments by Burrle to Woodbridge should be denied.

## RELEVANT FACTUAL BACKGROUND

According to the Special Master's motion, Louisiana resident Jarrod A. Burrle filed a claim in 2010 for lost income from commercial fishing with the Gulf Coast Claims Facility ("GCCF"), and continued submitting information to the GCCF and Deepwater Horizon Economic Claims Center ("DHECC") in support of those and other claims into 2012. Woodbridge had absolutely no involvement with Burrle's claims or the submission of any information by Burrle and/or his attorneys to the GCCF and/or DHECC in support of those claims.

In 2012, Burrle executed three (3) separate Assignments of Participation in Disputed Lawsuit/Right of First Distribution of Funds in a Legal Claim ("Assignments") with Woodbridge, pursuant to which Woodbridge agreed to pay Burrle certain funds in exchange for an assignment and security interest in settlement proceeds Burrle may ultimately receive as a result of the claims he made for losses allegedly stemming from the April 20, 2010 oil spill.[1] As evidenced by these Assignments, Burrle sought and received his own independent legal advice from the Injury Law Group, LLC and Andry Law Group, LLC regarding these transactions; his attorneys were not compensated by Woodbridge.[2] Specifically, Burrle entered into the following three (3) such Assignments:

---

[1] Rec. Doc. 13010-11.
[2] Rec. Doc. 13010-11, pp. 4, 6, 19, 21, 31 & 33.

- January 11, 2012 Assignment pursuant to which Woodbridge paid Burrle $10,000.00;[3]

- February 16, 2012 Assignment pursuant to which Woodbridge paid Burrle $8,000.00; and

- August 27, 2012 Assignment pursuant to which Woodbridge paid Burrle $6,000.00.

The Agreements provided that Burrle was under no obligation to repay these sums if did not receive settlement funds from the GCCF and/or DHECC.

In exchange for these payments, Burrle assigned Woodbridge an interest in funds he received pursuant to the aforementioned claims equal to these amounts, plus 4.0% interest and certain administrative and delivery fees. Burrle also granted Woodbridge a security interest and senior lien in any settlement proceeds he received, after attorney's fees and costs.[4] Burrle represented to Woodbridge that "any and all information related to [his] case and/or this funding agreement which [he] provided to [Woodbridge], [his] attorney or any of their related staff, experts, or witnesses and other parties involved or related to [his claim] is accurate and complete in all respects…"[5]

On or about April 16, 2013, the DHECC paid Burrle $50,015.87 for his vessel owner claim, leaving two other claims under consideration.[6] On April 23, 2014, Woodbridge notified the DHECC of its lien on any settlement Burrle may receive pursuant to his claims.[7] Sometime thereafter, Burrle's attorneys made a partial payment, authorized by Burrle, to Woodbridge of

---

[3] Rec. Doc. 13010-11, pp. 4, 19 & 31.
[4] Rec. Doc. 13010-11, pp. 4, ¶¶2 & 4; 19, ¶¶2 & 4 & 31, ¶¶2 & 4.
[5] Rec. Doc. 13010-11, pp. 6, ¶5(q); 21, ¶5(q) & 33, ¶5(q).
[6] Rec. Doc. 13010-1, p. 6.
[7] Rec. Doc. 13010-11, pp. 1-43.

$20,000.00 pursuant to the Agreements.[8] It is this payment which the Special Master seeks to recoup from Woodbridge pursuant to the instant motion.

## LAW AND ARGUMENT

The Special Master is not entitled to recover the $20,000.00 payment to Woodbridge made by Burrle pursuant to the three (3) Assignments because these agreements are not contingency fee contracts, Woodbridge was not a "claim participant," and the $20,000.00 payment was made to Woodbridge pursuant to a valid juridical act and is thus justified.

### I. Burrle's Assignments in Favor of Woodbridge are not Contingency Fee Contracts.

The Special Master's sole basis for recovering the $20,000.00 sum paid to Woodbridge is the theory that the three (3) Assignments are actually contingency fee contracts analogous to those maintained by the attorneys representing Burrle in his claims to the DHECC. However, the Special Master has not cited a *single case* equating a pre-settlement funding contract to an attorney's contingency fee contract. As set forth below, these contracts are not treated as contingency fee contracts in Louisiana or in other jurisdictions.

In an October 2001 opinion, the Office of the Attorney General of the State of Louisiana considered the nature of a pre-settlement funding contract, and concluded that it "creates a debt and is therefore a consumer loan as defined in the Louisiana Consumer Credit Law."[9] La. Atty.

---

[8] Rec. Doc. 13163-1.
[9] Courts in other jurisdictions have concluded that such pre-settlement funding are contracts pursuant to which the pre-settlement funding company "purchased a portion of [the claimant's] claim prior to its disbursement from the settlement fund" which allowed the company to "protect its prior investment in [the claimant's] claim." *Allapattah Servs. v. Exxon Corp.*, 2007 U.S. Dist. LEXIS 48507, *11 (S.D. Fla. July 5, 2007). Pursuant to such agreements, the funding company "secures a lien on a portion of the claimant's settlement proceeds." *Legal Capital Corp. v Rolnik*, 2013 N.Y. Misc. LEXIS 4821, *2 (N.Y. Sup. Ct. Oct. 9, 2013); *see also In re Andrade*, 2010 Bankr. LEXIS 4963, *6 (Bankr. E.D.N.Y. Dec. 21, 2010) ("The assignment of the future proceeds of a lawsuit operates as a future lien which only comes into existence when a judgment is entered."). "The assignee's lien comes into existence only when a judgment is entered or a settlement is reached and the lien does not relate back to the date of the assignment." *In re Andrade*, 2010 Bankr. LEXIS 4963 at *7 (citing *Law Research Serv. v. Martin Lutz Appellate Printers*, 498 F.2d 836,

4

Gen. Op. No. 2001-160; 2001 La. AG LEXIS 489. In that instance, Nevada corporation Future Settlement Funding Corp. ("FSF") engaged in pre-settlement funding whereby it would "advance funding in exchange for a lien on the litigant's case." Repayment of the funds was contingent upon the plaintiff's receipt of money from his or her claim. 2001 La. AG LEXIS 489 at *2. Concluding that such contracts created a consumer loan, the Attorney General considered Louisiana Civil Code Articles regarding obligations premised on suspensive conditions, stating:

> The Louisiana Civil Code provides that an obligation is a legal relationship created when the obligor (or debtor) is bound to render a performance to another, called the obligee (or creditor). (C.C. Art 1756) An obligation may be conditioned on an uncertain event. If the obligation may not be enforced until the uncertain event occurs it is suspensive. (C.C. Art 1767)
>
> Applying the provisions of the Louisiana Civil Code to the question at hand, an obligation (or debt) is created when FSF contracts with the litigant for the advancement of funds. In exchange for the advance, the litigant is bound to assign priority rights of the anticipated recovery in favor of FSF. An obligation is created even though the obligation to repay the debt is suspended until the case is successfully resolved.
>
> It is therefore our opinion that the advancement of funds to a litigant by FSF creates a reciprocal obligation, or a debt, on the part of the litigant. Because the litigant is bound to assign priority right to the proceeds of the litigation and the funds are repaid at the time the case is resolved, we conclude that the advancement of funds is a "loan" subject to the Louisiana Consumer Credit Law.

2001 La. AG LEXIS 489 at *3-*4.

The Louisiana Consumer Credit Law defines a "consumer loan" as "a loan of money or its equivalent made by a supervised financial organization, a licensed lender, or lender in which the debtor is a consumer, and the loan is entered into primarily for personal, family, or household purposes and includes debts created by the use of a lender credit card, revolving loan account, or similar arrangement, as well as insurance premium financing." La.R.S. § 9:3516. In this case,

---

838 (2d Cir. 1974)). Yet another court has called them "cash advance agreements." *Reynolds v. State of New York*, 42 Misc. 3d 1224(A), *14 (N.Y. Ct. Cl. 2013) (unpub.). Thus, even if Louisiana law did not govern the contracts between Burrle and Woodbridge, the law does not support a finding that they are contingency fee contracts as the Special Master asserts.

lender Woodbridge advanced funds to Burrle for his personal use, and Burrle's repayment of those funds was conditioned his receipt of a settlement from the DHECC as permitted by La.C.C. Art. 1767.  Burrle sought and obtained advice of his own counsel about these transactions before entering into them.  Because Burrle is a Louisiana resident,[10] the three (3) Assignments were executed in Louisiana,[11] the funds were delivered there, and the Assignments do not contain choice of law provisions, the three (3) Assignments are governed by Louisiana law.  These three (3) Assignments between Woodbridge and Burrle are consumer loan agreements, not contingency fee contracts.  As such, this Court should deny the Special Master's motion as to Woodbridge, as the Special Master's proffered justification for recouping funds paid by Burrle to Woodbridge is not supported by law.

Even if these Assignments were contingency fee contracts (which Woodbridge denies), the case law relied upon by the Special Master involving the return of contingencies fees is easily distinguished from this circumstance.  In *Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996), a U.S. Eight Circuit case cited by the Special Master, the attorney for the plaintiff prevailed on a summary judgment motion in an interpleader action.  When the insurance proceeds were disbursed from the registry of the court, he retained his fee and relinquished the balance to his client. *Mohammed*, 91 F.3d at 1125.  The summary judgment ruling, which was not final at the time the attorney took his fee and disbursed the funds to his client, was ultimately reversed on appeal, and the insurer sought the return of the funds.  The court ultimately held that "restitution of a contingent fee is appropriate where the initial judgment is reversed." *Id.* at 1127.  Not only is Woodbridge *not* Burrle's counsel or a party to a contingency fee contract, nor was Woodbridge at all involved in the submission of claims to the DHECC by Burrle and/or his

---

[10]   Rec. Doc. 13010-11, p. 12.
[11]   Rec. Doc. 13010-11, pp. 10, 25 & 37.

6

counsel, but this situation does not involve a non-final judgment subject to appeal wherein counsel made an ill-advised decision to disburse the sums awarded pursuant to that judgment to his client and himself. The holding of *Mohammed* is narrow, by its own terms, and limited to facts which are not present here.

Likewise, the Delaware case of *Schock v. Nash*, 732 A.2d 217 (Del. 1999), discusses the standards for unjust enrichment and restitution under Delaware law, and involves proceeds improperly transferred by a decedent's attorney-in-fact to herself and her family members. The administrator of the decedent's estate filed this lawsuit seeking the return of the improperly transferred funds and property. *Schock*, 732 A.2d at 220. Clearly, the facts of this dispute are unrelated to those before the Court and, moreover, Delaware state law does not govern the Assignments between Burrle and Woodbridge.

Interestingly, the *Mohammed* court noted that "equity will not compel restitution from a third party who receives monies, in good faith, from the initial judgment creditor in payment of a debt." *Id.* at 1126 (citing Restatement of Restitution § 74 cmt. h (1937); *United States v. Bedford Assocs.*, 548 F. Supp. 732, 736 (S.D.N.Y. 1982), *aff'd in part*, 713 F.2d 895 (2d Cir. 1983) (refusing to require repayment from the initial judgment creditor's assignee, an "innocent payee" who received money to satisfy debt)). Because Woodbridge is a debtor of Burrle's pursuant the consumer loans evidenced by the three (3) Assignments, equity should not compel Woodbridge to return the $20,000.00 paid to it in partial satisfaction of those agreements.

## II.     **Woodbridge Was Not Unjustly Enriched by Burrle's Partial Payment.**

The fact that Burrle owed the $20,000.00 to Woodbridge pursuant to the three (3) Assignment contracts means that the payment to Woodbridge was justified, and equity does not call for Woodbridge to return those funds to DHECC. "The essential basis for the remedy for

unjust enrichment is the principle of natural justice which requires that no one should be enriched at the expense of another." *Pilgrim Life Ins. Co. v. American Bank & Trust Co.*, 542 So.2d 804, 807 (La.App. 3 Cir. 1989).  However, "[t]here are certain limitations designed to restrict the use of equity to cases where one party truly receives a windfall from another without legal cause, which are placed on such actions by the jurisprudence of Louisiana Courts." *Pilgrim Life Ins. Co.*, 542 So.2d at 807.  "The prerequisites which must be satisfied to successfully invoke the action for unjust enrichment were set forth by the Louisiana Supreme Court in *Edmonston v. A-Second Mortgage Co.*, 289 So.2d 116 (La. 1974).  There must be: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and the impoverishment, and (5) no other remedy at law available to the impoverishee." *Id.*

'"Not every unjust enrichment warrants usage of equity.  Courts may resort to equity only in cases of unjust enrichment for which there is no justification in law or contract.  In other words, an enrichment is justified if it is the result of, or finds its explanation in, the terms of a valid judicial act between the impoverishee and enrichee or between a third party and the enrichee." *Id.* (citing *Edmonston v. A-Second Mortg. Co.*, 289 So.2d 116 (La. 1974)); *see also Garber v. Badon & Ranier*, 981 So.2d 92, 101 (La.App. 3 Cir. 2008); *Coastal Envtl. Specialists, Inc. v. Chem-Lig Int'l, Inc.*, 818 So.2d 12, 19 (La.App. 1 Cir. 11/09/11); *Scott v. Wesley*, 589 So.2d 26, 27 (La.App. 1 Cir. 1991); *Mose v. Keybank Nat'l Ass'n*, 2011 U.S. Dist. LEXIS 81663 (M.D. La. July 25, 2011).  Here, Woodbridge has not been enriched without cause, as contracts between a third party (Woodbridge) and an enrichee (Burrle) are valid juridical acts which justify the payment of $20,000.00 to Woodbridge. *Id.*; *see also Mose*, 2011 U.S. Dist. LEXIS 81663 at *10 (concluding that the defendant was not unjustly enriched where it had a contract with the

8

alleged enrichee, and the payment of the funds did not result from any "direct transaction with" the impoverishee). Woodbridge had no direct deadline with the DHECC, except to assert a lien pursuant to the Agreements, and had no involvement in the submission of allegedly fraudulent information to the DHECC. Accordingly, the principles of equity do not warrant the return by Woodbridge of the $20,000.00 partial payment to the DHECC.

## CONCLUSION

Woodbridge entered into valid, arms-length pre-settlement funding contracts with Jarrod A. Burrle which in Louisiana are considered consumer loans, not contingency fee contracts. Because the $20,000.00 partial payment Woodbridge received was made pursuant to those contracts, neither law nor equity warrants the return of those payments to the DHECC. Woodbridge therefore respectfully requests that this Court deny the Special Master's Motion for Return of Payments Made to Jarrod A. Burrle and Others (Rec. Doc. 13010) as to Woodbridge Baric Pre-Settlement Funding, LLC.

Respectfully submitted,

/s/ *Margaret F. Swetman*
**GEORGE D. FAGAN, T.A. - #14260**
**MARGARET F. SWETMAN - # 29195**
**LEAKE & ANDERSSON, L.L.P.**
1100 Poydras Street, Suite 1700
New Orleans, Louisiana  70163
Telephone: (504) 585-7500
Facsimile: (504) 585-7775
Email: gfagan@leakeandersson.com
Email: mswetman@leakeandersson.com
***Attorneys for Woodbridge Baric Pre-Settlement Funding, LLC***

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading has been served on all counsel by electronically uploading it to the Lexis Nexis File & Serve, and that the foregoing was electronically filed with the Clerk of Court for the United States District Court for the Eastern District of Louisiana on August 8, 2014, by ECF filing.

_____/s/ *Margaret F. Swetman*_____
**MARGARET F. SWETMAN**

41747 / 22