## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010**<br><br>**This Document Relates to:**<br><br>**No. 12-970** | **MDL No. 2179**<br><br>**SECTION: J**<br><br>**JUDGE BARBIER**<br><br>**MAGISTRATE SHUSHAN** |

## CLASS COUNSEL'S
## OPPOSITION TO BP'S MOTION FOR RESTITUTION

Class Counsel respectfully submit the following memorandum, in accordance with the Court's Order of July 18, 2014 [Doc 13162], to present the common and class-wide defenses to BP's Motion for Restitution and Injunctive Relief [Doc 13073].   Additional objections, arguments and defenses which may be available to individual Class Members and other potential subjects of BP's Motion are respectfully reserved;[1] the absence of formal pleading or briefing by Class Counsel on such issues should not be deemed or construed as any type of "waiver" thereof.

**MAY IT PLEASE THE COURT:**

Every single payment authorized by BP to be made from the Settlement Trust as approved by the independent Claims Administrator and Trustee was issued subject to and in accordance with the following contractual release:

> If the Court does approve the proposed class action settlement, an appellate court could reverse the approval. In addition, it is possible that the terms of the proposed settlement may change in the future—for better or for worse—as a result of further legal proceedings. However, if you

---

[1] Such objections, arguments and defenses might include, but would not be limited to: lack of pleading, insufficiency of pleading, lack of service, insufficient service of process, lack of notice, insufficiency of notice, lack of personal jurisdiction, lack of subject-matter jurisdiction, accord and satisfaction, voluntary payment, compromise and release, enforcement of arbitration, equitable estoppel, promissory estoppel, judicial estoppel, laches, statute of limitations, failure to join a necessary or indispensable party, unclean hands, failure to timely appeal, error or mistake as to an alleged "overpayment", and/or failure to establish "irreparable harm" with respect to specific individual class members, attorneys or other third parties, assets, or claims.

> sign this Individual Release, none of those uncertain future events will affect you.…  In fact, even if the Court does not approve the proposed class action settlement agreement or the approval is reversed by an appellate court, you shall continue to be bound by this Individual Release.[2]

This language was drafted, proposed, agreed to, and presented to the Court for approval by BP. BP clearly understood and agreed that "the terms of the proposed settlement may change in the future – for better or for worse – as a result of further legal proceedings" but that, where payment was made in accordance with such Individual Release, "none of those uncertain events will affect" the Class Member agreeing to the settlement.  There is, to Class Counsel's knowledge, no precedent in law or in equity to support a claim of "restitution" by a party that knowingly enters into such a voluntary contractual agreement for the settlement of a disputed claim.

In addition:

- BP just told the U.S. Supreme Court that it needed a stay on the causation issue because BP would not be able to sue Claimants for allegedly "improper" payments.[3]

- BP told this Court in its original injunction filings that BP could not "feasibly sue the claimants who will receive payment for fictitious losses. Even if BP could recover from Class Members," BP would "need to file … a large number of actions."[4]

- The U.S. Fifth Circuit, when it issued a stay last October, accepted BP's argument, and agreed that once awards are distributed to the Claimants, "BP will have no practical way of recovering these funds should it prevail."[5]

- BP agreed "that an Economic Class Member determined to qualify for one or more Settlement Payments shall have the option to receive prompt payment of such compensation" and that the "BP Parties' obligation to make Settlement Payments to any qualifying Economic Class Member

---

[2] SETTLEMENT AGREEMENT, Exhibit 26, p.1 [Doc 6276-45 at 2].

[3] APPLICATION TO RECALL AND STAY MANDATE, No. 13A1177 (May 28, 2014), p.4 ("Even if this Court grants certiorari and rules for BP on the merits, BP may have no practical way to recoup many of these wrongly paid awards").

[4] BP MEMO IN SUPPORT OF PRELIMINARY INJUNCTION [Doc 8910-3] (March 15, 2013), p.40.

[5] In re Deepwater Horizon, 732 F.3d 326, 332 n.3 (5th Cir. 2013).

who signs an Individual Release … shall be fully enforceable, binding and irrevocable."[6]

- BP represented and warranted in the Settlement Agreement that "the Parties intend to resolve their disputes pursuant to the terms of this Agreement and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery after the date of this Agreement or at any other time of any additional facts or law, or changes in law."[7]

- BP expressly authorized, instructed and directed the Claims Administrator and Trustee to "faithfully implement and administer the Settlement… for the benefit of the Economic Class… as approved by the Court," and to "provide for" the "payment of Claims from the applicable Claims Fund."[8]

- The Individual Release which BP negotiated, executed, and submitted for Court approval; which was thereafter approved by the Court; and which was thereafter executed by the Claimant prior to payment; states that: "This Individual Release shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the Released Parties in any current or future litigation."[9]

- Under the Restatement: "A payment by way of compromise and settlement, where the purpose of the agreement is to effect a final resolution between the parties … is not subject to recovery in restitution."[10]

- There is no right to restitution when payments are made voluntarily as a result of the defendant's own business and litigation strategy.[11]

- BP did not timely seek relief from the judgment approving the Economic & Property Damages Class Settlement Agreement, and particularly "the Individual Release contained in Exhibit 26 to the Settlement Agreement" as "valid and enforceable,"[12] within one year, as required by Federal Rule of Civil Procedure 60(c).

---

[6] SETTLEMENT AGREEMENT, Recital H.

[7] SETTLEMENT AGREEMENT, Section 13.4.

[8] SETTLEMENT AGREEMENT, Sections 4.3.1 and 5.12.1.7.1; *see also* Section 5.1.

[9] SETTLEMENT AGREEMENT, Exhibit 26, ¶16. *See also,* Section 4.4.10.2 ("The Individual Release shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the Released Parties and regardless of whether the Effective Date occurs").

[10] RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT §18, Comment *c* (2011).

[11] Iowa Electric & Power Co v. Atlas Corp., 654 F.2d 704, 707 (8th Cir. 1981).

[12] ORDER AND JUDGMENT GRANTING FINAL APPROVAL (Dec. 21, 2012) [Doc 8139], ¶¶ 1, 8 and 17.

- BP has unclean hands.

- BP is obligated under the Settlement Agreement to indemnify both the Claims Administrator / Trustee and the Claims Payment Agent.[13] Therefore, to the extent that BP alleges that either the Claims Administrator / Trustee or the Claims Payment Agent made "overpayments" to the class members, BP would effectively owe "restitution" to itself.

Finally, with respect to the request for injunctive relief, not only is BP unlikely to prevail on the merits, (for all of the reasons outlined above), it is well-settled that the general federal rule of equity prevents a court from reaching a party's assets and freezing them so that they may be used to satisfy a potential judgment. Netsphere, Inc. v. Baron, 703 F.3d 296, 309 (5th Cir. 2012); Rosen v. Cascade Intern. Inc., 21 F.3d 1520, 1527 (11th Cir. 1994); In re Fredeman Litig., 843 F.2d 821, 824 (5th Cir. 1988). While BP might claim that specific assets (to the extent they could be identified and segregated) are arguably "related to the underlying litigation" in some general sense, the fact that BP merely asserts an alleged claim for "equitable restitution" does not in and of itself establish a lien over the funds nor bring such funds within the *in rem* jurisdiction of the Court.[14] Moreover, the BP evidence in support of an alleged "heightened risk of dissipation of assets" is speculative and conclusory, and in no way establishes a case for irreparable harm.[15]

For these reasons, and for the reasons further outlined below, BP's Motion for Restitution and Injunctive Relief should be denied.

---

[13] SETTLEMENT AGREEMENT, Sections 4.3.11 and 5.12.1.7.3.

[14] In many of the cases where an injunction has issued to preserve asserts during the pendency of the litigation, the court is acting either under an express statutory grant of authority or in response to evidence that the defendant has engaged in fraudulent conduct, a breach of fiduciary duty, or purposeful attempt to transfer assets beyond the jurisdiction of the Court – none of which is true in this case.

[15] The Gaspardo Declaration only purports to make a showing for a total of nine claims. Even in those nine cases, all Mr. Gaspardo does is compare the BEL payout against what he alleges to be the net worth of the entity; the "opinion" that such assets are likely to dissipate is speculative and conclusory. Again, Class Counsel address only classwide objections, arguments and defenses to BP's Motion; should those objections, arguments and defenses be rejected, each potentially affected class member, attorney, or other third party should be provided with the opportunity to raise additional objections and defenses, and to dispute the assertions of BP and its purported "expert" relative to that specific entity or claim.

## TABLE OF CONTENTS

Introduction   .   .   .   .   .   .   .   .   .   .   1

Table of Contents   .   .   .   .   .   .   .   .   .   5

Table of Authorities   .   .   .   .   .   .   .   .   .   6

BP Offered the Economic Settlement to Eligible Claimants as a
Voluntary Compromise Agreement, Irrespective of Class Approval,
Governed by the Individual Release   .   .   .   .   .   .   .   .   8

BP Voluntarily Agreed, Authorized, Directed and Instructed the Claims
Administrator / Trustee and the Claims Payment Agent to Pay Claims Determined
under the Procedures Established in the Settlement Agreement   .   .   .   9

The Individual Settlement Contract Between BP and the Respective
Claimant Was Intended, Agreed and Approved to be Binding and
Enforceable, Irrespective of Any Subsequent Changes to Its Terms by the Courts   .   11

BP Should Be Judicially Estopped from Seeking Restitution   .   .   .   13

BP Has Unclean Hands   .   .   .   .   .   .   .   .   14

BP Did Not Timely Seek Relief under Rule 60(c)   .   .   .   .   .   17

BP Is Obligated to Indemnify the Claims Administrator / Trustee and the
Claims Payment Agent for Any Alleged "Overpayments"   .   .   .   .   18

BP Has Not Established Any Basis for an Injunction.   .   .   .   .   19

Conclusion   .   .   .   .   .   .   .   .   .   .   23

Certificate of Service   .   .   .   .   .   .   .   .   25

**TABLE OF AUTHORITIES**

**Page(s)**

Ashland Oil, Inc. v. Gleave, 540 F.Supp. 81 (W.D.N.Y. 1982)   .   .   .   20, 21

Atlantic Coast Line R. Co. v. State of Florida, 295 U.S. 301 (1935) .   .   .   15

Bisso v. World Marine Transport, No.94-690,
    1996 WL 28520 (E.D.La. Jan. 23, 1996)   .   .   .   .   .   12

Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151 (1st Cir. 2004)   .   20

DeBeers Consolidated Mines v. United States, 325 U.S. 212 (1945)   .   .   20

In re Deepwater Horizon, No.13–5804, 2014 WL 931235
    (E.D.La. March 10, 2014)   .   .   .   .   .   .   12, 22

In re Deepwater Horizon, 732 F.3d 326 (5th Cir. 2013)   .   .   .   .   2, 14

Ehrheart v. Verizon Wireless, 609 F.3d 590 (3d Cir. 2010)   .   .   .   .   22

In re Estate of Marcos Human Rights Lit., 25 F.3d 1467 (9th Cir. 1994)   .   .   21

FSLIC v. Dixon, 835 F.2d 554 (5th Cir. 1987)   .   .   .   .   .   21

In re Fredeman Litig., 843 F.2d 821 (5th Cir. 1988)   .   .   .   .   .   4, 19

Hennessy v. Bacon, 137 U.S. 78 (1890)   .   .   .   .   .   .   12

Iowa Electric & Power Co v. Atlas Corp., 654 F.2d 704 (8th Cir. 1981)   .   .   3, 11

Iowa Health System v. Trinity Health Corp., 177 F.Supp.2d 897 (N.D.Iowa 2001) .   15

Janvey Alguire, 647 F.3d 585 (5th Cir. 2011) .   .   .   .   .   .   21

Mary Dee's Inc. v. Tartamella, 492 So.2d 815 (Fla. 4th Dist. Ct. App 1986)   .   19

Mason v. Jamie Music Pub. Co., 658 F.Supp.2d 571 (S.D.N.Y. 2009)   .   .   15

Netsphere, Inc. v. Baron, 703 F.3d 296 (5th Cir. 2012)   .   .   .   .   4, 19

Novus Franchising, Inc. v. Taylor, 795 F.Supp. 122 (M.D.Pa. 1992)   .   .   15

In re Paige, 610 F.3d 865 (5th Cir. 2010)   .   .   .   .   .   .   13

Productos Carnic S.A. v. Cent. Amer. Beef & Seafood Trading Co., 621 F.2d 683
    (5th Cir. 1980) .   .   .   .   .   .   .   .   21

Rosen v. Cascade Intern. Inc., 21 F.3d 1520 (11th Cir. 1994)   .   .   .   4, 19

Seals v. Herzing Inc., 482 Fed.Appx. 893 (5th Cir. 2012)   .   .   .   .   22

Thibaut v. Ourso, 605 F.Supp. 1 (M.D.La. 1981)   .   .   .   .   .   12

Tisino v. R&R Consulting, 478 Fed.Appx. 183 (5th Cir. 2012)   .   .   .   21

USACO Coal Company v. Carbomin Energy, 689 F.2d 94 (6th Cir. 1982) .   .   21

In re Vioxx Prods. Liab. Lit., 412 Fed.Appx. 653 (5th Cir. 2010)   .   .   .   22

Willing v. Mazzocone, 393 A.2d 1155 (Pa. 1978)   .   .   .   .   19

FED. RULE CIV. PRO. 60(c)   .   .   .   .   .   .   .   3, 17-18

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT §18,
    Comment c (2011)   .   .   .   .   .   .   .   3, 10

**BP Offered the Economic Settlement to Eligible Claimants as a Voluntary Compromise Agreement, Irrespective of Class Approval, Governed by the Individual Release**

The *Deepwater Horizon* Economic and Property Damages Settlement Agreement forms a voluntary contractual agreement between the BP Parties and participating Class Members who submit claims to the Settlement Program and execute an Individual Release.[16]

Specifically, the Agreement provides that:

> The Parties … agree that **an Economic Class Member determined to qualify for one or more Settlement Payments shall have the option to receive prompt payment of such compensation** prior to the Effective Date **upon the execution of an Individual Release. The BP Parties' obligation to make Settlement Payments to any qualifying Economic Class Member who signs an Individual Release prior to the Effective Date,** and the terms of every such Individual Release, **shall be fully enforceable, binding and irrevocable,** regardless of whether the Effective Date occurs.

SETTLEMENT AGREEMENT, Recital H, (emphasis supplied).

> …the Individual Release executed upon payment of the first paid Claim shall release all Claims within the Economic Class, subject only to allowing submission of subsequent timely-filed Claims within the Economic Class and reservation of all rights within the Appeal Process, or rights reserved within the Release….

SETTLEMENT AGREEMENT, Section 4.4.8.

> If an Economic Class Member submits one or more Claim Forms and qualifies for a Settlement Payment under the terms of the Agreement (as modified or amended) as described in Section 5 below, then, prior to, and as a precondition to, receiving any Settlement Payment on a Claim, the Economic Class Member shall execute an Individual Release.

SETTLEMENT AGREEMENT, Section 4.4.10.1.

---

[16] *See generally,* SETTLEMENT AGREEMENT, Section 4.1 (establishment of *Deepwater Horizon* Court Supervised Settlement Program); Section 4.4 (Process for Making Claims); Section 5.12 (establishment of Settlement Trust); Section 21.2 (severability of any provisions found to be invalid, illegal or unenforceable); Section 21.3 (the Claims Administrator will continue to process claims that have been submitted to the Program in the event the class settlement is not fully and finally approved); Section 26.1 (regarding the binding effect of the Agreement on the Parties); Exhibit 26 (Individual Release). *See also* HERMAN DECLARATION (Nov. 11, 2013) [Doc 11833-1], ¶¶ 5-7. *See also, e.g.,* COMPLAINT, *BP v. Deepwater Horizon Court Supervised Settlement Program,* No.13-492 (March 15, 2013) ¶65 ("The Settlement Agreement is a valid contract meeting all required elements: offer, acceptance, and consideration").

> **The Individual Release, which is set forth in Exhibit 26, shall provide that the Individual Release constitutes the <u>final</u>, complete, and exclusive agreement and understanding between BP and Claimant** and supersedes any and all other agreements, written or oral, between BP and Claimant with respect to such subject matter of the Individual Release in settlement of Claims arising out of or related to the Deepwater Horizon Incident….. **The Individual Release <u>shall</u> <u>remain</u> <u>effective</u> <u>regardless</u> <u>of</u> <u>any</u> <u>appeals</u> <u>or</u> <u>court</u> <u>decisions</u> <u>relating</u> <u>in</u> <u>any</u> <u>way</u> <u>to</u> <u>the</u> <u>liability</u> <u>of</u> <u>the</u> <u>Released</u> <u>Parties</u>** and regardless of whether the Effective Date occurs.

SETTLEMENT AGREEMENT, Section 4.4.10.2, (emphasis supplied).

> Economic and Property Damages Settlement Class Member Individual Release or Individual Release shall mean the document attached as Exhibit 26, which is a Release and Covenant not to Sue that must be executed by any Economic Class Member who or that receives compensation for a Claim pursuant to one or more of the Claim Processes prior to the Effective Date.

SETTLEMENT AGREEMENT, Section 38.48.  The Parties placed particular significance on the Release, which must contain the claimant's actual ("wet") signature.[17]  And the payment of a Claim is conditioned upon the execution of the Individual Release.[18]  At no time has BP argued that the Individual Releases should be set aside, nor has BP presented evidence that the Settlement Agreement itself should be vitiated as the product of fraud, error or duress.  Having failed to make a showing under well-settled contractual principles, BP's attempted resort to "equity" is grossly misplaced.

## <u>BP Voluntarily Agreed, Authorized, Directed and Instructed the Claims Administrator / Trustee and the Claims Payment Agent to Pay Claims Determined under the Procedures Established in the Settlement Agreement</u>

It is well-settled that a payment by way of compromise and settlement, where the purpose of the agreement is to effect a final resolution between the parties, is not subject to recovery in

---

[17] *See* SETTLEMENT AGREEMENT, Section 4.4.10.4 ("An Individual Release may not be signed by any form of electronic signature, but must be signed by a handwritten signature. An electronic signature is insufficient").

[18] *See* SETTLEMENT AGREEMENT, Recital H and Sections 4.4.10.1, 5.1 and 38.48.

restitution.[19]  In this case – unlike the cases cited by BP in its motion – every payment was made by way of compromise and settlement, where the purpose was to effect a final resolution between the parties.  In addition to the settlement provisions quoted above, the Agreement expressly states that:

> The Individual Release shall provide that **payments made to Class Members … are made purely by way of compromise and settlement**.[20]

Unlike the defendants in the cases cited in BP's motion, BP was _not_ ordered to pay the plaintiffs by the Court over BP's objection in an adversarial proceeding.  Rather, BP came to the Court, and asked the Court to approve a settlement mechanism in which the Claims Administrator and Trustee was expressly authorized and directed to make the payments in question.

> …the BP Parties agree that, in consideration for … Individual Releases described in Section 4.4.10, and subject to the terms of this Agreement, including all Exhibits hereto, the BP Parties will make Settlement Payments to Economic Class Members.

SETTLEMENT AGREEMENT, Section 5.1.

> The Claims Administrator shall enter into a Paying Agent Agreement…
>
> [and]
>
> The Paying Agent Agreement … shall provide for the following actions in connection with the payment of claims by the Claims Funds:
>
> - The Claims Payment Agent, at the direction of the Claims Administrator (or its authorized designee), shall write checks in payment of Claims from the applicable Claims Fund.

SETTLEMENT AGREEMENT, Sections 5.12.1.7 and 5.12.1.7.1.  Moreover:

> The Claims Administrator shall be selected and appointed by the Court, and shall be responsible to the Court, serve as directed by the Court, and faithfully implement and administer the Settlement, according to its terms and procedures, for the benefit of the Economic Class, consistent with this

---

[19] *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT §18, Comment *c* (2011).

[20] SETTLEMENT AGREEMENT, Section 4.4.12, (emphasis supplied).

Agreement, and/or as agreed to by the Parties and/or as approved by the Court.

Settlement Agreement, Section 4.3.1.

Issues or disagreements that cannot be unanimously resolved by the Claims Administration Panel will be referred to the Court for resolution.

Settlement Agreement, Section 4.3.4.

Court shall mean the United States District Court for the Eastern District of Louisiana, Judge Carl Barbier, presiding, in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179.

Settlement Agreement, Section 38.40.   At all times, the Claims Administrator faithfully implemented the Settlement, for the benefit of the Economic Class, as approved by the Court.   When the "matching" issue could not be unanimously resolved by the Claims Administration Panel, it was resolved by this Honorable Court.   BP cannot point to a single payment that was made outside of this *voluntary* structure and process that BP negotiated, adopted and agreed to within the terms and procedures set forth in the Settlement Agreement.

Unlike the cases cited in BP's motion, BP was not cast in judgment by the Court against its will in a litigated proceeding;  rather, payments were made in accordance with a settlement process to which BP expressly agreed, based on the company's own business and litigation strategy.  *See* Iowa Electric & Power Co v. Atlas Corp., 654 F.2d 704, 707 (8th Cir. 1981).

## The Individual Settlement Contract Between BP and the respective Claimant Was Intended, Agreed and Approved to be Binding and Enforceable, Irrespective of Any Subsequent Changes to Its Terms by the Courts

BP represented and warranted in the Settlement Agreement that:

…the Parties intend to resolve their disputes pursuant to the terms of this Agreement and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery after the

date of this Agreement or at any other time of any additional facts or law, or changes in law.

SETTLEMENT AGREEMENT, Section 13.4.  And:

The Individual Release shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the Released Parties and regardless of whether the Effective Date occurs.

SETTLEMENT AGREEMENT, Section 4.4.10.2.  Further, BP agreed in the Release that:

This Individual Release shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the Released Parties in any current or future litigation.

SETTLEMENT AGREEMENT, Exhibit 26, ¶16.  And, most importantly:

If the Court does approve the proposed class action settlement, an appellate court could reverse the approval. In addition, **it is possible that the terms of the proposed settlement may change in the future – for better or for worse – as a result of further legal proceedings. However, if you sign this Individual Release, none of those uncertain future events will affect you**….  In fact, even if the Court does not approve the proposed class action settlement agreement or the approval is reversed by an appellate court, you shall continue to be bound by this Individual Release.

SETTLEMENT AGREEMENT, Exhibit 26, p.1 (emphasis supplied).  It is well-settled, in this regard, that because "it is presumed that the parties making settlements have consulted their own interests, settlement agreements should not be taken lightly or be interfered with or impeached." In re Deepwater Horizon, No.13–5804, 2014 WL 931235, at *4 (E.D.La. March 10, 2014); Thibaut v. Ourso, 605 F.Supp. 1, 2–3 (M.D.La. 1981); Hennessy v. Bacon, 137 U.S. 78, 85 (1890). "In the absence of fraud, mistake, or other circumstance going to the validity of the agreement, a settlement voluntarily entered into cannot be repudiated by either party or set aside by the court." Deepwater Horizon, supra, 2014 WL 931235 at *4; Bisso v. World Marine Transport, No. 94-690, 1996 WL 28520 at *5 (E.D.La. Jan. 23, 1996);  Thibaut, supra, 605 F.Supp. at 3; see also, e.g., Fulgence v. J. Ray McDermott & Co., 662 F.2d 1207, 1209 (5th Cir. 1981) ("If a party to a [federal] suit who has previously authorized a settlement changes his

mind… that party remains bound by the terms of the agreement").  Under BP's theory, every settled claim is a source of new litigation.  Because the purpose of a settlement is to conclude litigation, including foreclosing the upside and downside risks for each party, the Court should enforce the finality that was bargained for.

**BP Should Be Judicially Estopped from Seeking Restitution**

As this Court has noted, "Judicial estoppel is an equitable doctrine that prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." In re Paige, 610 F.3d 865, 876 (5th Cir. 2010).  A court has the discretion to apply the doctrine where: (1) the current position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the change in position must not have been inadvertent. Paige, 610 F.3d at 876.  In this case, BP currently contends that, with a single motion, the Court can and should award "equitable restitution" to be paid by, not only Claimants, but also third parties, such as attorneys, CPAs, presumably creditors, the IRS, or potentially anyone else in possession of what BP contends to be an "overpayment" by the Claims Administrator / Trustee and/or the Claims Payment Agent due to the matching issue.  This is, of course, clearly inconsistent with BP's prior position.

BP told this Honorable Court when it first sought to enjoin payments that BP could not "feasibly sue the claimants who will receive payment for fictitious losses. Even if BP could recover from Class Members," BP would "need to file … a large number of actions."[21]  BP then told the U.S. Fifth Circuit that "the egregiously distorted awards to date will cost BP hundreds of millions of dollars that it could never recover once paid" and that an "injunction and stay are

---

[21] BP MEMO IN SUPPORT OF PRELIMINARY INJUNCTION [Doc 8910-3] (March 15, 2013), p.40.

warranted to prevent this massive and irreparable harm to BP."[22]   More specifically, BP told the

Court of Appeals that:

> Once an improper award is paid, it is typically impossible for BP to recover that amount—even if this Court ultimately determines that it should never have been paid….
>
> \*   \*   \*
>
> …. BP cannot feasibly sue each of the thousands of claimants receiving awards for fictitious losses.[23]

Most recently, BP told the U.S. Supreme Court that it needed a stay on the causation issue

because BP would not be able to sue Claimants for allegedly "improper" payments.[24]

With respect to the second element, the Court of Appeals, when it issued a stay last

October, accepted BP's argument, and agreed that once awards are distributed to the Claimants,

"BP will have no practical way of recovering these funds should it prevail."[25]

As to the third element, can there really be any doubt that BP's change in position is

intentional?


**BP Has Unclean Hands**

Under principles of equity, the unclean hands doctrine will preclude a party from

obtaining equitable relief where such party is responsible for conduct "involving fraud, deceit,

---

[22] BP EMERGENCY MOTION FOR INJUNCTION AND STAY PENDING APPEAL, No.13-30315 [5th Cir. Doc. 00512200375, at 12] (April 8, 2013), at p.3.

[23] BP EMERGENCY MOTION FOR INJUNCTION [5th Cir. Doc. 00512200375, at 26], at p.17.

[24] APPLICATION TO RECALL AND STAY MANDATE, No. 13A1177 (May 28, 2014), p.4 ("Even if this Court grants certiorari and rules for BP on the merits, BP may have no practical way to recoup many of these wrongly paid awards").

[25] In re Deepwater Horizon, 732 F.3d 326, 332 n.3 (5th Cir. 2013).  *See also, e.g.,* BP EMERGENCY MOTION TO ENFORCE COURT ORDER OF OCTOBER 2ND FOR INJUNCTION, No.13-30315 [5th Cir. Doc. 00512449474, at 62-63] (Nov. 21, 2013), at pp.44-45 ("Once an improper award is paid, it will often be impossible for BP to recover that amount—even if this Court ultimately determines that it should never have been paid. As this panel recognized, BP cannot afford to wait for a stay until after the claims processing rules are finally resolved because 'at that point, the improper awards will have been distributed to potentially thousands of claimants and BP will have no practical way of recovering these funds should it prevail'").

unconscionability, or bad faith related to the matter at issue to the detriment of the other party." Mason v. Jamie Music Pub. Co., 658 F.Supp.2d 571, 588 (S.D.N.Y. 2009); Iowa Health System v. Trinity Health Corp., 177 F.Supp.2d 897, 925 (N.D.Iowa 2001); Novus Franchising, Inc. v. Taylor, 795 F.Supp. 122, 126 (M.D.Pa. 1992).   As the Court made clear in one of the decisions cited by BP in its motion, restitution is not of right: "It is *ex gratia,* resting in the exercise of sound discretion; and the court will not order it where the justice of the case does not call for it." Atlantic Coast Line R. Co. v. State of Florida, 295 U.S. 301, 310 (1935).   Observing that, going forward, the "blunders now being corrected," the better view "in the light of its present knowledge the court will stay its hand and leave the parties where it finds them." Atlantic Coast Line, 295 U.S. at 314.[26]

So far, BP has (among other things):

- Violated Sections 16.1 and 17.1 of the Settlement Agreement by seeking to reverse final approval of the Settlement despite agreeing to "take all necessary actions to obtain final approval" and to "support the final approval and implementation of the Agreement and to defend it against objection [and] appeal";

- Violated Section 9.1 of the Settlement Agreement by repeatedly making statements "with the public and the media" which were not "in good faith" and which were not "consistent with the Parties' agreement to take all actions reasonably necessary for preliminary and final approval of the Settlement";

- Filed a baseless lawsuit against the Claims Administrator;

- Filed numerous and repeated motions to enjoin the Settlement Program;

- Having failed to obtain an injunction of the Settlement Program, asserted unwarranted and unauthorized demands and challenges to the budget and (until ordered otherwise) withheld administrative funding;

---

[26] BP cites the *Atlantic Coast Line* decision at page 6 of its MEMORANDUM IN SUPPORT [Doc 13073-1, at 10].

- Gained unauthorized access to confidential pre-Determination Claims Information;

- Continuously attempted to interfere with the processing of Claims, despite promising and agreeing that the Program would be independent;

- Continuously encouraged the Claims Administrator to adopt burdensome and restrictive policies, which are contrary to what was negotiated and agreed to, and despite promising and agreeing that the Program would be Claimant-friendly;

- Continuously attempted to bully, threaten and otherwise attack the Claims Administrator, Program Vendors, Program Accountants, Claimants, and their attorneys, as part of a bad faith attempt to deter and/or delay the submission, pursuit and/or favorable processing of Claims;

- Sought *En Banc* and U.S. Supreme Court review on the causation issue after expressly representing and conceding to the Court of Appeals that the issue had not been raised on appeal, and was not before the Court;

- Sought and obtained an injunction of BEL Claims that do not have alleged "matching" issues; and

- Sought and obtained an injunction of BEL Claims based on the causation issue, contrary to BP's prior statements and representations, and correctly found to be without merit.

As this Honorable Court previously stated: "if anyone is attempting to rewrite or disregard the unambiguous terms of the Settlement Agreement, it is counsel for BP," who "represented BP during the settlement negotiations, participated in drafting the final Settlement Agreement, and then strenuously advocated for approval of the settlement before this Court," and yet now come to the Court and "contradict everything they have previously done or said on this issue."[27]

---

[27] ORDER AND REASONS (Nov. 22, 2013) [Doc 11890], p.10.

BP's claim for restitution is purported to be grounded in equity, and yet where is the consideration for the unjust enrichment that BP has derived as a result of its bad faith?  It is curious, in this regard, that BP demands interest on the alleged "overpayments" despite the fact that no interest was or is provided to Claimants on payments from the Settlement Trust.  What about BEL Claims that have been delayed despite the fact that BP now *admits* there was and is no "matching" issue?  What about the BEL Claims that have been and will continue to be delayed (and otherwise burdened with additional requests for documents and information) where no "matching" issue exists?  What about IEL Claims that have been unnecessarily swept within the injunction's reach?  What about all of the businessowners and employees whom BP has wrongfully accused of "fraud"?

If an injunction is warranted whenever a defendant's assets might be dissipated during the pendency of the litigation, then why shouldn't BP be enjoined from paying out dividends until the company's liability for the Macondo disaster has been fully and finally resolved?

**BP Did Not Timely Seek Relief under Rule 60(c)**

The Court's Judgment of December 21, 2012:

    1.    …granted "final approval as fair, reasonable, and adequate, to the Economic and Property Damages Settlement Agreement As Amended On May 2, 2012, including all Exhibits thereto….";

        *   *   *

    8.    found that "the Individual Release contained in Exhibit 26 to the Settlement Agreement [is] valid and enforceable and [was] the product of intense and detailed negotiations between the parties in light of prior experience by the parties in *Deepwater Horizon*-related litigation in this Court and other courts";  and,

        *   *   *

    17.    "expressly incorporate[d] the terms of the Settlement Agreement in this Order and Judgment."[28]

---

[28] ORDER AND JUDGMENT GRANTING FINAL APPROVAL (Dec. 21, 2012) [Doc 8139], ¶¶ 1, 8 and 17.

If, therefore, BP wanted to modify or alter the language in Exhibit 26 to the Settlement Agreement which made it clear that the BP Parties' obligation to make Settlement Payments to qualifying Economic Class Member who signed an Individual Release were "fully enforceable, binding and irrevocable,"[29] even if the terms of the proposed settlement were to "change in the future – for better or for worse – as a result of further legal proceedings,"[30] BP was required to institute such action within one year of the December 21, 2012 judgment, pursuant to Federal Rule of Civil Procedure 60(c).

## BP Is Obligated to Indemnify the Claims Administrator / Trustee and the Claims Payment Agent for Any Alleged "Overpayments"

The Settlement Agreement expressly provides for "indemnities that the BP Parties will provide to the Claims Administrator and the Claims Administration Vendors in connection with their respective contracts to undertake the Claims administration set forth in this Agreement."[31] The Settlement Agreement similarly requires that the Paying Agent Agreement "will also provide standard indemnification by the Settlement Trust and the BP Parties of … the Claims Payment Agent."[32]   Therefore, to the extent that BP alleges that either the Claims Administrator / Trustee or the Claims Payment Agent made "overpayments" to the Class Members, BP would effectively owe indemnity for the restitution to itself.[33]

---

[29] SETTLEMENT AGREEMENT, Recital H.

[30] SETTLEMENT AGREEMENT, Exhibit 26, p.1.

[31] SETTLEMENT AGREEMENT, Section 4.3.11.

[32] SETTLEMENT AGREEMENT, Section 5.12.1.7.3.

[33] The Class, of course, does not suggest that BP would have a valid cause of action against either the Claims Administrator / Trustee or the Claims Payment Agent, who were acting at all times within the authority of the Settlement and Trust Agreement, and as approved and directed by the Court.  BP claims, however, that its bar to recovery is merely practical in nature, because it funds the Trust and would be liable to the Claims Administrator for indemnity. *See* BP EMERGENCY MOTION FOR INJUNCTION AND STAY PENDING APPEAL, No.13-30315 [5th Cir. Doc. 0051220375, at 26] (April 8, 2013), at p.17 ("The Claims Administrator lacks the funds to satisfy any judgment, and in any case he can seek indemnification from BP").  The existence and effect of these voluntary contractual obligations do not give rise to an equitable remedy.

**BP Has Not Established Any Basis for an Injunction**

In this latest and most ambitious motion for an injunction, BP continues its post-settlement strategy to reduce the company's exposure for an uncapped settlement.  Not only is BP unlikely to prevail on the merits, (for all of the reasons outlined above), but it is well-settled that the general federal rule of equity prevents a court from reaching a party's assets and freezing them so that they may be used to satisfy a potential judgment. Netsphere, Inc. v. Baron, 703 F.3d 296, 309 (5th Cir. 2012); Rosen v. Cascade Intern. Inc., 21 F.3d 1520, 1527 (11th Cir. 1994); In re Fredeman Litig., 843 F.2d 821, 824 (5th Cir. 1988).  While BP might claim that specific assets (to the extent they could be identified and segregated) are arguably "related to the underlying litigation" in some general way, the fact that BP merely asserts an alleged claim for "equitable restitution" does not in and of itself establish a lien over the funds nor bring such funds within the *in rem* jurisdiction of the Court.

BP, moreover, has not established that it has no available remedy at law.  The fact that BP voluntarily agreed to fund the Settlement Trust and to contractually indemnify the Claims Administrator / Trustee, as well as the Claims Payment Agent, is a result of BP's own business choices and litigation strategy, not the unavailability of a legal remedy. *See, e.g.,* Mary Dee's Inc. v. Tartamella, 492 So.2d 815, 816 (Fla. 4th Dist. Ct. App 1986) ("the plaintiffs had an adequate remedy at law because they could obtain a money judgment against the defendants. The test of inadequacy of remedy at law is whether a judgment can be obtained, not whether, once obtained, it will be collectible"); Willing v. Mazzocone, 393 A.2d 1155, 1158 (Pa. 1978) ("the insolvency of a defendant does not create a situation where there is no adequate remedy at law.

In deciding whether a remedy is adequate, it is the remedy itself, and not its possible lack of success that is the determining factor"); Ashland Oil, Inc. v. Gleave, 540 F.Supp. 81, 86 (W.D.N.Y. 1982) ("It is questionable whether the sort of harm plaintiff points to-frustration of enforcement of a money judgment-can ever constitute irreparable harm for purposes of preliminary injunctive relief, absent specific statutory authorization").[34]

Yet even assuming *arguendo* that the Court has the authority to issue an injunction, that does not answer the question of whether individual class members and/or others *should* be enjoined. Whether the action is labeled a claim for "restitution" or a claim for "damages", the rationale remains the same: The possibility that the plaintiff may never collect "can be made by virtually every person who sues another for money damages. Its very ubiquity indicates why it cannot conceivably be enough to justify the issuance of a prejudgment injunction." Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 163 (1st Cir. 2004); DeBeers Consolidated Mines v. United States, 325 U.S. 212, 222 (1945) ("Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration"). If the assets of plaintiffs and their attorneys or others should be enjoined, then BP should similarly be enjoined from transferring its own assets or paying out dividends to its shareholders until BP's liability for the Macondo disaster is fully and finally determined.

---

[34] The Class, again, does not suggest that BP has a valid cause of action against either the Claims Administrator / Trustee or the Claims Payment Agent, who were acting at all times within the authority of the Settlement and Trust Agreement, and as approved and directed by the Court. BP's argument for alleged "irreparable harm" is, however, predicated upon the fact that BP itself funds the Settlement Trust and is obligated to provide the Claims Administrator with indemnity. *See* BP EMERGENCY MOTION FOR INJUNCTION AND STAY PENDING APPEAL, No.13-30315 [5th Cir. Doc. 00512200375, at 26] (April 8, 2013), at p.17. The existence and effect of these voluntary contractual obligations do not give rise to an equitable remedy.

Unlike most of the cases cited by BP in its motion, neither the Claimants nor their attorneys, CPAs, creditors, the IRS, or any other party to whom such assets may have been transferred owe any type of "fiduciary duty" to BP, nor have been found to have engaged in any type of bad faith or "fraudulent" conduct.[35]

Moreover, the BP "evidence" in support of an alleged "heightened risk of dissipation of assets" is speculative and conclusory, and in no way establishes a case for irreparable harm.  The Gaspardo Declaration only purports to make a showing with respect to a total of nine claims.[36]  Even in those nine cases, all Mr. Gaspardo does is compare the BEL payout against what he alleges to be the net worth of the entity;  the "opinion" that such assets are likely to dissipate is speculative and conclusory. *See, e.g.,* Janvey Alguire, 647 F.3d 585, 600 (5th Cir. 2011) (cited by BP); Productos Carnic S.A. v. Cent. Amer. Beef & Seafood Trading Co., 621 F.2d 683, 686-687 (5th Cir. 1980) (a showing of "speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant").  Mr. Gaspardo cabins his assertions within so many conditionals and disclaimers as to make any conclusions inherently unreliable.  "In some cases" he admits, "I do not currently have access to all of the facts necessary to fully apply Policy 495"; his methodology is "in no way a replacement for the full application of Policy 495"; and "it is

---

[35] *Contrast with, for example:* Tisino v. R&R Consulting, 478 Fed.Appx. 183, 184-186 (5th Cir. 2012) (enjoining certain assets of a law firm accused of breach of fiduciary duty where funds had been transferred to a disbarred attorney who had engaged in illegal conduct on the law firm's behalf upon specific finding that he had "sought to divert, deplete and/or dissipate substantial portions of the funds"); In re Estate of Marcos Human Rights Lit., 25 F.3d 1467, 1477-1480 (9th Cir. 1994) (holding "restricted to only *extraordinary* cases" such as claims for human rights violations against a former dictator and/or an associated RICO action for the conversion of public property for the defendants' own use) (emphasis in original); Janvey Alguire, 647 F.3d 585, 589 (5th Cir. 2011) (receiver allowed to freeze accounts of former financial advisors and investment company employees where evidence established that they had perpetrated a "massive Ponzi scheme"); FSLIC v. Dixon, 835 F.2d 554 (5th Cir. 1987) ("After an investigation that revealed that the officers and directors of Vernon Savings and Loan Association had engaged in risky to the point of illegal lending practices, self-dealing and improper financial accounting, including fudging Vernon's books to conceal their wrongdoing…"); USACO Coal Company v. Carbomin Energy, 689 F.2d 94, 97 (6th Cir. 1982) (fiduciary obtained funds in breach of his fiduciary duties).  *See also, e.g.,* Ashland Oil, supra, 540 F.Supp. at 86 ("even in those most comparable to the instant case, there exists the element that the threatened disposition of assets would itself constitute the primary illegality involved, against the occurrence of which the suit was directed").

[36] *See* DECLARATION OF BRIAN L. GASPARDO, ¶28.

possible that submission of additional information by a claimant might change the results of my analysis."[37] Each of the nine examples is qualified by the statement: "Access to additional data and further analysis may change my analysis and my estimate."[38] Gaspardo's opinions are unsupported by any calculations or supporting documentation.

BP has not, nor can it, identify the specific funds to which it contends any type of "equitable lien" might attach, nor has BP identified the specific entities who might be in possession of such funds, and therefore potentially subject to the desired injunction.[39]

Nor is such an injunction in the public interest. *See* Seals v. Herzing Inc., 482 Fed.Appx. 893, 896 (5th Cir. 2012) ("public policy favors voluntary settlements"); In re Vioxx Prods. Liab. Lit., 412 Fed.Appx. 653, 654 (5th Cir. 2010) ("Public policy favors settlement compromise agreements and the finality of settlements"); Deepwater Horizon, supra, 2014 WL 931235 at *4 ("It is axiomatic that settlement agreements are a favored means of resolving disputes"); *see also* Ehrheart v. Verizon Wireless, 609 F.3d 590, 593-395 (3d Cir. 2010) ("A strong public policy exists, which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation…. The choice to settle inherently acknowledges calculated risks and, in the end, reflects the deliberate decision of both parties to opt for certainty in terminating this litigation").[40]   Under BP's proposal, every settled class

---

[37] GASPARDO DECLARATION, ¶12.

[38] GASPARDO DECLARATION, ¶28.

[39] Again, Class Counsel address only classwide objections, arguments and defenses to BP's Motion; should those objections, arguments and defenses be rejected, each potentially affected class member, attorney, or other third party should be provided with the opportunity to raise additional objections and defenses, and to dispute the assertions of BP or the opinions of its purported "experts" relative to that specific entity or claim.

[40] In *Ehrheart,* the settling defendant unsuccessfully sought to vacate its obligations under a class action settlement agreement when a change in the law, *via* legislation enacted shortly after preliminary approval, arguably eliminated the plaintiffs' cause of action.   The court of appeals refused to allow Verizon to escape from the agreement, invoking "the strong presumption in favor of voluntary settlement agreements." Ehrheart, 609 F.3d at 594. "This presumption is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"; an interest which "ties into the strong policy favoring the finality of judgments and the termination of litigation." Id. at 595.   "By vacating its preliminary approval of the settlement and by granting Verizon a judgment on the pleadings, the District Court … digressed from the federal policy of encouraging class action settlement agreements." Id.

member's claim becomes the source of new litigation.  Because the purpose of a settlement is to conclude litigation, the Court should enforce the finality and closure that was bargained for.

<u>Conclusion</u>

For the above and foregoing reasons, BP's Motion for Restitution and Injunctive Relief should be denied.

This <u>15th</u> day of <u>August</u>, <u>2014</u>.

Respectfully submitted,

| | |
|---|---|
|   /s/  Stephen J. Herman   |   /s/  James Parkerson Roy   |
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No. 11511 |
| **HERMAN HERMAN & KATZ LLC** | **DOMENGEAUX WRIGHT ROY & EDWARDS LLC** |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhklawfirm.com | E-Mail: jimr@wrightroy.com |
| *Co-Lead Class Counsel* | *Co-Lead Class Counsel* |

<u>**CLASS COUNSEL FOR THE**</u>
<u>**ECONOMIC & PROPERTY DAMAGES SETTLEMENT CLASS**</u>

| | |
|---|---|
| Conrad S.P. "Duke" Williams | Robin L. Greenwald |
| WILLIAMS LAW GROUP | WEITZ & LUXENBERG, PC |
| 435 Corporate Drive, Suite 101 | 700 Broadway |
| Maison Grand Caillou | New York, NY  10003 |
| Houma, Louisiana 70360 | Office:  (212) 558-5802 |
| Office: (985) 876-7595 | Telefax: (212) 344-5461 |
| Fax No. (985) 876-7594 | E-Mail:  rgreenwald@weitzlux.com |
| E-Mail: duke@williamslawgroup.org | |
| | Rhon E. Jones |
| Brian H. Barr | BEASLEY, ALLEN, CROW, METHVIN, |
| LEVIN, PAPANTONIO, THOMAS, | PORTIS & MILES, P. C. |
| MITCHELL, ECHSNER & PROCTOR, PA | 218 Commerce St., P.O. Box 4160 |
| 316 South Baylen St., Suite 600 | Montgomery, AL 36104 |
| Pensacola, FL 32502-5996 | Office:  (334) 269-2343 |

Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com
Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Telefax: (334) 954-7555
E-Mail:  rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

Calvin C. Fayard, Jr.                          Joseph F. Rice
FAYARD & HONEYCUTT                   MOTLEY RICE LLC
519 Florida Avenue, SW                    28 Bridgeside Blvd.
Denham Springs, LA  70726              Mount Pleasant, SC 29464
Office:  (225) 664-4193                       Office: (843) 216-9159
Telefax: (225) 664-6925                      Fax No. (843) 216-9290
E-Mail:  calvinfayard@fayardlaw.      E-Mail: jrice@motleyrice.com


## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Opposition will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 15th day of August, 2014.


/s/ Stephen J. Herman and James Parkerson Roy