1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE OIL SPILL BY THE OIL RIG          Civil Action
"DEEPWATER HORIZON" IN THE              MDL 2179
GULF OF MEXICO ON APRIL 20, 2010
                                        Section "J"(1)

Member Case: Edward Wisner Donation v.
             BP Exploration & Production,
             Inc., et al,;                New Orleans, Louisiana
             Civil Action No. 13-1971     June 30, 2014



                    MOTION HEARING,
        BEFORE THE HONORABLE JOSEPH C. WILKINSON, JR.,
             UNITED STATES MAGISTRATE JUDGE



APPEARANCES:


For the Plaintiff:          Law Offices of Fred L. Herman
                            By:  FRED L. HERMAN, ESQ.
                            1010 Common Street
                            Suite 3000
                            New Orleans, Louisiana 70112


                            Herman, Herman & Katz, LLC
                            By:  SOREN E. GISLESON, ESQ.
                            820 O'Keefe Avenue
                            New Orleans, Louisiana 70113


                            Fayard & Honeycutt
                            By:  COLT J. FORE, ESQ.
                            519 Florida Avenue, SW
                            Denham Springs, Louisiana 70726

2

APPEARANCES (CONT'D.):


For the Plaintiff:              Leger & Shaw
                                By:  WALTER J. LEGER, JR., ESQ.
                                600 Carondelet Street
                                9th Floor
                                New Orleans, Louisiana 70130


                                Domengeaux, Wright, Roy & Edwards
                                By:  THOMAS THOMASSIE, IV, ESQ.
                                By:  BOB F. WRIGHT, ESQ.
                                     (BY TELEPHONE)
                                556 Jefferson Street
                                Suite 500
                                Lafayette, Louisiana 70502


                                Fayard Law Firm, LLC
                                By:  CATHRYN C. FAYARD, ESQ.
                                     (BY TELEPHONE)
                                940 Gravier Street
                                New Orleans, Louisiana 70112


For the Defendant:              Liskow & Lewis
                                By:  GREG L. JOHNSON, ESQ.
                                One Shell Square
                                701 Poydras Street
                                Suite 5000
                                New Orleans, Louisiana 70139


                                Kirkland & Ellis, LLP
                                By:  CHRISTOPHER ESBROOK, ESQ.
                                300 N. LaSalle
                                Chicago, Illinois 60654


                                Jackson Walker, LLP
                                By:  ALI ABAZARI, ESQ.
                                100 Congress Avenue
                                Suite 1100
                                Austin, Texas 78701

APPEARANCES (CONT'D.):


For the Defendant:              BP America, Inc.
                                By:  NATHAN M. BLOCK, ESQ.
                                501 Westlake Park Boulevard
                                Houston, Texas 77079


Court Audio Operator:           Rebecca S. Gonzalez


Transcriptionist:               Sherryl Robinson
                                c/o U.S. District Court
                                500 Poydras Street, Room C151
                                New Orleans, Louisiana 70130
                                (504) 589-7721


Proceedings recorded by electronic sound recording,

transcript produced by transcription service.

<u>P R O C E E D I N G S</u>

(Monday, June 30, 2014)

(Call to Order of the Court)

THE COURT:  This is the matter of *Edward Wisner Donation vs. BP Exploration and Production, Inc. and others*.

It's Civil Action Number 13-1971.  It's one of the member cases in the Deepwater Horizon MDL No. 10-2179.

The Plaintiff's expedited Motion for Specific Performance has been referred to me by Judge Barbier.  The referral order is similar to a referral order issued concerning the Wisner Donation and BP, the same parties in a previous matter on the MDL.  And the referral is for purposes of establishing a briefing schedule and issuing a recommendation on the motion or otherwise resolving the requested relief by mediation.

I have a couple of things that I've read through the complaint in the case and the package that goes with the Motion for Specific Performance and I have a couple of thoughts.  I just wanted to get them out there so you all can address them as we go along.

I've had, I don't know, two dozen or so cases pulled out of the MDL by Judge Barbier and sent to me with encouragement that the parties consent to proceed before a magistrative judge.  All of these other cases have been similar in that they involved a discrete contract that was sort of

5

1    apart from the basic underlying claims and issues of fault and

2    damage that are the main thrust of the MDL proceeding.

3         Judge Barbier didn't include his same encouragement

4    sentence in this referral order that he has in others, but I'm

5    going to offer you the opportunity to consent.  You're not

6    required to consent.  You're free to withhold your consent

7    without any substantive adverse consequence.

8         To me, having read through the papers, this

9    particular thing here does have the appearance of being related

10   to a discrete contract between these parties that's a little

11   different.  Although the underlying complaint in the member

12   cases, you know, tracks the MDL proceedings pretty precisely,

13   but this access agreement gives this particular dispute

14   something, something else that's not common to the rest of the

15   MDL proceedings.

16        So, I'll offer you that possibility.  To be honest

17   with you, as I'm thinking about this, given the nature of the

18   dispute and the request for expedited treatment; if you don't

19   consent for a magistrate judge to handle it, you know I'm

20   thinking about going to Judge Barbier and recommending that he

21   peel it out anyway and just have it randomly allotted to an

22   Article 3 judge, because I think it needs separate attention.

23        If you want to have an opportunity to consider

24   consent, I'll give it to you.  If you want to say "yes" or "no"

25   now, you can say so and there will be no hurt feelings.  I

```
 1    still have the -- in fact, I'm not really -- let me say, there
 2    will be no hurt feelings.
 3         (Laughter)
 4         THE COURT:  This is a not business development
 5    session as I understand, you know.  It has been 20 years since
 6    I was in a law firm, but I understand they still have those in
 7    law firms, okay.  But if you want to consent I'll at least give
 8    it the individual consideration and I'll try to give it
 9    expedited treatment, so.
10         Do you all want more time to think about that, or do
11    you just want to say "yes" or "no" now?
12         MR. HERMAN:  Your Honor, we're prepared.  This is
13    Fred Herman, Your Honor.  Should we make our appearances?
14         THE COURT:  Yes, please.  I'm sorry.
15         MR. HERMAN:  Fred Herman on behalf of the Wisner
16    Donation.
17         MR. GISLESON:  Soren Gisleson on behalf of the Wisner
18    Donation.
19         MR FORE:  Colt Fore on behalf of the Wisner Donation.
20         MR. LEGER:  Walter Leger, Jr. on behalf of the Wisner
21    Donation.
22         MR. THOMASSIE:  Thomas Thomassie on behalf of the
23    Wisner Donation.
24         MR. HERMAN:  And the Donation, Your Honor, is -- and
25    I might add that Mr. Wright and Ms. Fayard are on the
```

1    conference line.

2           THE COURT:  Okay.  Now, there's one more thing.

3           Go ahead, make your appearances but don't respond to

4    my consent thing yet, will you please?

5           MR. ESBROOK:  Christopher Esbrook on behalf of BP

6    Exploration and Production.

7           MR. JOHNSON:  Greg Johnson on behalf of BP

8    Exploration and Production.

9           MR. BLOCK:  Nathan Block, BP Exploration and

10   Production.

11          MR. ABAZARI:  Ali Abazari, BP Exploration.

12          THE COURT:  Okay.  Before you respond to this consent

13   form there's one more item that I should disclose, and that is

14   that although there's a jury demand in the underlying complaint

15   itself, you know, I consider this motion to actually be a

16   Motion for Preliminary Injunction.

17          So if your principle interest in coming here is to

18   try to begin a mediation process or a settlement conference

19   process, you know I guess I could do it since there's a jury

20   demand in the case; but on the other hand this motion in

21   particular is a matter seeking injunctive relief as far as I'm

22   concerned and I'd be doing that myself.

23          So you know, most people don't want me involved in

24   their case at all, whether it's for mediation or something

25   else, but you need to take that into consideration.  If we're

1   going to have a mediation effort I guess I'd have to look into

2   this to see if I could do both, a preliminary injunction

3   hearing and a settlement conference at the same time.

4           Yes?

5           MR. HERMAN:  May I, Your Honor?

6           THE COURT:  Yes, sir.

7           MR. HERMAN:  Fred Herman on behalf of BP.  I haven't

8   discussed this with my colleagues except to say one; that we

9   consent to Your Honor hearing the motion.

10          Two; my assumption is, is if Your Honor concludes

11  that you could not conduct the mediation, it could be referred

12  to another party, or I'm sorry, another magistrate.

13          THE COURT:  Uh-huh.

14          MR. HERMAN:  Or Mr. Johnson and I and others could

15  discuss whether or not we would want the neutral who had been

16  previously engaged, and both sides I felt were reasonably

17  satisfied.  But in any event, that's a further discussion to be

18  had.

19          THE COURT:  Who was that, by the way?  Remind me.

20          MR. HERMAN:  Anthony DiLeo.

21          THE COURT:  Okay.

22          MR. HERMAN:  And former partner at Stone Pigman.  He

23  has his own practice now.

24          THE COURT:  Yes, I know who he is, I just didn't

25  remember him being involved in this.

1          MR. HERMAN:  There would have been no reason for Your

2    Honor to know that.

3          THE COURT:  All right, good, one less thing to know.

4          MR. HERMAN:  That disposes of the inquiry.

5          THE COURT:  All right.  So your consent would be to

6    handling this motion only, and not to the whole case?

7          MR. HERMAN:  Well, I'm the --

8          MR. GISLESON:  Your Honor, Soren Gisleson on behalf

9    of Donation.

10          Whenever there's sort of a jury issue involved one

11    way or the other, we prefer to get a sort of confirmation from

12    the client that they would be willing to waive the jury issue.

13          Of course as the matter --

14          THE COURT:  No, no, no, no, no.  Consent doesn't

15    involve waiver of a jury demand.

16          MR. GISLESON:  All right, well then I misunderstood.

17          THE COURT:  Yes.  All right, let me rephrase -- let

18    me start over again.

19          MR. GISLESON:  Sure.

20          THE COURT:  Okay.  Or maybe you all can short circuit

21    this by saying you don't consent.  You can't short circuit

22    another way.  Okay, it's all right.

23          Let me start over.  Does that mean you will consent,

24    or just that you need time to discuss this?

25          MR. ESBROOK:  Your Honor, Christopher Esbrook.

1            THE COURT:  Yes, sir.

2            MR. ESBROOK:  So, we're confused procedurally.

3            THE COURT:  Yes.

4            MR. ESBROOK:  How this motion works and if it is an

5    injunction motion or a Motion for Summary Judgment.

6            THE COURT:  Uh-huh.

7            MR. ESBROOK:  And specifically, after reading the

8    motion it seeks for -- it seeks relief under a contract.

9            THE COURT:  Uh-huh.

10           MR. ESBROOK:  But there's no contract action in the

11   complaint.

12           THE COURT:  Yes, I was just about to get to that.

13           MR. ESBROOK:  Yes.

14           THE COURT:  Because I'm also confused about the

15   procedural context.

16           MR. ESBROOK:  All right.

17           THE COURT:  But maybe we should discuss the whole

18   thing in globo, as they say, okay?

19           MR. ESBROOK:  Thank you, Your Honor.

20           THE COURT:  This comes to me in a member case.  It's

21   13-1971.  The complaint in a member case does not mention the

22   access agreement, it only mentions specifically, and if you

23   want to call this specifically, in Paragraph 28 of the

24   complaint that the Donation's property was the subject of a

25   massive oil spill response operations at times involving, et

```
 1   cetera, et cetera.
 2             The claims asserted in the complaint aren't breach of
 3   the access agreement claims, so if this case was going to
 4   proceed you know as a separate matter independent of anything
 5   else, I guess there would have to be an amendment to assert a
 6   breach of contract claim, because there isn't one now.
 7             MR. GISLESON:  Your Honor, if I may speak to that
 8   issue?
 9             THE COURT:  Yes, uh-huh.
10             MR. GISLESON:  There was sort of a pragmatic reason
11   why we didn't go ahead and amend the complaint to specifically
12   include allegations.
13             THE COURT:  I think you're prohibited from doing
14   that, aren't you?
15             MR. GISLESON:  Correct.
16             THE COURT:  By the MDL board, right?
17             MR. GISLESON:  Correct Your Honor.  The pretrial --
18             THE COURT:  Which is why -- I'm sorry to interrupt
19   you.
20             MR. GISLESON:  That's all right.
21             THE COURT:  That's one of my main faults.  Okay?
22             MR. GISLESON:  No, that -- it was that specific
23   reason and the general reason was we followed the same
24   procedural vehicle that had been employed by previous counsel
25   Waltzer & Wiygul --
```

1           THE COURT:  Yes, yes.

2           MR. GISLESON:  -- when he brought it before Your

3    Honor.

4           THE COURT:  Yes.  Here's the way this is going for

5    me, this oil spill case, okay?  Every now and then Judge

6    Barbier has identified a particular member case that doesn't

7    fit his general orders and the processes, carves them out.

8           And usually it's because it's a distinct contract

9    dispute.  He carves it out.  He issues an order that encourages

10   the folks to consent.  Most of them have consented and most of

11   them are over, okay?  And I have just set them up on an

12   independent path to termination and off they've gone.  They're

13   taken out of the MDL and they proceed, okay?

14          Now this one is a hybrid, and the previous

15   involvement I had with the Wisner Donation matter was in

16   connection with ultimately I guess was the successful

17   negotiation of this access agreement, although I wasn't

18   involved much at the end, okay.

19          Now, here I have this referral where it's got a

20   motion.  There ain't no such thing with all due respect as a

21   Motion for Specific Performance, okay?  It's got to be

22   something.  Well, it's got to be -- what you're requesting is

23   injunctive relief.  That must be what it is.

24          But when you know, you can only get the relief for

25   which you've asked.  Well, there is no claim for any kind of

1    relief in connection with breach of the access agreement in the

2    original complaint.  So the first thing we have to do, if this

3    case was peeled out of the MDL and made no longer subject to

4    all of the you know, the case management orders and the stays

5    of this and the stays of that.  The first thing that would

6    happen, it could happen in short order, is you could amend your

7    complaint to add that.

8            Now, one problem I thought about with peeling this

9    out and treating them like the other discrete breach of

10   contract cases that I've had is this one's still got the basic

11   claims in it that are made in all of these thousands of cases.

12           So you know, that's -- to do it that way would be

13   inconsistent with the overall you know, scheme of the way that

14   the MDL is being managed and would run the risk of some kind of

15   perhaps, you know, inconsistent result between this one and the

16   other ones.

17           Also I understand by reading the newspaper every now

18   and then, a habit which I -- a bad habit which I fell into

19   about fifty years ago when I was a journalism student and can't

20   seem to shake, despite my many efforts to cancel subscriptions,

21   et cetera.  I understand that every now and then some kind of

22   settlement is reached, okay?

23           And I wonder if you know, maybe these claims asserted

24   in this individual complaint are subject to some kind of

25   settlement agreement either in existence or to be contemplated.

1   So you know, there's trouble with treating this *Wisner Donation*

2   *vs. BP* case you know, distinctly.

3           And so there, it's my little speech.  I don't really

4   know what to do with it, but if you consented for me to do this

5   motion, that all it would do is this motion, although I don't

6   know how to do this motion because there's no claim for this in

7   any case that I know of.  Do you see what I mean?

8           There's another way we could do this.  If you all,

9   and this is not a good way as far as I'm concerned; but if you

10  all on the Plaintiff's side now believe that in addition to the

11  claims asserted in your original complaint, which are pure run

12  of the mill you know, oil spill claims I'll call them.  I'm

13  inventing a new category of claim here, okay.

14          Then I guess you could file a separate suit where you

15  could amend this one and I could sever the breach of contract,

16  the breach of access agreement claims out of it and we could

17  pursue those as a separate matter.

18          Do you see what I'm talking about here?  Am I making

19  this worse than it is?

20          MR. ESBROOK:  No.

21          THE COURT:  I'm just trying to call it as I see it.

22  And I don't see that there's any such claim in the complaint

23  filed so far.

24          MR. ESBROOK:  Your Honor, if I may?

25          So, BP agrees with what Your Honor is seeing here

1    with this complaint, or excuse me, this motion.  And typically,

2    the complaints that have been severed from the MDL and referred

3    to Your Honor have been, as you've said, stand-alone commercial

4    contracts.

5              THE COURT:  Uh-huh.

6              MR. ESBROOK:  That don't have any OPA claims or any

7    other similar damages claims.

8              THE COURT:  Right.

9              MR. ESBROOK:  This complaint you know, is part and

10   parcel with the entire MDL 2179 litigation.

11             THE COURT:  Uh-huh.

12             MR. ESBROOK:  And in particular has the OPA claim for

13   contract damages and the, you know, general maritime --

14             THE COURT:  Right.

15             MR. ESBROOK:  -- law of damages.  So this is, you

16   know, an exemplar of the hundreds and probably thousands of

17   similar claims that --

18             THE COURT:  Right.

19             MR. ESBROOK:  -- I'm sure Judge Barbier is going

20   to --

21             THE COURT:  Right.

22             MR. ESBROOK:  -- make a schedule for.

23             THE COURT:  Uh-huh.

24             MR. ESBROOK:  And so, yeah.

25             THE COURT:  Yes.

1            MR. ESBROOK:  That's why I agree.

2            THE COURT:  So --

3            MR. ESBROOK:  This is better to be heard in Judge

4    Barbier's court.

5            THE COURT:  But the essential guts of the original

6    complaint.  But if you want to do something about the access

7    agreement claims separately, and on an expedited basis, well

8    then maybe we ought to do something, either you know, have a

9    new suit filed or have this complaint amended and then you

10   know, we could sever it.

11           MR. GISLESON:  Your Honor, this is Soren Gisleson

12   again for Donation.

13           THE COURT:  Uh-huh.

14           MR. GISLESON:  Plaintiffs are amenable to any of

15   those.  I don't -- this case is completely different than a lot

16   of the other cases I mean for the MDL in terms of the size of

17   the case, the nature of the access agreement.

18           Our position, any of those procedural vehicles are

19   fine.  You can file a completely separate complaint.

20           THE COURT:  Uh-huh.

21           MR. GISLESON:  And which you know, submit a notice of

22   related action.  Theoretically, it would go to Judge Barbier as

23   a related action.  He could make the decision at that time or

24   you could maybe -- I guess you would have to make the decision.

25   Decide whether to consolidate it or put it under the umbrella

1   of the MDL.

2           We could amend the complaint and sever it out.  We

3   could just amend the complaint and Your Honor can just refer

4   the motion.  I don't think the issue necessarily is whether it

5   could be done, I think the issue is how it's done.

6           MR. HERMAN:  Judge, Fred Herman here.

7           I'm not sure that I'm on the same page as Your Honor

8   in this.

9           THE COURT:  All right.

10          MR. HERMAN:  And I was under the impression and from

11  what I've read, and we sort of came late to the party and when

12  we replaced the Waltzer & Wiygul group.

13          THE COURT:  Uh-huh.

14          MR. HERMAN:  I thought that in the action there had

15  been motion practice and the motion practice resulted in the

16  access agreement.  So, I'm a little bit lost.

17          And am I mistaken, Greg?

18          MR. JOHNSON:  If I might clarify.

19          MR. HERMAN:  Yeah, would you please, Greg?

20          MR. JOHNSON:  Greg Johnson for BP.

21          The access agreement predated that motion practice.

22          MR. HERMAN:  Yeah.

23          MR. JOHNSON:  So, the prior time we spent here with

24  Judge Wilkinson was pursuant to a motion that Waltzer & Wiygul

25  filed; but the nature of our work on the access agreement

1   didn't -- I mean that motion was just --

2          THE COURT:  Yes, what was the motion that they filed

3   again, Mr. Herman?

4          MR. HERMAN:  Motion for Summary Judgment, I believe.

5          MR. JOHNSON:  Right.  It was a Motion for Summary

6   Judgment.

7          MR. GISLESON:  It was a Motion for a Summary

8   Judgment, dash, specific performance.

9          MR. HERMAN:  Yes.

10          MR. GISLESON:  So it was a motion we said --

11          MR. HERMAN:  And so --

12          THE COURT:  Yes.

13          MR. HERMAN:  So the whole idea that somehow Your

14   Honor hasn't gotten jurisdiction over this --

15          THE COURT:  That's not -- I'm not talking about

16   jurisdiction.

17          MR. HERMAN:  -- subject matter, right?

18          THE COURT:  No, I'm not talking about that at all.

19          MR. JOHNSON:  But what we ended up doing was

20   voluntarily negotiating a settlement on how to deal with the

21   issues that the Wisner Donation brought up at that time.  It

22   was --

23          MR. HERMAN:  Sure.  And we're here to enforce that

24   settlement.

25          THE COURT:  Uh-huh.

1          MR. HERMAN:  But this is a -- if you look at this

2    motion as a motion to enforce settlement agreement --

3          THE COURT:  That's not what it is.

4          MR. HERMAN:  Okay.

5          THE COURT:  That's not even what it says.  That's not

6    even what it pretends to be.

7          MR. HERMAN:  Your Honor, I have to say to you that I

8    understand what you're saying.

9          THE COURT:  Yes.

10         MR. HERMAN:  And I'll echo Mr. Gisleson's remarks.

11   We're okay with anything that gets it moving in the right

12   direction.

13         THE COURT:  Okay.  Well I just you know, I just raise

14   these things because they're problems, okay?

15         MR. HERMAN:  Right.

16         THE COURT:  I mean you know, when I'm confused I fall

17   back on fundamentals.  What is the first fundamental?  You

18   can't have what you don't ask for, okay?  Where do you ask for

19   something?  You ask for it in your complaint, in the prayer for

20   relief, okay.

21         But there ain't no breach of access agreement cause

22   of action in this complaint, and there ain't no request for

23   injunctive relief of this sort in the complaint, and this is

24   not a motion to enforce settlement agreement; it's a motion for

25   specific performance of a contract.  And we get that by getting

1  injunctive relief, all right?

2          Somebody filed the Motion for Summary Judgment

3  earlier to enforce some settlement, made us part of the MDL

4  proceeding, I thought, okay?  I never took any action on that

5  because they resolved it, okay?

6          So now you want an injunction to make them do X, Y

7  and Z.  And what is the legal source of your request?  It's the

8  access agreement.  As I understand it, that's what you're

9  alleging, a breach of the access agreement.

10          By the way, while we're talking about this, there's a

11  figure of $434,000-ish dollars in the proposed remediation plan

12  that was put together by the Wisner Science Team.  Is that

13  what's at stake?  Is it that plan that you seek to have put in

14  force?

15          MR. GISLESON:  Yes, Your Honor.  There are three, if

16  I could just sort of give you an overview of sort of the relief

17  requested.

18          THE COURT:  Uh-huh.

19          MR. GISLESON:  Because there's a lot going on in the

20  motion, admittedly.

21          THE COURT:  Uh-huh.

22          MR. GISLESON:  I don't know if Your Honor wants me to

23  give you a little background again about the property or not,

24  but the property --

25          THE COURT:  I think I know enough about the property

1    itself, yes.

2            MR. GISLESON:  So the property consists of basically

3    a nine mile beach.

4            THE COURT:  Right.

5            MR. GISLESON:  The Wisner Donation owns the majority

6    of Port Fourchon itself.

7            THE COURT:  Right.

8            MR. GISLESON:  It includes the beach.

9            THE COURT:  Uh-huh.

10           MR. GISLESON:  There were certain what we call

11   breaches installed on the beach during the remediation effort.

12           THE COURT:  Uh-huh.

13           MR. GISLESON:  One area of the beach we've always

14   referred to as Breach One.

15           THE COURT:  Uh-huh.

16           MR. GISLESON:  And it's just a way to refer to a

17   certain section of the beach where the Gulf comes in and

18   periodically meets the wetlands and there's an exchange of

19   fresh water.

20           THE COURT:  Uh-huh.

21           MR. GISLESON:  Or water, fresh water into the

22   wetlands.

23           THE COURT:  Uh-huh.

24           MR. GISLESON:  Over the last six plus months, our

25   science team has gone out there and conducted sampling tests in

1    that area.

2              THE COURT:  Uh-huh.

3              MR. GISLESON:  Sixty, approximately.  Fifty-four of

4    those tests came back with oil present.  Twenty-nine of those

5    tests came back with an excess of an inch of oil present, which

6    pursuant to BP's guidelines, whether reasonable or not, were so

7    the guidelines that they implemented saying that when you find

8    more than an inch of oil in these geo tube testing, you've got

9    to engage in remediation.

10             So our first type of relief we're asking for is for

11   them to go in and perform the remediation efforts that we spell

12   and Mr. Pardue spells out in his report for Breach One.

13             THE COURT:  Okay.  Is it your allegation that Breach

14   One was the result of the clean-up operations that were

15   contemplated by the access agreement?

16             MR. GISLESON:  The oil at Breach One was the result

17   of inadequate clean-up operations at that site.  In other

18   words, the oil came from the Deep Water Horizon.

19             THE COURT:  Uh-huh.

20             MR. GISLESON:  It's unmistakably undisputable as far

21   as I know, BP oil.  As a result, they have an affirmative

22   obligation to clean up that area.

23             THE COURT:  Under the access agreement?

24             MR. GISLESON:  Under the access agreement.

25             Under the access agreement, it's our position that

1    pretty clearly states that they have to use the highest

2    industry standards.  We get to say what those highest industry

3    standards are.  They engaged in some remediation effort at

4    Breach One.  It was not pursuant to the highest industry

5    standards, so that's what we're forcing them to do.

6              It's expedited, the relief needs to be expedited in a

7    sense of the Caminada 2 project.  The Caminada project comes

8    through for Port Fourchon in different areas and on Fourchon

9    beach, goes to dump about four and a half feet to about between

10   seven to nine feet of sand on the entirety of the beach area.

11             THE COURT:  Uh-huh.

12             MR. GISLESON:  They're getting to the point where

13   they're going to be doing that at the Breach One area,

14   effectively burying the entire beach, the entire Breach One

15   won't be able to extract it.

16             THE COURT:  Okay.

17             MR. GISLESON:  So that's our first type of relief

18   we're seeking.

19             THE COURT:  Uh-huh.

20             MR. GISLESON:  The second type of relief we're

21   seeking really isn't expedited in a sense, but that has to go

22   with the remediation of and the assessment of oil in the

23   wetlands area.

24             THE COURT:  Uh-huh.

25             MR. GISLESON:  And what I call oil in the near shore

1   area where they have oil mats.

2           THE COURT:  Okay.  But this is manage caused by the

3   spill itself and not by the operations that were contemplated

4   in the access agreement, right?

5           MR. GISLESON:  Again Your Honor, with all due

6   respect, they went and they performed some remediation efforts

7   in those areas, actually done in the wetlands area.  But the

8   near shore area it was inadequate.  We informed them it was

9   inadequate, made a demand this is the kind of remediation and

10  assessment needed to do in this area.

11          THE COURT:  Under the access agreement?

12          MR. GISLESON:  Under the access agreement, Your

13  Honor.

14          THE COURT:  Okay.  That's what I'm trying to get at,

15  okay?  I mean it seems to me that you have two legal bases for

16  relief, and I'm oversimplifying, okay?

17          One is the same basis that everybody else has, who

18  thinks they were -- suffered damage from the oil spill itself,

19  okay?  That's what you put in your complaint.  That's what

20  everybody else has.

21          MR. GISLESON:  Agreed.

22          THE COURT:  Two is the basis, your second basis, but

23  it was something that everybody else doesn't have, which is a

24  particular written contract.

25          MR. GISLESON:  Agreed.

1          THE COURT:  Okay.  All I'm trying to do, as we have

2   this discussion today, is segregate the two.

3          MR. GISLESON:  Okay.

4          THE COURT:  Because the kinds of claims that you have

5   that everybody else has, they need to stay in the MDL and not

6   be handled separately; it would be my view.  And I don't think

7   Judge Barbier intended me to get -- intended me to get involved

8   in any of that, either by consent or otherwise, and nor would I

9   want to, frankly, okay?  All right.

10         But there's a second basis that you have that

11  everybody doesn't have, but it's the same kind of thing that

12  these other cases that have been peeled out and sent to me are,

13  which is the breach of a discrete independently standing

14  contract.  I'll be happy to do that one.

15         MR. GISLESON:  Agreed.

16         THE COURT:  Okay.  Now, so as to that one; I guess

17  this is a hypothetical question:

18         Would there be consent by all parties?  And by the

19  way, you know, as to this access, as to your original

20  complaint, you've got several Defendants in addition to BP.

21  The only other party -- the only parties to the access

22  agreement are BP and the Wisner Donation, not these other

23  people, Transocean, et cetera.

24         MR. GISLESON:  That's correct, Your Honor.

25         THE COURT:  So, another reason to distinguish the two

1   legal basis.

2          So if this was a standard -- if this was a straight

3   breach of contract case based on the access agreement, then

4   what this motion is, it would be clear to me, it's a motion for

5   preliminary injunction, okay?

6          And you know, and find out next if you thought we

7   needed to have an evidentiary hearing, or if it could be done

8   on the basis of paper.  And then we either set a preliminary

9   injunction hearing or we'd set it just for briefing and

10  determine it that way.

11         And the reason I'm asking about consent is that this

12  whole process we have for reports and recommendations you know,

13  on motions of this sort, it's a waste of everybody's time and

14  money as far as I'm concerned.

15         And as a general matter, we don't do that around

16  here, which is why if there's not going to be consent, I'd just

17  as soon go suggest that maybe it would be carved out and

18  randomly re-allotted to an Article 3 judge other than Judge

19  Barbier.  And the Article 3 judge can do it separately and save

20  everybody a lot of time and money.

21         MR. GISLESON:  Understood.

22         THE COURT:  Okay.  So how are we going to get from A

23  to B, and is there agreement on how we're going to do so?

24         MR. GISLESON:  Well, it appears Your Honor, that

25  perhaps the options are one of two options.

1          THE COURT:  Uh-huh.

2          MR. GISLESON:  For each separate complaint.

3          THE COURT:  Uh-huh.

4          MR. GISLESON:  The stand-alone complaint, although of

5   course it references the other ones in terms of --

6          THE COURT:  Right.

7          MR. GISLESON:  -- the manageability of the clerk's

8   office.

9          THE COURT:  Uh-huh.

10          MR. GISLESON:  But it's treated separately.

11          THE COURT:  Right.

12          MR. GISLESON:  And at some point we either concede in

13   the complaint or an ordinance issue that says the OPA

14   allegations and the general maritime punitive damage

15   allegations in the original OPA complaint --

16          THE COURT:  Uh-huh.

17          MR. GISLESON:  -- are stayed until further notice.

18          THE COURT:  Okay.  What do you think?

19          MR. ESBROOK:  Yes.  Your Honor, in terms of the

20   consent issue, until the procedural part of this gets figured

21   out.

22          THE COURT:  Uh-huh.

23          MR. ESBROOK:  And that's up to Plaintiffs, whether

24   they want to amend the complaint or file an additional

25   complaint.

28

1              THE COURT:  Uh-huh.

2              MR. ESBROOK:  I don't think BP can take a position on

3    consent.

4              THE COURT:  Uh-huh.

5              MR. ESBROOK:  That's my first point.

6              Second though, I just want to respond to Plaintiff

7    Counsel's comments about the access agreement.

8              THE COURT:  Uh-huh.

9              MR. ESBROOK:  Just for context for Your Honor.

10             THE COURT:  All right.

11             MR. ESBROOK:  So the access agreement, the clean-up

12   that they're talking about is part and parcel with the MDL

13   because there is no independent duty in the access agreement to

14   conduct any spill response operations.

15             The spill response operations are those operations

16   that arise out of OPA and which are directed and controlled by

17   the federal government.

18             THE COURT:  No, I understand what your position is.

19   I read Mr. Block's letter.

20             MR. ESBROOK:  Okay.

21             THE COURT:  Okay?

22             MR. ESBROOK:  Thank you, Your Honor.

23             THE COURT:  I read it and I'm already wondering what

24   this Paragraph 9 means.  I started wondering what Paragraph 9

25   meant a few days ago, okay?

```
 1                  MR. ESBROOK:  Yes.

 2                  THE COURT:  Because that's the issue.  I mean you

 3    know, why are we screwing around here?

 4                  MR. ESBROOK:  Right.

 5                  THE COURT:  Okay?

 6                  MR. ESBROOK:  Yes.

 7                  THE COURT:  The issue is are there any independent

 8    clean-up obligations that spring from this asset --

 9                  MR. HERMAN:  Asset agreement.

10                  THE COURT:  -- agreement.

11                  And the only place I can find any clean-up

12    obligations are in Paragraph 9.  And as we sit here right now,

13    I don't know what it means.

14                  Do you know what that means?

15                  MR. ESBROOK:  I do, Your Honor.

16                  Paragraph 9 you know, it talks about examples of what

17    it is referring to, and those examples are damages from the

18    operations that occur in the land.

19                  THE COURT:  Listen.  I think I already understand

20    your dispute and we don't have to -- I don't have to hear about

21    that off your, you know, from the -- with all due respect, you

22    know, while you stand up.  I'd rather read a brief about that,

23    okay?

24                  MR. ESBROOK:  I understand, Your Honor.

25                  THE COURT:  But I think I understand what your legal
```

1    dispute is, and this is an organizational meeting as far as I'm

2    concerned, so we can try to resolve your legal dispute.

3            You think that you've got some additional clean-up --

4    you've got some independent -- an independent basis for them to

5    clean-up your property springing from this access agreement,

6    and you think that you don't.  You think that your only

7    obligations under this are to address that which you may have

8    disturbed by taking advantage of this access you were granted

9    and not as a result of the explosion itself.

10           I know what your dispute is, I've just got to figure

11   out how to resolve it, okay?  There's no claim of the sort that

12   you make in the present complaint, okay?  There's no claim of

13   the sort that you make in the master complaint.  There's no

14   claim of the sort that you make anywhere, except in this motion

15   which ain't the place you make a claim like this.

16           So let's see.  What are we going to do that's the

17   fastest is what I suggest.  The fastest is, and of course this

18   sometimes screws up everything.

19           MR. GISLESON:  Your Honor, Soren Gisleson again.

20           I would maintain the fastest route would be a route

21   which you did need to move to relieve the Court, which would be

22   just to file a separate schedule in the lawsuit.  It sort of

23   references the other one and acknowledges that it doesn't

24   necessarily incorporate and adopt those allegations into the

25   new one.

1          THE COURT:  That might be the cleanest way too,

2    because you know, usually with folks like you and a mess like

3    this, I just sever it, okay?  I sever it.  I set it up -- I did

4    this in Katrina over and over again.

5          MR. GISLESON:  Yes.

6          THE COURT:  Sever it and set it up on its own track,

7    and off we go.

8          Now, sometimes there's problems associated with that.

9    So maybe -- how about if we -- have you all considered this:

10   Of course, I'm not asking you for an answer because it's

11   premature.

12          You file as quickly as you can a separate lawsuit,

13   okay?  Do whatever you've got to do and I'll confer with Judge

14   Barbier to tell him its coming.

15          He then kicks it out of the MDL with his

16   encouragement order, okay?  You all take a look at the

17   complaint on the BP side and see if you can consent or not

18   consent to a magistrate judge, all right?

19          If you can, wonderful.  If you can't, let me know

20   because I'm going to go suggest to Judge Barbier that either he

21   do it himself or that another -- or that it be to go ahead and

22   re-allot it to an Article 3 judge.

23          And only because, not because I don't love you.  I

24   love all of you.  I'm a man of love, okay?

25          (Laughter.)

1          THE COURT:  But because I think you know, we've got

2     this motion and it's a motion for injunctive relief and this

3     whole report and recommendation thing is a waste of everybody's

4     time and resources, because whoever doesn't like the

5     recommendation objects and then you know, that judge has got to

6     read the whole transcript and basically start de novo, so.

7          MR. GISLESON:  So we will get it on file tomorrow

8     morning.  Would Your Honor like us to send a courtesy copy to

9     your clerk?

10          THE COURT:  Oh, that would be very courteous of you.

11     How about if you send it to me though?

12          MR. GISLESON:  Okay.

13          THE COURT:  Since my clerk ain't here.

14          MR. GISLESON:  Okay.

15          THE COURT:  Oh this is Adele Bocks (phonetic).  She's

16     my summer intern.

17          MR. GISLESON:  Got you.

18          THE COURT:  For four more days, okay?

19          MR. GISLESON:  We'll do that, Your Honor.

20          THE COURT:  All right.  But more importantly, you

21     know, get them a copy and hopefully, you guys will --

22          UNKNOWN SPEAKER:  We'll work it out.

23          THE COURT:  -- waive formal service.

24          UNKNOWN SPEAKER:  Yes.

25          THE COURT:  You know, in fact if you want we'll put a

33

1   schedule in place right now for when you're going to file this

2   and when you might respond.

3              MR. ESBROOK:  Just procedurally, are you going to

4   file it in the Eastern District and then in the MDL 2179?

5              MR. GISLESON:  I'm filing it just generally in the

6   Eastern District of Louisiana.  I'm going to identify the civil

7   cover sheet that is related to the other Wisner matter, which

8   at that point would prompt --

9              MR. HERMAN:  Filed separately.

10             MR. GISLESON:  -- traditionally, would prompt a

11  response at some point from Judge Barbier that it would be

12  stayed.  At which point Your Honor would --

13             THE COURT:  I'm going to go --

14             MR. ESBROOK:  Yes.

15             THE COURT:  -- talk to him as soon as I get my tooth

16  fixed.

17             MR. GISLESON:  I'm sorry, Your Honor?

18             THE COURT:  I've got a broken tooth.

19             MR. ESBROOK:  I'm sorry.

20             MR. GISLESON:  And yes, so tomorrow.

21             MR. ESBROOK:  Okay.

22             MR. GISLESON:  And it's going to be filed in the

23  Eastern District of Louisiana.  I'll send you a courtesy copy.

24             MR. ESBROOK:  Great.

25             MR. GISLESON:  Just when I send it to the Judge, I'll

34

1    copy you.

2            MR. ESBROOK:  Thanks.  And you know, there are

3    various PTO's that are at play in the MDL, and so that's why I

4    want to review those PTO's to see what happens in this

5    situation before I say, you know, when we're going to respond

6    or anything like that.

7            MR. GISLESON:  Well --

8            MR. ESBROOK:  Yeah.

9            MR. GISLESON:  If it's going to be -- well, my

10   understanding was --

11           MR. ESBROOK:  Uh-huh.

12           MR. GISLESON:  -- to file it tomorrow, the Judge

13   would issue his decision as to whether to decide to whether to

14   keep it outside of the MDL 2179 umbrella --

15           THE COURT:  Listen.  Before we do all of this.

16           MR. GISLESON:  Sure.

17           THE COURT:  Okay.  Because you know, I could write a

18   report and recommendations on this motion right now, okay?

19   Right now, if you want.  All right, which is you know, there's

20   no basis for this relief anywhere in the lawsuit.  So, this

21   motion is denied.

22           MR. GISLESON:  Okay.

23           THE COURT:  But where would that get us?  So we'll

24   just get us more of this.

25           UNKNOWN SPEAKER:  Right.

1          THE COURT:  So you know, I think the thing to do is

2    you file your new suit.

3          You take a look at it.

4          I'm going to go tell Judge Barbier this is what's

5    going on, and hopefully, he will agree with me that when it's

6    filed, it should be immediately cut out of the MDL, okay?  And

7    re-allotted to me, and then it will go on the same way that

8    these other two dozen or so discrete contract cases have gone.

9          You know, what we could do if he's going to file the

10   lawsuit tomorrow, is I could set up another conference like

11   this in short order, okay?  We'd come back and then we map out

12   you know, when is the answer going to be filed?  You know, you

13   want to redo this a little bit in the right way in that suit,

14   with a little you know, a little Rule 65 action in it, et

15   cetera, okay?

16         And at the next meeting we could confer as to whether

17   people think we need an evidentiary hearing on a Motion for

18   Preliminary Injunction, or if it can be something that's just

19   the subject of briefing, and all of the other things that I had

20   written down on this list.

21         But there is one thing that I'm still wondering

22   about.  In Dr. Pardue's remediation plan, there's a $434,000

23   plan.  Is that it?

24         MR. GISLESON:  For Breach One.

25         THE COURT:  Breach One.  Not Two and Three?

1              MR. GISLESON:  Well, for Breach One but not as to the

2    assessment and remediation of oil onshore or offshore, or the

3    Third --

4              THE COURT:  The Breach One area is just the area

5    where you deem it to be emergency because of the Cam One

6    project?

7              UNKNOWN SPEAKER:  Caminada.

8              MR. GISLESON:  Correct.

9              THE COURT:  Cam --

10             MR. GISLESON:  Correct, Your Honor.  It's the

11   Caminada Two project.  We just call it Cam Two.

12             THE COURT:  Okay.

13             MR. GISLESON:  That is correct.

14             THE COURT:  All right.

15             MR. GISLESON:  And the third -- the third general

16   category of damages that I didn't get to earlier --

17             THE COURT:  Uh-huh.

18             MR. GISLESON:  -- just has to do with the dispute as

19   to reimbursement of certain expenditures.

20             THE COURT:  Okay.  So your new complaint is going to

21   set all of this out?

22             MR. GISLESON:  Yes, Your Honor.

23             THE COURT:  But your motion for preliminary

24   injunction is going to be related to a discrete part of it

25   concerning the Breach One?

1          MR. GISLESON:  If Your Honor is telling us he only

2    wants to hear the expedited portion --

3          THE COURT:  I'm not telling you anything.

4          MR. GISLESON:  All right.

5          THE COURT:  But it seems to me that you've got

6    something that you want to expedite, and other that you don't

7    necessarily need to expedite.  So the subject of your, you

8    know, motions for preliminary injunction usually go to that

9    which you need to expedite.

10         MR. GISLESON:  But --

11         THE COURT:  Which is only going to be part of the

12   relief you -- apparently, part of the relief you're going to

13   seek in this contract case as a whole, right?

14         UNKNOWN SPEAKER:  Right.

15         MR. GISLESON:  Understood.

16         THE COURT:  I guess that was more of a question to

17   make sure I understood.  Do I understand?

18         MR. GISLESON:  No, you're right.

19         MR. HERMAN:  Judge, Fred Herman.

20         I think if I understand the procedure that I believe

21   would be best to follow would be a complaint or unless counsel

22   BP would submit no opposition to an amended complaint which is

23   I presume, problematic.

24         THE COURT:  Yes, I think it is problematic,

25   because --

1              MR. HERMAN:  Yeah.

2              THE COURT:  -- it would amend your complaint.  You'd

3    have to keep these claims in it.

4              MR. HERMAN:  That's right, so --

5              THE COURT:  I mean, you don't want give up these

6    claims.

7              MR. HERMAN:  No.

8              THE COURT:  These are the claims.

9              MR. HERMAN:  So what we would do is file the

10   complaint and then file a separate motion pursuant to the

11   complaint for the injunctive relief.

12             THE COURT:  Yes.

13             MR. HERMAN:  Thank you.

14             THE COURT:  But what I was asking Mr. Gisleson

15   about --

16             MR. HERMAN:  Yes.

17             THE COURT:  -- was it seems to me --

18             MR. HERMAN:  Yes.

19             THE COURT:  -- the way the complaint is going to be

20   framed is that the preliminary -- the motion for preliminary

21   injunction is going to be limited to a subset of all of the

22   relief --

23             MR. HERMAN:  Yes.

24             THE COURT:  -- you're going to ask for, because

25   that's the only thing you need to really have expedited,

1  right?

2          MR. GISLESON:  Yes, sir.

3          THE COURT:  Okay.

4          MR. HERMAN:  It will be separated, Judge, into

5  accounts.

6          THE COURT:  All right.

7          MR. HERMAN:  And --

8          THE COURT:  Okay.

9          MR. HERMAN:  Clearly delineate --

10          THE COURT:  Right.

11          MR. HERMAN:  -- the injunctive.

12          THE COURT:  Okay.  But then, and when the next time

13  you all come after you've had an opportunity to see the

14  complaint, I need to know -- I need to know just for logistical

15  purposes if there's going to be consent to proceed before a

16  magistrate judge.

17          And again, I'll give you the speech again if you want

18  to hear it.  You're not required to consent.  You can withhold

19  your consent without any substantive adverse consequence, okay?

20  It's on the form, all right?

21          UNKNOWN SPEAKER:  Thank you.

22          THE COURT:  But if you don't consent, I really think

23  that this injunctive matter needs some expedited attention.

24  And so I'm going to just ask Judge Barbier -- I'm going to

25  recommend to Judge Barbier that that needs expedited attention.

1          And if he is tied up with other matters and there's

2    no consent, then I'm going to suggest that he just randomly re-

3    allot it to some other Article 3 judge around here.

4          MR. GISLESON:  Thank you.

5          MR. ESBROOK:  Thank you, Your Honor.

6          THE COURT:  Okay.  So let's see.  Have we got

7    anything else to do today?  I think we ought to schedule a

8    follow up conference.

9          Also, I hate to see people flying in from all over

10   the place, although I'm happy to see you.  You're welcome any

11   time, okay?  But you don't have to.  I mean a status conference

12   we can do by phone, if you want.  But it's up to you guys, all

13   right.

14         So when do you want to set up another status

15   conference?

16         MR. GISLESON:  The sooner the better, Your Honor.

17   But it depends on whether or not they agree to -- well I would

18   suggest, Your Honor, next week, Monday or Tuesday of next

19   week.

20         THE COURT:  Okay.

21         MR. ESBROOK:  Your Honor, we can do five days after

22   the referral.  That gives us you know, time to caucus within

23   our group.

24         THE COURT:  Five days after what referral?

25         MR. ESBROOK:  After the complaint is referred to Your

1   Honor.  I think that's the plan.

2          MR. GISLESON:  Which is fine.  I mean assuming --

3          THE COURT:  Why don't we pick a day and you leave

4   everything else up to me?

5          MR. ESBROOK:  Sounds good, Your Honor.

6       (Laughter.)

7          THE COURT:  What day do you all propose?

8          MR. GISLESON:  Tuesday of next week.

9          UNKNOWN SPEAKER:  July 10th.

10         MR. HERMAN:  July 8th.

11         THE COURT:  These computers are not as fast as you

12   might think.  Let me go see.

13         MR. ESBROOK:  July 8th works for us too.

14         MR. HERMAN:  July 8th works for you?

15         MR. ESBROOK:  Yes.

16         MR. HERMAN:  July 8th works for us too.

17         MR. ESBROOK:  July 8th works, Your Honor.

18         UNKNOWN SPEAKER:  July 10th.

19         MR. HERMAN:  I'm calling in.

20      (Off the record conversation while the Judge is checking

21   on the calendar.)

22         THE COURT:  Either the 8th in the morning or the 10th

23   in the morning are good.

24         MR. HERMAN:  What, at 10:00, Your Honor?

25         MR. ESBROOK:  July 10th in the morning works for us.

1        THE COURT:  July 10th?

2        MR. ESBROOK:  It works for Plaintiffs?

3        THE COURT:  What time do you want?

4        MR. HERMAN:  Your Honor, I'll be calling in if the

5   Court permits.

6        THE COURT:  Sure.

7        Ten o'clock is good?

8        MR. GISLESON:  Yes, Your Honor.

9        MR. ESBROOK:  Ten a.m. works.

10       THE COURT:  Okay.  Now, in short order you're going

11  to get the new complaint.  When you file it you're going to

12  give me a courtesy copy so I'll know it has been filed, and

13  I'll try to take it from there, okay?

14       So when you come back on the 10th, the basic things

15  I'll need to know are whether there's a consent to proceed

16  before a magistrate judge; what is the time frame that the

17  Defendants need to answer or otherwise respond; and what is the

18  time frame within which you'll file a new motion for a

19  preliminary injunction.

20       And then I need you all to give some thought, and I

21  assume that the new motion for preliminary injunction is going

22  to be essentially the same as this other motion; then I need

23  some thought given by both sides as to the preliminary

24  injunction motion, you know, whether there's going to be need

25  for an evidentiary hearing, or whether it's something that can

43

1   be determined on briefs, and a proposed schedule for briefing

2   and hearing of the injunction motion; and then beyond that,

3   some kind of proposed schedule for the case as a whole, okay?

4            And just so I understand again, I'm sorry, the 434

5   that's in the remediation plan that's attached to this motion

6   is for Breach One, right?

7            MR. GISLESON:  Yes, Your Honor.  There are two

8   remediation plans attached, both.

9            THE COURT:  The one I'm talking about is the

10  Pardue --

11           MR. GISLESON:  No, they're both from Pardue.

12  They're --

13           THE COURT:  I see the date is -- it's Exhibit G.

14           MR. GISLESON:  No Your Honor, that would be -- the

15  subject of the Breach One would be Exhibit F.

16           THE COURT:  Exhibit F.

17           MR. GISLESON:  It's the remedial plan for Breach One

18  Deep Water Horizon Oil Contamination Fourchon Beach.  It's

19  dated April 29th, 2014.

20           And then in Mr. Pardue's declaration --

21           THE COURT:  What's the proposed cost of "F"?

22           MR. GISLESON:  Just a second, Your Honor.

23       (Pause.)

24           The costs sort of varied, Your Honor.  And

25  Mr. Pardue, or Dr. Pardue in his declaration doesn't identify

44

```
1    the cost, because what he did was he identified three methods

2    for remediation, all of which in his opinion meet the highest

3    industry standard, but which vary in terms of severity.

4              THE COURT:  Okay.  Well, what is the -- the

5    433,929,582; it's 433 million?  That's the cost of --

6              MR. GISLESON:  That's million, Your Honor.

7              THE COURT:  -- overall, everything?

8              MR. GISLESON:  Correct.

9              THE COURT:  Remediation for all components?

10             MR. GISLESON:  Both remediation and assessment, yes.

11             THE COURT:  Okay.  But for the whole shebang --

12             MR. GISLESON:  That's --

13             THE COURT:  The whole schmear, the whole ball of wax?

14             UNKNOWN SPEAKER:  As of right now.

15             MR. GISLESON:  Yes, Your Honor, that's it.

16             THE COURT:  The big kahuna?

17             MR. GISLESON:  Right.

18             THE COURT:  Okay.

19             MR. GISLESON:  That includes a projection into the

20   future of --

21             THE COURT:  All right.  Do you know how much for the

22   little kahuna?

23             MR. GISLESON:  No.

24             THE COURT:  Okay.  All right.  Okay?

25             MR. GISLESON:  Yes, Your Honor.
```

1          THE COURT:  So July 10th at 10 a.m. and come prepared

2    for all of that stuff.  It's going to be a short meeting if

3    there's no consent though.  And if there's -- you know what, if

4    there's not going to be a consent, maybe the thing to do is for

5    somebody, one from each side, to get together on the phone and

6    just call me and just say that, okay?

7          MR. HERMAN:  We'll designate Mr. Gisleson and I'd

8    like them to designate someone.

9          THE COURT:  Designees are fine.

10         MR. HERMAN:  Yeah.

11         THE COURT:  Whatever you want.

12         MR. HERMAN:  Yeah.

13         THE COURT:  All right, you know, that's okay.  No

14   feelings will be hurt, but I don't know who you're going to

15   get.  All right.

16         UNKNOWN SPEAKER:  Okay.

17         THE COURT:  Anything else?

18         UNKNOWN SPEAKER:  No, Your Honor.

19         THE COURT:  It's a pleasure to see you all, absolute

20   delight.  Of course I only say that because my dentist

21   appointment is in 31 minutes.

22      (Laughter.)

23         THE COURT:  So compared to that, it's a wonderful

24   thing.

25      (Laughter.)

```
 1              THE COURT:  What?

 2              UNKNOWN SPEAKER:  It's bad when you're being compared

 3    to having a broken tooth fixed.

 4              THE COURT:  No, it's not -- it's a crown so it's not

 5    causing any pain, unless I try to eat, which is frequently.

 6              Okay?  But I'm just going to let Judge Barbier know

 7    informally what's going on, all right?

 8              MR. ESBROOK:  Great.

 9              THE COURT:  Okay, thanks.

10              Court is in recess.

11              MR. GISLESON:  Thank you, Your Honor.

12                          *   *   *   *   *

13                       (Hearing is Concluded)

14

15

16

17

18

19

20

21

22

23

24

25
```

# C E R T I F I C A T E

        I certify that the foregoing is a correct transcript

from the electronic sound recording of the proceeding in the

above-entitled matter.

**S/Sherryl P. Robinson**                           **_8/8/14_**
**Sherryl P. Robinson**                                **Date**