## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re: Oil Spill by the Oil Rig          **MDL No. 2179**
"Deepwater Horizon"
in the Gulf of Mexico,
on April 20, 2010                 **SECTION: J**

This Document Relates to:

All Cases                    **JUDGE BARBIER**
                             **MAG. JUDGE SHUSHAN**

_____/

## OBJECTIONS AND OPPOSITION TO
## *EX PARTE* MOTION FOR
## INTERIM REIMBURSEMENT OF SHARED EXPENSES

The following objections and opposition are respectfully presented by Kevin LeMaire.[1] My personal contact information is correctly listed in the signature block at the end of this document. I am presenting my individual objections and opposition below in proper person and as a Member of the Economic and Property Damages Class (R.Doc. 6430) who submitted a claim with the Deepwater Horizon Claims Center on February 19, 2014 for an individual economic loss. As of the date this document was completed and signed by me, the status of my claim was *"In Claims Review after Notice Issued."* I am a paralegal, but do not have access or subscription to any subscription-based electronic legal research database, such as Westlaw or LexisNexis. The information, records and law cited below are based upon my non-attorney, personal research from public resources and Pacer, and are presented in good faith for consideration by this Honorable Court.

---

[1] In this MDL 2179 proceeding, I have previously filed a *Motion for Leave to File Motion to Appoint Special Master* (R.Docs. 12807 to 12807-4) and a *Motion for Leave to File Supplemental Memorandum in Support of Motion to Appoint Special Master* (R.Docs. 12982 to 12982-3). No action has been taken on those motions, I believe, as a result of Case Management Order No. 15.

**MAY IT PLEASE THE COURT:**

Economic and Property Damages Class Member, Kevin LeMaire ("Objector"), objects to and opposes the *Ex Parte Motion for Interim Reimbursement of Shared Expenses* ("the Motion") (R.Doc. 13281) for the following reasons:

1.   Notice of the *ex parte* Motion for nontaxable costs has <u>not</u> been directed to the Class Members. *See,* Federal Rule of Civil Procedure Rule 23(h)(1); and

2.   The evidence and records supporting the Motion are sealed from Class Members' access and view and the Class Members have not been afforded the opportunity to examine Class Counsels' non-taxable cost reimbursement Motion and its supporting evidence, inquire into the bases for various charges, and ensure they are adequately documented and supported.

For these reasons, which are explained in detail below, Objector respectfully believes the Motion must be denied.

<u>**BACKGROUND**</u>

On October 8, 2010, this Honorable Court issued Pre-Trial Order No. 9 ("PTO No. 9") (R.Doc. 508) which provides guidelines for attorneys and law firms submitting time and expense records in connection with seeking common benefit attorney fees and costs.  Mr. Philip Garrett, CPA, was <u>retained</u> by Plaintiffs' Liaison Counsel to "assist and provide accounting services to Plaintiffs' Liaison Counsel, the Plaintiff's Steering Committee, and the district court" in MDL 2179.  Mr. Garrett's retention by Plaintiffs' Liaison Counsel was approved by the Court.

Since being retained by the attorneys in this MDL proceeding, Mr. Garrett has assisted in "compiling submissions" and providing reports to Plaintiffs' Liaison Counsel who submit the reports under seal from public view to the Court on an *ex parte*, monthly basis.[2]  Those reports are to include both time and expenses and summarize, with back-up detail, the submissions of all firms.  *See,* PTO No. 9, Section I(3).

---

[2] *"Submission of time and expense records to Philip Garrett and the Court shall be considered as if submitted under seal." See,* Section I(3) of PTO No. 9

According to Section II(4) of PTO No. 9, all time and expense records shall be submitted to the Philip Garrett website, either electronically or manually.  Also according to Section II(4) of PTO No. 9, time and expense submissions must be submitted timely, on a monthly basis, to Philip Garrett electronically or manually at the website set up to handle time/billing submissions www.GarrettCo-CCMS.com/bp/. Section II(4) also says, if the submission is made manually instead of electronically, it will be submitted together with a summarization of the total of member firm time broken down by each separate name of time keeper and Litigation Task Definition, the time spent during the preceding month and the accumulated total of all time incurred by the firm during the particular reporting period.

On December 28, 2011, the Court granted the Plaintiffs' Steering Committee's ("PSC") *Motion to Establish Account and Reserve for Litigation Expenses*, seeking the creation of a common benefit hold-back fund.  (R.Doc. 5022).  The Court explained that such common benefit funds are often used by courts in the MDL context where the court appoints a Plaintiffs Steering Committee and other lead or liaison plaintiff counsel to organize and spearhead the litigation on behalf of thousands of claimants and hundreds of attorneys. (R.Doc. 5022, pp.1-2).

Sometime after the entry of the December 28, 2011 Order, an Economic and Property Damages Class Action Settlement and a Medical Benefits Class Action Settlement were reached between Defendant British Petroleum ("BP") and the PSC wherein it was agreed that attorneys' fees would be paid on top of benefits to class members.  Importantly, it was a material term and condition precedent to a settlement agreement for the Classes that the BP Parties and the PSC must reach agreement regarding the amount of attorneys' fees and costs for the common benefits to the putative Classes. Details regarding this provision were negotiated and attached as a separate exhibit to the Settlement Agreements as Exhibit 27 (R.Doc. 6430-46).

3

Once BP agreed to make certain payments above and beyond the settlement benefits into the common benefit fund for fees and expenses, the Court established a Common Benefit Fee and Cost Fund for the payment of common benefit attorneys' fees and costs to Economic Class Counsel ("ECC") and the other Common Benefit Attorneys ("CBA") who have submitted time and costs in compliance with PTO No. 9, subject to approval and order of the Court. (R.Docs. 5022 and 6532).

On December 21, 2012, the Court issued a final order certifying an Economic and Property Damages Class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), for purposes of settlement only. *See In re Deepwater Horizon*, ___ F.3d ___, 2014 WL 841313, p.4 (5th Cir.).

Since the creation of the Common Benefit Fee Fund, Co-Liaison Counsel and Economic Class Counsel have filed *Ex Parte Motions for Reimbursement of Shared Expenses* on each of the following dates for the following amounts:

    i.       February 2, 2013 seeking $22,304,454.93 (R.Doc. 8472);

    ii.      April 19, 2013 seeking $1,950,000.00 (R.Doc. 9436);

    iii.     July 8, 2013 seeking $1,800,000.00 (R. Doc. 10679);

    iv.     November 2, 2013 seeking $1,800,000.00 (R.Doc. 11775); and

    v.      April 7, 2014 seeking $1,800,000.00 (R.Doc. 12639)

The Court signed Orders approving the reimbursement of the <u>full</u> amount sought in those *ex parte* motions within days of their filing:

    vi.     February 19, 2013 (R.Doc. 8607);

    vii.    April 23, 2013 (R.Doc. 9520);

    viii.   July 17, 2013 (R.Doc. 10796);

ix.     November 5, 2013 (R.Doc. 11796); and,

x.      April 11, 2014 (R.Doc. 12664)

Now, the *instant* Motion seeks another order authorizing the disbursement of an additional $1,800,000.00 from the Common Benefit Fee Qualified Settlement Fund for reimbursement of "shared costs."

Notice of the Motion has <u>not</u> been directed to the Class Members. Objector only happened upon the Motion very late on the night of August 13, 2014 because he has a personal Pacer account and checks the dockets of several federal court proceedings for pleadings filed by the parties. Prior to the *instant* Motion, Objector had not discovered the previous 5 *ex parte* motions in time to object to or oppose those motions.

The sealed expense records allegedly supporting the Motion, even though submitted and/or stored in electronic format and easy to produce for inspection, have never been made available for Class Members, including Objector, to examine those records, inquire into the bases for various charges, and object to any potentially improper or questionable expenditures.

## OBJECTIONS AND ARGUMENT

1.      <u>**Mandatory notice of the *ex parte* Motion for nontaxable costs has not been directed to the Class Members - FRCP Rule 23(h)(1)**</u>

Federal Rule of Civil Procedure Rule 23(h) requires that a claim for an award of attorney fees and <u>nontaxable costs</u> must be made by motion under Rule 54(d)(2), subject to the provisions of the subdivision, at a time set by the court. Notice of the motion by class counsel <u>must</u> be directed to class members in a reasonable manner. FRCP Rule 23(h)(1). Notice of the *instant* Motion was not directed to Class Members.

Objector reasonably believes the "shared costs" reimbursed to the ECC and CBA are "nontaxable" costs for the purpose of FRCP Rule 23(h).[3]  FRCP Rule 23(h)(1) mandates that notice of any motion for reimbursement of nontaxable costs be directed to the Class Members, who are now being denied an opportunity to object or to be heard on the *ex parte* Motion submitted by Class Counsel.  The failure to direct notice to Class Members in a reasonable manner pursuant to FRCP Rule 23(h)(1) wrongfully allows the attorneys to disregard the right of the Class Members to be advised the Motion has been filed, and also denies Class Members an

---

[3] 28 United States Code §1920 defines "taxable" costs as: **(1)** Fees of the clerk and marshal; **(2)** Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; **(3)** Fees and disbursements for printing and witnesses; **(4)** Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; **(5)** Docket fees under section 1923 of this title; and, **(6)** Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. 28 U.S.C. § 1920 (2006).

PTO No. 9 (R.Doc. 508) defines "shared costs" as follows:

"IV. Shared Costs

(1) Shared Costs are costs incurred for the common benefit of the MDL as a whole. No individual client-related costs can be considered as Shared Costs, unless the case is determined by the Plaintiffs Steering Committee or the Court to be a "common benefit case" (*e.g.* "test case" or "bellwether" case), which, in such circumstances, shall be noted in the expense submission. All costs of a substantial nature that meet these requirements and fall under the following categories shall be considered Shared Costs and qualify to be submitted and paid directly from the MDL account. All Shared Costs must be approved by Plaintiffs' Liaison Counsel prior to being incurred and prior to payment.

Shared Costs include:

a. Court, filing and service costs
b. Deposition and court reporter costs
c. Document Depository: creation, operation, staffing, equipment and administration
d. Plaintiffs' Liaison Counsel administrative matters (e.g., expenses for equipment, technology, courier services, long distance, conference calls, telecopier, electronic service, postage, meeting expenses, travel for administrative matters, photocopy and printing, secretarial/temporary staff, etc.)
e. PSC group administration matters such as meetings and conference calls
f. Legal and accountant fees
g. Expert witness and consultant fees and expenses
h. Printing, copying, coding, shipping, scanning (both in and out of house or extraordinary firm cost)
i. Research by outside third party vendors/consultants/attorneys
j. Common witness expenses including travel
k. Translation costs
l. Bank or financial institution charges
m. Investigative services
n. Claims Administrator charges
o. Special Master charges.

opportunity to take the requisite steps to assert their objections to these non-taxable cost reimbursement proceedings in the Court in a timely manner to preserve their appellate rights. The Class Members, including Objector, have been denied that right to due process with regard to the *instant* Motion, and the previous 5 *ex parte* reimbursement motions.

The failure to provide notice and opportunity to be heard on this cost reimbursement Motion is also in complete conflict with the Court's own sound reasoning in its December 28, 2011 *Order and Reasons As to the Motion to Establish Account and Reserve for Litigation Expenses (Rec.Doc. 4507)* creating a common benefit "hold-back" fund:

> "The Court does not at this time decide whether to award <u>common benefit</u> fees <u>or</u> <u>expenses</u> to the PSC. Those matters are reserved for another day. But, it is necessary to establish a mechanism to create a fund that could potentially be available to pay such fees and <u>expenses</u> if and when deemed appropriate. *<u>Before</u>* *<u>any such awards are made</u>*, *<u>there will be adequate due process given</u>*, *<u>with notice</u>* *<u>and opportunity to be heard</u>* on issues relating to *<u>any request</u>* for <u>disbursements</u> <u>from the common benefit fund</u>."

*See* R.Doc. 5022, p.3, ¶2.  Emphasis added.

Notice "provides the structural assurance of fairness that permits representative parties to bind absent class members . . . [as well as] an opportunity for class members to participate in the litigation, to monitor the performance of class representatives and class counsel, and to ensure that the predictions of adequate representation made at the time of certification are fulfilled." *See MANUAL FOR COMPLEX LITIGATION*, note 22, § 21.31, at 285 (4th ed. 2004).

Because the Motion is submitted on an *ex parte* basis without the mandatory notice directed to Class Members, Objector respectfully believes the Court is improperly relying upon sealed summary expense reports prepared by an accountant who was retained and paid exclusively by the Liaison Counsel. Those sealed summary reports were also presented to the Court on an *ex parte* basis by Liaison Counsel.  No sworn testimony is being taken, no

7

depositions have been offered, and no affidavits were filed attesting to the accuracy or fairness of the proposed reimbursement allocation. Only a "declaration" by Co-Liaison Counsel Stephen M. Herman (R.Doc. 13281-2) was attached to the Motion, and that declaration only purports to attest to the accuracy of another document (R.Doc. 13281-3) which is a list of "PSC Assessments" that is undated and provides absolutely no details other than the names of 18 law firms who allegedly contributed or were assessed $100,000 each. *See, In re High Sulfur Content Gasoline Products,* 517 F.3d 220 (5th Cir.2008).

No supporting expense records, details or essential information of any nature have been submitted into the public record with the Motion seeking reimbursement of an additional $1.8 million dollars for "shared expenses." The Motion did attach, however, an August 8, 2014 *ex parte* correspondence submitted to the Court which states without any detail that the PSC's current "*monthly expenditures for the past 2 months have averaged over $500,000.00 for operating costs.*" *See*, R.Doc. 13281-1.

Without access to any supporting records, it is impossible for Class Members, including Objector, to evaluate whether the requested reimbursement is fair and reasonable and is properly justified. *See*, Louisiana Rules of Professional Conduct, Rule 1.5 which says, in part, a lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an *unreasonable amount for expenses.* In a class action certified under Rule 23 of the Federal Rules of Civil Procedure, absent class members are considered represented by class counsel unless they choose to opt out. *See, Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1207 n. 28 (11th Cir.1985)(citing *Van Gemert v. Boeing Co.,* 590 F.2d 433, 440 n. 15 (2nd Cir.1978) (absentee class members treated as parties, and therefore as clients, for purposes of assessing attorney's

fees), *aff'd*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)).  Objector clearly has not opted-out.

FRCP Rule 23(h)(2) expressly provides Class Members the standing and right to object to this *ex parte* Motion for reimbursement of nontaxable cost.  Because Members of the Class have an interest in the arrangements for payment of Class Counsel whether that payment comes from the class fund or is made directly by another party, notice is required in all instances. *See* FRCP Rule 23(h), Advisory Committee Notes to 2003 Amendments.

Respectfully, the Motion should be denied for failure to direct notice of the Motion to the Class Members.

2.  **Class Members have not been afforded the opportunity to examine Class Counsels' non-taxable cost reimbursement Motion and its supporting evidence, inquire into the bases for various charges, and ensure they are adequately documented and supported**

Allowing Class Members the opportunity to thoroughly examine Class Counsel's nontaxable cost reimbursement motions, inquire into the bases for various charges, and ensure they are adequately documented and supported is essential for the protection of the rights of Class Members.[4]  It also ensures that the Court, acting as a fiduciary for the absent Class Members, is presented with accurate, and thoroughly reviewed, tested, and audited information to evaluate the reimbursement of tens of millions of dollars in shared expenses to the ECC and CBA. *See, In re: Mercury Interactive Corp. Sec. Lit.*, 618 F.3d 988, 994 (9th Cir. 2010).

Additionally, because the expense summaries are being submitted *ex parte*, Class Members, including Objector, are not able to be present to confirm or challenge Class Counsels' statements about the accuracy, legitimacy or fairness of the expenses being reimbursed.  And, without seeing the details of Class Counsels' reimbursement proposal, it is impossible for Class

---

[4]  Currently, the Shared Expense records supporting the *instant* Motion and the Court's previous decisions on reimbursing almost $30 million dollars to the ECC and CBA are sealed from Class Members' and public view.

Members to evaluate whether it is properly justified.  *Ex parte* proceedings are an exception to

the rule in our judicial system and contrary to its adversarial nature. *See, In re High Sulfur*

*Content Gasoline Products,*  517 F.3d 220 (5th Cir.2008), citing *McKinney v. Paskett*, 753 F.

Supp. 861, 863 (D. Idaho 1990) ("The petitioner in this civil proceeding seeks unilateral in

camera secrecy. This clearly flies in conflict with . . . the rules of civil procedure which allow ex

parte hearings only in emergency matters.")."  The Fifth Circuit insists on full transparency in

*High Sulfur*.  "Attorneys' fees, after all, are not state secrets that will jeopardize national security

if they are released to the public." *High Sulfur*, 517 F.3d at 230.

Although exacting judicial review of fee applications may be burdensome, it is

"necessary to discharge the [court's] obligation to award fees that are reasonable and consistent

with governing law." *In re High Sulfur Content*, 517 F.3d at 228, *citing Manual for Complex*

*Litigation* § 14.231 (4th ed. 2004).

> "On a broad public level, fee disputes, like other litigation with millions at stake,
> ought to be litigated openly. Attorneys' fees, after all, are not state secrets that
> will jeopardize national security if they are released to the public. As The Third
> Circuit has noted, "'[p]ublic confidence [in our judicial system] cannot long be
> maintained where important judicial decisions are made behind closed doors and
> then announced in conclusive terms to the public, with the record supporting the
> court's decision sealed from public view.'" *United States v. Cianfrani*, 573 F.2d
> 835, 851 (3d Cir. 1978). From the perspective of class welfare, publicizing the
> process leading to attorneys' fee allocation may discourage favoritism and
> unsavory dealings among attorneys even as it enables the court better to conduct
> oversight of the fees. If the attorneys are inclined to squabble over the generous
> fee award, they are well positioned to comment — publicly — on each other's
> relative contribution to the litigation."

*In re High Sulfur Content,* 517 F.3d at 228.  Emphasis added.

Objector avers that even so-called interim, interlocutory and piecemeal motions for

reimbursement of tens of millions of dollars in expenses should receive the same exacting

review, including examination by Class Members.

It appears no disinterested court officer has been working with the Court to review, audit, or test the voluminous expense records for potential abuse or other inappropriate billing practices.  Any inaccurate or inappropriate billing is unreasonable and unfair to the Class Members who must not only certify that the documents and information they submit to the Deepwater Horizon Economic Claims Center ("DHECC") are accurate and correct, but must also have their submissions subjected to layers of disinterested review, auditing, testing, investigation and confirmation - all designed to discourage, detect and prevent any inappropriate, inaccurate, and fraudulent claims.

It is respectfully averred that Mr. Philip A. Garrett is not a disinterested officer of the Court as he is retained and paid exclusively by Co-Liaison Counsel.  The lawyers are his clients. Mr. Garrett was not an independent selection and appointment of the Court. *See, generally, In re Diet Drugs (Phentermine/Fenfluramine /Dexfenfluramine) Products Liability Litigation*, MDL No. 1203, No. 99-20593, 2010 WL 3292787 (E.D. Pa. Aug. 19, 2010) ("Phen-Fen Litigation") (discussing background of MDL relevant to common benefit attorneys' petition for reimbursement of fees and expenses and stating that "[t]he [Plaintiff's Management Committee] and Common Benefit Attorneys are required to file periodically reports setting forth the amount of time they spent on common benefit activities, as well as the hourly value of that time. . . . [A] C.P.A. was appointed by the court to audit these time and expense reports."). Emphasis added. As will be explained below, Mr. Garrett, in addition to not being a truly disinterested officer of the Court, does not perform any legal bill auditing of the ECC and CBA time and expense reports.

There are currently no less than 3 Multi District Litigation ("MDL") proceedings pending in the Eastern District of Louisiana where Philip A. Garrett, CPA, has been retained by the

Plaintiffs' Liaison Counsel "*to assist and provide accounting services to Plaintiffs' Liaison Counsel, the Plaintiffs' Steering Committee, and the Court…*", including:

    a.    *In re Chinese-Manufactured Drywall Products Liability Litigation* – MDL 2047
    b.    *In re Oil Spill by the Oil Rig "Deepwater Horizon"* – MDL 2179
    c.    *In re: Pool Products Distribution Market Antitrust Litigation* – MDL 2328

In each of those virtually identical PTO No. 9s, a member of the Herman Herman & Katz, LLC law firm is identified as Plaintiffs' Liaison Counsel or Co-Liaison Counsel. *See* **Exhibits 1 - 3**. Although no retainer agreement or letter has been found in the public record, it is reasonable to presume from the facts in the record that the Herman Herman & Katz law firm and/or its members are clients of Philip A. Garrett, CPA in each of these proceedings, including MDL 2179. Mr. Garrett cannot be considered a disinterested officer of the Court acting to protect the interests of the absent Class Members.

Additionally, Mr. Garrett admittedly does not perform actual review, auditing and analysis intended to identify inappropriate and/or otherwise questionable expenses. In each of the MDL proceedings, there is a virtually identical Pre-Trial Order No. 9 ("PTO No. 9") where Mr. Garrett is always identified in paragraph "(3)" of the "General Standards" as being retained by Plaintiffs' Liaison Counsel or Co-Liaison Counsel. *See* **Exhibits 1 - 3**. This fact is important because Mr. Garrett, as will be shown below, performs the same "accounting only" tasks in each case.

In this MDL 2179, Mr. Garrett provides accounting services where he compiles the attorney time and expense submissions into monthly reports for his clients, Plaintiffs' Liaison Counsel, who then present those monthly summary reports, *ex parte*, to the Court under seal from public view. Not even the BP settling parties are allowed to view those sealed monthly reports.

Mr. Garrett's own affidavit accompanying the February 2, 2013 *ex parte* motion for reimbursement from the Common Benefit Fee Fund of over $22 million dollars in shared expenses specifically says:

> "In connection with this assignment, I have been asked to conduct a <u>limited</u> <u>review</u> of only the cash assessments and the shared costs. The cash assessments were incurred by each law firm, and used by the PSC to pay the shared costs. ...."

*See* **Exhibit 4,** January 22, 2013 Affidavit, p.2, ¶4 (R.Doc, 8427-1). Emphasis added.

Mr. Garrett further attests that his limited review work involved a review of these expense reports to determine whether they complied with the dictates of PTO No. 9. *See* **Exhibit 4**, p.2, ¶5. PTO No. 9 has <u>no</u> guidelines, procedures, protocols and methods to perform a review, test, audit, or confirmation of the appropriateness and accuracy of time and expense submissions, nor does it have procedures or methodology for deterring, detecting, or preventing any inappropriate billing.

On May 21, 2014, Mr. Garrett submitted an affidavit in advance and support of a motion for attorney's fees in MDL 2047, the *Chinese Drywall Litigation. See* **Exhibit 5**. In his affidavit, Mr. Garrett admits that his "*... work as the Court-appointed "accountant" <u>primarily</u> involved a review of these time and expense reports <u>to determine whether they complied with the dictates of PTO No. 9</u>.*" *See* **Exhibit 5**, p.2, ¶6. Again, the PTO No. 9 in that proceeding is virtually identical to the PTO No. 9 in this MDL 2179. In fact, the time and expense reporting guidelines and procedures contained in each of these reproduced pre-trial orders are interchangeable except for some language about bellwether cases.

Mr. Garrett further attests that the collective pre-trial orders issued by the MDL 2047 court established the procedure for reviewing all submissions of time and expense, and as part of his duties to assist in compiling submissions and making reports. Among other things

disallowed from inclusion in those submissions were items not properly coded in accordance with PTO No. 9; items of expense for which proper receipts or other proof of payment had not been submitted; and, any time or expense incurred in connection with the litigation of individual cases unless authorized by a member of the Plaintiffs' Steering Committee or Fee Committee in MDL No. 2047.  *See* **Exhibit 5**, p.3, ¶8.

Of great relevance to the *instant* Objections and Opposition, Mr. Garrett testifies in his MDL 2047 affidavit that:

> "Under PTO Nos. 9 and 9A, my determination as to whether to disallow any item of time and expense from inclusion in allowed time or expenses <u>was a</u> <u>matter of procedural convenience for the Court</u> and <u>not a determination on the</u> <u>merits.</u> I made no subjective judgment regarding the value of any time allowed and attempted to judge solely upon objective criteria. Both orders made it clear that a disallowance by me was without prejudice to a determination by the Court of the merits of any submission at a time and manner determined by the Court."

*See* **Exhibit 5**, p.3, ¶9. Emphasis added

Since the PTO No. 9 in each case (MDL 2047 and MDL 2179) are virtual mirror-images of each other, it is respectfully submitted that Mr. Garrett's determination in MDL 2179 as to whether to disallow any item of time or expense has also been a *"procedural convenience for the Court"* without any determination on the merits of the time and expenses, or their appropriateness and accuracy.

In paragraph 12(a) – (d) of his affidavit, Mr. Garrett attests to the "protocol" he used to review the time and expense submissions.  In summary, the protocol involved a review to determine if it complied with the *form or procedural requirements of PTO No. 9*; examined the submissions "rigorously" to determine if there were circumstances present which would require disallowance of items of time and expense *under the terms of PTO No. 9*; checked the arithmetic accuracy of the summaries of time and expense submitted; and, communications with various

14

counsel took place if a counsel requested that Mr. Garrett modify certain time or expenses to amend or correct any submission downward pursuant to that court's PTO No. 28.

Mr. Garrett's most recent affidavit in MDL 2047 to support attorney's fees essentially duplicates his January 22, 2013 affidavit and other affidavits to this Court in this MDL 2179 in support of the *ex parte* motions to reimburse shared expenses: *Mr. Garrett is only reviewing time and expense reports to determine if they comply with the form and procedural requirements of PTO No. 9.* There is absolutely no mention of any legal bill auditing activities, protocols, procedures, or methodology to examine time and expense submissions to determine if they are accurate and appropriate, and if they reflect the exercise of adequate billing judgment, to insure that expenses for such items as mileage, hotels, airfare, and meals were necessary, reasonable and actually expended in connection with genuine work that was performed for the common benefit of the Class. Mr. Garrett's affidavits also never identify any controls, policies, procedures, or practices in place to discourage, detect or prevent inaccurate and inappropriate time and expense submissions, apparently because there are none.

Because the PTO No. 9s in each case are identical and because Mr. Garrett's affidavits in each case consistently show he is performing a limited review of time and expense records only for compliance with PTO No. 9, and because he is retained by the same counsel to perform identical tasks in each case, it is reasonable to conclude that the sealed time and expense records in the *instant* matter have not received and are not receiving any substantive legal bill review, test or audit of any kind.

### a.     "Interim Reimbursement"

The *instant* Motion is specifically seeking "interim reimbursement" of nontaxable costs on an "interlocutory basis." Objector does not fully understand the significance or not of this

language in the Motion as these terms have not appeared in the 5 previous *ex parte* motions for reimbursement or related Orders.  Objector is aware the Phen-Fen Litigation discussed above allowed for an "interim" fee and cost award.  However, that court also allowed time for the filing of objections to the petitions and responses to the objections. The court even allowed the objectors to conduct limited discovery and limited supplemental briefing before holding a two-day fee hearing which resulted in an "interim" fee and cost award.  *See*, *In Re Diet Drugs (Phentermine, Fenfluramine)*, 553 F. Supp. 2d 442, 459 (E.D. Pa. 2008). .

The significance here is that, even though the Phen-Fen Litigation award involved "interim" fees and nontaxable costs, it was not awarded until those class members were given what the Class Members in MDL2179 have been denied - the opportunity to file objections, conduct limited discovery, file supplemental memoranda, and a hearing on the Motion.

The *instant* Motion should be denied because Class Members, including Objector, have not been allowed to examine, inquire about, and object to or challenge the Motion and the billing records that allegedly support it.

3.     **Class Members, including Objector, have standing to object to the Motion**

a. **FRCP Rule 23(h)(2) specifically allows Class Members to object**

FRCP Rule 23(h)(2) expressly provides Class Members, including Objector, the standing and right to object to this *ex parte* Motion for reimbursement of nontaxable cost.  Members of the Class have an interest in the arrangements for payment of Class Counsel whether that payment comes from the class fund or is made directly by another party.

FRCP Rule 23(h)(2) unambiguously states that a class member may object to a motion for attorney's fees and nontaxable costs.  Kevin LeMaire is a Class Member, and he has standing to bring this objection.

**b.    The Settlement Funds and the Common Benefit Fee Fund are a Constructive Common Fund**

While it is correct the BP Parties are paying the expenses and attorney's fees out of their own pocket and not through the Economic and Property Damages Class Settlement fund, the reality is that the fund, the expenses and the fees are paid from the same source - the BP Parties. The settlement for the Class and the agreement on attorney fees is absolutely a package deal.[5] *See, MANUAL FOR COMPLEX LITIGATION*, 4th Ed. (2008), § 21.71 at 525 ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorneys' fees and expenses, both amounts must be disclosed to the class. Moreover, the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel. The total fund could be used to measure whether the portion allocated to the class and to attorneys' fees is reasonable.").

That arrangement is "for practical purposes, a constructive common fund," and clearly does impact Objector's and Class Members' interests. Other circuits have held that a class plaintiff does have standing to appeal an attorney fee award in such a situation. *See, In re General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 819-21 (3d Cir. 1995). In *General Motors Pick-Up*, the Third Circuit reasoned that a defendant is concerned only with how much it must pay, not who gets the money, and thus a defendant may be willing to pay more in attorney fees if it can pay less overall. See *Id.* at 819-

---

[5] Indeed, Part 14 of the Economic and Property Damages Settlement Agreement states in relevant part:

"14. **PLAINTIFFS' COUNSEL'S ATTORNEY'S FEES AND COSTS.**

14.1. *As a material term and condition precedent to a Settlement Agreement, the BP Parties and the PSC must reach agreement regarding the amount of attorneys' fees and costs for the common benefits to the putative Economic Class*, which will be subject to final determination and approval by the Court. ..." See R.Doc. 6430, p.79. Emphasis added.

20.  Even if class counsel's attorney fees are not to be paid from the class settlement, according to the Third Circuit, the aggregate amount of the attorney fees and the class settlement payments may be viewed as "a constructive common fund." *Id.* at 819-21.

Class Counsel in MDL 2179 actually agree with Objector on this point. The following is taken directly from Class Counsel's own motion (R.Doc 6512-1) to establish their Common Benefit Fee Fund in this case:

> "Whether common benefit fees are paid by a defendant on top of settlement payments paid directly to class members or are held back from the recoveries paid directly to class members, such common benefit fees are a necessary component of what the defendants are paying to resolve the underlying tort claims of the class. *See, e.g., Boeing Co. v. Van Gembert,* 444 U.S. 472, 478 (1980) ("[T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). This *"fund as a whole" or common fund, including the amounts going to pay the common benefit attorneys,* represents the total amount that the defendant is required to pay to "resolve" the claims of the class."

*See* R.Doc. 6512-1, p.4. Emphasis added.[6]

Any expense award obtained *ex parte* by Class Counsel causes harm to Mover and all Class members by denying critical due process rights under FRCP Rule 23(h)(1) and (2). Additionally, Objector is allowed to evaluate whether the requested nontaxable cost reimbursement is fair and reasonable and is properly justified.  *See,* Louisiana Rules of Professional Conduct, Rule 1.5 which says, in part, a lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an *unreasonable amount for expenses.*

Any expense or fee monies obtained through the use of inappropriate and inaccurate time and expense submissions also causes harm to Mover and all Class Members and could be considered property of the Class Members, and any injury they suffered could be at least

---

[6] *Also see* footnote 3on page 5 of R.Doc 6512-1, last sentence: "… *But although the common benefit fee mechanisms differ in whether the fees will be paid from the settlement trusts or the Common Benefit Fund, in both situations, the common benefit fees benefit the class and are being paid to resolve Deepwater Horizon claims.*"  Emphasis added.

partially redressed by allocating to them a portion of that award.  Unfair and improper windfall profits or unreasonable expenses realized through inappropriate and inaccurate expense submissions are in conflict with the interests of the Class.

Objector, as a Class Member, has standing to bring these objections even though the costs are payable independent of the class settlement.

## CONCLUSION

Respectfully, the Court should acknowledge the significance and language of Rule 23(h) and find that there is no reason to disregard or to try to avoid the Rule's provisions that notice of the Motion must be provided to the Class Members, and that the Class Members must be afforded an opportunity to object to the Motion.

Although a district court has broad discretion to determine attorneys' fees, it abuses that discretion if it makes an error of law. *See, In re: Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 993 (9th Cir. 2010) (holding that the district court abused its discretion when it erred as a matter of law by misapplying Rule 23(h) in setting the objection deadline for class members on a date before the deadline for lead counsel to file their fee motion), *citing Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.").

Respectfully, the Motion must be DENIED because notice of the Motion has not been directed to the Class Members, and the Class Members, including Objector, have not been allowed an opportunity to examine the Motion and all supporting expense record submissions, and to present their objections to the Motion.

Respectfully submitted,

By:  _____

Kevin LeMaire, *in proper person*
16438 Spanish Oaks Boulevard
Prairieville, Louisiana 70769
Telephone: (225) 335-5521
Email: kuhnrod@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of August 2014, the foregoing Objections and Opposition and its attachments were served on Co-Lead Class Counsel and Counsel for BP Parties via hand delivery and to all others listed below via email:

Stephen J. Herman                    <u>**Served By Hand Delivery to His Office**</u>
HERMAN HERMAN & KATZ LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
*Co-Lead Class Counsel*

James Parkerson Roy
DOMENGEAUX, WRIGHT, ROY & EDWARDS, LLC
556 Jefferson Street, Suite 500
Lafayette, LA 70501
E-Mail: jimr@wrightroy.com
*Co-Lead Class Counsel*

Don K. Haycraft                      <u>**Served By Hand Delivery to His Office**</u>
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
*Co-Counsel for BP Entities*

Kevin M. Downey
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
*Co-Counsel for BP Entities*
E-Mail: kdowney@wc.com

Kevin LeMaire, *in proper person*