UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | ) ) ) ) ) | MDL NO. 2179 SECTION: J JUDGE BARBIER |
| THIS DOCUMENT RELATED TO: 14-1525 | ) ) ) | MAG. JUDGE WILKINSON |

## OPPOSITION TO MOTION TO DISMISS

**NOW COMES** Plaintiff**,** Edward Wisner Donation (hereinafter "Donation" or "Wisner") through undersigned counsel, who submits the instant Opposition to BP's Motion to Dismiss [Rec. Doc. 13177].

**I. The Access Agreement Supports The Breaches of Contract Alleged in the Complaint.**

*Federal Rule of Civil Procedure* 8(a)(2) requires nothing more than "a short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court has explained:

> Other provisions of the Federal Rules of Civil Procedure are inextricably linked to Rule 8(a)'s simplified notice pleading standard. Rule 8(e)(1) states that "[n]o technical forms of pleading or motions are required," and Rule 8(f) provides that "[a]ll pleadings shall be so construed as to do substantial justice." Given the Federal Rules' simplified standard for pleading, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim. See *Conley, supra*, at 48, 78 S.Ct. 99 ("The Federal Rules

1

> reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits").

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513-14, 122 S. Ct. 992, 998-99, 152 L. Ed. 2d 1 (2002).

Notice pleading for a breach of contract claim is limited to identifying the contract, the provisions that were violated, facts sufficient to identify an alleged breach, and the relief sought. *Sherhill v. Cellco P'ship*, No. 08-1111, 2008 WL 9408954 (E.D. Pa. 2008) ("Plaintiff's Complaint is sufficient to put Defendant on notice of those claims against it, to make Defendant aware of the facts underlying those claims, and to make Defendant aware of the legal effect of the contract he is pleading.").

Wisner has identified the contract at issue (Access Agreement), identified the specific clauses in the contract that were breached, identified the factual bases for each of the breaches, and clearly spelled out the requested relief. Wisner has filed an exhaustive Motion for Expedited Preliminary Injunction that attached declarations, outlined the factual basis for injunctive relief, and the legal bases. BP filed an opposition to the motion replete with its own declarations.

If BP can respond to the Expedited Motion for Preliminary Injunction, then BP has enough information and notice to properly respond to the Complaint. *See Facility Wizard Software, Inc. v. Se. Technical Servs., LLC*, 647 F. Supp. 2d 938, 950 (N.D. Ill. 2009) ("A plaintiff's allegations must be specific enough to allow the defendant to draft a responsive pleading by giving the defendant fair notice of the claims and the basis for the claims."). Rather than re-stating the operative terms of the policy, the argument, and BP's reimbursement practices, Plaintiffs adopt and incorporate by reference all law, argument, and facts alleged in Wisner's *Memorandum in Support of Expedited Motion for Preliminary Injunction* [Rec. Doc.

13002-1] and Wisner's *Reply In Support of Expedited Motion for Preliminary Injunction* [Rec. Doc. 13249-2]. Wisner limits its argument to those points BP expresses in its *Motion to Dismiss* [Rec. Doc. 13177] that were not raised in its *Opposition to the Expedited Motion for Preliminary Injunction* [Rec. Doc. 13201].

### A. The Complaint States a Claim for Breach of Contract By Unilateral Withdrawal.

BP's argument that it could not breach the Access Agreement, as a matter of law, by unilaterally cancelling it represents a fundamental misreading of the scope and purpose of the Access Agreement and the nature of the re-oiling on the Wisner Property. The Complaint alleges that BP withdrew while there is still significant documented oil on the Property. By unilaterally withdrawing, but at the same time providing Wisner with the right to assess and search for oil, BP breached the Access Agreement.

There is a reason that the Access Agreement states that Wisner can cancel the Access Agreement at will, but is silent as to any such right for BP. Because Wisner is endowed with the right to assess, the right to remediate, and the right to direct BP's remediation, the right to cancel the lease also belongs to Wisner. Allowing BP the opportunity to unilaterally cancel the Access Agreement would undermine BP's obligations and Wisner's rights to enforce them.

The duration of the Access Agreement is tied to the terms of the agreement which, in other words, means that it is tied to the completion of BP's obligations. The more obvious inquiry is why the parties would agree to language that expressly gave Wisner the right to terminate the Agreement but not BP. Where Wisner's right to terminate at will is express and unequivocal, BP is arguing from a position of silence – it seeks relief based upon nuance and speculation, two positions not given any real weight in a Rule 12(b)(6) motion. The contrast could not be more clear – Wisner had the right of unilateral cancelation; BP did not. LA. CIV.

CODE Art. 1779 ("A term is presumed to benefit the obligor unless the agreement or the circumstances show that it was intended to benefit the obligee or both parties.").[1]

### B. The Complaint States a Claim for Failing to Reimburse Wisner for Access Agreement Related Expenses and Failing to Remove Debris From the Property.

BP knows what it owes Wisner in reimbursements under the Access Agreement. After all, BP receives the submissions, processes them, and then sends Wisner a spreadsheet of what it will pay and what it will not. *BP Reimbursement Spreadsheet*, attached as Exhibit "A". As of today, BP owes Wisner $310,910.54. *Id.* While the parties have agreed to resolve some of these in an effort to pare down the dispute, and defer the discussion until after the preliminary injunction ruling, BP has a clear and present idea of what is outstanding to satisfy a motion to dismiss.

The Complaint also states a claim for BP's failing to remove debris and other items from the Wisner property. The Complaint identifies the clause in the Access Agreement that obligates BP to remove it and even identifies the specific items: "failing to remove debris and objects placed on the donation property, including Iron anchors, t-posts, snares, dirty boom, lightening rods which become hazards on the beach, and failed to remove them after verbal and written demand." *Complaint*, ¶ 35(j). This is enough to state a claim for notice pleading purposes; if BP

---

[1] Some courts have held that where no term to complete the obligation is specified in the contract, then a "reasonable" timeframe will be imposed. *See Loewer v. Texas Gas Transmission Co.*, 615 F. Supp. 1, 2 (W.D. La. 1984) (holding that where a contract does not have a term for performance, then the court will look to what is "a reasonable time for performance"); *Freeport Sulphur Co. v. Aetna Life Ins. Co.*, 206 F.2d 5, 7 (5th Cir. 1953) ("Since no term for the option is provided in the contract, it is terminable after a reasonable time."). For all of the reasons previously stated, where so much of BP's oil remains buried on the Wisner property, no reasonable time has elapsed.

wants to know coordinates (which have already been given to it) or inspect the beach itself, then it can propound discovery.[2]

### C. The Prayers for Relief Are Supported By The Access Agreement.

BP's arguments in addressing the prayers for relief, *BP Motion*, at 15-18, are redundant of its arguments for failing to state a claim. The arguments depend on however this Court will rule on the interpretation of the Access Agreement. If the Court finds that the Access Agreement obligates BP as argued by Wisner, then the prayers for relief are legally available. Accordingly, Wisner adopts and incorporates by reference all law, argument, and facts alleged in Wisner's *Memorandum in Support of Expedited Motion for Preliminary Injunction* [Rec. Doc. 13002-1] and Wisner's *Reply In Support of Expedited Motion for Preliminary Injunction* [Rec. Doc. 13249-2].

## II. The Access Agreement Complaint Does Not Split Claims.

BP spends much of this argument either complaining about the number of different lawsuits or by complaining that the relief sought in the Access Agreement Complaint overlaps with the OPA and general maritime relief in the other suits. But neither of these arguments amount to improper claim splitting. If anything, it is the opposite situation – while there may be different complaints that may overlap or be redundant, it does not matter because all of the other pleadings are stayed within the MDL, and there is no risk that resolving the Access Agreement breach of contract claims impedes the OPA and general maritime claims. In other words, there is no risk that BP will be subject to multiple conflicting judgments from different venues, since all pleadings are before the same Court.

---

[2] BP makes a glancing argument that the Access Agreement does not allow recovery for lost rents or oyster lease. However, these are merely consequential damages as a result of BP's breach. LA. CIV. CODE Art. 1994.

Claim splitting has been described by another district court in this Circuit as follows:

> [T]he rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action. In a claim splitting case, the second suit will be barred if the claims involves the same parties and arises out of the same transaction or series of transactions as the first claim.

*Ameritox, Ltd. v. Aegis Sciences Corp.,* No. 08–1168, 2009 WL 305874, *4 (N.D. Tex. 2009).

Dismissal for claim-splitting is appropriate when "the only explanation for the duplicative litigation ... is to expand Plaintiff['s] procedural rights, upset the trial schedule, harass Defendants, and avoid the requirements of amendment of Plaintiff['s] claims." *Southern Snow Mfg. Co. v. SnoWizard Holdings, Inc.,* Nos. 06–9170, 09–3394, 10–0791, 11–1499, 2013 WL 393486, *12 (E.D. La. 2013). *See also Hearn v. Bd. of Supervisors of Hinds Cnty., Miss.*, No. 12-417, 2013 WL 1305586 (S.D. Miss. 2013).

BP appears to struggle with the concept that a single party can undertake obligations from different sources and that these separate obligations can be pursued at different times through different vehicles. In Louisiana, this is known as a "conjunctive obligation." La. Civ. Code art. 1807. A conjunctive obligation recognizes that an obligor may obligate itself to the obligee in numerous different ways, with each obligation being treated differently and separately actionable. *See, e.g., Latter v. State*, 621 So.2d 1159 (La. App. 1st Cir. 1993) (finding that where lease divided rent into 60 equal installments plus utilities, and there was no acceleration clause, the obligation was conjunctive, with each installment being a separate obligation, thereby allowing prescription to run separately for each installment as it became due, rather than at end of lease term).

Here, the obligations are even more strikingly separate because they arise out of two different sources of obligations – one from contract and the other from OPA and general

6

maritime law.  In fact, the obligations under the Access Agreement are much more expansive that what may well be actionable under OPA and gml, such as the right for reimbursement of all experts and testing, the right to direct and control remediation efforts, the right to assess oil on the property indefinitely – or at least until the re-oiling stops.  Moreover, the Complaint in this case does not name the other BP entities or the Halliburton and Transocean entities.

Ultimately, however, and even assuming, *arguendo*, that some kind of claim splitting did exist, this Court is empowered to consolidate all of the filings and sever the Access Agreement dispute to proceed forward while allowing the OPA and general maritime claims to be subject to the MDL stay.  FED. R. CIV. PROC. 21 ("Any claim against a party may be severed and proceeded with separately."); FED. R. CIV. PROC. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.").

Since the different pleadings are all before the same judge, any risk of Wisner achieving some sort of second bite at the apple is unfounded – especially since all of the other pleadings are stayed within the MDL.  Nonetheless, as expressed at the Court's status conference, Plaintiff would be amenable to whatever procedural mechanism the Court feels appropriate.[3]  The issue has never been whether to proceed with the Access Agreement claims but how to do it procedurally.

### III. Any Alleged Argument As to Lack of Capacity Has Been Mooted.

In its last argument, BP alleges that the Donation did not have procedural capacity to bring this action because the Trustee was the proper party.  *BP Motion to Dismiss*, at 21.  The

---

[3] BP appears to have forgotten the discussion that took place at the status conference on this very matter in which it attended, where this Court opined that substantively the complaints were different and that it was a matter of finding the simplest procedural solution to proceed forward.

Donation amended the Complaint to include the Trustee and beneficiaries for reasons unrelated to BP's argument. [Rec. Doc. 13240] BP consented to the amendment. As a result, the filing mooted this argument.

## CONCLUSION

For the above reasons, Wisner respectfully moves the Court to deny BP's Motion to Dismiss.

Respectfully submitted,

/s Soren Gisleson

| | |
|---|---|
| Stephen J. Herman, La. Bar No. 23129 | James Parkerson Roy, La. Bar No. 11511 |
| Soren E. Gisleson, La Bar No. 26302 | Bob Wright La Bar No. 13691 |
| HERMAN HERMAN & KATZ LLC | DOMENGEAUX WRIGHT ROY |
| 820 O'Keefe Avenue | & EDWARDS LLC |
| New Orleans, Louisiana 70113 | 556 Jefferson Street, Suite 500 |
| Telephone: (504) 581-4892 | Lafayette, Louisiana 70501 |
| Fax No. (504) 569-6024 | Telephone: (337) 233-3033 |
| E-Mail: sherman@hhkc.com | Fax No. (337) 233-2796 |
| E-Mail: sgisleson@hhkc.com | E-Mail: jimr@wrightroy.com |

Calvin C. Fayard, Jr. La. Bar No. 5486
C. Caroline Fayard La. Bar No. 30888
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.com

Fred Herman La Bar No. 6811
Law Offices of Fred Herman
1010 Common St., Suite 3000
New Orleans, LA 70112
Phone: 504-581-7070
Fax: 504-581-7083

Walter Leger, Jr. La. Bar No. 8278
Leger & Shaw
600 Carondelet St., 9th Floor
New Orleans, LA 70130
Phone: (504) 588-9043
Fax: (504) 588-9980

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been served upon all counsel of record *via* Lexis-Nexis File & Serve in accordance with Pre-Trial Order No. 12, and filed in the record *via* the Court's ECF electronic filing system, and *via* E-Mail and by U.S. Mail this 19th day of August, 2014.

**  /s/Soren Gisleson**