**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf Of Mexico, on April 20, 2010** | * * * | **MDL No. 2179** **SECTION J** |
| **This Filing Applies to:** | * * | **JUDGE BARBIER** |
| **Nos. 13-706, 13-810, 13-1143, 13-1185, 13-1222, 13-1386 and 13-2006** | * * * * | **MAGISTRATE JUDGE SHUSAN** |

* * * * * * * * * * * * * * * * * * * * * * *

**CLASS COUNSEL'S REPLY BRIEF**
**IN FURTHER SUPPORT OF MOTION TO STRIKE AFFIRMATIVE DEFENSES AND MOTION *IN LIMINE* REGARDING POTENTIAL THIRD-PARTY FAULT AND SUPERSEDING CAUSE DEFENSE**

The OPA Causation Test Case Plaintiffs, by and through the Plaintiffs' Steering Committee, respectfully submit the following memorandum, in accord with the Court's Order of July 17, 2014 [Doc 13154], in response to BP's Opposition [Doc 13269], and in further support of Plaintiffs' Motion to Strike Affirmative Defenses and Motion *in Limine* regarding the application of any alleged "superseding" cause defense [Doc 13108]:

**MAY IT PLEASE THE COURT:**

BP and the Plaintiff Steering Committee appear to agree that the OPA Test Cases are intended to determine the extent to which each specific Test Case Plaintiff suffered economic losses due, in whole or in part, to damage or loss to natural resources and other property resulting from the Macondo / *Deepwater Horizon* Incident.

The Affirmative Defenses pled by BP in its Answers to the Test Case Complaints, however, pose an additional inquiry, namely: Even if an OPA Test Case Plaintiff establishes

economic losses due to the destruction of natural resources or other property resulting from the Macondo Incident, *can BP nevertheless avoid some or all of its liability to such OPA Test Case Plaintiff for such losses by pointing to the "fault" of the U.S. Government or another party, or by claiming that such conduct constitutes a "superseding" cause.*

This inquiry is foreclosed by OPA as a matter of law.

Irrespective of any discovery that BP might wish to pursue, or evidence it might wish to present, it is legally and factually irrelevant:

- Whether the Moratoria and other changes in permitting in the wake of the Spill were or were not "foreseeable";
- Whether the Moratoria and other changes in permitting in the wake of the Spill were or were not "reasonable";
- Whether the Moratoria and other changes in permitting in the wake of the Spill were or were not "legal";
- Whether the U.S. was or was not at "fault" in its response to the disaster;
- Whether Transocean was partially at fault in causing the disaster; and/or,
- Whether Halliburton was partially at fault in causing the disaster.

The only relevant question under OPA is whether each OPA Test Case Plaintiff suffered economic losses that were due, in whole or in part, to the destruction or loss of natural resources or other property as a result of the Macondo / *Deepwater Horizon* Spill.

Therefore, and in accordance with Federal Rule of Civil Procedure 12(f)(2), the OPA Test Case Plaintiffs' Motion to Strike such Affirmative Defenses was filed within the required 21 days. Far from "premature", this motion seeks confirmation of a fundamental legal conclusion that will guide the discovery, presentation and consideration of legally and factually relevant evidence over the course of these proceedings.

Indeed, although opposing Plaintiffs' Motion, BP expressly admits that: (i) BP has no viable statutory defense under OPA Section 2703;[1] and (ii) it cannot avoid OPA liability as the Responsible Party under Section 2702 by pointing to the fault or alleged "fault" of unnamed and/or immune third parties.[2]

For these reasons, for the reasons stated in Plaintiffs' original Memorandum, and for the reasons further provided below, Plaintiffs' Motion should be granted.

[1] BP concedes that it "has never invoked Section 2703, which deals with a narrow set of complete defenses to spill liability addressing situations where a responsible party asserts it has no fault whatsoever for a spill." BP OPPOSITION [Doc 13269, at 23] (Aug. 8, 2014), at p.15. "Section 2703 establishes an affirmative defense where the 'discharge or substantial threat of a *discharge of oil* and the resulting damages [are solely caused by an act of God, etc.]' … BP has never argued that *the oil spill* was caused solely by any of the Section 2703(a)(1)-(4) situations." BP OPPOSITION, p.31 (emphasis in original).

[2] "OPA does not provide for the apportionment of damages among multiple responsible parties." BP OPPOSITION, p.8; *citing*, 33 U.S.C. §2710(b) (OPA does not permit the transfer of liability). BP "has never asserted, despite Halliburton's and Transocean's role in causing the spill, that BPXP should be wholly exonerated from OPA liability for spill caused injuries compensable under Section 2702." BP OPPOSITION, p.31.

# TABLE OF CONTENTS


Introduction . . . . . . . . . . . 1

Table of Contents . . . . . . . . . . 4

Table of Authorities . . . . . . . . . . 5

Plaintiffs' Burden to Establish Causation under the OPA Statute Does Not Equate to an Opportunity for the Responsible Party to Get a Second Bite at the Apple by Invoking a "Superseding" Cause Defense . . 7

BP Does Not Cite a Single Case Allowing a Responsible Party to Escape Liability for Damages Established under 33 U.S.C. §2702(b)(2)(E) by Pointing to an Alleged "Superseding" Cause . . . . . 9

Even Assuming *Arguendo* a General "Default" Application of Vague and Undefined Notions of "Proximate Cause", Such Rule Would Not Apply Where the Text, Structure and History of the Statute Expressly Reject Such an Application . . . . . . . . . . 11

BP Perpetuates in its Opposition the Fallacy that Damages Can Only Have One Factual and/or Legal Cause . . . . . . 13

The Coast Guard Rulings upon Which BP Relies Have No Precedential Weight or Authority . . . . . . . . . . 14

BP Admits that it Cannot Avoid OPA Liability as the Responsible Party by Pointing to the Fault or Alleged "Fault" of Other Parties . . . . 15

BP Admits that It Has No Statutory Defense Under OPA . . . . . 16

Plaintiffs' Motion to Strike Affirmative Defenses Was Timely Filed within the Required 21 Days . . . . . . . . . . 17

Conclusion . . . . . . . . . . . 18

Certificate of Service . . . . . . . . . . 20

# TABLE OF AUTHORITIES


**Page(s)**

Apex Oil Co., Inc. v. United States, 208 F.Supp.2d 642 (E.D.La. 2002) . . 12

Century Exploration of New Orleans v. United States, 745 F.3d 1168 (Fed. Cir. 2014) . . . . . . . . 7

Christensen v. Harris County, 529 U.S. 576 (2000) . . . . . . 15

CSX Transp., Inc. v. McBride, 131 S.Ct. 2630 (2011) . . . . . 12

In re: Deepwater Horizon, 808 F.Supp.2d 943 (E.D.La. 2011) . . . 12, 13

Dunham-Price Group LLC v. Citgo Petroleum Corp., No.07-1019, 2010 WL 1285446 (W.D.La. March 31, 2010) . . . . 7

Exxon v. Sofec Inc., 517 U.S. 830 (1996) . . . . . . . 10

Gatlin Oil Co. v. United States, 169 F.3d 207 (4th Cir. 1999) . . . 9-10

Gonzales v. Oregon, 546 U.S. 243 (2006) . . . . . . . 15

Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S.Ct. 1377 (2014) . 10, 12

Nguyen v. American Commercial Lines, Inc., No.11-1799, 2014 WL 3587490 (E.D.La. July 17, 2014) . . . . . . . 14

Pacific Operators Offshore LLP v. Valladolid, 132 S.Ct. 680 (2012) . . 12

Russello v. United States, 464 U.S. 16 (1983) . . . . . . 11

Sedco Energy v. M/V Margaret Chouest, 820 F.Supp. 1008 (E.D.La. 1993) . 7

In re Settoon Towing LLC, No.07-1263, 2009 WL 4730969 (E.D.La. Dec. 4, 2009) 7

Sun Oil Co. v. United States, 572 F.2d 786 (Ct. Claims 1978) . . . 7

Taira Lynn v. Jays Seafood Inc., 444 F.3d 371 (5th Cir. 2006) . . . 9

United States v. English, No.00-0016, 2001 WL 940946 (D.Haw. Mar. 28, 2001) . 12

United States v. Mead Corp., 533 U.S. 218 (2001) . . . . . . 15

United States v. Wong Kim Bo., 472 F.2d 720 (5th Cir. 1972) . . . 11

The Oil Pollution Act of 1990 (OPA), 33 U.S.C. §§2701, *et seq.*

33 U.S.C. §2702(a) . . . . . . . . 11, 13

33 U.S.C. §2702(b)(2)(E) . . . . . . . 11-13

33 U.S.C. §2703 . . . . . . . . 3, 11, 16-17

33 U.S.C. §2704(c)(1). . . . . . . . 11

33 U.S.C. §2710 . . . . . . . . 3, 15-16

FED. RULE CIV. PRO. 12(f)(2) . . . . . . . . 2, 17

Force and Davies, *Deepwater Horizon: Removal Costs, Civil Damages, Civil Penalties, and State Remedies in Oil Spill Cases,* 85 TUL. L. REV. 889 (March 2011) . 12

Goldberg, *OPA and Economic Loss: A Reply to Professor Robertson,* 30 MISS. C. L. REV. 203 (2011) . . . . . . 9

Brian T. Holmen, *Gatlin Oil Co. v. The United States: A Myopic View of OPA Liability,* 42 WM. & MARY L. REV. 1893 (2001) . . . 12

Vernon Palmer, *The Great Spill in the Gulf … and a Sea of Pure Economic Loss: Reflections on the Boundaries of Civil Liability,* 116 PENN. STATE L. REV. 105 (2011) . . . . . . 11-12

David W. Robertson, *The Oil Pollution Act's Provisions for Damages on Economic Loss,* 30 MISS. C. L. REV. 157 (2011-2012) . . . 12, 13

David W. Robertson, *OPA and Economic Loss: A Response to Professor Goldberg,* 30 MISS. C. L. REV. 217 (2011) . . . . . . 11-12

David W. Robertson, *Criteria for Recovery of Economic Loss under the Oil Pollution Act of 1990,* 7 TEX. J. OIL GAS ENERGY 241 (2012) . . 11-12

**Plaintiffs' Burden to Establish Causation Under the OPA Statute Does Not Equate to an Opportunity for the Responsible Party to Get a Second Bite at the Apple by Invoking a "Superseding" Cause Defense**

BP's Opposition is largely dedicated to the conclusory and somewhat dubious contention that the OPA Test Case Plaintiffs will not be able to establish that either the Moratoria or their economic losses were due to the destruction of natural resources and other property resulting from the Macondo / *Deepwater Horizon* Spill.[3]

Plaintiffs, of course, believe and plan to show that the Governmental actions following the Macondo disaster and all economic losses suffered by the OPA Test Cases Plaintiffs were due, at least in part, to the Spill's substantial and continuing damages to natural resources and other property throughout the Gulf of Mexico.[4]

Yet the Parties appear to agree that these are the case- and fact-specific determinations to be made by the Court based on the evidence at trial.[5]

The focus of this Motion is a distinct and separate inquiry – *i.e.* whether BP will be afforded an additional opportunity to escape liability for some or all of Plaintiffs' damages by attempting to claim that the Moratoria, or permitting changes, or other Governmental action was

---

[3] *See, e.g.*, BP OPPOSITION [Doc 13269] (Aug. 8, 2014), at pp.1, 13, 15-21, 26-28.

[4] BP ignores, for example, the Third Key Reason provided in the SECOND MORATORIUM (Plaintiffs' Exhibit D) [Doc 2400-1, at 44-72], and makes only a half-hearted attempt in a single footnote to dismiss the holdings in Dunham-Price Group, LLC v. Citgo Petroleum Corp., No.07-1019, 2010 WL 1285446 (W.D.La. Mar. 31, 2010), In re Settoon Towing LLC, No.07-1263, 2009 WL 4730969 (E.D.La. Dec. 4, 2009), and Sekco Energy, Inc. v. M/V Margaret Chouest, 820 F.Supp. 1008 (E.D. La. 1993). *See also, generally,* PLAINTIFFS' MEMORANDUM IN SUPPORT [Doc 13108], pp.23-24 and fn.28; *see also* pp.29-30 (*citing,* Century Exploration of New Orleans v. United States, 745 F.3d 1168, 1170 and 1172-1174 (Fed. Cir. 2014), *and* Sun Oil Co. v. United States, 572 F.2d 786, 804 (Ct. Claims 1978)). *See also,* UNITED STATES' STATEMENT IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE [Doc 13208] (July 29, 2014), p.2 fn.2 ("The moratorium and permitting changes, in fact, resulted from BP and its co-defendants' catastrophic discharge").

[5] BP, in this regard, repeatedly states that causation is a highly factual analysis, (*see, e.g.*, BP OPPOSITION, pp.1, 2-3, 5-6, 12, 21-22, 25), suggesting that Plaintiffs somehow seek to avoid case-specific proof. To the contrary, **it is BP that seeks to impose a blanket "Moratorium defense" that would preclude recovery across a host of unique factual situations, regardless of case-specific proof of causation.**

"unforeseeable" or "unreasonable" or even "illegal", thereby breaking the chain of causation as a "superseding" cause of Plaintiffs' loss.

BP, in this respect, concedes that:

- "BPXP's arguments based on proximate cause and the text of OPA – *as well as its affirmative defense in the alternative of superseding cause* – are integral to assessing the viability of Plaintiffs' claims";[6]

- "These doctrines differ in that a plaintiff's baseline showing of proximate causation is its burden to carry, whereas the affirmative defense of superseding cause is the defendant's burden";[7]

- "BPXP accepts its burden as to its one relevant and actual affirmative defense (superseding cause)".[8]

- "BP Will Have No Trouble Demonstrating – on a Complete Record – that the Unlawful Mortoria Were Not Foreseeable."[9]

Under BP's formulation then, Plaintiffs have a "baseline" burden to prove causation under the OPA statute, and if Plaintiffs are successful, BP then has an opportunity to attempt to demonstrate that it should nevertheless be absolved of responsibility for those damages based on a "superseding" cause. In particular, it is clear that BP intends to attempt to develop through discovery and then present a "complete record" regarding the alleged "unforeseeability" and/or "illegality" of the Moratoria and other permitting changes in the wake of the Spill.

This inquiry is foreclosed by OPA.

In fact, BP does not point to a single case which holds, or even suggests, that OPA allows a Responsible Party such as BP to escape liability for damages established under 33 U.S.C. §2702(b)(2)(E) by attempting to demonstrate either third-party fault or a "superseding" cause.

---

[6] BP OPPOSITION, p.2 (emphasis supplied).

[7] BP OPPOSITION, p.2.

[8] BP OPPOSITION, p.12.

[9] BP OPPOSITION, p.12.

**BP Does Not Cite a Single Case Allowing a Responsible Party to Escape Liability for Damages Established under 33 U.S.C. §2702(b)(2)(E) by Pointing to an Alleged "Superseding" Cause**

Neither *Taira Lynn* nor *Gatlin Oil* nor *Exxon v. Sofec* nor *Lexmark* nor any other case cited by BP stands for the proposition that a "superseding" cause defense can be invoked by an OPA Responsible Party to exonerate itself for damages due to the destruction or loss of natural resources or other property as a result of a spill.

As noted in Plaintiffs' original Memorandum, the Court in *Taira Lynn* assumed that OPA did not apply to a gaseous release, (as opposed to a spill), but noted in *dicta* that the gas itself (unlike Macondo oil) caused no damage to property under 33 U.S.C. §2702(b). *See* Taira Lynn v. Jays Seafood Inc., 444 F.3d 371, 383 (5th Cir. 2006). Nowhere in the decision does the Fifth Circuit even address, much less suggest, that a Responsible Party can avoid liability under Section 2702(b) by pointing to an alleged "superseding" cause of the losses. BP's own expert, Professor Goldberg, admits that *Taira Lynn* "is indeed not particularly instructive in this context."[10]

In *Gatlin Oil*, the Fourth Circuit held that an OPA Responsible Party could recover from the Oil Spill Liability Trust Fund "full compensation for loss of earnings and earning capacity caused by the necessity to carry out the directions of the federal coordinator" with respect to a spill that originated when someone vandalized the Responsible Party's above-ground storage tanks. Gatlin Oil Inc. v. U.S., 169 F.3d 207, 212 (4th Cir. 1999). The court found that the Responsible Party could not recover for fire damage "because the evidence did not establish" in that case that the fire was caused by "the discharge of oil into navigable waters." Gatlin Oil, 169

[10] Goldberg, *OPA and Economic Loss: A Reply to Professor Robertson*, 30 MISS. C. L. REV. 203, 215 (2011).

F.3d at 212. Finally, the court denied recovery to the Responsible Party for soil and groundwater clean-up, because:

> Gatlin *did not introduce any evidence* showing compliance with either the Act or the regulations concerning cleanup costs that the North Carolina authorities directed. Also, Gatlin Oil *has not proved* that the contamination of the soil and groundwater … *posed a substantial threat of a discharge of oil into navigable waters.* Moreover, Gatlin's theory that the federal coordinator is deemed to have directed all state and federal removal costs is contrary to 33 CFR §136.205. The federal coordinator did not determine that the cleanup ordered by North Carolina authorities was consistent with the National Contingency Plan, and he did not direct Gatlin Oil to comply with North Carolina's directives.

Gatlin Oil, 169 F.3d at 213 (emphasis supplied). Nowhere in the decision does the Fourth Circuit even address, much less suggest, that a Responsible Party can avoid liability established under Section 2702(b)(2)(E) by pointing to an alleged "superseding" cause.

In *Exxon v. Softec*, the Court held, as a matter of general maritime law, that "where the injured party is the sole proximate cause of the damage complained of, that party cannot recover in contract from a party whose breach of warranty is found to be a mere cause in fact of the damage." Exxon Co. USA v. Sofec, Inc., 517 U.S. 830, 839 (1996). The decision did not even address, much less suggest, that an OPA Responsible Party might not be liable to an innocent OPA plaintiff for economic losses under the Oil Pollution Act.

In *Lexmark*, the Court was called upon "to decide whether respondent, Static Control Components, Inc., may sue petitioner, Lexmark International, Inc., for false advertising under the Lanham Act, 15 U.S.C. §1125(a)." Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S.Ct. 1377, 1383 (2014). The decision has absolutely nothing to do with the Oil Pollution Act, and in no way addresses, much less suggests, that an OPA Responsible Party would be permitted to invoke a "superseding" cause defense under the Oil Pollution Act.

**Even Assuming *Arguendo* a General "Default" Application of Vague and Undefined Notions of "Proximate Cause", Such Rule Would Not Apply where the Text, Structure and History of the Statute Expressly Reject such an Application**

Without any support for the proposition that the Oil Pollution Act in particular contemplates a proximate cause standard for economic loss claimants generally, nor a specific "superseding" cause defense available to the Responsible Party, BP resorts to a general "default rule" for the superimposition of proximate cause.[11]

While BP attempts to dismiss the conclusions of Professors Palmer and Robertson and others on the basis that "law review articles are not the law",[12] BP cannot explain away the historical and statutory features which form the bases of their analyses. For example:

- OPA establishes a relatively simple and straightforward escalating scale of causation requirements, from the liberal "due to" and "resulting from" standard in Section 2702, to the more restrictive "proximate cause" standard in Section 2704(c)(1), to the extremely limited "sole cause" standard for available defenses in Section 2703;[13]

- Congress expressly included the term "proximate cause" in – and *only* in – a different part of the Act, specifically Section 2704(c)(1);[14]

- The statute uses the same basic formulation of causation for each of the six types of damages under Section 2702(b); to superimpose implied foreseeability limitations for only one type of damages would be incoherent;[15]

---

[11] *See generally,* BP OPPOSITION, pp.21-24.

[12] BP OPPOSITION, p.32.

[13] *See generally,* David W. Robertson, *Criteria for Recovery of Economic Loss under the Oil Pollution Act of 1990,* 7 TEX. J. OIL GAS ENERGY 241, 245-246 (2012).

[14] *See generally,* PLAINTIFFS' MEMO. IN SUPPORT [Doc 13108-1], pp.15-16; *citing,* David W. Robertson, *OPA and Economic Loss: A Response to Professor Goldberg,* 30 MISS. C. L. REV. 217, 231 (2011); Robertson, *Criteria for Recovery of Economic Loss under OPA,* 7 TEX. J. OIL GAS ENERGY at 246 (quoting Russello v. United States, 464 U.S. 16, 23 (1983) (citing United States v. Wong Kim Bo., 472 F.2d 720, 722 (5th Cir. 1972)).

[15] PLAINTIFFS' MEMO. IN SUPPORT, p.15; *citing,* Vernon Palmer, *The Great Spill in the Gulf … and a Sea of Pure Economic Loss: Reflections on the Boundaries of Civil Liability,* 116 PENN. STATE L. REV. 105, 137-138 (2011).

- An additional proximate cause requirement would be inconsistent with Section 2702(b)(2)(E)'s express intent that such damages are available to "any claimant";[16]

- The three statutory defenses set forth in OPA are extremely narrow, and expressly require the Responsible Party to prove that a third-party's acts or omissions were the "sole cause" of the discharge;[17]

- When, as here, "the legislative purpose is to loosen constraints on recovery, there is little reason for courts to hark back to stock, judge-made proximate-cause formulations."[18]

Additionally, it is clear from the Legislative History that Congress rejected "proximate cause" and other more restrictive language with respect to plaintiffs seeking damages for loss of earnings under Section 2702(b)(2)(E).[19,20]

Indeed, BP's own formulation of what is required under the OPA statute imposes cause-in-fact requirements that, as the Court has previously noted, fall somewhere in-between simple "but-for" causation, on the one hand, and a restrictive "proximate cause" standard on the other. *See* In re Deepwater Horizon, 808 F.Supp.2d 943, 966 (E.D.La. 2011). While BP seems to

---

[16] *See generally*, PLAINTIFFS' MEMO. IN SUPPORT, p.15; *citing*, Robertson, *A Response to Professor Goldberg*, 30 MISS. C. L. REV. at 231; Deepwater Horizon, 808 F.Supp.2d at 966 ("OPA does not expressly require 'proximate cause,' but rather only that the loss is 'due to' or 'resulting from' the oil spill").

[17] *See generally*, PLAINTIFFS' MEMO. IN SUPPORT, pp.14, 17-20; *citing*, Palmer, *The Great Spill*, 116 PENN. STATE L. REV. at 129-130 and 137-138; Force and Davies, *Deepwater Horizon: Removal Costs, Civil Damages, Civil Penalties, and State Remedies in Oil Spill Cases*, 85 TUL. L. REV. 889, 899 (March 2011); Apex Oil Co., Inc. v. United States, 208 F.Supp.2d 642, 654 (E.D. La. 2002); United States v. English, No.00-00016, 2001 WL 940946 at *4 (D.Haw. Mar. 28, 2001).

[18] CSX Transp., Inc. v. McBride, 131 S.Ct. 2630, 2642-2643 (2011) (quoted in Deepwater Horizon, 808 F.Supp.2d at 966). BP attempts to suggest that Pacific Operators Offshore LLP v. Valladolid, 132 S.Ct. 680 (2012) (rejecting "proximate cause" in favor of a "substantial nexus" test when applying the statutory "as the result of" language from OCLSA) was somehow 'overruled' by the Court's recent *Lexmark* decision by virtue of Justice Scalia's mere recognition that "the proximate-cause inquiry is not easy to define, and over the years it has taken various forms; but courts have a great deal of experience applying it." Lexmark, supra, 134 S.Ct. at 1390; *citing*, Valladolid, 132 S.Ct. at 692-693 (Scalia, J., concurring in part and concurring in judgment). (*See* BP OPPOSITION, p.22.)

[19] *See generally,* David W. Robertson, *The Oil Pollution Act's Provisions for Damages on Economic Loss*, 30 MISS. C. L. REV. 157, 184-188 (2011-2012); Brian T. Holmen, *Gatlin Oil Co. v. The United States: A Myopic View of OPA Liability*, 42 WM. & MARY L. REV. 1893, 1907-1909 (2001); *see also, generally*, OPPOSITION TO B1 MOTS. TO DISMISS [Doc 1821, at 70-75] (March 30, 2011), pp.69-74.

[20] Nor does BP effectively rebut the distinctions noted by Plaintiffs between OPA and the Clean Water Act. *See generally*, PLAINTIFFS' MEMO. IN SUPPORT, pp.26-27 and fn.33.

suggest that the OPA Test Case Plaintiffs are advancing an argument for mere but-for causation, BP's own formulation would require the OPA Test Case Plaintiffs to prove that their economic losses were **(i)** due to the destruction of natural resources or other damages to property **(ii)** resulting from the spill.[21, 22] This straightforward reading of the OPA statute provides a reasonable formulation of causation – *without* resorting to an extra-textual judge-made superimposition of a "foreseeability" requirement or allowance of a "superseding" cause defense.

**BP Perpetuates in its Opposition the Fallacy that Damages Can Only Have One Factual and/or Legal Cause**

As predicted in Plaintiffs' Motion, BP's defense is premised largely on the fallacy that damages suffered by the OPA Causation Test Case Plaintiffs must have been caused by *either* the Spill *or* the Moratoria – but *not* both.[23]

As a matter of cause-in-fact and as a matter of legal cause, Plaintiffs merely must prove that the ongoing damages to natural resources and other property throughout the Gulf were "*a*" cause of the Plaintiffs' damages – *not* "the" cause.[24]

---

[21] *See* BP OPPOSITION, at p.13 ("OPA uses *two separate phrases* requiring that economic losses must actually be causally connected to the pollution incident") (emphasis in original); *citing,* 33 U.S.C. §§ 2702(a) and 2702(b)(2)(E). *See also, e.g.,* BP OPPOSITION, p.2 ("mere 'but-for' causation is inconsistent with Section 2702(b)(2)(E) and the creation of *two causation requirements* in OPA Section 2702") (emphasis in original). *See also, e.g.,* Robertson, *The Oil Pollution Act's Provisions,* 30 MISS. C. L. REV. at 168 ("33 U.S.C. §2702(a) and 2702(b)(2)(E) have to be read together. Taken together, they say that an economic loss victim who invokes subsection (b)(2)(E) must show that his damages 'result[ed] from' the spill and were 'due to' the injury, destruction, or loss of tangible property or natural resources").

[22] In one respect, BP's formulation is clearly wrong. BP suggests that Plaintiffs must claim that the oil spill damaged natural resources "in which they have an interest". *See* BP OPPOSITION, p.16. OPA's economic loss provisions were clearly intended to extend to "any claimant" who suffered a loss due to any damage to natural resources or other property, *irrespective* of whether such plaintiff had an interest in the property or natural resources, as previously required under the traditional *Robins Dry Dock* Rule and/or commercial fishing exception. *See, e.g.,* Deepwater Horizon, 808 F.Supp.2d at 959 ("Clearly, one major remedial purpose of OPA was to allow a broader class of claimants to recover for economic losses than allowed under general maritime law").

[23] *See, e.g.,* BP OPPOSITION, at p.16 ("Plaintiffs seek, as to their moratoria-related claims, to recover for losses 'due to' the Department of Interior's independent and wholly discretionary regulatory decisions"); *see also, e.g.,*BP OPPOSITION, p.21 fn.16 and 17.

[24] *See generally,* PLAINTIFFS' MEMORANDUM IN SUPPORT, pp.21-25.

This is the same fallacy upon which the National Pollution Funds Center erroneously denied compensation to some businesses who sought compensation from the Oil Spill Liability Trust Fund. Although BP relies heavily upon these decisions,[25] they have no precedential weight or authority.

**The Coast Guard Rulings upon Which BP Relies Have No Precedential Weight Or Authority**

The National Pollution Funds Center administered by the Coast Guard only determines whether to approve claims against the Oil Spill Trust Fund.[26] The Coast Guard is not delegated with any authority under OPA to interpret the statute or to adjudicate private claims against the Responsible Party. As recently noted by Judge Lemelle:

> …the plain language of 33 U.S.C. §2713(e), entitled "Procedure for claims against Fund," makes clear that 33 C.F.R. §136.105 [*i.e.* the Coast Guard Regulation regarding presentment] is inapplicable to claims made to responsible parties. That section delegates power to the executive branch to "promulgate ... regulations for the *presentation, filing, processing, settlement, and adjudication* of claims under this Act against *the Fund.*" 33 U.S.C. §2713(e) (emphasis added). In light of the Supreme Court's admonition that "[a]n agency literally has no power to act ... unless and until Congress confers power upon it," *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986), it is clear that 33 C.F.R. §136.105 is inapplicable to claims to responsible parties because the Coast Guard lacks any rule-making authority concerning claims to entities other than the Fund.

Nguyen v. American Commercial Lines, Inc., No.11-1799, 2014 WL 3587490 at *5 (E.D.La. July 17, 2014) (emphasis in original). Even assuming *arguendo* that Section 2702(b)(2)(E) were ambiguous with respect to so-called "Moratorium claims" against the Responsible Party, *Chevron* deference "is not accorded merely because the statute is ambiguous and an

[25] *See* BP OPPOSITION, pp.16-18.

[26] As BP itself notes, the NPFC is motivated by a desire to protect a limited body of public funds. *See* BP OPPOSITION, p.35 (the desire to shield "government discretionary acts from monetary damages liability is almost certainly part of what motivated the Coast Guard to declare … that it would pay no moratoria related claims under OPA").

administrative official is involved…. The rule must be promulgated pursuant to authority Congress has delegated to the official." Gonzales v. Oregon, 546 U.S. 243, 258 (2006). Here, neither the President, nor the Coast Guard, nor the National Pollution Funds Center, has been delegated such authority.

Moreover, neither the FAQ nor the three decisions from other matters are Regulations that have undergone a formal notice-and-comment rulemaking process. There is nothing in OPA which evidences a Congressional intent to explicitly or implicitly delegate authority to the Coast Guard to fill a particular gap in the statute with the force of law. *See, e.g.*, United States v. Mead Corp., 533 U.S. 218 (2001) (Custom Service's "ruling letter" was not entitled to *Chevron* deference); Christensen v. Harris County, 529 U.S. 576, 587 (2000) (agency interpretations in opinion letters, policy statements, agency manuals, and enforcement guidelines do not warrant *Chevron*-style deference).

Finally, the Court is not confronted with a direct appeal or other challenge to an agency determination or formal adjudication with regard to the specific economic loss claims of any particular OPA Test Case Plaintiff.

Clearly, with respect to the available defenses, Congress did not delegate any authority to depart from the unambiguous language of Section 2703, nor has the Coast Guard, to Plaintiffs' knowledge, ever established a rule or otherwise suggested that a "superseding" cause defense would be available to an OPA Responsible Party.

**BP Admits that it Cannot Avoid OPA Liability as the Responsible Party by Pointing to the Fault or Alleged Fault of Other Parties**

BP admits that: "OPA does not provide for the apportionment of damages among multiple responsible parties." BP OPPOSITION, p.8; *citing*, 33 U.S.C. §2710(b) (OPA does not

permit the transfer of liability). Further, BP "has never asserted, despite Halliburton's and Transocean's role in causing the spill, that BPXP should be wholly exonerated from OPA liability for spill caused injuries compensable under Section 2702." BP OPPOSITION, p.31.

BP seems to suggest that some of its Affirmative Defenses (*e.g.*, Second Defense (unseaworthiness), Ninth Defense (comparative negligence), Nineteenth Defense (conduct of other entities), and Twentieth Defense (negligence of contractors or subcontractors)) were necessary because the OPA Test Case pleadings "include allegations related to negligence."[27] Yet the OPA Test Case Plaintiffs have already expressly stipulated that they will (i) dismiss all claims with prejudice against any non-BP party arising from or related in any way to the *Deepwater Horizon* incident, and (ii) forebear the collection of any damages that are not available under OPA, and will, in connection with the entry of the final judgment on any test case, voluntarily dismiss any remaining general maritime or state law claims.[28]

Therefore, it is clear that neither evidence regarding the fault of Transcoean or Halliburton in causing the discharge, nor evidence regarding the alleged "fault" of the United States in causing the discharge or responding to the Spill, should be the subject of the OPA Test Case Trials.

**BP Admits that It Has No Statutory Defense Under OPA**

BP admits that it "has never invoked Section 2703, which deals with a narrow set of complete defenses to spill liability addressing situations where a responsible party asserts it has no fault whatsoever for a spill." BP OPPOSITION, p.15. "Section 2703 establishes an affirmative defense where the 'discharge or substantial threat of a *discharge of oil* and the resulting damages

[27] BP OPPOSITION, p.5.

[28] AGREED UPON SCHEDULING ORDER FOR OPA TEST CASE TRIALS [Doc 12972] (June 3, 2014), Conditions for Participation Nos. 1 and 2.

[are solely caused by an act of God, etc.]' … BP has never argued that *the oil spill* was caused solely by any of the Section 2703(a)(1)-(4) situations." BP OPPOSITION, p.31 (emphasis in original).

**Plaintiffs' Motion to Strike Affirmative Defenses Was Timely Filed within the Required 21 Days**

Despite BP's claims of "prematurity", Federal Rule of Civil Procedure 12(f)(2) indicates that a Motion to Strike Affirmative Defenses should be filed within 21 days. Far from "premature", Plaintiffs' Motion seeks confirmation of a fundamental legal conclusion that will guide the discovery, presentation and consideration of legally and factually relevant evidence over the course of these proceedings.

## Conclusion

For the above and foregoing reasons, and for the reasons stated in Plaintiffs' original Memorandum in Support, the Court should strike BP's affirmative defenses and issue an *in limine* ruling precluding evidence of potential third-party fault, including the application of any alleged "superseding" cause defense based on the actions or inaction of the U.S. Government to the OPA Causation Test Cases, as a matter of law.

This 20th day of August, 2014.

Respectfully submitted,

/s/ Stephen J. Herman
**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN & KATZ LLC**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 569-6024
E-Mail: sherman@hhklawfirm.com
*Plaintiffs Liaison Counsel*

/s/ James Parkerson Roy
**James Parkerson Roy**, La. Bar No. 11511
**DOMENGEAUX WRIGHT ROY & EDWARDS LLC**
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com
*Plaintiffs Liaison Counsel*

**PLAINTIFFS' STEERING COMMITTEE**

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office: (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office: (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Office: (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY 10003
Office: (212) 558-5802
Telefax: (212) 344-5461
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office: (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH
501 Broad Street
Lake Charles, LA 70601
Office: (337) 439-0707
Telefax: (337) 439-1029
E-Mail: mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA 70801-1910
Office: (225) 344-3735
Telefax: (225) 344-0522
E-Mail: mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW & ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Office: (504) 588-1500
Telefax: (504) 588-1514
E-Mail: sterbcow@lksalaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL 36660
Office: (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Office: (214) 521-3605
Telefax: (214) 599-1172
E-Mail: ssummy@baronbudd.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail: mike@mikespy.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that the above and foregoing Reply Brief will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 20th day of August, 2014.

/s/ Stephen J. Herman and James Parkerson Roy