## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | **MDL No. 2179** |
| **This Document Relates to:** | **SECTION: J** |
| | **JUDGE BARBIER** |
| **No. 12-968** | **MAGISTRATE SHUSHAN** |

## MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR RECONSIDERATION

Howard L. Nations, Esq., as attorney for approximately 8,500 Medical Benefits Settlement Class Members who will be subject to Level B1 compensation for Chronic Injuries and who will be directly and adversely affected by the Court's Order of July 23, 2014 [Rec. Doc. 13179], respectfully submits the following Memorandum in Support of Class Counsel's Motion For Reconsideration:

**MAY IT PLEASE THE COURT:**

## I.      THE ISSUE

The Claims Administrator's interpretation of the Medical Benefits Class Action Settlement Agreement ("MSA"), which was affirmed by Order of this Honorable Court on July 23, 2014 raises the issue of  whether compensation for chronic specified physical conditions suffered by BP clean-up workers who were exposed to BP toxins  at work between April 20, 2010 and April 16, 2012, and who experienced first manifestations of those injuries within the

requisite 24/72 hours of exposure, and who were first diagnosed after April 16, 2012 should be controlled by the Specified Physical Conditions Matrix which provides in great detail the conditions precedent to recovery of Compensation For Chronic Conditions or controlled by the definition of later manifested physical condition contained in Recitals II. Definitions: VV. Later Manifested Physical Condition of the Medical Benefits Class Action Settlement Agreement. ("MSA")

Stated differently, is compensation for the chronic conditions suffered by thousands of BP clean-up workers to be determined by the highly detailed compensation Matrix which was provided by the Claims Administrator to each qualified worker as a pathway to recovery, or by a definition in the "MSA", which was intended to apply to later manifested cancer or other toxic tort sequelae that manifest after April 16, 2012?

## II.     THE RULING

This Honorable Court held that Settlement Class Members who suffer from chronic conditions that timely manifested before April 16, 1012 but were not diagnosed until after April 16, 2012 are not entitled to compensation under the Specified Physical Conditions Matrix. Instead, they  must seek whatever recovery, if any, to which they may be entitled under the Definition of Later Manifested Physical Condition when pursued individually by each Level B1 claimant in a Back End Litigation lawsuit against BP in this Honorable Court.

On behalf of the approximately 8,500 Settlement Class Members whom we represent who will be deprived of the long promised settlement benefits of Level B1 Compensation under the class action settlement and who will be, instead, thrust into the abyss of Back End Litigation by this decision, we respectfully disagree with the Court's ruling and submit this Memorandum

in support of Class Counsel's Motion for Reconsideration to correct the errors of misinterpretation contained in the ruling and the manifestly unjust consequences which will befall more than 20,000 class members who will be required to file individual BELO lawsuits in the United States District Court for the Eastern District of Louisiana, if the ruling stands.

## III.     ARGUMENT AND AUTHORITIES

We submit herein our arguments as to why this Honorable Court should reconsider this decision and restore relevance to the Medical Class Action Settlement Agreement, which has been decimated by this ruling. It is our position that if the plain and ordinary language of the Matrix and the Definition of Later Manifested Physical Conditions are properly interpreted in the context of the entire "MSA", the Court will rule that Specified Physical Conditions which meet the requirements for recovery of compensation as set out in Level B1 of the Matrix should be administered and compensated by the Claims Administrator within the terms of the Matrix.

### A.     Primary Documents

There are two primary documents that control the terms of compensation for those who qualify as BP clean-up workers and who suffer injury as a result of their exposure to the BP toxins during clean-up operations: the Specified Physical Conditions Matrix contained in Exhibit 8 and the Medical Benefits Class Action Settlement Agreement ("MSA"). The latter document also contains a definition of Later Manifested Physical Condition which was designed to cover cases that manifested "later", i.e., after April 16, 2012, but the misinterpretation placed on this definition has become outcome-determinative as a result of the Court's misapplication of the effect of the definition on Level B1 chronic claims under the Matrix.

**B.      The Entire Agreement As A Whole Must Be Considered**

Examination of the purpose of these documents requires application of the plain and ordinary meaning doctrine espoused by the Fifth Circuit: "Words in a contract must be given their usual and ordinary meaning..." *Robin v. Sun Oil Co.*, 548 F.2d 554, 557 (5th Cir. 1977). When this is combined with the principle that contracts are to be read so as to give full meaning to all of the provisions, it becomes obvious that there is error in the Court's ruling that can easily be corrected upon reconsideration. "There can be no doubt when applying the plain and ordinary meaning doctrine, the entire agreement "as a whole" must be considered. *Becker v. Tidewater, Inc.*, 586 F.3d 358, 369 (5th Cir. 2009); *Fontenot v. Mesa Petrol. Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986). "Each provision in a contract must [also] be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code Ann. art. 2050.

In this case, the Court stresses the plain and ordinary meaning of the language in the definition of Later Manifested Physical Condition. The language is clear and ordinary but the error of the Court is that the definition of Later Manifested Physical Condition has absolutely no application or relevance to the Pre April 16, 2012 claims being processed under the Matrix.

In misapplying the requirement of a diagnosis, which is clearly intended to apply to **LATER** Manifested Physical Conditions rather than to claims that manifest before April 16, 2012, the Court fails to follow the mandate of the Fifth Circuit as cited above that "There can be no doubt when applying the plain and ordinary meaning doctrine, **the entire agreement "as a whole" must be considered.** *Becker v. Tidewater, Inc.*, 586 F.3d 358, 369 (5th Cir. 2009); *Fontenot v. Mesa Petrol. Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986). (Emphasis Added). In order

to comply with this ruling, we will now consider both the Specified Physical Conditions Matrix and the Later Manifested Physical Condition language.

### C.      The Specified Physical Conditions Matrix

The Specified Physical Conditions Matrix is a binding document which compiles, in considerable detail, the various injuries and conditions, both acute and chronic, which are reasonably anticipated to occur to Settlement Class Members within 24 to 72 hours after exposure to the numerous toxins involved in the clean-up operations. The primary and controlling purpose of the Matrix was to provide a clear pathway to fairly compensate the class members and to avoid protracted litigation. In fact, the Matrix was given such a high priority that in the event a conflict arose between the MSA and the Matrix, the Matrix prevails. *Section XXX.D of the Medical Settlement Agreement.*

Section II: Compensation for Chronic Conditions of the Settlement Matrix clearly establishes the "Proof" required for a class member to qualify for a recovery and the "Lump Sum" which a Settlement Class Member can anticipate receiving from the Claims Administrator upon compliance with the conditions precedent under "Proof." The "Proof" that is required for recovery is set out in great detail as for example, the requirement for recovery for the Chronic Specified Physical Respiratory Condition of Rhinosinusitis:

> Chronic rhinosinusitis   (an inflammatory condition involving the paranasal sinuses and linings of the nasal passages that last 12 weeks or longer, despite attempts at medical management, as supported by (i) evidence of at least two of the following four signs: (1) anterior and/or posterior mucopurulent drainage; (2) nasal obstruction; (3) facial pain, pressure and/or fullness; and (4) decreased sense of smell; and (ii) objective evidence of sinus mucosal disease on CT imaging or endoscopic examination.

The pathway of exposure had to be through inhalation and the timeframe between exposure and manifestation was required to be "Beginning, or exacerbation beginning within 72 hours of exposure." *Specified Physical Conditions Matrix, Table 3, Chronic Specified Physical Conditions.* The point is that the evidence required to receive compensation under the Matrix is very detailed in every aspect as the Matrix established the standard for recovery. If "diagnosis" prior to April 16, 2012 is one of the requirements for recovery, as the Court has held,  why then is the requirement of such a "diagnosis" not mentioned under the required "Proof" and anywhere else in the Matrix?

The plain and ordinary meaning of the Specified Physical Conditions Matrix is that if a Class Member meets these detailed "Proof" requirements, he will receive the "Lump Sum" compensation set out in the adjoining column, plus any Enhancer for which the Class Member may qualify.

A copy of this Matrix is distributed by the Class Administrator to every claimant upon qualification as a Class Member so that they may clearly understand the "Proof" which they are required to produce to qualify for compensation and the "Lump Sum" payment to which they would be entitled upon compliance.  The plain and ordinary meaning of the Specified Physical Conditions Matrix that comports with the intended purpose of the MSA is that it serves as a guideline to recovery of compensation in order to meet the purpose of fairly, reasonably and timely compensating the workers who cleaned up BP's devastation of the Gulf Coast.

Significantly, contrary to the interpretation by the Claims Administrator, there is no requirement in the Specified Physical Conditions Matrix under Level B1 Compensation for Chronic Injuries that either a diagnosis of the condition or the testing supporting such diagnosis

must have already been made at the time of execution of the Medical Settlement Agreement on April 16, 2012.  No such condition precedent to recovery for a chronic condition that manifested within 24/72 hours after exposure is listed under the "Proof" required to obtain the adjoining "Lump Sum" compensation in the Specified Physical Conditions Matrix because it was not the intent of the parties that such a condition precedent to recovery was required. If such had been the intent of the parties, it would have been very simple to add "diagnosis" to the "Proof" section of Level B1 in the Matrix. The absence of such a condition precedent demonstrates clearly the plain and ordinary meaning and intent of the "Proof" required to recover compensation under Level B1 of the Matrix. It clearly does not include any requirement of "diagnosis", let alone a "diagnosis" before April 16, 2012.

Of equal significance is the fact that the term "Later Manifested Physical Condition" does not appear in the Specified Physical Conditions Compensation Matrix because the Matrix is designed to compensate for injuries before April 16, 2012 that manifested within 24/72 hours of exposure. The term "diagnosis before April 16, 2012" is also conspicuously absent from the Settlement Matrix, which, again, is provided to each claimant by the Claims Administrator to show Class Members the pathway to compensation.

**D.      Later Manifested Physical Condition**

The "later" in Later Manifested Physical Condition obviously refers to those conditions that manifest after April 16, 2012, the date of the execution of the "MSA". The mistake in the Court's ruling that is destroying the "MSA" is that the Claims Administrator ignored the word "later" and erroneously applied the definition and the requirement of a diagnosis to cases that manifested "before" April 16, 2012.  The clear meaning of "later", when read in the context of

the entire MSA and the Matrix, is obviously to provide a means and method of recovery for cases that arise "after" April 16, 2012, the execution date of the "MSA". The purpose is to cover claims that do not qualify for compensation under the Matrix, not to eliminate Level B1 claims that occurred "before" April 16, 2012 from the "MSA."

The obvious error that has occurred in the Claims Administrator's reading of the Matrix and this Honorable Court's ruling is that the requirement of a diagnosis within the definition of "Later Manifested Physical Condition" has been lifted from the Definition section of the Medical Settlement Agreement and superimposed as a new condition precedent under the "Proof" section of the Settlement Matrix.  It is manifest error to include the requirements of "diagnosis" from the Later Manifested Physical Conditions definition as a new condition precedent for recovery under the Specified Physical Conditions Matrix.  The Settlement Compensation Matrix is clearly intended by its own language and clear meaning to set the "Proof" requirements and the "Lump Sum" compensation for Level B1 injuries that timely manifest within 24/72 hours of exposure. The plain and ordinary meaning of the language of the Matrix speaks for itself in establishing the "Proof" required to qualify for "Lump Sum" compensation for Specified Physical Conditions.

If Chronic Level B1 injuries are held to the impossible standard of a Later Manifested Physical Condition, then what is the purpose of proving that they manifested within 24/72 hours? The plain and ordinary meaning of the 24/72 hour manifestation requirement under the Level B1 "Proof" section is that this is the manifestation required to recover the $60,700 from the adjoining "Lump Sum" payment column.

By ignoring the plain and ordinary meaning of the Level B1 section of the Matrix and imposing a new condition precedent of diagnosis and testing prior to April 16, 2012, that is not

8

contained in the "Proof" requirements of the Settlement Matrix, the ruling of the Court has destroyed the settlement for the most seriously injured Class Members; those with Chronic Dermatitis, Chronic Conjunctivitis, Reactive Airways Dysfunction Syndrome and Rhinosinusitis. These particular injuries are expressly included in the Matrix for compensation as Specified Physical Conditions because they are the precise injuries that are caused by daily exposure to this particular blend of BP toxins and by constantly breathing the toxic air during every minute on the job. If the drafters of the MSA intended to compensate these severe injuries as Later Manifested Physical Conditions, requiring diagnosis and testing prior to April 16, 2012, then why are they included in the Specified Physical Conditions Matrix with such detailed requirements for "Proof" and specific "Lump Sum" compensation. They are there because it was the clear intent of the drafters that the most seriously injured workers should qualify for the highest level of compensation under the Matrix. And why were the Class Members misled for all of these years into believing that they would be justly compensated if they remained as a Class Member in the Medical Benefits Class Actions Settlement?  What has occurred here is analogous to issuing a rule book for a game and then, with two minutes left in the fourth quarter, creating a new rule that had to be complied with before the game started. It is manifestly unjust to these workers who labored to clean up the mess that BP created to impose an impossible new rule in the fourth quarter and declare BP as the winner.

### E.    New Condition Precedent to Recovery Imposed

By imposing a new impossible requirement of diagnosis and testing before April 16, 2012 to the "Proof" necessary for recovery under the Matrix, despite the absence of such a requirement in the Matrix, recoveries at Level B1 become almost impossible because the new standard requires that the diagnosis and supporting medical testing of chronic conditions already

exist at the moment the Medical Settlement Agreement was signed on April 16, 2012. Even if the Class Members had known that they had to have a "diagnosis" before the information was published to anyone, they would still fail under the Chronic Rhinosinusitis and RADS requirements of testing before April 16, 2012.

Chronic diagnoses of these Specified Physical Conditions are, by definition, long-term injuries which generally begin as acute conditions.  Doctors do not diagnose chronic conditions on first visits, shortly after exposure.  They also do not diagnose chronicity while occupational exposure is continuing. There must be passage of time after occupational exposure ends, combined with continuation of symptoms, for chronicity to be diagnosed.  Many of the class members continued to work to the end of the project, past April 16, 2012, which rendered a diagnosis of chronicity virtually impossible, even if they had been advised of the necessity of such diagnosis.

The Compensation for Chronic Conditions section of the Matrix contemplates this by requiring medical records where such conditions are persisting at the time of presentment to a medical professional.  Class members who qualify for compensation under the Specified Physical Conditions Matrix with manifestation of symptoms within 24/72 hours after exposure before April 16, 2012 who have persisting symptoms and are diagnosed with chronicity of the same condition, confirmed by testing where required, after April 16, 2012 make up the overwhelming majority of the class members herein, since chronic diagnosis is delayed until the persistence of symptoms can be medically established. Few, if any of the thousands of workers with chronic injuries will have diagnosis and the supporting testing before April 16, 2012.  Those same thousands have chronic symptoms which persist today.

### F.        Limited Access to Healthcare

The vast majority of clean-up workers were impoverished, undereducated and lacked health insurance. Many of the workers lived in rural areas with limited access to quality healthcare and even when healthcare was accessible, the providers did not have the necessary equipment to run the specific tests required under the Matrix and even when the equipment was available, the workers could not afford the expensive diagnostic testing.  Moreover, because the requirements for specific testing under the Matrix and the new condition precedent of a formal diagnosis under the definition of Later Manifested Physical Condition were not known to the workers until after 4/16/12, they could not have known that they needed to seek out the specific test results and the specific diagnoses as conditions of proof until it was too late. Few, if any, of the most seriously injured Settlement Class Members will qualify for compensation under the Matrix if the new proof requirement of diagnosis prior to April 16, 2012 persists. The plain and ordinary meaning of the Specified Physical Conditions Matrix contemplates no such proof in order to qualify for compensation under Level B1 of the Matrix. The MSA and the Matrix, read together, giving full effect to all elements of the MSA provide a clear pathway to recovery under the Matrix, without the requirement of an impossible diagnosis being superimposed on the Matrix.

### G.        The Purpose of the Later Manifested Physical Condition Provisions

Since the pathway to recovery for both chronic and acute conditions that manifest within 24/72 hours are clearly set forth in the Specified Physical Conditions Matrix, this raises the issue of how to deal with a common event in toxic torts, the conditions that may not manifest for several years in the future, such as cancer.

11

Obviously, within the ordinary meaning of the Medical Settlement Agreement, two provisions were included to cover such later manifesting conditions:  The Later Manifested Physical Condition definition and its provision for BELO litigation.  The ordinary meaning of the Medical Settlement Agreement indicates that while the BELO Litigation has a four-year statute of limitations for prosecution, it was necessary to have a readily discernible starting point for such statute of limitations provision. The Statute of Limitations requires filing within four years of the Effective Date or the date of first diagnosis, whichever is later. But it is also necessary to have a trigger point for the statute of limitations for injuries that manifest more than four years after the Effective Date. The Date of diagnosis of such a Later Manifested Physical Condition provides such a trigger point for the statute of limitations and the plain and ordinary meaning of the Medical Settlement Agreement dictates that this is the obvious purpose of the date of diagnosis for a BELO claim.

This provision is obviously not applicable to B1 Chronic Injuries under the Specified Physical Conditions Matrix because the manifestation of symptoms following exposure prior to April 16, 2012 precludes the possibility of injuries as a Later Manifested Physical Condition.

More importantly, the clear reading of the Medical Settlement Agreement as a whole and giving full meaning to all of its terms dictates that Chronic conditions that first manifest within 24/72 hours are clearly compensable under the Specified Physical Conditions Matrix while injuries which manifest after April 16, 2012 are covered under BELO.  This gives plain and ordinary meaning to the term "Later Manifested Physical Condition."

### H.    BP's Agreement with Definition of LMPC

BP Agreed with this interpretation at the preliminary certification hearing on April 25, 2012 when their counsel advised this Honorable Court that Later-Manifested Physical Conditions "have not manifested themselves today," and are those conditions that "perhaps show up, we hope not, but show up five years from now or ten years from now."  (Dkt. No. 10-2179, Rec. Doc. 6395 at 90). BP followed suit when it proposed findings of fact and conclusions of law, stating that Later-Manifested Physical Conditions are those "claimed to have manifested after April 16, 2012."[1]

### I.    Review of Fairness

The settlement that was presented to and approved by this Honorable Court at the Fairness hearing on November 8, 2012 is the same settlement that is currently being espoused by Class Counsel and counsel for approximately 20,000 affected Settlement Class Members; a settlement which would give full force and effect to all provisions of the Medical Settlement Agreement and justly and fairly compensate the Settlement Class Members under the terms of the Specified Physical Conditions Matrix, while protecting those who may unfortunately later manifest with cancer or other conditions. No amendments, changes or alterations of any kind are necessary to give full effect to the entire agreement, as it was presented  and approved by this Honorable Court at the Fairness Hearing.

The settlement that is currently being argued by BP and that has been adopted by the Court is not the same settlement that was presented at the Fairness hearing. A settlement that

---

[1]Not unlike their free-flowing oil, BP's positions seem to change with the tides.  In its July 14, 2014 memoranda, BP argued that Later-Manifested Physical Conditions are both "later manifested conditions and earlier manifested conditions that are first diagnosed after April 16, 2012."  (Rec. Doc. 13135 at 7.)

imposes a new, virtually impossible condition precedent on the most seriously injured members of the Class would not survive a Fairness hearing because it is manifestly unfair, pours tens of thousands of individual Class Members into the Court individually fighting BP, and moves this Settlement precisely along the oily path of the disastrous Exxon Valdez litigation.

### J.       Interpretations of the Documents

This Honorable Court is confronted with two interpretations of the Medical Settlement Agreement and the Specified Physical Conditions Matrix. There is a simple pathway to give full force and effect to all of the controlling documents in this case, while preserving the MSA in tact and rendering justice to the worker who are the subjects of this settlement.

### 1.       Plaintiffs Interpretation Resolves All Issues Fairly

One interpretation, that promulgated herein by counsel for approximately 8,500 Settlement Class Members who are directly affected  by the Court's ruling, is predicated on the plain and ordinary meanings of the documents in question and gives full force and effect to the entire Medical Settlement Agreement and the Specified Physical Conditions Matrix.  This interpretation resolves all of the thousands of timely-manifested claims through the Claims Administration and gets the agreed-upon compensation into the hands of the Settlement Class Members, many of whom are already three or more years post injury. It also preserve the rights of those claimants who may yet be afflicted with toxic tort injuries by preserving BELO litigation for its intended use, Later Manifested Physical Conditions that first manifest after April 16, 2012.

### 2.       BP's Interpretations Decimates the Settlement Agreement, Delays Justice and Clogs this Court With Thousands of Individual Cases.

The other interpretation, the latest incarnation of the interpretation espoused by BP, effectively rewrites the Specified Physical Conditions Matrix by adding a virtually impossible element of "Proof" and thereby eliminates recovery of the agreed upon settlement compensation for more than 20,000 Level B1 chronically injured claimants.  This interpretation removes the most seriously injured claimants from the settlement and renders the class action settlement a farce, if not a fraud upon these Settlement Class Members who have been delayed for years in their efforts to receive compensation under the Specified Physical Conditions Matrix, only to learn at this late date that the rules for recovery under the Specified Physical Conditions Matrix have changed and the Matrix which they were promised and told to rely upon by the Class Administrator is a farce.  Essentially, under the Court's ruling, the exception (BELO) for remote conditions like cancer which may or may not affect any Class Members is now swallowing the rule (Matrix) for well-established conditions affecting virtually all of the Level B1 Class Members (estimated to be at least 20,000).

The effect of this interpretation and ruling by the Court on the Level B1 Settlement Class Members will be that they have been delayed from prosecution of their individual cases for years, that they have lost the right to prosecute BP for punitive damages for their gross negligence and egregious conduct, and that they now have to individually sue BP and get into a very long line at the Federal Court house to get their day in court. They will see their long awaited recoveries diminished by costs of litigation. Unlike what they were consistently misled to believe, they now must hire a lawyer and numerous expert witnesses and incur the time and expense of litigation in Federal Court, while BP can use the hundreds of millions of dollars that they are saving under this misinterpretation to defend against these individual claims and do what they do best, continue to delay just compensation for these same workers who attempted,

under extraordinarily adverse and unhealthy work conditions, to clean up the devastation which the gross negligence and egregious conduct of BP wrought upon the Gulf Coast.

Simply put, this is not the settlement that was presented to the Court at the Fairness Hearing and it does not reflect the intention of the parties in entering into the Medical Settlement Agreement and the Specified Physical Conditions Matrix, a Matrix which was designed to fairly compensate the Class Members and avoid protracted litigation and the failings of the Exxon Valdez litigation.

This labored interpretation of adding a definition from the Medical Settlement Agreement as a condition precedent to recovery under the Specified Physical Conditions Matrix would result in an unjust result, and a denial of due process and equal protection of the law while rendering major portions of the Specified Physical Conditions Matrix meaningless.

## IV.    CONCLUSION

Settlement Class Members respectfully request that this Honorable Court reconsider the ruling that misapplies the definition of Later Manifested Physical Condition as a new condition precedent under the Settlement Matrix and thereby destroys the settlement agreement while denying justice to the Settlement Class Members. As the Court is well aware, justice delayed is justice denied.

On behalf of our Settlement Class Members, we join Class Counsel and the Downs Law Group in  requesting  that this Honorable Court, after due reconsideration,  issue a new ruling, based upon the plain and ordinary language of the relevant documents, to the effect that the Specified Physical Conditions Matrix controls the "Proof" and compensation requirements for injuries that manifest within 24/72 hours of exposure prior to April 16, 2012; that the definition

16

of Later Manifested Physical Conditions applies to injuries that manifest after April 16, 2012 and that the diagnosis date serves, along with the Effective Date, as one of the trigger dates for the four year statute of limitations for filing BELO cases. Such a ruling  gives full effect to every aspect of the MSA and the Specified Physical Conditions Matrix and clear guidance to the Claims Administrator as to how to proceed with  the administration of these long-delayed claims.

This is the only ruling that gives full meaning to all terms of the settlement, implements the intention of all parties to the Medical Settlement Agreement and renders a manifestly just result, due process and equal protection to the Settlement Class Members and gives BP the exact settlement that they agreed upon at the Fairness Hearing.

Respectfully submitted,

/S/  Howard L. Nations
Texas State Bar No. 14823000
The Nations Law Firm
3131 Briarpark Dr., Suite 208
Houston, Texas  77042
(713) 807-8400
(800) 269-3050
(713) 807-8423 (Fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was electronically filed on this 20th  day of August, 2014.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the court's ECF system and/or PACER.  Notice has been sent to all parties not registered with the Court's ECF system by other means.

/s/  Howard L. Nations
Howard L. Nations