# APPENDIX 2

Page intentionally left blank

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by<br>The Oil Rig "Deepwater Horizon"<br>in the Gulf of Mexico, on April 20, 2010 | *<br>*<br>* | MDL NO. 2179<br><br>SECTION J |
| This document relates to:<br>Rec. doc. 13179 Judge Barbier's<br>Order dated July 23, 2014 | *<br>*<br>*<br>*<br>* | Honorable CARL J. BARBIER<br><br>Magistrate Judge SHUSHAN |

## AFFIDAVIT OF THE R. JAMES AMARO

STATE OF TEXAS

COUNTY OF HARRIS

**BEFORE ME this day personally appeared:**

R. JAMES AMARO ON BEHALF OF THE AMARO LAW FIRM AND ARGUELLO HOPE & ASSOCIATES who, upon being first duly sworn, states that he is over the age of 21 and is competent to make this affidavit, which is based upon personal knowledge, and states the following:

I.

On behalf of the over 642 potential Deepwater Horizon Medical Benefits Settlement Class Members represented by the Amaro Law Firm and Arguello Hope and Associates, I respectfully present this affidavit to express our grave concerns in regard to the Court's Order dated July 23, 2014 which affirmed the May 13, 2014 Policy Determination of the Claims Administrator, the Garretson Resolution Group. Our firm began representing cleanup workers as early as 2010. I understand that our law firms represent one of the larger groups of cleanup workers in the Medical Benefits Settlement Class seeking compensation in the Medical Benefits

1

Class Action Settlement Agreement ("MSA"). I respectfully request the Court to consider our concerns in reconsidering its Order.

## II.

In summary, the Claims Administrator's implementation of an additional requirement that a "diagnosis" of a Chronic and/or Acute Specified Medical Condition must occur before April 16, 2012 instead of "manifesting" as stated in the settlement agreement in order to qualify for compensation as a Specified Physical Condition under the MSA will eviscerate the entire purpose of the MSA. If the Order is implemented, nearly our entire docket will be forced to pursue the Back-End Litigation Option for their Chronic Specified Physical Condition claims, to the extent it is even possible to resolve a Specified Physical Condition claim being labeled as "Later-Manifested" without releasing any claim for actual Later-Manifested Physical Conditions that may occur later on (*e.g.*, cancer, etc.). From the Class Members' perspective, we believe the primary purpose of the purported claimant friendly MSA was to settle their claims as opposed to forcing Class Members to litigate claims in protracted and complex litigation with the fewer legal remedies or rights permitted under the MSA.

If the Court reconsidered the Claims Administrator's interpretation by finding that a Specified Chronic and/or Acute Physical Condition is exactly how it is defined in the MSA, as a physical condition that first *manifested* within 24, 48, or 72 hours[1], then Class Members would be able to seek compensation for Specified Physical Conditions that they were led to believe would be compensated under the MSA when they elected not to opt-out. The MSA clearly does

---

[1] SPECIFIED PHYSICAL CONDITION shall mean one or more of the *ACUTE CONDITIONS* or *CHRONIC CONDITIONS* identified in Exhibit 8 that arose out of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, or other substances released from the MC252 WELL and/or the *DeepwaterHorizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and that first *manifested* or was exacerbated within the timeframes set forth in Exhibit 8. Notwithstanding any of the foregoing, a SPECIFIED PHYSICAL CONDITION shall not include any conditions or symptoms claimed by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER which conditions or symptoms resulted from the August 23, 2010, ammonia leak reported at Millard Refrigerated Services in Theodore, Alabama. *See* MSA at Section II. RRRR (*Emphasis added*).

2

not require that a Specified Physical Condition be *diagnosed* before April 16, 2012 in the definition of Specified Physical Conditions. Similarly, the MSA does not define Later-*Manifested* Physical Conditions as including Specified Physical Conditions as defined in Exhibit 8 which are diagnosed after April 16, 2012.[2] Reading these two definitions together, the MSA clearly distinguishes a difference between "physical conditions" and "Specified" Physical Conditions. Further, these two provisions hinge on the term "manifested" as opposed to "diagnosed." A Later-*Manifested* condition did not *later manifest* if it actually "manifested" within the 24, 48, 72 hour time limitations identified in Exhibit 8. If this were the true intent of the language of the MSA, the proper term to use would have been "Later *Diagnosed* Physical Condition" which would have and should have been defined to also include Specified Medical Conditions diagnosed after April 16, 2012.

If the Court's Order which adds in an additional requirement for eligibility for compensation for a Specified Medical Condition is implemented, all or nearly all of the Class Members represented by the undersigned will not qualify for any compensation for Chronic Specified Physical Conditions as provided for in Exhibit 8. From a brief review of our docket of cleanup workers, it appears that only 99 out of 642 of our clients were potentially seen by medical providers *before* April 16, 2012 to specifically evaluate them for medical issues related to exposure to dispersants and other harmful chemicals during their cleanup work. Therefore, under the best case scenario subject to the Claims Administrator's evaluation of the medical documents submitted with those 99 claims, a very small percentage of these cleanup workers would potentially be eligible for compensation for acute *or* chronic Specified Physical

---

[2] VV. *LATER-MANIFESTED* PHYSICAL CONDITION shall mean a *physical condition* that is first diagnosed in a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER after April 16, 2012, and which is claimed to have resulted from such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, or other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or exposure to dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, where such exposure occurred on or prior to September 30, 2010, for ZONE A RESIDENTS; on or prior to December 31, 2010, for ZONE B RESIDENTS; and on or prior to April 16, 2012, for CLEAN-UP WORKERS. *See* MSA at Section VV. RRRR (*Emphasis added*).

3

Conditions identified in Exhibit 8. However, most, if not all, of our clients who were working in the cleanup before April 16, 2012 had Specified Physical Conditions *manifest* before April 16, 2012.

As such, it now appears that all of the cleanup workers would have been in a better situation by opting-out of the MSA where they would still have claims for punitive damages amongst other remedies and rights. Instead and by participating, they have now waived their claims for punitive damages and still must prove causation under the curtailed procedures of the MSA for much less consideration than they had been led to believe when they elected to not opt-out. Further, any counsel for any Class Member seemingly must pursue the protracted and complex litigation which the MSA was intended to avoid for thousands of Class Members for a capped 25% legal fee which will have the practical effect of further inhibiting the financial ability for Class Members to pursue Back-End Litigation Option claims.[3] In the Court's June 15, 2012 Order, the Court cited Judge Fallon's analysis in the *Vioxx* litigation that "the consolidation of pretrial and discovery proceedings create 'tremendous economies of scale for the lawyers who would otherwise be responsible for preparing thousands of individual cases for trial.'" Here, preparing thousands of individual cases for trial is exactly what will occur if the Claims Administrator implements the additional requirement of a *diagnosis* of a Specified Physical Condition to occur before April 16, 2012 for eligibility for compensation for that condition. Although this particular issue may not be ripe for consideration today, we believe it is ripe for consideration as being a practical effect of the Court's June 23, 2014 Order which will only benefit the settling Defendants.

---

[3] "For reasons expressed below, the Court orders that contingent fee arrangements for all attorneys representing claimants/plaintiffs that settle claims through either or both of the Settlements will be capped at 25% plus reasonable costs." *See* Court's June 15, 2012 Order.

4

## III.

Further, as a very poor and uneducated mass of people some of which who do not speak English or read and many of which came from South Texas and other areas far from the beaches, there are potential Class Members who are just learning that the ailments that first manifested within the applicable 24, 48, 72 hour constraints in the MSA may be related to their work as cleanup workers. Every week, we are contacted by new potential Class Members who need legal and medical assistance.[4] In contrast, not one of the 58 claims our firms have submitted to the Claims Administrator have been offered any compensation as of this date although many claims have been pending for several months. As the MSA was not effective until earlier this year and it became clear early on that there was the subject dispute as to the interpretation of the definitions discussed above, our firms have not filed the other claims pending final resolution of this issue.

Moreover, the distinct difference between Specified Physical Conditions and Later-Manifested Physical Conditions was explicitly discussed during the fairness hearing and it was clearly discussed to not require a diagnosis on or before April 16, 2012 for eligibility for a

---

[4] "Mr. Doe was a clean-up worker for Company ABC cleaning up tar balls from Dauphin Island and Orange Beach. He worked for them for approximately 2-3 months. He is now suffering from shortness of breath, coughing, runny nose, watery eyes, headaches, and a visible rash that covers his body. Mr. Doe stated that the rash has caused him to be self-conscious and that people stare at him and move their children away from him when he goes out. He says that it has completely changed his lifestyle and he has seen at least four doctors for the rash. None of them have been able to tell him exactly what it is or how to treat or resolve it. He said that the last doctor he saw said they have never seen anything like it. He also said that the shortness of breath is severe enough to prevent him from performing manual labor jobs. He has not filed any claims or been represented for this matter."

"I went to several doctors from Foley Alabama to Pensacola Fl. it turned into staph, cellulitis, and dermatitis. I am in chronic pain bc of it."

"I started working there around june 2010 I was 18 at the time. I fell into the water around august. They made me strip down and threw away all my clothes and washed me off and sent me home. Two weeks later they layed me off. Since then I have had rashes, chest pains, sinus problems and severe stomache pains."

"My son worked in Panama City cleaning up the oil spill. He has been having sinus problems and skin problems. He is 23. What does he need to do to get some medical help for his problems. Is this something your firm handles."

"i worked the oil spill in pensacola fl I worked on the beaches and on the coast guard cutter ship. I was wondering would i qualify if i noticed a rash in my face and several other medical conditions after the oil spill that i didn't have before. My family thought it was excema in my face but after reading about the medical conditions now i know that the rash had to come from the oil but i didn't go to the doctor for it because i don't have insurance, would that disqualify me... My face has a rash that peels and bleeds sometimes is worst the others but it hasn't went away it looks like spots thats raw sometimes and then it's just flaky, I've had stomach pains that stopped me from working one day and i went to the hospital but the doctor said he couldn't find anything so i go up and walked out because i had work the next morning. The stomach pain come and go but it's worst then any stomach pain i've ever felt." Some of many 2014 potential client inquiries redacted to protect confidentiality of clients.

5

Specified Physical Condition.[5] The Claims Administrator's Policy Determination is not consistent with those discussions or clear language of the MSA. Further, the practical effects of the subject Claims Administrator's Policy Determination, if implemented, would eviscerate the true purpose and intent of the MSA which was also discussed during the fairness hearing and will also create interpretive problems due to the ripple effect of this new interpretation in other parts of the MSA as it is applied to claims.[6] In sum, if implemented, the Class Members will end up with exactly what they hoped to avoid by not opting-out of the MSA – years and years of litigation, delays, appeals, and uncertain outcomes.[7]

---

[5] Ms. Greenwald: "That's what I wanted to mention. The back-end litigation option is designed for people who get sick 5, 10, 15, 20 years from now." Final Fairness Hearing Proceedings at 80:11-13 (Nov. 8, 2012).

Ms. Greenwald: "So for chronic, it would be a doctor that's still treating that person to say that that condition exists beyond the date of filing the complaint, which is April 16th." *Id* at 13:23-14:1.

Ms. Greenwald: "This settlement was really designed for what most people would experience being exposed to these chemicals and under those circumstances." *Id*. at 83:22-24.

[6] Mr. Godfrey: "These cases take years. Can you image trying a couple thousand of these cases? I mean, it would just take up court years. One thing we haven't commented on today, because some of the objectors missed this point, there are not other risks to the litigants in the case. When you have thousands of cases being tried, because that's the alternative being offered, there is a cost imposed upon the court system and the other citizens of this state and this nation because the court is clogged with thousands and thousands of claims that otherwise would be settled and are settleable." *Id*. at 38:8-18 (Nov. 8, 2012).

Ms. Greenwald: "So you have to manifest one of those conditions within that 24 to 72-hour period. But, if you still have a condition today, you don't -- that condition today doesn't have to be -- doesn't -- it's unrelated to the initial manifestation. So, for example, my first condition might have been I had -- I might have had -- my first symptom from the oil could be I had a very bad headache, but now I have asthma. So under the matrix, I get paid for my highest, best illness or condition. So I wouldn't get compensated for my acute A1 if I didn't go to a doctor. I would be compensated under B1, which is the chronic condition, because I would -- why would I give up $60,000 for a $1,300 payment, if I'm a cleanup worker? So you look to the condition that would pay the greatest amount of money.... To circle back to where I started this afternoon is <u>we designed this settlement to provide benefits for the greatest number of people, so the greatest amount of good for the greatest number of people</u>." *Id*. at 82:6-83:14. (**Emphasis added**).

[7] The Court: "I'll point these things out again. Some of these have been referred to, but it seems pretty obvious that if those who do opt out, which everyone has a right to do, obviously, but you have to consider when you opt out of the settlement, assuming they are finally approved, what you are opting into? What are you giving up? It's obvious you're giving up a payment now or in the near future, as opposed to, as I said, potentially years and years of litigation, delays, appeals and uncertain outcomes." *Id*. at 98:16-25.

6

## IV.

In conclusion, I respectfully request the Court to consider the concerns addressed herein. I further respectfully reserve the right to amend or supplement this affidavit as future information may warrant or if requested by the Court.

X _____
R. James Amaro on behalf of The Amaro Law Firm & Arguello, Hope & Associates

SWORN TO and subscribed before me this 20 day of August, 20 14,

_____
NOTARY PUBLIC

My commission expires:

WENDY ZAGALA
MY COMMISSION EXPIRES
March 8, 2018

✓ Personally Known

___ Produced Identification

Type of Identification Produced: _____

7