IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | Oil Spill by the Oil Rig ) | |
| | "Deepwater Horizon" ) | MDL 2179 |
| | In the Gulf of Mexico. ) | SECTION J |
| | On April 20, 2010 ) | |
| | ) | |
| This document relates to: | ) | JUDGE BARBIER |
| No. 12-970, Bon Secour | ) | |
| Fisheries, Inc., et al v. BP | ) | MAG. JUDGE SHUSHAN |
| | ) | |
| And All Actions | ) | **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF AUTHORITIES IN SUPPORT
MOTION FOR RELIEF FROM ORDER AND LEAVE TO FILE
AND
MOTION TO CONFIRM ARBITRATION AWARDS
TO CLAIMANT 100089377 AND CLAIMANT 100002412**

COME NOW Claimant 100089377, (Claimant 377), and Claimant 100002412, (Claimant 412), separately and jointly, and present this brief in support of their motion to confirm arbitration awards, to-wit:

## JURISDICTION STATEMENT

The Court has jurisdiction over the admiralty and maritime action brought against BP under 28 U.S.C. § 1333, 33 U.S.C. § 2717(b), and 45 U.S.C. § 30101. The Court's jurisdiction is also based on provisions of the Federal Arbitration Act, 9 U.S.C. §1 et seq.

## STATEMENT OF THE FACTS

This matter arises from the settlement agreement, ("Settlement Agreement" or "Agreement"), reached by Plaintiffs with BP Exploration & Production, Inc. and BP America Production Company ("BP") on April 18, 2012. (Doc. 6430-1). The Settlement Agreement was approved by the Court on December 21, 2012. (Doc. 8139).

This motion to confirm is filed by two Claimants 377 and 412, who are so similarly situated that judicial economy favors a single presentation. Each of the Claimants is a business located in the State of Alabama, Zone D, and each was involved in a business enterprise that is permitted to

1

make a claim under the terms of the Settlement Agreement. (Exs. 1, 19). Each of the Claimants was open for business prior to and during April 20, 2010 to April 16, 2012. (Exs. 1, 19). Therefore, each of the Claimants is an Economic Class Member entitled to present a claim under the Agreement.

Each Claimant submitted its Registration Form and Business Economic Loss Claim Form. (Exs. 1, 19, 2, 20). Each Claimant presented its supporting contemporaneous financial data, which was reviewed, reconciled and approved by the Claims Administrator. (Exs. 6, 24). Each Claimant received an Eligibility Notice from the Claims Administrator, which determined that respective Claimant's claim qualified for payment and set the Award Amounts of $1,468,463.73 for Claimant 377 and $150,049.87 for Claimant 412. (Exs. 3, 21). Each Claimant properly executed the Full and Final Release, Settlement, and Covenant Not to Sue and timely returned it to the Claims Administrator. (Exs. 18, 31). BP timely filed its respective Notice of Appeal for each Claimant's award seeking review by an Appeal Panel as provided by the Agreement. (Exs. 4, 22). (Doc. 6430-1 at 62). BP and each of the Claimants conducted the arbitration in the prescribed manner with each submitting its respective position to the Appeal Panel. (Exs. 5, 6, 7, 8, 9, 10, 23, 24, 25, 26, 27, 28, 32). The Appeal Panel's Decision was issued in favor of each Claimant. (Exs. 11, 29). Based on the Panel's Decision, a Post-Appeal Eligibility Notice was issued by the Claims Administrator to each of the Claimants, yielding a total Award of $1,527,091.98 for Claimant 377 and $157,178.67 for Claimant 412. (Exs. 11, 12, 29, 30). BP filed its Request for Discretionary Court Review of the Post-Appeal Award for Claimant 377. (Sec. 6.6, Doc. 10185-1 at 3-4). (Exs. 14, 15, 16). The Court denied BP's request for review. (Ex. 17). BP did not file a Request for Discretionary Review for Claimant 412, and the time for such a filing expired.

On October 2, 2013, the United States Court of Appeals for the Fifth Circuit issued its opinion In re Deepwater Horizon, 732 F.3d 326 (5th Cir. 2013), which reversed the District Court's ruling and "instruct[ed] the district court to expeditiously craft a narrowly-tailored injunction. . . ." Id. at *59. In keeping with the Fifth Circuit's instructions, the District Court issued a Preliminary

Injunction Related to BEL Claims on October 18, 2013, which required the Claims Administrator to temporarily suspend action on Business Economic Loss claims then pending at any stage in the Claims Appeal Process. (Docs. 11697 and 11790).  On November 5, 2013, the Court ordered that the October 18 injunction "will be applied to any claim that as of October 18, 2013 . . . for which payment had not yet been issued." (Doc. 11790).  In response to a subsequent order of the Fifth Circuit, the Court revised its preliminary injunction on December 5, 2013 and issued an order maintaining the December 5 Order on December 24, 2013. (Doc. 12055).  Although Claimants' respective Post-Appeal Eligibility Notices had been issued prior to the Fifth Circuit's opinion, it had not been paid. (Docs. 11697, 11790, 12055). See, also, In re Deepwater Horizon, 732 F.3d 326 (5th Cir. La. 2013).  On January 10, 2014, the Fifth Circuit affirmed the District Court's class certification and settlement approval rulings and found that Article III standing and the requirements of Fed. R. Civ. P. 23 had been satisfied. See, In re Deepwater Horizon, 739 F.3d 790, 795 (5th Cir. La. 2014).  On March 3, 2014, the Fifth Circuit affirmed the Court's order of December 24, 2013 that "[t]he injunction prohibiting payment of the relevant claims is vacated." In re Deepwater Horizon, 744 F.3d 370, 375 (5th Cir. La. 2014).

On January 8, 2014, Claimant 412 filed its Motion to Confirm Arbitration Award and Order Payment with a Memorandum of Authorities and Exhibits. (Doc. 12103).  On March 27, 2014, the District Court denied Claimant 412's Motion to Confirm Arbitration Award and Order Payment without setting a hearing or requesting a response from BP.  (Doc. 12598).  On April 22, 2014, Claimant 412 timely filed its notice of Appeal.  (Doc. 12693).

On March 20, 2014, Claimant 377 filed its Motion to Confirm Arbitration Award and Order Payment with a Memorandum of Authorities and Exhibits. (Doc. 12556).  On March 26, 2014, the District Court denied Claimant 377's Motion to Confirm Arbitration Award and Order Payment without setting a hearing or requesting a response from BP.  (Doc. 12594).  On April 22, 2014, Claimant 377 timely filed its Notice of Appeal.  (Doc. 12694).  On May 28, 2014, the Fifth Circuit issued the mandate for the Court to Dissolve and Vacate the injunction and the Court ordered the

same. (Doc. 12948).  On July 21, 2014, Claimant 377 and Claimant 412 filed Appellant's Briefs in the Fifth Circuit.  Brief of Movant-Appellant, In re: Deepwater Horizon, No. 14-30400 and No. 14-30398 (5th Cir. July 21, 2014).

On August 25, 2014, the Fifth Circuit issued an order dismissing the appeals of Claimants 377 and 412 due to lack of appellate jurisdiction under 9 U.S.C. §16 (a)(1)(D) and §16(a)(2), with the mandate issued August 26. In re Deepwater Horizon, 2014 U.S. App. LEXIS 16377 (5th Cir. La. Aug. 25, 2014). (Ex. 33).  The Fifth Circuit found that "**the district court's orders neither confirmed nor denied conformiation of a purported arbitral award**" and that Claimants' motions to confirm had not been denied with prejudice by the District Court. (emphasis added). Id. at 6-7. (Ex. 33).  Since 9 U.S.C. §9 set a one year statute of limitation for filing a motion to confirm, it was necessary to expediously file this motion to confirm with this Court in order to meet this statutory requirement.

## STANDARD OF REVIEW

This motion seeks confirmation of two arbitration awards issued by separate arbitration panels (Panel(s) or Appeal Panel(s)), that issued Awards pursuant to the Settlement Agreement. There is a strong presumption in favor of arbitration under federal law, including the Federal Arbitration Act (FAA). See, Grant v. Houser, 469 Fed. Appx. 310, 315 (5th Cir. 2012), citing, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). See, also, 9 U.S.C. §2.  As stated in Grant:

> "[T]here is a strong presumption in favor of arbitration under the FAA. *See 9 U.S.C. § 2; see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).* Accordingly, **for ruling on a motion to compel arbitration, the FAA requires "an expeditious and summary hearing, with only restricted inquiry into factual issues"**. *Moses H. Cone Mem'l Hosp., 460 U.S. at 22.* The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence. *See Banks, 156 F. App'x at 712.*" (Emphasis added).

4

469 Fed. Appx. at 315. See, also, Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 578, 128 S. Ct. 1396, 1400, 170 L. Ed. 2d 254, 260 (2008). Movants pray this Court to set an expedited argument to allow consideration of the legal issues here presented.

An agreement to settle a claim, i.e., a settlement agreement, is a contract. See, e.g., Alford v. Kuhlman Elec. Corp., 716 F.3d 909, 912 (5th Cir. 2013); Guidry v. Halliburton Geophysical Services, Inc., 976 F.2d 938, 940 (5th Cir. 1992); In re Raymark Indus., Inc., 831 F.2d 550, 553 (5th Cir. 1987). Where a settlement agreement is clear and unambiguous, interpretation is a question of law and the contract's language is to be given its plain meaning. See, Alford, 716 F.3d at 712; Nat'l Union Fire Ins. Co. v. Circle, Inc., 915 F.2d 986, 989 (5th Cir. 1990); Turner Marine Fleeting v. Quality Fab & Mech., 2002 U.S. Dist. LEXIS 24258 (E.D. La. 2002). If the agreement is ambiguous, the court may consider extrinsic evidence and its interpretation is subject to subsequent appellate review only for clear error. Id.

The initial question of whether the parties have an arbitration agreement is for the Court to decide. See, Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); Armstrong v. Assocs. Int'l Holding Corp., 242 Fed. Appx. 955, 957 (5th Cir. 2007); Klein v. Nabors Drilling USA, LP, 710 F.3d 234 (5th Cir. 2013). As stated in Armstrong:

> **"To determine whether the parties agreed to arbitrate a dispute, the district court considers: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement.** *Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996).* **When a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"** (Emphasis added).

242 Fed. Appx. 955, 957. See, also, AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (*quoting*, Steelworkers v. Warrior & Gulf Navigation Co ., 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)). In addressing these questions, the Court must give due regard to the strong federal policy favoring arbitration. See, Webb v. Invertacorp., Inc., 89 F.3d 252, 258 (5th Cir. 1996).

Under the FAA, the party seeking to enforce arbitration need only prove the existence of the arbitration agreement by a preponderance of the evidence. See, Grant, 469 Fed. Appx. at 315; Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 297 (5th Cir. 2004); Banks v. Mitsubishi Motors Credit of Am., 156 Fed. Appx. 710, 712 (5th Cir. 2005). Once this proof is satisfied, "the burden shifts to the party opposing arbitration to demonstrate either that the agreement is invalid or, at a minimum, to allege the dispute is outside of the agreement's scope." See, Grant, 469 Fed. Appx. at 315, *citing*, Carter, 362 F.3d at 297. The opposing party must prove the arbitration clause was obtained by fraud, coercion or the existence of such ground as exists at law or in equity for revocation of contracts. Id. As stated in Washington Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260 (5th Cir. 2004):

> "The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). **Courts conduct a bifurcated inquiry to determine whether parties should be compelled to arbitrate a dispute.** *Id.* **First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable.** *Id.*" (emphasis added).

364 F.3d at 263; Nitro-Lift Techs., LLC v. Howard, 133 S.Ct. 500, 502, 184, L.Ed.2d 328, 331 (2012). Any ambiguity about the scope of arbitration must be decided in favor or arbitrability. See, QPro, Inc. v. RTD Quality Servs. USA, 761 F.Supp.2d 492, 497 496-97 (S.D. Texas 2011); Tricon Energy Ltd. v. Vinmar Int'l, Ltd., 718 F.3d 448, 458 (5th Cir. 2013). This is the standard of review that applies in deciding whether the Settlement Agreement contains an arbitration provision and whether the Panels' awards to Claimants 377 and 412 are arbitration awards that must be confirmed under the Federal Arbitration Act and relevant federal law.

## ARGUMENT

**I.   THE SETTLEMENT AGREEMENT'S APPEAL PROCESS, AS SET OUT IN SECTION 6, IS AN ARBITRATION AGREEMENT THAT IS SUBJECT TO THE FEDERAL ARBITRATION ACT AND THE RESULTING AWARD IS FINAL AND BINDING ON THE PARTIES.**

**A.      The Dispute Resolution Procedure Established By Section 6 of the Agreement Is An Arbitration Provision.**

Section 6 creates an arbitration agreement.  Arbitration is a "method of dispute resolution involving one or more neutral third parties who are usually agreed to by the disputing parties and whose decision is binding." BLACK'S LAW DICTIONARY, 119 (9th ed. 2009). As stated in General Motors Corporation v. Pamela Equities Corp., 146 F.3d 242, 246 (5th Cir. 1998):

> **"Arbitration is the reference of a particular dispute to an impartial third person chosen by the parties to a dispute who agree, in advance, to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard."** (Emphasis added).

146 F.3d at 246.  See, also, Hooters of America, Inc. v. Phillips, 39 F. Supp.2d 582, 618-19 (D.S.C. 1998); Prasad v. Bullard, 51 So.3d 35, 38 (La. App., 5 Cir. 2010); Kabia v. Koch, 713 N.Y.S. 2d 250, 254 (Civ. Ct. N.Y. 2000); Cheng-Canindin v. Renaissance Hotel Associates, 50 Cal. App. 4th 676, 684, 57 Cal. Rptr. 2d 867, 872 (Cal. App. 1996).  Given the thousands of monetary awards expected under the settlement, it was prudent that a method be agreed upon to address dissatisfaction by claimants or BP and that the dispute resolution process not lead to further protracted litigation.  The parties agreed, in writing, that such disputes would be decided by a neutral third-party; i.e. the "Appeals Panel". (Doc. 6430-1).

Section 6 does not use the word "arbitration," but particular nomenclature is not required. No special language is required to create an arbitration agreement. See, Wolsey, Ltd. v. Foodmaker Int'l Franchising, Inc., 144 F.3d 1205. 1208 (9th Cir. 1998); AMF Inc. v. Brunswick Corp., 621 F. Supp. 456, 460 (E.D.N.Y. 1985), (no magic words such as "arbitrate," "binding arbitration" or "final dispute resolution" needed to invoke FAA).  As stated in Wolsey:

> **"Case law following the passage of the [Federal Arbitration] Act reflects unequivocal support of agreements to have third parties decide disputes - the essence of arbitration. No magic words such as 'arbitrate' or 'binding arbitration' or 'final dispute resolution' are needed to obtain the benefits of the Act.** See City of Omaha v. Omaha Water Co., 218 U.S. 180, 194, 30 S. Ct. 615, 616, 54 L. Ed. 991 (1910) (dictum) ('a plain case of the submission of a dispute or difference which had to be adjusted . . . was in fact an arbitration, though the arbitrators were called appraisers').
> . . . .

7

> **"Arbitration is a creature of contract, a device of the parties rather than the judicial process. *If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration.*"**

144 F.3d at 1208 (emphasis added). "The essence of arbitration is that, when the parties agree to submit their disputes to it, they have agreed to arbitrate these disputes through to completion, for example, to an award made by a third party arbitrator." Id. See, also, Hod Carriers & Gen. Laborers Union Local 243 v. 3 Kings Environmental, Inc., 2010 US Dist. LEXIS 76162 (W.D. Wash. 2010)("an arbitration agreement is simply an agreement to submit a dispute to decision by a third party", no "magic words"); PCH Mut. Ins. Co. v. Cas. & Sur., Inc., 750 F. Supp. 2d 125, 143 (D. D, C. 2010)("magic words" not required to establish mandatory arbitration agreement); Bryson v. Gere, 268 F. Supp. 2d 46, 52 (D.D.C. 2002)(no particular language required to create arbitration agreement); See, also, American Federation of State, County and Municipal Employees, Local 1902, AFL-CIO v. Metropolitan Water District of Southern California, 126 Cal. App. 4th 247, 257-58, 24 Cal. Rptr. 3d 285, 291 (Cal. App. 2005) ("[i]f the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration."). BP and Plaintiffs agreed to submit any disputed claim to the third-party "Appeal Panel" for a decision; hence they agreed to arbitration. Id.

In its efforts to obtain this Court's approval of the settlement, BP's position was that Section 6 is an arbitration provision. (Doc. 7114-1 at 37). BP's August 13, 2012 memorandum to the Court described Section 6 as "baseball arbitration" and touted the benefits of arbitration for Claimants. (Doc. 7114-1 at 37). In part, BP stated:

> "Claimants have the right to appeal denials of claims for insufficient documentation and to challenge any final determination made in their cases by the Settlement Program. *See*, Agreement ¶¶ **6.1.1, 6.1.2.** BP, in contrast, is able to appeal only where an individual claimant is awarded more than $25,000 in base compensation. *See*, Agreement ¶ **6.1.2.4. Appeals as to the amount of compensation will be decided using so-called 'baseball arbitration' where the appellate panel must select either the amount advanced by the claimant or the amount advanced by BP.** *See, id.*" (emphasis added).

(Doc. 7114-1 at 37). BP's "baseball arbitration" reference is from Section 6.2, which states:

8

> "All Appeals where the issue is the Compensation Amount shall be conducted using a **baseball process in which the Claimant and the BP Parties exchange and submit in writing to the Appeal Panelist or Appeal Panel their respective proposals ("Initial Proposal")** for the base Compensation Amount they propose the Claimant should receive. . . . Without an agreed resolution, the **Appeal Panelist or Appeal Panel must choose to award the Claimant either the Final Proposal by the Claimant or the Final Proposal by the BP Parties but no other amount.**" (emphasis added).

(Doc. 6430-1 at 63). In argument to this Court, BP cited this "baseball arbitration" provision as one of the reasons the Settlement Agreement "makes the plaintiff class more than whole, while sparing class members years of litigation with no guaranty of a recovery rising to the generous levels provided for in the agreement." (Doc. 6430-1 at 63, 7114-1 at 37, 125). The dispute resolution procedure was one of the attributes put forth by BP in securing the Court's certification of the Settlement Class and approval of the Settlement on December 21, 2012.

"Baseball arbitration" is a process, well known to BP and the courts, "whereby each party submits a proposal and the arbitrator selects one of the two." Rain CII Carbon, LLC v. ConocoPhillips Co., 674 F.3d 469, 471 (5th Cir. 2012); In re Am. Capital Equip., LLC, 688 F.3d 145, 152 (3rd Cir. 2012)(in "baseball arbitration" each party submits a proposal and the arbitrator selects one or the other); Sage Electrochromics, Inc. v. View, Inc., 2014 U.S. Dist. LEXIS 49168 (N.D. Cal. 2014)(in baseball arbitration, parties have incentive to be reasonable "because arbitrator will choose the more reasonable offer."). BP's description of Section 6 as "baseball arbitration" accurately describes the arbitration process set out in the Settlement Agreement.

BP's representations were not implied or inadvertent, but rather were clear, expressed and intentional. (Doc. 7114-1 at 37). BP secured the Court's final approval. (Doc. 8139). BP cannot change its position to suit its evolving needs. Such a "flip-flop" tactic is precisely the kind of manipulations the doctrine of judicial estoppel is intended to prevent.

The doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding. See, Love v. Tyson Foods, Inc., 677 F.3d 258, 261 (5th Cir. 2012). As stated in Love:

9

> **"The doctrine of judicial estoppel is equitable in nature and can be invoked
> by a court to prevent a party from asserting a position in a legal proceeding
> that is inconsistent with a position taken in a previous proceeding.** (citation
> omitted). **The aim of the doctrine is to 'protect the integrity of the judicial
> process.'** (citation omitted). **"Because the doctrine [of judicial estoppel] is
> intended to protect the judicial system,** *rather than the litigants,* **detrimental
> reliance by the opponent of the party against whom the doctrine is applied is
> not necessary."** (citation omitted)." (bold emphasis added; italics emphasis in
> original).

677 F.3d at 261. See, also, Ries v. Paige, 610 F.3d 864, 876 (5th Cir. 2010)(judicial estoppel

prevents a party from gaining advantage by intentional self-contradiction). The elements of

judicial estoppel are: (1) a party would assert a position plainly inconsistent with a prior position;

(2) the court accepted the prior position; and (3) the party did not act inadvertently. See, Flugence

v. Axis Surplus Ins. Co., 738 F.3d 126, 129 (5th Cir. 2013); Love, 677 F.3d at 261. The language

of the Settlement Agreement and federal law make Section 6 an arbitration provision. BP's prior

statements that Section 6 is "baseball arbitration" estop BP from denying this truth. See, Love, 677

F.3d at 261; Ries, 610 F.3d at 876.

> **B.     The Settlement Agreement Is Governed By Maritime Law And Any
>         Arbitration Agreement Contained Therein Is Subject To The Federal
>         Arbitration Act, 9 U.S.C.S. §1** *et al.*

The underlying dispute arises out of a blowout, explosion and fire that occurred aboard the

*Deepwater Horizon* semi-submersible offshore drilling rig on April 20, 2010, while the rig was

engaged in drilling activities in navigable waters on the "Macondo Well" on the Outer Continental

Shelf off the coast of Louisiana. (Doc. 8138 at 1). This case is under admiralty jurisdiction and

subject to substantive admiralty law. See, In re: Deepwater Horizon (B1 Master Complaint), 808

F. Supp. 2d 943, 952 (E.D. La. 2011); Lee v. Pearl River Basin Land and Development Co., LLC,

2014 US Dist. LEXIS 76092 *1 (E.D. La. 2014). This oil spill arises in foreign commerce, is the

subject of controversy and is embraced within admiralty jurisdiction. See, In re: Deepwater

Horizon, 808 F. Supp. 2d at 951; Lee, 2014 US Dist. LEXIS 76092 at *1.

10

BP and Claimants agreed that General Maritime Law applied to interpretation of the Settlement Agreement. (Settlement Sec. 36.1, Doc. 6430-1 at 94). Parties' agreement about a choice-of-law provision will be upheld as long as it does not undermine the goals and policies of the FAA. See, ASW Allstate Painting & Constr. Co. v. Lexington Ins. Co., 188 F.3d 307, 310 (5th Cir. 1999). The Settlement Agreement is a written agreement to settle an existing controversy arising out of a matter in foreign commerce that is embraced within admiralty jurisdiction. Such arbitration provisions are addressed in FAA §2, which states:

> "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, **or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.**" (emphasis added).

9 U.S.C. §2. See, Reinholtz v. Retriever Marine Towing & Salvage, 1993 US Dist. LEXIS 21598 *5-*6 (SD Fla. 1993).

Section 6 of the Settlement Agreement is an agreement in writing to submit to arbitration an existing controversy arising out of such a maritime transaction. 9 U.S.C. §2. See, also, In re: Deepwater Horizon, 808 F. Supp. 2d at 952; Lee, 2014 US Dist. LEXIS 76092 at *1. Such written agreements to arbitrate are subject to and enforceable under the Federal Arbitration Act. See, Montauk Oil Trans. Corp. v. Steamship Mut. Underwriting Assoc., 79 F.3d 295 (2nd Cir. 1996)(FAA §2 grants affirmative right to arbitrate written agreements to settle disputes by arbitration). The Settlement Agreement and these arbitrations are governed by the FAA. See, 9 U.S.C. §§1-2. See, Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 2123 S.Ct. 2037, 156 L.Ed.2d 46 (2003); Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 1307, 149 L.Ed.2d 234 (2001); Grant v. Houser, 469 Fed. Appx. 310, 313 (5th Cir. 2012).

### C.    BP's Dispute of Claimants' Awards Was Within The Scope Of The Arbitration Agreement And Was Fully Arbitrated To A Final Award.

Whether parties have agreed to arbitrate is for the Court to decide. See, Southland Corp. v.

Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). "To determine whether the parties agreed to arbitrate a dispute, the district court considers: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement." Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996). BP is barred by judicial estoppel from denying the existence of an arbitration agreement. See, Flugence, 738 F.3d at 129; Love, 677 F.3d at 261; Ries, 610 F.3d at 876.

The next question is whether BP's dispute of the "final compensation awards" made by the Claims Administrator for these Claimants was within the scope of the Agreement's arbitration clause. As allowed by Section 6.1.2.4, BP demanded Claimants' awards be decided by the Appeal Panels, and actively participated in both arbitrations. (Exs. 4, 22). (Doc. 6430-1 at 62). In each case, the Appeal Panel issued an award specifically deciding the amount of final compensation due each Claimant. (Exs. 11, 29). Clearly, the question of Claimants' compensation amounts was within the scope of the arbitration agreement.

By establishing the existence of an arbitration agreement and that the instant disputes fell within the terms of that agreement, Claimants have met the burden of proof under the FAA. See, Moses H. Cone Mem'l Hosp., 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785; Tricon Energy Ltd. v. Vinmar Int'l, Ltd., 718 F.3d 448, 458 (5th Cir. 2013); Grant, 469 Fed. Appx. at 315 (citing, Carter, 362 F.3d at 297); QPro, Inc. v. RTD Quality Servs. USA, 761 F.Supp.2d 492, 496-97 (S.D. Tex. 2011). The burden now falls to BP to prove the arbitration provision of the Settlement Agreement was invalid or that the instant disputes fall outside the scope of the arbitration agreement. See, ASW Allstate Painting & Constr. Co. v. Lexington Ins. Co., 188 F.3d 307, 311 (5th Cir. 1999)(party denying validity of arbitration agreement has burden to prove invalidity). BP cannot demonstrate that Section 6 of the Settlement Agreement is an invalid arbitration provision or that the dispute is outside the scope of the arbitration provision. See, Flugence, 738 F.3d at 129.

In addition to the reasons noted above, it should also be noted that BP induced these Claimants and thousands of other businesses to file claims and execute releases in favor of BP by

contending the Settlement Agreement is valid. (Exhibit 18, 31). BP did this by promising to honor and be bound by the terms of the Settlement. (Doc. 6430-1 at 118). One of BP's contractual promises was in Section 17.1, which states:

> "**The Parties agree to support the final approval and implementation of this Agreement and defend it against objections, appeal, or collateral attack.** Neither the Parties nor their Counsel, directly or indirectly, will encourage any person to object to the Economic and Property Damages Settlement. Nothing in this Agreement shall impair BP's right to take any action to defend itself in any trial where BP is a party." (emphasis added).

(Doc. 6430-1 at 84). BP's only reservation to this promise was that BP would be allowed to defend itself in trials where BP was a party. Id. Every action taken by BP to object, appeal and attack the settlement is breach of contract by BP. BP's attack on Claimants' arbitration awards is a collateral attack on the implementation of this Agreement and a violation of BP's contractual obligations in the Settlement Agreement. Id.

BP's covenant not to object, appeal, or collaterally attack was made after extensive negotiations and with BP having full knowledge of the rights it was surrendering. As stated in Recitals D and F of the Settlement Agreement:

> "D.    Plaintiffs contend they would prevail in litigation. **BP disputes and denies the Plaintiffs' claims, has raised various affirmative and legal and other defenses, and contends that it would prevail in litigation."**
> *          *          *          *
> "F.    **BP has concluded that, in light of the costs, risks, burden, and delay of litigation, Settlement in this complex litigation is appropriate. In this regard, BP and BP's Counsel agree that this Agreement is fair, reasonable, and an adequate resolution of the Deepwater Horizon Economic Litigation."**

(Doc. 6430-1 at 5) (emphasis added). BP believed it had valid defenses and that it would prevail, yet BP surrendered those rights in favor of receiving Claimants' releases of liability. Id.

By freely and voluntarily surrendering these rights under the Settlement Agreement, BP gained the enormous benefit of resolving thousands of disputes with Economic Loss Class Members and specifically with the instant Claimants. (Doc. 6430-1 at 5, ¶ F). Such a knowing, intelligent, and voluntary surrender of rights is waiver under the law. See, e.g., Watkins v. Fly, 136 F.2d 578, 580 (5th Cir 1948)(waiver is intentional relinquishment of known right); Robertson v.

J.C. Penney Co., Inc., 484 F.Supp.2d 561, 567 (S.D. Miss. 2007)(voluntary waiver made with knowledge of the rights waived is binding on party); Rolls Royce Industrial Power v. M.V. Fratzis M., 1995 U.S. Dist. LEXIS 22219 *36 (S.D. N.Y. 1995)(voluntary and explicit surrender of known right is wavier and is enforceable).   When BP made this promise, BP knew there were risks associated with settlement.   BP intentionally and voluntarily went forward with settlement.

As part of the Settlement Agreement, BP agreed to defend the settlement against "objections, appeal, or collateral attack" and, by extension, not to participate in the making of such "objections, appeal, or collateral attack". (Settlement Sec. 17.1, Doc. 6430-1 at 84).   BP expressly agreed that the terms of the Agreement, including all Recitals and the dispute resolution provisions of Sections 6 and 17.1, were contractual and not mere recitals. (Doc. 6430-1 at 58-64, 84).   As stated in Section 26.1:

> Plaintiffs, the Economic Class, and each Economic Class Member and the **BP Parties expressly and each agree that the terms of this Agreement, and all provisions hereof, including all representations, promises, agreements, covenants and warranties, and including the Exhibits thereto, are contractual and not a mere recital and shall survive the execution of this Agreement.**

(Doc. 6430-1 at 90 (emphasis added)).   BP cannot now claim the Settlement Agreement is invalid as a grounds for resisting arbitration. See, Armstrong, 242 Fed. Appx. at 957; Klein, 710 F.3d 234 See, also, AT&T Tech., 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (citing, Steelworkers, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409).   The Appeal Panels' decisions in favor of Claimants must be enforced as required by FAA and applicable case law.

## II.   THE ARBITRATORS' AWARDS, AS ISSUED BY THE APPEAL PANELS, ARE FINAL AND MUST BE CONFIRMED AS REQUIRED BY THE FEDERAL ARBITRATION ACT.

### A.   Claimants' Motion To Confirm Is Timely And Must Be Granted Unless It Is Vacated, Modified Or Corrected As Permitted Under Sections 10 And 11 Of The Federal Arbitration Award.

As set out in the Statement of the Facts, Claimants properly made and substantiated their respective claims and received Awards based on the determinations of the Claims Administrator. In reliance on those Awards, each Claimant gave BP a Release of claims, the benefit of which BP

accepted. (Exs. 18, 31). BP disputed both Awards and demanded a determination by a neutral third-person via the Appeal Panels. (Exs. 4, 22). In each case, the Appeal Panel decided the dispute in favor of the Claimant and a Post-Appeal Award was made in the amounts $1,527,091.98 to Claimant 377 and $157,178.67 to Claimant 412. (Exs. 12, 30). Under the requirements of the FAA and applicable case law, the Appeal Panels' Decisions are arbitration awards and must be confirmed unless vacated, modified or corrected on grounds allowed by FAA §§10 and 11. 9 U.S.C. §§10 and 11.

Section 9 of the Federal Arbitration Act provides for confirmation of arbitration awards, in part, as follows:

> "If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then **at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this** *title [9 USCS §§ 10, 11]*." (Emphasis added, brackets in original).

9 U.S.C.S. §9; see also, FIA Card Services, NA v. Gachiengu, 571 F.Supp.2d 799, 804 (S.D. Tex. 2008), citing, Bernstein Seawell & Kove v. Bosarge, 813 F.2d 726, 731 (5th Cir. 1987). As noted, the Court retained jurisdiction under Section 18.1 of the Settlement Agreement to enter orders enforcing the provisions of the Settlement Agreement, including the payment of claims, evidencing the parties' agreement for either party to seek confirmation of an arbitral award under 9 U.S.C. §9. (Doc. 6430-1 at 84, 85). See, P & P Indus., Inc. v. Sutter Corp., 179 F.3d 861, 867-868 (10th Cir. 1999)(a court has jurisdiction under the FAA to enter judgment if either (1) the agreement provides arbitration shall be final and binding because the only way to accomplish that is through judicial intervention or (2) the arbitration agreement incorporates rules permitting court to enter a judgment); Washington Mut. Bank v. Crest Mortg. Co., 418 F. Supp. 2d 860, 862 (N.D. Tex. 2006)(adopting the second approach listed above).

A motion or application to confirm an arbitration award is timely made if made within one year of the date of the award. Id. Claimants make this motion to confirm the arbitration award

within the one year provided by 9 U.S.C. §9. (Exs. 11, 29). Claimants' motion to confirm is

properly before the Court. See, 9 U.S.C. §6 (motion or application to court under FAA shall be

made and heard in the manner provided for motions).  The motions to confirm are timely presented,

supported by law and due to be granted.

In dismissing Claimants 377's and 412's appeals, the Fifth Circuit quoted the Hall Street

decision as follows:

> **"As the Supreme Court explained in *Hall Street Assocs., L.L.C. v. Mattel, Inc.*,**
> **552 U.S. 576, 572 (2008), '[u]nder the terms of §9, a court 'must' confirm an**
> **arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed'**
> **in §§10 and 11.'"** (emphasis added).

In re Horizon, 2014 U.S. App. LEXIS 16377 (5th Cir. La. Aug. 25, 2014) (citing, Hall Street, 552

U.S. at 584 and 586, 128 S. Ct. at 1403 and 1404, 170 L. Ed. 2d at 263 and 264). (Ex. 33).

Claimants agree.  If the Court determines Section 6 is an arbitration provision, it must either

confirm the arbitration awards or grant relief to BP if one or more of the grounds provided under

FAA §§10 or 11 so justifies such relief. Id.

**B.     BP Failed To Make A Timely Motion To Vacate, Modify Or Correct The**
**Arbitration Awards In The Three Months Required By Section 12 Of The**
**Federal Arbitration Act And Is Barred From Challenging The Claimants'**
**Awards.**

The FAA §12 also contains a three-month "statute of limitations" for BP's filing a motion

to vacate, modify or correct an arbitration award pursuant to FAA §§10 and 11. Martel v. Ensco

Offshore Co., 449 Fed. Appx. 351, 355 n.1 (5th Cir. 2011); Brown v. Witco Corp., 340 F,3d 209,

218 (5th Cir. 2003).  FAA §12 states, in pertinent part:

> **"Notice of a motion to vacate, modify, or correct an award must be served**
> **upon the adverse party or his attorney within three months after the award**
> **is filed or delivered."** (emphasis added).

9 U.S.C. §12.  A party seeking to vacate an arbitration award must serve the adverse party within

three months of the award and, failing to do so, results in a bar to the party's challenge of the

award. See, Martel, 449 Fed. Appx. at 355 n.1("[T]he FAA's three month statute of limitations

period governs the period of time within which a party must file a lawsuit in federal court asking the court to vacate, modify, or correct an arbitration.").

If the opposing party does not file a motion to vacate, modify or correct the arbitration award within the required three months, such relief cannot be granted. See, Bridgepoint Ventures, LLC v. Panam Mgmt. Group, 524 Fed. Appx. 553, 554 (11th Cir. 2013)("[A] party's failure to move to vacate an arbitral award within the three-month limitations period bars him from raising the alleged invalidity of the award as a defense in opposition to a motion to confirm the award."); Alvarado v. Wells Fargo Advisors, LLC, 2011 US Dist. LEXIS 15301 *10 (S.D. Tex. 2011)(motion to vacate filed after three months of the arbitration award was "untimely" and, hence, denied).  BP did not file motions seeking relief from the arbitration awards issued by the Panels and the time has expired. (Exs. 11, 29). See, Bridgepoint Ventures, 524 Fed. Appx. at 554; Martel, 449 Fed. Appx. at 355 n.1.

As recognized by the Fifth Circuit in this case and by the Supreme Court in Hall Street, the court "must" confirm Claimants' arbitration awards. See, Hall Street, 552 U.S. at 584 and 586, 128 S. Ct. at 1403 and 1404, 170 L. Ed. 2d at 263 and 264; In re: Deepwater Horizon, Case Nos. 14-30398 and 14-30400, Doc. 0051274551, p. 4.  In Hamstein Cumberland Music Group v. Williams, 532 Fed. Appx. 538, 543-44 (5th Cir. 2013), the district court sua sponte elected to reduce rather than vacate an arbitrator's award from $634,641.44 to $564,162.51. Id. at 541. See, also, Frontera E. Ga. v. ARAR, Inc., 483 Fed. Appx. 896, 899 (5th Cir. 2012)(district court must grant confirmation or vacate the award on grounds permitted by FAA §§10 or 11). The Fifth Circuit, applying a de novo standard of review, concluded vacatur was improper and the award was due to be confirmed. Hamstein, 532 Fed. Appx. at 543-44.  Faced with a meritorious motion to confirm, a district court "must grant" the motion unless relief under FAA §§10 or 11 is required. Id.  There is "no hint of flexibility" and no room to revisit the merits of the award. Id.

As with Hamstein, this Court is presented a meritorious motion to confirm the arbitration awards in favor of Claimants. See, 532 Fed. Appx. at 543.  The Court's obligation is "**to grant an**

**order of confirmation absent recourse to one of the seven, narrow grounds for modification or vacatur found in §§ 10 and 11.**" Id.  The authority of judicial review is substantially limited by Section 9 and Hall Street to the specific reasons identified in FAA sections 10 and 11.  See, Hall Street, 552 U.S. 576, 128 S. Ct. 1396, 1402, 170 L. Ed. 2d 254.

In the instant case, the questions of vacatur, modification or correction of the arbitrators' awards is not before the Court because BP elected not to seek relief under FAA §§10 or 11 in the three month "statute of limitations" period established by FAA §12. See, Martel, 449 Fed. Appx. at 355 n.1; Bridgepoint Ventures, 524 Fed. Appx. at 554; Alvarado, 2011 US Dist. LEXIS 15301 at *10.  Claimants' arbitration awards are timely before the Court on this motion to confirm and the Court "must grant" the requested orders of confirmation. Id.; see also, 9 U.S.C. §9.

## III.   THE COURT MUST APPLY CONTROLLING FEDERAL LAW AND CANNOT DISRUPT AN ARBITRATION AWARD EXCEPT ON GROUNDS PERMITTED BY SECTIONS 10 AND 11 OF THE FEDERAL ARBITRATION ACT.

### A.   Arbitration And Arbitration Awards May Not Be Disturbed By Injunction Except To Grant Relief From The Award As Permitted Under Sections 10 And 11 Of The Federal Arbitration Act.

The separate arbitrations between BP and Claimants 377 and 412 reached final resolution on September 19, 2013 and August 28, 2013 respectively. (Exs. 11, 29).  The issuance of the Panels' decisions converted the BEL claims to arbitration awards.  Thereafter, instead of holding BEL claims, Claimants 377 and 412 held arbitration awards entitled to enforcement under the FAA. See, Hall Street, 552 U.S. 576, 128 S. Ct. 1396, 1402, 170 L. Ed. 2d 254.  The involved arbitral awards were granted before any injunction was issued regarding calculation of damages.

On October 2, 2013, the Fifth Circuit issued its opinion In re Deepwater Horizon, 732 F.3d 326 (5th Cir. 2013), which reversed this Court's prior ruling and "instruct[ed] the district court to expeditiously craft a narrowly-tailored injunction. . . ." Id. at *59.  In keeping with the Fifth Circuit's instructions, this Court issued a Preliminary Injunction Related to BEL Claims on October 18, 2013, which required the Claims Administrator to temporarily suspend action on Business Economic Loss claims then pending at any stage in the Claims Appeal Process. (Docs.

11697 and 11790).  On November 5, 2013, the Court ordered that the October 18 injunction "will be applied to any claim that as of October 18, 2013 . . . for which payment had not yet been issued." (Doc. 11790).  In response to a subsequent order of the Fifth Circuit, the Court revised its preliminary injunction on December 5, 2013 and issued an order maintaining the December 5 Order on December 24, 2013. (Doc. 12055).

The preliminary injunction was dissolved on May 28, 2014 by order of this Court. (Doc. 12948).  While these injunctions had an impact on the Court's prior ruling,  Claimants do not believe the prior injunctions are applicable to the question presented by this motion. See, In re: Deepwater Horizon, No. 14-30400 and No. 14-30398. Nevertheless, for clarity, Claimants will address the effect of injunctions on confirmability of arbitration awards.

While it is an open question whether a claim may be altered before it becomes an arbitration award, federal law is clear that court cannot exercise injunctive power over arbitration awards beyond the limits imposed by the FAA. See, Hall Street, 552 U.S. 576, 128 S. Ct. 1396, 1402, 170 L. Ed. 2d 254; Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co., 304 F.3d 476, 486-87 (5th Cir. 2002).  A Panel's award under Section 6 of the Settlement Agreement is an arbitration award that is not subject to judicial review, by injunction or otherwise, except for grounds permitted by FAA §§10 and 11. Id.  As stated in Gulf Guar. Life Ins. Co., before the arbitral process is complete, a district court's power to intervene is limited, to-wit:

> **"Under the FAA, jurisdiction by the courts to intervene into the arbitral process prior to issuance of an award is very limited.** *See Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001). **Courts are limited to determinations regarding whether a valid agreement to arbitrate exists and the scope and enforcement of the agreement, including the arbitrability of given underlying disputes under the agreement.** *See id.* at 1085-8.
>
>         *            *            *
>
> "9 U.S.C. § 4 (1999).  **The FAA does not provide therefore for any court intervention prior to issuance of an arbitral award beyond the determination as to whether an agreement to arbitrate exists and enforcement of that agreement by compelled arbitration of claims that fall within the scope of the agreement even after the court determines some default has occurred."** (emphasis added).

19

304 F.3d at 486-87.   Courts are largely prohibited from exercising interlocutory review of arbitration proceedings because there is nothing in the FAA that displaces the limitations on judicial review set by FAA §10 and 11. See, Savers Prop. And Cas. Ins. Co. v Nat'l Union Fire Ins. Co., 748 F.3d 708, 719-20 (5th Cir. 2014).

After an arbitration award is issued, the district court's jurisdiction is strictly limited to confirmation under FAA §9 or relief from the award under FAA §10 or 11 through vacatur, modification or correction upon a timely motion under FAA §12. See, Decker v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 205 F.3d 906 (6th Cir. 2000).  As stated by the Decker Court:

> **"Once an arbitration is conducted under a valid arbitration contract, the FAA 'provides the exclusive remedy for challenging acts that taint an arbitration award."** *Corey v. New York Stock Exch., 691 F.2d 1205, 1211 (6th Cir. 1982).* A party may file a petition to vacate an arbitration award . . . .' *9 U.S.C. § 10(a).* In addition, a party may petition a federal court to modify or correct an award . . . .' *9 U.S.C. § 11(a)-(c).* **An arbitrator's award will be binding on the parties unless they challenge the validity of the underlying contract to arbitrate under § 2 of the FAA or seek to vacate, modify, or correct the award under §§ 10 or 11."** (Emphasis added).

205 F.3d at 909.  See, also, Hall Street, 552 U.S. 576, 128 S. Ct. 1396, 1402, 170 L. Ed. 2d 254; Hamstein, 532 Fed. Appx. at 543-44; Bridgepoint Ventures, 524 Fed. Appx. at 554; Martel, 449 Fed. Appx. at 355 n.1.  At least by August 28, 2013 for Claimant 377 and September 19, 2013 for Claimant 412, the power of the Court and the Fifth Circuit to judicially review the Panels' decisions is limited to grounds set out in FAA §§10 and 11. Id. None of the injunctions involved grounds permitted under FAA §§10 and 11. (Docs. 11566, 11697, 11790, 11928, 12055).  As such, the mandates contained in the injunctions cannot apply to Claimants 377 or 412.

### B.     An Arbitration Award May Not Be Set Aside Or Modified Based On Subsequent Court Decisions Unless Relief Is Justified Under Sections 10 And 11 Of The Federal Arbitration Act.

On May 28, 2014, this Court dissolved the preliminary injunction relating to BEL Claims and implemented Policy 495. (Doc. 12948).  The Court explained its order as follows:

> "Following instructions from a panel of the Fifth Circuit Court of Appeals in case no. 13-30315, this Court previously enjoined the Court Supervised Settlement

Program from issuing final determination notices and payments for "BEL Claims." (Rec. Doc. 11928) On March 3, 2014, a majority of the Fifth Circuit panel affirmed this Court's decisions on certain BEL matters, but ordered that the injunction remain in place "until the mandate of the court is issued." *In re Deepwater Horizon*, 744 F.3d 370, 380 (5th Cir. 2014). The Fifth Circuit recently denied BP's petition for en banc rehearing and for panel rehearing, denied BP's motion to stay issuance of the mandate, and, on May 28, 2014, issued the mandate. Accordingly,"

> **"IT IS ORDERED** that the injunction regarding BEL claims is DISSOLVED and **VACATED**. The Claims Administrator is instructed to resume the processing and payment of claims in accordance with the terms of the Settlement Agreement."

> **"IT IS FURTHER ORDERED** that the Claims Administrator's Policy No. 495, "Business Economic Loss Claims: Matching of Revenue and Expenses" shall be applied to all BEL Claims currently in the claims process at any point short of final payment, including those claims currently in the claims appeal process, save and except those claims that had prior to October 3, 2013: received a final Eligibility Notice or Denial Notice and either (a) no timely appeal had been filed or (b) did not satisfy the criteria of an appealable claim under the terms of the Settlement Agreement. " (footnotes omitted).

(Doc. 12948). The order was based on the Fifth Circuit's decision In re Deepwater Horizon, 744 F.3d 370, 380 (5th Cir. 2014). The Fifth Circuit's decision did not specify that the cut-off point be payment, rather the decision addressed the method of calculation used by the Claims Administrator and does not mention awards that have been issued by Appeal Panel decisions. Id.

Well before the March 3, 2014 Fifth Circuit decision and even before the first injunction was issued on October 2, 2013, the BEL claims of Claimants 377 and 412 had been arbitrated and arbitrial awards issued by the Appeal Panels.[1] (Exs. 11, 29). Once an arbitration is conducted, as with Claimants 377 and 412, the FAA "provides the exclusive remedy for challenging acts that taint an arbitration award" and no other judicial review or intervention is permitted. See, Hall Street, 552 U.S. 576, 128 S. Ct. 1396, 1402, 170 L. Ed. 2d 254; Gulf Guar. Life Ins. Co., 304 F.3d at 486-87; Decker, 205 F.3d at 909.

---

[1]    Claimants' motion to confirm and this brief are not intended to address whether the Court can issue orders affecting calculations of awards for BEL Claims that have not been reduced to arbitration awards by an Appeal Panel Decision under Section 6 of the Settlement Agreement. This motion does not place such issue before the Court.

In the instant case, the Court May 28 Order appears to direct Claimants' arbitration awards back to the Claims Administrator for recalculation using Policy 495 based on In re Deepwater Horizon, 744 F.3d 370, 380 (5th Cir. 2014). (Doc. 12948). In essence, the Appeal Panels' decisions and the resulting awards for Claimants 377 and 412 were vacated by the Court's order on grounds not permitted under FAA §§10 or 11. See, Hall Street, 552 U.S. 576, 128 S. Ct. 1396, 1402, 170 L. Ed. 2d 254; Gulf Guar. Life Ins. Co., 304 F.3d at 486-87; Decker, 205 F.3d at 909. Such a disturbance of an arbitration award is prohibited by the FAA. Id.

Even if the Appeal Panels' awards for Claimants 377 and 412 were the product of mistakes of law or fact, there would still be no grounds for disturbing their decisions under the FAA. See, e.g., Bain v. Bank, 2013 U.S. App. LEXIS 18180 (5th Cir. 2013)("manifest disregard of the law" not basis for vacatur or modification); Woods v. PAM Transp., Inc.-LU, 440 Fed. Appx. 265, 269 (5th Cir. 2012)("manifest disregard" not grounds for vacatur or modification); Citigroup Global Markets, Inc. v. Bacon, 562 F.3d 349, 358 (5th Cir. 2009)(judicial review of arbitration award strictly limited to grounds in FAA §§10 and 11). Under Hall Street and all subsequent case law interpreting the FAA, no judicial review is allowed of an arbitration award except on the limited basis permitted by §§10 and 11 of the FAA. See, Oxford Health Plans, LLC v. Sutter, 133 S. Ct. 2064, 2068; 186 L. Ed. 2d 113, 119 (2013)(Hall Street prohibits vacatur of arbitration award even for patent mistake of law or fact); Hamel-Schwulst v. Country Place Mortg. Ltd., 406 Fed. Appx. 906, 914 (5th Cir. 2010)(court cannot vacate arbitration award based on merits of party's claim or defense); Apache Bohai Corp. LDC v. Texaco China BV, 480 F.3d 397, 409-10 (5th Cir. 2007)(arbitrator's findings of facts must be accepted as true); Rogers v. KBR Technical Services, Inc., 2007 U.S. Dist. LEXIS 83070 *9-*10 (S.D. Tex. 2007)(mistake of law or fact insufficient to vacate award). The sound policy underpinning these restrictions is stated in Oxford Health as follows:

> "**Under the FAA, courts may vacate an arbitrator's decision "only in very unusual circumstances."** *First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).* **That limited judicial review, we**

> have explained, "maintain[s] arbitration's essential virtue of resolving
> disputes straightaway." *Hall Street Associates, L. L. C. v. Mattel, Inc., 552 U.S.
> 576, 588, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008).* **If parties could take "full-
> bore legal and evidentiary appeals," arbitration would become "merely a
> prelude to a more cumbersome and time-consuming judicial review process."**
> *Ibid.*" (emphasis added).

133 S. Ct. at 2068, 186 L. Ed. 2d at 119. This brief does not address the Court's decision to send

any other claims back for recalculation where those claims have not yet been reduced to arbitration

awards. But, to remain consistent with the requirement of the FAA and federal law, the Court's

Order of May 28, 2014 should not be applied so as to vacate the arbitration award rendered by

Appeal Panels in favor of Claimants 377 and 412. Those awards should be confirmed under the

FAA.

### C.   Claimants' Arbitration Awards May Not Be Disturbed Based On A Contractual Expansion Of Judicial Review In The Settlement Agreement.

Claimants are mindful of the discretionary review provision in Section 6.6 of the

Settlement Agreement. Section 6.6 does not exclude confirmation of arbitration awards, but as

discussed below, the breadth of this provision is affected by the FAA. Section 6.6 states:

> "6.6   Court Inherent Jurisdiction. The Court maintains the discretionary right to
> review any Appeal determination to consider whether the determination was in
> compliance with the Agreement. Upon reviewing such a determination, the Court
> shall treat the Appeal determination as if it were a recommendation by a Magistrate
> Judge."

(Doc. 6430-1 at 64). However, under controlling federal law, the parties to a contract do not have

the power to expand the scope of judicial review of an arbitration award by contractual provisions.

See, Hall Street, 552 U.S. at 584, 128 S. Ct. at 1403, 170 L. Ed. 2d at 263. This very question was

considered by the Supreme Court in Hall Street. Id. The parties in Hall Street settled their litigation

by a court supervised settlement that provided for arbitration. Hall Street, 552 U.S. at 579, 128 S.

Ct. at 1400-01, 170 L. Ed. 2d at 260. The Hall Street parties contractually agreed to expand the

scope of judicial review of any resulting arbitration award by allowing the district court to consider

whether the arbitrator erred in findings of fact or conclusions of law. Id.  The pertinent provision stated, in part:

> "The United States District Court for the District of Oregon may enter judgment upon any award, either by confirming the award or by vacating, modifying or correcting the award.  The Court shall vacate, modify or correct any award:  (i) where **the arbitrator's findings of facts are not supported by substantial evidence, or (ii) where the arbitrator's conclusions of law are erroneous.**" App. to Pet. for Cert. 16a." (emphasis added).

Hall Street, 552 U.S. at 579, 128 S. Ct. at 1400-01, 170 L. Ed. 2d at 260.  The Hall Street Court held that contractual expansion of judicial review is not permitted by the FAA and limited the district court's authority to vacatur, modification or correction of arbitration awards on the very restricted grounds allowed by 9 U.S.C. §§10 and 11. Hall Street, 552 U.S. at 579-81, 128 S. Ct. at 1401-02, 170 L. Ed. 2d at 260-62.  An agreement by contracting parties to expand the scope of judicial review is a nullity under the FAA and applicable federal law. See, Nat'l Resort Mgmt. Corp. v. Cortez, 278 Fed. Appx. 377 (5th Cir. 2008); Woods v. PAM Transp., Inc.-LU, 440 Fed. Appx. 265, 269 (5th Cir. 2012); Martel, 449 Fed. Appx. at 353-54; Citigroup Global Markets, Inc. v. Bacon, 562 F.3d 349, 358 (5th Cir. 2009).

Section 6.6 rests on the "Court Inherent Jurisdiction". (Doc. 6430-1 at 64).  However, with great respect for the Court, when it comes to judicial review of arbitration awards, the inherent authority of the Court is limited to the grounds provided in FAA §§10 and 11. See, Hall Street, 552 U.S. at 579, 128 S. Ct. at 1400-01, 170 L. Ed. 2d at 260; Moses H. Cone Mem'l Hosp., 460 U.S. 1, 103 S.Ct. at 942, 74 L.Ed.2d at 786 n. 32.  Discretionary review of a Panel's Award that goes further is not permitted under the FAA as elucidated in Hall Street and all subsequent cases. See, Hall Street, 552 U.S. at 584, 128 S. Ct. at 1403, 170 L. Ed. 2d at 263; Gulf Guar. Life Ins. Co., 304 F.3d at 486-87.

In the case of Claimant 377, BP sought discretionary review and it was denied by the Court. (Sec. 6.6, Doc. 10185-1 at 3-4). (Exs. 14, 15, 16).  As to Claimant 412, even if BP could now request discretionary review of Claimants' awards, BP's requests could go no further than a motion

to vacate, modify or correct under FAA §§10 and 11 and such a motion would have to be made within the three month period of FAA §12. Id. Even if BP were now permitted to make a motion to vacate, correct or modify the awards, there could still be no relief for BP because there exists no grounds for such relief under FAA §§10 or 11.

Claimants' analysis must return to the observation by the Fifth Circuit regarding the Court's consideration of Claimants 377's and 412's motion to confirm::

> "As the Supreme Court explained in *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 572 (2008), '[u]nder the terms of §9, a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§10 and11.'" (emphasis added).

In re Horizon, 2014 U.S. App. LEXIS 16377, 5 (5th Cir. La. Aug. 25, 2014). BP has never asserted that any grounds under FAA §§ 10 or 11 exist and, in all candor, there are none. Therefore, Movants respectfully submit this Court "must grant" Claimants' motions to confirm their respective arbitration awards. See, Hamstein, 532 Fed. Appx. at 543-44 (*citing*, Hall Street, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254).

## CONCLUSION

Under the terms of the Settlement Agreement, the Federal Arbitration Act and applicable law, Claimants pray the Court to grant orders confirming the arbitrators' awards (Panels' Decisions) in favor of Claimants.

RESPECTFULLY SUBMITTED,

s/E. J. Saad
E. J. SAAD (AL86145J)
ejsaad@ejsaadlaw.com

s/ Matthew Andrews
MATTHEW ANDREWS (AL167247)
mandrews@ejsaadlaw.com
ATTORNEYS FOR CLAIMANT 377 AND
CLAIMANT 412

OF COUNSEL:

E. J. SAAD LAW FIRM

25

6207 COTTAGE HILL ROAD, SUITE G
MOBILE, ALABAMA  36609
Phone:  (251) 660-0888
Fax:      (251) 660-0777

*S/Frederick T. Kuykendall, III*
FREDERICK T. KUYKENDALL, III
ftkuykendall@yahoo.com
ATTORNEYS FOR CLAIMANT 377 AND
CLAIMANT 412

OF COUNSEL:

KUYKENDALL & ASSOCIATES, LLC
AL Bar No.: ASB4462A59F
Federal Bar No.: KUYKF4462
P.O. Box 2129
Fairhope, Alabama 36533
Phone: (251) 928-4008
Fax: (251) 928-2151