Exhibit 10

<u>RESPONSE AND FINAL PROPOSAL OF</u>
██████ ███████, ███.

███████ ████████, ███., (████████ or Claimant), respectfully submits this Final Offer and Response to BP Exploration & Production, Inc.'s, (BP), Initial Offer with regard to Claim No.100089377.  ████████ specifically disagrees with BP's arguments regarding the Claims Administrator's treatment of certain Brokerage Expenses, whether the Claims Administrator misclassified one of ████████ expenses and the arguments presented regarding the "Matching" and "Smoothing" issues addressed in the Court's Orders of March 5, April 5 and April 9.

## I.     The Claims Administrator's Calculation of ████████ Compensation Amount is Correct.

The BP Parties' Memorandum in Support of its Initial Proposal (BP Memorandum) suggests that the Claims Administrator mistreated certain Brokerage Expenses and misclassified certain fixed expenses as variable. (Doc. ID 11264500 at 4, 5).   Within the Settlement Agreement, the Claims Administrator is directed and empowered to use his discretion to request source documentation from the Claimant and under the Approved Policies. (Doc. ID 6430-8).  Accountant Reviewer's, as employed by the Claims Administrator, "have the ability to reclassify the categorization of an account (regardless of impact to type – fixed/variable) as seen on the claimant's P&L to ensure that the true nature of the account is reflected properly within the business economic loss calculation." (Policy ID 361).  These are discretionary acts, and while the initial standard of review on Appeal is "De Novo," (Doc. 6279-1 at 60), where the challenged decision

arises from the Claim Administrator's discretionary act, the standard of review is not entirely de novo.

Even where review is de novo, if the Claim Administrator's Award rests on his discretionary decisions, the propriety of those discretionary decisions is reviewed under an abuse of discretion standard. Based on Fifth Circuit case law, a reviewer should apply a de novo standard to those portions of the decision not involving discretion, but an abuse of discretion standard to the Claim Administrator's discretionary decisions. Hebert v. Rodriguez, 430 Fed. Appx. 253, 255 (5th Cir. 2011) (district court's factual findings reviewed under the abuse of discretion standard, while legal conclusions reviewed under "de novo" standard); Becker v. Tidewater, Inc., 586 F.3d 358, 367, 369 (5th Cir. 2009) (under maritime law, trial court's discretionary evidentiary rulings are review under abuse of discretion standard, while contract interpretation reviewed de novo); Cardinal Servs. v. Omega Protein Inc., 304 Fed. Appx. 247, 251, 255 (5th Cir. 2008) (maritime law reviews discretionary evidentiary rulings for abuse of discretion, while questions of law are reviewed de novo). Because the Settlement Agreement is governed by General Maritime Law, the Fifth Circuit's standard of review for discretionary decisions is obligatory. (Settlement Agreement at §36.1).

An administrator's discretionary decision will be overruled by a court under the abuse of discretion standard only if the administrator acted arbitrarily or capriciously. See, Meditrust Financial Serv. Corp. v. Alcorn, 168 F.3d 211 (5th Cir. 1999) ("arbitrary and capricious standard for review of plan administrator's decision"); Wildbur v. Arco Chem Co., 974 F.2d 631, 637 (5th Cir. 1992) (if plan grants discretion to administrator,

WHITEHEAD - 146

his discretionary decisions reviewed under abuse of discretion standard, administrator's legal decisions reviewed under de novo standard); <u>Phillips v. Maritime Ass'n – I.L.A. Local Pension Plan</u>, 194 F. Supp. 2d 549, 554 (E.D. Tex. 2001) (administrator's discretionary decisions reviewed under abuse of discretion standard).

Furthermore, under Section 4.3.8 of the Settlement Agreement, the Claims Administrator and his Vendors are instructed to evaluate the Claimant's supporting documents and claim forms:

> "under the terms in the Economic Damage Claim Process to produce the greatest ECONOMIC DAMAGE COMPENSATION AMOUNT that such information and supporting documentation allows under the terms of the ECONOMIC DAMAGE CLAIM FRAMEWORK."

(Doc. 6430-1 at 22).  In essence if a Claimant's claim documentation can be seen in two lights, the more favorable one should be used to calculate the claim.  BP agreed to this by agreeing to the Settlement Agreement, but through this appeal BP seeks to undue that promise.  The Claims Administrator, using his and his Vendor's judgment, has evaluated and accurately determined the nature of the appealed expenses.  BP's appeal and its arguments violate the Settlement Agreement, specifically Section 4.3.8; as such, they should be rejected, and the Claimant's award affirmed.

### A.   The Claims Administrator's Treatment of Brokerage Expenses was Correct.

The Claims Administrator correctly calculated ███████ Compensation Amount including income and expenses related to freight carried pursuant to a brokerage agreement between ███████ and ███████████████████████ (Transportation, Inc.).  ███████ and Transportation, Inc. are separate and distinct

3

entities as was determined by the Claims Administrator.  (Doc. ID 10549381 at 1).

BP is in error where it cites Claims Administrator's Policy No. 328 in an attempt to support an argument it makes about intercompany sales/related party transactions. (Pol-328).  Pol-328 explains that the Claims Administrator will not include "(a) insurance proceeds, (b) interest income, and (c) gains or losses from sales of assets" as "revenue." Pol-328 makes no mention, at all, of intercompany sales/related party transactions.[1]  In fact no authority exists for the "rule" being promoted in BP's Memorandum.

████████ P&Ls for 2007, 2008, 2009, 2010 and 2011 record "Brokerage Income" and "Brokerage Expense" each month. (Doc. ID 3862553, 3862668, 3862721, 3862793, 3862859).  Brokering loads is and was in the Benchmark and Compensation Periods a normal part of ████████ operations. (Id.; Doc. ID 8608534).   From September 2010 to December 2010, ████████ also carried brokered freight for multiple vendors; some of this freight was brokered by Transportation, Inc. (Doc. ID 10249370). The Claims Administrator, in his discretion, requested additional source documentation in support of ████████ brokerage transactions.  ████████ provided a written explanation and a monthly breakdown of expenses. (Doc. ID 10249370 and 10249375). The Claims Administrator was able to clearly understand ████████ brokerage

---

[1] In its Initial Proposal, BP places quotation marks around the words "intercompany sales / related party transactions" and "under the normal course of operations in an arm's length transaction," then BP cites to Pol-328. (BP brief at 2).  These phrases do not appear in Pol-328 or in any Claims Administrator's Approved Policy, and they do not appear in the Settlement Agreement.

████████ - 148

transactions where BP's argument attempts to create confusion.[2]   The Claims

Administrator stated:

> "On the original P&L submitted for December 2010, a large year
> end adjustment was made to record months of brokerage expenses invoiced
> from ██████ ███████ ████████████ ███ █, separate business that
> started in 2010. A monthly breakdown was supplied that indicated the
> actual months the amounts should have been expensed (10249375). The
> workbook was updated to reflect this information. The claimant's
> representatives were confused about the treatment of this expense during
> multiple conversations with the Accounting Review Team. They met with
> their client in order to get a full understanding of the transactions that took
> place in late 2010. The final clarification explained that the claimant, ██████
> ████████ ███ ████ received income from multiple vendors to haul
> loads. These jobs were generated by ████ and ████ paid a 15%
> commission to BWT for brokering the transportation agreements
> (10249370)."

(Doc. ID 10549381 at 1, ¶ 18).

As stated by ████████ accountant, "'[w]ith the freight business slowing down

in 2010'" ████████ needed to find freight to haul. (Doc. ID 10249370).  ████████ paid

Transportation, Inc. fifteen (15%) percent of the gross pay received for hauling loads that

were brokered by Transportation, Inc. Id.  Income received in execution of the agreement

was revenue and expenses incurred were variable expenses under the Settlement

Agreement.  (Doc. ID 10549381).

BP's argument is incorrect and unfounded based on the facts of this claim and the

Settlement.   The Claims Administrator conducted a proper investigation, analysis, and

calculation of the claim under the Settlement.   There was not an abuse of discretion by

---

[2] BP's argument continues to rely on preliminary, admittedly mistaken, explanations that were subsequently
corrected by Whitehead as acknowledged by the Claims Administrator.

██████████ - 149

the Claims Administrator and the full award for ▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮ should be confirmed by the Appeal Panel.

## II.   The Claims Administrator's Classifications of Expenses are Correct.

In its Memorandum, BP argues that the Claims Administrator misclassified the "Publix Discounts" expenses as variable rather than fixed expenses. (Doc. ID 11264500). BP is incorrect.  Exhibit 4D of the Settlement Agreement specifically outlines the categories of expenses and their classifications as being either "Fixed" or "Variable." The Claims Administrator has given authority to Accountant Reviewers to employ their discretion in determining whether certain expenses are to be classified as "Fixed" or "Variable" when reviewing non-conforming descriptions of an expense on a claimant's Monthly P&L.  The specific line item that BP is basing its appeal on is described as "Publix Discounts Given" which the Claims Administrator categorized as a variable expense. (Doc. ID 11264500).  "Discounts & Rebates" is identified in Exhibit 4D to the Settlement Agreement as a "Variable" expense. (Doc. ID 6430-11 (hereafter "Exhibit 4D" or "Attachment A")).   The Settlement Agreement states that "the parties have agreed to a defined list of fixed and variable expenses as reflected in Attachment A." (Doc. 6430-10 at 2).  Now BP is trying to back out on its agreement; Exhibit 4D was the product of extensive negotiation between BP and Class Counsel.  BP does not argue that the account "Publix Discounts" records anything other than discounts as that term is defined in both legal and non-legal or financial dictionaries. Rather, BP argues that Exhibit 4D should be modified so that both interest and discounts would then be

6

classified as fixed expenses.[3] (Doc. ID 11264500).   The decision of the Claims Administrator to label the expense item "Publix Discounts Given" as "Discounts & Rebates (VARIABLE)" is clearly consistent with Exhibit 4D of the Settlement Agreement. (Doc. ID 10549389).

The Claims Administrator classification, analysis, and award are correct under the terms of the Settlement and the full award for ▇▇▇▇▇ should be confirmed by the Appeal Panelist.

**II.   Adoption of Prior Arguments Regarding the "Matching" and "Smoothing" Issues and the Court's Orders of March 5, April 5 and April 9.**

▇▇▇▇▇ adopts its prior facts and arguments as presented in its Initial Offer and Supporting Memorandum. ▇▇▇▇▇ directs the Appeal Panelist to footnote 2 of BP's Memorandum which acknowledges that the Third issue presented by BP in its Appeal is "governed by the Court's prior Orders" of March 5, April 5 and April 9 and therefore should be denied.

<u>CONCLUSION</u>

For the reasons stated herein and in its prior brief, ▇▇▇▇▇ asks the Appeal Panelist to issue a finding that the basis of BP's Appeal is unfounded, that ▇▇▇▇▇ has complied with the terms of the Settlement Agreement, and that a Compensation Amount of $1,172,564.98 with a RTP Multiplier of 0.25 is the appropriate award.   Such a result is

---

[3] "**discount**, *n*. 1. A reduction from the full amount or value of something, esp. a price.

\*      \*      \*      \*      \*

"**cash discount**. 1. A seller's price reduction in exchange for an immediate cash payment. 2. A reduction from the stated price if the bill is paid on or before a specified date."

<u>Black's Law Dictionary</u> 498 (8th ed. 2007).

▇▇▇▇▇ - 151

in keeping with the terms, methods and formulae established by the Settlement Agreement. ████████ further requests that the Appeal Panel confirm that the $2,757.50 reimbursable accounting support determined by the Claim Administrator is appropriate. The Award granted by the Claim Administrator should be upheld.

<div style="margin-left:40%">

s/E. J. Saad
E. J. Saad

s/Matthew Andrews
Matthew I. D. Andrews
Attorneys for Appellee/Respondent,
Benny Whitehead, Inc.

</div>

OF COUNSEL:

E. J. SAAD LAW FIRM
6207 Cottage Hill Road, Suite G
Mobile, Alabama  36609
Telephone (251) 660-0888
Fax:  (251) 660-0777
ejsaad@ejsaadlaw.com
mandrews@ejsaadlaw.com

WHITEHEAD - 152

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Brief has been served on the following named persons by electronic filing on this 22nd day of July, 2013:

Richard C. Godfrey, Esq.
Kirkland & Ellis, LLP
300 North LaSalle Blvd.
Chicago, Illinois 60654


R. Keith Jarrett, Esq.
Liskow & Lewis
Suite 500
One Shell Square
701 Poydras Street
New Orleans, Louisiana 70113


/s/ Matthew Andrews
Matthew I. D. Andrews

9

WHITEHEAD - 153