# Exhibit 23

BP'S INITIAL PROPOSAL REGARDING CLAIM NO. 1779

INTRODUCTION

BP Exploration & Production Inc. ("BP") respectfully submits this Memorandum in Support of its Initial Proposal with regard to the appeal of Claim No. 1779 (Claimant    Inc.).

Claimant in this appeal is a construction company located in Mobile, Alabama specializing in the maintenance and rehabilitation of roads, bridges, highways and civil cite work projects. The Settlement Program awarded Claimant $142,576.07 in pre-RTP lost profit ($150,049.87 post-RTP).

BP files this appeal because the Settlement Program erred in its calculation of the Claimant's Award Amount by failing to apply financial data corrections to the periods in which the financial data reporting errors occurred.[1] BP submits an Initial Proposal of $130,000 pre-RTP.

EXPLANATION OF BP'S POSITION

A.     The Settlement Agreement's Business Economic Loss Framework

The BEL Framework provides negotiated methodologies for evaluating (1) whether any purported losses were caused by the Deepwater Horizon Spill and (2) if so, the amount of the losses. The methodologies for evaluating causation and compensation both involve the comparison of claimant's performance before and after the Spill on a monthly basis and thus require the accurate and consistent reporting of pre-Spill and post-Spill monthly performance data from both an economic and financial perspective.

---

[1] To the extent these issues are addressed by any of the Court's prior orders, they are appealed solely for purposes of preserving further rights of appeal. BP respectfully refers the Appeals Panel to the Court's prior orders.

- 071

To determine whether a claimant in Zone D, such as this Claimant, established causation, one test which the Settlement Program applies is the "V-Shaped Revenue Pattern" test set forth in Exhibit 4B, Section III.A.  In order to pass this test, a Claimant must establish:

- "a decline of an aggregate of 15% or more in total revenues over a period of three consecutive months between May-December 2010 compared to the same months in the Benchmark Period selected by the claimant; and

- An increase of an aggregate of 10% or more in total revenues over the same period of three consecutive months in 2011 compared to 2010."

Settlement Agreement, Ex. 4B, Sec. III.A.  Because the V-test turns on changes in monthly revenue over time, it is essential that the financial data used as an input for the test properly measure revenue generated during the relevant months.  Misapplication of revenue, including failure to attribute revenue to the months in which the revenue was earned, would render the test meaningless.  Other causation tests likewise depend on the proper application of revenue.

If a claimant passes one of the applicable causation tests, the Settlement Program then calculates whether the claimant incurred any loss, which is defined as a reduction in monthly variable profit, and, if so, the appropriate amount of compensation.  Compensation is measured by determining the amount of decrease in the claimant's variable profits in defined months before and after the Spill.  The Settlement Agreement instructs that variable profits are to be calculated as follows:

1. Sum the monthly revenue over the period.

2. Subtract the *corresponding* variable expenses from revenue over the same time period.

Settlement Agreement, Ex. 4C, p.2 (emphasis added).  The use of variable profit to measure the compensation amount puts a premium on determining in which months revenue was earned and

2

- 072

subtracting the variable expenses incurred in generating the revenue. If the data entered into the methodology does not assign revenue to the correct months and/or does not properly subtract variable costs, it is impossible to accurately measure variable profit.

The BEL Framework documentation requirements underscore that: (1) the relevant measurement unit is the month; (2) P&Ls must therefore be accurate on a monthly basis; and (3) the accuracy of the monthly P&Ls is to be verified by reference to annual data and/or source materials. Specifically, Exhibit 4A, Section 4 requires "*Monthly* and annual profit and loss statements" or "alternate source documents establishing *monthly* revenues and expenses for the claimed Benchmark Period." Settlement Agreement, Ex. 4A, Sec. 4 (emphasis added). That same language makes clear that annual P&L and tax information is required in order to permit the Settlement Program to confirm the accuracy of the monthly P&L data and to identify apparent anomalies in that data. If such anomalies are identified, the Settlement Program is to exercise its discretion to "request source documents for profit and loss statements" so that it may resolve such anomalies and be assured that it is using accurate monthly P&L data. *Id.*

B.   The Settlement Program Failed to Apply Financial Data Corrections To The Periods In Which The Financial Data Reporting Errors Occurred

Claimant's financial data reflects end-of-year corrections, recoded in October of every year, involving bad debt expenses. For instance, Claimant recorded $8,753.00 in October 2008, $78,454.27 in October 2009, and $6,143.25 in October 2010. Claimant's fiscal year is from November through October, and no bad debt expenses were recorded in any months other than October. As such, these expenses are almost certainly end-of-year corrections for prior overstatements of revenue or understatements of expenses.

Under the terms of the Settlement Agreement, which seek to measure changes in actual economic performance, such corrections must be applied to the months in which the errors that

3

are now being corrected occurred.  Otherwise, the calculation will be performed with data that does not reflect actual financial performance and the results will be flawed.  The Settlement Program erred in relying on data that fails to make this necessary correction.

Accordingly, BP makes an Initial Proposal of $130,000 pre-RTP.

- 074