# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 |
| | | SECTION J |
| This document relates to all actions. | * * | |
| | * | Honorable CARL J. BARBIER |
| | * * | |
| | * | Magistrate Judge SHUSHAN |
| | * * * | |

## BP'S REPLY IN SUPPORT OF MOTION FOR RESTITUTION AND INJUNCTIVE RELIEF

BP's evidence on this motion demonstrates that the Claims Administrator's misinterpretation of the Settlement Agreement inflated claims awards by hundreds of millions of dollars.  Class Counsel speculates about purported problems in BP's proof, but offers no evidence to dispute it.[1]  Class Counsel also implicitly acknowledges (as it must) that BP took every legal step to prevent payment of miscalculated awards, to no avail, while Class Counsel advanced every argument conceivable to rush payments under the flawed interpretation.

Nevertheless, Class Counsel wants to keep the money erroneously paid and to realize the benefit of a bargain it never struck.  Lacking any good reason why the Court should abet such an obvious inequity, they offer many questionable ones.  The opposition's main arguments are not persuasive.  The Settlement Agreement and related documents in no way prohibit the Court from correcting errors resulting from misinterpretation of the Agreement, and the law has long recognized that courts should do just that.  As well, BP is not "estopped" from recovering unwarranted overpayments because it meritoriously (but unsuccessfully) sought to prevent them.

The Court should not tolerate any of these inequities.  Future claimants won't get a windfall, and neither should past claimants (or their contingent fee lawyers, accountants, finders, or litigation financiers).  The contract does not contemplate such an unfair result, and would not be a proper class settlement if it did.  And, of course, BP should not be forced to bear the financial cost of an error it pressed to avoid.

---

[1]    Class Counsel's attempt to "reserve" arguments which "may" be available to individual class members and other subjects of BP's motion should be rejected and the motion granted in full based on BP and Class Counsel's submissions.  None of the proposed "reserved" defenses, including, *inter alia*, lack of notice, are valid.  *See, e.g.*, Settlement Agreement § 34.1 (providing that notice to Plaintiffs or Economic Class Counsel must be given to Stephen J. Herman and James P. Roy).

**ARGUMENT**

**I.      The Settlement Agreement and the Individual Releases Do Not Bar Relief**

Class Counsel selectively quotes from the Settlement Agreement and Individual Releases in an attempt to justify the overpayments.  No provision cited by Class Counsel bars recovery of wrongfully-paid claims where: (i) the terms of the agreed-upon settlement have not changed, and (ii) BP was actively litigating and objecting to the method by which these claims were calculated at the time the claims were processed and paid.

Class Counsel cites numerous provisions of the Settlement Agreement and Individual Release[2] in support of its position, including the following:

- "[T]he Agreement shall remain in full force and effect ***notwithstanding the discovery*** after the date of this Agreement or at any other time of any additional ***facts or law, or changes in law***."  Opp. at 11–12 (quoting Settlement Agreement, § 13.4)

- "The Individual Release shall remain effective regardless of any appeals or court decisions ***relating in any way to the liability*** of the Released Parties . . . ."  Opp. at 12 (quoting Settlement Agreement, § 4.4.10.2)

- "[I]t is possible that ***the terms of the proposed settlement agreement may change*** in the future – for better or for worse – as a result of further legal proceedings. However, if you sign the Individual Release, none of these uncertain future events will affect you." Opp. at 12 (quoting Settlement Agreement, Ex. 26, at 1).

    (Emphases supplied).

None of these provisions, or others cited by Class Counsel, address whether BP may recover overpayments, paid in contravention of the Settlement Agreement, over its objection. This motion does not result from the "discovery" of additional facts, a "change" in the law, a

---

[2]    Class Counsel cites terms of the Settlement Agreement that govern the administration of the settlement program, such as provisions describing the process for making claims, the establishment of the Settlement Trust, the requirement of a handwritten signature on the Individual Release, etc.  *See* Opp. at 8–9, nn. 16–18. BP submits that these provisions are tangential to Class Counsel's argument that the Individual Release precludes recovery by BP of overpayments.

development in the liability[3] of the parties, or a change in the Agreement's "terms."[4]  Rather, the Claims Administrator misinterpreted the Settlement Agreement's unaltered terms in contravention of then-existing legal principles,[5] and inflated claims awards based on an agreement and facts that were the same then as they are now.  The clauses Class Counsel cites permit claimants to retain claims awards if: (i) the Court does not finally approve the settlement, at least as written, resulting in alteration of its terms; (ii) BP or plaintiffs' underlying liability changes; or (iii) in some cases, if relevant new facts or law are discovered.  None of those situations is present here.

Class Counsel also seeks shelter behind claimants' Individual Releases.  The Settlement Agreement requires claimants to sign Individual Releases "[a]s a condition precedent to receiving a Settlement Payment" for the benefit of BP.[6]  The Eligibility Notices sent to claimants upon the initial calculation of their awards note that BP is entitled to appeal awards greater than $25,000, and unambiguously states that claimants cannot receive payments until BP's appeal rights have been exhausted — for the obvious reason that BP's maintenance of an objection

---

[3]    The Settlement Agreement's reference to "liability" refers to the underlying liability of the parties against whom claims were settled, not to BP's obligation to fund Settlement Agreement payments, and certainly not to any erroneously imposed obligation to pay under the Settlement Agreement itself.  If it meant the latter, the agreement's substantive terms would have little meaning.

[4]    *See In re Deepwater Horizon*, 732 F.3d 326, 336–37 (5th Cir. 2013); Rec. Doc. 12055 at 5.  The Fifth Circuit recognized that BP litigated the matching issue because it disagreed with the Claims Administrator's *interpretation* of the Settlement Agreement, not because it sought to change any *terms* of the Agreement.  *See In re Deepwater Horizon*, 732 F.3d at 337 ("BP has been arguing at least since September 2012 that treating cash-basis claims by their own terms, that is, treating cash inflows and outflows as revenues and expenses, *violates the express language of the agreement*." (emphasis added)).

[5]    Of course, *Class Counsel* was the main proponent of the erroneous interpretation adopted by the Claims Administrator.  *See* Class Counsel's Request for Formal Policy Statement: Monthly Revenue (Dec. 16, 2012), Rec. Doc. 8964-20.

[6]    Settlement Agreement § 10.9.

prevented the release from becoming effective.[7]  BP appealed *every claim award* at issue in this motion and was actively litigating the matching issue, putting claimants on notice that BP disputed the legitimacy of their claims awards under the Settlement Agreement.

In addition, the Settlement Agreement and Individual Releases make clear that all awards are issued under the auspices of a court-supervised settlement program, and are governed by the overarching Settlement Agreement.[8]  This Court has previously ordered restitution of paid awards that were invalid (in the case of *Thonn*, due to fraud, even for those parties against whom fraud was not alleged).[9]  The same should be done here.  This Court has confirmed that the Settlement Agreement requires matching of revenue with corresponding expenses, and claimants should not be permitted to frustrate that determination by retaining awards that are inconsistent with the terms of the Settlement Agreement.

---

[7]   *See* Excerpt from Sample Eligibility Notice at 3, attached as Exhibit A.  Notably, Claimants often signed and returned the Releases before BP's appeal rights had expired, even though the internal appeals process provided for in the Settlement Agreement could reduce or eliminate entirely the claim award specified in the Releases included with the initial Eligibility Notices.  For example, the sample Eligibility Notice attached as Exhibit A was issued on January 31, 2013, and that claimant signed a Release on February 5, 2013, well before BP's appeal period expired.  *See* Excerpt from Sample Release at 3, attached as Exhibit B.  Treating the signed Releases as binding, executable contracts would lead to the absurd result that these Releases could be used to thwart the operation of the internal appeals process.  This is not a mere hypothetical; at least one claimant is trying to "enforce" a signed Release after its award was rescinded by the CSSP.  *See, e.g.*, Complainant Snodgrass Brothers, Inc.'s Amended Motion to Enforce Release and Settlement Agreement, Rec. Doc. 12893.

[8]   The Settlement Agreement provides that this Court "retain[s] continuing and exclusive jurisdiction over the Parties and their Counsel for the purpose of enforcing, implementing and interpreting this Agreement, including all issues relating to the scope, application and/or operation of the Release . . . including jurisdiction over all Economic Class Members, and over the administration and enforcement of the Agreement and the distribution of its benefits to Economic Class Members."  Settlement Agreement § 18.1.  The language of the Release further makes clear that the claims payment process is governed by the Settlement Agreement and supervised by the District Court.  *See, e.g.*, Ex. B at 2.

[9]   *See* Order & Reasons, Rec. Doc. 12794, at 13 (noting that "[t]he action contemplated in the Special Master's motion [for restitution of funds from Casey Thonn and related professionals] is in the nature of proper administration of the Settlement Program that is under the Court's exclusive control and jurisdiction.").

And, of course, Class Counsel ignores the basic legal principle: restitution should be ordered where payments made were in contravention of the parties' agreement.[10] For all of these reasons, Class Counsel's attempt to use certain terms of the Settlement Agreement and Individual Releases to bar recovery of overpayments is unavailing.[11]

## II. The "Voluntary Payment" Doctrine Does Not Apply

The "voluntary payment" doctrine[12] does not bar restitution. Class Counsel improperly conflates BP's assent to the Settlement Agreement with assent to the payment of the particular claims at issue in BP's motion for restitution. BP agreed to authorize the Claims Administrator to apply the Settlement Agreement, to make compensation determinations pursuant to the terms of the Settlement, and then to issue releases and to pay upon return of releases. Here, the Claims Administrator erred at the first step by misapplying the terms of the Settlement Agreement and then issuing unauthorized releases premised on the misinterpretation. The procedural history of the BEL dispute makes clear that BP *never* assented to this. BP challenged the Settlement Administrator's misinterpretation at every stage, including by, among other things, seeking clarity from the Settlement Program whether it was processing claims in accordance with the BEL compensation framework,[13] appealing individual awards, litigating the matching issue

---

[10]  *See* Restatement (Third) of Restitution and Unjust Enrichment § 35 (2011).

[11]  Because the Settlement Agreement and Individual Release do not bar BP from seeking restitution from claimants, there was no need for BP to seek relief from the Court's Order and Judgment Granting Final Approval, Rec. Doc. 8139, under Rule 60(b) in order to qualify for the present relief. In addition, since BP seeks restitution from the claimants and related professionals directly, the portions of the Settlement Agreement regarding indemnification of the Claims Administrator are irrelevant to the present motion.

[12]  *See* Opp. at 9–11. Class Counsel quotes various provisions of the Settlement Agreement describing the claims administration process in support of their argument that each payment at issue was made by way of "compromise and settlement," *id.* at 10.

[13]  *See* Declaration of Keith Moskowitz in Support of BP's Emergency Motion for a Preliminary Injunction ("Moskowitz Decl."), Rec. Doc. 8964-12, ¶ 9.

before this Court,[14] seeking to enjoin further payments and awards for BEL claims with matching issues,[15] and appealing to the Fifth Circuit.[16]  The fact that claims payments continued to flow from the claims facility despite BP's efforts does *not* mean that these payments were made by BP by way of "settlement and compromise."  The settlement of this matter contemplated that payments would be calculated and made according to a different methodology.

The Restatement's commentary on the "voluntary payment" doctrine makes clear that "*any* payment made in response to a judgment is treated as a payment made under compulsion, at least for the purpose of permitting the judgment debtor to avoid the consequences that would flow from regarding the payment as 'voluntary,'" and further that "failure to obtain or even to seek interim relief from the judgment is not a bar to subsequent restitution." [17]  As described *supra*, BP repeatedly attempted to stop the payment of BEL claims with matching problems, such that none of the payments currently in dispute qualify as "voluntary" payments.

### III.    BP Is Not Judicially Estopped From Seeking Restitution

The doctrine of judicial estoppel is also irrelevant.  None of the three elements required for the application of judicial estoppel are present here.[18]  First, nothing BP has said in its previous filings is "clearly inconsistent" [19] with its efforts now to recover improperly paid

---

[14]  *See, e.g.*, BP's *In Camera* Motion to Reverse and Set Aside the Claim's Administrator's January 15, 2013 Policy Decision Concerning the Business Economic Loss Framework, Rec. Doc. 8963-35.

[15]  *See, e.g.*, BP's Memorandum in Support of Emergency Motion for a Preliminary Injunction Against the Claims Administrator and Settlement Program to Enjoin Payments and Awards for Business Economic Loss Claims Based on Fictitious "Losses," Rec. Doc. 8910-3; Emergency Motion of Defendants-Appellants for an Injunction and Stay Pending Appeal, No. 13-30315 (Apr. 8, 2013).

[16]  *See, e.g.*, Notice of Appeal, Rec. Doc. 9106.

[17]  Restatement (Third) of Restitution and Unjust Enrichment § 18 cmt. c (2011) (emphasis added).

[18]  *See In re Paige*, 610 F.3d 865, 876 (5th Cir. 2010).

[19]  *In re Tex. Wyo. Drilling, Inc.*, 647 F.3d 547, 552 (5th Cir. 2011).

awards.  BP has never wavered from its position that BEL claims for artificially calculated "losses" should not have been paid, nor has it disavowed its right to recovery of wrongfully-disbursed payments.  BP's pleadings have consistently noted the practical difficulty inherent in chasing disbursed payments, particularly when the recipients of these payments include thousands of small businesses that may spend their improper awards upon receipt.[20]  BP's concerns about its practical ability to recover from thousands of small businesses is not "clearly inconsistent" with its position that it is nonetheless entitled to recover inflated or wrongfully paid awards.  BP's present motion recognizes the ongoing practical difficulty it faces in recovering improper payments — the same concern that prompted it to seek deferral of claims payments until after the matter was resolved.

Class Counsel's argument in favor of applying judicial estoppel is also disingenuous in its claim that "[w]ith respect to the second element, the Court of Appeals, when it issued a stay last October, accepted BP's argument."  Opp. at 14.  While it is true that the Fifth Circuit eventually ordered this Court to issue a stay, Class Counsel ignores the fact that this stay was entered months after BP's initial attempts to enjoin the payment of BEL claims.[21]  BP's present motion for restitution is necessary in large part *because* it was unable to stop the flow of payments in March and April of 2013.[22]  It would be a gross distortion of the judicial estoppel doctrine to bar BP's efforts to recover funds that it *unsuccessfully* argued should not be paid,

---

[20]   *See, e.g.*, Emergency Motion of Defendants-Appellants for an Injunction and Stay Pending Appeal at 17–18, No. 13-30315 (Apr. 8, 2013).

[21]   BP filed an emergency motion to enjoin further payments and awards for BEL claims based on "non-existent, artificially calculated 'losses'" on March 15, 2013, *see* Rec. Doc. 8910-2, which this Court denied, Rec. Doc. 9202.  BP then filed an emergency motion for an injunction and stay pending appeal, which was denied by a panel of the Fifth Circuit on April 22, 2013, *see* Doc. 00512216552, No. 12-30315.

[22]   *See Hopkins v. Cornerstone Am.*, 545 F.3d 338, 348 n.2 (5th Cir. 2008) ("In practice, we have required that the prior court *actually accept* the party's earlier position, either as a preliminary matter or as part of a final disposition." (internal quotation marks omitted)).

particularly when Class Counsel sought the extra-legal payments and has not identified any "clear" inconsistency between BP's positions.

### IV.   Class Counsel's Argument for Application of the "Unclean Hands" Doctrine Is Frivolous

Class Counsel's argument in favor of application of the "unclean hands" doctrine is an excuse to air a laundry list of Class Counsel's ill-founded grievances.  Not only does BP emphatically disagree with Class Counsel's characterization of its conduct, the alleged actions Class Counsel point to are wholly unrelated to the relief BP seeks in its motion for restitution. Courts have consistently held that the doctrine of unclean hands applies only "when a party seeking relief has committed an unconscionable act *immediately related* to the equity the party seeks in respect to the litigation."[23]

Class Counsel does not explain how any of BP's allegedly inequitable conduct relates to the equitable relief presently sought by BP.  BP pursued its challenge to the Claims Administrator's erroneous interpretation of the BEL compensation framework, which the Fifth Circuit held was "completely disconnected from any reasonable understanding of calculation of damages,"[24] in good faith.  Furthermore, BP made every effort to prevent the present situation from occurring by seeking injunctions from this Court and the Fifth Circuit; efforts that Class Counsel vigorously opposed.

---

[23]   *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001) (emphasis added); *see also Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933) (the unclean hands doctrine may preclude equitable relief only when the wrongful act "has *immediate and necessary relation* to the equity that [the party] seeks" (emphasis added)); *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979) ("The maxim of unclean hands is not applied where [the party's] misconduct is not directly related to the merits of the controversy between the parties . . . .").

[24]   *In re Deepwater Horizon*, 732 F.3d at 339.

**V.     BP's Request for Injunctive Relief Should Be Granted To Prevent Irreparable Harm to BP**

Contrary to Class Counsel's claim, this Court has the authority to issue an injunction preventing further dissipation of the wrongfully-calculated awards identified by BP because these awards are assets that would be the subject of the final equitable decree entered at the conclusion of this proceeding if BP prevails (as it should).[25]  This Court has already issued an order confirming that its ongoing and exclusive jurisdiction and supervision over the Settlement Programs confers authority to order equitable restitution of funds received by claimants from the Settlement Program;[26] BP's present request for injunctive relief recognizes that this Court's authority also extends to enjoining the dissipation of the assets at issue.

Class Counsel's argument that BP's evidence in support of a heightened risk of dissipation of the assets at issue is "speculative" is also wrong; as established in the Gaspardo Declaration, the corporate structure of the entities that received improper payments leads to a heightened risk that these entities will dissipate the assets received from the Settlement Program. BP has submitted evidence establishing that an adequate remedy at law does not exist.  More than three-quarters of the sample of claimants reviewed are structured as pass-through entities, which facilitates the movement of monies out of the entities.  *See* Declaration of Brian Gaspardo ¶¶ 17–30.  An additional subset of claimants received awards well in excess of the entity's existing net worth and annual earnings, making it highly unlikely that these claimants would have sufficient financial resources to return in full any overpayment from general corporate assets beyond the overpayment itself.  *Id.*  Class Counsel has not submitted any evidence to

---

[25]     *See Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290–91 (1940) (federal courts can freeze assets to protect a final equitable remedy when preliminary relief is "a reasonable measure to preserve the status quo").

[26]     Order & Reasons, Rec. Doc. 12794, at 10, 20-22.

dispute the findings and conclusions of Mr. Gaspardo with respect to the corporate structure of the entities against whom injunctive relief is sought.

As BP has consistently stated in its requests for injunctive relief, and as the Fifth Circuit recognized when it eventually issued a stay of BEL payments, BP faces enormous practical difficulties in recovering assets once they have been disbursed to individual claimants. Enjoining further dissipation of those assets is the only way to avoid compounding the irreparable harm BP continues to suffer as a result of the wrongful payment of inflated claims.

## CONCLUSION

For these reasons and those stated in BP's opening memorandum, BP's Motion for Restitution and Injunctive Relief should be granted.  The Court should order the recalculation of paid awards pursuant to Policy 495, and the recovery of any overpayments, in order to avoid unjustly enriching claimants whose claims happened to be processed under the Claims Administrator's now-invalidated interpretation of the Settlement Agreement.  Furthermore, in order to prevent further dissipation of monies that rightfully belong to BP, this Court should enjoin claimants identified in Exhibit B of the Gaspardo Declaration from dissipating the portions of those awards identified as overpayments pending the recalculation of their awards.

August 29, 2014

Mark Holstein
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX  77079
Telephone:  (281) 366-2000
Telefax:  (312) 862-2200

Respectfully submitted,

  /s/ Kevin M. Downey
Kevin M. Downey
F. Lane Heard III
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Telefax:  (202) 434-5029

Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, DC 20004
Telephone:  (202) 942-5000
Telefax:  (202) 942-5999

  /s/ Don K. Haycraft
S. Gene Fendler (Bar #05510)
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

Jeffrey Lennard
Keith Moskowitz
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606
Telephone:  (312) 876-8000
Telefax:  (312) 876-7934

Richard C. Godfrey, P.C.
Wendy L. Bloom
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Telefax:  (312) 862-2200

**OF COUNSEL**

Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Telephone:  (202) 879-5000
Telefax:  (202) 879-5200

**ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.
AND BP AMERICA PRODUCTION COMPANY**

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, on this 29th day of August, 2014.

*/s/ Don K. Haycraft*
Don K. Haycraft