# Exhibit 17

**Code of Conduct**

**1.0     OBJECTIVE**

It is the objective of the Claims Administrator to provide this Code of Conduct (this "Code"), which will establish standards and practices for proper business conduct for all Claims Administrator Office ("CAO") staff. The CAO expects and requires all staff to comport themselves with this Code in keeping with the highest standards of ethics and integrity.

**2.0 APPLICABILITY**

**2.1 COVERED PARTIES**

2.1.1 This Code applies to CAO staff, whether individuals, contractors, subcontractors, consultants, part-time and full-time staff of the Court Supervised Settlement Program ("CSSP") whose duties are conducted primarily in the Program Management Office ("PMO") (individually, the "Covered Party" or collectively, the "Covered Parties").

**2.2 NON-COVERED PARTIES**

Though this Code does not apply to the following parties, such parties are expected to conduct themselves in accord with the principles outlined in section 3.0 below.

2.2.1 Outside Counsel retained by the CAO are not considered to be Covered Parties, but are expected to conduct themselves in accordance with their applicable Code of Professional Conduct.  Outside Counsel are expected to promptly report any ethical or conduct issues, including possible conflicts of interest that may impact the integrity of the CSSP.

2.2.2 The Claims Administrator, as a court appointed official, affirmed to the Court that there were no grounds for disqualification that would prevent his service as the Claims Administrator.  The Claims Administrator and other employees of Juneau David APLC, whose services are provided to the Claims Administrator on a part-time basis ("Special Counsel") have a continuing obligation to the Court to seek advice and guidance directly from the Court on any potential conflicts or ethics related to the services in connection with the CSSP that could potentially disqualify them.  Although neither the Claims Administrator nor any partners, associates or other employees of Special Counsel are considered to be Covered Parties, they are expected to conduct themselves in accordance with their applicable Code of Professional Conduct.

2.2.3. Appeals Panelists, as Court appointed officials, are not considered to be Covered Parties, but are expected to conduct themselves in accordance with their applicable Code of Professional Conduct. They will seek advice and guidance directly from the Court on any potential conflicts or ethics issues.

2.2.4.  2.1.2 All court-appointed DHECC vendors, HUB enterprises, or other major vendors and contractors ("Vendors") are not to be considered to be Covered Parties, but shall be subject to a separate Code of Conduct Policy similar to this Code (the "Vendor Code"), and are expected to have in place a code of conduct applicable to employees working on the DHECC program that, at minimum, will comport with the Vendor Code. The Vendor Code shall provide that if Vendors do not have in place a code of conduct, contracts will require that Vendor employees working on the DHECC program will comply with the Vendor Code.  Vendors are free to hold their employees to stricter guidelines if they so choose. Vendors are responsible for training their employees and ensuring compliance with applicable codes of conduct. Vendors are required to promptly report and alert the CAO of any ethical or conduct issues, including possible conflicts of interest that may impact the integrity of the CSSP.

### 3.0    PRINCIPLES

- The success of the CSSP is dependent upon the trust and confidence that we earn from the Court, BP, the Plaintiffs' Steering Committee (the "PSC"), claimants and the public at large.

- We gain credibility by providing a fair and impartial claim adjudication process and by adhering to honest and transparent business practices.

- As with any business, ethical behavior and sound decision-making flow from the top levels. As such, senior staff members have the added responsibility of making clear to the staff the importance of this Code and leading by example.

- CAO senior staff members will foster an environment in which the Covered Parties are encouraged to seek guidance on ethical issues and report wrongdoing without fear of reprisal.

- Our commitment to integrity begins with compliance with all local, state and federal laws and regulations, as well as this Code. All Covered Parties and vendors are expected to possess a thorough understanding of applicable laws and regulations and are never to engage in conduct that violates applicable laws and regulations. Not only must the Covered Parties be vigilant in compliance with all applicable laws and regulations, but they must also be alert to changes in the law or new requirements that may affect the CAO and DHECC.

- We foster credibility and trust by avoiding any action that can be perceived as improper or unethical. As such, we must avoid improper behavior and conflicts of interest.  Further, we must be careful to avoid even the *appearance* of improper behavior or a conflict of interest.

- While the Claims Administrator expects all Covered Parties to strive for complete accuracy in all facets of the claims program, it is understood by all parties that the claims process strives to be, but is not, a zero-defect undertaking. As such, the CAO will foster an environment which values prompt self-reporting of all potential issues so as to allow the CAO to address any potential issues efficiently, effectively and in a timely manner.

- It is impossible to anticipate every question you may have or every situation you may face.  If you have any questions about any situation, you should contact your supervisor, the Chief Compliance Officer ("CCO") or the Chief Executive Officer ("CEO").

- It is always your obligation to use good judgment and to make sure you appropriately inquire of your supervisor if you have any questions or doubts about the propriety of your own behavior or that of others within the CAO and DHECC.

### 4.0     PROCESS

Compliance with the above principles is essential to the success of the DHECC. The Claims Administrator, CEO, and CCO are responsible for ensuring that these principles are communicated to, and understood by all Covered Parties.

It is the responsibility of every individual to comply with this Code and day-to-day responsibility for oversight of this Code is the responsibility of CCO.  Covered Parties are expected to bring any breach or suspected breach of this Code to the attention of the CCO immediately. A provision has been established allowing Covered Parties to report any such breach in confidence and without fear of reprisal.

### 4.1     SEEKING ADVICE ON ETHICS

Outside Counsel for the DHECC and the CCO are authorized to render advisory opinions concerning the application and interpretation of this Code.

Although this Code is designed to capture many of the situations that Covered Parties will encounter, it cannot address every eventuality.  Covered Parties should seek assistance from any of the following:

- The Chief Compliance Officer;
- The Director of Waste, Fraud, and Abuse ("DWFA");
- The Chief Executive Officer; or
- The Claims Administrator

Covered Parties are encouraged to seek formal written advisory opinions on this Code from the CCO when necessary.

### 4.2     REQUIRED PRIOR WRITTEN APPROVALS

Certain actions referenced in this Code require prior written approval from the Claims Administrator. An approval by the Claims Administrator requires three important steps; 1) Full Disclosure of the facts and circumstances of the potential issue or conflict of interest; 2) A thorough ethics review by legal counsel and 3) Informed decision by the Claims Administrator.

### 4.2.1     FULL DISCLOSURE

In order to facilitate an accurate ethics review and informed approval from the CAO, it is incumbent upon the Covered Party to provide a complete accounting of all relevant facts and circumstances surrounding the potential conflict or ethics issue.  Ethical and legal opinions are limited to the disclosure provided by the employee surrounding the potential conflict or ethics issue.

3

**4.2.2    LEGAL AND ETHICS REVIEW**

When required the CCO or outside counsel will review any disclosures against the standards provided by this code, local, state or federal laws.  Outside Counsel or the CCO will render an ethics opinion on the appropriate remedy for the disclosed conflict of interest or ethics issue.  A practicing attorney will perform all legal and ethics reviews.  The Claims Administrator will seek outside counsel to conduct the legal and ethics reviews when he deems it necessary to have an independent and outside perspective of the issue presented.

**4.2.3    APPROVAL FROM THE CLAIMS ADMINISTRATOR**

Direct written approval from the Claims Administrator is required with regard to potentially conflicting affiliations, financial conflicts and outside employment activities.  Approval is not valid unless the Claims Administrator is fully informed of all facts and circumstances.

When potential conflicts of interest or impartiality concerns are identified during the review process, the Claims Administrator will advise the Covered Party in writing on the best course of action, including what remedies exist for the conflict. Possible remedies include:

(1) Recusal:  The Covered Party agrees either to forego or cease participation in any official act related to the conflict.

(2) Reassignment: Reassignment is the result of a recusal and may take one of two forms; reassignment of the matter to another Covered Party or reassignment of the Covered Party in question to another matter.

(3) Waiver: The CAO may authorize a Covered Party to participate in matters that would otherwise raise impartiality concerns where the conflict of interest is insubstantial such that it would not cause a reasonable person to question the Covered Party's ability to act impartially.

(4) Divestiture: The Covered Party sells or otherwise disposes of his or her interest in a financial asset causing the actual or perceived conflict.

(5) Resignation: The Covered Party leaves his or her position in an outside organization or leaves his Claims Administration position.

In some cases, a Covered Party's reported interests do not require a remedy but still suggest the need for heightened attention and possible follow-up on the part of the CAO. The Claims Administrator has the discretion to send the Covered Party a cautionary or advisory letter in such cases, explaining the applicable rules and what steps the Covered Party should take to avoid a violation.

**4.2.4    AVAILABILITY OF RECORDS**

All approvals will be retained by the CCO and will be made available to auditors during the annual audit of the CSSP.  Compliance with this Code will be a specific area of focus in the annual audit of the CAO and will be reported to the Court.

**4.3     REPORTING MISCONDUCT**

It is your duty to report immediately to your supervisor, CCO, DWFA, CEO, Claims Administrator or their designee, any violation of this Code.  Failure of a Covered Party to report a known violation of this Code can result in disciplinary action or termination.  If you hear about,  become aware of in any manner, or suspect any illegal or unethical behavior, or if you have a question about what to do, you are required by this Code to talk to your supervisor, CCO, DWFA, CEO, Claims Administrator or their designee.  We encourage communication within the DHECC, especially between Covered Parties and senior staff.

We all have an obligation to uphold the ethical standards of the DHECC. If you observe behavior that concerns you, raise the issue promptly. Doing so will allow the CAO an opportunity to address the issue and correct it.

All contractors and vendors involved with the DHECC should feel comfortable speaking their minds, particularly with respect to ethical concerns. Senior staff members have a responsibility to create an open and supportive environment where Covered Parties feel comfortable raising such concerns.

**4.3.1     ANONYMOUS REPORTING**

If you wish to remain entirely anonymous, you may make your report through the various Fraud Hotlines. In the event that you wish to make your complaint in person while remaining anonymous, direct your complaint to the Director, Waste, Fraud and Abuse who, upon your request, will not disclose your identity to anyone, including the Claims Administrator and the CEO. Because we strive to maintain strict confidentiality in all investigations, we may not be able to inform you of the outcome of an investigation.

The CAO will investigate all reported instances of questionable or unethical behavior. In every instance where improper or unethical behavior is found to have occurred, the Claims Administrator will take appropriate action.  If you become involved in a Code investigation, cooperate fully and answer all questions completely and honestly. All Covered Parties are required to cooperate fully and truthfully with DHECC investigations and audits.  All Covered Parties have the corresponding duty to maintain in confidence the relevant facts regarding any investigation.

**4.3.2 No Retaliation / Protections for employees who report**

The CAO will not tolerate retaliation of any kind against a Covered Party who, in good faith, raises legitimate legal, ethical or Code-related concerns. Any such retaliation is a direct violation of this Code. That a Covered Party has raised a concern in good faith, or participated in an investigation, regardless of the findings, cannot be the basis for any adverse employment action, including, but not limited to, separation, demotion, suspension, threats, harassment or discrimination. If you believe someone has retaliated against you, report the matter to the CCO, DWFA, CEO, Claims Administrator or his or her designee, immediately.

Senior staff members are responsible for promptly addressing all ethical issues, questions and concerns raised by Covered Parties and for taking appropriate steps to deal with such issues. Senior staff should not consider Covered Parties voicing ethical concerns as threats to their positions or challenges to their authority but rather as a vital part of a healthy workplace dialogue.

**4.3.3 Making False or Bad Faith Accusations**

The DHECC will protect any Covered Party who raises a concern honestly; however it is a violation of this Code to knowingly make a false accusation, lie to investigators or interfere or refuse to cooperate with a DHECC internal investigation. Such actions may result in disciplinary action up to and including termination of employment. Honest reporting does not mean that you must be right when you raise a concern; however, you must believe that the information you are providing is accurate and that your concern is valid.

**5.0    CONFLICTS OF INTEREST**

Covered Parties are expected to avoid any actual or perceived conflicts of interest. A conflict of interest arises when a Covered Party knows that he or she might be personally or financially affected by a matter in such a way that a reasonable person with knowledge of the relevant facts would question the Covered Party's ability to properly perform their duties in an impartial and professional manner.

Covered Parties are not permitted to perform official duties within the CSSP that relate to any former employer, family member or close personal friend.

Although not an exhaustive list, a conflict of interest occurs when a Covered Party is involved in a matter in which:

(1) The Covered Party is personally or financially affected by a matter before the Claims Administrator, CAO, or DHECC, such that a reasonable person with knowledge of the relevant facts would question the Covered Party's ability to properly perform his/her official duties in an impartial manner;

(2) The Covered Party, to its knowledge, served as counsel or assisted counsel in a matter related to a claim to which the Covered Party is currently assigned;

(3) The Covered Party was employed at a firm that represents claimants in connection with claims before the DHECC. This conflict may be waived in writing only if it can be shown the previous practice of law does not conflict with present CAO duties because 1) he or she did not work on the matter, 2) he or she did not access confidential information relating to the matter, and 3) he or she did not practice in the same office as the lawyer representing claimants;

(4) The Covered Party is a party to a claim or knows or has reason to know that their spouse, ex-spouse, fiancé, partner, boyfriend, girlfriend, sibling, child, stepchild, close personal friend, or other close family member, roommate, or a parent of a Covered Parties child born out of wedlock, is party to a claim;

(5) The Covered Party is an owner, shareholder, officer, director, or trustee of a for profit company that has made a claim. Ownership interests derived from investments through mutual funds, pension plans, or other similarly diversified financial vehicles do not fall within the scope of this provision;

(6) The Covered Party is acting as a lawyer for a claimant in connection with a claim;

6

(7) The Covered Party has an interest that could be substantially affected by the outcome of a claim;

Further, the Covered Party agrees that by signing a copy of this Code or a separate acknowledgement accompanying form accompanying this Code, he/she knowingly makes the following affirmations:

(1) Covered Party affirms that neither he/she nor any immediate family member is an employee of BP Exploration & Production Inc. (BP) or any entity affiliated therewith.

(2) Covered Party affirms that neither he/she nor spouse, ex-spouse, fiancé, partner, boyfriend, girlfriend, sibling, child, stepchild, other close family member, close personal friend, roommate, or a parent of a Covered Parties child born out of wedlock, is party to a claim has submitted a claim to the CSSP, and if any such claim is intended to be filed, or is actually filed after the date of the signing of this document, the Covered Party shall immediately notify the Claims Administrator in writing so that a determination may be made as to whether, and under what conditions, the Covered Party may continue to provide services to the CSSP.

If any Covered Party believes that it may have a conflict of interest, such Covered Party must promptly inform its supervisor, as well as the CCO. It is the responsibility of the Covered Parties to clear these conflicts and so if there is *any* question or doubt as to whether something presents a conflict, a Covered Party must bring it forward.

The following sections provide more details and discussion as to possible conflicts of interest.

## 5.1   FINANCIAL INVESTMENTS

All Covered Parties shall refrain from outside financial and business dealings that tend to interfere with the proper performance of their duties and would lead a reasonable person with knowledge of the relevant facts to question the Covered Party's ability to properly perform his/her official duties in an impartial manner. Covered Parties must also not exploit their positions for personal gain or for the benefit of friends, family, business partners and associates and may not be associated in a substantial financial manner with lawyers or other persons likely to have or represent claims.

You should consult with the CCO, DWFA, CEO, or Claims Administrator concerning any financial or business activities that might reasonably be interpreted as violating this Code. Additionally, you must refrain from participating in activities that could affect, or appear to affect, your decision-making on behalf of the CAO. Specific prohibitions apply to direct ownership of stock in BP, Court appointed vendors, or a financial interest in a company that has filed a claim with the DHECC.

Any ownership or financial interest held by a Covered Party's spouse or minor child is imputed to the Covered Party as if the Covered Party held that ownership or financial interest. Covered Parties should seek a written ethics opinion with regard to any financial interest or holding that may cause an actual or apparent conflict of interest. You must renew this approval process annually if you continue to hold such a financial interest. Ownership interests derived from investments through mutual funds, pension plans, or other similarly diversified financial vehicles do not fall within the scope of this provision:

Covered Parties who, in the course of their employment at the DHECC, become privy to nonpublic information regarding a claimant-company's financial state, including but not limited to financial

7

statements, profit and loss statements and specific claims of lost income, must not execute investments of any kind based on that information. Additionally, as outlined in section 8.0 of this Code, Covered Parties are prohibited from sharing such information with anyone who does not have a legitimate business purpose for knowing that information.

## 5.2     OUTSIDE EMPLOYMENT

Covered Parties may not engage in outside employment that conflicts with their official duties.  All outside employment should be reviewed and approved in writing by the Claims Administrator. As mentioned above, outside employment conflicts with a Covered Party's official duties if the Covered Party is personally or financially affected by the employment in such a way that a reasonable person with knowledge of the relevant facts would question the Covered Party's ability properly to perform his duties in an impartial manner. Although outside employment by any Covered Party is permitted, it is discouraged.

In addition, Covered Parties are prohibited from utilizing time and resources of the DHECC to perform any outside employment activities.  However, personal communications from the workplace are permitted when the communications do not adversely affect the Covered Party's performance and are of limited duration and frequency, and whenever possible, made during personal time such as lunch periods.

Covered Parties may not be employed by, receive payment from, or otherwise provide services for any claimant, claimant's company, law firm representing or advising claimants, accounting firms representing or advising claimants, DHECC suppliers, or contractors.

Any written approvals for outside employment by any Covered Parties must be renewed annually. It is the responsibility of the Covered Party to ensure all necessary approvals are in place prior to participating in any outside employment.

## 5.3     AFFILIATIONS

While the CAO encourages involvement in charitable causes, there are situations that may present actual or perceived conflicts of interest.  Such activities include but are not limited to: providing services for non-profit religious, professional, social, fraternal, educational, recreational, public service and civic organizations. Additionally, providing unpaid personal services such as acting as an officer, director, employee, agent, attorney, consultant, contractor, general partner, trustee, teacher, or speaker may present conflicts and must therefore be approved by the Claims Administrator in writing before a Covered Party may become affiliated. It is the responsibility of the Covered Party to ensure all necessary approvals are in place prior to participating in any outside activity.

### 5.3.1    SERVING AS AN OFFICER OR BOARD MEMBER OF A NON-PROFIT ORGANIZATION

Approval is NOT required for service as an officer or director of a charitable or other non-profit institution or trade organization, unless that charitable or other non-profit institution or trade organization is a claimant, a claimant-company or is owned in part or operated by a claimant.

8

Covered Parties who volunteer or participate in charitable or unpaid activities/causes may not utilize DHECC equipment or property for these activities. . Under no circumstances may a Covered Party utilize work time to perform these activities.

Covered Parties are encouraged to seek ethics advice to ensure any outside affiliations do not present an apparent or actual conflict of interest.

### 5.3.2    SERVING AS AN OFFICER OR BOARD MEMBER OF A FOR-PROFIT BUSINESS OR COMPANY

In order to serve as an officer or member of the Board of Directors of a *for-profit business*, Covered Parties must secure prior written approval from the CAO. You must renew this approval annually. It is the responsibility of the Covered Party to ensure all necessary approvals are in place prior to participating as an officer or board member.

### 5.4    TEACHING, SPEAKING & WRITING

Subject to an exception for teaching academic courses at a secondary or higher education institution, a Covered Party may not receive compensation from any source for teaching, speaking, or writing that relates in any way to the Covered Party's duties at the DHECC. For most Covered Parties, teaching, speaking, or writing relates to a Covered Party's duties at the DHECC for purposes of this provision if the subject of the activity deals in significant part with any matter to which the Covered Party is presently assigned or to which the Covered Party had been assigned during the previous one-year period. Additionally, this rule applies if an invitation to speak was extended to the Covered Party primarily because of his official position and not based on his or her expertise in the subject; the invitation or the offer of compensation was extended by a person or entity substantially affected by the performance of the Covered Party's duties; or the activity is based substantially on nonpublic information.

Even if teaching, speaking, or writing relates to a Covered Party's duties as described above, most Covered Parties are permitted to accept reasonable travel expenses offered in connection with the activity if approved by the Claims Administrator in writing. It is the responsibility of the Covered Party to ensure all necessary approvals are in place prior to accepting any travel expenses in connection with the approved activity.

### 6.0    PRACTICE OF LAW

Covered Parties who are attorneys and work in the PMO (but excluding Special Counsel and Outside Counsel who are not Covered Parties) shall not engage in the outside practice of law except as specifically approved by the Claims Administrator in writing.   Prior written approval is required for any outside practice of law by any Covered Party (excluding Special Counsel and Outside Counsel, who are not Covered Parties), to determine whether the proposed services are consistent with the foregoing standards and provisions of this Code. This prior approval provision only applies to Covered Parties working in the PMO (but not to Outside Counsel or Special Counsel, who will conduct themselves in accordance with their applicable Code of Professional Conduct).

### 7.0    POST EMPLOYMENT

During the course of its work for the CAO, any Covered Party may seek and obtain employment to

9

commence after it has ceased working at the DHECC. However, the Covered Party should first consult with the CCO and must observe any restrictions imposed by the CAO. If any law firm, vendor, lawyer, claimant or party with whom any Covered Party has dealt in the course of its official duties makes an offer of employment, the Covered Party should immediately notify the CCO, Claims Administrator to receive a written formal opinion as to whether future employment would be proper and permissible and to what extent a conflict exists after the offer of such employment.  If requested, any Covered Party shall sign a form provided by the Claims Administrator acknowledging its confidentiality and other obligations to which all Covered Parties shall remain subject even upon the termination of its services for the CAO.   This provision only applies to Covered Parties working in the PMO. Vendors will conduct themselves in accordance with the Vendor Code and their applicable Code of Conduct and internal employment policies.

## 8.0     CONFIDENTIALITY OF INFORMATION

Covered Parties shall not disclose any material nonpublic information with respect to the CAO, its operations, finances, or internal matters. Additionally, Covered Parties shall not disclose any claimant information learned in the course of employment at the DHECC. Do not disclose nonpublic information to anyone outside of the DHECC, including family and friends.

By its nature, the claims review process exposes many Covered Parties to the personal information of claimants, including social security numbers, employee identification numbers, phone numbers, email addresses, and financial information. It is crucial that such information be treated with the highest level of respect and privacy. Claimants have entrusted the DHECC with this information with the implicit understanding that it remain strictly confidential. It is our duty to abide by that covenant. Covered Parties who handle the personal data of claimants must:

   (1)  Act in accordance with applicable law, including all privacy laws;

   (2)  Act in accordance with this Code;

   (3)  Collect, process and utilize such information for legitimate business purposes only;

   (4)  Limit access to said information to those having a legitimate business purpose for seeing that information;

   (5)  Take care to prevent unauthorized disclosure; and

   (6)  Protect the DHECC's nonpublic information at all times, including outside the workplace, after working hours and even after employment ends.

The United States District Court for the Eastern District of Louisiana entered an Order Regarding the Confidentiality of Claims Information of the Claims Administrator of the Deepwater Horizon Economic and Property Damages Settlement Agreement (the "Confidentiality Order").  Pursuant to the Confidentiality Order, the Claims Administrator may grant access to the Claims Information only if every recipient of such information agrees to the following: (1) to be bound by the Confidentiality Order; (2) to submit to the jurisdiction of the Court for purposes of enforcing the Confidentiality Order; (3) to use the Claims Information only for the purpose for which the recipient was permitted access to such

information and to keep the Claims Information confidential; and (4) not disclose it to any party not necessary for the performance of such authorized purpose or as required by law. To comply with the requirements of the Order, each staff member is required to: (1) read the Confidentiality Order in its entirety; and (2) sign a Certification agreeing to the terms of the Confidentiality Order.

**9.0    USE OF CAO RESOURCES: TIME AND PROPERTY**

All Covered Parties have a duty to protect and conserve property owned, used, or accessed by the CAO and DHECC and may not use this property, or allow its use, for any purpose other than that for which it is authorized.

The term "property" includes real or personal property that the CAO or BP owns or leases includes but is not limited to the following:

- Office space;
- Telecommunications equipment;
- Computers; and
- Office supplies

However, personal communications from the workplace that are made while at the PMO are permitted when the communications do not adversely affect the Covered Party's performance and are of limited duration and frequency, and whenever possible, made during personal time such as lunch periods.

**10.0    GIFTS**

Covered Parties are subject to restrictions on accepting gifts. Unless an exception applies, Covered Parties may not accept gifts that are given in connection with their positions at the DHECC or that come from interested sources such as vendors, claimants or those individuals representing or advising claimants, as defined below.

**10.1 Definition of a "Gift"**

A gift is defined to mean anything of monetary value, including transportation, local travel, lodgings and meals, goods and services, whether provided in-kind, by purchase of a ticket, payment in advance, or reimbursement after the expense has been incurred.

**10.2 Definition of an "Interested Party"**

An interested party is any person, group of people or organization that interacts in any meaningful way with the DHECC, has any connection to the claims process, or that has or may have interests that might be affected by the performance or nonperformance of the Covered Party's duties or the claims process as a whole.

**10.3 Exceptions to the Gift Rule**

There are four exceptions to the prohibition on gifts from outside sources. These exceptions allow a Covered Party to accept gifts:

11

(1) motivated solely by a family relationship or previously established personal friendship; or

(2) based on a Covered Party's or his or her spouse's outside business or employment relationships, including gifts customarily provided by a prospective employer as part of bona fide employment discussions.

(3) that is a reasonable meal or refreshments provided by BP, the PSC, or DHECC Vendors when incident to a working meeting.

These exceptions are subject to the following limitations:

(1) A Covered Party can never solicit or coerce the offering of a gift, or accept a gift in return for being influenced in the performance of an official act.

(2) A Covered Party may not accept gifts so frequently that a reasonable person might think that the Covered Party was using the CAO office for private gain.

If there is any doubt on whether a gift is proper and falls within one of the above exceptions, the Covered Party should seek advice and a legal opinion from the CCO.

## 10.4    DISPOSITION OF PROHIBITED GIFTS

If a Covered Party has received a gift that violates any of the above prohibitions, the Covered Party shall return said gift immediately and inform the CCO.

## 11.0    ADMINISTRATION OF THIS CODE

The Code is designed to ensure consistency in how Covered Parties conduct themselves both within the DHECC and in their dealings outside the DHECC. The procedures for handling potential violations of this Code have been developed to ensure consistency of process across the organization. No set of guidelines or rules can address all possible issues and occurrences. The Claims Administrator or the CEO may adjust the provisions of this code in writing as deemed necessary.

## 11.1    RESPONSIBILITY

Responsibility for administering this Code rests with the senior staff at the DHECC, with oversight by the CAO, specifically the Claims Administrator, CEO AND CCO.

## 11.2    INVESTIGATION OF POTENTIAL CODE VIOLATIONS

The CAO takes all reports of potential Code violations seriously and is committed to confidentiality and a full and thorough investigation of all allegations. Such investigations may only commence at the direct order of the Claims Administrator, the CEO, AND CCO or the DWFA. Covered Parties under investigation for potential Code violations will have an opportunity to be heard prior to any final determination.

No CAO staff member or DHECC contractor will conduct any such interview or investigation without prior coordination with the CCO.

The Vendor Code shall provide that Vendors are responsible for investigating any violations of the Vendor Code with their employees and must keep the CCO informed of any violations of the Vendor Code.

**11.3    DECISIONS**

The CAO, led by the Claims Administrator and the CEO, make all final decisions regarding actions taken under this Code, however, they may choose to designate certain decisions to individual managers or senior staff. Those found to have violated this Code may seek reconsideration of the decision by appealing directly to the Claims Administrator or CEO.

**11.4    DISCIPLINARY ACTIONS**

The DHECC strives to impose discipline commensurate with the nature and circumstance of each Code violation. Violations of a serious nature may result in suspension without pay, reduction of compensation or termination of employment.

Failure to comply with this Code will be cause for suspension or termination.  When a Covered Party is found to have violated this Code, notation of the final decision, as well as a copy of any letter of reprimand will be placed in the Covered Party's personnel file as part of that Covered Party's permanent record.

**12.0    SIGNATURE AND ACKNOWLEDGEMENT**

All Covered Parties must sign a copy of this Code or a separate acknowledgement form confirming that they have read and understood this Code and agree to abide by its provisions. All Covered Parties will be required to make similar acknowledgements on a periodic basis. Failure to read or sign this Code or sign a separate acknowledgement form does not excuse a Covered Party from compliance with this Code.

_____
Name of Covered Party

_____
Date