# Exhibit 26

| | G+ Share | 0 | More | Next Blog» | | Create Blog | Sign In |

# American Zombie

Independent Investigative Journalism and Commentary from New Orleans, LA

---

Tuesday, March 11, 2014

## DHECC - Proof positive of claims being expedited by the PSC

For the past year and a half I've been reporting on issues that have occurred with the BP oil spill multi-district litigation settlement and the Claims Office of the Deepwater Horizon Economics Claims Center (DHECC).

From the beginning, I was approached by multiple sources that made claims of fraud and manipulation within the DHECC process. Most of the allegations involved issues that were instigated by members of the Plaintiff Steering Committee (PSC)....the lawyers chosen to represent all the class claimants along the Gulf Coast in their lawsuit against BP.

Typically...frustratingly..... almost every one of my sources refused to go on the record and I've had a difficult time providing hard proof of the allegations.

My luck changed last week.

### Allegations

There are two main issues I've been researching regarding the misconduct of specific PSC members:

1. The allegation that some PSC firms sold access to the claim "formula" before the claims office opened. In fact, it now appears some of the PSC firms entered into joint venture agreements with other law firms around the Gulf Coast without disclosing the nature of their involvement to either the claimants or the claims office.

2. That members of the PSC had their own private claims expedited before other claimants who had filed ahead of them.

### The Rules of the Settlement

Before I get to the evidence, I want to point out again that by order of Federal Judge Carl Barbier, the claims which come into the DHECC must be processed in the order they are received:

10. New claims may be filed during the Transition Process until such time as the Court Supervised Claims Program is established and operational as set forth above. **New claims submitted shall be processed and evaluated in the order they are received.** Non-deficient claims previously pending with the GCCF shall be processed and evaluated prior to any new claims filed after the creation of the Transition Process.

### Zombie be who?



**Dambala - Jason Brad Berry**
New Orleans, Sovereign City-State

ashedambala@gmail.com

View my complete profile

### Snake Gods need love too



### The Truitt Law Firm, Inc.



Zombie recommends Truitt Law for you legal needs

### Dozidotes



Check out Dozidotes jewelry made right here in Nawlins'!

## A Breach of the Settlement?

Last week, I received an unmarked envelope in the mail that contained a series of email exchanges between employees of the Claims Office and other DHECC officials. Among those involved in the conversation included Claims Administrator Pat Juneau, court vendor Brown and Greer, and members of the PSC.

These emails clearly suggest that PSC members were not only expediting their own claims, they were actually issuing directives to the employees of the Claims Office. In fact, it looks like they were even holding back specific claims from being processed for political reasons.

Keep in mind the PSC lawyers are supposed to be representing all the claimants in this settlement process, not just their own personal clients.

## Trying to get answers

A year ago in March of 2013, I filed a FOIA request with the DHECC in an effort to find out if any PSC members had expedited their own claims within the office. My request was denied:

## A little help

After the denial, I drafted a personal letter to Judge Barbier asking him to redact claimants' private information and make the claim data public so the public could be assured the process was operating according to the standards he had ordered:

## The DHECC - Examining the "Claims" - Part 1

Judge Barbier never responded to my letter.

I made contact today with the Claims Office and requested an interview with Claims Administrator Pat Juneau. My interview request was denied but he did agree to provide statements and facts to any questions I had. I responded by asking him (via email) if he was aware of any claims that may have been expedited in the office, particularly ones that were being represented by PSC attorneys. This was his response:

> "The Deepwater Horizon Claims Center processes claims as they are submitted.
>
> In the early stages of the process prior to the Fairness Hearing, and at the request of all parties, the Claims Administration Office had to select sample claims from each claim type that had the required and sufficient documentation to determine the accuracy of the claims process.
>
> Following this sample selection for the Fairness Hearing, claims are processed as they are received. "

I replied and asked him exactly how many claims were used in the sample selection and what specific time period this sampling occurred. I didn't receive a

### Consider It Done in NOLA



Consider It Done

Errands run, groceries made...contact CID NOLA

### Follow by Email

Email address...  Submit

### Blog Archive

Blog Archive ▼

### Followers

Join this site
with Google Friend Connect

Members (106)  More »



Already a member? Sign in

### Brains I Feed On

adrostos

Aminaminamina... Say What?!!

animamundi

Ashley Morris

b.rox

Becky Houtman...great writer

BigEZBear

Blog of New Orleans

Cenlamar

response as of my publishing this post.

## The Evidence

The first email exchange I received in the anonymous package is from PSC attorney Calvin Fayard to former Claims Office employee Christine Reitano with a carbon copy sent to Claims Administrator Pat Juneau.

ITEM 1:

Fayard email exchange request to expedite



As you can see the claim # is blacked out, so I am unable to identify what claim Fayard was asking to be expedited.  But note that Fayard says "Pat mentioned for members of the PSC to send along claim numbers for claims that have been filed and ARE LARGER (emphasis mine) claims that perhaps could be looked at more quickly."  Juneau then responds and orders Reitano to contact Brown and Greer with a request to expedite Fayard's claim.

ITEM 2:

The second email goes even further into the process and features directives dictated to the Claims Office by two PSC members, Steve Herman and Jim Roy:

Email exchange with Herman and Roy directives

confederacy of dunces

Cryptogon

Daily Kingfish

Dangerblond...hell yeah

Disenfranchised Citizen

Ernie the Attorney

Fiyou on the Bayou

G-Bitch...fuckin' eh

Gentilly Girl

George Washington's Blog

Good Children

Gumbo Pie

HammHawk

http://frogpondish.blogspot.com/

Huff Po

Humid City...Loki is da schnizzel

humidhaney

ilostmyipod

Independent Nix

Keep It Trill

Library Chronicles

Liprapslament

Maitri's VatulBlog

Metroblogging

Mikeb302000

Minor Wisdon

Mitchell's Musings

Moldy City

Moose Denied

New Orleans Ladder - Edtilla

New Orleans Slate

NOLA

Noladishu

NOLAFemmes



The first directive in this email states that the Claims Office should only expedite three of the PSC members requested claims, across two or more claim types.

The second directive in this email is very interesting in that it orders the Claims Office to review and expedite roughly 24 claims across different claim types for six of the law firms that were considered major objectors at the time:  Rick Kuykendall, Sher Garner, Smith Stag, Farrel & Patel, Brent Coon and The Buzbee Law Firm.

It's not clear why Herman and Roy would have ordered the objectors' claims to be expedited along with their own but one possibility is that it could have been a tactic to eliminate these law firms' objector's status against the settlement.

I contacted three of the six objectors firms, two of them confirmed for me, off the record, that they were unaware their claims had been expedited.

One firm, Brent Coon, confirmed, on the record, that he was unaware any of his claims had been expedited.

After looking at the email exchange, Coon also called my attention to the relevance of the 3rd directive which orders the Claims Office to cease and desist reviewing the "class representative" claims (i.e., Lake Eugenie).  Apparently the PSC wanted to hold up these claims because if they were processed too early it

NolaMotion

Northwest Carrollton

Official Rising Tide Blog

people get ready

Pistolette

Public Sphere Nola

Ray in New Orleans

right hand thief

Scout Prime

Slabbed

Slimbolala

SMORGASBLOG...possibly funnier than the Onion...ht to erster

SophMom

Spocko's Brain

Squandered Heritage

Suspect Device

Thanks, Katrina

The 3rd Battle of New Orleans

The Chicory

The Frog Pond

the garden of irks and delights

The Hungry Termite

The Nation

The Truth and other Lies

thoughts of the dark rose

travelling mermaid

We Could Be Famous

Wet Bank Guide

Wonkette

Copyright



American Zombie by Dambala, AsheDambala, Jason Brad Berry is licensed under a Creative Commons Attribution-

would negate their ability to qualify as a "class rep claim". Coon suggested that if the PSC had those claims sequestered without the consent of the claimants, that could be as big an issue as having their own claims expedited.

And I would also note Odom's curious response to the Herman and Roy directives:

> "There was a question regarding item 3 of your email from the accountants.  Are they supposed to stop processing all claims for Class Representatives?  I assume this would be all of the PSC?  If so, what are the accountants supposed to tell the Class Representatives that have been calling them?  What happens to the claims?"

Directives 1, 2 and 3 in this email show a pattern by the PSC to manipulate the claims process as defined by the court.  The other interesting revelation of this email is that is demonstrates that the Claims Office was apparently taking directives from the PSC members with Pat Juneau's knowledge and consent.  It's not the PSC's role to give directives to the Claims Office.

### ITEM 3:

The third email exchange contains an actual matrix from Brown and Greer of 409 claims per law firm and claim type that were expedited previous to September 27, 2012:

Email exchange with expedited claim matrix up to Sept. 27, 2012

NonCommercial-NoDerivs 3.0 United States License.
Based on a work at theamericanzombie.com.
Permissions beyond the scope of this license may be available at ashedambala@gmail.com.





That's 409 claims that were expedited for both the PSC firms and objectors (with at least three of them unaware this had happened). There are obviously other law firms on the matrix but I have no idea why these particular law firms' claims were expedited.

In the email exchange, Bill Atkinson of Brown and Greer states that they didn't know which three claims to expedite for each objector (per the PSC request) so they just randomly chose the objectors' claims. This would seem to validate the assertion by the objectors I spoke with that they had no idea that their claims had been expedited.

## Sampling?

I suppose it is possible that these claims mentioned in the emails were expedited as part of the sampling process but that doesn't seem likely. Please note I did not show Juneau the emails. Had he agreed to the interview I would have shown them to him to get his immediate response. I point this out to note that his response was not directly to the emails but the general question of whether or not claims, particularly PSC member's claims, had been expedited. Also note that he never actually said claims had been expedited but his answer suggests some were for the sampling process alone.

The claims in these emails don't appear to be part of a sampling process and there is no mention of sampling associated with them in the email chain. There are a number of other reasons the sampling suggestion wouldn't make sense. I contacted two lawyers familiar with MDL claims processes (not associated with the DHECC) and they brought up the following points:

- The entire reason a Claims Administrator is appointed is to avoid having the PSC members calling the shots within the office. The Administrator is supposed to be an unbiased arbitrator in the MDL process. The fact that they selectively chose

PSC firms' and objectors' claims to sample would not make sense and it's highly unlikely that BP would have agreed to this. I suppose we'll find out if BP people read this post.

- The whole reason for conducting a sample in the first place is questionable considering Feinberg had already been processing claims in the GCCF for some time.

- Why were over 400 claims used for a sampling process and why were they specifically chosen from PSC filings? It would make more sense to pull the first 10 to 20 claims from each claim type. Plus, the PSC samples were most likely all accurate as they understood the filing requirements better than most. This would tilt the sampling process negating the reason to conduct one in the first place. The whole purpose of running a sample would be to discover potential problems.

- Juneau suggested the sample claims were pulled "in the early stages of the process" before the fairness hearing. This fairness hearing did occur approximately one month (November 2012) after these emails exchanges but it seems unlikely they would be sampling claims in the 11th hour, four months after the Claims Office opened for business in June of 2012. Also, if there was a sample that occurred, you would think Juneau should have reported the results in a spreadsheet to the Court and especially in preparation for the fairness hearing. I haven't been able to find any such report (if anyone is aware of that report please contact me).

- Why did Calvin Fayard specify that the PSC members were allowed to expedite "larger" claims? If you were conducting an accurate sample, it seems you would want all type of claims across the spectrum.

If all these claims were expedited for sampling purposes, the sampling process itself needs to be questioned.

## A Blind Eye?

The revelations provided in the emails are not a surprise to me. What is a surprise to me is that Special Master Louis Freeh hasn't addressed these issues. He must have this email chain as he obtained Christine Reitano and David Odom's DHECC email databases during his investigation. I must assume he is aware of the issues and he recognizes that they are a clear violation of the terms of the settlement.

In my opinion, these revelations are much more serious than the single claim, Thonn, that Freeh focused on in his first report. I believe the issue he mentioned on page 60 of the first report is much more serious than the Thonn claim as well because it suggests actual fraud occurred in respect to the seafood claims....allegedly by an unnamed PSC firm.

In fact, expediting a claim (for the Andry Law Firm) is exactly the charge Freeh levied against Lionel Sutton. Here we have 409 claims that were expedited, many for PSC members. Is this not worthy of investigation?

The possibility for selective prosecution is of great concern here, as is the overall fiduciary duty to the class claimants by the PSC attorneys. I believe these issues need to be addressed and explained by Louis Freeh, the PSC attorneys, Pat

Juneau and in particular Judge Carl Barbier....they simply can't ignore this.

## The Real Problem

The processing of claims has recently slowed to a near halt. Many of the claimants who properly filed claims are now being asked to go back and meet new requirements that didn't exist at the beginning of the program. IF PSC attorneys got their own clients paid ahead of other class claimants it is a clear fiduciary breach under MDL standards.

Many of the hard working people of the Gulf Coast...the shrimpers, the oyster fishermen....the people who have suffered the most from this disaster have yet to receive compensation while it appears these PSC attorneys have paid themselves first. I'm going to introduce AZ readers to some of these folks down the road.

Contrary to Mr. LeCesne's opinion....I believe this is a very big deal.

Attribution note: This website is under a Creative Commons license and any reference to this post and its material should follow the CC guidelines.

The entire email exchange referenced in this post can also be obtained at the following link but if republished it must be attributed to the American Zombie blog and/or "independent, investigative journalist, Jason Brad Berry":

http://www.scribd.com/doc/211748455/DHECC-Master-Email-Exchange-regarding-expedited-claims-of-PSC

Posted by Dambala - Jason Brad Berry at 3/11/2014 08:23:00 PM

Labels: Calvin Fayard, DHECC, Expediting claims, Fraud, Herman and Herman, Jim Roy, PSC attorneys

## 23 comments:

**Kevin said...**

Outstanding story, Jason. Thank you for bringing the documents and information into the light.

There's so much to say about what you've uncovered. Some initial thoughts and questions:

1. According to Calvin Fayard's recollection, Pat Juneau specifically sanctioned expediting "larger claims that perhaps could be looked at more quickly" for the PSC members. Did he do the same for pro se claimants?

According to the tables attached to the email string, only a single pro

se claimant was having its claim expedited at that time. I wonder who they know?

What kind of "larger" claims could Juneau have been talking about? Was this some sort of effort to expeditiously pay some big-money claims in advance of the fairness hearing and give the appearance of a successful and generous claims process?

Was the Fayard and Honeycutt choice a law firm? Was it a rice mill? Did F&H collect a percentage of the recovery for this expedited claim? Did BP have to set aside 6% of the value of the award for the PSC fees that Calvin Fayard will share in?

2. Steve Herman and Jim Roy apparently issued "lists of directives and the like" to the vendors at the DHECC? How is it Class Counsel gets to issue "directives" to a court-appointed entity employing independent vendors?

Is that what Judge Barbier meant when he wrote:

"The Settlement is implemented by the Deepwater Horizon Court Supervised Settlement Program ("Settlement Program"), which commenced operations on June 4, 2012. The Settlement Program calculates awards using public, transparent frameworks that apply standardized formulas derived from generally accepted and common methodologies. This level of transparency permits class members to understand how their claims will be evaluated under the Settlement. It also ensures that similarly situated class members are treated similarly."

Did BP have similar weight and authority?

3. Is the expediting of "3 claims across 2 or more claims types amongst the forwarded PSC expedited claims requests" in response to several greedy PSC members having 10 or more claims expedited?

The class counsel was to "apprise the PSC of change." What change? Was there any limit before it was reduced to 3? Did ANY of the PSC members select a pro se claimant as part of their list?

4. Class counsel instructing the DHECC to expedite the review of 24 claims across different claim types for each of the major objectors? Isn't that disparate treatment of class members on its face? Did they instruct the DHECC to expedite payment to those objectors, too? Again, why weren't 24 random pro se claims and 24 random attorney-represented claims expedited?

5. Were there 1 or more class reps that had his/its claim reviewed on an expedited basis? Were there 1 or more class reps that knew the value of his/its claim before the deadline to opt-out of the settlement? Were there 1 or more class representatives that received payment from the transition team or the DHECC before the deadline to opt out? Before the date of the fairness hearing?

March 12, 2014 at 12:03:00 AM CDT

**Kevin said...**

"I also think that the Settlement Program provides Economic Class Members with a fair and transparent claims process under the Court's control and protection."

That is a representation made by each and every class representative in their separate sworn declarations supplied to the court in support of approving the BP settlement.

Wouldn't it be fair and transparent for each of the class reps to respond to the questions I listed in No. 5 in the comment above? Maybe they could be transparent and tell all the absent class members if they (class reps) were ever told by their attorneys they might qualify for an enhancement or incentive for serving as a class rep?

Jason – you wrote:

"That's 409 claims that were expedited for both the PSC firms and objectors (with at least 3 of them unaware this had happened). There are obviously other law firms in the matrix but I have no idea why these particular law firms' claims were expedited."

First, a correction may be needed because I think the matrix actually has 439 expedited claims. It appears someone forgot to extend 30 coastal property claims being expedited for PSC firm Colson Hicks Eidson. Maybe I'm wrong; I was never good with math.

I have my own, personal opinions on possibilities as to why some of the other law firms show up on the matrix.

Faegre, Baker, Daniels, LLP – Minnesota Law Firm – 37 Seafood Claims Expedited:

New Orleans attorney, Stephen Kreller, and Faegre, Baker, Daniels, LLP filed suit (11-2766) on behalf of "shrimpers, crabbers, and oystermen who participated in BP's Vessels of Opportunity" ("VoO") program but have not been paid the amounts Defendants owe them for the use of their boats."

They also filed suit (11-3180) on behalf of "a group of more than 700 commercial fishers that represent the heart and soul of the Gulf seafood industry in those areas primarily impacted by the Deepwater Horizon spill."

On August 31, 2012, just a few days prior to the email chains shown above, Stephen Kreller and Faegre, Baker, Daniels, LLP filed a notice of intent "to appear at the Fairness Hearing for and on behalf of Economic and Property Damages Class Members."

A few days before the date of expedited claim matrix, these same attorneys filed a motion with the court seeking permission to allow them

to file a 25-page memorandum in support of the settlement instead just the standard 10-page memorandum. These attorneys said: "The undersigned counsel and their clients were intimately involved in the events that preceded the Settlement. In particular, they developed expert analyses and approaches to calculation of damages that formed the basis for some of the terms of the Settlement. They were intimately involved in the negotiations between the Plaintiffs' Steering Committee and BP that culminated in the Settlement, and are uniquely positioned to respond to some of the Objections that have been made to the Settlement by the State of Louisiana and others. The additional pages requested in this motion will be helpful in rebutting, for example, the State of Louisiana's claim that certain terms of the Settlement were unsupported by expert opinion on behalf of plaintiff class members."

Continued in next comment ...

March 12, 2014 at 5:42:00 PM CDT

**Kevin said...**

continuing ...

In a reply memo filed with the court a few days later on October 5, 2012, these same attorneys said: "These plaintiffs and their counsel worked closely with highly qualified expert witnesses to develop damages models supported by extensive data and analysis. These models and supporting evidence were communicated to the Plaintiffs' Steering Committee, BP's counsel and court-appointed neutrals John Perry and Dan Balhoff. These damages models provided crucial support for key elements of the Economic and Property Damages Class Settlement."

I'm speculating here, but IMHO, the expediting of 37 seafood claims for Faegre Baker Daniels was done in exchange for their work on and support of the settlement. They were treated differently and more expeditiously because of this.

Law Offices of William S. Vincent – New Orleans – 40 Expedited Seafood Claims

IMHO, this 1 is easier to connect. On April 30, 2010, this law office filed a class action complaint on behalf of oyster leasholders, commercial fishermen and commercial seafood processors.

On June 24, 2010, this law firm filed a motion to enroll additional counsel – Herman Herman Katz & Cotlar.

Need I say anymore? Is that theory too "Oliver Stone" for anyone?

I'm still digging ....

March 12, 2014 at 5:42:00 PM CDT

**Kevin said...**

Yes. My math is wrong. The correct number is 409 if added across the bottom, and 379 if added down the "total" column.

I regret the error.

March 12, 2014 at 6:15:00 PM CDT

**Anonymous said...**

"The Deepwater Horizon Claims Center processes claims as they are

submitted.

In the early stages of the process prior to the Fairness Hearing, and at

the request of all parties, the Claims Administration Office had to

select sample claims from each claim type that had the required and

sufficient documentation to determine the accuracy of the claims

process.

Following this sample selection for the Fairness Hearing, claims are

processed as they are received. "

I call BS on Juneau. Even if one was still naive enough to believe the

above was his goal, he can give no legitimate reason for allowing PSC

members to unilaterally submit specific claims to be expedited. Nor can

he explain how randomly expediting claims from certain objectors

helps to achieve his stated goal.

The first question should be "how many claims processed from each

category was sufficient for the fairness hearing?" 10, 50, 100, 200?

On September 4, 2012, Juneau reported the following to the Court:

CLAIM TYPE  #SUBMITTED  #PAYABLE

Seafood         5,802        102

| | | |
|---|---|---|
| IEL | 15,257 | 1 |
| Festival | 97 | 0 |
| BEL | 10,796 | 62 |
| Coastal | 5,532 | 603 |
| Wetlands | 880 | 9 |
| Property Sales | 410 | 68 |
| Subsistence | 3,873 | 0 |
| VoO | 5,159 | 2,501 |

Remember, "payable" means the claim is finished and an offer has been made.

By October 5, 2012, those numbers increased to:

| CLAIM TYPE | #SUBMITTED | #PAYABLE |
|---|---|---|
| Seafood | 7,115 | 669 |
| IEL | 19,338 | 79 |
| Festival | 132 | 0 |
| BEL | 14,558 | 485 |
| Coastal | 7,878 | 1,513 |
| Wetlands | 1,352 | 68 |
| Property Sales | 520 | 134 |
| Subsistence | 5,002 | 0 |
| VoO | 5,941 | 4,156 |

According to the emails provided to you, as of October 17, 2012, the following claims had been expedited:

CLAIM TYPE  #EXPEDITED

Seafood          168

IEL              9

Festival              0

BEL          159

Coastal          60

Wetlands        1

Property Sales          0

Subsistence          0

VoO          0

Even without expediting any claims, as of October 17, 2012, there would have been:

  501  Seafood Claims  Complete and Payable

  326  BEL Claims  Complete and Payable

1,453  Coastal Claims  Complete and Payable

4,156  VoO  Complete and Payable

Seems like more than enough for a fairness hearing, right?

Even with expediting claims, as of October 17, 2012, there were still

only:


    0  Festival Claims  Complete and Payable

   79 IEL Claims  Complete and Payable

   68 Wetlands Claims  Complete and Payable

  134  Property Sales  Complete and Payable

    0  Subsistence Claims  Complete and Payable


Ok, I will give them the benefit of the doubt and concede that a few

more of these types of claims needed to be completed prior to the

Fairness Hearing.


BUT, if the goal was to have a representative sample of claims paid by

the Fairness Hearing on November 8, 2012:


Why were any Seafood, BEL and Coastal claims expedited, let

alone those chosen by the PSC?

Why were Objector's BEL claims randomly expedited?

Why weren't more Festival, IEL, Wetlands, Property and

Subsistence claims expedited?


I defy Juneau to give legitimate answers to these questions.
March 12, 2014 at 7:07:00 PM CDT

**Anonymous said...**
"The Rules of the Settlement


10.  New claims may be filed during the Transition Process until such

time as the Court Supervised Claims Program is established and

operational as set forth above. New claims submitted shall be

processed and evaluated in the order they are received. Non

deficient claims previously pending with the GCCF shall be processed

and evaluated prior to any new claims filed after the creation of the

Transition Process."


Maybe you should explain the above to Juneau if he ever agrees to an

interview.


REPORT BY THE CLAIMS ADMINISTRATOR OF THE

ECONOMIC AND PROPERTY DAMAGES SETTLEMENT

DEEPWATER HORIZON

AGREEMENT ON THE

STATUS OF CLAIMS REVIEW


STATUS REPORT NO. 4, DATED DECEMBER 11, 2012


2. Order of Claims Reviewed.


The Claims Administrator frequently receives questions regarding the

order in which the

DWH Settlement Program reviews claims. Some claimants have

received Notices on claims

filed later than other claims for which no Notice has been received and

wonder why these later filed claims have been decided first. We have

prepared a script for the Claimant

Communications Center and Firm Contacts to use and a FAQ that is

posted on the DWH

Settlement website to explain the order in which claims are being

processed. The Program

generally tries to follow a firstinfirstout order when reviewing

claims, although the Settlement

Agreement does not mention or mandate this processing order.

March 12, 2014 at 7:08:00 PM CDT



**Dambala - Jason Brad Berry** said...

"MHO, this 1 is easier to connect. On April 30, 2010, this law office filed a class action complaint on behalf of oyster leasholders, commercial fishermen and commercial seafood processors.

On June 24, 2010, this law firm filed a motion to enroll additional counsel – Herman Herman Katz & Cotlar."

Another Joint Venture with H, H and K? What I really want to know is how many JV's do they have across the Gulf Coast in respect to this settlement.

March 12, 2014 at 7:12:00 PM CDT



**Dambala - Jason Brad Berry** said...

....and let's pretend for a second that H, H and K is the page 60 law firm Freeh mentioned who is suspect of manipulating seafood claims ( ;) ).

If they manipulated their own claims, what's to stop them from manipulating their JV partner's seafood claims? How many fraudulent seafood claims have been submitted to the DHECC?

Remember the seafood claims are a capped fund and any left over money will eventually be paid pro rata.

It also concerns me greatly that the PSC clearly has such authoritative control over the claims office. What's to say they haven't manipulated the office into rejecting other seafood claims other than their own to increase their share of the pro rata payout. If they hide their own interest behind JV partnerships this could get even nastier.

I think all of the PSC attorneys should be required to disclose ALL JV partnerships they've created in this settlement.

Actually, I think we already know enough that some of them should be removed from the PSC if not charged with criminal misconduct. But I

ain't runnin' the show, am I?

March 12, 2014 at 7:23:00 PM CDT

**Anonymous said...**

First question.
If without expediting any claims, as of October 17, 2012, there were
501 Seafood Claims  Complete and
326 BEL Claims  Complete, why were any BEL and Seafood claims
expedited?
I think Kevin answered that question.

Next question.
If Louis Freeh is denying the Andry Law Firm claim because they
allegedly, unsuccessfully, attempted to have their own claim expedited,
and he has recommended that Andry and Lerner be prevented from
representing and other claimants for the same reason, why isn't Louis
Freeh recommending that the PSC attorneys be similarly sanctioned for
successfully expediting 100's of their own claims?

March 12, 2014 at 8:30:00 PM CDT

**Anonymous said...**

Unfortunately, the guy that is runnin' the show is hiding in his robe and
everybody else is hiding behind it.

March 12, 2014 at 8:38:00 PM CDT

 **Dambala - Jason Brad Berry** said...

That may be the greatest comment in the history of this blog.

March 12, 2014 at 8:47:00 PM CDT

**Anonymous said...**

"...So many Duval fingers in this BP pie, it's enough to make a cynical
person wonder if justice has much to do with it all"
When is the U.S. District Judge Stanwood Duval impeachment hearing?

March 13, 2014 at 1:47:00 AM CDT

**Anonymous said...**

The guy running the show is hiding in his robe, and everyone else is
hiding behnd it-- shit, yes, I second the nomination of that line as
perhaps the greatest comment I`ve ever read on this blog.

March 13, 2014 at 3:23:00 PM CDT

**Kevin said...**

"In the early stages of the process prior to the Fairness Hearing, and
at the request of all parties, the Claims Administration Office had to
select sample claims from each claim type that had the required and
sufficient documentation to determine the accuracy of the claims
process. - See more at:

http://www.theamericanzombie.com/#sthash.L24qXbGR.dpuf

Were there not 45,000+/- claims received by the DHECC between July 1, 2012 and September 5, 2012?

Among those 45,000 claims, was there was no feasible way to discern if any of those fit the "required and sufficient documentation" criteria without expediting PSC personal client claims?

How did the PSC members know they had clients guaranteed to fit the criteria?

Were there any PSC expedited claimants who were ultimately determined not have the required and sufficient documentation?

Did the DHECC expedite contacting and further assisting the First In/First Out claimants (represented by counsel or pro se) whose claims were already reviewed, but found to have incomplete documents?

The 24 claims of each major objector group are not spread across the category types, are they? Aren't the majority of those expedited claims concentrated in the BEL and Seafood categories?

Did any PSC member, or any member of a PSC firm, receive attorney's fees from any of the expedited claims prior to the Fairness Hearing? Prior to the court's final approval of the class settlement?


March 13, 2014 at 11:03:00 PM CDT

**Anonymous said...**

Bingo Kevin. At the time they began expediting, BEL and Seafood had way way more completed claims than any other category. So why were any more of those expedited. Also, I think Juneau reported in September that the percentage of incomplete claims were almost the same between represented and unrepresented claimants. So again, why take PSC claims.

I think it is important for them to clarify whether expediting (in the name of sampling) was done within each category or across categories. I get it for across categories. If the first 20,000 claims were all one or two categories then they obviously needed to start processing later filed claims from the other categories before the hearing. But, under the same scenario, what reason could there be for expediting within a category with 1000's of claims already filed.

I would also like to know how many complete claims were transferred from the GCCF and why weren't they processed first as mandated by court order. My guess is that the PSC didn't have any claims filed with the GCCF and that's why they instructed Juneau to ignore those claims in favor of theirs and their cronies. What better marketing tool to get referrals than to show that you could get your claims and your friends claims pushed to the front of the line. We all know that was what this was all about and all of Juneau 's hindsight explanations won't change

the facts.
Until Fact Free Freeh took over, Juneau claimed that the entire
program was transparent. Isn't that why they put a good ole Cajun in
charge in the first place. Well lets see all of the data, emails,
transcripts, hearings or any other contemporaneous evidence of this
"sampling program" that they refused to even acknowledge until Jason
forced them to.

March 13, 2014 at 11:52:00 PM CDT

**Anonymous said...**

After reviewing Bill Atkinson's expedite claims that listed 28 firms I
verified out of 19 PSC attorneys 4 didn't appear.

I guess we can call these the good guys.
1. Joe Rice
2. Brian Barr
3. Elisabeth Cabraser
4. Mical Watts

I did locate one that was bold enough to post 27 past clients approved
for payments in excess of 26.6 million received by the Levin /
Papantonio Brian Barr's firm.

INCLUDED: Entire states of Alabama and Mississippi, as well as Gulf
Coasts of FL, LA and TX.
BP OIL SPILL SETTLEMENTS - DO YOU KNOW WHERE YOU STAND?
Some of our past clients have been approved for payments
by the BP Settlement Facility in variety of business categories view here

http://www.levinlaw.com/sites/www.levinlaw.com/files/bp_oil_spill_claim_
results.pdf

March 14, 2014 at 11:37:00 AM CDT

**Anonymous said...**

One more GOOD GUY
5. Michael Palmintier no claims located on the list.

March 14, 2014 at 11:45:00 AM CDT

**Anonymous said...**

If anyone was wondering why Lionel Sutton and Christine Reitano were
not allowed to conduct discovery, and have not been granted a hearing
after almost a year, anonymous just gave you the answer.

March 14, 2014 at 2:23:00 PM CDT

**Anonymous said...**

Sorry to stay anonymous but I've already been extorted, blackmailed
and had claims stolen.

Do you believe in ghost stories well ......... Jeffery I'm Back!!!!!!!!

March 14, 2014 at 4:21:00 PM CDT

**Anonymous said...**

I hear you. There are really only 2 sides. Those that have been extorted, blackmailed and had claims stolen. Those that have extorted, blackmailed and stole claims.

March 14, 2014 at 5:34:00 PM CDT

**Kevin said...**

Who can reasonably be identified as having benefitted from this exercise to allegedly obtain a representative sample of PAID claims across ALL of the claim types?

Claimants whose claims were expedited and paid, including possibly a class representative(s)?

The attorneys of the claimants in #1, including several members of the PSC?

The CPAs and "claims groups" who invoiced the lawyers and/or claimants?

Does anyone feel the class members received any benefit from expediting these claims?

Is the "reason" for expediting the review and payment of claims for personal clients of PSC members was that it imparted some benefit to the absent class members? What benefit did that impart to the class members at that date and time so close to the deadline for opting out of the settlement?

Is the reason for expediting clustered, random claims from each of the MAJOR OBJECTORS to the settlement was to help those objectors better understand and accept the settlement? If the goal was to show them a representative sample of paid claims, why couldn't that be done by using redacted versions of the numerous BEL and Seafood claims that had already been paid?

And the almost 40 claims from 1 MAJOR SUPPORTER of the settlement were expedited to benefit ...?

When, exactly, did the DHECC establish a representative sample of paid claims across all of the claim types? It appears the effort was still in action on October 17, 2012.

When and how, exactly, did the DHECC get that "representative sample" information out to the several hundred thousand class members who had to make the decision on whether or not to opt-out or stay in the settlement on or before November 1, 2012?

Isn't it true that, in actuality, this was not done to benefit the class as a whole because the class as a whole never received the "representative sample" information to help them avoid confusion and assess whether or not to opt-out or stay in the settlement?

Case 2:10-md-02179-CJB-DPC Document 13347-21 Filed 09/02/14 Page 23 of 25

Was the opt-out deadline extended beyond November 1, 2012?

Anonymous at March 14, 2014 at 11:37:00 AM:

You might want to check Mikal Watts "good guy" credentials, again.

**March 14, 2014 at 6:50:00 PM CDT**

**Anonymous said...**

Well in 2012 Watts was a Good Guy he resigned in March 2013.

Kevin a few things you might want to look into.

Who can reasonably be identified as having benefitted from this exercise to allegedly obtain a representative sample of PAID claims across ALL of the claim types?

A) PSC, Paj and BP the reports prior to the Fairness Hearing where dismal but amazingly they portrayed it as a well oiled machine.

http://www.deepwaterhorizoneconomicsettlement.com/docs/Summary-DwH-CA-Report-Fairness-Hearing-11-08-2012.pdf

Page 5.Acceptance Rates

For those claims for which we have issued payable notices, we have experienced a 95% acceptance rate-meaning, for those who have received notice of an award, 95% of the responses have been favorable, accepting the amount calculated.

PSC members needed to accept the offers it's my understanding the BCA Group filed hundreds of claims but only after receiving offers did they Opt them Out.
(not good for the stats)

http://www.deepwaterhorizoneconomicsettlement.com/docs/Slides-CA-Report-Fairness-Hearing-11-08-12.pdf

Look at the BEL 25% Failed Causation anyone receiving a notices had time to Opt-Out prior to the deadline. My totals show 79,008 claims filed and only 383 IEL & BEL class members had a chance to know if they would receive a payment. The charts do show a failure in the class notice 1654 claims filed but was excluded for signing the Induced Release under GCCF.

Opt Out deadline was Oct 1, 2012 but moved to Nov 1,2012 I think we had a storm.

http://www.deepwaterhorizoneconomicsettlement.com/docs/08272012 Order(opt-outdeadline).pdf

A judge has refused to extend a Nov. 1 deadline for plaintiffs to opt out of a proposed settlement of economic claims against BP over the 2010 Gulf of Mexico oil spill. Some prospective claimants argued that they didn't have enough information to decide whether to opt out, since many have not received settlement offers from the court-supervised Deepwater Horizon Claims Center created as part of the proposed deal.

http://www.dailycomet.com/article/20121011/WIRE/121019954

IN-Hale

March 14, 2014 at 11:12:00 PM CDT

**Kevin said...**

From Pat Juneau's statements to the court at the Fairness Hearing on November 8, 2012:

"So electronically, we did that and, commensurate with that activity going on, developed the computer models to do the implementation of these various programs that we have. Again, the concept was -- and still is -- was to get things so we get some standardization in what we are doing. So if we have ten people who have ten identical claims, they should get the identical amount of money. That was the concept.

So great activity was expended in detailing those computer models and getting that done. We've done that.

We then created simultaneously the web site that's been accessible to everybody and to the public. We created the claim forms, instruction booklets, created electronic systems on the filing online, in person, or by mail. It's kind of all-service, 7-Eleven approach. It's very accessible to people who file claims, and we've gotten them from all sources.

All of these models and the testing, then, we developed internally. The court-appointed system developed that.

We then made that accessible to the plaintiffs. We made that accessible to BP. Both of them did their independent checking. The object, again, was, it was our program, but if someone saw a bug in the program we have that's inconsistent with what was outlined in the settlement agreement, we wanted to know about it. We have been through that. We've completed that test.

So what happened? Started taking documents and material in voluminous nature in June. June 4th was kickoff day."

This might qualify as "proof" the PSC had access to the claim calculation models and program prior to June 2012 and that it was provided to them by the DHECC. While we don't know the earliest date they had access, this may at least establish they had access long before the non-PSC attorneys and pro se claimants, and they did not have to spend their own money to develop a program from scratch.

They probably used that calculation program to file their personal client claims that were expedited by the DHECC.

I don't think it would be a stretch of the imagination to believe they used that court-provided program to help other claimants jointly represented by PSC members and other law firms under their pyramids, including 1 or more who also had claims expedited by the DHECC.

March 16, 2014 at 3:29:00 PM CDT

Post a Comment

## Links to this post

Create a Link

| Newer Post | Home | Older Post |
|---|---|---|

Subscribe to: Post Comments (Atom)

Powered by Blogger.