# Exhibit 28

# American Zombie

Independent Investigative Journalism and Commentary from New Orleans, LA

Create Blog   Sign In

More   Next Blog»

Friday, March 14, 2014

## DHECC - Response to the last post

I received a more detailed response yesterday from the DHECC Claims Administration Office in respect to the article I posted regarding expedited claims:

In response to your recent inquiry, we thought that you should be made aware of the actual facts. In the fall of 2012 the DHECC Program was fast approaching the fairness hearing and the opt-out deadline.  To avoid confusion as to who should opt-out versus who should stay in the class, it was important for the class as a whole to have a representative sample of paid claims across all of the claim types in order for them to assess which was the better path forward for them.  This could not be accomplished in the time required using the first-in/first-out (FIFO) method outlined in the Settlement Agreement, which method had been used for the summer of 2012, because many of the claims were incomplete and therefore not ready for processing.

After discussion with the Court, BP and the PSC, it was determined that a larger number of claims should be examined before the fairness hearing so that the Court, the parties, objectors and claimants could see how the settlement program was working.  As noted above, since the program had encountered problems with a lot of the claims not having complete documentation it was difficult to come up with claims that could be analyzed and determined, so a sample of sufficiently documented claims was needed.

The Claims Administrator, with the knowledge and input of the PSC and BP, asked the PSC to provide a listing of such cases and a sampling was taken of those cases.  This action had nothing to do with trying to expedite a claim for any particular attorney or party. Pursuant to that request, claims were submitted, a sampling taken and determinations were made, and those results were made available to the Court and the parties at the time of the fairness hearing.  During this same time frame some of the objectors were taking the position that in order to be able to determine whether or not to opt out, they needed to see at the time of the fairness hearing a determination on the type of claims they were handling.  We therefore took samples of claims from the several of the objectors and made determinations which were also available at the time of the fairness hearing.  It is interesting to note that over 60% of the claims that were considered were not represented by the PSC.

The issues as they stood at that time and the above outline of facts are supported by the e-mails recently made public which were subject to confidentiality.

I have reviewed the Fairness Hearing transcript as well as the Claims Administrator's reports.  I have yet to see any mention of the sampling program.

### Zombie be who?



**Dambala - Jason Brad Berry**
New Orleans, Sovereign City-State

ashedambala@gmail.com

View my complete profile

### Snake Gods need love too



### The Truitt Law Firm, Inc.



Zombie recommends Truitt Law for you legal needs

### Dozidotes



Check out Dozidotes jewelry made right here in Nawlins'!

Upon receiving this response, I replied with the following request:

Thank you and Mr. Juneau for the response.

This reply states that Mr. Juneau had a discussion with the Court, BP and the PSC regarding the sampling process. Could you please provide me with the minute entry for this discussion? It's my understanding that any conference with the Court is supposed to generate a minute entry in the record. I would like to review this minute entry.

I didn't receive a reply today but I hope to get a reply on Monday.

Posted by Dambala - Jason Brad Berry at 3/14/2014 09:38:00 PM  
Labels: Claims administration office, DHECC, expedited claims

## 12 comments:

Anonymous said...

Kicking ass... ZOMBIE STYLE!!! - BL

March 14, 2014 at 11:05:00 PM CDT

Anonymous said...

" the program had encountered problems with a lot of the claims not having complete documentation it was difficult to come up with claims that could be analyzed and determined, so a sample of sufficiently documented claims was needed."

What size sample from each category of claims was needed? And who made that decision?

"The Claims Administrator, with the knowledge and input of the PSC and BP, asked the PSC to provide a listing of such cases and a sampling was taken of those cases."

If I am reading this correctly, Juneau is saying that the program (CA, BG, PWC, P&N, GCG) had problems finding claims that had sufficient documentation in September 2012, so he asked the PSC to provide a list of claims that did have sufficient documentation. Really? How would the PSC know which claims had sufficient documentation if the "Program" did not? How would the PSC know anything about any claims other than their own?

In other words, with the fairness hearing rapidly approaching, Juneau and the "program" had no idea what they were doing, and after explaining that to the Court, they all decided to let the PSC pick whatever claims they wanted, then help the PSC make sure they submitted all of the right documentation, then expedite (sample) those

### Consider It Done in NOLA



Errands run, groceries made...contact CID NOLA

### Follow by Email



Email address…   Submit

### Blog Archive

Blog Archive ▼

### Followers



Join this site  
with Google Friend Connect  
Members (106)   More »

Already a member? Sign in

### Brains I Feed On

adrostos

Aminaminamina... Say What?!!

animamundi

Ashley Morris

b.rox

Becky Houtman...great writer

BigEZBear

Blog of New Orleans

Cenlamar

claims, then pay those claims and tell the public that this was a fair and transparent process. Then within a month of the hearing, BP starts arguing to change the rules, the Court issues multiple stays, Louis Freeh is given the authority to file claw back motions against any claimant he unilaterally decides should not have been paid and yet Pat Juneau is still there making millions and the PSC is still on course to make $600,000,000 in addition to the millions in fees they already made from the claims they picked for the "sample".
WTF? WTF? WTF?

March 14, 2014 at 11:46:00 PM CDT

**Kevin said...**

"During this same time frame some of the objectors were taking the position that in order to be able to determine whether or not to opt out, they needed to see at the time of the fairness hearing a determination on the type of claims they were handling. We therefore took samples of claims from the several of the objectors and made determinations which were also available at the time of the fairness hearing." - See more at:
http://www.theamericanzombie.com/#sthash.lqXUX7eL.dpuf

Does that make sense? The objectors said they needed some information about their claims AT THE TIME OF THE FAIRNESS HEARING in order to determine whether or not they should advise their clients to opt out of the settlement 7 days BEFORE the date of the Fairness Hearing?

Can we get some response from the objectors' counsel involved in this? Did they get this "sample" info at the Fairness Hearing? Before the FH? Before the deadline to opt-out? Were the major objectors surprised by the sudden review, processing, settlement offers and payment of 24+/- of their claims?

According to the email chain, this major objector "sampling" was done as a directive from Class Counsel; not BP or the independent vendors at the DHECC. Was it also Class Counsel who directed the "sampling" of the major supporters of the settlement? When did the supporters receive their "sampling" results and payments?

How many of the total number of the expedited settlement offers were rejected or appealed by anyone, including BP?

March 15, 2014 at 12:44:00 PM CDT

**Anonymous said...**
Does anyone else have the urge to quote Walter Scott?

March 15, 2014 at 2:00:00 PM CDT

**Kevin said...**
Maybe an attorney or 2 would answer these questions:

- confederacy of dunces
- Cryptogon
- Daily Kingfish
- Dangerblond...hell yeah
- Disenfranchised Citizen
- Ernie the Attorney
- Fiyou on the Bayou
- G-Bitch...fuckin' eh
- Gentilly Girl
- George Washington's Blog
- Good Children
- Gumbo Pie
- HammHawk
- http://frogpondish.blogspot.com/
- Huff Po
- Humid City...Loki is da schnizzel
- humidhaney
- ilostmyipod
- Independent Nix
- Keep It Trill
- Library Chronicles
- Liprapslament
- Maitri's VatulBlog
- Metroblogging
- Mikeb302000
- Minor Wisdon
- Mitchell's Musings
- Moldy City
- Moose Denied
- New Orleans Ladder - Edtilla
- New Orleans Slate
- NOLA
- Noladishu
- NOLAFemmes

Could those who opt-outed of the settlement be "objectors" to this settlement and appear at the Fairness Hearing?

If not, then in order to be an objector to the settlement, that means you have not opted out?

Can the DHECC identify specifically everyone described as "some of the objectors taking the position that in order to be able to determine whether or not to opt out …?" Who among the major objectors fell into this group? How many objectors were threatening to opt out?

Was the PSC, BP and the DHECC concerned the sealed opt-out number might be reached if the major objectors opted-out?

From the FH transcript:

"Mr. Godfrey: Both. But I also have an announcement to make, which I will do formally now. As the Court knows, under Section 21.3.6 of the settlement agreement, BP negotiated with Mr. Rice the option of terminating the agreement if we reached numbers in a sealed envelope. We didn't reach the numbers. Indeed, the numbers of objectors and opt-outs were less than anticipated, BP had the obligation to exercise that option to terminate three days ago. It chose not to do so. The option has expired. BP is not exercising the option. The settlement is working as we anticipated and as we negotiated with Mr. Rice and Mr. Fayard."
(R. 7892 at page 62 of 328.)

March 15, 2014 at 2:52:00 PM CDT

**Anonymous said…**

Sir Walter Scott "Oh what a tangle web we weave, When first we practice to deceive!"

I can't comment for the objectors but reviewing the minutes from the Fairness Hearing it's clear they pointed out several flaws wrong with the settlement that should have been addressed before it was approved.

Let's break down what Bp benefited by agreeing to this settlement.
1. Losses limited to 2010 only.

2. A Gerrymandered Zone A carving out key financial impacted areas. That reduced the (RTP) Risk Transfer Premium from a multiple of 1 under GCCF to 0.25 under the settlement.

3. The removal of interim payments required under OPA.

4. The creation of Coastal and Real Property Loss maps that cover nearly 80% government property excluded from the settlement. Leaving thousands of homes excluded from eligibility.

5. Individuals who lost their home due to foreclosures or bankruptcies

NolaMotion
Northwest Carrollton
Official Rising Tide Blog
people get ready
Pistolette
Public Sphere Nola
Ray in New Orleans
right hand thief
Scout Prime
Slabbed
Slimbolala
SMORGASBLOG...possibly funnier than the Onion...ht to erster
SophMom
Spocko's Brain
Squandered Heritage
Suspect Device
Thanks, Katrina
The 3rd Battle of New Orleans
The Chicory
The Frog Pond
the garden of irks and delights
The Hungry Termite
The Nation
The Truth and other Lies
thoughts of the dark rose
travelling mermaid
We Could Be Famous
Wet Bank Guide
Wonkette

**Copyright**



American Zombie by Dambala, AsheDambala, Jason Brad Berry is licensed under a Creative Commons Attribution-

are excluded but required to realize this and OPT-OUT or be bound by the terms receiving no recovery.

6. Individuals who sold their property at a reduced price after Dec 31, 2010 are excluded but required to realize this and OPT-OUT or be bound by the terms receiving no recovery.

7. Any Failed Business satisfying subparts (a), (b), or (c), below shall not be entitled to compensation pursuant to section IV. a. The Failed Business or Failed Start-Up Business reported negative EBITDA for the twelve month period prior to May 1, 2010 (or, in the event that the claimant is a Failed Start-Up Business with less than twelve months of operating history, negative EBITDA for the months during which the business operated prior to May 1, 2010).

8. Roughly 78,000 class-members filing claims not knowing if the should OPT-OUT. With another 150-200 K in waiting.

16. COOPERTAION OF PARTIES AS TO CONSUMMATION OF SETTLEMENT.

16.1 The parties agree to take actions necessary to obtain final approval of this Agreement and entry of a Final Order and Judgment, including the terms and provisions described in the Agreement, and dismissing all Released Claims against all Released Parties with prejudice. Etc…………………

17. COOPERTAION OF PARTIES AS TO SUPPORT OF SETTLEMENT.
17.1 The parties agree to support the final approval and implementation of this Agreement and defend it against objections, appeal, or collateral attack. Etc…………………

IN-HALE

March 15, 2014 at 3:59:00 PM CDT

Anonymous said...

"This action had nothing to do with trying to expedite a claim for any particular attorney or party"

So the gigantic financial impact of this process was just an unexpected by-product of the process? Suuuuure, buddy. Whatever you say.

March 17, 2014 at 3:05:00 PM CDT

Anonymous said...

" It is interesting to note that over 60% of the claims that were considered were not represented by the PSC. "

60% of what claims?
If he means total claims processed, 60% seems pretty low considering that the PSC represented on a small % of claimants.
If he means claims expedited, the mails seem to suggest that 100% if expedited claims were picked by the PSC or from objectors.

NonCommercial-NoDerivs 3.0 United States License. Based on a work at theamericanzombie.com. Permissions beyond the scope of this license may be available at ashedambala@gmail.com.



March 17, 2014 at 5:42:00 PM CDT



**Dambala - Jason Brad Berry** said...

He meant 60% of the expedited claims. He also fails to note the connections some of the PSC attorneys had to some of the non-PSC firms who got their claims expedited. Kevin has done some research on that and hopefully he'll post more on it.

March 17, 2014 at 5:48:00 PM CDT

Anonymous said...

I thought that was what he meant.
Seems like he is purposefully trying to mislead you by stating that.

March 17, 2014 at 6:29:00 PM CDT

Kevin said...

Lyons & Farrar - Florida law firm - 1 BEL claim expedited.

They were associated with Danny Becnel in at least 1 BP class action lawsuit. Don't know what reason the DHECC or the PSC would have for expediting that singular BEL claim for them.

Faegre, Baker, Daniels, LLP – Minnesota Law Firm – 37 Seafood Claims Expedited:

Take a look at comments to the article preceding this one for more details, but, essentially, they claim responsibility for putting together the seafood settlement program and they supported the settlement.

Somebody decided to expedite 37 seafood claims for them.

Law Offices of William S. Vincent – New Orleans – 40 Expedited Seafood Claims

This law firm had Herman Herman Katz & Cotlar as co-counsel in their class action against BP.

How much of a difference to that 60% does 40 claims make when you take them out of the non-PSC column and move them over to the PSC column?

Also, it seems lots of oyster lease holder claimants were represented by these firms. I imagine those could be sizeable claims resulting in some serious fees for the attorneys.

Some available information about the Objectors also makes the DHECC Response more incredible:

For instance, the following is from the the court's reasons for giving final approval to the settlement:

"As of November 15, 2102: Brent Coon & Associates appears to

represent 5,534 objectors who are also Settlement Program registrants, 56 OF WHOM HAVE SIGNED RELEASES AND BEEN PAID A TOTAL OF $9,095,810 BY THE SETTLEMENT PROGRAM, and 875 GCCF claimants who have signed releases and been paid of total of $18,941,463 by the GCCF. Farrell & Patel represents 481 Settlement Program registrants and 22 GCCF claimants who received $455,523 and signed releases of their claims against BP. Smith Stagg LLC and its co-counsel represent 281 objectors who are also Settlement Program registrants, 8 of whom have signed releases and been paid a total of $551,306 by the Settlement Program, and 51 GCCF claimants who have signed releases and been paid a total of $2,078,695 by the GCCF. Arnold & Itkin represents 104 settlement registrants and 85 GCCF claimants who have signed releases and been paid a total of $1,687,861 by the GCCF. See Rec. Doc. 8001. The simultaneous representation of objectors and claimants in the Settlement Program is not limited to the firms that filed "mass" objections. As of November 15, 2012, law firms that have filed objections represent some 6,458 registrants in the Settlement Program. See Rec. Doc. 8001." My emphasis.

I wonder how many of BCA and Smith Stag claimants cited above were expedited.

The court even disallowed thousands of "mass opt-outs" where the attorneys attempted to opt-out for their clients because of some legal reason. The court had this to say about that:

"The Court's assessment of the significance of the relatively low number of opt-outs is also supported by the fact that most of the opt outs occurred on a mass basis, meaning that they were not prepared in accord with this Court's Preliminary Approval Order, ¶ 38, because they were not individually signed. Additionally, counsel for such mass opt-outs may have breached their fiduciary and ethical duties to their clients; at the very least, the mass unsigned opt outs are highly indicative of a conclusion that such counsel did not spend very much time evaluating the merits of whether or not to opt-out in light of the individual circumstances of each of their clients and in consultation with them."

March 17, 2014 at 9:53:00 PM CDT

Anonymous said...

I like the way they keep distorting the truth by saying 60% of the claims considered were'nt PSC.. when there is a big difference between considered and PAID.

March 17, 2014 at 10:27:00 PM CDT

Post a Comment

# Links to this post

Create a Link

Newer Post          Home          Older Post

Subscribe to: Post Comments (Atom)

Powered by Blogger.