UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE OIL SPILL BY THE OIL RIG         CIVIL ACTION
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO ON APRIL 20, 2010     MDL 2179

Member Case: <u>Edward Wisner Donation v. BP</u>     SECTION "J" (2)
                <u>Exploration & Production, Inc.</u>,
                Civil Action No. 14-1525

## REPORT AND RECOMMENDATION

The referenced member case, Civil Action No. 14-1525, is a breach of contract action by The Wisner Donation ("Wisner"), a land-holding complex trust in Louisiana, against BP Exploration and Production Inc. ("BP"). Judge Barbier referred the case to me for "pretrial case management, including issuing a scheduling order, overseeing discovery, and any other preliminary matters." Record Doc. No. 7 in C.A. No. 14-1525.

Three motions are currently pending: (1) BP's Motion to Dismiss Complaint for Breach of Contract, Specific Performance, and Injunction, Record Doc. No. 13177 in MDL 2179; (2) Wisner's Motion for Preliminary Injunction, Record Doc. No. 13152; and (3) Wisner's Motion in Limine to Consider Settlement Documents with Motion for Preliminary Injunction, Record Doc. No. 13227. All three motions are opposed. Record Doc. Nos. 13201, 13296, 13300. All may be addressed by me only through report and recommendation reviewable by the district judge. 28 U.S.C. § 636(b)(1). Wisner received leave to file a reply memorandum in support of its motion for preliminary injunction.

Record Doc. Nos. 13249, 13253.  BP received leave to file a reply memorandum in support of its motion to dismiss the complaint.  Record Doc. Nos. 13325, 13328, 13329. Having considered the complaint, the record, the submissions of the parties and the applicable law, and for the following reasons, IT IS RECOMMENDED that all three motions be DENIED.

I.    BACKGROUND

Wisner owns approximately 35,000 acres of land in Lafourche Parish, Louisiana, including about nine miles of shoreline on the Gulf of Mexico and Caminada Bay known as Fourchon Beach.  After the Deepwater Horizon oil rig explosion on April 20, 2010, the Wisner property was contaminated by oil from the spill.  On August 23, 2010, Wisner and BP entered into a contract entitled Right-of-Access for Oil Spill Cleanup Operations ("Access Agreement"), which included stipulations and protocol for BP to access and use the Wisner property to perform cleanup operations.  Plaintiff's Exh. A to complaint, Record Doc. No. 1-1 in C.A. No. 14-1525; Plaintiff's Exh. 1 to Motion for Preliminary Injunction, Record Doc. No. 13152-3 in MDL 2179.  In May 2014, without input or approval from Wisner, BP ceased all cleaning operations on the Fourchon property.

In the referenced member case, Wisner is suing BP for breaches of the Access Agreement, seeking injunctive relief and damages allegedly arising from the oil spill. Wisner also has pending a separate lawsuit against BP asserting other causes of action, not under the Access Agreement but pursuant to the Oil Pollution Act, 33 U.S.C. § 2701

et seq., and federal general maritime law, seeking injunctive relief and damages arising from the explosion and oil spill. Complaint, Record Doc. No. 1, C.A. No. 13-1971. Wisner is also a plaintiff party to the Amended B1 Master Complaint, Document No. 1128 filed in MDL No. 2179, which seeks injunctive relief and damages from BP arising from the explosion and oil spill under the Oil Pollution Act, Clean Water Act, federal general maritime law and Louisiana state law. In addition, Wisner has asserted claims against BP in response to the limitation of liability petition filed by Triton Asset Leasing Gmbh et al. in C.A. No. 10-2771, Record Doc. No. 326, and by filing Short Form Joinders at Record Doc. No. 133248 in C.A. 10-8888 and Record Doc. No. 401 in C.A. No. 10-9999.

II.    DEFENDANT'S MOTION TO DISMISS

BP moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss plaintiff's complaint on three grounds: (1) Wisner, as a Louisiana trust, lacks the capacity to sue in its own name; (2) plaintiff's claims are insufficiently pleaded and/or assert obligations that are not imposed by the Access Agreement; and (3) the complaint constitutes impermissible claim splitting because Wisner has already sued BP for similar damages in its other actions pending in this multi-district litigation.

Federal Rule of Civil Procedure 8(a) requires a complaint to "contain a short and plain statement of the claim showing that the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types

of relief." Fed. R. Civ. P. 8(a)(2), (3). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009) (quotations omitted); <u>accord</u> <u>Jabary v. City of Allen</u>, 547 F. App'x 600, 604 (5th Cir. 2013). Plaintiff "need not allege in [its] complaint every fact that [it] might need to prove to prevail on the merits. . . . This simplified notice pleading standard need only give a defendant fair notice of what the plaintiff's claim is and the grounds upon which [it] rests. The liberal discovery rules and summary judgment motions are then employed to explore the details of the claim." <u>Goss v. Hardy Energy Servs., Inc.</u>, No. 09-0443, 2010 WL 427748, at *2 (W.D. La. Feb. 3, 2010) (citing <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002)); <u>accord</u> <u>Lovick v. Ritemoney Ltd.</u>, 378 F.3d 433, 438 (5th Cir. 2004).

The Supreme Court recently clarified the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."

<u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 796 (5th Cir. 2011) (quoting <u>Iqbal</u>, 556 U.S. at 678) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007))).

Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. Turner v. Pleasant, 663 F.3d 770, 775 (5th Cir. 2011).

"'[A]ccepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs,'" Wisner's complaint plausibly states claims for breach of contract by alleging "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Breton Energy, L.L.C. v. Mariner Energy Res., Inc., No. 13-20307, 2014 WL 3929918, at *4, *6 (5th Cir. Aug. 12, 2014) (quoting Wilson v. Birnberg, 667 F.3d 591, 595 (5th Cir. 2012); Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 763 (5th Cir. 2011)).

First, BP argues that Wisner, a land trust, is not a juridical person with the capacity to sue under Louisiana law and that its trustee, who is not a party, is the appropriate plaintiff to enforce the trust's rights. See La. Rev. Stat. § 9:1731 ("A trust, as the term is used in this Code, is the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another."); La. Code Civ. Proc. art. 699 ("Except as otherwise provided by law, the trustee of an express trust is the proper plaintiff to sue to enforce a right of the trust estate.").

However, Wisner filed an unopposed motion to amend its complaint to add as plaintiffs Mayor Mitch J. Landrieu, acting on behalf of the City of New Orleans as Trustee of the Edward Wisner Donation, and the City of New Orleans individually as a beneficiary, as well as other beneficiaries of the trust. Record Doc. No. 13240. The

district judge recently granted this unopposed motion, Record Doc. No. 13336, making BP's lack of capacity argument moot.

Second, Wisner's complaint plausibly asserts breach of contract claims. The complaint identifies the Access Agreement, specific clauses in the Access Agreement that BP allegedly breached, a factual basis for each alleged breach and the requested relief. The complaint gives defendant full and fair notice under Rule 8(a) of plaintiff's contractual claims under the Access Agreement and the grounds upon which they rest. The claims include factual content that allows the reasonable inference that BP is liable for the alleged breaches. On a Rule 12(b)(6) motion, the court does not determine whether Wisner will prevail on any of its claims. The "'emphasis on the plausibility of a complaint's allegations does not give district courts license to look behind those allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial.'" Breton Energy, 2014 WL 3929918, at *1 (quoting Harold H. Huggins Realty, 634 F.3d at 803 n.44). BP's arguments that Wisner's interpretation of the Access Agreement is incorrect and that Wisner cannot show either that BP has the asserted contractual obligations or that BP breached the contract go to the merits of the dispute, not to the adequacies of pleading in the complaint or the question of whether a claim upon which relief may be granted has been stated.

Finally, BP contends that the instant complaint, which was filed in July 2014, constitutes impermissible claim splitting because Wisner complains that its property was

contaminated by oil during the spill and that BP is required to conduct additional cleanup operations. BP asserts that plaintiff's prior complaints and its answer in limitation asserting claims against BP in this multi-district litigation seek damages and removal costs covering the same property and that one of plaintiff's pleadings refers to the same Access Agreement. Plaintiff responds that its claims in the instant action arising out of the Access Agreement have a different legal basis than its other claims against BP, which arise out of the Oil Pollution Act and general maritime law. Wisner argues that all of its claims are subject to this single court's rulings, which minimizes the risk of inconsistent judgments inherent in defendant's claim-splitting argument, and that plaintiff's other claims are stayed under this court's case management orders, while the instant breach of contract case can proceed to a resolution without impeding plaintiff's separate claims under the Oil Pollution Act and general maritime law.

Rule 18 of the Federal Rules of Civil Procedure is permissive. It allows a party to join whatever claims it may have against another party in a single lawsuit, but it does not require joinder of all claims. "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a) (emphasis added). The rule is clearly permissive.

BP argues that Oliney v. Gardner, 771 F.2d 856 (5th Cir. 1985), requires dismissal of the instant complaint. The Fifth Circuit stated in Oliney that a plaintiff has "no right

to maintain two separate actions involving the **same subject matter** at the same time in the same court and against the same defendant[s]. When a plaintiff files a second complaint alleging the same cause of action as a prior, <u>pending</u>, related action, the second complaint may be dismissed." <u>Id.</u> at 859 (citations omitted) (bold emphasis added); <u>see also</u> <u>Ameritox, Ltd. v. Aegis Sci. Corp.</u>, No. 3:08-CV-1168-D, 2009 WL 305874, at *4 n.4 (N.D. Tex. Feb. 9, 2009) ("Under the rule against claim-splitting, a claim may be dismissed if it arises out of the <u>same wrong</u> (or transaction) as the first-filed claim.").

> "Claim-splitting occurs when a single 'cause of action' is split by advancing one part in an initial suit and another part in a later suit." <u>FDIC v. Nelson</u>, 19 F.3d 15, 1994 WL 93409, at *2 n. 5 (5th Cir. Mar. 15, 1994) . . . . Adopted by the Fifth Circuit in <u>Super Van Inc. v. City of San Antonio</u>, 92 F.3d 366 (5th Cir. 1996), the rule against claim splitting
>> prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action. In a claim splitting case, the second suit will be barred if the claim involves the same parties and arises out of the <u>same transaction or series of transactions</u> as the first claim.
>
> <u>Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.</u>, 273 Fed. Appx. 256, 265 (4th Cir. 2008) (citations and internal quotations omitted); <u>Nelson</u>, 1994 WL 93409, at *2 n.5 (holding that Fifth Circuit applies the "same transaction" test to determine whether a single claim has been split).

<u>Id.</u> at *4.

Although plaintiff's claims in the instant lawsuit can be generically described as "arising out of" the oil spill, this does not establish that Wisner has improperly split its claims. The allegations of the complaint in C.A. No. 14-1525 establish that Wisner's claims are based exclusively on defendant's alleged nonperformance of its contractual

obligations under the Access Agreement, which governs the parties' <u>agreed</u> relationship as of August 23, 2010, with respect to the access rights and operations described in the contract. The facts and legal sources regarding BP's performance of its contractual obligations to Wisner are separate from those regarding BP's obligations under federal statutes and other laws that determine responsibility for the spill and its direct effects. I find that the two actions are <u>not</u> based on the same facts, do <u>not</u> involve the same subject matter and do <u>not</u> assert the same cause of action. The claim-splitting rule does not require dismissal of the instant action.

To the extent that some facts underlying plaintiff's separate complaints may overlap, consolidation of the actions and other case management devices remain available to the court and the parties to manage Wisner's various claims. The risks of "duplication, rulings that may trench upon the authority of sister courts, and piecemeal resolution of issues that call for a uniform result," which the rule against claim-splitting operates to prevent, are not implicated here. <u>Id.</u>

### III.    <u>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>

Wisner filed an expedited motion for preliminary injunction. Plaintiff argues that the Access Agreement requires BP to (1)(a) provide complete remediation at the Breach 1 site on Fourchon Beach, (b) employ the Wisner Science Team's remediation plan and (c) reimburse Wisner for outstanding expenses; and (2) conduct the remediation work as soon as practicable and finish it before the completion of the state-run Caminada

Headland Beach and Dune Restoration Increment II ("Cam II") project. Wisner seeks this relief as to <u>all</u> damage allegedly incurred by its property, whether resulting from the explosion and oil spill itself or from the cleanup operations BP conducted on its property pursuant to the Access Agreement.

Wisner requests expedited handling because of the impending Cam II project, which will deposit up to seven feet of new dunes over existing sand on Fourchon Beach. Wisner asserts that, after Cam II is complete, any oil from the Deepwater Horizon spill that remains on the beach will be permanently buried under the new sand. According to the Wisner Science Team, remediation of existing oil will take six to eight months to complete, so time is of crucial importance if the property is to be fully remediated up to the standards postulated by the Wisner remediation plan before the Cam II project begins. Wisner avers that the Cam II project cannot be delayed because it is vital to the preservation of the Port Fourchon coastline and the Barataria Basin.

The Access Agreement granted BP the right to enter Wisner's Fourchon property for purposes of conducting oil spill response activities. Wisner alleges that the Access Agreement obligates BP to "<u>remove the oil from the Property</u>, employ the highest industry standards in removing the oil, reimburse Wisner to monitor and assess BP's remediation efforts, and turn over all documents and data obtained during the process." Plaintiff's memorandum in support, Record Doc. 13152-1 at p. 2 (emphasis added).

Wisner argues that the contract grants it "full operational rights" to ensure that its property is fully remediated.  Id.

Wisner claims that, in addition to BP's contractual obligation to reimburse Wisner for its costs of monitoring the cleanup and spill response operations, BP is "responsible for all reasonable costs and expenses associated with <u>assessing damage</u> to Wisner property caused by the oil spill cleanup operations."  Access Agreement, ¶ 9 (emphasis added).  Wisner states that it is still paying the Coast Guard for remediation and assessment and is paying its own employees to supervise these efforts.  Wisner agues that BP must pay these costs, even though no BP personnel are involved, because these actions are associated with cleanup operations, and the non-transferrable nature of the Access Agreement cannot shift BP's burden to another party.

BP responds that the Access Agreement is no more than its name implies and its terms provide: a contract that grants BP a right of access to Wisner property for the purpose of responding to the oil spill.  BP argues that nothing in the contract obligates it to <u>conduct</u> cleanup operations. Defendant contends that the contract's language is both clear and explicit in its terms, which allow access to the property, govern the conditions under which BP can exercise its access rights, obligate BP to give information to Wisner regarding BP's spill response activities, and require BP to pay for damages caused by its cleanup and response operations, not by the spill itself.  Defendant stresses that the

Access Agreement contains no language that compels it to engage in the all-encompassing remediation operations that Wisner seeks.

BP contends that Wisner bases its argument on a misinterpretation of the phrase "highest industry standards" in the contract. BP contends that this phrase only applies to the requirement that it use environmentally sensitive practices while carrying out removal operations, but neither compels BP to remove oil to Wisner's satisfaction nor sets forth any standards regarding such operations.

A.    Legal Standards for a Preliminary Injunction

Whether to grant or deny a preliminary injunction rests within the district court's discretion. Janvey v. Alguire, 647 F.3d 585, 589, 592 (5th Cir. 2011). "[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements" established by the case law. Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs, 692 F.3d 343, 348 (5th Cir. 2012) (quotation omitted) (emphasis added); accord Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).

To obtain a preliminary injunction, plaintiff must "demonstrate (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that [its] substantial injury outweighed the threatened harm to the party whom [it] sought to enjoin, and (4) that granting the preliminary injunction would not disserve the public interest." Planned Parenthood, 692 F.3d at 348

(citation omitted) (emphasis added); cf. Winter, 555 U.S. at 20 (framing the third element as a showing "that the balance of equities tips in [the requesting party's] favor").

B.    Standards of Contract Interpretation

"To assess the likelihood of success on the merits, we look to standards provided by the substantive law." Janvey, 647 F.3d at 596 (quotation omitted).  This breach of contract case is governed by Louisiana substantive law.

"The contract is the law between the parties.  When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.  Courts may not disregard a clear and explicit clause of a contract." Indus. Roofing & Sheet Metal Works, Inc. v. J.C. Dellinger Mem'l Trust, 751 So. 2d 928, 933 (La. App. 2d Cir. 1999) (citing La. Civ. Code art. 2046; Amend v. McCabe, 664 So.2d 1183, 1187 (La. 1995); Maloney v. Oak Builders, Inc., 256 La. 85, 235 So. 2d 386 (1970)); accord Clovelly Oil Co. v. Midstates Petroleum Co., 112 So. 3d 187, 192 (La. 2013); Campbell v. Melton, 817 So. 2d 69, 74-75 (La. 2002).

"The meaning and intent of the parties to the written contract in such cases must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence." First S. Farm Credit, ACA v. Gailliard Farms, Inc., 880 So. 2d 223, 225 (La. App. 2d Cir. 2004).  Louisiana's rules of contract construction

> do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of new contract when the terms express with sufficient clearness the parties' intent.

> The fact that one party may create a dispute about the meaning of a contractual provision does not render the provision ambiguous.

Chevron USA Inc. v. Santa Fe Snyder, 69 F. App'x 658, 2003 WL 21355979, at *2 (5th Cir. May 22, 2003) (quoting Campbell, 817 So. 2d at 76).

"The words of a contract 'are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.'" Guidry v. Am. Pub. Life Ins. Co., 512 F.3d 177, 181 (5th Cir. 2007) (citing La. Civ. Code art. 2047) (quoting Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 580 (La. 2003)); accord Clovelly Oil Co., 112 So. 3d at 192.

> "[A] contract must be viewed as a whole and, if possible, practical effect given to all its parts, according to each the sense that results from the entire agreement so as to avoid neutralizing or ignoring any of them or treating them as surplusage.  Some effect is to be given to every word or clause if possible for a court may not impute to the parties the use of language without meaning and effect."

Franks Inv. Co., LLC v. Union Pac. R.R., 972 F. Supp. 2d 891, 897 (W.D. La. 2013) (citing La. Civ. Code art. 2050) (quoting Lambert v. Md. Cas. Co., 418 So. 2d 553, 559-60 (La. 1982)); accord Clovelly Oil Co., 112 So. 3d at 192.

"In Louisiana the construction of an unambiguous contract is a question of law." Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., 292 F.3d 471, 486 (5th Cir. 2002).

C.    <u>Plaintiff Fails to Show a Substantial Likelihood of Success on the Merits</u>

Wisner alleges that the Access Agreement obligates BP to remove <u>all</u> spilled oil from plaintiff's property, pay all costs of complete oil removal and restoration, employ the highest industry standards in removing the oil and reimburse Wisner for its expenses of monitoring and assessing BP's remediation efforts. Plaintiff asserts that the contract gives it the right to control all cleanup operations and final approval rights over any decision to declare the property clean.

Wisner contends that BP breached the Access Agreement by failing to assess and remove oil from the wetlands; provide clean replacement sand; implement plaintiff's numerous assessment and remediation demands, including particularly two comprehensive plans created by Wisner's Science Team; provide required documentation; reimburse Wisner's expenses; and remove debris and objects that BP left on the property. Finally, Wisner alleges that BP unilaterally cancelled and breached the Access Agreement when it decided on May 22, 2014, to cease all removal activities based on the decision of the United States' Federal On-Scene Coordinator that "no further removal activities are appropriate on the property." Letter from Coast Guard Captain S. Walker, the Federal On-Scene Coordinator, to plaintiff dated May 21, 2014, Defendant's Exh. C to its opposition memorandum, Record Doc. No. 13201-2 at p. 1.

Defendant responds that Wisner has not satisfied any of the four elements of the preliminary injunction standard. First, BP contends that plaintiff cannot show that it is

substantially likely to succeed on the merits because the Access Agreement does not grant Wisner the right to control BP's response to the oil spill, which is governed by the Oil Pollution Act and other laws. BP asserts that it is <u>contractually</u> obligated to remedy only those damages caused by its cleanup and response operations, not by the oil spill itself.

Applying the rules of contract construction described above, I find that the Access Agreement is clear and unambiguous and that Wisner's strained interpretation of the contract would expand BP's contractual obligations beyond the plain language of the agreement. As a result, I find that plaintiff has not carried its burden to show a substantial likelihood that it will succeed on the merits.

The provisions of the Access Agreement are clear. The contract grants BP access to Wisner's property for BP's cleanup and response operations. As accessories to that primary purpose, the contract obligates BP to protect the property from or pay for physical damages caused by defendant's use of its right of access. It does <u>not</u> contain any language stating that Wisner can require BP to undertake certain cleanup operations. It does <u>not</u> say that BP is required to conduct oil removal operations to plaintiff's satisfaction and it does <u>not</u> contain any standards regarding such operations. It does <u>not</u> direct BP to implement any overall remediation scheme proposed by Wisner.

The clear and unambiguous nature of the subject contract begins with its title: "Right-Of-Access For Oil Spill Cleanup Operations." Access Agreement. Plaintiff's

Exh. A to complaint, Record Doc. No. 1-1 in C.A. No. 14-1525; Defendant's Exh. 1 to its opposition memorandum, Record Doc. No. 13201-1 in MDL 2179. The opening paragraph states that Wisner, the Grantor, "grants access to its properties in South Lafourche Parish for the following purposes, and under the following conditions." Id. (emphasis added). The first numbered paragraph explains the contract's purpose: "In consideration of the need for prompt action to address the presence of oil from the BP Deepwater Horizon oil spill (hereafter 'the oil spill'), Grantor does hereby grant unto [BP] a right of access for the purpose of cleanup operations related to the oil spill." Id. at ¶ 1 (emphasis added). The other provisions of the Access Agreement facilitate and supplement that central purpose.

Paragraph 8 states that "[t]he highest industry standards shall be used to insure environmentally sensitive practices while carrying out operations on the Wisner Property." Id. ¶ 8 (emphasis added). Two subparagraphs set minimum standards for such environmentally sensitive practices. Subparagraph 8(a), entitled "Beach Protocols," limits the use of vehicles and heavy machinery in defined areas of the property and requires daily removal of all loose materials, trash and tools. Subparagraph 8(b) is entitled "Marsh and Upland Protocols" and restricts the use of vehicles and other means of transport to minimize the "impact" of such equipment on "very sensitive" marsh vegetation and habitats. Id. ¶ 8.

Paragraph 10 of the Access Agreement obligates BP to indemnify Wisner against any claim or loss "<u>arising wholly or in part from, or in connection with access</u> given to Grantee under this right-of-access agreement." <u>Id.</u> ¶ 10 (emphasis added).

Paragraph 12 permits Wisner to revoke the Access Agreement at will. However, nothing in the contract sets a term for its duration or prevents BP from deciding that it no longer needs access to the property for response operations.

For purposes of plaintiff's motion for preliminary injunction, the contract's key provision is paragraph 9, which provides:

> Grantee [BP] shall be responsible for all reasonable costs and expenses associated with assessing <u>damage to Wisner property caused by oil spill cleanup operations</u>. Grantee shall be responsible for all reasonable costs and expenses <u>associated with restoring said damage</u> to said property. <u>Examples of such damages</u> include, but are not limited to, damage to vegetation by vehicles, damage to habitat from unattended or abandoned booms, or damage to marsh surface from equipment. Grantor will provide Grantee with a schedule of damaged resources as described herein and an invoice for the cost of restoration. Payment for the cost of restoration will be due within 30 days of receipt of the invoice. Nothing herein shall be construed to diminish Grantor's right to choose and control restoration activities upon its lands. Nothing herein shall act as a waiver or release of any obligation Grantee may owe Grantor <u>as a result of oil released</u> from the Deepwater Horizon incident.

<u>Id.</u> at ¶ 9 (emphasis added).

The Access Agreement, and paragraph 9 in particular, obligates BP to pay for damages <u>caused by BP during its cleanup operations,</u> not damages caused by oil washing ashore from the Deepwater Horizon explosion and spill. This causation element is specific and clear. It is consistent with the context of the contract as a whole, which

governs BP's right of access to the property and its responsibility for "restoring said damage," i.e., the damages referenced in the preceding sentence that are caused by cleanup operations. The listed examples of "such damages" confirm this interpretation. All the examples are damages that may be caused by equipment used in the cleanup operation, not by the oil spill itself.

The penultimate sentence in paragraph 9 that "[n]othing herein shall be construed to diminish Grantor's right to choose and control restoration activities upon its lands" merely confirms that the Access Agreement does not interfere with plaintiff's rights as a property owner. In the context of the entire contract, this sentence cannot be read to confer on Wisner any right to direct BP in its oil removal operations.

The final sentence of paragraph 9 clarifies that the contract has no effect on any obligations that BP may owe to Wisner regarding damages incurred as a result of the oil released. The Access Agreement does not cover any obligations to repair damages caused by the oil that might arise from other legal sources, such as state tort laws, the Oil Pollution Act, the Clean Water Act, the Outer Continental Shelf Lands Act and federal maritime law. Such alleged obligations are the subject matter of other lawsuits and claims by Wisner against BP in this multi-district litigation.

Wisner argues that paragraph 8 of the Access Agreement requires BP to use the highest industry standards to remove all oil from plaintiff's property. This strained assertion takes the phrase "highest industry standards" wholly out of its contractual

context.  Paragraph 8 actually states that "[t]he highest industry standards shall be used to insure environmentally sensitive practices <u>while carrying out operations</u> on the Wisner Property.  In addition, Grantee shall adhere to, at a minimum, the following specific standards."  <u>Id.</u> at ¶ 8 (emphasis added).  The phrase "highest industry standards" refers to the use of environmentally sensitive practices while conducting <u>cleanup and response</u> operations on the property, which is the subject and purpose of the Access Agreement, and not to any standards to be used for the removal of oil.  This reading is confirmed by subparagraphs 8(a) and 8(b), which provide minimum standards for limiting vehicle use, avoiding vehicle use in vegetated areas and dunes, taking care when using heavy equipment in areas where subsurface pipelines are located and cleaning up trash and tools from the work areas.  The specific, stated goal of these standards is to minimize damage to the property from the cleanup operations, not from the oil.  Paragraph 8 neither gives Wisner a contractual right to force BP to undertake oil removal nor establishes any standard for oil removal.

Finally, the Access Agreement contains no duration provision, rendering it terminable at will by either party.  "A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party."  La. Civ. Code art. 2024.  On May 22, 2014, BP notified Wisner that it would no longer need to access the property because the Federal On-Scene Coordinator had "concluded that 'no further removal activities are appropriate on the property.'"  Letter

20

from Nathan Block, Senior Counsel for BP, to Wisner's attorney, Defendant's Exh. 5, Record Doc. No. 13201-5, at p. 1. BP also advised Wisner that it would continue to provide all information and reimbursements required under the Access Agreement as of the date of the letter, but that the contract was otherwise terminated. This notice of termination could not be a breach of the contract.

Wisner has failed to establish a substantial likelihood of success on the merits. In the absence of that element, the court need not consider the other three elements of the standard for granting a preliminary injunction. Accordingly, Wisner is not entitled to a preliminary injunction and its motion should be denied.

Wisner has other remedies and has asserted in its other cases and claims those separate causes of action by which it may obtain the cleanup of damage caused by the oil spill itself, including through the Oil Pollution Act, the Clean Water Act, general maritime law and Louisiana state law. C.A. Nos. 10-2771, 10-8888, 10-9999, 13-1971 and the Amended B1 Master Complaint in MDL No. 2179. The Access Agreement certainly gives plaintiff the right to seek injunctive relief to accomplish the contract's stated purposes, but those are clearly limited to removal of debris or equipment that BP may have left on the property when it ended its response operations or remediation of damage to vegetation or habitat caused by vehicles, personnel or equipment during the cleanup operations. Some sort of preliminary injunctive relief might be appropriate if Wisner could demonstrate a right to this extraordinary remedy by making a prima facie

showing that BP had breached a particular obligation of the contract–but plaintiff has not

done so on the current record. Because Wisner seeks an order that BP must clean up <u>all</u>

damages to the property, regardless of the cause, plaintiff has not established the specific

causation element of the actual obligations imposed on BP by the Access Agreement.

If Wisner could produce proof of exactly what damages were caused by the cleanup

operations and are therefore actionable in this lawsuit alleging breach of the Access

Agreement, as opposed to occurrences of damage as to which it might have a separate

remediation or recovery right under the Oil Pollution Act and other laws, as alleged in

other pending lawsuits between the parties in this multi-district litigation, Wisner may

file a new, focused motion to seek such limited injunctive relief.

IV.   PLAINTIFF'S MOTION IN LIMINE TO CONSIDER SETTLEMENT
      <u>DOCUMENTS WITH MOTION FOR PRELIMINARY INJUNCTION</u>

Wisner filed what it calls a Motion in Limine to Consider Settlement Documents

with Motion for Preliminary Injunction. Record Doc. No. 13227. A motion in limine

is ordinarily "[a] pretrial request that certain inadmissible evidence <u>not be referred to or</u>

<u>offered</u> at trial." <u>Black's Law Dictionary</u> (9th ed. 2009) (emphasis added). Wisner seeks

the opposite of a motion in limine. It asks the court to consider documents that were

designated as confidential in connection with the parties' earlier settlement of a dispute

over BP's performance of the Access Agreement's provision regarding delivery of data

and documents to Wisner. Plaintiff's motion is actually an attempt to supplement its

evidence and arguments regarding its motion for preliminary injunction without having filed a motion requesting permission for such relief as required by Local Rule 7.4.

In any case, the motion should be denied. As discussed in the preceding section, the Access Agreement is clear and unambiguous, which makes extrinsic evidence unnecessary to ascertain the intent of the parties and inadmissible to contradict or add to the terms of the contract. Miller v. Miller, 1 So. 3d 815, 818 (La. App. 2d Cir. 2009) (citing La. Civ. Code art. 1848; Campbell, 817 So. 2d at 75); First S. Farm Credit, 880 So. 2d at 225.

In addition, Rule 408 of the Federal Rules of Evidence makes inadmissible and prohibits the use of the settlement agreement, the findings of the Settlement Neutral (an attorney appointed by the parties to evaluate their positions and make settlement recommendations) and the parties' position papers that were submitted to the Neutral. Wisner seeks to introduce these documents in support of its arguments that BP has breached the Access Agreement, so as to warrant granting a preliminary injunction. However, Rule 408(a) prohibits use of these materials to prove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction made during settlement negotiations. Fed. R. Evid. 408(a)(1). The findings of the Settlement Neutral are also inadmissible hearsay. Fed. R. Evid. 801(c)(2), 802.

Finally, although the parties have filed the settlement agreement under seal and redacted from their memoranda all quotations and paraphrases of its confidential terms,

23

I have reviewed in camera the agreement and unredacted versions of the memoranda. The settlement agreement itself unambiguously prohibits the use that Wisner seeks.

Accordingly, this motion should be denied.

## RECOMMENDATION

For all of the forgoing reasons, **IT IS RECOMMENDED** that BP's Motion to Dismiss Complaint for Breach of Contract, Specific Performance, and Injunction, Record Doc. No. 13177; Wisner's Motion for Preliminary Injunction, Record Doc. No. 13152; and Wisner's Motion in Limine to Consider Settlement Documents with Motion for Preliminary Injunction, Record Doc. No. 13227, all be **DENIED**.

All parties have <u>not</u> consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Further injunction proceedings, even if limited to relief that the Access Agreement may provide, will require evidentiary hearing, possibly on an expedited basis because of the looming Cam II project. To avoid the delay, additional expense and duplication of effort that will be required by proceeding via the cumbersome report/findings and recommendation process of 28 U.S.C. § 636(b)(1), and to ensure consistency of results, **IT IS FURTHER RECOMMENDED** that the previous referral of this member case to a United States Magistrate Judge be **VACATED**, so that further injunctive or other expedited pretrial proceedings, if any, may be conducted by the district judge, until such time, if ever, that all parties consent in writing pursuant to Section 636(c). In place of the previous referral order, **IT IS FURTHER**

**RECOMMENDED** that a new referral order of this member case be issued to me solely for purposes of conducting a settlement conference on the question of what alleged damages might be attributable to the cleanup and response operations subject to the Access Agreement between the parties and whether an agreement between the parties concerning that issue might be reached before commencement of the Cam II project.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[1]

New Orleans, Louisiana, this ___5th___ day of September, 2014.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

**CLERK TO NOTIFY:**
**HON. CARL J. BARBIER**

---

[1]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.