## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * | MDL No. 2179 SECTION: J |
| Applies to: | * * | Judge Carl J. Barbier Magistrate Judge Sally Shushan |
| 12-970 | * | |

_____

### BP MEMORANDUM IN OPPOSITION TO OM, LLC'S AND SUBLAXMI, LLC'S MOTION TO REVOKE OPT-OUT AND TO REINSTATE CLAIM

The facts are clear that this Court should deny OM, LLC's and Sublaxmi, LLC's (the "LLCs") motion to revoke their opt-out status. These entities validly opted out of the *Deepwater Horizon* Economic and Property Damages Settlement Class (the "Class") on October 30, 2012. The LLCs untimely submitted a request to revoke their opt-out status, even after the Court, with BP's consent, extended the revocation deadline to allow such potential class members further time to evaluate the settlement and determine whether to revoke their exclusion from the Class. And, under Sections 8.2.5 and 8.2.6 of the *Deepwater Horizon* Economic and Property Damages Settlement Agreement (the "Settlement Agreement"), BP has sole and unilateral discretion, unless otherwise ordered by this Court on good cause shown, to consent to untimely opt-out revocation requests. BP does not consent here. And, no good cause has been shown to allow the LLCs' reinstatement into the Class. Therefore, the LLCs' motion must be denied.

### The LLCs Validly Opted Out of the Class.

By letter dated October 30, 2012, the LLCs sent a valid request to the Exclusions Department of the Court-Supervised Settlement Program (the "CSSP Exclusions Department") asking to be excluded from the Class. (*See* Dkt. No. 13319-1 at 1-2.) At this point, the LLCs were excluded from the Class and not entitled to file a claim or receive a claims payment from

the Court Supervised Settlement Program ("CSSP") under the terms of the Settlement Agreement unless they filed a valid revocation request.  In fact, BP and Class Counsel filed with the Court in November 2012 a joint report identifying the list of valid opt-outs received by the CSSP Exclusions Department.  (Dkt. No. 8001.)  The LLCs were included on this report.  *See id.* Accordingly, pursuant to the terms of the Settlement Agreement, the burden was then on the LLCs to revoke their opt-out requests in a timely manner.  The LLCs did not do so.

### The LLCs Failed to Timely Revoke the Opt-Out Request Despite Receiving Additional Time to Revoke the Opt-Out Request and Full Notice of the Revocation Deadline.

The record plainly demonstrates that the LLCs failed to timely revoke their opt-out, despite receiving notice and a second opportunity to do so.  Although Section 8.2.5 of the Settlement Agreement states that "[a]ny Economic Class Member may revoke his, her or its Opt Out from the Economic Class up until three (3) days prior to the Fairness Hearing"[1], with consent of BP and Class Counsel, the Court, on November 16, 2012, extended the deadline by which an Economic Class Member may revoke a request for exclusion from the Class from November 5, 2012 to December 15, 2012.  (Dkt. No. 7928.)  As part of the November 16, 2012 Order, the Court also directed "the Claims Administrator[] to mail a copy of this Order to each individual and/or entity who has opted out…, along with an explanation of how such claimant may elect to revoke the previous opt-out."  *Id.*   In compliance with the Court's Order, the CSSP Exclusions Department subsequently sent letters to both LLCs on November 27, 2012 notifying them of the extension and providing a form the LLCs could use to revoke their opt-out requests.[2]

---

[1]   The Fairness Hearing was held on November 8, 2012.

[2]   It is important to note that the letters sent by the CSSP Exclusions Department were sent directly to the entities and at the same address provided by the LLCs as part of their opt-out requests, invalid revocation requests, and claim file with the CSSP.  (*See* Exhibit A and Dkt. No. 13319-1.)  This counters any argument the LLCs may have with respect to good cause, and also to the LLCs' argument that the initial opt-out may not be valid or

(*See* November 27, 2012 Letters from the CSSP Exclusions Department, attached hereto as Exhibit A.)   Accordingly, the LLCs — owner and otherwise — were on notice that they had opted out and had an additional opportunity until December 15, 2012 to revoke the opt-out request.  However, as is undisputed by the LLCs, despite this second bite at the apple, the LLCs chose not to regain eligibility to participate in the Settlement on or before the December 15, 2012 revised deadline.  Rather, the LLCs submitted requests to revoke their opt-out status on January 1, 2013.  (*See* Dkt. No. 13319-1 at 3-4.)  Such requests were untimely, and thus were not valid revocations according to the terms of the Settlement Agreement.   Therefore, without BP's consent or good cause shown, the LLCs are excluded from the Class.

### The Settlement Provides BP With Sole Discretion to Consent to Untimely Opt-Outs And BP Does Not Consent.

Under Sections 8.2.5 and 8.2.6 of the Settlement Agreement, BP has "sole and unilateral discretion" to accept or reject opt-out requests sent after the Court-ordered deadline of December 15, 2012.[3]  BP does not consent to the revocation now, nor has BP consented to the LLCs' request in the past.  In fact, BP confirmed its decision to reject the LLCs' request to revoke their opt-out statuses on at least two occasions.  First, BP communicated directly with Michael Cruz, a claim preparer authorized to inquire about the status of the LLCs' revocation requests.  (*See* October 8, 2013 E-Mail Correspondence from BP to Mr. Cruz, attached hereto as Exhibit B.)  In this correspondence, BP expressly informed Mr. Cruz that "BP exercised the sole discretion granted to it under the Settlement Agreement to reject the untimely revocation requests of the [LLCs].  As a result, they remain opted out of the Settlement and cannot file claims with the

---

binding because "a non-lawyer representative of the LLCs executed the initial Opt Outs."  (Dkt. No. 13319 at 3.)  The entities were clearly on notice of their opt-out status and the revised revocation deadline.

[3]   Alternatively, the Court may order revocation for good cause shown.  This exception is addressed in the next section.

Settlement Program.  It is my understanding that the Program's Exclusions Department has or will be sending letters to this effect to your two clients and/or their attorneys on record." *Id.* Subsequently, the CSSP Exclusions Department correspondingly sent the LLCs letters on October 21, 2013 confirming BP's determination not to accept the LLCs untimely revocation requests.  (*See* October 21, 2013 Letters from CSSP to LLCs, attached hereto as Exhibit C.) Moreover, the above correspondence refutes the LLCs' contention in the present motion (p. 2) that "the LLCs did not receive any documents or notices from BP" with respect to the LLCs' revocation requests.  Not only did the LLCs receive confirmation from BP directly, but they also received confirmation of the denial from the CSSP Exclusions Department.[4]   For these reasons, the LLCs are excluded from the Class and are not eligible to participate in the Settlement, and the Court should not reinstate these entities.

### The LLCs Have Not Demonstrated Good Cause for the Untimely Requests.

The LLCs also attempt to avail themselves of the good cause exception under Section 8.2.5 of the Settlement which allows the Court to accept an untimely opt-out request where good cause for the delay has been shown.  (Dkt. No. 13319 at 3.)  However, the LLCs' motion fails to articulate ***any*** reason, let alone good cause[5], for the untimely submitted revocation request. Rather, the LLCs attempt to redirect the Court's attention by stating that BP would not be prejudiced by the delay given that the LLCs submitted the revocation request only 15 days after the deadline.  *Id.*   The length of the delay is irrelevant, and allowing valid opt-outs to revoke

---

[4]   Further, the fact the LLCs sent a second revocation request is immaterial.  BP's October 8, 2013 email, as well as the CSSP's October 21, 2013 letter, apply to both the January 1, 2013 and September 27, 2013 requests.

[5]   With respect to the standard for good cause, the Fifth Circuit puts the burden on the party missing the deadline and the moving party must demonstrate "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice… ."  *See Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985).   Here, the LLCs fail to even allege inadvertence, mistake, or misunderstanding of the revocation deadline.  Thus, the Court should decline to find that the LLCs met the Settlement Agreement's good cause exception.

their requests at this juncture indeed prejudices BP.  The opt-out deadline was negotiated by BP to provide certainty with respect to the size of the Economic Class.  Whether sent in January or September 2013, or at the present, the revocation requests are untimely and require BP to consent.  Accordingly, allowing the LLCs to be reinstated without BP's consent or without good cause (which the LLCs have failed to demonstrate) will prejudice BP and establish a dangerous precedent moving forward with respect to others that have validly opted out of the Settlement.

### The Fact the LLCs Filed a CSSP Claim is of No Import Here.

In support of their motion, the LLCs state that they filed a claim and submitted certain documentation with the CSSP prior to receiving an acceptance or denial of the opt-out revocation requests.  (Dkt. No. 13319 at 1.)   However, the fact the LLCs subsequently filed a claim with the CSSP after voluntarily excluding themselves from the Class does not provide the LLCs with the right to participate in the Settlement or receive payment from BP.  The Settlement Agreement, along with the Court's orders enforcing and supervising the Settlement Agreement's implementation, expressly provides that only "Economic Class Members" are eligible to qualify for settlement payments and the BP Parties are only obligated to make settlement payments to a "qualifying Economic Class Member who signs an Individual Release…"   (Settlement Agreement at 2.)  Once the LLCs signed the opt-out requests, the LLCs voluntarily removed themselves from qualification as Economic Class Members.  Accordingly, the fact the LLCs began the claim process with the CSSP carries no weight once the LLCs sent the relevant opt-out requests to exclude themselves from the Class.[6]

---

[6]   Additionally, it appears from the LLCs' motion that they also filed claims with the BP Claims Program. (*See* Dkt. No. 13319-1 at 11-14.)  This demonstrates that the LLCs understood they were excluded from the Class, and had the time and opportunity to pursue payment through the BP Claims Facility.  Now, only after receiving a denial notice from the BP Claims Facility (and learning the Facility has closed), do the LLCs seek yet another bite at the apple.  This should not be allowed.  Further, it bears noting that the BP Claims Facility denied the LLCs' claims because the LLCs failed to demonstrate that the claimed losses resulted from the DWH Spill.

Dated:  September 11, 2014          Respectfully submitted,


                                    /s/ *Richard C. Godfrey*
Mark Holstein                       Richard C. Godfrey, P.C.
BP AMERICA INC.                     J. Andrew Langan, P.C.
501 Westlake Park Boulevard         Wendy L. Bloom
Houston, TX  77079                  KIRKLAND & ELLIS LLP
Telephone:  (281) 366-2000          300 North LaSalle Street
Telefax:  (312) 862-2200            Chicago, IL 60654
                                    Telephone:  (312) 862-2000
                                    Telefax:  (312) 862-2200


Daniel A. Cantor                    Jeffrey Bossert Clark
ARNOLD & PORTER LLP                 KIRKLAND & ELLIS LLP
555 Twelfth Street, NW              655 Fifteenth Street, N.W.
Washington, DC 20004                Washington, D.C. 20005
Telephone:  (202) 942-5000          Telephone:  (202) 879-5000
Telefax:  (202) 942-5999            Telefax:  (202) 879-5200


Jeffrey Lennard                     /s/ *Don K. Haycraft*
Keith Moskowitz                     S. Gene Fendler (Bar #05510)
DENTONS US LLP                      Don K. Haycraft (Bar #14361)
233 South Wacker Drive              R. Keith Jarrett (Bar #16984)
Suite 7800                          LISKOW & LEWIS
Chicago, IL  60606                  701 Poydras Street, Suite 5000
Telephone:  (312) 876-8000          New Orleans, Louisiana 70139
Telefax:  (312) 876-7934            Telephone:  (504) 581-7979
                                    Telefax:  (504) 556-4108


*OF COUNSEL*


**ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.
AND BP AMERICA PRODUCTION COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 11th day of September 2014.  I further certify that I served a copy of the above and foregoing pleading by U.S. Mail to Chand A. Kalia: P.O. Box 13288, Tampa, FL  33681.

Dated:  September 11, 2014                    Respectfully submitted,


                                             */s/ _Don K. Haycraft_____*

                                             Don K. Haycraft