**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by | * | **MDL NO. 2179** |
| the Oil Rig "Deepwater Horizon" | * | |
| in the Gulf of Mexico, on April 20, 2010 | * | **SECTION J** |
| | * | |
| This document relates to: | * | |
| No. 12-968 | * | **Honorable CARL J. BARBIER** |
| | * | |
| | * | **Magistrate Judge SHUSHAN** |
| | * | |

---

**BP'S MEMORANDUM IN OPPOSITION TO MOTIONS TO RECONSIDER
THE COURT'S JULY 23, 2014 ORDER REGARDING THE MEDICAL SETTLEMENT**

Since March 28, 2014, the Court received numerous rounds of briefing that addressed the precise definition of a "Later-Manifested Physical Condition" ("LMPC")—"a physical condition that is first diagnosed in a Medical Benefits Class Member after April 16, 2012"—in the Medical Settlement Agreement ("MSA").[1]  Class Counsel and their colleagues failed to convince the Court to ignore this clear and unambiguous definition and instead to rule that some physical conditions first diagnosed after April 16, 2012 should be re-defined as "Specified Physical Conditions" ("SPCs") and compensated under the SPC Matrix.  In its July 23, 2014 Order, the Court declined to rewrite the MSA in this manner.[2]

Now, Class Counsel, the Nations Law Firm, the Downs Law Group and the DLG Claimants (collectively, "Movants") try again, under the guise of a motion for reconsideration, to change this plain meaning of the settlement agreement.  They seek to rewrite the MSA to allow their clients, *en masse*, to obtain *for the first time* diagnoses of alleged severe, debilitating

---

[1]    MSA § II.VV.

[2]    Order Regarding Medical Benefits Settlement, July 23, 2014, Rec. Doc. 13179 ("July 23 Order").

conditions that they claim manifested years earlier, and then to use those diagnoses to obtain

SPC compensation.  Movants present no valid basis for the Court to reconsider its prior Order.

Reconsideration is extraordinary relief.  It is available only for the narrow purpose of

correcting manifest errors of law or fact or to consider newly discovered evidence.  Here,

Movants offer no new evidence, make no argument that was not or could not have been made

before, and cite no new law that supports reconsideration.  Rather, they rely on bald assertions

that "tens of thousands" of Class Members are entitled to compensation (and at the highest level)

under the SPC Matrix and that the express language in the MSA to the contrary should be

disregarded.  While the MSA provides a specific remedy for these claimants, it is not the one

Movants want today.  To rewrite the explicit definition of an LMPC now simply invites fraud.

The Court's July 23 Order correctly read and applied the plain language of the MSA.

The MSA defines the term "Later-Manifested Physical Condition" to mean "a physical condition

that is first diagnosed in a Medical Benefits Class Member after April 16, 2012," and that is

claimed to have resulted from exposure.[3]  The Court, like the Claims Administrator before it,

took note of this precise definition and concluded that "[t]he MSA clearly defines any condition

diagnosed after April 16, 2012 as a Later-Manifested Physical Condition," and that "[t]o hold

otherwise would invalidate a clear and unambiguous term of the MSA."[4]  The Court, in giving

effect to this unambiguous definition, properly read the MSA and its exhibits "together to give

meaning to all,"[5] finding that the LMPC definition did not create a conflict with claims for

compensation under the SPC Matrix.[6]

---

[3]   MSA § II.VV.

[4]   July 23 Order at 6.

[5]   *Id.*

[6]   *Id.*

In their latest attempt to obtain a different result, Movants provide no basis for reconsideration and their arguments are without merit.  First, Movants contend that the Court should disregard the LMPC definition and redefine it to mean *the exact opposite*, arguing that "[t]he phrase 'Later-Manifested Physical Condition,' as it is used in the MSA, does not mean 'any condition diagnosed after April 16, 2012.'"[7]  Second, Movants argue that the Court should consider extrinsic evidence, in particular statements by counsel during the MSA approval process.[8]  But these arguments are not new or otherwise inconsistent with the Court's Order or the language of the MSA.  Movants raised these same arguments in briefing prior to the Court's July 23 Order.[9]  In addition, any statements made during the approval process cannot be a basis for estoppel or waiver with respect to an issue that was never presented at that time.  Finally, Movants' accusations that the Court's July 23 Order is unfair to Class Members are simply exaggerated and erroneous.  The Court's Order will not cause Class Members to be "thrust into the abyss" of the Back-End Litigation Option ("BELO") or be "a denial of due process and equal protection."[10]  Under the MSA, Class Members with SPCs will be able to submit claims for compensation under the SPC Matrix.  Class Members with LMPCs may use the BELO process that, far from being unfair to Class Members, (i) is not restricted to particular conditions and payment limitations that apply to SPC claims; (ii) provides that certain liability issues need not be proved; and (iii) excludes statute of limitations and related timeliness defenses.

---

[7]  Class Counsel's Memorandum in Support of Motion for Reconsideration at 2, Aug. 20, 2014, Rec. Doc. 13303-1 ("Class Counsel Aug. 20 Mem.").

[8]  *E.g.*, *id.* at 4-5.

[9]  *See, e.g.*, Class Counsel's Memorandum in Response to the Court's Order of June 26, 2014 at 3-5, July 4, 2014, Rec. Doc. 13106 ("Class Counsel July 4 Mem.").

[10]  Memorandum in Support of Class Counsel's Motion for Reconsideration at 2, 16, Aug. 20, 2014, Rec. Doc. 13308 ("Nations Aug. 20 Mem.").

I.      **MOVANTS' ARGUMENTS EITHER WERE OR COULD HAVE BEEN RAISED PRIOR TO THE COURT'S JULY 23 ORDER AND DO NOT WARRANT RECONSIDERATION UNDER RULE 59(e).**

The Supreme Court has cautioned that a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."[11]   Rather, Rule 59(e) serves the "narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence," and it "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[12]   Under this stringent standard, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly."[13]

A comparison of Movants' current briefs with previous filings demonstrates that each of their principal arguments was already raised and considered by this Court.  BP rebutted all of them in its prior filings, and fully incorporates its responses herein.[14]

---

[11]   *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal quotation marks omitted); *see also* 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2810.1 (3d ed. 2014).

[12]   *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004) (internal quotation marks omitted).

[13]   *Id.* at 479.

[14]   *See* BP's Memorandum to Magistrate Judge Shushan, Apr. 14, 2014, Rec. Doc. 12862-2 ("BP Apr. 14 Mem."), BP's Memorandum to Magistrate Judge Shushan, Apr. 29, 2014, Rec. Doc. 12862-5 ("BP Apr. 29 Mem."), & BP's Memorandum Regarding the Consistent Treatment of All Physical Conditions First Diagnosed After April 16, 2012, July 14, 2014, Rec. Doc. 13135 ("BP July 14 Mem.").

| No. | Argument | Citations to Motions for Reconsideration | Citations to Prior Class Counsel and Downs Filings |
|---|---|---|---|
| 1. | LMPCs are conditions that first manifest after April 16, 2012, notwithstanding the plain meaning of the definition of LMPC. | *See* Class Counsel Aug. 20 Mem. at 2; *see also* Nations Aug. 20 Mem. at 7-9; Downs' Memorandum in Support of Motion for Reconsideration at 14-16, Aug. 25, 2014, Rec. Doc. 13318-1. | *See, e.g.*, Class Counsel July 4 Mem. at 2 n.6. |
| 2. | The SPC Matrix should be read without reference to the LMPC definition, which does not affect the requirements for SPC compensation. | *See* Nations Aug. 20 Mem. at 5-7. | *See* Class Counsel's Memorandum to Magistrate Judge Shushan at 1, Mar. 28, 2014, Rec. Doc. 12862-1 ("Class Counsel Mar. 28 Mem."); Class Counsel July 4 Mem. at 2-3. |
| 3. | The SPC Matrix has precedence over the text of the MSA in the event of a conflict between the two. | *See* Nations Aug. 20 Mem. at 5. | *See* Class Counsel July 4 Mem. at 3. |
| 4. | The parties did not intend LMPCs to include conditions that manifested before April 16, 2012, or for the BELO to be the sole method of compensation for chronic conditions first diagnosed after that date as purportedly represented by BP in pre- and post-settlement statements. | *See* Class Counsel Aug. 20 Mem. at 4; Nations Aug. 20 Mem. at 11-14. | *See, e.g.*, Downs' Memorandum to Magistrate Judge Shushan at 1-3, Apr. 22, 2014, Rec. Doc. 12862-3 ("Downs Apr. 22 Mem."); Class Counsel July 4 Mem. at 2. |
| 5. | Erroneous assertion that BP had acknowledged that one of the Class Representatives who fell into the post-April 16, 2012 diagnosis category would be eligible for compensation under the SPC Matrix. | *See* Class Counsel Aug. 20 Mem. at 3-4. | *See* Class Counsel Mar. 28 Mem. at 5. |

| No. | Argument | Citations to Motions for Reconsideration | Citations to Prior Class Counsel and Downs Filings |
|---|---|---|---|
| 6. | Class Members could not have received pre-April 16, 2012 diagnoses due to lack of health insurance or inability to know which tests were required for compensation. | *See* Class Counsel Aug. 20 Mem. at 4 n.4; Nations Aug. 20 Mem. at 9-11. | *See, e.g.*, Class Counsel Mar. 28 Mem. at 5; Downs Apr. 22 Mem. at 3-4. |
| 7. | Unless the Court reconsiders its July 23 Order, there will be potentially thousands of BELO claims on the docket that cannot be resolved without Court intervention. | *See* Class Counsel Aug. 20 Mem. at 7; Nations Aug. 20 Mem. at 14-16; Downs Aug. 25 Mem. at 13. | *See* Downs Apr. 22 Mem. at 7. |

All of these arguments were briefed before the July 23 Order, and Movants have done nothing more than "rehash[] evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[15]  For Movants to support their motion under Rule 59(e), they must cite case law or introduce evidence *unavailable* to them prior to the Court's July 23 Order.  This they have not done and cannot do.[16]  For this reason alone, the Court should deny their motion.

## II.      AS THIS COURT CORRECTLY CONCLUDED, THE MSA CLEARLY AND UNAMBIGUOUSLY DEFINES AN LMPC AS ANY CONDITION FIRST DIAGNOSED AFTER APRIL 16, 2012.

The Court's July 23 Order applies the plain and unambiguous language of the MSA. That plain language cannot be reconciled with Movants' interpretation.  All parties agree on the proper interpretive principles to apply:  an agreement must be read "as a whole," so as to give

---

[15]   *Templet*, 367 F.3d at 478-79.

[16]   Downs Law Group's motion for reconsideration raises arguments concerning judicial estoppel and waiver. These theories were not expressly argued by name in its prior submission, although the facts allegedly supporting these theories were presented and discussed.  *See* Downs Apr. 22 Mem. at 1-3.  Downs could have raised estoppel and waiver theories in its previous submission and failed to do so.  Thus, Rule 59(e) is not the proper vehicle for these arguments.  *Templet*, 367 F.3d at 478-79.  Moreover, as discussed in Part III, *infra*, these arguments are without merit.

effect to every provision, without rendering any one superfluous, ineffective, or in conflict with another provision.[17]  When an agreement's terms are clear and unambiguous, the plain meaning of the agreement controls, and the Court should not consider extrinsic evidence.[18]  The Court applied these bedrock principles of contract interpretation when it affirmed the Claims Administrator's policy statement:

> The MSA clearly defines any condition diagnosed after April 16, 2012 as a Later-Manifested Physical Condition. While in some cases a class member may have a condition which fits the definition of a Chronic Condition, if it was not diagnosed by April 16, 2012, it is, by definition, a LMPC. To hold otherwise would invalidate a clear and unambiguous term of the MSA.[19]

Movants fail to present any reason why the clear and unambiguous definition of LMPC should not be given its plain meaning.  As this Circuit has held, a contract "means just what it says, and no more."[20]  The MSA says (and means) precisely what the Court understood it to say (and mean).  The Court concluded that any condition diagnosed after April 16, 2012 is an LMPC; the MSA states that an LMPC "***shall mean*** a physical condition that is ***first diagnosed*** . . . after April 16, 2012."[21]  As the Court correctly held, that plain language applies to *any* condition first diagnosed after April 16, 2012, even if that condition "fits the definition of a Chronic Condition, if it was not diagnosed by" that date.[22]  Consistent with that conclusion,

---

[17]  *Becker v. Tidewater, Inc.*, 586 F.3d 358, 369 (5th Cir. 2009) (internal quotation marks omitted); *see also Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004); *Transco Exploration Co. v. Pac. Emp'rs Ins. Co.*, 869 F.2d 862, 864 n.3 (5th Cir. 1989); *Fontenot v. Mesa Petrol. Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986); *see also* Rec. Doc. 13308, at 4 (stating "[t]he entire agreement as a whole must be considered" and citing several of these cases); Rec. Doc. 13318-1, at 16 (same).

[18]  *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332-33 (5th Cir. 1981).

[19]  July 23 Order at 6.

[20]  *Robin v. Sun Oil Co.*, 548 F.2d 554, 558 (5th Cir. 1977); *see also Jacksonville Terminal Co. v. Fla. E. Coast Ry. Co.*, 363 F.2d 216, 220 (5th Cir. 1966) ("[T]he contract says what it means, means what it says, and . . . the law should give effect to it."); *Gerth Realty Experts v. Ward*, 57 F.2d 524, 525 (5th Cir. 1932) (finding a contract "plainly means what it plainly says").

[21]  MSA § II.VV (emphases added).

[22]  July 23 Order at 6.

Class Members with LMPCs—that is, with any condition first diagnosed after April 16, 2012—must seek compensation through the procedures agreed upon by the Parties and defined in the MSA, namely, through the BELO process or workers' compensation laws.[23] As the MSA expressly provides, a Class Member with an LMPC "**may not** seek compensation from any Released Party **in any other manner**."[24]

Movants' own words reveal how unmoored from the text their argument has become. Class Counsel's memorandum asserts that "[t]he phrase 'Later-Manifested Physical Condition,' as it is used in the MSA, does not mean 'any condition diagnosed after April 16, 20[12]."[25]  In other words, Class Counsel ask this Court to conclude that the term "LMPC" does not mean *exactly what the text of the MSA says it means*.  Yet Movants claim that this Court committed a manifest error of law by applying the plain meaning of this language—even though this clear definition was negotiated by the Parties, applied according to its plain terms by the Claims Administrator in its Policy Statement, and ultimately enforced in the Court's July 23 Order after extensive briefing.[26]

---

[23]    *See* MSA § VIII.

[24]    MSA § VIII.B(1) (emphases added).

[25]    Class Counsel Aug. 20 Mem. at 2.

[26]    Downs argues  that the Court should interpret the word "manifested" in the term "Later-Manifested Physical Condition" to add an additional requirement to the LMPC definition, so that an LMPC is a condition that both manifests and is diagnosed after April 16, 2012.  Downs Aug. 25 Mem. at 14-16.  This argument runs afoul of another basic interpretive principle:  when a contract specifically defines a term, the agreed-upon definition— not what a third party may think the term means—controls.  *Cf. Hackwell v. United States*, 491 F.3d 1229, 1240 (10th Cir. 2007) (when a statute creates a defined term, "we should look to the statutory definition of the term and begin with the ordinary meaning of that language rather than with the 'ordinary meaning' of the term that Congress thought it advisable to define" (internal quotation marks omitted)).  The Court properly followed this principle; in interpreting the defined term "Later-Manifested Physical Condition," the Court applied the ordinary meaning of the words the MSA used to define that term:  a "physical condition that is first diagnosed . . . after April 16, 2012."  MSA § II.VV.  Plainly, diagnosis date alone defines which conditions are LMPCs under the MSA.

The Court, in its July 23 Order, correctly noted that "[t]he provisions of the MSA, including its exhibits, must be read together to give meaning to all."[27]  Remarkably, Movants also object to the Court's application of this black letter law principle.  They argue that the different provisions of the MSA should be read in isolation, without regard to their relation to the other provisions of the MSA.  For example, Movant Nations argues that the definition of LMPC "has absolutely no application or relevance" to determining which claims should be processed under the SPC Matrix.[28]  This argument violates the principle that a contract must be read as a whole.  Movants' position would in effect fail to give effect to the definition of LMPC by carving out some conditions that manifest before April 16, 2012, and are diagnosed after that date.  Rather than giving effect to both SPC and LMPC compensation procedures, Movants would rewrite the MSA so that the SPC procedures always take precedence.  The Court's interpretation, in contrast, gives effect to both categories, thereby harmonizing the MSA's provisions.  Under the July 23 Order, no Class Member has been denied a remedy to seek compensation:  Class Members with chronic conditions that were not first diagnosed after April 16, 2012 and otherwise satisfy the proof requirements under the SPC Matrix will be compensated at the highest benefit level, while Class Members with conditions first diagnosed after April 16, 2012 remain eligible to seek compensation under the BELO.

---

[27]    July 23 Order at 6.

[28]    Nations Aug. 20 Mem. at 4; *see also* Downs Aug. 25 Mem. at 25 ("[T]he definition of LMPC shall have no impact on cliamants seeking compensation for a Specified Physical Condition.").  Movants made these same arguments in their briefing prior to the Court's July 23 Order.  *See* Class Counsel Mar. 28 Mem. at 1 (stating that the interpretation of the LMPC provisions were not "before the Claims Administrator or the Court," and that the Claims Administrator needed only to "apply the SPC terms and provisions to a Chronic SPC Claim"); Class Counsel July 4 Mem. at 2 ("It is . . . Class Counsel's position that [the LMPC provision regarding] election has absolutely nothing to do with Chronic SPCs, but arises only in the context of a Class Member seeking to assert BELO actions with respect to [LMPCs].").

III.  **THERE IS NO NEED TO RESORT TO EXTRINSIC EVIDENCE TO INTERPRET THE MSA'S PLAIN TERMS, BUT THAT EVIDENCE NONETHELESS CONFIRMS THE COURT'S INTERPRETATION.**

Movants reiterate their previous flawed argument that BP's prior statements or the Parties' negotiating history somehow alter the plain definition of "LMPC."  The Movants already raised these same arguments in great detail before the Court issued its July 23 Order, so this is not a valid basis for reconsideration under Rule 59(e).[29]  In any event, these arguments are without merit.

A.  **The Clear and Unambiguous Language of the MSA Controls.**

A court should not and cannot look beyond the four corners of an agreement for extrinsic evidence of the Parties' intent when the language is clear and unambiguous.[30]  The agreement's clear and unambiguous language is the best evidence of the Parties' intent.[31]  Movants spend much time arguing about intent, but they offer no evidence that can overcome the clear and unambiguous language of the MSA:  "Later-Manifested Physical Condition shall mean a physical condition that is first diagnosed in a Medical Benefits Settlement Class Member after April 16, 2012."[32]  There is no need to resort to extrinsic evidence to understand this plain language.[33]

If the Court were to consider extrinsic evidence, however, that evidence supports its July 23 Order.  In briefing prior to that Order, BP presented undisputed evidence that the definition of

---

[29]  *See* Downs Apr. 22 Mem. at 2-3; Class Counsel July 4 Mem. at 3-5.

[30]  *Corbitt*, 654 F.2d at 332-33.  The parol evidence rule also bars consideration of negotiation history when a contract is clear and unambiguous.  *See Brown v. Fin. Serv. Corp., Int'l*, 489 F.2d 144, 149 (5th Cir. 1974).

[31]  *See Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 822 (5th Cir. 2003).

[32]  MSA § II.VV.

[33]  Downs Law Group submitted a number of affidavits with their motion for reconsideration.  Affidavit of the Downs Law Group, Rec. Doc. 13318-2; Affidavit of R. James Amaro, Rec. Doc. 13318-3; Affidavit of Allen W. Lindsay, Jr., Rec. Doc. 13318-4; Affidavit of Frank J. D'Amico, Jr., Rec. Doc. 13318-5.  Notably, however, none of the affidavits submitted with any of the motions contains any evidence regarding the meaning of the plain text of the MSA.

LMPC was changed in March 2012, during the course of the parties' negotiations, in a manner that is consistent with the Court's July 23 ruling.  Early drafts of the MSA defined an LMPC as a condition that "first manifests" after the date of the filing of the medical class action complaint.[34] In the March 9, 2012 draft sent by the Plaintiffs' Steering Committee to BP, the phrase "first manifests" was changed to "is first diagnosed."[35]  Plainly, the words "is first diagnosed" do not carry the same meaning as "first manifests," and in March 2012, the Parties defined an LMPC based on when the condition "is first diagnosed."  Thus, the negotiation history is consistent with the Court's July 23 Order.  In contrast, Movants' position would require treating the March 2012 change in language as meaningless, in addition to ignoring the plain language of the final MSA.

Movants also cite without context to statements made by BP counsel during the MSA approval process.  Movants point to instances when BP counsel discussed how certain conditions—those that might first arise years after 2012—would be treated.  BP counsel's statements reflected, accurately, that such conditions would be treated as LMPCs.  But neither BP nor the PSC ever took the position that such later-arising conditions were the sole category of conditions that would fall within the definition of LMPC.[36]  Movants ignore the context of BP's statements.  The question being addressed was how the MSA dealt with conditions then unknown to the Parties entering the settlement—an issue relevant to settlement approval in light of *Amchem Products, Inc. v. Windsor*.[37]  Thus, it is not surprising that the Parties and their experts addressed in the approval process how the LMPC category would address such *Amchem* issues.

---

[34]   BP Apr. 14 Mem. at 11 and Ex. 2 (attached excerpts from March 9, 2012 draft of MSA).

[35]   *Id.*

[36]   BP already explained this flaw in Movants' logic the first time they brought up this argument, prior to entry of the Court's July 23 order.  *See* BP Apr. 29 Mem. at 6-7.

[37]   521 U.S. 591 (1997).

BP's statements did not, and did not purport to, limit the scope of the LMPC definition set forth in the MSA.  BP's statements clarified that the LMPC category covered all conditions diagnosed after April 16, 2012.  For example, BP's memorandum in support of final approval clearly defines the LMPC category:  "The Medical Settlement also provides a mediation/litigation process for . . . a Later-Manifested Physical Condition (*i.e.*, a condition diagnosed after the filing of the Medical Class Action Complaint)."[38]  In fact, BP consistently identified the diagnosis date as the date that determined whether a claim was an LMPC.[39]  Notably, Class Counsel did as well, in both joint and separate filings:

- "[T]he proposed Settlement (i) compensates qualifying class members for Specified Physical Conditions; (ii) establishes a Periodic Medical Consultation Program for qualifying class members that is to remain in place for 21 years; (iii) provides for a Back-End Litigation Option process that allows class members to engage in litigation or mediation of claims for Later-Manifested Physical Conditions ***diagnosed*** after the filing of the Medical Class Action Complaint."[40]

- "The Medical Settlement provides a mediation/litigation process for class members who seek compensation from BP in the future for a Later-Manifested Physical Condition (i.e., a condition ***diagnosed*** in the class member after the date on which the Medical Class Action Complaint was filed, but that the class member claims to be due to exposure prior to the Complaint's filing date) . . . . Class members ***diagnosed*** with a Later-Manifested Physical Condition may elect whether to seek relief for that condition pursuant to the BELO or workers' compensation law or the Longshore and Harbor Workers' Compensation Act."[41]

- "Class Members ***diagnosed*** with a Later-Manifested Physical Condition have the option to seek compensation for that condition through the Back-End Litigation Option or, as applicable, pursuant to workers' compensation law or the Longshore and Harbor Workers' Compensation Act."[42]

---

[38]  Rec. Doc. 7112-1, at 36.  The Medical Class Action Complaint was ultimately filed on April 16, 2012, *see* Rec. Doc. 6250, which explains why the final agreement's definition of LMPC covers all conditions first diagnosed after April 16, 2012—the date of the filing of the Medical Class Action Complaint.

[39]  *See* Rec. Doc. 12862-5 (collecting quotations from BP's preliminary and final approving filings).

[40]  Joint Memorandum in Support of Preliminary Approval, Rec. Doc. 6267-1, at 13 (emphasis added).

[41]  Plaintiffs' Memorandum in Support of Final Approval, Rec. Doc. 7116, at 9 (emphases added).

[42]  Joint Proposed Findings of Fact and Conclusions of Law in Support of Final Approval, Rec. Doc. 7946, ¶ 119 (emphasis added).

In sum, neither the law nor the record support Movants' erroneous assertion—contrary to the plain language of the MSA—that LMPCs should be defined by the date of manifestation rather than by the date of diagnosis.  Even if the Court were to consider extrinsic evidence, there would be no reason to reconsider its July 23 Order.

### B.      BP Is Not Judicially Estopped from Maintaining Its Position.

Downs argues that BP is judicially estopped from maintaining its current position due to purported prior inconsistent statements.  Downs' estoppel argument is based on the same facts that Downs and Class Counsel previously briefed at length.  Because Downs could have raised this argument prior to the Court's July 23 Order, it cannot justify Rule 59(e) relief.[43]  Downs' renaming of its arguments as "estoppel" does not present a valid ground for reconsideration.

For judicial estoppel to apply, a party must intentionally take one position at one stage of litigation, succeed in maintaining that position, and later take a contrary position at a different stage of the litigation.[44]  The whole point of judicial estoppel, as Downs acknowledges, is to prevent a deliberate change in positions intended to manipulate the judicial process.[45]  Thus, judicial estoppel cannot apply when:  (1) the Court did not adopt any particular position on the issue; (2) when the party's prior representations are not "plainly inconsistent" with its current position; and (3) when the party acted "inadvertently," rather than intentionally.[46]  Based on all three of these principles, judicial estoppel cannot apply.

First, prior to its July 23 Order, the Court had never adopted any interpretation of the LMPC definition to resolve the particular issue addressed in that Order, namely, whether a claim

---

[43]   *Templet*, 367 F.3d at 478-79.

[44]   *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

[45]   *Id.* at 749-50.

[46]   *In re Oparaji*, 698 F.3d 231, 235 (5th Cir. 2012).

first diagnosed after April 16, 2012 is an LMPC, as the MSA definition indicates, even if it could also arguably be submitted for SPC compensation.  This specific issue was not raised by the Parties or by the Court during the approval process.  Thus, it is incorrect to suggest that the Court previously took any position on this issue.

*New Hampshire v. Maine*, which is cited by Downs, is a very different case.[47]  In *New Hampshire*, the states disputed the meaning of a term—"Middle of the River"—that was the specific subject of earlier litigation.  "[I]nterpretation of those words was 'necessary' to" resolving the earlier dispute.[48]  New Hampshire's position in subsequent litigation was "clearly inconsistent" with the position it had taken in the prior case, and New Hampshire had prevailed based on that position in the earlier litigation.[49]  In this case, in contrast, it is incorrect to suggest that the Court previously took any position on this issue prior to its July 23 Order.  Neither Party briefed the issue of whether the language of the LMPC definition somehow, contrary to its express terms, excluded certain conditions that were first diagnosed after April 16, 2012.

Second, BP's position is not "plainly inconsistent" with any of its prior statements.[50]  As explained in more detail above, BP's prior statements are consistent with its current position.  There can be no "plain" inconsistency when BP, in multiple filings, stated that LMPCs were "condition[s] ***diagnosed*** after the filing of the Medical Class Action Complaint."[51]

Finally, even assuming *arguendo* that there was any inconsistency in the Parties' statements, the inconsistency could not have been intentional.  If the Court finds imprecision in the record in the Parties' statements, the context explains why.  During the approval process,

---

[47] 532 U.S. 742 (2001).

[48] *Id.* at 751.

[49] *Id.* at 751-52.

[50] *In re Oparaji*, 698 F.3d at 235.

[51] *E.g.*, Rec. Doc. 7112-1, at 36 (emphasis added).

neither the Parties nor the Court raised the hypothetical of a Class Member seeking SPC compensation for a condition first diagnosed after April 16, 2012, and so none of the Parties' statements were framed to answer that issue.  It would be unfair to estop BP from presenting its considered position on this issue now that it has been raised by Class Counsel for the first time.  Notably, Class Counsel made multiple statements from the approval process consistent with BP's position, such that the case for applying judicial estoppel to BP would apply equally, if not more, to Class Counsel.[52]

Finally, Downs tries to fault BP for not "curing" any purported misstatements.  Downs' position makes sense only when one applies perfect hindsight.  BP did not know during the approval process that Class Counsel would later seek to erase the word "diagnosed" from the LMPC definition to allow "tens of thousands" of Class Members to seek SPC compensation for chronic conditions that ostensibly manifested years ago and would first be diagnosed in 2014.[53] It is inaccurate and unreasonable to assert that BP made any "misstatements" concerning an issue not yet raised or that BP should be estopped because it (like Class Counsel) had not expressed its views on that issue years earlier.

### C. BP Did Not Waive Any Right Under the MSA During the Approval Process.

In a variation on its estoppel argument, Downs argues that BP's prior statements waived or modified the LMPC definition.  This argument, too, fails for a host of reasons.  Again, this argument is based on the MSA approval proceedings, which were the subject of extensive briefing prior to the July 23 Order and do not provide grounds to reconsider that Order.  And BP did not waive or modify the LMPC definition because, as discussed extensively above, BP described the LMPC definition accurately in its prior statements.

---

[52]  *See supra* at 12 & notes 40-42.

[53]  Downs Aug. 25 Mem. at 2.

Nor does the MSA allow for a waiver of its terms based on pre-approval statements.  The MSA specifically provides that its provisions "shall not be subject to any change, modification, amendment, or addition without the ***express written consent*** of Medical Benefits Class Counsel and BP's Counsel, on behalf of all Parties."[54]  There is no writing in which BP waived or agreed to modify the definition of LMPC.  Nor could there possibly be such an express writing by virtue of any statement made before the MSA became effective.

Moreover, there is no basis to suggest that BP knowingly or intentionally waived or modified any provision of the MSA.  A thorough review of the approval process record reveals that neither the Parties nor the Court discussed the LMPC definition in the context of a request for a waiver or modification.  Even Class Counsel—BP's counterparty in negotiating the MSA—have not argued that the Parties were renegotiating the MSA while simultaneously seeking its final approval.  Certainly, the Parties filed nothing on the record that purported to be a waiver or modification, which means there is no "express written consent" as required by the MSA.

## IV.  ENFORCING THE PLAIN LANGUAGE OF THE MSA WILL NOT CAUSE INJUSTICE TO CLASS MEMBERS.

Movants threaten a parade of horribles if the MSA was implemented according to its plain terms.  As with its other arguments, Movants already raised these points in briefing prior to the Court's July 23 Order;[55] these are not new evidence or legal issues that could warrant relief under Rule 59(e).  Movants' arguments are also wholly unpersuasive.

---

[54]   MSA § XXX.C (emphasis added).  Moreover, as a general principle, "to be effective, waiver . . . must be knowing and voluntary."  *Stanley Educ. Methods, Inc. v. Becker C.P.A. Review Course, Inc.*, 536 F.2d 86, 91 (5th Cir. 1976).  Thus, waiver of a contractual right ordinarily is defined as "an intentional surrender or relinquishment of a known and existing right."  *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 212-13 (5th Cir. 2009) (internal quotation marks omitted).

[55]   *Compare* Class Counsel Mar. 28 Mem. at 5; Downs Apr. 22 Mem. at 3-4, *with* Class Counsel Aug. 20 Mem. at 4 n.4; Nations Aug. 20 Mem. at 9-10.

Movants assert in various ways, and with varying degrees of exaggeration, that very few Class Members will receive Chronic SPC compensation.[56]  But the notions that almost no Class Members can satisfy the SPC Matrix's requirements or that no Class Members could have received a diagnosis before April 16, 2012 defy medical science.  The conditions described in the SPC Matrix—such as sequela from a direct chemical splash to the eyes or reactive airways dysfunction syndrome ("RADS")—are painful, and it is implausible that a Class Member with such a condition would not see a doctor for years after those conditions manifested.  As Dr. Jessica Herzstein has explained, "it is highly implausible that any significant number of people who legitimately have Chronic SPCs could function and continue to perform activities of daily living without medical treatment."[57]  For instance, "[b]oth RADS and sequela . . . occur as a result of acute exposure to a chemical irritant and result in the rapid onset of severe symptoms, for which immediate first aid and/or medical treatment is required."[58]  Class Members with legitimate chronic conditions compensable under the SPC Matrix would not be able to wait years to seek medical attention.

Movants similarly ignore medical science when they insist that Class Members would not have been able to know which medical tests were required, and therefore could not have obtained those tests, until after April 16, 2012.[59]  As Dr. Herzstein explained, the tests required for Chronic SPCs "are consistent with the standard diagnostic testing of the symptoms associated with these conditions," and, for example, "physicians would be expected to order the tests for the

---

[56]  *See, e.g.*, Class Counsel Aug. 20 Mem. at 7; Nations Aug. 20 Mem. at 15; Downs Aug. 25 Mem. at 2.

[57]  Declaration of Dr. Jessica Herzstein ¶ 4, Rec. Doc. 12862-2.

[58]  *Id.* ¶ 4(a).

[59]  *See, e.g.*, Class Counsel Aug. 20 Mem. at 3 ("[T]he fact that such specific tests . . . would be required . . . could not have been known by class members or their counsel prior to April 16, 2012."); Nations Aug. 20 Mem. at 9-10 (asserting it is "almost impossible" to have received a "diagnosis and supporting medical testing" before April 16, 2012).

chronic respiratory SPCs as part of a diagnostic assessment for individuals exhibiting symptoms of these conditions."[60]  In other words, the SPC Matrix was designed to reflect medical tests that physicians would have actually performed on Class Members who presented with the covered conditions.  Physicians would not have needed the SPC Matrix to guide their diagnoses or treatment.  In fact, the opposite is true—Class Members with these conditions would have obtained diagnoses by virtue of having sought treatment of the conditions.

The Court should view with profound suspicion Movants' assertions that "tens of thousands" of Class Members will have received post-April 16, 2012 diagnoses for conditions that, under the SPC Matrix, were required to have manifested within 24-72 hours of exposure.[61] Quite simply, Movants' position—that such Class Members should be able to seek SPC compensation based on these diagnoses obtained years after the fact—invites fraud.  It would allow counsel to direct Class Members to physicians who are prepared to issue diagnoses today for physical conditions that are claimed to have occurred *two to four years* ago.  Then, using these questionable diagnoses, the Class Members would seek compensation under the SPC Matrix.  That Movants have sought to ignore the plain language of the MSA that provides the BELO process to resolve these claims suggests their concern that the merits of such claims would not withstand judicial scrutiny.

Preventing such fraudulent diagnoses is a legitimate concern.  As BP has previously noted, advertisements by law firms seeking to represent Class Members make claims such as, "The chance of you having a claim if you [were] a clean-up worker is pretty big," and that law

---

[60]   Herzstein Decl. ¶ 6.

[61]   *See, e.g.*, Nations Aug. 20 Mem. at 1 (asserting that 8,500 of its clients will be affected); Downs Affidavit § II (asserting that they will now submit less than 10 out of 2,500 clients' claims as Chronic SPCs).

firms have "doctors on staff" to assist in the claims process.[62]  Some past advertisements were even more brazen, promising, "Once BP confirms they have knowledge as to your work on the clean up, we will contact you, to obtain more details as to your injuries and medical history. . . . [Y]ou will be scheduled to see a doctor . . . . [who] will examine you and review your medical history before writing the required medical report to be submitted with your claim documents."[63] Clearly, Movants' position would support efforts to obtain diagnoses today that would be used to submit SPC claims.  Such claims are inherently suspect.[64]

Finally, Movants wrongly suggest that the Court should rule in favor of Class Counsel's interpretation because otherwise it will confront thousands of LMPC claims.  For Class Members with legitimate LMPC claims, BP can choose to mediate and resolve those claims without using the Court's resources at all.[65]  Movants' scare tactic rests on conjecture and speculation and, if these claims were generated from lawyer-driven screening programs, it is Movants who seek to overwhelm the Court and BP in an attempt to force abandonment of the BELO and its process to pay legitimate claims.  This type of threat should not be condoned, nor does it constitute the type of extraordinary showing needed to support a motion for reconsideration.

---

[62]  "Who Should File A BP Medical Claim?", BP-Claim.com, http://bp-claim.com/who-can-file-a-bp-medical-claim (last visited Sept. 8, 2014).

[63]  "Are you going to send me to a doctor?", Nations Law Firm (Mar. 16, 2014), http://mybpmedicalclaim.com/blog/?p=58. When BP counsel attempted to locate this page again on September 8, 2014, it had been removed from the website.

[64]  Dr. Herzstein stated she "would be highly skeptical of SPC claims made by large numbers of individuals who claim Chronic conditions but had not sought medical care for years after claimed onset," Herzstein Decl. ¶ 5, and in particular that she was "highly skeptical of the medical legitimacy" of diagnoses by physicians with "an incentive . . . to limit improperly their 'diagnoses' to those conditions on the SPC Matrix," *id.* ¶ 7.  *Cf. In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 553 F. Supp. 2d 442, 476 (E.D. Pa. 2008) ("numerous attorneys, some with nefarious intentions, operated echocardiogram mills to develop a vast inventory of claimants seeking Matrix Benefits"); *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 636-40 (S.D. Tex. 2005) (criticizing plaintiffs' lawyers, doctors and screeners for creating claims, and noting that the methods used for diagnosis were "distressing and disgraceful" after identifying thousands of plaintiffs diagnosed by only twelve doctors, who were not their treating physicians (internal quotation marks omitted)).

[65]  *See* MSA § VIII.C.

V.   **THE COURT SHOULD NOT RECONSIDER ITS ORDER BASED ON HYPOTHETICAL AND UNRIPE ISSUES POSITED BY MOVANTS.**

Movants posit an unrelated and immaterial issue as part of their motion to reconsider in an attempt to divert this Court's attention away from the clear-cut definition of an LMPC. Movants suggest that BP will argue, in a hypothetical future BELO lawsuit, that the Settlement Release bars a claim when the claimant has already obtained SPC compensation.  Because the Court's July 23 Order did not address this question, and the Parties had not previously raised or briefed it before the July 23 Order issued, it is not properly the subject of a motion for reconsideration.

Movants' suggestion that some Class Members may be foreclosed from seeking compensation is unfounded.  The Court's July 23 Order does not preclude any Class Member with an SPC or an LMPC from seeking compensation.  The Order specifies which of the two procedures—the SPC Matrix or BELO—the Class Member must use to obtain compensation for a particular condition, nothing more.  Individual claims, of course, present fact questions that can only be decided on a case-by-case basis.  There is no reason that the Court should seek to address them in the abstract and in the absence of a live controversy.  Nor is there any reason that the posited hypotheticals should cause the Court to reconsider its proper reading of the plain language of the MSA.

## CONCLUSION

This Court properly applied the plain text of the MSA.  Therefore, the Court should deny the motions for reconsideration.

September 12, 2014                      Respectfully submitted,


                                          _/s/ Kevin M. Hodges_____
Mark Holstein                           Kevin M. Hodges
J. Tracey Rogers                        Kevin M. Downey
BP AMERICA INC.                         WILLIAMS & CONNOLLY LLP
501 Westlake Park Boulevard             725 Twelfth Street, N.W.
Houston, TX 77079                       Washington, DC 20005
Telephone: (281) 366-2000               Telephone: (202) 434-5000
Telefax: (312) 862-2200                 Telefax: (202) 434-5029


                                          _/s/ Don K. Haycraft_____
                                        S. Gene Fendler (Bar #05510)
                                        Don K. Haycraft (Bar #14361)
                                        R. Keith Jarrett (Bar #16984)
                                        LISKOW & LEWIS
                                        701 Poydras Street, Suite 5000
                                        New Orleans, LA 70139
                                        Telephone: (504) 581-7979
                                        Telefax: (504) 556-4108


**_ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC._**
**_AND BP AMERICA PRODUCTION COMPANY_**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of September, 2014.

                                             */s/ Don. K. Haycraft*
                                             Don K. Haycraft