## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY  THE OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE GULF | * | |
| OF MEXICO, ON APRIL 20, 2010 | * | SECTION J |
| | * | |
| This document relates to: | * | |
| | * | HONORABLE CARL J. BARBIER |
| No. 10-4536 | * | |
| | * | MAGISTRATE JUDGE SHUSHAN |
| | * | |
| | * | |

### BPXP'S MEMORANDUM REGARDING PENALTY PHASE TRIAL LENGTH

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
Matthew Regan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

*Attorneys for BP Exploration & Production Inc.*

## INTRODUCTION

During a telephone conference on September 4, 2014, Judge Shushan raised the possibility that Judge Barbier was planning for a two-week trial consisting of eight trial days, a week less than the three-week trial consisting of 90 hours of trial time previously discussed by the Court and parties.  Based on the government's assertions, variety of topics on which evidence is needed, and the number of fact and expert witnesses that appear to be required, BPXP believes that shortening the length of the trial to less than three weeks is premature at this time.  If further developments cause BPXP to believe that it can present its case in less than a three-week trial, BPXP will readily inform the court.  But based on BPXP's current evaluation of the necessary evidence, BPXP believes it cannot present the bare minimum elements of its case at the trial if defendants are given less than the 45 hours previously discussed by the Court.

The trial will require evidence on at least 5 of the 8 penalty factors that the Court must consider in assessing the Clean Water Act ("CWA") penalty.  To respond to the government's arguments for certain factors, BPXP has been required to submit reports from multiple experts who will testify at the trial.  For example, on the "seriousness" factor, the government apparently intends to present evidence concerning a broad range of environmental effects, including alleged potential future effects, as well as alleged human health, economic, and sociocultural impacts. BPXP, in turn, must present its own evidence on each of these categories, which, due to the different scientific disciplines involved, requires multiple expert witnesses with different qualifications.  BPXP attempted to negotiate with the government to limit the evidence needed for this factor, but the government has not agreed.  The other factors present a similar need for multiple expert and fact witnesses given the arguments that the government has made.

Moreover, the government is seeking a penalty of up to $18 billion, vastly greater than what has been awarded — or even sought — in any other CWA case.  Determining the amount

of such a penalty should be done on a proper record that allows BPXP to present evidence on each factor and respond to all evidence presented by the government.

Thus, BPXP respectfully requests that the Court maintain its original plan of a three-week trial providing 90 hours of trial time, with 45 of those hours being allotted to the defendants. BPXP will continue to scrutinize its trial plan to determine if it can present its case in less time and will be efficient during the trial to finish more quickly if feasible.

## BACKGROUND

The Court has now conducted two trials related to the *Deepwater Horizon* incident.  The Phase One trial concerned the events leading up to the April 20, 2010 incident, and consisted of 29 days of trial time.  Rec. Doc. 9500.  The Phase Two trial involved source control efforts and quantification, and consisted of 12 trial days.  Rec. Doc. 11727.

After the Phase Two trial concluded, the government and defendants BPXP and Anadarko continued discovery and planning for the Penalty Phase trial.  During February 2014, the parties filed various briefs and pleadings related to discovery and recommendations for the Penalty Phase trial.  The Court entered an order relating to Penalty Phase discovery, requiring various briefing before a status conference on March 21.  Rec. Doc. 12392.  One of the pleadings filed during this period was the government's Rule 26(f) Report.  Rec. Doc. 12351.  In this Report, the government requested a three-week trial, noting that this was less trial time than for either Phase One or Two.  *Id.* at 1, 13.

At the March 21 conference, having received the views of the government on the length of the Penalty Phase trial, the Court asked how much time BPXP would need.  BPXP's counsel noted that a three-week trial — with 45 hours for each side — would be difficult but potentially achievable.  BPXP explained that "if our time allocation is 45 hours, I'm not saying that we can't work with that" but that 45 hours felt a "little tight."  3-21-14 Hr'g Tr. at 86-87.  BPXP thought

2

that 45 hours could work as a default and "if we got a little closer and we thought we needed a little more, we could come back to you." *Id.* at 87.

After discussion about the date for trial, the Court told the parties to plan for a three-week trial consisting of four trial days per week, with BPXP reserving the right to seek additional time or to advise the Court if less time was required to present its case. *Id.* at 92.

## ARGUMENT

The CWA requires the Court to consider eight factors in setting the amount of the penalty. "In determining the amount of a civil penalty … the court … **shall consider** the seriousness of the violation or violations, the economic benefit to the violator, if any, resulting from the violation, the degree of culpability involved, any other penalty for the same incident, any history of prior violations, the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge, the economic impact of the penalty on the violator, and any other matters as justice may require." 33 U.S.C. § 1321(b)(8) (emphasis added). "Shall" is mandatory language, meaning that the Court must consider each of the eight factors. Indeed, the Fifth Circuit in the *CITGO* case reversed the trial court's penalty determination for not adequately considering one of the factors. *United States ex rel. Adm'r of EPA v. CITGO Petroleum Corp.*, 723 F.3d 547, 554 (5th Cir. 2013).

In light of the CWA's statutory requirements, BPXP will need, and is entitled, to put forth sufficient evidence on each of these eight factors. Three of the factors will not require substantial time as the parties (1) agree that the economic benefit to the violator is not significant; (2) agree that evidence regarding the degree of culpability is already in the record from the first two Phases; and (3) are finalizing stipulations regarding other penalties for the same incident. That still leaves five factors on which BPXP needs to submit evidence.

This need is heightened by the government's argument that BPXP bears the burden of

proof on at least some of these factors.   Rec. Doc. 12479.   BPXP disagrees with the government's position, Rec. Doc. 12533, but the Court has not yet ruled on the burden of proof. The possibility that BPXP might bear the burden on certain factors only emphasizes that BPXP must be given adequate time to present its evidence for each factor.

In the following subsections we discuss the evidence that BPXP needs to present at trial on these five factors based on the scope of the factor and the arguments being made by the government.   A two-week trial where defendants are given only four trial days to present their case is not enough, particularly in a case where the government seeks up to $18 billion in penalties.[1]

### A.      The Seriousness of the Violation.

In support of its case, the government makes assertions regarding the seriousness of the impact to the environment, to human health and mental health, and also to the economy.   BPXP must respond to each of these assertions.

***Environmental Impact:***   One of the factors to be considered in determining the "seriousness" of the violation is the environmental impact, including recovery, resulting from the spill.   Despite efforts by BPXP to streamline the issues and evidence pertaining to seriousness, this factor presents a significant disagreement between the government and BPXP for the trial proceedings.

As is apparent from its expert reports, the government intends to proffer experts to testify about any and all environmental issues.   The government intends to present evidence regarding harms alleged to have already occurred as well as those that might potentially occur in the future

---

[1]  Furthermore, the trial time for defendants will be divided between BPXP and Anadarko.  Anadarko will require some of the defendants' time, which will not be insignificant as BPXP understands that Anadarko intends to present two experts.  As stated in Anadarko's letter to the Court, there is no agreement between the defendants as to the division of time.

to aquatic organisms, fisheries, marine mammals, birds, and sea turtles.  The government has alleged a wide variety of actual and potential environmental impacts, including alleged offshore and nearshore impacts, as well as impacts to beach, marsh and shoreline habitats.  The government's case will involve complicated issues of toxicity, the movement and biodegradation of oil in the water, and predicting alleged future ecological impacts.

To adequately respond to these allegations, BPXP must be afforded the opportunity to present relevant factual evidence and expert testimony.  BPXP will present evidence rebutting the alleged impact as well as evidence showing the recovery of many of these resources.  The breadth and complexity of the issues that the government intends to present in support of this factor requires a response and defense by various experts because the expertise required extends beyond a single field or discipline.

For example, in light of the government's allegations regarding the extent of actual and potential harm to the environment, BPXP will be required to bring to trial a marine biologist and ecologist focusing primarily on coastal ecosystems in the Gulf of Mexico, who has extensive experience studying the effects of oil spills and who has reviewed extensive data related to fish and wildlife populations in the Gulf before and after the spill.  Similarly, the government has put at issue the actual and potential toxicity and degradation of oil and dispersants, relying heavily on novel laboratory methods.  As such, BPXP must respond with an expert in toxicology who has reviewed voluminous data from toxicity tests and water and sediment samples collected or undertaken in connection with the spill.

*Human Health and Mental Health:*  With respect to assertions by the government regarding the seriousness of the impact to human health, BPXP attempted to streamline the evidence needed at trial by presenting information regarding publicly available sampling and

monitoring data to the government in proposed stipulations.  But the government has refused to enter into stipulations relating to the data, even regarding data collected and analyzed by the United States' own agencies.  Instead, the government has indicated that it intends to present a case at trial on impact to human health.

To respond, BPXP has retained and disclosed an medical doctor-toxicologist who has reviewed virtually all of the exposure data and analysis, permitting him to rebut opinions regarding both acute and long-term health effects.  And to respond to the government's mental health assertions and opinions of its expert, BPXP has retained and disclosed a mental health expert, who specializes in the impact of "disasters" on communities and the significant resiliency shown by communities after such events.

*Economic Impact:*  In response to the government's assertion about "seriousness" of the economic impact of the spill, BPXP is also planning to present evidence from an economist about the extent of that impact and the economic recovery of the Gulf states resulting from various factors, including BPXP's efforts to mitigate the impact.

Adequately responding to the government's allegations on this factor alone requires BPXP to present expert testimony from an ecologist, a toxicologist, a marine biologist, an MD, a clinical psychologist, and an economist (6 expert witnesses) at trial and likely one or more fact witnesses.

### B.   The Nature, Extent, and Degree of Success of Any Efforts of the Violator to Minimize or Mitigate the Effects of the Discharge.

The CWA requires consideration of "the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge" in assessing the penalty.  *CITGO*, 723 F.3d at 551.  In *CITGO*, the Fifth Circuit affirmed the trial court's holding that CITGO was entitled to a reduced CWA penalty based on the company's efforts to mitigate

the effects of the spill in that case.  *Id*. at 553. In so holding, the trial court considered evidence about the resources that CITGO brought to bear to respond to the spill — including the deployment of 1,500 response personnel — and the Company's "full force effort to minimize the damage from the spill," including through the use of booming, skimming, shoreline protection, and other countermeasures.  *United States v. CITGO Petroleum Corp.,* No. 08-00893, 2011 WL 10723934, at *7 (W.D. La. Sept. 29, 2011).  The Court concluded that CITGO's "well executed clean-up effort" effectively mitigated damage from the spill and resulted in strong environmental recovery. *Id.* at *8; *see also United States v. Egan Marine Corp.*, No. 08 C 3160, 2011 WL 8144393 at *7 (N.D. Ill. Oct. 13, 2011) (defendant's clean-up effort "cuts in favor" of reduced CWA penalty).  The Fifth Circuit expressly affirmed the *CITGO* court's conclusion that CITGO's mitigation efforts reduced the amount of the penalty.  723 F.3d at 547.

As in *CITGO*, the "mitigation" factor will likewise be a major focus of this trial.  BPXP expects to make a substantial presentation about its unprecedented efforts to respond to the *Deepwater Horizon* spill, which involved mobilizing more than 80,000 responders.  BPXP will present testimony from fact and expert witnesses regarding the critical personnel and resources provided to support the Unified Command-led spill response and the ultimate success of those measures in limiting environmental harm, including through skimming, booming, *in situ* burning, the use of dispersants, and shoreline protection and cleanup.  BPXP will also present testimony from witnesses describing the continued commitment to mitigate environmental harm from the spill and aid recovery outside of the Unified Command Response, such as through ground-breaking environmental restoration projects and research initiatives.  Finally, BPXP will present evidence of its efforts to minimize and prevent any human health and economic impacts of the spill on Gulf communities.  For example, BPXP intends to present evidence, through fact

and expert witnesses, that it spent nearly $25.7 billion in 2010-14, including on response efforts, payment of claims, and other mitigation efforts such as tourism and seafood promotion grants to Gulf Coast states, that helped prevent or mitigate potential adverse economic effects of the spill. As the *CITGO* rulings show, presenting such evidence is crucial to determining the amount of the penalty, and forcing BPXP to truncate its evidence would severely prejudice BPXP.

While BPXP's trial plans are developing, BPXP currently believes it will need at least 2 experts, a former member of the USCG with expertise in spill response, and an economist, as well as 2 to 3 additional fact witnesses to testify regarding BPXP's extensive mitigation efforts.

### C.      The Economic Impact of the Penalty on the Violator

This factor involves the "economic impact of the penalty **on the violator.**"  33 U.S.C. § 1321(b)(8) (emphasis added).  BPXP is the sole BP entity that is an alleged "violator" in the CWA action and the sole BP entity potentially liable to pay any CWA judgment.  Therefore, as the statute makes clear, the focus of the trial evidence on this factor should be on BPXP as the alleged violator.  The government has nonetheless taken broad discovery regarding the finances of both BPXP and the BP Group and has retained an expert who has submitted reports focusing on BP entities other than BPXP.  The government's expert has opined on the ability of the BP Group—as well as that of BPXP—to fund or finance an up to $18 billion penalty in 2015, asserting that both BPXP and the BP Group could do so without a long-term negative economic impact to their operations.

The government has also injected the issue of BPXP's corporate governance into this factor by putting forth an expert who has suggested that BPXP is not an active corporate entity operating leases in the Gulf of Mexico and that BP plc's "organizational structure" managed and controlled the BP Group's operations in the Gulf of Mexico and the response to the blowout.

BPXP must be allowed to respond to the government's assertions regarding BP plc

finances and BPXP corporate governance.  BPXP intends to present evidence through expert, and possibly fact, witnesses to respond to these incorrect assertions and analyses.  To that end, BPXP has retained an expert who will testify that BPXP, in consequence of the massive financial impact of the incident to date, retains limited ability to pay a CWA penalty and no ability to compel additional funds from affiliates or third parties.  BPXP also intends to present testimony at trial to rebut the government's assertions regarding the corporate governance of BPXP and its relationship to the BP Group.

Responding to the government's allegations regarding this factor requires BPXP to present 2 expert witnesses along with possible additional fact witnesses.

### D.    Prior Violations.

The government seeks to introduce evidence relating to four prior incidents at BP facilities (none of which are BPXP facilities) dating back to the mid-1990s:  Endicott Island, Alaska (1995); Grangemouth, Scotland (2000); Texas City, Texas (2005); and Prudhoe Bay, Alaska (2006).  Notably, at trial the government intends to go far beyond the mere fact that these incidents occurred and resulted in some type of violation.  In one of the government's expert reports, Rear Admiral Walter Cantrell (U.S. Navy, retired) opines that each of the prior accidents "stems from common systemic process safety and corporate leadership failures" and that "BP leadership did not learn key lessons necessary for responsible, safe and reliable operations, failed to create a safety culture, and failed to implement an effective process safety system."  8-15-2014 Expert Report of W. Cantrell on Behalf of the United States ("Cantrell Report") at 1, 4.

BPXP intends to renew its motion to exclude this evidence.  If the government is permitted to introduce this evidence over BPXP's objection, however, BPXP will be compelled to present substantial evidence to refute the government's sweeping assertions relating to events that occurred over a 15-year period.  For example, BPXP will need to introduce evidence relating

to the circumstances of each incident, BPXP's efforts to learn and share lessons from each incident, and the numerous initiatives, practices, and policies that the Cantrell Report fails to acknowledge but which enhanced BPXP's safety culture and process safety management system in the years before the *Deepwater Horizon* accident.

BPXP will introduce this evidence primarily through expert witnesses rebutting the government's assertions about BPXP's safety culture and process safety management and possibly through a fact witness responsible for monitoring BP's implementation of the Baker Panel recommendations.

### E.     Other Matters As Justice May Require

The CWA also provides for the consideration of other evidence that justice may require. BPXP intends to present evidence under this factor. For example, as recognized in *CITGO*, considering the violator's positive impact on the local economy and community is appropriate. *CITGO*, 723 F.3d at 553-54; *CITGO*, 2011 WL 10723934, at *5. BPXP intends to present fact and expert testimony about BPXP's significant and beneficial role in the Gulf economy. BPXP also intends to present evidence regarding the various technological advances that resulted from the spill and the actions BPXP has taken to share its learnings with various governments, including the United States, and the industry. Again, this evidence is crucial to BPXP's case and testimony and time is required to adequately present it.

*    *    *

Therefore, in total BPXP may need up to 12 expert witnesses and several fact witnesses to present its case and respond to the various allegations made by the government. Adequate presentation of the evidence is especially crucial because of the unprecedented $18 billion in penalties the government is pursuing against BPXP. Presenting these witnesses cannot be done in four days. Nor can 30 total hours accommodate this presentation plus cross examination of

the US witnesses, plus any opening statements by the defendants.[2]

Thus, BPXP respectfully requests that the Court maintain a three-week trial for the Penalty Phase.  In the event that BPXP determines that less time is needed, BPXP will promptly inform the Court.


Date: September 17, 2014                                     Respectfully submitted,


                                                            /s/ Don K. Haycraft
                                                            Don K. Haycraft (Bar #14361)
                                                            R. Keith Jarrett (Bar #16984)
                                                            Liskow & Lewis
                                                            701 Poydras Street, Suite 5000
                                                            New Orleans, Louisiana 70139-5099
                                                            Telephone: (504) 581-7979
                                                            Facsimile: (504) 556-4108
                                                            and

                                                            Richard C. Godfrey, P.C.
                                                            J. Andrew Langan, P.C.
                                                            Hariklia Karis, P.C
                                                            Matthew Regan, P.C.
                                                            Kirkland & Ellis LLP
                                                            300 North LaSalle Street
                                                            Chicago, IL 60654
                                                            Telephone: (312) 862-2000
                                                            Facsimile: (312) 862-2200

                                                            Robert C. "Mike" Brock
                                                            Covington & Burling LLP
                                                            1201 Pennsylvania Avenue, NW
                                                            Washington, DC 20004-2401

---

[2]   Courts have recognized that parties are entitled to a "fair and adequate opportunity to develop their cases." *Transamerica Computer v. IBM*, 573 F.2d 646, 653 (9th Cir. 1978).  Due process concerns arise when "the time [afforded] is so short that it deprives litigants of a meaningful opportunity to be heard."  *Miller v. French*, 530 U.S. 327, 350 (2000); *see also In re Wheeler Tech., Inc.*, 139 B.R. 235, 241 (9th Cir. B.A.P. 1992); *ntel Corp. v. Commonwealth Scientific & Indus. Research Org.*, Civil Nos. 6:06-cv-551, 6:06-cv-549, 6:06-cv-550, 6:07-cv-204, 6:06-cv-324, 2008 WL 5378037, at *2-3 (E.D. Tex. Dec. 23, 2008); *U.S. Fid. & Guar. Co. v. Patriot's Point Dev. Auth.*, 772 F. Supp. 1565, 1574 (D.S.C. 1991); *Julia v. Julia*, No. 4D13-3359, 2014 WL 4177223, at *3 (Fla. App. Ct. Aug. 25, 2014).  BPXP respectfully believes that limiting the trial to two weeks would raise such due process concerns.

Telephone: (202) 662-6000
Facsimile: (202) 662-6291

***Attorneys for BP Exploration & Production Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of September, 2014.


/s/ Don K. Haycraft
Don K. Haycraft

1