# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL 2179 SECTION: "J" |
| This Document Applies to: | JUDGE BARBIER |
| No. 12-970, Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al. | MAG. JUDGE SHUSHAN |

**GLEN J. LERNER'S MEMORANDUM CONCERNING PROCEDURES FOR RESOLUTION OF SHOW CAUSE ORDER**

The Court has set a status conference in this matter for September 23, 2014, and has advised that it intends at the conference to address procedural issues surrounding the Court's September 6, 2013 Order. Rec. Doc. 11288 (the "Show Cause Order" or the "Order"). In anticipation of that hearing, counsel for Glen J. Lerner ("Lerner") file this memorandum to identify the procedural issues that should be addressed at the conference and to set forth their view of the process the Court should follow in resolving this matter.

**BACKGROUND AND STATUS OF THE PLEADINGS**

On July 2, 2013, the Court appointed Louis J. Freeh as Special Master to conduct an external investigation into the events that led to the resignation of Lionel Sutton ("Sutton"), a staff attorney employed by the Claims Administrator's Office ("CAO"). Rec. Doc. 10564. On September 6, 2013, the Special Master issued his report. Rec. Doc. 11287 (the "Report"). On the same day, this Court issued the Show Cause Order, requiring Lerner and others (the "Show Cause Parties") to demonstrate why the Court should not adopt the Special Master's recommendation that, among other things, Lerner and his law firm, Andry Lerner, LLC ("Andry Lerner"), be disqualified from representing claimants before the DHECC and barred from

4626524.6

collecting any attorney's fees from any claimant. Order at 2-3. Although the Order granted the parties 14 days in which to respond, Lerner spent the ensuing months attempting to gain much needed discovery from the Special Master.[1] The Court has yet to rule on one of Lerner's requests for complete disclosure from the Special Master. Rec. Doc. 12082.

Lerner responded to the Order in December 2013 and January 2014. Rec. Doc. 11988 (the "Initial Response"), 12169 (the "Supplemental Response") (collectively "Responses"). The Responses demonstrated that the Report was long on accusations but short on law and facts. Primarily, Lerner demonstrated that the "unclean hands" doctrine was inapplicable as a matter of law and that, even if it applied, he did not engage in any unconscionable or morally reprehensible acts that would constitute "unclean hands." Initial Response at 4-24. On February 21, 2014, the Special Master filed his Reply to the Responses, Objections and Motions filed by the Show Cause Parties. Rec. Doc. 12393 (the "Reply").

Andry Lerner, Lerner and Jon Andry ("Andry") have sought relief from court orders freezing attorney's fees earned by Andry Lerner. Rec. Docs. 13212, 13262. The Court has denied that relief, Rec. Doc. 13256, but a motion to use some of the escrowed fees to pay a judgment against the firm for return of fees earned on the Casey Thonn claim is pending. Rec. Doc. 13317.

## RECOMMENDED PROCEDURE

Undersigned counsel recommend as a first order of business that the Court hold oral argument on and decide legal issues which are dispositive of the Show Cause Order. The Court can and should vacate the Order as to Lerner based on the legal reasons set forth in his Responses. Rec. Docs. 11988, 12169. No evidentiary hearing is needed to resolve them. As we

---

[1] Rec. Docs. 11622, 11639, 11642, 11643, 11694, 11721 (Order), 11729 (Order), 11773, 11785, 11794 (Order), 11817, 11910 (Order), 12020 (Protective Order), 12026 (Order), 12052, 12082, 12083, 12118, 12140 (Order).

4626524.6

explain below, addressing the legal issues first should dispose of the entire matter as to Lerner. It will certainly enable the Court to reduce the number of Show Cause Parties and narrow the issues.

If the Court determines not to dismiss the Order as to Lerner on the legal issues alone, the Court must then conduct an evidentiary hearing at which Lerner receives the full due process rights outlined in this memorandum and Lerner's Responses.

We explain these points more fully below and discuss briefly other legal issues before the Court.

### A. The Court Should Vacate the Show Cause Order On Legal Grounds

In Lerner's Initial Response, he demonstrated that the Court should vacate the Order as to him on legal grounds. Initial Response at 3-8. *First*, the Court lacks authority to impose the recommended sanctions against Lerner, as he is neither a party nor a lawyer before the Court. *Second*, the Court lacks jurisdiction over Lerner, because he was not served with any formal process. *Third*, the legal ground for sanctions relied upon by the Special Master – the doctrine of "unclean hands" – is inapplicable as a matter of law.

Addressing these legal issues first, with the aid of oral argument, will enable the Court to determine if it needs to hold an evidentiary hearing, reduce the number of parties, and narrow the contested issues. By way of illustration, if the Court agrees that the unclean hands doctrine does not apply as a matter of law, *see Kansas City So. R. Co. v. Pilgrim's Pride Corp.*, No. 06-0003, 2010 WL 1293340, at *11 (W.D. La. Mar. 29, 2010) (stating that the "unclean hands" doctrine is an equitable doctrine which bars a *party* from seeking an *equitable* remedy against another because of the party's misconduct), then the Show Cause Order will have to be dismissed as to all Show Cause Parties.

3

Even if the doctrine does apply, its reach, at least as to Andry Lerner and Lerner, would be limited to the attorney's fees received for the Thonn claims[2] – a potential sanction that has been rendered moot by the Court's resolution of the Special Master's Motion for Return of Payments Made to Casey C. Thonn and Others. Rec. Docs. 12107, 12794, 13150. The unclean hands doctrine may be used to eliminate a right to relief only when the alleged misconduct "has immediate and necessary relation to the equity that [the party] seeks in respect of the matter in litigation . . . [and] only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933); *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979) ("The maxim of unclean hands is not applied where plaintiff's misconduct is not directly related to the merits of the controversy between the parties."); *cf. Blessey Marine Servs., Inc. v. Jeffboat, LLC*, Civ. Action No. 10-1863, 2011 WL 3349844, at *6 (E.D. La. Aug. 3, 2011) ("'[T]he flagrancy of a party's behavior must be directly proportionate to the severity of the sanction imposed,' and . . . sanctions must be 'narrowly tailored to serve only their necessary function.'" (citation omitted)). The Report does not allege that Andry Lerner or Lerner received any attorney's fees improperly except for the Thonn claims. Therefore, any application of the unclean hands doctrine, if it applies at all, must be limited to those fees, which this Court already has ordered returned. Rec. Doc. 13150. The Court, accordingly, can and should vacate the Show Cause Order as to Lerner and Andry Lerner, and need not hold an evidentiary hearing as to them, because the only lawful penalty the Court can order under the unclean hands doctrine already has been imposed.

---

[2] Lerner is not a member of the Andry Law Firm and he has no legal or financial interest in its claim. The recommended sanction of denying that law firm's claim, therefore, does not apply to him.

B.    **The Court Can and Should Vacate the Show Cause Order Because the Special Master's Alleged Findings Do Not Rise to Unclean Hands.**

If the Court does not to vacate the Show Cause Order on the legal issues alone, it must make a *de novo* determination, *see infra* at 8, whether the Special Master's investigative record makes out a prima facie case of conduct that gives rise to the application of the unclean hands doctrine.  As Lerner argued in his Initial Response, the Special Master's record evidence, at most, showed that a referral fee was paid to Sutton, which Sutton failed to disclose to the CAO. Initial Response at 14-24.  The Court has described the payments to Sutton as those that "arose from a contingency fee contract that was in place when Sutton represented Thonn."  Rec. Doc. 12794 at 25.  The Special Master's Reply asserts only that Lerner's conduct "aided and abetted" "Sutton's failure to disclose his concealed financial interest [which] deprived the DHECC of his loyalty as a fiduciary."  Reply at 1.  These are not the kind of "unconscionable" or "morally reprehensible" acts required to apply the doctrine of unclean hands.  *See Keystone Driller*, 290 U.S. at 245 (doctrine applies only to "unconscionable act[s]" and "violations of conscience" affecting the equitable relations between the parties); *Dahl v. Pinter*, 787 F.2d 985, 988 (5th Cir. 1986) ("conduct must be morally reprehensible" for the doctrine to apply).  The Court, therefore, can vacate the Show Cause Order as to Lerner and Andry Lerner because the Special Mater's investigative record fails, on the facts, to prove a prima facie case of unclean hands.

C.    **The Court Must Hold an Evidentiary Hearing Before It Can Impose Sanctions.**

If the Court concludes that the Show Cause Order cannot be vacated on the legal issues or on the lack of evidence of unclean hands, it must hold an evidentiary hearing consistent with due process.  The recommended sanction – invalidating all of Andry Lerner's attorney-fee contracts and disqualifying the firm and Lerner from representing clients before the CSSP – is criminal or quasi-criminal in nature.  *See F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d

5

1128, 1138 (9th Cir. 2001) (holding that a $500,000 sanction was "criminal in nature" because it was "clearly punitive and intended to vindicate the court's authority," "was not intended to compensate," and "could not be avoided by future compliance"). Lerner is also entitled to an evidentiary hearing because the alleged conduct occurred outside of the court's presence. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 57 (1991) ("As long as a party receives an appropriate hearing, . . . the party may be sanctioned for abuses of process occurring beyond the courtroom." (citations omitted)).

      1.  *The Special Master's Contention That the Court Can Resolve the Show Cause Order Without an Evidentiary Hearing Is Incorrect.*

Because the Court intends to address procedural issues at the status hearing, we are compelled to address the Special Master's assertion that the Court does not need to conduct an evidentiary hearing because the recommended sanctions are not criminal in nature. Rec. Doc. 12393 at 4-5, 41. *First*, the fact that the recommended sanctions do not involve "fines or imprisonment," *id.* at 41, says nothing about the nature of the sanctions. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828-29 (1994) (a sanction is considered criminal if it is "punitive, to vindicate the authority of the court," but civil if it "either coerce[s] the [sanctioned party] into compliance with the court's order, [or] . . . compensate[s] the [other party] for losses sustained." (citation omitted)). The Special Master has recommended what amounts to a denial of millions of dollars in attorney's fees, not to coerce compliance with a court order, but to punish for alleged misconduct. Report at 88. The proposed sanction is therefore criminal and requires an evidentiary hearing.

*Second*, an evidentiary hearing is required because the Special Master did not conduct his investigation in an open and adversarial manner and Lerner was not given an opportunity to

participate in the proceedings before the Special Master.[3] *See Ruiz v. Estelle*, 679 F.2d 1115, 1162-63 (5th Cir. 1982) (allowing a special master "to submit to the district court 'reports based upon his own observations and investigations in the absence of a formal hearing before him' . . . not only transcends the powers traditionally given masters by courts of equity, but denies the parties due process").[4]

*Finally*, even if the Court accepts the Special Master's belated "inherent authority" premise for the recommended sanctions, Reply at 34-37, a hearing on the record is required. *Hazeur v. Keller Indus.*, 983 F.2d 1061, 1993 WL 104973, at *5 (5th Cir. 1993) (explaining that "due process considerations undoubtedly are implicated" when a court "imposes sanctions under its inherent authority," and that "such sanctions should not be imposed 'without fair notice and an opportunity for a hearing on the record'" (citation omitted)).

> 2. *The Court Must Resolve Outstanding Discovery Motions and Objections Prior to Conducting an Evidentiary Hearing.*

Prior to scheduling an evidentiary hearing, the Court should resolve Lerner's outstanding discovery objections. Rec. Doc. 12082. Lerner objected to Magistrate Judge Shushan's flawed identification of relevant documents, using a process in which Magistrate Judge Shushan ordered the search of only the subject line of email communications to identify relevant electronic documents. *Id.* at 8-10. Lerner further objected to Magistrate Judge Shushan's refusal to allow Lerner to interview or depose any CAO official or employee, *id.* at 11-13, to order production of materials that came into the Special Master's possession after September 6, 2013, *id.* at 13, and to order the production of an inventory of all sources from which the Special Master obtained

---

[3] In his Reply, the Special Master relies on *Disney Enters. v. Stephen Slesinger, Inc.*, 499 F. App'x 707 (9th Cir. 2012), an unpublished memorandum opinion, to suggest that "opportunity to be heard" does not require a hearing. Reply at 5. However, that case dealt with a district court's denial of an attorney fee application – a matter readily distinguishable from the present circumstances.

[4] The Special Master has argued that *Ruiz* is no longer controlling precedent in light of the 2003 amendments to the Federal Rules. Reply at 5. However, nothing in Rule 53's amendments eviscerates a person's right to a hearing when the proposed penalties are as severe as those recommended here.

documents, *id.* at 10-11.  Further, Lerner objected to the redaction of documents without the production of a privilege log that would permit Lerner to challenge the privilege assertion or redaction.  *Id.* at 13.  The Court has yet to rule on these objections.  Lerner is entitled to full access to the relevant investigative record and should be permitted to depose various employees of the CAO prior to an evidentiary hearing.

### D. The Following Standards and Procedures Are Applicable at an Evidentiary Hearing.

#### 1. The Court's Review of Facts and Law Is De Novo and the Report Is Entitled to No Evidentiary Weight.

Lerner has argued, and the Court has acknowledged, that Rule 53(f)(3) of the Federal Rules of Civil Procedure requires that "[the] court must decide *de novo* all objections to findings of fact made or recommended by a master," unless the parties stipulate otherwise.  *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 813 (E.D. La. 2007); *see also* Rec. Doc. 11988, Rec. Doc. 12794 at 12 n.9 ("any findings by the Special Master are reviewed by the Court *de novo*").  The same is true for all objections to conclusions of law made or recommended by the Special Master.  Fed. R. Civ. P. 53(f)(4).  As this Court already has stated, the Special Master's findings and recommendations "are just that: recommendations," Rec. Doc. 12794 at 12 n.9, and are entitled to no "presumption of correctness," *Ruiz*, 679 F.2d at 1163.

Under the *de novo* standard of review, the Court should "freely consider the matter anew, as if no decision had been rendered."  *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988).  No deference should be given to the Special Master's findings or conclusions and the court must independently consider all of the evidence that the Special Master considered.  *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) ("When *de novo* review is compelled, no form of [] deference is acceptable.").  The importance of an exacting *de novo* review is heightened here because the Report was not "based on hearings conducted on the record after proper notice,"

but rather on the Special Master's "own observations and investigations in the absence of a formal hearing." *Ruiz*, 679 F.2d at 1163. For this reason, it is also imperative that the Special Master produce his entire investigative record to the Court prior to any resolution of the Show Cause Order.

### 2. *The Proper Evidentiary Standard of Proof is "Clear and Convincing" Evidence.*

The Court may not adopt the Special Master's recommended sanctions, unless his allegations are proven, at least, by clear and convincing evidence. The Special Master has, in essence, recommended sanctions tantamount to contempt and attorney discipline – both of which employ the clear and convincing evidence standard. *See Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (holding that in the contempt context, the movant bears the responsibility of establishing contempt by clear and convincing evidence); Rule 2 of the United States District Court for the Eastern District of Louisiana Rules for Disciplinary Enforcement (adopting clear and convincing evidence standard for attorney discipline).[5] Even if the Court accepts the Special Master's contention that he has only recommended civil sanctions, the same standard would apply because the Special Master has alleged that Lerner engaged in fraud or some other quasi-criminal wrongdoing. Report at 6, 81-82; Reply at 17; *Addington v. Texas*, 441 U.S. 418, 424 (1979) ("typical use of [clear and convincing evidence standard] is in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing"). Under the clear and convincing evidence standard, the

> weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so

---

[5] The Louisiana Rules of Professional Conduct also require that proof of misconduct be established by clear and convincing evidence. Louisiana Supreme Court Rule XIX, Section 18. The U.S. Supreme Court has held that district judges must adhere to their court's local rules, which have the force of federal law. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam); *see also*, Rule 1.2 of the United States District Court for the Eastern District of Louisiana Rules for Disciplinary Enforcement (adopting Rules of Professional Conduct of the Supreme Court of the State of Louisiana).

9

> clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case.

*In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992) (citation omitted).  The court should employ no less exacting a standard when deciding whether Andry Lerner and Lerner should be compelled to forfeit millions of dollars in contractually-owed legal fees and disqualified from representing claimants before the DHECC.

> 3. *The Evidence Against the Show Cause Parties Must be Derived From the Special Master's Investigative Record and the Show Cause Parties Must Be Permitted to Present Their Own Evidence to Supplement the Record.*

The scope of the evidence presented against the Show Cause Parties is defined by evidence gathered by the Special Master, as that is the record the Court must review *de novo*. The Show Cause Parties should be permitted to object under the Federal Rules of Evidence to the admissibility of any evidence presented.  The Show Cause Parties should be allowed to present evidence in their defense, including live testimony of witnesses (including the Show Cause Parties), portions of the Special Master's record not already presented to the Court, and any other relevant evidence.

The Special Master should have no role at an evidentiary hearing.  None of the Court's appointment orders permit the Special Master to act as a litigant or party at an evidentiary hearing.  Rec. Docs. 10564, 11288.  Although Lerner has objected to the Court's grant of additional powers to the Special Master, Rec. Doc. 11830, even those powers granted in the Show Cause Order only authorize the Special Master to conduct an investigation.  *See, e.g.*, Order at 2-3 (granting authority to investigate any misconduct within the DHECC and make recommendations); *id.* (granting authority to review suspicious DHECC claims and initiate legal action regarding fraudulent claims).  Expansion of the Special Master's powers and role would require the amendment of the referral order and giving notice to the parties and an opportunity to

be heard before amendment. *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 395 (5th Cir. 2004) (quoting Fed. R. Civ. P. 53(b)(4)). Lerner is not prepared to consent to any further expansion of the Special Master's role in these proceedings.[6] To extent the Court wishes to have an advocate distill and present the relevant portions of the Special Master's record against the Show Cause Parties, the Court must specially appoint a lawyer for that purpose.

> 4. *The Federal Rules of Evidence Should Apply and Govern the Admissibility of Evidence.*

Any evidentiary hearing must apply the Federal Rules of Evidence to determine admissibility of evidence. In particular, the Rules require exclusion of the Report as evidence of any fact. The vast majority of the Report consists of the Special Master's alleged "factual findings," his personal musings about the propriety of the alleged conduct, and sweeping statements about the law. None of that is admissible evidence that can be considered by a trier of fact. The actual evidence cited in the Report is either admissible or not; the Report cannot transform its admissibility. For instance, prior unsworn statements of witnesses that Lerner has had no opportunity to cross-examine do not become admissible merely because they are cited in the Report. Fed. R. Evid. 801(c), 802.

Although the Special Master has argued that the Report is an investigative report falling within an exception to the general prohibition against hearsay, Reply at 6-7, that exception applies only in a civil case or against the government in a criminal case. Fed. R. Evid. 803(8). Lerner has on numerous occasions noted the criminal or quasi-criminal nature of the recommended sanctions. *See, e.g.*, Initial Response at 24-25. In addition, the public records exception contains the additional requirement that "neither the source of information nor other

---

[6] The Special Master cannot have a role for the additional reason that the Special Master is in the unique position of having information that Lerner does not, e.g., a first-hand account of a witness interview that was not transcribed. It may be necessary to call the Special Master as a witness during the Show Cause proceedings.

circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B). "When evaluating the trustworthiness of a factual report, [courts] look to (a) the timeliness of the investigation, (b) the special skills or experience of the official, (c) whether a hearing was held and the level at which it was conducted, and (d) possible motivation problems." *Bridgeway Corp. v. Citibank,* 201 F.3d 134, 143 (2d Cir. 2000).

As the Court is aware, the Special Master held no hearing and permitted no argument prior to issuance of the Report. Lerner was not afforded an opportunity to demonstrate that the various sources of information relied upon by the Special Master or the non-public and adversarial manner in which he conducted his investigation indicate the Report's lack of trustworthiness. In fact, because Lerner has been denied access to many of the witnesses upon whose statements the Report relies, most of the statements in the Report have not been subject to cross-examination. The Court will need to resolve these and other evidentiary concerns in advance of any evidentiary hearing.

## CONCLUSION

For the foregoing reasons, the Glen J. Lerner respectfully requests that the Court adopt the aforementioned procedures for resolution of the Show Cause Order.

Respectfully submitted,

**/s/ *William W. Taylor, III***
William W. Taylor, III (D.C. Bar #84194)
Amit P. Mehta (D.C. Bar #467231)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036-5802
Telephone: (202) 778-1865
Facsimile: (202) 822-8106
wtaylor@zuckerman.com
amehta@zuckerman.com

Pauline F. Hardin (La. Bar #6542)
James E. Wright, III (La. Bar #13700)
Virginia W. Gundlach (La. Bar #18493)
Jones Walker LLP
201 St. Charles Avenue
49th Floor
New Orleans, LA 70170
Telephone: (504) 582-8110
Fax: (504) 589-8110
phardin@joneswalker.com
jwright@joneswalker.com
ggundlach@joneswalker.com

*Attorneys for Glen J. Lerner*

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing Memorandum has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 18th day of September, 2014.

                                                */s/ William W. Taylor, III*
                                                William W. Taylor, III