UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>This Document Relates to:<br><br>No. 12-968 | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

**CLASS COUNSEL'S REPLY BRIEF
IN SUPPORT OF MOTION FOR RECONSIDERATION
ON CHRONIC SPC ISSUE**

Class Counsel, on behalf of the Medical Benefits Settlement Class, in accordance with the Court's Order of August 28, 2014,[1] respectfully submit the following Reply Brief in support of its Motion to Reconsider the Court's Order of July 23, 2014[2] [Doc 13303]:

**MAY IT PLEASE THE COURT:**

BP's Opposition to Plaintiffs' Motions for Reconsideration disregards three important facts:  **(i)** It was intended and agreed that the vast majority of exposure cases existing at the time would be resolved by the settlement.  **(ii)** The BP Counsel who negotiated the settlement specifically avoided the use of "diagnosis" in the context of Chronic Specified Physical Conditions as too subjective, and insisted, instead, upon objective test results.  **(iii)** The potential release issue is significant to the current dispute, because (a) the clear ability of a Class Member, under the current interpretation, to file and be compensated for an acute respiratory, ocular or dermal condition, and then also pursue a Back-End Litigation Option Claim for a chronic

---

[1] Rec. Doc. 13337.
[2] Rec. Doc. 13179.

respiratory, ocular or dermal condition further calls into question that the Parties actually intended and agreed that a Chronic SPC would be treated as a "Later-Manifested Physical Condition," and (b) if the current interpretation stands, Class Members must be able to determine what, if any, rights or claims they might be giving up by asserting an Acute SPC Claim for which they are entitled to compensation under the current interpretation of the Settlement Agreement.

Class Counsel, at the same time, respectfully note that the Court's Order affirming the Claims Administrator's interpretation is not a final judgment under Rule 54, and the Fifth Circuit has held that a trial court is "free to reconsider and reverse [interlocutory orders] for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Stoffels ex. rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727-28 (5th Cir. 2012) (quoting *Zarnow v. City of Witchita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010)); *see also, Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (the task of the district court is to balance the competing interests of finality and the "need to render just decisions on the basis of all the facts").

For these reasons, for all of the reasons which have been previously briefed by Class Counsel and other Plaintiffs to the Claims Administrator, Judge Shushan and this Honorable Court, and for the reasons stated further below, Class Counsel respectfully request the Court to overrule the interpretation of the Claims Administrator, and to direct the recognition of Chronic SPC Claims irrespective of whether the supporting tests results and other medical documentation was obtained prior to or after April 16, 2012.

**It Was Intended and Agreed that the Vast Majority of Cases Existing at the Time Would Be Resolved by the Settlement**

BP's current counsel generally contend that the "plain language" of the Settlement Agreement, when taken as a whole, requires Class Members with Chronic Specified Physical Conditions that first manifested within 24-72 hours of exposure but were "first diagnosed after April 16, 2012" to seek compensation "through the BELO process or workers' compensation laws."[3]

This, however, ignores the fact that the attorneys who actually negotiated and entered into the Medical Benefits Settlement on BP's behalf clearly intended and agreed that: "The Settlement seeks to resolve the vast majority of post-Incident personal injury claims based on alleged exposure to oil and/or dispersants." BP BRIEF IN SUPPORT OF FINAL APPROVAL [Doc 7112-1] p.25.

Those attorneys, on August 13, 2012, told the Court that: "The Medical Settlement provides compensation to qualifying Class Members who can demonstrate that they have manifested during a specified timeframe a Specified Physical Condition covered by the Agreement." BP BRIEF IN SUPPORT OF FINAL APPROVAL, p.27.

BP presented expert testimony at that time which verified and confirmed that "this class consists of small claims that would yield modest compensation in individual litigation and, in most cases, would not be attractive to a plaintiff's attorney compensated on a contingent fee basis." COFFEE DECLARATION (Aug. 10, 2012) [Doc 7113-2] p.14, ¶18. "Class members who later develop more serious injuries that they attribute to the Deepwater Horizon Incident are provided with a 'Back-End Litigation Option for Later-Manifested Physical Conditions' ('BELO')." COFFEE DECLARATION, p.12, ¶15.

---

[3] BP OPPOSITION [Doc 13392] pp.6-8.

3

BP's medical expert, at that time, described these more serious injuries as "latent diseases, such as cancers." DECLARATION OF DR. JESSICA HERZSTEIN (Aug. 12, 2012) [Doc 7112-7] pp.15-16, ¶¶26-28.

BP's current counsel, through Dr. Herzstein, now suggest that Class Members suffering from Chronic SPCs without a formal "diagnosis" as of April 2012 simply do not exist.[4] This assertion, from an ivory tower, disregards the reality faced by the population of Clean-Up Workers intended to be covered by the settlement.[5] Most of the estimated 90,000 such workers did not give up their full-time employment to remediate BP's oil spill. To the contrary, the majority of Clean-Up Workers were either unemployed or seasonal workers whose job opportunities vanished in the summer or fall of 2010. Accordingly, this was generally not an insured population. Although Mr. Plaisance was, for example, one of the fortunate workers who had health insurance, and received medical treatment shortly after his condition first arose, even he did not undergo the formal tests required by Exhibit 8 until after the Settlement Agreement was finalized and made public.[6]

Indeed, BP's current vision of healthcare in the Gulf is belied by the facts it proffered in support of the Gulf Regional Health Outreach Program. Dr. Bernard Goldstein, who chaired that Program, summarized the state of the Gulf's healthcare services at the time of the fairness hearing as follows:

---

[4] *See* BP OPPOSITION, pp.17-18.

[5] To our knowledge, Dr. Herzstein did not treat or even consult regarding the treatment of a single Clean-Up Worker suffering from oil and/or oil dispersant exposure. Indeed, there is no evidence that she even traveled to the Gulf.

[6] Notably, even Dr. Herzstein hedges her statement (albeit without foundation), stating that it is unlikely that a chronic claimant "could function and continue to perform the activities of daily living without *medical treatment*." [Doc 13392 at p.17 (emphasis added).] But medical treatment does not necessarily equal "diagnosis," as that term is used in connection with BELO provisions—a fact evidenced by Mr. Plaisance and many others like him.

4

> Health problems have plagued the Gulf region for decades… Disease prevention and basic health maintenance are significant issues along the Gulf Coast…. There also is a significant shortage of clinicians in the Gulf at both the primary care and specialty levels, particularly in rural areas, and an insufficient number of clinicians who participate in federally funded health programs. High poverty and lack of private insurance coverage, especially among unemployed individuals and the working poor, make it difficult to attract and sustain high-quality health care in the area.[7]

As both Parties understood when they designed the Outreach Program, standard medical treatments were simply unavailable to many Class Members. Diagnostic tests that may be standard for insured individuals in other regions are not standard to individuals who typically "lack sufficient access to effective preventive, acute and specialty care."[8]

Under the current interpretation, the Medical Benefits Settlement may become the first class "settlement" in history in which a significant percentage of the settling victims are required to immediately file a new lawsuit against the settling tortfeasor. This is not what Class Counsel or the counsel who represented BP at the time of the settlement intended.

**The BP Counsel Who Negotiated the Settlement Rejected the Use of a "Diagnosis" to Determine whether a Class Member was Suffering from a Chronic SPC**

In response to Class Counsel's references to the myriad use of "*manifestation*" to distinguish a Specified Physical Condition from a Later-Manifested Physical Condition during the Settlement Approval Process, BP's current counsel point to Class Counsel's use of the term "diagnosis" within the context of Later-Manifested Physical Conditions and BELO claims.[9]

This is true.

---

[7] GOLDSTEIN DECLARATION [Doc 7113-3] p.5, ¶¶ 10, 12.

[8] GOLDSTEIN DECLARATION, p.6, ¶15.

[9] BP OPPOSITION, p.12.

5

The "diagnosis" of a Later-Manifested Physical Condition is indeed relevant with respect to the assertion of a Back-End Litigation Option claim.

However, the BP counsel who negotiated the settlement specifically avoided the use of the term "diagnosis" in the context of Chronic Specified Physical Conditions, because they believed that a "diagnosis" was too subjective.  Rather, they insisted upon certain specified, and carefully negotiated, objective test results.

Accordingly, the word "diagnosis" is not found in:

- The Definition of "Specified Physical Condition" (Section II.QQQQ)

- Section IV.A, which directs the Claims Administrator to compensate Class Members for Specified Physical Conditions; or

- Exhibit 8  (the Specified Physical Condition Matrix) [10]

Instead, the BP lawyers who negotiated the settlement required, and Class Counsel agreed to:

- "documented objective finding of damage to conjunctiva, cornea and/or surrounding structures"

- "objective evidence of sinus mucosal disease on CT imaging or endoscopic examination"  and/or

- "positive methacholine challenge test finding or equivalent test, which signifies hyperactive airways"

EXHIBIT 8, Table 3, p.13.  To the extent that there is an inconsistency between the body of the Settlement Agreement and Exhibit 8, this Specified Physical Condition Matrix was intended by the Parties who negotiated the settlement to control.[11]

---

[10] *See also* CLAIMS ADMINISTRATOR'S MEMO [Doc 12862, at p.2] ("The MSA does not identify a date certain by which the acute or chronic condition must have manifested or been diagnosed to constitute a Specified Physical Condition.").

[11] Section XXX.D ("*With the exception of Exhibits 8,* 9, and 12, any inconsistency between this Medical Settlement Agreement and any attachments, exhibits, or appendices hereto shall be resolved in favor of this Medical Settlement Agreement") (emphasis supplied).

**<u>The Release Issue (which BP Counsel Largely Avoids Addressing) Is Both Relevant to the Question of Intent and Important with Respect to the Class' Decision About Whether and How to File Claims Going Forward</u>**

BP's current counsel largely sidesteps the question of whether – under the Claims Administrator's current interpretation – a Class Member suffering from a chronic condition that first manifested within 24-72 hours but was not confirmed by medical testing until after the Settlement Agreement was finalized and made public, can submit and be compensated for an Acute SPC without waiving or releasing his or her right to pursue a Back-End Litigation Option for what has now been deemed to be a "Later-Manifested Physical Condition."[12]

(Class Counsel believe that the answer is: Yes.)

This issue is significant to the current dispute for two reasons:

*First,* the ability of a Class Member, under the current interpretation, to file and be compensated for an acute respiratory, ocular or dermal condition, while also pursuing a Back-End Litigation Option claim for a chronic respiratory, ocular or dermal condition seems somewhat unlikely, and further calls into question that the Parties actually intended and agreed that a Chronic SPC would be treated as a "Later-Manifested Physical Condition".

*Second,* in the event that the current interpretation stands, Class Members are entitled to full and fair notice under Rule 23, and must be able to determine what, if any, rights or claims they might be giving up by asserting an Acute SPC Claim for which they are entitled to be compensated under the current interpretation of the Settlement Agreement.

BP should thus be required by the Court to take a definitive position.

---

[12] *See generally* MEMO IN SUPPORT OF MOT FOR RECONSIDERATION [Doc 13303-1] pp.7-8, *and* BP OPPOSITION [Doc 13392] p.20.

7

**Conclusion**

For the above and foregoing reasons, for the reasons stated in Class Counsel's original Memo to Judge Shushan [Doc 12862-1], for the reasons stated in Class Counsel's Motion and Memo to Strike the Herzstein Declaration [Doc 12909-3], for the reasons stated in Class Counsel's Memorandum of July 4, 2014 [Doc 13106], for the reasons stated in Class Counsel's Memo in Support of Motion for Reconsideration [Doc 13303-1], and for the reasons stated by other Plaintiffs' counsel who have submitted briefing on the issue, the Court should overrule the interpretation of the Claims Administrator and direct the recognition of Chronic SPC Claims irrespective of whether the supporting tests results and other medical documentation was obtained prior to or after April 16, 2012.

This 19th day of September, 2014.

Respectfully submitted,

|  |  |
|---|---|
| /s/   Stephen J. Herman | /s/ James Parkerson Roy |
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No.11511 |
| **HERMAN HERMAN & KATZ LLP** | **DOMENGEAUX WRIGHT ROY & EDWARDS LLC** |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhklawfirm.com | E-Mail: jimr@wrightroy.com |
| *Co-Lead Class Counsel* | *Co-Lead Class Counsel* |

**MEDICAL BENEFITS CLASS COUNSEL**

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Office:  (212) 558-5802
Telefax: (212) 344-5461
E-Mail:  rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail:  rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

**CERTIFICATE OF SERVICE**

   We hereby certify that the above and foregoing Reply Brief will be served on all counsel *via* Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179 this 19th day of September, 2014.

                   /s/ Stephen J. Herman and James Parkerson Roy