UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | Mag. Judge Shushan |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

MEMORANDUM IN SUPPORT OF MOTION OF THE SPECIAL MASTER
FOR RETURN OF PAYMENTS MADE TO JASON ZIRLOTT, CAPT JAY, LLC

Special Master Louis J. Freeh moves to have claimants Jason Zirlott ("Zirlott") and Capt Jay, LLC ("Capt Jay") return payments made by the Deepwater Horizon Economic Claims Center ("DHECC").  Capt Jay and Zirlott, a member in Capt Jay, filed claims with the DHECC based on alleged 2009 shrimping revenue from a vessel named the *Capt Jay*.  The Zirlott and Capt Jay claims, however, falsely represented to the DHECC that all of their 2009 revenue was from commercial shrimping, when over 80 percent of the 2009 revenue in fact came from marine cleanup work.  A 2009 local newspaper article (attached to this memorandum as Exhibit H) even chronicled Zirlott's marine debris cleanup work, including his discovery of a Civil War-era vessel using sonar equipment.

The DHECC paid Zirlott $197,384.31 for his shrimp boat captain claim and Capt Jay received an additional $85,357.82 for its shrimp vessel owner claim based upon this false information.  The Special Master seeks a judgment requiring Zirlott and Capt Jay to return money paid on these DHECC claims, less the amount already repaid by the former lawyers for Zirlott and Capt Jay.  On October 3, 2014, the lawyers withdrew from further representation of Zirlott and Capt Jay, and repaid $43,222.81 in legal fees received from these claims to the DHECC.

### A. *Background*

By order of September 6, 2013, this Court directed the Special Master to examine and investigate past or pending claims submitted to the DHECC which are deemed to be suspicious, and to initiate clawback proceedings of fraudulent claims. This Court retains continuing and exclusive jurisdiction over the Deepwater Horizon Economic and Property Damages Settlement Agreement (the "Settlement Agreement"), including supervision and oversight activities to ensure the integrity of the DHECC. *See* Settlement Agreement at ¶¶ 4.3.2, 4.3.10, 4.4.7 and 18.1. Disputes concerning enforcement of the Settlement Agreement are to be resolved by motion to the Court. *Id*. at ¶ 18.1.

### B. *The DHECC Claims*

Zirlott and his father are members in Capt Jay LLC, an Alabama limited liability company organized for "commercial fishing and or water debris clean up" which operates a 52-foot vessel named the *Capt Jay*. *See* Ex. A.

On November 19, 2012, Capt Jay filed a DHECC shrimp vessel owner claim, seeking to have the claim paid based on Capt Jay's 2009 historical revenue as shown in its tax records and financial statements. On December 4, 2012, Zirlott filed a shrimp boat captain claim for his work on the *Capt Jay*, seeking to have the claim paid based on the same historical revenue data.

1. Seafood Income Documentation.

Capt Jay initially filed a claim for lost commercial fishing income with the Gulf Coast Claims Facility ("GCCF"), stating that all of the $162,364 in income from its 2009 partnership tax return came from sales of seafood. *See* Exs. B & C. Capt Jay provided accounting records showing it had 2009 revenue from *two* sources:

        $77,967.31               "Gulf Equipment Corporation Crowder-Gulf"

        $31,656.58               "Seafood Stock"

On November 29, 2012, after filing a claim with the DHECC, Capt Jay and Zirlott submitted Sworn Written Statements for Sufficient Documentation of Benchmark Revenue ("SWS1"), signed by Zirlott and legal counsel and stating under penalty of perjury that the *Capt Jay* landed $162,364 in shrimp in the Gulf Coast Areas in 2009. *See* Exs. D & E. The revenue reported on the two SWS1s matched the gross receipts declared by Capt Jay on its 2009 Form 1065 partnership income tax return. *See* Ex. C.

    2.    <u>DHECC Payments</u>.

Relying on the SWS1s representing that all of Capt Jay's 2009 revenue was from shrimping, the DHECC found that Capt Jay was due compensation of $248,371.29 on its shrimp vessel owner claim and Zirlott was due compensation of $196,906.96 on his shrimp boat captain claim. *See* Exs. F & G. On January 25, 2013, the DHECC paid Capt Jay $85,357.82 (after deducting prior GCCF payments). On February 19, 2013, the DHECC paid Zirlott $197,384.31, including accounting fees.

The former legal counsel for Capt Jay and Zirlott received attorney's fees of $43,222.81 for the claims filed by Capt Jay and Zirlott. On October 3, 2014, the former counsel repaid these fees to the DHECC and withdrew from further representation of Capt Jay and Zirlott.

### C. *Evidence of the Fraudulent Claims*

The totality of the record shows that there is no genuine issue as to any material fact and that the Special Master and the DHECC are entitled to a judgment as a matter of law. *See* Order & Reasons on Special Master's Motion for Return of Payment at 19 (Doc. Rec.

12794) (Apr. 29, 2014) (hereinafter "Order & Reasons").  Drawing an analogy to the procedures used to determine summary judgment motions, a genuine issue of fact exists only where competent evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An opposing party must do more than simply allege some metaphysical doubt as to the facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  No material factual dispute exists in this case, and judgment against Zirlott and Capt Jay is appropriate.

      1.    <u>Most of Capt Jay's 2009 Gross Receipts Came from Marine Debris Work</u>.

The accounting records submitted by Capt Jay to the DHECC reflected aggregate revenue in 2009 of approximately $109,624.  This amount was $52,740 less than the total gross receipts reported on Capt Jay's 2009 Form 1065, all of which purportedly was attributable to seafood harvesting.  *See* Ex. C.  Most of the 2009 revenue, however, came from "Gulf Equipment Corporation Crowder-Gulf," a marine debris company near Zirlott's home.  *Id.*  Capt Jay was formed in part to conduct "water debris clean up."  *See* Ex. A.

A February 23, 2009 newspaper article detailed a Crowder-Gulf contract with the Texas General Land Office to clean debris left by Hurricane Ike.  *See* Ex. H.  The article included a photo of Zirlott reviewing locations of Hurricane Ike debris using sonar equipment.  *Id.*  The article quoted Zirlott, who said he discovered a Civil War-era ship resting on the bay floor while working on the project.  *Id.*

On September 16, 2014, investigators working for the Special Master visited Crowder-Gulf in Theodore, Alabama.  Kelley James, the Crowder-Gulf office manager, explained that the company provides marine and land debris removal services.  Ms. James confirmed that Zirlott has worked on several Crowder-Gulf debris removal projects.

According to Ms. James, Zirlott worked in 2009 on debris removal contracts in Texas and Louisiana for Crowder-Gulf, which issued 2009 Form 1099s to Zirlott for $35,099 and to Capt Jay for $53,867. James said none of the payments were for shrimp harvesting. The 2009 marine subcontracts for both jobs made clear that Zirlott was to perform submerged debris surveying services. *See* Exs. I & J.

2. <u>Zirlott and Capt Jay Concealed their Marine Debris Work from the DHECC</u>.

On September 16, 2014, investigators from the Special Master visited Jane E. Johnson in Theodore, Alabama. Johnson prepared Capt Jay's 2009 Form 1065 from accounting records provided by Zirlott's wife. The accounting records provided to Johnson indicated that Capt Jay had 2009 revenue from *three* sources, rather than two as Zirlott and Capt Jay had represented to the DHECC. These three sources were:

| | |
|---|---|
| $77,967.31 | "Gulf Equipment Corporation Crowder-Gulf" |
| $52,739.98 | "Rouge [sic] Marine Services" |
| $31,656.58 | "Seafood Stock" |

*See* Ex. K. Johnson understood that "Rouge [sic] Marine Services" was a debris cleanup and removal company. The revenue from "Rouge [sic] Marine Services" reflected in Johnson's records fills the unexplained $52,740 gap between revenue reflected on Capt Jay's 2009 accounting records filed with the DHECC and the gross receipts listed on Capt Jay's 2009 Form 1065.

The DHECC BEL claim file for an entity named Rogue Marine Services, LLC reflects that the firm worked in 2009 on projects with Crowder Gulf to provide "Sonar Surveys" in Texas and Louisiana. *See* Ex. L. The firm's records show eight 2009 payments to Capt Jay totaling $55,239. *See* Ex. M.

### D. *Legal Analysis*

1. The Court Should Order Zirlott and Capt Jay to Return All Funds Received from the DHECC Because their Claims Were Fraudulent.

The Court's power to order equitable remedies as a result of fraudulent conduct is a broad, flexible and long-standing power. *See Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 244 (1944) (affirming judicial power to set aside fraudulently begotten judgments as such cases present a wrong against the institutions set up to protect and safeguard the public); Order & Reasons at 21.

Here, the record unquestionably reveals that Zirlott and Capt Jay knowingly presented false information to the Court-supervised DHECC and concealed other information to obtain $282,742.13. *See* Criminal Information, *United States v. Thonn*, Crim. 2:14-cr-00207-SRD-SS (E.D. La. Sept. 23, 2014). Contrary to the sworn statements of Zirlott and Capt Jay, over 80 percent of the 2009 revenue that purportedly was shrimping revenue actually came from marine debris cleanup work. Zirlott also failed to provide the DHECC records that demonstrated that in excess of $50,000 of payments to Capt Jay in 2009 came from one of the marine cleanup firms, Rogue Marine Services. *See* Exs. C & K. These facts demonstrate that Zirlott and Capt Jay's claims were knowingly based on false information.

In light of the evidence, the Special Master seeks an order compelling Zirlott and Capt Jay to return payments made on these DHECC seafood claims. The return of the payments will make the DHECC whole, deprive Zirlott and Capt Jay of an unjust enrichment and deter others from engaging in similar misconduct. *See* Order & Reasons at 22.

2. <u>Zirlott and Capt Jay are Not Entitled to Any Funds from the DHECC</u>.

Zirlott and Capt Jay may argue that some payment should be retained from the DHECC claims, as not all of the 2009 revenue came from marine debris removal work. To maintain the integrity of the DHECC and the judicial process, this argument should be rejected if advanced by Zirlott and Capt Jay.

Zirlott and Capt Jay swore under penalty of perjury that all of the 2009 income reflected on the Form 1065 came from commercial shrimping. *See* Exs. D & E. Zirlott and Capt Jay intentionally concealed portions of their accounting records from the DHECC to hide their non-seafood revenue. *See* Exs. C & K. The DHECC accepted these representations and paid Zirlott and Capt Jay $282,742.13. *See* Exs. F & G. Now that the scheme has been discovered, any attempt by Zirlott and Capt Jay to disavow their earlier omissions and false sworn statements, and claim instead that only some portion of the 2009 income came from seafood sales should be rejected under the equitable doctrine of judicial estoppel.

Designed to protect the integrity of the courts, judicial estoppel applies where a litigant knowingly takes a position plainly inconsistent with a prior position that had been advanced by the party and accepted by the court. *In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 552 (5th Cir. 2011). The doctrine upholds the sanctity of the oath and prevents a litigant from "playing fast and loose with the courts." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).

Here, Zirlott and Capt Jay convinced the court-supervised DHECC settlement program to accept the position that all of their 2009 revenue came from shrimping, when this in fact was not true. *See Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 399 (5th Cir. 2003) (doctrine may be applied when a party makes an argument with the explicit intent to

induce the court's reliance).  Zirlott and Capt Jay intentionally made false statements and concealed information about their 2009 revenue, knowing that over 80 percent of this revenue came from non-seafood sources.  *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).

Given the deceptions practiced by Zirlott and Capt Jay and the passage of 18 months during which both have remained silent about their fraud, the Court should not accept a claim that some lesser measure of alleged loss should be used to compensate parties that deceived the DHECC.

### E.  *Conclusion*

For the reasons stated in this memorandum, the Special Master seeks entry of a judgment requiring Zirlott and Capt Jay jointly and severally to make restitution to the DHECC on $197,384.31 for Zirlott's shrimp boat captain claim and $85,357.82 for Capt Jay's shrimp vessel owner claim, less $43,222.81 already repaid to the DHECC by former counsel.  Thus, the Special Master seeks entry of a judgment against Zirlott and Capt Jay jointly and severally for $239,519.32.  The Special Master further seeks an order prohibiting Zirlott and Capt Jay from participating in any further seafood distributions.

Respectfully submitted,

/s/ Louis J. Freeh
Louis J. Freeh
Special Master

Dated:   October 7, 2014