## Stipulation Regarding Early Restoration Project
## for the Deepwater Horizon Oil Spill -
## Alabama Oyster Cultch Restoration Project

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Alabama Oyster Cultch Restoration Project ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011. Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference. This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources: the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources: for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.  RESTORATION PROJECT

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

i.  contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

iii.  seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

v.  is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Alabama Department of Conservation and Natural Resources ("Implementing Trustee(s)").

2

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES

A.   BPXP shall provide total funding in the amount of $3,239,485 for the Early
     Restoration Project in accordance with Paragraphs II.C. and II.D. below, absent
     the entry of a judicial stay or other court order that prevents project
     implementation or otherwise affects the terms of this Project Stipulation.  All
     funds provided to any Trustee under this Stipulation shall be paid and deposited in
     accordance with the instructions provided by the Implementing Trustee(s)
     pursuant to Paragraphs II.C. and II.D. below.

B.   The Trustees shall use the funds paid under this Stipulation only for
     implementation of the Early Restoration Project, including oversight, monitoring,
     corrective actions, maintenance, and any agreed upon contingencies, except as
     provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
     Project is set forth in Appendix A.

C.   Initial Payment:  Within thirty (30) days of the filing of this Project Stipulation or
     receipt of written payment instructions from the Implementing Trustee(s),
     whichever is later, BPXP shall cause the transfer of $809,871.25, or 25% of the
     amount specified in Paragraph II.A., from the Early Restoration Subaccount[1] to
     the account or accounts and in the manner designated in the payment instructions.

D.   Additional Payments:  The remaining 75% of the amount specified in Paragraph
     II.A. shall be paid from the Early Restoration Subaccount as follows:

     i.    The Implementing Trustee(s) elects to perform the Early Restoration
           Project with the use of contractor(s). Unless other payment arrangements
           are specified in Appendix A, BPXP shall transfer $809,871.25, or an
           additional 25% of the amount specified in Paragraph II.A., from the Early
           Restoration Subaccount to the account or accounts designated by the
           Implementing Trustee(s) within fifteen (15) days after the date that BPXP
           receives written notice from the Implementing Trustee(s) of issuance of a
           Request for Proposal, or other appropriate applicable procurement
           mechanism, or within sixty (60) days of the filing of this Project
           Stipulation, whichever is later; such notice shall include written payment
           instructions.

     ii.   BPXP shall transfer the remaining $1,619,742.50, or 50% of the amount
           specified in Paragraph II.A., from the Early Restoration Subaccount to the
           account or accounts designated in the payment instructions within fifteen
           (15) days of notice to BPXP of the selection of a contractor but before
           award of a contract to implement the Early Restoration Project , or within
           seventy-five (75) days of the filing of this Project Stipulation, whichever is
           later.

E.   Any and all funds transferred pursuant to Paragraph 5 of the Framework
     Agreement and Paragraphs II.C. and II.D. of this Project Stipulation, along with
     any accrued interest, that have not been spent and remain unobligated after the

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

Trustee(s) has completed the Early Restoration Project, including all performance monitoring and corrective actions, shall be retained by the Trustees. Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete. BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

F.  If implementation of the Early Restoration Project does not commence, as specified in Appendix A, by the end of the eighteenth (18th) month after the date all Parties have signed this Project Stipulation, unless the Parties agree otherwise, the Project Stipulation shall be void and the funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation that have not been spent and remain unobligated, along with any accrued interest, shall remain in the account or accounts to which they have been transferred and only be used for another project under a new Project Stipulation agreed to by all the Parties under the terms of the Framework Agreement.

G.  Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.  NRD OFFSETS

A.  The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees"). NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B.  Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.  Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.   Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.   (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.   <u>EFFECT OF STIPULATION</u>

A.   This Project Stipulation is binding upon the Parties and their successors and assigns.

B.   Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C.   The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D.   Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-

District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.   GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33  U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.G.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E.  Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G.  The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H.  To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.


IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Oyster Cultch Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
Date

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Oyster Cultch Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____10/2/14_____
Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____10/2/14_____
Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____10/2/14_____
Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____10/2/14_____
Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Oyster Cultch Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_____10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

_____10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Oyster Cultch Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

___10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

___10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Oyster Cultch Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____        _____
Date                                KYLE GRAHAM
                                    Louisiana Coastal Protection and
                                    Restoration Authority
                                    Executive Director
                                    P.O. Box 44027
                                    Baton Rouge, Louisiana 70804

10/2/14
_____        _____
Date                                BRIAN WYNNE
                                    Louisiana Oil Spill Coordinator's Office
                                    Director
                                    P.O. Box 66614
                                    Baton Rouge, Louisiana 70896

10/2/14
_____        _____
Date                                PEGGY HATCH
                                    Louisiana Department of Environmental
                                    Quality
                                    Secretary
                                    P.O. Box 4301
                                    Baton Rouge, Louisiana 70821-4301

10/2/14
_____        _____
Date                                ROBERT BARHAM
                                    Louisiana Department of Wildlife and
                                    Fisheries
                                    Secretary
                                    P.O. Box 98000
                                    Baton Rouge, Louisiana 70898

10/2/14
_____        _____
Date                                STEVE CHUSTZ
                                    Louisiana Department of Natural Resources
                                    Secretary
                                    P.O. Box 94396
                                    Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Oyster Cultch Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


__10/2/14_____
Date

_____
GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Oyster Cultch Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Oyster Cultch Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____          _____
Date                             CARTER SMITH
                                 Texas Parks and Wildlife Department
                                 Executive Director
                                 4200 Smith School Road
                                 Austin, Texas 78744


_____          _____
Date                             LARRY L. LAINE
                                 Texas General Land Office
                                 Deputy Land Commissioner and Chief Clerk
                                 P. O. Box 12873
                                 Austin, Texas 78711


_____          _____
Date                             RICHARD A. HYDE, P.E.
                                 Texas Commission on Environmental
                                 Quality
                                 Executive Director
                                 P. O. Box 13807
                                 Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Oyster Cultch Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

October 2, 2014
_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Oyster Cultch Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2 - OCT - 2014
Date

2 - Oct - 2014
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:              Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:           BP Legal Department
                   501 Westlake Park Blvd
                   Houston, Texas 77079
Telephone Number:  281-366-6060
Facsimile Number:  281-366-5901

15

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Alabama Oyster Cultch Restoration

## 1.0     INTRODUCTION

This document describes the Alabama Oyster Cultch Restoration Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of a Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0     PROJECT DESCRIPTION

The Early Restoration Project will enhance and improve the oyster populations in the estuarine waters of Alabama.  The project would place approximately 30,000 – 40,000 cubic yards of suitable oyster shell cultch over approximately 319 acres of subtidal habitat in Mobile County, AL in proximity to other oyster reefs currently managed by the Alabama Department of Conservation and Natural Resources and within the historic footprint of oyster reefs in the area. Placement of cultch material would be selected by season and surveys to determine where environmental conditions are favorable for spat settlement and survival.



Proposed Project Location for Alabama Oyster Cultch Restoration in Mobile County, AL.

16

### 3.0     PROJECT IMPLEMENTATION

### 3.1     Performance Criteria, Monitoring and Maintenance

Project performance will be assessed as defined in Section 11.8.4 of the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon filing of the Notice of Project Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 11.8.4 of the Plan have been met.

### 3.2     Estimated Project Costs – Alabama Oyster Cultch Restoration

The total estimated cost to implement the Alabama Oyster Cultch Restoration project is $3,239,485.00, consistent with Sections 11.8.4 and 11.8.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill
Programmatic and Phase III Early Restoration Plan and Programmatic Environmental
Impact Statement (the "Plan"), available at www.doi.gov/deepwaterhorizon, which was
adopted by the Trustees after public review and comment.  Public comments received on
the Plan are summarized in the Plan, and Trustees' responses to the comments are
included.  All public comments received on the Plan are included in full in the NRDA
Administrative Record for the Plan, which can be found at the same web address.

**APPENDIX C**

**NRD OFFSETS FOR ALABAMA OYSTER CULTCH RESTORATION PROJECT**

The NRD Offsets are:

A.   NRD Offsets are 578,000 Discounted Kilogram Years (dKgYrs) of oyster Secondary Productivity (based on ash-free dry weight of oyster tissue) in Alabama applicable to oyster Secondary Productivity (based on ash-free dry weight of oyster tissue) injuries in Alabama, as determined by the Trustees' total assessment of injury for the Oil Spill.

For the purposes of applying the NRD Offsets to the calculation of injury, the Parties agree as follows:

(1)   If the Offsets resulting from the Alabama Oyster Cultch Restoration Project exceed the injury to oyster Secondary Productivity (based on ash-free dry weight of oyster tissue) in Alabama then any remaining Offsets for oyster Secondary Productivity (based on ash-free dry weight of oyster tissue) are applicable to injuries to benthic Secondary Productivity in Alabama.

For purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by this Early Restoration Project are the Alabama Department of Conservation and Natural Resources, Geological Survey of Alabama, DOI, EPA, NOAA and USDA.

APPENDIX D

## GLOSSARY OF TERMS

These definitions are not considered to be a comprehensive list for all Early Restoration Projects under the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill executed April 20, 2011.  Future projects may require other definitions, including but not limited to, other definitions for habitats included in this list.

**Discounted Kilogram Years** is expressed in present value in 2010 kilogram years.

**Secondary Productivity:** The strict definition of secondary productivity is the rate of production of consumers (heterotrophs) in an ecosystem (Edmondson & Winberg, 1971). For purposes of the benthic secondary productivity offsets for the oyster cultch projects, it is more narrowly defined as production of herbivores and detritivores, (the P2 production level in Odum, 1959) and in particular, the net production of mobile and sessile invertebrate infauna and epifauna associated with hard bottom substrates. Oyster production is a portion of secondary productivity, and for oyster cultch projects it is defined as the secondary production attributed to oysters only.

*Odum 1959, Fundamental of Ecology, 2nd edition W.B. Saunders & Co Philadelphia, 546 p.*

*Edmondson, W.T. & G.G. Winberg, 1971, IBP Handbook on Secondary Productivity International Biome Programmed, London, 358 p.*

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Alabama Swift Tract Living Shoreline**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Alabama Swift Tract Living Shoreline Project ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011. Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference. This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources: the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources: for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A. The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B. The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

    i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

    ii.   addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

    iii.   seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

    iv.   is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

    v.   is feasible and cost effective.

C. The Early Restoration Project shall be implemented by the following Trustee(s): National Oceanic and Atmospheric Administration (NOAA) ("Implementing Trustee(s)").

2

D. Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E. All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE TRUSTEES

A.  BPXP shall provide total funding in the amount of $5,000,080 for the Early Restoration Project.  BPXP previously advanced funding in the amount of $139,681.80 to the Implementing Trustee for this Early Restoration Project pursuant to the "Advanced Funding Agreement Regarding Specified Phase III Deepwater Horizon Oil Spill Early Restoration Project Costs" dated January 31, 2014, between BPXP, the State and Federal Trustees, and the United States Department of Justice.  The Implementing Trustee received those funds on March 5, 2014.  BPXP shall provide the remaining funding in the amount of $4,860,398.20 in accordance with Paragraphs II.C. and II.D. below, absent the entry of a judicial stay or other court order that prevents project implementation or otherwise affects the terms of this Project Stipulation.  All funds provided to any Trustee under this Stipulation shall be paid and deposited in accordance with the instructions provided by the Implementing Trustee(s) pursuant to Paragraphs II.C. and II.D. below.

B.  The Trustees shall use the funds paid under this Stipulation only for implementation of the Early Restoration Project, including oversight, monitoring, corrective actions, maintenance, and any agreed upon contingency, except as provided in Paragraphs II.E. and II.F.  The estimated cost(s) of the Early Restoration Project is set forth in Appendix A.

C.  Initial Payment:  Within thirty (30) days of the filing of this Project Stipulation or receipt of written payment instructions from the Implementing Trustee(s), whichever is later, BPXP shall cause the transfer of $1,110,338.20 from the Early Restoration Subaccount[1] to the account or accounts and in the manner designated in the payment instructions.

D.  Additional Payments:  The remaining 75% of the amount specified in Paragraph II.A. shall be paid from the Early Restoration Subaccount as follows:

i.   The Implementing Trustee(s) elects to perform the Early Restoration Project with the use of contractor(s). Unless other payment arrangements are specified in Appendix A, BPXP shall transfer $1,250,020 from the Early Restoration Subaccount to the account or accounts designated by the Implementing Trustee(s) within fifteen (15) days after the date that BPXP receives written notice from the Implementing Trustee(s) of issuance of a Request for Proposal, or other appropriate applicable procurement mechanism, or within sixty (60) days of the filing of this Project Stipulation, whichever is later; such notice shall include written payment instructions.

ii.  BPXP shall transfer the remaining $2,500,040 from the Early Restoration Subaccount to the account or accounts designated in the payment instructions within fifteen (15) days of notice to BPXP of the selection of a contractor but before award of a contract to implement the Early

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

Restoration Project , or within seventy-five (75) days of the filing of this Project Stipulation, whichever is later.

E. Any and all funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the Trustee(s) has completed the Early Restoration Project, including all performance monitoring and corrective actions, shall be retained by the Trustees. Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete. BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

F. If implementation of the Early Restoration Project does not commence, as specified in Appendix A, by the end of the eighteenth (18th) month after the date all Parties have signed this Project Stipulation, unless the Parties agree otherwise, the Project Stipulation shall be void and the funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation that have not been spent and remain unobligated, along with any accrued interest, shall remain in the account or accounts to which they have been transferred and only be used for another project under a new Project Stipulation agreed to by all the Parties under the terms of the Framework Agreement.

G. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III. NRD OFFSETS

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees"). NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.  Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.  (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.  <u>EFFECT OF STIPULATION</u>

A.  This Project Stipulation is binding upon the Parties and their successors and assigns.

B.  Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C.  The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D.  Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E.  The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F.  Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.


V.  GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities.

B.  This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33  U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.G.

C.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E.  Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G.  The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H.  To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.


IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Swift Tract Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
Date

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____
Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____
Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Swift Tract Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

____10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

____10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

____10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

____10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Swift Tract Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

___10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

___10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Swift Tract Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

___10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

___10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Swift Tract Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Swift Tract Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


   10/2/14
Date

GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

13

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Swift Tract Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Swift Tract Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date


CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date                6/2/14


_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date


RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Swift Tract Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____  
Date

_____  
CARTER SMITH  
Texas Parks and Wildlife Department  
Executive Director  
4200 Smith School Road  
Austin, Texas 78744

_____  
Date

_____  
LARRY L. LAINE  
Texas General Land Office  
Deputy Land Commissioner and Chief Clerk  
P. O. Box 12873  
Austin, Texas 78711

October 2, 2014  
_____  
Date

_____  
RICHARD A. HYDE, P.E.  
Texas Commission on Environmental Quality  
Executive Director  
P. O. Box 13807  
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Alabama Swift Tract Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2 - OCT - 2014
_____
Date

_____

2 - Oct - 2014
_____
Date

_____

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:               Jean Martin, *or successor attorney assigned to manage Deepwater*
                    *Horizon natural Resource Damage Claims*

Address:            BP Legal Department
                    501 Westlake Park Blvd
                    Houston, Texas 77079

Telephone Number:   281-366-6060
Facsimile Number:   281-366-5901

15

**APPENDIX A**
**EARLY RESTORATION PROJECT**

# Appendix A:  Alabama Swift Tract Living Shoreline Project

## 1.0    INTRODUCTION

This document describes the Alabama Swift Tract Living Shoreline Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The Early Restoration Project will employ living shoreline techniques that utilize natural and/or artificial breakwater material to stabilize shorelines along an area in the eastern portion of Bon Secour Bay, Alabama, adjacent to an area named Swift Tract that is part of the Weeks Bay NERR.   Natural and/or artificial breakwaters will be constructed along approximately1.6 miles of shoreline to protect the shoreline and salt marsh habitat, and increase benthic secondary productivity.

Project activities will include placement of intertidal breakwaters waterward of the shoreline that would generally follow a +0.5 to +1.0 ft. Mean Lower Low Water (MLLW) target crest elevation. The crest widths of the breakwaters will be based on desired wave reduction and designed with a height that falls within the mean high and low water lines (intertidal).  The specific breakwater elevations and technique designs will be selected to maximize shoreline protection and meet federal and state regulatory requirements.

Figure 1.  Swift Tract Living Shoreline Location (next page)



## 3.0.    PROJECT IMPLEMENTATION

### 3.1    Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 11.4.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon filing of the Notice of Project Stipulation with the MDL Court.   Project implementation will be complete when the performance criteria consistent with Section 11.4.4 of the Plan have been met.

### 3.2 Estimated Project Costs – Swift Tract Living Shoreline Project

The total estimated cost to implement the Swift Tract Living Shoreline Project is $5,000,080, consistent with Sections 11.4.4 and 11.4.6 of the Plan.

## APPENDIX B

## <u>EARLY RESTORATION PLAN</u>

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment. Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C
## NRD OFFSETS

The NRD Offsets are:

- 18.14 Discounted Service Acre Years ("DSAYs") of salt marsh habitat in Alabama, applicable to Salt Marsh Habitat injuries in Alabama, as determined by the Trustees' total assessment of injury for the Oil Spill;  and

- 75,727 Discounted Kilogram Years (DKg-Ys) of benthic secondary productivity in Alabama, applicable to benthic Secondary Productivity injuries in Alabama as determined by the Trustees' total assessment of injury for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury, the Parties agree as follows:

- If the Offsets resulting from the Alabama Swift Tract Living Shoreline Project exceed the injury to benthic Secondary Productivity in Alabama then any remaining Offsets for benthic Secondary Productivity are applicable to injuries to benthic Secondary Productivity within federal waters on the Continental Shelf, excluding those associated with mesophotic reefs. The NRD Offsets shall not apply to injuries in Florida, Louisiana, Mississippi, and/or Texas.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by this Early Restoration Project are the Alabama Department of Conservation and Natural Resources, the Geological Survey of Alabama, DOI, EPA, NOAA, and USDA.

## APPENDIX D

## GLOSSARY OF TERMS

These definitions are not considered to be a comprehensive list for all Early Restoration Projects under the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill executed April 20, 2011.  Future projects may require other definitions, including but not limited to, other definitions for habitats included in this list.

**Continental Shelf** shall mean the contiguous shallow platforms or terraces that surround most of the continents and are terminated seaward by a relatively sharp break in slope, called the shelf edge or shelf break. In the Gulf of Mexico, this generally follows the 200-meter isobaths.

**Salt Marsh Habitat** refers to transitional marsh areas between land and water that occur in coastal areas at salinities at or approaching that of ocean water. Typical vegetation in salt marsh habitat includes species such as *Spartina alterniflora*, *Juncus romerianus*, and *Distichlis spicata.*

**Secondary Productivity**: The strict definition of secondary productivity is the rate of production of consumers (heterotrophs) in an ecosystem (Edmondson & Winberg, 1971). For purposes of the offsets for the living shoreline projects, it is more narrowly defined as production of herbivores and detritivores, (the P2 production level in Odum, 1959) and in particular, the net production of mobile and sessile invertebrate infauna and epifauna associated with hard bottom substrates.

*Odum 1959, Fundamental of Ecology, 2nd edition W.B. Saunders & Co Philadelphia, 546 p.*

*Edmondson, W.T. & G.G. Winberg, 1971, IBP Handbook on Secondary Productivity International Biome Programmed, London, 358 p.*

**Discounted Kilogram Years** is expressed in present value 2010 kilogram years.

**Discounted Service Acre Years** is expressed in present value 2010 service acre years.

**Stipulation Regarding Early Restoration Project**
**for the Deepwater Horizon Oil Spill -**
**Gulf State Park Enhancement Project**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Gulf State Park Enhancement Project ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

v.   is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Alabama Department of Conservation and Natural Resources ("Implementing Trustee(s)").

2

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
TRUSTEES

A.  BPXP shall provide total funding in the amount of $85,505,305.00 for the Early
Restoration Project.  BPXP previously advanced funding in the amount of
$1,740,000.00 to the Implementing Trustee for this Early Restoration Project
pursuant to the "Advanced Funding Agreement Regarding Specified Phase III
Deepwater Horizon Oil Spill Early Restoration Project Costs" dated January 31,
2014, between BPXP, the State and Federal Trustees, and the United States
Department of Justice.  The Implementing Trustee received those funds on March
5, 2014.  BPXP shall provide the remaining funding in the amount of
$83,765,305.00 in accordance with Paragraph II.C. below.  All funds provided to
any Trustee under this Stipulation shall be paid and deposited in accordance with
the instructions provided by the Implementing Trustee(s) pursuant to Paragraphs
II.C. below.

B.  The Trustees shall use the funds paid under this Stipulation only for
implementation of the Early Restoration Project, including oversight, monitoring,
corrective actions, maintenance, and any agreed upon contingencies, except as
provided in Paragraphs II.D. and II.E.  An estimated cost for the Early Restoration
Project is set forth in Appendix A.

C.   Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
cause the transfer of $83,765,305.00 from the Early Restoration Subaccount[1] to
the account or accounts and in the manner designated in instructions provided by
the Implementing Trustee(s).

D.  Any and all funds transferred pursuant to Paragraphs II.C. of this Project
Stipulation, along with any accrued interest, that have not been spent and remain
unobligated after the Trustee(s) has completed the Early Restoration Project (or
Replacement Project(s), if applicable), including all performance monitoring and
corrective actions, shall be retained by the Trustees.  Such funds may only be used
by the Implementing Trustee(s) for another restoration project agreed to by all
Trustees, provided, however, that such funds may not be used for another project
unless and until the Implementing Trustee(s) has confirmed in writing that the
Early Restoration Project is complete.  BPXP shall not be entitled to any
additional NRD Offsets or other credits related to any additional restoration work
performed with such retained funds.

E.  At any time after BPXP has made full payment pursuant to Paragraph II.C., the
Trustees may for good cause elect not to implement the Early Restoration Project.
If the Trustees elect not to implement the Early Restoration Project in
substantially the same form as described in Appendix A, the Parties agree that the
Trustees shall apply any unspent funds in accordance with the following
provisions:

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

1. The Implementing Trustee(s) for the Early Restoration Project or an affected trustee designated by the Implementing Trustee(s) shall retain the unspent funds paid by BPXP under this Project Stipulation;

2. The Trustees shall apply the unspent funds to one or more replacement project(s) ("Replacement Project(s)"), which may include a modified version of the project described in Appendix A.  Any Replacement Project(s) shall be designed to compensate for lost recreational use provided by natural resources injured in Alabama;

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount.  BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.  <u>NRD OFFSETS</u>

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within

the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B.  Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.  Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.  Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.  (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic

scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.   EFFECT OF STIPULATION

A.   This Project Stipulation is binding upon the Parties and their successors and assigns.

B.   Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C.   The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D.   Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E.   The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F.   Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.   GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A.   Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration. BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document. This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf State Park Enhancement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf State Park Enhancement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:


_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


___10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


___10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


___10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


___10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf State Park Enhancement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:


____10/2/14_____
Date

_____
N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130


____10/2/14_____
Date

_____
BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf State Park Enhancement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

_____10/2/14_____          _____
Date                                 LARRY MORGAN
                                     Florida Department of Environmental
                                     Protection
                                     Senior Deputy General Counsel
                                     3900 Commonwealth Blvd., MS 35
                                     Tallahassee, Florida 32399-3000


_____10/2/14_____          _____
Date                                 NICK WILEY
                                     Florida Fish and Wildlife Conservation
                                     Commission
                                     Executive Director
                                     620 South Meridian Street
                                     Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf State Park Enhancement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf State Park Enhancement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


   10/2/14
_____

Date

GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf State Park Enhancement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf State Park Enhancement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date    10/2/14

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf State Park Enhancement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


October 2, 2014
_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf State Park Enhancement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:


2-OCT-2014
_____
Date


2 - Oct - 2014
_____
Date


Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:               Jean Martin, *or successor attorney assigned to manage Deepwater*
                    *Horizon natural Resource Damage Claims*
Address:            BP Legal Department
                    501 Westlake Park Blvd
                    Houston, Texas 77079
Telephone Number:   281-366-6060
Facsimile Number:   281-366-5901

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Gulf State Park Enhancement Project

## 1.0     INTRODUCTION

This document describes the Gulf State Park Enhancement Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of a Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0     PROJECT DESCRIPTION

The Early Restoration Project will implement ecologically-sensitive improvements to Gulf State Park, located in Baldwin County, Alabama, including: (1) rebuilding the Gulf State Park Lodge and Conference Center; (2) building an Interpretive Center; (3) building a Research and Education Center; (4) visitor enhancements including trail improvements and extensions, overlooks, interpretive kiosks and signage, rest areas, bike racks, bird watching blinds, or other visitor enhancements; and (5) ecological restoration and enhancement of degraded dune habitat.



## 3.0     PROJECT IMPLEMENTATION

### 3.1     Performance Criteria, Monitoring and Maintenance

Project performance will be assessed as defined in Section 11.6.4 of the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon filing of the Notice of Project Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 11.6.4 of the Plan have been met.

### 3.2     Estimated Project Costs – Gulf State Park Enhancement Project

The total estimated cost to implement the Gulf State Park Enhancement Project is $85,505,305.00, consistent with Sections 11.6.4 and 11.6.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Programmatic Environmental Impact Statement ("Plan"), available at www.doi.gov/deepwaterhorizon, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C

## **NRD OFFSETS**

The NRD Offsets are $171,010,610 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Alabama, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For the purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

(1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

(2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of the damages.

For Purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by this Early Restoration Project are the Alabama Department of Conservation and Natural Resources, Geological Survey of Alabama, DOI, EPA, NOAA and USDA.

**APPENDIX D**

## **GLOSSARY OF TERMS**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Beach Enhancement at the Gulf Island National Seashore**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Beach Enhancement at the Gulf Island National Seashore ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.    contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.   addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii.  seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.   is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.    is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): U.S. Department of the Interior ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES

A.   BPXP shall provide total funding in the amount of $10,836,055.00 for the Early
     Restoration Project.  All funds provided to any Trustee under this Stipulation shall
     be paid and deposited in accordance with the instructions provided by the
     Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.   The Trustees shall use the funds paid under this Stipulation only for
     implementation of the Early Restoration Project, including oversight, monitoring,
     corrective actions, and any agreed upon contingencies, except as provided in
     Paragraphs II.D. and II.E.  An estimated cost for the Early Restoration Project is
     set forth in Appendix A.

C.    Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
      cause the transfer of 100% of the funds specified in Paragraph II.A. from the
      Early Restoration Subaccount[1] to the account or accounts in the manner
      designated in instructions provided by the Implementing Trustee(s).

D.   Any and all funds transferred pursuant to Paragraphs II.C. of this Project
     Stipulation, along with any accrued interest, that have not been spent and remain
     unobligated after the Trustee(s) has completed the Early Restoration Project (or
     Replacement Project(s), if applicable), including all performance monitoring and
     corrective actions, shall be retained by the Trustees.  Such funds may only be used
     by the Implementing Trustee(s) for another restoration project agreed to by all
     Trustees, provided, however, that such funds may not be used for another project
     unless and until the Implementing Trustee(s) has confirmed in writing that the
     Early Restoration Project is complete.  BPXP shall not be entitled to any
     additional NRD Offsets or other credits related to any additional restoration work
     performed with such retained funds.

E.   At any time after BPXP has made full payment pursuant to Paragraph II.C., the
     Trustees may for good cause elect not to implement the Early Restoration Project.
     If the Trustees elect not to implement the Early Restoration Project in
     substantially the same form as described in Appendix A, the Parties agree that the
     Trustees shall apply any unspent funds in accordance with the following
     provisions:

     1.   The Implementing Trustee(s) for the Early Restoration Project or an
          affected trustee designated by the Implementing Trustee(s) shall retain the
          unspent funds paid by BPXP under this Project Stipulation;

     2.   The Trustees shall apply the unspent funds to one or more replacement
          project(s) ("Replacement Project(s)"), which may include a modified
          version of the project described in Appendix A.  Any Replacement
          Project(s) shall be designed to compensate for lost recreational use
          provided by natural resources injured on DOI lands in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount.  BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.  NRD OFFSETS

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

5

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project. Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1) Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2) If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal. The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission"). After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets. Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3) To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV. <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V. <u>GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS</u>

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33  U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration. BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document. This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Beach Enhancement at the Gulf Island National Seashore Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
Date

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Beach Enhancement at the Gulf Island National Seashore Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____10/2/14_____
Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____10/2/14_____
Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____10/2/14_____
Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____10/2/14_____
Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Beach Enhancement at the Gulf Island National Seashore Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_____10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

_____10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Beach Enhancement at the Gulf Island National Seashore Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

__10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental
Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

__10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation
Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Beach Enhancement at the Gulf Island National Seashore Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

12

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Beach Enhancement at the Gulf Island National Seashore Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


   10/2/14
Date

GARY C. RIKARD
Mississippi Department of Environmental
Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Beach Enhancement at the Gulf Island National Seashore Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Beach Enhancement at the Gulf Island National Seashore Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____(6|2|14)_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Beach Enhancement at the Gulf Island National Seashore Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

October 2, 2014
_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Beach Enhancement at the Gulf Island National Seashore Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

_2 -OCT -2014_
Date

_2-Oct - 2014_
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:      Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:      BP Legal Department
501 Westlake Park Blvd
Houston, Texas 77079

Telephone Number:    281-366-6060
Facsimile Number:    281-366-5901

APPENDIX A

<u>**EARLY RESTORATION PROJECT**</u>

# Appendix A: Beach Enhancement Project at Gulf Islands National Seashore

## 1.0    INTRODUCTION

This document describes the Beach Enhancement Project at Gulf Islands National Seashore (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

This project involves removing fragments of asphalt and road-base material (limestone aggregate and some chunks of clay) that have been scattered widely over the Fort Pickens, Santa Rosa, and Perdido Key areas of the Florida District of Gulf Islands National Seashore, managed by the National Park Service, and replanting areas, as needed, where materials are removed. These materials originated from roads damaged during several storms and hurricanes. The asphalt- and road-base-covered conditions are clearly unnatural and impact the visitor experience both aesthetically and physically in these National Seashore lands. This project will enhance the visitor experience in the cleaned-up areas. The exact method for removing the material will be left to the contractor hired if the project is approved, but will involve primarily mechanized equipment, supplemented by small crews using hand tools.



## 3.0    PROJECT IMPLEMENTATION

### 3.1    Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.2.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.2.4 of the Plan have been met.

### 3.2    Estimated Project Costs – Beach Enhancement Project at Gulf Islands National Seashore

The total estimated cost to implement the Beach Enhancement Project at Gulf Islands National Seashore is $10,836,055.00, consistent with Sections 12.2.1, 12.2.2.1 and 12.2.6 of the Plan.

**APPENDIX B**

**EARLY RESTORATION PLAN**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at www.doi.gov/deepwaterhorizon, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

# APPENDIX C

## __NRD OFFSETS__

The NRD Offsets are $21,672,110, expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured on DOI lands in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

(1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

(2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by this Early Restoration Project are DOI, EPA, NOAA, USDA, the Florida Department of Environmental Protection, and the Florida Fish and Wildlife Conservation Commission.

**APPENDIX D**

**<u>GLOSSARY OF TERMS</u>**


There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project**
**for the Deepwater Horizon Oil Spill -**
**Gulf Islands National Seashore Ferry Project**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil
Spill – Gulf Islands National Seashore Ferry Project ("Project Stipulation" or
"Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the
State Trustees and Federal Trustees as defined herein (collectively, with the United States
Department of Justice, the "Parties") in accordance with the Framework for Early
Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill
("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this
Project Stipulation is governed by the Framework Agreement and incorporates its terms
by reference.  This Project Stipulation will be effective when signed by an authorized
representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on
behalf of the following federal trustees of natural resources:  the Secretary of the United
States Department of the Interior ("DOI"), through its applicable bureaus, the
Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the
Administrator of the United States Environmental Protection Agency ("EPA"), and the
Secretary of the United States Department of Agriculture ("USDA") (collectively
"Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama,
Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through
the following state trustees of natural resources:  for the State of Alabama, the Alabama
Department of Conservation and Natural Resources and the Geological Survey of
Alabama; for the State of Florida, the Florida Department of Environmental Protection
and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana,
the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill
Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana
Department of Wildlife and Fisheries, and the Louisiana Department of Natural
Resources; for the State of Mississippi, the Mississippi Department of Environmental
Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas
General Land Office, and the Texas Commission on Environmental Quality (collectively,
"State Trustees"; the State and Federal Trustees collectively are referred to as the
"Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit
Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of
Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil
Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment
("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law
provisions, to determine Natural Resource Damages resulting from the Oil Spill in
accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the
Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and
Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"),
dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A. The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B. The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.   is feasible and cost effective.

C. The Early Restoration Project shall be implemented by the following Trustee(s): U.S. Department of the Interior ("Implementing Trustee(s)").

2

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.  **FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE TRUSTEES**

A.  BPXP shall provide total funding in the amount of $4,020,000.00 for the Early Restoration Project.  All funds provided to any Trustee under this Stipulation shall be paid and deposited in accordance with the instructions provided by the Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.  The Trustees shall use the funds paid under this Stipulation only for implementation of the Early Restoration Project, including oversight, monitoring, corrective actions, and any agreed upon contingencies, except as provided in Paragraphs II.D. and II.E.  An estimated cost for the Early Restoration Project is set forth in Appendix A.

C.   Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall cause the transfer of 100% of the funds specified in Paragraph II.A. from the Early Restoration Subaccount[1] to the account or accounts and in the manner designated in instructions provided by the Implementing Trustee(s).

D.  Any and all funds transferred pursuant to Paragraphs II.C. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the Trustee(s) has completed the Early Restoration Project (or Replacement Project(s), if applicable), including all performance monitoring and corrective actions, shall be retained by the Trustees.  Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete.  BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

E.  At any time after BPXP has made full payment pursuant to Paragraph II.C., the Trustees may for good cause elect not to implement the Early Restoration Project. If the Trustees elect not to implement the Early Restoration Project in substantially the same form as described in Appendix A, the Parties agree that the Trustees shall apply any unspent funds in accordance with the following provisions:

1.  The Implementing Trustee(s) for the Early Restoration Project or an affected trustee designated by the Implementing Trustee(s) shall retain the unspent funds paid by BPXP under this Project Stipulation;

2.  The Trustees shall apply the unspent funds to one or more replacement project(s) ("Replacement Project(s)"), which may include a modified version of the project described in Appendix A.  Any Replacement Project(s) shall be designed to compensate for lost recreational use provided by natural resources injured on DOI lands in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount. BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.   <u>NRD OFFSETS</u>

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees"). NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

5

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.


IV. <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.  GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Islands National Seashore Ferry Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


_____
Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Islands National Seashore Ferry Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

| | |
|---|---|
| _____ | _____ |
| Date | SAM HIRSCH |
| | Acting Assistant Attorney General |
| | Environment & Natural Resources Division |
| | U.S. Department of Justice |
| | Washington, D.C. 20530 |

| | |
|---|---|
| ___10/2/14___ | _____ |
| Date | CYNTHIA K. DOHNER |
| | Deepwater Horizon Authorized Official |
| | Department of the Interior |
| | 1875 Century Boulevard |
| | Atlanta, Georgia 30345 |

| | |
|---|---|
| ___10/2/14___ | _____ |
| Date | KENNETH J. KOPOCIS |
| | U.S. Environmental Protection Agency |
| | Principal Representative |
| | 1200 Pennsylvania Ave. NW |
| | Washington, D.C. 20460 |

| | |
|---|---|
| ___10/2/14___ | _____ |
| Date | CRAIG R. O'CONNOR |
| | National Oceanic and Atmospheric |
| | Administration |
| | Special Counsel |
| | 7600 Sand Point Way NE |
| | Seattle, WA 98155 |

| | |
|---|---|
| ___10/2/14___ | _____ |
| Date | ANN C. MILLS |
| | U.S. Department of Agriculture |
| | Deputy Under Secretary for Natural |
| | Resources and Environment |
| | 1400 Independence Ave. SW |
| | Washington, D.C. 20250 |

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Islands National Seashore Ferry Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

_10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Islands National Seashore Ferry Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:


____10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000


____10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Islands National Seashore Ferry Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Islands National Seashore Ferry Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


__10/2/14_____          _____
Date                                 GARY C. RIKARD
                                     Mississippi Department of Environmental
                                     Quality
                                     Executive Director
                                     P.O. Box 2261
                                     Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Islands National Seashore Ferry Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Islands National Seashore Ferry Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____10/2/14_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Islands National Seashore Ferry Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

                     _____
                     CARTER SMITH
                     Texas Parks and Wildlife Department
                     Executive Director
                     4200 Smith School Road
                     Austin, Texas 78744


_____
Date

                     _____
                     LARRY L. LAINE
                     Texas General Land Office
                     Deputy Land Commissioner and Chief Clerk
                     P. O. Box 12873
                     Austin, Texas 78711


October 2, 2014
_____
Date

                     _____
                     RICHARD A. HYDE, P.E.
                     Texas Commission on Environmental
                     Quality
                     Executive Director
                     P. O. Box 13807
                     Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Islands National Seashore Ferry Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2-OCT-2014
_____
Date

1-Oct-2014
_____
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:        Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:     BP Legal Department
                 501 Westlake Park Blvd
                 Houston, Texas 77079

Telephone Number:    281-366-6060
Facsimile Number:     281-366-5901

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Gulf Islands National Seashore Ferry Project

## 1.0    INTRODUCTION

This document describes the Gulf Islands National Seashore Ferry Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of this project is to restore a portion of the lost recreational use of the Gulf Islands National Seashore caused by the Oil Spill. The project involves the purchase of up to three ferries to be used to ferry visitors (no automobiles) between the City of Pensacola, Pensacola Beach, and the Fort Pickens area of the Gulf Islands National Seashore (Seashore) in Florida, providing an alternative means of access to the Fort Pickens area of the Seashore. Operational responsibility for the boats (i.e., all aspects of the ferry service including preparing a business plan, staffing, ticket sales, vessel maintenance and repairs, insurance, licensing, getting regular inspections, etc.) has not yet been determined but would likely be either Escambia County or the National Park Service (or their contractor).



**3.0    PROJECT IMPLEMENTATION**

**3.1    Performance Criteria, Monitoring, and Maintenance**

Project performance will be assessed as defined in Section 12.4.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.4.4 of the Plan have been met.

**3.2    Estimated Project Costs –Gulf Islands National Seashore Ferry Project**

The total estimated cost to implement the Gulf Islands National Seashore Ferry Project is $4,020,000.00, consistent with Sections 12.4.2 and 12.4.6 of the Plan.

**APPENDIX B**

**EARLY RESTORATION PLAN**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at www.doi.gov/deepwaterhorizon, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C

## <u>NRD OFFSETS</u>

The NRD Offsets are $8,040,000, expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured on DOI lands in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

>    (1)  The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

>    (2)  The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by this Early Restoration Project are DOI, EPA, NOAA, USDA, the Florida Department of Environmental Protection, and the Florida Fish and Wildlife Conservation Commission.

**APPENDIX D**

**GLOSSARY OF TERMS**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project**
**for the Deepwater Horizon Oil Spill -**
**Apalachicola River Wildlife and Environmental Area Fishing and**
**Wildlife Viewing Access Improvements**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"),

dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.   The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.   The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.   addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii.   seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.   is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.   is feasible and cost effective.

2

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection and Florida Fish and Wildlife Conservation Commission ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

3

II.    FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
       TRUSTEES

A.  BPXP shall provide total funding in the amount of $262,989.00 for the Early
    Restoration Project.  All funds provided to any Trustee under this Stipulation shall
    be paid and deposited in accordance with the instructions provided by the
    Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.  The Trustees shall use the funds paid under this Stipulation only for
    implementation of the Early Restoration Project, including oversight, monitoring,
    corrective actions, maintenance, and any agreed upon contingency, except as
    provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
    Project is set forth in Appendix A.

C.  Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
    cause the transfer of 100% of the funds specified in Paragraph II.A. from the
    Early Restoration Subaccount[1] to the account or accounts and in the manner
    designated in instructions provided by the Implementing Trustee(s).

D.  Any and all funds transferred pursuant to Paragraphs II.C. of this Project
    Stipulation, along with any accrued interest, that have not been spent and remain
    unobligated after the Trustee(s) has completed the Early Restoration Project (or
    Replacement Project(s), if applicable), including all performance monitoring and
    corrective actions, shall be retained by the Trustees.  Such funds may only be used
    by the Implementing Trustee(s) for another restoration project agreed to by all
    Trustees, provided, however, that such funds may not be used for another project
    unless and until the Implementing Trustee(s) has confirmed in writing that the
    Early Restoration Project is complete.  BPXP shall not be entitled to any
    additional NRD Offsets or other credits related to any additional restoration work
    performed with such retained funds.

E.  At any time after BPXP has made full payment pursuant to Paragraph II.C., the
    Trustees may for good cause elect not to implement the Early Restoration Project.
    If the Trustees elect not to implement the Early Restoration Project in
    substantially the same form as described in Appendix A, the Parties agree that the
    Trustees shall apply any unspent funds in accordance with the following
    provisions:

    1.  The Implementing Trustee(s) for the Early Restoration Project or an
        affected trustee designated by the Implementing Trustee(s) shall retain the
        unspent funds paid by BPXP under this Project Stipulation;

    2.  The Trustees shall apply the unspent funds to one or more replacement
        project(s) ("Replacement Project(s)"), which may include a modified
        version of the project described in Appendix A.  Any Replacement
        Project(s) shall be designed to compensate for lost recreational use
        provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount.  BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.   NRD OFFSETS

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

5

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation.  Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.  <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B.  Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C.  The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D.  Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E.  The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F.  Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.  <u>GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS</u>

A.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B.  This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33  U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.


IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
Date

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____
Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____
Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


___10/2/14_____
Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


___10/2/14_____
Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


___10/2/14_____
Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


___10/2/14_____
Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_____10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

_____10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

10

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

___10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

___10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:

    10/2/14
Date

GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


____(o\z\ц_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744



_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


October 2, 2014
_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:


2-OCT-2014
Date


2-Oct-2014
Date


Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:                    Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:                 BP Legal Department
                         501 Westlake Park Blvd
                         Houston, Texas 77079

Telephone Number:  281-366-6060
Facsimile Number:  281-366-5901

**EARLY RESTORATION PROJECT**

# Appendix A:  Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project

## 1.0    INTRODUCTION

This document describes the Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational use and wildlife viewing opportunities by improving access to the wildlife and environmental area.  The Early Restoration Project will improve or enhance the following sites:

1.  Cash Bayou in the Apalachicola River Wildlife and Environmental Area (See Figure 1 for general project location).  The improvements include constructing a fishing and wildlife observation structure and parking area; and
2.  Sand Beach in the Apalachicola River Wildlife and Environmental Area (See Figure 2 for general project location).  The improvements include constructing an elevated boardwalk that will be built on an existing, periodically wet interpretative trail.



Figure 1. Location of Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project – Cash Bayou location.



Figure 2. Location of Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project – Sand Beach location.

### 3.0     PROJECT IMPLEMENTATION

### 3.1     Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Sections 12.68.4 and 12.69.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Sections 12.68.4 and 12.69.4 of the Plan have been met.

### 3.2     Estimated Project Cost

The total estimated cost to implement the Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project is $262,989.00, consistent with Sections 12.68.4, 12.69.4, 12.68.6 and 12.69.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill
Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic
Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>,
which was adopted by the Trustees after public review and comment.  Public comments
received on the Plan are summarized in the Plan, and Trustees' responses to the
comments are included.  All public comments received on the Plan are included in full in
the NRDA Administrative Record for the Plan, which can be found at the same web
address.

**APPENDIX C**

**NRD OFFSETS**

The NRD Offsets are $525,978.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

    (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

    (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Apalachicola River Wildlife and Environmental Area Fishing and Wildlife Viewing Access Improvements Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

**GLOSSARY OF TERMS**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Bald Point State Park Recreation Areas**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Bald Point State Park Recreation Areas ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

    i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

    ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

    iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

    iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

    v.   is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES

A.  BPXP shall provide total funding in the amount of $470,800.00 for the Early
    Restoration Project.  All funds provided to any Trustee under this Stipulation shall
    be paid and deposited in accordance with the instructions provided by the
    Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.  The Trustees shall use the funds paid under this Stipulation only for
    implementation of the Early Restoration Project, including oversight, monitoring,
    corrective actions, maintenance, and any agreed upon contingency, except as
    provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
    Project is set forth in Appendix A.

C.  Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
    cause the transfer of 100% of the funds specified in Paragraph II.A. from the
    Early Restoration Subaccount[1] to the account or accounts and in the manner
    designated in instructions provided by the Implementing Trustee(s).

D.  Any and all funds transferred pursuant to Paragraphs II.C. of this Project
    Stipulation, along with any accrued interest, that have not been spent and remain
    unobligated after the Trustee(s) has completed the Early Restoration Project (or
    Replacement Project(s), if applicable), including all performance monitoring and
    corrective actions, shall be retained by the Trustees.  Such funds may only be used
    by the Implementing Trustee(s) for another restoration project agreed to by all
    Trustees, provided, however, that such funds may not be used for another project
    unless and until the Implementing Trustee(s) has confirmed in writing that the
    Early Restoration Project is complete.  BPXP shall not be entitled to any
    additional NRD Offsets or other credits related to any additional restoration work
    performed with such retained funds.

E.  At any time after BPXP has made full payment pursuant to Paragraph II.C., the
    Trustees may for good cause elect not to implement the Early Restoration Project.
    If the Trustees elect not to implement the Early Restoration Project in
    substantially the same form as described in Appendix A, the Parties agree that the
    Trustees shall apply any unspent funds in accordance with the following
    provisions:

    1.  The Implementing Trustee(s) for the Early Restoration Project or an
        affected trustee designated by the Implementing Trustee(s) shall retain the
        unspent funds paid by BPXP under this Project Stipulation;

    2.  The Trustees shall apply the unspent funds to one or more replacement
        project(s) ("Replacement Project(s)"), which may include a modified
        version of the project described in Appendix A.  Any Replacement
        Project(s) shall be designed to compensate for lost recreational use
        provided by natural resources injured in Florida;

    3.  The Trustees' selection of Replacement Project(s) under these provisions
        shall be subject to the criteria set forth in Paragraph 6 of the Framework

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount.  BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.   NRD OFFSETS

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

5

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project. Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal. The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission"). After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets. Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.  <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B.  Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C.  The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D.  Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E.  The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F.  Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.   GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B.  This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33  U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bald Point State Park Recreation Areas Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_10/2/14_
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bald Point State Park Recreation Areas Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:


| | |
|---|---|
| _____ | _____ |
| Date | SAM HIRSCH |

Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


   10/2/14
Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


   10/2/14
Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


   10/2/14
Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


   10/2/14
Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bald Point State Park Recreation Areas Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_____10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

_____10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bald Point State Park Recreation Areas Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

_____10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental
Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

_____10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation
Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bald Point State Park Recreation Areas Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____       _____
Date                                                          KYLE GRAHAM
                                                                  Louisiana Coastal Protection and
                                                                  Restoration Authority
                                                                  Executive Director
                                                                  P.O. Box 44027
                                                                  Baton Rouge, Louisiana 70804

10/2/14
_____       _____
Date                                                          BRIAN WYNNE
                                                                  Louisiana Oil Spill Coordinator's Office
                                                                  Director
                                                                  P.O. Box 66614
                                                                  Baton Rouge, Louisiana 70896

10/2/14
_____       _____
Date                                                          PEGGY HATCH
                                                                  Louisiana Department of Environmental
                                                                  Quality
                                                                  Secretary
                                                                  P.O. Box 4301
                                                                  Baton Rouge, Louisiana 70821-4301

10/2/14
_____       _____
Date                                                          ROBERT BARHAM
                                                                  Louisiana Department of Wildlife and
                                                                  Fisheries
                                                                  Secretary
                                                                  P.O. Box 98000
                                                                  Baton Rouge, Louisiana 70898

10/2/14
_____       _____
Date                                                          STEVE CHUSTZ
                                                                  Louisiana Department of Natural Resources
                                                                  Secretary
                                                                  P.O. Box 94396
                                                                  Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bald Point State Park Recreation Areas Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


  10/2/14
Date

GARY C. RIKARD
Mississippi Department of Environmental
Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

13

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bald Point State Park Recreation Areas Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bald Point State Park Recreation Areas Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

__10/2/14_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bald Point State Park Recreation Areas Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


October 2, 2014
_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bald Point State Park Recreation Areas Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2- OCT - 2014
Date

2 - Oct - 2014
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:               Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:            BP Legal Department
                    501 Westlake Park Blvd
                    Houston, Texas 77079

Telephone Number:   281-366-6060
Facsimile Number:   281-366-5901

APPENDIX A

**<u>EARLY RESTORATION PROJECT</u>**

# Appendix A:  Bald Point State Park Recreation Areas Project

## 1.0    INTRODUCTION

This document describes the Bald Point State Park Recreation Areas Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational boating and beach use opportunities by improving the existing visitor areas.  The Early Restoration Project will improve the existing visitor areas at Bald Point State Park in Franklin County (See Figure 1 for general project location).  The project activity will involve constructing a visitor day-use area including picnic pavilions, a restroom with an aerobic treatment system and associated septic system drainfield, and an integrated system of boardwalks providing access through the area to a new floating dock, and a canoe/kayak launch area on Chaires Creek.



Figure 1. Location of Bald Point State Park Recreation Areas Project.

## 3.0    PROJECT IMPLEMENTATION

### 3.1    Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.60.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.60.4 of the Plan have been met.

### 3.2    Estimated Project Costs

The total estimated cost to implement the Bald Point State Park Recreation Areas Project is $470,800.00, consistent with Sections 12.60.4 and 12.60.6 of the Plan.

17

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C

## __NRD OFFSETS__

The NRD Offsets are $941,600.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

    (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

    (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Bald Point State Park Recreation Areas Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

## GLOSSARY OF TERMS

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project**
**for the Deepwater Horizon Oil Spill -**
**Big Lagoon State Park Boat Ramp Improvement**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Big Lagoon State Park Boat Ramp Improvement ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A. The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B. The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.   is feasible and cost effective.

C. The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

2

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES

A.   BPXP shall provide total funding in the amount of $1,483,020.00 for the Early
     Restoration Project.  All funds provided to any Trustee under this Stipulation shall
     be paid and deposited in accordance with the instructions provided by the
     Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.   The Trustees shall use the funds paid under this Stipulation only for
     implementation of the Early Restoration Project, including oversight, monitoring,
     corrective actions, maintenance, and any agreed upon contingency, except as
     provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
     Project is set forth in Appendix A.

C.   Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
     cause the transfer of 100% of the funds specified in Paragraph II.A. from the
     Early Restoration Subaccount[1] to the account or accounts and in the manner
     designated in instructions provided by the Implementing Trustee(s).

D.   Any and all funds transferred pursuant to Paragraphs II.C. of this Project
     Stipulation, along with any accrued interest, that have not been spent and remain
     unobligated after the Trustee(s) has completed the Early Restoration Project (or
     Replacement Project(s), if applicable), including all performance monitoring and
     corrective actions, shall be retained by the Trustees.  Such funds may only be used
     by the Implementing Trustee(s) for another restoration project agreed to by all
     Trustees, provided, however, that such funds may not be used for another project
     unless and until the Implementing Trustee(s) has confirmed in writing that the
     Early Restoration Project is complete.  BPXP shall not be entitled to any
     additional NRD Offsets or other credits related to any additional restoration work
     performed with such retained funds.

E.   At any time after BPXP has made full payment pursuant to Paragraph II.C., the
     Trustees may for good cause elect not to implement the Early Restoration Project.
     If the Trustees elect not to implement the Early Restoration Project in
     substantially the same form as described in Appendix A, the Parties agree that the
     Trustees shall apply any unspent funds in accordance with the following
     provisions:

     1.   The Implementing Trustee(s) for the Early Restoration Project or an
          affected trustee designated by the Implementing Trustee(s) shall retain the
          unspent funds paid by BPXP under this Project Stipulation;

     2.   The Trustees shall apply the unspent funds to one or more replacement
          project(s) ("Replacement Project(s)"), which may include a modified
          version of the project described in Appendix A.  Any Replacement
          Project(s) shall be designed to compensate for lost recreational use
          provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount. BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.


III. <u>NRD OFFSETS</u>

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees"). NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV. <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.  GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33  U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration. BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document. This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Big Lagoon State Park Boat Ramp Improvement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/8/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Big Lagoon State Park Boat Ramp Improvement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

___10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

___10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

___10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

___10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Big Lagoon State Park Boat Ramp Improvement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

 10/2/14
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

 10/2/14
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Big Lagoon State Park Boat Ramp Improvement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

__10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

__10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Big Lagoon State Park Boat Ramp Improvement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____

Date

_____

KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____

Date

_____

BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____

Date

_____

PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____

Date

_____

ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____

Date

_____

STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Big Lagoon State Park Boat Ramp Improvement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


   10/2/14
Date

GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Big Lagoon State Park Boat Ramp Improvement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Big Lagoon State Park Boat Ramp Improvement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Big Lagoon State Park Boat Ramp Improvement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

October 2, 2014
_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Big Lagoon State Park Boat Ramp Improvement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:


2-OCT-2014

Date


2-Oct-2014

Date


Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

| | |
|---|---|
| Name: | Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims* |
| Address: | BP Legal Department |
| | 501 Westlake Park Blvd |
| | Houston, Texas 77079 |
| Telephone Number: | 281-366-6060 |
| Facsimile Number: | 281-366-5901 |

**APPENDIX A**

**<u>EARLY RESTORATION PROJECT</u>**

# Appendix A:  Big Lagoon State Park Boat Ramp Improvements Project

## 1.0     INTRODUCTION

This document describes the Big Lagoon State Park Boat Ramp Improvements Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0     PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational boating and fishing opportunities by improving the existing boat ramp area. The Early Restoration Project will enhance an existing boat ramp and surrounding facilities in the Big Lagoon State Park in Escambia County (See Figure 1 for general project location). The improvements will include adding an additional lane to the boat ramp, expanding boat trailer parking, improving traffic circulation at the boat ramp, and providing a new restroom facility to connect the park to the Emerald Coast Utility Authority (ECUA) regional sanitary sewer collection system.



Figure.1 Location of Big Lagoon Boat Ramp Project.

## 3.0    PROJECT IMPLEMENTATION

### 3.1    Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.14.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.14.4 of the Plan have been met.

### 3.2    Estimated Project Cost

The total estimated cost to implement the Big Lagoon State Park Boat Ramp Improvements Project is $1,483,020.00, consistent with Sections 12.14.4 and 12.14.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C

## NRD OFFSETS

The NRD Offsets are $2,966,040 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

(1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

(2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Big Lagoon State Park Boat Ramp Improvements Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

**<u>GLOSSARY OF TERMS</u>**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Bob Sikes Pier, Parking, and Trail Restoration**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Bob Sikes Pier, Parking, and Trail Restoration ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A. The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B. The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.   is feasible and cost effective.

C. The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.    FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
        TRUSTEES

A.  BPXP shall provide total funding in the amount of $1,023,990.00 for the Early
Restoration Project.  All funds provided to any Trustee under this Stipulation shall
be paid and deposited in accordance with the instructions provided by the
Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.  The Trustees shall use the funds paid under this Stipulation only for
implementation of the Early Restoration Project, including oversight, monitoring,
corrective actions, maintenance, and any agreed upon contingency, except as
provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
Project is set forth in Appendix A.

C.  Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
cause the transfer of 100% of the funds specified in Paragraph II.A. from the
Early Restoration Subaccount[1] to the account or accounts and in the manner
designated in instructions provided by the Implementing Trustee(s).

D.  Any and all funds transferred pursuant to Paragraphs II.C. of this Project
Stipulation, along with any accrued interest, that have not been spent and remain
unobligated after the Trustee(s) has completed the Early Restoration Project (or
Replacement Project(s), if applicable), including all performance monitoring and
corrective actions, shall be retained by the Trustees.  Such funds may only be used
by the Implementing Trustee(s) for another restoration project agreed to by all
Trustees, provided, however, that such funds may not be used for another project
unless and until the Implementing Trustee(s) has confirmed in writing that the
Early Restoration Project is complete.  BPXP shall not be entitled to any
additional NRD Offsets or other credits related to any additional restoration work
performed with such retained funds.

E.  At any time after BPXP has made full payment pursuant to Paragraph II.C., the
Trustees may for good cause elect not to implement the Early Restoration Project.
If the Trustees elect not to implement the Early Restoration Project in
substantially the same form as described in Appendix A, the Parties agree that the
Trustees shall apply any unspent funds in accordance with the following
provisions:

1.  The Implementing Trustee(s) for the Early Restoration Project or an
affected trustee designated by the Implementing Trustee(s) shall retain the
unspent funds paid by BPXP under this Project Stipulation;

2.  The Trustees shall apply the unspent funds to one or more replacement
project(s) ("Replacement Project(s)"), which may include a modified
version of the project described in Appendix A.  Any Replacement
Project(s) shall be designed to compensate for lost recreational use
provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount.  BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.


III.  <u>NRD OFFSETS</u>

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation.  Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.


IV.  <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V. <u>GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS</u>

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.


IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bob Sikes Pier, Parking, and Trail Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bob Sikes Pier, Parking, and Trail Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:


_____          _____
Date                             SAM HIRSCH
                                 Acting Assistant Attorney General
                                 Environment & Natural Resources Division
                                 U.S. Department of Justice
                                 Washington, D.C. 20530


___10/2/14_____        _____
Date                             CYNTHIA K. DOHNER
                                 Deepwater Horizon Authorized Official
                                 Department of the Interior
                                 1875 Century Boulevard
                                 Atlanta, Georgia 30345


___10/2/14_____        _____
Date                             KENNETH J. KOPOCIS
                                 U.S. Environmental Protection Agency
                                 Principal Representative
                                 1200 Pennsylvania Ave. NW
                                 Washington, D.C. 20460


___10/2/14_____        _____
Date                             CRAIG R. O'CONNOR
                                 National Oceanic and Atmospheric
                                 Administration
                                 Special Counsel
                                 7600 Sand Point Way NE
                                 Seattle, WA 98155


___10/2/14_____        _____
Date                             ANN C. MILLS
                                 U.S. Department of Agriculture
                                 Deputy Under Secretary for Natural
                                 Resources and Environment
                                 1400 Independence Ave. SW
                                 Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bob Sikes Pier, Parking, and Trail Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

__10/2/14_____
Date

_____
N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

__10/2/14_____
Date

_____
BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bob Sikes Pier, Parking, and Trail Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

_____10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

_____10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

11

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bob Sikes Pier, Parking, and Trail Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____          _____
Date                                                             KYLE GRAHAM
                                                                       Louisiana Coastal Protection and
                                                                       Restoration Authority
                                                                       Executive Director
                                                                       P.O. Box 44027
                                                                       Baton Rouge, Louisiana 70804

10/2/14
_____          _____
Date                                                             BRIAN WYNNE
                                                                       Louisiana Oil Spill Coordinator's Office
                                                                       Director
                                                                       P.O. Box 66614
                                                                       Baton Rouge, Louisiana 70896

10/2/14
_____          _____
Date                                                             PEGGY HATCH
                                                                       Louisiana Department of Environmental
                                                                       Quality
                                                                       Secretary
                                                                       P.O. Box 4301
                                                                       Baton Rouge, Louisiana 70821-4301

10/2/14
_____          _____
Date                                                             ROBERT BARHAM
                                                                       Louisiana Department of Wildlife and
                                                                       Fisheries
                                                                       Secretary
                                                                       P.O. Box 98000
                                                                       Baton Rouge, Louisiana 70898

10/2/14
_____          _____
Date                                                             STEVE CHUSTZ
                                                                       Louisiana Department of Natural Resources
                                                                       Secretary
                                                                       P.O. Box 94396
                                                                       Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bob Sikes Pier, Parking, and Trail Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:

   10/2/14

Date

GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bob Sikes Pier, Parking, and Trail Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bob Sikes Pier, Parking, and Trail Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bob Sikes Pier, Parking, and Trail Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____          _____
Date                               CARTER SMITH
                                   Texas Parks and Wildlife Department
                                   Executive Director
                                   4200 Smith School Road
                                   Austin, Texas 78744


_____          _____
Date                               LARRY L. LAINE
                                   Texas General Land Office
                                   Deputy Land Commissioner and Chief Clerk
                                   P. O. Box 12873
                                   Austin, Texas 78711


October 2, 2014                    _____
_____
Date                               RICHARD A. HYDE, P.E.
                                   Texas Commission on Environmental
                                   Quality
                                   Executive Director
                                   P. O. Box 13807
                                   Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Bob Sikes Pier, Parking, and Trail Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:


2 - OCT -2014
_____
Date


2 - Oct - 2014
_____
Date


Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:              Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:           BP Legal Department
                   501 Westlake Park Blvd
                   Houston, Texas 77079
Telephone Number:  281-366-6060
Facsimile Number:  281-366-5901

**APPENDIX A**

**<u>EARLY RESTORATION PROJECT</u>**

# Appendix A:  Bob Sikes Pier, Parking, and Trail Restoration Project

## 1.0    INTRODUCTION

This document describes the Bob Sikes Pier, Parking, and Trail Restoration Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational fishing and beach use opportunities by improving the access to the existing fishing pier and associated beach access trail.  The Early Restoration Project will improve access to a fishing pier in the Pensacola area in Escambia County as well as enhancing the quality of the experience for its recreational users (See **Error! Reference source not found.** for general project location).  The improvements include: 1) adding solar-powered lighting to illuminate dark areas along the pier; 2) completing a series of minor pier and rail modifications to generally improve the pier's safety; 3) renovating and rehabilitating designated parking areas to improve parking efficiency of visitors and to improve traffic flow leading into and within the pier parking lot; 4) adding a *Bob Sikes Pier* entrance sign and informational/educational signage for pier users (e.g., proper actions to take if a sea turtle should be hooked while fishing); 5) widening and enhancing half mile section of multipurpose (bicycle/pedestrian) access trail that connects the Bob Sikes Fishing Pier to other recreational and commercial areas on the beach; and 6) aesthetic improvements to the parking area, parking access road and multipurpose trail leading to Bob Sikes Pier.



Figure 1. Location of Bob Sikes Pier Restoration Project.

## 3.0    PROJECT IMPLEMENTATION

### 3.1    Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.16.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.16.4 of the Plan have been met.

### 3.2    Estimated Project Cost

The total estimated cost to implement the Bob Sikes Pier, Parking, and Trail Restoration Project is $1,023,990.00, consistent with Sections 12.16.4 and 12.16.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C

## NRD OFFSETS

The NRD Offsets are $2,047,980.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

    (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

    (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Bob Sikes Pier, Parking, and Trail Restoration Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

## APPENDIX D

## <u>GLOSSARY OF TERMS</u>

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
City of Parker - Oak Shore Drive Pier**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – City of Parker - Oak Shore Drive Pier ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.    RESTORATION PROJECT

   A.   The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

   B.   The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.    contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.   addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii.  seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.   is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.    is feasible and cost effective.

   C.   The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

2

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.  FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE TRUSTEES

A.  BPXP shall provide total funding in the amount of $993,649.00 for the Early Restoration Project.  All funds provided to any Trustee under this Stipulation shall be paid and deposited in accordance with the instructions provided by the Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.  The Trustees shall use the funds paid under this Stipulation only for implementation of the Early Restoration Project, including oversight, monitoring, corrective actions, maintenance, and any agreed upon contingency, except as provided in Paragraphs II.D. and II.E.  The estimated cost for the Early Restoration Project is set forth in Appendix A.

C.  Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall cause the transfer of 100% of the funds specified in Paragraph II.A. from the Early Restoration Subaccount[1] to the account or accounts and in the manner designated in instructions provided by the Implementing Trustee(s).

D.  Any and all funds transferred pursuant to Paragraphs II.C. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the Trustee(s) has completed the Early Restoration Project (or Replacement Project(s), if applicable), including all performance monitoring and corrective actions, shall be retained by the Trustees.  Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete.  BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

E.  At any time after BPXP has made full payment pursuant to Paragraph II.C., the Trustees may for good cause elect not to implement the Early Restoration Project. If the Trustees elect not to implement the Early Restoration Project in substantially the same form as described in Appendix A, the Parties agree that the Trustees shall apply any unspent funds in accordance with the following provisions:

1.  The Implementing Trustee(s) for the Early Restoration Project or an affected trustee designated by the Implementing Trustee(s) shall retain the unspent funds paid by BPXP under this Project Stipulation;

2.  The Trustees shall apply the unspent funds to one or more replacement project(s) ("Replacement Project(s)"), which may include a modified version of the project described in Appendix A.  Any Replacement Project(s) shall be designed to compensate for lost recreational use provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount. BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III. <u>NRD OFFSETS</u>

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees"). NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

5

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.  <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V. <u>GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS</u>

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33  U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the City of Parker - Oak Shore Drive Pier Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the City of Parker - Oak Shore Drive Pier Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


____10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


____10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


____10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


____10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the City of Parker - Oak Shore Drive Pier Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

10/2/14
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

10/2/14
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the City of Parker - Oak Shore Drive Pier Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

_____10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental
Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

_____10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation
Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the City of Parker - Oak Shore Drive Pier Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

12

THE UNDERSIGNED PARTY enters into this Project Stipulation for the City of Parker - Oak Shore Drive Pier Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


__10/2/14_____                         _____
Date                                               GARY C. RIKARD
                                                   Mississippi Department of Environmental
                                                   Quality
                                                   Executive Director
                                                   P.O. Box 2261
                                                   Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the City of Parker - Oak Shore Drive Pier Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the City of Parker - Oak Shore Drive Pier Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


10/2/14
_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the City of Parker - Oak Shore Drive Pier Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


October 2, 2014
_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711


14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the City of Parker - Oak Shore Drive Pier Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2-OCT-2014
Date

2-Oct-2014
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name: Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*
Address: BP Legal Department
501 Westlake Park Blvd
Houston, Texas 77079
Telephone Number: 281-366-6060
Facsimile Number: 281-366-5901

**APPENDIX A**

**EARLY RESTORATION PROJECT**

# Appendix A:  City of Parker – Oakshore Drive Pier Project

## 1.0    INTRODUCTION

This document describes the City of Parker – Oakshore Drive Pier Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational fishing opportunities by constructing a fishing pier.  The Early Restoration Project will construct a fishing pier at Oak Shore Drive in the City of Parker, Bay County Florida (See Figure 1 for general project location). The pier is intended to serve the City of Parker and Tyndall Air Force Base; neither location currently has publically accessible fishing facilities. The restoration work includes construction of a fishing pier that will provide access to St. Andrews Bay.



Figure 1. Location of City of Parker – Oakshore Drive Pier Project.

## 3.0     PROJECT IMPLEMENTATION

### 3.1     Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.82.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.82.4 of the Plan have been met.

### 3.2     Estimated Project Cost

The total estimated cost to implement the City of Parker – Oakshore Drive Pier Project is $993,649.00, consistent with Sections 12.82.4 and 12.82.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**


The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C

## **NRD OFFSETS**

The NRD Offsets are $1,987,298.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

(1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

(2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the City of Parker – Oakshore Drive Pier Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

## **GLOSSARY OF TERMS**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Deer Lake State Park Development**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Deer Lake State Park Development ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.   is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.  FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE TRUSTEES

   A.  BPXP shall provide total funding in the amount of $588,500.00 for the Early Restoration Project.  All funds provided to any Trustee under this Stipulation shall be paid and deposited in accordance with the instructions provided by the Implementing Trustee(s) pursuant to Paragraph II.C. below.

   B.  The Trustees shall use the funds paid under this Stipulation only for implementation of the Early Restoration Project, including oversight, monitoring, corrective actions, maintenance, and any agreed upon contingency, except as provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration Project is set forth in Appendix A.

   C.  Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall cause the transfer of 100% of the funds specified in Paragraph II.A. from the Early Restoration Subaccount[1] to the account or accounts in the manner designated in instructions provided by the Implementing Trustee(s).

   D.  Any and all funds transferred pursuant to Paragraphs II.C. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the Trustee(s) has completed the Early Restoration Project (or Replacement Project(s), if applicable), including all performance monitoring and corrective actions, shall be retained by the Trustees.  Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete.  BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

   E.  At any time after BPXP has made full payment pursuant to Paragraph II.C., the Trustees may for good cause elect not to implement the Early Restoration Project. If the Trustees elect not to implement the Early Restoration Project in substantially the same form as described in Appendix A, the Parties agree that the Trustees shall apply any unspent funds in accordance with the following provisions:

      1.  The Implementing Trustee(s) for the Early Restoration Project or an affected trustee designated by the Implementing Trustee(s) shall retain the unspent funds paid by BPXP under this Project Stipulation;

      2.  The Trustees shall apply the unspent funds to one or more replacement project(s) ("Replacement Project(s)"), which may include a modified version of the project described in Appendix A.  Any Replacement Project(s) shall be designed to compensate for lost recreational use provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount. BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III. <u>NRD OFFSETS</u>

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees"). NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

5

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.  <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

6

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.


V.   GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Deer Lake State Park Development Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date    10/2/14

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Deer Lake State Park Development Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____10/2/14_____
Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____10/2/14_____
Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____10/2/14_____
Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____10/2/14_____
Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Deer Lake State Park Development Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

_10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Deer Lake State Park Development Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

_____10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental
Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

_____10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation
Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Deer Lake State Park Development Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
———————————————
Date

———————————————
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
———————————————
Date

———————————————
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
———————————————
Date

———————————————
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
———————————————
Date

———————————————
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
———————————————
Date

———————————————
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

12

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Deer Lake State Park Development Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


__10/2/14_____
Date

_____
GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Deer Lake State Park Development Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Deer Lake State Park Development Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

| | |
|---|---|
| _____<br>Date | _____<br>CARTER SMITH<br>Texas Parks and Wildlife Department<br>Executive Director<br>4200 Smith School Road<br>Austin, Texas 78744 |
| _____<br>Date | _____<br>LARRY L. LAINE<br>Texas General Land Office<br>Deputy Land Commissioner and Chief Clerk<br>P. O. Box 12873<br>Austin, Texas 78711 |
| _____<br>Date | _____<br>RICHARD A. HYDE, P.E.<br>Texas Commission on Environmental Quality<br>Executive Director<br>P. O. Box 13807<br>Austin, Texas 78711 |

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Deer Lake State Park Development Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

October 2, 2014
_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Deer Lake State Park Development Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2-OCT-2014
Date

2-Oct-2014
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:              Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:           BP Legal Department
                   501 Westlake Park Blvd
                   Houston, Texas 77079

Telephone Number:  281-366-6060
Facsimile Number:  281-366-5901

**APPENDIX A**

**<u>EARLY RESTORATION PROJECT</u>**

# Appendix A:  Deer Lake State Park Development Project

## 1.0    INTRODUCTION

This document describes the Deer Lake State Park Development Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational beach use opportunities by improving the park's visitor area.  The Early Restoration Project will improve the existing visitor areas at Deer Lake State Park in Walton County (See Figure 1 for general project location). The improvements will include adding a paved access road, parking, picnic shelters, restroom facilities, plantings (trees, grass, shrubs), and necessary utilities (water, sewer, and electrical).



Figure 1. Location of Deer Lake State Park Development Project.

**3.0     PROJECT IMPLEMENTATION**

**3.1     Performance Criteria, Monitoring, and Maintenance**

Project performance will be assessed as defined in Section 12.80.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.80.4 of the Plan have been met.

**3.2     Estimated Project Cost**

The total estimated cost to implement the Deer Lake State Park Development Project is $588,500.00, consistent with Sections 12.80.4 and 12.80.6 of the Plan.

**APPENDIX B**

**EARLY RESTORATION PLAN**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at www.doi.gov/deepwaterhorizon, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C

## NRD OFFSETS

The NRD Offsets are $1,177,000.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

> (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

> (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Deer Lake State Park Development Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

## **GLOSSARY OF TERMS**

There are no additional defined terms for this Early Restoration Project.