**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Enhancement of Franklin County Parks and Boat Ramps**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Enhancement of Franklin County Parks and Boat Ramps ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A. The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B. The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

    i. contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

    ii. addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

    iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

    iv. is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

    v. is feasible and cost effective.

C. The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.   Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.   All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES

A.   BPXP shall provide total funding in the amount of $1,771,385.00 for the Early
     Restoration Project.  All funds provided to any Trustee under this Stipulation shall
     be paid and deposited in accordance with the instructions provided by the
     Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.   The Trustees shall use the funds paid under this Stipulation only for
     implementation of the Early Restoration Project, including oversight, monitoring,
     corrective actions, maintenance, and any agreed upon contingency, except as
     provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
     Project is set forth in Appendix A.

C.   Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
     cause the transfer of 100% of the funds specified in Paragraph II.A. from the
     Early Restoration Subaccount[1] to the account or accounts in the manner
     designated in instructions provided by the Implementing Trustee(s).

D.   Any and all funds transferred pursuant to Paragraphs II.C. of this Project
     Stipulation, along with any accrued interest, that have not been spent and remain
     unobligated after the Trustee(s) has completed the Early Restoration Project (or
     Replacement Project(s), if applicable), including all performance monitoring and
     corrective actions, shall be retained by the Trustees.  Such funds may only be used
     by the Implementing Trustee(s) for another restoration project agreed to by all
     Trustees, provided, however, that such funds may not be used for another project
     unless and until the Implementing Trustee(s) has confirmed in writing that the
     Early Restoration Project is complete.  BPXP shall not be entitled to any
     additional NRD Offsets or other credits related to any additional restoration work
     performed with such retained funds.

E.   At any time after BPXP has made full payment pursuant to Paragraph II.C., the
     Trustees may for good cause elect not to implement the Early Restoration Project.
     If the Trustees elect not to implement the Early Restoration Project in
     substantially the same form as described in Appendix A, the Parties agree that the
     Trustees shall apply any unspent funds in accordance with the following
     provisions:

     1.   The Implementing Trustee(s) for the Early Restoration Project or an
          affected trustee designated by the Implementing Trustee(s) shall retain the
          unspent funds paid by BPXP under this Project Stipulation;

     2.   The Trustees shall apply the unspent funds to one or more replacement
          project(s) ("Replacement Project(s)"), which may include a modified
          version of the project described in Appendix A.  Any Replacement
          Project(s) shall be designed to compensate for lost recreational use
          provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

3.  The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4.  The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5.  BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6.  In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount.  BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7.  BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8.  If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F.  Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.


III.  NRD OFFSETS

A.  The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B.  Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.  Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

   (2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

   (3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.   <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

6

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V. GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

7

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.


IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhancement of Franklin County Parks and Boat Ramps Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
Date

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____
Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____
Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhancement of Franklin County Parks and Boat Ramps Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

___10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

___10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

___10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

___10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhancement of Franklin County Parks and Boat Ramps Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

| | |
|---|---|
| __10/2/14_____ | |
| Date | N. GUNTER GUY, JR. |
| | Alabama Department of Conservation |
| | and Natural Resources |
| | Commissioner of Conservation |
| | 64 N. Union Street |
| | Montgomery, AL 36130 |

| | |
|---|---|
| __10/2/14_____ | |
| Date | BERRY H. TEW, JR. |
| | Geological Survey of Alabama |
| | and State Oil and Gas Board of Alabama |
| | State Geologist/Oil & Gas Supervisor |
| | P.O. Box 869999 |
| | Tuscaloosa, AL 35486-6999 |

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhancement of Franklin County Parks and Boat Ramps Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

___10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental
Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

___10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation
Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhancement of Franklin County Parks and Boat Ramps Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____          _____
Date                                 KYLE GRAHAM
                                     Louisiana Coastal Protection and
                                     Restoration Authority
                                     Executive Director
                                     P.O. Box 44027
                                     Baton Rouge, Louisiana 70804

10/2/14
_____          _____
Date                                 BRIAN WYNNE
                                     Louisiana Oil Spill Coordinator's Office
                                     Director
                                     P.O. Box 66614
                                     Baton Rouge, Louisiana 70896

10/2/14
_____          _____
Date                                 PEGGY HATCH
                                     Louisiana Department of Environmental
                                     Quality
                                     Secretary
                                     P.O. Box 4301
                                     Baton Rouge, Louisiana 70821-4301

10/2/14
_____          _____
Date                                 ROBERT BARHAM
                                     Louisiana Department of Wildlife and
                                     Fisheries
                                     Secretary
                                     P.O. Box 98000
                                     Baton Rouge, Louisiana 70898

10/2/14
_____          _____
Date                                 STEVE CHUSTZ
                                     Louisiana Department of Natural Resources
                                     Secretary
                                     P.O. Box 94396
                                     Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhancement of Franklin County Parks and Boat Ramps Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


  10/2/14
Date

GARY C. RIKARD
Mississippi Department of Environmental
Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhancement of Franklin County Parks and Boat Ramps Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhancement of Franklin County Parks and Boat Ramps Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

10/2/04
_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhancement of Franklin County Parks and Boat Ramps Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____          _____
Date                               CARTER SMITH
                                   Texas Parks and Wildlife Department
                                   Executive Director
                                   4200 Smith School Road
                                   Austin, Texas 78744


_____          _____
Date                               LARRY L. LAINE
                                   Texas General Land Office
                                   Deputy Land Commissioner and Chief Clerk
                                   P. O. Box 12873
                                   Austin, Texas 78711


October 2, 2014                    _____
_____
Date                               RICHARD A. HYDE, P.E.
                                   Texas Commission on Environmental
                                   Quality
                                   Executive Director
                                   P. O. Box 13807
                                   Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Enhancement of Franklin County Parks and Boat Ramps Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2-OCT-2014
Date

2-Oct-2014
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

| | |
|---|---|
| Name: | Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims* |
| Address: | BP Legal Department |
| | 501 Westlake Park Blvd |
| | Houston, Texas 77079 |
| Telephone Number: | 281-366-6060 |
| Facsimile Number: | 281-366-5901 |

APPENDIX A

<u>EARLY RESTORATION PROJECT</u>

# Appendix A:  Enhancement of Franklin County Parks and Boat Ramps Project

## 1.0   INTRODUCTION

This document describes the Enhancement of Franklin County Parks and Boat Ramps Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0   PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational boating and fishing opportunities by improving the waterfront park, improving existing fishing piers, and improving an existing boat ramp.  The Early Restoration Project will improve or enhance the following facilities:

1. The existing Waterfront Park in Apalachicola, Florida (See Figure 1 for general project location).  The improvements include enhancing existing parking and adjacent tie-up docks to enhance water access.  In addition an existing onsite building will be enhanced to serve as an information center and dockmaster office. Finally, a kiosk describing fishing ethics, litter control, and the important resources surrounding the area (primarily commercial oyster bars and coastal marshes) will also be added;
2. The existing Indian Creek Park boat launch facility in Franklin County (See Figure 2 for general project location).  The improvements include constructing restroom facilities, connecting them to an existing central wastewater facility nearby, and renovating the existing boat ramp, bulkhead, and parking area to enhance water access.  Furthermore, a kiosk describing fishing ethics, litter control, and the important resources surrounding the area (primarily commercial oyster bars, submerged aquatic vegetation and marshes) will also be added;
3. The existing public East Point Fishing Pier in Franklin County (See Figure 3 for general project location).  The proposed improvements include not only constructing new restrooms, but a holding tank that will be pumped out regularly. In addition, signage will be installed/updated to provide users of the ramp with information on sensitive species and areas and appropriate actions to take with species interactions (e.g., what to do if a sea turtle or nesting migratory bird is encountered); and
4. The existing public St. George Island public Fishing Pier in Franklin County (See Figure 4 for general project location).  The improvements include constructing restrooms and a holding tank that will be pumped out regularly since there is no

central wastewater facility on the island. The improvements also include renovating the existing bulkhead that leads up to the pier and protects the road to the pier. A kiosk describing fishing ethics, litter control, and the important resources surrounding the pier (primarily commercial oyster bars) will also be added.



Figure 1.  Location of Enhancement of Franklin County Parks and Boat Ramps – Waterfront Park.



Figure 2.  Location of Enhancement of Franklin County Parks and Boat Ramps – Indian Creek Boat Ramp.



Figure 3. Location of Enhancement of Franklin County Parks and Boat Ramps – Eastpoint Fishing Pier.

18



Figure 4. Location of Enhancement of Franklin County Parks and Boat Ramps – St. George Island Fishing Pier.

## 3.0   PROJECT IMPLEMENTATION

### 3.1   Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Sections 12.63.4, 12.64.4, 12.65.4, and 12.66.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Sections 12.63.4, 12.64.4, 12.65.4, and 12.66.4 of the Plan have been met.

### 3.2   Estimated Project Cost

The total estimated cost to implement the Enhancement of Franklin County Parks and Boat Ramps Project is $1,771,385.00, consistent with Sections 12.63.4, 12.64.4, 12.65.4, 12.66.4, 12.63.6, 12.64.6, 12.65.6, and 12.66.6 of the Plan.

**APPENDIX B**

**EARLY RESTORATION PLAN**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at www.doi.gov/deepwaterhorizon, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

**APPENDIX C**

**NRD OFFSETS**

The NRD Offsets are $3,542,770.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

    (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

    (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Enhancement of Franklin County Parks and Boat Ramps Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

**<u>GLOSSARY OF TERMS</u>**

There are no additional defined terms for this Early Restoration Project.

## Stipulation Regarding Early Restoration Project
## for the Deepwater Horizon Oil Spill -
## Developing Enhanced Recreational Opportunities on the Escribano Point
## Portion of the Yellow River Wildlife Management Area

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Developing Enhanced Recreational Opportunities on the Escribano Point Portion of the Yellow River Wildlife Management Area ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011. Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference. This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources: the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources: for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and

Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.   The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.   The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

ii.   addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

iii.   seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

iv.   is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

v.   is feasible and cost effective.

2

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection and Florida Fish and Wildlife Conservation Commission ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE TRUSTEES

A. BPXP shall provide total funding in the amount of $2,576,365.00 for the Early Restoration Project.  All funds provided to any Trustee under this Stipulation shall be paid and deposited in accordance with the instructions provided by the Implementing Trustee(s) pursuant to Paragraph II.C. below.

B. The Trustees shall use the funds paid under this Stipulation only for implementation of the Early Restoration Project, including oversight, monitoring, corrective actions, maintenance, and any agreed upon contingency, except as provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration Project is set forth in Appendix A.

C. Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall cause the transfer of 100% of the funds specified in Paragraph II.A. from the Early Restoration Subaccount[1] to the account or accounts and in the manner designated in instructions provided by the Implementing Trustee(s).

D. Any and all funds transferred pursuant to Paragraphs II.C. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the Trustee(s) has completed the Early Restoration Project (or Replacement Project(s), if applicable), including all performance monitoring and corrective actions, shall be retained by the Trustees.  Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete.  BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

E. At any time after BPXP has made full payment pursuant to Paragraph II.C., the Trustees may for good cause elect not to implement the Early Restoration Project.  If the Trustees elect not to implement the Early Restoration Project in substantially the same form as described in Appendix A, the Parties agree that the Trustees shall apply any unspent funds in accordance with the following provisions:

1. The Implementing Trustee(s) for the Early Restoration Project or an affected trustee designated by the Implementing Trustee(s) shall retain the unspent funds paid by BPXP under this Project Stipulation;

2. The Trustees shall apply the unspent funds to one or more replacement project(s) ("Replacement Project(s)"), which may include a modified version of the project described in Appendix A.  Any Replacement

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

Project(s) shall be designed to compensate for lost recreational use provided by natural resources injured in Florida;

3.  The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4.  The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5.  BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6.  In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount.  BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7.  BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8.  If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F.  Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.  <u>NRD OFFSETS</u>

A.  The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B.  Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.  Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.  Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.  (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation.  Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.  **EFFECT OF STIPULATION**

A.  This Project Stipulation is binding upon the Parties and their successors and assigns.

B.  Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C.  The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D.  Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E.  The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F.  Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.  **GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS**

A.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B.  This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with

identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E.  Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G.  The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H.  To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.


IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Developing Enhanced Recreational Opportunities on the Escribano Point Portion of the Yellow River Wildlife Management Area Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Developing Enhanced Recreational Opportunities on the Escribano Point Portion of the Yellow River Wildlife Management Area Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:


_____
Date

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


___10/2/14_____
Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


___10/2/14_____
Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


___10/2/14_____
Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


___10/2/14_____
Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Developing Enhanced Recreational Opportunities on the Escribano Point Portion of the Yellow River Wildlife Management Area Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:


___10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130


___10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Developing Enhanced Recreational Opportunities on the Escribano Point Portion of the Yellow River Wildlife Management Area Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:


   10/2/14
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000


   10/2/14
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Developing Enhanced Recreational Opportunities on the Escribano Point Portion of the Yellow River Wildlife Management Area Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

12

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Developing Enhanced Recreational Opportunities on the Escribano Point Portion of the Yellow River Wildlife Management Area Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


   10/2/14               
Date

GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Developing Enhanced Recreational Opportunities on the Escribano Point Portion of the Yellow River Wildlife Management Area Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Developing
Enhanced Recreational Opportunities on the Escribano Point Portion of the Yellow River
Wildlife Management Area Project in the matter of *In re: Oil Spill by the Oil Rig
"Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the
*Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date


_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____10|2|14_____
Date


_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date


_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711


14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Developing Enhanced Recreational Opportunities on the Escribano Point Portion of the Yellow River Wildlife Management Area Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


October 2, 2014
_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Developing Enhanced Recreational Opportunities on the Escribano Point Portion of the Yellow River Wildlife Management Area Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:


2-OCT-2014
_____
Date


2-Oct-2014
_____
Date


Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

| | |
|---|---|
| Name: | Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims* |
| Address: | BP Legal Department |
| | 501 Westlake Park Blvd |
| | Houston, Texas 77079 |
| Telephone Number: | 281-366-6060 |
| Facsimile Number: | 281-366-5901 |

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Developing Enhanced Recreational Opportunities on the Escribano Point Portion of the Yellow River Wildlife Management Area Project

## 1.0    INTRODUCTION

This document describes the Developing Enhanced Recreational Opportunities on the Escribano Point Portion of the Yellow River Wildlife Management Area Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational use and wildlife viewing opportunities by improving the recreational use of the land.  The Early Restoration Project will improve public access and enjoyment of natural resources at the Escribano Point portion of the Yellow River Wildlife Management Area (See Figure 1 for general project location).  The improvements will include 1) an entrance Kiosk, information, parking and facilities; 2) north beach hammock parking, interpretive, fishing and picnicking facilities; 3) primitive camping sites; 4) wildlife viewing facilities; 5) Escribano Point parking, interpretive, fishing and picnicking facilities; and 6) bear-proof containers for trash and storing food at campsites.  Additionally there will be one-time assessment and mapping activities necessary for developing the site for outdoor recreation purposes (natural communities mapping, rare and exotic plan inventories, development of a hydrological assessment and water control plans for road access improvements, and herpetofauna survey). Funding for hurricane debris removal and road repair with hydrologic restoration will also be included.



Figure 1. Location of Developing Enhanced Recreational Opportunities on the Escribano
        Point Portion of the Yellow River Wildlife Management Area Project.

## 3.0   PROJECT IMPLEMENTATION

### 3.1   Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.76.4 of the Programmatic
and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental
Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with
the MDL Court.  Project implementation will be complete when the performance criteria
consistent with Section 12.76.4 of the Plan have been met.

### 3.2   Estimated Project Cost

The total estimated cost to implement the Developing Enhanced Recreational
Opportunities on the Escribano Point Portion of the Yellow River Wildlife Management
Area Project is $2,576,365.00, consistent with Sections 12.76.4 and 12.76.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**


The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

**APPENDIX C**

**NRD OFFSETS**

The NRD Offsets are $5,152,730.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

> (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

> (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Developing Enhanced Recreational Opportunities on the Escribano Point Portion of the Yellow River Wildlife Management Area Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

## **GLOSSARY OF TERMS**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Florida Artificial Reef Creation and Restoration**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Florida Artificial Reef Creation and Restoration ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A. The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill. On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project. On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project. The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B. The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.   is feasible and cost effective.

C. The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection and Florida Fish and Wildlife Conservation Commission ("Implementing Trustee(s)").

2

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE TRUSTEES

A.   BPXP shall provide total funding in the amount of $11,463,587.00 for the Early Restoration Project.  All funds provided to any Trustee under this Stipulation shall be paid and deposited in accordance with the instructions provided by the Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.   The Trustees shall use the funds paid under this Stipulation only for implementation of the Early Restoration Project, including oversight, monitoring, corrective actions, maintenance, and any agreed upon contingency, except as provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration Project is set forth in Appendix A.

C.   Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall cause the transfer of 100% of the funds specified in Paragraph II.A. from the Early Restoration Subaccount[1] to the account or accounts and in the manner designated in instructions provided by the Implementing Trustee(s).

D.   Any and all funds transferred pursuant to Paragraphs II.C. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the Trustee(s) has completed the Early Restoration Project (or Replacement Project(s), if applicable), including all performance monitoring and corrective actions, shall be retained by the Trustees.  Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete.  BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

E.   At any time after BPXP has made full payment pursuant to Paragraph II.C., the Trustees may for good cause elect not to implement the Early Restoration Project.  If the Trustees elect not to implement the Early Restoration Project in substantially the same form as described in Appendix A, the Parties agree that the Trustees shall apply any unspent funds in accordance with the following provisions:

1.   The Implementing Trustee(s) for the Early Restoration Project or an affected trustee designated by the Implementing Trustee(s) shall retain the unspent funds paid by BPXP under this Project Stipulation;

2.   The Trustees shall apply the unspent funds to one or more replacement project(s) ("Replacement Project(s)"), which may include a modified version of the project described in Appendix A.  Any Replacement Project(s) shall be designed to compensate for lost recreational use provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

3.  The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4.  The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5.  BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6.  In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount.  BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7.  BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8.  If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F.  Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.  <u>NRD OFFSETS</u>

A.  The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B.  Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.  Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

5

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.   <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.   GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33  U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E.  Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G.  The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H.  To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Artificial Reef Creation and Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

_____

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

_____

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____
Date

_____

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____
Date

_____

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Artificial Reef Creation and Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:


_____          _____
Date                                           SAM HIRSCH
                                               Acting Assistant Attorney General
                                               Environment & Natural Resources Division
                                               U.S. Department of Justice
                                               Washington, D.C. 20530


\_\_\_\_\_10/2/14_____          _____
Date                                           CYNTHIA K. DOHNER
                                               Deepwater Horizon Authorized Official
                                               Department of the Interior
                                               1875 Century Boulevard
                                               Atlanta, Georgia 30345


\_\_\_\_\_10/2/14_____          _____
Date                                           KENNETH J. KOPOCIS
                                               U.S. Environmental Protection Agency
                                               Principal Representative
                                               1200 Pennsylvania Ave. NW
                                               Washington, D.C. 20460


\_\_\_\_\_10/2/14_____          _____
Date                                           CRAIG R. O'CONNOR
                                               National Oceanic and Atmospheric
                                               Administration
                                               Special Counsel
                                               7600 Sand Point Way NE
                                               Seattle, WA 98155


\_\_\_\_\_10/2/14_____          _____
Date                                           ANN C. MILLS
                                               U.S. Department of Agriculture
                                               Deputy Under Secretary for Natural
                                               Resources and Environment
                                               1400 Independence Ave. SW
                                               Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Artificial Reef Creation and Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

__10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

__10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Artificial Reef Creation and Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

| | |
|---|---|
| 10/2/14 | *[signature]* |
| Date | LARRY MORGAN |
| | Florida Department of Environmental |
| | Protection |
| | Senior Deputy General Counsel |
| | 3900 Commonwealth Blvd., MS 35 |
| | Tallahassee, Florida 32399-3000 |

| | |
|---|---|
| 10/2/14 | *[signature]* |
| Date | NICK WILEY |
| | Florida Fish and Wildlife Conservation |
| | Commission |
| | Executive Director |
| | 620 South Meridian Street |
| | Tallahassee, Florida 32399-1600 |

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Artificial Reef Creation and Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Artificial Reef Creation and Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


___10/2/14_____

Date

GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Artificial Reef Creation and Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

__10/2/2014_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Artificial Reef Creation and Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date   10/2/14

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Artificial Reef Creation and Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


October 2, 2014
_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Artificial Reef Creation and Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:


2- OCT -2014
_____
Date


2 - Oct - 2014
_____
Date


Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:               Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:            BP Legal Department
                    501 Westlake Park Blvd
                    Houston, Texas 77079

Telephone Number:   281-366-6060
Facsimile Number:   281-366-5901

APPENDIX A

**<u>EARLY RESTORATION PROJECT</u>**

# Appendix A:  Florida Artificial Reef Creation and Restoration Project

### 1.0    INTRODUCTION

This document describes the Florida Artificial Reef Creation and Restoration Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

### 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational fishing opportunities by increasing the number of artificial reefs in state waters.  The Early Restoration Project involves creating artificial reefs in Escambia, Santa Rosa, Okaloosa, Walton, and Bay Counties (See **Error! Reference source not found.** for the location of the potential artificial reef areas). These improvements include emplacing artificial reefs units at different depths across the participating counties in permitted areas.



Figure 1. Location for potential emplacement of artificial reefs as part of the Florida
Artificial Reef Creation and Restoration Project.

## 3.0    PROJECT IMPLEMENTATION

### 3.1    Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.18.4 of the Programmatic
and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental
Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with
the MDL Court.  Project implementation will be complete when the performance criteria
consistent with Section 12.18.4 of the Plan have been met.

### 3.2    Estimated Project Cost

The total estimated cost to implement Florida Artificial Reef Creation and Restoration
Project is $11,463,587.00, consistent with Sections 12.18.4 and 12.18.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

**APPENDIX C**

**NRD OFFSETS**

The NRD Offsets are $22,927,174.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

> (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

> (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Florida Artificial Reef Creation and Restoration Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

**GLOSSARY OF TERMS**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Florida Cat Point Living Shoreline**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Florida Cat Point Living Shoreline Project ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.   The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.   The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

ii.   addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

iii.   seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

iv.   is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

v.   is feasible and cost effective.

C.   The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D. Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E. All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE TRUSTEES

A.   BPXP shall provide total funding in the amount of $775,605.00 for the Early Restoration Project in accordance with Paragraphs II.C. and II.D. below, absent the entry of a judicial stay or other court order that prevents project implementation or otherwise affects the terms of this Project Stipulation.  All funds provided to any Trustee under this Stipulation shall be paid and deposited in accordance with the instructions provided by the Implementing Trustee(s) pursuant to Paragraphs II.C. and II.D. below.

B.   The Trustees shall use the funds paid under this Stipulation only for implementation of the Early Restoration Project, including oversight, monitoring, corrective actions, maintenance, and any agreed upon contingency, except as provided in Paragraphs II.E. and II.F.  The estimated cost of the Early Restoration Project is set forth in Appendix A.

C.   Initial Payment:  Within thirty (30) days of the filing of this Project Stipulation or receipt of written payment instructions from the Implementing Trustee(s), whichever is later, BPXP shall cause the transfer of $193,901.25, or 25% of the amount specified in Paragraph II.A., from the Early Restoration Subaccount[1] to the account or accounts and in the manner designated in the payment instructions.

D.   Additional Payments:  The remaining 75% of the amount specified in Paragraph II.A. shall be paid from the Early Restoration Subaccount as follows:

   i.   The Implementing Trustee(s) elects to perform the Early Restoration Project with the use of contractor(s). Unless other payment arrangements are specified in Appendix A, BPXP shall transfer $193,901.25, or an additional 25% of the amount specified in Paragraph II.A., from the Early Restoration Subaccount to the account or accounts designated by the Implementing Trustee(s) within fifteen (15) days after the date that BPXP receives written notice from the Implementing Trustee(s) of issuance of a Request for Proposal, or other appropriate applicable procurement mechanism, or within sixty (60) days of the filing of this Project Stipulation, whichever is later; such notice shall include written payment instructions.

   ii.   BPXP shall transfer the remaining $387,802.50, or 50% of the amount specified in Paragraph II.A., from the Early Restoration Subaccount to the account or accounts designated in the payment instructions within fifteen (15) days of notice to BPXP of the selection of a contractor but before award of a contract to implement the Early Restoration Project, or within seventy-five (75) days of the filing of this Project Stipulation, whichever is later.

E.   Any and all funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

Trustee(s) has completed the Early Restoration Project, including all performance monitoring and corrective actions, shall be retained by the Trustees.  Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete.  BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

F.  If implementation of the Early Restoration Project does not commence, as specified in Appendix A, by the end of the eighteenth (18th) month after the date all Parties have signed this Project Stipulation, unless the Parties agree otherwise, the Project Stipulation shall be void and the funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation that have not been spent and remain unobligated, along with any accrued interest, shall remain in the account or accounts to which they have been transferred and only be used for another project under a new Project Stipulation agreed to by all the Parties under the terms of the Framework Agreement.

G.  Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.  <u>NRD OFFSETS</u>

A.  The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B.  Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.  Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or

services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.   Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.   (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation.  Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.


IV.   EFFECT OF STIPULATION

A.   This Project Stipulation is binding upon the Parties and their successors and assigns.

B.   Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C.   The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.


V. GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33  U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.G.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.


IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Cat Point Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
Date

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____
Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____
Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Cat Point Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:


_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


___10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


___10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


___10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


___10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Cat Point Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

__10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

__10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Cat Point Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

___10/2/14_____

Date

LARRY MORGAN
Florida Department of Environmental
Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

___10/2/14_____

Date

NICK WILEY
Florida Fish and Wildlife Conservation
Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Cat Point Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Cat Point Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


_____10/2/14_____          _____
Date                                        GARY C. RIKARD
                                            Mississippi Department of Environmental
                                            Quality
                                            Executive Director
                                            P.O. Box 2261
                                            Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Cat Point Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Cat Point Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____10|2|14_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Cat Point Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


October 2, 2014
_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Cat Point Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2-OCT-2014

Date

2 - OCT - 2014

Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name: Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address: BP Legal Department
501 Westlake Park Blvd
Houston, Texas 77079

Telephone Number: 281-366-6060
Facsimile Number: 281-366-5901

**APPENDIX A**

**EARLY RESTORATION PROJECT**

# Appendix A:  Florida Cat Point Living Shoreline Project

## 1.0     INTRODUCTION

This document describes the Florida Cat Point Living Shoreline Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of a Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0     PROJECT DESCRIPTION

The Early Restoration Project will employ living shoreline techniques that utilize natural and/or artificial breakwater material to reduce shoreline erosion and provide habitat off Eastpoint, Florida (See Figure 1 for General project location and Figure 2 for additional project details).  This area has been the location of previous successful living shoreline projects that contribute to shoreline protection.  Combining these objectives, this project will create breakwaters to reduce wave energy, increase benthic secondary productivity, and create salt marsh habitat.   Project activities include expanding an existing breakwater by creating up to 0.3 miles of new breakwater that will provide reef habitat and creating approximately 1 acre of salt marsh habitat.

The restoration work includes placing the breakwater structures approximately 30 feet from the shoreline, which will likely have an approximate 5 foot crest width with a height that falls within the mean high and low water lines of the site.  The specific breakwater elevation and technique design will be selected to maximize shoreline protection and meet state regulatory requirements.  The living shoreline techniques will be employed along approximately 0.3 mile of shoreline. Additionally, plugs of Saltmarsh Cordgrass *(Spartina alterniflora)* will be planted on 2to3 foot centers in the area located landward of the breakwater. Plants will be installed within 30-days of the first growing period subsequent to construction of the breakwater.



Figure 1.  General location of envisioned Cat Point (Franklin County) Living Shoreline Project.



Figure 2.  Detailed location of envisioned Cat Point (Franklin County) Living Shoreline Project.

## 3.0     PROJECT IMPLEMENTATION

### 3.1     Performance Criteria, Monitoring and Maintenance

Project performance will be assessed as defined in Section 12.6.4 of the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon filing of the Notice of Project Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.6.4 of the Plan have been met.

### 3.2     Estimated Project Cost

The total estimated cost to implement the Florida Cat Point Living Shoreline Project is $775,605.00, consistent with Section 12.6.4 and 12.6.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESOTRATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C

## <u>NRD OFFSETS</u>

The NRD Offsets are:

A.  3,266 Discounted Kilogram Years ("Dkg-Ys") of benthic Secondary Productivity in Florida, applicable to benthic Secondary Productivity injuries in Florida, as determined by the Trustees' total assessment of injury for the Oil Spill; and

B.  4.3 Discounted Service Acre Years ("DSAYs") of Salt Marsh Habitat in Florida applicable to Salt Marsh Habitat injuries in Florida, as determined by the Trustees' total assessment of injury for the Oil Spill.

For the purposes of applying the NRD Offsets to the calculation of injury, the Parties agree as follows:

- If the Offsets resulting from the Florida Cat Point Living Shoreline Project exceed the injury to benthic Secondary Productivity in Florida then any remaining Offsets for benthic Secondary Productivity are applicable to injuries to benthic Secondary Productivity within federal waters on the Continental Shelf, excluding those associated with mesophotic reefs. The NRD Offsets shall not apply to injuries in Alabama, Louisiana, Mississippi and/or Texas.

For Purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Florida Cat Point Living Shoreline Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

## APPENDIX D

## GLOSSARY OF TERMS

These definitions are not considered to be a comprehensive list for all Early Restoration Projects under the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill executed April 20, 2011.  Future projects may require other definitions, including but not limited to, other definitions for habitats included in this list.

**Continental Shelf** shall mean the contiguous shallow platforms or terraces that surround most of the continents and are terminated seaward by a relatively sharp break in slope, called the shelf edge or shelf break. In the Gulf of Mexico, this generally follows the 200-meter isobaths.

**Salt Marsh Habitat** refers to transitional marsh areas between land and water that occur in coastal areas at salinities at or approaching that of ocean water. Typical vegetation in salt marsh habitat includes species such as *Spartina alterniflora*, *Juncus romerianus*, and *Distichlis spicata*.

**Secondary Productivity**: The strict definition of secondary productivity is the rate of production of consumers (heterotrophs) in an ecosystem (Edmondson & Winberg, 1971). For purposes of the offsets for the living shoreline projects, it is more narrowly defined as production of herbivores and detritivores, (the P2 production level in Odum, 1959) and in particular, the net production of mobile and sessile invertebrate infauna and epifauna associated with hard bottom substrates.

*Odum 1959, Fundamental of Ecology, 2nd edition W.B. Saunders & Co Philadelphia, 546 p.*

*Edmondson, W.T. & G.G. Winberg, 1971, IBP Handbook on Secondary Productivity International Biome Programmed, London, 358 p.*

**Discounted Kilogram Years** is expressed in present value 2010 kilogram years.

**Discounted Service Acre Years** is expressed in present value 2010 service acre years.

**Stipulation Regarding Early Restoration Project**
**for the Deepwater Horizon Oil Spill -**
**Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

i.    contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

ii.   addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

iii.  seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

iv.   is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

v.    is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection and Florida Fish and Wildlife Conservation Commission ("Implementing Trustee(s)").

D.   Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.   All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE TRUSTEES

A.  BPXP shall provide total funding in the amount of $18,793,500.00 for the Early Restoration Project.  BPXP previously advanced funding in the amount of $160,000.00 to the Implementing Trustee for this Early Restoration Project pursuant to the "Advanced Funding Agreement Regarding Specified Phase III Deepwater Horizon Oil Spill Early Restoration Project Costs" dated January 31, 2014, between BPXP, the State and Federal Trustees, and the United States Department of Justice.  The Florida Department of Environmental Protection, on behalf of the Florida Trustees, received those funds on March 5, 2014.  BPXP shall provide the remaining funding in the amount of $18,633,500.00 in accordance with Paragraphs II.C. below.  All funds provided to any Trustee under this Stipulation shall be paid and deposited in accordance with the instructions provided by the Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.  The Trustees shall use the funds paid under this Stipulation only for implementation of the Early Restoration Project, including oversight, monitoring, corrective actions, maintenance, and any agreed upon contingency, except as provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration Project is set forth in Appendix A.

C.  Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall cause the transfer of $18,633,500.00 from the Early Restoration Subaccount[1] to the account or accounts and in the manner designated in instructions provided by the Implementing Trustee(s).

D.  Any and all funds transferred pursuant to Paragraphs II.C. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the Trustee(s) has completed the Early Restoration Project (or Replacement Project(s), if applicable), including all performance monitoring and corrective actions, shall be retained by the Trustees.  Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete.  BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

E.  At any time after BPXP has made full payment pursuant to Paragraph II.C., the Trustees may for good cause elect not to implement the Early Restoration Project. If the Trustees elect not to implement the Early Restoration Project in substantially the same form as described in Appendix A, the Parties agree that the Trustees shall apply any unspent funds in accordance with the following provisions:

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

1. The Implementing Trustee(s) for the Early Restoration Project or an affected trustee designated by the Implementing Trustee(s) shall retain the unspent funds paid by BPXP under this Project Stipulation;

2. The Trustees shall apply the unspent funds to one or more replacement project(s) ("Replacement Project(s)"), which may include a modified version of the project described in Appendix A.  Any Replacement Project(s) shall be designed to compensate for lost recreational use provided by natural resources injured in Florida;

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount.  BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.  **NRD OFFSETS**

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within

5

the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B.  Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.  Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.  Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.  (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic

scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.   EFFECT OF STIPULATION

A.  This Project Stipulation is binding upon the Parties and their successors and assigns.

B.  Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C.  The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D.  Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E.  The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F.  Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.   GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

10

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:


_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


___10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


___10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


___10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


___10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_____10/2/14_____
Date

_____
N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130


_____10/2/14_____
Date

_____
BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

__10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

__10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

13

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


  10/2/14
Date

GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____               _____
Date                                  CARTER SMITH
                                      Texas Parks and Wildlife Department
                                      Executive Director
                                      4200 Smith School Road
                                      Austin, Texas 78744


_____               _____
Date                                  LARRY L. LAINE
                                      Texas General Land Office
                                      Deputy Land Commissioner and Chief Clerk
                                      P. O. Box 12873
                                      Austin, Texas 78711


October 2, 2014                       _____
_____               RICHARD A. HYDE, P.E.
Date                                  Texas Commission on Environmental
                                      Quality
                                      Executive Director
                                      P. O. Box 13807
                                      Austin, Texas 78711

15

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2-OCT-2014
Date

2-Oct-2014
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:      Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:      BP Legal Department
                 501 Westlake Park Blvd
                 Houston, Texas 77079

Telephone Number:    281-366-6060
Facsimile Number:    281-366-5901

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center Project

## 1.0    INTRODUCTION

This document describes the Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational fishing opportunities by producing and releasing highly sought-after sportfish species such as red snapper, red drum, and spotted seatrout.  The Early Restoration Project involves constructing and operating a saltwater sportfish hatchery in Pensacola, Florida (See Figure 1 for a conceptual design and Figure 2 for facility location).  The hatchery fish will be released into high quality inshore habitats throughout the Northern Gulf Coast in Florida.



Figure 1. Conceptual design for the Florida Gulf Coast Marine Fisheries
Hatchery/Enhancement Center Project.



Figure 2. Location for the Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center Project.

## 3.0   PROJECT IMPLEMENTATION

### 3.1   Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.20.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.20.4 of the Plan have been met.

### 3.2   Estimated Project Cost

The total estimated cost to implement the Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center Project is $18,793,500.00, consistent with Sections 12.20.4 and 12.20.6 of the Plan.

**APPENDIX B**

**EARLY RESTORATION PLAN**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill
Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic
Environmental Impact Statement ("Plan"), available at www.doi.gov/deepwaterhorizon,
which was adopted by the Trustees after public review and comment.  Public comments
received on the Plan are summarized in the Plan, and Trustees' responses to the
comments are included.  All public comments received on the Plan are included in full in
the NRDA Administrative Record for the Plan, which can be found at the same web
address.

## APPENDIX C

## NRD OFFSETS

The NRD Offsets are $37,587,000.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

> (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

> (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Florida Gulf Coast Marine Fisheries Hatchery/Enhancement Center Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

**<u>GLOSSARY OF TERMS</u>**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Florida Sea Grass Recovery**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Florida Sea Grass Recovery Project ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

  i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

  ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

  iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

  iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

  v.   is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.  FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE TRUSTEES

A.  BPXP shall provide total funding in the amount of $2,691,867.00 for the Early Restoration Project in accordance with Paragraphs II.C. and II.D. below, absent the entry of a judicial stay or other court order that prevents project implementation or otherwise affects the terms of this Project Stipulation.  All funds provided to any Trustee under this Stipulation shall be paid and deposited in accordance with the instructions provided by the Implementing Trustee(s) pursuant to Paragraphs II.C. and II.D. below.

B.  The Trustees shall use the funds paid under this Stipulation only for implementation of the Early Restoration Project, including oversight, monitoring, corrective actions, maintenance, and any agreed upon contingency, except as provided in Paragraphs II.E. and II.F.  The estimated cost of the Early Restoration Project is set forth in Appendix A.

C.  Initial Payment:  Within thirty (30) days of the filing of this Project Stipulation or receipt of written payment instructions from the Implementing Trustee(s), whichever is later, BPXP shall cause the transfer of $672,966.75, or 25% of the amount specified in Paragraph II.A., from the Early Restoration Subaccount[1] to the account or accounts and in the manner designated in the payment instructions.

D.  Additional Payments:  The remaining 75% of the amount specified in Paragraph II.A. shall be paid from the Early Restoration Subaccount as follows:

   i.  The Implementing Trustee(s) elects to perform the Early Restoration Project with the use of contractor(s). Unless other payment arrangements are specified in Appendix A, BPXP shall transfer $672,966.75, or an additional 25% of the amount specified in Paragraph II.A., from the Early Restoration Subaccount to the account or accounts designated by the Implementing Trustee(s) within fifteen (15) days after the date that BPXP receives written notice from the Implementing Trustee(s) of issuance of a Request for Proposal, or other appropriate applicable procurement mechanism, or within sixty (60) days of the filing of this Project Stipulation, whichever is later; such notice shall include written payment instructions.

   ii.  BPXP shall transfer the remaining $1,345,933.50, or 50% of the amount specified in Paragraph II.A., from the Early Restoration Subaccount to the account or accounts designated in the payment instructions within fifteen (15) days of notice to BPXP of the selection of a contractor but before award of a contract to implement the Early Restoration Project, or within seventy-five (75) days of the filing of this Project Stipulation, whichever is later.

E.  Any and all funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

Trustee(s) has completed the Early Restoration Project, including all performance monitoring and corrective actions, shall be retained by the Trustees.  Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete.  BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

F.  If implementation of the Early Restoration Project does not commence, as specified in Appendix A, by the end of the eighteenth (18th) month after the date all Parties have signed this Project Stipulation, unless the Parties agree otherwise, the Project Stipulation shall be void and the funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation that have not been spent and remain unobligated, along with any accrued interest, shall remain in the account or accounts to which they have been transferred and only be used for another project under a new Project Stipulation agreed to by all the Parties under the terms of the Framework Agreement.

G.  Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.  NRD OFFSETS

A.  The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B.  Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.  Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV. <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-

District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E.   The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F.   Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.   <u>GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS</u>

A.   Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities.

B.   This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33  U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.G.

C.   Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D.   Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

7

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.


IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Sea Grass Recovery Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Sea Grass Recovery Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Sea Grass Recovery Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

___10/2/14_____

Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

___10/2/14_____

Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Sea Grass Recovery Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

__10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

__10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Sea Grass Recovery Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Sea Grass Recovery Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


  10/2/14                          
Date

GARY C. RIKARD
Mississippi Department of Environmental
Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

13

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Sea Grass Recovery Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Sea Grass Recovery Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date        10/2/14

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Sea Grass Recovery Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

October 2, 2014
_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Sea Grass Recovery Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2- OCT -2014
Date

2 - Oct - 2014
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:           Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:        BP Legal Department
                501 Westlake Park Blvd
                Houston, Texas 77079

Telephone Number: 281-366-6060
Facsimile Number: 281-366-5901

15

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Florida Sea Grass Recovery Project

## 1.0    INTRODUCTION

This document describes the Florida Sea Grass Recovery Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of a Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The Early Restoration Project will address boat damage to shallow seagrass beds in the Florida panhandle by restoring scars located primarily in turtle grass (*Thalassia testudinum*) habitats located in St. Joseph Bay Aquatic Preserve in Gulf County, with additional potential sites in Alligator Harbor Aquatic Preserve in Franklin County, and St. Andrews Aquatic Preserve, in Bay County (See Figure 1 for project location). A boater outreach and education component of the project will install non-regulatory Shallow Seagrass Area signage, update existing signage and buoys where applicable, and install educational signage and provide educational brochures about best practices for protecting seagrass habitats at popular boat ramps in St. Joseph Bay, Alligator Harbor, and St. Andrews Bay.  The restoration work includes surveying and mapping scarring within the seagrass habitats in the three Aquatic Preserves. Additionally, sediment tubes will then be manufactured, filled with local fine grain sediment, and deployed in approximately 2 acres of seagrass propeller scars. The tubes, which are made of biodegradable cotton fabric filled with sediment, would then be placed into propeller scars to enhance seagrass recovery by raising the propeller scar elevation to ambient grade with clean sediment of appropriate grain size, thereby offering suitable habitat for seagrass recruitment. Seagrass planting units would be installed in the sediment tubes after a 90-day curing period if necessary. This restoration will be facilitated by placing bird stakes in the restoration project area. The stakes would attract birds who then will supply natural fertilizer to the restoration area in the form of feces, which are rich in phosphorus and nitrogen.



Figure 1.  Location of envisioned Florida Seagrass Recovery Project.

## 3.0   PROJECT IMPLEMENTATION

### 3.1   Performance Criteria, Monitoring and Maintenance

Project performance will be assessed as defined in Section 12.10.4 of the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon filing of the Notice of Project Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.10.4 of the Plan have been met.

### 3.2   Estimated Project Cost

The total estimated cost to implement the Florida Sea Grass Recovery Project is $2,691,867.00, consistent with Section 12.10.4 and 12.10.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESOTRATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C

## __NRD OFFSETS__

The NRD Offsets are:

A.    17 discounted service acre years ("DSAYs") of submerged aquatic vegetation habitat in Florida, applicable to injuries to submerged aquatic vegetation habitat in Florida, as determined by the Trustees' total assessment of injury for the Oil Spill.

For the purposes of applying the NRD Offsets to the calculation of injury, the Parties agree as follows:

(1)    In the event that the injury determination for submerged aquatic vegetation habitat in Florida is quantified in the Natural Resource Damages Assessment using a metric other than DSAYs of submerged aquatic vegetation habitat in Florida, the Trustees agree to translate the agreed upon NRD Offsets into a currency consistent with the metric used to characterize the injury to submerged aquatic vegetation habitat in Florida. Any necessary translation of the offsets will rely on the data and methods developed for the assessment and authorized in 15 C.F.R. Sections 990, *et seq.*

For Purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Florida Sea Grass Recovery Project are Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA and USDA.

**APPENDIX D**

**<u>GLOSSARY OF TERMS</u>**

These definitions are not considered to be a comprehensive list for all Early Restoration Projects under the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill executed April 20, 2011.  Future projects may require other definitions, including but not limited to, other definitions for habitats included in this list.

**Discounted Service Acre Years** is expressed in present value 2010 service acre years.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Gulf Breeze Wayside Park Boat Ramp**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Gulf Breeze Wayside Park Boat Ramp ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.   is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.   Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.   All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES

A.   BPXP shall provide total funding in the amount of $309,669.00 for the Early
     Restoration Project.  All funds provided to any Trustee under this Stipulation shall
     be paid and deposited in accordance with the instructions provided by the
     Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.   The Trustees shall use the funds paid under this Stipulation only for
     implementation of the Early Restoration Project, including oversight, monitoring,
     corrective actions, maintenance, and any agreed upon contingency, except as
     provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
     Project is set forth in Appendix A.

C.   Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
     cause the transfer of 100% of the funds specified in Paragraph II.A. from the
     Early Restoration Subaccount[1] to the account or accounts and in the manner
     designated in instructions provided by the Implementing Trustee(s).

D.   Any and all funds transferred pursuant to Paragraphs II.C. of this Project
     Stipulation, along with any accrued interest, that have not been spent and remain
     unobligated after the Trustee(s) has completed the Early Restoration Project (or
     Replacement Project(s), if applicable), including all performance monitoring and
     corrective actions, shall be retained by the Trustees.  Such funds may only be used
     by the Implementing Trustee(s) for another restoration project agreed to by all
     Trustees, provided, however, that such funds may not be used for another project
     unless and until the Implementing Trustee(s) has confirmed in writing that the
     Early Restoration Project is complete.  BPXP shall not be entitled to any
     additional NRD Offsets or other credits related to any additional restoration work
     performed with such retained funds.

E.   At any time after BPXP has made full payment pursuant to Paragraph II.C., the
     Trustees may for good cause elect not to implement the Early Restoration Project.
     If the Trustees elect not to implement the Early Restoration Project in
     substantially the same form as described in Appendix A, the Parties agree that the
     Trustees shall apply any unspent funds in accordance with the following
     provisions:

     1.   The Implementing Trustee(s) for the Early Restoration Project or an
          affected trustee designated by the Implementing Trustee(s) shall retain the
          unspent funds paid by BPXP under this Project Stipulation;

     2.   The Trustees shall apply the unspent funds to one or more replacement
          project(s) ("Replacement Project(s)"), which may include a modified
          version of the project described in Appendix A.  Any Replacement
          Project(s) shall be designed to compensate for lost recreational use
          provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

3.  The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4.  The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5.  BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6.  In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount.  BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7.  BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8.  If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F.  Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.


III.  NRD OFFSETS

A.  The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B.  Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.  Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.  Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.  (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.   <u>EFFECT OF STIPULATION</u>

A.  This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.


V. <u>GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS</u>

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration. BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document. This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Breeze Wayside Park Boat Ramp Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Breeze Wayside Park Boat Ramp Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

____10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

____10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

____10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

____10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Breeze Wayside Park Boat Ramp Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_____10/2/14_____          _____
Date                                 N. GUNTER GUY, JR.
                                     Alabama Department of Conservation
                                     and Natural Resources
                                     Commissioner of Conservation
                                     64 N. Union Street
                                     Montgomery, AL 36130

_____10/2/14_____          _____
Date                                 BERRY H. TEW, JR.
                                     Geological Survey of Alabama
                                     and State Oil and Gas Board of Alabama
                                     State Geologist/Oil & Gas Supervisor
                                     P.O. Box 869999
                                     Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Breeze Wayside Park Boat Ramp Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

___10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

___10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Breeze Wayside Park Boat Ramp Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Breeze Wayside Park Boat Ramp Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


__10/2/14_____                            _____
Date                                                GARY C. RIKARD
                                                    Mississippi Department of Environmental
                                                    Quality
                                                    Executive Director
                                                    P.O. Box 2261
                                                    Jackson, Mississippi 39225-2261

13

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Breeze Wayside Park Boat Ramp Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Breeze Wayside Park Boat Ramp Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Breeze Wayside Park Boat Ramp Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____        _____
Date                                   CARTER SMITH
                                       Texas Parks and Wildlife Department
                                       Executive Director
                                       4200 Smith School Road
                                       Austin, Texas 78744



_____        _____
Date                                   LARRY L. LAINE
                                       Texas General Land Office
                                       Deputy Land Commissioner and Chief Clerk
                                       P. O. Box 12873
                                       Austin, Texas 78711


October 2, 2014                        _____
_____        RICHARD A. HYDE, P.E.
Date                                   Texas Commission on Environmental
                                       Quality
                                       Executive Director
                                       P. O. Box 13807
                                       Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf Breeze Wayside Park Boat Ramp Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2-OCT-2014
Date

2-OCT-2014
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

| | |
|---|---|
| Name: | Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims* |
| Address: | BP Legal Department |
| | 501 Westlake Park Blvd |
| | Houston, Texas 77079 |
| Telephone Number: | 281-366-6060 |
| Facsimile Number: | 281-366-5901 |

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Gulf Breeze Wayside Park Boat Ramp Project

## 1.0    INTRODUCTION

This document describes the Gulf Breeze Wayside Park Boat Ramp Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational boating and fishing opportunities by improving the boat ramp area.  The Early Restoration Project will improve the existing boat ramp at Wayside Park in the City of Gulf Breeze, Santa Rosa County, FL (See Figure 1 for general project location).  The improvements include repairing the existing boat ramp and seawall cap, constructing a public restroom facility, and repairing and enhancing the parking area to improve access.



Figure 1.  Location of Gulf Breeze Wayside Park Boat Ramp Project.

## 3.0    PROJECT IMPLEMENTATION

### 3.1    Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.74.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.74.4 of the Plan have been met.

### 3.2    Estimated Project Cost

The total estimated cost to implement the Gulf Breeze Wayside Park Boat Ramp Project is $309,669.00, consistent with Sections 12.74.4 and 12.74.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

**APPENDIX C**

**NRD OFFSETS**

The NRD Offsets are $619,338.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

(1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

(2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Gulf Breeze Wayside Park Boat Ramp Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

**<u>GLOSSARY OF TERMS</u>**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Gulf County Recreation Project**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Gulf County Recreation Project ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.   is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

3

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES

A.   BPXP shall provide total funding in the amount of $2,118,600.00 for the Early
     Restoration Project.  All funds provided to any Trustee under this Stipulation shall
     be paid and deposited in accordance with the instructions provided by the
     Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.   The Trustees shall use the funds paid under this Stipulation only for
     implementation of the Early Restoration Project, including oversight, monitoring,
     corrective actions, maintenance, and any agreed upon contingency, except as
     provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
     Project is set forth in Appendix A.

C.   Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
     cause the transfer of 100% of the funds specified in Paragraph II.A. from the
     Early Restoration Subaccount[1] to the account or accounts and in the manner
     designated in instructions provided by the Implementing Trustee(s).

D.   Any and all funds transferred pursuant to Paragraphs II.C. of this Project
     Stipulation, along with any accrued interest, that have not been spent and remain
     unobligated after the Trustee(s) has completed the Early Restoration Project (or
     Replacement Project(s), if applicable), including all performance monitoring and
     corrective actions, shall be retained by the Trustees.  Such funds may only be used
     by the Implementing Trustee(s) for another restoration project agreed to by all
     Trustees, provided, however, that such funds may not be used for another project
     unless and until the Implementing Trustee(s) has confirmed in writing that the
     Early Restoration Project is complete.  BPXP shall not be entitled to any
     additional NRD Offsets or other credits related to any additional restoration work
     performed with such retained funds.

E.   At any time after BPXP has made full payment pursuant to Paragraph II.C., the
     Trustees may for good cause elect not to implement the Early Restoration Project.
     If the Trustees elect not to implement the Early Restoration Project in
     substantially the same form as described in Appendix A, the Parties agree that the
     Trustees shall apply any unspent funds in accordance with the following
     provisions:

     1.   The Implementing Trustee(s) for the Early Restoration Project or an
          affected trustee designated by the Implementing Trustee(s) shall retain the
          unspent funds paid by BPXP under this Project Stipulation;

     2.   The Trustees shall apply the unspent funds to one or more replacement
          project(s) ("Replacement Project(s)"), which may include a modified
          version of the project described in Appendix A.  Any Replacement
          Project(s) shall be designed to compensate for lost recreational use
          provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount. BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III. NRD OFFSETS

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees"). NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.   <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.  GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

7

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.


IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf County Recreation Projects in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf County Recreation Projects in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

___10/2/14_____
Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

___10/2/14_____
Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

___10/2/14_____
Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

___10/2/14_____
Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf County Recreation Projects in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_____10/2/14_____
Date

_____
N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

_____10/2/14_____
Date

_____
BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf County Recreation Projects in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

_____10/2/14_____                          _____
Date                                                 LARRY MORGAN
                                                     Florida Department of Environmental
                                                     Protection
                                                     Senior Deputy General Counsel
                                                     3900 Commonwealth Blvd., MS 35
                                                     Tallahassee, Florida 32399-3000

_____10/2/14_____                          _____
Date                                                 NICK WILEY
                                                     Florida Fish and Wildlife Conservation
                                                     Commission
                                                     Executive Director
                                                     620 South Meridian Street
                                                     Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf County Recreation Projects in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf County Recreation Projects in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


   10/2/14

Date

GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf County Recreation Projects in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf County Recreation Projects in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf County Recreation Projects in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

October 2, 2014
_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Gulf County Recreation Projects in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:


2 - OCT - 2014
_____
Date


2 - OCT - 2014
_____
Date


Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

| | |
|---|---|
| Name: | Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims* |
| Address: | BP Legal Department |
| | 501 Westlake Park Blvd |
| | Houston, Texas 77079 |
| Telephone Number: | 281-366-6060 |
| Facsimile Number: | 281-366-5901 |

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Gulf County Recreation Project

## 1.0    INTRODUCTION

This document describes the Gulf County Recreation Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational boating and fishing opportunities by improving a boat ramp area, improving a park, and constructing a fishing pier.  The Early Restoration Project will improve/enhance or construct the following:

1. The existing Highland View boat ramp in Gulf County (See Figure 1 for general project location).  The improvements include renovations to the existing pier structure such as replacing planking and side bumpers. Additional work will include renovating and expanding the existing informal sand parking area to provide a more stable long-term surface. Furthermore, project plans call for providing some sort of restroom facilities.
2. The existing Beacon Hill Veterans' Memorial Park in Gulf County (See Figure 2 for general project location).  The improvements include: the construction of a small amphitheater, pavilions, upgrade/replace existing restrooms and development of a nature trail and additional area for vehicle parking.
3. The Windmark Beach Fishing Pier in Gulf County (See Figure 3 for general project location).  The improvements include constructing a fishing pier into the Gulf of Mexico.



Figure 1. Location of Gulf County Recreation Project – Highland View Boat Ramp Project.



Figure 2. Location of Gulf County Recreation Project – Beacon Hill Veterans' Memorial Park.



Figure 3. Location of Gulf County Recreation Project – Windmark Beach Fishing Pier.

## 3.0     PROJECT IMPLEMENTATION

### 3.1     Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Sections 12.53.4, 12.56.4, and 12.58.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Sections 12.53.4, 12.56.4, and 12.58.4 of the Plan have been met.

### 3.2     Estimated Project Cost

The total estimated cost to implement the Gulf County Recreation Project is $2,118,600.00, consistent with Sections 12.53.4, 12.56.4, 12.58.4, 12.53.6, 12.56.6, and 12.58.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C

## NRD OFFSETS

The NRD Offsets are $4,237,200.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

(1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

(2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Gulf County Recreation Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

## <u>GLOSSARY OF TERMS</u>

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project**
**for the Deepwater Horizon Oil Spill -**
**Navarre Beach Park Coastal Access and Dune Restoration**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Navarre Beach Park Coastal Access and Dune Restoration ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011. Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference. This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources: the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources: for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:


I.  RESTORATION PROJECT

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

  i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

  ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

  iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

  iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

  v.   is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE TRUSTEES

A.  BPXP shall provide total funding in the amount of $614,630.00 for the Early Restoration Project.  All funds provided to any Trustee under this Stipulation shall be paid and deposited in accordance with the instructions provided by the Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.  The Trustees shall use the funds paid under this Stipulation only for implementation of the Early Restoration Project, including oversight, monitoring, corrective actions, maintenance, and any agreed upon contingency, except as provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration Project is set forth in Appendix A.

C.  Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall cause the transfer of 100% of the funds specified in Paragraph II.A. from the Early Restoration Subaccount[1] to the account or accounts in the manner designated in instructions provided by the Implementing Trustee(s).

D.  Any and all funds transferred pursuant to Paragraphs II.C. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the Trustee(s) has completed the Early Restoration Project (or Replacement Project(s), if applicable), including all performance monitoring and corrective actions, shall be retained by the Trustees.  Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete.  BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

E.  At any time after BPXP has made full payment pursuant to Paragraph II.C., the Trustees may for good cause elect not to implement the Early Restoration Project. If the Trustees elect not to implement the Early Restoration Project in substantially the same form as described in Appendix A, the Parties agree that the Trustees shall apply any unspent funds in accordance with the following provisions:

1.  The Implementing Trustee(s) for the Early Restoration Project or an affected trustee designated by the Implementing Trustee(s) shall retain the unspent funds paid by BPXP under this Project Stipulation;

2.  The Trustees shall apply the unspent funds to one or more replacement project(s) ("Replacement Project(s)"), which may include a modified version of the project described in Appendix A.  Any Replacement Project(s) shall be designed to compensate for lost recreational use provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount.  BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.


III. <u>NRD OFFSETS</u>

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.  Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.  (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.   <u>EFFECT OF STIPULATION</u>

A.  This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V. <u>GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS</u>

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

7

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Coastal Access and Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
Date

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Coastal Access and Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Coastal Access and Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

10/2/14
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

10/2/14
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Coastal Access and Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:


   10/2/14
Date                                        LARRY MORGAN
                                            Florida Department of Environmental
                                            Protection
                                            Senior Deputy General Counsel
                                            3900 Commonwealth Blvd., MS 35
                                            Tallahassee, Florida 32399-3000


   10/2/14
Date                                        NICK WILEY
                                            Florida Fish and Wildlife Conservation
                                            Commission
                                            Executive Director
                                            620 South Meridian Street
                                            Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Coastal Access and Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____          _____
Date                                 KYLE GRAHAM
                                     Louisiana Coastal Protection and
                                     Restoration Authority
                                     Executive Director
                                     P.O. Box 44027
                                     Baton Rouge, Louisiana 70804

10/2/14
_____          _____
Date                                 BRIAN WYNNE
                                     Louisiana Oil Spill Coordinator's Office
                                     Director
                                     P.O. Box 66614
                                     Baton Rouge, Louisiana 70896

10/2/14
_____          _____
Date                                 PEGGY HATCH
                                     Louisiana Department of Environmental
                                     Quality
                                     Secretary
                                     P.O. Box 4301
                                     Baton Rouge, Louisiana 70821-4301

10/2/14
_____          _____
Date                                 ROBERT BARHAM
                                     Louisiana Department of Wildlife and
                                     Fisheries
                                     Secretary
                                     P.O. Box 98000
                                     Baton Rouge, Louisiana 70898

10/2/14
_____          _____
Date                                 STEVE CHUSTZ
                                     Louisiana Department of Natural Resources
                                     Secretary
                                     P.O. Box 94396
                                     Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Coastal Access and Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


   10/2/14
Date

GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

13

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Coastal Access and Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Coastal Access and Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
Date

_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Coastal Access and Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____       _____
Date                                  CARTER SMITH
                                      Texas Parks and Wildlife Department
                                      Executive Director
                                      4200 Smith School Road
                                      Austin, Texas 78744


_____       _____
Date                                  LARRY L. LAINE
                                      Texas General Land Office
                                      Deputy Land Commissioner and Chief Clerk
                                      P. O. Box 12873
                                      Austin, Texas 78711


October 2, 2014
_____       _____
Date                                  RICHARD A. HYDE, P.E.
                                      Texas Commission on Environmental
                                      Quality
                                      Executive Director
                                      P. O. Box 13807
                                      Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Coastal Access and Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

_2-OCT-2014_
Date

_2-Oct-2014_
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

| | |
|---|---|
| Name: | Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims* |
| Address: | BP Legal Department |
| | 501 Westlake Park Blvd |
| | Houston, Texas 77079 |
| Telephone Number: | 281-366-6060 |
| Facsimile Number: | 281-366-5901 |

**APPENDIX A**

**EARLY RESTORATION PROJECT**

# Appendix A:  Navarre Beach Park Coastal Access and Dune Restoration Project

## 1.0     INTRODUCTION

This document describes the Navarre Beach Park Coastal Access and Dune Restoration Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0     PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational boating and beach use opportunities by constructing new infrastructure for recreational opportunities.  The Early Restoration Project will improve access for the public seeking to access the beach and water of Santa Rosa Sound from the existing pavilion/parking lot areas (See Figure 1 for general project location and Figure 2 for conceptual design of the project).  The improvements include construction of two new beach access boardwalks from existing pavilion/parking lot areas to the Santa Rosa Sound. Additionally, a new kayak/canoe launch and boardwalk will be constructed to increase opportunities/access for recreational boating in the waters of the Sound.  The project will also restore a roughly 1 acre area of degraded dune habitat to enhance the recreational experience by helping return the area to a more natural state. This restoration will involve planting gaps in the existing dune within the project area.



Figure 1. Location of Florida Navarre Beach Park Coastal Access Project.



Figure 2. Conceptual plan for the Navarre Beach Coastal Access Project.

**3.0      PROJECT IMPLEMENTATION**

**3.1      Performance Criteria, Monitoring, and Maintenance**

Project performance will be assessed as defined in Section 12.71.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.71.4 of the Plan have been met.

**3.2      Estimated Project Cost**

The total estimated cost to implement the Navarre Beach Park Coastal Access and Dune Restoration Project is $614,630.00, consistent with Sections 12.71.4 and 12.71.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**


The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C

## NRD OFFSETS

The NRD Offsets are $1,229,260.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

> (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

> (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Navarre Beach Park Coastal Access and Dune Restoration Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

The Navarre Beach Park Coastal Access and Dune Restoration Project includes ecological restoration that has been offset with lost recreational use metric.

**APPENDIX D**

## **GLOSSARY OF TERMS**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project**
**for the Deepwater Horizon Oil Spill -**
**Navarre Beach Park Gulfside Walkover Complex**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Navarre Beach Park Gulfside Walkover Complex ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

i.    contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

ii.   addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

iii.  seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

iv.   is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

v.    is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

3

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES

   A.   BPXP shall provide total funding in the amount of $1,221,847.00 for the Early
Restoration Project.  All funds provided to any Trustee under this Stipulation shall
be paid and deposited in accordance with the instructions provided by the
Implementing Trustee(s) pursuant to Paragraph II.C. below.

   B.   The Trustees shall use the funds paid under this Stipulation only for
implementation of the Early Restoration Project, including oversight, monitoring,
corrective actions, maintenance, and any agreed upon contingency, except as
provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
Project is set forth in Appendix A.

   C.   Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
cause the transfer of 100% of the funds specified in Paragraph II.A. from the
Early Restoration Subaccount[1] to the account or accounts and in the manner
designated in instructions provided by the Implementing Trustee(s).

   D.   Any and all funds transferred pursuant to Paragraphs II.C. of this Project
Stipulation, along with any accrued interest, that have not been spent and remain
unobligated after the Trustee(s) has completed the Early Restoration Project (or
Replacement Project(s), if applicable), including all performance monitoring and
corrective actions, shall be retained by the Trustees.  Such funds may only be used
by the Implementing Trustee(s) for another restoration project agreed to by all
Trustees, provided, however, that such funds may not be used for another project
unless and until the Implementing Trustee(s) has confirmed in writing that the
Early Restoration Project is complete.  BPXP shall not be entitled to any
additional NRD Offsets or other credits related to any additional restoration work
performed with such retained funds.

   E.   At any time after BPXP has made full payment pursuant to Paragraph II.C., the
Trustees may for good cause elect not to implement the Early Restoration Project.
If the Trustees elect not to implement the Early Restoration Project in
substantially the same form as described in Appendix A, the Parties agree that the
Trustees shall apply any unspent funds in accordance with the following
provisions:

      1.   The Implementing Trustee(s) for the Early Restoration Project or an
affected trustee designated by the Implementing Trustee(s) shall retain the
unspent funds paid by BPXP under this Project Stipulation;

      2.   The Trustees shall apply the unspent funds to one or more replacement
project(s) ("Replacement Project(s)"), which may include a modified
version of the project described in Appendix A.  Any Replacement
Project(s) shall be designed to compensate for lost recreational use
provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount. BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.


III. <u>NRD OFFSETS</u>

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees"). NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

5

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project. Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1) Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2) If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal. The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission"). After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets. Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3) To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV. <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V. <u>GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS</u>

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33  U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

7

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Gulfside Walkover Complex Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Gulfside Walkover Complex Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____  _____
Date                                   SAM HIRSCH
                                       Acting Assistant Attorney General
                                       Environment & Natural Resources Division
                                       U.S. Department of Justice
                                       Washington, D.C. 20530


\_\_\_\_10/2/14_____  _____
Date                                   CYNTHIA K. DOHNER
                                       Deepwater Horizon Authorized Official
                                       Department of the Interior
                                       1875 Century Boulevard
                                       Atlanta, Georgia 30345


\_\_\_\_10/2/14_____  _____
Date                                   KENNETH J. KOPOCIS
                                       U.S. Environmental Protection Agency
                                       Principal Representative
                                       1200 Pennsylvania Ave. NW
                                       Washington, D.C. 20460


\_\_\_\_10/2/14_____  _____
Date                                   CRAIG R. O'CONNOR
                                       National Oceanic and Atmospheric
                                       Administration
                                       Special Counsel
                                       7600 Sand Point Way NE
                                       Seattle, WA 98155


\_\_\_\_10/2/14_____  _____
Date                                   ANN C. MILLS
                                       U.S. Department of Agriculture
                                       Deputy Under Secretary for Natural
                                       Resources and Environment
                                       1400 Independence Ave. SW
                                       Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Gulfside Walkover Complex Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

_10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Gulfside Walkover Complex Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

__10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental
Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

__10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation
Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Gulfside Walkover Complex Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Gulfside Walkover Complex Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


___10/2/14_____          _____
Date                                GARY C. RIKARD
                                    Mississippi Department of Environmental
                                    Quality
                                    Executive Director
                                    P.O. Box 2261
                                    Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Gulfside Walkover Complex Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Gulfside Walkover Complex Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date


_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


____10|2|14____
Date


_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date


_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711


14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Gulfside Walkover Complex Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


October 2, 2014
_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Navarre Beach Park Gulfside Walkover Complex Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2-Oct-2014
Date

2-Oct-2014
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:      Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:     BP Legal Department
         501 Westlake Park Blvd
         Houston, Texas 77079

Telephone Number:   281-366-6060
Facsimile Number:   281-366-5901

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Navarre Beach Park Gulfside Walkover Complex Project

## 1.0    INTRODUCTION

This document describes the Navarre Beach Park Gulfside Walkover Complex Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational beach use opportunities by improving beach access.  The Early Restoration Project will enhance access to the shoreline at Navarre Beach Park in Santa Rosa County (See Figure 1 for general project location).  The improvements include constructing an entrance, driveway, and parking area; constructing a restroom facility; constructing pavilions with boardwalk connections; lifeguard tower; and constructing a dune walkover that will provide access to the beach.



Figure 1. Location of Navarre Beach Park Gulfside Walkover Complex Project.

## 3.0     PROJECT IMPLEMENTATION

### 3.1     Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.72.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.72.4 of the Plan have been met.

### 3.2     Estimated Project Cost

The total estimated cost to implement the Navarre Beach Park Gulfside Walkover Complex Project is $1,221,847.00, consistent with Sections 12.72.4 and 12.72.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

**APPENDIX C**

**NRD OFFSETS**

The NRD Offsets are $2,443,694.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

    (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

    (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Navarre Beach Park Gulfside Walkover Complex Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

**<u>GLOSSARY OF TERMS</u>**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Norriego Point Restoration and Recreation Project**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Norriego Point Restoration and Recreation Project ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.   The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.   The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

ii.   addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

iii.   seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

iv.   is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

v.   is feasible and cost effective.

C.   The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.    FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
       TRUSTEES

   A.  BPXP shall provide total funding in the amount of $10,228,130.00 for the Early
Restoration Project.  All funds provided to any Trustee under this Stipulation shall
be paid and deposited in accordance with the instructions provided by the
Implementing Trustee(s) pursuant to Paragraph II.C. below.

   B.  The Trustees shall use the funds paid under this Stipulation only for
implementation of the Early Restoration Project, including oversight, monitoring,
corrective actions, maintenance, and any agreed upon contingency, except as
provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
Project is set forth in Appendix A.

   C.  Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
cause the transfer of 100% of the funds specified in Paragraph II.A. from the
Early Restoration Subaccount[1] to the account or accounts and in the manner
designated in instructions provided by the Implementing Trustee(s).

   D.  Any and all funds transferred pursuant to Paragraphs II.C. of this Project
Stipulation, along with any accrued interest, that have not been spent and remain
unobligated after the Trustee(s) has completed the Early Restoration Project (or
Replacement Project(s), if applicable), including all performance monitoring and
corrective actions, shall be retained by the Trustees.  Such funds may only be used
by the Implementing Trustee(s) for another restoration project agreed to by all
Trustees, provided, however, that such funds may not be used for another project
unless and until the Implementing Trustee(s) has confirmed in writing that the
Early Restoration Project is complete.  BPXP shall not be entitled to any
additional NRD Offsets or other credits related to any additional restoration work
performed with such retained funds.

   E.  At any time after BPXP has made full payment pursuant to Paragraph II.C., the
Trustees may for good cause elect not to implement the Early Restoration Project.
If the Trustees elect not to implement the Early Restoration Project in
substantially the same form as described in Appendix A, the Parties agree that the
Trustees shall apply any unspent funds in accordance with the following
provisions:

      1.  The Implementing Trustee(s) for the Early Restoration Project or an
affected trustee designated by the Implementing Trustee(s) shall retain the
unspent funds paid by BPXP under this Project Stipulation;

      2.  The Trustees shall apply the unspent funds to one or more replacement
project(s) ("Replacement Project(s)"), which may include a modified
version of the project described in Appendix A.  Any Replacement
Project(s) shall be designed to compensate for lost recreational use
provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount.  BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III. <u>NRD OFFSETS</u>

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.  Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.  (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.  <u>EFFECT OF STIPULATION</u>

A.  This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.   GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E.  Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G.  The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H.  To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Norriego Point Restoration and Recreation Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

___10/2/14___
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Norriego Point Restoration and Recreation Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

___10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

___10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

___10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

___10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Norriego Point Restoration and Recreation Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

10/2/14
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

10/2/14
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Norriego Point Restoration and Recreation Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

__10/2/14_____

Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

__10/2/14_____

Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Norriego Point Restoration and Recreation Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____          _____
Date                                 KYLE GRAHAM
                                     Louisiana Coastal Protection and
                                     Restoration Authority
                                     Executive Director
                                     P.O. Box 44027
                                     Baton Rouge, Louisiana 70804

10/2/14
_____          _____
Date                                 BRIAN WYNNE
                                     Louisiana Oil Spill Coordinator's Office
                                     Director
                                     P.O. Box 66614
                                     Baton Rouge, Louisiana 70896

10/2/14
_____          _____
Date                                 PEGGY HATCH
                                     Louisiana Department of Environmental
                                     Quality
                                     Secretary
                                     P.O. Box 4301
                                     Baton Rouge, Louisiana 70821-4301

10/2/14
_____          _____
Date                                 ROBERT BARHAM
                                     Louisiana Department of Wildlife and
                                     Fisheries
                                     Secretary
                                     P.O. Box 98000
                                     Baton Rouge, Louisiana 70898

10/2/14
_____          _____
Date                                 STEVE CHUSTZ
                                     Louisiana Department of Natural Resources
                                     Secretary
                                     P.O. Box 94396
                                     Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Norriego Point Restoration and Recreation Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


   10/2/14
Date

GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Norriego Point Restoration and Recreation Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Norriego Point Restoration and Recreation Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Norriego Point Restoration and Recreation Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____        _____
Date                                  CARTER SMITH
                                      Texas Parks and Wildlife Department
                                      Executive Director
                                      4200 Smith School Road
                                      Austin, Texas 78744



_____        _____
Date                                  LARRY L. LAINE
                                      Texas General Land Office
                                      Deputy Land Commissioner and Chief Clerk
                                      P. O. Box 12873
                                      Austin, Texas 78711


October 2, 2014                       _____
_____        RICHARD A. HYDE, P.E.
Date                                  Texas Commission on Environmental
                                      Quality
                                      Executive Director
                                      P. O. Box 13807
                                      Austin, Texas 78711


14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Norriego Point Restoration and Recreation Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2 - OCT - 2014
_____
Date

2 - OCT - 2014
_____
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:                Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:             BP Legal Department
                     501 Westlake Park Blvd
                     Houston, Texas 77079
Telephone Number:    281-366-6060
Facsimile Number:    281-366-5901

**APPENDIX A**

**<u>EARLY RESTORATION PROJECT</u>**

# Appendix A:  Norriego Point Restoration and Recreation Project

## 1.0    INTRODUCTION

This document describes the Norriego Point Restoration and Recreation Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational boating and beach use opportunities by stabilizing and re-establishing Norriego Point. The Early Restoration Project involves stabilizing, enhancing and re-establishing recreational activities available at Norriego Point (See Figure 1 for general project location). The stabilization of Norriego Point is critical for the expansion and maintenance of its recreational use and the continued integrity of Destin Harbor. Construction of park amenities will enhance the use of Norriego Point for the public.  The restoration work involves the construction of several erosion control structures to dissipate wave energy and protect the dredged fill placed landward of the revetment. Two new embayments will provide additional swimming areas as well as more space for boat and kayak to pull-ins.  Additionally, facilities will include a picnic pavilion with restrooms, showers, and drinking fountains; educational signage to encourage appreciation of this natural environment; a multi-use trail, bike racks, and vehicle parking along the access road adjacent to the park land.



Figure1. Location of Norriego Point Restoration and Recreation Project.

## 3.0   PROJECT IMPLEMENTATION

### 3.1   Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.78.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.78.4 of the Plan have been met.

### 3.2   Estimated Project Cost

The total estimated cost to implement the Norriego Point Restoration and Recreation Project is $10,228,130.00, consistent with Sections 12.78.4 and 12.78.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C

## NRD OFFSETS

The NRD Offsets are $20,456,260.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

    (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

    (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Norriego Point Restoration and Recreation Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

**<u>GLOSSARY OF TERMS</u>**

There are no additional defined terms for this Early Restoration Project.