**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Northwest Florida Estuarine Habitat Restoration, Protection, and Education –
Fort Walton Beach**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Northwest Florida Estuarine Habitat Restoration, Protection, and Education - Fort Walton Beach ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"),

dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I. RESTORATION PROJECT

A. The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill. On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project. On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project. The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B. The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

    i. contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

    ii. addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

    iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

    iv. is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

    v. is feasible and cost effective.

C. The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status
reports on the Early Restoration Project to BPXP describing the progress on
project implementation during each period (including a summary of costs
expended during that quarter), until the conclusion of the calendar year in which
the implementing Trustee(s) has completed construction of the project, or until the
NRD case is concluded by a judicially approved consent decree or final judgment
resolving BPXP's potential liability for natural resource damages resulting from
the Oil Spill, whichever comes first. For purposes of this reporting, a year will be
divided into the following four quarters:  (1) January, February, March; (2) April,
May, June; (3) July, August, September; (4) October, November, December.   The
first quarterly status report shall encompass all relevant information from the
quarter in which the Project Stipulation was filed as well as the first subsequent
quarter; therefore the first quarterly report may encompass a timeframe greater
than three (3) months.   Quarterly status reports will be due within sixty (60) days
after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to
submit quarterly reports for the Early Restoration Project, the implementing
Trustee(s) shall provide annual status reports on the Early Restoration Project to
BPXP describing the status of and any changes to the Early Restoration Project
and/or project expenditures during each period.  The Implementing Trustee(s)
shall provide annual status reports until the applicable performance criteria,
monitoring, and maintenance period has expired or until the NRD case is
concluded by a judicially approved consent decree or final judgment resolving
BPXP's potential liability for natural resource damages resulting from the Oil
Spill, whichever comes first.  For the purposes of the annual reporting, a reporting
year will cover from January 1st to December 31st.  The first annual report will
cover the calendar year immediately following the calendar year in which the
Implementing Trustee(s) has completed construction of the Early Restoration
Project.  Annual status reports will be due within sixty (60) days after the
conclusion of that annual reporting year.  The Trustees may group multiple Early
Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of
the Early Restoration Project to the greatest extent practicable based on the design
of the project, site conditions, and any legal limitations on access controlled by
third parties.  In addition, BPXP shall have the further right to access and copy
final design, permitting, oversight and monitoring data, and reports that are
collected or generated for the Early Restoration Project.  All such data and reports
shall be available to BPXP, after applicable quality assurance/quality control, and
may be incorporated into the Administrative Record for the Deepwater Horizon
Natural Resource Damage Assessment at the discretion of the Trustees in
accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil
Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§
990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES

A.  BPXP shall provide total funding in the amount of $4,643,547.00 for the Early
    Restoration Project.  All funds provided to any Trustee under this Stipulation shall
    be paid and deposited in accordance with the instructions provided by the
    Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.  The Trustees shall use the funds paid under this Stipulation only for
    implementation of the Early Restoration Project, including oversight, monitoring,
    corrective actions, maintenance, and any agreed upon contingency, except as
    provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
    Project is set forth in Appendix A.

C.  Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
    cause the transfer of 100% of the funds specified in Paragraph II.A. from the
    Early Restoration Subaccount[1] to the account or accounts and in the manner
    designated in instructions provided by the Implementing Trustee(s).

D.  Any and all funds transferred pursuant to Paragraphs II.C. of this Project
    Stipulation, along with any accrued interest, that have not been spent and remain
    unobligated after the Trustee(s) has completed the Early Restoration Project (or
    Replacement Project(s), if applicable), including all performance monitoring and
    corrective actions, shall be retained by the Trustees.  Such funds may only be used
    by the Implementing Trustee(s) for another restoration project agreed to by all
    Trustees, provided, however, that such funds may not be used for another project
    unless and until the Implementing Trustee(s) has confirmed in writing that the
    Early Restoration Project is complete.  BPXP shall not be entitled to any
    additional NRD Offsets or other credits related to any additional restoration work
    performed with such retained funds.

E.  At any time after BPXP has made full payment pursuant to Paragraph II.C., the
    Trustees may for good cause elect not to implement the Early Restoration Project.
    If the Trustees elect not to implement the Early Restoration Project in
    substantially the same form as described in Appendix A, the Parties agree that the
    Trustees shall apply any unspent funds in accordance with the following
    provisions:

    1.  The Implementing Trustee(s) for the Early Restoration Project or an
        affected trustee designated by the Implementing Trustee(s) shall retain the
        unspent funds paid by BPXP under this Project Stipulation;

    2.  The Trustees shall apply the unspent funds to one or more replacement
        project(s) ("Replacement Project(s)"), which may include a modified
        version of the project described in Appendix A.  Any Replacement
        Project(s) shall be designed to compensate for lost recreational use
        provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount. BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III. <u>NRD OFFSETS</u>

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees"). NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.  <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B.  Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C.  The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D.  Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E.  The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F.  Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.


V.  <u>GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS</u>

A.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B.  This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration. BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document. This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Northwest Florida Estuarine Habitat Restoration, Protection, and Education - Fort Walton Beach Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
Date

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Northwest Florida Estuarine Habitat Restoration, Protection, and Education - Fort Walton Beach Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____        _____
Date                                        SAM HIRSCH
                                            Acting Assistant Attorney General
                                            Environment & Natural Resources Division
                                            U.S. Department of Justice
                                            Washington, D.C. 20530


   10/2/14
Date                                        CYNTHIA K. DOHNER
                                            Deepwater Horizon Authorized Official
                                            Department of the Interior
                                            1875 Century Boulevard
                                            Atlanta, Georgia 30345


   10/2/14
Date                                        KENNETH J. KOPOCIS
                                            U.S. Environmental Protection Agency
                                            Principal Representative
                                            1200 Pennsylvania Ave. NW
                                            Washington, D.C. 20460


   10/2/14
Date                                        CRAIG R. O'CONNOR
                                            National Oceanic and Atmospheric
                                            Administration
                                            Special Counsel
                                            7600 Sand Point Way NE
                                            Seattle, WA 98155


   10/2/14
Date                                        ANN C. MILLS
                                            U.S. Department of Agriculture
                                            Deputy Under Secretary for Natural
                                            Resources and Environment
                                            1400 Independence Ave. SW
                                            Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Northwest Florida Estuarine Habitat Restoration, Protection, and Education - Fort Walton Beach Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_____10/2/14_____
Date

_____
N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

_____10/2/14_____
Date

_____
BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Northwest Florida Estuarine Habitat Restoration, Protection, and Education - Fort Walton Beach Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

__10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

__10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Northwest Florida Estuarine Habitat Restoration, Protection, and Education - Fort Walton Beach Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Northwest Florida Estuarine Habitat Restoration, Protection, and Education - Fort Walton Beach Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:

___10/2/14_____

Date

GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

13

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Northwest Florida Estuarine Habitat Restoration, Protection, and Education - Fort Walton Beach Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Northwest Florida Estuarine Habitat Restoration, Protection, and Education - Fort Walton Beach Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date     10/2/14

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Northwest
Florida Estuarine Habitat Restoration, Protection, and Education - Fort Walton Beach
Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of
Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____          _____
Date                                 CARTER SMITH
                                     Texas Parks and Wildlife Department
                                     Executive Director
                                     4200 Smith School Road
                                     Austin, Texas 78744


_____          _____
Date                                 LARRY L. LAINE
                                     Texas General Land Office
                                     Deputy Land Commissioner and Chief Clerk
                                     P. O. Box 12873
                                     Austin, Texas 78711


October 2, 2014                      _____
_____          RICHARD A. HYDE, P.E.
Date                                 Texas Commission on Environmental
                                     Quality
                                     Executive Director
                                     P. O. Box 13807
                                     Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Northwest Florida Estuarine Habitat Restoration, Protection, and Education - Fort Walton Beach Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2-OCT-2014
_____
Date

2-Oct-2014
_____
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:                  Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:               BP Legal Department
                       501 Westlake Park Blvd
                       Houston, Texas 77079

Telephone Number:      281-366-6060
Facsimile Number:      281-366-5901

<div align="center">

**APPENDIX A**

**<u>EARLY RESTORATION PROJECT</u>**

</div>

# Appendix A:  Northwest Florida Estuarine Habitat Restoration, Protection, and Education – Fort Walton Beach Project

## 1.0    INTRODUCTION

This document describes the Northwest Florida Estuarine Habitat Restoration, Protection, and Education – Fort Walton Beach Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational use opportunities by improving the boardwalks and enhancing adjoining natural resources and habitat.  The Early Restoration Project will construct new boardwalks and connect them to existing boardwalks as well as conducting several small natural resource and habitat enhancement projects in Fort Walton Beach (See Figure 1 for general project location).  The improvements include constructing a new educational and interactive boardwalk, expansion of an existing intertidal oyster reef, and restoration of a degraded salt marsh.



Figure 1. Location of Northwest Florida Fort Walton Beach Educational Boardwalk.

## 3.0     PROJECT IMPLEMENTATION

### 3.1     Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.88.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.88.4 of the Plan have been met.

### 3.2     Estimated Project Cost

The total estimated cost to implement the Northwest Florida Estuarine Habitat Restoration, Protection, and Education – Fort Walton Beach Project is $4,643,547.00, consistent with Sections 12.88.4 and 12.88.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill
Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic
Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>,
which was adopted by the Trustees after public review and comment. Public comments
received on the Plan are summarized in the Plan, and Trustees' responses to the
comments are included. All public comments received on the Plan are included in full in
the NRDA Administrative Record for the Plan, which can be found at the same web
address.

## APPENDIX C

## NRD OFFSETS

The NRD Offsets are $9,287,094.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

(1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

(2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Northwest Florida Estuarine Habitat Restoration, Protection, and Education – Fort Walton Beach Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

The Northwest Florida Estuarine Habitat Restoration, Protection, and Education – Fort Walton Beach Project includes ecological restoration that has been offset with lost recreational use metric.

**APPENDIX D**

## **GLOSSARY OF TERMS**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Florida Oyster Cultch Placement Project**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Florida Oyster Cultch Placement Project ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.   The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.   The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.   addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii.   seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.   is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.   is feasible and cost effective.

C.   The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES

A.   BPXP shall provide total funding in the amount of $5,370,596.00 for the Early
     Restoration Project in accordance with Paragraphs II.C. and II.D. below, absent
     the entry of a judicial stay or other court order that prevents project
     implementation or otherwise affects the terms of this Project Stipulation.  All
     funds provided to any Trustee under this Stipulation shall be paid and deposited in
     accordance with the instructions provided by the Implementing Trustee(s)
     pursuant to Paragraphs II.C. and II.D. below.

B.   The Trustees shall use the funds paid under this Stipulation only for
     implementation of the Early Restoration Project, including oversight, monitoring,
     corrective actions, maintenance, and any agreed upon contingency, except as
     provided in Paragraphs II.E. and II.F.  The estimated cost of the Early Restoration
     Project is set forth in Appendix A.

C.   Initial Payment:  Within thirty (30) days of the filing of this Project Stipulation or
     receipt of written payment instructions from the Implementing Trustee(s),
     whichever is later, BPXP shall cause the transfer of $1,342,649.00, or 25% of the
     amount specified in Paragraph II.A., from the Early Restoration Subaccount[1] to
     the account or accounts and in the manner designated in the payment instructions.

D.   Additional Payments:  The remaining 75% of the amount specified in Paragraph
     II.A. shall be paid from the Early Restoration Subaccount as follows:

     i.    The Implementing Trustee(s) elects to perform the Early Restoration
           Project with the use of contractor(s). Unless other payment arrangements
           are specified in Appendix A, BPXP shall transfer $1,342,649.00, or an
           additional 25% of the amount specified in Paragraph II.A., from the Early
           Restoration Subaccount to the account or accounts designated by the
           Implementing Trustee(s) within fifteen (15) days after the date that BPXP
           receives written notice from the Implementing Trustee(s) of issuance of a
           Request for Proposal, or other appropriate applicable procurement
           mechanism, or within sixty (60) days of the filing of this Project
           Stipulation, whichever is later; such notice shall include written payment
           instructions.

     ii.   BPXP shall transfer the remaining $2,685,298.00, or 50% of the amount
           specified in Paragraph II.A., from the Early Restoration Subaccount to the
           account or accounts designated in the payment instructions within fifteen
           (15) days of notice to BPXP of the selection of a contractor but before
           award of a contract to implement the Early Restoration Project , or within
           seventy-five (75) days of the filing of this Project Stipulation, whichever is
           later.

E.   Any and all funds transferred pursuant to Paragraph 5 of the Framework
     Agreement and Paragraphs II.C. and II.D. of this Project Stipulation, along with
     any accrued interest, that have not been spent and remain unobligated after the

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

Trustee(s) has completed the Early Restoration Project, including all performance monitoring and corrective actions, shall be retained by the Trustees.  Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete.  BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

F.   If implementation of the Early Restoration Project does not commence, as specified in Appendix A, by the end of the eighteenth (18th) month after the date all Parties have signed this Project Stipulation, unless the Parties agree otherwise, the Project Stipulation shall be void and the funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation that have not been spent and remain unobligated, along with any accrued interest, shall remain in the account or accounts to which they have been transferred and only be used for another project under a new Project Stipulation agreed to by all the Parties under the terms of the Framework Agreement.

G.   Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.   <u>NRD OFFSETS</u>

A.   The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B.   Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.   Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.   The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.   BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or

services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.   UNDERLINE[EFFECT OF STIPULATION]

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D.  Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E.  The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F.  Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.


V.  GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities.

B.  This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.G.

C.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

7

D.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E.  Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G.  The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H.  To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.


IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Oyster Cultch Placement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Oyster Cultch Placement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

| | |
|---|---|
| _____ | _____ |
| Date | SAM HIRSCH |
| | Acting Assistant Attorney General |
| | Environment & Natural Resources Division |
| | U.S. Department of Justice |
| | Washington, D.C. 20530 |

| | |
|---|---|
| \_\_\_\_10/2/14_____ | _____ |
| Date | CYNTHIA K. DOHNER |
| | Deepwater Horizon Authorized Official |
| | Department of the Interior |
| | 1875 Century Boulevard |
| | Atlanta, Georgia 30345 |

| | |
|---|---|
| \_\_\_\_10/2/14_____ | _____ |
| Date | KENNETH J. KOPOCIS |
| | U.S. Environmental Protection Agency |
| | Principal Representative |
| | 1200 Pennsylvania Ave. NW |
| | Washington, D.C. 20460 |

| | |
|---|---|
| \_\_\_\_10/2/14_____ | _____ |
| Date | CRAIG R. O'CONNOR |
| | National Oceanic and Atmospheric Administration |
| | Special Counsel |
| | 7600 Sand Point Way NE |
| | Seattle, WA 98155 |

| | |
|---|---|
| \_\_\_\_10/2/14_____ | _____ |
| Date | ANN C. MILLS |
| | U.S. Department of Agriculture |
| | Deputy Under Secretary for Natural Resources and Environment |
| | 1400 Independence Ave. SW |
| | Washington, D.C. 20250 |

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Oyster Cultch Placement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:


___10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130


___10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Oyster Cultch Placement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

_____10/2/14_____

Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

_____10/2/14_____

Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Oyster Cultch Placement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____        _____
Date                          KYLE GRAHAM
                              Louisiana Coastal Protection and
                              Restoration Authority
                              Executive Director
                              P.O. Box 44027
                              Baton Rouge, Louisiana 70804

10/2/14
_____        _____
Date                          BRIAN WYNNE
                              Louisiana Oil Spill Coordinator's Office
                              Director
                              P.O. Box 66614
                              Baton Rouge, Louisiana 70896

10/2/14
_____        _____
Date                          PEGGY HATCH
                              Louisiana Department of Environmental
                              Quality
                              Secretary
                              P.O. Box 4301
                              Baton Rouge, Louisiana 70821-4301

10/2/14
_____        _____
Date                          ROBERT BARHAM
                              Louisiana Department of Wildlife and
                              Fisheries
                              Secretary
                              P.O. Box 98000
                              Baton Rouge, Louisiana 70898

10/2/14
_____        _____
Date                          STEVE CHUSTZ
                              Louisiana Department of Natural Resources
                              Secretary
                              P.O. Box 94396
                              Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Oyster Cultch Placement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


___10/2/14_____                    _____
Date                                                          GARY C. RIKARD
                                                                 Mississippi Department of Environmental
                                                                 Quality
                                                                 Executive Director
                                                                 P.O. Box 2261
                                                                 Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Oyster Cultch Placement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Oyster Cultch Placement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

                                      _____
                                      CARTER SMITH
                                      Texas Parks and Wildlife Department
                                      Executive Director
                                      4200 Smith School Road
                                      Austin, Texas 78744

_____
Date

                                      _____
                                      LARRY L. LAINE
                                      Texas General Land Office
                                      Deputy Land Commissioner and Chief Clerk
                                      P. O. Box 12873
                                      Austin, Texas 78711

_____
Date

                                      _____
                                      RICHARD A. HYDE, P.E.
                                      Texas Commission on Environmental
                                      Quality
                                      Executive Director
                                      P. O. Box 13807
                                      Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Oyster Cultch Placement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____          _____
Date                                CARTER SMITH
                                    Texas Parks and Wildlife Department
                                    Executive Director
                                    4200 Smith School Road
                                    Austin, Texas 78744


_____          _____
Date                                LARRY L. LAINE
                                    Texas General Land Office
                                    Deputy Land Commissioner and Chief Clerk
                                    P. O. Box 12873
                                    Austin, Texas 78711


October 2, 2014                    _____
_____          RICHARD A. HYDE, P.E.
Date                                Texas Commission on Environmental
                                    Quality
                                    Executive Director
                                    P. O. Box 13807
                                    Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Oyster Cultch Placement Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2- OCT -2014
_____
Date

2- OCT - 2014
_____
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:       Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:      BP Legal Department
               501 Westlake Park Blvd
               Houston, Texas 77079

Telephone Number:   281-366-6060
Facsimile Number:    281-366-5901

15

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Florida Oyster Cultch Placement Project

## 1.0     INTRODUCTION

This document describes the Florida Oyster Cultch Placement Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of a Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0     PROJECT DESCRIPTION

The Early Restoration Project will enhance and improve the oyster populations in Pensacola Bay, Andrew Bay and Apalachicola Bay (see Figure 1 for envisioned project locations).  The improvements include the placement of a total of 42,000 cubic yards of suitable cultch material over 210 acres of previously constructed oyster bars for the settling of native oyster larvae and oyster colonization in three Florida Bays. Based on preliminary evaluation of the conditions of existing oyster bars, it is anticipated that restoration work will include:

- Placing approximately 12,000 cubic yards of cultch on debilitated oyster reefs over an approximately 60-acre area in the Pensacola Bay system in Escambia and Santa Rosa Counties;
- Placing approximately 12,000 cubic yards of cultch on debilitated oyster reefs over an approximately 60-acre area in the St. Andrew Bay system in Bay County; and
- Placing approximately 18,000 cubic yards of cultch on debilitated oyster reefs over an approximately 90-acre area in the Apalachicola Bay system in Franklin County.

The final size and locations for cultch placement will be based on environmental conditions within each bay system prior to deployment. Project designs, locations, and the timing of cultch deployment will be selected to maximize successful oyster spat settlement and survival.



Figure 1. General Location of the Florida Oyster Cultch Restoration Project.

## 3.0    PROJECT IMPLEMENTATION

### 3.1    Performance Criteria, Monitoring and Maintenance

Project performance will be assessed as defined in Section 12.28.4 of the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon filing of the Notice of Project Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.28.4 of the Plan have been met.

### 3.2    Estimated Project Cost

The total estimated cost to implement the Florida Oyster Cultch Placement Project is $5,370,596.00, consistent with Section 12.28.4 and 12.28.6 of the Plan.

**APPENDIX B**

**EARLY RESOTRATION PLAN**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at www.doi.gov/deepwaterhorizon, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C

## NRD OFFSETS

The NRD Offsets are:

  A.   425,000 Discounted Kilogram Years ("dKgYrs") of oyster Secondary
       Productivity (based on ash-free dry weight of oyster tissue) in Florida applicable
       to oyster Secondary Productivity (based on ash-free dry weight of oyster tissue)
       injuries in Florida, as determined by the Trustees' total assessment of injury for
       the Oil Spill.

For the purposes of applying the NRD Offsets to the calculation of injury, the Parties
agree as follows:

  •   If the Offsets resulting from the Florida Oyster Cultch Placement Project exceed
      the injury to oyster Secondary Productivity (based on ash-free dry weight of
      oyster tissue) in Florida then any remaining Offsets for oyster Secondary
      Productivity (based on ash-free dry weight of oyster tissue) are applicable to
      injuries to benthic Secondary Productivity in Florida.

For Purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose
resources are addressed by the Florida Oyster Cultch Placement Project are the Florida
Department of Environmental Protection, the Florida Fish and Wildlife Conservation
Commission, DOI, EPA, NOAA, and USDA.

19

## APPENDIX D

## GLOSSARY OF TERMS

These definitions are not considered to be a comprehensive list for all Early Restoration Projects under the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill executed April 20, 2011.  Future projects may require other definitions, including but not limited to, other definitions for habitats included in this list.

**Discounted Kilogram Years** is expressed in present value in 2010 kilogram years.

**Secondary Productivity:** The strict definition of secondary productivity is the rate of production of consumers (heterotrophs) in an ecosystem (Edmondson & Winberg, 1971). For purposes of the benthic secondary productivity offsets for the oyster cultch projects, it is more narrowly defined as production of herbivores and detritivores, (the P2 production level in Odum, 1959) and in particular, the net production of mobile and sessile invertebrate infauna and epifauna associated with hard bottom substrates. Oyster production is a portion of secondary productivity, and for oyster cultch projects it is defined as the secondary production attributed to oysters only.

*Odum 1959, Fundamental of Ecology, 2nd edition W.B. Saunders & Co Philadelphia, 546 p.*

*Edmondson, W.T. & G.G. Winberg, 1971, IBP Handbook on Secondary Productivity International Biome Programmed, London, 358 p.*

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A. The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B. The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.   is feasible and cost effective.

C. The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE TRUSTEES

A.   BPXP shall provide total funding in the amount of $2,000,000.00 for the Early Restoration Project.  All funds provided to any Trustee under this Stipulation shall be paid and deposited in accordance with the instructions provided by the Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.   The Trustees shall use the funds paid under this Stipulation only for implementation of the Early Restoration Project, including oversight, monitoring, corrective actions, maintenance, and any agreed upon contingency, except as provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration Project is set forth in Appendix A.

C.   Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall cause the transfer of 100% of the funds specified in Paragraph II.A. from the Early Restoration Subaccount[1] to the account or accounts and in the manner designated in instructions provided by the Implementing Trustee(s).

D.   Any and all funds transferred pursuant to Paragraphs II.C. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the Trustee(s) has completed the Early Restoration Project (or Replacement Project(s), if applicable), including all performance monitoring and corrective actions, shall be retained by the Trustees.  Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete.  BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

E.   At any time after BPXP has made full payment pursuant to Paragraph II.C., the Trustees may for good cause elect not to implement the Early Restoration Project. If the Trustees elect not to implement the Early Restoration Project in substantially the same form as described in Appendix A, the Parties agree that the Trustees shall apply any unspent funds in accordance with the following provisions:

1.   The Implementing Trustee(s) for the Early Restoration Project or an affected trustee designated by the Implementing Trustee(s) shall retain the unspent funds paid by BPXP under this Project Stipulation;

2.   The Trustees shall apply the unspent funds to one or more replacement project(s) ("Replacement Project(s)"), which may include a modified version of the project described in Appendix A.  Any Replacement Project(s) shall be designed to compensate for lost recreational use provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount. BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.  <u>NRD OFFSETS</u>

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees"). NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

5

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project. Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1) Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2) If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal. The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission"). After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets. Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3) To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV. <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.


V.   GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33  U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10 /2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:


_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


___10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


___10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


___10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


___10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

  10/2/14
_____                    _____
Date                                       N. GUNTER GUY, JR.
                                           Alabama Department of Conservation
                                           and Natural Resources
                                           Commissioner of Conservation
                                           64 N. Union Street
                                           Montgomery, AL 36130

  10/2/14
_____                    _____
Date                                       BERRY H. TEW, JR.
                                           Geological Survey of Alabama
                                           and State Oil and Gas Board of Alabama
                                           State Geologist/Oil & Gas Supervisor
                                           P.O. Box 869999
                                           Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

___10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

___10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____        _____
Date                                            KYLE GRAHAM
                                                    Louisiana Coastal Protection and
                                                    Restoration Authority
                                                    Executive Director
                                                    P.O. Box 44027
                                                    Baton Rouge, Louisiana 70804

10/2/14
_____        _____
Date                                            BRIAN WYNNE
                                                    Louisiana Oil Spill Coordinator's Office
                                                    Director
                                                    P.O. Box 66614
                                                    Baton Rouge, Louisiana 70896

10/2/14
_____        _____
Date                                            PEGGY HATCH
                                                    Louisiana Department of Environmental
                                                    Quality
                                                    Secretary
                                                    P.O. Box 4301
                                                    Baton Rouge, Louisiana 70821-4301

10/2/14
_____        _____
Date                                            ROBERT BARHAM
                                                    Louisiana Department of Wildlife and
                                                    Fisheries
                                                    Secretary
                                                    P.O. Box 98000
                                                    Baton Rouge, Louisiana 70898

10/2/14
_____        _____
Date                                            STEVE CHUSTZ
                                                    Louisiana Department of Natural Resources
                                                    Secretary
                                                    P.O. Box 94396
                                                    Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


___10/2/14_____                    _____
Date                                           GARY C. RIKARD
                                               Mississippi Department of Environmental
                                               Quality
                                               Executive Director
                                               P.O. Box 2261
                                               Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date


CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____10|2|14_____
Date


_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date


RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711


14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____          _____
Date                                      CARTER SMITH
                                          Texas Parks and Wildlife Department
                                          Executive Director
                                          4200 Smith School Road
                                          Austin, Texas 78744


_____          _____
Date                                      LARRY L. LAINE
                                          Texas General Land Office
                                          Deputy Land Commissioner and Chief Clerk
                                          P. O. Box 12873
                                          Austin, Texas 78711


October 2, 2014                           _____
_____          RICHARD A. HYDE, P.E.
Date                                      Texas Commission on Environmental
                                          Quality
                                          Executive Director
                                          P. O. Box 13807
                                          Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:


2 - OCT - 2014
_____
Date


2 - Oct - 2014
_____
Date


Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:              Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*
Address:           BP Legal Department
                   501 Westlake Park Blvd
                   Houston, Texas 77079
Telephone Number:  281-366-6060
Facsimile Number:  281-366-5901

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks Project

## 1.0    INTRODUCTION

This document describes the Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational boating and fishing opportunities by improving the city's marina.  The Early Restoration Project will provide additional recreational fishing opportunities for the public in Panama City in Bay County (See Figure 1 for general project location).  The improvements include constructing a 400-foot long pier, replacing a poorly functioning boat ramp, and constructing new staging docks associated with the boat ramp at the Panama City Marina.



Figure 1. Location of Panama City Marina Project.

## 3.0    PROJECT IMPLEMENTATION

### 3.1    Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.84.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.84.4 of the Plan have been met.

### 3.2    Estimated Project Cost

The total estimated cost to implement the Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks Project is $2,000,000.00, consistent with sections 12.84.4 and 12.84.6 of the Plan.

**APPENDIX B**

**EARLY RESTORATION PLAN**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at www.doi.gov/deepwaterhorizon, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

**APPENDIX C**

**NRD OFFSETS**

The NRD Offsets are $4,000,000.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

    (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

    (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Panama City Marina Fishing Pier, Boat Ramp, and Staging Docks Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

**<u>GLOSSARY OF TERMS</u>**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project**
**for the Deepwater Horizon Oil Spill -**
**Florida Pensacola Bay Living Shoreline**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Florida Pensacola Bay Living Shoreline Project ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A. The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill. On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project. On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project. The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B. The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

  i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

  ii.   addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

  iii.   seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

  iv.   is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

  v.   is feasible and cost effective.

C. The Early Restoration Project shall be implemented by the following Trustee(s): National Oceanic and Atmospheric Administration (NOAA) and Florida Department of Environmental Protection (FDEP) ("Implementing Trustee(s)").

D. Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E. All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES

A.  BPXP shall provide total funding in the amount of $10,828,063 for the Early
    Restoration Project.  BPXP previously advanced funding in the amount of
    $247,923.40 to NOAA for this Early Restoration Project pursuant to the
    "Advanced Funding Agreement Regarding Specified Phase III Deepwater
    Horizon Oil Spill Early Restoration Project Costs" dated January 31, 2014,
    between BPXP, the State and Federal Trustees, and the United States Department
    of Justice.  NOAA received those funds on March 5, 2014. BPXP shall provide
    the remaining funding in the amount of $10,580,139.60 in accordance with
    Paragraphs II.C. and II.D. below, absent the entry of a judicial stay or other court
    order that prevents project implementation or otherwise affects the terms of this
    Project Stipulation.  All funds provided to any Trustee under this Stipulation shall
    be paid and deposited in accordance with the instructions provided by the
    Implementing Trustee(s) pursuant to Paragraphs II.C. and II.D. below.  The
    remaining funding in the amount of $10,580,139.60 shall be distributed between
    the Implementing Trustees as follows:

    i.   Florida Department of Environmental Protection shall receive
         $9,050,545.00; and

    ii.  The United States National Oceanic and Atmospheric Administration shall
         receive $1,529,594.60.

    iii. These sums shall be distributed under Paragraphs II.C. and II.D. as
         follows:.

|  | To FDEP | To NOAA |
|---|---|---|
| Initial $2,645,034.90 (25% pursuant to Paragraph II.C): | $2,202,880.30 | $442,154.60 |
| Next $2,645,034.90 (25% pursuant to Paragraph II.D.i) | $2,322,392.20 | $322,642.70 |
| Final $5,290,069.80 (50% pursuant to Paragraph II.D.ii) | $4,525,272.50 | $764,797.30 |

B.  The Trustees shall use the funds paid under this Stipulation only for
    implementation of the Early Restoration Project, including oversight, monitoring,
    corrective actions, maintenance, and any agreed upon contingency, except as
    provided in Paragraphs II.E. and II.F.  The estimated cost of the Early Restoration
    Project is set forth in Appendix A.

C.  Initial Payment:  Within thirty (30) days of the filing of this Project Stipulation or
    receipt of written payment instructions from the Implementing Trustee(s),
    whichever is later, BPXP shall cause the transfer of 25% of the remaining funds

4

to be paid under Paragraph II.A from the Early Restoration Subaccount[1] in the amounts identified in Paragraph II.A(iii) to the account or accounts and in the manner designated in the payment instructions.

D. Additional Payments:  The remaining 75% of the amount specified in Paragraph II.A. shall be paid from the Early Restoration Subaccount as follows:

   i.  The Implementing Trustee(s) elects to perform the Early Restoration Project with the use of contractor(s). Unless other payment arrangements are specified in Appendix A, BPXP shall transfer 25% of the remaining funds to be paid under  Paragraph II.A from the Early Restoration Subaccount in the amounts identified in Paragraph II.A(iii) to the account or accounts designated by the Implementing Trustee(s) within fifteen (15) days after the date that BPXP receives written notice from the Implementing Trustee(s) of issuance of a Request for Proposal, or other appropriate applicable procurement mechanism, or within sixty (60) days of the filing of this Project Stipulation, whichever is later; such notice shall include written payment instructions.

   ii.  BPXP shall transfer the remaining 50% of the funds to be paid under Paragraph II.A from the Early Restoration Subaccount in the amounts identified in Paragraph II.A(iii) to the account or accounts designated in the payment instructions within fifteen (15) days of notice to BPXP of the selection of a contractor but before award of a contract to implement the Early Restoration Project, or within seventy-five (75) days of the filing of this Project Stipulation, whichever is later.

E. Any and all funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the Trustee(s) has completed the Early Restoration Project, including all performance monitoring and corrective actions, shall be retained by the Trustees.  Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete.  BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

F. If implementation of the Early Restoration Project does not commence, as specified in Appendix A, by the end of the eighteenth (18th) month after the date all Parties have signed this Project Stipulation, unless the Parties agree otherwise, the Project Stipulation shall be void and the funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation that have not been spent and remain unobligated, along with any accrued interest, shall remain in the account or accounts to which they have been transferred and only be used for another project under a new Project

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

Stipulation agreed to by all the Parties under the terms of the Framework Agreement.

G.  Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

H.  The Implementing Trustees may shift or transfer funds that they have received pursuant to this Stipulation among each other, as they determine to be necessary or appropriate to allow for completion of the Early Restoration Project Components (or Replacement Component(s), if applicable).

III.  <u>NRD OFFSETS</u>

A.  The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B.  Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.  Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.  Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.  (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in

any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2) If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal. The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission"). After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets. Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3) To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.   EFFECT OF STIPULATION

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.   GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.G.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration. BPXP reserves all claims, cross-

claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F.   Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G.   The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H.   To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Pensacola Bay Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

10

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Pensacola Bay Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

___10/2/14___
Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

___10/2/14___
Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

___10/2/14___
Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

___10/2/14___
Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Pensacola Bay Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_____10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

_____10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

11

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Pensacola Bay Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

_____10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

_____10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Pensacola Bay Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

13

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Pensacola Bay Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


  10/2/14
Date

GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Pensacola Bay Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida
Pensacola Bay Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig
"Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the
*Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____10/2/14_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

15

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Pensacola Bay Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date


                                    _____
                                    CARTER SMITH
                                    Texas Parks and Wildlife Department
                                    Executive Director
                                    4200 Smith School Road
                                    Austin, Texas 78744


_____
Date


                                    _____
                                    LARRY L. LAINE
                                    Texas General Land Office
                                    Deputy Land Commissioner and Chief Clerk
                                    P. O. Box 12873
                                    Austin, Texas 78711


__October 2, 2014____
Date

                                    _____
                                    RICHARD A. HYDE, P.E.
                                    Texas Commission on Environmental
                                    Quality
                                    Executive Director
                                    P. O. Box 13807
                                    Austin, Texas 78711

15

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Florida Pensacola Bay Living Shoreline Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2-OCT - 2014
Date

2-OCT - 2014
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:                    Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:                 BP Legal Department
                         501 Westlake Park Blvd
                         Houston, Texas 77079

Telephone Number:        281-366-6060
Facsimile Number:        281-366-5901

16

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Florida Pensacola Bay Living Shoreline Project

## 1.0     INTRODUCTION

This document describes the Florida Pensacola Bay Living Shoreline Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0     PROJECT DESCRIPTION

The Early Restoration Project will employ living shoreline techniques that utilize natural and/or artificial breakwater material to reduce shoreline erosion and provide habitat at two sites within a portion of Pensacola Bay.  This project will create reefs to reduce wave energy, increase benthic secondary productivity, and create salt marsh habitat.  Project activities include constructing breakwaters that will provide reef habitat and creating salt marsh habitat at two sites. In total, approximately 18.8 acres of salt marsh habitat and 4 acres of reefs would be created.

The Early Restoration Project is located in Escambia County along an urban shoreline of Pensacola Bay that has been the location of previous successful living shoreline projects. This project will implement living shoreline techniques at two neighboring sites, Project GreenShores Site II (PGS II) and Sanders Beach (see Figure 1 for general location and Figure 2 for additional detail).  PGS II is located immediately west of Muscogee Wharf and will build off work completed as part of a previous Project GreenShores effort. The Sanders Beach site is 3 miles to the west, near the mouth of Bayou Chico.

Combining the objectives of reducing shoreline erosion and providing habitat, this project will create reefs to reduce wave energy, increase benthic secondary productivity, and create salt marsh habitat. Construction activities at both sites will include placement of breakwaters, linear structures that may utilize artificial and/or shell-based materials and salt marsh creation. Reefs will be created by placing a total of approximately one mile of breakwaters, linear structures that may utilize artificial and/or shell-based materials. The breakwaters will have variable crest widths (30-80 ft) based on desired wave reduction and a height that falls within the mean high and low water lines (intertidal) of the site. The specific breakwater elevation and design will be selected to maximize protection of salt marsh habitat created, meet state regulatory requirements, and avoid or minimize conflicts with current uses at the proposed sites. The marsh creation areas will be filled with dredged material beginning at the most landward extent designed for the marshes and filling seaward.  Filling with dredge material will continue until marsh elevations

determined through the final design process are achieved.  Once the entire marsh creation areas are constructed, local, native emergent vegetation will be planted.



Figure 1.  General location of the Pensacola Bay Living Shoreline Project.



Figure 2. Location of the PGS Site II and Sanders Beach Sites.

**3.0     PROJECT IMPLEMENTATION**

**3.1     Performance Criteria, Monitoring, and Maintenance**

Project performance will be assessed as defined in section 12.8.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with section 12.8.4 of the Plan have been met.

**3.2     Estimated Project Cost**

The total estimated cost to implement the Florida Pensacola Bay Living Shoreline Project is $10,828,063.00, consistent with 12.8.4 and 12.8.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**


The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

## APPENDIX C

## <u>NRD OFFSETS</u>

The NRD Offsets are:

- 28,813 Discounted Kilogram Years ("DKg-Ys") of benthic Secondary Productivity in Florida applicable to benthic Secondary Productivity injuries in Florida, as determined by the Trustees' total assessment of injury for the Oil Spill; and

- 86.63 Discounted Service Acre Years ("DSAYs") of Salt Marsh Habitat in Florida applicable to Salt Marsh Habitat injuries in Florida, as determined by the Trustees' total assessment of injury for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury, the Parties agree as follows:

- If the Offsets resulting from the Florida Pensacola Bay Living Shoreline Project exceed the injury to benthic Secondary Productivity in Florida then any remaining Offsets for benthic Secondary Productivity are applicable to injuries to benthic Secondary Productivity within federal waters on the Continental Shelf, excluding those associated with mesophotic reefs. The NRD Offsets shall not apply to injuries in Alabama, Louisiana, Mississippi, and/or Texas.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Florida Pensacola Bay Living Shoreline Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

## APPENDIX D

## GLOSSARY OF TERMS

These definitions are not considered to be a comprehensive list for all Early Restoration Projects under the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill executed April 20, 2011.  Future projects may require other definitions, including but not limited to, other definitions for habitats included in this list.

**Continental Shelf** shall mean the contiguous shallow platforms or terraces that surround most of the continents and are terminated seaward by a relatively sharp break in slope, called the shelf edge or shelf break. In the Gulf of Mexico, this generally follows the 200-meter isobaths.

**Salt Marsh Habitat** refers to transitional marsh areas between land and water that occur in coastal areas at salinities at or approaching that of ocean water. Typical vegetation in salt marsh habitat includes species such as *Spartina alterniflora*, *Juncus romerianus*, and *Distichlis spicata.*

**Secondary Productivity**: The strict definition of secondary productivity is the rate of production of consumers (heterotrophs) in an ecosystem (Edmondson & Winberg, 1971). For purposes of the offsets for the living shoreline projects, it is more narrowly defined as production of herbivores and detritivores, (the P2 production level in Odum, 1959) and in particular, the net production of mobile and sessile invertebrate infauna and epifauna associated with hard bottom substrates.

*Odum 1959, Fundamental of Ecology, 2nd edition W.B. Saunders & Co Philadelphia, 546 p.*

*Edmondson, W.T. & G.G. Winberg, 1971, IBP Handbook on Secondary Productivity International Biome Programmed, London, 358 p.*

**Discounted Kilogram Years** is expressed in present value 2010 kilogram years.

**Discounted Service Acre Years** is expressed in present value 2010 service acre years.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Perdido Key Dune Restoration**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Perdido Key Dune Restoration Project ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.   The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.   The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.    contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.   addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii.  seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.   is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.    is feasible and cost effective.

C.   The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
TRUSTEES

A.   BPXP shall provide total funding in the amount of $611,234.00 for the Early
Restoration Project in accordance with Paragraphs II.C. and II.D. below, absent
the entry of a judicial stay or other court order that prevents project
implementation or otherwise affects the terms of this Project Stipulation.  All
funds provided to any Trustee under this Stipulation shall be paid and deposited in
accordance with the instructions provided by the Implementing Trustee(s)
pursuant to Paragraphs II.C. and II.D. below.

B.   The Trustees shall use the funds paid under this Stipulation only for
implementation of the Early Restoration Project, including oversight, monitoring,
corrective actions, maintenance, and any agreed upon contingency, except as
provided in Paragraphs II.E. and II.F.  The estimated cost of the Early Restoration
Project is set forth in Appendix A.

C.   Initial Payment:  Within thirty (30) days of the filing of this Project Stipulation or
receipt of written payment instructions from the Implementing Trustee(s),
whichever is later, BPXP shall cause the transfer of $152,808.50, or 25% of the
amount specified in Paragraph II.A., from the Early Restoration Subaccount[1] to
the account or accounts and in the manner designated in the payment instructions.

D.   Additional Payments:  The remaining 75% of the amount specified in Paragraph
II.A. shall be paid from the Early Restoration Subaccount as follows:

    i.   The Implementing Trustee(s) elects to perform the Early Restoration
Project with the use of contractor(s). Unless other payment arrangements
are specified in Appendix A, BPXP shall transfer $152,808.50, or an
additional 25% of the amount specified in Paragraph II.A., from the Early
Restoration Subaccount to the account or accounts designated by the
Implementing Trustee(s) within fifteen (15) days after the date that BPXP
receives written notice from the Implementing Trustee(s) of issuance of a
Request for Proposal, or other appropriate applicable procurement
mechanism, or within sixty (60) days of the filing of this Project
Stipulation, whichever is later; such notice shall include written payment
instructions.

    ii.   BPXP shall transfer the remaining $305,617.00, or 50% of the amount
specified in Paragraph II.A., from the Early Restoration Subaccount to the
account or accounts designated in the payment instructions within fifteen
(15) days of notice to BPXP of the selection of a contractor but before
award of a contract to implement the Early Restoration Project , or within
seventy-five (75) days of the filing of this Project Stipulation, whichever is
later.

E.   Any and all funds transferred pursuant to Paragraph 5 of the Framework
Agreement and Paragraphs II.C. and II.D. of this Project Stipulation, along with
any accrued interest, that have not been spent and remain unobligated after the

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

Trustee(s) has completed the Early Restoration Project, including all performance monitoring and corrective actions, shall be retained by the Trustees.  Such funds may only be used by the Implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until the Implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete.  BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

F.   If implementation of the Early Restoration Project does not commence, as specified in Appendix A, by the end of the eighteenth (18th) month after the date all Parties have signed this Project Stipulation, unless the Parties agree otherwise, the Project Stipulation shall be void and the funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation that have not been spent and remain unobligated, along with any accrued interest, shall remain in the account or accounts to which they have been transferred and only be used for another project under a new Project Stipulation agreed to by all the Parties under the terms of the Framework Agreement.

G.   Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.


III.   <u>NRD OFFSETS</u>

A.   The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B.   Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.   Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.   The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.   BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or

5

services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.  Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.  (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.  EFFECT OF STIPULATION

A.  This Project Stipulation is binding upon the Parties and their successors and assigns.

B.  Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C.  The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

6

D.  Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E.  The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F.  Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.   GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities.

B.  This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.G.

C.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.


IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


____10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


____10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


____10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


____10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

__10/2/14_____
Date

_____
N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

__10/2/14_____
Date

_____
BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

___10/2/14_____          _____
Date                                    LARRY MORGAN
                                        Florida Department of Environmental
                                        Protection
                                        Senior Deputy General Counsel
                                        3900 Commonwealth Blvd., MS 35
                                        Tallahassee, Florida 32399-3000

___10/2/14_____          _____
Date                                    NICK WILEY
                                        Florida Fish and Wildlife Conservation
                                        Commission
                                        Executive Director
                                        620 South Meridian Street
                                        Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____          _____
Date                             KYLE GRAHAM
                                 Louisiana Coastal Protection and
                                 Restoration Authority
                                 Executive Director
                                 P.O. Box 44027
                                 Baton Rouge, Louisiana 70804

10/2/14
_____          _____
Date                             BRIAN WYNNE
                                 Louisiana Oil Spill Coordinator's Office
                                 Director
                                 P.O. Box 66614
                                 Baton Rouge, Louisiana 70896

10/2/14
_____          _____
Date                             PEGGY HATCH
                                 Louisiana Department of Environmental
                                 Quality
                                 Secretary
                                 P.O. Box 4301
                                 Baton Rouge, Louisiana 70821-4301

10/2/14
_____          _____
Date                             ROBERT BARHAM
                                 Louisiana Department of Wildlife and
                                 Fisheries
                                 Secretary
                                 P.O. Box 98000
                                 Baton Rouge, Louisiana 70898

10/2/14
_____          _____
Date                             STEVE CHUSTZ
                                 Louisiana Department of Natural Resources
                                 Secretary
                                 P.O. Box 94396
                                 Baton Rouge, Louisiana 70804-9396

12

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


  10/2/14
Date

GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


____10|2|14_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711


14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

      _____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

      _____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


October 2, 2014
_____
Date

      _____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711


14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key Dune Restoration Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2-OCT-2014

_____

Date

2 - Oct - 2014

_____

Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:             Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:          BP Legal Department
                  501 Westlake Park Blvd
                  Houston, Texas 77079

Telephone Number: 281-366-6060
Facsimile Number: 281-366-5901

15

APPENDIX A

<u>EARLY RESTORATION PROJECT</u>

# Appendix A:  Perdido Key Dune Restoration Project

## 1.0     INTRODUCTION

This document describes the Perdido Key Dune Restoration Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of a Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0     PROJECT DESCRIPTION

The Early Restoration Project will restore dune habitat in Perdido Key in an area that begins approximately 2.2 miles east of Perdido Pass at the Florida/Alabama state line and extends approximately 6 miles to the east (See Figure 1 for general project location). The objective of the Early Restoration Project is to restore and enhance dune habitat by planting dune vegetation.  The restoration work proposed includes planting appropriate dune vegetation (e.g., sea oats, panic grasses, cord grasses, sea purslane, beach elder) approximately 20 – 60' seaward of the existing primary dune to provide a buffer to the primary dune and enhance dune habitats. In addition, gaps in existing dunes within the project area will be re-vegetated to provide a continuous dune structure. All plants will be grown from seeds or cuttings from the Alabama or North Florida coast to ensure appropriate genetic stocks are used in the project. Ultimately, the project will restore appropriate dune vegetation to approximately 20 acres of degraded beach dune habitat including some habitat used by the federally endangered Perdido Key Beach Mouse.



Figure 1. Location of Perdido Key Dune Restoration Project.

## 3.0     PROJECT IMPLEMENTATION

### 3.1     Performance Criteria, Monitoring and Maintenance

Project performance will be assessed as defined in Section 12.26.4 of the Deepwater
Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early
Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon filing of the Notice of Project Stipulation
with the MDL Court.  Project implementation will be complete when the performance
criteria consistent with Section 12.26.4 of the Plan have been met.

### 3.2     Estimated Project Cost

The total estimated cost to implement the Perdido Key Dune Restoration Project is
$611,234.00, consistent with Section 12.26.4 and 12.26.6 of the Plan.

**APPENDIX B**

**EARLY RESOTRATION PLAN**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at www.doi.gov/deepwaterhorizon, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

# APPENDIX C

## NRD OFFSETS

The NRD Offsets are:

A.   34.9 discounted service acre years ("DSAYs") of Primary Vegetated Dune Habitat A in Florida, applicable to injuries to Primary Vegetated Dune Habitat A in Florida, as determined by the Trustees' total assessment of injury for the Oil Spill.

B.   67.3 DSAYs of Primary Vegetated Dune Habitat B in Florida, applicable to injuries to Primary Vegetated Dune Habitat B in Florida, as determined by the Trustees' total assessment of injury for the Oil Spill.

For the purposes of applying the NRD Offsets to the calculation of injury, the Parties agree as follows:

(1)   In the event that the injury determination for Primary Vegetated Dune Habitat A in Florida and/or Primary Vegetated Dune Habitat B in Florida is quantified in the Natural Resource Damages Assessment using a metric other than DSAYs of Primary Vegetated Dune Habitat A in Florida and/or Primary Vegetated Dune Habitat B in Florida, the Trustees agree to translate the agreed upon NRD Offsets into a currency consistent with the metric used to characterize the injury to Primary Vegetated Dune Habitat A in Florida and/or Primary Vegetated Dune Habitat B in Florida. Any necessary translation of the offsets will rely on the data and methods developed for the assessment and authorized in 15 C.F.R. Sections 990, *et seq.*

For Purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Perdido Key Dune Restoration Project are Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA and USDA.

## APPENDIX D

## GLOSSARY OF TERMS

These definitions are not considered to be a comprehensive list for all Early Restoration Projects under the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill executed April 20, 2011.  Future projects may require other definitions, including but not limited to, other definitions for habitats included in this list.

**Discounted Service Acre Years** is expressed in present value 2010 service acre years.

**Primary Vegetated Dune Habitat** is located along seaward, frontal dunes. This habitat in Florida is characterized by a mixture of open sandy areas, grasses, and forbs. The vegetative community typically is dominated by plants such as sea oats, panic grass, beach morning-glory, and seashore elder.

**Primary Vegetated Dune Habitat "A"** is utilized by the Perdido Key Beach Mouse, a federally listed endangered species.

**Primary Vegetated Dune Habitat "B"** is not utilized by the Perdido Key Beach Mouse.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Perdido Key State Park Beach Boardwalk Improvements**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Perdido Key State Park Beach Boardwalk Improvements ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

    i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

    ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

    iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

    iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

    v.   is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES

A.  BPXP shall provide total funding in the amount of $588,500.00 for the Early
    Restoration Project.  All funds provided to any Trustee under this Stipulation shall
    be paid and deposited in accordance with the instructions provided by the
    Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.  The Trustees shall use the funds paid under this Stipulation only for
    implementation of the Early Restoration Project, including oversight, monitoring,
    corrective actions, maintenance, and any agreed upon contingency, except as
    provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
    Project is set forth in Appendix A.

C.  Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
    cause the transfer of 100% of the funds specified in Paragraph II.A. from the
    Early Restoration Subaccount[1] to the account or accounts and in the manner
    designated in instructions provided by the Implementing Trustee(s).

D.  Any and all funds transferred pursuant to Paragraphs II.C. of this Project
    Stipulation, along with any accrued interest, that have not been spent and remain
    unobligated after the Trustee(s) has completed the Early Restoration Project (or
    Replacement Project(s), if applicable), including all performance monitoring and
    corrective actions, shall be retained by the Trustees.  Such funds may only be used
    by the Implementing Trustee(s) for another restoration project agreed to by all
    Trustees, provided, however, that such funds may not be used for another project
    unless and until the Implementing Trustee(s) has confirmed in writing that the
    Early Restoration Project is complete.  BPXP shall not be entitled to any
    additional NRD Offsets or other credits related to any additional restoration work
    performed with such retained funds.

E.  At any time after BPXP has made full payment pursuant to Paragraph II.C., the
    Trustees may for good cause elect not to implement the Early Restoration Project.
    If the Trustees elect not to implement the Early Restoration Project in
    substantially the same form as described in Appendix A, the Parties agree that the
    Trustees shall apply any unspent funds in accordance with the following
    provisions:

    1.  The Implementing Trustee(s) for the Early Restoration Project or an
        affected trustee designated by the Implementing Trustee(s) shall retain the
        unspent funds paid by BPXP under this Project Stipulation;

    2.  The Trustees shall apply the unspent funds to one or more replacement
        project(s) ("Replacement Project(s)"), which may include a modified
        version of the project described in Appendix A.  Any Replacement
        Project(s) shall be designed to compensate for lost recreational use
        provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

3.  The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4.  The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5.  BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6.  In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount.  BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7.  BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8.  If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F.  Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.  NRD OFFSETS

A.  The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B.  Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.  Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

5

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.  Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.  (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.  <u>EFFECT OF STIPULATION</u>

A.  This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V. <u>GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS</u>

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.


IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key State Park Beach Boardwalk Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key State Park Beach Boardwalk Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____          _____
Date                                                        SAM HIRSCH
                                                               Acting Assistant Attorney General
                                                               Environment & Natural Resources Division
                                                               U.S. Department of Justice
                                                               Washington, D.C. 20530


_____10/2/14_____          _____
Date                                                        CYNTHIA K. DOHNER
                                                               Deepwater Horizon Authorized Official
                                                               Department of the Interior
                                                               1875 Century Boulevard
                                                               Atlanta, Georgia 30345


_____10/2/14_____          _____
Date                                                        KENNETH J. KOPOCIS
                                                               U.S. Environmental Protection Agency
                                                               Principal Representative
                                                               1200 Pennsylvania Ave. NW
                                                               Washington, D.C. 20460


_____10/2/14_____          _____
Date                                                        CRAIG R. O'CONNOR
                                                               National Oceanic and Atmospheric
                                                               Administration
                                                               Special Counsel
                                                               7600 Sand Point Way NE
                                                               Seattle, WA 98155


_____10/2/14_____          _____
Date                                                        ANN C. MILLS
                                                               U.S. Department of Agriculture
                                                               Deputy Under Secretary for Natural
                                                               Resources and Environment
                                                               1400 Independence Ave. SW
                                                               Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key State Park Beach Boardwalk Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

___10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

___10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

10

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key State Park Beach Boardwalk Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

_10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental
Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

_10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation
Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key State Park Beach Boardwalk Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____          _____
Date                                 KYLE GRAHAM
                                     Louisiana Coastal Protection and
                                     Restoration Authority
                                     Executive Director
                                     P.O. Box 44027
                                     Baton Rouge, Louisiana 70804

10/2/14
_____          _____
Date                                 BRIAN WYNNE
                                     Louisiana Oil Spill Coordinator's Office
                                     Director
                                     P.O. Box 66614
                                     Baton Rouge, Louisiana 70896

10/2/14
_____          _____
Date                                 PEGGY HATCH
                                     Louisiana Department of Environmental
                                     Quality
                                     Secretary
                                     P.O. Box 4301
                                     Baton Rouge, Louisiana 70821-4301

10/2/14
_____          _____
Date                                 ROBERT BARHAM
                                     Louisiana Department of Wildlife and
                                     Fisheries
                                     Secretary
                                     P.O. Box 98000
                                     Baton Rouge, Louisiana 70898

10/2/14
_____          _____
Date                                 STEVE CHUSTZ
                                     Louisiana Department of Natural Resources
                                     Secretary
                                     P.O. Box 94396
                                     Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key State Park Beach Boardwalk Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


___10/2/14_____          _____
Date                                GARY C. RIKARD
                                    Mississippi Department of Environmental
                                    Quality
                                    Executive Director
                                    P.O. Box 2261
                                    Jackson, Mississippi 39225-2261

13

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key State Park Beach Boardwalk Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key State Park Beach Boardwalk Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____ (olzly _____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key State Park Beach Boardwalk Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


October 2, 2014
_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Perdido Key State Park Beach Boardwalk Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2-OCT-2014

Date

2-Oct-2014

Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:            Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:         BP Legal Department
                 501 Westlake Park Blvd
                 Houston, Texas 77079

Telephone Number:  281-366-6060
Facsimile Number:  281-366-5901

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Perdido Key State Park Beach Boardwalk Improvements Project

## 1.0   INTRODUCTION

This document describes the Perdido Key State Park Beach Boardwalk Improvements Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0   PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational beach use opportunities by improving beach access. The Early Restoration Project will improve a number of existing boardwalks in Perdido Key State Park in Escambia County (See Figure 1 for general project locations and Figure 2 for a detailed image of the western component of the project).   The improvements include removing and replacing six existing boardwalks leading to the beach from two public access areas.



Figure 1. Location of the Perdido Key State Park Boardwalk Project.



Figure 2. Detailed Image of the Western component of the Perdido Key State Park
Boardwalk Project.

**3.0     PROJECT IMPLEMENTATION**

**3.1     Performance Criteria, Monitoring, and Maintenance**

Project performance will be assessed as defined in Section 12.12.4 of the Programmatic
and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental
Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with
the MDL Court.  Project implementation will be complete when the performance criteria
consistent with Section 12.12.4 of the Plan have been met.

**3.2     Estimated Project Cost**

The total estimated cost to implement the Perdido Key State Park Beach Boardwalk
Improvements Project is $588,500.00, consistent with Sections 12.12.4 and 12.12.6 of the
Plan.

**APPENDIX B**

**EARLY RESTORATION PLAN**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill
Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic
Environmental Impact Statement ("Plan"), available at www.doi.gov/deepwaterhorizon,
which was adopted by the Trustees after public review and comment.  Public comments
received on the Plan are summarized in the Plan, and Trustees' responses to the
comments are included.  All public comments received on the Plan are included in full in
the NRDA Administrative Record for the Plan, which can be found at the same web
address.

**APPENDIX C**

**NRD OFFSETS**

The NRD Offsets are $1,177,000 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

    (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

    (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Perdido Key State Park Beach Boardwalk Improvements Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

## GLOSSARY OF TERMS

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Scallop Enhancement for Increased Recreational Fishing Opportunity
in the Florida Panhandle**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Scallop Enhancement for Increased Recreational Fishing Opportunity in the Florida Panhandle ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011. Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference. This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources: the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources: for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"),

dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I. RESTORATION PROJECT

A. The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B. The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i. contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii. addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv. is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v. is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection and Florida Fish and Wildlife Conservation Commission ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   <u>FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES</u>

  A.  BPXP shall provide total funding in the amount of $2,890,250.00 for the Early
     Restoration Project.  All funds provided to any Trustee under this Stipulation shall
     be paid and deposited in accordance with the instructions provided by the
     Implementing Trustee(s) pursuant to Paragraph II.C. below.

  B.  The Trustees shall use the funds paid under this Stipulation only for
     implementation of the Early Restoration Project, including oversight, monitoring,
     corrective actions, maintenance, and any agreed upon contingency, except as
     provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
     Project is set forth in Appendix A.

  C.  Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
     cause the transfer of 100% of the funds specified in Paragraph II.A. from the
     Early Restoration Subaccount[1] to the account or accounts and in the manner
     designated in instructions provided by the Implementing Trustee(s).

  D.  Any and all funds transferred pursuant to Paragraphs II.C. of this Project
     Stipulation, along with any accrued interest, that have not been spent and remain
     unobligated after the Trustee(s) has completed the Early Restoration Project (or
     Replacement Project(s), if applicable), including all performance monitoring and
     corrective actions, shall be retained by the Trustees.  Such funds may only be used
     by the Implementing Trustee(s) for another restoration project agreed to by all
     Trustees, provided, however, that such funds may not be used for another project
     unless and until the Implementing Trustee(s) has confirmed in writing that the
     Early Restoration Project is complete.  BPXP shall not be entitled to any
     additional NRD Offsets or other credits related to any additional restoration work
     performed with such retained funds.

  E.  At any time after BPXP has made full payment pursuant to Paragraph II.C., the
     Trustees may for good cause elect not to implement the Early Restoration Project.
     If the Trustees elect not to implement the Early Restoration Project in
     substantially the same form as described in Appendix A, the Parties agree that the
     Trustees shall apply any unspent funds in accordance with the following
     provisions:

    1.  The Implementing Trustee(s) for the Early Restoration Project or an
         affected trustee designated by the Implementing Trustee(s) shall retain the
         unspent funds paid by BPXP under this Project Stipulation;

    2.  The Trustees shall apply the unspent funds to one or more replacement
         project(s) ("Replacement Project(s)"), which may include a modified
         version of the project described in Appendix A.  Any Replacement

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

Project(s) shall be designed to compensate for lost recreational use provided by natural resources injured in Florida;

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount. BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.   NRD OFFSETS

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees"). NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.  Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.  Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.  (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.   EFFECT OF STIPULATION

   A.   This Project Stipulation is binding upon the Parties and their successors and assigns.

   B.   Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

   C.   The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

   D.   Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

   E.   The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

   F.   Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.   GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

   A.   Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

   B.   This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with

identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Scallop Enhancement for Increased Recreational Fishing Opportunity in the Florida Panhandle Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Scallop Enhancement for Increased Recreational Fishing Opportunity in the Florida Panhandle Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Scallop Enhancement for Increased Recreational Fishing Opportunity in the Florida Panhandle Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

_10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Scallop Enhancement for Increased Recreational Fishing Opportunity in the Florida Panhandle Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

_10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

_10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Scallop Enhancement for Increased Recreational Fishing Opportunity in the Florida Panhandle Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

12

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Scallop Enhancement for Increased Recreational Fishing Opportunity in the Florida Panhandle Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:

  10/2/14  
Date

GARY C. RIKARD  
Mississippi Department of Environmental Quality  
Executive Director  
P.O. Box 2261  
Jackson, Mississippi 39225-2261

13

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Scallop Enhancement for Increased Recreational Fishing Opportunity in the Florida Panhandle Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014

_____

Date

_____

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____

Date

_____

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____

Date

_____

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Scallop Enhancement for Increased Recreational Fishing Opportunity in the Florida Panhandle Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____10/2/14_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Scallop Enhancement for Increased Recreational Fishing Opportunity in the Florida Panhandle Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


October 2, 2014
_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Scallop Enhancement for Increased Recreational Fishing Opportunity in the Florida Panhandle Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:


2- OCT - 2014
_____
Date


2 - Oct - 2014
_____
Date


Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:          Jean Martin, *or successor attorney assigned to manage Deepwater*
               *Horizon natural Resource Damage Claims*

Address:       BP Legal Department
               501 Westlake Park Blvd
               Houston, Texas 77079

Telephone Number:  281-366-6060
Facsimile Number:  281-366-5901

APPENDIX A

**<u>EARLY RESTORATION PROJECT</u>**

# Appendix A: Scallop Enhancement for Increased Recreational Fishing Opportunity in the Florida Panhandle Project

## 1.0   INTRODUCTION

This document describes the Scallop Enhancement for Increased Recreational Fishing Opportunity in the Florida Panhandle Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0   PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational fishing opportunities by increasing scallop populations. The Early Restoration Project involves enhancing local scallop populations in targeted areas in the Florida Panhandle (See Figure 1 for potential project locations).  The improvements include the harvesting and redistribution of naturally-occurring juvenile scallops supplemented with stocking from a commercial scallop hatchery.  Implementing this project will increase scallop populations in the targeted locations to self-sustaining levels that will support recreational harvests within 3-5 years in Bay County (St. Andrew Bay system) and within 10 years in Escambia and Santa Rosa Counties (Pensacola Bay / Santa Rosa Sound) and possibly Okaloosa and Walton Counties. Scallop populations in Gulf and Franklin Counties may also be targeted for enhancement if it is deemed appropriate in order to reduce the risk of population collapses in current recreationally harvested areas.



Figure 1. Location of Potential Locations for Activity as part of the Scallop Enhancement
for Increased Recreational Fishing Opportunity in the Florida Panhandle Project.

## 3.0    PROJECT IMPLEMENTATION

### 3.1    Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.22.4 of the Programmatic
and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental
Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with
the MDL Court.  Project implementation will be complete when the performance criteria
consistent with Section 12.22.4 of the Plan have been met.

### 3.2    Estimated Project Cost

The total estimated cost to implement the Scallop Enhancement for Increased
Recreational Fishing Opportunity in the Florida Panhandle Project is $2,890,250.00,
consistent with Sections 12.22.4 and 12.22.6 of the Plan.

**APPENDIX B**

**EARLY RESTORATION PLAN**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at www.doi.gov/deepwaterhorizon, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

**APPENDIX C**

**NRD OFFSETS**

The NRD Offsets are $5,780,500.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

(1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

(2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Scallop Enhancement for Increased Recreational Fishing Opportunity are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

**<u>GLOSSARY OF TERMS</u>**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Shell Point Beach Nourishment**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Shell Point Beach Nourishment ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.  RESTORATION PROJECT

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.  contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii.  seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.  is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES

   A.   BPXP shall provide total funding in the amount of $882,750.00 for the Early
      Restoration Project.  All funds provided to any Trustee under this Stipulation shall
      be paid and deposited in accordance with the instructions provided by the
      Implementing Trustee(s) pursuant to Paragraph II.C. below.

   B.   The Trustees shall use the funds paid under this Stipulation only for
      implementation of the Early Restoration Project, including oversight, monitoring,
      corrective actions, maintenance, and any agreed upon contingency, except as
      provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
      Project is set forth in Appendix A.

   C.   Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
      cause the transfer of 100% of the funds specified in Paragraph II.A. from the
      Early Restoration Subaccount[1] to the account or accounts and in the manner
      designated in instructions provided by the Implementing Trustee(s).

   D.   Any and all funds transferred pursuant to Paragraphs II.C. of this Project
      Stipulation, along with any accrued interest, that have not been spent and remain
      unobligated after the Trustee(s) has completed the Early Restoration Project (or
      Replacement Project(s), if applicable), including all performance monitoring and
      corrective actions, shall be retained by the Trustees.  Such funds may only be used
      by the Implementing Trustee(s) for another restoration project agreed to by all
      Trustees, provided, however, that such funds may not be used for another project
      unless and until the Implementing Trustee(s) has confirmed in writing that the
      Early Restoration Project is complete.  BPXP shall not be entitled to any
      additional NRD Offsets or other credits related to any additional restoration work
      performed with such retained funds.

   E.   At any time after BPXP has made full payment pursuant to Paragraph II.C., the
      Trustees may for good cause elect not to implement the Early Restoration Project.
      If the Trustees elect not to implement the Early Restoration Project in
      substantially the same form as described in Appendix A, the Parties agree that the
      Trustees shall apply any unspent funds in accordance with the following
      provisions:

      1.   The Implementing Trustee(s) for the Early Restoration Project or an
           affected trustee designated by the Implementing Trustee(s) shall retain the
           unspent funds paid by BPXP under this Project Stipulation;

      2.   The Trustees shall apply the unspent funds to one or more replacement
           project(s) ("Replacement Project(s)"), which may include a modified
           version of the project described in Appendix A.  Any Replacement
           Project(s) shall be designed to compensate for lost recreational use
           provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

4

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount. BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III. <u>NRD OFFSETS</u>

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees"). NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

5

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project. Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1) Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2) If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal. The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission"). After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets. Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3) To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.


IV. <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.   GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

7

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.


IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Shell Point Beach Nourishment Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
Date

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


Date

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


Date

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


Date

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


Date

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Shell Point Beach Nourishment Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:


_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


___10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


___10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


___10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


___10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Shell Point Beach Nourishment Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

__10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130


__10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Shell Point Beach Nourishment Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

_____10/2/14_____                          _____
Date                                                 LARRY MORGAN
                                                     Florida Department of Environmental
                                                     Protection
                                                     Senior Deputy General Counsel
                                                     3900 Commonwealth Blvd., MS 35
                                                     Tallahassee, Florida 32399-3000

_____10/2/14_____                          _____
Date                                                 NICK WILEY
                                                     Florida Fish and Wildlife Conservation
                                                     Commission
                                                     Executive Director
                                                     620 South Meridian Street
                                                     Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Shell Point Beach Nourishment Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
—————————————          —————————————————————
Date                                         KYLE GRAHAM
                                               Louisiana Coastal Protection and
                                               Restoration Authority
                                               Executive Director
                                               P.O. Box 44027
                                               Baton Rouge, Louisiana 70804

10/2/14
—————————————          —————————————————————
Date                                         BRIAN WYNNE
                                               Louisiana Oil Spill Coordinator's Office
                                               Director
                                               P.O. Box 66614
                                               Baton Rouge, Louisiana 70896

10/2/14
—————————————          —————————————————————
Date                                         PEGGY HATCH
                                               Louisiana Department of Environmental
                                               Quality
                                               Secretary
                                               P.O. Box 4301
                                               Baton Rouge, Louisiana 70821-4301

10/2/14
—————————————          —————————————————————
Date                                         ROBERT BARHAM
                                               Louisiana Department of Wildlife and
                                               Fisheries
                                               Secretary
                                               P.O. Box 98000
                                               Baton Rouge, Louisiana 70898

10/2/14
—————————————          —————————————————————
Date                                         STEVE CHUSTZ
                                               Louisiana Department of Natural Resources
                                               Secretary
                                               P.O. Box 94396
                                               Baton Rouge, Louisiana 70804-9396

12

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Shell Point Beach Nourishment Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:

__10/2/14_____
Date

_____
GARY C. RIKARD
Mississippi Department of Environmental Quality
Executive Director
P.O. Box 2261
Jackson, Mississippi 39225-2261

13

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Shell Point Beach Nourishment Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Shell Point Beach Nourishment Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

10/2/14
_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Shell Point Beach Nourishment Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


October 2, 2014
_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Shell Point Beach Nourishment Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2-OCT-2014
Date

2-Oct-2014
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:                  Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:               BP Legal Department
                       501 Westlake Park Blvd
                       Houston, Texas 77079

Telephone Number:      281-366-6060
Facsimile Number:      281-366-5901

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Shell Point Beach Nourishment Project

## 1.0     INTRODUCTION

This document describes the Shell Point Beach Nourishment Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0     PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational beach use opportunities by improving the county owned section of the beach.   The Early Restoration Project involves the renourishment of the county owned portion of Shell Point Beach in Wakulla County (See Figure 1 for project nourishment areas).  The proposed improvements include the placement of approximately 15,000 cubic yards of sand on the county owned section of the beach from an approved upland borrow area to restore the width and historic slope/profile of this beach.



Figure 1. Location for the Shell Point Beach Nourishment Project (county owned lands defining the project renourishment area are in green).

## 3.0    PROJECT IMPLEMENTATION

### 3.1    Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.24.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.24.4 of the Plan have been met.

### 3.2    Estimated Project Cost

The total estimated cost to implement the Shell Point Beach Nourishment Project is $882,750.00, consistent with Sections 12.24.4 and 12.24.6 of the Plan).

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDA Administrative Record for the Plan, which can be found at the same web address.

**APPENDIX C**

**NRD OFFSETS**

The NRD Offsets are $1,765,500.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

    (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

    (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Shell Point Beach Nourishment Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

## **GLOSSARY OF TERMS**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Strategically Provided Boat Access Along Florida's Gulf Coast**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Strategically Provided Boat Access Along Florida's Gulf Coast ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:


I.   <u>RESTORATION PROJECT</u>

A.  The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.  The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

  i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

  ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

  iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

  iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

  v.   is feasible and cost effective.

C.  The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection and Florida Fish and Wildlife Conservation Commission ("Implementing Trustee(s)").

2

D.   Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.   All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES

   A.  BPXP shall provide total funding in the amount of $3,248,340.00 for the Early
       Restoration Project.  All funds provided to any Trustee under this Stipulation shall
       be paid and deposited in accordance with the instructions provided by the
       Implementing Trustee(s) pursuant to Paragraph II.C. below.

   B.  The Trustees shall use the funds paid under this Stipulation only for
       implementation of the Early Restoration Project, including oversight, monitoring,
       corrective actions, maintenance, and any agreed upon contingency, except as
       provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
       Project is set forth in Appendix A.

   C.  Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
       cause the transfer of 100% of the funds specified in Paragraph II.A. from the
       Early Restoration Subaccount[1] to the account or accounts and in the manner
       designated in instructions provided by the Implementing Trustee(s).

   D.  Any and all funds transferred pursuant to Paragraphs II.C. of this Project
       Stipulation, along with any accrued interest, that have not been spent and remain
       unobligated after the Trustee(s) has completed the Early Restoration Project (or
       Replacement Project(s), if applicable), including all performance monitoring and
       corrective actions, shall be retained by the Trustees.  Such funds may only be used
       by the Implementing Trustee(s) for another restoration project agreed to by all
       Trustees, provided, however, that such funds may not be used for another project
       unless and until the Implementing Trustee(s) has confirmed in writing that the
       Early Restoration Project is complete.  BPXP shall not be entitled to any
       additional NRD Offsets or other credits related to any additional restoration work
       performed with such retained funds.

   E.  At any time after BPXP has made full payment pursuant to Paragraph II.C., the
       Trustees may for good cause elect not to implement the Early Restoration Project.
       If the Trustees elect not to implement the Early Restoration Project in
       substantially the same form as described in Appendix A, the Parties agree that the
       Trustees shall apply any unspent funds in accordance with the following
       provisions:

       1.  The Implementing Trustee(s) for the Early Restoration Project or an
           affected trustee designated by the Implementing Trustee(s) shall retain the
           unspent funds paid by BPXP under this Project Stipulation;

       2.  The Trustees shall apply the unspent funds to one or more replacement
           project(s) ("Replacement Project(s)"), which may include a modified
           version of the project described in Appendix A.  Any Replacement
           Project(s) shall be designed to compensate for lost recreational use
           provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount. BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III. <u>NRD OFFSETS</u>

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees"). NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E. BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F. Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G. (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation. Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV. <u>EFFECT OF STIPULATION</u>

A. This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V. GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

7

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration. BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document. This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Strategically Provided Boat Access Along Florida's Gulf Coast Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Strategically Provided Boat Access Along Florida's Gulf Coast Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:


_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


___10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


___10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


___10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


___10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Strategically Provided Boat Access Along Florida's Gulf Coast Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

__10/2/14__
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

__10/2/14__
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

10

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Strategically Provided Boat Access Along Florida's Gulf Coast Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

_____10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

_____10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

11

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Strategically Provided Boat Access Along Florida's Gulf Coast Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

12

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Strategically Provided Boat Access Along Florida's Gulf Coast Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


____10/2/14_____          _____
Date                                GARY C. RIKARD
                                    Mississippi Department of Environmental
                                    Quality
                                    Executive Director
                                    P.O. Box 2261
                                    Jackson, Mississippi 39225-2261

13

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Strategically Provided Boat Access Along Florida's Gulf Coast Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____

Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____

Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____

Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Strategically Provided Boat Access Along Florida's Gulf Coast Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date


_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


___(0)2(14_____
Date


_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date


_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711


14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Strategically Provided Boat Access Along Florida's Gulf Coast Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

    _____
    CARTER SMITH
    Texas Parks and Wildlife Department
    Executive Director
    4200 Smith School Road
    Austin, Texas 78744

_____
Date

    _____
    LARRY L. LAINE
    Texas General Land Office
    Deputy Land Commissioner and Chief Clerk
    P. O. Box 12873
    Austin, Texas 78711

October 2, 2014
_____
Date

    _____
    RICHARD A. HYDE, P.E.
    Texas Commission on Environmental Quality
    Executive Director
    P. O. Box 13807
    Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Strategically Provided Boat Access Along Florida's Gulf Coast Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:


2 - OCT - 2014
Date


2 - Oct - 2014
Date


Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:       Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*

Address:      BP Legal Department
               501 Westlake Park Blvd
               Houston, Texas 77079

Telephone Number:   281-366-6060
Facsimile Number:    281-366-5901

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Strategically Provided Boat Access Along Florida's Gulf Coast Project

**1.0      INTRODUCTION**

This document describes the Strategically Provided Boat Access Along Florida's Gulf Coast Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

**2.0      PROJECT DESCRIPTION**

The objective of the Early Restoration Project is to enhance and/or increase recreational boating and fishing opportunities by improving a number of boat ramp areas and marinas.  The Early Restoration Project will improve and enhance the following facilities:

1.  The existing Mexico Beach Canal Park boat ramp in the City of Mexico Beach (See Figure 1 for general project location).  The improvements include replacing the boardwalk dock with a concrete surface and increasing the width, removing and replacing eighteen existing finger piers, and replacement of the existing retaining wall;
2.  The existing St. Andrews Marina docking facility in Panama City (See Figure 2 for general project location).  The improvements include adding three boat slips, replacing the boat ramp, and replacing a fixed wooden dock with a concrete floating dock;
3.  The existing Earl Gilbert dock and boat ramp in the City of Parker (See Figure 3 for general project location).  The improvements include improving the existing dock and expanding the existing parking;
4.  The existing Frank Pate boat ramp in the City of Port St. Joe (See Figure 4 for general project location).  The improvements include constructing an additional boarding dock, boat trailer parking, access drive, staging area, and a fish cleaning station;
5.  The existing City of St. Marks boat ramp (See Figure 5 for general project location).  The improvements include adding a boarding dock to the one-lane boat ramp; and
6.  The existing Lafayette Creek boat dock in Walton County (See Figure 6 for general project location).  The improvements include expanding the dock by 400 feet at the boat ramp to accommodate larger vessels and additional vessels.



Figure 1. Location of Strategic Boat Access Mexico Beach Project.



Figure 2. Location of Strategic Boat Access Panama City – St. Andrews Marina Project.



Figure 3. Location of Strategic Boat Access City of Parker, Earl Gilbert Dock and Boat Ramp Improvements Project.



Figure 4. Location of Strategic Boat Access City of Port St. Joe Frank Pate Boat Ramp Improvements Project.



Figure 5. Location of Strategic Boat Access City of St. Marks Boat Ramp Improvements Project.



Figure 6. Location of Strategic Boat Access Walton County, Lafayette Creek Boat Dock Improvements Project.

## 3.0   PROJECT IMPLEMENTATION

### 3.1   Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Sections 12.30.4, 12.32.4, 12.36.4, 12.38.4, 12.40.4, 12.44.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Sections 12.30.4, 12.32.4, 12.36.4, 12.38.4, 12.40.4, 12.44.4 of the Plan have been met.

### 3.2   Estimated Project Cost

The total estimated cost to implement the Strategically Provided Boat Access Along Florida's Gulf Coast Project is $3,248,340.00, consistent with Sections 12.30.4, 12.32.4, 12.36.4, 12.38.4, 12.40.4, 12.44.4, 12.30.6, 12.32.6, 12.36.6, 12.38.6, 12.40.6, 12.44.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill
Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic
Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>,
which was adopted by the Trustees after public review and comment.  Public comments
received on the Plan are summarized in the Plan, and Trustees' responses to the
comments are included.  All public comments received on the Plan are included in full in
the NRDA Administrative Record for the Plan, which can be found at the same web
address.

## APPENDIX C

## **NRD OFFSETS**

The NRD Offsets are $6,496,680.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

> (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

> (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Strategically Provided Boat Access Along Florida's Gulf Coast Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

**<u>GLOSSARY OF TERMS</u>**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill -
Wakulla Mashes Sands Park Improvements**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Wakulla Mashes Sands Park Improvements ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference.  This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources:  the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources:  for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I. RESTORATION PROJECT

A. The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B. The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

 i. contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

 ii. addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

 iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

 iv. is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

 v. is feasible and cost effective.

C. The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
      TRUSTEES

A. BPXP shall provide total funding in the amount of $1,500,000.00 for the Early
   Restoration Project.  All funds provided to any Trustee under this Stipulation shall
   be paid and deposited in accordance with the instructions provided by the
   Implementing Trustee(s) pursuant to Paragraph II.C. below.

B. The Trustees shall use the funds paid under this Stipulation only for
   implementation of the Early Restoration Project, including oversight, monitoring,
   corrective actions, maintenance, and any agreed upon contingency, except as
   provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
   Project is set forth in Appendix A.

C. Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
   cause the transfer of 100% of the funds specified in Paragraph II.A. from the
   Early Restoration Subaccount[1] to the account or accounts in the manner
   designated in instructions provided by the Implementing Trustee(s).

D. Any and all funds transferred pursuant to Paragraphs II.C. of this Project
   Stipulation, along with any accrued interest, that have not been spent and remain
   unobligated after the Trustee(s) has completed the Early Restoration Project (or
   Replacement Project(s), if applicable), including all performance monitoring and
   corrective actions, shall be retained by the Trustees.  Such funds may only be used
   by the Implementing Trustee(s) for another restoration project agreed to by all
   Trustees, provided, however, that such funds may not be used for another project
   unless and until the Implementing Trustee(s) has confirmed in writing that the
   Early Restoration Project is complete.  BPXP shall not be entitled to any
   additional NRD Offsets or other credits related to any additional restoration work
   performed with such retained funds.

E. At any time after BPXP has made full payment pursuant to Paragraph II.C., the
   Trustees may for good cause elect not to implement the Early Restoration Project.
   If the Trustees elect not to implement the Early Restoration Project in
   substantially the same form as described in Appendix A, the Parties agree that the
   Trustees shall apply any unspent funds in accordance with the following
   provisions:

   1. The Implementing Trustee(s) for the Early Restoration Project or an
      affected trustee designated by the Implementing Trustee(s) shall retain the
      unspent funds paid by BPXP under this Project Stipulation;

   2. The Trustees shall apply the unspent funds to one or more replacement
      project(s) ("Replacement Project(s)"), which may include a modified
      version of the project described in Appendix A.  Any Replacement
      Project(s) shall be designed to compensate for lost recreational use
      provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

3. The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4. The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5. BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6. In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount. BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7. BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8. If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III. NRD OFFSETS

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference. Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees"). NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.  Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.  (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

(2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation.  Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

(3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.


IV.  <u>EFFECT OF STIPULATION</u>

A.  This Project Stipulation is binding upon the Parties and their successors and assigns.

B. Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C. The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D. Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court. Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL. Any such notice may address multiple Project Stipulations.

E. The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F. Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters. Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material. Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.  GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B. This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33 U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

8

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Wakulla Mashes Sands Park Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345

_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155

_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Wakulla Mashes Sands Park Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


___10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


___10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


___10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


___10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Wakulla Mashes Sands Park Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

___10/2/14_____
Date

N. GUNTER GUY, JR.
Alabama Department of Conservation
and Natural Resources
Commissioner of Conservation
64 N. Union Street
Montgomery, AL 36130

___10/2/14_____
Date

BERRY H. TEW, JR.
Geological Survey of Alabama
and State Oil and Gas Board of Alabama
State Geologist/Oil & Gas Supervisor
P.O. Box 869999
Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Wakulla Mashes Sands Park Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

____10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000

____10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Wakulla Mashes Sands Park Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Wakulla Mashes Sands Park Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


_____10/2/14_____          _____
Date                                 GARY C RIKARD
                                     Mississippi Department of Environmental
                                     Quality
                                     Executive Director
                                     P.O. Box 2261
                                     Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Wakulla Mashes Sands Park Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Wakulla Mashes Sands Park Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____          _____
Date                                            CARTER SMITH
                                                    Texas Parks and Wildlife Department
                                                    Executive Director
                                                    4200 Smith School Road
                                                    Austin, Texas 78744

_____10/2/14_____          _____
Date                                            LARRY L. LAINE
                                                    Texas General Land Office
                                                    Deputy Land Commissioner and Chief Clerk
                                                    P. O. Box 12873
                                                    Austin, Texas 78711

_____          _____
Date                                            RICHARD A. HYDE, P.E.
                                                    Texas Commission on Environmental
                                                    Quality
                                                    Executive Director
                                                    P. O. Box 13807
                                                    Austin, Texas 78711

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Wakulla Mashes Sands Park Improvements Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


October 2, 2014
_____
Date

RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Wakulla
Mashes Sands Park Improvements Project in the matter of *In re: Oil Spill by the Oil Rig
"Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the
*Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2-OCT-2014
_____
Date

2-Oct-2014
_____
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production
Inc:

| | |
|---|---|
| Name: | Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims* |
| Address: | BP Legal Department |
| | 501 Westlake Park Blvd |
| | Houston, Texas 77079 |
| Telephone Number: | 281-366-6060 |
| Facsimile Number: | 281-366-5901 |

<div align="center">

**APPENDIX A**

**EARLY RESTORATION PROJECT**

</div>

# Appendix A:  Wakulla County Mashes Sands Park Improvements Project

## 1.0    INTRODUCTION

This document describes the Wakulla County Mashes Sands Park Improvements Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational boating and beach use opportunities by improving the recreational opportunities at the park.  The Early Restoration Project will improve recreation areas at the Wakulla County Mashes Sands Park (See Figure 1 for general project location).  The improvements include constructing observation platforms, boardwalks, and walking paths, improving the boat ramp area, and picnic areas, renovating the parking area, and the restroom facility, and constructing a canoe/kayak launch site.



Figure 1. Location of Wakulla County Mashes Sands Park Improvements Park.

## 3.0    PROJECT IMPLEMENTATION

### 3.1    Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Section 12.86.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with the MDL Court.  Project implementation will be complete when the performance criteria consistent with Section 12.86.4 of the Plan have been met.

### 3.2    Estimated Project Cost

The total estimated cost to implement the Wakulla County Mashes Sands Park Improvements Project is $1,500,000.00, consistent with Sections 12.86.4 and 12.86.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill
Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic
Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>,
which was adopted by the Trustees after public review and comment.  Public comments
received on the Plan are summarized in the Plan, and Trustees' responses to the
comments are included.  All public comments received on the Plan are included in full in
the NRDA Administrative Record for the Plan, which can be found at the same web
address.

**APPENDIX C**

**NRD OFFSETS**

The NRD Offsets are $3,000,000.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

> (1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

> (2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Wakulla County Mashes Sands Park Improvements Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

**<u>GLOSSARY OF TERMS</u>**

There are no additional defined terms for this Early Restoration Project.

**Stipulation Regarding Early Restoration Project**
**for the Deepwater Horizon Oil Spill -**
**Walton County Boardwalks and Dune Crossovers**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill – Walton County Boardwalks and Dune Crossovers ("Project Stipulation" or "Stipulation"), is made by and among BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined herein (collectively, with the United States Department of Justice, the "Parties") in accordance with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill ("Framework Agreement") executed April 20, 2011. Except as set forth herein, this Project Stipulation is governed by the Framework Agreement and incorporates its terms by reference. This Project Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf of the following federal trustees of natural resources: the Secretary of the United States Department of the Interior ("DOI"), through its applicable bureaus, the Administrator of the National Oceanic and Atmospheric Administration ("NOAA"), the Administrator of the United States Environmental Protection Agency ("EPA"), and the Secretary of the United States Department of Agriculture ("USDA") (collectively "Federal Trustees"); and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida, Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following state trustees of natural resources: for the State of Alabama, the Alabama Department of Conservation and Natural Resources and the Geological Survey of Alabama; for the State of Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources; for the State of Mississippi, the Mississippi Department of Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the Texas General Land Office, and the Texas Commission on Environmental Quality (collectively, "State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees"); and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment ("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions, to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal and state laws and authorities; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater Horizon Oil Spill Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement (the "Phase III Plan"), dated October 2, 2014, after public notice of the proposed plan, a reasonable opportunity

1

for public comments, and consideration of all comments received, which includes the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A.   The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project cost, and location), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 6, 2013, the Trustees published for public notice and comment a Draft Programmatic and Phase III Early Restoration Plan and Draft Early Restoration Programmatic Environmental Impact Statement that included the Early Restoration Project.  On October 2, 2014 after considering all public comments received on the draft plan, the Trustees adopted a final Phase III Plan that included the Early Restoration Project.  The final Phase III Plan (along with supporting documentation) is available publicly as described in Appendix B.

B.   The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.   is feasible and cost effective.

C.   The Early Restoration Project shall be implemented by the following Trustee(s): Florida Department of Environmental Protection ("Implementing Trustee(s)").

D.  Quarterly Reports:  The Implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to BPXP describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the conclusion of the calendar year in which the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. For purposes of this reporting, a year will be divided into the following four quarters:  (1) January, February, March; (2) April, May, June; (3) July, August, September; (4) October, November, December.   The first quarterly status report shall encompass all relevant information from the quarter in which the Project Stipulation was filed as well as the first subsequent quarter; therefore the first quarterly report may encompass a timeframe greater than three (3) months.   Quarterly status reports will be due within sixty (60) days after the end of the applicable quarter.

Annual Reports:  Once the Implementing Trustee(s) fulfills its obligations to submit quarterly reports for the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to BPXP describing the status of and any changes to the Early Restoration Project and/or project expenditures during each period.  The Implementing Trustee(s) shall provide annual status reports until the applicable performance criteria, monitoring, and maintenance period has expired or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first.  For the purposes of the annual reporting, a reporting year will cover from January 1st to December 31st.  The first annual report will cover the calendar year immediately following the calendar year in which the Implementing Trustee(s) has completed construction of the Early Restoration Project.  Annual status reports will be due within sixty (60) days after the conclusion of that annual reporting year.  The Trustees may group multiple Early Restoration Projects in a single report.

E.  All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701 et seq., and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

II.   FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE
TRUSTEES

A.  BPXP shall provide total funding in the amount of $386,291.00 for the Early
Restoration Project.  All funds provided to any Trustee under this Stipulation shall
be paid and deposited in accordance with the instructions provided by the
Implementing Trustee(s) pursuant to Paragraph II.C. below.

B.  The Trustees shall use the funds paid under this Stipulation only for
implementation of the Early Restoration Project, including oversight, monitoring,
corrective actions, maintenance, and any agreed upon contingency, except as
provided in Paragraphs II.D. and II.E.  The estimated cost of the Early Restoration
Project is set forth in Appendix A.

C.  Within fourteen (14) days after the filing of this Project Stipulation, BPXP shall
cause the transfer of 100% of the funds specified in Paragraph II.A. from the
Early Restoration Subaccount[1] to the account or accounts and in the manner
designated in instructions provided by the Implementing Trustee(s).

D.  Any and all funds transferred pursuant to Paragraphs II.C. of this Project
Stipulation, along with any accrued interest, that have not been spent and remain
unobligated after the Trustee(s) has completed the Early Restoration Project (or
Replacement Project(s), if applicable), including all performance monitoring and
corrective actions, shall be retained by the Trustees.  Such funds may only be used
by the Implementing Trustee(s) for another restoration project agreed to by all
Trustees, provided, however, that such funds may not be used for another project
unless and until the Implementing Trustee(s) has confirmed in writing that the
Early Restoration Project is complete.  BPXP shall not be entitled to any
additional NRD Offsets or other credits related to any additional restoration work
performed with such retained funds.

E.  At any time after BPXP has made full payment pursuant to Paragraph II.C., the
Trustees may for good cause elect not to implement the Early Restoration Project.
If the Trustees elect not to implement the Early Restoration Project in
substantially the same form as described in Appendix A, the Parties agree that the
Trustees shall apply any unspent funds in accordance with the following
provisions:

1.  The Implementing Trustee(s) for the Early Restoration Project or an
affected trustee designated by the Implementing Trustee(s) shall retain the
unspent funds paid by BPXP under this Project Stipulation;

2.  The Trustees shall apply the unspent funds to one or more replacement
project(s) ("Replacement Project(s)"), which may include a modified
version of the project described in Appendix A.  Any Replacement
Project(s) shall be designed to compensate for lost recreational use
provided by natural resources injured in Florida;

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the
private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early
restoration projects, as required by the terms of the Framework Agreement.

4

3.  The Trustees' selection of Replacement Project(s) under these provisions shall be subject to the criteria set forth in Paragraph 6 of the Framework Agreement and in Paragraph I.B. of this Project Stipulation, except that the Replacement Project(s) shall not be subject to the approval by BPXP;

4.  The Trustees shall keep BPXP reasonably informed about the progress for selection of Replacement Project(s) under these provisions;

5.  BPXP shall not be required by this Project Stipulation to provide any funding for the Replacement Project(s) beyond the funding provided pursuant to Paragraph II.C. and Paragraph II.E.6. below;

6.  In addition to the project funding required under Paragraph II.C., BPXP shall provide funding for reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s). Such funding shall be in addition to the funds held in the Early Restoration Subaccount.  BPXP shall not receive any additional NRD Offsets for planning costs funded pursuant to this paragraph.

7.  BPXP shall be entitled to all NRD Offsets as set forth in Section III below. The timing, selection and/or implementation of any Replacement Project(s) shall not modify the NRD Offsets as set forth in Section III below and Appendix C.

8.  If any Replacement Project is not implemented by the Trustees for good cause, the provisions of this Paragraph II.E shall apply to the selection of any new Replacement Project(s).

F.  Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project (or Replacement Project(s), if applicable) exceeds the amount of funding stated in Paragraph II.A. above, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.

III.  <u>NRD OFFSETS</u>

A.  The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C ("Affected Trustees").  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B.  Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C.  Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C.

D.  The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project (or Replacement Project(s), if applicable) does not achieve the anticipated results.

E.  BPXP waives the right to claim that the Early Restoration Project (or Replacement Project(s), if applicable) provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

F.  Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

G.  (1)  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages ("initial application").

   (2)  If the Court modifies the Trustees' assessment of natural resource damages resulting from the Oil Spill in a way that materially affects their initial application of the NRD Offsets, then the Trustees shall re-apply the NRD Offsets to reduce the natural resource damages determined by the Court, once the Court's determination is final and is not subject to further appeal.  The Trustees shall provide BPXP notice of any proposed re-application of the NRD Offsets and an opportunity of no less than sixty (60) days to submit comments and any relevant information and supporting materials ("BPXP's submission").  After considering BPXP's submission, the Trustees shall issue their modified application of the NRD Offsets.  Within thirty (30) days of receipt of the Trustees' modified application of the NRD Offsets, BPXP may seek judicial review of the Trustees' determination based solely on BPXP's submission, any response or explanation provided by the Trustees, and the record of the NRDA and the NRD litigation.  Nothing in this Paragraph shall affect the quantity or definition of NRD Offsets as set forth in Appendix C, nor shall this Paragraph require application of the NRD Offsets beyond the limitations set forth in this Stipulation, including the limitations in Appendix C on Affected Trustees and on the type and/or geographic scope of the natural resources and/or services against which the Offsets may be applied.

   (3)  To the extent NRD Offsets have been applied as provided in this Stipulation, then BPXP is not entitled to any further application of the NRD Offsets in litigation nor other proceedings brought by the Trustees.

IV.  <u>EFFECT OF STIPULATION</u>

A.  This Project Stipulation is binding upon the Parties and their successors and assigns.

B.  Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C.  The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon NRDA.

D.  Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court.  Such notice shall be substantially in the same form as the notices of Early Restoration Project Stipulations previously filed in the MDL.  Any such notice may address multiple Project Stipulations.

E.  The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project or, if applicable, Replacement Project(s).

F.  Any modification to this Project Stipulation shall be in writing signed by all Parties, except that (1) a non-material modification may be made in writing signed by the Affected Trustees, DOJ, and BPXP; and (2) the Implementing Trustee(s), DOJ, and BPXP may correct typographical or other non-substantive scriveners' errors by substituting a corrected page for the page containing the error, with the Parties' agreement to the correction(s) documented by exchange of e-mails or letters.  Any modification that affects the amount of funding to be provided, the NRD Offsets to be attributed to the project, or the effect of the Project Stipulation on claims or liabilities shall be considered material.  Notice of any modification, including corrections, shall be filed with the MDL Court for informational purposes only.

V.  GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities, except as required in Paragraph II.E.6.

B.  This Project Stipulation fully reserves and shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable natural resource damage assessment costs as provided in 33  U.S.C. § 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process, and any reasonable pre-implementation planning costs associated with identifying and selecting any Replacement Project(s) not funded by BPXP under Paragraph II.E.6; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.F.

7

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund, any Replacement Project(s) selected in accordance with this Project Stipulation, and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration. BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Project Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document. This Project Stipulation may be signed in counterparts.

H. To the extent that there is any inconsistency between this Project Stipulation and the Framework Agreement, this Project Stipulation shall govern.


IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Walton County Boardwalks and Dune Crossovers Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

10/2/14
_____
Date

_____

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


_____
Date

_____

CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


_____
Date

_____

KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


_____
Date

_____

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


_____
Date

_____

ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Walton County Boardwalks and Dune Crossovers Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


___10/2/14_____
Date

_____
CYNTHIA K. DOHNER
Deepwater Horizon Authorized Official
Department of the Interior
1875 Century Boulevard
Atlanta, Georgia 30345


___10/2/14_____
Date

_____
KENNETH J. KOPOCIS
U.S. Environmental Protection Agency
Principal Representative
1200 Pennsylvania Ave. NW
Washington, D.C. 20460


___10/2/14_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration
Special Counsel
7600 Sand Point Way NE
Seattle, WA 98155


___10/2/14_____
Date

_____
ANN C. MILLS
U.S. Department of Agriculture
Deputy Under Secretary for Natural
Resources and Environment
1400 Independence Ave. SW
Washington, D.C. 20250

9

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Walton County Boardwalks and Dune Crossovers Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:

_____10/2/14_____          _____
Date                                 N. GUNTER GUY, JR.
                                     Alabama Department of Conservation
                                     and Natural Resources
                                     Commissioner of Conservation
                                     64 N. Union Street
                                     Montgomery, AL 36130

_____10/2/14_____          _____
Date                                 BERRY H. TEW, JR.
                                     Geological Survey of Alabama
                                     and State Oil and Gas Board of Alabama
                                     State Geologist/Oil & Gas Supervisor
                                     P.O. Box 869999
                                     Tuscaloosa, AL 35486-6999

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Walton County Boardwalks and Dune Crossovers Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:


_____10/2/14_____
Date

LARRY MORGAN
Florida Department of Environmental Protection
Senior Deputy General Counsel
3900 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000


_____10/2/14_____
Date

NICK WILEY
Florida Fish and Wildlife Conservation Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Walton County Boardwalks and Dune Crossovers Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

10/2/14
_____
Date

_____
KYLE GRAHAM
Louisiana Coastal Protection and
Restoration Authority
Executive Director
P.O. Box 44027
Baton Rouge, Louisiana 70804

10/2/14
_____
Date

_____
BRIAN WYNNE
Louisiana Oil Spill Coordinator's Office
Director
P.O. Box 66614
Baton Rouge, Louisiana 70896

10/2/14
_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

10/2/14
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

10/2/14
_____
Date

_____
STEVE CHUSTZ
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

12

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Walton County Boardwalks and Dune Crossovers Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


    10/2/14
_____        _____
Date                           GARY C. RIKARD
                               Mississippi Department of Environmental
                               Quality
                               Executive Director
                               P.O. Box 2261
                               Jackson, Mississippi 39225-2261

13

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Walton County Boardwalks and Dune Crossovers Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

10/2/2014
_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Walton County Boardwalks and Dune Crossovers Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____

Date

_____

CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
(0/2/14)

Date

_____

LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711

_____

Date

_____

RICHARD A. HYDE, P.E.
Texas Commission on Environmental
Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Walton County Boardwalks and Dune Crossovers Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711


October 2, 2014
_____
Date

_____
RICHARD A. HYDE, P.E.
Texas Commission on Environmental Quality
Executive Director
P. O. Box 13807
Austin, Texas 78711

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Walton County Boardwalks and Dune Crossovers Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION INC:

2 - OCT - 2014
_____
Date

2 - Oct - 2014
_____
Date

Agent authorized to accept notices or service on behalf of BP Exploration & Production Inc:

Name:                          Jean Martin, *or successor attorney assigned to manage Deepwater Horizon natural Resource Damage Claims*
Address:                      BP Legal Department
                                   501 Westlake Park Blvd
                                   Houston, Texas 77079
Telephone Number:    281-366-6060
Facsimile Number:      281-366-5901

APPENDIX A

**EARLY RESTORATION PROJECT**

# Appendix A:  Walton County Boardwalks and Dune Crossovers Project

## 1.0    INTRODUCTION

This document describes the Walton County Boardwalks and Dune Crossovers Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of the Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0    PROJECT DESCRIPTION

The objective of the Early Restoration Project is to enhance and/or increase recreational beach use opportunities by improving access to the beach, improving existing facilities at beach access points, and improving recreational opportunities at a coastal park.  The Early Restoration Project will improve and enhance the following facilities:

1. The Ed Walline regional beach access facility in Walton County (See Figure 1 for general project location).  The improvements include replacing pavilions and restroom fixtures and updating all interior plumbing;
2. The Gulfview Heights beach access facility in Walton County (See Figure 1 for general project location).  The improvements include replacing restroom fixtures, updating all interior plumbing, and repairing all soffits on pavilions;
3. The Palms of Dune Allen West beach access facility in Walton County (See Figure 1 for general project location).  The improvements include constructing a dune walkover allowing beach visitors to access the beach; and
4. The Bayside Ranchettes Park in Walton County (See Figure 2 for general project location).  The improvements include constructing a parking area, a picnic table, a dock, and steps into the water allowing access to the bay.



Figure 1.  Location of Walton County Boardwalks and Dune Crossovers Project –
Ed Walline Beach Access Improvements, Gulfview Heights Beach Access
Improvements, and Palms of Dune Allen West Beach Access Improvements.



Figure 2. Location of Walton County Boardwalks and Dune Crossovers Project –
Bayside Ranchettes Park Improvements.

## 3.0   PROJECT IMPLEMENTATION

### 3.1   Performance Criteria, Monitoring, and Maintenance

Project performance will be assessed as defined in Sections 12.46.4, 12.47.4, 12.50.4, and
12.51.4 of the Programmatic and Phase III Early Restoration Plan and Early Restoration
Programmatic Environmental Impact Statement ("Plan").

Project implementation will commence upon the filing of the Notice of Stipulation with
the MDL Court.  Project implementation will be complete when the performance criteria
consistent with Sections 12.46.4, 12.47.4, 12.50.4, and 12.51.4 of the Plan have been met.

### 3.2   Estimated Project Cost

The total estimated cost to implement the Walton County Boardwalks and Dune
Crossovers Project is $386,291.00, consistent with Sections 12.46.4, 12.47.4, 12.50.4,
12.51.4, 12.46.6, 12.47.6, 12.50.6, and 12.51.6 of the Plan.

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill
Programmatic and Phase III Early Restoration Plan and Early Restoration Programmatic
Environmental Impact Statement ("Plan"), available at <u>www.doi.gov/deepwaterhorizon</u>,
which was adopted by the Trustees after public review and comment.  Public comments
received on the Plan are summarized in the Plan, and Trustees' responses to the
comments are included.  All public comments received on the Plan are included in full in
the NRDA Administrative Record for the Plan, which can be found at the same web
address.

**APPENDIX C**

**NRD OFFSETS**

The NRD Offsets are $772,582.00 expressed in present value 2013 dollars to be applied against the monetized value of lost recreational use provided by natural resources injured in Florida, which will be determined by the Trustees' assessment of lost recreational use for the Oil Spill.

For purposes of applying the NRD Offsets to the calculation of injury after the Trustees' assessment of lost recreational use for the Oil Spill, the Parties agree as follows:

(1) The Parties agree to restate the NRD Offsets in the present value year used in the Trustees' assessment of lost recreational use for the Oil Spill.

(2) The discount rate and method used to restate the present value of the NRD Offsets will be the same as that used to express the present value of damages.

For the purposes of Paragraph III.A. of this Project Stipulation, the Affected Trustees whose resources are addressed by the Walton County Boardwalks and Dune Crossovers Project are the Florida Department of Environmental Protection, the Florida Fish and Wildlife Conservation Commission, DOI, EPA, NOAA, and USDA.

**APPENDIX D**

**<u>GLOSSARY OF TERMS</u>**

There are no additional defined terms for this Early Restoration Project.