# EXHIBIT 4

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * | MDL NO. 2179 SECTION J |
| **THIS DOCUMENT APPLIES TO ALL ACTIONS.** | * * * * * * * * | JUDGE CARL J. BARBIER MAGISTRATE JUDGE SHUSHAN |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## DECLARATION OF KENNETH R. FEINBERG
[Regarding BP's Motion to Remove]

I, Kenneth R Feinberg, the former Administrator of the Gulf Coast Claims Facility, submit this Declaration in connection with the pending motion to remove Mr. Pat Juneau as Claims Administrator of the Court Supervised Settlement Program. I am a person of the full age of majority and, if called, am competent to testify to the facts set forth herein.

1. On or about September 16, 2014 I received a call from Phillip A. Wittmann, counsel for Mr. Juneau, who inquired about my contacts with Mr. Juneau following the BP Oil Spill and BP's knowledge of Mr. Juneau's prior representation of the State of Louisiana in connection with my development of the Protocol for Interim and Final Claims under GCCF. I asked Mr. Wittmann to submit his questions in writing, which he did by letter dated September 19, 2014. A copy of that letter is attached as Exhibit "A."

2. I responded to Mr. Wittmann's questions by letter dated October 7, 2014, a copy of which is attached as Exhibit "B." I declare under penalty of perjury that my response is

a true and correct statement of my dealings with Mr. Juneau and BP's counsel during the time that I served as the Administrator of the GCCF.

Executed this __10th__ day of October, 2014.

_____
Kenneth R. Feinberg

11713006v1

# EXHIBIT 4A

# STONE PIGMAN WALTHER WITTMANN L.L.C.

## COUNSELLORS AT LAW

546 CARONDELET STREET
NEW ORLEANS, LOUISIANA 70130-3588
(504) 581-3200
FAX (504) 581-3361
www.stonepigman.com

PHILLIP A. WITTMANN
DIRECT DIAL: (504) 593-0804
DIRECT FAX: (504) 596-0804
E-Mail: pwittmann@stonepigman.com

OUR FILE NUMBER

64,271

September 19, 2014

**VIA EMAIL**

Mr. Kenneth R. Feinberg
Feinberg Rozen, LLP
1455 Pennsylvania Avenue NW, Suite 390
Washington, D.C. 20004

Re:  Court Supervised Settlement Program for BP Oil Spill

Dear Mr. Feinberg:

I appreciate your taking the time on Wednesday to discuss this matter with me and particularly your inter-action with the Claims Administrator, Pat Juneau, during the time that you were developing the Protocol for operation of the Gulf Coast Claims Facility. As you are aware, BP has filed a motion with the Court to remove Mr. Juneau as Claims Administrator for the CSSP based, in large part, upon its assertion that at the time Mr. Juneau was appointed, BP was unaware of Mr. Juneau's prior representation of the State of Louisiana and had asserted claims adverse to BP. My review of the correspondence between you and Mr. Juneau suggests that Mr. Juneau made no claims against BP on behalf of the State of Louisiana or any other oil spill claimant, but was simply consulting with you on your proposed GCCF procedures and acting as liaison with you for the State of Louisiana.

In the interest of conserving your time, I have developed a few questions that I would very much appreciate your answering and elaborating on as you see fit:

1. Did Mr. Juneau ever assert a claim against BP on behalf of the State of Louisiana, or any other oil spill claimant, while you served as Administrator of the GCCF?

2. Did you submit a Draft Protocol for Interim and Final Claims under the GCCF to the State of Louisiana for review in November of 2010, to which the State responded on November 17, 2010 (See letter of November 17th attached) and copied BP's Managing Attorney, Mr. Mark Holstein.

3. Did Mr. Juneau make suggestions to you, as the State's representative, concerning your proposed Protocol and continue consulting with you through the fall of 2010? Were his suggestions helpful to you in developing your final Protocol for the GCCF claims process?

1169725v1

STONE PIGMAN WALTHER WITTMANN L.L.C.

PAGE 2

September 19, 2014

4. Were BP's attorneys, specifically Mr. Thomas Milch of Arnold and Porter, aware that you were consulting Mr. Juneau, and copied on e-mails between you and Mr. Juneau? (See E-mail of November 30th attached)

5. Did you consult with BP's counsel before the Motion to Remove the Claims Administrator was filed and provide them with e-mail correspondence between you and Mr. Juneau that reflected his role as a consultant offering suggestions for implementation of the claims process under the GCCF?

6. Did you communicate regularly with BP as you developed the GCCF Protocol to make it aware of suggestions you received from Mr. Juneau and, as well as other sources, to improve the claims process?

I would appreciate your responding to these questions as soon as your schedule permits, since we have an October 15th response date to BP's motion.

With best regards, I remain

Sincerely,

*Phil Wittmann*
Phillip A. Wittmann

PAW/blj
Enclosures

1169725v1



**State of Louisiana**
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
POST OFFICE BOX 94005
BATON ROUGE 70804-9005

JAMES D. "BUDDY" CALDWELL
ATTORNEY GENERAL

November 17, 2010

Mr. Kenneth R. Feinberg, Esq.
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW, Suite 390
Washington, D.C., 20004-1008

Dear Mr. Feinberg:

We are in receipt of your November 1, 2010, email transmitting the Gulf Coast Claims Facility ("GCCF") Draft Protocol for Interim and Final Claims. We appreciate the opportunity to review this protocol and offer comments. As we have mentioned, the claims process is extremely important to the citizens who have been affected by this disaster, and it is pertinent that the GCCF incorporate best practices into the protocols in order to ensure that claimants are fully compensated for the losses they have suffered from this disaster.

I have reviewed the Draft Protocol and the Attached Release and Covenant Not To Sue and have outlined below a list of ongoing concerns:

Comments:

1. The referenced causation determination of OPA claims is not consistent between the GCCF evaluation and the release. Section F of the Draft Protocol states that "[t]he GCCF will only pay for harm or damage that is proximately caused by the Spill." However, the Release states that the claimant is discharging the Released Parties for any claim "arising from or relating in any way" to the incident. Claimants are not required to release the responsible parties from liability for claims that the GCCF will not pay.

2. Neither the Release nor the Draft Protocol contain a re-opener clause. In fact, the release specifically states that the claimant "releases and forever discharges...any losses, damages, costs, expenses, injuries, claims, causes of actions, liabilities, or other relief that Claimant has or may have, whether known or unknown, whether present or future, whether direct or indirect, whether legal or equitable..." arising from the Spill. Our continued investigation into this incident suggests that some of the damages claimants may suffer will not manifest or be determinable until some unknown future date. As such, I must insist that any release contain a re-opener clause allowing for the possibility for additional compensation in the event that new damages are discovered.

Kenneth R. Feinberg
November 17, 2010
Page Two

3. OPA does not support the concept that the GCCF can release BP and other responsible or liable parties and allow BP to subrogate itself to the claimant's rights against other "Released Parties" without limitation. All references to "Released Parties" should be removed.

4. Section 6 of the Release and Covenant Not To Sue should be amended as follows, "This Release is not intended to prevent ~~any of the Released Parties~~ any person from exercising their respective rights of contribution, subrogation, or indemnity under the Oil Pollution Act of 1990 ("OPA") or any other law. ~~As this Release is fully and completely resolving, together with all other Claims, Claimant's claim under OPA,~~ To the extent authorized by OPA, BP is hereby subrogated to any and all rights that Claimant has ~~arising from the Incident,~~ under any other law." This amendment is consistent with OPA, and specifically, the subrogation language of § 2715 of OPA.

5. The last bullet of Section IV (A) of the Draft Protocol states, "Any interim payment or Emergency Advance Payment made to a Claimant will be deducted from the final payment of the claim." The Draft Protocol should clarify that the deduction only applies to a final claim for the same loss, i.e. GCCF should not deduct an interim payment for property damage from a final payment for lost profits.

I would also like to incorporate by reference the comments submitted to you, via email, on November 8, 2010, by Patrick Juneau. Thank you for providing us with an opportunity to comment on this Protocol. We encourage you to make the changes suggested above so that we can support the claims process and recommend it to our citizens.

Sincerely,

James D. "Buddy" Caldwell,
Attorney General, State of Louisiana

cc:   Attorney General Jim Hood
      State of Mississippi

      Attorney General Troy King
      State of Alabama

      Attorney General Bill McCollum
      State of Florida

Kenneth R. Feinberg
November 17, 2010
Page Three

       Attorney General Greg Abbott
       State of Texas

       Associate Attorney General Thomas Perrelli
       United States Department of Justice

       Mr. Jack Lynch
       General Counsel, BP

       Mr. Mark Holstein
       Managing Attorney, BP



**From:** Mary Anna Tabol [mailto:MaryAnna@feinbergrozen.com] **On Behalf Of** Ken Feinberg
**Sent:** Tuesday, November 30, 2010 3:35 PM
**To:** Milch, Thomas
**Subject:** FW: GCCF Protocol & Release

Your thoughts in a consultative capacity?

Thanks,
Ken

**From:** Felicia A. Guidry [mailto:FGG@juneaudavid.com] **On Behalf Of** Patrick A. Juneau
**Sent:** Tuesday, November 30, 2010 2:38 PM
**To:** Ken Feinberg
**Subject:** RE: GCCF Protocol & Release

Ken:

   Thank you for the kind comments. One correction; I am not a great servant. I am trying to get it right and help the process.

   I really do believe that the evaluation templates will assist you in processing a lot of the Louisiana claims. If your staff needs further input from us on these templates, please advise and we will make the necessary people available.

   We do disagree on the release issue. Under the provisions of section 2715(b)(2) of OPA, a strong argument could be made that there are no subrogation rights granted on final payments. Beyond that argument, I do not see how your present release can pass muster with the provisions of Sections 2702 and 2715 of OPA. First, you state that section 2715 grants BP subrogation rights. Please note that in 2715(a) there are no subrogation rights granted to BP for the OPA payments. BP gets subrogation rights only to claims the claimant may have "under any other law." Additionally, under section 2702(d)(1)(B), BP would be entitled to subrogation only if the oil spill was caused solely by the act or omission of a third party. I do not believe that BP is making such a contention.

   Finally, if BP enters into a release with a claimant and the claims against BP are discharged, those claims against BP are gone and a third party cannot support a claim against BP by some third party or cross claim. Again, if there are any contractual agreements between BP and the third parties then, of course, those contractual obligations would apply.

11/30/2010

If your legal team disagrees with the above, please let me know the basis of their position. As always, we will consider all options.

**PATRICK A. JUNEAU**
Juneau David, APLC
Post Office Drawer 51268
Lafayette, LA 70505-1268
Telephone: 337-269-0052
Facsimile: 337-269-0061
Email: paj@juneaudavid.com
          fgg@juneaudavid.com

**From:** Ken Feinberg [mailto:KFeinberg@feinbergrozen.com]
**Sent:** Sunday, November 28, 2010 7:55 AM
**To:** Patrick A. Juneau
**Subject:** RE: GCCF Protocol

Patrick – I thank you, sir, not only for sending me your comments below, but also for sending me your other email with the "compensation models" attached. Very, very helpful. I am including some of your changes in the final protocol and will send you a final version in the next week or so. Also, I have accepted an invitation from the Gulf AGs to meet with them in Fort Lauderdale this Wednesday at 12:15 p.m. If you are present, perhaps we can get together for a few minutes before the meeting. I must depart immediately thereafter. Patrick, I do appreciate your constructive criticisms and suggestions. As you know, I have accepted many of them. Where we seem to disagree most vehemently is on the question of the release. I do not understand your position on this, especially in light of the fact that I have adopted your suggestion for the option of interim payments without any release. What is the point of a release being limited to BP; the other defendants will simply cross claim and Judge Barbier will simply confront all of the litigation with the plaintiff in the courtroom against all defendants. The GCCF will not have achieved the goal of corralling the claims and eliminating litigation. In addition, if I am correct in my offers, the claimant (plaintiff) will be made whole and then some. So why permit additional litigation? My friend, you have great credibility with me and I may be missing something here; you, in your wisdom and experience, may correct me. But I don't understand your current position or that of the AG. Thanks again for everything. You are a great public and private servant.

Ken

**From:** Felicia A. Guidry [mailto:FGG@juneaudavid.com] **On Behalf Of** Patrick A. Juneau
**Sent:** Wednesday, November 24, 2010 3:08 PM
**To:** Ken Feinberg
**Cc:** Mark Brady; murrille@GOV.STATE.LA.US; Terrell, Megan K.
**Subject:** GCCF Protocol

Dear Ken:

Here are my comments on the November 22, 2010 protocol and release:

a) In Section 1 A, it should state "Pursuant to a determination by the USCG, filing a claim for a sum certain to the GCCF constitutes presentment of a claim to BP, as the Responsible Party, under OPA, whether the claim is for emergency advance, interim or final payment." This Section

11/30/2010

should also include this sentence "Filing a claim under the GCCF for OPA damages is a required "conditioned precedent" to seeking payment from the Oil Spill Liability Trust Fund ("OSLTF"), administered by the USCG, or filing a lawsuit, in State or Federal Court. Failure of an individual or business to comply with the presentment requirement in OPA could result in a denial of a claimants OSLTF claim and/or dismissal of a claimant's OPA lawsuit;

b) In both Sections II C and D the following sentence should be included "The reasonable costs incurred by the claimant in assessing the damages claim. This includes the reasonable costs of estimating the damages claim, but not attorneys fees or other administrative costs associated with preparation of the claim";

c) Under Section II E, to delete the words "not otherwise compensated" in the sentence that now reads "records showing expenditures for medical care not otherwise compensated";

d) The causation section II F should read: "The GCCF will only pay for harm, damage or removal costs that is proximately caused by the Spill. The GCCF's causation determinations of OPA claims will be guided by OPA and federal law interpreting OPA and the proximate cause doctrine. Determinations of non-OPA claims will be guided by applicable law. The GCCF will take into account, among other things, geographic proximity, nature of industry, and dependence upon injured natural resources." (This is the same definition that was contained in your protocol for Advanced Payments with the exception that I have inserted the words removal costs for reasons of clarity. There should be no difference or standard).

e) Section IV it should provide "Interim claims may not be made more frequently than once per month and may be made quarterly." (Please note that interim payments cover only "past damages," this was not the case with the emergency payment). This Section should also include a statement that "income received performing oil removal or other oil related work for BP shall not be used to offset against any interim damages or loss of income claims submitted to the GCCF";

f) In Section IV B a sentence should be added that states "income received for performing oil removal or other related work for BP shall not be used to offset against any final damages or loss of income claims submitted to the GCCF";

g) In Section VI(B) there should be no limit set as a requirement for a claimant to appeal;

h) Section V E should read "The amount of compensation shall be reduced by the amount of collateral compensation that is allowed by the applicable law. (To include the language that is now in the draft protocol would allow collateral source deductions that are not permitted in existing law).

i) The present draft of the protocol requires the execution of the release for a final payment. The release as drafted includes a release of parties in addition to BP. The release also provides for a subrogation of the claimant's rights to BP. The State of Louisiana continues to have strong objection to theses provisions in the release and insists that these provisions be removed. Sections 1702 and 1715 of OPA do not support the insertion of the subrogation language that is in the release.

**PATRICK A. JUNEAU**
Juneau David, APLC
Post Office Drawer 51268
Lafayette, LA 70505-1268
Telephone: 337-269-0052
Facsimile: 337-269-0061
Email: paj@juneaudavid.com
       fgg@juneaudavid.com

11/30/2010

U.S. Treasury Circular 230 Notice

Any U.S. federal tax advice included in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding U.S. federal tax-related penalties or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com

11/30/2010

# EXHIBIT 4B

# FEINBERG ROZEN, LLP

THE WILLARD OFFICE BUILDING
1455 PENNSYLVANIA AVENUE, N.W.
SUITE 390
WASHINGTON, D.C. 20004-1008

(202) 371-1110 (TELEPHONE)
(202) 962-9290 (FAX)

NEW YORK OFFICE
780 3RD AVENUE
26TH FLOOR
NEW YORK, NEW YORK 10017-2024
TEL: (212) 527-9600
FAX: (212) 527-9611

WRITER'S DIRECT DIAL NUMBER
202.962.9280
kfeinberg@feinbergrozen.com

October 7, 2014

VIA MAIL/FAX/FEDEX
Phillip A. Wittmann, Esq.
Stone, Pigman, Walter & Wittmann, L.L.C.
546 Carondelet Street
New Orleans, LA 70130-3588

**RE:   Court Supervised Settlement Program for BP Oil Spill**

Dear Mr. Wittmann:

I am in receipt of your letter of September 19 in which you pose questions for my response in connection with the above captioned matter. Having carefully examined each of your questions, I respond to each as follows:

1. To the best of my recollection, during the 16 months that I served as the Administrator of The Gulf Coast Claims Facility (the "GCCF"), Mr. Juneau never submitted a claim to the GCCF. During my tenure, we received over one million claims. Without examining the entire database of claims, I cannot state with absolute certainty that Mr. Juneau did or did not file a claim with the GCCF. I have no idea whether or not Mr. Juneau ever asserted a claim against BP on behalf of the State of Louisiana, or any other oil spill claimant, while I served as Administrator of the GCCF. Such a question should be directed to BP, not the GCCF.

2. Yes, I did submit a Draft Protocol for Interim and Final Claims under the GCCF to the State of Louisiana for review on or about November 2010, to which the state responded on November 17, 2010 and copied BP's Attorney, Mr. Mark Holstein. I also submitted this Draft Protocol to numerous other interested parties, in addition to the State of Louisiana, including other representatives of State Governments adversely impacted by the oil spill, various lawyers representing claimants and BP, and others.

3. Yes, Mr. Juneau did make suggestions to me as the State's representative, concerning my proposed Protocol. He continued to provide comments and suggestions through the fall of 2010, as did numerous other interested parties. His suggestions were helpful to me in developing the Final Protocol for the GCCF claims process, as were the suggestions of numerous other interested parties.

4. I have no knowledge of whether BP's Attorneys, specifically Mr. Thomas Milch of Arnold and Porter, were aware that I was communicating with Mr. Juneau. Such a question should better be directed at Mr. Milch. I did, however, copy him on emails between Mr. Juneau and myself.

5. I did consult with BP's counsel before the Motion to Remove the Claims Administrator was filed. I did not provide BP's counsel with hard copies of email correspondence between me and Mr. Juneau that reflected his role in offering suggestions for implementation of the claims process under the GCCF. I did, however, permit BP's counsel to review my email correspondence with Mr. Juneau; but I did not permit BP's counsel to make copies of such correspondence.

6. Yes, I did communicate regularly with BP as I developed the GCCF Protocol and forwarded copies of email correspondence between Mr. Juneau and myself to BP's counsel. I also communicated regularly with various other individuals interested in the development of the GCCF Protocol, including other State Government representatives, interested lawyers and others.

Mr. Wittmann, I hope these answers respond to the question you posed in your letter of September 19.

Sincerely,

Kenneth R. Feinberg

KRF:tjb