UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re:** Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>**This Pleading Relates To**<br>• 10-4182 (*Alabama v. BP*)<br>• 10-4183 (*Alabama v. Transocean, et. al*)<br>• 13-2645 (*Alabama v. Anadarko & MOEX*)<br>• 13-2646 (*Alabama v. Transocean*)<br>• 13-2647 (*Alabama v. Halliburton*)<br>• 13-2813 (*Alabama v. BP*) | MDL No. 2179<br>SECTION: J<br><br>JUDGE BARBIER<br>MAGISTRATE SHUSHAN |

**THE STATE OF ALABAMA'S BRIEF IN SUPPORT OF ITS
MOTION TO COMPEL DISCOVERY RESPONSES**


LUTHER J. STRANGE
 *Attorney General*

COREY L. MAZE
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*

Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130
Phone: (334) 242-7300
Email:  cmaze@ago.state.al.us  Attorneys

for the State of Alabama

**DISCOVERY REQUESTS AT ISSUE**

INTERROGATORY NO. 13:

To the extent that you contend you are entitled to an offset to the State's economic losses resulting from the oil spill, provide a detailed description supporting your contention, including, but not limited to, the value of the offset you contend you are entitled to, all payments and/or contributions, date of payments and/or contributions, the recipient of the payments and/or contributions, the payor of the payments and/or contributions, the designated use of said payments and/or contributions, and the resulting impact you contend effectuates an offset.

INTERROGATORY NO. 43:

To the extent that Alabama businesses and individuals sought recovery of economic losses associated with the oil spill from YOU, identify, by claims process (BP internal claims program, GCCF, DWH Transition, DWH Settlement Program *et al.*), month, year, and geographic area of origin, the amount(s) sought for recovery.

INTERROGATORY NO. 46:

Identify the State of permanent residence of all participants in YOUR oil spill response activities in Alabama, including the Vessels of Opportunity program.

TABLE OF CONTENTS

Discovery Requests at Issue ..................................................................................................... i
    INTERROGATORY NO. 13: ............................................................................................. i
    INTERROGATORY NO. 43: ............................................................................................. i
    INTERROGATORY NO. 46: ............................................................................................. i
Table of Authorities ................................................................................................................ iii
    I.   "Offset:" Defendants' Multiple Uses of the Terms "Offset" and "Set-off" Create Some of the Problems Raised Herein. ............................................................................. 1
          1.   Mitigation Evidence ................................................................................. 1
          2.   Counterclaim ............................................................................................. 1
          3.   Credit ......................................................................................................... 3
    II.  Interrogatory #13:  Alabama Is Entitled to a List of the BP Expenditures That Serve As a Basis for Defendants' "Set-off" Counterclaims and/or Credits. ........................................ 2
          A.   What is Alabama Asking For? ................................................................... 2
          B.   Why It Is Relevant ..................................................................................... 2
          C.   Alabama's Request Is Not Overly Broad or Burdensome. ......................... 3
          D.   BPXP's Objections and Responses Are Meritless. .................................... 4
    III. Interrogatory #43:  Alabama Is Entitled to Information Regarding the Amount of Damages Sought from BP by Alabama Citizens and Businesses. ........................................ 6
          A.   What is Alabama Asking For? ................................................................... 6
          B.   Why It Is Relevant ..................................................................................... 6
          C.   Alabama's Request Is Not Overly Broad or Burdensome ......................... 7
          D.   BPXP's Objections and Responses Are Meritless ..................................... 7
    IV. Interrogatory #46:  Alabama Is Entitled to Information Regarding the State of Residence of Particpants in Defendants' Spill Response Activities. ................................................ 8
          A.   What is Alabama Asking For? ................................................................... 8
          B.   Why It Is Relevant ..................................................................................... 8
          C.   Alabama's Request Is Not Overly Broad or Burdensome ......................... 9
          D.   BPXP's Objections and Responses Are Meritless ..................................... 9
    V.  "Placeholders:" The State Reserves Its Rights Over Certain Other Issues. ..................... 10
          A.   Equally Accessible Data: ........................................................................ 10
          B.   Requests for Admission #12 and #13: .................................................... 11
          C.   Rule 30(b)(6) Depositions of Non-BP Defendants: ................................ 11
Conclusion ............................................................................................................................. 12
Certificate of Service ............................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*Co–Efficient Foundation v. Woods*,
   171 F.2d 691, 694 (5th Cir. 1949) .............................................................................. 3, 4

*Texas v. Caremark, Inc.*, 584 F.3d 655, 660 (5th Cir. 2009) ....................................................... 3, 4

**Other Authorities**

80 C.J.S. Set-off and Counterclaim §3 ............................................................................. 2

*Black's Legal Dictionary* (9th ed. 2009) .......................................................................... 2

David Hammer,
   *Most BP Oil Spill Claimants Opt for One-time 'Quick Payment,'*
   The Times-Picayune, January 26, 2011 ........................................................................ 7

Department of Justice Press Release,
   April 19, 2012 .................................................................................................................. 7

Gulf Coast Claims Facility Website,
   http://www.gulfcoastclaimsfacility.com/ ...................................................................... 8

The Deepwater Horizon Economic Settlement Website,
   http://www.deepwaterhorizoneconomicsettlement.com/docs/statistics.pdf .............. 8

## TABLE OF AUTHORITIES

**Cases**

*Co–Efficient Foundation v. Woods*,
   171 F.2d 691, 694 (5th Cir. 1949) .............................................................................. 3, 4

*Texas v. Caremark, Inc.*, 584 F.3d 655, 660 (5th Cir. 2009) ....................................................... 3, 4

**Other Authorities**

80 C.J.S. Set-off and Counterclaim §3 ............................................................................. 2

*Black's Legal Dictionary* (9th ed. 2009) .......................................................................... 2

David Hammer,
   *Most BP Oil Spill Claimants Opt for One-time 'Quick Payment,'*
   The Times-Picayune, January 26, 2011 ........................................................................ 7

Department of Justice Press Release,
   April 19, 2012 .................................................................................................................. 7

Gulf Coast Claims Facility Website,
   http://www.gulfcoastclaimsfacility.com/ ...................................................................... 8

The Deepwater Horizon Economic Settlement Website,
   http://www.deepwaterhorizoneconomicsettlement.com/docs/statistics.pdf .............. 8

**THE STATE OF ALABAMA'S BRIEF IN SUPPORT OF ITS
MOTION TO COMPEL DISCOVERY REQUESTS**

---

Alabama narrows its motion to three Interrogatories that share a common theme: Defendants' use of BP's expenditures at trial. As the Court will see, Alabama seeks little more than (1) a clear and concise statement of how Defendants intend to use evidence of BP's expenditures at trial and (2) the information necessary for Alabama to counter Defendants' use of BP's expenditures at trial, either as a defense, counterclaim, and/or credit.

**I.    "Offset:" Defendants' Multiple Uses of the Terms "Offset" and "Set-off" Create Some of the Problems Raised Herein.**

As an initial matter, BP, Transocean, and Halliburton each pleaded "set-off" as an affirmative defense to Alabama's claims, but none of them explained what they meant by "set-off" or pleaded any facts they intended to prove as a set-off. *See* MDL 2179 Doc. 4905 at 202 (BP answer); Doc. 4910 at 43 (HESI answer); Doc. 931 at 15, 18 (Transocean Answer). Nor has Alabama been able to get clarification since, despite months of requests.

Much of the problem stems from the fact that, as we've progressed through discovery and meet-and-confers, Defendants have used the terms "offset" and "set-off" to invoke three distinct types of claim/defense:

1. <u>Mitigation Evidence</u>: Defendants may introduce evidence of BP's expenditures during trial to attack the foundation of Alabama's net losses. For example, experts might consider BP's expenditures, along with other aggravating and mitigating factors, to opine on the net value of Alabama's lost tax revenue—and thus, the trier of fact would consider BP's expenditures when determining Alabama's tax loss.

2. <u>Counterclaim</u>: Defendants may introduce evidence of BP's expenditures during trial to bolster a counterclaim that Alabama owes BP money for a breach of duty. Specifically,

1

> BP indicated to Judge Shushan that it might introduce evidence that Alabama violated the terms of a grant agreement during trial and then ask the Court to subtract ("set-off") the amount of the State's debt from the trier of fact's judgment of Alabama's tax loss.[1]

3. Credit:  After the trier of fact enters its verdict on Alabama's claims, Defendants may ask the Court to subtract ("set-off") certain BP expenditures from the State's judgment.

Alabama will use these distinct terms—"mitigation evidence," "counterclaim," and "credit"—when discussing set-offs to cut through the semantics that Defendants have used to shield themselves from discovery, particularly Alabama's Interrogatory #13.

## II. Interrogatory #13:  Alabama Is Entitled to a List of the BP Expenditures That Serve As a Basis for Defendants' "Set-off" Counterclaims and/or Credits.

### A. *What is Alabama Asking For?*

Alabama asks the Court to require BPXP to respond fully to Interrogatory #13, *see supra* at i, or at the very least, to respond to the following:

> Provide a list of the BP expenditures (including the value and recipient) that you intend to use at trial as the basis for a counterclaim against the State or to claim as a credit against the trier of fact's judgment of Alabama's damages claims.

To be clear, Alabama is *not* asking to compel a list of expenditures that BPXP intends to use as "mitigation evidence" during the trial (that is Interrogatory #14).  We seek just a list of those expenditures that could reduce the trier of fact's judgment of damages via counterclaim or credit.

### B. *Why Is It Relevant?*

1. The State needs the information.  Defendants failed to meet their burden of pleading any facts that would identify, much less prove, their "affirmative defense" of "set-off."  *See Co–*

---

[1] This is the proper use of the term "set-off."  *See, e.g., Black's Legal Dictionary* (9th ed. 2009) ("Setoff: A Defendant's counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim."). *See also* 80 C.J.S. Set-off and Counterclaim §3 ("A set-off is a counterdemand which a defendant holds against a plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action.").  It is also a subject of the State's simultaneously-filed Motion to Dismiss on sovereign immunity grounds.

2

*Efficient Foundation v. Woods*, 171 F.2d 691, 694 (5th Cir. 1949) ("Counterclaim, setoff, recoupment, and the like are in the nature of affirmative remedies which the defendant has the burden of pleading and proving."). Alabama cannot formulate its defenses against Defendants' claims for set-off credit if Defendants refuse to specify which expenditures entitle them to a credit. Nor can Alabama formulate its defenses against the potential set-off counterclaims BP mentioned to the Court during the October 10th conference, *see* Oct. 10, 2014, Trans. 47, if Defendants refuse to specify which expenditures are the subject of their counterclaim(s). This information must be provided to the State *before* depositions begin, so that the State can seek out the facts that would establish our defenses to Defendants' counterclaims and credits.

2. The Court needs the information. Alabama has simultaneously filed a motion to dismiss Defendants' set-off counterclaims and credits on Eleventh Amendment sovereign immunity grounds. In *Texas v. Caremark, Inc.*, 584 F.3d 655, 660 (5th Cir. 2009), the Fifth Circuit held that, if a Plaintiff State invokes sovereign immunity against a set-off claim, "the sovereign immunity issue must be resolved before further litigation (including discovery and motions for summary judgment) proceeds, so that the States are not subjected to litigation to which they have not consented." For the Court to rule on the State's motion—which *Caremark* requires it to do—Defendants must provide the Court with (a) a list of the BP expenditures that they contend entitle them to a set-off credit or serve as the basis of a set-off counterclaim and (b) enough factual information about these expenditures to determine whether Defendants' set-off claims survive Eleventh Amendment scrutiny.

C. *Alabama's Request Is Not Overly Broad or Burdensome.*

BPXP clearly has a list of its expenditures, as it touts its Gulf-wide expenditures in response to the State's Interrogatory. *See* Attachment A at 33-40 (BPXP's First Supplemental

3

Response). Accordingly, the State's request is neither overly broad nor unduly burdensome because the State is simply asking BP to whittle down its list of an alleged $20 billion in Gulf-wide expenditures to just those payments made to the Plaintiff State that BP will seek to use as the basis for a set-off counterclaim or set-off credit against the State's judgment for damages.

### D. *BPXP's Objections and Responses Are Meritless.*

1. BP's objections that Interrogatory #13 is "premature because discovery has just begun" and "premature to the extent that it calls for expert discovery" are meritless because Fifth Circuit precedent requires the Court to rule on Alabama's motion to dismiss set-off claims "before further litigation (including discovery and motions for summary judgment) proceeds." *Caremark*, 584 F.3d at 660.

2. BP's objection that "Alabama bears the burden of proof on its damages claim, and Alabama has not provided the specific damages calculations and methodologies upon which it intends to rely to support the damages categories" is meritless because Defendants, not Alabama, bear the burden of proving a set-off counterclaim and proving their entitlement to a set-off credit. *See Co–Efficient Foundation*, 171 F.2d at 694.

3. Defendants cannot validly complain that they are confused by what Alabama seeks with Interrogatory #13, as opposed to its sibling Interrogatory #14, which seeks a list of BP expenditures for use as mitigation evidence.  Alabama originally defined "offset" on July 14 to mean "to balance or calculate against and shall encompass the terms 'offset,' 'set-off,' 'recoupment,' and/or any other legal claim or defense that reduces Alabama's recovery." Attachment B at 21 (Alabama's First Set of Discovery Requests).  After hearing complaints that this definition was confusing, Alabama clearly and consistently pointed out in letters and meet-and confers that Interrogatory #13 sought just a list of expenditures that Defendants contended

4

would reduce the trier of fact's judgment:

- "Interrogatory #14 asks, generally, what payments or contributions you contend 'mitigate[d]' the State's economic loss.  Interrogatory #13 demonstrates whether you intend to take the next step, as AD-13 suggests, by asking what payments or contributions you claim can be subtracted, dollar for dollar, from the trier of fact's determination of the State's losses, once that determination is made." Attachment C at 5. (P. Miller letter to P. Collier, dated September 14, 2014).

- "The response to #13 should be limited to just those payments or contributions (but all such payments and contributions) that BP intends to argue can be subtracted from the trier of fact's determination of the State's losses as a set-off or other equitable reduction in liability." Attachment C at 7.

- "Please supplemental [sic] your response to contain only those payments made to the State of Alabama that you intend to apply as a reduction of the trier of fact's judgment of Alabama's damages."  Attachment D at 2. (C. Maze letter to P. Collier, dated October 13, 2014); and,

- "Please identify all grants and/or other agreements that BP has made with the Plaintiff State of Alabama (as opposed to non-parties to this litigation) that Defendants contend could be the subject of a set-off counterclaim, if the State failed to disbursement [sic] the monies in accordance with the grant."  *Id.*

In light of this clear, months' long delineation of what Alabama is looking for, any attempt to rely on alleged vagaries in Alabama's July definition of "offset" to avoid a targeted response to Interrogatory #13 would ring hollow.

4. BPXP's ultimate response to Interrogatory #13 is merely a laundry list of the $20+ billion that it has spent Gulf-wide since 2010.  *See* Attachment A at 36-40.  Surely, this cannot be the list of expenditures that BP will ask the Court to subtract from the trier of fact's judgment of Alabama's claims.  The $20+ billion number contains numerous payments to parties other than the State, including Alabama citizens, academic institutions, and the other Gulf States.  *Id.*  Nor can BPXP claim that its payments to third parties can serve as the basis for a counterclaim against the State of Alabama, as its Response suggests.  *See* Fed. R. Civ. P. 13(a)(1) (requiring that a counterclaim be "against an opposing party").

5

### III. Interrogatory #43: Alabama Is Entitled to Information Regarding the Amount of Damages Sought from BP by Alabama Citizens and Businesses.

#### A. *What is Alabama Asking For?*

Alabama asks the Court to require BPXP to respond fully to Interrogatory #43, *see supra* at i, or at the very least, to respond to the following:

> Provide any information that you possess concerning the amount of recovery sought by businesses or individuals with an Alabama address from any of your claims processes or the Court Supervised Settlement Program, including the month, date, and geographic origin of the claim.

#### B. *Why It Is Relevant*

1. As indicated by its Response to Alabama's Interrogatory #14 (*i.e.* mitigation evidence), and BP's own Interrogatory #23 (taxation of claims payments), BP intends to use evidence of its payments to Alabama citizens and businesses to attack the foundation of Alabama's tax loss claim. BP might argue that its claims payments coupled with the recipient's tax liability to the State either partially or completely mitigated the State's lost taxes. If BP takes this position (which we will oppose), BP's focus solely on final payments tells only part of the story. The amounts *claimed* by individuals would tell a clearer story, because those individuals and businesses provide insight into whether BP was proving full compensation.

2. BP has yet to reveal its expert methodologies. If any of BP's experts attempt to extrapolate the State's tax revenue loss from the amount of payments BP has made to Alabama citizens and businesses, then information regarding the amounts claimed could be critical in weighing the cresibility of the argument.

In short, if BP relies on the amount of *payments* it has made in Alabama as a defense to Alabama's tax loss, then Alabama's request for *claims* information is, at the very least, reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1).

6

### C. *Alabama's Request Is Not Overly Broad or Burdensome*

Alabama's Interrogatory is not unduly burdensome, as it was confined solely to claims sought from BP. Moreover, Alabama does not seek actual claims submissions, nor are we (necessarily) asking for personal information regarding the claimants. We simply seek a listing of the claims made against BP by Alabama businesses and individuals, with their corresponding claim amounts and the amounts actually paid, by date and location. Frankly, it is hard to imagine that BP does not have this information readily available.

### D. *BPXP's Objections and Responses Are Meritless*

1. BP's objection that the amount sought for recovery by claimants "carries no presumption of validity" and that it would not prove "the claimant [was] entitled to that amount or that it was supported" is a double-edged sword. Attachment E at 3. By the same token, the amount offered to claimants by Mr. Feinberg and/or BP carries no presumption—or, at least, no guarantee—of validity. *See*, *e.g.*, Department of Justice Press Release, April 19, 2012 (announcing a post-audit payment of $64 million to approximately 7,300 claimants who were underpaid by the GCCF);[2] David Hammer, *Most BP Oil Spill Claimants Opt for One-time 'Quick Payment,'* The Times-Picayune, January 26, 2011 (stating that "[m]ore than half of the 123,970 individuals who have been compensated for losses related to the BP oil spill in the Gulf of Mexico have decided to sign away their right to sue and pursue a $5,000 "quick payment").[3] If the amount of payments BP made is reasonably calculated to lead the discovery of admissible evidence, then so is the amount of the claims made to BP.

---

[2] Available on-line at http://www.justice.gov/opa/pr/audit-gulf-coast-claims-facility-results-64-million-additional-payments. (Last checked on October 16, 2014).

[3] Available on-line at http://www.nola.com/news/gulf_oil_spill/index.ssf/2011/01/most_bp_oil_spill_claimants_op.html. (Last checked on October 16, 2014).

2. BP's wrongly objects that claims information "would be equally available to Alabama as to BPXP." Attachment E at 3. Indeed, a review of the publically-available information of the various claim processes does not reveal the amounts claimed by claimants against BP.[4] BP maintained records for its internal claim processes, and the Court found that BP essentially controlled the GCCF. *See* MDL 2179 Doc. 1098 at 11 (finding that Mr. Feinberg was not "neutral or totally independent of BP"). Thus, BP clearly has greater access to this information than Alabama does.

3. In light of these meritless objections, BP's failure to offer a substantive response is deficient and requires supplementation.

### IV. Interrogatory #46: Alabama Is Entitled to Information Regarding the State of Residence of Participants in Defendants' Spill Response Activities.

#### A. *What is Alabama Asking For?*

Alabama asks the Court to require BPXP to respond fully to Interrogatory #46, *see supra* at i, or at the very least, to respond to the following:

> Provide any information that you have regarding the State of permanent residence of any participant in your oil spill response activities within the State of Alabama.

#### B. *Why It Is Relevant*

BP's tax-based defense makes it relevant. Specifically, BP has requested that Alabama:

> Describe in detail all Revenue received by Alabama as a result of any compensation payments related to the Incident and/or Oil Spill, including as a result of any payments made to businesses and individuals (e.g., from insurance claims or via the Gulf Coast Claims Facility (GCCF), Vessels of Opportunity program (VOO), Court Supervised Settlement Program (CSSP), Business and Economic Loss (BEL) settlement, or other facilities), and describe how such Revenue is identified in tax receipts.

Attachment G at 4 (Defendants' First Set of Interrogatories). Apparently, BP intends to argue that

---

[4] *See, e.g.*, the Gulf Coast Claims Facility Website, available on-line at http://www.gulfcoastclaimsfacility.com/ (Last checked on October 17, 2014); see also, the Deepwater Horizon Economic Settlement Website, available at Available on-line at http://www.deepwaterhorizoneconomicsettlement.com/docs/statistics.pdf (Last checked on October 17, 2014).

Alabama either received or should have received tax revenue from workers involved in the response efforts in Alabama, including those individuals who participated in VOO. If that is the case, then the response worker's State of residence becomes highly relevant because such information could inform about the worker's tax liability to the State.

For example, if Defendants introduce evidence that 1,000 response workers were stationed in Mobile, then Alabama has the right to show that 600 of those workers were shipped in from Texas and thus may not have paid Alabama taxes. If would be fundamentally unfair for BP to withhold that information from Alabama, then be allowed to argue that all 1,000 workers did or should have paid taxes to Alabama, thereby mitigating Alabama's net tax loss.[5]

### C. *Alabama's Request Is Not Overly Broad or Burdensome*

Alabama's Interrogatory is not unduly burdensome. The State is merely asking BP to provide a listing of the persons that BP employed in the oil spill response along with the State of residence of those persons. The modified version in Part IV(A) is even less burdensome, as it requests only that information that BP actually has.

### D. *BPXP's Objections and Responses Are Meritless*

1. BP objected to Interrogatory #46 on the grounds that it sought "information not within BPXP's possession, custody, or control." Attachment F at 10 (BPXP Response to Second Discovery Requests). BP later clarified this objection by stating that "BPXP has not compiled personal identifying information, including the state of permanent residence, in any organized or reasonably obtainable form for the oil spill response workers in Alabama." Attachment E at 3 (P.Collier letter to C.Maze, October 14, 2014). But in light of BP's touting of its response-related expenditures, *see* Attachment A at 36-40, Alabama finds it hard to believe that BP does not

---

[5] The State does not agree with BP's tax liability pass through arguments. The State reserves for a later motion all claims, arguments, and defenses regarding the relevance and admissibility of its collection of taxes.

9

possess detailed records reflecting the persons whom BP paid during the response effort. At a minimum, Alabama should be entitled to all of the information that BP does possess regarding the State of residence of the response workers that it compensated.

2. BP responded to the Interrogatory thusly, "[a]fter conducting a reasonable search, BPXP lacks information sufficient to identify the state of permanent residence for *all* response workers." Attachment F at 10 (emphasis added). To the extent possible, Alabama believes that it is entitled to the residential information of "all response workers," if BP truly intends to argue that Alabama should have collected taxes on "all" of the response workers within the State. But Alabama is equally entitled to all of the information that BP has, even if that information falls short of "all response workers." For example, BP should at least be required to respond similarly to this hypothetical: Of the 1,000 individuals that BP compensated for performing response-related activities in Alabama, BP has knowledge that 200 were permanent residents of Alabama; 200 were permanent residents of another State; and BP is unable to identify the State of residence of the remaining 600 workers.

## V. "Placeholders:" The State Reserves Its Rights Over Certain Other Issues.

The Parties continue to work in good faith to overcome other discovery-related disputes for which the State does not presently seek an order compelling Defendants to act. The State briefly highlights three of these issues to reserve its right to move the Court for such action should the Parties not be able to reach an agreement.

A. *Equally Accessible Data:* The Parties have made significant headway toward reaching a final agreement on the treatment of information and documents that is equally accessible to the Parties. Of particular concern to Alabama is the ability to obtain a full set of Alabama-related reports and data produced by the Unified Command's Shoreline Cleanup and

Assessment Technique ("SCAT") team. Alabama reserves the right to seek the Court's assistance should the Parties be unable to reach an agreement that would allow Alabama to obtain a full set of Alabama-related SCAT data.

B. ***Requests for Admission #12 and #13:*** Alabama has requested that Defendants admit that oil-related materials were removed for each piece of State-owned property that is the subject of Alabama's property damage claim. *See* Attachment B at 3. While no Defendant to date has made this admission, Defendant BPXP has asserted that it will continue reviewing the request and supplement its most recent response that it lacked sufficient information to admit or deny the requests. *See* Attachment A at 8-9. Alabama reserves the right to seek the Court's assistance should Defendants fail to admit these requests.

C. ***Rule 30(b)(6) Depositions of Non-BP Defendants:*** Alabama has noticed each Defendant for a corporate deposition pursuant to Rule 30(b)(b). *See* Attachment G. At our last meet-and-confer, Defendant Halliburton suggested a possible alternative that would obviate the need for a deposition for non-BP Defendants, and the Parties have agreed to explore such alternatives. Alabama reserves the right to seek the Court's assistance should the Parties be unable to reach an agreement and any Defendant objects to its notice of corporate deposition.

\* \* \*

Alabama has, in good faith, narrowed its requests of this Court down to three items that, when combined, will assist Alabama finally possess (1) a clear and concise statement of how Defendants intend to use evidence of BP's expenditures at trial and (2) the information necessary for Alabama to counter Defendants' usage of BP's expenditures at trial. Alabama is entitled to each of these requests before depositions commence, so that it might be fully prepared to defend its damages claims and defend against potential counterclaims.

11

## CONCLUSION

The Court should grant the State's Motion to Compel.

        Respectfully submitted this 17th day of October, 2014.

        LUTHER J. STRANGE
        *Attorney General*

        /s/ Corey L. Maze
        *Special Deputy Attorney General*

        WINFIELD J. SINCLAIR
        *Assistant Attorney General*

        Office of the Alabama Attorney General
        501 Washington Avenue
        Montgomery, AL 36130
        Phone: (334) 242-7300
        Email: cmaze@ago.state.al.us

        Attorneys for the State of Alabama

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on October 17, 2014.

                                                                       /s/ Corey L. Maze
                                                                       COREY L. MAZE
                                                                       *Special Deputy Attorney General*