E-SERVICE

56132692
Oct 03 2014
08:42PM

File & ServeXpress

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| | DISTRICT JUDGE BARBIER |
| This Document Relates To: | MAGISTRATE JUDGE SHUSHAN |
| Case Nos. 10-4182, 10-4183, 13-2645, 13-2646, 13-2647, 13-2813 | |

**BP EXPLORATION & PRODUCTION INC.'S RESPONSES AND OBJECTIONS TO THE STATE OF ALABAMA'S SECOND SET OF DISCOVERY REQUESTS TO THE DEFENDANTS RELATING TO THE STATE'S COMPENSATORY DAMAGES PHASE**

Defendant BP Exploration & Production Inc. ("BPXP"), by its undersigned Counsel, and pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, hereby submits the following responses and objections to the State of Alabama's Second Set Of Discovery Requests To The Defendants Relating To The State's Compensatory Damages Phase.

## SPECIFIC RESPONSES AND OBJECTIONS

BPXP responds as follows to the State of Alabama's specific requests for admission, interrogatories, and requests for production, subject to and without waiving its general objections, each and every one of which are specifically incorporated into each individual response below.

## REQUESTS FOR ADMISSION

## REQUEST FOR ADMISSION NO. 20:

Admit that Phase 1 of the GCCF received more than 475,000 claims and paid less than 175,000 claims.

## RESPONSE TO REQUEST FOR ADMISSION NO. 20:

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, including because this request seeks an admission regarding claims that have no connection to Alabama.  BPXP objects to this request as seeking information that is not relevant to any claim or defense, including because the total number of claims received or paid by the GCCF, especially when those numbers include claims submitted from individuals and entities outside Alabama, are not relevant to Alabama's damages claims.  BPXP objects to this request as misleading and prejudicial, including to the extent it implies that legitimate GCCF claims were not paid.  The fact that a claim was submitted to the GCCF does not mean that it was a legitimate, compensable claim that met GCCF qualifications.  The GCCF Transition Process was also established to handle claims that were still pending when the GCCF was shut down.  *See, e.g.*, Rec. Doc. 5995.  BPXP objects to this request as vague and ambiguous, including through the use of the undefined term "Phase 1 of the GCCF."  BPXP objects to this request to the extent it seeks an admission based on information outside BPXP's custody and control.

Subject to its specific and general objections, BPXP responds as follows:  BPXP admits that the Emergency Advance Payment claims process of the GCCF received more than 475,000 claims.  BPXP admits that the Emergency Advance Payment claims process of the GCCF, which processed claims for documented losses sustained during the first six months following the Spill, paid less than 175,000 claims.  However, BPXP has paid a total of more than $2.58 billion through the Emergency Advance Payment claims process of the GCCF and overall has paid a total of more than $6.5 billion through the GCCF.

**REQUEST FOR ADMISSION NO. 21:**

Admit that, of the more than 275,000 "Full Review" and "Interim Payment" claimants that filed claims in the GCCF, less than 105,000 of those claimants were paid by the GCCF.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, including because this request seeks an admission regarding claimants that have no connection to Alabama.  BPXP objects to this request as seeking information that is not relevant to any claim or defense, including because the number of claimants who submitted claims to or received payments from the GCCF, especially when those numbers include claimants that are not located in Alabama, is not relevant to Alabama's damages claims.  BPXP objects to this request as misleading and prejudicial, including to the extent it arbitrarily excludes claimants seeking Emergency Advance Payments and Quick Payment Final Claims and to the extent it implies that legitimate GCCF claims were not paid.  The fact that a claim was submitted to the GCCF does not mean that it was a legitimate, compensable claim that met GCCF qualifications.  The GCCF Transition Process was also established to handle claims that were still pending when the GCCF was shut down.  *See, e.g.*, Rec. Doc. 5995.  BPXP objects to this request as vague and ambiguous, including through

the use of the undefined terms "Full Review" and "Interim Payment."  BPXP objects to this request to the extent it seeks an admission based on information outside BPXP's custody and control.

Subject to its specific and general objections, BPXP responds as follows:  Denied.

**REQUEST FOR ADMISSION NO. 22**:

Admit that, as of February 10, 2012, the GCCF had received more than 140,000 claims that originated from the State of Alabama and had paid less than 60,000 of those claims.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

BPXP objects to this request as seeking information that is not relevant to any claim or defense, including because the number of claimants who submitted claims to or received payments from the GCCF is not relevant to Alabama's damages claims.  BPXP objects to this request to the extent it seeks an admission based on information outside BPXP's custody and control.  BPXP objects to this request as misleading and prejudicial, including to the extent it arbitrarily seeks an admission based on a date that has no relevance because the GCCF Transition Process took place on February 26, 2012 per the First Amended Order Creating Transition Process, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf Of Mexico on April 20, 2010*, No. 2:10-md-02179-CJB-SS (E.D. La. Mar. 8, 2012), Rec. Doc. 5995.  BPXP objects to this request as misleading and prejudicial to the extent it implies that legitimate GCCF claims were not paid.  The fact that a claim was submitted to the GCCF does not mean that it was a legitimate, compensable claim that met GCCF qualifications.  The GCCF Transition Process was also established to handle claims that were still pending when the GCCF was shut down.  *See, e.g.*, Rec. Doc. 5995.

Subject to its specific and general objections, BPXP responds as follows:  BPXP admits that, as of February 26, 2012, the GCCF had received more than 140,000 claims that originated

from the State of Alabama.  BPXP denies the remainder of this request because, as of February 26, 2012, BPXP has paid over 60,000 claims that originated from the State of Alabama.

**REQUEST FOR ADMISSION NO. 23:**

Admit that you do not possess any evidence of oil originating from the Macondo prospect of Mississippi Canyon 252 being present within the State of Alabama before April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

BPXP objects to this request as premature to the extent it calls for expert discovery.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP admits that it does not possess direct evidence of oil originating from the Macondo prospect of Mississippi Canyon Block 252 being present within the State of Alabama before April 20, 2010.  Nonetheless, it is possible that oil from the reservoir into which the Macondo well was drilled was released through natural seeps before April 20, 2010, and existed within the State of Alabama.

**REQUEST FOR ADMISSION NO. 24:**

Admit that visual identification was an acceptable method utilized during oil spill response activities to determine whether potential oil debris originated from the MC252 well.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

BPXP objects to this request as vague and ambiguous, including through the use of the undefined terms "acceptable method" and "oil debris."  BPXP objects to this request as vague and ambiguous with respect to temporal scope, as the reliability of visual identification degraded over time.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP admits that visual identification was utilized by trained personnel for a period of

time during the oil spill response activities, but that the efficacy and reliability of visual identification diminished and degraded over time.  BPXP denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 25:**

Admit that the United States Coast Guard gave BP the opportunity to dispute a determination that oil debris recovered during oil spill response activities from Alabama's shores was MC252 oil.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

BPXP objects to this request as vague and ambiguous, including through its use of the undefined terms "opportunity to dispute" and "oil debris."  BPXP objects to this request as vague and ambiguous as to its temporal scope.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP denies that the United States Coast Guard gave BPXP any formal, systemized, or meaningful mechanism to dispute determinations that oil materials recovered from Alabama's shores during the period of the active response from April 2010 – May 2013 were from the Macondo well.  BPXP further states that after May 2013, although the Coast Guard permitted BPXP to indicate its concurrence or lack of concurrence with the Coast Guard's visual determinations that oil materials recovered from Alabama were from the Macondo well, this was not a meaningful mechanism to dispute the determinations.  The Coast Guard has identified BPXP as the Responsible Party for some oiling on Alabama's shores and billed BPXP for cleanup and removal costs even in instances where BPXP did not concur with the Coast Guard's visual determination, and even when the Coast Guard had not analyzed a sample or provided any chemical fingerprinting evidence to support its determination.

## INTERROGATORIES

## INTERROGATORY NO. 43:

To the extent that Alabama businesses and individuals sought recovery of economic losses associated with the oil spill from YOU, identify, by claims process (BP internal claims program, GCCF, DWH Transition, DWH Settlement Program *et al.*), month, year, and geographic area of origin, the amount(s) sought for recovery.

## RESPONSE TO INTERROGATORY NO. 43:

BPXP objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, including to the extent it seeks information regarding "Alabama businesses and individuals" that did not identify Alabama addresses in their claim submissions.  BPXP objects to this interrogatory as seeking information that is not relevant to any claim or defense, including because the amount "sought for recovery" by claimants in Alabama is not relevant to Alabama's damages claim.  BPXP objects to this interrogatory as vague and ambiguous, including through its use of the undefined phrase "geographic area of origin."  BPXP objects to this interrogatory to the extent that it seeks information outside BPXP's custody and control.  BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

## INTERROGATORY NO. 44:

To the extent that Alabama businesses and individuals sought recovery of economic losses associated with the oil spill from YOU, identify, by claims process (BP internal claims program, GCCF, DWH Transition, DWH Settlement Program, et al.), month, year, and geographic area of origin, the amount(s) paid to the claiming businesses and individuals.

## RESPONSE TO INTERROGATORY NO. 44:

BPXP objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, including to the extent it seeks information regarding "Alabama businesses and individuals" that did not identify Alabama addresses in their claim submissions.  BPXP objects to this interrogatory as vague and

7

ambiguous, including through its use of the undefined terms "DWH Transition," "DWH Settlement Program," and "geographic area of origin."  BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to, and without waiving its specific and general objections, BPXP responds as follows:  Attached as Appendix A, BPXP has provided the amounts paid to businesses and individuals in Baldwin and Mobile counties by month and year for the following claims processes: BP government claims, BP VoO damages claims, BP claims process administered by ESIS, BP claims process, CSSP, GCCF, and Rig Workers' Fund.  To the extent this interrogatory seeks additional information, BPXP objects to it as unreasonable, overly broad, unduly burdensome, and seeking information that is not relevant to any claim or defense.

BPXP reserves the right to modify, amend, or supplement this response, which is made based on the current status of its knowledge, understanding, belief, and searches for documents and information.

**INTERROGATORY NO. 45:**

Describe in detail YOUR interpretation of what the State of Alabama's "normal" tourism-related activity trends are, as referenced in BPXP's response to Alabama Request for Admission #18.

**RESPONSE TO INTERROGATORY NO. 45:**

BPXP incorporates by reference as though fully stated herein, the specific and general objections set forth in BPXP's response to Alabama Request for Admission #18.  BPXP objects to this interrogatory as premature to the extent it calls for expert discovery.  BPXP objects to this interrogatory as calling for information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, and/or other applicable privileges, exemptions, or immunities.

Subject to and without waiving its specific and general objections, BPXP responds as follows:  Based on public statements of State of Alabama tourist officials and consistent with public information, including information available at http://tourism.alabama.gov/reports/, http://revenue.alabama.gov/datapress-abstract.cfm, and what BPXP expects to receive in the State of Alabama's productions, BPXP believes that following a short-lived decrease in tourism-related activity in certain Alabama coastal areas during the summer of 2010, trends returned to historically consistent levels in the fall of 2010 and continued through the spring of 2011, at which time tourism-related activity exceeded historical levels, as evidenced by taxable lodging revenue in certain Alabama coastal areas.  Although fact discovery has only recently commenced, BPXP believes that other publicly available reports, submissions, and statements by State of Alabama employees or agents regarding the economic impact of the national recession on tourism in the State of Alabama may further support BPXP's understanding of tourism-related-activity trends.

The information that this interrogatory seeks is also the subject of expert discovery and such information will be addressed in forthcoming expert reports in accordance with the dates set forth in the Court's July 16, 2014 scheduling order.

**INTERROGATORY NO. 46:**

Identify the State of permanent residence of all participants in YOUR oil spill response activities in Alabama, including the Vessels of Opportunity program.

**RESPONSE TO INTERROGATORY NO. 46:**

BPXP objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Thousands of response workers, including third-party contractors, participated in response activities in Alabama, including the Vessels of Opportunity program.  BPXP objects to this interrogatory as seeking

information that is not relevant to any claim or defense.  BPXP objects to this interrogatory to the extent it seeks information not within BPXP's possession, custody, or control.  BPXP objects to this interrogatory as vague, ambiguous, and confusing, including through its use of the phrase "the State of permanent residence" because "State" is a defined as "the State of Alabama."

Subject to and without waiving its specific and general objections, BPXP responds as follows:  After conducting a reasonable search, BPXP lacks information sufficient to identify the state of permanent residence for all response workers.

**INTERROGATORY NO. 47:**

Identify the specific time duration of "brief," as referenced in YOUR answer to Alabama Request for Admission #19.

**RESPONSE TO INTERROGATORY NO. 47:**

BPXP incorporates by reference as though fully stated herein, the specific and general objections set forth in BPXP's response to Alabama Request for Admission #19.  BPXP objects to this interrogatory as premature to the extent it calls for expert discovery.  BPXP objects to this interrogatory as calling for information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, and/or other applicable privileges, exemptions, or immunities.

Subject to and without waiving its specific and general objections, BPXP responds as follows:  Based on public statements of State of Alabama tourist officials and consistent with public information, including information available at http://tourism.alabama.gov/reports/, http://revenue.alabama.gov/datapress-abstract.cfm, and what BPXP expects to receive in the State of Alabama's productions, BPXP believes that a short-lived decrease in the number of individuals that visited certain Alabama coastal areas during the summer of 2010 for recreational or leisure purposes during the summer of 2010 led to a brief decrease in tourism-related activity

for certain Alabama coastal areas, which lasted until trends returned to historically consistent levels in the fall of 2010, as evidenced by taxable lodging revenue in certain Alabama coastal areas.  Although fact discovery has only recently commenced, BPXP believes that other publicly available reports, submissions, and statements by State of Alabama employees or agents regarding the economic impact of the national recession on tourism in the State of Alabama may further support BPXP's understanding of tourism-related-activity trends.

The information that this interrogatory seeks is also the subject of expert discovery and such information will be addressed in forthcoming expert reports in accordance with the dates set forth in the Court's July 16, 2014 scheduling order.

## INTERROGATORY NO. 48:

Describe in detail YOUR public relations activities associated with the *Deepwater Horizon* oil spill, including but not limited to each public relations activity paid for by YOU, the purpose of the public relations activity, the cost of the public relations activity and the month and year of the public relations activity.

## RESPONSE TO INTERROGATORY NO. 48:

BPXP objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, including to the extent it seeks information regarding "each public relations activity" related to the oil spill and to the extent it is not limited to such activities related to Alabama.  BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows:  Beginning April 27, 2010, in accordance with its Community Outreach Plan, BPXP deployed community outreach teams into communities throughout the Gulf Coast, including Alabama.  The purpose of the community outreach teams was to build relationships with the communities potentially impacted by the *Deepwater Horizon* oil spill by providing a

communication channel for information about the spill and developing issues and how BPXP intended to address those issues.  The community outreach teams engaged with state and local government representatives and agencies, community leaders and stakeholders, environmental groups, not-for-profit groups, businesses, and members of the public through various means, including, town hall meetings, personal contacts at BPXP's community outreach centers, sponsored events, and other scheduled meetings.  BPXP has produced dozens of reports that detail these community outreach efforts, and the burden of deriving or ascertaining information responsive to this interrogatory from these documents is substantially the same for Alabama as it is for BPXP.  Therefore, in accordance with Federal Rule of Civil Procedure 33(d), BPXP refers Alabama to the documents produced at the following Bates ranges:  BP-HZN-2179MDL01539052; BP-HZN-2179MDL01635521; BP-HZN-2179MDL01637603; BP-HZN-2179MDL01641867; BP-HZN-2179MDL01948239; BP-HZN-2179MDL01995139; BP-HZN-2179MDL02176528; BP-HZN-2179MDL02188628; BP-HZN-2179MDL02466105; BP-HZN-2179MDL02801192; BP-HZN-2179MDL04571922; BP-HZN-2179MDL04572064; BP-HZN-2179MDL04572186; BP-HZN-2179MDL04572207; BP-HZN-2179MDL04572330; BP-HZN-2179MDL04572503; BP-HZN-2179MDL04572854; BP-HZN-2179MDL04572938; BP-HZN-2179MDL04572957; BP-HZN-2179MDL04573190; BP-HZN-2179MDL04573345; BP-HZN-2179MDL04573527; BP-HZN-2179MDL04573602; BP-HZN-2179MDL04573618; BP-HZN-2179MDL04573738; BP-HZN-2179MDL04573752; BP-HZN-2179MDL04573764; BP-HZN-2179MDL04578209; BP-HZN-2179MDL04578587; BP-HZN-2179MDL04578684; BP-HZN-2179MDL04578776; BP-HZN-2179MDL04578930; BP-HZN-2179MDL04578979; BP-HZN-2179MDL04579017; BP-HZN-2179MDL04579115; BP-HZN-2179MDL04579247; BP-HZN-2179MDL04579262; BP-HZN-2179MDL04579294; BP-HZN-2179MDL04579316; BP-HZN-

2179MDL04579347;  BP-HZN-2179MDL04579520;  BP-HZN-2179MDL04579545;  BP-HZN-

2179MDL04579555;  BP-HZN-2179MDL04579599;  BP-HZN-2179MDL04579655;  BP-HZN-

2179MDL04579690;  BP-HZN-2179MDL04579789;  BP-HZN-2179MDL04579802;  BP-HZN-

2179MDL04579818;  BP-HZN-2179MDL04579859;  BP-HZN-2179MDL04579884;  BP-HZN-

2179MDL04579957;  BP-HZN-2179MDL04579973;  BP-HZN-2179MDL04579990;  BP-HZN-

2179MDL04580051;  BP-HZN-2179MDL04580150;  BP-HZN-2179MDL04580190;  BP-HZN-

2179MDL04580203;  BP-HZN-2179MDL04580284;  BP-HZN-2179MDL04580339;  BP-HZN-

2179MDL04580407;  BP-HZN-2179MDL04580445;  BP-HZN-2179MDL04580500;  BP-HZN-

2179MDL04580546;  BP-HZN-2179MDL04580574;  BP-HZN-2179MDL04580619;  BP-HZN-

2179MDL04580629;  BP-HZN-2179MDL04580644;  BP-HZN-2179MDL04580652;  BP-HZN-

2179MDL04580664;  BP-HZN-2179MDL04580896;  BP-HZN-2179MDL04580912;  BP-HZN-

2179MDL04580968;  BP-HZN-2179MDL04580997;  BP-HZN-2179MDL04581150;  BP-HZN-

2179MDL04581158;  BP-HZN-2179MDL04581174;  BP-HZN-2179MDL04581207;  BP-HZN-

2179MDL04581216;  BP-HZN-2179MDL04581224;  BP-HZN-2179MDL04581244;  BP-HZN-

2179MDL04581329;  BP-HZN-2179MDL04581363;  BP-HZN-2179MDL04581417;  BP-HZN-

2179MDL04581428;  BP-HZN-2179MDL04581636;  BP-HZN-2179MDL04581699;  BP-HZN-

2179MDL04581711;  BP-HZN-2179MDL04581752;  BP-HZN-2179MDL04581763;  BP-HZN-

2179MDL04581869;  BP-HZN-2179MDL04581902;  BP-HZN-2179MDL04581931;  BP-HZN-

2179MDL04581953;  BP-HZN-2179MDL04582156;  BP-HZN-2179MDL04582278;  BP-HZN-

2179MDL04582451;  BP-HZN-2179MDL04582620;  BP-HZN-2179MDL04582718;  BP-HZN-

2179MDL04582731;  BP-HZN-2179MDL04582748;  BP-HZN-2179MDL04582758;  BP-HZN-

2179MDL04582764;  BP-HZN-2179MDL04582791;  BP-HZN-2179MDL04582814;  BP-HZN-

2179MDL04582853;  BP-HZN-2179MDL04583013;  BP-HZN-2179MDL04583031;  BP-HZN-

2179MDL04583050; BP-HZN-2179MDL04583111; BP-HZN-2179MDL04583180; BP-HZN-2179MDL04583231; BP-HZN-2179MDL04583403; BP-HZN-2179MDL04583474; BP-HZN-2179MDL04583491; BP-HZN-2179MDL04583505; BP-HZN-2179MDL04583627; BP-HZN-2179MDL04583732; BP-HZN-2179MDL04583766; BP-HZN-2179MDL04583882; BP-HZN-2179MDL04583923; BP-HZN-2179MDL04584123; BP-HZN-2179MDL04584138; BP-HZN-2179MDL04584161; BP-HZN-2179MDL04584212; BP-HZN-2179MDL04584335; BP-HZN-2179MDL04584601; BP-HZN-2179MDL04584624; BP-HZN-2179MDL04584635; BP-HZN-2179MDL04584647; BP-HZN-2179MDL04584693; BP-HZN-2179MDL04584822; BP-HZN-2179MDL04584883; BP-HZN-2179MDL04790451; BP-HZN-2179MDL04910867; BP-HZN-2179MDL05013515; BP-HZN-2179MDL05022852; BP-HZN-2179MDL05262724; BP-HZN-2179MDL05306107; BP-HZN-2179MDL05413028; BP-HZN-2179MDL05487156; BP-HZN-2179MDL06146953; BP-HZN-2179MDL06638954; BP-HZN-2179MDL06844339; BP-HZN-2179MDL06848594; BP-HZN-2179MDL06849978; BP-HZN-2179MDL06851482; BP-HZN-2179MDL06852114; BP-HZN-2179MDL06853117; BP-HZN-2179MDL06857985; BP-HZN-2179MDL06861416; BP-HZN-2179MDL06861520; BP-HZN-2179MDL06861872; BP-HZN-2179MDL06863143; BP-HZN-2179MDL06865630; BP-HZN-2179MDL07620004; BP-HZN-ALO00050424; BP-HZN-ALO00050571; BP-HZN-ALO00050573; BP-HZN-ALO01302639 - BP-HZN-ALO01303988;   BP-HZN-ALO01305277  -  BP-HZN-ALO01305404;   HCG941-001279;  PCG045-016160;  PCG045-016163;  PCG045-016173;  PCG045-016182;  PCG045-016189;  PCG045-016192;  PCG045-016284;  PCG045-016395;  PCG045-016504;  PCG067-020735; PCG106-006171; and PCG106-006590.

BP has also advertised extensively to promote tourism in the Gulf Coast and specifically within Alabama through media including TV, radio, print, and digital advertisements.

Information regarding these efforts and other public communications, including the timing and content of advertisements, is publicly available at https://www.facebook.com/BPAmerica, https://twitter.com/BP_America/, and https://www.youtube.com/user/BPplc. Additional information regarding public communications relating to the oil spill is publicly available at https://www.thestateofthegulf.com/, http://www.bpuspress.com/go/site/1927/ and http://www.bp.com/, including at http://www.bp.com/en/global/corporate/gulf-of-mexico-restoration.html, http://www.bp.com/en/global/corporate/about-bp/bp-worldwide/bp-in-america.html, and http://www.bp.com/en/global/corporate/press.html.

**INTERROGATORY NO. 49:**

Identify all public relations personnel that had any involvement in your public relations pertaining to the *Deepwater Horizon* oil spill, including but not limited to a description of that person's involvement.

**RESPONSE TO INTERROGATORY NO. 49:**

BPXP objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, including to the extent it seeks information regarding "all public relations personnel" related to the oil spill and to the extent it is not limited to such personnel that were involved in activities related to Alabama.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP states that hundreds of individuals were involved in providing information pertaining to the *Deepwater Horizon* oil spill on behalf of BPXP. BPXP further states that it has produced thousands of ICS organization charts that identify individuals who participated in providing such information, and the burden of deriving or ascertaining information responsive to this interrogatory from these documents is substantially the same for Alabama as it is for BPXP. Therefore, in accordance with Federal Rule of Civil Procedure 33(d), BPXP refers Alabama to the documents produced at the following Bates ranges: BP-HZN-2179MDL00584759 - BP-

HZN-2179MDL00598498; BP-HZN-2179MDL01075747 - BP-HZN-2179MDL01088370; and BP-HZN-ALO01303989 - BP-HZN-ALO01304509.   BPXP further states that it has produced organization charts of the Gulf Coast Restoration Organization, which identify individuals participating in Communications and External Relations activities that pertain to the *Deepwater Horizon* oil spill response.   BPXP refers Alabama to the GCRO Organization Charts produced at the following Bates range:  BP-HZN-ALO01305009 - BP-HZN-ALO01305228.

**INTERROGATORY NO. 50:**

Identify YOUR public relations costs within the United States by month and year, from 2008 to Present.

**RESPONSE TO INTERROGATORY NO. 50:**

BPXP objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, including to the extent it seeks information regarding costs not related to the *Deepwater Horizon* oil spill and to the extent it seeks information about costs for activities not related to Alabama.

Subject to and without waiving its specific and general objections, BPXP responds as follows:  Pursuant to Federal Rule of Civil Procedure 33(d), information regarding BPXP's community outreach costs and expenditures related to the oil spill for activities pertaining to Alabama may be derived or ascertained from the following documents and the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for either party:  BP-HZN-ALO00050574; BP-HZN-ALO00285012; and BP-HZN-ALO00312236.

**INTERROGATORY NO. 51:**

Identify all contributions made by YOU and YOUR employees' political action committees ("PAC") to Alabama politicians or their PAC's from 2008 to present, including date of contribution, the intended recipient of your contribution, and whether the contribution was returned.

**RESPONSE TO INTERROGATORY NO. 51:**

BPXP objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  BPXP objects to this interrogatory as seeking information that is not relevant to any claim or defense.  Contributions to campaigns for candidates for public office in Alabama are not relevant to any damages that Alabama may have incurred due to the oil spill.  BPXP objects to this interrogatory to the extent it seeks information not within BPXP's possession, custody, or control, including to the extent it seeks information regarding "YOUR employees' political action committees."

**INTERROGATORY NO. 52:**

Describe in detail all occurrences, by specific date and geographic location(s), where you contend the State of Alabama hindered YOUR ability to "effectively clean the shoreline in Alabama," as referenced in BPXP's response to Alabama Interrogatory #22.

**RESPONSE TO INTERROGATORY NO. 52:**

BPXP incorporates by reference as though fully stated herein, the specific and general objections set forth in BPXP's response to Alabama Interrogatory #22.  BPXP objects to this interrogatory as vague and ambiguous to the extent it mischaracterizes BPXP's previous answer to Alabama's Interrogatory #22.  BPXP's answer to Alabama's Interrogatory #22 stated that "in certain instances, Alabama prohibited BPXP from utilizing surf washing . . . [t]his hindered BPXP's ability to effectively clean the shoreline in Alabama."  BPXP will thus respond to this interrogatory by providing information about occurrences during which Alabama prohibited BPXP from utilizing surf washing, thereby hindering BPXP's ability to effectively clean the shoreline in Alabama.

Subject to and without waiving its specific and general objections, BPXP responds as follows:  The Stage III SCAT Shoreline Treatment Implementation Framework for the Eastern States (BP-HZN-ALO00230800), which Alabama's State On-Scene Coordinator approved,

identifies sediment relocation (or surf washing) as a "potentially effective" method of cleaning sand beaches under certain circumstances.  Certain Shoreline Treatment Recommendations, approved by Alabama's State On-Scene Coordinator, authorized surf washing on portions of Alabama's shoreline, including Fort Morgan amenity beaches. (*See* BP-HZN-ALO00156011 at 013).  Notwithstanding its approval of both the Stage III SCAT Shoreline Treatment Implementation Framework and the Shoreline Treatment Recommendation for Fort Morgan amenity beaches, Alabama subsequently objected to the utilization of surf washing on Fort Morgan amenity beaches, thereby hindering BPXP's ability to effectively clean that portion of the shoreline in Alabama.

**INTERROGATORY NO. 53:**

List all of YOUR business interests in the State of Alabama, including persons employed at or by those business interests, from 2008 to present, including whether those business interests are still active.

**RESPONSE TO INTERROGATORY NO. 53:**

BPXP objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, including with respect to its temporal scope and to the extent it seeks information regarding "all" BP businesses, offices, facilities, equipment, and personnel in Alabama.  BPXP objects to this request as vague and ambiguous, including through its use of the undefined term "business interests."  BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows:  Information regarding BP's operations in Alabama is publicly available at http://www.bp.com/en/global/corporate/about-bp/bp-worldwide/bp-in-america/bp-in-america-map.html and http://americamap.bp.com/live_files/Alabama.pdf.

**INTERROGATORY NO. 54:**

Regarding YOUR response to the State's Request for Admission #3, identify each oil spill response activity SCAT segment located within Baldwin County, Alabama that you deny oil-related materials were removed from between April 20, 2010 to present.

**RESPONSE TO INTERROGATORY NO. 54:**

BPXP incorporates by reference as though fully stated herein, the specific and general objections set forth in BPXP's response to Alabama Request for Admission #3. BPXP objects to this interrogatory as vague and ambiguous, including through its use of the term "oil spill response activity SCAT segment." While the terms "Oil Spill Response Activity" and "SCAT Segment" are individually defined, the combined term is undefined, vague, and ambiguous. BPXP further objects to this interrogatory as vague and ambiguous because Alabama's Request for Admission #3 asked about "every oil spill response activity SCAT segment located within Baldwin County, Alabama bordering the Gulf of Mexico," whereas this interrogatory does not include the "bordering the Gulf of Mexico" limitation.

Subject to and without waiving its specific and general objections, BPXP responds as follows: For certain SCAT segments in Baldwin County, disclosed below, BPXP is not aware of evidence that oil-related materials were removed from April 20, 2010 to present, and the available evidence indicates that oil-related materials were likely not removed from such SCAT segments. Specifically, these SCAT segments are classified pursuant to the SCAT program as having No Oil Observed Ever, (*i.e.*, SCAT teams never observed oil on these segments), and the SCAT segments were not the subjects of Stage II or higher Shoreline Treatment Recommendations ("STR"). Notably, authorized cleanup could not occur on segments unless there was an approved STR. Additionally, Operations records, which were maintained at the SCAT segment level after June 2011, indicate that there was no removal of oil-related materials from these segments after June 2011 and BPXP is not aware that there have been any calls to the

National Response Center ("NRC") associated with these segments.  Nonetheless, because Operations data concerning the collection and removal of oil-related materials from the Alabama shoreline was not recorded at the SCAT segment level prior to June 2011, BPXP cannot definitively conclude that no oil-related materials were removed from these segments prior to June 2011.

SCAT segments in Baldwin County that meet the foregoing criteria include: ALBA1-045; ALBA1-047; ALBA1-048; ALBA1-049; ALBA1-050; ALBA1-051; ALBA1-052; ALBA1-053; ALBA1-054; ALBA1-055; ALBA1-056; ALBA1-057; ALBA1-058; ALBA1-059; ALBA1-060; ALBA1-061; ALBA1-062; ALBA1-063; ALBA1-064; ALBA1-065; ALBA1-066; ALBA1-067; ALBA1-068; ALBA1-069; ALBA1-070; ALBA1-071; ALBA1-072; ALBA1-073; ALBA1-074; ALBA1-075; ALBA1-076; ALBA1-077; ALBA1-078; ALBA1-079; ALBA1-080; ALBA1-081; ALBA1-082; ALBA1-083; ALBA1-084; ALBA1-085; ALBA1-086; ALBA1-087; ALBA1-088; ALBA1-090; ALBA1-091; ALBA1-092; ALBA1-093; ALBA1-094; ALBA1-095; ALBA1-096; ALBA1-097; ALBA1-098; ALBA1-099; ALBA1-100; ALBA1-101; ALBA1-102; ALBA1-103; ALBA1-104; ALBA1-105; ALBA1-106; ALBA1-107; ALBA1-109; ALBA1-110; ALBA1-111; ALBA1-115; ALBA1-119; ALBA1-120; ALBA1-123; ALBA1-124; ALBA1-125; ALBA2-084; ALBA2-086; ALBA2-087; ALBA2-088; ALBA2-089; ALBA2-090; ALBA2-104; ALBA2-105; ALBA2-106; ALBA2-107; ALBA2-109; ALBA2-110; ALBA2-111; ALBA2-112; ALBA2-113; ALBA2-121; ALBA2-122; ALBA2-123; ALBA2-124; ALBA2-137; ALBA2-138; ALBA2-139; ALBA2-140; ALBA2-141; ALBA2-142; ALBA2-143; ALBA2-144; ALBA2-145; ALBA2-146; ALBA2-147; ALBA2-148; ALBA2-149; ALBA2-153; ALBA2-170; ALBA2-183; ALBA2-184; ALBA2-186; ALBA2-187; ALBA2-200; ALBA2-201; ALBA2-202; ALBA2-203; ALBA2-204; ALBA2-205; ALBA2-206; ALBA2-207; ALBA2-208; ALBA2-257; ALBA2-258;

ALBA2-259; ALBA2-260; ALBA2-261; ALBA2-262; ALBA2-263; ALBA2-264; ALBA2-265;

ALBA2-266; ALBA2-267; ALBA2-268; ALBA2-269; ALBA2-270; ALBA2-284; ALBA2-285;

ALBA2-286; ALBA2-287; ALBA2-288; ALBA2-289; ALBA2-290; ALBA2-300; ALBA2-301;

ALBA2-302; ALBA2-303; ALBA2-304; ALBA2-305; ALBA2-306; ALBA2-307; ALBA2-308;

ALBA2-310; ALBA2-311; ALBA2-318; ALBA2-319; ALBA2-320; ALBA2-334; ALBA2-335;

ALBA2-336; ALBA2-337; ALBA2-338; ALBA2-339; ALBA2-340; ALBA2-341; ALBA2-342;

ALBA2-343; ALBA2-344; ALBA2-345; ALBA2-346; ALBA2-347; ALBA2-348; ALBA3-064;

ALBA3-065; ALBA3-066; ALBA3-067; ALBA3-068; ALBA3-069; ALBA3-070; ALBA3-071;

ALBA3-072; ALBA3-073; ALBA3-074; ALBA3-075; ALBA3-076; ALBA3-077; ALBA3-078;

ALBA3-079; ALBA3-080; ALBA3-081; ALBA3-082; ALBA3-083; and ALBA3-084.

Additionally, other SCAT segments in Baldwin County were considered not to require treatment despite having a certain amount of observed oiling.  The SCAT segments in Baldwin County that had observable oiling but did not require treatment, as determined by Unified Command, included:  ALBA1-089; ALBA1-108; ALBA1-112; ALBA1-113; ALBA1-114; ALBA1-116; ALBA1-117; ALBA1-118; ALBA1-121; ALBA1-122; ALBA1-126; ALBA1-128; ALBA1-129; ALBA1-130; ALBA1-131; ALBA1-132; ALBA1-133; ALBA2-062; ALBA2-066; ALBA2-067; ALBA2-108; ALBA2-125; ALBA2-136; ALBA2-152; ALBA2-185; and ALBA2-309.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 55:

Produce all information that supports YOUR statement in response to the State's Request for Admission #17 that "Background oil, including from natural hydrocarbon seeps from the sea floor, commercial shipping activities, and offshore oil production in the Gulf" existed within the State of Alabama's coastline prior to the oil spill.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 55:

BPXP incorporates by reference as though fully stated herein, the specific and general objections set forth in BPXP's response to Alabama Request for Admission #17.  BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, including to the extent it seeks "all information."  BPXP objects to this request to the extent it seeks information not within BPXP's possession, custody, or control.  BPXP objects to this request to the extent that it mischaracterizes BPXP's previous response to the State's Request for Admission #17, which addressed Alabama's "coastal areas," and not necessarily "coastline," both before and after the *Deepwater Horizon* oil spill.  BPXP objects to this request as premature to the extent it calls for expert discovery.

Subject to and without waiving its general and specific objections, BPXP will conduct a reasonable search for non-privileged documents in its possession, custody, or control responsive to this request, to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources.

### REQUEST FOR PRODUCTION NO. 56:

Produce all documents and information that support YOUR statement in response to the State's Request for Admission #18 that tourism "return[ed]" to "normal in the fall of 2010."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

BPXP incorporates by reference as though fully stated herein, the specific and general objections set forth in BPXP's response to Alabama Request for Admission #18.  BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  BPXP objects to this request as seeking documents and information that are equally accessible to Alabama and/or already within its possession, custody, or control.  BPXP objects to this request as premature to the extent it calls for expert discovery. BPXP objects to this request as calling for information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, and/or other applicable privileges, exemptions, or immunities.

Subject to and without waiving its general and specific objections, BPXP will conduct a reasonable search for non-privileged documents in its possession, custody, or control responsive to this request, to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources.  The materials that this request seeks are also the subject of expert discovery and such information will be addressed in forthcoming expert reports in accordance with the dates set forth in the Court's July 16, 2014 scheduling order.

**REQUEST FOR PRODUCTION NO. 57:**

Produce all documents and information that reflect or refer to, in any way, the negative consequences of the oil spill on the State of Alabama.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, including through its use of the phrase "in any way."  BPXP objects to this request as cumulative of other requests for production

served by Alabama.  BPXP objects to this request as vague and ambiguous, including through the use of the undefined term "negative consequences."  BPXP objects to this request as premature to the extent it calls for expert discovery.

Subject to and without waiving its specific and general objections, BPXP responds as follows: This request is cumulative, in-whole or in-part, of Alabama Request of Production Nos. 24, 25, 26, 27, 28, 30, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 58, 59, and 60.

**REQUEST FOR PRODUCTION NO. 58:**

Produce all documents and information that support YOUR contention in response to the State's Request for Admission #19 that there was a "brief" decrease in tourism activity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

BPXP incorporates by reference as though fully stated herein, the specific and general objections set forth in BPXP's response to Alabama Request for Admission #19.  BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  BPXP objects to this request as seeking documents and information that are equally accessible to Alabama and/or already within its possession, custody, or control.  BPXP objects to this request as premature to the extent it calls for expert discovery. BPXP objects to this request as calling for information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, and/or other applicable privileges, exemptions, or immunities.

Subject to and without waiving its general and specific objections, BPXP will conduct a reasonable search for non-privileged documents in its possession, custody, or control responsive to this request, to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources.  The materials that this request seeks are also the subject of expert

discovery and such information will be addressed in forthcoming expert reports in accordance with the dates set forth in the Court's July 16, 2014 scheduling order.

## REQUEST FOR PRODUCTION NO. 59:

Produce all documents, communications, and correspondences between YOU and YOUR shareholders relating to the *Deepwater Horizon* oil spill and its aftermath, including but not limited to the oil spill's environmental and economic impact (whether potential or actual).

## RESPONSE TO REQUEST FOR PRODUCTION NO. 59:

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. BPXP objects to this request as vague and ambiguous, including through its use of the undefined phrase "its aftermath." BPXP objects to this request as vague, ambiguous, and confusing to the extent it seeks "documents … between YOU and YOUR shareholders."

Subject to and without waiving its general and specific objections, BPXP states that BP p.l.c. uses its website, http://www.bp.com/, ("BP's website") as the primary method of communicating with its shareholders. All statutorily required communications issued since the time of the *Deepwater Horizon* oil spill are available at BP's website, including the Annual Report and Form 20-F (*see* http://www.bp.com/en/global/corporate/investors/annual-reporting/archive.html); the Strategic Report (which replaces the Summary Review) (http://www.bp.com/en/global/corporate/investors/annual-reporting/archive.html); and the Notice of BP Annual General Meeting (*see* http://www.bp.com/en/global/corporate/investors/annual-general-meeting/notice-of-meeting/notice-of-meeting-archive.html). Quarterly financial results and related press releases are also available (http://www.bp.com/en/global/corporate/investors/results-and-reporting/quarterly-results/quarterly-results-archive.html). Shareholders are also encouraged to view regulatory announcements, strategy presentations and other information at BP's website.

**REQUEST FOR PRODUCTION NO. 60:**

Produce copies of all public relations media, documents and information prepared by, paid for, or commissioned by YOU relating in any way to the *Deepwater Horizon* oil spill and its aftermath, including but not limited to the oil spill's environmental and economic impact (whether potential or actual).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, including through its use of the phrase "in any way" and to the extent it seeks documents and information that were not publicly disclosed. BPXP objects to this request as vague and ambiguous, including through its use of the undefined phrase "its aftermath." BPXP objects to this request to the extent it seeks information regarding issues that will be addressed in other phases of MDL 2179, including to the extent it seeks information regarding natural resource damages.

Subject to and without waiving its general and specific objections, BPXP will conduct a reasonable search for non-privileged documents in its possession, custody, or control responsive to this request, to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources. BP public communications relating to the oil spill are also publicly available at https://www.facebook.com/BPAmerica, https://twitter.com/BP_America, https://www.youtube.com/user/BPplc, https://www.thestateofthegulf.com/, http://www.bpuspress.com/go/site/1927/, and http://www.bp.com/, including at http://www.bp.com/en/global/corporate/gulf-of-mexico-restoration.html, http://www.bp.com/en/global/corporate/about-bp/bp-worldwide/bp-in-america.html, and http://www.bp.com/en/global/corporate/press.html.

## GENERAL OBJECTIONS

BPXP asserts the following objections to each of the State of Alabama's ("the State" or "Alabama") First Set of Discovery Requests To The Defendants Relating To The State's Compensatory Damages Phase (hereafter "Alabama's Discovery Requests").   These general objections are incorporated by reference into each specific response set forth by BPXP and are neither waived nor limited by any specific responses.

1.      BPXP objects to Alabama's Discovery Requests to the extent that they purport to impose discovery obligations on BPXP greater than or different from those imposed or permitted by the Federal Rules of Civil Procedure and Orders of this Court.

2.      BPXP objects to Alabama's Discovery Requests to the extent they call for the production of ESI in any manner other than required under Federal Rule of Civil Procedure 34, the Rules and Orders of the Court, and any agreements or ongoing negotiations and discussions among counsel.

3.      BPXP objects to Alabama's Discovery Requests to the extent they seek documents or information not related to the issues to be tried in this damages phase.

4.      BPXP objects to Alabama's Discovery Requests to the extent they seek documents or information relating to Phases One or Two of the litigation. *See, e.g.*, Rec. Doc. 3354 ("No party may serve any party with any further Phase One RFPs, interrogatories, or RFAs without leave of Court."). Discovery for Phase One and Phase Two is complete, and the trial record for the Limitation and Liability Trial is closed. BPXP expressly reserves the right to rely on discovery taken and the record developed in Phase One and Phase Two of the Limitation and Liability Trial.

5.      BPXP objects to Alabama's Discovery Requests to the extent they are compound and contain multiple subparts that should be counted as separate requests.  The Court expressly

limited Alabama to 60 combined interrogatories and requests for production and 25 requests for admission.  Rec. Doc. 13149.

6.      BPXP objects to Alabama's Discovery Requests to the extent they seek information or documents protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, or any other applicable privilege, exemption, or immunity.  BPXP will identify specific documents withheld on these grounds in accordance with the Court's Pretrial Order No. 14.  BPXP incorporates its forthcoming privilege logs and all related information into this general objection to the extent necessary to preserve against any waiver of any applicable privilege or immunity from discovery.

7.      BPXP objects to Alabama's Discovery Requests to the extent they seek information or documents for the settlement or potential settlement of disputes between parties to this matter to the extent that such information is not relevant to any party's claim or defense and thus not reasonably calculated to lead to the discovery of admissible evidence, is protected from disclosure and dissemination under Federal Rule of Evidence 408, and that discovery of such information would be prejudicial to the efforts of BPXP and any opposing parties to resolve their disputes in a fair and efficient manner.

8.      BPXP objects to Alabama's Discovery Requests to the extent they call for information or documents not within BPXP's possession, custody, or control, including but not limited to the documents of BPXP's affiliates.  All responses are made on behalf of BPXP only, and are limited to information and documents within its possession, custody, and control.

9.      BPXP objects to Alabama's Discovery Requests to the extent they are unduly burdensome, duplicative, premature, oppressive, and/or overly broad, including, without

limitation, as to subject matter and/or time period, and where compliance with specific requests would be unreasonably difficult as well as prohibitively expensive or time-consuming.

10.     BPXP objects to Alabama's Discovery Requests to the extent they seek information regarding or relating to any Alabama state agency, department, division, or subdivision other than those specifically identified as "subject to any discovery request propounded to the State of Alabama by Defendants" in the Court's July 16, 2014 order, Rec. Doc. 13149.

11.     BPXP objects to Alabama's Discovery Requests to the extent they are not limited to information or documents relevant to any party's claim or defense, or to the extent they seek discovery of information or documents not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, including, but not limited to, requests seeking information or documents concerning other incidents, accidents, or other events at BPXP's facilities or locations other than the Macondo Well or that are otherwise unrelated to the *Deepwater Horizon*.

12.     BPXP objects to Alabama's Discovery Requests as premature to the extent they call for expert discovery or seek information or documents that may not be identified until all fact and expert discovery is complete.

13.     BPXP objects to Alabama's Discovery Requests to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

14.     BPXP objects to Alabama's Discovery Requests to the extent they seek the disclosure of information or documents that would violate the rights of privacy of third parties,

or any similar judicially recognized protection or privilege, including, but not limited to, restrictions imposed in connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

15.     BPXP objects to Alabama's Discovery Requests to the extent they seek documents already in the possession of Alabama or that are equally available to Alabama from sources other than BPXP, including publicly available sources.

16.     BPXP objects to Alabama's Discovery Requests to the extent they presume facts not proven or contentions in dispute. BPXP's responses to such requests and interrogatories are not a concession of any such disputed fact or contested issue.

17.     BPXP objects to Alabama's "Definitions" and "Instructions" to the extent they seek to impose any meaning or interpretation onto Alabama's Discovery Requests other than that evident from the plain and ordinary meaning of the words used therein.  BPXP further objects to, and will read and respond to, Alabama's "Definitions" (labeled to correspond to the Alabama's list) as follows:

(1)     Alabama's definition of "Business Industry" is overly broad, vague, and ambiguous.

(2)     Alabama's definition of "Coastal Areas" is overly broad, vague, and ambiguous; it includes the unspecified and undefined terms "intertidal zone," "immediately adjacent," and "bayous."

(5)      Alabama's definition of "Control" is improper to the extent it seeks to impose any obligation on BPXP beyond that imposed under Federal Rule of Civil Procedure

34(a)(1). BPXP will read and respond to Alabama's requests with the understanding that the term "control" means "possession, custody, or control" as used in Federal Rule of Civil Procedure 34(a)(1).

(6)    Alabama's definition of "Deepwater Horizon" is overly broad, vague, and ambiguous; it is not limited to the *Deepwater Horizon* drilling rig.  BPXP will read and respond to Alabama's Discovery Requests with the understanding that the term "Deepwater Horizon" means the *Deepwater Horizon* drilling rig.

(7)    Alabama's definition of "Defendant," "You," "Your," and "Your Company" is overly broad, vague, and ambiguous.  All responses are made on behalf of BPXP only, and are limited to information and documents within its possession, custody, and control.

(13)    Alabama's definition of "Employee" is overly broad, vague, ambiguous, and confusing; it includes individuals who do not have an employer-employee relationship, including subcontractors.  BPXP will read and respond to Alabama's Discovery Requests with the understanding that the term "Employee" means individuals who are employed by the relevant employer.

(17)    Alabama's definition of "Historical Constituent Background" is overly broad, vague, and ambiguous; it refers to "the oil-related material constituent concentration" but does not specify what the oil-related constituents are, and Alabama's definition of "Oil-Related Materials" already includes "oil or gas constituents."

(18)    Alabama's definition of "Identify" is overly broad; it includes a request for detailed information far beyond whatever may be reasonably necessary to distinguish one individual, one document, or any ESI, from any other.  BPXP further objects to this

definition to the extent it calls for contact information of BPXP employees or other witnesses that are to be contacted through counsel. BPXP will read and respond to Alabama's Discovery Requests with the understanding that the term "identify" means, in the context of an individual, an individual's name, and where the context reasonably requires, his or her employer and title, and in the context of a document or ESI, a Bates number or other available information necessary to isolate the document or ESI.

(19) Alabama's definition of "MC252 Well" and "Macondo Well" is vague and ambiguous. BPXP will read and respond to Alabama's Discovery Requests with the understanding that the terms "MC252 Well" and "Macondo Well" mean the MC 252 #1 Macondo Well.

(20) Alabama's definition of "MC252 Oil" is vague, ambiguous, and confusing; inclusion of the word "solely" in the definition makes the meaning of this term unclear. BPXP further objects to Alabama's definition to the extent it is limited to only oil that has travelled through the Macondo well wellbore and excludes oil that came from the reservoir without travelling through the wellbore because such a distinction is contrary to a common and ordinary understanding of the term and because this distinction cannot be readily determined.

(23) Alabama's definition of "Offset" is overly broad, vague, ambiguous, confusing, and circular; it defines "Offset" using the term "offset." The definition also includes any "legal claim or defense that reduces Alabama's recovery" making it unclear how an "Offset" can be distinguished from any defense.

(25) Alabama's definition of "Oil-Related Material Event" and "Oiling Event" is vague, ambiguous, confusing, and circular; it defines "Oil-Related Material Event" using

the term "oil-related material event."  The definition does not explain what constitutes an "Oil-Related Material Event" or "Oiling Event" or how one such event can be distinguished from another.

(26)   Alabama's definition of "Oil Constituent Baseline Survey" and "Baseline Survey" is vague, ambiguous, and confusing; it is unclear what the "base … of oil-related materials" or what the "historical constituent background for the presence of oil-related materials" mean.

(27)   Alabama's definition of "Oil Spill Response Activities," "Response Activities," and "Response" is vague, ambiguous, overly broad and unduly burdensome; it includes "any and all" efforts, including efforts to "dispense," and includes the undefined term "oil-contaminated materials."

(29) Alabama's definition of "Politician" is vague, ambiguous, overly broad, and unduly burdensome, including to the extent it includes "any individual professionally involved in politics" and a "prospective candidate."

(31) Alabama's definition of "Public Relations" is vague, ambiguous, confusing, overly broad, and unduly burdensome, including to the extent it includes "any direct or indirect effort by YOU to create, shape, facilitate, or control the spread of information."

(32) Alabama's definition of "Public Relations Personnel" is vague, ambiguous, overly broad, and unduly burdensome; it relies on the objectionable term "Public Relations"; it includes individuals that "indirectly" have certain roles; and it includes individuals who "pay for YOUR Public Relations."

(34)    Alabama's definition of "Removal Costs" is overly broad, vague, ambiguous, and confusing; this definition incorporates the defined term "expenditure" making the scope of this definition unclear.

(40)    Alabama's definition of "State of Alabama" and "State" is vague, ambiguous, and confusing; it refers to both Alabama's government and physical boundaries.

(41)    Alabama's definition of "Statement" is vague, ambiguous, and circular; it defines "Statement" using the term "statement."

(43)    Alabama's definition of "Tourist" and "Tourists" is overly broad, vague, and ambiguous.

(44)    Alabama's definition of "Tourism" is vague, ambiguous and confusing; it includes different concepts of "travel and expenditure incurred by tourists" and "all business entities supporting tourism travel and expenditures."

BPXP further objects to, and will read and respond to, Alabama's "Instructions" (labeled to correspond to the Alabama's list) as follows:

(4)    Alabama's instruction regarding its use of "each" and "every" is overly broad, vague, ambiguous, and confusing.  It renders the words equivalent and therefore deprives them of independent meaning and inconsistent with standard English usage. BPXP will read and respond to plaintiffs' requests with the understanding that the term "each" means each and the term "every" means every.

(12)    BPXP objects to Alabama's attempt to reserve the right to "revise and/or supplement these discovery requests."  BPXP will treat any revised and/or supplemented

discovery request as a new distinct request that counts separately towards Alabama's discovery limits.

18.     These responses are made without waiving, in any manner, BPXP's right to object to the use of any information or documents provided in response to these requests at any trial or evidentiary hearing on grounds of privilege, relevance, materiality, authenticity, hearsay, or any other ground permitted by any applicable law or rule.

19.     Neither BPXP's agreement to produce documents, if any, nor BPXP's agreement to search for documents responsive to a request shall imply that responsive documents exist, or constitute BPXP's admission or acknowledgment as to the relevance or admissibility of any documents or as to the truth of any allegation or assumption contained in the requests.

20.     To the extent BPXP states it will produce documents in response to the requests, BPXP will produce such documents on a rolling basis with such reasonable speed as BPXP can locate and process them, without sacrificing a meaningful review for responsiveness, privilege, and confidentiality, as this is the only feasible and physically possible method given the scope and breadth of the requests.

21.     To the extent that BPXP responds that it will search for and produce responsive documents, BPXP is only undertaking to make a good-faith effort to conduct a reasonable search of non-privileged documents in the files and records of those individuals likely to have meaningful information responsive to a request as maintained in the ordinary course of business, and/or to apply a reasonable set of search terms, including those the parties have already agreed upon, to available collections of ESI as maintained in the ordinary course of business reasonably likely to yield a meaningful amount of information responsive to a request.  BPXP is not offering or promising to search for and produce every document or piece of information that may exist in

the possession, custody, or control of any of the BP entities' tens of thousands of employees and agents where any such items are not included within the results of a reasonable search as described above.

22.     Where documents are identified, BPXP incorporates into its response all similar documents, which are equally available to Alabama via electronic searches of BPXP's production.

23.     BPXP's decision, now or in the future, to provide information or documents notwithstanding the objectionable nature of any of the definitions or instructions, or the document requests themselves, should not be construed as: (a) a stipulation that the material is relevant or admissible, (b) a waiver of BPXP's general objections or the objections asserted in response to specific requests, or (c) an agreement that requests for similar information will be treated in a similar manner.

24.     BPXP reserves the right to modify, amend, or supplement its responses, which are made based on the current status of its knowledge, understanding, belief, and searches for documents.  The investigation of facts and information relating to these requests is continuing, and, therefore, these responses are not intended as an admission or a representation that additional information or documents do not exist.

Dated:  October 3, 2014                           Respectfully submitted,


                                                  */s/ Paul D. Collier*                     
                                                  Richard C. Godfrey, P.C.
                                                  J. Andrew Langan, P.C.
                                                  Paul D. Collier
                                                  Kirkland & Ellis LLP
                                                  300 North LaSalle Street
                                                  Chicago, IL 60654
                                                  Telephone: (312) 862-2000
                                                  Facsimile: (312) 862-2200

                                                  and

                                                  Robert C. "Mike" Brock
                                                  F. Chad Morriss
                                                  Maureen F. Browne
                                                  Covington & Burling LLP
                                                  1201 Pennsylvania Avenue, NW
                                                  Washington, DC 20004-2401
                                                  Telephone: (202) 662-5985

                                                  Joel M. Gross
                                                  Lawrence A. Schneider
                                                  Arnold & Porter, LLP
                                                  555 12th Street N.W.
                                                  Washington, DC 20004
                                                  Telephone: (202) 942-5705
                                                  Facsimile: (202) 942-5999

                                                  Don K. Haycraft (Bar #14361)
                                                  R. Keith Jarrett (Bar #16984)
                                                  Liskow & Lewis
                                                  701 Poydras Street, Suite 5000
                                                  New Orleans, Louisiana 70139-5099
                                                  Telephone: (504) 581-7979
                                                  Facsimile: (504) 556-4108

                                                  *Attorneys for BP Exploration &*
                                                  *Production Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing **BP EXPLORATION & PRODUCTION INC.'S RESPONSES AND OBJECTIONS TO THE THE STATE OF ALABAMA'S SECOND SET OF DISCOVERY REQUESTS TO THE DEFENDANTS RELATING TO THE STATE'S COMPENSATORY DAMAGES PHASE** has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve **in accordance with Pretrial Order No. 16 on this 3rd day of October, 2014.**

                                 */s/ Paul D. Collier*
                                 Paul D. Collier

# APPENDIX A

APPENDIX A

| Claims Process | Date | | Paid Amount | |
|---|---|---|---|---|
| | Year | Month | Baldwin County | Mobile County |
| **BP Government Claims** | | | $ 35,752,185 | $ 1,698,515 |
| | **2010** | | $ 11,126,421 | $ 818,090 |
| | | May | $ - | $ 10,000 |
| | | Jun | $ 101,548 | $ 20,000 |
| | | Jul | $ 2,231,941 | $ 175,668 |
| | | Aug | $ 527,062 | $ 265,343 |
| | | Sep | $ 4,286,108 | $ 112,040 |
| | | Oct | $ - | $ 158,213 |
| | | Nov | $ 288,315 | $ 74,962 |
| | | Dec | $ 3,691,447 | $ 1,865 |
| | **2011** | | $ 2,198,449 | $ 851,078 |
| | | Jan | $ 606,272 | $ - |
| | | Feb | $ 24,953 | $ 64,941 |
| | | Mar | $ 6,539 | $ 665,989 |
| | | Apr | $ 13,220 | $ - |
| | | May | $ 283 | $ 4,305 |
| | | Jun | $ 56,564 | $ 101,093 |
| | | Aug | $ 7,853 | $ 14,750 |
| | | Sep | $ 158,752 | $ - |
| | | Oct | $ 1,324,013 | $ - |
| | **2012** | | $ 22,427,315 | $ 29,347 |
| | | Jan | $ 20,000 | $ - |
| | | Feb | $ 159,785 | $ 29,347 |
| | | Mar | $ 6,770,834 | $ - |
| | | Apr | $ 3,281,685 | $ - |
| | | May | $ 136,737 | $ - |
| | | Jun | $ 12,058,274 | $ - |
| **BP VoO Damages Claims** | | | $ 771,764 | $ 1,060,859 |
| | **2010** | | $ 33,986 | $ 7,010 |
| | | Dec | $ 33,986 | $ 7,010 |
| | **2011** | | $ 600,283 | $ 823,131 |
| | | Jan | $ 26,967 | $ 37,156 |
| | | Feb | $ 24,311 | $ 21,001 |
| | | Apr | $ 4,069 | $ - |
| | | May | $ 90,789 | $ 55,288 |
| | | Jun | $ 14,835 | $ - |
| | | Jul | $ 36,517 | $ 78,177 |
| | | Aug | $ 141,097 | $ 61,064 |
| | | Sep | $ 85,275 | $ 408,167 |
| | | Oct | $ 25,062 | $ 14,886 |
| | | Nov | $ 16,298 | $ 45,758 |
| | | Dec | $ 135,064 | $ 101,635 |
| | **2012** | | $ 137,494 | $ 230,719 |
| | | Jan | $ 26,736 | $ - |

| | | | | |
|---|---|---|---|---|
| | | Feb | $ 23,286 | $ 50,623 |
| | | Mar | $ 12,242 | $ 25,748 |
| | | Apr | $ 38,489 | $ 95,742 |
| | | May | $ 32,125 | $ 49,750 |
| | | Aug | $ 4,617 | $ 8,855 |
| **BP Claims Process** | | | **$ 53,431,734** | **$ 33,367,848** |
| **Administered By ESIS** | **2010** | | **$ 53,392,018** | **$ 33,358,072** |
| | | May | $ 2,024,492 | $ 6,828,913 |
| | | Jun | $ 7,817,685 | $ 9,162,360 |
| | | Jul | $ 14,620,279 | $ 8,423,310 |
| | | Aug | $ 28,616,279 | $ 8,904,038 |
| | | Sep | $ 308,068 | $ 21,519 |
| | | Nov | $ 1,080 | $ 8,500 |
| | | Dec | $ 4,134 | $ 9,431 |
| | **2011** | | **$ 39,716** | **$ 9,776** |
| | | Feb | $ 28,260 | $ 1,000 |
| | | Apr | $ 5,511 | $ - |
| | | May | $ 945 | $ 467 |
| | | Jun | $ 5,000 | $ 8,309 |
| **BP Claims Process** | | | **$ 85,689** | **$ 486,020** |
| | **2012** | | **$ 40,777** | **$ 78,404** |
| | | Oct | $ 4,608 | $ 69,660 |
| | | Nov | $ 36,169 | $ 8,745 |
| | **2013** | | **$ 40,400** | **$ 323,577** |
| | | Jun | $ 2,000 | $ - |
| | | Aug | $ - | $ 323,577 |
| | | Sep | $ 27,400 | $ - |
| | | Dec | $ 11,000 | $ - |
| | **2014** | | **$ 4,512** | **$ 84,038** |
| | | Feb | $ - | $ 74,038 |
| | | May | $ - | $ 10,000 |
| | | Jun | $ 4,512 | $ - |
| **CSSP** | | | **$ 161,341,026** | **$ 119,868,219** |
| | **2012** | | **$ 122,348,089** | **$ 96,428,978** |
| | | Jan | $ 466,708 | $ - |
| | | Jun | $ 28,955,929 | $ 18,298,396 |
| | | Jul | $ 24,211,054 | $ 18,286,927 |
| | | Aug | $ 20,924,169 | $ 20,770,324 |
| | | Sep | $ 18,226,410 | $ 10,869,691 |
| | | Oct | $ 15,112,875 | $ 11,930,323 |
| | | Nov | $ 10,211,054 | $ 10,360,448 |
| | | Dec | $ 4,239,891 | $ 5,912,869 |
| | **2013** | | **$ 30,160,740** | **$ 12,570,401** |
| | | Jan | $ 5,133,209 | $ 1,703,684 |
| | | Feb | $ 3,576,964 | $ 303,350 |
| | | Mar | $ 3,454,995 | $ 2,708,340 |
| | | Apr | $ 2,664,286 | $ 324,827 |

| | | | | | |
|---|---|---|---|---|---|
| | | May | $ | 2,476,663 | $ | 4,623,180 |
| | | Jun | $ | 2,945,170 | $ | 130,385 |
| | | Jul | $ | 2,154,261 | $ | 698,707 |
| | | Aug | $ | 2,240,300 | $ | 727,751 |
| | | Sep | $ | 2,275,833 | $ | 76,939 |
| | | Oct | $ | 1,205,210 | $ | 1,145,189 |
| | | Nov | $ | 526,392 | $ | 68,424 |
| | | Dec | $ | 1,507,457 | $ | 59,624 |
| | **2014** | | **$** | **8,832,197** | **$** | **10,868,839** |
| | | Jan | $ | 357,494 | $ | 41,327 |
| | | Feb | $ | 1,074,034 | $ | 341,235 |
| | | Mar | $ | 4,700,988 | $ | 8,390,131 |
| | | Apr | $ | 976,509 | $ | 30,670 |
| | | May | $ | 243,431 | $ | 1,944,570 |
| | | Jun | $ | 328,511 | $ | 20,028 |
| | | Jul | $ | 299,829 | $ | 5,082 |
| | | Aug | $ | 839,948 | $ | 14,740 |
| | | Sep | $ | 11,452 | $ | 81,057 |
| **GCCF** | | | **$** | **488,077,485** | **$** | **360,150,941** |
| | **2010** | | **$** | **232,006,138** | **$** | **177,651,965** |
| | | Aug | $ | 1,374,433 | $ | 1,489,851 |
| | | Sep | $ | 94,074,100 | $ | 47,409,514 |
| | | Oct | $ | 69,537,200 | $ | 50,645,800 |
| | | Nov | $ | 31,533,405 | $ | 32,769,600 |
| | | Dec | $ | 35,487,000 | $ | 45,337,200 |
| | **2011** | | **$** | **218,553,633** | **$** | **152,083,139** |
| | | Jan | $ | 40,154,552 | $ | 38,972,489 |
| | | Feb | $ | 10,583,614 | $ | 5,634,992 |
| | | Mar | $ | 16,321,505 | $ | 9,831,988 |
| | | Apr | $ | 25,880,886 | $ | 14,304,371 |
| | | May | $ | 21,956,106 | $ | 15,681,602 |
| | | Jun | $ | 20,811,425 | $ | 15,088,449 |
| | | Jul | $ | 20,758,783 | $ | 13,802,276 |
| | | Aug | $ | 16,342,586 | $ | 12,657,161 |
| | | Sep | $ | 11,132,729 | $ | 11,511,166 |
| | | Oct | $ | 13,926,555 | $ | 5,852,770 |
| | | Nov | $ | 8,459,089 | $ | 4,070,230 |
| | | Dec | $ | 12,225,802 | $ | 4,675,646 |
| | **2012** | | **$** | **37,447,913** | **$** | **30,387,343** |
| | | Jan | $ | 5,875,725 | $ | 4,464,429 |
| | | Feb | $ | 12,287,760 | $ | 9,359,690 |
| | | Mar | $ | 4,664,831 | $ | 3,897,312 |
| | | Apr | $ | 6,002,131 | $ | 6,783,180 |
| | | May | $ | 5,138,536 | $ | 2,702,352 |
| | | Jun | $ | 2,787,291 | $ | 2,111,136 |
| | | Jul | $ | 492,000 | $ | 640,555 |
| | | Aug | $ | 194,639 | $ | 409,589 |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | Oct | $ - | $ 5,000 |
|  |  | Nov | $ - | $ 14,100 |
|  |  | Dec | $ 5,000 | $ - |
|  | **2013** |  | **$ 69,801** | **$ 28,494** |
|  |  | Feb | $ 30,988 | $ 17,567 |
|  |  | Mar | $ - | $ 10,926 |
|  |  | Apr | $ 3,113 | $ - |
|  |  | May | $ 30,700 | $ - |
|  |  | Jun | $ 5,000 | $ - |
| **Rig Workers' Fund** |  |  | **$ 112,600** | **$ 356,200** |
|  | **2010** |  | **$ 78,000** | **$ 112,900** |
|  |  | Oct | $ 78,000 | $ 112,900 |
|  | **2011** |  | **$ 34,600** | **$ 243,300** |
|  |  | Mar | $ - | $ 109,200 |
|  |  | Jun | $ 34,600 | $ 118,000 |
|  |  | Aug | $ - | $ 16,100 |
| **Total** |  |  | **$ 739,572,483** | **$ 516,988,601** |