**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: **Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | **MDL No. 2179** |
| | **SECTION: J** |
| **This Document Relates To:** **Case Nos. 10-4182, 10-4183, 13-2645, 13-2646, 13-2647, 13-2813** | **DISTRICT JUDGE BARBIER** |
| | **MAGISTRATE JUDGE SHUSHAN** |

<u>**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY OF WRITTEN RESPONSES FROM THE STATE OF ALABAMA**</u>

## TABLE OF CONTENTS

ARGUMENT ............................................................................................................................... 3

I.    SEVERAL OF ALABAMA'S INTERROGATORY RESPONSES ARE
      DEFICIENT AND SHOULD BE SUPPLEMENTED. ..................................................... 3

      A.    Alabama Has Not Responded Fully to BP's Request to Provide an
            Accounting of Funds It Received (Interrogatory No. 14). ................................... 4

      B.    Alabama Must Supplement Its Responses Regarding All Revenue
            Sources. ................................................................................................................ 6

      C.    Alabama's Refusal to Provide Discovery Regarding State-Owned
            Properties Except For Those For Which It Claims a Loss Is Improper. ................. 8

II.   ALABAMA'S FORTHCOMING SUPPLEMENTAL RESPONSES MAY
      NECESSITATE COURT INTERVENTION IF THEY CONTINUE TO BE
      DEFICIENT. .................................................................................................................. 10

      A.    Interrogatory No. 7: Physical Injury To A Proprietary Interest. .......................... 11

      B.    Interrogatories 1, 2, 10, 12: State Response And Recovery Costs. ...................... 12

      C.    Interrogatories And Requests Regarding Pre-Incident Oiling. ............................ 14

CONCLUSION ........................................................................................................................ 15

Pursuant to Fed. R. Civ. P. 37, Defendants move to compel the State of Alabama to provide information in response to its written discovery responses commensurate with its discovery obligations.[1]  While many of Alabama's discovery responses are lacking, this motion focuses on Alabama's refusal to provide information, which unduly prejudices Defendants' ability to develop their defense.  Alabama's most serious deficiencies generally fall into two categories.

First, Alabama refuses to provide a complete accounting of the funds it received during the response, particularly from BP, and explain how such funds were used.  Such information is highly relevant to Defendants' defense to Alabama's economic loss claim because it directly relates to whether such funds were, or could have been, an offset or mitigation to Alabama's economic loss.  In response to narrowly-tailored discovery requests intended to discover how Alabama has used these funds, Alabama has provided some—but certainly not all—of the information responsive to these requests.  Alabama does not dispute that such information is relevant, but refuses to provide the details of how this money was used.  In fact, this Court has previously rejected Alabama's attempt to preclude discovery into this information and its position that such information is not relevant, and has ordered Alabama to produce discovery as to how this money was used.  (Ex. 2, 07/29/14 Order re Discovery Issues in Alabama Damages Case, Doc. 13210.)

Second, Alabama improperly attempts to limit discovery by selectively providing information and documents that support its litigation position while objecting to providing those

---

[1]   Issues regarding Alabama's numerous document production deficiencies have been addressed in a previous briefing, (*see* Ex. 1, 10/14/2014 P. Collier Email to Judge Shushan attaching BPEX Memo re Document Production). Alabama and Defendants are in agreement that the October 17, 2014 motion to compel deadline relates exclusively to written discovery responses and Defendants reserve the right to raise issues with Alabama's document production at a later date.

that would possibly undermine its position under the guise of irrelevance or undue burden.  For example, Alabama has agreed to provide information regarding revenue sources that allegedly decreased as a result of the *Deepwater Horizon* oil spill, but not other revenue sources that may either compensate for the losses or indicate that all revenues decreased for reasons unrelated to the oil spill.  Similarly, Alabama agreed to provide property value information for properties it contends were damaged, but not for other properties that may serve as a benchmark for Defendants to be able to conduct a meaningful damage assessment.  Alabama's limited view of discovery is hindering Defendants' ability to analyze the true extent of Alabama's damages.  Discovery is not a one-sided proposition that allows Alabama to unilaterally produce only the information and documents that support its case while withholding those that do not.  As such, this Court should compel Alabama to supplement its responses to Interrogatory No. 11 and Requests for Production Nos. 1, 2, 3, 5, 6, 21, and 34 (regarding revenue streams) and Interrogatories 5 and 6 and Requests for Production 10, 11, 13, and 19 (regarding State-owned properties).

Additionally, while Defendants presently move to compel only on the issues raised above and discussed in Section I, the parties hope to resolve several other outstanding issues without Court intervention.[2]  Defendants note these outstanding issues for the Court in Section II and respectfully request that the Court permit Defendants to reserve their right to seek the Court's intervention should Alabama's forthcoming supplemental responses be deficient.[3]

---

[2]  The parties continue to work together in good faith to resolve the remaining discovery issues, and have exchanged correspondence and met and conferred to resolve many outstanding discovery deficiencies.  BPXP has provided supplemental responses in an attempt to address several of Alabama's concerns.

[3]  Alabama has recently agreed to supplement several responses outlined in Section II, but not until *after* the motion to compel deadline has passed.

## ARGUMENT

This Court has consistently held that "[t]he discovery rules are accorded a broad and liberal treatment." *E.g.*, *Yeager v. Corinthian Colleges, Inc.*, No. 01-3122, 2002 WL 1976773, at *3 (E.D. La. Aug. 23, 2002); *Somerset Marine, Inc. v. Briese Schiffahrts GMBH & Co.*, No. 01-1881, 2002 WL 1933723, at *4 (E.D. La. Aug. 21, 2002).  The rules permit discovery of "any nonprivileged matter that is relevant to any party's claim or defense." *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (citing Fed. R. Civ. P. 26(1)). "[R]elevancy is broadly construed and a request for discovery should be considered relevant if there is ***any*** possibility that the information sought may be relevant to the subject matter in the action or if there is any possibility that the information sought may lead to the discovery of admissible evidence." *Somerset Marine*, 2002 WL 1933723, at *4 (emphasis added).  Moreover, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  Defendants have served highly relevant and tailored requests, to which Alabama has provided vague, incomplete, and deficient responses. As such, the Court should grant Defendants' motion to compel.

## I.   SEVERAL OF ALABAMA'S INTERROGATORY RESPONSES ARE DEFICIENT AND SHOULD BE SUPPLEMENTED.

Alabama fails to provide a sufficient accounting or explain how it disbursed the funds provided to it by BPXP.  Additionally, it objects to providing relevant information and documents regarding all of its revenue sources and State-owned properties.  The Court should grant Defendants' motion to compel on these issues, and Alabama should promptly supplement its responses.

**A.      Alabama Has Not Responded Fully to BP's Request to Provide an Accounting of Funds It Received (Interrogatory No. 14).**

Defendants' Interrogatory No. 14 asks Alabama to provide an accounting of grants and contributions that it has received from BP from 2010 until the present relating to the *Deepwater Horizon* oil spill, including how Alabama disbursed these funds and how they were used.  (Ex. 3, 07/142014 Defendants Interrogs. at 5).

Alabama objected to this interrogatory on the grounds of relevance, in part because "Defendants have not filed a claim/counter-claim alleging that the State has improperly expended or disbursed any funds, payments, grants, contributions, or donations received from Defendant BP."  (Ex. 4, 08/11/2014 Alabama Responses at 25).  Alabama's use or misuse of these funds, however, is highly relevant to the issues in this case, and Defendants need not file a counter-claim alleging these funds were improperly expended, or request that these funds be refunded, in order to obtain the requested information.  If money associated with BPXP's payments was used to mitigate the damages Alabama now claims to have suffered, Defendants are entitled to know how and whether that money was spent.  If that money could have been spent to offset Alabama's economic losses associated with the spill, but was not, this is relevant to the economic damages to which Alabama is entitled.  (*See* Ex. 5, 07/25/2014 Defendants' Submission re 30(b)(6) & Search Term Discovery Issues at 3–4).  For this reason, the Court, in its July 29, 2014 order, Rec. Doc. 13210, accepted Defendants' position and overruled Alabama's objection to providing discovery regarding an accounting of funds provided by BP.

Subject to its objections, Alabama provided and supplemented its response to this interrogatory.  (Ex. 4 at 25–28; Ex. 6, 09/19/2014 Alabama Supp. Resp. to Interrog. 14).  However, both responses are incomplete and deficient because they do not provide sufficient

details, and Alabama's numbers do not add up.   For example, in Alabama's supplemental response, under "General Grants," it states that in addition to two $25 million grants, it received "additional payments related to the construction of the Katrina Cut project."   (Ex. 6 at 2). Alabama does not specify whether this funding was additional to the $15 million grant it identified in its original response to this interrogatory, (*see* Ex. 4 at 26), does not provide the amount of additional Katrina Cut payments, and does not indicate how this Katrina Cut funding was disbursed.   Moreover, the amounts received by the departments Alabama lists as having received and disbursed the general grants add up to more than $50 million (totaling around $72 million, *see* (Ex. 6 at 2–3)), and it is unclear where the remainder of this money came from, and whether this difference is made up by the "additional payments related to the construction of the Katrina Cut project." (*Id.* at 2).   BPXP has also identified five specific grants to Alabama totaling $93 million in its own discovery responses, but Alabama has not accounted for all these funds. Additionally, Alabama states that Fund 1417 included disbursements to the Alabama Department of Public Safety and the Alabama Department of Conservation and Natural Resources.   (*Id.* at 3). While Alabama provides a document showing disbursement of the funds received by the Department of Public Safety, it fails to explain how the Department of Conservation and Natural Resources allocated the $79,800 it received, including, whether or not those funds were directly allocated for activities related to the Department's response to the *Deepwater Horizon* oil spill. This is all relevant information and without it, Defendants' ability to develop their defense is hindered.

Further, Alabama references documents with generic entries for items including personnel costs, employee benefits, travel, and similar expenditures, without any accompanying detail as to who the personnel were, what they worked on, the nature of their travel, and similar

relevant details.  For example, concerning the disbursement of funds for Alabama's Historical Commission, the referenced document, (*Id.* at 2; Ex. 7, AL-ED-000031681), lists personnel costs and employee benefits in 2013 and 2014.  It is unclear who these personnel were and what purpose the allocated funding served more than three years after the oil spill.  Another referenced document (Ex. 6 at 2; Ex. 8, AL-ED-000031677), relating to disbursements by the office of the Governor, shows several allocations for out of state travel by the general counsel of the University of Alabama system, among others, without explaining what this travel was for or whether it falls within the terms of the grant.

The information Alabama has provided is incomplete and lacking in the necessary detail for a full and complete response because: (1) it fails to provide sufficient detail as to whether the funds were spent on response activities; and (2) it is laden with discrepancies in the amounts received and disbursed.  Alabama's response as it stands is insufficient.  Because Alabama has not indicated that it intends to supplement its response,[4] despite Defendants' request that it do so (Ex. 9, 10/01/2014 P. Collier ltr. to C. Maze), Alabama should be compelled to provide a more complete response to Interrogatory No. 14.

### B.    Alabama Must Supplement Its Responses Regarding All Revenue Sources.

Defendants' Interrogatory No. 11 and Requests for Production Nos. 1, 2, 3, 5, 6, 21, and 34 ask about revenues received by Alabama, and Defendants define "Revenue" as "taxes, fees, interest, royalties, rents, fines, federal funds, grants, contributions, donations, profits, and any other forms of payment or income received by the State."  (Ex. 3 at 4, 8; Ex. 10, 07/14/2014 Defendants' RFPs at 2–3, 5; Ex. 11, 09/03/2014 Defendants' RFPs at 3).  Alabama objected to

---

[4]    Alabama has agreed to "provide Defendants with an accounting of the total disbursement in a future production" with respect to one grant only.  (Ex. 6 at 2).  That supplementation will not cure the deficiencies detailed above.

Defendants' definition of "Revenue", and then stated that it "will read and respond to this term as including those revenue sources that reasonably have a connection to the State's claims." (Ex. 4 at 55; Ex. 12, 10/03/2014 Alabama Resps. at 45–46). BPXP attempted to understand which revenue sources Alabama intended to exclude from its responses, asking, by way of example, whether Alabama considered a revenue increase to a State-owned park outside a coastal area as relevant to the litigation. In a subsequent email, Alabama "confirm[ed] that it is not producing revenue information for State-owned parks/attractions not subject to the State's claims." (Ex. 13, 09/16/2014 C. Maze Email.) Thus, Alabama appears to be impermissibly narrowing the scope of discovery by withholding information and documents regarding all of its sources of revenue that may be relevant to Alabama's economic claims.

This restrictive interpretation of Defendants' definition is improper for two reasons. First, Alabama's revised definition of revenue is ambiguous and does not reasonably apprise Defendants which revenue sources Alabama contends to "reasonably have a connection to the State's claims." Second, Alabama cannot limit its discovery obligations to only those revenue sources that it unilaterally deems to "reasonably have a connection to the State's claims," because all of Alabama's revenue sources may potentially be relevant to the issues in this litigation. For example, Defendants are entitled to investigate whether any claimed losses in one source of revenue were compensated by gains in a different source. Alternatively, if there was a statewide decrease in all revenue sources, even those unrelated to the oil spill, that may indicate that an independent factor (such as the national recession) impacted Alabama's revenues. Therefore, Defendants need information regarding all of Alabama's revenue sources, and not just those that Alabama contends were negatively impacted by the oil spill. *See Yelton v. PHI, Inc.*, 279 F.R.D. 377, 384 (E.D. La. 2011) ("This broad duty of disclosure extends to all documents

that fit the definition of relevance for the purposes of discovery—whether the documents are good, bad, or indifferent."). The Court should compel Alabama to withdraw its general objection to Defendants' definition of revenue and respond to Interrogatory No. 11 and Requests for Production Nos. 1, 2, 3, 5, 6, 21, and 34 based on Defendants' definition, encompassing all revenue sources.

### C. Alabama's Refusal to Provide Discovery Regarding State-Owned Properties Except For Those For Which It Claims a Loss Is Improper.

Just as it does with revenue streams, Alabama improperly attempts to limit discovery into property values to only those properties that support its litigation position and exclude responsive information Defendants require to develop their defense. In its initial disclosures and amendments, Alabama claims losses from physical injuries to State-owned properties that may "total, and perhaps exceed, $450 million." (*See, e.g.,* Ex. 14, 10/10/2014 Alabama Amended Disclosures at 16). As such, Defendants' Interrogatories 5 and 6 and Requests for Production 10, 11, 13, and 19 seek information about State-owned properties in Alabama, including property valuations and restrictions on use or sale, how property valuations and tax assessments are performed on these properties, documents generally describing the State-owned properties, and documents relating to the real-estate market in Alabama. (*See* Ex. 3 at 2–3; Ex. 10 at 3–5). Notably, these requests do not ask about all State-owned properties throughout Alabama but are tailored to State-owned properties in the two counties where Alabama claims to have sustained property damage (Baldwin and Mobile), and the eight surrounding counties.

Alabama objected to Defendants' Interrogatories 5 and 6 to the extent they seek "property information on properties upon which the State is not making a claim," (Ex. 4 at 14–16) and objected to Requests for Production 10, 11, 13, and 19 on similar grounds (*Id.* at 36–38,

42).    Alabama contends that "information regarding properties from the eight non-coastal counties is neither necessary nor proper to form a reliable trend line for the State's coastal county properties."  (Ex. 15, 09/15/2014 C. Maze ltr. to P. Collier at 1).  Alabama later advanced an even more restrictive position when it "confirm[ed] that it is not producing documents related to State-owned properties not subject to the State's claims, including properties in Mobile and Baldwin Counties."  (Ex. 13).

        Thus, Alabama refuses to provide discovery on any properties on which it is not claiming damages, whether in Baldwin or Mobile Counties, or the surrounding eight counties.  Instead, Alabama only agrees to provide information on properties that were purportedly damaged and presumably decreased in value.  However, the specific properties in Baldwin and Mobile Counties that Alabama claims lost value cannot be fully analyzed in isolation; rather property values and trends, and the methods used to assess property values and taxes in surrounding areas are highly relevant, at least because the requested information will provide a potential benchmark for evaluating Alabama's contention that its claimed property damages were caused by the *Deepwater Horizon* oil spill.  *See Weiss v. Allstate Ins. Co.*, 512 F. Supp. 2d 463, 468 (E.D. La. 2007) ("[A] blanket exclusion of any evidence relating to other properties is inappropriate in this case because what happened at another property may, given appropriate similarity between the properties, make the existence of a fact as to what happened to plaintiffs' property more probable."); *Sundown Energy, L.P. v. Haller*, No. 10-4354, 2011 WL 5079329, at *2 (E.D. La. Oct. 26, 2011) (granting motion to compel, and holding that discovery should not be limited to the property-at-issue only); *Yeager*, 2002 WL 1976773, at *3 (granting plaintiff's motion to compel, and holding that plaintiff was entitled to discover relevant information about other employees who held positions comparable to hers).

Specifically, with regard to Interrogatory No. 5 and Request for Production No. 10, Defendants need property valuations for State-owned properties to compare how much the oiled properties decreased in value compared to properties that were not oiled.  If all State-owned properties in Baldwin County or a neighboring county decreased in value, not just those impacted by the oil spill, that would be relevant to show that not all of the damages can be attributed to the spill.  The same reasoning applies to use or sale restrictions, as providing these restrictions for only some properties but not others adds another variable of uncertainty and dilutes the comparison.[5]  Similarly, Requests for Production Nos. 11 and 13 seek documents relevant to a price or value trend analysis.  Finally, Request for Production No. 19, which asks for documents relating to the real estate market in Alabama, is relevant because if the real estate market in Alabama was on the decline since before the *Deepwater Horizon* oil spill, that would indicate the entirety of the decrease in property values could not be attributed to it.

Because Defendants need sufficient data for an accurate baseline comparison, the Court should compel Alabama to supplement its responses to Interrogatories 5 and 6, and Requests for Production 10, 11, 13, and 19 with respect to all State-owned properties in Baldwin County, Mobile County, and the eight surrounding counties, not only the properties for which Alabama is making a claim.

## II.   ALABAMA'S FORTHCOMING SUPPLEMENTAL RESPONSES MAY NECESSITATE COURT INTERVENTION IF THEY CONTINUE TO BE DEFICIENT.

During the parties' meet and confer on October 16, one day before the motion to compel

---

[5]   Alabama has agreed to "supplement its response [to Interrogatory 5] with regard to restrictions on use for properties subject to the State's claims, but not for properties not subject to the State's claims."  (Ex. 13).  First, Defendants reserve the right to compel should Alabama's forthcoming responses prove insufficient.  Second, Defendants need information about Alabama's use restrictions, even for properties on which Alabama is not making a claim, for a baseline comparison–specifically to eliminate variables that could have affected prices of properties not impacted by the oil spill for an accurate comparison to properties that were impacted by it.

deadline, Alabama agreed to provide supplemental responses to several discovery requests, but only after the motion to compel deadline has passed.  For many of these requests, Alabama was fully aware of Defendants' concerns regarding the sufficiency of its responses for several weeks, yet waited until the date before the motion to compel deadline to inform Defendants that it intended to supplement several of them.  For this reason, Defendants remain concerned that Alabama's supplemental responses will continue to be deficient even with this forthcoming supplementation.  While Defendants do not presently move to compel on the topics below, and hope to resolve any disputes without Court intervention, they note the outstanding issues for the Court, and reserve their right to compel additional discovery should Alabama's forthcoming responses prove insufficient.[6]

### A.    Interrogatory No. 7: Physical Injury To A Proprietary Interest.

Defendants' Interrogatory No. 7 seeks a detailed description "[f]or each piece or parcel of Property that [Alabama] claim[s] has suffered or will suffer a 'physical injury to a proprietary interest' as enunciated in *Robins Dry Dock*, 275 U.S. 303 (1927)" that explains the "nature of Alabama's proprietary interest," and how Alabama realized or will realize its alleged damages. (Ex. 3 at 3).  Alabama responded that it holds legal title to each of the properties identified in its initial disclosures and claims ownership of all lands beneath navigable waters within its jurisdiction, and all tidally-influenced coastal lands up to the mean navigable tide line within its jurisdiction.  (Ex. 4 at 17-18).  Alabama also provided a "non-exhaustive" list of alleged additional proprietary interests in coastal-area lands for which Alabama may or may not possess legal title.  Alabama's response does not identify any properties "beneath navigable waters" or

---

[6]    For sake of brevity, Defendants also reserve their right to compel additional discovery to Interrogatory Nos. 22 and 23, Requests for Admission Nos. 7, 18–25, and 13–15 (Ex. 20, 09/03/2014 Def's RFAs) to Alabama, as well as Interrogatory Nos. 1, 2, 4, 6, 7, 10, and 12 to the extent Alabama based its objections upon an improper invocation of Rule 33(d).

any "tidally-influenced coastal lands" for which it claims damages.  It also fails to identify any property damage or explain how it has been or will be damaged.  Accordingly, Defendants do not know which properties allegedly were or will be damaged or what alleged damages are claimed.  Interrogatory 7 does not seek the amount of Alabama's alleged damages, or the method used to calculate the alleged damages for the properties, but only an identification of the properties at issue and how such properties were allegedly damaged (e.g. Repair Costs; Property was sold at a loss, etc.).  Defendants are entitled to know the specific properties Alabama claims were damaged, and the nature of those alleged damages.  Alabama has agreed to supplement its response to identify the properties it has a proprietary interest in and for which it is claiming damages from.  Alabama has also agreed to consider categorizing the types of damages for the identified properties.  Defendants reserve their right to compel in the future should Alabama's supplemental response prove insufficient.

**B.      Interrogatories 1, 2, 10, 12: State Response And Recovery Costs.**

In its Rule 26 initial disclosures and amendments, Alabama identifies "State Response and Recovery Costs" (incurred by the Alabama Department of Environmental Management "ADEM", the Alabama Department of Labor, and the Alabama Department of Economic and Community Affairs "ADECA") as a category of damages that may "total, and perhaps exceed, $14 million." (*E.g.,* Ex. 14 at 16).  Defendants asked Alabama to provide additional detail regarding these and other costs in Interrogatories 1, 2, 10, and 12.  In response, Alabama, provided insufficient answers, containing almost no information about when and how these costs were incurred, and how these costs were related to the oil spill.  While there is simply no legitimate basis for Alabama being unable to identify the response and recovery costs that it claims have been unreimbursed, Alabama waited until the day before the motion to compel

deadline to inform Defendants that it would supplement its interrogatory response to provide this information.

Alabama's refusal to provide this information is particularly problematic for Defendants because Alabama's own Interrogatory No. 13 asks why Defendants are entitled to an offset.  (Ex. 16, 07/14/2014 Alabama Requests at 7).   Defendant BPXP answered this interrogatory, describing sources of funding that it has provided to Alabama that may potentially be used to offset Alabama's response and recovery costs.  (Ex. 17, 08/11/2014 BPXP Resp. at 29-31). Without knowing what response and recovery costs that Alabama alleges were unreimbursed, Defendants are handicapped in being able to inform Alabama what grants and payments may constitute an offset when Alabama itself has not informed Defendants as to what response and recovery costs are unreimbursed. Defendants Interrogatories 1, 2, 10, and 12 at the very least are aimed at discovering this information.

Additionally, Interrogatory Nos. 1 and 2 asked Alabama about the "bases to support the damages computation" and "the data, formulas, analyses, and documents" for each category of damages, including response and recovery costs that Alabama incurred.  (Ex. 3 at 1-2).  Alabama has since agreed to supplement its response, but initially withheld information arguing that these interrogatories call for legal and expert conclusions.  (Ex. 4 at 2, 7).  Because *neither* the identification of response costs that have already been incurred for which Alabama is asserting claims *nor* the factual information relating to those unreimbursed costs for which it seeks reimbursement calls for "legal and expert conclusions," Alabama should identify the specific response and recovery costs that it is claiming, as well as specific information about those costs, such as how or for what the costs were incurred.  (*Id.* at 2).

Pending Alabama's supplementation, the additional information Alabama provides about

its response and recovery costs in Interrogatories 10 and 12 is currently insufficient.  For example, in response to Interrogatory No. 10, Alabama identifies the dollar value for "Contract / Grant Facilitation Costs" purportedly incurred by ADECA and certain "Fund Costs" purportedly incurred by the Department of Labor, but does not explain specifically what these costs comprise or when they were incurred.  (Ex. 4 at 20-22).  Similarly, Alabama identifies dollar values of certain ADECA, ADEM, and Labor personnel, salary, benefits, travel, overhead, and per diem costs purportedly incurred as part of the State's response and recovery efforts, but does not explain what jobs, tasks, or functions the State's personnel were doing to incur these costs, how these costs are attributable to the oil spill, or when they were incurred.  (*Id.*)  Also, in response to Interrogatory No. 12, Alabama identifies that the relevant departments incurred unreimbursed costs, but does not identify the unreimbursed amounts.  (*Id.* at 23-24).  In short, Alabama has not identified the response and recovery costs it is claiming with any level of particularity that would allow Defendants to identify whether specific payments that it has made to Alabama overlap with these asserted costs and may therefore offset Alabama's claims.  While Alabama agreed to supplement Interrogatories 1, 2, 10, and 12, Defendants reserve their right to compel future discovery should those responses be insufficient.[7]

### C.  Interrogatories And Requests Regarding Pre-Incident Oiling.

Defendants' Interrogatory No. 16 asks Alabama to describe all instances of oiling on Alabama's shoreline prior to April 20, 2010, and Interrogatory No. 18 asks Alabama to describe all instances of the closure of various public lands in Alabama due to oiling prior to and after

---

[7]  Because Defendants' Interrogatories 1 and 2 ask for information about each category of damages claimed in Alabama's Rule 26 disclosures and amendments (and not just response and recovery costs), Alabama must supplement its response regarding all categories of damages listed in its Rule 26 disclosures in its responses to Interrogatories 1 and 2.  For example Alabama does not provide any information regarding its physical property damage claim in response to Defendants' Interrogatory No. 1, and lists only vague categories of documents in its response to Interrogatory No. 2 without complying with Rule 33(d).

April 20, 2010.  (Ex. 18, 09/03/2014 Defendants' Interrogs. at 1-2).  Requests for Production Nos. 29 and 30 ask for documents regarding these topics.  (Ex. 11 at 2).

For each of these four requests, Alabama initially objected to providing information prior to April 20, 2010, (*i.e.* from January 1, 2000 to April 20, 2010) as irrelevant, overly broad, and supposedly inconsistent with the Court's orders.[8]  (Ex. 12).  Alabama clarified its position that it will "conduct a reasonable search for documents and information regarding public-land closures due to shoreline oiling going back to January 1, 2008."  (Ex. 19, 10/14/2014 C. Maze ltr. to P. Collier at 2).   Defendants' current understanding of Alabama's position, based on the October 16 meet-and-confer, is that Alabama will supplement its responses to provide relevant information and documents going back to 2000.

Because Alabama has made post-incident oiling a large part of this case, Defendants need information and documents regarding shoreline oiling and public land closures in Alabama for a comprehensive analysis of the oiling conditions in Alabama before the oil spill, and for an accurate comparison of pre-spill and post-spill conditions.  During the October 16 meet-and-confer, Alabama agreed to supplement its responses to provide information and documents going back to 2000, and Defendants reserve their right to compel in the future should Alabama's supplemental response prove insufficient.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Compel Discovery of Written Responses from the State of Alabama.

---

[8]   Additionally, Alabama's General Objection No. 4 objected to "any and all requests that impose time frames that are inconsistent with the Court's July 29 and July 31, 2014 orders, which set forth the time period to be applied to Defendants' corresponding search terms."  (Ex. 12 at 38)

Dated:  October 17, 2014

Respectfully submitted,

*/s/ Don K. Haycraft* _____

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Paul D. Collier
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
F. Chad Morriss
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Maureen F. Browne
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Joel M. Gross
Lawrence A. Schneider
Arnold & Porter, LLP
555 12th Street N.W.
Washington, DC 20004
Telephone: (202) 942-5705
Facsimile: (202) 942-5999

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #I6984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

*Attorneys for BP p.l.c., BP Exploration &*
*Production Inc., and BP America Production*
*Company*

*/s/ Kerry J. Miller*
Brad D. Brian
Michael R. Doyen
Grant Davis-Denny
Daniel B. Levin
MUNGER TOLLES & OLSON, LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100
Fax: (213) 683-5180
Email: brad.brian@mto.com
michael.doyen@mto.com
grant.davis-denny@mto.com
daniel.levin@mto.com

Steven L. Roberts
Rachel Giesber Clingman
Sean Jordan
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, TX 77002
Tel: (713) 4710-6100
Fax: (713) 354-1301
Email: steven.roberts@sutherland.com
rachel.clingman@sutherland.com
sean.jordan@sutherland.com

Kerry J. Miller
FRILOT, LLC
1100 Poydras Street, Suite 3800
New Orleans, LA 70163
Tel: (504) 599-8194
Fax: (504) 599-8154
Email: kmiller@frilot.com

*Attorneys for Defendants Transocean Offshore
Deepwater Drilling Inc., Transocean
Deepwater Inc., Transocean Holdings LLC,
and Triton Asset Leasing GmbH*

*/s/ Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
Don.Godwin@GodwinLewis.com

Bruce W. Bowman, Jr.
State Bar No. 02752000
Bruce.Bowman@GodwinLewis.com
Jenny L. Martinez
State Bar No. 24013109
Jenny.Martinez@GodwinLewis.com
Gavin E. Hill
State Bar No. 00796756
Gavin.Hill@GodwinLewis.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332
and
R. Alan York
State Bar No. 22167500
Alan.York@GodwinLewis.com
Misty Hataway-Coné
State Bar No. 24032277
Misty.Cone@GodwinLewis.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

*Attorneys for Defendant Halliburton Energy
Services, Inc.*
*/s/ Ky E. Kirby_____*
Ky E. Kirby
ky.kirby@bingham.com
David M. Halverson
david.halverson@bingham.com
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

*Attorneys for Anadarko Petroleum Company
and Anadarko E&P Company LP*

*/s/ Edward Flanders*
Edward Flanders
edward.flanders@pillsburylaw.com
Stella Pulman

stella.pulman@pillsburylaw.com
1540 Broadway
New York, NY 10036
PILLSBURY WINTHROP SHAW PITTMAN
LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500

*Attorneys for MOEX USA Corporation, MOEX
Offshore 2007 LLC, and MOEX USA
Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Defendants' Memorandum in Support of Its Motion to Compel Discovery of Written Responses from the State of Alabama has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of October, 2014.

/s/ Don K. Haycraft
Don K. Haycraft