# Exhibit 1

**From:** Collier, Paul D.
**Sent:** Tuesday, October 14, 2014 5:15 PM
**To:** 'Sally_Shushan@laed.uscourts.gov'; 'Mike_OKeefe@laed.uscourts.gov'; 'Marie_Firmin@laed.uscourts.gov'
**Cc:** Brock, Mike; Morriss, Chad; Langan, Andrew; *mbrowne@cov.com; Ky Kirby (APC); 'Halverson, David M.'; 'Thomas R. Lotterman'; Doug Hastings; *edward.flanders@pillsburylaw.com; Stella Pulman [MOEX]; Donald Godwin [HESI]; Jenny Martinez [HESI]; Bruce Bowman, Jr. (HESI); Alan York [HESI]; Kerry Miller [T/O]; Paul Thibodeaux [T/O]; Tamerlin Godley [T/O]; Grant Davis-Denney (T/O); Carter Williams [T/O]; *CMaze@ago.state.al.us; Sinclair, Win; Parker Miller; 'Rhon Jones'
**Subject:** Alabama OPA damages case: Defendants' submission regarding document production deficiencies


Your Honor:

In accordance with the Court's request during the October 10 conference, I submit a memorandum on behalf of BP Exploration & Production Inc. that details the concerns that the State of Alabama's document production has raised to date.

Respectfully submitted,

Paul Collier

**Paul D. Collier**  | Kirkland & Ellis LLP
300 North LaSalle Street | Chicago, IL | 60654
Direct: 312.862.2471  |  Fax: 312.862.2200
Email: paul.collier@kirkland.com | Web: www.kirkland.com

Pursuant to the Court's request, BPXP submits the following memorandum to provide insight regarding shortcomings of Alabama's production identified to date and why those shortcomings are prejudicing BPXP's ability to prepare its defense.  Although Alabama is the plaintiff and volunteered as the OPA test case, Alabama is seemingly unprepared to meet its discovery obligations, resulting in a lack of compliance with the parties' agreements and the Court's discovery orders.

As an initial matter, Alabama recently informed BPXP that it will not use the search term protocol that the parties negotiated, and endorsed through Court order, for the production of custodial files.  Alabama offers no reasonable explanation as to why it cannot use the search term protocol, but instead offers to conduct some poorly-defined "reasonable search" using the search terms as a "guide."  With this substitution, BPXP,  however, loses the objective application of electronic search terms, a protocol that MDL2179 litigants have used successfully in all litigation phases.  Additionally, Alabama's document production, the overwhelming majority of which available to BPXP only yesterday, has been rife with technical problems that violate PTO 16, prejudicing BPXP's ability to conduct a meaningful review.

With these discovery problems only coming to light now, days before the parties are to identify witnesses and shortly before fact depositions commence, BPXP's case preparation has been unduly prejudiced.  As a result, BPXP respectfully requests the Court (1) order Alabama to cure these document production issues immediately, including investing the necessary resources to run the search term protocol as agreed; and (2) extend all litigation deadlines by 6 weeks.

I.      **Alabama's Decision Not to Run Search Terms Violates the Court's Order and Unduly Prejudices BPXP.**

During extensive e-discovery negotiations, Alabama repeatedly endorsed the use of search terms.  In a July 15 email, Alabama wrote to "confirm [its] understanding" that "'Search

terms'/ 'Search strings' would be applied to the custodial files" and that "Alabama generally agrees to moving forward" with this understanding.  (Ex. A)  Alabama likewise informed the Court that it endorsed using search terms, submitting a proposed schedule that included deadlines for negotiating search terms (Ex. B), and representing that"[t]he search terms being proposed *will serve as the standard to be applied to the custodial files*."  (Ex. C, at 1)  Subsequently, the Court ordered Alabama to run the negotiated search terms.  (Doc. 13210, at 1)

More than two months later, and after BP had substantially completed its custodial file production using the search term protocol, Alabama's counsel informed BPXP that it was "impossible for the State to conduct the type of electronic search that might be possible for a Fortune 100 company."  (Ex. D, at 1)  Alabama further indicated that it would use an alternative "reasonable search protocol . . . on the files of witnesses noticed for deposition" (*id.* at 2), but neither indicated how this alternate protocol would be employed and why it was an acceptable substitute, nor indicated with any clarity why Alabama could not comply with the Court's order. Alabama's alternative proposal is vague and presents the risk of subjective abuses, leaving BPXP without the full scope of discovery it is entitled under the Court's order.

A.      **Alabama Has Offered No Legitimate Basis For Not Using Search Terms.**

Alabama now apparently wants to wriggle out of its obligations by contending that it does not have the capabilities of a Fortune 100 company to run search terms against its custodial files.  But BPXP does not have that capability either, and hired an e-discovery vendor, just like the other MDL2179 litigants, to prepare its electronic files in a manner such that search terms could be applied.  Alabama's current position is especially hard to reconcile given that Alabama recognized as early as January 2014 that it would need an e-discovery vendor to do this work. Several months before Alabama agreed to use the search term protocol, Alabama issued an RFP titled "eDiscovery Solutions" that explicitly sought an e-discovery vendor who would have the

ability to run the search term protocol that Alabama now claims it cannot do.  (*See* Ex. E, *available at* http://www.ago.state.al.us/File-RFP-eDiscovery-Solutions-027-201401)   Alabama recognized in January 2014—and surely much earlier—the need for an e-discovery vendor, and its apparent decision not to hire a vendor to manage the search term protocol that it agreed to use is inexcusable, especially in light of Alabama's insistence on proceeding as the OPA test case.

Alabama's purported inability to run search terms is further without excuse given the litigation history and Alabama's involvement in it.  Search terms were employed in every prior phase, including Phases 1 and 2 in which Alabama participated.  (*See, e.g.*, PTO 16 at ¶ 13 (Rec. Doc. 686); Ex. F (proposing Alabama search terms to assist with BP's document requests))  Alabama has had nearly four years to position itself to meet the discovery obligations this case demands, and it is improper to raise these concerns now.

### B.    BPXP Is Unduly Prejudiced By Alabama's Decision Not to Run Search Terms.

Alabama has unduly prejudiced BPXP by not only refusing to use a protocol that has been successfully used throughout this litigation and eliminates a subjective element to the custodial file production, but by raising this issue at this stage of discovery.  Rule 26(f) requires that parties agree up front on e-discovery parameters to ensure efficiency and avoid surprise,[1] and if Alabama had uncertainty regarding its ability to use search terms, it should have investigated and raised this issue long before entering e-discovery negotiations.   Instead, Alabama delayed, allowing several months to pass and watching BPXP incur its own e-discovery costs in applying the negotiated search term protocol.  It is simply unfair if the agreed protocol were now changed for Alabama's unilateral benefit.

---

[1] Although Alabama's July 25 brief noted that "technical challenges *may* arise with running search terms against *specific custodial files* that *may* necessitate a case-by-case refinement" there was no indication that such "technical challenges" would result in an inability to meet its obligation entirely.  (Ex. C, at 1 (emphasis added))

## II.    Alabama's Production Is Technically Deficient and Unduly Prejudices BPXP.

Many technical issues plague Alabama's production and have prevented BPXP from conducting a meaningful review.   BPXP awaits a response on many issues, but new issues continue to arise as BPXP processes and reviews Alabama's production:

*First*, Alabama produced its production Volume 5 on October 2 without a proper load file.  Volume 5 contains over 770,000 pages, more than 75% of Alabama's total production to date.  (Ex. G)  Although BPXP immediately raised the issue and Alabama ultimately replaced the load file, this error left BPXP unable to review Volume 5 until just yesterday——eleven days after it was first transmitted and shortly before fact depositions commence.

*Second,* approximately 33% of Alabama's files lack the custodian metadata field required by PTO 16.  And based on BPXP's preliminary assessment, none of the files that do contain custodian metadata identify an individual as the custodian.  This is further troubling because Alabama has represented that witness files are included in its production.  As such, BPXP is left without a reliable means to identify which documents belong to which witness, and loses a way to assess what information an individual may possess.

*Third*, Alabama's email production has significant issues: (1) virtually all of its emails—over 77,000—lack email metadata fields (such as TO, FROM, and SUBJECT) as required under PTO 16; and (2)  more than 1,500 email files do not include the actual email text.  (*See, e.g.*, Ex. H, AL-ED-000816327)  BPXP believes these 1,500 emails may require decryption by Alabama.

*Fourth*, BPXP's vendor has identified over 5,000 files in Alabama's production that should contain text, but are not text-searchable as required by PTO 16.

*Fifth*, Alabama's productions do not adequately maintain family relationships.  Over 9,000 documents appear to be emails with attachments, but lack family metadata identifying which production documents, if any, constitute those attachments.  Also, BPXP believes the

4

family range field may be unreliable because it is provided for 90% of the documents, including for native file types and photographs that are unlikely to be part of a family.  Thousands of other documents contain metadata indicating the existence, but not the identity, of family members.

All of these issues have unduly prejudiced BPXP's ability to comply with the upcoming discovery deadlines.  As an initial matter, the delays in obtaining the majority of Alabama's documents due to the load file issue has impacted BPXP's ability to identify the Alabama witnesses it wants to depose, which the parties must schedule by October 22.  This prejudice is further compounded by Alabama's failure to provide the requisite metadata for a substantial portion of its production, especially with respect to email.  Metadata, and its proper utilization, is a critical component for an efficient and effective review of a parties' production, and is essential for understanding what a witness may know and for preparing to subsequently depose such witness.  The Court has repeatedly recognized this importance.  (Rec. Doc. 3921, at 2 (ordering production of metadata in accordance with PTO 16, "even if it is onerous"))  By not complying with PTO 16 for many of its documents, Alabama has hindered BPXP's ability to develop its case.

## III.    Conclusion

BPXP does not doubt that Alabama has devoted substantial effort to its document production, which is appropriate in a case of this magnitude.  But Alabama must also meet its production obligations.  Because it has not, and those issues continue, BPXP respectfully requests that the Court order (1) Alabama to cure the document production issues immediately, including using the search term protocol for custodial file productions; and (2) an extension of the litigation schedule by 6 weeks.

Dated:  October 14, 2014                        Respectfully submitted,


                                                */s/* Paul D. Collier
                                                Richard C. Godfrey, P.C.
                                                J. Andrew Langan, P.C.
                                                Paul D. Collier
                                                Kirkland & Ellis LLP
                                                300 North LaSalle Street
                                                Chicago, IL 60654
                                                Telephone: (312) 862-2000

                                                Robert C. "Mike" Brock
                                                F. Chad Morriss
                                                Kirkland & Ellis LLP
                                                655 Fifteenth Street, N.W.
                                                Washington, D.C.  20005-5793
                                                Telephone:  (202) 879-5000

                                                Maureen F. Browne
                                                Covington & Burling LLP
                                                1201 Pennsylvania Avenue, NW
                                                Washington, DC 20004-2401
                                                Telephone: (202) 662-5985

                                                Joel M. Gross
                                                Lawrence A. Schneider
                                                Arnold & Porter, LLP
                                                555 12th Street N.W.
                                                Washington, DC 20004
                                                Telephone: (202) 942-5705

                                                Don K. Haycraft (Bar #14361)
                                                R. Keith Jarrett (Bar #I6984)
                                                Liskow & Lewis
                                                701 Poydras Street, Suite 5000
                                                New Orleans, Louisiana 70139-5099
                                                Telephone: (504) 581-7979

                                                *Attorneys for BP Exploration &*
                                                *Production Inc.*

# Exhibit A

| | |
|---|---|
| **From:** | *CMaze@ago.state.al.us |
| **Sent:** | Tuesday, July 15, 2014 5:08 PM |
| **To:** | Collier, Paul D. |
| **Cc:** | Parker Miller; Stahl, Catherine E.; *Cmorriss@cov.com; Sinclair, Win |
| **Subject:** | RE: Tuesday Morning / Search terms |

Paul,

I wanted to confirm our understanding of what we discussed earlier:

1. "Search terms" / "Search strings" would be applied to the custodial files of (a) the witnesses identified in Rule 26(a) disclosures and (b) the witnesses sought by the other party.

2. Generally, search terms would *not* be applied to (a) 30(b)(6) witness that fall outside the categories mentioned above and (b) other agencies/entites that fall outside those categories.  Instead, the producing party must conduct a "reasonable search."

3. There might be instances where search terms need to be applied to a witness/agency that would otherwise fall under #2, and the parties can discuss those instances on a case-by-case basis.

If you can confirm that my recitation is correct, then without either side waiving any rights/arguments, Alabama generally agrees to moving forward with the same understanding and thus does not need another call tomorrow morning.

We will work on 30(b)(6) topics and corresponding search terms and email tomorrow regarding our progress / swapping of terms and topics.

Thanks,

**<u>Corey L. Maze</u>**
*Special Deputy AG, State of Alabama*
*(334) 850-2885*

**From:** Collier, Paul D. [mailto:pcollier@kirkland.com]
**Sent:** Tuesday, July 15, 2014 11:18 AM
**To:** Maze, Corey
**Cc:** Parker Miller; Stahl, Catherine E.
**Subject:** RE: Tuesday Morning / Search terms

Corey -- 3pm CT will work for a call.  Chad may join also, so we can use my dial-in:  (866) 331-1856; 22387122#

Thanks,

Paul

**From:** Maze, Corey [mailto:CMaze@ago.state.al.us]
**Sent:** Tuesday, July 15, 2014 9:59 AM
**To:** Collier, Paul D.

**Cc:** Parker Miller; Stahl, Catherine E.
**Subject:** Re: Tuesday Morning / Search terms

Thanks Paul.  Safe travels.

Sent from my iPad

On Jul 15, 2014, at 9:57 AM, "Collier, Paul D." <pcollier@kirkland.com> wrote:

> Thanks, Corey. That seems like a good idea. I'm hopefully boarding a flight here shortly to San Francisco, so let me get back to you with a time momentarily.  I've copied Cate Stahl on the email, who will join the call also once we set a time.
>
> Paul
>
> On Jul 15, 2014, at 9:10 AM, "Maze, Corey" <CMaze@ago.state.al.us> wrote:
>
>> Paul,
>>
>> Do you have a few minutes to talk to Parker and I about search terms?  We think it would be helpful if we had an understanding of each other's ideas and expectations before we start the meet and confer process.
>>
>> Either 10:00am, 2:00pm, or 3:00pm central works for us.  And if there is a particular person assigned with this task for the Defendants, please invite him/her.
>>
>> Thanks,
>>
>> **Corey L. Maze**
>> *Special Deputy AG, State of Alabama*
>> *(334) 850-2885*

*********************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*********************************************************


*********************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*********************************************************

# Exhibit B

**From:** Maze, Corey <CMaze@ago.state.al.us>
**Sent:** Monday, July 7, 2014 3:07 PM
**To:** 'Sally_Shushan@laed.uscourts.gov'; mike_o'keefe@laed.uscourts.gov
**Cc:** Langan, Andrew; Collier, Paul D.; Donald Godwin [HESI]; Tamerlin Godley [T/O]; Grant Davis-Denney (T/O); Ky Kirby (APC); *edward.flanders@pillsburylaw.com
**Subject:** AL Damages Case: AL Proposed Order and 3-page submission

Judge Shushan:

Attached are Alabama's proposed order (in word format) and 3-page submission in support.

For ease of reading, Alabama's draft reflects our proposal (as opposed to a full red-line), with (a) highlighting and comments reflecting the additions/changes and (b) a side-by-side comparison of the Court's, Alabama's, and the D's schedule.

If the Court requires anything else (or anything in a different format), we will promptly get it to you.

**Note: We are having issues with the D email distribution list, thus our 5-minute delay and failure to include everyone in the cc line.  Once it is corrected, I will re-send to everyone**

Respectfully,

**Corey L. Maze**
*Special Deputy AG, State of Alabama*
*(334) 850-2885*

Alabama's Proposal 07-07-2014

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In re: Oil Spill by the Oil Rig              MDL NO. 2179
    "Deepwater Horizon" in the Gulf
    of Mexico, on April 20, 2010              SECTION J

Applies to: 10-4182, 10-4183, 13-2645,        JUDGE BARBIER
       13-2646, 13-2647, 13-2813              MAGISTRATE JUDGE SHUSHAN

<u>ORDER</u>

**[Regarding Alabama Damages Case]**

The State of Alabama ("Alabama") and BP, Transocean, and Halliburton (jointly the "Defendants") having negotiated the schedule for preparation of this case for trial, the Court orders the following:

**Claims**

The following claims are at issue in this phase of Alabama's case:

    1. **OPA: Response and recovery costs for the following State departments:**

        a. Alabama Department of Labor

        b. Alabama Department of Environmental Management

        c. Alabama Department of Economic and Community Affairs

    2. **OPA: Damages to state-owned real or personal property (not NRD), including the resulting increased costs to the following State departments:**

        a. Alabama Department of Environmental Management

    3. **OPA: Loss of taxes to the State of Alabama**

    4. **OPA: Loss of revenues for the following State departments:**

        a. Alabama Alcoholic Beverage Control Board

**Comment [cm1]:** Alabama removed Anadarko from the Court's draft because BP represents 100% of Anadarko and MOEX's financial interests in the claims at issue; thus neither needs to be involved in this case. If APC and MOEX can articulate why BP does not adequately represent their interest *vis-à-vis* Alabama's compensatory damage claims, Alabama will not oppose their inclusion.

**Comment [cm2]:** As detailed in our supporting brief at 3, Alabama proposes a "Claims" section be added to ensure clarity for the parties and to assist the Court in focusing/limiting discovery.

    **b.**  Alabama Department of Conservation and Natural Resources

**5. OPA: Costs of Providing Increased or Additional Public Services, limited to Financial Impact on the State Education Trust Fund, Education Programs, and General Fund**

**6. General Maritime Law: Economic Losses Resulting from Damage to the State's Proprietary Interests**

Alabama's remaining claims for natural resource damages ("NRD") under OPA and punitive damages under general maritime law will be the subject of future phases governed by subsequent orders of this Court.

> **Comment [cm3]:** Alabama's proposed trial structure—a jury trial for OPA and GML compensatory damages in Phase 1; a bench trial for punitive damages in Phase 2; and NRD in a later (post-Assessment) phase—is consistent with Option (B) in Alabama's jury trial brief. *See* Doc. 12466 at 32.

    The Defendants' rights to raise defenses to the above-listed claims in subsequent motions is preserved, as are the parties' rights as to all claims not being litigated in this phase of Alabama's case, including but not limited to any Defendant's claim for contribution from any other Defendant based on its liability to Alabama.

**<u>Stipulation</u>**

    The following Alabama State departments and agencies are subject to any discovery request propounded to the State of Alabama[1]:

> **Comment [cm4]:** Consistent with our previous email correspondence with the Court, Alabama voluntarily proposed the highlighted footnote limiting/waiving pleaded claims in exchange for a limitation on the scope of discovery to the departments and agencies listed in this section. Alabama reserves the right to pursue its claims for additional departments should discovery not be so limited. The "sustainable on the date of this order" language protects claims that might arise should re-oiling occur after trial. The "bodies outside the control of the State" language protects the separate lawsuits filed by Alabama cities, counties, schools, boards, commissions, instrumentalities, etc. that operate outside the State's litigation control.

1) Alabama Legislative Fiscal Office;

2) Alcoholic Beverage Control Board, limited to the following:

    a.  Accounting Division
    b.  Auditing Division

---

[1] As a condition of limiting discovery to the departments and agencies listed herein, Alabama waives all claims sustainable on the date of this order for any state department or agency not listed within this stipulation. This waiver does not apply to governmental bodies outside the control of the State of Alabama.

3) Department of Conservation and Natural Resources, limited to the following:

    a.  State Parks Division—Gulf State Park
    b.  Marine Resources Division—Licensing
    c.  State Lands Division;

4)  Department of Economic and Community Affairs, limited to the following:

    a.  Workforce Development Division

5) Department of Education;

6) Department of Environmental Management, limited to the following:

    a.  Field Operations Division;

7) Department of Finance, limited to the following:

    a.  Finance Director's Office,
    b.  Control and Accounts Division (State Comptroller's Office),
    c.  Executive Budget Office;

8) Department of Labor, limited to the following:

    a.  Unemployment Compensation Division,
    b.  Labor Market Information;

9) Department of Revenue, limited to the following:

    a.  Property Tax Division
    b.  Individual and Corporate Tax Division,
    c.  Tax Policy and Research Division,
    d.  Motor Vehicle Division,
    e.  Sales and Use Tax Division,
    f.  Business and License Tax Division,
    g.  Discovery Unit Division;

10) Department of Transportation, limited to the following:

    a.  Transportation Planning Division
    b.  Modal Programs Division

11) Department of Tourism

12) Office of the Governor.

**Comment [cm5]:** Alabama agreed to add the four highlighted departments (LFO, Transportation, Tourism, and the Governor) to the Court's proposed list of eight.

The Defendants may obtain discovery from additional state departments and agencies only upon a showing of good cause. The Defendants may likewise obtain the custodial file and/or take the deposition of a third party or other person or entity not specified above upon a showing of good cause.

> **Comment [cm6]:** Alabama moved the Court's "good cause" footnote into the body. Alabama is willing to confer with the Defendants on third parties and custodians for unlisted departments and agencies before seeking the Court's guidance—but where disagreements arise, the new highlighted sentence sets the same "good cause" standard for adding additional departments, agencies, third parties, and others.

### Scheduling

| Court's Draft | Alabama | Defendants' Last Proposal | Event |
|---|---|---|---|
| 07/30/14 | 07/09/14<br><br>(or ASAP after entry of this order) | 07/09/14 | Written Discovery Served – Limit 60 RFPs and Interrogatories per side (i.e. Alabama and Defendants) with distribution between RFPs and Interrogatories at each side's discretion; Limit on RFAs 25 per side[2] |
| 07/09/14 | 07/16/14 | 07/16/14 | The parties are to exchange proposed search terms and 30(b)(6) topics. Thereafter the parties are to meet and confer and agree on a final list of search terms and 30(b)(6) topics |
| 07/18/14 | 07/23/14 | 07/23/14 | The parties are to advise Judge Shushan that the lists of search terms and of 30(b)(6) topics have been finalized[3] |

> **Comment [cm7]:** Alabama believes discovery should commence on the soonest date possible after entry of the Court's order, with search term and 30(b)(6) conferences beginning one week later.

> **Comment [cm8]:** The parties agree on the new, highlighted Fn2 re: follow-up discovery. The 30-day rule in the second sentence is intended to ensure that follow-up discovery does not interfere with the Parties' ability to meet the document production deadline.

> **Comment [cm9]:** As detailed in our submission at 2, Alabama consented to the Defendants' proposal for service of discovery *before* search terms are finalized, but strongly believes a process for finalizing search terms ASAP after service is critical, hence our proposal of the new, highlighted Fn3.

---

[2] The parties may serve follow-up discovery requests subject to the discovery limits of this Order. All discovery requests, including follow-up requests, must be served at least 30 days prior to the due date for document production.

[3] The failure of the parties to finalize search terms and/or 30(b)(6) topics is highly disfavored. If the parties fail to agree on any terms or topics by July 23, the parties shall submit a list of the unresolved terms and/or topics to the Court on that date. On the same date, each side may submit one 15-page, double-spaced brief outlining its position on the unresolved terms and/or topics. No replies will be allowed.

| Court's Draft | Alabama | Defendants' Last Proposal | Event |
|---|---|---|---|
| 07/30/14 | 04/30/15 | 04/30/15 | The parties are to make good faith disclosure of evidence (other than stipulations) from Phase One or Phase Two proceedings that they believe is relevant and wish to include in the record this case. The Court will apply a good cause requirement for any supplementation after this date. |
| 08/15/14 | 05/15/15 | 05/15/15 | Objections to Phase One or Phase Two disclosures from 07/30/14 |
| 09/12/14 | 08/04/14 | **08/11/14** | Written discovery responses due |
| 09/19/14 | 09/19/14 | **10/03/14** | Document production complete |
| 10/01/14 | 09/29/14 | 9/29/14 | The parties are to confer on the number of fact, 30(b)(6) and expert witnesses to be deposed. As to fact and 30(b)(6) witnesses, the parties must recognize that the number of deposition bundles to be submitted for trial will be strictly limited. |
| 10/01/14 | 10/08/14 | **10/15/14** | The parties are to propose to Judge Shushan a joint final fact and 30(b)(6) deposition schedule |
| 10/01/14 | 10/03/14 | 10/03/14 | The parties are to propose to Judge Shushan the number of expert witnesses per side to be deposed. Each party may submit a preliminary list of its expert witnesses *in camera*, with a brief description of each expert witness' expected testimony and to which claim(s) the testimony relates. |
| 10/06/14 | 10/06/14 | **10/17/14** | Motions to compel discovery of written responses. No replies will be filed.[4] |
| 10/15/14 | 10/15/14 | 10/15/14 | Court announces limits on number of experts per side to be deposed |

Comment [cm10]: Alabama believes this event may be unnecessary. That said, Alabama is willing to move this date up considerably should that assist in moving the trial date forward.

Comment [cm11]: The new, highlighted *in camera* submission event language was added so that the Court could have an understanding of what the parties' cases/defenses required before it imposed limits on the number of expert depos on 10/15.

---

[4]    Memoranda in support and oppositions shall be limited to 15 pages per party covering all disputes. All submissions to the Court shall be double spaced and filed and served no later than 5:00 p.m. central time.

| Court's Draft | Alabama | Defendants' Last Proposal | Event |
|---|---|---|---|
| 10/16/14 | 10/16/14 | **10/27/14** | Oppositions to motions to compel discovery |
| 11/03/14 | 10/20/14 | **11/03/15** | Fact and 30(b)(6) depositions commence (Limited to 6 hours, unless good cause shown.) |
| 12/31/14 | 12/18/14 | **01/23/15 (or later)** | End of fact and 30(b)(6) deposition period |
| 01/02/15 | 01/12/15 | **01/27/15** | The parties shall submit the schedule for bundling of depositions to Judge Shushan |
| 01/15/15 | 01/15/15 | **01/30/15** | Each party shall submit an *in camera* list of the fact and 30(b)(6) depositions to be submitted for trial for Judge Shushan's review before imposing limitations on the number of deposition bundles to be prepared and submitted for trial.  Each submission should include a brief summary of each witness' testimony. |
| 01/15/15 | 01/15/15 | **02/06/15** | Alabama expert reports are due; does not include fact witnesses who may offer limited opinions as "lay experts" |
| 01/22/15 | 01/22/15 | **02/06/15** | The Court announces the number of deposition bundles per party that may be prepared for submission |
| 01/23/15 | 02/04/15 | **02/13/15** | The parties are to exchange all non-deposition exhibits stamped with a trial exhibit number and a page number on each page |
| 02/16/15 | 02/16/15 | **03/06/15** | Defendants expert reports are due; does not include fact witnesses who may offer limited opinions as "lay experts" |
| 03/09/15 | 03/16/15 | **03/27/15** | Alabama rebuttal expert reports to the 02/16/14 Defendants reports.  Rebuttal experts shall be counted in the per side total experts; rebuttal reports shall not include any new affirmative opinions and instead be limited only to opinions responsive to the reports filed on 02/16/14 |
| 03/23/15 | 03/23/15 | **04/03/15** | Start of expert deposition period. (Limited to 6 hours, unless good cause shown.) |

**Comment [cm12]:** While not reflected in Alabama's draft, we agree with the Defendants' proposal that the parties agree that custodial files for any witness to be deposed will be produced no later than 10 days prior to their deposition.

**Comment [cm13]:** As detailed in our supporting brief at 2-3, Alabama believes that fact discovery can and should end on 12-18-14 because (a) that gives the Court more flexibility re: the trial date, (b) it avoids the problems associated with setting depositions during year-end holidays and leave periods, and (c) it avoids Alabama's legislative session activities, which begin in January 2015.

**Comment [cm14]:** Alabama's end of fact discovery schedule allows for expert discovery to begin on the Court's proposed date -and- gives both parties approximately one month to prepare each round of expert reports

**Comment [cm15]:** As explained in our submission at 3, Alabama requests 28 days for rebuttal reports

| Court's Draft | Alabama | Defendants' Last Proposal | Event |
|---|---|---|---|
| 04/30/15 | 04/30/15 | 05/08/15 | End of expert deposition period |
| | 05/01/15 | 05/11/15 | Motion for Suggestion of Remand[5] |
| 05/04/15 | 05/06/15 | 05/15/15 | The parties are to exchange good faith exhibit lists including exhibits used by their experts stamped with a trial exhibit number and a page number on each page |
| 05/11/15 | 05/11/15 | 05/15/15 | The parties are to propose to Judge Shushan limits on the number of expert witnesses per party to be called at trial. |
| 05/05/15 | 05/12/15 | 05/18/15 | Motions for Summary Judgment (limit of 35 pages) |
| | 05/22/15 | 06/01/15 | Opposition to Motion for Suggestion of Remand due (if any) |
| 05/15/15 | 05/15/15 | 05/26/15 | Redact and de-confidentialize listed exhibits that have been marked confidential based on the presence of personal identifying information; parties asserting claims that listed exhibits contain "coke formula" confidential information should make such designations[6] |
| 05/18/15-05/22/15 | 05/18/15-05/22/15 | 05/27/15-06/02/15 | Meet and confer regarding objections to good faith exhibit lists.  Meet and confer regarding redaction and de-confidentialization of exhibits and claims of "coke formula" designation |
| 05/18/15 | 05/18/15 | 05/22/15 | Court announces limits on number of trial experts per party |
| | 06/03/15 | 06/11/15 | Reply to Opposition to Motion for Suggestion of Remand due (if any) |

Comment [cm16]: Alabama proposes the initial motion for remand be filed the day after the close of expert discovery.  That said, Alabama will be prepared to file its motion any time the Court orders, including weeks earlier if an earlier motion assists in moving the trial date forward.  All remand-related events and Fn5 are newly-added and highlighted.

---

[5]  Alabama's Motion for Suggestion of Remand and the Defendants' Opposition (if any) shall be limited to 15 pages each, double spaced.  Alabama's Reply (if any) shall be limited to 5 pages.

[6]  Each party is responsible for redacting and de-confidentializing any exhibit that it produced in discovery, regardless of which party has listed that document on an exhibit list.

7

| Court's Draft | Alabama | Defendants' Last Proposal | Event |
|---|---|---|---|
| 05/25/15<br><br>(Memorial Day) | 05/26/15 | **05/29/15** | Alabama designates the expert witnesses it intends to call at trial |
| 06/01/15 | 06/03/15 | **06/10/15** | Motions by parties objecting to exhibits[7] |
| 06/01/15 | 06/01/15 | **06/05/15** | Defendants designate the expert witnesses they intend to call at trial |
| 06/05/15 | 06/12/15 | **06/18/15** | Oppositions to Motions for Summary Judgment (limit of 35 pages) |
| 06/12/15 | 06/12/15 | **06/20/15** | Oppositions to objections to exhibits |
| 06/22/15 | 06/22/15 | 06/22/15 | The parties are to submit electronic deposition bundles to Judge Barbier. Each side may submit a 3 page double spaced objective deposition summary |
| 06/17/15 | 06/24/15 | **06/30/15** | Replies in support of Motions for Summary Judgment (limit of 15 pages) |
| 07/10/15 | 07/10/15 | 07/10/15 | Motions in limine (limited to 3 pages) and *Daubert* motions filed (limited to 15 pages); draft verdict forms filed |
| 07/24/15 | 07/24/15 | 07/24/15 | Oppositions to motions in limine (limited to 3 pages) and *Daubert* motions (limited to 15 pages) due; responses to draft verdict forms due |
| 08/03/15 | 08/03/15 | 08/03/15 | Joint stipulations, expert reports (which will serve as direct examination at trial),[8] joint exhibit and witness lists, and the final pretrial order[9] |
| 08/03/15 | 08/03/15 | 08/03/15 | Replies to motions in limine (limited to 1 page) and *Daubert* motions (limited to 5 pages) |

---

[7]    All motions are limited to 10 pages collectively for all objections per party and all oppositions limited to 10 pages.  No replies will be filed.

[8]    Redacted reports delivered to Judge Barbier and Ben Allums (2 binders and an electronic set).

[9]    The parties shall meet and confer in order to confect joint pretrial stipulations and exchange final witness and exhibit lists.

| Court's Draft | Alabama | Defendants' Last Proposal | Event |
|---|---|---|---|
| 08/24/15 | 08/24/15 | 08/24/15 | Conference with the Court and parties to discuss trial and pending motions |
| – – – | | | Pre-Trial Conference |
| – – – | | | Ready for trial as directed by Judge Barbier |

The Court may alter or eliminate events and/or modify event dates based on future rulings in this trial, including a ruling on the Defendants' Motion to Strike Alabama's Jury Trial Demand, or based upon scheduling changes in the Clean Water Act penalty trial or the OPA test trials for moratorium claims. The parties may request alteration of the schedule upon a showing of good cause.

Comment [cm17]: Alabama believes that certain events such as deposition bundling are unnecessary because compensatory damages must be tried to a jury. That said, we have proposed dates for each event in the Court's draft in the event we lose the jury trial issue.

Comment [cm18]: Alabama proposed this new, highlighted language to articulate the Court's ability to re-work the schedule to accommodate an earlier or later trial date, and the parties' ability to requests changes only upon a showing of good cause.

New Orleans, Louisiana this _____ day of July, 2014.

_____
**CARL J. BARBIER**
**United States District Judge**

9

# Exhibit C

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

---

In re:  Oil Spill by the Oil Rig
    "Deepwater Horizon" in the Gulf
    of Mexico, on April 20, 2010

This Pleading Relates To
- **10-4182** (*Alabama v. BP*)
- **10-4183** (*Alabama v. Transocean, et. al*)
- **13-2645** (*Alabama v. Anadarko & MOEX*)
- **13-2646** (*Alabama v. Transocean*)
- **13-2647** (*Alabama v. Halliburton*)
- **13-2813** (*Alabama v. BP*)

**MDL No. 2179**
**SECTION: J**

**JUDGE BARBIER**
**MAGISTRATE SHUSHAN**

---

**THE STATE OF ALABAMA'S BRIEF**
**REGARDING UNRESOLVED 30(B)(6) TOPICS AND SEARCH TERMS**

The State of Alabama outlines and supports its positions on the disputed search terms and 30(b)(6) topics herein. But first, we set forth two understandings that we believe the Parties share:

1. *30(b)(6) Topics*:  The objections being lodged and argued today are ones that would (a) limit the parties' abilities to identify and produce a witness for that topic or (b) demonstrate the inappropriateness of the topic altogether.  The parties have reserved the right to assert additional objections to the topics at a subsequent time.

2. *Search Terms*:  The search terms being proposed will serve as the standard to be applied to the custodial files of (a) witnesses identified in Rule 26(a) disclosures and (b) witnesses designated by the other party for a personal deposition.  That said, technical challenges may arise with running search terms against specific custodial files that may necessitate a case-by-case refinement.  The parties will be expected to negotiate and work in good faith to overcome any such challenges.

DEFENDANTS' 30(b)(6) NOTICE TO ALABAMA

I.       **County & Municipal Governments** (Topics 12, 16)

| Defendants' Proposal | Alabama's Request |
|---|---|
| 12. "Your knowledge of, role, involvement, and efforts in any analyses, studies, projections, assessments, or evaluations regarding the nature, extent, or degree of economic or financial impact, actual or anticipated, of the Deepwater Horizon Incident and/or Oil Spill on the State of Alabama, including impacts at the county and/or municipality level." | Remove the phrase "including impacts at the county and/or municipality level" |
| 16. "Your knowledge of how all payments, grants, contributions or donations that the State has received from BP from 2010 until the present at both the state level and the county level, including all response, tourism, seafood and other block grants, relating to the *Deepwater Horizon* Incident and/or the Oil Spill, have been or will be disbursed within the State." | Remove the phrase "and the county level" |

The State does not control the 60+ county and 400+ city governments within its borders. This creates two problems with a request for the State to designate a 30(b)(6) witness on local government issues.  First, the State does not control the local government employees who have first-hand information on the inner workings of local governments and the effects of certain events on the local governments' activities and finances.   Second, the States does not have control over the documents and information that would be necessary to prepare a designee to testify regarding local issues.  In such circumstances, all the State can do is speculate, and the State should not/cannot be bound by speculation.

Take Topic 16 for example.  Topic 16 requires the State designate someone to testify regarding how a county has spent any payment or grant that it received from BP.  But the State has not been privy to all of BP's payments/settlements with local governments, who are represented by separate counsel, and we have no control over how they spend their monies.  So, the State cannot

2

answer the questions; the local government can.  *See* FRCP 26(b)(2)(C)(i) (requiring the Court to limit the extent of discovery where "the discovery sought … can be obtained from some other source that is more convenient, less burdensome, or less expensive").

In short, "the State" should only be required to designate a witness to testify about "the State."  Counties and municipalities should be excluded from the table.

## II.    Grants (Topic 27)

| Defendants' Proposal | Alabama's Request |
|---|---|
| 27. "The accounting of the use and disbursement of the two $25 million payments BP provided to the State of Alabama on May 10, 2010 and June 11, 2010 to pay for or otherwise reimburse costs related to the *Deepwater Horizon* Oil Spill. The accounting should include, without limitation, the State departments, agencies, and other entities (State or other) that received the funds and a description of how the money was spent, a description of whether any expenditures the State would have otherwise incurred were reduced or eliminated by the payments from BP, including each expenditure and the date it occurred." | Strike the entire Topic. |

Topic 27 refers to two grants, signed by BP C.O.O. Doug Suttles, which contain the following language:

> BP agrees that it will not seek to apply the Payment, or any portion thereof, as an offset against any Damages allowed under the Oil Pollution Act, 33 U.S.C. 2702(b)(2) ("OPA") and any other applicable law.  These funds are provided in addition to and irrespective of BP's obligations under the OPA of 1990 or any other applicable state or federal law.

By agreeing that the payments could not be used to off-set or mitigate their damage liability, BP plainly agreed that evidence regarding the grant payments would not be admissible at this trial.

And because these payments are off-limits at trial, a 30(b)(6) topic concerning them cannot be "reasonably calculated to lead to the discovery of admissible evidence." FRCP 26(b)(1).

While Alabama believes the removal of this topic to be clear-cut, because the waiver language is so clear-cut, we understand that the Court may desire more evidence and briefing than the present vehicle allows (*e.g.* a motion to exclude and opposition). Alabama will follow the Court's lead should more argument be desired.

**III.   Third-Party Payments** (Topic 14)

| Defendants' Proposal | Alabama's Request / Objection |
|---|---|
| 14. "Your knowledge of, role, involvement, and efforts in any analyses, studies, assessments, evaluations, or projections regarding the amount of, timing of and disbursement of payments, grants, contributions or donations to the State, or individuals and entities within the State, by BP or others, including the United States government, related to the *Deepwater Horizon* Incident and/or the Oil Spill, including the economic or financial impact, actual or anticipated, of such payments, grants, contributions or donations on any measure of State economic or financial performance." | A. The State objects to designating a witness to discuss "grants…that the State has received from BP" for grants that contain express language preventing BP from using the grant as an off-set of its damage liability.<br><br>B . Remove the emphasized phrase "or individuals and entities within the State[.]" |

Topic 14 poses two problems that need prompt resolution.

A. *State-level Grants*: Like Topic 27, Topic 14 seeks testimony regarding payments that BP made to the State that contain express language forbidding use of that payment as evidence of an off-set of BP's liability in this trial. For the reasons stated in the previous topic, the Court should either (a) order that evidence regarding a payment with express waiver language is excluded from the scope of this topic or (b) order further briefing and/or a motion to exclude.

B. *Third-party Payments*:  Topic 14 also requires the State to designate a witness to testify about payments made by BP to third-party individuals or businesses, presumably through the GCCF, the Settlement Program, and other means.  This request is poses several problems:

i.  The State does not have knowledge of all payments that BP has made to third parties.  Nor do we (presently) have access to the documents and information required to prepare a designated witness for this topic.  Simply put, the State cannot prepare a witness to answer this topic with regard to third-party payments.  Because BP has better access to this information than the State, discovery is unwarranted.

ii.  As the Court knows, the amount of monies BP has and will pay to third parties— not to mention how to calculate the monies to be paid—is in flux.  The State cannot prepare a witness to testify regarding the "actual or anticipated" impact of a constantly moving target.

iii.  To the extent that Defendants seek testimony regarding payments that third parties have made, or will make, to the State, such evidence violates the collateral source doctrine.

\* \* \*

In short, Topic 14 should be limited to evidence regarding payments made by BP to the State (not others), as long as those payments are not subject to an express waiver of use as an off-set or other mitigation defense.  Again, while the State believes it is correct on these issues, we recognize that this submission may not be the appropriate vehicle to decide the issues.  If the Court agrees, we request that it order motions practice and/or briefing before the State is required to designate a witness for this topic.

**DEFENDANTS' PROPOSED SEARCH TERMS TO ALABAMA**

**\*\*NOTE:** The following issues have been the subject of discussions/negotiations leading up to the twice-postponed submission deadline. (For example, Alabama received the Defendants' final proposals at 6:23pm today.) They will continue to be a topic of discussion after the deadline. Accordingly, Alabama requests a pinch of leniency on the depth of written arguments and an oral conference with the Court before deciding the following issues, as the issues/positions may again change.\*\*

**I.   Wording & Syntax**

Reserving the rights and objections mentioned in the opening paragraph of this brief, and in our simultaneously-filed list of unresolved issues, Alabama has accepted the wording and syntax of each of the Defendants' proposed search strings.

**II.   Time Periods to Be Searched**

The disagreement boils down to timing. Alabama argues that, for both sides, electronic searches should be limited to April 20, 2010 and after. Defendants argue in their final proposal that Search Strings 6, 13, 15, 17, and 19 be subjected to searches back to January 1, 2005, and the remainder be subject to searches back to April 20, 2010.[1]

Before delving into that disagreement, however, it is important to highlight what Alabama has already given, or has agreed to give, the Defendants:

- Economic, budget, tax stream and tourism projections, reports, studies and forecasts that discuss the viability, performance, growth and/or results from 2000 – present (14 years).

- Tax stream and budget data.

- State revenue abstracts, showing all monthly tax streams from Fiscal Year 1994 to present, as produced to the Defendants.

- A voluminous record of publically available data, with cites and keys to the data, as provided to the Defendants as part of the State's Initial Disclosures.

---

[1] Defendants tie their 30(b)(6) topics to the same date ranges, *see* Instruction #2, and thus all arguments regarding the timing of electronic searches apply equally to that instruction.

Accordingly, the issue is whether the Defendants *also* need/are entitled to a search of communications and correspondences between January 1, 2005 and April 20, 2010.

Briefly, here are three reasons Alabama believes that such electronic searches should be confined to April 20, 2010 through the present for *all* search terms:

1.   This is an expert intensive, data-driven case, in which the data speaks for itself, and the parties' experts will interpret what the data is saying.  Accordingly, discovery should be rooted in studies, forecasts, projections, and data necessary to perform the requisite damage analysis. Emails, fluff pieces, correspondences about studies, and/or other *pre-Spill* communications are simply not required and are unreliable.

2.  The State's proposal allows the Defendants to search through four years of communications—*i.e.* the four years in which the spill's effects were manifested.  Plus, the State has proposed to search for and produce 14 years of studies, reports, forecasts and projections that speak to the State's economic, tax and budgetary performance–and—the ability to pull more data from the State's various tax stream and budget data sets and reports.  All of that is in addition to more than 20 years of State tax stream data that Alabama has already produced to the Defendants. When the entirety of the production is taken into account, proportionality under Rule 26(b)(2)(C) weighs in favor of limiting electronic searches of communications/emails, especially when…

3.  Most of the State's records are not centrally maintained; much of the of the State's documents and correspondences dating back to 2005 will be in hard copy format that cannot be searched electronically; and the State's IT system lacks the technical capability for running the Defendants' search terms as written.

In sum, electronic searches going back five years before the Spill fail the proportionality test of Rule 26(b)(2)(C) when the Court considers (a) the wealth of tangible data the Defendants already have, (b) the unreliable and irrelevant nature of email communications—particularly *pre-*

*Spill* communications—and (c) the technical limitations on electronic searches on State databases.

### ALABAMA'S PROPOSED SEARCH TERMS TO DEFENDANTS

\*\*NOTE: Again, search term issues have been a moving target leading up to the deadline; thus, Alabama's written arguments are necessarily brief and an oral conference with the Court is requested.\*\*

Unlike Alabama's acceptance of Defendants' wording and syntax, Defendants do not accept Alabama's proposal. Briefly, Alabama submitted an initial proposal on July 16, then supplemented its proposal on July 18. The meet-and-confer process, we believed, was to subject our preferred supplemental proposal of July 18 to testing and negotiation. Yet, the Defendants have largely eschewed Alabama's preferred (July 18th) proposal—which we have edited and redacted in response to their stated concerns—and are asking the Court to instead apply Alabama's original draft on several strings.

Because it would be impossible to list every objection the Defendants lodge against Alabama's search strings in this limited space, Alabama simultaneously submits a red-line version of its proposed terms, which compares our July 18 supplemental proposal to our July 25, final version submitted to the Court. As the Court will see, Alabama has been quite responsive to the Defendants' comments throughout the process—and we suspect the Court will see that our changes coincide with many/most of the complaints Defendants will submit in their 10-page brief.

In short, Alabama requests the Court adopt Alabama's proposed terms as the standard—just as the Court will accept the Defendants' proposal per Alabama's agreement. Should technical challenges arise with running these search terms against specific custodial files, these issues can be dealt with on a case-by-case basis. As always, the parties will be expected to negotiate and work in good faith to overcome any such challenges.

8

Respectfully submitted this 25th day of July, 2014.

LUTHER J. STRANGE
*Attorney General*

  /s/ Corey L. Maze                                    .
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*

Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130
Phone: (334) 242-7300
Email:  cmaze@ago.state.al.us

Attorneys for the State of Alabama

# Exhibit D



**STATE OF ALABAMA**
**OFFICE OF THE ATTORNEY GENERAL**

**LUTHER STRANGE**
**ATTORNEY GENERAL**

September 30, 2014

501 WASHINGTON AVENUE
P.O. BOX 300152
MONTGOMERY, AL 36130-0152
(334) 242-7300
WWW.AGO.ALABAMA.GOV

**Via Email**

Paul Collier
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL  60654

     Re:    *State of Alabama vs. BP Exploration and Production, Inc., et al*
           Reasonable Search of Files

Dear Paul:

Per your request, I write this letter to inform you of the State's discovery efforts with regard to potential deposition custodians.

1. *Production Factors*: As we have discussed on multiple occasions, the State's production abilities must be viewed in light of these complicating factors:

    a)   Very few State Departments have a centralized document retention system;

    b)  The State, like many governmental entities, has a voluminous amount of files that exist in only hard copy format; and,

    c)  Where electronic files do exist, the vast majority of State Departments do not have the software or hardware capability of utilizing the search terms (terms, connectors, and date limitations) propounded by Defendants.  Furthermore, virtually no electronic documents (particularly .pdf documents) are indexed, which means that even if the State could utilize search terms, they would not capture responsive documents.

These factors make it impossible for the State to conduct the type of electronic search that might be possible for a Fortune 100 company.  Searches require State employees to comb through tens of thousands of emails, hard copy documents, and un-indexed .pdf documents on personal computer hard drives.  To give you an idea of our burden with regards to hard copy documents, for one department alone, the State has scanned over 350,000 pages of documents—a task that required in excess of 200 man hours to complete.

2. *"Reasonable Search" Protocol*: That being said, the State has performed a diligent, "reasonable search" to locate potentially responsive documents to the Defendants' discovery requests. A reasonable search consists of the following approaches:

- Interviews with custodians (and often times with a relevant technology staff person) to understand the manner in which information is kept, the type of information that is kept, and the manner in which it can be searched (for instance, if the custodian maintained an "oil spill" file, we request the entire file and review it for privilege);

- Based on those interviews, communication with the custodian regarding the types of information the custodian should search for based on the likelihood of the custodian possessing the information. (For example, based on numerous interviews, we do not believe ADEM possesses economic reports on the State's economy, and we likewise do not believe the Department of Finance contains environmental impacts reports.);

- Providing the following materials as a guide for searches:

  o The Defendants' discovery requests, including 30(b)(6) topics;
  o The Defendants' search terms, whereby the terms are used as a guide to assist the reviewer in both understanding the type of information requested and, if possible, performing searches commensurate with the system that exists; and,
  o Letter correspondences that provide additional explanation of the subject matter at issue in the case;

- Following up with the custodian to gauge the success of searches and to further direct the custodian to the extent searches are proving successful or should be re-directed to responsive materials; and,

- To the extent responsive documents exist on publically accessible websites, working with various custodians to identify those documents.

Thanks to more than 100 meetings with potential custodians from multiple State departments, this protocol has successfully yielded responsive documents to the Defendants' requests. Indeed, the protocol will yield an ultimate production of more than 1,000,000 pages of documents.

3. *Custodial Files*:   In those instances where it is impossible for the relevant Department/Agency to run the search terms propounded by Defendants, we intend to continue use of the reasonable search protocol described above on the files of witnesses noticed for deposition.  Two matters of observation here: (a) Many of these documents will have already been produced before the October 3rd deadline, and (b) as we communicated during our meet and confer negotiations, emails correspondences will be particularly difficult and time-consuming to review for responsiveness.  That said, we are working diligently to obtain these responsive documents, based on the current technology available.

4. *Search Term "Agreement:"*  On a final note, during our last meet and confer call on this issue, counsel for BP contended that the parties "agreed" to run these terms, and as a result, the State *must* use them to search custodial files. While it is true that the State agreed to the wording and syntax of the terms, the State did ***not*** agree to utilize the terms should a Department/Agency's system be deemed incapable of harnessing them.

To the contrary, over the past few months, the State has clearly voiced its concern that your search terms were unlikely to work given the technological limitations outlined above.  And you personally confirmed to me back in July that BP understood these concerns and was willing to work through them should they arise:

> [W]e understand that technical challenges may arise with running search terms against specific custodial files and further refinement may be necessary on a case-by-case basis.  Our expectation then is that the parties would continue to negotiate and work in good faith to overcome those technical challenges as the discovery process continues.

Email from Paul Collier to Corey Maze and Catherine Stahl (July 24, 2014, 10:43am).

Our phone call last week, and today's corresponding letter, are Alabama's attempts to "negotiate and work in good faith to overcome [these] technical challenges" well in advance of the November start date for depositions.

* * *

Should you have any questions or concerns arising from this letter, feel free to contact me.


COREY L. MAZE
Special Deputy Attorney General

# Exhibit E

**Request for Proposal: eDiscovery Solutions**

**Attorney General's Office**

STATE OF ALABAMA

**TITLE:** eDiscovery Solutions

**<u>RFP Number Proposal</u>**             **<u>Due Date & Time</u>**
027-201401                       January 27, 2014
5:00 p.m. Central Standard Time

Please return proposals to: Charla G. Doucet, Administrative Services Division Chief hereafter referred to as RFP Coordinator.

Mail to:

Attorney General's Office
501 Washington Avenue
Montgomery, Alabama 36130

Ship to:

Attorney General's Office
501 Washington Avenue
Montgomery, Alabama 36130

_____

# 1.   INTRODUCTION

## 1.1   SOLICITATION

The Alabama Office of the Attorney General (OAG) initiates this Request for Proposal (RFP) to solicit responses from qualified Vendors for electronic discovery (eDiscovery) tools.  Each Vendor submitting a Response to this RFP is required to read and understand all information incorporated into this RFP package.

## 1.2   OFFICE OF THE ATTORNEY GENERAL BACKGROUND

The OAG is an independent constitutional office and legal counsel to the state of Alabama.  Its mission is to serve the citizens of the state by adhering to the highest standards of excellence, ethics, and effectiveness and to deliver the highest quality legal services.  The OAG is comprised of more than 175 employees who are primarily based in Montgomery, Alabama.

Client records are provided to the OAG in hard copy or electronically via email or portable storage device.  When client records are provided in hard copy, OAG personnel scan the records and convert them to PDF format.  The OAG does not have automated software that will search, collect, process, analyze, or manage all of its electronic records.

## 1.3   GENERAL SYSTEM REQUIREMENTS

The OAG computing environment is based on Microsoft operating systems and server software products.  The following operating system and software products are currently used by the OAG.  Please note that all eDiscovery software and hardware must be "compatible" with this environment.  The OAG has no intentions of setting up a special computing environment (Linux based, etc.) to support an eDiscovery solution.  Compatibility includes the ability to integrate with or capable of being used together without special modification or adaptation.

- Microsoft Server 2008 R2 network operating system in a Windows and TCP/IP networked environment;
- Microsoft Windows 7 desktop operating systems (both 32 and 64 bit);
- Microsoft Office 2007 and 2010;
- Microsoft Exchange 2007;
- Microsoft Outlook 2007 and 2010.

In addition to the requirements listed above, your eDiscovery solution must be Active Directory integrated and it must have the ability to be hosted on either the OAG's network or via a web-hosted solution.

Web browser based solutions should be browser-independent (not Internet Explorer specific).

***Vendors that fail to meet the Active Directory and compatibility requirements will be disqualified.***

**1.4    OBJECTIVE**

The OAG is interested in acquiring eDiscovery tools so that the OAG may more efficiently and reliably process Electronically Stored Information (ESI) for litigation discovery.  The specifics of the OAG's eDiscovery needs are set forth in Appendix A.  In summary, the OAG seeks solution(s) that will assist it in:  1) identifying, preserving and collecting records and 2) processing, analyzing, reviewing and producing records.

**1.5    CONTRACT SCOPE**

The selected Vendor(s) will be required to supply the purchased eDiscovery tool(s) and to provide training to OAG users, to otherwise support OAG implementation(s), and to provide product maintenance throughout the contract term, including any contract extension(s).

**1.6    CONTRACT TERM**

Any maintenance or software related service contract issued as part of this procurement will have an initial term of two years, beginning on or about May 1, 2014.

**1.7    OVERVIEW OF SOLICITATION PROCESS**
**(See Section 7 of this RFP for additional details.)**

RFP responses will be evaluated as follows:

Proposals will be evaluated by a committee.  Selection of Vendor(s) will be based on all factors listed below and others implicit within the RFP and will represent the best performance and most reasonable costs for the OAG.    Oral presentations/demonstrations may be required as part of the evaluation criteria. Chosen Vendor(s) will be required to provide End-User training for up to 10 (ten) employees who will be evaluating the services.

Part of the evaluation process will include input from the End-User group of OAG employees selected to evaluate the service(s).  This group will use the products and provide the evaluation committee with an assessment of feature verification and usability of the various components of each of the eDiscovery solutions.

**Vendors must provide this group of OAG employees access to their proposed eDiscovery solution for a trial period of up to five weeks so that End-User evaluation may occur.  The product(s) supplied must be a fully functional, production level solution, not a demonstration version.  Vendors must verify that their proposed eDiscovery solution has been set up, configured, and is End-User ready prior to beginning any End-User evaluation.**

The evaluation committee will review End-User feedback, client references, and cost in selecting Vendor(s).

## 1.8   PUBLIC DISCLOSURE

To the extent permitted by law, RFP information, including price sheets, will not be available for public disclosure until after award of the Contract.

## 1.9   ELECTRONIC RFP DATABASE

The OAG is required to post all RFP notices on the State Comptroller's website for public review.   Thus, this RFP is posted on the website at http://rfp.alabama.gov/PublicView.aspx. The RFP Database is the central location for RFP posting activities for all state agencies and departments.

## 2.   SCHEDULE OF EVENTS

This RFP is issued under the following estimated Schedule of Events.  The RFP response deadline is mandatory and non-negotiable.  Failure to meet any of the required deadlines will result in disqualification from participation.  **Unless otherwise indicated, all required deadlines are 5:00 p.m. CST.**

| DATE | EVENT |
|---|---|
| January 6, 2014 | Issue RFP |
| January 13, 2014 | Written Vendor Questions and Comments Due |
| January 17, 2014 | Written Responses to Vendor Questions and Comments |
| January 21, 2014 | Issue Amendments (if necessary) |
| **January 27, 2014** | **Vendor Responses Due (REQUIRED DEADLINE)** |
| February 3, 2014 | eDiscovery Solutions Identified for Evaluation. |
| February 4, 2014 | Vendors Notified of eDiscovery Solutions for Evaluation. |
| February 5, 2014 | Vendors Evaluation Begins |
| February 10-14, 2014 | Vendors Product Demonstration and Training for End-Users |
| March 28, 2014 | End-Users Evaluation Completed |
| April 4, 2014 | Evaluation Committee Selection Completed |
| April 8, 2014 | Notification of Apparent Successful Vendor(s) |
| April 18, 2014 | Signed contract(s) and required forms due |
| May 1, 2014 | Contract start date |

**OAG, at its sole discretion, reserves the right to revise the above schedule.**

OAG eDiscovery RFP

## 3. ADMINISTRATIVE REQUIREMENTS

### 3.1 RFP COORDINATOR (PROPER COMMUNICATION)

Upon release of this RFP, all Vendor communications concerning this solicitation must be directed to the RFP Coordinator listed below. Unauthorized contact regarding this solicitation with other state employees involved with the solicitation may result in disqualification. All oral communications are unofficial and non-binding on the State. Vendors shall rely only on written statements issued by the RFP Coordinator.

**Charla Doucet, CPA**
**RFP Coordinator**
**Alabama Office of the Attorney General**
**501 Washington Avenue**
**Post Office Box 300152**
**Montgomery, Alabama 36130-0152**

**E-mail:**       **cdoucet@ago.state.al.us**
**Telephone:**   **334-242-7305**
**Fax:**         **334-242-4780**

### 3.2 VENDOR QUESTIONS

Vendor questions regarding this RFP will be allowed until the date and time specified in the Schedule of Events (Section 2 of this RFP). Vendor questions must be submitted in writing (email acceptable) to the RFP Coordinator. An official written OAG response will be provided for Vendor questions received by this deadline. Written responses to Vendor questions will be provided to all responding Vendors.

The Vendor that submitted the questions will not be identified. Oral responses to questions will be considered unofficial and non-binding. Only written responses will be considered official and binding.

### 3.3 VENDOR COMMENTS INVITED

Vendors are encouraged to review the requirements of this RFP carefully and submit any comments and recommendations to the RFP Coordinator.

### 3.4 VENDOR CONCERNS REGARDING THE REQUIREMENTS AND SPECIFICATIONS OF RFP

Vendors are expected to raise any questions, exceptions, or additions they have concerning the RFP requirements early in the RFP process. Vendors must submit specific concerns to the RFP Coordinator in writing.

Should a Vendor concern identify an issue that would be in the best interest of the OAG to address, the OAG may modify this RFP accordingly.  The OAG decision regarding concerns raised is final.

### 3.5   DELIVERY OF RESPONSES

The Response, in its entirety, must be received by the OAG no later than the time indicated in the Schedule of Events set forth in RFP Section 2.  All Responses must be personally delivered or mailed to the RFP Coordinator at the address provided in RFP Section 3.1.  The official time stamp will be the date/time the document is stamped received by OAG personnel, located at: 501 Washington Avenue, Montgomery, Alabama.

**Vendors should allow sufficient time to ensure timely receipt of the proposal by the RFP Coordinator.  Late Responses will not be accepted and will be automatically disqualified from further consideration.  Additionally, responses may not be submitted via facsimile or email.**

### 3.6   RESPONSE CONTENTS

The Response must contain information responding to all requirements in the RFP.  All required Appendices must include the signature of an authorized Vendor representative where indicated.

**Failure to follow these requirements will result in Vendor disqualification.**

### 3.7   NUMBER OF RESPONSE COPIES REQUIRED

Two (2) hard copies and one (1) CD-ROM or electronic media (e.g. USB drive) version of the Response, including required appendices, that is exactly the same as the paper copy.

## 4.   RESPONSE PRESENTATION AND FORMAT

**4.1**   Proposals must be written in English.  Hard copy responses should be prepared on loose-leaf paper and placed in three-ring binders, as needed, with tabs separating the major sections of the Response.  Pages must be numbered consecutively within each section of the Response showing Response section number and page number. The paper upon which hard-copy documents are made should be submitted on white paper measuring 8 ½ x 11.

**4.2**   Vendors must submit with the hard copy Response an electronic version of the Response. Electronic Responses must be in MS Word and/or Excel and provided on CD-ROM, DVD or similar electronic storage device (e.g., a USB drive).  After documents that require signatures are completed and signed the

documents should be scanned and provided in PDF format as well as providing the unsigned MS Word and/or Excel versions. The electronic version of the Response and required appendices must be exactly the same as the paper copy. OAG will not accept zipped files.

4.3     The Vendor name and the name, address, email, facsimile (if applicable) and telephone number of the Vendor's authorized representative must be identified at the beginning of the Response.

4.4     Figures and tables must be numbered and referenced in the text of the Response by the numbers assigned within this RFP. Foldouts containing charts, spreadsheets, and oversized exhibits are permissible.

4.5     The following materials must be completed and signed by a representative authorized to bind the company to the offer, and provided to the RFP Coordinator in the order listed below:

- The Executive Summary required by RFP Section 6.1.1.
- The Vendor's technical proposal, using the requirements identified in Appendix A.
- Client References (Appendix B).

***Failure to provide any requested information in the prescribed format may result in disqualification of the Vendor.***

**4.6     MULTIPLE (ALTERNATIVE) RESPONSES**

Multiple or Alternative Responses from a Vendor will be permissible; however, each Response must conform fully to the requirements for Response submission. Each such Response must be submitted separately and labeled as Response #1, Response #2, etc. on each page included in the Response.

**4.7     COST OF RESPONSE PREPARATION**

The OAG will not reimburse Vendors for any costs associated with preparing or presenting a Response to this RFP.

Vendor assumes all of Vendor's costs associated with the preparation of this RFP, site visits, and related expenses and providing access to Vendor's solution during the End-User review process.

**4.8     RESPONSE PROPERTY OF OAG**

All materials timely submitted in response to this solicitation become the property of the OAG. Materials untimely submitted will be returned to the sender.

4.9     **VENDOR PROPRIETARY OR CONFIDENTIAL INFORMATION**

Any information in the Response that the Vendor desires to claim as proprietary and exempt from disclosure under state or federal law that provides for the nondisclosure of the information, must be clearly designated.   Each page containing the information claimed to be exempt from disclosure must be identified by the words "Proprietary Information" printed on the lower right hand corner of the page.  Marking the entire Response or entire sections of the response as proprietary, confidential, or exempt from disclosure will not be honored.  Vendors must state in their Executive Summary (see RFP Section 6.1.1) whether their Response contains any proprietary or confidential information.

The OAG will not honor any Vendor Responses indicating that pricing is proprietary or confidential, and if a request for release of a Vendor's pricing is made, the OAG will release such information in a manner consistent with public records law, ordinarily after completion of this RFP process.

If a public records request is made to obtain or view information contained in a Response that the Vendor has marked confidential or proprietary, the OAG will notify the Vendor of the request and of the date that the records will be released to the requester unless the Vendor obtains a court order enjoining that disclosure.  If the Vendor does not obtain a court order enjoining disclosure, the OAG will release the requested information on the date specified.

The OAG's sole responsibility shall be limited to maintaining the information marked proprietary in a secure area and notifying the Vendor of any request(s) for disclosure as long as the OAG retains the Vendor's proprietary marked information.  Failure to so label such information or failure to timely respond after notice of a public records request has been given shall be deemed a waiver by the Vendor of any claim that such information is proprietary and exempt from disclosure.

4.10    **WAIVE MINOR ADMINISTRATIVE IRREGULARITIES**

The OAG reserves the right to waive minor administrative irregularities contained in any Response.  Vendors will not be allowed to make changes to their quoted price after the Response submission deadline.

4.11    **ERRORS IN RESPONSE**

Vendors are liable for all errors or omissions contained in their Responses. Vendors will not be allowed to alter Response documents after the deadline for Response submission. The OAG is not liable for any errors in Responses.  The OAG reserves the right to contact any Vendor for clarification of Response contents.

In those cases where it is unclear to what extent a requirement or price has been addressed, the RFP Coordinator may contact a Vendor to clarify specific points in the submitted Response.  However, under no circumstances will the responding Vendor be allowed to make changes to the proposed items after the deadline stated for receipt of Responses.

## 4.12   AMENDMENTS AND REVISIONS

The OAG reserves the right to change the Schedule of Events (RFP Section 2) or other portions of this RFP at any time.  The OAG may correct errors in the solicitation document identified by the OAG or a Vendor.  Any changes or corrections will be by one or more written amendment(s), dated, and attached to or incorporated in and made a part of this solicitation document.  All changes will be authorized and issued in writing by the RFP Coordinator.  If there is any conflict between amendments, or between an amendment and the RFP, whichever document was issued last in time shall be controlling.

## 4.13   RIGHT TO CANCEL

With respect to all or part of this RFP, the OAG reserves the right to cancel or reissue the RFP at any time without obligation or liability.

## 4.14   INCORPORATION OF DOCUMENTS INTO CONTRACT

This solicitation document, including any amendments or revisions, and the Response will be incorporated into any resulting Contract.

## 4.15   NO OBLIGATION TO CONTRACT/BUY

The OAG reserves the right to refrain from contracting with any and all Vendors for eDiscovery tools.  Additionally, the OAG shall have no obligation to make any purchases once it has provided the notice of intent to terminate required by any resulting Contract.

## 4.16   NO COSTS OR CHARGES

No costs or charges under a proposed Contract may be incurred before a Contract is fully executed.

## 4.17   WITHDRAWAL OF RESPONSE

Vendors may withdraw a Response that has been submitted at any time up to the Response due date and time identified on the Schedule of Events (RFP Section 2). To accomplish response withdrawal, a written request signed by an authorized Vendor representative must be submitted to the RFP Coordinator.  After

withdrawing a previously submitted Response, the Vendor may submit another Response at any time up to the Response submission deadline.

### 4.18   NON-ENDORSEMENT AND PUBLICITY

In selecting a Vendor under this RFP, the OAG is neither endorsing a Vendor's product and/or services nor suggesting that a Vendor is the best or only solution to the OAG's needs. By submitting a Response, the Vendor agrees to make no reference to the OAG or the State of Alabama in any literature, promotional material, brochures, sales presentation or the like, regardless of method of distribution, without the prior review and express written consent of the OAG.

### 4.19   NOTIFICATION OF APPARENT SUCCESSFUL VENDOR(S)

All Vendors responding to this solicitation will be notified by email when the OAG has selected the final Vendor(s).  The date of announcement of the Vendors will be April 8, 2014.

### 4.20   AVAILABILITY

The contents of this RFP and any amendments and written answers to questions will be available for public inspection via the State Comptroller's website.

## 5.   VENDOR REQUIREMENTS

### 5.1   VENDOR RESPONSIBILITY FOR RFP

Vendors are required to read and understand all information contained within the entire RFP package.

### 5.2   VENDOR LICENSED TO DO BUSINESS IN ALABAMA

Selected Vendor(s) must be licensed to conduct business in Alabama, including registering with the Alabama Secretary of State's Office.  The Vendor(s) must also be current on all taxes due the State of Alabama. The OAG will verify the business status of the selected Vendor(s) prior to executing a contract.

### 5.3   TAXES

The Vendor is responsible for collecting and reporting all applicable taxes.

### 5.4   ASSIGNMENT OR SUBCONTRACTING; AFFILIATES (APPLICABLE TO CONTRACTS IN WHICH THE VENDOR INTENDS TO SUBCONTRACT A PORTION OF THE WORK)

OAG eDiscovery RFP

**5.4.1**   The OAG will accept Responses that include third party involvement only if (a) the Vendor submitting the Response agrees to take complete responsibility for all actions of such Subcontractors and/or Affiliates, and (b) Vendor identifies the subcontractor or affiliate as the supplier of any portion of the eDiscovery solution, with specificity as to which line item the third party will provide as stated in Appendix A.

**5.4.2**   Except as set forth in RFP Section 5.4.1 above, the Vendor shall not subcontract, assign, or otherwise transfer its obligations under any contract issued as a result of this RFP without the prior written consent of the OAG.

## 5.5    INSURANCE

All selected Vendor(s) will be required to obtain insurance to protect the State should there be any claims, suits, actions, costs, or damages or expenses arising from any negligent or intentional act or omission of the Vendor or its subcontractor(s) or affiliates, or their agents, while performing work under the terms of any contract resulting from this solicitation.   Vendors will find a complete description of the insurance requirements in the proposed contract terms in Appendix C.

## 5.6    COVENANTS AGAINST CONTINGENT FEES

The Vendor warrants that no person or selling agency has been employed or retained to solicit or secure the Contract upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the Vendor for the purpose of securing business.   For breach or violation of this warranty, the OAG shall have the right to terminate the Contract in accordance with the termination clause and, in its sole discretion, to deduct from this Contract's price or consideration, or otherwise recover, the full amount of such commission, percentage, brokerage, or contingent fee.

## 5.7    DUTY TO PROTECT OAG RECORDS

OAG data is likely to be protected by legal privilege.   Accordingly, the Vendor is required to protect against unauthorized disclosure all data and information of any nature relating to an OAG client or the OAG's operations that may be made available to the Vendor as a result of a Contract entered pursuant to this RFP. Vendor may disclose such information and data only as required by law or where release is authorized in advance in writing by the OAG.   The Vendor shall not be required under the provisions of this section to keep confidential any data or information which is already rightfully in the Vendor's possession, is

independently developed by the Vendor outside the scope the Contract, or is rightfully obtained from third parties.

In addition, before accessing OAG data, Vendors will execute a copy of the OAG's confidentiality agreement.

## 5.8   CONTRACT GENERAL TERMS AND CONDITIONS

The successful Vendor(s) will be expected to enter into a contract with the OAG which is substantially the same as the Proposed Contract and its general terms and conditions (attached to this RFP as Appendix C).  For purposes of this RFP, the Proposed Contract encompasses all required forms which are also included in Appendix C.  In no event is a Vendor to submit its own standard contract terms and conditions in response to this solicitation.  The Vendor may submit proposed exceptions to the Proposed Contract terms and conditions.  Additionally, any resulting contract may include additional provisions the Vendor suggests.  The OAG will review requested exceptions and additional provisions, and accept or reject the same at its sole discretion. The Vendor must complete and submit all forms that are required to accompany  the Contract, including, but not necessarily limited to the Vendor Disclosure Statement, Certificate of Compliance (for immigration purposes), and a W-9 Form.

Failure of a selected Vendor to reach agreement with the OAG on contractual terms and conditions will result in cancellation of the Vendor's selection.

A selected Vendor will be expected to execute a contract within ten (10) business days of its receipt of the final contract.  If a selected Vendor fails to sign the contract within the allotted ten-day (10) time frame, the OAG may elect to cancel the award or cancel or reissue this solicitation.

**5.8.1   Additional Contract Requirements.** If the Vendor is located in Alabama or employs an individual or individuals within the state of Alabama, the Vendor shall provide a copy of its Employment Eligibility Verification (E-Verify) Memorandum of Understanding (MOU). The Vendor must also complete and return the Certification of Compliance form, a copy of such form is included in Appendix C.

If the Vendor is not located in the state of Alabama and does not employ an individual or individuals within the state of Alabama, then an E-Verify MOU is not required.  Instead, the Vendor shall complete and return the Certification of Compliance form, included in Appendix C.

## 6.   RESPONSE REQUIREMENTS

**6.1**   The requirements under this Section 6.1 and its subparts are mandatory.  Failure to provide the information requested or complete any one of the appendices identified in this Section 6.1 and its subparts will cause the Vendor to be disqualified.  Information is to be submitted in the order identified.

### 6.1.1   EXECUTIVE SUMMARY

**6.1.1.1**   Vendor's legal status (e.g., corporation, S-corporation, limited liability company, limited liability partnership, etc.) and the year the Vendor was organized to do business as it currently substantially operates.

**6.1.1.2**   Vendor's parent company, if applicable.

**6.1.1.3**   Vendor's total number of years in business.

**6.1.1.4**   Number of years Vendor has provided eDiscovery tools.

**6.1.1.5**   A statement signed by an individual authorized to contractually bind the Vendor's organization that affirms: **a)** the Vendor accepts the requirements of this RFP and **b)** the signatory is authorized to contractually bind the Vendor.  The statement must be signed and dated in ink.

**6.1.1.6**   A guarantee that the Vendor's Response, as submitted, will remain in full force and effect through May 1, 2014, unless withdrawn prior to the Response due date and time identified on the Schedule of Events (RFP Section 2).

**6.1.1.7**   Vendor's Federal Tax Identification number.

**6.1.1.8**   Vendor's office headquarters address.

**6.1.1.9**   Vendor's telephone and fax numbers.

**6.1.1.10**   Vendor's website URL.

**6.1.1.11**   The contact information, including name and email address, for Vendor's contact representative regarding this RFP.

**6.1.1.12**   Vendor's organizational chart, including the names and titles of Vendor's principal officers and those authorized to execute contracts for the Vendor.

**6.1.1.13**   A brief description of the Vendor organization, including the Vendor's experience and history providing eDiscovery tools similar to those being solicited under this RFP. (Vendors should be specific and should include dates, clients, and the eDiscovery tools it furnished.)

**6.1.1.14**   Identification of any state employees or former state employees employed or on the Vendor's governing board as of the date of the Response.  Include a statement of such employees or officers position and responsibilities within the Vendor's organization.  If, following a review of this information, it is determined by the OAG that a conflict of interest exists; the Vendor may be disqualified from further consideration for the award of a contract.

**6.1.1.15**   Whether any sections of the Response have been marked "Proprietary" or "Confidential," and the specific location (page number and paragraph) of such section(s).

**6.1.1.16**   A statement indicating whether Vendor is responding on Solution A, Solution B, or Solution C, as those solutions are described in Appendix A.

**6.1.1.17**   If Vendor is responding to Solution C, Vendor shall note whether it would be willing to accept a contract for Solution A or B only.  If it would, it must indicate whether, and how, the costs of the RFP will be different if it is awarded a contract for only Solution A or B.

**6.1.1.18**   Any statements the Vendor wishes to convey to the RFP Coordinator and/or the Evaluation Committee.

### 6.1.2   CLIENT REFERENCES (APPENDIX B)

Vendor must provide contact information, including the phone number, name, and email, for four (4) commercial and/or government clients references, using Appendix B, Client References.

Each client reference shall be unique.  If the Vendor submits contact information for two or more individuals from the same client, only one will be contacted.  Vendor must select clients who respond in a timely manner to telephone and/or email inquiries with objective information regarding the products the client has purchased.

The products purchased by the reference clients should be similar to those requested by this RFP.  References must not be from a person, company,

or organization with any special interest, financial or otherwise, to the Vendor.

The RFP Coordinator or designee will contact Vendor's client references directly, either by phone or email, and interview each reference.

The OAG may, at its discretion, contact other Vendor clients not listed by the Vendor as a reference. The OAG reserves the right to eliminate from further consideration in the RFP process any Vendor who, in the opinion of the OAG, receives an unfavorable report from a client that is confirmed to be a valid report.

### 6.1.3   VENDOR ACCOUNT MANAGER

Vendor shall appoint an Account Manager who will provide oversight of Vendor contract activities. The Vendor's Account Manager will be the principal point of contact concerning the Vendor's performance under any Contract, resulting from this RFP.  The Vendor further must agree to notify the OAG regarding any changes to the Account Manager contact.

### 6.1.4   TECHNICAL PROPOSAL/PRICING (APPENDIX A)

Vendors seeking to provide all components of the eDiscovery process ("Solution C", as described in Appendix A), must address all sections of Appendix A in their proposals.

Vendors seeking to provide only the Identification, Preservation, and Collection components of the eDiscovery process ("Solution A" as described in Appendix A), must address all sections of Appendix A, with the exception of Section 3.

Vendors seeking to provide only the Processing, Analysis, Review, and Production components of the eDiscovery process ("Solution B" as described in Appendix A), must address all sections of Appendix A, with the exception of Section 2.

If the Vendor intends to utilize a subcontractor or affiliate to perform any of the items within Appendix A, such intent must be clearly and prominently indicated in the Vendor's Appendix A Response, and any utilization of a subcontractor or affiliate shall be subject to the requirements of RFP Sections 5.4 and 5.5.

7.      **EVALUATION PROCESS**

### 7.1    OVERVIEW

There may be one or more eDiscovery solutions purchased as a result of this RFP process. The evaluation process is designed to award Contracts to those Vendors with the best combination of Vendor management qualifications, technical proposal, price, product functionality and usability. This process is not designed to award Contracts merely or solely on the basis of the lowest price quotations.

### 7.2    PHASE 1 - ADMINISTRATIVE SCREENING

Responses will be reviewed initially by the RFP Coordinator and or designee(s) to determine whether each Response meets all the requirements set forth in RFP Sections 3.5, 3.6, 3.7, and 6.1, including all subsections thereof. Any response that fails to meet the requirements set forth in these sections will be deemed non-responsive and will not be further evaluated. The evaluation committee will evaluate only those Responses that have passed this Administrative Screening process.

### 7.3    PHASE 2 - EVALUATION COMMITTEE

The OAG evaluation of responsive proposals will be conducted by an evaluation committee. The evaluation committee will review Appendix A for each proposal.

### 7.4    PHASE 3 - END-USER EVALUATIONS

The OAG will select a group of OAG employees to evaluate the forwarded eDiscovery solutions for feature verification and usability. This group will: **a)** participate in Vendor demonstrations and presentations regarding the Vendor's proposed eDiscovery solution, **b)** use each eDiscovery solution for a period of up to five weeks, and **c)** provide the evaluation committee with its assessment of each eDiscovery solution.

### 7.5    PHASE 4 - FINAL

The evaluation committee will review the End-User feedback, client references, and cost to select Vendor(s) based upon the following best value criteria:

- Whether the Response satisfies the needs of the OAG requirements as specified in the solicitation documents;
- Whether the RFP provides competitive pricing, economies, and efficiencies;
- Whether the RFP appropriately weighs cost and non-cost considerations; and
- Life-cycle cost.

OAG eDiscovery RFP

# Appendix A
## Business Requirements
## RFP OAG eDiscovery Tools

The OAG seeks acquisition of one or more eDiscovery tools that will enable it to more efficiently and reliably process electronic records.

Not all eDiscovery products can perform all Electronic Discovery Reference Model (EDRM) components.  Some products may provide a few components and others may provide all components.  For this reason the OAG will be evaluating products separately in two categories:  (1) identification, preservation, and collection; and (2) processing, analysis, review, and production.  If your product does both categories, you may respond to both categories; however, each will be reviewed separately and you do not have any advantage over other vendors.

You must indicate which category you will be responding to by checking the corresponding box below.

☐   Solution A: Identification, Preservation, and Collection

☐   Solution B:  Processing, Analysis, Review, and Production

☐   Solution C:  Includes both solutions A and B

## SECTION 1. SOLUTION PROFILE(S)

Please use the following table to indicate the areas in the EDRM that are supported by your eDiscovery  solution(s). Please enter the product name that supports each EDRM phase. If the EDRM phase is not supported by your eDiscovery solution(s)  directly, but you have one or more third party vendor partnerships that support those phases, please name AND describe the nature of these  relationships.

| EDRM PHASE | NAME OF PRODUCT(S) SUPPORTED BY VENDOR | NAME OF THIRD PARTY AND DESCRIPTION OF PARTNERSHIP |
| --- | --- | --- |
| Identification | | |
| Preservation | | |
| Collection | | |
| Processing | | |
| Analysis | | |
| Review | | |
| Production | | |

## SECTION 2.  IDENTIFICATION, PRESERVATION, AND COLLECTION

### 2.1  Functional Requirements

For each requirement, indicate if the requirement is supported directly by the proposed solution(s). If more information or clarification is required  enter that information in the Vendor Response column.

| REQUIREMENT | REQUIREMENT SUPPORTED? (Y/N) | VENDOR RESPONSE |
|---|---|---|
| **Identification** | | |
| Provides search and identification  capabilities for Microsoft Exchange email  (version 2003 or higher) and .msg files | | |
| Provides search and identification  capabilities for Microsoft Exchange  attachments | | |
| Provides search and identification  capabilities for Microsoft Exchange  calendar attachments | | |
| Provides search and identification capabilities for Network File Shares | | |
| Provides search and identification  capabilities for Desktops/Laptops | | |
| File type support for Adobe Acrobat PDF versions 6.x (including protected PDF) | | |
| File type support for ASCII Text | | |
| File type support for all versions of Microsoft Access up to and including 2013 | | |

OAG eDiscovery Tools RFP
Appendix A

| REQUIREMENT | REQUIREMENT SUPPORTED? (Y/N) | VENDOR RESPONSE |
| --- | --- | --- |
| File type support for all versions of Microsoft Excel up to and including 2013 | | |
| File type support for all versions of Microsoft PowerPoint up to and including 2013 | | |
| File type support for Microsoft Word for all versions of DOS | | |
| File type support for all versions of Microsoft Word up to and including 2013 | | |
| File type support for Microsoft Works for Windows | | |
| File type support for Microsoft RTF | | |
| File type support for HTML | | |
| File type support for Zips and other container files | | |
| File type support for TIFF/OCR pairs | | |
| Support for the inclusion or exclusion of system file types | | |
| Support reporting on encrypted and protected files | | |

OAG eDiscovery Tools RFP
Appendix A

| REQUIREMENT | REQUIREMENT SUPPORTED? (Y/N) | VENDOR RESPONSE |
|---|---|---|
| Provides capability to account for name changes, aliases, and different naming conventions that may relate to the custodians being searched | | |
| Support for searching on content containing international languages (Unicode). Please detail the languages that are supported | | |
| **Preservation** | | |
| Preserves data and prevents spoliation | | |
| Support for legal holds on MS Exchange email server and archive database | | |
| Support for legal holds on file shares located on servers | | |
| Support for legal holds on desktops and laptops attached to network | | |
| Support for multiple searches used to place and remove holds per matter | | |
| Support for multiple legal holds on a record without the need for copies | | |
| Support for ability to remove legal holds on a record per matter | | |
| Support for in-place legal hold on existing content | | |

OAG eDiscovery Tools RFP
Appendix A

| REQUIREMENT | REQUIREMENT SUPPORTED? (Y/N) | VENDOR RESPONSE |
|---|---|---|
| Support for controlled suspension of automatic deletion or creation/import routines | | |
| **Collection** | | |
| Collection of preserved records (legal holds) can be applied to the file types listed in the Identification section above | | |
| Support for collection of files from MS Exchange email server and archive database | | |
| Support for collection of files from file shares located on servers | | |
| Support for collection of files from desktops and laptops attached to network | | |
| Support for collection of multiple searches to place records into a legally defensible, secured location for each matter | | |
| Collection can occur in such a way that business operations are not interrupted. | | |

OAG eDiscovery Tools RFP
Appendix A

### 2.1.1 Functionality – Identification, Preservation, and Collection

Please indicate what functions your product offers below by marking the corresponding checkbox.  Any item not checked will be interpreted as a function that your product cannot provide.  Items marked with an asterisk (*) are required.  *Vendors who do not provide required (*) functions will be disqualified.*

| IDENTIFICATION, PRESERVATION, AND COLLECTION |
|---|
| ☐ *Multi-keyword search |
| ☐ *Boolean search |
| ☐ *Advanced search interface |
| ☐ *Ability to search embedded files (e.g., emails and attachments) at least 3 levels deep |
| ☐ *Compound document searching |
| ☐ *Ability to segregate search results by custodian and assign back to custodian for review |
| ☐ *Ability to save searches |
| ☐ *Ability to save search results |
| ☐ *Defensible tracking of culling criteria |
| ☐ *Export search results |
| ☐ *Filtering |
| ☐ Filtering on custodian |
| ☐ Filtering on email sender domain |
| ☐ Filtering on keyword |
| ☐ Filtering on hash value |
| ☐ Filtering on system metadata |
| ☐ Subset search |
| ☐ Conceptual searching |
| ☐ Find similar search |
| ☐ Search hit highlighting |
| ☐ Portable self-extracting data collection tool |
| ☐ Multi-Language support |
| ☐ Relevance ranking of search results |

OAG eDiscovery Tools RFP
Appendix A

### 2.1.2  SEARCHABILITY

Please indicate if your product can search the items listed on the table below by both keyword and metadata by marking the corresponding checkbox.  Any item not checked will be interpreted as an item that your product cannot search.  Items marked with an asterisk (*) are required. *Vendors who do not provide search capabilities for required (*) items will be disqualified.*

| SEARCHABILITY |
|---|
| ☐ *Microsoft Server 2008R2 |
| ☐ *Microsoft Exchange v2003 and higher |
| ☐ *Microsoft Outlook 2007 and higher |
| ☐ *Microsoft Office software suite (word, access, excel, powerpoint)  97 and higher |
| ☐ *SQL Server Databases |
| ☐ *Microsoft Windows 7 desktop operating systems (both 32 and 64 bit) |
| ☐ Laptops |
| ☐ Video files |
| ☐ Audio files |
| ☐ Facebook |
| ☐ Twitter |
| ☐ You Tube |
| ☐ Other (Identify) |

### 2.1.3   General Questions

Provide a brief response for each of the following questions listed below.

Identification, Preservation, and Collection:

1. Describe your solution's process for segregating search results by custodian and assigning back to custodian for review.

2. Describe your solution's search capabilities.

3. Describe how your solution utilizes existing or builds independent indices.

OAG eDiscovery Tools RFP
Appendix A

4.  Describe how your solution avoids missing potential evidence by supporting compound searches and unpacking and searching embedded files, several layers deep.

5.  Describe how your solution provides defensible tracking of culling criteria.

6.  Describe your solution's filtering capabilities.  Does the initial search string "filter down to the attachments on first pass automatically or do you have to filter attachments separately/manually?

7.  Describe how your solution captures and preserves data, including metadata, to maintain chain of custody and ensure defensibility.

8.  Does your solution capture and manage metadata for all file types supported by your solution.  If not, list which file types metadata is not captured.

9.  Please describe how your solution preserves data and prevents spoliation.

## SECTION 3. PROCESSING, ANALYSIS, REVIEW, AND PRODUCTION

For each requirement, indicate if the requirement is supported directly by the proposed solution(s).  If more information or clarification is required  enter that information in the Vendor Response column.

| REQUIREMENT | REQUIREMENT SUPPORTED? (Y/N) | VENDOR RESPONSE |
|---|---|---|
| **Processing** | | |
| Provides statistical and graphical analysis of collected data based on custodian, date  range, and file type prior to processing | | |
| Ability to filter collected data by custodian, date, file type, and file size prior to  processing | | |
| Ability to filter collected data by NSRL  database list (de-NIST) prior to processing | | |

OAG eDiscovery Tools RFP
Appendix A

| REQUIREMENT | REQUIREMENT SUPPORTED? (Y/N) | VENDOR RESPONSE |
|---|---|---|
| Ability to filter collected data by customer defined known file lists prior to processing | | |
| Ability to process (extract text and metadata) from all file types specified in the Identification section above | | |
| Ability to de-duplicate records and data of a single custodian across multiple data stores and across all custodians | | |
| Provides a pre-processing scan of all documents to detect and repair file-level errors prior to full processing | | |
| Support average processing speeds of at least 10 GB per hour | | |
| Support for processing on content containing international languages (Unicode). Please detail the languages that are and are not supported | | |
| Support for processing reports to understand file errors, warnings, and key processing metrics such as de-duplication rates, total number of messages and loose files, and average document size | | |
| Supports time-zone settings; if yes, explain how | | |
| **Analysis** | | |
| Support for all analysis features to operate on and across the entire matter, including matters up to 5 million documents. Please detail what features do not analyze content across the entire case data set at once | | |

OAG eDiscovery Tools RFP
Appendix A

| REQUIREMENT | REQUIREMENT SUPPORTED? (Y/N) | VENDOR RESPONSE |
|---|---|---|
| Supports wildcards and proximity searching | | |
| Supports stemming and literal searches | | |
| Supports search of content in tags or document notations | | |
| Support for search on international content (Unicode) | | |
| Support for searches by document ID, source location, custodian or processing batch | | |
| Support search by senders, recipients, urgency, and direction (e.g., internal email only) of email | | |
| Support search by attachment content or type | | |
| Describe how your solution helps us with Rule 26(f) | | |
| Describe how your solution ensures the defensibility of keyword selection and searching procedures to avoid eDiscovery defensibility issues | | |
| Provides automatic documentation and/or reporting of executed searches and keyword variation selections | | |
| Support real-time and iterative sampling of search results | | |

OAG eDiscovery Tools RFP
Appendix A

| REQUIREMENT | REQUIREMENT SUPPORTED? (Y/N) | VENDOR RESPONSE |
|---|---|---|
| Ability to preview search results prior to running searches to remove obvious false positives | | |
| Support for relevance ranking: Retrieved documents that most closely satisfy the query criteria should be listed or ranked above those that match less exactly.  Ranking should also place a higher priority on matches in a title or subject than on those in body text | | |
| Use of directory information such as names, email addresses, and department groupings to extend the values of certain metadata fields, such as message recipients, or create new metadata, such as departments creating or receiving content | | |
| Provides ability to visually track email threads for responses based on content and metadata, not just metadata | | |
| Ability to group documents and emails together that pertain to the same/similar topic | | |
| Ability to identify and group documents based on language | | |
| Ability to identify and group documents by frequently found nouns or noun phrases | | |
| Ability to organize and group related loose files for analysis | | |
| Ability to organize and group related custodians for analysis | | |
| Provides hit highlighting in text, metadata, and attachments | | |

OAG eDiscovery Tools RFP
Appendix A

| REQUIREMENT | REQUIREMENT SUPPORTED? (Y/N) | VENDOR RESPONSE |
|---|---|---|
| Cull-down and filtering: Ability to filter documents across entire case by tag, sender domain, sender group, sender name, recipient domain, recipient group, recipient name, document type, custodian, and language type and displays exact hit counts across the entire search result set for every filter | | |
| **Review** | | |
| Ability to divide records so each reviewer is assigned a specific range or percentage of records, or by the source or significance of a subset of records. | | |
| Ability to organize documents intended for review into access controlled nested folders | | |
| Ability to customize tags, issue codes, and tagging rights | | |
| Support for hierarchical tagging structures that define and require sub-tags based on parent tags | | |
| Support for tagging or classification of documents via a single mouse click | | |
| System provides ability for individual and bulk categorization and tagging | | |
| Allows privileged communication to be tagged and a privilege log to be created | | |
| Support for HTML preview of all documents | | |

OAG eDiscovery Tools RFP
Appendix A

| REQUIREMENT | REQUIREMENT SUPPORTED? (Y/N) | VENDOR RESPONSE |
|---|---|---|
| Annotation is supported directly in the review for all document formats | | |
| Provides ability to view documents within a native viewer, abdicating the need for reviewers to load applications on their workstations | | |
| Support for hit highlighting of searched terms during review in native viewer or HTML preview | | |
| Support for redaction of text, areas within a document, and entire pages | | |
| Provides redaction verification capabilities | | |
| Provides find-and-redact functionality | | |
| Identifies and displays items related to the document in review | | |
| Provides review progress and productivity analysis for each reviewer | | |
| Automatically documents reviewer actions such as login, logout, search, tag, print, and export | | |
| **Production** | | |
| Support for export to CSV with custom fields | | |

OAG eDiscovery Tools RFP
Appendix A

| REQUIREMENT | REQUIREMENT SUPPORTED? (Y/N) | VENDOR RESPONSE |
|---|---|---|
| Support for image-based productions such as TIFF | | |
| Support to "re- duplicate" documents by custodian on export | | |
| Support for export to Concordance file format | | |
| Support for export to CT Summation format | | |
| Support for export to EDRM XML compatible formats – Describe specification and version | | |
| Support for producing documents one at a time or in batch | | |
| Ability to organize production sets using a folder based structure | | |
| Support for produced redactions, where text is secured from unauthorized display, search, and review. | | |
| Support for custom header, footer, and watermark labeling of documents in image-based production | | |
| Support for Bates stamping | | |

OAG eDiscovery Tools RFP
Appendix A

### 3.1.1  Functionality – Processing, Review, Analysis, and Production

Please indicate what functions your product offers below by marking the corresponding checkbox.  Any item not checked will be interpreted as a function that your product cannot provide.  Items marked with an asterisk (*) are required.  *Vendors who do not provide required (*) functions will be disqualified.*

| PROCESSING, REVIEW, ANALYSIS, AND PRODUCTION |
| --- |
| ☐ *Ability to unpack embedded files (e.g., emails and attachments) at least 3 levels deep and maintain parent/child relationships |
| ☐ *Ability to search embedded files (e.g., emails and attachments) at least 3 levels deep |
| ☐ *De-NISTing |
| ☐ *De-duplication |
| ☐ *Exception Log |
| ☐ Case De-Duplication |
| ☐ Cross-Custodian De-Duplication |
| ☐ Near De-duplication |
| ☐ Identify password protected documents |
| ☐ Process password protected documents |
| ☐ Identify encrypted files |
| ☐ Process encrypted files |
| ☐ *Multi-keyword search |
| ☐ *Boolean search |
| ☐ *Advanced search interface |
| ☐ *Compound document searching |
| ☐ *Ability to save searches |
| ☐ *Ability to save search results |
| ☐ *Ability to import custom redaction codes |
| ☐ *Tagging |
| ☐ *Custom tags |
| ☐ *TIFF native files |
| ☐ *Filtering |

OAG eDiscovery Tools RFP
Appendix A

| PROCESSING, REVIEW, ANALYSIS, AND PRODUCTION CONTINUED | |
|---|---|
| ☐ | Filtering on custodian |
| ☐ | Filtering on email sender domain |
| ☐ | Filtering on keyword |
| ☐ | Filtering on hash value |
| ☐ | Filtering on system metadata |
| ☐ | *Analysis Reporting |
| ☐ | *Redaction |
| ☐ | Semi transparent redaction |
| ☐ | Auto redaction |
| ☐ | Subset search |
| ☐ | Conceptual searching |
| ☐ | Find similar search |
| ☐ | Search hit highlighting |
| ☐ | Multi-Language support |
| ☐ | Relevance ranking of search results |
| ☐ | Decision Tree Tagging |
| ☐ | Identification of data gaps |
| ☐ | Discussion thread analysis |
| ☐ | Topic clustering |
| ☐ | Near native viewing/viewer |
| ☐ | *Bates numbering |
| ☐ | *Full audit trail reporting – (Defensibility Log) |
| ☐ | *Privilege log report |
| ☐ | *Export metadata |
| ☐ | *Export final product in PDF, TIFF, and native |
| ☐ | *Ability to create Summation and/or Concordance load files |
| ☐ | OCR image files |

OAG eDiscovery Tools RFP
Appendix A

## PROCESSING, REVIEW, ANALYSIS, AND PRODUCTION CONTINUED

☐ Ability to create other non-specified load files.  Please specify:_____

### 3.2.2  General Questions

Provide a brief response for each of the following questions.

__Processing:__

1. Describe how your solution ensures and tracks data defensibility during processing.

2. Describe how your solution identifies and removes duplicates and (if applicable) near duplicates.

3. Describe how your solution processes email, attachments, and embedded files.

4. Describe your solution's options for converting MS Excel spreadsheets and MS Access databases to TIFF.

5. Describe how your solution imports custom redaction codes.

__Analysis:__

6. Describe your solution's analysis reporting capabilities.

__Review:__

7. Describe how your solution provides relevance ranking for search results.

8. Describe how your solution provides history, full audit trail, and detailed access controls.

9. Describe your solution's limitations, if any, on the number of concurrent users doing document review at the same time.

10. Describe your solution's limitations, if any, on the number of cases that can be in review at one time?

11. Describe how your solution applies the same redaction and/or tag to duplicate documents to eliminate redundant document review?

__Production:__

12. Describe how your solution exports production search results.

OAG eDiscovery Tools RFP
Appendix A

13. Describe how your solution exports metadata fields.

14. Describe how your solution creates exception reports and what information is included.

15. What types of conflict checking are done before productions are generated?

16. What types of quality assurance processes exist to validate production sets before release?

17. Describe how your solution assigns tasks and tracks the status of document review.


## SECTION 4. TECHNICAL SYSTEM REQUIREMENTS

### 4.1 OAG Computing Environment

Please indicate whether or not your system is compatible/integratable with the items listed below by marking the corresponding checkbox.  Any item not checked will be interpreted as an item that is not compatible/integratable with your system.  Only items marked with an asterisk (*) are required.  *Vendors who do not provide required (*) compatibility/integration will be disqualified.*

| OAG COMPUTING ENVIRONMENT |
| --- |
| ☐ *Active Directory |
| ☐ *Hosted on the OAG's local area network (LAN) |
| ☐ *Hosted by Vendor |
| ☐ *Microsoft Server 2008R2 |
| ☐ *Microsoft Windows 7 (if desktop application) |
| ☐ *Microsoft Outlook 2007 and higher |
| ☐ *Microsoft Office 2007 and higher |
| ☐ Network Attached Storage (NAS) devices |
| ☐ Direct Attached Storage (DAS) |
| ☐ Storage Area Network (SAN) devices (block & file) |

## 4.2  General Questions

Provide a brief response for each of the following questions.

1. Please provide the minimum and recommended system requirements for your product.

2. Please describe your solution's server requirements (i.e. physical servers, virtual servers, storage (direct attached, SAN, NAS)).

3. Describe how your solution is implemented in a virtualized server environment.

4. What file types are supported by the application?

5. What is the underlying database and what limitations exist on space capacity administrative or user capacity, or access?

6. Describe how your solution integrates with Active Directory for permission setting.


## SECTION 5.  TOTAL COST OF OWNERSHIP

### 5.1   Costs

Provide a detailed price quote for the total cost of ownership of your product.  This should include all hardware, software, maintenance, training, and other costs associated with your product with pricing for each component.

**Assumptions:**

- Solution A:
  - 200 Custodians (for individual pricing models)
  - 50 Seats (for concurrent pricing models)
  - Licensing will be perpetual

- Solution B:
  - 200 Custodians (for individual pricing models)
  - 50 Seats (for concurrent pricing models)
  - Licensing will be perpetual

- Solution C:
  - 200 Custodians (for individual pricing models)
  - 50 Seats (for concurrent pricing models)
  - Licensing will be perpetual

Provide a four-year cost summary below.

| Costs | Total | Year 1 | Year 2 | Year 3 | Year 4 |
|---|---|---|---|---|---|
| Software Licensing<br>☐ Individual<br>☐ Concurrent | | | | | |
| Maintenance | | | | | |
| Hosting | | | | | |
| Hardware | | | | | |
| Implementation | | | | | |
| Integration | | | | | |
| Training | | | | | |
| Documentation | | | | | |
| Project Management | | | | | |
| Miscellaneous | | | | | |
| **Total:** | | | | | $ |

**Provide per GB cost and total costs based upon assumptions noted*:**

| Service | Unit | In | Out | 1 GB - 100GB | | 101 GB - 1TB | |
|---|---|---|---|---|---|---|---|
| | | | | Price | Cost | Price | Cost |
| Collection | GB | | 100% | | | | |
| Pre-process | GB | 100% | 50% | | | | |
| Process | GB | 50% | 30% | | | | |
| Host | GB | 50% | 5% | | | | |
| Captions | Page | | | | | | |
| Cost per GB | | | | | | | |

## *The above table must be completed based upon the following scenarios:

**Scenario 1:   75 GB data collected / Scenario 2: 500 GB data collected Reduction during pre-processing of 50%.  Assume hosting of 50% of collection for 6 months. Assume Production of 5% of collections. Assume 5,000 pages per GB.**

**5.2  General Questions**

Provide a detailed response for each of the following questions.

1. **Software Licensing:** List, describe, and record the licensing, implementation, maintenance, support, and training fees associated with your proposed software.
2. **Maintenance: (**a) Describe what is included with the annual maintenance cost including software updates and technical assistance.  (b) Describe your service call escalation policy for your proposed solution.

OAG eDiscovery Tools RFP
Appendix A

3. **Hardware:** List, describe, and record the cost of each piece of hardware that is required to optimally run the software.

4. **Hosting:**  Describe your solution's pricing model for hosting case data.

5. **Implementation:** Describe your solution's implementation process and methodologies and any labor, equipment, supplies, or other costs associated with implementing your proposed software.

6. **Integration:** Describe any labor, equipment, supplies, or other costs associated with integrating your solution into our current architecture and back-end systems.

7. **Training:** If there are training options associated with our proposed software list, describe and record the cost of each option.

8. **Documentation:** If there is user or technical documentation available for your solution list, describe and record the cost of each documentation.

9. **Project Management:** If there are project management fees associated with your proposed software, list and describe these fees.

10. **Miscellaneous:** List, describe, and record any other costs associated with your proposed software solution.

# Appendix A
## RFP OAG eDiscovery Tools

| Complete the following information – please print or type. |
|---|
| Company Name |
| Address |
| City                                   State                    Zip Code |
| Authorized Representative Name |
| Title                                   Telephone Number |
| Email |
| Vendor's Signature (Sign in ink)                                   Date |

# Appendix B:
### Customer References
### RFP OAG eDiscovery Tools

Please provide four customer references that the Alabama OAG may contact that have used the solution you are proposing for at least six months:

**REFERENCE 1**

| | |
|---|---|
| Company Name | |
| Contact Name | |
| Contact Telephone Number | |
| Contact E-mail | |
| Company Address | |
| Description of Solution provided | |
| Benefits of Solution provided | |

**REFERENCE 2**

| | |
|---|---|
| Company Name | |
| Contact Name | |
| Contact Telephone Number | |
| Contact E-mail | |
| Company Address | |
| Description of Solution provided | |
| Benefits of Solution provided | |

**REFERENCE 3**

| | |
|---|---|
| Company Name | |
| Contact Name | |
| Contact Telephone Number | |
| Contact E-mail | |
| Company Address | |
| Description of Solution provided | |
| Benefits of Solution provided | |

**REFERENCE 4**

| | |
|---|---|
| Company Name | |
| Contact Name | |
| Contact Telephone Number | |
| Contact E-mail | |
| Company Address | |
| Description of Solution provided | |
| Benefits of Solution provided | |

OAG eDiscovery Tools RFP
Appendix B

# Appendix B:
**Customer References**
**RFP OAG eDiscovery Tools**

| **Complete the following information – please print or type.** |
|---|
| Company Name |
| Address |
| City                          State              Zip Code |
| Authorized Representative Name |
| Title                          Telephone Number |
| Email |
| Vendor's Signature (Sign in ink)                     Date |

# APPENDIX C

This Office of the Attorney General Contract Packet contains required documentation and procedural information mandated by law, of all State of Alabama governmental entities when securing contracts.  Contractors must follow all guidelines and procedures in order for a contract to be executed between the contractor and the Office of the Attorney General.

## Required Contract Forms and Documentation Overview

(Note: All forms are available in electronic format via our website at http://www.ago.alabama.gov/Page-Resources)

**Contract Review Report**
The Contract Review Report form is the required cover page for non-legal services contracts submitted to Contract Review Permanent Legislative Oversight Committee.

**Disclosure Statement (**Section 41-16-82, Code of Alabama 1975)
The disclosure statement must be completed and filed with all contracts to the State of Alabama in excess of five thousand dollars ($5,000).

Pursuant to Section 41-16-84 (b), Code of Alabama 1975 the State of Alabama shall not enter into any contract or appropriate any public funds with any person who refuses to provide information as required.

Pursuant to Section 41-16-86, Code of Alabama 1975, any person who knowingly provides misleading or incorrect information on the disclosure statement shall be subject to a civil penalty of ten percent (10%) of the amount of the transaction, not to exceed ten thousand dollars ($10,000).  The contract shall be voidable by the awarding entity.

**Standard Invoice for Non-Attorney Services**
The Attorney General requires the submission of invoices within the contracting period using the Standard Invoice for Non-Attorney Services.  A copy of this form is included in this Appendix.

**W-9 Form and Instructions**
In order for payment to be processed with the Department of Finance, contractors are required to submit a completed IRS form W-9.  The W-9 provides your taxpayer identification number for you or your business when providing services to the state.

**Additional Requirements**
If the Vendor is located in Alabama or employs an individual or individuals within the State of Alabama, the Vendor shall provide a copy of its Employment Eligibility Verification (E-Verify) Memorandum of Understanding (MOU).  Further, the Vendor must also complete and return the Certificate of Compliance form.

If the Vendor is not located in the State of Alabama and does not employ an individual or individuals within the State of Alabama, then an E-Verify MOU is not required.  Instead, the Vendor shall complete and return the certification of Compliance form.

## Disclosure Statement Information and Instructions

Section 41-16-82, *Code of Alabama* 1975 requires the disclosure statement to be completed and filed with all proposals, bids, contracts, or grant proposals to the State of Alabama in excess of $5,000. The disclosure statement is not required for contracts for gas, water, and electric services where no competition exists, or where rates are fixed by law or ordinance. In circumstances where a contract is awarded by competitive bid, the disclosure statement shall be required only from the person receiving the contract and shall be submitted within ten (10) days of the award.

A copy of the disclosure statement shall be filed with the awarding entity and the Department of Examiners of Public Accounts, and if it pertains to a state contract, a copy shall be submitted to the Contract Review Permanent Legislative Oversight Committee. The address for the Department of Examiners of Public Accounts is as follows: 50 N. Ripley Street, Room 3201, Montgomery, Alabama 36130-2101. If the disclosure statement is filed with a contract, the awarding entity should include a copy with the contract when it is presented to the Contract Review Permanent Legislative Oversight Committee.

Pursuant to Section 41-16-84 (b), *Code of Alabama* 1975 the State of Alabama shall not enter into any contract or appropriate any public funds with any person who refuses to provide information as required.

Pursuant to Section 41-16-86, *Code of Alabama* 1975, any person who knowingly provides misleading or incorrect information on the disclosure statement shall be subject to a civil penalty of ten percent (10%) of the amount of the transaction, not to exceed $10,000.00. Also, the contract or grant shall be voidable by the awarding entity.

### Definitions as Provided in Section 41-16-81, *Code of Alabama* 1975

**(1)** **Family Member of a Public Employee** – The spouse or a dependent of the public employee.

**(2)** **Family Member of a Public Official** – The spouse, a dependent, an adult child and his or her spouse, a parent, a spouse's parents, or a sibling and his or her spouse, of the public official.

**(3)** **Family Relationship** – A person has a family relationship with a public official or public employee if the person is a family member of the public official or public employee.

**(4)** **Person** – An individual, firm, partnership, association, joint venture, cooperative, or corporation, or any other group or combination acting in concert.

**(5)** **Public Official and Public Employee** - These terms shall have the same meanings ascribed to them in Sections 36-25-1(23) and 36-25-1(24), *Code of Alabama* 1975, (see below) except for the purposes the disclosure requirements of this article, the terms shall only include persons in a position to influence the awarding of a grant or contract who are affiliated with the awarding entity. Notwithstanding the foregoing, these terms shall also include the Governor, Lieutenant Governor, members of the cabinet of the Governor, and members of the Legislature. (Note: The definitions for public official and public employee are now denoted as Sections 36-25-1 (25) and 36-25-1 (26), *Code of Alabama* 1975. However, Section 41-16-86 (5), *Code of Alabama* 1975 has not been codified to reflect such updates.)

Section 36-25-1(25), *Code of Alabama* 1975, defines a **public employee** as any person employed at the state, county or municipal level of government or their instrumentalities, including governmental corporations and authorities, but excluding employees of hospitals or other health care corporations including contract employees of those hospitals or other health care corporations, who is paid in whole or in part from state, county, or municipal funds. For purposes of this chapter, a public employee does not include a person employed on a part-time basis whose employment is limited to providing professional services other than lobbying, the compensation for which constitutes less than 50 percent of the part-time employee's income.

Section 36-25-1(26), *Code of Alabama* 1975, defines a **public official** as any person elected to public office, whether or not that person has taken office, by the vote of the people at state, county, or municipal level of government or their instrumentalities, including governmental corporations, and any person appointed to a position at the state, county, or municipal level of government or their instrumentalities, including governmental corporations. For purposes of this chapter, a public official includes the chairs and vice-chairs or the equivalent offices of each state political party as defined in Section 17-13-40, *Code of Alabama* 1975.

### Instructions

Complete all lines as indicated. If an item does not apply, denote N/A (not applicable). If you cannot include required information in the space provided, attach additional sheets as necessary.

**THE DISCLOSURE STATEMENT MUST BE SIGNED, DATED, AND NOTARIZED PRIOR TO SUBMISSION.**

---------------------------------------------------------------------------------------

State of Alabama · Office of the Attorney General · www.ago.alabama.gov
501 Washington Avenue · Montgomery, AL 36130



# State of Alabama
# Disclosure Statement

**Required by Article 3B of Title 41, *Code of Alabama* 1975**

---

ENTITY COMPLETING FORM

---

ADDRESS

---

CITY, STATE, ZIP | TELEPHONE NUMBER
(    )

---

STATE AGENCY/DEPARTMENT THAT WILL RECEIVE GOODS, SERVICES, OR IS RESPONSIBLE FOR GRANT AWARD

**OFFICE OF THE ATTORNEY GENERAL**

---

ADDRESS

**501 WASHINGTON AVENUE**

---

CITY, STATE, ZIP | TELEPHONE NUMBER

**MONTGOMERY          ALABAMA** | ( **334** ) **242-7305**

---

This form is provided with:

☐ Contract   ☐ Proposal   ☒ Request for Proposal   ☐ Invitation to Bid   ☐ Grant Proposal

---

Have you or any of your partners, divisions, or any related business units previously performed work or provided goods to any State Agency/Department in the current or last fiscal year?

☐ Yes   ☐ No

If yes, identify below the State Agency/Department that received the goods or services, the type(s) of goods or services previously provided, and the amount received for the provision of such goods or services.

| STATE AGENCY/DEPARTMENT | TYPE OF GOODS/SERVICES | AMOUNT RECEIVED |
|---|---|---|
| | | |
| | | |

---

Have you or any of your partners, divisions, or any related business units previously applied and received any grants from any State Agency/Department in the current or last fiscal year?

☐ Yes   ☐ No

If yes, identify the State Agency/Department that awarded the grant, the date such grant was awarded, and the amount of the grant.

| STATE AGENCY/DEPARTMENT | DATE GRANT AWARDED | AMOUNT OF GRANT |
|---|---|---|
| | | |
| | | |

---

**1.** List below the name(s) and address(es) of all public officials/public employees with whom you, members of your immediate family, or any of your employees have a family relationship and who may directly personally benefit financially from the proposed transaction. Identify the State Department/Agency for which the public officials/public employees work. (Attach additional sheets if necessary.)

| NAME OF PUBLIC OFFICIAL/EMPLOYEE | ADDRESS | STATE DEPARTMENT/AGENCY |
|---|---|---|
| | | |
| | | |

---

**PAGE 1 of 2**

**2.** List below the name(s) and address(es) of all family members of public officials/public employees with whom you, members of your immediate family, or any of your employees have a family relationship and who may directly personally benefit financially from the proposed transaction. Identify the public officials/public employees and State Department/Agency for which the public officials/public employees work. (Attach additional sheets if necessary.)

| NAME OF FAMILY MEMBER | ADDRESS | NAME OF PUBLIC OFFICIAL/ PUBLIC EMPLOYEE | STATE DEPARTMENT/ AGENCY WHERE EMPLOYED |
|---|---|---|---|
| | | | |
| | | | |

If you identified individuals in items one and/or two above, describe in detail below the direct financial benefit to be gained by the public officials, public employees, and/or their family members as the result of the contract, proposal, request for proposal, invitation to bid, or grant proposal. (Attach additional sheets if necessary.)

Describe in detail below any indirect financial benefits to be gained by any public official, public employee, and/or family members of the public official or public employee as the result of the contract, proposal, request for proposal, invitation to bid, or grant proposal. (Attach additional sheets if necessary.)

List below the name(s) and address(es) of all paid consultants and/or lobbyists utilized to obtain the contract, proposal, request for proposal, invitation to bid, or grant proposal:

| NAME OF PAID CONSULTANT/LOBBYIST | ADDRESS |
|---|---|
| | |
| | |

*By signing below, I certify under oath and penalty of perjury that all statements on or attached to this form are true and correct to the best of my knowledge. I further understand that a civil penalty of ten percent (10%) of the amount of the transaction, not to exceed $10,000.00, is applied for knowingly providing incorrect or misleading information.*

_____     _____
Signature                                                                           Date

_____     _____     _____
Notary's Signature                                                            Date                          Date Notary Expires

**Article 3B of Title 41, *Code of Alabama* 1975 requires the disclosure statement to be completed and filed with all proposals, bids, contracts, or grant proposals to the State of Alabama in excess of $5,000.**

# NON-ATTORNEY SERVICES
## (Experts, Court Reporters, etc.)

Name of Hiring Attorney: _____

Style of Case: _____ v. _____

Case Number: _____

Type of Service: _____

Name of Provider: _____

Mailing Address _____

City: _____ State: _____ Zip: _____

Name of Person Providing Service, if Different than Above: _____

Business Phone: ( ) _____ Taxpayer ID#: _____

E-mail Address: _____

| Date | Description of Services Provided | Hours (in tenths) | Approved Rate | | Amount |
|------|----------------------------------|-------------------|---------------|---|--------|
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |
| | | | | $ | |

**TOTALS** _____ **$** _____

State of _____

_____ County

## AFFIDAVIT

Before me, the undersigned Notary Public, in and for the said County and State, personally appeared the undersigned affiant, who is known to me and after first being duly sworn by me deposes and states under oath of as follows: that the claims for payment herewith made against the State of Alabama reflect actual services performed and/or expenses for the State of Alabama and are in all respects true and correct.

_____
Signature of Affiant

Sworn to and subscribed before me this _____ day of _____ 20____

My Commission expires: _____

_____
Notary Public Signature

NOTE: Attorney/Firm must provide supporting documentation of payment for services.

Revised November 13, 2013

Form **W-9**
(Rev. December 2011)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
# Identification Number and Certification

**Give Form to the
requester. Do not
send to the IRS.**

Print or type
See Specific Instructions on page 2.

Name (as shown on your income tax return)

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

☐ Individual/sole proprietor   ☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ - - - - - - - - -

☐ Other (see instructions) ▶

☐ Exempt payee

Address (number, street, and apt. or suite no.)

Requester's name and address (optional)

City, state, and ZIP code

List account number(s) here (optional)

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

Employer identification number

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

**Sign
Here**   Signature of
U.S. person ▶                                    Date ▶

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

• The U.S. owner of a disregarded entity and not the entity,

• The U.S. grantor or other owner of a grantor trust and not the trust, and

• The U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS a percentage of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

Also see *Special rules for partnerships* on page 1.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account, for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Name

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name/disregarded entity name" line.

**Partnership, C Corporation, or S Corporation.** Enter the entity's name on the "Name" line and any business, trade, or "doing business as (DBA) name" on the "Business name/disregarded entity name" line.

**Disregarded entity.** Enter the owner's name on the "Name" line. The name of the entity entered on the "Name" line should never be a disregarded entity. The name on the "Name" line must be the name shown on the income tax return on which the income will be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a domestic owner, the domestic owner's name is required to be provided on the "Name" line. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on the "Business name/disregarded entity name" line. If the owner of the disregarded entity is a foreign person, you must complete an appropriate Form W-8.

**Note.** Check the appropriate box for the federal tax classification of the person whose name is entered on the "Name" line (Individual/sole proprietor, Partnership, C Corporation, S Corporation, Trust/estate).

**Limited Liability Company (LLC).** If the person identified on the "Name" line is an LLC, check the "Limited liability company" box only and enter the appropriate code for the tax classification in the space provided. If you are an LLC that is treated as a partnership for federal tax purposes, enter "P" for partnership. If you are an LLC that has filed a Form 8832 or a Form 2553 to be taxed as a corporation, enter "C" for C corporation or "S" for S corporation. If you are an LLC that is disregarded as an entity separate from its owner under Regulation section 301.7701-3 (except for employment and excise tax), do not check the LLC box unless the owner of the LLC (required to be identified on the "Name" line) is another LLC that is not disregarded for federal tax purposes. If the LLC is disregarded as an entity separate from its owner, enter the appropriate tax classification of the owner identified on the "Name" line.

**Other entities.** Enter your business name as shown on required federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name/disregarded entity name" line.

# Exempt Payee

If you are exempt from backup withholding, enter your name as described above and check the appropriate box for your status, then check the "Exempt payee" box in the line following the "Business name/disregarded entity name," sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

The following payees are exempt from backup withholding:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2),

2. The United States or any of its agencies or instrumentalities,

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities,

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation,

7. A foreign central bank of issue,

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States,

9. A futures commission merchant registered with the Commodity Futures Trading Commission,

10. A real estate investment trust,

11. An entity registered at all times during the tax year under the Investment Company Act of 1940,

12. A common trust fund operated by a bank under section 584(a),

13. A financial institution,

14. A middleman known in the investment community as a nominee or custodian, or

15. A trust exempt from tax under section 664 or described in section 4947.

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 15.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
| --- | --- |
| Interest and dividend payments | All exempt payees except for 9 |
| Broker transactions | Exempt payees 1 through 5 and 7 through 13. Also, C corporations. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt payees 1 through 7 [2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney, and payments for services paid by a federal executive agency.

# Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited Liability Company (LLC)* on page 2), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at *www.ssa.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

# Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, below, and items 4 and 5 on page 4 indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on the "Name" line must sign. Exempt payees, see *Exempt Payee* on page 3.

**Signature requirements.** Complete the certification as indicated in items 1 through 3, below, and items 4 and 5 on page 4.

1. **Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

2. **Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. **Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner [3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulation section 1.671-4(b)(2)(i)(A)) | The grantor* |
| **For this type of account:** | **Give name and EIN of:** |
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity [4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulation section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 1.

**\*Note.** Grantor also must provide a Form W-9 to trustee of trust.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, social security number (SSN), or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.ftc.gov/idtheft* or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS for interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

State of _____)
County of _____)

## CERTIFICATE OF COMPLIANCE WITH THE BEASON-HAMMON ALABAMA TAXPAYER AND CITIZEN PROTECTION ACT (ACT 2011-535, as amended by ACT 2012-491)

DATE:

RE Contract/Grant/Incentive (describe by number or subject):

_____ by and between
_____ (Contractor/Grantee) and
_____ (State Agency, Department or Public Entity

The undersigned hereby certifies to the State of Alabama as follows:

1.      The undersigned holds the position of _____ with the Contractor/Grantee named above, and is authorized to provide representations set out in this Certificate as the official and binding act of that entity, and has knowledge of the provisions of THE BEASON-HAMMON ALABAMA TAXPAYER AND CITIZEN PROTECTION ACT (ACT 2011-535 of the Alabama Legislature, as amended by ACT 2012-491) which is described herein as "the Act."

2.      Using the following definitions from Section 3 of the Act, select and initial either (a) or (b), below, to describe the Contractor/Grantee's business structure.

BUSINESS ENTITY.   Any person or group of persons employing one or more persons performing or engaging in any activity, enterprise, profession, or occupation for gain, benefit, advantage, or livelihood, whether for profit or not for profit.
a.      Self-employed individuals, business entities filing articles of incorporation, partnerships, limited partnerships, limited liability companies, foreign corporations, foreign limited partnerships, and foreign limited liability companies authorized to transact business in this state, business trusts, and any business entity that registers with the Secretary of State.
b.      Any business entity that possesses a business license, permit, certificate, approval, registration, charter, or similar form of authorization issued by the state, any business entity that is exempt by law from obtaining such a business license, and any business entity that is operating unlawfully without a business license.

EMPLOYER.   Any person, firm, corporation, partnership, joint stock association, agent, manager, representative, foreman, or other person having control or custody of any employment, place of employment, or of any employee, including any person or entity employing any person for hire within the State of Alabama, including a public employer. This term shall not include the occupant of a household contracting with another person to perform casual domestic labor within the household.

_____ (a) The Contractor/Grantee is a business entity or employer as those terms are defined in Section 3 of the Act.
_____ (b) The Contractor/Grantee is not a business entity or employer as those terms are defined in Section 3 of the Act.

3.      As of the date of this Certificate, the Contractor/Grantee does not knowingly employ an unauthorized alien within the State of Alabama and hereafter it will not knowingly employ, hire for employment, or continue to employ an unauthorized alien within the State of Alabama;

4.      The Contractor/Grantee is enrolled in E-Verify unless it is not eligible to enroll because of the rules of that program or other factors beyond its control.

Certified this _____ day of _____ 20_____.

_____
                                        Name of Contractor/Grantee/Recipient

By: _____

Its _____

The above Certification was signed in my presence by the person whose name appears above, on this _____ day of _____ 20_____.

WITNESS: _____

_____
                                        Printed Name of Witness

# <u>REQUIRED CONTRACT LANGUAGE</u>

**PROFESSIONAL SERVICES CONTRACT**
**BETWEEN THE ALABAMA OFFICE OF THE ATTORNEY GENERAL**
**AND**
_____

Because of an identifiable need for professional services to assist the Office of the Attorney General (hereinafter referred to as the Office) in conducting eDiscovery services, _____ (hereinafter referred to as the Contractor) and the Office have entered into a contract for the provision of such services effective _____.

WHEREAS, the Office has statutory authority to enter into contracts with any private person, organization, or group; and

WHEREAS, the Office has a need for the professional services;

NOW, therefore, the Office and the Contractor, intending to be mutually bound and in consideration of the mutual covenants and stipulations set out herein, agree as follows:

**I.      Services to be Provided:**

The Contractor represents to the Office that it can and will provide eDiscovery services as outlined in Attachment One, which is the Office's Request for Proposal (RFP) that was distributed on _____.  The Contractor and the Office agree that the provision of services shall be consistent with the terms outlined in the Contractor's Response to the Office's RFP, which is herein identified as Attachment Two.

**II.     Period of Contract:**

This contract shall be let for a period of two years beginning _____.  At that time, the Contractor will commence performance of the contract and shall complete performance on or before _____.  Such contract is also subject to two successive renewals of two years per renewal period.

**III.     Termination of Contract:**

A.   The contract may be terminated at any earlier date upon mutual agreement of the parties, or upon thirty days written notice by one of the contracting parties to the other contracting party.

B.   The Contractor will cease work upon receipt of the Office's termination notice, and all costs incurred prior to the issuance and receipt of cancellation shall be paid by the Office.

C.   It is expressly understood and agreed by the parties hereto that the Office shall, in all events, anything herein to the contrary notwithstanding, have the option to terminate this Contract at the end of any fiscal year of the State of Alabama so as not to be obligated under the terms herein for the following fiscal year.

**IV.     Financial Arrangements:**

A.     The parties hereto agree that this contract is a fee for services contract and that the fees for eDiscovery services shall be charged as specified in Attachment Two.

          1.   In the event of cancellation of the contract by either party, payment shall be made as specified above.

B.     The Contractor shall submit an itemized written statement or invoice for services provided during the course of the contract on a monthly basis using the Standard Invoice for Non-Attorney Services.  The presentation of the invoice shall adhere to the RFP requirements as identified in Appendix C of Attachment One.

**V.     Indemnity:**

A.     To the fullest extent permitted by law, the Contractor shall defend, indemnify, and hold harmless the OAG, and its agents, employees, and consultants from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of, related to, or resulting from performance of the services, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property, including loss of use resulting therefrom, and is caused in whole or in part by negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly

employed by them, or anyone for whose acts they may be liable, regardless of whether such claim, damage, loss or expense is caused in part, or is alleged but not legally established to have been caused in whole or in part by the negligence or other fault of a party indemnified hereunder.

1. This indemnification shall extend to all claims, damages, losses and expenses for injury or damage that arise out of, relate to, or result from performance of the services.

2. This indemnification does not apply to the extent of the sole negligence of the OAG.

## VI.  Insurance:

The Contractor agrees to secure and maintain insurance as required in Appendix D of Attachment One, which a part of this Contract by reference.  All insurance shall be provided by insurers licensed to do business in Alabama and insurers must be rated "A-" or better by the A.M. Best Company.  Before beginning any work, the Contractor shall have on file with the OAG a valid Certificate of Insurance showing the types and limits of insurance carried.

## VII.  Merit System Benefits Excluded:

It is further understood that the Contractor is an independent contractor; and, as such is not entitled to the benefits of the State Merit System Act for any work which is done for the Office under any terms of this agreement.

## VIII.  Findings Confidential:

Any reports, information, data, etc., given to or prepared or assembled by the Contractor under this agreement which the Office requests to be kept as confidential shall not be made available to any individual or organization by the Contractor without the prior written approval of the Office, unless such confidentiality would be contrary to the laws of the State of Alabama or the United States.

## IX.  Coordination Contact:

The Office agrees to designate a single source contact for the purpose of coordination and problem-solving during the terms of this contract.  The designation shall be made in writing

immediately after the signatures to the agreement have been obtained.

**X.      Equal Employment Opportunity:**

There shall be no discrimination against any employee who is employed in the work covered by this agreement, or against any applicant for such employment, because of race, color, religion, sex, national origin, age or disability.  This provision shall include, but not be limited to, the following: employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training including apprenticeship.

**XI.     Availability of Funds:**

This agreement is conditional upon the receipt of sufficient funds from the Alabama Legislature.

**XII.    Not to Constitute a Debt of the State:**

Under no circumstances shall the commitments by the Office contained herein constitute a debt of the State of Alabama as prohibited by Section 213 of the Constitution of Alabama 1901, as amended by Amendment 26.  It is further agreed that if any provision of this contract shall contravene any statute or constitutional provision or amendment, either now in effect or which may, during the course of this contract, be enacted, then such conflicting provision in the contract shall be deemed null and void.  The Contractor's sole remedy for the settlement of any and all disputes arising under the terms of this agreement shall be limited to the filing of a claim with the Board of Adjustment for the State of Alabama.

**XIII.   Alternative Dispute Resolution Clause:**

For any and all disputes arising under the terms of this contract, the parties hereto agree, in compliance with the recommendations of the Governor and Attorney General, when considering settlement of such disputes, to utilize appropriate forms of non-binding alternative dispute resolution including, but not limited to, mediation.

**XIV.   Proration Cancellation Clause:**

In the event of the proration of the fund from which payment under this contract is to be made, the contract will be subject to termination.


**XV. Immigration Clause:**

By signing this contract, the contracting parties affirm, for the duration of the contract, that they will not violate federal immigration law or knowingly employ, hire for employment, or continue to employ an unauthorized alien within the State of Alabama.   Furthermore, a contracting party found to be in violation of this provision shall be deemed in breach of the agreement and shall be responsible for all damages resulting therefrom.


 IN WITNESS WHEREOF, the parties hereto have duly executed this agreement on this _____ day of_____, 2014.

ALABAMA OFFICE OF THE                      CONTRACTOR
ATTORNEY GENERAL

_____                      _____
Luther Strange                                           Contractor Name
Attorney General                                       Government Contracts

                                                                 _____
                                                                 Contractor's FEIN


_____
Robert Bentley
Governor of Alabama

# Appendix C:

## RFP OAG eDiscovery Tools

| |
|---|
| **Complete the following information – please print or type.** |
| Company Name |
| Address |
| City         State        Zip Code |
| Authorized Representative Name |
| Title         Telephone Number |
| Email |
| Vendor's Signature (Sign in ink)        Date |

Appendix D

## Insurance Requirements

### A. GENERAL LIABILITY INSURANCE

(1) Policy Coverage. All liability insurance will be provided by the Insurance Services Office (ISO) Commercial General Liability Coverage form (current edition as of the effective date of the Contract) on an "occurrence" basis, or an equivalent liability form that is at least as broad.

(2) Limits Required.

- General Aggregate $2,000,000
- Products-Completed Operations Aggregate $2,000,000
- Each Occurrence $1,000,000

(3) This insurance will apply to insurable obligations of the Indemnity Clause in the Contract and the Commercial General Liability policy will not be restricted in this respect.

(4) Policy Endorsement. The policy will be amended as follows:

"This policy expressly provides:

i    "Insured contracts" coverage applies to contracts of the Vendor with the State of Alabama and the Office of the Attorney General.

ii   In the event of cancellation or material reduction in coverage, thirty (30) days registered mail notice of such cancellation or material reduction will be given to the Office of the Attorney General.

(5) Additional Insured. The Office of the Attorney General and their employees will be named as "additional insureds" on Contractor's General Liability policies. Coverage will be written on an ISO Occurrence Form or equivalent coverage.

### B. AUTOMOBILE LIABILITY INSURANCE

In the event that services delivered pursuant to the Contract involve the use of vehicles, or the transportation of clients, automobile liability insurance shall be required as follows:

(1) Policy Coverage. All auto liability insurance will be provided by the ISO Business Auto Coverage form or an equivalent automobile policy that is at least as broad.

(2) Autos covered. Coverage will apply to any automobile operated by or on behalf of the Contractor.

   (3) Limits required (either option).
      • Combined Single Limit $1,000,000
     • Split Limit
       Bodily Injury Per Person $1,000,000
       Per Accident $1,000,000
       PD Per Accident $1,000,000

## C. WORKERS' COMPENSATION INSURANCE

  (1) Policy Coverage. Standard Workers' Compensation.

  (2) Limits. Alabama Statutory benefits.

## D. PROFESSIONAL LIABILITY/ERRORS AND OMMISSIONS INSURANCE

  When any system technicians or engineers, web/cyber architects or engineers, project/program managers/administrators, training professionals, electronic data processing (EDP) professionals including but not limited to system programmers, hardware and software designers/consultants or other professional consultants perform work or services in connection with this Contract, Professional Liability Insurance (including  covering acts, errors or omissions) must be maintained with limits of not less than $2,000,000. Coverage must include performance of or failure to perform EDP, performance of or failure to perform other computer services and failure of software product to perform the function for the purpose intended. When policies are renewed or replaced, the policy retroactive date must coincide with or precede start of work on the Contract.

  Subcontractors performing professional services for the Contractor must maintain limits of not less than $1,000,000 with the same terms herein.

# CERTIFICATE OF INSURANCE

This is to certify to the State of Alabama, that the
described policies are in force.

_____
Insurance Company

_____
Insured

_____

_____
Address of Insured

Description of Operations/Locations/Vehicles:  Special Provisions

| TYPE OF INSURANCE | POLICY # | POLICY PERIOD | LIMITS OF LIABILITY |
|---|---|---|---|
| **STANDARD WORKER'S COMPENSATION** | | | Alabama Statutory Requirements |
| **GENERAL LIABILITY** | | | Per Occurrence $_____ |
| Commercial General Liability | | | Products/Completed Operations Aggregate $_____ |
| Occurrence Form | | | General Aggregate $_____ |
| Professional Liability | | | |
| ☐ Claims Made | | | Per Claim $ _____ |
| | | | Per Occurrence $_____ |
| ☐ Occurrence | | | Aggregate $ _____ |
| **AUTOMOBILE LIABILITY** | | | Combined Single Limit $_____ |
| Any Auto | | | Bodily Injury (per person)  $_____ |
| | | | Bodily Injury (per accident)  $_____ |
| | | | Property Damage $_____ |
| **EXCESS LIABILITY** | | | |
| ☐ Umbrella Form | | | Each Occurrence $ _____ |
| ☐ Other Excess | | | Aggregate          $ _____ |

In the event of cancellation of or material reduction in coverage, thirty (30) days' registered mail notice of such cancellation or material
reduction will be given to:

_____
Name of Local Authorized Representative

_____                    _____

Date Issued                                                _____
                                                                    Address

                                                                    _____
                                                                    Signature of Local Authorized Representative

# Appendix D
## RFP OAG eDiscovery Tools

| | | |
|---|---|---|
| **Complete the following information – please print or type.** | | |
| Company Name | | |
| Address | | |
| City | State | Zip Code |
| Authorized Representative Name | | |
| Title | Telephone Number | |
| Email | | |
| Vendor's Signature (Sign in ink) | Date | |

# Exhibit F

| | |
|---|---|
| **From:** | Marty Basu <marty.basu@kirkland.com> |
| **Sent:** | Monday, June 27, 2011 9:50 PM |
| **To:** | *CMaze@ago.state.al.us; "Allan Kanner" |
| **Cc:** | "Robert E Holden"; "Don K Haycraft" [dkhaycraft@liskow.com]; "Greg L Johnson"; "Buddy Cox"; Bloomer, Andrew B. |
| **Subject:** | Search Term and Custodian Lists |
| **Attachments:** | ALA and LA Attorney General and Agency Search Criteria.xlsx; Alabama Custodians List A.xls; Alabama Custodians List B.xls; Louisiana Custodians List A.xlsx; Louisiana Custodians List B.xlsx |

All,

Attached, please find a list of search terms to assist you in BP's document requests.  Also attached are lists of custodians, two per each state .  One list was created from individuals who had  a permanent badge issued in connection with the response and a Louisiana or Alabama state agency listed as their employer.  The other list was created from a list of state agency positions and employees that BP has identified as relevant thus far.  These lists are BP's initial proposed lists pursuant to Magistrate Judge Shushan's order and by no means complete or exhaustive.  We rely on each state to fill in the gaps.  Please let us know your thoughts on the lists.

 ALA and LA Attorney General and Agency Search Criteria.xlsx   Alabama Custodians List
 A.xls   Alabama Custodians List B.xls   Louisiana Custodians List A.xlsx  
 Louisiana Custodians List B.xlsx  

Marty Basu
Kirkland & Ellis LLP
300 North LaSalle Street · Chicago, IL 60654
+1.312.862.2072 | Fax +1.312.862.2200
marty.basu@kirkland.com

# Exhibit G



**STATE OF ALABAMA**
**OFFICE OF THE ATTORNEY GENERAL**

LUTHER STRANGE
ATTORNEY GENERAL

501 WASHINGTON AVENUE
P.O. BOX 300152
MONTGOMERY, AL 36130-0152
(334) 242-7300
WWW.AGO.ALABAMA.GOV

October 2, 2014

*VIA ELECTRONIC MAIL and*
*VIA FEDERAL EXPRESS*

> Re:   *State of Alabama v. BP et al.* (MDL 2179)
>        Alabama's Document Production

Dear Counsel:

This letter constitutes notice by the State of Alabama of a production of documents. Production Volumes 005-002, 005-003, and 005-004 (5 discs) contains documents and data bearing Bates range AL-ED-000802714 through AL-ED-000813240. Production Volumes 006-001, 006-002, and 006-003 (4 discs) contains documents and data bearing Bates range AL-ED-000813241 through AL-ED-000820415.

Please be advised the above-referenced Volumes contain documents from the following State agencies: Office of the Governor, Alabama Department of Environmental Management, Alabama Department of Conservation and Natural Resources, Alabama Department of Transportation, and the Alabama Department of Tourism.

This production of documents and ESI is made subject to all general and specific objections contained in the State of Alabama's Responses and Objections to the Defendants' First Set of Discovery Requests Relating to the State's Compensatory Damages Phase, dated August 11, 2014. The State's production of documents is subject to the terms and provisions of all applicable pre-trial orders and agreements, including PTOs 13, 14, and 16.

COREY L. MAZE
*Special Deputy Attorney General*

CM/lsw
Enclosure: (9) discs containing AL-ED-000802714 through AL-ED-820415
        (VIA FEDERAL EXPRESS)

cc: Distribution list, attached

**VIA FEDERAL EXPRESS**
Peter Bartoszek, Esq.
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
***Defendant BP***

**VIA FEDERAL EXPRESS**
Carolyn Raines, Esq.
Jenny L. Martinez, Esq.
Godwin Lewis PC
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
***Defendant HESI***

***VIA FEDERAL EXPRESS***
Carter L. Williams, Esq.
Sutherland, Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, TX 77002-676
***Defendant Transocean***

***VIA FEDERAL EXPRESS***
Ray S. Seilie, Esq.
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
***Defendant Transocean***

***VIA FEDERAL EXPRESS***
Edward Flanders, Esq.
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, New York 10036-4039
***Defendant MOEX***

***VIA FEDERAL EXPRESS***
Connie Salcido Delgado
Bingham McCutchen, LLP
355 South Grand Avenue, 44th Floor
Los Angeles, California 90071
***Defendant Anadarko***

# Exhibit H

**From:** Brown, Scott <JSB@adem.state.al.us>
**Sent:** Tue, 15 Jun 2010 14:46:29 +0000 (UTC)
**To:** LeFleur; Lance R <llefleur@adem.state.al.us>
Cox; George <gmc@adem.state.al.us>; Poolos; Ed
<efp@adem.state.al.us>; Jenkins; Steve <soj@adem.state.al.us>;
Freeman; Bruce <bmf@adem.state.al.us>; Leslie; Fred
<fal@adem.state.al.us>; Sherman; Mike <mhs@adem.state.al.us>;
Hulcher; Richard <rfh@adem.state.al.us>; Rogers; Paul
**CC:** <pr1@adem.state.al.us>; Connole; Samantha Jackson
<svj@adem.state.al.us>; Byars; Heather <hbyars@adem.state.al.us>;
Springer; Grady <gspringer@adem.state.al.us>; Ornelas; Mark
<meo@adem.state.al.us>; Connole; Timothy N <tnc@adem.state.al.us>;
Connole; Samantha Jackson <svj@adem.state.al.us>; Collins; Roy
<rhc@adem.state.al.us>
**Subject:** Interim Report June 15, 2010 - Graphics (UNCLASSIFIED)

**Confidential**
**AL-ED-000816327**