# Exhibit 9

**KIRKLAND & ELLIS LLP**
AND AFFILIATED PARTNERSHIPS

|  |  |  |
|---|---|---|
| Paul Collier<br>To Call Writer Directly:<br>(312) 862-2471<br>paul.collier@kirkland.com | 300 North LaSalle<br>Chicago, Illinois  60654<br><br>(312) 862-2000<br><br>www.kirkland.com | Facsimile:<br>(312) 862-2200 |

October 1, 2014

**Via E-mail**

Corey L. Maze, Esq.
Special Deputy Attorney General
Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130
cmaze@ago.state.al.us

> Re:   MDL2179 Alabama OPA Economic Claim:   Outstanding Issues re Alabama's discovery responses

Dear Corey:

      I write on behalf of Defendant BP Exploration & Production Inc. ("BPXP") regarding issues that are still outstanding with the State of Alabama's discovery obligations following our correspondences and meet-and-confers over the past two weeks.  Specifically, this letter will address your September 15 letter responding to BPXP's September 2 letter, our meet-and-confer on September 16, and your subsequent email sent later that day.  BPXP continues to evaluate the State's responses and reserves the right to identify additional issues as discovery continues.

### I.   General Objections Still Unresolved

#### A.   Producing Information Or Documents Regarding Property For Which Alabama Is Not Claiming Damages

      We understand from your September 15 letter and you subsequent September 16 email that Alabama refuses to produce information or documents regarding properties for which it is not making a claim, as requested by Defendants' Interrogatory Nos. 5 and 6 and Requests for Production Nos. 10, 11, 13, and 19.  According to your email, this refusal extends to both properties in Washington, Clarke, Monroe, Conecuh, Escambia, Covington, Geneva, and Houston Counties, as well as State-owned properties in Baldwin and Mobile Counties for which Alabama is not claiming damages.  As BPXP has expressed previously, the information Alabama objects to providing—whether for properties in Baldwin and Mobile Counties or the surrounding counties identified in Defendants' Discovery Requests—is relevant to Alabama's claims at least because the requested information will provide a potential benchmark for evaluating Alabama's

## KIRKLAND & ELLIS LLP

Corey Maze, Esq.
October 1, 2014
Page 2

contention that its claimed property damages were caused by the *Deepwater Horizon* oil spill. This is especially true for State-owned properties in Mobile and Baldwin Counties, where Alabama is claiming damages to some State-owned properties. The statement in your September 15 letter, that "information regarding properties from eight non-coastal counties is neither necessary nor proper to form a reliable trend line for the State's coastal county properties," while incorrect on its own, is now completely undermined since Alabama has refused to provide information even about all of the State's coastal county properties. Nonetheless, BPXP understands that Alabama's position is that only information regarding those State-owned properties for which it asserts a loss and is making a claim are relevant to its OPA economic loss case, and therefore considers the parties at an impasse on this issue.

### B.    Temporal Scope/Revenue Database

Alabama's September 15 letter confirms that it will produce: (a) all non-privileged, relevant documents from custodial files of its witnesses identified in its Rule 26 disclosures dating back to January 1, 2008, and (b) all economic, budget, tax, and tourism projections reports, studies, and forecasts dating back to January 1, 2008. BPXP's September 2 letter, however, additionally requested confirmation that Alabama will either make available its complete tax stream and budget databases or produce any data from these databases that is responsive to Defendants' document requests dating as far back as the databases contain data or at least back to 1980. Regarding these requests, Alabama's September 15 letter stated that it continues to evaluate the totality of budget/tax data retained in State databases, and will produce any data that is responsive and not duplicative.

On September 29, BPXP received your letter and two Excel charts regarding Alabama's RITS and Central Accounting databases. BPXP is currently evaluating these documents, but a few things merit Alabama's attention after an initial review.

First, in its July 25 submission to the Court, Alabama represented that it would produce "[e]conomic, budget, tax stream and tourism projections, reports, studies and forecasts that discuss the viability, performance, growth and/or results from 2000 – present[.]"  Your September 29 letter, however, lists several types of documents that fall within the broader category of projections, reports, etc., identified in your July 25 submission, and then states that "[u]nderstanding that some of these documents may not go back to 2000, if there are documents in particular that you would like us to try to pull based on your review of the above, please let us know, and to the extent we have not already produced these documents, we will attempt to do so."

To the extent Alabama is now attempting to impose an obligation on BPXP to justify why it is entitled to the documents Alabama has already agreed—and represented to the Court—

## KIRKLAND & ELLIS LLP

Corey Maze, Esq.
October 1, 2014
Page 3

that it would produce, its request is improper. BPXP requests that Alabama produce all of the documents from the categories listed in your September 29 letter going back to 2000, as Alabama has already stated it would do, by October 3, or otherwise indicate why it is unable to produce them.

Second, after a preliminary review, the spreadsheets regarding the RITS and Central Accounting databases that Alabama provided with its September 29 letter do not provide sufficient information about the various fields maintained in these databases or how the data in these databases can be queried. For example, it is unclear what the "Return Field" in the "Return Mapping with Account Types" spreadsheet represents or what the thousands of different alphanumeric values listed in this field, such as "BTCTYP" and "1GCOLA" mean. Thus, BPXP requests an explanation as to the meaning of the fields listed in these spreadsheets and the values provided within these fields.

### C. Objection To Producing County-Level Data

We understand from your September 15 letter that Alabama's objection to producing county-level data does not apply to information or documents within Alabama's possession, and that Alabama will produce responsive county-level data, including data from its Department of Revenue, that is in its possession, custody or control. We also understand from our September 16 meet-and-confer that the Department of Revenue administers revenue data for two counties in Alabama–Geneva and Escambia. As discussed above in §I.A, BPXP believes that data regarding the tax collection for these counties may lead to the discovery of admissible evidence, and thus requests confirmation that this data will be produced.

### D. Definition Of "Revenue"

As previously noted in my September 2 letter, Alabama objects to Defendants' definition of "Revenue" as "seek[ing] information on all revenue sources, regardless of whether the revenue sources have any connection to the spill," and that Alabama "will read and respond to this term as including those revenue sources that reasonably have a connection to the State's claims." During our September 16 meet-and-confer, Alabama stated that it is not withholding revenue streams based on this objection. Nevertheless, your subsequent email from later that day stated that Alabama is "not producing revenue information for State-owned parks/attractions not subject to the State's claims." Revenue regarding State-owned parks and attractions was just an example of a revenue stream that BPXP provided during our meet-and-confer. As such, BPXP is still unclear what revenue streams Alabama contends are "not subject to the State's claims" (as stated in your September 16 email) or "reasonably have a connection to the State's claims" as stated in Alabama's objections to BPXP's discovery requests.

## KIRKLAND & ELLIS LLP

Corey Maze, Esq.
October 1, 2014
Page 4

First, please clarify which revenue streams (other than revenue information for State-owned parks/attractions not subject to the State's claims) Alabama is withholding, and from which revenue sources Alabama will provide discoverable information. Second, this raises a similar issue to Alabama's refusal to provide information for properties for which it is not making a claim. In both cases, Alabama's selective production of only the documents and information that support its case prejudices BPXP and the other defendants by preventing them from evaluating Alabama's alleged damages in context. Just as BPXP needs information about properties on which Alabama is not making a claim to compare their value trends with those of the allegedly damaged properties, it also needs information about all of Alabama's revenue streams to see whether the decrease in one stream of revenue coincided with an increase in another. Alabama cannot unilaterally decide to produce only documents that support its case, and BPXP maintains its request that Alabama withdraw its objection and provide BPXP with documents relating to all of its revenue sources.

    **E.**  **Providing Information In Response To An Interrogatory That Is Covered By Requests for Production**

BPXP requests that Alabama withdraw its objections to Interrogatory Nos. 1, 2, 4, 6, 7, 10, and 12 on the grounds that these interrogatories "seek[] the content of documents that will be produced pursuant to Defendants' Requests for Production." While your September 15 letter states that "Alabama is relying on FRCP 33(d), although it did not cite the rule," it is clear from reviewing your responses to the listed interrogatories, that Alabama has made no effort to rely on Rule 33(d), because apart from not referencing the rule, Alabama has failed to identify any documents or even categories of documents from which BPXP could in any way obtain a response to these interrogatories. BPXP requests that Alabama either supplement these responses by identifying the proper documents in accordance with Rule 33(d), or that it withdraw this objection.

    **II.**  <u>**Issues with Alabama's Specific Discovery Responses**</u>

In addition to the issues discussed above regarding Alabama's general objections, several of Alabama's specific responses still remain outstanding, despite the parties' attempts to meet-and-confer about these topics.

    **A.**  **Interrogatory No. 5**

Notwithstanding your September 15 letter, we understand from your September 16 email that Alabama will supplement its response to this interrogatory with regard to restrictions on use for properties subject to Alabama's claims, but not for other properties. First, please let us know when BPXP can expect a supplementation to provide use restrictions on properties subject to

## KIRKLAND & ELLIS LLP

Corey Maze, Esq.
October 1, 2014
Page 5

Alabama's claims. Second, similarly to §§ I.A and D above, BPXP needs information about Alabama's use restrictions, even for properties on which Alabama is not making a claim, for a baseline comparison–specifically to eliminate variables that could have affected prices of properties not impacted by the oil spill for an accurate comparison to properties that were impacted by it.

### B. Interrogatory No. 7

BPXP disagrees with Alabama that its "non-exhaustive list of additional proprietary interests in coastal-area lands for which the State may or may not possess legal title" sufficiently addresses BPXP's request. Alabama's non-exhaustive list fails to inform BPXP as to what damages Alabama is claiming. Moreover, BPXP disagrees that the way by which Alabama's alleged damages were or will be realized is the subject of expert analysis. As stated in my September 2 letter, this does not call for any expert computation of damages, or even ask what the damages were, but seeks only factual bases for what caused Alabama's alleged damages. BPXP maintains its request that Alabama supplement its response by providing a comprehensive list of all proprietary interests that Alabama has in each piece or parcel of property that it claims has or will suffer physical injury to a proprietary interest, and the factual basis for how those damages will be realized. Nonetheless, unless Alabama is willing to modify its position, we consider the parties to be at an impasse on this issue.

### C. Interrogatory No. 14

BPXP has received Alabama's supplemental response to Interrogatory No. 14 and is currently evaluating whether the additional information sufficiently addresses this interrogatory. While BPXP's evaluation is ongoing, several items in Alabama's supplemental response, and the underlying documents that it cites, require more explanation, even putting aside that Alabama has not yet provided BPXP with an accounting of the total disbursement for one of the grants and will do so "in a future production (and will identify that record as such)."

As one example, under "General Grants," Alabama states that in addition to the two $25 million grants, it received "additional payments related to the construction of the Katrina Cut project." Alabama does not specify whether this funding was additional to the $15 million grant it identified in its previous response to this interrogatory, does not provide the amount of additional Katrina Cut payments, and does not indicate how this Katrina Cut funding was disbursed. Moreover, the amounts received by the departments Alabama lists as having received and disbursed the general grants add up to more than $50 million (totaling around $72 million), and it is unclear where the remainder of this money came from, and whether this difference is made up by the "additional payments related to the construction of the Katrina Cut project." Additionally, Alabama states that Fund 1417 included disbursements to the Alabama Department

## KIRKLAND & ELLIS LLP

Corey Maze, Esq.
October 1, 2014
Page 6

of Public Safety and the Alabama Department of Conservation and Natural Resources. While Alabama provides a document showing disbursement of the funds received by the Department of Public Safety, it is silent on how the Department of Conservation and Natural Resources allocated the $79,800 it received, and does not indicate that this information is forthcoming or that Alabama will supplement its response.

Moreover, several times in its supplemental response, Alabama references documents that have generic entries for things like personnel costs, employee benefits, travel, and similar expenditures, without any accompanying detail as to who the personnel were, what they worked on, the nature of their travel, or similar details. As just one example, concerning the disbursement of funds for Alabama's Historical Commission, the referenced document, AL-ED-000031681, lists personnel costs and employee benefits in 2013 and 2014. It is unclear who these personnel were and what purpose the allocated funding served more than three years after the oil spill. As another example, the referenced document AL-ED-000031677, relating to disbursements by the office of the Governor, shows several allocations for out of state travel by the general counsel of the University of Alabama system, among others.[1] BPXP would like more information regarding this travel to determine whether it falls within the terms of the grant. These examples are meant to be illustrative of the sorts of issues BPXP has identified based on Alabama's supplemental response and underlying documents, and general areas where BPXP requests additional information.

Although BPXP understands that Alabama will provide an accounting of the total disbursement for one of the grants "in a future production (and will identify that record as such)," BPXP notes these specific issues, but reserves the right to raise additional deficiencies with Alabama's response with the opportunity for further review.

### D.    Request for Production No. 22

Despite Alabama's September 15 letter stating that Alabama's search for responsive documents "does not include a search for documents related to the State's use of and/or benefit from expenditures and outreach efforts undertaken by the Federal Government," your subsequent email from September 16 confirms that Alabama "is not withholding documents based on a distinction between state and federally funded efforts." BPXP appreciates Alabama's confirmation but believes that the distinction to be made is not between Federal and State-funded efforts, but between efforts funded by the Defendants and the Federal government. BPXP therefore takes Alabama's September 16 email to mean that Alabama's document production

---

[1]   BPXP additionally notes that Alabama previously argued that it did not have control over the University of Alabama System.

KIRKLAND & ELLIS LLP

Corey Maze, Esq.
October 1, 2014
Page 7

will include documents related to its use and/or benefit from expenditures and outreach efforts undertaken by both the Defendants and the Federal government.  If BPXP has understood your position incorrectly, please let us know.

          Very truly yours,

          *Paul D. Collier*

          Paul D. Collier