# Exhibit 20

*Confidential Pursuant to PTO 13*

E-SERVICE

55978007
Sep 03 2014
09:35PM

File & ServeXpress

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | **MDL No. 2179** |
| | **SECTION: J** |
| **This Document Relates To:** | **DISTRICT JUDGE BARBIER** |
| **Case Nos. 10-4182, 10-4183, 13-2645, 13-2646, 13-2647, 13-2813** | **MAGISTRATE JUDGE SHUSHAN** |

**DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION**
**TO THE STATE OF ALABAMA**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendants BP Exploration & Production Inc. and BP America Production Company (collectively, "BP"), Anadarko Petroleum Company and Anadarko E&P Company LP (collectively, "Anadarko"), MOEX USA Corporation, MOEX Offshore 2007 LLC, and MOEX USA Corporation (collectively, "MOEX"), Halliburton Energy Services, Inc. ("HESI"), Transocean Offshore Deepwater Drilling, Inc., Transocean Holdings LLC, Transocean Deepwater Inc., and Triton Asset Leasing GmbH (collectively, "Transocean"), through undersigned counsel request that the State of Alabama respond to the following requests for admission in accordance with the following Definitions and Instructions within thirty (30) days hereof or as otherwise ordered by the Court.  By serving these requests, Defendants do not admit or concede the relevance or admissibility of information or documents responsive to the requests.

**REQUESTS FOR ADMISSION**

1. Admit that Oil Materials from sources other than the Macondo Well were present on Alabama's Gulf Coast shoreline prior to, and after, April 20, 2010.

*Confidential Pursuant to PTO 13*

2.   Admit that Oil Materials released from the Macondo Well following the *Deepwater Horizon* Incident did not reach Alabama's Gulf Coast shoreline until approximately June 1, 2010.

3.   Admit that not all of the Oil Materials removed from Alabama's Gulf Coast shoreline in response to calls to the National Response Center, that were suspected to be from the Macondo Well based on visual observations, were chemically tested to determine their origin.

4.   Admit that there have been instances where Oil Materials that were suspected to be from the Macondo Well based on visual identification were later shown to come from a source other than the Macondo Well based on testing from the U.S. Coast Guard's Marine Safety Lab.

5.   Admit that the extent of oiling on Alabama's Gulf Coast shoreline from the *Deepwater Horizon* Oil Spill was reduced by Unified Command's, including BP's, efforts to prevent Oil Materials from the Macondo Well from reaching Alabama's Gulf Coast shoreline.

6.   Admit that Alabama was represented in Unified Command through at least the Alabama State On-Scene Coordinator.

7.   Admit that during the Response, each SCAT team that conducted SCAT surveys in Alabama included a representative from Alabama who Alabama selected.

8.   Admit that Alabama's State On-Scene Coordinator signed and approved the November 2011 Shoreline Cleanup Completion Plan.

9.   Admit that removal actions were deemed complete by Unified Command for all SCAT Segments in Alabama in March of 2013.

*Confidential Pursuant to PTO 13*

10. Admit that the Federal On-Scene Coordinator concluded the active Response in Alabama on June 10, 2013.

11. Admit that Alabama did not object to or challenge the Federal On-Scene Coordinator's declaration that the active Response in Alabama concluded on June 10, 2013.

12. Admit that after the active Response concluded, each time the National Response Center issued a directive to BP to locate or remove Oil Materials that were deemed visually consistent with Oil Materials from the Macondo Well, BP responded to the directive and followed the guidelines of the U.S. Coast Guard.

13. Admit that by October 10, 2010, only 0.3 miles of Alabama beaches were classified by SCAT as being in the heavy Oiling Category, and zero miles of Alabama beaches were classified by SCAT as being in the moderate Oiling Category.

14. Admit that since May 28, 2011, the number of miles of Alabama beaches that have been classified by SCAT as being in either the heavy or moderate Oiling Category has been zero.

15. Admit that by October 10, 2010, only 0.2 miles of Alabama marshes were classified by SCAT as being in the moderate Oiling Category, and zero miles of Alabama marshes were classified by SCAT as being in the heavy Oiling Category.

16. Admit that since May 28, 2011, the number of miles of Alabama marshes classified by SCAT as being in the heavy or moderate Oiling Category has been zero.

*Confidential Pursuant to PTO 13*

17. Admit that Alabama has not provided an accounting of its use and disbursement of the two $25 million payments BP provided to Alabama in May and June 2010, as requested in BP's September 23, 2013 letter to David Perry, Chief of Staff to the Governor of Alabama.

18. Admit that Alabama's total revenues for total governmental funds for the fiscal year ending in September 2010 were higher than for any fiscal year before or since.

19. Admit that total revenues for Alabama's Education Trust Fund decreased for three consecutive fiscal years beginning with the fiscal year ending in September 2008.

20. Admit that the National Recession caused a decrease in Alabama's overall tax revenue in the fiscal year ending in September 2009.

21. Admit that the National Recession caused a decrease in Alabama's overall tax revenue in the fiscal year ending in September 2010.

22. Admit that the National Recession caused a decrease in Alabama's overall tax revenue in the fiscal year ending in September 2011.

23. Admit that the Moratorium caused a decrease in Alabama's overall tax revenue in the fiscal year of 2010.

24. Admit that the Moratorium caused a decrease in Alabama's overall tax revenue in the fiscal year of 2011.

*Confidential Pursuant to PTO 13*

25. Admit that Alabama's Travel Economic Impact Reports have described the overall job creation impact of the travel industry on the State of Alabama as "impressive" in 2010, 2011, 2012, and 2013.

## **DEFINITIONS**

(a)     "You," "your," and "yours" shall mean the Plaintiff State of Alabama, as defined below.

(b)     "Person" shall mean an individual as well as any entity including any proprietorship, partnership, corporation, firm, political entity, committee, or any other organization.

(c)     "Communication," whether singular or plural, means any transmission of information by one or more persons to one or more persons by any means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, facsimiles, e-mail, computer linkups, written memoranda, and face-to-face conversations; "communication" includes all documents and electronically stored information ("ESI") containing, summarizing, or memorializing any communication.

(d)     "Document" or "documents" has the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a), including ESI, and includes the original and any identical or nonidentical copy, regardless of origin or location, of any writing or record of any type or description, including, but not limited to, all writings; records; contracts; agreements; communications (intra or inter-department or agency); correspondence; memoranda; letters; facsimiles; electronic mail (e-mail); minutes, recordings, transcripts, and summaries of meetings, or recordings of meetings, speeches, presentations, conversations, or telephone calls (whether

*Confidential Pursuant to PTO 13*

recorded in writing, mechanically, or electronically); handwritten and typewritten notes of any kind; statements; reports; voice recordings; videos; desk calendars; diaries; logs; drafts; studies; analyses; schedules; forecasts; surveys; invoices; receipts; computer data; computer printouts; licenses; titles; financial statements; general ledger reports; balance sheets; profit and loss statements; economic modeling; statements of earnings; statements of net worth; credit reports; statements of operations; audit reports; financial summaries; statements of lists of assets; work papers; pictures; photographs; drawings; computer cards; tapes; discs; printouts and records of all types; instruction manuals; policy manuals and statements; books; pamphlets; cancelled checks; check stubs; and every other device or medium by which information or intelligence of any type is transmitted, recorded, or preserved, or from which intelligence or information can be perceived.

(e)     "Identify," when used with respect to: (i) an individual, shall mean to provide the individual's full name, job title, and employer during the period referred to, and current or last known address and telephone number and business address and telephone number; (ii) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); and (iii) a document, shall mean to provide the date, title, subject matter, author(s), recipient(s), and Bates number(s).

(f)     "Including" or "includes" means "including, but not limited to" or "including without limitation."

(g)     "Relating to" or "relating to," when referring to any given subject matter, means any document that constitutes, comprises, involves, contains, embodies, reflects, references, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

*Confidential Pursuant to PTO 13*

(h)      The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

(i)      "BP" means BP Exploration & Production Inc. and BP America Production Company.

(j)      "*Deepwater Horizon* Incident" and "Incident" mean the events leading to: (i) the loss of well control and the ensuing explosion, fire, injuries and loss of life on the *Deepwater Horizon* rig on or about April 20, 2010; and (ii) the eventual sinking of the rig on April 22, 2010.

(k)      "Gulf Coast" means the coasts of Alabama, Florida, Louisiana, Mississippi, and Texas that are on or border the Gulf of Mexico.

(l)      "Gulf Region" means the states of Alabama, Florida, Louisiana, Mississippi, and Texas, including any subset, subdivision, or subsection therein.

(m)      "MC252 #1 Macondo Well" means the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

(n)      "Macondo Well" means the MC 252 #1 Macondo Well.

(o)      "Moratorium" means the moratorium on deepwater drilling that was imposed by the U.S. Department of the Interior beginning on May 30, 2010.

(p)      "National Recession" or "Great Recession" means the economic recession affecting the United States that, as reported by the National Bureau of Economic Research, began in December 2007 and lasted until June 2009.

7

*Confidential Pursuant to PTO 13*

(q)     "National Response Center" means the federal government's national communications center staffed by U.S. Coast Guard officers and marine science technicians that is the federal point of contact for reporting all hazardous substances releases and oil spills.

(r)     "Oiling Category" or "Oiling Degree Category" means one of the categories (heavy, moderate, light, very light, or trace) utilized by the SCAT teams to classify a SCAT Segment based on the thickness, width, and distribution of oil observed in that segment.

(s)     "Oil Materials" means (i) oil, (ii) polycyclic aromatic hydrocarbons ("PAHs"), (iii) hydrocarbons, (iv) other oil or gas constituents, and (v) well drilling and closure materials, including without limitation, drilling muds and fluids and materials injected into the well-head. Oil Materials shall also include (i) derivatives of any of the foregoing from biological, chemical, photochemical, burning or other processes, (ii) any aggregation, mixture or combination of any of the foregoing with any other material including, without limitation, organic matter, inorganic matter, sediments, biological exudates, sand and water, or (iii) any combination of the foregoing.

(t)     "Oil Spill" or "*Deepwater Horizon* Oil Spill" means the discharge of oil or hydrocarbons into the Gulf of Mexico as a result of the Incident.

(u)     "Oil Spill Response" means any effort to clean up the Oil Spill.

(v)     "Response Activities," "*Deepwater Horizon* Response," or the "Response" means any and all activities performed to respond to, or otherwise mitigate, minimize, or prevent, any environmental, human health, economic, or other effects of the *Deepwater Horizon* Oil Spill.

(w)     "OPA" means the Oil Pollution Act of 1990, as amended, and codified at 33 U.S.C. § 2701 *et seq.*

(x)     "Property" or "Properties" means real property, personal property, and other property owned by Alabama or for which Alabama claims a proprietary interest that is alleged to

*Confidential Pursuant to PTO 13*

have been damaged by the *Deepwater Horizon* Incident and/or Oil Spill, including, without limitation, each parcel identified in AL-ED-000001 – AL-ED-000009.

(y)      "Revenue(s)" means taxes, fees, interest, royalties, rents, federal funds, grants, fines, contributions, donations, profits, and any other forms of payment or income received by the State of Alabama.

(z)      "Shoreline Cleanup Assessment Technique" or "SCAT" means the standard process used world-wide to assess shoreline oiling in order to direct shoreline treatment following a spill that was utilized in portions of the Gulf Region following the Incident.

(aa)      "SCAT Segment" means one of numerous portions of the Gulf Coast shoreline that were systematically segmented through the SCAT process based on a combination of factors, such as physical features, distance, and natural barriers.

(bb)      "Shoreline Cleanup Completion Plan" or "SCCP" means the plan approved in November 2011 that defines a process to determine whether a SCAT Segment had achieved the relevant clean-up standards and could be moved out of the Response.

(cc)      "Defendants" means those named in any complaint filed in MDL 2179 including, without limitation, BP, Transocean, Cameron, Anadarko and Halliburton.

(dd)      "State" or "Alabama" means without limitation, the State of Alabama and any branch, department, agency, division, or subdivision of the State of Alabama for which discovery is permitted and any predecessor, successor, division, subdivision, committee, subcommittee, or advisory committee thereof together with all current or former officials, directors, staff members, or other persons purporting to act for or on behalf of these agencies, department, and divisions.

(ee)      "Tourism-Related Activity" means the actions and behaviors of people in preparation for and during a trip in their capacity as consumers.

*Confidential Pursuant to PTO 13*

(ff)     "Tourism-Related Expenditure" means any amount paid for the acquisition of consumption goods and services, as well as valuables, for use or to give away, for and during tourism trips, including expenditures by visitors themselves, as well as expenses that are paid for or reimbursed by others.

(gg)     "Unified Command" means the structure, organization, and team established to oversee and manage the response to the *Deepwater Horizon* Oil Spill.

(hh)     "United States" means, without limitation, any branch, department, or agency of the federal government and any predecessor, successor, division, subdivision, committee, subcommittee, or advisory committee thereof, including without limitation the Department of Agriculture, Department of Commerce, Department of Energy, Department of Health and Human Services, Department of Homeland Security, Department of the Interior, Department of Justice, Department of Labor, Department of Transportation, United States Attorney General, Bureau of Land Management, Bureau of Ocean Energy Management, Regulation and Enforcement, Bureau of Safety and Environmental Enforcement, Center for Disease Control, Chemical Safety and Hazard Investigation Board, United States Coast Guard, Environmental Protection Agency, Federal Maritime Commission, Food and Drug Administration, Fish and Wildlife Service, Flow Rate Technical Group, United States Geological Survey, Minerals Management Service, National Academy of Sciences, National Institute of Occupational Safety and Health, National Oceanic and Atmospheric Administration, National Park Service, Occupational Safety and Health Administration, Office of Electricity Delivery and Energy Reliability, Office of Natural Resources Revenue, Outer Continental Shelf Safety Oversight Board, Securities and Exchange Commission, Graham-Reilly National Commission, Senate Committee on Energy and Natural Resources, Senate Committee on Environment and Public

*Confidential Pursuant to PTO 13*

Works, Senate Committee on Homeland Security and Government Affairs, House Committee on Energy and Commerce, House Natural Resources Committee, House Oversight and Government Reform Committee, and Joint Investigation Team, together with all current or former officials, directors, staff members, or other persons purporting to act for or on behalf of the United States.

## INSTRUCTIONS

(a)     Unless stated otherwise, the timeframe for all requests is from 2000 to the present.

(b)     All requested information should be provided at both the state level and the county level so that information for each county can be identified and distinguished.

(c)     Each request is to be construed independently and not by or with reference to any other request for purposes of limiting the scope of any particular request.

(d)     If you claim that the language of any request is vague or ambiguous, then you must identify the language you believe is ambiguous and describe the different interpretations that you believe may apply to such language.

(e)     Pursuant to Federal Rule of Civil Procedure 26(e), these requests are continuing and you must revise or supplement your responses and production whenever new or additional responsive information becomes known.

*Confidential Pursuant to PTO 13*

Dated:  September 3, 2014

Respectfully submitted,

*/s/ Paul D. Collier*_____
Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Paul D. Collier
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
F. Chad Morriss
Maureen F. Browne
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Joel M. Gross
Lawrence A. Schneider
Arnold & Porter, LLP
555 12th Street N.W.
Washington, DC 20004
Telephone: (202) 942-5705
Facsimile: (202) 942-5999

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #I6984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

*Attorneys for BP p.l.c., BP Exploration &*
*Production Inc., and BP America Production*
*Company*

*Confidential Pursuant to PTO 13*

/s/ Kerry J. Miller_____
Brad D. Brian
Michael R. Doyen
Grant Davis-Denny
Daniel B. Levin
MUNGER TOLLES & OLSON, LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100
Fax: (213) 683-5180
Email: brad.brian@mto.com
michael.doyen@mto.com
grant.davis-denny@mto.com
daniel.levin@mto.com

Steven L. Roberts
Rachel Giesber Clingman
Sean Jordan
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, TX 77002
Tel: (713) 4710-6100
Fax: (713) 354-1301
Email: steven.roberts@sutherland.com
rachel.clingman@sutherland.com
sean.jordan@sutherland.com

Kerry J. Miller
FRILOT, LLC
1100 Poydras Street, Suite 3800
New Orleans, LA 70163
Tel: (504) 599-8194
Fax: (504) 599-8154
Email: kmiller@frilot.com

*Attorneys for Defendants Transocean Offshore
Deepwater Drilling Inc., Transocean
Deepwater Inc., Transocean Holdings LLC,
and Triton Asset Leasing GmbH*

13

*Confidential Pursuant to PTO 13*

> */s/ Donald E. Godwin_____*
> Donald E. Godwin
> *Attorney-in-charge*
> State Bar No. 08056500
> Don.Godwin@GodwinLewis.com
> Bruce W. Bowman, Jr.
> State Bar No. 02752000
> Bruce.Bowman@GodwinLewis.com
> Jenny L. Martinez
> State Bar No. 24013109
> Jenny.Martinez@GodwinLewis.com
> Floyd R. Hartley, Jr.
> State Bar No. 00798242
> Floyd.Hartley@GodwinLewis.com
> Gavin E. Hill
> State Bar No. 00796756
> Gavin.Hill@GodwinLewis.com
> Renaissance Tower
> 1201 Elm, Suite 1700
> Dallas, Texas 75270-2041
> Telephone: (214) 939-4400
> Facsimile: (214) 760-7332
> and
> R. Alan York
> State Bar No. 22167500
> Alan.York@GodwinLewis.com
> Jerry C. von Sternberg
> State Bar No. 20618150
> Jerry.VonSternberg@GodwinLewis.com
> Misty Hataway-Coné
> State Bar No. 24032277
> Misty.Cone@GodwinLewis.com
> 1331 Lamar, Suite 1665
> Houston, Texas 77010
> Telephone: 713.595.8300
> Facsimile: 713.425.7594
>
> *Attorneys for Defendant Halliburton Energy*
> *Services, Inc.*

*Confidential Pursuant to PTO 13*

/s/ Ky E. Kirby_____
Ky E. Kirby
ky.kirby@bingham.com
David M. Halverson
david.halverson@bingham.com
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

*Attorneys for Anadarko Petroleum Company
and Anadarko E&P Company LP*


*/s/ Edward Flanders*
Edward Flanders
edward.flanders@pillsburylaw.com
Stella Pulman
stella.pulman@pillsburylaw.com
1540 Broadway
New York, NY 10036
PILLSBURY WINTHROP SHAW PITTMAN
LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500

*Attorneys for MOEX USA Corporation, MOEX
Offshore 2007 LLC, and MOEX USA
Corporation*

*Confidential Pursuant to PTO 13*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Defendants' First Set of Requests for Admission to the State of Alabama has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 3rd day of September, 2014.

*/s/ Paul D. Collier*_____
Paul D. Collier