## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**In re:  Oil Spill by the Oil Rig
"Deepwater Horizon" in the Gulf
of Mexico, on April 20, 2010**

**This Pleading Relates To**
- **10-4182** (*Alabama v. BP*)
- **10-4183** (*Alabama v. Transocean, et. al*)
- **13-2645** (*Alabama v. Anadarko & MOEX*)
- **13-2646** (*Alabama v. Transocean*)
- **13-2647** (*Alabama v. Halliburton*)
- **13-2813** (*Alabama v. BP*)

**MDL No. 2179
SECTION: J**

**JUDGE BARBIER
MAGISTRATE SHUSHAN**


## THE STATE OF ALABAMA'S BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS AND/OR STRIKE
## THE "SET-OFF" CLAIMS OF BP, TRANSOCEAN, AND HALLIBURTON

LUTHER J. STRANGE
*Attorney General*

COREY L. MAZE
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*

Office of the Alabama Attorney
General
501 Washington Avenue
Montgomery, AL 36130
Phone: (334) 242-7300
Email:  cmaze@ago.state.al.us

Attorneys for the State of Alabama

## STATEMENT REGARDING ORAL ARGUMENT

The State does not request oral argument because the State seeks resolution of this issue as soon as practicable, preferably before or during the early stages of fact and 30(b)(6) depositions. *See generally Texas v. Caremark, Inc.*, 584 F.3d 655, 660 (5th Cir. 2009) ("the sovereign immunity issue must be resolved before further litigation (including discovery and motions for summary judgment) proceeds, so that the States are not subjected to litigation to which they have not consented").

That said, Alabama would be prepared to argue in support of its motion should the Court deem argument helpful, and Alabama would be prepared to argue sovereign immunity alongside the pending jury trial issue should the Court wish to combine the two arguments for expedience. *See* MDL 2179 Doc. 12345 (BP's Motion to Strike the State of Alabama's Jury Trial Demand).

## Table of Contents

**Statement Regarding Oral Argument** ....................................................................................... i

**Table of Contents** ..................................................................................................................... ii

**Table of Authorities** ................................................................................................................ iii

**Introduction** ............................................................................................................................... 1

**Statement of the Case** .............................................................................................................. 2

    A.    The *Caremark* Decision (5th Cir. 2009) ............................................................ 2

    B.    Defendants' Pleading of "Set-off" Claims ......................................................... 3

    C.    Potential Set-off Claim #1:  Post-Verdict Subtraction of BP Expenditures .................... 4

    D.    Potential Set-off Claim #2: Counterclaim for Violating Grant Terms ........................... 6

**Summary of the Argument** ...................................................................................................... 8

**Argument** ................................................................................................................................... 9

    I.    The Court Should Dismiss Defendants' Set-off Claims Because They Violate the State's Sovereign Immunity. ......................................................................................... 9

        A.    A Counterclaim that Alabama Violated the Terms of a Grant from BP Is a Permissive Set-off Claim that Violates the State's Sovereign Immunity. ............... 10

            1.    Alabama's Tort-based Claims Arise from a Different Transaction than Defendants' Counterclaim for Breach of Contract ................................. 10

            2.    Defendants Had Not Acquired a Claim Against the State for Violating the Terms of a Grant at the Time Defendants Pleaded Their Answers. ...................................... 11

            3.    The Defendants' Potential Counterclaim Targets Parties Other than the Plaintiff State. ............................................................................ 13

            4.    Defendants' Potential Counterclaim May Warrant a Different Form of Relief than the State Seeks. ............................................................ 14

            5.    Defendants' Potential Counterclaim May Seek an Amount Greater than the Relief Sought by the State. ......................................................... 15

            6.    Defendants Must Establish that this Litigation is the Only Vehicle for Claiming that the State Violated the Terms of its Grants. ................................. 15

        B.  Defendants' List of BP Expenditures that They Seek to Subtract from the Trier of Fact's Judgment Violates Alabama's Sovereign Immunity. ............................... 16

    II.  The Court Should Dismiss Defendants' Set-off Claims Before Fact and 30(b)(6) Depositions Commence, or Shortly Thereafter. ......................................................... 17

**Conclusion** .............................................................................................................................. 18

**Certificate of Service** ............................................................................................................. 19

TABLE OF AUTHORITIES

**Cases**

*Frederick v. United States*,
  386 F.2d 481 (5th Cir. 1967) ............................................................................ 14, 15

*McDaniel v. Anheuser-Busch, Inc.*,
  987 F.2d 298 (5th Cir. 1993) ................................................................................... 15

*National Liability & Fire Ins. Co. v. R & R Marine, Inc.*,
  756 F.3d 825 (5th Cir. 2014) ............................................................................ 10, 11

*Texas v. Caremark Inc.*
  584 F.3d 655 (5th Cir. 2009) ..................................................................... *passim*

**Other Authorities**

*Moore's Federal Practice*,
  §§13.10-13.16 ..................................................................... 9, 12, 13, 15

**Rules**

Fed. R. Civ. P. 13(a)(1) ..................................................................... 9, 12, 13

**THE STATE OF ALABAMA'S BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS AND/OR STRIKE DEFENDANTS' "SET-OFF" CLAIMS**

---

## INTRODUCTION

During the October 10th conference, counsel for BP acknowledged that Defendants are using fact discovery to generate a set-off counterclaim against the State for violating the terms of its grant agreements. Alabama seeks the prompt dismissal of this counterclaim and any other set-off claim that violates the State's sovereign immunity, so that the State may avoid wasting more time and resources defending against claims over which the Court has no jurisdiction.

1.   During written discovery and our meet-and-confers, Defendants have used the terms "offset" and "set-off" in reference to three distinct claims/defenses:

1.   <u>Mitigation Evidence</u>:  Defendants intend to introduce evidence of BP's expenditures during trial to attack the foundation of Alabama's net losses.  For example, experts might consider BP's expenditures, along with other aggravating and mitigating factors, to opine on the net value of Alabama's lost tax revenue—and thus, the trier of fact would consider BP's expenditures when determining Alabama's tax loss.

2.   <u>Counterclaim</u>:  Defendants intend to introduce evidence of BP's expenditures during trial to bolster a counterclaim that Alabama owes BP money for a breach of duty.  Specifically, BP has indicated that it might introduce evidence that Alabama violated the terms of a grant agreement during trial and then ask the Court to subtract ("set-off") the amount of the State's debt from the trier of fact's judgment of Alabama's tax loss.

3.   <u>Credit</u>:  After the trier of fact enters its verdict on Alabama's claims, Defendants intend to ask the Court to subtract ("set-off") certain BP expenditures from the State's judgment, likely dollar-for-dollar.

This motion deals only with #2 and #3, as each would take money away from the judgment of damages, and it raises only one argument: The Court lacks subject matter jurisdiction over set-off counterclaims and set-off credits for which Alabama has not waived its sovereign immunity.[1]

---

[1] The sovereign immunity argument is ripe because it affects the Court's subject matter jurisdiction.  Per *Caremark*, 584 F.3d at 657-58, all other arguments against Defendants' usage of BP's expenditures as mitigation evidence or as a reduction of the State's damages award are properly raised and decided later in the proceedings (*e.g.* motions for summary judgment), and Alabama reserves each of its remaining arguments for those proper times.

2.  Defendants have acknowledged that they are using fact discovery to fish for facts that would allow them to plead a counterclaim(s) for set-off relating to the State's expenditures of grant monies after fact discovery ends.  However, in *Texas v. Caremark Inc.* 584 F.3d 655 (5th Cir. 2009), the Fifth Circuit held that district courts are required to dismiss set-off claims against a State on sovereign immunity grounds before fact discovery commences, so that the State need not waste its time and resources answering discovery and preparing for fact and 30(b)(6) depositions regarding claims over which the Court has no jurisdiction.[2]

Relying on *Caremark*, Alabama seeks two things before fact and 30(b)(6) depositions begin, or shortly thereafter:  (1) The factual basis and value of Defendants' alleged counterclaims and credits and (2) dismissal of those set-off claims and credits from which the State is immune.

### STATEMENT OF THE CASE

### A.  The *Caremark* Decision (5th Cir. 2009)

Seven States alleged that Caremark Inc., a pharmacy benefit manager, fraudulently withheld reimbursement payments due to the States under the federal Medicaid Program.  *Id.* at 657.  In its answer, Caremark pleaded as its "Seventh Affirmative Defense" that it was entitled to "a set-off and/or recoupment of all amounts paid to the [plaintiffs] to which [such plaintiffs were] not entitled."  *Id.*  The States moved to dismiss Caremark's affirmative defense as a counterclaim against which the States had not waived their sovereign immunity and thus the Court lacked subject matter jurisdiction.  The district court denied the States' motion as "premature" and advised the Fifth Circuit that it had done so because it preferred to wait until "further discovery was conducted" and it had "address[ed] the numerous motions for summary judgment regarding threshold legal issues" before ruling on sovereign immunity.  *Id.*

---

[2] While Alabama seeks a prompt resolution of its sovereign immunity defense, Alabama waives any right to request a stay of discovery pending the Court's ruling.  Fact discovery should move forward as scheduled.

The Fifth Circuit vacated the district court's order and remanded for prompt consideration and decision on the States' invocation of sovereign immunity.  *Id.* at 660.   As for the district court's statement that the States' motion was "premature," the Fifth Circuit stated that, while the court's ruling "was understandable," "the sovereign immunity issue must be resolved before further litigation (including discovery and motions for summary judgment) proceeds, so that the States are not subjected to litigation to which they have not consented."  *Id.* at fn 2.

As for the merits, the Fifth Circuit noted that whether or not the States had waived their sovereign immunity against Caremark's pleading of "a set-off and/or recoupment" of its payments to the States "turn[ed] on the relationship between Caremark's Seventh Affirmative Defense and the claims asserted by the States in the underlying suit."  *Id.*   The Court held that "[t]he state waives its sovereign immunity only as to compulsory counterclaims"—*i.e.* "recoupment" claims that arise from the same transaction or occurrence.   Conversely, the States had not waived sovereign immunity as to any reductions that amounted to permissive counterclaims—*i.e.* "set-off" claims arising from a different transaction or occurrence.  *Id.*   Because "[r]esolution of the question require[d] factual examination of the transactions that form the basis of the underlying complaint and the transactions that are at the heart of Caremark's 'counterclaims,'" *id.*, the Fifth Circuit remanded the case back to the district court.

## B.  *Defendants' Pleading of "Set-off" Claims*

Like Caremark, BP, Transocean, and HESI pleaded their set-off and recoupment claims against Alabama as "affirmative defenses:"

- BP's Thirteenth Affirmative Defense:  "To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities."  *See* MDL 2179 Doc. 4905 at 202.

- HESI's Second Affirmative Defense:   "HESI asserts the defenses of set off, recoupment, payment and release, and further asserts that it is entitled to a credit for any and all monies paid by third-party defendants, cross-defendants, co-defendants, a collateral source, and/or that the State of Alabama receives from any source as compensation for its alleged losses."  *See* MDL 2179 Doc. 4910 at 43.

- TO's Twelfth Affirmative Defense:  "The Transocean Defendants assert the defenses of set off and recoupment and further assert that they are entitled to a credit for any and all amounts paid by responsible parties and/or that Plaintiff receives from any source as compensation for alleged losses."  *See* MDL 2179 Doc. 931 at 15.

- TO's Twenty-Eight Affirmative Defense:  "The Transocean Defendants are entitled to set-off, should any damages be awarded against them, in the amount of damages or settlement amounts recovered by Plaintiff with respect to the same alleged injuries. The Transocean Defendants are also entitled to have any damages that may be awarded to Plaintiff reduced by the value of any benefit or payment to Plaintiff from any collateral source."  *See* MDL 2179 Doc. 931 at 18.

After the October 10th conference, it appears that Defendants seek to reduce Alabama's judgment via set-off in at least two ways:  (1) By claiming that Alabama, its local governments, and/or other entities misappropriated BP grant funds and (2) by claiming that Defendants are entitled to subtract certain BP expenditures from the judgment of Alabama's damages.

### C.  Potential Set-off Claim #1:  Post-Verdict Subtraction of BP Expenditures

To discover whether Defendants intended to use BP's expenditures as mitigation evidence against Alabama's damages claims during the trial, or to reduce the trier of fact's judgment of damages post-verdict, or both, Alabama propounded two, distinct interrogatories:

13.   To the extent that you contend you ***are entitled to an offset*** to the State's economic losses resulting from the oil spill, provide a detailed description supporting your contention, including, but not limited to the value of the offset you are entitled to, [and] all payments and/or contributions, date of payments and/or contributions, the recipient of the payments and/or contributions, the recipient of the payments and/or contributions, the designated use of said payments and/or contributions, and the resulting impact you contend effectuates an offset.[3]

---

[3] Alabama noted in its request that its use of the term "offset" "shall encompass the terms 'offset,' 'set-off,' 'recoupment,' and/or any other legal claim or defense that reduces Alabama's recovery."  *Id.* at 21.

14.   To the extent that you contend the State's ***economic losses have been mitigated by*** payments and/or contributions made by you, provide a detailed description supporting your contention, including, but not limited to, the value of your mitigation efforts, all payments and/or contributions (identified by each payment, contribution, and payor) made by you that you contend contribute to the mitigation, the date of each payment and/or contribution, the recipient of the payment and/or contribution, and the resulting impact for each payment and/or contribution that you contend mitigates your obligation to pay damages.

Attachment A at 7 (emphasis added).

BP objected to these Interrogatories as "premature because discovery has just begun" and "premature to the extent that it calls for expert discovery."   Attachment B at 29, 32.   BP then responded to both Interrogatories with the same laundry list of its Gulf-wide, post-spill expenditures—a list that totaled more than $20 billion and included many recipients other than the State of Alabama.[4]   *Id.* at 29-34.

Alabama noted its perceived deficiencies in BP's responses to Interrogatory #13 and #14 in a letter dated September 14, 2014.   *See* Attachment C.   To make our purpose clear, Alabama began by noting that "these contention interrogatories arise in large part from BP's Thirteenth Affirmative Defense ("AD-13")" and that "Interrogatories #13 and #14 are distinct and designed to help us understand your AD-13:"

Interrogatory #14 asks, generally, what payments or contributions you contend 'mitigate[d]' the State's economic loss.   Interrogatory #13 demonstrates whether you intend to take the next step, as AD-13 suggests, by asking what payments or contributions you claim can be subtracted, dollar for dollar, from the trier of fact's determination of the State's losses, once that determination is made.

*Id.*   After pointing out why Alabama believed that a list of $20 billion in Gulf-wide expenditures was not responsive to our Interrogatories, Alabama asked BP to supplement its Response:

---

[4] With Alabama's consent, Transocean has yet to respond to Alabama's discovery requests.   Like BP, Halliburton objected to the State's Interrogatory #13 "as premature as discovery is still in its beginning stages."   Attachment D at 15.   HESI then responded that it was "entitled to an offset or credit" for (a) "any and all payments received by Alabama from BP, any other co-defendant, or any other private or governmental entity," and (b) "taxes paid to Alabama on income associated with any such payments related to the oil spill."   *Id*

BP should supplement its responses to Interrogatories #13 and #14. The response to #14 should be limited to just those payments or contributions (but all such payments and contributions) that BP claims that the trier of fact can consider as mitigation when determining the amount of the State's losses. ***The response to #13 should be limited to just those payments or contributions (but all such payments and contributions) that BP intends to argue can be subtracted from the trier of fact's determination of the State's losses as a set-off or other equitable reduction in liability***. And all payments and contributions listed in the supplement responses should include the details described above and requested in the Interrogatories—including but not limited to the exact amount of offset and/or mitigation BP contends is attributable to Alabama's claims.

*Id.* (emphasis added). After further discussions, BP amended its response to Interrogatory #13 on October 3, 2014 by re-listing the same $20+ billion in Gulf-wide expenditures, albeit with greater detail regarding BPXP's alleged spending within Alabama. *See* Attachment E at 36-40.

### D. Potential Set-off Claim #2: Counterclaim for Violating Grant Terms

Several of the grants that BP lists as a potential set-off contain language expressly waiving BP's right to claim a set-off against the State's OPA and general maritime law claims. *See*, *e.g.*, Attachment F at 1. During our meet-and-confers, Alabama learned that Defendants were considering a counterclaim that Alabama had breached its duties under one or more of those grant agreements (we believe, in an attempt to void the express language waiving set-offs). *See*, *e.g.*, April 18, 2014 Email from Corey Maze to Defense Counsel (recounting the Parties' conference) (on file with counsel).

Several of Defendants' discovery requests have been targeted toward establishing such a grant-based counterclaim, including the following:

- Rule 30(b)(6) Topic #16: Your knowledge of how all payments, grants, contributions or donations that the State has received from BP from 2010 until the present at both the state level and the county level, including all response, tourism, seafood and other block grants, relating to the Deepwater Horizon Incident and/or the Oil Spill, have been or will be disbursed within the State.

- <u>Interrogatory #14</u>:  Provide an accounting of all funds, payments, grants, contributions, or donations that the State has received from BP from 2010 until the present, including all disbursements of tourism, seafood and other block grants, and any other payments or economic assistance received, relating to the Deepwater Horizon Incident and/or the Oil Spill.

Alabama has responded to Interrogatory #14, twice, and BP has asked for more details, twice.

The following is an example of the minutia BP seeks with regard to Alabama's disbursement of

the grant monies under Interrogatory #14:

> Alabama references documents that have generic entries for things like personnel costs, employee benefits, travel, and similar expenditures, without any accompanying detail as to who the personnel were, what they worked on, the nature of their travel, or similar details. As just one example, concerning the disbursement of funds for Alabama's Historical Commission, the referenced document, AL-ED-000031681, lists personnel costs and employee benefits in 2013 and 2014. It is unclear who these personnel were and what purpose the allocated funding served more than three years after the oil spill. As another example, the referenced document AL-ED-000031677, relating to disbursements by the office of the Governor, shows several allocations for out of state travel by the general counsel of the University of Alabama system, among others. BPXP would like more information regarding this travel to determine whether it falls within the terms of the grant.

Attachment H (Letter from Paul Collier to Corey Maze, October 1, 2014).

During the October 10th conference, counsel for BP confirmed that Defendants were using

fact discovery to determine whether to pursue a counterclaim for breach of the grant agreements:

> We have furthered our request and discovery in this case asking for details of how the grant money was spent.  The answer to that question will determine whether or not we have potential claims.  If they have not used the money in accordance with the language of the grant, then there's an argument that we would have a setoff and that any judgment or amount could be reduced after a verdict was entered. …
>
> We won't know whether we have a claim about those grants until we see how the money was spent.

October 10, 2014 Trans. 47 (Statement of Chad Morriss).

The State promptly notified the Court that it would file this motion to dismiss to protect

the State against further discovery on a barred claim.  *Id.* at 48 (Statement of Corey Maze).

**SUMMARY OF THE ARGUMENT**

The Court lacks subject matter jurisdiction over each of Defendants' claims/defenses that would reduce the trier of fact's judgment of Alabama's damages claims, unless the Defendants' claim/defense constitutes a compulsory counterclaim for "recoupment," rather than a permissive claim for "set-off."[5]  *See Texas v. Caremark Inc.*, 584 F.3d 655 (5th Cir. 2009).

1A.   Defendants' counterclaim that Alabama violated the terms of a grant agreement(s) is not a compulsory "recoupment" claim, as required to avoid sovereign immunity, for any of six distinct reasons.   First, Alabama's claims arise from oil striking our property, which is not the same transaction that gave rise to Defendants' counterclaim—*i.e.* the signing and execution of a grant agreement.   Second, Defendants' counterclaim had not matured at the time Defendants filed their answers in December 2011, as demonstrated by the fact that Defendants failed to plead the counterclaim and are still searching for its factual basis three years later.   Third, the Plaintiff State is not a party to many of the cited grants.   Fourth, Defendants claims may necessitate a different form of relief (*i.e.* specific performance) than the relief sought by the State (*i.e.* monetary damages).   Fifth, Defendants appear to be claiming a set-off amount that exceeds the award sought by the State.   Sixth, Defendants may be able to raise this claim in another proceeding.

.   1B.   As presently pleaded, Defendants' claim to subtract BP expenditures from the trier of fact's judgment of Alabama's damages claims is barred because (a) Defendants seek a set-off that exceeds the award sought by Alabama and (b) Defendants seek a set-off based on payments that went to third parties, not the Plaintiff State.

2.   *Caremark* requires dismissal on sovereign immunity grounds before fact and 30(b)(6) depositions begin, or shortly thereafter, to protect the State from defending against barred claims.

---

[5] As *Caremark* demonstrates, a claim for set-off is subject to Eleventh Amendment scrutiny, regardless of whether Defendant pleads it as an "affirmative defense" or a "counterclaim."

**ARGUMENT**

Defendants cannot use document production and fact and 30(b)(6) depositions to generate a counterclaim for set-off, nor can they withhold the factual basis and value of their set-off credits until they submit expert reports. The State has the right to have set-off claims that violate the Eleventh Amendment dismissed now, so that the State can avoid the unnecessary time and expense of preparing for fact and 30(b)(6) depositions on claims over which this Court has no jurisdiction. *See Caremark*, 584 F.3d at 660 ("the sovereign immunity question must be decided before further litigation proceeds; otherwise, the object and purpose of sovereign immunity—to shield the states from the burden of suits to which they have not consented—is violated").

**I.    The Court Should Dismiss Defendants' Set-off Claims Because They Violate the State's Sovereign Immunity.**

To survive a sovereign immunity challenge, any claim that would reduce the trier of fact's judgment of a State's damages (*i.e.* take money away from the State) must meet the standards for a compulsory "recoupment" claim, as opposed to a permissive "set-off" claim. *See Caremark*, 584 F.3d at 658-60. Among other factors, compulsory recoupment claims:

- Must arise from the same transaction or occurrence as the State's claims;

- Must have accrued before Defendants filed their answer;

- Must be against the State, rather than a non-party;

- Must seek relief of the same form or nature as the State's claims;

- Must not seek a reduction that exceeds the amount sought by the State; and,

- Must be barred in subsequent actions if not pleaded in the present action.

*See Caremark* 584 F.3d at 659; *Fed. R. Civ. P.* 13(a); *Moore's Federal Practice-Civil*, §§13.10-13.16, 13.90 (regarding recoupment and other compulsory counterclaims).

9

As detailed below, Defendants' potential counterclaim for an alleged violation of the State's grant agreement(s) is clearly a permissive set-off claim that is due to be dismissed before depositions commence. *See* Argument I(A). It is harder to judge Defendants' claim(s) to subtract BP's expenditures because, we believe, Defendants have yet to identify the list of expenditures they intend to claim as a set-off credit. *See* Argument I(B).

## A. A Counterclaim that Alabama Violated the Terms of a Grant from BP Is a Permissive Set-off Claim that Violates the State's Sovereign Immunity.

Defendants' potential counterclaim that Alabama violated the terms of a grant agreement fails several of the requirements to be a compulsory counterclaim for recoupment, any one of which subjects the counterclaim to pre-discovery dismissal as a violation of the State's sovereign immunity. *See Caremark*, 584 F.3d at 659-60.

### 1. *Alabama's Tort-based Claims Arise from a Different Transaction than Defendants' Potential Counterclaim for Breach of Contract.*

Defendants' potential counterclaim that Alabama violated the terms of a grant agreement is akin to a breach of contract. Alabama's damage claims do not rise from the same transaction as this counterclaim because the State's claims have nothing to do with the contract.

The Fifth Circuit employs the logical relationship test to determine whether a counterclaim arises from the "same transaction" and is thus compulsory: "A logical relationship exists 'when the counterclaim arises from the same 'aggregate of operative facts' in that the same operative facts serve[ ] as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant.'" *National Liability & Fire Ins. Co. v. R & R Marine, Inc*., 756 F.3d 825, 835 (5th Cir. 2014). Defendants' potential counterclaim(s) fail both halves of this test.

First, the facts that led to Alabama's claims—*i.e.* oil hitting Alabama's property; tax revenues decreasing; and departments expending resources—did not activate any "dormant legal rights" of the Defendants (liabilities, perhaps, but not rights).  *Id.*  The subsequent signing of the grant agreement(s) activated Defendants' rights.

Second, the Parties' claims do not share the "same aggregate of operative facts."  *Id.* Alabama's damages are based on oil hitting our property; State departments spending or losing money because oil hit our property; and the failure to receive taxes because oil hit our property. None of those facts are necessary to prove Defendants' potential counterclaim for breach of contract.

Defendants must prove that a binding contract/agreement existed between BP and the State and that the State violated the terms of that contract/agreement.  None of those are facts are necessary to prove the State's tort-based damages claims.

In other words, the Parties would be trying two separate cases based on two distinct sets of facts.  BP's most recent 'golden rule letter' proves the point.  BP seeks more factual details on the personnel costs incurred by the Alabama Historical Commission in 2013-14 and the travel costs incurred by the Governor's Special Counsel for Spill and NRD-related matters.  *See* Attachment H at 6.  These details have nothing to do with proving the State's damages claims; they are factual nuggets intended to lead a jury down a rabbit trail.

2. *Defendants Had Not Acquired a Claim Against the State for Violating the Terms of a Grant at the Time Defendants Pleaded Their Answers.*

Defendants' failure to plead in their answers any facts that would prove the State violated the terms of a grant agreement dooms any argument that such a claim is compulsory.  *See* MDL 2179 Docs. 4905 (BP Answer), 4910 (HESI Answer), 931 (Transocean Answer).  So too does BP's acknowledgement that Defendants are still trying to acquire such a claim, *then* plead it.

To be considered compulsory, a claim must have been fully mature at the time answers were served.  *See* Fed. R. Civ. P. 13(a)(1) ("A pleading must state as a counterclaim any claim that--at the time of its service--the pleader has against an opposing party").   Or, stated another way, a counterclaim that "did not accrue or mature until after service of the responsive pleading (that is, the answer in most cases), is not compulsory in the action."  *Moore's Federal Practice*, §13.13.  If there is any contingency in the claim at the time answers are filed, then the claim is permissive (*i.e.* set-off), not compulsory (*i.e.* recoupment).  *See id.*  ("In order to be mature for purposes of the compulsory counterclaim rule, the counterclaim must be completely vested at the time the pleader serves the responsive pleading, and not merely contingent.").

Defendants last filed answers on December 14, 2011.  *See* MDL 2179 Doc. 4905, 4910. Counsel for BP admitted at the October 10th Conference that BP had not pleaded a counterclaim for breach of contract/agreement in their answer, and that Defendants were fishing for facts that would allow them to add a counterclaim at a later date:

> We have furthered our request and discovery in this case asking for details of how the grant money was spent.  ***The answer to that question will determine whether or not we have potential claims***.  If they have not used the money in accordance with the language of the grant, then there's an argument that we would have a setoff and that any judgment or amount could be reduced after a verdict was entered. … ***We won't know whether we have a claim about those grants until we see how the money was spent.***

Trans. 47 (emphasis added).  And BPXP's 'golden rule letter' shows that they are digging for counterclaims that accrued well after their answers were filed in 2011:

> As just one example, concerning the disbursement of funds for Alabama's Historical Commission, the referenced document, AL-ED-000031681, lists personnel costs and employee benefits in 2013 and 2014. It is unclear who these personnel were and what purpose the allocated funding served more than three years after the oil spill.

Attachment H at 6.

12

By (a) seeking evidence of events that occurred after their answers were filed and (b) reserving the right to plead a counterclaim years after filing their answers, Defendants have necessarily categorized their breach of contract claim as a permissive counterclaim for set-off. *See Moore's Federal Practice* § 13.13 ("Once the claim matures, however, the pleader may have the option—with leave of court—to bring the claim as a permissive counterclaim.").   And, again, permissive counterclaims are barred by sovereign immunity.  *See Caremark*, 584 F.3d at 659-60.

> 3. *The Defendants' Potential Counterclaim Targets Parties Other than the Plaintiff State.*

Compulsory counterclaims can only be asserted against "an opposing party" to the litigation.  Fed. R. Civ. P. 13(a).  Applied here, Rule 13 dictates that the Defendants' potential counterclaim(s) be asserted against the State in the same capacity in which the State sued Defendants.  *See Moore's Federal Practice*, §13.50[2][b] ("Even if the counterclaim is within a waiver or partial waiver of sovereign immunity, a court may find that the pleader brought the counterclaim against the United States in a different capacity than that in which it brought suit, and disallow the claim.").

Because Defendants have failed to plead a counterclaim for breach of contract/agreement in their answers to date, it is impossible to discern the "Defendant" to those counterclaims.  But we note that for many of the grants listed by Defendants, it will not be the Plaintiff State.

One example is the $7 million grant to the Alabama Gulf Coast Convention & Visitors Bureau to promote Alabama tourism.  *See* Attachment I.  The Bureau has since changed its name to Gulf Shores and Orange Beach Tourism ("GSOBT").  *See* AGCCVB About Page, http://www.agccvb.org/about/.   BPXP served a third-party subpoena on GSOBT on September 8, 2014, *see* Attachment J, a clear indication that the GSOBT is not a party to this litigation.

Two more examples are the $16 million agreement to promote Alabama tourism and the $4 million agreement for seafood marketing, both of which are between BPXP and the Office of the Governor.  *See* Attachments K, L.  Counsel for BP made Defendants' position clear during the October 10th Conference:  "[T]he governor is not a party to this litigation. The party to the litigation is the State of Alabama."  Trans. 43 (Statement of Andrew Langan).   By taking this position, Defendants waived any argument that they can raise a compulsory counterclaim against the State stemming from any grant/agreement that BP made with the Governor.

In sum, several of the grants BP lists as potential set-offs are not with the Plaintiff State, and BP is seeking evidence of how these grants/agreements have been administered all the way down to the county level.  Any counterclaim arising from alleged mismanagement or improprieties by non-parties such as the Governor, the GCCVB, or a local government would be barred in this litigation by the Plaintiff State's sovereign immunity.

4. *Defendants' Potential Counterclaim May Warrant a Different Form of Relief than the State Seeks.*

"Sovereign immunity is not waived as to permissive counter-claims, 'which do not meet the 'same transaction or occurrence test' *nor to counter-claims of a different form or nature than that sought by it as plaintiff* nor to counter-claims exceeding in amount that sought by it as plaintiff.'"  *Caremark,* 584 F.3d at 659 (quoting *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967) (emphasis added).  It is possible that, under the terms of the grant/agreement at issue, Defendants' counterclaims would properly seek a form of relief other than money damages from the State—*e.g.* specific performance.  If that is the case, then the counterclaim is permissive and barred by Alabama's sovereign immunity in this litigation.  *Id.*  Alabama reserves its right to argue this factor in more detail if and when Defendants reveal the specifics of their counterclaim.

   5.  *Defendants' Potential Counterclaim May Seek an Amount Greater than the Relief Sought by the State.*

"Sovereign immunity is not waived as to permissive counter-claims, 'which do not meet the 'same transaction or occurrence test' nor to counter-claims of a different form or nature than that sought by it as plaintiff *nor to counter-claims exceeding in amount that sought by it as plaintiff.*'" *Caremark,* 584 F.3d at 659 (quoting *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967) (emphasis added). BP presently lists more than $20 billion in Gulf-wide expenditures as potential set-offs, a figure than far exceeds the amount of damages sought by the State. To the extent that Defendants' potential counterclaim uses those expenditures to claim a set-off that exceeds the State's damages, it violates the State's sovereign immunity. *Id.*

   6.  *Defendants Must Establish that this Litigation is the Only Vehicle for Claiming that the State Violated the Terms of its Grant Agreements.*

Finally, to be considered "compulsory" and thus avoid sovereign immunity, Defendants must aver and establish in their responsive brief that their counterclaim(s) against the State for violating the terms of a grant cannot instead be brought in a subsequent action. *See Moore's Federal Practice*, §13.14 ("While the text of Rule 13 does not explicitly state the prohibition, courts consistently rule that a claim that was compulsory in a prior suit is barred in a subsequent action based on the same claim.") (citing *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993)). Because the State does not yet know the specifics of Defendants' potential counterclaim, we reserve the right to argue this requirement in our reply brief.

* * *

Defendants' potential counterclaim(s) will fail two of these six requirements for compulsory counterclaims, regardless of how Defendants respond: (1) A claim that Alabama violated the terms of a grant does not rise from the same transaction as the ones that caused

15

Alabama's damages and (2) Defendants' counterclaim was not pleaded in Defendants' answers because the counterclaim had not fully accrued when Defendants pleaded their answers. Accordingly, the Court need not wait to dismiss (or perhaps more correctly, bar) any counterclaim alleging that the State violated of the terms of a BP grant.

### B. Defendants' List of BP Expenditures that They Seek to Subtract from the Trier of Fact's Judgment Violates Alabama's Sovereign Immunity.

BP's response to the State's Interrogatory #13 portends that Defendants will ask the Court to subtract certain BP expenditures from the trier of fact's judgment as a set-off credit, likely dollar-for-dollar. If Defendants intend to use the list currently pleaded by BP as its set-off claim, the claim violates Alabama's sovereign immunity for two reasons. First, BP lists more than $20 billion in expenditures as a potential set-off, a figure that far exceeds the amount sought by the State in this case. *See Caremark,* 584 F.3d at 659 ("Sovereign immunity is not waived as to … counter-claims exceeding in amount that sought by it as plaintiff"). Second, several of the listed grants/agreements are between BP and parties other than the State, and the State has not consented to having its claims reduced based on monies given to other parties.

The State expects that Defendants will narrow their list of potential set-offs in response to this motion and/or the upcoming motions to compel. The State reserves its right to argue sovereign immunity against the Defendants' revised set-off claim in its reply brief.

## II.     The Court Should Dismiss Defendants' Set-off Claims Before Fact and 30(b)(6) Depositions Commence, or Shortly Thereafter.

The Fifth Circuit twice stated in *Caremark* that a State's invocation of sovereign immunity must be judged before fact discovery begins so that the State does not waste its time and resources responding to claims over which the Court lacks jurisdiction.  *See Caremark*, 584 F.3d at 658 ("the sovereign immunity question must be decided before further litigation proceeds; otherwise, the object and purpose of sovereign immunity—to shield the states from the burden of suits to which they have not consented—is violated"); *id.* at 659 ("the sovereign immunity issue must be resolved before further litigation (including discovery and motions for summary judgment) proceeds, so that the States are not subjected to litigation to which they have not consented").

Of course, discovery has already begun in the form of written discovery and document production, which is how the State first discovered Defendants' intent to raise a grant-based counterclaim.  The State waives any right to seek suspension of the Court's scheduling order pending resolution of this motion.  Alabama wants discovery to move forward.

But the point of *Caremark* remains:  Sovereign Immunity must be judged promptly to avoid subjecting the State to discovery on claims over which the Court has no jurisdiction.  And the timing of our motion highlights our primary concern: Preparing for the upcoming fact and 30(b)(6) depositions.  Now that BP has revealed to the Court that it intends to use fact discovery (including Interrogatory #14) and the upcoming depositions (including Rule 30(b)(6) Topic #16) to seek facts that would allow them to plead a counterclaim against the State for violating the terms of a grant agreement, the Court should dismiss, strike, and/or bar this and any other set-off claim to protect the State from wasting a large portion of its time preparing its witnesses to address a claim over which the Court has no jurisdiction.

**CONCLUSION**

The Court should grant the State's motion to dismiss or strike any set-off claim or defense that violates the State's sovereign immunity.

Respectfully submitted this 17th day of October, 2014.

LUTHER J. STRANGE
 *Attorney General*

 /s/ Corey L. Maze
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*

Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130
Phone: (334) 242-7300
Email:  cmaze@ago.state.al.us

Attorneys for the State of Alabama

18

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on October 17, 2014.

  /s/ Corey L. Maze
COREY L. MAZE
*Special Deputy Attorney Genera*l