

E-SERVICE

55729033
Jul 14 2014
08:30PM

File & ServeXpress

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re:  Oil Spill by the Oil Rig**<br>　　　　**"Deepwater Horizon" in the Gulf**<br>　　　　**of Mexico, on April 20, 2010**<br><br>**This Pleading Relates To**<br>　• **10-4182** (*Alabama v. BP*)<br>　• **10-4183** (*Alabama v. Transocean, et. al*)<br>　• **13-2645** (*Alabama v. Anadarko & MOEX*)<br>　• **13-2646** (*Alabama v. Transocean*)<br>　• **13-2647** (*Alabama v. Halliburton*)<br>　• **13-2813** (*Alabama v. BP*) | **MDL No. 2179**<br>**SECTION: J**<br><br>**JUDGE BARBIER**<br>**MAGISTRATE SHUSHAN** |

## THE STATE OF ALABAMA'S FIRST SET OF
## DISCOVERY REQUESTS TO THE DEFENDANTS
## RELATING TO THE STATE'S COMPENSATORY DAMAGES PHASE

The State of Alabama (the "State") hereby serves on Anadarko, BP, Halliburton, MOEX, and Transocean (the "Defendants") its First Set of Discovery Requests for the State's Compensatory Damages Phase pursuant to the Federal Rules of Civil Procedure and the Court's Scheduling Order(s). The Defendants are to provide responses to these Interrogatories and Requests within the time periods set out in the Court's Scheduling Order(s). All documents and electronically stored information responsive to these requests shall be produced to the Office of the Attorney General, c/o Special Deputy AG Corey L. Maze, 501 Washington Avenue, Montgomery AL 36104. By serving these requests, the State does not admit or concede the relevance or admissibility of information or documents responsive to the requests.

1

## REQUESTS FOR ADMISSION

1.      Admit that MC252 oil did not exist within the State of Alabama before April 20, 2010.

2.      Admit that oil-related materials entered the State of Alabama after April 20, 2010.

3.      Admit that between April 20, 2010 and the present, oil-related materials were removed from every oil spill response activity SCAT segment located within Baldwin County, Alabama bordering the Gulf of Mexico.

4.      Admit that the State of Alabama incurred removal costs as a result of oil-related materials migrating into the State of Alabama.

5.      Admit that the State of Alabama incurred tax losses as a result of oil-related materials migrating into the State of Alabama.

6.      Admit that oil-related materials were buried by sand in the Gulf of Mexico supratidal and intertidal zones of the State of Alabama after April 20, 2010.

7.      Admit that submerged oil mats presently exist within the State of Alabama.

8.      Admit that submerged oil mats removed from the State of Alabama contained MC252 oil.

9.      Admit that oil-related materials have washed up on the State of Alabama's Gulf of Mexico coastline in 2014.

10.      Admit that oil spill response activities still occur within the State of Alabama.

11.      Admit that SCAT designated 38 miles of Alabama's Gulf of Mexico shoreline as "heavily oiled."

12.     Admit that oil-related materials were removed from each of the land parcels identified in documents AL-ED-000001 through AL-ED-000009.[1]

13.     Admit that oil-related materials were removed from each of the segments identified in documents AL-ED-000001 through AL-ED-000009 on more than one occasion between April 20, 2010 and the present.

14.     Admit that land parcels indentified in documents AL-ED-000001 through AL-ED-000009 that are contiguous to the Gulf of Mexico were subject to multiple oil spill response activities, including "Operation Deep Clean".

15.     Admit that Alabama's coastal areas attract tourists.

16.     Admit that Alabama's coastal areas generate tourism for the State of Alabama.

17.     Admit that tourists are less likely to visit Alabama's coastal areas if those coastal areas contain oil-related materials.

18.     Admit that the number of tourists to the Alabama Gulf Coast declined in 2010 as a result of the oil spill.

19.     Admit that a decline in the number of tourists to Alabama's coastal counties in 2010 resulted in a decline in tourism in 2010.

---

[1] Documents AL-ED-000001 through AL-ED-000009 were produced within State's document production Volume 001 (AL-ED001).

## INTERROGATORIES

1.     Identify your officers, directors, employees, contractors, and/or persons acting on your behalf who organized, participated in, assisted in or oversaw your beach and/or coastal cleanup operations during the Macondo oil spill response within the State of Alabama, including each person's role, responsibility, affiliation, nature of activities performed, time duration of involvement, amounts paid by you for services, and specific location of involvement.

2.     Identify your officers, directors, employees, and/or persons acting on your behalf that organized, participated in, oversaw or provided input into your efforts to mitigate economic losses sustained by the State of Alabama, its individuals, and/or its businesses following the Macondo oil spill, including each person's role, responsibility, affiliation, and time period of involvement.

3.     Identify all third parties, including State of Alabama employees or agents, whom you believe possess knowledge, information, studies, and/or documents regarding or relating to the State of Alabama's claims.

4.     Identify all persons with whom you, your officers, directors, employees, and/or other persons acting on your behalf have communicated and/or consulted with, either directly or indirectly, from April 20, 2010 to present, regarding either the State of Alabama's potential or actual economic and/or property claims resulting from the oil spill, including the name of all persons encompassed in the communication, their affiliation, their role and responsibilities, time of communication, and the specific substance of the communication.

5.     Identify all statements or admissions you contend were made by any State of Alabama employee or agent that support your contentions and/or defenses regarding the State of Alabama's claims, including the identity of the person making the statement or admission, the

alleged statement or admission, when the statement or admission was made, all persons you contend received the statement and/or admission, and your perceived authority of the person to make the admission.

6.      Identify and describe all instances of oil-related material events within the State of Alabama and 15 miles therefrom, including but not limited to, the date of discovery, location of discovery, description of discovery (stranded, buried, water surface, water subsurface), volume, severity, weight, whether recovered, the recovering party, and the method and location of disposal.

7.      Identify all method(s) or criteria utilized by you to fingerprint, identify and/or otherwise confirm the source of oil-related materials recovered during oil spill response activities as those originating from the MC252 well and the person(s) who applied such method or criteria to identify or confirm the source of oil-related materials on your behalf.

8.      To the extent that you, your officers, directors, employees, and/or persons working on your behalf have attempted to quantify the oil spill's economic impact (whether negative or positive) on the State of Alabama, including its economy, geographical locations or business industries, describe in detail your quantification efforts (regardless of how advanced those efforts may be), including, but not limited to, all persons involved in each quantification attempt; their affiliation with you; specific quantification method(s), analysis modeling and limitations utilized; any studies, analysis, calculations and/or modeling relied upon; any changes to your quantification method(s) over time; the status of quantification; all results of your quantification efforts; and data retained, consulted or reviewed in connection with any such quantification.

9.     To the extent that you, your officers, directors, employees, and/or persons working on your behalf have attempted to quantify the oil spill's impact on the State of Alabama's tax streams (regardless of how advanced), describe in detail your quantification efforts, including, but not limited to, all persons involved in each quantification attempt; their affiliation with you; specific quantification method(s), analysis modeling and limitations utilized; any studies, analysis, calculations and/or modeling relied upon; any changes to your quantification method(s) over time; the status of quantification; all results of your quantification efforts; and data retained, consulted or reviewed in connection with any such quantification.

10.     To the extent you, your officers, directors, persons and/or employees working on your behalf discovered, but did not recover, oil-related materials within the State of Alabama, identify each instance, including but not limited to, the date of discovery, location of discovery, description of discovery (stranded, buried, water surface, water subsurface), volume, severity, weight, the reasons why oil-related materials were not recovered, and specific persons consulted to determine whether to recover the oil-related materials.

11.     To the extent you, your officers, directors, persons and/or employees working on your behalf are aware of the existence of submerged oil mats within the State of Alabama or 15 miles therefrom from April 20, 2010 to present, identify and describe the existence of these submerged oil mats, including, but not limited to, the location(s) of the submerged oil mat, its surface area, thickness, weight, volume, date of discovery, identification of corresponding onshore SCAT segments date of removal and/or recovery, the volume of submerged oil mat removed versus not removed, and all persons known to you who either were present at the time of or possess knowledge of the responsive events.

12.     To the extent you conducted or possess within your control an oil constituent baseline survey for any location within the State, please describe the baseline survey results in detail, including, but not limited to, the baseline survey method(s) utilized by BP, the persons responsible for constructing the baseline survey, the persons responsible for performing the baseline survey, the results of the baseline survey test and any comparison results thereafter.

13.     To the extent that you contend you are entitled to an offset to the State's economic losses resulting from the oil spill, provide a detailed description supporting your contention, including, but not limited to, the value of the offset you contend you are entitled to, all payments and/or contributions, date of payments and/or contributions, the recipient of the payments and/or contributions, the payor of the payments and/or contributions, the designated use of said payments and/or contributions, and the resulting impact you contend effectuates an offset.

14.     To the extent that you contend the State's economic losses have been mitigated by payments and/or contributions made by you, provide a detailed description supporting your contention, including, but not limited to, the value of your mitigation efforts, all payments and/or contributions (identified by each payment, contribution, and payor) made by you that you contend contribute to the mitigation, the date of each payment and/or contribution, the recipient of the payment and/or contribution, and the resulting impact for each payment and/or contribution that you contend mitigates your obligation to pay damages.

15.     To the extent that you contend there are other economic factors unrelated to the oil spill that contributed to the State's losses, identify and describe in detail all factors supporting your contention, including but not limited to, the timing of each economic factor, the cause of the

economic factor, and the economic impact and contributing "loss" associated with each economic factor.

16.     To the extent that you contend certain State of Alabama business industries did not sustain losses resulting from the oil spill, please identify the industries you contend were not impacted, including the specific reasons and/or basis for your contention that these industries were not impacted by the oil spill.

17.     To the extent that you contend the State's alleged economic loss(es) are and/or were limited to certain geographic location(s) within the State of Alabama, please identify the geographic location(s) as well as the reasons you contend economic losses are limited to these location(s).

18.     To the extent you contend the State has not met its obligations under the Oil Pollution Act of 1990 ("OPA"), including but not limited to OPA's presentment procedure, describe in detail the basis for your contention.

19.     To the extent you contend that OPA prohibits a State entity from maintaining a physical property damage claim for State-owned lands separate and apart from a Natural Resource Damage claim, describe in detail the basis for your contention(s).

20.     To the extent you contend that the State's damages or injuries were the result of an occurrence and/or accident unforeseeable by you,[2] identify the occurrence(s) and/or accident(s) that were unforeseeable to you and the resulting damages or injuries from those occurrence(s) and/or accident(s).

---

[2] As referenced in the following Answers:   BP (Doc. 4905 at 200), Halliburton (Doc. 4910 at 46), and Transocean, (Doc 931 at 16).

21.     To the extent you contend that a supervening and/or intervening event caused, either in whole or in part, the State's damages,[3] identify each event and describe in detail why you believe the event is applicable to the State's oil spill economic damage claims.

22.     To the extent you contend that the State has failed to mitigate damages,[4] describe in detail your contentions, including the steps that you contend the State should have taken to mitigate damages.

23.     To the extent you are raising any claims or defenses in this lawsuit, identify and explain in detail your claims and defenses, including any information, communications, admissions or documents supporting your claims and defenses.

---

[3] As referenced in the following Answers: BP (Doc. 4905 at 201), Halliburton (Doc. 4910 at 44), and Transocean, (Doc. 931 at 16).

[4] As referenced in the following Answers: BP (Doc. 4905 at 202), Halliburton ((Doc. 4910 at 46), and Transocean, (Doc. 931 at 16).

## REQUESTS FOR PRODUCTION

24.    Produce all manuals, protocols and/or reference materials you, your directors, officers, employees and/or persons working on your behalf utilized as part of your oil spill response activities within the State of Alabama and 15 miles therefrom from April 2010 to present.

25.    Produce all documents and information – including but not limited to manuals, talking points, PowerPoints, protocols and/or reference materials – that you and/or persons working on your behalf utilized when responding to oil spill-related economic loss inquiries from State of Alabama governmental entities, business entities or individuals.

26.    Produce all documents and information relating to all potential oil-related material events within the State of Alabama and 15 miles therefrom from April 20, 2010 to present, including but not limited to the date of discovery, location of discovery (including by corresponding SCAT segment), description of discovery (stranded, buried, water surface, water subsurface), volume, severity, quantity, weight, whether recovered, and the method of disposal.

27.    Produce all documents relating to the removal of oil-related materials from April 20, 2010 to present within the State of Alabama, including but not limited to the location of the oil-related materials prior to removal (including by corresponding SCAT segment), the date of removal, the known length of time the oil was present prior to removal, the method utilized for removal, and the volume and weight of oil and oil contaminated materials removed.

28.    Produce all documents relating to the method(s) or criteria you utilized to measure the volume or weight of oil-related materials removed from the coastal areas within the State of Alabama from April 20, 2010 to present.

29.    Produce all documents relating to the historical constituent background of oil-related material concentrations present on the State of Alabama's coastal areas prior to April 20,

2010, including but not limited to, all sampling, studies, oil constituent baseline surveys and/or analyses.

30.     Produce all documents relating to the existence of submerged oil mats within the State of Alabama and 15 miles therefrom, from April 20, 2010 to present, including but not limited to the location (including corresponding SCAT segment), the submerged oil mat's corresponding surface area, thickness, weight, volume, date of discovery, date of removal, volume removed versus not removed, and the person(s) who discovered and/or removed the oil mat.

31.     Produce all documents relating to your efforts to fingerprint, identify and/or otherwise confirm the source of oil-related materials recovered within the State of Alabama during oil spill response activities as those originating from the MC252 well.

32.     Produce all documents relating to the human toxicity of oil-related materials at all levels of the degradation stage.

33.     Produce all documents relating to any oil-related material severity assessment, study and/or analysis (whether part of oil spill response activities or not), by location, within the State of Alabama.

34.     Produce all documents maintained in BP's or BP's contractor(s) database(s) relating to oil spill response activities within the State of Alabama, including but not limited to: NRC notifications; NRC reports; Segment waterfall tables with SCAT mitigated weights; results of testing, visual observations, or other methods used to confirm that oil-related materials removed from Alabama waters or land were or contained MC252 oil; NRC Tracker Reports; NRC weekly summaries; Alabama Situation Reports (Alabama Branch ICS 209); Mobile and Baldwin County Racetrack; Waste Tracking Reports; County Operations Reports; Alabama

Operations Segment Tracker; SCAT Liaison Reports; SCAT Daily Briefing Reports; Operations Task Force Daily Reports; SCAT Team Daily Summary Reports; "Alabama Mitigation" document and "Alabama Oily Solids & Material Collected" document.

35.     Produce all documents relating to any studies, analysis, calculations and/or modeling of the oil spill's economic impact (whether negative or positive) on the State of Alabama.  This request includes any economic impact to the State as a whole, its tax streams, rents, revenues, fees, expenditures, costs, profits, valuation of real property or any other economic impacts to the State of Alabama's economy.

36.     Produce all documents relating to oil spill-related expenditures, from April 20, 2010 to present, that you contend should be applied as an offset or considered as mitigation against economic or property damage compensation sought by the State of Alabama in this litigation, including any studies, analyses, calculations and/or modeling of the expected or actual economic benefit to the State of Alabama from these expenditures.

37.     Produce all documents relating to the amount of funds spent, from April 20, 2010 to present, either within the State of Alabama or beyond, for oil spill related costs and expenditures, which you contend support a claim of offset or mitigation, including but not limited to, identification of the payor; identification of the intended beneficiary of any payments; the purported use of the payment; the date(s) of any such payments; and the amount of the payment made.

38.     Produce all documents relating to the State of Alabama's economic performance, including any State of Alabama business industry – whether local, regional, or statewide, from April 20, 2010 to present.

39.     Produce all documents relating to communications or data exchanged between you and the State departments, agencies, and/or subdivisions listed in the Court's scheduling order concerning the oil spill.

40.     Produce all documents relating to communications or data exchanged between you and the State departments, agencies, and/or subdivisions listed in the Court's scheduling order concerning the oil spill's economic impact on the State of Alabama and/or the State departments, agencies, and/or subdivisions listed in the Court's scheduling order.

41.     Produce all photographs related to any oil spill-related activity within the State of Alabama from April 20, 2010 to present and (if available) the location depicted by the photograph, the time the photograph was taken, the person who took the photograph, and any commentary or correspondence discussing the photograph.

42.     Produce all documents identified in your responses to the Interrogatories and Requests for Admissions set forth herein.

## INSTRUCTIONS

1.      You are to produce all documents in your control and/or custody. Production of documents shall be in conformance with all procedures and formats set forth by Court order (*e.g.* PTO 16) and the Federal Rules of Civil Procedure.

2.      If you are asked for a date, an exact date should be given if known. If an exact date is not known, an approximate date should be given and identified as such.

3.      The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

4.      The word "each," whether or not capitalized, should be construed to include the word "every," and the word "every," whether or not capitalized, should be construed to include the word "each."

5.      The words "including" or "includes" shall not be read as limiting a request in any way and shall mean "including but not limited to" or "including without limitation."

6.      Produce all documents in the order in which they appear in your files.  Documents that, in their original condition, are stapled, clipped, or otherwise fastened together shall be produced in the same condition.

7.      If you contend that any responsive document is protected from disclosure pursuant to any privilege or work-product doctrine, please identify and designate all such privilege or work-product claims pursuant to orders of the Court, including PTO 14.

8.      To the extent any of the requests set forth herein implicate a release of confidential information, including damage numbers which have been determined as confidential pursuant to PTO 13 by Judge Shushan on March 21, 2014, such information should be designated as confidential and produced pursuant to orders of the Court (*e.g.* PTOs 13 and 16).

9.      Pursuant to the Federal Rules of Civil Procedure, these requests are continuing in nature and you must revise or supplement your responses and production whenever new or additional responsive information becomes known.

10.     If you object to any part of a request, you must still answer where otherwise not objectionable, and, as to each part to which you do object, you must set forth the specific basis for your objection. For instance, if you allege that any request is in any manner ambiguous, you are instructed to describe in detail the reasons for your allegations, including but not limited to, each interpretation to which you allege the specific request for discovery is subject while still responding and/or producing information pursuant to the portions of the request which you do not believe are ambiguous.

11.     If any of the answers to these interrogatories are derived from papers, records or documents in your possession, custody or control, please attach a copy of these papers, records or documents to your answers, or, in the alternative, please describe each of the documents with specificity and state when and where they will be available to the State's counsel for inspection and copying.

12.     Alabama reserves the right to revise and/or supplement these discovery requests to reflect future scope limitations or other rulings of the Court.

## DEFINITIONS

1.      **"Business Industry",** whether or not capitalized, shall mean the aggregation or collection of business entities that produce, provide or otherwise generate a related product or service.

2.      **"Coastal Areas",** whether or not capitalized, refers to all State of Alabama intertidal zone, beaches and dunes immediately adjacent to the Gulf of Mexico, and those Gulf of Mexico waters, bays, inlets and/or bayous within the State of Alabama's territories.

3.      **"Communication"** or **"communications,"** whether or not capitalized, shall mean any transmission of information by one or more persons to one or more persons by any means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda, and face-to-face conversations and meetings. "Communication" includes all documents and electronically stored information ("ESI") containing, summarizing, or memorializing any communication.

4.      **"Computer",** whether or not capitalized, means all devices utilizing microchips or other circuitry to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop  computers,   portable   computers,   notebook computers,   palmtop computers (also known as personal digital assistants   or   PDA's), minicomputers  and mainframe computers.

5.      **"Control",** whether or not capitalized, refers to ownership, possession, or custody of the document, or the right to secure the document or copy thereof from any person or public and private entity having physical possession thereof.

6.      **"Deepwater Horizon"** means, without limitation, the mobile offshore drilling unit (MODU) of that name involved in the drilling of the MC252 Well,  or  any  component

thereof, as well as any vessel, vehicle, aircraft, or other equipment used in connection with the process of drilling, developing, exploring for and/or producing oil and gas resources.

6.      **"Defendant," "You," "Your,"** or **"Your Company",** whether or not capitalized, refers to, without limitation, your business interests, including relevant predecessors, successors, subsidiaries, departments, divisions or affiliates, together with all current and former directors, officers, employees, agents, representatives, or persons acting, or purporting to act, on its behalf.

7.      "**Defendants,**" means, cumulatively, all of the following defendants:

   a.   **"Anadarko,"** which refers to defendants Anadarko Petroleum Corporation and Anadarko E&P Company LP.

   b.   **"BP,"** which refers to defendants BP p.l.c., BP Exploration & Production, Inc., and BP America Production, Inc.

   c.   **"Halliburton,"** which refers to defendant Halliburton Energy Services Inc.

   d.   **"MOEX,"** which refers to defendants MOEX Offshore 2007 LLC and MOEX USA Corporation.

   e.   **"Transocean,"** which refers to defendants Transocean Ltd, Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH.

8.      **"Deepwater Horizon Oil Spill," "Oil Spill,"** or **"Spill,"** whether or not capitalized, means the discharge of hydrocarbons that occurred in connection with the *Deepwater Horizon* Incident.

9.      **"Deepwater Horizon Incident"** or **"Incident"**, whether or not capitalized, shall mean the events leading to (i) the loss of life and injuries on the Deepwater Horizon rig on or

about April 20, 2010, and (ii) the eventual sinking of the rig on April 22, 2010, including the blowout, explosions, and fire.

10.    **"Dispersant"** or **"Dispersants,"** whether or not capitalized, shall mean (i) dispersants, (ii) dispersant constituents, (iii) derivatives of any of the foregoing from biological, chemical, photochemical or other processes, or (iv) any aggregation, mixture or combination of any of the foregoing with any other material, including, without limitation, organic matter, inorganic matter, sediments, biological exudates, sand and water.

11.    **"Document"** or **"Documents,"** whether or not capitalized, shall have the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a), including, but not limited to, ESI or paper form, and includes the original and all non-identical copies, regardless of origin or location, of any writing or record of any type or description, including but not limited to all writings, including any and all drafts, alterations and modifications, changes and amendments of any of the foregoing whether handwritten, typed, printed or otherwise produced in any format. This definition also includes, without limitation, books, records, manuals, statements, minutes, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, lists, tax returns, schedules, press releases, directives, agreements, contracts, print-outs, studies, summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, work papers, graphs, graphics, transcripts, charts, blueprints, timelines, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, film and sound reproductions, computer discs (including but not limited to, CDs, CD-Rs, DVDs, DVD-Rest, floppy discs, hard discs and hard drives), flash drives, pen drives, thumb drives, programming instructions, sales, advertising and promotional literature, agreements or minutes of meetings, telephone conversations or other conversation or

communication in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, officers, directors, shareholders, employees, agents, representatives and attorneys. This definition also includes non-printed matter such as voice records and reproductions, film impressions, photographs, videos, negatives, slides, microfilms, microfiches, e-mail, and other things that document or record ideas, words or impressions. The term "document" further includes all punch cards, tapes, disks, or records used in electronic data processing, together with the programming instructions and other written materials necessary to understand or use such punch cards, tapes, disks or other recordings, and further includes ESI (as defined in section (s)) data or data compilation in electronic or other form that can be printed through proper programming or decoding of the electronic or mechanical data storage facility, including metadata.

12.     **"Employee",** whether or not capitalized, refers to, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger, agent, representative or other person who is or was employed or subcontracted by the entity for whom information is requested.

13.     **"Environment"** or **"Environmental,"** whether or not capitalized, except when used as or in a proper noun, shall refer to (i) air, surface and subsurface water, beaches, land and sediments, and the organic and inorganic constituents of the foregoing, (ii) Organisms (as defined below), (iii) natural resources, (iv) ecosystems, (v) niches and other habitats and (vi) combinations or assemblages of any of the foregoing, in each case in or near the Gulf of Mexico or in or near any other location that may have been affected by Oil-Related Materials (as defined below) regardless of whether in a natural state or modified by human activity.

14. **"Expenditures"**, whether or not capitalized, shall mean any and all costs expended by You in response to the Deepwater Horizon Incident and Oil Spill, including, but not limited to, oil spill response activity payments and costs; all payments to the State of Alabama, its agencies and departments or its political subdivisions; any and all payment made to businesses and individuals, including but not limited to payments made in the BP Claims Process, the Gulf Coast Claims Facility ("GCCF"), the GCCF Transition Process, the Deepwater Horizon Economic and Property Damages Settlement ("DWH Settlement"); grants; gifts; promotion and advertising payments; advertising costs; and NRD assessment costs.

15. **"Historical Constituent Background,"** whether or not capitalized, refers to the oil-related material constituent concentration within State of Alabama coastal lands and waters at a given location for a given time.

16. **"Identify,"** whether or not capitalized, when used with respect to: (a) an individual, shall mean to provide the individual's full name, job title, and employer during the period referred to, and current or last-known address and telephone number and business address and telephone number (designating which); (b) any entity other than an individual, shall mean to provide the entity's full name and current or last-known address (designating which); and (c) a document, shall mean to provide the date, title, subject matter, author(s), recipient(s), and Bates number(s).

17. **"MC252 Well"** or **"Macondo Well"** shall mean the exploratory well that was being drilled by the Deepwater Horizon in the Macondo Prospect of Mississippi Canyon 252 in the outer continental shelf of the Gulf of Mexico.

18. **"MC252 Oil"** shall mean oil, polycyclic aromatic hydrocarbons ("PAHs"), and/or oil hydrocarbon constituents originating solely from the MC252 Well.

19.     **"Meeting",** whether or not capitalized, refers to, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more persons for any purpose, whether planned or scheduled in advance, including written exchanges through internet/web based chat, including AOL Instant MessengerTM, or similar programs,  electronic "bulletin  board" programs, or internet/web based video chat, including SkypeTM or similar programs.

20.     **"Mitigate," "Mitigation,"** or **"Mitigating",** whether or not capitalized, shall mean to make less severe or intense.

21.     **"Offset"** shall mean to balance or calculate against and shall encompass the terms "offset", "set-off", "recoupment," and/or any other legal claim or defense that reduces Alabama's recovery.

22.     **"Oil-Related Materials,"** whether or not capitalized, shall mean any of the following from the MC252 well or *Deepwater Horizon* oil rig:  (i) oil, (ii) polycyclic aromatic hydrocarbons ("PAHs"), (iii) hydrocarbons, (iv) other oil or gas constituents, and (v) well drilling and closure materials, including without limitation, drilling muds and fluids and materials injected into the well-head. Oil-Related Materials also shall include (i) derivatives of any of the foregoing from biological, chemical, photochemical, burning or other processes, (ii) any aggregation, mixture or combination of any of the foregoing with any other material including, without limitation, organic matter, inorganic matter, sediments, biological exudates, sand and water; or (iii) any combination of the foregoing.

23.     **"Oil-Related Material Event" or "Oiling Event,"** whether or not capitalized, refers to the discovery of a singular oil-related material event.

24. **"Oil Constituent Baseline Survey"** or **"Baseline Survey"** shall mean any and all measures, sampling work, studies and/or analyses undertaken, and the results achieved as a result of said measures, sampling work, studies, and/or analyses, to determine the measure, position, base and/or historical constituent background for the presence of oil-related materials in a given geographic location for a given time.

25. **"Oil Spill Response Activities," "Response Activities,"** or **"Response,"** whether or not capitalized, refers to any and all efforts and activities performed to respond to, remediate, remove, dispense, clean, mitigate, minimize, collect, or eliminate any oil-contaminated materials of any kind within the State of Alabama's waters and lands.

26. **"Person,"** whether or not capitalized, shall mean any individual as well as any entity, including any proprietorship, partnership, corporation, firm, committee, government agency or subdivision or consultant, or any other organization.

27. **"Photograph,"** whether or not capitalized, shall mean a picture or image, whether physically or digitally stored, generated by any device capable of generating a picture or image as a camera would.

28. **"Relating to"** or **"related to,"** whether or not capitalized, when in referring to any subject matter, shall mean any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

29. **"Removal Costs"** means expenses, expenditures or costs (whether in time or money) incurred after the *Deepwater Horizon* Incident to either prevent, minimize, or mitigation oil-related material pollution

30. **"SCAT"** refers to the Shoreline Cleanup and Assessment Technique.

31.     **"SCAT Team",** whether or not capitalized, refers to the Shoreline Cleanup and Assessment Technique team utilized by Unified Command to identify, and if necessary, remove oil-related materials from Gulf of Mexico lands and waters.

32.     **"SCAT Segment",** whether or not capitalized, refers to the land area segments created and designated as part of the SCAT process in response to the oil spill.

33.     **"Sea Surface"** or **"Surface",** whether or not capitalized, refers to the exterior or upper boundary of sea, ocean or gulf water.

34.     **"Sea Subsurface"** or **"Subsurface",** whether or not capitalized, refers to the area below the sea surface extending down to and including the sea floor.

35.      **"State of Alabama"** or **"State"** refers to the State of Alabama, and all lands and waters within the territorial boundaries of the State.

36.     **"Statement",** whether or not capitalized, should be construed as any written or graphic statement signed or otherwise adopted or approved by the person making it, any stenographic, mechanical, electrical, or other recording or transcription thereof which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

37.     **"Submerged Oil Mats," "SOMs," "Tar Mats,"** or **"Oil Mats",** whether or not capitalized, shall mean any submerged accumulation, whether buried or not, of oil-related materials in the near shore and sub-tidal environment.

38.     **"Tourist" or "Tourists",** whether or not capitalized, means those persons or entities travelling to a selected destination, regardless of distance travelled, for recreational or leisure purposes. This definition includes those persons characterized as "snow birds," who often travel to warmer climates during the winter months.

39.    **"Tourism",** whether or not capitalized, shall mean the travel and expenditure incurred by tourists for recreational or leisure purposes, and all business entities supporting tourism travel and expenditures. Tourism shall include all travel and expenditures incurred in anticipation of travel, travel from departure to destination, after arrival to the destination, and return from the destination.

40.    **"Video recording(s)"**, whether or not capitalized, refers to any and all analog, digital, or other electronic format, which captures, records, processes, stores, transmits, and/or reconstructs a series of still images representing scenes in motion.

Date: July 14, 2014                                Respectfully Submitted,

                                                    /s/ Corey L. Maze                          .
                                                    COREY L. MAZE
                                                    *Special Deputy AG, State of Alabama*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Counsel for the Defendants by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice of electronic service in accordance with the procedures established in MDL 2179, on July 14, 2014.


 /s/ Corey L. Maze                              .
COREY L. MAZE
*Special Deputy AG, State of Alabama*