

218 COMMERCE STREET
POST OFFICE BOX 4160
MONTGOMERY, ALABAMA 36103-4160
(334) 269-2343
(800) 898-2034
FAX: (334) 954-7555
BEASLEYALLEN.COM

J. Parker Miller
Parker.Miller@BeasleyAllen.com

September 14, 2014

**VIA ELECTRONIC MAIL**
Mr. Paul D. Collier
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
Paul.Collier@kirkland.com

      Re:    State of Alabama vs. BP Exploration and Production Inc., et al.
               BP's Responses to the State of Alabama's First Formal Discovery Requests

Dear Paul:

      I hope you are doing well.

      We have reviewed and analyzed the various objections and responses to the State's First Discovery Requests, and we believe your objections and responses are insufficient in a number of aspects. Given the sheer volume and repetitive nature of your objections and responses, this letter will address the objections by request, and where possible, by category. In the hope that we can resolve our differences without court intervention, we set forth our specific concerns below.

**I.**      **PRELIMINARY ISSUES**

      *Reasonable Search*

      BP is obligated to perform a reasonable search for documents and information pursuant to the Court's Scheduling Orders and the Federal Rules of Civil Procedure. Counsel for BP made it clear during fact and 30(b)(6) custodian search term negotiations that the negotiated search terms for deposition custodians would not serve as a replacement for a "reasonable search" of information and documents pursuant to formal discovery requests. We understandably are unclear, therefore, what is meant by your suggestion that BP will perform its reasonable search, in part, by utilizing the search terms that the "parties have already agreed to." While we are willing to evaluate the sufficiency of your responses in conjunction with the search terms utilized, we are concerned with you *only* using the search terms discussed during deposition custodian negotiations. Please confirm which search terms you are utilizing as part of your search as well as the instances in which you employed the use of search terms in replacement of a reasonable search.

      You also note that BP will only search the custodial files of those individuals "likely" to have responsive information. While we understand that BP should not search the files of all employees spread throughout its corporate structure, we request confirmation on how you evaluated which individuals were "likely" to possess responsive information. At any rate, to the extent you possess control over your oil spill response contractors that would permit you to obtain responsive information to the State's Requests, we believe you are obligated to produce information maintained by those contractors where responsive.

***Objections to the State's Requests***

While BP states that it will perform a reasonable search of its files and produce documents responsive to a majority of the State's Requests, BP has objected to numerous terms as either vague or ambiguous. Moreover, BP has objected to almost every Request as overly broad, unduly burdensome and/or not reasonably calculated to lead to the discovery of admissible evidence. It is unclear whether BP is withholding documents based on its objections, or whether BP is producing documents notwithstanding its objections. To the extent you are withholding information or the production of documents based on any of the aforementioned objections, please confirm the Request, the term and/or phrase you are objecting and withholding, and provide a general description of the documents you are withholding based on your objections.

**Another** common issue with your Responses is the following Statement: "to the extent such documents … are not equally available to Alabama from sources other than BPXP, including publically available sources." It is understandable that some of the documents requested by the State may also exist in publically available sources. To the extent you are withholding production of otherwise responsive documents in your possession because they may exist in the public domain, please confirm. Moreover, to the extent you are withholding documents, we request that you provide the identity and the publically available sources of those documents. The State will make a reasonable effort to obtain these documents, but reserves the right to seek these documents (to the extent they are also within your control and custody) from BP to the extent they are not publically accessible, or not reasonably obtainable as compared to production from your possession.

***Objections to the State's Terms and Definitions Section***

We have also noted numerous instances where you appear to have objected to an otherwise straightforward definition or instruction. Importantly, "[a] party responding to discovery requests 'should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized'" in discovery requests. *See Chesapeake Operating, Inc. v. Stratco Operating Co., Inc.*, 2009 WL 426101 at *5 (M.D. La. Feb. 20, 2009), *citing Johnson v. Kraft Foods North America, Inc.*, 238 F.R.D. 648 (D. Kan. 2006). In many instances, it appears your objections to the State's definitions are rooted more in avoidance than actual ambiguity or vagueness, including:

- "Coastal Areas" - your objection to "Coastal Areas" as overly broad, vague, and ambiguous due to the "undefined" nature of "intertidal zone," "immediately adjacent" and "bayous" is improper. Needless to say, "Coastal Area" is defined in a straightforward manner, and the noted words utilized to populate its definition are common words utilized in the English language. Please withdraw your objections to this term.

- "Employee" – your objection to this term is improper, as it is not based on the State's definition, but instead, a presupposed definition generated by BP. First, we request that you point out the legal precedent that permits you to change the State's definitions, as we have not located any such precedent. When you improperly alter a definition and infuse your own, you are improperly changing the scope of the State's requests. Specifically as to the term "Employee," BP is charged with producing documents and information within either its control or custody - including from its subcontractors where BP either maintained a right of confidentiality in the information, or the right to audit, inspect or obtain documents maintained by the subcontractor. Notwithstanding the improper alteration to the State's definition, the fact the entity or individual was formally employed by BP is irrelevant for purposes of your response.

2

- "MC252 Well" and "Macondo Well" – you provide no basis for why these terms are vague and ambiguous, and you provide no definition for the proffered term "MC252 #1 Macondo Well." Moreover, our definition is substantially similar to the definition previously utilized by BP in previous discovery requests. Please withdraw your objections to these terms.

- "MC252 Oil" – The term "solely" is a common word utilized in the English language, and as such, forms no basis for "vague, ambiguous and confusing" objections. Please withdraw your objection to this term.

- "Offset" – Contrary to your objection, the definition of Offset is "to balance or calculate against." The terms proffered by the State ("offset," "set-off," "recoupment" and/or "any other legal claim or defense that reduces Alabama's recovery") are *examples* of terms and concepts encompassed by the State's defined term. As such, we see no ambiguity that would otherwise prevent you from responding pursuant to the State's term "Offset." We discuss the offset issue in greater detail *infra* at 5-7.

- "Oil Related Material Event," "Oil Constituent Baseline Survey," and "Removal Costs" – while we believe these terms are reasonably clear in definition, we are willing to meet and confer to clarify any issues you have with these terms.

- "Tourist" and "Tourists" – You fail to identify why these terms are vague and ambiguous. Please withdraw your objections, and to the extent you are withholding information or documents based on your objections, we respectfully request you produce those documents and information.

- "Tourism" – This term and all-encompassing definition, when read in context with Request for Admission #17, is not vague, ambiguous and/or confusing. Instead, when placed in context with the definition, it is clear the Request is seeking your admission on whether the State's coastal areas generate "travel and expenditures," regardless of whether those travel and expenditures were incurred by "tourists," "business entities that support tourism travel and expenditures;" and regardless of whether or not those travel and expenditures were incurred "in anticipation of travel, travel from departure to destination, after arrival to the destination, and return from the destination."

## II.     CONCERNS WITH SPECIFIC DISCOVERY RESPONSES

### Requests for Admissions

Our review reveals that many of your answers to the State's Requests are insufficient. Below, we lay out in detail our concerns with your responses:

- REQUEST FOR ADMISSION #1:  Your failure to answer this RFA appears to be based entirely on your improper objection to the term "MC252 oil" and/or its ability to encompass natural seeps. But, by expressly limiting our definition of "MC252 oil" to materials "originating solely from the MC252 well," which itself was limited to the "exploratory well that was being drilled by the *Deepwater Horizon*," there can be no concern over oiling events caused by "natural seeps before April 20, 2010." Unless there is another oiling event which originated solely from the MC252 well that was being drilled by BP with the *Deepwater Horizon* (and we are not aware of another oil spill originating from the MC252 well drilled by BP with the *Deepwater Horizon*), we cannot see how the answer to this RFA is anything but "admitted."

3

- REQUEST FOR ADMISSION #10: Simply because information may reside within a document does not permit you to avoid admitting or denying the State's Request for Admission. As such, your answer should be supplemented, based on a common sense reading of the request, as to whether you believe oil spill response activities still occur.

- REQUEST FOR ADMISSIONS #12, 13 AND 14:  Simply because the proffered parcels do not align precisely with SCAT segment data does not mean you cannot identify whether oil-related materials were removed from the parcels based on available SCAT data. To the extent you can admit that oil-related materials were removed from a given parcel based on oiling data available to you, we respectfully request that you supplement your response as noted.

- REQUEST FOR ADMISSION #15:  The term "tourist" is defined in a straightforward manner as referenced above. As such, your answer should simply be "admitted."

- REQUEST FOR ADMISSION #16:  While Requests #15 and #16 plainly ask distinct questions—*i.e.* generally, whether the coast attracts individuals (#15) and whether those individuals travel and expend money (#16)—your response to them is exactly the same.  To the extent you are withholding a proper, distinct admission to #16 based on your objection to the phrase "generate tourism for the State of Alabama," we respectfully request that you withdraw your objection and answer accordingly. Tourism, as noted, is a straightforward term when read in context with this request. Indeed, the phrase is a common sense application of the English language, and it appears BP injected confusion where none existed.  Please amend your response and answer the request properly.

**Interrogatories**

- INTERROGATORY #3:  Your response to this interrogatory is insufficient. As a matter of example, BP counsel identified over 50 witnesses that it believed possessed knowledge and/or information associated with the oil spill. Yet, BP confines its answer in this interrogatory to only those individuals found in the parties' Rule 26 Initial Disclosures and a vague reference to third party entities – albeit, without any reference to the individuals associated with those third party entities.[1] While the State understands that discovery has just commenced, BP appears to possess more information on the identity of potential witnesses than it identified in its answer to this interrogatory. As such, the State respectfully requests that BP amend and supplement its answer.

- INTERROGATORY #4: The State has reason to believe that BP officials have engaged in (non Rule 408 privileged) discussions with Alabama employees and officials regarding the State's potential or actual economic and/or property claims. By way of example, we have reason to believe that BP executives have met with the Governor of Alabama on more than one occasion to discuss issues related to the oil spill.  As such, we request that to the extent such communications took place, please supplement your answer accordingly.

- INTERROGATORY #5: If BP intends to argue that a State employee has made an alleged admission to the benefit of BP, the State is entitled to know and discover those statements. While an expert may utilize a statement in his expert report, the underlying statement is

---

[1] BP referenced the following third parties:  Alabama Coastal Recovery Commission, Alabama Gulf Coast Convention and Visitor's Bureau, Alabama Gulf Coast Recovery Council, Auburn University system, Retirement Systems of Alabama, and the University of Alabama system.

4

discoverable. To the extent you are knowingly withholding information and/or statements that you intend to use against the State, we request that you timely supplement your answer or direct the State to the specific documents you have produced that bear out these "admissions." .

- INTERROGATORY #7:  BP's response that it will produce information responsive to this interrogatory if, in part, they are not "equally available" to Alabama from sources is vague and insufficient. BP is obligated to at least identify the documents that describe the "methodologies for analysis and interpretation," and to the extent BP refuses to produce or identify those documents, it is obligated to identify the methodologies pursuant to the interrogatory request.

- INTERROGATORIES #10: In its response, BP admits that there were instances where oil-related materials were discovered, but not recovered, within the State of Alabama. BP offers no further explanation as to when or where these instances occurred, except to say that additional responsive information "may be" derived from publically available information. This response is insufficient. BP is obligated to either identify those documents specifically supportive of its belief, or identify the instances by which oil-related materials were discovered but not recovered after conducting a reasonable search of the information. Please supplement your response accordingly.

- INTERROGATORY #11: It is unclear whether BP possesses information about tar mats within the location identified, separate and apart from the documents noted in the response.[2] If BP does not possess information on tar mats within the locations identified in the response separate and apart from those documents referenced in the response, please confirm. Otherwise, BP is obligated to either identify those specific documents related to the existence of tar mats within the location noted, or identify the information associated with the discovery of tar mats after conducting a reasonable search of the information.

- INTERROGATORIES #13, 14:  BP's response to these interrogatories is grossly insufficient and must be supplemented.

  A) *Distinct Questions*:  As an initial matter, these contention interrogatories arise in large part from BP's Thirteenth Affirmative Defense ("AD-13"):  "To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities."  MDL 2179 Doc. 4905 at 202.

  Interrogatories #13 and #14 are distinct and designed to help us understand your AD-13. Interrogatory #14 asks, generally, what payments or contributions you contend "mitigate[d]" the State's economic loss.  Interrogatory #13 demonstrates whether you intend to take the next step, as AD-13 suggests, by asking what payments or contributions you claim can be subtracted, dollar for dollar, from the trier of fact's determination of the State's losses, once that determination is made.

---

[2] OSAT 3 Reports and Appendices; Summary Technical Report for Submerged Oil Mat Tactical Plan Phase I Execution; Segment Completion Packages; SCAT Daily Reports; Operations Recovery Reports; Snorkel SCAT survey data; and reports of sand borrow pit sampling.

5

You answer these distinct questions with the same list of payments and contributions. The first example—*i.e.* BP's alleged $1.9 billion in payments to individuals, businesses, and Alabama governments—demonstrates the problem with your cut-and-paste response. Does BPXP contend, as its responses suggest, that it can both (a) argue to the trier of fact that its $1.9 billion in payments to parties other than the State mitigated the State's losses, and then (b) reduce the trier of fact's judgment of the State's losses by $1.9 billion?

B)   *Ability to Identify*: BP does not need the State's economic damage analysis to identify those funds which it believes serve to mitigate or offset the State's claim. The State is entitled to know, with specificity, the amounts BP is claiming as an offset and/or mitigation against the State's claims. The following examples illustrate the insufficiency of your response:

- o   BP paid "approximately $1.8 billion to individuals and businesses in Alabama through various claim process" – this portion of your response does not identify, with any degree of specificity, which claims process paid the amounts, when the payments were made, or who received them.

- o   BP paid "approximately "$115 million in government payments in Alabama" – this portion of your response fails to identify with any degree of specificity the actual recipient of the payments, the time period the payments were made, the intended use of the payments, and whether any of the payments actually were made to the State of Alabama.

- o   BP has spent more than "$14 billion on Response and cleanup activities in connection with the Deepwater Horizon Incident and Oil Spill" – BP fails to identify the value of the offset and/or mitigation it attributes to the State's claim. This portion of your response also fails to identify with any degree of specificity the actual recipient of the payments, the time period the payments were made, the intended use of the payments, and whether any of the payments actually were made to the State of Alabama.

- o   BP fails to identify, out of the $20 billion fund, how much of the designated fund it has actually spent (for instance, is the $14 billion in response and cleanup encompassed in the "$20 billion fund"?), the recipient of the funds, when the funds were spent, the intended use of the funds, and the value of the offset and/or mitigation arising from these funds that BP attributes to the State's claim.

- o   BP fails to identify the timing of the $1 billion early restoration project, whether those funds have been paid, who received these funds, how much each entity and/or person received, and the value of the offset and/or mitigation arising from these funds that BP attributes to the State's claim.

- o   BP fails to identify, of the $52 million allegedly used to fund behavioral health support and outreach, how much was paid to the State of Alabama, when the amounts were paid, and the value of the offset and/or mitigation arising from these funds that BP attributes to the State's claim.

- o   Of the $100 million rig worker assistance fund, BP does not identify the recipients of those funds, the timing of payments, how much the recipients were paid, whether any of these funds actually made it to Alabama, whether the funds were paid to

> Alabama citizens, and the value of the offset and/or mitigation arising from these funds that BP attributes to the State's claim.
>
> o Of the $2.2 million BP claims to have spent between 2010 and 2013 in Alabama to support "Alabama communities, tourism, the education system, the health….", BP fails to indicate who it actually paid, the specific times those payments occurred, and the specific purpose for those payments.
>
> o BP failed to identify which institutions have received funds from the $500 million GoMRI grant, when those funds were paid, how much those institutions were actually paid, and the value of the offset and/or mitigation arising from these funds that BP attributes to the State's claim.
>
> o BP has not identified any payments from other co-defendants, private, or governmental entities that it knows made a payment that the company may claim as an offset and/or mitigation. If you are not aware of any such payments, please confirm. If you are aware of said payments, you are obligated to amend your answer and identify with specificity those payments you claim will serve as an offset and/or mitigation to the State's claims. Simply stating that these may exist is not enough if you know they exist.
>
> o BP's support for its statements as existing in "numbers publicly available reports, submissions and statements" is vague and insufficient to identify the supporting location for any of its statements in this interrogatory.
>
> C) *Supplement Response*:  In light of the issues outlined above, BP should supplement its responses to Interrogatories #13 and #14.  The response to #14 should be limited to just those payments or contributions (but *all* such payments and contributions) that BP claims that the trier of fact can consider as mitigation when determining the amount of the State's losses.  The response to #13 should be limited to just those payments or contributions (but *all* such payments and contributions) that BP intends to argue can be subtracted from the trier of fact's determination of the State's losses as a set-off or other equitable reduction in liability.   And all payments and contributions listed in the supplement responses should include the details described above and requested in the Interrogatories—including but not limited to the exact amount of offset and/or mitigation BP contends is attributable to Alabama's claims.

- INTERROGATORY #18**:**  The State disagrees with your objection that it is "premature" to disclose BPXP's contentions regarding the State's OPA presentment.  To the extent that you have withheld any response based on this objection, or to the extent that your contention regarding the State's presentment changes once fact discovery is complete, please supplement your response to this Interrogatory accordingly.

- INTERROGATORY #22: In your response to this Request, you note that "other documents already produced and/or to be produced" will identify instances where the State failed to mitigate damages.  "Other documents" that "either" have been produced or will be produced is too vague to satisfy your obligations. We respectfully request that you either identify all of the documents that support your response to the Interrogatory, or, supplement your response with all instances known to you where you contend the State failed to mitigate its damages.

*Requests for Production*

- REQUEST FOR PRODUCTION #26:  The State welcomes discussing, and hopefully clarifying, any concerns you may have with this Request.

- REQUEST FOR PRODUCTION #37:  Notwithstanding our concerns with your objections to produce the information as requested pursuant to this Request, please describe in detail how you intend to summarize payment information so that we may evaluate the sufficiency of your ultimate answer.

- REQUEST FOR PRODUCTION #38: The State welcomes a meet and confer discussion to clarify your concerns with this Request.

- REQUEST FOR PRODUCTION #39 AND 40:  Counsel for BP has made it very clear to the State that search terms would not serve as a replacement of a reasonable search when responding to formal discovery. As such, we are having trouble understanding what is meant by "in addition to other agreed upon search strings" as well as the inclusion of the custodian search string discussed during custodian search term negotiations. At least the custodian search string proposed will not capture memoranda that memorialize discussions with the State, nor will it capture any internal discussions regarding communications or data exchanged with the State. We are willing to meet and confer regarding your proposal, but we are concerned that any documents and/or correspondence beyond direct electronic correspondence with the State will not be captured by the proposed search.

III.   **CONCLUSION**

We appreciate your attention to this letter, and we are hopeful that by discussing the issues outlined in our respective letters, we can avoid the need for court intervention. To that end, please provide us with times you are available to discuss in further detail.  I look forward to hearing from you.

With best regards, I am,

                Very truly yours,

                BEASLEY, ALLEN, CROW,
                METHVIN, PORTIS & MILES, P.C.

                J. PARKER MILLER

JPM/MY1
CC:    Corey L. Maze
        Winfield Sinclair
        Rhon E. Jones
        Richard D. Stratton
        Jennifer E. Day