UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig ) <br> "Deepwater Horizon" in the ) <br> Gulf of Mexico, on April 20, 2010 ) <br> ) <br> This document relates to: ) <br> ) <br> 12-970, *Bon Secour Fisheries, Inc.* ) <br> *et al*. *v. BP Exploration Production Inc.;*) <br> cases within Pleading Bundle B1 ) <br> ) <br> and All Civil Actions, including ) <br> 12-2953, 12-964 and 10-2771 ) | MDL NO. 2179; SECTION J <br><br> JUDGE CARL J. BARBIER <br><br> MAG JUDGE SHUSHAN |

**MEMORANDUM AND COMMENT ON THE COURT-DESIGNATED NEUTRALS'
RECOMMENDATIONS FOR SEAFOOD COMPENSATION PROGRAM
<u>SUPPLEMENTAL DISTRIBUTION</u>**

COME NOW, clients with Seafood Claims with the Deepwater Horizon Economic and Property and Class Action Settlement claims represented by the law firm of Brent Coon & Associates ("BCA clients" and "BCA law firm"), and files this Memorandom and Comment on the Court-Designated Neutral's Recommendations For the Seafood Compensation Program Supplemental Distribution and in support of which respectfully show the Court as follows:

**I.     INTRODUCTION**

BCA clients have a significant interest in the Supplemental Distribution as well as the current state of the Seafood Compensation Program ("SCP").     Brent Coon & Associates represents approximately 883 Seafood Claimants who filed 5,288 Claims.[1]

---

[1] Please note that the number of claims filed is exaggerated primarily because on the eve of the January 22, 2012 deadline the Seafood Compensation Program had not established procedures concerning how it treat claimants who filed one type of seafood claim timely, but later additional claims might be discovered. The Seafood Compensation Program allows for submissions of more than 20 types of claims, but it was not clarified until much later that a filing of any seafood claim served to protect a claimants rights as to all

1

These claims come from all over the Gulf Coast, ranging from Galveston, TX to the Florida Key and include shrimpers, oystermen, crabbers, and finfish boat owners and deckhands. As of October 17, 2014, BCA clients had received 444 Eligibility Notices according to the attorney portal on the DHECC website for Brent Coon & Associates. These eligibility payment offers to BCA clients represent more the 3% of the total monies awarded by the SCP to date. An additional 40 BCA claimants, received eligibility notices but were deemed to have been overpaid, but may still recover money from any future distributions from the SCP.

## II. SUMMARY

BCA clients do not oppose the recommendation of the Seafood neutral, because at the very least it allows some of the seafood monies to "theoretically" be disbursed sooner rather than later. However, the seafood neutrals recommendation only serves to "kick the can" down the road when it comes to the glaring problems that have arisen in the SCP over the past year. The SCP was put in place with an expedited deadline to submit claims so that they would all be processed quickly and so that the second seafood distribution would come promptly. That did not happen, and the SCP is currently wallowing in the mire when it comes to finishing reviewing seafood claims. If the Court chooses to adopt the Seafood Neutrals' recommendation of an initial distribution, BCA clients would also ask the Court to intervene and establish a firm deadline when the SCP must finish reviewing the remaining seafood claims.

The Court-Designated Neutral's Recommendations Seafood Compensation Program Supplemental Distribution states, "However, there are still some claims which

---

claims. As a result of the early deadline and lack of clarity from class liasons, in order to protect clients rights BCA law firm was forced to file numerous claims on each claimant to protect their rights under the class. The total number of claims that BCA eventually wound up with in front of the DHECC for review is approximately 1,772.

have not been paid. Some of these claimants are awaiting policy determinations; some are under appeal; and some currently are being investigated." (Rec. Doc. 13340 at Page 10, Section F).  This total totally understates the magnitude of the problems that the SCP has concerning rampant overzealous investigations by the investigatory wing of the class and their outside vendor for investigating claims, HUB.  The goals of the Seafood Neutral's recommendation to get some portion of the second Seafood payment out before the end of 2014, will likely be frustrated without Court intervention into the internal goings on at the class concerning these investigations.

### III.     ARGUMENTS

The Class was billed as being "claimant friendly" and "transparent."  As such the language governing the actions of those charged with administering the terms of the class require them to look out for the claimant's interests.

Section 4.3.7 of the Settlement Agreement provides that:

> The Settlement Agreement, including the Claims Administrator and Claims Administration Vendors, shall work with the Economic Class Members (Including individual Economic Class Members' assembly and submission of Claims Forms, including all supporting Documentation necessary to process Claim Forms under the applicable Claims Processes.  The Settlement Program including the Claims Administrator and Claims Administration Vendors, **shall use its best efforts to provide Economic Class Members with assistance, information, opportunities and notice** so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of the Agreement.

Section 4.3.8 of the Settlement Agreement provides that:

> The Claims Administration Vendors shall evaluate and process the information in the completed Claim Form and all Supporting documentation under the terms in the Economic Damage Claim Process **to produce the greatest Economic Damage Compensation Amount** that such Information and supporting documentation allows under the terms of the Economic Damage Claim Framework.

3

These basic tenants of the DHECC have been usurped in favor of tactics that would more closely resemble the Spanish Inquisition.  Many of these issues were recently brought to the attention of Patrick Juneau, the Claims Administrator, and Louis Freeh by Class Counsel in a Memorandum dated October 6, 2014, regarding Investigations of  Alleged / Potential "Fraud."  Several paragraphs in particular are worth calling to the Court's attention:

> Perhaps the result of applying the Settlement Agreement as written is that a minority of claims that someone might consider (or BP might with questionable good faith contend) to be "fraudulent" could slip through the cracks and get paid. But that result - while neither ideal nor actively desired by the Parties - was, in a manner of speaking, not only contemplated but indeed accepted by BP, in balancing the costs and benefits of various possible terms and processes, in attempt to achieve overall fairness, ease ( i.e. from BP's point of view, "buy –in"), which was very important to BP at the time), and efficiency.
>
> There are some people who undoubtedly believe it's better that ten legitimate claims get delayed or denied than one potentially fraudulent claim be paid. Which is certainly a valid and reasonable point of view.  (sic) But this settlement was, for better or worse, drawn more in the spirit of the Blackstone:  The overriding objective was to provide legitimate Claimants with the maximum amount they were entitled to, based on the specified documentation, in an efficient, transparent, Claimant-friendly and Claimant-favorable way.
>
> Class Counsel again request that, in the event of alleged or potential fraud, the Claimant be advised of the particular allegation, and the bases therefore, with fair and reasonable  Opportunity to supplemental, amend, clarify, dispute, withdraw, refund, or otherwise respond or explain.
>
> In the context, of Seafood Claims, it was recognized and anticipated that there would likely be discrepancies between the frequently inaccurate and incomplete available trip ticket data, the good faith recollection and belief of the a Claimant about what types of catch he or she is was brining (sic) in during the Benchmark Period , and the formal Income Tax Returns (if any).  The Program, it was agreed, would accept *either* available trip ticket data or tax returns, whichever is most favorable to the Claimant.

*(See Exhibit A: Memorandum)*

Under Section 5.11.9 of the Economic and Property Damages Settlement Agreement the deadline for submission of Seafood Program Compensation Claim forms to the Settlement Program was 30 days after the date of entry of the Final Order and Judgment by the Court. (Rec'd. Docs. 6430 ). The Seafood Settlement was approved on December 20, 2012 (Rec'd. Docs. 8138 and 8139). Thus, the deadline for submitting a claim to the Seafood Program was established to be January 22, 2013. This was an unprecedented action in that it cut at least three months off of a claimant's time to file a claim. Under the Oil Pollution Act of 1990 ("OPA"), an injured party has three years from the date they discovered they had been injured by the spill Oil Pollution Act of 1990, 33 U.S.C. *§2701 et seq.* As such, the absolute earliest date that could be construed under the statute of limitations to bar any claims would have been April 20, 2013, three years after the spill. [2]

Further exacerbating this truncated timeline is that the first week after the Court approved the settlement included the Christmas and New Year holidays. The effect of this timing is that claimants and law firms lost a full week, they could really swing into high gear ensuring the claimants rights were protected by the timely filing of their seafood claims. Finally, given OPA requirement of a demand 90 days prior to filing, the safest course of action was to make individual OPA demands on ALL claimants 90 days prior to April 20, 2013, or January 20, 2013. All of this resulted in a herculean effort to meet an arbitrarily established deadline that was actually shorter that the underlying law would have allowed.

---

[2] This does not waive any arguments about the OPA's discovery rule extending the time to file a lawsuit beyond that date. Specifically, because, no one knew that the oil would continue to gush for another three months causing wide spread devastation. Each individual entity or person's damages are different and the realization that they were being affected by the spill comes at different times for each one.

5

However, the payoff of this was supposed to be that the SCP would be completed extremely quickly so that the Second Distribution could be made. It was represented to BCA law firm by our liaisons with the SCP at Brown Greer, Robin Keator, Nancy Rachlis, and Phil Shrunk that the goal was to process all of the Seafood Claims by June of 2013. BCA law firm began having regular weekly calls to address seafood issues with these liaisons early 2013. These calls were enormously successful for some period of time, helping to resolve a myriad of issues on dozens of claimants' claims. However, by late 2013 these calls stopped being helpful because the seafood personal were apparently no longer in charge of seafood claims. Instead, the claims were being routed to some unknown group for "further investigation."

### a. Further Investigation & 4506/4506T Issues

Once they were flagged for "further investigation," the people operating the SCP are apparently stripped in all authority to discuss a claim. They aren't even able to provide the reason the claim was flagged in the first place. After repeated requests over several months to speak to someone at the claims center regarding claimants who were under "further investigation," a call was finally held or about August 28, 2014 with Alexa Strong and Courtney (last name unknown).[3] The call was to discuss several specific claimants who we had been told by the SCP representatives were under investigation, they are listed below, along with the limited information that we were provided that day:

- Claimant 100058298 oyster boat owner and captain claims were submitted to the SCP on August 1, 2012. It is unclear when she was place under "further investigation" because the portal has indicated that her claims are under review since July 8, 2013. We were advised that she was being investigated to "verify a fishing license." Nearly two months have passed and we have not heard anything on this claimant.

---

[3] Both of them declined to provide their last names, however Alexa Strong is referenced in an earlier e-mail from BCA law firms regular class liaison, Robin Keator.

- Claimant 100069752's Seafood Crew Member claim was submitted to the SCP on November 14, 2012. On January 4, 2013 a formal "Notice of Further Investigation Process" was issued on this claim. We were told that they could not tell us anything about why the claimant was being investigated nor could they give us a timeline on when it would be completed. This is a perfect example of how the Class that was advertised as "transparent and Claimant-friendly" has become a complete black hole. Twenty-two months ago they tossed a deckhand into the "further investigation" and have yet to complete the investigation, nor have they even indicated why he deserves to be investigated in the first place. We are still waiting for these answers.

- Claimant 100112683's Seafood Crew Member claim was submitted to the SCP on January 21, 2013. No formal notice of "further investigation" was issued and according the portal, no action has occurred on this claimant. We were told that it is under further investigation pending verification of documents. We were not told what documents they were verifying. No action has been taken on this claim since our call.

- Claimant 100040336 is not a Seafood claim, it is a Business Economic Loss claim, but it was part of the call and it is the most disconcerting of all of them. This claimant requested the remaining 40% of his offer from the GCCF, and signed the required release on September 20, 2013. We were told that in order to maintain the integrity of the class they were "obligated" re-review his claim. Once again they could not tell us why they were investigating this claim, nor point to any part of the class explaining what authority they have to deny payment of the remaining 40% should the investigation uncover something.

- Claimant 100090237's has multiple SCP claims, most of which were submitted in August 2012. On October 16, 2013 a "Notice of Document Investigation Process" was issued. On February 28, 2014 a Notice of Claim Suspension was issued requesting a signed IRS Form 4506-T was requested in order to verify claimants tax returns. This form was provided on June 10, 2014. The tax transcripts were ordered by the class and uploaded to the portal on July 1, 2014. They limited information available on the tax transcripts match the tax returns previously filed by the claimant with the class. No action has taken place on this claim since that time.

The call also included a discussion concerning the purpose and scope of the Form 4506-T and Form 4506 requests. BCA law firm current has more than two dozen seafood claimants who have **already been paid** their seafood compensation payments

7

but have been flagged for "Policy 70 Verification."[4]  When we inquired whether these requests were related to some of their still pending subsistence claims we were told they were not.   We also specifically asked whether were going request 4506-T's for ALL seafood claimants who had previously been paid, and the answer was yes.   If this is true, it would **totally undermine** the Seafood Neutral's Recommendation and would likely prevent any disbursements of second seafood payments anytime soon.

    Finally, we inquired about exactly where Alexa and Courtney worked and were told that they could not provide that information.   The initial reason BCA law firm requested the call was to try to get some stuck claims moving again and go get the answers that the Class needs to feel comfortable issuing an eligibility notice. Instead, the BCA law firm spoke with two people who were purportedly from the class, but wouldn't provide their last names, where they worked within the DHECC or anything about why they were investigating our clients.   As clandestine as this actions sound it get's worse, a simple request to have Robin Keator, BCA's regular liaison on future calls with the "further investigation team" was denied.  The reason given was that Robin Keator, an employee of Brown Greer law firm who is designated as our liaison to the class, is **not allowed** to know about the status of claims under investigation.   The class certainly cannot claim to be transparent, when it its own employees are barred from knowledge about claims.

    The DHECC enacted Policy 70 v. 2 on August 2, 2014, which called for new claim submissions to include a signed Form 4506-T.  However, this new policy did not

---

[4] Claimant Numbers: 100035003, 10037812, 100037813, 10003785, 100039831, 100171514, 100013793, 100030768,100030768, 100041499, 100041580, 100041818, 100042107, 100089638, 100089694, 100097640, 100140284, 100158146, 100022489, 100037820, 100038899, 100040330, 100040855, 100042768, 100065213, 100040977.

require SCP or other member of the DHECC to go back and request 4506-T forms for all claimants that had previously been paid, it merely stated:

> As to all claims filed prior to the Adopted Date of this Amended Policy, the Original Policy will continue to apply, such that the Tax Forms shall be required to be provided by the Claimant only upon specific request by the Claims Administrator, as the Claims Administrator determines to be necessary or desirable.

If the Class intends to request 4506-T forms and verify all of the tax filings for all seafood claimants that have been previously paid, then the Class Administrator needs to advise the Court of their intent to do so, as it has would have a significant impact on when the Seafood Neutral's recommendation could go into effect. In fact, the delays may be so significant that the Court would likely be better served waiting to distribute all of the second seafood payment at one time.

### b. HUB Investigations

At this point the SCP has managed to put every remaining BCA law firm seafood claimant into some sort of investigation, either the "further investigation" process or a HUB investigation. To date none of these investigations have been fruitful. In finding fraud HUB Enterprises has apparently been involved in the class since beginning, however initially they stayed in the background. More importantly, claimants that were put into HUB investigation frequently came back to the claims process and eventually received eligibility notices for payments. As time went by, HUB became more intrusive into the claimants, often violating one of the basic legal tenents, not to contact represented person's directly. It quickly became obvious that their investigations were not to be governed by the typical common sense issues found in most litigation. They even went so far as to contact BCA law firm employees directly and in person to verify that they had notarized client documents.

However, the current state of the HUB investigations is worse than ever. With more than thirty of BCA's remaining seafood claimants under HUB investigation, the process is painfully slow. It is unclear what steps HUB takes prior to requesting a recorded interview, but the interviews themselves that BCA law firm has been involved with have been a complete waste of time.

First, HUB refuses to share any information concerning what the investigation is about prior to the interview. So far none of the issues that have been raised in these interviews appear to come remotely close to the level of fraud, and could have been cleared up months ago had someone at the DHECC actually shared their concerns. The interviews themselves consist of a person showing up to read a thirty page prepared list of questions and record the statement. Many of the questions are pointless, particularly the repetitive one's were the answer is the same for each year, but the interviewers apparently have no discretion. Compounding these poor interview tactics is often the need for a translator.

Some examples of HUB's waste include:

- Claimant 100008268 Seafood Boat owner claim was filed on June 8, 2012. After delays due to problems getting the claim opted back into the class, an eligibility notice was issued on December 12, 2013. The Claimant is a corporation whose sole owner is the son of the boat's Captain (Claimant ID No. 10008268, who has already received his boat captain payment). HUB requested an interview of the owner of the boat. Requests to clarify what information was necessary were denied. The interview itself included a number of questions that are totally irrelevant to the class, specifically regarding the corporate structure and related family arrangements. The reality is that the SCP owes the corporation the money and it doesn't matter how the corporation distributes it. There were two "issues" that the HUB investigator raised that were actually relevant to the matter at hand, but neither were so major that that they warranted the full court press of a HUB investigation. First, the trip tickets that were submitted by the claimant were the hand written slips they received at the dock. Apparently their buyer of choice did not report the trip tickets to the state, and this is not the job of the boat owner or captain. This is a non-issue, because the tax returns that were submitted exactly match the trip tickets provided by the claimant. As stated

10

above, the class is supposed to accept trip tickets or tax returns.  Therefore the tax returns should have been sufficient proof, and no questions concerning trip tickets were required.  Second, there was a totally irrelevant issue concerning a trip ticket from outside of the claimant's benchmark period.  Apparently, the Claimant had sold some shrimp to a seafood processor from outside the local area in a one-off transaction shortly after Hurricane Ike tore through southeast Texas.  HUB's crack investigation team contacted the buyer who could not recall the specific transaction with the Claimant's boat from six years ago and tried to turn it into a Matlock "gotcha" moment.  Exacerbating all of this, is that since the boat's owner has little familiarity with the workings of the boat this whole interview process had to repeated with the boat's captain.

- Claimant 100171253 Shrimp Boat Owner and Captains claims were submitted by BCA law firm on January 21, 2013.   They were denied on March 21, 2013 because Claimant had previously signed a GCCF release.  It was unknown by BCA law firm that the release had been signed  when the claim was submitted, but that should have been the end of it.   For some inexplicable reason, "Further Investigation Process Notices" were issued on May 3, 2013, and then again on April 25, 2014.  A Policy 70 Verification notice was issued on August 15, 2014.  On September 5, 2014 BCA law firm received a letter from HUB requesting an interview with the claimant.  When it was pointed out that the claimant had already signed a release and been denied, HUB still persisted in requesting an interview.

- Claimant 100168848 is a perfect example of the claimant whose rights were protected on the eve of the arbitrary seafood deadline date by filing multiple claims.  These claims were later withdrawn, on May 1,2013, when it was discovered by BCA law firm that he did not catch fish in the Classes narrowly defined Gulf Coast Waters.  However, Further Investigation Notices were issued on April 4, 2014 and April 29, 2014.   Then a HUB letter requesting an interview with this claimant was received June 17, 2014.   Once again a total waste of class resources.

- Claimant ID 1000550015  is represented by BCA law firm for his SCP, but he filed his own substance claim at the Bridge City, TX office.  While the interview was requested for his subsistence claim, BCA law firm felt it incumbent to be there to insure his rights under the SCP were protected.  The questions here were absurd.  They continued to ask about a rod and reel even after it was clear that the subsistence claim was for by catch from a large shrimp vessel.  They asked him to describe the crab, squid, etc. that he caught.   This served almost no purpose once the question and answer both had to be translated between English and Vietnamese.

However, probably the biggest issue has been the unrequited attempts to improve communications between BCA law firm and HUB.   Given the number of claimants BCA

law firm represents it is logical to expect a number of them to be investigated, even under a less stringent review system. HUB has a number of investigators all working on different claimants, and they have contacted our firm in a variety of ways. In effort to consolidate the numerous letters, phone calls and emails being sent to multiple persons at BCA law firm, BCA requested that HUB set up a regular call to go over the list of claimants. This has not happened to date.

### c. Impact of the Investigations on Claim

BCA law firm recognizes that a handful of anecdotes about the SCP may not sway the Court, but the proof is in the pudding when one looks at the overall statistics for the class. Attached is a chart showing the monthly changes in SCP notices from October 2012 (when they first became publicly available) to the present.[5] *(See Exhibit 2, Chart).* The numbers show that the SCP ground to a screeching halt in late 2013. After processing over 9000 eligibility notices from June 2012 until December 2013, they have only processed about 300 eligibility notices in the past 10 months. The claims aren't being denied either; total denials for any reason in 2014 are only about 150 across all categories. The Incomplete column is the most telling, as year to date the Class has only netted about 245 claims coming out of incomplete status.

The reality is that the claims are **just sitting** at the Class ostensibly because they need to be investigated. Yet the investigations move forward at a grueling pace because the SCP is unwilling to simply raise the issues that they claim to be red flags. Instead, they continue to launch multi-level, time intensive and so far fruitless

---

[5] BCA Law Firm has downloaded the Public Statistics for Economic and Property Damages Settlement weekly for our internal meetings since the class started publishing them on its website. These numbers are compiled directly from those past statistics.

investigations. Furthermore, the class continues to waste its resources by opening investigations into settled claims, withdrawn claims, and denied claims.

## IV. Conclusion

Clearly, Patrick Juneau's, Claims Administrator, fiduciary obligations are to ensure that obviously fraudulent claims are not paid. A reasonable investigation process is therefore necessary to the integrity of the class. However, the current state of the SCP seems to have more in common with a covert black-ops government organization, than a process designed to compensate victims of one of the worst manmade disasters of all time. The result is that it deprives legitimate claimants of what they are entitled to under the Economic and Property Damages Settlement Agreement. Furthermore, the fact that these investigations are so secretive that approximately 50 BCA clients are currently under investigation, some for more than a year and half and not a single one has been told why—smacks of a Due Process violation of the highest order. This number does not include the BCA clients that have been placed under HUB investigation that BCA has not been made aware of. We have requested an updated list of these weekly and the number changes on a weekly basis. Often clients that have been placed under HUB investigation are not included on the updated list we are sent that are under HUB investigation.

At some point, like today, the Court needs to step in and say enough is enough and wind down the Freeh investigations and reel HUB back in. They are both running private enterprise operations with no budget, no mandate, no deadline, no bid, and no hurry, all at the expense of the review process. In other words, the more things they think of to look into, the more money THEY make, while everyone else is left in a holding pattern and jumping through more and more fictional hoops. This is in stark

contrast to the 2012 when the class was presented as claimant friendly and transparent.

With regard to the Seafood Neutral's recommendation of paying $500 million of the second, half justice is still no justice.  Fishermen from all parts of the Gulf of Mexico have waited for full payment for losses they began to suffer over four years ago. Furthermore, they have waited in good faith for the terms of the Seafood Compensation Program to come to fruition.  Currently, there is no end in sight to that waiting.

## **PRAYER**

Wherefore Premises Considered, Plaintiff's pray that this Court grant the Court-Designated Neutral's Recommendations for the Seafood Compensation Program Supplemental Distribution and that the Court set a deadline that by the end of the year all Seafood investigations shall be fully completed and for any other relief to which they may be entitled.

Dated: October 20, 2014

Respectfully submitted,

/s/ Brent W. Coon

Brent W. Coon
Federal Bar No. 9308
Texas Bar No. 04769750
215 Orleans
Beaumont, Texas 77701 Tel.: (409) 835-2666 Fax: (409) 835-1912

*Attorney for BCA Class Members*

## CERTIFICATE OF SERVICE

I certify that this document has been filed with the Clerk of the Court and served by ECF on October 20, 2014, upon:

<u>Attorneys for the Defendants</u>:

    Richard C. Godfrey, P.C. J.
    Andrew Langan, P.C. Wendy L. Bloom
    KIRKLAND & ELLIS LLP 300 North LaSalle Street Chicago, IL 60654
    Telephone: 312-862-2000

    Jeffrey Lennard
    SNR Denton US LLP
    233 South Wacker Drive Suite 7800
    Chicago, IL 60606
    Telephone: 312-876-8000

    Jeffrey Bossert Clark
    Steven A. Myers
    KIRKLAND & ELLIS LLP 655 Fifteenth Street, N.W. Washington, DC 20005 Telephone: 202-879-5000

Don K. Haycraft
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000 New
Orleans, LA 70139
Telephone: 504-581-7979

<u>Attorneys for Class Plaintiffs</u>:

Stephen Jay Herman
Soren E. Gisleson
HERMAN HERMAN & KATZ LLP
820 O'Keefe Avenue
New Orleans, LA 70113
Telephone: 504-581-4892
Fax: 504-561-6024

James Parkerson Roy
DOMENGEAUX, WRIGHT, ROY & EDWARDS
556 Jefferson Street - Suite 500
Lafayette, LA 70501
Telephone: 337-233-3033
Fax: 337-233-2796

Elizabeth Joan Cabraser
LIEFF, CABRASER, HEIMANN & BERNSTEIN
275 Battery Street - 29th Floor
San Francisco, CA 94111
Telephone: 415-956-1000
Fax: 415-956-1008

Samuel Issacharoff
NEW YORK UNIVERSITY SCHOOL OF LAW
40 Washington Square, S. - Suite 41 1J
New York, NY 10012
Telephone: 212-998-6580
Fax: 212-995-4590

Respectfully submitted,

<u>/s/ Brent W. Coon</u>

*Attorney for BCA Class Members*