## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig | * | **MDL NO. 2179** |
| "Deepwater Horizon" in | * | |
| the Gulf of Mexico, on April 20, 2010 | * | **SECTION J** |
| | * | |
| | * | |
| **Applies to:** | * | **HONORABLE CARL J. BARBIER** |
| | * | |
| **No. 12-970 and All Cases** | * | **MAGISTRATE JUDGE SHUSHAN** |
| | * | |

### DECLARATION OF MARIA TRAVIS

I, Maria Travis, do hereby declare that the following statements made by me are true and accurate to the best of my knowledge and belief:

### Introduction

1.     I am Director of Claims for the Gulf Coast Restoration Organization, BP North America Inc., and one of the in-house representatives that monitors the implementation of the Economic Loss and Property Damages Settlement ("Settlement Agreement"), as amended on May 2, 2012.

2.     In this position, I am responsible for monitoring the business processes and operations of the Court-Supervised Settlement Program ("CSSP"), including, but not limited to, the CSSP's control organization, internal and external audit processes, and budget and financial structure.

3.     In this role, I participate in face-to-face meetings with the CSSP and provide the CSSP with input and feedback regarding its business processes and operations.

### Business Process Workstream Meetings

4.     Starting in 2013, BP and Class Counsel began to meet twice a month with the CSSP to receive updates and provide input regarding current projects at the CSSP.  I personally

attend one of these meetings — the Business Process Workstream Meeting — and when unavailable to attend, I receive reports from others that attend on behalf of BP. Representatives of Special Master Freeh's team also typically attend these meetings.

5. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████

**McGladrey Audit**

6. In October 2013, the CSSP, through Bob Levine, the CSSP's Chief Financial Officer, discussed with McGladrey LLP to provide third-party audit services to examine and review the CSSP's businesses processes and procedures as well as claims-related activities. (*See* October 16, 2013 McGladrey Letter, attached hereto as Exhibit 1.)

7. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

8. McGladrey and the CSSP entered into a revised agreement in December 2013. (*See* McGladrey Agreement to Provide Claims Administration Staffing Services [revised version], attached hereto as Exhibit 2.) ████████████████████████████

████████████████████████████    ████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████  ██  ████  ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

9. ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

10. ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████

11. ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

12.   ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

13.   ████████████████████████████████████████████

████████████████████████   ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

14.   On October 10, 2014, Randy Latta — CFO of BP's Gulf Coast Restoration Organization — sent a letter to Pat Juneau requesting that the CSSP release the results of the McGladrey operational audit. (*See* October 10, 2014 Letter from Latta to Juneau, attached hereto as Exhibit 3.)   Mr. Latta stated that the results of the McGladrey operational audit are necessary to allow BP and Class Counsel to determine if the CSSP has processes and controls in place to implement and administer the Settlement Agreement, and the Parties have a right to know if there are systemic inaccuracies in claims processing that require correction.

15.     On October 16, Mr. Juneau responded to the October 10, 2014 letter by stating that the final McGladrey report "has still not been finalized" and when "it has been finalized", the CSSP will "deliver the final report to the Court." (*See* October 16, 2014 Letter from Juneau to Latta, attached hereto as Exhibit 4.) The letter stated that the CSSP will not provide the report to BP or Class Counsel unless the Court directs further distribution.

16.     On October 17, 2014, BP sent an email seeking confirmation that the CSSP did not intend to produce the McGladrey reports and related work papers generated to date. (*See* October 17, 2014 email from Holstein to Juneau, attached hereto as Exhibit 5.) On October 20, 2014, the CSSP responded again reiterating that the McGladrey report is not final, and that once final, the CSSP will submit the report directly to the Court, and will distribute further as the Court directs. (*Id.*) The CSSP's October 20, 2014 response failed to mention BP's requests for the related work papers and interim reports generated in preparing the final report, in addition to the final report. (*Id.*)

**CSSP Quality Assurance / Quality Control - Interim File Review Reports**

17.     ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

18.     ███████████████████████████████████

███████████████████████████████████████████

19.

20.

21.

22. ███████████████████████████████████████████

████████████████████████████████████████████████

█████████████████   ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████

23. ███████████████████████████████████████████

████████████████████████████████████████████

██████████████████ ██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

24. ███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████

**Requests for Certain Claims-Related and Fraud-Related Data**

25. On August 20, 2014, I sent a letter to Randall Black of the CSSP to inform Mr. Black of BP's repeated requests for certain CSSP claims-related and fraud-related data that had not been fulfilled by the CSSP. (*See* August 20, 2014 Letter from Travis to Black, attached

hereto as Exhibit 9.) More specifically, BP requested certain aggregated, non-claims specific post-determination data that could be used to reconcile eligibility information to the public statistics produced by the CAO. BP similarly requested certain fraud metrics by claim category, including Seafood.

26.    I noted for Mr. Black that although BP originally received feedback that such requests would be honored, it has now become apparent that the CSSP will not release this information to BP and Class Counsel. I asked Mr. Black to facilitate the production of the requested fraud information. Most importantly, the August 20, 2014 letter noted the urgency of the fraud data request due to the relevance of the fraud data to the second round distribution of the Seafood Fund.

27.    In a September 5, 2014 response from CSSP attorney, David Forsyth, the CSSP stated that it "does not believe that it is obligated to devote the time and effort to take that data and present it in a different format requested by BP…and the CAO does not believe that the Parties are entitled to receive pre-determination data, even if in aggregated form… ." (*See* September 5, 2014 Email from Forsyth, attached hereto as Exhibit 10.) Mr. Forysth stated that the CAO would provide a separate response with respect to the fraud-related data at a later date. I am not aware that BP has received this separate response.

28.    Without disclosure of this information, as well as the various internal and external audit reports, BP cannot appropriately determine that the CSSP has identified and corrected the errors and fraud that evidently are present in Seafood Claims evaluated in the first distribution. This information is important to the transparency of the CSSP's operations and the BP's ability to ensure that the CSSP is appropriately discharging its obligations under the Settlement Program.

I makes this Declaration under penalties of perjury pursuant to 28 U.S.C. § 1746, and I state that the facts set forth herein are true to the best of my knowledge, belief, and information.

Maria Travis

Dated:  October 20, 2014

# Exhibit 1

# Filed Under Seal

# Exhibit 2

# Filed Under Seal

Exhibit 3



October 10, 2014

Via Electronic Mail

Patrick Juneau
Court Supervised Settlement Program
935 Gravier Street
New Orleans, Louisiana, 70112

Re: McGladrey LLP

Dear Mr. Juneau:

This month marks the one year anniversary since McGladrey LLP was engaged by the Deepwater Horizon Economic Claims Center to conduct an internal audit of the Court Supervised Settlement Program. Since then, over $14 million has been paid by BP to perform this audit. As no additional funds have been earmarked to pay McGladrey beyond August of this year, it appears that McGladrey's audit is complete. Yet to date, BP has not received any audit report(s) or work papers.

The results of the McGladrey operational audit, including all reports and working papers that you have been or will be provided with, must be produced because transparency is a bedrock principle of the American judicial system. The CSSP is an arm of the federal court, and was designed to operate transparently. In approving the settlement, Judge Barbier repeatedly focused on the anticipated transparency of the program. He has said that "the Settlement Agreement is designed to be transparent," and that the purpose of the detailed Settlement frameworks is to "ensure that determinations made by the Settlement Program are objective, consistent, and predictable." See Order Granting Final Approval at pages 110-11. The "level of transparency" was to "ensure[] that similarly situated class members are treated similarly," and to permit "class members to understand how their claims will be evaluated under the Settlement." Same at page 8.

In the past, you have also recognized the importance of transparency to the operation of the CSSP. In June of 2012, you were quoted as saying that the CSSP would be "very, very transparent . . . transparency on steroids." *See* Louis Cooper, New oil spill claims chief vows transparency, *Pensacola News Journal* (June 11, 2012). Similarly, in April 2012 you told the press that there would be "a tremendous amount of transparency." Brendan Kirby, Better deal for oil spill victims?, *AL.com* (Apr. 22, 2012). When Special Master Freeh was appointed to investigate wrongdoing within the CSSP, you again stated that your "mission has been to process claims in a fair, efficient and transparent manner." Ed Crooks, Ex-FBI head to probe BP payout claims, *Financial Times* (July 2, 2013). In a statement to the local news, you said that the CSSP has "been consistent and transparent with the claims process." David Hammer, WWLTV (March 20, 2013).

However, as the settlement program has matured you have been progressively retreating from your public boasts of transparency. Regrettably, your actions now speak far louder than your words as the CSSP becomes cloaked in more layers of secrecy designed to limit transparency. While this trend started shortly after the CSSP opened its doors and you cut off the parties' direct access to the settlement vendors, we have noted an acceleration after BP raised important issues about the incorrect processing of BEL claims under the terms of the Settlement Agreement and the revelations of fraud, corruption and abuse that led to the appointment of Special Master Freeh. Also troubling is that your actions to limit transparency seem now to come on the heels of noisy communications from Class Counsel expressly designed as part of a calculated campaign to shroud the CSSP in secrecy. The following examples are illustrative of the steps you have taken to limit transparency:

- Cutting off the parties' direct access to the claims administration vendors;
- Not informing the public about the Claims Administrator's attempts to address the myriad problems in the settlement program identified by Special Master Freeh;
- Limiting access to settlement program data;
- Taking the position that CSSP budget meetings are confidential;[1]
- Not providing the parties with the CSSP's regular internal audit reports; and
- Filing public reports with the Court that fail to even mention, much less appropriately report on, not only the fraud, corruption and abuse that has been discovered, but whatever substantial remediation is being undertaken to the CSSP's claims processing functions.

Your actions have cloaked the CSSP in confidentiality that is inappropriate for a Court Supervised Settlement Facility. Not providing the reports and work papers from McGladrey is the capstone of a non-transparent claims facility.

Whatever work product the Claims Administrator has now received after a year's work from McGladrey must be shared with BP and Class Counsel to accomplish the goal of a transparent claims facility. The results of the McGladrey operational audit are needed to allow the parties and the public to determine if the Settlement Program, as administered by the Claims Administrator, has processes and controls in place as required by the Settlement Agreement, and to identify any gaps. *See* Settlement Agreement § 4.3.1 (requiring the Claims Administrator to "faithfully implement and administer the Settlement Agreement, according to its terms and procedures"). BP, which funds the Settlement Trust, has a right to know if there are systemic inaccuracies in claims processing that require correction. *See* Settlement Agreement § 4.3.2 (stating that the Claims Administrator shall provide information to the Court, BP, and Class Counsel as part of its administrative function).

Moreover, the purpose of McGladrey's operational audit was, in part, to generate reliable data that BP and the CAO could use to determine an appropriate facility budget.

---

[1] As you know, BP disagrees with you that the budget meetings are confidential. (We recognize that you have called a Panel Meeting to discuss this issue and trust that you will change your position for the reasons we previously presented.) However, you have *not* taken the position that the actual CSSP budgets that the Claims Administrator is required to prepare and produce to the parties under the Settlement Agreement are confidential.

Judge Shushan's September 30, 2013 Order acknowledged as much. *See* Court's Order, at page 4 (Sept. 30, 2013) (noting the "institution of an operational review and examination of all Program systems to determine appropriate productivity and efficiency metrics for the Program budget"). Next month BP will again engage in quarterly budget discussions with the facility. The results of the McGladrey audit are needed to provide reliable information about the CSSP's operation to inform the first quarter 2015 budget.

BP also has concerns about the duration and expenditures for McGladrey's audit with nothing to show for this time or expense. A brief review of what very little BP has been made privy to about McGladrey's work illustrates these concerns:

1. McGladrey's Initial Q4 2013 Fees Exceeded McGladrey's Total Estimated Audit Costs.

    • McGladrey told the Claims Administrator that audit costs would range from $1.2 million to $1.6 million. (See October 16, 2013 letter from McGladrey to Claims Administrator's Office)
    • McGladrey's actual costs for Q4 2013 *alone* were approximately $2.2 million.

2. McGladrey's Q1 2014 Fees Exceed the Initial Q1 2014 Budget by $5.3 Million

    • The Q1 2014 budget for McGladrey was $1.6 million.
    • In late January 2014 the McGladrey's budget was raised to $7.6million.
    • McGladrey's actual Q1 2014 spend was $6.9 million.

3. McGladrey's Q2 2014 Fees Exceed the Initial Q2 2014 Budget by $2.5 million

    • Q2 2014 budget for McGladrey was $2.1 million.
    • McGladrey's actual Q2 2014 spend was $4.6 million.[2]

Taken together, McGladrey advanced a project to the Claims Administrator (and the parties) at an estimated cost $1.2-1.6 million. While you provided an initial explanation for the Q1 Budget overruns, you have not explained why McGladrey continued to overrun the budgets through Q3. Nine months into the first year McGladrey had charged more than $13.5 million having consistently overrun the budgets.[3] It is clear that the Claims Administrator has exercised limited financial or budgetary oversight, if any, over McGladrey's work. Organizations retain auditors every day and are able to appropriately manage the auditors, including audit costs. Absent appropriate management, an auditor has carte blanche to bill for audit services without any risk of recourse from its audit client if those services are not being performed efficiently or being completed within appropriate durations.

Given that the Claims Administrator has not exercised effectual budgetary controls over McGladrey we can only assume that McGladrey was providing the Claims Administrator with its budgets and, therefore, McGladrey was repeatedly overrunning its own

---

[2] McGladrey spent an additional $935,497 in July.

[3] BP has repeatedly objected to McGladrey's budgets.

cost estimates. BP has virtually no visibility into McGladrey's audit and, as a result, cannot even assess the value of McGladrey's work against these spiraling and dramatic audit fees. Nor do we have any understanding for why the completion of this audit has been repeatedly delayed and continues to drag on without anything to show for the time and cost. We simply cannot understand how a nationally recognized auditing firm like McGladrey that has committed scores of auditors to this project cannot complete this single entity audit within a year.

I write to request that you produce McGladrey's final reports along with McGladrey's working papers to BP. If any of the reports are not yet complete, please provide the final reports (and working papers associated with such reports) that are complete. For any reports that will not be complete by October 14, 2014, please respond to explain why these reports have been delayed and when they are expected to be complete.

Sincerely,

Randy Latta
CFO, Gulf Coast Restoration Organization

Cc:     Mark Holstein
        Keith Moskowitz
        Maria Travis
        Steve Herman
        James Roy

Exhibit 4



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

**Patrick A. Juneau**
*Claims Administrator*

October 16, 2014

Via Electronic Mail

Randy Latta
CFO, Gulf Coast Restoration Organization

Re: McGladrey LLP

Dear Mr. Latta

I have your October 10, 2014 letter. The main thrust of your letter appears to be another request for an explanation as to the status of the McGladrey report. The status of the report, as we have understood it to be, has been reported to you at various stakeholders meetings. It has still not been finalized. When we are informed that it has been finalized, we will so inform you, and on its receipt will deliver the final report to the Court. We will then make further distribution as the Court directs.

Sincerely,

PATRICK A. JUNEAU
Claims Administrator

Cc:     Mark Holstein
        Keith Moskowitz
        Maria Travis
        Steve Herman
        Jim Roy

Exhibit 5

## Travis, Maria T

| | |
|---|---|
| **From:** | Rebecca Foreman <rforeman@dheclaims.com> |
| **Sent:** | Monday, October 20, 2014 9:51 AM |
| **To:** | Holstein, Mark E; Latta, Randy L (UK) |
| **Cc:** | Moskowitz, Keith; Steve Herman (SHERMAN@hhklawfirm.com); 'James Roy (jimr@wrightroy.com)' (jimr@wrightroy.com); Travis, Maria T |
| **Subject:** | RE: October 16th letter re McGladrey |

Dear Mr. Holstein:

Responding to yours of October 17, as I explained to Mr. Latta in my letter of October 16th, the McGladrey report is not final. Accordingly, my letter should not be interpreted as a "refusal" to produce the same. As I have already explained, once we receive the final report, we will submit it to the Court and we will make such further distribution as the Court directs.   Nevertheless, we will honor your request and place the issue on the October 22nd panel meeting agenda.

**PATRICK A. JUNEAU**
Claims Administrator

**From:** Holstein, Mark E [mailto:Mark.Holstein@bp.com]
**Sent:** Friday, October 17, 2014 9:23 AM
**To:** Rebecca Foreman; Latta, Randy L (UK)
**Cc:** Moskowitz, Keith; Steve Herman (SHERMAN@hhklawfirm.com); 'James Roy (jimr@wrightroy.com)' (jimr@wrightroy.com); Travis, Maria T
**Subject:** RE: October 16th letter re McGladrey

Dear Pat,

We read your October 16th letter as a refusal of BP's request for McGladrey's reports and work papers generated to date. Further, as noted in Mr. Latta's October 10th letter, we cannot understand how McGladrey's audit has not been finalized essentially a year after it incepted and you have provided no explanation. Accordingly, we invoke the dispute resolution procedures contained in the settlement agreement and request that BP's request for McGladrey's audit report(s) and work papers be added to the October 22nd panel meeting agenda. Thank you.

**Mark Holstein**
BP Legal
501 Westlake Park Blvd.
Houston, Texas 77079
Phone: 281-366-8895
Mobile: 630-362-8167

**From:** Rebecca Foreman [mailto:rforeman@dheclaims.com]
**Sent:** Thursday, October 16, 2014 5:59 PM
**To:** Latta, Randy L (UK)
**Cc:** Holstein, Mark E; Moskowitz, Keith; Steve Herman (SHERMAN@hhklawfirm.com); 'James Roy (jimr@wrightroy.com)' (jimr@wrightroy.com); Travis, Maria T
**Subject:** October 16th letter re McGladrey

Please see the attached.

**PATRICK A. JUNEAU**
Claims Administrator

This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.

This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.

Exhibit 6

Filed Under Seal

# Exhibit 7

# Filed Under Seal

# Exhibit 8

# Filed Under Seal

# Exhibit 9

## Travis, Maria T

| | |
|---|---|
| **From:** | J. David Forsyth <jdforsyth@sessions-law.com> |
| **Sent:** | Friday, September 05, 2014 2:07 PM |
| **To:** | Travis, Maria T |
| **Cc:** | 'keith.moskowitz@dentons.com'; 'Steve Herman (SHERMAN@hhklawfirm.com)'; 'jimr@wrightroy.com'; 'pjuneau@dheclaims.com'; 'rblack@dheclaims.com'; 'creade@dheclaims.com'; 'Michael Juneau (mjuneau@dheclaims.com)'; 'Bob Levine (blevine@dheclaims.com)' |
| **Subject:** | Your August 20, 2014 Letter |

Maria:

I have been asked to respond your August 20 letter to Randy regarding data access:

1. As you have been told by Chris Reade, he has been working on providing the data to reconcile the ENT tables, which I believe has now been provided to you.

2. With respect to the other claims data BP has requested (other than the fraud-related data), BP already has the raw post-determination claims data and the CAO does not believe that it is obligated to devote the time and effort to take that data and present it in a different format requested by BP. And under the terms of the Settlement Agreement and applicable court orders, the CAO does not believe that the Parties are entitled to receive pre-determination claims data, even if in aggregated form (which again, the CAO is not obligated to create or format). Should BP desire a Panel Meeting, please let us know and the Claims Administrator will schedule one in due course.

3. You will receive a separate response from the CAO with respect to the fraud-related data at a later date.

-david-


J. David Forsyth, Attorney  |  Sessions, Fishman, Nathan & Israel, L.L.C.
Direct: 504.582.1521 | Fax: 504.582.1555 | jdf@sessions-law.com
201 St. Charles Ave., Suite 3815, New Orleans LA 70170-1052 |  Main: 504.582.1500 Louisiana  •  California  •  Colorado
•  Florida  •  Georgia Illinois  •  New Jersey  •  New York  •  Ohio  •  Texas

Confidentiality: This e-mail is confidential and intended only for the recipient(s) named. Unless you are a named recipient, your reading, distributing, forwarding, or copying this communication is prohibited and may violate the legal rights of others. If you received this communication in error, please call me, return the e-mail to me, and delete it from your system.

Confidentiality: This e-mail is confidential and intended only for the recipient(s) named. Unless you are a named recipient, your reading, distributing, forwarding, or copying this communication is prohibited and may violate the legal rights of others.
If you received this communication in error, please call me, return the e-mail to me, and delete it from your system.

Exhibit 10



August 20, 2014

Mr. Randall Black
Deepwater Horizon Settlement Program
935 Gravier Street
New Orleans, LA 70130

Dear Randy,

This letter reiterates BP's requests for certain CSSP data, including aggregate claims and fraud-related data, which have not been fulfilled by the Claims Administrator's Office ("CAO"). BP's requests for certain claims-related data have been made through Chris Reade. BP's requests for certain fraud-related data have been made through David Welker. While Messrs. Reade and Welker have initially been collaborative in advancing these requests, it is now unclear whether the requested data will ultimately be received. As BP is plainly entitled to this data under the terms of the Settlement Agreement, we write to you in an effort to facilitate the prompt production of the data to us.

## BP's Requests for Certain Claims-Related Data

BP has made requests to Chris Reade for certain aggregated, non-claims specific post-determination data, data that can be used to reconcile detailed eligibility information to the public statistics produced by the CAO (the "ENT" tables), and improved integrity/completeness of the existing post-determination SQL data feed. Mr. Reade worked with us on the formatting of the aggregate data request and has indicated that it is currently under review by the CAO's internal legal team. A copy of the formatted data request is attached for your reference. Weeks have now passed since BP made its initial requests and the data has yet to be provided. We reiterate our request through this letter for data that BP clearly has a right to obtain under the terms of the Settlement Agreement. If the CAO chooses not to provide BP with the requested data, BP intends to call an immediate panel meeting and, if necessary, seek relief from the Court to obtain this data.

## BP's Requests for Certain Fraud-Related Data

BP has requested certain fraud-related data through David Welker. A copy of BP's request is attached for your reference. It is our understanding that Class Counsel has made requests for the same or similar data. Class Counsel and BP were originally told by the CAO that data would be provided, but that there were issues with the integrity and/or accuracy of the fraud-related data generated and maintained by BrownGreer. At the most recent Fraud, Waste and Abuse workstream meeting, the CAO advised the parties that issues related to the integrity and/or accuracy of the data have now been resolved. However, the CAO advised the parties that the Claims Administrator as well as the Special Master are

considering whether to release any of the requested data. The CAO did not explain the basis for potentially withholding this information from the parties. BP has explained that the request for this information has urgency not simply because it is long outstanding, but because it is also relevant to the second round distribution of the seafood fund.

Through this letter BP reiterates its request for the fraud-related data. BP and Class Counsel are clearly entitled to this information under the terms of the Settlement Agreement. In addition to the parties' contractual right to the data, provision of this information is important to the transparency of the CSSP's operations and the parties' ability to ensure that the CSSP is appropriately discharging its obligations under the Settlement Agreement. Furthermore, the data that BP has requested consists of aggregate, non-claimant or claim-specific specific statistical data. We see no basis to withhold this data on grounds that it would in any way impair the ability of the CAO to effectively address potential claimant fraud.

BP's and Class Counsel's requests for aggregate, non-claimant or claim-specific fraud data have been outstanding now for months. While we appreciate the challenges the CAO faced attempting to obtain accurate data from BrownGreer, we do not believe that there should be any further delay in providing us with the requested data. If the CAO contends that the parties are not entitled to this information we ask that you advise us of that now and provide us with the basis for your positions. If not, we kindly request that the information be provided to the parties forthright.

If the CAO chooses to withhold this requested data from BP we intend to request a panel meeting and, if that does not result in production of the data, to pursue this request through the Court.

BP remains available to discuss these requests with you or anyone else in the CAO to facilitate prompt production of the data.

Sincerely,

Maria Travis

Director of Claims - GCRO

cc:    Patrick Juneau
        Chris Reade
        David Welker
        Steve Herman
        Jim Roy
        Mark Holstein
        Keith Moskowitz