UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | Mag. Judge Shushan |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

MEMORANDUM IN SUPPORT OF MOTION OF THE SPECIAL MASTER
FOR RETURN OF PAYMENTS MADE TO GILL JOHNSON, SR., AND OTHERS

Special Master Louis J. Freeh moves to have claimant Gill Johnson, Sr. ("Johnson") return payments made by the Deepwater Horizon Economic Claims Center ("DHECC"). Johnson presented the DHECC with 2008 and 2009 tax "returns" reflecting significant alleged income from commercial oyster sales. The tax "returns" had never been filed with the Internal Revenue Service, and Johnson never paid the taxes reflected on the false forms. Relying on the false forms, the DHECC paid Johnson $440,331.99 on his claims.

The Special Master seeks a judgment requiring Johnson to return money paid on these DHECC claims, requiring professionals who assisted Johnson and benefitted from this unjustified payment to similarly return such payments, and prohibiting Johnson from participating in any further seafood distributions.

**A.  *Background***

By order of September 6, 2013, this Court directed the Special Master to examine and investigate past or pending claims submitted to the DHECC which are deemed to be suspicious, and to initiate clawback proceedings of fraudulent claims. This Court retains continuing and exclusive jurisdiction over the Deepwater Horizon Economic and Property Damages Settlement Agreement (the "Settlement Agreement"), including supervision and

oversight activities to ensure the integrity of the DHECC.  *See* Settlement Agreement at ¶¶ 4.3.2, 4.3.10, 4.4.7 and 18.1.  Disputes concerning enforcement of the Settlement Agreement are to be resolved by motion to the Court.  *Id*. at ¶ 18.1.

### B. *The DHECC Claims*

On January 22, 2013, Johnson filed claims as an oyster vessel owner and oyster boat captain, seeking to have the DHECC calculate both claims using his 2008 and 2009 tax records.  The same day, Johnson filed shrimp vessel owner and boat captain claims, also asking to have those claims determined from his tax records.

1. Seafood Income Documentation.

Along with his DHECC claims, Johnson filed a report from Juno Claims, a claims preparation firm, presenting supporting documentation for the claims including various tax forms from 2008 and 2009.  *See* Ex. A.  The documentation included no trip tickets for oyster or shrimp commercial sales.  *Id*.

For 2008, the filing contained an undated and unsigned 2008 Form 1040, reporting on the Schedule C that Johnson had $220,000 in gross receipts and sales from "commercial fishing."  *Id*.  For 2009, the filing contained an undated and unsigned 2009 Schedule C (but not the remaining pages of the Form 1040), reporting $242,126 in gross receipts and sales from "commercial fishing."  *Id*.  In a filing Johnson made with the Gulf Coast Claims Facility, Johnson provided a full 2009 Form 1040, dated August 23, 2010 and signed by a tax preparer but not by Johnson.  *See* Ex. B.  The full 2009 Form 2040 included a copy of the 2009 Schedule C that Johnson submitted to the DHECC.  *See* Exs. A & B.  Johnson requested the DHECC to use these 2008 and 2009 tax forms to verify his seafood income.  *See* Ex. A.

- 3 -

On January 21, 2013, Johnson's counsel signed a Sworn Written Statement for Sufficient Documentation of Benchmark Revenue ("SWS1"). *See* Ex. A. Johnson did not sign the SWS1. The form stated that Johnson landed $176,000 in oysters on public grounds in the Gulf Coast Areas ("GCA") in 2008, and $217,913.40 in oysters on public grounds in the GCA in 2009. *Id.* The form also stated that Johnson landed $44,000 in shrimp in the GCA in 2008, and $24,212.60 in shrimp in the GCA in 2009. *Id.* Added together, the revenue reflected on the SWS1 matched the gross receipts declared by Johnson on his 2008 and 2009 tax forms.

    2.    <u>DHECC Payments</u>.

Relying on the SWS1 and Johnson's tax forms, the DHECC found that Johnson qualified for compensation of $301,107.40 on the oyster vessel owner claim and $270,224.59 on the oyster boat captain claim. *See* Exs. C & D. On October 18, 2013, the DHECC paid Johnson $169,107.40 on the oyster vessel owner claim (after deducting prior GCCF payments) and $271,224.59 on the oyster boat captain claim.

In September 2013, the DHECC issued incompleteness notices on Johnson's shrimp claims, stating that Johnson had not submitted sufficient documentation to show that his vessel was authorized to commercially harvest shrimp in the 2009 or 2010 season, that the proper allocation of revenue from his claimed vessel could not be determined, and that the revenue asserted on the SWS1 could not be verified.

Upon information and belief, Johnson's counsel, Ungar & Byrne, APLC, received attorney's fees of $42,276.85 on the paid oyster vessel owner claim and $67,806.15 on the paid oyster boat captain claim.

### C. *Evidence of the Fraudulent Claims*

The totality of the record shows that there is no genuine issue as to any material fact and that the Special Master and the DHECC are entitled to a judgment as a matter of law. *See* Order & Reasons on Special Master's Motion for Return of Payment at 19 (Doc. Rec. 12794) (Apr. 29, 2014) (hereinafter "Order & Reasons"). Judgment against Johnson is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (opposing party must do more than simply allege some metaphysical doubt as to the facts).

In this case, because commercial fishing records did not reveal any trip tickets for oyster or shrimp commercial sales by Johnson, the DHECC relied upon the SWS1 and the 2008 Form 1040 and 2009 Schedule C that Johnson presented to determine Johnson's eligibility for compensation, as well as the value of his claims. The income figures on the SWS1 matched the alleged revenue figures from the 2008 and 2009 tax forms.

Johnson, however, never filed the 2008 or 2009 Form 1040s with the Internal Revenue Service ("IRS"). Specifically, IRS records provided to the DHECC with Johnson's consent reflect that Johnson did not file the 2008 or 2009 Form 1040s, nor did he pay the IRS the $34,043 in tax owed as reflected on the 2008 form presented to the DHECC or the $32,814 in tax owed as reflected on the 2009 form presented to the GCCF. *See* Ex. E.

On October 3, 2014, investigators working for the Special Master interviewed Linda Fisher of Fisher Accounting in Theodore, Alabama. Fisher is listed as the tax preparer on Johnson's 2009 Form 1040 filed with the GCCF.

Fisher told the investigators she prepared Johnson's income tax returns in 2001, but did not handle his taxes again until late July 2010 when Johnson asked her to prepare 2009 returns for him. When Fisher asked why Johnson wanted to prepare tax returns when he

was already late, Johnson said he wanted tax returns so he could file a BP oil spill claim and a disability claim. In Johnson's presence, his girlfriend provided Fisher with a summary of Johnson's alleged 2009 income and expenses but not any source documents. Relying on the summary, Fisher prepared Johnson's 2009 Form 1040. She instructed Johnson that he needed to mail the Form 1040 to the IRS, but she does not know if Johnson mailed the return to the IRS.

The investigators showed Fisher a copy of the 2009 tax forms Johnson filed with the DHECC. She identified her signature and identification numbers on the forms. The investigators also showed Fisher a copy of the unsigned and undated 2008 Form 1040 Johnson also filed with the DHECC. Fisher did not prepare this document and had not seen it before her meeting with the investigators.

Johnson benefitted significantly by providing the DHECC with the false 2008 and 2009 tax forms. Johnson asked the DHECC to calculate his claims relying on these false forms, representing that the papers could be relied upon because they documented his official tax accountings for these year. Because Johnson had no trip tickets documenting any oyster commercial sales, the DHECC relied upon the 2008 and 2009 tax forms to calculate the claims. Johnson concealed from the DHECC that these tax forms had never been filed with the IRS and that the tax liability indicated on the forms had never been paid.

### D. *Legal Analysis*

1. The Court Should Order Johnson to Return All Funds
   Received from the DHECC Because His Claims Were Fraudulent.

The Court's power to order equitable remedies as a result of fraudulent conduct is a broad, flexible and long-standing power. *See Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 244 (1944) (affirming judicial power to set aside fraudulently begotten

judgments as such cases present "a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society"); Order & Reasons at 21.

Here, the record unquestionably reveals that Johnson knowingly presented false information to the Court-supervised DHECC to obtain $440,331.99. *See* Criminal Information, *United States v. Thonn*, Crim. 2:14-cr-00207-SRD-SS (E.D. La. Sept. 23, 2014). As he had no trip tickets demonstrating any commercial seafood sales, Johnson falsified tax forms to qualify for compensation, submitting tax records to the DHECC that in fact had never been filed with the IRS. *See* Exs. A & E.

In light of the evidence, the Special Master seeks an order compelling Johnson to return payments made on his DHECC seafood claims. The return of the payments will make the DHECC whole, deprive Johnson of an unjust enrichment and deter others from engaging in similar misconduct. *See* Order & Reasons at 22.

2. The Court Should Order the Return of All Funds Received by Professionals Who Assisted Johnson to Submit False Claims.

The professionals who helped Johnson to submit their claims also should be required to return any payment received based on these claims. *See* Order & Reasons at 26; *SEC v. Blatt*, 583 F.2d 1325, 1335-36 (5th Cir. 1978) (broad power enables courts to order disgorgement of legal and other professional fees "realized by each defendant for his assistance in executing the fraud" up to the amount of the fee realized). Whether these professionals knew of the falsity of Johnson's claim is immaterial to their duty to make restitution of sums that have been received as a result of this improper claim. Order & Reasons at 23; *Schock v. Nash*, 732 A.2d 217, 232-33 (Del. 1999) ("Restitution is permitted even when the defendant retaining the benefit is not a wrongdoer.").

Money paid by contingency fee arrangements may be recouped through restitution where the client's judgment is reversed or voided.  *See Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996).  The contingent fee is the key factor.  *See* Order & Reasons at 22-23.  Retaining payment made on a contingency fee contract if the client does not prevail or prevails but has the award revoked would be an unjust enrichment.  *Id*. at 24.

Here, upon information and belief, the Ungar & Byrne law firm received attorney's fees of $110,083.00 on Johnson's claims based upon a contingency fee contract.  The fees would not have been payable absent payments on these fraudulent claims, and they now should be ordered returned to the DHECC.

  3.  <u>Johnson is Not Entitled to Any Funds from the DHECC</u>.

On October 20 and 21, 2014, after being informed that Johnson did not file his 2008 and 2009 tax forms or pay taxes on his claimed income for those years, Johnson's counsel stated that a CPA was being retained to document Johnson's alleged seafood income from 2008 and 2009.  To maintain the integrity of the DHECC and the judicial process, any new reports or opinions concerning Johnson's alleged seafood sales should be rejected if submitted by Johnson.

In January 2013, Johnson asked the DHECC to calculate the value of his claims solely from his 2008 and 2009 tax forms.  *See* Exs. F & G.  Johnson presented a purported expert accounting report on his alleged losses relying solely upon those tax forms and no other contemporaneous third-party records, such as financial statements or trip tickets.  *See* Ex. A.  Johnson misled the DHECC to accept these tax forms and depend upon them as if they were valid documents.  In fact, the DHECC did rely upon the documents.  *See* Exs. C & D.  Now that the tax forms have been shown to be fraudulent, any attempts by Johnson to

disavow his earlier false submission and assert instead that other financial records be used to support his claim should be rejected under the equitable doctrine of judicial estoppel.

Designed to protect the integrity of the courts, judicial estoppel allows a court to protect its own integrity when it is threatened by a litigant "playing fast and loose with the courts." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). The doctrine discourages a party who may consider committing perjury or engaging in other fraud in hope that the deception will not be detected. *Burns v. Pemco Aeroplex*, 291 F.3d 1282, 1288 (11th Cir. 2002) ("Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them."). The doctrine removes the incentive for a party to falsify evidence in hopes that no disadvantage will follow. *McNamara v. City of Chicago*, 138 F.3d 1219, 1225 (7th Cir. 1998); *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993) ("The policies underlying the doctrine include preventing internal inconsistency, precluding litigants from playing fast and loose with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment.").

Here, Johnson misled the court-supervised DHECC settlement program to accept that his 2008 and 2009 tax forms were genuine and dependable records filed with the federal government, reflecting a *bona fide* tax obligation that Johnson owed as a result of his revenue in those years. The submission of these tax documents was intended to give an impression that the financial figures could be trusted and relied upon to support Johnson's DHECC claims. Allowing Johnson to present a new set of accounting data and expert report now that the fraudulent nature of his first submission has been revealed would only

encourage claimants to take a chance at submitting false information, knowing that they could subsequently submit different data if their fraud were uncovered. *McNamara v. City of Chicago*, 138 F.3d 1219, 1225 (7th Cir. 1998); *Chaachou v. Am. Cent. Ins. Co.*, 151 F. Supp. 892-93 (5th Cir. 1957) (without consequence for fraud in insurance claims, claimant would be in an "everything-to-win, nothing-to-lose proposition" where taking a chance at a fraudulent submission only could result in positive results to the dishonest claimant).

Given the deceptions practiced by Johnson over the past 18 months, the Court should not accept any additional evidence of Johnson's alleged seafood activity in 2008 and 2009. The remedy is important here so Johnson does not benefit from his fraudulent acts, and also to safeguard the integrity of an important public institution administering a fund for the benefit of an injured segment of society.

### E. *Conference with Claimant's Counsel*

On October 7, 2014, the Special Master contacted Johnson's counsel to discuss the investigation of Johnson's claims and the intent to seek repayment. Johnson's counsel requested additional time to review this information. On October 20 and 21, 2014, Johnson's counsel reported that a CPA had been hired to document Johnson's alleged seafood harvesting activity in 2008 and 2009 so counsel could report on the matter to the Court. The Special Master provided counsel a copy of Exhibit E, which is the IRS records showing that Johnson filed no tax returns and paid no taxes for 2008 or 2009. The Special Master further advised Johnson's counsel of its position that any new accounting of alleged seafood harvest would not cure the submission by Johnson of false 2008 and 2009 tax documents.

No agreement was reached concerning repayment of Johnson's claims.

## F. *Conclusion*

For the reasons stated in this memorandum, the Special Master seeks entry of a judgment requiring Johnson to make restitution to the DHECC for $440,331.99, paid by the DHECC in reliance on Johnson's false representations.  All professionals who assisted Johnson and benefitted from these unjustified payments from the DHECC similarly should be required to return these payments, jointly and severally with Johnson up to the value of the amounts they received as payments on the claims.

Respectfully submitted,

    /s/ Louis J. Freeh
Louis J. Freeh
Special Master

Dated:   October 23, 2014