IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 SECTION J |
| | * | Honorable CARL J. BARBIER |
| This document relates to Civ. A. No. 12-970. | * * * * | Magistrate Judge SHUSHAN |

### MEMORANDUM IN SUPPORT OF BP'S MOTION TO ORDER PRODUCTION OF THE MCGLADREY LLP REPORTS

This Motion involves a very straightforward set of facts and legal principles.

The Claims Administrator of the Court Supervised Settlement Program ("CSSP") engaged nationally recognized auditing firm McGladrey LLP to audit the CSSP.  *See* Dec. of Lynn G. Greer, CSSP Vendor, Rec. Doc. 13497-6 at 103 (Oct. 15, 2014).  BP has already expended an alarming *$14-plus million* in the one-year period that McGladrey LLP has been working to produce this audit of the CSSP.  *See* Rec. Doc. 13530 at 5 (Oct. 20, 2014).  As explained below, several provisions of the Settlement Agreement entitle BP to obtain a copy of the McGladrey LLP audit's interim and final reports (the "McGladrey LLP Reports" or "Reports").  These provisions are designed to serve not only the interests of the Parties but the interests of the general public in the bedrock principle of ensuring transparency and openness in judicial administration.  BP therefore respectfully requests that the Court order the CSSP to provide BP with a copy of these Reports critical to the protection of BP's contract rights.

### BACKGROUND

1. In October 2013, the CSSP retained McGladrey LLP to provide third-party audit

services to "review the CSSP's business[] processes and procedures as well as claims-related activities." *See* Rec. Doc. 13530-3 at 2.

2. After a year's worth of work, during which time BP (via funding the Settlement Trust) dutifully paid McGladrey LLP's bills as submitted to the CSSP, Randy Latta (BP's CFO of Gulf Coast Restoration Organization) sent a letter to the Claims Administrator on October 10, 2014. *See id.*, Ex. 3 at 1. Mr. Latta explained why BP was entitled to see a copy of interim and final McGladrey LLP's Reports. *See* Rec. Doc. 13530-3 at 4.

3. "[N]o additional funds have been earmarked to pay McGladrey beyond August of this year," which would suggest that at least some portions of "McGladrey's audit [are] complete." *See id.*, Ex. 3 at 1. Despite this, the Claims Administrator wrote back to Mr. Latta on October 16, 2014, stating that the McGladrey LLP report "has still not been finalized" and that when "it has been finalized," the CSSP will simply "deliver the final report to the Court." *See* Rec. Doc. 13530-3 at 5. The letter further "stated that the CSSP will not provide the report to BP or Class Counsel unless the Court [so] directs." *Id.* It is this position announced by the Claims Administrator that necessitates this Motion.

4. The Claims Administrator's position was further solidified via an October 17 through October 20, 2014 e-mail exchange between BP and the CSSP. *See id*. (Claims Administrator reiterated that the Reports would only be filed with the Court). In this exchange, the CSSP also refused to acknowledge BP's request for "interim reports generated in preparing the final report, in addition to the final report." *See id.*

5. The purpose of the McGladrey LLP audit "was, in part, to generate reliable data that BP and the CAO could use to determine an appropriate facility budget." *Id.*, Ex. 3 at 2. Judge Shushan confirmed the same point, when she referenced the "institution of an operational review

and examination of all Program systems to determine appropriate productivity and efficiency metrics for the Program budget." *See* Rec. Doc. 11550 at 4 (Sept. 30, 2013).

      6.    BP is concerned about whether the McGladrey LLP audit has been marked by significant cost overruns and now ***well exceeds 8 times*** the $1.6 million, top-of-the-range cost estimate that the auditor gave to the CSSP at the outset of its engagement. *See* Rec. Doc. 13530-3 Ex. 3 at 3. Mr. Latta's letter to the Claims Administrator noted that the Administrator attempted to explain only the cost overrun for a single quarter of McGladrey LLP's budget — Q1 — leaving BP in the dark as to whether and how other quarters' cost overruns might be explained. *See id.* Mr. Latta's letter further indicated that BP has a complete lack of understanding and visibility into the McGladrey LLP audit process despite being required under the Settlement Agreement to foot its bill. *See id.*

## ARGUMENT

    **A.**    **The Claims Administrator's Refusal to Produce the Final and Interim McGladrey LLP Reports Defeats the Settlement Agreement's Guarantee of CSSP Transparency.**

When the Court approved the Settlement, it focused on mandating transparency in the CSSP. It stated that "the Settlement Agreement is designed to be transparent," and the purpose of the detailed Settlement frameworks is to "ensure that determinations made by the Settlement Program are objective, consistent, and predictable." *See* Final Approval Order, Rec. Doc. 8138 at 110-11 (Dec. 21, 2012). To achieve this goal, the Settlement Agreement guarantees that "BP and Class Counsel shall have access to all . . . Claims-related data transferred to or generated in the Settlement Program for any legitimate purpose ***including, without limitation, . . . reviewing and auditing the Settlement Program*** . . . ." *See* Settlement Agreement § 4.4.14 (emphasis

added).[1]   The Claims Administrator's decision not to provide the reports prepared by McGladrey is inconsistent with the express terms of the Settlement Agreement by precluding BP's access to these documents.

The results of the McGladrey audit are also necessary to determine whether the Settlement Program, as administered by the Claims Administrator, has put the necessary processes and controls in place as required both by the Settlement Agreement and by prudent exercise of the Claims Administrator's fiduciary role as Trustee.  *See* Settlement Agreement § 4.3.1 (requiring the Claims Administrator to "faithfully implement and administer the Settlement, according to its terms and procedures"), § 5.12.1 (assigning the role of Trustee to the Claims Administrator).  BP, which funds the Settlement Trust, also has a right to know if there are systemic inaccuracies in claims processing that require correction.  *See id.* § 4.3.2 (stating that the Claims Administrator shall provide information to the Court, BP, and Class Counsel as part of its administrative function).

The Claims Administrator has himself recognized the importance of transparency in the CSSP's operations.  For example, in June 2012, the Claims Administrator stated that the CSSP would be "very, very transparent . . . ***transparency on steroids***."  Ex. 1, Louis Cooper, *New Oil Spill Claims Chief Vows Transparency*, PENSACOLA NEWS JOURNAL (June 11, 2012) (emphasis added).  Similarly, in April 2012, the Claims Administrator told the press that there would be "a tremendous amount of transparency."  Ex. 2, Brendan Kirby, *Feinberg Promised to Be More Generous Than the Courts, But Was He Right?*, AL.COM (Apr. 22, 2012).  When Special Master Freeh was appointed to investigate wrongdoing within the CSSP, the Claims Administrator again stated that his "mission has been to process claims in a fair, efficient and transparent manner."

---

[1] The audit information BP seeks in this Motion does not seek pre-determination claims file data.

4

Ex. 3, Ed Crooks, *Ex-FBI Head to Probe BP Payout Claims*, FINANCIAL TIMES (July 3, 2013). And in a statement to local news media, the Claims Administrator said the CSSP has "been consistent and transparent with the claims process."  Ex. 4, David Hammer, *BP Disputes Reading of Agreement to Calculate Damage Settlements*, WWLTV (Mar. 20, 2013).

The Claims Administrator retreated from his commitment to transparency shortly after the CSSP opened its doors. *See* Rec. Doc. 13530-3, Ex. 3 at 2 (Latta letter providing numerous examples of ways in which the Claims Administrator has frustrated transparency, such as by cutting off the Parties' direct access to the CSSP's vendors and by not providing access to the CSSP's own internal audit reports). Since that time and to no avail, BP has raised critical issues concerning the processing of claims under the terms of the Settlement Agreement — as indications of claimant fraud, possible corruption, mismanagement, and other abuses have mounted, leading to the appointment of Special Master Freeh.[2]

Pursuant to the terms of the Settlement Agreement, which plainly mandate a transparency that is the reciprocal benefit BP contracted to receive in exchange for funding the CSSP's functions, the CSSP should be ordered to share with BP the final and interim McGladrey LLP Reports.

> **B.    The Claims Administrator's Refusal to Produce the McGladrey LLP Reports Renders Meaningless BP's Right to Obtain the Information That Lies Behind the Claims Administrator's Budget Requests.**

Even beyond what is necessary to facilitate proper oversight of a CSSP claims facility paying out billions of dollars, BP has a right under the express terms of the Agreement to

---

[2] *See* Rec. Doc. 10564 at 2 (July 2, 2013) (charging the Special Master with (i) investigating the facts behind Lionel H. Sutton's resignation as well as (ii) other alleged misconduct within the CSSP and (iii) investigating the internal compliance programs within the Settlement Program); Rec. Doc. 11288 (Sept. 6, 2013) (expanding the Special Master's role to include (i) development of anti-corruption protocols, (ii) clawback of certain funds, and (iii) ongoing monitoring and reporting).

approve the CSSP's own administrative expense budget. *See id.* § 5.12.1.4. But, as this Court already has recognized, BP cannot fully and fairly exercise its right to subject the budget to "reasonable approval" without a thorough understanding of the CSSP's operations and the data underlying the Claims Administrator's proposed budgets. *See* Rec. Doc. 11550 at 3-5.

The Settlement Agreement generally requires the Claims Administrator to "report and provide information to . . . BP . . . as may be requested on an ongoing basis and/or as the Court directs." *See* Settlement Agreement § 4.3.2. It also provides BP with access to information concerning administrative expenses. Specifically, the Claims Administrator must provide BP monthly reports of administrative expenses paid in connection with the CSSP "in such detail as the BP Parties may reasonably request" and a breakdown of such payments in comparison to the total administrative expense budget. *See id*. § 5.12.1.4. Contracts entered into with Claims Administration Vendors and their subcontractors must allow BP to review the underlying invoices so that BP is provided with a reasonable amount of time to raise concerns or voice objections to such invoices prior to their payment. *See id.* These provisions recognize that BP would be forced to evaluate the CSSP's budget in a vacuum unless it is allowed to scrutinize the details behind the CSSP's operations and the actual costs it incurs so that CSSP course corrections can be quickly identified and timely implemented.

      C.     **BP Has Additional Rights to the McGladrey LLP Reports.**

BP's legal rights under the Settlement Agreement are clear and they mandate the relief BP seeks in this Motion. However, BP also has additional legal rights to obtain access to the McGladrey LLP final and interim reports. BP will not detail those rights here because of certain positions being taken by the Claims Administrator in the panel meeting process that BP will describe only if that becomes necessary. Accordingly, BP reserves all of its rights to make an under-seal filing or an offer of proof to resolve any differences with the the Claims

Administrator if those disputes are not simply mooted by granting this Motion.

## **CONCLUSION**

For the foregoing reasons, BP respectfully requests that the Court compel the Claims Administrator to produce to the Parties the interim and final McGladrey LLP Reports. The Settlement Agreement's plain terms require that outcome. And the simple principle of justice that the payor should be able to see the work product that it is paying for warrants nothing less.

October 24, 2014

Mark Holstein
BP AMERICA INC.
501 Westlake Park Boulevard
Houston, TX  77079
Telephone: (281) 366-2000
Telefax:  (312) 862-2200

*OF COUNSEL*

Richard C. Godfrey, P.C.
Wendy L. Bloom
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Telefax:  (312) 862-2200

Respectfully submitted,

  */s/ Jeffrey Bossert Clark*
Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Telephone:  (202) 879-5000
Telefax:  (202) 879-5200

  */s/ Don K. Haycraft*
S. Gene Fendler (Bar #05510)
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone:  (504) 581-7979
Telefax:  (504) 556-4108

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.
AND BP AMERICA PRODUCTION COMPANY*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, on this 24th day of October, 2014.

/s/ Don K. Haycraft
Don K. Haycraft