# Exhibit 4

Ex 1.docx



# BP disputes reading of agreement to calculate damage settlements

Plaintiff's attorneys say they are shocked at BP's move last Friday to sue the man who was appointed by the court to pay oil spill damage claims under a detailed settlement BP agreed to last year.

WWL Staff, WWLTV.com     *11:23 p.m. CDT March 20, 2013*

**David Hammer / Eyewitness News**
Email: dhammer@wwltv.com (mailto:mperlstein@wwltv.com) | Twitter: @ (https://twitter.com/mikeperlstein)davidhammerWWL

NEW ORLEANS -- Plaintiff's attorneys say they are shocked at BP's move last Friday to sue the man who was appointed by the court to pay oil spill damage claims under a detailed settlement BP agreed to last year.

'In all my 30-plus years of doing mass torts and complex litigation I've never seen a party sue a claims administrator for breach of a contract, a contract the parties negotiated, agreed upon and wrote in clear and plain language,' said Dawn Barrios, an attorney representing more than 100 oil spill claimants.

Barrios and others call it 'buyer's remorse' and 'sour grapes' after BP contended that claims administrator Patrick Juneau was misinterpreting the clear language of BP's settlement with a class of private claimants.

The 1,000-page agreement was meticulously negotiated, right down to a written debate over whether the phrase 'comparable months' means 'the same months.'

During the negotiations, a BP lawyer said that is what that phrase meant. Now that the settlement is costing BP a lot more than it initially expected and reported to its shareholders the same lawyer is arguing it should mean something else.

At first, BP set aside $7.8 billion for the economic damages settlement, which it signed last spring. It fought for the agreement in front of U.S. District Judge Carl Barbier, arguing it was the most fair settlement possible, then cheered when Barbier named Juneau as the administrator and gave final approval to the agreement.

But since then they have upped their estimate of the settlement bill to $8.5 billion, and after Barbier upheld Juneau's interpretation of how to pay business claims, BP is saying it can't reliably predict how much higher their costs will rise.

Meanwhile, other costs are outpacing what BP has reported as its liability to shareholders. The federal and state governments are pursuing a gross negligence claim against BP for the April 20, 2010, explosion of the Deepwater Horizon drilling rig and the subsequent 87-day oil spill. BP only set aside $3.5 billion to pay civil fines, assuming they would only have to pay for simple negligence. A gross negligence finding by Barbier could raise that bill to around $18 billion.

Suddenly, the $40 billion BP set aside to pay its spill costs is looking like it could really be closer to $60 billion.

BP has already tried twice before to argue that it's Juneau, not them, who is now trying to reinterpret its clear agreement with the plaintiffs. And both times, Barbier has sided with Juneau.

But before BP appeals those rulings to the U.S. 5th Circuit Court of Appeals, it has filed for an injunction against Juneau and sued him in a whole separate action in federal court. In those filings, BP lists dozens of claims, each in the millions of dollars, saying that Juneau has paid them all and others, too incorrectly.

In fact, BP argues that Juneau is paying big bucks to companies that made more after the oil spill than they did before it all because he's misinterpreting the settlement terms.

Indeed, lawyers and accountants have websites touting the settlement as a way to get paid by BP, without having to prove that the losses were caused by the spill and even even if the claimant made more after the spill.

(For examples, click here (http://bpbusinessfund.com/client-examples/) and here (http://www.shinnandcompany.com/BP-Claims.html))

As the Perry Draper law firm in Clearwater, Fla., states on its website (http://www.perrydraperlaw.com/st-petersburg-clearwater/bp-oil-spill/), 'This is what BP agreed to.'

It appears that everyone agrees that BP agreed to a formula for calculating payments based on what a business made in three or more consecutive months between May and December 2010, as compared to profits earned during 'comparable months' from a year or years before the spill.

But BP first started having a problem late last year with how Juneau compared pre-spill and post-spill profits for so-called 'variable profit' businesses, such as construction companies, farmers and professional service firms. BP argued that it was unfair to only compare the same months when those variable profit businesses earn comparable revenues and incur comparable expenses at different times from year to year.

As BP lawyer Rick Godfrey wrote in his filing on Friday: 'The Claims Administrator ... has changed the requirement that the lost profits analysis use 'comparable' pre- and post-spill periods to instead use only the 'same' periods. The effect of this error is most pronounced in, but by no means limited to, the farming industry. By using the same periods, the Administrator is contrasting months in pre-spill years in which a claimant earned the majority of its revenue to months after the spill when it earned no revenue because, for example, the farmer moved the harvest month for business or weather reasons.'

But this is the same lawyer who wrote this in February 2012, while arguing with plaintiffs lawyers that the settlement should not compare all eight months after the spill with only three months from the years before the spill:

'The word 'comparable' and phrase 'comparable months of' is used throughout the document in the context of comparing the months selected by the Claimant in 2010 to compare against the same months in the Benchmark Period.'

Barbier used that email to rule against BP on March 5. Juneau, meanwhile, stands by his reading of the pact.

'We have been consistent and transparent with the claims process,' he wrote in a statement to WWL-TV. 'Regarding the Emergency Motion for a Preliminary Injunction filed Friday, all Business Economic Loss Claims have been processed consistent with the federal court order dated March 5, 2013. We will continue to process all claims until further instructed otherwise by the court.'

Read or Share this story: http://www.wwltv.com/story/news/local/investigations/david-hammer/2014/09/03/14581448/