1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:  OIL SPILL BY THE OIL RIG    *    10-MD-2179
             *DEEPWATER HORIZON* IN THE   *
6            GULF OF MEXICO ON            *    Section J
             APRIL 20, 2010               *
7                                         *    October 23, 2014
                                          *
8    Applies to:  10-4182, 10-4183        *    New Orleans, Louisiana
                  13-2645, 13-2646        *
9                 13-2647, 13-2813        *    11:00 a.m.
                                          *
10   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

11

12
                   TELEPHONE STATUS CONFERENCE BEFORE
13                   THE HONORABLE SALLY SHUSHAN
                   UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20
     Official Court Reporter:      Toni Doyle Tusa, CCR, FCRR
21                                 500 Poydras Street, B-406
                                   New Orleans, Louisiana 70130
22                                 (504) 589-7778

23

24

25   Proceedings recorded by mechanical stenography using
     computer-aided transcription software.

1       <u>I N D E X</u>

2                                                         <u>PAGE</u>

3   Stipulation Excusing or Limiting Participation      3

4   BPXP's Request for Order Re: Search Terms           4

5   Delay in Schedule                                  29

6   Confidential Information                           29

7   NRD-Related Documents                              30

8   State Tax and Revenue Database                     30

9   BP's Motion to Strike Appearance of Governor       31

10  Alabama's Motion to Dismiss Setoff Claims          33

11  Fact and 30(b)(6) Deposition Schedule              34

12  Other Matters                                      34

13  Next Telephone Conference                          36

14

15

16

17

18

19

20

21

22

23

24

25

<u>**PROCEEDINGS**</u>

**(October 23, 2014)**

**THE COURT:**  Good morning everybody.  Let's get ourselves started.  We have a lot to cover.  Let's start with the stipulations excusing or limiting the parties' participation in this case.

**MR. KERRY MILLER:**  Your Honor, hi, it's Kerry Miller, and I'm happy to discuss that issue.

**THE COURT:**  All right, Kerry.

**MR. KERRY MILLER:**  I think we are there, Your Honor. Since we had our last call, Transocean, BP, and Alabama have all provided some edits, with Corey giving some remaining edits this morning because he got the defendants' edits yesterday.

Initially, I'm okay with Corey's edits.  I'm hoping to get client confirmation on that today.  I sent those over to Chris and Chad at BP and haven't heard back from them, but Corey's edits did appear to be relatively minor.  So vis-à-vis Transocean and Alabama, subject to client confirmation, it appears that we are there and waiting to hear back from BP.

**THE COURT:**  Okay.  Good.  Let's talk about whether Anadarko and/or MOEX have had discussions and where they stand.

**MR. HASTINGS:**  Yes, we are still internally, but Ky recently reached out to Corey to discuss options, and we are currently looking through that.

11:03    1          **THE COURT:**  Good.

11:03    2          **MR. KROHN:**  Judge, this is Nick Krohn with the MOEX

11:03    3    entities.  We are following a similar path.  We have had

11:03    4    initial discussions with BP and are fully considering the

11:03    5    matter.

11:03    6          **THE COURT:**  Good.  Okay.  Thanks for the update.

11:03    7               Next up we want to talk about the issue of the

11:04    8    search terms and what we are going to do about BPXP's

11:04    9    complaints.  Have you all been continuing your discussions and

11:04   10    do you all want to give me an update, or do you want me just to

11:04   11    move through my questions?

11:04   12          **MR. MAZE:**  This is Corey.  I think that it would be

11:04   13    most productive if you just move through your questions.

11:04   14          **THE COURT:**  All right.

11:04   15          **MR. COLLIER:**  Well, Your Honor, this is Paul Collier

11:04   16    on behalf of BP.  Good morning.

11:04   17          **THE COURT:**  Good morning.

11:04   18          **MR. COLLIER:**  Just to add just additional color to

11:04   19    the issues that we have raised, one additional piece of

11:04   20    information that started to come to light to us, you may recall

11:04   21    from the last conference that we had we identified that we were

11:04   22    having some load file issues with a substantial portion of

11:04   23    Alabama's document production.

11:04   24               Well, since then we have actually been able to

11:05   25    review a bit more closely the volume of Alabama's production,

1    and one of the issues that started to come to light to us is

2    the fact that -- for a number of the state departments on which

3    Alabama is producing materials, it has come to light that there

4    are a very small volume of materials for each of these state

5    departments.  Some of the examples I will give, Your Honor,

6    just to give you a flavor.

7             For example, with respect to the Department of

8    Revenue, we have been able to identify that Alabama has

9    produced 492 documents that have the custodian identified as

10   being the Department of Revenue.  For Alabama's Legislative

11   Fiscal Office, they have identified 54 documents, or at least

12   that's the custodian that's been identified as the Legislative

13   Fiscal Office.  For the Alabama Tourism Department, the

14   custodian has been identified as the Alabama Tourism Department

15   on 32 documents, for the Department of Finance 30 documents.

16            The reason I raise that, Your Honor, in the

17   context of the custodian search term issue is that it does give

18   us substantial concern that to the extent that Alabama is

19   suggesting that the reasonable search that it was going to

20   conduct is an adequate substitute, this very limited amount of

21   material that we are seeing from the state departments doing a

22   reasonable search would indicate that it's not the adequate

23   substitute Alabama contends it is.

24            So I did just want to raise that issue and

25   identify that this is new information that started to become

11:06
11:06
11:06
11:06
11:06
11:06
11:06
11:06
11:06
11:06
11:06
11:07
11:07
11:07
11:07
11:07
11:07
11:07
11:07
11:07
11:07
11:07
11:07
11:07
11:07

1    available to us now that we have had a little bit more

2    opportunity to be able to review Alabama's production.

3         MR. MAZE:  Your Honor, this is Corey.  I've changed

4    my mind.  I do think we need to speak.

5         THE COURT:  Okay.

6         MR. MAZE:  I will start and I will let Parker take

7    over.

8              First of all, these issues were raised to us at

9    5:14 a.m. this morning, so to have a full response is

10   impossible at this point.  I will point out that for some of

11   the departments that were just named, the overwhelming majority

12   of the documents that are responsive are publicly available and

13   the parties have agreed that publicly available documents don't

14   have to be turned over.  That's why those productions are

15   small.  Other of those departments, we have custodial file

16   information that we will produce.  I'm going to turn it over to

17   Parker now, but --

18        MR. PARKER MILLER:  Corey, I think you covered it.

19        MR. MAZE:  There are answers to each of those, but

20   getting the questions at 5:14 in the morning the day of a

21   conference doesn't really give us sufficient time to address

22   them in front of you.

23        THE COURT:  Okay.  I'm with you.  Okay.  So let me go

24   through some of the issues that I want to make sure I have a

25   full understanding of.  Let's start with documents that are

11:07  1   being produced in hard copy.  The complaint there is that these

11:07  2   documents are being produced in HTM format rather than TIF

11:08  3   format.  Let's cover that first.

11:08  4       **MR. MAZE:**  This is Corey.  I think maybe either I

11:08  5   wrote it wrong or -- what that refers to is a lot of the

11:08  6   departments have been saving their information literally on

11:08  7   sheets of paper in boxes.  So when we get those boxes of sheets

11:08  8   of paper, they are simply scanned in and TIF'd out to be sent

11:08  9   out.  So the problem with those particular types of documents

11:08  10  is it's not going to have all of the metadata fields as those

11:08  11  that were electronically stored would have.

11:08  12      I think the HTM is a different topic, and that

11:08  13  would be where a department has saved an e-mail electronically

11:08  14  but, for instance, if they click "Save As" instead of dragging

11:08  15  it into a folder, it changes the type of file that it has been

11:08  16  saved as and, therefore, some of the metadata may not be there

11:08  17  as compared to if it had been pulled into a folder and it had

11:09  18  maintained its MSG format which it initially had in Outlook.

11:09  19      So I think they are two different topics, but

11:09  20  that's my best understanding of why there are going to be

11:09  21  certain things missing in the metadata field depending on how

11:09  22  the department saved their information.

11:09  23      **THE COURT:**  I might be confusing the topics, but

11:09  24  let's talk about it.  You say that Alabama says that many of

11:09  25  the documents in e-mail are coming to you as HTM files, which

11:09   1    are essentially web image snapshots, right?

11:09   2              MR. MAZE:  Correct.  The way that that's happening is

11:09   3    the departments are either putting them on hard drives or discs

11:09   4    and giving them to us and that's the native format that we

11:09   5    receive, so you are correct.

11:09   6              THE COURT:  Do these documents exist somewhere else

11:09   7    where we can draw them down as TIF files?

11:10   8              MR. MAZE:  Again, I'm not the best tech person.  I

11:10   9    believe that TIF, again, is a different term.  If Jenny is on

11:10   10   the phone, she probably can answer this better than anybody.  I

11:10   11   think that TIF'g something is simply turning it into its own

11:10   12   sort of snapshot.  It's not the native format that it would

11:10   13   have come in.  I think the better way to say it would be is

11:10   14   there any way to get these HTM files back in an MSG format

11:10   15   which might have additional metadata.

11:10   16             THE COURT:  That, I guess, is a better question.

11:10   17   You're right.

11:10   18             MR. MAZE:  So your question to me, then, is I think

11:10   19   the one that I just posed, is it possible for us to -- for the

11:10   20   HTM files that we have gotten, is it somehow possible for us to

11:11   21   go back and determine if MSG files are still available.  Is

11:11   22   that the question?

11:11   23             THE COURT:  That's the question.

11:11   24             MR. MAZE:  Is it possible for me -- because I just

11:11   25   don't have my tech staff with me right now, but --

1    **THE COURT:**  That's okay, but that's the question,

2  Corey.  We may not need an answer today, but that's the

3  question.

4    **MR. MAZE:**  Sure.

5    **THE COURT:**  Somebody from BP, do you agree that

6  that's the question?

7    **MR. COLLIER:**  Your Honor, this is Paul Collier on

8  behalf of BP.  I think that part of the issue here, obviously,

9  for the cure is whether or not we can get access to this

10  information that would give us the metadata.

11    I guess the broader concern that this raises is

12  how the information was collected and gathered in the first

13  place from the state.  And it seems that Alabama is saying that

14  the state agencies and departments provided them this

15  information in this format and, therefore, when it produced the

16  information to BP, it no longer has the metadata.

17    I guess our concern with that is it seems that

18  if Alabama would have worked with the state to have collected

19  the data initially in a forensically sound fashion, to have

20  preserved the metadata and make sure that they were in

21  compliance with PTO 16, we wouldn't now be in a situation where

22  we lacked the metadata and raising this issue.

23    Obviously, we feel that we are entitled to

24  metadata.  It's obviously required by PTO 16.  I don't think

25  it's appropriate for Alabama to put the blame on the state

1   agencies for the fact that that was the way the information was

2   produced to them.

3           THE COURT:  Well --

4           MR. MAZE:  Your Honor, therein lies the problem.

5   Paul is asking us to produce these documents that were saved in

6   compliance with PTO 16 when the overwhelming majority of what

7   they are asking for was created before PTO 16 was ever entered.

8   You're asking us to have saved things in 2005, 2008, 2010 in

9   sort of a mindset of this is what PTO 16 is going to require us

10  to do even though the spill hasn't even happened yet.

11          THE COURT:  Well, let me stop you.  The pretrial

12  order says that metadata must be made available to the extent

13  it exists, so we have to keep that in mind during these

14  discussions.  Corey, I think that's the point you're trying to

15  make.

16          MR. MAZE:  It is, Your Honor.

17          THE COURT:  So I'm aware of the fact that searchable

18  text metadata, "to the extent it exists" is a qualifying

19  phrase.  So what I'm trying to figure out is does it exist; and

20  if it exists, can we get it.  That's the question I'm trying to

21  get to.  So I'm just putting it out there, Corey, for you to

22  talk to your people and find out whether we can get it.

23          MR. MAZE:  That I will do.  And as far as whether

24  something is a readable text, whether it's been OCR'd, that

25  type of problem, if BP finds that problem, if they will just

11:14   1    contact us, that's something that we can correct.

11:14   2            THE COURT:  Right.

11:14   3            MR. MAZE:  It's a very different question of whether

11:14   4    or not we can recreate the original data, which is the question

11:14   5    that I will take back to our tech staff and get back to you on.

11:14   6            THE COURT:  Good.  Thank you.  So, Corey, with the

11:14   7    hard-copy documents, as I understand it, you are taking those,

11:14   8    you are scanning them, and you're putting them into an

11:14   9    electronic program that makes them electronic data searchable

11:14   10   with the constraints that they have just been scanned.  There

11:14   11   is no metadata there, etc.  Is that correct?

11:14   12           MR. MAZE:  That's exactly correct.  In fact, I will

11:14   13   let you behind the curtain about what goes on.  That

11:15   14   information is sent to us from the departments.  The

11:15   15   departments don't have these Concordance or Summation type

11:15   16   systems, but we do.  So when it comes to us, it is uploaded

11:15   17   into the system, it is OCR'd -- which means it's made into a

11:15   18   text that they can read -- all in compliance with PTO 16, and

11:15   19   that's how it is sent to them.  So all of the uploading is down

11:15   20   on our end.  But as you just stated, all we can do is upload

11:15   21   and send out the metadata that we get.

11:15   22           THE COURT:  Okay.

11:15   23           MR. MARSHALL:  And I think therein lies the issue.

11:15   24           THE COURT:  And then once you have scanned the

11:15   25   hard-copy documents, what are you doing to code them or

11:15   1   otherwise identify them, if anything?

11:15   2            MR. PARKER MILLER:   Judge, this is Parker.

11:15   3   Typically, we will take these documents in, and we have a team

11:16   4   of attorneys that are literally hand-reviewing every single

11:16   5   page of those documents.  We also have a staff that will review

11:16   6   them and, to the extent possible, put some objective coding in

11:16   7   there pursuant to the PTO.

11:16   8            As we get closer to the deadline, though, timing

11:16   9   becomes an issue because we try and get as many documents as we

11:16   10  can to the defendants and the parties.  So to the extent we

11:16   11  would do objective coding later on, it would be done pursuant

11:16   12  to the PTO.

11:16   13           THE COURT:   Right, and let's talk about the deadline.

11:16   14  I think until I feel like we have got a handle on this, let's

11:16   15  go ahead and suspend the deadline -- and really, I guess,

11:16   16  suspend all deadlines until we have a feel for whether we have

11:16   17  got a handle on this.

11:16   18           So I would just suggest, Parker, that you all

11:17   19  continue doing what you are doing with these hard copies

11:17   20  without the pressure of the deadline looming over your head.

11:17   21  Obviously continue apace, but does that help?

11:17   22           MR. PARKER MILLER:   Yes, Your Honor.  Thank you.

11:17   23           THE COURT:   You're welcome.

11:17   24           MR. MAZE:   Judge, this is Corey.  That's very

11:17   25  helpful.  We certainly are agreeable to that.  What I will do

|       |                                                                          |
|-------|--------------------------------------------------------------------------|
| 11:17 | 1  is we will keep the Court -- to the extent you want us to             |
| 11:17 | 2  update you where we are before the next conference in two             |
| 11:17 | 3  weeks, we can.  Otherwise, we can report back to you in two           |
| 11:17 | 4  weeks.  Whatever you like, we will do it.                             |
| 11:17 | 5           THE COURT:  Yeah, you can give me updates, no                |
| 11:17 | 6  problem.                                                              |
| 11:17 | 7           MR. MAZE:  Okay.                                             |
| 11:17 | 8           THE COURT:  Now, let's talk about the scope of the           |
| 11:17 | 9  hard copy problem.  Corey, do you have an idea or, Parker, do         |
| 11:17 | 10 you have an idea of how many of the custodians kept their             |
| 11:17 | 11 copies in boxes in hard copy rather than electronic?  What's         |
| 11:18 | 12 the scope of the issue?                                              |
| 11:18 | 13          MR. PARKER MILLER:  Judge, I would say the biggest           |
| 11:18 | 14 issue right now and it's something the parties -- this is            |
| 11:18 | 15 Parker.                                                              |
| 11:18 | 16          THE COURT:  Yep.                                             |
| 11:18 | 17          MR. PARKER MILLER:  The biggest issue department            |
| 11:18 | 18 right now is probably the Department of Labor that has produced      |
| 11:18 | 19 a significant amount of documents, and the parties have been in     |
| 11:18 | 20 discussions regarding how to deal with the sensitive                |
| 11:18 | 21 information in those in terms of redacting, but that's a            |
| 11:18 | 22 significant amount of documents.  We could provide you the         |
| 11:18 | 23 total number there.  It's about 250,000, as I understand it.       |
| 11:18 | 24              There are other department searches such as,          |
| 11:18 | 25 let's just say, the Department of Conservation and Natural         |

1    Resources.  They have a significant amount of hard-copy

2    documents.  We have been working to try and turn those into

3    electronic copies.

4         All in all, I would say each department has its

5    challenges in terms of hard copies.  Another example would be

6    the Department of Revenue maintains their monthly abstracts.

7    You can go on the website and pull a lot of those abstracts

8    back to a certain time period.  But if you wanted any abstracts

9    before that time, they would have to be pulled and they are all

10    hard-copy.  So any time you are asking for documents, I would

11    say, before 2005 there is a high likelihood that those are

12    going to be in hard-copy format.

13      **THE COURT:**  Okay.

14      **MR. PARKER MILLER:**  I think also if you approached it

15    in terms of just the type of document you're dealing with -- I

16    know we are going to cover this later regarding the electronic

17    databases, but to some degree the parties can pull those

18    electronically and there's other data available online, as

19    Corey discussed earlier.

20         It's a lot of information.  I realize it.  I

21    guess I could say the only general rule is that hard copies are

22    an issue in each department, but some are worse than others.

23    And I would say DCNR is probably the worst one --

24      **THE COURT:**  Okay.

25      **MR. PARKER MILLER:**  -- and this Labor production we

1    are grappling with right now, and any document before 2005 is

2    an issue.

3        THE COURT:  Now, is it fair to say that, generally

4    speaking, after 2005 most departments and custodians have the

5    information requested in electronic format?

6        MR. MAZE:  This is Corey.  If Parker needs to add, he

7    can.  It really is department dependent, and I will say that

8    based on the attorney general's office being an example.  We

9    didn't add our electronic retention policy here until 2006.

10   But these are department by department, so the answer to some

11   may be different for others.  Parker may be able to tell you

12   generally which ones have better years than others.

13       MR. PARKER MILLER:  Your Honor, I think that's right.

14   It's typically because, you know, each department had its own

15   document retention process come on line at different times.

16       THE COURT:  I gotcha.

17       MR. PARKER MILLER:  And each website for each

18   department holds different amounts of electronic information.

19       THE COURT:  Okay.  Let's talk about on a global

20   basis, let's say, 2005-2006 time period, everybody generally

21   went electronic.  Were they generally networked or were they

22   working on individual non-network computers?

23       MR. PARKER MILLER:  Judge, I would say the vast

24   amount of electronic information is maintained by personal

25   computer.  In other words, it's not centralized.

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
| 11:22 | 1  | **THE COURT:**  Okay.                                               |
| 11:22 | 2  | **MR. MAZE:**  Certainly in that type period.                      |
| 11:22 | 3  | **MR. PARKER MILLER:**  Absolutely.  Absolutely.                   |
| 11:22 | 4  | **THE COURT:**  Okay.                                               |
| 11:22 | 5  | **MR. MAZE:**  There is no centralized depository between          |
| 11:22 | 6  | the departments even now, to my understanding.                     |
| 11:22 | 7  | **THE COURT:**  No, I understand that.                             |
| 11:22 | 8  | **MR. MAZE:**  You're just saying back in that time               |
| 11:22 | 9  | period.                                                            |
| 11:22 | 10 | **THE COURT:**  Right.  So when you are doing searches            |
| 11:22 | 11 | for the time period 2005, 2007, maybe 2008, you're searching      |
| 11:22 | 12 | individual's computers not network repositories?                  |
| 11:22 | 13 | **MR. PARKER MILLER:**  That's correct, Judge.                    |
| 11:23 | 14 | **THE COURT:**  Okay.                                              |
| 11:23 | 15 | **MR. PARKER MILLER:**  The only exception there would be         |
| 11:23 | 16 | if there's an electronic database that holds data.  I guess we    |
| 11:23 | 17 | could call that a centralized hub of information.                 |
| 11:23 | 18 | **THE COURT:**  Right.  Okay.  Then just so I understand          |
| 11:23 | 19 | it -- and I have moved past hard copies if anybody is             |
| 11:23 | 20 | interested.  So did most of the departments at some point go to   |
| 11:23 | 21 | a network system where you can do a network search versus an      |
| 11:23 | 22 | individual computer search?                                       |
| 11:23 | 23 | **MR. MAZE:**  Can we discuss that just one second,               |
| 11:23 | 24 | Your Honor?                                                       |
| 11:23 | 25 | **THE COURT:**  Sure.  Listen, if this is a question you          |

11:23  1    don't know the answer to, then we will put that on your list of
11:23  2    things to check.
11:23  3            MR. MAZE:  It really would make me more comfortable
11:24  4    to talk to our internal technical staff and ISD, the state
11:24  5    electronic department, before we really gave a definitive
11:24  6    answer on the record.
11:24  7            THE COURT:  Okay.  So when you went to the individual
11:24  8    computers, you were going to the custodians that have been
11:24  9    agreed upon?  Is that how that was conducted?
11:24  10           MR. PARKER MILLER:  That's correct, Your Honor.  We
11:24  11   have also met with the department heads as well to make sure
11:24  12   there is a top down understanding of the importance of that, so
11:24  13   that's correct.
11:24  14           MS. MARTINEZ:  This is Jenny.  I think we knew that
11:24  15   you were limiting it to certain departments --
11:24  16           THE COURT:  That's right.
11:24  17           MS. MARTINEZ:  -- but I'm not sure that we agreed on
11:24  18   which individuals.  That's my recollection right now.
11:24  19           THE COURT:  No, I think that's right.  I'm just
11:24  20   trying to figure out what actually has been done so that we all
11:25  21   collectively have an understanding.
11:25  22           MR. PARKER MILLER:  That's right, Your Honor, and
11:25  23   Jenny makes a good point.  I would say the first stage of, I
11:25  24   will call it, our harvest was to go to just the departments or
11:25  25   the subdivision of the department that we determine is relevant

11:25    1    in the case per the scheduling order.

11:25    2          Secondly, we tried to identify the persons that

11:25    3    we thought would have responsive information and tried to

11:25    4    educate them on the case, provide them discovery requests and

11:25    5    other information and correspondence.

11:25    6       **THE COURT:**  Are they then producing that in

11:25    7    electronic form?

11:25    8       **MR. PARKER MILLER:**  For the most part, Your Honor, I

11:25    9    would say so.

11:25    10       **THE COURT:**  Okay.  Good.  Okay.

11:25    11       **MR. COLLIER:**  Sorry for jumping in, Your Honor.  This

11:25    12    is Paul Collier.  Just for clarification, one of the issues we

11:26    13    are seeing, and as we point out in our submission we made to

11:26    14    the Court, is that with respect to the 150,000 documents that

11:26    15    Alabama produced, as we identified, a third of them don't have

11:26    16    any custodian information.  And then for the other two-third,

11:26    17    approximately 100,000 documents, 97,000 of those only have the

11:26    18    identification of a custodian of ADEM, which we understand is

11:26    19    the Department of Environmental Management.

11:26    20          So I guess the one question I have and the

11:26    21    concern I have is that to the extent these materials are being

11:26    22    pulled from individual files and individual computers, we are

11:26    23    not getting the individual custodian name.  We are getting a

11:26    24    more generic designation than that.

11:26    25       **THE COURT:**  Right.  Yep.  That's on my list to cover

1   as well.

2          MR. MAZE:  Your Honor, this is Corey.  That's one of

3   those concerns we got today and we can work through it.  It's

4   just one of those put us on notice, let us go back, find out

5   what the issues are, and see how we can work through them.

6          THE COURT:  Yeah, I think that's right, guys.  Let's

7   work through it.  I'm going to get to that in a second.

8              So when these are being produced electronically,

9   these documents that are being gathered from either individual

10  computers or once the departments went network wide, are they

11  being produced in an electronic format that is either native or

12  has been converted to TIF images?

13         MR. MAZE:  Yes.  We are producing them in compliance

14  with the formats required by PTO 16.

15         THE COURT:  There you go.  Okay.  We had some load

16  file issues.  Have you all worked through that?

17         MR. MAZE:  To my knowledge they have all been worked

18  through.  If that's not correct, someone can correct me.

19         MR. COLLIER:  This is Paul Collier on behalf of BP.

20  Your Honor, I think that's right.  I think we have received the

21  corrected load files.  Obviously, that is a more recent

22  development that we have the load files corrected and now have

23  the ability to review.

24             Corey is correct that we did identify some of

25  these issues recently, but that is a consequence of the fact

11:28  1   that we are only now able to be able to do a full review of
11:28  2   their production.
11:28  3           THE COURT:  Okay.
11:28  4           MR. COLLIER:  But the load file issue, as I
11:28  5   understand it, for the materials that have been produced has
11:28  6   been corrected.
11:28  7           THE COURT:  Okay.  Good.  So let's now go to the
11:28  8   issue of identifying custodians.  Now, Paul, you suggested that
11:28  9   about one-third of the electronic production has custodians
11:28  10  that identify, for example, a department but not an individual
11:28  11  and that, what, two-thirds don't identify either?
11:29  12          MR. COLLIER:  Yeah.  Let me correct that a little
11:29  13  bit, Your Honor, if I may.  Yeah, with respect to 150,000
11:29  14  documents that have been produced, 33 percent of them, so
11:29  15  roughly 50,000, have no custodian designation at all.
11:29  16          THE COURT:  Okay.
11:29  17          MR. COLLIER:  The other 67 percent, roughly 100,000
11:29  18  documents, 97,000 of those have the designation "ADEM," which
11:29  19  we understand is the Department of Environmental Management.
11:29  20  But for all of these 100,000 documents or so that have a
11:29  21  custodian designation, there is no individual identified for
11:29  22  any of them.
11:29  23          THE COURT:  Okay.  So, Corey, I guess we can put
11:29  24  those on your list of things that can be accomplished.
11:29  25          MR. MAZE:  I think that Parker can give you an answer

11:29  1   that will let you know that that's already being worked on.

11:30  2          THE COURT:  Okay.  Parker, go ahead.

11:30  3          MR. PARKER MILLER:  That's correct, Your Honor.  I

11:30  4   think Paul brought that up maybe a week or two ago and this is

11:30  5   the first time -- some of the stuff he said a second ago is the

11:30  6   first time we have heard a lot of it.  So we can certainly take

11:30  7   a look at that, but that's correct.

11:30  8          MR. MAZE:  We are working on getting individual

11:30  9   names.

11:30  10         THE COURT:  That's good.  I think that will be very

11:30  11  helpful.  It will help shortcut the depositions and preparation

11:30  12  for the depositions, etc.

11:30  13             Okay.  So now let's talk about the issue of

11:30  14  metadata field and I'm wondering -- and this is just an open

11:30  15  question, Corey or Parker -- when you all are producing

11:30  16  electronic documents such as e-mail, how is it that there is

11:30  17  not a field for to, from, and maybe a subject line?  What's

11:31  18  happened there?

11:31  19         MR. MAZE:  Is that one of those I can just get you an

11:31  20  answer on my list of things to do since our tech staff is not

11:31  21  here?

11:31  22         THE COURT:  Absolutely.

11:31  23         MR. MAZE:  Let me write that down, the to/from

11:31  24  question.

11:31  25         THE COURT:  Yeah, to, from, and subject line.  I'm

11:31  1    just not sure how that happens.

11:31  2        MR. MAZE:  We can get you an answer.

11:31  3        THE COURT:  That would be great.

11:31  4            Paul, do you have any ideas?

11:31  5        MR. COLLIER:  No, Your Honor.  I wish I did.  I

11:31  6    apologize.  I don't.

11:31  7        THE COURT:  Now, what about the issue of, Corey, have

11:31  8    you all discussed with BP the e-mails that did not include

11:31  9    actual e-mail text?  Has that been corrected?

11:31  10       MR. MAZE:  I discussed that internally with our

11:31  11   people and the only example -- we only got one example, but

11:32  12   their thought, at least on what we knew, was that there wasn't

11:32  13   any text on the particular e-mail or e-mails, that it might be

11:32  14   attachments or something else.

11:32  15           The simple answer is if BP or the other

11:32  16   defendants will give us a list or a range of the ones they

11:32  17   believe that's true on, we will take a look and simply answer

11:32  18   the question.

11:32  19       THE COURT:  That would be good.

11:32  20           Paul, you will take care of that?

11:32  21       MR. COLLIER:  We will, Your Honor.  I guess the only

11:32  22   concern I have with that is that, you know, I think we have

11:32  23   been able to identify 1,500 e-mails that fall into that

11:32  24   category.  These are e-mails that are interspersed throughout

11:32  25   their production.  It is a substantial burden on us to try and

11:32  1    keep a running total of where those exist and provide them.

11:32  2              I guess what we were looking for is -- we

11:32  3    certainly can provide examples of it, but it seems such a

11:32  4    systemic issue that it would seem that there must be an answer

11:33  5    to explain why this is happening over and over again.

11:33  6              Your Honor, what I would propose is we could

11:33  7    give some meaningful number of examples of where we have seen

11:33  8    this and then provide that to Alabama, and perhaps at that

11:33  9    point Alabama can identify what the systemic issue is here that

11:33  10   hopefully can then be rectified.

11:33  11             THE COURT:  Corey, you wanted to say something?

11:33  12             MR. MAZE:  No.  Actually, I think what Paul said is

11:33  13   correct.  If they will give us a certain number of examples,

11:33  14   then we will look at them, find the best answer, the correct

11:33  15   answer, and show that this is not a "systemic issue," as they

11:33  16   phrase it.

11:33  17             THE COURT:  Okay.  I think that's fine, Paul.  Why

11:33  18   don't you give Corey -- what number would you propose of

11:33  19   examples?

11:33  20             MR. COLLIER:  Could I propose 50, Your Honor?

11:33  21             THE COURT:  That will be fine.  If we need a more

11:34  22   detailed list after Corey has looked at that and Parker has

11:34  23   looked at that, we will let you know.

11:34  24             MR. COLLIER:  Thank you, Your Honor.

11:34  25             THE COURT:  Next up we have the issue of, Paul, you

1 suggested that about 5,000 files are not text searchable.

2 Let's talk about that.

3        MR. COLLIER:  Yeah, that's right, Your Honor.  It

4 seems that they have not been OCR'd.  I'm not sure as to

5 whether or not there is one specific problem here that could be

6 rectified or whether this is something that is just kind of an

7 ad hoc issue with a number of these e-mails.

8            Perhaps what I suggest for this issue as well

9 would be like similar to what we just discussed with the prior

10 issue, that we provide a healthy number of examples to Alabama

11 as far as where we have seen this and hopefully be able to

12 identify whether there is one problem here that can be

13 rectified.

14        THE COURT:  Yeah.  Let's go ahead and send 50

15 examples there as well so that Corey and Parker and their tech

16 crew can take a look at it.  Are you sure that these files are

17 not paper files that have been scanned?

18        MR. COLLIER:  I will have to go back and check on

19 that, Your Honor.  Perhaps we can provide a little bit more

20 detail on that when we provide Alabama the information on the

21 examples.

22        THE COURT:  Okay.  All right.  Now, next up is the

23 family relationships.  Let's talk about that a little bit.

24            As I understand it, Corey, you think this is

25 related to the fact that some of these documents are coming in

11:36   1    as HTM files; is that right?

11:36   2            MR. MAZE:  I believe so, but again I think the same

11:36   3    thing exists.  If they could give us 50 examples of that, we

11:36   4    will look at actual specifics and find out if there is any

11:36   5    issue.

11:36   6            THE COURT:  If it is related to the HTM file format,

11:36   7    then we have already asked that question about that.

11:36   8            MR. MAZE:  You have, that's right.

11:36   9            THE COURT:  Now, I guess my next issue on this is the

11:36   10   fact that we are not running the search using the custom

11:37   11   software, Corey, that we are all used to, is the subjectivity

11:37   12   of the searches that have been made of the departments,

11:37   13   especially before there was an electronic document retention

11:37   14   policy.

11:37   15           MR. MAZE:  Your Honor, I think the second part of

11:37   16   what you said wouldn't matter, whether there is a discovery

11:37   17   platform or not.

11:37   18           THE COURT:  Right.

11:37   19           MR. MAZE:  The problems that existed then, it

11:37   20   wouldn't be solved by having a platform.

11:37   21           THE COURT:  Yeah.

11:37   22           MR. MAZE:  The point you're making about subjectivity

11:37   23   is -- I mean, the question really comes down to if the

11:37   24   defendants believe they are entitled to or need a search term

11:37   25   run at all 12 departmental levels to narrow down the amount of

things that they are getting, that is going to require the
state to purchase said software, then implement it at all 12
departments, and then cull things out using the search terms
and reproduce, and that could cost hundreds of thousand if not
millions of dollars and take at least months if not years to
do.  Frankly, in the end, as we pointed out, they are going to
get the same documents, just less of them.

Telling them just to give us everything and
letting us cull it down simply by privilege, our position is
that reasonable search not only gets everything that's
responsive that would have been done under the search terms
itself but they are getting more.  Because of that, we just
don't see proportionally why there should be a requirement to
implement the system at every departmental level.

THE COURT:  So, for example, Corey, when you go into
a department and you talk to the department chief and you talk
to the custodians that have been identified, are you providing
them with a list of the agreed to search terms and providing
them with an explanation of why these search terms are relevant
and pertinent and how to go in and search their computers
individually?

MR. MAZE:  Yes.

THE COURT:  All right.  Well, we went back through
the pretrial order and it does not, at least in my read,
provide any means to test whether the search was adequate or

1    not.  I just want to put that out there and have everybody

2    think about that.

3              What we might think about doing is having BP

4    identify two or three custodians and do a check to see that the

5    production has been adequate and that the documents contained

6    on that custodian's computer indeed were produced and

7    responsive to the search terms and what it is the defendants

8    were asking for.

9              So I'm just going to put that out there for you

10   to think about.  I think what we will do is we will have

11   another conference next week to discuss, one, Corey and Parker,

12   what you all have come up with and, two, whether or not that

13   idea is something you all want to pursue.

14             Okay.  Now, on the custodians, guys, you all

15   have identified and agreed to the list of custodians; is that

16   correct?

17        **MS. MARTINEZ:**  I don't believe that's correct,

18   Your Honor.  This is Jenny.

19        **MR. MAZE:**  What Alabama has done is we have listed

20   every state employee in our Rule 26 disclosures that we believe

21   we would need to prove our case and including those that would

22   be necessary for our 30(b)(6) topics.  So certainly, from the

23   state's standpoint, the defendants know who our custodians

24   would need to be.

25        **MR. COLLIER:**  Your Honor, this is Paul Collier.  Just

to respond to that issue, that's correct.  The parties have
identified the fact that they would produce the custodian files
from those witnesses they have identified on their Rule 26
disclosure.

I guess the one concern that we have and that's
not been able to be fully developed from our perspective is
that because of the issues we have had with Alabama's document
production, especially with the custodian issue, we have not
been able to fully investigate and develop exactly who else
from Alabama we may want to depose and have their custodian
file produced.  So that's still an open issue that's out there.

THE COURT:  Okay.  I guess, Corey, I don't want to
make work, but do you think it would be helpful for all of us
to have an understanding of the process by which your attorneys
went to the departments and to the identified custodians and
obtained their electronic information and retrieved it?

MR. MAZE:  Your Honor, I guess I have two responses
to that.  Number one, we outlined the procedure we were using
to them in a letter back on September 30, so I'm not sure what
other details we are looking for.

The second one is I think that may be premature
at this point because if we can work through the custodian
issue and the metadata fields on all of the upcoming
productions, perhaps we won't even have to get into it.

THE COURT:  Okay.  That's a valid response.  On your

11:44
11:44
11:44
11:44
11:44
11:44
11:45
11:45
11:45
11:45
11:45
11:45
11:45
11:45
11:45
11:45
11:45
11:46
11:46
11:46
11:46
11:46
11:46
11:46
11:46

1   answer number one, could you pop that out to me again so I

2   don't have to go digging for it.

3           MR. MAZE:  Okay.  You're talking about our response?

4           THE COURT:  Yeah.

5           MR. MAZE:  Yes, we can do that.

6           THE COURT:  That would be great.

7           I think that covers my questions with regard to

8   the searches and production of hard copies and electronically

9   stored information.  Does any other party have any questions

10  they want to ask?  Okay.  Well, that answers that question.

11  Thank you.

12          Okay, guys, so on the schedule, let's not adopt

13  a new schedule until we are over this hump.  I'm hoping we are

14  going to be over this hump fairly quickly, but I think we

15  should just suspend for the time being.  Okay?

16          MR. MAZE:  That's okay with Alabama.

17          THE COURT:  Now, let's see.  You all had spoken about

18  confidential information, and BP was reviewing Alabama's draft

19  order.  How do we stand on that?

20          MR. MAZE:  This is Corey.  BP is going to give us, I

21  think, today or tomorrow -- I'm not sure, Paul -- their own

22  proposed draft, and we will try to go from there.  We have not

23  come to an agreement on it yet, though.

24          MR. COLLIER:  That's right, Your Honor.  This is

25  Paul.  We met and conferred last night.  We will send that to

1    them later today as far as a modified PTO.

2              THE COURT:  Gotcha.  Okay.  You all were going to

3    also meet and confer on the natural resource damages issue and

4    the fact that those need not be logged on the privilege file.

5    Did you all reach an agreement on that?

6              MR. MAZE:  This is Corey.  I don't think there are

7    any outstanding issues on NRD as far as production of anything.

8              MR. COLLIER:  Your Honor, this is Paul.  As we

9    mentioned on the call last week, I think the parties are in

10   agreement as far as the general principles of the issue.

11   Alabama has made a proposal to us as far as the documents that

12   would be within the scope of the NRD area and would not be

13   subject to discovery.  We have a couple points of clarification

14   to Alabama that we can probably deal with them off line, but I

15   think we are in agreement in principle relating to the issue.

16             THE COURT:  Okay.  Good.  Next up is the state tax

17   and revenue database.  Remember, we spoke last time about the

18   text file being produced and trying to see if it could be

19   produced in native format so that BP could understand what it

20   contained.

21             MR. MAZE:  I produced that.  Again, I don't believe

22   that that's coming from the database that necessarily we are

23   talking about in that particular issue, but that native was

24   produced, I think, at least a week ago.

25             THE COURT:  Okay.

11:48   1        **MR. COLLIER:**  That's right, Your Honor.  And just to

11:48   2   give you the latest on that particular issue, Your Honor, we

11:48   3   have met and conferred on that, or at least exchanged

11:48   4   correspondence on it.  We are still in discussions about how to

11:48   5   best deal with that situation, but the parties are moving

11:48   6   towards resolution on it.

11:48   7        **THE COURT:**  Okay.  Good.  Next up we have BP's motion

11:49   8   to strike the appearance on behalf of the governor.  Any status

11:49   9   on that?

11:49  10        I saw, Corey, that you have now enrolled a group

11:49  11   of people as special attorney generals, huh?

11:49  12        **MR. MAZE:**  We have done that.  As we talked about

11:49  13   last time, my understanding of BP's concern was having

11:49  14   attorneys at depositions that were not counsel for the state,

11:49  15   so we addressed that by making each person who is going to

11:49  16   appear a deputy attorney general for the state.

11:49  17        Unfortunately for you, that means that Mr. Breit

11:49  18   is now listening in on your phone calls.  No, we have now done

11:49  19   that, but BP filed its motion to strike anyway.  My

11:50  20   understanding is they want to bar the governor's counsel from

11:50  21   depositions and to bar the governor's counsel and the governor

11:50  22   himself from reviewing any communications, documents,

11:50  23   depositions, etc., that have a label of confidential.  So that

11:50  24   is something we still need to respond to, and I'm going to ask

11:50  25   Your Honor's permission for this.

11:50
11:50
11:50
11:50
11:50
11:50
11:50
11:50
11:50
11:50
11:50
11:50
11:51
11:51
11:51
11:51
11:51
11:51
11:51
11:51
11:51
11:51
11:51
11:51
11:51

1    Your original order said that the state would
2 respond with five pages by tomorrow.  If it's okay with
3 Your Honor, we would actually like the governor to be allowed
4 to respond with five pages tomorrow and the attorney general to
5 respond with one page on the same day.
6          THE COURT:  Sold to the lowest bidder.
7          MR. LANGAN:  Well, Your Honor, it's Andy Langan.  I
8 don't think Corey has really accurately set forth our position
9 on this.  For one thing, fundamentally, the governor is not a
10 party to the case.  If the governor wants to be a party to the
11 case, there is a process for doing that.  The state can appear
12 through the attorney general and not through the governor.
13 That's crystal clear, we believe.
14          THE COURT:  Well, I guess, Andy, my question is this.
15 Corey has enrolled this group of people as special attorney
16 generals.
17          MR. LANGAN:  Correct.
18          THE COURT:  I assume that does not cure it for you?
19          MR. LANGAN:  It does not.
20          THE COURT:  There you go.
21          MR. LANGAN:  It does not.  And by the way, to that
22 end, just to be clear on this, after Corey had done that, asked
23 for certain specially appointed attorney generals to appear, we
24 reached out and said, "That's a good start, but what about the
25 appearance for the governor?  The governor is not a party.

|       |    |                                                                          |
|-------|----|--------------------------------------------------------------------------|
| 11:51 | 1  | They can't appear in the case.  What about that?"  They refused           |
| 11:51 | 2  | to withdraw the appearance, necessitating the motion.  So, in            |
| 11:51 | 3  | other words, we tried to work this out.  We were rebuffed.               |
| 11:52 | 4  | THE COURT:  Well, I guess the question is this,                          |
| 11:52 | 5  | Corey.  The governor has, presumably, an attorney who is his            |
| 11:52 | 6  | chief attorney, right?                                                    |
| 11:52 | 7  | MR. MAZE:  Yes, he does.                                                  |
| 11:52 | 8  | THE COURT:  Is he willing to be a special attorney                      |
| 11:52 | 9  | general?                                                                  |
| 11:52 | 10 | MR. MAZE:  Your Honor, our understanding is that the                     |
| 11:52 | 11 | attorney general can appoint counsel to represent the state,            |
| 11:52 | 12 | and we don't have to and nor should we deputize every attorney          |
| 11:52 | 13 | that works for the governor just to allow him to stay apprised          |
| 11:52 | 14 | of what's going on.  This is stuff that we can brief tomorrow.          |
| 11:52 | 15 | THE COURT:  All right.                                                   |
| 11:52 | 16 | MR. MAZE:  We just don't understand, fundamentally,                     |
| 11:52 | 17 | why BP is trying to block the governor's access to information          |
| 11:52 | 18 | about what's going on.                                                   |
| 11:52 | 19 | THE COURT:  Okay.  All right.  So I'll look at that                      |
| 11:52 | 20 | when it comes in tomorrow.                                               |
| 11:53 | 21 | Next up is Alabama's recent motion to dismiss                     |
| 11:53 | 22 | the setoff claims.  Andy, do you want to propose a date by              |
| 11:53 | 23 | which you all can file your opposition?                                  |
| 11:53 | 24 | MR. LANGAN:  Paul, what do you think, 10 days?                           |
| 11:53 | 25 | MR. COLLIER:  Could we do two weeks, Your Honor?                         |

11:53  1      **THE COURT:**  Corey?

11:53  2      **MR. MAZE:**  Two weeks is fine.

11:53  3      **THE COURT:**  Okay.  What date is that, guys?  Hold on.

11:53  4  I'll look.

11:53  5      **MR. MAZE:**  It was filed last Friday, so 14 days would

11:53  6  be a week from tomorrow, whatever that is.

11:53  7      **MR. COLLIER:**  For clarity, Your Honor, I think --

11:53  8  this is Paul.  I was assuming we were talking 14 days from

11:53  9  today.  That's what we would prefer.

11:53  10     **THE COURT:**  Then let's go ahead and make it

11:54  11 Election Day, Wednesday, the 4th.  I'm sorry.  Tuesday, the

11:54  12 4th.

09:20  13          Okay.  Moving right along, you all know that the

11:54  14 deadline for a joint final fact and 30(b)(6) deposition

11:54  15 schedule is also suspended pending getting ourselves straight

11:54  16 on document production.  Is there anything else that you all

11:54  17 want to cover today?

11:54  18     **MR. YORK:**  Your Honor, this is Alan York for

11:54  19 Halliburton.  Just as a note for the Court -- and this is

11:54  20 something that we had discussed some with Alabama in one of our

11:54  21 prior conferences, and they included a little blurb on it in

11:55  22 their motion to compel, I believe.

11:55  23          With regard to 30(b)(6) deposition notices, we

11:55  24 had suggested in one of our conferences that for parties such

11:55  25 as Halliburton, who we don't have a witness that has knowledge

11:55  1  of the proposed 30(b)(6) topics, wondering if there was a way
11:55  2  that we could avoid the depositions.  Thanks to Anadarko's
11:55  3  help, we have gone back to the Phase Two process in which, the
11:55  4  Court may remember, Anadarko provided a sworn statement from
11:55  5  the client saying that they had done a duly diligent search and
11:55  6  didn't have any information regarding the topics and provided
11:55  7  that statement.

11:55  8          We have that, and we have not yet provided it to
11:55  9  Corey -- but, Corey, we will get that to you -- and just wanted
11:55 10  to put that on the Court's radar that that may be a way that we
11:55 11  hope that we can avoid having to take some of these 30(b)(6)
11:56 12  depositions.  I know that Anadarko has mentioned that they are
11:56 13  interested in trying to accomplish the same approach.

11:56 14          THE COURT:  Well, I have no problem with that.  It
11:56 15  seems to me that you could do a partial stipulation that you
11:56 16  have no interest in participating in X, Y, Z and you will be
11:56 17  excused from attendance and waive your appearance in that.

11:56 18          MR. YORK:  Your Honor, maybe I didn't make myself
11:56 19  clear.  What this was was Alabama had served 30(b)(6) notices
11:56 20  on some of the parties, and so what we are talking about is
11:56 21  figuring out a way that we don't need to present a witness for
11:56 22  that 30(b)(6) deposition.

11:56 23          THE COURT:  Yeah, I think that's fine.  I also think
11:56 24  it's fine if you don't attend those depositions.  That's fine.
11:56 25  If you all can work that out and agree that Anadarko, for

11:56 1 example, and Halliburton as another example, do not have any

11:56 2 witnesses that have any knowledge about any of the notice

11:57 3 topics, Corey, I'm assuming you are going to think that's fine.

11:57 4          MR. MAZE:  I'll just wait and see what they send us.

11:57 5          THE COURT:  That's right.  Okay.  That's fine, Alan.

11:57 6          MR. YORK:  Thank you, Judge.

11:57 7          THE COURT:  You're welcome.  What else?

11:57 8              Why don't we get together, if it's available on

11:57 9 your calendars, next Thursday at 11:00 and figure out where we

11:57 10 are on the production issues, October 30.

11:57 11          MS. MARTINEZ:  Works for Halliburton.

11:57 12          MR. COLLIER:  Thanks, Your Honor.  That works for BP.

11:57 13          MR. MAZE:  That's okay with Alabama.

11:57 14          THE COURT:  Okay.  Well, we will hear you all next

11:57 15 week, same time, same place.  Thank you.

11:58 16          (Proceedings adjourned.)

11:58 17                              * * *

18                         <u>**CERTIFICATE**</u>

19          I, Toni Doyle Tusa, CCR, FCRR, Official Court
   Reporter for the United States District Court, Eastern District
20 of Louisiana, certify that the foregoing is a true and correct
   transcript, to the best of my ability and understanding, from
21 the record of proceedings in the above-entitled matter.

22

                          *s/ Toni Doyle Tusa*
23                        Toni Doyle Tusa, CCR, FCRR
                          Official Court Reporter

24

25

29 [2]  2/2 2/2
3 [3]  2/2 2/2 2/2
30 [1]  2/2
31 [1]  2/2
33 [1]  2/2
34 [2]  2/2 2/2
36 [1]  2/2
4 [1]  1/5
Alabama's Motion to Dismiss Setoff
Claims [1]  2/2
BP's Motion to Strike Appearance of
Governor [1] 2/2
BPXP's Request for Order Re: Search
Terms [1]  2/2
Co: [2]  1/25 2/2
Confidential Information [1]  2/2
Delay in Schedule [1]  2/2
Fact and 30(b)(6) Deposition Schedule
[1]  2/2
In: [22]  3/2 3/2 4/6 4/6 29/11 29/11
29/16 29/16 30/1 30/1 30/15 30/15
31/6 31/6 33/18 33/18 34/12 34/12
34/17 34/17 36/7 36/7
MR. COLLIER: [21]  4/14 4/17 9/6
18/10 19/18 20/3 20/11 20/16 22/4
22/20 23/19 23/23 24/2 24/17 27/24
29/3 30/7 30/25 33/24 34/6 36/11
MR. HASTINGS: [1]  3/22
MR. KERRY MILLER: [2]  3/6 3/9
MR. KROHN: [1]  4/1
MR. LANGAN: [5]  32/6 32/16 32/18
32/20 33/23
MR. MARSHALL: [1]  11/22
MR. MAZE: [55]
MR. PARKER MILLER: [17]  6/17 12/1
12/21 13/12 13/16 14/13 14/24 15/12
15/16 15/22 16/2 16/12 16/14 17/9
17/21 18/7 21/2
MR. YORK: [3]  34/17 35/17 36/5
MS. MARTINEZ: [4]  17/13 17/16
27/16 36/10
Next Telephone Conference [1]  2/2
NRD-Related Documents [1]  2/2
Omit elements: Timecodes [2]  1/25
36/16
Other Matters [1]  2/2
Page break [1]  2/2
Resume elements: Timecodes [1]  2/2
State Tax and Revenue Database [1]
2/2
Stipulation Excusing or Limiting
Participation [1]  2/2
THE COURT: [95]

1

1,500 [1]  22/23
10 [1]  33/24
10-4182 [1]  1/8
10-4183 [1]  1/8
10-MD-2179 [1]  1/5
100,000 [3]  18/17 20/17 20/20
11:00 [2]  1/9 36/9
12 [2]  25/25 26/2
13-2645 [1]  1/8
13-2646 [1]  1/8
13-2647 [1]  1/9
13-2813 [1]  1/9
14 [2]  34/5 34/8
150,000 [2]  18/14 20/13
16 [7]  9/21 9/24 10/6 10/7 10/9 11/18

19/14

20 [1]  1/6
2005 [5]  10/8 14/11 15/1 15/4 16/11
2005-2006 [1]  15/20
2006 [2]  15/9 15/20
2007 [1]  16/11
2008 [2]  10/8 16/11
2010 [2]  1/6 10/8
2014 [2]  1/7 3/2
2179 [1]  1/5
23 [2]  1/7 3/2
250,000 [1]  13/23
26 [2]  27/20 28/3
2645 [1]  1/8
2646 [1]  1/8
2647 [1]  1/9
2813 [1]  1/9

3

30 [10]  5/15 27/22 28/19 34/14 34/23
35/1 35/11 35/19 35/22 36/10
32 [1]  5/15
33 percent [1]  20/14

4

406 [1]  1/21
4182 [1]  1/8
4183 [1]  1/8
492 [1]  1/9
4th [2]  34/11 34/12

5

5,000 [1]  24/1
50 [3]  23/20 24/14 25/3
50,000 [1]  20/15
500 [1]  1/21
504 [1]  1/22
54 [1]  5/11
589-7778 [1]  1/22
5:14 [2]  6/9 6/20

6

67 percent [1]  20/17

7

70130 [1]  1/21
7778 [1]  1/22

9

97,000 [2]  18/17 20/18

A

a.m [2]  1/9 6/9
ability [2]  19/23 36/20
able [10]  4/24 5/8 6/2 15/11 20/1 20/1
22/23 24/11 28/6 28/9
about [31]  3/21 4/7 4/8 7/24 11/13
12/13 13/8 13/23 15/19 20/9 21/13
22/7 24/1 24/2 24/23 25/7 25/22 27/2
27/3 27/10 29/3 29/17 30/17 30/23
31/4 31/12 32/24 33/1 33/18 35/20
36/2
above [1]  36/21
above-entitled [1]  36/21
Absolutely [3]  16/3 16/3 21/22
abstracts [3]  14/7 14/7 14/8
access [2]  9/9 33/17
accomplish [1]  35/13
accomplished [1]  20/24
accurately [1]  32/8

actual [2]  22/9 25/4
ad [1]  24/7
ad hoc [1]  24/7
add [3]  4/18 15/6 15/9
additional [3]  4/18 4/19 8/15
address [1]  6/21
addressed [1]  31/15
ADEM [2]  18/18 20/18
adequate [4]  5/20 5/22 26/25 27/5
adjourned [1]  36/16
adopt [1]  29/12
after [3]  15/4 23/22 32/22
again [6]  8/8 8/9 23/5 25/2 29/1 30/21
agencies [2]  9/14 10/1
ago [2]  21/4 21/5 30/24
agree [2]  9/5 35/25
agreeable [1]  12/25
agreed [5]  6/13 17/9 17/17 26/18 27/15
agreement [4]  29/23 30/5 30/10 30/15
ahead [4]  12/15 21/2 24/14 34/23
aided [1]  1/25
Alabama [25]  3/11 3/18 5/3 5/8 5/13
5/14 5/18 5/23 7/24 9/13 9/18 9/25
18/15 23/8 23/9 24/10 24/20 27/19
28/10 29/16 30/11 30/14 34/20 35/19
36/13
Alabama's [7]  4/23 4/25 5/10 6/2 28/7
29/18 33/21
Alan [2]  34/18 36/5
all [42]
allow [1]  33/13
allowed [1]  32/3
along [1]  34/13
already [2]  21/1 25/7
also [6]  12/5 14/14 17/11 30/3 34/15
35/23
amount [6]  5/20 13/19 13/22 14/1
15/24 25/25
amounts [1]  15/18
Anadarko [4]  3/22 35/4 35/12 35/25
Anadarko's [1]  35/2
and/or [1]  3/22
Andy [3]  32/7 32/14 33/22
another [3]  14/5 27/11 36/1
answer [14]  8/10 9/2 15/10 17/1 17/6
20/25 21/20 22/2 22/15 22/17 23/4
23/14 23/15 29/1
answers [2]  6/19 29/10
any [19]  8/14 14/8 14/10 15/1 18/16
20/22 22/4 22/13 25/4 26/25 29/9 29/9
30/7 31/8 31/22 35/6 36/1 36/2 36/2
anybody [2]  8/10 16/19
anything [3]  12/1 30/7 34/16
anyway [1]  31/19
apace [1]  12/21
apologize [1]  22/6
appear [5]  3/17 31/16 32/11 32/23 33/1
appearance [4]  31/8 32/25 33/2 35/17
appears [1]  3/19
Applies [1]  1/8
appoint [1]  33/11
appointed [1]  32/23
apprised [1]  33/13
approach [1]  35/13
approached [1]  14/14
appropriate [1]  9/25
approximately [1]  18/17
APRIL [1]  1/6
are [82]

## A

area [1] 30/12
as [49]
ask [2] 29/10 31/24
asked [2] 25/7 32/22
asking [5] 10/5 10/7 10/8 14/10 27/8
assume [1] 32/18
assuming [2] 34/8 36/3
at [27] 3/16 5/11 6/8 6/10 6/20 15/15
16/20 20/15 21/7 22/12 23/8 23/14
23/22 23/23 24/16 25/4 25/25 26/2
26/5 26/14 26/24 28/22 30/24 31/3
31/14 33/19 36/9
attachments [1] 22/14
attend [1] 35/24
attendance [1] 35/17
attorney [12] 15/8 31/11 31/16 32/4
32/12 32/15 32/23 33/5 33/6 33/8
33/11 33/12
attorneys [3] 12/4 28/14 31/14
available [7] 6/1 6/12 6/13 8/21 10/12
14/18 36/8
avoid [2] 35/2 35/11
aware [1] 10/17

## B

B-406 [1] 1/21
back [14] 3/16 3/20 8/14 8/21 11/5
11/5 13/3 14/8 16/8 19/4 24/18 26/23
28/19 35/3
bar [2] 31/20 31/21
based [1] 15/8
basis [1] 15/20
be [52]
because [7] 3/13 8/24 12/9 15/14 26/12
28/7 28/22
become [1] 5/25
becomes [1] 12/9
been [29] 4/9 4/24 5/8 5/12 5/14 7/6
7/15 7/17 10/24 11/10 13/19 14/2 17/8
17/20 19/12 19/17 20/5 20/6 20/14
22/9 22/23 24/4 24/17 25/12 26/11
26/17 27/5 28/6 28/9
before [8] 1/12 10/7 13/2 14/9 14/11
15/1 17/5 25/13
behalf [4] 4/16 9/8 19/19 31/8
behind [1] 11/13
being [11] 5/10 7/1 7/2 15/8 18/21 19/8
19/9 19/11 21/1 29/15 30/18
believe [8] 8/9 22/17 25/2 25/24 27/17
27/20 30/21 32/13 34/22
best [5] 7/20 8/8 23/14 31/5 36/20
better [4] 8/10 8/13 8/16 15/12
between [1] 16/5
bidder [1] 32/6
biggest [2] 13/13 13/17
bit [5] 4/25 6/1 20/13 24/19 24/23
blame [1] 9/25
block [1] 33/17
blurb [1] 34/21
boxes [3] 7/7 7/7 13/11
BP [19] 3/11 3/16 3/20 4/4 4/16 9/5 9/8
9/16 10/25 19/19 22/8 22/15 27/3
29/18 29/20 30/19 31/19 33/17 36/12
BP's [2] 31/7 31/13
BPXP's [1] 4/8
Breit [1] 31/17
brief [1] 33/14
broader [1] 9/11
brought [1] 21/4

## C

calendars [1] 36/9
call [4] 3/11 16/17 17/24 30/9
calls [1] 31/18
can [42]
can't [1] 33/1
care [1] 22/20
case [7] 3/6 18/1 18/4 27/21 32/10
32/11 33/1
category [1] 22/24
CCR [3] 1/20 36/19 36/23
centralized [3] 15/25 16/5 16/17
certain [5] 7/21 14/8 17/15 23/13 32/23
certainly [5] 12/25 16/2 21/6 23/3 27/22
CERTIFICATE [1] 36/18
certify [1] 36/20
Chad [1] 3/16
challenges [1] 14/5
changed [1] 6/3
changes [1] 7/15
check [3] 17/2 24/18 27/4
chief [2] 26/16 33/6
Chris [1] 3/16
claims [1] 33/22
clarification [2] 18/12 30/13
clarity [1] 34/7
clear [3] 32/13 32/22 35/19
click [1] 7/14
client [3] 3/15 3/18 35/5
closely [1] 4/25
closer [1] 12/8
code [1] 11/25
coding [2] 12/6 12/11
collected [2] 9/12 9/18
collectively [1] 17/21
Collier [4] 4/15 9/7 18/12 19/19 27/25
color [1] 4/18
come [7] 4/20 5/1 5/3 8/13 15/15 27/12
29/23
comes [3] 11/16 25/23 33/20
comfortable [1] 17/3
coming [3] 7/25 24/25 30/22
communications [1] 31/22
compared [1] 7/17
compel [1] 34/22
complaint [1] 7/1
complaints [1] 4/9
compliance [4] 9/21 10/6 11/18 19/13
computer [4] 1/25 15/25 16/22 27/6
computer-aided [1] 1/25
computers [6] 15/22 16/12 17/8 18/22
19/10 26/20
concern [7] 5/18 9/11 9/17 18/21 22/22
28/5 31/13
concerns [1] 19/3
Concordance [1] 11/15
conduct [1] 5/20
conducted [1] 17/9
confer [1] 30/3
conference [5] 1/12 4/21 6/21 13/2
27/11
conferences [2] 34/21 34/24

## D

damages [1] 30/3
data [5] 9/19 11/4 11/9 14/18 16/16
database [3] 16/16 30/17 30/22
databases [1] 14/17
date [2] 33/22 34/3
day [3] 6/20 32/5 34/11
days [3] 33/24 34/5 34/8
DCNR [1] 14/23
deadline [5] 12/8 12/13 12/15 12/20
34/14
deadlines [1] 12/16
deal [3] 13/20 30/14 31/5
dealing [1] 14/15

---

conferred [2] 29/25 31/3
confirmation [2] 3/15 3/19
confusing [1] 7/23
consequence [1] 19/25
Conservation [1] 13/25
considering [1] 4/4
constraints [1] 11/10
contact [1] 11/1
contained [2] 27/5 30/20
contends [1] 5/23
context [1] 5/17
continue [2] 12/19 12/21
continuing [1] 4/9
converted [1] 19/12
copies [5] 12/19 13/11 14/3 14/5 14/21
16/19 29/8
copy [8] 7/1 11/7 11/25 13/9 13/11 14/1
14/10 14/12
Corey [39]
Corey's [2] 3/14 3/17
correct [21] 8/2 8/5 11/1 11/11 11/12
16/13 17/10 17/13 19/18 19/18 19/24
20/12 21/3 21/7 23/13 23/14 27/16
27/17 28/1 32/17 36/20
corrected [4] 19/21 19/22 20/6 22/9
correspondence [2] 18/5 31/4
cost [1] 26/4
could [14] 13/22 14/21 16/17 23/6
23/20 24/5 25/3 26/4 29/1 30/18 30/19
33/25 35/2 35/15
counsel [4] 31/14 31/20 31/21 33/11
couple [1] 30/13
COURT [9] 1/1 1/20 13/1 18/14 34/19
35/4 36/19 36/19 36/23
Court's [1] 35/10
cover [5] 3/4 7/3 14/16 18/25 34/17
covered [1] 6/18
covers [1] 29/7
created [1] 10/7
crew [1] 24/16
crystal [1] 32/13
cull [2] 26/3 26/9
cure [2] 9/9 32/18
currently [1] 3/25
curtain [1] 11/13
custodial [1] 6/15
custodian [13] 5/9 5/12 5/14 5/17 18/16
18/18 18/23 20/15 20/21 28/2 28/8
28/10 28/22
custodian's [1] 27/6
custodians [11] 13/10 15/4 17/8 20/8
20/9 26/17 27/4 27/14 27/15 27/23
28/15
custom [1] 25/10

**D**

DEEPWATER [1]  1/5
defendants [5]  12/10 22/16 25/24 24/7 27/23
defendants' [1]  3/13
definitive [1]  17/5
degree [1]  14/17
department [27]  5/7 5/10 5/13 5/14 5/15 7/13 7/22 13/17 13/18 13/24 13/25 14/4 14/6 14/22 15/7 15/10 15/10 15/14 15/18 17/5 17/11 17/25 18/19 20/10 20/19 26/16 26/16
departmental [2]  25/25 26/14
departments [19]  5/2 5/5 5/21 6/11 6/15 7/6 8/3 9/14 11/14 11/15 15/4 16/6 16/20 17/15 17/24 19/10 25/12 26/3 28/15
dependent [1]  15/7
depending [1]  7/21
depose [1]  28/10
deposition [3]  34/14 34/23 35/22
depositions [8]  21/11 21/12 31/14 31/21 31/23 35/2 35/12 35/24
depository [1]  16/5
deputize [1]  33/12
deputy [1]  31/16
designation [4]  18/24 20/15 20/18 20/21
detail [1]  24/20
detailed [1]  23/22
details [1]  28/20
determine [2]  8/21 17/25
develop [1]  28/9
developed [1]  28/6
development [1]  19/22
did [7]  3/17 5/24 16/20 19/24 22/5 22/8 30/5
didn't [3]  15/9 35/6 35/18
different [7]  7/12 7/19 8/9 11/3 15/11 15/15 15/18
digging [1]  29/2
diligent [1]  35/5
disclosure [1]  28/4
disclosures [1]  27/20
discovery [3]  18/4 25/16 30/13
discs [1]  8/3
discuss [4]  3/8 3/24 16/23 27/11
discussed [5]  14/19 22/8 22/10 24/9 34/20
discussions [6]  3/22 4/4 4/9 10/14 13/20 31/4
dismiss [1]  33/21
DISTRICT [4]  1/1 1/2 36/19 36/19
do [30]  4/8 4/10 4/10 6/4 8/6 9/5 10/10 10/23 11/16 11/20 12/11 12/25 13/4 13/9 13/9 16/21 20/1 21/20 22/4 26/6 27/4 27/10 28/13 29/5 29/19 33/22 33/24 33/25 35/15 36/1
document [7]  4/23 14/15 15/1 15/15 25/13 28/7 34/16
documents [33]  5/9 5/11 5/15 5/15 6/12 6/13 6/25 7/2 7/9 7/25 8/6 10/5 11/7 11/25 12/3 12/5 12/9 13/19 13/22 14/2 14/10 18/14 18/17 19/9 20/14 20/18 20/20 21/16 24/25 26/7 27/5 30/11 31/22
does [9]  5/17 10/19 12/21 26/24 29/9 32/18 32/19 32/21 33/7
doesn't [1]  6/21

doing [7]  5/21 11/25 12/19 12/19 16/10 27/3 30/1
dollars [1]  26/5
don't [22]  6/13 8/25 9/24 11/15 17/1 18/15 20/11 22/6 23/18 26/13 27/17 28/12 29/2 30/6 30/21 32/8 33/12 33/16 34/25 35/21 35/24 36/8
done [8]  12/11 17/20 26/11 27/19 31/12 31/18 32/22 35/5
down [7]  8/7 11/19 17/12 21/23 25/23 25/25 26/9
Doyle [4]  1/20 36/19 36/22 36/23
draft [2]  29/18 29/22
dragging [1]  7/14
draw [1]  8/7
drives [1]  8/3
duly [1]  35/5
during [1]  10/13

**E**

e-mail [5]  7/13 7/25 21/16 22/9 22/13
e-mails [5]  22/8 22/13 22/23 22/24 24/7
each [8]  5/4 6/19 14/4 14/22 15/14 15/17 15/17 31/15
earlier [1]  14/19
EASTERN [2]  1/2 36/19
edits [5]  3/12 3/12 3/13 3/14 3/17
educate [1]  18/4
either [5]  7/4 8/3 19/9 19/11 20/11
Election [1]  34/11
Election Day [1]  34/11
electronic [18]  11/9 11/9 13/11 14/3 14/16 15/5 15/9 15/18 15/21 15/24 16/16 17/5 18/7 19/11 20/9 21/16 25/13 28/16
electronically [5]  7/11 7/13 14/18 19/8 29/8
else [5]  8/6 22/14 28/9 34/16 36/7
employee [1]  27/20
end [3]  11/20 26/6 32/22
enrolled [2]  31/10 32/15
entered [1]  11/1
entities [1]  4/3
entitled [3]  9/23 25/24 36/21
Environmental [2]  18/19 20/19
especially [2]  25/13 28/8
essentially [1]  8/1
etc [3]  11/11 21/12 31/23
even [4]  10/10 10/10 16/6 28/24
ever [1]  10/7
every [4]  14/2 26/14 27/20 33/12
everybody [3]  3/3 15/20 27/1
everything [2]  26/8 26/10
exactly [2]  11/12 28/9
example [9]  5/7 14/5 15/8 20/10 22/11 22/11 26/15 36/1 36/1
examples [5]  5/5 23/3 23/7 23/13 23/19 24/10 24/15 24/21 25/3
exception [1]  16/15
exchanged [1]  31/3
excused [1]  35/17
excusing [1]  3/5
exist [3]  8/6 10/19 23/1
existed [1]  25/19
exists [4]  10/13 10/18 10/20 25/3
explain [1]  23/5
explanation [1]  26/19
extent [7]  5/18 10/12 10/18 12/6 12/10 13/1 18/21

**F**

fact [10]  5/2 10/1 10/17 11/12 19/25 24/25 25/10 28/2 30/4 34/14
fair [1]  15/3
fairly [1]  29/14
fall [1]  22/23
family [1]  24/23
far [6]  10/23 24/11 30/1 30/7 30/10 30/11
fashion [1]  9/19
FCRR [3]  1/20 36/19 36/23
feel [3]  9/23 12/14 12/16
field [3]  7/21 21/14 21/17
fields [2]  7/10 28/23
figure [3]  10/19 17/20 36/9
figuring [1]  35/21
file [10]  4/22 6/15 7/15 19/16 20/4 25/6 28/11 30/4 30/18 33/23
filed [2]  31/19 34/5
files [13]  7/25 8/7 8/14 8/20 8/21 18/22 19/21 19/22 24/1 24/16 24/17 25/1 28/2
final [1]  34/14
Finance [1]  5/15
find [4]  10/22 19/4 23/14 25/4
finds [1]  10/25
fine [8]  23/17 23/21 34/2 35/23 35/4 35/24 36/3 36/5
first [6]  6/8 7/3 9/12 17/23 21/5 21/6
Fiscal [2]  5/11 5/13
five [2]  32/2 32/4
flavor [1]  5/6
folder [2]  7/15 7/17
following [1]  4/3
foregoing [1]  36/20
forensically [1]  9/19
form [1]  18/7
format [12]  7/2 7/3 7/18 8/4 8/12 8/14 9/15 14/12 15/5 19/11 25/6 30/19
formats [1]  19/14
forth [1]  32/8
Frankly [1]  26/6
Friday [1]  34/5
front [1]  6/22
full [3]  6/9 6/25 20/1
fully [3]  4/4 28/6 28/9
fundamentally [2]  32/9 33/16

**G**

gathered [2]  9/12 19/9
gave [1]  17/5
general [7]  14/21 30/10 31/16 32/4 32/12 33/9 33/11
general's [1]  15/8
generally [4]  15/3 15/12 15/20 15/21
generals [3]  31/11 32/16 32/23
generic [1]  18/24
get [19]  3/3 3/15 7/7 8/14 9/9 10/20 10/21 10/22 11/5 11/21 12/8 12/9 19/7 21/19 22/2 26/7 28/24 35/9 36/8
gets [1]  26/10
getting [6]  6/20 18/23 18/23 21/8 26/1 26/12 34/15
give [16]  4/10 5/5 5/6 5/17 6/21 9/10 13/5 20/25 22/16 23/7 23/13 23/18 25/3 26/8 29/20 31/2
giving [3]  3/12 8/4
global [1]  15/19
go [18]  6/23 8/21 12/15 14/7 16/20 17/24 19/4 19/15 20/7 21/2 24/14

**G**

go... [7] 24/18 26/15 26/20 29/2 29/22
32/20 34/10
goes [1] 11/13
going [21] 4/8 5/19 6/16 7/10 7/20 10/9
14/12 14/16 17/8 19/7 26/1 26/6 27/9
29/14 29/20 30/2 31/15 31/24 33/14
33/18 36/3
gone [1] 35/3
good [15] 3/3 3/21 4/1 4/6 4/16 4/17
11/6 17/23 18/10 20/7 21/10 22/19
30/16 31/7 32/24
got [5] 3/13 12/14 12/17 19/3 22/11
gotcha [2] 15/16 30/2
gotten [1] 8/20
governor [10] 31/8 31/21 32/3 32/9
32/10 32/12 32/25 32/25 33/5 33/13
governor's [3] 31/20 31/21 33/17
grappling [1] 15/1
great [2] 22/3 29/6
group [2] 31/10 32/15
guess [16] 8/16 9/11 9/17 12/15 14/21
16/16 18/20 20/23 22/21 23/2 25/9
28/5 28/12 28/17 32/14 33/4
GULF [1] 1/6
guys [4] 19/6 27/14 29/12 34/3

**H**

had [17] 3/11 3/22 4/3 4/21 6/1 7/17
7/17 7/18 15/14 19/15 28/7 29/17
32/22 34/20 34/24 35/5 35/19
Halliburton [4] 34/19 34/25 36/1 36/11
hand [1] 12/4
hand-reviewing [1] 12/4
handle [2] 12/14 12/17
happened [2] 10/10 21/18
happening [2] 8/2 23/5
happens [1] 22/1
happy [1] 3/8
hard [14] 7/1 8/3 11/7 11/25 12/19 13/9
13/11 14/1 14/5 14/10 14/12 14/21
16/19 29/8
hard-copy [5] 11/7 11/25 14/1 14/10
14/12
harvest [1] 17/24
has [23] 5/3 5/8 5/14 7/13 7/15 9/16
13/18 14/4 17/20 19/12 20/5 20/9 22/9
23/22 23/22 27/5 27/19 30/11 32/8
32/15 33/5 34/25 35/12
hasn't [1] 10/10
have [113]
haven't [1] 3/16
having [5] 4/22 25/20 27/3 31/13 35/11
he [5] 3/13 15/6 21/5 33/7 33/8
head [1] 12/20
heads [1] 17/11
healthy [1] 24/10
hear [2] 3/19 36/14
heard [2] 3/16 21/6
help [3] 12/21 21/11 35/3
helpful [1] 12/25 21/11 28/13
here [6] 9/8 15/9 21/21 23/9 24/5 24/12
hi [1] 3/7
high [1] 14/11
him [1] 33/13
himself [1] 31/22
his [1] 33/5
hoc [1] 24/7
Hold [1] 34/3
holds [2] 15/18 16/16

Honor [43]
Honorable [1] 1/1
HONORABLE [1] 1/13
hope [1] 35/11
hopefully [2] 23/10 24/11
hoping [2] 3/15 29/13
HORIZON [1] 1/5
how [12] 7/21 9/12 11/19 13/10 13/20
17/9 19/5 21/16 22/1 26/20 29/19 31/4
HTM [7] 7/2 7/12 7/25 8/14 8/20 25/1
25/6
hub [1] 16/17
huh [1] 31/11
hump [2] 29/13 29/14
hundreds [1] 26/4

**I**

I'll [3] 33/19 34/4 36/4
I'm [23] 3/8 3/14 3/14 6/16 6/23 8/8
10/17 10/19 10/20 10/21 17/17 17/19
19/7 21/14 21/25 24/4 27/9 28/19
29/13 29/21 31/24 34/11 36/3
I've [1] 6/3
idea [3] 13/9 13/10 27/13
ideas [1] 22/4
identification [1] 18/18
identified [12] 4/21 5/9 5/11 5/12 5/14
18/15 20/21 26/17 27/15 28/2 28/3
28/15
identify [11] 5/8 5/25 12/1 18/2 19/24
20/10 20/11 22/23 23/9 24/12 27/4
identifying [1] 20/8
if [35] 4/13 7/14 7/17 8/9 8/21 9/18
10/20 10/25 10/25 12/1 14/8 14/14
15/6 16/16 16/19 16/25 19/18 20/13
22/15 23/13 23/21 25/3 25/4 25/6
25/23 26/4 26/5 28/22 30/18 32/2
32/10 35/1 35/24 35/25 36/8
image [1] 8/1
images [1] 19/12
implement [2] 26/2 26/14
importance [1] 17/12
impossible [1] 6/10
in [76]
include [1] 22/8
included [1] 34/21
including [1] 27/21
indeed [1] 27/6
indicate [1] 5/22
individual [10] 15/22 16/22 17/7 18/22
18/22 18/23 19/9 20/10 20/21 21/8
individual's [1] 16/12
individually [1] 26/21
individuals [1] 17/18
information [26] 4/20 5/25 6/16 7/6
7/22 9/10 9/12 9/15 16/10 10/1 11/14
13/21 14/20 15/5 15/18 15/24 16/17
18/3 18/15 18/16 24/20 28/16 29/9
29/18 33/17 35/6
initial [1] 4/4
initially [3] 3/14 7/18 9/19
instance [1] 7/14
instead [1] 7/14
interest [1] 35/16
interested [2] 16/20 35/13
internal [1] 17/4
internally [2] 3/23 22/10
interspersed [1] 22/24
into [10] 7/15 7/17 8/11 11/8 11/17
11/17 14/2 22/23 26/15 28/24

investigate [1] 28/9
investigating [1] 28/9
ISD [1] 17/4
issue [35] 3/8 4/7 5/17 5/24 9/8 9/22
11/23 12/9 13/12 13/14 13/17 14/22
15/2 20/4 20/8 21/13 22/7 23/4 23/9
23/15 23/25 24/7 24/8 24/10 25/5 25/9
28/1 28/8 28/11 28/23 30/3 30/10
30/15 30/23 31/2
issues [12] 4/19 4/22 5/1 6/8 6/24
18/12 19/5 19/16 19/25 28/7 30/7
36/10
it [89]
it's [19] 3/7 5/22 7/10 8/12 9/24 9/25
10/24 11/3 11/17 13/14 13/23 14/20
15/14 15/25 19/3 32/2 32/7 35/24 36/8
its [5] 7/18 8/11 14/4 15/14 31/19
itself [1] 26/12

**J**

Jenny [4] 8/9 17/14 17/23 27/18
joint [1] 34/14
JUDGE [8] 1/13 4/2 12/2 12/24 13/13
15/23 16/13 36/6
jumping [1] 18/11
just [42]

**K**

keep [3] 10/13 13/1 23/1
kept [1] 13/10
Kerry [2] 3/7 3/9
kind [1] 24/6
knew [2] 17/14 22/12
know [9] 14/16 15/14 17/1 21/1 22/22
23/23 27/23 34/13 35/12
knowledge [3] 19/17 34/25 36/2
Krohn [1] 4/2
Ky [1] 3/23

**L**

label [1] 31/23
Labor [2] 13/18 14/25
lacked [1] 9/22
Langan [1] 32/7
last [7] 3/11 4/21 29/25 30/9 30/17
31/13 34/5
later [3] 12/11 14/16 30/1
latest [1] 31/2
least [6] 5/11 22/12 26/5 26/24 30/24
31/3
Legislative [2] 5/10 5/12
less [1] 26/7
let [9] 6/6 6/23 10/11 11/13 19/4 20/12
21/1 21/23 23/23
let's [21] 3/3 3/4 3/21 6/25 7/3 7/24
12/13 12/14 13/8 13/25 15/19 15/20
19/6 20/7 21/13 24/2 24/14 24/23
29/12 29/17 34/10
letter [1] 28/19
letting [1] 26/9
level [1] 26/14
levels [1] 25/25
lies [2] 10/4 11/23
light [3] 4/20 5/1 5/3
like [4] 12/14 13/4 24/9 32/3
likelihood [1] 14/11
limited [1] 5/20
limiting [2] 3/5 17/15
line [3] 15/15 21/17 21/25 30/14
list [8] 17/1 18/25 20/24 21/20 22/16
23/22 26/18 27/15

## L

listed [1]  27/19
Listen [1]  16/25
listening [1]  31/18
literally [2]  7/6 12/4
little [5]  6/1 20/12 24/19 24/23 34/21
load [1]  4/22 19/15 19/21 19/22 20/4
logged [1]  30/4
longer [1]  9/16
look [5]  21/7 22/17 23/14 24/16 25/4
33/19 34/4
looked [2]  23/22 23/23
looking [3]  3/25 23/2 28/20
looming [1]  12/20
lot [5]  3/4 7/5 14/7 14/20 21/6
LOUISIANA [4]  1/2 1/8 1/21 36/20
lowest [1]  32/6

## M

made [5]  10/12 11/17 18/13 25/12
30/11
MAGISTRATE [1]  1/13
mail [5]  7/13 7/25 21/16 22/9 22/13
mails [5]  22/8 22/13 22/23 22/24 24/7
maintained [2]  7/18 15/24
maintains [1]  14/6
majority [2]  6/11 10/6
make [8]  6/24 9/20 10/15 17/3 17/11
28/13 34/10 35/18
makes [2]  11/9 17/23
making [2]  25/22 31/15
Management [2]  18/19 20/19
many [3]  7/24 12/9 13/10
material [1]  5/21
materials [4]  5/3 5/4 18/21 20/5
matter [3]  4/5 25/16 36/21
may [10]  4/20 7/16 9/2 15/11 15/11
20/13 28/10 28/21 35/4 35/10
maybe [5]  7/4 16/11 21/4 21/17 35/18
MD [1]  1/5
me [14]  4/10 4/10 6/23 8/18 8/24 8/25
10/11 13/5 17/3 19/18 20/12 21/23
29/1 35/15
mean [1]  25/23
meaningful [1]  23/7
means [3]  11/17 26/25 31/17
mechanical [1]  1/25
meet [1]  30/3
mentioned [2]  30/9 35/12
met [3]  17/11 29/25 31/3
metadata [15]  7/10 7/16 7/21 8/15 9/10
9/16 9/20 9/22 9/24 10/12 10/18 11/11
11/21 21/14 28/23
MEXICO [1]  1/6
might [4]  7/23 8/15 22/13 27/3
Miller [1]  3/7
millions [1]  26/5
mind [2]  6/4 10/13
mindset [1]  10/9
minor [1]  3/17
missing [1]  7/21
modified [1]  30/1
MOEX [2]  3/22 4/2
monthly [1]  14/6
months [1]  26/5
more [8]  4/25 6/1 17/3 18/24 19/21
23/21 24/19 26/12
morning [6]  3/3 3/13 4/16 4/17 6/9 6/20
most [4]  4/13 15/4 16/20 18/8
motion [5]  31/7 31/19 33/2 33/21 34/22

move [2]  4/11 4/13
moved [1]  10/15
moving [2]  31/5 34/13
Mr. [1]  31/17
Mr. Breit [1]  31/17
MSG [3]  7/18 8/14 8/21
must [2]  10/12 23/4
my [16]  4/11 6/12 7/20 8/25 16/6 17/18
18/25 19/17 21/20 25/9 26/24 29/7
31/13 31/19 32/14 36/20
myself [1]  35/18

## N

name [1]  18/23
named [1]  6/11
names [1]  21/9
narrow [1]  25/25
native [5]  8/4 8/12 19/11 30/19 30/23
natural [1]  13/25 30/3
necessarily [1]  30/22
necessary [1]  27/22
necessitating [1]  33/2
need [9]  6/4 9/2 23/21 25/24 27/21
27/24 30/4 31/24 35/21
needs [1]  15/6
network [5]  15/22 16/12 16/21 16/21
19/10
networked [1]  15/21
new [4]  1/8 1/21 5/25 29/13
next [11]  4/7 13/2 23/25 24/22 25/9
27/11 30/16 31/7 33/21 36/9 36/14
Nick [1]  4/2
night [1]  29/25
no [13]  9/16 11/11 13/5 16/5 16/7
17/19 20/15 20/21 22/5 23/12 31/18
35/14 35/16
non [1]  15/22
non-network [1]  15/22
nor [1]  33/12
not [49]
note [1]  34/19
notice [2]  19/4 36/2
notices [2]  34/23 35/19
now [24]  6/1 6/17 8/25 9/21 13/8 13/14
13/18 15/1 15/3 16/6 17/18 19/22 20/1
20/7 20/8 21/13 22/7 24/22 25/9 27/14
29/17 31/10 31/18 31/18
NRD [2]  30/7 30/12
number [5]  5/2 13/23 23/7 23/13 23/18
24/7 24/10 28/18 29/1
number one [2]  28/18 29/1

## O

objective [2]  12/6 12/11
obtained [1]  28/16
obviously [5]  9/8 9/23 9/24 12/21 19/21
OCR'd [3]  10/24 11/17 24/4
October [3]  1/7 3/2 36/10
October 30 [1]  36/10
off [1]  30/14
office [5]  5/11 5/13 15/8
Official [3]  1/20 36/19 36/23
OIL [2]  1/5 1/5
okay [47]
on [74]
once [2]  11/24 19/10
one [31]  4/11 5/1 8/19 14/23 16/23
18/12 18/20 19/2 19/4 20/9 21/19
22/11 24/5 24/12 27/11 28/5 28/18
28/21 29/1 32/5 32/9 34/20 34/24
one-third [1]  20/9

ones [2]  15/12 22/16
online [1]  26/11
only [8]  14/21 16/15 18/17 20/1 22/11
22/11 22/21 26/10
open [2]  21/14 28/11
opportunity [1]  6/2
opposition [1]  33/23
options [1]  3/24
or [31]  3/5 3/22 4/10 5/11 7/5 8/3 9/9
11/4 11/15 11/25 13/9 15/21 17/24
19/10 19/11 20/20 21/4 21/15 22/13
22/14 22/15 22/16 24/5 24/6 25/17
25/24 26/25 27/4 27/20 29/21 31/3
order [5]  10/12 18/1 26/24 29/19 32/1
original [2]  11/4 32/1
Orleans [2]  1/8 1/21
other [11]  6/15 13/24 14/18 15/25 18/5
18/16 20/17 22/15 28/20 29/9 33/3
others [3]  14/22 15/11 15/12
otherwise [2]  3/4 34/15
our [21]  3/11 9/17 11/5 11/20 15/9 17/4
17/24 18/13 21/20 22/10 26/9 27/20
27/21 27/22 27/23 28/6 29/3 32/8
33/10 34/20 34/24
ourselves [2]  3/4 34/15
out [23]  3/24 6/10 7/8 7/9 10/19 10/21
10/22 11/21 17/20 18/13 19/4 25/4
26/3 26/6 27/1 27/9 28/11 29/1 32/24
33/3 35/21 35/25 36/9
outlined [1]  28/18
Outlook [1]  7/18
outstanding [1]  30/7
over [9]  3/16 6/7 6/14 6/16 12/20 23/5
23/5 29/13 29/14
overwhelming [2]  6/11 10/6
own [3]  8/11 15/14 29/21

## P

page [3]  2/2 12/5 32/5
pages [2]  32/2 32/4
paper [3]  7/7 7/8 24/17
Parker [14]  6/6 6/17 12/2 12/18 13/9
13/15 15/6 15/11 20/25 21/2 21/15
23/22 24/15 27/11
part [3]  9/8 18/8 25/15
partial [1]  35/15
participating [1]  35/16
participation [1]  3/6
particular [4]  7/9 22/13 30/23 31/2
parties [10]  6/13 12/10 13/14 13/19
14/17 28/1 30/9 31/5 34/24 35/20
parties' [1]  3/5
party [4]  29/9 32/10 32/10 32/25
past [1]  16/19
path [1]  4/3
Paul [18]  4/15 9/7 10/5 18/12 19/19
20/8 21/4 22/4 22/20 23/12 23/17
23/25 27/25 29/21 29/25 30/8 33/24
34/8
pending [1]  34/15
people [4]  10/22 22/11 31/11 32/15
per [1]  18/1
percent [2]  20/14 20/17
perhaps [4]  23/8 24/8 24/19 28/24
period [5]  14/8 15/20 16/2 16/9 16/11
permission [1]  31/25
person [2]  8/8 31/15
personal [1]  15/24
persons [1]  18/2
perspective [1]  28/6

**P**

pertinent [1]  26/20
Phase [1]  35/3
Phase Two [1]  35/3
phone [2]  8/10 31/18
phrase [2]  10/19 23/16
piece [1]  4/19
place [2]  9/13 36/15
platform [2]  25/17 25/20
point [9]  6/10 6/10 10/14 16/20 17/23
18/13 23/9 25/22 28/22
pointed [1]  26/6
points [1]  30/13
policy [2]  15/9 25/14
pop [1]  29/1
portion [1]  4/22
posed [1]  8/19
position [2]  26/9 32/8
possible [4]  8/19 8/20 8/24 12/6
Poydras [1]  1/21
prefer [1]  34/9
premature [1]  28/21
preparation [1]  21/11
present [1]  35/21
preserved [1]  9/20
pressure [1]  12/20
presumably [1]  33/5
pretrial [2]  10/11 26/24
principle [1]  30/15
principles [1]  30/10
prior [2]  24/9 34/21
privilege [2]  26/9 30/4
probably [4]  8/10 13/18 14/23 30/14
problem [9]  7/9 10/4 10/25 10/25 13/6
13/9 24/5 24/12 35/14
problems [1]  25/19
procedure [1]  28/18
proceedings [4]  1/25 3/1 36/16 36/21
process [4]  15/15 28/14 32/11 35/3
produce [3]  6/16 10/5 28/2
produced [17]  5/9 7/1 7/2 9/15 10/2
13/18 18/15 19/8 19/11 20/5 20/14
27/6 28/11 30/18 30/19 30/21 30/24
producing [4]  5/3 18/6 19/13 21/15
production [13]  4/23 4/25 6/2 14/25
20/2 20/9 22/25 27/5 28/8 29/8 30/7
34/16 36/10
productions [2]  6/14 28/24
productive [1]  4/13
program [1]  11/9
proportionally [1]  26/13
proposal [1]  30/11
propose [4]  23/6 23/18 23/20 33/22
proposed [2]  29/22 35/1
prove [1]  27/21
provide [9]  13/22 18/4 23/1 23/3 23/8
24/10 24/19 24/20 26/25
provided [5]  3/12 9/14 35/4 35/6 35/8
providing [2]  26/17 26/18
PTO [10]  9/21 9/24 10/6 10/7 10/9
11/18 12/7 12/12 19/14 30/1
PTO 16 [6]  9/21 10/6 10/7 10/9 11/18
19/14
publicly [2]  6/12 6/13
pull [2]  14/7 14/17
pulled [3]  7/17 14/9 18/22
purchase [1]  26/2
pursuant [2]  12/7 12/11
pursue [1]  27/13

put [8]  9/25 12/6 17/1 19/4 20/23 27/1
27/3 35/10
putting [3]  8/3 10/21 11/8

**Q**

qualifying [1]  10/18
question [20]  8/16 8/18 8/22 8/23 9/1
9/3 9/6 10/20 11/3 11/4 14/25 18/20
21/15 21/24 22/18 25/7 25/23 29/10
32/14 33/4
questions [5]  4/11 4/13 6/20 29/7 29/9
quickly [1]  29/14

**R**

radar [1]  35/10
raise [2]  5/16 5/24
raised [2]  4/19 6/8
raises [1]  9/11
raising [1]  9/22
range [1]  22/16
rather [2]  7/2 13/11
RE [1]  1/5
reach [1]  30/5
reached [2]  3/24 32/24
read [2]  11/18 26/24
readable [1]  10/24
realize [1]  14/20
really [7]  6/21 12/15 15/7 17/3 17/5
25/23 32/8
reason [1]  5/16
reasonable [3]  5/19 5/22 26/10
rebuffed [1]  33/3
recall [1]  4/20
receive [1]  8/5
received [1]  19/20
recent [2]  19/21 33/21
recently [2]  3/24 19/25
recollection [1]  17/18
record [2]  17/6 36/21
recorded [1]  1/25
recreate [1]  11/4
rectified [3]  23/10 24/6 24/13
redacting [1]  13/21
refers [1]  7/5
refused [1]  33/1
regard [2]  29/7 34/23
regarding [3]  13/20 14/16 35/6
related [2]  24/25 25/6
relating [1]  30/15
relationships [1]  24/23
relatively [1]  3/12
relevant [2]  17/25 26/19
remaining [1]  3/12
remember [2]  30/17 35/4
report [1]  13/3
Reporter [3]  1/20 36/19 36/23
repositories [1]  16/12
represent [1]  33/11
reproduce [1]  26/4
requested [1]  15/5
requests [1]  18/4
require [2]  10/9 26/1
required [2]  9/24 19/14
requirement [1]  26/13
resolution [1]  31/6
resource [1]  30/3
Resources [1]  14/1
respect [3]  5/7 18/14 20/13
respond [5]  28/1 31/24 32/2 32/4 32/5
response [3]  6/9 28/25 29/3
responses [1]  28/17

responsive [4]  6/12 18/3 26/11 27/7
28/14  [?28/14]
retrieved [1]  28/16
revenue [4]  5/8 5/10 14/6 30/17
review [5]  4/25 6/2 12/5 19/23 20/1
reviewing [2]  12/4 29/18 31/22
RIG [1]  1/5
right [33]  3/9 4/14 8/1 8/17 8/25 11/2
12/13 13/14 13/18 15/1 15/13 16/10
16/18 17/16 17/18 17/19 17/22 18/25
19/6 19/20 24/3 24/22 25/1 25/8 25/18
26/23 29/24 31/1 33/6 33/15 33/19
34/13 36/5
roughly [2]  20/15 20/17
rule [3]  14/21 27/20 28/3
Rule 26 [2]  27/20 28/3
run [1]  25/25
running [2]  23/1 25/10

**S**

said [6]  21/5 23/12 25/16 26/2 32/1
32/24
SALLY [1]  1/13
same [6]  25/2 26/7 32/5 35/13 36/15
36/15
Save [1]  7/14
saved [5]  7/13 7/16 7/22 10/5 10/8
saving [1]  7/6
saw [1]  31/10
say [15]  7/24 8/13 13/13 13/25 14/4
14/11 14/21 14/23 15/3 15/7 15/20
15/23 17/23 18/9 23/11
saying [3]  9/13 16/8 35/5
says [2]  7/24 10/12
scanned [4]  7/8 11/10 11/24 24/17
scanning [1]  11/8
schedule [3]  29/12 29/13 34/15
scheduling [1]  18/1
scope [2]  13/8 13/12 30/12
search [17]  4/8 5/17 5/19 5/22 16/21
16/22 25/10 25/24 26/3 26/10 26/11
26/18 26/19 26/20 26/25 27/7 35/5
searchable [3]  10/17 11/9 24/1
searches [4]  13/24 16/10 25/12 29/8
searching [1]  16/11
second [5]  16/23 19/7 21/5 25/15 28/21
Secondly [1]  18/2
Section [1]  1/6
see [6]  19/5 26/13 27/4 29/17 30/18
36/4
seeing [2]  5/21 18/13
seem [1]  23/4
seems [5]  9/13 9/17 23/3 24/4 35/15
seen [2]  23/7 24/11
send [4]  11/21 24/14 29/25 36/4
sensitive [1]  13/20
sent [4]  3/15 7/8 11/14 11/19
September [1]  28/19
September 30 [1]  28/19
served [1]  35/19
set [1]  32/8
setoff [1]  33/22
she [1]  8/10
sheets [2]  7/7 7/7
shortcut [1]  21/11
should [3]  26/13 29/15 33/12
show [1]  23/15
SHUSHAN [1]  1/13
significant [3]  13/19 13/22 14/1
similar [2]  4/3 24/9

**S**

simple [1] 22/15
simply [4] 7/8 8/11 22/17 26/9
since [3] 3/11 4/24 21/20
single [1] 12/4
situation [2] 9/21 31/5
small [2] 5/4 6/15
snapshot [1] 8/12
snapshots [1] 8/1
so [51]
software [3] 1/25 25/11 26/2
Sold [1] 32/6
solved [1] 25/20
some [20] 3/12 3/12 4/22 5/5 6/10 6/24
 7/16 12/6 14/17 14/22 15/10 16/20
 19/15 19/24 21/5 23/7 24/25 34/20
 35/11 35/20
Somebody [1] 9/5
somehow [1] 8/20
someone [1] 19/18
something [10] 8/11 10/24 11/1 13/14
 22/14 23/11 24/6 27/13 31/24 34/20
somewhere [1] 8/6
sorry [2] 18/11 34/11
sort [2] 8/12 10/9
sound [1] 9/19
speak [1] 6/4
speaking [1] 15/4
special [3] 31/11 32/15 33/8
specially [1] 32/23
specific [1] 24/5
specifics [1] 25/4
spill [2] 1/5 10/10
spoke [1] 30/17
spoken [1] 29/17
staff [5] 8/25 11/5 12/5 17/4 21/20
stage [1] 17/23
stand [2] 3/22 29/19
standpoint [1] 27/23
start [4] 3/4 6/6 6/25 32/24
started [4] 3/4 4/20 5/1 5/25
state [16] 5/2 5/4 5/21 9/13 9/14 9/18
 9/25 17/4 26/2 27/20 30/16 31/14
 31/16 32/1 32/11 33/11
state's [1] 27/23
stated [1] 11/20
statement [2] 35/4 35/7
STATES [3] 1/1 1/13 36/19
status [1] 1/12 31/8
stay [1] 33/13
stenography [1] 1/25
still [5] 3/23 8/21 28/11 31/4 31/24
stipulation [1] 35/15
stipulations [1] 3/5
stop [1] 10/11
stored [2] 7/11 29/9
straight [1] 34/15
Street [1] 1/21
strike [2] 31/8 31/19
stuff [2] 21/5 33/14
subdivision [1] 17/25
subject [4] 3/18 21/17 21/25 30/13
subjectivity [2] 25/11 25/22
submission [1] 18/13
substantial [4] 4/22 5/18 22/25
substitute [2] 5/20 5/23
such [4] 13/24 21/16 23/3 34/24
sufficient [1] 6/21
suggest [2] 12/18 24/8

suggested [3] 20/8 24/1 34/24
Suggesting [1] 5/11
Summation [1] 11/15
sure [11] 6/24 9/4 9/20 16/25 17/11
 17/17 22/1 24/4 24/16 28/19 29/21
suspend [2] 12/15 12/16 29/15
suspended [1] 34/15
sworn [1] 35/4
system [3] 11/17 16/21 26/14
systemic [3] 23/4 23/9 23/15
systems [1] 11/16

**T**

take [9] 6/6 11/5 12/3 21/6 22/17 22/20
 24/16 26/5 35/11
taking [1] 11/7
talk [13] 3/21 4/7 7/24 10/22 12/13
 13/8 15/9 17/4 21/13 24/2 24/23
 26/16 26/16
talked [1] 31/12
talking [4] 29/3 30/23 34/8 35/20
tax [1] 30/16
team [1] 12/3
tech [5] 8/8 8/25 11/5 21/20 24/15
technical [1] 17/4
TELEPHONE [1] 1/12
tell [1] 15/11
Telling [1] 26/8
term [3] 5/17 8/9 25/24
terms [9] 4/8 13/21 14/5 14/15 26/3
 26/11 26/18 26/19 27/7
test [1] 26/25
text [7] 10/18 10/24 11/18 22/9 22/13
 24/1 30/18
than [6] 7/2 8/10 13/11 14/22 15/12
 18/24
Thank [6] 11/6 12/22 23/24 29/11 36/6
 36/15
Thanks [3] 4/6 35/2 36/12
that [274]
that's [59]
them [30] 3/16 6/22 8/3 8/4 8/7 9/14
 10/2 11/8 11/8 11/9 11/19 11/25 12/1
 12/6 18/4 18/4 18/15 19/5 19/13 20/14
 20/22 23/1 23/14 26/7 26/8 26/18
 26/19 28/19 30/1 30/14
then [15] 4/24 8/18 11/24 16/18 17/1
 18/6 18/16 23/8 23/10 23/14 25/7
 25/19 26/2 26/3 34/10
there [40]
there's [2] 14/18 16/16
therefore [2] 7/16 9/15
therein [2] 10/4 11/23
these [22] 5/4 6/8 7/1 8/6 8/14 10/5
 10/13 11/15 12/3 12/19 15/10 18/21
 19/8 19/9 19/25 20/20 22/24 24/7
 24/16 24/25 26/19 35/11
they [37]
thing [2] 25/3 32/9
things [7] 7/21 10/8 17/2 20/24 21/20
 26/1 26/3
think [50]
third [3] 18/15 18/16 20/9
thirds [1] 20/11
this [63]
those [25] 3/15 6/14 6/15 6/19 7/7 7/9
 7/10 11/7 12/5 13/21 14/2 14/7 14/11

14/17 18/17 19/3 19/4 20/18 20/24
 24/3 25/23 33/24 34/5 35/24
though [3] 10/10 12/8 29/23
thought [2] 18/3 22/12
thousand [1] 26/4
three [1] 27/4
through [13] 3/25 4/11 4/13 6/24 19/3
 19/5 19/7 19/16 19/18 26/23 28/22
 32/12 32/12
throughout [1] 22/24
Thursday [1] 36/9
TIF [4] 7/2 8/7 8/9 19/12
TIF'd [1] 7/8
TIF'g [1] 8/11
time [13] 6/21 14/8 14/9 14/10 15/20
 16/8 16/11 21/5 21/6 29/15 30/17
 31/13 36/15
times [1] 15/15
timing [1] 12/8
to/from [1] 21/23
today [7] 3/15 9/2 19/3 29/21 30/1 34/9
 34/17
together [1] 36/8
tomorrow [6] 29/21 32/2 32/4 33/14
 33/20 34/6
Toni [4] 1/20 36/19 36/22 36/23
top [1] 17/12
topic [1] 7/12
topics [6] 7/19 7/23 27/22 35/1 35/6
 36/3
total [1] 13/23 23/1
Tourism [2] 5/13 5/14
towards [1] 31/6
transcript [1] 36/20
transcription [1] 1/25
Transocean [2] 3/11 3/18
tried [3] 18/2 18/3 33/3
true [2] 22/17 36/20
try [4] 12/9 14/2 22/25 29/22
trying [7] 10/14 10/19 10/20 17/20
 30/18 33/17 35/13
Tuesday [1] 34/11
turn [2] 6/16 14/2
turned [1] 6/14
turning [1] 8/11
Tusa [4] 1/20 36/19 36/22 36/23
two [12] 7/19 13/2 13/3 18/16 20/11
 21/4 27/4 27/12 28/17 33/25 34/2 35/3
two-third [1] 18/16
two-thirds [1] 20/11
type [5] 7/15 10/25 11/15 14/15 16/2
types [1] 7/9
typically [2] 12/3 15/14

**U**

under [1] 26/11
understand [10] 11/7 13/23 16/7 16/18
 18/18 20/5 20/19 24/24 30/19 33/16
understanding [10] 6/25 7/20 16/6
 17/12 17/21 28/14 31/13 31/20 33/10
 36/20
Unfortunately [1] 31/17
UNITED [3] 1/1 1/13 36/19
until [4] 12/14 12/16 15/9 29/13
up [8] 4/7 21/4 23/25 24/22 27/12
 30/16 31/7 33/21
upcoming [1] 28/23
update [3] 4/6 4/10 13/2
updates [1] 13/5
upload [1] 11/20

**U**

uploaded [1] 11/16
uploading [1] 11/19
upon [1] 17/9
us [29] 4/20 5/1 5/18 6/1 6/8 6/21 8/4
8/19 8/20 9/10 10/5 10/8 10/9 11/1
11/14 11/16 13/1 19/4 19/4 22/16
22/25 23/13 25/3 26/8 26/9 28/13
29/20 30/11 36/4
used [1] 25/11
using [4] 1/25 25/10 26/3 28/18

**V**

valid [1] 28/25
vast [1] 15/23
versus [1] 16/21
very [5] 5/4 5/20 11/3 12/24 21/10
vis [2] 3/18 3/18
vis-à-vis [1] 3/18
volume [2] 4/25 5/4

**W**

wait [1] 36/4
waiting [1] 3/19
waive [1] 35/17
want [14] 4/7 4/10 4/10 5/24 6/24 13/1
27/1 27/13 28/10 28/12 29/10 31/20
33/22 34/17
wanted [3] 14/8 23/11 35/9
wants [1] 32/10
was [19] 5/19 9/12 10/1 10/1 10/7 10/7
17/9 17/24 22/12 25/13 26/25 29/18
30/23 31/13 34/5 34/8 35/1 35/19
35/19
wasn't [1] 22/12
way [8] 8/2 8/13 8/14 10/1 32/21 35/1
35/10 35/21
we [183]
web [1] 8/1
website [2] 14/7 15/17
Wednesday [1] 34/11
week [6] 21/4 27/11 30/9 30/24 34/6
36/15
weeks [4] 13/3 13/4 33/25 34/2
welcome [2] 12/23 36/7
well [15] 4/15 4/24 10/3 10/11 17/11
19/1 24/8 24/15 26/23 29/10 32/7
32/14 33/4 35/14 36/14
went [5] 15/21 17/7 19/10 26/23 28/15
were [18] 4/21 6/8 6/11 7/11 9/20 10/5
15/21 15/21 17/8 17/15 23/2 27/6 27/8
28/18 30/2 31/14 33/3 34/8
what [38]
what's [4] 13/11 21/17 33/14 33/18
whatever [2] 13/4 34/6
when [11] 7/7 9/15 10/6 11/16 16/10
17/7 19/8 21/15 24/20 26/15 33/20
where [10] 3/22 7/13 8/7 9/21 13/2
16/21 23/1 23/7 24/11 36/9
whether [13] 3/21 9/9 10/22 10/23
10/24 11/3 12/16 24/5 24/6 24/12
25/16 26/25 27/12
which [13] 5/2 7/18 7/25 8/15 11/4
11/17 15/12 17/18 18/18 20/18 28/14
33/23 35/3
who [5] 27/23 28/9 31/15 33/5 34/25
why [8] 6/14 7/20 23/5 23/17 26/13
26/19 33/17 36/8
wide [1] 19/10
will [37]

willing [1] 33/8
wish [1] 22/5
withdraw [1] 33/2
within [1] 30/12
without [1] 12/20
witness [2] 34/25 35/21
witnesses [2] 28/3 36/2
won't [1] 28/24
wondering [2] 21/14 35/1
words [2] 15/25 33/3
work [7] 19/3 19/5 19/7 28/13 28/22
33/3 35/25
worked [4] 9/18 19/16 19/17 21/1
working [3] 14/2 15/22 21/8
works [3] 33/13 36/11 36/12
worse [1] 14/22
worst [1] 14/23
would [42]
wouldn't [3] 9/21 25/16 25/20
write [1] 21/23
wrong [1] 7/5
wrote [1] 7/5

**Y**

Yeah [10] 13/5 19/6 20/12 20/13 21/25
24/3 24/14 25/21 29/4 35/23
years [2] 15/12 26/5
Yep [2] 13/16 18/25
Yes [6] 3/23 12/22 19/13 26/22 29/5
33/7
yesterday [1] 3/13
yet [3] 10/10 29/23 35/8
York [1] 34/18
you [102]
you're [11] 8/17 10/8 10/14 11/8 12/23
14/15 16/8 16/11 25/22 29/3 36/7
your [58]
Your Honor [36] 3/7 3/10 5/5 6/3 9/7
10/16 12/22 16/24 17/10 17/22 18/8
18/11 19/2 20/13 22/5 22/21 23/6
23/20 23/24 24/3 24/19 25/15 27/18
27/25 28/17 29/24 30/8 31/1 31/2 32/3
32/7 33/10 33/25 34/18 35/18 36/12
Your Honor's [1] 31/25