# Exhibit 9

**Mary Anna Tabol**

| | |
|---|---|
| From: | Ken Feinberg |
| Sent: | Wednesday, July 21, 2010 1:05 PM |
| To: | Camille Biros; Jackie Zins |
| Subject: | FW: Oil Spill--GCCF protocol |
| Attachments: | Reduced&ConsldCmnts.doc; ExplnAreasConcern.doc |

-----Original Message-----
From: Felicia A. Guidry [mailto:FGG@juneaudavid.com] On Behalf Of Patrick A. Juneau
Sent: Wednesday, July 21, 2010 12:37 PM
To: Ken Feinberg
Cc: Kristy Nichols; Elizabeth Murrill
Subject: Oil Spill--GCCF protocol

Ken:

The recent town hall meetings you held in Louisiana were very helpful and provided us with additional insight into the program you were going to create and administer. The various concerns expressed by claimants confirmed for us that our initial comments on the draft protocol were on target.

For your ease of reference, I am enclosing the following:

   a)   Reduced and consolidated version of the State of Louisiana's comments to the GCCF draft protocol and

   b)   Further explanation on 3 of our noted comments.

As a follow-up to our conversation in Houma, Louisiana and your request, I will be providing you shortly with a description of the contents of reporting that the State would need to have during the administration of the GCCF. After you have had an opportunity to review that request, and if you have any questions, we would be pleased to meet you at any time that would be convenient for you.

The State of Louisiana stands ready to provide you with whatever assistance you deem helpful. We realize that your protocol will be a critical document in the process and we look forward to receiving it.


PATRICK A. JUNEAU
Juneau David, APLC
Post Office Drawer 51268
Lafayette, LA 70505-1268
Telephone: 337-269-0052
Facsimile: 337-269-0061
Email: paj@juneaudavid.com
       fgg@juneaudavid.com

1

# REDUCED AND CONSOLIDATED COMMENTS FROM THE STATE OF LOUISIANA ON GCCF DRAFT PROTOCOL

### SECTION I – Purpose

We would suggest you state the effective date that GCCF will take over the various claims offices operated by BP. We would also suggest that this section contain a statement as to when this protocol goes into effect.

### SECTION II – Eligibility

In the initial stages, citizens were cleaning oil on the shore on their own. Those costs incurred by the citizens should be recognized and paid. This specific situation will probably require an exception to the following rule as stated in the draft protocol: "the actions taken must be approved by the Federal On-Scene Coordinator and be consistent with the Nation Contingency Plan and were directed by the FOSC."

With regard to supporting documentation, we would suggest the heading read "Examples of Information or Documents Which May Be Submitted in Support of a Claim for Final Payment." We would further suggest for clarity purposes that you then move the examples contained in Exhibit A to each section under the types of damages.

### SECTION II B – Real or Personal Property

This section should indicate if losses will be considered at full replacement cost or will depreciation be considered.

This section should indicate if certified real estate appraisals are necessary and, if one is submitted, is the cost of that appraisal to be included?

This section should describe who or how a conflict is to be resolved if there is a dispute between the owner and lessee.

### SECTION II C – Loss Profits and Lost Earning Capacity

Examples of data or documents to be considered should include industry loss data provided by credible industry groups, e.g., fishing industry associations, hotel associations.

If there is any limit to be imposed on future losses, it should be stated.

### SECTION II E – Physical Injury of Death

Under proof required, we suggest you add "For death claims, proof of relationship between claimant and decedent."

A provision should be inserted to recognize a claim for psychological injury independent of physical injury.

Wrongful death claims, not just survival claims, should be compensable.

Under the paragraph that relates to information and documentation we would add:

a) For death claims, marriage certificates or other documentation establishing relationship between claimant and decedent; and
b) For death claims, funeral and burial expenses.

### SECTION II F – Causation

The section as written would leave out a number of legitimate claimants who are affected indirectly. Examples would restaurants, grocery stores, and net shops that are not located at the actual spill site, but are losing substantial business as a result of the spill.

### SECTION III – Appointment with a Claims Evaluator

The Claims Evaluator has an extremely critical role in determining the value of claims. What are the qualifications of a Claims Evaluator?

### SECTION IV A – Application for Emergency Payments – Eligibility

The opening sentence should say that the application for Emergency Advance Payments can be made now.

### SECTION IV C – Period for Application for Emergency Advance Payment

With respect to the deadline for an application for Emergency Advance Payment, we believe that the 90 day period is too short. Given that claimants will not likely be in a position to submit final claims for a considerable time, those claimants should be eligible for continued emergency payments during the interim. We should suggest that the period be 6 months instead of 90 days.

In addition to posting the date that the well has been closed on the GCCF website the GCCF should have a press release as to that date and consider publication of that date in the media. The notice should also specifically state that claimants have up to ___ days after the closure of the well to seek Emergency Advance

Payments and that no Emergency Advance Payment application will be considered after the ___ days.

Some provision should be made for the allowance of more than one 6 month period.

### SECTION V A 1 – Determination of Final Claims

Should include a provision that would not allow delay on determination that claim is sufficiently complete.

### SECTION V A 3 – Determination

The word guided should be changed to governed.

### SECTION V B – Notification of GCCF Decision

It would be helpful to the claimants if information sent in writing regarding the GCCF's decision would include not only a cover letter and a release, but also a detailed evaluation and/or statement of losses, identifying how the amounts of compensation were determined. Those calculations should include amounts determined as well as detailed dollar amounts addressing items which were not included, or were reduced or limited.

### SECTION V D – Appeals

The seven days for a claimant to appeal does not allow sufficient time to consider the decision. Thirty days should be given to both the claimant and BP.

BP, in order to act upon its right to appeal, should be required to pay the threshold amount of $500,000 and only appeal the excess amount. Is the $500,000 on a particular claim or aggregate?

The State wants to review the contents of the Release before it is used. The release should included language that claimant has right to consult with this own attorney.

### SECTION V F – Collateral Source Compensation

The governing collateral source rule in the applicable state shall govern.

### SECTION VI – Reporting

GCCF should submit reports to BP and the States. Working on what information the states would need.

### SECTION VII – Limitations

Should state in this section the precise date that the protocol is to be operative. It should be stated that the filing of a claim with the GCCF would interrupt all applicable statutes of limitations. BP should agree that all statute of limitations are interrupted during the pendency of claim with the GCCF.

### SECTION VIII – Privacy

It should be stated that the states would be entitled to "scrubbed data" containing no names, SNN, TIN or address information.

### **GENERAL COMMENTS**

1. Suggest appeals be assigned to one individual panelist of Appeal Board for ruling.
2. Provide flexibility to designate more than 3 individuals to Appeal Board.
3. Want to make clear that a claimant who has more than 1 claim must assert all claims in the submission. We assume there will be separate schedules for different claims.

# FURTHER EXPLANATION OF THREE AREAS OF CONCERN

1. **CAUSATION** (Section II F)

    The present language could exclude some very legitimate and meritorious claims in Louisiana. For example, a restaurant or marine supply house located in New Orleans, Houma, Morgan City, Port Sulfur, New Iberia and/or Slidell, Louisiana that had a true and significant drop in business because of the oil spill, may not be an eligible claimant. Due to this concern we would suggest you insert the following sentence after the first sentence in the causation section:
    > "The harm or damage cannot be remote or speculative and emphasis and consideration will be given to the claims from the directly affected states."

2. **LIMITATIONS** (Section VII)

    A real concern relates to the issue of statute of limitation (prescription). For example, assume that a Louisiana claimant would file a claim with the GCCF and it was not until 2 years later that the GCCF was in a position to make a final payment assessment of the claim. Further assume that the claimant elected to reject the GCCF assessment of the claim and to proceed with the filing of a lawsuit on his state claim. Under this scenario, it is likely that his claim would fall under the one year prescriptive statute. For this reason BP should agree to all statute of limitations being interrupted during the pendency of the claim with the GCCF.

3. **COLLATERAL SOURCE COMPENSATION** (Section V F)

    There are no taxpayer dollars being expended in this matter, as was the case in 9/11 and, therefore, the 9/11 methodology on collateral source should not apply. In this matter it logically followed that the applicable state collateral source rule should apply.