# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | *  MDL NO. 2179<br>*<br>*  SECTION J<br>* |
| This document relates to:<br><br>Nos. 10-2771; 10-4536 | *<br>*  HONORABLE CARL J. BARBIER<br>*<br>*  MAGISTRATE JUDGE SHUSHAN<br>* |

## REPLY BRIEF OF BP EXPLORATION & PRODUCTION INC. AND BP AMERICA PRODUCTION COMPANY IN SUPPORT OF THEIR MOTION TO AMEND THE FINDINGS, ALTER OR AMEND THE JUDGMENT, OR FOR A NEW TRIAL

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
Matthew Regan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Washington, DC 20005-5793
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorneys for BP Exploration & Production Inc. and BP America Production Company*

As BP explained in its opening brief, the findings entered by the Court on September 4, 2014, *see* Dkt. Entry 13355 (the "Order"), rely on excluded evidence linking compressive force to the alleged weakening and breach of the production casing. Rather than confront this fact, Halliburton and the government mischaracterize BP's position and rebut arguments that BP has not made. Because the casing-breach theory relies unfairly, but critically, on Dr. Beck's connection between compressive force and the breach that Beck "hadn't figured out" when he submitted his expert reports, Tr. 7142, and because none of the other record evidence establishes the casing-breach theory, the Court should reject that theory. As a result, at least half of the "multiple negligent acts" identified by the Order should be removed, and the Court should reject the multiple-acts finding and adjust BP's responsibility substantially downward.

## ARGUMENT

### I. The Casing-Breach Theory Rests On Excluded Evidence.

Halliburton and the government misrepresent the argument in BP's post-trial motion. BP is not challenging the admission of Dr. Beck's alleged observation that 140,000 pounds of compressive force may have been placed on the casing. *See* Tr. 7354. Instead, BP is challenging the Order's reliance on the purported connection between that observation and Dr. Beck's undisclosed opinion that such compressive force sufficiently weakened the casing such that it then breached during the float-collar conversion. *See*, *e.g.*, BP Br. 5. BP never "opened the door" to that alleged explanation, a theory that is the foundation of the Order's finding that the casing breached during the float collar conversion.

In contending otherwise, Halliburton and the government all but ignore BP's objections during Dr. Beck's direct examination, which provide important context for the later objections. During direct examination, Halliburton repeatedly attempted to admit evidence—including an animation and testimony from Dr. Beck—purporting to demonstrate a new link between com-

pressive force and the weakening and breach of the casing, Tr. 7137-7148, but the Court consistently sustained BP's objections to that evidence, Tr. 7142, 7146, 7148. Contrary to Halliburton's suggestion, *see* Hal. Br. 4 n.2, the Court unquestionably sustained BP's objections to both the animation *and* to Dr. Beck's testimony. After concluding that "[w]e are not going to the animation," Tr. 7146, and briefly allowing Dr. Beck to discuss his compressive-force observations, the Court made clear that the connection Dr. Beck was attempting to draw was inadmissible, sustaining BP's objection and stating: "I think we keep veering into stuff. If it's not in his report, it's not fair to be talking about it here," Tr. 7148.

On cross-examination, BP asked Dr. Beck about his observation of 140,000 pounds of compressive force, but BP never questioned him about the purported link between that observation and his ultimate conclusions regarding the casing breach. *See* Tr. 7354-56. Halliburton is thus mistaken in arguing that "BP's decision to cross-examine Dr. Beck regarding his compressive-force observations *and conclusions* opened the door and put any previously excluded testimony into the record." Hal. Br. 8 (emphasis added). BP's choice to cross-examine Dr. Beck about his compressive-load *observation* "does not give [Halliburton] unbridled license" to introduce evidence linking that observation to Dr. Beck's casing-breach conclusions "merely because it is in the same category of excludable evidence." *United States v. Martinez*, 988 F.2d 685, 702 (7th Cir. 1993) *see also Cal. Ins. Co. v. Allen*, 235 F.2d 178, 180 (5th Cir. 1956) (open-the-door doctrine allows admission of evidence only to the extent necessary to remove any unfair prejudice); *United States v. Brown*, 921 F.2d 1304, 1308 (D.C. Cir. 1990) ("[T]he range of otherwise-inadmissible evidence that may be squeezed through an 'open door' is limited.").

Consistent with the limited scope of the open-the-door doctrine, this Court excluded evidence linking Dr. Beck's compressive-force observation to a weakening and breach of the casing

during Halliburton's redirect examination. Dr. Beck again testified, without objection by BP, that he saw 140,000 pounds of compressive force. Tr. 7379. But when Dr. Beck attempted to connect that observation to a casing breach, and following Halliburton's renewed request to play the animation demonstrating the connection, BP objected, and the Court "maintain[ed] the objection." *Id.* at 7380-81. The context provided by the direct examination—which Halliburton and the government ignore—makes clear that the "objection" that the Court was "maintain[ing]" encompassed *both* the animation and Dr. Beck's testimony on the same undisclosed opinion, and not (as Halliburton claims) only "Dr. Beck's use of an animated demonstrative," Hal. Br. 4.

Moreover, because the excluded animation was part and parcel of Dr. Beck's attempt to connect compressive force to a casing breach—as Halliburton admitted, *see*, *e.g.*, Tr. 7146 ("Mr. Hill: Your Honor, that's exactly what the animation shows . . . . The Court: I thought that was a different question. Mr. Hill: Not really."); *id.* at 7380 ("[T]his is exactly what the animation . . . that you ruled that we wouldn't be able to play yesterday shows.")—it strains credulity to claim that BP was objecting solely to the animation, and not to Dr. Beck's testimony on the very same point. BP consistently objected to Dr. Beck's attempts to link his compressive-force observation to conclusions regarding casing weakening and breach, and the Court consistently sustained those objections. Because the Order's casing-breach theory nonetheless relies on this excluded evidence, that theory should be overturned.[1]

---

[1] Because BP reasonably and correctly understood the evidence linking compressive force to the alleged weakening and breach of the production casing to have been excluded, BP was unfairly surprised when that evidence formed the basis for the Order's reasoning and did not have "every opportunity" (U.S. Br. 19) to respond. BP also had no reason to "seek a continuance or offer rebuttal testimony" (Hal. Br. 22) to dispute *excluded* evidence. For similar reasons, BP could not reasonably have been expected to challenge Dr. Beck's excluded opinion under *Daubert* until it became clear that the Order had relied on that testimony.

3

## II.     No Other Evidence Establishes The Order's Casing-Breach Theory.

Contrary to the assertions of Halliburton and the government, no other evidence in the record links compressive force to a purported weakening and breach of the casing.  *First*, Dr. Beck's expert report is insufficient to support the casing-breach theory because, as Dr. Beck himself admitted at trial, his connection of compressive force to a casing breach is nowhere to be found in his reports.  *See*, *e.g.*, Tr. 7142 ("All my report states is that I feel like there was some type of failure in the shoe track, and at the time of the report, I hadn't figured out what that failure was yet.").  *Second*, as BP explained in its opening brief, and the opposition briefs fail to meaningfully dispute, Glen Benge and Bill Ambrose both refused to express an opinion on whether the casing breached, and the summary outline provided in Calvin Barnhill's expert report does not support any conclusion that the casing breached because of weakening caused by compressive load.  *See* BP Br. 9 n.2; *see also* U.S. Br. 10 n.9 ("Benge did not offer an opinion on whether such a breach did in fact occur . . . .").  Finally, the remaining evidence cited by the Order—including statements by Bob Kaluza, Brian Morel, Mark Hafle, and Preeti Paikattu, the alleged presence of debris, the data recorded after circulation, and testimony regarding cement placement—was merely deemed by the Court to be "consistent with" Dr. Beck's casing-breach theory, *see* Order ¶¶ 153, 156-57; none of this evidence provides direct support for the theory.[2]  Accordingly, without relying on excluded evidence regarding the purported link between compressive force and the casing breach, the Order's finding that the casing breached is unsupported in the record.

---

[2]   The argument that BP's competing flow-path theory is implausible because it requires hydrocarbons to flow through a fully-converted float collar (*see* Hal. Br. 18; U.S. Br. 15) ignores that the float collar is not a well-control barrier, *see* Dkt. Entry 10467, at 166.

4

### III. The Lack Of Evidentiary Support For The Casing-Breach Theory Is Fatal To The Order's Multiple-Acts Finding Of Gross Negligence And Also Warrants Revising The Order's Fault Allocation.

Because the casing-breach theory is unsupported by the evidence admitted at trial, the Court should amend the Order's determination that a series of negligent acts amounted to gross negligence and willful misconduct, and adjust BP's percentage of responsibility substantially downward.  *See* BP Br. 10-14.  In response to this argument, the government mischaracterizes BP's brief as contending that gross negligence "based on multiple negligent acts requires some threshold number of negligent acts or omissions."  U.S. Br. 16-17.  BP made no such argument.  Rather, BP's contention is that the removal of at least half of the "multiple negligent acts" cited by the Order compels rejection of the multiple-acts gross negligence finding on any standard.[3]  A series of related negligent acts often proves nothing more than negligence, and a plaintiff's obligation to prove the defendant's culpability is not lessened when the defendant made more than one mistake.  Because a series of mistakes must, as an entirety, meet the standard for gross negligence, *see AT&T Co. v. City of New York*, 83 F.3d 549, 556 (2d Cir. 1996) ("[A] series of mistakes alone, without a showing of recklessness, is insufficient for a finding of gross negligence." (citation omitted)); *see also Clements v. Steele*, 792 F.2d 515, 516 (5th Cir. 1986), and no such finding was made here, the removal of four acts means *a fortiori* that the remaining acts fall even further short of establishing gross negligence.

## CONCLUSION

For the foregoing reasons, BP respectfully requests that the Court amend the Order's findings, alter or amend the judgment, or—in the alternative—grant a new trial.

---

[3] To be clear, the government is also wrong to claim that "BP does not even dispute" the negligence findings as to the four remaining acts.  U.S. Br. 3.  BP made no such concession in its opening brief and reserves the right to challenge those findings on appeal.

5

Date: October 30, 2014                                    Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
Andrew Langan, P.C.
Hariklia Karis, P.C
Matthew Regan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Washington, DC 20005-5793
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorneys for BP Exploration & Production Inc. and BP America Production Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 30th day of October, 2014.

      /s/ Don K. Haycraft  
      Don K. Haycraft