UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig                             MDL NO. 2179
      "Deepwater Horizon" in the Gulf
      of Mexico, on April 20, 2010                SECTION J

Applies to: *All Cases*                                     JUDGE BARBIER
                                                           MAGISTRATE JUDGE SHUSHAN

## ORDER

**[Regarding Panel Meeting on: 1) Confidentiality of Budgetary Meetings and Documents and 2) Production of the McGladrey Audit Report and BP's Motion to Order Production of McGladrey Reports (Rec. doc. 13553)]**

By letter dated October 27, 2014, the Claims Administrator, Patrick Juneau, submitted to the Court for resolution two matters which could not be unanimously resolved pursuant to a three-person Claims Administration Panel meeting pursuant to Section 4.3.4 of the Economic and Property Damages Settlement Agreement.[1]

Mr. Juneau set forth the two issues as follows:

(i)     whether materials and information provided to the Parties for the purpose of BP's approval of the CAO budgets should be considered confidential [Class Counsel and the CAO believe they are, whereas BP believes they are not], and

(ii)    disputes relating to the issuance of the McGladrey Report [BP has demanded that it receive immediately the final McGladrey Report (which the CAO has not yet received) and all work papers related to it, whereas the CAO has informed BP and Class Counsel that once it receives the final report and has submitted it to the Court-Appointed Audit Committee, the CAO will deliver it to the Court and then make such further distributions as the Court may direct].

---

[1]     Section 4.3.4 provides:  A three-person Claims Administration Panel shall be established consisting of the Claims Administrator, one representative designated by Lead Class Counsel and one representative designated by BP.  Upon request of any member of the Claims Administration Panel, it shall address and attempt to resolve unanimously any issues or disagreements that arise regarding the Claims Administrator's oversight responsibilities, Settlement administration, or any other issue involving the Settlement Program.  Issues or disagreements that cannot be unanimously resolved by the Claims Administration Panel will be referred to the Court for resolution.

These matters are now before the Court for resolution. The record of the underlying disputes is attached to this order and made part of the record.[2]

## I. Budgetary Meetings and Documents

This is a new spin on an old issue. On June 18, 2013, Magistrate Judge Shushan attended a meeting with BP, Class Counsel and the Claims Administrator regarding the administration and expenses of the Settlement Program which is funded by BP. BP complained that the costs of the Settlement Program were significantly higher than expected. Judge Shushan issued a rule to show cause why the Claims Administrator's proposed Third Quarter budget should not be funded (rec. doc. 10949), and thereafter issued a ruling compelling the funding. Rec. doc. 10953. BP appealed that ruling and on August 7, 2013, the undersigned affirmed Judge Shushan's ruling and ordered BP to fund the Third Quarter 2013 budget in its entirety no later than Monday, August 12, 2013. Rec. doc. 10956. Looking forward, Judge Shushan ordered the Claims Administrator to submit its proposed quarterly budgets sixty (60) days prior to a budget quarter. Id. at 3.

Judge Shushan held a hearing on August 7, 2014, which preceded the ruling mentioned above, and, at the suggestion of counsel for BP, she said:

> I still think you all, meaning BP, should bring Ms. Travis [BP's Director of Claims] and other designees of BP down to meet with Mr. Levine [CFO of the Settlement Program]… and work out the format, work out the documentation, so that, going forward, BP gets what it's looking for in budget requests.

August 7, 2014 Tr. 82-83. Rec. doc. 10975.

---

[2] The record consists of the letter from Mr. Juneau dated October 27, 2014; the transcript of the Panel meeting held on October 22, 2014 (citation to the transcript will refer to Tr. ___); CAO Exhibit 1 relating to issue (i); and CAO Exhibit 1.0 relating to issue (ii).

Section 5.12.1.4 of the Settlement Agreement requires that BP fund the Settlement Program:

> In accordance with an administrative expense budget to be developed by the Claims Administrator, subject to the reasonable approval of the BP parties and Lead Class Counsel (the "Administrative Budget").

Thus, the Claims Administrator prepares the budget and submits it to the parties for their review and reasonable approval. The budget provision of the Settlement Agreement does not speak in terms of what data the parties are entitled to or whether such data should be treated as confidential information. What is clear is that before the dispute on funding the Third Quarter 2013 budget, BP and the Claims Administrator's office exchanged emails containing one page budgets and there was no discussion of supporting documentation or confidentiality. See August 7, Tr. 43-44. Rec. doc. 10975. What did happen after the hearing with Judge Shushan, is that the parties (the Claims Administrator, BP, and Class Counsel) entered into a Confidentiality Agreement in September 2013 whereby the parties expressed a willingness to enter into additional discussions related to the confection of the Fourth Quarter budget and agreed that they would keep confidential any information communicated after the execution of the agreement, specifically and exclusively relating to the Fourth Quarter budget issue and the operational audit. This agreement is attached to CAO Exhibit 1.0. Thus, all discussions and information, data, and analytics, exchanged with regard to resolving the Fourth Quarter budget issue was and remains confidential.

Thereafter, BP was provided with information that the settlement agreement does not otherwise provide it is entitled to. The issue of confidentiality did not come up again until July 2014. On July 21, 2014, the parties amended the aforementioned Confidentiality Agreement (the "Amendment") and acknowledged that:

3

> All "workstream" meetings and "stakeholders" meetings conducted among the Parties (whether or not formerly designated as such) are and shall be included within the definitions of "Settlement Meetings" and "Settlement Discussions" for all purposes under the Confidentiality Agreement, and that information communicated at or incident to those meeting shall be included within the definition of "Confidential Information".

By the time that this Amendment was executed, the Fourth Quarter budget issue had long since been resolved. And since the original September 2013 Confidentiality Agreement was focused on budget issues only, the Amendment clearly encompassed budget issues and then went further and broadened the agreement to include other information the parties would share on a confidential basis. It is with this backdrop that, at the panel meeting held on October 22, 2014, Mr. Juneau stated:

> My position in this matter is that the budget meetings are, and should be, incorporated within the context or within the purview of the confidentiality agreement.

Tr. 3-4.

At the panel meeting, Mr. Holstein (Managing Counsel for BP) and Mr. Moskowitz (outside counsel for BP) stated:

> [T]he cost of this facility and the way the money gets spent is something the public is entitled to know. And the presumption should be because this is a federally court-supervised settlement program that there isn't any confidentiality.

\* \* \*

Tr .5.

> [W]e think the law is, that the presumption here is that everything you submit to us currently in connection with the budget is not confidential.

\* \* \*

Tr. 14.

4

At the panel meeting, BP further asserted that the purpose of the Confidentiality Amendment was that the Claims Administrator's office would not schedule meetings with regard to Policy 495 without an extension of the Confidentiality Agreement. It argues that the extension of the agreement did not cover budgetary meetings, discussions and preliminary documents. As Mr. Moskowitz stated:

> "Otherwise it was going to get pulled because there's always been a *quid pro quo*, if you want this transparency into the facility, you have to agree to keep it confidential. If you don't agree to keep it confidential, you don't get the transparency."

Tr. 44-45.

Class Counsel, when asked to express their opinion stated:

> That settlement agreement, while it's court-supervised, I think is very distinguishable from other functions of a court in a way that a court works. The main thing being that this is not funded by tax-payer dollars. This is funded by agreement voluntarily by BP as a trust, even though it's supervised by the Court.

Tr. 15.

BP receives all of the information it needs to evaluate the Settlement Program budget in the various meetings conducted by the Claims Administrator with it and Class Counsel. There is no "public interest" in the exchange of information at these work meetings leading to the preparation of a final budget for the Settlement Program. Mr. Juneau correctly stated that budget meetings are part of the Amended Confidentiality Agreement and that "the whole concept of what they were doing incorporates these budget meetings we've had." Tr. 36.

As Mr. Juneau stated:

> "Just explain to me why for your analysis and for BP's consideration. We have given you what you've asked for. Why is that not enough? Because you've got what you've asked for."

Tr. 48.

5

Here is Mr. Juneau's summary:

> We have obligations, this office has an obligation to provide certain budget information which I have indicated and am indicating we would conform to. I'm telling you that the additional information, the detail of information, is the result of all these numerous meetings in an effort to cooperate with everybody and give people information. It's far beyond which would be in a normal budget submission.

Tr.55.

Mr. Juneau is correct. The Amendment covers budget meetings and numerous other meetings involving exchange of information that have been held over the past year ("workstream" and "stakeholders" meetings). All data, discussion and information exchanged pursuant to those meetings are confidential and may not be disclosed beyond the parties who participated in those meetings. If BP chooses to terminate the Confidentiality Agreement and the Amendment, it may do so (see Section 5 of the Confidentiality Agreement). In doing so however, the budget meetings, workstream meetings, and stakeholder meetings may, in the Claims Administrator's discretion, terminate.

## II.   The McGladrey Audit

The second issue covered at the panel meeting involved the dispute over the independent audit by McGladrey LLP.[3] Mr. Juneau reported at the panel meeting that he did not have the final report from the auditing firm and that he expected that he would have it by the time of the scheduled Audit Committee meeting set for November 14. Thereafter, he explained that he intended to present the report to the Court and follow any subsequent instructions from the Court

---

[3] All documents referred to in this discussion are contained in CAO Exhibit 1.0 to the panel meeting transcript.

BP, in addition, also filed a Motion to Order Production of McGladrey Reports. Rec. doc. 13553. This order disposes of that motion. In the future, BP is instructed that if an issue is the subject of a panel meeting it should not also file a motion on the issue with the Court.

regarding distribution. Tr. 59-60.

BP's position is that the Settlement Program should be subject to both internal and external auditing functions and that the results of such auditing should be made available to the parties and to the public. BP states that it finds it "incredible" that a final report has not been issued and asserts that it has been publicly reported that the report is in the hands of the Claims Administrator. Tr. 73. BP believes that whether it is "final" or "non-final" there is a report and "[h]ence, our request in our letter for work papers, …. and our request stands." Id. Finally, BP states that it "simply does not agree that the results of this audit of a federally-court-supervised claims facility should not be public." Tr. 75. See also the letter of October 10, 2014 from Randy Lutta (CFO of BP Gulf Coast Restoration Organization) to Mr. Juneau requesting McGladrey's working papers and final report be produced to BP.

The Court agrees with Mr. Juneau's projected course of action. When the final McGladrey report is delivered to the Claims Administrator, he will provide it to the Audit Committee and to the Court. Thereafter, the Court will instruct Mr. Juneau regarding further distribution of the report and any work papers.

### III. Conclusion

Accordingly, the Court affirms the Claims Administrator's position on both issues raised at the panel meeting of October 22, 2014. Further, BP's motion to order production of the McGladrey reports (rec. doc. 13553) is DENIED as MOOT.

New Orleans, Louisiana, this 31st day of October, 2014.

CARL J. BARBIER  
United States District Judge