# CAO Exhibit 1

## Rebecca Foreman

| | |
|---|---|
| **From:** | Rebecca Foreman on behalf of Patrick Juneau |
| **Sent:** | Wednesday, October 08, 2014 2:57 PM |
| **To:** | Steve Herman (SHERMAN@hhklawfirm.com); Mark Holstein (Mark.Holstein@bp.com); 'James Roy (jimr@wrightroy.com)' (jimr@wrightroy.com); Moskowitz, Keith |
| **Subject:** | October 16th at 1:00pm Panel Meeting on Confidentiality of Budgetary/Financial Data |
| **Attachments:** | Budget Documents.pdf |

In furtherance of my email yesterday, pursuant to Section 4.3.4 of the Settlement Agreement I am now scheduling a Panel Meeting on Thursday, October 16, 2014 at 1:00 p.m. at this office in suite 1905. A court reporter will be present.

The disputes to be addressed, relate to the differences of opinion between Class Counsel and the Claims Administrator on the one hand, and BP on the other hand, regarding (i) the confidentiality of budget and financial meetings and discussions, and (ii) documents and reports disseminated prior to, during and subsequent to any such meetings or discussions (all, collectively "Financial Information"). The Parties' positions as to these issues are set forth generally in the following (copies of which are attached for convenience):

- The Claims Administrator's September 10, 2014 email;

- BP's October 4, 2014 letter; and

- Class Counsel's October 5, 2014 email.

In addressing and attempting to resolve the disputes, I believe that a discussion of the following issues will also be useful:

1. How would any Party be prejudiced if the Financial Information is considered to be confidential?

2. For what purposes would the Financial Information be used beyond a determination of the appropriate budgets to be approved?

PATRICK A. JUNEAU
Claims Administrator

1

## Gabrielle Town

| | |
|---|---|
| **From:** | Rebecca Foreman on behalf of Patrick Juneau |
| **Sent:** | Tuesday, October 07, 2014 1:31 PM |
| **To:** | Mark Holstein (Mark.Holstein@bp.com); Moskowitz, Keith; 'James Roy (jimr@wrightroy.com)' (jimr@wrightroy.com); Steve Herman (SHERMAN@hhklawfirm.com) |
| **Subject:** | Budget Meeting |

Because of the disputes regarding the confidentiality of budgetary information, the meeting scheduled for tomorrow, October 8, has been cancelled. Instead, I will schedule shortly a Panel Meeting in accordance with Section 4.3.4 of the Settlement Agreement, at which a court reporter will be present. I will circulate in advance of the meeting a more specific description of the issues in dispute.

**PATRICK A. JUNEAU**
Claims Administrator

This email (and any attachments) is confidential and is intended for use solely by the properly named addressee. If you are not the intended recipient, any use, dissemination, forwarding, copying or printing of this email without the consent of the originator is strictly prohibited. Although this email (and any attachments) are believed to be free of any virus or other defect, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this email in error, please immediately notify the sender by reply email or by telephone at 504-934-4999.

## J. David Forsyth

| | |
|---|---|
| **From:** | J. David Forsyth |
| **Sent:** | Wednesday, September 10, 2014 1:43 PM |
| **To:** | 'keith.moskowitz@dentons.com' |
| **Cc:** | "Maria.Travis@bp.com' (Maria.Travis@bp.com)'; 'Holstein, Mark E (Mark.Holstein@bp.com)'; 'Steve Herman (SHERMAN@hhklawfirm.com)'; 'jlmr@wrightroy.com'; 'John Creevy (jcreevy@hhklawfirm.com)'; 'Tommy Thomassie (TommyT@wrightroy.com)'; 'rblack@dheclaims.com'; 'Bob Levine (blevine@dheclaims.com)'; Doug Hart; 'Michael Juneau (mjuneau@dheclaims.com)'; 'pjuneau@dheclaims.com'; 'Patrick Hron (phron@dheclaims.com)' |
| **Subject:** | FW: Budget Meeting |

Keith:

I understand that an issue arose this morning at the outset of the proposed budget meeting as to its confidentiality. I was informed that the Claims Administrator requested confirmation by all attendees that (a) all discussions at the meeting, and (b) all documents produced or disclosed at or in connection with the meeting, would be kept confidential under the existing confidentiality agreement(s). Class Counsel agreed with that view but BP expressed disagreement. As a result, the meeting was discontinued.

As you know, on July 21, 2014 BP, Class Counsel and the Claims Administrator signed an amendment (the "Amendment") to the September 26, 2013 Confidentiality Agreement, reciting:

*"The Parties acknowledge and agree that all 'workstream' meetings and 'stakeholders' meetings conducted among the Parties (whether or not formally designated as such) are and shall be included within the definitions of 'Settlement Meetings' and 'Settlement Discussions' for all purposes under the Settlement Agreement, and that information communicated at or incident to those meetings shall be included within the definition of 'Confidential Information'"* [emphasis supplied].

Though to our knowledge the terms "workstream" meetings and "stakeholders" meetings have not been formally defined in any writings, they have been used frequently by the parties to differentiate between the scope of meetings held among the parties. "Workstream" meetings have been those at which the Claims Administrator provides detailed information as to various aspects of the operations of the CSSP (whether pertaining to IT, process, financial, claims, policies, FWA and otherwise), followed by an exchange of questions, answers and general discussion about the issues presented. "Stakeholders" meetings have been those at which similar and additional information is presented and discussed at a less detailed level – more of an overview. Though both categories of meetings might address a variety of subjects and issues, they have been described as one or the other, without regard to the specific subject matter to be covered. And indeed, since the terms have not been formally defined, the Amendment specifically made reference to both "workstream" meetings and "stakeholders" meetings *(whether or not formally designated as such)* for that very reason. A meeting to discuss budgetary issues (and for which detailed financial information and documents are provided), is but one of the series of meetings conducted by the Claims Administrator with the parties to provide information, followed by an exchange of questions and answers. As such, the Claims Administrator (and as stated this morning, Class Counsel) have always considered these meetings be confidential. We were surprised to hear that BP may not share that view.

In any event, before proceeding with budget meetings or any other similar informational meetings, the Claims Administrator will require an acknowledgement by both BP and Class Counsel that the meetings and related documents are considered to be confidential and subject to the terms and conditions of the Confidentiality Agreement, as amended by the Amendment. Upon your written confirmation of this understanding, the budget meeting can resume or be rescheduled. If either BP or Class Counsel is not willing to acknowledge the confidential nature of this meeting – or indeed any other "workstream" or "stakeholders" meetings *(whether or not formally designated as such)* – the Claims Administrator will have to consider discontinuing such meetings in the future.

1

We understand that BP has acknowledged that the two meetings scheduled for this afternoon beginning at 2:00 p.m. (and any documents produced or disclosed thereat) are confidential and do fall within the scope of the Confidentiality Agreement, as amended by the Amendment. Therefore the Claims Administrator will be pleased to continue with those meetings as scheduled. We will ask for confirmation of this understanding at the outset of the meetings.

Thanks.

-david-

**Gabrielle Town**

| | |
|---|---|
| **From:** | James Roy <JIMR@wrightroy.com> |
| **Sent:** | Wednesday, September 10, 2014 3:27 PM |
| **To:** | Steve Herman |
| **Cc:** | J. David Forsyth; keith.moskowitz@dentons.com; 'Maria.Travis@bp.com' (Maria.Travis@bp.com); Holstein, Mark E (Mark.Holstein@bp.com); John Creevy; Tommy Thomassie; Randall Black; Bob Levine; Doug Hart; Michael Juneau; Patrick Juneau; Patrick Hron |
| **Subject:** | Re: BP. Budget Meeting |

Agree

James Parkerson Roy
Cel- 337.278.7892
Jimr@wrightroy.com

On Sep 10, 2014, at 3:18 PM, "Steve Herman" <SHERMAN@hhklawfirm.com> wrote:

> My recollection is that the entire "Workstream" process (including both the "Budget" meetings and the "Stakeholders" meetings) evolved out of the 2013 4Q Budget dispute, and Judge Shushan's suggestion that the Parties work with the Program, and the Freeh Group, to try to address some of BP's budgetary / efficiency questions and concerns.
>
> **From:** James Roy [mailto:JIMR@wrightroy.com]
> **Sent:** Wednesday, September 10, 2014 3:09 PM
> **To:** J. David Forsyth
> **Cc:** keith.moskowitz@dentons.com; 'Maria.Travis@bp.com' (Maria.Travis@bp.com); Holstein, Mark E (Mark.Holstein@bp.com); Steve Herman; John Creevy; Tommy Thomassie; rblack@dheclaims.com; Bob Levine (blevine@dheclaims.com); Doug Hart; Michael Juneau (mjuneau@dheclaims.com); pjuneau@dheclaims.com; Patrick Hron (phron@dheclaims.com)
> **Subject:** BP. Budget Meeting
>
> Class Counsel agree with Admin request for confidentiality. Jim
>
> James Parkerson Roy
> Cel- 337.278.7892
> Jimr@wrightroy.com
>
> On Sep 10, 2014, at 1:45 PM, "J. David Forsyth" <jdforsyth@sessions-law.com> wrote:
>
>> Keith:
>>
>> I understand that an issue arose this morning at the outset of the proposed budget meeting as to its confidentiality. I was informed that the Claims Administrator requested confirmation by all attendees that (a) all discussions at the meeting, and (b) all documents produced or disclosed at or in connection with the meeting, would be kept confidential under the existing confidentiality agreement(s). Class Counsel agreed with that view but BP expressed disagreement. As a result, the meeting was discontinued.

1

As you know, on July 21, 2014 BP, Class Counsel and the Claims Administrator signed an amendment (the "Amendment") to the September 26, 2013 Confidentiality Agreement, reciting:

*"The Parties acknowledge and agree that all 'workstream' meetings and 'stakeholders' meetings conducted among the Parties **(whether or not formally designated as such)** are and shall be included within the definitions of 'Settlement Meetings' and 'Settlement Discussions' for all purposes under the Settlement Agreement, and that information communicated at or incident to those meetings shall be included within the definition of 'Confidential Information'" [emphasis supplied].*

Though to our knowledge the terms "workstream" meetings and "stakeholders" meetings have not been formally defined in any writings, they have been used frequently by the parties to differentiate between the scope of meetings held among the parties. "Workstream" meetings have been those at which the Claims Administrator provides detailed information as to various aspects of the operations of the CSSP (whether pertaining to IT, process, financial, claims, policies, FWA and otherwise), followed by an exchange of questions, answers and general discussion about the issues presented. "Stakeholders" meetings have been those at which similar and additional information is presented and discussed at a less detailed level – more of an overview. Though both categories of meetings might address a variety of subjects and issues, they have been described as one or the other, without regard to the specific subject matter to be covered. And indeed, since the terms have not been formally defined, the Amendment specifically made reference to both "workstream" meetings and "stakeholders" meetings *(whether or not formally designated as such)* for that very reason. A meeting to discuss budgetary issues (and for which detailed financial information and documents are provided), is but one of the series of meetings conducted by the Claims Administrator with the parties to provide information, followed by an exchange of questions and answers. As such, the Claims Administrator (and as stated this morning, Class Counsel) have always considered these meetings be confidential. We were surprised to hear that BP may not share that view.

In any event, before proceeding with budget meetings or any other similar informational meetings, the Claims Administrator will require an acknowledgement by both BP and Class Counsel that the meetings and related documents are considered to be confidential and subject to the terms and conditions of the Confidentiality Agreement, as amended by the Amendment. Upon your written confirmation of this understanding, the budget meeting can resume or be rescheduled. If either BP or Class Counsel is not willing to acknowledge the confidential nature of this meeting – or indeed any other "workstream" or "stakeholders" meetings *(whether or not formally designated as such)* – the Claims Administrator will have to consider discontinuing such meetings in the future.

We understand that BP has acknowledged that the two meetings scheduled for this afternoon beginning at 2:00 p.m. (and any documents produced or disclosed thereat) are confidential and do fall within the scope of the Confidentiality Agreement, as amended by the Amendment. Therefore the Claims Administrator will be pleased to continue with those meetings as scheduled. We will ask for confirmation of this understanding at the outset of the meetings.

Thanks.

-david-

2



October 4, 2014

Mr. Randall Black
Deepwater Horizon Settlement Program
935 Gravier St
New Orleans, LA 70130

Dear Randy,

This responds to David Forsyth's September 10, 2014 e-mail regarding confidentiality over the CSSP budget. We respectfully disagree with the Claims Administrator's position that the CSSP budget is subject to the September 26, 2013 Confidentiality Agreement for the reasons set forth below and urge the Claims Administrator to reconsider his position. The budget meetings should be reinstated and proceed on a non-confidential basis.

Mr. Forsyth's e-mail, and an responding e-mail from Steve Herman, represents the first time that the Claims Administrator and Class Counsel have taken the position that budget meetings are subject to the September 26, 2013 Confidentiality Agreement.

As you know, under Section 5.12.1.4, BP is entitled to (1) a monthly budget of administrative expenses (to which BP has the right to approve or object to); (2) invoices from the claims administrative vendors to which BP has a right to object or raise concerns about; and (3) a monthly report of administrative expenses at such a level of detail as BP reasonably requests and a reconciliation of those payments against the administrative budget. The Settlement Agreement imposes no confidentiality restriction over this budget information that the Claims Administrator is required to provide to BP and that includes all of the information that the Claims Administrator has been providing to BP through the ongoing budget meetings and related processes. Withholding this information on confidentiality grounds is contrary to the plain terms of the Settlement Agreement.

The September 26, 2013 Confidentiality Agreement does not in any way limit BP's rights under Section 5.12.1.4 of the Settlement Agreement, including to the enumerated budget information. Under the Confidentiality Agreement, only information "specifically and exclusively related to the Q4 Budget Issue and/or Operational Audit" (Agreement, Section 1.c.) is confidential. The Q4 Budget Issue is expressly limited to "(i) specific amounts proposed in the Q4 2013 budget for claims administration within the 4th Quarter of 2013, and (ii) the development of the Operational Audit." (Agreement, Section 1.f) Accordingly, the budget meetings the parties have been conducting after the Q4 2013 budget are clearly not subject to the Confidentiality Agreement and the provision of such information is required under the Settlement Agreement. In fact never in the course of those meetings did you reference them as confidential.

Mr. Forsyth refers to the July 21, 2014 amendment to the Confidentiality Agreement and correctly recognizes that this amendment does not include any reference to the budget meetings. Instead, as he points out, the amendment does nothing more then confirm that the workstream and stakeholder meetings are subject to the Confidentiality Agreement. BP has never disputed that

position. However, the Claims Administrator's position is that because the term "workstream" meeting is not defined it can be read to include the budget meetings. This position is not only completely inconsistent with the express terms of the Confidentiality Agreement, as explained above, it also is completely divorced from the creation and operation of the workstream meetings.

The budget meetings were ongoing long before the Confidentiality Agreement was executed. It was only after the Confidentiality Agreement was executed that the work stream and stakeholder meetings were created and commenced. In fact, the Claims Administrator would not agree to even hold these meetings unless BP executed the Confidentiality Agreement. In contrast, the Claims Administrator never demanded -- until now -- that BP execute a confidentiality agreement in order to attend meetings about the CSSP's budget. As noted above, the Claims Administrator held various budget meetings before the Confidentiality Agreement was executed.

The distinction between the budget meetings and workstream meetings could not be more clear through the Claims Administrator's own documents and communications. The handouts that the Claims Administrator's Office provide in the Business Process, IT and Fraud meetings are clearly notated with the term "workstream". The same is even true for the meeting notices that the Claims Administrator's Office issues which call these workstream meetings. No budget meeting document has ever been so notated. This is not surprising because the budget meetings are clearly not subject to the Confidentiality Agreement (as explained above) and were accordingly never deemed workstream meetings by either the Claims Administrator or the parties.

It is critically important that this Court supervised settlement program operate in a transparent manner. We are alarmed by the Claims Administrator's change in position to now contend that the CSSP's budget can only be discussed behind closed doors and shrouded in secrecy. In fact, the Claims Administrator's new position is so sweeping that even the actual CSSP budget must be kept secret from the public. The timing of the Claims Administrator's decision is also troubling as it comes immediately on the heels of e-mails from Steve Herman challenging the use of information from the CSSP's budget in a recent declaration of Todd Brents that was filed with the Court. Class Counsel, through Mr. Herman, has been engaged in an aggressive effort to shut down transparency into the CSSP's operations and essentially turn the CSSP into a black box. If Claims Administrator maintains his position that the CSSP's core budget activities can only be provided to the parties under the cloak of confidentiality a critical aspect of this public facing court supervised program will, in fact, be a black box.

I trust that you will give all due consideration to the points made above and resume the budget meetings in a transparent fashion to the benefit of the parties, the public and the Court. We ask that the budget meetings be reinstated and proceed on a non-confidential basis.

Sincerely,

*Maria Travis*

Maria Travis
Director of Claims – GCRO


Cc: Steve Herman
James Roy
Mark Holstein
Keith Moskowitz

**J. David Forsyth**

| | |
|---|---|
| From: | Steve Herman <SHERMAN@hhklawfirm.com> |
| Sent: | Sunday, October 05, 2014 4:00 PM |
| To: | 'Randall Black' |
| Cc: | Jim Roy; 'Patrick Juneau'; 'M Juneau'; 'Bob Levine' (blevine@dheclaims.com); J. David Forsyth; Phil Wittmann (pwittmann@stonepigman.com); rcs@stanleyreuter.com; 'Holstein, Mark E'; Moskowitz, Keith (keith.moskowitz@dentons.com); 'Travis, Marla T' |
| Subject: | BP Oil - Budget Meetings, etc |
| Attachments: | Budget 100414.pdf |

Dear Randy,

My recollection, for whatever it's worth, is that when BP was compelled to fund the 2013 4Q Administrative Budget over BP's objection, Judge Shushan suggested that the Parties work with the Freeh Group and the Claims Administrator's Staff to attempt to address some of the questions that had been raised by BP. The Freeh Group, (likely due to BP's public, repeated and bad faith attacks on the Claims Administrator and his staff and other activities in violation of Sections 9.1, 16.1 and 17.1 of the Settlement Agreement), suggested that such Budget Meetings be kept confidential, to which BP agreed. These Budget Meetings seemed to expand beyond what is contemplated in Section 5.12.1.4 (cited in Ms. Travis' October 4, 2014 correspondence), and were almost immediately supplemented with additional Workstream and Stakeholders' Meetings, to which Class Counsel repeatedly objected as inconsistent with the intent and agreement that Claims would be processed independently of access, direction, discussion, investigation, or other influence of BP, (whose rights with respect to the determination or denial of Claims were limited to those provided in the Appeal Process outlined in Section 6 of the Settlement Agreement). At some point, I believe that it was suggested that all of the Workstream and Stakeholder discussions -- as well as the Budget Meetings -- should be kept confidential, and BP agreed. Class Counsel continue to object to Workstream, Budget and Stakeholders' Meetings, to the extent that they directly or indirectly relate to the submission, evaluation, investigation, determination and/or denial of Claims. BP's rights with respect to Administrative Budgetary information are defined and limited to the information identified in Section 5.12.1.4 of the Settlement Agreement. Yet, to the extent that the Program continues to accommodate BP by inviting BP representatives to Workstream, Budget, Stakeholders, and/or other Meetings, it is appropriate, in our view, for the Program to continue to ask BP to abide by its prior agreements regarding confidentiality, (as BP continues to make public statements and submit court filings in violation of Sections 9.1, 16.1 and 17.1 of the Settlement Agreement). To the extent my recollection is incorrect, I apologize.

Thanks, and best wishes, - Steve

**From:** Travis, Marla T [mailto:Marla.Travis@bp.com]
**Sent:** Saturday, October 04, 2014 12:13 PM
**To:** Randall Black (rblack@dheclaims.com)

1

**Cc:** Holstein, Mark E; Moskowitz, Keith; Steve Herman; James Roy
**Subject:** Budget Meetings

Randy,

Please see attached.

Thanks,

*Maria*

**Maria T. Travis**
Director of Economic Restoration – GCRO

Eldridge 3 6.145C
Tel: 281-366-5928
Cell: 281-935-4271




CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged information intended
solely for the addressee. Please do not read, copy, or disseminate it unless
you are the addressee. If you have received it in error, please call us
(collect) immediately at (504) 581-4892 and ask to speak with the message
sender. Also, we would appreciate your forwarding the message back to us and
deleting it from your system. Thank you.



**DEEPWATER HORIZON CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

# AMENDMENT TO SEPTEMBER 26, 2013 CONFIDENTIALITY AGREEMENT

Reference is made to the September 26, 2013 Confidentiality Agreement (the "Confidentiality Agreement") entered into by and among the BP Parties, Class Counsel and the Claims Administrator (as those terms are defined therein, collectively, the "Parties"). The Parties acknowledge and agree that all "workstream" meetings and "stakeholders" meetings conducted among the Parties (whether or not formally designated as such) are and shall be included within the definitions of "Settlement Meetings" and "Settlement Discussions" for all purposes under the Confidentiality Agreement, and that information communicated at or incident to those meetings shall be included within the definition of "Confidential Information."

BP Exploration and Production, Inc.

BP America Production Company

By: _____

Title: MANAGING COUNSEL

Date: July 21, 2014

Claims Administrator

By: _____

Title: _____

Date: July 21, 2014

Class Counsel

By: _____

Name: _____

Date: July 21, 2014



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

## AMENDMENT TO SEPTEMBER 26, 2013 CONFIDENTIALITY AGREEMENT

Reference is made to the September 26, 2013 Confidentiality Agreement (the "Confidentiality Agreement") entered into by and among the BP Parties, Class Counsel and the Claims Administrator (as those terms are defined therein, collectively, the "Parties"). The Parties acknowledge and agree that all "workstream" meetings and "stakeholders" meetings conducted among the Parties (whether or not formally designated as such) are and shall be included within the definitions of "Settlement Meetings" and "Settlement Discussions" for all purposes under the Confidentiality Agreement, and that information communicated at or incident to those meetings shall be included within the definition of "Confidential Information."

BP Exploration and Production, Inc.

BP America Production Company

By: _____

Name: _____

Title: _____

Date: July 21, 201

Claims Administrator

By: _____

Name: _____

Title: _____

Date: July 21, 2014

Class Counsel

By: _____

Name: *Stephen J. Herman*

Date: July 21, 2014


**DEEPWATER HORIZON CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

## AMENDMENT TO SEPTEMBER 26, 2013 CONFIDENTIALITY AGREEMENT

Reference is made to the September 26, 2013 Confidentiality Agreement (the "Confidentiality Agreement") entered into by and among the BP Parties, Class Counsel and the Claims Administrator (as those terms are defined therein, collectively, the "Parties"). The Parties acknowledge and agree that all "workstream" meetings and "stakeholders" meetings conducted among the Parties (whether or not formally designated as such) are and shall be included within the definitions of "Settlement Meetings" and "Settlement Discussions" for all purposes under the Confidentiality Agreement, and that information communicated at or incident to those meetings shall be included within the definition of "Confidential Information."

BP Exploration and Production, Inc.

BP America Production Company

By: _____

Name: _____

Title: _____

Date: July 21, 201

Claims Administrator

By: _____

Name: Patrick A. Juneau

Title: Claims Administration

Date: July 21, 2014


Class Counsel

By: _____

Name: _____

Date: July 21, 2014

## CONFIDENTIALITY AGREEMENT

This CONFIDENTIALITY AGREEMENT (this "Agreement") dated as of September __, 2013 is entered into by and between certain parties in connection with the *Deepwater Horizon* Economic Damage and Property Loss Settlement Agreement (the "Settlement Agreement"), namely, the BP Parties[1], Class Counsel and the Claims Administrator, all as defined in the Settlement Agreement, in connection with the parties' Settlement Discussions related to the Q4 Budget Issue and the Operational Audit, each as defined below.

### RECITALS

A. The Settlement Agreement provides that "all reasonable and necessary expenses incurred in connection with the operation of the Settlement Program" shall be paid by the Claims Administrator from the Administrative Expense Fund. (Settlement Agreement ¶ 5.12.1.1.3) The BP Parties must fund the Administrative Expense Fund "in accordance with an administrative expense budget to be developed by the Claims Administrator, subject to the reasonable approval of the BP Parties and Lead Class Counsel . . . ." (*Id.* ¶ 5.12.1.4)

B. The BP Parties, Class Counsel and the Claims Administrator have engaged in a series of discussions, informational exchanges and briefing pursuant to the Court's August 8, 2013 Order, establishing the process for developing the Q4 budget. (Rec. Doc. 10955)

C. On August 28, 2013, the Claims Administrator submitted to the BP Parties a proposed $131.2 million Q4 2013 budget. The BP Parties have taken the position that the proposed Q4 budget is unreasonable and have withheld consent.

D. The Claims Administrator has contracted with the firm of Clifton Larsen Allen LLP ("CLA") to conduct an audit of certain issues within the CSSP. An operational review and examination and/or audit of the operations of the CSSP (as defined below) also will be performed by CLA or another auditor that will provide findings with respect thereto (collectively, the "Operational Audit").

E. The BP Parties, Class Counsel and the Claims Administrator are willing to enter into additional discussions related to the settlement of the Q4 Budget Issue (as that term is defined below) and the Operational Audit, with the Special Master serving in the role as mediator of the Settlement Discussions.

---

[1] BP Exploration and Production, Inc. and BP America Production Company.

F. Before entering into Settlement Discussions, the Claims Administrator requests certain confidentiality provisions related to maintaining the confidentiality of such additional discussions, as provided herein.

NOW, THEREFORE, in consideration of the promises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the BP Parties, Class Counsel and the Claims Administrator hereby agree as follows:

1. **Definitions.**

a) "Settlement Discussions" means communications made after the execution of this Agreement between or among one or more of the BP Parties, Class Counsel, the Claims Administrator, the Special Master and/or their counsel, experts, consultants, staff or assistants during or expressly relating to a Settlement Meeting.

b) "Claims Administrator" means the Claims Administrator as defined in the Settlement Agreement and shall include the Claims Administrator's Office.

c) "Confidential Information" means any information that is (1) communicated after the execution of this Agreement; (2) solely for the purpose of Settlement Discussions; and (3) specifically and exclusively relating to the Q4 Budget Issue and/or the Operational Audit, whether written or oral, and discussions regarding that information, exchanged and/or had by any of the BP Parties, Class Counsel, the Claims Administrator and the Special Master at a Settlement Meeting or while engaged in Settlement Discussions. "Confidential Information" does not include information which: (i) is or becomes generally available to the public other than as a result of violation of this Agreement, (ii) was available prior to the disclosure by the parties hereto, (iii) is contained in a final issued report by an external or internal auditor, including, but not limited to, a final issued report of an operational review and examination of the Court Supervised Settlement Program ("CSSP") or (iv) becomes available from a source which is not subject to any prohibition against disclosure.

d) "Settlement Meeting" means the portion of any meeting occurring after the execution of this Agreement between any of the BP Parties, Class Counsel, the Claims Administrator and the Special Master for purposes of discussing (i) a potential settlement of the Q4 Budget Issue, and (ii) any matters pertaining to the scope, development and implementation of the Operational Audit.

e) "Q4 Budget Issue" means the dispute between the BP Parties, Class Counsel and the Claims Administrator regarding the amount the Claims Administrator has proposed for the Q4

2013 budget. That dispute, as it relates to the confidentiality provisions set forth herein, is limited to (i) specific amounts proposed in the Q4 2013 budget for claims administration within the 4th Quarter of 2013, and (ii) the development and implementation of the Operational Audit.

f) "Class Counsel" means the Economic and Property Damages Settlement Class Counsel appointed by the Court.

g) "Special Master" means Louis Freeh and the Freeh Group.

2. **Confidentiality.** The BP Parties, Class Counsel and the Claims Administrator agree that Confidential Information will be kept strictly confidential and will not be disclosed to any other party, other than the BP Parties, Class Counsel, the Claims Administrator and the Special Master or their counsel, staff, experts, consultants or assistants, except as set forth below. The BP Parties, Class Counsel, and the Claims Administrator further agree that all Confidential Information is subject to and protected by all protections covering settlement discussions, including but not limited to, Federal Rule of Evidence 408 and Louisiana Code of Evidence Art. 408; provided, however, that it is the intent of the parties hereto that the Confidentiality afforded to the Settlement Discussions and Confidential Information shall be no broader than the protections provided under Rule 408 of the Federal Rules of Evidence and Louisiana Code of Evidence Art. 408. The existence of this Agreement and its terms shall also be deemed confidential.

3. **Limitation on Confidentiality/Compelled Disclosure.** Nothing herein shall prevent the BP Parties, Class Counsel or the Claims Administrator, or any of them, from disclosing any information that has been previously disclosed to the BP Parties, Class Counsel, the Claims Administrator or to the Court. Further, if any party hereto is requested or required (by interrogatories, request for information or documents, subpoena, civil investigative demand or similar process) to disclose Confidential Information (a "Confidential Document Request"), such party will provide the party that created the Confidential Information with prompt notice of each such request or requirement, so that the creating party may seek an appropriate protective order and/or specifically waive compliance with the provisions of this Agreement as to the particular category of Confidential Information being produced, which shall not constitute a general waiver. If the creating party fails to initiate proceedings to seek or obtain an appropriate order within ten (10) court days of having received notice of probable disclosure in compliance with such process as identified in the preceding sentence (or within such shorter period of time as the circumstances may require if a Confidential Document Request directs or requires disclosure or production within less than ten (10) days), the party responding to the request for Confidential Information will not be deemed in breach of this Agreement by producing the requested Confidential Information.

4. **No Waiver of Privilege.** In the event that any of the Confidential Information is or may be privileged under the attorney-client privilege, the work product doctrine, the common interest

privilege or any other applicable privilege or protection, any sharing of such Confidential Information is not intended to nor shall it waive or diminish the confidentiality of such materials, which shall remain in full force and effect.

5. **Termination.** This Agreement may be terminated by any party upon written notice to all parties. If a party exercises its right to terminate this Agreement, all provisions of this Agreement shall continue in full force and effect without being impaired or invalidated in any way as to Confidential Information communicated prior to the termination of this Agreement. However, this Agreement shall not apply in any way to any communications or information created after the termination of this Agreement.

6. **Miscellaneous.** Any waiver of any provision of this Agreement or waiver of any breach thereof shall not be effective unless in writing and signed by all parties, and shall not operate or be construed as a waiver of any other provision or subsequent breach. If any provision of this Agreement is held to be invalid, void or unenforceable, the remaining provisions shall nevertheless continue in full force and effect without being impaired or invalidated in any way. This Agreement may be modified only by a writing signed by all parties hereto. No party may assign this Agreement, in whole or in part, without the prior written consent of all of the other parties. This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and permitted assigns. This Agreement represents the entire agreement and understanding between the parties hereto regarding the subject matter hereof and supersedes all prior communications, agreements and understandings regarding such subject matter. This Agreement shall be governed by Louisiana law.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

The BP Parties:

By: _____

Name: MARK HOLSTEN

Title: MANAGING ATTORNEY, BP

Class Counsel:

By: _____
         Name:

Claims Administrator:

By: _____
         Name: David Odom
         It's CEO

81017125 V:2