# CAO Exhibit 1

# Tracy Steilberg

**From:** Rebecca Foreman
**Sent:** Tuesday, October 21, 2014 3:19 PM
**To:** Tracy Steilberg
**Subject:** FW: October 16th letter re McGladrey

---

**From:** Rebecca Foreman
**Sent:** Monday, October 20, 2014 9:51 AM
**To:** 'Holstein, Mark E'; Latta, Randy L (UK)
**Cc:** Moskowitz, Keith; Steve Herman (SHERMAN@hhklawfirm.com); 'James Roy (jimr@wrightroy.com)' (jimr@wrightroy.com); Travis, Maria T
**Subject:** RE: October 16th letter re McGladrey

Dear Mr. Holstein:

Responding to yours of October 17, as I explained to Mr. Latta in my letter of October 16th, the McGladrey report is not final. Accordingly, my letter should not be interpreted as a "refusal" to produce the same. As I have already explained, once we receive the final report, we will submit it to the Court and we will make such further distribution as the Court directs. Nevertheless, we will honor your request and place the issue on the October 22nd panel meeting agenda.

**PATRICK A. JUNEAU**
Claims Administrator

---

**From:** Holstein, Mark E [mailto:Mark.Holstein@bp.com]
**Sent:** Friday, October 17, 2014 9:23 AM
**To:** Rebecca Foreman; Latta, Randy L (UK)
**Cc:** Moskowitz, Keith; Steve Herman (SHERMAN@hhklawfirm.com); 'James Roy (jimr@wrightroy.com)' (jimr@wrightroy.com); Travis, Maria T
**Subject:** RE: October 16th letter re McGladrey

Dear Pat,

We read your October 16th letter as a refusal of BP's request for McGladrey's reports and work papers generated to date. Further, as noted in Mr. Latta's October 10th letter, we cannot understand how McGladrey's audit has not been finalized essentially a year after it incepted and you have provided no explanation. Accordingly, we invoke the dispute resolution procedures contained in the settlement agreement and request that BP's request for McGladrey's audit report(s) and work papers be added to the October 22nd panel meeting agenda. Thank you.

**Mark Holstein**
BP Legal
501 Westlake Park Blvd.
Houston, Texas 77079
Phone: 281-366-8895
Mobile: 630-362-8167

---

**From:** Rebecca Foreman [mailto:rforeman@dheclaims.com]
**Sent:** Thursday, October 16, 2014 5:59 PM



**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

**Patrick A. Juneau**
*Claims Administrator*

October 16, 2014

Via Electronic Mail

Randy Latta
CFO, Gulf Coast Restoration Organization

Re: McGladrey LLP

Dear Mr. Latta

    I have your October 10, 2014 letter. The main thrust of your letter appears to be another request for an explanation as to the status of the McGladrey report. The status of the report, as we have understood it to be, has been reported to you at various stakeholders meetings. It has still not been finalized. When we are informed that it has been finalized, we will so inform you, and on its receipt will deliver the final report to the Court. We will then make further distribution as the Court directs.

Sincerely,

PATRICK A. JUNEAU
Claims Administrator

Cc: Mark Holstein
Keith Moskowitz
Maria Travis
Steve Herman
Jim Roy



October 10, 2014

Via Electronic Mail

Patrick Juneau
Court Supervised Settlement Program
935 Gravier Street
New Orleans, Louisiana, 70112

Re: McGladrey LLP

Dear Mr. Juneau:

This month marks the one year anniversary since McGladrey LLP was engaged by the Deepwater Horizon Economic Claims Center to conduct an internal audit of the Court Supervised Settlement Program. Since then, over $14 million has been paid by BP to perform this audit. As no additional funds have been earmarked to pay McGladrey beyond August of this year, it appears that McGladrey's audit is complete. Yet to date, BP has not received any audit report(s) or work papers.

The results of the McGladrey operational audit, including all reports and working papers that you have been or will be provided with, must be produced because transparency is a bedrock principle of the American judicial system. The CSSP is an arm of the federal court, and was designed to operate transparently. In approving the settlement, Judge Barbier repeatedly focused on the anticipated transparency of the program. He has said that "the Settlement Agreement is designed to be transparent," and that the purpose of the detailed Settlement frameworks is to "ensure that determinations made by the Settlement Program are objective, consistent, and predictable." See Order Granting Final Approval at pages 110-11. The "level of transparency" was to "ensure[] that similarly situated class members are treated similarly," and to permit "class members to understand how their claims will be evaluated under the Settlement." Same at page 8.

In the past, you have also recognized the importance of transparency to the operation of the CSSP. In June of 2012, you were quoted as saying that the CSSP would be "very, very transparent . . . transparency on steroids." See Louis Cooper, New oil spill claims chief vows transparency, *Pensacola News Journal* (June 11, 2012). Similarly, in April 2012 you told the press that there would be "a tremendous amount of transparency." Brendan Kirby, Better deal for oil spill victims?, *AL.com* (Apr. 22, 2012). When Special Master Freeh was appointed to investigate wrongdoing within the CSSP, you again stated that your "mission has been to process claims in a fair, efficient and transparent manner." Ed Crooks, Ex-FBI head to probe BP payout claims, *Financial Times* (July 2, 2013). In a statement to the local news, you said that the CSSP has "been consistent and transparent with the claims process." David Hammer, WWLTV (March 20, 2013).

However, as the settlement program has matured you have been progressively retreating from your public boasts of transparency. Regrettably, your actions now speak far louder than your words as the CSSP becomes cloaked in more layers of secrecy designed to limit transparency. While this trend started shortly after the CSSP opened its doors and you cut off the parties' direct access to the settlement vendors, we have noted an acceleration after BP raised important issues about the incorrect processing of BEL claims under the terms of the Settlement Agreement and the revelations of fraud, corruption and abuse that led to the appointment of Special Master Freeh. Also troubling is that your actions to limit transparency seem now to come on the heels of noisy communications from Class Counsel expressly designed as part of a calculated campaign to shroud the CSSP in secrecy. The following examples are illustrative of the steps you have taken to limit transparency:

- Cutting off the parties' direct access to the claims administration vendors;
- Not informing the public about the Claims Administrator's attempts to address the myriad problems in the settlement program identified by Special Master Freeh;
- Limiting access to settlement program data;
- Taking the position that CSSP budget meetings are confidential;[1]
- Not providing the parties with the CSSP's regular internal audit reports; and
- Filing public reports with the Court that fail to even mention, much less appropriately report on, not only the fraud, corruption and abuse that has been discovered, but whatever substantial remediation is being undertaken to the CSSP's claims processing functions.

Your actions have cloaked the CSSP in confidentiality that is inappropriate for a Court Supervised Settlement Facility. Not providing the reports and work papers from McGladrey is the capstone of a non-transparent claims facility.

Whatever work product the Claims Administrator has now received after a year's work from McGladrey must be shared with BP and Class Counsel to accomplish the goal of a transparent claims facility. The results of the McGladrey operational audit are needed to allow the parties and the public to determine if the Settlement Program, as administered by the Claims Administrator, has processes and controls in place as required by the Settlement Agreement, and to identify any gaps. *See* Settlement Agreement § 4.3.1 (requiring the Claims Administrator to "faithfully implement and administer the Settlement Agreement, according to its terms and procedures"). BP, which funds the Settlement Trust, has a right to know if there are systemic inaccuracies in claims processing that require correction. *See* Settlement Agreement § 4.3.2 (stating that the Claims Administrator shall provide information to the Court, BP, and Class Counsel as part of its administrative function).

Moreover, the purpose of McGladrey's operational audit was, in part, to generate reliable data that BP and the CAO could use to determine an appropriate facility budget.

---

[1] As you know, BP disagrees with you that the budget meetings are confidential. (We recognize that you have called a Panel Meeting to discuss this issue and trust that you will change your position for the reasons we previously presented.) However, you have *not* taken the position that the actual CSSP budgets that the Claims Administrator is required to prepare and produce to the parties under the Settlement Agreement are confidential.

Judge Shushan's September 30, 2013 Order acknowledged as much. *See* Court's Order, at page 4 (Sept. 30, 2013) (noting the "institution of an operational review and examination of all Program systems to determine appropriate productivity and efficiency metrics for the Program budget"). Next month BP will again engage in quarterly budget discussions with the facility. The results of the McGladrey audit are needed to provide reliable information about the CSSP's operation to inform the first quarter 2015 budget.

BP also has concerns about the duration and expenditures for McGladrey's audit with nothing to show for this time or expense. A brief review of what very little BP has been made privy to about McGladrey's work illustrates these concerns:

1. McGladrey's Initial Q4 2013 Fees Exceeded McGladrey's Total Estimated Audit Costs.

   - McGladrey told the Claims Administrator that audit costs would range from $1.2 million to $1.6 million. (See October 16, 2013 letter from McGladrey to Claims Administrator's Office)
   - McGladrey's actual costs for Q4 2013 *alone* were approximately $2.2 million.

2. McGladrey's Q1 2014 Fees Exceed the Initial Q1 2014 Budget by $5.3 Million

   - The Q1 2014 budget for McGladrey was $1.6 million.
   - In late January 2014 the McGladrey's budget was raised to $7.6million.
   - McGladrey's actual Q1 2014 spend was $6.9 million.

3. McGladrey's Q2 2014 Fees Exceed the Initial Q2 2014 Budget by $2.5 million

   - Q2 2014 budget for McGladrey was $2.1 million.
   - McGladrey's actual Q2 2014 spend was $4.6 million.[2]

Taken together, McGladrey advanced a project to the Claims Administrator (and the parties) at an estimated cost $1.2-1.6 million. While you provided an initial explanation for the Q1 Budget overruns, you have not explained why McGladrey continued to overrun the budgets through Q3. Nine months into the first year McGladrey had charged more than $13.5 million having consistently overrun the budgets.[3] It is clear that the Claims Administrator has exercised limited financial or budgetary oversight, if any, over McGladrey's work. Organizations retain auditors every day and are able to appropriately manage the auditors, including audit costs. Absent appropriate management, an auditor has carte blanche to bill for audit services without any risk of recourse from its audit client if those services are not being performed efficiently or being completed within appropriate durations.

Given that the Claims Administrator has not exercised effectual budgetary controls over McGladrey we can only assume that McGladrey was providing the Claims Administrator with its budgets and, therefore, McGladrey was repeatedly overrunning its own

---

[2] McGladrey spent an additional $935,497 in July.

[3] BP has repeatedly objected to McGladrey's budgets.

cost estimates. BP has virtually no visibility into McGladrey's audit and, as a result, cannot even assess the value of McGladrey's work against these spiraling and dramatic audit fees. Nor do we have any understanding for why the completion of this audit has been repeatedly delayed and continues to drag on without anything to show for the time and cost. We simply cannot understand how a nationally recognized auditing firm like McGladrey that has committed scores of auditors to this project cannot complete this single entity audit within a year.

I write to request that you produce McGladrey's final reports along with McGladrey's working papers to BP. If any of the reports are not yet complete, please provide the final reports (and working papers associated with such reports) that are complete. For any reports that will not be complete by October 14, 2014, please respond to explain why these reports have been delayed and when they are expected to be complete.

Sincerely,

*Rdy Latta*

Randy Latta
CFO, Gulf Coast Restoration Organization

Cc: Mark Holstein
Keith Moskowitz
Maria Travis
Steve Herman
James Roy