UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>This Pleading Relates To<br>• 10-4182 (*Alabama v. BP*)<br>• 10-4183 (*Alabama v. Transocean, et. al*)<br>• 13-2645 (*Alabama v. Anadarko & MOEX*)<br>• 13-2646 (*Alabama v. Transocean*)<br>• 13-2647 (*Alabama v. Halliburton*)<br>• 13-2813 (*Alabama v. BP*) | MDL No. 2179<br>SECTION: J<br><br>JUDGE BARBIER<br>MAGISTRATE SHUSHAN |

THE STATE OF ALABAMA'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL DISCOVERY OF WRITTEN RESPONSES

LUTHER J. STRANGE
 *Attorney General*

COREY L. MAZE
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*

Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130
Phone: (334) 242-7300
Email:  cmaze@ago.state.al.us

Attorneys for the State of Alabama

# TABLE OF CONTENTS

Table of Authorities .................................................................................................................. ii

Argument ................................................................................................................................... 1

   I.   "All Revenue Sources" ................................................................................................. 1

      A.   Relevance: ............................................................................................................ 1

      B.   Proportionality .................................................................................................... 3

   II.   Interrogatory #14 ........................................................................................................ 6

      A.   Relevance ............................................................................................................. 6

      B.   Proportionality: ................................................................................................... 7

      C.   Additional Issues: ............................................................................................... 8

   III.   State-Owned Properties .............................................................................................. 9

      A.   Relevance ............................................................................................................. 9

      B.   Proportionality .................................................................................................. 11

Conclusion ............................................................................................................................... 12

Certificate of Service .............................................................................................................. 13

TABLE OF AUTHORITIES

**Cases**

*Lambert v. State Farm*,
  2008 WL 2313134 (E.D. La. May 30, 2008) ............................................................................ 10
*Texas v. Caremark Inc.*,
  584 F.3d 655 (5th Cir. 2009) .................................................................................................. 7
*Weiss v. Allstate Ins. Co.*,
  512 F.Supp.2d 463, 468 (E.D. La. 2007) ........................................................................... 9, 10

**Statutes**

33 U.S.C. § 2702 ............................................................................................................................ 2

**Rules**

Fed. R. Civ. P. 26(b) ..................................................................................................................... 12

**Other Authorities**

*Moore's Federal Practice* (3rd ed.) ............................................................................................. 1, 5
Alabama Department of Revenue, Revenue Abstracts
  http://revenue.alabama.gov/datapress-abstract.cfm .............................................................. 4
Alabama State Parks, Cheaha State Park
  http://www.alapark.com/CheahaResort/Playground ............................................................. 3
Top Five Environmental Fines Issued by Alabama in 2013, al.com (January 15, 2014)
  http://blog.al.com/wire/2014/01/top_five_fines_for_environment.html ............................... 2

**THE STATE OF ALABAMA'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL DISCOVERY OF WRITTEN RESPONSES**

The Court should deny Defendants' three requests to compel "all" and "everything" because each stretches beyond the bounds of the claims at issue. *See Moore's Federal Practice* (3rd ed.) § 26.41[6][c] (noting that Rule 26's relevancy and proportionality requirements protect against requests that "stray far afield from the factual issues that are at the heart of their case and are verging on discovery abuse, rather than seeking a fair and just resolution of the case").

**I.   All Revenue Sources**

The State objected to Defendants' definition of "revenue," and their corresponding requests to produce documents regarding all State revenue sources, because (1) the State's claims are limited to specific State revenues and (2) the RFP's would take months, if not years, to fulfill.

A.   **Relevance:**   Rule 26(b)(1) narrows the scope of discovery to only those matters "relevant to any party's claim or defense." *See also Moore's* § 26.41[2][a]. Accordingly, the State's claims set the boundary on what constitutes a relevant revenue source in this case:

- Lost taxes to the State of Alabama;
- Lost revenue to the Alabama Department of Conservation and Natural Resources;
- Response and Recovery Costs incurred by the Alabama Departments of Economic and Community Affairs, Environmental Management, and Labor;
- Financial impact/increased cost to Alabama's public education system (K-12); and,
- Physical Property Damage.

Ex. A (Alabama's Third Amended Initial Disclosure).

Defendants blow past the limitations imposed by the State's claims by seeking discovery on *all* sources of State revenue, as reflected by the 11 different State revenue streams (plus a catchall) that make up Defendants' definition of "revenue:"

1

| Defendants: "Revenue" Defined |||
|---|---|---|
| Taxes | Rents | Grants |
| Fees | Profits | Contributions |
| Interest | Fines | Donations |
| Royalties | Federal Funds | Any other form of payment or income |

*See* Defendants' Br. 6 (quoting Defendants' definition of "revenue" and citing all requests regarding the State's revenue streams). As the chart shows, Defendants' expansive definition of "revenue" opens discovery to the entire world of State revenues, including the #1 source of State revenue nationwide, federal funding.[1]

With Defendant's all-encompassing definition of "revenue" in mind, RFP #1 demonstrates the overbreadth of Defendants' motion to compel documents regarding all revenue sources:

> All documents from 1980 until the present summarizing or relating to collections of any Revenue for the State, including how such Revenues are calculated, assessed, and collected.

Ex. B. RFP #1 would require production of all documents relating to the receipt and use of federal funds to repair highways throughout the State. RFP #1 would require all documents regarding *in lieu of* tax payments made by the Tennessee Valley Authority ("TVA") for the right to operate dams and nuclear power plants in Alabama. RFP #1 would even require all documents regarding fines levied by the State for *other* environmental disasters, such as the United States military being fined for disposing untreated mercury into a hazardous waste landfill. *See* Top Five Environmental Fines Issued by Alabama in 2013, al.com (January 15, 2014).[2]

In fact, Defendants' example of "a State-owned park outside a coastal area," Defendants' Br. 7, provides another example of the overbroad/irrelevant problem. RFP #1 would require the State to produce documents regarding the State's receipt of $27,000 in private donations to build a

---

[1] Alabama has not raised a claim for lost federal funding, and it is uncertain whether such a claim would be compensable under OPA. *See* 33 U.S.C. §2702(b)(2)(D) ("Damages for the net loss of taxes, royalties, rents, fees, or net profit shares … shall be recoverable by the Government of the United States [or] a State").

[2] Available on-line at http://blog.al.com/wire/2014/01/top_five_fines_for_environment.html.

2

playground at Mt. Cheaha State Park in 2008.[3]  Clearly, a request for information regarding the financing and construction of a public playground two years before the spill is not reasonably calculated to lead to the discovery of admissible evidence regarding the State's claims.

Frankly, Alabama could fill its 15 pages with other examples of State revenues that aren't tangentially related to the State's spill-related claims; thereby failing Rule 26(b)(1)'s requirement that discovery requests seek "matter that is relevant to any party's claim or defense" and that is "reasonably calculated to lead to the discovery of admissible evidence."

Defendants claim that "all revenue sources" are discoverable under Rule 26 because "any claimed losses in one source of revenue [could have been] compensated by gains in a different source." Defendants' Br. 7.  But gains realized in *other* revenue sources are irrelevant in judging the State's claims.  Using a previous example, the fact that ADEM collected a $55,000 fine from the US Military in 2013 for burying untreated mercury does not reduce the tax loss suffered by the State, or the saltwater fishing license fees lost by DCNR, as a result of the 2010 oil spill.   The trier of fact will quantify the damages only for the claims presented (*e.g.* lost taxes and fees), not the cumulative net gain or loss of every revenue source available to the State since the Spill.

For these reasons, Defendants' request for information on all revenue sources violates Rule 26(b)(1)'s requirement that a discovery request be limited to those matters "relevant to any party's claim or defense."

**B. Proportionality:**  Requiring Alabama to produce all documents and all information regarding all State revenue streams violates Rule 26(b)(2)(C)(iii)'s proportionality requirement because the burden of collecting that evidence substantially outweighs the likely benefit to Defendants, especially in light of the revenue evidence that they already possess.

---

[3] *See* http://www.alapark.com/CheahaResort/Playground/.

1. *Need*: Defendants already possess the State's monthly revenue abstracts for the past 20 years.[4] These abstracts reflect the State-wide collection of State taxes, plus a percent-change comparison from the previous year. So, for example, if Defendants wanted to determine the change in Alabama's collection of lodging taxes between August 2009 and August 2010, the information they need is contained in the State's abstract report. *See* Ex. C.

Defendants also possess the State Department of Finance's monthly budget reports of net tax revenues, by fund, for the past 20 years. The State uses these reports to track the monthly progress, by relevant net tax revenue stream, of its General Fund and Education Trust Fund. Plus, Defendants have access to and/or the State has produced a wealth of information via the State's websites and the State's Comprehensive Annual Reports.

In other words, Defendants already possess (or will possess) the most official, most accurate, and most complete evidence needed to build their defense as to every claim.[5]

2. *Burden*: Alabama cannot overstate the burden of producing every piece of information regarding every source of State revenue. Such a task is likely impossible with our limited time and resources, and it is a primary reason the State has limited its claims as it has.

Even where relevant information may exist, Defendant's expansive view of discovery makes abusive what might otherwise appear to be a reasonable request. A prime example is applying the Defendants' demand for all revenue information to the State's Revenue Integrated Tax System ("RITS"). The RITS system contains nearly every line of every tax return for every State of Alabama taxpayer. To give the Court an idea of RITS's scope, its *summary* spreadsheet on revenues contains eight columns with more than 6,000 lines, representing the thousands of

---

[4] The abstracts back to 2004 are available on-line at http://revenue.alabama.gov/datapress-abstract.cfm. The remainder exist in hard copies.

[5] Per our agreement during the Court's October 30 conference, Alabama is re-producing some of this information.

different ways that tax return information is stored within the database. In actuality, there are 9.6 <u>billion</u> individual pieces of data within the RITS system.[6]

If the Court grants Defendants unfettered access to RITS's millions of cells of individual taxpayer data, plus the ability to run thousands of queries of that data, Defendants could shut down a critical component of the State's tax revenue collection system. Already, 1,200 State employees work every business day, eight hours per day, in the RITS system. The system runs queries daily and often on weekends, and it updates nightly and on weekends. Forcing the State to run thousands of queries through millions (if not billions) of cells of information will likely shut down daily operations—and perhaps shut down the system itself.

In short, this is an instance where "the sheer magnitude of the discovery request may be enough to tip the scales in favor of limiting discovery." *Moore's Federal Practice*, § 26.60[5]. Of course, there's an additional weight on the side of limiting discovery: Defendants already possess the official State abstracts and monthly budget reports. Accordingly, Defendants' motion to compel "all revenue sources" fails Rule 26(b)(2)'s proportionality requirement.

\* \* \*

The State moved the "all revenue sources" argument up to Issue I to emphasize just how critical this issue is to the timely resolution of discovery. The State has explained to Defendants how the RITS system works; we've described what it contains; and we've requested that Defendants identify their specific needs to avoid a system-crippling query. *See* Ex. D. To date, Defendants have failed to identify any specific data that they want. They want everything. For the reasons stated above, everything is not an option on this issue.

---

[6] The entire RITS system is 27.81 terabytes (*i.e.* 27.8 trillion bytes), which is roughly the equivalent of storing 7.9 million songs on a personal device.

5

## II. Interrogatory #14

The State has responded to Interrogatory #14 three times. As the Court will see in Exhibit E, the State has already identified BP's expenditures and produced charts that trace them down to the local and/or departmental level. But Defendants want more; they want *every* detail. Specifically, Defendants seek the minutia of hundreds of line entries labeled "personnel costs," "employee benefits," and/or "travel," despite almost all of these entries containing a general description of the expenditure, and almost all being for less than $1,000.

Below, we outline why tracking every cent of BP's monies to the cash register is neither mandated by, nor consistent with, Rule 26(b)'s relevance and proportionality requirements.

**A. Relevance:** Defendants claim opposing, relevant uses of this extra information. First, they claim it might turn into positive evidence—*i.e.* Alabama spent the money wisely, thereby mitigating the State's loss. Second, they claim it might be negative evidence—*i.e.* Alabama breached its duty to spend the money wisely, thereby exacerbating the loss. *See* Defendants' Br. 4.

1. *Negative Use (Breach):* Requesting evidence to bolster a claim that the State misspent BP's grants violates Rule 26(b)(1)'s limitation to "matter that is relevant to any party's claim or defense." As detailed in the State's Motion to Dismiss Set-off Counterclaim, *see* Rec. Doc. 13513, whether Defendants label it a counter-claim or an affirmative defense, any attempt to reduce the State's damages based on allegedly improper usage of the grant monies is barred by sovereign immunity. Because the Court lacks subject matter jurisdiction over claims barred by sovereign immunity, such claims cannot form the basis of a discovery request for "matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

2. *Positive Use (Mitigation):* Defendants identified five grants for which they want more information than Alabama has provided. *See* Defendants' Br. 5, Ex. 6. Three of these grants (*i.e.*

6

the May 2010 Block Grant, the June 2010 Block Grant, and the August 2010 Mental Health Grant), however, contain an express provision waiving the right to use the grant as an offset:

> BP agrees that it will not apply the Contribution, or any portion thereof, as an offset against any past, present, or future Damages alleged by the State under the Oil Pollution Act, 33 U.S.C. § 2702(b)(2) ("OPA") and any other applicable state or federal law, including without limitation state or federal common law. These funds are provided in addition to and irrespective of BP's obligations under the Oil Pollution Act of 1990 any other applicable state or federal law, including without limitation state or federal common law.

Ex. F (Mental Health Grant); *see also* Ex. G-H (2010 Block Grants, containing same waiver).

Requesting any information, much less additional information, to bolster a waived claim that the grants offset/mitigated the State's damages fails Rule 26(b)(1)'s requirement that discovery requests be "reasonably calculated to lead to the discovery of admissible evidence."

The State acknowledges that the Court previously allowed a 30(b)(6) Topic on this issue despite the State's invocation of BP's waiver. *See* Rec. Doc. 13210. We understand this to mean that the Court will defer ruling on the State's waiver argument until pre-trial motions practice. Accordingly, while reserving our argument that BP's requests violate Rule 26(b)(1)'s relevancy analysis, we discuss why BP's motion to compel more information to bolster a defense of positive mitigation/offset violates Rule 26(b)(2)'s proportionality requirement.[7]

**B. Proportionality:** Defendants' motion to compel the minutiae of the State's expenditures violates Rule 26(b)(2)(C)(iii)'s proportionality requirement because the burden of collecting evidence of how local governments and certain departments/officials spent every dime of their allocated monies outweighs (a) its likely benefit to Defendants, in light of the evidence that they already possess, and (b) the importance of the discovery to resolving a contested issue.

---

[7] Unlike the waiver argument, the State's Motion to Dismiss Defendants' Set-off Claim must be presently decided, as our sovereign immunity argument strikes at the Court's jurisdiction. *See Texas v. Caremark Inc.*, 584 F.3d 655. 659-60 (5th Cir. 2009).

7

As for the burden, granting Defendants' motion would require the State to track down the individual names, receipts, etc. for hundreds of line item expenditures. *See* Ex. E.

As for the benefit, there is little to none. Defendants already possess enough information to allege that BP's expenditures helped mitigate the State's net loss. As Exhibit E shows, Defendants know how much money BP gave Alabama; they know what State Departments and localities received the monies; they know how much of the money was spent; and they have a description of what the monies were spent for. Defendants do not need more minutiae like "who the personnel were, what they worked on, [and] the nature of their travel," Defendants' Br. 5-6, to have an expert opine on the financial impact of BP's grants on Alabama's claims.

**C. Additional Issues:**  None of Defendants' nit-picks warrant granting their motion.

1. *Failure to Account*:  Defendants' allege that Alabama has failed to account for the $93 million included in the five BP grants. Defendants' Br. 5. Alabama's Second Amended Responses (filed since Defendants' brief) puts this alleged issue to rest. Ex. E.

2. *DCNR*:  Defendants' complain that the State did not explain how the Department of Conservation and Natural Resources spent $79,800. Defendants' Br. 5. The explanation is simple: The monies were spent on an NRD matter, and NRD matters have been deemed non-responsive in this phase.

3. *Governor's Counsel*:  Defendants' call for an explanation why Cooper Shattuck, the general counsel of the University of Alabama system, used a portion of the Governor's grant allocation for travel is a red herring. BP knows that Mr. Shattuck is the Governor's special counsel on spill and NRD-related matters; they tried to strike his notice of appearance on the Governor's behalf <u>on the same day</u> they filed their motion to compel. *See* Rec. Doc. 13510. This is a veiled attempt to re-open the Court's ruling that the UA system is not subject to discovery.

8

\* \* \*

In sum, Defendants are barred from raising a claim against the State for misusing BP monies, and they have all of the information they need to opine that BP's expenditures helped mitigate the State's net loss. So, the State needn't produce every minute detail of hundreds of expenditures, nor should Defendants be allowed to turn this case into a series of mini-trials in which dozens of State employees are questioned about their expenditures of grant monies.

### III. State-Owned Properties

Each State-owned property for which the State seeks damages is located in one of Alabama's two coastal counties (Mobile and Baldwin), and each property touches the Gulf. Defendants, however, seek details on *every* piece of State-owned property across 10 counties, a list that exceeds 1,000 properties and includes dozens of school houses, more than 20 fire towers, two prisons, and a blueberry processing plant.

Defendants' primary case cite in support of their broad request highlights why it cannot be compelled: "A blanket exclusion of any evidence relating to other properties is inappropriate in this case because what happened at another property may, ***given appropriate similarity between the properties***, make the existence of a fact as to what happened to plaintiffs' property more probable." Defendants' Br. 9 (*quoting Weiss v. Allstate Ins. Co.*, 512 F.Supp.2d 463, 468 (E.D. La. 2007)). Defendants' motion should be denied, at the very least, because they have made no showing that any of the properties they seek, much less all of them, are similar enough to the coastal properties at issue to make a relevant (and thus admissible) comparison.

**A. Relevance:** Defendants point the Court in the right direction—*i.e.* Judge Vance's opinion in *Weiss*, a property damage dispute arising from Hurricane Katrina. And Defendants get

9

the first part of the opinion right: Judge Vance held that "a blanket exclusion of any evidence relating to other properties" was inappropriate "in [that] case." 512 F.Supp.2d at 468. But Defendants omit the rest of the story, and with it, the case's relevance.

Defendant Allstate sought to bar comparison evidence of five pieces of other property. *Id.* The Court stated that a "blanket exclusion" was inappropriate if there was an "appropriate similarity between the properties." *Id.* Accordingly, the Court judged the other properties, one-by-one, to determine whether a strong enough similarity existed to make a relevant (admissible) comparison. Ultimately, after comparing each property to the Plaintiffs' property, the Court excluded all evidence of three properties and restricted use on the other two. *See id.* at 468-72.

The next year, Judge Africk relied upon the *Weiss* opinion in a similar (unpublished) Hurricane Katrina property damage case. *See Lambert v. State Farm*, 2008 WL 2313134 (E.D. La. May 30, 2008). Defendant State Farm sought to block comparison evidence of 35 other properties located within 1/4 mile of Plaintiff Lambert's property. The Court stated that

> [f]or the Court to find that the evidence at issue is relevant, and, therefore, admissible, Lambert's property and the other properties 'must have been of such a similar nature and situation at the time Katrina struck that evidence as to what happened at [the other properties] could be probative of what happened at [Lambert's property]'.

*Id.* at *1 (quoting *Weiss*, 512 F.Supp.2d at 469). Judge Africk granted State Farm's motion, in its entirety, because the Plaintiff had failed to (a) explain how her property was structurally similar to the 35 other properties and (b) establish the exact location of the other 35 properties, thus rendering a case-by-case analysis of similarity impossible. *Id.* at *2.

The *Weiss* and *Lambert* opinions establish two things. First, the relevance of "other property" evidence turns on the other property's similarity to, and geographic proximity with, the Plaintiff's property. Second, the similarity analysis is performed on a property-by-property basis.

10

Applying those factors to this case, Defendants' request to produce information regarding more than 1,000 State-owned properties across 10 counties violates Rule 26(b)(1) because it is not "reasonably calculated to lead to the discovery of admissible evidence." Defendants have made no showing that the State's other properties, some of which are more than 50 miles inland, are so geographically similar as to make a relevant comparison. Nor have Defendants made a showing that the State's other properties are similar in structure or purpose as to make a relevant comparison. Nor can they, when the properties (*e.g.* schools, armories, prisons, and processing plants) are so diverse. Accordingly, Defendants' motion to compel "other property" evidence should be denied in its entirety.

**B. Proportionality:** Even if Defendants had made a showing that *some* of the State's other properties were similar enough to our oiled coastal properties to be relevant, their request to produce information regarding 1,000+ properties over 10 counties violates Rule 26(b)(2)(C)'s proportionality requirement because the burden of collecting all of that evidence far outweighs the likely benefit of that information.

As for the burden, the State would have to hand copy every deed, as they are kept in hard copies, and it's difficult to speculate a time frame for compiling an accurate, complete list of use restrictions for more than 1,000 properties. As for the benefit, there is little to none because, for the reasons stated above, evidence regarding the State's other, non-coastal properties will ultimately be deemed irrelevant due to a lack of similarity to the properties at issue.

\* \* \*

In summary, Defendants' motion to compel "all" and "everything" asks for far too much in light of (a) the limited scope of the State's claims; (b) the responsive information that Defendants already possess; and (c) the burden on the State to find "all" or "everything."

11

The Court should therefore deny Defendants' motion as overly broad, unduly burdensome, and/or not reasonably calculated to lead to admissible evidence.[8]  *See* Fed. R. Civ. P. 26(b).

## CONCLUSION

The Court should deny Defendants' Motion to Compel.

Respectfully submitted this 31st day of October, 2014.

LUTHER J. STRANGE
*Attorney General*

 /s/ Corey L. Maze
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*

Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130
Phone: (334) 242-7300
Email:  cmaze@ago.state.al.us

Attorneys for the State of Alabama

---

[8] The State reserves all arguments against Defendants' "placeholder" issues, for which Defendants have not filed a motion to compel.  *See* Defendants' Br. 10-15.

13

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on October 31, 2014.

    /s/ Corey L. Maze
COREY L. MAZE
*Special Deputy Attorney General*