**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | * * * | **MDL NO. 2179** |
| | * | **SECTION J** |
| | * | |
| **This document relates to:** | * * | **Judge Barbier** |
| **Case Nos. 10-4182, 10-4183, 13-2645, 13-2646, 13-2647, 13-2813** | * * * | **Magistrate Judge Shushan** |

_____

**BP'S OPPOSITION TO THE STATE OF ALABAMA'S MOTION TO COMPEL
RESPONSES TO DISCOVERY REQUESTS**

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Maureen F. Browne
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Joel M. Gross
Lawrence A. Schneider
Arnold & Porter LLP
555 12th Street, N.W.
Washington, DC 20004
Telephone: (202) 942-5705
Facsimile: (202) 942-5999

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Paul D. Collier
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
F. Chad Morriss
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone: (202) 879-5000
Facsimile: (312) 862-2200

*Attorneys for BP p.l.c., BP Exploration & Production Inc.,
and BP America Production Company*

Alabama seeks to compel BPXP to provide additional information in response to three interrogatories.   BPXP, however, has provided complete responses to each of these interrogatories, and the additional information that Alabama seeks is either not available to BPXP or is beyond the scope of discovery.  As such, Alabama's motion should be denied.

## I.       BPXP's Response to Interrogatory No. 13 Is Complete.

Interrogatory No. 13 is a contention interrogatory that seeks information regarding any "payments and/or contributions" that BPXP may assert as "an offset to the State's economic losses resulting from the oil spill."  (Ex. 1 at 33, BPXP's First Suppl. Responses to Alabama's First Set of Discovery Requests).   BPXP has fully answered this interrogatory, providing Alabama a multiple-page response that gives factual information regarding all the payments that fall within Alabama's definition of "offset," and that specifically provides factual information regarding the two subcategories of offsets that Alabama now asks the Court to compel.   In particular, BPXP's response provides factual information regarding: (1) five grants that BPXP made to Alabama, totaling almost $100 million, that may form the basis for an offset to Alabama's claimed damages; and (2) millions of dollars in response costs that BPXP has already reimbursed Alabama for and that may offset the unidentified response costs for which Alabama now seeks reimbursement.

Despite BPXP providing detailed factual information regarding the grant payments and response cost payments that it may use an offset, Alabama nonetheless seeks more, contending that the response is deficient because BPXP does not reveal the precise amount of these grant payments or the specific response cost payments that it will claim as a dollar-for-dollar reduction of Alabama's damages.[1]  But as BPXP has repeatedly explained to Alabama, this information is

---

[1] Alabama also contends without merit that BPXP has relied on "semantics" regarding the term "offset" to avoid providing a responsive answer to this interrogatory.  BPXP responded to Interrogatory No. 13 based on Alabama's

dependent on how Alabama has spent the grant payments and what response costs it now seeks reimbursement for.   This is information, however, that Alabama has refused to provide in response to Defendants' discovery requests and is now the subject of Defendants' motion to compel.   Thus, Alabama seeks to put the cart before the horse by forcing BPXP to provide specific details about its defenses that are dependent on details regarding Alabama's claims that Alabama refuses to provide.   As will be explained further below, Alabama's complaint regarding this interrogatory is therefore improper and its motion to compel should accordingly be denied.

> **A.     BPXP Has Fully Answered Alabama's Interrogatory, Identifying Extensive Factual Information and Documentation Regarding The Grants That May Serve As a Dollar-For-Dollar Reduction of Alabama's Claims.**

Alabama's motion asks the Court to compel BPXP to:

> Provide a list of the BP expenditures (including the value and recipient) that you intend to use at trial as the basis for a counterclaim against the State or to claim as a credit against the trier of fact's judgment of Alabama's damages claims.

(Doc. 13511-1 at 2).   But BPXP has already provided the factual information that it can regarding the grant payments that may serve as a "counterclaim" offset.   Alabama's motion explains that by "counterclaim" offsets it means funds BPXP provided to the State pursuant to grant agreements that may reduce Alabama's recovery on a dollar-for-dollar basis due to Alabama's use of the funds in violation of the agreement under which the funds were provided.

---

own definition of "offset," which it defined to mean "to balance or calculate against and shall encompass the terms 'offset,' 'set-off,' 'recoupment,' and/or any other legal claim or defense that reduces Alabama's recovery." (Ex. 2 at 21, Alabama's First Set of Discovery Requests).   BPXP raised its concerns over this definition in its original discovery responses, specifically objecting to this term as overly broad, vague, ambiguous, and confusing, in part because "[t]he definition … includes any 'legal claim or defense that reduces Alabama's recovery' making it unclear how an 'Offset' can be distinguished from any defense." (Ex. 3 at 70, BPXP's Responses to Alabama's First Set of Discovery Requests).   However, until it filed the instant motion to compel, Alabama did not provide an explanation of the three subcategories of "offsets" (*i.e.*, mitigation evidence, counterclaims, and credits) it now describes, nor did it limit the scope of Interrogatory No. 13 to only the "counterclaim" and "credit" subcategories that it now apparently contends encompass the intended scope of Interrogatory No. 13.   Nonetheless, BPXP has not withheld any information regarding "counterclaim" or "credits" offsets based on Alabama's definition of "offset."

*See* Doc. 13511-1 at 2.  Because BPXP has already identified these grants, Alabama's motion to compel this information should be denied as moot.

BPXP's original response to Interrogatory No. 13 identified three grants that BPXP provided to Alabama that may serve as dollar-for-dollar "offsets" to Alabama's claimed damages, and its supplemental response served on October 3—two weeks before Alabama filed its motion to compel—identified two others.  (Ex. 3 at 30; Ex. 1 at 37-39).  Nonetheless, in its October 13 letter to counsel for BPXP under the heading "Set-off Counterclaim for Violation of Grant Agreement," Alabama asked BPXP to "[p]lease identify all grants and/or other agreement [sic] that BP has made with the Plaintiff State of Alabama (as opposed to non-parties to this litigation) that Defendants contend could be the subject of a set-off counterclaim, if the State failed to disbursement [sic] the monies in accordance with the grant."  (Ex. 4 at 2, C. Maze Oct. 13 letter)  In response to this request, BPXP reiterated that "[i]n its response to Interrogatory No. 13, BPXP has already identified the grants to and/or agreements with Alabama that BPXP has identified to-date and that may form the basis for an offset to Alabama's claimed damages, if Alabama has not complied with the terms of the grant and/or agreement."  (Ex. 5 at 2, P. Collier Oct. 14 letter).  BPXP then specifically identified these grants again, providing the following list:

- "The $25 million grant provided to Alabama in May 2010 and produced at BP-HZN-ALO01278889;

- The $25 million grant provided to Alabama in June 2010 and produced at BP-HZN-ALO01280259;

- The $12 million grant provided to the Alabama Department of Mental Health in August 2010 and produced at BP-HZN-ALO01029947;

- The $15 million grant provided to Alabama in May 2010 for the promotion of tourism and produced at BP-HZN-ALO00089636; and

- The $16 million grant provided to Alabama in March 2011 for the promotion of tourism and produced at BP-HZN-ALO00050583."

(*Id.*)  Thus, Alabama is fully aware of the grants at issue.

> **B.**     **Alabama Has Not Provided Sufficient Detail Regarding How It Has Used the Grant Money for BPXP to Formulate Fully Its Expert Opinions as How These Grant Payments Can Be Used as an Offset.**

Despite the moving target of what information Alabama seeks in response to this interrogatory, BPXP has not withheld any information from its response.  Rather, as BPXP has repeatedly explained, it has answered the interrogatory fully because any additional information Alabama seeks is contingent on how Alabama spent these funds.  This is because per Alabama's definition of "counterclaim" offsets, such an offset would be based on Alabama's use of the grant funds in violation of the terms of the relevant agreement.  (Ex. 5 at 3).  Knowledge of how Alabama spent these funds lies solely with Alabama, and in spite of its obligations under the terms of these grant agreements[2] and Defendants request for this information through written discovery,[3] Alabama refuses to provide an adequate explanation of how these funds were spent.  This has forced Defendants' to move to compel a complete response to their Interrogatory No. 14, which requests this information.  *See* Doc. 13512-1 at 4.

Because BPXP is not privy to how Alabama spent these funds it cannot know whether Alabama has violated any of the above identified agreements, and if so, to what extent BPXP is entitled to an offset to Alabama's claimed damages based on that violation. (Ex. 5 at 3).  Accordingly, BPXP has provided all the information that it can regarding the "counterclaim"

---

[2] For example, each of the two $25 million grants require Alabama to "send BP a report of disbursements of the Payment on an annual basis until the Payment has been fully spent.  In addition, BP shall have reasonable access to the State's disbursement records and shall have the ability to make inquiries to the Designated State Agency from time to time to monitor the use and disbursement of the Payment." (Ex. 6 at BP-HZN-ALO01280259, June 2010 grant; Ex. 7 at BP-HZN-ALO01278889, May 2010 grant).

[3] For example, Defendants' Interrogatory No. 14 requests that Alabama "Provide an accounting of all funds, payments, grants, contributions or donations that the State has received from BP from 2010 until the present, including all disbursements of tourism, seafood and other block grants, and any other payments or economic assistance received, relating to the *Deepwater Horizon* Incident and/or the Oil Spill." (Ex. 8 at 43, Alabama's Suppl. Responses to Defendants' First Set of Discovery Requests).

offsets that it may assert, and BPXP cannot provide more detail until Alabama complies with its own discovery obligations regarding Defendants' Interrogatory No. 14.  Therefore, Alabama's motion to compel as it pertains to "counterclaim" offsets should be denied.

> **C.    Alabama Has Not Identified The Allegedly Unreimbursed Response Costs For Which It Is Now Seeking Compensation, So BPXP Cannot Identify Specific Payments That May Have Already Reimbursed These Claims.**

In addition to "counterclaim" offsets, Alabama seeks to compel additional information regarding "credit" offsets.  But BPXP faces the same problem with providing the additional information Alabama seeks regarding the "credits" subcategory of "offsets" as with the "counterclaims" subcategory: a lack of information regarding Alabama's claims.

Alabama defines the "credits" subcategory of "offsets" to include any expenditures that BPXP "may ask the Court to subtract" on a dollar-for-dollar basis from any damage award determined by the trier of fact.  *See* Doc. 13511-1 at 2.  As such, the "credits" subcategory implicates the "State Response and Recovery Costs" for which Alabama is now seeking reimbursement. (Ex. 9, Alabama's Third Amended Rule 26 Disclosures).  Alabama, however, has not identified the specific costs for which it seeks reimbursement despite Defendants' discovery requests (*e.g.*, Defendants' Interrogatory Nos. 1, 2, 10, and 12) that seek an identification of these costs as well as an explanation of how and for what they were incurred. Instead Alabama has identified only the dollar amounts for the purportedly unreimbursed response and recovery costs incurred by its Department of Economic and Community Affairs, Department of Emergency Management, and Department of Labor.[4]  (Ex. 8 at 38-39).  Thus,

---

[4] As noted in Defendants' motion to compel, on the eve of the motion to compel filing deadline, Alabama represented that it would adequately supplement its responses to Interrogatory No. 1, 2, 10, and 12 in response to the deficiencies raised by Defendants.  *See* Doc. 13512-1 at 10-14.  Based on this representation, Defendants did not move to compel on these interrogatories.  However, the supplemental responses that Alabama served on October 28, 2014 do not identify the specific costs for which Alabama intends to seek reimbursement.  Defendants intend to further meet-and-confer with Alabama on this issue, but reserve the right to request seek Court intervention should the parties not be able to resolve this issue.

until Alabama identifies the specific costs for which it seeks reimbursement, BPXP cannot identify which, if any, of these costs are covered by the millions of dollars in response and recovery costs that BPXP has already reimbursed the State for.  Nonetheless, in a good-faith effort to resolve this issue, BPXP supplemented its response to Interrogatory No. 13—by Alabama's proposed October 28 deadline—to identify all of the payments it has made directly to the State that may serve as "credit" offsets if included within Alabama's "State Response and Recovery Costs" claim. (Ex. 10, BPXP's Second Suppl. Responses to Alabama's First Set of Discovery Requests).   Until Alabama identifies the specific costs for which it seeks reimbursement, however, BPXP cannot "whittle down" this list of potential "credit" offsets as Alabama would have the Court require.

The "credits" category of "offsets" also potentially encompasses funds provided to Alabama pursuant to the grants discussed in Section I.A above.  This is because these grant agreements include provisions that Alabama will not seek reimbursement for costs paid with grant funds.  (*See, e.g.,* Ex. 7; Ex. 11 at BP-HZN-ALO01029947, ADMH grant). Therefore, until Alabama provides an adequate accounting of the grant payments and identifies the response and recovery costs for which it seeks reimbursement, BPXP cannot know if Alabama is seeking reimbursement for costs that it is precluded from seeking under the terms of these grant agreements, thereby entitling BPXP to a "credit" offset.  Accordingly, Alabama's motion to compel as it pertains to "credit" offsets should be denied.

II.     **Interrogatory No. 43 Seeks Irrelevant Information That Is Not Likely To Lead To The Discovery Of Admissible Evidence.**

     A.     **The Information That Interrogatory No. 13 Seeks Is Not Likely To Lead To The Discovery Of Admissible Evidence.**

Alabama's Interrogatory No. 43, which seeks information regarding the dollar amount "that Alabama businesses and individuals sought [for] recovery of economic losses associated

with the oil spill from [BPXP]," is improper, and BPXP has appropriately objected to providing a response to this fundamentally flawed request.  As an initial matter, the amount sought by claimants in Alabama for losses related to the oil spill is not relevant to the claims and defenses in this litigation.  Alabama's claims are predicated on a purported reduction in State tax revenue resulting from economic harm the State allegedly suffered due to the oil spill.  But the amount sought by private claimants carries no presumption of validity and therefore is not a reliable or persuasive measure of the State's purported harm, much less the State's claimed tax losses.  *See Condakes v. S. Pac. Co.*, 303 F. Supp. 1158, 1161 (D. Mass 1968) (finding that "the amount claimed to have been lost … is not persuasive evidence of the actual amount of [Plaintiffs'] damage").  Thus, contrary to Alabama's assertion, the amounts sought by Alabama businesses and individuals for compensation of their purported losses would not "tell a clearer story" regarding Alabama's claimed damages nor would it provide meaningful insight "into whether BP was prov[id]ing full compensation."

Alabama also asserts that "information regarding the amounts claimed could be critical in weighing the cresibility [sic]" of BPXP's quantification of Alabama's losses, if "BP's experts attempt to extrapolate the State's tax revenue loss from the amount of payments BP has made to Alabama citizens and businesses," but this assertion lacks merit.  Putting aside that Alabama's speculation as to what arguments BPXP may raise in expert discovery do not make information discoverable, Alabama provides no explanation of how the amount claimed, which "is not persuasive evidence" of the actual amount of an individual's damages, would be "critical" in evaluating an analysis of the State's alleged losses based on claims payments to individual and business claimants.

Moreover, although the amount sought by claimants is not relevant, even if it were, this information "is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *See Drs. Bethea v. St. Paul Guardian Ins. Co.*, No. 02-cv-1444, 2003 WL 292302, *2 (E.D.La. Feb. 11, 2003) (denying plaintiff's motion to compel discovery regarding method of calculation for medical malpractice insurance policy where plaintiffs sought damages for discontinuation of such insurance and finding that "[t]he rating process is not relevant to the claims presented in this case"). The amount sought by claimants could only reasonably be considered a ceiling for quantifying claimants' harm. As such, this amount could only be used to argue that BPXP's payments to claimants were less than their amounts sought and therefore did not provide full compensation. But again because the amount sought by a claimant "is not persuasive evidence" of his or her actual harm, the argument that a comparison between claimants' amounts sought and the amounts paid to them, would not provide insight into whether BPXP was providing full compensation and would carry a high risk of prejudicing BPXP by injecting unreliable speculation into the quantification of any harm to Alabama.

Moreover, Alabama's assertion that the amount sought by Alabama claimants must be relevant because the amount paid to such claimants is undisputedly relevant relies on flawed logic. The amount paid through the various oil spill related claims processes is relevant to Alabama's claims because these payments resulted in actual tax liabilities that in turn generated an actual, finite amount amount of tax revenue for Alabama. These claims payments are therefore directly relevant to the amount of Alabama's claimed tax losses and are fundamentally different than the amount sought by Alabama businesses and individual claimants, which would

only reasonably serve as a maximum, yet unreliable, estimate of the economic harm to businesses and individuals in Alabama due to the oil spill.

**B.    Alabama's Request is Overly Burdensome, Especially When Balanced Against Its Marginal Relevance.**

Despite Alabama's unsupported assertion that the information sought by Interrogatory No. 43 should be readily available to BPXP, this is not the case.  Other than the BP internal claims program identified in this request, the other claims processes (*i.e.*, GCCF, DWH Transition, CSSP, etc.) were not administered directly by BPXP, and the information provided to BPXP by these claims processes does not include a pre-aggregated total of the amount sought for claimants in Alabama.  Thus, Alabama's request would impose an undue burden on BPXP to calculate the total amount claimed in tens of thousands of individual claims based on third party data.

Further complicating this task and reducing its usefulness, the data that BPXP possesses from these claims programs does not include information regarding the amount sought for many of the individual claims, and BPXP has no way of filling in these blanks.  Pursuant to the Court's May 22, 2012 order, Rec. Doc. 6573 at ¶ 9, BPXP does not have access to information regarding claims submitted to the CSSP that have not reached a final determination, and therefore does not have any information regarding the amount sought by such CSSP claimants.  Nonetheless, based on information available to BPXP, as of October 22 there were 32,607 pending claims that have not reached a final determination, compared to only 20,443 that had reached a final determination.  Accordingly, any information that BPXP can provide regarding the total amount sought by CSSP claimants located in Alabama would be substantially incomplete for reasons outside BPXP's control and therefore would not be meaningful.

**C.** **Alabama Asks The Court To Speculate Regarding What Information This Interrogatory Seeks.**

Alabama's motion to compel is also improper because it is vague and ambiguous regarding what information is sought.  For example, in its response to Interrogatory No. 43, BPXP objected to the undefined term "geographic area of origin" as vague and ambiguous, but Alabama has ignored this ambiguity in its motion to compel and has not provided any clarification on how it wants the claims information broken down geographically.  (Ex. 12 at 7, BPXP's Responses to Alabama's Second Set of Discovery Requests).  This is a significant concern, because without knowing what Alabama wants it is impossible to determine if this information is even available.  Thus, Alabama asks the Court to compel the production of unspecified information that may not even exist.  For this reason, and those stated above, Alabama's motion to compel regarding Interrogatory No. 43 is improper and should be denied.

**III.** **Interrogatory No. 46 Seeks Information That BPXP Does Not Possess And Is Not Likely To Lead To The Discovery Of Admissible Evidence.**

Alabama's Interrogatory No. 46, which requests "the State of permanent residence of any participant in [BPXP's] oil spill response activities within the State of Alabama," seeks information that is not likely to lead to the discovery of admissible evidence and for which BPXP can only provide a rough and unreliable approximation.

**A.** **The State of Residence of Response Workers Is Not Determinative of Their Alabama Tax Liabilities.**

Alabama attempts to justify Interrogatory No. 46 by claiming that the state of permanent residence of response workers in Alabama is relevant because such information could inform about the worker's tax liability to Alabama and further, that Alabama would like the opportunity to show that response workers who hailed from other states "may not have paid Alabama taxes." *See* Doc. 13511-1 at 8-9.  But the state of permanent residence of response workers in Alabama

is irrelevant because, under Alabama's tax code, ***all response workers*** who worked in Alabama, whether residents of Alabama or other states, were obligated to pay income taxes to the State of Alabama for income earned from work performed in Alabama.  As explained in the Alabama Department of Revenues' 2010 Form 40NR Booklet:

> A nonresident of Alabama is subject to tax on all income received within or for services performed in Alabama and amounts received from the sale of property located in Alabama unless specifically exempt.  The term "income" includes, but is not limited to, salaries, wages, commissions, income from business or professions, alimony, rents, royalties, interest, dividends, and profits from sales of real estate, stocks, or bonds.  (Ex. 13 at 6, available http://revenue.alabama.gov/incometax/2010_forms/10f40nrbk.pdf)

*See also* Ala. Code § 40-18-2(a) ("In addition to all other taxes now imposed by law, there is hereby levied and imposed a tax on the taxable income, as defined in this chapter, which tax shall be assessed, collected, and paid annually at the rate specified herein and for each taxable year as hereinafter provided.  Persons and subjects taxable under this chapter are: … (6) Every nonresident individual receiving income from property owned or business transacted in Alabama."); *Lanzi v. Alabama Department of Revenue*, 968 So.2d 18, 21-22 (Ala. Civ. App. 2006) ("Under § 40-18-2(6), 'every nonresident individual receiving income from property owned or business transacted in Alabama' is subject to an annual tax on that individual's 'taxable income,' a term that means 'gross income' minus any deductions allowed to individuals (*see* § 40-18-15.1). … '[G]ross income' in the case of nonresident individuals is limited to 'income from property owned or business transacted in Alabama' (§ 40-18-14(4)).").  Therefore, even if BPXP could provide information regarding the state of permanent residence of each response worker in Alabama—and it cannot—this information would not determine their tax liabilities to Alabama in connection with their response work.

### B.    BPXP Can Only Provide An Unreliable, Rough Approximation Of The Information Alabama Seeks.

BPXP did not directly employ the vast majority of workers who worked on the response in Alabama.  Instead, the overwhelming majority of such workers were employed by third party contractors to BPXP or even subcontractors of these contractors.  For example, for the Vessels of Opportunity ("VoO") program specifically identified in Interrogatory No. 46, BPXP did not hire individual deckhands; rather, it hired vessels whose owners were responsible for hiring their own crews.  Because crews working on the VoO program, as well as nearly all other response workers, were actually employed by third party contractors, it is these contractors who collected the personal information, including home addresses, that are needed for employment and tax purposes.  BPXP did not systematically receive this information as part of procuring response services and does not have access to it.

Although BPXP has not complied the state of permanent residence for the response workers in Alabama, what BPXP does possess for some, but not all, response workers is the "Home State" that workers self-reported when receiving a badge from one of the Unified Area Command Incident Command Posts ("ICP").  This information, however, may not be reliably used to determine the state of residence of response workers who worked in Alabama.  First, the data suggests that at least some workers identified their "Home State" based on the address of their direct employer not based on the State where they lived.  Second, many response workers did not list a "Home State," so these records are incomplete.  Third, although BPXP tracked at which ICPs a worker checked in with their badge, this is not determinative of the state where a response worker actually worked.  For example, workers who checked in at the Mobile, Alabama ICP may have actually worked in Mississippi not Alabama.  Thus, at best, the "Home State" information that BPXP possesses could be used to provide a rough approximation of the states of

residence of individuals that may have worked in Alabama because their badge at one time was checked in at the Mobile ICP.  But in addition to being unreliable, this information provides no insight into how long these individuals may have worked on the response in Alabama, if at all, which along with many other individual specific factors, would be necessary to determine their Alabama income tax liability for the work they performed on the response.

BPXP could identify the state of residence for the BP employees that worked on the response in Alabama in a supervisory or management role, but this is only a subset of the total number of response workers who worked in Alabama.  As such, this information would not be representative of the broader population of response workers and would not provide any meaningful insight regarding the Alabama income tax liabilities for the response workers, to the extent that were even relevant.

**IV.    Alabama's Reservation Of The Right To Move To Compel On Other Issues In The Future Is Improper.**

**A.    Alabama's Reservation Of The Right To Move To Compel Admissions To Requests for Admission Nos. 12 and 13 Is Improper.**

Alabama claims that "BPXP has asserted that it will continue reviewing" Alabama's request that it admit Requests for Admission Nos. 12 and 13 and will "supplement its most recent response that it lacked sufficient information to admit or deny the requests," but this is not correct.  Alabama apparently references BPXP's initial responses to these requests for admission, but BPXP's supplemental responses, served on October 3, respond fully and completely, stating that "BPXP, after conducting a reasonable inquiry, lacks sufficient information to enable it to admit or deny" these requests.  (Ex. 1 at 9-11).  Moreover, in an October 14 letter to Alabama, counsel for BPXP clearly stated that "BPXP's objections and responses to Request for Admissions Nos. 12 and 13 are proper" and did not advise that BPXP was considering supplementing its responses to admit these requests.  (Ex. 5 at 4-5).  In other words, Alabama

had all the information necessary before the motion to compel deadline as to whether it should move to compel.  Alabama cannot unilaterally grant itself an extension of the motion to compel deadline, and a motion to compel for Requests for Admission Nos. 12 and 13 would now be untimely and futile anyway because BPXP has stated that it lacks the information to admit or deny these requests.

**B.      The Parties Are Not At An Impasse Regarding The Relevant SCAT Data, But Alabama Already Has Access To This Data.**

As Alabama's motion correctly notes, the parties have made significant progress towards "reaching a final agreement on the treatment of information and documents that is equally accessible to the Parties."  Doc. 13511-1 at 10.  As Alabama also indicates, the Alabama-related SCAT data is as equally accessible to Alabama as to BPXP.  Thus, because this information is available to Alabama it would not properly be the subject of a motion to compel.  Nonetheless, should Alabama discover that it is missing specific Alabama SCAT data reports or information, BPXP is willing to work with Alabama in good-faith to help Alabama identify where this information can be located or produce it to the extent it can.  Accordingly, Alabama's reservation of its right to move to compel production of this information is improper and premature.

**V.      Conclusion**

For the foregoing reasons, BPXP respectfully requests that the Court deny Alabama's motion to compel as it pertains to BPXP.

14

Date:  October 31, 2014

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #I6984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Paul D. Collier
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
F. Chad Morriss
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone: (202) 879-5000
Facsimile: (312) 862-2200

Maureen F. Browne
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Joel M. Gross
Lawrence A. Schneider
Arnold & Porter, LLP
555 12th Street N.W.
Washington, DC 20004
Telephone: (202) 942-5705
Facsimile: (202) 942-5999

*Attorneys for BP p.l.c., BP Exploration &*
*Production Inc., and BP America Production*
*Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 31st day of October, 2014.

/s/ Don K. Haycraft
Don K. Haycraft