# Exhibit 1

Redacted

Pursuant to PTO 13

*Confidential Pursuant to PTO 13*

E-SERVICE
56132678
Oct 03 2014
08:20PM
File & ServeXpress

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | **MDL No. 2179** |
| | **SECTION: J** |
| **This Document Relates To:** | **DISTRICT JUDGE BARBIER** |
| **Case Nos. 10-4182, 10-4183, 13-2645, 13-2646, 13-2647, 13-2813** | **MAGISTRATE JUDGE SHUSHAN** |

## BP EXPLORATION & PRODUCTION INC.'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO THE STATE OF ALABAMA'S FIRST SET OF DISCOVERY REQUESTS TO THE DEFENDANTS RELATING TO THE STATE'S COMPENSATORY DAMAGES PHASE

Defendant BP Exploration & Production Inc. ("BPXP") by its undersigned counsel, and pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, hereby submits the following supplemental responses and objections to The State of Alabama's First Set of Discovery Requests To The Defendants Relating To The State's Compensatory Damages Phase.

1

*Confidential Pursuant to PTO 13*

## SPECIFIC RESPONSES AND OBJECTIONS

BPXP responds as follows to the State of Alabama's specific requests for admission, interrogatories, and requests for production, subject to and without waiving its general objections, each and every one of which are specifically incorporated into each individual response below.

## REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that MC252 oil did not exist within the State of Alabama before April 20, 2010.

### RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Subject to its general objections, BPXP responds as follows: Having conducted a reasonable inquiry, the information BPXP knows or can readily obtain is insufficient to enable it to admit or deny this request because it is possible that oil from the reservoir into which the Macondo well was drilled was released through natural seeps before April 20, 2010, and existed within the State of Alabama.

### FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Subject to its general objections, BPXP responds as follows: BPXP admits that it does not possess direct evidence that MC252 oil, as defined by the State of Alabama to mean oil, polycyclic aromatic hydrocarbons, and/or oil hydrocarbon constituents originating solely from the well being drilled by the *Deepwater Horizon* in the Macondo Prospect of Mississippi Canyon 252, existed within the State of Alabama before April 20, 2010.  Nonetheless, oil from the Macondo Prospect may have been released through natural seeps before April 20, 2010, and existed within the State of Alabama.

### REQUEST FOR ADMISSION NO. 2:

Admit that oil-related materials entered the State of Alabama after April 20, 2010.

### RESPONSE TO REQUEST FOR ADMISSION NO. 2:

Subject to and without waiving its general objections, BPXP responds as follows: BPXP admits that oil-related materials, as defined by Alabama, reached segments of the State of Alabama's shoreline

on and after approximately June 1, 2010.  BPXP denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 3:**

Admit that between April 20, 2010 and the present, oil-related materials were removed from every oil spill response activity SCAT segment located within Baldwin County, Alabama bordering the Gulf of Mexico.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

BPXP objects to the term "oil spill response activity SCAT segment" and "bordering the Gulf of Mexico" as vague, ambiguous, and undefined in the State of Alabama's definition section.  BPXP further objects to this request as vague and ambiguous as to the phrase "bordering the Gulf of Mexico" and whether this phrase modifies "SCAT segment" or describes "Baldwin County, Alabama."

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP denies this request.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Subject to and without waiving its general and specific objections, BPXP responds as follows: Having conducted a reasonable inquiry, the information BPXP knows or can readily obtain is insufficient to enable it to admit or deny this request.  For certain SCAT segments in Baldwin County, BPXP is not aware of any evidence that oil-related materials were observed or removed from April 20, 2010 to present.  Therefore, BPXP cannot admit this request.  Nonetheless, because Operations data concerning the collection and removal of oil-related materials from the Alabama shoreline was not recorded at the SCAT segment level prior to June 2011, BPXP cannot categorically deny that oil-related materials were removed from these segments between April 20, 2010 and June 2011.  Therefore, BPXP lacks sufficient information to admit or deny that oil-related materials were removed from every SCAT segment located within Baldwin County, Alabama, between April 20, 2010 and the present.

**REQUEST FOR ADMISSION NO. 4:**

Admit that the State of Alabama incurred removal costs as a result of oil-related materials migrating into the State of Alabama.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

BPXP objects to this request because it seeks information not presently in the scope of BPXP's knowledge, as information regarding response, removal, repair, and replacement costs incurred by the State, as a result of the *Deepwater Horizon* Incident and/or the Oil Spill, in the possession of the State is a subject of BPXP's discovery requests to the State of Alabama. BPXP objects to this request as vague, ambiguous, and confusing as to its use of the defined term "removal costs."

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP admits upon information and belief that the State of Alabama incurred certain response, removal, repair, and replacement costs as a result of the *Deepwater Horizon* Incident and/or the Oil Spill. The amount and description of such costs, including whether costs were appropriately incurred and documented and whether costs have already been reimbursed by BPXP, are subject to ongoing discovery.

**REQUEST FOR ADMISSION NO. 5:**

Admit that the State of Alabama incurred tax losses as a result of oil-related materials migrating into the State of Alabama.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

BPXP objects to this request because it seeks information not presently in the scope of BPXP's knowledge, as information regarding tax losses incurred by the State, as a result of the *Deepwater Horizon* Incident and/or the Oil Spill, in the possession of the State is a subject of BPXP's discovery requests to the State of Alabama. BPXP further objects to this request as premature to the extent it calls for expert discovery.

Subject to and without waiving its specific and general objections, BPXP responds as follows:

*Confidential Pursuant to PTO 13*

After conducting a reasonable inquiry, the information BPXP has or can readily obtain is insufficient to enable it to admit or deny this request.

**REQUEST FOR ADMISSION NO. 6:**

Admit that oil-related materials were buried by sand in the Gulf of Mexico supratidal and intertidal zones of the State of Alabama after April 20, 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Subject to and without waiving its general objections, BPXP responds as follows: BPXP admits that oil-related materials were buried by sand in certain supratidal and intertidal zones of the State of Alabama's shoreline after oil-related materials reached portions of the shoreline on and after approximately June 1, 2010, and that there were extensive efforts to locate, delineate, and, where feasible, remove buried or submerged oil-related materials from the State of Alabama's shoreline. BPXP denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 7:**

Admit that submerged oil mats presently exist within the State of Alabama.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Subject to and without waiving its general objections, BPXP responds as follows: Having conducted a reasonable inquiry, the information BPXP knows or can readily obtain is insufficient to enable it to admit or deny this request.  BPXP states that there were extensive efforts to locate, investigate, delineate, and, where feasible, remove buried or submerged oil-related materials from the State of Alabama.  These efforts include, but are not limited to, Snorkel SCAT surveys, the Buried Oil Project, OSAT-3, and the Submerged Oil Mat Tactical Plan.

**REQUEST FOR ADMISSION NO. 8:**

Admit that submerged oil mats removed from the State of Alabama contained MC252 oil.

5

*Confidential Pursuant to PTO 13*

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Subject to and without waiving its general objections, BPXP responds as follows: BPXP admits that certain buried or submerged oil-related materials removed from the State of Alabama during response activities contained oil and hydrocarbon and that sampling of buried or submerged oil-related materials throughout the Area of Response indicates that they contained, on average, between approximately 10 and 20 percent total petroleum hydrocarbon (TPH) and between approximately 83 and 90 percent sand or other non-oil material.  Fingerprinting analysis was not conducted in all instances of recovery of buried or submerged oil material and there is data indicating that buried, submerged, and surface oil material existed in the pre-incident background.  BPXP denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 9:**

Admit that oil-related materials have washed up on the State of Alabama's Gulf of Mexico coastline in 2014.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

BPXP objects to the term "washed up" as vague and ambiguous.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP admits that limited quantities of materials that the U. S. Coast Guard suspected to be visually consistent with Macondo Well oil have been observed on and, where directed by the U.S. Coast Guard, have been removed from portions of Alabama's Gulf of Mexico coastline in 2014.  Additionally, the State of Alabama has provided materials to the U.S. Coast Guard for disposal that the State of Alabama believed to be visually consistent with Macondo Well oil.  BPXP is unaware of any chemical analysis to identify the actual source of that material.  BPXP denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 10:**

Admit that oil spill response activities still occur within the State of Alabama.

*Confidential Pursuant to PTO 13*

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

BPXP objects to this request as overly broad and unduly burdensome to the extent it seeks information not within its possession, custody, or control because the defined term "oil spill response activities" is not limited to activities by BPXP.  BPXP further objects to the term "still occur" as vague and ambiguous.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP admits that removal actions were deemed complete for the last segment in the State of Alabama on March 8, 2013.  BPXP has established a station in Gulf Shores, Alabama, with response standing by to respond to calls to the National Response Center ("NRC") as directed by the U.S. Coast Guard.  Data about responses to the calls to the NRC after March 8, 2013, for any removal actions that took place in the State of Alabama, and may still be taking place, is available in the documentation from the Gulf Coast Incident Management Team ("GCIMT"), which is available to the State of Alabama.  BPXP denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 11:**

Admit that SCAT designated 38 miles of Alabama's Gulf of Mexico shoreline as "heavily oiled."

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

BPXP objects to the term "designated" as being vague and ambiguous in terms of temporal scope, as the areas that were categorized as heavily oiled changed over time.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP admits that NOAA's Environmental Response Management Application ("ERMA") database has reported that the maximum surface oiling (at the peak of oiling) that was categorized as "heavy" on Alabama's Gulf of Mexico shoreline was 38 miles, but that the number of miles designated as "heavy" on Alabama's Gulf of Mexico shoreline had been reduced to 0.3 miles by October 10, 2010.  BPXP

states, however, that the ERMA database is currently undergoing a quality control and data verification

process that is scheduled to be complete by the end of September 2014, and BPXP reserves the right to

update or modify its response upon completion of this process.

## REQUEST FOR ADMISSION NO. 12:

Admit that oil-related materials were removed from each of the land parcels identified in documents AL-ED-000001 through AL-ED-000009.[1]

## RESPONSE TO REQUEST FOR ADMISSION NO. 12:

BPXP objects to the term "land parcels identified" as vague and ambiguous.  The documents

AL-ED-000001 through AL-ED-000009 contain what appear to be satellite images of geographical areas

in the State of Alabama.  Portions of these images are highlighted in blue and portions of the images are

identified by name.  The request is vague and ambiguous as to which "land parcels" are "identified" in

the referenced documents.  BPXP further objects to the document titles as vague and ambiguous, as it is

unclear which portions of the images are "State-owned Tracts," and BPXP answers without admitting or

endorsing these titles.  BPXP further objects to this request to the extent it imposes on BPXP an

obligation to conduct an analysis that is the subject of expert discovery, requiring that it analyze the

referenced documents that the State of Alabama has prepared for purposes of this litigation and make an

assessment of what activities were performed on those properties that the State of Alabama identifies

within those referenced documents.

Subject to and without waiving its specific and general objections, BPXP responds as follows:

BPXP, after conducting a reasonable inquiry, presently lacks sufficient information to enable it to admit

or deny this request.  SCAT data was collected and managed by "segments," as defined by SCAT.

Those SCAT segments do not precisely align with the parcels identified by the State of Alabama and

most available data does not allow BPXP to specifically locate information at the level of portions of

---

[1] Documents AL-ED-000001 through AL-ED-000009 were produced within State's document production Volume 001 (AL-ED001).

SCAT segments. BPXP, however, continues to evaluate this request and will supplement if the information to admit or deny this request is readily obtainable.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP, after conducting a reasonable inquiry, lacks sufficient information to enable it to admit or deny this request. Data concerning the collection and removal of oil-related materials from the Alabama shoreline was not recorded at the land parcel level and, prior to June 2011, was not recorded at the SCAT segment level. Therefore, BPXP lacks sufficient information to admit that oil-related materials were removed from each of the land parcels identified in documents AL-ED-000001 through AL-ED-000009 prior to June 2011. The post-June 2011 Operations data concerning the collection and removal of oil-related materials from the Alabama shoreline was recorded at the SCAT segment level. Although the SCAT segments do not precisely align with the parcels identified by the State of Alabama, the available data indicates that for certain land parcels identified in documents AL-ED-000001 through AL-ED-000009, no oil-related materials were removed after June 2011. Therefore, BPXP lacks sufficient information to admit or deny that oil-related materials were removed from each of the land parcels identified in documents AL-ED-000001 through AL-ED-000009.

**REQUEST FOR ADMISSION NO. 13:**

Admit that oil-related materials were removed from each of the segments identified in documents AL-ED-000001 through AL-ED-000009 on more than one occasion between April 20, 2010 and the present.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

BPXP objects to the term "segments identified" as vague and ambiguous. The documents AL-ED-000001 through AL-ED-000009 contain what appear to be satellite images of geographical areas in the State of Alabama. Portions of these images are highlighted in blue and portions of the images are

identified by name.  The request is vague and ambiguous as to which "segments" are "identified" in the referenced documents.  BPXP further objects to the document titles as vague and ambiguous, as it is unclear which portions of the images are "State-owned Tracts," and BPXP answers without admitting or endorsing these titles. BPXP further objects to this request to the extent it imposes on BPXP an obligation to conduct an analysis that is the subject of expert discovery, requiring that it analyze the referenced documents that the State of Alabama has prepared for purposes of this litigation and make an assessment of what activities were performed on those properties that the State of Alabama identifies within those referenced documents.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP, after conducting a reasonable inquiry, presently lacks sufficient information to enable it to admit or deny this request.  SCAT data was collected and managed by "segments," as defined by SCAT.  Those SCAT segments do not precisely align with the parcels identified by the State of Alabama and most available data does not allow BPXP to specifically locate information at the level of portions of SCAT segments.  BPXP, however, continues to evaluate this request and will supplement if the information to admit or deny this request is readily obtainable.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP, after conducting a reasonable inquiry, lacks sufficient information to enable it to admit or deny this request.  Data concerning the collection and removal of oil-related materials from the Alabama shoreline was not recorded at the land parcel level and, prior to June 2011, was not recorded at the SCAT segment level.  Therefore, BPXP lacks sufficient information to admit that oil-related materials were removed from each of the land parcels identified in documents AL-ED-000001 through AL-ED-000009 on more than one occasion prior to June 2011.  The post-June 2011 data concerning the collection and

removal of oil-related materials from the Alabama shoreline was recorded at the SCAT segment level. Although the SCAT segments do not precisely align with the parcels identified by the State of Alabama, the available data indicates that for certain land parcels identified in documents AL-ED-000001 through AL-ED-000009, oil-related materials were not removed after June 2011. Therefore, BPXP lacks sufficient information to admit or deny that oil-related materials were removed from each of the land parcels identified in documents AL-ED-000001 through AL-ED-000009 on more than one occasion between April 20, 2010 and the present.

**REQUEST FOR ADMISSION NO. 14:**

Admit that land parcels indentified in documents AL-ED-000001 through AL-ED-000009 that are contiguous to the Gulf of Mexico were subject to multiple oil spill response activities, including "Operation Deep Clean".

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

BPXP objects to the term "land parcels indentified" [sic] as vague and ambiguous. The documents AL-ED-000001 through AL-ED-000009 contain what appear to be satellite images of geographical areas in the State of Alabama. Portions of these images are highlighted in blue and portions of the images are identified by name. The request is vague and ambiguous as to which "land parcels" are identified in the referenced documents. BPXP further objects to the document titles as vague and ambiguous, as it is unclear which portions of the images are "State-owned Tracts," and BPXP answers without admitting or endorsing these titles. BPXP further objects to this request as vague and ambiguous as to the undefined term "contiguous to the Gulf of Mexico." BPXP further objects to this request to the extent it imposes on BPXP an obligation to conduct an analysis that is the subject of expert discovery, requiring that it analyze the referenced documents that the State of Alabama has prepared for purposes of this litigation and make an assessment of what activities were performed on those properties that the State of Alabama identifies within those referenced documents.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP, after conducting a reasonable inquiry, presently lacks sufficient information to enable it to admit or deny this request. SCAT data was collected and managed by "segments," as defined by SCAT. Those SCAT segments do not precisely align with the parcels identified by the State of Alabama and most available data does not allow BPXP to specifically locate information at the level of portions of SCAT segments. BPXP, however, continues to evaluate this request and will supplement if the information to admit or deny this request is readily obtainable.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP denies that each of the land parcels identified in documents AL-ED-000001 through AL-ED-000009 that are contiguous to the Gulf of Mexico were subject to multiple oil spill response activities, including "Operation Deep Clean," which for the purposes of this response BPXP understands to mean the coordinated program, announced in October 2010, between BP, the U.S. Coast Guard, and local officials, to clean certain beaches in Alabama utilizing particular treatment methods. At least the parcels identified in AL-ED-000007, AL-ED-000008, and AL-ED-000009 were not subject to "Operation Deep Clean."

**REQUEST FOR ADMISSION NO. 15:**

Admit that Alabama's coastal areas attract tourists.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

BPXP objects to this request as overly broad and unduly burdensome to the extent it seeks information not within its possession, custody, or control.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP admits that individuals visit certain areas of Alabama's coast for recreational or leisure purposes.

**REQUEST FOR ADMISSION NO. 16:**

Admit that Alabama's coastal areas generate tourism for the State of Alabama.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

BPXP objects to this request as overly broad and unduly burdensome to the extent it seeks information not within its possession, custody, or control.  BPXP objects to this request as vague and ambiguous as to the undefined phrase "generate tourism for the State of Alabama."

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP admits that individuals visit certain areas of Alabama's coast for recreational or leisure purposes.

**REQUEST FOR ADMISSION NO. 17:**

Admit that tourists are less likely to visit Alabama's coastal areas if those coastal areas contain oil-related materials.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

BPXP objects to this request because it does not define the applicable time period or the degree and character of oiling, and seeks information not presently in the scope of BPXP's knowledge, as information regarding the impact of the *Deepwater Horizon* Oil Spill on Alabama tourism in the possession of the State of Alabama is a subject of BPXP's discovery requests to the State of Alabama. BPXP also objects to the request to the extent it seeks a speculative response regarding what third party tourists are more or less likely to do.

Subject to and without waiving its specific and general objections, BPXP responds as follows: Background oil, including from natural hydrocarbon seeps from the sea floor, commercial shipping activities, and offshore oil production in the Gulf, was present in Alabama's coastal areas both before and after the *Deepwater Horizon* Oil Spill and after conducting a reasonable inquiry, the information BPXP has or can readily obtain is insufficient to enable it to admit or deny this request.

13

*Confidential Pursuant to PTO 13*

**REQUEST FOR ADMISSION NO. 18:**

Admit that the number of tourists to the Alabama Gulf Coast declined in 2010 as a result of the oil spill.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

BPXP objects to this request because it seeks information not presently in the scope of BPXP's knowledge, as information regarding the impact of the *Deepwater Horizon* Oil Spill on Alabama tourism is a subject of BPXP's discovery requests to the State of Alabama.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP admits upon information and belief, that there was a short-lived decrease in tourism-related activity in certain Alabama coastal areas during the summer of 2010 with trends returning to normal in the fall of 2010 and that the *Deepwater Horizon* Oil Spill, amongst other things, including a local and national economic downturn, may have contributed to a decrease in tourism-related activity to certain Alabama coastal areas during the summer of 2010.

**REQUEST FOR ADMISSION NO. 19:**

Admit that a decline in the number of tourists to Alabama's coastal counties in 2010 resulted in a decline in tourism in 2010.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

BPXP objects to this request as vague and ambiguous as written. BPXP objects to this request because it seeks information not presently in the scope of BPXP's knowledge, as information regarding the impact of the *Deepwater Horizon* Oil Spill on Alabama tourism is a subject of BPXP's discovery requests to the State of Alabama.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP admits upon information and belief, that there was a short-lived decrease in the number of individuals that visited certain Alabama coastal areas during the summer of 2010 for recreational or leisure purposes with trends returning to normal in the fall of 2010, and that this decrease led to a brief

*Confidential Pursuant to PTO 13*

decrease in tourism-related activity for certain Alabama coastal areas.

*Confidential Pursuant to PTO 13*

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify your officers, directors, employees, contractors, and/or persons acting on your behalf who organized, participated in, assisted in or oversaw your beach and/or coastal cleanup operations during the Macondo oil spill response within the State of Alabama, including each person's role, responsibility, affiliation, nature of activities performed, time duration of involvement, amounts paid by you for services, and specific location of involvement.

**RESPONSE TO INTERROGATORY NO. 1:**

BPXP objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it calls for the identity of every individual who had any role in clean-up efforts in Alabama related to the *Deepwater Horizon* Oil Spill. BPXP objects to this interrogatory as overly broad, vague, and ambiguous as to the undefined term "persons acting on your behalf" to the extent it includes individuals with a relationship to BPXP other than those categories expressly listed or individuals who do not have an employee or agent relationship to BPXP. BPXP objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks detailed information far beyond whatever may be reasonably necessary to ascertain the identity of those individuals sought by this request. BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: Thousands of individuals participated in BPXP's beach and/or coastal cleanup operations during the *Deepwater Horizon* Oil Spill response within the State of Alabama. BPXP further states that it has produced thousands of ICS organization charts that identify individuals who participated in beach and/or coastal cleanup operations during the *Deepwater Horizon* Oil Spill response within the State of Alabama and the burden of deriving or ascertaining information responsive to this interrogatory from these documents is substantially the same for Alabama as it is for BPXP. Therefore, in accordance with Federal Rule of Civil Procedure 33(d), BPXP refers Alabama to the documents produced at the

16

*Confidential Pursuant to PTO 13*

following bates ranges: BP-HZN-2179MDL00584759 - BP-HZN-2179MDL00598498;  and BP-HZN-2179MDL01075747 - BP-HZN-2179MDL01088370.  BPXP will also produce documents sufficient to show amounts paid for services regarding beach and/or coastal cleanup operations during the *Deepwater Horizon* Oil Spill response within the State of Alabama.

## INTERROGATORY NO. 2:

Identify your officers, directors, employees, and/or persons acting on your behalf that organized, participated in, oversaw or provided input into your efforts to mitigate economic losses sustained by the State of Alabama, its individuals, and/or its businesses following the Macondo oil spill, including each person's role, responsibility, affiliation, and time period of involvement.

## RESPONSE TO INTERROGATORY NO. 2:

BPXP objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it calls for the identity of every individual who had any role in activities in Alabama in response to the *Deepwater Horizon* Oil Spill. BPXP objects to this interrogatory as overly broad, vague, and ambiguous as to the undefined term "persons acting on your behalf" to the extent it includes individuals with a relationship to BPXP other than those categories expressly listed or individuals who do not have an employee or agent relationship to BPXP.  BPXP objects to this interrogatory as calling for information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, and/or other applicable privileges, exemptions, or immunities.  BPXP objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks detailed information far beyond whatever may be reasonably necessary to ascertain the identity of those individuals sought by this request.  BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: Thousands of individuals participated in BPXP's efforts to mitigate the effects of the *Deepwater Horizon* Oil Spill in the State of Alabama.  BPXP further states that it has produced thousands of ICS

17

*Confidential Pursuant to PTO 13*

organization charts that identify individuals who participated in BPXP's efforts to mitigate the effects of the *Deepwater Horizon* Oil Spill and the burden of deriving or ascertaining information responsive to this interrogatory from these documents is substantially the same for Alabama as it is for BPXP. Therefore, in accordance with Federal Rule of Civil Procedure 33(d), BPXP refers Alabama to the documents produced at the following bates ranges: BP-HZN-2179MDL00584759 - BP-HZN-2179MDL00598498; and BP-HZN-2179MDL01075747 - BP-HZN-2179MDL01088370.

## INTERROGATORY NO. 3:

Identify all third parties, including State of Alabama employees or agents, whom you believe possess knowledge, information, studies, and/or documents regarding or relating to the State of Alabama's claims.

## RESPONSE TO INTERROGATORY NO. 3:

BPXP objects to this interrogatory as premature because discovery has just begun and to the extent that the State of Alabama has not fully identified the scope of its claims. BPXP objects to this interrogatory as premature to the extent it calls for expert discovery. BPXP objects to this interrogatory to the extent it considers employees or agents acting on behalf of Alabama as third parties. BPXP objects to this interrogatory to the extent Alabama seeks to impose its obligation to conduct a reasonable search for information relevant to this litigation or responsive to BPXP's discovery requests onto BPXP. BPXP objects to this interrogatory as calling for information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, and/or other applicable privileges, exemptions, or immunities. BPXP objects to this interrogatory as seeking information outside the permissible scope of discovery, BPXP's belief as to the knowledge of third parties alone is not discoverable and Alabama will receive appropriate notice of any third parties from whom BPXP seeks to take discovery and BPXP's trial witness list.

Subject to and without waiving its specific and general objections, BPXP responds as follows:

*Confidential Pursuant to PTO 13*

BPXP incorporates by reference as though fully stated herein, the individuals and entities identified as having relevant knowledge and/or information in the parties' Federal Rule of Civil Procedure 26 disclosures and any amendments and/or supplements thereto, including without limitation the following: The State of Alabama's Fed. R. Civ. P. 26(A) Initial Disclosures, served on February 26, 2014; Amendment To The State of Alabama's Fed. R. Civ. P. 26(a) Initial Disclosures, served on March 28, 2014; The State of Alabama's Second Amended Rule 26(a) Disclosures, served on July 17, 2014; the BP Defendants' Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1), served on February 26, 2014; Halliburton Energy Services, Inc.'s Initial Disclosures For The State Of Alabama's Claims For Compensatory Damages, served on February 26, 2014; and Transocean's Initial Disclosures Pursuant to Rule 26(a)(1) Of The Federal Rules Of Civil Procedure, served on February 26, 2014.

Although fact discovery has only recently commenced, BPXP believes that third parties and entities involved in the *Deepwater Horizon* Oil Spill response, such as federal responders and third-party contractors, and third parties and entities involved in studying or analyzing national and Alabama economic conditions and impacts, such as the National Institute for Occupational Safety and Health, National Oceanic and Atmospheric Administration and United States Coast Guard, may have information relevant to Alabama's claims.  Additionally, based upon the information currently available, BPXP also believes that the following state agencies and departments for which Alabama has represented it does not "control" for purposes of this litigation, have information and knowledge relevant to the State's claims and/or BPXP's defenses:

- Alabama Coastal Recovery Commission

- Alabama Gulf Coast Convention and Visitor's Bureau

- Alabama Gulf Coast Recovery Council

- Auburn University system

*Confidential Pursuant to PTO 13*

- Retirement Systems of Alabama

- University of Alabama system

The information that this interrogatory seeks is also the subject of expert discovery and such information will be addressed in forthcoming expert reports in accordance with the dates set forth in the Court's July 16, 2014 scheduling order.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

Subject to and without waiving its specific and general objections, BPXP responds as follows: Based on its investigation to-date, the identity of third parties involved in the *Deepwater Horizon* Oil Spill response who may possess information relating to the State of Alabama's claims include, Federal On-Scene Coordinators, Alabama State On-Scene Coordinators, and Incident Commanders.  Because Alabama participated in the *Deepwater Horizon* Oil Spill response Unified Command structure, the identities of these individuals are equally available to Alabama as to BPXP.  To the extent this interrogatory seeks the identity of every third party involved in *Deepwater Horizon* Oil Spill response activities in or directed to Alabama, including Unified Command and/or SCAT team members, it is overly broad and unduly burdensome, but pursuant to Federal Rule of Civil Procedure 33(d) additional information regarding the identity of individuals who participated in response activities may be derived or ascertained from the following documents: BP-HZN-2179MDL00584759 - BP-HZN-2179MDL00598498; BP-HZN-2179MDL01075747 - BP-HZN-2179MDL01088370; and BP-HZN-ALO01303989 - BP-HZN-ALO01304509.

## INTERROGATORY NO. 4:

Identify all persons with whom you, your officers, directors, employees, and/or other persons acting on your behalf have communicated and/or consulted with, either directly or indirectly, from April 20, 2010 to present, regarding either the State of Alabama's potential or actual economic and/or property claims resulting from the oil spill, including the name of all persons encompassed in the communication, their affiliation, their role and responsibilities, time of communication, and the specific substance of the communication.

**RESPONSE TO INTERROGATORY NO. 4:**

BPXP objects to this interrogatory as overly broad, vague, and ambiguous as to the undefined phrases "persons acting on your behalf" to the extent it includes individuals with a relationship to BPXP other than those categories expressly listed or individuals who do not have an employee or agent relationship to BPXP.  BP objects to this interrogatory as overly broad, vague, and ambiguous to the extent it requests information about persons that BPXP has "communicated and/or consulted with … indirectly."  BPXP objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, or any other applicable privilege, exemption, or immunity.  BPXP objects to this interrogatory to the extent it calls for premature disclosure of BPXP's testifying expert witnesses.  BPXP objects to this interrogatory as overly broad and not reasonably calculated to lead to the discovery of admissible evidence to the extent "the oil spill" refers to anything other than the *Deepwater Horizon* Oil Spill. BPXP objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks detailed information far beyond whatever may be reasonably necessary to ascertain the identity of those individuals with whom BPXP may have communicated regarding Alabama's claims.  BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP is continuing to conduct a reasonable search, but is not presently aware of any non-privileged communications or consultations responsive to this interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

Subject to and without waiving its specific and general objections, BPXP responds as follows: Although Alabama should be equally aware of any communications between BPXP and the State of Alabama that are responsive to this interrogatory, pursuant to Federal Rule of Civil Procedure 33(d),

*Confidential Pursuant to PTO 13*

information regarding communications between BPXP and Alabama that may be responsive, and not

otherwise protected from discovery,  may be derived or ascertained from the following document: BP-

HZN-ALO00232953-55.  Because other potentially responsive communications between BPXP and the

State of Alabama may be protected from discovery by, among other things, the parties' 2012 Settlement

Discussion Confidentiality Agreement, BPXP is willing to meet and confer with Alabama to discuss

specific communications that Alabama believes may be responsive and not otherwise protected from

disclosure.

### INTERROGATORY NO. 5:

Identify all statements or admissions you contend were made by any State of Alabama
employee or agent that support your contentions and/or defenses regarding the State of Alabama's
claims, including the identity of the person making the statement or admission, the alleged
statement or admission, when the statement or admission was made, all persons you contend
received the statement and/or admission, and your perceived authority of the person to make the
admission.

### RESPONSE TO INTERROGATORY NO. 5:

BPXP objects to this contention interrogatory as premature because discovery has just begun,

Alabama bears the burden of proof on its damages claim, and Alabama has not provided the specific

damages calculations and methodologies upon which it intends to rely to support the damages categories

identified in its Second Amended Rule 26(a) Disclosures served on July 17, 2014.  BPXP objects to this

interrogatory as premature to the extent it calls for expert discovery.  BPXP objects to this interrogatory

as seeking to impose an obligation on BPXP to identify all potential trial exhibits and deposition

designations in advance of the deadlines set by the Court's July 16, 2014 scheduling order.  BPXP

reserves the right to rely on potential trial exhibits or impeachment evidence that are not within its

possession, custody, or control and that are identified after the close of fact discovery.  BPXP objects to

this interrogatory as calling for information protected by the attorney-client privilege, the work-product

doctrine, the joint-defense or common-interest privilege, and/or other applicable privileges, exemptions,

*Confidential Pursuant to PTO 13*

or immunities.  BPXP objects to this interrogatory as seeking information outside the permissible scope of discovery, BPXP's belief as to the significance of any document, testimony, statement, or admission alone is not discoverable, and Alabama will receive appropriate notice of BPXP's intended trial exhibits and deposition designations.  BPXP objects to this interrogatory as vague and ambiguous as to the undefined term "admissions."  BPXP objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks detailed information far beyond whatever may be reasonably necessary to locate or ascertain "statements or admissions" sought by this request.  BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP incorporates by reference as though fully stated herein, the specific documents and categories of documents identified as containing relevant information in the parties' Federal Rule of Civil Procedure 26 disclosures and any amendments and/or supplements thereto, including without limitation the following: The State of Alabama's Fed. R. Civ. P. 26(A) Initial Disclosures, served on February 26, 2014; Amendment To The State of Alabama's Fed. R. Civ. P. 26(a) Initial Disclosures, served on March 28, 2014; The State of Alabama's Second Amended Rule 26(a) Disclosures, served on July 17, 2014; the BP Defendants' Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1), served on February 26, 2014; Halliburton Energy Services, Inc.'s Initial Disclosures For The State Of Alabama's Claims For Compensatory Damages, served on February 26, 2014; and Transocean's Initial Disclosures Pursuant to Rule 26(a)(1) Of The Federal Rules Of Civil Procedure, served on February 26, 2014. BPXP further incorporates by reference as though fully stated herein, the specific documents and categories of documents identified as containing relevant information in Defendants' Joint Submission Regarding the Court's June 13 Draft Scheduling Order, emailed to the Court and Alabama on July 7, 2014.

*Confidential Pursuant to PTO 13*

Although fact discovery has only recently commenced, BPXP believes that publicly available reports, submissions, and statements by State of Alabama employees or agents regarding the economic impact of the national recession on the State of Alabama and its tax revenues may support certain BPXP claims and defenses. Such reports, submissions and statements are publicly available or otherwise accessible to the State of Alabama, and the burden of deriving or ascertaining the answer is substantially the same for either party.

The information that this interrogatory seeks is also the subject of expert discovery and such information will be addressed in forthcoming expert reports in accordance with the dates set forth in the Court's July 16, 2014 scheduling order.

## INTERROGATORY NO. 6:

Identify and describe all instances of oil-related material events within the State of Alabama and 15 miles therefrom, including but not limited to, the date of discovery, location of discovery, description of discovery (stranded, buried, water surface, water subsurface), volume, severity, weight, whether recovered, the recovering party, and the method and location of disposal.

## RESPONSE TO INTERROGATORY NO. 6

BPXP objects to this interrogatory as seeking information not within its possession, custody, or control. BPXP objects to this interrogatory to the extent it seeks information that is already in Alabama's possession, custody, or control or that is as equally available to Alabama as to BPXP. BPXP objects to this interrogatory as vague and ambiguous as to the term "State of Alabama and 15 miles therefrom," because it would encompass areas that are not likely to lead to the discovery of admissible evidence and does not clearly define the area to which the interrogatory pertains. BPXP also objects to this interrogatory as vague and ambiguous as to the undefined term "severity." BPXP objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks detailed information far beyond whatever may be reasonably necessary to locate or ascertain the "instances of oil-related material events" sought by this request. BPXP objects to this interrogatory as compound and containing multiple

discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: Pursuant to Rule 33(d), information responsive to this interrogatory may be derived or ascertained from the following documents, which are publicly available or otherwise accessible to the State of Alabama, and the burden of deriving or ascertaining the answer is substantially the same for either party: Segment Completion Packages, SCAT Daily Reports, Operations Recovery Reports, and SCAT survey data.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

Subject to and without waiving its specific and general objections, BPXP responds as follows: Pursuant to Rule 33(d), additional information responsive to this interrogatory may be derived or ascertained from the following documents, which are publicly available or otherwise accessible to the State of Alabama, and the burden of deriving or ascertaining the answer is substantially the same for either party: NRC Response Data.

**INTERROGATORY NO. 7:**

Identify all method(s) or criteria utilized by you to fingerprint, identify and/or otherwise confirm the source of oil-related materials recovered during oil spill response activities as those originating from the MC252 well and the person(s) who applied such method or criteria to identify or confirm the source of oil-related materials on your behalf.

**RESPONSE TO INTERROGATORY NO. 7:**

BPXP objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding "all method(s) or criteria utilized" and to the extent it seeks the identity of all "person(s) who applied such method or criteria." BPXP objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks detailed information far beyond whatever may be reasonably necessary to ascertain the "method(s) or criteria" sought by this request. BPXP objects to this interrogatory as compound and containing multiple discrete subparts. BPXP objects to this interrogatory to the extent it calls for

information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, and/or other applicable privileges, exemptions, or immunities.

Subject to and without waiving its specific and general objections, BPXP responds as follows: The U.S. Coast Guard, working within Unified Command, performed visual identification and chemical analysis of potential MC252 oil through the Coast Guard's Marine Safety Lab ("MSL").  Separate and apart from the visual identification and chemical fingerprinting conducted by Unified Command during the Response that was utilized to dictate cleanup and removal efforts, BPXP retained Exponent to perform additional analyses of certain samples of oil observed and collected from shorelines across the Area of Response, but this was not utilized to dictate the cleanup and removal efforts during the Response.  Information about the methodologies and criteria applied by the U.S. Coast Guard MSL are beyond the scope of information available to BPXP.  BPXP will conduct a reasonable search for non-privileged reports and presentations describing the methodologies for analysis and interpretation it has employed that are in its possession, custody, or control to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

Subject to and without waiving its specific and general objections, BPXP responds as follows: Pursuant to Rule 33(d), additional information responsive to this interrogatory may be derived or ascertained from the following documents: BP-HZN-ALO01304510 - BP-HZN-ALO01304671.

**INTERROGATORY NO. 8:**

To the extent that you, your officers, directors, employees, and/or persons working on your behalf have attempted to quantify the oil spill's economic impact (whether negative or positive) on the State of Alabama, including its economy, geographical locations or business industries, describe in detail your quantification efforts (regardless of how advanced those efforts may be), including, but not limited to, all persons involved in each quantification attempt; their affiliation with you; specific quantification method(s), analysis modeling and limitations utilized; any studies, analysis,

calculations and/or modeling relied upon; any changes to your quantification method(s) over time; the status of quantification; all results of your quantification efforts; and data retained, consulted or reviewed in connection with any such quantification.

## RESPONSE TO INTERROGATORY NO. 8:

BPXP objects to this interrogatory as calling for information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, and/or other applicable privileges, exemptions, or immunities.   BPXP objects to this interrogatory as overly broad and unduly burdensome at least to the extent it requests a description of "all persons" and "all results." BPXP objects to this interrogatory as vague and ambiguous as to the undefined terms and phrases "analysis modeling and limitations" and "the status of quantification."   BPXP objects to this interrogatory as overly broad, vague, and ambiguous as to the undefined term "persons working on your behalf" to the extent it includes individuals with a relationship to BPXP other than those categories expressly listed or individuals who do not have an employee or agent relationship to BPXP.   BPXP objects to this interrogatory as premature to the extent it calls for expert discovery.   BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: After conducting a reasonable search, BPXP is not aware of any non-privileged quantification of the *Deepwater Horizon* oil spill's economic impact on the State of Alabama, but did publish periodic reports that tracked economic indicators such as employment growth, GDP growth, commercial and recreational fishing trends, and tourism for the Gulf Coast region.   To the extent these reports are responsive to this interrogatory, BPXP will produce them.

## INTERROGATORY NO. 9:

To the extent that you, your officers, directors, employees, and/or persons working on your behalf have attempted to quantify the oil spill's impact on the State of Alabama's tax streams (regardless of how advanced), describe in detail your quantification efforts, including, but not limited to, all persons involved in each quantification attempt; their affiliation with you; specific

*Confidential Pursuant to PTO 13*

quantification method(s), analysis modeling and limitations utilized; any studies, analysis, calculations and/or modeling relied upon; any changes to your quantification method(s) over time; the status of quantification; all results of your quantification efforts; and data retained, consulted or reviewed in connection with any such quantification.

## RESPONSE TO INTERROGATORY NO. 9:

BPXP objects to this interrogatory as calling for information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, and/or other applicable privileges, exemptions, or immunities.   BPXP objects to this interrogatory as overly broad and unduly burdensome at least to the extent it requests a description of "all persons" and "all results." BPXP objects to this interrogatory as vague and ambiguous as to the undefined terms and phrases "analysis modeling and limitations" and "the status of quantification."   BPXP objects to this interrogatory as overly broad, vague, and ambiguous as to the undefined term "persons working on your behalf" to the extent it includes individuals with a relationship to BPXP other than those categories expressly listed or individuals who do not have an employee or agent relationship to BPXP.   BPXP objects to this interrogatory as premature to the extent it calls for expert discovery.  BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: After conducting a reasonable search, BPXP is not presently aware of any non-privileged quantification of the oil spill's impact on the State of Alabama's tax streams responsive to this interrogatory.

## INTERROGATORY NO. 10:

To the extent you, your officers, directors, persons and/or employees working on your behalf discovered, but did not recover, oil-related materials within the State of Alabama, identify each instance, including but not limited to, the date of discovery, location of discovery, description of discovery (stranded, buried, water surface, water subsurface), volume, severity, weight, the reasons why oil-related materials were not recovered, and specific persons consulted to determine whether to recover the oil-related materials.

## RESPONSE TO INTERROGATORY NO. 10:

BPXP objects to this interrogatory as overly broad, unduly burdensome, and not reasonably

*Confidential Pursuant to PTO 13*

calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding "each instance" where BPXP "discovered, but did not recover, oil-related materials within the State of Alabama." BPXP objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks detailed information far beyond whatever may be reasonably necessary to ascertain the instances of discovery but unrecovered oiling sought by this request. BPXP objects to this interrogatory as vague and ambiguous as to the undefined term "severity." BPXP objects to this interrogatory as overly broad, vague, and ambiguous as to the undefined term "persons … working on your behalf" to the extent it includes individuals with a relationship to BPXP other than those categories expressly listed or individuals who do not have an employee or agent relationship to BPXP. BPXP objects to this interrogatory as compound and containing multiple discrete subparts. BPXP further objects to this interrogatory to the extent it seeks information that is already in Alabama's possession, custody, or control or that is as equally available to Alabama as to BPXP, particularly because the State of Alabama had a representative on each SCAT Team that surveyed the shoreline to assess the degree of oiling and make treatment recommendations.

Subject to and without waiving its specific and general objections, BPXP responds as follows: The assessment and treatment of shoreline oiling in the State of Alabama was performed at the direction of the Federal On-Scene Coordinator and in accordance with Shoreline Treatment Recommendations and the Shoreline Cleanup Completion Plan, which was approved by Alabama's State On-Scene Coordinator. The Shoreline Treatment Recommendations and the Shoreline Cleanup Completion Plan do not require removal of all observed MC252 oil in order to achieve the consensus-based cleanup endpoints that were developed pursuant to the net environmental benefit concept. Therefore, pursuant to and consistent with the Shoreline Treatment Recommendations and the Shoreline Cleanup Completion Plan, there were instances during the Response where observable oil was not recovered from shorelines

within the State of Alabama.

In addition, there were instances when landowners or resource trustees objected to operations to remove suspected or observable oil on segments within the territorial boundary of the State of Alabama. In these instances, in accordance with the Federal On-Scene Coordinator's authority and after consultation with the GCIMT including the Alabama State On-Scene Coordinator, certain observable oil-related materials were not recovered. Furthermore, there were instances where the Federal On-Scene Coordinator directed that suspected or observable oil would not be recovered due to the intervening actions of landowners or resource trustees, as was the case on segments at the Bon Secour National Wildlife Refuge and during various dredge spoil placement and beach replenishment projects.

Pursuant to Rule 33(d), additional information responsive to this interrogatory may be derived or ascertained from the following documents, which are publicly available or otherwise accessible to the State of Alabama, and the burden of deriving or ascertaining the answer is substantially the same for either party: Segment Completion Packages; SCAT Daily Reports; Operations Recovery Reports; and SCAT survey data.

## INTERROGATORY NO. 11:

To the extent you, your officers, directors, persons and/or employees working on your behalf are aware of the existence of submerged oil mats within the State of Alabama or 15 miles therefrom from April 20, 2010 to present, identify and describe the existence of these submerged oil mats, including, but not limited to, the location(s) of the submerged oil mat, its surface area, thickness, weight, volume, date of discovery, identification of corresponding onshore SCAT segments date of removal and/or recovery, the volume of submerged oil mat removed versus not removed, and all persons known to you who either were present at the time of or possess knowledge of the responsive events.

## RESPONSE TO INTERROGATORY NO. 11:

BPXP objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding each and every submerged oil mat of which BPXP may be aware and "all persons known to you."

BPXP objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks detailed information far beyond whatever may be reasonably necessary to ascertain the instances of discovery of oiling sought by this request.  BPXP objects to this interrogatory as vague and ambiguous as to the term "State of Alabama and 15 miles therefrom," because it would encompass areas that are not likely to lead to the discovery of admissible evidence and does not clearly define the area to which the interrogatory pertains.  BPXP objects to this interrogatory as overly broad, vague, and ambiguous as to the undefined term "persons … working on your behalf" to the extent it includes individuals with a relationship to BPXP other than those categories expressly listed or individuals who do not have an employee or agent relationship to BPXP.  BPXP objects to this request as vague, ambiguous, and confusing as to its use of the defined term "surface."   BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: Pursuant to Rule 33(d), information responsive to this interrogatory may be derived or ascertained from the following documents, and the burden of deriving or ascertaining the answer is substantially the same for either party: OSAT 3 Reports and Appendices; Summary Technical Report for Submerged Oil Mat Tactical Plan Phase I Execution; Segment Completion Packages; SCAT Daily Reports; Operations Recovery Reports; Snorkel SCAT survey data; and reports of sand borrow pit sampling.

**INTERROGATORY NO. 12:**

To the extent you conducted or possess within your control an oil constituent baseline survey for any location within the State, please describe the baseline survey results in detail, including, but not limited to, the baseline survey method(s) utilized by BP, the persons responsible for constructing the baseline survey, the persons responsible for performing the baseline survey, the results of the baseline survey test and any comparison results thereafter.

**RESPONSE TO INTERROGATORY NO. 12:**

BPXP objects to this interrogatory as overly broad, unduly burdensome, and not reasonably

*Confidential Pursuant to PTO 13*

calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding each and every "oil constituent baseline survey" BPXP conducted or possesses. BPXP objects to this interrogatory as overly broad, vague, and ambiguous as to the undefined term "persons responsible for constructing the baseline survey." BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP has not conducted independent surveys for oil related compounds that may have been present prior to the *Deepwater Horizon* Oil Spill in the State of Alabama, but BPXP is aware of and does possess surveys or analyses conducted by other entities, including surveys conducted pursuant to the SCAT program in 2010. Throughout May 2010 and prior to the arrival of MC252 oil on the State of Alabama's shoreline, SCAT field teams documented background shoreline conditions on certain segments of shoreline in the State of Alabama. Certain shoreline segments were surveyed between one and five times within this period. In Alabama, shoreline segments along Dauphin Island, Gulf Shores, and Orange Beach were surveyed. On Dauphin Island, 49.5 kilometers were surveyed with 286 tarballs observed (5.8 average tarballs/km). The highest frequency of tarballs was 192.3/km with the average tarball size of 2.6 cm and the largest size of 6.0 cm. On Gulf Shores, 40.6 kilometers were surveyed with 40 tarballs observed (1 average tarball/km). The highest frequency of tarballs was 18.6/km with the average tarball size of 0.4 cm and the largest size of 15 cm. On Orange Beach, 8.4 kilometers were surveyed with zero tarballs observed.

BPXP is aware of additional pre-landfall baseline surveys conducted by federal agencies including the United States Geological Science Centers and the National Oceanic and Atmospheric Administration ("NOAA"), as summarized in part in the OSAT 1 report. Specifically, NOAA's Mussel Watch program has data concerning oil related compounds that may have been present at over 300 sites

in the Gulf of Mexico prior to the *Deepwater Horizon* spill.  Additionally, prior to landfall of MC252 oil

and beginning on May 7, 2010, the United States Geological Science Centers in Texas, Louisiana,

Mississippi, Alabama, and Florida began sampling at 70 sites in priority areas in the northern Gulf of

Mexico.  The USGS independently collected data on pre-landfall conditions for future comparison to

post-landfall samples from the same locations.  Additionally, the OSAT team collected pre-sediment

samples in the nearshore zones at multiple locations before landfall of MC252 oil.  These were samples

collected prior to June 1, 2010 in Alabama, approximately when visible oil reached its shoreline.  Out of

a total of 239 pre-impact sediment samples collected across all states, 96 samples had detected oil related

organic compounds.

Finally, there is pre-impact assessment data, gathered as part of various cooperative and

independent NRD studies.  BPXP will conduct a reasonable search for non-privileged documents

relating to this data that are in its possession, custody, or control to the extent such documents exist and

are not already in the possession of Alabama, or are not equally available to Alabama from sources other

than BPXP, including publicly available sources.

### INTERROGATORY NO. 13:

To the extent that you contend you are entitled to an offset to the State's economic losses
resulting from the oil spill, provide a detailed description supporting your contention, including, but
not limited to, the value of the offset you contend you are entitled to, all payments and/or
contributions, date of payments and/or contributions, the recipient of the payments and/or
contributions, the payor of the payments and/or contributions, the designated use of said payments
and/or contributions, and the resulting impact you contend effectuates an offset.

### RESPONSE TO INTERROGATORY NO. 13:

BPXP objects to this contention interrogatory as premature because discovery has just begun,

Alabama bears the burden of proof on its damages claim, and Alabama has not provided the specific

damages calculations and methodologies upon which it intends to rely to support the damages categories

identified in its Second Amended Rule 26(a) Disclosures served on July 17, 2014.  BPXP objects to this

*Confidential Pursuant to PTO 13*

interrogatory as premature to the extent it calls for expert discovery.  BPXP objects to this interrogatory as vague and ambiguous as to the undefined term "the resulting impact you contend effectuates an offset."  BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP has made numerous substantial voluntary monetary commitments that BPXP may apply as an offset to the State's economic losses resulting from the *Deepwater Horizon* Oil Spill.  These monetary commitments include, but are not limited to:

a)      In August 2010, BPXP established a $20 billion trust fund to pay legitimate claims for damages, response costs, and other costs associated with the Spill. Between April 20, 2010 and February 28, 2014 BPXP has paid: (1) approximately $1.8 billion to individuals and businesses in Alabama through various claims processes, and (2) approximately $115 million in government payments in Alabama.

b)      BPXP has spent more than $14 billion on Response and cleanup activities in connection with the *Deepwater Horizon* Incident and Oil Spill. This more than $14 billion includes block grants that BPXP advanced to state and local governments to cover costs associated with responding to the *Deepwater Horizon* Incident and Spill.  In May 2010, BPXP provided a $25 million block grant to each of the states of Alabama, Florida, Louisiana, and Mississippi.  In June 2010, BPXP provided an additional block grant of $25 million to Alabama for the continued implementation of the State's Area Contingency Plan.

c)      Under an agreement announced in May 2011, BPXP helped support the seafood industry by paying or committing to pay the State of Alabama $4 million for seafood testing and $5 million for seafood marketing.

d)      In March 2011, BP committed $16 million to the State of Alabama for the

*Confidential Pursuant to PTO 13*

promotion of tourism.

e)      BPXP voluntarily committed $1 billion to fund early restoration projects through an Early Restoration Framework Agreement with the state and federal Natural Resource Trustees. The Alabama trustees who entered into the Framework Agreement with BPXP are the Alabama Department of Conservation and Natural Resources and the Alabama Geologic Survey.

f)      In July 2010, BPXP established a $100 million rig worker assistance fund through the Baton Rouge Area Foundation to support unemployed rig workers.

g)      Among the many initiatives and grants BPXP provided to monitor and treat health concerns in connection with the Incident, Oil Spill, and Response, in August 2010, BPXP provided $52 million to federal and state health organizations to fund behavioral health support and outreach programs in Alabama and the other Gulf States.

h)      In addition to examples of specific voluntary monetary contributions described above, BPXP has supported and continues to support Alabama communities, tourism, the educational system, the health, environment, and economy of Alabama through other large and small-scale efforts including grants, initiatives, scholarships, advertising, memberships, contributions, and donations.  BPXP's spending in these areas within the State of Alabama totaled over approximately $2.2 million from 2010 through 2013.

i)      Academic institutions in Alabama are receiving money through the Gulf of Mexico Research Initiative (GoMRI) funded by a $500 million grant from BP to study the effects of oil spills.

BPXP's efforts, and the effectiveness of those efforts in promoting the environment, human health, and the economy of Alabama and the other Gulf States, have been recognized by U.S. government, state and local officials in numerous publicly available reports, submissions, and

*Confidential Pursuant to PTO 13*

statements, as well as in other documents already produced and/or to be produced as part of the MDL 2179 proceedings.  BPXP reserves the right to present additional evidence regarding its substantial voluntary monetary commitments and the extent to which those commitments may have offset the State's claimed economic losses resulting from the *Deepwater Horizon* oil spill, including through the production of documents relating to BPXP's initiatives in response to Request for Production Nos. 36 and 37 and through expert discovery.  Additionally, BPXP is entitled to an offset or credit for any and all payments received by Alabama from any other co-defendant, or any other private or governmental entity, related to Alabama's alleged damages from the Oil Spill, as well as an offset or credit for taxes paid to Alabama on income associated with any such payments related to the Oil Spill.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

Subject to and without waiving its specific and general objections, BPXP supplements its previous response as follows: BPXP has made numerous substantial voluntary monetary commitments that BPXP may apply as an offset to the State's economic losses resulting from the *Deepwater Horizon* Oil Spill.  These monetary commitments include, but are not limited to:

a)        In August 2010, BPXP established a $20 billion trust fund to pay legitimate claims for damages, response costs, and other costs associated with the Spill. Between April 20, 2010 and February 28, 2014 BPXP has paid: (1) approximately $1.8 billion to individuals and businesses in Alabama through various claims processes, and (2) approximately $115 million in government payments in Alabama.  Pursuant to Rule 33(d), additional information responsive to this interrogatory may be derived or ascertained from the following documents: BP-HZN-ALO00050309; BP-HZN-ALO00050391; BP-HZN-ALO00050558; BP-HZN-ALO00089539; BP-HZN-ALO00089616;        BP-HZN-ALO00089668;        BP-HZN-ALO00089670;        BP-HZN-ALO00089689; BP-HZN-ALO00233172; BP-HZN-ALO00299595; BP-HZN-ALO00299897; BP-

*Confidential Pursuant to PTO 13*

HZN-ALO00300578;       BP-HZN-ALO00304597;       BP-HZN-ALO00304603;       BP-HZN-ALO00304605; BP-HZN-ALO00307216; BP-HZN-ALO00307217; BP-HZN-ALO00308459; BP-HZN-ALO00310392;       BP-HZN-ALO00310393;       BP-HZN-ALO00311661;       BP-HZN-ALO00311792; BP-HZN-ALO00316199; BP-HZN-ALO00318892; BP-HZN-ALO00320600; BP-HZN-ALO00321589;       BP-HZN-ALO00323814;       BP-HZN-ALO00328494;       BP-HZN-ALO00331393; BP-HZN-ALO00332749.

b)      BPXP has spent more than $14 billion on Response and cleanup activities in connection with the *Deepwater Horizon* Incident and Oil Spill. This more than $14 billion includes block grants that BPXP advanced to state and local governments to cover costs associated with responding to the *Deepwater Horizon* Incident and Spill.  In May 2010, BPXP provided a $25 million block grant to each of the states of Alabama, Florida, Louisiana, and Mississippi.  In June 2010, BPXP provided an additional block grant of $25 million to Alabama for the continued implementation of the State's Area Contingency Plan.  Through the second quarter of 2014, BPXP has also paid approximately $686 million for Response and cleanup activities to vendors in Alabama.

c)      Under an agreement announced in May 2011, BPXP helped support the seafood industry by paying or committing to pay the State of Alabama $4 million for seafood testing and $5 million for seafood marketing.

d)      In May 2010 BPXP committed $15 million to the State of Alabama for the promotion of tourism (*see* BP-HZN-ALO00089636), and in March 2011, BPXP committed an additional $16 million to the State of Alabama for the promotion of tourism (*see* BP-HZN-ALO00050583).  Additionally, in August 2010, BPXP committed $7 million to the Alabama Gulf Coast Convention and Visitor's Bureau for the promotion of tourism (*see* BP-HZN-

ALO00089619).  BPXP has also agreed to provide $57 million to establish the Gulf Tourism and Seafood Promotional Fund for the "support of programs directed to advertising, promotion and/or marketing which supports Gulf tourism and the seafood industries," and this fund has allocated $10,765,555 to Alabama (*see* http://www.deepwaterhorizoneconomicsettlement.com/docs/Promotional%20Fund_Final%20Reco mmendations_Media%20List.pdf and http://www.deepwaterhorizoneconomicsettlement.com/docs/Promotional_Fund_Final_Grant_Recip ients.pdf).

e)      BPXP voluntarily committed $1 billion to fund early restoration projects through an Early Restoration Framework Agreement with the state and federal Natural Resource Trustees. The Alabama trustees who entered into the Framework Agreement with BPXP are the Alabama Department of Conservation and Natural Resources and the Alabama Geologic Survey. Information regarding the allocation of these funds is publicly available on the MDL 2179 Court's docket at Rec. Doc. 6621 and Rec. Doc. 8122.

f)      In July 2010, BPXP established a $100 million rig worker assistance fund through the Baton Rouge Area Foundation to support unemployed rig workers, and this fund dispersed $750,100 to claimants in Alabama as shown in the table below:

| Payment Year | Payment Month | Total Paid Amount |
| --- | --- | --- |
| 2010 | October | $406,000 |
| 2011 | March | $109,200 |
| 2011 | June | $206,500 |
| 2011 | July | $12,300 |
| 2011 | August | $16,100 |

*Confidential Pursuant to PTO 13*

After the BRAF accepted two rounds of applications and dispersed funds to qualified applicants, approximately $82.1 million of the $100 million fund remained, so the BRAF established the Future of the Gulf Fund to distribute these remaining funds to community-based organizations. Much of this $82.1 million was committed to organizations in Alabama or for activities in Alabama, and as of May 14, 2014, less than $2.8 million of $100 million fund remained uncommitted (*see* BP-HZN-ALO00089690).

g)      Among the many initiatives and grants BPXP provided to monitor and treat health concerns in connection with the Incident, Oil Spill, and Response, in August 2010, BPXP provided $52 million to federal and state health organizations to fund behavioral health support and outreach programs in Alabama and the other Gulf States.  This included a $12 million grant to the Alabama Department of Mental Health in August 2010.

h)      In addition to examples of specific voluntary monetary contributions described above, BPXP has supported and continues to support Alabama communities, tourism, the educational system, the health, environment, and economy of Alabama through other large and small-scale efforts including grants, initiatives, scholarships, advertising, memberships, contributions, and donations.  BPXP's spending in these areas within the State of Alabama totaled over approximately $2.2 million from 2010 through 2013 (*see* BP-HZN-ALO00050574; BP-HZN-ALO00285012; BP-HZN-ALO00312236).

i)      Academic institutions in Alabama are receiving money through the Gulf of Mexico Research Initiative (GoMRI) funded by a $500 million grant from BP to study the effects of oil spills.  Additional information regarding GoMRI and the allocation of these funds is publicly available at http://research.gulfresearchinitiative.org/.

BPXP's efforts, and the effectiveness of those efforts in promoting the environment, human

*Confidential Pursuant to PTO 13*

health, and the economy of Alabama and the other Gulf States, have been recognized by U.S. government, state and local officials in numerous publicly available reports, submissions, and statements, as well as in other documents already produced and/or to be produced as part of the MDL 2179 proceedings.   BPXP reserves the right to present additional evidence regarding its substantial voluntary monetary commitments and the extent to which those commitments may have offset the State's claimed economic losses resulting from the *Deepwater Horizon* oil spill, including through the production of documents relating to BPXP's initiatives in response to Request for Production Nos. 36 and 37 and through expert discovery.   Additionally, BPXP is entitled to an offset or credit for any and all payments received by Alabama from any other co-defendant, or any other private or governmental entity, related to Alabama's alleged damages from the Oil Spill, as well as an offset or credit for taxes paid to Alabama on income associated with any such payments related to the Oil Spill.

## INTERROGATORY NO. 14:

To the extent that you contend the State's economic losses have been mitigated by payments and/or contributions made by you, provide a detailed description supporting your contention, including, but not limited to, the value of your mitigation efforts, all payments and/or contributions (identified by each payment, contribution, and payor) made by you that you contend contribute to the mitigation, the date of each payment and/or contribution, the recipient of the payment and/or contribution, and the resulting impact for each payment and/or contribution that you contend mitigates your obligation to pay damages.

## RESPONSE TO INTERROGATORY NO. 14:

BPXP objects to this contention interrogatory as premature because discovery has just begun, Alabama bears the burden of proof on its damages claim, and Alabama has not provided the specific damages calculations and methodologies upon which it intends to rely to support the damages categories identified in its Second Amended Rule 26(a) Disclosures served on July 17, 2014.   BPXP objects to this interrogatory as premature to the extent it calls for expert discovery.   BPXP objects to this interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

*Confidential Pursuant to PTO 13*

evidence.  BPXP objects to this interrogatory as vague and ambiguous as to the undefined terms "contributions," "the value of your mitigation efforts," and "the resulting impact for each payment and/or contribution that you contend mitigates your obligation to pay damages."  BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP has made numerous substantial voluntary monetary commitments that have helped to mitigate any effect of the *Deepwater Horizon* oil spill on the State of Alabama.  These monetary commitments include, but are not limited to:

a)  In August 2010, BPXP established a $20 billion trust fund to pay legitimate claims for damages, response costs, and other costs associated with the Spill. Between April 20, 2010 and February 28, 2014 BPXP has paid: (1) approximately $1.8 billion to individuals and businesses in Alabama through various claims processes, and (2) approximately $115 million in government payments in Alabama.

b)    BPXP has spent more than $14 billion on Response and cleanup activities in connection with the *Deepwater Horizon* Incident and Spill. This more than $14 billion includes block grants that BPXP advanced to state and local governments to cover costs associated with responding to the *Deepwater Horizon* Incident and Spill.  In May 2010, BPXP provided a $25 million block grant to each of the states of Alabama, Florida, Louisiana, and Mississippi.  In June 2010, BPXP provided an additional block grant of $25 million to Alabama for the continued implementation of the State's Area Contingency Plan.

c)    Under an agreement announced in May 2011, BPXP helped support the seafood industry by paying or committing to pay the State of Alabama $4 million for seafood testing and $5 million for seafood marketing.

41

d)      In March 2011, BP committed $16 million to the State of Alabama for the promotion of tourism.

e)      BPXP voluntarily committed $1 billion to fund early restoration projects through an Early Restoration Framework Agreement with the state and federal Natural Resource Trustees. The Alabama trustees who entered into the Framework Agreement with BPXP are the Alabama Department of Conservation and Natural Resources and the Alabama Geologic Survey.

f)      In July 2010, BPXP established a $100 million rig worker assistance fund through the Baton Rouge Area Foundation to support unemployed rig workers.

g)      Among the many initiatives and grants BPXP provided to monitor and treat health concerns in connection with the Incident, Oil Spill, and Response, in August 2010, BPXP provided $52 million to federal and state health organizations to fund behavioral health support and outreach programs in Alabama and the other Gulf States.

h)      In addition to the handful of specific voluntary monetary contributions described above, BPXP has supported and continues to support Alabama communities, tourism, the educational system, the health, environment, and economy of Alabama through other large and small-scale efforts including grants, initiatives, scholarships, advertising, memberships, contributions, and donations.   BPXP's spending in these areas within the State of Alabama totaled over $2.2 million from 2010 through 2013.

i)      Academic institutions in Alabama are receiving money through the Gulf of Mexico Research Initiative ("GoMRI") funded by a $500 million grant from BPXP to study the effects of oil spills.

BPXP's efforts, and the effectiveness of those efforts in promoting the environment, human health, and the economy of Alabama and the other Gulf States, have been recognized by U.S.

government, state and local officials in numerous publicly available reports, submissions, and statements, as well as in other documents already produced and/or to be produced as part of the MDL 2179 proceedings. BPXP reserves the right to present additional evidence regarding its substantial voluntary monetary commitments and the effectiveness of those commitments in mitigating the effects of the *Deepwater Horizon* spill on the State of Alabama, including through the production of documents relating to BPXP's initiatives in response to Request for Production Nos. 36 and 37 and through expert discovery.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

Subject to and without waiving its specific and general objections, BPXP supplements its previous response as follows: BPXP has made numerous substantial voluntary monetary commitments that have helped to mitigate any effect of the *Deepwater Horizon* oil spill on the State of Alabama. These monetary commitments include, but are not limited to:

a)      In August 2010, BPXP established a $20 billion trust fund to pay legitimate claims for damages, response costs, and other costs associated with the Spill. Between April 20, 2010 and February 28, 2014 BPXP has paid: (1) approximately $1.8 billion to individuals and businesses in Alabama through various claims processes, and (2) approximately $115 million in government payments in Alabama.  Pursuant to Rule 33(d), additional information responsive to this interrogatory may be derived or ascertained from the following documents: BP-HZN-ALO00050309; BP-HZN-ALO00050391; BP-HZN-ALO00050558; BP-HZN-ALO00089539; BP-HZN-ALO00089616;      BP-HZN-ALO00089668;      BP-HZN-ALO00089670;      BP-HZN-ALO00089689; BP-HZN-ALO00233172; BP-HZN-ALO00299595; BP-HZN-ALO00299897; BP-HZN-ALO00300578;      BP-HZN-ALO00304597;      BP-HZN-ALO00304603;      BP-HZN-ALO00304605; BP-HZN-ALO00307216; BP-HZN-ALO00307217; BP-HZN-ALO00308459; BP-

*Confidential Pursuant to PTO 13*

HZN-ALO00310392;       BP-HZN-ALO00310393;       BP-HZN-ALO00311661;       BP-HZN-ALO00311792; BP-HZN-ALO00316199; BP-HZN-ALO00318892; BP-HZN-ALO00320600; BP-HZN-ALO00321589;       BP-HZN-ALO00323814;       BP-HZN-ALO00328494;       BP-HZN-ALO00331393; BP-HZN-ALO00332749.

b)     BPXP has spent more than $14 billion on Response and cleanup activities in connection with the *Deepwater Horizon* Incident and Oil Spill. This more than $14 billion includes block grants that BPXP advanced to state and local governments to cover costs associated with responding to the *Deepwater Horizon* Incident and Spill.  In May 2010, BPXP provided a $25 million block grant to each of the states of Alabama, Florida, Louisiana, and Mississippi.  In June 2010, BPXP provided an additional block grant of $25 million to Alabama for the continued implementation of the State's Area Contingency Plan.  Through the second quarter of 2014, BPXP has also paid approximately $686 million for Response and cleanup activities to vendors in Alabama.

c)     Under an agreement announced in May 2011, BPXP helped support the seafood industry by paying or committing to pay the State of Alabama $4 million for seafood testing and $5 million for seafood marketing.

d)     In May 2010 BPXP committed $15 million to the State of Alabama for the promotion of tourism (*see* BP-HZN-ALO00089636), and in March 2011, BPXP committed an additional $16 million to the State of Alabama for the promotion of tourism (*see* BP-HZN-ALO00050583).  Additionally, in August 2010, BPXP committed $7 million to the Alabama Gulf Coast Convention and Visitor's Bureau for the promotion of tourism (*see* BP-HZN-ALO00089619).  BPXP has also agreed to provide $57 million to establish the Gulf Tourism and Seafood Promotional Fund for the "support of programs directed to advertising, promotion and/or

marketing which supports Gulf tourism and the seafood industries," and this fund has allocated $10,765,555 to Alabama (*see* http://www.deepwaterhorizoneconomicsettlement.com/docs/Promotional%20Fund_Final%20Reco mmendations_Media%20List.pdf and http://www.deepwaterhorizoneconomicsettlement.com/docs/Promotional_Fund_Final_Grant_Recip ients.pdf).

e)      BPXP voluntarily committed $1 billion to fund early restoration projects through an Early Restoration Framework Agreement with the state and federal Natural Resource Trustees. The Alabama trustees who entered into the Framework Agreement with BPXP are the Alabama Department of Conservation and Natural Resources and the Alabama Geologic Survey. Information regarding the allocation of these funds is publicly available on the MDL 2179 Court's docket at Rec. Doc. 6621 and Rec. Doc. 8122.

f)      In July 2010, BPXP established a $100 million rig worker assistance fund through the Baton Rouge Area Foundation to support unemployed rig workers, and this fund dispersed $750,100 to claimants in Alabama as shown in the table below:

| Payment Year | Payment Month | Total Paid Amount |
|---|---|---|
| 2010 | October | $406,000 |
| 2011 | March | $109,200 |
| 2011 | June | $206,500 |
| 2011 | July | $12,300 |

After the BRAF accepted two rounds of applications and dispersed funds to qualified applicants, approximately $82.1 million of the $100 million fund remained, so the BRAF established the Future of the Gulf Fund to distribute these remaining funds to community-based organizations.

45

*Confidential Pursuant to PTO 13*

Much of this $82.1 million was committed to organizations in Alabama or for activities in Alabama, and as of May 14, 2014, less than $2.8 million of $100 million fund remained uncommitted (*see* BP-HZN-ALO00089690).

g)      Among the many initiatives and grants BPXP provided to monitor and treat health concerns in connection with the Incident, Oil Spill, and Response, in August 2010, BPXP provided $52 million to federal and state health organizations to fund behavioral health support and outreach programs in Alabama and the other Gulf States.  This included a $12 million grant to the Alabama Department of Mental Health in August 2010.

h)      In addition to examples of specific voluntary monetary contributions described above, BPXP has supported and continues to support Alabama communities, tourism, the educational system, the health, environment, and economy of Alabama through other large and small-scale efforts including grants, initiatives, scholarships, advertising, memberships, contributions, and donations.  BPXP's spending in these areas within the State of Alabama totaled over approximately $2.2 million from 2010 through 2013 (*see* BP-HZN-ALO00050574; BP-HZN-ALO00285012; BP-HZN-ALO00312236).

i)      Academic institutions in Alabama are receiving money through the Gulf of Mexico Research Initiative (GoMRI) funded by a $500 million grant from BP to study the effects of oil spills.  Additional information regarding GoMRI and the allocation of these funds is publicly available at http://research.gulfresearchinitiative.org/.

BPXP's efforts, and the effectiveness of those efforts in promoting the environment, human health, and the economy of Alabama and the other Gulf States, have been recognized by U.S. government, state and local officials in numerous publicly available reports, submissions, and statements, as well as in other documents already produced and/or to be produced as part of the MDL

*Confidential Pursuant to PTO 13*

2179 proceedings. BPXP reserves the right to present additional evidence regarding its substantial voluntary monetary commitments and the effectiveness of those commitments in mitigating the effects of the *Deepwater Horizon* spill on the State of Alabama, including through the production of documents relating to BPXP's initiatives in response to Request for Production Nos. 36 and 37 and through expert discovery.

**INTERROGATORY NO. 15:**

To the extent that you contend there are other economic factors unrelated to the oil spill that contributed to the State's losses, identify and describe in detail all factors supporting your contention, including but not limited to, the timing of each economic factor, the cause of the economic factor, and the economic impact and contributing "loss" associated with each economic factor.

**RESPONSE TO INTERROGATORY NO. 15:**

BPXP objects to this contention interrogatory as premature because discovery has just begun, Alabama bears the burden of proof on its damages claim, and Alabama has not provided the specific damages calculations and methodologies upon which it intends to rely to support the damages categories identified in its Second Amended Rule 26(a) Disclosures served on July 17, 2014.  BPXP objects to this interrogatory as premature to the extent it calls for expert discovery.  BPXP objects to this interrogatory as calling for information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, and/or other applicable privileges, exemptions, or immunities. BPXP objects to this interrogatory as overly broad and unduly burdensome.  BPXP objects to this interrogatory as vague and ambiguous as to the undefined terms "economic factor(s)," "the timing of each economic factor," and "the cause of the economic factor."  BPXP objects to this interrogatory to the extent it seeks information outside BPXP's possession, custody, or control.  BPXP objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks detailed information far beyond whatever may be reasonably necessary to ascertain other factors that contributed to the State's

*Confidential Pursuant to PTO 13*

alleged losses.   BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: After conducting a reasonable search, BPXP is not presently aware of any non-privileged attempts to determine any economic factors that may have contributed to Alabama's alleged damages.   But Alabama's alleged damages were likely affected by other events and conditions such as the national recession, often called "the Great Recession" that—as reported by the National Bureau of Economic Research—began in December 2007 and lasted until June 2009, and the moratorium on deepwater drilling that was imposed by the U.S. Department of the Interior beginning on May 30, 2010. The information that this interrogatory seeks is also the subject of expert discovery and such information will be addressed in forthcoming expert reports in accordance with the dates set forth in the Court's July 16, 2014 scheduling order.

## INTERROGATORY NO. 16:

To the extent that you contend certain State of Alabama business industries did not sustain losses resulting from the oil spill, please identify the industries you contend were not impacted, including the specific reasons and/or basis for your contention that these industries were not impacted by the oil spill.

## RESPONSE TO INTERROGATORY NO. 16:

BPXP objects to this contention interrogatory as premature because discovery has just begun, Alabama bears the burden of proof on its damages claims, Alabama has not provided the specific damages calculations and methodologies upon which it intends to rely to support the damages categories identified in its Second Amended Rule 26(a) Disclosures served on July 17, 2014, and Alabama has not identified all the industries that it contends "sustain[ed] losses resulting from the oil spill" or the bases for such contentions.   BPXP objects to this interrogatory as premature to the extent it calls for expert discovery.   BPXP objects to this interrogatory as overly broad, unduly burdensome, vague, and

*Confidential Pursuant to PTO 13*

ambiguous.  BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP states that the information that this interrogatory seeks is the subject of expert discovery and such information will be addressed in forthcoming expert reports in accordance with the dates set forth in the Court's July 16, 2014 scheduling order.

## INTERROGATORY NO. 17:

To the extent that you contend the State's alleged economic loss(es) are and/or were limited to certain geographic location(s) within the State of Alabama, please identify the geographic location(s) as well as the reasons you contend economic losses are limited to these location(s).

## RESPONSE TO INTERROGATORY NO. 17:

BPXP objects to this contention interrogatory as premature because discovery has just begun, Alabama bears the burden of proof on its damages claims, Alabama has not provided the specific damages calculations and methodologies upon which it intends to rely to support the damages categories identified in its Second Amended Rule 26(a) Disclosures served on July 17, 2014, and Alabama has not identified the "geographic location(s)" that it claims suffered damages or losses or the bases for such contentions.  BPXP objects to this interrogatory as vague and ambiguous as to the undefined term "economic loss(es)."  BPXP objects to this interrogatory as premature to the extent it calls for expert discovery.  BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP states that the information that this interrogatory seeks is the subject of expert discovery and such information will be addressed in forthcoming expert reports in accordance with the dates set forth in the Court's July 16, 2014 scheduling order.

## INTERROGATORY NO. 18:

To the extent you contend the State has not met its obligations under the Oil Pollution

*Confidential Pursuant to PTO 13*

Act of 1990 ("OPA"), including but not limited to OPA's presentment procedure, describe in detail the basis for your contention.

**RESPONSE TO INTERROGATORY NO. 18:**

BPXP objects to this contention interrogatory as premature because discovery has just begun and Alabama has not provided the specific damages calculations and methodologies upon which it intends to rely to support the damages categories identified in its Second Amended Rule 26(a) Disclosures served on July 17, 2014. BPXP objects to this interrogatory as premature to the extent it calls for expert discovery.

Subject to and without waiving its specific and general objections, BPXP responds as follows: Respectful of the Court's November 14, 2011 order, Rec. Doc. 4578, finding that "the States have sufficiently alleged presentment under OPA," BPXP maintains its position as stated in Rec. Docs. 2644 and 2644-1, which BPXP incorporates by reference as though fully stated herein, that Alabama has not satisfied OPA's presentment requirement as to its Complaint regarding 2:10-cv-04182, originally filed on August 12, 2010, and its April 5, 2011 Amended Complaint regarding 2:10-cv-04182, Rec. Doc. 1872. BPXP also notes that the Court's November 14, 2011 order, finds that "the States must present their OPA claims to a Responsible Party before proceeding in Court."

*Confidential Pursuant to PTO 13*

*Confidential Pursuant to PTO 13*

**INTERROGATORY NO. 19:**

To the extent you contend that OPA prohibits a State entity from maintaining a physical property damage claim for State-owned lands separate and apart from a Natural Resource Damage claim, describe in detail the basis for your contention(s).

**RESPONSE TO INTERROGATORY NO. 19:**

BPXP objects to this contention interrogatory as seeking pure legal argument and/or conclusions and outside the scope permitted by Federal Rule of Civil Procedure 33.  BPXP objects to this interrogatory as vague and ambiguous.  BPXP objects to this contention interrogatory as premature because discovery has just begun, Alabama bears the burden of proof on its OPA claims, and Alabama has not provided the specific damages calculations and methodologies upon which it intends to rely to support the damages categories identified in its Second Amended Rule 26(a) Disclosures served on July 17, 2014.  BPXP objects to this interrogatory as premature to the extent it calls for expert discovery.

**INTERROGATORY NO. 20:**

To the extent you contend that the State's damages or injuries were the result of an occurrence and/or accident unforeseeable by you,[2] identify the occurrence(s) and/or accident(s) that were unforeseeable to you and the resulting damages or injuries from those occurrence(s) and/or accident(s).

**RESPONSE TO INTERROGATORY NO. 20:**

BPXP objects to this contention interrogatory as premature because discovery has just begun,

---

[2] As referenced in the following Answers: BP (Doc. 4905 at 200), Halliburton (Doc. 4910 at 46), and Transocean, (Doc 931 at 16).

*Confidential Pursuant to PTO 13*

Alabama bears the burden of proof on its damages claims, and Alabama has not provided the specific damages calculations and methodologies upon which it intends to rely to support the damages categories identified in its Second Amended Rule 26(a) Disclosures served on July 17, 2014.  BPXP objects to this interrogatory as premature to the extent it calls for expert discovery.  BPXP objects to this interrogatory to the extent it seeks information regarding liability issues addressed in other phases of MDL 2179. BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP incorporates by reference as through fully stated herein its Phase One and Phase Two post-trial briefs and proposed findings of fact and conclusions of law, Rec. Docs. 10466, 10467, 10734, 12045, 12047, and 12226.

The State claims damages resulting from the *Deepwater Horizon* Oil Spill, which occurred as a result of the blowout that occurred on the *Deepwater Horizon* on April 20, 2010.  Blowouts, and subsequent oil spills, in some form, are in some sense foreseeable given they involve known risks of drilling operations, and those in the industry, including BPXP, take steps to minimize the risks of a blowout, including through multiple layers of redundant safety systems.  In drilling the Macondo Well, BPXP worked with Transocean and Halliburton, as well as other industry-leading contractors, to minimize the risks of any blowout.  The causal chain necessary for the *Deepwater Horizon* blowout included Transocean and Sperry Sun's personnel's actions and/or inactions regarding well control and maintenance and activation of the Blowout Preventer that were not foreseeable as well as failures of multiple redundant systems that were also not foreseeable.  Thus, in this regard, the State's claimed damages and/or injuries resulting from the *Deepwater Horizon* blowout and subsequent oil spill were not foreseeable.

The drilling moratorium implemented by the U.S. Department of the Interior beginning on May

*Confidential Pursuant to PTO 13*

30, 2010 was also unforeseeable to BPXP as were any losses resulting from the moratorium.

On May 27, 2010, at the direction of President Obama, Secretary of the Interior Salazar issued a report on "what, if any, additional precautions and technologies should be required to improve the safety of oil and gas exploration and production operations on the outer continental shelf." The report recommended a six-month moratorium on offshore oil drilling and permitting.

On June 22, 2010, Judge Feldman of the United States District Court for the Eastern District of Louisiana preliminarily enjoined enforcement of the moratorium, finding on the record before him that it was arbitrary and capricious. *See Hornbeck Offshore Servs. LLC V. Salazar*, No. 10-cv-1663 (E.D. La.). After the Government re-issued the moratorium on July 12, 2010, Judge Feldman found that the second blanket moratorium was "substantively identical" to the first moratorium. Specifically, the court found that the May 27 Department of the Interior report prompting the moratorium was misleading and that the scope and timing of the moratorium was not explained, let alone justified. Among other things, the court observed that the moratorium irrationally assumed that all companies drilling in the deepwater Gulf of Mexico posed the same risks and that there was no rational nexus between the *Deepwater Horizon* blowout and placing a blanket moratorium on all deepwater drilling in the Gulf of Mexico.

Seven of the deepwater-drilling experts handpicked by the Department of the Interior to advise the government regarding drilling safety objected to the publication of their names as supporting the moratorium. They protested that the moratorium as imposed by the government was not justified, was arguably counterproductive to long-term safety, and appeared to be a decision driven by politics.

In November 2010, the Department of the Interior Inspector General's Office investigated the May 27 report and in particular why it stated that the decision to impose a blanket moratorium was peer-reviewed, when in fact, it was not. Although the investigation concluded that the implication was unintentional, the House Committee on Natural Resources is examining the investigative report's

*Confidential Pursuant to PTO 13*

conclusion, as well as the moratorium decision by the administration.  The committee has stated that the moratorium decision "apparently was made by political appointees in the Obama Administration without any scientific, technical, economic, or safety review to ensure that it would in fact increase safety of offshore drilling."  The committee also has questioned the findings of the investigative report and stated that there remain open questions as to "whether the peer reviewer language was intentionally misrepresented to provide political cover for the economically devastating moratorium." October 17, 2012 Letter from Don Hastings, Chair of Committee of Natural Resources to Jacob Lew, White House Chief of Staff.

Similarly, on June 2, 2011, the House Committee on Oversight and Government Reform issued a report entitled "The BP Oil Spill Recovery Effort: The Legacy of Choices Made by the Obama Administration" that further criticized the administration's decision to impose a blanket six-month moratorium.  The House oversight committee called it a "sweeping decision" imposed without consulting with safety experts "on the wisdom of imposing an outright ban on all drilling activity in the Gulf."

Further, a moratorium intended to improve safety would presumably allow for drilling by rigs whose operations passed safety inspections, as opposed to imposing a blanket, inflexible ban.  MMS inspected 29 Gulf of Mexico rigs with subsea blowout preventer stacks between April 27 and May 4, 2010 and found that 27 were in compliance with regulatory conditions and requirements and the other two had only "minor" violations.  *See* May 11, 2010 MMS Deepwater Drilling Rig Inspection Report.

Other drilling accidents have not been followed by a moratorium of this scope and duration.

Public officials repeatedly criticized the moratorium and described it as "unprecedented."  *See, e.g.,* Staff Report, U.S. House of Representatives, *The BP Oil Spill Recovery Effort: The Legacy of Choices Made by the Obama Administration* (June 2, 2011); Mary Landrieu, Editorial "Why I put a hold

*Confidential Pursuant to PTO 13*

on Jacob Lew's Nomination," Washington Post, Oct. 6, 2010; A18, OSE170-000797 ("Since the day an unprecedented moratorium shut down deep-water oil drilling in the Gulf of Mexico . . . .").

Doug Suttles was quoted in a June 25, 2010 Times-Picayune article as stating: "[W]e need to look very rapidly at what needs to be done that gives you confidence to restart (drilling in deepwater) because the consequences of stopping are also significant." He was also quoted as stating: "Whether it's the safety equipment that's used, how it's tested, how well designs are examined and approved or how decisions are taken through that process . . . I would hope that those things could be examined very quickly with the right experts and at minimum you could come up with interim conditions to restart while you study it even further."

Even though the Macondo well was shut-in on July 15, 2010 and the resources needed for responding to the spill declined thereafter, the moratorium made no provision for this circumstance.

Judge Feldman criticized the reasonableness and rationality of the Government's denials and delays in issuing deepwater permits, finding that the Department of the Interior acted unlawfully and improperly because it did not act on drilling permit applications within a reasonable time. *Ensco Offshore Co. v. Salazar*, No. 10-cv-1941 (E.D. La.).

The government contended that its strained resources and the demands of regulatory compliance resulted in delays in permitting. *See Ensco* (Rec. Doc. 229).

Regarding new requirements, Judge Feldman held that one of MMS's new drilling requirements imposed additional duties on operators and lessees without the required notice and comment period. *See Ensco* (Rec. Doc. 126).

The moratoria and regulatory action concerning the offshore oil industry imposed after the spill were directed at the perceived shortcomings of the entire offshore drilling industry, and hence were presumably not foreseen in their particulars by anyone in the industry.

56

BPXP reserves the right to modify, amend, or supplement this response, which is made based on the current status of its knowledge, understanding, belief, and searches for documents. The investigation of facts and information relating to this interrogatory is continuing, and, therefore, this response is not intended as an admission or a representation that additional facts and information do not exist. BPXP is continuing its fact investigation, expert consultation and discovery, and therefore expects to find further evidence relevant to its response to this interrogatory.

## INTERROGATORY NO. 21:

To the extent you contend that a supervening and/or intervening event caused, either in whole or in part, the State's damages,[3] identify each event and describe in detail why you believe the event is applicable to the State's oil spill economic damage claims.

## RESPONSE TO INTERROGATORY NO. 21:

BPXP objects to this contention interrogatory as premature because discovery has just begun, Alabama bears the burden of proof on its damages claims, and Alabama has not provided the specific damages calculations and methodologies upon which it intends to rely to support the damages categories identified in its Second Amended Rule 26(a) Disclosures served on July 17, 2014. BPXP objects to this interrogatory as premature to the extent it calls for expert discovery. BPXP objects to this interrogatory as vague and ambiguous as to the undefined term "supervening." BPXP objects to this interrogatory to the extent it seeks information regarding liability issues addressed in other phases of MDL 2179. BPXP objects to this interrogatory as compound and containing multiple discrete subparts. BPXP objects to this interrogatory as cumulative of Interrogatory No. 20.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP incorporates by reference as through fully stated herein its Phase One and Phase Two post-trial briefs and proposed findings of fact and conclusions of law, Rec. Docs. 10466, 10467, 10734, 12045,

---

[3] As referenced in the following Answers: BP (Doc. 4905 at 201), Halliburton (Doc. 4910 at 44), and Transocean, (Doc. 931 at 16).

*Confidential Pursuant to PTO 13*

12047, and 12226.

The drilling moratorium implemented by the U.S. Department of the Interior beginning on May 30, 2010 was a superseding or intervening cause of Alabama's claimed damages.

On May 27, 2010, at the direction of President Obama, Secretary of the Interior Salazar issued a report on "what, if any, additional precautions and technologies should be required to improve the safety of oil and gas exploration and production operations on the outer continental shelf." The report recommended a six-month moratorium on offshore oil drilling and permitting.

On June 22, 2010, Judge Feldman of the United States District Court for the Eastern District of Louisiana preliminarily enjoined enforcement of the moratorium, finding on the record before him that it was arbitrary and capricious. *See Hornbeck Offshore Servs. LLC V. Salazar*, No. 10-cv-1663 (E.D. La.). After the Government re-issued the moratorium on July 12, 2010, Judge Feldman found that the second blanket moratorium was "substantively identical" to the first moratorium. Specifically, the court found that the May 27 Department of the Interior report prompting the moratorium was misleading and that the scope and timing of the moratorium was not explained, let alone justified. Among other things, the court observed that the moratorium irrationally assumed that all companies drilling in the deepwater Gulf of Mexico posed the same risks and that there was no rational nexus between the *Deepwater Horizon* blowout and placing a blanket moratorium on all deepwater drilling in the Gulf of Mexico.

Seven of the deepwater-drilling experts handpicked by the Department of the Interior to advise the government regarding drilling safety objected to the publication of their names as supporting the moratorium. They protested that the moratorium as imposed by the government was not justified, was arguably counterproductive to long-term safety, and appeared to be a decision driven by politics.

In November 2010, the Department of the Interior Inspector General's Office investigated the May 27 report and in particular why it stated that the decision to impose a blanket moratorium was peer-

*Confidential Pursuant to PTO 13*

reviewed, when in fact, it was not.  Although the investigation concluded that the implication was unintentional, the House Committee on Natural Resources is examining the investigative report's conclusion, as well as the moratorium decision by the administration.  The committee has stated that the moratorium decision "apparently was made by political appointees in the Obama Administration without any scientific, technical, economic, or safety review to ensure that it would in fact increase safety of offshore drilling."  The committee also has questioned the findings of the investigative report and stated that there remain open questions as to "whether the peer reviewer language was intentionally misrepresented to provide political cover for the economically devastating moratorium." October 17, 2012 Letter from Don Hastings, Chair of Committee of Natural Resources to Jacob Lew, White House Chief of Staff.

Similarly, on June 2, 2011, the House Committee on Oversight and Government Reform issued a report entitled "The BP Oil Spill Recovery Effort: The Legacy of Choices Made by the Obama Administration" that further criticized the administration's decision to impose a blanket six-month moratorium.  The House oversight committee called it a "sweeping decision" imposed without consulting with safety experts "on the wisdom of imposing an outright ban on all drilling activity in the Gulf."

Further, a moratorium intended to improve safety would presumably allow for drilling by rigs whose operations passed safety inspections, as opposed to imposing a blanket, inflexible ban.  MMS inspected 29 Gulf of Mexico rigs with subsea blowout preventer stacks between April 27 and May 4, 2010 and found that 27 were in compliance with regulatory conditions and requirements and the other two had only "minor" violations. *See* May 11, 2010 MMS Deepwater Drilling Rig Inspection Report.

Other drilling accidents have not been followed by a moratorium of this scope and duration.

Public officials repeatedly criticized the moratorium and described it as "unprecedented." *See,*

59

*Confidential Pursuant to PTO 13*

*e.g.,* Staff Report, U.S. House of Representatives, *The BP Oil Spill Recovery Effort: The Legacy of Choices Made by the Obama Administration* (June 2, 2011); Mary Landrieu, Editorial "Why I put a hold on Jacob Lew's Nomination," Washington Post, Oct. 6, 2010; A18, OSE170-000797 ("Since the day an unprecedented moratorium shut down deep-water oil drilling in the Gulf of Mexico . . . .").

Doug Suttles was quoted in a June 25, 2010 Times-Picayune article as stating: "[W]e need to look very rapidly at what needs to be done that gives you confidence to restart (drilling in deepwater) because the consequences of stopping are also significant." He was also quoted as stating: "Whether it's the safety equipment that's used, how it's tested, how well designs are examined and approved or how decisions are taken through that process . . . I would hope that those things could be examined very quickly with the right experts and at minimum you could come up with interim conditions to restart while you study it even further."

Even though the Macondo well was shut-in on July 15, 2010 and the resources needed for responding to the spill declined thereafter, the moratorium made no provision for this circumstance.

Judge Feldman criticized the reasonableness and rationality of the Government's denials and delays in issuing deepwater permits, finding that the Department of the Interior acted unlawfully and improperly because it did not act on drilling permit applications within a reasonable time. *Ensco Offshore Co. v. Salazar*, No. 10-cv-1941 (E.D. La.).

The government contended that its strained resources and the demands of regulatory compliance resulted in delays in permitting. *See Ensco* (Rec. Doc. 229).

Regarding new requirements, Judge Feldman held that one of MMS's new drilling requirements imposed additional duties on operators and lessees without the required notice and comment period. *See Ensco* (Rec. Doc. 126).

The moratoria and regulatory action concerning the offshore oil industry imposed after the spill

*Confidential Pursuant to PTO 13*

were directed at the perceived shortcomings of the entire offshore drilling industry, and hence were presumably not foreseen in their particulars by anyone in the industry.

Further, various dredge and fill placement projects undertaken by or under the authority of the U.S. Army Corps of Engineers and Alabama Department of Transportation and various sand beach replenishment projects undertaken by local governments altered shoreline conditions and may have exacerbated shoreline damage.

BPXP reserves the right to modify, amend, or supplement this response, which is made based on the current status of its knowledge, understanding, belief, and searches for documents.  The investigation of facts and information relating to this interrogatory is continuing, and, therefore, this response is not intended as an admission or a representation that additional facts and information do not exist.  BPXP is continuing its fact investigation, expert consultation and discovery, and therefore expects to find further evidence relevant to its response to this interrogatory.

## INTERROGATORY NO. 22:

To the extent you contend that the State has failed to mitigate damages,[4] describe in detail your contentions, including the steps that you contend the State should have taken to mitigate damages.

## RESPONSE TO INTERROGATORY NO. 22:

BPXP objects to this contention interrogatory as premature because discovery has just begun, Alabama bears the burden of proof on its damages claims, and Alabama has not provided the specific damages calculations and methodologies upon which it intends to rely to support the damages categories identified in its Second Amended Rule 26(a) Disclosures served on July 17, 2014.  BPXP objects to this interrogatory as premature to the extent it calls for expert discovery.  BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

---

[4] As referenced in the following Answers: BP (Doc. 4905 at 202), Halliburton ((Doc. 4910 at 46), and Transocean, (Doc. 931 at 16).

*Confidential Pursuant to PTO 13*

Subject to and without waiving its specific and general objections, BPXP responds as follows: Since the *Deepwater Horizon* Incident began in April 2010, BP has made payments totaling over $86 million to the State of Alabama for purposes that included: to cover costs associated with responding to the *Deepwater Horizon* Incident; to promote tourism; and to fund behavioral health and substance abuse services. These payments include two $25 million block grants paid to the State in May 2010 and June 2010 to cover costs related to the *Deepwater Horizon* oil spill, a $15 million payment to the State on May 25, 2010 for tourism promotion, a $12 million payment to the Alabama Department of Mental Health on August 27, 2010, to provide behavioral health and substance abuse services, and a $5.64 million payment to the State on June 21, 2010, to fund the Perdido Pass Project.

The agreements governing the two $25 million block grants require the State to                    and require that

However, the State has not complied with the accounting requirements for these two block grants despite requests for such an accounting, including by letter dated September 23, 2013 from Nathan Block, Senior Counsel at BP Gulf Coast Restoration Organization to the Governor's Chief of Staff David Perry. To the extent the State has not used any of the funds provided by BPXP for their intended purpose, it may have failed to mitigate any claimed damages.

Alabama failed to mitigate its claimed damages by hindering response activities within the State. For example, in certain instances, Alabama prohibited BPXP from utilizing surf washing, an effective response technique, during Response operations. This hindered BPXP's ability to effectively clean the shoreline in Alabama. Alabama also performed and/or permitted further deep cleaning on West Dauphin (West Point) Island despite BPXP's recommendation not to conduct deep cleaning in the potentially sensitive habitat, the U.S. Fish & Wildlife Service's recommendation that cleanup cease because of

*Confidential Pursuant to PTO 13*

potential damage to that habitat, and the conclusion of a Net Environmental Benefit Assessment conducted in 2011 that found that natural attenuation was the optimal response. Additionally, Alabama's representatives in the Unified Command, including its State On-Scene Coordinators, did not adequately and effectively communicate response activities and plans to local government officials and others that resulted in confusion and misunderstanding regarding these activities and plans. For example, as shown by the July 24, 2011 Press-Register article titled "If Oil Spill Tar Balls Linger Offshore, Who Cleans Them Up If A Storm Hits?" Alabama's State On-Scene Coordinators failed to effectively inform local officials about Unified Command's plans for responding to the remobilization of residual oil by storms and hurricanes. Other actions or decisions by Alabama that made BPXP's remediation and response efforts less effective are described in government documents and industry publications, such as the On-Scene Coordinator Report for the *Deepwater Horizon* Oil Spill (TREX 9105), the Incident Specific Preparedness Review for the *Deepwater Horizon* Oil Spill (TREX 9124), interview notes taken by the Oil Spill Commission or U.S. Coast Guard, as well as other documents already produced and/or to be produced as part of the MDL 2179 proceedings.

BPXP reserves the right to modify, amend, or supplement this response, which is made based on the current status of its knowledge, understanding, belief, and searches for documents. The investigation of facts and information relating to this interrogatory is continuing, and, therefore, this response is not intended as an admission or a representation that additional facts and information do not exist. BPXP is continuing its fact investigation, expert consultation and discovery, and therefore expects to find further evidence relevant to its response to this interrogatory.

## INTERROGATORY NO. 23:

To the extent you are raising any claims or defenses in this lawsuit, identify and explain in detail your claims and defenses, including any information, communications, admissions or documents supporting your claims and defenses.

*Confidential Pursuant to PTO 13*

## RESPONSE TO INTERROGATORY NO. 23:

BPXP objects to this contention interrogatory as premature because discovery has just begun, Alabama bears the burden of proof on its OPA claims, and Alabama has not provided the specific damages calculations and methodologies upon which it intends to rely to support the damages categories identified in its Second Amended Rule 26(a) Disclosures served on July 17, 2014.  BPXP objects to this interrogatory as premature to the extent it calls for expert discovery.  BPXP objects to this interrogatory as vague and ambiguous as to the undefined terms "claims" and "defenses," and considers these terms to refer to counterclaims and affirmative defenses.  BPXP objects to this interrogatory as overly broad and unduly burdensome.  BPXP objects to this interrogatory as seeking to impose an obligation on BPXP to identify all potential trial exhibits and deposition designations in advance of the deadlines set by the Court's July 16, 2014 scheduling order.  BPXP reserves the right to rely on potential trial exhibits or impeachment evidence that are not within its possession, custody, or control and that are identified after the close of fact discovery.  BPXP objects to this interrogatory as cumulative of Interrogatory Nos. 5, 14, and 18-22.  BPXP objects to this interrogatory as compound and containing multiple discrete subparts.

Subject to and without waiving its specific and general objections, BPXP responds as follows: BPXP incorporates by reference, as though fully stated herein, its Answer to the State of Alabama's Amended Complaint, Rec. Doc. 4905, and its responses to Interrogatory Nos. 5, 14, and 18-22.  BPXP reserves the right to assert and rely on any counterclaim or affirmative defense raised by any other defendant.  BPXP also reserves the right to modify, amend, or supplement its affirmative defenses and this response, which is made based on the current status of its knowledge, understanding, belief, and searches for documents.  The investigation of facts and information relating to this interrogatory is continuing, and, therefore, this response is not intended as an admission or a representation that additional facts and information do not exist.  BPXP is continuing its fact investigation, expert

*Confidential Pursuant to PTO 13*

consultation and discovery, and therefore expects to find further evidence relevant to its response to this

interrogatory.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 24:**

Produce all manuals, protocols and/or reference materials you, your directors, officers, employees and/or persons working on your behalf utilized as part of your oil spill response activities within the State of Alabama and 15 miles therefrom from April 2010 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated

to lead to the discovery of admissible evidence.  BPXP objects to this request as vague and ambiguous

as to the undefined term "reference materials."  BPXP objects to this interrogatory as overly broad,

vague, and ambiguous as to the undefined term "persons working on your behalf" to the extent it

includes individuals with a relationship to BPXP other than those categories expressly listed or

individuals who do not have an employee or agent relationship to BPXP.  BPXP objects to this

interrogatory as vague and ambiguous as to the term "State of Alabama and 15 miles therefrom,"

because it would encompass areas that are not likely to lead to the discovery of admissible evidence and

does not clearly define the area to which the request pertains.

Subject to and without waiving its general and specific objections, BPXP will conduct a

reasonable search for non-privileged documents in its possession, custody, or control responsive to this

request, to the extent such documents exist and are not already in the possession of Alabama, or are not

equally available to Alabama from sources other than BPXP, including publicly available sources.

**REQUEST FOR PRODUCTION NO. 25:**

Produce all documents and information – including but not limited to manuals, talking points, PowerPoints, protocols and/or reference materials – that you and/or persons working on your behalf utilized when responding to oil spill-related economic loss inquiries from State of Alabama governmental entities, business entities or individuals.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated

66

*Confidential Pursuant to PTO 13*

to lead to the discovery of admissible evidence.  BPXP objects to this request as vague and ambiguous as to the undefined terms "reference materials."  BPXP objects to this interrogatory as overly broad, vague, and ambiguous as to the undefined term "persons working on your behalf" to the extent it includes individuals with a relationship to BPXP other than those categories expressly listed or individuals who do not have an employee or agent relationship to BPXP.  BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent "State of Alabama governmental entities" includes any State department, agency, or subdivision other than those identified in the Court's July 16, 2014 Order, Rec. Doc. 13149, as properly within the scope of discovery in this phase of MDL 2179.

Subject to and without waiving its general and specific objections, BPXP will conduct a reasonable search for non-privileged documents in its possession, custody, or control responsive to this request, to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources.

**REQUEST FOR PRODUCTION NO. 26:**

Produce all documents and information relating to all potential oil-related material events within the State of Alabama and 15 miles therefrom from April 20, 2010 to present, including but not limited to the date of discovery, location of discovery (including by corresponding SCAT segment), description of discovery (stranded, buried, water surface, water subsurface), volume, severity, quantity, weight, whether recovered, and the method of disposal.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  BPXP objects to this interrogatory as vague and ambiguous as to the term "State of Alabama and 15 miles therefrom," because it would encompass areas that are not likely to lead to the discovery of admissible evidence and does not clearly define the area to which the request pertains.  BPXP objects to this request as vague and ambiguous as to the undefined

*Confidential Pursuant to PTO 13*

term "severity." BPXP objects to this request as vague and ambiguous as to the term "all potential oil-related material events." Alabama defines "Oil-Related Material Event" as follows: "'Oil-Related Material Event' or 'Oiling Event,' whether or not capitalized, refers to the discovery of a singular oil-related material event." This is a circular definition. Furthermore, it is unclear what Alabama means by "all potential" oil-related material events. As such, BPXP is unable to understand this request and is thus unable to produce responsive documents. BPXP is willing to meet and confer with Alabama regarding this request.

## REQUEST FOR PRODUCTION NO. 27:

Produce all documents relating to the removal of oil-related materials from April 20, 2010 to present within the State of Alabama, including but not limited to the location of the oil-related materials prior to removal (including by corresponding SCAT segment), the date of removal, the known length of time the oil was present prior to removal, the method utilized for removal, and the volume and weight of oil and oil contaminated materials removed.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 27:

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. BPXP objects to this request as vague and ambiguous as to the undefined term "oil contaminated materials."

Subject to and without waiving its general and specific objections, BPXP will conduct a reasonable search for non-privileged documents in its possession, custody, or control responsive to this request, to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources.

## REQUEST FOR PRODUCTION NO. 28:

Produce all documents relating to the method(s) or criteria you utilized to measure the volume or weight of oil-related materials removed from the coastal areas within the State of Alabama from April 20, 2010 to present.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 28:

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated

*Confidential Pursuant to PTO 13*

to lead to the discovery of admissible evidence.

Subject to and without waiving its general and specific objections, BPXP will conduct a reasonable search for non-privileged documents in its possession, custody, or control responsive to this request, to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources.

## REQUEST FOR PRODUCTION NO. 29:

Produce all documents relating to the historical constituent background of oil-related material concentrations present on the State of Alabama's coastal areas prior to April 20, 2010, including but not limited to, all sampling, studies, oil constituent baseline surveys and/or analyses.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 29:

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  BPXP objects to this request as vague and ambiguous as to the undefined term "sampling."

Subject to and without waiving its general and specific objections, BPXP will conduct a reasonable search for non-privileged documents in its possession, custody, or control responsive to this request, to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources.

## REQUEST FOR PRODUCTION NO. 30:

Produce all documents relating to the existence of submerged oil mats within the State of Alabama and 15 miles therefrom, from April 20, 2010 to present, including but not limited to the location (including corresponding SCAT segment), the submerged oil mat's corresponding  surface area, thickness,  weight, volume,  date  of discovery, date  of removal, volume removed versus not removed, and the person(s) who discovered and/or removed the oil mat.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 30:

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  BPXP objects to this interrogatory as vague and ambiguous as to the term "State of Alabama and 15 miles therefrom," because it would encompass areas

*Confidential Pursuant to PTO 13*

that are not likely to lead to the discovery of admissible evidence and does not clearly define the area to which the request pertains.  BPXP objects to this request as vague, ambiguous, and confusing as to its use of the defined term "surface."

Subject to and without waiving its general and specific objections, BPXP will conduct a reasonable search for non-privileged documents in its possession, custody, or control responsive to this request, to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources.

## REQUEST FOR PRODUCTION NO. 31:

Produce all documents relating to your efforts to fingerprint, identify and/or otherwise confirm the source of oil-related materials recovered within the State of Alabama during oil spill response activities as those originating from the MC252 well.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 31:

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  BPXP objects to this request as vague and ambiguous as to the undefined term "fingerprint."  BPXP objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, and/or other applicable privileges, exemptions, or immunities.

Subject to and without waiving its general and specific objections, BPXP will conduct a reasonable search for non-privileged documents in its possession, custody, or control responsive to this request, to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources.

## REQUEST FOR PRODUCTION NO. 32:

Produce all documents relating to the human toxicity of oil-related materials at all levels of the degradation stage.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 32:

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  BPXP objects to this request as vague and ambiguous as to the undefined term "all levels of the degradation stage."

Subject to and without waiving its general and specific objections, BPXP will conduct a reasonable search for non-privileged documents in its possession, custody, or control responsive to this request, to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources.

## REQUEST FOR PRODUCTION NO. 33:

Produce all documents relating to any oil-related material severity assessment, study and/or analysis (whether part of oil spill response activities or not), by location, within the State of Alabama.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 33:

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  BPXP objects to this request as vague and ambiguous as to the undefined term "oil-related material severity assessment, study and/or analysis."

Subject to and without waiving its general and specific objections, BPXP will conduct a reasonable search for non-privileged documents in its possession, custody, or control responsive to this request, to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources.

## REQUEST FOR PRODUCTION NO. 34:

Produce all documents maintained in BP's or BP's contractor(s) database(s) relating to oil spill response activities within the State of Alabama, including but not limited to: NRC notifications; NRC reports; Segment waterfall tables with SCAT mitigated weights; results of testing, visual observations, or other methods used to confirm that oil-related materials removed from Alabama waters or land were or contained MC252 oil; NRC Tracker Reports; NRC weekly summaries; Alabama Situation Reports (Alabama Branch ICS 209); Mobile and Baldwin

County Racetrack; Waste Tracking Reports; County Operations Reports; Alabama Operations Segment Tracker; SCAT Liaison Reports; SCAT Daily Briefing Reports; Operations Task Force Daily Reports; SCAT Team Daily Summary Reports; "Alabama Mitigation" document and "Alabama Oily Solids & Material Collected" document.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 34:

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  BPXP objects to this request as vague and ambiguous as to the undefined terms "BP's or BP's contractor(s) database(s)."

Subject to and without waiving its general and specific objections, BPXP will conduct a reasonable search for non-privileged documents in its possession, custody, or control responsive to this request, to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources.

## REQUEST FOR PRODUCTION NO. 35:

Produce all documents relating to any studies, analysis, calculations and/or modeling of the oil spill's economic impact (whether negative or positive) on the State of Alabama. This request includes any economic impact to the State as a whole, its tax streams, rents, revenues, fees, expenditures, costs, profits, valuation of real property or any other economic impacts to the State of Alabama's economy.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 35:

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  BPXP objects to this request as vague and ambiguous as to the undefined phrase "any other economic impacts."  BPXP objects to this request as vague, ambiguous, and confusing as to its use of the defined term "expenditures."  BPXP objects to this request as calling for information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, and/or other applicable privileges, exemptions, or immunities. BPXP objects to this request as premature to the extent it calls for expert discovery.

Subject to and without waiving its general and specific objections, BPXP will conduct a

reasonable search for non-privileged documents in its possession, custody, or control responsive to this request, to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources.

## REQUEST FOR PRODUCTION NO. 36:

Produce all documents relating to oil spill-related expenditures, from April 20, 2010 to present, that you contend should be applied as an offset or considered as mitigation against economic or property damage compensation sought by the State of Alabama in this litigation, including any studies, analyses, calculations and/or modeling of the expected or actual economic benefit to the State of Alabama from these expenditures.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 36:

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  BPXP objects to this request to the extent it seeks documents that the Court has ordered be destroyed in its March 12, 2014, April 10, 2014, and June 4, 2014 orders, Rec. Docs. 12591, 12659, and 12987.  BPXP objects to this request as calling for information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, and/or other applicable privileges, exemptions, or immunities.  BPXP objects to this request as premature to the extent it calls for expert discovery.

Subject to and without waiving its specific and general objections, BPXP will undertake a reasonable search for non-privileged documents sufficient to show payments relating to the *Deepwater Horizon* response that BPXP may seek to apply as an offset or to consider as mitigation against economic or property damage compensation sought by the State of Alabama in this litigation.

## REQUEST FOR PRODUCTION NO. 37:

Produce all documents relating to the amount of funds spent, from April 20, 2010 to present, either within the State of Alabama or beyond, for oil spill related costs and expenditures, which you contend support a claim of offset or mitigation, including but not limited to, identification of the payor; identification of the intended beneficiary of any payments; the purported use of the payment; the date(s) of any such payments; and the amount of the payment made.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  BPXP objects to this request to the extent it seeks documents that the Court has ordered be destroyed in its March 12, 2014, April 10, 2014, and June 4, 2014 orders, Rec. Docs. 12591, 12659, and 12987.  BPXP objects to this request as unduly burdensome in seeking "identification of the payor; identification of the intended beneficiary of any payments; the purported use of the payment; the date(s) of any such payments; and the amount of the payment made."  Among other things, this request seeks the production of millions of pages of invoices relating to the *Deepwater Horizon* response that are unlikely to provide substantial additional relevant information beyond that included in the summary information for which BPXP is agreeing to undertake a reasonable search.  BPXP objects to this request as vague and ambiguous as to the phrase "either within the State of Alabama or beyond."  BPXP objects to this request as calling for information protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, and/or other applicable privileges, exemptions, or immunities.  BPXP objects to this request as premature to the extent it calls for expert discovery.

Subject to and without waiving its specific and general objections, BPXP will undertake a reasonable search for non-privileged documents sufficient to summarize payments relating to the *Deepwater Horizon* response.

**REQUEST FOR PRODUCTION NO. 38:**

Produce all documents relating to the State of Alabama's economic performance, including any State of Alabama business industry – whether local, regional, or statewide, from April 20, 2010 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated

to lead to the discovery of admissible evidence.  BPXP objects to this request as vague and ambiguous as to the undefined term "economic performance."  BPXP is willing to meet and confer with Alabama regarding this request.

## REQUEST FOR PRODUCTION NO. 39:

Produce all documents relating to communications or data exchanged between you and the State departments, agencies, and/or subdivisions listed in the Court's scheduling order concerning the oil spill.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 39:

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  BPXP objects to this request to the extent it requests documents prior to April 20, 2010.  BPXP objects to this request as seeking documents that are equally accessible to Alabama and/or already within its possession, custody, or control.

Subject to and without waiving its specific and general objections, in addition to other agreed upon search strings, BPXP will produce non-privileged documents from the custodial files of BPXP's fact witnesses that are responsive to the following search string proposed by Alabama:

"*@adem.state.al.us*"   OR   "*@dcnr.alabama.gov*"   OR   "*@adeca.alabama.gov*"   OR

"*@labor.alabama.gov*"   OR   "*@abc.alabama.gov*"   OR   "*@tourism.alabama.gov*"   OR

"*@revenue.alabama.gov*"   OR   "*@Budget.Alabama.gov*"   OR   "*@lfo.state.al.us*"   OR

"*@dot.state.al.us*" OR "*@governor.alabama.gov*" OR "*@alsde.edu*"

## REQUEST FOR PRODUCTION NO. 40:

Produce all documents relating to communications or data exchanged between you and the State departments, agencies, and/or subdivisions listed in the Court's scheduling order concerning the oil spill's economic impact on the State of Alabama and/or the State departments, agencies, and/or subdivisions listed in the Court's scheduling order.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 40:

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated

to lead to the discovery of admissible evidence.  BPXP objects to this request as vague and ambiguous as to the undefined term "economic impact" and the subject matter of the documents requested.  BPXP objects to this request to the extent it requests documents prior to April 20, 2010.  BPXP objects to this request as seeking documents and information that are equally accessible to Alabama and/or already within its possession, custody, or control.

Subject to and without waiving its specific and general objections, in addition to other agreed upon search strings, BPXP will produce non-privileged documents from the custodial files of BPXP's fact witnesses that are responsive to the following search string proposed by Alabama:

"*@adem.state.al.us*"   OR   "*@dcnr.alabama.gov*"   OR   "*@adeca.alabama.gov*"   OR "*@labor.alabama.gov*"   OR   "*@abc.alabama.gov*"   OR   "*@tourism.alabama.gov*"   OR "*@revenue.alabama.gov*"   OR   "*@Budget.Alabama.gov*"   OR   "*@lfo.state.al.us*"   OR "*@dot.state.al.us*" OR "*@governor.alabama.gov*" OR "*@alsde.edu*"

## REQUEST FOR PRODUCTION NO. 41:

Produce all photographs related to any oil spill-related activity within the State of Alabama from April 20, 2010 to present and (if available) the location depicted by the photograph, the time the photograph was taken, the person who took the photograph, and any commentary or correspondence discussing the photograph.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 41:

BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  BPXP objects to this request to the extent it seeks to impose obligations beyond those permitted by Fed. R. Civ. P. 34 by requesting that BPXP create and produce documents that do not currently exist.  Specifically, BPXP objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information beyond the photographs and metadata contained therein. BPXP does not agree to produce documents regarding the location depicted by the photograph, the time

*Confidential Pursuant to PTO 13*

the photograph was taken, the person who took the photograph, and any commentary or correspondence discussing the photograph, apart from what is available in the photographs and metadata.

Subject to and without waiving its general and specific objections, BPXP will conduct a reasonable search for non-privileged documents in its possession, custody, or control responsive to this request, to the extent such documents exist and are not already in the possession of Alabama, or are not equally available to Alabama from sources other than BPXP, including publicly available sources.

## REQUEST FOR PRODUCTION NO. 42:

Produce all documents identified in your responses to the Interrogatories and Requests for Admissions set forth herein.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 42:

BPXP objects to this request to the extent it seeks documents that are already in Alabama's possession, custody, or control or that are as equally available to Alabama as to BPXP.

Subject to its specific and general objections, including its specific objections for each relevant interrogatory and request, BPXP will produce the documents cited or identified in response to Alabama's Interrogatory Nos. 1-23 and Request for Admission Nos. 1-19.

*Confidential Pursuant to PTO 13*

## GENERAL OBJECTIONS

BPXP asserts the following objections to each of the State of Alabama's ("the State" or "Alabama") First Set of Discovery Requests To The Defendants Relating To The State's Compensatory Damages Phase (hereafter "Alabama's Discovery Requests"). These general objections are incorporated by reference into each specific response set forth by BPXP and are neither waived nor limited by any specific responses.

1.      BPXP objects to Alabama's Discovery Requests to the extent that they purport to impose discovery obligations on BPXP greater than or different from those imposed or permitted by the Federal Rules of Civil Procedure and Orders of this Court.

2.      BPXP objects to Alabama's Discovery Requests to the extent they call for the production of ESI in any manner other than required under Federal Rule of Civil Procedure 34, the Rules and Orders of the Court, and any agreements or ongoing negotiations and discussions among counsel.

3.      BPXP objects to Alabama's Discovery Requests to the extent they seek documents or information not related to the issues to be tried in this damages phase.

4.      BPXP objects to Alabama's Discovery Requests to the extent they seek documents or information relating to Phases One or Two of the litigation. *See, e.g.*, Rec. Doc. 3354 ("No party may serve any party with any further Phase One RFPs, interrogatories, or RFAs without leave of Court."). Discovery for Phase One and Phase Two is complete, and the trial record for the Limitation and Liability Trial is closed. BPXP expressly reserves the right to rely on discovery taken and the record developed in Phase One and Phase Two of the Limitation and Liability Trial.

5.      BPXP objects to Alabama's Discovery Requests to the extent they are compound and contain multiple subparts that should be counted as separate requests. The Court expressly

limited Alabama to 60 combined interrogatories and requests for production and 25 requests for admission. Rec. Doc. 13149.

6.      BPXP objects to Alabama's Discovery Requests to the extent they seek information or documents protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, or any other applicable privilege, exemption, or immunity. BPXP will identify specific documents withheld on these grounds in accordance with the Court's Pretrial Order No. 14.   BPXP incorporates its forthcoming privilege logs and all related information into this general objection to the extent necessary to preserve against any waiver of any applicable privilege or immunity from discovery.

7.      BPXP objects to Alabama's Discovery Requests to the extent they seek information or documents for the settlement or potential settlement of disputes between parties to this matter to the extent that such information is not relevant to any party's claim or defense and thus not reasonably calculated to lead to the discovery of admissible evidence, is protected from disclosure and dissemination under Federal Rule of Evidence 408, and that discovery of such information would be prejudicial to the efforts of BPXP and any opposing parties to resolve their disputes in a fair and efficient manner.

8.      BPXP objects to Alabama's Discovery Requests to the extent they call for information or documents not within BPXP's possession, custody, or control, including but not limited to the documents of BPXP's affiliates.  All responses are made on behalf of BPXP only, and are limited to information and documents within its possession, custody, and control.

9.      BPXP objects to Alabama's Discovery Requests to the extent they are unduly burdensome, duplicative, premature, oppressive, and/or overly broad, including, without limitation, as to subject matter and/or time period, and where compliance with specific requests would be

unreasonably difficult as well as prohibitively expensive or time-consuming.

10.     BPXP objects to Alabama's Discovery Requests to the extent they seek information regarding or relating to any Alabama state agency, department, division, or subdivision other than those specifically identified as "subject to any discovery request propounded to the State of Alabama by Defendants" in the Court's July 16, 2014 order, Rec. Doc. 13149.

11.     BPXP objects to Alabama's Discovery Requests to the extent they are not limited to information or documents relevant to any party's claim or defense, or to the extent they seek discovery of information or documents not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, including, but not limited to, requests seeking information or documents concerning other incidents, accidents, or other events at BPXP's facilities or locations other than the Macondo Well or that are otherwise unrelated to the *Deepwater Horizon*.

12.     BPXP objects to Alabama's Discovery Requests as premature to the extent they call for expert discovery or seek information or documents that may not be identified until all fact and expert discovery is complete.

13.     BPXP objects to Alabama's Discovery Requests to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

14.     BPXP objects to Alabama's Discovery Requests to the extent they seek the disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to, restrictions imposed in connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any

80

*Confidential Pursuant to PTO 13*

confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

15.     BPXP objects to Alabama's Discovery Requests to the extent they seek documents already in the possession of Alabama or that are equally available to Alabama from sources other than BPXP, including publicly available sources.

16.     BPXP objects to Alabama's Discovery Requests to the extent they presume facts not proven or contentions in dispute. BPXP's responses to such requests and interrogatories are not a concession of any such disputed fact or contested issue.

17.     BPXP objects to Alabama's "Definitions" and "Instructions" to the extent they seek to impose any meaning or interpretation onto Alabama's Discovery Requests other than that evident from the plain and ordinary meaning of the words used therein.  BPXP further objects to, and will read and respond to, Alabama's "Definitions" (labeled to correspond to the Alabama's list) as follows:

>    (1)     Alabama's definition of "Business Industry" is overly broad, vague, and ambiguous.

>    (2)     Alabama's definition of "Coastal Areas" is overly broad, vague, and ambiguous; it includes the unspecified and undefined terms "intertidal zone," "immediately adjacent," and "bayous."

>    (5)      Alabama's definition of "Control" is improper to the extent it seeks to impose any obligation on BPXP beyond that imposed under Federal Rule of Civil Procedure 34(a)(1). BPXP will read and respond to Alabama's requests with the understanding that the term "control" means "possession, custody, or control" as used in Federal Rule of Civil Procedure 34(a)(1).

81

*Confidential Pursuant to PTO 13*

(6)     Alabama's definition of "Deepwater Horizon" is overly broad, vague, and ambiguous; it is not limited to the *Deepwater Horizon* drilling rig.  BPXP will read and respond to Alabama's Discovery Requests with the understanding that the term "Deepwater Horizon" means the *Deepwater Horizon* drilling rig.

(6)     Alabama's definition of "Defendant," "You," "Your," and "Your Company" is overly broad, vague, and ambiguous.  All responses are made on behalf of BPXP only, and are limited to information and documents within its possession, custody, and control.

(12)    Alabama's definition of "Employee" is overly broad, vague, ambiguous, and confusing; it includes individuals who do not have an employer-employee relationship, including subcontractors.  BPXP will read and respond to Alabama's Discovery Requests with the understanding that the term "Employee" means individuals who are employed by the relevant employer.

(15)    Alabama's definition of "Historical Constituent Background" is overly broad, vague, and ambiguous; it refers to "the oil-related material constituent concentration" but does not specify what the oil-related constituents are, and Alabama's definition of "Oil-Related Materials" already includes "oil or gas constituents."

(16)    Alabama's definition of "Identify" is overly broad; it includes a request for detailed information far beyond whatever may be reasonably necessary to distinguish one individual, one document, or any ESI, from any other.  BPXP further objects to this definition to the extent it calls for contact information of BPXP employees or other witnesses that are to be contacted through counsel.

BPXP will read and respond to Alabama's Discovery Requests with the understanding that the term "identify" means, in the context of an individual, an individual's name, and where the context reasonably requires, his or her employer and title, and in the context of a document or ESI, a Bates number or other available information necessary to isolate the document or ESI.

(17)   Alabama's definition of "MC252 Well" and "Macondo Well" is vague and ambiguous.  BPXP will read and respond to Alabama's Discovery Requests with the understanding that the terms "MC252 Well" and "Macondo Well" mean the MC 252 #1 Macondo Well.

(18)   Alabama's definition of "MC252 Oil" is vague, ambiguous, and confusing; inclusion of the word "solely" in the definition makes the meaning of this term unclear.

(21)   Alabama's definition of "Offset" is overly broad, vague, ambiguous, confusing, and circular; it defines "Offset" using the term "offset."  The definition also includes any "legal claim or defense that reduces Alabama's recovery" making it unclear how an "Offset" can be distinguished from any defense.

(23)   Alabama's definition of "Oil-Related Material Event" and "Oiling Event" is vague, ambiguous, confusing, and circular; it defines "Oil-Related Material Event" using the term "oil-related material event."  The definition does not explain what constitutes an "Oil-Related Material Event" or "Oiling Event" or how one such event can be distinguished from another.

(24)   Alabama's definition of "Oil Constituent Baseline Survey" and "Baseline Survey" is vague, ambiguous, and confusing; it is unclear what the "base … of oil-

*Confidential Pursuant to PTO 13*

related materials" or what the "historical constituent background for the presence of oil-related materials" mean.

(25)    Alabama's definition of "Oil Spill Response Activities," "Response Activities," and "Response" is vague, ambiguous, overly broad and unduly burdensome; it includes "any and all" efforts, including efforts to "dispense," and includes the undefined term "oil-contaminated materials."

(29)    Alabama's definition of "Removal Costs" is overly broad, vague, ambiguous, and confusing; this definition incorporates the defined term "expenditure" making the scope of this definition unclear.

(35)    Alabama's definition of "State of Alabama" and "State" is vague, ambiguous, and confusing; it refers to both Alabama's government and physical boundaries.

(36)    Alabama's definition of "Statement" is vague, ambiguous, and circular; it defines "Statement" using the term "statement."

(38)    Alabama's definition of "Tourist" and "Tourists" is overly broad, vague, and ambiguous.

(39)    Alabama's definition of "Tourism" is vague, ambiguous and confusing; it includes different concepts of "travel and expenditure incurred by tourists" and "all business entities supporting tourism travel and expenditures."

BPXP further objects to, and will read and respond to, Alabama's "Instructions" (labeled to correspond to the Alabama's list) as follows:

(4)    Alabama's instruction regarding its use of "each" and "every" is overly broad, vague, ambiguous, and confusing.  It renders the words equivalent and

therefore deprives them of independent meaning and inconsistent with standard English usage. BPXP will read and respond to plaintiffs' requests with the understanding that the term "each" means each and the term "every" means every.

(12)   BPXP objects to Alabama's attempt to reserve the right to "revise and/or supplement these discovery requests."   BPXP will treat any revised and/or supplemented discovery request as a new distinct request that counts separately towards Alabama's discovery limits.

18.   These responses are made without waiving, in any manner, BPXP's right to object to the use of any information or documents provided in response to these requests at any trial or evidentiary hearing on grounds of privilege, relevance, materiality, authenticity, hearsay, or any other ground permitted by any applicable law or rule.

19.   Neither BPXP's agreement to produce documents, if any, nor BPXP's agreement to search for documents responsive to a request shall imply that responsive documents exist, or constitute BPXP's admission or acknowledgment as to the relevance or admissibility of any documents or as to the truth of any allegation or assumption contained in the requests.

20.   To the extent BPXP states it will produce documents in response to the requests, BPXP will produce such documents on a rolling basis with such reasonable speed as BPXP can locate and process them, without sacrificing a meaningful review for responsiveness, privilege, and confidentiality, as this is the only feasible and physically possible method given the scope and breadth of the requests.

21.   To the extent that BPXP responds that it will search for and produce responsive documents, BPXP is only undertaking to make a good-faith effort to conduct a reasonable search of non-privileged documents in the files and records of those individuals likely to have meaningful

*Confidential Pursuant to PTO 13*

information responsive to a request as maintained in the ordinary course of business, and/or to apply a reasonable set of search terms, including those the parties have already agreed upon, to available collections of ESI as maintained in the ordinary course of business reasonably likely to yield a meaningful amount of information responsive to a request.  BPXP is not offering or promising to search for and produce every document or piece of information that may exist in the possession, custody, or control of any of the BP entities' tens of thousands of employees and agents where any such items are not included within the results of a reasonable search as described above.

22.     Where documents are identified, BPXP incorporates into its response all similar documents, which are equally available to Alabama via electronic searches of BPXP's production.

23.     BPXP's decision, now or in the future, to provide information or documents notwithstanding the objectionable nature of any of the definitions or instructions, or the document requests themselves, should not be construed as: (a) a stipulation that the material is relevant or admissible, (b) a waiver of BPXP's general objections or the objections asserted in response to specific requests, or (c) an agreement that requests for similar information will be treated in a similar manner.

24.     BPXP reserves the right to modify, amend, or supplement its responses, which are made based on the current status of its knowledge, understanding, belief, and searches for documents.  The investigation of facts and information relating to these requests is continuing, and, therefore, these responses are not intended as an admission or a representation that additional information or documents do not exist.

*Confidential Pursuant to PTO 13*

Dated:  October 3, 2014

Respectfully submitted,

*/s/ Paul D. Collier*

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Paul D. Collier
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
F. Chad Morriss
Maureen F. Browne
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Joel M. Gross
Lawrence A. Schneider
Arnold & Porter, LLP
555 12th Street N.W.
Washington, DC 20004
Telephone: (202) 942-5705
Facsimile: (202) 942-5999

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

*Attorneys for BP Exploration &*
*Production Inc.*

*Confidential Pursuant to PTO 13*

## CERTIFICATE OF SERVICE

     I hereby certify that the above and foregoing **BP EXPLORATION & PRODUCTION INC.'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO THE THE STATE OF ALABAMA'S FIRST SET OF DISCOVERY REQUESTS TO THE DEFENDANTS RELATING TO THE STATE'S COMPENSATORY DAMAGES PHASE** has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve **in accordance with Pretrial Order No. 16 on this 3rd day of October, 2014.**


                    */s/ Paul D. Collier*
                    Paul D. Collier