# Exhibit 9



56182857
Oct 10 2014
09:23PM

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**In re:  Oil Spill by the Oil Rig
"Deepwater Horizon" in the Gulf
of Mexico, on April 20, 2010**

**This Pleading Relates To**
- **10-4182** (*Alabama v. BP*)
- **10-4183** (*Alabama v. Transocean, et. al*)
- **13-2645** (*Alabama v. Anadarko & MOEX*)
- **13-2646** (*Alabama v. Transocean*)
- **13-2647** (*Alabama v. Halliburton*)
- **13-2813** (*Alabama v. BP*)

**MDL No. 2179
SECTION: J**

**JUDGE BARBIER
MAGISTRATE SHUSHAN**

## THE STATE OF ALABAMA'S
## <u>THIRD AMENDED RULE 26(a) DISCLOSURES</u>

The State of Alabama (the "State") hereby makes the following initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) and the Court's July 16, 2014 Scheduling Order.  These disclosures are based upon the State's current knowledge of the identity of witnesses and documents that support its amended claims. These initial disclosures are made expressly subject to and without waiving any applicable privileges or exemptions from discovery, including the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection. Nothing in this amended disclosure constitutes an admission or waiver of any claim, counterclaim, or defense, except that the following claims have been removed from the State's Second Amended Disclosures:

- Lost Revenue to the Alabama Alcoholic Beverage Control Board; and,

- Physical Injury to Properties Owned by the University of Alabama.

The State reserves the right to amend, supplement, and/or correct these disclosures pursuant to FRCP 26(e), and, with regards to the disclosure of testifying experts, their opinions, and their reliance information, pursuant to FRCP 26(a)(2)(D) and the Court's Scheduling Order.

**A.      Individuals with Discoverable Information**

Based on the information reasonably available to the State at this time, and subject to the taking of discovery, the State currently believes that the following persons have knowledge of discoverable information that may support the State's claims:

**1.  Fact Witnesses[1]**

**a.  Dr. Robert Bentley**, Governor of Alabama (or other designee from the Office of the Governor): information concerning the State Executive Branch's response to the oil spill, and observations concerning the oil spill's impact to the State as a whole.

**b.  Mr. Joe Garrett**, State of Alabama Deputy Commissioner of Revenue: information concerning the historical background of tax receivables and tax collection policy history.  Deputy Commissioner Garrett may be contacted through counsel for the State.

**c.  Mr. Kelly Butler**, State of Alabama Department of Finance Assistant State Budget Officer: information concerning the historical budgeting of funds for the State's programs. Mr. Butler may be contacted through counsel for the State.

**d.  Ms. Kathleen Baxter**, previous State of Alabama Department of Finance Comptroller's Office Accounting Director/Chief Financial Officer: information concerning the role and operation of the Alabama Department of Finance's Comptroller's Office, as well as the State's financial accounting process. Ms. Baxter may be contacted through counsel for the State.

---

[1] Based on the information presently available to the State, the witnesses listed herein shall cover all Rule 30(b)(6) topics propounded by Defendants on August 25, 2014, except for Topic #16, which inquires into the disbursements of BP payments, contributions, and grants.  Alabama seeks dismissal of any claim for improper disbursement of funds and reserves the right to designate a witness on Topic #16 should the topic survive the State's motion to dismiss.

**e. Dr. Joe Morton**, previous State of Alabama Superintendent of Education: information concerning the role of the Alabama Department of Education as well as the implementation, demands, and budget history of Alabama public school systems. Dr. Morton may be contacted through counsel for the State.

**f. Ms. Sherrill Paris**, State of Alabama Deputy Superintendent of Education: information concerning the Alabama Department of Education's Divisions of Teaching and Learning as well as the general implementation, demands, and budget history of Alabama public school systems. Ms. Paris may be contacted through counsel for the State.

**g. Mr. Tom Surtees**, previous Commissioner of the Alabama Department of Labor and former Director of the Alabama Department of Industrial Relations: information concerning the role and operation of the Alabama Department of Labor and the Department's role and response during the oil spill, as well as information concerning the oil spill's impact to the State's unemployment trust fund. Mr. Surtees may be contacted through counsel for the State.

**h. Mr. Lee Sentell**, Director of the Alabama Tourism Department: information concerning the State's tourism programs, tourism budget and operation, and the tourism industry response to the oil spill. Mr. Sentell may be contacted through counsel for the State.

**i. Mr. Will Gunter**, Alabama Department of Conservation and Natural Resources Counsel: information concerning State-owned properties for which the State State claims physical property damages. Mr. Gunter may be contacted through counsel for the State.

**j.   Mr. Chris Blankenship**, Director of Marine Resources Division of the Alabama Department of Conservation and Natural Resources: information concerning losses incurred by the Marine Resources Division of the Alabama Department of Natural Resources as a result of the oil spill. Mr. Blankenship may be contacted through counsel for the State.

**k.   Mr. Greg Lein**, Director of State Parks Division of the Alabama Department of Conservation and Natural Resources:  information concerning losses incurred by Gulf State Park of the State Parks Division of the Alabama Department of Natural Resources as a result of the oil spill. Mr. Lein may be contacted through counsel for the State.

**l.   Mr. Roy Collins**, Alabama Department of Environmental Management and Alabama State On-Scene Coordinator to the Gulf Coast Incident Management Team for the Deepwater Horizon oil spill: information concerning the State of Alabama's response activities associated with the oil spill, the timing, duration and magnitude of observed oiling impacts to the State's interests, and Department reports created in response to oiling impacts. Mr. Collins may be contacted through counsel for the State.

**m. Ms. Tammy Rolling**, Alabama Department of Economic and Community Affairs Chief Financial Officer: information concerning the role and operation of the Alabama Department of Economic and Community Affairs, as well as the financial expenditures regarding the National Emergency Grant issued to assist dislocated workers as a result of the oil spill. Ms. Rolling may be contacted through counsel for the State.

**n. Mr. Bill Hornsby**, Alabama Department of Economic and Community Affairs Workforce Development Division Supervisor: information concerning the role and operation of the Alabama Department of Economic and Community Affairs' Workforce Development Division, as well as the implementation of the National Emergency Grant funded program to assist dislocated workers as a result of the oil spill. Mr. Hornsby may be contacted through counsel for the State.

**o. Captain Duke Walker**, Eighth Coast Guard District Chief of Response and Federal On-Scene Coordinator: information concerning response activities and oil spill magnitude of oil spill impacts to the State of Alabama. Mr. Walker may be contacted at the Eighth Coast Guard District, Hale Boggs Federal Building, 500 Poydras Street, New Orleans, Louisiana 70130.

**p. A Representative of one or more of the Defendants' Oil Spill Contractors**: information concerning response activities and oil spill magnitude of oil spill impacts to the State of Alabama.

**2. Fact Witnesses That My Offer "Lay Expert" Opinions**

**a. Mr. Steve Jenkins**, Alabama Department of Environmental Management Field Operations Chief: information concerning the Department's Field Operations operation and function, as well as the Department's response activities. Mr. Jenkins may also offer opinions on the yearly anticipated ADEM increased costs associated with the oil spill. Mr. Jenkins may be contacted through counsel for the State.

**b. Mr. Bill Newton**, State of Alabama Director of Finance: information concerning the role and operation of the Alabama Department of Finance, as well as the State's financial budgeting process and history.  Mr. Newton may also offer opinions on how

the oil spill impacted the State's appropriation process. Director Newton may be contacted through counsel for the State.

**c. Mr. Tom White**, State of Alabama Department of Finance State Comptroller: Mr. White may provide opinions on losses incurred by the Marine Resources Division and the State Parks Division of the Alabama Department of Natural Resources as a result of the oil spill. Mr. White may be contacted through counsel for the State.

**d. Dr. Warren Craig Pouncey**, previous State of Alabama Deputy State Superintendent of Education: information concerning the role and operation of the Alabama Department of Education and the implementation, demands, and budget history of Alabama public school systems. Dr. Pouncey may also provide opinions on the performance of the State's education programs, and the financial implications of the oil spill on those programs. He may be contacted through counsel for the State.

**3. Potential Expert Witnesses Also Possessing Factual Information**: The following are expert witnesses that possess fact testimony that may support the State's claims:

**a. Dr. Joel Hayworth**, Auburn University, College of Engineering, Associate Research Professor: information concerning oiling impacts to the State of Alabama, and he may offer opinions regarding the fingerprinting of MC252 oil within Alabama's shores. Dr. Hayworth may be contacted through counsel for the State.

**b. Dr. Keivan Deravi**, Auburn University Montgomery, College of Business, Professor of Economics and Special Assistant to the Chancellor: information concerning the State of Alabama's appropriation process, and he may offer opinions

6

on the State's macroeconomic climate, as well as the behavior of various State industries. Dr. Deravi may be contacted through counsel for the State.

The State will produce the names, opinions, and reliance materials of its testifying experts pursuant to the Court's July 16, 2014 Scheduling Order.

**4. Rebuttal Witnesses**:  Pursuant to the Court's directive on October 10, 2014, the State reserves the right to identify and disclose witnesses to rebut the claims and/or defenses raised by the Defendants.[2]

**5. Witnesses Identified by Defendants:**  The State of Alabama also incorporates by reference any individuals identified by any defendant in this litigation in their Rule 26 Initial Disclosures (including amendments).

\* \* \*

Discovery is ongoing, and additional individuals may also be identified as discovery in this case advances, either through the production or discovery of documents, the deposition of witnesses, or by other means. As such, the State of Alabama reserves the right to amend and supplement this witness list as more information comes available.  *See* Fed. R. Civ. P. 26(e).

**B.     Identification of Documents**

The State may support its claims and/or defenses with the following categories of documents, to the extent they are admissible and are not protected from disclosure due to attorney-client privilege, the work-product doctrine or any other applicable privilege, or exemption from discovery and/or the Court's Scheduling Order:

---

[2] By listing a placeholder for rebuttal witnesses, the State does not concede that any defense or counter claim is viable.  Alabama reserves its right to argue against any defense or claim raised by Defendants.

o    ***Publicly Available and/or Previously Produced***

1. **State and National Economic Data, Including but Not Limited To:**

    a.   Historical State Tax Collections for all U.S. States

        1.    U.S. Department of Commerce, U.S. Census Bureau,
              Quarterly Summary of State & Local Taxes,

              http://www.census.gov/govs/qtax/historical_data.html,
              http://www.census.gov/econ/currentdata/datasets/index

    b.   Alabama Department of Revenue Tax Collections

        1.    Monthly Abstracts, http://revenue.alabama.gov/datapress-abstract.cfm

    c.   U.S. Gross Domestic Product (GDP) and Implicit Price Deflators for GDP

        1.    U.S. Department of Commerce, Bureau of Economic Analysis,
              http://www.bea.gov/national/index.htm.

    d.   Personal Consumption Expenditures

        1.    U.S. Department of Commerce, Bureau of Economic Analysis, accessed at
              the Federal Reserve Bank of St. Louis, Federal Reserve Economic Data
              (FRED), http://research.stlouisfed.org/fred2/.[3]

    e.   State and U.S. Personal Income and its Components,
         Personal Income by Industry, Wages and Salaries by Industry.

        1.    U.S. Department of Commerce, Bureau of Economic Analysis,
              http://www.bea.gov/national/index.htm,
              http://www.bea.gov/regional/index.htm.

    f.   Real Personal Income excluding Current Transfer Receipts

        1.    U.S. Department of Commerce, Bureau of Economic Analysis, Personal
              Income and Outlays, accessed at FRED,
              http://research.stlouisfed.org/fred2/.[4]

    g.   Consumer Price Index
        1.    U.S. Department of Labor, Bureau of Labor Statistics,

---

[3] Series Name: PCEPI.
[4] Series Name: W875RX1.

http://www.bls.gov/cpi/.

**h.** All Employees: Total Nonfarm

    1.    U.S. Department of Labor, Bureau of Labor Statistics, accessed at FRED, http://research.stlouisfed.org/fred2/.[5]

**i.** State and U.S. Employment and Unemployment, Unemployment Rate, Employment by Industry, Average Hourly Earnings by Industry, Average Hours by Industry

    1.    U.S. Department of Labor, Bureau of Labor Statistics, http://www.bls.gov/ces; http://www.bls.gov/sae

**j.** Retail and Food Services Sales

    1.    U.S. Department of Commerce, U.S. Census Bureau, Advance Monthly Sales for Retail and Food Services, accessed by FRED, http://research.stlouisfed.org/fred2/.[6]

**k.** Retail Trade:  Gasoline Stations

    1.    U.S. Department of Commerce, U.S. Census Bureau, Advance Monthly Sales for Retail and Food Services, accessed at FRED, http://research.stlouisfed.org/fred2/.[7]

**l.** State and U.S. Population, Age and Sex, Race, Educational Attainment,  Income

    1.    U.S. Department of Commerce, U.S. Census Bureau, People and Households, http://www.census.gov/people/.

**m.** Coincident Economic Activity Index

    1.    Federal Reserve Bank of Philadelphia, https://www.philadelphiafed.org/research-and-data/regional-economy/indexes/coincident/.

**n.** U.S. 3-month Treasury Bill Yield, U.S. 10-year Treasury Bond Yield

    1.    Board of Governors of the Federal Reserve System,

---

[5] Series Name:  PAYEMS.
[6] Series Name:  RSAFS.
[7] Series Name:  RSGASSN.

        Release H.15: Selected Interest Rates,
        http://www.federalreserve.gov/releases/h15/data.htm.

**o.**  Industrial Production Index

    1.    Board of Governors of the Federal Reserve System, Release G.17: Industrial Production and Capacity Utilization, accessed at FRED, http://research.stlouisfed.org/fred2/.[8]

**p.**  U.S. Natural Gas Marketed Production and U.S. Field Production of Crude Oil, by State

    1.    U.S. Department of Energy, Energy Information Administration http://www.eia.gov/dnav/ng/ng_prod_sum_a_epg0_vgm_mmcf_a.htm, http://www.eia.gov/dnav/pet/pet_crd_crpdn_adc_mbbl_m.htm.

**q.**  Henry Hub Natural Gas Spot Price

    1.    U.S. Department of Energy, Energy Information Administration http://www.eia.gov/dnav/ng/hist/rngwhhdm.htm.

**r.**  Cushing, OK West Texas Intermediate (WTI) Spot Price FOB

    1.    U.S. Department of Energy, Energy Information Administration http://www.eia.gov/dnav/pet/pet_pri_spt_s1_d.htm.

**s.**  U.S. Regular Conventional Gas Price

    1.    U.S. Department of Energy, Energy Information Administration, Release: Gasoline and Diesel Fuel Update, accessed at FRED, http://research.stlouisfed.org/fred2/.[9]

**t.**  State Individual Income Tax Rates

    1.    Tax Foundation, http://taxfoundation.org/article_ns/state-individual-income-tax-rates-2000-2013.

**u.**  State Sales and Use Tax Rates

    1.    Tax Foundation, http://taxfoundation.org/tax-topics/sales-use-taxes.

---

[8] Series Name:  INDPRO
[9] Series Name: GASREGCOVM.

    **v.**  Maximum State Income Tax Rates

        1.     The National Bureau of Economic Research
                  http://users.nber.org/~taxsim/state-rates/.

    **w.**  Dates of U.S. Business Cycle Expansions and Contractions

        1.     The National Bureau of Economic Research,
                  http://www.nber.org/cycles.html.

**2.** **State of Alabama Property Location and Appraised Value Information, Including but Not Limited To:**

    **i.**    Baldwin County Parcel Viewer, http://isv.kcsgis.com/al.baldwin_revenue/.

    **ii.**   Baldwin County tax appraised values,
            http://www.deltacomputersystems.com/al/al05/index.html.

    **iii.**  Baldwin County Property Map,
            https://www.co.baldwin.al.us/PageView.asp?PageType=R&edit_id=987.

    **iv.**  Baldwin County Judge of Probate Property Records,
            http://www.deltacomputersystems.com/al/al05/drlinkquerya.html.

    **v.**   Mobile County Revenue Commission Property Search,
            http://www.mobilecopropertytax.com/bill_search.shtml.

    **vi.**  Mobile County Property Parcel Mapper, http://www.mobile-propertytaxapps.com/taxmaps/.

**3.** **Other Publically Available and/or Previously Produced Documents**

    **vii.**  Reports and documents concerning the amount of funds claimed by businesses and individuals, by program[10], by month, by State and county within the State, as a result of the Deepwater Horizon oil spill. Many such reports and documents are either publically available, or are in the possession of and/or have been made available to BP.

---

[10] Program means the BP Claims Facility, the Gulf Coast Claims Facility, the Transition Program, and the Deepwater Horizon Economic and Property Damages Settlement Program.

viii.     Reports and documents concerning the amount of funds paid to businesses and individuals, by program, by month, by State and county within the State, as a result of the Deepwater Horizon oil spill. Many such reports and documents are either publically available, or are in the possession of and/or have been made available to BP.

ix.     Reports and documents prepared by United States federal, state and local governments; BP; or any other defendant or plaintiff in this litigation, concerning the movement, location, or landing of oil, dispersant and/or other chemicals and hydrocarbons associated with the oil spill. Many such reports and documents are publically available. Others have already been produced in the MDL litigation, and are thus in the possession of and/or have been made available to the Defendants.

x.     Reports and documents concerning the locations where dispersants were used and/or otherwise applied. Many of these reports have already been produced in the MDL, all of which are likely in the possession of and/or made available to BP.

xi.     Reports and documents prepared by United States federal, state and local governments; BP; or any other defendant or plaintiff in this litigation, concerning the existence of tar mats within the Gulf of Mexico.

xii.     Media accounts and reports concerning whether oil and/or dispersants reached State of Alabama waters and/or shores.

xiii.     Media accounts, reports and documents detailing the Alabama coastal environment's connection to the Alabama economy.

xiv.     Media accounts, reports and documents detailing the impact oiling events had on the State's economy, its property and proprietary interest.

xv.     The State incorporates by reference any documents identified or produced by BP or any other defendant in this action in its Rule 26 Disclosures or otherwise identified or produced during discovery.

o   ***Currently In Production and/or To Be Produced***

    **4.**   Alabama Department of Environmental Management oiling and response reports.[11]

    **5.**   State of Alabama Department financial and supporting information for the following departments, which at this time are believed to have incurred response costs and/or revenue losses associated with the oil spill:

        a.   Alabama Department of Labor[12]
        b.   Alabama Department of Environmental Management
        c.   Alabama Department of Conservation and Natural Resources
        d.   Alabama Department of Economic and Community Affairs

    **6.**   Reports of and documents concerning the State of Alabama's Education Trust Fund.

    **7.**   Reports of and documents concerning the State of Alabama's increased costs to public services incurred as a result of the oil spill.

    **8.**   Reports of and documents concerning the State of Alabama's oil spill response and monitoring costs associated with the oil spill.

    **9.**   Reports of and documents concerning the State of Alabama's proprietary interest of lands and waters within its territory.

    **10.**   Reports of and documents concerning water and/or sediment sampling and/or oil fingerprinting related to the oil spill conducted by the United States, federal, state or local government entities, BP, and any other defendant or plaintiff in this litigation. Many such reports and documents are publically available. Others have already been produced in the MDL litigation, are in the possession of and/or have been made available to BP.

---

[11] The State is still compiling and reviewing documents.  As documents are received and reviewed, the State will produce supplemental materials in a timely manner.  *See* Fed. R. Civ. P. 26(e).

[12] The Alabama Department of Industrial Relations merged with the Alabama Department of Labor in 2013.

**11.** Reports of and documents concerning the State of Alabama's budget.

* * *

The State has made a good faith effort to identify documents it believes may support its case. However, discovery is ongoing, and the State continues to review and locate additional documentation relevant to the legal issues in this case. To the extent the State discovers new documents or information relevant to its case, the State reserves the right to amend and supplement this listing of documents at that time.

**C.     Information Related to the Computation of Damages**

1.     *Categories of Damages*: Pursuant to the Court's Order of July 16, 2014, the claims to be litigated in this phase of Alabama's trial are:[13]

    **i.   Lost Tax Revenues**: The State seeks to recover taxes lost between April 20, 2010 and the date of trial.[14] At trial, the State will base its assessment of lost tax revenues largely on expert testimony. The State and its experts continue to evaluate the State's lost tax revenue methodology, and the State anticipates that it may utilize one or more of the following economic modeling approaches to compute its losses: Macroeconomic Time Series Forecast, Macroeconomic Panel Model (Difference in Differences Economic Analysis), General Regional Economic Analysis, Regional Economic Modeling (Partial/General Equilibrium), Input-Output Economic Modeling, Accounting Review of Select Tax Streams, and/or Governmental Budget and Fiscal Forecasting Analysis. The State will disclose its experts' calculations and methodologies pursuant to the Court's scheduling order. *See* Fed. R. Civ. P. 26(a)(2) (governing the disclosure of expert testimony). While the State has not completed its analysis and cannot disclose a precise dollar value at this time, the State anticipates that lost tax revenues may total, and perhaps exceed, $500 million.

---

[13] Pursuant to the July 16, 2014 Order, the State's claims for punitive damages under GML and natural resource damages under OPA, *see* 33 U.S.C §2702(b)(2)(A), will be litigated in future phases and are thus excluded from the scope of this disclosure. The State reserves the right to argue that the district court incorrectly dismissed the State's claims for compensatory damages, punitive damages, and civil penalties under Alabama law and that the district court erred in its Phase 1 rulings concerning punitive damages under GML against BP, Transocean, and Halliburton.

[14] The State reserves the right, in future actions, to seek lost revenues caused by re-oiling that can be traced to the 2010 spill.

**ii. Lost Revenues to State Departments**: The State seeks to recover revenues lost by its departments and agencies between April 20, 2010 and the date of trial. Based on the information reasonably available to the State at this time, the State expects the following department to show lost revenue:

- Alabama Department of Conservation and Natural Resources

The State anticipates that, at trial, it will present an expert accounting of its departmental losses. The State will disclose this expert accounting pursuant to the Court's scheduling order. *See* Fed. R. Civ. P. 26(a)(2) (governing the disclosure of expert testimony). Based on the information reasonably available to the State at this time, the State anticipates that lost revenues to DCNR may total, and perhaps exceed, $4 million.

**iii. Financial Impact to State Public Services**: The State seeks to recover the financial impact to its public services resulting from the spill's economic toll, specifically the impact on Alabama's primary and secondary public education system (K-12). The State and its experts continue to evaluate the financial impact, and the State anticipates that it may utilize one or more of the following economic modeling approaches to compute its damages: Applied Welfare Economic Analysis, Time Series Cross Sectional Economic Growth Modeling, Supply Demand Educational Quality Modeling, Public School Economic Effectiveness Modeling, and/or Student Performance Predictive Modeling. At trial, the State intends to rely on expert testimony to establish these losses. The State will disclose its expert calculation(s) and methodology(s) pursuant to the Court's scheduling order. *See* Fed. R. Civ. P. 26(a)(2) (regarding disclosure of expert testimony). Based on the information reasonably available to the State at this time, the State estimates that the financial impact to State public services may total, and perhaps exceed, $500 million.

**iv. State Response and Recovery Costs**: The State seeks to recover the costs of the response and recovery efforts of its various departments and agencies, damages which began on April 20, 2010 and will continue through an indefinite date because State properties continue to be oiled. Because the State continues to incur response and recovery costs, it continues to evaluate the response and recovery costs incurred by its various departments and agencies. Based on the information reasonably available to the State at this time, the following State agencies have incurred, and likely will continue to incur, response and recovery costs:

- Alabama Department of Environmental Management
- Alabama Department of Labor
- Alabama Department of Economic and Community Affairs.

Because these damages are on-going, the State cannot complete an assessment of its response and recovery costs at this time. The State anticipates that, at trial, it may use some form of accounting, economic modeling approach, an expected continued response estimate based on continued oiling reports, and/or some combination thereof to quantify this category of damages. The State will likely rely on expert testimony to establish these damages, and the expert's calculations and corresponding methodologies will be disclosed pursuant to the Court's scheduling order. *See* Fed. R. Civ. P. 26(a)(2) (governing the disclosure of expert testimony). Based on the information reasonably available to the State at this time, the State anticipates that the State's response and recovery costs may total, and perhaps exceed, $14 million.

v. **Physical Injury to State-owned Property (not NRD) and Resulting Increased Public Service Costs**: The State seeks to recover damages for injury to state-owned properties and the corresponding increase in public service costs (*e.g.* state monitoring costs). These damages commenced shortly after April 20, 2010 and will continue through an indefinite date because State properties continue to be oiled. The oiled properties under this category are identified on pages AL-ED-000001 through AL-ED-000009 of the State's supporting materials, except that the properties identified on AL-ED-000008 as being owned by the University of Alabama (Nos. 4703060000009.000; 4703050000007.000; 470307000001.000; 4703080000001.000) are not part of the State's claim. Because State properties continue to be oiled, the evaluation of physical property damage and resulting increased public service costs is ongoing, and the State reserves the right to supplement this disclosure with additional properties. *See* Fed. R. Civ. P. 26(e).

At trial, the State will rely on expert testimony to establish these damages. The State anticipates that it may utilize one or more of the following property damage methodologies at trial: Replacement Cost, Diminution of Property Value, Temporary Detriment to the Enjoyment of Real Property Rights, and/or Accounting of Past, Present and Expected Response and Monitoring Costs Associated with Physical Property Damage. The State will disclose its expert calculation(s) and methodology(s) pursuant to the Court's scheduling order. *See* Fed. R. Civ. P. 26(a)(2) (governing the disclosure of expert testimony). While the State has not completed its analysis and cannot estimate a precise dollar value at this time, the State anticipates that its physical property damage and related costs may total, and perhaps exceed, $450 million.

vi. **Damages Resulting from Injury to the State's Proprietary Interests**: For its compensatory damages under general maritime law, the State seeks the damages listed in categories (a)-(e) above, and the State adopts those paragraphs fully herein.

vii. **Any Other Economic Losses the Court Deems Appropriate**: The State intends to seek all available legal remedies at trial, including attorney's fees, interest, and/or any other further relief that the Court deems appropriate in this phase of the State's case

2. *Supporting Documents or other evidentiary material*: The State has provided a significant amount of publically-available information that bear on the nature and extent of the injuries listed above and has (to date) produced more than 100,000 documents, which also bear on the nature and extent of the injuries listed above. The State reserves the right to supplement this disclosure of supporting materials pursuant to Rule 26(e).

3. *Supplementation and Expert Discovery*: As explained above, oiling of Alabama's properties continues, and fact discovery is in on-going. Consequently, the State's damages, damage computations, and damage methodologies are fluid and will likely change in preparation for trial. The State will rely primarily upon expert testimony to prove its damages at trial and will disclose its experts and their reports pursuant to the Court's Scheduling Order. *See* Fed. R. Civ. P. 26(a)(2). The State additionally reserves the right to supplement these disclosures and supporting materials pursuant to Fed. R. Civ. P. 26(e)(1).

## C.      Insurance

The State is not liable for any judgment and further is unaware of any insurance agreements that would apply to any such liability. As such, these disclosures are not applicable in this case.

Respectfully submitted this 10th day of October, 2014.

LUTHER J. STRANGE
*Attorney General*

 /s/ Corey L. Maze
COREY L. MAZE
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*

Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130
Phone: (334) 242-7300
Email:  cmaze@ago.state.al.us

Attorneys for the State of Alabama

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Counsel for the Defendants by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this  October 10, 2014.

  /s/ Corey L. Maze
COREY L. MAZE
*Special Deputy Attorney General*

19