IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to: | * * | Judge Barbier |
| Case Nos. 10-2771, 10-4182, 10-4183, 13-02645, 13-cv-02646, 13-cv-02647, 13-cv-02813 | * * * | Magistrate Judge Shushan |

# BP'S OPPOSITION TO THE STATE OF ALABAMA'S MOTION TO DISMISS SET-OFF CLAIMS, OR IN THE ALTERNATIVE, MOTION TO STRIKE SET-OFF AFFIRMATIVE DEFENSES

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Maureen F. Browne
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Joel M. Gross
Lawrence A. Schneider
Arnold & Porter LLP
555 12th Street, N.W.
Washington, DC 20004
Telephone: (202) 942-5705
Facsimile: (202) 942-5999

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Paul D. Collier
R. Chris Heck
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
F. Chad Morriss
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone: (202) 879-5000
Facsimile: (312) 862-2200

*Attorneys for BP p.l.c., BP Exploration & Production Inc., and BP America Production Company*

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ................................................................................................................................ 4

I.  ALABAMA'S MOTION IS IRRELEVANT TO DISCOVERY REGARDING
THE GRANTS AND OTHER EXPENDITURES, AND THUS IS
PREMATURE. ................................................................................................................. 4

II. SOVEREIGN IMMUNITY DOES NOT BAR BP'S POTENTIAL DEFENSES
AND CLAIMS, WHICH ARISE OUT OF THE SAME TRANSACTION OR
OCCURRENCE AS THE STATE'S CLAIMS. ............................................................... 6

    A.  BP's Potential Defenses And Claims Arise Out Of The Same Transaction
Or Occurrence As The State's Claims. ................................................................ 7

    B.  Alabama's Arguments That BP's Potential Defenses And Claims Are
Barred By Sovereign Immunity Are Meritless. ................................................. 10

CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Moore v. N.Y. Cotton Exch.*,
  270 U.S. 593 (1926) ............................................................................................................... 7

*New York Life Ins. Co. v. Deshotel*,
  142 F.3d 873 (5th Cir. 1998) ................................................................................................. 6

*Plant v. Blazer Fin. Servs. Inc. of Ga.*,
  598 F.2d 1357 (5th Cir. 1979) ....................................................................................... passim

*Tank Insulation Int'l, Inc. v. Insultherm, Inc.*,
  104 F.3d 83 (5th Cir. 1997) .......................................................................................... 7, 8, 11

*Texas v. Caremark*,
  584 F.3d 655 (5th Cir. 2009) ..................................................................................... 6, 7, 9, 12

*Underwriters at Interest on Cover Note JHB92M10582079 v. Nautronix, Ltd.*,
  79 F.3d 480 (5th Cir. 1996) ............................................................................................. 7, 11

**Statutes**

33 U.S.C. § 2702(a) ..................................................................................................................... 7

33 U.S.C. § 2702(b)(2)(D) ................................................................................................ 5, 7, 10

Ala. Const. Art. III, § 42 ............................................................................................................ 13

Ala. Const. Art. V, § 113 ........................................................................................................... 13

**INTRODUCTION**

Alabama's motion is its second bite at the apple in an effort to avoid explaining how it spent almost $100 million in grant money from BP Exploration & Production Inc. ("BPXP"). The Court already ordered Alabama to respond to discovery regarding those grants. Alabama now asserts sovereign immunity in another attempt to avoid divulging how the grant money was spent. This tactic should be rejected just as the first. BPXP's defenses and potential claims relating to the grants arise out of the same facts as Alabama's claims for economic loss and removal costs and thus Alabama has waived sovereign immunity by bringing its suit.

**First**, Alabama's discussion of discovery is a red herring. Alabama expressly states that its motion does not apply to BP presenting evidence that Alabama's net losses are less than what the State argues. Thus, regardless of the Court's ruling on Alabama's current motion, discovery regarding the grants should proceed in accord with the Court's prior order. There is no valid claim that the Court lacks jurisdiction over such discovery. Moreover, BP has not yet asserted any claims against Alabama. Because BP will not be able to determine the potential claims, or the particular defenses, it has against Alabama until that discovery is complete, any ruling on Alabama's motion to dismiss or strike is premature.

**Second**, sovereign immunity does not apply to either defenses or potential claims based on the grants made by BPXP. Sovereign immunity does not apply to claims that arise out of the same transaction or occurrence as the government's claims. That transaction or occurrence includes the facts allegedly flowing from the oil spill, including Alabama's alleged economic losses during the post-spill period and BPXP's grants to Alabama after the spill to mitigate its effects. Alabama waived sovereign immunity against defenses or claims based on the grants by suing BP in federal court.

Therefore, Alabama's motion should be denied and discovery should proceed regarding Alabama's use of the monies provided by BPXP.

## BACKGROUND

In the months following the oil spill, BPXP made numerous expenditures to Alabama and the other Gulf States. These included establishing a $20 billion trust fund to pay legitimate claims for damages, response costs, and other costs associated with the spill. Between April 20, 2010 and February 28, 2014, BPXP paid (1) approximately $1.8 billion to individuals and businesses in Alabama through various claims processes, and (2) approximately $115 million in government payments in Alabama. BPXP also spent more than $14 billion on response and cleanup activities in connection with the *Deepwater Horizon* incident.

BPXP's expenditures include payments made directly to the State of Alabama:

- In May 2010, BPXP made a $25 million grant to the State of Alabama to cover costs related to the *Deepwater Horizon* incident, Ex. 1;

- In June 2010, BPXP made a $25 million grant to the State of Alabama to cover costs related to the *Deepwater Horizon* incident, Ex. 2;

- In May 2010, BPXP made a $15 million grant to the State of Alabama to promote tourism to mitigate the alleged consequences from the *Deepwater Horizon* incident, Ex. 3;

- In March 2011, BPXP made a $16 million grant to the State of Alabama to promote tourism to mitigate the alleged impacts resulting from the *Deepwater Horizon* incident, Ex. 4; and

- In August 2010, BPXP made a $12 million grant to the State of Alabama to provide behavioral health and substance abuse services to those allegedly impacted by the *Deepwater Horizon* incident, Ex. 5.

These grants for costs, tourism, and mental health were made pursuant to written agreements. Each of these agreements obligates the State of Alabama to use the grants for specific purposes. The two $25 million grants state that the payments shall be "used and disbursed … to pay or otherwise cover costs related to the" *Deepwater Horizon* incident. Ex. 1

2

at 1; Ex. 2 at 1. Similarly, the tourism grants specify that they shall be used to promote tourism to mitigate the alleged impacts from the *Deepwater Horizon* incident. Ex. 3 at 1; Ex. 4 at 1.

The grant agreements also obligate Alabama to provide information to BPXP. The two $25 million grants state that Alabama "shall send BP a report of disbursements of the Payment on an annual basis until the Payment has been fully spent." Ex. 1 at 1; Ex. 2 at 1; *see also* Ex. 3 at 1; Ex. 4 at 3; Ex. 5 at 1. BP also "shall have reasonable access to the State's disbursement records" and the ability to make inquiries and monitor the use and disbursement of the payment. Ex. 1 at 1; Ex. 2 at 1; *see also* Ex. 3 at 1; Ex. 4 at 3; Ex. 5 at 1. Four of these agreements put a corresponding obligation on BPXP: "BP agrees that it will not seek to apply the Payment" as an offset against damages allowed under OPA and any other applicable law. Ex. 1 at 1; Ex. 2 at 1; Ex. 3 at 1; Ex. 5 at 1.

Despite these agreements' provisions, Alabama has not provided adequate annual reports, allowed BPXP access to its disbursement records, or allowed BPXP to monitor the use and disbursement of the payments for the two $25 million grants. BPXP sent Alabama a letter requesting this information and explaining how Alabama had failed to comply with the agreements, but never received a response from Alabama. Ex. 6, 9-23-13 Ltr. from N. Block to D. Perry. Thus, BPXP has not been able to determine whether the payments were used for costs related to the *Deepwater Horizon* incident or for some other expenditures.

In BP's answer — served in December 2011, one-year-and-a-half after the grants were made — BP explained that it was entitled to a set-off or other equitable reduction for payments made by BPXP or other parties or entities:

> To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities.
>
> …

> To the extent the BP Parties are found liable to Plaintiff for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by any prior payment to and/or release of liability from Plaintiff who received funds through the BP claims process and/or the GCCF.

Rec. Doc. 4905 at 202, 204.

Once litigation with Alabama proceeded, given the State's failure to comply with the fundamental requirements of the grant agreements and the relevance of the payments to the economic losses asserted by Alabama, BP served Alabama with discovery relating to the use of the grants. Alabama objected to the discovery. On July 25, 2014, the parties made submissions to the Court regarding discovery relating to the grants. The Court overruled Alabama's objections and ordered that discovery relating to the grants proceed. Rec. Doc. 13210.

At the October 10 hearing, Alabama expressed concern about whether BP might bring counterclaims against the State. Ex. 7, 10-10-14 Hr'g Tr. at 46. In response, BP's counsel explained how the language of the grant agreements required Alabama to provide an accounting of the funds, which Alabama had not done. *Id.* at 47. Whether Alabama had violated the terms of the grants so as to give rise to a counterclaim could only be determined through discovery. BP's counsel stated that "[i]t's likely that most of these issues will be in the form of mitigation, not really a setoff, but the witnesses and the knowledge about how the grants were used is with the state. … We won't know whether we have a claim about those grants until we see how the money was spent." *Id.*

## ARGUMENT

### I. ALABAMA'S MOTION IS IRRELEVANT TO DISCOVERY REGARDING THE GRANTS AND OTHER EXPENDITURES, AND THUS IS PREMATURE.

Alabama's brief implies at various points that its motion is relevant to the scope of discovery. Ala. Br. at 2, 9, 17. This is incorrect. The Court's ruling on Alabama's motion will not affect the scope of discovery.

4

Alabama purports to divide the purposes for which defendants might use evidence about expenditures, including the grants, into three categories. Ala. Br. at 1. The first category is using the evidence to reduce Alabama's net losses under OPA, what Alabama labels "mitigation evidence." *Id.* The second and third categories are "counterclaim" and "credit," where Alabama states that BP might ask that an amount of money be subtracted from any judgment in Alabama's favor. *Id.* Alabama expressly admits that its "motion deals only with #2 and #3." *Id.*

Therefore, nothing in Alabama's motion will prevent discovery from proceeding on the first category of using the evidence to reduce the amount of net loss. Alabama presumably has limited its motion in this manner because to recover damages for lost revenues such as taxes or fees, Alabama must prove its "net loss" under OPA, 33 U.S.C. § 2702(b)(2)(D). In determining the net loss, BP clearly is allowed to provide evidence of expenditures that would disprove or reduce the alleged net losses of Alabama.

This admission that expenditures are relevant to net loss is fatal to Alabama's suggestion that its motion could impact discovery. Regardless of how the Court rules on Alabama's motion, discovery about BP's expenditures — including Alabama's use of grant money — will remain relevant to determining the amount of Alabama's net loss. BP previously explained the relevance of this discovery to net loss in the July 25, 2014 Defendants' Joint Submission Regarding Discovery Disputes Involving The Rule 30(B)(6) Topics And Search Terms, attached as Exhibit 8. BP is entitled to know how its payments to Alabama were used to determine how they reduced Alabama's net losses. Moreover, if those monies could have been spent so as to offset Alabama's economic losses associated with the spill, but were not, this could be relevant to the economic damages to which Alabama is entitled. For example, if monies that Alabama received could have been used for the purpose of covering recovery and response costs but were

5

diverted to other state initiatives instead, Alabama arguably is foreclosed from seeking recovery of those response costs from Defendants now. *Id.* at 3-4. On this basis, this Court previously denied Alabama's objections to discovery regarding the grants, and ordered that such discovery proceed. Rec. Doc. 13210.

Because discovery will proceed regardless of the Court's ruling on Alabama's motion, there is no urgency to the motion and it is premature. As BP explained during the recent conference, whether BP will bring any counterclaims and how BP will make arguments regarding the expenditures will depend on the discovery it obtains from Alabama. Ex. 7, 10-10-14 Hr'g Tr. at 47. Once that discovery is complete, BP will be in a better position to determine what defenses and claims it has against Alabama in addition to the arguments regarding net loss. Thus, there is no need for the Court to rule on Alabama's motion to dismiss or strike now, and indeed depending on how the evidence develops there may never be such a need. Instead, the Court should deny Alabama's motion. If Alabama wants it can re-file the motion once discovery is complete and BP has filed any claims and specified its defenses.

## II. SOVEREIGN IMMUNITY DOES NOT BAR BP'S POTENTIAL DEFENSES AND CLAIMS, WHICH ARISE OUT OF THE SAME TRANSACTION OR OCCURRENCE AS THE STATE'S CLAIMS.

"When a state initiates a lawsuit, it waives its sovereign immunity to the extent required for the lawsuit's complete determination." *Texas v. Caremark*, 584 F.3d 655, 659 (5th Cir. 2009). The State waives its sovereign immunity as to "compulsory counterclaims," those "arising out of the same transaction or occurrence which is the subject matter of the government's suit." *Id.* (citation omitted). The term "'[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 882 (5th Cir. 1998) (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593

(1926)).  Compulsory counterclaims include those for recoupment, "a demand asserted to diminish or extinguish the plaintiff's demand that arises out of the same transaction forming the basis of the plaintiff's claim." *Caremark*, 584 F.3d at 659-60.

Under Fifth Circuit law, a claim or defense arises out of the same transaction or occurrence if **any** of four conditions are satisfied:  (1) whether issues of fact and law are largely the same; (2) whether res judicata would bar a subsequent suit on defendant's claim; (3) "whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim"; (4) "whether there is any logical relationship between the claim and counterclaim." *Tank Insulation Int'l, Inc. v. Insultherm, Inc.*, 104 F.3d 83, 85-86 (5th Cir. 1997); *Underwriters at Interest on Cover Note JHB92M10582079 v. Nautronix, Ltd.*, 79 F.3d 480, 483 n.2 (5th Cir. 1996); *Plant v. Blazer Fin. Servs. Inc. of Ga.*, 598 F.2d 1357, 1360-61 (5th Cir. 1979).  At a minimum, any defenses or claims by BP based on the grants would satisfy both the third and four conditions.  Thus, such defenses or claims would not be barred by sovereign immunity.

### A. BP's Potential Defenses And Claims Arise Out Of The Same Transaction Or Occurrence As The State's Claims.

BP's potential defenses and claims satisfy the third condition, which is "whether substantially the same evidence will support **or refute** plaintiff's claim as well as defendant's counterclaim."  *E.g.*, *Tank Insulation*, 104 F.3d at 85-86 (emphasis added).  Alabama is seeking damages for, among other categories of damages, its alleged removal costs and "net losses" of revenue under OPA, 33 U.S.C. § 2702(a), (b)(2)(D).  Thus, if evidence would refute Alabama's claims for net losses and removal costs, defenses or claims based on substantially the same evidence would arise out of the same transaction or occurrence.

7

As Alabama acknowledges, BPXP will be able to use evidence of grants and other expenditures to refute Alabama's alleged net losses of revenue (what Alabama calls mitigation evidence). Ala. Br. at 1. As explained previously, BP may use evidence relating to the grants and other expenditures to show either how these monies actually reduced Alabama's net loss or, if they were spent elsewhere, how they should have been used to reduce any alleged net losses. BP also may use evidence regarding the two $25 million block grants to argue that these grants should have been used to pay for the recovery and response costs that Alabama seeks.

The same evidence that would refute Alabama's claims of net losses and removal costs would support BP's potential defenses or claims against Alabama. BP would use the same evidence of how Alabama spent those monies to argue that the grants should be subtracted from any amount awarded to Alabama. Thus, such potential defenses and claims would arise out of the same transaction or occurrence and sovereign immunity would not apply.

BP's potential defenses and counterclaims also would satisfy the fourth condition, which is "whether there is any logical relationship between the claim and counterclaim." *Tank Insulation*, 104 F.3d at 86. "The logical relation test is a loose standard which permits 'a broad realistic interpretation in the interest of avoiding a multiplicity of suits.'" *Plant*, 598 F.2d at 1361 (citation omitted). "The hallmark of this approach is its flexibility." *Id.* A logical relationship exists when the counterclaim arises from the same "aggregate of operative facts" or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant. *Id.*

Both Alabama's claims and any potential BP claims or defenses are based on the same aggregate of operative facts. The facts that are part of this aggregate include the spill, BP's response to the spill, payments based on the spill, and the alleged economic loss from the spill.

8

The grants and other expenditures are thus part of the same occurrence or transaction that resulted in Alabama's alleged damages. The Fifth Circuit's decision in *Plant* supports that Alabama's claims and BP's potential claims and defenses arise from the same aggregate of operative facts. 598 F.2d at 1361. *Plant* explained that "[a]pplying the logical relationship test literally to the counterclaim in this case clearly suggests its compulsory character because a single aggregate of operative facts, the loan transaction, gave rise to both plaintiff's and defendant's claims." *Id.* Similarly, here the spill gave rise to both Alabama's claims for damages and BP's potential defenses and claims based on the grants. Those grants would not have occurred in the absence of the spill and Alabama's arguments that the spill caused economic losses. Thus, Alabama's claims and BP's potential defenses and claims both arise from the same aggregate core of facts.

Similarly, the district court's decision after remand in *Caremark* also supports BP's position. Ex. 9, Order Denying the States' Motion to Dismiss on Ground of Eleventh Amendment Sovereign Immunity, No. 99-cv-914-WRF, Rec. Doc. 831 (W.D. Tex. June 8, 2010). On remand, the key issue was whether Medicaid's provisions allowed the States to recover the full amount of their initial expenditures against Caremark or if the States could recover only the costs "net" of any rebates. *Id.* at 10, 19. The court determined that Medicaid did not foreclose Caremark's net-of-rebates argument. *Id.* at 19. The court thus found that the logical relationship test was satisfied because "the States seek money for falsely denied or underpaid claims and Caremark in turn seeks a reduction of any such amount awarded based upon any amount by which the States were overpaid." *Id.* at 15. Here, unlike in *Caremark*, there is no question about whether States such as Alabama can recover their losses net of gains or mitigation. OPA expressly provides that the States can recover "[d]amages equal to the net loss"

9

of revenues.  33 U.S.C. § 2702(b)(2)(D).  Because the amount of the grants could be netted against Alabama's alleged losses, potential defenses or claims based on the grants arise from the same operative facts and have a logical relationship to Alabama's claims.

Likewise, the aggregate core of facts provided BP with additional legal rights.  As explained in *Plant*, the aggregate core of facts includes all facts resulting from the spill.  These facts that resulted from the spill include both Alabama's alleged economic losses as well as BPXP's expenditures to mitigate those losses.  Thus, the aggregate core of facts includes the grants by BPXP.  In general, under the grant documents, BPXP has the legal right to receive reports from Alabama regarding the grant disbursements, monitor the grant disbursements, and have the funds used for the *Deepwater Horizon* incident.  As the grant documents with these legal rights result from the spill, the aggregate core of facts activated these contractual rights in BPXP.

Moreover, Alabama has failed to allow BPXP to exercise the first two legal rights, and discovery should reveal whether Alabama also has violated the third.  Alabama's breach of these contractual provisions may activate additional legal rights in BPXP.  These legal rights would include allowing BP to argue that the provisions in the grant agreements prohibiting BP from seeking offset no longer are binding because of Alabama's material breach and so the grant funds can be recouped against any judgment awarded to Alabama.  Thus, the aggregate core of facts created additional legal rights in BPXP.  This establishes another basis for the logical relationship between Alabama's claims and BP's potential claims and defenses.

**B.     Alabama's Arguments That BP's Potential Defenses And Claims Are Barred By Sovereign Immunity Are Meritless.**

Alabama's contention that sovereign immunity applies is erroneous.  **First**, Alabama's assertion that BP's potential counterclaims do not arise from the same facts as Alabama's claims

10

is incorrect. Alabama ignores that the "logical relationship" test is not the only one used by the Fifth Circuit. As explained previously, BP's claims would arise from the same occurrence or transaction under the "substantially the same evidence" test as well. *See Tank Insulation*, 104 F.3d at 85-86; *Nautronix*, 79 F.3d at 483 n.2; *Plant*, 598 F.2d at 1360-61. BP needs to satisfy only one of these tests for its potential claims and defenses to arise from the same transaction or occurrence as Alabama's claims.

Moreover, BP's potential defenses and claims also would arise from the same facts under the "logical relationship" test. The logical relationship test looks to the aggregate of operative facts. Alabama cannot pick and choose alleged facts to assert that BP's potential defenses or claims are based on different alleged facts from Alabama's claims. Ala. Br. at 11. The logical relationship test does not require that the exact same facts support both Alabama's claims and BP's potential claims or defenses. Instead, the Court looks to the aggregate of operative facts. Per the Fifth Circuit's decision in *Plant*, that includes all facts that result from the explosion and spill. These include not only oil allegedly hitting Alabama's property, but also BP's removal of that oil and payments to the State for remediation, and not only State departments allegedly spending or losing money because of that oil, but also BP's grants to help the State remediate and mitigate the supposed damages caused by that oil. Ala. Br. at 11. Because the grants and BP's potential claims and defenses arise from the aggregate of operative facts, those claims and defenses are logically related to Alabama's claims.

The aggregate core of facts likewise gave rise to dormant legal rights of BP. Specifically, because of the spill and alleged damages, BP and Alabama entered into the grant agreements that gave BP certain rights regarding monitoring, receiving reports, and ensuring that the funds were used for the *Deepwater Horizon* incident. BP's legal right to bring claims or recoupment

11

defenses if Alabama breached those contractual obligations also arises from the same aggregate facts.

**Second**, Alabama's argument that BP's claims are barred by sovereign immunity because the claims had not accrued when BP filed its answer is wrong. Alabama's assertion that BP's claims or defenses are not fully mature is unsupported. Four of the grants were made in May and June 2010. BP's answer was not filed until December 2011 — a year-and-a-half later. As Alabama has not complied with the reporting and monitoring requirements of the grants, discovery is needed to determine whether and when Alabama breached the terms of the grants to determine if any claims are mature.

Even if discovery showed that the claims did not accrue until after December 2011, there is no sense in a rule that unmatured claims are barred by sovereign immunity. The rule that unmatured claims are not compulsory counterclaims is meant to protect the claimant, to avoid their unmatured claims from being barred by res judicata. By contrast, when a government is claiming sovereign immunity, it would be perverse if a party could bring a claim if it was mature but that the claim would be barred by sovereign immunity if it were not mature. Whether sovereign immunity barred a defendant's claim would depend on the happenstances of when the claim accrued, when the government filed suit, and when the court ordered the defendant to file its responsive pleading, rather than the substantive merits of the claim or whether the claim arose from the same transaction or occurrence as the government's claim. Nothing in *Caremark*, on which Alabama heavily relies, suggests such a requirement for sovereign immunity to be waived.

In any case, if necessary, once discovery is complete BP will seek leave to file its defenses or claims in a new pleading. This would then become the operative pleading and the potential defenses or claims would have accrued before the filing of this new pleading.

**Third**, the grants that would form the basis of BP's potential defenses or claims were made to the State of Alabama. Alabama does not dispute that the two $25 million grants were made to Alabama, and so its arguments about other parties does not apply to these grants. Other grants, such as the May 2010 $15 million grant for tourism, also were made directly to the State of Alabama. Alabama's argument that BP's potential claims and defenses target parties other than Alabama does not apply to these grants.

The March 2011 $16 million tourism grant was made to the "Office of the Governor of the State of Alabama." Ex. 4 at 1. Alabama's suggestion that the Office of the Governor is not part of the State of Alabama is puzzling. Ala. Br. 14. This suggestion directly contradicts statements made in "The State of Alabama's Response Memorandum to BP's Motion to Strike the Appearance of Counsel for the Governor Of Alabama":

> Contrary to BP's assertions, the Governor, in his official capacity, has the supreme authority to speak for and appear on behalf of the State of Alabama ("State"), to appoint counsel to represent the State, and to participate in cases where the State has an interest. BP would have this Court believe that the Governor and the State are separate entities, and thus should be considered separate parties. BP is wrong. When the Governor appears on behalf of the State, the Governor and the State are essentially one.

Rec. Doc. 13551 at 1. Alabama's constitution also confirms the obvious: the Governor is part of the State of Alabama. Alabama's constitution divides the "powers of the government of the State of Alabama" into three departments, and the Governor is vested with the supreme executive power of the State of Alabama. Ala. Const. Art. III, § 42; Ala. Const. Art. V, § 113.

Alabama's attempt to take statements by BP out of context cannot change those facts. BP has not suggested that the Office of the Governor is not part of the government of the State of Alabama. Instead, BP's briefs and statements have stated that counsel retained by the Governor to protect the Governor's interests are not authorized to represent the State of Alabama. Specifically, BP argued that counsel hired by the Governor to protect his interests are statutorily

13

prohibited from representing the State unless they are appointed as deputy or assistant attorneys general. Rec. Doc. 13510-1; *see also* Rec. Doc. 13579 at 3. Moreover, the Court recently denied BP's motion regarding the appearances of counsel by the Governor, while noting that "the Governor of the State of Alabama" is the "Chief Executive Officer of the State," Rec. Doc. 13579 at 4, again confirming that the Governor is part of the State of Alabama.[1]

**Fourth**, Alabama's assertion that BP's potential defenses or claims may seek a different form of relief is again premature. In any case, any BP defense or claim likely will be limited to seeking a reduction in the alleged money damages Alabama is seeking, which is the same form of relief as sought by the State.

**Fifth**, BP will not seek recoupment of any amount that is greater than the damages awarded to the State, if any.

**Sixth**, Alabama admits that its final argument regarding whether this litigation is the only vehicle for claiming that the State violated the grant agreements is premature, and BP agrees that it is premature. In any case, given Alabama's current brief, Alabama would almost certainly argue that sovereign immunity would bar claims brought by BP in a subsequent action. Thus, unless Alabama is willing to waive sovereign immunity and compulsory counterclaim arguments against a later action, BP does not appear to be able to bring its claims in a subsequent action.

## CONCLUSION

Sovereign immunity is not relevant to BP's potential defenses or claims. Alabama's own admissions show that its sovereign immunity arguments cannot impact discovery. Alabama admits that its motion does not apply to evidence used for net losses, and this is one purpose of

---

[1] As for the grant to Gulf Shores and Orange Beach Tourism, discovery is needed to determine how that grant was used and whether the State was involved. In any case, discovery regarding this grant is needed to determine Alabama's alleged net losses of revenues under OPA.

14

BP's discovery into the grants and other expenditures.  Moreover, any potential defenses or claims that BP does make based on the grants will arise out of the same transaction or occurrence as Alabama's claims, and thus sovereign immunity does not apply.

Date:  November 4, 2014                                              Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #I6984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Paul D. Collier
R. Chris Heck
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
F. Chad Morriss
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone: (202) 879-5000
Facsimile: (312) 862-2200

Maureen F. Browne
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

        Joel M. Gross
Lawrence A. Schneider
Arnold & Porter, LLP
555 12th Street N.W.
Washington, DC 20004
Telephone: (202) 942-5705
Facsimile: (202) 942-5999

*Attorneys for BP p.l.c., BP Exploration & Production Inc., and BP America Production Company*

**CERTIFICATE OF SERVICE**

     I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 4th day of November, 2014.

                                                   /s/ Don K. Haycraft
                                                   Don K. Haycraft