# Exhibit 8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL NO. 2179 |
| | * | SECTION J |
| | * | |
| This document relates to: | * | Judge Barbier |
| | * | |
| Case Nos. 10-2771, 10-4182, 10-4183, 13-02645, 13-cv-02646, 13-cv-02647, 13-cv-02813 | * * * | Magistrate Judge Shushan |

---

## DEFENDANTS' JOINT SUBMISSION REGARDING DISCOVERY DISPUTES INVOLVING THE RULE 30(B)(6) TOPICS AND SEARCH TERMS

Defendants BP, Transocean, Halliburton, Anadarko and MOEX submit the following to address discovery disputes that have arisen during the side's efforts to finalize the search terms and Rule 30(b)(6) topics.  While each of these issues is unique, all but one have a common thread in that Alabama's position would impermissibly narrow the discovery that Defendants seek to obtain and unduly prejudice the Defendants' ability to develop their defense if accepted. Alabama's efforts to limit discovery simply do not square with the Federal Rules and the broad view of relevance at the discovery stage. The areas of disagreement are:

- discovery from Alabama regarding reports and analyses as to payments that BP made to individuals and businesses within Alabama and their impact on Alabama's economy;

- discovery from Alabama regarding the disbursement of monies pursuant to grants and contributions that BP made to Alabama;

- temporal scope for discovery of Alabama communications;

- discovery from Alabama regarding certain information it possesses regarding Alabama counties and municipalities;

- discovery from Alabama regarding individuals and entities relating to response efforts;

-  Alabama's search strings served on Defendants.

Defendants discuss below why the information they seek is discoverable, and why Alabama's positions seek to impose an unreasonably narrow discovery scope.

## I.     <u>Discovery re payments that BP made to individuals and businesses</u>

Claim payments to individuals and businesses in Alabama may have an offset effect towards Alabama's economic losses and should be taken into consideration.  Discovery into those claim payments to individuals and businesses has relevance to Alabama's OPA economic claim because, among other things, those payments were subject to state taxes and therefore impacted the state tax revenue.  Here, the Defendants have requested that Alabama produce a

Rule 30(b)(6) witness to testify on studies or analyses relating to the impact of such claim payments on the Alabama economy.  *See* App. A (Topic 14).

Alabama, however, refuses to produce a witness to testify on this topic contending that such evidence would be inadmissible at trial under the collateral source doctrine.  The collateral source doctrine "generally denies to a tortfeasor a reduction in its liability by any amounts the plaintiff receives from a source collateral to, or independent of, the tortfeasor."  *Phillips v. Western Co.,* 953 F.2d 923, 929 (5th Cir. 1992).  But it would not seem to apply in this instance where Alabama is the plaintiff and the payments that it seeks to exclude are make to individuals and businesses other than the plaintiff.   Additionally, the collateral source doctrine does not apply here because the source of the payments is not collateral—BP is both the source of the payments and a defendant.  *See Phillips,* 953 F.2d at 931 ("In cases where the tortfeasor contributes toward the benefit . . . the justifications for denying a setoff become less compelling. The rule is intended to ensure that the availability of outside sources of income does not diminish the plaintiff's recovery, not make the tortfeasor pay twice."); *Smith v. Office of Pers. Mgmt.*, 778 F.2d 258, 263 (5th Cir. 1985) ("The collateral source rule does not apply when the collateral source is the defendant."); *Berg v. United States*, 806 F.2d 978, 984 (10th Cir. 1986) ("A collateral source, then, is one which is distinct from the funds of the defendant.").

Furthermore, the collateral source doctrine contains an evidentiary component that precludes admission of evidence at trial.  It, however, is not a mechanism to limit discovery.  *See In re Ford Motor Co. Bronco II Prods. Liab. Litig.,* No. CIV.A. MDL-991, 1994 WL 624114, at *1 n.6 (E.D. La. Nov. 8, 1994) ("Relevance, not admissibility, is the linchpin of whether information is properly subject to discovery.  Whether [a rule of evidence] precludes the admission of [certain] evidence . . . is not dispositive as to whether such information is

2

reasonably the subject of discovery."); *Adams v. Dolgencorp, LLC*, No. CIV.A. 11-784-FJP, 2012 WL 2064556, at *2 (M.D. La. June 7, 2012) (denying motion to quash third party subpoena based on collateral source doctrine agreement because "the scope of discovery is broad [and] the information may be relevant to a claim or defense in this matter, or lead to relevant information").  Alabama may not use blanket assertions of the collateral source rule to preclude discovery into possibly relevant and discoverable areas.

Finally, Fifth Circuit courts have demanded actual evidence before ruling whether the collateral source rule applies. *See Phillips,* 953 F.2d at 933 ("[Evidence] should have been presented to the district judge before he ruled on whether the benefits fell within the collateral source rule"); *Fortenberry v. Atwood Oceanics*, No. CIV. A. 00-528, 2001 WL 121902, at *1 (E.D. La. Feb. 9, 2001) (deferring ruling because "[n]either party has presented sufficient evidence for the Court to determine whether payments were derived from a collateral source."). By seeking to prematurely deny discovery on this topic, Alabama's proposal would preclude gathering of information that will allow for a reasoned decision as to whether the rule applies.

## II.    Discovery re disbursement of BP's grants and contributions to Alabama

BP has made voluntary payments of tens of millions of dollars to Alabama, and governmental bodies located in it, as part of its response to the *Deepwater Horizon* incident and oil spill.  While many of these voluntary payments were transferred to Alabama without a written agreement limiting how the payments could be used to offset OPA damages in the future, some did include such language.  To develop fully their defense against Alabama's OPA economic loss claim, Defendants seek discovery from Alabama regarding how and where it has disbursed the monies provided for ***all*** of those voluntary payments from BP.

Such discovery is highly relevant to Alabama's economic claim and the defense to it.  If the monies associated with those voluntary payments were used to mitigate the damages Alabama now claims to have suffered, Defendants are entitled to know how and whether that money was spent.  And if those monies could have been spent so as to offset Alabama's economic losses associated with the spill, but were not, this could be relevant to the economic damages to which Alabama is entitled.  For example, if monies that Alabama received could have been used for the purpose of covering recovery and response costs but were diverted to other state initiatives instead, Alabama arguably is foreclosed from seeking recovery of those response costs from Defendants now.  At a minimum, Defendants ought to be able to explore whether those monies were used to cover response costs or in support of the Alabama economy.

Alabama does not dispute that Defendants are entitled to discovery into the disbursement of monies paid to it as a general proposition.  Alabama, however, does contend that where agreements associated with such voluntary payments limited the extent to which monies could be used as an offset to OPA economic claim damages, Defendants should be precluded from pursuing discovery into how those monies were disbursed.   This is incorrect.

First, Defendants should be entitled to obtain discovery into how Alabama disbursed the monies it received because if those funds were not properly used, it may null the applicability of any provision that limited their ability to be used as an offset.  Also, to the extent these agreements provide that Alabama will not seek compensation under OPA for the same costs paid through these payments, discovery into how Alabama used these monies is relevant to its request for reimbursement associated with response and recovery costs.  Without the opportunity to obtain discovery as to how these monies were spent, the Court and the Defendants would be left in the dark as to whether such monies are relevant to Alabama's damages claim.

4

Second, even if still valid, the written provisions associated with some of the payments only address whether the payments can be used as an offset to Alabama's OPA claim in determining any damages due; it is undisputed that they they do not preclude ***discovery*** into how those payments were distributed.  To the extent that Alabama is contending that the Defendants are precluded from using these payments to limit Alabama's damages in contradiction of their associated agreements, this is an issue to be raised on summary judgment or at trial, not as a mechanism to shield discovery.

Third, even if the agreements associated with some of the payments restrict the ability for BP to rely on monies paid to Alabama as an offset to the economic claim, they do not extend to the other defendants.  HESI, Transocean, Anadarko and MOEX are not signatories to any of these agreements and not bound to their obligations to support an offset for damages in this case. In sum, without the opportunity for discovery to know how these monies were spent on recovery, Defendants ability to develop a defense that these payments impacted Alabama's economic loss will be impermissibly hindered.

### III.        Temporal scope for communications of Alabama custodians.

While the parties negotiated extensively regarding the temporal scope for the search terms and Rule 30(b)(6) topics, and were able to resolve much of their dispute, the parties are at an impasse on one remaining issue:  the temporal scope with respect to communications that will be searched of witness custodial files.  Defendants have proposed that Alabama's search for communications in the custodial files responsive to topics 6, 13, 15, 17, and 19 should commence on January 1, 2005.  Alabama, however, has proposed that its search should commence on the date of the *Deepwater Horizon* incident, April 20, 2010.

In evaluating Alabama's economic loss attributable to the oil spill, one relevant issue is the evaluation of other events that also impacted the Alabama economy, such as the national recession.  Communications prior to the incident, including those that date back to 2005, discussing the state of the Alabama economy or those events that impact it are highly relevant to understanding what impact events, other than the spill itself, contributed to Alabama's economic loss.  Unquestionably, the status of Alabama's economy before the incident, and Alabama's own internal forecasts and perceptions both before the spill and after it as reflected in internal communications, may be relevant to understanding the extent of Alabama's losses due to the spill.  Similarly, to the extent that Alabama's pre-spill communications discuss economic data, reports and analyses, such communications may be relevant to understanding the reliability of such economic material and how such material should be used to interpret the strength of Alabama's economy.

Additionally, Alabama's pre-spill communications may shed light on the methodologies that Alabama has used in the past to analyze or predict the effect of events on the State's economy, tourism industry, or property values, as well as the accuracy of any such methodologies.  Communications regarding such economic data and analyses are also relevant because they may raise concerns over the accuracy or applicability of analytical methods that Alabama has used to predict the economic impact of an event or highlight issues with the accuracy of raw data.

In sum, Alabama's pre-spill communications dating back to 2005 are relevant and discoverable because they will help evaluate the extent of Alabama's economic loss due to the spill by painting a more complete understanding of the state of Alabama's economy before the spill and the impact of other major economic events, such as the national recession, before the

spill occurred. Additionally, pre-spill communications are likely to be relevant to better understand the accuracy of the Alabama economic data and the methodologies that they used before the incident to evaluate the Alabama economy.

IV.      **Discovery regarding Alabama counties and municipalities.**

      A.      **Topic 12: Economic impact on Alabama counties and municipalities.**

Alabama counties and municipalities collect taxes and remit those tax revenues to the state. Any impact on the economy of a county and municipality will impact the state's tax revenue, and thus discovery into the impact of the spill on counties or municipalities is unquestionably permissible. Here, the Defendants have requested that Alabama produce a witness knowledgeable of analyses, studies or projections regarding the economic impact of the *Deepwater Horizon* incident and oil spill on counties and municipalities. *See* App. A (Topic 12). If Alabama has analyzed or studied the impact of the *Deepwater Horizon* incident and oil spill at the county and municipality level, or possesses reports and evaluations that have, this will be relevant to the assessment of the extent of Alabama's economic loss.

Alabama, however, has refused to produce a witness on this Rule 30(b)(6) topic to the extent it covers the economic impact at the county and municipality level, contending that it has no control over such entities and would have difficulty producing a knowledgeable witness. To be clear, Defendants seek a witness with knowledge ***of what Alabama understands*** as to the impact of the spill on the counties and municipalities, and do not seek to impose an obligation on Alabama to obtain information that is not within its possession, custody or control. If Alabama does not have any knowledge regarding the impact on individual counties or municipalities, Alabama has no obligation to obtain such information from entities that it does not control.

Because Alabama's tax revenue is derived, in part, by taxes collected from such entities, it is reasonable to assume that Alabama may have knowledge of the economic impact on them.

### B.     Topic 16: County-level grant, contributions or donations.

As discussed above, a relevant inquiry for an evaluation of Alabama's economic loss is how the monies that BP provided to governmental entities were used in responding to the oil spill. In that regard, Defendants have requested that Alabama produce a witness to testify regarding its knowledge of grants, contributions and distributions at the state and county level, as well as how such payments have been disbursed. *See* App. A (Topic 16). Alabama, however, refuses to produce a witness to testify on this topic on the county-level information that Defendants seek, contending once more that it does not control the counties and that it would be challenging to produce a witness with knowledge regarding how the counties have disbursed the monies they have received. Defendants are not seeking to impose a burden on Alabama to collect information beyond what is within its possession, custody or control. If Alabama does not possess information as to how the counties disbursed the monies that they received, Alabama is under no obligation to obtain it. Nonetheless, if Alabama has received reports or information regarding how the counties have disbursed the monies they have been given, this information is relevant and Defendants are entitled to discovery into it.

### V.     <u>Alabama's Proposed Search Terms to Defendants Are Overbroad.</u>

Alabama provided Defendants with proposed search terms on July 16, 2014 ("July 16 terms") that included nine search strings, which BP analyzed and tested on the custodial files of six potential witnesses. Then, at close of business on Friday, July 18, two days after the search term exchange deadline, Alabama provided a set of thirteen "supplemental" search strings ("July 18 terms") to replace its July 16 terms. When BP attempted to repeat the test for the July 18

terms, many of the strings caused "run-time" errors because the terms were too broad for the data processing system to complete the searches. Even after modifying them to avoid time-out errors, the July 18 terms still yielded an extremely large volume of documents, representing the majority of the custodial files from the relevant date range for the custodians tested, including family members. When tested in isolation, some of the individual strings yielded over 100,000 documents, not including family members.

On July 23, Defendants informed Alabama that its July 18 terms were overbroad, bringing in an unduly high number of search hits. Defendants also informed Alabama that they would agree to six of the July 16 terms with certain modifications; six of the July 18 terms with modifications; and one of the July 18 terms without modifications. A few hours before briefing was due, and without explanation, Alabama provided its "final" set of search terms, rejecting Defendants' July 23 modifications. Based on a preliminary analysis, Alabama's final terms are only slight modifications from the problematic July 18 terms. Alabama's final proposals remain overbroad, and will produce a large universe of non-relevant documents.

The over breadth of Alabama's terms stem from: (1) poor construction—using the "OR" operator to string together lengthy term lists without including the necessary limiting words (*e.g.*, "AND"), and failing to use proximity connectors to tailor searches; and (2) use of generic terms that are not targeted to relevant issues. *See* App. C (examples of Alabama search strings showing these and other technical issues). Preliminary testing of Alabama's final terms has confirmed their over breadth, bringing in almost 50% of the custodial files from the relevant date range, including family members. Alabama's most overbroad terms yield the following approximate document counts when run across the custodial files of six custodians: Search 1: > 90,000; Search 2: > 85,000; Search 3 > 94,000; Search 6 > 110,000; Search 7: > 80,000; Search

9:  > 64,000; Search 12:  > 70,000; Search 13 > 87,000. These figures do not include family members and are preliminary, as BP is still processing data from these custodians.  BP expects the number of documents responsive to these search terms to increase.  BP also expects, based on experience in prior phases, that these searches will yield a very high percentage of irrelevant documents.

Because Alabama's July 23 proposal suffers the same overbroad issues, Defendants request the Court adopt their July 23 proposal, which accepts Alabama's Search 11 and attempts to narrow the remaining searches to a more reasonable scope.  *See* App. D, Column 3.  Using techniques used successfully in prior phases, Defendants modify Alabama's search terms by:

- including proximity terms to more narrowly tailor the searches;

- adding the DWH-specific string to Searches 12 and 13 (minus the term "BP");

- eliminating a limited number of generic terms not associated with relevant issues;

- eliminating identical terms found within multiple parts of a single string; and

- replacing "Mobile," which hits on emails with signature blocks containing references to "mobile" phones, with "Mobile Bay" and "Mobile County," and removing "BP."

Tests of Defendants' July 23 proposal yielded results that are more consistent with those seen in prior phases, although on the high side of what negotiated search terms have yielded before.

Based on the foregoing, Defendants respectfully request that the Court adopt Defendants' proposed positions with respect to these issues in dispute.

Date:  July 25, 2014                    Respectfully submitted,


                                        /s/ *Paul D. Collier*
                                        Don K. Haycraft (Bar #14361)
                                        R. Keith Jarrett (Bar #I6984)
                                        Liskow & Lewis
                                        701 Poydras Street, Suite 5000
                                        New Orleans, Louisiana 70139-5099
                                        Telephone: (504) 581-7979
                                        Facsimile: (504) 556-4108

                                        and

                                        Richard C. Godfrey, P.C.
                                        J. Andrew Langan, P.C.
                                        Paul D. Collier
                                        Kirkland & Ellis LLP
                                        300 North LaSalle Street
                                        Chicago, IL 60654
                                        Telephone: (312) 862-2000
                                        Facsimile: (312) 862-2200

                                        Robert C. "Mike" Brock
                                        F. Chad Morriss
                                        Maureen F. Browne
                                        Covington & Burling LLP
                                        1201 Pennsylvania Avenue, NW
                                        Washington, DC 20004-2401
                                        Telephone: (202) 662-5985

                                        Joel M. Gross
                                        Lawrence A. Schneider
                                        Arnold & Porter, LLP
                                        555 12th Street N.W.
                                        Washington, DC 20004
                                        Telephone: (202) 942-5705
                                        Facsimile: (202) 942-5999

                                        *Attorneys for BP p.l.c., BP Exploration &*
                                        *Production Inc., and BP America Production*
                                        *Company*

11

*/s/ Kerry J. Miller*
Brad D. Brian
Michael R. Doyen
Grant Davis-Denny
Daniel B. Levin
MUNGER TOLLES & OLSON, LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100
Fax: (213) 683-5180
Email: brad.brian@mto.com
michael.doyen@mto.com
grant.davis-denny@mto.com
daniel.levin@mto.com

Steven L. Roberts
Rachel Giesber Clingman
Sean Jordan
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, TX 77002
Tel: (713) 4710-6100
Fax: (713) 354-1301
Email: steven.roberts@sutherland.com
rachel.clingman@sutherland.com
sean.jordan@sutherland.com

Kerry J. Miller
FRILOT, LLC
1100 Poydras Street, Suite 3800
New Orleans, LA 70163
Tel: (504) 599-8194
Fax: (504) 599-8154
Email: kmiller@frilot.com

*Attorneys for Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH*

12

_/s/ Donald E. Godwin_
Donald E. Godwin
_Attorney-in-charge_
State Bar No. 08056500
Don.Godwin@GodwinLewis.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
Bruce.Bowman@GodwinLewis.com
Jenny L. Martinez
State Bar No. 24013109
Jenny.Martinez@GodwinLewis.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
Floyd.Hartley@GodwinLewis.com
Gavin E. Hill
State Bar No. 00796756
Gavin.Hill@GodwinLewis.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332
and
R. Alan York
State Bar No. 22167500
Alan.York@GodwinLewis.com
Jerry C. von Sternberg
State Bar No. 20618150
Jerry.VonSternberg@GodwinLewis.com
Misty Hataway-Coné
State Bar No. 24032277
Misty.Cone@GodwinLewis.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

_Attorneys for Defendant Halliburton Energy_
_Services, Inc._

13

*/s/ Ky E. Kirby*_____
Ky E. Kirby
ky.kirby@bingham.com
David M. Halverson
david.halverson@bingham.com
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

*Attorneys for Anadarko Petroleum Company
and Anadarko E&P Company LP*

Edward Flanders
edward.flanders@pillsburylaw.com
Stella Pulman
stella.pulman@pillsburylaw.com
1540 Broadway
New York, NY 10036
PILLSBURY WINTHROP SHAW PITTMAN
LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500

*Attorneys for MOEX USA Corporation, MOEX
Offshore 2007 LLC, and MOEX USA
Corporation*