# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | § | MDL No. 2179 |
| "*DEEPWATER HORIZON*" in the | § | |
| GULF OF MEXICO, | § | SECTION: J |
| on APRIL 20, 2010, | § | |
| | § | JUDGE BARBIER |
| Applies to: Nos. 10-2771, 10- | § | |
| 4536 and All Other Cases. | § | MAG. JUDGE SHUSHAN |

## HESI'S RESPONSE IN OPPOSITION TO ALABAMA'S MOTION TO DISMISS SET-OFF CLAIMS OR, IN THE ALTERNATIVE, MOTION TO STRIKE SET-OFF AFFIRMATIVE DEFENSES

# TABLE OF CONTENTS

I. BACKGROUND ...................................................................................................1

II. SUMMARY OF THE ARGUMENT ....................................................................2

III. ARGUMENT ......................................................................................................2

    **A.**    Alabama's Arguments Do Not Apply to HESI or Any Mitigation Defenses ..........2

    **B.**    HESI's Affirmative Defense Is Not A Counterclaim ................................................3

    **C.**    Even If HESI's Second Affirmative Defense Is Construed As A Counterclaim, It Is Compulsory And Alabama Has Waived Immunity .............................................5

    **D.**    Any Ambiguity in HESI's Pleading Can be Cured by Amendment.....................10

IV. CONCLUSION.................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Meyers ex rel. Benzing v. Tex.*,
  410 F.3d 236 (5th Cir. 2005) ...................................................................7

*Louisiana ex rel. Caldwell v. Allstate Ins. Co*.,
  536 F.3d 418 (5th Cir. 2008) ...................................................................6

*Clark v. Barnard*,
  108 U.S. 436 (1883)...................................................................................7

*Davis v. Odeco*,
  18 F.3d 1237 (5th Cir. 1994) ...................................................................5

*Distribution Services, Ltd. v. Eddie Parker Interests, Inc*.,
  897 F.2d 811 (5th Cir. 1990) ...............................................................4, 5

*F.D.I.C. v. Louisiana Nat'l Bank*,
  484 F.Supp. 111 (M.D. La. 1980) *rev'd on other grounds*, 653 F.2d 927 (5th
  Cir. 1981) ...................................................................................................5

*Frederick v. United States*,
  386 F.2d 481 (5th Cir. 1967) ...................................................................7

*Lapides v. Bd. Of Regents of the Univ. Sys. Of Georgia.*
  535 U.S. 613 (2002)................................................................................5, 6

*National Union Fire Ins. Co. of Pittsburgh vs. City Savings, F.S.B.*
  28 F.3d 376 (3rd Cir. 1994) .................................................................3, 4

*Tank Insulation Int'l v. Insultherm, Inc*.,
  104 F.3d 83 (5th Cir. 1997) ......................................................7, 8, 9, 10

*Texas v. Caremark*
  584 F.3d 655 (5th Cir. 2009) ....................................................6, 7, 8, 10

**Statutes**

28 U.S.C. § 1653.......................................................................................10

Carriage of Goods By Sea Act...................................................................4

**Other Authorities**

Fed. R. Civ. P. 8.............................................................................................................3, 4, 5, 9

Fed. R. Civ. P. 9...........................................................................................................................5

Fed. R. Civ. P. 13.......................................................................................................3, 4, 5, 7, 9

Fed. R. Civ. P. 15......................................................................................................................10

Fed. R. Civ. P. 41...................................................................................................................4, 5

Fed. R. Civ. P. 42.......................................................................................................................4

Fed. R. Civ. P. 54.......................................................................................................................4

Halliburton Energy Services, Inc. ("HESI") files this Response in Opposition to the State of Alabama's Motion to Dismiss Set-Off Claims or, in the Alternative, Motion to Strike Set-Off Affirmative Defenses (Rec. Docs. 13513, 13513-1) (hereinafter, the "Motion").

## I.
## BACKGROUND

On August 12, 2010, Alabama voluntarily invoked the jurisdiction of the federal courts by filing complaints against the BP parties (Cause No. 2:10-cv-04182), HESI (Cause No. 2:10-cv-04183), and other defendants in the United States District Court for the Middle District of Alabama.   On April 7, 2011, Alabama filed its first amended complaint in this MDL, consolidating all claims against all defendants into one complaint (Rec. Doc. 1887).  On May 9, 2013, Alabama filed another complaint against HESI in the Middle District of Alabama (Cause No. 2:13-cv-02647), which was transferred into the MDL on May 6, 2013 (Rec. Doc. 9822).

On December 14, 2011, HESI filed its Answer to Alabama's lawsuits, including various affirmative defenses (Rec. Doc. 4910 at 43-46).  HESI's Second Affirmative Defense provides:

### Second Affirmative Defense

> HESI asserts the defenses of set off, recoupment, payment and release, and further asserts that it is entitled to a credit for any and all monies paid by third-party defendants, cross-defendants, co-defendants, a collateral source, and/or that the State of Alabama receives from any source as compensation for its alleged losses.

On October 17, 2014, nearly three years after HESI filed its Answer, Alabama filed the Motion, seeking to dismiss or strike HESI's Second Affirmative Defense based upon sovereign immunity.

## II.
## SUMMARY OF THE ARGUMENT

HESI's Second Affirmative Defense seeks to ensure that Alabama receives only one satisfaction of its damages, and that any compensation it has received is accounted for and credited against any judgment for those same damages.  HESI's Second Affirmative Defense is not a claim for breach of contract, nor does it seek specific performance or the recovery of money damages in excess of the amount of damages sought by Alabama.

As an initial matter, the Motion should be denied to the extent that Alabama's arguments are not applicable to HESI, who is not a party to any contract with Alabama.  The Motion should also be denied because (1) HESI's Second Affirmative Defense is not a counterclaim; (2) even if HESI's Second Affirmative Defense can be characterized as a counter-claim, it is compulsory and not permissive; (3) Alabama waived sovereign immunity by filing suit; and (4) any ambiguity in HESI's Answer or Second Affirmative Defense can be cured by amendment.

## III.
## ARGUMENT

### A.    Alabama's Arguments Do Not Apply to HESI or Any Mitigation Defenses

The vast majority of the Motion is premised on the argument that "breach of contract" is a permissive counterclaim that must be dismissed in light of Alabama's sovereign immunity. HESI is not a party to any grant between Alabama and BP, and HESI does not assert a claim for breach of contract.  Accordingly, the Motion should be denied to the extent it seeks to dismiss a nonexistent affirmative claim by HESI for breach of contract.

Further, Alabama expressly states that it does not seek to preclude discovery of information related to "mitigation" of its damages and that HESI may use such information at trial to "attack the foundation of Alabama's net losses."  Alabama agrees that the trier of fact may

consider BP's payments when determining Alabama's tax loss.  *Id.*  HESI's Second Affirmative

Defense is based upon the concept of mitigation.  Clearly, any payments from BP to Alabama for

damages resulting from the oil spill generally served to mitigate Alabama's damages.  To the

extent that BP compensated Alabama for specific losses, this compensation served to mitigate

such losses, and HESI may properly seek to reduce any judgment by that amount.  Although

Alabama appears to limit the use of "mitigation" information at trial to lost tax revenue, there is

no rational reason the mitigation defense cannot be used to attack the foundation of Alabama's

other alleged damages.  Because HESI's Second Affirmative Defense is grounded in the concept

of mitigation, and Alabama acknowledges that experts and the trier of fact may consider

mitigation evidence, HESI's Second Affirmative Defense should not be dismissed or stricken.

### B.      HESI's Affirmative Defense Is <u>Not</u> A Counterclaim

Alabama improperly characterizes HESI's Second Affirmative Defense as a permissive

counterclaim (for which Alabama did not waive immunity).  Alabama offers no analysis in

support of this characterization; rather, it simply refers to HESI's Second Affirmative Defense as

a "counterclaim," as if it has established that fact.  (Rec. Doc. 13513-1 at 4-17).  Further,

Alabama cites no authority for the counterintuitive proposition that a sovereign state can sue a

party for money damages, yet raise a shield of sovereign immunity as to that party's Rule 8

affirmative defenses.

HESI's Second Affirmative Defense is just that—an affirmative defense properly pleaded

under Rule 8(c).  Pursuant to Rule 8(c), an affirmative defense is not a "claim" but rather a

response to an action or claim brought by another party.  *National Union Fire Ins. Co. of

Pittsburgh vs. City Savings*, *F.S.B.*, 28 F.3d 376, 393 (3d Cir. 1994) (analyzing distinction

between a Rule 8(c) affirmative defense versus a Rule 13 counterclaim).  In contrast, a

counterclaim is actually a claim, or a cause of action, brought by a defendant against a plaintiff. *Id*.  The distinction is not academic.

For example, in *City Savings*, the court recognized that a statutory bar to "claims" does not apply to defenses or affirmative defenses.  *Id*. at 392-95.  Finding that rescission was an affirmative defense and not a counterclaim, the court reversed the district court's holding that the mere *defense* of rescission was barred by the statute.  *Id*. at 395.

The Federal Rules recognize the distinction between an affirmative defense and a counterclaim.  Pursuant to Rule 41(a)(2), a defendant's "counterclaim" can survive a plaintiff's voluntary dismissal of his lawsuit; in contrast, a defendant asserting mere defenses has no surviving claim if plaintiff dismisses the suit.  Similarly, a counterclaim, unlike a mere affirmative defense, can support a separate judgment.  *See* Fed. R. Civ. P. 54(b).  And, Rule 42(b) allows a court to order severance and separate trials for a "counterclaim," but not for an affirmative defense.  Rule 8(c)(2) specifically recognizes a distinction between a Rule 8 "defense" and a Rule 13 "counterclaim," by authorizing a court to correct pleadings where "a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense."

Maritime law also recognizes the distinction.  In *Distribution Services, Ltd. v. Eddie Parker Interests, Inc*., 897 F.2d 811, 812-13 (5th Cir. 1990), plaintiff sued defendant for breach of a contract for the carriage of goods by sea from China to Texas.  *Id*. at 812.  Defendant asserted the defense of recoupment, based on damages to the shipped goods.  *Id*.  The district court held that the recoupment defense was actually an affirmative <u>claim</u> for relief which was barred by the applicable one year statute of limitations under the Carriage of Goods By Sea Act. *Id*.  The Fifth Circuit reversed, and held that:

> Recoupment is a defense that goes to the foundation of a plaintiff's claim by deducting from plaintiff's recovery all just allowances or

> demands accruing to the defendant with respect to the same contract or transaction. As a purely defensive procedure, it is available to defendant so long as plaintiff's claim survives—even though an affirmative action by defendant is barred by limitations.

*Id*. at 812.

In another maritime case, the Fifth Circuit held that a claim of "set-off" is a defense, which may be rejected by the district court if defendant fails to timely raise it. *Davis v. Odeco*, 18 F.3d 1237, 1245 (5th Cir. 1994). In *Davis*, the court implicitly affirmed the district court's recognition of off-set as a defense, noting that the defendant "did not plead off-set, mistake, estoppel, payment, *or any other defense* of an equitable nature." *Id*. at n. 41 (emphasis added). *See also* Fed. R. Civ. P. (8)(c) (expressly referencing affirmative defenses of "estoppel" and "payment."); Fed. R. Civ. P. 9(b) (defense of mistake to be pleaded with particularity); *F.D.I.C. v. Louisiana Nat'l Bank*, 484 F.Supp. 111, 113 (M.D. La. 1980) *rev'd on other grounds*, 653 F.2d 927 (5th Cir. 1981) (set-off characterized as affirmative defense).

HESI does not assert an independent, affirmative "action," "claim," or "counterclaim" for money damages against Alabama. If Alabama dismisses its claims against HESI, HESI's Second Affirmative Defense will not survive such dismissal. Accordingly, HESI's Second Affirmative Defense is a proper Rule 8 affirmative defense, not a Rule 13 counterclaim, and the Motion should be denied.

### C. Even If HESI's Second Affirmative Defense Is Construed As A Counterclaim, It Is Compulsory And Alabama Has Waived Immunity

Even if HESI's Second Affirmative defense is characterized as a counterclaim, it is clearly compulsory and, as a result, Alabama has waived sovereign immunity. It is well settled that a state can waive sovereign immunity by voluntary litigation conduct, such as filing a claim in federal court. *Lapides v. Bd. of Regents of the Univ. Sys. of Georgia*, 535 U.S. 613, 618-19

(2002) (State of Georgia waived sovereign immunity by removing action to federal court); *Louisiana ex rel. Caldwell v. Allstate Ins. Co*., 536 F.3d 418, 431-32 (5th Cir. 2008) ("[W]here a state voluntarily becomes a party to a cause, and submits its rights for judicial determination, it . . . cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment").  When a state initiates a lawsuit, it waives its sovereign immunity "to the extent required for the lawsuit's complete determination."  *Texas v. Caremark, Inc*., 584 F.3d 655, 659 (5th Cir. 2009).  More specifically, by invoking the judicial process, the state waives sovereign immunity for any compulsory counterclaims – that is, those claims arising out of the same transaction or occurrence which is the subject matter of the state's suit.  *Id*.

Alabama does not (and cannot) deny that it initiated this litigation and has fully participated in the MDL proceedings.  A "complete determination" of Alabama's damage claims necessarily involves a determination of all defenses that relate directly to such claims and Alabama has waived sovereign immunity for all such defenses.

Alabama cites no authority in which a sovereign entity successfully obtained a dismissal on sovereign immunity grounds.  Notably, the case it relies upon most heavily, *Caremark*, supports HESI's position.  In *Caremark*, various states sued Caremark, a pharmacy benefit manager, for fraudulently withholding payments due to the states under the Medicaid program. *Id*.at 657.  In its answer, Caremark's "Seventh Affirmative Defense" sought a "set-off and/or recoupment" of all amounts it mistakenly overpaid the states for Medicare reimbursement.  *Id*. The Fifth Circuit declined to reach the merits of the immunity claim, but instructed the district court to do so, as opposed to deferring resolution of the issue for a later time.  *Id*. at 658, 660.

The court noted that if the district court determines on remand that Caremark's claims are compulsory counterclaims for recoupment, then the states waived sovereign immunity for such

claims. *Id*. at 659 (citing *Clark v. Barnard*, 108 U.S. 436, 448 (1883) and *Meyers ex rel. Benzing v. Tex*., 410 F.3d 236, 241 (5th Cir. 2005)).  Compulsory counterclaims are claims arising from the same transaction or occurrence which is the subject matter of the states' suit.  *Id*. (quoting *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967); *see also* Fed. R. Civ. P. 13(a)(1)(A) (compulsory counterclaim is counterclaim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim").  Conversely, claims that do not arise from the same transaction or occurrence are permissive counterclaims, for which sovereign immunity is not waived.  *Id*.; *see also* Fed. R. Civ. P. 13(b).

On remand, the district court held that the states *waived* sovereign immunity with respect to Caremark's recoupment defense because that defense "arose from the same transaction or occurrence – that is, the determination of the amount owed by Caremark to Plaintiff States." *See* Ex. A, Order Denying the States' Motion To Dismiss On Grounds of Eleventh Amendment Sovereign Immunity at 21.

Alabama concedes that, per *Caremark*, it has waived sovereign immunity as to any compulsory counterclaims.  Rec. Doc. 13513-1 at 3 ("The [*Caremark*] Court held that '[t]he state waives it sovereign immunity only as to compulsory counterclaims.'").  Caremark's Seventh Affirmative Defense of recoupment is analogous to HESI's Second Affirmative Defense, which seeks a determination of amounts paid to Alabama for losses that are the subject of its suit, and a reduction of such amounts on a <u>net</u> basis from any judgment.

The district court utilized the Fifth Circuit's four factor test espoused in *Tank Insulation Int'l v. Insultherm, Inc*., 104 F.3d 83, 85-86 (5th Cir. 1997), to determine whether a claim arises from the same transaction or occurrence.  *Id*. at 14.  The *Tank Insulation* test asks four questions,

and if *any* of these questions results in an affirmative answer, then the counterclaim is compulsory:

(1)    whether the issues of fact and law raised by the claim and counterclaim are the same;

(2)    whether *res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule;

(3)    whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and

(4)    whether there is any logical relationship between the claim and the counterclaims.

*Tank Insulation*, 104 F.3d at 85-86 (emphasis in original).

As to the fourth question, the district court found a logical relationship between the states' claims for damages and Caremark's defense of recoupment of overpayments to the states for Medicaid reimbursements:.

> Here, the same operative facts serve as the basis of the claims and counterclaims because the counterclaims are explicitly limited to those claims put at issue by the claims. Caremark argues that at the general level of damages' computations, the States seek money for falsely denied or underpaid claims and Caremark in turn seeks a reduction of any such amount awarded based upon any amount by which the States were overpaid.

*See* Ex. A at 15.

Alabama acknowledges the Fifth Circuit's logical relationship test, but limits its claim comparison to "a potential claim of breach of contract." Alabama argues that none of the facts required to establish a breach of contract are necessary to prove Alabama's "tort based damages claims." Rec. Doc. 13513-1 at 11. Assuming that argument is valid, which HESI does not, it does not apply to HESI. *See supra* Section II (A). Like the claims in *Caremark*, there is a logical relationship between Alabama's claims and HESI's Second Affirmative Defense of recoupment. Alabama received certain payments as a consequence of, or in connection with, the

oil spill.  HESI's Second Affirmative defense seeks to prevent a double recovery for alleged losses by reducing any net recovery by amounts for which Alabama has already received compensation.  Thus, at the "general level of damages," there is plainly a logical relationship between Alabama's damages claims and the amounts for which it has been compensated. Because the answer to the fourth *Tank Insulation* question is "yes," HESI's Second Affirmative Defense, if it can even be characterized as a "counterclaim," is compulsory.

The answers to the other three *Tank Insulation* questions are also "yes."  As to the first and third questions, the issues of fact and law associated with Alabama's damages claims and HESI's recoupment defense are substantially the same.  Alabama must prove that it suffered compensable damages, which properties or interests were affected, and the quantum of such damages.  HESI's Second Affirmative Defense seeks to identify all payments that reduced (or were intended to reduce) these damages in whole or in part.  As to the second *Tank Insulation* question, absent the compulsory counterclaim rule, Alabama would undoubtedly contend that HESI's failure to raise the issue of offset/credit/recoupment operates as a bar to any subsequent suit by HESI for the reduction of any judgment rendered in this phase.

The issues raised by HESI's Second Affirmative Defense are so intertwined with Alabama's claims that they must be resolved in this proceeding.  This phase of the litigation is limited to Alabama's damages, any claim disputing such damages arises from the same transaction or occurrence pursuant to *Tank Insulation*.  Accordingly, even if HESI's Second Affirmative Defense is considered a Rule 13 counterclaim (as opposed to Rule 8 affirmative defense), it is compulsory.

### D.     Any Ambiguity in HESI's Pleading Can be Cured by Amendment

If there is any perceived ambiguity concerning HESI's Answer, its Second Affirmative Defense, or the effect thereof on Alabama's sovereign immunity, the proper solution is to grant HESI leave to amend its Answer, as opposed to dismissing or striking the defense.  *See* Fed. R. Civ. P. 15(a) (amendments to pleadings); 28 U.S.C. § 1653 (amendment of pleadings to correct defective allegations of jurisdiction).  Indeed, this was the procedure followed in *Caremark* .  *See* Ex. A at 3.

HESI's Second Affirmative Defense unambiguously seeks a dollar-for-dollar or other reduction against any judgment against it for sums Alabama received from other sources that in fact reduced its damages (or were intended to reduce its damages, even if Alabama in fact applied them for other purposes).  However, to the extent the Court finds that HESI's Second Affirmative Defense is ambiguous, or that it can be construed as seeking specific performance or an amount greater than the relief sought by Alabama, HESI seeks leave to amend its Answer to clear up any ambiguity.

## IV.
## <u>CONCLUSION</u>

For the reasons set forth herein, the State of Alabama's Motion to Dismiss Set-Off Claims or, in the alternative, Motion to Strike Set-Off Affirmative Defenses should be denied in all respects.  In the alternative, HESI should be granted leave to amend its Answer to cure any ambiguity about the scope or intention of its defenses and their effect on the State of Alabama's claim of sovereign immunity.

Respectfully Submitted,

**GODWIN LEWIS PC**

**By:** /s/ Donald E. Godwin
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
Don.Godwin@GodwinLewis.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
Bruce.Bowman@GodwinLewis.com
Jenny L. Martinez
State Bar No. 24013109
Jenny.Martinez@GodwinLewis.com
Gavin E. Hill
State Bar No. 00796756
Gavin.Hill@GodwinLewis.com

1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

and

R. Alan York
State Bar No. 22167500
Alan.York@GodwinLewis.com
Misty Hataway-Coné
State Bar No. 24032277
Misty.Cone@GodwinLewis.com

1331 Lamar Street, Suite 1665
Houston, Texas 77010
Telephone: (713) 595-8300
Facsimile: (713) 425-7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing HESI's Response in Opposition to Alabama's Motion to Dismiss Set-Off Claims or, in the alternative, Motion to Strike Set-Off Affirmative Defenses has been served on All Counsel by electronically uploading the same to File & ServeXpress in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 4th day of November, 2014.

/s/ Donald E. Godwin
Donald E. Godwin