## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| Nos. 10-2179; 10-4536 | * | |
| | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF
### MOTION TO ENFORCE COURT'S ORDER EXCLUDING
### CULPABILITY EVIDENCE AGAINST ANADARKO

BINGHAM McCUTCHEN LLP

James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
Thomas R. Lotterman
thomas.lotterman@bingham.com
David B. Salmons
david.salmons@bingham.com
Bryan M. Killian
bryan.killian@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, N.W.
Washington, D.C. 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street
Suite 1300
New Orleans, LA 70112
Telephone (504) 592-0691
Facsimile (504) 592-0696

# TABLE OF CONTENTS

I.      **INTRODUCTION** ............................................................................................... 1

II.    **BACKGROUND** ................................................................................................. 2

      A.    The Court's Rulings on Anadarko's Lack of Culpability. ..................... 2

      B.    Walkup's Opinions Regarding CWA Penalty Assessment and Anadarko's Conduct. ...................................................................................... 4

      C.    Anadarko's Objections to the Government's Trial Exhibit List. ........... 5

III.    **ARGUMENT** ....................................................................................................... 6

      A.    Anadarko's Objections to the Government's Exhibits should be Sustained. ........ 6

      B.    Walkup's Opinions about Anadarko's Conduct are Precluded. ........... 6

      C.    Walkup's Use of Excluded "Culpability" Evidence is not Admissible as Rebuttal Opinion. ................................................................................ 8

            1.    Anadarko's experts' opinions do not rely upon the excluded "culpability" evidence. ............................................................. 8

            2.    Walkup's opinions about Anadarko's conduct are not rebuttal. .............. 10

      D.    Walkup's Opinions are also Contrary to this Court's Holding that Anadarko Breached No Duty to Intercede. ........................................... 11

      E.    Even if not Already Excluded, Walkup's Opinions about Anadarko's Conduct are Inadmissible Hearsay ....................................................... 12

IV.    **CONCLUSION** ................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*C.f., Dupre v. Chevron U.S.A., Inc.*,
    930 F. Supp. 248 (E.D. La. 1996) (Vance, J.), *aff'd per curiam*, 109 F.3d 230
    (5th Cir. 1997)..................................................................................................................12

*Guy v. Crown Equipment Corp.*,
    394 F.3d 320 (5th Cir. 2004) ............................................................................................12

*Imperial Trading Co., Inc. v. Travelers Property Cas. Co. of Imperial Trading
    Co., Inc. v. Travelers Property Cas. Co. of America*,
    654 F. Supp. 2d 518 (E.D. La. 2009) (Vance, J.) ...............................................................7

*Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007)...............................................................................13

*Orthoflex, Inc. v. ThermoTek, Inc.*,
    986 F. Supp. 2d 776 (N.D. Tex. 2013) ................................................................................7

*PACT XPP Technologies, AG v. Xilinx, Inc.*,
    No. 2:07–CV–563–RSP, 2012 WL 1205855 (E.D. Tex., April 11, 2012) ...........................7

*Parliament Ins. Co. v. Hanson*,
    676 F.2d 1069 (5th Cir. 1982) .............................................................................................7

*Pierce v. Ramsey Winch Co.*,
    753 F.2d 416 (5th Cir. 1985) .............................................................................................10

*Polythane Systems, Inc. v. Marina Ventures Intern., Ltd.*,
    993 F.2d 1201 (5th Cir. 1993) .............................................................................................6

*U.S. v. Hall*,
    653 F.2d 1002 (5th Cir. 1981) .......................................................................................8, 10

*U.S. v. Talley*,
    194 F.3d 758 (6th Cir. 1999) .............................................................................................11

*United States v. Scrima*,
    819 F.2d 996 (11th Cir. 1987) ...........................................................................................13

*Walker v. Yellow Freight Systems, Inc.*,
    No. Civ. A. 98–3565, 1999 WL 955364 (E.D. La., Oct. 19, 1999)....................................11

*Wallace v. Oceaneering Int'l*,
   727 F.2d 427 (5th Cir. 1984) ................................................................12

*Weiss v. Allstate Ins. Co.*,
   512 F. Supp. 2d 463 (E.D. La. 2007) (Vance, J.) ...................................7

**OTHER AUTHORITIES**

Fed. R. Evid. 802 ...........................................................................................13

Fed. R. Evid. 703 ...........................................................................................13

Wright & Miller, Federal Practice and Procedure, 27 Fed. Prac. & Proc. Evid. §
   6025 (2d ed.) ..........................................................................................13

## I.       INTRODUCTION

Anadarko respectfully moves the Court to enforce its earlier order excluding all evidence and arguments relating to Anadarko's alleged "culpability" for the *Deepwater Horizon* oil spill. Minute Order, Rec. Doc. 12592 (the "Culpability Order").  Consistent with that order, the Court should exclude portions of the opinions of Gardner Walkup, one of the Government's proposed experts, who plans to testify about "Anadarko's conduct as a non-operator in connection with Macondo."[1]  Exhibit B at 18.  Those opinions, which seek to revisit what Anadarko knew or should have known, and what Anadarko might have done but did not do before the discharge, are the same in substance as the Government's rejected "culpability" evidence and arguments.

The Court has excluded all evidence and arguments related to Anadarko's purported "culpability" because, as a matter of law, Anadarko was not negligent, owed no duty to intervene in BP's operations, and bears fault for the *Deepwater Horizon* spill.  *See* Culpability Order at 2. The Court has excluded, among other things, all documents and deposition testimony that the Government sought to introduce relating to Anadarko's knowledge of, access to information about, and purported ability to influence BP's operations at Macondo.  The Court made clear that its exclusion of all this "culpability" evidence is for all purposes.[2]

Walkup's opinions about Anadarko's conduct violate the Culpability Order.   The Government may not circumvent the Order by dressing up "culpability" evidence and arguments as expert opinion; nor may the government launder the excluded evidence by handing it off to an expert to cite in his reports.   Accordingly, the Court should strike the offending portions of

---

[1]       Walkup's opinions are presented in affirmative, rebuttal and reply expert reports dated August 15, 2014, September 12, 2014, and September 26, 2014, respectively (Exhibits A, B and C).

[2]       Hr'g. Tr., March, 21, 2014, at 43:3-14; 44:19-45:2 (Exhibit D).

Walkup's expert reports, and preclude him from opining at trial about Anadarko's "conduct as a non-operator in connection with Macondo."  Exhibit B at 2.

## II.    BACKGROUND

### A.    The Court's Rulings on Anadarko's Lack of Culpability.

On multiple occasions, this Court has held that evidence of Anadarko's knowledge about the Macondo Well and Anadarko's theoretical ability to intercede before the spill is irrelevant to this case.  Because "BP was solely responsible for the drilling operations[,] . . . [a]ny access to information that Anadarko . . . may have had did not give rise to a duty to intercede in an independent contractor's operations . . . ."  B1 Order, Rec. Doc. 3830, at 28; *see also* Rec. Doc. 4159 at 6 (dismissing B3 Plaintiffs' claims against Anadarko); Rec. Doc. 4578 at 25–26 (dismissing Louisiana's and Alabama's claims against Anadarko); Rec. Doc. 4845 at 6, 11–12 (dismissing Local Government Entities claims against Anadarko).  That holding flows from settled precedents, like *Ainsworth v. Shell Offshore, Inc.*, which hold that non-operators in an oil venture have no responsibility for the acts of entities with operational control of drilling activities—even when the non-operators have access to information about the operations.  *See* 829 F.2d 548, 550-51 (5th Cir. 1987).  Accordingly, the Court has repeatedly held that Anadarko—a non-operating investor in the Macondo Well—was not negligent, bears no degree of fault, and was not "culpable" for the *Deepwater Horizon* oil spill.

In Phase One, the Court excluded all evidence of Anadarko's knowledge of, or access to information about, BP's operations on the Macondo prospect from the trial on causation and allocation of fault, holding that "[e]vidence of Anadarko's knowledge of or access to information about Macondo Well design and/or operations is irrelevant to any issue in the Phase I trial."  Rec. Doc. 5836.  The Court similarly excluded all such evidence from Phase Two.  Minute

Order, Rec. Doc. 11367 at 2 (granting Anadarko's Motion *in Limine* to exclude evidence of Anadarko's "culpability" from Phase Two).

In this Penalty Phase, Anadarko again moved to preclude the introduction of evidence against it under the CWA's "degree of culpability" penalty factor.  Rec. Doc. 12343.  The Government opposed the motion, Rec. Doc. 12462, and after oral argument the Court agreed with Anadarko and excluded evidence of Anadarko's culpability from the Penalty Phase.  *See* Exhibit D at 43-45; Culpability Order at 2.  The Culpability Order was not entered in the abstract.  In its opposition the Government presented specific excerpts of deposition transcripts, e-mails, and other documents from the discovery record that it contended would show Anadarko's "culpability" at trial.  By granting Anadarko's motion, the Court excluded all of the specific documents, deposition excerpts, and other discovery materials that the Government sought to introduce to prove Anadarko's "culpability."  The Court also made clear that its ruling applied to the entire case, and precluded the Government from introducing the same "culpability" evidence for any other purpose, or under any other CWA penalty factor.  Ex. D at 44-45 (Government Counsel: "Is your ruling that the types of facts discussed in the motion may not be entered as to any factor or only as to the culpability factor?"  The Court: "[T]o the extent I've said they're excluded, they're excluded from the trial.").

After the most recent ruling, the Government submitted a proffer of the culpability evidence and arguments it would have introduced at trial had the Court not granted Anadarko's motion (the "Proffer").  Rec. Doc. 12965.[3]  The Proffer identified eleven deposition bundles and associated exhibits, various Phase One discovery responses, certain contracts, and a number of other documents not marked either as deposition or trial exhibits.  *Id*. at 6-7.  The evidence listed

---

[3]     Anadarko responded to the Government's proffer.  Rec. Doc. 13100.

in the Proffer now has resurfaced in both Walkup's expert reports and the Government's Penalty

Phase trial exhibit list (*see* Exhibit E).

**B.     Walkup's Opinions Regarding CWA Penalty Assessment and Anadarko's Conduct.**

Walkup is a consultant providing services in the areas of "mega-project developments

(including deepwater developments) and unconventional field transaction and development

support."  Exhibit A at 7.  The Government retained him to provide opinions on the "current

industry custom and practice in general, and industry best practice specifically, of non-operating

parties in deepwater activities."  *Id.* at 3.  He will render his opinions for the purpose of assessing

"the impact of any penalty in this case on future non-operating party's [sic] behavior. . . ."  *Id.*

The thrust of Walkup's opinions is that the Court should impose a harsh CWA penalty against

Anadarko because the precedent will incentivize other non-operating investors to take a more

active role in drilling activities in the future.  Ex. A at 3-4.  He opines, contrary to the Court's

holding that Anadarko had no duty to intervene in BP's operations, that "active participation" by

non-operating investors is an industry "best practice," which he believes the Court should

"encourage" by imposing substantial CWA penalties on Anadarko.  Ex. A at 4; Ex. B at 25.

In his second and third reports, Walkup purports to respond to the reports of Anadarko's

economics expert, Dr. David Sunding, and Anadarko's safety expert, Kenneth Arnold, chiefly by

"reviewing Anadarko's actions as a NOP at Macondo."  Ex. C at 3; Ex. B at 2.[4]  In doing so, he

ignores that both of Anadarko's experts premised their opinions on the Court's holdings that

Anadarko is not culpable, and he abandons any pretense that his opinion relates to general

drilling industry practices.  Instead, Walkup opines that the Court should impose a severe CWA

---

[4]     Walkup admits he is not an economist, an expert in safety practices, or an expert on safety regulations.  *See* Walkup Dep. Tr., Ex. F, at 18:8-11; 17:11-18; 19:17-21.

penalty against Anadarko because:  Anadarko was "in a position to influence BP and potentially the course of events at Macondo" but did not do so (Ex. C at 18); Anadarko had "access to information" about BP's operations, including "real time data" from the rig, but did not act on it (Ex. B at 18-21); and Anadarko had contractual rights to make "suggestions to BP" but did not make any (Ex. B at 21).  Despite this Court's apportionment of 100% of the fault among BP, Transocean, and Halliburton (which means that Anadarko did not cause or contribute to the events leading to the discharge), Walkup even goes so far as to contend that Anadarko had some "ability to influence causal factors of the blowout at Macondo," Ex. C at 16, including opining that Anadarko had "sufficient information to be concerned about zonal isolation" shortly before the discharge, Exhibit F at 295-96.

Notably, Walkup relies upon and "incorporate[s] by reference" the entire Proffer by the Government.  Exhibit B at 18, n. 44.

### C.    Anadarko's Objections to the Government's Trial Exhibit List.

The Government has identified as trial exhibits *all* of the previously excluded culpability evidence—not less than 292 separate exhibits—*including the Proffer itself*.  *See* Rec. Doc. 13477-1 (United States' Proffer included as TREX-231101 and TREX-232890), attached as Exhibit E (excerpts of Anadarko's objections to U.S. Penalty Phase Good-Faith Trial Exhibit List).[5]  Anadarko has objected to each of these 292 exhibits as excluded by the Culpability Order.  Ex. E.  Specifically, Anadarko objects to "all exhibits that purport, or are offered, to show what pre-April 20, 2010 Incident information Anadarko knew, should have known, or could have requested regarding, or relating in any way to, BP's safety record, the Macondo 252

---

[5]    Many other exhibits on the Government's Penalty Phase Trial Exhibit List relate to the culpability of other parties.  Anadarko objected to these exhibits too, both because they are irrelevant, and also because Anadarko "already has been found non-culpable" and therefore any such evidence is inadmissible against Anadarko.  Rec. Doc. 13477 at 3-4.

geology, well design, fluid or petrophysical analyses, or drilling operations as precluded by the Court's ruling on Anadarko's Motion *in Limine* to preclude evidence of Anadarko's culpability." Ex. H, Rec. Doc. 13477 at 3.  The parties have met and conferred with respect to Anadarko's objections and could not reach resolution.

## III.    ARGUMENT

### A.    Anadarko's Objections to the Government's Exhibits should be Sustained.

As an initial matter, Anadarko's objections to the Government's listing of culpability evidence on its trial exhibit list should be sustained.  Ex. E.  The Government may not launder evidence that the Court has excluded by bundling it into a proffer, incorporating that proffer into an expert report, and then listing the proffered evidence on its trial exhibit list as if the Court had never excluded it in the first place.  Reliance on excluded evidence by an expert "does not facilitate the admission of otherwise inadmissible evidence" into the trial record.  *Polythane Systems, Inc. v. Marina Ventures Intern., Ltd.*, 993 F.2d 1201, 1207 (5th Cir. 1993).

Moreover, the Government's introduction of this evidence at trial would transform the Penalty Phase into a full-blown trial of Anadarko's conduct in connection with Macondo. Consistent with the Court's earlier exclusions of this evidence, Anadarko did not anticipate that its conduct would be at issue.  Fairness would demand a continuance and reopening of discovery so that Anadarko has adequate opportunity to defend itself, including *via* new experts to explain what the so-called "culpability" evidence the Government seeks to introduce actually shows. Nothing in the Court's Culpability Order suggests that the Court intended that result.

### B.    Walkup's Opinions about Anadarko's Conduct are Precluded.

Walkup's opinions relying on the excluded culpability evidence merely restate the Government's rejected "culpability" arguments and evidence against Anadarko.  This also violates the Court's Culpability Order, and Walkup's opinions should be precluded from the

Penalty Phase trial as improper opinion testimony.  *See Orthoflex, Inc. v. ThermoTek, Inc.,* 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) (excluding expert where the purpose of introducing testimony was "merely to present plaintiffs' trial arguments as expert opinions").

In particular, Walkup relies upon and "incorporate[s] by reference the United States' June 2, 2014 Proffer of Evidence Regarding Defendant Anadarko's Involvement with the Macondo Well, Rec. Doc. 12965."  Exhibit B at 18, n. 44.  The Government is estopped from arguing that the evidence listed in its proffer is admissible for any purpose.  *See* Order, Rec. Doc. 12688 at 2 (ordering that the Government "shall make any written proffer of evidence *as to its claim that Anadarko is culpable*.") (emphasis added).  By listing evidence in its Proffer, the Government has acknowledged that the evidence is excluded.  *See Parliament Ins. Co. v. Hanson*, 676 F.2d 1069, 1074 (5th Cir. 1982) (proffer's purpose is to "provide an appellate court with a record allowing it to determine whether the exclusion was erroneous or not.").

Walkup's "incorporation by reference" of the Government's entire Proffer should by itself doom his reports because evidence excluded as irrelevant is not a permissible basis or subject for expert testimony.  *See Imperial Trading Co., Inc. v. Travelers Property Cas. Co. of Imperial Trading Co., Inc. v. Travelers Property Cas. Co. of America,* 654 F. Supp. 2d 518, 520 (E.D. La. 2009) (Vance, J.) (excluding expert testimony where opinions have "become irrelevant" because the court excluded evidence on which report was based); *Weiss v. Allstate Ins. Co*., 512 F. Supp. 2d 463, 477 (E.D. La. 2007) (Vance, J.) (excluding expert testimony as to issues "about which the Court has excluded evidence under Rules 402 or 403").  The Government cannot introduce the excluded culpability evidence through the backdoor *via* expert opinions.  *Cf. PACT XPP Technologies, AG v. Xilinx, Inc.,* No. 2:07–CV–563–RSP, 2012 WL

1205855, at *2 (E.D. Tex., April 11, 2012) ("[L]awyers examining witnesses should take care to avoid inviting witnesses to violate motions *in limine* or any other order.").

    **C.**    **Walkup's Use of Excluded "Culpability" Evidence is not Admissible as Rebuttal Opinion.**

    The Government mischaracterizes its backdoor introduction of the excluded "culpability" evidence against Anadarko as "rebuttal" of Anadarko's experts' opinions.  Ex. B at 18, n. 44. But Anadarko's experts do not rely upon the excluded "culpability" evidence for their opinions, and therefore do not "open the door" to the Government's introduction of the excluded evidence in rebuttal.  *See U.S. v. Hall*, 653 F.2d 1002, 1007 (5th Cir. 1981) (reversing trial court judgment for permitting the Government to introduce expert opinion as "rebuttal" evidence because "there was no defense evidence as to the issue, admissible or inadmissible, presented in this case. Hence, there was nothing for the government to rebut.").

        **1.**    **Anadarko's experts' opinions do not rely upon the excluded "culpability" evidence.**

    Anadarko has disclosed the opinions of two expert witnesses: Dr. David Sunding, and Kenneth Arnold.  Anadarko's experts opine, among other things, that imposition of substantial penalties on faultless, non-operating investors will lead to unintended, harmful consequences. Dr. Sunding will opine that optimal deterrence can be achieved in this case without imposing CWA § 311 civil penalties on Anadarko, since Anadarko has already paid $4 billion to compensate injuries caused by the oil spill.  August 15, 2014 Report of Professor David L. Sunding, attached as Exhibit I, at 2.  Based on his review of the economics literature, Dr. Sunding will opine that, "[b]ecause of transaction costs, information asymmetry, lack of control, moral hazard, and the consequences of increased cost of capital, imposing penalties on non-culpable investors is economically inefficient and could be counter-productive." *Id.*  This is so because, as a matter of economic theory, "[i]f civil penalties are to be imposed for an oil spill

(above and beyond compensatory damages), it is more efficient to impose them on the entities with information and actual control over the operation and potential violations." *Id.* at 8. Drawing in part on his empirical analysis of trends in deepwater lease ownership in the Gulf, Dr. Sunding also will opine that imposing penalties on non-operators will deter investment in offshore oil and gas exploration and production. *Id.* at 10-14.

Dr. Sunding does not rely on the excluded "culpability" evidence to form his opinions. Instead, he specifically states that he begins with the premise that "the Court has already determined that Anadarko was not responsible for the drilling operations on the *Deepwater Horizon* and has no culpability for the oil spill." *Id.* at 16.

Anadarko's safety expert, Kenneth Arnold, has been asked to opine "on what impact imposing responsibility or duties on Non-Operating Working Interest Owners … would have on the safety of offshore oil and gas operations."  August 15, 2014 Report of Kenneth E. Arnold, PE, NAE, attached as Exhibit G, at 1-2.  He concludes that imposing penalties on non-operators is tantamount to holding non-operating investors "accountable for offshore safety." *Id.* at 9.  In his view, this would not be in the public interest because it would cause non-operators to "take actions that detract from the safety culture and lead to confusion, which in turn will likely decrease the safety of operational decisions." *Id.*  Like Dr. Sunding, Mr. Arnold does not rely on any of the "culpability" evidence excluded by the Court.

In short, Anadarko's experts do not rely upon or otherwise put at issue any previously excluded "culpability" evidence. [6]  Indeed, there is no need for them to do so; they are entitled to

---

[6]     Even if Anadarko's reports somehow put the excluded "culpability evidence" at issue, it would not vitiate the Court's *in limine* order and allow the Government to introduce its "culpability" evidence against Anadarko in response.  Were the Court to find that some aspect of Anadarko's experts' reports strayed into, or could "open the door" to, excluded "culpability"

rely on the Court's prior rulings that "Anadarko was not culpable and, in fact, was not responsible for the drilling operations on the rig." Ex. J at 9.

### 2. Walkup's opinions about Anadarko's conduct are not rebuttal.

Walkup states that, to "rebut" Anadarko's experts, he "review[s] the roles that NOPs have the opportunity to play, and in [his] experience actually do play, *and compare[s] that to Anadarko's conduct as a non-operator in connection with Macondo*." Ex. B at 18 (emphasis added). But this is a *non sequitur*. The Fifth Circuit holds that "the purpose of rebuttal testimony is 'to explain, repel, counteract, or disprove the evidence of the adverse party.'" *Hall*, 653 F.2d at 1006 (quoting *United States v. Delk*, 586 F.2d 513, 516 (5th Cir. 1978)). Anadarko's experts *accept* and *start from* the Court's Culpability Order. They offer no opinions on Anadarko's conduct in forming their opinions about the anticipated *future impacts on the industry* if a penalty is imposed on a faultless non-operator. Thus, Walkup's opinions rebut nothing. The Government therefore cannot avoid the Court's earlier rulings by recasting its "culpability" evidence and arguments as "rebuttal" and support.

Along the same lines, the Government cannot justify its attempt to introduce Walkup's excluded "culpability" opinions by claiming that Anadarko "opened the door" to the inadmissible evidence. As the Fifth Circuit explains, "[u]nder this concept, evidence that is irrelevant and thus inadmissible nevertheless may be admitted to rebut evidence of a like character." *Id.* at 1007. Nothing in Anadarko's experts' opinions is "irrelevant" or "inadmissible" culpability evidence pertaining to Anadarko's "conduct … in connection with Macondo." So the door to Walkup's "culpability" laden opinions remains firmly shut. *Id.*

---

territory, Anadarko would immediately withdraw that aspect of the report. *See Pierce v. Ramsey Winch Co*., 753 F.2d 416, 431-32 (5th Cir. 1985).

The appropriate remedy here is to exclude Walkup's offending opinions.[7]  Judge Clement confronted an analogous situation in *Walker v. Yellow Freight Systems, Inc.,* No. Civ. A. 98–3565, 1999 WL 955364 (E.D. La., Oct. 19, 1999).  There, the defendant offered expert opinion solely "based on relevant safety regulations and industry standards," yet the plaintiff's "rebuttal" expert report ignored safety regulations and industry standards, and focused instead on issues of causation.  *Id.* at *8.  Judge Clement excluded the plaintiff's expert's nominal "rebuttal" opinion, holding that the proposed testimony was not proper on rebuttal because it was non-responsive and therefore irrelevant.  *Id.*  Walkup's purported "rebuttal" opinions about Anadarko's "conduct as a non-operator in connection with Macondo," Ex. B at 18, are also non-responsive to Anadarko's experts' opinions, and should be excluded for the same reasons.

> **D.     Walkup's Opinions are also Contrary to this Court's Holding that Anadarko Breached No Duty to Intercede.**

Walkup's view that the Court should impose a harsh CWA penalty against Anadarko based on Anadarko's purported "access to information" or "ability to influence" BP's operations, despite the fact that Anadarko had no right of "operational control," is also inconsistent with this Court's prior substantive holdings that Anadarko breached no legal duty to intercede in BP's operations.  B1 Order, Rec. Doc. 3830, at 28 (holding as a matter of law that "[a]ny access to information that Anadarko . . . may have had did not give rise to a duty to intercede" in BP's operations).  Walkup's opinions trod the same ground as the Government's prior arguments that Anadarko breached some "duty to intercede" in BP's operations (even if that breach did not amount to negligence) and must be excluded for the same reasons.  For example, Walkup's opinion that Anadarko's conduct was not "best practice" because Anadarko was "***in a unique***

---

[7]        *See generally, U.S. v. Talley,* 194 F.3d 758, 763 (6th Cir. 1999) (holding that "by violating the district judge's *in limine* ruling," government counsel "breached his obligation to act fairly and impartially" as an officer of the court and a  representative of the United States.).

*position* … to raise safety concerns," Ex. B at 22 (emphasis added), is precisely the same as the Government's rejected argument that Anadarko is "culpable" because it was "*in a unique position* to encourage safer practices," *see* U.S. Opp. to Anadarko Motion *in Limine*, Rec. Doc. 12462, at 19 (emphasis added).  The only difference is that Walkup substitutes "best practice" for "culpability."

Insofar as Walkup advocates that the Court should penalize Anadarko for the purpose of *creating* a new non-operator "duty to intercede," his opinions run headlong into settled Fifth Circuit law.  *E.g., Wallace v. Oceaneering Int'l*, 727 F.2d 427, 437 (5th Cir. 1984) (holding that non-operator "has no duty to discover and remedy hazards created by its independent contractors").  The legal duties of operators and non-operators cannot be changed in the context of assessing a CWA penalty.  This Court has held Anadarko strictly liable under the CWA solely by virtue of its partial ownership of the Macondo Well, but it is settled that owner status creates no additional duties for non-operators to police the activities of operators.  *C.f., Dupre v. Chevron U.S.A., Inc.,* 930 F. Supp. 248, 251 (E.D. La. 1996) (Vance, J.) (holding that "OCS lease has not created any new duties" for non-operator) (internal citations omitted), *aff'd per curiam*, 109 F.3d 230, 231 (5th Cir. 1997).  Walkup's opinions are thus not only contrary to this Court's earlier "culpability" rulings; they conflict with Fifth Circuit precedents on the duties of operators and non-operators in deepwater drilling operations.

### E.   Even if not Already Excluded, Walkup's Opinions about Anadarko's Conduct are Inadmissible Hearsay.

Walkup's opinions about "Anadarko's conduct as a non-operator in connection with Macondo," Ex. B at 18, also should be excluded because much of the material in his associated reports is not expert opinion at all, just inadmissible hearsay.  *See Guy v. Crown Equipment Corp.*, 394 F.3d 320, 329 (5th Cir. 2004) (affirming exclusion of expert testimony as to the

content of inadmissible third party statements which were not offered in evidence and of which expert had no personal knowledge).  Walkup's "opinions" about "Anadarko's conduct as a non-operator in connection with Macondo" consists in large part of Walkup's rote summation of excluded documents and deposition testimony regarding what Anadarko knew, could have known, or what it might have done, in connection with the discharge.  *See, e.g.,* Ex. B at 17-27.

This is all inadmissible hearsay.  Fed. R. Evid. 802.  It does not matter that Rule 703 sometimes allows experts to rely upon hearsay as background information to formulate their opinions, because that is not what Walkup is doing.  He does not purport to analyze the excluded "culpability" evidence as support for some new hypothesis about the case.  He merely regurgitates excluded evidence into the trial record for the truth of the matters asserted.  Rule 703 does not authorize admitting hearsay on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than transmitting them to the fact-finder.  *See United States v. Scrima*, 819 F.2d 996, 1002 (11th Cir. 1987) ("Rule 703 . . . is not an open door to all inadmissible evidence disguised as expert opinion."); Wright & Miller, Federal Practice and Procedure, 27 Fed. Prac. & Proc. Evid. § 6025 (2d ed.) ("When experts testify as to facts and not opinions, Rule 703's exemption from the personal knowledge requirement does not apply.").  Any suggestion by the Government to the contrary is belied by the fact that it listed *as trial exhibits* the very same evidence.  *See* Ex. E.

The Government's use of Walkup as a vehicle to introduce inadmissible hearsay evidence must be rejected.  *See Loeffel Steel Prods., Inc. v. Delta* Brands, Inc., 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005) (Rule 703 is "not intended to abolish the  hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion."); *Malletier v. Dooney*

*& Bourke, Inc.*, 525 F. Supp. 2d 558, 666 (S.D.N.Y. 2007) ("[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.").

## IV.   CONCLUSION

For all of the foregoing reasons, Anadarko respectfully requests that this Court enforce its prior Culpability Order by:

1.  sustaining Anadarko's objections to the culpability exhibits on the Government's Penalty Phase trial exhibit list, and ordering the Government to submit an appropriately amended trial exhibit list;

2.  striking pages 18 through 28 of Walkup's September 12, 2014 Rule 26 expert report in Response to the Expert Report of Kenneth E. Arnold of 15 August 2014 and Response to the Expert Report of Professor David L. Sunding of 15 August 2014 (Exhibit B);

3.  striking pages 7 through 19 of Walkup's September 26, 2014 Rule 26 expert report in Reply to the Rebuttal Report of Kenneth E. Arnold of 12 September 2014 (Exhibit C);

4.  precluding the Government from offering at trial the opinions of Gardner W. Walkup, Jr. concerning any aspect of Anadarko's "conduct as a non-operator in connection with Macondo;" and,

5.  granting such other relief as this Court deems necessary to enforce its earlier rulings, including the exclusion of other Government expert opinions or reports as necessary to effectuate the Court's order.

Respectfully submitted,

DATED: November 7, 2014                     **BINGHAM McCUTCHEN LLP**

/s/ *James J. Dragna*
James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
Thomas Lotterman
thomas.lotterman@bingham.com
David B. Salmons
david.salmons@bingham.com
Bryan M. Killian
bryan.killian@bingham.com
Randall M. Levine
randall.levine@bingham.com
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

**KUCHLER POLK SCHELL
WEINER & RICHESON, LLC**

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA 70112
Telephone (504) 592-0691
Facsimile (504) 592-0696

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of November, 2014.

                                        /s/ *James J. Dragna*
                                        James J. Dragna