# Exhibit F

Excerpts from Transcript of October 10, 2014 Deposition of Gardner Walkup

**Page 1**

```
         UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL      )   MDL NO. 2179
  by the  OIL RIG,     )
DEEPWATER HORIZON in   )   SECTION "J"
  the GULF OF MEXICO,  )
April 20, 2010         )   JUDGE BARBIER
                       )
                       )   MAG. JUDGE
                       )   SHUSHAN
```

        Videotaped and oral deposition
of GARDNER WALKUP, taken at Pan-American
Building, 601 Poydras Street, 11th Floor, New
Orleans, Louisiana, 70130, on the 10th of
October, 2014.

**Page 2**

          A P P E A R A N C E S
**APPEARING FOR THE UNITED STATES:**
Ms. Nancy Flickinger
Ms. Judy Harvey
Ms. Cate Tierney
U.S. DEPARTMENT OF JUSTICE
601 D Street, N.W.
Washington, D.C. 20004
E-mail: nancy.flickinger@usdoj.gov

**APPEARING FOR BP, INC.:**
Ms. Angie Dickson Marston
KIRKLAND & ELLIS, LLP
300 North LaSalle Street
Chicago, Illinois 60654
Phone: 312-862-7335  Fax: 312-862-2200
E-mail: angela.marston@kirkland.com

**APPEARING FOR ANADARKO:**
Mr. Thomas R. Lotterman
Mr. David M. Halverson
Mr. Bryan M. Killian
BINGHAM McCUTCHEN, LLP
2020 K Street, N.W.
Washington, D.C. 20006
Phone: 202-373-6761  Fax: 202-373-6001
E-mail: thomas.lotterman@bingham.com
        david.halverson@bingham.com
        bryan.killian@bingham.com

ALSO PRESENT:

Mr. Ken Arnold
Mr. David Sunding
Mr. Max Kennedy, videographer

**Page 3**

                I N D E X
                                       PAGE
Appearances...................    2
GARDNER WALKUP
  Examination by Mr. Lotterman        5, 295
  Examination by Ms. Flickinger       279
WITNESS' CERTIFICATE............      300
REPORTER'S CERTIFICATE..........      302

              EXHIBITS
NO.       DESCRIPTION                 PAGE
13200   Expert Report of Gardner
          Walkup, Jr., on Behalf of
          The United States of
          America, August 15, 2014     11

13201   Expert Report of Gardner
          Walkup, Jr., on Behalf of
          The United States of
          America, September 12, 2014  11

13202   Key Gulf of Mexico Fields
          Ownership                    12

13203   Expert Report of Gardner
          Walkup, Jr., on Behalf of
          The United States of
          America, September 26, 2014  13

13204   AAPL Model Form of Offshore
          Deepwater Operating Agreement,
          US_PP_WAL001597 -
          US_PP_WAL001764              80

13205   AAPL Model Form of Offshore
          Deepwater Operating Agreement,
          Draft
          US_PP_WAL003651 -

**Page 4**

NO.       DESCRIPTION                 PAGE
13206   The Good, the Bad, and
          the Ugly of the Stage-Gate
          Project Management Process in
          the Oil and Gas Industry
          US_PP_WAL002234 -
          US_PP_WAL002245              207

13207   Credit Suisse - US Gulf of
          Mexico
          US_PP_WAL000459 -
          US_PP_WAL000495              217

13208   Senator Thomas R. Carper
          holds a Hearing on Gulf Coast
          Financial Responsibility, Part 1
          July 22, 2010
          ANA-MDL-000011731 -
          ANA-MDL-000011757            289

**CONFIDENTIAL- SUBJECT TO PROTECTIVE ORDER**
**Worldwide Court Reporters, Inc. (800)-745 1101**

17

1  sure I would know what that means.
2      Q.  Had you heard of the concept
3  before this litigation?
4      A.  Yes.
5      Q.  Okay.  Do you feel qualified to
6  opine whether or not pursuing ultimate work
7  authority is a good or bad thing in the realm
8  of safety?
9      A.  I think my experience has
10 allowed me to opine on that.
11     Q.  Okay.  Do you consider yourself
12 an expert in process safety?
13     A.  Again, a lot of experience in
14 it.  There are people whose career is focused
15 solely on process safety that I would
16 consider experts.  And I'm not one of those
17 but I have a lot of experience in process
18 safety.
19     Q.  How would you define process
20 safety?
21     A.  It's -- first off, it's a
22 process, it's not a report.  It's not -- I
23 guess I'm defining what it's not.
24     Q.  It's a start.
25     A.  The -- in the testimony that I

18

1  read of Mr. Arnold's -- not -- the initial
2  deposition, the draft, there was kind of a
3  summary from the findings of fact, I believe
4  that was.  That was a pretty good summary.
5      Q.  Do you feel qualified to opine
6  about process safety in this case?
7      A.  Yes, I do.
8      Q.  Do you consider yourself an
9  expert in economics?
10     A.  Again, some experience but, no,
11 I would not claim to be an expert.
12     Q.  Okay.  Now, in the -- I believe
13 it's in your third report.  And I can -- why
14 don't I show you the page.  Go to page --
15 this will be Tab 4, Page 3.  If I got this
16 right.  Actually, Tab 4, Footnote 5.  That's
17 what I want.  There it is on Page 6.
18         Are you on that page?  So it's
19 exhibit -- Exhibit 13203.  I got you on
20 Page 6 and I'm asking -- I want to ask you
21 about Footnote 5.  Do you see it?
22     A.  Yes.
23     Q.  Okay.  Now, you write that
24 Mr. Arnold also points to regulations and
25 argues that the regulations do not require

19

1  participation by NOPs.  I am not providing an
2  expert opinion on the regulations.  And then
3  you go on to note certain things.
4          I want to ask you about that
5  phrase, "I am not providing an expert on the
6  regulations."
7          What regulations are you talking
8  about?
9      A.  Which regulations I'm talking
10 about that I'm not providing?
11     Q.  Yes.
12     A.  The regulations that Mr. Arnold
13 was referring to.  So I'd have to go back to
14 Mr. Arnold's report to cross reference.
15     Q.  Okay.
16     A.  Okay?
17     Q.  Are you -- do you consider
18 yourself an expert in current BSEE
19 regulations?
20     A.  I'm aware of some of them but,
21 no, I'm not an expert in them.
22     Q.  What about current BOEM
23 regulations?
24     A.  The same.
25     Q.  What about previous MMS and USGS

20

1  regulations?
2      A.  Again, some experience with them
3  but not -- would not present myself as an
4  expert in them.
5      Q.  What about U.S. Coast Guard
6  regs?
7      A.  Again, same.
8      Q.  So -- and in fact, when I looked
9  at your three reports last night again, I
10 didn't see you really interpreting or opining
11 about any U.S. federal regulations in the
12 report.  Is that a fair statement?
13     A.  To my -- to the best of my
14 memory and knowledge of my report, I don't
15 remember saying anything about regulation.
16     Q.  Why not?
17     A.  'Cause of this -- first, it
18 wasn't what I was asked to consider.
19     Q.  Okay.  But did Mr. Arnold go
20 there?
21     A.  Yes, he did.
22     Q.  Why didn't you?
23     A.  I did -- so it wasn't within --
24 he wasn't responding to my opinion.  I had no
25 opinions on the --

CONFIDENTIAL- SUBJECT TO PROTECTIVE ORDER
Worldwide Court Reporters, Inc. (800)-745 1101

293

1  direct influence of design on that activity.
2          And, therefore, that's why I --
3  I answered yes.  Was not because I believed
4  that realtime, there should have been -- that
5  an active participation would have -- would
6  have manifested itself in realtime but,
7  rather, that the active participation would
8  have manifest itself through the design
9  process and -- and certainly in the review of
10 the end part of the design process, the plan,
11 be it a well plan, be it a temporary
12 abandonment plan.
13         So that's what yes meant there;
14 was not that, yes, they should have in
15 realtime been involved but, rather, that
16 through, you know, through the design process
17 which influenced those -- those things.
18 That's what my yes meant.
19     Q.   Okay.  So it's possible that one
20 or two of the early ones --
21     A.   The first two early ones would
22 have been yes.
23     Q.   You go back and reevaluate that,
24 but basically execution of the design is...
25     A.   So the design influenced --

294

1      Q.   Right.
2      A.   -- that issue in its totality.
3      Q.   And you would include that in
4  active participation?
5      A.   Yes, I would.
6      Q.   And then, finally, I think there
7  were some questions about you used e-mails
8  and other evidence about Anadarko's access to
9  information and knowledge of operations at
10 the well and design activities -- I'm kind of
11 paraphrasing -- at Macondo to form the basis
12 of your opinions, and I want to go back and
13 kind of clarify that.
14     A.   Okay.
15     Q.   Are there some aspects of your
16 opinions that are complete independent of
17 Anadarko-specific and Macondo-specific
18 information?
19     A.   Yes, there are.
20     Q.   Okay.  And in -- in most, if not
21 all the places where you use
22 Anadarko-specific, the kind of
23 Anadarko-specific information or
24 Macondo-specific information, were you using
25 that in response to anything else you had

295

1  received from Anadarko?
2      A.   Yeah.  That part of my report,
3  which the majority of those is in my second
4  report, Round 2, were in responding to
5  Dr. Sunding or Mr. Arnold's contentions and
6  my rebuttal of those contentions.
7          MS. FLICKINGER: I have no further
8  questions.
9          MR. LOTTERMAN: I have a couple of --
10 do we need to switch places?
11         VIDEOGRAPHER: It's up to you.
12         MR. LOTTERMAN: Good.  I don't think --
13         MS. FLICKINGER: That's fine.
14         MR. LOTTERMAN: I actually have a
15 couple.
16         THE WITNESS: Okay.
17         MR. LOTTERMAN: You can read my notes
18 if you want.
19              FURTHER EXAMINATION
20 BY MR. LOTTERMAN:
21     Q.   You mentioned during a colloquy
22 with      Ms. Flickinger that you used
23 as an example the scenario where, in your
24 view, Anadarko had sufficient information to
25 be concerned about zonal isolation.  Do you

296

1  remember that?
2      A.   Yes.
3      Q.   Okay.  Why is that relevant to
4  your opinions in this case?  And I don't mean
5  the conclusion.  In other words, why -- let's
6  assume that Anadarko had sufficient
7  information to be concerned about zonal
8  isolation.  Why is that -- why is that
9  relevant or supportive of your opinions in
10 this case?
11     A.   So my opinions in the case are
12 that industry best practice is focused active
13 participation and that non-operating parties
14 have the unique opportunity to do that, and
15 by way of example of that unique opportunity
16 to be active participants and to contribute
17 to the quality of deepwater activities.
18 That's why I mentioned those.
19     Q.   Yeah, but are you -- are you --
20 oh.  I'm sorry.  I thought you were done.
21     A.   No.  Go ahead.
22         MS. FLICKINGER: It's okay if you just
23 sit next to him, but I start to get
24 uncomfortable when you touch him a second
25 time.

74 (Pages 293 to 296)

```
                                                                    301
 1              SIGNATURE PAGE
 2
        I, GARDNER WALKUP, have read the
 3   foregoing deposition and hereby affix my
     signature that same is true and correct,
 4   except as noted on the correction page.
 5
 6      _____
             GARDNER WALKUP
 7
 8
 9
     THE STATE OF        )
10   COUNTY OF           )
11
        Before me _____ on this
12   day personally appeared _____
     known to me [or proved to me on the oath of
13   _____ or through
     _____ (description of
14   identity card or other document)] to be the
     person whose name is subscribed to the
15   foregoing instrument and acknowledged to me
     that he/she executed the same for the
16   purposes and consideration therein expressed.
        Given under my hand and seal of office
17   this _____ day of _____, 2014.
18
19      _____
             NOTARY PUBLIC IN AND FOR
20           THE STATE OF
21   My Commission Expires:
22   _____
23
24
25
```

```
                                                                    303
 1
 2   _____
 3   THU BUI, CSR, RPR
     CSR NO. 7618; Expiration Date: 12-31-15
 4   Worldwide Court Reporters
     Firm Registration No. 223
 5   3000 Weslayan, Suite 235
     Houston, TX 77027
 6   (713) 572-2000
```

```
                                                                    302
 1         UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF LOUISIANA
 2
 3   IN RE: OIL SPILL    )   MDL NO. 2179
     by the OIL RIG,     )
 4   DEEPWATER HORIZON in )  SECTION "J"
     the GULF OF MEXICO,  )
 5   April 20, 2010       )  JUDGE BARBIER
                         )
 6                       )   MAG. JUDGE
                         )   SHUSHAN
 7
            REPORTER'S CERTIFICATION
 8         DEPOSITION OF GARDNER WALKUP
             TAKEN OCTOBER 10, 2014
 9
        I, Thu Bui, Certified Shorthand Reporter
10   in and for the State of Texas, hereby certify
     to the following:
11
        That the witness, GARDNER WALKUP, was
12   duly sworn by the officer and that the
     transcript of the oral deposition is a true
13   record of the testimony given by the witness;
        That the deposition transcript was
14   submitted on _____, 2014, to the
     witness or to Attorney _____ for
15   examination, signature and return to
     Worldwide Court Reporters, Inc., by
16   _____, 2014.
        That the amount of time used by each
17   party at the deposition is as follows:
18      Mr. Thomas Lotterman - 5:28
        Ms. Nancy Flickinger - 0:15
19
        I further certify that I am neither
20   counsel for, related to, nor employed by any
     of the parties in the action in which this
21   proceeding was taken, and further that I am
     not financially or otherwise interested in
22   the outcome of the action.
        SUBSCRIBED AND SWORN to by me this ____ day
23   of _____, 2014.
24
25
```

**CONFIDENTIAL- SUBJECT TO PROTECTIVE ORDER**
**Worldwide Court Reporters, Inc. (800)-745 1101**