# EXHIBIT 19

**UNITED STATES' OPPOSITION TO:**

**BPXP'S MOTION TO STRIKE THE EXPERT REPORTS OF WALTER H. CANTRELL AND RENEWED MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO PRIOR INCIDENTS (Rec. Doc. 13475)**

NELSON P. COHEN
United States Attorney
KAREN L. LOEFFLER
Chief, Criminal Division
ANDREA T. STEWARD
Assistant U.S. Attorney
DANIEL L. CHEYETTE
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 W. 7th Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel.: 907/271-5071

J. RONALD SUTCLIFFE
Trial Attorney
Environmental Crimes Section
CHRISTOPHER J. COSTANTINI
Senior Trial Attorney
Environmental Crimes Section
Department of Justice
601 D Street, NW
Washington, DC 20004
Tel.: 202/305-0321

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) | No. |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **I N F O R M A T I O N** |
| | ) | |
| BP EXPLORATION | ) | |
| (ALASKA), INC., | ) | |
| | ) | |
| Defendant. | ) | |

PSC-MDL2179086340

The United States Attorney charges that:

## COUNT 1: Clean Water Act

In the District of Alaska, on or about February 27th, 2006, and continuing until on or about March 2, 2006, the defendant, BP EXPLORATION (ALASKA) INC. (BPXA), did negligently discharge and caused to be discharged a harmful quantity of oil from a point source to a water of the United States, to wit; BPXA spilled approximately 200,000 gallons of oil from the western area operating oil transit pipeline to the tundra and Q-Pad Lake at the Prudhoe Bay Unit as a result of BPXA's negligent maintenance of the oil transit pipeline.

In violation of Title 33, United States Code, sections 1319(c)(1) and 1321(b)(3).

DATED: _Oct 24, 2007_          _[signature]_
                               NELSON P. COHEN
                               United States Attorney

PSC-MDL2179086341

NELSON P. COHEN
United States Attorney
KAREN L. LOEFFLER
Chief, Criminal Division
ANDREA T. STEWARD
Assistant U.S. Attorney
DANIEL L. CHEYETTE
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 W. 7th Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel.: 907/271-5071

J. RONALD SUTCLIFFE
Trial Attorney
Environmental Crimes Section
CHRISTOPHER J. COSTANTINI
Senior Trial Attorney
Environmental Crimes Section
Department of Justice
601 D Street, NW
Washington, DC 20004
Tel.: 202/305-0321

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No.   3:07-cr-00125-TMB |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLEA AGREEMENT** |
| v. | ) | |
| | ) | |
| BP EXPLORATION | ) | |
| (ALASKA), INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

BPXA PLEA AGREEMENT

PSC-MDL2179086351

**Unless the parties jointly inform the Court in writing of any additional Agreements, this document in its entirety contains the terms of the Plea Agreement between the  defendant and the United States.  This Agreement is limited to the District of Alaska and the Environmental Crimes Section of the Department of Justice; it does not bind other federal, state, or local prosecuting authorities except as set out in Attachment A to this document.**

## I.   TERMS OF THE AGREEMENT

### A.   Terms of Agreement

The defendant, BP EXPLORATION ALASKA, INC. (BPXA), agrees to plead guilty to the one-count information filed contemporaneously with this Agreement.  The parties' sentencing Agreement is set forth in Section III.  Assuming the Court imposes sentence pursuant to the terms of this Agreement, BPXA will waive all rights to appeal the conviction and sentence imposed under this Agreement, and will waive all rights to collaterally attack the conviction and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the plea.  If the defendant's guilty plea is rejected, withdrawn, vacated, reversed, or set aside, or if the defendant's sentence is vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant and its affiliates and agents on all charges arising out of the investigation of this case.

PSC-MDL2179086352

**B.**   **Federal Rule of Criminal Procedure 11**

Under the terms of this Agreement BPXA will plead guilty to a one-count

information charging BPXA with a discharge in violation of the Clean Water Act,

33 U.S.C. §§ 1319(c)(1), 1321(b)(3).  The parties expressly agree that this Plea

Agreement is entered into pursuant to Rule 11(c)(1)(C) of the Federal Rules of

Criminal Procedure as discussed below.  Under the terms of this Agreement, the

parties may only withdraw from this Agreement if the Court deviates from the

sentencing recommendations made by the parties as outlined in this Agreement in

Section III.

The defendant, by entering into this Plea Agreement, waives any right to

have the facts that the law makes essential to the determination of punishment in

this case either charged in the indictment, presented to a jury, or proven beyond a

reasonable doubt.  The defendant agrees to freely and openly acknowledge

responsibility for its acts and omissions, and the acts and omissions of its

employees and agents, that constitute the agreed upon factual basis for its guilty

plea as outlined in this Agreement.

**C.**   **Waiver of Claim for Attorney Fees and Costs**

Because this is a negotiated resolution of the case, the parties waive any

claim for an award of attorney fees and costs from the other party.

BPXA PLEA AGREEMENT                           Page 3 of 28

PSC-MDL2179086353

**D.     Breach**

The parties agree that if the Court finds that BPXA has materially breached this Agreement following notice and an opportunity to cure the breach, or if BPXA's guilty plea is rejected, withdrawn, set aside, vacated or reversed, at any time, the United States will be free to prosecute BPXA on all charges arising from the conduct leading to this Agreement, including any charges that might have been brought but for this Agreement.  BPXA also waives any statute of limitations defense so that the United States could bring any charges it had available at the date of the entry of this Agreement.

**E.     Full Description of Conduct**

This Agreement does not limit the rights of any party to provide the Court with a full description of the defendant's conduct, correct inaccuracies at any time, or speak at the time of sentencing consistent with the recommended provisions set forth in the Agreement.  The parties agree to allocute at sentencing in favor of the joint recommendation regarding the appropriate sentence, as set forth in this Agreement at Section III.

**F.     Immunity Not Granted**

The Defendant understands and agrees that this Agreement does not provide use immunity or derivative use immunity to the defendant or to any of its officers,

PSC-MDL2179086354

employees or directors. The Defendant also understands and agrees that this Agreement does not affect the status of potential criminal liability of any of its officers, employees, contractors, agents or directors.

### G.    BPXA Organization

The Defendant agrees and understands that this Agreement is intended to bind BPXA, and that if the defendant changes names, reorganizes, merges, or otherwise ceases operations in its current form, the person or entity acquiring the assets or taking over the operation of defendant's company shall take over the obligations of this Agreement. The Defendant further agrees to provide the United States Attorney's Office for the District of Alaska and the United States Probation Office for the District of Alaska with immediate notice of any name change, business reorganization, sale or purchase of assets, divestiture of assets, or similar action impacting the operation of its business.

No change in name, change in corporate or individual control, business reorganization, change in ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter the defendant's responsibilities under this Agreement. The defendant shall not engage in any action to seek to avoid the obligations and conditions set forth in this Agreement. This Agreement, together with all of the obligations and terms hereof, shall inure to the benefit and

PSC-MDL2179086355

shall bind assignees, subsidiaries, successors-in-interest, or transferees of the defendant.

## II.   CHARGES, ELEMENTS, FACTUAL BASIS AND STATUTORY PENALTIES

### A.   Charges

BPXA agrees to plead guilty to a one-count information charging BPXA with a violation of the Clean Water Act, 33 U.S.C. §§ 1319(c)(1), 1321(b)(3), for the negligent discharge of a harmful quantity of oil to a water of the United States.

### B.   Elements

The elements of the misdemeanor charge to which BPXA is pleading guilty are as follows:

(1)   The defendant discharged oil from a point source;

(2)   The amount of oil discharged was a quantity deemed to be harmful by federal regulation;

(3)   The oil was discharged into waters of the United States; and

(4)   The discharge was caused by the negligence of the defendant.

### C.   Factual Basis

The United States has conducted an extensive investigation into the facts surrounding the March and August 2006 leaks from the oil transit lines operated by BPXA in the Prudhoe Bay Unit.  This investigation was a joint federal and state

PSC-MDL2179086356

investigation that involved many technical and complex issues, complicated

evidence collection, numerous interviews, the review of numerous records and

documents, and consultation with experts. The investigation was conducted by the

U.S. Environmental Protection Agency (EPA) Criminal Investigation Division and

the Federal Bureau of Investigation, with assistance from the U.S. Department of

Transportation (DOT) Office Inspector General and in particular the Pipeline and

Hazardous Materials Safety Administration in the form of expert consultation and

the Alaska Department of Environmental Conservation (ADEC), Environmental

Crimes Unit with regard to the initial response to the spills.

Defendant BPXA is a Delaware corporation with its principal place of

business in Anchorage, Alaska. The defendant, a corporation, is responsible for

the acts and omissions of its employees in this instance. The parties stipulate that

the following provides a factual and legal basis for the defendant's conviction of

the crime charged in the Information.

BPXA conducts oil exploration, drilling, and production in Alaska. BPXA

is the operator of oil production facilities within the Prudhoe Bay Unit (PBU) on

the North Slope of Alaska, which includes both the Eastern Operating Area (EOA)

and the Western Operating Area (WOA). The facilities operated by BPXA at

Prudhoe Bay include oil wells, production facilities—at which the oil, water and

BPXA PLEA AGREEMENT                     Page 7 of  28

PSC-MDL2179086357

gas mixture produced at Prudhoe Bay is processed and separated—and approximately 1,600 miles of pipelines used to transport crude oil, process water, natural gas and other materials generated by or used during oil field operations at Prudhoe Bay.

Among the pipelines operated by BPXA are oil transit lines (OTLs) located in the WOA and EOA at Prudhoe Bay. These lines transport sales quality crude oil from the separation facilities—called gathering centers in the WOA and flow stations in the EOA—to the Trans Alaska Pipeline System (TAPS) which terminates in Valdez, Alaska. In March and August of 2006 there were two spills from the OTLs.

The OTLs that leaked are located on State property leased for the purpose of oil exploration and/or production and exploration. DOT has classified the area where the transit lines are located as a high consequence area because of their unique ecological resources. Because the lines are operated by BPXA as low stress lines they were not directly regulated by DOT. Consequently, BPXA was required to operate the OTLs as a reasonable operator. BPXA acted negligently by failing to adequately inspect and clean the OTLs.

### 1.    March 2006 Spill

On March 2, 2006 a BPXA employee driving next to an OTL on the WOA

PSC-MDL2179086358

smelled crude oil. BPXA promptly initiated an investigation and determined that the leak had been going on for approximately five days. The hole in the pipe that caused the March 2006 leak was approximately the size of an almond. An estimated 200,000 gallons (approximately 4,800 barrels) of oil spilled before BPXA noticed and stopped the leak.

The leak occurred at a caribou crossing. These crossings involve a change in elevation in the pipeline so that a mound can be built up over the pipeline to allow caribou to cross the pipeline. Low spots in the pipe are known to be potential locations of internal corrosion problems because sediment and water settle at these locations. Sediment and water inside pipelines create the environment necessary for corrosion-causing bacteria to exist.

During the March 2006 leak, oil spread over approximately 2 acres of tundra and a frozen lake known as the Q-Pad Lake, which constitutes a water of the United States and is owned by the State of Alaska. BPXA undertook a thorough and immediate remediation of the area impacted. Nonetheless, in May of 2006, when the ice on the Q-Pad Lake melted, EPA Special Agents observed and collected samples from several oil sheens on the lake.

### 2.  August 2006 Spill

In August 2006, a leak occurred on the EOA OTL that was detected during

PSC-MDL2179086359

DOT ordered inspections.  The leak spilled approximately 1,000 gallons of oil on to the tundra before it was contained.  The impacted acreage is property of the State of Alaska.  Because BPXA was prompt in detecting and containing this leak, and because of the cooperation of BPXA throughout the investigation of both leaks, the government will not pursue a criminal charge for this leak.

### 3.    Negligence:  BPXA Failed to Adequately Mitigate Corrosion on the Oil Transit Lines

Both leaks from the OTLs resulted in substantial part from Microbial Induced Corrosion ("MIC"), a process by which bacterial colonies that cause internal corrosion form inside a pipeline.  MIC typically occurs in stagnant or relatively low flow conditions in the presence of water.  BPXA believed that internal corrosion on the OTLs was a low probability.  However, production upsets allow water and sediment to leave the separation facility and enter the OTL which increases the likelihood of internal corrosion in a low velocity line such as the OTL.  BPXA was aware by 2004 that production upsets were occurring frequently as a result of processing heavier, more viscous oil at gathering center 2 (GC2). BPXA knew that the EOA OTL also had sediment collecting in the pipe. During the investigation the United States obtained a section of pipe where the March 2006 leak occurred.  Approximately six inches of sediment and residual oil were found on the bottom of the thirty-four-inch-diameter pipe.  BPXA was aware

PSC-MDL2179086360

of sediment build up on the EOA OTL prior to both spills. When too much sediment builds up in a pipeline it forms an environment in which acid producing bacteria can corrode all the way through the pipe undisturbed by the flow of oil in the pipe or the addition of chemicals intended to protect the pipe from corrosion.

Also in 2005, BPXA was aware of increased corrosion activity at GC2 and on the WOA OTL and as a result increased the frequency of inspection. BPXA knew that it had insufficient inspection data on the EOA OTL. BPXA failed in light of these conditions to take necessary action to prevent the leaks on the OTLs. BPXA failed to clean the OTLs with a piece of equipment called a maintenance (or cleaning) pig and inspect the pipe for corrosion activity with a smart pig. A maintenance pig may have disturbed the bacteria and cleared out the stagnant water and sediment necessary for the bacteria to exist. A smart pig may have provided a clear picture of the corrosion activity that was occurring on both the EOA and WOA transit lines.

The last time that the WOA OTL had been pigged (either maintenance or smart) was 1998, eight years before the leak. The EOA OTL had not been pigged since 1990 and had never been pigged by BPXA. The lines were not pigged because BPXA did not recognize the need to pig the oil transit lines more frequently. As a result, BPXA did not expend sufficient resources to address the

PSC-MDL2179086361

complex issues of corrosion control in the OTLs.

### 4.   Negligence:  Leak Detection System Maintenance

The State of Alaska required all crude oil transmission pipelines to be equipped with a leak detection system.  More specifically, 18 AAC 75.055 required leak detection systems capable of detecting a daily discharge equal to not more than one percent of daily throughput.  The Alaska Department of Environmental Conservation required the leak detection system to detect leaks on a segment-by-segment basis of the OTL.  This means that each segment of the PBU OTLs must be equipped with a leak detection system capable of detecting a daily discharge of one percent or more of the crude oil flow in the OTL segment.

In 2002, BPXA installed external ultrasonic meters along the OTLs.  These ultrasonic meters were a part of a system designed to meet the one-percent leak detection requirement.  BPXA believed this system—augmented by a program of visual surveillance—would be reliable, would provide state-of-the-art leak detection, would minimize false alarms, would surpass the regulatory requirements for leak detection thresholds, and would provide a rapid response in detecting large and small leaks.

Nevertheless, BPXA was also aware that the ultrasonic meters it had installed required clean pipe to operate optimally.  BPXA should have run cleaning

PSC-MDL2179086362

pigs through the OTLs to ensure the integrity of the leak detection system as well as to prevent internal corrosion. BPXA failed to do so.

### 5.   BPXA's Cooperation

BPXA cooperated as requested in the investigation into the March and August 2006 spills. It voluntarily accepted subpoenas and produced millions of pages of documents to the United States as well as assisted in the technical difficulties of producing the section of pipe where the leak occurred. BPXA made witnesses available and voluntarily shared technical information regarding the incident with federal investigators. BPXA has also cooperated as requested by state and federal authorities overseeing the cleanup of oil spilled as a result of the incidents. All of these efforts by BPXA made the timely resolution of this complex case possible.

### D.   Statutory Penalties

The maximum statutory penalties applicable to the charge to which the organizational defendant is pleading guilty, based on the facts to which the defendant will admit in support of the guilty plea, are as follows:

- two times the pecuniary loss caused by the offense pursuant to the Alternative Fines Act, 18 U.S. C. § 3571(d);

- five years probation;

PSC-MDL2179086363

- criminal restitution;

- a $125 mandatory special assessment pursuant to 18 U.S.C.
  § 3013.

## III. JOINT SENTENCING RECOMMENDATION

### A. Sentencing Guidelines

The parties agree that the version of the advisory United States Sentencing

Guidelines (U.S.S.G.) incorporating guidelines amendments through November 1,

2006, shall cover these offenses to the limited extent that the guidelines apply in

this context. The parties further agree that pursuant to U.S.S.G. § 8C2.1

(Commentary) and § 8C2.10 of the United States Sentencing Guidelines, which

pertain to the sentencing of organizations, the guidelines do not determine fine

range in environmental cases, but rather leave such determination to the sound

discretion of the Court in accordance with 18 U.S.C. §§ 3553, 3571 and 3572.

### B. Sentence Recommendation

#### 1. Agreed upon Sentence

The parties agree, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that the

following is an appropriate disposition of this matter:

- $20 million criminal penalty to be paid as specified below in
  paragraph III.B.3;

PSC-MDL2179086364

- A three year term of probation during which BPXA must comply with special conditions of probation set forth in paragraph III.C below; and

- A $125 special assessment.

### 2.   No Effect on Civil Claims/Taxation

Nothing contained in this Agreement limits the rights and authority of the State of Alaska or the United States to take civil or administrative action against BPXA; any of its parent, subsidiary, or related entities; or officials of BPXA or such entities (hereinafter collectively "BP"). BP expressly acknowledges and agrees that the payments, fines, community service, and criminal restitution provided for in section III.B.3 do not in any way limit, compromise, offset, prohibit, bar, reduce, or otherwise adversely affect any of the State of Alaska's or United States' potential civil or administrative claims or remedies against BP, including but not limited to statutory or common law claims for penalties, assessments, liabilities, losses, compensatory or punitive damages, injunctive relief and/or attorneys' fees or costs. Further, BP expressly agrees not to assert or otherwise rely on payment of fines, community service, or criminal restitution paid pursuant to section III.B.3 as a defense to, or a mitigating factor of, the State of Alaska's or the United States' civil or administrative claims and/or damages.

BPXA PLEA AGREEMENT                    Page 15 of 28

PSC-MDL2179086365

By entering into this Agreement, BP expressly acknowledges and agrees that criminal restitution paid under this Agreement and any monies paid pursuant to this Agreement shall not be taken as a deduction or credit against, or otherwise reduce the amount of taxes, royalties, or any other payments to the State of Alaska or the United States, including but not limited to those provided for in AS 38.05, AS 43.20, AS 43.55, or lease Agreements entered into with the State of Alaska.

In addition, since all the payments agreed to herein are part of the resolution of a criminal investigation, the Defendant will not characterize, publicize or refer to these payments or projects as voluntary donations or contributions.  BPXA also agrees that whenever it publicizes the community service contribution or the results of that community service, it will state in a prominent manner that the project is being undertaken as part of the settlement of an enforcement action. BPXA may represent, however, that it suggested that some of the payments made in connection with this Agreement be to fund the community service project.

### 3.    Method of Payment

No later than two business days prior to sentencing, as scheduled by the Court, BPXA shall notify the U.S. Attorney's Office that BPXA's counsel is in possession of $20,000,125.00 of its client funds, held in account to pay BPXA's criminal penalties and special assessment.  The total criminal penalty will be paid

PSC-MDL2179086366

as set out below:

    (1)    $12,000,000.00 fine to be paid in full on the day of the entry of the plea to the Clerk of Court;

    (2)    $4,000,000.00 community service to be paid in full within ten days of the entry of the plea to the National Fish and Wildlife Foundation (NFWF)—set out in more detail below—for the purpose of conducting research and activities in support of the arctic environment in the State of Alaska on the North Slope;

    (3)    $4,000,000.00 to be paid as criminal restitution to the State of Alaska pursuant to 18 U.S.C. § 3663(a)(3).

### 4.    Community Service

The $4,000,000.00 paid to NFWF shall be directed to the Alaska Fish and Wildlife Fund for the purpose of conducting research and activities in support of the arctic environment in the State of Alaska on the North Slope and accounted for to Congress in annual reports required by 16 U.S.C. § 3706(b).  This amount is to be paid as community service pursuant to U.S.S.G. § 8B1.3 and in furtherance of satisfying the sentencing principles provided for under 18 U.S.C. § 3553(a).

NFWF is a congressionally-mandated, charitable and nonprofit corporation, established pursuant to 16 U.S.C. §§ 3701–3709.  Its purposes include the

PSC-MDL2179086367

acceptance and administration of "private gifts of property for the benefit of, or in

connection with, the activities and services of the United States Fish and Wildlife

Service," and the performance of "such other activities as will further the

conservation and management of the fish, wildlife, and plant resources of the

United States, and its territories and possessions, for present and future generations

of Americans."  Id. § 3701(b)(1), (2).  The NFWF is empowered to "do any and all

acts necessary and proper to carry out" these purposes, including, specifically,

solicitation, acceptance, and administration of "any gift, devise or bequest . . . of

real or personal property."  Id. § 3703(c)(1), (7).

### 5.    Criminal Restitution

BPXA will pay $4,000,000.00 as criminal restitution to the State of Alaska

pursuant to 18 U.S.C. § 3663(a)(3).  BPXA's agreement to pay this criminal

restitution is conditioned on the State of Alaska executing and issuing to BPXA the

letter that is included as Attachment A to this Agreement.

## C.    Conditions of Probation

### 1.    Benchmarks

BPXA will serve a three year period of probation.  If, however, after serving

one year of the term of probation BPXA can demonstrate successful completion of

three benchmark indicators to the satisfaction of the U.S. Attorney's Office, the

PSC-MDL2179086368

Court will grant early termination of probation. The three benchmark indicators are that (1) BPXA has made significant progress in replacement of the OTLs on both the EOA and WOA; (2) BPXA has made significant progress with the implementation and operation of an integrity management plan; and (3) BPXA has made significant progress on a system that would be more effective in detecting leaks such as the one that occurred in March 2006. Within 90 days of the date of the entry of BPXA's guilty plea, BPXA must acquire the approval of the U.S. Attorney's Office in the definition and terms of the three benchmark indicators.

### 2.      Responsible Corporate Officer

BPXA will also appoint a Responsible Corporate Officer (RCO) to ensure compliance with the condition of probation referenced in III.C.1 above who will have requisite knowledge of BPXA's obligations under this Agreement and the authority to insure that the obligations are fully implemented, and who will be directly responsible for overseeing the benchmarks. The U.S. Attorney's Office must approve the selection of the RCO. BPXA will identify the RCO to the Court at the time of sentencing. The RCO will review and sign all submissions to the Court, to the U.S. Probation office and to the U.S. Attorney's Office relevant to the benchmarks.

PSC-MDL2179086369

### D.   Corporate Authorization

BPXA will provide to the U.S. Attorney's Office and to the Court written

evidence in the form of a resolution of its Board of Directors certifying that the

defendant is authorized to plead guilty to the information in this case, and to enter

into and comply with all provisions of this Agreement.  The resolution shall further

certify that an identified individual is authorized to take these actions and that all

corporate formalities, including but not limited to, approval by defendant's

directors, required for such authorization have been observed.  The defendant

agrees that James T. Wilk, as Vice President, Chief of Staff BPXA, will be

authorized to appear on its behalf, to enter its guilty plea and to represent it for

imposition of its sentence.

## IV.   WAIVER OF TRIAL, APPELLATE RIGHTS, AND COLLATERAL ATTACK RIGHTS

### A.   Trial Rights

Being aware of the following, BPXA waives these trial rights:

--     The right to a speedy and public trial by jury;

--     The right to object to the composition of the trial jury;

--     The right to plead not guilty or to persist in that plea if it has

        already been made;

--     The right to be presumed innocent and not to suffer any

PSC-MDL2179086370

criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

-- The right to be represented by counsel at trial and if necessary to have counsel appointed at public expense to represent the defendant at trial -- the defendant is not waiving the right to have counsel continue to represent the defendant during the sentencing phase of this case;

-- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear on the defendant's behalf.

**B.     Appellate Rights**

The defendant waives the right to appeal the conviction resulting from the entry of the guilty plea to the charge set forth in this Agreement. The defendant further agrees that if the Court imposes the sentence as contemplated in this Agreement, the defendant waives without exception the right to appeal on all grounds contained in 18 U.S.C. § 3742 the sentence the Court imposes.

**C.     Collateral Attack Rights**

The defendant waives all rights to collaterally attack the resulting conviction and/or sentence—including terms or conditions of, and any fines, community

BPXA PLEA AGREEMENT                   Page 21 of 28

PSC-MDL2179086371

service, or criminal restitution—the Court imposes.  The only exceptions to this collateral attack waiver are as follows:  1) any challenge to the conviction or sentence alleging ineffective assistance of counsel, based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; and 2) a challenge to the voluntariness of the defendant's guilty plea.

## V.   DEFENDANT'S ACCEPTANCE AND UNDERSTANDING OF THE TERMS OF THIS PLEA AGREEMENT

On behalf of BPXA, being of sound mind and under no compulsion or threats, or promises not otherwise contained in this document, knowing that I will be put under oath at the entry of plea hearing to tell the truth, I do hereby state BPXA's Agreement to and understanding of this Agreement as follows:

**A.**   BPXA wishes to enter a plea of guilty to Count 1 of the Information filed in this case in which BPXA is charged with a negligent discharge of a harmful quantity of oil to a water of the United States in violation of the Clean Water Act, 33 U.S.C. §§ 1319(c)(1), 1321(b)(3).

**B.**   BPXA's attorney has explained the charges to which BPXA is pleading guilty and the necessary elements, and the consequences of the guilty plea.

**C.**   BPXA is admitting that the allegations against BPXA in Count 1 of

PSC-MDL2179086372

the information and the factual basis for BPXA's plea are true.

**D.**     BPXA understands that by pleading guilty BPXA gives up and waives the following rights:

-- The right to plead not guilty or to persist in that plea if it has already been made;

-- The right to a speedy and public trial by a jury on the issue of guilt;

-- The right to object to the composition of the petit jury;

-- The right to be presumed innocent and not to suffer any criminal penalty unless and until BPXA's guilt is established beyond a reasonable doubt;

-- The right to be represented by a lawyer at trial and if necessary to have a lawyer appointed to represent BPXA at trial. BPXA understands it is not waiving the right to have counsel represent BPXA during the sentencing phase of the case;

-- The right to confront and cross examine witnesses against BPXA, and the right to subpoena witnesses to appear on BPXA's behalf.

**E.**     BPXA is fully aware that if BPXA were convicted after a trial and

BPXA PLEA AGREEMENT                         Page 23 of 28

PSC-MDL2179086373

sentence were imposed on BPXA thereafter, BPXA would have the right to appeal any aspect of the conviction and sentence. Knowing this, BPXA voluntarily waives the right to appeal its conviction and sentence, as described above. Furthermore, BPXA also knowingly and voluntarily agrees to waive the right under 18 U.S.C. § 3742 to appeal any aspect of the sentence imposed in this case, if the Court imposes a sentence within the parameters of this Agreement. Furthermore, BPXA knowingly and voluntarily waives the right to collaterally attack any aspect of the conviction, judgment or sentence, except for a challenge based upon ineffective assistance of counsel, based on information not now known by BPXA and which, in the exercise of due diligence, could not be known by BPXA by the time the Court imposes the sentence, which information affected either the guilty plea or the sentence imposed by the Court. BPXA is fully satisfied with the representation given by its attorneys.

BPXA has discussed all possible defenses to the charge with its attorney. BPXA's attorneys have investigated the case and followed up on any information and issues BPXA has raised to BPXA's satisfaction. BPXA's attorneys have taken the time to fully explain the legal and factual issues involved in BPXA's case to BPXA's satisfaction. BPXA and its attorneys have discussed how the United States Sentencing Commission Guidelines have a limited application in this case,

BPXA PLEA AGREEMENT                    Page 24 of 28

PSC-MDL2179086374

as well as the statutes applicable to BPXA's offense and any other factors that will affect the sentence calculation in this case.

     **F.**    BPXA further understands that if BPXA pleads guilty, there will not be a trial and that the Court will ask me under an oath to answer questions about this offense on behalf of BPXA. I understand that I may be prosecuted if I make false statements or give false answers.

     **G.**    BPXA understands that the Court has the ultimate discretion to either accept or reject this Agreement. BPXA understands that it will only be allowed to withdraw from this Agreement if the Court deviates from the sentencing Agreement made between the parties.

     **H.**    BPXA understands that anything that it discusses with its attorneys is privileged and confidential, and cannot be revealed without BPXA's permission. Knowing this, BPXA agrees that this document will be filed with the Court.

     **I.**    This document contains all of the Agreements made between BPXA and the United States regarding BPXA's plea. There are no other promises, assurances, or Agreements between BPXA, BPXA's attorneys, and the United States that have affected BPXA's decision to change its plea or to enter into this Agreement. If there were, I would so inform the Court. BPXA understands that if the Court finds that BPXA has materially breached this Agreement after notice and

PSC-MDL2179086375

opportunity to respond to the breach, the United States will be free to prosecute BPXA on all charges arising out of the investigation of this case and any charges not brought as a result of this Agreement.

     **J.**    I have read this Plea Agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this Agreement or to enter a plea on behalf of BPXA. BPXA enters into this Agreement knowingly and voluntarily. I therefore wish to enter a plea of guilty on behalf of BPXA to the information filed in this case in which BPXA is charged with the negligent discharge of a harmful quantity of oil to a water of the United States, in violation of the Clean Water Act, 33 U.S.C. §§ 1319(c)(1), 1321(b)(3).

//

//

//

[Signatures on the following pages.]

BPXA PLEA AGREEMENT                   Page 26 of 28

PSC-MDL2179086376

DATED: _Oct 24, 2007_                          _____

                                               JAMES T. WILK
                                               V.P. Chief of Staff, BPXA
                                               On behalf of the defendant BPXA


        As counsel for the defendant, I have discussed with BPXA the terms of this
Plea Agreement, have fully explained the charges to which BPXA is pleading
guilty and the necessary elements, all possible defenses, and the consequences of
this plea. Based on these discussions, I have no reason to doubt that the defendant
is knowingly and voluntarily entering into this Agreement and entering a plea of
guilty.


DATED: _____            _____

                                  CAROL E. DINKINS
                                  Attorney for BPXA
                                  Vinson & Elkins LLP


DATED: _Oce .24. 2007_            _____

                                  JEFFREY M. FELDMAN
                                  Attorney for BPXA
                                  Feldman Orlansky & Sanders


DATED: _____            _____

                                  MICHAEL J. GALLAGHER
                                  Attorney for BPXA
                                  Davis Graham & Stubbs LLP


        On behalf of the United States, the following accept BPXA's offer to plead
guilty under the terms of this Plea Agreement.

[Signatures continued on next page.]

BPXA PLEA AGREEMENT                    Page 27 of 28

PSC-MDL2179086377

DATED: _____          _____
                                    JAMES T. WILK
                                    V.P. Chief of Staff, BPXA
                                    On behalf of the defendant BPXA


        As counsel for the defendant, I have discussed with BPXA the terms of this
Plea Agreement, have fully explained the charges to which BPXA is pleading
guilty and the necessary elements, all possible defenses, and the consequences of
this plea. Based on these discussions, I have no reason to doubt that the defendant
is knowingly and voluntarily entering into this Agreement and entering a plea of
guilty.


DATED: *October 24, 2007*          *Carol E. Dinkins*
                                    CAROL E. DINKINS
                                    Attorney for BPXA
                                    Vinson & Elkins LLP


DATED: _____          _____
                                    JEFFREY M. FELDMAN
                                    Attorney for BPXA
                                    Feldman Orlansky & Sanders


DATED: _____          _____
                                    MICHAEL J. GALLAGHER
                                    Attorney for BPXA
                                    Davis Graham & Stubbs LLP


        On behalf of the United States, the following accept BPXA's offer to plead
guilty under the terms of this Plea Agreement.

        [Signatures continued on next page.]

BPXA PLEA AGREEMENT                    Page 27 of 28

PSC-MDL2179086378

DATED: _____          _____

                                  JAMES T. WILK
                                  V.P. Chief of Staff, BPXA
                                  On behalf of the defendant BPXA


        As counsel for the defendant, I have discussed with BPXA the terms of this
Plea Agreement, have fully explained the charges to which BPXA is pleading
guilty and the necessary elements, all possible defenses, and the consequences of
this plea.  Based on these discussions, I have no reason to doubt that the defendant
is knowingly and voluntarily entering into this Agreement and entering a plea of
guilty.


DATED: _____          _____

                                  CAROL E. DINKINS
                                  Attorney for BPXA
                                  Vinson & Elkins LLP


DATED: _____          _____

                                  JEFFREY M. FELDMAN
                                  Attorney for BPXA
                                  Feldman Orlansky & Sanders


DATED: _10/24/07_                 _____

                                  MICHAEL J. GALLAGHER
                                  Attorney for BPXA
                                  Davis Graham & Stubbs LLP

        On behalf of the United States, the following accept BPXA's offer to plead
guilty under the terms of this Plea Agreement.

[Signatures continued on next page.]

BPXA PLEA AGREEMENT                         Page 27 of 28

DATED: _10/25/07_

ANDREA T. STEWARD
Assistant U.S. Attorney
District of Alaska

DATED: _10/25/07_

DANIEL CHEYETTE
Special Assistant U.S. Attorney
District of Alaska

DATED: _10/25/07_

for J. RONALD SUTCLIFFE
Trial Attorney
Environmental Crimes Section
Department of Justice

DATED: _10/25/07_

for CHRIS J. COSTANTINI
Senior Trial Attorney
Environmental Crimes Section
Department of Justice

DATED: _10/25/07_

KAREN L. LOEFFLER
Chief, Criminal Division
District of Alaska

DATED: _10/25/07_

NELSON P. COHEN
United States Attorney
District of Alaska

BPXA PLEA AGREEMENT          Page 28 of 28

PSC-MDL2179086380