UNITED STATES DISTRICT COURT EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig
"Deepwater Horizon" in the Gulf
of Mexico, on April 20, 2010

This Pleading Relates To
- **10-4182** (*Alabama v. BP*)
- **10-4183** (*Alabama v. Transocean, et. al*)
- **13-2645** (*Alabama v. Anadarko & MOEX*)
- **13-2646** (*Alabama v. Transocean*)
- **13-2647** (*Alabama v. Halliburton*)
- **13-2813** (*Alabama v. BP*)

MDL No. 2179
SECTION: J

JUDGE BARBIER
MAGISTRATE SHUSHAN

THE STATE OF ALABAMA'S REPLY BRIEF
REGARDING SOVEREIGN IMMUNITY FROM THE "SET-OFF" CLAIMS
OF BP, TRANSOCEAN, AND HALLIBURTON

LUTHER J. STRANGE
*Attorney General*

COREY L. MAZE
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*

Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130
Phone: (334) 242-7300
Email: cmaze@ago.state.al.us

Attorneys for the State of Alabama

**TABLE OF CONTENTS**

**Introduction**: The Limited Question Presented .................................................................................. 1

**Argument**

I.   Defendants Fail to Establish that BP's Unpleaded Counterclaims Are Compulsory Recoupment Claims that Survive a Sovereign Immunity Challenge. ........................................................................ 2

    A.   Among Other Reasons, Defendants Cannot Meet the "Same Transaction or Occurrence" Test Because Alabama Disbursed BP's Grant Monies to Recoup Losses Distinct from those Losses at Issue in this Phase of Alabama's Case. .............. 2

    B.   BP Admits that it Has Not Pleaded a Mature Counterclaim for Recoupment. ............ 5

II.  A Ruling On Sovereign Immunity Is Required Before Depositions Commence, So that Depositions Are Properly Limited. ........................................................................................................................... 7

III. All Other Arguments Are Reserved for Post-Discovery Motions. ......................................................... 8

**Conclusion** ................................................................................................................................................ 8

**Certificate of Service** ............................................................................................................................... 9

**TABLE OF AUTHORITIES**

**Cases**

*National Liability & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825 (5th Cir. 2014) ............... 2
*Texas v. Caremark Inc.*, 584 F.3d 655 (5th Cir. 2009) ............................................................ 6, 7, 8
*Venable v. Louisiana Workers' Comp. Corp.*, 740 F.3d 937 (5th Cir. 2013) ............................. 2, 3

**Other Authorities**

*Moore's Federal Practice*, §13.13 ................................................................................................ 6

i

**THE STATE OF ALABAMA'S REPLY BRIEF
REGARDING SOVEREIGN IMMUNITY FROM "SET-OFF" CLAIMS**

### INTRODUCTION: THE LIMITED QUESTION PRESENTED

Since Alabama filed its motion to dismiss, BP has filed two briefs that limit the basis of its set-off counterclaims and credits to the following five grants:

- A $25 million block grant in May 2010 (BP Ex. 1);
- A $25 million block grant in June 2010 (BP Ex. 2);
- A $15 million grant to promote tourism in May 2010 (BP Ex. 3);
- A $16 million grant to promote tourism in March 2011 (BP Ex. 4); and,
- A $12 million grant to provide behavioral health and substance abuse services in August 2010 (BP Ex. 5).

*See* Rec. Doc. 13595 at 1-3 (opposition to Alabama's motion to compel); Rec. Doc. 13616 at 2-4, 13 (opposition to Alabama's motion to dismiss set-off, *i.e.* "BP Br."). Furthermore, Halliburton has stated that it has not and will not raise a set-off counterclaim; its "affirmative defenses" of set-off and recoupment are limited to application of BP's grants as a credit against Alabama's damages claims to prevent a double recovery for the same claims. *See* HESI Br. 2, 10. If these assertions are true and binding, then Alabama does not invoke sovereign immunity as a jurisdictional challenge to Defendants' use of these five grants as a set-off "credit."[1]

Consequently, the limited question before the Court is whether the Eleventh Amendment precludes Defendants from raising a set-off counterclaim against the State—particularly, a claim that Alabama violated the terms of one or more of the grants listed above. *See* BP Br. 4 ("Whether Alabama [has] violated the terms of the grants as to give rise to a counterclaim [can] only be determined through discovery.").

---

[1] As noted in Part III, Alabama reserves for future (post-discovery) motions all other arguments against the application of BP's grants as a defense or credit against the claims at issue in this phase of Alabama's case.

1

I. **Defendants Fail to Establish that BP's Unpleaded Counterclaims Are Compulsory Recoupment Claims that Survive a Sovereign Immunity Challenge.**

Reserving its additional, previous arguments, the State shows why Defendants' arguments regarding (a) the "same transaction or occurrence" test and (b) the maturity of BP's unpleaded counterclaim(s) fail to defeat Alabama's invocation of sovereign immunity.

    A. **Among Other Reasons, Defendants Cannot Meet the "Same Transaction or Occurrence" Test Because Alabama Disbursed BP's Grant Monies to Recoup Losses Distinct from those Losses at Issue in this Phase of Alabama's Case.**

Alabama disbursed BP's grant monies to mitigate certain costs and losses, and it pleaded the claims at issue to recoup *other* costs and losses that were not remunerated by BP's grant monies (or other funding). Defendants try to wedge these distinct transactions into the "same transaction or occurrence," thereby making a counterclaim compulsory, by misapplying the test.

    1. *The Proper Test*: BP and HESI contend that a counterclaim for violating the terms of a grant agreement necessarily arises from the same transaction or occurrence as the State's pleaded claims because these distinct claims share the same origin—*i.e.* the Spill and Alabama's lawsuit:

> [T]he spill gave rise to both Alabama's claims for damages and BP's potential defenses and claims based on the grants; [t]hose grants would not have occurred in the absence of the spill and Alabama's arguments that the spill caused economic losses.

BP Br. 10. This argument is flawed because it turns the "logical relationship test" for compulsory claims, which requires the "same operative facts serve[] as the basis of both claims," *National Liability & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825, 835 (5th Cir. 2014), into a "but-for" test. Not every counterclaim that shares a genesis with the Plaintiff's claim shares the "same operative facts"—*i.e.* the facts necessary to prove the claim. Relevant here, claims that arise out of post-incident efforts to settle or mitigate damages are based on a different set of operative facts than the facts necessary to prove the original tort, as demonstrated by the recent Fifth Circuit opinion, *Venable v. Louisiana Workers' Comp. Corp.*, 740 F.3d 937 (5th Cir. 2013).

2

2. *Settlement offer for the Claim <u>at Issue</u>*:  Plaintiff Venable suffered a heart attack while working on Defendant Hillcorp's drilling barge.  Venable sued Hillcorp for negligence, claiming that Hillcorp's delay in offering medical care caused him additional harm.  *Id.* at 939.  After the suit was filed, Plaintiff Venable, Defendant Hillcorp, and the barge's insurer, LWCC, participated in a settlement conference.  At this conference, Venable and Hillcorp tentatively agreed to settle the negligence claim for $350,000, and LWCC consented to the agreement.  *Id.* However, LWCC changed its mind and refused to sign the settlement agreement after learning that Venable likely needed a heart transplant.  *Id.*  So, Plaintiff Venable added a claim against Insurer LWCC to enforce its agreement to pay $350,000 for the original negligence claim.

The Fifth Circuit ruled that the District Court did not have jurisdiction over Venable's claim against LWCC to enforce the settlement agreement.  Relevant here, the Fifth Circuit rejected Venable's argument that supplemental jurisdiction existed because the breach of agreement claim formed part of the "same case or controversy" as the original negligence claim. *Id.* at 944.  Even though the $350,000 settlement agreement stemmed from Venable's heart attack and his corresponding negligence claim, the Court found that LWCC reneging on the settlement agreement did "not derive from the same nucleus of operative facts as [the] negligence claim," because the breach of agreement claim was "occasioned by [LWCC's] conduct during and after a settlement conference[, which] depends on facts that are completely different from those related to any torts committed by Hillcorp years before." *Id.*

The same is true here; a counterclaim that Alabama violated the terms of a post-spill grant does not share the same operative facts as the State's pleaded claims, even though none of these claims would have existed but-for the Spill.  Take the $12 million mental health grant, for example.  Generally speaking, to prove a counterclaim, BP would need to establish that (a) an

agreement existed between BP and the State; (b) that agreement required monies to be spent on behavioral health or substance abuse issues; and (c) the State spent those monies elsewhere, to BP's detriment.  Importantly, BP would *not* need to prove any facts about the Spill, or any facts about the quantum of lost taxes, lost fishing license fees, etcetera, to establish its counterclaim.  As importantly, the State need not prove any facts regarding the mental health grant to establish Defendants' liability for the State's claims for lost tax revenue, lost fishing license fees, etcetera.

      3. *Grant Payments for Claims <u>not at Issue</u>*:  Compared to *Venable*, BP's counterclaim is even further removed from "the same transaction or occurrence" because BP's grant monies were not offered to settle the claims presently being litigated; BP's grant monies were spent to alleviate costs and losses that have *not* been pleaded as claims—and, by agreement, cannot be.

      Three of the five grants specified how the monies must be spent:  $12 million was given to the Department of Mental Health "to address behavioral health and substance abuse services," and $31 million ($15m+$16m) was given to the Tourism Department "exclusively for the promotion of tourism."  BP Ex. 3 at 1, BP Ex. 4 at 1, BP Ex. 5 at 1.  In each of these grants, the State/Departments agreed not to file a claim for these losses and costs.  *Id.*  The State spent this $12 million for the stated purposes, and as agreed, the State is not bringing a claim for lost tourism promotion, nor are we pursuing a claim on behalf of the Department of Mental Health for behavioral health and substance abuse issues.

      As for the remaining grants, the May 2010 block grant provided $25 million "to pay or otherwise cover costs related to the Event," BP Ex. 1 at 1.  But, again, the State agreed not to later seek "the same costs paid from the $25 million payment." Exhibit M establishes that the entirety of the May 2010 block grant was distributed to local governments or councils.  The State has not, and cannot, file claims against BP on behalf of those local entities.

4

The June 2010 block grant also provided $25 million "to pay or otherwise cover costs related to the Event," BP Ex. 2 at 1, with an anticipation that "all or part of said Payment [would] fund the construction of the Dauphin Bay 'Katrina Cut' and the Perdido Pass projects." *Id*. As reflected in Exhibit M, the State used most of the $25 million for the Katrina Cut project, and the remainder was given to various local governments and State departments. As agreed, BP Ex. 2 at 1, the State has not filed a claim for any of "the same costs paid from the $25 million Payment." *See* Ex. N, O (declarations from DCNR and ADEM that their expenditures from this block grant are not subject to their departmental claims).[2]

In essence, the Parties' agreements created distinct sets of costs and losses: (1) Those remunerated by BP grant monies that are not subject to litigation and (2) those that have not been recouped and are subject to litigation. These distinct sets of costs and losses cannot share the same set of operative facts, and thus cannot make BP's counterclaim compulsory, because only the unpleaded costs and losses include the grant agreements in their core set of operative facts.

Finally, we note the irony that Alabama's agreements not to seek recoupment for costs covered by the grants are immediately preceded by BP's agreements not to use the grants as the basis for "an offset against any Damages," as BP is. *See* BP Exhibits 1 at 1; 2 at 1; 3 at 1; 4 at 1.

### B. BP Admits that it Has Not Pleaded a Mature Counterclaim for Recoupment.

Even if BP's unpleaded counterclaims could meet the "same transaction or occurrence" test, the following admission in BP's brief is fatal to their opposition: "discovery is needed to determine whether and when Alabama breached the terms of the grants to determine if any claims are mature." BP Br. 12.

---

[2] In addition to the attached declarations (Ex. I-J) and the State's response to Interrogatory #14 (Ex. H), the upcoming 30(b)(6) deposition on Defendant's Topic #16 will allow Defendants to question whether the State spent any of BP's grant monies to recoup the losses and costs at issue in this phase of Alabama's case.

5

A counterclaim against a State is barred by sovereign immunity unless it is a compulsory claim for recoupment. *See Texas v. Caremark Inc.*, 584 F.3d 655, 659-60 (5th Cir. 2009). To be compulsory, a counterclaim *must* have matured in time to be pleaded in the Defendant's answer. *See, e.g.,* Fed. R. Civ. P. 13(a)(1) ("A pleading must state as a counterclaim any claim that--at the time of its service--the pleader has against an opposing party"); *Moore's Federal Practice*, §13.13 ("In order to be mature for purposes of the compulsory counterclaim rule, the counterclaim must be completely vested at the time the pleader serves the responsive pleading, and not merely contingent.").

BP admits that has not filed a counterclaim against the State for violating the terms of its grants, and BP admits that it does not know if any such counterclaims are mature. Thus, BP has admitted (transitively) that it does not possess a mature counterclaim for recoupment that can survive a sovereign immunity challenge; thereby ending any argument against the State's motion.

Knowing this, BP asks the Court to indulge full-on discovery regarding the State's disbursement of grant monies, then allow it to file another answer (presumably in 2015) in case it discovers a counterclaim. *See* BP Br. 12. But Fifth Circuit law mandates a ruling on a State's invocation of sovereign immunity *before* discovery commences, to protect States from such fishing expeditions.[3] *See Caremark*, 584 F.3d at 659 ("the sovereign immunity issue must be resolved before further litigation (including discovery and motions for summary judgment) proceeds, so that the States are not subjected to litigation to which they have not consented"). As it stands, BP's unpleaded counterclaim cannot be deemed mature and thus fails the test for compulsory recoupment claims.

---

[3] BP had four years to plead a counterclaim against the State (if one existed) before we filed this motion to dismiss. BP filed its answer in 2011, and when given the chance in March 2014 to file a new answer before discovery began, BP instead chose to allow its original 2011 answer to serve as its answer. *See* Ex. P. BP's inaction should not be the basis for allowing discovery into an unpleaded, constitutionally-barred counterclaim.

**II.     A Ruling On Sovereign Immunity Is Required Before Depositions Commence, So that Depositions Are Properly Limited.**

Precluding counterclaims that the State violated the terms of a grant agreement is critical to properly limiting the scope of upcoming discovery, not just the trial. For proof, the Court simply need notice the order of BP's arguments (*i.e.* the effect on discovery, *then* the merits), and BP's primary argument (*i.e.* the Court can punt this issue past the close of discovery).

1. *Mandatory Ruling*: BP's argument that Alabama's motion is "premature" and that the Court can wait until discovery is complete before ruling upon it, *see* BP Br. 6, invites reversal. The Fifth Circuit made it clear in *Caremark* that postponing the ruling on a State's invocation of sovereign immunity until discovery ends is reversible error that is immediately appealable under the collateral order doctrine. *See Caremark*, 584 F.3d at 658.

2. *Why it Matters*: The Fifth Circuit remanded *Caremark* for an immediate ruling on sovereign immunity because failing to do so left the States "open to potentially intrusive discovery" on the potential counterclaim. *Id.* The same is true here.

As it stands now, how grant monies were spent to mitigate costs and losses on issues like behavioral health, increased substance abuse, and the Katrina Cut project are irrelevant because the State has not pleaded a claim for any of those costs or losses. But if the Court allows Defendants to pursue a potential counterclaim based on the improper disbursement of grant monies to mitigate *unpleaded* costs and losses, the State will have to expend a great deal of time responding to, and preparing for, these issues. Furthermore, discovery would be opened up beyond the 12 State departments and agencies that the Court ruled were relevant in this Phase, *see* Rec. Doc. 13149 at 1-2, and Defendants will likely seek a dozen or more deposition witnesses from these new departments (and elsewhere) regarding their expenditures of BP grant monies; witnesses that would be unnecessary if the counterclaims are properly and timely precluded.

### III. All Other Arguments Are Reserved for Post-Discovery Motions.

Contrary to BP's speculation, *see* BP Br. 5, Alabama limited its motion to a sovereign immunity challenge to Defendants' set-off credits and counterclaims because (a) a sovereign immunity challenge strikes at the Court's jurisdiction and (b) *Caremark* was limited to just this argument/defense. Per *Caremark*, the remainder of Alabama's arguments against Defendants' use of BP's grants as mitigation evidence, credits, and/or counterclaims is properly raised in post-discovery motions. *See Caremark*, 584 F.3d at 657-58, 660. Alabama reserves its right to raise all other defenses and arguments pursuant to the Court's scheduling order for motions for summary judgment, motions *in limine*, etcetera. *See* Ex. Q (Alabama's response to Defendants' contention Interrogatory #22, which requests disclosure of Alabama's set-off defenses).

#### CONCLUSION

The Court should enter an order that rules as follows:

1. Defendants are precluded from raising counterclaims arising from the State's grant agreements with BP because any such counterclaim violates the State's sovereign immunity; and,

2. All other arguments regarding Defendants' usage of BP's expenditures as a defense or credit will be addressed in post-discovery motions.

Respectfully submitted on November 12, 2014.

LUTHER J. STRANGE
*Attorney General*

/s/ Corey L. Maze
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*

Attorneys for the State of Alabama

8

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on November 12, 2014.

    /s/ Corey L. Maze
COREY L. MAZE
*Special Deputy Attorney General*