# EXHIBIT 1

**ESCROW AGREEMENT**

This Escrow Agreement, dated this ___ day of _____, 2014 (the "Escrow Agreement"), is entered into by and between Halliburton Energy Services, Inc., a Delaware corporation ("HESI"), the Plaintiffs Steering Committee in MDL 2179 on behalf of the members of a putative New Class (as defined in the Settlement Agreement referenced herein), and DHEPDS Class Counsel, on behalf of the DHEPDS Class (as defined in the Settlement Agreement referenced herein) (collectively, the foregoing are referred to as the Settling Parties) and UBS AG, , as escrow agent ("Escrow Agent").

All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the "HESI Punitive Damages and Assigned Claims Settlement Agreement" dated September 2, 2014 (the "SA"), a copy of which is attached hereto as Exhibit A, or as set forth in any version of the SA subsequently amended by the Court or the parties to the SA.

RECITALS

A. As described in the SA, the Plaintiffs have asserted certain legal claims relating to the *Deepwater Horizon* Incident against HESI and Halliburton Company, a Delaware corporation, including all subsidiaries, all product service lines (e.g., Sperry Drilling Services), predecessors, successors, assigns, and HESI Affiliates (collectively, the "HESI Entities").

B. Plaintiffs contend that they would prevail in such litigation. The HESI Entities dispute and deny the Plaintiffs' claims, have raised various affirmative, legal and other defenses, and contend that they would prevail in such litigation.

C. After careful consideration, the Parties to the SA have concluded that it is in their own best interests to compromise and settle certain of the aforementioned claims and, accordingly, have submitted the SA in a case known as *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, pending before the United States District Court for the Eastern District of Louisiana, to fully, finally, and forever settle and release the Released Claims against the HESI Entities.

D. The SA provides for the creation of the Settlement Fund, subject to the supervision of the Court, for the receipt and distribution of the Aggregate Payment and the Common Benefit Fee and Costs Award in accordance with the terms of the SA.

E. Pursuant to the SA, the Settlement Fund is intended to qualify as (i) a "qualified settlement fund" within the meaning of U.S. Treasury Regulation Section 1.468B-l, *et seq*., and (ii) a qualified settlement fund or other analogous fund described in any other applicable local, state, and/or foreign law.

F. It is the intent of the Settling Parties and the Escrow Agent that this Escrow Agreement provide for the administration, maintenance, and operation of the Settlement Fund as a qualified settlement fund through mechanisms that provide that the Escrow Agent will distribute the Aggregate Payment and the Common Benefit Fee and Costs Award in strict

1

compliance with all orders of the Court, and the Court has approved the creation of the Settlement Fund and of this Escrow Agreement on accordance therewith.

In consideration of the promises and agreements of the parties hereto and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

## ARTICLE 1
## ESCROW PROPERTY

Section 1.1.    <u>Delivery and Receipt of Escrow Property</u>.  Pursuant to Sections 9(a)(ii) and 23(d) of the SA, HESI shall deliver to the Escrow Agent for the establishment of the Settlement Fund the Aggregate Payment and the Common Benefit Fee and Costs Award at such times and in such amounts as specified in the SA (such amounts collectively, to the extent delivered to and held by the Escrow Agent, the "Escrow Property").  The Escrow Agent agrees to hold, distribute, and account for the Escrow Property in accordance with the terms of this Escrow Agreement, the SA, and any related orders of the Court.  The Settlement Fund is hereby established to resolve or satisfy claims in accordance with the SA, and subject to Section 1.4 of the Escrow Agreement, disbursements from the Settlement Fund will be used to satisfy such claims.

Section 1.2.    <u>Accounts</u>.

(a)    *Segregated Account*.  The Settlement Fund shall be a segregated account and shall be subject to the continuing jurisdiction of the Court until such time as all funds therein have been disbursed pursuant to this Escrow Agreement.  No Escrow Property shall be subject to any claims of any creditors of any party to the SA, any counsel for such party, the Escrow Agent, or any putative or actual class member or claimant who may be a beneficiary of the SA.

(b)    *Sub-Funds*.  In accordance with Sections 9(b) and 23(c) of the SA, the Escrow Agent shall establish separate sub-fund accounts for (a) the New Class Sub-Fund, (b) the DHEPDS Sub-Fund, and (c) the Common Benefit Attorneys' Fee and Cost Account, and the Escrow Agent shall separately track income and taxes with respect to each such separate account.  Until the Allocation of the Aggregate Payment is approved by the Court as between the New Class Sub-Fund and the DHEPDS Sub-Fund, there will be only two separate accounts/sub-funds: an Aggregate Payment Account and a Common Benefit Attorneys' Fee and Cost Account.  Additionally, the Escrow Agent may create, from time to time, such general or subsidiary accounts and reserves as the Escrow Agent may deem necessary, prudent, or useful in order to provide for the maintenance and required payments of the Settlement Fund.

2

Section 1.3.   Investments.

   (a)   The Escrow Agent is directed and authorized to deposit, transfer, hold and invest the Escrow Property and any investment income thereon solely in accordance with the provisions of Section 9(a)(v) of the SA and this Escrow Agreement. Any investment earnings and income on the Escrow Property shall become part of the Escrow Property. Pursuant to Section 9(a)(v) of the SA, the Escrow Agent shall invest the Escrow Property in: (1) United States Treasuries; (2) United States government money market funds having a AAA/Aaa rating awarded by at least two of the three major rating agencies (Standard & Poor's, Moody's or Fitch); (3) Interest bearing deposits at federally insured depository institutions that are at all times rated A+/A1 or higher by Standard & Poor's and Moody's provided such depository institution rated A+/A1 or higher; or (4) as agreed by the Parties to the SA, and shall collect and reinvest all interest accrued thereon, except that any residual cash balances of less than $100,000.00 may be invested in money market mutual funds comprised exclusively of investments secured by the full faith and credit of the United States.

   (b)   The Escrow Agent is directed and agrees to retain The UBS Corporate Cash Management Group within UBS Financial Services, Inc. ("UBS-FSI") as the investment manager of the Escrow Property (hereinafter the "Investment Manager") under the Discretionary Corporate Cash Management Account Agreement (attached hereto as Exhibit D) (the "CCM Account Agreement"). The Escrow Agent shall execute all necessary documents with UBS-FSI to complete this direction.

   (c)   The Escrow Agent is hereby authorized and directed to instruct the Investment Manager to sell or redeem any such investments as the Escrow Agent deems necessary to make any payments or distributions required under this Escrow Agreement, subject to the approval of the Court. The Investment Manager shall sell or redeem any such investments in accordance with the CCM Account Agreement. The Escrow Agent shall have no responsibility or liability for any loss which may result from any investment or sale of investment made by the Investment Manager pursuant to this Escrow Agreement. The Settling Parties acknowledge that the Escrow Agent is not providing investment supervision, recommendations, or advice.

Section 1.4.   Disbursements. The Escrow Agent shall disburse the Escrow Property solely as directed by the Court; provided that disbursement of tax related payments described in Section 1.7(c) shall be governed by Section 1.7(c); provided further that, upon the termination of the Settlement Fund pursuant to Section 1.8, the Escrow Property shall be disbursed as specified in Section 1.8. If any disbursement includes a structured settlement transaction through the purchase of an annuity with a life insurance company, the Escrow Agent shall execute all necessary documents to effect such transaction which may include a disbursement agreement and non-qualified assignment agreement.

3

Section 1.5.　Administrative Costs.　Except as provided by order of the Court, all Administrative Costs disbursed pursuant to Sections 1.4, 1.7(c), 1.8, and 3.4 shall be treated as paid from the Aggregate Payment and shall be allocated between the New Class Sub-Fund and DHEPDS Sub-Fund in accordance with Sections 6(b), 8(c), and 9(b) of the SA.

Section 1.6.　Security Procedure For Funds Transfers.　The Escrow Agent shall confirm each funds transfer from or to HESI by means of the security procedure selected by HESI and communicated to the Escrow Agent through the executed certificate attached as Exhibit B-1. The Escrow Agent shall confirm each funds transfer instruction from the Settling Parties by means of the security procedure selected by the Settling Parties and communicated to the Escrow Agent through the executed certificate attached as Exhibit B-2.　Exhibit B1 may be revised or rescinded only by a writing signed by an authorized representative of HESI.  Exhibit B-2 may be revised or rescinded only by a writing signed by an authorized representative of both of the Settling Parties, as applicable.  Such revisions or rescissions shall be effective only after actual receipt and following such period of time as may be necessary to afford the Escrow Agent a reasonable opportunity to act on them.  If a revised Exhibit B-1 or a rescission of an existing Exhibit B-1 is delivered to the Escrow Agent by an entity that is a successor-in-interest to HESI, such document shall be accompanied by additional documentation satisfactory to the Escrow Agent showing that such entity has succeeded to the rights and responsibilities of HESI under this Escrow Agreement.

The Settling Parties understand that the Escrow Agent's inability to receive or confirm funds transfer instructions pursuant to the security procedure selected may result in a delay in accomplishing such funds transfer, and agrees that the Escrow Agent shall not be liable for any loss caused by any such delay.

Section 1.7.　Tax Matters.

　　　(a)　*Qualified Settlement Fund.*　The Settlement Fund, including all accounts and subaccounts thereof, shall be treated as (i) a "qualified settlement fund" within the meaning of U.S. Treasury Regulation Section 1.468B-l, *et seq.*, and (ii) a qualified settlement fund or other analogous fund described in any other applicable local, state, and/or foreign law (as described in (i) or (ii), a "QSF").  The Escrow Agent shall be the administrator of the QSF pursuant to U.S. Treasury Regulation Section 1.468B-2(k)(3) and any other applicable law.  The Escrow Agent shall cooperate and take all steps necessary for establishing and treating the Settlement Fund as a QSF and shall not take a position (and, to the extent allowed by applicable law, shall not permit an agent to take a position) in any filing or before any tax authority inconsistent with such treatment.  Notwithstanding any effort or failure to treat the Settlement Fund as a QSF, all taxes (including, but not limited to, any federal, state, or local taxes, and any estimated taxes, interest, or penalties) on the Settlement Fund or with respect to the Escrow Property shall be timely paid out of the Escrow Property as described in Section 1.7(c) below, and HESI shall not be responsible for the payment of any such taxes.

    (b)    *Relation Back Election*.  The Escrow Agent agrees to the treatment of the Settlement Fund as a QSF from the earliest possible date and agrees to make, jointly with HESI, a valid "relation back" election as described in U.S. Treasury Regulation Section 1.468B-1(j)(2) with respect to the Settlement Fund and any analogous election under other applicable law.

    (c)    *Tax Returns and Payment of Taxes*.

        i.    Subject to the following provisions of this Section 1.7(c), at the direction of the Settling Parties, the Escrow Agent shall engage an accounting firm specified by the Settling Parties to timely prepare all income tax and other tax returns and statements required of the Settlement Fund or of the Escrow Agent with respect to the Settlement Fund under the applicable provisions of the Internal Revenue Code of 1986, as amended, and any other applicable local, state, and/or foreign law.

        ii.    The Escrow Agent shall cause the tax return preparer to prepare and timely file the relevant tax return and (notwithstanding Sections 1.4 and 1.8) is hereby authorized and directed to timely pay from the Escrow Property the tax return preparation fees and the taxes due in connection with such tax return.

        iii.    The Escrow Agent shall submit to the Court and to the Settling Parties copies of all filed tax returns and all paid invoices or statements for tax preparation fees.

Section 1.8.   <u>Termination</u>.

    (a)    *Termination of Settlement Fund*.  The Settlement Fund shall terminate only at such time as specified by order of the Court.

    (b)    *Effect of Termination*.  Upon termination of the Settlement Fund, the Escrow Agent shall disburse from the Escrow Property all amounts (including Administrative Costs) as directed by the Court and shall thereafter disburse all remaining Escrow Property pursuant to further order(s) of the Court as contemplated in the SA, at which time this Escrow Agreement shall terminate.

ARTICLE 2
DUTIES OF THE ESCROW AGENT

Section 2.1.   <u>Scope of Responsibility</u>.  The Escrow Agent shall have only those duties as are specifically and expressly provided in this Escrow Agreement, which shall be deemed purely ministerial in nature, and no other duties shall be implied.  The Escrow Agent shall timely account to the Court and the Settling Parties regarding the Settlement Fund in the manner and at such times as the Court may require, and shall comply with reasonable requests for information from the Settling Parties.  Under no circumstance will the Escrow Agent be deemed to be a

fiduciary to any person under this Escrow Agreement.  The Escrow Agent will not be responsible or liable for the failure of the Settling Parties or any other person to perform in accordance with this Escrow Agreement.  Except as expressly provided herein with respect to the SA, the Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document other than this Escrow Agreement, whether or not an original or a copy of such agreement has been provided to the Escrow Agent; and the Escrow Agent shall have no duty to know or inquire as to the performance or nonperformance of any provision of any such agreement, instrument, or document.

Section 2.2.     <u>Attorneys and Agents</u>.  The Escrow Agent shall be entitled to rely on and shall not be liable for any action taken or omitted to be taken by the Escrow Agent in reasonable reliance on the advice of counsel or other professionals retained or consulted by the Escrow Agent.  The Escrow Agent shall be reimbursed as set forth in Section 3.1 for any and all compensation (fees, expenses and other costs) paid and/or reimbursed to such counsel and/or professionals.  The Escrow Agent may perform any and all of its duties through its agents, representatives, attorneys, custodians, and/or nominees.

Section 2.3.     <u>Reliance</u>.  The Escrow Agent shall not be liable for any action taken or not taken by it in accordance with the direction or consent of the Court.  The Escrow Agent shall not be liable for acting or refraining from acting upon any notice, request, consent, direction, requisition, certificate, order, affidavit, letter, or other paper or document believed by it to be genuine and correct and to have been signed or sent by the proper person or persons, without further inquiry into the person's or persons' authority.  Concurrent with the execution of this Escrow Agreement, the Settling Parties shall deliver to the Escrow Agent Exhibit B-1 and Exhibit B-2, respectively, which contain authorized signer designations in Part I thereof.

Section 2.4.     <u>Right Not Duty Undertaken</u>.  The permissive rights of the Escrow Agent to do things enumerated in this Escrow Agreement shall not be construed as duties.

Section 2.5.     <u>No Financial Obligation</u>.  No provision of this Escrow Agreement shall require the Escrow Agent to risk or advance its own funds or otherwise incur any financial liability or potential financial liability in the performance of its duties or the exercise of its rights under this Escrow Agreement.

Section 2.6.     <u>Payment of Taxes</u>.  To the extent that the Escrow Agent becomes liable for the payment of taxes, including, but not limited to, withholding taxes derived from the investment of the Escrow Property or any payment made under this Escrow Agreement, the Escrow Agent may pay such taxes.  The Escrow Agent shall withhold from any payment of monies held by it under this Escrow Agreement such amount as the Escrow Agent estimates to be sufficient to provide for the payment of any taxes owing and not yet paid, and shall use the sum withheld for that purpose.  The Escrow Agent shall be indemnified, defended and held harmless against any and all loss, liability, cost, damage and expense for taxes and for any penalties or interest in respect of taxes in the manner provided in Section 3.1 of this Escrow Agreement.

ARTICLE 3
PROVISIONS CONCERNING THE ESCROW AGENT

Section 3.1.   Indemnification.  The Escrow Agent shall be indemnified, defended, and held harmless from and against any and all loss, liability, cost, damage and expense, including, without limitation, any tax, late payment fee, interest, or penalty on or with respect to the Escrow Property and the investment thereof, any reasonable and necessary Court-approved attorneys' fees and expenses, or any other reasonable and necessary Court-approved professional fees and expenses, which the Escrow Agent may suffer or incur by reason of any action, claim or proceeding brought against the Escrow Agent, arising out of or relating in any way to this Escrow Agreement or any transaction to which this Escrow Agreement relates, unless such loss, liability, cost, damage or expense shall have been finally adjudicated to have been directly caused by the willful misconduct or gross negligence of the Escrow Agent.  Any indemnification under this Section 3.1 shall be made solely from the Escrow Property upon a determination by the Court that indemnification is proper under the circumstances.  This is an *in rem* indemnity. The Escrow Agent shall not be indemnified for any damages directly resulting from or caused by the willful misconduct or gross negligence of the Escrow Agent.  The provisions of this Section 3.1 shall survive the resignation or removal of the Escrow Agent.  The amount of any indemnification must be first approved by the Court after giving adequate advance notice to the Settling Parties of the nature and amount of such indemnification sought.

Section 3.2.   Limitation of Liability.  THE ESCROW AGENT SHALL NOT BE LIABLE, DIRECTLY OR INDIRECTLY, FOR ANY (I) DAMAGES, LOSSES OR EXPENSES ARISING OUT OF THE SERVICES PROVIDED HEREUNDER, OTHER THAN DAMAGES, LOSSES OR EXPENSES WHICH HAVE BEEN FINALLY ADJUDICATED TO HAVE DIRECTLY RESULTED FROM THE ESCROW AGENT'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, OR (II) SPECIAL, INDIRECT, PUNITIVE, OR CONSEQUENTIAL DAMAGES OR LOSSES OF ANY KIND WHATSOEVER (INCLUDING WITHOUT LIMITATION LOST PROFITS), EVEN IF THE ESCROW AGENT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSSES OR DAMAGES AND REGARDLESS OF THE FORM OF ACTION.

Section 3.3.   Resignation or Removal.  The Escrow Agent may resign by furnishing written notice of its resignation to the Court, and the Court may remove the Escrow Agent for any reason by furnishing to the Escrow Agent written notice of its removal.  The Escrow Agent shall be entitled to payment of all of its fees and expenses through the date of removal.  Such resignation or removal, as the case may be, in the absence of a Court order to the contrary, shall be effective thirty (30) days after the delivery of such notice or upon the earlier appointment of a successor, and the Escrow Agent's sole responsibility thereafter shall be to safely keep the Escrow Property and to deliver the same to a successor escrow agent as shall be appointed by the Court.

Section 3.4.   Compensation.  The Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached hereto as Exhibit C, which compensation shall be paid from the Escrow Property as directed by the Court.  The fee agreed upon for the services rendered hereunder is intended as full compensation for the Escrow Agent's services as

contemplated by this Escrow Agreement; provided, however, that in the event that the conditions for the disbursement of funds under this Escrow Agreement are not fulfilled, or the Escrow Agent renders any service not contemplated in this Escrow Agreement, or there is any assignment of interest in the subject matter of this Escrow Agreement, or any material modification hereof, or if any material controversy arises hereunder, or the Escrow Agent is made a party to any litigation pertaining to this Escrow Agreement or the subject matter hereof, then the Escrow Agent shall be compensated for such extraordinary services and reimbursed for all costs and expenses, including reasonable attorneys' fees and expenses, occasioned by any such delay, controversy, litigation or event. If any amount due to the Escrow Agent hereunder is not paid within thirty (30) days of the date due, the Escrow Agent in its sole discretion may charge interest on such amount up to the highest rate permitted by applicable law.

Section 3.5.    <u>Merger or Consolidation</u>.  Any corporation or association into which the Escrow Agent may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer all or substantially all of its corporate escrow business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which the Escrow Agent is a party, shall be and become the successor escrow agent under this Escrow Agreement and shall have and succeed to the rights, powers, duties, immunities and privileges as its predecessor, without the execution or filing of any instrument or paper or the performance of any further act.

Section 3.6.    <u>Attachment of Escrow Property; Compliance with Legal Orders</u>.  In the event that any Escrow Property shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the Escrow Property, the Escrow Agent shall promptly, electronically, by fax, and by overnight mail, transmit a copy and notify the Court and the Settling Parties of any such order and related pleading. In absence of further direction from the Court, the Escrow Agent is expressly authorized to respond as it deems appropriate or necessary in good faith to comply with all writs, orders or decrees so entered or issued, or which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction; provided that, notwithstanding the foregoing, the Escrow Agent will comply with all directions and orders of the Court as defined herein.  In the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to the Settling Parties or any person or entity, should, by reason of such compliance notwithstanding, such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

Section 3.7     <u>Force Majeure</u>.  The Escrow Agent shall not be responsible or liable for any failure or delay in the performance of its obligation under this Escrow Agreement arising out of or caused, directly or indirectly, by circumstances beyond its reasonable control, including, without limitation, acts of God; earthquakes; fire; flood; wars; acts of terrorism; civil or military disturbances; sabotage; epidemic; riots; interruptions, loss or malfunctions of utilities or communications services; accidents; labor disputes; acts of civil or military authority or governmental action; it being understood that the Escrow Agent shall use commercially reasonable efforts which are consistent with accepted practices in the banking industry to resume performance as soon as reasonably practicable under the circumstances.

ARTICLE 4
MISCELLANEOUS

Section 4.1. <u>Successors and Assigns</u>. This Escrow Agreement shall be binding on and inure to the benefit of the Settling Parties and the Escrow Agent and their respective successors and permitted assigns. Subject to directions and orders of the Court, no other persons shall have any rights under this Escrow Agreement. No assignment of the interest of any party to this Escrow Agreement shall be binding unless and until written notice of such assignment shall be delivered to the other party(ies) and shall require the prior written consent of the other party(ies) (such consent not to be unreasonably withheld).

Section 4.2. <u>Escheat</u>. The parties hereto are aware that under applicable state law, property which is presumed abandoned may under certain circumstances escheat to the applicable state. The Escrow Agent shall have no liability to the Settling Parties, their respective legal representatives, successors and assigns, or any other party, should any or all of the Escrow Property escheat by operation of law.

Section 4.3. <u>Notices</u>. All notices and other communications required under this Escrow Agreement shall be in writing and shall be given by certified mail, return receipt requested, and by FedEx overnight and via email at the addresses for the recipient parties as set forth below. Any such notice or other communication shall be deemed given five (5) business days after the date such notice is deposited in the United States mail. It shall be the responsibility of the parties to notify each other in writing of any name or address changes.

    If to HESI:

    Robb L. Voyles
    Executive Vice President and General Counsel
    Halliburton Company
    3000 N. Sam Houston Parkway East
    Houston, TX 77032
    robb.voyles@halliburton.com

    If to the Escrow Agent:

    UBS AG, New York Branch
    1285 Avenue of the Americas
    New York, New York 10019
    Facsimile: (212) 881-6813
    Attn: Felicia Gomez
    E-mail: Felicia.Gomez@ubs.com

    and

UBS AG, New York Branch
1285 Avenue of the Americas
New York, New York  10019
Attn:  Legal Affairs
Facsimile:  (212) 882-5900

<u>If to DHEPDS Class Counsel and/or putative New Class Counsel</u>:
Stephen J. Herman,
Herman, Herman & Katz
820 O'Keefe Avenue
New Orleans, LA 70113
Sherman@hhklawfirm.com

and

James P. Roy
Domengeaux Wright Roy & Edwards
556 Jefferson Street
Lafayette, LA 70502
jimr@wrightroy.com

Section 4.4.    <u>Governing Law</u>.  This Escrow Agreement shall be governed by and construed in accordance with New York law.

Section 4.5.    <u>Entire Agreement</u>.  This Escrow Agreement and the exhibits hereto set forth the entire agreement and understanding of the parties hereto related to the Escrow Property.

Section 4.6.    <u>Amendment</u>.  This Escrow Agreement may be amended, modified, superseded, rescinded, or canceled only by a written instrument executed by the parties hereto.

Section 4.7.    <u>Waivers</u>.  The failure of any party to this Escrow Agreement at any time or times to require performance of any provision under this Escrow Agreement shall in no manner affect the right at a later time to enforce the same performance.  A waiver by any party to this Escrow Agreement of any such condition or breach of any term, covenant, representation, or warranty contained in this Escrow Agreement, in any one or more instances, shall neither be construed as a further or continuing waiver of any such condition or breach nor a waiver of any other condition or breach of any other term, covenant, representation, or warranty contained in this Escrow Agreement.

Section 4.8.    <u>Headings</u>.  Section headings of this Escrow Agreement have been inserted for convenience of reference only and shall in no way restrict, expand, or otherwise modify any of the terms or provisions of this Escrow Agreement.

Section 4.9.    <u>Severability</u>.  If any provision of this Escrow Agreement shall be determined to be illegal or unenforceable, the remaining provisions of this Escrow Agreement shall remain in full force and effect, and this Escrow Agreement shall be construed as if the illegal or unenforceable

2528589 v1-24010/0002 PLEADINGS

provision were not a part hereof, so long as the remaining provisions of this Escrow Agreement shall be sufficient to carry out the overall intent of the parties hereto as expressed herein.

Section 4.10.  Further Assurances.  Each party hereto shall perform all other acts and execute and deliver all other documents as may be necessary or appropriate to carry out the purposes and intent of this Escrow Agreement.

Section 4.11.  Dispute Resolution; SA Controls.  Any conflict, disagreement or dispute between the parties hereto or otherwise involving the Escrow Agent concerning the meaning or application of any provision hereunder shall be resolved by the Court; provided that, if it is determined by the Court that there is an inconsistency between this Escrow Agreement and the SA, the SA shall control.  For all purposes of this Escrow Agreement "Court" shall mean the United States District Court for the Eastern District of Louisiana, Judge Carl J. Barbier, presiding, in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179.

IN WITNESS WHEREOF, this Escrow Agreement has been duly executed as of the date first written above.

        Halliburton Energy Services, Inc.,
        a Delaware corporation

By: _____
    Robb L. Voyles
    Executive Vice President
    & General Counsel

DHEPDS Class Counsel and
Putative New Class Counsel

By:_____
    James P. Roy

By:_____
    Stephen J. Herman

UBS AG, as Escrow Agent

By:_____

Name:_____

Title:_____