# EXHIBIT 1-D

**UBS**

UBS Financial Services Inc.

Account Number _____

Branch/FA _____

# Corporate Cash Management Account Agreement (Discretionary)
## Account Type: Brokerage

Full Account Title:

This Corporate Cash Management Account Agreement (Discretionary) (collectively with any applicable exhibits or amendments hereto, the "Agreement") and the Firm's "Information Statement for Corporate Cash Management Discretionary Accounts" (the "Disclosure Statement") set forth the terms and arrangements by and between UBS Financial Services Inc., a registered broker-dealer (the "Firm"), and the party signing this Agreement as Client where indicated below ("Client") in connection with the establishment of an account (the "Account") for Client at the Firm. Client seeks to establish the Account as a cash management brokerage account for purposes of investing certain of Client's cash resources, subject to the terms and conditions set forth in this Agreement. **This is not an investment advisory account and the Firm is not acting as an investment adviser.**

1) **Appointment as Custodian.** Client may appoint the Firm as custodian by indicating its agreement, in the space provided on the signature page below, to the terms and conditions set forth on **Exhibit A** below. If Client does not appoint the Firm as custodian, the Account will be a DVP/RVP account. If the Account is a DVP/RVP account, Client represents and warrants that all assets over which the Firm is granted discretion pursuant to this Agreement and which are maintained or custodied at the third-party custodian will be segregated from any other assets of Client maintained or held at such custodian. Client further represents and warrants that no third-party has been granted authority to trade, effect transactions for or otherwise manage or invest the Account or the segregated assets maintained or custodied at such custodian, and that Client agrees to provide the Firm with ongoing access to the custodian's records reflecting such assets through an on-line or electronic account access system.

2) **Account Information.** Client agrees promptly to furnish to the Firm all information the Firm reasonably may request to render the services described herein. Client represents that all information supplied by it in connection with the Account is accurate and complete and agrees to notify the Firm of any material change in such information.

3) **Client Status.** Client represents and warrants that it has total assets of at least $50 million and therefore the Account is an institutional account under NASD Rule 3110(c).

4) **Authority/Designation of Authorized Persons.** Client must provide the Firm with acceptable account authorizing document(s) identifying those person(s) authorized to act on Client's behalf with respect to the Account. Client represents and warrants that unless its authorizing document(s) expressly state otherwise, such authorized persons may delegate their authority to such employees and agents of Client as they see fit. Any expansion of or modification to the list of person(s) so authorized must be provided to the Firm in writing in accordance with Section 16 below.

5) **Discretionary Account.**

   a. **Investment Policy.** Client agrees and acknowledges that it is solely responsible for setting the investment objectives and policies for the Account. Accordingly, Client will provide to the Firm a written investment policy (the "Investment Policy") set by Client identifying any and all investment restrictions and requirements applicable to the Account. The Firm reserves the right, in its sole discretion, to reject Client's Investment Policy, in which case the Firm shall not exercise discretion over the Account until such time as it accepts an Investment Policy from Client. Client warrants and represents that the Investment Policy was established and set by Client and is Client's sole and independent determination of the appropriate policies and restrictions applicable to the Account in light of Client's cash management needs and policies. In accordance with applicable regulatory requirements, the Firm's discretionary corporate cash management services are not available to investors that allow: (i) investment of Account assets in instruments other than fixed-income and similar instruments; (ii) investment of Account assets in any instrument bearing a short-term credit rating lower than A1/P1 (or equivalent), a long-term credit rating lower than A2/A (or equivalent), or with a final maturity of more than three years (subject to the provisions of Section 5(f) below); or (iii) the Account's weighted average maturity to exceed eighteen months (subject to the provisions of Section 5(f) below). All securities in the Account must have a credit rating, and with respect to any splitrated security, the lower rating will govern for all purposes hereunder. Client agrees and acknowledges that notwithstanding any contrary provision in Client's Investment Policy or other documentation or information supplied by Client in connection with the Account, the Firm's discretionary authority over the Account at all times will be exercised in compliance with all of the above required minimum parameters. The Investment Policy shall have no applicability whatsoever to any other account or relationship between Client and the Firm or any affiliate of the Firm, and Client warrants and represents that under no circumstances will it claim or contend otherwise.

   b. **Grant of Discretionary Trading Authority for Cash Management.** Client hereby grants to the Firm discretionary authority with respect to the investment and reinvestment of the assets of the Account in such instruments as authorized by Client pursuant to the Investment Policy. The Firm, in its sole discretion and in conformance with the Investment Policy, without prior consultation with or notification of Client, may take any and all action necessary and appropriate for the trading of the Account, including, without limitation, execution (which may include placing orders with other affiliated and non-affiliated broker-dealers), settlement, custody

003190614



**UBS Financial Services Inc.**

Account Number _____

Branch/FA _____

(if a custodial account) and reporting. **Client agrees and acknowledges that the parties' applicable obligations and rights in connection with the Account are set forth in this Agreement exclusively and not in the Investment Policy. Therefore, any rights or obligations that the Investment Policy seeks to confer or impose upon the parties, or any other requirements that the Investment Policy otherwise contemplates beyond those expressly contained herein, do not apply.** The registered representatives of the Firm identified by Client on the signature page below (each a "Financial Advisor") will have primary responsibility at the Firm for the day-to-day exercise of the discretion granted herein. The Firm may transfer this responsibility to another Financial Advisor(s) at any time without first notifying Client or obtaining Client's consent, in which event the Firm will so notify Client as soon as reasonably practicable. The foregoing does not authorize the Firm or the Financial Advisors on a discretionary basis to withdraw or transfer funds or other assets out of the Account other than for purposes of trading securities in the Account in conformance with the terms and conditions herein.

c. **Appointment of Attorney-in-Fact.** Client hereby makes, constitutes and appoints the Firm as Client's true and lawful attorney-in-fact and agent, with full power and authority to prepare, execute, sign, acknowledge and file in the name of, and with full power of substitution for, Client, such notices, instruments, certificates or other documents as may be necessary or desirable in connection with the activities described in Section 5(b) above.

d. **Modifications to Investment Policy.** Any change, modification or addition to the Investment Policy must be communicated to the Firm in writing in accordance with Section 16 below, and shall become effective for purposes hereunder upon the actual receipt by Client of the Firm's written acknowledgement and acceptance of such change, modification or addition. The Firm reserves the right, in its sole discretion, to reject any such change, modification or addition, in which case the Firm will notify Client in writing of such rejection. An instruction to the Firm from Client to limit the Account to terms more restrictive than those in the Investment Policy, may be deemed by the Firm, in its sole discretion, to not constitute a modification requiring written notice and acceptance hereunder.

e. **Conformance with Investment Policy.** Client agrees to give the Firm prompt written notice if Client deems any investments made or actions taken on behalf of the Account to be out of conformance with the Investment Policy. An investment's conformance with the Investment Policy shall be determined on the date of purchase only and an investment shall not become non-conforming as a result of changes in value, characteristics or status of the investment following purchase. If a non-conforming investment is made in the Account or if an otherwise conforming investment no longer satisfies the criteria set forth in the Investment Policy, the Firm shall have the discretion, pursuant to Section 5(b) above, to address such situation. Client agrees and acknowledges that if the Account or any asset therein is outside of the minimum required parameters identified in Section 5(a) above, the Firm must and promptly will, pursuant to the discretion granted to it herein, take action reasonably necessary to bring the Account back into conformance with such required parameters. Client agrees and acknowledges that neither the Firm nor any Financial Advisor shall be liable to Client for non-conformance with the Investment Policy that results from the Firm or a Financial Advisor following instructions from Client, including but not limited to any non-conformance with an applicable weighted average maturity or concentration parameter resulting from Client's instruction to liquidate or transfer Account assets. The Firm will diversify the Account in accordance with the Investment Policy and the discretion granted herein but shall have no responsibility with respect to the diversification of Client's assets not subject to this Agreement.

f. **Maturity for Securities with a Put or Reset Feature and Pre-Refunded Bonds.** With respect to any security that has a put or reset feature (i.e., a security with a longer-term final maturity, or no stated maturity, whose yield or dividend rate resets periodically), Client instructs the Firm to use the next put or reset date, and not final maturity, as such security's maturity for all purposes. With respect to any pre-refunded bond, Client instructs the Firm to use the pre-refunded date of the security as such security's maturity for all purposes.

g. **Client Orders.** Client may submit non-discretionary orders for trades in the Account. Client understands that the Firm may, in its sole discretion, with or without prior notice, prohibit or restrict trading of securities or substitution of securities in the Account and refuse to enter into any transactions with or for Client (for example, orders for the Account outside of the regulatory parameters set forth in Section 5(a) above).

h. **Brokerage Account/No Fiduciary Relationship.** The Account is a brokerage account and the Firm is acting as a broker-dealer. The Account is not an investment advisory account and the Investment Advisers Act of 1940 does not apply. The parties do not intend to enter into a fiduciary relationship and nothing herein shall be construed to create any such relationship.

6) **Risk Acknowledgement.** Client has read, understands and agrees to the terms and provisions set forth in the Disclosure Statement. The Disclosure Statement includes important standard terms and conditions applicable to the Account and the relationship between the parties, including how the Firm will be compensated. The Disclosure Statement also describes certain risks associated with the Account. Client accepts the risks and obligations of trading in the securities described therein and in any other securities authorized by Client, including the state of any secondary market.

7) **Firm Account Statements and Confirmations.** The Firm: (a) will furnish to Client a Firm-issued monthly or quarterly Account statement; (b) will furnish to Client Firm-issued trade confirmations; and (c) may furnish to Client electronic access to Account activity via an on-line account access system (collectively, the "Firm Records"). These are the records of the Firm upon which Client may rely. Client has 10 business days from the date of transmittal or posting to raise any objections to any Firm Record. Such objections

003190614



must be in writing and addressed to the Branch Office Manager of the Branch Office where the Account is maintained.

8) **Financial Advisor Reports.** The Financial Advisor(s) may create additional reports concerning the Account, including for example, reports of returns, interest accruals and portfolio composition and characteristics ("Financial Advisor Reports"). Client agrees and acknowledges that the Financial Advisor Reports are provided for information purposes only pending Client's receipt of Firm Records, and that neither the Firm nor its agents are responsible for any errors or omissions in any Financial Advisor Reports or for any information provided to the Firm or to Client by Client's third-party custodian, and that by accepting any Financial Advisor Report, Client agrees to and acknowledges the terms and conditions set forth in the disclaimer section of such Report.

9) **Principal Trading.** Client agrees and acknowledges that the Firm may, in connection with executing transactions in the Account under this Agreement, act as a principal in such transactions and not as Client's agent. The Firm's acting as principal may pose a potential conflict of interest, given that the Firm is either buying from or selling securities directly to Client for or from the Firm's own account. In executing such transactions, the Firm may earn a trading profit or incur a trading loss, in addition to the customary sales charge, depending upon market conditions or the Firm's ability to remarket its securities. Any such gain or loss is borne by the Firm and is separate from any transaction charges or fees otherwise applicable pursuant to the "Compensation" section of the Disclosure Statement.

10) **Hold Harmless and Indemnification.** Client shall indemnify and hold harmless the Firm and its affiliates, directors, officers, shareholders, employees, associated persons and agents, including without limitation any money market fund or other applicable sweep instrument (each a "UBS Party"), on a current basis as incurred, for any loss, liability, cost, damage or expense, including reasonable attorneys' fees and costs (collectively, "Loss"), that arises out of or in connection with this Agreement or the Account, provided such Loss does not directly result from the Firm's material breach of its obligations hereunder, gross negligence or willful malfeasance. Under no circumstances shall any UBS Party be liable for any consequential, indirect, incidental, special, exemplary or punitive damages, or lost profits, arising from this Agreement or the provision of services hereunder.

11) **Termination.** Either party may terminate this Agreement: (a) upon 30 days written notice for any reason; or (b) immediately upon written notice in the event of a material breach of the Agreement or if otherwise necessary to protect that party's interests. Further, Client may terminate the discretionary authority granted under Section 5 hereof immediately upon written notice to the Firm. When the Firm receives Client's notice of termination of the Agreement or of termination of the discretion granted under Section 5 hereof, or sends Client such a notice, Sections 5(a)–5(e) of the Agreement will immediately and automatically terminate and the Account will be non-discretionary until effective termination of the Agreement. As a non-discretionary Account, Client must approve each trade in the Account prior to execution. Client agrees and acknowledges that those persons identified by it as authorized to act on its behalf with respect to the Account are sufficiently knowledgeable and experienced in financial and business matters to identify and independently evaluate the potential risks of transactions in the Account. Moreover, Client will bear sole responsibility for monitoring the Account and the assets in it, will bear sole responsibility for the Account's conformance with the Investment Policy. The notice of termination (and the termination) will not affect any liabilities or obligations incurred or arising at any time prior to the Firm's transmittal or receipt of the notice (or prior to termination, as the case may be). Sections 1, 7–11 and 13–16 hereof, and any provisions which by their terms are designed to survive termination, will survive termination. Upon termination, neither the Firm nor any Financial Advisor will have any further obligation to Client with respect to the Account or the assets therein, except as set forth in any Agreement provision that survives termination or as required by Applicable Law.

12) **Representations and Acknowledgements.** Client represents and warrants that Client has all requisite power and authority to execute this Agreement and grant the authority contained herein. Client has taken all action necessary for the authorization, execution and delivery of this Agreement, and the person executing this Agreement is duly authorized by Client to do so.

13) **Electronic Recording of Conversations.** Client agrees and acknowledges that the Firm may, from time to time, monitor and/or electronically record conversations between Client and the Firm's employees or agents for the purpose of quality assurance, employee training, and the mutual protection of Client and the Firm. Any such recordings may be offered by the Firm or by Client as evidence in any litigation or other proceeding relating to this Agreement or the Account.

14) **Miscellaneous.** This Agreement, its enforcement and the relationship between Client and the Firm shall be governed by the laws of the State of New York, without giving effect to the choice of law or conflict of laws provisions thereof. This Agreement, including any Exhibits hereto, constitutes the entire agreement between the parties with respect to the subject matter hereof, supersedes all prior agreements, whether written or oral, between the parties with respect to the subject matter hereof and may not be amended or modified without the express written agreement of the parties. The Firm's failure to insist at any time upon strict compliance with any of the terms of this Agreement shall not constitute a waiver of any of its rights or of any of Client's obligations. The parties agree that if any provision of this Agreement is held to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect, and shall be construed (to the maximum extent possible) in such a way as to give effect to the intent of the invalid, void, or unenforceable provision in question. This Agreement shall become effective upon written approval by the Firm in accordance with its internal policies. This Agreement shall survive the dissolution of Client. All transactions in the Account shall be subject to the constitution, rules, regulations, custom and usage of the exchange or market and its clearing agency, if any, on which such transactions are executed, all applicable state and federal laws and the relevant rules and regulations as may be in effect at the time of any transaction of all federal, state and self-regulatory agencies (collectively, "Applicable Law").

003190614



**UBS Financial Services Inc.**

Account Number _____

Branch/FA _____

15) **Dispute Resolution.**
The parties agree that any actions or proceedings with respect to any controversy arising out of or related to this Agreement shall be litigated by bench trial before the United States District Court for the Eastern District of Louisiana, Judge Carl J. Barbier, presiding.

The parties hereby submit to jurisdiction in the foregoing forum and waive any rights they may have to transfer or change the venue of any litigation brought in any such forum. Client consents to service of process by certified mail to the Account's address of record.
**The parties hereby irrevocably waive their rights to a jury trial.**

16) **Notices.** Except as otherwise provided herein, any notice required or permitted to be given under this Agreement shall be deemed to be properly given upon receipt. All notices to the Firm hereunder must be sent in writing to (receipt by the Firm means receipt by both of the following recipients):

Original:   **UBS Financial Services Inc.
Attn: {Client's Financial Advisor}
{Street/City/State indicated on Client's most recent account statement}**

Copy:   Corporate Cash Management Services
UBS Financial Services Inc.
800 Harbor Blvd - 3rd Floor
Weehawken, NJ 07086

**EXHIBIT A**
**Additional Terms, Conditions and Agreements Applicable to Custodial Corporate Cash Management Accounts at UBS Financial Services Inc.**

Terms used but not specifically defined in this Exhibit A are used, to the extent defined therein, as defined in the Agreement and, if not defined in the Agreement, as defined in the Uniform Commercial Code of the State of New York as amended from time-to-time (the "UCC").

The Firm shall hold the assets of Client that from time-to-time are credited to the Account (which is a securities account as defined under the UCC) as financial assets, and the Firm shall have all rights of a custodian and of a securities intermediary under Applicable Law and industry custom. For purposes of this Exhibit A only, the term "Account" shall mean the Account as defined in the Agreement, as well as any other account that Client maintains at the Firm (i) that is subject to a Corporate Cash Management Account Agreement or (ii) for which a Financial Advisor (or any successor thereto) is broker-of-record. As security for the payment of all liabilities or indebtedness incurred in connection with any securities transactions settled on Client's behalf in the Account or in connection with the Firm's reasonable and customary fees applicable to the Account, Client hereby grants to the Firm, and agrees to take such further actions as are reasonably necessary to create, perfect or protect, a first priority security interest in and lien upon the Account and any and all securities, money, bonds, instruments, commercial paper, certificates of deposit, other financial assets or investment property, contracts and any other assets now or hereafter held in or credited to the Account (collectively, the "Account Property"). In enforcing the Firm's security interest, the Firm shall have the discretion to determine the amount, order and manner of the Account Property to be sold, transferred or liquidated and the application of the proceeds thereof to the obligations hereby secured, and shall have all the rights and remedies available to a secured party under the UCC. Without the Firm's prior written consent, Client will not cause or allow any of the Account Property to be or become subject to any liens, claims, security interests or encumbrances of any nature other than the Firm's security interest therein.

All financial assets or other property credited to the Account, to the extent applicable, shall be registered in the Firm's name, indorsed to the Firm or in blank, or credited to another securities account maintained in the name of the Firm. Certain assets are or may be indicated on the Account statement or other Firm Records as appearing for informational purposes only and (i) have not been accepted by the Firm for credit to the Account, and (ii) do not constitute or create securities entitlements with respect to such financial assets or the accounts to which they may be credited.

The Firm may satisfy any and all liabilities or indebtedness incurred in connection with any securities transactions settled on Client's behalf in the Account or in connection with the Firm's reasonable and customary fees applicable to the Account, from the Account Property. The Firm may sell any or all of the Account Property, or require Client to deposit additional funds or eligible securities whenever in the Firm's discretion, it considers such action necessary to secure payment for liabilities or indebtedness incurred in connection with any securities transactions settled on Client's behalf in the Account or to secure payment of the Firm's reasonable and customary fees applicable to the Account. Although the Firm will endeavor to provide Client with notice prior to taking such action, it reserves the right to make any such sale without notice. Any such sales may be made at the Firm's discretion, exercised in compliance with Applicable Law, on any exchange or other market where such business is usually transacted, or at public auction or private sale, and the Firm may be the purchaser for its own account. The Firm shall not be responsible for losses incurred by Client if the Firm takes any such action. No demands, calls or notices by the Firm shall constitute a waiver of the Firm's right to take any action set forth above without notice.

**Client's UBS Financial Services Inc. Financial Advisor Designation (Client must identify the Financial Advisors to whom discretionary authority is granted, pursuant to Section 5(b) above, here):**

1. Paul Tashima
2. Louis Paster
3. Greg Glyman

003190614



✣ UBS

**UBS Financial Services Inc.**

Account Number _____

Branch/FA _____

**W-9 Form Certification.** I certify as Client by signing below, or in my representative capacity for Client by signing below, and under penalties of perjury that: (1) the following is Client's correct taxpayer identification number:_____ (or Client is waiting for a number to be issued to Client), and (2) Client is not subject to backup withholding because: (a) Client is exempt from backup withholding, or (b) Client has not been notified by the Internal Revenue Service ("IRS") that Client is subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified Client that Client is no longer subject to backup withholding, and (3) Client is a U.S. person (including a U.S. resident alien), and (4) I am exempt from Foreign Account Tax Compliance Act (FATCA) reporting.

**Certification Instruction:** Client understands that Client must strike out item (2) above if Client has been notified by the IRS that Client is subject to backup withholding because Client failed to report all interest or dividends on Client's tax return. The Internal Revenue Service does not require Client's consent to any provision of this document other than the certifications required to avoid backup withholding.

Acknowledged and agreed this _____ day of _____ , _____

Client's Name: _____

By: _____

Name: _____

Title: _____

**Optional Client Elections:** Client agrees and acknowledges that by the initials of its authorized representative below, it adopts Exhibit A, and that the terms and conditions of such Exhibit are hereby incorporated into this Agreement.

_____ Initials

**FOR INTERNAL USE ONLY**
**Approved and accepted:**

| Financial Advisor's Signature | Financial Advisor's Name | Date |
| Additional Financial Advisor's Signature | Additional Financial Advisor's Name | Date |
| Additional Financial Advisor's Signature | Additional Financial Advisor's Name | Date |
| Branch Office Manager Signature | Branch Office Manager's Name | Date |

003190614

