**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | : | **MDL NO. 2179** |
| | : | **SECTION: J** |
| **This Document Relates to:** | : | **JUDGE BARBIER** |
| ***Civ. No.* 10-4536** | : | **MAG. JUDGE SHUSHAN** |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**CLEAN WATER ACT – PENALTY PHASE**

**MEMORANDUM IN SUPPORT OF MOTION BY THE UNITED STATES SEEKING A LEGAL RULING REGARDING THE APPLICABLE STATUTORY MAXIMUM REGULATION ($4,300 PER BARREL)**

Table of Contents

I. Introduction ........................................................................................................ 1

II. $4,300/bbl is the Penalty Maximum Most Consistent with the Letter and Spirit of the Inflation Adjustment Act. ........................................................................................................ 3

A. Legal Background: Inflation Adjustment Act Calls for a Four-Step Process..................... 3

B. The $4,300/bbl Number is Consistent with the Inflation Adjustment Act's Requirements. 6

1. The First Round of Adjustments: Both EPA and USCG Increased by10%.................... 6

2. The Second Round of Adjustments: Both EPA and USCG Correctly Applied the Four-Step Process, but EPA Adjusted the Number Later in Time, So Got a Higher Number. ........................................................................................................ 7

3. The Third Round: Coast Guard did Not Follow the Four-Step Process Correctly; EPA Did........................................................................................................ 9

III. BP's "Fair Notice" Defense Is Meritless. ............................................................ 12

IV. Conclusion. ........................................................................................................ 15

## I. Introduction

In the Phase One "Findings of Fact and Conclusions of Law," (Rec. Doc. 13381-1), the Court stated:

> The statutory maximum in the case of gross negligence or willful misconduct is $3,000. 33 U.S.C. § 1321(b)(7)(D). One federal regulation increased this amount to $4,000. A different regulation increased it to $4,300. 40 C.F.R. § 19.4; 33 C.F.R. § 27.3. The Court does not decide at this time which regulation applies.

*Id.* at 114, n. 164. By this motion, the United States asks the Court to decide that the $4,300 per barrel regulation applies. 40 C.F.R. § 19.4.

The two regulations that increased the original penalty maximum in the CWA -- $3,000 per barrel ("$3,000/bbl") -- did so under the Inflation Adjustment Act,[1] which requires each Federal agency to review the statutory civil penalties that it can seek, and to issue regulations adjusting those penalties for inflation at least every four years. Pub. L. No. 104-134, § 31001(s)(1), 110 Stat. at 373. The purpose of these adjustments is to, *inter alia*, "maintain the deterrent effect of civil monetary penalties and promote compliance with the law." Pub. L. No. 101-410, § 2(b)(2), 104 Stat. 1321-373.

Section 311(b) of the CWA vests both EPA and the Coast Guard with authority to seek penalties under the CWA. 33 U.S.C. § 1321(b)(6), (b)(8) (referring to the "Administrator" and the "Secretary," each of which is defined. 33 U.S.C. § 1251(d) (Administrator is EPA) and 1321(b)(6)(A) (Secretary is the Coast Guard). Accordingly, both agencies had duties under the Inflation Adjustment Act to adjust the maximum penalty under Section 311(b), yielding the two

[1] Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890, 891-92 (codified at 28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (codified at 28 U.S.C. § 2461 note) (hereinafter collectively referred to as the "Inflation Adjustment Act").

regulations cited in the Court's Findings: the Coast Guard's regulation increasing the per-barrel penalty for gross negligence to $4,000, 33 C.F.R. § 27.3 and the EPA regulation increasing it to $4,300. 40 C.F.R. § 19.4. Why are these numbers different? In short, the $4,000/bbl promulgated at 33 C.F.R. § 27.3 does not secure the full adjustment for inflation provided for under the Inflation Adjustment Act due to two errors made by the Coast Guard when promulgating that number in its 2009 rulemaking. Meanwhile, EPA's promulgation of $4,300/bbl, 40 C.F.R. § 19.4, does not contain those errors.

The Coast Guard's most significant error in the 2009 rulemaking was its failure to properly account for inflation. To arrive at $4,000/bbl, the Coast Guard used the rate of inflation between June 2008 and June 2003 (the preceding year when the civil penalty was *reviewed* for inflation). The rate of inflation that should have been used, however, is the rate between June 2008 and June 1997 (the last year the civil penalty *actually increased* for inflation). Accounting for the additional six years of inflation would have resulted in an increase in the maximum civil penalty to at least $4,300/bbl and would have been in keeping with the Inflation Adjustment Act.[2]

This is a judicial action, rather than an administrative one, and is brought by the United States as the plaintiff, without limitation to its constituent instrumentalities, including either EPA or the Coast Guard. BP admits these points. *See* Answer (Rec. Doc. 1858, Answer to U.S. Complaint Para. 3, adopting U.S. reference to Plaintiff in the Complaint as "the United States") and Answer to Complaint Para. 4, acknowledging that "Plaintiff seeks penalties for each barrel of oil discharged into the Gulf of Mexico"). The Court not only is free to apply, but must apply,

[2] The Coast Guard also erred in the 2009 rulemaking by misapplying the Inflation Adjustment Act's rounding rule. This is discussed in more detail below.

the regulation that best implements the applicable law in this case. Both regulations were promulgated by an agency with authority to do so, but only one of them correctly applied the Inflation Adjustment Act and captured the full measure of adjustment called for under that Act. As a matter of law, the $4,300/bbl maximum set out at 40 C.F.R. § 19.4 is the controlling number in this judicial case brought by the United States.[3]

This motion presents a question of law, and may be granted under Rule 7(b), 12(f), 16 or 56, Fed. R. Civ. P.

## II. $4,300/bbl is the Penalty Maximum Most Consistent with the Letter and Spirit of the Inflation Adjustment Act.

The Coast Guard's regulation includes error and so is less consistent with the Inflation Adjustment Act than the regulation promulgated by EPA. Because EPA's, extant, equally applicable regulation comports with both the letter and spirit of the Inflation Adjustment Act, the Court should apply the EPA regulation. It is worth noting that BP has previously asked this Court to rely on EPA's interpretation of Section 311(b) (in the context of settlements).[4] In other words, when it suited BP, it was happy to have the Court look to EPA's policy, so there should be no problem looking to EPA's regulation on this topic.

### A. Legal Background: Inflation Adjustment Act Calls for a Four-Step Process

Under Section 4 of the Inflation Adjustment Act, as amended, each Federal agency is required to issue regulations adjusting for inflation the statutory civil monetary penalties that can

[3] Of course, the entire point of the Penalty Phase is for the Court to decide what amount the defendants will *actually* pay, not to exceed this maximum per-barrel number. Thus, the question of the maximum dollar amount is relevant in the Penalty Phase.

[4] Specifically, BP asked the Court to consider EPA's "Civil Penalty Policy for Section 311(b)(3) and Section 311(j) of the CWA," Aug. 1998, a policy for settling Section 311(b) claims. *See* BPXP's Memorandum in Support of Motion to Strike the Expert Report of Walter H. Cantrell and Renewed Motion *In Limine* to Exclude Evidence Relating to Unrelated Prior Incidents," Doc. 13475-1, at 13-14.

be imposed under the laws administered by that agency, and to examine their penalties for additional inflation adjustments at least once every 4 years thereafter. Pub. L. 104-134, § 31001(s)(1), 110 Stat. at 1321-373. The purpose of these adjustments is to, *inter alia*, "maintain the deterrent effect of civil monetary penalties and promote compliance with the law." Pub. L. No. 101-410, § 2(b)(2), 104 Stat. at 890. *See also* United States General Accounting Office, *Civil Penalties: Agencies Unable to Fully Adjust Penalties for Inflation Under Current Law*, GAO-03-409 (Mar. 2003), at 4-5 (hereinafter "GAO Penalty Inflation Report") (Exhibit 2). The Inflation Adjustment Act addressed a "longstanding failure of federal law to prescribe inflation-based adjustments" in civil penalties. *See* James Ming Chen, *Inflation-Based Adjustments in Federal Civil Monetary Penalties* (Nov. 2012) (report to the Administrative Conference of the United States), at 3 (the "ACUS Penalty Inflation Report") (Exhibit 3).[5]

With the 1996 amendments to the Inflation Adjustment Act, Congress sought to remedy its finding that "the impact of many civil monetary penalties has been and is diminished due to the effect of inflation." Pub. L. No. 101-410, § 2(a)(2), 104 Stat. at 890.

The Inflation Adjustment Act imposes fundamentally ministerial and non-discretionary procedures for federal agencies to follow when making required penalty adjustments. Section 4 of the Act required each federal agency to complete the first inflation adjustments to the penalties within its jurisdiction by 1996. Pub. L. No. 104-134, § 31001(s)(1)(A), 110 Stat. at 1321-373. Section 5(a) of the Act prescribes that the civil penalty adjustment for inflation "shall

---

[5] The Administrative Conference of the United States largely adopted the report. 78 Fed. Reg. 2939, 2943-45 (Jan. 12, 2013).

be determined" by the "cost-of-living adjustment,"[6] which is further defined by reference to the Consumer Price Index ("CPI").[7] Pub. L. No. 101-410 § 5, 104 Stat. at 897-92. Section 5 also specifies what has been described as an "elaborate process" for "rounding" out any increases determined under the Act's inflation adjustment provisions.[8] *See* Exhibit 3, ACUS Penalty Inflation Report, at 6. In addition, the Act specifies that the initial adjustment of a civil penalty pursuant to the Act "may not exceed 10 percent of such penalty." Pub. L. No. 104-134, § 31001(s)(2), 110 Stat. at 1321-373.

Section 4 of the Act requires each Federal agency to adjust for inflation, at least once every 4 years after the initial adjustment, the maximum civil monetary penalty that can be imposed pursuant to the agency's statutes. Pub. L. No. 101-410, §4104, 104 Stat. at 891. Just as for the initial penalty adjustment, pursuant to Section 5(a) of the Act, all later adjustments are "determined by increasing the maximum civil monetary penalty . . . by the cost-of-living adjustment." Under the Act's "rounding" provisions, any increase will be rounded to the nearest "multiple of $1,000 in the case of penalties greater than $1,000 but less than or equal to

---

[6] Section 5(b) of the Inflation Adjustment Act defines the "cost-of-living-adjustment" as "the percentage (if any) for each civil monetary penalty by which (1) the Consumer Price Index for the month of June of the calendar year preceding the adjustment, exceeds (2) the Consumer Price Index for the month of June of the calendar year in which the amount of such civil monetary penalty was last set or adjusted pursuant to law." Pub. L .No. 104-410 § 5(b), 104 Stat. at 891-92.

[7] Section 3 of the Inflation Adjustment Act defines "Consumer Price Index" to mean "the Consumer Price Index for all-urban consumers published by the Department of Labor." Pub. L .No. 104-410 § 5(b), 104 Stat. at 891. The Consumer Price Index for all-urban consumers is published on a monthly basis by the Bureau of Labor Statistics. *See* http://www.bls.gov/cpi/. (last visited November 12, 2014. Exhibit 4 includes the excerpts of a recent report that sets out the historical CPI-U numbers at Pages 69-71.

[8] Section 5(a) prescribes that "[a]ny increase determined under this subsection shall be rounded to the nearest . . . (2) multiple of $100 in the case of penalties greater than $100 but less than or equal to $1,000; (3) multiple of $1,000 in the case of penalties greater than $1,000 but less than or equal to $10,000. . . ."

$10,000"; that rule applies to 33 U.S.C. § 1321(b)(7)(D)'s original penalty maximum of $3,000/bbl.

Thus, the Inflation Adjustment Act calls for a four-step process. *First*, the cost-of-living adjustment ("COLA") is determined. *Second*, the "raw inflation" amount is calculated. *Third*, the Act's "rounding rule" is applied to the raw inflation amount. *Fourth*, the rounded inflation amount, if any, is added to the current penalty amount. This methodology is described in detail at 78 Fed. Reg. at 66643-45 (Nov. 6, 2013). *See also* Exhibit 1 for a flow chart of the four steps and a detailed set of the inputs used. However, please note that these calculations involve nothing more that the rote application of arithmetic; there is no sophisticated economics involved.

**B. The $4,300/bbl Number is Consistent with the Inflation Adjustment Act's Requirements.**

EPA and the Coast Guard both updated their civil penalty numbers three times prior to the *Deepwater Horizon* blowout. Exhibit 1 includes a chart listing the various rulemakings, including the calculations. The correct inflation-adjusted amount of the penalty set forth in 33 U.S.C. § 321(b)(7)(D) at the time of the violation is $4,300 per barrel as provided in EPA's third adjustment regulations at 40 C.F.R. § 19.4. That number is consistent with the Inflation Adjustment Act's requirements because EPA correctly followed the methodology set forth in the Act. Because of the Coast Guard's erroneous calculation in its third round of penalty adjustment for the Clean Water Act, $4,000/bbl understates the increase in penalty maximum available under the Inflation Adjustment Act.

**1. The First Round of Adjustments: Both EPA and USCG Increased by 10%.**

Because Title 33 U.S.C. § 1321(b)(7)(D) originally set a maximum penalty of $3,000/bbl and had never previously been adjusted for inflation, EPA's first penalty adjustment in 1996 was

capped by the Inflation Adjustment Act[9] to 10 percent above the statutory penalty amount, or $300. See 61 Fed. Reg. at 69360 (Dec. 31, 1996, effective January 30, 1997). Accordingly, the first adjustment to the $3,000/bbl penalty was to increase the statutory maximum to $3,300/bbl.

Like EPA, the Coast Guard's initial adjustment of the maximum civil penalty in 1997 was capped by the Act to 10 percent above the statutory penalty amount, or $300. *See* 62 Fed. Reg. 16695 (April 8, 1997). Accordingly, the maximum penalty increased from $3,000.00/bbl to $3,300.00/bbl.

### 2. The Second Round of Adjustments: Both EPA and USCG Correctly Applied the Four-Step Process, but EPA Adjusted the Number Later in Time, So Got a Higher Number.

The Coast Guard initiated its second round of adjustments in December 2003. *See* 68 Fed. Reg. 74189 (Dec. 23, 2003). Correctly using the four-step process under the Inflation Act, the Coast Guard determined the COLA, calculated the raw inflation increase, rounded the raw inflation increase, and then added the rounded inflation amount to the then-current civil penalty to reach the new maximum penalty. The COLA was determined to be an increase of 12.23%[10] or the difference between the CPI for June 2002 (the year preceding the adjustment) and the CPI for June 1997 (the year the penalty was last adjusted). To calculate the raw inflation increase, the Coast Guard multiplied the COLA of 12.23% by the then-current $3,300/bbl civil penalty,

---

[9] As noted above, the Act provides that "[t]he first adjustment of a civil monetary penalty made pursuant to the amendment . . . may not exceed 10 percent of such penalty." Pub. L. No. 104-134, § 31001(s)(2), 110 Stat. at 1321-373.

[10] The formula to determine the COLA, expressed as a percentage, is as follows: (CPI in year preceding adjustment) minus (CPI in year of last adjustment) divided by (CPI in year of last adjustment) times 100. See 69 Fed. Reg. at 7121-22 (Feb. 13, 2004). As applied in the 2003 penalty inflation rule, this is {(179.9-160.3) /160.3} * 100 = 12.23%. (Alternatively, one can simply divide 179.90/160.30 = 1.1223, and then the numbers to the right of the decimal become the percentage increase, just by removing the "1" and adding a decimal).

yielding a raw increase of $403.59. Under the Act's rounding rule set forth in Section 5(a)(3), $403.59 was rounded to the nearest multiple of $1,000, which is $0. No inflation increase was thus added back to the existing civil penalty and it remained unchanged at $3,300/bbl.

A year later, EPA performed its second penalty inflation adjustments in 2004, but also followed the four-step process mandated by the Act. 69 Fed. Reg. 7121 (Feb. 13, 2004) (effective March 15, 2004). Pursuant to this methodology, EPA determined the COLA in its second penalty inflation rule in 2004 based on the percentage by which the CPI for all-urban consumers for the month of June of the calendar year preceding the date of the adjustment exceeded the CPI for the month of June of the calendar year in which the penalty was last set or adjusted. The CPI for June 2003 (the year preceding the adjustment) was 183.7, and the CPI for June 1996 (the year in which the penalty was last adjusted) was 156.7. The difference in the CPI between 1996 and 2003, or the COLA, is an increase of 17.23 percent.[11] The second step, to calculate the raw inflation increase, EPA multiplied the COLA of 17.23 percent by the then-current civil penalty amount ($3,300/bbl), which yielded a raw increase of $568.59. For the third step, EPA applied the Act's rounding rule to this raw inflation increase value. As provided in Section 5(a)(3), any increase is to be rounded to the nearest "multiple of $1,000 in the case of penalties greater than $1,000 but less than or equal to $10,000." As applied to the then-current $3,300/bbl penalty, the raw inflation increase of $568.59 is rounded to the nearest multiple of $1,000, to arrive at the rounded inflation increase of $1,000. Fourth, EPA added the $1,000 rounded inflation increase to the then-current $3,300 maximum penalty amount for an inflation-adjusted maximum of $4,300.

---

[11] As applied in the 2004 penalty inflation rule, this is {(183.7 - 156.7) / 156.7} * 100 = 17.23%. *See* 69 Fed. Reg. at 7121-22.

Thus, the Coast Guard and EPA calculated different penalties, despite using the same four-step process, because the agencies made their inflation adjustments at different times. Given that the purpose is to adjust for inflation, it should be no surprise that the adjustment that took place later in time yielded the higher number.

### 3. The Third Round: Coast Guard did Not Follow the Four-Step Process Correctly; EPA Did.

In 2008, EPA undertook its third penalty inflation rule review. 73 Fed. Reg. 75340 (Dec. 11, 2008) (effective January 12, 2009), corrected at 74 Fed. Reg. 626 (Jan. 7, 2009). Using the same methodology, EPA determined the COLA or percentage by which the CPI for the month of June of the calendar year preceding the adjustment (2007) exceeded the CPI for the month of June of the calendar year in which the penalty was last adjusted (2004) to be 9.83 percent.[12] Second, EPA calculated the raw inflation increase by multiplying the COLA (9.83 percent) by the then-current civil penalty amount of $4,300/bbl, which yielded a raw inflation increase of $422.69. Third, EPA applied the Act's rounding rule to the raw inflation increase. Here, the $422.69 raw inflation amount is not the nearest multiple of $1,000, so in the 2008 penalty inflation rule the $4,300/bbl penalty was not rounded up but remained at $4,300/bbl. Therefore, the fourth step was not applicable to this penalty amount because there was no rounded inflation increase to add to the then-current penalty amount. Accordingly, the inflation-adjusted amount of

[12] The CPI for June 2007 was 208.352, and the CPI for June 2004 was 189.7. Applying the formula in note 10, *supra*, the COLA is {(208.352 - 189.7) / 189.7} * 100 = 9.83%. *See* 73 Fed. Reg. at 75340.

the penalty set forth in 33 U.S.C. § 1321(b)(7)(D) at the time of the violation is correctly calculated at $4,300/bbl, and is consistent with the Inflation Adjustment Act's requirements.[13]

It was not until 2009 that the Coast Guard undertook its third round of review. *See* 74 Fed. Reg. 68150. One would thus expect that this later-in-time review would yield a number equal to or higher than EPA's 2008 number. But that did not happen, because the Coast Guard erred in its calculation.

In this third penalty inflation adjustment, the Coast Guard departed from the process for adjusting for inflation. This time, the Coast Guard determined the COLA, calculated the penalty amount after inflation, and then rounded that after-inflation amount to reach the new maximum penalty. *See id.* at 68,151. But, for all of its civil penalties, the Coast Guard determined only one COLA, an increase of 19.12%[14] or the difference between the CPI for June 2008 (the year preceding the adjustment) and the CPI for June 2003 (the year all its penalties were last *considered* for increase). *Id.* Then, to calculate the penalty amount after inflation, the Coast Guard multiplied the COLA of 1.1912 by the then-current $3,300/bbl civil penalty, yielding an after-inflation amount of $3,930.96. *Id.* Attempting to apply the Act's rounding rule set forth in Section 5(a)(3), $3,930.96 was rounded to the nearest possible multiple of $1,000, which is $4,000. Accordingly, the new maximum penalty was $4,000/bbl. In promulgating that number, however, the Coast Guard made two errors.

---

[13] EPA later adjusted the penalty a fourth time, again using the 4-step process. 78 Fed. Reg. 66643 (Nov. 6, 2013) (effective December 6, 2013). If a discharge of 4.2 million barrels happened today, under the gross negligence number the discharger would face $5,300 per barrel, or about a $22 billion maximum.

[14] 218.815/183.70 = 1.1912 for a 19.12% increase.

The first and more significant error was the Coast Guard's failure to properly account for inflation. In order to properly account for inflation, the COLA used must reflect the difference in the CPI for the year preceding the adjustment and the CPI for the year the penalty last increased. In the 2009 rulemaking, the Coast Guard only calculated one COLA for the period between June 2008 and June 2003, yielding an increase of 19.12%. In the 2003 rulemaking, however, the penalty had not actually been increased at all. See 68 Fed. Reg. 74189 (and the discussion *supra* regarding the 2003 rulemaking). Consequently, the Coast Guard incorrectly ignored six years of inflation (1997 to 2003) in calculating the COLA. The COLA should have been 36.5%[15] or the difference in CPI between June 2008 and June 1997, when the penalty had last increased from $3,000/bbl to $3,300/bbl. Correctly applying the rounding rule would have resulted in a $4,300/bbl maximum civil penalty under the 36.5% COLA, because the "raw" increase ($3,300 x 0.365) should have been $1,204.50, which would round down to $1,000. Adding that $1,000 to the pre-existing number of $3,300 should have yielded a penalty of $4,300.

Instead, the Coast Guard used the incorrect COLA of 19.12%. But the Coast Guard compounded that error with a second one: Misapplication of the rounding rule. Correct application of the rounding rule, even for the low-ball COLA of 19.12%, should have resulted in a $4,300/bbl maximum civil penalty. Why? The "raw" increase ($3,300 x 0.1912) was $630.96, which rounds up to $1,000, which added to $3,300 yields $4,300. Without explanation, however, the Coast Guard applied the rounding rule differently than EPA, other federal agencies, and even the how Coast Guard itself had rounded previously.

---

[15] 218.815/160.3 = 1.3650 for a 36.5% increase.

Instead of calculating the raw inflation increase and rounding that increase to the nearest thousand, the Coast Guard used the COLA to calculate the penalty amount after inflation and rounded that after-inflation penalty amount to the nearest thousand. Specifically, the Coast Guard multiplied the then-current $3,300/bbl civil penalty by the 1.1912 COLA, resulting in an amount after inflation of $3,930.96, which it then rounded to the nearest thousand, resulting in the $4,000/bbl maximum civil penalty. This misapplication of the rounding rule contributed to the difference between EPA's maximum penalty and the Coast Guard's maximum penalty.[16]

In sum, using a COLA that properly adjusted the maximum civil penalty for inflation would have resulted in at least a $4,300/bbl maximum civil penalty. Even using the incorrect COLA that it used, the Coast Guard would still have arrived at a $4,300/bbl maximum penalty if it had correctly applied the rounding rule.

For these reasons, the $4,000/bbl maximum civil penalty at 33 C.F.R. § 27.3 was promulgated in a manner that did not increase the penalty by the full measure called for under the Inflation Adjustment Act and should be disregarded by the Court in favor of EPA's properly calculated statutory maximum.

## III.   BP's "Fair Notice" Defense Is Meritless.

BPXP's Ninth Affirmative Defense in its Answer to the CWA Complaint in Case 10-4536 (Doc. 1858) states:

---

[16] It should must be noted, however, that applying this flawed rounding rule methodology to the correct COLA of 1.3650 would have resulted in an after-inflation penalty amount of $4,504.50, which when rounded to the nearest thousand would have resulted in a $5,000/bbl maximum civil penalty. Thus, it was the perfect storm of using the wrong COLA and wrong rounding method that yielded $3,000, instead of $4,300 (or even more). As for why the Coast Guard did not apply the 4-step process properly, there is no ascertainable answer these years later.

> The Coast Guard's and EPA's current inflation adjustments under Clean Water Act Section 311(b)(7) disagree with one another (*compare* 33 C.F.R. § 27.3 ($4,000/barrel) *with* 40 C.F.R. § 19.4 ($4,300/barrel)) and pursuant to due process fair notice principles, only the lesser inflation-adjusted penalty number could ever be applied.

*Id*. at 33. Thus, BP appears to argue that – while it was "on notice" of the $4,000/bbl maximum, it was not as to the applicability of the $4,300/bbl maximum -- even though both were promulgated as required by law.

The affirmative defense of "fair notice" arises from the Due Process Clause, which requires that a person receive fair notice of what the law requires or prohibits before being deprived of property. *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). A statute is unconstitutionally vague only if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *United States v. Bennett*, 984 F.2d 597, 605 (4th Cir. 1993) (internal quotation and citation omitted). "Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). "Even a regulation which governs purely economic or commercial activities, if its violation can engender penalties, must be so framed as to provide a constitutionally adequate warning to those whose activities are governed." *Diebold, Inc. v. Marshall*, 585 F.2d 1327, 1335-36 (6th Cir. 1978).

BP bears the burden of proving lack of "fair notice," because it is an affirmative defense. *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001) (A defendant "bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation."); *see also United States v. Avant*, 907 F.2d 623, 625 (6th Cir. 1990).

The Court should reject BP's fair notice defense.

First, BP was on notice of the law's requirements, regardless of whether it was on notice of the specific remedies potentially available. BP does not argue that elements of liability or the absolute prohibition on oil discharges in Section 311(b) were vague at all. The statute clearly states:

> The Congress hereby declares that it is the policy of the United States that there should be no discharges of oil or hazardous substances into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone, or in connection with activities under the Outer Continental Shelf Lands Act . . . .

33 U.S.C. § 1321(b)(1). Section 311(b)(3) prohibits the "discharge of oil . . . into or upon the navigable waters of the United States, adjoining shorelines, . . . or [] in connection with activities under the Outer Continental Shelf Lands Act . . .." 33 U.S.C. § 1321(b)(3). Section 311(b)(7)(A) of the Clean Water Act mandates that "[a]ny person who is the owner, operator, or person in charge of any vessel . . . or offshore facility from which oil . . . is discharged in violation of paragraph (3), shall be subject to a civil penalty . . . ." 33 U.S.C. § 1321(b)(7)(A).

This Court has already held BP liable under these provisions, both on summary judgment (Rec. Doc. 5809, affirmed on appeal, panel review granted and opinion affirmed, petition for *en banc* review pending), and in the "Phase One Findings of Fact and Conclusions of Law."(Rec. Doc. 13381-1). At no point did BP argue it lacked "fair notice" of the elements of liability.

Second, BP knew of the $4,300/bbl maximum; it had been duly published in the Federal Register over a year before the blowout. As recently as September 4, 2014, BP itself publicly stated, "The statutory maximum penalty is . . . $4,300 per barrel where the court finds gross negligence or willful misconduct." Exh. 5, BP Press Release, "Statement on Gulf of Mexico"

(commenting on the Phase One Findings of Fact.) BP has had ample, repeated notice of that number.

Third, BP's Affirmative Defense admits to fair notice of the $4,000/bbl: ". . . pursuant to due process fair notice principles, only the lesser inflation-adjusted penalty number could ever be applied." Apparently BP was willing to violate the law by acting with gross negligence and willful misconduct, when exposed to a potential civil penalty of $4,000/bbl, not at the risk of a penalty of $4,300/bbl. That position is not credible.

The $4,300/bbl number not only is consistent with the Inflation Adjustment Act but also was promulgated in accordance with it, with normal notice to BP well before its violations at Macondo well. There is nothing unconstitutional about applying it in this case, a judicial enforcement action by the United States rather than any kind of administrative enforcement on by the Coast Guard alone.

**IV. Conclusion**.

For these reasons the Court should rule $4,300/bbl is the maximum penalty available against BP here.

Respectfully submitted,

Deputy Assistant Attorney General
Civil Division
PETER FROST
Director, Torts Branch, Civil Division
Admiralty and Aviation
STEPHEN G. FLYNN
Assistant Director
SHARON SHUTLER
MALINDA LAWRENCE
LAURA MAYBERRY
Trial Attorneys

R. MICHAEL UNDERHILL, T.A.

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
SARAH HIMMELHOCH
Senior Litigation Counsel
NANCY FLICKINGER
Senior Attorney
RICHARD GLADSTEIN
PATRICK CASEY
Senior Counsel
A. NATHANIEL CHAKERES
JUDY HARVEY
RACHEL KING
ERICA PENCAK
ABIGAIL ANDRE

Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice

RACHEL HANKEY
BRANDON ROBERS
Trial Attorneys

/s/ Steven O'Rourke

STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: 202-514-2779
Facsimile: 202-514-2583
E-mail: steve.o'rourke@usdoj.gov

KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA 70130
Telephone: (504) 680-3000
Facsimile: (504) 680-3184
E-mail: sharon.d.smith@usdoj.gov

Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date:  November 15, 2014.                             /s/  Steven O'Rourke

                                                                                U.S. Department of Justice