UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, ON APRIL 20, 2010 | * | SECTION J |
| | * | |
| This Document Relates to: | * | |
| | * | HONORABLE CARL J. BARBIER |
| No. 10-4536 | * | |
| | * | MAGISTRATE JUDGE SHUSHAN |

MEMORANDUM IN SUPPORT OF MOTION FOR ORDER CLARIFYING THE
SCOPE OF EVIDENCE TO BE ALLOWED BY THE COURT DURING THE PENALTY
PHASE OR, IN THE ALTERNATIVE, FOR ORDER PROVIDING THAT ANY SUCH
EVIDENCE WILL NOT HAVE A PRECLUSIVE EFFECT ON THE
OPA/NRDA CLAIMS OF THE STATE OF MISSISSIPPI

## TABLE OF CONTENTS

I.      Introduction.................................................................................................................1

II.     Mississippi's Standing to File this Motion. ........................................................3

III.    Procedural Background Regarding the "Seriousness of the Violation" Penalty Factor
        and Limitation on Participation in the Penalty Phase Discovery........................................4

IV.     The Opinions of Certain Experts for the Penalty Phase Cross Over Into NRDA and
        Economic Damage Claims.................................................................................7

        A.      The Scope of NRDA Claims...............................................................7

        B.      The Scope of Economic Damage Claims. ............................................8

        C.      Proposed Expert Testimony on NRDA and Economic Damage Issues in the
                Penalty Phase. ...................................................................................8

V.      Argument. ............................................................................................10

        A.      Based on the Court's Prior Order, Evidence Attempting to Quantify the
                Scope of  Mississippi's Natural Resource Injuries Should Not Be Allowed
                During the Penalty Phase. .....................................................................10

        B.      Evidence Attempting to Quantify Mississippi's Economic Damage Claims
                Under OPA Should Not Be Allowed During the Penalty Phase. .........................10

        C.      In the Alternative, the Evidence Allowed During the Penalty Phase Should
                Not Be Allowed to Prejudice Mississippi's NRDA or Economic Damage
                Claims. ......................................................................................11

                1.      The doctrine of law of the case. ....................................................12

                2.      The doctrine of collateral estoppel..........................................13

                3.      BP has previously argued that the United States should not be allowed
                        to present certain evidence in the Penalty Phase because similar issues
                        and evidence were addressed in Phases I and II. ......................................14

                4.      In the alternative, Mississippi requests an order providing that the
                        evidence presented during the Penalty Phase will not have a
                        preclusive effect on any subsequent NRDA Phase or Economic
                        Damage Phase. ........................................................................15

VI.     Conclusion. ...........................................................................................16

## TABLE OF AUTHORITIES

<u>CASES</u>

*Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415 (5th Cir. 1995) ................................................ 12

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (U.S. 1988).................................... 12

*Ctr. For Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413 (5th Cir. 2013) ............... 3

*Goodwin v. Johnson*, 224 F.3d 450 (5th Cir. 2000)........................................................................ 13

*Illinois v. Outboard Marine Corp., Inc.*, 619 F.2d 623 (7th Cir. 1980)........................................ 4

*Loumar, Inc. v. Smith*, 698 F.2d 759 (5th Cir. 1983).................................................................... 13

*Massachusetts v. EPA*, 549 U.S. 497 (U.S. 2007) ........................................................................ 3

*Massachusetts v. U.S. Veterans Admin.*, 541 F.2d 119 (1st Cir. 1976) ........................................ 4

*RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir. 1995) .................................................... 14

*Sheerin v. Davis*, 3 F.3d 113 (5th Cir. 1993) ............................................................................... 14

<u>OTHER AUTHORITIES</u>

<u>STATUTES</u>

33 U.S.C. §§ 1251 *et seq.*........................................................................................................... 4

33 U.S.C.A. § 2702..................................................................................................................... 1, 8, 9

33 U.S.C. § 1321(b)(7)-(8) ........................................................................................................ 1, 6, 16

<u>REGULATIONS</u>

15 C.F.R. § 990.30..................................................................................................................... 8

<u>RULES</u>

Federal Rules of Civil Procedure 24 ........................................................................................... 4

The State of Mississippi (hereinafter referred to as "Mississippi" or as the "State"), respectfully submits this Memorandum as an interested party.

## I.      __Introduction.__

The Court clearly indicated at the March 21, 2014 hearing that it does not intend for the Clean Water Act ("CWA") Penalty Phase under 33 U.S.C. § 1321(b)(8) ("Penalty Phase") to include a Natural Resource Damage Assessment ("NRDA") trial under the Oil Pollution Act, 33 U.S.C. § 2702(a) ("OPA").  While the Court did not completely foreclose BP Exploration & Production, Inc.'s ("BP") request to conduct some discovery on the nature and extent of the natural resource injuries associated with the *Deepwater Horizon* Oil Spill and related response actions ("Spill"), based on BP's argument that such evidence should be considered under the "seriousness of the violation" penalty factor, Mississippi believes the parties intend to offer testimony and evidence during the Penalty Phase that crosses the "no NRDA" line established by the Court.

Certain expert reports exchanged in the Penalty Phase indicate that the parties intend to introduce expert opinions and testimony on the natural resource injuries of the Spill – *matters that clearly touch upon and fall within the scope of the ongoing NRDA*.  Additionally, another expert designated by BP intends to provide testimony and opinions about the economic impact on the States of the Spill and BP's recovery efforts.  This testimony clearly *proposes to address Mississippi's economic damage claims under OPA* – which are not part of the Penalty Phase and have not been scheduled for trial.

The serious concern this creates for Mississippi in this multi-phased proceeding is the prejudice that will occur to Mississippi if the parties in the Penalty Phase are allowed to present any evidence attempting to quantify the natural resource injuries or economic damages to Mississippi without the State being able to defend or respond to such claims.  Mississippi is also concerned about the possibility for one or more parties in the Penalty Phase to argue in a

1

subsequent NRDA or Economic Damage Phase: (i) that Mississippi is somehow precluded from presenting new, additional or different evidence regarding the nature and extent of its NRDA or economic damage claims; or (ii) that a finding of fact or conclusion of law reached by the Court on the scope of the natural resource injuries or economic damages is the law of the case going forward. Similar arguments have already been made regarding the evidence presented in Phases I and II.

The potential for prejudice to Mississippi is real, especially since the NRDA is ongoing and incomplete, a trial for the NRDA Phase has not been set, the economic damage claims of the State have not been set for trial, Mississippi is not a party in the Penalty Phase, and the States have not been allowed to participate in the discovery for the Penalty Phase.

As a result, Mississippi seeks clarification of the Court's determinations made at the March 21, 2014 Status Conference and Motion Hearing and resulting Minute Entry (Doc. 12592) regarding the scope of testimony and evidence that will be allowed during the Penalty Phase. Specifically, Mississippi respectfully requests that the Court enter an order clarifying and finding that the parties in the Penalty Phase will not be allowed to present evidence attempting to quantify the scope of Mississippi's natural resource injuries. Mississippi also seeks an order finding that the parties in the Penalty Phase will not be allowed to present evidence attempting to quantify the scope of Mississippi's economic damages resulting from the Spill.

Alternatively, Mississippi respectfully requests that the Court enter an order clarifying and finding that: (i) any evidence allowed during the Penalty Phase, and any rulings thereon, regarding the nature and extent of the natural resource injuries or economic damages caused by the Spill will not have a preclusive effect upon Mississippi's right to present its NRDA and economic damage claims; (ii) Mississippi will be entitled to present new, additional and different evidence regarding the scope of its natural resource injuries caused by the Spill in any subsequent NRDA Phase; and (iii) Mississippi will be entitled to present new, additional and

different evidence regarding the scope of its economic damage claims caused by the Spill in any subsequent Economic Damage Phase.

## II.     Mississippi's Standing to File this Motion.

"In order to have standing to assert federal jurisdiction, a plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Ctr. For Biological Diversity, Inc. v. BP Am. Prod. Co*., 704 F.3d 413, 424 (5th Cir. 2013).

Mississippi has an action pending in MDL 2179.  While Mississippi is not a participant in the Penalty Phase, Mississippi is actively participating in the NRDA that is currently ongoing pursuant to the OPA.  Mississippi may have NRDA claims to pursue in the NRDA Phase of this proceeding.  Likewise, Mississippi has economic damage claims under the OPA pending before the Court that have not been set for trial.  As an interested party whose future claims and trials may be impacted by evidence the parties seek to present in the Penalty Phase on the nature and extent of the natural resource injuries or economic damages stemming from the Spill, Mississippi has a right to seek protection and redress from this Court.

The United States Supreme Court has recognized, that "States are not normal litigants for the purposes of invoking federal jurisdiction." *Massachusetts v. EPA*, 549 U.S. 497, 518 (U.S. 2007).  Rather, States have special interests as sovereigns to ensure their citizens are afforded compliance with federal statutes, and thus are "entitled to special solicitude in our standing analysis." *Id*. at 518 (holding that Massachusetts and several other states have standing to challenge the EPA's failure to promulgate regulations combating global climate change under the Clean Air Act) (emphasis added).  Accordingly, Mississippi is seeking to protect the interests of its citizens regarding the State's NRDA claims.

Additionally, while Mississippi is not seeking intervention in the Penalty Phase in the true sense of the process, Federal Rule of Civil Procedure 24(a), intervention as a matter of right,

3

provides that the Court must permit anyone to intervene who "is given an unconditional right to intervene by a federal statute." *Id.* Several courts have determined that the CWA (Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*) provides a right for a State to intervene in a CWA proceeding. *See Massachusetts v. U.S. Veterans Admin.*, 541 F.2d 119, 121 (1st Cir. 1976) (holding that under the plain language of the statute, the State of Massachusetts is a "citizen" permitted to initiate a citizen suit under the Clean Water Act); *Illinois v. Outboard Marine Corp*, *Inc.*, 619 F.2d 623, 630 (7th Cir. 1980) ("The right of the State of Illinois to intervene is both practical and desirable. Congress made clear in the FWPCA that the States have a vital role in the elimination of pollution."), *vacated and remanded on other grounds*, 453 U.S. 917 (1981).[1]

Mississippi comes before the Court as an interested party seeking an order clarifying that evidence and testimony attempting to quantify Mississippi's natural resource injuries or economic damages will not be allowed in the Penalty Phase or, alternatively, such evidence will not be construed to have a preclusive effect on any subsequent NRDA or Economic Damage Phases in this matter.

### III.   Procedural Background Regarding the "Seriousness of the Violation" Penalty Factor and Limitation on Participation in the Penalty Phase Discovery.

The United States and BP have previously presented to the Court their respective positions on the appropriate scope of discovery and evidence regarding the "seriousness of the violation" penalty factor.

As presented in its February 14, 2014 Rule 26(f) Report (Rec. Doc. 12351) and February 20, 2014 Motion to Limit Evidence About the "Seriousness" Factor (Rec. Doc. 12373), the

---

[1] 33 U.S.C. § 1365 provides for citizen suits to be brought under the CWA. Specifically, § 1365(b) states that "[n]o action may be commenced . . . (B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, *but in any such action in a court of the United States any citizen may intervene as a matter of right.*" 33 U.S.C. § 1365(b)(1)(B)(emphasis added).

A "citizen" is defined within § 1365 as "a person or persons having any interest which is or may be adversely affected." Turning to the general definitions section of the statute, the term "'person' means an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a state, or any interstate body." 33 U.S.C. §1362(5).

United States' position that directly relates to Mississippi is that the discovery and evidence sought by BP on the seriousness factor relating to the quantification of the natural resource injuries is the subject of an ongoing NRDA and future NRDA claims under the OPA. The United States asserted that allowing extensive discovery and evidence regarding human health, environmental, and economic harms during the Penalty Phase (albeit with a limited or premature record) could lead the Court to make findings that impact claims that are not yet ripe and which could have a prejudicial effect on the claims of non-participants, including the Gulf States. *See* Rec. Doc. 12351 at 4; Rec. Doc. 12373 at 5.[2]

BP's position has been that the nature and extent of the natural resource injuries from the Spill should be considered by the Court in determining the seriousness of the violation. *See* BP's Memo. Re Appropriate Scope of Penalty Phase, Rec. Doc. 12340; BP Memo. in Opp. to U.S. Mot. to Limit Evidence Re "Seriousness" Factor, Rec. Doc. 12463. While BP proposed that all offshore environmental issues be reserved for a future NRDA proceeding, BP specifically contended that "onshore" environmental issues would be fair game for the Penalty Phase:

> These onshore environmental issues could include alleged impacts on, and recovery of, beaches, marshes, and the wetlands of the Gulf of Mexico, as well as impacts to animals, that live in those habitats, such as birds.

Rec. Doc. 12340 at 4. *These "onshore environmental issues" sought to be introduced by BP relate directly to Mississippi's NRDA and any future NRDA claims by Mississippi.* At one point, BP did offer to stipulate that any CWA § 1321(b)(7)-(8) penalty determination would have no preclusive effect in the NRDA process. *See* Rec. Doc. 12463 at 14. However, Mississippi is unaware of BP's offer ever becoming an actual stipulation in the record.

On March 21, 2014, the Court conducted a Status Conference and Motion Hearing on the United States' Motion to Limit Evidence About the "Seriousness" Factor ("Motion to Limit").

---

[2] The United States also asserted that there was sufficient evidence in the record from Phases I and II for the Court to consider and rule on the seriousness of the violation (Rec. Doc. 12351 at 3), and that, based on prior cases, *potential* harm from an oil spill is all that is required to establish seriousness (Rec. Doc. 12373 at 2).

At the hearing, the Court *very clearly determined that the NRDA Phase of this case was not going to be tried in the Penalty Phase*. *See* March 21, 2014 H'rg Tr., pp. 81-85, excerpts of which are attached as Exhibit "A". More specifically, the Court found in reference to the United States' Motion to Limit Evidence About the "Seriousness" Factor (Rec. Doc. 12373):

> I am not going to absolutely prohibit any further or evidence on this issue at this time. However, I am going to grant the government's motion, in part, to the extent that what I interpreted to preclude as what I interpret, and I know BP's counsel does not agree with this, but my sense is that if I went along with BP's suggestion on this, the Court, would in effect, be trying the NRDA case as part of the penalty phase.
>
> * * *
>
> *But I'm not going to allow this to evolve into a NRDA case. We're just not going to go there. Also I note that the statute itself, if you look at the statutory language, it talks about the serious of the violation. It doesn't talk about the extent of the environmental damage.* I'm not suggesting that that's not relevant at all, but that's not what this factor says. It says, 'the seriousness of the violation.'
>
> You can have an extremely serious violation that results in little or no damage, but it could have potential to do catastrophic damage, but it could be good fortune that it doesn't do extensive damage. It doesn't mean it's not an extremely serious violation.

*See* Ex. "A" at 81, lns. 7-14; 84, lns. 11-22 (emphasis added).

For these reasons, the Court granted in part, and denied in part, the United States' Motion to Limit and instructed the parties to coordinate with Magistrate Judge Shushan regarding the scope of discovery on the "seriousness" factor. *See* Minute Entry, Rec. Doc. 12592.

Considering that BP would be allowed to pursue and obtain some discovery on the natural resource injuries from the Spill and potentially be allowed to present evidence on these issues during the Penalty Phase trial, the State of Louisiana and other parties sought permission to attend and monitor the Penalty Phase depositions. The Court concluded that only counsel, representatives and experts for the U.S., BP and Anadarko would be allowed to attend the depositions, and that the State of Louisiana and other parties were not permitted to attend the depositions. *See* June 13, 2014 Order, Rec. Doc. 13016. As a result, the Gulf States, including

Mississippi, have not been allowed to participate in the discovery process for the Penalty Phase or rebut any evidence presented by the parties to the Penalty Phase, including any discovery regarding the natural resource injuries or economic damages resulting from the Spill or recovery therefrom.

Recently, Mississippi has been advised of the proposed testimony and opinions of certain designated experts for the Penalty Phase.  The scope of the proposed expert testimony and opinions directly address NRDA matters and potential NRDA claims of Mississippi.  The proposed opinions and testimony appear to directly contradict this Court's ruling that the Penalty Phase will not include an NRDA trial.  The scope of the proposed expert testimony and opinions also directly address Mississippi's economic damages claims under OPA.  Mississippi's present concern stems from the prejudicial effect of the parties potentially being allowed to present such evidence: (i) while the NRDA is incomplete and ongoing; (ii) the economic damage claims of Mississippi are not yet scheduled for trial; and (iii) without Mississippi having an opportunity to rebut same during the Penalty Phase trial.

### IV.   The Opinions of Certain Experts for the Penalty Phase Cross Over Into NRDA and Economic Damage Claims.

#### A.   The Scope of NRDA Claims.

The OPA provides that "each responsible party for a vessel or a facility from which oil is discharged . . . into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for . . . damages . . . that result from such incident." 33 U.S.C.A. § 2702(a). The damages referred to in Section § 2702(a) include "[d]amages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be recoverable by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee."  33 U.S.C.A. § 2702(b)(2)(A).

OPA defines "natural resources" to include "land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust

by, appertaining to, or otherwise controlled by the United States (including the resources of the exclusive economic zone), any State or local government or Indian tribe, or any foreign government . . . ." 33 U.S.C.A. § 2701(2); 15 C.F.R. § 990.30. "The measure of natural resource damages . . . is . . . (A) the cost of restoring, rehabilitating, replacing, or acquiring the equivalent of, the damaged natural resources; (B) the diminution in value of those natural resources pending restoration; plus (C) the reasonable cost of assessing those damages." 33 U.S.C.A. § 2706(d).

While BP's stated purpose in presenting evidence regarding the natural resource injuries from the Spill is for the Court to consider the "seriousness of the violation," the opinions of BP's experts certainly seek to foreclose upon the possibility of there being any significant or lasting injuries to Mississippi's natural resources as a result of the Spill. This relates directly to Mississippi's NRDA claims.

### B.   The Scope of Economic Damage Claims.

The damages referred to in Section 2702(a) also include:  (i) damages for injury to, or economic losses resulting from the destruction of, real or personal property owned by the State; (ii) damages equal to the net loss of taxes, royalties, rents, fees or net profit shares due to the injury, destruction of real property, personal property, or natural resources; and (iii) damages for net costs of providing increased or additional public services during or after removal activities caused by the Oil Spill. *See* U.S.C.A. § 2702(b)(2)(B), (D), (E) and (F).

BP proposes to present expert testimony regarding the economic impact of its recovery efforts from the Spill under the "effort to mitigate" penalty factor. This proposed testimony, however, is clearly an effort by BP to improperly have a dry run on Mississippi's economic damage claims without Mississippi even being present.

### C.   Proposed Expert Testimony on NRDA and Economic Damage Issues in the Penalty Phase.

It is Mississippi's understanding that certain experts tendered by BP to provide testimony during the Penalty Phase will express opinions that (i) relate to natural resource injuries being

addressed by the ongoing NRDA; and (ii) relate to the economic damage claims of Mississippi to be presented in a subsequent phase.

More specifically, Mississippi understands that these experts intend to provide opinions which address issues such as the levels of toxicity in the Gulf waters and whether those levels could cause fatal, near fatal or serious consequences to seafood, biota, birds, animals and other organisms inhabiting the waters, shorelines, wetlands and marsh areas adjacent to the water, and other inland waterways and estuarine areas.  It is further believed that these opinions will also address the degree of oiling to, and the length of time that such oiling remained on, shorelines, beaches and wetland areas.  *See* certain expert reports provided on behalf of BP, excerpts of which are being sought to be filed under seal as Exhibits "B-F".  All of the reports of one expert designated by BP address NRDA issues almost exclusively.  The reports address the impact of the Spill on various shellfish, crustaceans and species of commercial and recreational fish.  *See* certain expert reports provided on behalf of BP, excerpts of which are being filed under seal as Exhibit "G".

Any testimony expressing an opinion on the levels of toxicity in the waters of the Gulf resulting from the Spill and the causal relationship between those levels and damage to seafood, biota, and other organisms inhabiting the waters, shorelines, wetlands and marsh areas adjacent to the water, as well as to other inland waterways, would be testimony related to the NRDA.

Likewise, Mississippi understands that BP intends to offer expert testimony about the direct and specific economic impact on the States of the Spill and BP's response to the Spill.  *See* certain expert reports provided on behalf of BP, copies of which are being filed under seal as Exhibit "H".

The testimony proposed by BP in the Penalty Phase that touch upon these matters, particularly at a time when the NRDA has not been concluded and Mississippi is not a party in the Penalty Phase, has the potential to be extremely prejudicial to Mississippi.

## V.   **Argument.**

### A.   Based on the Court's Prior Order, Evidence Attempting to Quantify the Scope of Mississippi's Natural Resource Injuries Should Not Be Allowed During the Penalty Phase.

This Court has ruled that the Penalty Phase is not to be, or include, an NRDA trial.  *See* Ex. "A", p. 84, lns. 11-22.  Mississippi believes the justifications for this position include the following:

1. As the Court previously noted, the factor to be considered pertains to the "seriousness of the violation," not the extent of environmental harm, s*ee* Ex. "A", p. 84, lns. 11-17;

2. The NRDA is an ongoing and incomplete process.  Allowing any evidence in the Penalty Phase that attempts to quantify the scope of Mississippi's natural resource injuries would clearly be subject to this limitation.  From a practical standpoint, the premature consideration of any incomplete evidence regarding the quantification of natural resource injuries during the Penalty Phase would create an unnecessary risk of inconsistent rulings between the Penalty and NRDA Phases; and

3. Mississippi cannot respond in the Penalty Phase and has not been allowed to participate in the Penalty Phase discovery.  It would be grossly unfair for BP to be allowed to present a one-sided story to the Court about the scope of Mississippi's natural resource injuries without the State being able to respond to each and every point.

Despite the Court's ruling, however, certain expert reports provided by BP during the Penalty Phase propose to foreclose upon aspects of Mississippi's NRDA claims.  The State does not believe such evidence is what the Court intended to allow during the Penalty Phase.  For these reasons, Mississippi respectfully requests that this Court enter an order clarifying that the parties in the Penalty Phase will not be allowed to present evidence attempting to quantify the scope of the State's natural resource injuries arising out of the Spill.

### B.   Evidence Attempting to Quantify Mississippi's Economic Damage Claims Under OPA Should Not Be Allowed During the Penalty Phase.

For many of the same reasons as mentioned above, this Honorable Court should not allow the parties in the Penalty Phase to present evidence that purports to quantify the economic

damages incurred by Mississippi due to the Spill or lessened by BP's recovery efforts. The justifications include:

1. The economic damage claims of Mississippi under OPA will be scheduled to proceed in a different, subsequent phase. Such claims are not and should not be on trial during the Penalty Phase.

2. Discovery is incomplete or not yet commenced with regard to Mississippi's economic damage claims. Mississippi has not had an opportunity to participate in any discovery with BP regarding its economic damage claims. Again, allowing any evidence on this issue creates the potential for premature or inconsistent rulings.

3. Mississippi is not a party in the Penalty Phase and has not been allowed to participate in the discovery of the Penalty Phase. If BP is allowed to present evidence attempting to quantify the State's economic damages during the Penalty Phase, it will be the equivalent of a boxing match where Mississippi's hands are tied and it is not allowed in the ring.

Accordingly, Mississippi respectfully requests that this Court enter an order providing that the parties in the Penalty Phase will not be allowed to present evidence attempting to quantify the scope of Mississippi's economic damages arising out of the Spill or lessened by any response efforts.

### C. In the Alternative, the Evidence Allowed During the Penalty Phase Should Not Be Allowed to Prejudice Mississippi's NRDA or Economic Damage Claims.

Mississippi does not believe that it could be prevented from fully presenting its NRDA and economic damage claims when the time comes. However, since this is a multi-phased proceeding, it is not absolutely clear whether the parties in the Penalty Phase will be foreclosed from making arguments under the doctrines of law of the case and collateral estoppel if evidence within the scope of the NRDA and economic damages under OPA is allowed during the Penalty Phase. Alternatively, Mississippi requests that these issues be addressed before any evidence relating to the NRDA or economic damages to Mississippi is allowed to be presented in the Penalty Phase and before the Court makes any rulings regarding same.

1.     *The doctrine of law of the case.*

"The law of the case doctrine provides that once a court of competent jurisdiction decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1423 (5th Cir. 1995) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).  The law of the case doctrine and principles of res judicata are closely related but different: res judicata prevents collateral attack on the result of a completed lawsuit between the same parties, while the law of the case doctrine prevents collateral attacks on the court's rulings during the pendency of a lawsuit.  *See, e.g., Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983) (discussing the difference between the two doctrines).

There are three recognized exceptions to this general rule within the Fifth Circuit, and the law of the case doctrine will not apply when: "(i) the evidence on a subsequent trial was substantially different; (ii) controlling authority has since made a contrary decision of the law applicable to such issues; and (iii) the decision was clearly erroneous and would work manifest injustice." *Goodwin v. Johnson*, 224 F.3d 450, 457-58 (5th Cir. 2000).

Mississippi does not believe the Court intends for its findings of fact or conclusions of law arising out of the Penalty Phase to prejudice Mississippi's NRDA claims or its ability to present its own evidence regarding the nature and extent of natural resource injuries caused by the Spill to Mississippi's natural resources.  Likewise, Mississippi does not believe the Court intends for its findings of fact or conclusions of law arising out of the Penalty Phase to prejudice Mississippi's economic damages claims.  However, if the parties in the Penalty Phase are allowed to introduce some evidence attempting to quantify Mississippi's natural resource injuries or economic damages arising out of the Spill, and the Court necessarily has to make some findings of fact and conclusions of law regarding such evidence, there is a possibility that one or more of the parties in the Penalty Phase may attempt to argue that the Court's rulings in the

Penalty Phase are the "law of the case" in a subsequent NRDA or economic damage proceeding. Such a position would be fundamentally unfair, especially since the NRDA is ongoing and incomplete, discovery regarding Mississippi's economic damage claims has not yet commenced, and Mississippi has not been allowed to participate in the Penalty Phase.

2.    *The doctrine of collateral estoppel.*

In the Fifth Circuit, collateral estoppel depends on three elements:  (i) the issue at stake must be identical to the one involved in the prior action; (ii) the issue must have been actually litigated in the prior action; and (iii) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action.  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995) (citing *Sheerin v. Davis*, 3 F.3d 113, 114 (5th Cir. 1993)).

Mississippi does not believe that the doctrine of collateral estoppel could be applied adversely to it in any subsequent NRDA or economic damage proceedings regarding the evidence that may be allowed to be presented in the Penalty Phase.  Mississippi is not a party in the Penalty Phase and has not been allowed to participate in the discovery of the Penalty Phase. The United States is not representing, virtually or otherwise, the interests of Mississippi in the Penalty Phase.  The issues and claims involved in the Penalty Phase and any subsequent NRDA Phase are different, and the evaluation of NRDA and economic loss issues are not a necessary part of the Penalty Phase.  Nonetheless, BP is seeking to introduce evidence on the nature and extent of the natural resource injuries and economic damages occurring as a result of the Spill – evidence that, if allowed, goes to the heart of future claims and proceedings in this matter.  There is no guarantee that BP will agree that any evidence presented in the Penalty Phase regarding such injuries should not be considered part of the record during a future phase.  In fact, as addressed below, BP has shown a propensity to the contrary.

3.      *BP has previously argued that the United States should not be allowed to present certain evidence in the Penalty Phase because similar issues and evidence were addressed in Phases I and II.*

Part of Mississippi's concern stems from BP's positions concerning the use of testimony from prior phases of this litigation. As one example, in BP's Memorandum Regarding the Appropriate Scope of the CWA Penalty Phase and Related Discovery, BP contended that the United States should be prohibited from introducing any evidence on the "degree of culpability" penalty factor. *See* Rec. Doc. 12340 at 11. BP claimed that any evidence beyond what was introduced in the record during the Phase I and II trials to establish BP's degree of culpability, although it is one of the eight enumerated factors to be considered in assessing civil penalties, would be cumulative. *See* BP's Memorandum in Support of Motion in Limine, Rec. Doc. 12347-1 at 9-10.

Additionally, BP has sought to strike an expert's testimony on the basis that his testimony is too intertwined with the prior testimony and the determinations of the Court in Phase I. *See* BP's Motion to Strike the Expert Reports of Water Cantrell and Renewed Motion in Limine to Exclude Evidence Relating to Unrelated Prior Incidents filed on October 7, 2014, Rec. Doc 13475-1. BP's position is that Admiral Cantrell's report is so "inextricably intertwined with Phase I issues that the Court has already determined" that consideration of the report will be "cumulative and inescapably result in revisiting Phase 1 issues and evidence." *See* Rec. Doc. at 3.

The filings referenced above highlight the possibility for one or more of the parties participating in the Penalty Phase to argue in a subsequent NRDA or Economic Damage Phase that any evidence presented in the Penalty Phase regarding natural resource damages or economic damages should be dispositive and prevent the introduction of similar or different evidence on the issue. Any such arguments have the potential to be very prejudicial to Mississippi, who is not a party in the Penalty Phase.

     4.     *In the alternative, Mississippi requests an order providing that the evidence presented during the Penalty Phase will not have a preclusive effect on any subsequent NRDA Phase or Economic Damage Phase.*

Setting aside the issues of law of the case and preclusion for a moment, to pre-litigate issues bearing upon future NRDA and economic damage claims in a multi-phased proceeding when the NRDA is ongoing and incomplete, discovery regarding Mississippi's economic damages has not yet commenced, and Mississippi has had no opportunity for rebuttal, has the potential to be highly prejudicial to Mississippi's interests.  The risk of this prejudice is only heightened when one considers the potential for the parties in the Penalty Phase to argue that any evidence regarding natural resource injuries or economic damages presented and accepted in the Penalty Phase has a preclusive effect or should be considered part of the record for a subsequent NRDA Phase or Economic Damage Phase.

While it is clear that the Court does not intend to have an NRDA trial during the Penalty Phase, the scope within which the Court will allow the parties to plunge into the nature and extent of the natural resource injuries arising out the Spill is unclear.  *BP has previously offered to enter a stipulation that any "CWA § 1321(b)(7)-(8) penalty determination will not have a preclusive effect in the NRDA process."  See* BP's Memorandum in Opposition to the Motion of the United States to Limit Evidence about the Seriousness Factor filed on March 6, 2014, p. 14 (Doc. 12463) (emphasis added).  This offer and proposed stipulation were not addressed by the Court at the May 21, 2014 hearing or in the corresponding Minute Entry (Rec. Doc. 12592).  In the event the Court does not enter an order prohibiting any evidence attempting to quantify Mississippi's natural resource injuries during the Penalty Phase, Mississippi submits that BP's offer should be recognized in an order of the Court.

Similarly, in the event the Court does not enter an order prohibiting during the Penalty Phase any evidence attempting to quantify Mississippi's economic damages arising out of the

Spill, Mississippi submits that an order should be entered declaring that such evidence will not have a preclusive effect on a subsequent Economic Damages Phase.

As a result, and in the alternative, Mississippi respectfully requests that the Court enter an order finding that: (i) any evidence allowed during the Penalty Phase regarding the nature and extent of the natural resource injuries caused by the Spill, and any recovery therefrom, will not have a preclusive effect upon Mississippi's right to present its NRDA claims; (ii) any evidence allowed during the Penalty Phase regarding the nature and extent of the economic damages incurred or being incurred by Mississippi as a result of the Spill, or lessened as a result of BP's recovery efforts, will not have a preclusive effect upon Mississippi's rights to present its economic damage claims; and (iii) Mississippi will be entitled to present new, additional or different evidence regarding the scope of its natural resource injuries or economic damages caused by the Spill, or lessened due to any recovery therefrom, in any subsequent NRDA or Economic Damage Phase.

## VI.   Conclusion.

Mississippi seeks to have the Court enter an order which clarifies the determinations made by the Court at the March 21, 2014 hearing and resulting Minute Entry (Rec. Doc. 12592) as to the scope of testimony and evidence presented during the Penalty Phase.  Mississippi respectfully requests that the Court enter an order prohibiting any evidence during the Penalty Phase that attempts to quantify the scope of Mississippi's natural resource injuries.  Likewise, Mississippi seeks an order prohibiting any evidence during the Penalty Phase that attempts to quantify the scope of Mississippi's economic damages arising out of the Spill or any recovery to its economy due to the response to the Spill.

In the alternative, Mississippi respectfully requests that the Court enter an order finding that: (i) any evidence allowed during the Penalty Phase regarding the nature and extent of the natural resource injuries or economic damages caused by the Spill, and any recovery therefrom,

will not have a preclusive effect upon Mississippi's right to present its NRDA and economic damage claims; and (ii) Mississippi will be entitled to present new, additional or different evidence regarding the scope of its natural resource injuries and economic damages caused by the Spill, or affected by any recovery therefrom, in any subsequent NRDA or Economic Damage Phase.

Respectfully submitted, this 14th day of November, 2014.

/s/*James M. Hood, III*
James M. Hood, III (MS Bar No. 8637)
Walter Sillers Building
550 High Street, Suite 1200
Jackson, MS 39201
Telephone:     (601) 359-3680
Facsimile:     (601) 359-4231

*Attorney General of the State of Mississippi, for and on behalf of the State of Mississippi*

**OF COUNSEL:**

Michael C. Moore (MS Bar No. 3452)
**MIKE MOORE LAW FIRM, LLC**
P.O. Box 321048
Flowood, MS 39232-1048
Telephone:     (601) 933-0070
Facsimile:     (601) 933-0071

William M. Quin II (MS Bar No. 10834)
**MCCRANEY MONTAGNET QUIN & NOBLE, PLLC**
602 Steed Road, Suite 200
Ridgeland, MS 39157
Telephone:     (601) 707-5725
Facsimile:     (601) 510-2939

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

RESPECTFULLY SUBMITTED this Fourteenth day of November, 2014.


*/s/**James M. Hood, III***
James M. Hood, III