UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | *   MDL NO. 2179<br>*<br>*   SECTION J<br>* |
| This Document Relates to:<br><br>    No. 10-4536 | *<br>*   HONORABLE CARL J. BARBIER<br>*<br>*   MAGISTRATE JUDGE SHUSHAN |

# EXHIBIT "A"

Excerpts of March 21, 2014 Hearing

```
 1                    UNITED STATES DISTRICT COURT
 2                    EASTERN DISTRICT OF LOUISIANA
 3
 4                                        *
    IN RE: OIL SPILL BY THE OIL RIG       *   Docket 10-MD-2179
 5         DEEPWATER HORIZON IN THE       *
           GULF OF MEXICO ON              *   Section J (1)
 6         APRIL 20, 2010                 *
                                          *   New Orleans, Louisiana
 7                                        *
                                          *   March 21, 2014
 8                                        *
                                          *   9:00 a.m.
 9  * * * * * * * * * * * * * * * * * *   *
10                                        *
    UNITED STATES OF AMERICA              *   C.A. 10-4536
11                                        *
                                          *   Section J (1)
12  versus                                *
                                          *   New Orleans, Louisiana
13                                        *
    BP EXPLORATION & PRODUCTION,          *   March 21, 2014
14  INC., ET. AL.                         *
                                          *   9:00 a.m.
15  * * * * * * * * * * * * * * * * * *   *
16
              STATUS CONFERENCE RE: PENALTY PHASE
17               AND MOTION HEARING BEFORE
                THE HONORABLE CARL J. BARBIER
18              UNITED STATES DISTRICT JUDGE
                              AND
19              THE HONORABLE SALLY SHUSHAN
                UNITED STATES MAGISTRATE JUDGE
20
21
22
23
24
                            EXHIBIT "A"
25
```

OFFICIAL TRANSCRIPT

Case 2:10-md-02179-CJB-DPC Document 13656-2 Filed 11/14/14 Page 3 of 7
Case 2:10-md-02179-CJB-SS Document 12805 Filed 05/01/14 Page 81 of 96

81

```
 1  sufficient, and that no new evidence could possibly disprove
 2  those facts, no amount of new evidence of recovery could
 3  possibly disprove these facts, and that the Court need only
 4  rule that these already known facts are sufficient in this case
 5  to find that the violation was very serious and use its
 6  discretion to prohibit any additional evidence.
 7            I am not going to absolutely prohibit any
 8  further discovery or evidence on this issue at this time.
 9  However, I am going to grant the government's motion, in part,
10  to the extent that what I interpret to preclude as what I
11  interpret, and I know BP's counsel doesn't agree with this, but
12  my sense is that if I went along with BP's suggestion on this,
13  the Court would, in effect, be trying the NRDA case as part of
14  the penalty phase.
15            It would cause what I consider unreasonable
16  delays in resolving the Clean Water Act penalty case.  I've
17  looked at some of the proposed discovery that BP has propounded
18  and it seems tremendously and overly broad.
19            It seems to me -- first of all, BP already
20  produces what must be voluminous data and information, in
21  addition to having access to at least significant amounts,
22  although not all, of the data and information that the
23  government may have.  BP has been doing its own scientific and
24  natural resource damage assessment over the last several years.
25            It seems to me that we have to find a way to cut
```

Case 2:10-md-02179-CJB-DPC Document 13656-2 Filed 11/14/14 Page 4 of 7
Case 2:10-md-02179-CJB-SS Document 12805 Filed 05/01/14 Page 82 of 96

82

```
 1   off or limit this evidence and this discovery in a reasonable
 2   way.  I went back and looked at Judge Haik's case, the CITGO
 3   case.  In the Fifth Circuit opinion, it points out -- this is
 4   what they say about the CITGO case.
 5              "The incident occurred in 2006 when a severe
 6   rainstorm caused two wastewater storage tanks at CITGO's Lake
 7   Charles, Louisiana refinery to fail.  Two million gallons of
 8   oil flooded the surrounding waterways."
 9              Two million gallons of oil is literally a drop
10   in the bucket compared to what we're looking at in this case.
11   I think Ben did the math.  He said it's 47,000 barrels as
12   opposed to somewhere between 2.4 to 5 million barrels in this
13   case.
14              So in that case, the court found that over
15   2 million gallons, or 47,000 barrels, of oil flooded into the
16   surrounding waterways.
17              "The spill forced the closure of a nearby
18   navigation channel for ten days, disrupting local businesses.
19   Recreational activities on the impacted waterways were
20   restricted for weeks following the spill.  The spill also
21   damaged over 100 acres of marsh habitat.  Fish and other
22   aquatic life were adversely impacted, and several birds were
23   killed."
24              That was essentially apparently the findings of
25   the court in that case.  Based on that, when they talked about
```

Case 2:10-md-02179-CJB-DPC Document 13656-2 Filed 11/14/14 Page 5 of 7
Case 2:10-md-02179-CJB-SS Document 12805 Filed 05/01/14 Page 83 of 96

83

 1  the seriousness of the violation factor, the District Court
 2  found that the spill was "massive" -- these are all words in
 3  quotes -- "massive," "excessive," and a "tragedy."
 4             The Court goes on to say, "Both parties agree
 5  with this assessment, as do we."
 6             So it strikes me that we're not necessarily
 7  looking -- that we don't have to put such a fine point on this,
 8  again, that we're trying the Natural Resource Damage claims,
 9  and that we're looking at, what is the magnitude of the
10  environmental violation in this case.
11             I mean, Mr. Langan, without pre-trying a case
12  that I haven't heard any evidence in yet, I don't know how
13  anyone's going to stand up in this court and argue that this
14  case was not extremely serious.
15             I know that's not -- I'm not saying that's it,
16  that's the end of the story.  There's other factors and
17  considerations for the Court to consider.  But, again, the
18  question is:  How fine of a point do we have to put on this
19  analysis?  So...
20             **MR. LANGAN:**  We understand, Your Honor.
21             **THE COURT:**  Yeah.
22             **MR. LANGAN:**  Judge Haik also said in his opinion
23  that, "The environmental impact was almost fully rectified by
24  2009, and the wildlife seems to be showing no adverse impact
25  from the spill."

Case 2:10-md-02179-CJB-DPC Document 13656-2 Filed 11/14/14 Page 6 of 7
Case 2:10-md-02179-CJB-SS Document 12805 Filed 05/01/14 Page 84 of 96

84

```
1              THE COURT:  That's fine.  And you all can make that
2   argument.  I've heard already -- seen and heard so many reports
3   about that.  And you all have it, and you know what it is.  You
4   have your own scientists, you have your own evidence, you have
5   government evidence.  I'm sure you can call experts to show
6   that.
7              We can argue about the recovery.  But, you know,
8   I think there are many facts on this area from which the Court,
9   frankly, could take judicial notice, and then the experts can
10  opine as they wish.
11             But I'm not going to allow this to evolve into a
12  NRDA case.  We're just not going to go there.  Also, I note
13  that the statute itself, if you look at the statutory language,
14  it talks about the seriousness of the violation.  It doesn't
15  talk about the extent of the environmental damage.  I'm not
16  suggesting that that's not relevant at all, but that's not what
17  this factor says.  It says, "the seriousness of the violation."
18             You can have an extremely serious violation that
19  results in little or no damage, but it could have potential to
20  do catastrophic damage, but it could be good fortune that it
21  doesn't do extensive damage.  It doesn't mean it's not an
22  extremely serious violation.
23             So with that being said, the United States has
24  agreed to -- it sounds like they've agreed here today that they
25  are willing and able to produce data that BP is seeking.
```

Case 2:10-md-02179-CJB-DPC Document 13656-2 Filed 11/14/14 Page 7 of 7
Case 2:10-md-02179-CJB-SS Document 12805 Filed 05/01/14 Page 85 of 96

85

```
 1   Again, I think BP's present discovery that it's seeking is
 2   overly broad.  So I'm going to allow Judge Shushan to work with
 3   you all to see exactly how this should be handled going
 4   forward.
 5             So I have granted the government's motion to
 6   that extent, but I'm not granting it to the extent that the
 7   government seeks to totally preclude any discovery or evidence
 8   on this point.
 9             Okay.  I think we've talked about all the
10   pending motions in limine.  What I'd like to do is look at the
11   calendar and try to look ahead and see when we might be able to
12   set a trial in this case.
13             My sense is that we don't have to work out all
14   the details now, but it seems to me, the government proposed,
15   as I recall, in their briefs a time limit similar to what we
16   had in Phase Two, which was a total of 90 hours of trial time,
17   which is three weeks essentially.  If we go four days, as we
18   have in the past trials, with the breaks and so forth, we get
19   in at least seven and a half hours of actual testimony per day.
20   That's 30 hours a week.  So that would be a three-week trial, a
21   three four-day week trial, is what the government's
22   envisioning.
23             So I don't know -- I haven't seen any estimate
24   from BP or anyone else on that.  But that sounds -- frankly, I
25   was thinking of a two-week trial.  I was not envisioning this
```