UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | *  MDL NO. 2179 <br> * <br> *  SECTION J <br> * |
| This Document Relates to: <br><br> No. 10-4536 | * <br> *  HONORABLE CARL J. BARBIER <br> * <br> *  MAGISTRATE JUDGE SHUSHAN |

# EXHIBIT "C"

Order and Reasons (Dkt. 8217)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL 2179 |
| | * | SECTION J |
| This Document Relates To: | * * | |
| No. 12-968, Plaisance, et al. v. BP Exploration & Production Inc., et al. | * * | JUDGE BARBIER |
| and | * * | MAG. JUDGE SHUSHAN |
| All Actions | * * | |

**ORDER AND REASONS**
[Granting Final Approval of the Medical Benefits Class Action Settlement]

Before the Court is a motion (Rec. Doc. 7112) by BP seeking final approval of the Medical Benefits Class Action Settlement, as amended on May 1, 2012 (Rec. Doc. 6427-1). Also before the Court is Class Counsel's memorandum in support of final approval of the Medical Settlement, which the Court treats as a motion for final certification of the Medical Benefits Settlement Class and for final approval of the Medical Settlement. (Rec. Doc. 7116.).[1]

### I. Factual and Procedural History

On April 20, 2010, a loss of well control and one or more fires and explosions occurred on the *Deepwater Horizon*, which had been engaged in drilling activities in Mississippi Canyon

---

[1] Terms with initial capital letters used in this Order and Reasons have the meanings ascribed to the fully capitalized rendering of such terms in the Medical Benefits Class Action Settlement Agreement. In addition, "Class", "Class Members", "Medical Settlement Agreement" ("MSA" or "Agreement"), and "Medical Benefits Settlement" (or "Medical Settlement" or "Settlement") are also used herein to refer, respectively, to the Medical Benefits Settlement Class, the Medical Benefits Settlement Class Members, the Medical Benefits Class Action Settlement Agreement, and the Medical Benefits Class Action Settlement.

# APPENDIX A: INDEX OF DECLARATIONS SUBMITTED BY BP AND/OR CLASS COUNSEL

**Joint Submissions:**

Azari Decl. (Rec. Doc. 7113-1) and Azari Supp. Decl. (Rec. Doc. 7730-1)

Coffee Decl. (Rec. Doc. 7113-2) and Coffee Supp. Decl. (Rec. Doc. 7730-2)

Garretson (Rec. Doc. 7730-3) and Garretson Supp. Decl. (Rec. Doc. 7944-1)

Goldstein Dec. (Rec. Doc. 7113-3) and Goldstein Supp. Decl. (Rec. Doc. 7730-4)

**Class Counsel Submissions:**

Greenwald Decl. (Rec. Doc. 7116-2 at 94)

Harbut Decl. (Rec. Doc. 7116-1) and Harbut Supp. Decl. (Rec. Doc. 7728-3)

Herman Decl. (Rec. Doc. 7116-2 at 89)

Issacharoff Decl. (Rec. Doc. 7116-2 at 73)

Klonoff Decl. (Rec. Doc. 7116-2) and Klonoff Supp. Decl. (Rec. Doc. 7728-2)

Class Representatives: Kip Plaisance Decl. (Rec. Doc. 7116-2 at 102), Perkins Decl. (Rec. Doc. 7116-2 at 105), Warren Decl. (Rec. Doc. 7116-2 at 108), Pizani Decl. (Rec. Doc. 7116-2 at 111), Max Plaisance Decl. (Rec. Doc. 7116-2 at 114), Barbee Decl. (Rec. Doc. 7116-2 at 117), Divinity Decl. (Rec. Doc. 7116-2 at 120), Brown Decl. (Rec. Doc. 7116-2 at 123), Caster Decl. (Rec. Doc. 7116-2 at 126), Baker Decl. (Rec. Doc. 7116-2 at 129), Hall Decl. (Rec. Doc. 7116-2 at 132)

**BP Submissions:**

Bloomer Decl. (Rec. Doc. 7112-6)

Cox Decl. (Rec. Doc. 7112-4) and Cox. Supp. Decl. (Rec. Doc.7732-2)

Dutton Decl. (Rec. Doc. 7112-2) and Dutton Supp. Decl. (Rec. Doc. 7732-3)

Green Decl. (Rec. Doc. 7112-5) and Green Supp. Decl. (Rec. Doc. 7732-6)

Herzstein Decl. (Rec. Doc. 7112-7) and Herzstein Supp. Decl. (Rec. Doc. 7732-1)

Lees Decl. (Rec. Doc. 7112-3) and Lees Supp. Decl. (Rec. Doc. 7732-5)

Miller Decl. (Rec. Doc. 7112-8) and Miller Supp. Decl. (Rec. Doc. 7732-4)

Taylor Decl. (Rec. Doc. 7114-20) and Taylor Supp. Decl. (Rec. Doc. 7731-11)

**Backgrounds of Select Declarants (for backgrounds not provided here, see the declarations in the Court's record):**

*John C. Coffee, Jr.* is the Adolf A. Berle Professor of Law, Columbia University Law School. (Coffee Decl. ¶ 1.) Professor Coffee has taught at Columbia since 1980, and one of his principal academic interests has been class action litigation (with a special focus on the organization and management of the large class action). (*Id.* ¶ 2.) His articles on class actions have been cited on several occasions by the United States Supreme Court, including in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 850 n.28 (1999). (*Id.*) Professor Coffee's declarations set forth his independent opinions regarding certification of the Medical Benefits Settlement, (*see* Coffee Decl. ¶ 1; *see also* Coffee Supp. Decl.), which the Parties agree should be considered by the Court, but which do not necessarily represent the views of all Parties on all of the matters on which Professor Coffee opines. He has served as an expert witness in a number of class actions, in the Fifth Circuit and other courts, including *Amchem*; *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008); and *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235 (D.N.J. 2000), *aff'd* 264 F.3d 201 (3d Cir. 2001). Professor Coffee's declarations were submitted jointly by the Parties.

*Robert Cox, M.D., Ph.D.* is a board-certified emergency physician and medical toxicologist. He has a doctorate in Analytical Chemistry from the University of Iowa and a doctorate in Medicine from the University of Texas Southwestern Medical School. Dr. Cox also holds board certifications in Medical Toxicology and Emergency Medicine through the American Board of Medical Specialties, and a certification in Toxicology through the American

Board of Toxicology. (Cox Decl. ¶¶ 1-2.)

Dr. Cox is currently a professor in the School of Medicine at the University of Mississippi Medical Center in Jackson, Mississippi. In addition, Dr. Cox serves as the Director of the Mississippi Poison Control Center and the Director of the Medical Toxicology Service at the University of Mississippi Medical Center. During the *Deepwater Horizon* Response, Dr. Cox worked with the Mississippi State Department of Health on issues relating to the protection of Mississippi residents from potential exposures to contaminants released in connection with the oil spill. In that role, Dr. Cox reviewed, on a daily basis, environmental monitoring data collected along the Gulf Coast of Mississippi, received calls directed to the state poison control center related to potential exposures, and assisted with the review of hospital admissions data. (*Id.* ¶¶ 1, 4.)

Dr. Cox, whose declarations were submitted by BP, offered opinions on the toxicological properties of the components of MC252 oil and the two Corexit dispersants used during the Response and on the potential for significant adverse health effects for Clean-Up Workers and Gulf Coast Residents from inhalation and dermal exposures to the components of oil, dispersants, and other spill-related compounds in connection with the *Deepwater Horizon* Incident.

***David Dutton, Ph.D.***, a BP employee, was the Industrial Hygiene Team Lead for the Unified Area Command on the *Deepwater Horizon* Response. Dr. Dutton is a toxicologist and certified industrial hygienist who has practiced in these fields for over 20 years. He received a Bachelor of Science degree in biology, and Masters and Doctorate degrees in toxicology. Dr. Dutton's experience includes occupational exposure assessments at a refinery and a petrochemical plant, identification and communication of potential risks, oversight of

toxicology testing programs, regulatory compliance, community exposure assessments, and oversight of toxicological research regarding chemical products. (Dutton Decl. ¶¶ 1-2.)

As Industrial Hygiene Team Lead, Dr. Dutton was responsible for designing, implementing, and overseeing BP's industrial hygiene program during the Response, which included establishing programs to monitor workers' potential exposure to potentially hazardous materials, developing policies and protocols related to worker safety and health, and designing and implementing worker training, among other duties. Dr. Dutton worked directly with federal government and Coast Guard personnel on virtually every aspect of the Response, and received updates at least twice daily on activities and potential problems. (*Id.* ¶¶ 3-4.)

Dr. Dutton authored two declarations that were submitted by BP. (Rec. Docs. 7112-2 and 7732-3.) Dr. Dutton utilized his personal knowledge, professional education, and experience to describe the Response effort. He explained both the structure and scope of the Response, including the application of dispersants, health and safety training, and the activities of Clean-Up Workers during the Response.

***Bernard D. Goldstein, M.D.*** is a Professor of Environmental and Occupational Health and the former Dean of the University of Pittsburgh Graduate School of Public Health. He is a physician, board certified in Internal Medicine, Hematology, and Toxicology. He was the founding Director of the Environmental and Occupational Health Sciences Institute, a joint program of Rutgers University and the Robert Wood Johnson Medical School, where he established and directed the Environmental and Occupational Health Sciences Institute, the largest academic environmental and occupational health program in the United States. (Goldstein Decl. ¶¶ 1-4.)

Dr. Goldstein has published in the areas of blood toxicity, the formation of cancer-

causing substances (free radicals) following exposure to inhalants, various aspects of public health decision-making, and global issues in environmental medicine. He recently published an article examining the public health consequences following the *Deepwater Horizon* oil spill, specifically: the toxicological effects in workers, visitors, and community members following the spill; mental health effects from social and economic disruption; and ecosystem effects that have consequences for human health. (*See* Bernard D. Goldstein, M.D., Howard J. Osofsky, M.D., Ph.D., & Maureen Y. Lichtveld, M.D., M.P.H., The Gulf Oil Spill, 364 NEW ENG. J. MED. 1334-1348 (2011).)

Dr. Goldstein serves as chair of the Coordinating Committee for the Gulf Region Health Outreach Program (the "Program" or "Outreach Program") and offered his expert opinions concerning that Program. His declarations, which were submitted jointly by the Parties, describe the four projects that make up the Program: the Primary Care Capacity Project, the Mental Behavioral Health Capacity Project, the Environmental Health Capacity and Literacy Project, and the Community Health Workers Training Program. (*See* Goldstein Decl. ¶ 9.) According to Dr. Goldstein, the four projects provide much needed public health benefits to the Gulf Coast region, a region that has been plagued by public health problems related to disease prevention, health literacy, and basic health maintenance. (*Id.* ¶¶ 10-15.) The Outreach Program is designed to respond to these community issues by improving the region's healthcare infrastructure and access to care for those most medically at risk through the use of Federally Qualified Health Centers ("FQHCs") and other clinics as the hub of the Program's healthcare structure. (*Id.* ¶¶ 16, 19.) Over the past two months, the projects in the Outreach Program have made significant progress in the planning and implementation of their operations, having received $20,732,508 in funding since June 2012. (*See* Supp. Decl. of Bernard D. Goldstein, Rec. Doc. 7730-4, ¶¶ 3-5.)

*Laura Green, Ph.D., D.A.B.T.* is a Senior Scientist and the founder and President of Cambridge Environmental Inc., a consulting and research company that addresses health and environmental issues. (Green Decl. ¶ 1.) Dr. Green has a Bachelor's degree in chemistry from Wellesley College and a Ph.D. in food science and technology from MIT. She is board-certified in toxicology by the American Board of Toxicology. (*Id.*) Dr. Green has conducted research in chemical carcinogenesis and biochemical epidemiology at MIT, and was the Director of the Scientific Conflict Mapping Project at the Harvard School of Public Health. (*Id.*)

Dr. Green has provided expert testimony in toxicology, epidemiology, and health risk-assessment in numerous state and federal courts and administrative law hearings. Cases involving residential and/or occupational exposures to petroleum and associated chemicals include *Martin v. Amoco Oil Co.*, 696 N.E.2d 383 (Ind. 1998), and three cases consolidated for purposes of discovery and pre-trial proceedings with *Bly v. Tri-Continental Industries, Inc.,* 663 A.2d 1232 (D.C. 1995): *Bradley v. Tri-Continental Industries, Inc.*, C.A. No. 90-11383, *Carter v. Tri-Continental Industries, Inc.*, C.A. No. 90-11384, and *Taylor v. Tri-Continental Industries, Inc.*, C.A. No. 90-11385.

Dr. Green authored two declarations submitted by BP. (Rec. Docs. 7112-5 and 7732-6.) In those declarations, she opined that the low levels of exposure to dispersants and other chemicals experienced by Clean-Up Workers and Residents in connection with the *Deepwater Horizon* Incident were unlikely to pose a risk to their health.

*Michael R. Harbut, M.D., M.P.H., F.C.C.P.* is the Director of the Environmental Cancer Program at Karmanos Cancer Institute, which is affiliated with Wayne State University in Detroit, Michigan, where he is a Clinical Professor of Internal Medicine in the School of Medicine. He is the Chief of Occupational and Environmental Medicine at Providence Hospital

in Southfield, Michigan. He is board certified in Occupational Medicine, and has a Masters of Public Health, Environmental and Industrial Health. Dr. Harbut is the Director of the National Center for Vermiculite and Asbestos Related Cancers, and co-authored the American Thoracic Society's most recent guidelines for the diagnosis and treatment of asbestos-related disease.

Dr. Harbut has more than two decades of experience diagnosing and treating patients with workplace and/or environmental exposure to various chemicals, including certain constituents of oil and/or dispersants. In connection with the *Deepwater Horizon* Incident, Dr. Harbut has consulted with the United States Navy regarding its analysis of the safety of training missions.

In this case, Dr. Harbut authored two declarations submitted by Class Counsel, regarding the medical and scientific bases for the Matrix and the Periodic Medical Consultation Program. (Rec. Docs. 7116-1 and 7728-3.) Dr. Harbut has testified as an expert witness in other cases involving occupational and environmental exposure. *See, e.g., Jason Matteucci v. EQ - The Environmental Quality Co.*, 08-119374-NO (Mich. Cir. Ct. 2011); *Martinski v. Celotex*, No. 87-74688 (E.D. Mich. Oct. 20, 1988); *Martinski v. Owens Corning, et al.*, No. 87-74688 (E.D. Mich. Oct. 24, 1988).

***Jessica Herzstein, M.D, M.P.H.*** is an occupational and environmental physician, with a focus on developing, implementing, and overseeing global health programs for thousands of workers, including those who have been exposed to potential environmental and occupational hazards. (Herzstein Decl. ¶¶ 1-2.) Dr. Herzstein, who is board certified in Internal Medicine and Occupational Medicine, is the Global Medical Director for Air Products and Chemicals, Inc., a chemical manufacturing company, and the President of Environmental Health Resources, P.C. From 1995 to 1997, Dr. Herzstein was a Medical Director for the Department of Defense, where

she oversaw national medical programs for the Department, and served as a consultant to the Department of Justice, Environmental Health and Biomonitoring, from 1992 to 1996.

Since February 2012, Dr. Herzstein has served on the United States Preventive Services Task Force, an independent, volunteer group of national experts in prevention and evidence-based medicine that makes recommendations about clinical preventive services such as screening tests, counseling services, and preventive medications. Dr. Herzstein previously served on the Agency for Toxic Substances and Disease Registry expert panel that developed the Final Criteria for Determining the Appropriateness of a Medical Monitoring Program under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 60 Fed. Reg. 38840-01. She is a co-editor of three books on environmental health and occupational medicine, and has contributed chapters to multiple books on occupational health and toxicology.

Dr. Herzstein has authored two declarations submitted by BP regarding the medical and scientific bases of the Matrix, the Periodic Medical Consultation Program, and the Back-End Litigation Option. (Rec. Docs. 7112-7 and 7732-1.) She has testified as an expert witness in other cases involving potential exposures. *See, e.g., Doris Baity. v. Gen. Elec. Co.*, Index No. 2001-524, Supreme Court of New York, Cayuga County (June 14-15, 2012); *Perrine, et al. v. E.I. DuPont De Nemours & Co..*, Civ. Action No. 04-C-296-2, Circuit Court of West Virginia, Harrison County (May 1, 2006) (class certification hearing).

***Samuel Issacharoff*** is the Reiss Professor of Constitutional Law, New York University School of Law. (Issacharoff Decl. ¶ 4.) Professor Issacharoff specializes in complex litigation and has published many articles on various aspects of complex litigation, including matters such as class actions and attorneys' fees, which have been cited by numerous courts, including the United States Supreme Court. Professor Issacharoff has served as an expert and as a consultant

in numerous complex cases, including dozens of class actions, and has served as a special master in a mass tort class action in the Eastern District of Texas. Professor Issacharoff also served as Reporter for the Project on Aggregate Litigation of the American Law Institute, which unanimously approved its proposed final report three years ago, and was published in 2010 as *Principles of the Law of Aggregate Litigation*. In this case, Professor Issacharoff served as a consultant to the PSC during settlement negotiations, and he offered in his declaration, which was submitted by Class Counsel, various opinions concerning the Settlement, including those regarding conflicts of representation, intra-class allocation, attorneys fees and settlement value. (*Id.* ¶¶ 7-9.)

**Robert H. Klonoff** is Dean and Professor of Law, Lewis & Clark Law School. Dean Klonoff is co-author of the first casebook devoted specifically to class actions (Robert J. Klonoff, Edward K.M. Bilich, and Suzette Malveaux, *Class Actions and Other Multi-Party Litigation: Cases and Materials* (West 3d ed. 2012)), and the author of the *Nutshell* on class actions. (*See* Klonoff Decl. ¶¶ 2-3.) Dean Klonoff served for five years as an Associate Reporter for the American Law Institute's ongoing class action (and other multi-party litigation) project, *Principles of the Law of Aggregate Litigation,* and is the principal author of the chapter addressing class action settlement and attorneys' fees. In this case, Dean Klonoff authored two declarations, submitted by Class Counsel, regarding the certifiability of the Class and the fairness of the Settlement. (*See* Rec. Docs. 7116-2 at 14 and 7728-2.)

**Peter S.J. Lees, Ph.D.**, **C.I.H.** is an expert in environmental health sciences, specializing in industrial hygiene and exposure assessment. Dr. Lees is currently a professor and director of the Division of Environmental Health Engineering at the Johns Hopkins University Bloomberg School of Public Health in Baltimore, Maryland. Dr. Lees holds a Doctorate in Environmental

Health Sciences and has been certified in the comprehensive practice of industrial hygiene by the American Board of Industrial Hygiene since 1978. (Lees Decl. ¶¶ 1-3.) Dr. Lees has conducted extensive research related to the assessment of occupational and environmental exposures, and teaches graduate-level courses in industrial hygiene, occupational health, and epidemiology, with a special emphasis on exposure assessment for individuals and populations.

Dr. Lees has authored two declarations submitted by BP regarding the exposure assessment conducted in relation to the *Deepwater Horizon* Incident and the potential for Clean-Up Workers to have adverse health effects from inhalation exposures to the components of oil, dispersants, and other spill-related compounds. (Rec. Docs. 7112-3 and 7732-5.) Dr. Lees has served as an expert in approximately 25 proceedings in which he has provided expert testimony regarding his review, assessment, and evaluation of alleged chemical exposures to asbestos, polychlorinated biphenyls ("PCBs"), gasoline, acrylamide, and various solvents. (Lees Decl. ¶ 8.)

***Geoffrey P. Miller*** is the Stuyvesant P. Comfort Professor of Law, New York University. Professor Miller has been involved for more than twenty years in the area of class action litigation as a teacher, scholar, attorney, consultant, and expert witness, and has written numerous research articles dealing with class action law and practice, with a focus on standards for judicial review of class action settlement. (Miller Decl. ¶¶ 2-6; *see also* Miller Supp. Decl.) His articles on class action law have been cited by state and federal courts across the United States. Professor Miller opined on various topics in this case, including the appropriateness of the claims for class litigation and settlement, the Settlement benefits, the negotiation process, and the objections to the Settlement. His two declarations were submitted by BP. He has been qualified as an expert witness in various cases in federal courts, including

*In re Cell Therapeutics, Inc., Sec. Litig.*, No. C10-414 (W.D. Wash. 2012); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036 (S.D. Fla. 2012); *In re Vioxx Prods. Liab. Litig.*, No. 2:05-MD-01657 (E.D. La. 2009); *John Hancock Life Ins. Co. v. Goldman, Sachs & Co.*, No. 01-10729-RWZ (D. Mass. 2007); and *Figueroa v. Sharper Image Co.*, No. 05-21251 (S.D. Fla. 2007).