UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | * | |
| GULF OF MEXICO, on | * | SECTION J |
| APRIL 20, 2010 | * | |
| | * | JUDGE BARBIER |
| **THIS PLEADING APPLIES TO:** | * | MAGISTRATE JUDGE SHUSHAN |
| No. 12-311 | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF CAMERON INTERNATIONAL CORPORATION'S MOTION TO FOR ATTORNEYS' FEES AND TO CLARIFY JUDGMENT

Plaintiff Cameron International Corporation ("Cameron") moves pursuant to Federal Rules of Civil Procedure 54(d)(2) and 59(e) for an award of attorneys' fees pursuant to Texas Civil Practice and Remedies Code section 38.001. Cameron further moves for clarification that the pre-judgment interest rate to be applied pursuant to the Judgment in this action is 5 percent per annum calculated from the date this suit was filed.

## SUMMARY OF ARGUMENT

After nearly three years of hard-fought litigation, the Court awarded Cameron summary judgment on its claim that Liberty Insurance Underwriters, Inc. ("Liberty") breached the excess casualty insurance policy it issued to Cameron for the 2009-2010 policy period (the "Policy") by refusing to pay Cameron full policy limits, $50,000,000, in connection with Cameron's settlement with BP for losses related to the Deepwater Horizon incident. *See* Order & Reasons at 23, dated Oct. 31, 2014 [Dkt. No. 13583] ("Order & Reasons"). In doing so, the Court rejected every coverage defense Liberty asserted. *See id.* at 9-23. The Court described Liberty's interpretation of its "other insurance" provision, the primary basis upon which Liberty

HIGHLY CONFIDENTIAL

initially denied Cameron's claim, as "egregious" and "unconscionable," and concluded that Liberty breached its duties to promptly pay Cameron's claim and accept a reasonable settlement. *Id.* at 14-15, 19-23.  The Court entered a $50 million judgment for Cameron on its breach of contract claim, plus pre-judgment and post-judgment interest (the "Judgment").  *See* Judgment ¶ 2, dated Oct. 31, 2014 [Dkt. No. 13588].

In light of the Court's summary judgment decision, Texas law now mandates the recovery of Cameron's reasonable attorneys' fees incurred in connection with its breach of contract claim pursuant to Texas Civil Practice and Remedies Code section 38.001.  *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (holding that "an award of reasonable fees is mandatory" to a prevailing plaintiff in breach of contract actions under Texas law).  Based on this clear rule, Cameron respectfully requests that the Court award to Cameron legal fees and other recoverable legal expenses totaling $3,389,445.96.

The amount requested by Cameron is entirely reasonable.  These fees total less than ▮ percent of the $50 million judgment awarded to Cameron in this high profile, high stakes, hard fought, complicated case.  Indeed, having subjected Cameron to almost three years of difficult litigation to recover what Cameron was plainly owed in December 2011, Liberty should not be heard to complain.  Had it not been for Liberty's recalcitrance—which extended this litigation and increased the amount Cameron had to spend to recover—Cameron would not have incurred these fees.

Cameron has also gone through great pains to carefully review the invoices of Willkie Farr & Gallagher LLP ("Willkie Far") and Stone Pigman Walter Wittmann L.L.C. ("Stone Pigman") line-by-line to segregate and eliminate fees and expenses that were not incurred in connection with Cameron's successful breach of contract claim.  Although a

2

HIGHLY CONFIDENTIAL

significant amount of the work performed in pursuing Cameron's breach of contract claim was also utilized in pursuit of its bad faith claims and claim for MDL defense expenses, Cameron recognizes that the fees associated with the latter are not recoverable and some adjustment must be made.  Following a close review, as reflected in the declarations of Mitchell Auslander and Carmelite Bertaut, Cameron has eliminated over ███████ of ██████████ total fees and expenses spent in this litigation, and is accordingly requesting in this motion an award of $3,389,445.96—a ██ percent discount.  Dane S. Ciolino, the Alvin R. Christovitch Distinguished Professor of Law at the Loyola University New Orleans School of Law, has reviewed Cameron's request for these fees and, as set forth in his accompanying declaration, considers those fees to be reasonable and in accordance with Texas Civil Practice and Remedies Code section 38.001 and applicable law.

Finally, Cameron respectfully requests this Court award it prejudgment interest of 5 percent per annum on the principal sum of $50 million to avoid any question as to the amount ultimately owed by Liberty as damages for its wrongful refusal to pay Cameron's claim.  Texas law is clear that this is the applicable pre-judgment interest rate and it runs from the time that this suit was filed by Cameron.  To the extent such an award, or an award of reasonable attorneys' fees, requires the Judgment to be modified or altered, Cameron respectfully requests the Court do so pursuant to Federal Rule of Civil Procedure 59(e).

## I. CAMERON IS ENTITLED TO AN AWARD OF $3,389,445.96 IN RECOVERABLE ATTORNEYS' FEES AND NON-TAXABLE EXPENSES INCURRED IN THIS ACTION.

In its Amended Complaint, among other things, Cameron requested that the Court award to Cameron "the costs of this suit, including reasonable attorneys' fees as provided by law."  *See* Am. Compl. at 23, dated Apr. 19, 2012 [Dkt. No. 6287].  "A fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case."  *Mathis v.*

3

1174216v1

*Exxon Corp.* 302 F.3d 448, 461 (5th Cir. 2002).   Under Texas law, "[a] person may recover reasonable attorney's fees . . . in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."   *See* Tex. Civ. Prac. & Rem. Code § 38.001(8).   "[I]n a policyholder's successful suit for breach of contract against an insurer . . ., the insurer is liable for reasonable attorney's fees incurred in pursuing the breach of contract action under section 38.001."   *Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000); *see also Price v. Allstate Ins. Co.*, No. 05-20394, 190 Fed. App'x 360, 362 (5th Cir. 2006) (unpublished) (holding district court abused its discretion by denying fee request of prevailing insurer in breach of contract dispute); *AMICO v. Cellstar Corp.*, No. 02-20612, 2003 WL 342257, at *3-4 (5th Cir. Jan. 28, 2003) (unpublished) (affirming award of attorney's fees to prevailing insurer in breach of contract dispute pursuant to section 38.001 on the basis that such relief is "mandatory" under Texas law).   Indeed, "an award of reasonable fees is mandatory, as long as there is proof of reasonable fees, and the plaintiff has been awarded damages."   *See Mathis*, 302 F.3d at 462 (citations omitted).

Texas law also governs the reasonableness of attorneys' fees.   *See id.* at 461 ("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision").   There is a rebuttable presumption that "usual" or "customary" fees are reasonable.   Tex. Civ. Prac. & Rem. Code § 38.003.   The court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file.   Tex. Civ. Prac. & Rem. Code § 38.004.   These provisions should be liberally construed to promote their underlying purposes of discouraging vexatious and unnecessary litigation.   See Tex. Civ. Prac. & Rem. Code § 38.005; *Gates v. City of Dallas*, 704 S.W.2d 737, 740 (Tex. 1986) (The "underlying

4

HIGHLY CONFIDENTIAL

purpose of the statute is to encourage contracting parties to pay their just debts and discourage . . . vexatious, time-consuming and unnecessary litigation.").

Texas courts employ the "lodestar" method initially to compute a reasonable fee, or the product of reasonable hours times a reasonable rate. *See, e.g., Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 782 (Tex. Ct. App. 2005). Texas courts then weigh eight factors—the *Arthur Andersen* factors—to determine the reasonableness of the amount. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). We address each prong of this analysis, in turn, below.

### A.   Calculation of the Lodestar Amount

In this action, Cameron incurred legal fees and expenses totaling ▇▇▇▇▇▇▇ through September 30, 2014. This reflects approximately ▇▇▇▇ hours of attorney time.[1]  *See* Decl. of Mitchell Auslander, dated Nov. 14, 2014, ("Auslander Decl.") , attached hereto as Exhibit 1, ¶ 10; Decl. of Carmelite M. Bertaut ¶ 21, dated Nov. 14, 2014, ("Bertaut Decl."), attached hereto as Exhibit 2.

Of this amount, Cameron seeks to recover reasonable attorneys' fees of $3,389,445.96—▇▇▇▇▇▇▇ of which was incurred for work performed by attorneys and other legal professionals at Willkie Farr, and ▇▇▇▇▇▇ of which was incurred for work performed by attorneys and other legal professionals at Stone Pigman. In addition, ▇▇▇▇▇ was incurred for recoverable electronic research expenses. Auslander Decl. ¶¶ 10, 32.

---

[1]      Cameron reserves its right to supplement its fee request for fees and expenses incurred since September 30, 2014, including with respect to this motion and any appeal of this Court's Order and Reasons dated October 31, 2014. *See Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. Ct. App. 2006) ("The trial court's award of attorney's fees may include appellate attorney's fees."); *Preston Exploration Co., LP v. GSP, LLC*, Civ. A. No. H-08-3441, 2013 WL 3229678, at *7 (S.D. Tex. June 25, 2013) (awarding attorney's fees for fee application under section 38.001).

HIGHLY CONFIDENTIAL

1174216v1

Cameron has deducted over ▮▮▮▮▮ from the total fees it has incurred to account for the fact that not all of those fees were associated with the pursuit of its breach of contract claim.  Rather, Cameron has carefully segregated fees not associated with its breach of contract claim, as well as fees for substantive legal work performed by qualified legal assistants under the direction and supervision of an attorney.  *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-14 (Tex. 2006) ("if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees"); *Santos v. Tex. Enters.*, No. 03-09-00579-CV, 2010 WL 4054479, at *3-4 (Tex. Ct. App. Oct. 15, 2010) (affirming award of legal assistant fees under section 38.001).

The calculations supporting Cameron's request are set forth in detail in the attached Declarations of Dane Ciolino, Mitchell Auslander, and Carmelite Bertaut.  *See* Decl. of Dane Ciolino, dated Nov. 14, 2014, ("Ciolino Decl."), attached hereto as Exhibit 3, ¶¶ 19-25; Auslander Decl. ¶¶ 19-32; Bertaut. Decl. ¶¶ 15-20.  Cameron conducted a laborious line-by-line review of over 5,700 individual entries on invoices provided to Cameron by counsel and segregated fees associated with claims other than the breach of contract claim and purely administrative tasks.

Following that careful analysis, Cameron identified entries that were either not related to Cameron's breach of contract claim, or only partially related to that claim.  Cameron conservatively reduced its request for legal fees here by treating such entries as follows:

- Cameron seeks no fee recovery for work that was solely related to claims on which it did not prevail on summary judgment (*i.e.*, its bad faith claims and claim for MDL defense expenses).

- Where work was performed that was attributable to unrecoverable claims and also intertwined with tasks necessary to its breach of contract claim,

HIGHLY CONFIDENTIAL

Cameron applied a 25 percent discount to account for unrecoverable fees within such entries.[2]

- Cameron applied a 50 percent discount to all tasks related to work performed in connection with Cameron's earlier review and production of attorneys' fees invoices, some of which related to its claim to recover MDL defense expenses and some of which related to its claim to recover its reasonable attorneys' fees incurred in this lawsuit.

- Cameron applied a 25 percent discount to all services rendered by legal assistants to account for administrative, not substantive, work.

Finally, in addition to the above discounts, which are significant and amount to hundreds of thousands of dollars, Cameron applied a 5 percent across-the-board discount to all fees incurred, net of the segregated amounts and other discounts, to conservatively account for an argument by Liberty that any additional time was unnecessary, duplicative, or otherwise unrecoverable.

Cameron has reduced the fees it is requesting in this motion by over ███ percent in the aggregate—which makes this request for reasonable fees equal less than ███ percent of the total $50 million recovery Cameron achieved in this lawsuit.  Moreover, after write-offs and discounts, Cameron's counsel collectively worked ███ adjusted hours on this matter, for a blended rate of ███ per hour.  As discussed in the next section, such fees and rates are plainly reasonable given the difficulty and complexity of the insurance issues litigated, the high stakes and judgment in favor of Cameron, Cameron's relationship with Willkie Farr and Stone Pigman, and the superior qualifications of both Liberty's and Cameron's counsel.

---

[2] For example, Cameron seeks no costs associated with Liberty's Motion for Partial Summary Judgment Concerning Cameron's Texas Insurance Code Claims, Dkt. No. 12050, but seeks costs in connection with both Liberty's Motion for Partial Summary Judgment on Cameron's Section 541 Claim, Dkt. No. 12578, and Liberty's Motion for Partial Summary Judgment Concerning Cameron's Forfeiture of Coverge, Dkt. No. 12580, as both addressed the same substantive issues, namely, whether Liberty had a legitimate basis to deny coverage for Cameron's claim.

7

**B.      The Fees Cameron Seeks Are Reasonable.**

Texas courts consider eight factors in evaluating the reasonableness of the amount sought:  (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.  *Arthur Andersen & Co.*, 945 S.W.2d at 818.  "The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 318 (Tex. Ct. App. 2009).  All of the relevant factors favor an award of fees in the amount requested by Cameron.[3]

1.      *The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly.*

First and foremost, the novelty of Liberty's interpretation of its "other insurance", exhaustion of underlying insurance, and waiver of subrogation provisions, and the complexity of the related legal issues, made this case far more complicated than an ordinary coverage dispute— and far more complicated than it would have been were it not for Liberty's recalcitrance. Liberty's defenses, while clearly baseless and in conflict with its own underwriters'

---

[3]      Because they have no bearing on the reasonableness of fees incurred by Cameron, Factors 2, 5, and 8 will not be addressed.  *See Alsheik v. Arabian Nat'l Shipping Corp.*, No. 01-08-0007-CV, 2009 WL 884795, at *5 (Tex. Ct. App. Apr. 2, 2009) ("[E]vidence need not be submitted to support every factor.").

HIGHLY CONFIDENTIAL

understanding of the Policy and which Liberty advanced for the first time in connection with Cameron's claim, raised issues of first impression under Texas law.  *See* Order and Reasons at 14-18, dated Aug. 16, 2012 [Dkt. No. 7129].  The parties confronted exceedingly difficult and novel questions in litigating Cameron's breach of contract claim including, among others:  (1) the meaning, operation, and relationship between underlying insurance, exhaustion, and other insurance provisions and the parties' respective burdens of proof as to the application of these provisions; (2) subrogation issues; (3) the relationship between contested contractual indemnities and traditional insurance; (4) waiver issues; and (5) the interpretation of Cameron's settlement agreement with BP.  Refuting Liberty's arguments required voluminous briefing, extensive discovery, and careful legal research of nationwide state and federal opinions and secondary sources that ultimately culminated in a favorable result on summary judgment for Cameron.  *See* Auslander Decl. ¶ 44.

Second, for nearly three years, Liberty waged a tenacious defense that forced Cameron to spend significant time and money to force Liberty to pay Cameron the $50 million it owed on December 15, 2011.  *See* Order & Reasons at 20-23, dated October 31, 2014 [Dkt. No. 13583].  Liberty moved for judgment on the pleadings, three times for summary judgment, for one protective order, for reconsideration of this Court's discovery orders, four times to compel and for compliance with subpoenas, and appealed Magistrate Judge Shushan's order denying relief sought in one of Liberty's motions to compel.  *See* Auslander Decl. ¶ 38.

Discovery was extensive.  Ultimately, the parties and third parties produced over 70,000 pages and the parties took 19 days of deposition testimony from 12 fact witnesses and seven expert witnesses.  *See* Auslander Decl. ¶¶ 42-43.  The depositions took place in New York, Texas, Louisiana, California, and Bermuda.  *See* Auslander Decl. ¶ 42.

9

HIGHLY CONFIDENTIAL

This case was time consuming and challenging for other reasons as well. Liberty repeatedly flouted its discovery obligations resulting in unnecessary delays and expenses. For example, Cameron learned six weeks before the original court-imposed deadline for fact discovery that Liberty did not and did not intend to search for electronic documents, necessitating the first extension of the discovery deadline. *See* Auslander Decl. ¶ 39. When Liberty finally did produce electronic files, seven months after the start of discovery, it violated Pretrial Order 16 and this Court's Case Management Order by failing to indicate where documents began or ended and by failing to produce a load file and metadata. *See id.* ¶ 39. As a result, Cameron was forced to incur the expense of unitizing Liberty's production and was unable to search Liberty's documents in the most cost-efficient manner. *See id.* Liberty's lack of cooperation with respect to production increased Cameron's expenses about which Liberty cannot now complain. *See Young v. Sea Horse Venture IV, LLC*, No. 3:07-CV-1818-M, 2009 WL 614823, at *2 (N.D. Tex. Mar. 10, 2009) ("lack of production during discovery" justified plaintiff's claimed attorneys' fees).

Similarly, Liberty flatly ignored Local Rule 7-7 and several orders from this Court limiting the parties to one 25-page summary judgment motion when it filed three summary judgment motions totaling 64 pages of legal memoranda and several hundred pages of appendices and exhibits. *See* E.D. La. L.R. 7-7; January 24, 2014 Order [Dkt. No. 12220]; February 21, 2014 Order [Dkt. No. 12388]. Liberty's latter two motions, which alone included 43 pages of legal memoranda, addressed substantially (if not entirely) overlapping issues including whether Liberty was obligated to pay Cameron's claim, whether Cameron improperly impaired Liberty's subrogation rights, and the meaning of the BP settlement agreement. *See* Liberty International Underwriters, Inc.'s Mem. of Law in Support of its Mot. for Partial Summ.

HIGHLY CONFIDENTIAL

1174216v1

J. Concerning Cameron's Forfeiture of Coverage, dated Mar. 24, 2014 [Dkt. No. 12580-1]; Def. Liberty's Mem. in Supp. of its Mot. for Partial Summ. J. on Cameron's § 541 Claim, dated Mar. 24, 2014 [Dkt. No. 12578-1].  As this Court recognized, "Liberty's motions for partial summary judgment violate[d] the spirit if not the letter of the scheduling order."  March 31, 2014 Order [Dkt. No. 12610].  Summary judgment memoranda of law ultimately totaled nearly 250 pages.

Liberty also prolonged the litigation, and increased Cameron's costs, by refusing to engage in reasonable settlement discussions.  Before this litigation was filed, Cameron offered to settle the dispute with Liberty for substantially less than the Court has now awarded Cameron in judgment.  *See* Auslander Decl. ¶ 41.  Liberty's settlement offers throughout this case were mere fractions of the amount that it now owes Cameron.  *See id.* This is precisely the type of conduct that section 38.001 is meant to discourage.  *See Gates*, 704 S.W.2d at 740; *see also Wheelways Ins. Co. v. Hodges*, 872 S.W.2d 776, 783 n.8 (Tex. Ct. App. 1994) (attorney's "fees are in the nature of a penalty or punishment for failure to pay a just debt"); *City of Fort Worth v. Gene Hill Equip. Co.*, 761 S.W.2d 816, 822 (Tex. Ct. App. 1988) (attorney's fees recoverable under this statute "constitute a penalty designed to discourage unnecessary litigation").  Liberty "could have avoided liability for the bulk of the attorney's fees for which [it] now find[s itself] liable by making a reasonable settlement offer in a timely manner" and cannot now complain. *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986); *Young*, 2009 WL 614823, at *2 ("lack of cooperation from [d]efendant with regards to settlement negotiations" justified plaintiff's claimed attorney's fees).

Defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."  *Rivera*, 477 U.S. at 580 n.1 (rejecting claim that fee award was excessive in these circumstances).  Where, as here, the litigation was entirely

HIGHLY CONFIDENTIAL

1174216v1

unnecessary and Liberty's tactics required Cameron to spend additional time and expense litigating, a substantial fee award is entirely reasonable—particularly where those fees are ███ ████████ than the damages awarded.  *See, e.g.*, *Lewallen v. City of Beaumont*, 394 F. App'x 38, 47 (5th Cir. 2010) (affirming fee award approximately nine times greater than the compensatory damages award where, "[u]nder the totality of the circumstances of this protracted and hard-fought litigation, the facially disproportionate ratio of compensatory damages to attorneys fees and costs is neither surprising nor unreasonable"); *Flint & Assocs. v. Intercont'l Pipe & Steel, Inc.*, 739 S.W.2d 622, 62 (Tex. Ct. App. 1987) ("Having picked the game and set the stakes, the Flints cannot now complain about the size of the pot.").

2.    *The amount involved and the results obtained*

Cameron suffered $50 million in damages when Liberty wrongfully refused to pay coverage under the Policy.  Cameron's $50 million claim to coverage, alone, involves an indisputably substantial sum accounting for 20 percent of its total settlement with BP and nearly 7 percent of its 2012 profits.  *See* Ciolino Decl. ¶ 35.

The Court rendered summary judgment for Cameron on its breach of contract claim and awarded damages of 100 percent of the amount it sought, $50 million, plus pre- and post-judgment interests and costs, totaling in excess of $57 million.  *See* Order & Reasons at 23, dated October 31, 2014 [Dkt. No. 13583].  The Court also concluded that, had Cameron sued Liberty in state court, it had a viable claim to treble damages respecting Liberty's liability for bad faith under the Texas Insurance Code.  *See id.* at 27-30.  Overall, the judgment was a resounding victory for Cameron.

Texas courts routinely award attorneys' fees that are several times greater than the damages award.  *See, e.g.*, *Young v. Sanchez*, No. 04-10-00845-CV, 2011 WL 4828021, at *5-6 (Tex. Ct. App. Oct. 12, 2011) (affirming attorneys' fee approximately ten times the award of

12

actual damages); *Flint*, 739 S.W.2d at 626 (affirming attorneys' fee approximately seven times the award of actual damages).  The fees that Cameron seeks to recover here, by contrast, are <u>less than</u> ███ <u>percent</u> of the judgment and are, in light of the stakes and results, entirely reasonable. *See Malin Int'l Ship Repair & Drydock v. M/V Seim Swordfish*, 611 F. Supp. 2d 627, 635 (E.D. La. 2009 ) (Barbier, J.) ("[T]he 'amount involved and results obtained' factor . . . supports this relatively modest award of fees [$79,837.75] in comparison with the $1.2 million total amount of the outstanding claim at the outset of this case.") *aff'd sub nom. Malin Int'l Ship Repair & Drydock, Inc. v. Veolia Es Special Servs., Inc.*, 369 F. App'x 553 (5th Cir. 2010).

   3.   *The nature and length of the professional relationship with the client*

While Cameron and its counsel did not have long-term relationships at the time Cameron filed suit, Stone Pigman and Willkie Farr had been involved in matters particular to this litigation—the Oil Spill MDL and negotiating Cameron's claim for coverage for the BP settlement with all of Cameron's other insurers, respectively—for years in the case of Stone Pigman and for months in the case of Willkie Farr.  In these circumstances, it was entirely reasonable for Cameron to retain the services of both firms in connection with this case.  *See* Ciolino Decl. ¶ 38.

Cameron retained Stone Pigman in 2010 as local counsel in the Oil Spill MDL. *See* Bertaut. Decl. ¶ 6.  Thus, Stone Pigman had litigated before this Court for nearly two years at the time Cameron filed this suit and had developed an intimate familiarity with the Oil Spill MDL procedures and history.  *See id.* ¶¶ 6, 31.  Accordingly, it was reasonable for Cameron to retain Stone Pigman as counsel for the duration of the coverage litigation with Liberty.  *See* Ciolino Decl. ¶¶ 38, 49, 53.

Cameron retained Willkie Farr, an international law firm with a renowned specialty in insurance matters, in November 2011 in connection with securing coverage for its

HIGHLY CONFIDENTIAL

1174216v1

$250 million settlement with BP.  *See* Auslander Decl. ¶ 7.  At the time, Cameron faced the daunting task of securing consent and payment from its ten excess liability insurers.  *See id.* ¶ 6.  Five of Cameron's ten policies were governed by New York law, the remaining five were governed by Louisiana or Texas law, and six policies may have been subject to arbitration in London.  *See* Auslander Decl. ¶ 7.  For these reasons among others, it was reasonable for Cameron to retain an international coverage counsel such as Willkie Farr.  *See* Ciolino Decl. ¶¶ 38, 50-53.

Moreover, by the time Liberty refused to contribute to the settlement, Mr. Auslander and Willkie Farr had already successfully negotiated settlements with Cameron's nine other excess liability insurers and had been negotiating for over two months with Liberty through its outside coverage counsel, Paul Koepff of Clyde & Co., an international law firm with 40 offices worldwide.  *See* Auslander Decl. ¶¶ 7, 8.  Willkie Farr had extensive knowledge of Cameron's insurance program, of Liberty's coverage position, of Cameron's other insurers' interpretations of Liberty's coverage provisions, and of the other facts and circumstances leading to this lawsuit.  *See id.* ¶ 9.  For both monetary and strategic reasons, Cameron could not, at that point, have been expected to dismiss Willkie Farr, hire other counsel, and get that counsel up to speed.  *See id.*  Therefore, Cameron was reasonable and justified in opting to continue working with Willkie Farr and Stone Pigman in this litigation.  *See* Ciolino Decl. ¶¶ 38, 49-53.  Accordingly, the nature and length of Cameron's relationship with both firms supports an award of the requested fees.

4. *The experience, reputation, and ability of the lawyer or lawyers performing the services*

Cameron's counsel at Willkie Farr and Stone Pigman are highly experienced litigation attorneys in complex insurance and other commercial matters.  Cameron's counsel

14

HIGHLY CONFIDENTIAL

routinely work on high profile matters in courts throughout the United States and before international arbitration panels and have achieved significant successes for their clients. *See* Auslander Decl. ¶¶ 7, 12; Bertaut. Decl. ¶¶ 5, 32-33.   Cameron's lead attorneys Phillip Wittmann and Mitchell Auslander have over 50 and 30 years' experience, respectively, Carmelite Bertaut has been practicing for over 35 years, and Jeffrey Korn has been practicing for nearly 15 years. *See* Auslander Decl. ¶¶ 12-13; Bertaut. Decl. ¶¶ 5, 33.  Mr. Auslander has extensive experience litigating insurance coverage disputes, chairs Willkie Farr's Insurance Coverage Practice Group, and is ranked by *Chambers USA* and *American Lawyer Media* in the area of insurance.  *See* Auslander Decl. ¶ 12; Auslander Dec. Ex. C.  Cameron's counsel achieved large settlements with Cameron's other insurance carriers and obtained summary judgment against Liberty in this case. *See* Auslander Decl. ¶ 8.

Cameron had to contend with formidable adversaries—including nationally ranked coverage defense counsel and recognized experts on Texas insurance law.  In addition to the experience and reputation of Cameron's counsel, "[t]he standing of opposing counsel should be weighed in determining the fee, because such standing reflects the challenge faced by plaintiffs' attorneys." *Schwartz v. TXU Corp.*, 3:02-CV-2243-K, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005).  In September 2011, Liberty retained Paul Koepff, who is based in the New York office of Clyde & Co. *See* Auslander Decl. ¶¶ 7, 45.  According to his firm biography, Mr. Koepff has litigated insurance coverage disputes for over 30 years, is a contributor to reputable insurance treatises, and has been recognized on numerous occasions by *Chambers USA* as a leading insurance lawyer.  Mr. Koepff withdrew approximately six months into the litigation, after Liberty filed its motion for judgment on the pleadings, and only after

15

HIGHLY CONFIDENTIAL

Cameron threatened to file a motion to disqualify Mr. Koepff and Clyde & Co. when it came to light that Clyde & Co. represented Cameron in unrelated matters. *See id.* ¶ 49.

In November 2011, Liberty also retained Christopher Martin, a recognized expert on Texas insurance law, of Martin, Disiere, Jefferson, & Wisdom in Houston. According to his firm biography, Mr. Martin is the author of three treatises on Texas insurance law, including Texas Practice Guide: Insurance Litigation, cited by this Court in its October 31, 2014 Order and Reasons. He has edited the Journal of Texas Insurance Law since 1998 and taught insurance law at the University of Houston Law School for ten years. He has been repeatedly recognized by *Best Lawyers*, *Chambers USA*, and *Super Lawyers* in the insurance field. Mr. Martin has provided expert opinions and testimony on issues of Texas insurance law on numerous occasions.

Finally, Liberty retained Judy Barrasso of the New Orleans firm Barrasso Usdin Kupperman Freeman & Sarver, L.L.C. as local counsel. According to her firm biography, Ms. Barrasso also concentrates her practice on insurance coverage and bad faith litigation. She has been repeatedly recognized as a top Louisiana and New Orleans lawyer by *Chambers USA*, *Best Lawyers*, *Super Lawyers*, and *Benchmark Litigation.*

Liberty was represented by elite trial lawyers from highly reputable firms. The ability of Cameron's counsel to obtain such a favorable result before trial when faced with such formidable opposition "confirms the superior quality of their representations" and supports an award of the requested fee. *See Schwartz*, 2005 WL 3148350, at *30.

5.     *The fee customarily charged in the locality for similar legal services*

"Usual and customary attorney's fees" for similar breach of contract disputes are presumptively reasonable under Texas law. Tex. Civ. Prac. & Rem. Code § 38.004. Use of national coverage counsel is not unusual in coverage disputes pending in state and federal courts

16

HIGHLY CONFIDENTIAL

within the Fifth Circuit, even when the disputed policy limits are substantially less than the $50 million at issue in this litigation. *See Citadel B'casting Corp. v. Axis US Ins. Co.*, No. 2007-13559 (La. Civ. Dist. Ct—Orleans Parish) (policyholder retained national coverage counsel, Reed Smith LLP, based in New York in connection with its $9 million coverage dispute); FINFR0901509 *v. Cardtronics Inc.*, 01-13-00165-cv (Tex. Ct. App.) (insurer retained national coverage counsel, Clyde & Co., based in New York in connection with $16 million coverage dispute); *Tesoro Refining & Mkt'g Co. v. Nat'l Union Fire Ins. Co.*, Civ. A. No. 5:13-cv-00931 (W.D. Tex.) (policyholder retained national coverage counsel, Manatt Phelps & Phillips LLP, based in Los Angeles and San Francisco in connection with its $15 million coverage dispute). And it is reasonable and customary for national counsel to charge their standard rates, regardless of the location of the litigation. *See* Ciolino Decl. ¶ 58. Accordingly, Cameron's fees incurred by both its national counsel, Willkie Farr, and local counsel, Stone Pigman, are presumptively reasonable. National counsel was especially important in this case, which initially involved a tower of insurers that were located in different parts of the country and world. *See* Auslander Decl. ¶ 6.

Cameron's attorneys, law clerks, and legal assistants work in New York, Washington, D.C., and New Orleans. In working on this case, they billed at hourly rates between ▇▇▇ (for worked performed by legal assistants in 2012) and ▇▇▇ (for work performed by a senior partner in 2014). The blended rate for all attorneys, law clerks, and legal assistants who worked on this case is ▇▇▇, calculated by taking the total adjusted fees requested divided by total adjusted hours spent. These rates are consistent with normal rates in the Eastern District of Louisiana and Fifth Circuit for similar types of cases. *See* Ciolino Decl. ¶¶ 56, 58-59; ALM 2013 Billing Survey (showing New Orleans firm charged rates up to $650

HIGHLY CONFIDENTIAL

1174216v1

per hour for partners and $320 for associates and that Texas firms charged rates up to $1,125 per hour for partners and $670, on average, for associates); Janet Elliot & Mark Curriden, "Texas Lawyers Charging $1000 an Hour Rare, but Not Much Longer," *The Texas LawBook* (Mar. 1, 2012) ("There's no difference in the rates of Texas and New York firms any more."); *see also* Expert Report of Larry Feldman ¶¶ 11, 15 (concluding that Stone Pigman's rates for this litigation are consistent with local rates). Because the fees incurred by Cameron's counsel are customary for high-stakes coverage litigation in Louisiana and the Fifth Circuit, this factor too weighs in favor of granting the reasonable fees it requests.

### C. Cameron's Electronic Legal Research Expenses Are Recoverable.

Section 38.001 permits recovery of electronic legal research expenses if such expenses are normally charged to the client on grounds that such fees enable attorneys to conduct research more efficiently. *See e.g.*, *Structural Metals, Inc. v. S&C Elec. Co.*, No. SA-09-CV-984-XR, 2013 WL 3790307, at *12 (W.D. Tex. July 19, 2013); *Camargo v. Trammell Crow Interest Co.*, 318 F. Supp. 2d 448, 451 (E.D. Tex. 2004); *In re Frazin*, 413 B.R. 378, 436 (Bankr. N.D. Tex. 2009), *aff'd in part on other grounds*, 732 F.3d 3131 (5th Cir. 2013). Electronic research fees thus serve a similar function to legal assistant fees—both reduce the overall fees than an attorney will be required to charge. Cameron seeks to recover ███████ in electronic legal research expenses incurred in connection with its breach of contract claim, which includes a 25 percent discount to account for research fees associated with unrecoverable claims. Auslander Decl. ¶ 32.

### D. Cameron Properly Presented Its Breach Of Contract Claim.

Cameron properly presented its claim that Liberty breached the Policy and demanded payment of the $50,000,000 limit owed. "All that is necessary is that an assertion of a debt or claim and a request for compliance be made to the opposing party, and that the party

HIGHLY CONFIDENTIAL

1174216v1

refuse to pay the claim." *Panizo v. YMCA of Greater Houston Area*, 938 S.W.2d 163, 168 (Tex. Ct. App. 1996).  Prior to filing its claim in January 2012, Cameron directly and through counsel engaged in extensive discussions with Liberty in which Cameron asserted that Liberty had breached the Policy and that it was entitled to the entire limit for that breach.  Auslander Decl. ¶ 8.  Cameron also made several reasonable offers to settle the claim for less than policy limits even though, as this Court has concluded, Liberty had an indisputable obligation to pay full limits at the time.  *Id.* ¶ 41.  To date, Liberty has yet to pay Cameron's claim.

Liberty's "manifestly unfair and improper" and "unconscionable" denial of Cameron's claim forced Cameron to unnecessarily expend substantial sums to recover the Policy proceeds.  Order & Reasons at 14, 16, dated October 31, 2014.  Based on the detailed calculations contained in the Declarations of Mitchell J. Auslander and Carmelite Bertaut filed herewith, Cameron respectfully requests that this Court award Cameron reasonable attorneys' fees and costs totaling $3,389,445.96 and prejudgment interest on that amount.[4]  *See* Auslander Decl. ¶¶ 10, 34.  To the extent an award under section 38.001 is not permitted within the language of the Judgment, Cameron respectfully requests that the Court alter or amend the Judgment pursuant to Federal Rule of Civil Procedure 59(e).

## II.   THE COURT SHOULD AWARD CAMERON PREJUDGMENT INTEREST AT THE RATE OF 5 PERCENT FROM THE DATE IT FILED SUIT.

On October 31, 2014, the Court rendered judgment in favor of Cameron and against Liberty in the amount of $50 million, plus pre-judgment interest, for Liberty's breach of

---

[4]   An award of prejudgment interest on the fees Cameron paid before the entry of judgment is warranted here in light of the egregiousness of Liberty's conduct in refusing to pay Cameron's claim.  *See e.g.*, *Nova Cas. Co. v. Turner Const. Co.*, 335 S.W.3d 695, 706 (Tex. Ct. App. 2011) (affirming award of prejudgment interest on attorney's fees paid prior to judgment noting, "an award of equitable pre-judgment interest on attorney's fees is within the trial court's discretion").

19

HIGHLY CONFIDENTIAL

the Policy.[5]  *See* Judgment ¶ 2.   Under Texas law, Cameron is entitled to 5 percent simple interest per annum dating from January 30, 2012 through the date of judgment.  *See Johnson & Higgins, Inc.*, 962 S.W.2d at 531-32 (under Texas law, prejudgment interest accrues at the rate for postjudgment interest established by Texas Finance Code from the date suit is filed); Tex. Fin. Code § 304.003.   Accordingly, Cameron respectfully requests the Court clarify the Judgment to specify that Cameron is entitled to 5 percent pre-judgment interest calculated from January 30, 2012 through October 31, 2014.

## CONCLUSION AND PRAYER

For the reasons stated above, Cameron respectfully requests that the Court grant this Motion, amend the Judgment, and award Cameron (1) reasonable attorneys' fees and related non-taxable expenses in the amount of $3,389,445.96 pursuant to section 38.001 of the Texas Civil Practice and Remedies Code and pre-judgment interest thereon; and (2) pre-judgment interest of 5 percent per annum on the principal amount of $50 million for the period from January 30, 2012 through October 31, 2014.

---

[5]      The Court also awarded Cameron post-judgment interest pursuant to the federal post-judgment interest rate statute, 28 U.S.C. section 1961(a).  *See* Judgment ¶ 2.

HIGHLY CONFIDENTIAL

1174216v1

Dated:  November 14, 2014

Respectfully submitted,

*/s/ Carmelite M. Bertaut*

Phillip A. Wittmann, 13625
      pwittmann@stonepigman.com
Carmelite M. Bertaut, 3054
      cbertaut@stonepigman.com
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
504-581-3200
504-581-3361 (fax)

WILLKIE FARR & GALLAGHER LLP
Mitchell J. Auslander
Jeffrey B. Korn
787 Seventh Avenue
New York, New York 10019
 (212) 728-8000
mauslander@willkie.com

*Attorneys for Cameron International Corporation*

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing Memorandum in Support of Cameron International Corporation's Motion to For Attorneys' Fees and to Clarify Judgment has been served on all Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of November, 2014.

                           */s/ Carmelite M. Bertaut*

HIGHLY CONFIDENTIAL

1174216v1