UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * MDL NO. 2179 <br> * <br> * SECTION J <br> * <br> * JUDGE BARBIER |
| THIS PLEADING APPLIES TO: <br> No. 12-311 | * MAGISTRATE JUDGE SHUSHAN <br> * <br> * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I, Carmelite M. Bertaut, hereby declare:

1. I make this statement based on my personal knowledge. I am over eighteen years of age and competent to testify to the matters set forth in this declaration. I offer this declaration in support of Cameron International Corporation's Motion for Attorneys' Fees and to Clarify Judgment.

2. I graduated from Loyola University School of Law in 1977. I am licensed to practice law in the state of Louisiana and have been so licensed since 1977. Throughout this time, I have been continuously a member in good standing of the Louisiana State Bar Association. I am admitted to practice before the Eastern, Western and Middle Districts of Louisiana and the United States Fifth Circuit Court of Appeals.

3. From 1977 until December 2003, I practiced law with the New Orleans law firms of Dillon & Cambre (August 1977--December 1981); Hammett, Leake & Hammett (January 1982--June 1987) and Chaffe, McCall, Phillips, Toler & Sarpy (July 1987--December 2003). From January 2004 through the present, I have practiced law with the New

**EXHIBIT 2**

1174228v3

HIGHLY CONFIDENTIAL

Orleans law firm of Stone Pigman Walther Wittmann L.L.C. ("Stone Pigman") as Special Counsel in the firm.

4. I was appointed by the Louisiana Supreme Court to serve on the Court's Mandatory Continuing Legal Education Committee. I have served as a member of the American Bar Association House of Delegates. I am a member of the American Bar Association and have served within the leadership of the Association's Section of Litigation for the past nine years. I am a member of the Louisiana Association of Defense Counsel and the Claims and Litigation Management Alliance. I am a member of the New Orleans Bar Association and have served as president of that association.

5. In my 37 years of legal practice, I have served as counsel in a wide variety of civil law cases, including commercial suits, class actions, multi-district litigation, first and third party insurance disputes, and other complex litigation in the federal and state courts throughout the state of Louisiana, including the following:

   (i)   Representing Home Depot USA in Chinese Drywall multi-district litigation pending in the Eastern District of Louisiana;

   (ii)  Represented Washington Group International Inc. in the Hurricane Katrina levee breach cases in the Eastern District of Louisiana; and

   (iii) Represented R.J. Reynolds Tobacco Company and Brown & Williamson Tobacco Corporation in state and federal courts throughout Louisiana, including federal nationwide and state class actions against the tobacco industry.

6. In May, 2010, Stone Pigman was retained as local counsel to represent Cameron International Corporation ("Cameron") in its defense of lawsuits arising out of the April, 2010 Deepwater Horizon explosion and resultant oil spill. Since that time, Stone Pigman has continuously represented Cameron in its defense in the multi-district litigation which was established in the United States District Court for the Eastern District of Louisiana,

HIGHLY CONFIDENTIAL

*In Re: Oil Spill by the Oil Rig "Deepwater Horizon in the Gulf of Mexico, on April 20, 2010, MDL 2179* ("MDL 2179"). Over time, the number of lawsuits naming Cameron as a defendant in MDL 2179 grew to more than 400 suits.

7. When Stone Pigman was initially retained by Cameron, Beck Redden, LLP was national and coordinating counsel for Cameron in its defense of Deepwater Horizon suits. Over time, other national firms participated in the defense of Cameron in MDL 2179, including Williams & Connelly, LLP and Pillsbury Winthrop Shaw Pittman, LLP. Many of the other parties in MDL 2179 also had national and local counsel of record.

8. From the time of our retention by Cameron until April 2013, my firm was actively involved in pre-trial discovery and case management on behalf of Cameron.

9. In December 2011, Cameron negotiated a settlement with BP entities that obligated Cameron to make a $250 million payment to BP in exchange for which Cameron obtained indemnification for effectively all of its Deepwater Horizon-related losses. Nine of Cameron's ten excess liability insurers consented to and, where appropriate, contributed to Cameron's $250 million payment. Willkie Farr & Gallagher LLP ("Willkie Farr") represented Cameron with respect to negotiating coverage with its insurers.

10. Liberty Insurance Underwriters, Inc. ("LIU"), however, wrongly claimed that its policy had not attached to Cameron's loss due to its purportedly unique "other insurance" provision. LIU eventually asserted additional coverage defenses, including that Cameron improperly waived LIU's subrogation rights in the settlement with BP.

HIGHLY CONFIDENTIAL

11. In the period between the December 2011 settlement with BP and January 30, 2012, Cameron retained Stone Pigman and Willkie Farr in connection with a breach of contract suit against LIU arising from its wrongful denial of Cameron's claim for coverage in connection with the BP settlement.

12. On or about January 30, 2012, Stone Pigman and Willkie Farr filed this lawsuit on Cameron's behalf against LIU entitled *Cameron International Corporation v. Liberty Insurance Underwriters, In*c., CA No. 12-311, in which Cameron sought to recover the $50 million limits of the policy Liberty issued to Cameron, among other relief.

13. Since January 2012, Stone Pigman and Willkie Farr have continued to represent Cameron in the LIU claim. Stone Pigman's work on behalf of Cameron is fully set out in the legal bills that Stone Pigman issued to Cameron for the firm's work in the coverage claim and are produced in support of the pending fee application. See Exhibit A.

14. I have reviewed this Court's order granting a judgment of indemnity to Cameron and denying Cameron's bad faith claim. Cameron now seeks an award for its legal fees and expenses incurred in prosecuting the breach of contract claim on which it prevailed. Generally, the award Cameron seeks is for those charges incurred in factual and legal research connected with coverage analysis, the disqualification of Paul Koepff and Clyde & Co., LIU's motion for judgment on the pleadings, discovery disputes, certain motions for partial summary judgment, and interpretation of the Cameron/BP settlement agreement; attending depositions; and expert discovery.

15. While Stone Pigman's original billing entries reflect charges for all legal work rendered to Cameron on its coverage claim, I understand that Cameron may recover only those legal fees and certain expenses incurred in the successful prosecution of its breach of

HIGHLY CONFIDENTIAL

contract claim under Texas Civil Practice and Remedies Code section 38.001(8).  That is, Cameron is required to present evidence of its fees and expenses incurred in the successful prosecution of its breach of contract claim or that were necessary in support of both the breach of contract claim and another claim, and not fees and expenses incurred solely as to its bad faith claims, claim for MDL defense expenses, and claims for attorneys' fees as compensatory damages.

16. With this understanding, Stone Pigman has made certain adjustments to its invoices, as originally issued to Cameron, so as to avoid seeking recovery of unrecoverable fees in this fee application, as well as duplicative, vague, and unnecessary fees.  *See* Exhibit B.

17. Specifically, Cameron has excluded all charges for Stone Pigman's work in connection with its bad faith claims and claim for attorneys' fees as bad faith compensatory damages, except where particular issues associated with those claims are intertwined with issues also bearing on Cameron's breach of contract claim.  The excluded charges include those fees related to LIU's Motion for Partial Summary Judgment Concerning Cameron's Texas Insurance Code Claims, R. Doc. 12050.

18. Further, Cameron has excluded charges for Stone Pigman's work in connection with its claim for indemnity of MDL defense costs where we were able to determine that the charge was solely for that work.

19. To further avoid claiming unrecoverable fees, Cameron has additionally reduced:

> (i) by ██████, all fees associated with the production of legal invoices and preparation of the expert report of Dane S. Ciolino, served on October 15, 2013, to account for those expenses incurred in Cameron's claim for MDL defense costs that this Court denied;

HIGHLY CONFIDENTIAL

  (ii) by ████████, all block-billed entries which reflect time for services related to both recoverable and unrecoverable claims; and

  (iii) by ████████, all legal assistant fees, so as to exclude charges for administrative tasks, which I understand are not recoverable under 38.001.

20. Cameron has further reduced Stone Pigman's fees and expenses by an additional ████████ to ensure the exclusion of any unnecessary, duplicative, or otherwise non-recoverable work and fees.

21. As a result, Cameron has reduced the number of hours worked by Stone Pigman from ████ to ████ and the fees from ████████ to ████████, a ████ overall reduction. The blended rate for Stone Pigman's services, calculated by dividing the adjusted fees sought by the adjusted hours worked, is ████████.

22. I have reviewed the jurisprudence related to the determination of the reasonableness of fee awards. I have specifically reviewed *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) and *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), which identify those factors that the respective courts consider in deciding the reasonableness of a particular fee.

23. These factors include:

  (i) the time and labor required for the matter, the novelty and difficulty of the issues involved in the matter, and the skill required to perform the legal services competently and diligently;

  (ii) whether undertaking the matter affected the ability of the lawyer to accept significant other engagements;

  (iii) the rates customarily charged in the locality for similar services;

  (iv) the amount of damages involved and the results obtained;

  (v) the time limitations imposed by the client or the circumstances;

      (vi)    the nature and length of the lawyer's professional relationship with the client;

      (vii)   the experience, reputation, and ability of the lawyer performing the services; and,

      (viii)  whether the fee is fixed or contingent, and the degree of risk assumed by the lawyer in undertaking the representation.

24. I offer the following testimony regarding these factors.

25. As to the first factor (the time and labor required for the matter, the novelty and difficulty of the issues involved in the matter, and the skill required to perform the legal services competently and diligently), I note the following facts:

      (i)     Cameron's claim was a $50 million insurance coverage claim, which represented 20% of its quarter-billion dollar settlement with BP. The settlement provided Cameron with essentially complete indemnity as to hundreds of thousands of claims and quieted concerns of potential exposure in the billions.

      (ii)    Cameron's claim challenged LIU's novel and untested legal theory as to the meaning of its "other insurance" clause, an issue of first impression under Texas law, as well as exhaustion of underlying insurance, subrogation, and waiver issues.

      (iii)   Cameron's claim required an analysis of choice of law and related issues, resulting ultimately in the application of Texas insurance law.

      (iv)   Cameron's claim was dependent, to an extent, on the procedural history of motion practice in the largest multi-district litigation ever tried.

      (v)    Cameron's claim implicated the complex terms and conditions of the Cameron/BP settlement.

      (vi)   Prosecution of Cameron's claim required knowledge of the standing orders of the court in MDL 2179 and U.S. Fifth Circuit Court of Appeals conflict of interest principles requiring disqualification of counsel.

26. Further, LIU's tactics increased the fees that Cameron incurred. One early incident serves as an example of this point. When LIU filed its response to the Cameron complaint on March 29, 2012, it was represented by three different law firms: two partners of the New

HIGHLY CONFIDENTIAL

Orleans firm, Barrasso, Usdin, Kupperman, Freeman & Sarver, LLC; two partners of the Houston firm, Martin, Disiere, Jefferson & Wisdom, LLP; and a New York partner, Paul R. Koepff, of the international law firm, Clyde & Co. LLP. R. Doc. 6147. Because Mr. Koepff's firm was concurrently representing Cameron in another matter, and, as counsel for LIU, was also adverse to Cameron, Mr. Koepff and his firm had a conflict of interest that warranted his withdrawal from representing LIU. First, Cameron orally requested that Mr. Koepff and his firm withdraw from the representation. Then, on May 15, 2012, Cameron communicated its demand in writing. For several weeks LIU refused, forcing Cameron to incur unnecessary expenses to prepare a motion to disqualify counsel. Ultimately, Cameron was forced to seek a conference with the Court. Only upon the Court's intervention did Mr. Koepff and his firm withdraw from representing LIU in connection with this litigation on June 20, 2011.

27. As to the second factor (whether undertaking the matter affected the ability of the lawyer to accept significant other engagement), on occasion, our prosecution of Cameron's coverage case required the substantial attention of Stone Pigman attorneys to the exclusion of other matters, e.g., expert discovery.

28. As to the third factor (the rates customarily charged in the locality for similar legal services), I offer the following testimony:

    (i)     The hourly rates charged by Stone Pigman in the Cameron coverage claim are set forth in the accompanying invoices, which identifies the lawyers and legal staff involved. See. Ex. A. The rates set forth were the rates in place when Cameron retained our firm for its defense in MDL 2179 in May 2010. In December 2011, when we were retained for the coverage dispute, Stone Pigman continued the same hourly rates still in place, which rates continue to this date. That is, Stone Pigman's hourly rates for Cameron's representation have not increased in almost three years.

HIGHLY CONFIDENTIAL

  (ii) Stone Pigman's blended hourly rate in connection with this matter is just ███.

  (iii) In the course of my 37 years of legal practice in the state of Louisiana, I have become familiar with prevailing market rates for legal fees in the Eastern District of Louisiana, including those rates for local attorneys engaged in large, complex litigation.

  (iv) Based on my knowledge of the market and personal experience, the rates charged by Stone Pigman for the Cameron insurance coverage claim are consistent with prevailing market rates in the Eastern District of Louisiana in comparable cases involving attorneys of similar qualifications, skill, and experience.

29. As to the fourth factor (the amount of damages sought and the results obtained), I offer the following testimony:

  (i) A $50 million claim constitutes significant litigation regardless of the venue in which it is brought.

  (ii) Cameron was successful in obtaining a pre-trial judgment that LIU owed it $50 million plus interest. I am aware that LIU's pre-judgment settlement offers never amounted to even half the amount of the judgment.

  (iii) The judgment obtained by Cameron preserves its ability to collect insurance coverage even where third parties do not honor contractual indemnity agreements. This result is of great importance to Cameron and to other companies engaged in oil and gas exploration and production because contractual indemnities are common and insureds rely on their insurers to pay precisely when indemnification is not forthcoming.

30. As to the fifth factor (the time limitations imposed by the client or the circumstances), delay in the case was particularly unpalatable to Cameron. LIU did not appear to have any reasonable justification for its position, and was engaged in a war of attrition so that Cameron would abandon much of the insurance coverage it had purchased. As a result, Cameron requested that we prosecute the claim as quickly as possible.

31. As to the sixth factor (the nature and length of the lawyer's professional relationship with the client), Stone Pigman was first retained by Cameron for its Deepwater Horizon

HIGHLY CONFIDENTIAL

defense in May, 2010, and by the time it was retained for the LIU coverage claim, it had worked closely with Cameron and its national coordinating firms for approximately twenty months. Stone Pigman was Cameron's only counsel in the coverage claim who had been involved in the MDL and was the most knowledgeable about MDL history and procedures.

32. As to the seventh factor (the experience, reputation, and ability of the lawyer performing the services), the Stone Pigman attorneys representing Cameron are experienced in complex litigation and locally respected. Stone Pigman's knowledge of the local bar and community aided Cameron's case. Counsel are familiar with opposing local counsel, the court, and the legal community in general. This familiarity also facilitated the assessment of potential legal experts, including Dane Ciolino.

33. The Stone Pigman attorneys who primarily represented Cameron in the coverage suit are seasoned professionals with extensive experience in complex litigation:

   (i) **Phillip A Wittmann**, Partner: Mr. Wittmann graduated from Tulane Law School in 1961 and joined Stone Pigman that same year. He has been licensed to practice law in the state of Louisiana since 1961. He is a member in good standing of the Louisiana State Bar Association and has practiced throughout the state of Louisiana as well as in other states including Mississippi and Florida. He has served as counsel in criminal and civil cases in a wide variety of practice areas, including complex litigation and multi-district litigation in the United States courts. Mr. Wittmann is a Fellow of the American College of Trial Lawyers, the American Academy of Appellate Lawyers and the International Society of Barristers. He has served as a member of the Civil Rules Advisory Committee of the Judicial Conference of the United States and a member of the American Bar Association House of Delegates. He has served as Chairman of the Louisiana State Board of Legal Specialization and as President of the New Orleans Bar Association. He has received numerous awards, including the American Inns of Court Professionalism Award in the Fifth Circuit in 2005; the Louisiana Bar Foundation's Curtis Boisfontaine Trial Advocacy Award in 2008 the Louisiana Bar Association's Distinguished Attorney Award in 2010. Mr. Wittmann has

HIGHLY CONFIDENTIAL

       served as counsel on a number of significant cases in state and federal courts involving multiple parties, including many nationwide class action cases and multi-district litigation.  He has been appointed as liaison counsel in a number of complex litigations, including in the Vioxx and Chinese Drywall multi-district litigations pending in the Eastern District of Louisiana and in the Deepwater Horizon Oil Spill Eastern District litigation, MDL 2179, all pending in the Eastern District of Louisiana;

(ii)   **Mary L. Dumestre**, Partner: Ms. Dumestre graduated from Loyola Law School, New Orleans in 1988 and joined Stone Pigman that same year.  Since then, Ms. Dumestre has practiced with Stone Pigman in New Orleans in a wide variety of matters, including insurance coverage disputes and complex civil matters.  She has represented the London excess market in multiple toxic tort cases and has defended major insurance companies in a class action alleging bad faith claims and in other multiple, varied property damage claim lawsuits, including hurricane, mold, termite, construction and wind damage claims.  She sits as a Chairperson of a Louisiana Attorney Disciplinary Board Hearing Committee.  Ms. Dumestre has served as an adjunct professor of law on insurance coverage issues at Loyola Law School;

(iii)   **Keith Hall,** Partner**:**  Mr. Hall graduated from Loyola Law School New Orleans in 1996 and joined the firm that same year.  His experience has included oil and gas litigation and, until he left the firm to assume a professorship at Louisiana State University Law School, he was counsel of record for Cameron in the MDL 2179**;**

(iv)   **Kathryn M. Knight**, Partner: Ms. Knight graduated from Loyola Law School New Orleans in 2003 and joined the firm that same year.  She has practiced in a number of areas of civil practice, including employment law, gaming regulation and matters involving the application and interpretation of the Louisiana Rules of Professional Conduct;

(v)   **Abigayle C. Farris,** Associate**:**  Ms. Farris graduated from Washington University in St. Louis Law School in 2008 and practiced law in Nevada until she joined Stone Pigman in 2010.  Ms. Farris has been involved in a number of complex matters since joining Stone Pigman including first party coverage disputes**;**

(vi)   **Jared Davidson**, Associate: Mr. Davidson graduated from Tulane Law School in 2009 and joined the firm upon graduation;

(vii)   **Lauren Godshall,** Associate: Ms. Godshall **g**raduated from New York University Law School in 2003 and joined Stone Pigman in 2007; and

(viii)   **Maggie Broussard**, Associate: Ms. Broussard graduated from Tulane University Law School in 2010 and joined Stone Pigman that same year.

HIGHLY CONFIDENTIAL

34. Stone Pigman's legal assistants are qualified to perform substantive legal work based on their educational background and training under the direction of Stone Pigman attorneys. That work includes, but is not limited to, conducting factual research and analysis of documents produced and deposition testimony; editing, cite-checking, blue booking, and "Shepardizing" court filings, and; coordinating document discovery. The work actually performed by Stone Pigman legal assistants in prosecution of Cameron's claims is more fully described in the invoices attached hereto.

35. As to the last factor (whether the fee is fixed or contingent, and the degree of risk assumed by the lawyer in undertaking the representation), Stone Pigman charged an hourly rate for its services, which was paid by Cameron.

Pursuant to 28 USC 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 14th day of November, 2014 in New Orleans, Louisiana.

_____/s/ Carmelite M. Bertaut_____
Carmelite M. Bertaut

HIGHLY CONFIDENTIAL

# EXHIBIT A

# TO

# DECLARATION

# OF

# CARMELITE M. BERTAUT

# SUBMITTED UNDER SEAL

# EXHIBIT B

# TO

# DECLARATION

# OF

# CARMELITE M. BERTAUT

# SUBMITTED UNDER SEAL