# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to: 10-4536. | * * * | |
| | * | Honorable CARL J. BARBIER |
| | * * | |
| | * | Magistrate Judge SHUSHAN |
| | * * | |
| | * | |

---

## BP EXPLORATION & PRODUCTION INC.'S MEMORANDUM IN SUPPORT OF ITS FEDERAL RULE OF CIVIL PROCEDURE 12(C) MOTION TO ESTABLISH AS A MATTER OF LAW THE MAXIMUM CWA PER-BARREL CIVIL PENALTY

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000

Robert C. "Mike" Brock
Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000

Don K. Haycraft (Bar # 14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.*

<u>**TABLE OF CONTENTS**</u>

Page

INTRODUCTION.................................................................................................................1

LEGAL BACKGROUND ...................................................................................................3

ARGUMENT.......................................................................................................................4

I.      BOTH EPA'S AND THE COAST GUARD'S ATTEMPTED PENALTY INFLATION
        REGULATIONS ARE SUBSTANTIVELY UNLAWFUL................................................4

        A.      The Attorney General Is the Agency Head for Purposes of Inflating
                CWA Section 1321(b)(7)(D) Penalties, Not the Administrator of EPA
                or the Commandant of the Coast Guard, Making Legally Invalid Both
                40 C.F.R. § 19.4 and 33 C.F.R. § 27.3 as Applied Here..........................4

        B.      Executive Order 12,777 Cannot Save EPA's Inflation Regulation as
                Applied Here and at Most That Order Would Lead to a Conclusion by
                Analogy That the Coast Guard's Inflation Regulation Controls Over
                EPA's. ......................................................................................................9

        C.      Even If BPXP's Other Arguments Are Not Accepted, Fair Notice
                Requires That Where Two Agencies Adopt Conflicting Regulations
                Purporting to Inflate the Same Statutory Penalty, the Regulated Party
                Be Subjected Only to the Lesser Penalty................................................11

II.     BOTH EPA'S AND THE COAST GUARD'S ATTEMPTED PENALTY INFLATION
        REGULATIONS ARE ALSO PROCEDURALLY UNLAWFUL....................................12

CONCLUSION ..................................................................................................................15

EXHIBIT 1:  Inflation Acts Compiled for Convenience of the Court ............................EX1-1

EXHIBIT 2:  The 20 Federal Agencies Granted Powers by CWA Section 1321
             and Executive Order 12,777.......................................................................EX2-1

EXHIBIT 3:  History of CWA Section 1321(b)(7)(D) Penalty Inflation..........................EX3-1

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      **Page(s)**

*Adams Fruit Co. v. Barrett,*
   494 U.S. 638 (1990)............................................................................7

*Bowen v. American Hosp. Ass'n,*
   476 U.S. 610 (1986)..........................................................................14

*Chevron U.S.A., Inc. v. NRDC,*
   467 U.S. 837 (1984)............................................................................7

*Collins v. NTSB,*
   351 F.3d 1246 (D.C. Cir. 2003)........................................................14

*DeNaples v. Office of Comptroller of Currency,*
   706 F.3d 481 (D.C. Cir. 2013)..........................................................14

*Diamond Roofing Co. v. OSHRC,*
   528 F.2d 645 (5th Cir. 1976) ..............................................................6

*General Elec. Co. v. EPA,*
   53 F.3d 1324 (5th Cir. 1995) ...........................................................12

*In re Coastal Plains, Inc.,*
   179 F.3d 197 (5th Cir. 1999) ..............................................................1

*In re Deepwater Horizon,*
   --- F. Supp. 2d ---, 2014 WL 4375933 (E.D. La. Sept. 4, 2014).............................1

*In re Flugence,*
   738 F.3d 126 (5th Cir. 2013) ..............................................................1

*Petroleum Commc'ns, Inc. v. FCC,*
   22 F.3d 1164 (D.C. Cir. 1994)..........................................................15

*Shell Offshore Inc. v. Babbitt,*
   238 F.3d 622 (5th Cir. 2001) ...........................................................13

*Sorenson Commc'ns, Inc. v. FCC,*
   755 F.3d 702 (D.C. Cir. 2014)..........................................................13

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.,*
   463 U.S. 29 (1983) ............................................................................5

*Russello v. United States*,
  464 U.S. 16 (1983) ............................................................................................5

*Satellite Broad. Co. v. FCC*,
  824 F.2d 1 (D.C. Cir. 1987) ...........................................................................12

*Tull v. United States*,
  481 U.S. 412 (1987).........................................................................................2

*United States v. Johnson*,
  632 F.3d 912 (5th Cir. 2011) .........................................................................13

*United States v. NBC Bank-Rockdale*,
  7 F.3d 63 (5th Cir. 1993) ...............................................................................11

*United States v. Wong Kim Bo*,
  472 F.2d 720 (5th Cir. 1972) (per curiam) ....................................................11


**United States Constitution**

U.S. Const. art. I, § 9 cl. 3 (*Ex Post Facto* Clause) ...............................................5


**Statutes**

***Administrative Procedure Act ("APA")***

  5 U.S.C. § 553.............................................................................................. 12-13

  5 U.S.C. § 553(b)(3)(B)....................................................................................13, 14

***Clean Water Act ("CWA")***

  Section 309(a)(3), 33 U.S.C. § 1319(a)(3)....................................................... 4-5

  Section 311(b)(3), 33 U.S.C. § 1321(b)(3) ........................................................10

  Section 311(b)(4), 33 U.S.C. § 1321(b)(4) ........................................................10

  Section 311(b)(5), 33 U.S.C. § 1321(b)(5) .....................................................5, 10

  Section 311(b)(6), 33 U.S.C. § 1321(b)(6) ..........................................................5

  Section 311(b)(6)(A), 33 U.S.C. § 1321(b)(6)(A) ...........................................5, 10

  Section 311(b)(7), 33 U.S.C. § 1321(b)(7) ................................................. *passim*

Section 311(b)(7)(D), 33 U.S.C. § 1321(b)(7)(D) ........................................................ *passim*

Section 311(c), 33 U.S.C. § 1321(c) ................................................................................10

Section 311(d), 33 U.S.C. § 1321(d) ...............................................................................10

Section 311(d)(2)(A), 33 U.S.C. § 1321(d)(2)(A) ..............................................................5

Section 311(d)(2)(G), 33 U.S.C. § 1321(d)(2)(G) ...........................................................10

Section 311(e), 33 U.S.C. § 1321(e) ...........................................................................6, 10

Section 311(f)(5), 33 U.S.C. § 1321(f)(5) .......................................................................10

Section 311(j)(1)(A), 33 U.S.C. § 1321(j)(1)(A) .............................................................10

Section 311(j)(1)(C), 33 U.S.C. § 1321(j)(1)(C) .............................................................10

Section 311(j)(1)(D), 33 U.S.C. § 1321(j)(1)(D) .............................................................10

Section 311(j)(4), 33 U.S.C. § 1321(j)(4) .......................................................................10

Section 311(j)(5), 33 U.S.C. § 1321(j)(5) .......................................................................10

Section 311(j)(6)(A), 33 U.S.C. § 1321(j)(6)(A) .............................................................10

Section 311(j)(6)(B), 33 U.S.C. § 1321 (j)(6)(B) .............................................................10

Section 311(j)(7), 33 U.S.C. § 1321(j)(7) .......................................................................10

Section 311(*l*), 33 U.S.C. § 1321(*l*) ...............................................................................5

Section 311(m)(1), 33 U.S.C. § 1321(m)(1) ....................................................................10

Section 311(t), 33 U.S.C. 1321(t) .....................................................................................5

Section 504, 33 U.S.C. § 1364 .....................................................................................7, 10

Section 506, 33 U.S.C. § 1366 .....................................................................................7, 10

*Oil Pollution Act ("OPA")*

OPA Session Law, Public Law 101-380, 104 Stat. 484 (Aug. 18, 1990) .................................9

*False Claims Act ("FCA")*

31 U.S.C. § 3729 ..............................................................................................................8

31 U.S.C. § 3729(a)(1)(G) ................................................................................................8

*Other Federal Statutes*

3 U.S.C. § 301 ...................................................................................................9

28 U.S.C. § 516 ...................................................................................6, 7, 8, 10

28 U.S.C. § 2461 ................................................................................................3

Act Concerning Federal Reports, Pub. L. 105-362, 112 Stat. 3293, § 1301(a) ........................3

Debt Collection Improvement Act of 1996 ("DCIA"), Pub. L. 104-134, Title III,
    § 31001(s)(2), 110 Stat. 1321 (Apr. 26, 1996)................................................4, 15


**Regulations**

*EPA Regulations*

40 C.F.R. § 19.4 (2010) ............................................................................. *passim*

40 C.F.R. § 19.4 (2014) ....................................................................................11

*Coast Guard Regulations*

33 C.F.R. § 27.3 (2010) ............................................................................. *passim*

33 C.F.R. § 27.3 (2014) ....................................................................................11

*Justice Department Regulation*

28 C.F.R. § 85.3(a)(9) ........................................................................................8


**Executive Orders**

Executive Order 12,777 (Oct. 18, 1991)...........................................................9, 10

Executive Order 13,638 (Mar. 15, 2013)...............................................................9

Executive Order 12,866 (October 4, 1993)............................................................14


**Federal Register Notices**

56 Fed. Reg. 54,757 (Oct. 22, 1991).....................................................................9

61 Fed. Reg. 69,360 (Dec. 31, 1996) .......................................................................................13

64 Fed. Reg. 47,099 (Aug. 30, 1999) ........................................................................................8

73 Fed. Reg. 75,340 (Dec. 11, 2008) .........................................................................................6

78 Fed. Reg. 17,589 (Mar. 15, 2013) .........................................................................................9


**Other Regulatory Material**

GAO, *Civil Penalties: Agencies Unable to Fully Adjust Penalties for Inflation Under
    Current Law* (March 2003) ...................................................................................................15

## INTRODUCTION

As this Court recognized in its Phase One trial decision,[1] a substantial issue remains pending that the Court must resolve concerning the conflict between the Environmental Protection Agency's ("EPA's") and the Coast Guard's adoption of ***two separate regulations attempting to inflate by different amounts the same <u>unitary</u> maximum per-barrel penalty figure set by Congress*** in Clean Water Act ("CWA") Section 311(b)(7)(D), 33 U.S.C. § 1321(b)(7)(D) (Congress setting maximum at $3,000/barrel).[2]  *Compare, e.g.*, 33 C.F.R. § 27.3 (2010) (Coast Guard inflation to $4,000/barrel) *with* 40 C.F.R. § 19.4 (2010) (EPA inflation to $4,300/barrel). BP Exploration & Production Inc. ("BPXP") files this Motion to establish that (1) neither regulation is valid and hence, the maximum per-barrel penalty remains fixed at the $3,000 level originally set by Congress or, (2) in the alternative, the Coast Guard's regulation controls.[3]

As BPXP will show at trial, the circumstances of this spill (and especially BPXP's multi-billion dollar response efforts) mean that nothing even approaching the maximum penalty should be awarded once the Court hears and weighs all relevant facts.  Indeed, past CWA penalty awards have never been set close to the statutory maximums.  Nevertheless, this does not mean that the issue here of the maximum penalty is irrelevant.  Instead, the January 2015 Penalty Phase trial should commence only with a proper understanding of the law firmly in mind.[4]  Accordingly, this

---

[1] *See* Rec. Doc. 13,381-1 at 114 n.164 (Sept. 9, 2014) (revised Phase One trial decision).

[2] All subsequent statutory citations in this Memorandum are to the United States Code only (not to session laws), except as to uncodified statutes—two of which are critical to this BPXP Motion (see below).

[3] BPXP also continues to reserve all of its rights to maintain its CWA liability appeal in Fifth Circuit Case No. 12-30883 and its rights to seek appeal of this Court's September 4, 2014 and November 13, 2014 orders.  *See In re Deepwater Horizon*, --- F. Supp. 2d ---, 2014 WL 4375933 (E.D. La. Sept. 4, 2014) (Phase One trial order); Rec. Doc. 13644 (Nov. 13, 2014) (order denying BPXP's motion for a new trial).

[4] *See, e.g., In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013) (exercises of discretion must be guided by properly grounded and correct legal conclusions) (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 204-05 (5th Cir. 1999)).

Memorandum details the errors in EPA's and the Coast Guard's inflation regulations and shows that no federal agency has ever issued a regulation that is both *substantively **and** procedurally* valid to increase the penalty maximum beyond $3,000 per barrel that Congress set in the CWA.

Specifically, EPA's and the Coast Guard's regulations are infirm on these grounds:

**(1)** neither agency possesses a delegation of authority to increase CWA Section 1321(b)(7) penalties for inflation — only the *Attorney General* possesses that power and he has never attempted to exercise it, leaving the statutory $3,000 per-barrel figure in Section 1321(b)(7)(D) that Congress originally established in place, unaltered;

**(2)** even if either EPA or the Coast Guard possessed the authority to inflate the relevant penalties, they have not adopted procedurally valid regulations to do so because (a) they never considered the issue of which agency among many potential agencies was delegated the authority to inflate Section 1321(b)(7) penalties; and (b) the regulations they did adopt were issued without notice and comment;

**(3)** even if EPA and the Coast Guard were held to each possess the authority in different geographic spheres to adopt penalty-inflation regulations (and assuming their existing regulations were both substantively and procedurally valid despite their failure to define those spheres in advance), the CWA contemplates only a single, unitary per-barrel penalty figure in Section 1321(b)(7)(D), not penalties varying based on spill location; and

**(4)** even if all of the preceding arguments were rejected, at the very least, fair notice to BPXP prior to the *Deepwater Horizon* Incident requires that the lesser inflation-adjusted maximum penalty adopted by the Coast Guard of $4,000 per barrel must control.

Accordingly, this Court should declare as a matter of law, *before the Penalty Phase trial begins*, the applicable maximum per-barrel penalty so that it can calibrate its discretion under *Tull v. United States*, 481 U.S. 412, 426-27 (1987), in light of the governing law.  Failure to do so risks infecting with legal error its future fact-based and equitable determinations of the appropriate per-barrel penalty amount.  This is especially true because the issue of whether this Court will apply the bottom-up or top-down method of penalty assessment remains pending.  *See* Rec. Docs. 12479 (Mar. 10, 2014) (U.S. motion), 12533 (Mar. 17, 2014) (BPXP opposition), and 12567 (Mar. 20, 2014) (U.S. reply).  Where it is unclear whether the top-down method (which BPXP continues to believe is invalid) remains an approach the Court is considering using, it is necessary for the Court

2

to decide the applicable maximum per-barrel penalty so it can gauge the facts at trial in light of that legal ceiling.

## LEGAL BACKGROUND

As the Court is aware, CWA Section 311(b)(7)(D) provides that if gross negligence or willful misconduct by a liable party is found, the maximum penalty is $3,000 per barrel.  However, the United States asserts that the applicable maximum penalty in this case is $4,300 per barrel.  U.S. Complaint, ¶ 75 (Dec. 15, 2010), Rec. Doc. 1 in Case No. 10-4536.  Specifically, the United States asserts that EPA's penalty inflation regulation at 40 C.F.R. § 19.4 controls.  *Id.*

Two substantive statutes define and constrain the government's ability to establish that the facial penalty of $3,000 per barrel can be increased for inflation.  The two statutes in question are (1) the Federal Civil Penalties Inflation Adjustment Act of 1990 ("FCPIAA"), as amended by (2) the Debt Collection Improvement Act of 1996 ("DCIA").[5]

Key to the text of the FCPIAA as amended by the DCIA is Section 4, which provides that the "head of each agency shall … by regulation [inflate] each civil monetary penalty provided by law within the jurisdiction of the Federal agency."  Section 5 of the FCPIAA/DCIA sets out the method pursuant to which such civil penalty amounts can be inflated.  Section 5(b) ties that method to comparing the Consumer Price Index ("CPI") for the month of June in the calendar year before the inflation adjustment regulation being promulgated to the CPI for the month of June in the calendar year where the civil penalty "was last set or adjusted pursuant to law."  Section 5(a) of the statute as amended establishes a set of rounding rules for such inflation regulations.  And

---

[5] A third statute, Pub. L. 105-362, 112 Stat. 3293, § 1301(a), makes a purely non-substantive change in section numbering to the prior two statutes that created penalty-inflation authority. A note to 28 U.S.C. § 2461 houses the operative text of the main two statutes (the FCPIAA and DCIA), but BPXP reproduces in Exhibit 1 their combined text for the convenience of the Court, with certain formatting improvements.  All further citations in this Motion to the FCPIAA/DCIA, except where noted, are to Exhibit 1.

Section 6 provides that any civil penalty inflation amount can only apply to conduct occurring after the date that the relevant agency inflation regulations first became effective.  Finally, in a provision of the DCIA that Congress did not choose to number using the original single-digit section schema of the FCPIAA, Congress directed that the first time a particular penalty amount in an existing statute is inflated by the agency head with jurisdiction, the amount of the increase cannot exceed 10 percent.  *See* DCIA, Pub. L. 104-134, Title III, § 31001(s)(2), 110 Stat. 1321-373 (Apr. 26, 1996).

## ARGUMENT

I.   **BOTH EPA'S AND THE COAST GUARD'S ATTEMPTED PENALTY INFLATION REGULATIONS ARE SUBSTANTIVELY UNLAWFUL.**[6]

A.   **The Attorney General Is the Agency Head for Purposes of Inflating CWA Section 1321(b)(7)(D) Penalties, Not the Administrator of EPA or the Commandant of the Coast Guard, Making Legally Invalid Both 40 C.F.R. § 19.4 and 33 C.F.R. § 27.3 as Applied Here.**

CWA Section 1321(b)(7) does not confer the authority to bring civil actions on the EPA Administrator.  And Section 1321(b)(7)(D) does not make clear in any other way what federal actor is the agency head for purposes of the FCPIAA/DCIA.  Nor do any of the other relevant subsections of Section 1321(b)(7).  These points are critical because CWA Section 1321 does not tie to any single agency (nor is EPA entitled to any sort of presumption that it is the lead agency for purposes of all federal action under the Clean Water Act).  By contrast, the general CWA enforcement provisions *do* confer on the Administrator the ability to file in-court actions.  33

---

[6] In its Answer to the United States' complaint, BPXP asserted as its Tenth Affirmative Defense that "Plaintiff is not entitled to any penalty . . . to the extent that such penalties . . . sought, and the alleged means of determining them are so speculative, uncertain, arbitrary, and/or excessive that a judgment awarding Plaintiff such . . . penalties would not conform with due process of law and/or the requirements of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff also is not entitled to any relief that is otherwise in contravention of the Constitution of the United States."  In filing this Motion, and asserting that the maximum allowable penalty should be no more than $3,000 (*see* Parts I.A. to B., *infra*) or, in the alternative, $4,000 a barrel (*see* Part I.C., *infra*), BPXP is not waiving its constitutional arguments.  BPXP will address those arguments, as appropriate, in its post-trial briefing.

U.S.C. § 1319(a)(3) ("[If] the Administrator finds that any person is in violation of [various CWA provisions not including Section 1321], he shall issue an order requiring such person to comply with such section or requirement, or **he shall bring a civil action** in accordance with subsection (b) of this section.") (emphasis added).[7]

Rather, a veritable profusion of agencies are granted various **separate and overlapping** spheres of authority under Section 1321.  Indeed, at least 20 agencies are afforded CWA Section 1321 powers.[8]  Yet neither EPA's nor the Coast Guard's CWA civil penalty inflation regulations in 40 C.F.R. § 19.4 or 33 C.F.R. § 27.3 (or any of the underlying *Federal Register* notices) even attempt to grapple with the question of which agency is the lead agency for Section 1321(b)(7) purposes, let alone attempt to explain why that agency possesses the relevant "jurisdiction" required in Section 4 of the FCPIAA/DCIA for any agency to assert that it can validly inflate the civil penalty amount in Section 1321(b)(7).  *See, e.g.*, *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (arbitrary and capricious for an agency to "entirely fail[] to consider an important aspect of the problem").

---

[7] *See also Russello v. United States*, 464 U.S. 16, 23 (1983) "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) (per curiam)).  Further showing the fact that Congress knows how to delegate enforcement authority to the EPA Administrator when it wants to and it simply did not do so in CWA Section 1321(b)(<u>7</u>) is the related provision in CWA Section 1321(b)(<u>6</u>).  CWA Section 1321(b)(6)(A) specifically grants the Administrator the authority to pursue **administrative penalties** in quasi-judicial proceedings held inside the EPA itself. But, of course, the penalties being sought here are not administrative ones since this Court is not an arm of EPA. Additionally, per-barrel penalties are not even provided for in CWA Section 1321(b)(6) administrative actions; they can be awarded only in judicial actions like this one before an Article III Judge.  EPA is not the lead agency for purposes of filing and pursuing civil actions for per-barrel penalties; only the Justice Department is.

[8] *See generally* Exhibit 2 (listing the 20 agencies). *See also* 33 U.S.C. § 1321(b)(5) (referring to making notices to "the **appropriate agency** of the United States government") (emphasis added); *id.* § 1321(*l*) (authorizing the President to delegate as he sees fit "to the heads of those Federal departments, agencies, and instrumentalities which he determines to be appropriate") and § 1321(d)(2)(A) (allowing the President to assign cleanup responsibilities, theoretically, to any "Federal departments and agencies").  Several other agencies are referenced in CWA Section 1321(t), but we do not list them in Exhibit 2 because that subsection was added by the Restore Act **after** the *Deepwater Horizon* Incident occurred and thus cannot lawfully inform how to construe the penalty provisions of the CWA applicable to the Incident itself.  *See, e.g.*, U.S. Const. art. I, § 9 cl. 3 (*Ex Post Facto* Clause).

It cannot be the law that 20 or more federal agencies all simultaneously possess the power to inflate the civil penalty amounts in Section 1321(b)(7).  That would be a recipe for legal chaos and could obviously lead to situations in which the competing agencies adopt differing inflation amounts, leaving the regulated community in confusion.  Indeed, that is precisely what EPA and the Coast Guard have done in Sections 19.4 and 27.3 as applicable to 2010 conduct — set differing inflated amounts of Section 1321(b)(7)(D) penalties, engendering confusion and defeating fair notice.[9]  Indeed, both agencies have failed to even try to define a line of demarcation of any sort to explain which of the two competing regulations might apply to different sets of facts.  And the statute would tolerate no such line since it sets a unitary maximum penalty amount applicable in situations of heightened liability.  Nothing in the CWA or the inflation statutes indicates that Congress wanted the penalty ceiling to vary based on any interagency division of authority.

The right answer to the question of which federal actor is the head of agency for Section 1321(b)(7)(D) jurisdictional purposes is the Attorney General.  This is because — as this Court well knows — an award of civil penalties under Section 1321(b)(7) is made by this Court, not by any agency.  And the Executive Branch actor with the exclusive authority to bring such a civil action in this forum is the Attorney General.  28 U.S.C. § 516 ("Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.").  Of course, as that statute makes clear, the Attorney General can delegate his powers to initiate federal court litigation to other Justice Department

---

[9] *See, e.g., Diamond Roofing Co. v. OSHRC*, 528 F.2d 645, 649 (5th Cir. 1976) (penal regulations must provide "ascertainable certainty"); 73 Fed. Reg. 75,340, 75,341 (Dec. 11, 2008) (EPA rulemaking recognizing that penalty inflation must comport with fair notice).

officials, as occurred here.[10]   The Clean Water Act itself reinforces this point in an exception

proving the rule.   In 33 U.S.C. § 1364, the EPA Administrator is empowered to bring emergency

**injunctive relief-only actions** to restrain imminent and substantial endangerment.   This confirms

that the pursuit of **CWA civil monetary penalties** in federal courts fits comfortably within the

default Section 516 powers of the Attorney General.   *See also* 33 U.S.C. § 1366 ("The

Administrator shall request the Attorney General to appear and represent the United States in any

civil or criminal action instituted under this chapter to which the Administrator is a party.   Unless

the Attorney General notifies the Administrator within a reasonable time, that he will appear in a

civil action, attorneys who are officers or employees of the Environmental Protection Agency shall

appear and represent the United States in such action.").

While CWA Section 1366 allows EPA to bring certain actions in District Court if the

Attorney General chooses not to act, such a power arrangement makes clear the Attorney General's

primacy over EPA.   Hence, for purposes of the governing inflation-adjustment statutes (the

FCPIAA and DCIA), the Attorney General is the relevant head of agency.   Congress's delegation

is clear under the FCPIAA/DCIA in this instance:   it is a delegation to inflate the per-barrel civil

penalties in CWA Section 1321(b)(7) to the Attorney General alone.   EPA's (and the Coast

Guard's) relevant attempts to inflate the Section 1321(b)(7)(D) maximum penalty are *ultra vires*

for those agencies and therefore their inflation regulations are void.[11]   Here, the congressional

---

[10] *See* U.S. Complaint, Rec. Doc. 1, Case No. 10-4536 (signed by numerous officials from three Justice Department components:  (1) the Civil Division, (2) the Environment and Natural Resources Division, and (3) the U.S. Attorney's Office for the Eastern District of Louisiana).  Precisely because CWA Section 1321(b)(7) confers authority to bring this action only on the Attorney General, and does not even specify which federal agencies can request the Attorney General to commence such an action, the Complaint does not allege that it is brought on behalf of EPA (or the Coast Guard or any other federal agency) and nowhere refers to EPA.

[11] *See, e.g.*, *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649 (1990) ("A precondition to deference under *Chevron* is a congressional delegation of administrative authority."); *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842-43 & n.9 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress ….   The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").

intent is that not just any agency be empowered to inflate civil penalties, but instead that the agency must possess the relevant span of "jurisdiction" that Section 4 of the FCPIAA/DCIA demands. The Attorney General possesses that jurisdiction as to civil penalties being sought in court under Section 1321(b)(7).

The False Claims Act ("FCA") and an FCA implementing regulation make exceptionally clear that no principle of law prevents the Attorney General from issuing substantive regulations where such authority has been delegated to him by Congress.  *See* 31 U.S.C. § 3729 (any person who violates 31 U.S.C. § 3729(a)(1)(G) "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, plus 3 times the amount of damages which the Government sustains because of the act of that person.").  Pursuant to that provision, the Attorney General has acted to inflate civil monetary penalties under the FCA.  *See* 28 C.F.R. § 85.3(a)(9); 64 Fed. Reg. 47,099, 47,104 (Aug. 30, 1999) (AG Order # 2249-99).  This is undoubtedly because enforcement of the False Claims Act in District Court falls into the Attorney General's jurisdictional purview, *see* 28 U.S.C. § 516, just like the action at issue here captioned *United States v. BPXP*, No. 10-4536.

The upshot of the foregoing is clear — the EPA regulation at 40 C.F.R. § 19.4 that the United States seeks to apply to obtain civil penalties from BPXP of up to $4,300 per barrel of oil spilled is invalid under Section 4 of the FCPIAA/DCIA because EPA lacked the authority to promulgate that regulation as to Clean Water Act Section 1321(b)(7).  (The Coast Guard's 33 C.F.R. § 27.3 regulation is void on the same basis.)  And given that the Attorney General has never even tried to take action to attempt to inflate the Section 1321(b)(7) penalties, the only applicable maximum penalty amount that BPXP had fair notice of prior to the spill was that appearing on the

face of the CWA, *i.e.*, $3,000 per barrel. *See also* FCPIAA/DCIA, Section 6 ("Any increase under this Act in a civil monetary penalty shall apply only to violations which occur after the date the increase takes effect" — *i.e.*, penalties cannot be adjusted for inflation retroactively).

**B.** **Executive Order 12,777 Cannot Save EPA's Inflation Regulation as Applied Here and at Most That Order Would Lead to a Conclusion by Analogy That the Coast Guard's Inflation Regulation Controls Over EPA's.**

Executive Order 12,777 was signed by the President about ten months after Congress enacted the Oil Pollution Act of 1990 ("OPA") in Public Law 101-380, 104 Stat. 484 (Aug. 18, 1990). *See* Executive Order 12,777. *See* 56 Fed. Reg. 54,757 (Oct. 18, 1991), *amended post-DWH spill in irrelevant respect by* Executive Order 13,638, 78 Fed. Reg. 17,589 (Mar. 15, 2013). This Order was intended to establish clear lines as to which agency would assume what particular role under Clean Water Act Section 1321 and under OPA, especially because those statutes involve many congressional delegations to the President, which he has seen fit to sub-delegate.[12]

Executive Order 12,777 specifically reinforces the default rule that the Attorney General acts to pursue litigation concerning oil pollution under the Clean Water Act. *See* Executive Order 12,777, Section 10(a) ("Notwithstanding any other provision of this order, any representation pursuant to or under this order in ***any judicial proceedings*** shall be by or through the Attorney General.") (emphasis added).[13]   Additionally, this Order leaves in place the delegations of

---

[12] *See* 3 U.S.C. § 301 ("The President of the United States is authorized to designate and empower the head of any department or agency in the executive branch, or any official thereof who is required to be appointed by and with the advice and consent of the Senate, to perform without approval, ratification, or other action by the President (1) any function which is vested in the President by law …. Such designation and authorization shall be in writing, shall be published in the Federal Register, shall be subject to such terms, conditions, and limitations as the President may deem advisable, and shall be revocable at any time by the President in whole or in part.").

[13] Section 10(c) of the Executive Order reinforces these conclusions by providing that the "Departments of Transportation, Commerce, Interior, Agriculture, and/or the Administrator of the Environmental Protection Agency may request that the Attorney General commence litigation under the Oil Pollution Act of 1990". Their ability to entreat the Attorney General to act only confirms his jurisdictional primacy as to the bringing of judicial actions under Section 1321(b)(7). Indeed, the Executive Order also makes clear that the President has instructed the Attorney General to supervise EPA, the Coast Guard, and DOT — even as to administrative penalty actions. *Compare id.* Section 10(d) ("The Attorney General, in his discretion, is authorized to require that, with respect to a particular oil

authority that apply as a matter of default congressional law to CWA Section 1321(b)(7). Specifically, while Executive Order 12,777 establishes various sub-delegations under **other** subsections of CWA Section 1321, sub-delegations under Section 1321(b)(7) are noticeably absent.[14]  Hence, CWA Section 1321(b)(7) embodies the assignment of power to seek monetary per-barrel penalties exclusively to the Attorney General under 28 U.S.C. § 516, as confirmed by contrast with the special exceptions in CWA Sections 1364 and 1366.

It is true that Section 3 of Executive Order 12,777 establishes a division of authority between EPA and the Coast Guard such that the EPA Administrator governs spills in the inland zone while the Secretary of the Department of Homeland Security (housing the Coast Guard at present) governs spills in the coastal zone (like the *Deepwater Horizon* spill).  But this delegation applies only to **removal actions** undertaken pursuant to CWA Section 1321(c), **not to civil judicial penalty actions** as provided for in CWA Section 1321(b)(7).  And even if the CWA Section 1321(c) and Executive Order 12,777 Section 3 division of authority did control, that would mean only that the Coast Guard's 33 C.F.R. § 27.3 (if it were valid) would reign over EPA's 40 C.F.R. § 19.4 — at the very least capping the maximum penalty at $4,000 per barrel.

But note that neither EPA nor the Coast Guard has ever attempted to explain how both of them can purport to inflate the same unitary statutory penalty figure fixed in CWA Section 1321(b)(7)(D).  It would clearly violate federal statutory law for EPA and the Coast Guard to act to create one inflated penalty amount for the inland zone and a different one for the coastal zone.

---

spill, an agency refrain from taking administrative enforcement action without first consulting with the Attorney General.") *with* CWA Section 1321(b)(6)(A).

[14] *See* Executive Order 12,777, Section 1 (ordering sub-delegations or related designations under CWA Section 1321(d), (f)(5), and (j)(4)); Section 2 (same under CWA Section 1321(j)(1)(A), (j)(1)(C), (j)(1)(D), (j)(5), (j)(6)(A), (j)(6)(B), and (j)(7)); Section 3 (same under CWA Section 1321(c)); Section 5 (same under CWA Section 1321(e) and (m)(1)); Section 7 (same under CWA Section 1321(c)); Section 7 (same under CWA Section 1321(b)(5)); and Section 8 (same under CWA Section 1321(b)(3)-(4) and (d)(2)(G)).

*See, e.g.*, *United States v. NBC Bank-Rockdale*, 7 F.3d 63, 65 (5th Cir. 1993) (agency action violating clear statutory terms is void).  CWA Section 1321(b)(7)(D) establishes a single penalty amount (subject to FCPIAA/DCIA inflation to a single higher penalty), not an inflated penalty amount that varies with the location of a spill.  And even if the two agencies possessed the authority to create a penalty regime that did vary based on the location of the spill, they never set out any reasons for doing so that were subjected to notice and comment review and thus that failure would itself give rise to an independent ground rendering their regulations invalid.  *See* Part II, *infra*.

Consider as well that the two agencies' histories of inflating the CWA Section 1321(b)(7)(D) penalty amount since the passage of the DCIA in 1996 shows no rational pattern that comports with the statute.  *See* Exhibit 3.  Consider also that in 2010 when the spill occurred, EPA and the Coast Guard were only $300 per barrel apart as to CWA Section 1321(b)(7) maximum penalties.  But that delta has now grown considerably, without explanation, to $1,300 per barrel.  *Compare* 33 C.F.R. § 27.3 (2014) (relevant Coast Guard maximum still at $4,000/barrel) *with* 40 C.F.R. § 19.4 (2014) (relevant EPA maximum now at ***$5,300***/barrel).  Finally, note that neither EPA nor the Coast Guard considered whether their regulations to inflate the statute were consistent with the trebling ratio ($3,000 to $1,000) originally set in Section 1321(b)(7)(D) vs. (A).

How can a regulated party know what penalty it is subject to in such an ill-considered regime where two different agencies claim the selfsame statutory penalty can be inflated to two different numbers?  And where the regulatory delta grows over time with no explanation?

**C.**  **Even If BPXP's Other Arguments Are Not Accepted, Fair Notice Requires That Where Two Agencies Adopt Conflicting Regulations Purporting to Inflate the Same Statutory Penalty, the Regulated Party Be Subjected Only to the Lesser Penalty.**

Nowhere in its Complaint does the United States acknowledge that the Coast Guard had also adopted inflation regulations purporting to increase the same CWA Section 1321(b)(7)(D)

maximum penalty. The Complaint in Paragraph 75 simply refers to EPA's inflation regulation alone. It is unfair for the United States to choose to bring an action against BPXP under the regulation that happens to be issued by the agency that has most inflated the statutory penalty, especially without attempting to explain why such a choice is lawful and rational.

Instead, conflicts and confusion between different agency actions lead to the unavoidable conclusion that the agencies here did not provide fair notice to BPXP and other parties liable under Section 1321(b)(7) of the precise penal consequences associated with an oil spill violating the CWA. *Satellite Broadcasting Co. v. FCC*, 824 F.2d 1, 3 (D.C. Cir. 1987) is particularly instructive. As the D.C. Circuit described that case in *General Electric Co. v. EPA*, 53 F.3d 1324, 1330 (5th Cir. 1995), a fair notice case invalidating EPA action: "In *Satellite Broadcasting Co. v. FCC*, the FCC dismissed Satellite's application for a microwave radio station because it was filed in Washington, D.C., not in Gettysburg, Pa., as the FCC determined the regulations to require. But the specific regulation governing the filing of the application was silent on the appropriate location to file, and other regulations offered 'baffling and inconsistent' advice. 824 F.2d at 2."

The "advice" offered here by the conflicting EPA and Coast Guard regulations is similarly "baffling and inconsistent." BPXP cannot be subjected to the inflated amounts in both agencies' regulations. As such, for all of the other reasons given in this Motion, the Court should declare as a matter of law that both the EPA's and Coast Guard's regulations are invalid. But failing that, BPXP argues in the alternative that, at the very least, it can be subjected only to the lesser $4,000 per barrel penalty set forth in the existing Coast Guard regulation.

## II.   BOTH EPA'S AND THE COAST GUARD'S ATTEMPTED PENALTY INFLATION REGULATIONS ARE ALSO PROCEDURALLY UNLAWFUL.

Typically under the Administrative Procedure Act ("APA"), all federal regulations must first be subjected to notice and comment in order for them to be valid. *See generally* 5 U.S.C. §

553; *see also Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 624 (5th Cir. 2001) (voiding Interior Department action for noncompliance with the APA's notice-and-comment requirement). However, the APA provides a narrow good-cause exception to the notice-and-comment requirement as follows: "[W]hen the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."   5 U.S.C. § 553(b)(3)(B).  Each of the inflation-adjustment rules that EPA and the Coast Guard have inserted into the Code of Regulations have invoked this good-cause exception on the ground that notice and comment would be "unnecessary" given that a purely ministerial duty not involving agency discretion was involved.  On that score EPA's first inflation rule is illustrative:

> EPA finds that providing an opportunity for public comment prior to publication of this rule is not necessary because EPA is carrying out a ministerial, ***non-discretionary duty*** specified in an Act of Congress.  This rule incorporates requirements specifically set forth in the DCIA requiring EPA to issue a regulation implementing inflation adjustments for all its civil penalty provisions by October 23, 1996.  The formula for the amount of the penalty adjustment is prescribed by Congress in the DCIA as well.  Prior notice and opportunity to comment are therefore unnecessary in this case because ***these changes are not subject to the exercise of discretion by EPA***.

61 Fed. Reg. 69,360, 69,363 (Dec. 31, 1996) (emphasis added).  EPA is correct that the CPI formula established by Congress in Section 5(b) of the FCPIAA/DCIA is mechanical and non-discretionary.  But the good-cause exception cannot validly be used here because there is much more to the statutory inflation regime than the mechanical CPI math calculations in Section 5(b).[15]

     ***First***, the FCPIAA/DCIA, standing alone, does not provide a clear directive that establishes

---

[15] *See Sorenson Commc'ns, Inc. v. FCC*, 755 F.3d 702, 706 (D.C. Cir. 2014) (agency interpretations of the APA good-cause exception are not entitled to deference); *see also United States v. Johnson*, 632 F.3d 912, 928 (5th Cir. 2011) (good-cause exception must be read narrowly to avoid granting agencies an "escape clause" from notice-and-comment rulemaking procedures).

which agency possesses jurisdiction for purposes of CWA Section 1321(b)(7) civil penalty inflation.  As applied to Section 1321(b)(7) of the Clean Water Act and as shown in Part I.A, *supra*, that separate statute's structure and the general powers of the Attorney General must be consulted to determine which agency among many potential candidates has been delegated the penalty-inflation authority.  EPA entirely skipped over this question, simply assuming that it possessed jurisdiction to inflate such penalties.  As a result, EPA never discussed this issue or took the benefit of public comment on it, which could have spotted for EPA that the threshold question it needed to address was whether it was the proper agency to be inflating the penalty in the first place.  Here, the FCPIAA/DCIA regime read in conjunction with CWA Section 1321(b)(7) was clearly ***against*** EPA on this point, or at most it was ambiguous, such that EPA could not plausibly claim that seeking public comment on whether EPA possessed a valid delegation to act to inflate the CWA Section 1321(b)(7) penalties was "unnecessary" within the meaning of APA Section 553(b)(3)(B).

**Second**, and related to the issues that should have been put out for comment, both EPA and the Coast Guard undertook rulemakings shortly after the DCIA's adoption in 1996 to inflate the same Section 1321(b)(7) penalties.  But neither agency considered whether the other (or a third agency) actually held the proper delegation (or even tried to argue that the agencies somehow possessed inflation authority within distinct spheres).[16]  This set of issues, too, should have been put out for public comment.  This is especially true where EPA recognized in 1996 that Executive Order 12,866 applied to require it to analyze whether its inflation regulation would "create a serious inconsistency or otherwise interfere with an action taken or planned by another agency." 61 Fed. Reg. at 69,363.  Instead, EPA ignored interagency questions of authority completely.

---

[16] *See DeNaples v. Office of Comptroller of Currency*, 706 F.3d 481, 487 (D.C. Cir. 2013) ("Justifications for deference begin to fall when an agency interprets a statute administered by multiple agencies."), *citing Bowen v. American Hosp. Ass'n*, 476 U.S. 610, 642 n.30 (1986); *Collins v. NTSB*, 351 F.3d 1246, 1253 (D.C. Cir. 2003); *see also* Exhibit 2.

*Third*, the fact that EPA and the Coast Guard have reached different conclusions concerning how the supposedly ministerial rounding rules of FCPIAA/DCIA Section 5(a) work belies the notion that the governing inflationary regime involves only a clear mathematical formula and nothing more.[17]   In particular, some analysis of how the Section 5(a) rounding rules interact with the Section 31000(s)(2) one-time 10% adjustment ceiling is required because how to fit those two rules together is not specified on the statute's face.   Public comment could have informed that analysis, and yet it was improperly avoided.  *See Petroleum Commc'ns, Inc. v. FCC*, 22 F.3d 1164, 1172 (D.C. Cir. 1994) ("Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action.").

Both EPA's and the Coast Guard's inflation rules are procedurally invalid because they never provided advance notice to the public and an opportunity for comment on any occasion on which they promulgated a penalty increase.  *See* Exhibit 3 (Sources).

## CONCLUSION

BPXP respectfully requests that the Court make clear that the maximum per-barrel penalty in place as governing the outcome of the Penalty Phase trial is $3,000 per barrel or, in the alternative, at most $4,000 per barrel (the Coast Guard's inflated amount).

---

[17] *Contrast also* GAO, *Civil Penalties: Agencies Unable to Fully Adjust Penalties for Inflation Under Current Law* at 3 (March 2003) ("Agency officials frequently told us that these provisions in the [inflation] act were unclear and produced undesirable effects.") & 23 n.30 (EPA itself posing a question to GAO about how to interpret the act, contradicting EPA's assertions in other inflation rulemakings that the meaning of the statute was beyond dispute such that it was unnecessary to seek public comment).  Indeed, the GAO Report notes that EPA itself had made a prior error interpreting the rounding rules, again belying the notion that the inflation statutes are without ambiguity.  *See id.* at 14 (first bullet).

November 14, 2014

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000

Robert C. "Mike" Brock
Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000

Respectfully submitted,

 /s/ Don K. Haycraft
Don K. Haycraft (Bar # 14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of November, 2014.

/s/ Don K. Haycraft
Don K. Haycraft