UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig
"Deepwater Horizon" in the Gulf
of Mexico, on April 20, 2010

This Pleading Relates To
- **10-4182** (*Alabama v. BP*)
- **10-4183** (*Alabama v. Transocean, et. al*)
- **13-2645** (*Alabama v. Anadarko & MOEX*)
- **13-2646** (*Alabama v. Transocean*)
- **13-2647** (*Alabama v. Halliburton*)
- **13-2813** (*Alabama v. BP*)

MDL No. 2179
SECTION: J

JUDGE BARBIER
MAGISTRATE SHUSHAN

THE STATE OF ALABAMA'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO COMPEL DISCOVERY RESPONSES

LUTHER J. STRANGE
 *Attorney General*

COREY L. MAZE
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*

Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130
Phone: (334) 242-7300
Email:  cmaze@ago.state.al.us

Attorneys for the State of Alabama

**TABLE OF CONTENTS**

**Argument**

I. Interrogatory #13:  BP's Identification of Five Grants as the Sole Basis of Defendants' Set-off Credits and Counterclaims Moots this Issue. ........................................................... 1

II. Interrogatory #43:  Evidence of Third-Party Claims Is Discoverable Because BP Made Third-Party Claims Relevant to its Mitigation Defense. ...................................................... 1

III. Interrogatory #46:  Defendants Must Either Produce Documents Establishing the Response Workers' States of Residence or Admit That Any Defense Based on the Amount of State Taxes Generated by the Response Effort Would Be Unreliable............... 3

**Conclusion** ................................................................................................................................ 5

**Certificate of Service**................................................................................................................ 6

**TABLE OF AUTHORITIES**

**Cases**

*Bank One, Texas, N.A. v. Taylor*,
  970 F.2d 16 (5th Cir. 1992) ..................................................................................................... 4

**Rules**

Fed. R. Civ. P. 26(b),
  Committee Notes to the 2000 Amendments ............................................................................ 2

i

**THE STATE OF ALABAMA'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY REQUESTS**

I. <u>Interrogatory #13</u>: BP's Identification of Five Grants as the Sole Basis of Defendants' Set-off Credits and Counterclaims Moots this Issue.

In its opposition, BP identifies the following five grants as the basis of its potential set-off credits and counterclaims:

- The $25 million grant provided to Alabama in May 2010 and produced at BP-HZN-ALO01278889;
- The $25 million grant provided to Alabama in June 2010 and produced at BP-HZN-ALO01280259;
- The $12 million grant provided to the Alabama Department of Mental Health in August 2010 and produced at BP-HZN-ALO01029947;
- The $15 million grant provided to Alabama in May 2010 for the promotion of tourism and produced at BP-HZN-ALO00089636; and,
- The $16 million grant provided to Alabama in March 2011 for the promotion of tourism and produced at BP-HZN-ALO00050583.

Rec. Doc. 13595 at 1-3 ("BP Br.").[1]  If the Court acknowledges in its order that these five grants are the sole and exclusive basis for Defendants' potential set-off credits and counterclaims, then Alabama agrees that its motion to compel a response to Interrogatory #13 can be denied as moot.

II. <u>Interrogatory #43</u>: Evidence of Third-Party Claims Is Discoverable Because BP Made Third-Party Claims Relevant to its Mitigation Defense.

The State's Interrogatory #14 asked Defendants to identify the payments they contend mitigate the State's economic losses.  BP made information regarding third-party claims relevant to a party's claim or defense by responding that "BPXP has made numerous substantial voluntary monetary commitments that have helped mitigate any effect of the *Deepwater Horizon* oil spill on the State of Alabama … [including] (1) approximately $1.8 billion to individuals and businesses

---

[1] BP identified the same five grants as the basis of its potential set-off credits and counterclaims in its opposition to Alabama's motion to dismiss set-off claims.  *See* Rec. Doc. 13616 at 2-4, 13.

1

in Alabama through various claims processes and (2) approximately $115 million in government payments in Alabama." Ex. A at 51. BP reserved the right to establish the "effectiveness" of the claims payments in mitigating Alabama's economic losses "through expert discovery." *Id.* at 55.

  1. *Relevance for Impeachment (at least)*: Alabama agrees that BP need not reveal its expert opinions/methodologies on how third-party claims payments impacted the State's losses until BP's expert reports are due. But BP wrongly argues that "Alabama's speculation as to what arguments BPXP may raise in expert discovery [does] not make information discoverable." BP Br. 7. Rule 26(b) permits discovery on any matter "that is relevant to any party's claim or defense." As the Rules Committee notes, "information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action." Fed. R. Civ. P. 26(b), Committee Notes to the 2000 Amendments.

  At the very least, the "circumstances of the pending action,"—*i.e.* BP stating that evidence of third-party claims payments is part of its mitigation defense—warrant production of the requested information so that the State can be armed with some of the information necessary to impeach BP's expert opinion that claims payments are relevant in determining the net value of Alabama's claims. Importantly, this potential impeachment evidence should be compelled even if such information is "not otherwise relevant to the claims or defenses." *Id.*

  2. *Proportionality/Burden*: BP seemingly has an aggregated total for claims submitted to its internal claims program, as it argues that it would be an undue burden to force it to "calculate the total amount claimed in tens of thousands of individual claims based on third party data" from the GCCF, CSSP, etcetera. BP. Br. 9. First, the State is entitled to the internal claims program

2

information. Second, to the extent BP possesses this "third party data" (GCCF, etc.) in electronic form, either (a) BP could calculate, then produce, the total on its own or (b) BP could produce the raw third-party data to the State.[2]

BP's assertion that it does not have "information regarding the amount sought for many of the individual claims," BP Br. 9, is not a reason to deny the State's request *in toto*. Nor is BP's assertion that claims information may not include a claimant's geographic location. BP Br. 10. In light of BP's assertion that third-party claims payments may be used as part of their mitigation defense, the Court should order that BP produce whatever responsive information BP has.

III. **Interrogatory #46: Defendants Must Either Produce Documents Establishing the Response Workers' States of Residence or Admit That Any Defense Based on the Amount of State Taxes Generated by the Response Effort Would Be Unreliable.**

A response worker's State of residence is reasonably calculated to lead to admissible evidence if Defendants attempt to (a) quantify the State taxes paid by response workers as part of a negating defense of "mitigation" and/or (b) quantify the State taxes Alabama failed to collect from claimants and response workers as part of an affirmative defense of "failure to mitigate."[3]

1. *Relevance*: BP wrongly asserts that a person's State of residence is "irrelevant" to the amount of State taxes owed. *See* BP Br. 10-11. A non-resident's personal exemption is determined by the percentage of his "Alabama income" divided by his "All sources" income; the smaller the percentage, the smaller the exemption.[4] *See* BP Ex. 13 (Alabama's Form 40NR). So, to reliably determine Alabama taxes owed by spill response workers, the trier of fact would need both (a) each worker's State of residence and (b) non-residents' income in other States.

---

[2] Producing raw data is nothing new in this case. The State is currently working with BP to query and sort data from the State's revenue database, which consists of millions (if not billions) of cells of data entries.

[3] BP, HESI, and TO each pleaded failure to mitigate as an affirmative defense. *See* Rec. Doc. 4905 at 202 (BP answer); 4910 at 46 (HESI answer); 931 at 16 (TO Answer).

[4] For example, as demonstrated by Form 40NR (2011), a Louisiana resident who earned $10,000 in Alabama in 2010, and no income in Louisiana, would owe $388 to Alabama; while a Louisiana resident who earned the same $10,000 in Alabama in 2010, but an additional $90,000 in Louisiana, would owe $453 to Alabama.

3

2. *Lack of information*:  In opposing Alabama's motion to compel, BP provides a litany of reasons why the trier of fact will never receive the information needed to make an accurate determination of the amount of State taxes generated by the response effort:

- "BPXP did not directly employ the vast majority of workers who worked on the response in Alabama.  Instead, the overwhelming majority of such workers were employed by third party contractors to BPXP or even subcontractors of these contractors;"

- BPXP did not receive from its contractors the information "needed for employment and tax purposes," nor does BP "have access to it;"

- For <u>some</u> workers, BP does possess "the 'Home State' that workers self-reported" when receiving badges from UAC, but this information is inaccurate/unreliable because
    - Many workers did not report a home State; and,
    - Some response workers used the State address of their direct employer, not "the State where they lived;"

- BPXP tracked workers at the place where their badge was swiped, not where they worked.  So, for example, "workers who checked in at the Mobile, AL ICP may have actually worked in Mississippi, not Alabama."

BP Br. 12-13.  Put another way, BP claims that it has no idea where all of the response workers lived, and even worse, BP claims that the records it does possess are inaccurate at determining the State in which response workers actually worked—*i.e.* the State to whom they may owe income tax.  These contentions demonstrate why Defendants will never be able to meet their burden of reliably proving either (a) the amount of State taxes generated by the Spill response or (b) the amount of State taxes that Alabama failed to collect from response workers.  *See Bank One, Texas, N.A. v. Taylor*, 970 F.2d 16, 29 (5th Cir. 1992)  ("One who claims a failure to mitigate damages has the burden to prove not only lack of diligence on the part of injured party, but also the amount by which damages were increased by such failure to mitigate.").

3. *The State's Request*:  The State requests the Court order that BP produce, at least, all information that BP possesses or can obtain on this topic, including but not limited to the following:  (a) the "state of residence for the BP employees that worked on the response in

4

Alabama in a supervisory or management role," BP Br. 13, (b) BP's "rough and unreliable approximation" of all response workers' States of residence, BP Br. 10, and (c) all Form 1099 and other tax payment/withholding forms that BP possesses or can obtain from its contractors. Furthermore, the State requests the Court order BP to produce the contracts with its third-party contractors/subcontractors so that the State can evaluate BP's access to the requested information.

## CONCLUSION

The Court should enter an order that

(a) With regard to Interrogatory #13, lists the five grants indentified by BP as the sole and exclusive basis of Defendants' set-off credits and counterclaims, then denies the State's motion to compel as moot.

(b) With regard to Interrogatory #43, grants the State's motion to compel a response;

(c) With regard to Interrogatory #46, orders BP to disclose all information that it possesses or can obtain regarding response workers' State of residence and all tax forms that it possesses or can obtain regarding the response workers.

Respectfully submitted on November 19, 2014.

LUTHER J. STRANGE
*Attorney General*

/s/ Corey L. Maze
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*

Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130
Phone: (334) 242-7300
Email:  cmaze@ago.state.al.us

Attorneys for the State of Alabama

5

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on November 19, 2014.

     /s/ Corey L. Maze
COREY L. MAZE
*Special Deputy Attorney General*