# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL NO. 2179 |
| | * | SECTION J |
| | * | |
| This document relates to: | * | Judge Barbier |
| | * | |
| Case Nos. 10-4182, 10-4183, 13-2645, 13-2646, 13-2647, 13-2813 | * * * | Magistrate Judge Shushan |

_____

## REPLY TO OPPOSITION TO
## <u>DEFENDANTS' MOTION TO COMPEL DISCOVERY OF WRITTEN RESPONSES</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    Alabama Has Still Not Provided a Full and Complete Response to Interrogatory 14 that Requests an Accounting of Grants and Payments to Alabama............................ 1

II.   Alabama Cannot Unilaterally Decide What Revenues Are Relevant to This Case............ 3

      A.    Alabama's Argument Regarding Its RITS Database is Moot................................ 3

      B.    Alabama Objects to Producing Information Regarding Revenue Streams That Remain Relevant............................................................................................. 4

III.  Alabama's Argument Regarding State-owned Properties Misapplies the Legal Standard to Limit Discovery Only to Information That Supports Alabama's Case........... 5

IV.   Because Alabama's Supplemental Responses Are Deficient, Defendants Move to Compel on Certain Issues Identified Previously................................................................ 7

      A.    Interrogatory No. 7: Physical Injury to a Proprietary Interest. ............................ 7

      B.    Interrogatories 1, 2, 10, and 12: State Response and Recovery Costs.................... 7

      C.    Interrogatory No. 5: Sale and Use Restrictions on Properties. ............................. 8

      D.    Improper Reliance on Rule 33(d). ......................................................................... 8

V.    Conclusion ....................................................................................................................... 8

Alabama's opposition fails to present arguments that would avoid the relevant discovery that Defendants seek to develop their defense to Alabama's economic loss claim. Additionally, Alabama's recent supplementation of its discovery responses, intended to cure the "placeholder" issues that Defendants presented in their opening brief, falls short of curing those issues.[1]

## I.     Alabama Has Still Not Provided a Full and Complete Response to Interrogatory 14 that Requests an Accounting of Grants and Payments to Alabama.

BP provided Alabama with nearly $100 million worth of grants and payments relating to the *Deepwater Horizon* incident. (*See* Rec. Doc. 13616 at 2 and Exs. 1–5 thereto.) The Court has already held that discovery into how Alabama distributed and used these payments is permissible, (Rec. Doc. 13210), a holding that Alabama acknowledges (Rec. Doc. 13593 at 7.) Accordingly, the issue before the Court is not whether discovery into this topic is permitted, but whether Alabama has met its discovery obligation to provide the requisite information as to how it has used and disbursed those payments and grants. Simply put, it has not.

As an initial matter, according to the agreements associated with these grants and payments, Alabama was obligated to keep "reasonably detailed records" of how these monies were used and disbursed. (*See* Rec. Doc. 13616 at Ex. 1 at BP-HZN-ALO01278889; Ex. 2 at BP-HZN-ALO01280259; Ex. 3 at BP-HZN-ALO00089640; Ex. 4 at BP-HZN-ALO00050585; Ex. 5 at BP-HZN-ALO01029947). Thus, Alabama contractually should have detailed records for these payments, and providing an accounting should not cause any undue burden. Nonetheless, Alabama has yet to furnish those detailed records, but contends that the documents it has provided, attached as Exhibit E to its opposition, meet its obligations. Even a cursory review of these materials, however, shows that these documents are not "reasonably detailed records" and do not meet Alabama's discovery obligation.

---

[1] Defendants submit this reply pursuant to the Court's November 19 order, (Rec. Doc. 13643 at 3.)

*First*, even where Alabama's cited documents show where money was disbursed, they provide no information about how the money was used.  Understanding how the money was spent is not "minutiae," as Alabama contends, but goes to the very reason that this information is relevant and discoverable—was Alabama using the money in a manner that supports it being applied as an offset or mitigation to Alabama's claim for economic loss.  For one of the $25 million block grants, Alabama, for example, states that the Emergency Management Agency (EMA) disbursed these funds to local governments and entities, (Rec. Doc. 13593-5 at 50), but provides no explanation of what they received these funds for or how those funds were used, let alone whether they related to the *Deepwater Horizon* response.  (*Id.* at AL-ED-000806961).  Similarly, for the $31 million in tourism grants, the cited document, (*id.* at AL-ED-000031688), shows grants to various organizations, but offers no explanation how these organizations used these funds to promote tourism.  Defendants, as one example, can only speculate who received the $637,340 for "Miscellaneous - Intra Fund Class Transfer" and how it was used for promotion of tourism.  There are numerous other line items for unexplained "personnel costs," "employee benefits" and "travel," that lack any detail as to how this money was actually used.

*Second*, there are internal inconsistencies with the information that Alabama has provided, suggesting that Alabama has not conducted the due diligence necessary to provide an accurate response.  For example: (1) Alabama states that some of the money from EMA went to the Historical Commission, (*id.* at 52), but the document referenced for disbursement of EMA funds provides no such entry (*id.* at AL-ED-000806961); (2) Alabama states that the Department of Finance received over $10 million in funding, but the cited document shows that most of this money came from the Attorney General's office, (*id.* at AL-ED-000031675), and Alabama has provided no explanation which of BPXP's grants were provided to the Attorney General; (3) the

Department of Finance shows several payments made to the EMA, but the summary of receipts by the EMA, (*id.* at AL-ED-000806961), shows no such transfers from the Department of Finance; (4) for the $12 million grant for mental health programs, the accounting for "Fund 1408" indicates that a $1 million reimbursement was received from the Governor's Office of Faith Based Initiatives on May 13, 2011, but the accounting for the Office of Faith Based Initiatives shows no such reimbursement.   (*Id.* at AL-ED-000031680; Ex. 1, AL-ED-000031683–87 at 84 (annotation added)).

Alabama is the only entity with access to this information and thus the only entity who can provide the accurate information about how these funds were used.   Alabama does not dispute that it has this information, only that it would be too burdensome to produce.   Given the material relevance of this information, Defendants respectfully request that Alabama be compelled to supplement its response to Interrogatory No. 14 for a comprehensive accounting of how the funds were disbursed and used.

## II.   Alabama Cannot Unilaterally Decide What Revenues Are Relevant to This Case.

### A.   Alabama's Argument Regarding Its RITS Database is Moot.

Alabama's arguments regarding revenue streams from the State's Integrated Tax System ("RITS") are moot.   Recently, Alabama agreed to provide Defendants with certain information from the RITS database after Defendants materially narrowed the information sought from this database to only a handful of specific revenue streams.   (*See,* Ex. 2, 11/04/2014 A. Kaufmann ltr. to P. Miller at 1 ("[I]n the interest of expediting resolution of this issue, we have identified only 4 tax streams of the 48 listed in the State's monthly revenue abstracts for which we request additional information."); Ex. 3, 11/17/2014 P. Miller ltr. to A. Kaufmann).[2]   Alabama's

---

[2] During the last Court hearing, Alabama represented it was "pleased" with BPXP's letter identifying the sought information and passed it on to its specific departments to generate the requested information.   (Ex. 4, 11/06/2014

concerns regarding undue burden are thus not valid.  Assuming that Alabama complies with its agreement to provide the reports and information that Defendants have requested, this issue need not be addressed.

**B.      Alabama Objects to Producing Information Regarding Revenue Streams That Remain Relevant.**

The parties' agreement on the RITS database does not resolve Defendants' issues with discovery relating to Alabama's revenue streams.  In particular, there are revenue streams that are relevant to Defendants' defensive strategy that Alabama refuses to produce.  While Alabama goes to great lengths to manufacture extreme examples that arguably fall within Defendants' revenue definition that may not have relevance to this dispute, this argument misses the mark because it fails to recognize the many categories of revenue that fall within that same definition are unquestionably relevant.  For example, federal funding that has the potential to mitigate *Deepwater Horizon* damages is relevant, such as federal funding for education that goes to Alabama's alleged economic loss for "financial impact/increased cost to Alabama's public education system" claim.[3]  (*See* Rec. Doc. 13593 at 1).  Additionally, all state park revenue, including for parks unaffected by the spill, is relevant to Alabama's claim for lost revenue to the Department of Conservation and Natural Resources (DCNR).  To analyze the full extent of DCNR's losses, Defendants need information not only about Gulf State Park, one park that Alabama claims suffered losses, but also other state parks that may have seen an increase in revenue.  (*See* Rec. Doc. 13512-14; Rec. Doc. 13512-15 at 4.)

---

Hr'g Tr. at 11.).  The parties are similarly working issues regarding another database, the Central Accounting Database ("CAD.")  (*See id.*; Ex. 2 at 3–4.)

[3] Under OPA, 33 U.S.C. §2702(b)(2)(D), Alabama's claim for lost revenue is limited to "[d]amages equal to the **net loss** of taxes, royalties, rents, fees, [etc.]," and under § 2702(b)(2)(F) Alabama's public services cost claim is limited to "[d]amages for **net costs** of providing increased or additional public services during or after removal activities[.]"  The fact that Alabama has not raised a claim for lost federal funding, (*see* Rec. Doc. 13593 at 2 n.1), is irrelevant to the determination of its net losses for the claims it has raised.

Rather than argue over Defendants' revenue definition, Defendants propose clarifying their request such that Alabama produce information and documents sufficient to show income it receives from regular recurring sources (other than tax revenues[4] and payments directly related to the *Deepwater Horizon* incident) related to its claims regarding the Department of Conservation and Natural Resources, the financial impact/increased cost to Alabama's public education system, and costs incurred by Alabama's Departments of Economic and Community Affairs, Environmental Management, and Labor.  Examples would include federal funding for education, state hunting and fishing licenses, and state park admissions and concessions, for the years 2005 through present.  This more focused request avoids the so-called absurd results about which Alabama complains, while at the same time providing Defendants information about Alabama's revenue streams that are directly related to the losses that Alabama claims.

## III.    Alabama's Argument Regarding State-owned Properties Misapplies the Legal Standard to Limit Discovery Only to Information That Supports Alabama's Case.

Alabama seeks to avoid producing information as to any other state-owned properties, contending that Defendants have not shown that any of these properties are sufficiently similar to the affected coastal properties.  While this may be the standard for admissibility, it is not the standard for discoverability, and Defendants are entitled to information about other state-owned properties to assess whether they are reasonable benchmarks for assessing lost values to Alabama's affected properties.   Alabama's entire argument thus confuses the standard for admissibility at trial with discoverability during pre-trial discovery.  *See Arinder v. Lee*, No. 99-1487, 2000 WL 680343, at *1 (E.D. La. May 23, 2000) ("It is clear that what is relevant in discovery is far different from what is relevant at trial, in that the concept at the discovery stage

---

[4] Based on the Defendants' understanding of the agreement reached on the RITS database, Alabama will produce the tax revenue information that the Defendants have requested.

is much broader.").  The *Weiss* case thus held that even at the trial stage, where relevance is more limited than at the discovery stage, "a blanket exclusion of any evidence relating to other properties is inappropriate[.]"  *Weiss v. Allstate Ins. Co.*, 512 F. Supp. 2d 463, 468 (E.D. La. 2007) (reasoning that "what happened at another property may, given appropriate similarity between the properties, make the existence of a fact as to what happened to plaintiffs' property more probable.").

Alabama is wrong in arguing that Defendants need to establish similarity between properties at this discovery stage, especially when the only way Defendants would be able to do that is through obtaining the very discovery that Alabama refuses to provide. Moreover, contrary to Alabama's repeated assertions, Defendants do not have the burden to show now that the properties for which they seek information have sufficient relevance for admissibility at trial. *See Yeager v. Corinthian Colls., Inc.*, No. 01-3122, 2002 WL 1976773, at *3 (E.D. La. Aug. 23, 2002) ("When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance[.]"); *Arinder*, 2000 WL 680343, at *2 ("[T]he burden of showing that the requested discovery is not relevant to the issues in this litigation is clearly on the party resisting discovery.").

Alabama's argument also misses the larger point that information about other properties is often relevant to analyzing economic loss associated with the affected properties, as the *Weiss* (and Alabama's cited *Lambert*) case make clear.  If they only receive information about the properties that Alabama claims were damaged, Defendants would be hampered in their ability to compare properties so as to analyze the purported losses in value.  Therefore, the Court should reject Alabama's blanket refusal to provide this information and compel it to provide information for the properties requested.

**IV.     Because Alabama's Supplemental Responses Are Deficient, Defendants Move to Compel on Certain Issues Identified Previously.**

Defendants left placeholders in their motion to compel for certain topics where Alabama agreed to supplement its responses.  While Alabama served those supplemental responses, (Rec. Doc. 13595-8; Ex. 5, 10/28/2014 Supp. Resps. to Second Set of Discovery; Ex. 6, 11/12/2014 Second Supp. Resps. to Second Set of Discovery at 11–15), several of the placeholder issues remain unresolved, and Defendants respectfully request that the Court address them.[5]

**A.     Interrogatory No. 7: Physical Injury to a Proprietary Interest.**

Alabama's supplemental response did not address this issue, and Alabama agrees that the parties are at an impasse.  (*See* Ex. 8.)  For the reasons stated in Defendants' motion to compel, (*see* Rec. Doc. 13512-1 at 11–12; *see also* Ex. 9, 09/02/2014 P. Collier ltr. to C. Maze at 7; Rec. Doc. 13512-10 at 5), Defendants respectfully request that the Court address this issue and compel Alabama to provide a complete response.

**B.     Interrogatories 1, 2, 10, and 12: State Response and Recovery Costs.**

Alabama supplemented its responses to Interrogatories 1 and 2, but not 10 and 12, (Rec. Doc. 13595-8), with its supplemental response to Interrogatory No. 1 being nearly identical to its original response.   Although Alabama recently agreed to supplement its response after completing its document re-production (Ex. 8), Defendants respectfully request that the Court rule on this issue now such that there can be no dispute as to the information that Alabama should provide in its supplemental response.  For the reasons discussed in their motion to compel, (*see* Rec. Doc. 13512-1 at 12–14; *see also* Ex. 10, 10/14/2014 P. Collier ltr. to C. Maze;

---

[5] The parties have communicated regarding these deficiencies (Ex. 7, 11/04/2014 P. Collier ltr. to C. Maze; Ex. 8, 11/06/2014 P. Collier email to C. Maze), and Alabama has suggested that it will supplement some of these responses after it completes its document re-production. (Ex. 8).   While Defendants are hopeful that this subsequent supplementation may cure some of their concerns, Defendants nonetheless seek the Court's ruling now because prior supplementation from Alabama has not cured these issues and Alabama has resisted a "rolling production of motions to compel," (Ex. 4 at 15).

Ex. 7 at 2), Defendants respectfully request that the Court compel Alabama to provide a full response.

### C.      Interrogatory No. 5: Sale and Use Restrictions on Properties.

Alabama has agreed to provide information about restrictions on use or sale for state-owned properties for which it was claiming damages over two months ago, but to date has not done so.  (*See* Rec. Doc. 13512-14).  Although Alabama appears willing to supplement this information after its upcoming document re-production (Ex. 8), Defendants respectfully request that the Court memorialize Alabama's agreement to provide this information with its document re-production.

### D.      Improper Reliance on Rule 33(d).

During the parties' most recent meet-and-confer, Alabama agreed to supplement its responses to certain interrogatories to properly identify documents pursuant to Rule 33(d), after it completed its document re-production.  (*Id*).  While Defendants agree that this would only be of value after new Bates numbers are generated through Alabama's re-production, and are willing wait until then, they ask the Court to memorialize that Alabama has agreed to supplement its responses to properly invoke Rule 33(d).

## V.      Conclusion

For the reasons above, as well as those in Defendants' brief in support of their motion to compel, Defendants respectfully request that the Court grant their motion to compel.

Dated:  November 19, 2014

Respectfully submitted,

*/s/ Don K. Haycraft*_____
Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Paul D. Collier
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
F. Chad Morriss
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Maureen F. Browne
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Joel M. Gross
Lawrence A. Schneider
Arnold & Porter, LLP
555 12th Street N.W.
Washington, DC 20004
Telephone: (202) 942-5705
Facsimile: (202) 942-5999

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #I6984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

*Attorneys for BP p.l.c., BP Exploration &
Production Inc., and BP America Production
Company*

*/s/ Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
Don.Godwin@GodwinLewis.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
Bruce.Bowman@GodwinLewis.com
Jenny L. Martinez
State Bar No. 24013109
Jenny.Martinez@GodwinLewis.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332
and
R. Alan York
State Bar No. 22167500
Alan.York@GodwinLewis.com
Misty Hataway-Coné
State Bar No. 24032277
Misty.Cone@GodwinLewis.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

*Attorneys for Defendant Halliburton Energy Services, Inc.*

*/s/ Ky E. Kirby*
Ky E. Kirby
ky.kirby@bingham.com
David M. Halverson
david.halverson@bingham.com
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

*Attorneys for Anadarko Petroleum Company and Anadarko E&P Company LP*

*/s/ Edward Flanders*
Edward Flanders
edward.flanders@pillsburylaw.com
Stella Pulman
stella.pulman@pillsburylaw.com
1540 Broadway
New York, NY 10036
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500

*Attorneys for MOEX USA Corporation, MOEX Offshore 2007 LLC, and MOEX USA Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of November, 2014.

/s/ Don K. Haycraft

Don K. Haycraft