# Exhibit 6



56306515
Nov 12 2014
09:26AM

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In re:  Oil Spill by the Oil Rig
      "Deepwater Horizon" in the Gulf
      of Mexico, on April 20, 2010

This Pleading Relates To
  • **10-4182** (*Alabama v. BP*)
  • **10-4183** (*Alabama v. Transocean, et. al*)
  • **13-2645** (*Alabama v. Anadarko & MOEX*)
  • **13-2646** (*Alabama v. Transocean*)
  • **13-2647** (*Alabama v. Halliburton*)
  • **13-2813** (*Alabama v. BP*)

**MDL No. 2179**
**SECTION: J**

**JUDGE BARBIER**
**MAGISTRATE SHUSHAN**

**STATE OF ALABAMA'S SECOND SUPPLEMENTAL RESPONSES TO
DEFENDANTS' SECOND SET OF INTERROGATORIES, DEFENDANTS' SECOND
SET OF REQUESTS FOR PRODUCTION, AND DEFENDANTS' FIRST SET OF
REQUESTS FOR ADMISSION TO THE STATE OF ALABAMA**

Pursuant to the Court's orders and Federal Rules of Civil Procedure 26, 33, 34, and 36, the State of Alabama ("State") submits the following supplemental responses to Defendants' Second Set of Requests for Production, Second Set of Interrogatories, and First Set of Requests for Admission, which were served on September 3, 2014.

### SPECIFIC RESPONSES AND OBJECTIONS

The State responds as follows to the Defendants' specific interrogatories and requests for production, subject to and without waiving the State's general objections, *see infra* at pp. 36-47, each of which is specifically and fully incorporated into each of the individual responses below.

## INTERROGATORIES

### INTERROGATORY NO. 16:

Identify and describe all instances where Oil Materials from any source have been discovered on Alabama's Gulf Coast shoreline or, prior to April 20, 2010, including the amount and volume of material discovered and the dates and locations of the discovery.

**OBJECTIONS**:

The State objects to Interrogatory #16 on the grounds that it is overly broad and unduly burdensome. By way of example, but not limitation, the time period "prior to April 20, 2010" (*i.e.* from January 1, 2000 to April 20, 2010) is overly broad.

The State objects to Interrogatory #16 on the grounds that information regarding oiling events up to 10 years before the Spill is irrelevant to the State's claims and would not lead to the discovery of admissible evidence.

The State objects to Interrogatory #16 to the extent that responsive information is publicly available or otherwise equally accessible to Defendants.

The State objects to Interrogatory #16 to the extent it seeks expert-related opinions and/or work product before the Court's Scheduling Order for disclosure of expert-related materials and opinions.

The State objects to Interrogatory #16 to the extent the requested information exists beyond the control and custody of the State.

**RESPONSE:**

Subject to and without waiving its specific and general objections, the State responds as follows:

Prior to April 20, 2010, grease balls and hard rubber-like materials may have been present on the State's shoreline. After performing a reasonable search, given the rare incidence

of these events, the State has not been able to locate any information on the volume, weights, locations, and dates of these incidents.

Prior to April 20, 2010, there were no MC252 oil materials on Alabama's Gulf Coast shoreline.  Upon information and belief, either the Unified Command or BP performed a "Pre-oiling Shoreline Assessment," which indicated that background oil material concentrations were zero in Orange Beach and slightly above zero moving westward along the coast to the west end of Dauphin Island..

Additional information responsive to this Interrogatory may be derived or ascertained from newspaper or other media accounts, which are either publically available or otherwise accessible to the Defendants, and the burden of deriving the answer is substantially the same for either party.

**INTERROGATORY NO. 17**:

> Identify and describe all Oil Materials from the Macondo Well that have been located on Alabama's Gulf Coast shoreline or in the waters 15 miles therefrom under Alabama's jurisdiction, since June 10, 2013, the date that Unified Command declared the active Response complete.

**OBJECTIONS**:

The State objects to Interrogatory #17 on the grounds that it is overly broad and unduly burdensome.  The State cannot identify and describe "all" instances of oil in Alabama's waters and on our coastline over the past 15 months.

The State objects to Interrogatory #17 to the extent that responsive information is publicly available or otherwise equally accessible to Defendants.

The State objects to the undefined phrase "in the waters 15 miles therefrom under Alabama's jurisdiction" as vague and ambiguous.  Most seaward waters up to 15 miles from Alabama's Gulf Coast shoreline are not within Alabama's jurisdiction.

The State objects to Interrogatory #17 to the extent it seeks expert-related opinions and/or work product before the Court's Scheduling Order for disclosure of expert-related materials and opinions.

The State objects to Interrogatory #17 to the extent the requested information exists beyond the control and custody of the State.

**RESPONSE**:

Subject to and without waiving its specific and general objections, the State responds as follows:

The State continues to receive oiling events originating from the MC252 oil well. For instance, in February 2014, the Alabama Department of Environmental Management conducted a random assessment of the State's coastline. The assessment revealed MC252 oil materials on every segment of the State's shoreline every week the assessment occurred except for one week on one segment. Oil was discovered on the lone segment in subsequent weeks of the assessment. Upon cleaning, the segments experienced re-oiling shortly after MC252 materials were removed. Ultimately, 200 instances of oiling events were observed, leading to the removal of hundreds of pounds of MC252 oil materials. According to a report located at http://www.wkrg.com/story/25246000/news-5-exclusive-adem-report-shows-continuing-impacts-of-bp-oil-spill, oil continues to be discovered on both the Alabama's Gulf and Bay side. Moreover, during the course of beach assessments since the end of the "active" response, MC252 oil materials have been routinely discovered along Alabama's shoreline and in close proximity to

4

Alabama's shoreline, including multiple, massive tar mats located adjacent to Fort Pickens, Florida.

Additional information responsive to this Interrogatory may be derived or ascertained from the body of documentation that comprises official oiling response and removal activity data of the Unified Command within the State of Alabama, the data maintained by BP in its internal database related to response and removal activities, National Response Center reports, and GCIMT NRC Monthly Reports that indicate ongoing oiling, and oiling reports and summaries produced by the State in this litigation, all of which are accessible to the Defendants (and in the case of the BP database, more accessible), and the burden of deriving the answer is substantially the same for either party.

**INTERROGATORY NO. 18**:

Identify and describe all instances of the closure of beaches, marshes, or other lands otherwise accessible to the public in the State of Alabama, due to the discovery of Oil Materials from any source, prior to and after April 20, 2010, including the source of the Oil Materials and the length of time that the beaches, marshes, or other lands were closed to the public.

**OBJECTIONS**:

The State objects to Interrogatory #18 on the grounds that it is overly broad and unduly burdensome. For example, the Request is not reasonably limited in geographic scope, duration, and the source of Oil Materials (to the extent there are other sources, whether the source was identified or not).

The State objects to Interrogatory #18 on the grounds that information regarding closures from January 1, 2000 to April 20, 2010 is irrelevant to the State's claims and is not reasonably calculated to lead to the discovery of admissible evidence.

The State objects to Interrogatory #18 to the extent that responsive information is publicly available or otherwise equally accessible to Defendants.

**RESPONSE**:

Subject to and without waiving its specific and general objections, the State responds as follows:

In addition to Federal water closures, which are just as accessible to the Defendants, on June 1, 2010, the State Health officer issued a press release notifying the public of the closure of all Alabama oyster beds. The same press release also informed that the Department of Conservation and Natural Resources would be closing all Alabama Gulf Waters for fishing from the east end of Dauphin Island to the Mississippi state line.

The Alabama Department of Public Health, oftentimes in conjunction with the Alabama Department of Conservation and Natural Resources, also issued numerous advisories, including on April 30, 2010, June 1, 2010, June 4, 2010, June 9, 2010; June 18, 2010; and June 24, 2010; June 30, 2010.

The documents and information referenced above are available in the public domain or otherwise accessible to the Defendants, and provide the time periods of advisories and closures.

**INTERROGATORY NO. 19**:

Identify and describe all submerged accumulations, whether buried or not, of Oil Materials from the Macondo Well that presently exist in the State of Alabama's near shore and sub-tidal environment under Alabama's jurisdiction, presently known to the State of Alabama, including their locations, surface area, thickness, weight, volume, date of discovery, and identification of corresponding SCAT Segment.

**OBJECTIONS**:

The State objects to Interrogatory #19 on the grounds that it is overly broad and unduly burdensome.

The State objects to Interrogatory #19 to the extent that responsive information is publicly available or otherwise equally accessible to Defendants.

The State objects to Interrogatory #19 to the extent it seeks expert-related opinions and/or work product before the Court's Scheduling Order for disclosure of expert-related materials and opinions.

The State objects to Interrogatory #19 to the extent the requested information exists beyond the control and custody of the State.

**RESPONSE**:

Subject to and without waiving its specific and general objections, the State responds as follows:

Based on continued and consistent re-oiling events, accumulations of MC252 oil materials along the State's coastline, and the documents produced by the State as referenced in response to Interrogatory 17, the State maintains that submerged oil materials exist within State waters. Numerous records and documents generated in connection with the *Deepwater Horizon* response and removal activities document the existence of submerged oil mats ("SOM") in Alabama that were not recovered during the response. Moreover, continued oiling events, even after Operation Deep Clean, confirm the existence of SOMs.

Discovery is ongoing, and the State continues to conduct a reasonable search for responsive information and will supplement to the extent information becomes available. Additional information responsive to this Interrogatory may be derived or ascertained from the body of documentation that comprises official oiling response and removal activity data of the Unified Command within the State of Alabama; the data maintained by BP in its internal database related to response and removal activities; National Response Center reports and

7

GCIMT NRC Summary, Daily, Weekly, and Monthly Reports that indicate ongoing oiling; and, GCIMT papers and information on near shore oiling.

**INTERROGATORY NO. 20**:

Identify and describe any objection that the State of Alabama raised to Unified Command regarding use of the SCAT process to evaluate the extent of oiling from the Macondo Well in Alabama.

**OBJECTIONS**:

The State objects to Interrogatory #20 as overbroad and unduly burdensome.

The State objects to Interrogatory #20 as the undefined term "objection" is vague and ambiguous.

The State objects to Interrogatory #20 to the extent that responsive information is publicly-available or otherwise equally accessible to Defendants.

**RESPONSE**:

Subject to and without waiving its specific and general objections, the State responds as follows:

During the initial SCAT phase, the State objected to the SCAT process because the process was only identifying the presence of oil, and the State believed the process should also analyze the extent and degree of oiling along with the presence of oil. Moreover, the State objected to and refused to sign numerous SCAT survey reports, including during Operation Deep Clean, where the Operations Section found that routine SCAT surveys were not sufficient to identify buried MC252 materials on the shore – necessitating the need for more intense SCAT surveying immediately in advance of operations.

**INTERROGATORY NO. 21**:

Identify and describe all instances where the Federal On-Scene Coordinator, the State On-Scene Coordinator for the State of Alabama, any representative of the State of Alabama, or any other Alabama stakeholder, prevented, advised against, or refused permission, for the removal of Oil Materials discovered in the State of Alabama after April 20, 2010.

**OBJECTIONS**:

The State objects to Interrogatory #21 as overbroad and unduly burdensome.

The State objects to the undefined phrase "Alabama stakeholder" as vague and ambiguous.

The State objects to Interrogatory #21 to the extent that responsive information is publicly-available or otherwise equally accessible to Defendants.

The State objects to any requirement that it identify and describe "all" actions taken by an employee of the Federal Government, over whom the State has no control.  The State will respond only to the extent that it has knowledge of the Federal On-Scene Coordinator's actions.

**RESPONSE**:

Subject to and without waiving its specific and general objections, the State responds as follows:

After conducting a reasonable inquiry, the State is aware of two instances in which the State On-Scene Coordinator for the State of Alabama, any representative of the State of Alabama, or any other Alabama stakeholder, prevented, advised against, or refused permission, for the removal of Oil Materials discovered in the State of Alabama after April 20, 2010.

At one point, the Federal On-Scene Coordinator ("FOSC") halted cleaning of West Point Island, notwithstanding the State On-Scene Coordinator's ("SOSC") objections to continue operations. Based on discussions between the SOSC, FOSC, and the BP Incident Commander,

BP did not want to complete deep cleaning, which ultimately led to the FOSC halting deep cleaning operations.  A subsequent FOSC re-evaluated this decision, and re-started deep cleaning operations, which ultimately produced several tons of MC252 tar from the State's coastline.

At another point, in the Fall of 2010, BP personnel requested permission from the SOSC to surf-wash MC252 oil materials from the State's beaches. The SOSC ultimately objected to BP's request for multiple reasons, including (1) BP's proposed surf-wash would have significantly lowered the State's beach profile, in some instances as much as 6 feet vertically, by shoving the beach sand and tar into the surf; (2) the procedure would not have been successful in ultimately removing oil from the State's waters and beaches; (3) the procedure would have resulted in the removal of significant sand resources from the beach; (4) the procedure would have significantly compromised the coastline profile's storm surge protections during hurricane season; (5) in the event of a tropical storm, the procedure could have resulted in flooding and property damage that would be otherwise mitigated by the current coastline profile; and, (6) the State's National Flood Insurance Rating could be adversely impacted.

**INTERROGATORY NO. 22**:

To the extent the State of Alabama contends that any Defendant is not entitled to an offset for the State of Alabama's economic losses resulting from the Oil Spill based on payments or contributions BP or any other person or entity made to the State of Alabama in relation to the Oil Spill, provide a detailed description supporting your contention, including, but not limited to, which payments or contributions Alabama contends not to constitute an offset, the value of these payments or contributions, the date of these payments or contributions, the recipient of these payments or contributions, the designated use of the payments or contributions, and the alleged reasons why the payments or contributions do not qualify as an offset to the State of Alabama's economic losses.

**OBJECTIONS**:

The State objects to Interrogatory #22 because Defendants fail to define the term "offset." The State cannot speculate on Defendants' intended usage of "offset," and Defendants have failed to define this term in response to the State's inquiries regarding the Defendants' "affirmative defense" of offset.

The State objects to Interrogatory #22 to the extent that it requests the State to produce a legal conclusion and/or conduct legal research that Defense counsel can conduct.

The State objects to Interrogatory #22 to the extent the State was either not a party to the instances referenced above, or to the extent the requested information exists beyond the control and custody of the State.

The State objects to Interrogatory #22 as the Request seeks to impermissibly shift the Defendants' affirmative defense burdens to the State.

**RESPONSE**:

Subject to and without waiving its specific and general objections, the State responds as follows:

The State cannot respond to Defendants' Interrogatory #22 at this time because Defendants failed to define the term "offset" and failed to properly answer the State's

Interrogatory #13 (served on July 14, 2014), which requested Defendants to identify those payments for which Defendants claimed an offset.

The State reserves all arguments and defenses to Defendants' claims and/or affirmative defenses regarding offsets, set-offs, recoupments, credits, and/or any other reduction of the State's recovery.

**SUPPLEMENTAL RESPONSE:**

For the purposes of this response, Alabama uses the term "offset" or "set-off" to mean any monetary reduction of the trier of fact's judgment of Alabama's damages claims.   This includes, but is not limited to, a counterclaim based on an allegation that the State violated the terms of a grant or other monetary agreement with any Defendant.  This also includes, but is not limited to, a claim that Defendants may subtract the amount of any Defendant's expenditures in Alabama from the trier of fact's judgment of Alabama's damages claims as a form of credit.

The State cannot properly respond to Defendants' Interrogatory #22 at this time because BPXP has failed to properly answer the State's Interrogatory #13 (served on July 14, 2014), which requested Defendants to identify those payments for which Defendants claimed an offset. By way of example, but not limitation, in its Supplement Response to Alabama's Interrogatory #13, BPXP claims that it "may apply as an offset to the State's economic losses … approximately $1.8 billion to individuals and businesses in Alabama through various claims processes, and [] approximately $115 million in government payments to Alabama."   BPXP does not list the recipients of these payments, the date of these payments, or the value of the individual payments. Accordingly, while the State can generally state that it objects to the usage of any third-party payment as a set-off of the State's damages award, the State cannot comply with your request to give a "detailed description" of its objection because the State cannot detail the recipient or date

of these payments or contributions, nor can we detail the designated use of a payment or contribution.

The State reserves all arguments and defenses to Defendants' claims and/or affirmative defenses regarding offsets, set-offs, recoupments, credits, and/or any other reduction of the State's recovery.  These arguments and defenses include, but are not limited to, (a) the State has not waived its sovereign immunity against claims for set-off, (b) Defendants waived the right to claim a set-off, and (c) double-counting.

**SECOND SUPPLEMENTAL RESPONSE:**

For the purposes of this response, Alabama uses the term "offset" or "set-off" to mean any monetary reduction of the trier of fact's judgment of Alabama's damages claims.    This includes, but is not limited to, a counterclaim based on an allegation that the State violated the terms of a grant or other monetary agreement with any Defendant.  This also includes, but is not limited to, a claim that Defendants may subtract the amount of any Defendants' expenditures in Alabama from the trier of fact's judgment of Alabama's damages claims as a form of credit.

In response to Alabama's Motion to Compel a response to Alabama's Interrogatory #13, BPXP identified the following five grants as the basis of its set-off claims and defenses:

- The $25 million grant provided to Alabama in May 2010 and produced at BP-HZN-ALO01278889;

- The $25 million grant provided to Alabama in June 2010 and produced at BP-HZN-ALO01280259;

- The $12 million grant provided to the Alabama Department of Mental Health in August 2010 and produced at BP-HZN-ALO01029947;

- The $15 million grant provided to Alabama in May 2010 for the promotion of tourism and produced at BP-HZN-ALO00089636; and,

- The $16 million grant provided to Alabama in March 2011 for the promotion of tourism and produced at BP-HZN-ALO00050583.

13

MDL 2179 Rec. Doc. 13595 at 2-4 (filed Oct. 31, 2014).   The State's response to Defendants' Interrogatory #22 is based upon the State's understanding that the five grants listed above provide the sole and exclusive basis of Defendants' set-off claims and defenses.

A)      <u>Identification of Challenged Set-offs</u>:  The State intends to challenge Defendants' use of each of the five grants listed above as a set-off.

B)      <u>Value of Challenged Set-offs</u>:  The value of each of the challenged set-offs is listed above.

C)      <u>Date of Challenged Set-offs</u>:  The first $25 million grant is dated May 10, 2010. The second $25 million grant is dated June 11, 2010.  The $12 million grant provided to the Alabama Department of Mental Health was signed by Alabama officials on August 20, 2010 and BPXP's President on August 27, 2010.  The $15 million grant for the promotion of tourism is dated May 25, 2010.  The $16 million grant for the promotion of tourism is dated March 7, 2011.

D)      <u>Recipient and Designated Use of Challenged Set-offs</u>:  The State has provided an accounting of each of the five grants in response to Defendants' Interrogatory #14.

E)      <u>Description of Contentions</u>:  The State intends to challenge the use of the five grants listed above as a set-off on several grounds, including but not necessarily limited to:

a.  BP waived the right to use the above-listed grants as a set-off.

b.  The State's sovereign immunity precludes any set-off claim or defense.

c.  Defendants cannot receive a credit against the claims at issue in this phase of Alabama's case because the funds provided by the five grants listed above were used to recoup costs and losses that are not at issue in this phase of Alabama's case.

d.   Evidence of the State's disbursement of the grants listed above is irrelevant to the claims at issue in this phase of Alabama's case because the funds provided by these grants were not used to recoup the costs and losses at issue in this phase of Alabama's case.

e.   None of the above-listed grants imposed a duty upon the State to mitigate the losses and/or costs associated with the claims at issue in this phase of the State's case.

f.   Alabama has not violated any duty arising from the above-listed grant agreements.

g.   Application of the above-listed grants as mitigation evidence, a credit, and/or as a counterclaim would amount to double counting.

**INTERROGATORY NO. 23**:

Describe how any compensation or settlement payments relating to the Deepwater Horizon Oil Spill are taxed by the State of Alabama, including the applicable tax rate.

**OBJECTIONS**:

The State objects to Interrogatory #23 as it propounds a question of law.

The State objects to Interrogatory #23 as it seeks information that is irrelevant to the State's claims and is not reasonably calculated to lead to the discovery of admissible evidence.

The State objects to Interrogatory #23 to the extent that information regarding Alabama's taxation laws and policies are publicly available or otherwise equally accessible to Defendants.

The State objects to Interrogatory #23 to the extent the State was either not a party to the instances referenced above, or to the extent the requested information exists beyond the control and custody of the State.

The State objects to Interrogatory #23 to the extent it seeks expert-related opinions and/or work product before the Court's Scheduling Order for disclosure of expert-related materials and opinions.

The State objects to Interrogatory #23 as the Request seeks to impermissibly shift the Defendants' affirmative defense burdens to the State.

**RESPONSE**:

Subject to and without waiving its specific and general objections, the State responds as follows:

The State refers the Defendants to Title 40 of its tax code, located at the following web link: http://alisondb.legislature.state.al.us/acas/codeofalabama/1975/coatoc.htm. How much a claimant may be taxed upon receipt of compensation or settlement payment relating to the *Deepwater Horizon* Oil Spill requires a legal analysis of the State's tax code as applied to that particular claimant's circumstances, including the claimant's personal finances and the type of injury compensated for, and the State therefore cannot give a more detailed answer.

**SUPPLEMENTAL RESPONSE**:

Subject to and without waiving its specific and general objections, the State responds as follows:

How much a claimant may be taxed upon receipt of compensation or settlement payment relating to the *Deepwater Horizon* Oil Spill depends on an application of the State's tax code to that particular claimant's circumstances, including the claimant's personal finances and the type of injury compensated for.  For example, compensation for lost rental income is taxable income, while compensation for lost property value is not taxable income.

The State Department of Revenue provided answers to "frequently asked questions" regarding taxation of compensation and settlement payments arising from the oil spill at the following web link:  http://www.ador.alabama.gov/oilspill.cfm.  For full details on the State's taxation of income, including compensation and settlement payments and the applicable tax rate,

the State refers the Defendants to Title 40 of its tax code, which is publicly available at the following web link: http://alisondb.legislature.state.al.us/acas/codeofalabama/1975/coatoc.htm.


**INTERROGATORY NO. 24**:

>   Identify all statements or admissions made by any State of Alabama employee or agent concerning the impact of the Deepwater Horizon Oil Spill on Alabama's economy, tax revenues, or property values, including the identity of the person making the statement or admission, when the statement or admission was made, all persons who received the statement or admission, and your perceived authority of the person to make the statement or admission.

**OBJECTIONS**:

The State objects to Interrogatory #24 as overly broad and unduly burdensome.

The State objects to Interrogatory #24 as premature, as discovery is on-going, and thus the State has not obtained and/or reviewed all statements or admissions made by State employees and agents.

The State objects to Interrogatory #24, as it requests information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. By way of example, but not limitation, this Interrogatory seeks statements or admissions from State employees who lacked authority to make legally binding statements and admissions for the State.

The State objects to Interrogatory #24 to the extent the requested information exists beyond the control and custody of the State.

The State objects to the phrase "any State of Alabama employee or agent" to the extent that it extends discovery beyond those State departments and agencies listed in the Court's July 16, 2014 Scheduling Order.

The State objects to Interrogatory #24 to the extent that responsive information is publicly available or otherwise equally accessible to Defendants.

**RESPONSE**:

Subject to and without waiving its specific and general objections, the State responds as follows:

The State incorporates by reference as though fully stated herein, the specific documents and categories of documents identified as containing relevant information in the Parties' Rule 26 disclosures and any amendments and/or supplements thereto.

Although fact discovery is on-going, the State believes that publicly available reports, submissions, and statements by the State employees or agents regarding the economic impact of the oil spill on the State as a whole, its industries, departments and tax revenues may support certain State claims. Such reports, submissions, and statements are publicly available or otherwise accessible to the Defendants, and the burden of deriving or ascertaining the answer is substantially the same for either party.

The information that this Interrogatory seeks is also the subject of expert discovery and such information will be addressed in forthcoming expert reports in accordance with the Court's July 16, 2014 Scheduling Order.


**INTERROGATORY NO. 25**:

Identify all statements or admissions the State of Alabama contends were made by any employee or agent of any Defendant that support Alabama's claims, including the identity of the person making the statement or admission, when the statement or admission was made, and all persons the State of Alabama contends received the statement or admission.

**OBJECTIONS**:

The State objects to Interrogatory #25 as overly broad and unduly burdensome.

The State objects to Interrogatory #25 as premature, as discovery is on-going, and thus the State has not obtained and/or reviewed all statements or admissions made by Defendants' employees and agents.

The State objects to Interrogatory #25 to the extent the requested information exists beyond the control and custody of the State.

The State objects to Interrogatory #25 to the extent that responsive information is publicly-available or otherwise equally accessible to Defendants.

**RESPONSE**:

The State incorporates by reference as though fully stated herein, the specific documents and categories of documents identified as containing relevant information in the Parties' Rule 26 disclosures and any amendments and/or supplements thereto.

Although fact discovery is on-going, the State believes that publicly available reports, statements, submissions and statements, which either constitute overt acts or a failure to object when a position was requested by the Defendants and/or their agents exist that support the State's claims. Such reports, statements and submissions are publicly available or otherwise accessible to the Defendants, and the burden of deriving or ascertaining the answer is substantially the same for either party.

The information that this Interrogatory seeks is also the subject of expert discovery and such information will be addressed in forthcoming expert reports in accordance with the Court's Scheduling Order.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 29:

All documents, including but not limited to sampling results, studies, surveys, analyses, or documents distributed to the public, relating to Oil Materials from any source found on Alabama's Gulf Coast shoreline, or in the waters 15 miles therefrom under Alabama's jurisdiction, prior to April 20, 2010.

### OBJECTIONS:

The State objects to RFP #29 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  By way of example, but not limitation, the time period "prior to April 20, 2010" (*i.e.* from January 1, 2000 to April 20, 2010") is overly broad and inconsistent with the time frame imposed by the Court in its July 29 and July 31, 2014 orders regarding the time period to be applied to Defendants' corresponding search terms. *See* MDL 2179 Docs. 13210, 13230.

The State objects to RFP #29 on the grounds that information regarding oiling events up to 10 years before the Spill is irrelevant to the State's claims and would not lead to the discovery of admissible evidence.

The State objects to RFP #29 to the extent that responsive information is publicly available or otherwise equally accessible to Defendants (particularly, "documents distributed to the public").

The State objects to RFP #29 to the extent it seeks expert-related opinions and/or work product before the Court's Scheduling Order for disclosure of expert-related materials and opinions.

The  State objects to RFP #29 to the extent that it requests information or documents that are outside of the State's possession, custody, or control.

**RESPONSE**:

Subject to and without waiving its specific and general objections, the State will perform a reasonable search for the requested information and supplement this Response accordingly.  To the extent this Request seeks the disclosure of experts or expert work product materials, the State will produce information related to experts in accordance with the Court's Scheduling Order.

**REQUEST FOR PRODUCTION NO. 30**:

All documents relating to the closure of beaches, marshes, or other lands otherwise accessible to the public, within the State of Alabama, due to the discovery of Oil Materials from any source, prior to and after April 20, 2010.

**OBJECTIONS**:

The State objects to RFP #30 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  By way of example, but not limitation, the time period "prior to … April 20, 2010" (*i.e.* from January 1, 2000 to April 20, 2010") is overly broad and inconsistent with the time frame imposed by the Court in its July 29 and July 31, 2014 orders regarding the time period to be applied to Defendants' corresponding search terms. *See* MDL 2179 Docs. 13210, 13230.

The State objects to RFP #30 on the grounds that information regarding oiling events up to 10 years before the Spill is irrelevant to the State's claims and would not lead to the discovery of admissible evidence.

The State objects to RFP #30 to the extent that responsive information is publicly available or otherwise equally accessible to Defendants (particularly, "documents distributed to the public").

**RESPONSE**:

Subject to and without waiving its specific and general objections, the State will perform a reasonable search for the requested information and supplement this Response accordingly. To the extent this Request seeks the disclosure of experts or expert work product materials, the State will produce information related to experts in accordance with the Court's Scheduling Order.

**REQUEST FOR PRODUCTION NO. 31**:

All documents relating to the closure of the State of Alabama's fishing territories and the purchase of State of Alabama fishing licenses after April 20, 2010, and relating to any losses to the same.

**OBJECTIONS**:

The State objects to RFP #31 on the grounds that it is overly broad and unduly burdensome.

The State objects to RFP #31 to the extent that responsive information is publicly available or otherwise equally accessible to Defendants.

The State objects to RFP #31 to the extent it seeks expert-related opinions and/or work product before the Court's Scheduling Order for disclosure of expert-related materials and opinions.

**RESPONSE**:

Subject to and without waiving its specific and general objections, the State will perform a reasonable search for the requested information and supplement this Response accordingly. To the extent this Request seeks the disclosure of experts or expert work product materials, the State will produce information related to experts in accordance with the Court's Scheduling Order.

**REQUEST FOR PRODUCTION NO. 32**:

All documents relating to any objection that the State of Alabama raised to Unified Command's decision to conclude the active Response in Alabama on June 10, 2013.

**OBJECTIONS**:

The State objects to RFP #32 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

The State objects to RFP #32 to the extent that responsive information is publicly available or otherwise equally accessible to Defendants.

**RESPONSE**:

Subject to and without waiving its specific and general objections, the State will perform a reasonable search for the requested information and supplement this Response accordingly. To the extent this Request seeks the disclosure of experts or expert work product materials, the State will produce information related to experts in accordance with the Court's Scheduling Order.

**REQUEST FOR PRODUCTION NO. 33**:

All documents and communications exchanged between the State of Alabama and Alabama's city mayors, county presidents, and other local government officials about the Response and Alabama's Gulf Coast shoreline cleanup activities.

**OBJECTIONS**:

The State objects to RFP #33 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

The State objects to RFP #33 to the extent that it seeks documents and communications that are outside the possession, control, or custody of the State.

The State objects to RFP #33 to the extent that responsive information is publicly available or otherwise equally accessible to Defendants.

**RESPONSE**:

Subject to and without waiving its specific and general objections, the State will perform a reasonable search for the requested information and supplement this Response accordingly.  To the extent this Request seeks the disclosure of experts or expert work product materials, the State will produce information related to experts in accordance with the Court's Scheduling Order.

**REQUEST FOR PRODUCTION NO. 34**:

All documents relating to Revenues, including tax revenues, that the State of Alabama projects or is expected to receive based on compensation or settlement payments from the Deepwater Horizon Oil Spill.

**OBJECTIONS**:

The State objects to RFP #34 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

The State objects to the phrase "expected to receive," as it calls for speculation and will not lead to the discovery of admissible evidence.

The State objects to RFP #34 because Defendants, particularly BP, are in a better position to identify "compensation or settlement payments from the Deepwater Horizon Oil Spill."

The State objects to RFP #34 to the extent that Defendants refuse to produce all documents and information concerning "compensation or settlement payments from the Deepwater Horizon Oil Spill" made by Defendants in response to Alabama's discovery requests.

The State objects to RFP #34 to the extent that responsive information is publicly available or otherwise equally accessible to Defendants.

The State objects to RFP #34 to the extent it seeks expert-related opinions and/or work product before the Court's Scheduling Order for disclosure of expert-related materials and opinions.

**RESPONSE**:

Subject to and without waiving its specific and general objections, the State will perform a reasonable search for the requested information and supplement this Response accordingly. To the extent this Request seeks the disclosure of experts or expert work product materials, the State will produce information related to experts in accordance with the Court's Scheduling Order.

**REQUEST FOR PRODUCTION NO. 35**:

All documents relating to communications or data exchanged between the State of Alabama, its departments or agencies, or subdivisions listed in the Court's scheduling order, and any Defendant, Unified Command, or the United States Coast Guard, concerning the Oil Spill.

**OBJECTIONS**:

The State objects to RFP #35 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

The State objects to the phrase "the State of Alabama, its departments or agencies, or subdivisions listed in the Court's scheduling order" because it indicates a definition of "the State of Alabama" that is broader than "its departments or agencies, or subdivisions listed in the Court's scheduling order."  The State shall respond consistent with the limitations imposed by the Court's scheduling order.

The State objects to RFP #35 to the extent that it seeks production of documents exchanged with—and thus already in the possession of—"any Defendant."

The State objects to RFP #35 as it requests the dissemination of confidential settlement negotiation information.

**RESPONSE**:

Subject to and without waiving its specific and general objections, the State will perform a reasonable search for the requested information and supplement this Response accordingly.  To the extent this Request seeks the disclosure of experts or expert work product materials, the State will produce information related to experts in accordance with the Court's Scheduling Order.

## REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that Oil Materials from sources other than the Macondo Well were present on Alabama's Gulf Coast shoreline prior to, and after, April 20, 2010.

**OBJECTIONS**:

The State objects to RFA #1 to the extent it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

The State objects to RFA #1 to the extent that it seeks information that is beyond the control and custody of the State.

**RESPONSE:**

Subject to its general objections, the State responds as follows:

The State admits that on limited and sporadic occasions, grease balls and hard rubber-like materials have been present on the State's coastline; however, these events are greatly outnumbered in volume and incidence by the consistent and chronic re-occurrence of identifiable MC252 oil material observations along Alabama's coastline, which never occurred before the *Deepwater Horizon* oil spill.

### REQUEST FOR ADMISSION NO. 2:

Admit that Oil Materials released from the Macondo Well following the Deepwater Horizon Incident did not reach Alabama's Gulf Coast shoreline until approximately June 1, 2010.

**OBJECTIONS**:

The State objects to the phrase "approximately June 1, 2010" as vague and ambiguous.

The State objects to RFA #2 as the State cannot know precisely, aside from the information that is currently available upon performing a search, when the first Oil Materials reached the State's "shoreline."

27

**RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

The State admits that, based on information currently available to it, MC252 oil materials began making landfall on the State's physical coastline on approximately June 1, 2010, or thereabouts. To the extent "shoreline" includes adjacent State waters, the State denies this Request. The State reserves the right to amend this Response as more information becomes available.

**REQUEST FOR ADMISSION NO. 3:**

Admit that not all of the Oil Materials removed from Alabama's Gulf Coast shoreline in response to calls to the National Response Center, that were suspected to be from the Macondo Well based on visual observations, were chemically tested to determine their origin.

**OBJECTIONS**:

The State objects to the undefined phrase "chemically tested" as vague and ambiguous.

The State objects to this Request because the State is not privy to "all" suspicions regarding, and removals of, Oil Materials from Alabama.

**RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

Based on information known to it presently, the State admits in part that some oil materials removed from the State's coastline were not chemically tested to determine their point of origin. However, the State denies this Request to the extent it presupposes that visual identification was not a proper mechanism to determine the origin of oil materials recovered from within the State. The United States Coast Guard, BP, and the States consistently used visual identification to determine the point of origin of oil materials throughout the oil spill response.

28

**REQUEST FOR ADMISSION NO. 4:**

Admit that there have been instances where Oil Materials that were suspected to be from the Macondo Well based on visual identification were later shown to come from a source other than the Macondo Well based on testing from the U.S. Coast Guard's Marine Safety Lab.

**OBJECTIONS**:

The State objects to this Request because the State is not privy to all suspicions regarding the source of Oil Materials found in Alabama.

**RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

Based upon a reasonable search of information available to the State at this time, the State does not possess information that would permit it to either admit or deny the Request as worded.

**REQUEST FOR ADMISSION NO. 5:**

Admit that the extent of oiling on Alabama's Gulf Coast shoreline from the Deepwater Horizon Oil Spill was reduced by Unified Command's, including BP's, efforts to prevent Oil Materials from the Macondo Well from reaching Alabama's Gulf Coast shoreline.

**OBJECTIONS**:

The State objects to this request because the phrase "was reduced" is vague and ambiguous.

The State objects to this request because the State was not privy to each of the referenced efforts to prevent Oil Materials from the Macondo Well from reaching Alabama's Gulf Coast shoreline.

The State objects to this request to the extent it seeks expert-related opinions and/or work product before the Court's Scheduling Order for disclosure of expert-related materials and opinions.

**RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

The State admits that Unified Command's, including BP's, efforts may have prevented some oil materials from the Macondo Well from reaching Alabama's Gulf Coast Shoreline; otherwise, the State does not possess information that would permit it to either admit or deny the Request.

## REQUEST FOR ADMISSION NO. 6:

Admit that Alabama was represented in Unified Command through at least the Alabama State On-Scene Coordinator.

**OBJECTIONS**:

The State objects to the use of the word "represented" to the extent that it assumes or implies that Alabama was always permitted to provide comments and directives within Unified Command.

**RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

Admitted to the extent that it is understood that Alabama's "represent[ative] in Unified Command" was not always requested and/or allowed to provide comments and directives within Unified Command.  Otherwise, denied.

**REQUEST FOR ADMISSION NO. 7:**

Admit that during the Response, each SCAT team that conducted SCAT surveys in Alabama included a representative from Alabama who Alabama selected.

**OBJECTIONS**:

The State objects to the use of the undefined word "representative" to the extent that it assumes or implies that an agent of the State was always permitted to provide comments and/or directives.

**RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

The State admits that it was a regular participant in the SCAT surveys conducted by various SCAT teams within Alabama. The State denies that a State representative was always present at all SCAT surveys because it is possible the State may not have been a party to all of the SCAT surveys conducted in Alabama.

**SUPPLEMENTAL RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

The State admits that it was a regular participant in the SCAT surveys conducted by various SCAT teams within Alabama. Based upon a reasonable search of information available to the State at this time, the State does not possess information that would permit it to either admit or deny whether a State representative was always present at all SCAT surveys because it is possible the State may not have been a party to all of the SCAT surveys conducted in Alabama.

**REQUEST FOR ADMISSION NO. 8:**

Admit that Alabama's State On-Scene Coordinator signed and approved the November 2011 Shoreline Cleanup Completion Plan.

**OBJECTIONS**:

The State asserts its general objections.

**RESPONSE:**

Subject to its general objections, the State responds as follows:

Admitted.


**REQUEST FOR ADMISSION NO. 9:**

Admit that removal actions were deemed complete by Unified Command for all SCAT Segments in Alabama in March of 2013.

**OBJECTIONS**:

The State objects to this Request because the phrase "removal actions" is vague and ambiguous.  The State also objects to this Request because the phrase "deemed completed" is vague and ambiguous.

The State objects to this Request to the extent that Defendants are referring to a particular document and have failed to furnish or identify that document.

**RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

Due to the vague and ambiguous nature of RFA #9 as noted in the State's objections, the State can neither admit nor deny the Request.  Assuming that Defendants are referring to a particular document; they have failed to furnish or identify that document.

**REQUEST FOR ADMISSION NO. 10:**

Admit that the Federal On-Scene Coordinator concluded the active Response in Alabama on June 10, 2013.

**OBJECTIONS**:

The State objects to the term "concluded" as vague and ambiguous.

**RESPONSE:**

Subject to its general objections, the State responds as follows:

The State admits that formal active response activities were declared over by FOSC directive on June 10, 2013; however, removal activities continue to this day, as the State continues to observe MC252 oiling events within its territories.

**REQUEST FOR ADMISSION NO. 11:**

Admit that Alabama did not object to or challenge the Federal On-Scene Coordinator's declaration that the active Response in Alabama concluded on June 10, 2013.

**OBJECTIONS**:

The State objects to this Request because the phrase "did not object to or challenge" is vague and ambiguous and presupposes the State's opportunity to lodge a meaningful objection or challenge.

**RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

Denied.

**REQUEST FOR ADMISSION NO. 12:**

Admit that after the active Response concluded, each time the National Response Center issued a directive to BP to locate or remove Oil Materials that were deemed visually consistent with Oil Materials from the Macondo Well, BP responded to the directive and followed the guidelines of the U.S. Coast Guard.

**OBJECTIONS**:

The State objects to the phrase "responded to the directive" as vague and ambiguous. The State also objects to the phrase "followed the guidelines of the U.S. Coast Guard" as vague and ambiguous.

The State objects to this Request because the State was not privy to each directive issued by the NRC and the specific details of BP's response.

**RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

Based upon a reasonable search of information available to the State at this time, the State does not possess information that would permit it to either admit or deny the Request as worded.

**REQUEST FOR ADMISSION NO. 13:**

Admit that by October 10, 2010, only 0.3 miles of Alabama beaches were classified by SCAT as being in the heavy Oiling Category, and zero miles of Alabama beaches were classified by SCAT as being in the moderate Oiling Category.

**OBJECTIONS**:

The State objects to this request as vague and ambiguous, as it is subject to numerous interpretations of its meaning.

**RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

34

Based upon a reasonable search of information available to the State at this time, and given the vague and ambiguous nature of RFA #13, the State does not possess information that would permit it to either admit or deny the Request.  Assuming that Defendants are referring to a particular document; they have failed to furnish or identify that document.

**SUPPLEMENTAL RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

The State admits that, on the particular day of October 11, 2010, SCAT classified 0.3 miles of Alabama beaches as being in the "Heavy" Oiling Category and 0.0 miles of Alabama beaches as being in the "Moderate" Oiling Category.  The State denies the remainder of this Request.


**REQUEST FOR ADMISSION NO. 14:**

Admit that since May 28, 2011, the number of miles of Alabama beaches that have been classified by SCAT as being in either the heavy or moderate Oiling Category has been zero.

**OBJECTIONS**:

The State objects to the Response because the phrase "classified by" is vague and ambiguous.

**RESPONSE:**

Subject to its general objections, the State responds as follows:

Admitted.

**REQUEST FOR ADMISSION NO. 15:**

Admit that by October 10, 2010, only 0.2 miles of Alabama marshes were classified by SCAT as being in the moderate Oiling Category, and zero miles of Alabama marshes were classified by SCAT as being in the heavy Oiling Category.

**OBJECTIONS**:

The State objects to this request as vague and ambiguous, as it is subject to numerous interpretations of its meaning.

**RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

Based upon a reasonable search of information available to the State at this time, and given the vague and ambiguous nature of RFA #15, the State does not possess information that would permit it to either admit or deny the Request.  Assuming that Defendants are referring to a particular document; they have failed to furnish or identify that document.

**SUPPLEMENTAL RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

The State admits that, on the particular day of October 11, 2010, SCAT classified 0.2 miles of Alabama marshes as being in the "Moderate" Oiling Category, and 0.0 miles of Alabama marshes as being in the "Heavy" Oiling Category.  The State denies the remainder of this Request.

**REQUEST FOR ADMISSION NO. 16:**

Admit that since May 28, 2011, the number of miles of Alabama marshes classified by SCAT as being in the heavy or moderate Oiling Category has been zero.

**OBJECTIONS**:

The State objects to the Response because the phrase "classified by" is vague and ambiguous.

**RESPONSE:**

Subject to its general objections, the State responds as follows:

Admitted.


**REQUEST FOR ADMISSION NO. 17:**

Admit that Alabama has not provided an accounting of its use and disbursement of the two $25 million payments BP provided to Alabama in May and June 2010, as requested in BP's September 23, 2013 letter to David Perry, Chief of Staff to the Governor of Alabama.

**OBJECTIONS**:

The State objects to the phrase "accounting of its use and disbursement" as vague and ambiguous.

**RESPONSE:**

Subject to its general objections, the State responds as follows:

Denied.

**REQUEST FOR ADMISSION NO. 18:**

Admit that Alabama's total revenues for total governmental funds for the fiscal year ending in September 2010 were higher than for any fiscal year before or since.

**OBJECTIONS**:

The State objects to the phrases "total revenues for total governmental funds" as vague and ambiguous.

**RESPONSE:**

Subject to its general objections, the State responds as follows:

Given the vague and ambiguous nature of the phrase "total revenues for total government funds," the State can neither admit nor deny the Request.

**SUPPLEMENTAL RESPONSE:**

Subject to its general objections, the State responds as follows:

The State admits that, within the State's Comprehensive Annual Financial Reports ("CAFR"), the reported amount of "Total Revenues" for the "Total Governmental Funds" category was higher for the fiscal year ending in September 2010 than the reported amount of "Total Revenues" for the "Total Governmental Funds" category in the fiscal years ending in September 2008, September 2009, September 2011, September 2012, and September 2013.  The State denies the remainder of this Request, including any presumption that the cited portion of the CAFR report is indicative of oil spill impacts to the State of Alabama.

**REQUEST FOR ADMISSION NO. 19:**

Admit that total revenues for Alabama's Education Trust Fund decreased for three consecutive fiscal years beginning with the fiscal year ending in September 2008.

**OBJECTIONS**:

The State objects to the phrase "total revenues for Alabama's Education Trust Fund decreased" as vague and ambiguous because that phrase is subject to multiple interpretations.

**RESPONSE:**

Subject to its general objections, the State responds as follows:

Given the vague and ambiguous nature of this Request, the State can neither admit nor deny the Request.

**SUPPLEMENTAL RESPONSE:**

Subject to its general objections, the State responds as follows:

Relying on your assertion that this Request refers to the State's Comprehensive Annual Financial Reports, denied.

**REQUEST FOR ADMISSION NO. 20:**

Admit that the National Recession caused a decrease in Alabama's overall tax revenue in the fiscal year ending in September 2009.

**OBJECTIONS**:

The State objects to the phrase "overall tax revenue" as vague and ambiguous.

The State objects to RFA #20 to the extent it seeks expert-related opinions and/or work product before the Court's Scheduling Order for disclosure of expert-related materials and opinions.

**RESPONSE:**

Subject to its general objections, the State responds as follows:

The State can neither admit nor deny this request.  What impact, if any, the National Recession had on the State's overall tax revenues calls for expert-related analyses. The State will produce information related to expert analyses in accordance with the Court's Scheduling Order.

**SUPPLEMENTAL RESPONSE:**

Subject to its general objections, the State responds as follows:

The State admits that, according to reports, the National Recession lasted from 2007 to 2009 and that it likely had some form of impact on Alabama's economy.  Whether the National Recession actually impacted Alabama, the gravity of the impact(s), and the time duration of the impact(s), is the subject of expert-related analyses. The State will produce information related to expert analyses in accordance with the Court's Scheduling Order.  The State denies the remainder of this Request.

**REQUEST FOR ADMISSION NO. 21:**

Admit that the National Recession caused a decrease in Alabama's overall tax revenue in the fiscal year ending in September 2010.

**OBJECTIONS**:

The State objects to the phrase "overall tax revenue" as vague and ambiguous.

The State objects to RFA #21 to the extent it seeks expert-related opinions and/or work product before the Court's Scheduling Order for disclosure of expert-related materials and opinions.

**RESPONSE:**

Subject to its general objections, the State responds as follows:

The State can neither admit nor deny this request.  What impact, if any, the National Recession had on the State's overall tax revenues calls for expert-related analyses. The State will produce information related to expert analyses in accordance with the Court's Scheduling Order.

**SUPPLEMENTAL RESPONSE:**

Subject to its general objections, the State responds as follows:

The State admits that, according to reports, the National Recession lasted from 2007 to 2009 and that it likely had some form of an impact on Alabama's economy.  Whether the National Recession actually impacted Alabama, the gravity of the impact(s), and the time duration of the impact(s), is the subject of expert-related analyses. The State will produce information related to expert analyses in accordance with the Court's Scheduling Order.  The State denies the remainder of the Request.

## REQUEST FOR ADMISSION NO. 22:

Admit that the National Recession caused a decrease in Alabama's overall tax revenue in the fiscal year ending in September 2011.

**OBJECTIONS**:

The State objects to the phrase "overall tax revenue" as vague and ambiguous.

The State objects to RFA #22 to the extent it seeks expert-related opinions and/or work product before the Court's Scheduling Order for disclosure of expert-related materials and opinions.

**RESPONSE:**

Subject to its general objections, the State responds as follows:

The State can neither admit nor deny this request.  What impact, if any, the National Recession had on the State's overall tax revenues calls for expert-related analyses. The State will produce information related to expert analyses in accordance with the Court's Scheduling Order.

**SUPPLEMENTAL RESPONSE:**

Subject to its general objections, the State responds as follows:

The State admits that, according to reports, the National Recession lasted from 2007 to 2009 and that it likely had some form of an impact on Alabama's economy.  Whether the National Recession actually impacted Alabama, the gravity of the impact(s), and the time duration of the impact(s), is the subject of expert-related analyses. The State will produce information related to expert analyses in accordance with the Court's Scheduling Order.  The State denies the remainder of the Request.


**REQUEST FOR ADMISSION NO. 23:**

Admit that the Moratorium caused a decrease in Alabama's overall tax revenue in the fiscal year of 2010.

**OBJECTIONS**:

The State objects to the phrase "overall tax revenue" as vague and ambiguous.

The State objects to RFA #23 to the extent it seeks expert-related opinions and/or work product before the Court's Scheduling Order for disclosure of expert-related materials and opinions.

**RESPONSE:**

Subject to its general objections, the State responds as follows:

The State can neither admit nor deny this request.  What impact, if any, the Moratorium had on the State's overall tax revenues calls for expert-related analyses and opinions. The State will produce information related to expert analyses in accordance with the Court's Scheduling Order.

**REQUEST FOR ADMISSION NO. 24:**

Admit that the Moratorium caused a decrease in Alabama's overall tax revenue in the fiscal year of 2011.

**OBJECTIONS**:

The State objects to the phrase "overall tax revenue" as vague and ambiguous.

The State objects to RFA #24 to the extent it seeks expert-related opinions and/or work product before the Court's Scheduling Order for disclosure of expert-related materials and opinions.

**RESPONSE:**

Subject to its general objections, the State responds as follows:

The State can neither admit nor deny this request.  What impact, if any, the Moratorium had on the State's overall tax revenues calls for expert-related analyses and opinions. The State will produce information related to expert analyses in accordance with the Court's Scheduling Order.

**REQUEST FOR ADMISSION NO. 25:**

Admit that Alabama's Travel Economic Impact Reports have described the overall job creation impact of the travel industry on the State of Alabama as "impressive" in 2010, 2011, 2012, and 2013.

**OBJECTIONS**:

The State objects to this Request to the extent that Defendants are referring to a particular document and have failed to furnish or identify that document.

**RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

Due to the vague and ambiguous nature of the Request, the State can neither admit nor deny the Request as worded. Specifically, the Request fails to identify which specific Report purportedly made the comment referenced.

**SUPPLMENTAL RESPONSE:**

Subject to its general and specific objections, the State responds as follows:

The State admits that the Travel Economic Impact Reports have used the word "impressive" as referenced in this Request.  The State denies the remainder of this Request.

**GENERAL RESPONSES AND OBJECTIONS**

The State asserts the following objections to each of the Defendants' interrogatories, requests for production, and requests for admission served on September 3, 2014 ("Defendants' Discovery Requests"), including the definitions and instructions associated therewith. These general objections are incorporated by reference into each specific response set forth above and are neither waived nor limited by any specific responses.

1.      The State objects to Defendants' Discovery Requests because many of these requests are compound and contain multiple subparts that should be counted as separate requests.[1]  The Court expressly limited Defendants to 60 requests for production and interrogatories and 25 requests for admissions.   MDL 2179 Doc. 13149. The Defendants' Discovery Requests exceed these Court imposed limitations through their use of compound and multi-part requests.  Despite this objection, the State has responded to each of the Defendants' requests in good faith.  The State, however, reserves the right to ask the Court to strike the offending number of Defendants' requests (and the State's corresponding good faith responses) should Defendants withhold responses to any of Alabama's requests on the same grounds.

2.      The State objects to Defendants' Discovery Requests to the extent they call for information, seek discovery, or attempt to impose any obligations beyond that permitted or authorized by the Federal Rules of Civil Procedure or the Rules and Orders of this Court.

3.      The State objects to Defendants' Discovery Requests to the extent they call for information or seek discovery from State Departments or Agencies beyond those State Departments, Agencies, and Subdivisions identified in the Court's July 16, 2014 order.  MDL

---

[1] For example, counsel for BPXP acknowledged that Interrogatory #7 contained a "first part of the Defendants' interrogatory" and a distinct "second part of this interrogatory."   Letter from Paul Collier to Corey Maze at 8 (September 2, 2014) (on file with counsel).

2179 Doc. 13149.  The State's responses will be narrowed to the Departments, Agencies, and Subdivisions identified by the Court in its Order.

4.      The State objects to any and all requests that impose time frames that are inconsistent with the Court's July 29 and July 31, 2014 orders, which set forth the time period to be applied to Defendants' corresponding search terms.  *See* MDL 2179 Docs. 13210, 13230. The State will respond to Defendants' Discovery Requests in accordance with the response outlined on page 2 of the State's September 15, 2014 letter to Paul Collier.

5.      The State objects to the Defendants' Discovery Requests to the extent they seek documents or information not related to the issues to be tried in this Phase of Alabama's trial.

6.      The State objects to the Defendants' Discovery Requests to the extent they seek documents or information related to the on-going Natural Resource Damage Assessment, as the Court has ruled that the State's claim for natural resource damages is excluded from this Phase of Alabama's trial.  *See* MDL 2179 Doc. 13149 at 3.

7.      The State objects to Defendants' Discovery Requests to the extent they seek documents or information relating to Phases One or Two of the litigation. *See, e.g.*, MDL 2179 Doc. 3354 ("No party may serve any party with any further Phase One RFPs, interrogatories, or RFAs without leave of Court.").  Discovery for Phase One and Phase Two is complete, and the trial record for the Limitation and Liability Trial is closed.   The State expressly reserves the right to rely on discovery taken and the record developed in Phase One and Phase Two of the Limitation and Liability Trial in this phase of Alabama's trial.

8.      The State objects to Defendants' Discovery Requests to the extent they call for the production of ESI in any manner other than required under Federal Rule of Civil Procedure 34, the Rules and Orders of this Court, and ongoing negotiations and discussions among counsel.

9.     The State objects to Defendants' Discovery Requests to the extent they seek information or documents protected by the attorney-client privilege, the work-product doctrine, the joint-defense or common-interest privilege, or any other applicable privilege, exemption, or immunity.

10.     The State objects to Defendants' Discovery Requests to the extent they seek information or documents relating to the settlement or potential settlement of disputes on the grounds that such information is not relevant to any party's claim or defense, is not admissible at trial, is not reasonably calculated to lead to the discovery of admissible evidence, is protected from disclosure and dissemination under Federal Rule of Evidence 408, and/or the discovery of such information would be prejudicial to the efforts of State and any opposing parties to resolve their disputes in a fair and efficient manner.

11.     The State objects to Defendants' Discovery Requests to the extent they call for information or documents not within the State's possession, custody, or control, including but not limited to information or documents under the possession, custody, or control of Alabama's counties and municipalities.  All responses are made on behalf of the State only, and are limited to information and documents within the State's possession, custody, or control.

12.     The State objects to the Defendants' Discovery Requests to the extent they are unduly burdensome, duplicative, premature, oppressive, and/or overly broad, including, without limitation, as to subject matter and/or time period, and where compliance with specific requests would be unreasonably difficult as well as prohibitively expensive or time-consuming.

13.     The State objects to the Defendants' Discovery Requests to the extent they are not limited to information or documents relevant to any party's claim or defense, or to the extent

they seek discovery of information or documents not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence.

14.     The State objects to Defendants' Discovery Requests as premature to the extent they call for expert discovery or seek information or documents that may not be identified until all fact and expert discovery is complete.   To the extent Defendants' Discovery Requests seek to ascertain the identity, writings, and/or opinions of testifying experts or non-testifying consulting experts, the State objects, as Defendants' Discovery Requests violate the work-product privilege. To the extent the State wishes to support its claims with expert opinion and work product, the State will produce expert opinions and work product in accordance with the Court's Scheduling Order and the Federal Rules of Civil Procedure.

15.     The State objects to Defendants' Discovery Requests to the extent they seek information or documents subject to the deliberative process privilege, which protects the disclosure and distortion of candid discussions, advisory opinions, recommendations, and deliberations necessary for optimum decision-making and policy-making processes within the State's governmental branches, agencies, departments, divisions, etc.

16.     The State objects to Defendants' Discovery Requests to the extent they seek disclosure of executive privilege-protected communications by and between the State's Governor and/or other high ranking officials of the executive branch. The disclosure of such executive communications would adversely affect and/or disrupt the operations and/or decision-making processes of the executive branch.

17.     The State objects to Defendants' Discovery Requests to the extent they seek the disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to,

restrictions imposed in connection with proceedings before the Marine Board of Investigation, and the protections of the Health Insurance Portability and Accountability Act, or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

18.     The State objects to the Defendants' Discovery Requests to the extent they seek documents already in the possession of the Defendants or equally available to the Defendants from sources other than the State, including publicly available sources.

19.     *"Instructions***:"** The State objects to Defendants' "Instructions" to the extent they exceed the State's obligations under the Federal Rules of Civil Procedure, the Court's Pre-trial Orders, and/or the Court's Scheduling Order.   The State will read and respond to Defendants' Discovery Requests pursuant to the Federal Rules of Civil Procedure and any applicable order of the Court.   The State further objects to, and will read and respond to the Defendants' "Instructions," as follows:

(a) Alabama objects to the timeframe "2000 to the present" for the reasons stated above. The State will respond to Defendants' Requests in accordance with the "Temporal Scope" section of the State's September 15, 2014 letter to Paul Collier and the Court's July 29 and July 31, 2014 orders regarding the time period to be applied to Defendants' search terms.  *See* MDL 2179 Docs. 13210, 13230.

(b)     The State objects to the production of county-level data not within the State's possession, custody, or control.

(c)     The State has no additional objection.

(d)     The State objects to the requirement that it describe all interpretations of Defendants' vague and ambiguous terms and phrases.

(e)     The State objects to this instruction to the extent that it conflicts with Federal Rule of Civil Procedure 26(e)(1)(A), which requires supplementation of a response "in a timely manner if the party learns that in some material respect the … response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to [the opposing party] during the discovery process or in writing[.]"  The State will comply with the requirements of Rule 26(e)(1)(A).

21.     "***Definitions:***"  The State objects to the "Definitions" contained within Defendants' Discovery Requests to the extent they seek to impose any meaning or interpretation onto the requests other than that evident from the plain and ordinary meaning of the words used therein.  The State further objects to, and will read and respond to, the Defendants' "Definitions" as follows:

- "<u>And</u>" and "<u>or</u>:" The State has no additional objection.

- "<u>BP</u>:" The State objects to Defendants' definition of "BP" to the extent Defendants seek to limit the scope of BP's corporate obligations in this litigation, either in the discovery phase or at trial.  The State will respond to this term as if it also seeks information on BP plc or any other BP entity that the State contends is responsible, either in whole or in part, for the State's damages.

- "<u>Communication</u>:" The State objects to the same extent that Defendants object to the State's definition of the same term, as the Parties' definitions are virtually identical.  The State will read and respond to Defendants' requests with the understanding that the term "communication" means talking to someone or sending them a message of some sort.

- "*<u>Deepwater Horizon</u>* <u>Incident</u>" and "<u>Incident</u>:"  The State objects to the Defendants' definition of "*Deepwater Horizon* Incident" or "incident," to the same extent that Defendants

object to the State's definition of the same terms, as the Parties' definitions are virtually identical.

- "Defendants:"  The State objects to Defendants' definition of "Defendants" as overly broad to the extent that it includes any person or entity named as a Defendant "in any complaint filed in MDL 2179."   The State will read and respond to this term as including only those Defendants named in the Court's order governing this phase of Alabama's trial.  *See* MDL 2179 Doc. #13149.

- "Document" or "documents:"  The State objects to the Defendants' definitions to the same extent that Defendants object to the State's definition of the same terms, as the Parties' definitions are substantially similar.  The State further objects to this definition to the extent that Defendants seek to require production of information that is exempt from preservation pursuant to PTO 22 or any other order of the Court.

- "Gulf Coast:"  The State has no additional objection.

- "Gulf Region:"  The State has no additional objection.

- "Identify:"  The State objects to the Defendants' definition of "Identify" to the same extent that Defendants object to the State's definition of the same term, as the Parties' definitions are virtually identical.  The State will read and respond to the Defendants' requests with the understanding that the term "identify" means, in the context of an individual, an individual's name, and where the context reasonably requires, his or her employer, and in the context of a document or ESI, a Bates number or other available information necessary to isolate the document or ESI.

- "Including" or "Includes:" The State has no additional objection.

- "Macondo Well:" The State has no additional objection.

- "<u>MC252 #1 Macondo Well</u>:" The State has no additional objection.

- "<u>Moratorium</u>:"  The State has no additional objection.

- "<u>National Recession</u>" or "<u>Great Recession</u>:"  The State has no additional objection.

- "<u>National Response Center</u>:"  The State has no additional objection.

- "<u>Oil Materials</u>:" The State has no additional objection.

- "<u>Oiling Category</u>" or "<u>Oiling Degree Category</u>:" The State has no further objection.

- "<u>Oil Spill</u>" and *<u>Deepwater Horizon</u> Oil Spill*:"  With respect to Defendants' definition of "Oil Spill," the State understands the Defendants' usage of the term "oil" to include all materials included within OPA's definition of "oil."  *See* 33 U.S.C. §2701(23).  The State objects to Defendants' definition of "Oil Spill" to the extent that Defendants define "oil" to be any narrower than the definition given that term by OPA.

- "<u>Oil Spill Response</u>:" The State objects to Defendants' definition of "Oil Spill Response" as the phrase "any effort to clean up" is vague and ambiguous.  The State will read and respond to this term as including actions taken within the State of Alabama to respond to, prevent, or otherwise mitigate the effects of the *Deepwater Horizon* incident or spill.

- "<u>OPA</u>:" The State has no additional objection.

- "<u>Person</u>:" The State has no additional objection.

- "<u>Property</u>" or "<u>Properties</u>:" The State has no additional objection.

- "<u>Relating to</u>:" The State objects to the Defendants' definition of "Relating to," to the same extent that Defendants object to the State's definition of the same term, as the Parties' definitions are virtually identical.  The State will read and respond to the Defendants' requests with the understanding that "relating to" has its plain and ordinary meaning in standard English usage.

- "<u>Response Activities</u>:"  The State has no additional objection.

- "<u>Revenue</u>:" The State objects to the Defendants' definition of "Revenue" as the definition is overbroad, unduly burdensome, and seeks information on all revenue sources, regardless of whether the revenue sources have any connection to the spill.  The State will read and respond to this term as including those revenue sources that reasonably have a connection to the State's claims.

- "<u>SCAT Segment</u>:"  The State has no additional objection.

- "<u>Shoreline Cleanup Completion Plan</u>" or "<u>SCCP</u>:"  The State has no additional objection.

- "<u>Shoreline Cleanup Assessment Technique</u>" or "<u>SCAT</u>:"  The State has no additional objection.

- "<u>State</u>" or "<u>Alabama</u>:"  The State objects to Defendants' definition of "State" or "Alabama" as overly broad to the extent that it includes State departments, agencies, and personnel that were excluded from the scope of discovery in the Court's July 16, 2014.  MDL 2179 Doc. 13149 at 1-3.  The State will interpret these terms consistently with the Court's order.

- "<u>Tourism-related activity</u>:" The State has no further objection.

- "<u>Tourism-related expenditure</u>:"  The State objects to Defendants' definition of "Tourism-related expenditure," specifically the phrase "as well as expenses that are paid for or reimbursed by others," as the phrase is vague and ambiguous.  The State will read and respond to this term without reference to the above-referenced phase.

- "<u>Unified Command</u>:"  The State has no further objection.

- "<u>United States</u>:"  The State objects to Defendants' definition of "United States" as overly broad.  The State will read and respond to Defendants' requests by disclosing responsive

information that is known by the State to be from or to the United States or a known entity thereof.

- "You," "your," and "yours:" This definition is objectionable to the extent that it includes State departments, agencies, and personnel that were excluded from the scope of discovery in the Court's July 16, 2014.  MDL 2179 Doc. 13149 at 1-3.  The State will interpret these terms consistently with the Court's order.

23.   These responses are made without waiving, in any manner, the State's right to object to the use of any information or documents provided in response to these requests at any trial or evidentiary hearing on grounds of privilege, relevance, materiality, authenticity, hearsay, pretrial orders or rulings, or any other ground permitted by any applicable law or rule.

24.   To the extent that the State states it will produce documents in response to the requests, the State will produce such documents on a rolling basis with such reasonable speed as the State can locate and process them, without sacrificing a meaningful review for responsiveness, privilege, and confidentiality, as this is the only feasible and physically possible method given the scope and breadth of the requests.

25.   Neither the State's agreement to produce documents, if any, nor the State's agreement to search for documents responsive to a request shall imply that responsive documents exist, or constitute the State's admission or acknowledgment as to the relevance or admissibility of any documents or as to the truth of any allegation or assumption contained in the requests.

26.   To the extent that the  State responds that it will search for and produce responsive documents, the State is only undertaking to make a good-faith effort to conduct a reasonable search of non-privileged documents of the files and records of those individuals likely to have meaningful information responsive to a request as maintained in the ordinary course of

business, and/or to apply a reasonable set of search terms, including those the parties have already agreed upon, to available collections of ESI as maintained in the ordinary course of business reasonably likely to yield a meaningful amount of information responsive to a request. The State is not offering or promising to search for and produce every document or piece of information that may exist in the possession, custody, or control of any of the State's employees and agents where any such items are not included within the results of a reasonable search as described above.

27.     Where documents are identified, the State incorporates into its response all similar documents, which are equally available to the Defendants via electronic searches of the State's production.

28.     The State's decision, now or in the future, to provide information or documents notwithstanding the objectionable nature of any of the definitions or instructions, or the document requests themselves, should not be construed as: (a) a stipulation that the material is relevant or admissible, (b) a waiver of State's general objections or the objections asserted in response to specific requests, or (c) an agreement that requests for similar information will be treated in a similar manner.

29.     The State reserves the right to modify, amend, or supplement its responses, which are made based on the current status of its knowledge, understanding, belief, and searches for documents. The investigation of facts and information relating to these requests is continuing, and, therefore, these responses are not intended as an admission or a representation that additional information or documents do not exist.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Counsel for the Defendants by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice of electronic service in accordance with the procedures established in MDL 2179, on November 12, 2014.


/s/ Corey L. Maze                    .
COREY L. MAZE
*Special Deputy AG, State of Alabama*

**VERIFICATION**

On behalf of the Attorney General of the State of Alabama, *see* FRCP 33(b)(1)(B), I, Corey L. Maze, declare that, based on the information presently available to the Attorney General, the foregoing answers are true and correct.

Date:  November 12, 2014

/s/ Corey L. Maze                        .
COREY L. MAZE
*Special Deputy AG, State of Alabama*