# Exhibit 9

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

300 North LaSalle
Chicago, Illinois  60654

Paul Collier
To Call Writer Directly:
(312) 862-2471
paul.collier@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

September 2, 2014

**Via E-mail**

Corey L. Maze, Esq.
Special Deputy Attorney General
Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130
cmaze@ago.state.al.us

> Re:   MDL2179 Alabama OPA Economic Claim:
>        Alabama's discovery responses and document production

Dear Corey:

I write on behalf of Defendant BP Exploration & Production Inc. ("BPXP") regarding issues with the State of Alabama's objections and responses to Defendants' first set of discovery requests and first Rule 30(b)(6) notice, and to inquire about the State of Alabama's document production.  The issues outlined in this letter are those that BPXP has been able to identify to date.  BPXP continues to evaluate the State's responses and reserves the right to identify additional issues in Alabama's responses as discovery continues.

To the extent that Alabama disputes the issues that BPXP raises in this letter, please provide us your availability for a meet-and-confer to discuss these issues on Friday, September 6, 2014.  We look forward to an expeditious resolution of these issues.

## I.   Alabama's Responses to Defendant's First Set of Discovery Requests

### A.   Improper Objections

Alabama asserts several objections in its discovery responses that are not a valid basis for withholding information and/or documents that are otherwise responsive to Defendants' First Set of Requests for Production to the State of Alabama or Defendants' First Set of Interrogatories to the State of Alabama (collectively, "Defendants' Discovery Requests").  BPXP requests that Alabama confirm that it is not withholding any information or documents that are responsive to Defendants' Discovery Requests based on the following objections.

Beijing    Hong Kong    Houston    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai    Washington, D.C.

# KIRKLAND & ELLIS LLP

Corey Maze, Esq.
September 2, 2014
Page 2

**(i)      Objection to Producing Information or Documents Regarding Property for Which Alabama Is Not Claiming Damages.**

Defendants' Interrogatory Nos. 5 and 6 and Requests for Production Nos. 10, 11, 13, and 19 seek information about properties in Baldwin and Mobile counties, as well as the surrounding counties of Washington, Clarke, Monroe, Conecuh, Escambia, Covington, Geneva, and Houston. Alabama objects to Defendants' Interrogatory Nos. 5 and 6 as "overbroad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence at trial, as [they] seek[] property information on properties upon which the State is not making a claim." Alabama also objects to Defendants' Requests for Production No. 10, 11, 13, and 19 stating that it "makes no claims for properties in Washington, Clarke, Monroe, Conecuh, Escambia, Covington, Geneva, and Houston Counties; thus, documents concerning properties in these counties are not reasonably calculated to lead to the discovery of admissible evidence and production of said documents would be disproportionately burdensome on the State."  But the information Alabama objects to providing—whether for property in Baldwin and Mobile counties or the surrounding counties identified in Defendants' Discovery Requests—is relevant to Alabama's claims in this litigation at least because the requested information will provide a potential benchmark for evaluating Alabama's contention that its claimed property damages were caused by the *Deepwater Horizon* oil spill.

The specific parcels of property in Baldwin and Mobile counties that Alabama claims lost value cannot be fully analyzed in isolation; rather property values, property value trends, and the methods used to assess property values in surrounding areas may be relevant to Alabama's claim that the oil spill was the cause of any asserted property value losses in Baldwin and Mobile counties.  *See Swarthmore Radiation Oncology, Inc. v. Lapes*, No. CIV. A. 92-3055, 1993 WL 517734, at *2 (E.D. Pa. Dec. 1, 1993) ("Only by comparing the defendants' treatment of other physicians' applications . . . can the plaintiffs' allegation be proved or disproved.  Although [defendant] claims to have already provided sufficient information . . . without a baseline for comparison, this information is not probative.  Thus the information remains relevant."); *cf. Cohalan v. Genie Indus., Inc.*, 276 F.R.D. 161, 164, 167 (S.D.N.Y. 2011) (granting motion to compel discovery into products similar to those at issue in products liability suit, noting that "different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation") (citation omitted). Moreover, Defendants have not requested information about property across the entire State, but have limited their discovery requests to those counties for which Alabama claims losses and the surrounding counties.  Although property values across the entire State could be relevant, Defendants have tailored the scope of their discovery requests to only a few of the potentially more relevant areas.  Thus, Defendants' Interrogatory Nos. 5 and 6 and Requests for Production Nos. 10, 11, 13, and 19 seek information that is relevant to this litigation.

## KIRKLAND & ELLIS LLP

Corey Maze, Esq.
September 2, 2014
Page 3

### (ii)      Objection to Temporal Scope.

Alabama's General Objection No. 3 objects to the temporal scope of Defendants' Requests for Production as "inconsistent with the time frame imposed by the Court in its July 29 and July 31, 2014 orders regarding the time period to be applied to Defendants' corresponding search terms." This General Objection, however, misconstrues these orders and contradicts Alabama's prior representations to the Court regarding the information and documents that it has already agreed to produce. As acknowledged by Alabama's own objection, the Court's July 29 and 31 orders, Rec. Docs. 13210 and 13230, only address the time frame for search terms run against custodial files. These orders do not impose general temporal limits on all of Defendants' Discovery Requests. Moreover, in its July 25, 2014 submission to the Court, Alabama represented to the Court that it had already agreed to produce:

- "Economic, budget, tax stream and tourism projections, reports, studies and forecasts that discuss the viability, performance, growth and/or results from 2000 – present (14 years).

- Tax stream and budget data.

- State revenue abstracts, showing all monthly tax streams from Fiscal Year 1994 to present, as produced to the Defendants.

- A voluminous record of publically available data, with cites and keys to the data, as provided to the Defendants as part of the State's Initial Disclosures."

After laying out what it had agreed to produce, Alabama's July 25 submission then represented to the Court that the only issue that the Court need address was "whether the Defendants *also* need/are entitled to a search of communications and correspondences between January 1, 2005 and April 20, 2010" (emphasis in original). Moreover, regarding the "tax stream and budget data," in your July 24, 2014 email, you explained that "[t]he State will either (i) make its various budget, tax, etc. databases available to Defendants, thereby allowing you to search for relevant data over the time period of your choosing, or (ii) pull the data from those databases based upon your requested time periods." Thus, Alabama itself narrowed the temporal scope issue for the Court to decide, and cannot now contend that the Court made a broader ruling that limits Alabama's obligations.

BPXP requests confirmation that Alabama will produce: (i) all non-privileged documents from the custodial files of the witnesses identified in The State of Alabama's Second Amended Rule 26(a) Disclosures dating back to January 1, 2008; (ii) all economic, budget, tax stream and tourism projections, reports, studies and forecasts dating back to January 1, 2000; and (iii) all

## KIRKLAND & ELLIS LLP

Corey Maze, Esq.
September 2, 2014
Page 4


State revenue abstracts dating back to Fiscal Year 1994.  BPXP further requests confirmation that Alabama will either make available its complete tax stream and budget databases or produce any data from these databases that is responsive to Defendants' document requests dating as far back as the databases contain data or at least back to 1980.

### (iii)     Objection to Producing County-Level Data.

Alabama's blanket objection "to the production of county-level data" is improper because it broadly alleges that Alabama lacks possession, custody, or control over revenue information, documents, or data of Alabama's counties and municipalities.  To the extent that Alabama has possession, custody or control of county-level data, Alabama is required to produce it.  We therefore request confirmation that Alabama is conducting a reasonable search for such information and is not withholding such information because of this objection.

Furthermore, BPXP has reason to believe that Alabama has county-level data, at least through the Alabama Department of Revenue.  By statute, Alabama's Department of Revenue is granted broad power and control over the State's counties.  For example, under § 40-2-11 of the Alabama Code, the Department of Revenue "shall have the power and authority . . . [t]o have and exercise general and complete supervision and control . . . of the collection of all property, privilege, license, excise, intangible, franchise, or other taxes for the state and counties . . . and of the several county tax assessors and county tax collectors, probate judges, and each and every state and county official, board, or commission charged with any duty in the enforcement of tax laws."  *See Sims v. White*, 522 So. 2d 239, 241 (Ala. 1988) (noting "the Department of Revenue's general and complete control over the valuation, assessment, and collection of ad valorem taxes in Alabama" and reaching "the inescapable conclusion that ad valorem taxes in Alabama are administered by the Department of Revenue").  Additionally, the State compiles and evaluates county-level revenue data, which it is obligated to produce, as evidenced by the Alabama Department of Revenue's annual reports, which provide a per county summary of the State's tax collections.

In sum, Alabama has an obligation to produce any county-level revenue collection information, documents, or data within its possession, custody or control responsive to Defendants' Discovery Requests.

### (iv)     Objection to Defendants' Definition Of "Revenue."

Alabama objects to Defendants' definition of "Revenue" as "seek[ing] information on all revenue sources, regardless of whether the revenue sources have any connection to the spill." Alabama then states that it "will read and respond to this term as including those revenue sources that reasonably have a connection to the State's claims."  As an initial matter, Alabama's revised

# KIRKLAND & ELLIS LLP

Corey Maze, Esq.
September 2, 2014
Page 5

"Revenue" definition is ambiguous and does not reasonably apprise BPXP of what revenue sources Alabama contends to "reasonably have a connection to the State's claims." BPXP requests that Alabama use BPXP's definition or that it specifically inform BPXP from which revenue sources it will produce discoverable information.

Moreover, BPXP is concerned that Alabama is limiting its discovery obligations to only those revenue sources that it deems to "reasonably have a connection to the State's claims." All of Alabama's revenue sources may potentially be relevant to its claims in this litigation, at least because Defendants are entitled to investigate whether any claimed losses in some revenue sources were offset by gains in other sources. *See Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) ("Courts have traditionally construed 'relevance' broadly: information is relevant if it 'encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"). At this stage, however, without an understanding as to the revenue sources that Alabama is attempting to exclude from its discovery obligations, we are unable to evaluate whether Alabama's efforts to limit discovery are improper and request further information.

**(v)   Objection to Providing Information in Response to an Interrogatory That Is Covered By Requests for Production.**

Alabama improperly objects to Interrogatory Nos. 1, 2, 4, 6, 7, 10, and 12 on the grounds that these interrogatories "seek[] the content of documents that will be produced pursuant to Defendants' Requests for Production." As an initial matter, Alabama offers no legal basis for this objection, and we are not aware of any Federal Rule of Civil Procedure, order from the MDL 2179 court, or any other operative discovery rule that prevents Defendants from serving interrogatories and document requests that address the same general subject-matter, as Alabama itself has done.

To the extent that Alabama is objecting on the grounds that these interrogatories are cumulative or redundant of Defendants' Requests for Production, this objection lacks legal or factual merit. Interrogatory Nos. 1, 2, 4, 6, 7, 10, and 12 do not merely seek the contents of documents that are requested in Defendants' Requests for Production, rather they are unique discovery requests that seek information to which Defendants are entitled. Additionally, to the extent that Alabama's objection is an attempt to respond to Interrogatory Nos. 1, 2, 4, 6, 7, 10, and 12 under Federal Rule of Civil Procedure 33(d), Alabama has neither identified that it is relying on Rule 33(d) nor has it complied with its requirements by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."

## KIRKLAND & ELLIS LLP

Corey Maze, Esq.
September 2, 2014
Page 6

### B.       Issues with Alabama's Specific Discovery Responses

While BPXP's review of Alabama's discovery responses is continuing, BPXP identifies the following specific issues, reserving the ability to raise other issues as discovery continues.

#### (i)       Interrogatory No. 4

Defendants' Interrogatory No. 4 requests that the State "[i]dentify and describe all analyses, studies, assessments, or evaluations regarding the nature, extent, or degree of economic or financial impact, actual or anticipated, of the *Deepwater Horizon* Incident and/or Oil Spill on the State of Alabama, including any financial impact on State public services."  Alabama objects to this interrogatory "to the extent this Request seeks information that is neither relevant, reliable, nor reasonably calculated to lead to the discovery of admissible evidence at trial."  This objection lacks legal or factual support for several reasons.

First, Alabama's objection on the grounds that Defendants' Interrogatory No. 4 seeks irrelevant information or is not reasonably calculated to lead to the discovery of admissible evidence is erroneous.  Analyses, studies, assessments, or evaluations regarding financial impact, of the *Deepwater Horizon* oil spill, especially those that Alabama itself has conducted or those that it has evaluated, reviewed or used in assessing the state economy, are inherently relevant to the State's claims that it lost revenue due to the oil spill.  If Alabama is withholding any information based on this objection, we request further explanation as to how analyses, studies or reports in Alabama's possession regarding the financial impact of the oil spill are not subject to discovery.

Second, the State's objection on the grounds that this interrogatory seeks information that is not "reliable" is not a valid or legally recognized objection.  The discoverability of information is not dependent on its reliability, much less Alabama's unilateral assessment of its reliability, and Alabama offers no support for this objection.  To the extent that Alabama persists with this objection, we request further explanation as to support that Alabama has for it.

#### (ii)      Interrogatory No. 5

Defendants' Interrogatory No. 5 requests, in part, that "[f]or each parcel of State-owned real property in Baldwin, Mobile, Washington, Clarke, Monroe, Conecuh, Escambia, Covington, Geneva, and Houston counties" that the State provide "any restrictions on the use or sale of such parcel in each year from 2000 through the present."  The State, however, has not provided any such information and has not provided any objection, much less a valid objection, for withholding this information.  As addressed above, the State's objection to providing information regarding property for which it is not making a claim is improper, and BPXP is entitled to a

# KIRKLAND & ELLIS LLP

Corey Maze, Esq.
September 2, 2014
Page 7

complete response as to the full scope of Interrogatory No. 5 as written.  Additionally, the State has no reasonable basis—and offers none—for not providing the requested information concerning restrictions on the sale or use of the parcels of property for which it is making a claim.

BPXP requests that Alabama supplement its response to Interrogatory No. 5 to provide information regarding the state-owned properties within the identified counties, as well as "any restrictions on the use or sale" of all parcels of property requested.

### (iii)     Interrogatory No. 7

Defendants' Interrogatory No. 7 requests the nature of Alabama's "proprietary interest" for each piece or parcel of property that Alabama claims has suffered or will suffer physical injury as a result of the *Deepwater Horizon* oil spill, as well as "[h]ow [Alabama's] alleged damages were or will be realized[.]"  After objecting on the grounds that this interrogatory, in part, calls for expert analysis and legal conclusions, Alabama then states that it holds legal title to certain property, and then provides a "non-exhaustive list of additional proprietary interests in coastal-area lands for which the State may or may not possess legal title[.]"  This vague non-exhaustive list fails to sufficiently address the first part of the Defendants' interrogatory. Moreover, Alabama provides no response whatsoever to the second part of this interrogatory, which asks how Alabama's alleged damages were or will be realized (*i.e.* the property was sold at a loss, money was spent to repair the property, etc.).  This does not call for any expert computation of damages, or even ask what the damages were, but seeks only factual bases for what caused Alabama's alleged damages.  BPXP requests that Alabama provide a full response to this interrogatory.

### (iv)     Interrogatory No. 11

Alabama responds to Defendants' Interrogatory No. 11 stating in part that it "can neither describe nor identify *all* revenue received by the State as a result of compensation payments made by BPXP to third-party individuals and businesses, if any" (emphasis added).  But Alabama does not disclaim the ability to describe or identify *any* revenue received by the State as a result of such compensation payments, and to the extent that it can, Alabama has an obligation to identify and describe such revenue.  *See Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616-17 (5th Cir. 1977) (noting that "[d]iscovery by interrogatory requires candor in responding" and "[a] partial answer by a party reserving an undisclosed objection to answering fully is not candid").  Therefore, please either clarify that the State cannot identify or describe any revenue responsive to Defendants' Interrogatory No. 11 or supplement your response to identify and describe any revenue responsive to Interrogatory No. 11 that the State can identify and describe.

## KIRKLAND & ELLIS LLP

Corey Maze, Esq.
September 2, 2014
Page 8

### (v)    Interrogatory No. 14

Alabama objects to Defendants' Interrogatory No. 14 stating in part that it "seeks information that is irrelevant and/or inadmissible and is not reasonably calculated to lead to the discovery of admissible evidence," including an objection that Interrogatory No. 14 is irrelevant because "Defendants have not filed a claim/counter-claim alleging that the State has improperly expended or disbursed any funds, payments, grants, contributions, or donations received from Defendant BP."   But Defendants need not file a counter-claim alleging these funds were improperly expended or requesting that these funds be refunded in order to obtain the requested information.   Alabama's use or misuse of these funds is relevant to its claims in this case and thus Defendants may seek discovery regarding the use of these funds.   Moreover, in its July 29, 2014 order, Rec. Doc. 13210, the Court overruled Alabama's objection to providing discovery regarding an accounting of funds provided by BPXP.   Accordingly, please confirm when Alabama intends to supplement its response to Interrogatory No. 14 and that Alabama is not withholding any responsive information or documents based on these objections.

### (vi)    Interrogatory No. 15

Alabama objects to Defendants' Interrogatory No. 15, but nonetheless responds that it "is in the process of gathering the requested (non-NRD) payments."   Therefore, please confirm when Alabama intends to supplement its response to Interrogatory No. 15.

### (vii)    Request for Production No. 22

Alabama responds to Defendants' Request for Production No. 22 stating in part that it will supplement its response "[t]o the extent the State possesses information solely related to its efforts to promote tourism, seafood, fishing, recreation, or other economic activity in the Gulf Coast region."   This response is vague and ambiguous as to the documents Alabama will produce.   Moreover, to the extent that Alabama is agreeing to produce only documents that relate to "its efforts to promote tourism, seafood, fishing, recreation, or other economic activity in the Gulf Coast region" and do not relate to any other topic or subject-matter, then Alabama is improperly narrowing the scope of Defendants' request.   Accordingly, please confirm that Alabama is not seeking to limit its production of documents responsive to Request for Production No. 22 to documents that only relate to "its efforts to promote tourism, seafood, fishing, recreation, or other economic activity in the Gulf Coast region" and do not relate to any other topic or subject-matter.   Please also confirm that Alabama's reasonable search for and production of responsive documents will include documents relating to its use of and/or benefit from expenditures and outreach efforts undertaken by Defendants and/or the Federal Government.

## KIRKLAND & ELLIS LLP

Corey Maze, Esq.
September 2, 2014
Page 9

### C.      Transcription Errors with Defendants' Discovery Requests.

While not a major concern, we note that Alabama's responses contain typographical errors where they have transcribed Defendants' discovery requests incorrectly.  For example, for Interrogatory No. 15, Alabama has incorrectly transcribed the parenthetical reference "(such as the United States)" as "(such as the Defendants)."  For Request for Production No. 9, Alabama has incorrectly transcribed "each piece or parcel of Property" as "each piece of parcel of Property."  In Request for Production No. 21, Alabama has incorrectly transcribed "the United States government" as "the Defendants government."  Additionally, in its transcription of Defendants' Interrogatory Nos. 1-4, 6, 9, 10, and 12-15 and Requests for Production Nos. 1-6, 20-23, and 25-28, Alabama has omitted "the" from Defendants' references to "the State."

It is unclear whether Alabama is intentionally modifying these requests to withhold information or whether these are solely transcription errors.  We thus request confirmation that these transcription errors have not substantively affected Alabama's responses.  Additionally, because Alabama's discovery responses do not accurately reflect Defendants' discovery requests as served, BPXP requests that Alabama serve a version of its discovery responses that corrects these transcription errors to the Defendants' discovery requests.

### II.      Alabama's Response to Defendants' Rule 30(b)(6) Notice

BPXP received Alabama's response to Defendants' Rule 30(b)(6) last Thursday.  While we are continuing to review Alabama's responses, we wanted to note two preliminary issues that raise an immediate concern.  BPXP continues to evaluate Alabama's responses and objections and reserves the right to identify additional issues as discovery continues.

### A.      Alabama's Refusal to Produce a Witness for Topic 20.

Alabama has refused to produce a witness to testify on Topic 20 (relating to Alabama's knowledge or involvement with any analyses regarding the economic impact of the *Deepwater Horizon* oil spill on Alabama and Alabama's methods for quantifying its alleged damages), stating that "at this time, Alabama will not designate a witness to testify regarding Area of Inquiry #20 because it seeks information and testimony that is either (a) just as available to Defendants (*i.e.* public non-State generated reports) or (b) the subject of expert testimony."  If Alabama intended to refuse to produce a witness on these grounds, Alabama should have raised it during our previous negotiations regarding 30(b)(6) topics and before informing the Court that we had reached agreement on the parties' 30(b)(6) topics.  During our previous discussions regarding 30(b)(6) topics, you agreed on behalf of Alabama with my statement that "the parties have agreed that they will raise and negotiate at this time any fundamental objections that they have with respect to the proposed Rule 30(b)(6) topics that would limit their ability to identify

# KIRKLAND & ELLIS LLP

Corey Maze, Esq.
September 2, 2014
Page 10

and produce a witness for such topics" (*See* 07/22/2014 P. Collier Email to C. Maze *and* 07/22/2014 C. Maze Response.)  During the negotiation process, Alabama never raised an issue with Topic No. 20, and certainly never indicated that it would refuse to produce a witness.

Even putting that aside, Alabama's objections—that information sought by this topic is equally available to Defendants and is the subject of expert testimony—lack merit.  First, this topic does not ask Alabama for publicly available information, it asks about Alabama's knowledge of and involvement with economic analyses, reports and studies regarding the effects of the *Deepwater Horizon* oil spill, which may or may not be public, outside the litigation.[1] Second, because this topic seeks Alabama's knowledge of analyses, reports and studies outside the litigation, it does not seek expert discovery.  To the contrary, Topic 20 seeks factual testimony on which Alabama is obligated to produce a witness.

### B.     Alabama's Offer to "Supplement" Several 30(b)(6) Topics.

When responding to several 30(b)(6) topics, including 5-8, 10-14, 17-19, 21, 26, and 27 Alabama states that because the area of inquiry "necessitates expert testimony and conclusions, the State will supplement pursuant to the Court's Scheduling Order."  BPXP is unclear as to what this means, and while Alabama offers to provide a witness for some of these topics, for others, including numbers 8, 10-14, 17, 18, and 21, it hedges by stating "[t]o the extent even possible, the State will produce a witness(es) to testify on factual matters associated with Area of Inquiry."  BPXP is thus unable to determine, first, what testimony Alabama is planning to provide in light of this language; second, how Alabama plans to supplement a Rule 30(b)(6) deposition; and third, whether Alabama is agreeing to provide any witness for topics 8, 10-14, 17, 18, and 21.  Alabama's language in this regard lacks sufficient clarity as to what Alabama is agreeing to do and fails to sufficiently inform BPXP as to Alabama's position regarding these topics.  We request further clarify from Alabama as to its position with respect to these topics.

### III.     Document Production

On August 22, 2014, BPXP produced over 229,000 pages of documents in this litigation, and last Friday, BPXP produced an additional 23,000 pages of documents.  BPXP will continue to produce its documents on a rolling production over the next few weeks.

---

[1]     Incidentally, BP notes that Alabama presented many 30(b)(6) topics to BP that ask about information that is equally available to Alabama—namely all topics regarding oiling on Alabama's coastline.  Certainly, Alabama has information regarding oiling of its own coastline because it was involved in the oil cleanup and removal process.

## KIRKLAND & ELLIS LLP

Corey Maze, Esq.
September 2, 2014
Page 11


Alabama, however, has not produced any documents since it produced 717 documents on March 28, 2014.  Please advise when Alabama will begin its production of documents, including those responsive to Defendants' document requests served on July 14, and whether it will be producing those documents on a rolling basis before the October 3rd deadline.


Sincerely,

*Paul D. Collier*

Paul D. Collier