# EXHIBIT 7

## ISLAND CRAB CORPORATION'S RESPONSE TO BP'S INITIAL PROPOSAL AND ISLAND CRAB CORPORATION'S FINAL PROPOSAL

Claimant ID 100168174
Claim ID 141404

### Introduction

The Claimant, Island Crab Corporation (the "Claimant"), has raised three grounds for its appeal. However, all three issues revolve around and will be determined by one central issue, and that is:

> Does the Settlement Agreement allow "Negative Compensation" resulting from the Step 1 calculation to be deducted from Compensation calculated in Step 2 to totally offset Claimant's Total Compensation Amount, as the Administrator has done in this case?

If the answer is yes, this primary commercial processor and wholesaler of fresh seafood, principally blue crab, stone crab, clams, and oysters caught in the specified waters of the Gulf of Mexico, is entitled to absolutely no compensation as a result of the BP oil spill -- an incongruous result. If the answer is no, the Claimant is entitled to a Compensation Amount of $44,178.12, with a Risk Transfer Premium of 3.00, for a Total Compensation Amount of $176,712.48, along with its requested Accounting Support Reimbursement. For reasons which follow, the Claimant has a valid claim for compensation and the Claim Administrator's Denial of the Claim should be reversed.

### Explanation of Claimant's Position

**A.   The Plain Language of the Settlement Agreement Does Not Allow "Negative Compensation" Calculated in Step 1 to Offset Step 2 Compensation.**

The central issue on appeal is a pure issue of contract interpretation. When the language of an agreement is clear and unambiguous, interpretation of the contract presents a question of

law to be decided by the court. *Chembulk Trading LLC v. Chemex Ltd.*, 393 F. 3d 550, 554 (5th Cir. 2004). Pursuant to Section 26.1 of the Settlement Agreement, the contract in this case is to be interpreted in accordance with General Maritime Law. "[G]eneral federal maritime law has adopted the general rules of contract interpretation and construction." *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1356 (S.D. Fla. 2007), citing *United States ex rel E. Gulf, Inc. v. Metzger Towing, Inc.* 910 F. 2d 775, 779 (11th Cir. 1990). *In Magee v. Ensco Offshore Co.*, 2013 U.S. Dist. LEXIS 76009 * 7 (E. D. La. 2013), Judge Barbier succinctly summarized the rules of contract interpretation under general maritime law as follows:

> When interpreting a contract under general maritime law, the "court may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous." *Corbitt v. Diamond M. Drilling Co.*, 654 F. 2d 329, 332-33 (5th Cir. 1981) (citing *Hicks v. Ocean Drilling and Exploration Co.*, 512 F. 2d 817, 825 (5th Cir. 1975)). The "basic principle of contract interpretation in [maritime] law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." *Chembulk Trading LLC v. Chemex Ltd.*, 393 F. 3d 550, 555 (5th Cir. 2004) (citing *Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F. 3d 349, 354 (5th Cir. 2004)). Words in a contract are given their plain meaning as understood by a reasonable person. *Sander v. Alexander Richardson Inv.'s*, 334 F. 3d 712, 716 (8th Cir. 2003).

Applying the plain and ordinary meaning of the words used in the Settlement Agreement compels a result in Claimant's favor in this case.

As more fully explained in Claimant's counsel's letter of September 25, 2013 attached to the Request for Appeal and incorporated herein by reference, the Compensation Framework for Business Economic Loss claims is divided into two steps. (See Settlement Agreement, Exhibit 4C at page 1). Step 1 compensates claimants for an actual reduction in profit, if any, between the 2010 Compensation Period selected by the claimant and the comparable months of the Benchmark Period. Step 2 compensates claimants for incremental profits the claimant might

have expected to generate in the absence of the spill based on the claimant's actual growth in revenue in January - April 2010 as compared to the same months in the claimant-selected Benchmark Period. (Id.).

Thus, the two-step process is designed to **compensate** claimants for two different things: Step 1 is designed to **compensate** claimants for the actual loss in profits it suffered in the post spill months of 2010, if any. If a claimant can show an increase in revenue during January - April, 2010 as compared to the comparable months of the Benchmark, Step 2 is designed to **compensate** claimants for the presumed additional growth in profits it might have been expected to generate but for the spill. Stated differently, Step 1 compensates for an actual **loss of profits**; Step 2 compensates for the **loss of growth in profits** the claimant was prevented from achieving as a presumed result of the spill.

BP and the Claimant agree that under the Settlement Agreement, Total Compensation is calculated as follows:

> (1) **Add** Step 1 **Compensation** to Step 2 **Compensation**.
>
> (2) Apply the agreed-upon Risk Transfer Premium (RTP).
>
> (3) Where applicable, subtract from the sum of Step 1 **Compensation** and Step 2 **Compensation** any payments received by the claimant from BP or the GCCF pursuant to BP's OPA Claims Process, as well as an VoO Settlement payment offset and VoO Earned Income Offset.

(Settlement Agreement, Exhibit 4C at 5; emphasis added). BP and the Claimant further agree that the Risk Transfer Premium applicable to this Claimant is 3.00, and that step (3) of the calculation above is not applicable. Thus, this appeal boils down to a simple question: What does the word "**Compensation**" mean in the context of the Settlement Agreement?

3

The plain and ordinary meaning of the word "compensation" in this context is the "**payment** of damages...that a court orders to be done by a person who has caused injury to another." Black's Law Dictionary (8th Ed.) (emphasis added). In layman's terms, compensation means "**payment, remuneration.**" Merriam-Webster Dictionary (Current Online Ed.) (emphasis added). Compensation cannot logically be interpreted as a deduction or a reduction of payment. The very concept of "Negative Compensation" makes no sense. Yet, this is precisely how the Administrator has interpreted and applied Exhibit 4C to the Settlement Agreement in this instance.

The term "Compensation" is not defined in the Settlement Agreement. Thus, the plain and ordinary meaning of the word must control. Moreover, the Definitions set forth in the Settlement Agreement provide some insight which weighs in favor of Claimant's interpretation. Section 38.35 of the Settlement Agreement states: "Compensation Amount shall mean that amount **awarded** to a Claimant prior to the addition of any RTP." (Emphasis added). An **award** of compensation necessarily contemplates the payment of money, just as Black's and Merriam-Webster define the word "compensation" in their dictionaries. A negative amount cannot be **awarded** to a Claimant. Such an interpretation would make absolutely no sense. Therefore, the correct interpretation of the Settlement Agreement, and the only interpretation that makes sense in this context, is that the **Compensation awarded** to a Claimant in Step 1, if any, is added to the **Compensation awarded** to the Claimant in Step 2, if any, to determine the combined Compensation Amount. The Risk Transfer Premium is then applied to determine the Total Compensation Amount.

This is why is the Settlement Agreement uses the phrase "Compensates claimants" when describing both Step 1 and Step 2 calculations. The Settlement Agreement states: "**Step 1 -**

4

**Compensates claimants** for any reduction in profit.... **Step 2 - Compensates claimants** for incremental profits or losses the claimant might have been expected to generate in the absence of the Spill...." (Settlement Agreement, Exhibit 4C at page 1; emphasis added). The Settlement Agreement does not say that the Administrator is to add the mathematical result of the Step 1 Calculation, whether positive or negative, to the mathematical result of the Step 2 calculation, whether positive or negative. The Settlement Agreement simply says: "**Add Step 1 Compensation to Step 2 Compensation.**" (Id. at page 5; emphasis added).

So what is the Claimant's Step 1 Compensation in this case? The answer is zero. There is no Compensation awarded to this particular Claimant in Step 1 because there was no actual reduction in its profits in the 2010 Compensation Period as compared to Benchmark. However, because this Claimant experienced a growth in sales in the pre-spill months of 2010, it is entitled to Step 2 compensation to compensate for additional incremental profits the Claimant might have been expected to generate in the absence of the spill.

Accordingly, as more fully explained and calculated in Claimant Counsel's letter of September 25, 2013, the Claimant's Total Compensation should have been calculated as follows: (1) Add Step 1 Compensation of zero to Step 2 Compensation of $44,778.12; (2) Apply the agreed-upon Risk Transfer Premium ("RTP") of 3.00; (3) to achieve the Total Compensation Amount of $176,172.48.

**B.      Policy-372 Is Not Binding on the Appeal Panelist.**

In its Memorandum in Support of its Initial Proposal, BP applauds the Administrator's attempt to pull himself up by his bootstraps by applying the Claims Administrator's Approved Policy-372, V1 or V2. The Claimant acknowledges that Policy-372 states: "The **results** of Step 1, **whether positive or negative**, should be added to **results** of Step 2." (Emphasis added).

5

However, that is not what the Settlement Agreement says. The Settlement Agreement does not say that the results of Step 1, whether positive or negative, shall be added to Step 2. The Settlement Agreement simply says that Step 1 **Compensation** should be added to Step 2 **Compensation**. By substituting the word "results" for the word "compensation," and by adding the phrase "whether positive or negative" to the equation, the Administrator is not giving effect to words used in the Agreement and is adding material terms that do not appear in the Agreement. The Claims Administrator has no authority to re-write the Settlement Agreement in this fashion. Policy-372 merely reflects the Administrator's erroneous interpretation of the Settlement Agreement. As a "Claims Administrator Decision," Policy-372 is "**not binding on Appeal Panelists.**" (Deepwater Horizon Claims Center Policy Keeper Portal 425290-5/7/13 attached hereto as Exhibit 1; emphasis added). Rather, "[t]he Standard of Review by the Appeal Panelists or Appeal Panel shall be a de novo review of the complete record of that Claimant in the Settlement Program to enforce compliance with this Agreement as approved by the Court." (Settlement Agreement at section 6.4).

## Conclusion

Based upon the foregoing, as more fully explained and calculated in Claimant's Counsel's letter of September 25, 2013, the Administrator's calculation of this Claimant's Compensation Amount is erroneous and inconsistent with the express terms of the Settlement Agreement. The Claimant's Compensation Amount is not a negative ($27,688.39). The Claimant's correct Compensation Amount is $44,178.12. Applying the Risk Transfer Premium multiplier of 3.00, the Claimant's Total Compensation amount should be $176,712.48, plus an Accounting Support Reimbursement. This is Claimant's Final Proposal.

65286582.1

# EXHIBIT 1


**DEEPWATER HORIZON CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

*Policy Keeper Portal*

1. *Introduction.* While implementing the Settlement Agreement, the Claims Administrator is required to develop and adopt policies to govern aspects of claims review that are not specifically delineated by the Settlement Agreement. The Claims Administrator presents such policy rules to Class Counsel and BP (the "Parties") for their positions before the policy rules become final and are used in claims review. If a Party does not agree with a particular policy, the Party may obtain review of it by the United States District Court for the Eastern District of Louisiana (the "Court") in the exercise of its supervisory jurisdiction over the implementation of the Settlement Agreement. The Claims Administrator developed a Policy Keeper Portal to track the policies currently used in the Program and make them available to the Class. On May 7, 2013, the Claims Administrator added 242 policies to the 64 policies that were already available on the Policy Keeper Portal. This Alert explains how to use the Policy Keeper to locate the new policies.

2. *Decisions Tracked by the Policy Keeper.* There are four types of decisions tracked by the Policy Keeper.

| | CATEGORY | DESCRIPTION | IMPACT |
|---|---|---|---|
| 1. | Court Decision | ▪ Policies adopted by the Claims Administrator and approved by the Court. | ▪ Final and binding on claimants, the Parties, the Claims Administrator and Appeal Panelists. |
| 2. | Agreed to by the Parties | ▪ Policies adopted by the Claims Administrator as to which both Class Counsel and BP agreed are to be used in the Program without the need for review by the Court. | ▪ Binding on claimants, the Parties, the Claims Administrator and Appeal Panelists unless overturned by the Court. |
| 3. | Clarified by Seafood Neutral | ▪ Policies affecting the Seafood Compensation Program that were presented to the Seafood Neutral, who provided a clarification that the Claims Administrator adopted as a policy. | ▪ Binding on claimants, the Parties, the Claims Administrator and Appeal Panelists unless overturned by the Court. |
| 4. | Claims Administrator Decision | ▪ Policies adopted by the Claims Administrator as to which Class Counsel and/or BP did not formally agree, but indicated that the Claims Administrator was to use in the Program. | ▪ Used by the Claims Administrator and Program Vendors for all affected claims, unless the Parties formally agree to a different policy or it is overturned by the Court; not binding on Appeal Panelists. |

425290
5/7/13

1


**DEEPWATER HORIZON CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

3. *Superseded Policies.* The rules and policies needed to implement the Settlement Agreement for actual claims may change over time, as we review the many types of claims we receive, which may present new issues or cause issues to be evaluated in a larger context than was previously available to us. When necessary, we issue a new policy to amend or replace a previously announced one. When that happens, we mark the old policy as "Superseded" and indicate the policy that replaced it in a section on the screen called "Superseding Information." We include all the superseded policies in the set of publicly available policies so that interested persons can see what policy was in place at the time we reviewed a particular claim and understand how a policy changed over time. We do not apply the superseded policies in current reviews. If a change to a policy would have altered the outcome on a claim in a manner favorable to the claimant from that reached under the old policy, we go back and re-review the claim under the new policy in every instance where we can identify the affected claims.

4. *How to Open the Policy Keeper Portal.* You may access the Policy Keeper Portal through your Portal and through the Settlement Program website.

   (a) **Portal Users.** We have added an Approved Policies link to the Portal homepage. To open the Policy Keeper Portal, log in to the Home page of the DWH Portal and click the Show button by Approved Policies. A new page will appear with the Policy Keeper Search Application.



   (b) **Settlement Program Website.** There is a link to the Policy Keeper Portal on the Settlement Program website (www.deepwaterhorizoneconomicsettlement.com). On the homepage of the Settlement Program website, scroll down to the box labeled Important Announcement Regarding Approved Policies. Select the Click Here link to navigate to the Policy Keeper Search Application.


**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

> **Important Announcement Regarding Approved Policies**
>
> Under the terms of the Deepwater Horizon Economic and Property Damage Settlement Agreement ("Settlement Agreement"), the Claims Administrator is charged with the duty to "faithfully implement and administer the Settlement, according to its terms and procedures, for the benefit of the Economic Class, consistent with this Agreement, and/or as agreed to by the Parties and/or as approved by the Court." (Section 4.3.1 of the Settlement Agreement). Further, the Claims Administrator is charged with the responsibility to "work with Economic Class Members . . . to facilitate . . . assembly and submission of Claims Forms, including all supporting documentation necessary to process Claims Forms under the applicable Claims Processes . . . [and to] provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of this Agreement." (Section 4.3.7 of the Settlement Agreement). In accordance with these provisions, the Claims Administrator has adopted numerous policies affecting the administrator of claims under the Settlement Program. Click Here for more information regarding these Approved Policies.

5. *How to Search for a Policy.* The Policy Keeper Search Application will allow you to search for a specific policy, or you may select Search All to view a list of all policies.

   (a) **Specific Search.** Select the Search Criteria you want to use to search for a policy and click the Search button to view search results. If you select Specific Search, you can provide more than one type of Search Criteria to refine your search.



   (1) **Policy ID:** Enter the Policy ID to find a specific policy.

   (2) **Claim Type/Review Process:** Use the drop-down list to find policies by Claim Type or Review Process.

   (3) **Settlement Agreement Reference:** Enter the Settlement Agreement reference for which you want to find the applicable policy(ies).

   (4) **Word Search:** Enter a word or words to find policies that contain your search word(s).

425290
5/7/13                                           3