UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * | MDL 2179 |
| | * | SECTION: "J" (1) |
| Applies to: No 12-970, *Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production, Inc., et al.* | * | JUDGE BARBIER |
| | * | MAGISTRATE SHUSHAN |

## MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT WITH BP IN ACCORDANCE WITH THE COURT'S ORDERS

Claimant respectfully requests that the Court enforce the written settlement agreement and compel BP to deliver the settlement funds to Claimant, based on the clear terms of the Release that BP proposed and Claimant accepted and, further, in accordance with the Orders of this Court. Those terms assured Claimant, that if accepted the terms of the Release and the consideration offered, that any future court decisions would have no impact on Claimant or the terms of the Release.

The Release at issue was executed and accepted over a year before the United States Fifth Circuit's "BEL" Panel's decision.[1] Claimant accepted the post-appeal award before that decision was issued.[2] Thus, an enforceable Release and Settlement on claims currently exists – and existed before the "BEL" Panel's decision. For the reasons, which are discussed in more detail below, this Court should grant the Motion and provide the relief requested.

### I.     Background

---

[1] Case No. 13-30315 – Opinion dated March 3, 2014.
[2] *See* Exhibit 1.

The Claimant executed the Release on February 25, 2013, the Release was accepted on February 27, 2013 and the post-appeal award in Claimant's favor was received on June 11, 2013. The award was due and payable on June 25, 2013.[3],[4] However, BP, as of June 15, 2014, is challenging payment of this Claim by stating that it is subject to revenue matching in the Court's June 27, 2014 Order.[5] BP has not denied that a valid Settlement Agreement exists between the parties. Claimant is not arguing Policy 495 issues in this Memorandum. Claimant's position is merely that this Claim was settled, and "had prior to October 3, 2013: received a final Eligibility Notice . . . and . . .no timely appeal had been filed.[6] Moreover, the Release that was signed clearly forecloses any subsequent decisions regarding this claim. A valid and executed contract, via the Release, has existed between the parties since February 2013.

On May 28, 2014, this Court issued its "Order Dissolving Preliminary Injunction Related to BEL Claims and Implementation of Policy 495: Matching of Revenue and Expenses".[7] In that Order, this Court specifically stated: "Policy 495 . . . shall be applicable to all BEL Claims . . . *save and except those claims that prior to October 3: received a final Eligibility Notice . . . and* (a) no timely appeal had been filed." (emphasis added). As noted above, this Claimant received its Post-Appeal Eligibility Notice a/k/a Final Eligibility Notice on June 11, 2013 and BP did not

---

[3] The timeline for this claim is as follows:
    Claim filed:    September 25, 2012
    Eligibility Notice issued:    February 15, 2013
    Release signed:    February 25, 2013
    Offer Accepted:    February 27, 2013
    BP Appealed Award:    March 8, 2013
    DHECC Appeal Panel Decision:    June 10, 2013
    Post-Appeal Eligibility Notice:    June 11, 2013
    Award Confirmed as Final Award:    June 11, 2013
    Award Due and Payable:    June 25, 2013*

*BP did not seek Judicial Review of the Appellate Panel's Decision.
[4] *See* Exhibit 2, *in globo*, "Claims Events/Notices".
[5] Doc. 13076.
[6] Doc. 12948 filed 5/28/14.
[7] Doc 12948.

file for a discretionary appeal. Consequently, under the terms of this Court's May 28, 2014 and June 27, 2014 Orders, Policy 495 did not apply to the present Claimant, thus Claimant should have been paid.

**II.     The Terms of the Release Are Clear.**

BP proposed – and Claimant accepted – a Release that guaranteed that both parties would be bound by the terms of the Release. "The attached Full and Final Release Settlement, and Covenant Not to Sue ('Individual Release') is a binding legal document."[8]

Such language is common in many releases and is arguably superfluous since it is axiomatic that a release is a contract. What is unique, however, is the detail that BP's Release includes about the enforceability of the Release – even if subsequent court decisions change the terms of the proposed settlement. For example, the Release states:

> The settlement payment you have been offered arises under the auspices of the federal District Court in New Orleans presiding over the multidistrict litigation titled *In re Oil Spill by the Oil Rig 'Deepwater Horizon' in the Gulf of Mexico, on April 20, 2010* (MDL No. 2179). A class action settlement has been proposed in that case, but the Court has not yet given final approval of that proposed settlement. If the Court does approve the proposed class action settlement, an appellate court could reverse the approval. In addition, *it is possible that the terms of the proposed settlement may change in the future – for better or for worse – as a result of further legal proceedings. However, if you sign this Individual Release, none of those uncertain future events will affect you. By signing this Individual Release you are forever waiving and releasing all claims that you have against BP (except for Expressly Reserved Claims) in exchange for the compensation being provided. In fact, even if the Court does not approve the proposed class action settlement agreement or the approval is reversed by an appellate court, you shall continue to be bound by the Individual Release.*

(emphasis added).[9]

Claimants are required to sign an "Acknowledgment" affirming that they "read and understand" this information.[10] The Definitions section of the Release further confirms the effectiveness of the Release, irrespective of future court decisions:

---

[8] *See* Exhibit 1, p. 2 of 20, second paragraph.
[9] *Id.*, p. 5 of 20.

> Continuing Effectiveness of Agreement. *This Individual Release shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the Released Parties in any current or future litigation.* THIS INDIVIDUAL RELEASE SHALL ALSO REMAIN EFFECTIVE REGARDLESS OF WHETHER THE SETTLEMENT AGREEMENT RESOLVING THE CLAIMS OF THE ECONOMIC CLASS IS APPROVED.

(emphasis added).[11]

The Release is also clear that the monies referenced therein, as well as assurances like the ones above and the following, constitute the consideration offered for such a broad release.

> **Release is Comprehensive**. Claimant agrees and acknowledges that the consideration granted in Paragraph 2 above constitutes full, complete, and total satisfaction of all of the Released Claims against the Released Parties. In addition, Claimant agrees and acknowledges that the consideration granted in Paragraph 2 above also constitutes full, complete, and total satisfaction of all of Claimant's Compensatory Damage Claims against the Transocean Parties and the Halliburton Parties.

(emphasis supplied).[12]

> . . .
>
> **Consideration**. Claimant agrees that this Individual Release is entered into in consideration of the agreements, promises, and mutual covenants set forth in this Individual Release and for such other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged.

(emphasis supplied).[13]

Finally, the Release is the exclusive remedy for a claimant to pursue and there are no other enforceable agreements to the contrary:

> This Individual Release shall be the exclusive remedy for any and all Released Claims by or on behalf of Claimant against any and all Released Parties, and Claimant shall not recover, directly or indirectly, any sums from any Released Parties for any Released Claims other than those received for the Released Claims under the terms of this Individual Release.[14]
> . . .

---

[10] *Id.,* p. 3 of 20.
[11] *Id.,* p. 13 of 20, paragraph 16.
[12] *Id.*, p. 10 of 20, paragraph 3.
[13] *Id.,* p. 10 of 20, paragraph 6.
[14] *Id.,* p. 11 of 20, paragraph 8(b).

Superseding Nature of Agreement. This Individual Release constitutes the final, complete, and exclusive agreement and understanding between BP and Claimant and supersedes any and all other agreements, written or oral, between BP and Claimant with respect to such subject matter of this Individual Release in settlement of Claims arising out of or related to the Deepwater Horizon Incident.[15]

### III.     This Court Has Ordered This Type of Claim Be Paid.

On June 7, 2014, Class Counsel filed a "Motion to Clarify and/ or to Alter or Amend the Order Lifting Injunction Pursuant to Rule 59(e)".[16] In this Motion, Class Counsel contended, "[c]laims that were compromised by agreement by BP in the Settlement Program Appeal Process prior to the Court's matching injunction should not be subject to recalculation."  In the Memorandum in Support of this Motion, Class Counsel further argued:

> D. <u>THE TERMS OF THE APPROVED RELEASE EXECUTED BY CLAIMANTS</u> <u>PREVENTS APPLICATION OF POLICY 495</u>
>
> Claims where an Individual Release was executed by the Claimant based on and in consideration for a BEL Eligibility Determination should also be recognized, without re-calculation of the Claim under the new matching policy. The Parties agreed in the Release that subsequent developments would not alter the claim determination while the matter was on appeal. The Release language itself confirms that the claim as calculated at that time would be paid even if subsequent court decisions might result in changes to the amount of the calculated payment. For example, the notice of Important Information which precedes the Acknowledgement signed by the Claimant states that;
>
>> The settlement payment you have been offered arises under the auspices of the federal District Court in New Orleans presiding over the multidistrict litigation titled In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (MDL No. 2179). A class action settlement has been proposed in that case, but the Court has not yet given final approval of that proposed settlement. If the Court does approve the proposed class action settlement, an appellate court could reverse the approval.  In addition, **it is possible that the terms of the proposed settlement may change in the future- for better or for worse - as a result of further legal proceedings.  However, if you sign this Individual Release, none of those uncertain future**

---

[15] *Id.,* p. 13 of 20, paragraph 15.
[16] Doc. 13004 (Motion filed by Class Counsel), *regarding* this Court's Order No. 12948 filed May 28, 2014.

>  **events will affect you.  By signing this Individual Release you are forever waiving and releasing all claims that you may have against BP (except for Expressly Reserved Claims) in exchange for the compensation being provided.** In fact, even if the Court does not approve the proposed class action settlement agreement or the approval is reversed by an appellate court, you shall continue to be bound by this Individual Release.
>
> Section 13.4 of the Settlement Agreement provides that the Agreement "shall remain in full for and effect notwithstanding the discovery after the date of this Agreement or at any other time of any additional facts or law, or changes in the law," and Paragraph 16 of the Individual Release provides that the Individual Release "shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the Released Parties."  *See also, generally,* 29 WILLISTON ON CONTRACTS §73:1 (4th ed.) ("a release is a binding agreement between the parties under which at least one party to the agreement relinquishes an existing claim or cause of action against another party to the agreement"); *Philadelphia Indem. Ins. Co. v. SSR Hospitality, Inc.*, 459 F. Appx. 308, 312-13 (5th Cir. 2012); *Johnson v. Manpower Prof'l Servs. Inc.,* 442 F Appx. 1977, 984 (5th Cir. 2011); *Weingart v. Allen & O'Hara,* 654 F.2d 1096, 1103 (5th Cir. 1981) ("The construction and enforcement of a release or settlement agreement are governed by general principles of contract law").  Thus the parties' bargain was complete when the Claimant accepted an Eligibility Notice or Post appeal Eligibility Notice and signed the stipulated and court-approved Release.

(emphasis in original).[17]

This Court ruled on Class Counsel's Motion on June 27, 2014, holding that there are/were certain claims that are unaffected by Policy 495.[18] Specifically, this Court held that claims that were compromised between BP and the Claimant and had gone through the Settlement Program Appeal Process were unaffected. The Court further held that, such "claims shall be paid promptly without delay."[19] BP did not ask this Court to reconsider its June 27, 2014 Order, nor has it filed an Appeal.  The June 27, 2014, holding by this Court is directly on point

---

[17] Doc. 13004.
[18] Doc. 13076.
[19] See, *Id.* - "Order [Regarding Motion to Clarify and/or to Alter or Amend Order Lifting Injunction – Doc. 13004]" dated June 27, 2014.

with the facts of the present case and the law argued in this motion. Thus, this Court should reach the same conclusion, and should Order BP to pay this Claimant's award forthwith.

To the extent that this Court does not find its June 27, 2014, to be precedential in terms of this motion, the Claimant adopts the arguments made by the PSC, as quoted herein, regarding the effect of their Release.

BP negotiated these terms and proposed that they be incorporated into the Release submitted to this Court for approval.[20] And, Claimant eventually agreed to these exact terms in February 2013.[21]

Under the terms of the Release:

(1)  BP offers a "settlement payment" under the terms of the class action settlement overseen by this Court;

(2)  The settlement includes the "consideration" offered in the Release;

(3)  That "consideration" includes not only the monies referenced in the Release, but also the "agreements, promises, and mutual covenants" set forth in the Release;

(4)  BP informs the Claimant that the "terms of the proposed settlement may change in the future – for better or worse – as a result of future legal proceedings.";

(5)  Despite that possibility, the Release expressly states, "none of those uncertain future events will affect you" if the Claimant will just sign the Release; and

(6)  Further, the terms of the Release "shall remain effective regardless of any appeals or court decisions" that relate "in any way to the liability" of BP and that might occur in the future.

---

[20] Agreement § 25 (Doc. 6430-1), ("This Agreement shall be deemed to have been mutually prepared by the Parties..."). *id.* Ex. 26 (Doc. 6430-45).
[21] *See* Exhibit 1.

Thus, while the monies offered in the Release are obviously important to Claimant, so are the other "agreements, promises, and mutual covenants." Two of the most critical of those "agreements, promises, and mutual covenants" are the assurances that any future court decisions would have no impact on the Claimant – if the Claimant accepted the terms of the Release – and that the Release is a "binding legal document."

As noted in the Motion, the Release was received and accepted by DHECC on February 27, 2013. Claimant accepted the notice of Post-Appeal Award Offer on June 11, 2013.[22] Thus, an enforceable Release and contract existed on June 11, 2013, when the Claimant accepted the Post-Appeal award.

Claimant accepted BP's terms. And, those terms are clear. Based on these clear terms, Claimant asks that the terms of its signed Release be enforced and BP be instructed to pay this Claimant, in accordance with Paragraph 4 of this Court's June 27, 2014 Order.

**IV.   This Court Can Enforce the Terms of the Release.**

The substantive claims in this case are based on General Maritime Law claims against BP arising out of the Deepwater Horizon incident. As such, "Questions regarding the enforceability or validity of ... [settlement] agreements are determined by federal law – at least where the substantive rights and liabilities of the parties derive from federal law." *Borne v. A&P Boat Rentals No. 4, Inc.*, 780 F.2d 1254, 1256 (5th Cir. 1986) (citing *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389) (5th Cir. 1984)); *Chilsan Merch. Marine Co. v. M/V/K Fortune*, 110 F. Supp. 2d 492, 496 (E.D. La. 2000); *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1354 (S.D. Fla. 2007). Further, in December 2012, the district court certified the class and

---

[22] *See* Exhibit 3. The Post-Appeal Eligibility Notice stated: "Because you previously signed a Full and Final Release...you do not need to submit another Release...".

approved the settlement in two orders totaling 140 pages.[23] The Court emphasized in these orders that it retained "continuing and exclusive jurisdiction" to enforce the Agreement.[24] And, its judgment incorporated the Agreement's terms.[25] Where a court order "incorporate[es] the terms of [a] settlement agreement," the court retains "ancillary jurisdiction to enforce the agreement." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

Thus, when presented with a settlement agreement and asked to enforce it, a court must first determine if a binding agreement was reached and, if so, what the agreement provides. *E.N. Bisso & Son, Inc. v. World Marine Transp. & Salvage*, 1996 WL 28520, at *3 (E.D. La. 1996) (citing *Lee v. Hunt,* 483 F. Supp. 826, 834 (W.D. La. 1979)). The Fifth Circuit regards a settlement agreement as a contract and courts are instructed to enforce them as they would a contract. *See Guidry v. Halliburton Geophysical Servs.*, 976 F.2d 938, 940 (5th Cir. 1992). Thus, in order for a settlement agreement to exist between the parties there must have been proper acceptance of an offer. *Bisso,* 1996 WL 28520, at *3. Claimant and BP reached an agreement on the material terms of a settlement when Claimant signed the acceptance form – the Release – and returned it to the DWHCC as instructed. Although the agreement was conditioned upon BP's right to appeal the award – which BP did and lost, BP elected not to seek judicial review of the Appellate Panel's Decision. The award was confirmed as a Final Award on June 11, 2013.

Because it is presumed that the parties making settlements have consulted their own interests, settlement agreements should not be taken lightly or be interfered with or impeached. *Thibaut v. Ourso,* 605 F.Supp. 1, 2-3 (M.D. La. 1981); *see also Hennessy v. Bacon,* 137 U.S. 78, 85 (U.S. 1890). "It is well settled that in the absence of fraud, mistake, or other circumstance going to the validity of the agreement, a settlement voluntarily entered into cannot be repudiated

---

[23] Doc. 8138 and 8139.
[24] Doc. 8138, at 9; *see also id.* at 36; Doc. 8139, at 3-6.
[25] Doc. 8139, at 1, 5-6.

by either party or set aside by the court." *Bisso*, 1996 WL 28520, at *5; *see also Thibaut*, 605 F.Supp. at 3.

In this case, there is undisputed evidence that a binding settlement agreement was reached between Claimant and BP. The agreement was to pay the total sum of $1,689,700 to Claimant in full settlement of all of its claims arising out of the Deepwater Horizon incident.[26] In exchange, Claimant agreed to waive and release all potential claims against not only BP, but against any other party who might be liability in the incident. The Release executed and returned by Claimant confirms the settlement, which was due and payable long before issues relating to Policy 495.

This claim falls squarely within the excluded claims referenced in the Court's May 28, 2014 and June 27, 2014 Orders.

For all the reasons stated above, Claimant asks that the terms of the Release be enforced, and BP be instructed to pay this claim, in accordance with this Court's Orders.

Respectfully submitted:

**Law Offices of Ashley E. Philen, LLC**

**/s/ Ashley E. Philen**
Ashley E. Philen
La Bar No. 31285
4217 E. Old Spanish Trail (70560)
P.O. Box 11652 (70562)
New Iberia, Louisiana
Telephone: (337)492-5008
Facsimile: (888)345-7046
Ashley.aeplaw@gmail.com

*Attorney for Claimant*

---

[26] *See* Exhibit 3. The original award was $1,586,501.93, however 5% Review Cost were added when BP lost their Appeal. The Post-Appeal Final Eligibility Notice increased the award to $1,689,700.

**CERTIFICATE OF SERVICE**

       I hereby certify that the above and foregoing Memorandum In Support has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of April, 2013.

       /s/ Ashley E. Philen
       _____
       ASHLEY E. PHILEN