**Deepwater Horizon Economic Claims Center**

**Process Review**
**Vendor Oversight and Governance Report**

**November 2014**



Assurance ▪ Tax ▪ Consulting



McGladrey LLP

1861 International Dr.
McLean, Virginia 22102
O 703.336.6400 F 703.336.6401
www.mcgladrey.com

November 7, 2014


Patrick Juneau
Claims Administrator
Deepwater Horizon Economic Claims Center
935 Gravier Street, Suite 1905
New Orleans, Louisiana 70112

Dear Mr. Juneau:

In accordance with our agreement, effective October 16, 2013, we have performed process review services related to various functions within the Deepwater Horizon Economic Claims Center ("DHECC") and across the Court Supervised Settlement Program ("CSSP"). As part of our engagement, we have completed a process review related to vendor oversight and governance. This report contains the results of this review, and is divided into the following sections:

- **Executive summary**—provides an introduction to the process review performed, describing our scope and approach, a general description of the manner in which our observations are organized, and an overall conclusion as to the adequacy and appropriateness of existing controls in this area.

- **Observations and recommendations**—details our specific observations noted as well as recommendations for DHECC management's consideration.


This report is intended solely for the information and use of DHECC management. This report is not intended to be, and should not be, used by anyone other than DHECC without our express written consent. Notwithstanding the above, DHECC's external auditors, the U.S. District Court for the Eastern District of Louisiana, and regulators may be provided with a copy of this report in connection with fulfilling their respective responsibilities.

We appreciate the cooperation afforded us during this review, and the opportunity to be of continued service to DHECC.


Sincerely,

McGladrey LLP

**McGladrey LLP**

## Table of Contents

# Executive summary .................................................................... 1

Introduction ............................................................................ 1

Approach ............................................................................... 2

# Observations and recommendations ........................................... 3

# Appendix A – Standards for Consulting Services .................... 9

© 2014 McGladrey LLP. All Rights Reserved.

# Executive summary

## Introduction

We have completed a process review of the vendor oversight and governance processes as described below, for Deepwater Horizon Economic Claims Center ("DHECC," "Claims Administrator's Office" or "CAO"). The primary objective of our work was to evaluate the appropriateness and effectiveness of the Court Supervised Settlement Program's ("CSSP" or the "Program") processes and procedures to monitor the vendors to the Program. The process review was conducted in accordance with the applicable American Institute of Certified Public Accountants ("AICPA") consulting standards.

The scope of our review included CSSP processes to determine vendor compliance with the Service Agreements and Task Orders, including:

- *Oversight and review procedures for claims handling* – processes and procedures in place at the CAO to monitor and govern the vendors' execution of claims review and payment.

- *Review of budgets and forecasts* – processes developed to create and approve vendor budgets and forecasts.

- *Approval of invoicing and expenses* – processes to review and approve vendor time and expense invoices. We encountered overlap in scope with our Financial Controls process review. Observations included in this report may be duplicative of those reported in the Financial Controls report.

- *Performance of vendor expense audits as required by Service Agreement* – includes Program-wide processes to submit, support, approve and reimburse travel expenses incurred by CSSP personnel. This area also includes processes intended to ensure compliance with DHECC's Travel and Entertainment policy.

- *Management of vendor performance through key performance indicators, process efficiency and value for money metrics, and other targets* – processes developed to establish key performance indicators to which vendors will be held accountable and monitor compliance with such standards.

- *Approval of exceptions to contractual requirements (e.g. staffing numbers and variances / additional expenses)* – processes in place to review and approve vendor requests for non-compliance with contract provisions.

- *Compliance with IT security and data protection requirements* – processes to develop and monitor IT security and data protection policies and procedures, including access to and controls around various non-claims systems. An assessment of this process area was also included in the Financial Controls process review. All related observations can be found in that report.

- *Provision of daily/weekly/monthly reporting as required by contracts* – processes in place to identify contractual requirements with respect to periodic reporting, to obtain and review such reports, and to follow-up with vendors as needed.

- *Oversight of vendor compliance with the Code of Conduct, gifts and entertainment requirements, and other laws and regulations* – procedures executed to monitor Program-wide compliance with respective policies, including standardized processes to ensure consistency across all CSSP personnel. We encountered overlap in scope with our Financial Controls process review. Observations included in this report may be duplicative of those reported in the Financial Controls report; however additional information with respect to the survey conducted has been provided below.

© 2014 McGladrey LLP. All Rights Reserved.

## Approach

We completed the vendor oversight and governance review procedures in accordance with the CSSP Examination Objectives and Scope document included as Exhibit 1 in our agreement, effective October 16, 2013. The review period covered by this report is CSSP inception through July 2014. Throughout this time period, vendor oversight processes changed. Some of these changes have resulted directly from our work in other areas, while others have simply occurred subsequent to the conclusion of our Financial Controls and Vendor Compliance reviews, the fieldwork for which was completed prior to performance of this review. To the extent possible, for purposes of this review, we have evaluated current vendor oversight processes being performed by the CAO, as of July 2014.

To accomplish our objectives, the following procedures were performed within the respective process areas.

- Performed a risk assessment for each process area to enable a risk-based approach to the review

- Conducted management interviews and walkthroughs in an effort to gain an in-depth understanding of processes, procedures, and policies

- Identified risks and risk mitigation strategies, including key controls as well as gaps in risk mitigation strategies (resulting in residual risks to the organization)

- Evaluated and determined the extent to which work prepared by others (such as the DHECC internal audit group and other McGladrey teams performing working concurrently) could be leveraged

- Developed a work program based on our understanding of in-scope process areas and review of relevant documentation

- Obtained and assessed transaction populations for detailed testing and selected samples; requested and obtained supporting documents for samples selected

- Executed work program, developed observations and recommendations based on results of our work.

Throughout our fieldwork, we provided the DHECC with interim reports. Each interim report included those observations that had been identified via supporting documentation and/or discussions with relevant CSSP personnel. As part of this process, recommendations were provided to, and management responses were received from, DHECC management. This report includes observations that have been previously communicated via interim reports.

## Vendor oversight and governance

## Observations and recommendations

During the course of our review, we have made a number of observations, which have been discussed with management. Our observations are organized by scope area described above.

| Process area | Observation | Recommendation | Management Response |
|---|---|---|---|
| Oversight and review procedures for claims handling | The CAO employs several processes to monitor claims handling by the vendors.<br><br>First, project managers have been assigned to each major vendor for purposes of monitoring and accountability. Project managers hold periodic and as-needed meetings with the vendors, during which items such as productivity with regards to claims processing and statistics with respect to notices sent and claimant inquiries are reviewed. Additionally, action items are identified for which the vendors are responsible for completing, and the project managers responsible for monitoring. Beginning in February 2014, the CAO began using Key Performance Goals ("KPG") to monitor claims handling procedures. Such KPGs are also reviewed as part of the program management procedures employed. More information with respect to KPGs is described below.<br><br>Second, the CAO's internal audit team performs audits of live claims prior to distribution of the eligibility notice. The team selects a sample of eligible claims that were processed by the vendors and performs a series of tests on the claims, which are tailored to each claim category. As needed, and based on the results of testing, policies related to the claim type are reviewed to determine the appropriate treatment. As a result of testing, the vendors are provided with a list of exceptions or issues. The vendors are then responsible for correcting the exceptions noted and drafting corrective action plans to prevent similar exceptions from occurring in the future. | During our review procedures, we noted that the CAO does not actively request and review reports describing the results of QA procedures performed by the vendors. A consistent review of such information may help to inform the CAO and the major vendors of areas that require additional oversight and enhanced training. As communicated as a process improvement opportunity in our vendor compliance report, we recommend that the CAO consider developing standard QA/QC reports and a process to obtain such information on a periodic basis (monthly or quarterly). | The CAO will work with applicable vendors to establish requirements for formal documentation, including results of Quality Assurance / Quality Control procedures, to be incorporated into the task orders by the end of 4Q 2014 to the extent allowable by the contract. |

© 2014 McGladrey LLP. All Rights Reserved.

DHECC - Process review report

Vendor oversight and governance

| Process area | Observation | Recommendation | Management Response |
|---|---|---|---|
| Review of budgets and forecasts | In accordance with the execution of our vendor compliance process review, which covered a review period of approximately June 2012 through September 2013, we reported that budgets and forecasts were not consistently submitted to the CAO in accordance with the deadlines outlined in each vendor's respective contract. Subsequent to September 2013, the CAO amended its requirement of the vendors. Specifically, vendors are now required to submit rolling forecasts to the CAO by the 15th of each month. These rolling forecasts include the actual results for the prior month-end, plus updated forecasts for any remaining months in the current and subsequent quarter. Per discussion with management, it is our understanding that failure to submit rolling forecasts in a timely manner will result in delayed payment of outstanding invoices. | No recommendation warranted. | No management response warranted. |

© 2014 McGladrey LLP. All Rights Reserved.

DHECC - Process review report

Vendor oversight and governance

| Process area | Observation | Recommendation | Management Response |
|---|---|---|---|
| Approval of invoicing and expenses | As part of our financial controls and vendor compliance reviews, we reported various observations related to the CAO's oversight of vendor invoices and expenses, including compliance with the Program's travel and expense policy, during the respective review periods. Generally speaking, the observations were immaterial. In March 2014, the CAO hired an Analyst IV – Controller, who was tasked with the execution of monthly invoice audits. Through conversation and observation, we have noted that the CAO's review procedures have been enhanced significantly. Vendor invoices for time and expenses are now scrutinized in detail. As a result, vendors are required to provide additional information to CAO or issue a credit. While the design of the new procedures appears to be sufficient, we did not perform procedures to test the respective operating effectiveness of the new process controls. | No recommendation warranted. | No management response warranted. |
| Performance of vendor expense audits as required by Service Agreement | | | |
| Management of vendor performance through KPIs, process efficiency and value for money metrics, and other targets | The CAO has been monitoring vendor productivity against the KPGs since February 2014. Prior to February 2014, vendors were not held to specific productivity metrics. We reviewed the February and March 2014 task orders for the five major vendors and verified that KPG's applicable to the respective vendor were included. Given recent implementation of this process, testing related to the operating effectiveness of these procedures could not be performed. | Consider performing future process reviews to validate operating effectiveness of the recently implemented procedures and controls. Include an assessment of the design of the processes, including various models used to develop and assess KPGs. | The CAO has been monitoring vendor productivity against the KPGs since February 2014. The February and March 2014 task orders included KPG's applicable to the respective vendors.<br><br>The CAO will consider future process reviews on a risk based approach. |

© 2014 McGladrey LLP . All Rights Reserved.

DHECC - Process review report

Vendor oversight and governance

| Process area | Observation | Recommendation | Management Response |
|---|---|---|---|
| Approval of exceptions to contractual requirements (e.g. staffing numbers and variances / additional expenses) | As a result of the vendor compliance process review, we noted that the CAO has not taken preventive or detective measures to manage contractual exceptions. Evidence is found in the various instances of non-compliance noted, including lack of pre-approval by the CAO for subcontractors and vendor personnel engaged after the execution of contracts, insufficient background check procedures, and insurance policies below contractual limits. | Using a risk based approach, mandate remediation of contractual compliance exceptions noted. | The CAO will work with the vendors to determine what actions will be taken to remedy the issues identified.<br><br>Most of the items noted were historical in nature, so remediation efforts will be focused on those items that have a meaningful impact on the program going forward. |
| Provision of daily / weekly / monthly reporting as required by contracts | Through discussions with CAO personnel during our fieldwork, as well as the results of the vendor compliance and financial controls process reviews, we determined that the CAO does not have formal processes that capture the full population of all reports required to be submitted by the vendors – either through contractual obligation or as a means to effectively manage the Program. Similarly, responsibility to review the information at the CAO is not formal. As a result, there is a risk that pertinent information will not be communicated to the right individuals. | Create a formal population of reports contractually required by all major vendors. Delegate responsibility of obtaining, reviewing, and following-up on each report to the appropriate Project Manager.<br><br>Propose that vendors maintain a log of all reports requested by and provided to the CAO, as well as the retention of all reports in a central location, with access limited to the appropriate individuals. | The CAO has created a listing of reports that are currently being used by management and will focus on these reports. Reports that are contractually required but are not needed will not be focused on at this time.<br><br>With a new system planned for the near future, it will be important to focus on reports that add value to the program. |

© 2014 McGladrey LLP. All Rights Reserved.

DHECC - Process review report

Vendor oversight and governance

| Process area | Observation | Recommendation | Management Response |
|---|---|---|---|
| Oversight of vendor compliance with the Code of Conduct, gifts and entertainment requirements, and other laws and regulations | At the time of our review, there was no formal process by the CAO for providing guidance to vendors with respect to Code of Conduct training and implementation of a Code monitoring program. The CAO has the responsibility to oversee all vendor Code monitoring programs to ensure each vendor has developed a satisfactory compliance framework.

Vendors reviewed had different levels of training, conflict identification systems, monitoring controls and disclosure protocols. Upon survey of a sample of CSSP personnel (CAO and vendors), we noted that 23.4% of individuals either had not received training or were unsure as to whether or not they had received training. Additionally, when told about a co-worker's violation of the code of conduct, 13.2% of those surveyed indicated they would act in a manner that did not result in reporting the issue. Finally, 12.8% of those surveyed indicated they would not report misappropriate conduct by a member of the CAO.

Well-trained vendor employees and consistent compliance frameworks will decrease the risk that CSSP personnel operate outside the standards set forth in the Code of Conduct and decrease the risk that the CAO is unaware of potential conflicts of interest or Code of Conduct violations at the vendor level. | Develop a minimum standard of vendor activities related to Code of Conduct compliance, including the following areas:

• Uniform training program
• Conflict identification
• Conflict monitoring
• Disclosure | The CAO has developed a uniform training program on the Vendor Code of Conduct requiring the vendors to conduct annual in-person training, with quarterly recertification. The training presentation was distributed to the vendors with certification that training had been completed in June 2014. |

© 2014 McGladrey LLP. All Rights Reserved.

DHECC - Process review report

Vendor oversight and governance

| Process area | Observation | Recommendation | Management Response |
|---|---|---|---|
| Oversight of vendor compliance with the Code of Conduct, gifts and entertainment requirements, and other laws and regulations (continued) | As of the conclusion of our field work, there was no formal process for providing consistent feedback or direction on the treatment, severity, or penalties associated with Code of Conduct violations reported by all vendors. Vendors who disclose potential conflicts of interest and Code violations to the CAO should expect to receive guidance from the CAO on the treatment of the relevant employees. The CAO has historically responded to those potential violations they deemed to be the most severe. The CAO can improve consistency in enforcement of the Code if the CAO recommends a remedy or confirm the Vendors proposed treatment for trends or conflicts disclosed. | Create a process to assess and provide guidance on each conflict of interest or Code of Conduct violation reported.<br><br>Develop a master listing of all disclosed conflicts of interest and Code of Conduct violations to track each issue's status and remedy. | The CAO created a process for providing timely guidance on all potential conflict of interest and Code of Conduct violation disclosures. Vendors report all Code of Conduct violations to the CAO's Chief Compliance Officer who reviews the facts of the violation and either agrees with the vendors' proposed course of action or proposes a new course of action.<br><br>The CAO developed and maintains a master listing of the aforementioned disclosures to monitor issue status and remedy. |

© 2014 McGladrey LLP . All Rights Reserved.

# Appendix A – Standards for Consulting Services

We performed our work in accordance with the American Institute of Certified Public Accountants ("AICPA") Statement on Standards for Consulting Services ("SSCS"). The SSCS recognizes the difference between attest services and consulting services and that different standards apply to consulting services engagements. These standards recognize that the nature of consulting services work is determined solely by the agreement between the practitioner (McGladrey LLP) and the client (DHECC), and the work is generally performed only for the use and benefit of the client. Consulting services differ fundamentally from the CPA's function of attesting to the assertions of other parties. In an attest service, the practitioner expresses a conclusion about the reliability of a written assertion that is the responsibility of another party, the asserter. In a consulting service, the practitioner develops the findings, conclusions, and recommendations presented. The SSCS are listed below, with a brief description as to how our approach met the respective Standard.

**Professional competence:** The process review team was comprised of individuals with the knowledge, skills, and abilities necessary to execute the procedures in a quality and complete manner. The team consisted of one manager and one senior associate. All work was performed under oversight and guidance provided by the engagement partner. Our approach also included review by a quality assurance partner throughout various phases of the engagement.

**Due professional care:** To execute the process review completely and in a quality manner, and ensure due professional care was instilled in every phase, our project included specific review requirements. Each work program required the review and approval of the engagement partner and team manager after completion of the planning and fieldwork phases. Similarly, a high level review was conducted by a second partner during the planning and reporting phases.

**Planning and supervision:** Planning for the process review was performed at the commencement of the engagement. As a result, our approach and engagement schedule was drafted and presented to DHECC points of contact, as well as other relevant stakeholders, for consensus. As needed, additional planning was performed throughout the execution of our work, and amendments to the project plan were communicated and implemented.

**Sufficient relevant data:** Many of the processes within our scope were relatively new. As a result, and in order to provide DHECC with relevant and timely information, the process review procedures were limited to walkthroughs. The walkthroughs were performed to validate the processes described in our interviews and to evaluate the design of the respective internal controls. Operating effectiveness of the controls was not tested, except where results of testing performed in other McGladrey process reviews were leveraged.

**Client Interest:** Our work has been performed with the integrity and objectivity required to meet the objectives of the process review. Evidence of such objectivity is found in the observations noted above. Similarly, recommendations have been offered that take into consideration the organization's best interest, including the resources available to it and related risk it faces without implementation.

**Understanding with Client:** Mutual understanding of the scope of the process review is included in our agreement dated October 16, 2013. During the planning phase of the engagement, our approach and any limitations were more clearly defined and communicated to DHECC points of contact. Throughout execution of the process review, amendments to the approach as well as additional limitations identified were communicated to DHECC points of contact verbally or via formal status reports.

© 2014 McGladrey LLP. All Rights Reserved.

**DHECC - Process review report**                                    **Vendor oversight and governance**

**Communication with Client:** Throughout all phases of the engagement, we have communicated with DHECC points of contact regarding the scope and approach of our work. Such communication – both formal and informal – included the status of our work, any obstacles or barriers identified and the respective recovery plan, and estimates to complete. Additionally, observations identified were communicated to confirm our understanding and gain concurrence for report writing purposes.

© 2014 McGladrey LLP. All Rights Reserved.

**www.mcgladrey.com**

McGladrey LLP is the leading U.S. provider of assurance, tax and consulting services focused on the middle market, with more than 7,000 people in 75 cities nationwide. McGladrey is a licensed CPA firm and serves clients around the world through RSM International, a global network of independent assurance, tax and consulting firms. McGladrey uses its deep understanding of the needs and aspirations of clients to help them succeed.

For more information, visit www.mcgladrey.com, like us on Facebook at McGladrey News, follow us on Twitter @McGladrey and/or connect with us on LinkedIn.

© 2014 McGladrey LLP. All Rights Reserved.

