

CliftonLarsonAllen LLP
www.CLAconnect.com

Management
Deepwater Horizon Economic Claims Center
New Orleans, Louisiana

In planning and performing our audit of the special purpose financial statements (financial statements) of BP Economic and Property Damages Settlement Trust as of and for the year ended December 31, 2013, in accordance with auditing standards generally accepted in the United States of America, we considered the entity's internal control over financial reporting (internal control) as a basis for designing audit procedures that are appropriate in the circumstances for the purpose of expressing our opinion on the financial statements, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. Accordingly, we do not express an opinion on the effectiveness of the entity's internal control.

However, during our audit we became aware of deficiencies in internal control other than significant deficiencies and material weaknesses and other matters that are opportunities to strengthen your internal control and improve the efficiency of your operations. Our comments and suggestions regarding those matters are summarized below.

**Vendor Invoice Review and Approval**

Our internal control review and testing included control testing of cash disbursement transactions. This testing resulted in the following observations:

- We noted instances in the disbursements we tested where the supporting documentation contained insufficient and/or illegible supporting documentation for travel and entertainment expense reimbursements. Specifically, this documentation to support the reimbursement of expenses was not adequate for reimbursement under the established travel and entertainment policy.

- We noted instances in the disbursements we tested where expense reimbursements were being invoiced and paid twice (subsequently corrected by Claims Administration Office internal controls).

- All required review and approval signatures were not obtained for certain disbursements.

We recommend that the Claims Administration Office (CAO) request additional documentation from the vendor in all instances that the original documentation provided is illegible and/or not provided. Additionally, while the instances of the reimbursement amounts not agreeing to the supporting documentation were immaterial in amount, it is imperative that the amounts being requested for reimbursement agree to the documentation provided by the vendor. Any discrepancies should be brought to the vendor's attention for explanation and potential revision of the invoice.

We also recommend that the CAO add procedures to the vendor invoice review process to identify reimbursement requests that fall outside the period of service on the invoice to minimize the opportunity for duplicate payment.



An independent member of Nexia International

Management
Deepwater Horizon Economic Claims Center
Page 2

**Claim Compensation Calculation**

Claims processing and payment is complicated by the requirements of the Settlement Agreement, variability in acceptable claim documentation, and the labor intensive nature of calculating claims. Accordingly, we performed testing of claims in the internal control and substantive phases of the audit.

Discussion of the types of control deficiencies and our recommendations by claim type follow.

*Business Economic Loss/ Start-Up Business Economic Loss*

The primary factors that caused control deficiencies in the Business Economic Loss (BEL) and Start-Up BEL claims tested were:

- Keying errors and incorrect proration calculations
- Incorrect industry designation
- Incorrect expense classification
- Incorrect calculation of claimant accounting support
- Incorrect zone assignment

The claims calculation process is complex and involves interpretation of extensive documentation as well as interpretation by the Claims Administrator of the extensive terms of the Settlement Agreement. While these complexities, volume of claims being processed and the ongoing legal challenges to the settlement agreement create an environment that can be challenging to monitor to ensure compliance with the terms of the Settlement Agreement, we offer the following recommendations to continue to improve the accuracy of BEL claim processing.

- The Claims Administrators Office (CAO) should continue to monitor the performance of the court appointed vendors through frequent communications and the quality assurance (QA) review process.

- The CAO should continue to work with the court appointed vendors to strengthen the vendors' internal QA review process. In particular, consider having the internal QA reviewer agree the monthly net income figures and YTD revenue and expenses to the claimant provided P&Ls to minimize potential keying errors and assignment of incorrect revenue or expense accounts. We recognize that this procedure will not identify all keying errors, but should reduce the number of errors significantly. We also recommend that expenses or revenues that need to be prorated be recalculated in their entirety by the QA reviewer.

- It is our understanding that BrownGreer PLC (BG) determines causation on all BEL claims (including assignment of zone and industry designation) prior to the claim going to the Accountants (PwC and/or Postlethwaite & Netterville, APAC) for claim calculation. We recommend that the Accountants add procedures to review BG's assessment of causation including assignment of zone and industry designation at both the initial review level and the QA review level to ensure that the zone and industry designation have been evaluated properly.

Management
Deepwater Horizon Economic Claims Center
Page 3

*Individual Economic Loss*

The primary factors that caused control deficiencies in the Individual Economic Loss (IEL) claims tested were:

- Incorrect application of the Industry Growth Factor (IGF) to the compensation calculation
- Incorrect determination of claimant's employment address

The Settlement Agreement clearly states that only claimants with hourly jobs are eligible for the IGF and that salaried individuals (including those that also receive commission) are not eligible for the IGF. We noted instances in the IEL claims tested where the claims (all salary plus commission individuals) had the IGF applied in error and were therefore overpaid. It is our understanding that the IGF was applied to these claims because the commission piece of the claimant's pay was considered to be "hourly". We recommend that the CAO continue to review and amend QA procedures to ensure that claims are being reviewed and calculated in accordance with the Settlement Agreement.

*Seafood*

The primary factors that caused control deficiencies in the Seafood claims tested were:

- Utilization of the incorrect year quota information
- Utilization of the incorrect revenue information in the compensation calculations
- Incorrect system identification of a duplicate trip ticket

We recommend that the CAO continue to review and refine QA procedures to ensure that claims are being reviewed and calculated in accordance with the Settlement Agreement.

*Claims Calculation – Summary of Monetary Implications*

Many of the errors identified in our compliance and substantive testing as described above were compliance or documentation exceptions. In those cases in which monetary errors were identified, such errors were extrapolated and evaluated using established statistical sampling methodology. The statistically estimated error in monetary terms was within the range of precision included in our sample design and consequently, an adjustment to the claims related accounts in the financial statements was not considered necessary. The financial implications of such identified monetary errors were judged to be immaterial to the financial statements.

**Other Observations**

We discussed certain aspects of the work being completed by McGladrey LLP to understand the status of their work as it pertained to our audit of the financial statements since McGladrey LLP's work was not complete as of the conclusion of our audit. In particular, we discussed the status of their review and preliminarily identified issues related to documentation in support of Business Economic Loss, including Start-Up and Failed Business Economic Loss claims (BEL, SBEL and FBEL) and Seafood Oyster Leaseholder claims.

Management
Deepwater Horizon Economic Claims Center
Page 4

*BEL (including SBEL and FBEL) Claim P&L's which do not include the date on which they were created*

>The Settlement Agreement Exhibit 4A, paragraph 4, includes a statement that profit and loss (P&L) statements "shall identify the dates on which they are created" (creation date). In addition, two policies have been issued regarding this issue: Policy 85 and Policy 464. Both of these policies re-affirm the settlement agreement statement. McGladrey LLP is evaluating the work performed to validate the P&L creation dates for a BEL claim to be processed for BEL/SBEL/FBEL claims they have reviewed.

>While we noted claims that lacked P&L creation dates in the BEL claims we tested, we also considered other provisions of Exhibit 4A that permit alternative source documents for establishing revenues and expenses for the Benchmark period and looked at such documents in support of the P&L's submitted in evaluating the causation, calculation and payment of a claim. For the claims we tested, such alternative documentation (tax returns, sales and use tax returns, management statements, etc.) supported the claim calculation. We evaluated the creation date and alternative document requirements and determined that they did not represent exclusive requirements in order to process and pay a claim. Considering these factors, we considered the alternative documentation and procedures sufficient to mitigate the underlying risk and concluded this is a compliance documentation item with no financial impact.

*Seafood Oyster Leaseholder claims do not include lease information as of the date of the spill*

>Exhibit 10 of the Settlement Agreement states that Seafood Oyster Leaseholder claimants are to provide a valid oyster lease entered into by Claimant that establishes, as of April 20, 2010, the Claimant as the lessee of the oyster leasehold, or a copy of the actual title for the leasehold. Claimants are required to provide documentation that their leasehold interest is in good standing, such as proof of renewal. McGladrey LLP is evaluating the work performed to validate the claimant as lessee in the Seafood Oyster Leaseholder claims they reviewed.

>While we noted claims where the claimant did not provide proof of good standing in the Seafood Oyster claims we tested, we considered other information to validate that the claimant actually had lease rights and that the lease was in good standing. CLA used additional documentation provided by the claimant or the records publicly available from the Louisiana Department of Wildlife and Fisheries (LDWF) such as: a) Cash sale documents for the pre-renewed version of the lease registered with the local Clerk of Court; b) Judgments of Possession listing the pre-renewed version of the lease as property passing through the estate; c) Act of Transfer of Oyster Leases to Capital documentation showing the prior owner transferred the pre-renewed version of the lease to the corporate entity filing as the claimant; d) Payment receipts issued by the LDWF on a yearly basis indicating the leaseholder paid the annual rent; and e) the LDWF's online leaseholder database.

>We evaluated the claimant provision of good standing documentation and alternative resources available to determine good standing and determined that they did not represent exclusive requirements in order to process and pay a claim. Considering these factors, we considered the alternative documentation and procedures sufficient to mitigate the underlying risk and concluded this is a compliance documentation item with no financial impact.

Management
Deepwater Horizon Economic Claims Center
Page 5

We recommend that the CAO review these provisions and any similar documentation provisions of the Settlement Agreement and provide clear guidance to the court-appointed vendors regarding the collection of these documents and consequence of such documentation not being made available (i.e. incomplete notice, ineligible for payment, etc.).

We will review the status of these comments during our next audit engagement. We have already discussed many of these comments and suggestions with various entity personnel, and we will be pleased to discuss them in further detail at your convenience, to perform any additional study of these matters, or to assist you in implementing the recommendations.

This communication is intended solely for the information and use of management and others within the entity, and is not intended to be, and should not be, used by anyone other than these specified parties.

*CliftonLarsonAllen LLP*

Indianapolis, Indiana
July 22, 2014