UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE GULF | : | |
| OF MEXICO, ON APRIL 20, 2010 | : | SECTION J |
| | : | |
| THIS DOCUMENT RELATES TO: 10-4536 | : | JUDGE BARBIER |
| | : | |
| | : | MAGISTRATE JUDGE SHUSHAN |

_____

CLEAN WATER ACT – PENALTY PHASE

RESPONSE OF THE UNITED STATES TO:
MOTIONS BY MISSISSIPPI AND LOUISIANA REGARDING IMPACT OF THE
PENALTY PHASE ON SUBSEQUENT NRD TRIALS

The United States hereby responds to the Motion filed by Mississippi related to the potential for environmental and economic findings in the Penalty Phase having preclusive impact on future trials for NRD or economic damages. (Rec. Doc. 13656). This paper also responds to Louisiana's letter to Judge Shushan on similar issues. (Letter from Kanner to Shushan, November 10, 2014) (Rec. Doc. 13687).

The United States agrees with both Louisiana and Mississippi that there might well be unnecessary evidence offered in the Penalty Phase that is related to environmental harm – and to some extent economic impacts – resulting from the Spill. That is precisely the reason that the United States had moved the Court for an order concluding that any additional evidence of impacts caused by the spill is unnecessary for purposes of the Penalty Phase, under Fed. R. Evid. 403 and 201. *See* Motion regarding "Seriousness." (Rec. Doc. 12373). But BP opposed that motion, and has since produced contentions, witnesses, and expert reports on those topics. Thus, the United States is in the undesirable position of rebutting BP's contentions by presenting our own evidence to disprove BP's positions.

*NRDA Issues*. The environmental evidence at issue predominantly falls under the "seriousness of the violation or violations" factor (though there is overlap with the "other matters" factor). As a starting point on the "seriousness" factor, BP has already admitted that this was an "extremely serious" violation.[1] However, another component of seriousness relates to the

---

[1] Transcript of Status Conference Re: Penalty Phase, March 21, 2014, at 68:3-7. ("THE COURT: Can BP not admit that this was an extremely serious environmental violation? MR. LANGAN: Your Honor, it was a serious event. THE COURT: Extremely serious? MR. LANGAN: I think we could say that."). The Court further stated regarding this factor: "You can have an extremely serious violation that results in little or no damage, but it could have potential to do catastrophic damage, but it could be good fortune that it doesn't do extensive damage. It doesn't mean it's not an extremely serious violation." Transcript at 84:18-22. Thus, the violation is also serious for all the reasons set out in the Phase One Findings of Fact and Conclusions of Law, Rec. Doc. 13381-1; the evidence from Phase Two regarding the Source Control failings also demonstrates seriousness. No new evidence is needed to prove these aspects of seriousness.

harms caused by or related to the oil spill. Under the CWA, the mere presence of *potential* harm can establish "seriousness"; a showing of *actual* harm is not required. *See, e.g.*, *United States v. Gulf Park Water Co., Inc.*, 14 F. Supp. 2d 854, 859-60 (S.D. Miss. 1998); *United States v. Smithfield Foods, Inc.*, 972 F. Supp. 338, 344 (E.D. Va. 1997); *Sierra Club v. El Paso Gold Mines, Inc.*, No. 01-2163, 2003 WL 25265873, at *8 (D. Colo. Feb. 10, 2003). In this case, there was easily observed actual, measured harm (*e.g.*, dead oiled pelicans).

The Court is already well aware of actual acute impacts of the incident on human health, the environment, and monetary losses, based on previous evidence in the MDL record, in related matters, or matters of general knowledge. Even assuming that there were no other impacts, the consequences were "serious." Regarding these acute consequences of the spill, BP's basic defense is that "it was not as bad as it could have been." To rebut that case, the United States' experts show the actual, measured harms that certainly or likely took place already: hundreds of people were injured in the response actions; many thousands of birds and other animals were found dead; over 1,110 miles of coastline were found oiled (many of which were "heavily" oiled); businesses were disrupted; wages were lost; and entire segments of society were thrown into turmoil. The United States' experts will make those straightforward points.

But there were certainly additional acute or immediate adverse impacts that were less easy to observe, but ones that can still be estimated (*e.g.*, one dead pelican washed up on shore is only one of the many that were killed but never found). There is also potential for long term, chronic impacts that are not yet known (*e.g.*, whether oil exposure to adult pelicans could cause impairments to future offspring). It is these latter categories that begin to delve into the province of the assessment of injuries to natural resources ("NRDA"). But BP's experts (notably, Drs. Shea and Tunnell) analyze these issues, so the United States ends up in the position of presenting

expert testimony demonstrating both extrapolated and potential adverse impacts of the spill. (Drs. Don Boesch and Stanley Rice).[2] As for the potential for ongoing or future harms, BP hopes to show that the environment has recovered and that there is little or no ongoing risk of future harms. *See* Reports of Drs. Taylor, Shea, and Tunnell. BP is simply wrong about the potential for future harms. In order to avoid putting the Court in the position of pre-deciding any NRD issues, the experts for the United States intend to address the potential for future risks in only a very limited fashion, essentially pointing out where BP's story of "full recovery with no future risks" is overstated.

The United States is not asking the Court to make factual findings about the nature or extent of these potential future harms. Those issues delve inescapably into NRDA, which the Court need not do. The United States will propose findings that focus mainly on the direct and immediately observed actual harms, and perhaps some extrapolations. But as for potential chronic harms, even if they are only "potential," they suffice for this factor; there will be no need for the Court to determine whether such potential harms will actually manifest. Nor should the Court make findings that potential harms will *not* actually manifest. As the Court has already stated, this factor cannot "evolve into a NRDA case. We're just not going to go there." Transcript of Status Conference Re: Penalty Phase, March 21, 2014 at 84.[3]

---

[2] For example, Dr. Rice, a toxicologist, was retained for purposes of rebutting BP's toxicology experts; while he did file an initial report, it was based on pre-trial communications in which BP had told the United States they would have a toxicologist. Other witnesses on "seriousness" include Dr. Richard Clapp (actual and potential harm to human health) and Dr. Diane Austin (actual and potential socio-cultural harm). But these seem to be less implicated by the States' motions. Of course, there is also the fact that BP put people at risk of physical harm, for example by deploying so many people and vessels simultaneously, even though many of those people were not actually harmed.

[3] It should be clear that the United States continues to oppose the introduction of evidence that goes into NRD issues. For example, the report of BP's Dr. Shea is almost entirely related to NRD issues.

*Economic/Mitigation Issues*. On this front, BP will seek to show that it spent money on "mitigation" of the spill, seeking a two-fold benefit. First, it will seek a reduction in the amount of civil penalty in Phase Three; second, it will seek a set-off for the States' economic losses in the other cases. For the United States, Dr. Charles Mason opines about the economic harms that persist despite BP's payments in the Gulf region, primarily to rebut the case put forward by BP's Dr. Scott.[4] While the United States has not sued for lost revenues under OPA and has not put the extent of such losses at issue, the ongoing NRD assessment will include certain "economic" calculations of damages such as lost recreational use of natural resources. Thus, the United States agrees that the Court should enter the requested order stating that any finding on "economic" issues, including the impacts of BP's expenditures in response to the spill, will not be binding in the litigation of the States' claims or in any NRD litigation.

*Proposed Disposition*. Accordingly, the Court should grant the States' request and hold that the Penalty Phase will not have preclusive effect on subsequent litigation. Indeed, the Court should accord the same relief to the other three Gulf Coast States. The United States also requests that identical relief be granted to the United States for NRD issues, as the United States is also affirmatively attempting to avoid pre-litigating the NRD case during this Phase. The United States proposes that the following wording should do the job:

> No ruling or finding in the Penalty Phase shall govern the disposition of issues arising in the preparation for or the trial of NRD or economic loss claims of the Gulf States or the United States, or the rights of the parties thereto, including BP. However, nothing in this Order limits any party in any future NRD or economic loss proceeding from citing any ruling from the Penalty Phase for consideration by the Court in such proceeding (even though not dispositive in such proceeding).

---

[4] Dr. Mason also estimates economic harms (*e.g.*, to individuals or businesses) caused by the Spill, using settlement of claims as a proxy, which goes as much to the "seriousness" factor as to the "other matters" or mitigation factor. He also addresses the claims by BP and APC that their operations in the Gulf have positive impacts on the economy of the Gulf in general.

The Court has the power to limit the preclusive effect of its findings. 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4424.1 (2d ed. 2002) ("A court that foresees future litigation may seek to limit directly the possible preclusion consequences of its own judgment.").

In addition to such an order, the Court should avoid making any post-trial Findings of Fact specific to NRD issues (or State economic issues), as such findings are unnecessary for the Penalty determination.

Respectfully submitted,

| | |
|---|---|
| JOYCE R. BRANDA | SAM HIRSCH |
| Acting Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| PETER FROST | SARAH HIMMELHOCH |
| Director, Torts Branch, Civil Division | Senior Litigation Counsel |
| Admiralty and Aviation | NANCY FLICKINGER |
| STEPHEN G. FLYNN | Senior Attorney |
| Assistant Director | RICHARD GLADSTEIN |
| SHARON SHUTLER | PATRICK CASEY |
| MALINDA LAWRENCE | Senior Counsel |
| LAURA MAYBERRY | A. NATHANIEL CHAKERES |
| Trial Attorneys | JUDY HARVEY |
| | RACHEL KING |
| R. MICHAEL UNDERHILL, T.A. | ERICA PENCAK |
| Attorney in Charge, West Coast Office | ABIGAIL ANDRE |
| Torts Branch, Civil Division | RACHEL HANKEY |
| U.S. Department of Justice | BRANDON ROBERS |
| | Trial Attorneys |

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
E-mail:  steve.o'rourke@usdoj.gov

KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH

5

Assistant United States Attorney
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA  70130
Telephone:  (504) 680-3000
Facsimile:  (504) 680-3184
E-mail:  sharon.d.smith@usdoj.gov

Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date:  November 26, 2014.          /s/ Steven O'Rourke
                                      U.S. Department of Justice