

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: Oil Spill by the Oil Rig         MDL NO. 2179
       "Deepwater Horizon" in the Gulf
       of Mexico, on April 20, 2010        SECTION J

Applies to: *All Cases*                JUDGE BARBIER
                                 MAGISTRATE JUDGE SHUSHAN

---

### REPORT BY THE CLAIMS ADMINISTRATOR OF THE DEEPWATER HORIZON ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT ON THE STATUS OF CLAIMS REVIEW

| STATUS REPORT NO. | 27 | DATE | NOVEMBER 26, 2014 |
|---|---|---|---|

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In re:  Oil Spill by the Oil Rig                MDL NO. 2179
       "Deepwater Horizon" in the Gulf
       of Mexico, on April 20, 2012        SECTION J

Applies to: *All Cases*                           JUDGE BARBIER
                                            MAGISTRATE JUDGE SHUSHAN

<u>REPORT BY THE CLAIMS ADMINISTRATOR OF THE DEEPWATER HORIZON
ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT ON THE
STATUS OF CLAIMS REVIEW</u>

<u>STATUS REPORT NO. 27, DATED NOVEMBER 26, 2014</u>

The Claims Administrator of the Deepwater Horizon Economic and Property Settlement Agreement (Settlement Agreement) submits this Report to inform the Court of the status of the implementation of the Settlement Agreement as of October 31, 2014.  The Claims Administrator will provide any other information in addition to this Report as requested by the Court.

      I.       STATUS OF THE CLAIMS REVIEW PROCESSES AND CLAIM PAYMENTS

   A.  <u>Claim Submissions.</u>

      1.  **Registration and Claim Forms.**

The Claims Administrator opened the Settlement Program with needed functions staffed and operating on June 4, 2012, just over 30 days after the Claims Administrator's appointment. The Claims Administrator's Office and Vendors (CAO)[1] have received 228,979 Registration Forms and 288,815 Claim Forms since the Program opened on June 4, 2012, as shown in the Public Statistics for the Deepwater Horizon Economic and Property Damages Settlement (Public Report) attached as Exhibit A.  Additionally, claimants have begun, but not fully completed and

---

[1] "Claims Administrator's Office", as used within this report, refers to the Claims Administrator and, where applicable, Court-Supervised Settlement Program vendors working with and under the Claims Administrator.

submitted, 12,109 Claim Forms.  The Forms are available online, in hard copy, or at Claimant Assistance Centers located throughout the Gulf.

Of the total Claim Forms submitted and the Claim Forms begun but not fully completed and submitted, 8.4% have been filed or are being filed within the Seafood Program, 16.9% have been filed or are being filed within the Individual Economic Loss (IEL) framework, and 39.1% have been filed or are being filed within the Business Economic Loss (BEL) framework (including Start-Up and Failed BEL Claims).  *See* Ex. A, Table 2.  Deepwater Horizon (DWH) staff at the Claimant Assistance Centers assisted in beginning and/or completing 37,682 of these Claim Forms.  *See* Ex. A, Table 3.

### 2.   Minors, Incompetents, and Deceased Claimants.

The table below describes the claims filed on behalf of minors, incompetents, and deceased claimants in the Settlement Program.

| Table 1.  Minors, Incompetents, and Deceased Claimants. | | | | | |
|---|---|---|---|---|---|
| | **Status** | **New Since Last Report** | **No Longer a Minor/Incompetent or Reclassified as an Estate Since Last Report** | **Change Since Last Report** | **Total Claimants** |
| **A.   Minor Claimants** | | | | | |
| 1. | **Claims Filed** | 0 | 0 | 0 | 58 |
| 2. | **Claims Within GADL Review** | 0 | 0 | 0 | 5 |
| 3. | **Eligible for Payment** | 1 | 0 | +1 | 14 |
| 4. | **Approval Orders Filed** | 2 | N/A | +2 | 13 |
| **B.   Incompetent Claimants** | | | | | |
| 1. | **Claims Filed** | 3 | 1 | +2 | 123 |
| 2. | **Claims Within GADL Review** | 0 | 0 | 0 | 2 |
| 3. | **Eligible for Payment** | 1 | 1 | 0 | 64 |
| 4. | **Approval Orders Filed** | 3 | N/A | +3 | 59 |
| **C.   Deceased Claimants** | | | | | |
| 1. | **Claims Filed** | 6 | 3 | +3 | 589 |
| 2. | **Eligible for Payment** | 5 | 3 | +2 | 223 |
| 3. | **Approval Orders Filed** | 1 | N/A | +1 | 183 |

### 3.   Third Party Claims.

The CAO receives, processes, and pays the claims and/or liens asserted by attorneys, creditors, governmental agencies, or other third parties (Third Party Claims) against the payments to be made by the CAO to eligible claimants under the Settlement Agreement in accordance with Court Approved Procedure Order No. 1 (as entered September 9, 2012, and amended March 11, 2013).

The CAO requires a third party claimant to submit enforcement documentation soon after the initial Third Party Claim assertion.  If a Third Party Claim assertion does not contain claimant-identifying information and/or the required enforcement documentation, the CAO sends the third party claimant an Acknowledgment Notice providing the third party claimant 20 days to submit the claimant-identifying information and/or the specified documentation required to support the Third Party Claim.  If the third party claimant fails to submit the responsive information/documentation within 20 days, the CAO disallows the Third Party Claim and issues a Disallowed Notice to the third party claimant.  The CAO issues a Notice of Enforced Third Party Claim to each claimant and third party claimant as soon as the CAO receives sufficient enforcement documentation, regardless of where any underlying Settlement Program Claim is in the review process.  The claimant may, but is not required to, object to the Third Party Claim at this time.  After the CAO sends an Eligibility Notice to the affected Settlement Program Claimant against whom an Enforced Third Party Claim has been asserted (meaning that both the underlying claim and the Third Party Claim are payable), the CAO sends the claimant/claimant's attorney and the third party claimant a Notice of Valid Third Party Claim, and the claimant has twenty (20) days to notify the CAO of any objection to the Third Party Claim.

The CAO continues to process and pay Third Party Claims as reflected in Table 2 below.

| | Type of Third Party Claim ("TPC") | TPCs Asserted | TPCs Asserted Against Claimants With a DHECC ID | TPCs[2] Asserted Against Payable Claims | Valid TPCs Asserted Against Payable Claims | Claims with TPCs Paid/ Ready for Payment (TPClmt) | Claims with TPCs Paid/ Ready for Payment (Clmt) |
|---|---|---|---|---|---|---|---|
| | **Table 2.  Third Party Claims.** | | | | | | |
| 1. | Attorney's Fees | 2,538 | 2,347 | 502 | 322 | 351 | 629 |
| 2. | IRS or State Tax Levies | 1,041 | 873 | 70 | 59 | 61 | 95 |
| 3. | Individual Domestic Support Obligations | 446 | 300 | 114 | 86 | 86 | 113 |
| 4. | Blanket State-Asserted Multiple Domestic Support Obligations | 4 states | N/A | N/A | N/A | 0 | 0 |
| 5. | 3rd Party Lien/Writ of Garnishment | 968 | 447 | 43 | 18 | 12 | 12 |
| 6. | Claims Preparation/ Accounting | 4,663 | 4,477 | 188 | 150 | 86 | 98 |
| 7. | TOTAL | 9,656 | 8,444 | 917 | 635 | 596 | 947[3] |

The CAO sends a Notice of Third Party Claim Dispute to all parties involved in a disputed Valid Third Party Claim.  If the claimant and third party claimant are unable to resolve their dispute by agreement and if the dispute is over a Third Party Claim for attorney's fees or fees associated with work performed in connection with a Settlement Program Claim, the claimant and third party claimant may participate in the Court-approved Third Party Claims Dispute Resolution Process and will receive a Request for Third Party Claim Dispute Resolution Form with the Notice of Third Party Claim Dispute.

Table 3 provides additional information about participation in the Third Party Claims Dispute Resolution Process.

---

[2] Although the CAO will not know whether a Valid Third Party Claim has been asserted against a payable claim until the Eligibility Notice is sent, the streamlined enforcement requirements allow the CAO to evaluate enforcement documentation earlier in the process.

[3] A Third Party Claim can be asserted against one or more Settlement Program claims.  Additionally, if the Third Party Claim amount is in dispute, the CAO pays the claimant the undisputed portion of the Settlement Payment.  For these reasons, this total may not be equal to the total of the two preceding columns.

| Table 3.  Third Party Claims Dispute Resolution Process. | | | | |
|---|---|---|---|---|
| Eligible Disputes | Request Forms Received for Eligible Disputes | Records Provided to Adjudicator | Disputes Withdrawn | Final Decisions[4] |
| 112 | 91 | 65 | 59 | 30 |

If the dispute is over a Third Party Claim asserted by a state or federal agency, the claimant must resolve the dispute in accordance with the applicable agency's procedures.  If the dispute is over the amount of a Third Party Claim based on a final judgment of a state or federal court, the CAO must receive either a written agreement between the parties or a copy of a subsequent modifying court order in order to validate the claimant's objection[5]; otherwise, the CAO will issue payment in satisfaction of the judgment to the third party claimant.

To date, the CAO has removed 1,744 lien holds due to parties releasing their Third Party Claims or resolving disputes.

**B.  Claims Review.**

The CAO completed its first claim reviews and issued its first outcome notices on July 15, 2012, and its first payments on July 31, 2012.  There are many steps involved in reviewing a claim so that it is ready for a notice.

**1.  Identity Verification.**

The Claimant Identity Verification review is the first step in the DWH claims review process.  The Identity Verification team conducts searches based on the Taxpayer Identification Numbers (TIN) of claimants to confirm that both the claimant's name and TIN exist and correspond with each other.   The Identity Verification team has initiated verifications for

---

[4] Several factors affect when a Dispute is ripe for the Adjudicator to issue a Final Decision, including whether the Adjudicator has requested additional documentation or granted a Telephonic Hearing.

[5] For a claimant to object to a Third Party Claim based on a final judgment of a state or federal court, additional evidence beyond a mere objection is required for the CAO to delay or deny payment of the court-ordered debt.

202,446 claimants.  Of those, the CAO has matched the TIN and claimant's name to public records databases and verified identity for 110,055 claimants from the initial query through LexisNexis and/or Dun & Bradstreet.  The CAO has reviewed the remaining 92,391 claimants to determine whether claimant identity could be verified after searching for typographical errors and name changes or after reviewing official documentation from the Internal Revenue Service or Social Security Administration.  Of the remaining 92,391 claimants, the CAO has verified the identity of 88,293.

If the CAO cannot verify a claimant's identity during review, but it appears that additional documentation may allow the CAO to verify the claimant's identity, the CAO issues a Verification Notice to the claimant requesting such documentation.  Verification Notice types include an SSN Notice, an ITIN Notice, and an EIN Notice.  Claimants may receive more than one type of Verification Notice depending on the claimant's Taxpayer Type or if the claimant requests a change in his Taxpayer Type or TIN.

The CAO reviews the documentation that claimants submit in response to the Verification Notice to determine whether it is sufficient to verify identity.  The table below contains information on the number of claimants verified by the CAO during an initial Identity Verification review, in addition to the type and number of TIN Verification Notices issued when the CAO could not verify identity after the initial review.

| Table 4.  Identity Verification Review Activity[6]. | | | | |
|---|---|---|---|---|
| | **Claimant Status** | **Total Claimants** | **Total Claimants Verified** | **Claimants Remaining to be Verified** |
| 1. | Under Review | 604 | N/A | 604 |
| 2. | Verified During Review | 69,898 | 69,898 | N/A |
| 3. | SSN Notice Issued After Review | 2,815 | 2,233 | 582 |
| 4. | ITIN Notice Issued After Review | 404 | 352 | 52 |
| 5. | EIN Notice Issued After Review | 18,382 | 15,602 | 2,780 |
| 6. | EIN & ITIN Notice Issued After Review | 44 | 31 | 13 |
| 7. | EIN & SSN Notice Issued After Review | 239 | 173 | 66 |
| 8. | EIN, ITIN & SSN Notice Issued After Review | 5 | 4 | 1 |
| 9. | Total | **92,391** | **88,293** | **4,098** |

The following table contains information about the average time in days for claimants to provide documentation sufficient to verify the claimant's identity after receiving a Verification Notice.

| Table 5.  Average Time to Cure Verification Notice. | | |
|---|---|---|
| | **Notices Type** | **Average Days to Cure** |
| 1. | SSN Notice | 54 |
| 2. | ITIN Notice | 31 |
| 3. | EIN Notice | 35 |

When a claimant submits a Subsistence claim stating that he or she fished or hunted to sustain his or her basic personal and/or family's dietary needs, the CAO verifies the identities of the claimed family members.  To do so, the CAO attempts to match each claimed family member's name and TIN to ensure that the family member exists and that the family member was not deceased prior to or at the time of the Spill or is not an overlapping dependent already identified.  The CAO first attempts to match each family member's name and TIN to public records databases through LexisNexis.  To date, the CAO has sent 64,918 family members'

[6] The reporting associated with this Table has been streamlined, as Table 4 in this Court Status Report now provides elements of Tables 4 and 5 from previous Court Status Reports.

names and TINs, associated with 21,978 claims, to LexisNexis for verification.  If a claimed family member's identity cannot be verified through LexisNexis, the CAO reviews the claim file to determine whether the claimed family member's identity can be verified using information contained within the file.  After each claimed family member's identity has been verified or reviewed, the Subsistence team reviews the claim to determine eligibility for payment.

| Table 6.  Subsistence Family Member Identity Verification Activity | | | | | |
|---|---|---|---|---|---|
| | | Awaiting Review | Change from Last Report | Reviewed | Change from Last Report |
| 1. | **Number of Claims** | 0 | 0 | 11,683 | 1,149 |
| 2. | **Number of Family Members** | 0 | 0 | 49,742 | 5,558 |

### 2.  Employer Verification Review (EVR).

The EVR process ensures that all employees of the same business are treated uniformly and that each business is placed in the proper Zone.  The review also walks through the analysis necessary to assign the proper NAICS code to a business.  The EVR team has completed the EVR analysis for 250,031 businesses and rental properties.

From October 1, 2014, through October 31, 2014, the team completed the EVR process for 3,845 businesses and rental properties, and 3,122 business and rental properties were identified for review.  The CAO continues to perform its Employer Verification Review for new businesses and rental properties on a first-in, first-out basis.

### 3.  Exclusions.

The Exclusions review process ensures that claims and claimants excluded under the Settlement Agreement are appropriately denied.  The Exclusions team guides the reviewers and the EVR team when questions arise during the Exclusion review.  Table 7 below shows the

number of Denial Notices issued to date for each Exclusion Reason and the team responsible for making such a determination.

| Table 7.  Exclusions. | | | | |
|---|---|---|---|---|
| | **Exclusion Reason** | **Team Responsible** | **Denial Notices Since Last Report** | **Total Denial Notices** |
| 1. | GCCF Release | Exclusions | 13 | 7,784 |
| 2. | BP/MDL 2179 Defendant | | 3 | 407 |
| 3. | US District Court for Eastern District of LA | | 1 | 23 |
| 4. | Not a Member of the Economic Class | Claims Reviewers | 11 | 379 |
| 5. | Bodily Injury | | 0 | 6 |
| 6. | BP Shareholder | | 0 | 8 |
| 7. | Transocean/Halliburton Claim | | 0 | 0 |
| 8. | Governmental Entity | Claims Reviewers/ EVR | 37 | 872 |
| 9. | Oil and Gas Industry | | 41 | 1,236 |
| 10. | BP-Branded Fuel Entity | | 17 | 241 |
| 11. | Menhaden Claim | EVR | 0 | 18 |
| 12. | Financial Institution | | 4 | 338 |
| 13. | Gaming Industry | | 1 | 734 |
| 14. | Insurance Industry | | 7 | 235 |
| 15. | Defense Contractor | | 3 | 395 |
| 16. | Real Estate Developer | | 15 | 417 |
| 17. | Trust, Fund, Financial Vehicle | | 1 | 18 |
| 18. | **Total Denial Notices from Exclusions** | | **154** | **13,111** |

## 4.  Claimant Accounting Support Reviews.

A special team handles Claimant Accounting Support (CAS) reviews.   CAS reimbursement is available under the Settlement Agreement for IEL, BEL, and Seafood claims. After a claim has been determined to be payable and the Compensation Amount has been calculated, the CAS team reviews accounting invoices and CAS Sworn Written Statements submitted by the claimant.  Table 8 includes information on the number of CAS reviews the

CAO has completed to date, whether the Accounting Support documentation was complete, and the dollar amounts reimbursed for each Claim Type.

| | | Table 8.  Claimant Accounting Support. | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Claim Type | CAS Review Results | | | | Total CAS Review Results | | CAS Dollar Amount Reimbursed | |
| | | Complete | | Incomplete | | | | | |
| | | Since Last Report | Total to Date | Since Last Report | Total to Date | Since Last Report | Total to Date | Since Last Report | Total to Date |
| 1. | BEL | 753 | 12,505 | 159 | 1,560 | 912 | 14,065 | $869,181.64 | $17,679,204.78 |
| 2. | IEL | 67 | 3,145 | 45 | 684 | 112 | 3,829 | $8,651.49 | $379,516.94 |
| 3. | Seafood | 18 | 3,931 | 6 | 799 | 24 | 4,730 | $6,882.50 | $1,601,871.00 |
| 4. | TOTAL | 838 | 19,581 | 210 | 3,043 | 1,048 | 22,624 | $884,715.63 | $19,660,592.72 |

## 5.  Quality Assurance Review.

The Quality Assurance (QA) process addresses three fundamental needs of the Settlement Program: (a) it ensures that all claims reviewed within the system environment are reviewed in accordance with the provisions of the Settlement Agreement by targeting anomalous claim results through data metrics analysis; (b) it provides a mechanism to monitor reviewer performance and the tools necessary to efficiently and effectively provide feedback to reviewers; and (c) it identifies areas of review resulting in high discrepancy rates that require retraining or refined review procedures and data validations.

The CAO has implemented a reviewer follow-up process for all claim types reviewed within the system environment.  The CAO provides daily follow-up to reviewers in the event a QA review of a particular claim produces a result different than that of the original review.  The CAO also has a report that identifies specific reviewers who may require retraining and reveals whether there are issues that warrant refresher training for all reviewers.  Table 9 shows, by Claim Type, the number of claims identified for QA review through the system of record

database QA process, as well as the number of QA reviews which were completed, the number

in progress, and the number awaiting review.

| | Claim Type | Total Reviews Needing QA To Date | QA Reviews Completed | % of QA Reviews Completed | QA Reviews in Progress | Claims Awaiting QA Review | QA Reviews Completed Since Last Report |
|---|---|---|---|---|---|---|---|
| | **Table 9.  Quality Assurance Reviews.[9]** | | | | | | |
| 1. | **Seafood** | 25,457 | 25,351 | 99.6% | 72 | 34 | 59 |
| 2. | **IEL** | 34,600 | 33,200 | 96.0% | 950 | 450 | 1,531 |
| 3. | **BEL** | 33,371 | 32,313 | 96.8% | 375 | 683 | 2,034 |
| 4. | **Start-Up BEL** | 2,614 | 2,558 | 97.9% | 19 | 37 | 143 |
| 5. | **Failed BEL** | 2,419 | 2,365 | 97.8% | 17 | 37 | 138 |
| 6. | **Coastal RP** | 21,822 | 21,803 | 99.9% | 10 | 9 | 144 |
| 7. | **Wetlands RP** | 7,741 | 7,582 | 97.9% | 80 | 79 | 632 |
| 8. | **RPS** | 949 | 949 | 100.0% | 0 | 0 | 4 |
| 9. | **Subsistence** | 47,268 | 36,294 | 76.8% | 1,079 | 9,895 | 3,731 |
| 10. | **VoO** | 7,930 | 7,926 | 99.9% | 0 | 4 | 12 |
| 11. | **VPD** | 1,532 | 1,519 | 99.2% | 2 | 11 | 7 |
| 12. | **TOTAL** | **185,703** | **171,860** | **92.5%** | **2,604** | **11,239** | **8,435** |

### 6.   Claim Type Review Details.

Table 10 provides information, by Claim Type, on the number of claims filed, the

number of claims that have been reviewed to Notice, the number of claims remaining to be

reviewed to Notice, and the number of claims reviewed to either a Notice or "Later Notice" to

date.  Table 10 divides the claims reviewed to a "Later Notice" into separate sections: (1) claims

receiving a Notice based on CAO review following the submission of additional materials by a

---

[9] Table 9 only includes system generated data that arise from Quality Assurance reviews of initial claim reviews that are performed within the confines of the system environment.  Separate from the initial claim review, there are numerous ancillary steps within the overall claim review process in which Quality Assurance activities and measures are performed outside of the system environment.

claimant in response to an Incompleteness Notice, and (2) claims receiving a Notice following a Reconsideration review conducted by the CAO.

| Table 10.  Throughput Analysis of Claims Filed and Notices Issued. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **A. Claims Reviewed to First Notice** | | | | | | | | | |
| | **Claim Type** | **Status of All Claims Filed** | | | | **Productivity From 10/1/14 Through 10/31/14** | | | |
| | | **Total Claims Filed To Date** | **Reviews Completed to Notice or Closed** | | **Claims Remaining to Review** | | **New Claims Filed** | **Avg. Daily Claims Filed** | **Reviews Completed to First Notice** | **Avg. Daily Reviews to First Notice** |
| **1.** | Seafood | 24,741 | 24,454 | 98.8% | 287 | 1.2% | 5 | <1 | 13 | <1 |
| **2.** | IEL | 44,306 | 41,025 | 92.6% | 3,281 | 7.4% | 353 | 11 | 468 | 15 |
| **3.** | IPV/FV | 296 | 284 | 95.9% | 12 | 4.1% | 2 | <1 | 1 | <1 |
| **4.** | BEL | 104,921 | 67,070 | 63.9% | 37,851 | 36.1% | 1,015 | 33 | 3,339 | 108 |
| **5.** | Start-Up BEL | 5,734 | 4,326 | 75.4% | 1,408 | 24.6% | 60 | 2 | 100 | 3 |
| **6.** | Failed BEL | 3,902 | 3,155 | 80.9% | 747 | 19.1% | 34 | 1 | 79 | 3 |
| **7.** | Coastal  RP | 37,153 | 36,820 | 99.1% | 333 | 0.9% | 253 | 8 | 278 | 9 |
| **8.** | Wetlands RP | 17,523 | 9,279 | 53.0% | 8,244 | 47.0% | 234 | 8 | 573 | 18 |
| **9.** | RPS | 1,696 | 1,669 | 98.4% | 27 | 1.6% | 15 | <1 | 4 | <1 |
| **10.** | Subsistence | 38,325 | 17,247 | 45.0% | 21,078 | 55.0% | 170 | 5 | 1,727 | 56 |
| **11.** | VoO | 8,769 | 8,725 | 99.5% | 44 | 0.5% | 0 | 0 | 9 | <1 |
| **12.** | VPD | 1,449 | 1,411 | 97.4% | 38 | 2.6% | 0 | 0 | 4 | <1 |
| **13.** | **TOTAL** | **288,815** | **215,465** | **74.6%** | **73,350** | **25.4%** | **2,141** | **69** | **6,595** | **213** |
| **B. Claims Reviewed to Later Notice** | | | | | | | | | |
| | **Claim Type** | **Initial or Preliminary Incompleteness Response** | | | **Follow-Up Incompleteness Responses** | | | **Requests for Reconsideration** | | |
| | | **Total Responses** | **Claims with Later Notice** | **Remaining Claims** | **Total Responses** | **Claims with Later Notice** | **Remaining Claims** | **Total Requests** | **Claims with Later Notice** | **Remaining Claims** |
| **1.** | Seafood | 5,950 | 5,485 | 465 | 2,864 | 2,634 | 230 | 3,762 | 3,472 | 290 |
| **2.** | IEL | 17,545 | 15,475 | 2,070 | 8,891 | 7,612 | 1,279 | 5,720 | 5,019 | 701 |
| **3.** | IPV/FV | 103 | 96 | 7 | 36 | 35 | 1 | 39 | 37 | 2 |
| **4.** | BEL | 36,635 | 21,396 | 15,239 | 14,759 | 8,830 | 5,929 | 7,112 | 4,102 | 3,010 |
| **5.** | Start-Up BEL | 2,485 | 1,777 | 708 | 1,467 | 893 | 574 | 667 | 345 | 322 |
| **6.** | Failed BEL | 1,085 | 836 | 249 | 661 | 462 | 199 | 590 | 420 | 170 |
| **7.** | Coastal  RP | 5,649 | 5,521 | 128 | 1,643 | 1,598 | 45 | 2,035 | 1,995 | 40 |
| **8.** | Wetlands RP | 446 | 316 | 130 | 98 | 70 | 28 | 557 | 435 | 122 |
| **9.** | RPS | 321 | 315 | 6 | 117 | 113 | 4 | 215 | 211 | 4 |
| **10.** | Subsistence | 6,903 | 2,562 | 4,341 | 2,017 | 669 | 1,348 | 586 | 304 | 282 |

| Table 10.  Throughput Analysis of Claims Filed and Notices Issued. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 11. | VoO | 945 | 926 | 19 | 404 | 390 | 14 | 634 | 624 | 10 |
| 12. | VPD | 784 | 750 | 34 | 364 | 344 | 20 | 263 | 247 | 16 |
| 13. | TOTAL | 78,851 | 55,455 | 23,396 | 33,321 | 23,650 | 9,671 | 22,180 | 17,211 | 4,969 |

### C.  Claim Payments.

#### 1.  Notices and Payments.

Tables 4 and 5 of the Public Report attached in Exhibit A provide detail on the notices and payments issued to date.  As of October 31, 2014, the CAO has issued 75,323 Eligibility Notices to unique claims with Payment Offers totaling $5.27 billion.  As of that date, the CAO has made $4.23 billion in payments on 70,763 claims.

#### 2.  Claimants in Bankruptcy.

The CAO reviews each claimant who indicates an open bankruptcy on the Registration Form (Debtor Claimant) to determine whether the claimant has submitted sufficient documentation from the applicable bankruptcy court to issue payment.  If the CAO determines that the claimant is not a Debtor Claimant per the Procedure for Disposition of Claims by Claimants in Bankruptcy (Proc-445), or if the claimant submits sufficient documentation for the CAO to issue payment on all active claims, the CAO will remove the Bankruptcy Hold.

Table 11 provides information about the status of claimants identified as Debtor Claimants, including information on notices issued to those claimants.

| Table 11.  Claimants in Bankruptcy. | | | |
|---|---|---|---|
| 1. | Identified Claimants in Bankruptcy | Total | Change Since Last Report |
| (a) | Claimants with Active Bankruptcy Holds | 1,957 | +11 |
| (b) | Claimants with Removed Bankruptcy Holds | 963 | +6 |
| 2. | Bankruptcy Notices Issued | Total | Change Since Last Report |
| (a) | Debtor Claimant in Bankruptcy Notices | 370 | +12 |
| (b) | Bankruptcy Trustee Communication Notices | 86 | +5 |
| (c) | Bankruptcy Trustee Informational Notices | 66 | +3 |

D. **Re-Reviews, Reconsiderations, and Appeals**.

    1.  **Re-Reviews and Outcomes.**

The CAO implemented a Re-Review process beginning on January 18, 2013, that provides claimants with the opportunity to request a Re-Review of their claim within 30 days of the issuance of an Eligibility or Denial Notice if the claimant has additional documentation not previously submitted to support its claim.  Following a Re-Review, claimants receive a Post Re-Review Notice, from which they may then request Reconsideration if they wish.  To date, there have been 82,858 Eligibility or Denial Notices issued from which claimants can or could seek Re-Review.  Of those, 1,821 are still within the 30-day window to seek Re-Review and Re-Review has not yet been requested, leaving 81,037 claims for which the window to seek Re-Review has passed.  Of those, claimants have requested Re-Review of 6,367 claims.  Thus, the rate of Re-Review from all final determinations is 7.9%.  The rate of Re-Review from Eligibility Notices is 4.4%, while the rate of Re-Review from Denial Notices is 16.2%.

Table 12 summarizes the Re-Reviews the CAO has completed, the number of Post Re-Review Notices the CAO has issued, and whether the outcome of the Re-Review resulted in an award that was higher than (↑), lower than (↓),or the same as (↔) the outcome previously issued. The table also includes information on whether an original Exclusion Denial was confirmed or overturned on Re-Review.

| Table 12.  Re-Reviews. | | | | | |
|---|---|---|---|---|---|
| **A.  Re-Review Requests and Reviews** | | | | | |
| | **Claim Type** | **Requests Received To Date** | **Reviews Completed To Date** | | |
| | | | **Total** | **Completed Since Last Report** | **Average Weekly Reviews** |
| **1.** | Seafood | 839 | 828 | 6 | 9 |
| **2.** | IEL | 828 | 761 | 23 | 8 |
| **3.** | IPV/FV | 11 | 11 | 0 | <1 |
| **4.** | BEL | 2,571 | 2,003 | 181 | 22 |
| **5.** | Start-Up BEL | 143 | 121 | 4 | 1 |
| **6.** | Failed BEL | 187 | 163 | 6 | 2 |
| **7.** | Coastal RP | 1,016 | 1,006 | 0 | 11 |
| **8.** | Wetlands RP | 351 | 262 | 8 | 3 |
| **9.** | RPS | 92 | 91 | 0 | 1 |
| **10.** | Subsistence | 216 | 170 | 40 | 2 |
| **11.** | VoO | 61 | 61 | 2 | <1 |
| **12.** | VPD | 52 | 50 | 0 | <1 |
| **13.** | TOTAL | **6,367** | **5,527** | **270** | **61** |
| **B.  Re-Review Notices Issued** | | | | | |
| | **Claim Type** | **Notices Issued or Claims Closed** | **Outcome of Re-Review Notice** | | |

| | **Claim Type** | **Total to Date** | **Weekly Average** | **Compensation Amount for Eligible Claims** | | | **Exclusions/Denials** | |
|---|---|---|---|---|---|---|---|---|
| | | | | ↑ | ↓ | ↔ | **Confirmed** | **Overturned** |
| **1.** | Seafood | 778 | 9 | 413 | 40 | 229 | 91 | 5 |
| **2.** | IEL | 700 | 8 | 168 | 61 | 229 | 236 | 6 |
| **3.** | IPV/FV | 11 | <1 | 0 | 0 | 0 | 11 | 0 |
| **4.** | BEL | 1,718 | 19 | 392 | 66 | 111 | 1,137 | 12 |
| **5.** | Start-Up BEL | 92 | 1 | 16 | 3 | 5 | 67 | 1 |
| **6.** | Failed BEL | 140 | 2 | 1 | 3 | 0 | 136 | 0 |
| **7.** | Coastal RP | 1,001 | 11 | 47 | 4 | 118 | 797 | 35 |
| **8.** | Wetlands RP | 256 | 3 | 17 | 7 | 28 | 197 | 7 |
| **9.** | RPS | 91 | 1 | 1 | 0 | 3 | 74 | 13 |
| **10.** | Subsistence | 96 | 1 | 42 | 11 | 14 | 29 | 0 |
| **11.** | VoO | 60 | <1 | 7 | 5 | 17 | 29 | 2 |
| **12** | VPD | 46 | <1 | 20 | 0 | 13 | 12 | 1 |
| **13.** | TOTAL | **4,989** | **55** | **1,124** | **200** | **767** | **2,816** | **82** |

### 2.  Reconsideration Reviews and Outcomes.

To date, there have been 160,029 Eligibility, Denial, or Incompleteness Denial Notices issued from which claimants can or could seek Reconsideration.  Of those, 3,890 are still within the 30 day window to seek Reconsideration and Reconsideration has not yet been requested, leaving 156,139 claims for which the window to seek Reconsideration has passed.  Of those, claimants have requested Reconsideration of 22,180 claims.  Thus, the rate of Reconsideration from all final determinations is 14.2%.  The rate of Reconsideration from Eligibility Notices is 5.3%, while the rate of Reconsideration from Denial and Incompleteness Denial Notices is 23.5%.

Table 13 summarizes the Reconsiderations the CAO has completed, the number of Post-Reconsideration Notices the CAO has issued, and whether the outcome of the Reconsideration review resulted in an award that was higher than (↑), lower than (↓), or the same as (↔) the outcome previously issued. The table also includes information on whether an original Exclusion Denial was confirmed or overturned on Reconsideration.

| | Table 13.  Reconsideration. | | | | |
|---|---|---|---|---|---|
| | **A. Reconsideration Requests and Reviews** | | | | |
| | **Claim Type** | **Requests Received To Date** | **Reviews Completed To Date** | | |
| | | | **Total** | **Completed Since Last Report** | **Average Weekly Reviews** |
| **1.** | **Seafood** | 3,762 | 3,586 | 11 | 32 |
| **2.** | **IEL** | 5,720 | 5,342 | 181 | 48 |
| **3.** | **IPV/FV** | 39 | 37 | 0 | <1 |
| **4.** | **BEL** | 7,112 | 5,885 | 352 | 53 |
| **5.** | **Start-Up BEL** | 667 | 550 | 12 | 5 |
| **6.** | **Failed BEL** | 590 | 536 | 35 | 5 |
| **7.** | **Coastal RP** | 2,035 | 2,011 | 59 | 18 |
| **8.** | **Wetlands RP** | 557 | 446 | 8 | 4 |
| **9.** | **RPS** | 215 | 212 | 2 | 2 |
| **10.** | **Subsistence** | 586 | 459 | 73 | 4 |
| **11.** | **VoO** | 634 | 629 | 0 | 6 |
| **12.** | **VPD** | 263 | 257 | 3 | 2 |
| **13.** | **TOTAL** | **22,180** | **19,950** | **736** | **180** |
| | **B.  Reconsideration Notices Issued** | | | | |
| | **Claim Type** | **Notices Issued or Claims Closed** | | **Outcome of Reconsideration Notice** | | | |
| | | **Total to Date** | **Weekly Average** | **Compensation Amount for Eligible Claims** | | | **Exclusions/Denials** | |
| | | | | ↑ | ↓ | ↔ | **Confirmed** | **Overturned** |
| **1.** | **Seafood** | 3,472 | 30 | 777 | 162 | 486 | 1,711 | 336 |
| **2.** | **IEL** | 5,019 | 44 | 145 | 112 | 383 | 3,172 | 1,207 |
| **3.** | **IPV/FV** | 37 | <1 | 0 | 0 | 0 | 36 | 1 |
| **4.** | **BEL** | 4,102 | 36 | 342 | 123 | 241 | 1,878 | 1,518 |
| **5.** | **Start-Up BEL** | 345 | 3 | 10 | 11 | 13 | 144 | 167 |
| **6.** | **Failed BEL** | 420 | 4 | 1 | 6 | 2 | 332 | 79 |
| **7.** | **Coastal RP** | 1,995 | 17 | 97 | 24 | 402 | 1,215 | 257 |
| **8.** | **Wetlands RP** | 435 | 4 | 25 | 1 | 55 | 329 | 25 |
| **9.** | **RPS** | 211 | 2 | 1 | 0 | 4 | 186 | 20 |
| **10.** | **Subsistence** | 304 | 3 | 13 | 4 | 10 | 231 | 46 |
| **11.** | **VoO** | 624 | 5 | 58 | 6 | 122 | 381 | 57 |
| **12** | **VPD** | 247 | 2 | 48 | 5 | 17 | 110 | 67 |
| **13.** | **TOTAL** | **17,211** | **149** | **1,517** | **454** | **1,735** | **9,725** | **3,780** |

   **3.  Appeals.**

   **(a) BP Appeals.**

To date, the CAO has issued 20,320 Eligibility Notices that meet or exceed the threshold amount rendering them eligible for appeal by BP.  Of those, 253 Notices are still within the timeframe in which BP can file an appeal and BP has not yet done so, leaving 20,067 Notices that BP has either appealed or for which the deadline for BP to file an appeal has passed.  Of those 20,067 Notices, BP has filed 4,728 appeals, a 23.6% appeal rate.  Table 14 provides summary information on the status of BP appeals.

BP has filed 289 appeals solely for preservation purposes relating to BP's pending petition for certiorari to the Supreme Court; therefore, these appeals were not assigned to an Appeal Panel and accordingly appear on the table below as Administratively Closed. Of the 289 preservation appeals, 132 were filed since the previous Court Status Report.

| | Table 14.  Status of BP Appeals. | | | |
|---|---|---|---|---|
| | **A.   Appeal Filing/Resolution** | | | |
| | **Status** | **As of Last Report** | **Since Last Report** | **Total** |
| **1.** | **BP Appeals Filed** | **4,410** | **318** | **4,728** |
| **2.** | **Resolved Appeals** | **4,093**[10] | **248** | **4,341** |
| **(a).** | **Resolved by Panel Decision** | 1,494 | 39 | 1,533 |
| **(b).** | **Resolved by Parties** | 470 | 50 | 520 |
| **(c).** | **Remand to Claims Administrator** | 80 | 3 | 83 |
| **(d).** | **Administratively Closed** | 165 | 132 | 297 |
| **(e).** | **Withdrawn** | 304 | 5 | 309 |
| **(f).** | **Inactive Under Reconsideration/Re-Review** | 146 | 12 | 158 |
| **(g).** | **Return for Review Under Policy 495** | 1,434 | 7 | 1,441 |
| | **B.  Pending Appeals** | | | |
| **1.** | **In "Baseball" Process** | 247 | | |

---

[10] In Court Status Report No. 26, the appeal statuses for two BP appeals were listed as "Resolved by Panel Decision" when those two claims were resolved by the Parties.  The CAO has now characterized those appeals as "Resolved by Parties". Accordingly, the "As of Last Report" figure for "Resolved by Panel Decision" has decreased by two, while the "As of Last Report" figure for "Resolved by Parties" has increased by two.

| | Table 14.  Status of BP Appeals. | |
|---|---|---|
| 2. | Submitted to Panel | 80 |
| 3. | Under Discretionary Court Review | 60 |
| 4. | TOTAL PENDING | 387 |

### (b) Claimant Appeals.

Before a claimant may file an appeal, the claimant must request Reconsideration and receive a Post-Reconsideration Eligibility or Denial Notice.  To date, the CAO has issued 8,315 Post-Reconsideration Eligibility and Denial Notices.  Of those, 281 Notices are still within the timeframe in which the claimant can file an appeal and the claimant has not yet done so, leaving 8,034 Notices that the claimant has either appealed or for which the deadline for the claimant to file an appeal has passed.  Of those 8,034 Notices, claimants have filed 1,529 appeals, a 19.0% appeal rate.  Of the 1,529 claimant appeals, 976 are appeals of Post-Reconsideration Denial Notices, while 553 are appeals of Post-Reconsideration Eligibility Notices.  Table 15 provides summary information on the status of Claimant Appeals.

| | Table 15.  Status of Claimant Appeals. | | | |
|---|---|---|---|---|
| | A. Appeal Filing/Resolution | | | |
| | Status | As of Last Report | Since Last Report | Total |
| 1. | Claimant Appeals Filed | 1,449 | 80 | 1,529 |
| 2. | Resolved Appeals | 1,243[12] | 39 | 1,282 |
| (a). | Resolved by Panel Decision | 948 | 38 | 986 |
| (b). | Resolved by Parties | 86 | 0 | 86 |

---

[12] In Court Status Report No. 26, the appeal statuses for two Claimant appeals were listed as "Administratively Closed" and the appeal statuses for six Claimant appeals were listed as "Under Discretionary Court Review" when those eight claims had been returned for review under Policy 495.  The CAO has now characterized those appeals as "Return for Review Under Policy 495".  Accordingly, the "As of Last Report" figure for "Administratively Closed" has decreased by two, while the "As of Last Report" figure for "Return for Review Under Policy 495" has increased by eight.

| Table 15.  Status of Claimant Appeals. | | | | |
|---|---|---|---|---|
| (c). | Remand to Claims Administrator | 32 | -1[13] | 31 |
| (d). | Administratively Closed | 49 | 1 | 50 |
| (e). | Withdrawn | 40 | 0 | 40 |
| (f). | Return for Review Under Policy 495 | 88 | 1 | 89 |
| **B.  Pending Appeals** | | | | |
| 1. | In "Baseball" Process | 25 | | |
| 2. | In "Non-Baseball" Process | 131 | | |
| 3. | Submitted to Panel | 44 | | |
| 4. | Under Discretionary Court Review | 47 | | |
| 5. | TOTAL PENDING | **247** | | |

### (c)  Resolved Appeals.

As reported in the table below, 5,623 appeals have been resolved.  Table 16 provides a summary of these resolved appeals by Claim Type.  The comparison between the Post-Appeal Award Amount and the Award Amount within the original notice does not take into consideration the 5.0% increase in compensation that a claimant who prevails upon appeal receives.

| Table 16.  Outcome After Appeal. | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Claim Type | Appeals Settled or Decided by Panel | | | | | | With-drawn | Admin. Closed | Inactive Under Recon./Re-Review | Return for Review Under Policy 495 | Total |
| | | Compensation Amount Following Appeal Compared to That of Original Notice | | | | | | | | | | |
| | | Higher | Lower | Same | Denial Upheld | Denial Over-turned | Remand | | | | | |
| 1. | Seafood | 73 | 21 | 149 | 46 | 4 | 20 | 50 | 9 | 9 | 0 | **381** |
| 2. | IEL | 24 | 64 | 101 | 93 | 11 | 38 | 13 | 19 | 6 | 0 | **369** |
| 3. | IPV/FV | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | **3** |
| 4. | BEL | 55 | 569 | 1,123 | 184 | 71 | 37 | 238 | 300 | 127 | 1,530 | **4,234** |
| 5. | Coastal RP | 37 | 1 | 24 | 106 | 6 | 1 | 8 | 7 | 0 | 0 | **190** |

[13] One appeal from the "Remand to Claims Administrator" category in Court Status Report No. 26 is now under Discretionary Court Review. Therefore, the number of remanded Claimant appeals decreased by one as compared to the previous month.

| Table 16.  Outcome After Appeal. | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Claim Type** | **Appeals Settled or Decided by Panel** | | | | | | **With-drawn** | **Admin. Closed** | **Inactive Under Recon./Re-Review** | **Return for Review Under Policy 495** | **Total** |
| | **Compensation Amount Following Appeal Compared to That of Original Notice** | | | | | | | | | | |
| | **Higher** | **Lower** | **Same** | **Denial Upheld** | **Denial Over-turned** | **Remand** | | | | | |
| 6. Wetlands RP | 3 | 10 | 4 | 35 | 2 | 0 | 3 | 2 | 16 | 0 | **75** |
| 7. RPS | 0 | 6 | 17 | 36 | 0 | 0 | 2 | 2 | 0 | 0 | **63** |
| 8. Subsistence | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | **3** |
| 9. VoO | 16 | 31 | 46 | 55 | 19 | 6 | 27 | 4 | 0 | 0 | **204** |
| 10. VPD | 2 | 28 | 31 | 20 | 0 | 12 | 8 | 0 | 0 | 0 | **101** |
| 11. TOTAL | **210** | **730** | **1,495** | **576** | **114** | **114** | **349** | **347** | **158** | **1,530** | **5,623** |

#### (d) Incompleteness Appeals.

The Appeal for Insufficient Documentation (Incompleteness Appeal) allows Economic Class Members to have their claims reviewed by a separate Documentation Reviewer when the CAO denies their claims because of insufficient documentation.  The Documentation Reviewer reviews the claimant's documentation to determine whether the Program correctly denied the claim.

Before sending the claim to the Documentation Reviewer, the CAO reviews the appeal request along with any newly submitted documents.  If the claimant has submitted the requested documentation and cured the incompleteness, the CAO issues the appropriate Notice.  If the claimant still has not submitted the requested documentation, the CAO sends the claim to the Documentation Reviewer for review.

Before a claimant may file an appeal of an Incompleteness Denial, the claimant must request Reconsideration and receive a Post-Reconsideration Incompleteness Denial Notice.  To date, the CAO has issued 4,921 Post-Reconsideration Incompleteness Denial Notices.  Of those, 227 Notices are still within the timeframe in which the claimant can file an appeal, leaving 4,694

Notices for which the claimant's appeal deadline has passed.  Of the 4,694 Notices eligible for appeal, 2,284 (48.7%) appeal requests have been filed.  Table 17 provides summary information on the status of Incompleteness Appeals.

| Table 17.  Incompleteness Appeals. | | | | |
|---|---|---|---|---|
| **A.   Incompleteness Appeal Filing/Resolution** | | | | |
| | **Status** | **As of Last Report** | **Since Last Report** | **Total** |
| **1.** | **Incompleteness Appeals Filed** | **2,220** | **64** | **2,284** |
| **2.** | **Appeals Resolved** | **1,697** | **34** | **1,731** |
| (a). | Withdrawn/Closed Claims | 14 | 1 | 15 |
| (b). | Cured | 288 | 16 | 304 |
| (c). | Incompleteness Denial Affirmed | 1,349 | 14 | 1,363 |
| (d). | Incompleteness Denial Overturned | 46 | 3 | 49 |
| **B.   Pending Incompleteness Appeals** | | | | |
| **3.** | **In Pre-Documentation Reviewer Process** | 443 | | |
| **4.** | **Currently Before Documentation Reviewer** | 110 | | |
| **5.** | **TOTAL PENDING** | 553 | | |

As reported in Table 17 above, 1,731 Incompleteness Appeals have been resolved.

## II.   SETTLEMENT PROGRAM LEGAL DEVELOPMENTS

### A.  Approval of the DWH Economic and Property Settlement Agreement

The District Court issued an order on December 21, 2012, certifying the Economic and Property Settlement Class and granting final approval of the Settlement Agreement after addressing and rejecting each of the Objectors' arguments.  The Objectors appealed the District Court's order citing various provisions of Rule 23 and requested that the Fifth Circuit remand with instructions to withdraw approval of the Settlement Agreement and to decertify the class.  Additionally, BP argued on appeal that two Policy Announcements issued by the Claims Administrator regarding the interpretation and application of the Settlement Agreement had subsequently brought the Settlement Agreement into violation of Rule 23, the Rules Enabling Act, and Article III of the U.S. Constitution.

A three judge panel for the Fifth Circuit Court of Appeals considered each of the arguments presented by the Objectors and BP.  On January 10, 2014, the Fifth Circuit affirmed by a 2-1 majority the District Court's order approving the Settlement Agreement and certifying the class.  On January 21, 2014, BP filed a petition for rehearing en banc of the Appeal Panel's decision.  Moreover, in January, the Objectors filed various petitions for rehearing en banc or for panel rehearing.  The Court dismissed these petitions on May 19, 2014.  BP filed with the Supreme Court a petition for writ of certiorari regarding this issue on August 1, 2014 which is still under consideration as of October 31, 2014.

The Court extended the deadline to respond to BP's petition to October 14, 2014.  On October 3, 2014, the Claims Administrator and respondents Cobb Real Estate, Inc., filed responses to the petition.  On October 8, 2014, Lake Eugenie Land & Development, Inc. et al. filed a brief in opposition.  Several non-parties filed amicus curiae briefs, including the Chamber of Commerce of the United States of America, numerous chambers of commerce from the Gulf Coast states, Her Britannic Majesty's Government of the United Kingdom of Great Britain, and Kenneth Feinberg, administrator or the Gulf Coast Claims Facility.  BP filed a reply on October 22, 2014.

### B.  <u>Court-Ordered BEL Claim Suspension</u>.

BP appealed the District Court's March 5, 2013 order affirming the Claims Administrator's interpretation of the Settlement Agreement that the BEL framework does not require the matching of revenues and expenses within claimant-submitted profit and loss statements.  On October 2, 2013, the Fifth Circuit Court of Appeals reversed the District Court's ruling and remanded the case to the District Court for further consideration.  The District Court immediately entered an order to suspend the issuance of any final determination notices or

payments on all BEL claims, including Start-Up and Failed BEL claims, until the Court could create an appropriately narrowly-tailored preliminary injunction.

   1.   **Dissolution of Injunction Continuing BEL Claim Suspension.**

After the District Court issued its preliminary injunction on October 18, 2013, BP filed an emergency motion objecting to the District Court's holding that causation was not an issue that the Court would address on remand.   The District Court issued an amended preliminary injunction on December 5, 2013, that ordered the CAO to temporarily suspend the issuance of final determination notices and payments to BEL claims until the Court resolved the BEL issues that were the subject of the remand.

On December 24, 2013, the District Court addressed the issues that the Fifth Circuit had placed on remand.   It reversed its previous holding that the Settlement Agreement does not require the matching of revenues and expenses, and remanded the matter to the CAO with instructions to adopt and implement an appropriate protocol or policy for handling BEL claims in which the claimant's financial records do not match revenues with corresponding variable expenses.   Further, the District Court found that whether a business economic loss is "as a result of" the Deepwater Horizon Incident for purposes of the Settlement is determined exclusively by Settlement Agreement Exhibit 4B.

BP appealed the District Court's holding, and, on March 3, 2014, the Fifth Circuit Court of Appeals affirmed the District Court's December 24, 2013 holding, but ordered that the injunction remain in place until the Fifth Circuit issued its mandate.   On May 28, 2014, the Fifth Circuit issued its mandate, affirming the December 24, 2013 holding of the District Court and vacating the injunction prohibiting payment of BEL claims.   On the same day, the District Court issued an order dissolving and vacating the injunction and ordering the Claims Administrator to resume the processing and payment of BEL claims.   Additionally, on May 28, 2014, BP filed an

application with the Supreme Court of the United States requesting that the Supreme Court recall and stay the Fifth Circuit's mandate pending the filing and disposition of its petition for a writ of certiorari. The Supreme Court denied BP's application on June 9, 2014.  BP filed with the Supreme Court a petition for writ of certiorari regarding this issue on August 1, 2014.

The Court extended the deadline to respond to BP's petition to October 14, 2014.  On October 3, 2014, the Claims Administrator and respondents Cobb Real Estate, Inc., filed responses to the petition.  On October 8, 2014, Lake Eugenie Land & Development, Inc. et al. filed a brief in opposition.  Several non-parties filed amicus curiae briefs, including the Chamber of Commerce of the United States of America, numerous chambers of commerce from the Gulf Coast states, Her Britannic Majesty's Government of the United Kingdom of Great Britain, and Kenneth Feinberg, administrator or the Gulf Coast Claims Facility.  BP filed a reply on October 22, 2014.

### 2.   CAO Policy 495.

While the Fifth Circuit considered the issue of causation, the CAO continued to develop an appropriate protocol or policy for handling BEL claims in which the claimant's financial records do not match revenues with corresponding variable expenses, as instructed within the District Court's December 24, 2013 order.  Pursuant to this instruction, the Claims Administrator developed Policy 495 regarding the Matching of Revenue and Expenses for BEL claims, which details the methodology that the CAO Accounting Vendors will use to perform the requisite matching analyses as required by the Court.

On May 5, 2014, the Court approved Policy 495 and authorized the Settlement Program to immediately implement the processing of BEL claims pursuant to the Policy.  The Court, however, left in place for the time its preliminary injunction related to BEL claims.  On May 27, 2014, Class Counsel responded, filing a motion requesting the Court alter or amend its Order

adopting Policy 495.  Class Counsel seeks to limit the matching triggers and policies to Cash Basis claims and to utilize a single methodology for all insufficiently matched claims, rather than selecting the applicable methodology based on a business's industry.  The District Court has not yet ruled on Class Counsel's motion.

Subsequent to the Fifth Circuit's issuing its mandate with respect to the injunction on May 28, 2014, on the same day, the District Court issued an Order dissolving and vacating the injunction and directing the Claims Administrator to apply Policy 495 to all BEL claims currently in the claims process at any point short of payment (with some minor exceptions), including the vast majority of those claims in the Appeals Process.  At this point, the CAO immediately began the process of issuing payments and final determination notices on BEL claims.

On June 27, 2014, following a previous motion from Class Counsel, the District Court issued an Order clarifying the process for evaluating claims under appeal and setting forth procedures for the Appeals Coordinator to follow based on whether the Parties agree that the claims under appeal do or do not involve the issue of matching.

The CAO continues to process all IEL claims that do not qualify for eligibility solely on the basis of the employer's satisfaction of the BEL revenue-pattern causation requirements as provided under the Settlement Agreement.

### III.    CLAIMANT OUTREACH EFFORTS

The CAO has continued its claimant outreach efforts since the previous Court Status Report as detailed below.

### A.  Law Firm Contacts.

The Law Firm Contact Team engaged in multiple outreach campaigns to help firms overcome documentation deficiencies and answer questions posed by reviewers.  The Law Firm

Contact Team participated in a specific outreach effort directed toward firms representing claimants with payable Seafood Compensation Program claims but who did not return executed Release and Covenant Not to Sue forms.  In this outreach, the Team requested firms to submit the required Release documentation on their clients' behalf so that the claimants may be eligible to participate in the Second Seafood Distribution.  The Law Firm Contact Team continued to assist firms by providing information concerning claim statuses and claim determinations.

### B.  Claimant Communications Center (CCC).

The CCC continued claimant outreach efforts across all claim types and review teams. The CCC continued to participate in established, on-going outreach efforts, including employer verification, deadline relief confirmation, and various claim-specific calls for individual damage categories.  The CCC also performed an outreach campaign this month to assist Seafood Compensation Program claimants with completing and submitting a Release and Covenant Not to Sue.

### C.  Claimant Assistance Centers (CACs).

The CACs complete outreach assignments as a secondary task to meeting with claimants and answering DWH-related questions.  This month, the CACs participated in numerous outreach efforts, including those to claimants with updated representation statuses, unfinished claim forms, and insufficient Forms 4506 and/or Form 4506-T in accordance with Policy 70 v.2.  In addition, the CACs continued outreach calls to claimants who provided incomplete identity information and to claimants with incomplete claims.  To date, the CACs have helped to complete over

140,000 calls for the Claimant Outreach Program.

### D.  Summary of Outreach Calls.

The table below summarizes some of the Claimant Outreach Program efforts.

27

| | Table 18.  Outreach Call Volume. | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Location** | **Calls Made** | **Incomplete Claims Affected** | **Claims With New Docs After Call** | **% of Claims With New Docs After Call** | **Claimants Visiting CAC After Call** | **% of Claimants Visiting CAC After Call** |
| **1.** | BrownGreer | 140,648 | 35,678 | 28,194 | 79.0% | 12,769 | 35.8% |
| **2.** | Garden City Group | 72,454 | 8,756 | 6,600 | 75.4% | 676 | 7.7% |
| **3.** | P&N | 57,703 | 13,667 | 12,529 | 91.7% | 255 | 1.9% |
| **4.** | PwC | 813 | 362 | 351 | 97.0% | 11 | 3.0% |
| **5.** | **TOTAL** | **271,618** | **58,463** | **47,674** | **81.6%** | **13,711** | **23.5%** |

## IV.   CONCLUSION

The Claims Administrator offers this Report to ensure that the Court is informed of the status of the Program to date.  If the Court would find additional information helpful, the Claims Administrator stands ready to provide it at the Court's convenience.


         /s/ Patrick Juneau
PATRICK A. JUNEAU
CLAIMS ADMINISTRATOR

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 26th day of November, 2014.


_____/s/ Patrick Juneau
PATRICK A. JUNEAU
CLAIMS ADMINISTRATOR