## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig       MDL NO. 2179
        "Deepwater Horizon" in the Gulf
        of Mexico, on April 20, 2010       SECTION J

Applies to: *No. 12-968 and All Cases*       JUDGE BARBIER
                                      MAGISTRATE JUDGE SHUSHAN

### ORDER

**[Regarding Class Counsel's Motion for Reconsideration (Rec. doc. 13303)
of the Court's Order of July 23, 2014 Regarding
Chronic Specified Physical Conditions (Rec. doc. 13179)]**

Before the Court is Class Counsel's motion for reconsideration of the Court's July 23, 2014 order, wherein the Court affirmed the Claims Administrator's interpretation of the Medical Benefits Class Action Settlement Agreement ("MSA") that classified physical conditions that are first diagnosed after April 16, 2012 as "Later-Manifested Physical Conditions" rather than "Specified Physical Conditions." Rec. doc. 13303.[1] The history of this issue is fully set forth in the Court's July 23rd order and will not be repeated here. Rec. doc. 13179. In the instant motion, Class Counsel argue that the Claims Administrator's interpretation results in "all those who have lived with their compensable exposure injuries since the time of the spill are now left with no recourse other than to file a back-end litigation suit in this Court. This is not what the parties intended or what the MSA requires." Rec. doc. 13303-1 at 1.

The Court held a hearing on the motion for reconsideration on September 24, 2014. During an exchange with Class Counsel, the Court pointed out that the definition of Later-Manifested Physical Condition ("LMPC") is in "plain English." Transcript 28-29, Rec.

---

[1] The Downs Law Group also filed a motion for reconsideration, Rec. doc. 13318, and Howard L. Nation, Esq. filed a memorandum in support of Class Counsel's motion, Rec. Doc. 13308. BP filed an opposition, Rec. doc. 13392, and Class Counsel replied, Rec. doc. 13408.

doc. 13450 [hereinafter "Tr. ___"].   During negotiations between Class Counsel and BP, the LMPC was originally defined as follows: "Later-Manifested Physical Condition shall mean a physical condition that first *manifests* after April 16, 2012."   BP's attorneys claim that at some point they received a revised draft from plaintiffs' negotiating team which changed the word "manifests" to "diagnosed."   Tr. 29-30.   Class Counsel was asked whether that was factually correct and responded, "I would accept BP's representation on that, if they've provided the documentation.[2]   We really don't recall, have independent recollection of intending -- certainly not intending these effects."   Tr. 30.   Class Counsel went on to say that there was "an intent, assumption and understanding on our part, and I frankly think, for the reasons previously addressed, BP's part, that we were talking -- there was an assumption that the diagnosis after that date was modifying Later-Manifested Physical Condition.   …[t]hat didn't apply in our minds -- and I would argue it doesn't really make very much sense to apply that -- in the context Chronic Specified Physical Conditions."   Tr. 31-32.

## Interpretation of the LMPC Provision

The undersigned previously held that the definition of LMPC is clear and unambiguous and that any chronic condition diagnosed after April 16, 2012 would be a LMPC.   Rec. doc. 13179 at 6.   The Court does not sway from this conclusion.   However, the Court will consider an argument not raised by the parties, at least not explicitly: whether grounds exist to reform the contract.   Equitable reformation of a contract to reflect the mutual intent of the parties is permissible under Louisiana law[3] where the contract is ambiguous or where its application would

---

[2]  See BP's memorandum of April 14, 2014 and attached Exhibit 2 showing the changes requested by Class Counsel and accepted by BP.   Rec. doc. 12862-2 at pdf p. 20 and pp. 34-36.

[3]  The MSA states that it is to be interpreted in accordance with general maritime law.   MSA § XXX.P.   However,

lead to absurd results. See Wilcox, 969 F. Supp. 2d at 684-86; Motors Ins. Co., 917 F.2d at 203-04; Bartlett Constr. Co., Inc. v. St. Bernard Parish Council, 1999-1186, p. 5-8 (La. App. 4 Cir. 5/31/00); 763 So. 2d 94, 98. If after looking to the plain text of the agreement, the court determines that the meaning of the contract is clear and unambiguous, the court may look no further to determine the parties' intent. La Civ. Code Ann. arts. 2046, 2047. If, however, the plain text is subject to two reasonable interpretations, or its application would lead to absurd results, the court may look beyond the four corners of the agreement to ascertain the parties' intent. See Bartlett Constr., 763 So. 2d at 98; Spangenberg v. Yale Materials Handling-Louisiana, Inc., 407 So. 2d 1270, 1273-74 (La. App. 4 Cir. 1981). Thus, the party seeking reformation must first show that the contract suffers from an ambiguity or absurd result that prevents its application as written from reflecting the mutual intent of the parties. See Am. Elec. Power Co. v. Affiliated FM Ins. Co., 556 F.3d 282, 286 (5th Cir. 2009); Motors Ins. Co., 917 F.2d at 203. In meeting this burden, such party may not rely on parol evidence to establish that the ambiguity in the contract exists to permit reformation. See Am. Elec. Power Co., 556 F.3d at 285-87; Wilcox, 969 F. Supp. 2d at 685. Otherwise, the court "would allow [a party] to 'make an end-run around the parol-evidence rule by framing it[] . . . as a request for reformation.'" Wilcox, 969 F. Supp. 2d at 685.

During oral argument, the Court expressed concern about the provision:

> …[I]t's rather obvious to me that the current interpretation of this agreement, of the provisions we're talking about, was never discussed with the Court. It was never made clear in terms of the

---

when an established rule does not exist under maritime law, a court may "borrow" from state law to fill a substantive void. See 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 4-2, at 227 (5th ed. 2011). Other courts have applied Louisiana law in situations similar to the one at bar, and so this Court will do the same. See Wilcox v. Max Welders, L.L.C., 969 F. Supp. 2d 668, 684-85 & n.51 (E.D. La. 2013) (citing Motors Ins. Co. v. Bud's Boat Rental, Inc., 917 F.2d 199, 203 (5th Cir. 1990).

public hearings we had.

The discussion was always about describing this Later-Manifested Physical Condition as being just what it sounds like.  It was even described, and they used the examples.  The most common would be somebody developing cancer years later from some toxic substance, which, you know, there is always a latency period in some of these chemicals for years, as I appreciate it.  So those were the kinds of cases that everybody was focused on, including the Court.

* * *

It is rather strange - - that the Court would approve a settlement, a class settlement that really doesn't settle thousands of claims and requires them to file another lawsuit.  I mean, it doesn't sound like much of a settlement.  Frankly, I've never heard of a settlement which requires you to file another lawsuit.

That's what's causing me problems, I guess, in thinking about this.  It seems like it's going to result in something I don't believe either party intended…  .

Tr. 40-41.

Despite the Court's belief that the vast majority of exposure cases existing at the time of confection of the MSA would be settled, that may not be true according to the plain wording of Section II.VV. of the MSA.   Thus, a class member with a Chronic Specified Physical Condition ("chronic condition") not diagnosed as of April 16, 2012, will not receive a specified lump sum payment under the Matrix.[4]   Instead, that claimant must resort to the "Back-End Litigation Option" ("BELO"),[5] to pursue compensation for that chronic condition which was not diagnosed by the operative date.

BP submits that its filing in support of approval of the MSA consistently referred to the

---

[4]  Exhibit 8 to the MSA.

[5]  See Section II.J. of the MSA.

4

date of *diagnosis* not *manifestation* as determinative of whether a claim was a LMPC.   Rec. doc. 13392 at 12.   It further argues that class members with chronic conditions likely would have sought medical treatment before April 16, 2012, because those conditions result in severe symptoms.   The treating physicians in such cases would have, in the normal course of treatment, ordered the standard diagnostic testing for such symptoms.   Id. at 17.   BP argues that claimants with legitimate chronic conditions will not be relegated to the BELO option, but instead should qualify for payment under the Matrix because they received a diagnosis before the operative date. Id. at 17-18.[6]

Having thoroughly reviewed the matter once again, the Court reaffirms its original ruling. As stated above, the contract terms are unambiguous.   As far as leading to absurd results, the interpretation may not be what the Court envisioned at the time of the fairness hearing nor what Class Counsel apparently thought, but the Court cannot say the result is absurd.   Claimants who allege a chronic condition that was not diagnosed until after April 16, 2012 are not without a remedy.   The MSA allows such claimants to file a BELO lawsuit.   There are tradeoffs, of course. Although the BELO lawsuit must be filed in this Court, the lawsuit may be transferred to another court under certain circumstances.   While the claimants must prove causation, they need not prove liability.   Although exemplary damages are not available, there is no cap or limitation on the amount of compensatory damages.   In lieu of filing a BELO lawsuit, a claimant may pursue a workers' compensation remedy if that is otherwise available.

---

[6] On the other side of the coin, BP suggests that the Court should view chronic conditions first diagnosed after April 16, 2012 suspiciously.   "Quite simply, Movants' position – that such Class Members should be able to seek SPC compensation based on these diagnoses obtained years after the fact – invites fraud."   Id. at 18.

**The Release Issue**

Class Counsel raise a second issue which stems from the Court's interpretation of the MSA: "[W]hether – under the Claims Administrator's current interpretation – a Class Member suffering from a . . . condition that first manifested within 24-72 hours but was not confirmed by medical testing until after [April 16, 2012] . . . , can submit and be compensated for an Acute [Specified Physical Condition] without waiving or releasing his or her right to pursue a Back-End Litigation Option for what has now been deemed to be a "Later-Manifested Physical Condition." Rec. doc. 13408 at 7.   Specifically, Class Counsel anticipates that BP may attempt to defeat such a BELO suit by arguing that the claim was "released."   Rec. doc. 13303-1 at 7.

At oral argument on the motion for reconsideration, counsel for BP stated in part that:

> [I]f a Class Member submits a claim for an acute condition and is paid, receives compensation for that condition, then they cannot go on to later seek additional compensation for the exacerbation or progression of that condition.
>
> That would mean that someone who submits an acute condition cannot later file a second claim for the same condition as a chronic condition.   That's pursuant to the release that's contained in the medical settlement --.

Tr. 53.

The undersigned questioned counsel further:

> So if they have an acute condition which later becomes chronic, but they haven't been diagnosed before April 16, 2012, you're telling them on the one hand that they are not eligible for -- if they are diagnosed after April 16, 2012, they have a Later Manifested Physical Condition, right, and they have to go into the BELO option, Back-End Litigation Option.
>
> But if at the same time, obviously, the condition was acute at one point, and if they make a claim or have made a claim for the acute

6

> condition and get paid a small amount of money, they've waived or released their Back-End Litigation Option?  That's what you just said.
>
> *   *   *
>
> Is that what you just said?
>
> "Yes it is."

Tr. 54.   The Court replied:   "That's really troubling, I've got to tell you."

> The Court went on to question counsel for BP:
>
>> So what if they had an acute ocular condition, and they filed a claim for a Specified Physical Condition, acute -- or chronic, for that matter, but in this Specified Physical Condition Matrix, and they were paid for that, and later, you know, four or five years later, they developed some type of cancer that they could show is related to the exposure, their exposure, are you saying that release would not release the claim?

Tr. 56-57.

> BP counsel replied:
>
>> That is what I'm saying.  If it is a different condition, they are entitled to seek compensation for those different conditions, and that would not be released.  Of course, they have to meet the proof requirements that may apply, but that's correct.

Tr. 57.

Class Counsel is correct that claimants need guidance on the "release issue" in order to decide whether to pursue compensation for an acute condition and perhaps forego compensation for a chronic condition that was first diagnosed after the operative date; or whether they may have the possibility of pursuing both.  And it seems to the Court that this is not just an issue of a progression from an acute condition to a chronic condition; but also whether the release allows recovery for an acute or chronic condition but then permits a BELO claim for either an unrelated or

a separate diagnosis of a chronic condition.

In order to clarify the situation, the Court directs that the Claims Administrator review the "release issue" and issue a policy statement within **twenty-one (21) days** of the date of issuance of this order.  The policy statement should contain examples of the various scenarios at issue. Thereafter, the Court will adopt, modify or reject the policy statement without further briefing from the parties.

Accordingly, Class Counsel's Motion for Reconsideration, Rec. doc. 13303, is DENIED. The Downs Law Group's Motion for Reconsideration, Rec. doc. 13318, is also DENIED.

New Orleans, Louisiana, this 26th day of November, 2014.

**CARL J. BARBIER**
**United States District Judge**