# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill By The Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | **MDL No. 2179** |
| | **SECTION: J** |
| This Document Relates To: | **JUDGE BARBIER** |
| | **MAGISTRATE JUDGE SHUSHAN** |
| Case Nos. 10-4182, 10-4183, 13-2645, 13-2646, 13-2647, & 13-2813 (Alabama), and Nos. 10-3059 & 11-0516 (Louisiana) | |

THE STATE OF LOUISIANA'S PROPOSED AMICUS CURIAE BRIEF IN SUPPORT OF THE STATE OF ALABAMA'S MOTION TO DISMISS SET-OFF CLAIMS OR IN THE ALTERNATIVE MOTION TO STRIKE SET-OFF AFFIRMATIVE DEFENSES

James D. "Buddy" Caldwell
*Attorney General*

Allan Kanner
*Special Counsel to the Attorney General*

Elizabeth B. Petersen
*Special Counsel to the Attorney General*

Louisiana Attorney General
P.O. Box 94005
Baton Rouge, Louisiana  70804-9005
Tel: (504) 524-5777
Email: a.kanner@kanner-law.com
Email: e.petersen@kanner-law.com

*Attorneys for the State of Louisiana*

**STATEMENT REGARDING ORAL ARGUMENT**

Should the Court deem oral argument helpful to the resolution of the State of Alabama's motion to dismiss and/or strike on the basis of sovereign immunity, the State of Louisiana respectfully would request the Court's permission to participate in oral argument.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ................................................................................. i

TABLE OF CONTENTS ................................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................................... iv

INTRODUCTION ......................................................................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................................ 3

ARGUMENT ............................................................................................................................... 5

I.    The States' Entitlement to Sovereign Immunity is a Threshold Constitutional Issue on which Defendants Must Bear the Burden of Proof and which Must be Decided Before Further Litigation Proceeds. ................................................................................................................. 5

II.   BP is Not Entitled to Recoupment or Credits under OPA, the Sole Source of Law that Determines Polluters' Responsibility for Damages Resulting from Oil Spills; those Requests are Therefore Barred by the Doctrine of State Sovereign Immunity.................................................... 9

  A.   OPA is the primary source of law determining polluters' responsibility for oil spills covered by the Act. ................................................................................................................. 10

  B.   OPA, which imposes strict, joint, and several liability on polluters, does not provide for recoupment or credits. ........................................................................................................... 13

III.  BP's Requests for Set-Offs or Credits are Simply Freestanding, Supplemental State-Law Contract Claims, which, at Most, are Permissive Counterclaims from which the States Have Not Waived their Sovereign Immunity............................................................................................... 15

  A.   In suggesting that every consequence of the Deepwater Horizon disaster is part of the same "transaction or occurrence," BP conflates the terms "transaction" and "occurrence" in Federal Rule of Civil Procedure 13 with the term "incident" in OPA—with absurd implications. ........................................................................................................................... 16

  B.   The relief BP seeks in connection the MOUs, which sounds in state contract law, is "of a different form or nature" than the relief the States seek in this action, which is based primarily on the federal Oil Pollution Act. ............................................................................................... 18

  C.   Whether BP granted the States MOU funds, and how the States disbursed those funds once they were received, are distinct questions that would be answered using quite different sets of evidence. ......................................................................................................................... 19

IV.   Constitutional and Practical Concerns Favor Dismissal on the Ground of State Sovereign Immunity................................................................................................................................... 21

*A.    Defendants' baseless requests for recoupment or set-offs would increase the States' litigation burden and, more fundamentally, impermissibly intrude upon the States' constitutional sovereign prerogative.* ...................................................................... 21

*B.    It is common—even preferable—for disputes against a State to be bifurcated from related federal proceedings and resolved in an appropriate state forum.* ........................................... 23

**CONCLUSION** ........................................................................................................... 25

**CERTIFICATE OF SERVICE** ........................................................................................ 27

# TABLE OF AUTHORITIES

## Cases

*Addison v. Comm'l Nat'l Bank in Shreveport*, 165 F.2d 937 (5th Cir. 1948)................................ 20

*Ala. Dep't of Transp. v. May*, 985 So.2d 409, 411-12 (Ala. 2007)................................................ 11

*Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484 (5th Cir. 2014) ...................... 9

*Alden v. Maine*, 527 U.S. 706 (1999) ............................................................................................ 9

*Allen v. Howard*, No. 13-233-CJB, 2014 WL 1330089 (E.D. La. Apr. 3, 2014) ........................ 10

*Andrus v. Glover Constr. Co.*, 446 U.S. 608  (1980)................................................................... 17

*Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012).......................................................................... 24

*Borden Co. v. Borella*, 325 U.S. 679 (1945)................................................................................ 20

*Bouchard Transp. Co. v. Fla. Dep't of Envtl. Prot.*, 91 F.3d 1445 (11th Cir. 1996).................... 9

*Bouchard Transp. Co. v. Updegraff*, 147 F.3d 1344 (11th Cir. 1998) ........................................ 10

*Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312 (5th Cir. 1999)......................... 11

*Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743 (2002) .............................................. 26

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Savings Bank*, 527 U.S. 627 (1999) .... 10

*Frederick v. United States*, 386 F.2d 481 (5th Cir. 1967) ............................................................. 5

*Gatlin Oil Co. v. United States*, 169 F.3d 207 (4th Cir. 1999) ..................................................... 10

*In re Gober*, 100 F.3d 1195 (5th Cir. 1996).................................................................................. 12

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 808 F. Supp. 2d 943
(E.D. La. 2011) ......................................................................................................................... 13

*In re S. Scrap Material Co.*, 713 F. Supp. 2d 568 (E.D. La. 2010) ............................................. 17

*In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on Apr. 20, 2010*, 844 F.
Supp. 2d 746 (E.D. La. 2012) .................................................................................................. 16

*Int'l Marine Carriers v. Oil Spill Liab. Trust Fund*, 903 F. Supp. 1097 (S.D. Tex. 1994) .......... 10

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir.
1982) ........................................................................................................................................ 12

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949)......................................... 7

*Meyers ex rel. Benzing v. Texas*, 410 F.3d 236 (5th Cir. 2005)..................................................... 9

*Oil Mop, LLC v. Summit Envtl. Servs., LLC*, No. 11-89-EEF, 2014 WL 4231056 (E.D. La. Aug.
26, 2014) .................................................................................................................................. 13

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ............................................... 26

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001).............................................................. 9

*Rice v. Harken Exploration, Inc.*, 250 F.3d 264 (5th Cir. 1991) .................................................. 16

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996)................................................................. 10

*Sossamon v. Texas*, 131 S. Ct. 1651 (2011).................................................................................. 11

*State v. Star Enter.*, 691 So. 2d 1221 (La. Ct. App. 1996) .......................................................... 23

*Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998)............................................................. 9

*Texas v. Caremark, Inc.*, 584 F.3d 655 (5th Cir. 2009)................................................................. 9

*Tug Allie-B, Inc. v. United States*, 273 F.3d 936 (11th Cir. 2001)................................................ 17

*United States v. Am. Comm'l Lines, L.L.C.*, 759 F.3d 420 (5th Cir. 2014) .................................... 5

*United States v. Green*, 33 F. Supp. 2d 203 (W.D.N.Y. 1998)..................................................... 12

*United States v. Iron Mt. Mines, Inc.*, 881 F. Supp. 1432 (E.D. Cal. 1995) ................................ 12

*United States v. Kallestad*, 236 F.3d 225 (5th Cir. 2000)............................................................ 20

*United States v. M/V COSCO BUSAN, LR/IMO Ship. No. 9231743*, No. 07-6045 SC, 2008 WL
4938106 (N.D. Cal. Nov. 17, 2008) ......................................................................................... 18

*United States v. Tex. Tech Univ.*, 171 F.3d 279 (5th Cir. 1999)...................................................... 9

*United States v. Tug Colette Malloy*, 507 F.2d 1019 (5th Cir. 1975) ........................................... 17

*United States v. W. of Eng. Ship Owner's Mut. Prot. & Indem. Ass'n (Lux.)*, 872 F.2d 1192 (5th Cir. 1989) ................................................................................................................................. 17

*Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632 (2011) ........................................... 8

*Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468 (1987) ................................... 10

*Zapata v. Melson*, 750 F.3d 481 (5th Cir. 2014)........................................................................ 24

## Statutes

33 U.S.C. §§ 2701 *et seq.*........................................................................................................... 4

La. Rev. Stat. § 13:5106.............................................................................................................. 11

## Other Authorities

6 CHARLES A. WRIGHT *et al.* FEDERAL PRACTICE AND PROCEDURE § 1401 (3d ed. & Supp. 2014) ..................................................................................................................................... 13

Restatement (Third) of Torts: Apportionment of Liability § 3 cmts. a-b & reporter's notes (2000) ..................................................................................................................................... 17

Robert Force & Jonathan M. Gutoff, *Limitation of Liability in Oil Pollution Cases: In Search of Concursus or Procedural Alternatives to Concursus*, 22 Tul. Mar. L.J. 331 (1998) ............... 16

## Regulations

33 C.F.R. § 136.103 .................................................................................................................... 4

## Constitutional Provisions

Ala. Const. § 14 ......................................................................................................................... 11

## INTRODUCTION

The interest of the State of Louisiana ("Louisiana" or "State") in the motion pending before the Court is straightforward yet pressing.  Louisiana, like Alabama and the other Gulf States, has suffered devastating damage to its natural resources and its economy following the April 20, 2010 explosion on the oil rig *Deepwater Horizon* in the Gulf of Mexico, and the resulting oil spill.  Both States' natural resource trustees and governments have pending complex, substantial claims against BP and other responsible parties arising from the explosion and spill, which, as the Court well knows, will likely take years to resolve.

Time was of the essence in mounting a response to what was to become the worst oil spill in history.  Facing an exigent public health and environmental crisis, several Gulf States, including both Louisiana and Alabama, reached interim agreements with BP to fund response efforts and to address the States' costs resulting from the explosion and spill and certain urgent concerns, such as monitoring pollution in fisheries, implementing a seafood safety testing program, and constructing barrier island berms to stem the spread of ocean-born oil pollution.

Those "memoranda of understanding" ("MOUs") did not release BP from any liabilities under the Oil Pollution Act ("OPA"), 33 U.S.C. §§ 2701-61.  They constituted voluntary grants and undertakings by both BP and the States, designed to expedite public health and economic intervention efforts and, for BP's part, presumably to reassure the States and the public of BP's intentions.  In fact, states could have obtained the same funds from the federal Oil Spill Liability Trust Fund ("OSLTF" or "Fund").[1]  The States were not in the position of having to relinquish any rights in the MOUs in exchange for grant money from BP.  The real benefit of the bargain was had by BP: if the States had gone to the fund, the U.S. Attorney General could have sued BP

---

[1] *See* 33 U.S.C. §§ 2702 (a)&(b)(1)(C), 2712; 33 C.F.R. § 136.103 (a), (b)(1)(C).

for reimbursement plus interest, costs, and attorneys' fees.[2]  The funds BP disbursed to Louisiana were not prepayments of response costs nor natural resource or other compensatory damages available under OPA.  Indeed, many of those agreements expressly reserved the States' rights to pursue their full panoply of remedies under OPA and other sources of law.  The MOUs are freestanding and independent of the States' potential OPA claims against BP.

Now BP has indicated that it intends to request that its natural resource and compensatory damages liability under OPA be offset,[3] under the guise of a purported disagreement over the manner in which the interim grant funds were disbursed by the States.[4]  BP all but concedes that at this time it has no factual basis for asserting that MOU funds were misspent.[5]  Instead, BP is using the discovery process as a fishing expedition to conjure such a claim and, then, to use the claim to bootstrap an invalid defense to its OPA liability—even though BP *acknowledges* that the relief it seeks arising from the States' purported breach of the MOUs is a *contract claim*.[6]

Alabama moved to dismiss and/or strike Defendants' claims or defenses requesting a set-off in their OPA liability,[7] invoking its sovereign immunity.  Louisiana fully intends to invoke its

---

[2] *See* 33 U.S.C. § 2715; *United States v. Am. Comm'l Lines, L.L.C.*, 759 F.3d 420 (5th Cir. 2014).

[3] Although Halliburton ("HESI") evidently did not execute MOUs, it, too, requests a set-off, recoupment, or credit.  (Doc. 4900 [HESI Answer, 2d Defense, to La.'s 1st Am. Compl.] at 48).  Transocean may seek similar relief as well.  Such offset requests are barred by sovereign immunity because OPA does not provide for recoupment or credits.  (*Infra*, section II.)  To the extent that arguments in favor of dismissal apply to claims or defenses asserted by multiple Defendants, Louisiana may use the referents "BP," "Defendants," and "responsible parties" interchangeably to mean any and all defendants with respect to whom dismissal is proper.

[4] *See, e.g.*, Doc. 4907 at 228 [BP Answer, 13th Def., to La.'s 1st Am. Compl.]; Doc. 13513-1 [Ala. Mem. Mot. Dismiss/Strike] at 1, 4, 6; Doc. 13616 [BP's Opp'n to Ala.'s Mot. Dismiss ("BP Opp'n")] *passim*.

[5] *See, e.g.*, Doc. 13616 [BP Opp'n] at 1, 4, 6, 10, 14 n.1.

[6] *See id.* at 10.

[7] The parties' briefs on Alabama's motion to dismiss use the terms "set-off claims" and "set-off defenses," as well as the terms "counterclaims," "credits," and "recoupment."  To be clear, offsets, or "set-offs," are not counterclaims per se.  Offsets apply where each party has a claim against the other and each claim is meritorious. *See Frederick v. United States*, 386 F.2d 481, 487 (5th Cir. 1967).  For ease of reference, Louisiana occasionally

own sovereign immunity in response to Defendants' nearly identical requests for a reduction in its OPA liability in Louisiana's suit, which remains pending.  Louisiana respectfully submits this amicus curiae brief to reinforce and supplement Alabama's arguments that federal court is not the proper forum for BP to develop its nascent dispute with the States over the implementation of the MOUs.[8]  The States' constitutional right to sovereign immunity demands otherwise.

### SUMMARY OF ARGUMENT

The Defendants' arguments in favor of their offset requests are misplaced, and, if accepted by this Court, would impair the sovereign interests of Alabama, Louisiana, and the other Gulf States party to the *Deepwater Horizon* litigation by haling them into federal court without their consent.  It would also set a dangerous precedent that would undermine the ability of state governments to mount effective, expeditious responses to public-health crises and to manage their day-to-day sovereign affairs.

Fundamentally, Defendants' arguments are flawed on a structural and constitutional level.  The State is a sovereign entity unique in our constitutional democracy.  The common law and the Eleventh Amendment to the United States Constitution make states immune from suit in federal court unless they have specifically and unambiguously agreed to it.  (*Infra*, section I.)  As the Supreme Court emphasized in an analogous situation, "[t]here are the strongest reasons of public policy for the rule that such relief cannot be had against the sovereign.  The Government as representative of the community as a whole, cannot be stopped in its tracks by any plaintiff who presents a disputed question of property or contract right"; rather than being forced to litigate such issues at a particular time and in a federal forum, a state government must be

---

uses the term "offset request" to capture both notions, but differentiates between offsets, counterclaims, credits, and recoupment as necessary throughout this brief.

[8] Like Alabama, Louisiana reserves the right to marshal other arguments in favor of dismissal, including those that do not necessarily bear upon state sovereign immunity, at the appropriate time.

permitted "to carry out its functions unhampered by direct judicial intervention[.]"  *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704 (1949).

Defendants' requests for recoupment lack a sound legal basis.  OPA makes responsible parties strictly, jointly, and severally liable for the discharge of oil, and OPA's few enumerated defenses do not include recoupment, *e.g.*, for funds voluntarily disbursed to the State or for a public entity's purported failure to mitigate its losses.  *See* OPA, 33 U.S.C. §§ 2702.  (*Infra*, section II.)  Because Defendants' recoupment requests lack a legal foundation found in OPA, the principle source of law that determines potentially responsible parties' liability for oil spills, discovery on this issue would infringe on the States' sovereign entitlement to be free from burdensome litigation without their consent.

Instead, a responsible party's only conceivable remedy in a dispute over the implementation of a MOU would be a counterclaim for breach of contract or an accounting. Such a counterclaim, if ever substantiated, would arise from state contract law, not the Oil Pollution Act.  Any conceivable contract claims would constitute permissive counterclaims arising from distinct transactions or occurrences than the States' OPA claims and would be "of a different form or nature" than the States' OPA claims.  (*Infra*, section III.)  By filing suit against defendants responsible for natural resource damages and other compensatory damages under OPA, the States consent only to those compulsory counterclaims and defenses that arise from the same grounds as the States' OPA claims.  The principle of sovereign immunity protects states from being drawn into federal court to defend BP's permissive, contract-based counterclaims. BP cannot bootstrap an independent, freestanding contract dispute—let alone a theoretical dispute over the implementation of interim MOUs to which BP gratuitously agreed—into this OPA case.

4

If the States were required to submit to discovery and litigation regarding Defendants' offset requests, it would intrude upon the internal sovereign affairs of state governments and give undue license to baseless second-guessing of the States' discretionary decisions, which were necessary to address the urgent public health and natural resource crisis of unprecedented magnitude following the *Deepwater Horizon* disaster.  (*Infra*, section IV.A.)  In sum, it would defeat the very purpose of the States' sovereign prerogative.

Accordingly, BP must litigate any contract-based claims, if anywhere, in another forum in which the States consent to suit.  (*Infra*, section IV.B.)  That sensible resolution would preserve BP's interests in any dispute over the implementation of the MOUs, and it would preserve the States' sovereign interests by limiting their discovery and litigation burden only to well-founded compulsory counterclaims or legally available defenses relevant to the federal claim at issue—responsible parties' liability for natural resource and compensatory damages under the federal Oil Pollution Act.

For these reasons and the additional reasons that follow, the State respectfully urges this Court to grant Alabama's motion to dismiss and/or strike Defendants' offset requests as barred by sovereign immunity.

**ARGUMENT**

I.   **The States' Entitlement to Sovereign Immunity is a Threshold Constitutional Issue on which Defendants Must Bear the Burden of Proof and which Must be Decided Before Further Litigation Proceeds.**

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1637 (2011).  "State sovereign immunity is a fundamental aspect of the sovereignty that the states enjoyed before the ratification of the Constitution and the Eleventh Amendment, and it was preserved intact by the

Constitution." *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240 (5th Cir. 2005) (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)).[9]  Because sovereign immunity implicates the jurisdiction of the Court to entertain suits, the Court should consider whether the State is entitled to sovereign immunity before addressing any arguments on the merits.  *See, e.g.*, *United States v. Tex. Tech Univ.*, 171 F.3d 279, 285-88 (5th Cir. 1999); *Texas v. Caremark, Inc.*, 584 F.3d 655, 658-60 (5th Cir. 2009) (reversing order deferring ruling on state's motion to dismiss counterclaim and remanding for resolution of issue in the first instance, explaining that "the sovereign immunity question must be decided before further litigation proceeds; otherwise, the object and purpose of sovereign immunity—to shield the states from the burden of suits to which they have not consented—is violated"); *Bouchard Transp. Co. v. Fla. Dep't of Envtl. Prot.*, 91 F.3d 1445, 1447 (11th Cir. 1996) (*Bouchard I*) (same); *cf. Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998) (holding that courts may not entertain suits based on hypothetical jurisdiction).[10]

Defendants, as the parties seeking to invoke federal jurisdiction over their offset requests, must bear the burden of overcoming the States' invocation of their sovereign immunity.  *See, e.g.*, *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 487 (5th Cir. 2014) (stating that a party seeking to assert claims against the government must bear the burden of establishing that the government is not entitled to sovereign immunity);[11] *Ramming*, 281 F.3d at 161 ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting

---

[9] States may urge both sovereign immunity and Eleventh Amendment immunity.  The Fifth Circuit uses the terms interchangeably.  *See, e.g.*, *Benzing*, 410 F.3d at 240-41.

[10] "Lack of subject matter jurisdiction may be found in . . . (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[11] While the court in *Alabama-Coushatta* addressed the federal government's sovereign immunity, the Fifth Circuit applies state and federal sovereign immunity precedents interchangeably, *see Caremark*, 584 F.3d at 659 n.1.

jurisdiction."); *Allen v. Howard*, No. 13-233-CJB, 2014 WL 1330089, at *2-3 (E.D. La. Apr. 3, 2014) (same).

State sovereign immunity is a robust constitutional protection that ensures effective, independent governance, and it cannot be abrogated or waived lightly.  "The presupposition or concept of state sovereign immunity 'has two parts: first, that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'"  *Benzing*, 410 F.3d at 240 (quoting *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Savings Bank*, 527 U.S. 627, 634 (1999) (internal citations omitted)).  While "[a] state's immunity from suit is not absolute," *id.* at 241 (citation omitted), "[t]he Supreme Court has recognized only two circumstances in which an individual may sue a State[,]" *id.*  "'First, Congress may abrogate the states' immunity by authorizing such a suit in the exercise of its power to enforce the Fourteenth Amendment—an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance.'"  *Id.* (quoting *Coll. Savings*, 527 U.S. at 670.).[12]

"Second, a State may at its pleasure waive its sovereign immunity by consenting to suit."  *Id.*  "But the decision to waive that immunity must be voluntary on the part of the sovereign."  *Id.*  "'[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.'"  *Alabama-Coushatta Tribe*, 757 F.3d at 488 (quoting *Lane*

---

[12] BP does not appear to contend that abrogation principles apply here.  Congress, in enacting OPA, did not abrogate states' sovereign immunity.  *See, e.g.*, *Bouchard Transp. Co. v. Updegraff*, 147 F.3d 1344, 1352 (11th Cir. 1998) (*Bouchard II*); *cf. Gatlin Oil Co. v. United States*, 169 F.3d 207, 213-14 (4th Cir. 1999) (holding that in enacting OPA, Congress did not abrogate or waive the federal government's sovereign immunity from private claims for an award of interest from the OSLTF); *Int'l Marine Carriers v. Oil Spill Liab. Trust Fund*, 903 F. Supp. 1097, 1102 (S.D. Tex. 1994) (same, OPA §§ 2712, 2713, & 2715).  Congress did not "unequivocally express[ ]" an intent to abrogate immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996), and, moreover, Congress did not enact OPA pursuant to section five of the Fourteenth Amendment, the provision recognized by the Supreme Court as a valid mechanism to abrogate state sovereign immunity. *See id.*; *cf. Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 & n.3 (1987) (collecting cases observing that it is well established that the Eleventh Amendment bars suits in admiralty against the states).

*v. Pena*, 518 U.S. 187, 192 (1996)).  "Generally, the Court will find a waiver either if (1) the state voluntarily invokes federal court jurisdiction, or (2) the state makes a 'clear declaration' that it intends to submit itself to federal court jurisdiction."  *Benzing*, 410 F.3d at 241 (quoting *Coll. Savings*, 527 U.S. at 675-76).  The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one. . . . A State's consent to suit must be 'unequivocally expressed' . . . .  Waiver may not be implied."  *Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011) (internal citations omitted).

Louisiana, like Alabama, has expressly declined to waive its sovereign immunity in federal court.  La. Rev. Stat. § 13:5106 (A) ("No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."); *see, e.g.*, *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999); *see also* Ala. Const. § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."); *Ala. Dep't of Transp. v. May*, 985 So.2d 409, 411-12 (Ala. 2007).  Thus, the only issue here is whether Louisiana and Alabama, by filing OPA claims against BP and other parties responsible for the *Deepwater Horizon* spill, has voluntarily invoked federal court jurisdiction with respect to Defendants' requests for set-offs in their OPA liability.

"When a state initiates a lawsuit, it waives its sovereign immunity to the extent required for the lawsuit's complete determination.  The state waives its sovereign immunity only as to compulsory counterclaims, however; that is, those 'arising out of the same transaction or occurrence which is the subject matter of the government's suit.'  Sovereign immunity is not waived as to permissive counter-claims, 'which do not meet the same transaction or occurrence test nor to [counter-]claims of a different form or nature than that sought by it as plaintiff nor to [counter-]claims exceeding in amount that sought by it as plaintiff.'"  *Caremark, Inc.*, 584 F.3d

at 659 (quoting *Frederick*, 386 F.2d at 488 (other internal quotation marks and citations omitted)).  For the reasons hereinafter assigned, the States have not consented to be subject to Defendants' purported offsets or counterclaims in federal court.

**II.     BP is Not Entitled to Recoupment or Credits under OPA, the Sole Source of Law that Determines Polluters' Responsibility for Damages Resulting from Oil Spills; those Requests are Therefore Barred by the Doctrine of State Sovereign Immunity.**

As just stated, a State does not waive sovereign immunity by bringing suit except for compulsory counterclaims.  *E.g.*, *Caremark*, 584 F.3d at 659-60.  A defendant's counterclaim may be considered compulsory if, in reality, it is a request for "recoupment."  *Id.*  If, on the other hand, a counterclaim is for a "set-off," it is at most a permissive counterclaim from which the State is not deemed to waive its sovereign immunity.  *Id.* A defendant's claim for recoupment arises from a transaction "intrinsic" to the plaintiff's claim.  *See id.* (citing *In re Gober*, 100 F.3d 1195, 1207-08 (5th Cir. 1996) ("Recoupment is a demand asserted to diminish or extinguish the plaintiff's demand that arises out of the same transaction forming the basis of the plaintiff's claim; setoff, on the other hand, arises out of a transaction extrinsic to the plaintiff's claim.")).

Of course, if there is no valid legal basis for recoupment from the State's recovery, then the recoupment request is barred by sovereign immunity.  *See id.*; *see also, e.g.*, *United States v. Green*, 33 F. Supp. 2d 203, 223-24 (W.D.N.Y. 1998) (CERCLA); *United States v. Iron Mt. Mines, Inc.*, 881 F. Supp. 1432, 1456-57 (E.D. Cal. 1995) (same).  A request for recoupment that is insufficient as a matter of law cannot survive a state's motion invoking its sovereign immunity as to that claim.  *See Caremark*, 584 F.3d at 659-60; *cf.* Fed. R. Civ. P. 12(f); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057-61 (5th Cir. 1982) (affirming order striking defense as "insufficient as a matter of law").  Defendants' requests for recoupment under OPA must be stricken or dismissed for precisely that reason.

A.     **OPA is the primary source of law determining polluters' responsibility for oil spills covered by the Act.**

Any recoupment to which BP is entitled must come from the provisions of OPA itself. Recoupment is a common law, equitable doctrine.  *E.g.*, *Frederick*, 386 F.2d at 487.[13]  Courts have found that OPA displaces the common law as to responsible parties' liability and remedies relating to oil spills covered by the Act.  *See, e.g.*, *Am. Comm'l Lines*, 759 F.3d at 424-25; *cf. In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 808 F. Supp. 2d 943, 961 (E.D. La. 2011) (observing that OPA does not displace maritime liability of parties not qualifying as OPA responsible parties).   Accordingly, OPA's exclusive liability provisions displace any vestigial right to recoupment responsible parties may have had at common law.  *See Am. Comm'l Lines*, 759 F.3d at 424-25; *see also Green*, 33 F. Supp. 2d at 223-24; *Iron Mt. Mines*, 881 F. Supp. at 1456-57.   The inquiry into the validity of Defendants' recoupment requests, then, must start from the provisions of OPA.

The Fifth Circuit and this Court have recognized that OPA's provisions are the beginning and end of the inquiry into a party's responsibility for oil spills covered by OPA.  *See Am. Comm'l Lines*, 759 F.3d at 424-25; *Oil Mop, LLC v. Summit Envtl. Servs., LLC*, No. 11-89-EEF, 2014 WL 4231056, at *4-5 (E.D. La. Aug. 26, 2014).  "[I]n enacting OPA, Congress intended to . . . 'create a single Federal law providing cleanup authority, penalties, and liability for oil pollution.'  OPA prescribes a supplemental, comprehensive federal plan for handling oil spill responses, allocating responsibility among participants, and prescribing reimbursement for cleanup costs and injuries to third parties.'"  *Am. Comm'l Lines*, 759 F.3d at 424 (internal alterations and quotation marks omitted).  Federal common law has been displaced "as to every

---

[13] "The common law equitable doctrine of recoupment . . . [was] the common law precursor to the modern compulsory counterclaim."  *Green*, 33 F. Supp. 2d at 223 (internal quotation marks omitted); *see, e.g.*, 6 CHARLES A. WRIGHT *et al.* FEDERAL PRACTICE AND PROCEDURE § 1401 (3d ed. & Supp. 2014).

question to which the legislative scheme spoke directly, and every problem that Congress has addressed." *Id.* (internal quotation marks omitted); *see id.* at 425 (holding that allowing a responsible party's third-party claim to proceed against spill responders, in circumstances where OPA contains no provision for such a claim, "would risk avoiding the strict liability that OPA places on responsible parties to pay the cleanup and removal costs, and frustrate the statutory scheme and its goal of providing rapid cleanup and claim resolution" (internal quotation marks omitted)).[14]

This Court has applied the Fifth Circuit's reasoning in *American Commercial Lines* to hold that responsible parties are not entitled to a set-off or recoupment in their OPA liability to a spill responder. *See Oil Mop, LLC*, 2014 WL 4231056, at *5 (examining OPA's OSLTF provisions). There, a collision between a barge and a tanker caused an oil spill on the Mississippi River near New Orleans, and the responsible party contracted with spill responders, including Oil Mop, LLC, to clean up the spill. *Id.* at *1. The responsible party disagreed with the spill responders' invoices and remitted only partial payments; the spill responders then filed for reimbursement for their cleanup expenses from the Oil Spill Liability Trust Fund, which granted their claims in part. *Id.* The Fund, in turn, sued the responsible party in federal court to recover the Fund's payment of the expenses, and Oil Mop filed suit against the responsible party for the balance of its expenses. *Id.* The responsible party alleged that the Fund had overcompensated Oil Mop, and relevant for purposes of this case, contended that it was entitled, under admiralty law, to an "equitable set-off or recoupment" of its liability to Oil Mop under OPA. *Id.* at *3. Because the Fund allegedly overcompensated Oil Mop, the argument went, Oil

---

[14] The court recognized that under the APA, parties may be able to reduce their liability to the Fund if they could show that the Fund, in disbursing monies to third parties, violated OPA or the APA, *i.e.*, by acting arbitrarily and capriciously, *id.*, a circumstance inapplicable to this case.

Mop had caused the responsible party's potential liability to the Fund to be wrongly inflated, justifying recoupment from Oil Mop's award against the responsible party. *See id.*

This Court disagreed and granted Oil Mop's motion to dismiss the responsible party's counterclaims and requests for recoupment. *Id.* at *5. The Court held that Oil Mop's suit against the responsible party concerned its claims for two expense line-items, which the Fund did not reimburse, and which were "completely separate" from the other claims for which the responsible party alleged Oil Mop was overcompensated. *Id.* The Court reiterated the Fifth Circuit's admonition in *American Commercial Lines* that allowing a responsible party's counterclaim—or in Oil Mop's case, request for recoupment—where OPA contains no provision "would risk avoiding the strict liability that OPA places on responsible parties to pay the cleanup and removal costs, and frustrate the statutory scheme and its goal of providing rapid cleanup and claim resolution[.]" 759 F.3d at 424 (internal quotation marks omitted); *accord Oil Mop*, 2014 WL 4231056, at *5. "Consistent with this holding, the Court [found] that no additional discovery [was] necessary regarding the payments, and alleged overpayments, made by the Fund." *Oil Mop*, 2014 WL 4231056, at *5. While in the *American Commercial Lines* and *Oil Mop* cases the responsible party's counterclaims and request for recoupment was asserted against a private claimant rather than a state, those cases' reasoning is directly applicable here. OPA provides the "exclusive source of law" determining polluters' potential responsibility for oil spills. *Am. Comm'l Lines*, 759 F.3d at 424.

Even if recoupment had been available under admiralty law, OPA's exclusive provisions governing the liability of responsible parties displace it. *See id.*; *see also, e.g.*, *Green*, 33 F. Supp. 2d at 223-24 (concluding that a recoupment claim against the United States or a state in a CERCLA cost recovery action was inconsistent with CERCLA's structure and purpose); *Iron*

*Mt. Mines*, 881 F. Supp. at 1456-57 (same).  A review of OPA's provisions, to which this brief

now turns, demonstrates that recoupment is unavailable to responsible parties.

> **B.      OPA, which imposes strict, joint, and several liability on polluters, does not provide for recoupment or credits.**

The Oil Pollution Act's statutory defenses are very limited; that narrow platform does not

reach recoupment or offset issues, whether styled as counterclaims or affirmative defenses.  OPA

makes responsible parties jointly and severally liable[15] and without regard to fault[16] for oil spills.

It provides that, "[n]otwithstanding any other provision of law[,] . . . each responsible party for a

vessel or a facility from which oil is discharged . . . into or upon the navigable waters or

adjoining shorelines . . . is liable for the removal costs and damages specified in subsection (b) of

this subsection that result from such incident."  33 U.S.C. § 2702(a).  OPA imposes "super strict

liability,"[17] recognizing only limited defenses.  *See id.* § 2703.   The Act's only complete

defenses are for discharges caused solely by an act of God, act of war, or act or omission of a

third party, *see id.* § 2703(a), subject to certain limitations, *see id.* § 2703(c); its only other,

"partial" defense provides that responsible parties are not liable "to a claimant, to the extent that

the incident is caused by the gross negligence or willful misconduct of the claimant[,]" *id.*

§ 2703(b).  OPA does not provide for any credits, recoupment, or defenses that would in any

measure reduce the State's recovery for natural resource and other compensatory damages

---

[15] 33 U.S.C. § 2701 (17) (incorporating the Clean Water Act's definition of "liability," which is strict liability); *see, e.g.*, *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on Apr. 20, 2010*, 844 F. Supp. 2d 746, 754 (E.D. La. 2012), *aff'd in part sub nom. In re Deepwater Horizon*, 753 F.3d 570 (5th Cir. 2014); *In re Petition of Settoon Towing LLC*, 722 F. Supp. 2d 710, 714 (E.D. La. 2010).

[16] 33 U.S.C. § 2702(a); *see Rice v. Harken Exploration, Inc.*, 250 F.3d 264, 266 (5th Cir. 1991).

[17] Robert Force & Jonathan M. Gutoff, *Limitation of Liability in Oil Pollution Cases: In Search of Concursus or Procedural Alternatives to Concursus*, 22 Tul. Mar. L.J. 331, 338 (1998).

authorized by the Act.  *See Am. Comm'l Lines*, 759 F.3d at 424; *Green*, 33 F. Supp. 2d at 223-24; *Iron Mt. Mines*, 881 F. Supp. at 1456-57.

To the extent that Defendants contend that either Louisiana or Alabama, in implementing the MOUs, failed to mitigate its damages (see, *e.g.*, Doc. 13616 [BP Opp'n] at 5-6, 8), such a claim or defense is unavailable under OPA.   Failure to mitigate damage, which is akin to contributory negligence,[18] is not among the enumerated claims or defenses available under OPA.[19]   "Liability exceptions . . . must be narrowly construed to effectuate Congress' strict liability scheme."  *United States v. W. of Eng. Ship Owner's Mut. Prot. & Indem. Ass'n (Lux.)*, 872 F.2d 1192, 1198 (5th Cir. 1989) (Clean Water Act); *accord, e.g.*, *Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 943-44 (11th Cir. 2001) (Park System Resources Protection Act) (citing, *inter alia*, *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, . . . absen[t] . . . contrary legislative intent."), and *W. of England*, 872 F.2d at 1198); *see also Am. Comm'l Lines*, 759 F.3d at 424 ("[F]ederal common law has been preempted as to every question to which the legislative scheme spoke directly, and every problem that Congress has addressed [in OPA]." (internal quotation marks omitted)).   Moreover, failure to mitigate or contributory negligence is generally not a defense to strict liability.  *United States v. Tug Colette Malloy*, 507 F.2d 1019, 1022 (5th Cir. 1975) (strict-liability admiralty suit); *accord, e.g.*, *In re S. Scrap Material Co.*, 713 F. Supp. 568, 580-81 (E.D. La. 2010) (Wreck Act) (collecting cases).

---

[18]  *See, e.g.*, Restatement (Third) of Torts: Apportionment of Liability § 3 cmts. a-b & reporter's notes (2000) (declaring that rule under which a plaintiff's failure to mitigate damages constitutes a bar to recovering those damages is inconsistent with comparative fault regime, *viz.*, because it is akin to contributory negligence).

[19]  Indeed, § 2703(b) implies, per the principle of *expressio unius*, that anything less than gross negligence or willful misconduct on the part of any claimant cannot serve as a defense.

Similarly, because OPA imposes joint and several liability on responsible parties, *see supra* n.15, any fault of other parties, including the claimant, is irrelevant so long as the defendant is at least partly at fault.  But in any event, OPA only imposes liability on "responsible part[ies]," § 2702, which the State is not, *see id.* § 2701(32) (defining "responsible parties"); *cf., e.g.*, *United States v. M/V COSCO BUSAN, LR/IMO Ship. No. 9231743*, No. 07-6045 SC, 2008 WL 4938106, at *5 (N.D. Cal. Nov. 17, 2008) (granting motion to strike third-party complaint filed against State under, *inter alia*, OPA, citing the Eleventh Amendment).

In sum, OPA does not provide Defendants with the recoupment they request.  OPA provides no valid legal basis for Defendants' requests for reductions to their OPA liability, whether styled as recoupment, credits, offsets, defenses, or otherwise.  The States are therefore immune from any such claims or defenses.

## III. BP's Requests for Set-Offs or Credits are Simply Freestanding, Supplemental State-Law Contract Claims, which, at Most, are Permissive Counterclaims from which the States Have Not Waived their Sovereign Immunity.

As just demonstrated, Defendants have no valid basis for requesting recoupment under OPA.  In truth, BP's requests for "recoupment" due to the States' purported noncompliance with MOUs—if ever substantiated—would amount to nothing more than state-law claims for breach of contract or an accounting.  Indeed, BP fully recognizes that its disagreement with Alabama's implementation of the MOUs qualifies as a *breach of contract dispute*.  (See, *e.g.*, Doc. 13616 [BP Opp'n] at 10 [alleging that the MOUs gave BP "contractual rights" that Alabama "materially breached"]; *id.* at 4 [arguing that the MOUs required Alabama to provide an accounting]).  To reiterate, "[s]overeign immunity is not waived as to permissive counter-claims, 'which do not meet the same transaction or occurrence test nor to counterclaims of a different form or nature than that sought by it as plaintiff nor to counterclaims exceeding in amount that sought by it as

plaintiff.'"  *Caremark, Inc.*, 584 F.3d at 659 (quoting *Frederick*, 386 F.2d at 488) (alterations and

other internal quotation marks and citations omitted).   BP and HESI both focus on the

"transaction or occurrence" test but ignore the alternative "form or nature" test, though

*Caremark* and *Frederick* cite the tests disjunctively.  Here, however, neither test is met.  BP's

offset requests sound in contract, making them permissive counterclaims barred by sovereign

immunity.

> A.   ***In suggesting that every consequence of the Deepwater Horizon disaster is part
> of the same "transaction or occurrence," BP conflates the terms "transaction"
> and "occurrence" in Federal Rule of Civil Procedure 13 with the term
> "incident" in OPA—with absurd implications.***

In contending that the MOUs and the *Deepwater Horizon* disaster comprise the same

"transaction or occurrence," BP proposes to stretch that phrase far beyond its plainly intended

meaning.  As Alabama articulated in its briefs in support of its motion to dismiss and/or strike, a

single "transaction or occurrence" under Rule 13 has the quality of being both legally and

factually unitary.  (See Doc. 13513-1 [Ala. Mem. re Mot. Dismiss/Strike] at 10-11; Doc. 13640

[Ala. Reply re Mot. Dismiss/Strike] at 2-5.)  For example, the State and BP's execution of an

MOU on fishery monitoring constitutes a single "transaction" distinct from and subordinate to

the broader *Deepwater Horizon* disaster.  The case on which BP itself relies even supports this

point, holding that a single loan transaction—similar to the execution of a single MOU—

comprises one transaction or occurrence.  (See Doc. No. 13616 [BP Opp'n] at 9 [citing *Plant v.

Blazer Fin. Servs., Inc. of Ga.*, 598 F.2d 1357, 1361 (5th Cir. 1979)].)  BP would evidently have

this Court declare that every consequence of the *Deepwater Horizon* disaster stems from the

same transaction or occurrence."  (See, *e.g.*, Doc. 13616 [BP Opp'n] at 1, 9.)  Each is part of the

same series of events, the argument goes, because BP would not have raised its MOU-based

claims or defenses if there had been no MOUs, which BP would not have executed but for

Alabama's claim that the oil spill caused it losses, which in turn Alabama would not have made absent the *Deepwater Horizon* disaster.  (*Id.* at 9.)  This "'house-that-Jack-built' chain"[20] of reasoning stretches the transaction or occurrence test beyond its limits.

In addition to the deficiencies in this argument already articulated by Alabama, a fundamental problem with BP's argument is that it conflates Rule 13's phrase "transaction or occurrence" with the distinct terms "incident" or "catastrophe."   The term "incident" is specifically defined in OPA as "*any* occurrence *or series of occurrences* having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil."   33 U.S.C. § 2701(14) (emphases added).   Clearly, the explosion on the *Deepwater Horizon*, resulting in the massive oil spill into the Gulf of Mexico and onto the shores of the Gulf States, was a catastrophic "incident" with many resultant "occurrences."   *See id.*   The *Deepwater Horizon* disaster led to innumerable consequences in many sectors of society, both public and private.   The *Deepwater Horizon* disaster required the federal and state governments to take emergency measures in the immediate aftermath of the spill to protect public health and natural resources.   The disaster also led to numerous securities disputes, which are being tried separately in the Southern District of Texas, as well as many insurance disputes.   Those legally and factually distinct consequences of the *Deepwater Horizon* disaster doubtless arose from the same "incident," but they do not all comprise the same "transaction or occurrence" such that they must be tried together (or else be forfeit).

Any disputes over the MOUs arose from transactions or occurrences distinct from the *Deepwater Horizon* explosion on April 20, 2010, and the resulting oil spill.   They would

---

[20] *Addison v. Comm'l Nat'l Bank in Shreveport*, 165 F.2d 937, 940 n.7 (5th Cir. 1948) (quoting *Borden Co. v. Borella*, 325 U.S. 679, 685 (1945)); *accord, e.g.*, *United States v. Kallestad*, 236 F.3d 225, 229-30 (5th Cir. 2000) (rejecting "'house that Jack built' justification" as "unfettered and nigh unprincipled").

therefore constitute permissive counterclaims, and are barred by the States' sovereign immunity.

> **B.      The relief BP seeks in connection the MOUs, which sounds in state contract law, is "of a different form or nature" than the relief the States seek in this action, which is based primarily on the federal Oil Pollution Act.**

As observed above, Defendants focus on "transaction or occurrence test" but ignore the alternative "form or nature" test, though the tests are disjunctive.  *See Caremark, Inc.*, 584 F.3d at 659; *Frederick*, 386 F.2d at 488.  In fact, BP's claims relating to the MOUs are "of a different form or nature than that sought by" the States in their Oil Pollution Act suits.

At the risk of stating the obvious, OPA actions brought by a state, which seek natural resource damages and other compensatory restoration uniquely available to government entities, differ significantly from private contract actions available under state law.  The categories of compensatory damages available to government entities in natural resource damage cases under OPA include, among other remedies, natural resource damages, loss of revenue, and the increased cost of public services required to respond to a spill.  *See* 33 U.S.C. § 2702.  Natural resource trustees may recover, on behalf of the public, "[d]amages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage[.]"  *Id.* § 2702(b)(2)(A).  Federal, state, and local governments may also recover lost governmental revenues, *i.e.*, "net loss of taxes, royalties, rents, fees, or net profit shares" that are caused by the "injury, destruction, or loss of real property, personal property, or natural resources[,]" *id.* § 2702(b)(2)(D); and the increased cost of public services due to natural resource damages, *id.* § 2702(b)(2)(F).

BP's own description of its MOU-related "counterclaim" as one for "breach of contract" is perhaps the best demonstration of how very different BP's contract claim is from the States'

OPA claims, both in form and nature.  In the background section of its brief, BP explains the

basis for its MOU-related claim as follows:

> The grant agreements . . . obligate Alabama to provide information to BPXP.  The
> two $25 million grants state that Alabama "shall send BP a report of
> disbursements of the Payment on an annual basis until the Payment has been fully
> spent." . . . BP also "shall have reasonable access to the State's disbursement
> records" and the ability to make inquiries and monitor the use and disbursement
> of the payment." . . .  Alabama has not provided adequate annual reports, allowed
> BPXP access to its disbursement records, or allowed BPXP to monitor the use and
> disbursement of the payments for the two $25 million grants. . . .

> BP's counsel explained how the language of the *grant agreements required
> Alabama to provide an accounting* of the funds . . . .  *Whether Alabama had
> violated the terms of the grants so as to give rise to a counterclaim* could only be
> determined through discovery. . . .

(Doc. 13616 [BP Opp'n] at 3-4 [citations omitted] [emphases added].)  Later in its argument

seeking to justify discovery into the State's disbursement of MOU grant monies, BP elaborates

on the contractual nature of its counterclaim:

> *[U]nder the grant documents, BPXP has the legal right* to receive reports from
> Alabama regarding the grant disbursements, monitor the grant disbursements, and
> have the funds used for the Deepwater Horizon incident. . . .  Alabama's *breach
> of these contractual provisions* may activate additional legal rights in BPXP . . .
> because of Alabama's *material breach[.]*

(*Id.* at 10 [emphases added].)  Together and separately, BP's own descriptions of its MOU claim

read strikingly like a freestanding complaint for breach of contract.

    BP's counterclaim for affirmative contract relief is palpably of a different form and

nature than the States' claims under the Oil Pollution Act.  As such, it is a permissive

counterclaim, which is barred by the doctrine of sovereign immunity.

> ### C.    <u>Whether</u> BP granted the States MOU funds, and <u>how</u> the States disbursed those funds once they were received, are distinct questions that would be answered using quite different sets of evidence.

    The States and the Defendants agree that BP granted the States funds pursuant to various

MOUs; no further evidence of BP's expenditures is necessary.  By contrast, BP seeks discovery into *how* Alabama disbursed those funds once they were received—seeking to uncover the minutiae of uniquely sovereign, executive-function decisions.  *Whether* BP gave the States MOU funds, and *how* the States disbursed those funds once they were received, are two very different questions.  BP is mistaken in contending that the "same evidence" could be used to prove both.

BP attempts to elide this distinction by equivocating the term "mitigation."[21]  BP toggles between (1) describing its own expenditures that "reduce[d] Alabama's 'net loss' under OPA § 2702(b)(2)(D), which it labels "mitigation evidence" (Doc. 13616 [BP Opp'n] at 5), and (2) accusing the State of failing to "mitigate" its own losses that resulted from the spill (*e.g.*, *id.* at 5, 8 [alleging as relevant "mitigation" evidence, referring to "how" Alabama's grant monies "*should have been used*" or "*could have been spent*" to mitigate the State's own losses] [emphases added]).  While Alabama appears willing to accept that the first sense of the term "mitigation" might be proper,[22] it should be clear from the "super strict" joint and several liability structure of OPA that the latter sense—denoting a State's purported failure to "mitigate" its own losses (*i.e.*, a State's purported contributory negligence)—is no defense to a responsible party's OPA liability.  (*Supra* section II.B.)

In other words, any discovery into *how* the States disbursed various MOU funds would not be relevant to an OPA claim or defense.  It would only be relevant to BP's contention that Alabama violated the terms of the MOUs, further emphasizing the independent, permissive

---

[21] *See State v. Star Enter.*, 691 So. 2d 1221, 1226 (La. Ct. App. 1996) (defining the "logical fallacy of equivocation" as "an argument in which one term . . . is used with differences of meaning, often very subtle").

[22] While Louisiana does not contend that a state would be entitled to double recovery of the same item of damages, it does not agree with BP's suggestion that "mitigation" in both senses would be proper nor that the phrase "net losses" in OPA could incorporate the notion of contributory negligence.  Indeed, BP's "mitigation" argument is fundamentally inconsistent with OPA's "resulting from" approach to causation.  (Doc. 3830 [Order and Reasons (As to Motions to Dismiss the B1 Master Complaint)] at 33.)

nature of BP's MOU-related claims.  BP cannot bootstrap a reduction to its OPA liability from

any rights or responsibilities created in the MOUs.

## IV.     Constitutional and Practical Concerns Favor Dismissal on the Ground of State Sovereign Immunity.

The States should not be subjected to Defendants' costly fishing expeditions backed by

the compulsory-process power of the federal courts, in particular when appropriate alternative

fora are available to Defendants.  A responsible party's litigation preferences as to what might be

more efficient or convenient cannot overcome the States' sovereign immunity.

### A.     *Defendants' baseless requests for recoupment or set-offs would increase the States' litigation burden and, more fundamentally, impermissibly intrude upon the States' constitutional sovereign prerogative.*

Contrary to BP's suggestion, if the State's motion to dismiss Defendants' claims and

defenses requesting a reduction in liability were deferred or delayed, it would prejudice the

States by increasing the scope of discovery burden and forcing the State to prepare for

proceedings, such as depositions, of a larger scope than would otherwise be required.

"[I]mmunity is 'effectively lost'" if a case is erroneously permitted to proceed to the merits.

*Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citation omitted).  District courts must

avoid entering "discovery orders that, through overbreadth, effectively deprive [state actors] of

an immunity from suit."  *Id.* (citation omitted).[23]  Defendants' attempt to lump together all

discovery proceedings, regardless of whether they are aimed at the State's OPA claims or BP's

offset requests, should be rejected.  BP's offset requests would increase the State's discovery

burden by forcing the States to litigate the minutiae of the steps they took to implement the

---

[23] In *Backe v. LeBlanc*, the court distinguished between "general discovery" and discovery tailored to address issues that would not impinge on state officers' immunity.  691 F.3d at 648; *see also, Zapata v. Melson*, 750 F.3d 481, 484-86 (5th Cir. 2014) (same, federal officers).  While *Backe* addressed state officers' *qualified* immunity, the Court should be at least as scrupulous in preserving the States' sovereign immunity.

MOUs, which, important to securing public health and safety in the short term, remained discrete components of the complex, multifarious response to the *Deepwater Horizon* emergency.

In other cases in which a potentially responsible party requested an offset or recoupment in its OPA liability, courts have recognized that states are entitled to a prompt ruling on their entitlement to sovereign immunity and also agreed that the state was entitled to immunity from the OPA counterclaim.  *See Bouchard I*, 91 F.3d at 1447 (holding that district court erred in deferring State's motion to dismiss counterclaims PRP filed against it in State's OPA action on the ground that they were barred by the State's sovereign immunity, and reversing and remanding with instructions to rule on State's sovereign immunity defense); *Bouchard II*, 147 F.3d at 135 (on appeal after remand, affirming, *inter alia*, the dismissal of OPA counterclaims on ground of sovereign immunity, and reversing in part on other grounds).  Here, too, requiring discovery on Defendants' invalid claims and defenses would prejudice the States and impinge on their entitlement to sovereign immunity.  Even more egregious, BP all but concedes that at this time it lacks any factual basis for asserting that MOU funds were misspent.  (See, *e.g.*, Doc. 13616 [BP Opp'n] at 1, 4, 6, 10, 14 n.1.)  Instead, BP is using the discovery process as a fishing expedition to conjure such a claim and, then, to use the claim to bootstrap an invalid defense to its OPA liability.  (See *supra*, section III.C.)

In any event, BP's focus on the State's burden in discovery misses the broader point: while the discovery burden faced by nonconsenting states is an important consideration with sovereign immunity, *see, e.g.*, *Caremark, Inc.*, 584 F.3d at 658, "[t]he specific indignity against which sovereign immunity protects is the insult to a State of being haled into court without its consent," not just the burden of submitting to discovery. *Va. Office for Prot. & Advocacy*, 131 S. Ct. at 1640; *accord, e.g.*, *Seminole Tribe*, 517 U.S. at 58 (explaining that sovereign immunity

serves to avoid "the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties" (internal quotation marks omitted)); *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002) ("The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities."); *Alden*, 527 U.S. at 748 ("The founding generation thought it neither becoming nor convenient that the several States of the Union, invested with that large residuum of sovereignty which had not been delegated to the United States, should be summoned as defendants to answer the complaints of private persons." (internal quotation marks omitted)).

Especially given the gravity of the sovereign interests at stake, the discovery process cannot be used as a fishing expedition to trawl for information on issues lacking in legal foundation and as to which the States have not waived their sovereign immunity.

### B.   It is common—even preferable—for disputes against a State to be bifurcated from related federal proceedings and resolved in an appropriate state forum.

Because BP's claims for relief arising from the States' purportedly improper implementation of the MOUs do not arise under OPA or otherwise affect BP's liability under OPA, they must be brought, if anywhere, in a separate, state court proceeding.  "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (emphasis in original).  Courts have consistently recognized that separate federal court and state court proceedings may be required for litigation involving state parties when they invoke their immunity, given their unique constitutional status as sovereign entities.  The Supreme Court, in holding that the Eleventh Amendment bars federal courts from entertaining supplemental state-law claims against state actors, emphasized that bifurcating state and federal court proceedings is

not only normal, but also *preferable*, inasmuch as state courts are often better equipped to resolve state-law questions. *See id.* at 121-23.

For example, in *Pennhurst*, a private group of Pennsylvanians brought a class action in federal court challenging their confinement in a state institution pursuant to *Ex Parte Young*, 209 U.S. 123 (1908), as inconsistent with the U.S. Constitution, and asserting supplemental state-law claims. *Pennhurst*, 465 U.S. at 92.   The Court held that it was unconstitutional to assert jurisdiction over the plaintiffs' state-law claims without the State's consent, notwithstanding the fact that jurisdiction was proper as to the federal claims under *Ex Parte Young*. *Id.* at 120.  In so holding, the Court rejected the plaintiffs' argument that consolidated federal-court proceedings would promote fairness and judicial economy, explaining that it is "not uncommon" for state and federal claims to be bifurcated and heard in separate state and federal fora. *Id.* at 122 (citing, for example, suits against state officials for retroactive monetary relief, challenges to the validity of state tax systems under 42 U.S.C. § 1983, and suits bifurcated per the abstention doctrine).  The Court further observed that state courts are often better equipped to resolve state-law concerns, citing, for example, the difficulty of making *Erie* guesses, the practical difficulty of federal-court oversight of state programs, and "'needless conflict with . . . state policy[.]'" *Id.* at 122 n.32 (citation omitted).  The Court concluded that the practical considerations cited by the plaintiffs "cannot override the constitutional limitation on the authority of the federal judiciary to adjudicate suits against a State." *Id.* at 123

The same principle holds in the OPA context.  BP's counterclaims attempt to call into question complex, executive-level decision-making by State governments in the face of a massive public health and environmental crisis.  Even more so than in *Pennhurst*, these questions are better left to state courts. As the Supreme Court emphasized in an analogous situation,

"[t]here are the strongest reasons of public policy for the rule that such relief cannot be had against the sovereign.  The Government[,] as representative of the community as a whole, cannot be stopped in its tracks by any plaintiff who presents a disputed question of property or contract right"; a state government must be permitted "to carry out its functions unhampered by direct judicial intervention[.]"   *Larson*, 337 U.S. at 704 (discussing results that would obtain if injunctive relief were available against defendants otherwise entitled to sovereign immunity).

BP must litigate any contract-based claim, if anywhere, in another forum in which the States consent to suit.  That sensible resolution would preserve BP's interests in any dispute over the implementation of the MOUs, and it would preserve the States' sovereign interests by limiting their discovery and litigation burden only to well-founded compulsory counterclaims or legally available defenses relevant to the federal claim at issue—responsible parties' liability for natural resource and compensatory damages under the federal Oil Pollution Act.  Otherwise, it would defeat the very purpose of the States' sovereign prerogative to choose to defend claims brought against them in a state, rather than federal, forum.

### CONCLUSION

For the foregoing reasons, Louisiana respectfully urges the Court to grant Alabama's motion to dismiss and/or strike Defendants' requests for recoupment and counterclaims as barred by sovereign immunity.

Dated this 1st day of December, 2014.

Respectfully submitted,

JAMES D. "BUDDY" CALDWELL                    KANNER & WHITELEY, LLC
LOUISIANA ATTORNEY GENERAL

25

James Trey Phillips
First Assistant Attorney General
Megan K. Terrell
Assistant Attorney General
Section Chief –Environmental
State of Louisiana
P.O. Box 94005
Baton Rouge, LA 70804-9005
Telephone: (225) 326-6708

HENRY DART,
ATTORNEYS AT LAW P.C.

/s/ Henry T. Dart
Henry T. Dart
Grady J. Flattmann
510 N. Jefferson St.
Covington, LA 70433
Telephone: (985) 809-8093
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

SHOWS, CALI, BERTHELOT &
WALSH, LLP

/s/ E. Wade Shows
E. Wade Shows
628 St. Louis Street
Baton Rouge, LA 70802
Telephone: (225) 346-1461
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

 /s/ Allan Kanner
Allan Kanner
Elizabeth B. Petersen
Douglas R. Kraus
Allison M. Shipp
701 Camp Street
New Orleans, LA 70130
Telephone: (504) 524-5777
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

USRY, WEEKS, &
MATTHEWS, APLC

/s/ T. Allen Usry
T. Allen Usry
1615 Poydras St.
Suite 12
New Orleans, LA 70112
Telephone: (504) 592-4641
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

26

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing amicus curiae brief has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 1st day of December, 2014.

Kanner & Whiteley, L.L.C.

 /s/ Allan Kanner
Allan Kanner
a.kanner@kanner-law.com

27