**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" | * | |
| in the Gulf of Mexico, | * | SECTION: J |
| on April 20, 2010 | * | |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| *U.S. v. BP, et al.*  2:10-cv-04536 | * | MAGISTRATE SHUSHAN |
| | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**PLAINTIFF UNITED STATES' MEMORANDUM IN SUPPORT OF (1) ITS MOTION *IN LIMINE* TO ADMIT EVIDENCE PERTAINING TO ANADARKO'S CONTENTIONS CONCERNING NON-OPERATORS AND (2) IN OPPOSITION TO ANADARKO'S MOTION TO ENFORCE THE COURT'S ORDER EXCLUDING CULPABILITY EVIDENCE AGAINST ANADARKO**

# TABLE OF CONTENTS

Table of Authorities ………………………………………………………………………...iii

List of Exhibits ………………………………………………………………………………v

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

ARGUMENT................................................................................................................ 4

I.   Anadarko's "Other Matters" Contentions are Inextricably Intertwined with Evidence of Its Involvement With the Macondo Well and the Incident....................................................... 4

     A.   Anadarko's Experts Pursue its "Non-operator" Contentions......................... 4

     B.   Mr. Walkup Directly Responds to the Anadarko Experts' Contentions ........ 6

II.  Anadarko's Contentions Concerning Non-Operators Under the "Other Matters" Penalty Factor Opens the Door for the United States to Present Evidence Concerning Anadarko's Conduct as a Non-Operator in Connection with Macondo................................................. 8

III. Alternatively, Anadarko's "Non-operator" Contentions should be Excluded Because They are not Relevant For Any Purpose Under this Factor............................................. 13

IV.  Anadarko's Hearsay and Other Arguments Do Not Withstand Scrutiny ....................... 15

     A.   Anadarko's Other Objections to the Proposed Expert Opinions and the Proffer are Meriless ……………………………………………………15

     B.   The Court Need Not Find any Duty to Intervene to Assess a Civil Penalty  17

     C.   Anadarko Has Had Ample Opportunity to Respond to the Proffer and to Mr. Walkup's Opinions and Is Not Entitled to a Continuance ........................ 19

V.   The United States Requests that the Evidence and Expert Report to Which Anadarko Objects be Admitted.  Alternatively, Anadarko's Requested Relief is Overbroad. ......... 19

CONCLUSION................................................................................................... 20

## TABLE OF AUTHORITIES

<u>Cases</u>

*Atlantic States Legal Found., Inc. v. Tysons Foods, Inc.*, 897 F.2d 1128 (11th Cir. 1990) ......... 14

*Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344 (5th Cir. 1983) ................................................. 16

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ................................................... 17

*Griffin v. Washington Convention Ctr.*,
    142 F.3d 1308 (D.C. Cir. 1998) ......................................................................................... 10

*In re: Deepwater Horizon*,
    No. 12-30883, 2014 WL 2519040 (5th Cir. June 4, 2014) .................................................. 14

*In re: Katrina Canal Breaches Consol. Litig.*,
    Nos. 05-4182 & 10-866, 2012 WL 2526980 (E.D. La. June 29, 2012) (Duval) ................. 9, 10

*Pub. Interest Research Grp. of New Jersey Inc. v. Powell Duffryn Terminals Inc.*,
    913 F.2d 64 (3d Cir. 1990) ................................................................................................. 14

*United States v. 14.38 Acres of Land, More or Less, in County, Miss.*, 80 F.3d 1074 (5th Cir.
    1996) ................................................................................................................................... 17

*United States v. Allard*,
    464 F.3d 529 (5th Cir. 2006) ............................................................................................. 11

*United States v. Allegheny Ludlum Corp.*, 187 F. Supp. 2d 426 (W.D. Pa. 2002), *aff'd in part,
    vacated in part*, 366 F.3d 164 (3d Cir. 2004) .................................................................. 14

*United States v. Carter*,
    801 F.2d 78 (2d Cir. 1986) ................................................................................................. 11

*United States v. CF Indus., Inc.*,
    542 F. Supp. 9 (D. Minn. 1982)........................................................................................... 18

*United States v. Cleveland*,
    No. 96-207, 1997 WL 321216 (E.D. La. June 11, 1997) (Vance) ........................................ 9, 10

*United States v. Coastal States Crude Gathering Co.*,
    643 F.2d 1125 (5th Cir. 1981) ............................................................................................ 14

*United States v. Delk*,
    586 F.2d 513 (5th Cir. 1978) ............................................................................................. 9, 10

*United States v. Egan Marine Corp.*,
  No. 08 C 3160, 2011 WL 8144393 (N.D. Ill. Oct. 13, 2011) ................................................... 15

*United States v. Fairchild*,
  505 F.2d 1378 (5th Cir. 1975) ................................................................................................... 11

*United States v. Gibson*,
  55 F.3d 173 (5th Cir. 1995) ....................................................................................................... 11

*United States v. Hall*,
  653 F.2d 1002 (5th Cir. 1981) ............................................................................................... 11, 12

*United States v. Marathon Pipeline*,
  589 F.2d 1305 (7th Cir. 1978) ................................................................................................... 14

*United States v. Marine Shale*, 81 F.3d 1329, 1337 (5th Cir. 1996) ........................................... 14

*United States v. Seale*, 600 F.3d 473, 491 (5th Cir. 2010) ......................................................... 16

*United States v. Texas Pipe Line Co.*,
  528 F. Supp. 728 (E.D. Okla. 1978), *aff'd*, 611 F.2d 345 (10th Cir. 1979).............................. 14

*United States v. Tex-Tow, Inc.*,
  589 F.2d 1310  (7th Cir. 1978) ................................................................................................. 14

*Utsey v. Olshan Foundation Repair Section Co. of New Orleans, LLP, et al.*,
  No. 05-2593, 2007 WL 4163664 (E.D. La. Nov. 19, 2007) ...................................................... 17

*Walker v. Yellow Freight Sys, Inc.*,
  *et al.*, No. 98-3565, 1999 WL 955364 (E.D. La. Oct. 19, 1999)......................................... 11, 12

Federal Rules

Fed. R. Evid. 402 ....................................................................................................................... 13

Fed. R. Evid. 703 ....................................................................................................................... 16

Other Authorities

21 Wright & Miller, *Fed. Prac. & Proc. Evid.* § 5039.1 (2d ed. 2005) ......................................... 9

29 Wright & Gold, *Fed. Prac. & Proc.* § 6274 (1997) ............................................................... 16

## LIST OF EXHIBITS

Exhibit 1 – Excerpts from Transcript of March 21, 2014 Status Conference

Exhibit 2 – Anadarko's March 3, 2014 Submission

Exhibit 3 – June 20, 2014 email from T. Lotterman to N. Flickinger with revised APC "other matters" contentions

Exhibit 4 – Table comparing APC's initial and revised "other matters" contentions

Exhibit 5 – APC Phase 1 deposition designations of Jonathan Sprague and Michael Beirne

Exhibit 6 – Kenneth Arnold Round One Report

Exhibit 7 – David Sunding Round One Report

Exhibit 8 – Excerpts from Deposition of David Sunding, October 30, 2014

Exhibit 9 – Gardner Walkup Round One Report

Exhibit 10 – Gardner Walkup Round Two Report

Exhibit 11 – Table linking APC experts' opinions to US expert's opinions

Exhibit 12 – Annotated version of disputed portions of Walkup's Round Three Report

Exhibit 13 – Excerpts from Deposition of Gardner Walkup, October 10, 2014

Exhibit 14 – Kenneth Arnold Round Three Report

Exhibit 15 – David Sunding Round Three Report

Exhibit 16 – Annotated version of disputed portions of Walkup's Round Two Report

Exhibit 17 – Gardner Walkup Round Three Report

**INTRODUCTION**

The following exchange occurred at the March 21, 2014, oral argument, prior to the ruling that Anadarko seeks to enforce:

> [United States]: …Anadarko has indicated that this same topic…the relationship between operators and non-operators…can come in under the final penalty factor…
> …
> Court:  is [the United States] right that Anadarko intends to put on some kind of case about this? What is your intent?
> [APC Counsel]:  No, Your Honor…What we have said is if there's going to be evidence, if they're going to be allowed to try to put in evidence that somehow, despite Your Honor's rulings, Anadarko has some kind of culpability <u>as a non-operator</u> here, then we're going to need to put in evidence <u>that sort of puts our spin on that evidence</u> and <u>shows why non-operators aren't culpable.</u>
> <u>But if this is out because there's no culpability, we're not going to introduce this ourselves.</u>  There's no reason to.  (emphasis added).[1]

Anadarko, contrary to its statements at the status conference, nonetheless retained virtually *all* of its non-operator contentions, and intends to bring to trial two experts to support the very contentions it stated during oral argument it would withdraw.  Apparently, Anadarko believes it can put on a full-fledged presentation concerning the innocence of non-operators and the unfairness of suing non-operators in general  – i.e. "put its spin on the evidence" – while at the same time benefiting from the preclusion of all specific evidence concerning its involvement at Macondo.

Nowhere in its opening brief does Anadarko mention its assurances to the Court at oral argument.  Instead, it misconstrues the Court's statement at the conference that such evidence is

---

[1] Ex. 1 (Transcript of March 21, 2014 Status Conference, at 35:21-25; 36:10-23).

precluded "from trial"—a clarification that the United States sought regarding Anadarko's "other matters" contentions—and implies that the statement applied only to the United States.[2]

Anadarko now argues that the United States cannot reference in any way Anadarko's involvement as a non-operator at Macondo in order to rebut Anadarko's experts' opinions regarding non-operators.  The evidence and expert opinion that Anadarko seeks to preclude, however, is inextricably intertwined with its own contentions concerning non-operators.  Anadarko has opened the door to a full response by the United States, which must include not only a discussion of non-operators in general, but also of evidence arising from Anadarko's role at Macondo in particular.  If Anadarko is allowed to introduce its expert reports and to pursue its "non-operator" contentions, fairness requires that United States be allowed to rebut these experts and contentions in full.  Alternatively, if the Court does not accept that preferred path forward, justice does *not* require consideration of Anadarko's expert reports and its "other matters" contentions putting Anadarko's "spin" on the role of non-operators.

## BACKGROUND[3]

Prior to the March 21, 2014 status conference on pending Motions *in Limine*, Magistrate Judge Shushan ordered all the parties to list all the contentions each party intended to make

---

[2] Ex. 1 (Transcript of March 21, 2014 Status Conference, 44:16-45:2).  *See, e.g.*, Anadarko Memorandum (APC Memo.) at p.1, fn 2.

[3] Anadarko's Motion *in Limine* and the United States' Opposition thereto set forth prior relevant procedural and substantive background. *See* Motion *in Limine* of Defendant Anadarko Petroleum Corporation to Exclude all Evidence Regarding Anadarko's Culpability, Rec. Doc. 12343, and the United States' Opposition thereto, Rec. Doc. 12462 ("US Opposition").  The United States' summaries of the relevant facts and evidence (virtually none of which are presently on the record) concerning Anadarko's involvement in connection with Macondo are set forth in the US Opposition, Rec. Doc. 12462, and in its June 2, 2014 Proffer of Evidence, Rec. Doc. 12965.

under the final penalty factor "other matters as justice may require."[4]  Anadarko listed eight

substantive contentions.  After the March 21, 2014 status conference, counsel for the United

States requested that Anadarko identify which contentions it intended to withdraw in light of the

Court's ruling on culpability.  On June 20, 2014, Anadarko provided the United States with a

redline of its earlier submissions,[5] which demonstrated that, despite its assurances to the Court,

Anadarko has retained in sum and substance all of its "other matters" contentions that relate

generally to the unfairness and purported consequences of penalizing non-operators.[6]  Anadarko

now has submitted reports of two experts, Mr. Arnold and Dr. Sunding, advancing virtually all of

these contentions.[7]  And the concern goes beyond the two experts:  Anadarko in Phase I already

designated testimony in approximately 94 admitted depositions,[8] which means it can pursue at

least some of its non-operator contentions without presenting expert testimony.

     Moreover, Anadarko will brook no rebuttal of its evidence on culpability.  It seeks to

strike portions of Mr. Walkup's Round Two and Three reports, APC Memo. at 14.  Mr. Walkup

did not mention Anadarko-specific evidence or facts until after Anadarko submitted the Round

---

[4] *See* Ex. 2 (Anadarko March 3, 2014 submission in response to Magistrate Judge Shushan's Order).

[5] *See* Ex. 3 (June 20, 2014 email from Thomas Lotterman to Nancy Flickinger and attached redline).

[6] Anadarko made only two relevant revisions.  All remaining contentions are the same except for renumbering.  *See* Ex. 4 (table identifying and comparing APC's "other matters" contentions).

[7] Round One reports are the initial expert reports filed on August 15, 2014.  Round Two are September 12, 2014 responses to the adverse parties' Round One reports.  Round Three reports are September 26, 2014 rebuttal reports to Round Two reports.  *See, e.g.*, Rec. Doc. 12688 (April 21, 2014 Order regarding Penalty Phase Schedule).

[8] The Anadarko-designated testimony in Phase I totals over 65,782 lines or roughly 2631 pages – which are already admitted into the Phase I record.  *See, e.g.*, Ex. 5 (Anadarko Phase I designations for Jonathan Sprague and Michael Beirne).

One reports of Mr. Arnold and Dr. Sunding.[9]  Now that it is clear that Anadarko is determined to

present its case concerning non-operators, Mr. Walkup's Round Two and Round Three reports

should not be stricken.

## ARGUMENT

I. **Anadarko's "Other Matters" Contentions are Inextricably Intertwined with Evidence of Its Involvement With the Macondo Well and the Incident.**

A. <u>Anadarko's Experts Pursue its "Non-operator" Contentions.</u>

Mr. Arnold's reports essentially bolster Anadarko's position that BP as the operator is

responsible and that Anadarko had little information or control over activities at Macondo.[10]  Mr.

Arnold's opinion is based on factual assertions regarding those key issues on which discovery

was focused in Phase I with respect to Anadarko's role at Macondo, including the asserted

limited ability of non-operators to influence events, the characterization of the operator/non-

operator relationship, interpretation of the Joint Operating Agreement (JOA) and the amount of

information non-operators have, as well as how that influence can be exerted.[11]  In Section IV of

---

[9] The United States may file a motion to exclude portions of Dr. Sunding's reports for reasons unrelated to the disputed evidence pursuant to the Court's scheduling order and does not concede that his opinions are otherwise relevant or admissible.

[10] Headings reflect the thrust of Mr. Arnold's opinion:  Section III is entitled "Only the Operator of the Lease can Create and Maintain the Culture Necessary for Offshore Safety," and Section IV is entitled, "NO-WIOS [non-operating working interest owners] Cannot Control Operations and are not Situated to Ensure Offshore Safety."  Ex. 6 (Arnold, Round One Report, Table of Contents).

[11] For example, Mr. Arnold states:

> In my opinion, the key to offshore safety is for operations to be performed within a culture of safety, and only the Operator can establish and maintain that culture.  *NO-WIOs by contrast, lack the information and capacity to control and influence operational decisions.*  Making them responsible for offshore safety will not improve safety but will create confusion, slow response time… and reduce safety overall.

Ex. 6 (Arnold Round One Report, Summary, p.2) (emphasis added).

his Round One report, Mr. Arnold makes assertions clearly linked to APC's involvement at Macondo, where the well was sidetracked, where drilling stopped before reaching objectives, and where the Incident occurred during temporary abandonment procedures.[12]  The United States should be permitted to rebut Mr. Arnold's contentions with facts related to APC's involvement at Macondo.

Dr. Sunding similarly assumes that the role of non-operators in deepwater drilling is that of merely "passive investors,"[13] without access to information or ability to control operations. He bases his opinion in part on a "review of operator and non-operator financial and operational relationships in offshore oil and gas exploration and production."[14]  He cites the "practical limits on an investor's access to information,"[15] but concedes that his understanding of the information provided to Anadarko is "general."[16]  The United States should be able to rebut Dr. Sunding's

---

[12] Mr. Arnold further states:

> During exploration, a NO-WIO might have informal conversations with the Operator's staff, such as when the Operator is preparing an AFE to drill a well or change the scope of an approved AFE (*e.g. sidetrack a well because of drilling problems, temporarily abandon (or plug and abandon) a well before reaching the agreed objectives.*)  But a NO-WIO is not expected to check design calculations or detailed operating procedures. A NO-WIO has extremely limited influence.

Ex. 6 (Arnold Round One Report, p.5) (emphasis added).

[13] Ex. 7 (Sunding Round One Report, p.2).

[14] Ex. 7 (Sunding Round One Report, p.2).

[15] Ex. 7 (Sunding Round One Report, Section I.D.2).

[16] Ex. 8 (Sunding Dep. at 251:8-16 ("Q: …I'm trying to figure out what particular limitation you're concerned about that made penalizing a non-operator inefficient.  Did you review the daily reports that Anadarko had access to?  A:  No.  And I will represent to you that my assumptions along these lines are general."); *id.* at 252:19-253:2 ("Q: …So you're rendering an opinion on information, but you're not rendering an opinion on any specific information?  A:  Correct.")

general assertions with specific information.  Similarly, Dr. Sunding opined generally on the issue of non-operator's lack of control over safety measures,[17] although he did no investigation of whether Anadarko took all possible precautions at Macondo or whether Anadarko could have invested in the safety choices that occurred at Macondo.  At a minimum the United States should be able to present contradictory, specific information concerning Anadarko's conduct at Macondo.[18]  Moreover, Dr. Sunding acknowledged that having some, even imperfect information, concerning activities of the operator can decrease the "moral hazard" that forms the basis of some of his opinions, making evidence of such information relevant.[19]

B. <u>Mr. Walkup Directly Responds to the Anadarko Experts' Contentions.</u>

In his Round Two report, Mr. Walkup responds to Mr. Arnold's and Dr. Sunding's Round One reports.  He states that Dr. Sunding has misapprehended the nature of the operator/non-operator relationship so that the literature Dr. Sunding cites does not support his conclusions.  Mr. Walkup also opines, contrary to Mr. Arnold, that NOPs can positively influence offshore safety by participation in the design phase and active monitoring to compare drilling progress with the well design.[20]  He further opines, in Section IV of his Round Two report, based in part on the record in this case, that non-operators have the information and

_____

[17] Ex. 7 (Sunding Round One Report, Section I.D.2).

[18] Ex. 8 (Sunding Dep. at 268:8-19).

[19] Ex. 8 (Sunding Dep. at 263:4-264:8).

[20] Mr. Walkup takes the position that non-operators typically obtain a well design and either participate in the planning process or meet with the operator and other players to be briefed on it.  Ex. 9 (Walkup Round One Report, Section 5.2, pp.10-12); Ex. 10 (Walkup Round Two Report, Section 4.1, pp.19-20).

capacity to positively influence health, safety and environmental ("HSE") activities, pointing to evidence related to Anadarko to support many of his points.[21]

Anadarko asserts that its experts merely premise their opinions on the Court's ruling precluding culpability evidence – i.e. that it is their "jumping off point."[22]  Its contentions and expert opinions, however, implicate key aspects of the operator and non-operator relationship: Anadarko's experts go beyond merely "jumping off" from the Court's ruling that Anadarko had no duty to intervene and had no fault for the Incident, to characterizing and making assumptions about operators and non-operators.  A few examples suffice to reveal the evidentiary line-drawing that Anadarko is asking the Court to endorse:

| Anadarko would permit/admit into evidence | Anadarko would preclude |
| --- | --- |
| **In:** opinions based on "asymmetrical information" between Operators and Non-Operators, (Sunding Round One, pp.7-8) or opinions that "the type and quality of information furnished to a [non-operator] is typically not sufficient for a [non-operator] to monitor operations on a real-time basis (Arnold Round One, p.5). | **Out:** any evidence regarding the information that Anadarko actually received pursuant to the operating agreement at Macondo, as well as evidence as to how Anadarko actually used that information and any opinions on how Anadarko could use that information. |
| **In:** general and non-specific assertions about non-operator's lack of control or influence, Arnold Round One pp.5-6, and Sunding Round One (pp.7-8) | **Out:** any contrary or clarifying evidence regarding a non-operators' influence if it relates to Macondo or Anadarko in particular. |

---

[21] For example, he opines that Anadarko knew of prior kicks and losses at Macondo, that it knew about the fragile condition of the wellbore at the bottom, and that, while Anadarko had no duty to do so, in Mr. Walkup's opinion an active non-operator had an opportunity to, and would have, made inquiry concerning BP's plans for zonal isolation. Ex. 10 (Walkup Round Two Report, Executive Summary p.3 and Section 4, pp.18-27).

[22] APC Memo at 4.  *See also* Ex. 8 (Sunding Dep. at 207-208 (culpability ruling was his "jumping off point.")).

| | |
|---|---|
| **In:** Mr. Arnold's statements that industry articles cited by Mr. Walkup are not relevant because they pertain to the development phase of deepwater drilling and not the exploration phase, "*i.e. the phase during which the Macondo Well blew out*" (Arnold Round Two, p.4).  *See also* Arnold Round One Report, p.5, fn.18. | **Out:** Mr. Walkup's opinions based on evidence or facts at Macondo to contradict, limit, or distinguish any opinions and factual assertions made by Anadarko's experts. |
| **In:**  Assertions that non-operators typically do not obtain design information or verify important calculations, Arnold Round One, p. 5 and fn.17. | **Out:**  Mr. Walkup's opinion that it is industry custom for non-operators to participate actively in design of deepwater wells and to attend pre-spud meetings as applicable; his observation that Anadarko had an opportunity but failed to do so; and his opinion that such passivity is not a positive role. |

Clearly the United States should not be required to tiptoe along whatever line Anadarko is trying to draw.  The clearest record of the relationship between an operator and a non-operator adduced in this litigation is provided by the witness testimony and documents concerning the relationship between BP and Anadarko.  Even a cursory review of the portions of Mr. Walkup's report that Anadarko seeks to strike shows that Mr. Walkup's references to Anadarko-specific or Macondo-specific evidence is expressly linked to assertions or contentions that Anadarko's experts make, or supports a point being made concerning non-operators.[23]

## II.     Anadarko's Contentions Concerning Non-Operators Under the "Other Matters" Penalty Factor Opens the Door for the United States to Present Evidence Concerning Anadarko's Conduct as a Non-Operator in Connection with Macondo.

Since Anadarko has not withdrawn its "other matters" contentions, and has designated two experts to advance them, the United States seeks to present evidence pertaining to those

---

[23] A fuller and more detailed table linking assertions by Mr. Arnold and Dr. Sunding to Macondo-specific responses from Mr. Walkup is attached as Exhibit 11 to this brief.  To assist the Court, the Macondo-specific references in disputed portions of Mr. Walkup's Round Three Report are highlighted in Exhibit 12 to show the intertwined nature of the general discussion of non-operators and the Macondo-specific opinions.

contentions, and to discuss Anadarko's nexus with the Macondo Well and the Incident fully and freely. As one treatise explains, irrelevant and inadmissible evidence can become both relevant and admissible as parties offer evidence:

> [A]s the parties offer relevant evidence to prove their cases, each bit of evidence opens up new avenues of refutation and confirmation that expand the realm of relevance beyond those consequential facts expressed in the pleadings. For example, at the outset of a prosecution for sexual child abuse the defendant's religious beliefs would be irrelevant and inadmissible. But suppose to disprove the consequential fact of intent, the defendant were to testify that his purpose in touching the victim was religious instruction. Now the nature of the defendant's religious beliefs becomes both relevant and admissible.

21 Wright & Miller Fed. Prac. & Proc. Evid. § 5039.1 (2d ed. 2005). In both a civil and criminal context, the scope of rebuttal evidence is within the discretion of the trial court.[24]

The Fifth Circuit, in *United States v. Delk*, 586 F.2d 513, 516 (5th Cir. 1978), articulated the standard for rebuttal testimony:

> [I]t is well settled that the purpose of rebuttal testimony is 'to explain, repel, counteract, or disprove the evidence of the Adverse party' …. and if the defendant opens the door to the line of testimony, he cannot successfully object to the prosecution 'accepting the challenge and attempting to rebut the proposition asserted.'

(citations omitted). In *Delk*, the Defendant was indicted for receiving, concealing and storing stolen vehicles. The government failed to disclose timely three tag receipts that demonstrated that the license plates on the vehicles had been switched. Therefore, that evidence was excluded from its case in chief. The Defendant, however, made a central element of the defense his lack of concealment of the stolen cars and trucks. 586 F.2d at 515. The district court accordingly allowed the government to present the three tag receipts in its rebuttal case to show concealment.

---

[24] *United States v. Cleveland*, No. 96-207, 1997 WL 321216, at *1 (E.D. La. June 11, 1997) (Vance); *In re: Katrina Beaches Consol. Litig.*, Nos. 05-4182 & 10-866, 2012 WL 2526980, at *1 (E.D. La. June 29, 2012) (Duval).

On appeal, the Defendant argued that it was error to admit the tag receipts into evidence on

rebuttal because he had offered no evidence with respect to the tags.  The Fifth Circuit rejected

that position:

> We are compelled to hold that when the defendant bore down so extensively on
> lack of physical concealment, the government was entitled to rebut this with proof
> that he was nevertheless guilty of concealment in another form.

*Id.* at 519.  Anadarko similarly now complains that its experts have not expressly mentioned

Anadarko or Macondo, but it nonetheless has "borne down" extensively on its role as a non-

operator at Macondo by discussing non-operators generally in exploration and deepwater drilling

activities.  Therefore, it similarly has opened the door.[25]  The standard for rebuttal reports

articulated in the *Delk* opinion has been adopted in Fifth Circuit civil cases as well.  *See, e.g.*,

*Katrina Canal Breaches Consol. Litig.*, *supra*, 2012 WL 2526980, at *1.  A party can open the

door to admissibility of matters excluded by a prior motion *in limine*, especially if necessary to

prevent a jury from forming an erroneous impression.[26]

Here, Anadarko's portrays non-operators in a one-sided and incomplete manner.  The

Fifth Circuit has held in criminal cases that a defendant may not seek to create a false

impression, and, if it does, otherwise inadmissible evidence may be presented in rebuttal—*even*

*when there are constitutional barriers to the admissibility of the evidence in a case in chief.*

---

[25] *United States v. Cleveland*, *supra*, 1997 WL 321216, at *1 (overruled defendant's objection that proposed testimony of government agent and tape recording were not proper rebuttal evidence because evidence did not relate to offered testimony of defendants, where tape related to state of mind on issue and defendant had called witness to testify to state of mind.)

[26] *Griffin v. Washington Convention Ctr.*, 142 F.3d 1308, 1312 (D.C. Cir. 1998) (in employment discrimination case, magistrate erred in excluding supervisor's statement that plaintiff should be home, barefoot and pregnant, when defendant opened the door through self-serving statements about his lack of discriminatory intent.)  "Once the door is opened, the other party can get through it otherwise irrelevant evidence 'to the extent necessary to remove any unfair prejudice . . . .'" *Id.*

Thus, although generally prosecutors may not point to a criminal defendant's silence following his arrest and Miranda warnings, the Fifth Circuit held, in *United States v. Fairchild*, 505 F.2d 1378, 1383 (5th Cir. 1975), that preclusion of such evidence should not permit a defendant to create a false impression before the factfinder, holding that evidence was not excluded "so that the defendant may freely and falsely create the impression that he has cooperated with the police, when, in fact, he has not."[27]

Where a defendant, as Anadarko does here, is pointing to general community norms – i.e. industry customs and practices – the opposing party should be permitted to present specific evidence as to the defendant's adherence to those norms in the circumstances of the case. *See, e.g.*, *United States v. Carter*, 801 F.2d 78, 83-85 (2d Cir. 1986) (the Court upheld criminal convictions in an arms trafficking matter and found rebuttal evidence of stolen guns to be relevant, along with the obliterated serial number, because defendant had opened the door by discussing community norms in local area regarding gun ownership).

Anadarko relies on two cases to support its position that it has not opened the door to rebuttal and therefore Mr. Walkup's Anadarko-specific statements concerning non-operators should be precluded. *See* Anadarko Memo. pp. 8, 10-11, citing *United States v. Hall*, 653 F.2d 1002, 1007 (5th Cir. 1981) and *Walker v. Yellow Freight Sys., Inc. et al.*, No. 98-3565, 1999 WL 955364 (E.D. La. Oct. 19, 1999) (Clement). Both cases are distinguishable. In *Hall*, the Fifth

---

[27] *See also United States v. Allard,* 464 F.3d 529, 535 (5th Cir. 2006) (no abuse of discretion where government agent called in rebuttal to explain facts and circumstances of defendant's confession, to counter defendant's allegations that her confession was coerced, because it is "only fair to permit government, in response, to set the scene of that confession."); *United States v. Gibson*, 55 F.3d 173, 179-180 (5th Cir. 1995) (no abuse of discretion in admitting evidence of prior bad acts on rebuttal where defendant portrayed himself to be completely innocent of involvement with distribution of methamphetamine, since admitted testimony of purchaser of drug "merely completed the picture" as to [defendant's] true involvement and knowledge, thereby correcting a distorted view).

Circuit held that defendant's argument that there was no corroborating physical evidence of the crime was not sufficient to open the door to the rebuttal testimony of a government agent concerning general government investigatory procedures.  But in *Hall*, the relevance of the rebuttal testimony to defendant's case was attenuated, and the Court also was clearly troubled by the prejudicial nature of the rebuttal testimony, which it characterized as "little more than a (quasi-) expert commentary on the strength of the government's proof," the "sole purpose" of which "was to inform the jury that it need not view the absence of corroborating physical evidence as a weakness." *Hall*, 653 F.2d at 1007.  Thus it did not find the rebuttal testimony to be relevant.  Here, however, Anadarko's own counsel conceded that its "other matters" contentions were to "put a spin" on its lack of culpability.  A comparison of Anadarko's experts' reports and Mr. Walkup's response shows a direct connection, *see, e.g.*, discussion *supra* at Section I and Ex. 11.  Given that Anadarko through its expert reports continues to "bear down extensively" on the issue of non-operators' culpability in general, it should be governed by *Delk* and not *Hall*, and the Anadarko- and Macondo-specific evidence should be admitted.

Second, the *Yellow Freight* case involved rulings on motion *in limine* prior to a jury trial of a negligence case where liability for a death was disputed.  Defendant's expert was to testify concerning safety regulations and industry standards which presumably related to the standard of care and were relevant to defendant's liability for negligence.  The Court found that the rebuttal report of the plaintiff's expert went beyond the scope of defendant's testimony and did not render any opinions on safety regulations and industry standards.  *Yellow Freight*, 1999 WL 955364, at *8.  Here, however, Anadarko has been held liable as an owner.  In these penalty phase proceedings, Mr. Walkup is directly responding to Mr. Arnold and Dr. Sunding's

contentions about the role of non-operators in the oil and gas industry, and supports his opinions with, among other evidence, information about Anadarko's role as a non-operator in this case.

If the Court permits Anadarko to retain its contentions and introduce the testimony of its experts, then the Court should also permit the United States to rebut that evidence by admitting the Proffer, certain Penalty Phase depositions, the exhibits on the trial exhibit list, and Mr. Walkup's testimony.

### III.     Alternatively, Anadarko's "Non-operator" Contentions should be Excluded Because They are not Relevant For Any Purpose Under this Factor.

Anadarko's desired approach – to permit Anadarko to present evidence concerning non-operators but not to permit the United States to respond fully – is not supportable given the tie between the Anadarko experts' opinions, factual assertions and assumptions and Mr. Walkup's response.  The Court should either permit both parties to present their respective positions on the contentions regarding non-operators and Anadarko's culpability here, or, in the alternative, accept Anadarko's position that Mr. Arnold's and Dr. Sunding's opinions are *not* submitted with respect to the culpability penalty factor, in which case their views are of little relevance, justice does not require their consideration, and they should be excluded.

The essential prerequisite of admissibility is relevance.  Fed. R. Evid. 402.  The expert opinions of Mr. Arnold and Dr. Sunding merely bolster Anadarko's claim that owners who are non-operators in the oil and gas industry warrant special consideration and should be exempt from a civil penalty – but that is simply another means to argue that Anadarko should not be assessed a civil penalty because it is an owner without fault.  Courts have rejected similar fault-

based arguments from owners since the early days of the CWA and upheld assessment of appropriate penalties against non-negligent owners.[28]

Likewise, Mr. Arnold's arguments that BSSE, the USCG, and EPA have not previously taken enforcement action against a NO-WIO engaged in offshore drilling bear little other relevance to these penalty proceedings if evidence of the degree of culpability is precluded. Indeed, some courts have deemed defendant's arguments concerning federal or other enforcement as irrelevant to civil penalties, including EPA's inaction or delay in issuing permits,[29] or alleged lack of due diligence of the citizen plaintiffs.[30]

---

[28] The Fifth Circuit, in *United States v. Coastal States Crude Gathering Co.*, 643 F.2d 1125, 1128 (5th Cir. 1981), found no due process violation in imposition of a civil penalty against an owner who bore no fault for a discharge of oil from a pipeline. *Accord*, *United States v. Marathon Pipeline*, 589 F.2d 1305, 1308-10 (7th Cir. 1978); *United States v. Tex-Tow, Inc.*, 589 F.2d 1310, 1313-14 (7th Cir. 1978); *United States v. Texas Pipe Line Co.,* 528 F. Supp. 728 (E.D. Okla. 1978), *aff'd*, 611 F.2d 345 (10th Cir. 1979) (311(b)(6) administrative penalty assessment). *Compare*, *In re: DEEPWATER HORIZON*, No. 12-30883, 2014 WL 2519040, at *4 (5th Cir. June 4, 2014) (Section 311 civil penalty liability carves out no third-party fault exception and such issues are left for penalty phase).

[29] *See, e.g.*, *Pub. Interest Research Grp. of New Jersey Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 81 (3d Cir. 1990) (holding under CWA Section 309(d) that district court erred in reducing civil penalty due to EPA inaction under final penalty factor of "as justice may require," where elsewhere the court found no good faith efforts to comply); *United States v. Allegheny Ludlum Corp.*, 187 F. Supp. 2d 426, 430-47 (W.D. Pa. 2002), *aff'd in part, vacated in part*, 366 F.3d 164 (3d Cir. 2004) (district court not persuaded that length of time for EPA to approve a permit is a mitigating factor). *Compare*, *United States v. Marine Shale*, 81 F.3d 1329, 1337 (5th Cir. 1996) (where district court considered EPA's delay in ruling on permit amendment a mitigating factor, Marine Shale's argument that penalty not sufficiently reduced unconvincing.)

[30] *Atlantic States Legal Found., Inc., v. Tysons Foods, Inc*., 897 F.2d 1128, 1141 (11th Cir. 1990) (the Eleventh Circuit reversed a district court assessing CWA Section 309(d) penalties for, among other things, reducing the civil penalty based on the alleged lack of diligence of plaintiffs, instructing the district court on remand that "the district court's perception of the efforts of [citizen plaintiff] to secure information should play no role in its calculation of the appropriate fine.")

Nor do Dr. Sunding's opinions require consideration under the final penalty factor.[31]  Dr. Sunding repeatedly enters into the province of the Court, including a Section instructing the court how to appropriately weigh the eight penalty factors,[32] where he concedes that he did not rely on his economic expertise or conduct an independent analysis,[33] but instead relies almost exclusively on statements in documents generated as part of this litigation, including stipulations and Anadarko's own discovery responses.[34]  He contends that no civil penalty should be levied against Anadarko, despite language in the Clean Water Act and case law indicating that a penalty is required.  *Compare,* Ex. 7 (Sunding Round One Report, p. 16) *and United States v. Egan Marine Corp*., No. 08-C-3160, 2011 WL 8144393, at *5 (N.D. Ill. Oct. 13, 2011) and citations therein.  He asks the court to apply economic theories to its assessment of the penalty factors but concedes that he is not a lawyer and that he did not attempt to square his opinion with legislative history or Congressional intent.[35]  For all those reasons, justice does not require consideration of Dr. Sunding's opinions.

---

[31] As noted *supra*, the United States does not concede that Dr. Sunding's opinions are admissible as expert testimony, and may file a motion to exclude portions of his testimony pursuant to the Court's scheduling order for pre-trial motions.

[32] Ex. 7 (Sunding Round One Report, Section III.B, "The CWA § 311 Penalty Factors Weigh in Anadarko's Favor.")

[33] Ex. 8 (Sunding Dep. at 287:24-300:4).

[34]  Ex. 7 (Sunding Round One Report, pp.17-20, ns 44-47, 52-58, 60-62).

[35] *See* Ex. 8 (Sunding Dep. at 144-149 (in his review of legislative history, he did not see references to optimal or absolute deterrence or "see anybody citing Posner or anything like that").

IV.     **Anadarko's Hearsay and Other Arguments Do Not Withstand Scrutiny.**

For the reasons set forth above, Mr. Walkup's expert reports, the evidence on which he relies, and the evidence summarized in the United States' Proffer, are properly admissible under Fifth Circuit precedent.  Anadarko's remaining points can be readily addressed.

A.     Anadarko's Other Objections to the Proposed Expert Opinions and the Proffer are Meritless.

Anadarko contends that Mr. Walkup's opinions are "inadmissible hearsay," and that he is merely parroting factual evidence under the guise of expert opinion, APC Memo. at 12-13.  First, the hearsay objections drop away once the evidence is admitted into the record,[36] and the United States has pointed out the compelling reasons (including Anadarko's factual contentions and previously-designated Phase I testimony) why the evidence should come in even absent Mr. Walkup's expert testimony.  *See* Section I, *supra*.  Second, Rule 703 permits admission of an expert's opinion, even when the facts underlying the expert's opinion are not admissible.[37]  Here, there is no reason to claim that the evidence Mr. Walkup cites is inherently unreliable:  it is comprised of sworn party admissions by Anadarko witnesses, or other deposition testimony, all with counsel present, and of documents produced by Anadarko or BP regarding their communications.  Moreover, Mr. Walkup's opinion is not solely based on the evidence obtained during discovery but also on his past and present experience with non-operators and on industry literature.  *See* Walkup Round Two Report and Round Three Reports, Exhibits 10 and 17 hereto.

---

[36] Rule 703 permits expert testimony to be based on three possible sources: firsthand knowledge, admitted evidence, and facts or data not admitted into evidence if of a type reasonably relied upon by experts in the particular field.  Advisory Committee Notes, 1972 Amendments; 29 Wright and Gold, Federal Practice & Procedure § 6274 (Bases for Expert Opinion) (1997); *Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344, 349-350 (5th Cir. 1983) (no error in admitting expert's opinion where it was based on plaintiff's testimony at trial); *United States v. Seale*, 600 F.3d 473, 491 (5th Cir. 2010) (Under Rule 703, expert may base his opinion on facts or data presented at trial).
[37] *Id.*

These multiple bases for his opinion provide greater indicia of reliability and debunk Anadarko's

claim that he is not rendering any opinion.

Nor is it surprising that an expert opining on the relationship between operators and non-

operators reasonably relies on evidence from the case that is probative of that relationship,

including the communications between the operator and non-operator, the contractual terms and

their implementation in practice, and so forth.  As a general rule, questions related to the bases

and sources of an expert's opinion rather than its admissibility should be left for cross-

examination and the factfinder's consideration.[38]  Especially in this non-jury bench trial,

Anadarko's hearsay objections are without basis.

> B.  <u>The Court Need Not Find any Duty to Intervene to Assess a Civil Penalty.</u>

APC has launched a frontal assault on the propriety of assessing any CWA penalty

against it simply because under maritime tort law it would not be liable.  The thrust of the Arnold

and Sunding expert opinions is that BP, as the operator, should be bear responsibility for

everything pertaining to safety, and that Anadarko, having paid a settlement to BP, should pay

*zero* penalty for its Clean Water Act liability.[39]  Mr. Walkup, in his expert reports, and the

United States in general, is merely responding to Anadarko's overarching argument that, as a

non-operator and "passive investor," Anadarko is somehow exempt from significant

consequences under the Clean Water Act.  To that end, Mr. Walkup not only discusses the role

---

[38] *United States v. 14.38 Acres of Land, More or Less, in County, Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.,* citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993); *accord, Utsey v. Olshan Foundation Repair Section Co. of New Orleans, LLP, et al.*, No. 05-2593, 2007 WL 4163664, at *3 (E.D. La. Nov. 19, 2007).

[39] *See, e.g.*, Ex. 7 (Sunding Round One Report, p.16); Ex. 6 (Arnold Round One Report, p.9) ("[T]he operator, therefore, should be held accountable for safety problems.  Holding a NO-WIO accountable for offshore safety is not in the public interest.").

of non-operators in general,[40] but also demonstrates that, as a partial owner of the Macondo Well who was in privity with BP, Anadarko had a nexus with the Macondo Well and with the Incident that has important implications to a penalty determination.

Consistent with the fact that Anadarko is still operating in the maritime negligence framework, Anadarko also argues that Mr. Walkup's opinions are contrary to the Court's rulings that Anadarko breached no duty to intercede.  APC Memo. at 11.  But the CWA is different in purpose and concept.  *See, e.g.*, *United States v. CF Indus., Inc.*, 542 F. Supp. 952, 955-56 (D. Minn. 1982) (holding in CWA suit under Section 309 that "[i]n contrast to the Limitation Act, the CWA's purpose is neither economic nor old" and that "the public policies embodied in the CWA are stronger and more important than those embodied in the Limitation Act.").  In fact, Mr. Walkup conceded that Anadarko did not have information or data that BP did not have, and expressly acknowledges that Anadarko had no duty to intercede.[41]  The Court already has found Anadarko strictly liable in this case, and United States has no intention, obligation or burden to prove any duty to intercede on the part of Anadarko in order to obtain a civil penalty.

---

[40] For example, Mr. Walkup contends that "a non-operator is in a position to influence and weigh in on the contents and decision made in the well plan and it is industry best practices to do so" Ex. 10 (Round Two Report, p.19), "non-operators have [the] ability to obtain a significant amount of HSE relevant information," (*id.* at p.21), "NOPs are well positioned, and have financial and strategic reasons, to monitor the progress of the deepwater activities closely and to raise any technical and safety concerns." (*id.* at p.22). "The operating agreement also provides non-operators with the capacity to influence key operational and HSE decisions and contradicts the positions of Dr. Sunding and Mr. Arnold." (*id.* at p.25).

[41] Ex. 13 (Walkup Dep. at 178:23-179:15) (Anadarko did not have information that BP did not have.); Ex. 10 (Walkup Round Two Report, p.23) ("*Although I am advised that Anadarko had no legal duty to ask BP questions at this time*, in my opinion, it was positioned to play a constructive role . . . .") (emphasis added).

Note, however, counsel for Anadarko elicited from Mr. Walkup in cross-examination – after persistent questioning – a concession that Mr. Walkup believes that, as an active participant, Anadarko should have intervened and posed questions concerning zonal isolation and temporary abandonment.  Ex. 13 (Walkup Dep. at 298)  That opinion is not a legal conclusion, and the United States will not request in the Penalty Phase that the Court find that Anadarko had a legal duty to intervene.

18

C.   Anadarko Has Had Ample Opportunity to Respond to the Proffer and to Mr. Walkup's Opinions and Is Not Entitled to a Continuance.

Anadarko now protests that it "did not anticipate that its conduct would be at issue" and claims that "fairness would demand a continuance" and reopening of discovery.  APC Memo. at 6.  Yet Anadarko is calling its experts Mr. Arnold and Dr. Sunding, and retaining its broad "other matters" contentions *voluntarily* despite its promises to the Court that it would not.  In any event, the record shows that Anadarko has had ample opportunity to address the disputed evidence, that it has been treated fairly in the Penalty Phase and no continuance is necessary.

First, the disputed depositions and associated exhibits were bundled prior to the Phase I trial and Anadarko participated in the Phase I designations and objections.  The United States has merely resubmitted some of these depositions on its Penalty Phase bundle list and Anadarko has designated additional testimony and raised additional objections in this Phase.

Second, the scheduling order in this Phase gave Anadarko a month to make any proffer it desired in response to the US Proffer.  Rec. Doc. 12688 (July 2, 2014 deadline).  Anadarko declined to file a substantive response.  Rec. Doc. 13100.

Finally, Anadarko had an opportunity to respond to the evidence cited to support opinions in Mr. Walkup's Round Two report.  While both Mr. Arnold and Dr. Sunding submitted Round 3 Reports, each declined to respond to the evidence put forward by Mr. Walkup.[42]

**V.    The United States Requests that the Evidence and Expert Report to Which Anadarko Objects be Admitted.  Alternatively, Anadarko's Requested Relief is Overbroad.**

For the foregoing reasons, the United States moves to have the evidence listed in in its Motion be admitted in full.  Alternatively, in the event the Court elects to grant Anadarko's

---

[42] Ex. 14 (Arnold Round Three Report, p.6); Ex. 15 (Sunding Round Three Report).

Motion, the relief that Anadarko requests is overbroad.  *See* APC Memo. at 14.  *See e.g.*, Ex. 12

and 16 (highlighting only the Macondo-specific references in the disputed portions of Walkup's

Round Two and Three Reports).  There is no basis to redact anything other than the Macondo-

specific references and such references also would need to be redacted from Mr. Arnold's and

Dr. Sunding's reports.

## CONCLUSION

The United States requests that the Court deny Anadarko's Motion to Enforce and grant the

United States' Motion *in Limine*.


Respectfully submitted,


| | |
|---|---|
| JOYCE R. BRANDA | SAM HIRSCH |
| Acting Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources |
| PETER FROST | Division |
| Director, Torts Branch, Civil Division | SARAH HIMMELHOCH |
| Admiralty and Aviation | Senior Litigation Counsel |
| STEPHEN G. FLYNN | NANCY FLICKINGER |
| Assistant Director | Senior Attorney |
| SHARON SHUTLER | RICHARD GLADSTEIN |
| MALINDA LAWRENCE | PATRICK CASEY |
| LAURA MAYBERRY | Senior Counsel |
| Trial Attorneys | A. NATHANIEL CHAKERES |
| | JUDY HARVEY |
| R. MICHAEL UNDERHILL, T.A. | RACHEL KING |
| Attorney in Charge, West Coast | ERICA PENCAK |
| Office | ABIGAIL ANDRE |
| Torts Branch, Civil Division | RACHEL HANKEY |
| U.S. Department of Justice | BRANDON ROBERS |
| | Trial Attorneys |
| KENNETH A. POLITE, JR. | |
| United States Attorney | |
| Eastern District of Louisiana |  /s/ Steven O'Rourke |
| SHARON D. SMITH | STEVEN O'ROURKE |
| Assistant United States Attorney | Senior Attorney |
| Eastern District of Louisiana | Environmental Enforcement Section |

20

650 Poydras Street, Suite 1600          U.S. Department of Justice
New Orleans, LA  70130                  P.O. Box 7611
Telephone:  (504) 680-3000              Washington, D.C. 20044
Facsimile:  (504) 680-3184              Telephone:  202-514-2779
E-mail:  sharon.d.smith@usdoj.gov       Facsimile:   202-514-2583
                                        E-mail:  steve.o'rourke@usdoj.gov


Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date:  December 2, 2014.                    /s/ Steve O'Rourke

                                            U.S. Department of Justice