# EXHIBIT 13

## to

**PLAINTIFF UNITED STATES' MEMORANDUM IN SUPPORT OF (1) ITS MOTION *IN LIMINE* TO ADMIT EVIDENCE PERTAINING TO ANADARKO'S CONTENTIONS CONCERNING NON-OPERATORS AND (2) IN OPPOSITION TO ANADARKO'S MOTION TO ENFORCE THE COURT'S ORDER EXCLUDING CULPABILITY EVIDENCE AGAINST ANADARKO**

1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
 2
 3   IN RE:  OIL SPILL      )    MDL NO. 2179
     by the OIL RIG,        )
 4   DEEPWATER HORIZON in   )    SECTION "J"
     the GULF OF MEXICO,    )
 5   April 20, 2010         )    JUDGE BARBIER
                            )
 6                          )    MAG.  JUDGE
                            )    SHUSHAN
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21          Videotaped and oral deposition
22   of GARDNER WALKUP, taken at Pan-American
23   Building, 601 Poydras Street, 11th Floor, New
24   Orleans, Louisiana, 70130, on the 10th of
25   October, 2014.
```

```
 1        VIDEOGRAPHER:  Today is Friday,
 2  October 10th, 2014.  This is the deposition
 3  of Gardner Walkup in the matter of the oil
 4  spill by the oil rig DEEPWATER HORIZON in the
 5  Gulf of Mexico on April 20th, 2010.  We are
 6  on the record at 8:01 a.m.
 7              GARDNER WALKUP,
 8  having been first duly sworn, testified as
 9  follows:
10                 EXAMINATION
11  BY MR. LOTTERMAN:
12      Q.    Mr. Walkup, my name is Tom
13  Lotterman.  I'm an attorney with the law firm
14  of Bingham McCutchen in Washington, D.C., and
15  I represent Anadarko in this litigation.
16  With me today to my right is David Halverson,
17  a colleague of mine.  That's Ken Arnold, one
18  of our experts.  I think you're familiar with
19  him.  And then Bryan Killian at the end of
20  the table.  Professor Dave Sunding may be
21  showing up in a bit, but we'll start without
22  him.
23            Let me give you -- first of all,
24  have you had your deposition taken before
25  today?
```

```
 1         Q.    Okay.
 2         A.    I'm sorry.  It is not part of
 3   my -- of my -- of anything in my reports as
 4   they stand now, or my opinions.
 5         Q.    And will it be at trial?
 6         A.    I hesitate only that if I -- I'm
 7   not sure how at trial I would have an opinion
 8   different than what's in my reports.
 9         Q.    Well, part of my problem is I
10   disagree that your reports don't at least
11   make the implication that Anadarko had a duty
12   in light of the realtime data.  But I'm not
13   going to -- I'm not going to spar with you on
14   that.  I just want to make sure that if
15   you're unable to answer my question today,
16   that Ms. Flickinger is not going to ask you
17   about it at trial.  That's what I'm trying to
18   figure out.  And I think in fairness, I
19   deserve an answer.
20         A.    I plan to testify at trial only
21   about those opinions I've rendered in my
22   reports.
23         Q.    Okay.  Are you testifying that
24   Anadarko had access to any information on
25   that rig that BP and Transocean personnel did
```

1  not?
2       A.    I am not, no.
3       Q.    Okay.  And is it typical in your
4  experience for a non-operating party to have
5  more information about a rig operation than
6  the operator or someone like Transocean?
7       A.    No.
8       Q.    Are you testifying that Anadarko
9  had access to any information not available
10 to BP or Transocean personnel onshore?
11      A.    I'm not testifying to that.
12      Q.    Are you testifying that Anadarko
13 knew everything that BP knew was going on on
14 that rig?
15      A.    I am not testifying to that.
16      Q.    We talked earlier about
17 Mr. Arnold's term, non-operating working
18 interest -- owners.  Are you familiar with
19 the term "working interest"?
20      A.    Yes.
21      Q.    Okay.  And can those owners
22 transfer those interests?
23      A.    Yes.
24      Q.    Okay.  Is it unusual for them to
25 do that?

```
 1  answered the question.  I don't know what the
 2  outcome of those were.  I do know that they
 3  -- that that -- because it's clear from --
 4  from the record, they have the opportunity.
 5  They had the knowledge.  And that was the
 6  purpose of showing it, is they do have the
 7  opportunity to have contributed.
 8            I did not make an opinion as to
 9  had they done that, you know, that that --
10  therefore the blowout wouldn't have happened.
11  I did not make that statement.  I'm not
12  making that opinion.
13            So -- so I didn't.  And I'm not
14  making that opinion.
15       Q.    Is it your view, then, either
16  directly or by implication, that Anadarko
17  should have intervened with respect to the
18  zonal isolation and temporary abandonment?
19       A.    It is my opinion that it is best
20  practice to have been focused active
21  participation in the temporary abandonment
22  design and the activities which followed.
23  And because I think it's best practices,
24  yeah, I think they should have done it.
25            MR. LOTTERMAN:  Okay.  No further
```