UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG : | | MDL NO. 2179 |
| DEEPWATER HORIZON IN THE GULF : | | |
| OF MEXICO, ON APRIL 20, 2010 : | | SECTION J |
| : | | |
| This Document Relates To: : | | JUDGE BARBIER |
| : | | |
| 10-4536 : | | MAGISTRATE JUDGE SHUSHAN |
| : | | |

..........................................................................................................................................

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE LEGAL OPINION TESTIMONY OF DAVID SUNDING**

Anadarko Petroleum Company ("APC") has submitted expert reports from David Sunding,[1] a natural resource economist, who contends that no civil penalty is warranted against Anadarko. He comes to this conclusion by weighing each of the statutorily-prescribed factors for assessing civil penalty in light of his favorite theories of economic efficiency. His reports both invade the province of the Court by weighing the statutory factors and consist of advocacy that a party may advance through its lawyers but not its witnesses. These opinions should be stricken as impermissible legal testimony or mere argument that does not assist the trier of fact to understand the evidence.[2]

---

[1] *See* Ex. 1 (Expert Report of David Sunding, Aug. 15, 2014, Ex. 13400, "Round 1 Report"); Ex. 2 (Expert Report of David Sunding, Sept. 26, 2014, Ex. 13401, "Round 3 Report").

[2] While the United States has filed this motion to exclude legal opinion testimony expected to be offered by Dr. Sunding, the United States reserves the right to object any other legal conclusion testimony presented at trial.

## ARGUMENT

**A. Testimony that Amounts to Assertions or Conclusions of Law or the Application of the Law to the Facts Is Inadmissible at Trial**

Pursuant to Federal Rule of Evidence 704 in this Circuit and elsewhere, expert opinion testimony may embrace an ultimate issue to be decided by the court but may not render conclusions of law. Expert testimony that presents a legal opinion or conclusion is inadmissible. *See Estate of Sowell v. United States*, 198 F.3d 169, 172 (5th Cir.1999) (affirming the exclusion of expert witness testimony on whether a taxpayer's failure to timely pay taxes was due to reasonable cause as inadmissible legal opinion); *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (prohibiting expert testimony of an attorney expert on whether officers and directors breached their financial duties); *Snap-Drape, Inc. v. Comm'r of Internal Revenue*, 98 F.3d 194, 197-98 (5th Cir. 1996); *In re: Oil Rig Deepwater Horizon*, No. 2:10-md-02179-CJB-SS, Order Regarding BP's Motion *in Limine* to Bar Fact or Opinion Testimony on Issues of Law (J. Barbier, Rec. Doc. 5495, Jan. 31, 2012); *Jarrow v. Cupit*, No. 99-3539, 2000 WL 1537989 (E.D. La. Oct. 17, 2000) (J. Barbier).

Courts have excluded testimony regarding legal conclusions and the application of the law to facts by both attorney[3] and non-attorney experts.[4] In *Snap-Drape*, 98 F.3d 194, the Fifth

---

[3] *See e.g.*, *Virginia College, LLC v. Martin*, No. 3:11-cv-682, 2012 WL 6588700 (S.D. Miss. Dec. 17, 2012) (reports of attorney experts excluded regarding the legal standards applicable to plaintiff's claims and their legal opinions as to culpability); *Hamstein Cumberland Music Group v. Estate of Williams*, No. 06-cv-63-6KF-PJC, 2008 WL 4525782 (N.D. Okla. Oct. 3, 2008) (report of attorney expert stricken regarding his opinion as to defendant's compliance with the Oklahoma Uniform Fraudulent Transfer Act); *Morris v. Equifax Info. Serv.*, No. H-04-423, 2005 WL 5976334 (S.D. Tex. Jan. 19, 2005) (testimony from attorney excluded as to any legal opinions regarding the relevant law governing joint accounts and contractual liability); *Tessler v. Moffatt*, No. 98-0116, 2000 WL 35725894 (E.D. La June 16, 2000) (reports of attorney experts excluded regarding the law applicable to whether plaintiffs had a duty to mitigate and whether defendants had intent to commit an unlawful act).

Circuit reviewed a lower court's decision to exclude two expert witness reports from certified public accountants, which concluded that §404(k) dividends are deductible for the purposes of computing adjusted current earnings and that a position taken by the Treasury Department was not reasonably foreseeable.  *Id.* at 197-98.  The lower court had excluded the reports on the basis that they improperly contained legal conclusions and statements of "mere advocacy."  *Id*. at 198.  The Fifth Circuit upheld the lower court's decision, agreeing that the reports contained "nothing more than legal arguments."  *Id.* at 198.

Similarly, in *Jarrow*, 2000 WL 1537989, the plaintiffs' moved to exclude an expert report from an attorney expert in law enforcement practices and procedures.  The report consisted of various dissertations on the law related to civil rights litigation, the application of that law to the facts, and the expert's conclusion that the defendants had not violated the plaintiffs' constitutional rights.  Applying the Fifth Circuit's decision in *Askanase*, 130 F.3d 657, the Court held that the expert's testimony should be excluded since his proposed testimony as to whether defendants violated plaintiffs' constitutional rights was a legal opinion or conclusion, and therefore inadmissible.  *Id*. at \*2-3.  *See also Askanse*, 130 F.3d at 673 ("It is not for [the witness] to tell the trier of fact what to decide.").

---

[4] *See e.g.*, *LaShip, LLC v. Hayward Baker, Inc.*, No. 11-0546, 2013 WL 5781688, at \*11 (E.D. La. Oct. 25, 2013) (excluding testimony regarding whether defendant breached its obligations or its standard of care in order to "prevent the witness from making legal conclusions."); *Orthoflex Inc v. ThermoTek, Inc.* 986 F. Supp. 2d 776, 7908 (N.D. Tex. 2013) (excluding expert where the purpose of introducing testimony was "merely to present plaintiffs' trial argument as expert opinions"); *Cefalu v. Edwards*, No. 12-1377, 2013 WL 5592947 (E.D. La. Oct. 10, 2013) (testimony from police procedures expert as to whether deputy sheriff had probable cause to arrest the plaintiff inadmissible as legal opinion); *Chaney v. Omega Protein Inc.*, No. 09-7235, 2010 WL 4668445 (E.D. La. Nov. 8, 2010) (expert testimony excluded that certain failures amounted to negligence); *Imperial Trading Co. Inc. v. Travelers Property Cas. Co.*, 654 F. Supp. 2d 518 (E.D. La. 2009) (expert testimony excluded as to whether insurer's actions were unreasonable, arbitrary and capricious, or without probable cause); *BG Real Estate Servs., Inc. v. Monticello Ins. Co.*, No. 04-3408, 2006 WL 461706 (E.D. La. Feb. 27, 2006) (expert testimony excluded as to the applicable law and the requirements of insurance policies).

"Rule 704 does not paint with a broad brush," and expert opinion also may be excluded for other reasons, including if the court determines that the expert's specialized knowledge will not assist the trier of fact to understand the evidence. *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977); *see also* Fed. R. Evid. 702 (a premise of receiving expert testimony is that it will "assist the trier of fact to understand the evidence or to determine a fact in issue"); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1211 (D.C. Cir. 1997) ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact" in understanding evidence or determining facts in issue."). Accordingly, a proffered expert must bring "more than the lawyers can offer in argument." *In re Aircraft Disaster at New Orleans, Louisiana*, 795 F.2d 1230, 1233 (5th Cir. 1986).

**B. Legal Opinion Testimony from Dr. Sunding Should Be Excluded at Trial**

**1. Dr. Sunding's Assessment of Individual Penalty Factors Falls Outside His Expertise and His Weighing of the Penalty Factors Supplants the Role of the Court**

In Section III of his Round 1 Report, Dr. Sunding contends that imposing a civil penalty on Anadarko would serve "no purpose under the CWA," and weighs each of the eight penalty factors, finding the balance in favor of Anadarko. Ex. 1 (Round 1 Report at 16-20). He bases his opinions almost exclusively on agreed-upon party stipulations, Anadarko's own discovery responses, and previous orders of this Court. *See id.* at 17-20; Ex. 3 (Deposition of David Sunding, Oct. 30, 2014 ("Sunding Dep.") at 287:24-300:4). Such testimony, which "articulates and applies the relevant law . . . circumvents the [fact finder's] decision-making function by telling it how to decide the case," should be excluded. *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).

With respect to the seriousness factor, Dr. Sunding conducted no analysis of the harms from the spill. Ex. 3 (Sunding Dep. at 287:24-288:2). He relies only on Anadarko's admission in its discovery responses that the spill was "serious." Ex. 1 (Round 1 Report at 17). Nor does Dr. Sunding draw any further meaning from the term "serious" through any economic analysis or construct.[5] Nonetheless, he concludes that this factor, as well as the factors pertaining to other penalties paid and economic impact on the violator, should be given "little to no weight" given Anadarko's status as a non-culpable party. *Id.* at 17, 19. In so doing, Dr. Sunding improperly invades the province of the Court, arguing that it should elevate the factor of culpability above all of the others. *See Snap-Drape*, 98 F.3d at 197-98 (upholding exclusion of expert witness reports as consisting of "nothing more than legal arguments").

Dr. Sunding concedes he has no expertise in mitigation or source control techniques, Ex. 3 (Sunding Dep. at 61:12-19), and did not rely on his economic expertise to form an opinion about mitigation, *id.* at 288:9-14, yet still opines that Anadarko showed a "commendable willingness to mitigate the violations." Ex. 1 (Round 1 Report at 18). Similarly, despite the fact that Dr. Sunding conducted no analysis of Anadarko's health, safety and environmental record beyond what was referenced in a proposed stipulation enumerating prior CWA 311 violations in the Gulf of Mexico, Ex. 3 (Sunding Dep. at 293:18-294:3), he describes Anadarko's activities in the Gulf as "a model of responsible and safe operations." Ex. 1 (Round 1 Report at 18). Again, Dr. Sunding does not explain how principles of natural resource economics warrant his conclusions about Anadarko's mitigation efforts or its Gulf operations, and does nothing to assist the trier of fact to understand the evidence regarding these penalty factors.

---

[5] Ex. 3 (Sunding Dep. at 56:16-57:1) (Q: You've done no independent evaluation of the seriousness of the violation, correct? A. No. That's correct. That was one of the – the, you know, very few starting points that I had in this assignment, that I should just assume that the violation was serious -- . . . within the meaning of the – the Clean Water Act penalty factors.").

In discussing the "other matters" factor, Dr. Sunding urges the Court to consider that Anadarko provides jobs and investments in the Gulf of Mexico region, and cites to Anadarko's own discovery responses. Ex. 1 (Round 1 Report at 19). Dr. Sunding did nothing to confirm that those numbers were accurate, or analyze Anadarko's contributions in any way, remarking at his deposition that, "the citation is what it is." Ex. 3 (Sunding Dep. at 300:3-4). Similarly, with respect to economic impact factor, Dr. Sunding relies wholly on Anadarko's admission that it can pay a penalty of between $0 and $4.6 billion, and testimony from its Chief Financial Officer that a penalty could affect future investments. Ex. 1 (Round 1 Report at 19). Because these opinions merely represent "an effort to synthesize [a party's] positions and present them summarily as an expert opinion," they should be excluded. *See MGM Well Servs., Inc. v. Mega Lift Systems, LLC*, No. H-05-1364, 2007 WL 150606, at *4 (S.D. Tex. Jan. 16, 2007) (granting motion to exclude expert testimony based almost entirely from information from an interested party).

In sum, Dr. Sunding's application of the penalty factors in Section III of his initial report should be excluded as it constitutes legal conclusions or "mere advocacy" and argument that is of no assistance to the Court. *See Snap-Drape*, 98 F.3d at 198.

**2. Dr. Sunding's Opinions on Deterrence are Improper Because They are Inconsistent with the Statutory Scheme for Oil Spills**

Dr. Sunding's opinions based on economic theories of optimal, absolute, and efficient deterrence also are improper because they substitute his judgment for the provisions of law comprising the OPA and the CWA. Dr. Sunding contends, citing economic theories of deterrence, that no penalty is warranted against Anadarko. Ex. 1 (Round 1 Report at 3-8); Ex. 2 (Round 3 Report at 1-7). He opens this discussion with a section on the purposes of OPA and the CWA, including citations to the legislative history, *see* Ex. 1 (Round 1 Report at 3-4), and

-6-

indicated at his deposition that he also conducted case research on EPA's enforcement website. Ex. 3 (Sunding Dep. at 24:17-25:2; 150:16-22). Although he had no involvement in or insight into the BP/Anadarko settlement, e.g., Ex. 3 (Sunding Dep. at 186:17-188:11), he concludes that the ultimate amount constitutes a "reasonable assessment" of APC's share of OPA damages. Ex. 2 (Round 3 Report at 2). His conclusion that no penalty should be imposed because Anadarko has paid a share of OPA damages and received no economic benefit is inconsistent with the statutory scheme for oil spills, which provides for *both* compensatory damages and penalties on a strict-liability basis after consideration of all eight penalty factors. Accordingly, Dr. Sunding's testimony concerning economic theory also should be excluded as impermissible legal testimony or mere advocacy unhelpful to the trier of fact.

In Dr. Sunding's view, OPA damages alone achieve "optimal deterrence"[6] and CWA penalties "punish and deter *culpable* conduct and thereby achieve absolute deterrence where OPA damages alone do not." Ex. 2 (Round 3 Report at 1) (emphasis in original). In essence, Dr. Sunding reads a culpability requirement into CWA § 311(b), a strict liability provision that does not depend on fault.[7] Courts have dismissed similar fault-based arguments and upheld assessment of penalties against non-negligent owners. *See, e.g.*, *United States v. Coast States Crude Gathering Co.*, 643 F.2d 1125, 1128 (5th Cir. 1981); *United States v. Marathon Pipeline*,

---

[6] *See also* Ex. 1 (Round 1 Report at 4); Ex. 2 (Round 3 Report at 1); Ex. 3 (Sunding Dep. at 236:9-16) ("[I]f you had a firm causing a billion dollars in external harm and receiving a hundred million in economic benefit, then payment of the external harm would actually remove the incentive to violate. So there's no need for an additional penalty on top of … paying for external harms.").

[7] *See* Ex. 2 (Sunding Round 3 Report at 6) (framing the "question" as "whether penalties for accidents caused by culpable operators, as a matter of basic economic principles, should be extended to non-culpable investors."), *id.* at 7 ("The issue at hand is whether a non-culpable, non-operating investor should pay a penalty *in addition* to internalizing costs by assuming a share of OPA damages.") (emphasis in original).

589 F.2d 1305, 1308-10 (7th Cir. 1978).[8]  Indeed, at least one court imposing 311 penalties has expressly rejected arguments based on principles of economic efficiency.  *See United States v. Atlantic Richfield Co.*, 429 F. Supp. 830, 837 (E.D. Pa. 1977) ("[T]he Congressional purpose [of Section 311(b)(6)] was to impose a standard of conduct *higher than that related just to economic efficiency* . . . [E]ven where defendants are not at fault, the penalty does not only act as punishment but serves the ends of civil regulation.") (emphasis added).  Moreover, Dr. Sunding concedes that he did not attempt to square application of his economic theories with legislative history or Congressional intent,[9] and acknowledged that when Congress enacted OPA, it strengthened, not diluted, the CWA penalty provisions.[10]

Dr. Sunding liberally cites to the Court's orders in this case,[11] and specifically uses the Court's ruling on indemnification to support application of his economic theories.  *See* Ex. 2 (Round 3 Report at 1).  However, he fails to reconcile his opinion that both damages and penalties have the same deterrent effect, Ex. 1 (Round 1 Report at 4), with the Court's indemnity decision holding that parties could agree to an indemnification clause for damages but not one for penalties.  Ex. 3 (Sunding Dep. at 155:18-156:1).  When asked whether, as a matter of public

---

[8] In *Marathon Pipeline*, the Court refused the defendant's attempt for a nominal penalty in the absence of fault, reasoning,

> In effect, Marathon would have us read into the statute a strict standard of liability for a nominal penalty and a negligence standard of liability for a substantial penalty.  We do not believe the plain language of the statute supports different standards for a substantial as opposed to a nominal penalty.

589 F.2d at 1308.

[9] *See* Ex. 3 (Sunding Dep. at 144:14-148:22) (in his review of legislative history, he did not see references to optimal or absolute deterrence or "see anybody citing Posner or anything like that").

[10] *See* Ex. 3 (Sunding Dep. at 148:8-18).

[11] *See* Ex. 1 (Round 1 Report at 3 n.3, 4 n.8, 6 n.8, 17 n.45); Ex. 2 (Round 3 Report at 1 n.3).

policy, this Court views OPA damages and CWA penalties differently, he said, "I feel like that's sort of getting outside my area." *Id*. Similarly, Dr. Sunding refers to *United States v. Citgo*, 723 F.3d 547 (5th Cir. 2013), in support of his opinions regarding absolute deterrence, Ex. 1 (Round 1 Report at 6 n.17), but admitted limitations in his case law research, "I'm not a lawyer so I don't – you know, I maybe don't have access to the same tools." Ex. 3 (Sunding Dep. at 150:5-9). But the law does not permit Dr. Sunding to articulate the meaning of the Clean Water Act and apply it to the facts of this case under the guise of economic theory. *Cf. City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 567 n.27 (11th Cir. 1998) (concluding in dicta that an expert's testimony "should be excluded" where his "opinions regarding the legal standards applicable to the case are outside his competence as an economist").

In a similar case, a district court excluded an economist proffered for his opinion as to the deterrent value of civil fines under the False Claims Act (FCA). *Tyson v. Amerigroup Illinois, Inc.*, No. 02-C-6074, 2007 WL 7034899 (N.D. Ill. Jan. 30, 2007). The issue in the case was whether the FCA damages and fines were excessive for purposes of the Eighth Amendment, when in the expert's view, certain compensatory damages provided sufficient deterrence. *See* Ex. 4 (Plaintiffs' Motion to Strike New Expert Reports, *Tyson v. Amerigroup*, No. 02-C-6074, at 4 (N.D. Ill. filed Jan. 16, 2007)); *see also* Declaration of Professor George L. Priest in *Tyson v. Amerigroup*, No. 02-C-6074, 2007 WL 7211892 (N.D. Ill. filed Jan. 5, 2007). The expert relied on and discussed the same authors in the law and economic field as Dr. Sunding does here, notably Richard Posner and Steven Shavell, in support of his opinion that penalties would "overdeter." Priest Decl., 2007 WL 7211892, at ¶¶ 13-16. The Court excluded the expert's testimony, finding his "mere[]" statement that penalties would result in over-deterrence unhelpful to the Court's penalty determination. *Tyson v. Americorp*, 2007 WL 7034899, at *1.

Similarly here, Dr. Sunding's opinions on the economic rationale for penalties, which are inconsistent with the statutory scheme, should be excluded.

## CONCLUSION

For the forgoing reasons, the United States Motion *in Limine* to exclude legal opinion testimony should be granted.

Respectfully submitted,

| | |
|---|---|
| JOYCE R. BRANDA | SAM HIRSCH |
| Acting Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| PETER FROST | SARAH HIMMELHOCH |
| Director, Torts Branch, Civil Division | Senior Litigation Counsel |
| Admiralty and Aviation | NANCY FLICKINGER |
| STEPHEN G. FLYNN | Senior Attorney |
| Assistant Director | RICHARD GLADSTEIN |
| SHARON SHUTLER | PATRICK CASEY |
| MALINDA LAWRENCE | Senior Counsel |
| LAURA MAYBERRY | A. NATHANIEL CHAKERES |
| Trial Attorneys | JUDY HARVEY |
| | RACHEL KING |
| R. MICHAEL UNDERHILL, T.A. | ERICA PENCAK |
| Attorney in Charge, West Coast Office | ABIGAIL ANDRE |
| Torts Branch, Civil Division | RACHEL HANKEY |
| U.S. Department of Justice | BRANDON ROBERS |
| | Trial Attorneys |
| KENNETH A. POLITE, JR. | |
| United States Attorney | /s/ Steven O'Rourke |
| Eastern District of Louisiana | STEVEN O'ROURKE |
| SHARON D. SMITH | Senior Attorney |
| Assistant United States Attorney | Environmental Enforcement Section |
| Eastern District of Louisiana | U.S. Department of Justice |
| 650 Poydras Street, Suite 1600 | P.O. Box 7611 |
| New Orleans, LA 70130 | Washington, D.C. 20044 |
| Telephone: (504) 680-3000 | Telephone: 202-514-2779 |
| Facsimile: (504) 680-3184 | Facsimile: 202-514-2583 |
| E-mail: sharon.d.smith@usdoj.gov | E-mail: steve.o'rourke@usdoj.gov |

Attorneys for the UNITED STATES OF AMERICA