# EXHIBIT 4

## to

**UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE LEGAL OPINION TESTIMONY OF DAVID SUNDING**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA *ex rel.* ) | |
| CLEVELAND A. TYSON, ) | |
| THE STATE OF ILLINOIS *ex rel.* ) | |
| CLEVELAND A. TYSON, ) | Case No. 02-C-6074 |
| THE PEOPLE OF THE STATE OF ILLINOIS, ) | |
| and THE UNITED STATES, ) | Judge Leinenweber |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| AMERIGROUP ILLINOIS, INC. and ) | |
| AMERIGROUP CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## **PLAINTIFFS' MOTION TO STRIKE NEW EXPERT REPORTS**

1. In response to Plaintiffs' Rule 59 motion, Amerigroup has filed expert reports of Professor George L. Priest and John W. Wills. Both expert reports are improper and should be stricken.

2. *First*, these new experts and their reports should be striken as untimely. The briefing schedule and oral argument date agreed to by all parties and entered by the Court does not contemplate expert discovery, and Amerigroup's attempt to present expert testimony on the question of penalties comes too late.

3. At the request of Amerigroup, Plaintiffs and Amerigroup agreed to a briefing schedule on the post-trial motions. Under this agreed schedule, Amerigroup's response to the Plaintiffs' penalties motion was to be due on December 22, 2006. The

Plaintiffs were to file their reply brief on January 12, 2007. Oral argument was set for February 7, 2007.

    4. On December 19, 2006, Amerigroup asked the Plaintiffs for additional time to file their response brief. As the reason for the extension, Amerigroup's attorney Andrew Tulumello stated that the negotiations between Amerigroup and the Plaintiffs regarding Amerigroup's $48 million bond had taken longer than expected, and he wanted additional time to work on the brief. Citing the holiday, he requested that their response brief deadline be extended all the way to January 5, 2007. Plaintiffs agreed to the request, and the parties submitted an agreed order to that effect which was entered by this Court on January 5, 2007.

    5. Critical to the parties' agreement on extending the briefing schedule was that the oral argument date of February 7, 2007, would not be changed. The agreed order entered by the Court makes that clear, stating that "[o]ral argument date of February 7, 2007, to stand." *See* Court Docket #831.

    6. At no time, during *any* of these discussions or in any of the filings, did Amerigroup *ever* indicate they would be submitting expert reports from new experts. Amerigroup has now simply attached new expert reports to their response to the Plaintiffs' penalties motion, without leave of Court or prior notice to Plaintiffs.

    7. Plaintiffs now have no opportunity to conduct expert discovery of these new experts --- not to mention securing their own experts --- in time for a February 7, 2007 oral argument. Thus, by not disclosing that they would be engaging new experts and filing new expert evidence, Amerigroup has effectively prevented Plaintiffs from contesting Defendants' new expert reports in any substantial way.

-2-

8. If Amerigroup had wanted to undertake expert discovery on the issue of penalties, they could have brought it to the Court's and Plaintiffs' attention when the schedule was set. They did not. Because the schedule agreed to by the parties does not contemplate what would likely be a lengthy period of expert discovery, this Court should strike both expert reports attached to Amerigroup's response brief.

9. *Second*, even had the parties agreed to conduct expert discovery, Mr. Priest's report (for which he apparently was paid $750/hour) is not the type of expert report that could be properly considered. Rather, it is his attempt to interpret the 8th Amendment to the United States Constitution in the light of his economic theories. This is inappropriate expert testimony because it invades the province of the court. *See Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 510 (2d Cir. 1977) ("As Professor Wigmore has observed, expert testimony on law is excluded because 'the tribunal does not need the witness' judgment. . . . The judge (or the jury as instructed by the judge) can determine equally well. . . .' The special legal knowledge of the judge makes the witness' testimony superfluous." ) (citing VII Wigmore on Evidence § 1952, at 81) *cited in Jason's Foods, Inc. v. Peter Eckrich & Sons, Inc.*, 774 F.2d 214, 216 (7th Cir. 1985); *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969) (same); *see also Landmark Builders, Inc. v. Cottages of Anderson, LLC*, 2003 U.S. Dist. LEXIS 11204 (S.D. Ind. 2003) ("Courts have historically refused to admit expert testimony explaining matters of domestic law . . . ."); *W. R. Grace & Co. v. Viskase Corp.*, 1991 U.S. Dist. LEXIS 14651 (N.D. Ill. 1991) ("Federal judges are expected to be experts on federal law. Accordingly, the testimony of a legal expert in federal cases is generally unnecessary.") (internal citations omitted). Mr. Priest's legal analysis of the 8th Amendment in light of his economic theories should therefore be excluded.

10. *Third*, Mr. Priest's report is improper because it attacks the jury verdict itself. It is improper to supplement the trial record with an expert report that directly attacks the jury's findings. This report was never timely presented during discovery, never offered during trial and never subjected to cross-examination.

11. Mr. Priest's "opinions" show that, contrary to his claims of "respect" for the jury, he is not "respectful" of the jury's decision at all. He says over and over again that the jury got it wrong. But it is too late for Amerigroup to supplement the record with an opinion from a purported expert to the effect that the jury got it wrong. Amerigroup has had years to put together its case. The parties presented competing views, including competing expert opinions, and the jury made its decision. Mr. Priest's report should be stricken.

12. *Fourth*, Mr. Priest's report is improper because it essentially advocates substituting his judgment for the plain text of the False Claims Act with regard to the proper level of penalties. Amerigroup relies on Mr. Priest's report to advance its argument that the Court should ignore the False Claims Act's trebling and penalty provisions because, according to Amerigroup, they "would further *no* legitimate deterrent purpose." Resp. at 6 (emphasis in original) (citing Priest Report at ¶ 34) ("Awards of this nature cannot be justified according to the economic (or any other scientific) understanding of necessary deterrence."). In particular, the report from Mr. Priest does little more than expound on his disagreement with the False Claims Acts' penalty provisions -- passed by Congress and the Illinois legislature -- because, in his view, the penalties are unnecessary to deter fraud against the government. In his view, compensatory damages provide sufficient deterrence (although, as noted above, only compensatory damages with which he agrees).

-4-

13. Contrary to Mr. Priest's novel theory,[1] Congress has repeatedly recognized the importance of the deterrent effect of stringent penalties under the False Claims Act. In 1986, when Congress first amended the Act to increase the penalties, it specifically did so in order to increase the deterrence effect of the Act on fraud. False Claims Amendments Act of 1986, Pub. L. No. 99-562, 100 Stat. 3153 (codified as amended at 31 U.S.C. §§ 3729-33 (2000). The 1986 Act was also sometimes referred to as the "1986 Reform Act"). Congress recognized at the time that the low penalty amounts "were no longer a serious deterrent to the filing of false claims," and, therefore, voted overwhelmingly to quintuple the maximum penalties and require mandatory trebling of damages. (*See* 132 Cong. Rec. 22,335 (Sept. 9, 1986) (statement of Rep. Glickman)). Former Senate Budget Committee chief economist and University of Pennsylvania professor William Stringer has estimated that $35 billion of fraud has been **deterred** since 1986 by the threat of these penalties. *See* http://www.taf.org/publications/anniversary5.html. This same study projected deterrence from the penalty scheme of over *$100 billion* from 1996 through 2006.

14. While Mr. Priest's view may provide interesting testimony for a Congressional hearing on an amendment to the trebling and penalty provisions of the Act, it is irrelevant to the issue now before this Court. As the Seventh Circuit has acknowledged, the penalty provisions of the False Claims Act are mandatory. *United States ex rel. Chandler*

---

[1] The economic theory expressed in Mr. Priest's expert report in this case is merely one man's view, subject to debate from at least one Nobel prize-winning economist. *See* Gary Becker, *Crime and Punishment: An Economic Approach*, 76 J. of Pol. Econ. 169, 183-84 (1968); Jeremy Bentham, *An Introduction to the Principles of Morals and Legislation* 179, 184 (Hafner Publishing Co. 1948) (1843); Dan M. Kahan, *The Theory of Value Dilemma: A Critique of the Economic Analysis of Criminal Law*, 1 Ohio St. J. Crim. L. 643, 644 (2004) (attached hereto as Exhibit A). *See also* William M. Landes & Richard A. Posner, *The Economic Structure of Tort Law* 161 (1987).

*v. Cook County, Illinois,* 277 F.3d 969, 978 (7th Cir. 2002) ("the FCA affords the judge little discretion in imposing penalties on offenders. . ."). Furthermore, this court has recognized clearly that "[j]udgments about the appropriate punishment for an offense belong in the first instance to the legislature." *United States v. Williams,* 2003 WL 21384640 (N.D. Ill. 2003) (quoting *United States v. Bajakajian,* 524 U.S. 321, 336 (1998)). Amerigroup attaches Mr. Priest's report in an inappropriate attempt to have this Court simply disregard the FCA's mandatory trebling and penalties provisions and to ignore Congress' authority to set appropriate penalties. *See United States v. Williams,* 2003 WL 21384640 (N.D. Ill. 2003) (imposing trebling and penalties under the FCA in an amount five to seven times the actual loss).

        15. *Fifth*, Mr. Wills' expert report is also improper because it is irrelevant. Mr. Wills cherry picks certain information from Amerigroup's publicly available financial information to note that imposing significant penalties "would require drastic action", "would almost certainly reduce future operating profits", and "could negatively affect share price". Mr. Wills does not indicate any degree of certainty with respect to many of these possible outcomes, nor does he explain why any of these outcomes should lessen the mandatory penalties imposed by law. Mr. Wills also omits many material facts regarding Amerigroup's financial statements from his discussion, such as the amount of money that Amerigroup Illinois upstreamed to its parent during the relevant time period, Amerigroup's $150 million in unrestricted cash, its credit facilities, or the fact that, despite disclosures of Amerigroup's potential liability of up to $524 million, its share price as of the date of this motion is *higher* than its pre-verdict share price. Mr. Wills also fails to even address the evidence properly presented at trial that showed *without contradiction by any witness at all* that Amerigroup

-6-

consistently mis-stated its reserves in order to hide the fact that it was making such outrageous profits from the Medicaid system. *See* Trial Tr. at 1137:7-1142:4 (testimony of Plaintiffs' expert, Kevin O'Brien, about Amerigroup's over-reserving), attached hereto as Exhibit B.

16. In short, in addition to being untimely and inappropriate at this stage, this report from Mr. Wills is equally irrelevant and should be stricken.

WHEREFORE, Plaintiffs request that this Court strike the expert reports of Mr. George Priest and Mr. John Wills.

Dated: January 16, 2007.

| THE UNITED STATES OF AMERICA *ex rel.* CLEVELAND A. TYSON, and THE STATE OF ILLINOIS *ex rel.* CLEVELAND A. TYSON | THE PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* LISA MADIGAN, Attorney General of Illinois | THE UNITED STATES<br><br>PATRICK J. FITZGERALD<br>United States Attorney |
|---|---|---|
| By: /s/ Frederick H. Cohen<br>     One of His Attorneys | By: /s/ David J. Adams<br>     One of Its Attorneys | By: /s/ Samuel B. Cole<br>     One of Its Attorneys |
| Frederick H. Cohen<br>David J. Chizewer<br>Chad A. Blumenfield<br>Ann H. Chen<br>Goldberg Kohn Bell Black<br>  Rosenbloom & Moritz, Ltd.<br>55 East Monroe Street<br>Suite 3700<br>Chicago, Illinois  60603<br>(312) 201-4000 | David J. Adams<br>Anne R.K. Reader<br>Abel León<br>Assistants Attorney General<br>Special Litigation Bureau<br>Office of the Illinois<br>  Attorney General<br>100 West Randolph Street<br>11th Floor<br>Chicago, Illinois  60601<br>(312) 814-1137 | Samuel B. Cole<br>Michele M. Fox<br>Assistant United States Attorneys<br>219 South Dearborn Street<br>Chicago, Illinois  60604<br>(312) 353-4258 |

# CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on January 16, 2007, he caused a copy of **PLAINTIFFS' MOTION TO STRIKE NEW EXPERT REPORTS** to be served via the Court's ECF/electronic mailing system and/or electronic mail upon the following:

Daniel J. Voelker
Jeffrey L. Dorman
Hillard M. Sterling
Daniel C. Curth
Catherine A. Miller
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606

Daniel J. Riley
Robert J. Wagman, Jr.
Baker Botts LLP
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Theodore B. Olson
Andrew S. Tulumello
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036

David J. Adams
Anne R.K. Reader
Abel León
Assistants Attorney General
Special Litigation Bureau
Office of the Illinois Attorney General
100 West Randolph Street, 11th Floor
Chicago, Illinois 60601

Michele M. Fox
Samuel B. Cole
Patrick W. Johnson
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604

By: /s/ Chad A. Blumenfield