UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | *  MDL NO. 2179 <br> * <br> *  SECTION J <br> * |
| This Document Relates to: | * <br> *  HONORABLE CARL J. BARBIER |
| No. 10-4536 | * <br> *  MAGISTRATE JUDGE SHUSHAN |

**REPLY IN SUPPORT OF MOTION FOR ORDER CLARIFYING THE
SCOPE OF EVIDENCE TO BE ALLOWED BY THE COURT DURING THE
PENALTY PHASE OR, IN THE ALTERNATIVE, FOR ORDER PROVIDING
THAT ANY SUCH EVIDENCE WILL NOT HAVE A PRECLUSIVE EFFECT
ON THE OPA/NRDA CLAIMS OF THE STATE OF MISSISSIPPI**

The State of Mississippi ("Mississippi") respectfully submits this Reply pursuant to the Court's Order of November 24, 2014 (Rec. Doc. 13698).

A.  "YOU SAY YOU DON'T WANT TO TRY A NRDA CASE" − Transcript of the March 21, 2014 Status Conference, Rec. Doc. 12809 at 67.

In light of the Court's admonitions during the March 21, 2014 Status Conference, BP concedes that the Penalty Phase is not intended to adjudicate claims or defenses of any party for NRDA or economic losses under OPA; that no finding made by the Court will have "any preclusive effect on any party … in connection with future NRD or economic loss claims"; and that all parties should have an opportunity to fully develop the factual record to support their claims or defenses in connection with future NRDA or economic loss proceedings.  *See* BP's Response, Rec. Doc. 13734 at 1-2.  Thus, a significant part of Mississippi's pending Motion for Order to Clarify (Rec. Doc. 13656) and Louisiana's letter (Rec. Doc. 13687) are unopposed due to these concessions.

> B. "IF YOU LOOK AT THE STATUTORY LANGUAGE, IT TALKS ABOUT THE SERIOUSNESS OF THE VIOLATION. IT DOESN'T TALK ABOUT THE EXTENT OF THE ENVIRONMENTAL DAMAGE." – Transcript of March 21, 2014 Status Conference – Rec. Doc. 12809 at 68.

Mississippi submits that the remaining issue presented before the Court is not whether *any* evidence can be presented as to environmental harm or economic impact, but whether the extent and detail of the evidence presented by BP on the seriousness factor should be allowed to quantify natural resource and economic injuries to Mississippi as a result of the Spill and related response activities. If detailed evidence and testimony is presented and the extent of natural resource and economic damages are determined and quantified by the Court, without Mississippi's involvement, Mississippi will be placed in the position of having to unring a bell. The Court has repeatedly confirmed that it does not seek a "fine point" to determine what BP has already acknowledged was an "extremely serious event." *See* Rec. Doc. 12809 at 69 and 83. The Court illuminated its position by stating:

> So it seems to me that the Court shouldn't, and *I don't think it is required to*, put such a fine point on the seriousness that we say, you know, I have to *say, okay, this was the extent of the damage to this species of fish or this extent of this other damage, because then we would be trying the NRDA case*.

*See id.* at 69 (emphasis added).

At the March 21, 2014 Status Conference, the Court presented a blue print of the information it needs to determine this issue in its reference to Judge Haik's analysis of the seriousness factor in *United States v. CITGO Petroleum Corp.,* 723 F.3d 547 (5th Cir. 2013). *See* Rec. Doc. 12809 at 82. The Court found that approximately 47,000 barrels of oil which spilled in that matter was "a drop in the bucket" compared to the 2.4 to 5 million barrels in this case. *Id*. With regard to *CITGO*, this Court expressly stated that the established precedent for evaluating the seriousness and magnitude of the violation did not require detailed quantitative findings as to the extent of injuries on the aquatic species, birds, the marshes and economies as

BP seeks to admit through expert opinions in the Penalty Phase trial. *See id.* at 82-83. The Court repeatedly stated that a "fine point" or detailed analysis of the environmental and economic injuries was not needed for an evaluation of the seriousness factor since it involves considering the *scope of the violation* – not the extent of the NRDA or economic damage claims. *See id.* at 67-69 and 82-84.

Moreover, BP had notice of the Court's position as to penalties under Section 311(b)(7). As early as January 26, 2012, the Court found that:

> Legislative history and case law reveal that a Section 311(b)(7) civil penalty has multiple goals, including restitution, but the primary objectives are to punish and deter future pollution ….In *Tull v. United States*, the Supreme Court analogized a civil penalty under Section 309(d) of the CWA, 33 U.S.C. § 1319(d) – which is similar in relevant aspects to Section 311(b)(7) – to punitive damages; i.e., those "remedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo." The Court added, "The legislative history of the [CWA] reveals that Congress wanted the district court to consider the need for retribution and deterrence, in addition to restitution, when it imposed civil penalties.

*See* Order and Reasons, Rec. Doc. 5446 at 15-16 (internal citations omitted).

Based on the Court's ruling at the March 21, 2014 Status Conference, Mississippi understood that the "fine points" or quantification of natural resources and economic injuries would not be allowed in the Penalty Phase. Mississippi believes that a finding by the Court, in line with the precedent established by *CITGO* that the magnitude of *the violation*, rather than the extent of damages, is the appropriate scope of evidence on the seriousness factor. There is no question that the devastation created by the largest oil spill in recorded United States history created an "extremely serious" event. *See* Rec. Doc. 12809 at 68. Mississippi asserts that the Court's evaluation of the magnitude of the violation would involve little overlap in the evidence presented in the Penalty Phase and later trials. Additionally, the natural resource and economic

injuries to Mississippi may not be quantified for some time, and any consideration on the extent of such damages at this stage creates the potential for inconsistent rulings.

> C. "SOUNDS LIKE WE'D BE TRYING A NRDA CASE" – Transcript of the March 21, 2014 Status Conference, Rec. Doc. 12809 at 67.

At the March 21, 2014 Status Conference, the Court determined that the discovery sought by BP was overbroad; however, BP was not totally precluded from conducting some discovery on the scope of natural resource injuries. *Id.* at 85. The modern version of John Heyward's 1546 proverb, "Give them an inch and they'll take a mile," applies to BP's experts' opinions which delve far beyond the parameters set by the Court regarding the evidence needed to establish the magnitude of the violation as opposed to specific quantified injuries to the impacted species, habitats and economies.

Mississippi cannot fully address each of BP's improper attempts to have a dry run on Mississippi's NRDA and economic damage claims, without Mississippi's participation, through BP's expert reports. However, Dr. Tunnell's presentation of the impact of the Spill on various shellfish, crustaceans and species of commercial and recreational fish, as well as Dr. Scott's detailed economic impact opinions, are two examples which illustrate this point. *See* Exhibits "G" and "H" to Mississippi's instant Motion, Rec. Doc. 13656, which have been filed under seal. These reports go far beyond the Court's instructions regarding limited discovery of this issue. Mississippi contends the expert testimony elicited on the seriousness factor should be limited to the scope of *the violation* – not the extent of actual harm that is yet to be determined.

> D. "SOME REAL, REAL CONCERNS ABOUT WHAT I UNDERSTAND BP'S POSITION TO BE ON THIS" – Transcript of the March 21, 2014 Status Conference, Rec. Doc. 12809 at 66.

BP claims that Mississippi lacks standing to address the Court during this Phase. However, the potential for prejudice to Mississippi is real as the NRDA is ongoing and trials for

Mississippi's NRDA and economic damage claims have not been set.  Mississippi's pending Motion was filed in the interest of justice in an effort to avoid any prejudice to its citizens in future phases of this litigation.  Had BP admitted, as the litigants in *CITGO* did with a fraction of the injury and contamination, that this event was "massive", "excessive", and a "tragedy", Mississippi's pending motion would be unnecessary.

Mississippi's concern is premised on history and reality.  The Court need only refer to BP's recent position in seeking to strike an expert's testimony on the basis that his opinions are "a one sided summary of the Phase I record that will result in revisiting those issues."  *See* Rec. Doc. 13682 at 2.  This issue is more poignant when viewed in light of BP's Response to this pending Motion, as BP infers it may be proper to limit the States' abilities to depose or re-examine experts who testify in the Penalty Phase, even though the States are not parties and have not been allowed to participate in discovery.  *See* Rec. Doc. 13734 at 9-10.  BP further argues that witnesses' testimony in the Penalty Phase, if unavailable, could be used in a future proceeding in the name of attempting to provide for "efficient and non-duplicative discovery."  *See* Rec. Doc. 13734-1 at 3.  There are strong indications that BP will contend, in a subsequent NRDA or economic damage phase, that evidence or testimony in the Penalty Phase regarding NRDA or economic damages should be dispositive or utilized to prevent the introduction of similar or different evidence.

E.   CONCLUSION.

Mississippi seeks an Order from this Court clarifying its position that the scope of evidence on the seriousness factor will be limited to the scope and magnitude of *the violation* and not the extent of the natural resource and economic injuries which may not be accurately quantified for some time and that are more properly adjudicated as part of the NRDA and economic damage trials.

In the alternative, Mississippi seeks an Order reflecting the parties' agreement that provides the evidence allowed and findings made during the Penalty Phase will not have any preclusive effect on Mississippi's NRDA and economic injury claims, the Penalty Phase is not intended to adjudicate claims and defenses of any party for NRDA or economic losses under OPA, and all parties should have an opportunity to fully develop the factual record to support their claims and defenses in connection with future NRDA or economic loss proceedings.

RESPECTFULLY SUBMITTED this Fifth day of December, 2014.

/s/*James M. Hood, III*
James M. Hood, III (MS Bar No. 8637)
Walter Sillers Building
550 High Street, Suite 1200
Jackson, MS 39201
Telephone:   (601) 359-3680
Facsimile:   (601) 359-4231

*Attorney General of the State of Mississippi, for and on behalf of the State of Mississippi*

**OF COUNSEL:**

Michael C. Moore (MS Bar No. 3452)
**MIKE MOORE LAW FIRM, LLC**
P.O. Box 321048
Flowood, MS 39232-1048
Telephone:   (601) 933-0070
Facsimile:   (601) 933-0071

William M. Quin II (MS Bar No. 10834)
**MCCRANEY MONTAGNET QUIN & NOBLE, PLLC**
602 Steed Road, Suite 200
Ridgeland, MS 39157
Telephone:   (601) 707-5725
Facsimile:   (601) 510-2939

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

      RESPECTFULLY SUBMITTED this Fifth day of December, 2014.

                                      */s/**James M. Hood, III***
                                      James M. Hood, III