UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY  THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | *<br>*<br>*<br>* | MDL NO. 2179<br><br>SECTION J |
| This document relates to:<br><br>No. 10-4536 | *<br>*<br>*<br>*<br>*<br>* | HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

## BPXP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE OPINIONS AND TESTIMONY OF CHARLES F. MASON REGARDING THE ECONOMIC EFFECTS OF THE DEEPWATER HORIZON OIL SPILL ON REAL ESTATE MARKETS

United States expert Charles F. Mason offers opinions about the degree of economic harm caused by the *Deepwater Horizon* oil spill and responds to the opinions of BPXP expert Dr. Loren Scott.  (Ex. A, 8/15/14 Mason Rpt. at 29-44).  Nowhere in either his Round 1 or Round 2 reports does Dr. Mason analyze or opine about harm to the real estate or related markets in any area of the Gulf Coast.  Likewise, nowhere in Dr. Scott's Round 1 or Round 2 reports does Dr. Scott address the spill's effects on real estate or related markets.  In his Round 3 report, however, Dr. Mason includes new analysis and opinions on real estate markets in Florida and opines that the spill harmed those markets. (Ex. B, 9/26/14 Mason Rpt. at 14-16).

At his deposition, Dr. Mason admitted that he had not analyzed or opined on real estate markets in his Round 1 or Round 2 reports, that he had not previously used the data that forms the basis of his Round 3 real estate analysis, and that Dr. Scott's reports did not include any opinion or analysis on real estate markets.  By waiting until Round 3 to include Dr. Mason's opinions regarding the real estate market, the United States has prejudiced BPXP by preventing

BPXP and its expert from evaluating and responding to these new opinions. Moreover, the new opinions violate this Court's scheduling order, which expressly prohibits opinions in Round 3 reports that do not directly rebut opinions expressed in Round 2. (Rec. Doc. 13428, 9/22/14 Order Regarding Penalty Phase Schedule at 1).

For the reasons set forth below, BPXP respectfully requests that the Court strike Dr. Mason's opinions, analysis, and testimony regarding real estate markets contained on pages 14-16 of his Round 3 Report.

## ARGUMENT

There is no dispute that Dr. Mason disclosed his opinions regarding the *Deepwater Horizon* spill's effects on real estate and related markets for the first time in his Round 3 report and that those opinions are not responsive to any opinion or analysis by Dr. Scott or any other expert. These opinions therefore should be stricken from Dr. Mason's report, and he should not be permitted to testify regarding the analysis he conducted of real estate and related markets and which he disclosed for the first time on pages 14-16 of his Round 3 report.

**I.  The Court's Penalty Phase Scheduling Order Prohibits New Opinions in Experts' Round 3 Reports That Do Not Directly Rebut Opinions Expressed In Round 2.**

The Court's Penalty Phase Scheduling Order describes the September 26 exchange of expert reports as "Round 3: Rebuttal." (Rec. Doc. 13428, 9/22/14 Order at 1). The Order expressly provides that "[o]pinions expressed in this round can only directly rebut opinions expressed in Round 2; i.e. they cannot contain a new methodology nor address matters that are not directly responsive to facts, assumptions, methods, and opinions raised in Round 2." (*Id.*) BPXP's expert witnesses complied with these instructions in preparing their Round 3 reports.

Without enforcement of this Scheduling Order, BPXP will be severely prejudiced. Dr. Scott, BPXP's expert witness who responded to Dr. Mason's opinions, did not have the

2

opportunity to respond to the new real estate opinions and analysis in Dr. Mason's Round 3 report.  Nor could Dr. Scott have predicted that Dr. Mason's Round 3 report would violate the Court's Scheduling Order by disclosing a new opinion about alleged spill-related harm to real estate markets based on previously undisclosed data.  Because Dr. Scott's testimony is limited to the four corners of his reports, allowing Dr. Mason to offer opinions regarding alleged harm to real estate will cause unfair prejudice by preventing BPXP from rebutting those opinions at trial.

**II.     Dr. Mason Admits That He First Disclosed His Real Estate Opinions In His Round 3 Report And Based Them On Data He Had Not Analyzed In Prior Reports.**

In his Round 3 report, Dr. Mason described an analysis he conducted of real estate and related markets using Bureau of Economic Analysis (BEA) data on personal income in the real estate and rental and leasing sector of Gulf coastal counties in Florida.  (Ex. B, 9/26/14 Mason Rpt. at 14-15)  Dr. Mason stated that "[b]ased on this information, it is clear that the real estate and related markets in the Florida panhandle – as properly valued, via a comparison to the Atlantic coast market – continued to suffer after 2010. Similarly, damages to real estate and related markets in the Florida gulf coast region continued to suffer after 2010, though not quite as dramatically as in the panhandle." (*Id*. at 15).

At Dr. Mason's deposition, BPXP asked Dr. Mason about the new real estate analysis in his Round 3 report.  Dr. Mason responded by candidly admitting that he did not analyze real estate markets in either his Round 1 or Round 2 reports:

> Q.     All right. Dr. -- Dr. Mason, turning now to your third report that was submitted on September 26th, I believe you included in that report, the reply report, an analysis of some real estate markets; is that right?
>
> A.     That's Tab 3, correct?
>
> Q.     I'm talking now about Exhibit 13319.
>
> A.     Give me a minute to catch up with you here.

> Q. Page 14.
>
> A. Thank you. All right. I did -- I did include an analysis of real estate markets in this --
>
> Q. You've --
>
> A. -- Round 3.
>
> Q. -- not analyzed real estate markets in either your August 15th or September 12th reports, did you?
>
> A. I did not.

(Ex. C, Mason Dep. at 168:3-21).

Dr. Mason also admitted that his Round 1 and Round 2 reports did not consider the BEA data he used for his new Round 3 analysis:

> Q. Dr. Mason, is it correct that the data you used to conduct your analysis of real estate markets in your reply report was data you had not used for any analysis contained in your August 15th or September 12th reports?
>
> A. The data that I'm using here was not analyzed in any of the preceding reports.

(Ex. C, Mason Dep. at 169:2-8).

In fact, neither Dr. Mason nor Dr. Scott analyzed, considered, or relied on this data in their Round 1 or Round 2 reports. (*See* Ex. D, 8/15/14 Scott Rpt.; Ex. E, 9/12/14 Scott Rpt.; Ex. A, 8/15/14 Mason Rpt.; Ex. F, 9/12/14 Mason Rpt.).

**III.   Dr. Mason's Real Estate Analysis and Opinions Address Matters That Are Not Responsive to Opinions Expressed in Round 2.**

Dr. Mason's Round 3 real estate opinions are not responsive to opinions expressed in Round 2 by any expert, including Dr. Scott. At his deposition, Dr. Mason admitted that Dr. Scott did not include any analysis or opinion about real estate markets in any of his expert reports:

> Q. Dr. Scott's reports do not contain an analysis or opinion about real estate markets, do they?
>
> A. To the best of my recollection, they do not.

4

(Ex. C, Mason Dep. at 168:22-169:1).

According to the Court's Order, opinions in Round 3 must "*directly rebut* opinions expressed in Round 2," which the Court's Order describes as being "*directly responsive to facts, assumptions, methods, and opinions raised in Round 2*."  (Rec. Doc. 13428, 9/22/14 Order at 1) (emphasis added)  Because Dr. Mason admits that Dr. Scott's reports do not contain any analysis or opinion about real estate markets, there can be no dispute that Dr. Mason's new opinions are not directly responsive to any of Dr. Scott's Round 2 opinions.  These opinions do not meet the Court's requirement for Round 3 opinions and should be stricken.

## CONCLUSION

BPXP respectfully requests that the Court strike pages 14-16 from Dr. Mason's Round 3 report because these pages contain an analysis and opinions that were neither previously disclosed in Round 1 or Round 2 nor directly respond to opinions raised in Round 2.  Permitting the U.S. to offer these opinions on real estate and related markets would violate the Court's Scheduling Order and unfairly prejudice BPXP.


Dated: December 5, 2014            Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
Matthew Regan, P.C.

        Kirkland & Ellis LLP
        300 North LaSalle Street
        Chicago, IL 60654
        Telephone: (312) 862-2000
        Facsimile: (312) 862-2200

        Robert C. "Mike" Brock
        Kirkland & Ellis LLP
        655 15th Street, NW
        Washington, DC 20005
        Telephone: (202) 879-5000
        Facsimile: (202) 879-5200

        ***Attorneys for BP Exploration & Production Inc.***

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of December, 2014.

                /s/ Don K. Haycraft