UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY  THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to:<br><br>   No. 10-4536 | * * * * * | HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

**BPXP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE REPORTS AND TESTIMONY OF IAN RATNER**

**INTRODUCTION**

This Court should exclude the opinions of Ian Ratner, the United States' purported expert on "the economic impact of the penalty on the violator," because they are irrelevant and unreliable, and they fail to meet the threshold requirements of admissibility set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

First, Mr. Ratner has not performed a valuation of the violator, BP Exploration & Production Inc. ("BPXP") and has failed to model BPXP's purported options for funding a Clean Water Act penalty. Second, Mr. Ratner's views as to what the BP Group might decide in the future with respect to future funding of BPXP are no more than speculation. Third, without the proper application of expert analysis, Mr. Ratner's report consists merely of the aggregation of financial information that does not provide "scientific, technical, or other specialized knowledge" of use to the fact finder and is therefore inadmissible as expert testimony. Finally, Mr. Ratner's proffered testimony contradicts the express language of the Clean Water Act in that

Mr. Ratner bases his opinion about the economic impact of a penalty on his purported consideration of only its "long-term impact," effectively reading into the statute an exclusion of the impact of the penalty over the next ten years. Accordingly, Mr. Ratner's opinions are neither relevant nor reliable and should be excluded under Federal Rule of Evidence 702.

## ARGUMENT

In accordance with Federal Rule of Evidence 702, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. As the proponent of the expert testimony at issue, the United States bears the burden to establish the admissibility of Mr. Ratner's proffered testimony. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (holding that the proponent of the expert testimony must establish the admissibility of the expert's opinion by a preponderance of the evidence).

**I.    Mr. Ratner Has Not Performed a Valuation or the Analysis Required for His Opinion to Be Relevant and Reliable.**

Mr. Ratner's proffered opinions consist of the mere recitation of facts coupled with speculation as to how BPXP might pay a penalty, and they are unsupported by the specialized analysis that is required for proper expert testimony. Testimony that contains "too great an analytical gap between the data and the opinion proffered" may be excluded as irrelevant. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 279 (5th Cir. 1998) (finding the expert's opinion was properly excluded where there was too wide an "analytical gap" between the expert's causation opinion and the scientific knowledge used to support it). Similarly, in *In re Vioxx Products Liability Litigation*, MDL No. 1657, 2006 WL 6624015 (E.D. La. Feb. 3, 2006), this Court held that expert testimony is relevant only when "there is an appropriate fit between the scientific testimony and the specific facts of the case.

2

Scientific evidence is irrelevant, however, when there is too great an analytical gap between the data and the opinion proffered." *Id*. at *4.

Moreover, to be admissible, expert testimony must not only be relevant, but also reliable. *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). Expert opinions that are not supported by reasoned and reliable analysis are not admissible. *Daubert*, 509 U.S. at 592-93 (the trial court's gatekeeper role includes analyzing "whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue"). For an expert's methodology to be reliable, there must be some "objective, independent" validation of it. *Moore*, 151 F.3d at 276. The expert's testimony must be reliable, "'ground[ed] in the methods and procedures of science[,]' and 'more than subjective belief or unsupported speculation.'" *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009). The ultimate objective of the reliability analysis is to ensure that an expert "employs in the courtroom ***the same level of intellectual rigor that characterizes the practice of an expert in the relevant field***." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (emphasis added).

Mr. Ratner holds himself out as a professional business valuator with decades of experience offering business valuations and solvency opinions, as well as experience providing financial advice to debtors in bankruptcy. (Ex. B, 10/21/14 Ratner Dep. at 12:11-12, 14:14-21, 86:7-10). Despite this experience, however, ***and knowing that an analysis of the value of BPXP was relevant*** to the question of whether BPXP would be able to obtain additional funds in order to pay a penalty, Mr. Ratner performed no valuation of BPXP in the course of preparing his opinions:

> Q. You knew that the valuation of BPXP would be relevant to the question of future funding or financing at the time that you issued your expert reports, correct?
>
> A. Correct.
>
> Q. But you did not perform a valuation of BPXP, correct? We know that to be true.
>
> A. Yeah, correct. I didn't – I did not perform a valuation.

(Ex. B, 10/21/14 Ratner Dep. at 240:23-241:6).

Mr. Ratner also admitted that he did not model or analyze any of the various purported funding options available to BPXP, either separately or in any combination, so as to show that the long-term economic impact of a penalty on BPXP would not be negative:

> Q. So with respect to your conclusion that this combination of borrowings, operating cash flows, divestitures, and equity, there's nothing you can point to to the Court to say, "I will show you this is what the long-term economic impact is; and having seen it, you can see that it is not negative." You cannot point to an analysis like that, correct?
>
> A. I didn't.
>
> [Objection]
>
> A. *I didn't perform that analysis*, because there's just too many different possibilities. And I'm not advising them on -- on which is the best possibility.

(Ex. B, 10/21/14 Ratner Dep. at 321:10-23) (emphasis added).

It is insufficient to resort to speculation as to "possibilities," as Mr. Ratner has done, without demonstrating that any plausible combination of these purported funding options could enable BPXP to pay a massive penalty without a significant negative impact. An expert must "independently establish the necessary physical and mathematical bases for [his] opinion." *Rosado v. Deters*, 5 F.3d 119, 124 (5th Cir. 1993); *see also Watkins v. Telsmith, Inc.*, 121 F.3d 984, 992-993 (5th Cir. 1997) (holding that experts should perform calculations to demonstrate

4

that their methodology, and therefore their opinions, are reliable). Mr. Ratner, in his work outside of this litigation, has performed numerous valuations and has counseled companies on the particulars of raising capital. His failure in this case to provide a comparable analysis—*i.e.*, "the same level of intellectual rigor" required under *Kumho Tire*—renders his opinions unreliable.

## II.     Mr. Ratner's Opinions Regarding Possible Future Funding from the BP Group Are Speculation.

In addition, Mr. Ratner's views about the BP Group's likelihood of providing additional funding to BPXP following a penalty are also speculative. As confirmed at his deposition, Mr. Ratner simply ***doesn't know*** what the BP Group would consider in making a decision as to whether to provide additional funding to BPXP:

> Q.   In 2015, if asked to provide additional financing to BPXP, do you believe the BP Group would evaluate its potential rate of return on additional financing?
>
> A.   *I don't know what they would do.*
>
> Q.   Do you believe they would examine the potential hurdle -- hurdle rate for that investment?
>
> A.   *I don't know what they would do.*
>
> Q.   Do you think they would evaluate the valuation of -- a value of BPXP before making that decision?
>
> A.   *I don't know what they would do.*
>
> Q.   Do you think that BP Group would evaluate BPXP's solvency in light of the Clean Water Act penalty?
>
> A.   *I don't know what they would do.*
>
> Q.   Do you think that BP Group would evaluate the current oil price environment at the time the request for financing was made?
>
> A.   *I don't know what they would do.*

> Q. Do you think they would evaluate alternative investments that were available to the BP Group for the same amount of money?
>
> A. Again, the questions that you've asked are all good questions; and you'd think that they would do that. ***I don't know what they would do.***

(Ex. B, 10/21/14 Ratner Dep. at 138:20-139:21) (emphasis added). Neither does Mr. Ratner know the amount—if any—that the BP Group would be likely to provide to BPXP to fund or finance a penalty:

> Q. Mr. Ratner, I'm asking you: Under your opinion, how much will you tell the Court you believe it is more likely than not the BP Group will provide BPXP to fund or finance the Clean Water Act penalty --
>
> [Objection]
>
> Q. -- in a dollar amount?
>
> [Objection]
>
> A. Yeah. ***I don't know.***

(Ex. B, 10/21/14 Ratner Dep. at 333:15-24) (emphasis added).

Mr. Ratner's views regarding a decision to be made by others, at an unknown date in the future, under circumstances that are not presently known, and without any knowledge as to what considerations the decision-makers would evaluate are speculation, pure and simple. His testimony should therefore be excluded. *See Paz v. Brush Engineered Materials, Inc*., 555 F.3d 383, 389 (5th Cir. 2009) (expert testimony must be "more than subjective belief or unsupported speculation") (internal quotations omitted).

### III. Mr. Ratner's Opinions Are Not Based on Expert Analysis, But Are Simply the Recitation of Facts Disguised as "Opinion."

Given the lack of any valuation analysis, or any modeling of the purported funding options discussed in Mr. Ratner's report and proffered opinions, what remains is simply the recitation of facts in the guise of expert opinion. Mr. Ratner's report consists overwhelmingly of the mere aggregation of BP Group financial data that has been made public by BP p.l.c. through

6

its annual reports, quarterly results, and financial and operating information documents, as well as other BP Group financial information that has been produced in this case. (*See, e.g.*, Ex. A, Ratner 8/15/14 Rpt. ¶¶ 76-81 (aggregating data on costs associated with the Incident), ¶¶ 82-90 (aggregating data on post-Incident asset sales by the BP Group), ¶¶ 93-98 (aggregating data on BP p.l.c.'s profitability)).

Courts in the Fifth Circuit have held that expert testimony concerning facts, as opposed to opinions, is irrelevant because it does not assist the trier of fact. In *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1373-74 (5th Cir. 1981), the Fifth Circuit held that expert witnesses "usually do not testify regarding the facts of the case but only express their opinion based on those facts." Similarly, in *Ross v. Noble Drilling Corp.*, No. Civ. A. 03-0115, 2004 WL 1078906, at *2 (E.D. La. May 11, 2004), the court held that "expert testimony offering nothing but the expert's appreciation of the facts is . . . inadmissible because 'the jury could adeptly assess [the] situation using only their common experience and knowledge.'" (citing *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990)); *see also Doss v. NPC Int'l, Inc.*, Civil Action No. 4:09-cv-00038, 2010 WL 2900422, at *2 (N.D. Miss. July 20, 2010) ("Expert testimony is specifically allowed and treated differently precisely because experts offer opinions rather than simply providing facts."); *Kallassy v. Cirrus Design Corp.*, No. Civ. A. 3:04-CV-0727N, 2006 WL 1489248, at *7 (N.D. Tex. May 30, 2006) ("Aside from his conclusion, Dr. Johnston recites only facts and makes no reference to 'scientific, technical, or other specialized knowledge.' Accordingly, . . . Dr. Johnston's letter is not competent expert testimony under Rule 702.") (citing Fed. R. Evid. 702).

Without appropriate analysis to support them, Mr. Ratner's proffered opinions are no more than "expert testimony offering nothing but the expert's appreciation of the facts." *Noble*

7

*Drilling Corp.*, 2004 WL 1078906, at *2. As the case law of the Fifth Circuit and courts in this District make clear, such testimony is inadmissible and should be excluded from trial.

### IV. Mr. Ratner's Opinions Misapply the Applicable Legal Standard and Should Be Excluded as Irrelevant.

Under *Daubert*, expert opinions must be relevant to be admissible. *Daubert*, 509 U.S. at 591; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). Where proffered expert testimony cannot make a fact at issue more or less probable, it is irrelevant and necessarily inadmissible. Fed. R. Evid. 401; *see also Roman v. Western Mfg., Inc.*, 691 F.3d 686, 694 (5th Cir. 2012) (expert testimony that does not relate to an issue in the case is not relevant); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (excluding expert testimony because it was not relevant to issue). Mr. Ratner's opinions fail this test because he has tailored his report and opinions to an inquiry different from—and, indeed, contrary to—the express terms of the Clean Water Act.

Under Section 311 of the Act, a court setting a civil penalty is directed to consider "the economic impact of the penalty on the violator." 33 U.S.C. §1321(b)(8). While purporting in his reports to opine on this issue (*see, e.g.*, Ex. A, Ratner 8/15/14 Rpt. ¶ 1), Mr. Ratner confirmed at his deposition that he had "defined" the inquiry with respect to BPXP to consider only whether there would be any "long-term negative impact" to the company from a penalty, and to exclude any consideration of negative impacts within ten years of a penalty. (*See* Ex. C, 10/22/14 Ratner Dep. at 16:4-22 ("[V]is-à-vis BP, our analysis was really more geared at the long-term economic impact. . . . I didn't make an opinion on the short term, so I -- you know, I haven't thought about it; but I'm not sure. . . . I haven't even really formed that detailed opinion about the short term."); Ex. C, 10/22/14 Ratner Dep. at 19:10-11 ("I had defined it in BP as no long-term

8

negative impact."); Ex. B, 10/21/14 Ratner Dep. at 61:8-10 ("Q. How long is long-term negative economic impact under your definition? A. It's beyond ten years.")).

The statutory text of the Clean Water Act does not direct the Court to consider only the "long-term" impact, but rather the "economic impact of the penalty on the violator"—without any limitation to impacts that are more than ten years into the future. When expert testimony conflicts with the governing law, the testimony is irrelevant and should be excluded. *See, e.g., Bailey v. Allgas, Inc.*, 148 F.Supp. 2d 1222, 1242-46 (N.D. Ala. 2000) (excluding testimony where the expert's analysis failed to apply the applicable law), *aff'd* 284 F.3d 1237 (11th Cir. 2002); *see also Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005) ("Expert opinions that are contrary to law are inadmissible."). In consequence, Mr. Ratner's proffered opinions are not relevant to the statutory factor of "the economic impact of a penalty on the violator" and should be excluded.

## CONCLUSION

Mr. Ratner's opinions regarding the economic impact of the penalty on BPXP are both irrelevant and unreliable. BPXP respectfully requests that the Court exclude these opinions from evidence, and preclude Mr. Ratner from providing testimony on this issue.

Date: December 5, 2014                                       Respectfully submitted,


/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
Matthew Regan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Kirkland & Ellis LLP
655 15th Street, NW
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorneys for BP Exploration & Production Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of December, 2014.

/s/ Don K. Haycraft