UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * | MDL NO. 2179 SECTION J |
| This document relates to: No. 10-4536 | * * * * * | HONORABLE CARL J. BARBIER MAGISTRATE JUDGE SHUSHAN |

**BPXP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF CAPTAIN MARK VANHAVERBEKE**

Captain Mark VanHaverbeke, an expert witness for the United States, offers opinions regarding (1) the effectiveness of measures that BP Exploration & Production Inc. ("BPXP") and others in the Unified Command implemented during the *Deepwater Horizon* Response, including skimming, in situ burning, and dispersant applications; and (2) dispersant use and limitations during the Response, including the issuance of Addendum 3 to the Dispersant Monitoring and Assessment Directive.  These opinions should be excluded for two separate and independent reasons.

*First*, Captain VanHaverbeke's opinions regarding the effectiveness of the *Deepwater Horizon* Response operations are unreliable and irrelevant by his own admission, and should therefore be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  In his deposition, Captain VanHaverbeke admitted that his analysis of the amount of oil that BPXP and other Unified Command members skimmed, burned, and chemically dispersed during the Response is "erroneous," based on "outdated and incorrect information," and "underestimates" the effectiveness of the response efforts. (Ex. B, VanHaverbeke Dep. at 136:14-19, 150:10-20, 167:12-168:8)   Significantly, Captain

VanHaverbeke acknowledged that there is "*nowhere* in *any* of [his] three expert reports where [he] present[s] *accurate mathematical calculations reflecting the effectiveness of operations in the Deepwater Horizon Response*." (*Id.* at 146:12-17 (emphasis added))  Captain VanHaverbeke further conceded that BPXP's spill response expert, Captain Frank Paskewich — whose opinions he was attempting to rebut — had, in fact, accurately calculated the effectiveness of the Response. (*Id.* at 142:15-143:1)  Captain VanHaverbeke's analysis of the effectiveness of *Deepwater Horizon* Response operations is admittedly unreliable and would not assist the Court in determining any issue in the Penalty Phase trial.

*Second*, Captain VanHaverbeke's dispersant opinions should be excluded because he based those opinions on information that he obtained from Admiral Mary Landry, in contravention of two prior Orders of this Court.  In July 2014, the United States sought to supplement its Rule 26(a) disclosures to add Admiral Landry as a witness on issues relating to dispersants and her decision to sign the Addendum 3 directive, which imposed strict limitations on the use of dispersants during the Response. (Ex. I, 7/28/14 B. Robers Letter, Rec. Doc. 13246)  In August 2014, the Court issued two separate Orders precluding the United States from adding Admiral Landry as a witness because its disclosure was "untimely" and would prejudice BPXP. (Ex. E, 8/5/14 Order, Rec. Doc. 13251; Ex. F, 8/29/14 Order, Rec. Doc. 13341)

Nevertheless, on September 2, 2014, just *four days* after this Court ordered that the United States could not call Admiral Landry as a witness, the United States arranged for Captain VanHaverbeke to interview her about dispersants and Addendum 3 in particular — the *exact same issues* that the United States unsuccessfully sought to have Admiral Landry testify about as a fact witness.  Captain VanHaverbeke expressly relied on the information that he obtained from Admiral Landry as the bases of his dispersant opinions.  Allowing the United States to use its

2

expert report to back-door Admiral Landry's undisclosed fact testimony would circumvent this Court's Orders and prejudice BPXP even more than if the United States had been permitted to amend its disclosures back in August. BPXP did not have an opportunity to obtain, plan for, or examine Admiral Landry about the information that the United States funneled to Captain VanHaverbeke for inclusion in his expert report.

BPXP respectfully requests that the Court exclude Captain VanHaverbeke's opinions and testimony regarding (1) the effectiveness of the *Deepwater Horizon* Response (Section 2 of his Round 2 expert report) and (2) dispersant use and limitations during the Response (Section 3 of his Round 2 expert report).

## LEGAL STANDARDS

Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), expert testimony must be both reliable and relevant to be admissible. An expert opinion based on facts that are "indisputably wrong" is neither reliable nor relevant and should be excluded. *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996); *see also, e.g.*, *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388-90 (5th Cir. 2009) (affirming exclusion of expert testimony and report based on "insufficient, erroneous information"); *Slaughter v. S. Talc Co.*, 919 F.2d 304, 307 (5th Cir. 1990) (excluding expert opinions "replete with so many obvious errors as to be of no value to the trier of fact" (quotations omitted)); *Davis v. Ashcroft*, No. 01-331, 2003 WL 25665777, at *1 (D.D.C. Aug. 19, 2003) (an "expert opinion based on incorrect data is not admissible"). "If the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion drawn from that data is unreliable." *Graves ex rel. W.A.G. v. Toyota Motor Corp.*, No. 09 cv 169, 2011 WL 4590768, at *6 (S.D. Miss. Sept. 30, 2011). Moreover, an expert opinion based on incorrect information does not "assist the trier of fact to understand the

3

evidence or to determine a fact in issue" and is therefore irrelevant and inadmissible under *Daubert*.  509 U.S. at 591; Fed. R. Evid. 702.

Moreover, a party cannot use an expert report as a means to circumvent a prior court order.  A court may preclude an expert from offering opinions relating to information or claims that the court has excluded in an earlier order.  *See Merck Sharp & Dohm Corp. v. Sandoz, Inc.*, No. 12-3289, 2014 WL 1494592, at *11 (D.N.J. Apr. 16, 2014) ("[C]ommon sense dictates that a party who has been denied leave to amend" discovery "should not then be able to circumvent the Court's Order by presenting those very same . . . references in its expert report."); *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 18 (D.D.C. 2013) (striking expert report because it was "a thinly veiled attempt to circumvent" the court's prior discovery order).  Nor may a party use an expert report purely as a means of introducing otherwise inadmissible fact witness testimony.  *See Matter of James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 666 (S.D.N.Y. 2007).

**ARGUMENT**

**I.     Captain VanHaverbeke's Opinions Regarding the Effectiveness of the *Deepwater Horizon* Response Should Be Excluded under *Daubert*.**

Captain VanHaverbeke's opinions regarding the effectiveness of the *Deepwater Horizon* Response operations are unreliable and irrelevant by his own admission.  Because there can be no dispute that Captain VanHaverbeke's opinions do not meet the requirements set forth in *Daubert*, those opinions should be excluded.

**A.     Captain VanHaverbeke Admits that His Analysis of the Effectiveness of the *Deepwater Horizon* Response Is Incorrect.**

In his Round 2 expert report, Captain VanHaverbeke attempted to rebut opinions offered by BPXP's spill response expert, Captain Paskewich, regarding the effectiveness of the *Deepwater Horizon* Response.  In his opening expert report, Captain Paskewich calculated the

4

percentages of oil that were skimmed, burned and chemically dispersed during the *Deepwater Horizon* Response and compared those percentages to similar data from other oil spill responses. (Ex. C, 8/15/14 Paskewich Rpt. at 19; Ex. B, VanHaverbeke Dep. at 142:15-143:1, 157:20-25) Captain Paskewich opined that in "most open ocean spill responses, approximately 10-15% of oil is removed, typically using mechanical recovery means, such as skimming." (Ex. C, 8/15/14 Paskewich Rpt. at 19) He determined that BPXP and others in the Unified Command deployed a combination of tools in the *Deepwater Horizon* Response "to achieve a removal rate that greatly surpassed . . . the 10-15% benchmark removal rate, as well as the results of other large spill responses." (*Id.*) In particular, he opined that, depending on whether government or BPXP spill volume estimates are used, BPXP and others in the Unified Command "skimmed, burned, and chemically dispersed anywhere from 29% to 49% of the oil that was spilled in the *Deepwater Horizon* Incident—roughly *two to five times greater* than the removal rate achieved in a typical spill response." (*Id.*) Captain Paskewich concluded that the efforts of BPXP and its Unified Command partners during the *Deepwater Horizon* Response "were extraordinarily effective in minimizing the effects of the spill." (*Id.*)

Captain VanHaverbeke responded to Captain Paskewich's assessment of the effectiveness of the *Deepwater Horizon* Response by performing his own calculations of the percentages of spilled oil that were burned, skimmed, and chemically dispersed. (Ex. A, 9/12/14 VanHaverbeke Rpt. at 4-5) Based on this analysis, Captain VanHaverbeke concluded that ███

████████████████████████████████████████████

████████████████████████████████████████████

████████████████ (*Id.* at 4; Ex. B, VanHaverbeke Dep. at 143:10-15)

5

At his deposition, however, Captain VanHaverbeke admitted that his "calculations of the effectiveness of skimming, chemical dispersing, and burning operations" were, in fact, "incorrect." (Ex. B, VanHaverbeke Dep. at 143:10-21)  Captain VanHaverbeke conceded that, in performing his calculations, he improperly relied on "outdated information" regarding the amount of oil that had been discharged and removed from the environment through various natural processes and response efforts. (*Id.* at 134:21-25, 143:19-21)  This outdated information appeared in an "older version" of the government's Oil Budget Calculator "that has since been amended." (*Id.*)  Captain VanHaverbeke acknowledged that he relied on this incorrect data even though, at the time he prepared his report, he had access to accurate and updated information. (*Id.* at 145:23-146:1, 157:20-158:3; Ex. D, Dep. Ex. 13522)  Captain VanHaverbeke also conceded that, unlike himself, Captain Paskewich used and cited the accurate data in his August 15, 2014 expert report—the report that Captain VanHaverbeke was purporting to critique. (*Id.*)  Asked why he based his analysis on inaccurate data, Captain VanHaverbeke testified: "Simply an error on my part when I was grabbing stuff to do the arithmetic," adding "I'm sorry I was pressed for time." (Ex. B, VanHaverbeke Dep. at 135:22-136:1, 148:13-149:2)

Captain VanHaverbeke admitted that his reliance on "incorrect and outdated" data led to a series of errors in his analysis of the effectiveness of the *Deepwater Horizon* Response. ***First***, Captain VanHaverbeke agreed that he "miscalculated the amounts of oil that were burned, dispersed or collected." (*Id.* at 167:12-19)  He testified:

> Q: Your expert report contains calculations of the effectiveness of skimming, chemical dispersing and burning operations in the response, correct?
>
> **A: Correct.**
>
> Q: And you agree that those calculations are incorrect?
>
> **A: Yes.**

> \* \* \*
>
> Q: You used outdated and incorrect information in calculating the amount of oil that was burned, skimmed, and chemically dispersed, correct?
>
> **A: Yes.**

(*Id.* at 143:11-18, 167:20-24 (objections omitted))  Capt. VanHaverbeke admitted that, as a result of these errors, his analysis ***understates*** the amount of oil that ***the government contends*** was burned, skimmed, or chemically dispersed by roughly 400,000 barrels. (*Id.* at 154:24-155:4)

*Second*, Captain VanHaverbeke admitted that, in determining the percentage of oil that was removed during the Response, he used a spill volume amount that is incorrect regardless of whether government or BPXP estimates are used. (*Id.* at 162:7-10)  When asked at his deposition about the accuracy of the spill volume estimate he used, Captain VanHaverbeke acknowledged simply, "yes, I used the wrong numbers." (*Id.* at 167:25-168:3)

*Third*, Captain VanHaverbeke conceded that he also used "incorrect information about the amount of oil that the U.S. claims was consumed due to natural processes." (*Id.* at 168:4-8; *see also id.* at 165:4-7)  His assertions about the amount of oil that was available for recovery during the Response are likewise inaccurate. (*Id.* at 164:1-9, 164:21-165:7)

Remarkably, Captain VanHaverbeke conceded that, as a result of all of these errors, his expert reports do not present any accurate assessment of the effectiveness of operations during the *Deepwater Horizon* Response:

> Q: There is . . . ***nowhere*** in any of your three expert reports where you present ***accurate*** mathematical calculations reflecting the effectiveness of operations in the Deepwater Horizon response, correct?
>
> **A: Correct.**

(*Id.* at 146:12-17 (emphasis added; objection omitted))  It is difficult to imagine an analysis that is less reliable than one that, ***by its proponent's own admission***, is simply wrong. *Guillory*, 95

7

F.3d at 1331 (excluding expert opinion based on facts that are "indisputably wrong"); *Graves ex rel. W.A.G.*, 2011 WL 4590768, at *6 ("If the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion drawn from that data is unreliable."). Captain VanHaverbeke's admittedly inaccurate analysis cannot help the Court "to understand the evidence or to determine a fact in issue," and should be excluded. *Daubert*, 509 U.S. at 591; *see Guillory*, 95 F.3d at 1331 ("[A]n opinion based totally on incorrect facts will not speak to the case at hand and hence will be irrelevant.") (citing *Christophersen v. Allied-Signal*, 939 F.2d 1106, 1114 (5th Cir. 1991)).

### B. Captain VanHaverbeke Concedes that BPXP's Expert, Captain Paskewich, Accurately Calculated the Effectiveness of the *Deepwater Horizon* Response.

Not only did Captain VanHaverbeke admit that his own analysis is flawed, he also conceded that BPXP's expert, Captain Paskewich, did in fact accurately calculate the effectiveness of the *Deepwater Horizon* Response. (Ex. B, VanHaverbeke Dep. at 142:15-20, 143:10-21) At his deposition, Captain VanHaverbeke testified:

> Q. You agree that Captain Paskewich has accurately calculated the effectiveness of skimming, burning, and chemical dispersing operations in the DEEPWATER HORIZON response, true?
>
> **A. Yes.**
>
> Q. You also agree that Captain Paskewich has accurately calculated the effectiveness of skimming, burning, and chemical dispersing operations in the other spill responses shown in his expert report, correct?
>
> **A. Yes.**

(*Id.* at 142:15-143:1 (objections omitted))

Captain VanHaverbeke's admission that the analysis that he sought to rebut is, in fact, correct is tantamount to an acknowledgement that his contrary and erroneous opinions are

8

irrelevant, and thus, inadmissible.  *See Slaughter*, 919 F.2d at 307 (excluding expert opinion "replete with so many obvious errors as to be of no value to the trier of fact").

**II.     Captain VanHaverbeke's Dispersant Opinions Violate Two Prior Orders of this Court and Should Be Excluded.**

In his Round 2 expert report, Captain VanHaverbeke responded to opinions that Captain Paskewich offered in his opening report regarding dispersant use and limitations during the *Deepwater Horizon* Response.  In particular, Captain Paskewich addressed the issuance of a dispersant directive, Addendum 3 to the original Dispersant Monitoring and Assessment Directive, which Admiral Landry signed on May 26, 2010 at the insistence of the EPA. (Ex. C, 8/15/14 Paskewich Rpt. at 60-66)  Addendum 3 imposed strict limitations on the use of aerial and subsea dispersants, despite the contemporaneous findings of a group of 50 EPA and other scientists that dispersant use in the Response up to that point in time had been appropriate and should continue.  (*Id.* at 61-62)  Captain Paskewich explained that the dispersant limitations in Addendum 3 were "arbitrary, politically motivated, and not science-based" and "negatively impacted the Response" by leading to increased shoreline oiling.  (*Id.* at 63)

Captain VanHaverbeke responded by opining that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓  (Ex. A, 9/12/14 VanHaverbeke Rpt. at 1; *see also id.* at 6-8)  In forming these opinions, Captain VanHaverbeke expressly relied on information that he obtained from an interview that he conducted of Admiral Landry after the close of fact discovery, in contravention of two prior Orders of this Court.

In July 2014, the United States sought to amend its Rule 26(a) disclosures to identify, for the first time, Admiral Landry as a witness for the Penalty Phase trial.  (Ex. G, United States' Third Am. Rule 26(a) Disclosures at 3)  The United States requested leave to add Admiral

9

Landry so that she could provide testimony about dispersant use and her decision to sign Addendum 3.  (Ex. I, 7/28/14 B. Robers Letter, Rec. Doc. 13246; *see* Ex. H, 7/24/14 Status Conf. Tr. at 9-10)  BPXP objected, noting that the United States had provided no reasonable justification for the delayed disclosure and that the late addition of Admiral Landry would unfairly prejudice BPXP.  (*See* Ex. J, 8/4/14 H. Karis Letter, Rec. Doc. 13247 at 1-2; Ex. H, 7/24/14 Status Conf. Tr. at 7-10)  The Court agreed with BPXP, and on August 5, 2014, Judge Shushan issued an Order finding that the United States' "addition of Admiral Landry is not timely."  (Ex. E, 8/5/14 Order, Rec. Doc. 13251)  When the United States moved for review of Judge Shushan's Order, this Court again denied the United States' request to add Admiral Landry as a witness, affirming Judge's Shushan's Order.  (Ex. F, 8/29/14 Order, Rec. Doc. 13341)

Nevertheless, on September 2, 2014, just ***four days*** after this Court rejected for the second time the United States' request to call Admiral Landry as a witness, the United States arranged for Captain VanHaverbeke to interview Admiral Landry about dispersant use and Addendum 3 — the ***exact same issues*** that the United States unsuccessfully sought to have Admiral Landry testify about as a fact witness.  (*See* Ex. I, 7/28/14 B. Robers Letter, Rec. Doc. 13246 at 1; Ex. B, VanHaverbeke Dep. at 236:17-19, 237:4-7, 238:1-22)  BPXP was not notified of or present at the interview.  (Ex. B, VanHaverbeke Dep. at 239:4-9)  During the interview, Admiral Landry provided Captain VanHaverbeke with information about dispersant use and limitations, including "context" surrounding the issuance of Addendum 3.  (*Id.* at 220:11-221:2, 238:1-22)  She also reviewed and provided comments to Captain VanHaverbeke on Captain Paskewich's opening report.  (*Id.* at 241:23-242:2, 242:22-243:4)

Captain VanHaverbeke expressly relied on the information that he obtained from Admiral Landry — information that she provided to the United States alone and information not otherwise in the record — to support the dispersant opinions that he offered in his Round 2 report. (Ex. A, 9/12/14 VanHaverbeke Rpt. at 1 ("███████████████████████████"); Ex. B, VanHaverbeke Dep. at 221:20-222:2)  For example, Captain VanHaverbeke relied on his interview of Admiral Landry to support his opinion that the EPA "acted appropriately in connection with the issuance of addenda 2 and 3 during the response." (Ex. B, VanHaverbeke Dep. at 193:6-9, 209:11-19, 220:23-221:2, 227:9-228:1)

Captain VanHaverbeke's dispersant opinions violate this Court's August 5, 2014 and August 29, 2014 Orders.  By seeking to funnel Admiral Landry's recollection of events surrounding the issuance of Addendum 3 through its expert, the United States attempts an end run around the Court's Orders precluding the United States from calling Admiral Landry herself as witness.  A party cannot use an expert report to circumvent a court order. *See, e.g.*, *Sandoz*, 2014 WL 1494592, at *11 ("[C]ommon sense dictates that a party who has been denied leave to amend" discovery to add certain references "should not then be able to circumvent the Court's Order by presenting those very same … references in its expert report"); *Blake*, 292 F.R.D. at 18 (striking plaintiffs' rebuttal expert report because it was "a thinly veiled attempt to circumvent" the Court's prior discovery order).

Not only does Captain VanHaverbeke's reliance on information from Admiral Landry violate two Orders of this Court, it also prejudices BPXP.  The United States first attempted to disclose Admiral Landry as a witness on July 11, 2014 — ***four months*** after such disclosures were due, a mere ***seven days*** before the close of fact depositions, and a month before the expert report deadline.  Prior to that untimely disclosure, BPXP had proceeded with fact discovery

11

(including its decisions to forgo certain depositions) and expert planning based on the record as it stood. (Ex. J, 8/4/14 H. Karis Letter, Rec. Doc. 13247 at 2) BPXP decided to withdraw certain of its potential trial witnesses in reliance on the United States' witness list. (*Id.*)

The Court recognized the prejudice that the United States' untimely disclosure would cause BPXP when it precluded the addition of Admiral Landry as a witness back in August. (Ex. E, 8/5/14 Order, Rec. Doc. 13251; Ex. F, 8/29/14 Order, Rec. Doc. 13341) That prejudice has only grown over the last three months. BPXP has not had the opportunity to examine Admiral Landry in the Penalty Phase, or to plan its expert discovery based on the possibility that she might testify at trial. *See Matter of James Wilson Assocs.*, 965 F.2d at 173 (noting that "it is improper to use an expert witness as a screen against cross-examination"); *Emigh v. Consol. Rail Corp.*, 710 F. Supp. 608, 613 (W.D. Pa. 1989) (striking expert opinions based on information from doctors who were unavailable for cross-examination).

The United States should not be permitted to use its expert report to circumvent unambiguous Orders of this Court and prejudice BPXP by presenting Admiral Landry's undisclosed and untested fact testimony through the guise of expert opinion. *See In re H&M Oil & Gas, LLC*, 511 B.R. 408, 413 (Bankr. N.D. Tex. 2014) (an expert should not be allowed "under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements" the expert bases his opinion) (quotations and citation omitted); *Malletier*, 525 F. Supp. 2d at 666 ("[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony."). Captain VanHaverbeke's dispersant opinions should therefore be stricken.

## **CONCLUSION**

For the foregoing reasons, BPXP respectfully requests that the Court enter an order precluding Captain VanHaverbeke from offering expert opinions or testimony regarding (1) the effectiveness of the *Deepwater Horizon* Response, including but not limited to the opinions presented in Section 2 on pages 4-5 of his Round 2 report; and (2) dispersant use and limitations, including but not limited to the opinions presented in Section 3 on pages 6-8 of his Round 2 report.

Date: December 5, 2014                                       Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
Matthew Regan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Kirkland & Ellis LLP
655 15th Street, NW
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorneys for BP Exploration & Production Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of December, 2014.

                                                      /s/ Don K. Haycraft
                                                       Don K. Haycraft