**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY  THE OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE GULF | * | |
| OF MEXICO, ON APRIL 20, 2010 | * | SECTION J |
| | * | |
| This document relates to: | * | |
| | * | HONORABLE CARL J. BARBIER |
| No. 10-4536 | * | |
| | * | MAGISTRATE JUDGE SHUSHAN |
| | * | |

**BPXP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE
REPORTS AND TESTIMONY OF PROFESSOR FREDRIC QUIVIK**

United States expert Professor Fredric Quivik is an "industrial archaeologist" with a "specialty [in] industrial history" and expertise in "architectural history." (Ex. A, Quivik Dep. at 9-10).  In his final report, Professor Quivik summarized his work as follows:

> I have used an empirical historical method to draw *conclusions about the facts* leading to and in response to the Macondo blowout. In particular, I draw *conclusions about what BPXP did and did not do* in managing operations in the Gulf of Mexico and *what other BP entities did* in managing operations in the Gulf.

(Ex. B, 9/26/14 Quivik Rpt. at 5) (emphasis added).

It is "not for an expert to testify as to whether the company did or did not do something." *In re Rezulin*, 309 F. Supp. 2d 531, 554 (S.D.N.Y. 2004).  Instead, "[t]he appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events."  *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013). Moreover, although Professor Quivik claims to have "evaluate[d] the credibility of documents and testimony" in "this case" (Ex. A, Quivik Dep. at 69), "the jobs of judging these witnesses' credibility and drawing inferences from their testimony belong to the factfinder."  *See Marvel Characters*, 726 F.3d at 136.

1

Professor Quivik has submitted three reports (Round One, Round Two, and Round Three) on behalf of the United States concerning facts related to the BP Group corporate structure and the *Deepwater Horizon* incident and response.  Professor Quivik's reports comprise 113 pages that regurgitate deposition testimony and documentary evidence in order to construct a factual narrative of the record evidence.  In circumstances where the underlying event occurred less than five years before the trial and hundreds of witnesses have testified, these reports do nothing to assist the factfinder.

Professor Quivik's voluminous reports simply repeat and summarize deposition testimony providing minor details about various employees and corporate entities, including minutia such as where in a particular building certain employees worked.  For example:

- "[In his deposition, BP engineer David Rich] described the physical layout of the well team leaders and drilling engineers working at BP's Houston office facility, called Westlake 4, one of four buildings in Westlake Park along Houston's Energy Corridor.  In April 2010, Rich's office was on the 10th floor of Westlake 4, as was Jon Sprague's office.  Drill rig teams, such as John Guide's team responsible for *Deepwater Horizon*, had operations centers on the 2nd and 3rd floors of Westlake 4.  David Sims also had his office on the 2nd or 3rd floor.  Rich described this arrangement of office spaces without reference to BPXP."  (Ex. C, 8/15/14 Quivik Rpt. at 61).

- "At the time of his 2011 deposition, [James Dupree's] title was regional president for the Gulf of Mexico, which he noted was not really a promotion but rather a name-change for his position that accompanied BP's reorganization in the Gulf in the wake of the Macondo disaster.  When describing the management organization for the Gulf of Mexico, which included assets held by BPXP, he did not mention BPXP as part of the organization, nor did he mention that he was an officer of BPXP. . . . [W]hen describing operations conducted on BPXP's assets, he did not mention any role that BPXP might have had in those operations."  (Ex. D, 9/12/14 Quivik Rpt. at 12).

- "John Guide's supervisor in the Drilling & Completion organization at the time of the blowout was David Sims, whose title was D&C operations manager (Exploration & Appraisal).  Sims had been made operations manager in a restructuring of the D&C organization that took effect in early April 2010 (described in further detail below), just prior to the blowout. . . . As part of the reorganization, Little moved to another assignment.  The engineers who had worked for Sims continued doing the work they had been doing, but under the reorganization they were assigned to Jonathan Sprague's drilling engineering section (see below).  At his deposition, Sims testified that he was an employee of BP

2

America.  BP has admitted that Sims was a BPAPC [BP America Production Company] employee at the time of the disaster."  (Ex. C, 8/15/14 Quivik Rpt. at 53).

Courts have sometimes allowed historians (including Professor Quivik) to summarize evidence in cases involving events from decades ago where many of the witnesses are deceased.[1] Professor Quivik's webpage states, for example:  "***Because there are often few, if any, living witnesses to the causes of environmental harm in past decades***, the courts and both sides in the litigation typically rely on ***expert historians*** to research and draw conclusions (called expert opinions in legal parlance) about past events."  (Ex. E, Deposition Exhibit 13209) (emphasis added).  In this case, however, the incident occurred less than five years ago, the vast majority of the witnesses are alive, and there have been scores of fact witness depositions.  Based on BPXP's research, no reported decision has allowed a "historian" to testify in a case involving environmental contamination that occurred within five years of the trial.  Professor Quivik should not be permitted to testify regarding his version of the "history" of recent events.

---

[1]     *See, e.g., United States v. Sterling Centrecorp, Inc.*, No. 2:08-cv-U2356-MCE-JFM, 2013 WL 3166585 (E.D. Cal. June 20, 2013) (admitting Professor Quivik's testimony); *Cayuga Indian Nation of N.Y. v. Pataki*, 165 F. Supp. 2d 266, 300-04 (N.D.N.Y. 2001), *rev'd on other grounds*, 413 F.3d 266 (2d Cir. 2005) (expert testimony regarding New York's purchase of Cayuga lands in eighteenth century).

## **ARGUMENT**

Professor Quivik's opinions are improper subjects for expert testimony for at least two reasons: (a) his opinions consist of improper factual narrative about what individuals and companies did or did not do; and (b) his methodology evaluates the credibility of witnesses and documents.

**I.      Professor Quivik's Recitation of Facts Does Not Qualify As Expert Testimony Under Rule 702.**

Professor Quivik testified that the "question that he set out to ask" in this case was one that had a "factual answer":

> Q.      What -- what were the questions that you set out to ask . . . in this case?
>
> A.      They can be summarized briefly by the question, who was managing various facets of the operations at the Macondo well?  And then that breaks down into different individuals, organizations I thought might be participating in that activity.  And I investigated further to see the extent to which I saw management activity.
>
> Q.      Okay.  And the answer to that question that you asked, who was managing various facets of the operations at the Macondo well, that's a factual answer, correct?
>
> A.      Yes.

(Ex. A, Quivik Dep. at 67-68).

Professor Quivik further testified that his testimony consists of summarizing the factual conduct of various BP Group entities:

> Q.      And then that's what you did in connection with your reports, you drew conclusions about the facts leading to and in response to the Macondo blowout?
>
> A.      Yes.
>
> Q.      And in particular, you drew ***conclusions about what BPXP did and did not do*** in managing the Gulf of Mexico, and ***what other BP entities did*** in managing operations in the Gulf, correct?

A.      Yes.

(Ex. A, *Id*. at 52) (emphasis added).

Although Professor Quivik testified that he drew "conclusions about what BPXP did and did not do," the law is clear that "it is not for an expert to testify as to whether the company did or did not do something."  *In re Rezulin*, 309 F. Supp. 2d at 554.  Rather, "[t]he appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events.  And the jobs of judging these witnesses' credibility and drawing inferences from their testimony belong to the factfinder."  *See Marvel Characters, Inc.*, 726 F.3d at 136 (citing *Nimely v. City of New York*, 414 F.3d 381, 397–98 (2d Cir. 2005)).  Thus, while an expert may "rely on facts or data in formulating an expert opinion," nonetheless "an expert cannot be presented . . . solely for the purpose of constructing a factual narrative based upon record evidence."  *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005), *aff'd*, 551 F. Supp. 2d 173, 180 (S.D.N.Y. 2008); *see also In re Tasch, Inc.*, Nos. 97-15901 JAB, 98-3746 G, 1999 WL 596261, at *2 (E.D. La. Aug. 5, 1999) ("Expert testimony that does nothing more than 'mirror' testimony offered by fact witnesses should also be excluded.").[2]

---

[2]      *See also In re Rezulin*, 309 F. Supp. 2d at 551 (rejecting portions of plaintiffs' expert's testimony that was "a narrative reciting selected regulatory events" because "[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence"); *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242(SAS), 2002 WL 1585551, at *1-2 (S.D.N.Y. July 16, 2002) (where expert's report was based on a review of, inter alia, "documents, computer documents, computer files, deposition transcripts and exhibits," the "testimony by fact witnesses familiar with those documents would be far more appropriate ... and renders [the expert witness's] secondhand knowledge unnecessary for the edification of the jury") (citation and internal quotation marks omitted) (alterations in original); *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 95 CIV 3901(PKL), 1999 WL 946354, at *3 (S.D.N.Y. Oct. 19, 1999) (where expert's testimony "is not based on personal knowledge, but instead on his review of documents and depositions produced by the parties," the expert's testimony "may not take the place of that of the individuals who actually negotiated the deal") (citations omitted).

Rule 702 does not permit an expert to rehash evidence about which he has no personal knowledge, particularly when the testimony addresses "lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help." *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989); *see also McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1272 (6th Cir. 1988) (holding that a proffered expert's testimony as to the facts of the case was not helpful to the factfinder and therefore inadmissible:  "The court reasoned that the testimony was not based on 'scientific, technical, or other specialized knowledge,' but rather on Green's lay opinion of the *facts* of the case and that as such, his opinion would not 'assist the jury on a fact that they can decide as well as an expert.'") (emphasis in original); *In re Tasch, Inc.*, 1999 WL 596261 at *2 (same); *Taylor v. Evans*, No. 94 Civ. 8425 (CSH), 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) (rejecting portions of expert report on the ground that the testimony consisted of "a narrative of the case which a lay juror is equally capable of constructing").

### A.   The Cases in Which Historians Have Been Permitted to Restate Facts as Experts Do Not Involve Environmental Contamination from Within Five Years of Trial and Witnesses Who Are Almost All Living.

In some cases, historians have been permitted to testify as experts in cases involving events from prior decades or centuries, where all or virtually all of the witnesses are deceased. *See, e.g.*, *Cayuga Indian Nation of N.Y. v. Pataki*, 165 F. Supp. 2d at 300-04 (expert testimony regarding New York's purchase of Cayuga lands in eighteenth century); *Waterhouse v. R.J. Reynolds Tobacco Co.*, 162 Fed. Appx. 231, 234 (4th Cir. 2006) (expert testimony regarding public awareness in the twentieth century regarding the health risks associated with smoking); *Denson v. Stack,* 997 F.2d 1356, 1363 (11th Cir. 1993) (expert testimony on "whether the Waccasassa River as it traverses Devil's Hammock was navigable in 1845").

Consistent with this precedent, Professor Quivik has been admitted to testify as a historian in cases involving mining contamination and other events that occurred many decades ago. *See United States v. Sterling Centrecorp, Inc.*, No. 2:08-cv-02556-MCE-JFM, 2013 WL 3166585 (E.D. Cal. June 20, 2013) (testimony related to mining activities between 1934 and 1943); *U.S. v. Newmont USA Ltd.*, No. CV-05-020-JLQ, 2008 WL 4621566 (E.D. Wash. 2008) (testimony related to contamination by a uranium mine from 1950s through 1980s); *United States v. Asarco Inc.,* 392 F. Supp. 2d 1197 (D. Idaho 2005) (testimony related to contamination by mines in the 1960s); *The Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F.Supp.2d 1037 (D. Ariz. 2005) (testimony related to contamination by a copper mine and included discussion of operations from 1911 to 1979).

In each of the previous cases in which Professor Quivik has testified, the initial contamination occurred in the twentieth century or earlier:

> Q. Okay. In all of the other cases you've testified in, the initial contamination occurred in a prior century?
>
> A. Yes.

(Ex. A, Quivik Dep. at 24).  In fact, Professor Quivik has never been admitted as an expert in a case involving contamination that occurred within ten years of trial.  (Ex. A, *Id*.).  In those past cases in which Professor Quivik was allowed to testify as a historian, the vast majority of the fact witnesses were deceased:

> Q.  In the other cases you've testified in in the past, the vast majority of the witnesses to the original contamination have passed away, correct?
>
> A. Yes.

(Ex. A, *Id*. at 25).  By contrast, in this case, the vast majority of the witnesses are alive:

> Q.  Now, in this case, in -- in contrast to the prior cases you've testified in, the vast majority of the witnesses have not passed away, correct?

A: Yes, that's correct.

(Ex. A, *Id*.).

In cases involving recent events where the witnesses are living, historians have been barred from testifying. *See In re Rezulin*, 309 F. Supp. 2d at 551; *see also Marvel Characters*, 726 F.3d at 136; *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (precluding narrative because experts "will not be permitted to merely read, selectively quote from, or 'regurgitate' the evidence" and "to the extent such evidence is admissible, it should be presented to the [factfinder] directly").   In *Rezulin,* the Court excluded an expert's "narrative" testimony summarizing historical facts:

> Dr. Gale's history of Rezulin is merely a narrative of the case which a juror is equally capable of constructing. . . . . Such material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence. . . . [T]he glosses that Dr. Gale interpolates into his narrative are simple inferences drawn from uncomplicated facts that serve only to buttress plaintiffs' theory of the case. As plaintiffs' Rezulin "historian," therefore, Dr. Gale does no more than counsel for plaintiff will do in argument, i.e., propound a particular interpretation of [defendant]'s conduct. Accordingly, Dr. Gale's testimony relating to the "history of Rezulin" is inadmissible.

309 F. Supp. 2d at 551 (internal citations and quotation marks omitted).

Based on BPXP's research on reported cases, were Professor Quivik admitted to testify here, it would be the first case in which an expert "historian" was permitted to testify about environmental contamination that began within five years of the trial.  Professor Quivik's reports and testimony should be excluded.

**B.     The Portions of Professor Quivik's Reports Relating to the Nineteenth and Twentieth Centuries Are Irrelevant.**

Professor Quivik devotes approximately 10 pages of the 113 pages in his reports to the BP Group's history prior to the *Deepwater Horizon* incident.  For example, Professor Quivik's report discusses historical events dating back to the mid-1800s and the 1950s:

- "BP has its origins in the efforts of William Knox D'Arcy (1849-1917) to find and gain access to petroleum in Persia (present-day Iran). D'Arcy had gained a large fortune mining gold in Australia by developing the Mount Morgan mine. When he turned his attention to oil at the turn of the twentieth century, the United States was the world's largest oil producer, with lesser supplies coming from oil fields in Russia and the Dutch East Indies (today's Indonesia). Persia granted D'Arcy a concession in 1901 to explore for oil and, should he find any, to exploit and market it." (Ex. C, 8/15/14 Quivik Rpt. at 11).

- "Because of turmoil in the Middle East in the 1950s, BP decided in the late-1950s to diversify its sources of supply to other regions, including the Americas. BP entered a consortium with ARCO and Standard Oil of New Jersey to explore Alaska's North Slope." (Ex. C, *Id*. at 12).

Professor Quivik's discussion of events that occurred in prior centuries does not insulate his opinions from being excluded. First, Professor Quivik testified that "the significant majority of the pages in [his] report relate to events at BP from the past ten years." (Ex. A, Quivik Dep. at 65) In other words, less than ten percent of Professor Quivik's reports relate to events that occurred more than ten years ago. Second, the facts repeated by Professor Quivik relating to "the efforts of William Knox D'Arcy" to gain "access to petroleum in Persia" or "turmoil in the Middle East in the 1950s" are irrelevant here. (Ex. C, 8/15/14 Quivik Rpt. at 11-12).

For these reasons, Professor Quivik's testimony should be excluded in its entirety.

## II.     Professor Quivik's Testimony Should Also Be Excluded Because His Methodology Involves Evaluating the Credibility of Witnesses and Documents.

Professor Quivik's reports discuss in detail scores of depositions and documents. (Ex. C, 8/15/14 Quivik Rpt. at Appendix B: Documents Considered). Professor Quivik evaluated the "credibility" of documents and testimony in this case:

> Q: And is one of the things that you did in this case to evaluate the credibility of documents and testimony?

> A: Yes.

(Ex. A, Quivik Dep. at 69). Professor Quivik further testified:

> Q. What do you mean by credible?

> A. There will be documents in the record that make some statement, and one of the things that I have to do as an historian is ascertain whether that statement is accurate or not, truthful or not, credible or not.

(Ex. A, *Id*. at 68).

It is "a well-recognized principle of our trial system that determining the weight and credibility of a witness's testimony belongs to the [factfinder]." *Nimely*, 414 F.3d at 397 (internal quotation marks omitted). Thus, "expert opinions that constitute evaluations of witness credibility . . . are inadmissible under Rule 702." *Id*. at 398; *see United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (rejecting expert's opinion on credibility because "[f]undamental to the role of . . . [the] trier of fact is the task of assessing witness credibility"); *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988) ("[W]itnesses may not opine as to the credibility of the testimony of other witnesses. . . ."). An expert's opinion on credibility is nothing more than a "subjective review of the evidence [and] is improper." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 180 (S.D.N.Y. 2008).

In addition to the reasons set forth above, Professor Quivik's opinions should be excluded because the methodology he employed involved assessing the credibility of documents and testimony, which is not admissible expert testimony.

## <u>CONCLUSION</u>

To BPXP's knowledge, no court has ever allowed an expert historian to testify to factual events related to environmental contamination that began in the last five years.  BPXP respectfully requests that the Court decline the United States' invitation to make this the first case allowing such "historical" expert testimony, and further requests that the Court enter an order excluding Professor Quivik's reports and testimony.

 Date: December 5, 2014                                    Respectfully submitted,


                                                          /s/ Don K. Haycraft_____
                                                          Don K. Haycraft (Bar #14361)
                                                          R. Keith Jarrett (Bar #16984)
                                                          Liskow & Lewis
                                                          701 Poydras Street, Suite 5000
                                                          New Orleans, Louisiana 70139-5099
                                                          Telephone: (504) 581-7979
                                                          Facsimile: (504) 556-4108
                                                          and

                                                          Richard C. Godfrey, P.C.
                                                          J. Andrew Langan, P.C.
                                                          Hariklia Karis, P.C.
                                                          Matthew Regan, P.C.
                                                          Kirkland & Ellis LLP
                                                          300 North LaSalle Street
                                                          Chicago, IL 60654
                                                          Telephone: (312) 862-2000
                                                          Facsimile: (312) 862-2200

                                                          Robert C. "Mike" Brock
                                                          Kirkland & Ellis LLP
                                                          655 15th Street, NW
                                                          Washington, DC 20005
                                                          Telephone: (202) 879-5000
                                                          Facsimile: (202) 879-5200
                                                          ***Attorneys for BP Exploration & Production Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of December, 2014.

/s/ Don K. Haycraft