UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY  THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | *<br>*<br>*<br>* | MDL NO. 2179<br><br>SECTION J |
| This document relates to:<br><br>    No. 10-4536 | *<br>*<br>*<br>*<br>* | HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

# BPXP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF DR. RICHARD W. CLAPP

Dr. Richard W. Clapp, an expert witness for the United States, offers opinions regarding the "health impacts" of the *Deepwater Horizon* ("DWH") incident.  By his own admission, however, Dr. Clapp's opinions are speculative and unsubstantiated.  Dr. Clapp admits that he has *no evidence* that any short- or long-term health effects were caused by any DWH-related exposures, and admits that he reaches no conclusions regarding *causation* of any health effects in any population.  Also, Dr. Clapp does not assert that any long-term health effects have occurred or will occur—only that they *may* occur.  As a result, Dr. Clapp's opinions are unreliable and irrelevant under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  Finally, Dr. Clapp admits that he is not an expert in mental health or related disciplines, and therefore he is not qualified to offer any opinions regarding any mental health impacts of the DWH incident.  For these reasons, all of Dr. Clapp's opinions and testimony should be excluded from the Penalty Phase trial.

## LEGAL BACKGROUND

Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), expert testimony must be both reliable and relevant to be admissible.  To be reliable,

expert testimony must, among other things, be "scientifically valid" and "based on sufficient facts or data." *Id.* at 589-93; Fed. R. Evid. 702. "[I]t is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003). The Fifth Circuit has consistently excluded as unreliable expert testimony that relies on speculation or is not supported by record evidence. *See, e.g.*, *Johnson v. Arkema, Inc.*, 685 F.3d 452, 463, 467-68 (5th Cir. 2012) (affirming exclusion of expert's testimony in toxic tort case where expert "failed to come forth with any scientific data to support" his opinion and "acknowledged that there is scant scientific evidence" that supported his opinion, including failure to establish causation); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 277-79 (5th Cir. 1998) (physician's testimony excluded as "speculative" and "lacking any scientific validity" because there was no data showing levels of exposure to the chemical at issue and there was "no scientific support" that negative health effects could be caused by exposures "at any level").

Expert testimony not only must be reliable; it must also be relevant. *Daubert*, 509 U.S. at 589. In other words, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Federal courts, including the Fifth Circuit, have found that expert testimony is irrelevant where there is "too great an analytical gap between the data and the opinion proffered," including where opinions are speculative. *See, e.g.*, *General Elec. Co. v. Joiner*, 522 U.S. 136, 140, 146 (1997); *Moore*, 151 F.3d at 275, 278. As a result, conclusory assumptions or unsupported extrapolations are irrelevant and inadmissible. *See Joiner*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Finally, an expert witness must be qualified by "knowledge, skill, experience, training, or education" on the subjects for which he offers opinions. *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (citing Fed. R. Evid. 702); *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). To determine whether an expert is qualified, courts generally examine the quality of the expert's professional studies or personal experience. *Dart v. Kitchens Bros. Mfg.*, 253 F. App'x 395, 398 (5th Cir. 2007); *see also Hills v. Fanuc Robotics Am., Inc.*, No. Civ. A. 04-2659, 2010 WL 890223, at *5 (E.D. La. Mar. 5, 2010).

## ARGUMENT

**I.   Dr. Clapp's Opinions Are Unreliable and Irrelevant Because They Are Speculation and Conjecture**

In his expert reports, Dr. Clapp concludes, in sweeping fashion, that ███████ ███████████████████████████████████████████████████████ ██████████████████████████ ███████████████ █████████████████████████████████████ According to Dr. Clapp, ██████████████████████████████████████████████████ █████████████████████████████████ He also concludes that ███████████████████████████████ ██████████████████████████████████ According to Dr. Clapp, ████ ██████████████████████████████████████████████████████ █████████████████████████████████████████ Dr. Clapp's opinions are unreliable and irrelevant speculation because (1) he admits that he has no actual evidence that any short- or long-term health effects were caused by any DWH-related exposures; (2) he admits that he offers no opinions regarding any causal link between the DWH incident and any health

effects; and (3) his opinions regarding long-term health effects are admittedly speculative. Thus, his opinions should be excluded.

### A. Dr. Clapp Admittedly Has No Evidence of Exposure-Related Health Effects

Dr. Clapp himself nullified in deposition the value of his opinions expressed in his reports regarding both short- and long-term health effects, revealing that they consist of nothing more than speculation and conjecture. Dr. Clapp admits that he has ***no information or data*** that ***any*** short-term or long-term health effects were ***actually caused*** by exposures associated with the DWH incident:

> Q. (BY MS. DESANTIS) Okay. Let's focus on causation, though, Dr. Clapp. You have no information or data that any short-term health effects for any population were, in fact, caused by exposure to any toxin or chemical associated with the DWH incident, correct?
> **A. Correct.**
>
> Q. And you have no information or data demonstrating any long-term health effects in any individual as a result of exposure to any toxin or chemical associated with the . . . DWH incident, correct?
> **A. Correct as—correct as of this moment, yes.**
>
> Q. (BY MS. DESANTIS) And you have no information or data demonstrating any long-term health effects in any population as a result of exposure to any toxin or chemical associated with the DWH incident, correct?
> **A. Correct.**

(Ex. D, 10/31/14 Clapp Dep. Tr. at 146 (objection omitted).) Because Dr. Clapp admits that he has no data or evidence to support any conclusions regarding DWH exposure-related health effects, such as data showing actual exposure of any individual or population to chemicals or toxins at levels that caused harm, those conclusions are inadmissible as speculation. *See Johnson*, 685 F.3d at 463, 467-68; *Moore*, 151 F.3d at 278-79.

Additionally, while Dr. Clapp maintains in his reports that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬ More fundamentally, he does not even assert that any negative health effect to any person or population has ***actually occurred*** as a result of exposure or potential exposure to benzene or naphthalene associated with the DWH incident, or even that any *will* occur in the future—just that he believes they ***can***. (*See* Ex. D. at 152-54.) Once again, without corroborative data, such hypothetical and speculative opinions are inadmissible. *Cf. Moore*, 151 F.3d at 279 (expert's opinions excluded as "speculative" and "lacking any scientific validity" because expert "could cite no scientific support for his conclusion that exposure to any irritant at unknown levels triggers this [health] condition").

Because Dr. Clapp has no data or evidence to support the existence of any actual short- or long-term health effects caused by exposures or potential exposures associated with the DWH incident—a critical limitation that he readily admits—his opinions regarding both potential exposure and exposure-related health effects are "speculative" and "lacking any scientific validity," *id.*, and there is "too great an analytical gap between the data and the opinion proffered." *See, e.g.*, *Joiner*, 522 U.S. at 146. This Court can only accept expert testimony that is based on data and evidence, not the "*ipse dixit*" of Dr. Clapp. Thus, Dr. Clapp's opinions regarding both short- and long-term health effects related to potential exposures from the DWH incident should be excluded.

### B. Dr. Clapp Admittedly Offers No Opinions Regarding Causation

Dr. Clapp also admits that he reaches no conclusions whatsoever regarding ***causation*** of ***any*** health effects, whether short- or long-term. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ; Ex. D at 138 ("Q. Now, Doctor, you did not intend to offer any opinions that constitute causal conclusions about observed symptoms, correct? A. Correct.").) Further, Dr. Clapp readily

5

admits that many—if not all—of the short-term health effects he discusses in his reports could have been caused by a number of factors other than the DWH spill.  (*See* Ex. D at 156-57, 185-87, 191-93.)

In order to satisfy *Daubert*'s reliability prong, some evidence of a "causal link" between health effects and exposures is necessary.  *See e.g.*, *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 664, 670 (5th Cir. 1999) (medical testimony excluded in toxic tort action for lack of evidence regarding causation).  Thus, Dr. Clapp's failure to reach any opinions regarding causation or to postulate any causal link between the DWH incident and any health effects further renders all of his conclusions regarding short- and long-term health effects unreliable and speculative.  Further, because Dr. Clapp expressly acknowledges that he has no opinions regarding causation of any health effects, his opinions will not "help the trier of fact to understand the evidence or to determine a fact in issue," and are therefore irrelevant and inadmissible.  Fed. R. Evid. 702.

   **C.**  **Dr. Clapp Admittedly Speculates Regarding Long-Term Health Effects**

Finally, Dr. Clapp does not even purport to assert that the DWH spill actually caused or will cause any long-term health effects—he only maintains that long-term health effects *may* occur:

> Q. (BY MS. DESANTIS) And you have no data or information confirming any long-term health effects at all related to the DWH incident, correct?
> **A. Could you tell me what you mean by "long-term"?**
>
> Q. (BY MS. DESANTIS) I'm—I'm using long-term as you use long-term health effects in your report. You have no data or information . . . confirming any long-term--not actual, long-term health effects related to the DWH incident, correct?
> **A. My definition of "long-term" would be five years or more, and we have that much time. It's not fully elapsed.**
>
> Q. (BY MS. DESANTIS) All right. So you have no data or information confirming long-term health effects related to the DWH incident, correct?
> …
>
> **A. Not as of this time.**

…

> Q. All right. So it is your opinion that we *may* see long-term health effects as a result of exposure to chemicals or toxins associated with the DWH incident, correct?
> **A. Correct.**
>
> Q. It is not your opinion that we *will* see long-term health effects as a result of exposure to chemicals or toxins associated with the DWH incident, correct?
> **A. Correct.**

(Ex. D. at 146-47, 149-50 (objections omitted) (emphases added).)  Based on this testimony, Dr. Clapp's opinions regarding the prospect of long-term health effects are expressly speculative.

Based on the admitted lack of any data or evidence to support Dr. Clapp's opinions regarding short- or long-term exposure-related health effects, Dr. Clapp's admitted failure to assert any causal link between the DWH incident and any health effects, and the admittedly speculative nature of Dr. Clapp's opinions regarding possible long-term health effects, Dr. Clapp's opinions are unreliable and irrelevant speculation.  For these reasons, his opinions should be excluded.

## II.     Dr. Clapp Is Not Qualified to Render Opinions Regarding Mental Health Effects

Dr. Clapp is not qualified to offer any opinions regarding any mental health impacts of the DWH incident.  By his own admission, he has no expertise or qualifications in mental health or psychology:

> Q. You're not a psychologist, are you?
> **A. No.**
>
> Q. And you do not hold yourself out as an expert in psychology, correct?
> **A. Correct. I understand the Court determines who's an expert, but I don't hold myself out as an expert in psychology to answer your question.**
>
> …
>
> Q. (BY MS. DESANTIS) Okay. And you're not a psychiatrist, correct?
> **A. I am not.**

> Q. And you don't hold yourself out as an expert in psychiatry, correct?
> **A. Correct.**
>
> Q. And you're not an expert in mental health generally, correct?
> **A. Correct.**

(Ex. D. at 46-47.)  Dr. Clapp is also not a medical doctor.  (*Id.* at 44.)  Thus, Dr. Clapp lacks the "knowledge, skill, experience, training, or education" to offer any opinions regarding mental health or psychological conditions or impacts.  *See* Fed. R. Evid. 702.  For this additional reason, therefore, all of Dr. Clapp's opinions regarding short- or long-term mental health effects should be excluded.

## **CONCLUSION**

For the foregoing reasons, BPXP respectfully requests that the Court enter an order precluding Dr. Clapp from offering any expert opinions or testimony in the Penalty Phase.

Date: December 5, 2014					Respectfully submitted,

					*/s/ Don K. Haycraft*
					Don K. Haycraft (Bar #14361)
					R. Keith Jarrett (Bar #16984)
					LISKOW & LEWIS
					701 Poydras Street, Suite 5000
					New Orleans, Louisiana 70139-5099
					Telephone: (504) 581-7979
					Facsimile: (504) 556-4108

					Richard C. Godfrey, P.C.
					J. Andrew Langan, P.C.
					Hariklia ("Carrie") Karis, P.C.
					Matthew T. Regan, P.C.
					KIRKLAND & ELLIS LLP
					300 North LaSalle Street
					Chicago, IL 60654
					Telephone: (312) 862-2000
					Facsimile: (312) 862-2200

					Robert C. "Mike" Brock
					KIRKLAND & ELLIS LLP
					655 15th Street, NW
					Washington, DC 20005
					Telephone: (202) 879-5000
					Facsimile: (202) 879-5200

					***Attorneys for BP Exploration & Production Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of December, 2014.

*/s/ Don K. Haycraft*