UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL No. 2179 |
| "DEEPWATER HORIZON" IN THE GULF | : | |
| OF MEXICO, ON APRIL 20, 2010 | : | SECTION J |
| | : | |
| THIS DOCUMENT RELATES TO: 10-4536 | : | JUDGE BARBIER |
| | : | |
| | : | MAGISTRATE JUDGE SHUSHAN |

---

**CLEAN WATER ACT – PENALTY PHASE**

**OPPOSITION OF THE UNITED STATES TO:
BPXP's MOTION TO ESTABLISH AS A MATTER OF LAW
THE MAXIMUM CWA PER-BARREL CIVIL PENALTY (Rec. Doc. 13666)**

**Table of Contents**

I.      Introduction……………………………………………………………………..1

II.     Both EPA and the Coast Guard Have the Jurisdiction to Adjust the Penalty for Inflation;
        Neither Regulation is *Ultra Vires*…………………………………………………………2

III.    Neither Agency's Rules are Procedurally Defective…………………………………...7

        A.      Ministerial, Non-discretionary Rules Implementing a Direction of Congress
                Do Not Require Opportunity for Public Comment……………………………..8

        B .     EPA Conducted Notice and Comment Rulemaking on the $4,300 Number,
                Even Though it was Not Required……………………………………………11

IV.     BPXP's notice was both Fair and Actual…………………………………………...13

V.      Conclusion………………………………………………………………………14

**List of Exhibits**

1. Letter from Anthony H. Gamboa, General Counsel, General Accounting Office, to Robert E. Fabricant, General Counsel, U.S. Environmental Protection Agency (July 15, 2002)

2. Complaint, *United States v. BP Exploration (Alaska) Inc.*, No. 3:09-cv-00064 (D. Alaska filed March 31, 2009) (Rec. Doc. 1)

3. Consent Decree, *U.S. v. BP Exploration (Alaska) Inc.*, No. 3:09-cv-00064 (D. Alaska filed July 20, 2011) (Rec. Doc. 47)

4. Excerpts of Office of Management and Budget, *Civil Monetary Penalty Assessments and Collections: 1990 Report to Congress and Civil Monetary Penalty Inflation Adjustment Report,* July 1991

## I.      Introduction.

BPXP seeks to reduce the maximum penalty available in this case from over $18 billion[1] to about $7 billion[2] by claiming that the regulations promulgated by both EPA and the Coast Guard were illegal. *See* BPXP Brief (Rec. Doc. 13666-1). In support of that position, BPXP makes three points, but each one is wrong.[3]

First, BPXP argues both the EPA and the Coast Guard regulations are *ultra vires* under the Inflation Adjustment Act, because only the Department of Justice ("DOJ") may inflate the CWA Section 311(b) penalty. *See* BPXP Brief (Rec. Doc. 13666-1) Parts I.A and I.B. BPXP is wrong because (1) the text of the Inflation Adjustment Act includes no such limitation; (2) the CWA gives overlapping authority to EPA and the Coast Guard; and (3) the Executive Branch announced as early as 1993 that both EPA and the Coast Guard had authorities under Section 311(b) and would jointly coordinate on administering those penalties.[4]

Second, BPXP argues that both EPA and Coast Guard regulations are procedurally defective. *See* BPXP Brief Part II. BPXP is wrong as a matter of fact; EPA's regulation that set the penalty at $4,300 was the subject of full notice and comment rulemaking. 67 Fed. Reg. 41363 (June 18, 2002) (proposed rule); 69 Fed. Reg. 7121 (Feb. 13, 2004) (final rule). BPXP is also wrong as a matter of law. Inflation Adjustment Act rulemakings do not require full notice and

---

[1] Assuming 4.2 million barrels (the United States' position in Phase Two) times $4,300 (as set out in the Motion of the United States on this same issue (Rec. Doc. 13654)).

[2] Assuming 2.4 million barrels (BP's position in Phase Two) times $3,000.

[3] Anadarko joined BPXP in part, Rec. Doc. 13740, but made no additional points so we refer only to BPXP.

[4] 58 Fed. Reg. 19420, 19421 (Apr. 14, 1993) ("Memorandum of Understanding Between the U.S. Environmental Protection Agency and the U.S. Coast Guard Concerning the Enforcement of § 311 of the Clean Water Act, as Amended by the Oil Pollution Act of 1990," Apr. 2, 1993, at § IV).

comment procedures, so the Coast Guard's $4,000 rulemaking is also procedurally sound (although, as explained in the previously-filed Motion of the United States, substantively in error).

Third, BPXP also argues that Fair Notice requires the Court to apply the Coast Guard's $4,000 number. *See* BPXP Brief Part I.C. The United States addressed the insufficiency of this defense in its Motion seeking a ruling that the maximum, per barrel penalty here is $4,300.

Therefore, the Court should reject BPXP's Motion (Rec. Doc. 13666), and grant the Motion of the United States (Rec. Doc. 13654).

## II.     Both EPA and the Coast Guard Have the Jurisdiction to Adjust the Penalty for Inflation; Neither Regulation is *Ultra Vires*.

BPXP's position rests on the false premise that the Inflation Adjustment Act grants inflation authority to only one agency with exclusive jurisdiction over a civil penalty, and argues that DOJ is the agency vested with the exclusive jurisdiction over the civil penalties in Section 311(b)(7) and (8). But the text of that Act includes no such limitation, and the Act does not speak to situations in which multiple agencies hold joint or overlapping authority over a provision that provides for penalties. The Executive Branch determined that *both* EPA and the Coast Guard had authorities under Section 311(b), and publicly announced that decision. 58 Fed. Reg. 19420, 19421 (Apr. 14, 1993). Both agencies have issued inflation rulemakings, and BPXP was on notice of those rules.

*Text and History of Inflation Act.* BPXP reads requirements into the Inflation Adjustment Act that are not present in its text. The text of that Act merely requires that an agency with "jurisdiction" shall inflate the relevant civil penalty; the Act does not vest or even mention "sole"

or "exclusive" jurisdiction in any agency.[5] Where there is joint or overlapping authority, the Inflation Adjustment Act is silent. In those circumstances, deciding which agencies will inflate seems to be purely a question of internal Executive Branch management.

The original Inflation Adjustment Act as passed in 1990 did not grant authorities to the agencies to inflate civil penalties, but rather required reports to Congress about which civil penalties might need to be adjusted. Pub. L. No. 101-410, § 5, 104 Stat. at 891-892. In the very first such report to Congress, OMB specifically listed 33 U.S.C. § 1321(b)(7)(D) as a civil penalty under the EPA. Office of Management and Budget, *Civil Monetary Penalty Assessments and Collections: 1990 Report to Congress and Civil Monetary Penalty Inflation Adjustment Report,* July 1991 (Exhibit 4). That same report listed penalties under DOJ's bailiwick, and that list did not include the CWA at all, while the Coast Guard's list included the $25,000 per violation penalty in Section 311(b), but not the $3,000 per barrel penalty. Thus, *only* EPA was identified to Congress as having this penalty. Six years later, Congress amended the Inflation Adjustment Act to authorize agencies to inflate their penalties by publication in the Federal Register, presumably with knowledge of the OMB report.

*Text of CWA.* Starting with EPA in particular, the CWA expressly empowers EPA to generally administer the entire CWA, stating, "Except as otherwise expressly provided in this chapter, the Administrator of [EPA] . . . shall administer this Chapter." 33 U.S.C. § 1251(d). Regarding civil penalties under Section 311(b), BPXP has pointed out no statutory language that "provides otherwise," but has merely noted that DOJ has control over litigation. The CWA also

---

[5] To the extent BP's argument is that there might be "chaos" under the Inflation Adjustment Act, the GAO did note that the Inflation Adjustment Act *as written* was causing myriad problems among various agencies. For example, GAO noted that no specific agency is responsible for providing guidance on the Act. Exhibit 2 to U.S. Motion (Rec. Doc. 13654-3) at page 20 (of 56). GAO recommended changes to the Act as written; Congress has not made any changes.

states that EPA "is authorized to prescribe such regulations as are necessary to carry out [its] functions" under the CWA.  33 U.S.C. § 1361(a). Given these provisions, there is no ambiguity with respect to EPA's "jurisdiction" to inflate the maximum amount of the civil penalties pursuant to the Inflation Adjustment Act, nor its power to pass regulations on the same.[6]

The CWA also states that EPA can appear in court to litigate its own cases, if DOJ fails to do so in a "reasonable" time frame. 33 U.S.C. § 1366 (CWA Section 506). BPXP admits this. BPXP Brief at 7. Thus, while DOJ has a "right of first refusal," the CWA does authorize EPA to prosecute CWA cases in federal court. Indeed, DOJ and EPA have a nearly 40-year history of collaborating on civil penalty enforcement litigation under the CWA. Those agencies have a Memorandum of Understanding, 42 Fed. Reg. 48942 (Sept. 26, 1977), which – while clearly stating that DOJ has "control" over cases – does put the public on notice of EPA's significant role in CWA enforcement. For example, under Paragraph 5, the DOJ "shall" give full consideration to EPA's views in litigation, and "shall defer" to EPA on scientific and technical matters. *Id.* at ¶ 14. DOJ does not settle a CWA civil case without EPA's concurrence. *Id.* at  ¶ 6.[7]

As for the Coast Guard, the text of Section 311(b) expressly grants authorities to both EPA and the Coast Guard. *See* Sections 311(b)(6), (8) and (9) ("In addition to establishing a

---

[6] The Coast Guard also has authorities, but because the United States is asking the Court to apply EPA's rule, this paper focuses on EPA-specific authorities.

[7]  Similarly, other than in special instances not relevant here, DOJ commences a civil, environmental enforcement action with the concurrence of the appropriate agency. *See* 28 U.S.C. § 509 note, Pub. L. No. 96-132, § 12, 93 Stat. 1048 (1979), entitled "Federal Environmental or Natural Resource Laws; Investigations Respecting, Etc.," which states: "The Attorney General may, *with the concurrence of any agency or Department with primary enforcement responsibility for an environmental or natural resource law*, investigate any violation, (*sic*) of an environmental or natural resource law of the United States, and bring such actions as are necessary to enforce such laws.") (emphasis added). Clearly, the CWA is an "environmental or natural resource law," and as noted above, EPA has "primary enforcement authority" over that law.

penalty for the discharge of oil or a hazardous substance, the Administrator or the Secretary of the department in which the Coast Guard is operating may act to mitigate the damage . . . ."). 33 U.S.C. § 1321(b)(6), (8) and (9) ((9) is the subsection quoted). Moreover, Section 311(b)(8) -- the entire subject of the Penalty Phase trial -- specifically identifies both EPA and the Coast Guard.

*Not Limited to DOJ.* BPXP posits that only DOJ may inflate the CWA penalty, by equating DOJ's authority to bring a civil action under Section 311 with the regulatory jurisdiction to issue a penalty inflation regulation under the Inflation Adjustment Act. While DOJ clearly has authority to bring and control the litigation, as explained above, the authority to bring the lawsuit differs from the authority to promulgate the regulations to be enforced by that suit.

BPXP makes much of the fact that DOJ inflated the False Claims Act penalties.[8] BPXP Brief at 8 (citing 64 Fed. Reg. 47009 (Aug. 30, 1999)). That rulemaking inflated various penalties that DOJ believed fell into its jurisdiction, such as fraud (28 C.F.R. Part 270), criminal justice information systems (28 C.F.R. Part 20), and ethics in government (28 C.F.R. § 85.3 (a)(1)). *Id.* But that very rulemaking also makes clear that DOJ viewed itself as adjusting only those penalties under its jurisdiction, and specifically noted that other agencies had civil penalty authorities that might be inflated elsewhere:

> This rule *fulfills* the Attorney General's obligations under the [Inflation Adjustment] Act with respect to *all* civil monetary penalties . . . . The Department's litigating components bring suit to collect various civil monetary penalties of other agencies as well. The reader should *consult the regulations of those other agencies for any inflation adjustments of their penalties.*

---

[8] Unlike the CWA, which is generally administered by EPA, 33 U.S.C. § 1251(d), the False Claims Act has no "home base," because any agency can be a victim of fraud. Because that Act applies to all agencies, it is appropriate for DOJ to take on the role of inflating its penalties.

*Id*. at 47100 (emphasis added). Therefore, DOJ announced that it considered its responsibilities under the Act completed -- and by implication that such responsibilities did *not* include Section 311(b) – and also informed the public that inflation adjustments to penalties in other statutes were more appropriately handled by other agencies.

    *Executive Branch Proclamations.* That the Coast Guard and EPA share authorities over Section 311(b)(7) penalties was publicly announced in 1993, in a Memorandum of Understanding ("MOU") between those two agencies: "Each agency is authorized by Section [311(b)(7)] to bring an administrative or judicial civil penalty action for any violation of Section 311(b)(3). . . ." 58 Fed. Reg. 19420, 19421 (Apr. 14, 1993); MOU at Section IV ("Primary Enforcement Authority").[9]

    BPXP cites to Executive Order No. 12777, 56 Fed. Reg. 54757 (Oct. 18, 1991), but it takes no authority away from either agency. BPXP's Exhibit 2 regarding this Executive Order ("E.O.") is a red herring. Contrary to BP's suggestion, CWA Section 311 does not vest authority to commence civil penalty actions, or to inflate the civil penalty amounts, to 20 agencies. Instead, the statute assigns a number of authorities to the President, in addition to explicit assignments to EPA and the Coast Guard. Under E.O. 12777, the President delegated authorities assigned to him under the Oil Pollution Act ("OPA") and under CWA Section 311, as amended by OPA, to appropriate agencies. The E.O. does not delegate to any other agencies those

---

[9] The remainder of this MOU is purely procedural, and creates no substantive rights for private parties. *Id.* at Section II. To the extent any Court would review such ministerial decisions about executive branch management at all, it would defer to the decisions of the Agencies unless arbitrary, capricious, or contrary to law. Such management decisions of course have no impact on the governing law. For example, BPXP notes that DOJ has lawyers from both the Admiralty Section and the Environmental Enforcement Section appearing in this Court, but obviously that resource management decision does nothing to change the law that applies in this case – the Attorney General's decision to appear through admiralty attorneys did not displace the CWA with the General Maritime Law.

authorities explicitly assigned to EPA and the Coast Guard by the statutes, nor does it derogate from those statutory authorities. Agencies other than DOJ, EPA, and the Coast Guard have responsibilities under the E.O. to implement various authorities vested in the President, but *none* of those agencies was delegated responsibility for enforcing Section 311(b)(7).

Finally, the E.O. distinguishes between the CWA and OPA, so BPXP's reference in footnote 13 to Section 10(c) of the E.O. is irrelevant; that provision addresses litigation pursuant to OPA, not the CWA.[10]

## III.     Neither Agency's Rules are Procedurally Defective.

Part II of BPXP's brief argues that both the EPA and Coast Guard regulations are procedurally defective for lack of public comment. BPXP is wrong for two reasons. First, notice and comment is not required for non-discretionary technical rules. Second, EPA in fact did notice-and-comment rulemaking on the $4,300 rule. Thus, even if BPXP is correct that notice and comment was required, then *only* the EPA regulation is effective and the Coast Guard's is not.

---

[10] BPXP's Motion (Rec. Doc. 13666) includes – "in addition to the arguments made in the Memorandum" -- citation to *United States v. Trucking Mgmt., Inc*., 662 F.2d 36 (D.C. Cir. 1981), which is not discussed in BPXP's brief at all. BPXP implies that *Trucking Mgmt*. stands for the "pivotal" proposition that agencies need to pay careful attention to which agency Congress has delegated enforcement authority. Rec. Doc. 13666 at 2, n.2. *Trucking Mgmt*. says no such thing. Rather, that case invalidates a provision of E.O. 11,246 as being contrary to Title VII as interpreted by the Supreme Court. *Trucking Mgmt*., 662 F.2d at 40, *et seq*. The page to which BPXP cites (page 38 at note 12) discusses an entirely different Executive Order (E.O. No. 12,068) and makes no finding as to whether EEOC or DOJ should be in charge of enforcement. Oddly, BPXP cites this case for the proposition that the United States has failed to state a claim, while its motion is for judgment on the pleadings. BPXP's Motion also cites numerous cases related to judgment on the pleadings under Rule 12(c). The parties appear to agree that this is a legal issue appropriate for resolution. However, the Court should not rely on Rule 12(c) to the extent entry of judgment could trigger an interlocutory appeal.

## A.    Ministerial, Non-discretionary Rules Implementing a Direction of Congress Do Not Require Opportunity for Public Comment.

Both EPA and the Coast Guard are obligated to "adjust each civil monetary penalty provided by law within [their] jurisdiction" under Section 4 of the Inflation Adjustment Act. Both agencies believe that "good cause" exists under the Administrative Procedure Act for immediate implementation of such adjustments without advance notice and public comment.[11] "Good cause" is shown when notice-and-comment rulemaking is "impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B). EPA and the Coast Guard have found "good cause" to dispense with comment procedures in penalty adjustment rulemakings because penalty adjustments merely involve (1) executing a non-discretionary, ministerial duty and (2) issuing non-substantive changes that do not require the public to change its behavior.

The "technical implementation of a statute . . . makes notice and comment procedures unnecessary." *United States v. Garner*, 767 F.2d 104, 120 n.24 (5th Cir. 1985). An agency goes beyond mere technical implementation, however, when it exercises discretionary authority given

---

[11] *See, e.g.,* 61 Fed. Reg. 69360, 69363 (Dec. 31, 1996) ("EPA generally publishes a rule in a proposed form and solicits public comment on it before issuing the rule in final. However, 5 U.S.C. § 553(b)(3)(B), of the APA provides an exception to the public comment requirement if the agency finds good cause to omit advance notice and public participation. . . . EPA finds that providing an opportunity for public comment prior to publication of this rule is not necessary because EPA is carrying out a *ministerial, non-discretionary duty specified in an Act of Congress*.") (emphasis added); 62 Fed. Reg. 16695, 16699 (Apr. 8, 1997) ("The APA provides an exception to the notice and comment procedures when an agency finds there is good cause for dispensing with such procedures on the bases that they are impracticable, unnecessary or contrary to the public interest. The Coast Guard has determined that, under 5 U.S.C. § 553(b)(3)(B), good cause exists for dispensing with the notice of proposed rulemaking and public comment procedures for this rule. Specifically, this rulemaking implements the Debt Collection Improvement Act of 1996, which leaves the agency no discretion. Pub. L. No. 104-134, 110 Stat. 1321-373. Accordingly, the Coast Guard believes that opportunity for prior comment is unnecessary and is issuing these revised regulations as a final rule that will apply to all future cases under this authority. Other administrations with the Department of Transportation have also followed this procedure."). *See also* 68 Fed. Reg. 74189, 74190 (Dec. 23, 2003); 73 Fed. Reg. 75340, 75343 (Dec. 11, 2008); 74 Fed. Reg. 68150, 68150 (Dec. 23, 2009); 74 Fed. Reg. 626, 627 (Jan. 7, 2009); 78 Fed. Reg. 66643, 66645 (Nov. 6, 2013).

to it by the underlying statute. *See id.* But when Congress requires an agency to perform a *non-discretionary* act, notice-and-comment rulemaking is unnecessary. *Metzenbaum v. Federal Energy Regulatory Comm'n*, 675 F.2d 1282, 1291 (D.C. Cir. 1982).

Under the Inflation Adjustment Act, there are clear requirements to issue regulations promulgating inflation adjustments every four years, as well as a detailed formula that must be followed when calculating new civil penalty amounts. Pub. L. 104-134, § 31001(s)(1), 110 Stat. 1321-373; Pub. L. No. 101-410, § 5, 104 Stat. at 891-892. Increasing penalties by a statutorily-mandated formula leaves no room for EPA or the Coast Guard to exercise discretion. Penalty adjustment rulemakings, then, are simply the tools used by EPA and the Coast Guard to implement the statutory directives set forth in the Inflation Adjustment Act.

Furthermore, the view that the Inflation Adjustment Act imposes a non-discretionary duty -- thereby obviating the need for notice-and-comment rulemaking -- has been the consistent interpretation of every cabinet-level Department as well as that of multiple other agencies across the Federal government that have addressed the issue.[12] DOJ came to the same conclusion. The very Federal Register notice that BPXP cites (regarding the False Claims Act) states:

---

[12] By way of example, and not intended to be a comprehensive listing of all Department and Federal agency Inflation Adjustment Act rulemakings, *see, e.g.*, Dept. of Agric., 62 Fed. Reg. 40294, 40295 (July 31, 1997) (notice and comment not needed because there is "no issue of policy discretion" in adjusting penalties); Dept. of Commerce, 77 Fed. Reg. 72915, 72916 (Dec. 7, 2012) (good cause exception applies because penalty adjustments are "wholly nondiscretionary"); Dept. of Educ., 77 Fed. Reg. 60047, 60049 (Oct. 2, 2012) ("no discretion in determining the new penalties"); Dept. of Energy, 79 Fed. Reg.16, 17 (Jan. 2, 2014) (adjusting penalties is "a ministerial, non-discretionary duty specified in an Act of Congress"); Dept. of Health and Human Servs., 74. Fed. Reg. 42777, 42778 (Aug. 25, 2009) ("no discretion in how [to] calculate[] the adjustment"); Dept. of Hous. and Urban Dev., 76 Fed. Reg. 36850, 36850 (June 22, 2011) ("The formula for determining the specific adjustment of civil money penalties for inflation is nondiscretionary"); Dept. of Homeland Sec., 76 Fed. Reg. 74625, 74629 (Dec. 1, 2011) (adjusting penalties "is a nondiscretionary ministerial action as the calculations of the adjustments follow the mathematical formula set forth" by statute; Dept. of Interior, 66 Fed. Reg. 58644, 58645 (Nov. 21, 2001) (penalty inflation rule is "ministerial, technical"); Dept. of Justice, 79 Fed. Reg. 17434, 17435 (Mar. 28, 2014) (penalty adjustment "is a nondiscretionary ministerial action to conform the amount of civil penalties . . . adjusted for inflation"); Dept. of Labor, 77 Fed. Reg. 76406, 76406 (Dec. 28, 2012) ("whether to make adjustments and the amount of any adjustments" in civil penalties is "prescribed by the

Administrative Procedure Act, 5 U.S.C. 553 ... The Department finds that good cause exists under 5 U.S.C. § 553(b)(B) and (d)(3) for immediate implementation of this final rule without prior notice and comment. This rule is a nondiscretionary ministerial action to conform the amount of civil penalties assessed or enforced by the Department of Justice to the statutorily mandated ranges. The calculation of these adjustments follows the mathematical formula set forth in section 5 of the Adjustment Act.

64 Fed. Reg. at 47100.

That penalty adjustment rulemakings effect only non-substantive changes also makes public comment legally unnecessary. The "opportunity for comment requirements enable 'the agency promulgating the rule to educate itself before establishing rules and procedures which have a substantial impact on those regulated.'" *National Helium Corp. v. Federal Energy Admin.*, 569 F.2d 1137, 1146 (TECA 1977) (citing *Texaco, Inc. v. FPC*, 412 F.2d 740, 744 (3rd Cir. 1969)). Technical rules that do not substantively affect the existing regulatory framework or jeopardize the substantive rights of regulated parties do not need to be opened to the public for

---

Inflation Adjustment Act and are not within [the agency's] discretion); Dept. of Transp., 75 Fed. Reg. 43840, 43841 (July 27, 2010) (required penalty adjustments "are ministerial acts" over which there is "no discretion"); Dept. of the Treasury, 77 Fed. Reg. 66529, 66532 (Nov. 6, 2012) ("no discretion in calculating the amount of the civil penalty adjustment"), 77 Fed. Reg. 76354, 76355 (Dec. 28, 2012) (technical correction); Dept. of Veterans Affairs, 61 Fed. Reg. 56449, 56449 (Nov. 1, 1996) (penalty adjustment rule "merely sets forth specific information required by statute"); Commodity Futures Trading Comm'n, 77 Fed. Reg. 65100, 65101 (Oct. 25, 2012) (adjusting penalties is 'a nondiscretionary matter"); Equal Emp. Opportunity Comm'n, 79 Fed. Reg. 15220, 15221 (Mar. 19, 2014) ("the formula for increasing the penalty is prescribed by statute, and [there is] no discretion in determining the amount"); Fed. Commc'n Comm'n, 73 Fed. Reg. 44663, 44664 (July 31, 2008) ("Congress has mandated these periodic rule changes and the Commission has no discretion but to make them"); Fed. Deposit Ins. Corp., 65 Fed. Reg. 64884, 64887 (Oct. 31, 2000) ("no discretion in calculating the amount of those adjustments" and "changes are ministerial, technical"); Fed. Trade Comm'n, 79 Fed. Reg. 13539, 13540 (Mar. 11, 2014) ("adjustments are mandated by statute and do not involve the exercise of . . . discretion or any policy judgments"); Fed. Maritime Comm'n, 79 Fed. Reg. 37662, 37663 (July 2, 2014) (Inflation Adjustment Act "does not allow for the exercise of … discretion regarding the substance of the [penalty] adjustments [which are made] according to a formula specified in the statute [and are] ministerial, technical computations"); Gen. Servs. Admin, 61 Fed. Reg. 67234, 67235 (Dec. 20, 1996) (implementing agency has "no issues of policy discretion"); Nuclear Regulatory Comm'n, 73 Fed. Reg. 54671, 54672 (Sept. 23, 2008) (agency has "no discretion" and "is required only to perform ministerial computations to determine the inflation adjustment"); Sec. and Exch. Comm'n, 78 Fed. Reg. 14179, 14179-14180 (Mar. 5, 2013) ("Agencies do not have discretion over whether to adjust a maximum [penalty], or the method used to determine the adjustment."). To the extent any agency has stated otherwise, we have not found it after a reasonable search.

comment because to do so is unnecessary. *Id.* Here, the discharge of harmful quantities of oil or hazardous substances into U.S. navigable waters, adjoining shorelines, or the waters of the contiguous zone is expressly prohibited by Section 311(b). 33 U.S.C. § 1321(b)(3). EPA and the Coast Guard act to enforce Section 311(b) through various agency-promulgated regulations. The penalty adjustment rulemakings, however, do not substantively alter the regulatory framework established by EPA and the Coast Guard. When civil penalties are adjusted for inflation, there is no change to the terms or procedures under which administrative or judicial civil enforcement actions are initiated or assessed. Penalties increased for inflation do not alter the existing rights and obligations of the public, nor do they require the public to change its behavior. Discharging oil or hazardous materials remains a prohibited activity regardless of the penalty amount for violations.

      **B.**    **EPA Conducted Notice and Comment Rulemaking on the $4,300 Number Even Though it was Not Required.**

      BP's argument that "the EPA's and the Coast Guard's inflation rules are procedurally invalid because they *never* provided advance notice to the public and an opportunity for comment on *any* occasion. . .," BPXP Brief at 15 (emphasis added), is also incorrect as a matter of fact. EPA's 2004 Inflation Adjustment Act rulemaking – setting the statutory maximum at the $4,300 per barrel level that is applicable in this matter – was promulgated pursuant to full notice-and-comment procedures. Although notice and comment was not strictly required, EPA at its option determined to seek notice and comment on this particular Inflation Adjustment Act rulemaking for the reasons described below. Thus, BPXP's argument that the specific penalty inflation rulemaking that is applicable in this case is "procedurally invalid" is incorrect both as a matter of law and of fact.

In its 2004 Inflation Adjustment Act rulemaking, EPA published both a "direct final rule" (invoking the "good cause" exception), as well as a parallel proposed rule in the Federal Register. 67 Fed. Reg. 41343 (June 18, 2002) (direct final rule); 67 Fed. Reg. 41363 (June 18, 2002) (proposed rule).[13] As EPA explained in its Federal Register notice, the Agency sought public comment on the proper interpretation and application of the Inflation Adjustment Act's "rounding rules" because at that time the Agency believed the rounding requirements were "subject to different interpretations." [14] EPA further explained that in the event of the receipt of adverse comment on its preferred interpretation of the rounding rules, it would "publish a timely withdrawal in the Federal Register informing the public that the [direct final] rule will not take effect," and that EPA would "address all public comments in a subsequent final rule based on the proposed rule." *Id*. EPA thereafter received an adverse comment from the General Accounting Office (''GAO''), stating that EPA had misinterpreted the Inflation Adjustment Act's rounding

---

[13] Other Federal agencies have occasionally used a similar parallel "direct final rule" and "proposed rule" procedure for Inflation Adjustment Act rulemakings, while acknowledging that notice-and-comment is not required. The Department of Defense did so in its most recent Clean Water Act § 404 penalty adjustment in January 2013. *See* 78 Fed. Reg. 5760 (Jan. 28, 2013) (proposed rule); 78 Fed. Reg. 5722 (Jan. 28, 2013) (direct final rule). Similar to EPA's 2014 rulemaking, the Department of Defense stated that the direct final rule would take effect if no comments were received, but that it would withdraw the direct final rule if any comments were submitted. *Id.* However, unlike EPA's 2004 rulemaking, the Department of Defense did not request comment on any specific issue, nor did it specifically address the "good cause" exception under the APA. Other agencies that have implemented periodic Inflation Adjustment Act rulemakings without invoking the APA's "good cause" exception have done so in rules in which other subjects, in addition to penalty provisions, were included and which themselves required full notice-and-comment procedures, *see, e.g.,*, Dept. of Justice, 64 Fed. Reg. 7066, 7069-70 (Feb. 12, 1999) (penalty inflation provisions included with rulemaking amending rules of practice for administrative hearings in immigration matters, and other related procedural regulations), but when solely promulgating a penalty inflation rulemaking the "good cause" exception is generally invoked, *see, e.g.,* Dept. of Justice, 64 Fed. Reg. 47099, 47100 (Aug. 30, 1999).

[14] 67 Fed. Reg. at 41344. Issues concerning the proper application of the Inflation Adjustment Act's "rounding rules" were discussed in the United States' initial memorandum on the correct maximum penalty amount to apply [Rec. Doc.13654, filed Nov. 14, 2014], and were further discussed in the Administrative Conference and GAO reports cited therein.

rules, that the "plain meaning" of the Inflation Adjustment Act did not permit agencies to use alternate rounding methods, and that if EPA wanted to use the method it had proposed the Agency needed to "seek appropriate legislation."[15] In response, EPA withdrew the direct final rule and proceeded under the parallel proposed rule. 67 Fed. Reg. 53743 (Aug. 19, 2002). In the final rule published in the Federal Register on February 13, 2004, EPA explained the GAO's comments regarding the Agency's misinterpretation of the rounding rules, and conformed its calculation of the civil monetary penalties covered by the rule consistent with the GAO's comments. 69 Fed. Reg. at 7122. As a result, after notice and comment, the maximum per barrel penalty for violations of 33 U.S.C. § 1321(b)(7)(D) was set at $4,300. 69 Fed. Reg. at 7125 (Table 1 of Section 19.4). Consequently, the "procedural defect" complained of by BPXP in the EPA rulemaking setting the $4,300 penalty that applies in this case does not exist.[16]

## IV.    BPXP's notice was both Fair and Actual.

BPXP's position seems to be that it was on notice of both the $4,000 and the $4,300 numbers, but was nonetheless denied due process of law because DOJ did not also issue a regulation adjusting the CWA penalty for spilling oil into U.S. waters. The BP family of companies received actual notice of the federal government's use of the $4,300 maximum when the United States sued BP in March of 2009 for its Prudhoe Bay violations of the CWA.[17] *U.S. v. BP Exploration (Alaska) Inc.*, No. 3:09-cv-00064-JWS, (D. Alaska filed March 31, 2009)

---

[15] Letter from Anthony H. Gamboa, General Counsel, General Accounting Office, to Robert E. Fabricant, General Counsel, U.S. Environmental Protection Agency (July 15, 2002) [attached as Exhibit 1]. The correct rounding rules to apply under the Inflation Adjustment Act are more completely described in the GAO's 2003 report, included as Exhibit 2 to the United States' initial memorandum on the correct maximum penalty amount to apply [Rec. Doc.13654, filed Nov. 14, 2014].

[16] Moreover, BP's argument amounts to nothing more than collateral attack on the rules, years after they were promulgated, which is not appropriate in this forum or at this time.

[17] That civil action relates to the subject matter of the expert report of United States expert Adm. Walt Cantrell (Ret.).

(Exhibit 2, Complaint). In that complaint, the United States sought up to $4,300 per barrel. Complaint ¶¶ 70 & 73. The two spill incidents add up to about 5077 barrels, which at $4,300 per barrel amounts to just under $22 million. BP in fact paid $25 million to resolve this claim and a few others. (Exhibit 3, Consent Decree).

The United States has addressed the rest of BPXP's "fair notice" defense in its opening Memorandum, *see* Rec. Doc. 13654 at 12-15, and incorporates those arguments here.

## V.    Conclusion.

For the reasons stated, the Court should deny BPXP's Motion (Rec. Doc. 13666) and grant the Motion of the United States (Rec. Doc. 13654).

Respectfully submitted,

| | |
|---|---|
| JOYCE R. BRANDA | SAM HIRSCH |
| Acting Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| PETER FROST | SARAH HIMMELHOCH |
| Director, Torts Branch, Civil Division | Senior Litigation Counsel |
| Admiralty and Aviation | NANCY FLICKINGER |
| STEPHEN G. FLYNN | Senior Attorney |
| Assistant Director | RICHARD GLADSTEIN |
| SHARON SHUTLER | PATRICK CASEY |
| MALINDA LAWRENCE | Senior Counsel |
| LAURA MAYBERRY | A. NATHANIEL CHAKERES |
| Trial Attorneys | JUDY HARVEY |
| | RACHEL KING |
| | ERICA PENCAK |
| R. MICHAEL UNDERHILL, T.A. | ABIGAIL ANDRE |
| Attorney in Charge, West Coast Office | RACHEL HANKEY |
| Torts Branch, Civil Division | BRANDON ROBERS |
| U.S. Department of Justice | Trial Attorneys |

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section

14

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
Facsimile:   202-514-2583
E-mail:  steve.o'rourke@usdoj.gov


KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA  70130
Telephone:  (504) 680-3000
Facsimile:  (504) 680-3184
E-mail:  sharon.d.smith@usdoj.gov

Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

   I hereby certify that the above and foregoing documents have been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date:  December 8, 2014.        /s/ Steve O'Rourke_____
               U.S. Department of Justice