**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LEONARD J. HEIMGARTNER**, | **CIVIL ACTION** |
| **VERSUS** | **CASE NO.:** |
| **BP EXPLORATION & PRODUCTION, INC. AND BP AMERICA PRODUCTION CO.,** | **DISTRICT JUDGE BARBIER** |
| *Applies to: 12-968 BELO* | **MAGISTRATE JUDGE SHUSHAN** |

---

## COMPLAINT

1. NOW INTO COURT, comes the Plaintiff, Leonard J. Heimgartner (hereinafter "Plaintiff" of "Mr. Heimgartner"), currently residing in the state of Florida, bringing this cause of action against the Back-End Litigation Option Defendants *BP Exploration and Production Inc.*, (hereinafter "BP Exploration"), a Delaware corporation with its principal place of business in Warrenville, Illinois; and *BP America Production Company* (hereinafter "BP America"), a Delaware corporation with its principal place of business in Houston, Texas, (hereinafter all defendants are collectively "Defendants" or "BP Parties").

2. Pursuant to Sections VIII.G.1.(c) and XXVII of the *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement, as Amended on May 1, 2012 (hereinafter "Medical Settlement Agreement" or "MSA"), the Eastern District of Louisiana Federal Court (hereinafter the "Court") retains exclusive and ongoing jurisdiction over this, and any, Back-End Litigation Option ("BELO") lawsuit and Plaintiffs may only file BELO claims in this Court. MSA, §§ VIII.G.1(c), XXVII ("[This] Court shall retain continuing and exclusive jurisdiction over the Parties and their counsel and all Medical Benefits Settlement Class Members with respect to the terms of the Medical Settlement

Agreement . . . ."); *see also*, *Order and Judgment Granting Final Approval of the Medical Benefits Class Action Settlement*, Rec. Doc. 8218, ¶ 22 (Jan. 11, 2013).

3. This Court has personal jurisdiction over BP Parties because each Defendant is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

4. Furthermore, this Court has personal jurisdiction over BP Parties because they have purposely availed themselves of the jurisdiction of this Court by having exposed residents and cleanup workers to hazardous and toxic chemicals within the State of Louisiana, appearing for the Class Action lawsuit that arose as a direct consequence of that toxic exposure without first raising the defense before this Court of lack of Personal Jurisdiction, and signing the MSA that gives rise to this litigation while within the State of Louisiana. Therefore, it is proper for this Court to assert personal jurisdiction over the BP Parties.

5. This Court is in receipt of a transfer order instructing all litigation relating to this matter be filed within this Court. *Transfer Order*, MDL 2179, Rec. Doc. 1 (Aug. 10, 2010).

6. Pursuant to 28 U.S.C. § 1391 (2014), this Court is the proper venue for this matter because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district; specifically exposure to crude oil and/or dispersants to Plaintiff while performing duties as a cleanup worker in and around the Plaquemines Parish, Division 1 (Myrtle Grove), Louisiana.

7. Venue is also appropriate in this District consistent with 28 U.S.C. § 1407 (2014) and the Transfer Order of the Judicial Panel on Multidistrict Litigation, *see In re Oil Spill*

*by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010), as well as this Court's Pretrial Order No. 20 (Rec. Doc. 904), which allows plaintiffs to directly file complaints arising out of the *Deepwater Horizon* incident in this District.

8. All conditions precedent to filing this cause of action in this Court have occurred and/or have been performed by Plaintiff prior to filing this BELO Claim.

SUMMARY OF FACTS

9. On or about April 20, 2014, the *Deepwater Horizon*, an ultra-deepwater dynamic positioned semi-submersible oil vessel built in February 2001 for the BP Parties, exploded and subsequently sank.

10. At the time, the *Deepwater Horizon* was attached to a well performing BP Parties' offshore oil drilling operations at Mississippi Canyon Block 252, the location known as "Macondo," (hereinafter "Macondo Well") in the Gulf of Mexico.

11. At or around the time the *Deepwater Horizon* exploded, the Macondo Well failed to prevent oil from leaking out of the well and as a result spilled millions of barrels of crude oil that, by government estimates, exceeded 50,000 barrels per day. Further an internal BP document from around the time of the spill shows that the company's own analysis had actually estimated that the rate of oil spillage could reach 100,000 barrels, or 4,200,000 gallons, per day.

12. Each day during the course of the oil spill, at the very least, tens of thousands of barrels of crude oil gushed from the wellhead and broken riser, bubbling up to the surface and flattening out into a widening slick of oil, as well as spreading out in vast subsurface plumes. On the surface, the shifting mass was large enough to be visible from outer

space, at times covering tens of thousands of square miles, and spreading with the wind and currents towards the Gulf States' coastlines, including Louisiana.

13. Along with this massive and unprecedented amount of crude oil, dangerous amounts of hydrocarbons, and other toxic substances released from the Macondo Well and/or the Deepwater Horizon and its appurtenances ended up in both the waters of the Gulf of Mexico and on the shoreline of Louisiana.

14. In response, BP Parties released millions of gallons of dispersants and/or decontaminants used in connection with Response Activities throughout all relevant areas in the state of Louisiana including Plaquemines Parish, Division 1 (Myrtle Grove), Louisiana.

15. During all relevant times, Mr. Heimgartner was a Cleanup Worker that performed Response Activities for months during the cleanup efforts under the direction of Unified Command.

16. At all relevant times, Unified Command directed ES&H (or other subcontractors) to have its employees perform Response Activities.

17. At all times relevant, Mr. Heimgartner performed relevant Response Activities as instructed by ES&H (or other subcontractors directing its employees on the instruction of Unified Command).

18. BP Parties provided the Claims Administrator with certain incomplete databases, including a Badged Worker Database detailed in the MSA, that list Mr. Heimgartner as a badged Cleanup Worker performing Response Activities in July 2010 at least twice under the direction of Unified Command.

19. Despite Mr. Heimgartner's efforts, properly maintained and functioning safety equipment on the occasions it was provided was not sufficient to prevent exposure. In fact, much of the time Mr. Heimgartner was performing Response Activities, the equipment provided to him was often reused, unclean (or improperly cleaned), defective, and coated with toxic levels of crude oil, other hydrocarbons, and other substances released from the Macondo Well and/or the *Deepwater Horizon* and its appurtenances, and or dispersants and/or decontaminants used in connection with Response Activities.

20. While performing Response Activities, Mr. Heimgartner was exposed to crude oil, other hydrocarbons, and other substances released from the Macondo Well and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with Response Activities.

21. While performing Response Activities, Mr. Heimgartner's skin and portions of his ear came into contact with crude oil, other hydrocarbons, and other substances released from the Macondo Well and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with Response Activities.

22. While performing Response Activities, Mr. Heimgartner breathed in toxic fumes emanating from crude oil, other hydrocarbons, and other substances released from the Macondo Well and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with Response Activities.

23. Mr. Heimgartner meets all of the requirements of a *Deepwater Horizon* Medical Benefits Settlement Class Member as defined in the MSA.

24. As such Mr. Heimgartner is subject to and may derive all rights arising from the MSA.

25. As a result of Mr. Heimgartner's exposure, Mr. Heimgartner has suffered damages directly, proximately, and therefore legally caused by the exposure.

26. Mr. Heimgartner has elected to file a BELO claim for his dual LMPCs in this Court, as permitted by Section VIII.1(a) of the MSA, against the BP Parties for two Later-Manifested Physical Conditions.

**COUNT I- LMPC (CHRONIC ASTHMA FROM CHEMICAL EXPOSURE)**

27. Mr. Heimgartner realleges and hereby incorporates by reference all paragraphs 1 through 26 and further alleges.

28. Mr. Heimgartner was performing Response Activities, working for ES&H (or other authorized subcontractor working underneath Unified Command) for some time between April 20, 2010 and April 16, 2012.

29. While performing Response Activities in the state of Louisiana, Mr. Heimgartner was repeatedly and over long periods of time exposed to large quantities of oil, other hydrocarbons, and other substances released from the Macondo Well and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with his Response Activities while he was working for ES&H (or other authorized subcontractor working underneath Unified Command).

30. Mr. Heimgartner was properly and correctly diagnosed for the first time with "chronic asthma from chemical exposure" on or about July 9, 2012 by Lawrence J. Danna, M.D., who was at the time, and currently still is, licensed to practice medicine in Louisiana.

31. The amount of exposure to oil, other hydrocarbons, and other substances released from the Macondo Well and/or the *Deepwater Horizon* and its appurtenances, and or

dispersants and/or decontaminants used in connection with the Response Activities described was for an extended period of time and at levels sufficient to cause Mr. Heimgartner's asthma.

32. The chronic asthma afflicting Mr. Heimgartner was legally and proximately caused by his exposure to oil, other hydrocarbons, and other substances released from the Macondo Well and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with Mr. Heimgartner's Response Activities.

33. No alternative causes exist for Mr. Heimgartner's chronic asthma.

34. Mr. Heimgartner is entitled to substantial compensatory damages legally caused by Mr. Heimgartner's exposure to oil, other hydrocarbons, and other substances released from the Macondo Well and/or the Deepwater Horizon and its appurtenances, and/or dispersants and/or decontaminants used in connection with Mr. Heimgartner's Response Activities.

**COUNT II- LMPC (TINNITUS FROM CHEMICAL EXPOSURE)**

35. Mr. Heimgartner realleges and hereby incorporates by reference all paragraphs 1 through 26 and further alleges.

36. Mr. Heimgartner was performing Response Activities, working for ES&H (or other authorized subcontractor working underneath Unified Command) for some time between April 20, 2010 and April 16, 2012.

37. While performing Response Activities in the state of Louisiana, Mr. Heimgartner was repeatedly and over long periods of time exposed to large quantities of oil, other hydrocarbons, and other substances released from the Macondo Well and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used

in connection with his Response Activities while he was working for ES&H (or other authorized subcontractor working underneath Unified Command).

38. Furthermore, Mr. Heimgartner was properly and correctly diagnosed for the first time with "tinnitus from chemical exposure" on or about July 9, 2012 by Lawrence J. Danna, M.D., who was at the time, and currently still is, licensed to practice medicine in Louisiana.

39. The amount of exposure to oil, other hydrocarbons, and other substances released from the Macondo Well and/or the *Deepwater Horizon* and its appurtenances, and or dispersants and/or decontaminants used in connection with the Response Activities described was for an extended period of time and at levels sufficient to cause Mr. Heimgartner's tinnitus.

40. The Tinnitus afflicting Mr. Heimgartner was legally and proximately caused by his exposure to oil, other hydrocarbons, and other substances released from the Macondo Well and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with Mr. Heimgartner's Response Activities.

41. No alternative causes exist for Mr. Heimgartner's tinnitus.

42. Mr. Heimgartner is entitled to substantial compensatory damages legally caused by Mr. Heimgartner's exposure to oil, other hydrocarbons, and other substances released from the Macondo Well and/or the Deepwater Horizon and its appurtenances, and/or dispersants and/or decontaminants used in connection with Mr. Heimgartner's Response Activities.

PRAYER FOR RELIEF

WHEREFORE, Mr. Heimgartner demands judgment against the BP Parties jointly, severally, and solidarily as follows:

43. Compensatory Damages in the form of Economic and Non-Economic Damages which include:

a. Past and Future Medical Expenses;

b. Past and Future Lost Wages;

c. Lost Earning Capacity;

d. Costs (including Settlement Costs);

e. Pain and Suffering;

f. Disability or impairment;

g. Mental Anguish;

h. Inconvenience;

i. Loss of Capacity for the Enjoyment of Life;

j. Interest; and

k. Fear of Future Exacerbation of Chronic Asthma from Chemical Exposure;

DATED: December 8, 2014.

Respectfully Submitted:

Craig Downs /s/
Craig T. Downs, Esq.
Florida Bar No.801089
*Downs Law Group*
3250 Mary Street, Suite 307
Coconut Grove, FL 33133-5232
Phone: (305) 444-8226
Fax: (305) 444-6773
Email: cdowns@downslawgroup.com
Counsel for Plaintiff

Ramon Guillen /s/
Ramon Guillen, Jr., Esq.
Florida Bar No. 99789
*Downs Law Group*
3250 Mary Street, Suite 200
Coconut Grove, FL 33133-5232
Phone: (305) 444-8226
Fax: (305) 444-6773
Email: rguillen@downslawgroup.com
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the above and foregoing Back End Litigation Option Complaint has been served on All Counsel and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of December, 2012.

Craig Downs /s/ Ramon Guillen /s/