# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 SECTION J |
| This document relates to: 10-4536. | * * * * * * * * | Honorable CARL J. BARBIER Magistrate Judge SHUSHAN |

---

## BP EXPLORATION & PRODUCTION INC.'S
## OPPOSITION TO THE UNITED STATES' MOTION SEEKING A LEGAL RULING
## <u>REGARDING THE APPLICABLE STATUTORY MAXIMUM REGULATION</u>

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000

Robert C. "Mike" Brock
Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000

Don K. Haycraft (Bar # 14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.*

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

I.   THE GOVERNMENT FOCUSES ON CWA SECTION 1321(B)(6) INVOLVING
     PENALTIES IMPOSED IN AGENCY PROCEEDINGS, IGNORING THAT THIS IS A
     SECTION 1321(B)(7) JUDICIAL PROCEEDING. .................................................. 1

     A.   Unlike CWA Sections 1321(b)(6) and (b)(8), Section 1321(b)(7) Does not
          Delegate Inflation Authority to EPA or the Coast Guard, but Instead
          Reserves it to the Attorney General. ...................................................... 1

     B.   The Government Elected to Bring This Action Seeking Per-Barrel
          Penalties Under CWA Section 1321 Rather Than the Per-Day Penalties of
          Section 1319(d) — Failing to Recognize That EPA is Empowered to
          Conduct Litigation Only When Enforcing Section 1319, Which it did not
          use Here. ................................................................................................ 3

     C.   The FCPIAA/DCIA Requires Affirmative Agency Action to Adjust
          Penalties for Inflation; Thus, Because the Attorney General has Sole
          Authority to Inflate Penalties Under CWA Section 1321(b)(7) but has
          Never Done so, the Maximum Penalty Remains at $3,000 per Barrel. ................. 4

II.  EPA DID NOT HAVE GOOD CAUSE TO AVOID NOTICE-AND-COMMENT. ..................... 5

     A.   Inflating Civil Penalties is Neither Routine nor Devoid of Discretion. ................. 6

     B.   The Issues That EPA and the Coast Guard Failed to Consider and put out
          for Public Comment do not Involve Just a "Rote Application of
          Arithmetic." ........................................................................................... 7

     C.   Adjusting Civil Penalties for Inflation is Significant in its Nature and
          Consequential in its Impact on BPXP. ..................................................... 10

III. BPXP LACKED FAIR NOTICE OF THE MAXIMUM CIVIL PENALTY TO WHICH IT
     COULD BE SUBJECTED UNDER CWA SECTION 1321(B)(7)(D). ..................................... 11

     A.   BPXP Lacked Fair Notice, at the Very Least, Because the FCPIAA/DCIA
          Inflation Adjustment Formula is Ambiguous. .......................................... 11

     B.   BPXP Also Lacked Fair Notice as to Which of Three Agencies had
          Authority to Inflate Civil Penalties Under 1321(b)(7). .............................. 14

CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Bus Ass'n v. United States*,
  627 F.2d 525 (D.C. Cir. 1980) ............................................................ 11

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996) ............................................................ 12

*Branch v. Smith*,
  538 U.S. 254 (2003) ............................................................ 3

*City of Arlington, Tex. v. FCC*,
  133 S. Ct. 1863 (2013) ............................................................ 2

*Council Tree Commc'ns, Inc. v. FCC*,
  619 F.3d 235 (3d Cir. 2010) ............................................................ 9

*Diamond Roofing v. OSHRC*,
  528 F.2d 645 (5th Cir. 1976) ............................................................ 12

*FCC v. Fox Television Stations, Inc.*,
  132 S. Ct. 2307 (2012) ............................................................ 12

*First Nat'l Bank of Gordon v. Office of Comptroller of Currency*,
  911 F.2d 57 (8th Cir. 1990) ............................................................ 13

*General Elec. v. EPA*,
  53 F.3d 1324 (D.C. Cir. 1995) ............................................................ 13

*Grand Acadian, Inc. v. United States*,
  105 Fed. Cl. 447 (2012) ............................................................ 5

*Kellogg Brown & Root Servs., Inc. v. United States*,
  99 Fed. Cl. 488 (2011) ............................................................ 5

*Loma Linda Univ. Med. Ctr. v. Sebelius*,
  408 Fed. App'x 383 (D.C. Cir. 2010) ............................................................ 12

*Mack Trucks, Inc. v. EPA*,
  682 F.3d 87 (D.C. Cir. 2012) ............................................................ 6, 10

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,
    463 U.S. 29 (1983) ............................................................................................. 7

*National Grain and Feed Ass'n v. OSHA*,
    866 F.2d 717 (5th Cir. 1988)............................................................................. 7

*Oceana, Inc. v. Evans*,
    389 F. Supp. 2d 4 (D.D.C. 2005) ...................................................................... 9

*Paulsen v. Daniels*,
    413 F.3d 999 (9th Cir. 2005).............................................................................. 9

*Russello v. United States*,
    464 U.S. 16 (1983) ....................................................................................... 2, 15

*Sackett v. EPA*,
    132 S. Ct. 1367 (2012) ....................................................................................... 4

*Satellite Broadcasting Co. v. FCC*,
    824 F.2d 1 (D.C. Cir. 1987) ............................................................................. 13

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) ......................................................................................... 12

*State of New Jersey EPA v. EPA*,
    626 F.2d 1038 (D.C. Cir. 1980) ........................................................................ 6

*Switchmen's Union of N. Am. v. Nat'l Mediation Bd.*,
    320 U.S. 297 (1943) ......................................................................................... 14

*United States v. Chrysler Corp.*,
    158 F.3d 1350 (D.C. Cir. 1998) ...................................................................... 13

*United States v. One 1973 Rolls Royce*,
    43 F.3d 794 (3d Cir. 1994) .............................................................................. 13

*United States v. Wong Kim Bo*,
    472 F.2d 720 (5th Cir. 1972) (per curiam) ....................................................... 2

*Utility Solid Waste Activities Group v. EPA.*,
    239 F.3d 749 (D.C. Cir. 2001) ................................................................... 6, 10

*World Ins. Co. of Omaha, Neb. v. Pipes*,
    255 F.2d 464 (5th Cir. 1958).......................................................................... 13

**Statutes**

*Administrative Procedure Act ("APA")*

5 U.S.C. § 553 ....................................................................................................6, 11

5 U.S.C. § 553(b)(3)(B) .............................................................................................5

*Clean Water Act ("CWA")*

Section 309, 33 U.S.C. § 1319 ...............................................................................3, 4

Section 309(b), 33 U.S.C. § 1319(b) ..........................................................................3

Section 311, 33 U.S.C. § 1321 ...................................................................................3

Section 311(b)(6), 33 U.S.C. § 1321(b)(6) ................................................1, 2, 14, 15

Section 311(b)(7), 33 U.S.C. § 1321(b)(7) ........................................................ *passim*

Section 311(b)(7)(D), 33 U.S.C. § 1321(b)(7)(D) ............................................ *passim*

Section 311(b)(8), 33 U.S.C. § 1321(b)(8) ................................................1, 2, 14, 15

Section 311(b)(11), 33 U.S.C. § 1321(b)(11) .............................................................3

Section 504, 33 U.S.C. § 1364 ...............................................................................3, 4

Section 506, 33 U.S.C. § 1366 ...............................................................................3, 4

*False Claims Act ("FCA")*

31 U.S.C. § 3729 .......................................................................................................5

*Other Federal Statutes*

28 U.S.C. § 516 .......................................................................................................2, 4

28 U.S.C. § 2461 (note) .............................................................................................1

31 U.S.C. § 3701 (note) .............................................................................................1

**Regulations**

28 C.F.R. § 85.3(a)(9) (1999) .....................................................................................5

**Executive Orders**

Executive Order 12,777 (Oct. 18, 1991) ...................................................................3

**Federal Register Notices**

61 Fed. Reg. 69,360 (Dec. 31, 1996) .......................................................................5

67 Fed. Reg. 41,343 (June 18, 2002) .......................................................................9

69 Fed. Reg. 7,121 (Feb. 13, 2004) .....................................................................5, 8, 9

74 Fed. Reg. 68,150 (Dec. 23, 2009) .......................................................................8

78 Fed. Reg. 66,643 (Nov. 6, 2013) ......................................................................5, 6

**Other Regulatory Material**

GAO, *Civil Penalties: Agencies Unable to Fully Adjust Penalties for Inflation Under
    Current Law* (March 2003) ...........................................................................9, 11

Letter from GAO to the Coast Guard (Nov. 2, 2002), *available at*
    http://www.gao.gov/assets/100/91601.pdf............................................................12

Letter from GAO to EPA (July 15, 2002), *available at*
    http://www.gao.gov/decisions/other/290021.htm.....................................................12

**INTRODUCTION**

The United States' Motion asking the Court to decide the maximum per-barrel civil penalty under 33 U.S.C. § 1321(b)(7)(D) offers at most a lesson in math, not law.  The U.S. walks the Court through multiple rounds of inflation adjustments to show that EPA did the math right while the Coast Guard did it wrong.  Yet its focus on the math issues ignores several key *legal issues*:  **(1)** whether EPA *or* the Coast Guard actually has power to inflate Section 1321(b)(7) penalties; **(2)** whether inflation regulations are subject to APA notice-and-comment; and **(3)** whether BP could possibly have had fair notice of the maximum penalty when competing agencies gave different answers.  In sum, EPA's inflation regulation, however accurate solely as a matter of math, is both substantively invalid because the Attorney General alone has power to inflate Section 1321(b)(7)(D) penalties and procedurally invalid because it was issued outside of the notice-and-comment procedures required by the Administrative Procedure Act.

**I.    THE GOVERNMENT FOCUSES ON CWA SECTION 1321(B)(6) INVOLVING PENALTIES IMPOSED IN AGENCY PROCEEDINGS, IGNORING THAT THIS IS A SECTION 1321(B)(7) JUDICIAL PROCEEDING.**

> **A.    Unlike CWA Sections 1321(b)(6) and (b)(8), Section 1321(b)(7) Does not Delegate Inflation Authority to EPA or the Coast Guard, but Instead Reserves it to the Attorney General.**

The Government relies on the text of CWA Sections 1321(b)(6) and (b)(8) to support its contention that "the CWA vests both EPA and the Coast Guard with authority to seek penalties under the CWA."  *See* Rec. Doc. 13654-1 ("U.S. Mot.") at 1.  Based on these subsections alone and without mention of Section 1321(b)(7)'s conspicuous silence as to agency delegation, the U.S. simply asserts that both agencies have authority to inflate 1321(b)(7) penalties under the Federal Civil Penalty Inflation Adjustment Act as amended by the Debt Collection Improvement Act ("FCPIAA/DCIA").  *See* BPXP Mot. at EX1, Rec. Doc. 13666-2 (Nov. 14, 2014) (setting out the current state of these statutes); 28 U.S.C. § 2461 (note); 31 U.S.C. § 3701 (note).

1

The neighboring subsections the U.S. points to do nothing to assign authority for inflating the penalties in Section 1321(b)(7), however.  CWA Section 1321(b)(8) merely explains which actors have authority to determine the penalty amount assessed in a particular case.  And Section 1321(b)(8) clarifies that this Court possesses that authority in cases brought under Section 1321(b)(7).  Section 1321(b)(6) is similarly irrelevant, since it is concerned only with *administrative actions* that can result in per-violation or per-day fines and not with an award of per-barrel penalties brought in a *judicial setting* as here.  In the very different context of penalties awarded in agency proceedings under Section 1321(b)(6), Congress gave three agencies — (i) the Department of Transportation, (ii) the Department within which the Coast Guard operates (presently the Department of Homeland Security), and (iii) EPA — authority to assess administrative penalties.  Had Congress wanted to do the same in Section 1321(b)(7), it would have said so explicitly.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) *quoting United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) (per curiam) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *City of Arlington, Tex. v. FCC*, 133 S. Ct. 1863, 1868 (2013) ("Congress knows [how to] enlarge, agency discretion.").  Thus, it does not logically follow from the explicit references to EPA and the Coast Guard in Sections 1321(b)(6) and (b)(8) that those agencies were given inflation adjustment authority as to Section 1321(b)(7).

Moreover, BPXP's defense is not premised on CWA Section 1321(b)(7)'s silence alone.  Rather, the law provides, as a default, that the Attorney General is the lone Executive Branch actor with exclusive authority to bring a civil action like those created by Section 1321(b)(7).[1]

---

[1] 28 U.S.C. § 516 ("Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the

Under the FCPIAA/DCIA, that authority means that the Attorney General is also the only federal actor who has the power to inflate the maximum per-barrel penalty.[2]  "The head of each agency shall . . . by regulation adjust each civil monetary penalty provided by law *within the jurisdiction of the Federal agency* . . . ."  Pub. L. 104-134, § 31001(s)(1), 110 Stat. 1321-373 (1996) (emphasis added) (DCIA amending FCPIAA, Pub. L. 101-410, § 4(1), 104 Stat. 890 (1990)), *see* Rec. Doc. 13666-1 (BPXP Mot. at EX1-2).  Thus, any other agency's attempts — including EPA's — to inflate the Section 1321(b)(7)(D) penalty are *ultra vires* and void.[3]

> **B.    The Government Elected to Bring This Action Seeking Per-Barrel Penalties Under CWA Section 1321 Rather Than the Per-Day Penalties of Section 1319(d) — Failing to Recognize That EPA is Empowered to Conduct Litigation Only When Enforcing Section 1319, Which it did not use Here.**

The Government could have initiated this litigation under CWA Section 1319 instead of CWA Section 1321.[4]  Unlike Section 1321, Section 1319 expressly authorizes the **EPA** "**Administrator** . . . to commence a civil action for appropriate relief" for an impermissible discharge.  33 U.S.C. § 1319(b) (emphasis added); *but see* CWA Section 1366 (making clear that even this type of CWA enforcement action is first to be brought to the Attorney General so that he may decide, at his option, whether to represent the United States "in any civil or criminal

---

Department of Justice, under the direction of the Attorney General."); *see also* Rec. Doc. 13666-1 ("BPXP Mot.") at 6-9 (explaining how this principle carries forward through the CWA specifically, *contrast* 33 U.S.C. § 1366 (making clear that Congress established that CWA enforcement actions would generally be brought by the Attorney General) *with* 33 U.S.C. § 1364 (exception allowing EPA Administrator bring emergency actions for injunctive relief)).

[2] *See Branch v. Smith*, 538 U.S. 254, 281 (2003) ("And it is, of course, the most rudimentary rule of statutory construction . . . that courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part, including later-enacted statutes.").

[3] Consulting Executive Order 12,777 reinforces that the Attorney General is the only head of agency with authority to inflate 1321(b)(7)(D) penalties.  *See* BPXP Mot. at 10 ("Specifically, while Executive Order 12,777 establishes various sub-delegations under *other* subsections of CWA Section 1321, sub-delegations under Section 1321(b)(7) are noticeably absent.").  *See also id.* at 9 (quoting Section 10(a) of the Executive Order, delegating to the Attorney General the power to bring judicial actions to enforce the CWA and the Oil Pollution Act of 1990).

[4] Importantly, the CWA provides that Section 1321's per-barrel penalties and Section 1319's per-day penalties are mutually exclusive.  The United States can seek one or the other but not both:  "Civil penalties shall not be assessed under both [Section 1321] and [S]ection 1319 of this Title for the same discharge."  33 U.S.C. § 1321(b)(11).

action instituted under this chapter [*i.e.,*, the entire CWA]").  Just as Section 1319 expressly grants EPA authority to bring a lawsuit, the section also "authorizes the EPA to adjust [the] maximum penalty [under Section 1319(d)] for inflation."  *Sackett v. EPA*, 132 S. Ct. 1367, 1370 n.1 (2012).  This makes sense — CWA Section 1319 grants EPA authority to commence litigation (if the Attorney General declines to act to represent the United States within a reasonable time as explained in CWA Section 1366), and so EPA would have at least a colorable claim to be the agency with inflation-adjustment authority.  This stands in stark contrast to CWA Section 1321(b)(7), under which only the Attorney General has authority to bring litigation.  *See* 28 U.S.C. § 516; 33 U.S.C. § 1366; and 33 U.S.C. § 1321(b)(7) (the last of which fails — unlike CWA Sections 1319 and 1364 — to make any delegation of enforcement authority to EPA).  The Attorney General may of course decide to consult with other federal agencies such as EPA or the Coast Guard when it brings a civil penalty action under Section 1321(b)(7); however, this does not change the fact that only the Attorney General has authority to inflate penalties available under that provision as explained in greater detail in BPXP's Rule 12(c) motion.

C.   **The FCPIAA/DCIA Requires Affirmative Agency Action to Adjust Penalties for Inflation; Thus, Because the Attorney General has Sole Authority to Inflate Penalties Under CWA Section 1321(b)(7) but has Never Done so, the Maximum Penalty Remains at $3,000 per Barrel.**

The FCPIAA/DCIA is not a self-executing statute.  Section Four provides that "[t]he head of each agency shall . . . *by regulation* . . . within the jurisdiction of the Federal agency. . . adjust each civil monetary penalty. . . provided by law . . . ."  BPXP Mot. at EX1-2 (emphasis added).  Consequently, agencies must affirmatively inflate civil penalties by means of promulgating a regulation that is both substantively and procedurally valid or else penalties remain uninflated.  Courts entertaining CWA Section 1321(b)(7) enforcement suits based on assertedly inflated penalties are not free to retroactively perform inflation rulemakings that the

agency failed to do or failed to do properly.  The FCPIAA/DCIA does not provide for automatic increases in penalty amounts, but instead creates a formula to guide calculations by the agencies as they attempt to inflate penalties using the ordinary APA regulatory process.[5]

For the reasons discussed above, adjusting CWA Section 1321(b)(7) civil penalties is the Attorney General's responsibility — a responsibility that he has never exercised, despite having exercised inflation authority in other statutory contexts where he was given the relevant delegation of congressional authority.[6]  Until the Attorney General acts in full conformity with the FCPIAA/DCIA and the rulemaking requirements of the APA to make the required inflation adjustments after putting them out for public notice and comment, the maximum per-barrel penalty remains at the level established by Congress — $3,000 — nothing more.

## II.    EPA DID NOT HAVE GOOD CAUSE TO AVOID NOTICE-AND-COMMENT.

Not once has EPA put out for public comment a regulation that had the actual effect of inflating CWA Section 1321(b)(7)(D) civil penalties (though, as explained below, it once experimented with seeking public comment in a rulemaking inflating other penalty amounts).  To excuse its disregard for this fundamental check and balance of administrative law, EPA invoked the good-cause exception of 5 U.S.C. § 553(b)(3)(B) each time it sought to increase CWA Section 1321(b)(7)(D) civil penalties since 1996.  *See* 61 Fed. Reg. 69,360, 69,363 (Dec. 31, 1996); 69 Fed. Reg. 7,121, 7,122 (Feb. 13, 2004); 78 Fed. Reg. 66,643, 66,645 (Nov. 6, 2013). In its Motion, the Government fails to explain how EPA had good cause to forego notice-and-comment procedures, asserting only that the FCPIAA/DCIA "imposes fundamentally ministerial

---

[5] *See, e.g.*, *Grand Acadian, Inc. v. United States*, 105 Fed. Cl. 447, 457 n.14 (2012) ("The [FCPIAA/DCIA] directs the head of each federal agency, at least once every four years, to" adjust penalties for inflation.); *Kellogg Brown & Root Servs., Inc. v. United States*, 99 Fed. Cl. 488, 503 n.5 (2011) ("Section 5 of the [FCPIAA/DCIA] authorizes Executive agency adjustments for inflation").

[6] *See* BPXP Mot. at 8 (explaining, for instance, how 31 U.S.C. § 3729 (part of the False Claims Act) gives the Attorney General inflation authority, which the Attorney General has exercised at 28 C.F.R. § 85.3(a)(9)).

and non-discretionary procedures" for inflating penalties.  U.S. Mot. at 4.  However, EPA should not be permitted to invoke the good-cause exception where its ***own*** past mistakes (not to mention the Coast Guard's) reveal serious confusion as to use of the FCPIAA/DCIA's inflation formula, and therefore a need for public comment.  *See State of N.J. EPA v. U.S. EPA*, 626 F.2d 1038, 1045 (D.C. Cir. 1980) (instructing "that the various exceptions to the notice-and-comment provisions of section 553 will be narrowly construed and only reluctantly countenanced").

EPA reads the good-cause exception too broadly, and tries to justify invocation of the exception on the ground that the Agency is required "merely to implement the statutory directive in the DCIA," which is "formula-driven" and therefore leaves EPA "no discretion to vary the amount of the adjustment to reflect any views or suggestions provided by commenters." 78 Fed. Reg. at 66,645.  Yet the "good cause inquiry is 'confined to those situations in which the administrative rule is a routine determination, insignificant in nature and impact, and inconsequential to the industry and to the public.'"  *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 94 (D.C. Cir. 2012) *quoting Util. Solid Waste Activities Grp. v. EPA.*, 236 F.3d 749, 755 (D.C. Cir. 2001).  The present situation, however, is one in which the administrative inflation rules are significant in their impact and consequence, as well as confusing in their application — something borne out by EPA and the Coast Guard inflating the same unitary penalty number in CWA Section 1321(b)(7)(D) by different amounts.  Hence, both of those agencies were obligated to use notice-and-comment procedures to announce their rules and yet neither did so.

### A.    Inflating Civil Penalties is Neither Routine nor Devoid of Discretion.

Section Four of the FCPIAA/DCIA only requires a Federal agency to adjust civil penalties for inflation "***at least*** once every 4 years."  BPXP Mot. at EX1-2 (emphasis added). Beyond that minimal requirement, Congress leaves to the agencies' discretion when to make the inflation adjustments and whether to inflate more often than the four-year minimum.  Even the

Government recognized how an agency's choice of when to adjust the penalty can impact the ultimate result of the inflation adjustment — in this case, a differential between EPA's and the Coast Guard's inflation adjusted maximum per-barrel penalty. *See* U.S. Mot. at 9 ("[T]he Coast Guard and EPA calculated different penalties, despite using the same four-step process, because the agencies made their inflation adjustments at different times."). EPA never discussed this divergence in maximum penalties in its February 2004 rulemaking, nor did it accept public comment, which could have spotted this issue for EPA's attention. Now, the Government writes off the inter-agency discrepancy, suggesting "it should be no surprise that the adjustment that took place later in time yielded the higher number." U.S. Mot. at 9. To the contrary, it is quite surprising that there exist two different maximum per-barrel penalty amounts when the statute makes clear that Congress contemplated only one maximum per-barrel penalty amount. 33 U.S.C. § 1321(b)(7)(D) (the maximum per-barrel civil penalty amount shall be "not more than $3,000"). This number can, of course, be inflated pursuant to *valid* FCPIAA/DCIA rulemaking, but nothing suggests that Congress wanted to permit different inflated amounts, thereby leaving regulated parties to face uncertainty as to which one will apply to any given enforcement action. Notice and comment was never sought here on either the prospect or actual establishment of differential penalty amounts by multiple agencies. Indeed, this creates not only procedural error but also substantive error. *See, e.g.*, *National Grain and Feed Ass'n v. OSHA*, 866 F.2d 717, 735 (5th Cir. 1988) (arbitrary and capricious for OSHA to fail to consider a grain dust regulatory solution under *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (agencies cannot fail to consider "an important aspect of the problem")).

> **B.     The Issues That EPA and the Coast Guard Failed to Consider and put out for Public Comment do not Involve Just a "Rote Application of Arithmetic."**

The Court need look no further than the U.S.'s Motion to see that notice-and-comment

procedures are necessary to ensure proper inflation adjustments.  As the Government picks apart the Coast Guard's 2009 regulation to try to prove that EPA's penalty number should apply, *see* U.S. Mot. at 2-12, it becomes apparent that the FCPIAA/DCIA inflation process is far from straightforward.  In 2009, the Coast Guard not only failed to properly account for inflation by completing only part of the cost-of-living-adjustment ("COLA") calculation, it also misapplied the statutory rounding rules.  *See* 74 Fed. Reg. 68,150 (Dec. 23, 2009).  If the Coast Guard had put the regulation out for comment, these errors may very well have been spotted.  Even the EPA relied on expert comments from GAO in completing its calculations.  *See* 69 Fed. Reg. at 7,122.

The FCPIAA/DCIA calculation is far from basic arithmetic.  As the U.S. explains, the statute prescribes a four-step process that requires (i) a COLA determination, (ii) calculation of "raw inflation," (iii) application of a "rounding rule," and (iv) addition of the rounded amount to the current penalty amount.  U.S. Mot. at 6.  Yet no sooner does the Government claim that "there is no sophisticated economics involved" in the inflation adjustment process than it notes that Section Five of the FCPIAA/DCIA sets forth an "***elaborate process*** for rounding out any" adjustments.  *Id.* at 7 (emphasis added) (internal quotation omitted).  Precisely — such "elaborate processes" demand protection by the safeguard of notice-and-comment rulemaking.

BPXP agrees with the Government that, as a matter of math, EPA has correctly calculated the adjustments in its most recent rule (albeit only after receiving extensive, individualized tutelage from the GAO to correct EPA's original mistakes).  But this argument does not get the Government to where it wants to go — to a conclusion that EPA's per-barrel penalty figure trumps the Coast Guard's.  Instead, all the Government has demonstrated is that the EPA's per-barrel penalty figure was correctly calculated whereas the ***most-recent*** Coast Guard per-barrel penalty figure was incorrectly calculated.  That observation invalidates only the

most recent Coast Guard inflation regulation; it does not invalidate the prior Coast Guard penalty inflation figure of $3,300 per barrel, which there is no dispute the Coast Guard calculated correctly.[7]  *See* BPXP Mot. at EX3-1 (explaining the history of EPA and Coast Guard inflation rulemakings).  The Government instead faces an unavoidable defect in both agencies' rulemakings that neither agency ever attempted to explain before the *Deepwater Horizon* Incident.  Namely, why it is even permissible for EPA and the Coast Guard to act to produce different inflated penalty amounts concerning CWA Section 1321(b)(7).

Moreover, the Court should not ignore the fact that EPA once experimented with seeking public comment in this area by issuing a "direct final rule" inflating certain civil penalty amounts.  *See* 67 Fed. Reg. 41,343-44 (June 18, 2002) (but note that this rule did not propose increasing the CWA Section 1321(b)(7)(D) penalties).  EPA "anticipate[d] no adverse comment" because the "rule incorporate[d] requirements specifically set forth in the DCIA" and followed "[t]he formula" as prescribed by Congress.  *Id.*  Yet, in a clear sign that true notice-and-comment procedures are necessary to these inflation regulations, ***GAO actually found a serious error in EPA's June 2002 approach and filed a comment to that effect***.  GAO, *Civil Penalties: Agencies Unable to Fully Adjust Penalties for Inflation Under Current Law* ("GAO Report") at 14 (2003).

Notwithstanding GAO's finding, EPA proceeded later as if nothing had happened to reveal the inapplicability of the APA good-cause exception and acted to issue its very next inflation rule by invoking that exception once again.  *See* 69 Fed. Reg. at 7,122.  Far from receiving no adverse comments, EPA's experiment in publishing its inflation number resulted in

---

[7] "The effect of invalidating an agency rule is to reinstate the rule previously in force." *Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005); *Council Tree Commc'ns, Inc. v. FCC*, 619 F.3d 235, 258 (3d Cir. 2010) ("Vacating the 10-year-hold rule will simply mean that [the] repayment obligations will once again be governed by the previous 5-year schedule."); *Oceana, Inc. v. Evans*, 389 F. Supp. 2d 4, 7 n.2 (D.D.C. 2005) ("numerous courts of appeals have stated that the effect of vacating a rule is generally to reinstate the rule previously in force") (collecting cases from the Third, Fourth, Fifth, Sixth, Eighth, Ninth, and Eleventh Circuits).

adverse comment by an arm of Congress itself, indicating that ensuing rulemakings unquestionably should have been put out for public comment.  Especially in light of this history, EPA's continued failure to do so makes its inflation rulemakings procedurally infirm.

**C.    Adjusting Civil Penalties for Inflation is Significant in its Nature and Consequential in its Impact on BPXP.**

Both the $300 difference between the current EPA and Coast Guard penalties of $4,300 vs. $4,000 per barrel and the $1,000 difference between the current EPA adjusted penalty and the last properly calculated Coast Guard adjusted penalty of $4,300 vs. $3,300 per barrel could, when multiplied by a barrels finding, amount to a difference of ***hundreds of millions or billions of dollars*** in overall civil penalties assessed against BPXP.  Clearly a rule with that type of impact is of interest to BPXP.[8]  Yet in no instance where EPA and the Coast Guard actually proposed increasing CWA Section 1321(b)(7)(D) penalties did they ever give the public a chance to comment, as the APA requires.

In its Motion, the Government makes the rhetorical claim that "[a]pparently BP was willing to violate the law" when exposed to a per-barrel penalty of less than $4,300.  U.S. Mot. at 15.  But no fact-finding to date suggests that BPXP deliberately violated the Clean Water Act.  Moreover, the Government's statement trivializes the importance of procedural protections afforded regulated entities and cannot excuse any agency's failure to comply with the APA.  The notice-and-comment procedure of APA Section 553 is "one of Congress's most effective and enduring solutions to the central dilemma it encountered in writing the APA reconciling the agencies' need to perform effectively with the necessity that 'the law must provide that the

---

[8] *See, e.g.*, *Mack Trucks*, 682 F.3d at 94 (finding that an interim final rule to permit certain diesel engine manufacturers to pay nonconformance penalties in exchange for the right to sell noncompliant engines was "a rule 'about which these members of the public [the petitioners] were greatly interested,' making notice-and-comment procedures necessary) (quoting *Util. Solid Waste Activities Group.*, 236 F.3d at 755).

governors shall be governed and the regulators shall be regulated, if our present form of government is to endure.'" *American Bus Ass'n v. United States*, 627 F.2d 525, 528 (D.C. Cir. 1980) *quoting* S. Doc. No. 248, 79th Cong., 2d Sess. 244 (1946).  Any interested member of the public, including BPXP, was thus required to be given the opportunity to participate in EPA's rulemakings.  EPA proved it can get inflation adjustments wrong since it actually had to retract its 2002 direct final rule because it misread the "ministerial" FCPIAA/DCIA.  And other Federal agencies, such as the Coast Guard, have shown these adjustments to be substantially more ambiguous than the Government would like to believe.  *See* GAO Report at 11 (noting "several other agencies made the adjustments incorrectly.").  As there is no agency responsible for monitoring compliance with the FCPIAA/DCIA, supervision can only come through application of formal notice-and-comment procedures.  Until EPA complies with the requirements of APA Section 553, its civil penalty inflation rulemakings are both unfair and unlawful.

## III.   BPXP LACKED FAIR NOTICE OF THE MAXIMUM CIVIL PENALTY TO WHICH IT COULD BE SUBJECTED UNDER CWA SECTION 1321(B)(7)(D).

### A.   BPXP Lacked Fair Notice, at the Very Least, Because the FCPIAA/DCIA Inflation Adjustment Formula is Ambiguous.

As explained above, application of the inflation formula set forth in the FCPIAA/DCIA has proved to be so confusing that the scores of administrative agencies charged with applying the formula have done so in different ways and reached different results.  EPA's and the Coast Guard's conflicting applications of this formula in the context of CWA Section 1321(b)(7) have deprived BPXP of fair notice of the maximum penalty to which it is subject.

The Government mistakenly claims that calculations under the statute "involve nothing more than the rote application of arithmetic," and that the statute is therefore sufficiently unambiguous to provide regulated parties fair notice.  U.S. Mot. at 4, 6, 12-15.  This is patently incorrect.  Application of the formula set forth in Section Five of the FCPIAA/DCIA is

11

exceedingly ambiguous.  Several agencies, including EPA and the Coast Guard, have required specific, individualized guidance from GAO in order to apply the formula to comport with Congressional intent.[9]  Nevertheless, despite efforts since 2002 by both agencies to interpret the FCPIAA/DCIA formula in accordance with Congressional intent, their inflated penalty amounts under CWA Section 1321(b)(7) *still* diverge, and according to the Government, the Coast Guard's present number is *still* incorrect.  *Id.* at 2-12.

Although the Government asserts that fair notice requires only "notice of the law's requirements" rather than "the specific remedies potentially available," *id.* at 14, the law is to the contrary.  *See, e.g.*, *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose."); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (fair notice "prohibits the imposition of grossly excessive *or arbitrary punishments* on a tortfeasor.") (emphasis added).  Fair notice in fact demands notice of the maximum civil penalty to which regulated parties will be subject in textual terms that are not "so vague that men of common intelligence must necessarily guess at [a statute's] meaning and differ as to its application."  *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012).  Moreover, the Government ignores the long line of fair notice precedent contrary to its argument pioneered first in this Circuit (and later picked up by the D.C. Circuit, with its steady diet of agency cases).[10]

---

[9] Letter from GAO to EPA (July 15, 2002), *available at* http://www.gao.gov/decisions/other/290021.htm ("[W]e recognize some advantages to [EPA's method of] rounding [but] such a determination does not comport with the … statute.  [If it wants to proceed to the contrary], we respectfully suggest that EPA seek appropriate legislation."); Letter from GAO to the Coast Guard (Nov. 2, 2002), *available at* http://www.gao.gov/assets/100/91601.pdf ("We recommend that the [Coast Guard] initiate a regulatory action as soon as possible to adjust eligible civil penalties in a manner consistent with the requirements of the Inflation Adjustment Act.").

[10] *Diamond Roofing v. OSHRC*, 528 F.2d 645 (5th Cir. 1976); *see also Loma Linda Univ. Med. Ctr. v. Sebelius*, 408 F. App'x 383 (D.C. Cir. 2010) (recognizing Fifth Circuit's *Diamond Roofing* as leading precedent in this area);

The Government asserts that EPA's adjustment to $4,300 in 2004 while the Coast Guard remained at $3,300 occurred because "the agencies made their inflation adjustments at different times." U.S. Mot. at 9. But the question of when and how frequently to adjust civil penalties for inflation is an important component of the agency discretion that the FCPIAA/DCIA affords; it is not a "ministerial" matter. Because EPA and the Coast Guard exercised that discretion differently, BPXP was denied fair notice as to the maximum penalty it might face. BPXP did not create that confusion; the agencies did. And it would be manifestly unfair, and contrary to the penal canon, for the Government to maintain that in the face of such confusion it is entitled to be awarded the higher EPA penalty and not the lower penalty adopted by the Coast Guard.[11]

The U.S. denies that BPXP lacks fair notice of the maximum penalty it may face, even though doing so requires the Government to take logically inconsistent positions. On the one hand, it argues that the penalty number duly published by the Coast Guard cannot apply because it derives from a misapplication of the FCPIAA/DCIA formula, **but then** argues that "BP knew of the $4,300/bbl maximum; it had been duly published in the Federal Register [by EPA]." U.S. Mot. at 14. The Government thus maintains that a regulated party possesses fair notice of a maximum penalty **because** it was published in the Federal Register by EPA, while simultaneously arguing that a second maximum penalty number — also published in the Federal Register, but by the Coast Guard — is invalid and inapplicable. But a regulated party cannot be responsible for giving itself fair notice after guessing at which of several conflicting penalties is the real one. Only this Motion represents a confession by the U.S. that the Coast Guard

---

*United States v. Chrysler Corp.*, 158 F.3d 1350 (D.C. Cir. 1998); *General Elec. v. EPA*, 53 F.3d 1324 (D.C. Cir. 1995) (recognizing *Diamond Roofing* as foundational); *Satellite Broad. Co. v. FCC*, 824 F.2d 1 (D.C. Cir. 1987).

[11] *See United States v. One 1973 Rolls Royce*, 43 F.3d 794, 819 (3d Cir. 1994) (ambiguity must be resolved in favor of those being subjected to penalties); *First Nat'l Bank of Gordon v. Office of Comptroller of Currency*, 911 F.2d 57, 65 (8th Cir. 1990) (same); *World Ins. Co. of Omaha, Neb. v. Pipes*, 255 F.2d 464, 472 (5th Cir. 1958) (same).

regulation is invalid — and that agency even now has taken no action to withdraw its regulation.

Furthermore, even if the Coast Guard did misinterpret the inflation formula, the Coast Guard's mistake does not confer any kind of power on EPA to inflate penalty amounts under Section 1321(b)(7). The Court must first determine which agency has jurisdiction to inflate such penalties before establishing the maximum per-barrel penalty to which BPXP can be subjected. While the Government purports to "ask[] the Court to decide that the $4,300 per barrel regulation applies," U.S. Mot. at 1, the Government is in reality asking the Court to disregard the threshold question of whether an agency with jurisdiction has properly implemented the FCPIAA/DCIA as Congress requires, and simply apply the FCPIAA/DCIA inflation formula itself. This is evident from the painstaking detail in which the Government explains the inflation formula over ten pages of its Motion. U.S. Mot. at 3-12. Such course of action, however, would impermissibly violate the principle of separation of powers because "it is for Congress to determine how the rights which it creates shall be enforced," *Switchmen's Union of N. Am. v. Nat'l Mediation Bd.*, 320 U.S. 297, 301 (1943), and Congress was particularly clear in Section Four of the FCPIAA/DCIA in requiring "*[t]he head of each agency* [to] *by regulation* adjust each civil monetary penalty provided by law *within the jurisdiction of the Federal agency*." (emphasis added). This Court cannot inflate civil penalties. The U.S.'s protracted explanation of the FCPIAA/DCIA's mathematics and rounding instructions is irrelevant to resolving the question of which agency possesses inflation jurisdiction under FCPIAA/DCIA in the first place.

### B.   BPXP Also Lacked Fair Notice as to Which of Three Agencies had Authority to Inflate Civil Penalties Under 1321(b)(7).

The Government argues that the agency authority expressly set forth in CWA Sections 1321(b)(6) and (b)(8) mirrors that which Congress intended to set forth by silence in Section 1321(b)(7). However, the Government fails to mention that the text of 1321(b)(6) explicitly

includes the Secretary of Transportation as an authoritative agency head in the context of administrative actions.  *See* U.S. Mot. at 1 ("Section 311(b) of the CWA vests both EPA and the Coast Guard with authority to seek penalties under the CWA.  33 U.S.C. § 1321(b)(6), (b)(8)").  This argument fails at the outset under the *Russello* canon as explained above because the ordinary presumption is that Congress's failure to mention any of the EPA, the Coast Guard, or the Transportation Department in CWA Section 1321(b)(7) was deliberate.  *See* Part I.A, *supra*.

But even putting aside the fatal *Russello* problem with its argument, if the Government wants this Court to accept its attempt to try to read Section 1321(b)(7) in parallel to Section 1321(b)(6), then the Government's argument must rise or fall on the entirety of Section 1321(b)(6).  The Government cannot ignore inconvenient parts of that statute and thus must face up to the reference to DOT in that statute.  To our knowledge, DOT, much like the Justice Department (the agency with the actual delegation to inflate CWA Section 1321(b)(7) penalties), has never acted to inflate Section 1321(b)(7) penalties.  Thus, even if BPXP had advance notice of the Government's new argument that CWA Section 1321(b)(6) and 1321(b)(7) are to be read in parallel (though they differ textually) — and this argument has never been advanced in any Government publication before the present Motion — the Government's theory does nothing more than bring a ***third agency*** and thus a third (or fourth) penalty amount into play:  (1) EPA's $4,300 figure; (2) the Coast Guard's $4,000 figure (or its prior $3,300 figure if its $4,000 figure is invalidated); and (3) DOT's inaction leaving the penalty at the number set in the statute — $3,000).  ***This U.S. argument thus only multiplies confusion and the lack of fair notice***.

## CONCLUSION

BPXP respectfully requests that the Court deny the U.S. Motion and make clear that the maximum per-barrel penalty applicable in the Penalty Phase trial is $3,000 per barrel.

December 8, 2014

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000

Robert C. "Mike" Brock
Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000

Respectfully submitted,

 /s/ Don K. Haycraft
Don K. Haycraft (Bar # 14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

**ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of December, 2014.

<u>/s/ Don K. Haycraft</u>
Don K. Haycraft