# EXHIBIT 1

Case 2:10-md-02179-CJB-DPC Document 13811-1 Filed 12/09/14 Page 2 of 5

U.S. v. A.A. Mactal Const. Co. Inc.., Not Reported in F.Supp. (1992)
22 Envtl. L. Rep. 21,200

1992 WL 245690
United States District Court, D. Kansas.

The UNITED STATES of America, Plaintiff,
v.
A.A. MACTAL CONSTRUCTION
CO. INC., et al., Defendants.

Civ. A. No. 89–2372–V.  |  April 10, 1992.

**Attorneys and Law Firms**

Janice M. Karlin, Office of U.S. Atty., Kansas City, Kan., Richard B Stewart, Environment and Natural Resources Division, U.S. Dept. of Justice, Washington, D.C., Angela F O'Connell, Environmental Enforcement Section, Land and Natural Resources Division, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Steven J. Braun, McDowell, Rice & Smith, P.C., Overland Park, Kan., Charles F. Speer, McDowell, Rice & Smith, P.C., Robert P. Numrich, Evans and Dixon, Douglas N Ghertner, Field, Gentry, Benjamin & Robertson, Kansas City, Mo., for defendants.

### MEMORANDUM OPINION AND ORDER

VAN BEBBER, District Judge.

#### I. *Introduction*

*1 Plaintiff United States brought this action against the A.A. Mactal Construction Co. Inc., ("Mactal") under the Clean Air Act ("the Act"), 42 U.S.C. §§ 7412 and 7414. On December 3, 1991 this Court granted the United States' motion for summary judgment on the issue of defendant's liability for violations of the Act. Following a hearing on February 11, 1992 on the amount of civil penalty and injunctive relief to be imposed, the court ordered defendant to pay a civil penalty in the amount of $126,000 and further enjoined Mactal from future violations of the Act.

#### II. *Factual Background*

Plaintiff alleges that defendant Mactal (an asbestos removal company) committed numerous violations of the National Emissions Standards for Hazardous Air Pollutants ("NESHAP") for asbestos promulgated at 40 C.F.R. § 61.140 *et. seq.*, pursuant to Sections 112 and 114 of the Act. The violations occurred in connection with Mactal's renovation of the Kansas Power and Light ("KPL") facility in Lawrence, Kansas, and the Kansas City School District's Southwest High School ("SWHS") in Kansas City, Missouri. Specifically, the Court found defendant Mactal liable for violating the following asbestos NESHAP regulations and Section 112(c) of the Act:

1. On February 25, 1989, in connection with a renovation of the KPL facility Mactal failed to adequately wet friable asbestos materials being stripped from facility components in violation of the asbestos NESHAP at 40 C.F.R. § 61.147(c).

2. On February 25, 28, and March 1, and 2 of 1989, defendant Mactal failed to ensure that the friable asbestos material removed from the KPL facility remained wet until collected for disposal in violation of 40 C.F.R. § 61.147(e).

3. On June 23, 24, and 27 of 1988 July 1, 1988, defendant Mactal failed to adequately wet friable asbestos material exposed during a renovation operation conducted at the Southwest High School facility in violation of 40 C.F.R. § 61.147(c).

4. On June 23, 24, 27, and 29 of 1988, and on July 1, 15, and 16, 1988, defendant Mactal failed to ensure that the friable asbestos material removed from the SWHS facility remained wet until collected for disposal in violation of 40 C.F.R. § 61.147(e).

5. On June 28 and June 30, 1988, defendant Mactal failed to disposes of asbestos containing waste material at an appropriate disposal site in violation of 40 C.F.R. § 61.147(e).

#### III. *Legal Authority*

Pursuant to Section 113(b) of the Act, any person who violates the Act is subject to a civil penalty not to exceed $25,000 per day for each such violation. 42 U.S.C. § 7413(b). It is clear from the statutory language of the Clean Air Act that Congress envisioned penalties to serve strong deterrent purposes. Section 113(e) of the Act requires that:

> In determining the amount of any civil penalty to be assessed under this subsection, the court shall take

Case 2:10-md-02179-CJB-DPC   Document 13811-1   Filed 12/09/14   Page 3 of 5

U.S. v. A.A. Mactal Const. Co. Inc.., Not Reported in F.Supp. (1992)
22 Envtl. L. Rep. 21,200

into consideration (in addition to other factors) the size of the business, the economic impact of the penalty on the business, the violator's full compliance history and good faith efforts to comply, the duration of the violation as established by any credible evidence, payment by the violator of penalties previously assessed for the same violation, the economic benefit of noncompliance, and the seriousness of the violation.

**\*2** 42 U.S.C. § 7413(e).

In discussing the purpose of civil penalties under a similar provision of another environmental statute, the Clean Water Act, the United States Supreme Court found that "The legislative history of the Act reveals that Congress wanted the district court to consider the need for retribution and deterrence, in addition to restitution, when it imposed civil penalties." *Tull v. United States,* 481 U.S. 412, 422 (1987). Clearly in order for civil penalties to serve a deterrent function, the amount of the penalty must be high enough to ensure that there is no incentive for violators to simply absorb the penalty as a cost of doing business. In addition, the probability that a significant penalty will be imposed must be high enough so that non-compliance results in a substantial monetary risk for the violator. In both respects, deterrence is effective only to the extent that the risk of incurring significant civil penalties for noncompliance is real and substantial.

I find no precedent under Section 113(e) of the Clean Air Act describing the method by which the district court is to apply the penalty criteria in order to ensure that Congress' intent to deter is effectuated. The Third and Eleventh Circuits, however, have interpreted the similarly worded Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d).[1] *Public Interest Research Group of N.J. v. Powell Duffryn Terminals, Inc.* 913 F.2d 64 (3rd Cir.1990); *Atlantic States Legal Foundation v. Tyson Foods,* 897 F.2d 1128 (11th Cir.1990). Because I find parity between the penalty provisions of the Clean Air Act and the Clean Water Act, and because several circuits have previously recognized the pari materia between the two Acts, I find the Clean Water Act precedent on this issue instructive. *cf. United States v. Stauffer Chemical Co.,* 684 F.2d 1174 (6th Cir.1982); *General Motors Acceptance Corp. v. Whisnant,* 387 F.2d 774 (5th Cir.1968); *Hallenbeck v. Penn Mutual Life Insurance Co.,* 323 F.2d 566 (4th Cir.1963) (all finding the two Acts in pari materia with one another)

Both Courts of Appeals, (the Third Circuit in *Powell Duffryn* and the Eleventh Circuit in *Tyson* ), which have interpreted the penalty assessment criteria under the Clean Water Act have found that the departure point for imposing a civil penalty under the Act is the statutory maximum. The Courts then found that the factors enumerated in Section 1319(d) must be considered in mitigation of that maximum. I conclude the rationale of the Third Circuit in *Powell Duffryn* and the Eleventh Circuit in *Tyson* to be persuasive and I find the reasoning to be equally applicable to the similarly worded penalty assessment criteria of Section 113(e) of the Clean Air Act.

### IV. *Calculation of Penalties*

In this action Mactal was found to have committed nineteen violations of the Asbestos NESHAP work practice regulations. Pursuant to Section 113(b) of the Act, Mactal is subject to a maximum statutory civil penalty of $25,000 per day or $475,000. Taking the enumerated factors set forth in Section 113(e) into consideration, I find as follows:

**\*3** *Seriousness of the Violation* —In the case of asbestos work practice violations I find the violations to be serious as a matter of law. In 20 U.S.C. Section 4011(a)(1) Congress made an express finding that "medical science has not established any minimum level of exposure to asbestos fibers which is considered to be safe to individuals exposed to the fibers." I do not believe that a reduction in the maximum statutory penalty is warranted based upon this factor.

*History of Violations* —The government has presented evidence that state regulatory authorities have filed at least five previous actions against this defendant for violations of the asbestos NESHAPS regulations. Defendant is thus not entitled to a mitigation of the maximum statutory penalty for this factor.

*Duration of the Violations* —The duration of the violations in this case was established by summary judgment. At the Southwest High School site the violations lasted for approximately 6 weeks. A reduction of the maximum civil penalty, thus, is not warranted based on this factor.

Case 2:10-md-02179-CJB-DPC   Document 13811-1   Filed 12/09/14   Page 4 of 5

U.S. v. A.A. Mactal Const. Co. Inc.., Not Reported in F.Supp. (1992)
22 Envtl. L. Rep. 21,200

*Good Faith Efforts to Comply* —The defendant in this case has offered no evidence of good faith efforts to comply. There is no basis, therefore, for this court to mitigate the maximum civil penalty based upon this factor.

*Previous Payment of Penalties for the Same Violation* —The defendant has admitted that he has not paid any previous penalties for the violations charged in the government's complaint. The court, therefore, cannot reduce the maximum statutory penalty based upon this factor.

*Ecomonic Impact of the Penalties on the Violator; Size of the Business;* —Although the evidence presented with respect to Mactal's finances is inconclusive, I find that the A.A. Mactal Construction Co. Inc. is a sole proprietorship with limited ability to pay. Consideration of this factor alone could result in a dramatic reduction of the statutory civil penalty. I do not believe, however, that Congress intended the courts to assess penalties below the economic benefit which a defendant derived through its noncompliance.

*Economic Benefit of Noncompliance* —Section 113(e) requires courts to consider the economic benefit which the violator achieved through noncompliance with the regulations. The significance of including this factor is that unless the violator is fined an amount at least as great as the economic gain it enjoyed in not complying with the regulations, the statute serves little deterrent value. As the 11th Circuit noted in *Tyson*, "Insuring that violators do not reap economic benefit by failing to comply with the statutory mandate is of key importance if the penalties are successfully to deter violations." 897 F.2d at 1141. I find, therefore, that the recovery of economic benefit is essential and that economic benefit should serve as the floor below which the maximum civil penalty should not be mitigated. The government presented credible evidence at trial that defendant Mactal enjoyed an economic benefit of $126,000 from his noncompliance with the asbestos NESHAP regulations. Although I find there to be no basis in the record to reduce the maximum civil penalty based on this defendant's history of violations, the duration of the instant violations, efforts to comply and previous penalties, I do find the defendant to have a very limited ability to pay a civil penalty. I am, therefore, exercising my discretion to reduce the maximum penalty. I, therefore, enter judgment in favor of the United States and against the defendant, A.A. Mactal Construction Co. Inc. for the sum of One Hundred Twenty Six Thousand Dollars ($126,000). The penalty is to be paid to the United States Treasury.

### V. *Injunctive Relief*

**\*4** The government has requested injunctive relief against defendant Mactal. I believe the relief requested is reasonable under the circumstances and hereby order that defendant Mactal is hereby enjoined from any future violations of the asbestos NESHAP; that defendant Mactal will notify EPA at least 30 days before it reenters the asbestos removal industry; that defendant Mactal will notify EPA at least 10 days prior to engaging in any specific demolition or renovation project involving the removal of asbestos; and that defendant Mactal will notify any party with whom it contracts to perform any asbestos renovation/demolition project of this court's order.

### VI. *Conclusion*

In summary, the Court holds that defendant, Mactal must pay $126,000 to the United States Treasury for its failure to comply with the asbestos NESHAP regulations promulgated under the Clean Air Act. Mactal's violations were quite numerous warranting a significant penalty. However, the defendant's limited ability to pay resulted in a substantial mitigation of the maximum penalty to the amount that the defendant received as an economic benefit. In addition, the court orders defendant Mactal as follows: to comply with the asbestos NESHAP regulations in the future; to notify EPA at least 30 days before it reenters the asbestos removal industry; to notify EPA at least 10 days prior to engaging in any specific demolition or renovation project involving the removal of asbestos; and to notify any party with whom it contracts to perform any asbestos renovation/demolition project of this court's order.

IT IS SO ORDERED this 31 day of March, 1992.

**Parallel Citations**

22 Envtl. L. Rep. 21,200

---

Footnotes

1   Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d) reads as follows:

U.S. v. A.A. Mactal Const. Co. Inc.., Not Reported in F.Supp. (1992)
22 Envtl. L. Rep. 21,200

Case 2:10-md-02179-CJB-DPC   Document 13811-1   Filed 12/09/14   Page 5 of 5

In determining the amount of a civil penalty the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require.

**End of Document**  © 2014 Thomson Reuters. No claim to original U.S. Government Works.