# EXHIBIT 14

Case 2:10-md-02179-CJB-DPC   Document 13811-14   Filed 12/09/14   Page 2 of 6
Ogeechee-Canoochee Riverkeeper, Inc. v. T.C. Logging, Inc., Not Reported in...
2010 WL 1009797, 71 ERC 2013

2010 WL 1009797
Only the Westlaw citation is currently available.
United States District Court,
S.D. Georgia,
Statesboro Division.

OGEECHEE-CANOOCHEE RIVERKEEPER, INC., Plaintiff,
v.
T.C. LOGGING, INC., and Henry Thomas Clark, Defendants.

No. 608CV064.  |  March 18, 2010.

### ORDER

B. AVANT EDENFIELD, District Judge.

### I. BACKGROUND

*1 Defendants T.C. Logging, Inc., and its owner, Henry Thomas Clark, violated the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311(a) & 1344, by discharging dredged and fill material into the Ogeechee River wetlands without first obtaining a § 404 permit from the U.S. Army Corps of Engineers ("the Corps"). Doc. # 59 (granting Plaintiff, Ogeechee-Canoochee Riverkeeper, Inc.'s ("OCRK"), motion for summary judgment). The facts of this case center around the construction of a road on property formerly owned by T.C. Logging in Bulloch County, Georgia. Doc. # 46 at 1-2. The road extends .69 miles in bottomland hardwood wetlands and ends at the Ogeechee River. Doc. # 46-6 at 4. The road was constructed by borrowing fill material from an upland portion of the property. *Id.* Defendants also constructed roadside ditches in the wetlands by excavating material from the sides of the road and dumping this material into wetlands on the north side of the road. *Id.*

Defendants sold the property to its current owners, Carl and Lori Proman, in November 2007. Doc. # 41 at 10. OCRK has entered into a consent decree with the Promans. Doc. # 33. As part of that agreement, OCRK agreed not to seek the removal of the road or the discontinuation of it use in exchange for "reasonable and ongoing access to [the Promans'] property ... for remedial actions as are appropriate to improve and stabilize the road and remediate other related conditions." *Id.* at 5.

The matter currently before the Court is precisely what those remedial actions should be. The Court hoped to reach a final decision on this issue at a hearing on remedies held on 12/1/09. That hearing, however, proved relatively fruitless, largely because of Defendants' filing of a twenty-three page "bench brief" some three hours before the hearing. Doc. # 75. This prompted a post-hearing response from Plaintiff, doc. # 76, and a reply to that response by Defendants, doc. # 78. The Court has no interest in prolonging this litigation any further and enters this Order on remedies.

### II. EFFECT OF THE ATF PERMIT

Before continuing, the Court pauses to address Defendants' contention that an after-the-fact ("ATF") permit obtained from the Corps is "intended to provide retroactive authorization for dredge activities and moots Plaintiff's claims."Doc. # 75 at 11. This is simply not the case. First, the administrative settlement agreement entered into by Defendants and the Corps clearly provides that the ATF permit carries no retroactive effect:

> This agreement authorizes the approximately 2.96-acres of fill material associated with the construction of the road at the subject property in 2007 to remain in place pursuant to NWP 32. This authorization shall apply *prospectively,* from the Effective Date. This Agreement *does not authorize, and shall not be construed as authorizing, the initial discharges of fill material* to jurisdictional waters that resulted from Respondents' road construction.

*2 Doc. # 64-1 at 7 (emphasis added).

Second, the scope of the administrative settlement agreement was limited to nonjudicial proceedings between Defendants and the Corps:

> The non-judicial settlement agreement between the [Corps] and Respondents is *not intended to address or resolve the CWA claims pending against Respondents in the OCRK Action or* to bar OCRK from seeking relief in the OCRK Action in connection with

Case 2:10-md-02179-CJB-DPC   Document 13811-14   Filed 12/09/14   Page 3 of 6
Ogeechee-Canoochee Riverkeeper, Inc. v. T.C. Logging, Inc., Not Reported in...
2010 WL 1009797, 71 ERC 2013

any CWA violations at the subject property pursuant to 33 U.S.C. § 1365. The mitigation provided by this non-judicial settlement may be considered, along with any other relevant facts, in determining the appropriate remedies for the CWA violations alleged in the OCRK action.

*Id.* (emphasis added).

The ATF permit in no way moots OCRK's claims in this case.[1] The Court will certainly consider the terms of the administrative settlement agreement in this Order, but any obligations that Defendants undertook as part of that agreement cannot completely offset the remedial relief requested by OCRK.

## III. REMEDIES

OCRK requests the following forms of remedial relief:

(1) Declaratory and permanent injunctive relief sufficient to compel Defendants to restore the affected wetlands by undertaking any remedial measures necessary to stabilize the road, otherwise remedy the damage to wetlands and surrounding waters, and prevent future harm to wetlands and surrounding waters; and

(2) Declaratory and permanent injunctive relief sufficient to compel defendants to conduct appropriate mitigation for the loss of wetlands at the site to include any temporal loss of wetlands' functions and values; and

(3) Penalties for each day of violation, as provided by 33 U.S.C. § 1319(d) and 40 C.F.R § 19.4 (2009); and

(4) Attorney fees and costs.

Doc. # 61 at 2. The Court addresses each of OCRK's claims for relief in turn.

### A. On Site Remediation

Restoration of the wetlands is of particular importance to the Court because it is the only remedy that has any sort of curative effect on the affected property.[2] OCRK's expert, Dr. Bruce A. Pruitt, proposes the following remedial measures: (1) removal of excavated materials from the wetlands, (2) regrading the borrow pit area to prevent further erosion, and (3) construction of three to four low water crossings. Doc. # 57-3 at 7.

Defendants do not appear to contest the necessity of the first and second remedial measures. In fact, Defendants' expert, Mr. Stuart Sligh, likewise recommends measures to stabilize the upland borrow pit area to prevent future erosion. Doc. # 75-2 at 7.

The necessity of the third measure, the construction of three to four low water crossings, is disputed. OCRK's expert opines that the low water crossings are needed to prevent further damage to the wetlands:

> The 15 culverts in the road are inadequately sized and improperly located; a majority are perched too high, some are too small, some are tilted on the wrong grade, and some are full of sediment. The culverts clearly do not provide adequate drainage.... In its present form, the road unquestionably impairs the flow and circulation of waters of the United States and is harming the surrounding wetlands. The harm will continue unless appropriate remedial actions are taken.

*3 Doc. # 57-3 at 6.

Defendants' expert, meanwhile, has an entirely contrary view:

> The road was constructed at the proper width to minimize impacts to wetlands, and has property culverting to prevent the restriction of flood flows. During previous visits to the site at the time of high water elevation in the Ogeechee River, approximately three-fourths of the road was completely inundated with no restriction to surface water flows across the site. I do not believe the road, in its present condition, impairs the flow and circulation of waters of the United States.

Doc. # 75-2 at 5.

Although the Court does not doubt the qualifications or opinion of Mr. Sligh, the Court concurs with Dr. Pruitt's recommendation to construct the low water crossings. Neither expert was able to observe all fifteen culverts because of environmental conditions, so the Court is simply not convinced that the existing culverts provide the needed drainage.[3] The Court's goal is to restore the flow and circulation of water as it was prior to the construction of the road. Construction of the low water crossings ensures attainment of that goal.

Defendants are thus ordered to remove any dredged or fill material that does not otherwise support or stabilize the road from the relevant property. Defendants are further ordered to regrade the borrow pit area on the upland portion of the property to prevent any further erosion. Defendants have 120 days from the date of this Order to comply with the Court's directive.

Defendants are lastly ordered to construct three to four low water crossings to improve drainage on the affected property. Defendants shall develop a plan of construction for OCRK's approval within forty-five days of this Order. In the unlikely event that Defendants are uncooperative or otherwise unable to submit an agreeable construction plan, OCRK should move this Court for a hearing. Defendants shall complete construction of the low water crossings within 120 days from the date of this Order.

OCRK and its expert, Dr. Pruitt, should routinely inspect Defendants' progress in these remediation efforts and notify the Court of any non-compliance issues.[4]

**B. Mitigation**
OCRK has asked the Court to compel Defendants to conduct appropriate mitigation for the loss of wetlands. Doc. # 61 at 2. Defendants, however, in their efforts to obtain an ATF permit, have "agreed to perpetually protect a 40-acre site containing mature bottomland hardwood wetlands and approximately 3,357 linear feet of the southern side of the Canoochee River in Candler County, Georgia, on property it owns in the same watershed."Doc. # 64-1 at 5. The Corps determined that "the environmental benefits provided by the 40-acre [property] owned by T.C. Logging are greater than the environmental detriments caused by the alleged unauthorized activity ."*Id.* at 6. In light of Defendants' obligation to preserve the forty-acre property in Candler County, the Court will not require Defendants to conduct any additional mitigation. The Court, however, incorporates into this Order Defendants' agreement to protect the Candler County property. Doc. # 64-1. Should Defendants ever cease their protection efforts, OCRK will have remedies available to it with this Court.

**C. Civil Penalties**
*4 Any person who violates the CWA "shall be subject to a civil penalty ... for each violation."33 U.S.C. § 1319(d).

In the Eleventh Circuit, "[c]ivil penalties are to be assessed against [a CWA violator] as a matter of law."*Atl. States Legal Found., Inc. v. Tyson Foods, Inc.,* 897 F.2d 1128, 1142 (11th Cir.1990). The court "first determine[s] the maximum fine for which [the CWA violator] may be held liable."*Id.* If the Court "chooses not to impose the maximum, it must reduce the fine in accordance with the factors spelled out in § 1319(d), clearly indicating the weight it gives to each of the factors in the statute and the factual findings that support its conclusions."*Id.* These factors include:

   (1) the seriousness of the violation or violations,

   (2) the economic benefit (if any) resulting from the violation,

   (3) any history of such violations,

   (4) any good-faith efforts to comply with the applicable requirements,

   (5) the economic impact of the penalty on the violator, and

   (6) such other matters as justice may require.

*See*33 U.S.C. § 1319(d).

The Court determined that, on 12/1/09 (the date of the hearing on remedies), Defendants' maximum fine was $27,972,500.[5] The Court now finds that that the first, third, fourth, and fifth factors described in § 1319(d) warrant a significant downward adjustment of the fine. First, while the Court does not downplay the seriousness of any CWA violation nor the length of Defendants' non-compliance in this case, the environmental impact of the road construction was isolated to the relevant property and was amply mitigated by the administrative settlement agreement with the Corps. *See supra* section III.B. Second, neither T.C. Logging nor Henry Thomas Clark has any history of violations of any state or federal environmental laws or regulations. Doc. # 75 at 15. Third, Defendants did engage in good-faith efforts to comply

with the CWA by working with the Corps to issue an ATF permit. Doc. # 64-1. Lastly, the Court assigns considerable weight to the fifth § 1319(d) factor-the economic impact of the penalty on the violator. It appears that T.C. Logging is highly leveraged and operated at a loss in 2007, 2008, and 2009. Doc. # 75 at 16-17. A penalty of any amount would thus have the desired punitive and prophylactic effect on Defendants.

In light of the above mitigating factors, the Court requires Defendants to remit $78,000 to the U.S. Treasury as a penalty for violating the CWA, 33 U.S.C. §§ 1311(a) & 1344. This number also represents the amount in which the property's value was enhanced due to the construction of the road. *See* doc. # 75 at 15 ("It is undisputed that the property was purchased [by Defendants] ... for $55,000 and then sold sixteen months later for $133,000."). While the parties dispute the amount Defendants invested in the construction of the road, doc. # 76 at 5, that amount is of no moment to the Court. Reducing the fine by the cost of the road construction would simply reimburse Defendants for breaking the law.

**D. Attorney Fees and Costs.**

*5 Finally, OCRK is entitled to attorney fees and costs pursuant to 33 U.S.C. § 1365 ("The court ... may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate."). The Court is of the opinion that OCRK's petition for fees and costs is timely and that OCRK is the prevailing party in this case.[6] With that said, the Court orders the parties to engage in meaningful discussion to settle the amount owed by Defendants to compensate OCRK for costs associated with this litigation. If the parties are unable to reach an agreed-upon amount within thirty days from the date of this Order, OCRK should notify the Court so that it may rule on Plaintiff's motion for attorney fees and costs, doc. # 79.

**IV. *CONCLUSION***

Defendants are **ORDERED** to (1) remove any dredged or fill material that does not otherwise support the road from the property, (2) regrade and stabilize the borrow pit area on the upland portion of the property, and (3) construct three to four low water crossings along the road. Defendants shall comply with the aforementioned remedial measures within 120 days of this Order. Defendants are also **ORDERED** to pay $78,000 to the U.S. Treasury as a penalty for violating the CWA. The Court **ORDERS** the parties to engage in discussions to settle the amount owed by Defendants for attorney fees and costs related to this litigation. In the unlikely event the parties are unable to reach an agreed-upon amount within thirty (30) days of this Order, Plaintiff should notify the Court so that it may rule on the motion for attorney fees and costs, doc. # 79.

**Parallel Citations**

71 ERC 2013

Footnotes

1 Defendants, in a subsequent pleading, back away from their position that the ATF permit provides for retroactive authorization for dredge and fill activities, noting that the ATF permit "can not authorize the initial discharge" and "makes no statement as to the retroactive effect."Doc. # 78 at 4.

2 This remedy is contemplated by § 1319(b) of the CWA, which states that the "district court of the United States for the district in which the defendant is located or resides or is doing business ... shall have jurisdiction to restrain such violation and to require compliance."

3 In his expert report, Dr. Pruitt acknowledged that "[d]ue to poor conditions during surveying, only the road centerline of the 15th culvert located at the western extent of the road was located."Doc. # 57-3 at 6 n. 1. Mr Sligh likewise noted that "during [his] March 20, 2009 field visit to measure on-site conditions, [he] could only measure the inverts on seven culverts due to high river water elevations."Doc. # 75-2 at 6.

4 Plaintiff should notify the Court immediately if it plans to use a different expert to inspect and review Defendants' remediation efforts on the property.

5 Violations began on or before 9/11/07. Doc. # 75 at 13. From that date until 1/11/09, Defendants were subject to a civil penalty of $32,500 per day ($15,860,000 for the period).40 C.F.R. § 19.4 (2009). From 1/12/09 until 12/1/09, Defendants were subject to a penalty of $37,500 per day ($12,112,500 for the period).*Id.* (Civil penalty amount increased for inflation).

6 Defendants contend that Plaintiff is not a prevailing party because of Defendants' "voluntary compliance" with all "determinations, dictates, and other requirements of the United States Army Corp of Engineers...." Doc. # 80 at 3. As noted already, Defendants' settlement with the Corps did not authorize the initial CWA violation and was not intended to resolve claims in this action. *See supra* section II.

**Ogeechee-Canoochee Riverkeeper, Inc. v. T.C. Logging, Inc., Not Reported in...**
2010 WL 1009797, 71 ERC 2013

---

**End of Document** © 2014 Thomson Reuters. No claim to original U.S. Government Works.