# EXHIBIT 20

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA; CALIFORNIA AIR RESOURCES BOARD | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No.   1:14-cv-1837 |
| HYUNDAI MOTOR COMPANY; HYUNDAI MOTOR AMERICA; KIA MOTORS CORPORATION; KIA MOTORS AMERICA; HYUNDAI AMERICA TECHNICAL CENTER, INC., | ) ) ) ) ) ) | Judge |
| Defendants. | ) ) ) | |

## **CONSENT DECREE**

TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     JURISDICTION AND VENUE ........................................................................2

III.    APPLICABILITY ..............................................................................................3

IV.     DEFINITIONS ...................................................................................................5

V.      CIVIL PENALTIES ...........................................................................................7

VI.     CORRECTION OF GREENHOUSE GAS EMISSION CREDITS ...................9

VII.    CORRECTIVE MEASURES ...........................................................................10

VIII.   STIPULATED PENALTIES ............................................................................11

IX.     FORCE MAJEURE ..........................................................................................14

X.      DISPUTE RESOLUTION ................................................................................16

XI.     INFORMATION COLLECTION AND RETENTION ....................................18

XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ........................20

XIII.   COSTS ..............................................................................................................23

XIV.    NOTICES ..........................................................................................................23

XV.     EFFECTIVE DATE ..........................................................................................25

XVI.    RETENTION OF JURISDICTION ..................................................................25

XVII.   MODIFICATION ..............................................................................................25

XVIII.  TERMINATION ...............................................................................................26

XIX.    PUBLIC PARTICIPATION .............................................................................27

XX.     SIGNATORIES/SERVICE ...............................................................................27

XXI.    INTEGRATION ................................................................................................27

XXII.   FINAL JUDGMENT ........................................................................................28

# I.     INTRODUCTION

WHEREAS, Plaintiffs, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the California Air Resources Board ("CARB"), have filed a complaint in this action concurrently with this Consent Decree, alleging that Defendants, Hyundai Motor Company ("Hyundai Motor"), Hyundai Motor America ("Hyundai America"), Kia Motors Corporation ("Kia Motors"), Kia Motors America ("Kia America"), and Hyundai America Technical Center, Inc. ("HATCI") (collectively, "Defendants") violated Section 203(a)(1) of the Clean Air Act ("Act"), 42 U.S.C. § 7522(a)(1), and California Health and Safety Code Section 43212;

WHEREAS, the Complaint alleges that Defendants sold, offered for sale, introduced into commerce, delivered for introduction into commerce, or imported into the United States (or caused the foregoing with respect to) new motor vehicles from model year 2012 and model year 2013 that did not conform to the design specifications in Defendants' applications for Certificates of Conformity that purportedly covered these vehicles.  In particular, the road load forces for the subject vehicles were higher than specified in the application, which resulted in Defendants overstating fuel efficiency and understating greenhouse gas emissions.  The Complaint further alleges that the reported road load forces were determined through the use of protocols that were not in conformance with specified test procedures;

WHEREAS, the Complaint does not allege that Defendants sold or otherwise introduced into commerce motor vehicles that were not certified to California emission standards for the model years at issue;

WHEREAS, Defendants deny the violations alleged in the Complaint; maintain they have been and remain in compliance with the Clean Air Act and its implementing regulations and with

the California Health and Safety Code and its implementing regulations pertaining to the performance of coastdown testing procedures; and do not admit any liability to the United States or CARB arising out of the transactions or occurrences alleged in the Complaint;

WHEREAS, on November 2, 2012, EPA and Hyundai America and Kia America announced that Defendants would lower their fuel economy estimates for certain model year 2011, 2012, and 2013 vehicles after testing by the companies independently and jointly with EPA found discrepancies between agency testing results and data submitted by the companies.

WHEREAS, on November 2, 2012, Hyundai America and Kia America initiated a voluntary customer reimbursement program for current and former vehicle owners who had purchased model year 2011-2013 vehicles that are subject to this Consent Decree;

WHEREAS, Defendants worked cooperatively with EPA in the period leading up to November 2, 2012, upon learning of the alleged testing issues described in the Complaint;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of further testimony, without the adjudication or admission of any issue of fact or law, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 205 of the Act, 42 U.S.C. § 7524, and over the Parties consenting hereto.  Solely for purposes of this Consent Decree, venue lies in this District

pursuant to Section 205 of the Act, 42 U.S.C. § 7524, because the Administrator has her

principal place of business here.  Solely for purposes of the Complaint, this Decree, and any

action to enforce this Decree, Defendants consent to the Court's jurisdiction and consent to

venue in this District.  Solely for purposes of this Consent Decree and the Complaint, Defendants

waive all objections and defenses that they may have to the Court's jurisdiction over Defendants

and to venue in this District and agree not to challenge this Court's jurisdiction to enter and

enforce this Decree.

      2.     Solely for purposes of the Consent Decree, this Court has supplemental

jurisdiction over CARB's state law claim alleged in the Complaint pursuant to 28 U.S.C.

§ 1367(a) because it is related to the federal claim and forms part of the same case or

controversy.

      3.     For purposes of this Consent Decree, Defendants agree that the Complaint states

claims upon which relief may be granted pursuant to Section 203(a)(1) of the Act, 42 U.S.C.

§ 7522(a)(1), and California Health and Safety Code Section 43212.

### III.    APPLICABILITY

      4.     Upon entry of the Consent Decree, the obligations of this Decree apply to and are

binding upon the United States and CARB, and upon Defendants and any successors, assigns, or

other entities or persons otherwise bound by law.  If a Defendant proposes to sell ownership of

the corporate entity responsible for implementing Appendix A and Appendix B to this Consent

Decree, the Defendant shall give written notice of the Consent Decree to any successors in

interest prior to the transfer of the corporate entity.  The Defendant shall notify the United States

3

and CARB, in accordance with the notice provision set forth in Paragraph 59, of any such successor in interest at least 30 Days prior to the closing of such transfer.

5.       No transfer of ownership or operation of a Defendant entity responsible for implementing Appendix A and Appendix B to this Decree, whether in compliance with the procedures of this Paragraph or otherwise, relieves Defendants of their obligation to ensure that the terms of the Decree are implemented, unless (1) the transferee agrees to undertake the obligations required by this Decree and to be substituted for the Defendants as a Party under the Decree and thus be bound by the terms thereof, (2) the United States consents to relieve Defendants of their obligations, and (3) the Court approves a joint motion from the United States, Defendant, and the transferee requesting that the Court approve a modification substituting the transferee as a Defendant responsible for complying with the terms and conditions of the Consent Decree.  If Defendants do not secure the agreement of the United States to a joint motion, then Defendants and the transferee may file, without the agreement of the United States, a motion requesting the Court to approve a modification substituting the transferee as the Defendant responsible for complying with some or all of the terms and conditions of the Consent Decree. The United States may file an opposition to the motion.  The  motion to modify shall be granted unless Defendants and the transferee:  (i) fail to show that the transferee has the financial and technical ability to assume the obligations and liabilities of the Consent Decree; or (ii) the Court finds other good cause for denying the motion.

6.       Defendants shall provide a copy of this Consent Decree to all appropriate officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree.

7.      In any action to enforce this Consent Decree, Defendants shall not raise as a
defense the failure by any of its officers, directors, employees, agents, or contractors to take any
actions necessary to comply with the provisions of this Consent Decree.

## IV.    DEFINITIONS

8.      Terms used in this Consent Decree that are defined in the federal Clean Air Act
("Act"), 42 U.S.C. §§ 7401-7671q, or in regulations promulgated pursuant to Title II of the Act,
shall have the meanings assigned to them in the Act or such regulations, unless otherwise
provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the
following definitions shall apply:

a.      "AB&T" shall refer to the averaging, banking, and trading ("AB&T")
program codified at 40 C.F.R. § 86.1865-12(k);

b.      "AB&T Report" shall mean each report required by 40 C.F.R. §§ 86.1865-
12(l)(2) and 86.1871-12(e);

c.      "CARB" shall mean the California Air Resources Board;

d.      "Complaint" shall mean the complaint filed by the United States and
CARB in this action;

e.      "Consent Decree" or "Decree" shall mean this Decree, including its
appendices;

f.      "Day" shall mean a calendar day unless expressly stated to be a business
day.  In computing any period of time under this Consent Decree, where the last day
would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of
business of the next business day;

5

      g.     "Defendants" shall mean Hyundai Motor Company, Hyundai Motor America, Kia Motors Corporation, Kia Motors America, and Hyundai America Technical Center, Inc.; "Defendant" shall mean one of the aforementioned entities, as applicable;

      h.     "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

      i.     "Effective Date" shall have the definition provided in Section XV;

      j.     "HATCI" shall mean Defendant Hyundai America Technical Center, Inc.;

      k.     "Hyundai America" shall mean Defendant, Hyundai Motor America;

      l.     "Hyundai Motor" shall mean Defendant Hyundai Motor Company;

      m.     "Kia America" shall mean Defendant, Kia Motors America;

      n.     "Kia Motors" shall mean Defendant Kia Motors Corporation;

      o.     "Model Year" shall mean the model year as defined in 40 C.F.R. §§ 85.2301-05;

      p.     "OTAQ" shall mean EPA's Office of Transportation and Air Quality;

      q.     "Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

      r.     "Parties" shall mean the United States, CARB, and Defendants;

      s.     "Projected Highest-Selling Subconfiguration" shall mean that subconfiguration projected to be the highest-selling pursuant to the internal criteria used by Hyundai America and Kia America, respectively;

      t.     "Section" shall mean a portion of this Decree identified by a roman numeral;

    u.    "Subconfiguration" shall mean a unique combination within a vehicle configuration of equivalent test weight, road-load horsepower, and any other operational characteristics or parameters which may significantly affect fuel economy within a vehicle configuration;

    v.    "United States" shall mean the United States of America, acting on behalf of EPA.

## V.    CIVIL PENALTIES

9.    Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating their federal or any state income tax.

<u>Civil penalty to be paid to the United States:</u>

10.    Within 15 Days after the Effective Date, Defendants shall pay to the United States the sum of ninety-three million six hundred fifty-six thousand six hundred dollars ($93,656,600) as a civil penalty.

11.    Defendants shall pay the civil penalty due to the United States by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendants, after the Effective Date, by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Columbia, 555 Fourth Streets, N.W., Washington, D.C., (202) 514-7211. The payment instructions provided by the FLU shall include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

For Hyundai:

INTERNATIONAL FINANCE TEAM
Hyundai Motor Company
12 Heolleung-ro, Seocho-gu, Seoul, 137-938, Korea
+82 2 3464 2330
parksb@hyundai.com


For Kia:

INTERNATIONAL FINANCE TEAM
Kia Motors Corporation
12 Heolleung-ro, Seocho-gu, Seoul, 137-938, Korea
+82 2 3464 5491
shinjaeman@kia.com


At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT

transaction record, together with a transmittal letter, which shall state that the payment is for the

Clean Air Act civil penalty owed pursuant to the Consent Decree in *United States et al. v.*

*Hyundai Motor Company et al.*, (i) to EPA via email at acctsreceivable.cinwd@epa.gov or via

regular mail at EPA Cincinnati Finance Office, 26 Martin Luther King Drive, Cincinnati, Ohio,

45268; (ii) to the United States and EPA via email or regular mail in accordance with Section

XIV (Notices).  Such notices shall reference the CDCS number, civil action number, and DOJ

case number 90-5-2-1-10753.

        Civil penalty to be paid to CARB:

        12.      Within 15 Days after the Effective Date, Defendants shall pay to CARB the sum

of six million three hundred forty-three thousand four hundred dollars ($6,343,400) as a civil

penalty.

13.     Defendants shall pay the civil penalty due to CARB by EFT payable to the

"California Air Pollution Control Fund" in accordance with written instructions provided to

Defendants' counsel.  At the time of payment, Defendants shall send a copy of the EFT

authorization form and the EFT transaction record, together with a transmittal letter, which shall

state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United*

*States et al. v. Hyundai Motor Company et al.*, (i) to CARB via email at awang@arb.ca.gov,

lbrown@arb.ca.gov, epeter@arb.ca.gov, and asharma@arb.ca.gov; and (ii) to CARB and counsel

for CARB via regular mail in accordance with Section XIV (Notices).  Such notices shall

reference the civil action number.

**VI.     CORRECTION OF GREENHOUSE GAS EMISSION CREDITS**

14.     Within 30 Days of the Effective Date, or within 30 Days of when EPA's Office of

Transportation and Air Quality ("OTAQ") provides processing instructions, whichever is later,

and in accordance with those processing instructions:

        a.     Hyundai Motor shall amend its model year 2011-2013 AB&T reports such

that Hyundai Motor's resulting credit balance is 2,700,000 credits less than would be the

balance if calculated using the greenhouse gas emission data Hyundai Motor originally

submitted in its applications for Certificates of Conformity for these model years.  The

credit adjustments shall be permanent;

        b.     Kia Motors shall amend its model year 2011-2013 AB&T reports such that

Hyundai Motor's resulting credit balance is 2,050,000 credits less than would be the

balance if calculated using the greenhouse gas emission data Kia Motors originally

submitted in its applications for Certificates of Conformity for these model years.  The

credit adjustments shall be permanent.

15.     Within 60 Days of the Effective Date, or within 60 Days after OTAQ provides credit processing instructions, whichever is later, each Defendant shall provide written notice that it has complied with the preceding Paragraph in this Section by sending a Notice in accordance with Section XIV of this Consent Decree (Notices).

## VII.    CORRECTIVE MEASURES

16.     Defendants shall comply with the requirements and deadlines specified in Appendix A ("Additional Corrective Measures") and Appendix B ("Coastdown Auditing of Production Vehicles").

17.     Defendants shall provide directly to EPA's OTAQ the raw test data from which Defendants derived the road load forces stated in their applications for all model year 2015 and 2016 Certificates of Conformity.  Defendants shall provide this data concurrently with each corresponding application, or within 30 Days of the Effective Date, whichever is later.

18.     Defendants shall submit required reports as specified in Appendices A and B.

19.     Defendants shall submit annual reports that provide information describing the progress toward the requirements of Appendices A and B.  Defendants shall submit the first annual progress report on October 1, 2015 describing Defendants' corrective efforts since the Effective Date of this Consent Decree.  Defendants shall submit annual progress reports each year thereafter on the first business day of October until the termination of the Consent Decree.

20.     Each report submitted by Defendants under this Section and the notice required in Paragraph 15 shall be signed by an official of the submitting party and include the following certification:

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

21. The certification requirement in Paragraph 20 does not apply to emergency or similar notifications where compliance would be impractical.

22. The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

23. Any information provided pursuant to this Consent Decree may be used by the United States and CARB in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII. STIPULATED PENALTIES

24. Defendants shall be liable for stipulated penalties to the United States or CARB for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure).

25. If Defendants fail to pay the civil penalties required to be paid to the United States or CARB by the deadline in Paragraphs 10 and 12, Defendants shall pay, to the Plaintiff for which payment is late, both interest at the rate specified in 28 U.S.C. § 1961 and a stipulated penalty of $5,000 per Day for each Day and for each penalty that is late.

26. If a Defendant fails to perform any obligation required by Section VII (Corrective Measures) or Appendix A or Appendix B according to all applicable requirements and by the

11

deadlines specified in Section VII and the appendices, that Defendant shall pay to the United States a stipulated penalty of $3,000 per Day for each Day that performance is overdue.

27.     If a Defendant fails to correct its respective AB&T Report by the required number of credits by the deadline set forth in Paragraph 14 and provide the required notification set forth in Paragraph 15, that Defendant shall pay to the United States a stipulated penalty of $5,000 per Day for each Day that the Defendant has failed to comply with each Paragraph.

28.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

29.     Defendants shall pay any stipulated penalty within 30 Days of receiving written demand from the United States or CARB, as applicable.

30.     The United States or CARB, as applicable, may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to it under this Consent Decree.

31.     Stipulated penalties shall continue to accrue as provided in Paragraph 28, during any Dispute Resolution, but need not be paid until the following:

        a.      If the dispute is resolved by agreement of the Parties or by a decision of EPA or CARB that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States or CARB, as applicable, within 30 Days of the Effective Date of the agreement or the receipt of EPA's or CARB's decision or order.

        b.      If the dispute is appealed to the Court and the United States or CARB

prevails in whole or in part, Defendants shall pay all accrued penalties determined by the

Court to be owing, together with interest, within 60 Days of receiving the Court's

decision or order, except as provided in subparagraph c, below.

        c.      If any Party appeals the District Court's decision, Defendants shall pay all

accrued penalties determined to be owing, together with interest, within 15 Days of

receiving the decision from the final appellate court.

     32.      Defendants shall pay stipulated penalties owing to the United States or CARB in

the manner set forth and with the confirmation notices required by Paragraphs 11 and 13, except

that the transmittal letter shall state that the payment is for stipulated penalties and shall state for

which violation(s) the penalties are being paid.

     33.      If a Defendant fails to pay stipulated penalties according to the terms of this

Consent Decree, such Defendants shall be liable for interest on such penalties, as provided for in

28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall

be construed to limit the United States or CARB from seeking any remedy otherwise provided by

law for Defendants' failure to pay any stipulated penalties.

     34.      Subject to the provisions of Section XII (Effect of Settlement/Reservation of

Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any

other rights, remedies, or sanctions (including, but not limited to, statutory penalties, additional

injunctive relief, mitigation or offset measures, and/or contempt) available to the United States or

CARB for Defendants' violation of this Consent Decree or applicable law.

## IX.    FORCE MAJEURE

35.    "Force majeure," for purposes of this Consent Decree, is defined as any event
arising from causes beyond the control of a Defendant, of any entity controlled by a Defendant,
or of a Defendant's contractors, that delays or prevents the performance of any obligation under
this Consent Decree or otherwise causes a violation of any provision of this Consent Decree
despite the Defendant's best efforts to fulfill the obligation.  The requirement that each
Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate
any potential force majeure event and best efforts to address the effects of any such event (a) as it
is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the
greatest extent possible.  "Force Majeure" does not include Defendants' financial inability to
perform any obligation under this Consent Decree.

36.    If any event occurs or has occurred that may delay the performance of, or
otherwise cause a violation of, any obligation under this Consent Decree, as to which a
Defendant intends to assert a claim of force majeure, such Defendant shall provide written notice
to the United States and CARB in accordance with Section XIV (Notices) within 14 Days of
when Defendant first recognized that the event might cause a delay.  The notice shall include an
explanation and description of the reasons for the delay; the anticipated duration of the delay; all
actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of
any measures to be taken to prevent or mitigate the delay or the effect of the delay; the
Defendant's rationale for attributing such delay to a force majeure event if it intends to assert
such a claim; and a statement as to whether, in the opinion of the Defendant, such event may
cause or contribute to an endangerment to public health, welfare or the environment.  The

14

Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure event. Failure to comply with the above requirements shall preclude a Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

37.     If EPA, after a reasonable opportunity for review and comment by CARB, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

38.     If EPA, after a reasonable opportunity for review and comment by CARB, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendants in writing of its decision.

39.     If a Defendant elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 21 Days after receipt of notice by EPA. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be

15

warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 35 and 36. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.  DISPUTE RESOLUTION

40.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such potentially disputed issue as a defense to an action by the United States or CARB to enforce any obligation of Defendants arising under this Decree.

41.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants send the United States and CARB a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States, after consultation with CARB, shall be considered binding unless, within 14 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

42.     Formal Dispute Resolution.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United

16

States and CARB a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

43.     The United States, after consultation with CARB, shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position. The United States' Statement of Position, as applicable, shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

44.     Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States and CARB, in accordance with Section XIV (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 30 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

45.     The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum to the extent permitted by the Local Rules.

46.     Standard of Review.  Except as otherwise provided in this Consent Decree, in any

dispute brought under Paragraph 44, Defendants shall bear the burden of proving that their

actions were in compliance with this Consent Decree; or, if the dispute concerns the

interpretation of this Consent Decree, the dispute shall be resolved in accordance with applicable

principles of law.

47.     The invocation of dispute resolution procedures under this Section shall not, by

itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent

Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with

respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but

payment shall be stayed pending resolution of the dispute as provided in Paragraph 31.  If

Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as

provided in Section VIII (Stipulated Penalties).

## XI.     INFORMATION COLLECTION AND RETENTION

48.     Until three years after the termination of this Consent Decree, Defendants shall

retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all

documents, records, or other information (including documents, records, or other information in

electronic form) in their or their contractors' or agents' possession or control, or that come into

their or their contractors' or agents' possession or control, and that relate to Defendants'

performance of their obligations under this Consent Decree.  This information-retention

requirement shall apply regardless of any contrary corporate or institutional policies or

procedures.  At any time during this information-retention period, upon request by the United

18

States or CARB, Defendants shall provide copies of any documents, records, or other

information required to be maintained under this Paragraph.

49.     At the conclusion of the information-retention period provided in the preceding

Paragraph, Defendants shall notify the United States and CARB at least 90 Days prior to the

destruction of any documents, records, or other information subject to the requirements of the

preceding Paragraph and, upon request by the United States or CARB, Defendants shall deliver

any such documents, records, or other information to EPA or CARB, as applicable.  Defendants

may assert that certain documents, records, or other information is privileged under the attorney-

client privilege or any other privilege recognized by federal or California law.  If Defendants

assert such a privilege, it shall provide the following:  (a) the title of the document, record, or

information; (b) the date of the document, record, or information; (c) the name and title of each

author of the document, record, or information; (d) the name and title of each addressee and

recipient; (e) a description of the subject of the document, record, or information; and (f) the

privilege asserted by Defendants.  However, Defendants shall not make a claim of privilege or

protection regarding test data and factual information, and the portion of any documents or other

records reciting test data and factual information, that Defendants are required to create or

generate pursuant to Sections VI and VII of this Consent Decree.

50.     Defendants may also assert that information required to be provided under this

Consent Decree is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part

2 and/or the California Public Records Act.  As to any information that Defendants seek to

protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2 and/or the

California Public Records Act.

51.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or CARB pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

52.     This Consent Decree resolves

a)     the civil claims of the United States for civil penalties and injunctive relief against Defendants arising under Section 203 of the Act, 42 U.S.C. § 7522, and the applicable implementing regulations codified at 40 C.F.R. Part 86, Subparts B and S, and Part 600 (with respect to carbon-related exhaust emissions), for the vehicles in the following table for claims that (i) the vehicles are not covered by a Certificate of Conformity, and (ii) that Defendants did not properly test vehicles for purposes of obtaining Certificates of Conformity; and arising under Sections 204, 205, 206, 207, and 208 of the Act, 42 U.S.C. §§ 7523, 7524, 7525, 7541, and 7542, and the applicable implementing regulations codified at 40 C.F.R. Part 86, Subparts B and S, and Part 600 (with respect to carbon-related exhaust emissions), through the date of lodging for the vehicles in the following table for claims that (i) the vehicles are not covered by a Certificate of Conformity, or (ii) that Defendants did not properly test vehicles for purposes of obtaining Certificates of Conformity; and

20

b)        the civil claims of CARB for civil penalties and injunctive relief under

California Health and Safety Code Section 43212 and its implementing regulations for

the vehicles in the following table.

| Model Year 2013 | | |
|---|---|---|
| | Car Line | Model |
| Hyundai | Accent | Automatic |
| | | Manual |
| | Azera | 3.3L Automatic |
| | Elantra | 1.8 L Automatic |
| | | 1.8 L Manual |
| | | 1.8 L Blue Automatic |
| | | 1.8 L GT Automatic |
| | | 1.8 L GT Manual |
| | | Elantra Coupe Automatic |
| | | Elantra Coupe Manual |
| | Genesis | 5.0 L Automatic |
| | | 3.8 L Automatic |
| | | 3.8 L Coupe Automatic |
| | | 3.8 L Coupe Manual |
| | Santa Fe | 2.4 L Sport Automatic 4wd |
| | | 2.4 L Sport Automatic 2wd |
| | | 2.0LT Sport Automatic 4wd |
| | | 2.0LT Sport Automatic 2wd |
| | Tucson | 2.4L Automatic 4wd |
| | | 2.4L Automatic 2wd |
| | | 2.4L Manual 4wd |
| | | 2.4L Manual 2wd |
| | | 2.0L Automatic 2wd |
| | | 2.0L Manual 2wd |
| | Veloster | Automatic |
| | | Manual |
| | | Turbo Automatic |
| | | Turbo Manual |
| Kia | Rio | Automatic |
| | | Manual |
| | | Eco Automatic |
| | Sorento | 2.4 L Automatic 4wd SIDI |
| | | 2.4 L Automatic 2wd SIDI |
| | Soul | 1.6 L Soul Eco |
| | | 1.6 L Soul Automatic |
| | | 1.6 L Soul Manual |
| | | 2.0 L Soul Eco |
| | | 2.0 L Soul Automatic |
| | | 2.0 L Soul Manual |
| | Sportage | 2.4 L Automatic 4wd |
| | | 2.4 L Automatic 2wd |
| | | 2.4 L Manual 4wd |
| | | 2.4 L Manual 2wd |
| | | 2.0 L Automatic 2wd |
| | | 2.0 L Automatic 4wd |

| Model Year 2012 | | |
|---|---|---|
| | Car Line | Model |
| Hyundai | Accent | 1.8 L Automatic |
| | | 1.8 L Manual |
| | Azera | 3.3L Automatic |
| | Elantra | 1.8 L Automatic |
| | | 1.8 L Manual |
| | | 2.0 L Touring Automatic |
| | | 2.0 L Touring Manual |
| | Genesis | 5.0 L Automatic |
| | | 4.6 L Automatic |
| | | 5.0 L R-Spec |
| | | 3.8 L Automatic |
| | Sonata | Hybrid |
| | Tucson | 2.4L Automatic 4wd |
| | | 2.4L Automatic 2wd |
| | | 2.4L Manual 4wd |
| | | 2.4L Manual 2wd |
| | | 2.0L Automatic 2wd |
| | | 2.0L Manual 2wd |
| | Veloster | Automatic |
| | | Manual |
| Kia | Optima | Hybrid |
| | Rio | Automatic |
| | | Manual |
| | Sorento | 2.4 L Automatic 4wd SIDI |
| | | 2.4 L Automatic 2wd SIDI |
| | Soul | 1.6 L Soul Eco |
| | | 1.6 L Soul Automatic |
| | | 1.6 L Soul Manual |
| | | 2.0 L Soul Eco |
| | | 2.0 L Soul Automatic |
| | | 2.0 L Soul Manual |
| | Sportage | 2.4 L Automatic 4wd |
| | | 2.4 L Automatic 2wd |
| | | 2.4 L Manual 4wd |
| | | 2.4 L Manual 2wd |
| | | 2.0 L Automatic 2wd |
| | | 2.0 L Automatic 4wd |

| Model Year 2011 | | |
|---|---|---|
| | Car Line | Model |
| Hyundai | Elantra | 1.8 L Automatic |
| | | 1.8 L Manual |
| | Sonata | Hybrid |
| Kia | Optima | Hybrid |

21

53.     The United States and CARB reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States or CARB to obtain penalties or injunctive relief under the Clean Air Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 52.

54.     In any subsequent administrative or judicial proceeding initiated by the United States or CARB for injunctive relief, civil penalties, or other appropriate relief, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or CARB in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 52.

55.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and CARB do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Clean Air Act or with any other provisions of federal, state, or local laws, regulations, or permits.

22

56.     This Consent Decree does not limit or affect the rights of Defendants or of the United States or CARB against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

57.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII.   COSTS

58.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and CARB shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalties or any stipulated penalties due but not paid by Defendants.

## XIV.   NOTICES

59.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:          EES Case Management Unit
                               Environment and Natural Resources Division
                               U.S. Department of Justice
                               P.O. Box 7611
                               Washington, DC  20044-7611
                               eescdcopy.enrd@usdoj.gov
                               Re: DOJ No. 90-5-2-1-10753

To the United States or EPA:   Director, Air Enforcement Division
                               Office of Civil Enforcement
                               Office of Enforcement and  Compliance Assurance
                               U.S. Environmental Protection Agency

23

1200 Pennsylvania Ave., N.W.
WJC-South, Room 1119
Mailcode 2242A
Washington, DC 20460

To OTAQ:                Director, Compliance Division
                        Office of Transportation and Air Quality
                        Office of Air and Radiation
                        U.S. Environmental Protection Agency
                        2565 Plymouth Road
                        Ann Arbor, MI 48105

To CARB:                Ellen M. Peter, Chief Counsel
                        California Air Resources Board
                        P.O. Box 2815
                        Sacramento, CA 95812

To Counsel for CARB:    Barbara C. Spiegel, Deputy Attorney General
                        Office of the Attorney General
                        455 Golden Gate Avenue, Suite 11000
                        San Francisco, CA 94102

To Hyundai Motor:       Head of International Legal Team
                        Hyundai Motor Company
                        12 Heolleung-ro
                        Seocho-Gu, Seoul, Republic of Korea

To Hyundai America:     Executive Vice President & General Counsel
                        Hyundai Motor America
                        10550 Talbert Avenue
                        Fountain Valley, CA 92708

To Kia Motors:          Head of International Legal Team
                        Kia Motors Corporation
                        12 Heolleung-ro
                        Seocho-Gu, Seoul, Republic of Korea

24

To Kia America:                     Executive Vice President & General Counsel
                                                   Kia Motors America
                                                   111 Peters Canyon Road
                                                   Irvine, CA 92606-1790

To HATCI:                          General Counsel
                                                   Hyundai America Technical Center, Inc.
                                                   6800 Geddes Road
                                                   Superior Township, MI 48198

60.      Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above, or may add an additional notice recipient.

61.      Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.    EFFECTIVE DATE

62.      The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, as recorded on the Court's docket.

## XVI.    RETENTION OF JURISDICTION

63.      The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Decree.

## XVII.  MODIFICATION

64.      The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

25

65.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 46, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

66.     After Defendants have completed the requirements of Section VI and Section VII and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States and CARB a request for termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

67.     Following receipt by the United States and CARB of Defendants' request for termination, the Parties shall confer informally concerning the request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States and CARB agree that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

68.     If the United States or CARB does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section X.  However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until 45 Days after service of its request for termination.

26

## XIX.   PUBLIC PARTICIPATION

69.     This Consent Decree shall be lodged with the Court for a period of not less than

30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States

reserves the right to withdraw or withhold its consent if the comments regarding the Consent

Decree disclose facts or considerations indicating that the Consent Decree is inappropriate,

improper, or inadequate.  Defendants consent to entry of this Consent Decree without further

notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to

challenge any provision of the Decree, unless the United States has notified Defendants in

writing that it no longer supports entry of the Decree.

## XX.   SIGNATORIES/SERVICE

70.     Each undersigned representative of Defendants, CARB, and the Acting Assistant

Attorney General for the Environment and Natural Resources Division of the Department of

Justice certifies that he or she is fully authorized to enter into the terms and conditions of this

Consent Decree and to execute and legally bind the Party he or she represents to this document.

71.     This Consent Decree may be signed in counterparts, and its validity shall not be

challenged on that basis.  Defendants agree to accept service of process by mail with respect to

all matters arising under or relating to this Consent Decree and to waive the formal service

requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any

applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI.   INTEGRATION

72.     This Consent Decree constitutes the final, complete, and exclusive agreement and

understanding among the Parties with respect to the settlement embodied in the Decree and

supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXII.  FINAL JUDGMENT

73.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, CARB, and Defendants.


Dated and entered this ___ day of _____, 2014



_____
UNITED STATES DISTRICT JUDGE

Signature Page to Consent Decree in *United States et al. v. Hyundai Motor Company et al.*

## FOR THE UNITED STATES OF AMERICA:

10/27/14
Date

SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Oct. 30, 2014
Date

JASON T. BARBEAU
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC 20044-7611

Signature Page to Consent Decree in *United States et al. v. Hyundai Motor Company et al.*

**FOR THE UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY**:

10/28/14
Date

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

10/22/14
Date

SUSAN SHINKMAN
Director, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

10/16/2014
Date

PHILLIP A. BROOKS
Director, Air Enforcement Division, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Oct. 15 2014
Date

EVAN BELSER
Attorney Adviser
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC 20460

30

Signature Page to Consent Decree in *United States et al. v. Hyundai Motor Company et al.*

**FOR THE CALIFORNIA AIR RESOURCES BOARD**:

*October 16, 2014*

Date

RICHARD W. COREY
Executive Officer
California Air Resources Board
1001 I Street
Sacramento, CA 95814

Approved as to form:

*Oct 22, 2014*

Date

BARBARA C. SPIEGEL
Deputy Attorney General
California Office of the Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94109

Attorney for Plaintiff California Air Resources Board

Signature Page to Consent Decree in *United States et al. v. Hyundai Motor Company et al.*

**FOR HYUNDAI MOTOR COMPANY:**

2014. 10. 14

Date

CHAE YOUNG RIM
Vice President of Legal Group
Hyundai Motor Company

32

Signature Page to Consent Decree in *United States et al. v. Hyundai Motor Company et al.*

**FOR HYUNDAI MOTOR AMERICA:**

Date

W. GERALD FLANNERY JR.
Executive Vice President & General Counsel
Hyundai Motor America
10550 Talbert Avenue
Fountain Valley, CA 92708

Signature Page to Consent Decree in *United States et al. v. Hyundai Motor Company et al.*

## FOR KIA MOTORS CORPORATION:

2014. 10. 14

Date

CHAE YOUNG RIM
Vice President of Legal Group
Kia Motors Corporation

34

Signature Page to Consent Decree in *United States et al. v. Hyundai Motor Company et al.*

**FOR KIA MOTORS AMERICA:**

*10-10-14*
Date

JOHN YOON
Executive Vice President & General Counsel
Kia Motors America
111 Peters Canyon Road
Irvine, CA 92606-1790

35

Signature Page to Consent Decree in *United States et al. v. Hyundai Motor Company et al.*

**FOR HYUNDAI AMERICA TECHNICAL CENTER, INC.:**

10/9/14
Date

MARK TORIGIAN
General Counsel
Hyundai America Technical Center, Inc.
6800 Geddes Road
Superior Township, MI 48198

# APPENDIX A:
## ADDITIONAL CORRECTIVE MEASURES

Defendants shall undertake additional corrective measures, as specified below, to change their testing and training processes for purposes of certifying their motor vehicles in the United States automotive market pursuant to 40 C.F.R. Part 86. Defendants shall comply with the requirements of this Appendix A and Section VII of the Consent Decree (collectively, "Corrective Measures").

1.    Independent Certification Group

By no later than the Effective Date of the Consent Decree, Defendants shall form an independent certification group ("Independent Group" or "Group") for the purpose of performing and managing Corrective Measures by no later than the dates set forth in this Appendix A. The members of the Independent Group shall have no role in Defendants' vehicle development. At least one representative of the Independent Group shall be from HATCI. The HATCI representative in the Group shall be a HATCI Senior Manager of Certification and Compliance or a direct report to that manager.

2.    Certification Training

By January 1, 2016, the Independent Group shall train all managers, engineers, technicians, contractors and other persons responsible for the certification of motor vehicles for the United States market ("Certification Personnel") in the relevant procedures and methods before they engage in certification testing. Certification Personnel shall receive training sessions on aspects of certification for which they are responsible, which may include one or more of the following sessions:

    (a)    certification (including coastdown) testing;

    (b)    4,000 mile certification vehicle preparation;

    (c)    emission test cell maintenance and calibration procedures;

    (d)    emission regulations; and

    (e)    test data management systems.

After January 1, 2016, the Independent Group shall provide periodic training updates to Certification Personnel.

3.    Establishment of a Certification Testing Program

By January 1, 2016, the Independent Group shall manage, supervise and conduct certification testing. The Independent Group may utilize testing facilities and technicians

assigned to other organizations provided that the Independent Group controls the certification testing.

4.    Obtaining and Testing of the Certification Test Vehicle

By January 1, 2016, the Independent Group shall be responsible for obtaining and testing of the certification test vehicles, specifically:

      (a)    taking custody of the certification vehicles;

      (b)    confirming that the configuration of the certification vehicles is representative of the relevant production vehicles; and

      (c)    testing the certification vehicles.

5.    Review of Certification Test Data for Accuracy

By January 1, 2016, the Independent Group shall confirm the accuracy of all certification test data, including all data submitted to the EPA.

6.    Supervision of Certification Personnel

By January 1, 2016, the Independent Group shall supervise all Certification Personnel, providing appropriate training as prescribed in this Appendix A, and control access to certification vehicles.

7.    Enhanced Data Management and Review of Coast Down Data

By January 1, 2016, the Independent Group shall oversee a centralized database to ensure quality and control of coast down data from testing of the Defendants' vehicles. The Independent Group shall periodically perform a quality check of Defendants' coast down data, including analyzing coast down data from comparable vehicles to determine whether Defendants' data is consistent with results expected for vehicles of that type.

8.    Annual Progress Reports

As specified in Paragraph 19 of Section VII (Corrective Measures) of the Consent Decree, Defendants shall submit annual progress reports that provide information describing the progress toward meeting the requirements of this Appendix A.

9.    Revised Coast Down Testing Protocol

Defendants' first progress report pursuant to Paragraph 19 of Section VII (Corrective Measures) shall include their current written coast down testing protocol and an explanation of the material changes made to the current protocol since November 2, 2012.

10.   <u>Completion Report</u>

No later than April 1, 2018, Defendants shall submit to the Plaintiffs a Corrective Measures Completion Report. The report shall provide sufficient information to verify the completion of the measures in Section VII of the Consent Decree (Corrective Measures) and the additional measures set forth in this Appendix A.

## APPENDIX B:
## COASTDOWN AUDITING OF PRODUCTION VEHICLES

Defendants shall conduct coastdown auditing of production vehicles ("Audit"), as specified below, for model year 2015 and 2016 vehicles to ensure that the road load values for production vehicles conform to the road load values specified in Defendants' applications for Certificates of Conformity.

    1.    <u>Vehicle Auditing</u>

Defendants shall Audit one randomly selected production vehicle from the Projected Highest-Selling Subconfigurations from model year 2015 as follows:

**2015MY Hyundai Vehicles**

- Accent
- Azera
- Elantra
- Equus
- Genesis
- Santa Fe
- Sonata
- Sonata Hybrid
- Tucson
- Veloster

**2015MY Kia Vehicles**

- Cadenza
- Forte
- K900
- Optima
- Optima Hybrid
- Rio
- Sedona
- Sorrento
- Soul
- Sportage

Consistent with the foregoing, Defendants shall Audit one randomly selected production vehicle from the Projected Highest-Selling Subconfigurations from model year 2016 vehicles as follows:

**2016MY Hyundai Vehicles**

- Accent
- Azera
- Elantra
- Equus
- Genesis
- Santa Fe
- Sonata
- Sonata Hybrid
- Sonata Plug-in Hybrid
- Tucson
- Veloster

**2016MY Kia Vehicles**

- Cadenza
- Forte
- K900
- Optima
- Optima Hybrid
- Rio
- Sedona
- Sorrento
- Soul
- Sportage

Defendants shall complete the Audit of model year 2015 and 2016 vehicles by no later than the end of the calendar year for which the audited model year is named.

In addition to the vehicles listed above, Defendants shall Audit one randomly selected production vehicle from the Projected Highest-Selling Subconfiguration from any and all groups of model year 2015 and 2016 vehicles that are not included in the lists above.

Each Audit shall assess how each production vehicle's road load force compares to that which was described in the application for the Certificate of Conformity covering that particular subconfiguration.

2.      Selection of Audit Vehicles

Defendants shall conduct the auditing required by this Appendix B on production vehicles procured from Hyundai or Kia. After Defendants receive a production vehicle, Defendants shall ensure that the vehicle's tire specifications, ride height, weight and wheel alignment conform to the design specifications for such vehicle, and that the vehicle is in the condition and adjustment recommended by the manufacturer for normal operation. The production vehicle must be aged with approximately 4,000 miles. A hybrid and plug-in hybrid production vehicle must be aged with approximately 3,000 to 10,000 miles.

3.    Audit Testing Procedures

Defendants shall perform each coastdown Audit according to the same protocol used for purposes of obtaining an EPA Certificate of Conformity for that subconfiguration, and in a manner consistent with the Defendants' revised Coast Down Testing Protocol used under Appendix A. Defendants shall ensure that the Audits are performed in the United States and that the specific personnel performing these Audits do so without knowledge of the coastdown test results contained in the vehicle certification applications.

4.    Test Track

Defendants shall conduct the coastdown Audit on a test track meeting the requirements of SAE J2263.

5.    Submission of Reports

Defendants shall provide the test data and a summary report on the results of all Audit tests (collectively, "summary report") directly to EPA's OTAQ as specified in Section XIV (Notices) by no later than August 31 of the calendar year for which the audited model year is named for vehicles audited from January 1 to June 30, and by no later than February 28 of the calendar year following the named audited model year for vehicles audited from July 1 to December 31.  Defendants must provide the following information for each test:

(1) The make and model of the vehicles tested;
(2) The vehicle identification number and engine serial number for the vehicles tested;
(3) A description of the applicable model/subconfiguration parameters (including carline, equivalent test weight, road-load horsepower, axle ratio, engine code, transmission class, transmission configuration and basic engine);
(4) Any steps Defendants took to modify the production vehicles tested to ensure that the vehicle's tire specifications, ride height, weight and wheel alignment conform to the design specifications for such vehicles;
(5) The date and time of testing;
(6) The mileage of the vehicles at the start of the coastdown test;
(7) The ambient temperature at the start and finish of the test; and
(8) The raw coastdown data from each coastdown test and the associated road load values from the Audit testing.

Where appropriate, as provided in the Consent Decree, Defendants may label the summary report/data as Confidential Business Information.