# EXHIBIT 6

# Annual Report and Form 20-F 2013

bp.com/annualreport



EXHIBIT
12303A
DL 7/2/14



bp



Building a stronger, safer BP

CONFIDENTIAL

BP-HZN-2179MDL07816849

## Legal update

BP is subject to a number of different legal proceedings in connection with the Deepwater Horizon incident. These include the legal proceedings relating to the PSC settlements; the multi-district litigation proceedings in New Orleans; a range of civil lawsuits, including claims brought by states and local government entities; other civil claims by individuals and businesses; and the multi-district litigation proceedings in Houston in relation to alleged violations of securities legislation. In 2012, BP reached a settlement with the US Department of Justice relating to all federal criminal charges and a settlement with the SEC resolving certain civil claims. Certain BP entities have been subject to suspension and debarment by the US Environmental Protection Agency (EPA).

### PSC settlements

There have been various rulings from the district court and the US Court of Appeals for the Fifth Circuit (Fifth Circuit) on matters relating to interpretation of the PSC economic and property damages settlement agreement, including the meaning of the causation requirements of the agreement.

In 2013 a panel of the Fifth Circuit (the business economic loss panel) set aside the claims administrator's interpretation of the business economic loss framework of the settlement agreement and instructed the district court in New Orleans to undertake additional proceedings to determine the correct interpretation of the agreement. In December 2013, the district court ruled that, for the purposes of determining business economic loss claims, revenues must be matched with expenses incurred by claimants in conducting their business even where the revenues and expenses were recorded at different times. The district court assigned the development of more detailed matching requirements to the claims administrator. The claims administrator has issued a draft policy addressing the matching of revenue and expenses for business economic loss claims. The parties have made written submissions on the draft policy and the claims administrator will issue a final policy to which BP and the PSC have the right to object and seek review by the district court.

The district court also ruled that the settlement agreement did not contain a causation requirement beyond the revenue and related tests set out in an exhibit to that agreement. BP appealed the district court's ruling on causation to the business economic loss panel, but the panel affirmed the district court's ruling on 3 March 2014. BP is considering its appeal options, including a potential petition that all the active judges of the Fifth Circuit review the 3 March decision. The temporary injunction on business economic loss claims offers and payments will be lifted when the case is transferred back to the district court; the timing of this would be affected by the status of any such petition by BP.

A separate but related appeal was brought by objectors to the economic and property damages settlement challenging the overall fairness and lawfulness of the agreement. This appeal was heard by a different panel of the Fifth Circuit, which, in January 2014, upheld the district court's approval of the settlement agreement and left to the business economic loss panel the question of how to interpret the agreement, including the meaning of the agreement's causation requirements. BP and several of the objectors have filed petitions requesting that all the active judges of the Fifth Circuit review the decision to uphold the approval of the settlement.

BP has filed a lawsuit alleging that it relied on fraudulent representations by a former PSC lawyer when negotiating aspects of the PSC settlement relating to the $2.3-billion seafood compensation fund. The district court granted the lawyer's motion to stay this lawsuit, pending developments in the government's criminal investigation and possible indictment. The district court also denied BP's motion requesting that further payments from the seafood compensation fund be suspended on the basis that no further payment from the fund is imminent. The district court deferred ruling on a motion by BP seeking to determine the extent of the fraud and what portion, if any, of the seafood fund should be returned as a result.

### Multi-district litigation proceedings in New Orleans

The multi-district litigation trial relating to liability, limitation, exoneration and fault allocation (MDL 2179) began in the federal district court in New Orleans in February 2013. The first phase of the trial focused on the causes of the accident and the allocation of fault among the defendants. The second phase focused on efforts to stop the flow of oil and the volume of oil spilled. BP is not aware of the timing of the district court's rulings in respect of these first two phases of the trial and the court could issue its decision at any time.

In a subsequent trial phase, for which no trial date has yet been set, the district court will consider the statutory per-barrel penalty rate to be applied in determining penalties under the Clean Water Act. There is significant uncertainty about the amount of Clean Water Act penalties to be paid, and the timing of payment, as these will depend on the finding as to negligence or gross negligence, the volume of oil spilled and the application of statutory penalty factors. The district court has wide discretion in its determination as to whether a defendant's conduct involved negligence or gross negligence as well as in its determinations on the volume of oil spilled and the application of statutory penalty factors.

### Civil claims

BP p.l.c., BP Exploration & Production Inc. (BPXP – the BP group company that conducts exploration and production operations in the Gulf of Mexico) and various other BP entities have been among the companies named as defendants in approximately 2,950 civil lawsuits resulting from the accident and oil spill, including the claims by several states and local government entities referred to above. The majority of these lawsuits assert claims under OPA, as well as various other claims, including for economic loss and real property damage, and claims under maritime law and state law. These lawsuits seek various remedies including economic and compensatory damages, punitive damages, removal costs and natural resource damages. Many of the lawsuits assert claims excluded from the PSC settlements, such as claims for recovery for losses allegedly resulting from the 2010 federal deepwater drilling moratoria and the related permitting process. Many of these lawsuits have been consolidated with the multi-district litigation proceedings in New Orleans.

### Multi-district litigation proceedings in Houston

The MDL 2185 proceedings pending in federal court in Houston, including a purported class action on behalf of purchasers of American Depository Shares under US federal securities law, are continuing. A jury trial is scheduled to begin in October 2014.

### SEC settlement

In connection with the 2012 settlement with the SEC resolving the SEC's Deepwater Horizon-related civil claims, as of 31 December 2013, BP had completed its first two payments totalling $350 million. A final $175 million payment, plus accrued interest, is scheduled for 2014.

### US government criminal plea agreement

Under the terms of the criminal plea agreement reached with the US government in 2012 to resolve all federal criminal claims arising out of the Deepwater Horizon incident, BP is taking additional actions, enforceable by the court, to further enhance the safety of drilling operations in the Gulf of Mexico. The first annual update on BP's compliance with the plea agreement is expected to be available by 31 March 2014 and to be published at *bpxpcompliancereports.com*.

The plea agreement also provides for the US government to appoint two independent monitors – a process safety monitor and an ethics monitor – as well as an independent third-party auditor. The process safety monitor has been retained, for a period of up to four years from February 2014, and will review and provide recommendations concerning BPXP's process safety and risk management procedures for deepwater drilling in the Gulf of Mexico. The ethics monitor has been retained, for a term of up to four years from 2013, and will review and provide recommendations concerning BP's ethics and compliance programme. The third-party auditor has also been retained and will review and report to the probation officer, the US government and BP on BPXP's compliance with the plea agreement's implementation plan.

### US Environmental Protection Agency (EPA) suspension and debarment

In November 2012, the EPA suspended BP p.l.c., BPXP and other BP companies from receiving new federal contracts or renewing existing ones. In 2013, the EPA debarred the Houston headquarters of BPXP, thus effectively preventing it from entering into new contracts or leases with the US government. In November 2013, the EPA continued the suspensions of the previously suspended companies, suspended two new BP entities and proposed discretionary debarment of all suspended BP entities. BP is challenging the EPA's suspension and debarment decisions. Neither the suspensions nor the proposed debarments affect existing contracts BP has with the US government, including those relating to current and ongoing drilling and production operations in the Gulf of Mexico. BP

CONFIDENTIAL

BP-HZN-2179MDL07816891