UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | Mag. Judge Shushan |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

MEMORANDUM IN SUPPORT OF MOTION OF THE SPECIAL MASTER
FOR RETURN OF PAYMENTS MADE TO JIMMY SHOEMAKER, JR.

Special Master Louis J. Freeh seeks to have claimant Jimmy Shoemaker, Jr. ("Shoemaker") return $168,692 that the Deepwater Horizon Economic Claims Center ("DHECC") paid to him.  Shoemaker presented the DHECC with forms asserting that he amended his 2008 and 2009 tax returns because he had left the first digit off of his seafood revenue both years.  He thus said he should have reported $44,480 of 2009 seafood revenue — not $4,840 as originally claimed to the IRS.  And in 2008, he claimed that his seafood revenue should have been $44,550 instead of $4,550 as originally claimed in his 2008 tax return filed with the Internal Revenue Service ("IRS").  In fact, Shoemaker never filed the "amended returns" with the IRS, but apparently created the documents solely to support his fictitious claims for lost shrimp revenue.

The Special Master seeks a judgment requiring Shoemaker to return all of the money the DHECC paid to him on his shrimp boat captain and shrimp vessel owner claims, and prohibiting Shoemaker from participating in any further seafood distributions.

The pre-filing conference with Shoemaker's counsel resulted in counsel repaying $42,173 to the DHECC Trust Fund (representing the contingency fee that counsel received), but has not resolved the issues presented in this motion.

### A. *Background*

By order of September 6, 2013, this Court directed the Special Master to examine and investigate past or pending claims submitted to the DHECC which are deemed to be suspicious, and to initiate clawback proceedings of fraudulent claims. This Court retains continuing and exclusive jurisdiction over the Deepwater Horizon Economic and Property Damages Settlement Agreement (the "Settlement Agreement"), including supervision and oversight activities to ensure the integrity of the DHECC. *See* Settlement Agreement at ¶¶ 4.3.2, 4.3.10, 4.4.7 and 18.1. Disputes concerning enforcement of the Settlement Agreement are to be resolved by motion to the Court. *Id.* at ¶ 18.1.

### B. *Shoemaker's DHECC Claims*

On June 16, 2012, Shoemaker filed claims under penalty of perjury with the DHECC, seeking application of the expedited compensation method for his shrimp vessel owner and shrimp boat captain claims for a 17-foot vessel known as the *Shell Shocked. See* Ex. A. Shoemaker designated 2009 as his benchmark year, and asked that his claim be calculated using his tax records and other financial statements. *Id.*

Under the expedited compensation method available to shrimp vessel owners and shrimp boat captains, a claim's value is determined from set figures based upon the claimant's vessel size and the "qualifying vessel revenue." Because Shoemaker claimed a 17-foot vessel, he needed to demonstrate $32,500 in shrimping revenue to benefit from the enhanced recoveries contemplated under the expedited compensation method. *See* Settlement Agreement at Ex. 10 ¶ (I)(A)(1)(b). If he met the revenue threshold, Shoemaker would qualify for $104,063 for a vessel owner claim and $92,813 for a boat captain claim.

*Id.* at ¶¶ (I)(C)(1), (I)(C)(2).  If he did not meet the threshold, any compensation would be determined using other seafood claim compensation methods.

In support of his claims, Shoemaker submitted documents as discussed below.

1. <u>Seafood Income Documentation</u>

On August 16, 2012, Shoemaker's counsel submitted a Seafood Compensation Plan Sworn Written Statement for Sufficient Documentation of Benchmark Revenue ("SWS-1") electronically signed by Shoemaker, representing that Shoemaker landed $44,840 in shrimp in the Gulf Coast Areas in 2009.  *See* Ex. B.  Shoemaker submitted an undated and unsigned Form 1040X, which purportedly amended his 2009 Form 1040.  *See* Ex. C.  Shoemaker explained that the amendment was needed because his "[o]riginal return did not reflect all income received from Commercial Shrimping and Fishing," and that he left a digit off of his income, so that he should have reported $44,480 in seafood revenue, not $4,840 as he originally reported.  *Id.*  On the Form 1040X, Shoemaker further explained that while he originally reported $753 in fuel and oil expenses, he left a digit off of that number as well, so his actual fuel and oil expense for 2009 were $3,753.  *Id.*

Shoemaker submitted an additional undated and unsigned Form 1040X, which purportedly amended his 2008 Form 1040 because his "[o]riginal return did not reflect all income received from Commercial Shrimping and Fishing."  *See* Ex. D.  He explained that he claimed $4,550 in shrimping revenue on his original 2008 Form 1040, but — just as he had done in 2009 — he left a digit off of his reported revenue in 2008 so that he should have reported $44,550 in seafood revenue.  *Id.*  He further explained that while he reported $688 in fuel and oil expenses, he left a digit off of that number as well, so that he should have reported fuel and oil expenses of $3,688.  *Id.*

3

### 2. DHECC Payments

On September 5, 2012, the DHECC sent eligibility notices to Shoemaker indicating that he qualified for expedited compensation and was eligible for a payment of $92,813 for his shrimp boat captain claim and $104,063 for his shrimp vessel owner claim. On October 11, 2012, the DHECC paid Shoemaker a total of $168,692 on these claims, after deducting amounts Shoemaker previously received.

Shoemaker's counsel received $42,173, representing 25 percent of the DHECC funds paid to Shoemaker. Counsel has repaid these fees in full to the DHECC Trust Fund.

### C. *Evidence of Shoemaker's Fraudulent Claims*

The totality of the investigative record shows that there is no genuine issue as to any material fact and that the Special Master and the DHECC are entitled to a judgment as a matter of law. *See* Order & Reasons on Special Master's Motion for Return of Payment at 19 (Doc. Rec. 12794) (Apr. 29, 2014) (hereinafter "Order & Reasons"). Drawing an analogy to the procedures used by federal courts to determine summary judgment motions, a genuine issue of fact exists only where competent evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). No such doubt as to material facts exists in this case, and judgment against Shoemaker is appropriate as explained below.

### 1. Shoemaker Presented Fraudulent Tax Documents to the DHECC

Shoemaker established his eligibility for the expedited compensation method through submission of a Form 1040X, purportedly amending the seafood revenue reported

4

on his 2009 Form 1040. Shoemaker claimed that he had left a digit off of his revenue, which should have been $44,480 instead of $4,840 as originally reported to the IRS. The "amended return" brought Shoemaker over the $32,500 shrimping revenue threshold required for him to be eligible to receive the enhanced recoveries provided by the expedited compensation method.

IRS records provided to the DHECC with Shoemaker's consent, however, reflect that Shoemaker neither filed the 2009 or 2008 amended tax forms with the IRS, nor paid the additional taxes reflected on these forms. *See* Ex. E. Shoemaker is well aware of the requirement for filing documents with the IRS, as he had timely filed his tax returns for the tax years 2008, 2009, 2010 and 2011. *Id*.; *Coney*, 689 F.3d at 375-76 (non-payment of taxes and failure to file tax returns indicate deliberate choice not to fulfill tax obligation).

2.  No Other Evidence Supports Shoemaker's Claims

Shoemaker did not present any other documentation to support his claim. While Shoemaker submitted a SWS-1 representing that he landed $44,840 in shrimp in the Gulf Coast Areas in 2009, he produced no contemporaneous third-party records to validate this representation such as trip tickets for shrimp sales or expense receipts from his shrimping expenses. *See* Settlement Agreement at Ex. 10 I.B.1; IB.2. In fact, the DHECC could find no trip tickets for any shrimp sales by Shoemaker for the relevant period of time.

The only evidence produced by Shoemaker were trip tickets showing some oyster sales and a summary sheet from Pass Purchasing recording oysters sales from 2010 and 2011. Investigators working for the Special Master interviewed the Pass Purchasing office manager, who searched the electronic records of the company and found no transactions with Shoemaker from January 2006 through October 2010. Starting in November 2010,

5

Shoemaker sold oysters to Pass Purchasing, but there were no records indicating any shrimp sales by Shoemaker.  An interview at another seafood wholesaler near Pass Purchasing revealed a wholesaler who said she knew Shoemaker owned an oyster tonging boat, but she never knew him to own a shrimping boat or to be a shrimper.

### D. *Legal Analysis*

1. Shoemaker Should Return All Funds Paid by the DHECC for His Fraudulent Seafood Compensation Claims

The Court's power to order equitable remedies as a result of fraudulent conduct is a broad, flexible and long-standing power.  *See Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 244 (1944) (affirming judicial power to set aside fraudulently begotten judgments as such cases present "a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society"); Order & Reasons at 21.

Here, the record unquestionably reveals that Shoemaker knowingly presented false information to the Court-supervised DHECC to obtain $168,692 from the Deepwater Horizon Trust.  Shoemaker provided the DHECC with a SWS-1 and tax documents that apparently were created solely to support fictitious claims for lost shrimp revenue.  Shoemaker produced no contemporaneous third-party records to validate his claims, or to even indicate that he was a commercial shrimper.  Taken together, these factors indicate that Shoemaker's seafood compensation claims were fraudulent.

Given the evidence of fraud, the Special Master seeks an order requiring Shoemaker to return payments made on his DHECC seafood claims.  The return of these payments will make the DHECC whole for its loss, deprive Shoemaker of an unjust enrichment and deter others from engaging in similar misconduct.  *See* Order & Reasons at 22.

### E. *Conclusion*

For the reasons stated in this memorandum, the Special Master seeks entry of a judgment requiring Shoemaker to make restitution to the DHECC for $168,692 paid by the DHECC in reliance on Shoemaker's false representations, less the $42,173 Shoemaker's counsel already has repaid to the DHECC Trust Fund. The Special Master further seeks an order prohibits Shoemaker from participating in any further seafood distributions.

                Respectfully submitted,

                ____/s/ Louis J. Freeh_____
                Louis J. Freeh
                Special Master

Dated: December 10, 2014