# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | § | MDL-2179 |
| "DEEPWATER HORIZON" | § | |
| in the GULF OF MEXICO, on | § | |
| APRIL 20, 2010 | § | SECTION "J" |
| | § | |
| THIS DOCUMENT RELATES TO: | § | JUDGE BARBIER |
| | § | MAG. JUDGE SHUSHAN |
| Case Nos. 10-4182, 10-4183, 13-2645, | § | |
| 13-2646, 13-2647, & 13-2813 (Alabama), | | |
| and Nos. 10-3059 & 11-0516 (Louisiana) | | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### THE STATE OF LOUISIANA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING LOUISIANA LEAVE TO FILE AN AMICUS CURIAE BRIEF IN THE ALABAMA ECONOMIC DAMAGES CASE

TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................... 3

A.   *Limited Scope of Louisiana's Motion* .......................................................................... 3

Participation in the Alabama Economic Damages Case Only ........................................ 3

B.   *Louisiana's Interest in Legal Issues that May Arise in the Alabama Economic Damages Case* 4

1.   Party status or standing is not required .................................................................. 4

2.   Louisiana has a strong interest in the subject-matter of Alabama's motion ................... 4

3.   Louisiana could have sought to intervene in lieu of participating as an amicus curiae ........ 5

4.   Amicus curiae status is the least intrusive way to permit Louisiana to be heard on questions of law that affect its sovereign interests, which are afforded "special solicitude" in federal court .......... 6

C.   *Louisiana's Motion Was Timely* .................................................................................. 7

1.   The Federal Rules of Appellate Procedure do not govern the submission of amicus curiae briefs in district court ........................................................................................ 7

2.   Louisiana filed its motion as promptly as possible after it learned the basis for its interest in Alabama's motion, and the circumstances of this case weigh in favor of permitting the State to participate as an amicus curiae ............................................................................... 8

3.   Even under the authorities governing the timeliness of a motion to intervene, Louisiana's motion is timely .............................................................................................. 10

D.   *Practical considerations favor reconsideration of the order denying Louisiana amicus curiae status* ................................................................................................................ 13

1.   Issue likely to arise again ................................................................................ 13

2.   Preservation of the State's right to be heard ....................................................... 13

Conclusion ........................................................................................................... 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

The State of Louisiana, through James D. "Buddy" Caldwell, Louisiana Attorney General ("Louisiana" or "State"), respectfully moves for reconsideration of the Court's order of December 5, 2014, [Rec. Doc. 13775], denying the State leave to file an amicus curiae brief in the Alabama Economic Damages case with respect to the State of Alabama's motion to dismiss and/or strike defendants' set-off claims or defenses (hereinafter "Alabama's motion to strike defendants' offset requests").

The State of Louisiana initially filed its Motion for Leave to file its proposed amicus curiae brief on December 1, 2014, in the Alabama Economic Damages case that is currently proceeding before this Court. [Rec. Doc. 13736].  On December 5, 2014, this Court denied the State's request, stating that "Louisiana is not a party to the Clean Water Act Penalty Phase Trial and lacks standing in this trial.  Furthermore, the Court finds Louisiana's proposed brief to be untimely, unnecessary and unhelpful."  Order (Dec. 5, 2014) [Rec. Doc. 13775].  The State's proposed amicus brief was related to BP's purported defense against the economic damage claims asserted by the State of Alabama, not the Clean Water Act Penalty Phase trial (hereinafter "Penalty Phase trial").  As a precautionary measure, Louisiana submits this Motion to clarify that it only seeks to participate in the Alabama Economic Damages case as amicus curiae at this time and, accordingly, to request reconsideration of the Court's order.

In support, Louisiana offers the following grounds for reconsideration.

**A.**     ***Limited Scope of Louisiana's Motion***

Participation in the Alabama Economic Damages Case Only

First, Louisiana clarifies that the State did not seek to participate as an amicus curiae in the Penalty Phase trial (Case No. 10-4536).  Instead, Louisiana sought to file its amicus brief solely with respect to Alabama's motion to strike defendants' offset requests in the Alabama

Economic Damages case (Case Nos. 10-4182, 10-4183, 13-2645, 13-2646, 13-2647, & 13-2813). Louisiana respectfully submits that its proposed amicus brief is directly relevant to Alabama's motion to strike defendants' offset requests in the Alabama Economic Damages case, and that the brief may assist the Court's resolution of that motion by providing Louisiana's distinct perspective on the identical legal question presented.

**B.** ***Louisiana's Interest in Legal Issues that May Arise in the Alabama Economic Damages Case***

1. Party status or standing is not required

Second, to the extent that the Court's order suggested that Louisiana must be a party or have Article III standing to participate as an amicus curiae, Louisiana respectfully requests reconsideration.  Louisiana acknowledges that it is currently is not a party to the Alabama Economic Damages case.  Louisiana sought amicus curiae status because Alabama's motion to strike defendants' offset requests mirrors issues that Louisiana expects to arise in its own economic and natural resource damages cases, which are pending in this Court.  (Case Nos. 10-3059 & 11-0516.)   Amici curiae generally are nonparties and do not require standing to participate other than an interest in the subject-matter of the trial.  *See, e.g.*, *Morales v. Turman*, 820 F.2d 728, 732 (5th Cir. 1987) (citing *Miller-Wohl Co. v. Comm'r of Labor & Indus. State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982)) ("Amici are not parties to the litigation.").  Under Fifth Circuit law, even intervenors—who, unlike amici, *are* considered parties—need not meet the requirements of the standing doctrine to participate in trial.  *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998).

2. Louisiana has a strong interest in the subject-matter of Alabama's motion

Third, Louisiana submits that it has a strong interest in the subject-matter and legal rulings of the Alabama Economic Damages case sufficient to support, at a minimum,

4

participation as an amicus curiae.  Because the Court would be ruling on matters of law in the Alabama Economic Damages case that could reasonably be said to affect Louisiana's rights on identical matters of law in its own trial, Louisiana thought it prudent to supply the Court with its input as a friend of the Court.  Certainly, Louisiana has an interest in Alabama's motion to strike defendants' offset requests, as set forth in Louisiana's proposed amicus curiae brief.  (See Doc. No. 13736-1.)  Both States maintain that they are entitled to sovereign immunity with respect to defendants' counterclaims or set-off "defenses" under the Oil Pollution Act ("OPA"), 33 U.S.C. §§ 2701-61.  BP has indicated that it will assert such counterclaims or defenses against both Louisiana and Alabama.

3.   <u>Louisiana could have sought to intervene in lieu of participating as an amicus curiae</u>

Louisiana sought to proceed as an amicus curiae because the State felt that it would be less potentially disruptive to the Alabama Economic Damages case than full intervention. Nevertheless, Louisiana has a strong interest in the subject-matter of the Alabama Economic Damages case above and beyond that of a typical amicus curiae.  *Cf. Liberty Res., Inc. v. Phila. Hous. Auth.*, 395 F. Supp. 2d 206 (E.D. Pa. 2005) (granting public housing residents' advocacy group leave to participate in ADA suit, brought by disability rights advocacy group, and conferring "amicus 'plus' status" because the amici had a "special interest" in ensuring that rights of nonparty, non-disabled section 8 tenants were represented in action).  Indeed, the State submits that it could have sought formal intervention under Federal Rule of Civil Procedure 24, because the State "claims an interest relating to the . . . transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest[,]" Fed. R. Civ. P. 24(a)(2), namely, the contours of States' rights to compensatory

damages under OPA and other prevailing environmental protection laws.  The State, at the very minimum, "has a claim or defense that shares with the main action a common question of law or fact[,]" *id.* R. 24(b)(1)(B), namely, a claim for economic and natural resource damages under OPA that defendants contend should be offset by virtue of defendants' various grants and memoranda of understanding issued in the wake of the *Deepwater Horizon* disaster.

4.  <u>Amicus curiae status is the least intrusive way to permit Louisiana to be heard on questions of law that affect its sovereign interests, which are afforded "special solicitude" in federal court</u>

As noted above, Louisiana sought amicus status in the Alabama Economic Damages case, because it felt it would be less potentially disruptive than full intervention.  Participation as an amicus curiae is a minimally intrusive safety valve ensuring the State's opportunity to be heard on key legal issues short of formal intervention.  *See Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) ("In acting on a request for permissive intervention, it is proper for the court to consider the fact that the Association has been granted amicus curiae status in this case. . . . 'Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.'  We believe that, in a case such as this, the position of amicus, which the Association already possesses, is more appropriate than an intervention with full-party status." (citations omitted)); *see also Hopwood v. Texas*, 21 F.3d 603, 605-06 (5th Cir. 1994) (affirming the district court's order denying civil rights groups' motion to intervene because, among other reasons, the civil rights groups had been permitted to serve as amici curiae and could assist the court and parties in that capacity).

Permitting the State an opportunity to be heard as an amicus curiae with respect to issues that concern its sovereign interests and important state issues is consistent with federalism and the "special solicitude" to which states are entitled.  *See Massachusetts v. E.P.A.*, 549 U.S. 497,

520 & n.17 (2007) (explaining, in a Clean Air Act case, that "[g]iven . . . Massachusetts' stake in protecting its quasi-sovereign interests, the Commonwealth is entitled to special solicitude in our standing analysis" and citing a long line of cases "permitting States 'to litigate as *parens patriae* to protect quasi-sovereign interests—*i.e.*, public or governmental interests that concern the state as a whole'" in a federal forum, citing state sovereignty and federalism concerns (citation omitted) (collecting authorities)).

Louisiana continues to prefer that it be granted leave to be heard as an amicus curiae rather than resorting to a motion to intervene in the Alabama Economic Damages case. Either way, Louisiana has a right to be heard on questions of law that affect it. Amicus curiae status is the least intrusive way to permit Louisiana to be heard on questions of law common to the Alabama and Louisiana economic damages cases that implicate both States' sovereign interests.

C. **Louisiana's Motion Was Timely**

1. The Federal Rules of Appellate Procedure do not govern the submission of amicus curiae briefs in district court

The time limits, brief formatting requirements, and page limits set forth in the Federal Rules of Appellate Procedure, including those in Federal Rule of Appellate Procedure 29 (governing amicus briefs on appeal), do not apply in district court. *See* Fed. R. App. P. 1(a)(1) ("These rules govern procedure in the United States courts of appeals."). For example, it is beyond dispute that the Federal Rules of Appellate Procedure governing the filing and services of papers, *id.* R. 25, computing and extending time to file, *id.* R. 26, filing motions, *id.* R. 27, filing briefs, *id.* R. 31, and the content, format, length, and timing of briefs, *id.* Rules 28, 32, do not apply in district court. The time limits set forth in Rule 29(a) do not apply, either. *See id.* R. 1(a)(1). As such, defendants are incorrect to contend that Louisiana's brief is untimely or otherwise not in compliance with Rule 29. Rather, the Federal Rules of Civil Procedure and the

Local Civil Rules of the United States District Court for the Eastern District of Louisiana govern. *See, e.g.*, L.R. 5 (governing service and filing of pleadings and other documents); L.R. 7 (governing pleadings allowed and form of motions).

There is no fixed time by which an amicus brief must be filed in district court. *Cf.*, *e.g.*, *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136-37 (D.D.C. 2008) (citing *Smith v. Chrysler Fin. Co., L.L.C.*, No. 00-6003, 2003 WL 328719, at *8 (D.N.J. Jan. 15, 2003) (collecting cases), and *Sierra Club v. Fed. Emergency Mgmt. Agency*, No. H-07-0608, 2007 WL 3472851, at *3 (S.D. Tex. Nov. 14, 2007) (finding no statute, rule or controlling case defining a federal district court's power to grant or deny leave to file amicus brief)).  This is similar to the federal rule governing intervention, which does not impose a firm limit on the time in which to intervene, providing only that an applicant to intervene must do so "[o]n timely motion[.]"  Fed. R. Civ. P. 24(a), (b).

2.  <u>Louisiana filed its motion as promptly as possible after it learned the basis for its interest in Alabama's motion, and the circumstances of this case weigh in favor of permitting the State to participate as an amicus curiae</u>

Louisiana's motion for leave to file its amicus curiae brief was timely under the circumstances.  Louisiana filed its motion as soon as it reasonably could after learning the basis for its interest in the Alabama Economic Damages case when Alabama filed its motion to strike defendants' offset requests.  The State filed its motion and proposed amicus brief [Rec. Doc. 13736 (Dec. 1, 2014)] within mere weeks of the dates on which Alabama filed its motion [Rec. Doc. 13513 (Oct. 17, 2014)] and on which BP and HESI filed their briefs in opposition [Rec. Docs. 13616 & 13620 (Nov 4, 2014)].  *Cf. Sierra Club v. Espy*, 18 F.3d 1202, 1205-06 (5th Cir. 1994) (approving intervention following two-month delay in filing motion to intervene). Louisiana could not have decided on the need to file an amicus brief until the briefing of the

parties was filed and reviewed.  In particular, BP's brief in opposition revealed that BP was asserting arguments in favor of its offset claims or "defenses" that, if accepted by this Court, might apply equally to Alabama as to Louisiana.  Moreover, Alabama's reply brief [Rec. Doc. 13640 (Nov. 12, 2014)] reflected some factual differences between the Alabama grants and the Louisiana grants, further demonstrating to Louisiana that its input would not duplicate Alabama's submissions and would offer a distinct perspective on the same legal issue.  Louisiana filed its brief promptly under the circumstances.  *See Sierra Club*, 18 F.3d at 1205 ("The analysis is contextual; absolute measures of timeliness should be ignored.").

Moreover, "[t]he requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor"—or, as Louisiana submits, a proposed amicus curiae—"but rather a guard against prejudicing the original parties by the failure to apply sooner."  *Id.*  Granting the State's Motion would not prejudice the parties or materially delay the Court's disposition of Alabama's motion.  All that remains would be a formal opposition from the defendants, should they choose to file one.  Louisiana, though, would suffer significant prejudice if it were denied the opportunity to participate in proceedings on questions of law that will affect its economic damages case.  *See id.* at 1204-07; *see also, e.g.*, *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 828-29 (5th Cir. 1967) (holding that *stare decisis* may cause impairment of would-be intervenor's interests and observing that "failure to allow [it] an opportunity to advance its own theories both of law and fact [may] . . . as a practical matter impair or impede its ability to protect its interest" and that "the intellectually straight forward, realistic view [is] that the first decision will in all likelihood be the second and the third and the last one" (internal quotation marks and alterations omitted)).  Louisiana would not be able to obtain the same degree of participation as an intervenor or amicus curiae on appeal as it would before this Court.  *See*

*Sierra Club*, 18 F.3d at 1207.   Finally, Louisiana has an "obvious" economic interest at stake, *see Sierra Club*, 18 F.3d at 1207, and, further, the unusual, sovereign nature of Louisiana's interests at stake in this matter militates in favor of granting the State amicus curiae status. *See id.* at 1205-07; *see also City of San Antonio*, 115 F.3d at 315.

In sum, Louisiana's motion and brief were timely filed and the facts and circumstances of this matter weigh in favor of allowing the State to participate as an amicus curiae.

> 3.   <u>Even under the authorities governing the timeliness of a motion to intervene, Louisiana's motion is timely</u>

In the similar context of a motion to intervene under Rule 24, "[d]etermining the timeliness of [the] motion . . . entails consideration of four factors: (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely." *Sierra Club*, 18 F.3d at 1205.

"The analysis is contextual; absolute measures of timeliness should be ignored." *Id.* "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Id.*  Federal courts should allow intervention "where no one would be hurt and greater justice could be attained." *Id.*  Even where courts have found a State's motion to intervene to be untimely, they have given great weight to the State's need to participate to protect its sovereign interests, in particular when the litigation affected the State's environmental resources. *See*

*Georgia v. U.S. Army Corps of Engineers*, 223 F.R.D. 691, 696 (N.D. Ga. 2004) (granting, in Georgia's suit against the Corps seeking to increase its water supply, Alabama's motion to intervene, even though motion was untimely, because Alabama, as a downstream riparian State, had an interest in the allocation of water from the shared source and was unable to adequately protect its interest without participating), *aff'd on appeal taken on other grounds*, 144 F. App'x 850 (11th Cir. 2005).

The facts and reasoning of *Sierra Club* are illuminating here.  In *Sierra Club*, the plaintiffs, several environmentalist groups, initiated suit against the United States Forest Service in 1985 to challenge certain forestry practices in Texas.  18 F.3d at 1203-04.  Litigation continued for several years and culminated in the district court's order of a permanent injunction. *Id.* at 1204.  In 1993, the Forest Service issued a letter to prospective timber purchasers notifying them of certain changes that would take place due to the injunction, which prompted several timber trade associations to move to intervene.  *Id.*  The district court denied the motion, and the Fifth Circuit, in a published summary calendar opinion, reversed and held that the groups satisfied the requirements for intervention as of right.  *Id.* at 1204-05 & n.2.

The Fifth Circuit held that the motion was timely even though it was filed eight years after the suit's commencement and followed several years of litigation and appeals, because the groups promptly moved to intervene once their interest in the case became apparent, *i.e.*, within two months of receiving notice that their interests may be affected by the litigation.  *Id.* at 1205-06.  Second, the court reasoned that intervention would not severely protract the litigation or cause unnecessary duplication of efforts.  *Id.* at 1206.  Third, the court reasoned that the groups would be prejudiced if denied the opportunity to participate in the trial, even though they could still intervene on appeal, because "intervention in the appeal of the district court's preliminary

11

injunction cannot adequately substitute for intervention at the district court level, as many more issues are at stake in the district court than the single issue now on appeal" and, moreover, because it was "obvious that the economic interests of the movants [were] at stake." *Id.* at 1207.

Similar, here, as discussed above (*supra* part C.2), the same considerations weigh in favor of finding Louisiana's motion to participate as amicus curiae to be timely. The participation of amici curiae and the participation of intervenors have similar functions: to protect the rights and interests of third parties interested in the subject-matter of a pending case. Similar considerations motivate the procedures for allowing both types of third-party participants. *See, e.g.*, *Bush*, 740 F.2d at 359; *Miller-Wohl*, 694 F.2d at 204. Authorities in the Fifth Circuit with respect to the timeliness of a motion to intervene are helpful in assessing the timeliness of a motion to participate as an amicus curiae, especially where, as here, the movant is a sovereign state with an interest similar or equal to that of a formal intervenor. *See supra* parts B.2-4; *see also* Fed. R. Civ. P. 24(a)(2), (b)(1)(B); *cf.* Fed. R. App. P. 29(a) (favoring amicus curiae briefs filed by states by waiving requirement of consent of parties or leave of court); *Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997) (emphasizing Texas' strong sovereign interests in intervening, including "the protection of the state's fish and wildlife resources," and the State's *parens patriae* "interest in the physical and economic health and well-being of the citizens directly affected by" changes in the State's natural resources, and reversing district court's denial of State's motion to intervene in that capacity). As discussed above, the intervention process is more time-consuming, costly, and inefficient for courts and all parties involved than participation as an amicus curiae, making amicus curiae the preferred procedure where possible. *E.g.*, *Bush*, 740 F.2d at 359. Accordingly, the court, in assessing the timeliness of Louisiana's motion to participate as an amicus curiae, ought not impose a more stringent

standard for timeliness than that set forth in authorities addressing the timeliness of motions to intervene.

**D.**    ***Practical considerations favor reconsideration of the order denying Louisiana amicus curiae status***

1.    <u>Issue likely to arise again</u>

Louisiana further submits that reconsideration is warranted because the State anticipates that this issue will arise again, militating in favor of reconsideration in this instance.  Louisiana intends to seek the Court's leave to participate as an amicus curiae in the Alabama Economic Damages case not just with respect to the offset issue but also with respect to any other issues that may arise that are common to Louisiana and Alabama's respective economic damages cases, such as the States' right to a jury trial, if and when they arise in the Alabama Economic Damages case.

2.    <u>Preservation of the State's right to be heard</u>

At a minimum, Louisiana respectfully requests clarification that the Court's ruling on Alabama's motion to strike defendants' offset requests will not prejudice Louisiana if and when the same issue arises in Louisiana's pending economic damages and natural resource damages trials.

**Conclusion**

For the foregoing reasons, the State of Louisiana respectfully requests that the Court grant the State's Motion for Reconsideration and thereby grant Louisiana's motion for leave to file an amicus brief with respect to Alabama's motion to strike defendants' offset requests in the Alabama Economic Damages case.

Dated this 12th day of December, 2014.

Respectfully submitted,

| | |
|---|---|
| JAMES D. "BUDDY" CALDWELL<br>LOUISIANA ATTORNEY GENERAL | KANNER & WHITELEY, LLC |
| | /s/ Allan Kanner |
| James Trey Phillips | Allan Kanner |
| First Assistant Attorney General | Elizabeth B. Petersen |
| Megan K. Terrell | Douglas R. Kraus |
| Assistant Attorney General | Allison M. Shipp |
| Section Chief –Environmental | 701 Camp Street |
| State of Louisiana | New Orleans, LA 70130 |
| P.O. Box 94005 | Telephone: (504) 524-5777 |
| Baton Rouge, LA 70804-9005 | **Special Counsel for Plaintiff** |
| Telephone: (225) 326-6708 | **Attorney General, State of Louisiana** |
| | |
| HENRY DART, | USRY, WEEKS, & |
| ATTORNEYS AT LAW P.C. | MATTHEWS, APLC |
| | |
| /s/ Henry T. Dart | /s/ T. Allen Usry |
| Henry T. Dart | T. Allen Usry |
| Grady J. Flattmann | 1615 Poydras St. |
| 510 N. Jefferson St. | Suite 12 |
| Covington, LA 70433 | New Orleans, LA 70112 |
| Telephone: (985) 809-8093 | Telephone: (504) 592-4641 |
| **Special Counsel for Plaintiff** | **Special Counsel for Plaintiff** |
| **Attorney General, State of Louisiana** | **Attorney General, State of Louisiana** |
| | |
| SHOWS, CALI, BERTHELOT &<br>WALSH, LLP | |
| | |
| /s/ E. Wade Shows | |
| E. Wade Shows | |
| 628 St. Louis Street | |
| Baton Rouge, LA 70802 | |
| Telephone: (225) 346-1461 | |
| **Special Counsel for Plaintiff** | |
| **Attorney General, State of Louisiana** | |

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum of Points and Authorities in Support of its Motion for Reconsideration of the Court's Order Denying Louisiana Leave to File an Amicus Brief in the Alabama Economic Damages Case has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12th day of December, 2014.

Kanner & Whiteley, L.L.C.


 /s/ Allan Kanner_____
Allan Kanner