UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG DEEPWATER HORIZON IN THE GULF OF MEXICO, ON APRIL 20, 2010 | : : : : | MDL NO. 2179 SECTION J |
| THIS DOCUMENT RELATES TO: 10-4536 | : : : : | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |

..........................................................................................................................................

### UNITED STATES' MEMORANDUM IN OPPOSITION TO BPXP'S MOTION TO STRIKE OPINIONS AND TESTIMONY OF CHARLES F. MASON

BPXP attempts to strike the opinions and testimony of economist Dr. Charles Mason relating to his analysis of real estate income at pages 14-16 of his Round 3 report, arguing that this analysis does not directly rebut a Round 2 opinion, and is based on data not analyzed in prior reports. Rec. Doc. 13768. Dr. Mason was hired by the United States in relevant part to evaluate the severity of economic harm resulting from the Macondo oil spill. Exhibit A to BPXP Motion to Strike Opinions and Testimony of Charles F. Mason ("BPXP Motion"), 8/15/14 Rpt. at 5. Dr. Mason opines that the oil spill led to extremely severe economic harm. *Id.* In Dr. Mason's Round 3 report, he compares real estate income in Florida gulf coast counties to Florida Atlantic coast counties and concludes that gulf coast "real estate income remained depressed due to the oil spill into 2011 and 2012, contrary to Scott's assertion that any industries harmed by the spill recovered quickly." Exhibit B to BPXP Motion, 9/26/14 Mason Rpt. at 15. BPXP's motion is without merit because Dr. Mason's analysis of real estate data directly rebuts Dr. Scott's unfounded criticism of Dr. Mason's methodology, and because Dr. Mason applies the same methodology to the real estate analysis in his Round 3 report that he employed in his Round 2

1

report. Thus, Dr. Mason's Round 3 report is fully consistent with the Court's scheduling order requirements.

## ARGUMENT

### I. The scheduling order does not prohibit the use of new data in the Round 3 reports where that data is used to directly rebut opinions in a Round 2 report.

The scheduling order does not prohibit Dr. Mason's analysis of real estate data. The complete instruction in that order regarding Round 3 expert reports reads as follows:

> "Round 3: Rebuttal. No new experts allowed. Opinions expressed in this round may only directly rebut opinions expressed in Round 2; i.e., they cannot contain a new methodology nor address matters that are not directly responsive to facts, assumptions, methods and opinions raised in Round 2." Rec. Doc. 13428 at 1.

BPXP repeats time and again that Dr. Mason uses new data in his real estate analysis. Rec. Doc. 13768 at 1, 3, and 4. BPXP is correct that Dr. Mason did not use the Bureau of Economic Analysis real estate data in his Round 1 or Round 2 reports, but the scheduling order does not prohibit the use of new data. In fact, that order does not mention data at all. The scheduling order prohibits only the use of new methodologies or opinions that do not directly rebut Round 2 opinions.

Notably, BPXP does not assert that Dr. Mason applied a new methodology in his real estate analysis. Dr. Mason explained in his deposition that his Round 3 real estate analysis applied the same method used in his Round 2 report:

> Q. Dr. Mason, is it correct that the data you used to conduct your analysis of real estate markets in your reply report was data you had not used for any analysis contained in your August 15th or September 12th reports?
>
> A. The data that I'm using here was not analyzed in any of the preceding reports… The technique, however, is the same as I used in the Round 2 report.

Exhibit C to BPXP Motion, Mason Dep. at 169:2-15.

Dr. Mason also notes in his Round 3 report that he is not using a new methodology to analyze the real estate data: "The method I applied in my Round 2 Report – comparing changes in a variable of interest in a study area against changes in the same variable in a nearby but unaffected area – can also be applied to real estate markets."  Exhibit B to BPXP Motion, 9/26/14 Mason Rpt. at 14.  Therefore, the only valid basis on which BPXP can attempt to challenge Dr. Mason's real estate analysis is to argue that it does not rebut a Round 2 opinion.

### II.     Dr. Mason's analysis of real estate data responds directly to Dr. Scott's Round 2 opinion that Dr. Mason's methodology is flawed.

In his Round 2 report, Dr. Scott attacks Dr. Mason's opinion for failing to consider economic data other than claims payments: "Mason's analysis is flawed because he assumes that claims payments can be used to approximate economic harm and fails to evaluate available economic data that provide more reliable and direct measures of the impact (or lack thereof) of such an event on the economy."  Exhibit E to BPXP Motion, 9/12/14 Scott Rpt. at 7.  In particular, Scott asserts that economic data show that claimants received payments for future harms that never occurred:

> Given the availability of so much data that demonstrates a very fast recovery (or no economic harm at all) of two of the major industries in the Gulf Coast – tourism and commercial fishing — it is very possible that many claimants experienced no further or ongoing harm after receiving their multiplied payment of compensation.  The fact that Mason does not evaluate available data prevents him from supporting his assumption that claims payments can be equated to economic harm.

*Id.* at 17.

3

Directly in response to this assertion, Dr. Mason evaluates both hotel revenues and real estate income data[1] in his Round 3 report, finding that they support his methodology of using claims payments to determine the severity of economic harm:

> Returning to the topic of claims payments indicating that the economic harm was severe, the evidence displayed in Table 1 [hotel revenues] and Figure 1 [real estate income] rebuts Scott's erroneous assertion that the adjustment factors applied in calculating claims amounts rendered the resultant claim payments an invalid measurement of damages. As I explained in my report, these adjustment factors are designed to capture future damages. The continuing harm to the hospitality sector and real estate sector are but two examples that serve to demonstrate that Scott's assertion is false. There were ongoing damages, and hence the inclusion of an adjustment factor designed to reflect anticipated future damages does not render the use of claims payments as proxy for the level of economic harm invalid.

Exhibit B to BPXP Motion, 9/26/14 Mason Rpt. at 16.

BPXP argues that Dr. Mason's analysis does not respond to Dr. Scott's opinions because Dr. Scott did not analyze real estate data himself. It is true that Dr. Scott used only hotel revenue data, fish landings data, and a paper regarding 2010 Gulf Coast employment to support a much broader opinion that "in most geographic areas and industries in the Gulf Coast, there was no negative impact due to the oil spill..." Exhibit D to BPXP Motion, 8/15/14 Scott Rpt. at 4; Exhibit A, Scott Dep. at 83:7-24. However, Dr. Scott's use of limited data sources does not similarly limit Dr. Mason's Round 3 report to those same sources. One expert can use different data than another expert and still be directly rebutting that expert: "A rebuttal expert may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 290 F.R.D. 11, 16 (D. Mass. 2013). Therefore, although Dr. Scott does not analyze real estate data,

---

[1] The real estate data that Dr. Mason relied upon for this analysis is publically available; Dr. Mason downloaded the dataset from the United States Bureau of Economic Analysis website. BPXP Exhibit B, 9/26/14 Mason Rpt. at 14.

4

Dr. Mason's real estate analysis directly rebuts Dr. Scott's opinion that Dr. Mason's claims methodology is inaccurate because claimants received payments for future harms that did not occur, an opinion advanced for the first time in Dr. Scott's Round 2 report.

### III.   Dr. Mason's use of real estate data will not unfairly prejudice BPXP.

BPXP complains that it is unfairly prejudiced because Dr. Scott will not have an opportunity to respond to Dr. Mason's analysis of real estate data. But BPXP and the United States are in fact on equal footing. Each party will have the opportunity to cross examine the other's expert regarding the Round 3 reports, but no party's expert will have the opportunity to respond to an opposing expert's Round 3 report.

To illustrate this point, consider the statistical analysis presented in Dr. Scott's Round 3 report. For the first time in his Round 3 report, Dr. Scott applied a trend line and log regression analysis to the NOAA landings data that he relies upon for his fisheries opinion. Exhibit B, 9/26/14 Scott Rpt. at 7-11. Dr. Mason could not have anticipated that Dr. Scott would apply this type of statistical analysis in his Round 3 report, and Dr. Scott does not use a trend line or log regression analysis anywhere in his Round 1 or Round 2 Reports. Exhibit D to BPXP Motion, 8/15/14 Scott Rpt.; Exhibit E to BPXP Motion, 9/12/14 Scott Rpt. Dr. Mason will not have an opportunity to respond to the propriety of this statistical technique as applied to the fish landings data because this technique appears for the first time in Dr. Scott's Round 3 report. Any prejudice experienced by BPXP is the same or less than the prejudice experienced by the United States due to Dr. Scott's use of new techniques in his Round 3 report that do not appear in his Round 1 or Round 2 reports.

Thus, the fact that neither party's experts can respond to the Round 3 reports is not prejudice to BPXP and is instead the entirely foreseeable result of the pre-trial structure BPXP pursued for this phase of the case. Indeed, as compared to prior phases BPXP's experts had

5

more opportunities in this phase to respond to United States experts' arguments. In prior phases the United States prepared initial reports, BPXP prepared response reports, and the United States prepared rebuttal reports. In this phase BPXP argued for and was granted three rounds of reports over the United States' objection.

## CONCLUSION

Dr. Mason's Round 3 real estate analysis is consistent with the court's scheduling order because it does not involve any new methodology, and directly responds to Round 2 opinions advanced by Dr. Scott. BPXP will not experience any unfair prejudice from Dr. Mason's real estate analysis. Therefore, the United States respectfully requests that the court deny BPXP's motion to strike pages 14-16 from Dr. Mason's Round 3 report.

Respectfully submitted,

| | |
|---|---|
| JOYCE R. BRANDA | SAM HIRSCH |
| Acting Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| PETER FROST | SARAH HIMMELHOCH |
| Director, Torts Branch, Civil Division | Senior Litigation Counsel |
| Admiralty and Aviation | NANCY FLICKINGER |
| STEPHEN G. FLYNN | Senior Attorney |
| Assistant Director | RICHARD GLADSTEIN |
| SHARON SHUTLER | PATRICK CASEY |
| MALINDA LAWRENCE | Senior Counsel |
| LAURA MAYBERRY | A. NATHANIEL CHAKERES |
| Trial Attorneys | JUDY HARVEY |
| | RACHEL KING |
| | ERICA PENCAK |
| R. MICHAEL UNDERHILL, T.A. | ABIGAIL ANDRE |
| Attorney in Charge, West Coast Office | RACHEL HANKEY |
| Torts Branch, Civil Division | BRANDON ROBERS |
| U.S. Department of Justice | Trial Attorneys |

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
Facsimile:   202-514-2583
E-mail:  steve.o'rourke@usdoj.gov

KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA  70130
Telephone:  (504) 680-3000
Facsimile:  (504) 680-3184
E-mail:  sharon.d.smith@usdoj.gov

Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date: December 15, 2014.    /s/ Steven O'Rourke

    U.S. Department of Justice