UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | : : : : | MDL 2179 Section J |
| This Document Applies to: | : : | Judge Barbier |
| *No. 12-970, Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al.* | : : | Mag. Judge Shushan |

MEMORANDUM IN SUPPORT OF MOTION OF THE SPECIAL MASTER
FOR RETURN OF PAYMENTS MADE TO WARDELL PARKER AND OTHERS

Special Master Louis J. Freeh moves to have claimant Wardell Parker ("Parker") and others return $238,684.32 in payments made by the Deepwater Horizon Economic Claims Center ("DHECC"). Parker filed claims with the DHECC as a shrimp vessel owner and shrimp boat captain, asking that his proof of shrimp landings be calculated using his 2009 tax records. Parker submitted his 2009 tax return to the DHECC, along with a sworn statement and other documents asserting that all of the revenue reflected on the 2009 tax return was from shrimping. In fact, <u>all</u> of the 2009 income reflected on the 2009 tax return was from Parker's job as a mechanic at Entergy Louisiana, LLC rather than seafood sales.

The Special Master seeks a judgment requiring Parker to return money paid on these DHECC claims, requiring professionals who assisted Parker and benefitted from this unjustified payment to similarly return such payments, and prohibiting Parker from participating in any further seafood distributions.

A pre-filing conference with claimant's counsel concerning the issues raised in this motion has not resulted in a resolution of the matter.

### A. *Background*

By order of September 6, 2013, this Court directed the Special Master to examine and investigate past or pending claims submitted to the DHECC which are deemed to be suspicious, and to initiate clawback proceedings of fraudulent claims. This Court retains continuing and exclusive jurisdiction over the Deepwater Horizon Economic and Property Damages Settlement Agreement (the "Settlement Agreement"), including supervision and oversight activities to ensure the integrity of the DHECC. *See* Settlement Agreement at ¶¶ 4.3.2, 4.3.10, 4.4.7 and 18.1. Disputes concerning enforcement of the Settlement Agreement are to be resolved by motion to the Court. *Id*. at ¶ 18.1.

### B. *The DHECC Claims*

On August 8, 2012, Parker filed shrimp vessel owner and shrimp boat captain claims with the DHECC, requesting that his claims be calculated from his "[t]ax returns or other financial statements that contain proof of shrimp landings" using 2009 as the benchmark period using the historic revenue method. Parker's claimed 2009 income from his 22-foot vessel far exceeded the expedited compensation method threshold of $32,500, yet Parker did not seek compensation under this program.

1. Seafood Income Documentation

Parker submitted to the DHECC his 2009 federal income tax return, which reported $79,228 in wage income, and an SWS-1 claiming $80,000 in revenue from shrimp sales in 2009.[1] Exs. A & B.

A staff accountant working at the law firm representing Parker submitted a letter to the DHECC supporting Parker's claims, stating that "because of the amount of shrimp sold

---

[1] Parker also claimed in his SWS-1 that he earned $65,000 from shrimping in 2008. However, he failed to submit his 2008 tax return, therefore Parker's 2008 income was not considered by the DHECC.

stated in the sworn written statements submitted with this claim, we believe it can be determined that all income claimed on the tax return came from shrimping revenue." Ex. C. The accountant also submitted a sworn statement concerning his accounting support. *Id.*

Parker also submitted a summary in which he said he sold about 45,000 pounds of shrimp between May 2009 and December 2009, as well as 29 statements, purportedly signed in 2012 by individuals who claimed to have purchased shrimp from Parker in 2009.

2. DHECC Payments

Relying on the 2009 tax return and SWS-1, the DHECC found that Parker earned $80,000 in revenue from shrimp sales in 2009 and was eligible under the historical revenue method for $126,146.16 for his shrimp vessel owner claim and $112,538.16 for his shrimp boat captain claim. These figures exceeded the recovery Parker would have had under the expedited compensation method. On November 13, 2012, the DHECC paid Parker a total of $238,684.32 for these two claims.

Upon information and belief, Parker's counsel, Danziger & De Llano LLP, received attorney's fees of $28,134.54 on the shrimp boat captain claim and $31,536.54 on the shrimp vessel owner claim, as well as accounting fees.

C. *Evidence of the Fraudulent Claims*

The totality of the record shows that there is no genuine issue as to any material fact and that the Special Master and the DHECC are entitled to a judgment as a matter of law. *See* Order & Reasons on Special Master's Motion for Return of Payment at 19 (Doc. Rec. 12794) (Apr. 29, 2014) (hereinafter "Order & Reasons"). Judgment against Parker is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (opposing party must do more than simply allege some metaphysical doubt as to the facts).

1. The Income Reported on
Parker's 2009 Tax Return Was Not Earned from Seafood Sales

As Parker had no shrimping revenue recorded on any 2009 trip tickets, he asked the DHECC to calculate his claims from his 2009 tax return and other financial statements. To rely on this method of proof, a claimant must produce "federal form 1040 including Schedules C, E and F or state forms and supporting documents, as well as sufficient documentation to identify those components of earnings derived from commercial shrimp harvesting by vessel for the Benchmark Period." Settlement Agreement at Ex. 10, IV.B.1.b.ii.

To satisfy his burden, Parker provided the DHECC with his 2009 tax return, which reported $79,228 in wage income. Parker provided the DHECC with no support documents (such as a W-2 or Form 1099) detailing the source of the wages. Parker also submitted an SWS-1 stating that his revenue from shrimp sales in 2009 was $80,000, and a statement that "because of the amount of shrimp sold stated in the sworn written statements submitted with this claim, we believe it can be determined that all income claimed on the tax return came from shrimping revenue." Ex. C.

In fact, the $79,228 in wage income on Parker's 2009 tax return was not from shrimp sales, rather it was from Parker's work as a mechanic for Entergy Louisiana, LLC ("Entergy"). A Form W-2 issued by Entergy made clear that Parker was paid $79,228 in 2009 wages. *See* Ex. D. Contemporaneous notes kept by the tax preparer used by Parker for the 2009 return, as well as an Entergy pay stub provided to the preparer by Parker, similarly made clear that Parker's wages came from work as a "Substation Mechanic" for Entergy. *See* Ex. E. These notes and documents are consistent with the statement on Parker's 2009 Form 1040 reporting his occupation as "MECHANIC."

Not a single reference in any of the data provided by Parker to his tax preparer reflects any revenue or expenses from commercial shrimping activity. Similarly, Parker's tax return did not contain a Schedule C with any seafood revenue or expenses.

2.  Parker's Alleged Seafood Sales Data Is Inconsistent

Parker estimated to the DHECC that he sold about 45,000 pounds of shrimp from May through December 2009 at $3 to $5 per pound, which would have given Parker revenue of between $135,000 and $225,000. *See* Ex. F. This figure is inconsistent with Parker's 2009 tax return and his SWS-1. Moreover, in an earlier submission to the GCCF, Parker said he sold "600+" pounds of shrimp each weekend at $2 per pound, making approximately $25,000 in 2009. *See* Ex. G at 8.

Parker also provided 29 statements signed in July and August 2012 by individuals who purportedly bought seafood from Parker in 2009. Investigators working for the Special Master were able to reach six of these persons, while others identified in the statements appeared to have wrong numbers or numbers no longer in service. The interviews established numerous inconsistencies concerning Parker's alleged seafood sales, such as:

- Customer One told the investigators he recalled purchasing approximately $1,200 worth of shrimp at $4 to $5 per pound *each year*, which equates to approximately 267 pounds per year. The statement allegedly signed by Customer One, however, said he purchased 100 pounds of shrimp *every week* during the spring and fall seasons. If this were true, Customer One would have purchased 2,800 pounds of shrimp in 2009.[2]

- Customer Two told the investigators she purchased shrimp from Parker on two occasions for a total of about 90 pounds though she could not recall in which year(s) she made the purchases. The statement allegedly signed by

---

[2] The calculations in this section are approximations based on the assumption that the spring season runs during the months of May and June and the fall season runs from August through December for a total of 28 weeks. *See, e.g.,* http://www.wlf.louisiana.gov/shrimp-seasons.

> Customer Two, however, said she purchased 60 pounds of shrimp *every week* during the spring and fall seasons, which would equate to approximately 1,680 pounds for the year.

- Customer Three told the investigators she recalled purchasing 30 pounds of shrimp from Parker on *one occasion*. The statement allegedly signed by Customer Three said she purchased shrimp *every week* during the fall and spring shrimp seasons.

- Customer Four told investigators she could not recall the amount of shrimp she purchased from Parker but she said she did not purchase 20 pounds per week as stated in the statement she allegedly signed.

### D. *Legal Analysis*

1. The Court Should Order Parker to Return All Funds Received from the DHECC Because His Claims Were Fraudulent.

The Court's power to order equitable remedies as a result of fraudulent conduct is a broad, flexible and long-standing power. *See Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 244 (1944) (affirming judicial power to set aside fraudulently begotten judgments as such cases present "a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society"); Order & Reasons at 21.

Here, the record demonstrates that Parker presented false information to the Court-supervised DHECC to obtain $238,684.32. Parker requested that the DHECC calculate his claim using the revenue from his 2009 tax return as proof of his revenue from seafood sales. Yet Parker knew the revenue on his 2009 tax return came from his wages at Entergy as a substation mechanic. He did not reveal his Form W-2 to the DHECC, as this document would have made clear the source of his revenue. The alleged sales data provided by Parker was internally inconsistent and contradictory.

In light of the evidence, the Special Master seeks an order compelling Parker to return payments made on his DHECC seafood claims.  The return of the payments will make the DHECC whole, prevent Parker from being unjustly enriched, and deter others from engaging in similar misconduct.  *See* Order & Reasons at 22.

2. <u>Parker is Not Entitled to Any Funds from the DHECC</u>

When the Special Master discussed with Parker's counsel the allegations of misrepresentations in Parker's claims, Parker's counsel responded that the DHECC appeared to have erred in attributing Parker's tax return income, earned as a mechanic, to shrimping activity.   Counsel said Parker supplemented his income as a part time shrimper in 2009, and disclosed to the GCCF that he worked full time at Entergy and part-time as a fisherman.  Counsel said that customer sworn statements supported Parker's sales, as did 2009 bank records that counsel provided to the Special Master on December 10, 2014, that counsel said showed deposits to the account of $41,557.48.

Parker's argument should be rejected.  Parker requested that the DHECC determine his claim based upon his 2009 "tax records or other financial statements that contain proof of shrimp landings."  Parker made clear he intended the DHECC to use his 2009 tax return to prove his shrimp revenue.  An accountant working for his lawyers wrote to the DHECC on August 7, 2012, stating "because of the amount of shrimp sold stated in the sworn written statements submitted with this claim, we believe it can be determined that *all income claimed on the tax return came from shrimping revenue.*"  Ex. C (emphasis added).  It can come as no surprise to Parker that the DHECC relied upon these statements and accepted the claim that the income on his 2009 tax return was from shrimping.

Parker advocated to the DHECC that he had $80,000 in 2009 shrimping revenue, yet all of the deposits (other than direct deposits from Entergy) on the recently provided bank records totaled only $41,557.48, according to Parker's counsel.  Moreover, the bank records do not make clear the source of any of the revenue, nor does Parker explain why deposits made during the months in which Parker himself said he does not shrimp, totaling approximately half of all deposits, should be considered shrimping revenue.[3]

The DHECC accepted and relied on Parker's misrepresentations that "all income claimed on the tax return came from shrimping revenue," and found Parker eligible for compensation in the amount of $238,684.32.  Now that the scheme has been uncovered, any attempt by Parker to disavow his earlier misrepresentations should be rejected under the equitable doctrine of judicial estoppel.

Designed to protect the integrity of the courts, judicial estoppel applies where a litigant knowingly takes a position plainly inconsistent with a prior position that had been advanced by the party and accepted by the court.  *In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 552 (5th Cir. 2011).  The doctrine upholds the sanctity of the oath and prevents a litigant from "playing fast and loose with the courts."  *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).

Here, Parker convinced the court-supervised DHECC settlement program to accept the position that all of the income reported on his 2009 tax return was earned by shrimping, knowing full well that was not true.  *See Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d

---

[3] Additionally, while Parker's bank records show $0 of Entergy direct deposits in January 2009 and only $8,351.92 in the entire first quarter, records obtained from the Louisiana Workforce Commission show that Entergy paid Parker $18,854 in the first quarter of 2009. *See* Ex. H.  Therefore, a significant portion of Parker's first quarter deposits appear to have been derived from Entergy, although not identified as Entergy direct deposits in the bank records.  It may be that Parker had not yet enrolled in the direct deposit system during that time.

391, 399 (5th Cir. 2003) (doctrine may be applied when a party makes an argument with the explicit intent to induce the court's reliance).

Given the deceptions practiced by Parker and the passage of months during which he has remained silent about this fraud, the Court should not now accept a claim that some lesser measure of alleged loss should be used to compensate a party that deceived the DHECC.

### 3. The Court Should Order the Return of All Funds Received by Professionals Who Assisted Parker to Submit False Claims.

The professionals who helped Parker to submit their claims also should be required to return any payment received based on these claims. *See* Order & Reasons at 26; *SEC v. Blatt*, 583 F.2d 1325, 1335-36 (5th Cir. 1978). Whether these professionals knew of the falsity of Parker's claims is immaterial to their duty to make restitution of sums that have been received as a result of this improper claim. Order & Reasons at 23; *Schock v. Nash*, 732 A.2d 217, 232-33 (Del. 1999) ("Restitution is permitted even when the defendant retaining the benefit is not a wrongdoer.").

Money paid by contingency fee arrangements may be recouped through restitution where the client's judgment is reversed or voided. *See Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996). The contingent fee is the key factor. *See* Order & Reasons at 22-23. Retaining payment made on a contingency fee contract if the client does not prevail or prevails but has the award revoked would constitute an unjust enrichment. *Id.* at 24.

Here, upon information and belief, the Danziger & De Llano law firm received attorney's fees of $59,671.08, as well as accounting fees, on Parker's claims based upon a contingency fee contract. The fees would not have been payable absent payments on these fraudulent claims, and the fees now should be ordered returned to the DHECC.

While recovery here does not depend on counsel's knowledge of the fraud, the Special Master notes that an accountant working for Parker's counsel represented to the DHECC — in correspondence written on the counsel's firm's letterhead — that all of the income reported on Parker's 2009 tax return was shrimping revenue. Ex. C. This representation was made without regard to supporting documents for Parker's return and plain inconsistencies in Parker's claim. Professional standards require a reasonable inquiry into facts submitted to the DHECC, which did not appear to happen here.

### E. *Conclusion*

For the reasons stated in this memorandum, the Special Master seeks entry of a judgment requiring Parker to make restitution to the DHECC for $238,684.32, paid by the DHECC in reliance on Parker's false representations. All professionals who assisted Parker and benefitted from these unjustified payments from the DHECC similarly should be required to return these payments, jointly and severally with Parker up to the value of the amounts they received as payments on the claims.

                                      Respectfully submitted,

                                      ____/s/ Louis J. Freeh_____
                                      Louis J. Freeh
                                      Special Master

Dated:  December 15, 2014