UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "*Deepwater Horizon*" in the Gulf of Mexico, on April 20, 2010 | : MDL No. 2179 <br> : SECTION: J <br> : <br> : <br> : Honorable Carl J. BARBIER |
| This Document Relates to: 10-4536 | : Magistrate Judge SHUSHAN |

………………………………………

CLEAN WATER ACT – PENALTY PHASE

UNITED STATES' OPPOSITION TO BPXP'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF DR. RICHARD W. CLAPP

BPXP mistakes this Penalty Phase on the United States' claims under the Clean Water Act for a toxic tort case. BPXP's Motion to Exclude the Opinions and Testimony of Dr. Richard W. Clapp, Rec. Doc. 13782 ("BPXP's Motion") lacks merit and should be denied.

BACKGROUND AND SUMMARY

Assessment of the Clean Water Act's "seriousness" factor includes an evaluation of the actual *or potential* harm to human health and the environment. *United States v. Gulf Park Water Co., Inc.*, 14 F. Supp. 2d 854, 860-862 (S.D. Miss. 1998), *Hawai'i's Thousand Friends v. City and County of Honolulu*, 821 F. Supp. 1368, 1383 (D. Hawaii 1993).[1] Thus, in a Clean Water Act case, testimony and opinions regarding potential harm to human health are not inherently speculative, as BPXP attempts to show by citing to inapposite toxic tort case law. As set forth in

---

[1] The U.S. addresses in more detail the role of potential harm in evaluating the "seriousness" factor in its Opposition to BPXP's Motion to Exclude Expert Opinions and Testimony Regarding Speculative Environmental Harm, also filed today, Dec. 15, 2014, and incorporated here by reference for the sake of brevity.

1

*Johnson vs. Arkema, Inc.*, a case BPXP relies upon in support of its motion to exclude Dr. Clapp's opinions from this Clean Water Act case: "[T]here is a two-step process in examining the admissibility of causation evidence in toxic tort cases." *Johnson vs. Arkema, Inc.*, 685 F.3d 452, 468 (5th Cir. 2012) (quoting *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d. 347, 351 (5th Cir. 2007)).  In a toxic tort case, that two-step process involves an inquiry into both general and specific causation: "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury." *Id.*  Such specific causation is not required in an evaluation of the Clean Water Act's "seriousness" factor, as testimony and opinions regarding potential harm to human health are relevant to an assessment to a Clean Water Act penalty.

Moreover, BPXP's argument regarding Dr. Clapp's alleged lack of opinion regarding causation further misconstrues the Penalty Phase as a toxic tort suit by attempting to exclude from the analysis of the "seriousness" factor those harms caused by the violation, even if not caused by exposure to the illegally discharged oil itself.

As discussed below, contrary to BPXP's mischaracterization of Dr. Clapp's opinions, Rec. Doc. 13782-1 at 5, Dr. Clapp offers relevant and reliable opinions regarding actual harm caused by the *Deepwater Horizon* explosion and fire, and the subsequent oil spill and response. He also offers relevant and reliable opinions regarding potential harm caused by exposure to oil.

Finally, Dr. Clapp's training, work experience, and academic research qualify him to opine on certain aspects of mental and behavioral health relevant to the seriousness factor.

**ARGUMENT**

I.   **DR. CLAPP'S OPINIONS ARE RELIABLE AND RELEVANT**

2

A. **Dr. Clapp's Opinions Regarding the Short-Term Impact of the Deepwater Horizon Explosion, Oil Spill, and Response Rest on BP Data and Reporting, Government Health Hazard Evaluations, and Peer-Reviewed Literature**

In all three of his reports, Dr. Clapp opines that the *Deepwater Horizon* explosion and its aftermath resulted in short-term health impacts on people in the Gulf of Mexico. *See, e.g.*, Ex. A (8/15/14 Clapp Rpt.) to BPXP's Motion ("BPXP Ex. A")[2] at 10-11: "in addition to the deaths and injuries caused by the Deepwater Horizon explosion, the subsequent oil spill and containment and clean-up activities caused numerous short-term health impacts on workers and volunteers in the Gulf of Mexico." In forming that opinion, Dr. Clapp reviewed numerous sources of information regarding symptoms reported by response workers during the spill, including:

- Health Hazard Evaluations (HHEs) conducted by the National Institute of Occupational Safety & Health (NIOSH),[3] BPXP Ex. A at 8; Ex. B (9/12/14 Clapp Rpt.) to BPXP's Motion ("BPXP Ex. B") at 3-5, 16, 24-25; Ex. C (9/26/14 Clapp Rpt.) to BPXP's Motion ("BPXP Ex. C") at 3;

- BP's own "Deepwater Horizon Incident Response Recordable Injury and Illness Data Report for the Period April 22, 2010 to December 3, 2010," BPXP Ex. A at 7; BPXP Ex. B at 3, which BP submitted to federal government personnel during the response, US Ex. 2 (Dec. 3, 2010 Email from Mary Kay Bradbury (BP) to Amyo.taylor@hhs.gov et al., attaching PowerPoint entitled "Deepwater Horizon Incident Response Recordable Injury & Illness Data," (TREX 12020)) at US_PP_USCG059338;

- BP's own Medical Encounters Database, BPXP Ex. B at 3; and

---

[2] Exs. A, B, and C to BPXP's Motion to Exclude the Opinions and Testimony of Dr. Richard W. Clapp, Rec. Doc. 13782, were filed under seal.
[3] NIOSH conducted these HHEs at the request of BP. US Ex. 1 (NIOSH Health Hazard Evaluation of Deepwater Horizon Response Workers, August 2011, TREX 12223) at 1.

- Peer-reviewed literature regarding the *Deepwater Horizon* oil spill, including an article published in the New England Journal of Medicine, BPXP Ex. B at 19-21; BPXP Ex. C at Appendix A.

BPXP's arguments that Dr. Clapp's opinions are based on "speculation and conjecture" are entirely without merit.

### B. Dr. Clapp's Opinions Regarding the Short-Term Impact of the Deepwater Horizon Explosion, Oil Spill, and Response are Not Lacking Causation

Equally meritless are BPXP's arguments that Dr. Clapp's opinions lack a causation element, simply because Dr. Clapp does not definitively conclude that any particular observed symptom stemmed only from exposure to "chemicals or toxins associated with the DWH Incident." Rec. Doc. 13782-1 at 7. Dr. Clapp readily admits that symptoms observed during the response also could have been caused by conditions incident to the clean-up of the oil spill such as "heat, stress, fatigue, exposure to fumes from boat engines, etc." BPXP Ex. C at 2. But those causes are as much a result of BPXP's violation of law – and the need to redress that violation – as would be exposure to the oil in the course of clean-up work. All these causes flow directly from BPXP's day after day of violation that produced months of exposure to oil.

Indeed, BPXP has pointed to no authority that limits the evaluation of human health under the Clean Water Act's "seriousness" factor to an evaluation of only those human health impacts that are caused by exposure to oil. As Dr. Clapp stated in response to criticism from BPXP's expert, Dr. Robert Cox, regarding Dr. Clapp's discussion of hospitalized response workers and the fact that their symptoms might not have been caused by exposure to oil or dispersants:

4

> Dr. Cox suggests other possible explanations of the respiratory symptoms reported in HHE 6, such as road and gravel dust exposure or crowded work and living conditions for Coast Guard DWH response workers. (Cox Round 2, p. 6). While these are not oil exposures, these workers were working and living in such conditions *because* they were responding to the oil spill. Such exposures would therefore be a result of the DWH oil spill and would not have occurred if not for the need to respond to the spill.

BPXP Ex. C at 3 (emphasis in original).

Finally, even if the human health inquiry under the "seriousness" factor was limited to an evaluation of human health impacts *caused by exposure to oil*, Dr. Clapp's findings and opinions remain reliable and relevant to that inquiry. Dr. Clapp explained that many symptoms observed during the response are consistent with exposure to oil, a finding that he based on a review of:

- the sources documenting symptoms reported by response workers during the spill, discussed in Section I.A., above;

- peer-reviewed literature about the *Deepwater Horizon* oil spill; and

- peer-reviewed literature about previous oil spills;

- and information published by the National Academy of Science's Institute of Medicine, following a workshop it convened during the response in June 2010. BPXP Ex. A at 6, 8; BPXP Ex. B at 3-4, 20-21.

Dr. Clapp also reviewed numerous sources of exposure data from the *Deepwater Horizon* oil spill. BPXP Ex. C at 3. He further discussed NIOSH analyses finding that in some cases, "symptoms occurred more frequently in those defined as exposed to oil than in those defined as unexposed." BPXP Ex. B at 3-5; *see also* BPXP Ex. A at 8.

Dr. Clapp also opined that certain components of MC252 oil, or substances created during the burning of MC252 oil, can cause human health effects at extremely low levels of exposure. BPXP Ex. A at 9; BPXP Ex. B at 6. He cited to peer-reviewed publications that

5

support this opinion, as well as information set forth by the U.S. Environmental Protection Agency.  BPXP Ex. B at 6-9; BPXP Ex. C at 10.  Such findings and opinions are relevant to an evaluation of the *potential* harm to human health *caused by exposure to oil*.  Thus, BPXP's arguments fail *even if* deaths, injuries, and illnesses caused by something other than exposure to oil were irrelevant to evaluating the Clean Water Act's "seriousness" factor.  But such an exclusion defies logic, as it would exclude from the Court's consideration of "seriousness" all injuries or illnesses resulting from the initial explosion and fire onboard the *Deepwater Horizon* rig; and all injuries and illnesses resulting from exposure to heat, stress, fatigue, fumes from boat engines, ergonomic hazards, and occupational accidents during the response.[4]

### C. Dr. Clapp's Opinions Regarding the Long-Term Impact of the Deepwater Horizon Explosion, Oil Spill, and Response are Neither Speculative Nor Lacking Causation

Dr. Clapp opines that "long-term health impacts may be identified in on-going studies and surveillance of exposed populations in the Gulf of Mexico." BPXP Ex. A at 1.  That opinion rests upon his review of the sources of information listed in Section I.A. and I.B, above, and specifically reflects a *lack* of speculation.  In assessing results of BPXP's violation less than five years after the spill, Dr. Clapp counsels caution in drawing definitive conclusions regarding long-term health effects.  Final conclusions are premature on this question, especially in light of the fact that on-going studies seeking to answer that exact question have not yet been completed, including a long-term study of tens of thousands of individuals being conducted by the National

---

[4] The United States argues that if the deaths, injuries, and illnesses that resulted from the *Deepwater Horizon* explosion and fire, and the subsequent oil spill and response, which were caused by something other than exposure to oil, are found not to be relevant to the human health inquiry under the "seriousness" factor, they are certainly relevant to the Penalty Phase as "other matters as justice may require."

Institute of Environmental Health Sciences (NIEHS).  BPXP Ex. A at 10; BPXP Ex. B at 26.  BPXP's argument that Dr. Clapp's testimony and opinions regarding long-term health effects should be excluded because "he only maintains that long-term health effects *may* occur," Rec. Doc. 13782-1 at 6 (emphasis in original), is entirely misplaced in this Penalty Phase of the Clean Water Act case.

II. **DR. CLAPP'S ACADEMIC TRAINING, WORK EXPERIENCE, AND PEER-REVIEWED RESEARCH QUALIFY HIM TO GIVE MENTAL HEALTH-RELATED OPINIONS CONCERNING IMPACT OF THE DEEPWATER HORIZON EXPLOSION, OIL SPILL, AND RESPONSE**

Dr. Clapp holds a Doctor of Science in Epidemiology from Boston University School of Public Health, in addition to a Master of Public Health from Harvard.  He is a Professor Emeritus of Public Health at Boston University School of Public Health, with "over 35 years of experience investigating, obtaining, interpreting and evaluating epidemiologic evidence, as a writer, reviewer, researcher and teacher."  BPXP Ex. A at. 3.  Contrary to BPXP's assertion that Dr. Clapp "has no expertise or qualifications in mental health or psychology," Rec. Doc. 13782-1 at 7, he has taken courses in psychiatry, psychology, and how humans respond to stress, and has studied the mental healthcare system in the United States.  US Ex. 3 (Excerpts from the Deposition of Dr. Richard Clapp, 10/13/14) at 46:16-19; 47:15-17; 50:5-15.  For two years, he was director of a community health and counseling center that had a mental health service, US Ex. 3 at 48:5-25, and he is co-author of an article entitled "Health Status of Persian Gulf War Veterans: Self-Reported Symptoms, Environmental Exposures and the Effect of Stress," which was published in the International Journal of Epidemiology. US Ex. 3 at 49:9-50:4; BPXP Ex. A at Appendix A (Resume of Richard W. Clapp, D.Sc., MPH) pg. 5.

7

Dr. Clapp may not hold himself out as an expert in psychology, psychiatry, or mental health, but he recognizes that the Court decides who is an expert for these purposes, US Ex. 3 at 46:8-47:10; 50:5-15. Under the rules of evidence, his experience and expertise qualify him to offer the type of mental health-related opinions and testimony he offers in this case, opinions that are based upon his review of peer-reviewed literature and publications by federal agencies such as NIOSH and the Centers for Disease Control/Substance Abuse and Mental Health Services Administration.  BPXP Ex. A at 6; BPXP Ex. B at 22-25; BPXP Ex. C at 6-8.

## CONCLUSION

Dr. Clapp's opinions and testimony rest on his relevant training and experience and his review of the work of others in relevant fields of study and research, and they are relevant to the inquiry at hand: an evaluation of the actual or potential harm to human health resulting from the *Deepwater Horizon* explosion and fire, and the subsequent oil spill and response.  BPXP's Motion to exclude his opinions should be denied.

Respectfully submitted,

| | |
|---|---|
| JOYCE BRANDA | SAM HIRSCH |
| Acting Deputy Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| PETER FROST | SARAH HIMMELHOCH |
| Director, Torts Branch, Civil Division | Senior Litigation Counsel for E-Discovery |
| Admiralty and Aviation | MICHAEL MCNULTY |
| SHARON SHUTLER | Senior Counsel |
| MALINDA LAWRENCE | NANCY FLICKINGER |
| LAURA MAYBERRY | Senior Attorney |
| Trial Attorneys | PATRICK CASEY |
| R. MICHAEL UNDERHILL, T.A | RICHARD GLADSTEIN |
| Attorney in Charge, West Coast Office | DANIEL S. SMITH |
| | Senior Counsel |

        ABIGAIL ANDRE
        A. NATHANIEL CHAKERES
        ANNA CROSS
        RACHEL HANKEY
        JUDY HARVEY
        RACHEL KING
        ERICA PENCAK
        BRANDON ROBERS
        GORDON YOUNG
        Trial Attorneys

        /s/ Steven O'Rourke
        _____
        STEVEN O'ROURKE
        Senior Attorney
        Environmental Enforcement Section
        U.S. Department of Justice
        P.O. Box 7611
        Washington, D.C. 20044
        Telephone:  202-514-2779
        Facsimile:   202-514-2583
        E-mail:  steve.o'rourke@usdoj.gov
        KENNETH A. POLITE, JR.
        United States Attorney
        Eastern District of Louisiana
        SHARON D. SMITH
        Assistant United States Attorney
        Eastern District of Louisiana


Attorneys for the UNITED STATES OF AMERICA

CERTIFICATE OF SERVICE

       I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Date: December 15, 2014.                                      /s/ Steven O'Rourke\_\_\_\_\_
                                                                                      U.S. Department of Justice