# Exhibit 3 to the United States' Opposition to BPXP's Motion to Exclude the Opinions and Testimony of Dr. Richard W. Clapp (US Ex. 3)

```
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA
2
3   IN RE:  OIL SPILL        )  MDL NO. 2179
    BY THE OIL RIG            )
4   "DEEPWATER HORIZON" IN    )  SECTION "J"
    THE GULF OF MEXICO, ON    )
5   APRIL 20, 2010            )  JUDGE BARBIER
                              )  MAG. JUDGE SHUSHAN
6
7
8
9
10
11
12
13
14
15
16
17              ******************
                     VOLUME 1
18              *****************
19
20
21     Deposition of DR. RICHARD CLAPP, taken at
22  Pan-American Building, 601 Poydras Street, 11th
23  Floor, New Orleans, Louisiana, 70130, on the 31st
24  day of October, 2014.
25
```

```
 1  the so-called wet bulb method of determining
 2  excessive heat.
 3      Q.  Have you ever taught regarding
 4  heat-related illnesses?
 5      A.  Not that I can recall.
 6      Q.  You're not a psychologist, are you?
 7      A.  No.
 8      Q.  And you do not hold yourself out as an
 9  expert in psychology, correct?
10      A.  Correct.  I understand the Court
11  determines who's an expert, but I don't hold
12  myself out as an expert in psychology to answer
13  your question.
14      Q.  You don't hold yourself to be an expert in
15  psychology, correct?
16      A.  I've taken courses in psychiatry and I
17  certainly have -- I've also taken courses in
18  psychology over my previous academic training, but
19  I'm not saying that I'm an expert in it.
20      Q.  Okay.  So you don't consider yourself to
21  be an expert in psychology, correct?
22              MS. PENCAK:  Objection, asked and
23  answered.
24      A.  I, again, think it's the Court that
25  determines that.  I don't hold myself out as an
```

```
 1  expert in psychology.
 2       Q.  (BY MS. DESANTIS)  Okay.  And you're not a
 3  psychiatrist, correct?
 4       A.  I am not.
 5       Q.  And you don't hold yourself out as an
 6  expert in psychiatry, correct?
 7       A.  Correct.
 8       Q.  And you're not an expert in mental health
 9  generally, correct?
10       A.  Correct.
11       Q.  And you've never diagnosed a patient with
12  a mental health condition, correct?
13              MS. PENCAK:  Object to form.
14       A.  Not as a professional, no.
15       Q.  (BY MS. DESANTIS)  Okay.  Have you studied
16  the mental healthcare system in the United States?
17       A.  Yes.
18       Q.  Have you studied the mental healthcare
19  system in Mississippi?
20       A.  No.
21       Q.  Have you studied the mental healthcare
22  system in Louisiana?
23       A.  No.
24       Q.  Have you studied the mental healthcare
25  system in Alabama?
```

1       A.   No.

2       Q.   Have you studied the mental healthcare

3  system in Florida?

4       A.   No.

5       Q.   Okay.  You've never studied how

6  individuals and communities cope with adversity,

7  have you?

8            MS. PENCAK:  Object to form.

9       A.   With -- with adverse --

10      Q.   (BY MS. DESANTIS) With adversity.

11      A.   Well, I was -- I was a director of a

12 community health and counseling center for two

13 years, and -- and we had a mental health service

14 in that health center, and there were definitely

15 people who had cope -- or who were coping with

16 adversity who visited our health center, and I was

17 aware of the qualifications and activities of the

18 mental health staff that worked in the health

19 center.  I think your question had to do with had

20 I studied it?

21      Q.   Yes.

22      A.   I considered it.  I'm not sure I would say

23 it was a formal study.  But I was certainly aware

24 of how people cope with adversity because I saw

25 it.

1    Q.  You've never conducted research regarding
2  individual and community responses to disasters or
3  highly stressful events, have you?
4           MS. PENCAK:  Object to form.
5    A.  And this was -- the question was about
6  specifically research, had I conducted research?
7    Q.  (BY MS. DESANTIS)  Yes.
8    A.  And the answer is no.
9    Q.  All right.  And you've never conducted
10 research concerning human resilience in the face
11 of highly stressful events, have you?
12          MS. PENCAK:  Object to form.
13   A.  Could you tell me what you mean by
14 "resilience"?
15   Q.  (BY MS. DESANTIS)  How humans respond with
16 resilient characteristics.
17          MS. PENCAK:  Same objection.
18   A.  If I could look at my publications, I
19 actually think there may be one that addresses
20 that.  On Page 5 of my CV there's an article --
21 the first author is Proctor.  The title of the
22 article is Health Status of Persian Gulf War
23 Veterans:  Self-Reported Symptoms, Environmental
24 Exposures and the Effect of Stress.  And in that
25 article we were -- and, in fact, one of the

**CONFIDENTIAL- SUBJECT TO PROTECTIVE ORDER**
**Worldwide Court Reporters, Inc. (800)-745 1101**

```
 1  coauthors of that article was an expert in PTSD.
 2  And so in this article we were considering and
 3  researching actually the effect of stress on
 4  reported symptoms in Persian Gulf War veterans.
 5       Q.   (BY MS. DESANTIS)  Okay.  Do you consider
 6  yourself an expert on stress in individuals
 7  exposed to highly stressful events or to
 8  disasters?
 9            MS. PENCAK:  Object to form.
10       A.   Again, with the caveat that I think it's
11  the Court who decides who's an expert.  I have
12  certainly taken courses that address the issue of
13  stress and how humans respond to stress.  Whether
14  I'm an expert, I don't hold myself out as an
15  expert.
16       Q.   (BY MS. DESANTIS)  All right.  You're
17  holding yourself out as an expert in epidemiology
18  in this litigation; is that correct?
19       A.   Correct.  With a background in public
20  health.
21       Q.   And for purposes of this litigation, are
22  you claiming expertise in any area or discipline
23  other than epidemiology with a background in
24  public health?
25       A.   Not as I sit here.
```