# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| Nos. 10-2179; 10-4536 | * | |
| | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \*

## ANADARKO'S OPPOSITION TO THE
## UNITED STATES' MOTION *IN LIMINE* TO EXCLUDE
## LEGAL OPINION TESTIMONY OF DR. DAVID SUNDING

MORGAN, LEWIS & BOCKIUS LLP

James J. Dragna
jim.dragna@morganlewis.com
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@morganlewis.com
Thomas R. Lotterman
thomas.lotterman@morganlewis.com
David B. Salmons
david.salmons@morganlewis.com
Randall M. Levine
randall.levine@morganlewis.com
2020 K Street, N.W.
Washington, D.C. 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street
Suite 1300
New Orleans, LA 70112
Telephone (504) 592-0691
Facsimile (504) 592-0696

I.     INTRODUCTION

This Court is charged with weighing eight penalty factors to tailor a Clean Water Act penalty against Anadarko that achieves the Act's goals of punishment and deterrence. *See Tull v. United States*, 481 U.S. 412, 426–27 (1987).  Despite the novelty of the Government's effort to impose a substantial penalty on a non-operating investor, Anadarko does not plan to put on a complicated or lengthy defense at the upcoming bench trial.  One reason for that is the Court's ruling that Anadarko is not culpable as a matter of law.  Owing to that ruling, Anadarko needs little evidence to show that the penalty the Government seeks will not achieve the goal of punishment because a penalty, by definition, is a remedy "intended to punish *culpable* individuals." *Id.* at 422 (emphasis added).  That leaves the goal of deterrence, which will be addressed at trial by one of Anadarko's two expert witnesses, Dr. David Sunding, chair of UC Berkeley's Department of Agricultural and Resource Economics.

The Government has moved to exclude much of Dr. Sunding's testimony.  It objects to his explanation of three economic approaches to deterrence (optimal, absolute, and efficient deterrence) and his opinion that, as a matter of economics, a substantial penalty against Anadarko will mainly deter investment in deepwater exploration and production.  Apparently, the Government thinks that the Court either cannot consider deterrence at all or must assess deterrence purely as a matter of law, without hearing from an economist.  *See* Mot. 6–7 (contending that Dr. Sunding's testimony on deterrence "substitute[s] his judgment for the provisions of law comprising the OPA and the CWA" and that "testimony concerning economic theory" is "impermissible legal testimony").  Either way, the Government's objection is untenable.

The Government should agree that deterrence is one of the goals of Clean Water Act penalties.  The Supreme Court has said it. *See Tull*, 481 U.S. at 422–23.  So has this Court. *See* Rec. Doc. 5446 at 20 (citing cases).  And many times the Government has cited—*to this Court in*

1

*this case*—the deterrent purpose of Clean Water Act penalties. *See, e.g.*, Rec. Doc. 4840 at 1, 5, 6; Rec. Doc. 6436-1 at 20; *see also U.S. ex rel. Adm'r of E.P.A. v. CITGO Petroleum Corp.*, 723 F.3d 547, 553–54 (5th Cir. 2013) (noting the Government's argument that a penalty award "contravene[d] the purpose of civil penalties under the CWA—punishment and deterrence").

Because any penalty "must be shaped by considerations contained within the Act," *United States v. Sheyenne Tooling & Mfg. Co., Inc.,* 952 F. Supp. 1420, 1422 (D.N.D. 1996), and because deterrence is one of those considerations, the Court can listen to an economist opine that the penalties the Government seeks against Anadarko will not achieve deterrence. At the very least, Dr. Sunding's opinions about economic theory and the consequences of penalizing Anadarko present "other matters" the Court can consider "as justice may require." 33 U.S.C. § 1321(b)(8). In assuming Dr. Sunding will "invade the province of the Court," Mot. 1, the Government ignores this Court's warning "that this is a bench trial and that they should use great caution in filing" motions to exclude expert testimony, Order, Rec. Doc. 12688 at 5, n. 7. Even if there were a risk that Dr. Sunding's testimony would stray from economics into the law, the Court remains well positioned to guard its role as arbiter of the statutory penalty factors and ultimate decider of "the amount of penalty, *if any*." *Tull*, 481 U.S. at 427 (emphasis added).

## II.   THE APPLICABLE LEGAL STANDARDS.

The Government's recitation of the applicable evidentiary standards is incomplete. *See* Mot. 2–4. Federal Rule of Evidence 704 does not prohibit any testimony, let alone expert testimony, "render[ing] conclusions of law." Mot. 2. The only thing Rule 704 prohibits is excluding testimony "just because it embraces an ultimate issue." Fed. R. Evid. 704(a). In abolishing the common-law "ultimate issue" rule, Rule 704 clarifies that other rules—Rules 702 and 403, in particular—govern the admissibility of expert testimony. "These provisions afford ample assur-

2

ances against the admission of opinions which would merely tell the jury what result to reach." Fed. R. Evid. 704 advisory committee's note.

Under those rules, the test for admitting expert testimony is not whether it "invades the province of the Court," as the Government asserts. Mot. 1, 5. That formulation is just "empty rhetoric." Fed. R. Evid. 704 advisory committee's note (internal quotation marks and citation omitted). The actual test is whether expert testimony is "helpful to the trier of fact" per Rule 702 and whether it "wastes time" per Rule 403. *Id.* Because Anadarko's focused case will not waste the Court's time, the only question posed by the Government's motion is whether the "legal" portions of Dr. Sunding's report, if any, are helpful.

The mere mention of a legal conclusion by an expert does not automatically render his or her testimony unhelpful. Expert testimony can encompass legal conclusions for many reasons. They can help the judge or jury "understand what the witness has to say and relate it to the facts." 29 Wright & Gold, *Fed. Prac. & Proc.* § 6284 p. 381 (1st ed. 1997). And the bar on testimony about "purely legal matters" does not extend "to legal matters that involve questions of fact." *Waco Int'l, Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 532–33 (5th Cir. 2002).

Dr. Sunding's testimony falls well within this permissible scope. In his reports, he recited legal aspects of the Clean Water Act to provide context for his expert economic opinions and relate them to this case. *See* p. 5, *infra*. Dr. Sunding noted the history and (indisputable) purposes of Clean Water Act penalties, then explained how the Court can exercise its discretion to weigh the eight statutory penalty factors with deterrence in mind. At trial, Anadarko will not call Dr. Sunding to testify about the history, purposes, or proper legal interpretations of federal law, all topics he has disavowed as outside his expertise. *See, e.g.*, Sunding Round 1 Report at 2 n.1, 5 n.14; Sunding Dep. 144:22–24, 151:12–15.

3

Any doubts about Dr. Sunding's testimony should be resolved in Anadarko's favor. "Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000); *see Thompson v. Rowan Cos., Inc.*, No. CIV.A. 06-3218, 2007 WL 724646, at *1 (E.D. La. Mar. 6, 2007) (Barbier, J.) (citing *Gibbs*). Protecting juries is why courts exclude expert testimony on purely legal matters: such testimony by a single expert risks duping a jury into believing the expert is "more reliable than the judge" on questions of law, and such testimony by dueling experts "would only confuse the jury" about what the law is. *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (favorably citing *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988)). In a bench trial, neither of those problems can surface. *See In re Omni Energy Servs.*, No. CIV.A. 01-3246, 2002 WL 34381143, at *1 (E.D. La. Sept. 5, 2002) (Barbier, J.) (denying a motion to exclude an expert's supposedly "legal" testimony from a bench trial because "the Court will not allow [an expert] to testify on matters beyond his area of expertise and what is helpful to the fact-finder, and will disregard any legal conclusions to which he testifies").[1]

### III.   DR. SUNDING'S OPINIONS ARE COMPLETELY ECONOMIC.

Dr. Sunding is a highly qualified economist. He has broad expertise in environmental and resource economics and with Clean Water Act penalties and regulations. *See* Sunding Round 1 Report at 1; *see also id.* at App. 1, App. 3. Dr. Sunding has advised EPA on Clean Water Act penalties and has testified before Congress on the incentive effects of environmental laws

---

[1] The Government's motion does not acknowledge that the upcoming trial is a bench trial. Almost every opinion the Government cites on excluding legal testimony, *see* Mot. 2–4, involved a jury trial—a critical fact the Government not only passively ignores, but actively buries, *see id.* at 4 (replacing the word "jury" with the word "fact-finder" in one quotation). One cited case involved a bench trial, but unlike here, expert reports at issue there "consist[ed] of *nothing more* than legal arguments." *Snap-Drape, Inc. v. CIR*, 98 F.3d 194, 198 (5th Cir. 1996) (emphasis added); *see* 29 Wright & Gold, *Fed. Prac. & Proc.* § 6284, p. 381 (1st ed. 1997) ("[A]n opinion that merely states a legal conclusion … will not 'assist' under Rule 702.").

4

and penalties. *See id.* His work was cited prominently by the United States Supreme Court in one of the most important Clean Water Act decisions in decades. *See Rapanos v. United States*, 547 U.S. 715, 721 (2006) (plurality); *id.* at 798 (Stevens, J., dissenting).

Applying his expertise, Dr. Sunding has rendered five main opinions relevant to the Government's unprecedented attempt to impose substantial penalties on Anadarko, a non-culpable, non-operating investor in a deepwater drilling operation.

- First, Clean Water Act penalties against Anadarko are not needed to achieve economically optimal deterrence (because Anadarko's liability for damages under the Oil Pollution Act accomplishes that by itself) or absolute deterrence (because the Government has conceded that Anadarko obtained no benefit from the Macondo blowout). *See* Sunding Round 1 Report at 4–6.

- Second, imposing substantial penalties on Anadarko will not achieve efficient deterrence and could be counter-productive. *See id.* at 6–8.

- Third, imposing civil penalties on a non-culpable, non-operating investor will deter investment in deepwater exploration and production in the Gulf and have an adverse impact on the economies of Gulf States. *See id.* at 9, 14–16.

- Fourth, observable trends—namely, increased exit and decreased entry of non-operating investors and increased concentration of ownership within deepwater leases—are consistent with Dr. Sunding's theory that non-operators are being deterred by potential liability for civil penalties. *See id.* at 10–14.

- Fifth, to tailor a Clean Water Act penalty against Anadarko that achieves deterrence, the culpability and economic benefit factors should be given the most weight. *See id.* at 6, 16–19; Sunding Round 3 Report at 6.

## IV. THE GOVERNMENT'S MOTION IN LIMINE LACKS MERIT.

The Government asks the Court to exclude almost all of Dr. Sunding's testimony—Parts I and III of his Round 1 report and Parts I, II, and III of his Round 3 report, which cover the first, second, and fifth opinions above. *See* Proposed Order, Rec. Doc. 13764-2. All of the challenged portions of those reports are admissible.

5

### A. Dr. Sunding Can Testify About Deterrence And Its Consequences.

Dr. Sunding's testimony about optimal, absolute, and efficient deterrence is nonlegal material within the heartland of his economic expertise. He will testify about the economics of deterrence to show why imposing a penalty against Anadarko is not necessary to achieve deterrence in this case. His opinions are grounded in long-standing fundamental economic theory and analysis. His testimony is the foundation for the argument that "degree of culpability" and "economic benefit" should be the two most important statutory penalty factors in this case. In addition, Dr. Sunding's testimony about deterrence and the economic consequences of imposing substantial penalties on a non-culpable, non-operator are nonlegal matters the Court may consider under the eighth penalty factor—"other matters as justice may require."[2]

The Government first targets an introductory portion of Dr. Sunding's reports where he paraphrased federal law and noted that one purpose of Clean Water Act penalties is deterrence. *See* Mot. 6–7 (citing Sunding Round 1 Report at 3–4). That background is helpful and undisputed in any case. Besides being correct, Dr. Sunding used it to set the stage for his discussion of the economics of deterrence. And even if it were objectionable, it does not taint any other part of Dr. Sunding's testimony. The Government's attempt to exclude all of Dr. Sunding's testimony simply because he introduced it with illustrative "legal conclusions" is a blatant overreach.

When trying to take Dr. Sunding's testimony about deterrence head on, the Government accuses him of saying things he has not said. It characterizes his testimony as "inconsistent with the statutory scheme" because he supposedly made legal determinations about the requirements

---

[2] The Government tacitly acknowledges this point by not moving to exclude Dr. Sunding's econometric analyses. He performed those analyses to show "that the realized trends in deepwater drilling are consistent with [his] argument on efficient deterrence—that real world events do not rule out [his] hypothesis." Sunding Round 3 Report at 7. It makes no sense for the Government to strike Dr. Sunding's hypothesis about consequences (Part I of his Round 1 report) yet leave unchallenged his supportive analyses (Part II).

for imposing a Clean Water Act penalty against any party in any case. Mot. 7. That accusation is false. Staying within his economic expertise, Dr. Sunding concluded that optimal deterrence and absolute deterrence do not require a penalty against Anadarko *in this case*. *See* Sunding Round 1 Report at 5 (concluding that a penalty against Anadarko "would result in over-deterrence above the optimal level"); *id.* at 6 (concluding that a penalty against Anadarko is not needed to achieve absolute deterrence). Dr. Sunding expressly declined to take a position on what level of deterrence federal law sets, *id.* at 5 n.14 & 6, although he opined that it could be inefficient and counterproductive to make a non-culpable, non-operating investor pay a portion of those penalties, *id.* at 8. Thus, Dr. Sunding has not "articulat[ed] the meaning of the Clean Water Act … under the guise of economic theory." Mot. 9.

In a surprising twist, the Government also contends that Dr. Sunding's "legal" opinions should be excluded because his legal research and analysis were not thorough enough. The Government complains, for example, that Dr. Sunding did not address all "legislative history or Congressional intent," Mot. 8, that he does not know this Court's views on public policy, *id.* at 8–9, and that he did not do enough case law research, *id.* at 9. That just proves our point. Dr. Sunding is not even rendering a legal opinion in the first place.

The Government's other challenges to Dr. Sunding's testimony about deterrence are, at most, cross-examination points improperly packaged in a motion *in limine*. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) (holding that "vigorous cross-examination" is one of "the traditional and appropriate means of attacking" expert testimony). At trial, the Government may ask Dr. Sunding whether his opinions about efficient deterrence and transaction costs would be different if "parties could agree to an indemnification clause for damages but not one for penalties." Mot. 8. Similarly, the Government can try to demonstrate that his lack of

7

first-hand involvement in Anadarko's settlement with BP undermines his conclusion that the settlement "constitutes a 'reasonable assessment'" of Anadarko's share of OPA damages. *Id.* at 7. What the Government has not shown, and cannot show, is why cross-examining Dr. Sunding on these points at trial would be so prejudicial that the Court should exclude his testimony now.

This case is materially unlike *Tyson v. Amerigroup*, No. 02-C-6074, 2007 WL 7034899 (N.D. Ill. Jan. 30, 2007). *Tyson* was a False Claims Act case, and the court excluded the opinion of an economics professor who spent "a great deal of time" attacking a jury verdict before opining that statutory treble damages were over-deterrent and therefore unconstitutionally excessive under the Eighth Amendment. *See id.* at *1. Although the reasoning of the unpublished *Tyson* order is slim, the court appears to have concluded that the professor's testimony about deterrence would not help the court decide whether, as a constitutional matter, mandatory treble damages were "grossly disproportionate to the gravity of the defendant's offense," an inquiry that does not turn on deterrence. *United States v. Bajakajian*, 524 U.S. 321, 327–28 (1998) (articulating the Eighth Amendment standard for excessive fines). Here, by contrast, Congress has given the Court discretion to tailor Anadarko's civil penalty to achieve deterrence.

In the end, if the Government thinks federal law requires or allows the Court to impose a substantial penalty on Anadarko for some reason other than deterrence, or merely disagrees with Dr. Sunding's opinions about deterrence, the Government can make those arguments. But neither is a reason to strike Dr. Sunding's explanation of the economics of deterrence and his opinions that imposing a substantial penalty on Anadarko here would not serve a deterrent purpose.

    **B.    Dr. Sunding Can Relate His Opinions To The Statutory Penalty Factors And Can Walk Through The Evidence Pertaining To Each Factor.**

Dr. Sunding concluded his report by refuting the Government's threadbare contentions that imposing substantial penalties on Anadarko will achieve deterrence. *See* Sunding Round 1

Report at 16 (noting that penalizing non-culpable non-operators disincentivizes investment and could deter future spills "only by reducing the number of actual operations, not by making them safer"). Like his affirmative testimony about deterrence, Dr. Sunding's rebuttal testimony about deterrence is fundamentally economic, not legal. It should not be excluded.

Because this Court must decide what weight to give the statutory penalty factors in this case, *see Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 574 (5th Cir. 1996), Dr. Sunding walked through the factors to illustrate his economic conclusion that culpability and economic benefit are the most important factors for achieving deterrence against Anadarko, *see* Sunding Round 1 Report at 16–20. Contrary to the Government's suggestion, Dr. Sunding did not "read[] a culpability requirement into" the Clean Water Act or rely on legal judgments, like a lawyer might, to conclude that "degree of culpability" (a factor Congress wrote into the statute) and "economic benefit" are the two most important factors in Anadarko's case. *See* Mot. 7; *see also id.* at 5 (citing *Snap-Drape*). Dr. Sunding reached his case-specific conclusions via economic judgments alone. *See* Sunding Round 1 Report at 6, 8 (explaining how, given case-specific circumstances, degree of culpability is the factor most material to achieving efficient deterrence in this case and economic benefit is most material to achieving absolute deterrence). If more were needed to show that Dr. Sunding's opinions about the penalty factors are economic, not legal, one need only read the footnotes in his reports, where he forswore making legal conclusions about whether a nonzero penalty must be imposed.[3]

---

[3] The Government's observation that culpability does not matter to the threshold question of *liability* is a non sequitur. *See* Mot. 7 (contending that "Dr. Sunding reads a culpability requirement into CWA § 311(b), a strict liability provision that does not depend on fault"). The question now is *what the penalty amount should be*. The Clean Water Act's penalty factors require the Court to consider "degree of culpability" to answer that question. Insofar as the Government contends that the Court must impose a non-zero penalty on Anadarko simply because Anadarko is strictly liable, that contention is inconsistent with *Tull*. The penalty provision at is-
(footnote continued on next page)

9

By virtue of his experience in other Clean Water Act penalty cases, Dr. Sunding is also qualified to review the evidence pertaining to the other statutory penalty factors. *See* Sunding Round 1 Report at 1; *see also id.* at App. 1, App. 3. The Government's motion makes it seem extraordinary that an expert like Dr. Sunding could discuss the penalty factors, but expert witnesses have done so before. *See, e.g.*, *United States v. Smithfield Foods, Inc.*, 191 F.3d 516, 523 (4th Cir. 1999) (noting that the district court had "heard from both sides' experts who opined on the proper calculations for each of the factors to be considered under the CWA's penalty statute"). And the Government's complaint that Dr. Sunding recited record evidence and admissions in connection with the other factors, *see* Mot. 5–6, is not a reason to exclude his testimony. If there is something he missed, the Government can bring it up on cross-examination.

Ultimately, the Government appears to be complaining that Dr. Sunding has touched on the ultimate issue in this case—what penalty, if any, Anadarko deserves. Rule 704 does not prohibit that testimony. It prohibits the Government's motion.

## V. CONCLUSION.

The Government's motion *in limine* should be denied in full.

Respectfully submitted,

DATED: December 15, 2014        **MORGAN, LEWIS & BOCKIUS LLP**

/s/ *James J. Dragna*_____
James J. Dragna

---

sue in *Tull* was a similarly worded strict liability provision, 481 U.S. at 414–15, and the Court held that a district court, in exercising its discretion to determine "the amount of penalty, *if any*," could choose to impose none, *id.* at 427. Thus, courts have declined to assess penalties in cases where penalties would not serve the intent of the Act. *See, e.g., Resurrection Bay Conservation Alliance v. City of Seward, Alaska*, No. 3:06–CV–0224–RRB, 2008 WL 508499, at *6 (D. Alaska Feb. 21, 2008) (concluding that civil penalties under Section 309 were "not appropriate" when the defendant was "technically" liable but not culpable; the Clean Water Act "was not intended to prohibit responsible use of the resource or to make such use cost prohibitive.").

jim.dragna@morganlewis.com
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@morganlewis.com
Thomas R. Lotterman
thomas.lotterman@morganlewis.com
David B. Salmons
david.salmons@morganlewis.com
Randall M. Levine
randall.levine@morganlewis.com
Morgan, Lewis & Bockius LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

**KUCHLER POLK SCHELL
WEINER & RICHESON, LLC**

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA 70112
Telephone (504) 592-0691
Facsimile (504) 592-0696

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on December 15, 2014.

/s/ *James J. Dragna*
James J. Dragna