UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE GULF | : | |
| OF MEXICO, ON APRIL 20, 2010 | : | SECTION J |
| | : | |
| THIS DOCUMENT RELATES TO: 10-4536 | : | JUDGE BARBIER |
| | : | |
| | : | MAGISTRATE JUDGE SHUSHAN |

_____

**CLEAN WATER ACT – PENALTY PHASE**

**THE UNITED STATES' OPPOSITION TO:
BPXP'S MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF
CAPTAIN MARK VANHAVERBEKE**

**I.      INTRODUCTION**

BPXP seeks to exclude certain opinions and testimony of Captain Mark VanHaverbeke, a

retired United States Coast Guard officer with extensive field, supervisory and research

experience in the area of spill response. BP's first attack is on Captain VanHaverbeke's opinions

on the effectiveness of the *Deepwater Horizon* response. It argues that his opinions should be

excluded because his Round 2 report relied on the outdated Oil Budget Calculator for computing

the percentage of oil that was burned, dispersed and skimmed. Captain VanHaverbeke corrected

this error at his deposition and in an errata sheet served on December 5, 2014. *See Exhibit A*. The

revised figures do not change his opinion that the percentage of oil skimmed was unremarkable

and that burning and dispersing do not remove oil from the environment.

The next attack is on Captain VanHaverbeke's opinion that dispersant use decisions were

made in an appropriate manner. BP argues that his opinion was supported by his interview of

Rear Admiral Mary Landry, USCG (ret.), making him a mouthpiece for Admiral Landry in

violation of prior Court Orders. The interview BP criticizes, however, was not prohibited by a Court Order, and it merely informed one of several basis for Captain VanHaverbeke's opinion. Captain VanHaverbeke did not act as Admiral Landry's mouthpiece. The section of Captain VanHaverbeke's report that BP seeks to exclude does not quote or cite Admiral Landry.  While he considered his interview of Admiral Landry in forming his opinion, he also relied upon his own professional experience and his evaluation of a variety of materials. Consequently, there is no reasonable basis upon which to exclude Captain VanHaverbeke's opinions or testimony.

## II.     ARGUMENT

### A.  Applicable Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F. 3d 146, 158 (5th Cir. 2006). Before expert testimony can be admitted under this rule, the court must act as a gatekeeper and conduct a two-part examination to ensure that the testimony is both relevant and reliable. *See Daubert*, 509 U.S. at 589; *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147-51, 153 (1999).[1] Relevant testimony is that which is sufficiently tied to the issues or facts of the case. *Daubert*, 509 U.S. at 591. Determining the reliability of testimony requires the court to assess the validity of the reasoning or methodology underlying an expert's testimony. *Id.* at 592-593. Proposed testimony, therefore, must be supported by good grounds. *Id.* at 590. Notwithstanding *Daubert* and its progeny, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Comm.'s Note (2000).

---

[1] *See Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. Appx. 377, 381 (5th Cir. 2006); *Hodges v. Mack Trucks, Inc*., 474 F.3d 188, 194 (5th Cir. 2006); *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002)*; Curtis v. M&S Petroleum, Inc.* 174 F.3d 661, 668 (5th Cir. 1999); *Schmidt v. MTD Prod., Inc.*, No. 04-3412, 2006 WL 5127539, at *1 (E.D. La., July 5, 2006) (Barbier, J.).

Courts are not required to admit expert opinion totally based on indisputably wrong facts; expert testimony should be excluded if such "testimony is so fundamentally unsupported that it cannot possibly help the factfinder." *General Elec. Capital Business asset Funding Corp. v. S.A.S.E. Military Ltd*., 2004 WL 5495590, at *5 (W.D. Tex. Oct. 21, 2004) (citing V*iterbo v. Dow Chemical Co*., 826 F.2d 420, 422 (5th Cir.1987)); *Guillory v. Domtar Industries, Inc*., 95 F.3d 1320, 1331 (5th Cir. 1996) (quoting *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1114 (5th Cir. 1991)). Experts, however, can and do make mistakes. Generally, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility . . . ." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.,* 80 F.3d 1074, 1077 (5th Cir.1996) (quoting *Viterbo*, 826 F.2d at 422). Miscalculations, errors and inconsistencies are not grounds to exclude evidence, but rather, they are factors to be considered by the trier of fact when determining the expert's credibility and the reliability of their ultimate findings. *Southwire Co. v. J.P. Morgan Chase & Co*., 528 F. Supp. 2d 908, 935 (W.D. Wis. 2007); *Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, 2009 WL 2356292, at *3 (E.D. La. July 28, 2009). Furthermore, "[w]hen a mistake is discovered and fixed it advances the cause of justice," and such error should not be considered as a problem when assessing the reliability of expert testimony. *Wal-Mart Stores, Inc. v. Qore, Inc.*, 2009 WL 224908, at *4 (N.D. Miss. Jan. 28, 2009).

 Experts are also "permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. If experts in the field would reasonably rely on a type of fact, that fact need not be admissible in order for the opinion to be admitted. Fed. R. Evid. 703. An expert's opinion, then, may be grounded in information that is otherwise inadmissible, like hearsay. *Factory Mut. Ins. v. Alon USA L.P.*, 705 F.3d 518,

523 (5th Cir. 2013). As part of the court's gate-keeping role, it must ensure that an expert is not used to circumvent the rules of evidence. *Id.* at 524. Experts circumvent such rules when they merely transmit hearsay to the court, not when they apply their extensive experience and a critical eye to the inadmissible materials. *Id.* at 524-25 (quoting *United States v. Mejia*, 545 F.3d 179, 197 (2nd Cir. 2008).

Lastly, this Court has issued many rulings over the years denying *Daubert* motions to exclude expert testimony in bench trials.[2]  The purpose of *Daubert* motions, after all, is to ensure that the jury is only presented reliable and relevant expert testimony. *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 506 (5th Cir. 1999) (superseded by rule on other grounds). *Daubert* safeguards become less essential in a case where the trier of fact is not a jury but rather the district court judge. *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). Given, then, that Phase Three of this case is a bench trial, and thus that the objectives of *Daubert,* upon which BP's motion is premised, are no longer implicated, the Court should find that the motion to exclude expert testimony should be denied. *See Deville v. Comar Marine Corp*., No. 08-4104, 2009 WL 1870896, at *1 (E.D. La. June 25, 2009) (Barbier, J.), (quoting *Daubert*, 509 U.S. at 596; *14.38 Acres of Land*, 80 F.3d at 1078).

B. <u>Captain VanHaverbeke's Opinions as to the Effectiveness of the *Deepwater Horizon* Response are Relevant and Reliable and Should Not be Excluded</u>

BP, through Captain Paskewich, asserts that the *Deepwater Horizon* response efforts were "extraordinarily effective in minimizing the effects of the spill."  (8/15/14 Paskewich Rpt.

---

[2] *See e.g. Young v. BP Exploration & Prod., Inc. et al,* No. 11-1003, 2012 WL 2087405 (E.D.La. June 8, 2012) (Barbier, J.); *United States Marine, Inc. v. United States,* No. 08-2571, 2009 WL 3480979 (E.D.La. Oct. 26, 2009) (Barbier, J.); *Poiencot v. Globalsantefe Drilling Co. et al.,* No. 06-10793, 2008 WL 5429645 (E.D.La. Aug. 6, 2008) (Barbier, J.); *Wilson v. American Sec. Ins. Co.,* No. 07-5984, 2008 WL 2704522 (E.D.La. July 3, 2008) (Barbier, J.); *Matheny v. Tetra Techs., Inc.,* No. 07-1556, 2008 WL 2178091 (E.D.La. May 22, 2008) (Barbier, J.); and *School Bd. Of the Parish of St. Charles v. Shell Oil Co.,*No. 04-2511, 2007 WL 756458 (E.D.La. March 8, 2007) (Barbier, J.).

at 19 included as *Exhibit C*). Captain Paskewich and Captain VanHaverbeke agree that

approximately 10-15% of oil is typically removed in open ocean spill responses. (8/15/14

Paskewich Rpt. at 19; VanHaverbeke Dep. at 142:21-143:1, 172:14-19 included as *Exhibit E*).

Using the government's spill volume estimates, Captain Paskewich compared the 29% of oil that

was skimmed, burned and chemically dispersed during *Deepwater Horizon* with the 10-15% of

oil that is typically removed and concluded that the *Deepwater Horizon* response was

exceptional. (8/15/14 Paskewich Rpt. at 19). Captain VanHaverbeke finds Captain Paskewich's

comparison to be inappropriate. (9/12/14 VanHaverbeke Rpt. at 4-5 included as *Exhibit B*).

Captain VanHaverbeke opines that burning and chemically dispersing do not remove oil from

the environment and the 3.8% skimmed during the *Deepwater Horizon* response is unremarkable

when compared to typical removal rate for open ocean spill responses. (VanHaverbeke Dep. at

136:2-13; 144:1-3, 150:16-20, 154:1-11, 161:16-23 169:16-25, 170:1-13). BP, however, has used

Captain VanHaverbeke's initial reliance on the outdated Oil Budget Calculator to attack his

opinions on the effectiveness of the *Deepwater Horizon* response.

Captain VanHaverbeke admittedly relied on the outdated Oil Budget Calculator in his

Round 2 report. This mistake was explored extensively during the deposition, as well as

corrected in an errata sheet provided to BP on December 5, 2014. His opinions, however, did not

change when he used the updated Oil Budget Calculator to compute the amount skimmed,

burned and chemically dispersed. The removal rate remained unremarkable at 3.8%, which is

well below what is typical for open water spills. Furthermore, the exact percentages of oil

burned, dispersed or skimmed do not change Captain VanHaverbeke's opinion that burning and

dispersing do not remove oil from the environment.

Since corrections were made and his opinions did not change, the fact that he relied on the outdated Oil Budget Calculator in his Round 2 report is immaterial. It does not, then, give rise to the level of preventing Captain VanHaverbeke from presenting his opinion on the effectiveness of the *Deepwater Horizon* removal efforts.  His opinions are both relevant and reliable, and they will help the Court better understand the evidence and determine facts in issue.

a.  *Captain VanHaverbeke's Use of Preliminary Data Was Admitted, Extensively Questioned, Corrected and Does Not Alter His Opinions*

In Captain VanHaverbeke's deposition, he explained that in drafting his Round 2 report he used numbers taken from an outdated section of the Oil Budget Calculator. (*See* VanHaverbeke Dep. at 134:21-25, 143:10-21; 161:16-25, 162:1-10, 163:10-17, 164:1-4).[3] The use of these preliminary figures caused him to miscalculate the percentages of oil skimmed, burned and dispersed during the *Deepwater Horizon* response. He has since updated those calculations using the data found on page 5 of the United States' Third Supplemental Interrogatory Response.  *See* Exhibit A.

BP has been aware that Captain VanHaverbeke used preliminary figures no later than September 26, 2014, when Captain Paskewich's Round 3 report pointed out that Captain VanHaverbeke did not rely on the data in the United States' Third Supplemental Interrogatory Response. (*See* 9/26/14 Paskewich Rpt. at 8).  This matter was then extensively examined during Captain VanHaverbeke's deposition, covering pages 134 to 171 of the transcript.

The use of the preliminary figures and the results of the corrected calculations based on the updated data proved to be unimportant because the opinions that Captain VanHaverbeke maintains today are the same as they were in his Round 2 report. He testified that "[t]he

---

[3] The number of barrels of oil skimmed was essentially unchanged as 160,000 barrels is merely 156,694 rounded to two significant digits. All numbers in the final oil budget calculator were rounded to two significant digits.

calculations were incorrect, but going back and looking at the arithmetic, using the upper value, I still stand by my position." (VanHaverbeke Dep. at 143:7-9). That is, Captain VanHaverbeke still finds that a removal rate below 4% is unremarkable and that burning and dispersing do not remove oil from the environment. (*See* 9/12/14 VanHaverbeke Rpt. at 2-5; VanHaverbeke Dep. at 136:2-13; 144:1-3, 150:16-20, 154:1-11, 161:16-23 169:16-25, 170:1-13).

        *b.   Neither 3% Nor 3.8% is an Extremely Effective Recovery Rate for Skimming*

In his deposition, Captain VanHaverbeke explained that the percentage of oil skimmed during the *Deepwater Horizon* response was unremarkable According to both his original and updated calculations. (*See* VanHaverbeke Dep. 136:2-13). Captain VanHaverbeke's Round 2 report states that 3% of the oil was recovered through skimming. (9/12/14 VanHaverbeke Rpt. at 5). He later testified, however, that the actual amount skimmed was 3.8%, which is "below 4 percent" and "still unremarkable." (VanHaverbeke Dep. 136:8-13, 150:21-25). This marginal change in percentage skimmed did not change Captain VanHaverbeke's conclusion that the amount removed was "well below what is normally expected on open waters or has been shown on open waters." (VanHaverbeke Dep. at 150:16-20, 170:1-25).

The revised calculations mirror those computed by Captain Paskewich, which Captain VanHaverbeke admitted were accurate in his deposition. (VanHaverbeke Dep. at 142:15-143:21). This makes sense given that the parties agree that the proper inputs to the calculation come from the United States' Third Supplemental Response to BP's Interrogatory #10 and that the division itself is a reliable process. The difference, then, is that Captain Paskewich includes burning and dispersing in his removal rate, while Captain VanHaverbeke does not. Captain VanHaverbeke has always maintained that burning and dispersing do not remove oil from the

environment. (*See* 9/12/14 VanHaverbeke Rpt. at 4; VanHaverbeke Dep. at 144:1-3, 154:1-11, 161:16-23 169:16-25).

  c. *Captain VanHaverbeke's Opinion on Oil Removed During the* Deepwater Horizon *Response Is Not Dependent on the Percentages of Oil Burned and Dispersed*

Captain VanHaverbeke's opinion that burning and dispersing oil does not remove it from the environment is not based on the calculations BP has taken issue with. BP's Motion to Exclude implies that these calculations form the basis of his disagreement with Captain Paskewich's assertion that the response was extraordinarily effective, greatly surpassing the typical 10-15% removal rate. To the contrary, Captain VanHaverbeke's first assertion in Section III.2 of his Round 2 report does not reference percentages at all:

> First, it is important to remember that dispersants do not remove oil pollution from the marine environment. Instead, oil is dispersed throughout the water column. The use of dispersants represents a trade-off between limiting the potential for harm on the water surface and shorelines while increasing the potential for harm throughout the water column. Similarly, in situ burning alters the composition of spilled oil and transfers a portion into the atmosphere as soot and gaseous emissions. The transfer of byproducts to the atmosphere is recognized as a trade-off that, in many situations, poses less environmental threat than leaving the oil on the water surface. [footnotes omitted]

The opinion that dispersants merely disperse oil and burning oil produces soot and gas is hardly surprising and is not impacted by how much oil is dispersed and burned. It is an opinion on the qualitative difference between skimming oil and burning or dispersing oil, and BP has not shown that such an opinion is unreliable.

**C.   Captain VanHaverbeke's Opinion on Dispersant Use Decisions Is Properly Supported by His Interview With Admiral Landry, Does Not Prejudice BP, and Should Not be Excluded**

In Section III.3 of Captain VanHaverbeke's Round 2 report he opines that dispersant application decisions were made in an appropriate manner during the *Deepwater Horizon*

response. (*See* 9/12/14 VanHaverbeke Rpt. at 6).  BP seeks to exclude this entire section of the

report, arguing that Captain VanHaverbeke's opinion is based on an interview with Admiral

Landry conducted in contravention to an order of this Court. (BP Motion to Exclude at 2).

However, nowhere in that section of his report does Captain VanHaverbeke quote or cite to his

interview of Admiral Landry and the interview was not the sole basis for any opinion offered

therein.[4] Captain VanHaverbeke's opinion was reached after he applied his expertise in spill

response to what he learned about dispersant use in the *Deepwater Horizon* response. Admiral

Landry's interview and Captain VanHaverbeke's opinions do not violate this Court's orders or

prejudice BP.

> a. *Captain VanHaverbeke's Reliance on his Interview with Admiral Landry was Limited and Proper*

Captain VanHaverbeke makes five points supporting the proposition that decisions

regarding dispersant use were made in an appropriate manner. The first is that the discussion in

Captain Paskewich's Round 1 report regarding the Environmental Protection Agency's ("EPA")

involvement with dispersant use "lack[ed] context."  (9/12/14 VanHaverbeke Rpt. at 6). While

not cited for this particular point, Captain VanHaverbeke acknowledged at his deposition that his

interview with Admiral Landry helped inform this portion of his opinion.  However, the

interview merely served as one source of information among several.  Captain VanHaverbeke

also relied upon information drawn from the documents cited in his report and his own

considerable experience in oil spill response in formulating this part of his opinion. (*See* 9/12/14

VanHaverbeke Rpt. at 6; VanHaverbeke Dep. at 220:23-222:2).  Despite this limited use of the

---

[4] In fact, the interview with Admiral Landry is not cited anywhere in Captain VanHaverbek's report.  It was simply disclosed in the reports introduction.  The only testimony of Admiral Landry that is cited in Captain VanHaverbeke's Round 2 report is in Section III.1. (9/12/14 VanHaverbeke Rpt. at 2). There, her deposition testimony is cited for the proposition that BP was initially unresponsive to her requests for establishing Forward Operating Bases in Louisiana. (9/12/14 VanHaverbeke Rpt. at 2 n.1).

interview with Admiral Landry's, BP argues that Captain VanHaverbeke's opinion on dispersant use and limitations seeks "to funnel Admiral Landry's recollection of events surrounding the issuance of Addendum 3 . . ." and seeks to include that entire section of Captain VanHaverbeke's report.  (BP's Motion to Exclude at 11).

At Captain VanHaverbeke's deposition, BP inquired extensively into his interview with Admiral Landry. In its Motion, BP provides four specific references to support its assertion that Captain VanHaverbeke relied on the interview to support his opinion on dispersant use decisions. (BP's Motion. to Exclude at 11). The first does not reference Admiral Landry at all. (VanHaverbeke Dep. at 193:6-9).  The second and third are part of an extensive discussion of a number of e-mails sent around the time that Addendum 3 was issued. (VanHaverbeke Dep. at 209:11-19, 220:23-221:2).  Captain VanHaverbeke did refer to his interview with Admiral Landry when he stated that these e-mails from late May 2010 failed to consider the April 2010 discussions about reducing the use of surface dispersants if subsea dispersants were effective. (VanHaverbeke Dep. at 220:11-22). He also specifically referenced a National Oil Spill Commission Meeting cited in his report. (VanHaverbeke Dep. at 221:3-12). In the last reference, Captain VanHaverbeke admits that the Admiral Landry interview was the basis for his opinion that the subsea dispersant limit was based on BP's stated flow rate of 5,000 barrels per day. (VanHaverbeke Dep. at 227:9-228:1). This opinion, however, was not part of his expert report and was only offered in response to BP counsel's question as to whether he had any reason to disagree with a statement made by the EPA Office of Inspector General. (VanHaverbeke Dep. at 227:9-228:1).

To the extent that Captain VanHaverbeke did rely on information gleaned form in interview with Admiral Landry, a key participant in the events directly related to the opinions he

offers in this case, that reliance was not improper and he has certainly not become Admiral

Landry's mouthpiece. *See Loeffel Steel Products, Inc v. Delta Brands, Inc.*, 387 F. Supp. 2d 794,

808 (N.D. Ill. 2005) ("Rule 703 . . . was not intended to abolish the hearsay rule and to allow a

witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the

witnesses on whose statements or opinions the expert purports to base his opinion.").  When an

expert, like Captain VanHaverbeke, applies their extensive experience to inadmissible materials,

the rules of evidence are not being circumvented and it is appropriate to ground their opinion in

the inadmissible information. *Factory Mut. Ins.,* at 523.

It also bears mention that Bruce Den Uyl, one of BP's experts, offers opinions and

assertions that rely on his interviews of individuals that were not disclosed to the United States or

made available for cross examination.[5]

> b.  *Captain VanHaverbeke's Opinion and the Admiral Landry Interview Did Not Circumvent Court Orders or Prejudice BP*

Efforts by the United States to add Admiral Landry as a fact witness were denied as

untimely. (8/5/14 Order, Rec. Doc. 13,251; 8/29/14 Order, Rec. Doc. 13,341).  BP now asserts

that this Court's order denying the United States' request to add Admiral Landry to its 26(a)

disclosure should somehow work to exclude the expert testimony of a Captain VanHaverbeke

simple because he had a conversation with her.  The United States has complied with both the

letter and spirt of this Court's order.   Admiral Landry will not be offered as a live fact witness at

the Penalty Phase trial.  Captain VanHaverbeke's conversation with her was a reasonable part of

---

[5] During his deposition, Den Uyl admitted that his opinions relied on his interviews of several London-based BP managers. (DenUyl Dep. at 43:4-45:5, 128:15-130:24, 131:13-25, 157:11-24, 170:15-20, 175:15-176:7 include as *Exhibit F*). These managers were never listed on BPXP's Rule 26(a) disclosures, so the United States never got the chance to depose them.

his inquiry into the matters upon which he was asked to opine and not precluded by this Court's order.

Finally, BP's was in no way prejudiced by Captain VanHaverbeke's reliance on limited information provided by Admiral Landry:  She sat for two days of deposition in Phase 2 of this proceeding; BP and they had the opportunity to depose Captain VanHaverbeke on his use of information drawn from the interview of Admiral Landry; and the United States offered Admiral Landry as a Rule 30(b)(6) witness to testify about dispersants. BP chose not to depose her.

## III.   CONCLUSION

For the foregoing reasons, BPXP's Motion to Exclude Certain Opinions and Testimony of Captain VanHaverbeke should be denied.

Respectfully submitted,

JOYCE BRAND
Acting Assistant Attorney General
Civil Division
PETER FROST
Director, Torts Branch, Civil Division
Admiralty and Aviation
STEPHEN G. FLYNN
Assistant Director
SHARON SHUTLER
MALINDA LAWRENCE
LAURA MAYBERRY
Trial Attorneys


R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
SARAH HIMMELHOCH
Senior Litigation Counsel
NANCY FLICKINGER
Senior Attorney
RICHARD GLADSTEIN
PATRICK CASEY
Senior Counsel
A. NATHANIEL CHAKERES
JUDY HARVEY
RACHEL KING
ERICA PENCAK
ABIGAIL ANDRE
RACHEL HANKEY
BRANDON ROBERS
GORDON YOUNG
Trial Attorneys

*/s/ Sarah D. Himmelhoch*

12

STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
Facsimile:   202-514-2583
E-mail:  steve.o'rourke@usdoj.gov

KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA  70130
Telephone:  (504) 680-3000
Facsimile:  (504) 680-3184
E-mail:  sharon.d.smith@usdoj.gov

Attorneys for the UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12.

Date:  December 15, 2014.

*/s/ Sarah D. Himmelhoch*
U.S. Department of Justice