# Exhibit 1



December 3, 2014

**Via Electronic Mail**

Mark R. McNamee
McGladrey LLP
Suite 400
1861 International Drive
McLean, Virginia 22102
mark.mcnamee@mcgladrey.com

      **Re:    Release of Additional Materials Related to the Audit Reports**

Dear Mr. McNamee:

      Pursuant to the Court's order of October 31, 2014, the Claims Administrator delivered the final McGladrey LLP audit reports to the Court on November 17, 2014. *See* November 25, 2014 Order, Rec. Doc. 13709. As you are aware, the Court reviewed the final audit reports and ordered the Claims Administrator to file those reports into the public record upon receiving written permission from McGladrey. *Id.* The Claims Administrator thereafter filed the final reports into the public record (along with other materials). *See* Notice of Filing, Rec. Doc. 13716 (Nov. 25, 2014).

      BP now writes to request production of McGladrey's interim audit reports and other associated working papers (broadly defined — see list at the end of this letter) ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Additionally, throughout its final audit report of

---

[1] Regrettably, I must bring to your attention an important oversight in McGladrey LLP's November 7, 2014 transmittal letter concerning the final audit reports. That letter erroneously states that "[t]his report is intended for the sole benefit and use of DHECC management. Without our express written consent, this report may not be disclosed to, relied upon or used by any third party, except disclosure may be made to DHECC's external auditors." Letter of McGladrey LLP to Patrick Juneau (Nov. 7, 2014), Rec. Doc. 13716-1 at 2 of 88. This is directly contrary to ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ and thus BP trusts that in your response to this letter you will acknowledge the error in the November 7 transmittal letter. It was never in dispute prior to the November 7, 2014 cover letter that BP would receive a copy of the final reports.

November 7, 2014, McGladrey references interim reports generated as a part of its auditing process:

> Throughout our fieldwork, we [McGladrey] provided DHECC with interim reports. Each report included those observations that had been identified via supporting documentation and discussion with relevant CSSP personnel. As part of this process, recommendations were provided to, and management responses were received from, DHECC management. To the extent that an observation noted in the body of this report was not also communicated to management in an interim report, we have so indicated.

McGladrey LLP Claims Processing Review Report, Rec. Doc. 13716-1 at 7. Indeed, interim reports are referenced throughout the McGladrey final report on numerous pages, *see id.* at 2, 5, 7, 55, 56, 59 60, 61, 63, 65, 67, 69, 70, 71 and 72, suggesting that interim reports were integral to McGladrey's auditing process and should therefore be provided to BP ███████████████
███████.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████ Given the extraordinary expense of the McGladrey audit — well over $14 million — ███████████████████████. Failure to share any working papers including interim reports generated during and used for the production of the final report would deny BP a necessary basis upon which to determine whether ███████████████████
█████████.[2] Simply seeing the final product, which took 13 months to complete, does not afford BP an opportunity to gauge McGladrey's efficiency and the "reasonableness" of the millions of dollars in cost BP directly incurred.

Moreover, in recognition of the fact that BP is the real party in interest concerning the benefits that would accrue from a properly performed audit and the ensuing reforms of CSSP operations that such an audit should produce, ███████████████████████████
██████████████████████████ █ █████████████ █ After all, any operational cost savings at the CSSP inure to BP. ███████████████████████████████████
███████████████████████████████████████████████[3]

---

[2] ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

[3] ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

2

something that BP is unable to accomplish without access to all interim materials McGladrey relied upon and produced in preparation of its final audit report.

███████████████████████████,[4] BP requests that McGladrey produce all working papers, interim reports, and the like generated by McGladrey during the auditing process, including:

1. any ad hoc reports as referred to in ███████████████████████;
2. the weekly status reports also referred to in █████;
3. any interim, preliminary, or draft reports (including thirty-day written reports);
4. the CSSP's Task Orders to McGladrey LLP, ██ ███████████████;
5. any separate Key Performance Indicators, ██ ███;
6. any correspondence to or from the CSSP or its agents (including vendors) to McGladrey in connection with any of the foregoing items;
7. accounting/accountant work papers of any other kind generated by McGladrey LLP to produce (a) the reports filed into the public record on November 25, 2014 and/or (b) any of the materials referenced above;

Thank you for your attention to this request. Please contact me with any questions about this letter.

Sincerely,

*Maria Travis*

Maria Travis
Director of Claims - GCRO

Cc: Patrick Juneau
James Roy
Steve Herman
Mark Holstein
Keith Moskowitz

---

[4] ███████████████████████████████████████████████████ The Settlement Agreement guarantees that "BP and Class Counsel shall have access to all . . . Claims-related data transferred to or generated in the Settlement Program for any legitimate purpose *including, without limitation, . . . reviewing and auditing the Settlement Program* . . . ." See Settlement Agreement § 4.4.14 (emphasis added).

3