**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re: Oil Spill by | * | MDL NO. 2179 |
|    the Oil Rig "Deepwater Horizon" | * | |
|    in the Gulf of Mexico, on April 20, 2010 | * | SECTION J |
| | * | |
| This document relates to: | * | Judge Barbier |
| No. 12-968 | * | |
| | * | Magistrate Judge Shushan |
| | * | |

**POLICY STATEMENT OF *DEEPWATER HORIZON* MEDICAL BENEFITS
CLAIMS ADMINISTRATOR IN RESPONSE TO ORDER REGARDING
CLASS COUNSEL'S MOTION FOR RECONSIDERATION (REC. DOC. 13303)
OF THE COURT'S ORDER OF JULY 23, 2014 REGARDING CHRONIC
<u>SPECIFIED PHYSICAL CONDITIONS (REC. DOC. 13179)</u>**

**I.       <u>INTRODUCTION</u>**

On November 26, 2014, the Court entered its "Order Regarding Class Counsel's Motion for Reconsideration (Rec. doc. 13303) of the Court's Order of July 23, 2014 Regarding Chronic Specified Physical Conditions (Rec. doc. 13179)," Rec. doc. 13733 (the "November 26 Order"). In the November 26 Order, the Court stated:

> [C]laimants need guidance on the "release issue" [as described in the November 26 Order] in order to decide whether to pursue compensation for an acute condition and perhaps forego compensation for a chronic condition that was first diagnosed after the operative date; or whether they may have the possibility of pursuing both. And it seems to the Court that this is not just an issue of a progression from an acute condition to a chronic condition; but also whether the release allows recovery for an acute or chronic condition but then permits a BELO claim for either an unrelated or a separate diagnosis of a chronic condition.

*Id.* at 7-8. Accordingly, the Court directed the Claims Administrator to "review the 'release issue' and issue a policy statement within twenty-one (21) days of the date of the issuance of this order," and further directed that the "policy statement should contain examples of the various

scenarios at issue." *Id.* at 8 (emphasis omitted).  The Claims Administrator submits this policy statement in response to the November 26 Order.[1]

To understand the guidance in this policy statement, it is first important to understand how the Claims Administrator's responsibility and authority to process claims for Specified Physical Conditions differ from its responsibility and authority to process claims for Later-Manifested Physical Conditions.  With respect to the former, the Medical Settlement Agreement provides that the Claims Administrator "shall determine whether a Medical Benefits Settlement Class Member qualifies for compensation for a Specified Physical Condition (including the type and amount of compensation on the Specified Physical Conditions Matrix)" based upon "its review of the Proof of Claim Form, including the documentation submitted therewith, and the results of any investigations by the Claims Administrator of the Medical Benefits Settlement Class Member's claim." Rec. doc. 6427-1, Medical Settlement Agreement § V.J.  "The Claims Administrator's determination as to whether the Medical Benefits Settlement Class Member . . . has qualified for compensation for a Specified Physical Condition under this Medical Settlement Agreement and the amount of compensation for which he or she qualifies . . . shall be final and not appealable, unless a one-time review is requested in accordance with Section V.M." *Id.* § V.L.  Section V.M allows a Medical Benefits Settlement Class Member ("Class Member") to file a request for review with a designated employee of the Claims Administrator, who can only overturn the denial if he or she determines that "such denial was based on a clearly erroneous factual determination."  *Id.* § V.M.  Thus, for Specified Physical Condition claims, the Claims Administrator makes the final determination as to whether a Class Member is entitled to compensation under the requirements established by the Medical Settlement Agreement.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to their fully capitalized renderings in the Medical Settlement Agreement.

The Claims Administrator's role in processing claims for Later-Manifested Physical Conditions is markedly different. It does not require or even authorize the Claims Administrator to determine whether the Class Member is entitled to compensation. Instead, pursuant to the Medical Settlement Agreement, the Claims Administrator will review each Notice of Intent to Sue to determine whether it is timely and has been properly completed and, if so, will transmit the Notice of Intent to Sue to BP. *Id.* § VIII.C.1. BP then will determine whether to mediate the claim. *Id.* If a BP defendant elects to mediate, the Claims Administrator will notify the Class Member of BP's election, will facilitate the exchange of information between BP and the Class Member, and will select a mediator. *Id.* § VIII.C.2-3, E.1. If a BP defendant elects not to mediate, or if the mediation does not resolve the Class Member's claim, the Claims Administrator will so notify the Class Member, at which point the Class Member may file a Back-End Litigation Option Lawsuit. *Id.* § VIII.C.2, F. In essence, the Claims Administrator simply evaluates whether a Notice of Intent to Sue is timely and complete and then serves as a conduit of information between the Class Member and BP. The Claims Administrator has no role in determining whether a Class Member qualifies for compensation for a Later-Manifested Physical Condition. That function is performed exclusively by a mediator or court.

The differences in the Claims Administrator's role in processing Specified Physical Condition claims and Later-Manifested Physical Condition claims inform the statements below. In addressing a Class Member's right to compensation for a Specified Physical Condition, the Claims Administrator can offer definitive guidance, because it is the one ultimately responsible for determining whether such a claim qualifies for compensation. But in addressing claims for Later-Manifested Physical Conditions, the Claims Administrator's statements may not have a binding or authoritative effect. It is possible that a mediator or court might reach a different

conclusion about whether a Class Member is entitled to receive compensation for a Later-Manifested Physical Condition. All Class Members and their counsel are urged to keep this distinction in mind when reviewing this policy statement.

## II.   DISCUSSION

Section XVI of the Medical Settlement Agreement sets forth the language of the release that is binding upon all Class Members. It provides in pertinent part:

> A.   In consideration of the benefits described and the agreement and covenants contained in this Medical Settlement Agreement, the Medical Benefits Settlement Class, the Medical Benefits Class Representatives, and all Medical Benefits Settlement Class Members promise, covenant, and agree that, upon the Effective Date and by operation of the Final Order and Judgment, the Medical Benefits Settlement Class, the Medical Benefits Class Representatives, and the Medical Benefits Settlement Class Members, . . . shall release and forever discharge the Released Parties from any liability for all claims of any nature whatsoever . . . that have been or could have been brought in connection with:
>
> 1)   Personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), and any progression and/or exacerbation of personal injury or bodily injury, that first manifested by April 16, 2012, where such injury, progression, and/or exacerbation in whole or in part arose from, was due to, resulted from, or was related to, directly or indirectly, the *Deepwater Horizon* Incident, or wrongful death and/or survival actions as a result of such injury, progression, and/or exacerbation . . . .

Rec. doc. 6427-1, Medical Settlement Agreement § XVI.A.1. The Proof of Claim Form that each Class Member must complete to assert a claim for a Specified Physical Condition contains similar language. Rec. doc. 6427-7, Proof of Claim Form at 14. The "release issue," therefore, has to do with the interplay of the language "any progression and/or exacerbation" in the context of any Class Member who receives compensation for an acute Specified Physical Condition and also files for a Later-Manifested Physical Condition.

Based on the November 26 Order and the transcript from the hearing on the release issue, there appear to be four scenarios at issue: (1) a Class Member receives compensation for an acute

4

Specified Physical Condition and is first diagnosed **on or before** April 16, 2012 with a chronic condition; (2) a Class Member receives compensation for an acute Specified Physical Condition and is first diagnosed **after** April 16, 2012 with a chronic condition that **is** a progression of the acute condition; (3) a Class Member receives compensation for an acute Specified Physical Condition and is first diagnosed **after** April 16, 2012 with a chronic condition that **is not** a progression of the acute condition; and (4) a Class Member receives compensation for a **chronic** Specified Physical Condition and is first diagnosed **after** April 16, 2012 with a **second chronic condition** that **is not** a progression of the first.  The Claims Administrator addresses each of these scenarios in turn.

As a preliminary matter, however, the Claims Administrator notes that, based on BP's statements at oral argument, it seems BP will not argue that the release precludes a Class Member from recovering compensation for the Later-Manifested Physical Conditions discussed in scenarios three and four.  As stated above, the release issue arises out of the language in the release providing that a Class Member, in exchange for the benefits under the Medical Settlement Agreement, releases claims for "[p]ersonal injury or bodily injury . . . , and any progression and/or exacerbation of personal injury or bodily injury, that first manifested by April 16, 2012" and was related to the *Deepwater Horizon* Incident.  *See* Rec. doc. 13733, November 26 Order at 6-8 (describing release issue); Rec. doc. 6427-1, Medical Settlement Agreement § XVI.A.1; Rec. doc. 6427-7, Proof of Claim Form at 14.  BP acknowledged at oral argument that the release does not preclude a Class Member from recovering compensation for one condition as a Specified Physical Condition and for a "different" condition as a Later-Manifested Physical Condition.  Rec. doc. 13733, November 26 Order at 7.  The Later-Manifested Physical Conditions in scenarios three and four are not progressions of the Specified Physical Conditions

5

for which the Class Member was compensated. *See infra* §§ II.3-4. Therefore, it would appear that, based on BP's statements at oral argument, it will not raise the release as a defense to the Later-Manifested Physical Condition claims in those scenarios.

> **1. Scenario One: Compensation for Acute Specified Physical Condition Prevents Recovery for Chronic Specified Physical Condition**

In the first scenario, a Class Member receives compensation for an acute Specified Physical Condition and is first diagnosed on or before April 16, 2012 with a chronic condition.

Because the chronic condition was first diagnosed on or before April 16, 2012, it would constitute a Specified Physical Condition. *See* Rec. doc. 13179, July 23, 2014 Order at 6 (holding that a condition diagnosed after April 16, 2012 is a Later-Manifested Physical Condition); Rec. doc. 13733, November 26 Order at 5 (affirming July 23, 2014 Order). The Proof of Claim Form, attached as Exhibit 5 to the Medical Settlement Agreement, provides that a Class Member is "eligible to receive only one lump sum compensation payment, regardless of the number of Specified Physical Conditions [the Class Member] submit[s]." Rec. doc. 6427-7, Proof of Claim Form at 9. Therefore, because the Class Member already had received compensation for the acute Specified Physical Condition at the time the Class Member submitted the claim for the chronic Specified Physical Condition, the Class Member would not be eligible for compensation for the chronic Specified Physical Condition.

If a Class Member submits more than one Specified Physical Condition claim at the same time, the Claims Administrator will review the proof the Class Member submits in support of each Specified Physical Condition he or she declares and will compensate the Class Member for the Specified Physical Condition that yields the largest amount of compensation when the lump sum, hospitalization enhancer, and Actual Hospital Expenses related to the Specified Physical Condition are added together. If a Class Member has two or more qualified Specified Physical

6

Conditions that tie for the highest gross award, the Claims Administrator will randomly select one of those conditions as the one for which the Class Member will be compensated. A Class Member is eligible to receive only one lump sum compensation payment. Rec. doc. 6427-7, Proof of Claim Form at 9.

If a Class Member has multiple acute Specified Physical Conditions (i.e., acute rhinosinusitis, acute conjunctivitis, and acute contact dermatitis) and intends to assert a Later-Manifested Physical Condition claim for the chronic version of one of those conditions (i.e., chronic rhinosinusitis), the Class Member may not want to include a claim for the acute version of that condition (i.e., acute rhinosinusitis) in his or her Proof of Claim Form, because the Claims Administrator might compensate the Class Member for that acute condition, and BP may then argue during a Back-End Litigation Option mediation or lawsuit that the Class Member thereby released his or her claim for the chronic version of that condition (i.e., it may argue as a defense to the Later-Manifested Physical Condition claim that, for example, chronic rhinosinusitis is a progression of acute rhinosinusitis).[2] On the other hand, if a Class Member does not intend to assert a Later-Manifested Physical Condition claim for the chronic version of an acute condition, the Class Member should include a claim for that condition and all of his or her other Specified Physical Conditions in his or her Proof of Claim Form, and the Claims Administrator will compensate the Class Member for the qualified condition that yields the largest gross amount.

---

[2] At oral argument, BP expressed its views on whether a Class Member who submits a claim for an acute condition may later recover for the chronic version of that condition:

> [I]f a Class Member submits a claim for an acute condition and is paid, receives compensation for that condition, then they cannot go on to later seek additional compensation for the exacerbation or progression of that condition.
>
> That would mean that someone who submits an acute condition cannot later file a second claim for the same condition as a chronic condition. That's pursuant to the release that's contained in the medical settlement --.

Rec. doc. 13733, November 26 Order at 6 (quoting Tr. at 53).

7

2. **Scenario Two: Compensation for Acute Specified Physical Condition May Prevent Recovery for Chronic Later-Manifested Physical Condition that Is a Progression of the Acute Condition**

In the second scenario, a Class Member receives compensation for an acute Specified Physical Condition and is first diagnosed after April 16, 2012 with a chronic condition that is a progression of the acute condition.[3]

---

[3] Scenarios two and three are alike in that both involve chronic conditions that constitute Later-Manifested Physical Conditions based on their first dates of diagnosis, but they differ in that the chronic condition in scenario two is a progression of a prior acute condition, whereas the chronic condition in scenario three is not. Before considering these scenarios, it is important to note that the question of whether a chronic condition is a progression or an exacerbation of a prior acute condition is one that can only be answered on a case-by-case basis. The following examples help to illustrate this point:

In the first example, a Class Member presents to a medical provider on March 12, 2012 and is diagnosed with acute contact dermatitis. The medical provider prescribes treatment for one month and schedules a follow-up visit with the Class Member. The Class Member presents to the medical provider again on April 15, 2012. The Class Member's dermal symptoms are persisting at the time of presentment. The medical provider diagnoses the Class Member with acute contact dermatitis and again prescribes treatment. The Class Member presents again on May 5, 2012. The Class Member's dermal symptoms have worsened and are not responsive to the treatment. The notes from the May 5, 2012 visit state that the Class Member's symptoms have been ongoing since March 12, 2012 and that they are related to the Class Member's exposure to oil. The medical provider diagnoses the Class Member with chronic dermatitis during the May 5, 2012 visit.

In this example, the medical documentation shows a relationship between the acute contact dermatitis diagnoses on March 12, 2012 and April 15, 2012 and the chronic dermatitis diagnosis on May 5, 2012. The symptoms from the first two visits worsened and progressed into the chronic condition. Therefore, the chronic condition could constitute a progression or exacerbation of the prior acute condition.

Contrast that example with the following: A Class Member presents to a medical provider on August 15, 2010, and the medical provider diagnoses the Class Member with acute rhinosinusitis. The provider prescribes treatment, and the condition is resolved. The Class Member presents again on October 15, 2013 and January 23, 2014 with intense headaches that have been ongoing since the Class Member performed clean-up activities from November 2011 through 2012. The medical provider determines that the headaches are associated with sinus pressure and a chronic cough. The medical provider diagnoses the Class Member with chronic rhinosinusitis.

In this example, based on the medical documentation, there is no relationship between the acute rhinosinusitis from the first visit and the chronic rhinosinusitis from the second. The condition from the first visit did not worsen or progress into the condition from the second. The symptoms from the second visit manifested in November 2011. Therefore, the chronic condition would not constitute a progression or exacerbation of the prior acute condition. The simple fact that the acute and the chronic condition share the identical label of "rhinosinusitis" does not determine that they are the same injury or that the latter is a "progression and/or exacerbation" of the former.

As these examples illustrate, whether a chronic condition is a progression or exacerbation of a prior acute condition will turn on the facts of each Class Member's claim. It is therefore impossible to establish a universal standard for determining whether a given Class Member's chronic condition will be considered a progression or exacerbation of a prior acute one.

Because the chronic condition was first diagnosed after April 16, 2012, it would constitute a Later-Manifested Physical Condition. To pursue compensation for this condition, the Class Member would have to file a timely and complete Notice of Intent to Sue. The Claims Administrator would review the Class Member's Notice of Intent to Sue and, if the Claims Administrator determines it is compliant, the Class Member would be free to pursue mediation (if BP elects it) and/or a Back-End Litigation Option Lawsuit. The fact that the Class Member received compensation for his or her acute condition would not preclude the Class Member from filing a Notice of Intent to Sue.

It may, however, impact the Class Member's ability to recover compensation for his or her chronic condition through mediation or a Back-End Litigation Option Lawsuit. During oral argument on the release issue, BP's counsel agreed with the statement that if a "condition was acute at one point, and if they [the Class Member] make a claim or have made a claim for the acute condition and get paid a small amount of money, they've waived or released their Back-End Litigation Option." Rec. doc. 13733, November 26 Order at 6-7 (*quoting* Tr. at 54). Consequently, it is possible, and indeed probable, that in the event a Class Member in this scenario pursued mediation or filed a Back-End Litigation Option Lawsuit against BP for the Class Member's chronic condition, BP would argue that the Class Member released his or her claim for the chronic condition when the Class Member received compensation for the acute condition. The mediator or court presiding over the claim would determine whether the Class Member's receipt of compensation for the acute claim prevents the Class Member from recovering on the chronic claim.

If the Class Member had not pursued or received compensation for the acute condition, the Class Member would have three options, each of which has its own potential consequences:

9

a. The Class Member could pursue compensation for the acute condition and forego pursuing compensation for the chronic condition.

   i. <u>Potential Consequences</u>: (a) The Class Member would receive compensation for the acute condition (assuming the Class Member's proof satisfied the settlement requirements), but (b) the Class Member would not have the opportunity to recover for his or her chronic condition.

   ii. <u>Next Step</u>: A Class Member wishing to pursue this option should file a Proof of Claim Form to seek compensation for the acute condition.

b. The Class Member could pursue compensation for the chronic condition and forego pursuing compensation for the acute condition.

   i. <u>Potential Consequences</u>: (a) The Class Member could pursue compensation for the chronic condition without the risk that the Class Member's pursuit or receipt of compensation for an acute condition would release his or her chronic claim, but (b) the Class Member would not have the opportunity to recover for his or her acute condition.

   ii. <u>Next Step</u>: A Class Member wishing to pursue this option should file a Notice of Intent to Sue with respect to the chronic condition.

c. The Class Member could pursue compensation for the acute condition and the chronic condition.

   i. <u>Potential Consequences</u>: (a) The Class Member might be able to recover for both his or her acute condition and his or her chronic condition if he or she successfully argues that he or she did not release his or her claim for the chronic condition by receiving compensation for his or her acute condition, but (b) the Class Member might be unable to recover compensation for his or her chronic claim if BP successfully argues that the Class Member released his or her claim for the chronic condition by receiving compensation for his or her acute condition.[4]

   ii. <u>Next Step</u>: A Class Member wishing to pursue this option should file a Proof of Claim Form for his or her acute condition and a Notice of Intent to Sue for his or her chronic condition.

---

[4] BP has previously indicated that it would not argue that a claim for a chronic Later-Manifested Physical Condition is released simply because the condition first manifested on or before April 16, 2012. BP stated in a memorandum to the Court on May 22, 2014 that "[a]n LMPC is defined by the date when the condition is 'first diagnosed,' not when the condition first manifests." In support of that statement, BP cited Section II.VV of the Medical Settlement Agreement and an April 29, 2014 memorandum it submitted to the Court, in which it stated that the definition of a Later-Manifested Physical Condition, "[b]y its plain terms, . . . encompasses later manifested conditions ***and*** earlier manifested conditions that are first diagnosed after April 16, 2012." BP concluded by saying that "Class Members seeking recovery for claimed conditions that meet the definition of an LMPC may proceed through the procedures available for LMPCs, including the Back-End Litigation Option ("BELO"), and may receive compensation if they satisfy applicable proof requirements."

The Class Member should weigh the risks and rewards of each possible course of action before deciding how to proceed.  In addition, as mentioned above, the question of whether a chronic condition is a progression or exacerbation of a prior acute condition must be answered on a case-by-case basis.  *See supra* note 3.  It is therefore impossible to establish a universal standard for determining whether a given Class Member's chronic condition will be considered a progression or exacerbation of a prior acute one.  Class Members also should keep that information in mind in deciding which option to pursue.

      3.      **Scenario 3: Compensation for Acute Specified Physical Condition Does Not Prevent Recovery for Chronic Later-Manifested Physical Condition that Is Not Progression of Acute Condition**

In the third scenario, a Class Member receives compensation for an acute Specified Physical Condition and is first diagnosed after April 16, 2012 with a chronic condition that is not a progression of the acute condition.

Because the chronic condition was first diagnosed after April 16, 2012, it would constitute a Later-Manifested Physical Condition.  To pursue compensation for this condition, the Class Member would have to file a timely and complete Notice of Intent to Sue.  The Claims Administrator would review the Class Member's Notice of Intent to Sue and, if the Claims Administrator determines it is compliant, the Class Member would be free to pursue mediation (if BP elects it) and/or a Back-End Litigation Option Lawsuit.  The fact that the Class Member received compensation for his or her acute condition would not preclude the Class Member from filing a Notice of Intent to Sue.

Furthermore, it appears that BP would not argue that the Class Member released his or her claim for compensation for the chronic Later-Manifested Physical Condition by receiving compensation for the acute condition.  During oral argument on the release issue, the following exchange occurred between BP's counsel and the Court:

11

> [The Court:] So what if they had an acute ocular condition, and they filed a claim for a Specified Physical Condition, acute – or chronic, for that matter, but in this Specified Physical Condition Matrix, and they were paid for that, and later, you know, four or five years later, they developed some type of cancer that they could show is related to the exposure, their exposure, are you saying that release would not release the claim?
>
> *     *     *
>
> [BP's Counsel:] That is what I'm saying. If it is a different condition, they are entitled to seek compensation for those different conditions, and that would not be released. Of course, they have to meet the proof requirements that may apply, but that's correct.

Rec. doc. 13733, November 26 Order at 7 (*quoting* Tr. at 56-57). Consequently, it appears that a Class Member could receive compensation for the acute condition and the chronic condition (if the Class Member proved the merits of his or her claim for the chronic condition).

### 4.  Scenario 4: Compensation for Chronic Specified Physical Condition Does Not Prevent a Claim for Chronic Later-Manifested Physical Condition that Is Not Progression of Chronic Specified Physical Condition

In the fourth scenario, a Class Member receives compensation for a chronic Specified Physical Condition and is first diagnosed after April 16, 2012 with a second chronic condition that is not a progression of the first.

Because the second chronic condition was first diagnosed after April 16, 2012, it would constitute a Later-Manifested Physical Condition. To pursue compensation for this condition, the Class Member would have to file a timely and complete Notice of Intent to Sue. The Claims Administrator would review the Class Member's Notice of Intent to Sue and, if the Claims Administrator determines it is compliant, the Class Member would be free to pursue mediation (if BP elects it) and/or a Back-End Litigation Option Lawsuit. The fact that the Class Member received compensation for his or her first chronic condition would not preclude the Class Member from filing a Notice of Intent to Sue.

As mentioned in Section II.3, above, BP has stated that if a Class Member's Later-Manifested Physical Condition is "different" from the acute or chronic Specified Physical Condition for which the Class Member received compensation, the Class Member's receipt of compensation would not release the Class Member's Later-Manifested Physical Condition claim. *Supra* Section II.3 (*quoting* Rec. doc. 13733, November 26 Order at 7).  Consequently, it appears that a Class Member could receive compensation for the first chronic condition as a Specified Physical Condition and for the second chronic condition as a Later-Manifested Physical Condition (if the Class Member proved the merits of his or her claim for the second chronic condition).

## III.    CONCLUSION

The question of whether a chronic condition is a progression or an exacerbation of a prior acute condition is a highly fact-specific inquiry, and the question of whether a Class Member's receipt of compensation for an acute or chronic Specified Physical Condition releases the Class Member's claim for compensation for a chronic Later-Manifested Physical Condition is one that will be determined by the specific mediator or court adjudicating the Class Member's claim.  The Claims Administrator has no role in making those determinations.  Represented Class Members should confer with their attorneys about how to proceed in the scenarios outlined above, and unrepresented Class Members may wish to seek the advice of counsel.

December 17, 2014                                   Respectfully submitted,


                                                    */s/ Matthew L. Garretson*
                                                    Matthew L. Garretson
                                                    Joseph L. Bruemmer
                                                    *DEEPWATER HORIZON* MEDICAL BENEFITS CLAIMS ADMINISTRATOR
                                                    935 Gravier Street, Suite 1400
                                                    New Orleans, Louisiana 70112
                                                    Telephone: (877) 545-5111
                                                    Facsimile: (513) 936-5186

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing notice of filing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of the electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of December, 2014.

Respectfully submitted,

*/s/ Matthew L. Garretson*
Matthew L. Garretson