UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | : : : : | MDL NO. 2179 SECTION J |
| THIS DOCUMENT RELATES TO: 10-4536 | : : : | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |

## CLEAN WATER ACT – PENALTY PHASE

## PRE-TRIAL STATEMENT OF THE UNITED STATES REGARDING THE

## APPROPRIATE CIVIL PENALTY FOR ANADARKO PETROLEUM CORPORATION

I.       INTRODUCTION.

The statutory maximum penalty for Anadarko Petroleum Corporation ("APC") is $4.6 billion,[1] and as set out in the pre-trial brief filed today regarding BPXP, the Court should only reduce that amount if APC presents valid reasons to do so, using the factors set out in the statute. For APC, most of the factors do not favor any reduction from the maximum amount. In fact, the seriousness of the violation mandates that the penalty must be a large dollar amount in absolute terms.  Indeed, any penalty that is not measured in billions of dollars would go largely unnoticed at a company the size of APC.  The culpability factor, however, warrants reducing APC's penalty substantially from the statutory maximum, in recognition of APC's limited role compared to BPXP.

This Court previously held that Transocean was not liable as an owner under the CWA, but that APC is liable, 844 F. Supp. 2d 746, 756-61 (E.D. La. 2012) (Rec. Doc. 5809), stating:

> Anadarko and BP were the ones directly engaged in the enterprise which caused the spill. They were the mineral lessees, they owned the well, and they stood to profit directly from the oil it produced. Thus, Congress intended that the cost of pollution would be borne by these parties. By contrast, Transocean was involved in the ''enterprise'' by virtue of its contract with BP. Transocean was paid charter hire by BP; it did not stand to profit directly from the oil.

*Id.,* at 759.  Despite not being held liable for subsea discharges under the CWA, Transocean nonetheless paid a civil penalty of $1 billion.[2]  Of course, Transocean acted with negligence while APC did not, but this $1 billion paid by the "paid charter hire" still stands as a guidepost for the appropriate penalty for the party who co-owned the well and stood to profit

---

[1] Assuming $1,100 per barrel and using the number advocated by the United States in Phase Two (4.2 million barrels) yields $4,620,000,000.

[2] Rec. Doc. 8608 (Feb. 19, 2013 Partial Consent Decree between United States and TO Defendants).

1

from the oil produced had the well been completed successfully.  Given the Court's initial assessment in its ruling on summary judgment, and Transocean's civil penalty settlement, Anadarko should pay significantly above $ 1 billion, but well below the statutory maximum. APC's arguments that it should pay zero as a penalty should be disregarded: the CWA mandates that liable parties "shall be subject to a civil penalty."[3]

## II. Most of the Eight Factors Do Not Merit Any Deduction from the Maximum.

The "top down" approach set forth in the pre-trial brief regarding BP applies equally here.

**Factor 1:  The "seriousness of the violation or violations."**  The United States will present evidence under the seriousness factor which pertains to APC as well as to BP.  APC likely will argue that as to it, this factor carries no weight.  But given that APC is a liable co-owner of the well and part of the polluting enterprise, this factor does not warrant any deduction from the statutory maximum and, if anything, may serve to offset other deductions.

**Factor 2: Economic Benefit.**  While economic benefit is not a controlling factor, points made in the companion brief about BP's cost savings at Macondo are equally applicable to APC: for any amounts saved or avoided, APC saved 25% of that amount.  Thus, no reduction is warranted.

**Factor 3:  Degree of Culpability.**  APC's culpability is minimal compared to that of BPXP. Their roles were quite different, and BPXP engaged in willful misconduct and gross negligence. A substantial reduction of the maximum penalty based on this factor is appropriate.

---

[3] 33 U.S.C. §§ 1321(b)(7)(A) & (D). While the specific amount of a civil penalty is discretionary, the imposition of some civil penalty is mandatory. *Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1142 (11th Cir. 1990) (holding that the "shall be subject to a civil penalty" language in Section 309(d) of the Clean Water Act mandates a penalty); *United States v. Gulf Park Water Co., Inc.*, 14 F. Supp. 2d 854, 858 (S.D. Miss. 1998) (same).  *See also, United States v. Lexington-Fayette Urban County*, 591 F.3d 484 (6th Cir. 2010) (district court rejected Clean Water Act consent decree on grounds penalty was too high and Sixth Circuit reversed and remanded).

2

APC, however, contends that *no* penalty should be imposed on it because it was not negligent and has been allocated no fault. The Court has received multiple rounds of briefings from APC on this penalty factor.[4] APC was severed from Phase 1 and thus very little evidence regarding APC's involvement at Macondo has been admitted.[5] Again in the Penalty Phase, the Court held that APC was not culpable and excluded evidence of APC's actions or omissions related to Macondo.[6] Currently pending is the question whether some evidence relevant to "culpability" may be admitted because that evidence also is relevant to APC's "other matters" contentions.[7] If not, the Court will need to determine APC's civil penalty for Macondo based solely on minimal facts regarding its ownership. Even if other evidence of APC's involvement at Macondo is admitted, the United States will recommend a substantial deduction from the statutory maximum based on this factor – but also will ask the Court to give weight to *each* of the penalty factors, including in particular the seriousness of the violation, with respect to APC.

**Factor 4: "Any other penalty for the same incident."** APC has not paid any criminal or civil penalty for this Incident. No reduction from the maximum is warranted. The parties will not present any evidence at trial under this penalty factor.[8]

---

[4] *See* Rec. Doc. 4319 (Phase I); Rec. Doc. 10826 (Phase II); Rec. Doc. 12343 (Penalty Phase).

[5] *See* Rec. Doc. 5836. Maritime negligence claims against APC were dismissed on the pleadings, with no evidence, in Phase I. *See* Rec. Docs. 3830, 4159, 4578, 4845, 4642 (Dismissal Orders). The only facts the government has put into evidence in Phase One were the very limited undisputed facts necessary to establish APC's ownership for summary judgment; nothing about their roles, actions, or responsibilities was presented. The Court scheduled in the Penalty Phase submission of a Proffer by the United States, Rec. Doc. 12688, which the United States submitted, Rec. Doc. 12965, and also provided APC an opportunity for a Response, which it filed. *See* Rec. Doc. 13100.

[6] *See* Rec. Doc. 12592.

[7] *See* Rec. Docs. 13633, 13747, and 13810.

[8] *See* Rec. Doc. 13725 (Stipulations and Order Related to the "Any Other Penalty For the Same Incident" Factor Concerning Prior Settlements and Criminal Pleas in Connection with the Penalty Phase of United States v. BPXP *et al.*).

**Factor 5: "Any history of violation."** APC and the United States have stipulated to 10 violations of Section 311(b) including 9 in the Gulf of Mexico.[9] This list is not comprehensive but the United States will not present other evidence of APC's prior violations. Every violation of law counts, so this factor does not call for a reduced penalty.

**Factor 6: The "nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge."** APC essentially took no steps to mitigate the spill, other than providing five employees on a temporary basis to assist BP and a few other measures. APC did not participate in the shoreline response at all. APC will argue that its $4 billion tax-deductible payment to BP satisfied its obligations to respond to and mitigate the spill but that settlement was primarily a resolution of cross-claims arising from the Incident between business partners and warrants no deduction here.

**Factor 7: The "economic impact of the penalty on the violator."** APC is a company that routinely deals in billion-dollar increments. As of June 2014, APC had cash on hand



and available credit facilities          , while its annual cash requirements for normal operations is          In fact,                                                                In documents provided during discovery, APC projected for 2014-2016                                                   and discretionary cash flow of

Expert **Ian Ratner,** a forensic accountant, will testify concerning APC's very substantial financial strength. APC will not present an expert on this issue.

Case law related to this factor is set out in the brief related to BP, and under that standard,

---

[9] Rec. Doc. 13808 (Stipulated Facts concerning APC's History of Prior Violations).

4

APC can readily fund the penalty that the United States seeks in this trial, without jeopardizing its existing operations. Indeed, APC admitted that as of August 8, 2014, it could pay the statutory maximum penalty of $4.6 billion.[10]

**Factor 8: "Other Matters as Justice May Require."** APC will argue under this factor that it should not pay any penalty at all. The United States will address in its case-in-chief APC's contentions regarding non-operators and APC's contributions to the local and national economy.

**Gardner Walkup** will testify that co-owners of wells, even when they are non-operators, actively participate in deepwater wells. He will rebut APC's expert Mr. Arnold and opine that it is common in the industry for non-operators to play a constructive role in many areas, including improvement of health, safety and environmental (HSE) matters.

**Charles Mason** will rebut APC's expert Dr. Sunding, who in essence would rewrite Section 311(b) so as not to require civil penalties where a party has paid compensatory damages under OPA and there is no economic benefit.[11] In rebuttal, Dr. Mason opines that there are many harms from the Macondo spill that will never be compensated, and that APC's $4 billion settlement with BP is in no way a proxy for APC's liability for compensatory damages.

Dr. Mason and Mr. Walkup both rebut Dr. Sunding's opinion that potential civil penalties are driving non-operating co-owners from the Gulf, opining that Dr. Sunding uses the wrong measure for activity in deepwater drilling and ignores other explanations for industry changes.

**III.  Conclusion.** Considering the seriousness of the violation, APC's financial resources, and civil penalties paid by Transocean for the Incident, APC should pay significantly more than $ 1 billion but well below the statutory maximum.

---

[10] TREX 230812.

[11] Dr. Sunding also offers a factor-by-factor penalty analysis. The United States filed its only *Daubert* motion about Dr. Sunding because his opinions are unhelpful. *See* Rec. Doc. 13764.

5

Respectfully submitted,

| | |
|---|---|
| JOYCE R. BRANDA | SAM HIRSCH |
| Acting Assistant Attorney General | Acting Assistant Attorney General |
| Civil Division | Environment & Natural Resources Division |
| PETER FROST | SARAH HIMMELHOCH |
| Director, Torts Branch, Civil Division | Senior Litigation Counsel |
| Admiralty and Aviation | NANCY FLICKINGER |
| STEPHEN G. FLYNN | Senior Attorney |
| Assistant Director | RICHARD GLADSTEIN |
| SHARON SHUTLER | PATRICK CASEY |
| MALINDA LAWRENCE | Senior Counsel |
| LAURA MAYBERRY | A. NATHANIEL CHAKERES |
| Trial Attorneys | JUDY HARVEY |
| | RACHEL KING |
| | ERICA PENCAK |
| R. MICHAEL UNDERHILL, T.A. | ABIGAIL ANDRE |
| Attorney in Charge, West Coast Office | RACHEL HANKEY |
| Torts Branch, Civil Division | BRANDON ROBERS |
| U.S. Department of Justice | Trial Attorneys |

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: 202-514-2779
Facsimile: 202-514-2583
E-mail: steve.o'rourke@usdoj.gov

KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA 70130
Telephone: (504) 680-3000
Facsimile: (504) 680-3184
E-mail: sharon.d.smith@usdoj.gov

Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing has been served on all counsel by electronically uploading the same to Lexis-Nexis File & Serve in accordance with Pretrial Order #12, and the foregoing was also electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2719, on this 19th day of December, 2014.

/s/ Steve O'Rourke

U.S. Department of Justice