IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 SECTION J |
| This document relates to: 10-4536. | * * * * * * * * | Honorable CARL J. BARBIER Magistrate Judge SHUSHAN |

**BP EXPLORATION & PRODUCTION INC.'S
REPLY TO THE UNITED STATES' OPPOSITION SEEKING A LEGAL RULING
REGARDING THE APPLICABLE STATUTORY MAXIMUM REGULATION**

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000

Robert C. "Mike" Brock
Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000

Don K. Haycraft (Bar # 14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

    1. EPA's $4,300/barrel regulation was issued without notice-and-comment and
       the good-cause exception does not apply .......................................................... 1

    2. The Executive Branch never "determined" as a matter of law that EPA and the
       Coast Guard have authority to inflate CWA Section 1321(b)(7) penalties .................. 2

    3. The U.S. misstates fair notice requirements ................................................. 5

CONCLUSION ................................................................................................................... 5

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Luminant Generation Co., LLC v. EPA*,
 675 F.3d 917 (5th Cir. 2012) ...................................................................................................5

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,
 463 U.S. 29 (1983).....................................................................................................................2

*Russello v. United States*,
 464 U.S. 16 (1983) .................................................................................................................4, 5

*Satellite Broadcasting Co. v. FCC*,
 824 F.2d 1 (D.C. Cir. 1987) ....................................................................................................5

*TWA, Inc. v. CAB*,
 385 F.2d 648 (D.C. Cir. 1967) .................................................................................................5

*Wachtel v. Office of Thrift Supervision*,
 982 F.2d 581 (D.C. Cir. 1993)..................................................................................................4

**Statutes**

33 U.S.C. § 1251(d) ......................................................................................................................5

33 U.S.C. § 1319...........................................................................................................................4

33 U.S.C. § 1321(b)(3) .................................................................................................................3

33 U.S.C. § 1321(b)(6) .............................................................................................................4, 5

33 U.S.C. § 1321(b)(7) ..................................................................................................... *passim*

33 U.S.C. § 1321(b)(7)(D)........................................................................................................1, 5

33 U.S.C. § 1369(b) ......................................................................................................................1

33 U.S.C. § 1369(b)(1)(A)-(G)....................................................................................................1

33 U.S.C. § 1369(b)(2) .................................................................................................................1

**Regulations**

40 C.F.R. § 300.120(a)(1)-(2) ................................................................................................3

**Executive Orders**

Executive Order 12,777 (Oct. 18, 1991) ...............................................................................3, 4

**Federal Register Notices**

56 Fed. Reg. 54,757 (Oct. 22, 1991) .....................................................................................3, 4

58 Fed. Reg. 19,420-01 (April 14, 1993)..................................................................................3

67 Fed. Reg. 41,363 (June 18, 2002) ........................................................................................1

68 Fed. Reg. 39,882 (July 3, 2003)...........................................................................................1

69 Fed. Reg. 7,121 (Feb. 13, 2004) ..........................................................................................1

**Other Regulatory Material**

GAO, *Civil Penalties: Agencies Unable to Fully Adjust Penalties for Inflation Under Current
    Law* (March 2003)..............................................................................................................2

**INTRODUCTION**

BPXP has shown that **(1)** the Attorney General alone has the FCPIAA/DCIA delegation to inflate CWA Section 1321(b)(7)(D) penalties; **(2)** BPXP did not have fair notice of attempts to inflate those penalties given the "baffling and inconsistent" advice (BPXP Op. Br. at 12) created by conflicting agency rules; and **(3)** the agency rules are procedurally invalid, having been issued without notice and comment.  BPXP focuses here on the most glaring flaws in the U.S. position.[1]

**ARGUMENT**

*1.  EPA's $4,300/barrel regulation was issued without notice-and-comment and the good-cause exception does not apply.*  The U.S. argues that EPA's rule was an ordinary notice-and-comment rule.  *See* US Opp. at 1 (citing 67 Fed. Reg. 41,363 (June 18, 2002) (proposed rule); 69 Fed. Reg. 7,121 (Feb. 13, 2004) (final rule)).  This highly inaccurate U.S. argument fails on two grounds.  *First*, this proposed rule (the only proposed rule EPA ever issued in this area) did *not* propose to increase the penalty amount in Section 1321(b)(7)(D).[2]  As a result, no notice of a penalty increase was given to BPXP (or any other regulated party) before EPA took the rule final.  *Second*, the final rule invoked the *good-cause exception* as justification — this would not have been necessary if EPA had actually proposed earlier to increase the Section 1321(b)(7)(D) penalty.  EPA included a good-cause rationale in the final rule precisely because it was posting inflation increases to at least some penalty provisions without prior notice.  *See* 69 Fed. Reg. at

---

[1] The U.S. wrongly suggests that this is not the proper time or forum to resolve BPXP's regulatory invalidity arguments.  *See* U.S. Opp., Rec. Doc. 13796 at 13 n.16 [hereafter "US Opp."].  To be sure, certain CWA rules must be challenged within 120 days, 33 U.S.C. § 1369(b)(1)(A)-(G), or the validity of such rulemakings is not subject to judicial review in enforcement proceedings against a regulated party, *id.* § 1369(b)(2).  There are two reasons why these provisions are not relevant here:  *First*, CWA Section 1369(b) does not address rulemakings that occur in whole or in part pursuant to *non-CWA statutory provisions such as the FCPIAA/DCIA*.  *Second*, even if the inflation-adjustment regulations at issue here were deemed to be CWA Section 1321(b)(7) rulemakings (and they are not), such rulemakings do not fall into any of the Section 1369(b) categories.  *See* 33 U.S.C. § 1369(b)(1)(A)-(G).  Hence, BPXP's Rule 12(c) Motion does not embody an impermissible collateral challenge to CWA rules.

[2] *See* 68 Fed. Reg. 39,882, 39,886 (July 3, 2003) (noting withdrawal of the direct-final rule at 67 Fed. Reg. 41,363 and stating on the proposed penalty table that the "new maximum penalty amount" would remain $3,300 per barrel).

7,122.   Hence, the U.S.'s defense to failing to provide notice and comment must stand or fall only on whether the good-cause exception applies.   And it cannot so stand because the U.S.'s argument that the agency rules are ministerial fails in several respects:   (1) the U.S. admits that both EPA and the Coast Guard flubbed how to perform FCPIAA/DCIA inflations before, fatally damaging the claim that the statutes' meaning is indisputable; (2) neither EPA nor the Coast Guard ever considered in the rules the plainly non-ministerial issue of which agency(ies) had the inflation delegation here; and (3) neither agency considered the issue of whether they could set different inflated amounts in light of the ***unitary*** penalty amount set by Congress.   Quite apart from the procedural error in not providing any notice and comment, the second and third of these deficiencies also represent independent substantive errors because it is arbitrary and capricious as a matter of basic administrative law for agencies to ignore "an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

The U.S. next attempts a safety-in-numbers defense, stating that ***other agencies*** have invoked the narrow good-cause exception to forgo notice-and-comment procedures when inflating penalties.   But especially after the GAO catalogued the many flaws and differences in agency approaches to interpreting and implementing the FCPIAA/DCIA, all that the track record EPA points to actually reveals is one agency after another engaging in follow-the-leader behavior to propagate the fundamental error of invoking the inapplicable good-cause exception.[3]

***2.   The Executive Branch never "determined" as a matter of law that EPA and the Coast Guard have authority to inflate CWA Section 1321(b)(7) penalties.***   The U.S. now seeks to shield itself behind an MOU between EPA and the Coast Guard in which the agencies ironically

---

[3] The nose-counting exercise only further weakens the U.S.'s point:   "As of June 2002, 16 of 80 federal agencies … had not adjusted any of their penalties for inflation.   Only 9 of the 64 agencies that made initial penalty adjustments did so by the statutory deadline. . . . Also, 19 of the 64 agencies that made initial adjustments had not made required subsequent adjustments . . . and several other agencies made the adjustments incorrectly."   GAO, *Civil Penalties: Agencies Unable to Fully Adjust Penalties for Inflation Under Current Law* ("GAO Report") at 11 (Mar. 2003).

2

"agree[d] to *cooperate* in developing *consistent* enforcement policies in order to *harmonize* the agencies' enforcement policies for events arising under Section 311 of the [CWA]."  58 Fed. Reg. 19,420-01, 19,421 (Apr. 14, 1993) (emphasis added).  A $1,000 to $1,300 divergence in adjusted per-barrel penalties, however, reflects neither cooperation, consistency, nor harmony.[4]

Most importantly, MOUs are not law and thus are not entitled to any deference, as this MOU itself explicitly recognizes.  *See* 58 Fed. Reg. at 19,421 ("Since these policies and procedures may be superseded, modified, or terminated at any time without public notice, they are not intended, and may not be relied upon, to create, modify in any way, or terminate any rights, duties, or obligations, whether substantive or procedural, which may be enforced by any person, judicially or otherwise.").  That the policies discussed in the MOU may be changed "at any time without public notice" indicates that the MOU was intended solely as an internal organization document and cannot be used to increase the punishment for a regulated party.  Indeed, pointing to the MOU fails even on its own logic, because EPA and the Coast Guard have *violated the terms of their own MOU* by promulgating conflicting penalty amounts.

Furthermore, this MOU names *the <u>Coast Guard</u> as the "lead enforcement agency"*[5] for CWA Section 1321(b)(3) violations that — like the *Deepwater Horizon* Incident — occur in the coastal zone.  *See* 58 Fed. Reg. at 19,421.  Thus, even assuming EPA and the Coast Guard could

---

[4] As BPXP noted previously, the U.S.'s admission that the $4,000/barrel Coast Guard rule is invalid simply resurrects the prior Coast Guard rule of $3,300; it does not establish that the EPA rule controls.  *See* BPXP Opp., Rec. Doc. 13798 at 8-9 & n.7 (Dec. 8, 2014).  The $1,000/barrel divergence referenced above is thus measured by the difference between EPA's $4,300/barrel rule and the Coast Guard's $3,300/barrel rule.  This is, of course, BPXP's fallback argument.  BPXP's lead argument is that the proper per-barrel penalty is $3,000/barrel because that amount was never validly inflated.

[5] In the MOU, the "lead enforcement agency" for "any" Section 1321(b)(3) violation is the same agency that would provide an on-scene coordinator under the National Contingency Plan ("NCP").  The NCP requires the Coast Guard to provide on-scene coordinators for discharges in the coastal zone and EPA to provide on-scene coordinators for discharges in the inland zone.  40 C.F.R. § 300.120(a)(1)-(2).  Executive Order 12,777, 56 Fed. Reg. 54,757, 54,758 (Oct. 22, 1991) ("the EPA representative shall be the chairman when the release or threatened release or discharge or threatened discharge occurs in the inland zone, and the United States Coast Guard representative shall be the chairman when the release or threatened release or discharge or threatened discharge occurs in the coastal zone.").

set different inflated Section 1321(b)(7) penalty amounts, as the U.S. argues, pursuant to the MOU, only the Coast Guard's rule — not EPA's — would apply to BPXP's circumstances here.[6]

Yet even if the U.S. were correct as to the MOU's impact, the EPA and Coast Guard regulations would still be invalid.  Both agencies failed to consider important aspects of the problem when they promulgated their regulations (*see* above and BPXP's prior briefs), making both sets of rules arbitrary and capricious.  Nor does the U.S. ever respond to BPXP's point that neither EPA nor the Coast Guard regulations merit deference because multi-agency situations cannot give rise to deference in favor of any particular agency.  *See, e.g.*, *Wachtel v. Office of Thrift Supervision*, 982 F.2d 581, 585 (D.C. Cir. 1993) (holding that no deference is owed in situations where multiple agencies are engaged in joint administration of a statute).

Ultimately, there is ***no one agency*** within which the CWA finds a "***home base***," as the U.S. would phrase it.  US Opp. at 5 n.8  Although EPA is the correct agency for inflating Section 1319 penalties, Section 1321(b)(7) is structurally different because it does not refer to EPA (or the Coast Guard) — in contrast to Section 1321(b)(6) concerning administrative penalties, which explicitly references EPA, the Coast Guard, and DOT.  *See* BPXP Opp. at 8-10.  If Congress had wanted Section 1321(b)(7) to have the same effect as Section 1321(b)(6), it would have used the same language referencing the three agencies listed in Section 1321(b)(6).  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("it is generally presumed that Congress acts intentionally

---

[6] BPXP does not accept the U.S. assumption that an MOU can divide authority that neither agency had.  It is *ultra vires* for EPA and the Coast Guard to try to assign themselves authority under Section 1321(b)(7) because the President already divided such authority between EPA and the Coast Guard for removal actions and reserved CWA Section 1321(b)(7) enforcement authority to the Attorney General by electing not to establish that same division of authority as to suits under that provision.  And unlike the non-binding MOU, the ***Executive Order is law***.  Section 10(a) clearly assigns authority to the Attorney General here.  *See* 56 Fed. Reg. at 54,770 ("Notwithstanding any other provision of this order, any representation pursuant to or under this order in any judicial proceedings shall be by or through the Attorney General.").  The U.S. tries to deflect that point by responding only to BPXP's invocation of Section 10(c).  *See* US Opp. at 7.  BPXP made clear that Section 10(a) of the Executive Order was the controlling point.  *See* BPXP Op. Br. at 9.  Its other point about Section 10(c) was subsidiary and simply reinforced the Attorney General's primacy established in Section 10(a).  *See id.* at 9 n.13.

and purposely in the disparate inclusion or exclusion" of language).[7]

**_3.  The U.S. misstates fair notice requirements._**  The U.S. suggests that BPXP had fair notice of a $4,300 maximum per-barrel penalty because of an Alaska lawsuit the U.S. brought against BP in March 2009.  U.S. Opp. at 13-14.  That assertion is factually and legally baseless.  Factually, the 2009 litigation ended in a settlement in which BP agreed to pay one flat amount as a civil penalty to settle *eight different claims*, of which *only two* sought CWA per-barrel penalties.  The U.S. also agreed that, by settling the case, BP did not admit any liability.  It is thus wrong to try to divide the $25 million settlement by the barrels number the U.S. asserted and infer an agreed-upon per-barrel penalty.[8]  Moreover, this Alaska suit adds nothing to the fact that EPA's rule relevant to April 2010 spills asserted that the valid post-inflation penalty was $4,300 per barrel.  What neither EPA nor the Coast Guard ever provided fair notice of was which agency's inflated penalty amount would govern.  That "baffling and inconsistent" advice, *Satellite Broadcasting Co. v. FCC*, 824 F.2d 1, 2 (D.C. Cir. 1987), is central to the fair notice problem here.

## CONCLUSION

BPXP respectfully requests that the maximum penalty applicable to the Penalty Phase trial be clarified as $3,000/barrel or in the alternative $3,300/barrel (the amount adopted in the last Coast Guard regulation the parties agree was correctly calculated mathematically).

---

[7] The U.S. argues for the first time in its opposition to BPXP's opening brief that 33 U.S.C. § 1251(d) means that Section 1321(b)(7)(D) is controlled by EPA because that provision does not "expressly provide[]" that the delegation has been made to another agency.  US Opp. at 3.  This is inconsistent with the position the U.S. took in support of its own motion, which was that because both the Coast Guard and EPA had authority under Section 1321(b)(6) as to administrative penalties, they possessed parallel authority as to civil penalties under Section 1321(b)(7).  U.S. Op. Br. at 1.  The *Russello* canon defeats this argument, as does the fact that the U.S.'s Section 1321(b)(6) theory fails to account for DOT's failure to attempt to inflate the penalties at all.  Agencies "cannot blow hot and cold … without being subject to the charge of exercise of arbitrary power."  *TWA, Inc. v. CAB*, 385 F.2d 648, 669 (D.C. Cir. 1967).  More importantly, EPA's rule never invoked Section 1251(d), which is fatal.  *Luminant Generation Co., LLC v. EPA*, 675 F.3d 917, 925 (5th Cir. 2012) ("We must disregard any *post hoc* rationalizations of the EPA's action and evaluate it solely on the basis of the agency's stated rationale at the time of its decision.").

[8] The U.S. made a different but equally flawed estoppel-like argument in its opening brief by citing to a BPXP press release.  U.S. Mot., Rec. Doc. 13654-1 at 14-15 (Nov. 14, 2014).  That press release simply recognized that the U.S. was *seeking* a maximum penalty of $4,300/barrel, but BP has never admitted that the U.S. was correct in doing so.

December 19, 2014

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000

Robert C. "Mike" Brock
Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000

Respectfully submitted,

 /s/ Don K. Haycraft
Don K. Haycraft (Bar # 14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

*ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of December, 2014.

/s/ Don K. Haycraft
Don K. Haycraft