UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "*Deepwater Horizon*" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: 10-4536 | : | Honorable CARL J. BARBIER |
| …………………………………………... | : | Magistrate Judge SHUSHAN |

**CLEAN WATER ACT – PENALTY PHASE**

**UNITED STATES' MEMORANDUM IN OPPOSITION TO BPXP'S MOTION TO EXCLUDE THE REPORTS AND TESTIMONY OF IAN RATNER**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

PROCEDURAL HISTORY....................................................................................................1

ARGUMENT ..........................................................................................................................4

     I.     Mr. Ratner's Testimony Is Admissible Under Rule 702 ........................................4

          A.     The Subject Matter Is Appropriate for Expert Testimony ..........................4

          B.     Mr. Ratner Has Specialized Knowledge That Will Help the Court............5

          C.     Mr. Ratner's Testimony is Based on Sufficient Facts and Data ................7

                 1.     A Valuation of BPXP Is Not Needed To Show That BPXP Can Pay $18 Billion ........................................................................7

                 2.     Mr. Ratner Could Not Value BPXP Because BPXP Refused To Produce the Relevant Information................................9

          D.     Mr. Ratner's Opinions Are the Result of a Reliable Method Applied Reliably, and Do Not Require Models........................................10

     II.     Mr. Ratner's Opinions Are Relevant to BPXP's Ability To Pay $18 Billion and the Economic Impact Such a Penalty Would Have on BPXP and BP ......................................................................................................................12

          A.     Mr. Ratner Does Not Speculate About What the BP Group Might Do...............................................................................................................13

          B.     Mr. Ratner's Discussion of the Long-Term Impact of a Penalty Does Not Contradict the Clean Water Act.................................................14

CONCLUSION......................................................................................................................15

# TABLE OF AUTHORITIES

**STATUTES**

33 U.S.C. § 1321(b)(8) ..................................................................................1

**FEDERAL CASES**

*Atl. States Legal Found., Inc. v. Universal Tool & Stamping Co.*, 786 F. Supp. 743 (N.D. Ind. 1992) ...............................................................13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).....................1, 5, 7

*Idaho Conservation League v. Atlanta Gold Corp.*, 879 F. Supp. 2d 1148 (D. Idaho 2012) ...........................................................................13

*In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 841 F.Supp.2d 988 (E.D.La. 2012)............................................15

*Kelly v. United States*, 203 F.3d 519, 523 (7th Cir. 2000)..................................15

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)...............................10

*PIRG v. Powell Duffryn Terminals, Inc.*, 720 F. Supp. 1158 (D.N.J. 1989), rev'd in part on other grounds, 913 F.2d 64 (3rd Cir. 1990).................................14

*ProtoComm Corp. v. Novell Advanced Servs., Inc.*, 171 F. Supp. 2d 473 (E.D. Pa. 2001); .......................................................................................4

*Ruiz Trocha v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F. 3d 77 (1st Cir. 1998) ..............................................................................................5

*Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585 (7th Cir.2000)..............4

*Tull v. United States*, 481 U.S. 412 (1987) ...................................................15

*United States v. Citgo Petroleum Corp.*, 2011 WL 10723934 (W.D. Sept. 29, 2011), *vacated and remanded*, 723 F.3d 547 (5th Cir. 2013)......................................13

*United States v. Gulf Park Water Co.*, 14 F. Supp. 2d 854 (S.D. Miss 1998)..................14

*United States v. Mun. Auth. of Union Twp. ("Dean Dairy")*, 150 F.3d 259 (3rd Cir. 1998) ..........................................................................................13

*Walden v. City of Chicago*, 755 F. Supp. 2d 942 (N.D. Ill. 2010)..................................5, 6

*Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135 (S.D.N.Y. 2003) ....................4,9

**FEDERAL RULES**

Fed. R. Evid. 401 ..................................................................................................14

Fed. R. Evid. 702 .........................................................................................1, 10, 12

**OTHER AUTHORITIES**

29 Charles Alan Wright et al., *Federal Practice and Procedure* § 6262 (1st ed. 1997) ...................................................................................................................5

29 Charles Alan Wright et al., *Federal Practice and Procedure* § 6264 (1st ed. 1997) ...................................................................................................................4

Shannon P. Pratt, *Valuing a Business*, 5th Edition, McGraw Hill at 40-44.........................8

Uniform Standards of Professional Appraisal Practice, Standards Rule 9-2......................8

## PRELIMINARY STATEMENT

Mr. Ratner, a forensic accountant, will testify, among other things, that BPXP has the ability to pay the statutory maximum penalty of $18 billion and that over the long term, the "economic impact of the penalty on the violator," 33 U.S.C. § 1321(b)(8), will not jeopardize its ability to continue business operations. BPXP has filed a "Motion to Exclude the Reports and Testimony of Ian Ratner," (Rec. Doc. 13770) along with a memorandum of law (Rec. Doc. 13770-1) ("BPXP's Mem."). BPXP attacks Mr. Ratner's opinions as irrelevant and unreliable, focusing particularly on his failure to perform two methods of analysis. BPXP's Mem. at 2-5. Mr. Ratner did not perform those methods of analysis because they are unnecessary and because BPXP steadfastly resisted efforts of the United States to discover the requisite information. In this response, the United States will show that Mr. Ratner's opinions are relevant and admissible pursuant to Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.

## PROCEDURAL HISTORY

BPXP's motion criticizes Mr. Ratner for failing to perform a business valuation and modeling that would have required access to information about BPXP's future projections for revenues, expenses, and cash flow. This is the very data that BPXP has refused to produce, as described in this brief discovery history:

*Initial Discovery Request and Production.*  In its requests for production, the United States sought information concerning future projections and the sensitivity of the projections to fluctuations in oil and gas prices and further included that topic in its Notice of Deposition to BPXP. *See* Ex. 14 at 6-7. BPXP, however, objected that, among other things, the information was highly market sensitive. In addition to any publicly available reports, BPXP produced only

(1) ███████████████████████████████████████████████

██████████████████████████████████████████████████ and

(2) credit agency reports relating to BP entities for the period from January 1, 2009 to the

present. Ex. 3 at 5.

*US Motions to Compel.*  The United States moved *twice* to compel fuller responses

concerning future-looking projections.  First, it moved for fuller discovery responses on financial

matters. Rec. Doc. 12858. BPXP opposed. Rec. Doc. 12904.  The Magistrate Judge ordered

BPXP to produce "any forward-looking projections for the consolidated operations of BP p.l.c.

in the Gulf of Mexico which are part of or referenced in the minutes of the meetings of the board

of directors of BP p.l.c. for 2013 and 2014." Rec. Doc. 12945 at 2.  In response BPXP produced

only a single sentence from a heavily redacted document. Ex. 4 ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████

Second, the United States moved to compel an unredacted version of a spreadsheet that

BPXP produced the night before the 30(b)(6) deposition on forward-looking projections. Ex. 5.

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████  The United States also sought supporting data and information. Ex. 5. BPXP opposed.

The Magistrate Judge ultimately ruled that "BPXP is not required to produce information beyond

2018. It is not required to produce the backup for the information provided through 2018." Rec.

Doc. 13170.

*BPXP Deposition Testimony.*  BP designated Mr. David Bucknall, the BP Group

Treasurer, to testify concerning the basis for BP's forward-looking projections for 2014 and into the future. Ex. 7 at 2. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

  ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████▌

  ██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

<hr/>

[1] Fact discovery closed on July 18, 2014. Rec. Doc. 12688.

[2] BPXP's failure to produce this document was consistent with the Magistrate Judge's ruling, but if BPXP wanted to use the document affirmatively, it should have been produced during fact discovery.

**ARGUMENT**

I.      **Mr. Ratner's Testimony Is Admissible Under Rule 702**

      A.      **The Subject Matter Is Appropriate for Expert Testimony**

Mr. Ratner's testimony is appropriate because "expert testimony has been offered to explain a wide variety of business activities." 29 Charles Alan Wright et al., *Federal Practice and Procedure* § 6264 (1st ed.). This includes testimony describing "complex business transactions," *see ProtoComm Corp. v. Novell Advanced Servs., Inc.*, 171 F. Supp. 2d 473 (E.D. Pa. 2001); *see also Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 143 (S.D.N.Y. 2003), such as the routine flow of transactions within and between the companies in the BP Group, and the transactions that would be needed to generate $18 billion.

The complexity of the business transactions affecting a member of the BP Group like BPXP is difficult to overstate. BPXP is one among hundreds of subsidiaries and affiliates in the BP Group. *See* Ratner Rep. (Ex. A to BPXP's Mem.) at 14, ¶ 40. BPXP's ultimate parent, the publicly traded BP p.l.c., is the fifth largest company in the world measured by revenue according to the May 2014 Forbes Global 2000. *Id.* at 13, ¶ 35. The average annual report and accompanying SEC Form 20-F of BP p.l.c., for the years 2010 through 2013 contains almost 300 pages of information, including complex disclosures on accounting practices, supplemental information, and details on various assets and liabilities. *See id.* at 8.

Mr. Ratner's expertise fits the subject matter. The structure of financial transactions and the ability of a company to meet liabilities is directly relevant to Mr. Ratner's work and provides an adequate fit between his expertise and his testimony. *Id.* at 5-6. As the Seventh Circuit wrote, "[t]he notion that *Daubert* . . . requires particular credentials for an expert witness is radically unsound." *Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.,* 223 F.3d 585, 591 (7th Cir.2000)

(citations omitted) *quoted in Walden v. City of Chicago*, 755 F. Supp. 2d 942, 950 (N.D. Ill. 2010). All that is required is "relevant expertise." *Walden*, 755 F. Supp. 2d. at 951.

    **B.**    **Mr. Ratner Has Specialized Knowledge That Will Help the Court**

    Pursuant to Rule 702(a), an expert witness's testimony must be based on "scientific, technical, or other specialized knowledge." As the Supreme Court wrote in *Daubert*, "the word 'knowledge' connotes more than subjective belief or unsupported speculation. The term 'applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds.'" *Daubert* 509 U.S. at 590 (quoting Webster's Third New Int'l Dictionary 1252 (1986)). BPXP does not challenge Mr. Ratner's qualifications or expertise. Mr. Ratner is a certified public account, a certified fraud examiner, and a professional business valuator. Ratner Rep. (Ex. A to BPXP's Mem.) at 5-6, ¶ 6. He has more than 20 years of experience in financial analysis, forensic accounting, and business valuation. *See id.* at 6, ¶ 8. He has spent his career analyzing the very types of business records that he relied upon in forming his opinions in this case.

    Rule 702 requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).[3] This requirement of Rule 702 "empowers the court to consider whether the [testimony] is pertinent to the facts in issue as opposed to being irrelevant and misleading." 29 Charles Alan Wright et al., *Federal Practice and Procedure* § 6262 (1st ed. 1997); *accord Ruiz Trocha v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F. 3d 77, 81 (1st Cir. 1998). Mr. Ratner's testimony, based on his specialized knowledge, will help the Court understand the complex financial data available from BPXP and the BP Group and how it can be used to predict the economic impact of a penalty on BPXP.

---

[3] Prior to April 26, 2011, Rule 702 used the word "assist" instead of "help."

BPXP argues that Mr. Ratner's opinions are simply the recitation of facts. BPXP's Mem. at 6-8. This is demonstrably not true. ██████████████████████████ ████████████████████████████ ██████████████████████████████ █████████████████████████████ ████████████████████████ ██████████████████████████ In addition, Mr. Ratner created 24 tables, 8 charts, and 13 schedules for his first round report, along with similar materials in his second round report. Ex. 1. These tables, charts, and schedules are likewise not mere reproductions of materials that Mr. Ratner found. They include the analysis of a skilled professional and the computations of an expert accountant. Mr. Ratner then formed reasoned opinions and conclusions based on his analysis. Ratner Rep. (Ex. A to BPXP Mem.) at 4-5.

Even if it were true that Mr. Ratner merely summarized facts, his testimony would still be helpful to the Court. Like the historian who was permitted to testify in *Walden v. City of Chicago*, 755 F. Supp. 2d 942 (N.D. Ill. 2010), because he "has the background to find, evaluate, and synthesize historical documents pertinent to the issue," *Walden*, 755 F. Supp. 2d at 950, Mr. Ratner has the background to find, evaluate, and synthesize the massive amounts of financial documentation and data pertinent to the economic impact of a penalty on BPXP. This skill satisfies the requirement in Rule 702(a) that an expert witness base her testimony on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a). Mr. Ratner's opinions are based on a body of facts about the complex finances of BPXP and the BP Group, which he skillfully assembles from a variety of sources that are ordinarily relied upon by forensic accountants. Mr.

Ratner's work is the product of an expert because it "could not have been completed by anyone." *Daubert,* 509 U.S. at 590.

### C.     Mr. Ratner's Testimony is Based on Sufficient Facts and Data

Expert testimony must be based on "sufficient facts or data." Fed. R. Evid. 702(b). Mr. Ratner bases his testimony on the synthesis of publically available documents and a review of non-public documents and materials provided by BPXP. He has considered more than 3,000 sources including documents, information, financial data, and deposition transcripts. *See* Ratner Rep. (Ex. A to BPXP Mem.); an Exs. 1-2.  Those sources provide more than ample foundation for the more than 120 pages of analysis in his three reports relevant to BPXP. *Id.* On its face, this cache of information is much more than "sufficient."

One piece of information that BPXP believes that Mr. Ratner should have considered is the value of BPXP. As shown below, a business valuation is not needed to show that BPXP could pay a civil penalty of $18 billion, and a business valuation cannot be performed because BPXP refused to produce the requisite data.

### 1.     A Valuation of BPXP Is Not Needed To Show That BPXP Can Pay $18 Billion

A business valuation approach is similar to a real-estate appraisal in which the subject of the appraisal is the business itself. A business valuation is necessarily more complicated, however, because while real property is generally a single asset with a clear set of liabilities connected to it, a complex company like BPXP has many assets and liabilities, which may be current or long-term, tangible or intangible, etc.  BPXP implies that a business valuation is not only information that Mr. Ratner should have considered, but it is also the minimum analysis that Mr. Ratner would have to apply in order to convert his opinion from the mere recitation of facts and unrelated conclusions into "the specialized analysis that is required for proper expert

testimony." BPXP's Mem. at 2. BPXP fails to explain how a business valuation is essential to determining BPXP's ability to pay a penalty.  In developing a business valuation, an appraiser must identify the intended use or purpose of the valuation opinion and identify the standard of value and the definition of value.  Uniform Standards of Professional Appraisal Practice, Standards Rule 9-2, *available at* http://www.uspap.org/#/76/.  The purpose of the valuation often determines the applicable standard of value (e.g., Fair Market Value, Investment Value, or Intrinsic Value), which may result in different value opinions. Shannon P. Pratt, *Valuing a Business*, 5th Edition, McGraw Hill at 40-44. None of those purposes apply here.[4] ███████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████

     BPXP further criticizes the absence of a valuation of BPXP on the grounds that Mr. Ratner was qualified to perform such a valuation and knew that a business valuation of BPXP would be relevant to the economic impact of the penalty on the violator. BPXP Mem. at 3. The absence of one relevant piece of information, however, does not render Mr. Ratner's entire report irrelevant or unreliable. Not all relevant evidence is probative. Notably, BPXP does not cite any cases regarding penalties under the Clean Water Act that have relied on a business valuation in determining the economic impact on the violator. ████████████████████

---

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████ If BPXP believes that Mr. Ratner should have considered additional information, and that such information should change his conclusions, the proper avenue to explore that is "on cross-examination, rather than within a motion to exclude." *Wechsler*, 381 F. Supp. 2d at 146.

      **2.    Mr. Ratner Could Not Value BPXP Because BPXP Refused To Produce the Relevant Information**

BPXP's argument that Mr. Ratner's opinion is not admissible without a business valuation is disingenuous because it was BPXP's own actions that left Mr. Ratner unable to perform a business valuation. Performing a business valuation analysis in support of an expert opinion on value requires many pieces of financial data including management projections of revenues, expenses, and cash flows. ██████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

BPXP, however, refused to produce the information necessary to perform a valuation. ██████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

BPXP's refusal to produce revenues, expenses, and cash flow data came despite persistent efforts to obtain this information, as described in the procedural history above. ██████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

### D.      Mr. Ratner's Opinions Are the Result of a Reliable Method Applied Reliably, and Do Not Require Models

Even though Mr. Ratner is not offering scientific testimony, his opinion must nonetheless be based upon reliable principles and methods. Fed. R. Evid. 702(c); *accord Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) ("We conclude that Daubert's general principles apply to the expert matters described in Rule 702.") Mr. Ratner's opinions meet the flexible requirement in Rule 702(c). The Supreme Court wrote, in *Kumho Tire Co. v. Carmichael*, that "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho*, 526 U.S. at 152. As the Advisory Committee notes to Rule 702 point out, *Kumho* states that "the trial judge has the discretion '. . . to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted.'" *Id.* The reliability of Mr. Ratner's testimony should be taken for granted because his testimony is the synthesis of hundreds of identified financial documents, the reliability of which can be evaluated in connection with determining the weight to give his testimony.

In any event, Mr. Ratner's methods are reliable because he conducted extensive independent research and data analysis specifically relevant to understanding BPXP's

---

[REDACTED]

operational profitability. Ratner Rep. (Ex. A to BPXP Mem.) at 34. In addition, he employed a high degree of intellectual rigor in making his findings. *See Kumho*, 526 U.S. at 152 (stating that Daubert requires the trial court to assure itself that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.")

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ BPXP's claim that Mr. Ratner's analysis lacked rigor because he did not construct a model of payment options ignores two important facts: (1) that such a model is not necessary; and (2) that a model cannot be performed because BPXP failed to provide requisite information from its managers.

Ironically, BPXP criticizes Mr. Ratner for speculating when he notes that the BP Group might provide funds to BPXP, BPXP's Mem. at 5, and also criticizes Mr. Ratner for not speculating which funding option BPXP and the BP Group might ultimately agree upon, *id*. at 4. Mr. Ratner's report describes at a high level the various choices that BPXP could make to pay a penalty. BPXP argues that Mr. Ratner should have engaged in a massively more detailed analysis, constructing models to demonstrate how the combination of funding options would work. *Id.* at 4. Mr. Ratner can conclude without speculation and without a model that BPXP has sufficient assets and revenues to pay a civil penalty of $18 billion. He also can conclude without speculation and without a model that the BP Group has ample assets and revenues and *could* contribute cash to BPXP. ████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████ What Mr. Ratner cannot

do is the one thing that BPXP demands: assume that the BP Group *will* contribute funding and perform detailed calculations based on that assumption.

BPXP reveals in its own motion why Mr. Ratner cannot meaningfully meet its demand for a model. A model would have to include information about BPXP's plans and strategies for the future, and the preferences of its managers for encumbering the company with debt, maintaining its liquidity, etc.  As BPXP noted, the exact mix of funds is "a decision to be made by others, at an unknown date in the future, under circumstances that are not presently known, and without any knowledge as to what considerations the decision-makers would evaluate." BPXP's Mem. at 6. As with the business valuation it demands, BPXP's own actions have rendered the modelling impossible. ███████████████████

████████████████████████████████

████████████████████████████████

███████████████████████████████

███████████████████████████████

## II.    Mr. Ratner's Opinions Are Relevant to BPXP's Ability To Pay $18 Billion and the Economic Impact Such a Penalty Would Have on BPXP and BP

In addition to meeting the requirements of Rule 702, all evidence must be relevant. BPXP argues that Mr. Ratner's opinions are not relevant because he misconstrues the Clean Water Act. BPXP also argues, not in its motion to exclude Mr. Ratner's testimony but in a separate motion in limine, Rec. Doc. 13813, that the finances of the BP Group are irrelevant. This ignores the salient fact that the BP Group *could* provide funds to BPXP to pay a civil penalty. It also ignores the fact that courts, including the district court in *United States v. Citgo Petroleum Corp.*, 2011 WL 10723934 (W.D. Sept. 29, 2011), *vacated and remanded,* 723 F.3d 547 (5th Cir. 2013), have considered evidence regarding the assets of a parent company of the defendant as a matter of

discretion in applying the penalty factors under the Clean Water Act.[6] *See also, United States v. Mun. Auth. of Union Twp. ("Dean Dairy")*, 150 F.3d 259, 268 (3rd Cir. 1998) ("Other courts in CWA cases have looked to the assets and finances of the violator's parent in evaluating the economic impact of the penalty on a violator") (citing *Atl. States Legal Found., Inc. v. Universal Tool & Stamping Co.*, 786 F. Supp. 743, 746-747 (N.D. Ind. 1992); *PIRG,* 720 F. Supp. at 1166); *Idaho Conservation League v. Atlanta Gold Corp.*, 879 F. Supp. 2d 1148, 1170 (D. Idaho 2012) ("Cases uniformly make clear that so long as the penalties are not actually imposed on the parent, consideration of a parent's assets is one factor, among many, that is appropriate in a Clean Water Act case.") As the Third Circuit explained:

> The consideration of a parent's financial condition in assessing a penalty on a subsidiary is a far cry from piercing the corporate veil and holding the parent liable for the actions of its subsidiary; here the penalty was assessed against the subsidiary alone. . . . The court simply undertook a fact-specific assessment that examined the role of the parent in the operations of the subsidiary.

*Dean Dairy*, 150 F.3d at 268-269.

### A.   Mr. Ratner Does Not Speculate About What the BP Group Might Do

BPXP argues that Mr. Ratner is only speculating when he opines that the BP Group *could* provide money to BPXP to pay a penalty, because he does not know what the BP Group *would* do if faced with a penalty of $18 billion. BPXP's Mem. at 5-6. In making this argument, BPXP has only knocked down a straw man. Mr. Ratner does not assert that the BP Group *would* transfer funds to BPXP,[7] only that it *could* transfer funds ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[6]In analyzing the economic impact of the penalty on the violator, the court stated that it "recognizes that Citgo is a multi-billion dollar, international company." *Citgo Petroleum,* 2011 WL 10723934 *4.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



And the fact that the BP Group can transfer funds between companies is "of consequence," Fed. R. Evid. 401(b), because, as Mr. Ratner can show, the BP Group has $27.5 billion in cash available, Ratner Rep. (Ex. A to BPXP Mem.) at 28, and numerous other avenues by which it *could* finance a penalty, *id.* at 27-33.

### B. Mr. Ratner's Discussion of the Long-Term Impact of a Penalty Does Not Contradict the Clean Water Act

According to the court in *United States v. Gulf Park Water Co.*, 14 F. Supp. 2d 854 (S.D. Miss. 1998), the economic impact factor is not grounds for reducing a penalty unless the violator can show that the penalty would have a "ruinous effect," i.e., that it "would jeopardize defendant's continued operation." *Id.* at 868 (quoting *PIRG v. Powell Duffryn Terminals, Inc.*, 720 F. Supp. 1158, 1165 (D.N.J. 1989) *reversed in part on other grounds*, 913 F. 2d 64). Nothing in the Clean Water Act or its case law states that a court should not consider the long-term impact of a penalty on the company; it merely directs the courts to consider the effect. Logically, that could include both short-term and long-term effects. BPXP asserts that Mr. Ratner's opinions address only the long-term effects of a penalty on BPXP. BPXP's Mem. at 8-9. Even if that were true, those opinions are nonetheless relevant to the effect of the penalty on the violator.

As it happens, Mr. Ratner's opinions *do* address the short term economic impacts of the

penalty on the violator. His opinion is that BPXP could avoid a cash flow crisis by obtaining financing either from the BP Group or from the financial markets. Ratner Rep. (Ex. A to BPXP Mem.) at 49-64.  Moreover, Mr. Ratner's opinion that the penalty will not have negative long-term effects necessarily includes a conclusion that the penalty will not immediately ruin the company.

BPXP argues that Mr. Ratner must demonstrate that there is a plausible combination of funding options that "could enable BPXP to pay a massive penalty without a significant negative impact." BPXP's Mem. at 4. Mr. Ratner cannot opine that an $18 billion penalty would not have a negative impact in the short term, nor should the Court expect him to. A civil penalty is a punishment. *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 841 F.Supp.2d 988, 1004 (E.D.La. 2012). ("a Section 311(b)(7) civil penalty has multiple goals, including restitution, but the primary objectives are to punish and deter future pollution"); *Kelly v. United States*, 203 F.3d 519, 523 (7th Cir. 2000) ("Civil penalties under the Clean Water Act are intended to punish culpable individuals and deter future violations, not just to extract compensation or restore the status quo") (citing *Tull v. United States*, 481 U.S. 412, 422-23, (1987)). Civil penalties might not be effective unless they have a "negative impact" in the short term.

## CONCLUSION

For the foregoing reasons, the Court should deny BPXP's motion to exclude the reports and testimony of Ian Ratner.

Respectfully submitted,

JOYCE BRANDA
Acting Assistant Attorney General
Civil Division
PETER FROST
Director, Torts Branch, Civil Division
Admiralty and Aviation
SHARON SHUTLER
MALINDA LAWRENCE
LAURA MAYBERRY
Trial Attorneys
R. MICHAEL UNDERHILL, T.A
Attorney in Charge, West Coast Office

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division
SARAH HIMMELHOCH
Senior Litigation Counsel for E-Discovery
MICHAEL MCNULTY
Senior Counsel
NANCY FLICKINGER
Senior Attorney
PATRICK CASEY
RICHARD GLADSTEIN
DANIEL S. SMITH
Senior Counsel
ABIGAIL ANDRE
A. NATHANIEL CHAKERES
ANNA CROSS
RACHEL HANKEY
JUDY HARVEY
RACHEL KING
ERICA PENCAK
BRANDON ROBERS
GORDON YOUNG
Trial Attorneys

/s/ Sarah Himmelhoch
_____
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
Facsimile:  202-514-2583
E-mail:  steve.o'rourke@usdoj.gov
KENNETH A. POLITE, JR.
United States Attorney
Eastern District of Louisiana
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana

Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12.

Date:  December 22, 2014.                              /s/ Sarah Himmelhoch
                                                       U.S. Department of Justice