**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In Re: Oil Spill by the Oil Rig** | * | **MDL 2179** |
| **"Deepwater Horizon" in the** | * | |
| **Gulf of Mexico, on April 20, 2010** | * | **SECTION J** |
| | * | |
| **This document applies to:   C.A. 12-970** | * | **HONORABLE CARL J. BARBIER** |
| ***Bon Secour Fisheries, Inc., et al.*** | * | |
| ***v. BP Exploration &*** | * | |
| ***Production Inc., et al.*** | * | **MAG. JUDGE SHUSHAN** |
| | * | |
| | * | |

**OPPOSITION TO MOTION OF SPECIAL MASTER FOR**
**RETURN OF PAYMENTS MADE TO JASON ZIRLOTT AND CAPT. JAY, LLC**

COMES NOW, claimants Jason Zirlott ("Mr. Zirlott") and Capt. Jay, LLC ("Capt. Jay"), through undersigned counsel, who file this Opposition to the Special Master's clawback action seeking return of payments made by the Deepwater Horizon Economic Claims Center ("DHECC"), for reasons explained in the following:

The Special Master filed proceedings in this matter on October 7, 2014 and October 20, 2014, seeking return of payments made by DHECC to Mr. Zirlott and Capt. Jay[1] on the basis of fraud.  Specifically, the Special Master alleges that Mr. Zirlott and Capt. Jay falsely represented commercial shrimping revenue from 2009 as a basis for computing commercial seafood losses arising from the Deepwater Horizon Oil Spill. Based on claims made by and on behalf of Mr. Zirlott and Capt. Jay to DHECC and the Seafood Compensation Claim Program, DHECC has paid a combined total of $282,742.13 to Mr. Zirlott and Capt. Jay for commercial seafood losses: amounts that the Special

---

[1] Jason Zirlott is a member in Capt. Jay, LLC.
[2] It should be noted that even Mr. Zirlott's Articles of Incorporation, provided to DHECC and his former counsel, disclose "water debris removal" as activities in which he was

1

Master asserts are based on false and/or fraudulent calculations.  The Special Master is seeking the return of these monies, less $43,222.81, in fees and expenses already returned to DHECC by former counsel representing Mr. Zirlott and Capt. Jay.  Based on these allegations, the Special Master has moved to prohibit Mr. Zirlott and Capt. Jay from receiving further distributions made pursuant to DHECC's Seafood Compensation Program.

The Special Master asserts that Mr. Zirlott and Capt. Jay misrepresented the actual revenues from their commercial seafood business in order to inflate claims payments sought from DHECC for their commercial seafood losses.  In support, the Special Master alleges that the amounts claimed actually came from three separate sources, and not two, as originally represented to DHECC.  At issue are revenues received for commercial shrimping and compensation received for marine debris work.  During the course of investigating the amounts claimed by Mr. Zirlott and Capt. Jay, the Special Master asserts that income received from services provided to Gulf Equipment Corporation Crowder-Gulf ("Crowder Gulf") and Rogue Marine Services ("Rogue Marine"), was concealed in order to attribute the same amounts to their commercial seafood business.

Mr. Zirlott and Capt. Jay deny all allegations brought by the Special Master in these proceedings:

1.      All claims made to DHECC, including those made in conjunction with the Settlement Program and Seafood Compensation Program, by Jason Zirlott and Capt. Jay, were based on information contained in income tax returns and accounting records kept by and on behalf of Jason Zirlott, his wife, Rigonette Zirlott, and Capt. Jay, LLC. Exhs. A, B.

2.      At no point did Jason Zirlott or Capt. Jay intentionally withhold and/or conceal accounting documents, information, inventories, calculations or revenue statements, including tax returns, for the years submitted to DHECC and/or the Seafood Compensation Program, for computation of losses incurred as a result of the Deepwater Horizon Oil Spill.  Exhs. A, B.

3.      At no point did Jason Zirlott and/or Capt. Jay intentionally conceal and/or omit material information, or knowingly represent false information, material or otherwise, to support their respective claims for losses incurred from the Oil Spill.

The conclusion that intentional misrepresentations were made by Mr. Zirlott is wholly unsupported by the record.  Instead, the evidence in this matter demonstrates:

a)      All income derived by this commercial fisherman in his activities in commercial fishing and cleaning, clearing and dredging commercial fishing grounds are, in fact, legally considered "commercial fishing" (See Exh. C: "Income from services normally performed in connection with fishing."  See also, Document 13468-9, p. 3: "Crowder Gulf contracts with fishermen to do the removal work." Also, "In their regular line of work, fishermen compete to see who comes home with the biggest catch. This is no different.");

b)      Jason Zirlott and Capt. Jay provided income tax documentation in support of their claims.  Additional documentation provided in support included QuickBooks reports, which were kept in the regular course of business and provided to tax preparers and the IRS for filing.  The representations made by Jason Zirlott and Capt. Jay were innocent and made in good faith.  The cited QuickBooks report, delineating Rogue Marine

income, was not intentionally concealed, but mistakenly omitted and without intent to deceive;

c)      All material and relevant information was provided to former counsel in preparation for submitting claims materials to DHECC.  Despite providing all relevant information to former counsel, and, presumably, the accounting firm that prepared the filings, Jason Zirlott and Capt. Jay relied on the advice of counsel and are accordingly shielded.  *Ex parte Meadowbrook Ins. Group, Inc.*, 987 So.2d 540, 550 (Ala. 2007).

Regardless of which perspective is taken, the evidence is to be viewed in the light most favorable to the non-movants, Jason Zirlott and Capt. Jay. This claw back motion fails to acknowledge this standard of review, but instead requests relief to which it is not entitled under these facts in this matter and the relevant legal burdens.

Jason Zirlott has been a commercial fisherman since stopping his high school education in the tenth grade. All of the income he reported was actually generated while performing what he had historically done in his job as a commercial fisherman.  Exh. A.

The income was taxed. This is not a case of "making up" income or providing falsified documents to substantiate a fraudulent claim for losses.  This is a case of a tenth-grade-educated commercial fisherman reporting his **actual gross income**. To assert that this matter mirrors that of the *Casey Thonn* action is reckless, specious and unwarranted. The circumstances in this case are not analogous in any way to those presented in the *Casey Thonn* matter asserted by the Special Master.

## ARGUMENT

The Special Master alleges that Mr. Zirlott and Capt. Jay committed fraud in representations to DHECC.   Specifically, the Special Master's accusations sound in

common law fraud, which requires a showing that, 1) the defendant made a false representation concerning a material fact; 2) the defendant knew the statement was false or made with reckless disregard for its truth or falsity; 3) the plaintiff reasonably relied on the statement, and 4) that the plaintiff was damaged by virtue of such reliance. *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 673, 2005 U.S. Dist. LEXIS 28440, 129-130 (S.D. Ala. 2005) (*citing Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002)); *see also Pelletier v. Zweifel*, 921 F.2d 1465, 1503 (11th Cir. 1991) (concluding that a sophisticated plaintiff's claim of reliance failed in light of undisputed facts showing that he "did not trust [the defendant's] representations and did not act as though he trusted [the defendant]").

**I.  Jason Zirlott did not misrepresent commercial fishing activities and income loss.**

The Special Master takes issue with Mr. Zirlott's reporting of fishing income on his loss claims forms, and in particular, fishing activities, specifically operations using his shrimp trawler to drag sonar, collect and remove water debris and dredge materials.  Mr. Zirlott's loss claims are based on his tax filings, professionally prepared for him individually since 2005 and professionally since 2006, when he incorporated.[2]  Mr. Zirlott, who completed the tenth grade, is a commercial fisherman.  He did not fully understand the meaning for many of the terms used and questions presented in his claims application.  In completing his loss claims forms, Mr. Zirlott used his reported gross income from his 2009 IRS filing as his fishing income.  Mr. Zirlott is not a CPA.  The answers he provided were not only innocent but reasonable.

---

[2] It should be noted that even Mr. Zirlott's Articles of Incorporation, provided to DHECC and his former counsel, disclose "water debris removal" as activities in which he was engaged.

The Code of Federal Regulations pertaining to Wildlife and Fisheries, Title 50, provides, in pertinent part,

> Fishing, or to fish means any activity, other than scientific research conducted by a scientific research vessel, that involves:
>
> (1)  The catching, taking, or harvesting of fish;
> (2)  The attempted catching, taking, or harvesting of fish;
> (3)  Any other activity that can reasonably be expected to result in the catching, taking, or harvesting of fish; or
> (4)  *Any operations at sea in support of, or in preparation for, any activity described in paragraphs (1), (2), or (3) of this definition.*

50 CFR 600.10 (emphasis added).

As applied to commercial fishermen, the Internal Revenue Service defines gross income from commercial fishing, in pertinent part, as amounts received from catching, taking, harvesting, cultivating, or farming fish, shellfish, crustacean, sponges, seaweeds, or other aquatic forms of animal or vegetable life.  Computation of gross income includes, in part, "*Income from services normally performed in connection with fishing….*"  Exh. C.[3]

Additionally, a fishing business is defined as the conduct of commercial fishing, by definitions detailed in the Magnuson-Stevens Fishery Conservation and Management Reauthorization Act of 2006, 16 U.S.C. §§ 1801-1884 (2011) ("Sustainable Fisheries Act").[4]

Commercial fishing reasonably includes activities conducted in the preparation of harvesting fish.  As demonstrated by various federal provisions regulating fishing activities and/or economic considerations affecting such activities, a commercial fisherman could

---

[3] Available at http://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/Income-from-Fishing.

[4] Consider, also, http://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/Fishing-Audit-Technique-Guide#ch1-income, for unofficial guidelines and examples of auditing considerations pertaining to fishermen.

and typically would be involved in such operations. Commercial fishing reasonably comprises activities in the preparation of fishing, harvesting, clearing and dredging commercial fishing grounds.  Mr. Zirlott's representations were truthful, innocent and made without any deceitful intent.

## II.  Jason Zirlott did not make false representations or intentionally conceal data.

The Special Master accuses Mr. Zirlott and Capt. Jay of intentionally misrepresenting and knowingly concealing income and revenue information, for the purpose of inducing reliance by DHECC and/or the Settlement Program.  Such arguments are misplaced.

"A misrepresentation is fraudulent if the maker … knows or believes that the matter is not as" represented, "does not have the confidence in the accuracy of his representation that he states or implies," or knows the representation is baseless as stated or implied. Restatement 2d of Torts, §526 (1977).  "A representation of the maker's  own intention to do … a particular thing is fraudulent if he does not have that intention." Id. § 530(1).

Mr. Zirlott retained former counsel from approximately May 2011 through 2013,[5] for the purpose of navigating the claims process and properly submitting loss claims to DHECC, and in connection with the Settlement Program, for damages incurred as a result of the Deepwater Horizon Oil Spill.  During this period, Mr. Zirlott provided copies of *actual* IRS filings, QuickBooks raw data, trip tickets, vessel repair estimates and receipts for seafood sales—all materials supporting his claims for losses.   Mr. Zirlott was

---

[5] As evidenced by several Representation Agreements signed by Mr. Zirlott with former counsel, at various intervals for each claim submitted to DHECC.

interviewed by, and maintained regular contact with, personnel employed by former counsel in the preparation of his captain's and vessel claims.  The accounting materials, IRS filings and supporting documents were then submitted by former counsel to a retained accounting firm for verification, prior to and in anticipation of submitting claims to DHECC.  The materials verify income and revenues from seafood sales.

Mr. Zirlott did not withhold any materials from review, nor did he misrepresent his income and revenue sources for computing Oil Spill losses.  Mr. Zirlott did not conceal that he also provided water debris removal services.  Exh. D.  As a commercial fisherman with a shrimp trawler, it was customary to conduct such operations.

Income and revenue data and supporting materials were evaluated and then analyzed by former counsel and the accounting firm to determine potential compensation yields for Mr. Zirlott and Capt. Jay claims.  Specifically, the firms evaluated and analyzed income and revenue data for years 2007 through 2009, for their settlement compensation comparison (i.e., expedited basis, reduced expedited basis and historical method).  Exh. E.[6] Even prior to making these computations, however, the sources of income were known to the firms in materials provided to handle and submit the respective claims.  Income and revenue were transparent to reviewers preparing his claim.  Indeed, professional assistance was provided for this very purpose.

### III.    The Special Master's argument of reliance is unfounded.

The Special Master's claw back motion should be denied on the representations made to this Honorable Court.  This is a civil action, and if Alabama substantive fraud law

---

[6] September 2012 Settlement Analysis for Capt. Jay, LLC, as prepared for former counsel by retained accounting firm.  CJ-0304 catalogues seafood revenue/trip tickets.

is applied, then the Administrator's obligation is to exercise reasonable prudence and demonstrate reasonable reliance under *Foremost Ins. Co. vs. Parham*, 693 So.2d 409 (Ala. 1997); *see also Wells Fargo Bank, N.A. v. Trotman*, 940 F. Supp. 2d 1359, 1364 (M.D. Ala. 2013). In *Foremost*, the Alabama Supreme Court overruled the "justifiable reliance" standard adopted in *Hickox v. Stover*, 551 So.2d 259 (Ala. 1989), and returned to the "reasonable reliance" standard which previously governed. *Foremost*, 693 So.2d at 421. The Alabama Supreme Court rejected the "justifiable reliance" standard because it "eliminated the general duty on the part of a person to read the documents received in connection with a particular transaction (consumer or commercial)." *Id*.

The court held that the "reasonable reliance" standard not only provided "a more practicable standard" to "allow the fact finder greater flexibility in determining the issue of reliance based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties" but it also provided "a mechanism . . . whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Id*.

A brief review of the documents reveals that the Administrator cannot demonstrate reasonable reliance, nor justifiable reliance. (Document 13468-1 at p. 3). The innocent representation at hand (if it is not cured under the IRS definition of commercial fishing, and therefore not a misrepresentation) cannot, as a matter of law, be the cause of damage under either civil fraud standard based on the memorandum filed by the Special Master.

A review of the assertions made in the Special Master's Memorandum in Support, page 3, reveals that the Special Master's claim of reliance is not justifiable, nor reasonable, and its claim must fail under either standard.  Simply put, the Special Master would have this Honorable Court deem that it justifiably or reasonably relied on an alleged claim that $77,967.31 + $31,656.58 = $162,364. (Document 13468-1 at p. 3). The DHECC should not be heard to claim "look at this obvious misstatement," while it is guilty of not having looked.  This cannot meet any legal standard of reliance.

Ignoring any obligation or responsibility of its own, (see Justice Harold See's concurring opinion in *Foremost*, *supra*), DHECC further claims reliance on documents prepared by former counsel, despite possessing information referenced above that should have prompted it to look further, if, in fact, the individual claims administrator who actually handled the claim in 2010 did not accept the IRS definition of commercial fishing income to include cleaning of the fishing routes. Additionally, Jason Zirlott provided former counsel with the information that would have eliminated the need for any claim of reliance, had the allegedly injured party made inquiry for the same. See Exh. B.  Jason Zirlott did not intentionally do anything other than make a claim and provide all the information requested of him to former counsel. Further, an allegedly injured party is not allowed to stick its head in the sand, but when looking at movant's Document 13468-3, page 4 of 6, question 13, "Please state the amount of the claim you are presenting here, and explain how you arrived at that amount[,]" and respondent's answer, "?," is not ***some*** duty to inquire further created on the party that claims reliance?

**IV. Judicial estoppel does not bar further distributions to Jason Zirlott and Capt. Jay**

Jason Zirlott and Capt. Jay have not deceived the DHECC or engaged in conduct that has eroded the integrity of the DHECC or the judicial process.  The Special Master alleges that Mr. Zirlott and Capt. Jay perpetrated a fraud on the Settlement program, DHECC and the judicial process, by concealing material information and providing false sworn statements.  Based on these allegations, the Special Master further argues that judicial estoppel should apply to bar any further recovery for losses incurred.  This argument is without merit in this matter.

The doctrine of judicial estoppel bars a party from assuming inconsistent positions in litigation.  *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988). The doctrine's purpose is "to protect the integrity of the judicial process, by prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (internal quotations and citation omitted).

As an equitable doctrine, "judicial estoppel is invoked where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (internal citations omitted).  The doctrine applies when: 1) a party's position is clearly inconsistent with a previous position; 2) the court accepted the previous position; and 3) the non-disclosure was not *inadvertent*. *Kane*, 535 F.3d at 385-386 (emphasis added).  In the context of judicial estoppel, "inadvertence" requires either that "the debtor . . . lacks knowledge of the undisclosed claim[ ] or has no motive for [its] concealment." *Id*. at 386 (emphasis in original) (internal citation omitted).

As demonstrated above, Mr. Zirlott did not intentionally conceal or omit material information in submitting claims for losses to the DHECC.  His representations concerning income were innocently made, truthful and based on a reasonable understanding of commercial fishing and associated activities, by a commercial fisherman.  He did not intend to conceal any material information and cannot be charged with having knowledge that he did not have. Undoubtedly, the Claims process and Settlement program require protection from fraudulent claims and claimants, however, Mr. Zirlott has not perpetrated a fraud on the process or in his claims, and he has not been deceitful or deceptive in any representations he made. To categorize him in the same vein as claimants who colluded and conspired with parties to defraud BP, the Settlement Program and this Honorable Court, is not only misplaced, but, more importantly, unconscionable, and akin to lore about the Salem Witch Trials. Mr. Zirlott is a hard-working fisherman with a tenth-grade education, who has a provided a solid living for his family.  He is, by no means, some maritime mastermind capable of committing the fraudulent acts that the Special Master has heaped upon him.  With all due respect, judicial estoppel does not apply in this matter to bar further recovery for losses incurred by Mr. Zirlott and Capt. Jay.

## CONCLUSION

What is clear, from this record, is that neither DHECC nor the Special Master is entitled to the relief it seeks.  The motion should be denied as a matter of law, and the same is respectfully requested on behalf of Jason Zirlott and Capt. Jay, LLC.

Respectfully submitted,

 /s/  Nisha Sandhu
NISHA SANDHU

LSB 30340
Regan & Sandhu, P.L.C.
2125 St. Charles Avenue
New Orleans, LA 70130
Tel.: (504) 522-7260
Fax: (504) 522-7507

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition to the Motion of Special Master for Return of Payments, has been served on All Counsel by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this  22nd  day of  December , 2014.

 /s/  Nisha Sandhu
NISHA SANDHU