UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * | MDL NO. 2179 SECTION J |
| This document relates to: | * * | HONORABLE CARL J. BARBIER |
| No. 10-4536 | * * | MAGISTRATE JUDGE SHUSHAN |

**BPXP'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE
THE REPORTS AND TESTIMONY OF IAN RATNER**

Confronted with the serious deficiencies in Mr. Ratner's opinions, the United States attempts to backtrack from its expert's admissions that (1) a valuation of BPXP is relevant to his opinions and a necessary consideration in evaluating BPXP's funding or financing options, and (2) he neither thought about nor formed any opinion as to the impact of a penalty on BPXP over any time period less than ten years. These attempts to ignore Mr. Ratner's admissions are unsuccessful, as are the U.S.' attempts to shift blame for Mr. Ratner's failure to perform a valuation to the scope of discovery in this case. Mr. Ratner's testimony should be excluded.

**I.  The United States' Arguments Cannot Excuse Mr. Ratner's Failure to Conduct an Analysis Adequate to Support His Opinions, Including a Valuation of BPXP.**

The United States cannot dispute the fact that Mr. Ratner, though he is experienced in performing business valuations and has testified that a valuation of BPXP would be relevant to his opinions in this case, failed to perform any valuation of BPXP.[1] Bringing his experience as a

---

[1] *See* United States' Mem. in Opp. to BPXP's Mot. to Exclude the Reports and Testimony of Ian Ratner, Rec. Doc. 13862 ("U.S. Br.") at 5 ("Mr. Ratner is a . . . professional business valuator [with] more than 20 years of experience in financial analysis, forensic accounting, and business valuation."); Ex. 1, 10/21/14 Ratner Dep. at 240:23-241:2 ("Q. You knew that the valuation of BPXP would be relevant to the question of future funding or financing at the time that you issued your expert reports, correct? A. Correct."); *id.* at 88:2-5 ("Q. But based on your own work, is there anything in your own work that you're going to use to say is -- represents a value of BPXP? A. No.")).

"professional valuator" to bear, Mr. Ratner testified that the valuation of BPXP is relevant to the central question of the "economic impact on the violator" factor—*i.e.*, whether BPXP will be able to obtain future funding or financing to pay a CWA penalty—and would be a necessary consideration in evaluating the funding or financing options he opines may be available to BPXP. Despite the United States' excuses, by omitting this necessary analysis, Mr. Ratner's opinions fall short of the standards for expert testimony under Rule 702 and should be excluded.

The U.S. attempts to justify its expert's failure to perform this relevant analysis by claiming that "a business valuation *is not needed* to show that BPXP could pay a civil penalty of $18 billion, and a business valuation *cannot be performed* because BPXP refused to produce the requisite data." (U.S. Br. at 7) (emphasis added). Despite these spurious excuses, however, a valuation of BPXP was both necessary and possible. *First*, the United States' assertion that a valuation of BPXP is not necessary contradicts the testimony of its own expert. Mr. Ratner opined that equity, debt, and asset sales are all funding options available to BPXP, but admitted that *a valuation of BPXP would be necessary for any of those funding options*. In particular, Mr. Ratner's testimony makes clear that:

- A valuation of BPXP is necessary to assess BPXP's ability to secure *equity funding*:

    Q. Would you expect an equity investor considering an investment in BPXP to require a valuation?
    A. Yes.[2]

- A valuation of BPXP is necessary to assess BPXP's ability to secure *debt financing*:

    Q. Okay. So you would expect a lender who was making a decision to loan to BPXP would also want to look at a valuation of BPXP, correct?
    A. Some LTV, yeah. Yes.[3]

---

[2] Ex. 1, 10/21/14 Ratner Dep. at 89:16-19.

[3] *Id.* at 92:18-21.

2

- A valuation of BPXP is necessary to assess BPXP's ability to *sell assets*:

    Q.  You then continue: "Management contemplating the divestiture of a portion of the business will require a valuation to assess the viability of the potential divestiture and the impact it would have on the company's financial situation." Is that an accurate statement?
    A.  Yeah. Everything that's in here - everything that's in the book is accurate.[4]

The United States is thus squarely at odds with its own expert in claiming that a valuation of BPXP is unnecessary to evaluating BPXP's ability to fund or finance a CWA penalty.

In addition, no forces outside Mr. Ratner's control prevented him from performing the required valuation. Contrary to the government's complaints, Mr. Ratner's failure to perform a valuation was not caused by the scope of BPXP's production, which was fully consistent with the Court's orders.[5] In any event, the U.S. has had information relevant to the valuation of BPXP since the middle of 2014, including BPXP's quarterly financial reports and BP's Gulf of Mexico projections through 2018. No later than mid-August, the U.S. had the Wood Mackenzie valuation of the Gulf of Mexico assets, which it admits is "information relevant to the valuation of BPXP," (U.S. Br. at 8-9), as well as other documents relied upon by Mr. Den Uyl that could have provided a basis for a valuation by Mr. Ratner. Neither the Court's discovery orders, nor anything but Mr. Ratner's own choice, prevented him from performing a valuation of BPXP.

---

[4] *Id.* at 92:22-93:5.

[5] Specifically, the U.S. complains that BPXP (1) did not produce financial projections beyond 2018; (2) "heavily redacted" the minutes of a BP p.l.c. Board of Directors meeting; and (3) did not produce its March Investor Day Upstream Proof Points before expert discovery (U.S. Br. at 2-3). In each instance, however, BPXP was acting at the directive of the Court or consistent with its orders. *See* Order re Penalty Phase Telephone Conference on 7/10/14, Rec. Doc. 13170 at ¶ 6 ("BPXP is not required to produce information beyond 2018. It is not required to produce the backup for the information provided through 2018."); Order re U.S. Mot. to Compel Disc. from BPXP, Rec. Doc. 12945 at 2 ("[BPXP] shall produce any forward-looking projections for the consolidated operations of BP p.l.c. in the Gulf of Mexico which are part of or referenced in the minutes of the meetings of the board of directors of BP p.l.c. for 2013 and 2014. ***Projections for any other geographic area shall be redacted.***") (emphasis added); U.S. Br. at 3 n.2 (admitting that BPXP's purported "failure" to produce the Proof Points document "was consistent with the Magistrate Judge's ruling"). Moreover, in briefing those discovery issues, the U.S. never took the position that the information it sought was needed to value BPXP—instead, its argument that documents ruled out of bounds by the Court were needed to value BPXP arises only now as an *ex post* justification.

The U.S. appeals to the trial judge's "leeway" and "discretion" in arguing that Mr. Ratner's opinions should be admitted despite the lack of a valuation, asserting that "[t]he reliability of Mr. Ratner's testimony ***should be taken for granted*** because his testimony is the synthesis of hundreds of identified financial documents."  (U.S. Br. at 10) (emphasis added).  The numerosity of an expert's consideration materials, however, cannot substitute for the rigorous analysis required under *Daubert* and Rule 702.  Nor should the reliability of expert testimony simply be "taken for granted" as the U.S. urges.  To the contrary, the law requires that Mr. Ratner "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" if his testimony is to be admitted.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  For "a professional business valuator [with] more than 20 years of experience in . . . business valuation" (U.S. Br. at 5) to fail to perform a valuation analysis that he admits is relevant and even necessary to his opinions is to fail to meet the law's standards.

**II.     Mr. Ratner Should Not Be Permitted to Speculate Regarding the Likelihood of Future Funding of BPXP by the BP Group.**

Mr. Ratner confirmed multiple times that he does not know what the BP Group would do (or is likely to do) if faced with deciding whether to provide further funding to BPXP.  The U.S. has also disclaimed any opinion by Mr. Ratner as to what the BP Group is likely to choose to do with respect to future funding of BPXP.[6]  Mr. Ratner and the U.S. should be held to these representations, and any speculation as to the likelihood of future funding excluded.[7]

---

[6]  *See* U.S. Br. at 13-14 ("Mr. Ratner does not assert that the BP Group *would* transfer funds to BPXP, only that it *could* transfer funds . . . .") (emphasis in original).

[7]  For example, Mr. Ratner's assertions that "BPXP has the ability to obtain equity capital from the BP Group" and "has the ability to obtain equity and debt capital from the BP Group," (U.S. Br., Ex. 1, 9/12/14 Ratner Rpt. at ¶¶ 19, 85), should be excluded.  Mr. Ratner testified that BPXP cannot ***compel*** future funding from the BP Group, (Ex. 1, (continued…)

4

**III.     Mr. Ratner Cannot Redefine the Economic Impact Factor to Concern Only "Long-Term" Effects.**

The United States admits that the "economic impact of the penalty on the violator" factor "[l]ogically" includes both short-term and long-term effects. (U.S. Br. at 14). Mr. Ratner's report, however, focuses solely on the "long-term economic impact" on BPXP. (*See* BPXP's Mem. in Supp. of Mot. to Exclude the Reports and Testimony of Ian Ratner, Rec. Doc. 13770 ("BPXP Br."), Ex. A., 8/15/14 Ratner Rpt. at ¶¶ 3(f), 150, 151, 153, 171). Seeing this problem, the U.S. claims that "Mr. Ratner's opinions *do* address the short term economic impacts of the penalty on the violator." (U.S. Br. at 14-15) (emphasis in original). Again, however, the U.S. contradicts its expert, who clearly testified that he had neither thought about nor formed an opinion as to the impact of a penalty on BPXP over any time period less than ten years.[8] The U.S. cannot escape the fact that Mr. Ratner "defined" the inquiry in a way that is contrary to the law, leaving him in no position to opine regarding the "economic impact of the penalty on the violator." *Loeffel Steel Products, Inc. v. Delta Brands, Inc*., 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005) ("Expert opinions that are contrary to law are inadmissible.").

## CONCLUSION

For the reasons discussed above, BPXP respectfully requests that the Court exclude these opinions from evidence, and preclude Mr. Ratner from providing testimony on this issue.

---

10/21/14 Ratner Dep. at 332:25-333:5), and he and the U.S. have now disclaimed any opinion as to what the BP Group would voluntarily choose to do.

[8] (*See* BPXP Br., Ex. C, 10/22/14 Ratner Dep. at 16:4-22 ("[V]is-à-vis BP, . . . I didn't make an opinion on the short term, so I -- you know, I haven't thought about it. . . .  I haven't even really formed that detailed opinion about the short term."); *id*. at 19:10-11 ("I had defined it in BP as no long-term negative impact."); Ex. 1, 10/21/14 Ratner Dep. at 61:8-10 ("Q. How long is long-term negative economic impact under your definition? A. It's beyond ten years.")).

5

Date: December 22, 2014                    Respectfully submitted,


/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
Matthew Regan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Kirkland & Ellis LLP
655 15th Street, NW
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

***Attorneys for BP Exploration & Production Inc.***

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 22nd day of December, 2014.

                                      /s/ Don K. Haycraft