UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * | MDL NO. 2179 SECTION J |
| This document relates to: No. 10-4536 | * * * * * | HONORABLE CARL J. BARBIER MAGISTRATE JUDGE SHUSHAN |

**BPXP'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. STANLEY J. RICE**

Dr. Stanley Rice, one of the United States' environmental experts, presents opinions related to both toxicology studies and water chemistry that abound with fundamental errors, repeated misstatements, and critical misunderstandings. Accordingly, BPXP moved to exclude certain opinions of Dr. Rice. In its Opposition to BPXP's Motion ("U.S. Opp'n"), the United States seeks to minimize and divert attention from many of these flaws, essentially stating that Dr. Rice's errors and misstatements do not matter all that much. In addition, the United States sought to correct others of Dr. Rice's errors through the filing of an untimely "errata" sheet submitted on the same day that *Daubert* motions were due.[1] The United States cannot cure Dr. Rice's fundamental errors by minimizing mistakes and filing new expert opinions after the Court's discovery deadline. As outlined in BPXP's Memorandum ("BPXP Memo."), Dr. Rice's opinions on critical aspects of toxicology and water chemistry are so incomplete and misleading that they are fundamentally unreliable. Hence, they should be excluded under *Daubert*.

---

[1] The United States also sought to correct several of the flaws in Dr. Rice's report through corrections to the deposition transcript. BPXP objects to these untimely submissions and will seek to strike Dr. Rice's errata in a motion that it will file separately.

**Dr. Rice Admitted He Identified the Wrong Species in His Report**.  On 15 different occasions in his bibliography of toxicity, Dr. Rice identified the wrong species, suggesting incorrectly that the toxicity tests had been conducted on important Gulf species.  The United States seeks to trivialize this error, but Dr. Rice admitted that the species does matter.  In his deposition, Dr. Rice admitted repeatedly that different species could respond differently to oil exposure.  (*See, e.g.*, U.S. Opp'n, Ex. 4, Rice Dep. at 119:2-6 ("What I -- what I mean to say here is that I'm sure there are species differences in the details as one part per billion or two or three or, you know, whatever, that there may be differences.").)  Dr. Rice also agreed that he did not know the specific concentration of PAHs that would cause toxicity to Atlantic bluefin tuna embryos, one of the species that he erroneously identified in his reports.  (Dep. of Dr. Stanley Rice, *In Re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010* at 41:5-9 (Oct. 30, 2014) (Exhibit G) (Ex. G, Rice Dep.) ("Q. You agree that you don't know the specific PAH concentration that would cause this toxicological response to Atlantic blue -- bluefin tuna embryos, correct? A. Correct.").)[2]

**Dr. Rice's Reliance upon a High Energy Blender Study is Undermined by Lost Chemistry Samples**.  In his deposition, Dr. Rice apparently learned for the first time that National Oceanic and Atmospheric Administration ("NOAA") scientists lost the samples for their Australian bluefin tuna study.  This is important because this is the very study that Dr. Rice relies upon to establish the lowest alleged toxicity threshold (0.3 parts per billion ("ppb")) in his report.  Moreover, Dr. Rice himself emphasized that having that chemistry was necessary in order to develop reliable toxicity thresholds: "since this is a lower quality experiment in general,

---

[2] The United States seeks to brush away these differences by noting that Dr. Rice also admitted that the responses between species could be "slightly different."  U.S. Opp'n, Ex. 4, Rice Dep. at 119:15-18.  Dr. Rice also stated that "I'm sure there are species differences in the details as one part per billion or two or three or, you know, whatever." *Id*. 119:3-5.  However, this "slight[]" difference ("one part per billion or two or three," *id.* at 119:4) encompasses the vast majority of the samples identified by Dr. Rice as toxic.

you're not going to be able to quantify the dose very well" without the chemistry. (Ex. G, Rice Dep. at 67:7-9.)

In response, the United States provides a "short background" on how toxicity tests are conducted. (U.S. Opp'n at 6-7.) The majority of this discussion, however, relates to the standard method for mixing oil and water (called a WAF), not the novel high-energy, blender method (called a HEWAF) relied upon by Dr. Rice. With regard to the HEWAF method, Dr. Rice himself opined in his expert report and testified extensively that one needs the chemistry for the test to be reliable. (BPXP Memo. at 5-6; *see also*, BPXP's Motion, Ex. C, Rice Dep. at 65:2-8.) The United States' Opposition fails to address this testimony and Dr. Rice's own emphasis on the importance of the chemistry for HEWAF studies. Dr. Rice should not be allowed to rely upon a study that is unreliable by his own standards.

**Dr. Rice Lacks a Fundamental Understanding of the Toxicity Literature He Cites.** The United States dismisses Dr. Rice's lack of knowledge of his toxicity bibliography as just a list of "meaningless criticisms." (U.S. Opp'n at 10.) But Dr. Rice was unfamiliar with critical aspects of the studies in his Appendix C, and he was simply unable to answer basic questions related to those studies. For example, Dr. Rice did not know:

- Why different containers apparently impacted the toxicity results. (BPXP's Motion, Ex. C, Rice Dep. at 120:10-15 ("I don't remember that level of detail.").)

- Whether toxicity resulted from ammonia, not oil, found in the lab samples. (*Id.* at 126:5-9 ("I do not remember that fine level of -- fine scale level of detail.").)

- Whether one study found no evidence of gross malformations typically seen with severe oil injury. (*Id.* at 128:9-17 ("I'm not aware of the level of detail here.").)

Finally, as admitted by Dr. Rice, and as the United States seems to concede, Dr. Rice is unable to use the toxicity studies in his Appendix C to provide any reliable information about actual impacts to species in the Gulf of Mexico. (BPXP Memo. at 9.)

**The United States Seeks to Distract from These Problems by Referring to Other Studies That Show Toxicity Only at Much Higher Concentrations.** The United States also engages in hand-waving on the issue of what "low concentrations" means. (U.S. Opp'n at 9.) According to the United States, apparently, as long as there are studies that show effects from oil constituents below 20 ppb, Dr. Rice's opinions are confirmed. However, the majority of Dr. Rice's analyses relies upon toxicity at levels that are significantly below 20 ppb (ranging from 0.3 to 2.0 ppb), most based upon high-energy blenders (HEWAF). Dr. Rice's inappropriate use of these extremely low toxicity levels cannot be cured by the fact that there are other studies that show effects at much higher concentrations.[3]

**The United States Continues to Champion an Averaging Technique That Dr. Rice Admitted Was Inappropriate**. Dr. Rice presented the average concentration of PAHs in the water during May 2010 as above 1000 ppb, but this calculation was heavily skewed by a few high samples that were collected at the riser.[4] If the data were presented correctly (using the appropriate averaging technique, called a "geometric mean"), the average PAH concentration in the water during May 2010 would drop from 1000 ppb to under 0.5 ppb. Dr. Rice *himself* admitted that the geometric mean would be more appropriate. (Ex. G, Rice Dep. at 320:22 - 321:5 ("A geometric mean would probably be more appropriate.").)[5]

---

[3] The United States further attempts to justify Dr. Rice's reliance on tests that use this non-standard high-energy mixing method by arguing that this method replicates conditions in the Gulf of Mexico. (U.S. Opp'n at 7-8). What it fails to disclose is that the method in question employs the use of a high-speed commercial food blender to mix oil and water and that both Drs. Rice and Boesch admit they have performed no analysis comparing the actual energy generated by the HEWAF blender to the actual energy generated in the Gulf of Mexico. (Ex. G, Rice Dep. at 262:2-10; Dep. of Dr. Donald Boesch, *In Re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010* at 207:3-15 (Oct. 28, 2014) (Exhibit L).

[4] Of the over 150 data points presented by Dr. Rice for a critical depth slice (1000m depth or greater), only 4 were above 1000 ppb. Ex. G, Rice Dep. 158:13 - 164:23; Rice Dep. Ex. 13339 (Exhibit H).

[5] The United States asserts that Dr. Shea uses arithmetic, not geometric, means as part of his analysis of water chemistry data. The passage in Dr. Shea's report that the United States cites for this proposition does not support

**The United States -- not BPXP -- Is Seeking to Litigate Natural Resource Damages ("NRD") in the Current Clean Water Act Proceeding.** The United States complains that BPXP is somehow trying to litigate the NRD case by seeking to exclude Dr. Rice's reliance upon novel toxicity studies. Indeed, the opposite is true. The United States is asking the Court to find potential environmental harm based upon flawed studies that were themselves conducted as part of the *Deepwater Horizon* NRD assessment. The two key studies relied upon by the United States were published by Dr. John Incardona of NOAA, among others.[6] The United States, however, never mentions that both of these studies were conducted as part of the *Deepwater Horizon* NRD assessment. (*See* Ex. I at BP-HZN-2179MDL09304785 ("This work was funded as a contributing study to the *Deepwater Horizon*/MC252 Incident Natural Resource Damage Assessment") and Ex. J at BP-HZN-2179MDL09304816 ("This work was supported by funds provided as part of the Natural Resource Damage Assessment (NRDA) for the *DWH* oil spill"); *see also*, Dep. of Amy Merten, *In Re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010* at 90:14 - 91:6 (June 11, 2014) (Exhibit K).) The United States has no qualms showcasing these NRD studies as part of its argument in the Clean Water Act proceeding but wants to thwart any criticism by BPXP as somehow inappropriate at this stage.

**In sum**, for the reasons stated in BPXP's Motion and Memorandum, the appendices of Dr. Rice's reports dealing with water chemistry, the list of toxicology studies in Appendix C of his Round 3 report, and any opinions that rest on these materials, should be excluded.

---

Footnote continued from previous page

this claim. There, Dr. Shea presents a percent exceedance of a threshold, not an average concentration value. (U.S. Opp'n, Ex. 1, Rice Round 1 Rpt. at 20-25.)

[6] Rice Dep. Ex. 13333 (Exhibit I) & Rice Dep. Ex. 13338 (Exhibit J).

Date: December 22, 2014                  Respectfully submitted,


/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
Matthew Regan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Kirkland & Ellis LLP
655 15th Street, NW
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Brian D. Israel
Elissa J. Preheim
Brett E. Marston
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
Telephone: (202) 942-5000
Facsimile: (202) 942-59999
***Attorneys for BP Exploration & Production Inc.***

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 22nd day of December, 2014.

                                              /s/ Don K. Haycraft
                                              Don K. Haycraft