UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY  THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * | MDL NO. 2179  SECTION J |
| This document relates to: | * * | |
| No. 10-4536 | * * * | HONORABLE CARL J. BARBIER  MAGISTRATE JUDGE SHUSHAN |

**BPXP'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION
TO EXCLUDE THE OPINIONS AND TESTIMONY OF DR. RICHARD W. CLAPP**

There is a difference between testimony regarding potential harm and testimony that is speculative.  Even if the former is admissible evidence at a trial concerning a Clean Water Act ("CWA") penalty, the latter is not.  Dr. Clapp's conclusions regarding "health impacts"—whether actual or potential—are admittedly not supported by data or evidence and are not causally linked to the DWH incident, and thus are inadmissible speculation.  For this reason, BPXP's Motion to Exclude the Opinions and Testimony of Dr. Richard W. Clapp ("Motion") (Rec. Doc. 13782) should be granted.

**ARGUMENT**

**I.     Dr. Clapp's Opinions Cannot Circumvent the Requirements of Rule 702 and *Daubert*.**

The United States argues that the "seriousness" factor under the CWA permits evidence of both actual and potential health impacts, and thus "testimony and opinions regarding potential harm to human health are not inherently speculative." (U.S. Opp'n to BPXP's Mot. to Exclude the Ops. and Test. of Dr. Richard W. Clapp, Rec. Doc. 13850, at 1.)  Regardless of what standard of proof the United States bears under the CWA—which is not the subject of BPXP's motion—

*all* expert testimony must satisfy the reliability and relevance requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The United States cites no law suggesting that Rule 702 or *Daubert* do not apply to evidence presented in a CWA trial.

Rule 702 and *Daubert* mandate that expert opinions must be "based on sufficient facts or data," Fed. R. Evid. 702, and that there cannot be "too great an analytical gap" between the evidence and the opinions proffered, *General Elec. Co. v. Joiner*, 522 U.S. 136, 140, 146 (1997). "[I]t is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003); *see also Joiner*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). The lack of reliable scientific data to support expert opinions and the failure to establish causation are grounds for exclusion of expert testimony as speculative under *Daubert*. *See Johnson v. Arkema*, 685 F.3d 452, 463, 467-68 (5th Cir. 2012); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 277-79 (5th Cir. 1998).

**II.     Dr. Clapp's Opinions Are Neither Reliable nor Relevant Under Rule 702 and *Daubert*.**

Dr. Clapp offers far-reaching opinions about both actual and potential "health impacts" resulting from the DWH incident. As explained in detail in BPXP's Motion, none of his opinions are based on "sufficient facts or data," and the "analytical gap" between his conclusions and the evidence is too great to satisfy Rule 702 or *Daubert*.[1]

---

[1] BPXP does not address in this brief the injuries and deaths resulting from the explosion on the rig on April 20, 2010, and the Court needs no testimony from Dr. Clapp or any other expert to assess the nature of that harm.

### A. Dr. Clapp's Conclusions Regarding Short-Term Health Impacts Are Speculative Because They Are Admittedly Not Supported by Data or Evidence or Causally Linked to DWH.

Dr. Clapp summarily concludes that "many" short-term health impacts were observed, primarily acute respiratory, dermatologic, and neurologic effects caused by "exposures" to oil and dispersant constituents. (Ex. A, 08/15/14 Clapp Rpt. at 1.) But Dr. Clapp admits that he has no data or information that *any* short-term health effects were actually caused by any DWH-related exposures:

> Q. (BY MS. DESANTIS) Okay. Let's focus on causation, though, Dr. Clapp. You have no information or data that any short-term health effects for any population were, in fact, caused by exposure to any toxin or chemical associated with the DWH incident, correct?
> **A. Correct.**

(Ex. D, 10/31/14 Clapp Dep. Tr. at 146.) Dr. Clapp's opinions about any short-term, exposure-related health effects, therefore, are admittedly speculative.

With respect to any *non-exposure-related*, short-term health effects, Dr. Clapp admits that he does not—and does not attempt to—reach *any* causal conclusions about *any* health effects that he maintains actually occurred, whether exposure-related or non-exposure-related. (Ex. C, 09/26/14 Clapp Rpt. at 2-3 ("I have not made *any* causal conclusions about the observed symptoms . . . ."; "I made *no* causal conclusions in my report." (emphases added)); Ex. D at 138 ("Q. Now, Doctor, you did not intend to offer any opinions that constitute causal conclusions about observed symptoms, correct? A. Correct.").) In other words, Dr. Clapp does not claim to know whether any alleged health effects were caused by chemical exposure, heat, fatigue, stress, or even factors entirely unrelated to DWH, such as preexisting conditions. This is precisely the type of unreliable and irrelevant "*ipse dixit*" opinion testimony prohibited by Rule 702 and *Daubert*.

### B. Dr. Clapp's Opinions Regarding "Potential" Long-Term Health Impacts Are Expressly Speculative and Hypothetical.

Dr. Clapp admittedly speculates that long-term health impacts from the spill *may*—not *will*—occur. (Ex. D at 149-50.) He admits that no long-term health effects have been observed to date (*id.* at 148-49), nor does he have any data or information linking any long-term health effects to DWH-related chemical exposures (*id.* at 146-47). Dr. Clapp also does not cite to any exposure data supporting his opinions about the prospect of long-term health effects. (Ex. C at 3.) The glaringly speculative nature of Dr. Clapp's opinions regarding potential long-term health impacts is illustrated by his own statement that it is "premature [to] draw conclusions about the long-term impacts at this time." (Ex. B, 09/12/14 Clapp Rpt. at 1.)

### C. The Evidence Cited by Dr. Clapp Is Insufficient to Support Scientifically Valid Opinions Regarding Actual or Potential Harm.

While Dr. Clapp's admissions regarding his failure to draw causal conclusions are sufficient to bar his testimony, none of the evidence he relies on is sufficient to render his opinions reliable or relevant. Dr. Clapp admits that he did not perform any type of toxicological risk assessment, nor does he cite any of the extensive exposure data in his expert reports. (Ex. C at 1, 3.) Instead, the "primary focus" of Dr. Clapp's reports is admittedly secondary sources, none of which are sufficiently probative under Rule 702 or *Daubert*. (*Id.* at 1.) For example, literature concerning other oil spills does not and cannot establish that either actual or potential health effects resulted from the DWH spill, particularly because the literature he references in his reports pertains to surface spills. (*See* Ex. A at 5-6; Ex. D at 175.) Similarly, "consistency" of certain symptoms reported by DWH response workers with symptoms reported in connection with prior spills is not evidence of any actual harm attributable to DWH—particularly when, as Dr. Clapp has acknowledged, many of the symptoms are "non-specific" (i.e., could have been caused by factors entirely unrelated to the DWH incident, including preexisting medical

4

conditions).  (Ex. D at 185-87.)  Moreover, Dr. Clapp's failure to draw *any* causal conclusions precludes his linking any symptoms recorded in injury and illness rosters to any actual exposures or health effects from the DWH incident.

### III. Dr. Clapp Admittedly Has No Mental Health Expertise.

As Dr. Clapp himself admitted in deposition, he is not an expert in mental health or related fields.  (Ex. D at 46-47.)  This Court should not accept testimony on mental health issues from a witness who does not even consider himself to have expertise in psychology, psychiatry, or mental health.

### CONCLUSION

For the foregoing reasons, BPXP respectfully requests that the Court enter an order precluding Dr. Clapp from offering any expert opinions or testimony in the Penalty Phase.

Date: December 22, 2014                     Respectfully submitted,

*/s/ Don K. Haycraft*

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Matthew T. Regan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
KIRKLAND & ELLIS LLP
655 15th Street, NW
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorneys for BP Exploration & Production, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 22nd day of December, 2014.

*/s/ Don K. Haycraft*