UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY  THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | *<br>*<br>*<br>* | MDL NO. 2179<br><br>SECTION J |
| This document relates to:<br><br>    No. 10-4536 | *<br>*<br>*<br>*<br>*<br>* | HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

### BPXP'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY REGARDING SPECULATIVE ENVIRONMENTAL HARM

The United States does not dispute that Drs. Boesch's and Rice's ("U.S. Experts") opinions of environmental harm are subject to Federal Rule of Evidence 702 ("FRE 702")[1] and offers no response to the numerous cases BPXP cited that have held that speculative expert opinions are not admissible.[2] The United States instead seeks to avoid the prohibition on speculative expert opinions by labeling such opinions as ones regarding "potential harm." But there is a difference between testimony regarding potential harm and testimony that is speculative. Time and again, the U.S. Experts *admitted* that they disregarded available data and/or speculated about theoretical environmental harm. Such speculation is clearly inadmissible. Thus, BPXP's Motion to Exclude Expert Opinions and Testimony Regarding Speculative Environmental Harm ("BPXP's Motion") (Rec. Doc. 13779) should be granted.

---

[1] *See* [13779-1] BPXP's Memorandum in Support of Its Motion to Exclude Expert Opinions and Testimony Regarding Speculative Environmental Harm (Dec. 5, 2014) ("BPXP Memo.") at 13-15.

[2] BPXP Memo. at 3-4 & 6-7.  The only two cases the United States cites in its Opposition addressing FRE 702 do not dispute this point.  *See* [13861] Opposition of the United States to: BPXP's Motion to Exclude Opinions and Testimony of Drs. Boesch and Rice (Dec. 15, 2014) ("Opposition" or "U.S. Opp'n") at 3.

1

I.      **THE UNITED STATES CANNOT CIRCUMVENT FRE 702'S REQUIREMENTS**

Contrary to the United States' assertions, BPXP's Motion does not seek to exclude from the Court's consideration *potential* environmental harm. (BPXP Memo. at 13-14.) In fact, BPXP's own expert—Dr. Damian Shea—compared over 18,000 water samples and 8,000 sediment samples to EPA's own toxicity threshold and determined that the *potential* environmental harm in the water and sediment was limited to about 2 percent of all samples, and that this potential harm was mostly near the wellhead and during the summer of 2010.

The U.S. Experts took a different—and impermissible—approach. Time and again, the U.S. Experts made a deliberate choice to ignore or disregard available data or merely speculate about hypothetical or possible environmental harm. They did not do this in every instance, and thus BPXP's Motion was limited to those circumstances in which the U.S. Experts admit that they lack data for their opinion or that they are merely speculating. The undisputed case law requires that the U.S. Experts offer scientific support and more than their say-so for their opinions to be admissible. (*Id.* at 3-4, 6-7 & 14.)[3]

The United States' argument that it is permitted to make a "deliberate…decision" to ignore actual data (and instead look only at peer-reviewed literature) is unsupported and fundamentally wrong. (U.S. Opp'n at 3.)[4] Moreover, the United States fails to mention that—for over four and a half years—they (not BPXP and not the scientific journals) have controlled the public release of much of that data. Indeed, BPXP has been forced to submit many Freedom

---

[3] *See, e.g.*, *Brown v. Illinois Cent. R.R. Co.*, 705 F.3d 531, 537 (5th Cir. 2013) ("Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible") (citation and internal quotation marks omitted).

[4] *See, e.g.*, *Meyer-Chatfield v. Century Bus. Servicing, Inc.*, 732 F. Supp. 2d 514, 525 (E.D. Pa. 2010) ("[E]xpert testimony that ignores existing data and is based on speculation is inadmissible.") (citation and internal quotation marks omitted); *MDG Int'l, Inc. v. Australian Gold, Inc.*, No. 1:07-CV-1096-SEB-TAB, 2009 WL 1916728, at *4 (S.D. Ind. June 29, 2009) ("When an expert ignores critical data in forming his opinions, he fails to satisfy *Daubert*.") (citation and internal quotation marks omitted).

of Information Act ("FOIA") requests and slog through months of litigation to obtain much of this evidence.[5] Why would the United States withhold or disregard such environmental data? For one simple reason: the government's own data shows that the environmental harm caused by the Spill was far less than many feared and that the Gulf of Mexico has largely recovered.[6]

## II. THE U.S. EXPERTS' SPECULATIVE ENVIRONMENTAL OPINIONS MUST BE EXCLUDED

The United States' Opposition does not really address the fundamental issue: the U.S. Experts repeatedly proffer opinions of environmental harm that, by their own admission, rest upon speculation or fail to account for currently available data. (BPXP Memo. at 3-4 & 6-7.)

**Fish and Shell Fish Populations.** The United States' own expert—Dr. Rice—explained in his deposition that opinions regarding population level effects on fish and shellfish would be speculative at this stage without peer-reviewed data. (BPXP's Mot., Ex. E, Rice Dep. at 229:12 - 232:10.) Dr. Boesch nonetheless opines that the Spill harmed fish and shellfish populations. (BPXP Memo. at 7-9.) How does the United States defend an opinion that is speculative according to its own expert? It just characterizes these opinions as "potential harm" (U.S. Opp'n at 5-6.), as if these two words are a magic elixir obviating any need to comply with the Federal Rules of Evidence. But FRE 702 does not turn on such semantics: "[T]he whole point of *Daubert* is that experts can't 'speculate.'"[7]

**Organisms on the Seabed.** Similarly, the United States cannot use the label of "potential harm" to overcome Dr. Boesch's admission that "it is *premature to speculate* about …hydrocarbon contamination of continental shelf sediments and the actual harm that resulted."

---

[5]  *See* Exhibit L (examples of FOIA requests submitted by counsel for BPXP in order to obtain data or information from the United States).

[6]  *See, e.g.,* BPXP Memo. at 1 (citing BPXP's three expert reports related to environmental recovery).

[7]  *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998).

(BPXP's Mot., Ex. G, Boesch Round 1 Rpt. at 27 (emphasis added).)  Dr. Boesch states that he is aware of thousands of sediment samples (*id.*), but he chose to ignore those data.  As with any expert in any other case, Dr. Boesch's opinion of potential harm to continental shelf organisms must be based upon currently available information.[8]  By his own admission, his opinions are not, and therefore they should be excluded under FRE 702.

**Oysters.**  Dr. Boesch himself admitted that he has "no evidence" that oil directly killed oysters or that there were even elevated levels of PAHs in oyster tissue.  (BPXP Memo. at 9.)  Moreover, the United States' Opposition does not dispute that impacts from freshwater diversions cannot be attributable to BPXP because the diversions were not "removal activities" according to the United States' own Rule 30(b)(6) witness.  (*Id.*; U.S. Opp'n at 6.)  In the face of an expert who concedes he has "no evidence" of harm to oysters from oil, the United States maintains that Dr. Boesch can nonetheless assert oysters were potentially harmed because of an undefined "geographic nexus" with oil on the water's surface in the summer of 2010.  (U.S. Opp'n at 6.)  Such conjecture, bereft of evidence, is clearly inadmissible.

**Turtles.**  Dr. Boesch initially opined that "sea turtles suffered substantial mortalities and unusually high rates of stranding that have continued through at least 2013."  (BPXP's Mot., Ex. G, Boesch Round 1 Rpt. at 19.)  He further opined, without reference to any data (all of which the United States has), that the spill was a "possible" reason for these strandings.  (*Id.*)  When BPXP explored the basis for this opinion in his deposition, Dr. Boesch admitted that the cause of turtle mortality is "undiagnosed at this point" and that he had not reviewed the relevant data in

---

[8]  *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) *(en banc)* ("[T]he law cannot wait for future scientific investigation and research.  We must resolve cases in our courts on the basis of scientific knowledge that is currently available."); *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 381 n.33 (5th Cir. 2010) ("Law lags science; it does not lead it." (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996))).

detail.[9]  Consequently, BPXP moved to exclude as speculative Dr. Boesch's opinion of turtle strandings.  (BPXP Memo. at 5 & 11-12.)  Now in its Opposition, for the first time, the United States disclaims that Dr. Boesch has even asserted an opinion regarding actual harm to turtles after 2010.  (U.S. Opp'n, at 10.)  This new position is understandable and telling—it allows the United States to avoid having to defend an opinion that is clearly speculative and inadmissible.

**Phototoxicity.**  In its Opposition, the United States quotes Dr. Rice's deposition at length to defend his opinion that photoxicity is a potential harm resulting from the Spill (U.S. Opp'n at 11), but it omits the very next paragraph that reveals the speculative nature of this opinion:

> *Now here's the catch.*  Can you measure it?  Larvae dies.  Larvae doesn't exist.  Larvae is malformed.  *Did photoxicity do it?  Who knows?*  Or was it just a direct compound?  *Don't know.*  So it will be very difficult to quantify.  *But the -- nonetheless, the element that it could have happened, yes, it's there.  Is it speculative?  Yes, I suppose it is.*  Will there be quantitative evidence of it to -- to prove or support it?  Probably going to be difficult to acquire.  *Can it happen?  I don't know.*[10]

Whether the United States likes it or not, their expert, Dr. Rice, has admitted that the occurrence of photoxicity in this case is pure speculation.  In light of this testimony, any opinion related to photoxicity is the epitome of expert *ipse dixit* that is inadmissible under FRE 702.[11]

## CONCLUSION

For the foregoing reasons, and for the reasons stated in BPXP's Motion, the Court should exclude the U.S. Experts' speculative environmental opinions.

---

[9]  Dep. of Dr. Donald Boesch, *In Re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010* at 255:21 - 256:22 (Oct. 28, 2014) (Exhibit M).

[10]  Dep. of Dr. Stanley Rice, *In Re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010* at 269:21 - 270:6 (Oct. 30, 2014) (Exhibit N) (emphases added).

[11]  *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Date:  December 22, 2014					Respectfully submitted,


							/s/ Don K. Haycraft
							Don K. Haycraft (Bar #14361)
							R. Keith Jarrett (Bar #16984)
							Liskow & Lewis
							701 Poydras Street, Suite 5000
							New Orleans, Louisiana 70139-5099
							Telephone: (504) 581-7979
							Facsimile: (504) 556-4108
							and

							Richard C. Godfrey, P.C.
							J. Andrew Langan, P.C.
							Hariklia Karis, P.C.
							Matthew Regan, P.C.
							Kirkland & Ellis LLP
							300 North LaSalle Street
							Chicago, IL 60654
							Telephone: (312) 862-2000
							Facsimile: (312) 862-2200

							Robert C. "Mike" Brock
							Kirkland & Ellis LLP
							655 15th Street, NW
							Washington, DC 20005
							Telephone: (202) 879-5000
							Facsimile: (202) 879-5200

							Brian D. Israel
							Elissa J. Preheim
							Eric A. Rey
							ARNOLD & PORTER LLP
							555 12th Street, N.W.
							Washington, D.C. 20004
							Telephone: (202) 942-5000
							Facsimile: (202) 942-59999
							***Attorneys for BP Exploration & Production Inc.***

6

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 22nd day of December, 2014.

                            /s/ Don K. Haycraft
                            Don K. Haycraft