UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY  THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to:<br><br>   No. 10-4536 | * * * * * | HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

**BPXP'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE
DR. DIANE AUSTIN'S OPINIONS AND TESTIMONY**

The United States ignores the fundamental reasons that Dr. Diane Austin's opinions are unreliable and irrelevant to the Penalty Phase.  Dr. Austin's ethnographic methodology is not appropriate for determining a penalty under the Clean Water Act because she does not determine whether and to what extent individuals were impacted by the *Deepwater Horizon* incident, she concedes that her research cannot be generalized to a larger population, and she and the United States have made it impossible to analyze her work.  Accordingly, the Court should grant BPXP's Motion to Exclude Dr. Diane Austin's Opinions and Testimony.

**ARGUMENT**

**I.     Dr. Austin's Ethnographic Opinions Do Not Meet the Standards for Expert Testimony under the Federal Rules of Evidence and *Daubert*.**

Dr. Austin's ethnographic opinions regarding "sociocultural harm" do not meet the requirements of Rule 702 and *Daubert*, which mandate that expert opinions must be "based on sufficient facts or data," Fed. R. Evid. 702, and that there cannot be "too great an analytical gap" between the evidence and the opinions proffered, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Dr. Austin may or may not be a qualified anthropologist, but she cannot hide behind

those credentials here, where the analysis, as she describes it, does not support the ultimate opinions that she reaches. "[I]t is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003); *see also Joiner*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

## II. Dr. Austin Reports on Patterns of Reactions, and Her Work Does Not Support a Finding that Individuals Were Impacted by the Incident.

The United States argues that Dr. Austin does not need to be a mental health professional or an economist because she merely reported on the "pattern of reactions" to the incident. (US Opp'n to BP's Mot. to Exclude Dr. Diane Austin's Ops. and Test. at 6, Rec. Doc. 13856 [hereinafter "US Opp'n"]). Her expert report, however, does more than report on reaction patterns: as the United States explains, Dr. Austin purports to determine whether the incident "caused harm to the society or culture of the Gulf of Mexico communities." (US Opp'n at 2). Thus, Dr. Austin offers a causation opinion based only on observations of reaction patterns.

Ethnography may provide some insight into how individuals describe their feelings, but without additional data, it cannot tell us if the individuals were impacted by the incident or by something else entirely. The United States quotes an article cited by Dr. Austin to support the idea that ethnographic techniques are a valid way "to 'analyze particular manifestations of distress in relation to personal and cultural meaning complexes . . . .'" (US Opp'n at 4). But the theme of this article is that people express distress in different ways – the article does not focus on measuring the distress experienced by those individuals.[1] This article is the United States'

---

[1] US Opp'n, Ex. 5 at 379 ("This paper focuses attention on **alternative modes of expressing distress** and the need to analyze particular manifestations of distress . . . ." (emphasis added)).

only support for its contention that ethnography can show whether "the society or culture of the Gulf communities had been harmed," but it instead demonstrates that it is not ethnography's place to gauge actual harm. (US Opp'n at 4).

BPXP does not dispute that Dr. Austin and the BOEM team have reported what some individuals expressed to them. But by her own admission, Dr. Austin did not confirm the veracity of what her team was told. (BPXP Mot., Ex. C, Austin Dep. at 280:1-9). She did not attempt to quantify the statements in a meaningful way, or connect those statements to quantitative data. (*See, e.g.*, *id*. at 67:6-12 (purpose of expert reports was not to quantify the effects of the spill, and Austin has not quantified effect of spill)).

The Federal Rules of Evidence and *Daubert* require more rigor and testability. The United States points out that BPXP's expert, Dr. George Bonanno, testified that "[e]thnographic research is not useless." (US Opp'n at 3). Ethnographic research may have its own academic use, but as Dr. Bonanno explains, it is "ill-suited" and "inappropriate for the task at hand, which is to determine the mental health impacts of a population-level event,"[2] and to determine the economic impact of the incident.

### III. The United States Mischaracterizes Dr. Austin's Statements Regarding the Generalizability of Her Research.

The United States incorrectly contends that Dr. Austin's deposition testimony shows that "where conditions persist, her methodology allows her to predict that the harm persists as well." (US Opp'n at 2). To the contrary, Dr. Austin's deposition testimony confirms that she is not able to establish that any alleged harm continues to exist. Dr. Austin acknowledged that conditions for the industries she addressed changed annually and, in any event, she has not analyzed whether conditions remain the same as when she conducted her research. (BPXP's Mot., Ex. C,

---

[2] US Opp'n, Ex. 3, 09/12/14 Bonanno Rpt., at 9; Bonanno Dep. at 131:11-15, attached hereto as Ex. 1.

Austin Dep. at 301:22-302:21, 303:15-20).  By her own admission, Dr. Austin's opinions are limited to the research that she and her research team conducted through January 2012.  (*Id*. at 289:22-290:1).  Accordingly, Dr. Austin testified that she does not intend to offer opinions about any effects of the spill from March 2012 through the present day.  (*Id*. at 138:20-139:3).

The United States attempts to shift the burden when it states that BPXP has not demonstrated that certain businesses have "sprung back" since the incident.  Because Dr. Austin admitted that her analysis does not extend beyond early-2012, she makes no long-term arguments for BPXP to rebut, and the Court should strike any of Dr. Austin's opinions that purport to show long-term effects.

During her deposition, Dr. Austin expressly withdrew her opinion regarding present-day seafood safety after admitting that she had no analysis, no data, and no research to support her claim that concerns about seafood safety continue to exist.  (*Id*. at 138:4-10).[3]  Nevertheless, the United States seeks to refuse to allow Dr. Austin to withdraw this opinion.  (Dec. 2, 2014 E-mail from S. Himmelhoch to P. Bartoszek, attached hereto as Ex. 2).  Dr. Austin is the expert witness and her own admission and withdrawal should govern here, not the arguments of the United States' lawyers, and the Court should strike Dr. Austin's long-term opinions regarding present-day seafood safety consistent with her deposition testimony.

The United States also ignores Dr. Austin's insistence that her study is designed to demonstrate the range of effects of the incident on the Gulf Region, and not the magnitude of any effect.  Dr. Austin admits that her research does not allow one to extrapolate what percentage of

---

[3]   "Q. (BY MS. KARIS) So do you intend to offer to this Court an opinion about what concerns about seafood safety exist today, even though you have no data, no analysis, and no research since March of 2012?
MS. FIDLER: Objection; form.
A. I will withdraw that opinion."

4

the population is experiencing any positive or negative effects of the spill.  (BPXP's Mot., Ex. C, Austin Dep. at 239:24-240:10, 258:15-21).   This renders her opinions regarding short-term effects unreliable and irrelevant under *Daubert*¸ because Dr. Austin does not and cannot know how many individuals fall on the spectrum of effects and where those individuals fall.

**IV.**     **Dr. Austin's Failure to Gather Demographic Information, and the United States' Refusal to Produce the Interview Matrix, Make it Impossible to Analyze Her Work.**

It is axiomatic that a study that purports to determine whether an incident caused harm to individuals should collect information about the pre-incident status of those individuals.  Without knowing if an individual was diagnosed with anxiety prior to April 20, 2010, for example, Dr. Austin cannot tell if an individual's stress was caused by the incident, exacerbated by the incident, or had no relation to the incident at all.  (*See* Ex. 1, Bonanno Dep. at 176-77, 220-21).  Because Dr. Austin did not collect this type of data, the validity of Dr. Austin's opinions can never be tested, and those opinions are inherently unreliable.

The United States' response is silent on why it has not produced the BOEM researchers' completed interview matrix that was supposed to identify interviewees in various sectors and help "maximize validity during the BOEM study."  (BPXP's Mot., Ex. D, 9/26/14 Austin Rpt. at 23).  Information about whether and how the researchers met their goals for reaching a variety of interviewees is critical to understanding the reliability of the study, but the United States refuses to provide this information.  Accordingly, Dr. Austin's opinions must be excluded.

## CONCLUSION

BPXP respectfully requests that the Court enter an order excluding the reports and testimony of Dr. Austin at the upcoming Penalty Phase trial.

Dated: December 22, 2014                    Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
Matthew Regan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Kirkland & Ellis LLP
655 15th Street, NW
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

***Attorneys for BP Exploration & Production Inc.***

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 22nd day of December, 2014.

      /s/ Don K. Haycraft