UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * | MDL NO. 2179 SECTION J |
| This document relates to: No. 10-4536 | * * * * * | HONORABLE CARL J. BARBIER MAGISTRATE JUDGE SHUSHAN |

BPXP'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION TO STRIKE OPINIONS AND TESTIMONY OF CHARLES F. MASON
REGARDING THE ECONOMIC EFFECTS OF THE DEEPWATER
HORIZON OIL SPILL ON REAL ESTATE MARKETS

In his Round 3 report, Dr. Charles Mason included opinions based on a new analysis of real estate and related markets in the Gulf coastal counties of Florida. (BPXP's Mot. to Strike Opinions and Testimony of Charles F. Mason regarding the Economic Effects of the Deepwater Horizon Oil Spill on Real Estate Markets Rec. Doc. 13768 hereinafter "BP Br.", Ex. B, 9/26/14 Mason Rpt. at 14-15) Dr. Mason acknowledged that he had not included these opinions, or the analysis on which they are based, in his Round 1 or 2 reports. (BP Br., Ex. C, Mason Dep. at 168:3-21) He also admitted that BPXP's expert, Dr. Loren Scott, had not analyzed or opined on real estate markets in his reports. (BP Br., Ex. C, Mason Dep. at 168:22-169:1) The Court's Penalty Phase Scheduling Order prohibits new opinions in Round 3 that do not "directly rebut opinions expressed in Round 2." (Order re Amended Penalty Phase Schedule, Rec. Doc. 13428) BPXP moved to strike Dr. Mason's real estate opinions because they violate this order. (BP Br.)

**ARGUMENT**

In its opposition to BPXP's motion, the United States attempts to recast Dr. Mason's real estate opinions as directly responsive to Dr. Loren Scott's Round 2 criticism of Dr. Mason's methodology, in an effort to suggest that they comply with the Court's scheduling order. (US Mem. in Opp'n to BPXP's to Mot. to Strike Opinions and Testimony of Charles F. Mason, Rec. Doc. 13846 [hereinafter "US Br."]) Dr. Mason's own explanation of these opinions does not match this explanation now put forward by the United States: Dr. Mason included his new analysis and opinions on Florida real estate markets in his Round 3 report's discussion about Dr. Scott's conclusions regarding the recovery of tourism and the hotel industry--opinions Dr. Scott disclosed in Round 1. (BP Br., Ex. B, 9/26/14 Mason Rpt. at 10, 14-16). Dr. Mason's description of this new analysis and explanation of why he included it in his Round 3 report makes clear that its purpose was to continue his critique of that Round 1 opinion. Thus, Dr. Mason's real estate opinions do not "directly rebut" Round 2 opinions, and BPXP would be prejudiced if Dr. Mason is permitted to testify about these opinions.

**I.    Dr. Mason's Own Description of His Real Estate Opinions Shows They Rebut a Round 1 Opinion, Not an Opinion Dr. Scott Discloses in Round 2.**

While Dr. Scott critiqued Dr. Mason's methodology in his Round 2 report, Dr. Mason's real estate opinions are, by Dr. Mason's own description, responsive to Dr. Scott's analysis concerning tourism and commercial fishing--opinions Dr. Scott disclosed in his Round 1 report. Introducing the section of his Round 3 report containing his real estate opinions, Dr. Mason wrote that "Scott states that major industries in the Gulf Coast experienced no net negative impacts in many places, and where there were negative effects, recovery took place quickly.[FN31] This statement is based upon the analysis of hotel, tourism, and fisheries data included in Scott's initial report." (BP Br., Ex. B, 9/26/14 Mason Rpt. at 10) Dr. Mason thereafter describes his

2

analysis of real estate and related markets and concludes that "real estate income remained depressed due to the oil spill into 2011 and 2012, contrary to Scott's assertion that any industries harmed by the spill recovered quickly." (Mason 9/26/14 Rpt. at 15)  This "assertion" by Dr. Scott was a Round 1 opinion. (*See* BP. Br., Ex. D, 8/15/14 Scott Rpt. at 4 ("…[I]n geographic areas or industries where there were economic consequences, the economy recovered quickly after the spill, in part as a result of BPXP's post-spill spending and its substantial efforts to mitigate potential negative economic effects."))

The United States has implicitly acknowledged that Dr. Mason's real estate opinions respond to Dr. Scott's Round 1 report.  In its response to this motion, the United States cites to Dr. Scott's Round 1 report when arguing that the reason Dr. Mason conducted his real estate analysis was to respond to Dr. Scott's use of hotel revenue data, fish landings data, and a paper regarding 2010 Gulf Coast employment to support his opinions. (*See* US Br. at 4 *citing* 8/15/14 Scott Rpt. at 4)  Thus, Dr. Mason's real estate opinions do not directly rebut a Round 2 opinion.[1]

## II.  Dr. Mason's Use of the Same Methodology in Round 2 and 3 Does Not Justify a New Opinion.

As the United States concedes, when Dr. Mason introduced his real estate opinions, he attempted to justify the new opinions by pointing to a *method* of analysis he used in Round 2 to analyze hotel revenue. (US Br. at 3)  Dr. Mason begins his description of his real estate analysis by stating that, "[t]he method I applied in my Round 2 Report – comparing changes in a variable of interest in a study area against changes in the same variable in a nearby but unaffected area – can also be applied to real estate markets." (BP Br., Ex. B, 9/26/14 Mason Rpt. at 14)  *First*, this makes clear that Dr. Mason had not applied that method to real estate markets or disclosed any

---

[1] While Dr. Scott reiterates his Round 1 conclusions in his Round 2 report in the course of responding to Dr. Mason's Round 1 report, they are not opinions which are new in Round 2.

3

opinions about harm to real estate markets until his Round 3 report.  In his Round 2 report, Dr. Mason used this methodology to analyze hotel revenue.  (BP Br., Ex. F, 9/12/14 Mason Rpt. at 15-16)  *Second*, using the same analytical *technique* as he used in Round 2 to support opinions about one industry (hotel revenue and tourism) does not cure Dr. Mason's untimely disclosure of entirely new substantive opinions about a different industry (real estate).

Dr. Mason's use of the same analytical *method* is insufficient to skirt the requirements of the Court's scheduling Order.  As Dr. Mason explains, this method he used in Round 2 and 3 is "the usual method economists use" to answer a variety of different questions.  (*Id*. at 15)  The question for the Court is whether the opinion is new, not the method, especially where, as here, the method is such a common technique for economic analysis.

### III.     BPXP Is Not Complaining About Dr. Mason's Use of New Data.

The United States argues that BPXP's motion suggests that the scheduling order prohibits the use of new data in Round 3 reports.  (US Br. at 2-3)  This is not the concern raised by BPXP or the basis for its motion.  Rather, in the course of showing that Dr. Mason's opinion is new and not responsive to any of Dr. Scott's Round 2 opinions, BPXP noted that the data Dr. Mason used to support his new opinion is not data that either expert had used prior to Round 3.  The fact that Dr. Scott had not used the data to opine on real estate and related markets supports BPXP's ultimate point--that Dr. Mason's real estate opinions are not responsive to any Round 2 opinion.

### IV.     BPXP Will Be Prejudiced If Dr. Mason Is Permitted to Testify Regarding His Real Estate Opinions.

Finally, BPXP will be prejudiced if the United States is permitted to offer Dr. Mason's opinions regarding real estate and related markets.  Prohibiting new Round 3 opinions that do not directly rebut Round 2 opinions ensures that any rebuttal of experts' original opinions contained in Round 1 reports is presented in the Round 2 reports.  The requirement prohibits experts from

4

waiting until Round 3 to present new analysis that responds to Round 1 opinions, but this is exactly what Dr. Mason did. As a result, Dr. Scott did not have the opportunity to evaluate and respond to Dr. Mason's opinions about real estate and related markets.

The United States attempts to suggest that certain analysis Dr. Scott presented in his Round 3 report is similar to Dr. Mason's real estate opinions. It is not. Analyses presented in Dr. Scott's Round 3 report directly respond to Dr. Mason's Round 2 report and, rather than being new opinions about new topics or different industries, merely confirm Dr. Scott's original Round 1 opinions concerning recovery of the commercial fishing and tourism industries while using the same data as Dr. Scott used in his Round 1 report. (*See, e.g.,* US Br., Ex. B 9/26/14 Scott 9/26/14 Rpt. at 7-8 ("In response to Mason's rebuttal report, I have updated my analysis to account for the long-term trends in landings for all Gulf species….These results further confirm the conclusions contained in my original report about the absence of systematic continuing impact of the spill on Gulf seafood landings."))

## CONCLUSION

BPXP respectfully requests that the Court strike Dr. Mason's real estate analysis and conclusions from pages 14-16 of Dr. Mason's Round 3 report because these pages contain analysis and opinions that do not directly respond to opinions raised in Round 2. Permitting the United States to offer these opinions on real estate and related markets would violate the Court's scheduling order and unfairly prejudice BPXP because Dr. Scott was unable to evaluate and respond to the opinions in his Round 3 report.

Dated: December 22, 2014         Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
Matthew Regan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Kirkland & Ellis LLP
655 15th Street, NW
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

***Attorneys for BP Exploration & Production Inc.***

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 22nd day of December, 2014.

      /s/ Don K. Haycraft