UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY  THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * | MDL NO. 2179 SECTION J |
| This document relates to: No. 10-4536 | * * * * * | HONORABLE CARL J. BARBIER MAGISTRATE JUDGE SHUSHAN |

**BPXP'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE THE UNITED STATES FROM INTRODUCING EVIDENCE FOR THE PURPOSE OF ESTABLISHING THE LIABILITY OF BP GROUP ENTITIES OTHER THAN BPXP**

The United States fails entirely to respond to BPXP's motion to preclude the United States from introducing evidence (including the testimony of fact and expert witnesses) for the purpose of establishing the liability of BP Group entities other than BPXP, either under the Clean Water Act or a veil-piercing theory.  (BPXP's Mot. *in Limine* to Preclude the United States from Introducing Evidence for the Purpose of Establishing the Liability of BP Group Entities other than BPXP, Rec. Doc. 13812 [hereinafter "BPXP Mot."]).  The United States does not address the specific evidence that BPXP seeks to exclude, focusing instead on evidence that BPXP does not seek to exclude.

**I.     The United States Ignores All Of The Evidence That BPXP Seeks To Exclude.**

The United States seeks to offer at trial Professor Fredric Quivik's opinion that BP American Production Company ("BPAPC")—an entity that the United States has not sued in this litigation—was an "operator" of the Macondo well.   (Ex. A, Quivik Dep. at 55:9-19). "Operator" status is relevant to Clean Water Act liability, which attaches only to an "owner, operator, or person in charge."  (33 U.S.C. 1321(b)(7)(A)); *see also* Order and Reasons as to the

United States', Transocean's, and Anadarko's Cross-Mot. for Partial Summ. J. Regarding Liab. Under CWA and OPA, Rec. Doc. 5809 (discussion of "operator" status").  Professor Quivik's opinion that BPAPC is an operator of the Macondo well is based in part on his understanding of *United States v. Bestfoods*, 524 U.S. 51 (1998).  Specifically, Professor Quivik testified that "the language [in *Bestfoods*] that describes playing a role in managing day-to-day operations," informed his decision as to whether BPAPC is an operator. (Ex. A, Quivik Dep. at 58).

What is the United States' basis for seeking to admit in the Penalty Phase trial Professor Quivik's opinion that BPAPC is an "operator," based in part on Professor Quivik's understanding of the Supreme Court's *Bestfoods* decision?  Does the United States contend that BPAPC's "operator" status under the Clean Water Act or under the Supreme Court's *Bestfoods* decision is somehow relevant to establishing the penalty applicable to BPXP?  How so?  The United States does not answer any of these questions.

BPAPC's alleged status as an "operator" under the Clean Water Act has nothing to do with BPXP's Clean Water Act penalty.  Professor Quivik's opinion that BPAPC is an "operator" in light of the Supreme Court's decision in *Bestfoods* should be excluded, and the United States does not claim otherwise.

The United States is also completely silent about the "veil-piercing" theory that it pursued during expert discovery. As discussed in BPXP's opening brief, the United States questioned BPXP corporate governance expert Professor Robert Daines at length about the circumstances under which it might be appropriate to "pierce the corporate veil." (BPXP Mot. at Ex. C, Daines Dep. at 63:7-64:7; 84:4-102:19.)  How will such questions about "veil piercing" by the United States at the Penalty Phase trial be relevant to BPXP's penalty? The United States is again silent on that question.

Questions about "veil piercing" such as those asked by the United States in discovery are irrelevant to BPXP's Clean Water Act penalty. Such evidence should be excluded, and the United States does not claim otherwise.

## II. The United States Raises Red Herrings Regarding Evidence BPXP Does Not Seek To Exclude.

Instead of focusing on evidence BPXP seeks to exclude, the United States focuses entirely on evidence that BPXP does not seek to exclude. The United States discusses evidence about: (1) the BPXP board's oversight of Gulf of Mexico operations; (2) BPXP's lack of payroll employees; (3) the BP Group's role in the Gulf of Mexico; (4) intercompany financial transactions between BPXP and the BP Group; and (5) dividends paid by BPXP.

BPXP does not seek to exclude this evidence, which is at least arguably relevant to BPXP's liability,[1] but the United States' claims about what this evidence shows are incorrect.

First, the United States points out that BPXP has no payroll employees, but it omits the fact that BPXP pays other BP Group entities for the services of over 2,000 employees who work on behalf of BPXP in the Gulf of Mexico, including pursuant to a Services Agreement between BPXP and BPAPC. (Ex. B, Morrison Dep. at 92). Professor Quivik agreed that there are "*2300 employees of other -- of other entities whose time is billed to BPXP working on behalf of BPXP in the Gulf of Mexico.*" (Ex. A, Quivik Dep. at 132-133) (emphasis added).

Professor Quivik testified that these employees are *also* working on behalf of the Gulf of Mexico business but concedes that over 80 percent of the Gulf of Mexico assets are owned by BPXP. (Ex. A, Quivik Dep. at 133). Professor Quivik testified that the BP Group's peers in the oil industry all have hundreds of legal subsidiaries and less than ten segments, and he added that

---

[1] By contrast, the evidence discussed above ("veil piercing" theories and BPAPC status as an "operator" under the Clean Water Act) is not relevant to BPXP's penalty.

3

he was not aware of any public company in which there was a perfect match between legal subsidiaries and business units. (Ex. A, Quivik Dep. at 167, 169).

Second, the United States incorrectly claims that Professors Quivik and Daines "agree that the BPXP board has not provided oversight of operations in the Gulf of Mexico, especially before the disaster." (United States' Response to BPXP's Mot. *in Limine* to Preclude the United States from Introducing Evidence for the Purpose of Establishing the Liability of BP Group Entities other than BPXP, Rec. Doc. 13893 at 2 [hereinafter "U.S. Mem."])). The United States provides no citation for this statement, and it is untrue. Professor Quivik testified that various activities by the BPXP Board were "appropriate," including declaring dividends, requesting and reviewing financial materials, requesting a capital contribution, hearing presentations on plea agreement compliance and providing feedback, directing that a remediation plan be provided with respect to training compliance, and reviewing various settlement agreements and authorizing their execution.[2] (Ex. A, Quivik Dep. at 110-19). Professor Quivik further stated that he was not aware of a single wholly-owned subsidiary board in the world that is as active as the board of BPXP. (Ex. A, Quivik Dep. at 82-83) ("Q. So are you aware of any board in the world of any wholly-owned subsidiary that is more active than BPXP's board? A. I don't know. I'm not aware of—I haven't investigated that—that question.")

Professor Quivik further testified that it is "not surprising" for the board of a wholly-owned subsidiary—such as BPXP—to be less active than the board of a public company:

---

[2] BPXP's Chairman of the Board, Richard Morrison, testified that his responsibilities as chairman of the BPXP Board included to "to oversee that the processes and the systems and the governance and the—and the resources applied to our Gulf of Mexico operations are adequate, are—are complete, are in place, are—are working." (Ex. B, Morrison Dep. at 27). Regarding this specific statement by BPXP Chairman Richard Morrison, Professor Quivik testified that "I'm not going to testify that [Morrison] was not doing those things." (Ex. A, Quivik Dep. at 143).

4

> Q. You're not opining that there's anything wrong with a wholly-owned subsidiary board being less active than a public company board, correct?
>
> A. That's correct.
>
> Q. Okay. In fact, that's expected that a wholly-owned subsidiary board would be less active than a public company board, in your experience, right?
>
> A. I would say not surprising, yeah.
>
> Q. And why is that not surprising?
>
> A. Because the board of directors—one reason is, I've read the board of directors would not have a reason to be protecting multiple stockholder interests. (Ex. A, Quivik Dep. at 97).

Professor Quivik testified that because of *Deepwater Horizon*-related settlements and agreements that BPXP entered into after the Incident, BPXP's Board had a "number of obligations after the incident that it did not have before the incident."[3] (Ex. A, Quivik Dep. at 112-13).

### III. The United States Has Not Moved For Leave To Amend Its Pleadings

The United States states that it "could move to amend the pleading[s]." (U.S. Mem. at 3). But it has not moved to amend its pleadings, and BPXP would vigorously oppose any such motion.

### CONCLUSION

BPXP respectfully requests that the Court enter an order precluding the United States from introducing evidence at the Penalty Phase trial for the purpose of establishing the liability of any non-BPXP entity, either under the Clean Water Act or a veil-piercing theory.

---

[3] Professor Daines agreed that "[t]he issues that the United States has raised with respect to BPXP's governance do not demonstrate poor governance by BPXP and are not inconsistent with what one would expect in a parent-subsidiary relationship." (Ex. C, 8/15/14 Daines Rpt. at 6).

5

Date: December 29, 2014                             Respectfully submitted,


/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia Karis, P.C.
Matthew Regan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Kirkland & Ellis LLP
655 15th Street, NW
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
***Attorneys for BP Exploration & Production Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of December, 2014.

/s/ Don K. Haycraft
Don K. Haycraft