UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig<br>　"Deepwater Horizon" in the Gulf<br>　of Mexico, on April 20, 2010 | MDL NO. 2179<br><br>SECTION J |
| Applies to: 10-4182, 10-4183, 13-2645,<br>　　　　　　13-2646, 13-2647, 13-2813 | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

**ORDER**

**[Regarding Alabama Damage Cases – Defendants' Motion to Compel ( Rec. doc. 13512)]**

Defendants, BP, Anadarko, MOEX, Halliburton and Transocean ("Defendants"), seek an order compelling Alabama to provide further discovery responses. Rec doc. 13512. Alabama submitted an opposition. Rec. doc. 13593. Defendants submitted a reply. Rec. doc. 13685. Alabama was permitted to file a further memorandum. Rec. doc. 13707. The parties raise the following:

1. An accounting of funds received during the response to the spill.

2. The scope of discoverable information on Alabama revenues.

3. State-owned properties for which Alabama does not claim damages.

4. Physical injury to a proprietary interest.

5. Alabama's response and recovery costs.

6. Sale and use restrictions on properties.

7. Fed. R. Civ. P. 33(d).

**A. Accounting for Funds**.

Interrogatory no. 14 requests:

> [A]n accounting of all funds, payments, grants, contributions or donations that the State has received from BP from 2010 until the present, including all disbursements of tourism, seafood and other block grants, and any other payments

or economic assistance received, relating to the *Deepwater Horizon* Incident and/or the Oil Spill.

Rec. doc. 13512 (Exhibit 3 at 5). BP identified five grants to Alabama in its responses to Alabama's discovery. The parties focus on them.

| | |
|---|---|
| May 2010 Block Grant | $25 million |
| June 2010 Block Grant | $25 million |
| May 2010 Tourism | $15 million |
| March 2011 Tourism | $16 million |
| August 2010 Mental Health | $12 million |
| Total | $93 million |

Rec. doc. 13595 (Exhibit 1 at 36-40).

Defendants contend that: (1) Alabama's use of the grant money is relevant to determine if the money was used to mitigate damages sought in this action; (2) they are not required to file a counterclaim alleging grant moneys were improperly disbursed in order to obtain discovery;[1] (3) the Court overruled Alabama's objection to providing discovery regarding an accounting of funds provided by BP when it ruled on a dispute over search terms;[2] (4) the numbers provided by Alabama in its three responses to interrogatory no. 14 do not add up;[3] (5) Alabama has not accounted for all of the $93 million in the five grants; and (6) the documentation submitted by

---

[1] Defendants' "potential counterclaims" are addressed in Alabama's motion to dismiss. Rec. doc. 13513.

[2] On July 29 and 31, 2014, discovery orders were issued. Rec. docs. 13210 and 13230. When the undersigned ruled on the search terms, it was not presented with all of the arguments now made by the parties in the motions to compel and Alabama's motion to dismiss. The July 29 and 31, 2014 rulings do not resolve defendants' request for an accounting of the BP grant monies.

[3] See Rec. doc. 13640 (Exhibit M at 43-52) for Alabama's response, supplemental response and second supplemental response to Interrogatory no. 14.

Alabama refers to generic items like personnel costs and similar expenditures without supporting detail as to who the personnel were. Rec. doc. 13512 (Memorandum at 3-6).

Alabama responds: (1) it provided a sufficient accounting for the grant monies in its responses to interrogatory no. 14; (2) any attempt by Defendants to argue that alleged improper use of grant monies defeats Alabama's damage claim is barred by sovereign immunity;[4] (3) Defendants waived their right to use at least three of the grants as an offset; (4) the burden on Alabama to provide the degree of detail sought by Defendants on the use of the grant monies outweighs its likely benefit (Fed. R. Civ. P. 26(b)(2)(C)(iii)); and (5) the issues raised by Defendants of particular deficiencies in Alabama's supplemental response to interrogatory no. 14 were resolved with its second supplemental response. Rec. doc. 13593 at 6-9.

Defendants reply: (1) Alabama failed to keep the reasonably detailed records required by the grants; (2) Alabama's second supplemental discovery does not satisfy its discovery obligation; (3) Alabama does not show how the money was used; (4) there are internal inconsistencies within the documentation provided by Alabama; and (5) they are entitled to a comprehensive accounting of how the funds were disbursed and used. Rec. doc. 13685 at 1-3.

1. <u>May 2010 Grant $25 Million</u>.

The issue with respect to each grant is the sufficiency of Alabama's response, as supplemented, to interrogatory no. 14. Its second supplemental response states:

> The State received a $25,000,000 grant from BP on May 10, 2010. The Alabama Emergency Management Agency received and distributed these funds as grants to local governments, commissions, and bureaus in accordance with the entries in AL-ED-000806961 ("Emergency Management – BP Oil Spill, Fund 1400").

Rec. doc. 13593 (Exhibit E at 50). AL-ED-000806961 ("Document 961") reflects the receipt of $25 million on May 12, 2010 and disbursements of $25 million in grants to cities, towns,

---

[4] This is the basis for Alabama's motion to dismiss. Rec. doc. 13513.

commissions and other entities. For example, Document 961 reflects a disbursement of $1,060,000 on May 17, 2010 to the City of Gulf Shores. Alabama states that it has not filed any claims against BP on behalf of these local entities. Rec. doc. 13640 at 4. Defendants can verify this statement through discovery into Alabama's damage claims. Assuming that Alabama's statement is correct, there is no need for Defendants to receive any greater detail than is found on Document 961.

2. June 2010 Grant $25 Million.

    Alabama's second supplemental response states:

> The State received a second $25,000,000 grant from BP on June 11, 2010. These funds were received and distributed by the Alabama Department of Environmental Management (for use on the Katrina Cut and/or Perdido Pass projects) and the Alabama Emergency Management Agency (for additional grants to local governments and other costs/uses). ADEM and EMA distributed these funds in accordance with the entries reflected in AL-ED-000031674 ("Environmental Management - BP Oil Spill, Fund 1403") and AL-ED-000806961 ("Emergency Management – BP Oil Spill, Fund 1400").

Rec. doc. 13593 (Exhibit E at 50).

    a. Emergency Management - $5 Million.

There are two parts to the June 2010 grant for $25 million. One part concerns $5 million. Document 961 reflects the receipt of $5 million on June 11 by ADEM. It contains a schedule of disbursements. Nearly $4.7 million was distributed as grants to cities, towns, commissions, the University of South Alabama and others. As with the May 2010 grant, Alabama states that it has not filed any claims against BP on behalf of these entities. This statement can be verified through discovery. Assuming it is accurate, Alabama is not required to provide additional detail on these payments.

Document 961 reflects disbursements of about $325,000 for personnel expenses (salaries, FICA, retirement, and health insurance), out of pocket expenses (vehicle rentals, travel expenses-

in state, and other charges (including utilities, software supplies, and professional services). These disbursements are shown as expenses of the Alabama Emergency Management Agency ("EMA"). The largest item is $175,939.51 for personnel expenses. When measured against the $5 million, the burden and expense of providing additional detail outweighs its likely benefit.

   b. <u>Environmental Management - $20 Million</u>.

AL-ED-000031674 ("Document 674") reflects expenses for the Katrina Cut and Perdido Pass projects. The affidavit of Steven Jenkins of the Alabama Department of Environmental Damage states that neither project is the subject of a claim by his department for response costs in the Alabama Damages Case. Rec. doc. 13640 (Exhibit O). This statement can be verified. Assuming that it is accurate, Alabama is not required to provide further information on the funds used for the two projects.

2. <u>Tourism Grants for $31 Million</u>.

Alabama's second supplemental response states:

> The State received two tourism grants from BP: (1) a $15,000,000 grant pursuant to an agreement dated May 25, 2010 and (2) a $16,000,000 grant pursuant to an agreement dated March 7, 2011. AL-ED-000031688 ("Tourism - BP Oil Spill Fund 1401") reflects the disbursement of these funds.

Rec. doc. 13593 (Exhibit E at 50). AL-ED-000031688 ("Document 688") is a schedule that reflects receipts totaling a little more than $31 million and disbursements of a like amount. Almost all of the disbursements are grants. For example, the schedule reflects a September 2, 2010 grant to the U.S.S. Alabama Battleship Commission for $200,000.

Alabama states that it is not bringing a claim for tourism promotion. Rec. doc. 13640 at 4. The burden of providing additional detail outweighs the likely benefit to Defendants. They can determine by discovery whether Alabama seeks any additional money for the Battleship

Commission or other recipients of grants from the $31 million. If so, more detail may be warranted.

Alabama is not required to provide any further information regarding the tourism grants.

4. <u>August 2010 Mental Health $12 million</u>.

This is the smallest of the five grants at issue. Alabama contends that it provided a sufficient accounting for the grant money in its response to interrogatory no. 14. It urges that it identified in Exhibit E the expenditures and produced charts that trace them down to the local and/or department level. Exhibit E contains Alabama's responses to interrogatory no. 14 and the documents referred to in those responses. Rec. doc. 13593 (Exhibit E). The second supplemental response states:

> The State received a $12,000,000 mental health grant from BP pursuant to an agreement dated August 27, 2010. AL-ED-000031683 ("Mental Health - BP Oil Spill, Fund 1408") reflects the disbursement of these funds. Included within the disbursements from Fund 1408 are disbursements to the Governor's Office of Faith Based and Community Initiatives, which are reflected in AL-ED-000031680 ("Governor's Office on Faith Based-BP Oil Spill Fund 1411").

Exhibit E at 48 and 51. Alabama refers to two documents attached to Exhibit E: (1) AL-ED-000031683 ("Document 683"); and (2) AL-ED-000031680 ("Document 680").

Document 683 does not reflect the disbursement of $12 million. The schedule reflects receipts in September 2010 of $12,007,943.40. It reflects disbursements beginning on September 23, 2010 and concluding on January 27, 2011. The total of these disbursements is $2,005,244.70 and therefore, there is more than $10 million unaccounted for.

It appears that Document 683 is incomplete because it stopped with disbursements on January 27, 2011. It also appears that there may be some errors in the dates shown on either Document 680 or Document 683.

6

Alabama shall provide schedules with detail similar to Documents 680 and 683 that reflect the disbursement of the $12 million.

Alabama objects to the level of detail sought by Defendants. It contends that the burden on it of producing deeper detail regarding the disbursements outweighs the likely benefit to Defendants. Alabama states that it is not pursuing a claim on behalf of the Department of Mental Health for behavior health and substance abuse issues. Rec. doc. 13640 at 4. Defendants can verify this statement by discovery into Alabama's damage claim. There is no need for Defendants to receive greater detail than is found on Documents 680 and 683.

**B. <u>Revenues</u>**.

The parties conducted a meet-and-confer process in the course of their briefing. The issue began with Defendants' discovery requests for all revenues received by Alabama. It objected to providing anything more than those revenue sources that have a reasonable connection to its claims. Defendants argued that Alabama's response was ambiguous and all of its revenue sources potentially may be relevant to the issues in this litigation. They urged that they were entitled to investigate whether claimed losses in one source of revenue were compensated by gains from a different source. As an example they cited Alabama's claims for lost revenues for a state-owned park in a coastal area and whether the revenue loss at that park was offset by revenue gains at other state-owned parks. Rec. doc. 13512 (Memorandum at 6-8).

Alabama urged: (1) Defendants' request for all revenues exceeded the bounds of what is relevant to the parties' claims or defenses; and (2) the burden and cost of providing the information outweighed the likely benefit of the discovery. It cited extreme difficulties in providing Defendants with all revenue information on its Revenue Integrated Tax System

("RITS"). Rec. doc. 13593 at 1-5. Defendants replied that the RITS issue was moot after the parties agreed to a narrow set of specific revenue streams from RITS. Rec. doc. 13685 at 3-4.

In their reply, Defendants proposed a limitation of the request. They now seek:

> [I]nformation and documents sufficient to show income it [Alabama] receives from regular recurring sources (other than tax revenues and payments directly related to the *Deepwater Horizon* incident) related to its claims regarding the Department of Conservation and Natural Resources, the financial impact/increased cost to Alabama's public education system, and costs incurred by Alabama's Departments of Economic and Community Affairs, Environmental Management, and Labor.

Id. at 5. As examples of responsive information, Defendants cite federal funding for education, state hunting and fishing licenses, and state park admissions and concessions, for the years 2005 through present. Id. Because of the way the motion was briefed, Alabama did not respond to this proposal.

A request focused on recurring revenues is reasonable. Alabama shall produce the information on regular recurring sources of income. If Alabama has a well-founded objection, it shall file a motion for reconsideration with a request for expedited consideration. Prior to filing the motion for reconsideration, it shall conduct a meet-and-confer with Defendants to attempt to resolve its issues with the request as limited to regular recurring sources.

C. **State-owned Properties**.

At issue are interrogatory nos. 5 and 6 and RFP nos. 10, 13 and 19.

Interrogatory no. 5 is concerned with state-owned real property in Baldwin and Mobile counties plus eight surrounding counties for the period since 2000. Defendants seek: (1) any property valuations for each year; and (2) any restrictions on the use or sale of the properties. Rec. doc. 13512 (Exhibit 3 at 2).

8

Alabama objected to the extent the interrogatory sought information on property on which no claim was make. It reported that tax assessor valuations were conducted by the respective counties. Defendants were directed to public websites which could be used with the property parcel exhibit from its initial disclosures to obtain property valuations on the properties with claims. Id. (Exhibit 4 at 14-15). After service of these responses, Alabama reported that it was not producing documents related to state-owned properties not subject to its claims even if the properties were in Mobile and Baldwin counties. Id. (Exhibit 13).

Defendants argue that the properties subject to Alabama's claims for damages cannot be analyzed without consideration of property values and trends in the surrounding area. They urge the need to compare the decrease in value of oiled properties to the change in value of properties that were not oiled.

> If all State-owned properties in Baldwin County or a neighboring county decreased in value, not just those impacted by the oil spill, that would be relevant to show that not all of the damages can be attributed to the spill.

Rec. doc. 13512 (Memorandum at 10).

Alabama contends that a request for information on state-owned properties in ten counties is too broad. The list would exceed 1,000 properties. It argues that: (1) such discovery is not reasonably calculated to lead to the discovery of admissible evidence; (2) the burden and expense of the discovery outweigh its likely benefit (Fed. R. Civ. P. 26(b)(2)(C)(iii)); and (3) Defendants do not demonstrate any similarity between the properties at issue and the state-owned properties that were not oiled. Alabama also refers to the properties which are not at issue as "non-coastal properties." Rec. doc. 13593 at 11.

Defendants and Alabama both rely on Weiss v. Allstate Ins. Co., 512 F.Supp.2d 463 (E.D. La. 2007) (Vance, C.J.). A principal issue was whether plaintiff's home on Treasure Isle

9

in Slidell was destroyed by wind during Hurricane Katrina or by the storm surge. Allstate concluded that flood was the primary cause of the destruction of the home. Allstate insured the Dekemel property which was 100 feet away from plaintiff's property. Allstate concluded it was destroyed by wind. Allstate sought to exclude the admissibility of the Dekemel property. Judge Vance permitted William Dekemel to testify because of the similarity of the two properties. The Dekemel evidence was relevant to whether wind was more likely than not the cause of plaintiff's damage and to Allstate's knowledge as to what happened 100 feet away from plaintiff's property. Evidence of other property was excluded where plaintiff failed to lay a foundation of sufficient similarity. To the extent it had marginal relevance, it was substantially outweighed by the danger of unfair prejudice, jury confusion, considerations of delay and needless presentation of cumulative evidence. Id. at 468-472.

Alabama contends Defendants have not demonstrated similarity as required by Weiss. It urges that the issue turns on the other property's similarity to, and geographic proximity with, the property at issue. It argues that the similarity analysis is performed on a property-by-property basis. Rec. doc. 13593 at 10. While Defendants cite Weiss in support of their request for the discovery (Rec. doc. 13512 [Memorandum at 9]), they contend that Alabama improperly uses Weiss' standard for admissibility as the standard for determining whether the information sought is relevant.

Mobile and Baldwin counties are the two southern most counties in Alabama. Together they include all land in Alabama on the Gulf Coast and Mobile Bay. Baldwin County lies between Florida and Mobile Bay. Mobile County lies between Mississippi and the Bay. North of the Bay the two counties share a common border.

Information on the eight counties to the north of Baldwin County and Mobile County is too remote. To the extent there is any relevance to the information, the burden and expense of the discovery outweigh its likely benefit.

Alabama shall provide the information sought in interrogatory no. 5 for all state-owned land in Baldwin and Mobile counties whether or not the property is included in the claim for damages. At this stage the standard is not admissibility. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Interrogatory no. 6 concerns property tax assessments and appraisals. For the properties on which damages are claimed, Alabama referred Defendants to the tax assessor records for the two counties and an Alabama Appraisal Manual. Rec. doc. 13512 (Memorandum [Exhibit 4 at 16]). Alabama is not required to provide additional information in response to interrogatory no. 6. The additional information required for interrogatory no. 5 will be sufficient.

RFP no. 10 seeks documents relating to the value of state-owned property. RFP no. 13 seeks documents describing the state-owned property. RFP no. 19 seeks documents relating to reports, studies, analyses or assessments of the real estate market in Alabama generally or in the ten counties. Subject to objections similar to the ones made to interrogatory nos. 5 and 6, Alabama agreed to perform a reasonable search for the information sought in RFP nos. 10, 13 and 19 for the state-owned properties for which damages are sought. Alabama shall make a reasonable search for the information sought in these three RFPs for all state-owned property in the two counties.

D. **Proprietary Interest**.

      Defendants' interrogatory no. 7 states:

For each piece or parcel of Property that you claim has suffered or will suffer a "physical injury to a proprietary interest" as enunciated in *Robins Dry Dock*, 275 U.S. 303 (1927) or its progeny, as a result of the *Deepwater Horizon* Incident and/or Oil Spill, provide a detailed description of:

(i)  The nature of your "proprietary interest" (*e.g.*, ownership), and
(ii) How your alleged damages were or will be realized (*e.g.*, the property was sold at a loss, money was spent to repair the Property, etc.).

Rec. doc. 13512(Exhibit 4 at 16). Alabama objected that the interrogatory called for: (1) a legal opinion; and (2) expert analysis on its damage calculations. Subject to the objections, it stated that: (1) it holds legal title to each property identified in its amended initial disclosures; and (2) it owns all lands beneath navigable waters within its jurisdiction as well as all tidally-influenced coastal lands up to the mean high tide line within its jurisdiction. Id. (Memorandum at 16-18). It supplied a non-exhaustive list of additional proprietary interests in coastal-area lands for which it "may or may not possess legal title" including, for example, it "is legally obligated to insure that beach sand, dunes, and vegetation are not disturbed and to protect these locations from adverse use." Id. (Memorandum at 17).

      Alabama served amended initial disclosures (Rec. doc. 13707 [Exhibit C]) and supplemental responses to interrogatory no. 7 (Id. [Exhibit A at 34-35]). It sought damages for injury to properties identified on pages AL-ED-000001-9. It excluded from its claim properties identified on AL-ED-000008 as owned by the University of Alabama. It stated it held legal title to these properties for which damages were sought. It repeated the statements concerning the non-exhaustive list of its proprietary interests.

      The undersigned searched in vain among the filings for an example of the data produced to Defendants in AL-ED-000001-9 to evaluate its sufficiency. It is assumed that AL-ED-

12

000001-9 provide sufficient information to identify the properties in which Alabama has a proprietary interest. If the Defendants dispute this, they may file a supplemental motion to compel with a request for expedited consideration and attach AL-ED-000001-9 or a representative sample. A meet-and-confer will not be required before filing this motion.

Defendants narrow the second part of interrogatory no. 7 to categorizing the types of damages for the identified properties. Rec. doc. 13512 (Memorandum at 12). They provide "repair costs" and "property sold a loss" as examples. Id. In the amended initial disclosures, Alabama states that it will rely on expert testimony to establish the damages to the property and identifies four methodologies that the experts may employ, for example the first is "replacement cost." Rec. doc. 13707 (Exhibit C at 16).

Alabama contends that it provided sufficient information on the damages for the parties to proceed with fact depositions. It cites its response to interrogatory no. 1, where it reports that its properties were heavily oiled during the summer months of 2010 and the properties continue to be oiled. Rec. doc. 13707 (Exhibit A at 7-8). Its response to interrogatory no. 2 is similar, in that it refers to oiling data and information, and oil removal activities. Id. at 15-16.[5]

Defendants contend that Alabama's response was insufficient. They urge that they do not know which properties Alabama alleges were or will be damaged and what damages are claimed. They argue that they seek only an identification of the properties at issue and how such properties were damaged. Rec. doc. 13512 (Memorandum at 11-12). Alabama did not supplement its response to interrogatory no. 7 in either its first or second supplemental responses. Rec. doc. 13685 (Exhibits 5 and 6).

---

[5] Alabama also cites its responses to interrogatory no. 9 (Rec. doc. 13707 [Exhibit A at 36-37]) and interrogatory nos. 17 and 18 (Id.[Exhibit B at 3-6]). These also refer to oiling. For example, the response to interrogatory no. 17 refers to "oiling events originating from the MC252 oil well." Id.

Alabama contends that Defendants seek premature expert discovery of the method of valuing its property damage claims. Rec. doc. 13707 at 2. Defendants argue that they do not seek the amount of the damages, the method used to calculate the damages, or an expert's computation of the damages. Rec. doc. 13512 (Memorandum at 12) and Rec. doc. 13685 (Exhibit 9 at 7).

Alabama will be required to identify the category or categories of damages for each of the properties listed on AL-ED-000001-9. For example, one category may be the cost of responding to future oiling events. See Rec. doc. 13707 (Exhibit B at 4). This is not premature expert discovery.

E. **State Response and Recovery Costs**.

Defendants contend that: (1) in its initial disclosures, Alabama identified "Response and Recovery Costs" incurred by Alabama departments as a category of damages; (2) Defendants asked for additional detail on these costs in Interrogatory nos. 1, 2, 10 and 12;[6] and (3) Alabama's responses were insufficient. Rec. docs. 13512 (Memorandum at 12) and Rec. doc. 13685 at 7. Alabama reports that it will supplement its response to these interrogatories after it completes the re-production of its documents. Rec. doc. 13707 at 3.

After Alabama completes its re-production, it shall supplement its response to interrogatory nos. 1, 2, 10 and 12. It shall be limited to response and recovery costs referred to in Alabama's initial disclosures. It is not required to disclose any expert calculations or methodologies until the service of expert reports.

---

[6] For example, interrogatory no. 12 seeks the identification and a detailed description of "the State response and recovery efforts related to the *Deepwater Horizon* Incident and/or Oil Spill for which the State contends it incurred costs and was not reimbursed, including the cost of such efforts." Rec. doc. 13512 (Exhibit 3 at 4).

F.  **Sale and Use Restrictions on Properties**.

Interrogatory no. 5 seeks property valuations and restrictions on the use or sale of each parcel of state-owned real property in ten counties including Baldwin and Mobile counties. Rec. doc. 13512 (Exhibit 3 at 2). The parties narrowed the interrogatory to restrictions on the use or sale of state-owned properties for which Alabama claims damages. Rec. docs. 13685 at 8 and 13707 at 3.

After Alabama completes its re-production, it shall provide Defendants with any restrictions on the use or sale of state-owned properties for which Alabama claims damages from 2000 through the present. Alabama is not required to disclose any expert calculations or methodologies until the service of expert reports.

G.  **Fed. R. Civ. P. 33(d)**.

Fed. R. Civ. P. 33(d) provides an option to produce business records in response to an interrogatory. If this option is exercised, the records must be specified in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party. Id. Defendants contend that Alabama agreed this will be done after new Bates numbers are generated through Alabama's re-production. Alabama contends it is required to comply with the Federal Rules of Civil Procedure and there is no need to enter an order addressing Rule 33(d).

If Alabama's re-production does not comply with the Federal Rules relating to discovery, Defendants shall seek relief from the Court after completion of the meet-and-confer process.

H.  **Schedule**.

The parties shall meet-and-confer to reach agreement on a schedule for Alabama's compliance with this order. If they are unable to agree, they shall report to the Court.

IT IS ORDERED that Defendants' motion to compel (Rec. doc. 13512) is GRANTED in PART and DENIED in PART as provided herein.

The deadline for an appeal of this order is January 16, 2015.

New Orleans, Louisiana, this 31st day of December, 2014.

                                        **SALLY SHUSHAN**
                                        **United States Magistrate Judge**