

**U.S. Department of Justice**
Environment and Natural Resources Division
Environmental Enforcement Section

90-5-1-1-10026

*Steven O'Rourke*                                                                              *Telephone (202) 514-2779*
*U.S. Mail: P.O. Box 7611, Washington, DC 20044-7611*                   *Facsimile (202) 514-2583*
*Overnight Mail: 601 D Street N.W., Washington, DC, 20004*
*E-mail: steve.o'rourke@usdoj.gov*

January 5, 2015

<u>Via E-Mail</u>
Honorable Sally Shushan
United States Magistrate Judge
Eastern District of Louisiana

   Re:  *US v. BP & APC*, 10-4536 Penalty Phase: Prior Violations Evidence

Your Honor:

  This letter responds to BPXP's December 24, 2014 letter seeking to limit evidence regarding the BP Group's history of prior criminal environmental violations. BPXP seeks to exclude BP's own reports and statements regarding the prior violations. These reports and statements were considered by Courts, at BP's request, when accepting the relevant plea agreements in this case, including whether the sentence imposed reflected the seriousness of the offence. Despite BP having sought consideration of these reports as part of the factual basis for acceptance its prior plea agreements, BPXP now seeks to preclude the Court from considering them. Neither the Court's Order (Rec. Doc. 13867) nor the rules of evidence support BPXP's request. Instead, the Court's Order provides for the admission of these documents relevant to the plea agreements.

  **First**, contrary to BP's claims, the plain language of the Court's Order allows for admission of "the factual basis and guilty plea for each prior incident." Had the Court intended to limit evidence regarding the prior incidents exclusively to the four guilty pleas -- and whatever factual recitations happen to be included within those pleas -- then the phrase "the factual basis and" would be surplus.

  **Second**, the pleas were negotiated statements presented to courts, but were not the only documents presented to the criminal tribunal when approval of the please was sought. As outlined below the United States seeks to admit six documents which form the factual basis for the plea agreements, and the Courts' acceptance of those agreements – the judicial act essential to their existence. In each of the relevant plea agreements the government and BP agreed to specific sentences requiring the Courts acceptance under Federal Rule of Criminal Procedure 11. *At BP's request,* courts considered as part of the factual basis for accepting guilty pleas by BP companies both investigation reports and BP's statements regarding the prior violations. For example, in its sentencing memorandum seeking acceptance of the criminal plea at Texas City, BP touted (just as it has in this case) its investigations shared with the government arguing:

> BP Products immediately accepted responsibility for the accident and *committed itself to discovering what went wrong at the refinery and what improvements needed to be made* to ensure that the tragedy of March 23, 2005, never happens again . . . BP Products' full acceptance of responsibility, *its massive efforts to improve process safety, and its cooperation with federal agencies are mitigating factors that this Court should consider*.

Thus, BP asserted that these reports were directly relevant to acceptance of its criminal plea.[1]

Further, at Texas City both BP and the government asked the Court to rely on these investigation reports in accepting the plea, jointly requesting that no presentence report be required (and the Court agreed) because of the numerous investigation reports that had been prepared. The government, explained:

> [W]e filed a joint motion to waive PSR. And this accident is probably the most investigated accident in the history of accidents. And our position is simply we don't think it would be helpful to the Court to have a PSR done. I mean, there's been a CSB report, there's been a Bonse report. In our joint motion to waive the PSR, we've attached a lot of those reports. I mean, there's thousands of pages of material out there that detail all the intricacies of the accident and the investigation. So, a probation report would simply be rehashing all that material that's already been provided to the Court."[2]

The Court, in approving the agreement, included and relied upon [such] these reports as part of its acceptance of the plea.

> The record includes lengthy and detailed reports about BP Products's acts and omissions, criminal and otherwise, far beyond what a probation office could accomplish or supplement. There are lengthy and detailed reports about the requirements imposed since the explosion to address BP Products's acts and omissions, including reports provided by experts retained by the victims in their civil cases. . . *All these reports and submissions*

---

[1] Exhibit 1, BP Products North America Inc.'s Sentencing Memorandum, Case 4:07-cr-00434, Document 12, pg. 6 [emphasis added]. BP explicitly referenced its investigations "**Immediate Investigation and Cooperation:** BP Products conducted an immediate, transparent investigation of the accident. Within three days of the explosion, BP Products had convened a team to conduct this internal investigation. From the outset, BP Products chose to conduct its investigation fully outside of privilege. The work-product created by the investigation-including verbatim transcriptions of all interviews-was shared with OSHA and the Chemical Safety and Hazard Investigation Board ("CSB"). The company's internal investigation report was also made available to the public through an Internet posting. " BP Products North America Inc.'s Sentencing Memorandum, Case 4:07-cr-00434, Document 12, pg. 7-8.

[2] Exhibit 2, 4:07-cr-00434, Transcript Of Status Conference Proceedings Before The Honorable Lee H. Rosenthal United States District Judge 12/05/07, 7-8 of 45; see also Joint Motion of the United States and Defendant BP Products North America Inc. for Order Waiving Presentence Investigation, Case 4:07-cr-00434, Document 8, pg 3. The Bonse report referenced is BP's Management Accountability Team Report.

> *have provided this court with an exhaustive and detailed account of BP Products's conduct and its consequences.*" [3]

The Court therefore accepted the joint request from BP and the government to consider the investigation reports in evaluating and accepting the plea agreement.

At Prudhoe Bay, BP also asked the Court to consider its investigations in the course of evaluating the plea. For example, at the hearing seeking acceptance of the plea representatives from BP argued:

> We have commissioned internal and external investigations of the technical and management system issues that may have contributed to this leak -- these leaks, and are working in cooperation with state and federal regulators to take actions to close any gaps discovered.[4]

Furthermore, in accepting the plea, the Court made clear it was considering BP's statements and promises to change, including specifically BP America's congressional testimony regarding the incident:

> So I'm going to accept the plea agreement and adopt the plea agreement, as well as the sentence imposed. Let me say this. This was a serious crime when you consider all the factors and how easily it could have been avoided. . . And I think we have to put particular emphasis on the need to give high priority to maintenance and maybe a little less priority to profits because while profits are obviously a part of every business, in this particular case the need to protect the environment, I think is -- should be our ultimate priority. *And I think British Petroleum understands that, or at least that's indicated in the pleadings that I've received because it indi- -- it seems to me, based on what I've seen, and I'm aware of testimony that's taken place before Congress, that British Petroleum has heeded these warnings and it has accepted responsibility for its negligence, has admitted its negligence and accepted responsibility for it. . . . And it also appears that British Petroleum has taken steps to remediate the losses and to help to ensure that they won't occur in the future*, and I think that's important because we just don't want this to happen again. I appreciate the fact, and I think we all do, that there was so much cooperation with respect to the investigation . . . I think, more emphasis on safety and security and maintenance, a little less emphasis on profits, and certainly priority to maintaining the environment.[5]

Plea Agreements are subject to approval by the Court under Federal Rule of Criminal Procedure 11(c)(5) which allows the trial court broad discretion to reject a plea agreement if the sentence is

---

[3] Exhibit 4, U.S. v. BP Products North America Inc., 610 F.Supp.2d 655, at 724-25, see also 664, 666 (2009).  Multiple reports including BP's internal reports and the Baker report were referenced by the Court.
[4] Exhibit 5, Partial Transcript of Proceedings, 3:07-cr-00125, November 29, 2007, pg. 21-22.  The plea agreement at Prudhoe Bay itself includes reference to BP's cooperation by producing documents as part of the investigation. Plea at 13.
[5] Exhibit 5, Partial Transcript of Proceedings, 3:07-cr-00125, November 29, 2007, pg. 23-25.

3

one the "judge deems inappropriate" or "too light." See Exhibit 5, United States v. BP Products North America Inc., 610 F. Supp.2d 655, 774 (S.D TX 2009).  BP sought in each of these cases approval of the plea agreements, including the agreed sentence, based on its investigations and promises to change.  Furthermore, it is quite clear that the reports and statements BPXP seeks to exclude were indeed considered as part of whether these plea agreements would take effect.  Thus they are clearly part of the factual basis supporting each plea.

Only six documents compromise the list of exhibits to which the United States seeks admission in addition to the plea agreements. This includes the BP's Congressional testimony referenced by the Court above:

1) The 2006 Prudhoe Bay Shutdown: Will Recent Regulatory Changes and BP. Management Reforms Prevent Future Failures? Hearing before the Subcommittee on Oversight and Investigations, May 16, 2007 (Serial 110-46). TREX 233780. Exhibit 6.
2) BP Pipeline Failure - Hearing Before the Committee on Energy and Natural Resources United State Senate, September 12, 2006. TREX 230137. Exhibit 7.

The BP Report regarding the Prudhoe Bay Violation.

3) 2006 BPXA GPB OTL Incidents BP America Inc. Final Report March 2007 Booz Allen Hamilton Management Systems Review, 3/1/2007. TREX 277. Exhibit 8.

The following are referenced BP reports regarding the Texas City Violation:

4) BP's Management Accountability Team Report (Bonse Report). TREX-006280. Exhibit 9.
5) The Report of the BP. U.S. Refineries Independent Safety Review Panel (Baker Panel), January 2007. TREX-002430. Exhibit 10.
6) Fatal Accident Investigation Report - Isomerization Unit Explosion Final Report (Mogford Report). TREX 6262. Exhibit 11.

**Third**, BPXP claims, incorrectly, that the Court's Order expressly precludes such evidence. The Court's Order explains that "further presentation of process safety evidence in the Penalty Phase would be cumulative and would require the Court to re-evaluate evidence on which a final ruling has been rendered." Doc. 13867 at pg 6. The Court excluded Admiral Cantrell' testimony on this basis but excludes no other evidence. No evidence regarding prior violations has been admitted in prior phases of this litigation, and therefore cannot be argued to be cumulative. The Court explicitly provided for allowance of the factual basis supporting acceptance of each plea, evidence which has never been admitted in any prior phase of trial here.

**Fourth**, BPXP provides no legal basis BP's own statements and admissions regarding the prior violations would not be admissible in the penalty phase. Instead, BPXP argues that if the government is allowed to admit BP's statements and admissions it should be allowed to introduce its own rebuttal evidence of BP's "extensive process safety improvements and follow-up." It is this evidence that BPXP argues will be a "further presentation of process safety

4

evidence in the Penalty Phase [that] would be cumulative." Letter at pg. 2. This argument does not make sense. BPXP clearly does not need to move into evidence that which is already in evidence. While evidence regarding prior violations was specifically excluded from Phase I, the Court did not exclude evidence regarding the adequacy of the process safety system in place. Doc. 5634 at pg 5-6. Therefore, BPXP suffers no prejudice from this evidence being admitted into evidence as it has already been allowed to put into evidence the measures taken after each incident- they simply were not required to explain these measures were taken because of prior violations. Furthermore, BPXP seeks to admit evidence not regarding the prior violations or the factual basis for those violations, but rather actions taken by BP after these violations, evidence not included within the Court's Order. As BPXP explains any evidence it would seek to admit is cumulative, it is unnecessary, and only the handful of documents sought by the United States need be admitted.

**Finally**, BPXP argues that allowing into evidence its own reports and statements should be precluded without explaining how any of the evidence contained in those reports and statements would result in a "further presentation of process safety evidence in the Penalty Phase [that] would be cumulative and would require the Court to re-evaluate evidence on which a final ruling has been rendered."[6] BP asked Courts, in deciding whether its pleas were just resolutions and should be accepted, to consider the very investigation reports it now seeks to preclude the Court from considering. As these reports do in fact make up the factual basis for the prior violations, they should be admitted.

                                                Respectfully submitted,

                                                /s/ Steve O'Rourke
                                                Steven O'Rourke

---

[6] BPXP argues that allowing such evidence would allow the United States to simply recreate Admiral Cantrell's report. This argument is curious given BPXP's argument that Admiral Cantrell's report was reopening Phase I as it focused on the Deepwater Horizon, not the prior violations.