# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig | MDL NO. 2179 |
| "Deepwater Horizon" in the Gulf | |
| of Mexico, on April 20, 2010 | SECTION J |
| | |
| Applies to: 10-4182, 10-4183, 13-2645, | JUDGE BARBIER |
| 13-2646, 13-2647, 13-2813 | MAGISTRATE JUDGE SHUSHAN |

## ORDER

**[Regarding Alabama Damage Cases – Alabama Motion to Dismiss ( Rec. doc. 13513)]**

Before the Court is the motion of the State of Alabama to dismiss Defendants' set-off claims, or in the alternative, motion to strike set-off affirmative defenses.  Rec. doc. 13513.

## BACKGROUND

The Deepwater Horizon oil spill began on April 20, 2010.  The well was declared sealed on September 19, 2010.  In August 2010, BPXP established the Gulf Coast Claims Facility. BPXP reports that between April 20, 2010 and February 28, 2014 it paid:  (1) approximately $1.8 billion to individuals and businesses in Alabama through various claims processes; and (2) approximately $115 million in payments to Alabama or its agencies.  It reports spending more than $14 billion on spill response and cleanup activities, including block grants to state and local governments.  The grants to Alabama included:  (1) May 2010 - $25 million block grant; (2) June 2010 - $25 million for implementation of its Area Contingency Plan; (3) May 2010 - $15 million for tourism promotion; (4) March 2011 - $16 million for tourism promotion; (5) August 2010 - $12 million to the Department of Mental Health; and (6) August 2010 - $7 million to the Alabama Gulf Coast Convention and Visitor's Bureau for tourism promotion.[1]

---

[1]  BPXP's first supplemental response to Alabama's interrogatory no. 13.  Rec. doc. 13511 (Exhibit A) and Rec. doc. 13595 (Exhibit 1 at 36-40).  BPXP states that the first five grants were directly to the State of Alabama.  Rec. doc. 13616 at 2.  Alabama contends that the sixth grant of $7 million to Alabama Gulf Coast Convention and

In August 2010, Alabama filed a complaint against BPXP for damages to it based on state law claims of negligence, gross negligence, trespass and public and private nuisance. Claims were also presented under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2702(b) (10-4182).  A similar complaint was filed against Transocean, Halliburton, Anadarko and others (10-4183).  An amended complaint against all defendants was filed on April 7, 2011.  Rec. doc. 1887.

BPXP and other defendants filed answers to the amended complaint on December 14, 2011.  Rec. doc. 4905.  BPXP raised affirmative defenses.  Its thirteenth defense states:

> To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities.

Id. at 202.  The twenty-fourth defense states:

> To the extent the BP Parties are found liable to Plaintiff for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by any prior payment to and/or release of liability from Plaintiff who received funds through the BP claims process and/or the GCCF. Furthermore, any settled claims accompanied by releases of rights against the BP Parties may no longer be maintained.

Id. at 204.  Other defendants raise similar defenses.  See HESI's second affirmative defense. Rec. doc. 4910 at 43.

On April 19, 2013, Alabama filed complaints under OPA and state law against Anadarko and Moex (13-2645), Transocean (13-2646), and Halliburton (13-2647).  The complaints sought environmental and economic damages.  An amended complaint was filed against BPXP (13-2813).

---

Visitor's Bureau (now Gulf Shores and Orange Beach Tourism) is to a third party and not the State of Alabama. Rec. doc. 13513 (Memorandum at 13).

On July 16, 2014, a scheduling order was issued for the preparation of the Alabama damage case against BPXP, Halliburton, MOEX and Transocean.  Rec. doc. 13149.[2]

On October 17, 2014, Alabama filed its motion to dismiss set-off claims or in the alternative, motion to strike set-off affirmative defenses.  The motion was briefed.  Rec. docs. 13513, 13616 and 13640.  On October 17, 2014, Alabama and Defendants filed motions to compel which raise issues related to Alabama's motions to dismiss.  Rec. docs. 13511 and 13512.

## SUMMARY OF ARGUMENTS OF THE PARTIES

Alabama reports that Defendants used the terms "offset" and "set-off" for three distinct claims or defenses:  (1) mitigation evidence; (2) counterclaim; and (3) credit.  It urges that the Court lacks subject matter jurisdiction over the counterclaim[3] and credit claims or defenses because Alabama did not waive its sovereign immunity.  Rec. doc. 13513 (Memorandum at 1).

BPXP argues that because discovery will have to proceed on these claims or defenses regardless of how Alabama's motion to dismiss is resolved, the motion is premature.  It urges that sovereign immunity does not bar BPXP's potential defenses and claims which arise out of the same transaction or occurrence.

Alabama's motion seeks:  (1) an order requiring BPXP to provide the facts supporting its alleged counterclaims and their value; and (2) dismissal of BPXP's claims to which Alabama is immune.  Rec. doc. 13513 (Memorandum at 2).  The first element of Alabama's relief concerns discovery.  BPXP's discovery responses are not before the Court on Alabama's motion to

---

[2]  The parties were required to exchange search terms and Rule 30(b)(6) topics.  Id. at 3.  They were unable to agree on all search terms and topics.  On July 29 and 31, 2014, Magistrate Judge Shushan ruled on discovery issues.  Rec. docs. 13210 and 13230.  Alabama was ordered to respond to discovery regarding the grants.  Magistrate Judge Shushan was not presented with all the arguments now made by the parties in Alabama's motion to dismiss and the parties' motions to compel.  The July 29 and 31, 2014 rulings did not resolve the issues presented in those motions.

[3]  Alabama asserts that BP has conducted discovery for a potential counterclaim alleging breach of grant agreements by Alabama, its local governments or other entities.  Rec. doc. 13513 (Memorandum at 4 and 6-7).

dismiss and/or strike.  The discovery issues are addressed in the parties' motions to compel. Rec. docs. 13511 and 13512.

Halliburton contends that it seeks to ensure that Alabama receives only one satisfaction of its damages, and that any compensation it received is accounted for and credited against any judgment for those same damages.  It contends that its affirmative defense is not a claim for breach of contract.  Rec. doc. 13620 at 2.

Alabama narrows the issue in its reply.  It limits the question to whether there is sovereign immunity as to a defendant's claim that Alabama violated the terms of the first five grants described above.  Rec. doc. 13640 at 1.

As to the factual circumstances of the grants, Alabama contends that BPXP grant monies were not spent by Alabama to alleviate costs and losses that are claims in this action.  Rec. doc. 13640 at 4.  For three of the five grants, the State of Alabama or the departments receiving them, agreed not to file a claim for the losses and costs that were the subject of the grants.[4]  It states it is not bringing a claim for lost tourism promotion or behavioral health and substance abuse issues which were the object of the three grants.  Id. at 4.

Alabama reports that:  (1) the May 2010 grant was to be used to pay or cover costs related to the spill; (2) the entire amount was distributed to local governments or councils; and (3) it has not filed claims in this action against BPXP on behalf of these local entities.  Id. at 4.

---

[4]  The grants for May 2010 ($25 million), June 2010 ($25 million) and May 2010 ($15 million) contain similar language:

> BP agrees that it will not seek to apply the Payment, or any portion thereof, as an offset against any Damages allowed under . . . [OPA] and any other applicable law.  These funds are provided in addition to and irrespective of BP's obligations under the OPA of 1990 or any other applicable state or federal law.  The State agrees that it shall not seek payment from the OPA or any similar federal fund for the same costs paid from the $25 million Payment.

Rec. doc. 13616 (Exhibit 1 at 1).

Similarly it reports that:  (1) the June 2010 grant was to be used for the construction of the Katrina Cut and Perdido Pass projects; (2) the money was used for that purpose with the remainder given to local governments and State departments; (3) it has not filed a claim for those projects; and (4) costs of departments related to the spill which were covered by the remainder of the June 2010 grant are not the subject of claims by them.  Id. at 5.

## ANALYSIS

Texas v. Caremark, Inc., 584 F.3d 655 (5th Cir. 2009), is the primary authority relied upon by Alabama in its motion to dismiss.  Rec. doc. 13513.  In Caremark, the relator filed a *qui tam* action alleging violations by Caremark, Inc. of the False Claims Act.  The U.S. and several States filed notices of intervention.  Caremark's answer included the affirmative defense that it was entitled to a set-off and/or recoupment of all amounts overpaid to the plaintiffs resulting from Caremark's miscalculations regarding the amounts due the States in their Medicaid reimbursements.  The States argued that the affirmative defense was actually a counterclaim that should be dismissed on the grounds of sovereign immunity.

The Fifth Circuit found that the sovereign immunity issue turned on the relationship between the affirmative defense and the claims asserted by the States.  The States argued that the affirmative defense was a permissive counterclaim, so they could assert sovereign immunity as a defense to the claims.  The Fifth Circuit stated:

> When a state initiates a lawsuit, it waives its sovereign immunity to the extent required for the lawsuit's complete determination.  The state waives its sovereign immunity only as to compulsory counterclaims, however; that is, those arising out of the same transaction or occurrence which is the subject matter of the government's suit.  Sovereign immunity is not waived as to permissive counter-claims, which do not meet the same transaction or occurrence test nor to counter-claims of a different form or nature than that sought by it as plaintiff nor to counter-claims exceeding in amount that sought by it as plaintiff.

584 F.3d at 659 (Citations, quotation marks and brackets omitted).  The Fifth Circuit remanded the matter because resolution of whether the affirmative defense was a compulsory counterclaim or a permissive counterclaim required factual examination of the transactions that formed the basis of the underlying complaint and Caremark's counterclaims.

> BPXP repeatedly describes any disputes concerning the grants as potential claims.

> BPXP's defenses and potential claims relating to the grants arise out of the same facts as Alabama's claims for economic loss and removal costs and thus Alabama has waived sovereign immunity by bringing its suit.

Rec. doc. 13616 at 1 (emphasis added), and at 7-12, 14 and 15.  BPXP states that it "has not yet asserted any claims against Alabama."  Id. at 1.  It contends that it will not know whether it has a claim against Alabama concerning the grants until it sees how the money was spent.  Id. at 4.  "[W]hether BP will bring any counterclaims . . . will depend on the discovery it obtains from Alabama."  Id. at 6.  BP argues that because discovery on the expenditure of grant money will proceed regardless of how Alabama's motion to dismiss is resolved, the motion is premature.  Id.

Alabama responds that it filed the motion to dismiss to protect itself from discovery on potential claims that are barred by sovereign immunity.  Rec. doc. 13513 (Memorandum at 7).  It acknowledges that BP has not pled any counterclaims.[5]  "BP admits that [it] has not filed a counterclaim against the State for violating the terms of its grants, and BP admits that it does not know if any such counterclaims are mature."  Rec. doc. 13640 at 6.  Even though there is no counterclaim, Alabama argues that Caremark requires a ruling on its motion to dismiss because it invokes sovereign immunity.  Id.[6]

---

[5]  "Defendants fail to establish that BP's unpleaded counterclaims are compulsory recoupment claims that survive a sovereign immunity challenge."  Rec. doc. 13640 at 2 (emphasis added).

[6]  In Caremark, the Fifth Circuit stated, "[b]ecause sovereign immunity protects states from suit, orders denying dismissal on the basis of sovereign immunity are immediately appealable regardless of the district court's reasons for its decision."  584 F.3d at 658 (citation omitted).

Because there is no currently asserted counterclaim, the motion to dismiss must be denied without prejudice.  Alabama's motion presents a discovery dispute which must be resolved on the parties' motions to compel.

## **CONCLUSION**

IT IS ORDERED that Alabama's motion to dismiss set-off claims or in the alternative motion to strike set-off affirmative defenses (Rec. doc. 13513) is DENIED WITHOUT PREJUDICE.

New Orleans, Louisiana, this day of 6th day of January, 2015.

**CARL J. BARBIER**
**United States District Judge**