EXHIBIT 2

**bp**

**Mark Holstein**
Managing Attorney
BP Legal – Litigation

BP America Inc.
P.O.Box 3092
Houston, Texas 77253

501 WestLake Park Blvd.
Houston, Texas 77079-2607
Mail Code 17.130

Direct: 281-366-8895
Fax:    281-366-3491
Mark.Holstein@bp.com

January 16, 2015

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
 for the Eastern District of Louisiana
500 Poydras Street, Room B345
New Orleans, LA  70130

Re:    <u>In re: Deepwater Horizon,</u> MDL 10-2179

Dear Judge Shushan:

BP submits this letter in response to Jim Roy's January 9, 2015 e-mail to the Court and BP announcing Class Counsel's intent to submit a proposed Supplemental Information Program "to the Court for approval on an expedited basis." BP cannot consent and the proposed program should not be approved by the Court. If the Court does not reject the proposed Supplemental Information Program ("SIP") outright, BP requests the Court set a briefing schedule, so that the Court has the benefit of the parties' full views before a decision on approval. In summary, the proposed SIP violates the Fifth Circuit's instructions, violates the Settlement Agreement's requirement that the SIP be "consistent with the goals of the Economic Class Action Settlement Notice Program," violates Rule 23, and harms members of the Class by threatening to deluge the Claims Administrator's Office with meritless claims.

I.    **The Proposed SIP Violates the Fifth Circuit's Instructions.**

The Fifth Circuit held that "the Settlement Agreement at least requires a formal assertion of the causal nexus," and that "the class definition and Settlement Agreement require that membership in the class be based on harm from BP's conduct." *In re Deepwater Horizon*, 744 F.3d 370, 377 (5th Cir.), *reh'g denied,* 753 F.3d 509 (5th Cir. 2014), *cert. denied*, No. 13A1177, 2014 WL 3841261 (Dec. 8, 2014). The Fifth Circuit made clear that this attestation is not a mere formality. In addition to emphasizing that the attestation is "'under penalty of perjury,'" the court of appeals explained that the claimant "further attests 'I understand that false statements or claims made in connection with this Claim Form may result in fines, imprisonment, and/or any other remedy available by law . . . and that suspicious claims will be forwarded . . . for possible investigation and prosecution.'" *Id.* at 376 (quoting from the BEL

claim form).  Moreover, the Fifth Circuit instructed that concerns about "suspicious" claims "are to be addressed in the usual course of processing individual claims," *id*. at 378, and that "[s]uspicious forms would be subject to investigation," *id*. at 377.

The proposed SIP makes no mention whatsoever of the required under-oath attestation. Instead, it skips over this important requirement, stating incorrectly that "If you meet the transparent, objective financial-data driven formulas as approved by the Courts, you qualify for an award."  It then emphasizes in bold and underline:  "Remember, if you meet the formula you qualify."  But, no claim is valid without an accompanying attestation.  In fact, as the Fifth Circuit emphasized, a claim that is not accompanied by an attestation signed under oath must be denied regardless of whether such a claim meets the tests of the Settlement Agreement. As currently written, the proposed SIP ignores this requirement and is contrary to the Fifth Circuit's opinion.

## II. The Proposed SIP is Inconsistent with the Goals of the Economic Class Action Notice Program.

Section 4.4.15 of the Settlement Agreement requires that the SIP be "consistent with the goals of the Economic Class Action Settlement Notice Program."  The Program noticed those who had been damaged by the Deepwater Horizon oil spill and informed them of their rights. To this end, the Notice was directed to those who suffered a loss caused by the spill and only those who met this essential qualification were advised of their opportunity to file a claim, as well as their right to opt out or object:

- The mailed Notice Packet stated in bold, prominent text on the envelope:  "If you had economic loss or property damage **because of the Deepwater Horizon oil spill**, you could get money from a class action settlement."  Rec. Doc. 6266-2 at 26, 135 (emphasis added).

- The very first sentence of the approved Notice states, "If you had economic loss or property damage **because of the Deepwater Horizon oil spill**, you could get money from a class action settlement."  Rec. Doc. 6266-2 at 113 (emphasis added). It goes on to explain on the first page that "you may receive money **if you have been damaged by the Deepwater Horizon oil spill**" and fall into one of the designated categories in the Settlement Agreement.  *Id.*  Repeatedly, the approved Notice informs recipients that they will only be eligible for payment for "lost profits or earnings **as a result of the Deepwater Horizon Incident**."  *See id.* at 124 (emphasis added) (describing "eligibility requirements for "Economic Damage Claim"); *see also id.* at 119 (stating that if you do not "have any economic loss arising out of the Deepwater Horizon Incident" then "You are not an E&PD Class Member.").

- The first paragraph of the Publication Notice for newspapers and magazines states, "If you have economic loss or property damage **because of the Deepwater Horizon oil spill**, you could get money from a class action settlement with [BP]." Rec. Doc. 6266-2 at 140 (emphasis added).  In bold, the Publication Notice then asks

- as its first question, "Who is Included in the Economic & Property Damages Settlement?"  It answers, "[t]he Economic and Property Damage ("E&PD") Settlement Class includes people, businesses, other entities, and properties [in certain geographic areas] **that were harmed by the oil spill.**"  *Id.* (emphasis added).

- Other approved Notices followed the same format.  *See* Rec. Doc. 6266-2 at 137 (Email Notice:  "If you had economic loss or property damage because of the Deepwater Horizon oil spill . . ."); *id.* at 147 (Radio Ad:  "If you or your business were harmed by the Deepwater Horizon Oil Spill . . ."); *id.* at 149 (Internet Banner Notice: "If you or your business were harmed by the Deepwater Horizon oil spill . . .").

The Notice Program contained "[a]ll critical information about Settlement Class Members' rights . . . No key information [was] omitted."  *Id.* at 105.  In stark contrast, the proposed SIP makes no attempt to distinguish class members from the general public or alert readers as to who is eligible for payment.  Rather, the proposed SIP urges everyone who "reside[s] or [has] a business" in a five-state region to "file and find out" if they meet the "objective financial-data driven formulas" for payment.  By failing to inform the public that only those who sign a certification under penalty of perjury that their alleged losses were due to the spill are eligible for compensation, the proposed SIP is misleading and inconsistent with the goals of the Notice Program.

The proposed SIP violates Section 4.4.15's requirements.  It should be revised, consistent with the goals of the Notice Program, to appeal to those with losses caused by the spill.

### III.     The Proposed SIP Violates Other Provisions of the Settlement Agreement.

As BP stated in prior correspondence and filings with this Court regarding the SIP proposed by Class Counsel in November 2012, the requirement that a claimed loss be caused by the Deepwater Horizon Incident is expressly set forth in the Settlement Agreement.  *See, e.g.*, Rec. Doc. 11838-3 at 2 (Letter from Richard C. Godfrey, Esq. to Hon. Sally Shushan (Dec. 7, 2012)), Rec. Doc. 11876-1 (Dec. of Richard C. Godfrey, Esq.).  Nothing in the Fifth Circuit's decision altered this bedrock requirement.  As Judge Southwick stated:

> Neither the Settlement Agreement's terms nor its implementation ignore causation.  Instead, the parties explicitly contracted that **traceability** between the defendant's conduct and a claimant's injury **would be satisfied at the proof stage**, that is, in the submission of a claim, **by a certification** on the document **that the claimant was injured by the** Deepwater Horizon **disaster**.

*In re Deepwater Horizon*, 744 F.3d at 376 (emphasis added).

The Notice Program was correct in its advisement that only those who suffered losses "as a result of the Deepwater Horizon Incident" were eligible.  The proposed SIP, in contrast,

encourages those who view the advertisements to submit claims for losses that they know have nothing to do with the oil spill and are not covered by the Settlement Agreement.

### IV. Class Counsel's Proposed SIP Violates Rule 23.

The Economic Class Action Notice Program attached to the Declaration of Cameron R. Azari, Esq. (Rec. Doc. 6266-2) was approved by Judge Barbier because it satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B). Rec. Doc. 6418, ¶¶ 29-30. Judge Barbier cited the fact that the "Notice clearly and concisely states in plain, easily understood language . . . the definition of the class certified." *Id.* ¶ 30 (citing Fed. R. Civ. P. 23(c)(2)(B)).

Under the Settlement Agreement, the Notice Plan "shall be designed to meet the requirements of Fed. R. Civ. P. 23(c)(2)(B)." Settlement Agreement § 8.1.2. Therefore, inherent in Section 4.4.15's requirement that the SIP be "consistent with the goals of the . . . Notice Program," is the requirement that the SIP must also be consistent with the goals of Rule 23(c)(2)(B). A crucial component of Rule 23(c)(2)(B) is section (ii), which requires that a class notice provide "the definition of the class certified." As demonstrated above, the class certified is limited to certain individuals and businesses who suffered losses due to the Deepwater Horizon Incident. Yet, the proposed SIP makes no mention of this fact.

Instead of providing a reasonable explanation of the certified class, the proposed SIP makes reference to unexplained "objective financial-data driven formulas" and "causation tests." This language—unfamiliar to a lay audience—contravenes Rule 23(c)(2)(B)'s requirement that the notice be stated "clearly and concisely" in "plain, easily understood language." Rather than provide such language, the proposed SIP encourages all readers in the geographic area "to file and find out" if they meet the unexplained tests.

The proposed SIP's omission of the attestation requirement and reliance solely on "financial-data driven formulas" misstates the class and the requirements of the Settlement Agreement. Rule 23 prohibits the provision of information to the class, which is "misleading" or "unfaithful to the settlement agreement." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197-99 (5th Cir. 2010) (reversing court's order certifying class and approving class settlement).

### V. The Supplemental Information Program Should Be Consistent With the "Reminder Notice" of the Claim Filing Deadline.

The Claims Administrator recently notified BP and Class Counsel of his intent to issue a "Court-approved reminder notice" pursuant to Section 8.1.3 of the Settlement Agreement.[1] To avoid creating confusion for the class, the "Court-approved" notices and advertisements under Sections 4.4.15 and 8.1.3 must be consistent. The SIP pursuant to Section 4.4.15 should not go forward until the parties have reviewed the reminder notice pursuant to Section 8.1.3 and are able to ensure that the goals and message of both communications are consistent.

---

[1] BP has not yet seen the proposed "reminder notice" and reserves all its rights to review and object.

The Honorable Sally Shushan
January 16, 2015
Page 5 of 6

### VI. The Proposed SIP Makes Inaccurate Statements.

The proposed SIP inaccurately describes recent litigation events. The proposed SIP states that the United States Supreme Court "**upheld**" the causation tests. This is an inaccurate statement of the law. "The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times." *United States v. Carver*, 260 U.S. 482, 490 (1923). This Court should not approve inaccurate statements concerning the litigation.

In fact, this Court should not approve any commentary on litigation outcomes. Rather, as described above, the goal of the SIP must be consistent with the goals of the Notice Program to notify claimants of their legal rights. If SIP funds are used, as Class Counsel proposes, to update potential class members of litigation developments, the proposed SIP is incomplete and should not be limited to the denial of certiorari. Instead, the proposed SIP would also need to inform potential class members that the Fifth Circuit found that "matching" is a necessary element of the Settlement Agreement under Policy 495 because of the Settlement Agreement's "extensive documentation requirements which would allow claims administration accountants to process claims in accordance with economic reality." *In re Deepwater Horizon*, 732 F.3d 326, 339 (5th Cir. 2013).

### VII. Class Counsel's Proposed SIP Provides Inadequate Information.

In addition to the substantive concerns raised herein, Class Counsel's submission fails to provide sufficient information for the Court to exercise its approval or BP to exercise its Section 4.4.15 rights to review and comment. The proposed SIP gives no information about its goals, no explanation of why the particular newspapers chosen will assist in effectuating those goals, nor any indication of what potential Class Members will be reached by those publications. In contrast, and as an example of what should have been provided, the Notice Program provided extensive justification for the language and publications chosen for print media advertisements. *See* Rec. Doc. 6266-2. This allowed the parties and the Court to ensure that the Notice Program met its goals.

As to the proposed "internet banner ad," Class Counsel provides no information as to the websites on which these ads will be placed and how that placement will further the goals of the Notice Program to provide information to potential class members. In contrast, when the Notice Program was approved, extensive information as to the websites on which banners would appear and the reason those sites were chosen was provided. *See* Rec. Doc. 6266-2 at 99. The location of SIP advertisements is nearly as important as the content. The goal of the SIP should be to notify Class Members of their legal rights, not merely recruit as many submissions as possible, regardless of geographic location or whether they have a good faith basis to attest under oath that they suffered losses due to the Deepwater Horizon oil spill. Until this information is provided the Court should not approve the proposed SIP.

* * *

The SIP must be consistent with the goals of the Notice Program.  It should not characterize or attempt to redefine the Settlement Agreement, nor should it provide a misleadingly broad, less accurate, description of the class.  Class Counsel's proposed SIP violates the Fifth Circuit's opinion upholding the settlement agreement, the Settlement Agreement itself, and Rule 23.  Moreover, it risks harming actual class members whose claims may be delayed by the filing of meritless claims encouraged by the proposed SIP.  This Court should not approve the proposed SIP.  If the Court does not reject Class Counsel's proposal outright, at a minimum, BP requests the Court set a briefing schedule, so that BP may submit its position to the Court with further support.

Sincerely,

Mark Holstein
Managing Attorney


cc:     James Roy, Esq.
        Steve Herman, Esq.
        Brian Barr, Esq.