# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY  THE OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE GULF | * | |
| OF MEXICO, ON APRIL 20, 2010 | * | SECTION J |
| | * | |
| This document relates to: | * | |
| | * | HONORABLE CARL J. BARBIER |
| No. 10-4536 | * | |
| | * | MAGISTRATE JUDGE SHUSHAN |
| | * | |

---

### BPXP'S MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION FOR ADJOURNMENT OF PENALTY PHASE TRIAL TO PERMIT LIVE EXPERT TESTIMONY ON THE ECONOMIC IMPACT OF THE PENALTY ON THE VIOLATOR FACTOR

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile:  (504) 556-4108

Robert C. "Mike" Brock
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Hariklia ("Carrie") Karis, P.C.
Matthew T. Regan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000

*Attorneys for BP Exploration & Production Inc.*

During the week of January 26, 2015, ████████████████████████

████████████████████████████████████████████████████████████.

Under these unique circumstances, BPXP seeks the remedy of holding the record open for this

bench trial for a short time to permit the presentation of live expert testimony and demonstratives

on the economic impact factor, a fundamental issue with respect to the United States' request for

a significant penalty on BPXP.

## FACTUAL BACKGROUND

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

**ARGUMENT**

In *IQ Products Co. v. Onyx Corp.*, 2002 WL 31017634, at *2 (5th Cir. Aug. 23, 2002), the Fifth Circuit suggested specific factors to be considered when evaluating a request for continuance to remedy an expert's unavailability:  "When, as here, a continuance is requested because a witness is unavailable, the movant must show[:] (1) due diligence was exercised to obtain the attendance of the witness, (2) the witness would tender substantial favorable evidence, (3) the witness would be available and willing to testify, and (4) denial of the continuance would materially prejudice the movant."  *Id.* at *2.  In this case, each of these factors supports granting an adjournment to allow live testimony and demonstratives from a substitute expert.[1]

Fourth Factor (Prejudice): To begin with the most important factor, BPXP will be severely prejudiced if it is not allowed to present live testimony including with the use of demonstratives and callouts to financial documents and spreadsheets.  Mr. Ratner testified live at this trial for a greater length of time than any other expert (more than three hours on direct), and repeatedly criticized Mr. Den Uyl's work.  As set forth in the examples below, BPXP cannot effectively rebut this testimony without live expert testimony including demonstrative exhibits; expert reports are no substitute for such testimony and exhibits.

*Operating Expenses*.  Live witness testimony and demonstratives are necessary to show Mr. Ratner is wrong about Wood Mackenzie's operating expenses and Mr. Den Uyl's $7.8

---

[1] Courts have granted continuances where, as here, good cause exists.  *See, e.g.*, *SMD Software, Inc. v. EMove, Inc.*, No. 5:08-CV-403-FL, 2014 WL 794031, at *2 (E.D.N.C. Feb. 27, 2014) ("In light of various scheduling conflicts, the sudden illness of plaintiffs' expert witness necessitated continuance of trial."); *see also, e.g.*, *Fajardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co. of P.R.*, 999 F. Supp. 213, 218 (D.P.R. 1998) ("[P]laintiff later requested another continuance [because] one of its main experts[] . . . had fallen critically ill.  The Court thus moved the bench trial to October 20, 1994.  [Then], plaintiff was forced to request a second continuance [because that expert] died and it needed to find another [expert]; thus the trial date was continued *sine die*."); *Schwartz v. Malm*, No. 80 Civ. 6449 (RWS), 1983 WL 2173, at *2 (S.D.N.Y. Sept. 28, 1983) ("Thereafter the trial had to be adjourned because of the expert's illness resulting from lung cancer."); *cf., e.g.*, *Jones v. Phil Guillbeau Offshore, Inc.*, 2014 WL 4186784, at *1 (E.D. La. Aug. 22, 2014) (applying good cause standard and finding "good cause to justify the continuance of trial" due to illness of party).

billion operating expense adjustment.  In his September 12, 2014 report, Mr. Ratner listed only one set of numbers as the "Wood Mackenzie Operating Expenses" from 2014-2018.  However, in his January 6, 2015 report, Mr. Ratner presented an entirely different set of numbers for "Total Operating Costs Per Wood Mackenzie."   On cross examination, Mr. Ratner denied that the numbers referred to in his January 6 report as "Total Operating Costs Per Wood Mackenzie" were actually Wood Mackenzie's capital expenditure numbers:

> Q.      Is it possible that the numbers you present in your January report that you attribute to the OPEX are, in fact, CAPEX numbers?
> A.      *They're not*.   Because *the first year is remarkably the same number*, and I've run I all the way through the calculation of the OP -- the operating expense at $26 a barrel times the number of barrels of production, and it's clearly marked as operating expense.
> Q.      Ok.
> A.      There is -- *in the first year, the capital expense number is the same number*.  (Tr. 1201:4-14 (emphasis added)).

BPXP would demonstrate through live witness testimony that what Mr. Ratner described in his January 6 report as "Total Operating Costs Per Wood Mackenzie" numbers are not merely the same as Wood Mackenzie's capital expenditure numbers "*in the first year*," as Mr. Ratner testified.  In fact, in *every year* they are identical to Wood Mackenzie's CAPEX numbers.  Given the large spreadsheets and calculations at issue, BPXP needs live testimony and demonstratives to prove these points and to defend Mr. Den Uyl's operating expense adjustments.  Mr. Den Uyl could not respond in his expert reports to Mr. Ratner's January 6 assertions regarding operating expenses or to the testimony quoted above about this multi-billion dollar issue.

   *Effect of the Decline of Oil Prices.*  Mr. Ratner claimed in his January 6 report that Mr. Den Uyl's opinions regarding the impact of oil price declines "ignored the fact that the majority of the future projected cash flows for the assets held by BPXP will occur in the outyears after 2019," and further claimed that Mr. Den Uyl "assumes operating costs are fixed as projected."

Mr. Ratner also criticized Mr. Den Uyl's approach in his January 6 report, stating that "I have not identified any support for Mr. Den Uyl's oil price projections or any analyst price projections beyond 2020." At trial, Mr. Ratner testified for the first time regarding "an analysis that I looked at recently that shows that our global consumption will exceed global production in the -- I think it was five years." These and other criticisms discussed in Mr. Ratner's trial testimony are wrong. However, Mr. Den Uyl had no opportunity to rebut these criticisms of his work.

*Credibility.* Finally, absent live testimony, BPXP would be harmed by the fact that the Court will not be able to assess the credibility of its economic impact expert, as it was able to do with the government's expert. In this regard, trial testimony by BPXP's economic impact witness that directly meets the criticisms in Mr. Ratner's trial testimony is fundamentally different from Mr. Den Uyl's October 2014 deposition.

In addition to the severe prejudice that BPXP would suffer were an adjournment not granted, the other three factors are equally well-satisfied under the current circumstances.

First Factor (Due Diligence): BPXP exercised every diligence in preparing and readying Mr. Den Uyl for testifying at trial. ███████████████████████████████████ ████████████████████████████████

Second Factor (Substantial Favorable Evidence): Mr. Den Uyl's substitute (discussed below) "would tender substantial favorable evidence" on the issues set forth above.

Third Factor (Live Testimony Available): Although Mr. Den Uyl cannot testify, BPXP will be able to satisfy the alternative statement of this factor: "the defense's estimation of the probability of procuring live testimony within a reasonable time." *Johnson v. Puckett,* 176 F.3d 809, 822 (5th Cir. 1999). ████████████████████████████████ counsel for BPXP has diligently investigated alternative expert witnesses. Based on that investigation, BPXP requests

4

permission to call Louis Dudney, CPA, CFF, of AlixPartners.  Mr. Dudney has worked with Mr.

Den Uyl for over fifteen years, originally with PricewaterhouseCoopers.  Fifteen years ago, Mr.

Den Uyl recruited Mr. Dudney to join him at AlixPartners, where their offices are on the same

floor.  Mr. Dudney has over 25 years of experience evaluating issues related to solvency, cash

flow analysis, valuation, and forensic accounting.  Mr. Dudney and Mr. Den Uyl sometimes

review one another's work as part of a peer review process.  The same AlixPartners team that

supported Mr. Den Uyl on this assignment (Thomas Riordan and Jeffrey Kopa) has also assisted

Mr. Dudney on numerous projects over the years.

Mr. Dudney has conducted an initial review of Mr. Den Uyl's and Mr. Ratner's reports

and testimony.   Mr. Dudney believes he will be able to endorse Mr. Den Uyl's basic

methodology and conclusions (including with respect to potential responses to Mr. Ratner's trial

testimony that Mr. Den Uyl had discussed with his team before he learned he would be unable to

testify) as consistent with Mr. Dudney's experience and standard practice in the industry.

## CONCLUSION

BPXP respectfully requests the Penalty Phase trial record be held open to allow live

expert testimony from BPXP on the economic impact of the penalty.  BPXP is prepared to offer

Mr. Dudney for deposition the first week of March 2015 and to present his trial testimony as

early as the week of March 16.  In the alternative, BPXP respectfully requests that the Court: (1)

strike from the record all trial testimony of Ian Ratner and associated trial exhibits and

demonstratives or (2) schedule closing argument on the economic impact to the violator factor at

a time convenient to the Court, as such argument would give BPXP the opportunity to bring Mr.

Ratner's errors to the Court's attention orally and through demonstratives in a way that will not

be possible to achieve in a narrative closing brief.

Dated: February 6, 2015                    Respectfully submitted,

                                           By: /s/ Don K. Haycraft

                                           Don K. Haycraft (Bar #14361)
                                           R. Keith Jarrett (Bar #16984)
                                           LISKOW & LEWIS
                                           One Shell Square
                                           701 Poydras Street, Suite 5000
                                           New Orleans, Louisiana 70139-5099
                                           Telephone: (504) 581-7979
                                           Facsimile:  (504) 556-4108

                                           Robert C. "Mike" Brock
                                           Kirkland & Ellis LLP
                                           655 Fifteenth Street, N.W.
                                           Washington, D.C. 20005
                                           Telephone:  (202) 879-5000
                                           Facsimile:  (202) 879-5200

                                           Richard C. Godfrey, P.C.
                                           J. Andrew Langan, P.C.
                                           Hariklia ("Carrie") Karis, P.C.
                                           Matthew T. Regan, P.C.
                                           Kirkland & Ellis LLP
                                           300 North LaSalle Street
                                           Chicago, Illinois  60654
                                           Telephone: (312) 862-2000

                                           *Attorneys for BP Exploration & Production Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 6th day of February, 2015.

<u>/s/ Don K. Haycraft</u>