## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re: Oil Spill by the Oil Rig         MDL No. 2179
"Deepwater Horizon"
in the Gulf of Mexico,
on April 20, 2010                SECTION: J

This Document Relates to:

All Cases                  JUDGE BARBIER
                             MAG. JUDGE SHUSHAN

_____/

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
## MOTION TO APPOINT SPECIAL MASTER

## TABLE OF AUTHORITIES

**CASES**

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.,*
  55 F.3d 768, 820 (3d Cir.1995) ......................................................... 11

*In re High Sulfur Content Gasoline Products,*
  517 F.3d 220 (5th Cir.2008) ............................................................ 5

**RULES**

Fed. R. Civ. P. 23(h) ................................................................... 4,10

Fed. R. Civ. P. 23(h)(1)................................................................ 4,11

Fed. R. Civ. P. 23(h)(2)................................................................ 4,11

Fed. R. Civ. P. 23(h)(3)................................................................ 5

Fed. R. Civ. P. 23(h)(4)................................................................ 5

Fed. R. Civ. P. 52(a)................................................................... 5

Fed. R. Civ. P. 54(d)(2)............................................................... 4,5

Fed. R. Civ. P. 53 .................................................................... 5

**TREATISES**

*Manual for Complex Litigation*, note 22, § 21.31, at 285 (4th ed. 2004)........................... 4

**MAY IT PLEASE THE COURT**:

I.     **Contrary to FRCP Rule 23(h) and the Court's own *Order and Reasons*, nontaxable costs have been awarded to Class Counsel without directing notice to Class Members and without opportunity for Class Members to object or be heard**.

Pursuant to Section 5.16 of and Exhibit 27 to the Economic and Property Damages Class Action Settlement, a Common Benefit Fee and Cost Fund has been established for the payment of common benefit attorneys' fees and costs to Economic Class Counsel ("ECC") and the other Common Benefit Attorneys ("CBA") who have submitted time and costs in compliance with Pre-Trial Order No. 9 (PTO No. 9"), subject to approval and order of the Court. *See* R.Doc. 5022.

Co-Liaison Counsel and Economic Class Counsel filed *Ex Parte Motions For Reimbursement Of Shared Expenses* on each of the following dates:

a.     February 2, 2013 seeking $22,304,454.93 (R.Doc. 8472);

b.     April 19, 2013 seeking $1,950,000.00 (R.Doc. 9436);

c.     July 8, 2013 seeking $1,800,000.00 (R. Doc. 10679);

d.     November 2, 2013 seeking $1,800,000.00 (R.Doc. 11775); and

e.     April 7, 2014 seeking $1,800,000.00 (R.Doc. 12639)

The Court signed Orders approving the reimbursement of the *full* amount sought in these *ex parte* motions within days of their filing:

a.     February 19, 2013 (R.Doc. 8607);

b.     April 23, 2013 (R.Doc. 9520);

c.     July 17, 2013 (R.Doc. 10796);

d.     November 5, 2013 (R.Doc. 11796); and,

e.     April 11, 2014 (R.Doc. 12664)

No notice of any of the foregoing *ex parte* motions was directed to Class Members. Federal Rule of Civil Procedure Rule 23(h) explicitly requires that a claim for an award of attorney fees <u>and nontaxable costs</u> must be made by motion under Rule 54(d)(2), subject to the provisions of the subdivision, at a time set by the court. <u>Notice of the motion must</u> be served on all parties and, <u>for motions by class counsel, directed to class members in a reasonable manner</u>. *See* FRCP Rule 23(h)(1). Emphasis added.

No opportunity to object or to be heard on these *ex parte* motions was given to Class Members. FRCP Rule 23(h)(2) provides Class Members the standing and right to object to these *ex parte* motions for reimbursement.

The failure to provide notice and opportunity to be heard on these cost reimbursement motions is also in complete conflict with the Court's own reasoning in its December 28, 2011 *Order and Reasons As to the Motion to Establish Account and Reserve for Litigation Expenses (Rec.Doc. 4507)* creating a common benefit "hold-back" fund:

> "The Court does not at this time decide whether to award <u>common benefit</u> fees <u>or expenses</u> to the PSC. Those matters are reserved for another day. But, it is necessary to establish a mechanism to create a fund that could potentially be available to pay such fees and <u>expenses</u> if and when deemed appropriate. *<u>Before any such awards are made</u>, <u>there will be adequate due process given, with notice and opportunity to be heard</u>* on issues relating to *<u>any request</u>* for <u>disbursements from the common benefit fund</u>."

*See* R.Doc. 5022, p.3, ¶2.  Emphasis added.

Notice "provides the structural assurance of fairness that permits representative parties to bind absent class members . . . [as well as] an opportunity for class members to participate in the litigation, to monitor the performance of class representatives and class counsel, and to ensure that the predictions of adequate representation made at the time of certification are fulfilled." *See* MANUAL FOR COMPLEX LITIGATION, note 22, § 21.31, at 285 (4th ed. 2004).

Allowing class members the opportunity to thoroughly examine Class Counsel's nontaxable cost reimbursement motions, inquire into the bases for various charges, and ensure they are adequately documented and supported is essential for the protection of the rights of Class Members, including Mover.[1] It also ensures that the Court, acting as a fiduciary for the absent Class Members, is presented with accurate, and thoroughly reviewed, tested, and audited information to evaluate the reimbursement of tens of millions of dollars in shared expenses to the ECC and CBA.

In connection with a class action attorney fee proceeding, the 5th Circuit said:

> "Ex parte proceedings are an exception to the rule in our judicial system and contrary to its adversarial nature. *See, e.g.*, *McKinney v. Paskett*, 753 F. Supp. 861, 863 (D. Idaho 1990) ("The petitioner in this civil proceeding seeks unilateral in camera secrecy. This clearly flies in conflict with . . . the rules of civil procedure which allow ex parte hearings only in emergency matters.")."

*See In re High Sulfur Content Gasoline Products,*  517 F.3d 220 (5th Cir.2008).

In addition to FRCP Rule 53 and the inherent authority of the Court, FRCP Rule 23(h)(4) specifically permits the Court to refer <u>issues related to the amount of the award</u> to a special master or to a magistrate judge as provided in Rule 54(d)(2)(D).  *See* FRCP Rule 23(h)(4).

Respectfully, the appointment of a disinterested special master is needed to help the Court protect the interest of absent class members.  A special master with experience and qualifications in class actions and legal bill auditing methodologies long used by government entities, bankruptcy courts, and individuals, would be of great assistance to the Court in assuring that all past and future nontaxable costs, as well as attorney's fees, are appropriate, accurate and reasonable.

---

[1]  Currently, the Shared Expense records supporting the Court's decisions on reimbursing almost $30 million dollars to the ECC and CBA are sealed from public view.

**II.**    **Philip A. Garrett is not a disinterested officer of the Court and does not perform actual review, auditing and analysis intended to identify inappropriate and/or otherwise questionable attorney's fees and expenses**

**1.**    **The lawyers are his clients**

There are currently no less than 3 Multi District Litigation ("MDL") proceedings pending in the Eastern District of Louisiana where Philip A. Garrett, CPA, has been retained by the Plaintiffs' Liaison Counsel *"to assist and provide accounting services to Plaintiffs' Liaison Counsel, the Plaintiffs' Steering Committee, and the Court…"*, including:

a.    *In re Chinese-Manufactured Drywall Products Liability Litigation* – MDL 2047
b.    *In re Oil Spill by the Oil Rig "Deepwater Horizon"* – MDL 2179
c.    *In re: Pool Products Distribution Market Antitrust Litigation* – MDL 2328

In each of these MDL proceedings, there is a virtually identical Pre-Trial Order No. 9 ("PTO No. 9") where Mr. Garrett is always identified in paragraph "(3)" of the "General Standards" as being retained by Plaintiffs' Liaison Counsel or Co-Liaison Counsel. *See* **Supplemental Exhibits 1-3**. This fact is important because Mr. Garrett, as will be shown below, performs the same "accounting only" tasks in each case.

In each of those virtually identical PTO No. 9s, a member of the Herman Herman & Katz, LLC law firm is identified as Plaintiffs' Liaison Counsel or Co-Liaison Counsel. *See* **Supplemental Exhibits 1-3**. Although no retainer agreement or letter has been found in the public record, it is reasonable to presume from the facts in the record that the Herman Herman & Katz law firm and/or its members are clients of Philip A. Garrett, CPA in each of these proceedings, including MDL 2179.

Mr. Garrett is not a disinterested officer of the Court acting to protect the interests of the absent Class Members.

2.      **Mr. Garrett performs limited review of time and expense records**

In this MDL 2179, Mr. Garrett provides accounting services where he compiles the attorney time and expense submissions into monthly reports for his clients, Plaintiffs' Liaison Counsel, who then present those monthly summary reports, *ex parte*, to the Court under seal from public view.  Not even the BP settling parties are allowed to view those sealed monthly reports.

As explained in Mover's original *Memorandum in Support of Motion to Approve Special Master* in this matter (R.Doc. 12807-3), Mr. Garrett receives the time and expense records from class counsel, but has absolutely no guidelines, procedures, protocols and methods to perform a review, test, audit, or confirmation of the appropriateness and accuracy of time and expense submissions by the ECC and CBA.

Mr. Garrett's own affidavit accompanying the *ex parte* motion for reimbursement from the Common Benefit Fee Fund of over $22 million dollars in shared expenses specifically says:

> "In connection with this assignment, I have been asked to conduct a <u>limited review</u> of only the cash assessments and the shared costs.  The cash assessments were incurred by each law firm, and used by the PSC to pay the shared costs. ...."

*See* **Supplemental Exhibit 4,** January 22, 2013 Affidavit, p.2, ¶4 (R.Doc, 8427-1). Emphasis added.

Mr. Garrett further attests that his limited review work involved a review of these expense reports to determine whether they complied with the dictates of PTO No. 9.    *See* **Supplemental Exhibit 4**, p.2, ¶5.  Again, PTO No. 9 has <u>no</u> guidelines, procedures, protocols and methods to perform a review, test, audit, or confirmation of the appropriateness and accuracy of time and expense submissions, nor does it have procedures or methodology for deterring, detecting, or preventing any inappropriate billing.

On May 21, 2014, Mr. Garrett submitted an affidavit in advance and support of a motion for attorney's fees in MDL 2047, the *Chinese Drywall Litigation*. *See* **Supplemental Exhibit 5**. In his affidavit, Mr. Garrett admits that his "*... work as the Court-appointed "accountant" primarily involved a review of these time and expense reports to determine whether they complied with the dictates of PTO No. 9.*" *See* **Supplemental Exhibit 5**, p.2, ¶6.  Again, the PTO No. 9 in that proceeding is virtually identical to the PTO No. 9 in this MDL 2179.  In fact, the time and expense reporting guidelines and procedures contained in each of these reproduced pre-trial orders are interchangeable except for some language about bellwether cases.

Mr. Garrett further attests that the collective pre-trial orders issued by the MDL2047 court established the procedure for reviewing all submissions of time and expense, and as part of his duties to assist in compiling submissions and making reports. Among other things disallowed from inclusion in those submissions were items not properly coded in accordance with PTO No. 9; items of expense for which proper receipts or other proof of payment had not been submitted; and, any time or expense incurred in connection with the litigation of individual cases unless authorized by a member of the Plaintiffs' Steering Committee or Fee Committee in MDL No. 2047.  *See* **Supplemental Exhibit 5**, p.3, ¶8.

Of great relevance to the *instant* Motion, Mr. Garrett testifies in his MDL 2047 affidavit that:

> "Under PTO Nos. 9 and 9A, my determination as to whether to disallow any item of time and expense from inclusion in allowed time or expenses was a *matter of procedural convenience for the Court* and *not a determination on the merits.*  I made no subjective judgment regarding the value of any time allowed and attempted to judge solely upon objective criteria. Both orders made it clear that a disallowance by me was without prejudice to a determination by the Court of the merits of any submission at a time and manner determined by the Court."

*See* **Supplemental Exhibit 5**, p.3, ¶9. Emphasis added

Since the PTO No. 9 in each case (MDL2047 and MDL2179) are virtual mirror-images of each other, it is respectfully submitted that Mr. Garrett's determination in MDL 2179 as to whether to disallow any item of time or expense has also been a "*procedural convenience for the Court*" without any determination on the merits of the time and expenses, or their appropriateness and accuracy.

In paragraph 12(a) – (d) of his affidavit, Mr. Garrett attests to the "protocol" he used to review the time and expense submissions.  In summary, the protocol involved a review to determine if it complied with the *form or procedural requirements of PTO No. 9*; examined the submissions "rigorously" to determine if there were circumstances present which would require disallowance of items of time and expense *under the terms of PTO No. 9*; checked the arithmetic accuracy of the summaries of time and expense submitted; and, communications with various counsel took place if a counsel requested that Mr. Garrett modify certain time or expenses to amend or correct any submission downward pursuant to PTO No. 28.

Mr. Garrett's most recent affidavit in MDL 2047 to support attorney's fees essentially duplicates his January 22, 2013 affidavit and other affidavits to this Court in this MDL 2179 in support of the *ex parte* motions to reimburse Shared Expenses: *Mr. Garrett is only reviewing time and expense reports to determine if they comply with the form and procedural requirements of PTO No. 9*.  There is absolutely no mention of any legal bill auditing activities, protocols, procedures, or methodology to examine time and expense submissions to determine if they are accurate and appropriate, and if they reflect the exercise of adequate billing judgment, to insure that unqualified, duplicative, redundant, unproductive or excessive time is not part of the submission, and that expenses for such items as mileage, hotels, airfare, and meals were necessary, reasonable and actually expended in connection with genuine work that was

performed for the common benefit of the Class. Mr. Garrett's affidavits also never identify any controls, policies, procedures, or practices in place to discourage, detect or prevent inaccurate and inappropriate time and expense submissions, apparently because there are none.

Because the PTO No. 9s in each case are identical and because Mr. Garrett's affidavits in each case consistently show he is performing a limited review of time and expense records only for compliance with PTO No. 9, and because he is retained by the same counsel to perform identical tasks in each case, it is reasonable to conclude that the sealed time and expense records in the *instant* matter have not received and are not receiving any substantive legal bill review, test or audit of any kind.

### III.   <u>Mover has standing and this motion is not premature</u>

Class Counsel Stephen Herman has indicated he is uncertain if Mover has standing to bring these motions related to attorney's fee and expenses since the BP Parties are paying those bills without taking any money out of the Class Members' funds.

Mover believes he has standing. Mover avers the *ex parte* motions for reimbursement of shared expenses are motions that must comply with the requirements of FRCP Rule 23(h) and, therefore, Mover undeniably has standing as a Class Member to object to any motion by Class Counsel seeking disbursements from the Common Benefit Fee Fund for reimbursement of nontaxable costs identified as "Shared Expenses."

For these same reasons, Mover also believes the Motion to Appoint Special Master is not premature. As an example, in order for Class Members to appeal a judgment of these disbursements from the Common Benefit Fee Fund, the Class Members must be advised the motions have been filed, and they must be provided an opportunity to take the requisite steps to assert their objections to the proceedings in this Court in a timely manner to preserve appellate

rights. The Class Members have been denied that right to due process with regard to the previous 5 *ex parte* motions and orders disbursing almost $30 million dollars in reimbursements to Class Counsel and other Common Benefit Attorneys.

While it is correct the BP Parties are paying the expenses and attorney's fees out of their own pocket and not through the Economic and Property Damages Class Settlement fund, the reality is that the fund, the expenses and the fees are paid from the same source - the BP Parties. That arrangement "is, for practical purposes, a constructive common fund," and clearly does impact Mover's and Class Members' interests, as it is, for practical purposes, a constructive common fund. Other circuits have held that a class plaintiff does have standing to appeal an attorney fee award in such a situation. *See In re General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 819-21 (3d Cir. 1995). In *General Motors Pick-Up*, the Third Circuit reasoned that a defendant is concerned only with how much it must pay, not who gets the money, and thus a defendant may be willing to pay more in attorney fees if it can pay less overall. See *Id.* at 819-20. Even if class counsel's attorney fees are not to be paid from the class settlement, according to the Third Circuit, the aggregate amount of the attorney fees and the class settlement payments may be viewed as "a constructive common fund." *Id.* at 819-21. Class Counsel in MDL 2179 actually agree with Mover on this point. The following is taken directly from Class Counsel's own motion to establish their Common Benefit Fee Fund in this case:

> "<u>Whether common benefit fees are paid by a defendant on top of settlement payments paid directly to class members</u> or are held back from the recoveries paid directly to class members, <u>such common benefit fees are a necessary component of what the defendants are paying to resolve the underlying tort claims of the class.</u> *See, e.g., Boeing Co. v. Van Gembert*, 444 U.S. 472, 478 (1980) ("[T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). This *"fund as a whole"*

11

> *or common fund, including the amounts going to pay the common benefit*
> *attorneys, represents the total amount that the defendant is required to pay to*
> *"resolve" the claims of the class."*

*See* R.Doc. 6512-1, p.4. Emphasis added. [2]

Any expense award obtained *ex parte* by Class Counsel causes harm to Mover and all Class members by denying critical due process rights under FRCP Rule 23(h)(1) and (2).

Any expense or fee monies obtained through the use of inappropriate and inaccurate time and expense submissions also causes harm to Mover and all Class Members and could be considered property of the Class Members, and any injury they suffered could be at least partially redressed by allocating to them a portion of that award. Unfair and improper windfall profits or unreasonable fees realized through inappropriate and inaccurate time and expense submissions are in conflict with the interests of the Class.

Mover, as a Member of the Class, has standing to bring this Motion even though the attorney's fees and costs are payable independent of the class settlement.

If the Court were to find Mover and the Class Members do not have standing to raise these issues, then the Court is the only entity remaining to protect the Class Members against the inappropriateness and inaccuracy of any time and fee submissions and, ultimately, any unreasonable award of fees and expenses. This, too, supports the certain need for appointing a disinterested officer of the Court whose sole function is to review, test, audit, and confirm the appropriateness and accuracy of time and expense submissions according to appropriate legal bill auditing methods, controls, policies, procedures, and practices essential to establish a well-defined and transparent process.

---

[2] *Also see* footnote 3 on page 5 of R.Doc 6512-1, last sentence: "… *But although the common benefit fee mechanisms differ in whether the fees will be paid from the settlement trusts or the Common Benefit Fund, in both situations, the common benefit fees benefit the class and are being paid to resolve Deepwater Horizon claims.*" Emphasis added.

## **CONCLUSION**

For the reasons set forth herein and in Mover's original memorandum in support, it is respectfully urged that the Court GRANT Mover's Motion to Appoint Special Master.

Respectfully submitted,

By: _____

Kevin LeMaire, *in proper person*
16438 Spanish Oaks Boulevard
Prairieville, Louisiana 70769
Telephone: (225) 335-5521
Email: kuhnrod@aol.com