UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL 2179<br><br>SECTION "J" |
| Applies to:<br><br>No. 10-4536 | * * * * | JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

**ORDER**
**[As to the Maximum CWA Per-Barrel Civil Penalty]**

The United States and BP Exploration & Production Inc. ("BPXP") filed cross motions regarding the maximum per-barrel civil penalty that may be imposed under Section 311(b)(7)(D) of the Clean Water Act ("CWA"), 33 U.S.C. § 1321(b)(7)(D). (Rec. Docs. 13654, 13666).[1] These motions were heard on the briefs without oral argument. For the reasons set forth below, the Court agrees with the United States' position that the maximum penal amount is $4,300 per barrel of oil discharged. The Court does not determine here the actual amount of the civil penalty.

**Statutory Background: The Clean Water Act**

The CWA prohibits the discharge of "harmful" quantities of oil into covered waters or in connection with activities under the Outer Continental Shelf Lands Act. 33 U.S.C. § 1321(b)(3). When this prohibition is violated, administrative penalties (subsection (b)(6)) or civil penalties (subsection (b)(7)) may be imposed on the owner, operator, or person in charge of the vessel or facility from which the oil discharged. As to the civil penalty, the statutory text, as enacted in 1990, states that the amount shall not exceed $1,000 per barrel of oil discharged, unless the discharge resulted from gross negligence or willful misconduct, in which case the penalty shall not exceed

---

[1] Anadarko Petroleum Corporation partially joined in BPXP's motion. (Rec. Doc. 13740).

$3,000 per barrel.  *Id.* § 1321(b)(7)(A),(D).[2]

## Statutory Background: Federal Civil Penalties Inflation Act & Debt Collection Improvement Act

In the Federal Civil Penalties Inflation Adjustment Act of 1990 ("Inflation Adjustment Act"), Congress found that "civil monetary penalties for violations of Federal law and regulations play[] an important role in deterring violations and furthering the policy goals embodied in such laws," but that inflation weakens the deterrent effect by diminishing the economic impact of such penalties. Pub. L. 101-410, § 2(a), 104 Stat. 890 (codified as amended at 28 U.S.C. § 2461 note, § 2(a)).  Thus, Congress passed the Inflation Adjustment Act to "establish a mechanism that shall . . . allow for regular adjustment for inflation of civil monetary penalties" in order to "maintain the deterrent effect of civil monetary penalties and promote compliance with the law."  *Id.* § 2(b).  The core provision of the Inflation Adjustment Act, which was added by the Debt Collection Improvement Act of 1996, requires that

> [t]he head of each agency shall, not later than 180 days after . . . [Apr. 26, 1996], and at least once every 4 years thereafter—
> (1) by regulation adjust each civil monetary penalty provided by law within the jurisdiction of the Federal agency . . . by the inflation adjustment described under section 5 of this Act . . .

Pub. L. 104-134, Title III, ch. 10, § 31001(s), 110 Stat. 1321 (codified at 28 U.S.C. § 2461 note, § 4).

---

[2] The relevant text of 33 U.S.C. § 1321(b)(7) reads:

> (A) . . . Any person who is the owner, operator, or person in charge of any vessel, onshore facility, or offshore facility from which oil . . . is discharged in violation of paragraph (3), shall be subject to a civil penalty in an amount up to . . . $1,000 per barrel of oil . . . discharged.
> . . .
> (D) . . . In any case in which a violation of paragraph (3) was the result of gross negligence or willful misconduct of a person described in subparagraph (A), the person shall be subject to a civil penalty of . . . not more than $3,000 per barrel of oil . . . discharged.

2

As mentioned above, the maximum amount of the civil penalty under the CWA, as enacted in 1990, is $3,000 per barrel for violations resulting from gross negligence or willful misconduct. 33 U.S.C. § 1321(b)(7)(D).  Since 1997, both the Environmental Protection Agency ("EPA") and the United States Coast Guard have promulgated regulations purporting to raise this amount.  At the time of the DEEPWATER HORIZON/Macondo well oil spill, the EPA had set the maximum civil penalty at $4,300, while the Coast Guard set the amount at $4,000.  *See* 40 C.F.R. § 19.4 (2010) (EPA); 33 C.F.R. § 27.3 (2010) (Coast Guard).

## Parties' Arguments

In Phase One of this litigation, the Court found that the discharge resulted from BPXP's gross negligence and willful misconduct and, therefore, BPXP was subject to the higher maximum civil penalty under subsection (b)(7)(D). (*See* Rec. Doc. 13381-1 ¶ 611, 21 F. Supp. 3d 657, 757). In light of this ruling, the United States argues that the maximum CWA civil penalty that may be imposed on BPXP is $4,300 per barrel.  The United States claims that, while both the EPA and Coast Guard had authority to adjust the penalty, the Coast Guard made two errors in its calculations. The EPA did not make these errors; therefore, its regulation comports with the letter and spirit of the Inflation Adjustment Act and should be used by the Court.

BPXP does not dispute that the EPA's calculations were correct under the Inflation Adjustment Act, nor does it dispute that the Coast Guard's calculations were incorrect.  BPXP argues instead that neither agency's regulation is valid, because neither agency had authority to inflate a subsection (b)(7) civil penalty.  BPXP points out that the Inflation Adjustment Act permits an agency head to adjust only those penalties that are "within the jurisdiction of the Federal agency." 28 U.S.C. § 2461 note, § 4.  BPXP claims that CWA Section 1321(b)(7) does not confer authority

3

on the EPA or the Coast Guard to bring actions for civil penalties or make clear in any other way what agency has jurisdiction over the civil penalty. According to BPXP, then, the Department of Justice ("DOJ") has jurisdiction over subsection (b)(7) by virtue of 28 U.S.C. § 516, which states, "Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General." Because the Attorney General, the agency head of the DOJ, has never acted to inflate the penalties in subsection (b)(7)(D), BPXP concludes that the maximum penal amount remains at the original amount of $3,000.[3] BPXP also makes several alternative arguments, some of which are addressed below.

## Discussion

Because the United States asserts that the EPA's regulation is the applicable and correct regulation, the Court will focus on it. The Court finds that the EPA had the authority under the Inflation Adjustment Act to adjust the civil penalty contained in subsection (b)(7)(D). The very first section of the CWA states, "Except as otherwise expressly provided in this chapter, the Administrator of the Environmental Protection Agency . . . shall administer this chapter." 33 U.S.C. § 1251(d). Another section of the CWA adds, "The Administrator [of the EPA] is authorized to prescribe such regulations as are necessary to carry out his functions under this chapter." *Id.* § 1361(a). Section 1321(b)(7) does not "expressly provide" that the EPA Administrator does not

---

[3] As to Anadarko Petroleum Corporation, the Court has found that it is not subject to the enhanced, gross negligence penalty under subsection (b)(7)(D), only the standard civil penalty under subsection (b)(7)(A). At the time of the oil spill, both the EPA and Coast Guard had promulgated regulations that increased the maximum amount of this penalty from $1,000 per barrel to $1,100 per barrel. *See* 40 C.F.R. § 19.4 (2010); 33 C.F.R. § 27.3 (2010). Anadarko adopts BPXP's argument that these regulations are invalid because only the Attorney General possessed authority to inflate the penalties at issue. Thus, Anadarko contends that the maximum civil penalty under subsection (b)(7)(A) is $1,000 per barrel of oil discharged, the original amount enacted by Congress in 1990.

administer that provision; therefore, the civil penalties at issue are within the "jurisdiction" of the EPA for purposes of the Inflation Adjustment Act.

The Court does not agree with BPXP's position that the DOJ/Attorney General's authority to bring and control a civil action for penalties means that the penalty is not within the EPA's "jurisdiction" for purposes of the Inflation Adjustment Act. The Court does not interpret either the Inflation Adjustment Act or the CWA as equating the authority to bring a lawsuit with the authority to promulgate the regulations to be enforced by that suit. As the United States points out, accepting BPXP's position would invalidate nearly every agency's attempt to inflate civil penalties that can be sought in federal court. In any event, the CWA does not divest entirely EPA's ability to represent the United States in a civil action under the CWA. *See* 33 U.S.C. § 1366 ("The Administrator shall request the Attorney General to appear and represent the United States in any civil or criminal action instituted under this chapter to which the Administrator is a party. Unless the Attorney General notifies the Administrator within a reasonable time, that he will appear in a civil action, attorneys who are officers or employees of the Environmental Protection Agency shall appear and represent the United States in such action.").

Although not determinative, it is worth noting here that the Attorney General also appears to believe that a subsection (b)(7) civil penalty is not within the DOJ's jurisdiction for purposes of the Inflation Adjustment Act. In 1999, the Attorney General issued a final rule that adjusted certain penalties under the Inflation Adjustment Act. *See* AG Order No. 2249-99, 64 Fed. Reg. 47099 (Aug. 30, 1999). The rulemaking stated that it "fulfill[ed] the Attorney General's obligations under the [Inflation Adjustment] Act with respect to all civil monetary penalties, except those pertaining to [Executive Office for Immigration Review]." *Id.* at 47100. The CWA's civil penalties were not

among the penalties adjusted by the Attorney General. The rulemaking further stated that "[t]he Department's litigating components bring suit to collect various civil monetary penalties of other agencies as well. The reader should consult the regulations of those other agencies for any inflation adjustments of their penalties." *Id.*

BPXP presents the alternative argument that the EPA's regulation is procedurally defective because it did not follow the notice and comment procedure typically required under the Administrative Procedure Act, 5 U.S.C. § 553. The Court finds, however, that such procedure was unnecessary. The Administrative Procedure Act does not require notice and comment when "the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B). The mere technical implementation of a statute makes notice and comment unnecessary. *See United States v. Garner*, 767 F.2d 104, 120 n.24 (5th Cir. 1985). Notice and comment is unnecessary when Congress requires an agency to perform a nondiscretionary act. *See Metzenbaum v. Federal Energy Regulatory Comm'n*, 675 F.2d 1282, 1291 (D.C. Cir. 1982).

The Inflation Adjustment Act required agencies to issue regulations promulgating inflation adjustments every four years. More than four years had passed between the time the EPA adjusted the subsection (b)(7) penalty to $4,300 (2004) and its previous adjustment (1997). The Inflation Adjustment Act also provided a detailed formula for calculating these adjustments. Thus, the EPA had no discretion—it was required by Congress to adjust the penalty according to the formula. As a result, the usual notice and comment procedure was unnecessary in this instance. BPXP's arguments to the contrary are not persuasive. The Court does not address the United States'

alternative argument that the EPA performed notice and comment even though the procedure was not required.

### Conclusion

For the reasons above, the Court finds that the EPA's regulation, 40 C.F.R. § 19.4 (2010), adjusting the civil penalty in 33 U.S.C. § 1321(b)(7)(D) is valid and that the maximum CWA civil penalty that may be imposed against BPXP is $4,300 per barrel of oil discharged. For similar reasons, the Court finds that the highest maximum civil penalty that may be imposed against Anadarko Petroleum Corporation under 33 U.S.C. § 1321(b)(7)(A) is $1,100 per barrel.[4] In light of these conclusions and the fact that the parties agree that the Coast Guard incorrectly adjusted the CWA civil penalty, the Court does not address whether the penalties in subsection (b)(7) were also within the Coast Guard's jurisdiction for purposes of the Inflation Adjustment Act.

Accordingly,

IT IS ORDERED that the United States' motion (Rec. Doc. 13654) is GRANTED and BPXP's motion (Rec. Doc. 13666) is DENIED.

Signed in New Orleans, Louisiana, this 19th day of February, 2015.

_____
United States District Court

---

[4] As mentioned in footnote 1 and discussed in footnote 3, Anadarko partially joined in BPXP's motion.