UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION "J" |
| | * | |
| Applies to: | * | JUDGE BARBIER |
| | * | |
| No. 12-970 | * | MAGISTRATE SHUSHAN |
| | * | |

## ORDER
[Concerning the Special Master's Report of September 6, 2013; Imposing Certain Sanctions]

On July 2, 2013, the Court appointed Louis J. Freeh as a Special Master, pursuant to Rule 53 Federal Rules of Civil Procedure and the inherent authority of the Court, to perform an independent investigation into allegations of misconduct within the Court Supervised Settlement Program ("CSSP"). Specifically, Mr. Freeh was given three mandates: (1) perform an independent external investigation into the facts and circumstances that led to the resignation of Lionel H. Sutton III, a former staff attorney employed by the CSSP; (2) conduct fact-finding as to any other possible ethical violations or misconduct within the CSSP; and, (3) examine and evaluate the internal compliance program and anti-corruption controls within the CSSP, and make any necessary recommendations to design and implement additional controls, policies, procedures and practices to ensure the integrity of the CSSP.

Special Master Freeh completed his investigation as it pertains to the first and second mandates and, on September 6, 2013, submitted his initial report to the Court. The report was filed into the public record of this case. (Rec. Doc. 11287) Upon receipt of the Special Master's report, the Court ordered that Lionel Sutton, Christine Reitano, Jon Andry, Glen Lerner, and any associated law firms, show cause why the Court should not adopt the following findings and recommendations

of the Special Master:

(a)  Disallowing The Andry Law Firm's claim under the Unclean Hands Doctrine;

(b)  Disqualifying Attorneys Lionel Sutton, Christine Reitano, Glen Lerner, and Jon Andry, as well as any associated law firms, from representing CSSP claimants (or collecting fees from such claimants) under the Unclean Hands Doctrine. (Rec. Doc. 11288)

Pursuant to Rule 53(f), these parties were ordered to file their response, or any objection or motion, with supporting memorandum, within 14 days.  At the request of the show cause parties, this deadline was extended several times.  Eventually the parties filed extensive briefs, with supporting documentation, and the Special Master filed a response.  After ruling on several procedural and jurisdictional objections and motions, and at the request of the show cause parties, the Court conducted an evidentiary hearing on November 7, 2014.  At this hearing, the Court heard sworn testimony and also received additional evidence submitted by the parties.

At the conclusion of the evidentiary hearing, the Court gave oral reasons on the record and made the following findings:

1. <u>Lionel Sutton</u>, a former attorney working in the CSSP, violated the CSSP code of conduct and several canons of ethics, including (a) failing to disclose obvious conflicts of interest; (b) making several false statements during the investigation, including false statements to the Claims Administrator and to David Welker, the in-house fraud investigator; (c) failing to disclose his financial interest in two claims pending before the CSSP; (d) failing to disclose his business relationship with Glen Lerner; (e) failing to disclose his partial ownership of a company with a significant claim in the CSSP; (f) requesting and receiving approximately $40,000 in referral fees from the AndryLerner law firm in connection with the Casey Thonn claims; (g) employing deceptive

2

and circuitous methods in an attempt to hide the true nature and source of the referral fees.

    2. <u>Jon Andry</u>, an attorney and partner in the AndryLerner law firm, violated the canons of ethics in several respects. Andry knew it was improper to pay a referral fee to Lionel Sutton while Sutton was employed as an attorney in the CSSP. While attempting to wash his hands of the matter, Andry in fact aided and facilitated the payment of the improper referral fees to Lionel Sutton by routing the money to his law partner Glen Lerner's office in Las Vegas, knowing full well that Lerner would use this money to pay Sutton. Still more troubling is Jon Andry's conduct and false statements during the investigation. When initially questioned by Michael Juneau of the Claims Administrator's staff, Andry flatly denied knowledge of any payments to Lionel Sutton. Later, when questioned under oath by the Special Master on July 30, 2013, Jon Andry made several statements that were inaccurate or untrue. Specifically, Andry denied that Sutton had any interest in AndryLerner's cases. Andry stated to the Special Master, "I never had any idea about payments to Sutton until recently," and he claimed that he did not know anything about the fees being paid to Sutton "until all this broke out publicly." Based on the emails and other evidence submitted, these statements were obviously false, as Andry knew that Lerner intended to pay Sutton with the same monies that Andry sent to Lerner in Las Vegas.

    3. <u>Glen Lerner</u> is an attorney licensed in Nevada and a partner with Jon Andry in the AndryLerner law firm, which represents hundreds of economic claimants in the CSSP. Lerner knew that it was improper to pay referral fees to a lawyer working inside the CSSP while his firm, AndryLerner, was representing hundreds of claimants in the settlement program. Lerner also knew, or certainly should have known, that it was a conflict of interest for him to be a business partner of Lionel Sutton in a company called Crown, LLC, and to be making substantial monthly payments to

Sutton while, again, he was seeking Sutton's help in getting his claims paid. Lerner also knew that his business partner's wife, Christine Reitano, was also an attorney employed by the CSSP. Lerner's only defense is that "I just asked Mr. Sutton if it was a conflict of interest and he said no, so I thought it was okay." Lerner cannot escape his own responsibility for his ethical lapse by not inquiring further.

Lionel Sutton and Jon Andry are attorneys licensed in Louisiana and subject to the Louisiana Rules of Professional Conduct. Although Glen Lerner is licensed in Nevada and subject to attorney discipline in that state, he is also a partner in the AndryLerner law firm, which was established specifically to represent claimants in the CSSP. As such, Lerner subjected himself to the jurisdiction of this Court.[1]

This Court has adopted and applies the Louisiana Rules of Professional Conduct. As more fully explained in the Court's oral reasons stated in open court at the conclusion of the evidentiary hearing, the Court finds that Sutton, Andry, and Lerner violated Rule 1.5(e) regarding the division of fees between lawyers who are not in the same firm. Likewise, Sutton and Andry violated Rule 3.3 by making false statements during the course of the Special Master's investigation. Sutton, Andry, and Lerner violated Rule 8.4(c) by engaging in conduct involving dishonesty, deceit and misrepresentation, and Rule 8.4(a) by assisting each other in violating the Rules of Professional Conduct. Each of these attorneys engaged in conduct that caused damage to the integrity of the CSSP and was prejudicial to the administration of justice, a violation of Rule 8.4(d).

---

[1] *See, e.g.*, Settlement Agreement § 18.1 (Rec. Doc. 6430-1) (stating, *inter alia*, that the Court retains continuing and exclusive jurisdiction over the administration, implementation, and enforcement of the Settlement and over each class member ***and their counsel*** for any suit, action, proceeding, or dispute arising out of or relating to the Settlement); *see also* Pretrial Order No. 1 (Third Amendment) (Rec. Doc. 7812) (noting the Court's disciplinary jurisdiction over attorneys appearing *pro hac vice* in MDL 2179).

However, it should also be noted that the Court found that the misconduct of the above individuals did not cause or result in any corruption of the claim evaluation process. The Court also found that no claim represented by Jon Andry, Glen Lerner, or the AndryLerner firm was expedited in a significant way.

4.  With respect to <u>Christine Reitano</u>, the Court finds that there is not clear and convincing evidence to support a finding of unethical conduct. No sanctions are imposed on Reitano.

5.  With respect to the separate <u>Andry Law Firm</u> claim, the Court finds there is no evidence to support a finding that this particular claim should be denied because of fraud or "unclean hands." The evidence shows that this claim was handled in accordance with the program guidelines and was not expedited or improperly evaluated in any way. As to this particular claim, the Court lifts the stay and instructs the Claims Administrator to process the claim in accordance with its applicable rules and policies.

**SANCTIONS**

For the above reasons and for reasons stated orally on November 7, 2014 (Rec. Doc. 13675 at 241-264), the Court imposes the following sanctions:

1.  Lionel Sutton, Jon Andry, and Glen Lerner are disqualified from participating in the CSSP. These attorneys shall not represent any claimants in the program, shall withdraw from any current representations, and may not collect attorneys' fees in connection with the settlement program, except as follows: The AndryLerner law firm will be allowed to collect fees for previous legal work actually performed on legitimate claims that qualify for payments from the CSSP. Any legal fees collected in connection with claims that are deemed to be fraudulent shall be disgorged or reimbursed to the CSSP. The Claims Administrator shall deduct and retain any amounts owed

5

by AndryLerner, Jon Andry, or Glen Lerner from the escrowed fees presently being held. The remaining escrowed fees shall not be released to AndryLerner, Jon Andry, or Glen Lerner until all remaining AndryLerner claims have been resolved and the Court orders the release of the remaining fees.

2. The Special Master shall report this matter to the appropriate disciplinary authorities in Louisiana and in Nevada. Additionally, the Special Master shall file a report or complaint to the Chief Judge of the Eastern District of Louisiana and the court's disciplinary committee. In connection with such reports, the Special Master shall furnish the entire record in this matter, including the Special Master's report, documentary evidence, the official transcript of the evidentiary hearing and any evidence adduced at said hearing, and a copy of this Order imposing sanctions.

New Orleans, Louisiana, this 26th day of February, 2015.

_____
United States District Judge