UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | Mag. Judge Shushan |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

MEMORANDUM IN SUPPORT OF
MOTION OF THE DHECC FOR RETURN OF
PAYMENTS MADE TO VERNON ALFONSO, JR. AND OTHERS

On behalf of the Deepwater Horizon Economic Claims Center ("DHECC"), Claims Administrator Patrick Juneau and Special Master Louis J. Freeh seek to have claimant Vernon Alfonso, Jr. ("Alfonso") return $187,795.87 paid by the DHECC.  Alfonso told the DHECC that 2009 revenue from a family boat rental business was shrimping income. Relying on these misrepresentations, the DHECC paid Alfonso $187,795.87 for his claims. When Alfonso was confronted with his misrepresentations, he said under oath that he did not work for or receive income from the family business in 2009.  But Alfonso's banking records clearly show that he received $22,250 from the family business in 2009.

The DHECC seeks a judgment requiring Alfonso to return the payments to the DHECC and prohibiting Alfonso from participating in any further seafood distributions. Any professional who benefitted from these unjustified payments similarly should return such payments. The DHECC also seeks the recovery of costs incurred to obtain transcripts of testimony necessary to the investigation of Alfonso's fraud.

Communications with Alfonso's counsel to attempt to resolve the issues presented in this motion have not resulted in an agreement.

### A. *Background*

In an order of September 6, 2013, the Court directed the Special Master to examine past claims submitted to the DHECC, and to initiate clawback proceedings of fraudulent claims. This Court retains continuing jurisdiction over the Settlement Agreement. *See* Settlement Agreement at ¶¶ 4.3.2, 4.3.10, 4.4.7 and 18.1. Disputes concerning enforcement of the Settlement Agreement are to be resolved by motion to the Court. *Id*. at ¶ 18.1.

### B. *Alfonso's DHECC Claims*

On July 18, 2012, Alfonso filed shrimp vessel owner and shrimp boat captain claims with the DHECC, seeking recovery under the expedited compensation method and asking the DHECC to determine his claim using his tax returns, with 2009 as his benchmark year.

The expedited compensation method determines a shrimping claim's value from set figures based upon the claimant's shrimp vessel size and the "qualifying vessel revenue." Because Alfonso claimed a 37-foot ice vessel, he needed at least $40,000 in shrimping revenue to receive the enhanced recoveries of $135,281 for a shrimp vessel owner claim and $107,250 for a shrimp boat captain claim. If he did not meet the threshold, his compensation would be determined using other seafood claim compensation methods.

    1.    Seafood Income Documentation

Alfonso filed a claim with the Gulf Coast Claims Facility ("GCCF"), and supported this claim with a 2009 Form 1040 that had attached a single Schedule C reporting gross receipts of $73,064 from work as a "commercial fisherman & construction." *See* Ex. A. A tax preparer did sign the form next to a typewritten "2/19/2010." *Id.*

When Alfonso refiled his claims with the DHECC, he submitted a different version of the 2009 Form 1040 bearing the preparer's signature with "2/19/2010" handwritten in

the "date" box.  *See* Ex. B.  This version of the form has two Schedule C's, one reporting $46,434 in gross receipts from Alfonso's business as a "commercial fisherman" and the other reporting $26,630 from his "construction" business.  *Id*.  Alfonso filed with the DHECC a June 11, 2012 note, explaining that Alfonso spoke with his tax accountant and "she separated my shrimping and construction income on my schedule C Forms."  *See* Ex. C.

On August 16, 2012, Alfonso submitted a Sworn Written Statement for Sufficient Documentation of Benchmark Revenue ("SWS-1") stating that he landed $46,434 in shrimp in the Gulf Coast Areas in 2009.  *See* Ex. D.  According to the Louisiana Department of Wildlife and Fisheries trip ticket database, Alfonso had $24,448.65 in 2009 shrimp sales.

2. DHECC Payments

Relying on the information Alfonso submitted, the DHECC found Alfonso eligible for payments under the expedited compensation method of $107,250 for his shrimp boat claim and $135,281 for his shrimp vessel owner claim.  On March 14, 2013, the DHECC paid Alfonso $107,250.00 for his shrimp boat captain claim and $80,545.87 for his shrimp vessel owner claim (after an offset for prior spill-related payments).  On information and belief, Alfonso's counsel, the law firms of Faegre Baker Daniels LLP and the Kreller Law Firm, received $46,948.96 from the claims, pursuant to a contingent fee agreement.

C. ***Evidence of Alfonso's Fraudulent Claims***

The totality of the record shows there is no genuine issue as to any material fact and that the DHECC is entitled to a judgment as a matter of law.  *See* Order & Reasons on Special Master's Motion for Return of Payment at 19 (Doc. Rec. 12794) ("Order & Reasons").

1. <u>Alfonso Presented Fraudulent Tax Documents to the DHECC</u>

The 2009 Form 1040 Alfonso filed with the GCCF had one Schedule C showing $73,064 in gross income without specifying the portion of income attributable to shrimping. *See* Ex. A. Before filing his DHECC claim, Alfonso instructed his tax accountant to prepare a new version of the 2009 Form 1040 with two separate Schedule C's, dividing the $73,064 in income shown on the original schedule into a portion for construction ($26,630) and a portion for commercial fishing ($46,434) — sufficient shrimping revenue to satisfy the expedited compensation threshold. The tax accountant purportedly signed and back-dated the new form. *See* Ex. B at 2. The tax accountant explained that the gross receipts reflected in the two new Schedule C's totaled the same $73,064 as in Alfonso's original Schedule C, thus having no impact on Alfonso's tax obligation. *See* Ex. E at 29; 88-89;106-109.

Records from Alfonso's tax accountant, however, do not support the division of revenue shown on the revised Schedule C's. These records include a 2009 revenue schedule reflecting the components of Alfonso's "Gross Receipts or Sales" for use in reporting revenue on Line 1 of the original Schedule C. These records show that Alfonso's gross receipts came from <u>three</u> sources, not two as indicated on the revised Schedule C's, as follows:

| | |
|---|---|
| "Fishing" | $24,184 |
| "Frank & Son" | $22,250 |
| "R&M Construction of Louisiana, Inc." | <u>$26,630</u> |
| TOTAL | $73,064 |

*See* Ex. F at 20. The $24,184 in "fishing" revenue listed on the revenue schedule is within $300 of the fishing revenue reflected on Alfonso's 2009 trip tickets. This "fishing" revenue is well below the $40,000 threshold for the expedited compensation method.

"Frank & Son" is a boat rental business in St. Bernard Parish that pilots vessels for seismographic work and rig movements. The business is owned by Frank Lopez, who is Alfonso's uncle. Alfonso's tax accountant said that Alfonso piloted boats for "Frank & Son," which was also her client along with other Alfonso family members.

On November 4, 2014, investigators met with Frank Lopez, the retired owner of Frank & Son Boat Rental. Lopez said Frank & Son is a boat rental business, and does not purchase any seafood. Lopez also said he had hired Alfonso for work in the past, but could not confirm if Alfonso worked for him in 2009.

    2.    <u>Alfonso's Statements to the Special Master</u>

In December 2014, the Special Master notified Alfonso's counsel that Alfonso's DHECC claim included non-shrimping revenue. The Special Master gave Alfonso's counsel an opportunity to provide any relevant information that may explain this issue. Alfonso denied that he had received 2009 revenue from Frank & Son, and denied knowledge of the tax accountant's schedule showing he had $22,250 in 2009 revenue from Frank & Son.

The Special Master took sworn interviews of Alfonso and the tax accountant. Under oath, Alfonso said he did not work for or receive any income from Frank & Son in 2009. *See* Ex. G at 120-123, 127, 194-195. He also said he provided his tax accountant with the amounts of his "total income" for 2009, but was unaware of how revenue from Frank & Son came to be included on the schedule prepared by the tax accountant. *Id.* at 121-23, 194-197. The tax accountant said the 2009 income information, including the revenue from Frank & Son, would have come from Alfonso or his wife, who come to her office together. *See* Exhibit E at 117-120. The tax accountant said "the figure from Frank & Son had to come from the Alfonsos. I don't make up any figure and put it in the tax return." *Id*. at 59.

3. <u>Payments from Frank & Son on Alfonso's 2009 Bank Records</u>

With Alfonso's consent, the Special Master obtained copies of deposited items from Alfonso's bank accounts. In 2009, Alfonso deposited three checks from Frank & Son payable to "Vernon Alfonso" totaling $22,250 — the same amount shown on the tax accountant's 2009 schedule — as follows, and as shown at Exhibit H:

| Check Date | Amount |
|---|---|
| 1-19-2009 | $10,000.00 |
| 4-9-2009 | $ 3,250.00 |
| 9-11-2009 | $ 9,000.00 |
| TOTAL | $22,250.00 |

Alfonso's bank records generally conform to other revenue figures contained on his tax accountant's 2009 records. For example, the bank records reflect 2009 deposits of checks totaling $26,630 from R&M Construction. The tax accountant's 2009 revenue schedule listed the same revenue from this source. *See* Ex. F.

### D. *Legal Analysis*

1. Alfonso Should Return All Funds Received
   <u>from the DHECC on His Fraudulent Claims</u>

The Court's power to order equitable remedies as a result of fraudulent conduct is a broad, flexible and long-standing power. *See Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 244 (1944) (affirming judicial power to set aside fraudulently begotten judgments as such cases present "a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society"); Order & Reasons at 21.

Here, Alfonso misrepresented the extent of his shrimping revenue so as to meet the expedited compensation method revenue threshold. Alfonso had new 2009 Schedule C's

prepared to support his shrimping revenue claim, yet he included non-seafood revenue from his work at Frank & Son on the new documents and on his SWS-1.

Alfonso also lied under oath by denying that he had worked for Frank & Son in 2009 or received any income from the company that year. Alfonso's bank records show that he received $22,250 in 2009 from Frank & Son, exactly as indicated in the 2009 revenue schedule in the tax accountant's file. The accuracy of the tax accountant's revenue schedule is further corroborated by the "fishing" revenue listed on the schedule, which is within $300 of the fishing revenue reflected on Alfonso's 2009 trip tickets, as well as the R&M Construction revenue, which is the same as the bank deposits from this company.

Taken together, these factors demonstrate that Alfonso's shrimping claims were fraudulent. Alfonso should be required to return the payments from these claims so as to make the DHECC whole, deprive Alfonso of an unjust enrichment and deter others from similar misconduct. *See* Order & Reasons at 22.

    2.    <u>Alfonso Is Not Entitled to Any Funds from the DHECC</u>

After being advised of the Special Master's position concerning his claims, Alfonso's counsel said that Alfonso was overpaid as a result of a mistake rather than an intentional misrepresentation. *See* Ex. I. Alfonso proposed to have the DHECC recalculate his claim using 2009 Louisiana trip tickets. *Id*. Under these facts, Alfonso's proposal is not sufficient to redress Alfonso's intentional misrepresentations that induced payment from the DHECC.

An intentional misrepresentation may be demonstrated where a party making a representation knew that he lacked adequate basis for the assertion but nonetheless stated the assertion as fact. *See* Restatement (Second) of Torts § 526 & cmt. c (1977); *In re Mercer*, 246 F.3d 391, 407-08 (5th Cir. 2001). Here, Alfonso knew that he worked for Frank & Son

in 2009, and the revenue summary for his taxes exactly matched the 2009 bank deposits he made for Frank & Son payments. In June 2012, before filing his claim, Alfonso had his accountant find check records from "Frank and Son Boat Rentals" to support other parts of his claim. *See* Ex. C. He submitted five checks from Frank & Son to the DHECC, thus demonstrating his ability to obtain information about payments from this entity with minimal effort. *Id*. Nonetheless, Alfonso swore before the DHECC that he had shrimping revenue of $46,434, despite nearly half of that revenue coming from Frank & Son.

Alfonso's counsel also misstates a key fact to support his allegation of a mistake. Counsel states that Alfonso "does not dispute … that the amended Schedule C mistakenly included nonfishing income he received from Frank & Sons [sic]." *Id*. But in his sworn testimony, Alfonso denied having worked for or received any pay from Frank & Son in 2009. *See* Ex. G. at 123, 127, 194. *See United States v. Urban*, 404 F.3d 754, 782 (3d Cir. 2005) (false grand jury testimony on material fact properly admitted as affirmative evidence of guilt).

The DHECC accepted Alfonso's representations and paid him on his shrimping claims. Now that his fraud has been discovered, any attempt by Alfonso to disavow his prior statements and claim instead that the DHECC should pay him based on a different portion of his 2009 income should be rejected. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).

### 3. The Court Should Order the Return of All Funds Received by Professionals Who Assisted Alfonso to Submit False Claims

The professionals who helped Alfonso submit his claims also should return any payment received based on Alfonso's claims. *See* Order & Reasons at 26; *SEC v. Blatt*, 583 F.2d 1325, 1335-36 (5th Cir. 1978). Money paid by contingency fee arrangements may be

recouped through restitution where the client's judgment is reversed or voided. *See Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996); Order & Reasons at 22-23. Because no fee is due, retaining a payment made on a contingency fee contract under such circumstances would be an unjust enrichment. *Id*. at 24. Whether these professionals knew of the falsity of Alfonso's claim is immaterial to their duty to make restitution of sums that have been received as a result of this improper claim. Order & Reasons at 23; S*chock v. Nash*, 732 A.2d 217, 232-33 (Del. 1999).

Here, Alfonso's lawyers received a percentage of the awards paid to Alfonso for his seafood compensation claims based upon a contingency fee contract. The contingency fee would not have been payable to his lawyers if the DHECC had not paid Alfonso's fraudulent claim. The contingency fees should be returned to the DHECC.

    4.    <u>The DHECC Seeks Payment of Certain Costs from Alfonso</u>

The DHECC also moves for recovery of the costs incurred for obtaining the transcripts of the testimony of Alfonso and his tax accountant. Rule 54(d)(1) provides for an award of costs "to the prevailing party unless the court directs otherwise." Fed. R. Civ. P. 54(d)(1); *Offshore Marine Contrs., Inc. v. Palm Energy Offshore, L.L.C.*, No. 10-4151, 2014 U.S. Dist. LEXIS 135253, at *11 (E.D. La. May 27, 2014) ("Costs other than attorneys' fees shall be allowed as a matter of course to the prevailing party unless the court directs otherwise."). A party is a prevailing party if the party succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 707-08 (E.D. La. 2009).

A prevailing party may recover costs for transcripts "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Here, the sworn testimony of Alfonso's tax preparer and

Alfonso was necessary to rebut Alfonso's claim that he did not receive revenue from Frank & Son in 2009 or know the source of this revenue information provided to his tax preparer. The transcripts of the sworn testimony further helped the Special Master identify bank records that demonstrated Alfonso in fact received $22,250 from Frank & Son in 2009. *See Holmes ex rel Estates of Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994) (requiring some evidence of necessity to approve the taxation of costs).

An award of the costs of the transcripts is appropriate and satisfies the ends of justice under this circumstance.

### E.  *Conclusion*

For these reasons, the DHECC seeks entry of a judgment requiring Alfonso to make restitution to the DHECC for $187,795.87 paid by the DHECC in reliance on Alfonso's false representations and prohibiting Alfonso from participating in any further seafood distributions. All professionals who assisted Alfonso and benefitted from these unjustified payments similarly should be required to return these payments. The DHECC also seeks the recovery of costs incurred to obtain transcripts of testimony necessary to his investigation of Alfonso's fraud.

Respectfully submitted,

　　　/s/ Patrick Juneau　　　　
Patrick Juneau
Claims Administrator


　　　/s/ Louis J. Freeh　　　　
Louis J. Freeh
Special Master

Dated:   March 17, 2015