# FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT (this "Agreement") is made and entered into as of the 25th day of June 2009, by and among SUMMERPLACE, LLC, a Florida limited liability company ("Borrower"), J. DONALD BOGGUS, JR. and JENNIFER BOGGUS, both individual residents of the State of Georgia, and BARBARA STOKES and SCOTT STOKES, both individual residents of the State of Alabama (all four individuals, collectively, the "Guarantors"), and FIRST CITIZENS BANK OF GEORGIA, a Georgia banking corporation ("Lender").

## W I T N E S S E T H:

WHEREAS, Lender is the holder of a certain Real Estate Note dated July 30, 2007, made by Borrower to the order of Lender in the original principal amount of $7,500,000.00 (the "Note," and the indebtedness evidenced thereby, the "Loan");

WHEREAS, among the security for the Loan are certain real property and improvements thereon located on Summer Place Lane in Santa Rosa Beach, Walton County, Florida, and commonly known as Summer Place, a townhome development (the "Property"), which are encumbered pursuant to the terms of a certain Mortgage from Borrower to Lender dated July 30, 2007, recorded in O.R. Book 2769, Page 2176, in the public records of Walton County, Florida (the "Mortgage");

WHEREAS, with respect to the Loan, Guarantors executed those certain Guaranties in favor of Lender, of which the Guaranty executed by Jennifer Boggus is dated July 30, 2007, and the three Guaranties by the other Guarantors are each dated July 26, 2007 (collectively, the "Guaranties");

WHEREAS, Borrower has failed to comply with certain terms of the documents evidencing and securing the Loan (collectively, the "Loan Documents"), and Lender is entitled to declare a default thereunder, to accelerate and demand payment in full of the Loan, and to exercise all remedies available to it under the Loan Documents (collectively, "Lender's Remedies");

WHEREAS, Borrower has requested that Lender forbear from exercising Lender's Remedies; and

WHEREAS, Lender is willing so to forbear, subject to Borrower's compliance with the terms and conditions of this Forbearance Agreement in its entirety, including the making of the payments outlined below;

NOW, THEREFORE, for Ten Dollars ($10.00) and other valuable consideration in hand paid and the mutual covenants herein contained, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

AT:3474517v3



1.  <u>Acknowledgements of Borrower and Guarantors</u>. Borrower and Guarantors acknowledge and agree as follows:

(a)  The recital of facts set forth in the recital paragraphs immediately preceding this Paragraph 1 is true and correct in all respects and is incorporated as a full part of this agreement.

(b)  Events of default have occurred under the Loan and now exist by virtue of the recording, without the consent of Lender, that certain Mortgage from Borrower to West Coast Lending Group, Inc. recorded on March 11, 2008, in O.R. Book 2787, Page 1548, public records of Walton County, Florida, and that certain Claim of Lien in favor of Grant Builders Group, Inc. recorded in O.R. Book 2795, Page 4333, and Notice of Contest of Lien recorded in O.R. Book 2814, Page 1482, public records of Walton County, Florida (collectively, the "Unpermitted Liens").

(c)  Borrower and Guarantors restate and reaffirm every covenant, representation and warranty made by each of them respectively under the Loan Documents.

(d)  The Loan Documents are in full force and effect (subject to Lender's right to declare a default thereunder), enforceable in accordance with their terms, and have not been amended or modified.

(e)  Lender holds a first-priority mortgage lien and security interest in the Property.

(f)  Borrower currently continues to own, possess, operate and control the Property.

(g)  Lender has not assumed, and does not hereby assume control or operation of the Property directly or indirectly.

(h)  Borrower has not received any notice or information from any tax authority indicating an intent to levy, execute or foreclose upon the Property.

(i)  The entire agreement of the parties with respect to the Loan is incorporated in the Loan Documents and this Agreement, and such instruments supersede any prior or contemporaneous oral or written understandings to the contrary.

(j)  The terms and conditions of this Agreement and the Loan Documents, including, without limitation, the provisions for attorneys' fees and expenses, interest and finance charges, are commercially reasonable.

(k)  The benefits to Borrower and Guarantors of the transactions contemplated by this Agreement are direct, substantial and in the best interests of all of them.

(l)  Borrower and Guarantors understand their legal rights and obligations, are knowledgeable in financial matters, have had the opportunity to review this Agreement with their legal counsel, and have signed this Agreement freely and voluntarily and intend to be bound by it.



(m)   The individuals signing this Agreement on behalf of Borrower in a representative capacity are fully authorized to execute this Agreement on behalf of Borrower.

(n).   This Agreement is not being made or entered into with the actual intent to hinder, delay, or defraud any entity or person, and Borrower and Guarantors have not filed any petition for relief in bankruptcy or otherwise.

(o)   No action or proceeding, including, without limitation, a voluntary or involuntary petition for bankruptcy under any chapter of the Federal Bankruptcy Code, has been contemplated by, instituted by or threatened against Borrower or any Guarantor.

(p)   The execution of this Agreement by Borrower and Guarantors and the performance by Borrower and Guarantors of their obligations hereunder will not violate or result in a breach or constitute a default under any agreements to which any of them is a party.

(q)   To the best of Borrower's and Guarantors' knowledge, all information provided by Borrower and Guarantors to Lender prior to the date hereof, including, without limitation, all financial statements, balance sheets, and cash flow statements of Borrower and Guarantors were, at the date of such delivery, true and correct in all material respects. Borrower and Guarantors recognize and acknowledge that Lender is entering into this Agreement based in part on the information provided to Lender by Borrower and Guarantors and that the truth and correctness of that information is a material inducement to Lender in entering into this Agreement.

(r)   No litigation, investigation or governmental proceedings are pending or, to the knowledge of Borrower or Guarantors, are threatened against or affecting Borrower or Guarantors which might result in a material adverse change in the business, operation, or value of any assets of Borrower or any Guarantor.

(s)   Borrower and Guarantors acknowledge that the consideration received by each of them to enter into this Agreement and the arrangement contemplated herein is fair, reasonable, equitable, actual, and adequate.

2.   Forbearance. If and for so long as each of the Forbearance Conditions (as defined below) are satisfied, Lender agrees that it shall forbear from exercising Lender's Remedies from the date hereof through ~~September 30, 2009~~ (the "Forbearance Period"). Neither this Agreement nor Lender's forbearance hereunder shall be deemed to be a waiver of or a consent to any events of default which may have occurred under the Loan Documents or be deemed to have extended the maturity date of the Notes.   Oct 15, 2009 BJS MKV

3.   Conditions to Forbearance. Each of the following conditions shall constitute a condition to Lender's forbearance (a "Forbearance Condition") and each shall be satisfied as a condition to Lender's agreement to forbear pursuant to Paragraph 2 hereof:

(a)   Upon Lender's request, Borrower shall immediately permit Lender or Lender's designee access to the Property and any books and records pertaining thereto.

(b)     Borrower shall comply with all of the covenants and provisions of this Agreement and all Loan Documents.

(c)     Borrower shall neither cause nor permit the occurrence of any event of default under the Loan Documents.

(d)     Borrower shall comply in all respects with the budget for the completion of the Property and the operation, marketing and sale of the Property and the townhome units located thereon attached to this Agreement as Exhibit "A" and made a part hereof (the "Loan Budget").

(e)     In the event that the interest reserve estimated by Lender for the Loan shall become exhausted, Borrower and Guarantors shall cause all payments of interest thereafter due under the Loan to be promptly paid in full.

(f)     Borrower shall cause the construction of the Property and the furnishing of four units on the Property as approved by Lender to be completed in accordance with the Loan Budget not later than September 30, 2009. Oct 15, 2009, BJS x MM

(g)     Borrower shall cause the release of the Unpermitted Liens from the Property not later than September 30, 2009.

(h)     Borrower shall not permit any other lien or encumbrance to be filed against the Property or any other collateral for the Loan provided by Borrower or any Guarantor.

(i)     Borrower shall actively market the Property for sale at a price per unit which shall not exceed $550,000.00 for an unfurnished unit or $600,000.00 for a furnished unit without the prior written consent of Lender, and with the release price for the release of any townhome unit from the Mortgage being set by Lender from time to time in its sole discretion.

(j)     Borrower shall provide to Lender additional collateral as follows: (i) a second-priority security interest in 52,838 shares of Crescent Bank common stock owned by DJT Investments, LLLP, (ii) a second-priority security interest in 6,727 shares of Crescent Bank common stock owned by Happy Talk Trail Partners LLLP, (iii) a policy of insurance on the life of J. Donald Boggus, Jr. issued by Protective Life Insurance Company and owned by James Donald Boggus, Jr. Irrevocable Trust Insuring J. Donald Boggus, and (iv) a second-priority deed to secure debt upon approximately 74 acres of land located in Pickens County, Georgia, owned by J. Donald Boggus, Jr. and Jennifer Boggus (the "Pickens County Land").

(k)     Borrower shall cause Lender to be provided with an estoppel certificate, in form and substance satisfactory to Lender, from Jasper Banking Company concerning its deed to secure debt encumbering the Pickens County Land.

4.     <u>Termination of Forbearance Agreement</u>. Lender's agreement to forbear from exercising its remedies during the Forbearance Period shall terminate on the earliest to occur of:

(a)     Borrower's failure to satisfy any of the Forbearance Conditions;

    (b)    Lender's exercise of any of Lender's Remedies;

    (c)    The appointment of a receiver for the Property;

    (d)    The filing of voluntary or involuntary bankruptcy proceeding by or against Borrower or any Guarantor;

    (e)    The issuance of any notice by a tax authority that it intends to levy, execute or foreclose upon the Property.

Upon such termination, Lender shall have the right immediately to exercise any of Lender's Remedies. Borrower hereby waives any rights it may have under the Loan Documents to receive any notice of default under the Loan and also waives any right to receive a notice of the termination of the Forbearance Period. Furthermore, upon such termination and the request of Lender, Borrower shall promptly surrender to Lender all collateral for the Loan which shall not have been liquidated or which Lender does not intend to liquidate, and Borrower and Guarantors shall then assume full responsibility for the complete repayment of any portion of the Loan remaining unpaid after the liquidation or surrender of all collateral for the Loan.

    5.    Notices. All notices, remittances, reports or other correspondence required to be given pursuant to the terms of this Agreement shall be given as follows:

    If to Lender:

    First Citizens Bank of Georgia
    70 Carlisle Road
    Dawsonville, Georgia  30534
    Attention:  Michael T. Underwood, Executive Vice President

    If to Borrower:

    Summerplace, LLC
    4800 Whitesburg Drive, Suite 30-351
    Huntsville, Alabama  35802
    Attention:  Barbara Stokes

    with a copy to:

    J. Donald Boggus, Jr.

    If to Guarantors, as follows:

    J. Donald Boggus, Jr.



Jennifer Boggus

Barbara Stokes
4800 Whitesburg Drive, Suite 30-351
Huntsville, Alabama 35802

Scott Stokes
4800 Whitesburg Drive, Suite 30-351
Huntsville, Alabama 35802

6.      Waiver and Release. In consideration of the forbearance granted herein and other valuable consideration, Borrower and all Guarantors each hereby waive, remise, release and forever discharge Lender and Lender's officers, employees, agents, representatives, accountants, attorneys, successors or assigns of and from any and all past and present claims, actions, causes of action, suits, proceedings, agreements, contracts, judgments, damages, accounts, reckonings, executions, claims and liabilities whatsoever of every name and nature, whether known or unknown, whether or not well founded in fact or in law, and whether in law or equity or otherwise, which Borrower and any Guarantor each ever had or now has for or by reason of any matter, cause, or anything whatsoever from the beginning of the world to this date relating to or arising out of the Loan Documents, this Agreement, or the enforcement of any of Lender's rights thereunder.

7.      Indemnification. Borrower and Guarantors hereby agree to defend, indemnify, and hold Lender harmless from and against any and all claims, demands, actions, or causes of action of any third party against Lender in connection with or as a result of entering into this Agreement or any instrument or document executed in connection herewith (including, without limitation, all losses, damages, liabilities, costs, including reasonable attorneys' fees, and expenses whatsoever incurred or sustained by Lender in connection therewith), except to the extent caused by the gross negligence or willful misconduct of Lender. Without limitation of the generality of the foregoing, Borrower and Guarantors agree to defend, indemnify, and hold Lender harmless from and against any and all recording, documentary stamp, intangibles and other taxes, if any, imposed upon Lender by virtue of the execution and delivery of this Agreement or any instrument or document executed in connection herewith, including, without limitation, all penalties, interest, and reasonable attorneys' fees incurred by Lender in connection therewith. The provisions of this Paragraph shall survive the repayment of the Loan and the satisfaction of the Loan Documents, and shall continue for so long as a claim may be asserted by any third party.

8.      Miscellaneous. This Agreement may not be modified, altered or amended except by an agreement in writing signed by all of the parties hereto. This Agreement and the Loan Documents embody the entire understanding and agreement between and among the parties with respect to the subject matter hereof and thereof and supersede all prior agreements, understandings and inducements, whether express or implied, oral or written. No person other than the signatories hereto shall be authorized to rely upon the contents of this Agreement or be deemed a beneficiary thereof. This Agreement may be executed in one or more counterparts, each of which shall constitute an original but all of which together shall constitute one and the



same instrument. This Agreement shall be effective when accepted by Lender (notice of which acceptance is hereby waived by Borrower and Guarantors). Time is of the essence of this Agreement. None of the Loan Documents nor this Agreement shall be construed against its drafter.

9.  Novation, etc. This Agreement is not intended to be, nor shall it be construed to create, a novation or accord and satisfaction, and except as otherwise expressly stated herein, the Loan Documents shall remain in full force and effect. Nothing herein shall be deemed to constitute a waiver of any event of default in existence on the date hereof under any of the Loan Documents. Notwithstanding any prior mutual temporary disregard of any of the terms of any of the Loan Documents, the parties agree that the terms of each of the Loan Documents shall be strictly adhered to on and after the date hereof, except as expressly modified or suspended by this Agreement. Each Guarantor further acknowledges and ratifies the terms of his or her Guaranty in favor of Lender. Lender shall continue to demand strict compliance with the terms of this Agreement and the Loan Documents.

10.  Waiver of Stay. Any bankruptcy, reorganization or receivership proceeding commenced by Borrower or any Guarantors will be an event of default under this Agreement, leading to a termination of the Forbearance Period as provided in Paragraph 4 above, and such proceeding shall be deemed to have been commenced in "bad faith." The parties irrevocably agree that Lender shall be entitled to immediate relief from the automatic stay for cause under 11 U.S.C. § 362 with respect to the Property in any such proceeding.

11.  Attorneys' Fees and Expenses: Borrower and Guarantors hereby acknowledge and agree that (i) all attorneys' fees and expenses incurred by Lender in connection with this Agreement, together with any such fees and expenses incurred in connection with any dispute hereunder or any legal proceedings whatsoever to determine the rights of the parties hereunder or under the Loan Documents, are incurred pursuant to the attorneys' fees provisions of the Loan Documents; and (ii) all such fees and expenses therefore constitute a portion of the Loan secured by the Loan Documents and subject to repayment in accordance with the Loan Documents.

12.  Termination if Bankruptcy Filing. If, prior to the time of expiration of the Forbearance Period, Borrower or any Guarantor voluntarily or involuntarily files for protection from creditors under the bankruptcy or receivership provisions of any state or federal statute, then the terms of this Agreement requiring Lender to forbear against collecting the Loan shall immediately expire and shall be of no further force and effect. Nonetheless, any terms of this Agreement that operate to modify and amend the Loan Documents shall remain in full force and effect whether or not a bankruptcy is filed.

13.  Representation. In executing this Agreement, each of the parties hereto represents, warrants and certifies that it has received independent legal counsel and advice from its respective attorneys with regard to the facts involved in connection with the controversies set forth in this Agreement and subject matter hereof, and with regard to the rights or asserted rights arising out of said controversies, if any. In accepting the consideration referred to herein and in executing and delivering this Agreement, each of the parties does so with the full knowledge of any and all rights which each now has or, in the future, may have in connection with the aforementioned controversies, if any. This Agreement shall not be construed against the drafter.

Borrower and Guarantors have read and fully understand this Agreement, and they acknowledge that they are knowledgeable in financial matters.

14.    Choice of Law. Borrowers and Guarantors acknowledge and agree that this Agreement, will be governed by the laws of the State of Georgia, without regard to its conflicts of laws provisions. The parties further hereby consent to the exclusive jurisdiction of the state and federal courts located in Dawson County, Georgia, for the resolution of any disputes arising out of this Agreement and any other agreements incorporated herein.

15.    Due Authority. Borrower and Guarantors hereby represent, warrant and certify to Lender that all individuals executing this Forbearance Agreement have all due authority to execute this Forbearance Agreement, to perform all obligations required of Borrower and Guarantors hereunder, and that all requisite resolutions and authority have been obtained.

16.    One-Time Forbearance. This is a one-time forbearance, and Lender does not intend to forbear beyond the Forbearance Period. Borrower and Guarantors should not expect similar arrangements on other transactions with Borrower and Guarantors. In the event any of the Forbearance Conditions are not met in a timely fashion, Lender's obligation to forbear shall terminate and be null and void, and Lender shall be entitled to exercise any of Lender's Remedies. Except for the limited forbearance set forth above, Lender reserves all of its rights and remedies under the Loan Documents and under applicable law, and this Forbearance Agreement shall not be deemed an election of remedies, nor shall it constitute a waiver of any rights or remedies otherwise available to Lender. If any terms in the Loan Documents are in conflict with any terms in this Forbearance Agreement, then the terms of this Forbearance Agreement shall control.

(Signatures on following pages.)



IN WITNESS WHEREOF, the parties hereto have caused this Forbearance Agreement to be duly executed and delivered on the date first written above.

**BORROWER:**

SUMMERPLACE, LLC, a Florida limited liability company

By: _____ (SEAL)
J. Donald Boggus, Jr., Manager

By: _____ (SEAL)
Barbara Stokes, Manager

**GUARANTORS:**

_____ (SEAL)
J. Donald Boggus, Jr.

_____ (SEAL)
Jennifer Boggus

_____ (SEAL)
Barbara Stokes

_____ (SEAL)
Scott Stokes

**LENDER:**

FIRST CITIZENS BANK OF GEORGIA, a Georgia banking corporation

By: _____
Michael T. Underwood
Executive Vice President

(BANK SEAL)

## EXHIBIT "A"

| Description of Activity | Draw Schedule | Remaining to be Completed |
|---|---|---|
| Preconstruction draw- | 4% | $33,473.48 |
| Permits | 2% | $16,736.74 |
| Utilities - Deposit plus 4 months | 2% | $16,736.74 |
| Trash clean up/removal | 1% | $8,368.37 |
| Roof decking -- Repair/recoat | 1% | $8,368.37 |
| Roof Railing System | 1% | $8,368.37 |
| Sophit, cornice and gables | 1% | $8,368.37 |
| Exterior siding-replace loose damage boards | 1% | $8,368.37 |
| Windows and exterior doors | 2% | $16,736.74 |
| Heating & A/C duct | 1% | $8,368.37 |
| Plumbing rough in and stack out | 1% | $8,368.37 |
| Plumbing fixtures | 2% | $16,736.74 |
| Bathroom Mirrors | 1% | $8,368.37 |
| Wiring rough in | 1% | $8,368.37 |
| Exterior primed and caulked | 1% | $8,368.37 |
| Sheetrock Touchup/water repair | 4% | $33,473.48 |
| Cabinets | 15% | $125,525.55 |
| Granite | 9% | $75,315.33 |
| Spiral Stair Case | 3% | $25,105.11 |
| Interior Stair Case | 2% | $16,736.74 |
| Interior trim/including stairs | 2% | $16,736.74 |
| Interior paint | 4% | $33,473.48 |
| Interior Hand Rails | 2% | $16,736.74 |
| Exterior paint | 1% | $8,368.37 |
| Electrical fixtures | 1% | $8,368.37 |
| Appliances | 10% | $83,683.70 |
| HVAC Replacements and final | 2% | $16,736.74 |
| Fire Suppression System | 3% | $25,105.11 |
| Interior Closets | 1% | $8,368.37 |
| Interior Doors | 2% | $16,736.74 |
| Tile repair and replacement | 1% | $8,368.37 |
| Brick pavers | 1% | $8,368.37 |
| Landscaping | 4% | $33,473.48 |
| Floor coverings- resurface/water damage | 3% | $25,105.11 |
| Final draw -- Clean up / Punch List | 8% | $66,946.96 |
| | 100% | $836,837.00 |

# CONSTRUCTION AGREEMENT

## PROJECT

Summer Place (14 Units)
Town homes
Santa Rosa Beach, FL

## OWNER

Summer Place, LLC
4800 Whitesburg Drive
Suite 30-351
Huntsville, Al. 35802
(256) 348-4322

## CONTRACTOR

CLICK SERVICES
Superintendent — Dennis Storey
806 Phillips Drive
Freeport, Florida 32439
License Number — 3847545

OWNER _____          BUILDER _____

<u>Cost Contract 6/2/2009 4:17:00 PM</u>                                                                                              2

## CONSTRUCTION AGREEMENT

### 1. AGREEMENT

**a)** This agreement, made this day and written herein by and between the OWNER and the BUILDER to facilitate the construction of the Project, for good and valuable consideration, both parties agreeing as follows:

**b)** This is a Cost Contract with allowances given encase OWNER purchases items for install.

**c)** The BUILDER agrees to perform the work described in the Contract Documents, in accordance with the terms and conditions herein, in exchange for the renumeration described herein.

### 2. PROJECT

| | | |
|---|---|---|
| **a)** Project Name: | **Summer Place Town homes** |
| **b)** Project Address: | **30A Santa Rosa Beach, Fl. 32459** |
| **c)** City, State, Zip: | **Santa Rosa Beach, FL 32459** |
| **d)** Subdivision Name: | **Summer Place** |
| **e)** Legal Description: | |
| **f)** Property ID #: | |
| **g)** County & State: | **Walton County, Florida** |

### 3. OWNER

| | | |
|---|---|---|
| **a)** Owner: | **Summer Place, LLC** |
| **b)** Authorized Agent: | **Barbara Stokes, Managing Member** |
| **c)** Current Address: | **4800 Whitesburg Drive Suite 30-351** |
| **d)** City, State, Zip: | **Huntsville, Al. 35802** |

### 4. BUILDER

| | | |
|---|---|---|
| **a)** Builder Name: | **Click Services, LLC** |
| **b)** License Number: | 3847545 |
| **c)** Street Address: | 806 Phillips Drive |
| **d)** City, State, Zip: | **Freeport, Florida** |

### 5. LENDER

| | | |
|---|---|---|
| **a)** Lender Name: | **First Citizen Bank of Georgia** |

### 6. ARCHITECT/DESIGNER

| | | |
|---|---|---|
| **a)** Designer Name: | **Jeff Thomas,** |
| **b)** Street Address: | |
| **c)** City, State, Zip: | **Huntsville, Al.** |
| **d)** Business Phone: | |

### 7. CONSTRUCTION PLANS

| | | |
|---|---|---|
| **a)** Title of Plans: | **Summer Place Town Homes 14 Units (3 Buildings)** |
| **b)** Drawn By: | **Jeff Thomas** |
| **c)** Plans Dated: | |
| **d)** Number of Pages: | |

OWNER _____          BUILDER  _____

### 8. CONTRACT DOCUMENTS

This contract contains the following documents, listed in descending order of control.

**a)** 1st Priority:          Scope of Work and Specifications
**b)** 2nd Priority:          Construction Agreement
**c)** 3rd Priority:          Construction Plans
**d)** Addendum:          Draw Schedule Addendum

### 9. GUIDELINES

**a)** The work will be constructed with the Contract Documents which have been examined and approved by the OWNER.

### 10. COMPLIANCE

**a)** The work will be completed in compliance with all laws, ordinances, rules, regulations, and building codes of the applicable government authorities.

### 11. CONTROL

**a)** The Contract Documents, which include the Construction Agreement, the Scope of Work, and Specifications, the Construction Drawings, and other documents enumerated herein are intended to supplement each other. In case of conflict, control of the Contract Documents will be given in the descending order in which they are listed

**b)** The work to be performed and the materials to be used by the BUILDER are itemized in the Scope of Work and Specifications, which shall be superior to the other contract documents in case of conflict.

### 12. PLANS BY OTHERS

**a)** In the event the OWNER has secured the services of a third party to prepare the construction drawings, and it is later discovered that the drawings do not meet the local zoning ordinances or building code requirements, the OWNER shall pay any increased costs to change or modify the work as required.

### 13. DESIGN INTENT

**a)** The OWNER agrees to keep the BUILDER fully informed of all finish details and other specific design results that the OWNER has or anticipates as to the outcome of the construction.

**b)** The BUILDER agrees to keep the OWNER fully informed throughout the course of the construction of any and all circumstances of the construction that may appear to have the potential to create eventual results that is potentially contrary to the OWNER'S design intent.

**c)** In the event the OWNER fails to inform the BUILDER of a specific design intent not otherwise clearly detailed and/or dimensioned on the construction plans or described in the other construction documents, the OWNER shall pay for any costs to modify the otherwise correctly performed work to meet the previously undisclosed requirements.

OWNER _____          BUILDER _____

<u>Cost Contract   6/2/2009  4:17:00 PM</u>                                                                    4

### 14. PROPERTY
    **a)** The project is to be constructed upon land that is currently owned by the OWNER .
    **b)** The OWNER hereby covenants to the BUILDER that the subject property:
        Is currently deeded to the OWNER.
        Is free of title defects or other legal encumbrances.
        Is property platted and zoned for the project.
        Is suited for the construction of the project.
        Contains no known environmental hazards.
        Contains no known archeological artifacts.

### 15. CONSTRUCTION COST – LUMP SUM ...........................        **$ 836,827.00**

    **a)** Includes labor, materials, sales tax, tools, supervision, licenses, allowances, insurance and permits indicated in the Scope of Work and Specifications as well as builder's fixed fee and any other work expected to get occupancy permit.
    b) OWNER may purchase item from Work Scope and OWNER will deduct costs in appropriate areas on Work Scope. The cost per item deducted will be based on the ALLOWANCES given by the builder attached to this contract.

### 16. TERMS OF PAYMENT
    **a)** The ESTIMATED CONTRACT PRICE enumerated above shall be paid to the BUILDER as follows:
    **b)** Preconstruction draw upon acceptance of contract is $ 42,800.00
    **c)** Draw payments to be made by the OWNER to the BUILDER see draw schedule and Payment Procedure item 18 of this document.

### 17. CONTRACTOR'S FEE- **Included in Lump Sum.**
    **a)** Based on item 15.

### 18. PAYMENT PROCEDURE
    **a)** The BUILDER will submit progress payment requests to the OWNER in accordance with the attached Schedule of Values by requesting a progress inspection which shall be done within 10 days of request being made. Requests need to be submitted by the Fifth day (5th) and twenty fifth day (25th) of the month for payment on the 10th and 30th of each month. BUILDER will be paid twice a month.
    **b)** Each payment request will be submitted to OWNER on an AIA draw request form.
    **c)** Progress payments may be received in any order or in any combination.
    **d)** Qualified progress payments are due and payable within 10 days of the inspection by DAG (Destin Architect Group).
    **e)** Minor punchlist items shall not provide a justification for the OWNER to withhold otherwise qualified draw payments, 8% will be with held until all punchlist items are completed to OWNERS satisfaction and prior to rental of any of the town homes.

OWNER _____                          BUILDER _____

19.  **CHANGE ORDERS USING STANDARD CHANGE ORDERS** – a change order occurs when materials have already been ordered or work has been done that must be changed or the change will delay the job. If none of these occur or the change is due to an unanticipated code change, there will be a charge only for the cost of the change, if any, with no added % charge.

**a)** Both parties recognize that during the construction of the project the possibility exists that any or all of the following may occur:

The OWNER may request the BUILDER to perform some work differently than as originally planned.

    1.  The OWNER may request the BUILDER to perform additional work.

    2.  The OWNER may make specific product selections.

    3.  The BUILDER may request the OWNER to clarify some portion of the construction plans.

**b)** Both parties agree that said request shall be detailed and conveyed between the parties via the use of a Change Order.

**c)** The Change Order form shall be completed in duplicate for each such request and shall clearly state the change or extra work in a narrative form, the effect (if any) on the contract price, and any other relevant information.

**d)** Change Orders shall require the approval of only one OWNER to be effective.

**e)** ALL CHANGES AND ADDITIONAL WORK MUST BE PAID FOR IN FULL IN ADVANCE.

20.  **ADDITIONAL COSTS**

**a)** All changes or other additional costs provided for herein that involves structural changes, or those resulting in changes to finish details after the original materials were ordered by the BUILDER, are subject to a minimum $65.00 administration fee per change in addition to the costs associated with implementing the change.

**b)** All changes whose cost is specifically indicated to be calculated on a "Time and Material" basis shall include all of the following:

    1.  The actual cost of materials, plus

    2.  The actual costs paid to subcontractors, plus

    3.  The BUILDER'S own personnel at the rate proscribed herein, plus

    4.  A minimum administration fee of $15.00, plus

    5.  An additional 5% for overhead and profit.

21.  **REIMBURSABLE CONSTRUCTION EXPENSES...Included in total contract price**
**ALL ITEMS LISTED BELOW (SECTION 21) ARE THE RESPONSIBILITY OF THE**
    **CONTRACTOR.**

**a)** The direct costs of the project that the OWNER is to reimburse the BUILDER includes all of the following:

**b)** Wages of construction workers directly employed by the BUILDER to perform work on the project.

**c)** Wages of field supervisors directly employed by the BUILDER to perform work on the project.

**d)** Costs of work performed by BUILDER when acting as a subcontractor.

**e)** Costs of all materials used in the construction of that Project, including sales taxes and delivery charges.

**f)** Builder's Risk, windstorm and flood insurance for duration of construction period. Owner becomes responsible for procuring own insurance policies upon issuance of certificate of occupancy.

**g)** Reasonable rental costs for necessary temporary facilities, machinery, equipment and hand tools used in the construction of the project, whether rented from the BUILDER or third parties.

**h)** Cost to purchase, install, maintain and remove safety devices, including but not limited to scaffolding, temporary railings, safety riggings, and other similar devices.

OWNER _____           BUILDER _____

**i)** Costs incurred in taking action to prevent threatened damage, injury or loss in the event of an actual or perceived emergency (i.e. hurricane, natural disaster, fire hazard, etc.) relating to the safety of people or property.

**j)** Costs to remove and dispose of construction debris from the project.

**k)** Cost of any late penalties or interest incurred by the BUILDER for late payments to the vendors. If incurred as a result of OWNER making draw request payments late.

## 22. NON-REIMBURSABLE EXPENSES (Builder – not Owner- is responsible for the following costs)

The following expenses are **not** included in the reimbursable costs of the project:

**a)** Wages or payroll costs of the Principal OWNER of the BUILDER's company.

**b)** Wages or payroll costs of the BUILDER's personnel.

**c)** Fuel and other operating costs of the BUILDER's vehicles, trailers, or other motor vehicles.

**d)** The BUILDER's normal business overhead, including office rent, bookkeeping costs, postage, telephone service, pager service, mobile radio service, cellular telephones, office utilities, equipment capitalization, equipment maintenance or repair, business taxes or licenses, etc.

## 23. FUNDING

**a)** The OWNER intends to pay the BUILDER for performing the work from funds currently available to the OWNER.

**b)** The OWNER covenants that these funds are on deposit or otherwise readily available for progress payments, extra costs and the final payment.

## 24. PAYMENTS

**a)** The OWNER understands that the BUILDER expects and anticipates the timely payment of progress draws and other authorized costs, and therefore agrees to pay BUILDER for all such contractual payments within three days of progress inspection being made by Stokes Development, LLC.

**b)** Minor punchlist items shall not provide a justification for the OWNER to withhold otherwise qualified draw payments.

**c)** No deductions shall be made from the BUILDER's funds unless specifically agreed to in writing in advance.

**d)** All payments shall be made by bank check or wire transfer drawn on a US financial institution, payable in US dollars, made payable directly to the BUILDER in his business name.

**e)** Under no circumstances shall the OWNER attempt to unilaterally change the terms of this contract by adding any additional requirements or conditions as a prerequisite to the BUILDER receiving any payment prescribed by this Contract except those requirements and conditions provided herein or as may be agreed to by the BUILDER in writing in advance.

## 25. LATE PAYMENTS

**a)** The OWNER agrees to pay all sums due under this agreement within ten (10) days of the receipt of a written request.

**b)** Late payment by the OWNER to the BUILDER of progress payments or the final payment will cause the BUILDER to incur costs not anticipated in this agreement, the exact amount of which is difficult to ascertain.

**c)** Such costs include, but are not limited to, processing and accounting charges, loss of trade discounts, and late charges imposed by the BUILDER's creditors.

OWNER _____                    BUILDER _____

**Cost Contract   6/2/2009  4:17:00 PM**                                                            7

### 26. RIGHT TO STOP WORK
**a)** If any payment under this Contract is not made with in 7 days after inspection from DAG, the BUILDER may suspend work on the job until such time as all payments due have been made.
**b)** Any failure to make payment is subject to a claim enforced against the property in accordance with applicable lien laws.

### 27. OVERDUE ACCOUNTS
**a)** Any moneys due the BUILDER under this Contract that remain unpaid for more than thirty days shall incur interest on the unpaid balance at the rate of 1.5% per month for every month it shall remain unpaid.

### 28. QUALITY OF WORK
**a)** All materials to be supplied by the BUILDER are to be new unless otherwise specified in the contract documents.
**b)** All work shall be performed in a professional and workmanship like manner, and shall conform to the minimum standards set forth in the National Association of Home Builders publication titled "RESIDENTIAL CONSTRUCTION PERFORMANCE GUIDES"
**c)** In the event there is a dispute regarding the quality of the work being preformed or the materials being utilized, the parties shall refer to this publication for guidance to settle the issue.

### 29. MATERIALS SELECTIONS BY BUILDER
**a)** The BUILDER may select and purchase any items designated in the Construction Specifications to be selected and purchased by the BUILDER from any supplier or vendor. The selected items must be of First (1st) Quality. If OWNER is to purchase items a change order will be submitted to BUILDER and credit will be issued to OWNER, amount will be based on Work Scope document.

### 30. MATERIALS SELECTION BY OWNER
**a)** The OWNER may select and/or purchase any item designated in the Construction Specifications.
**b)** In the event that the OWNER chooses to select any such items from a supplier or have BUILDER use a subcontractor that he has not established a relationship or has an account with, the OWNER or BUILDER may pay for the items, but the OWNER will be responsible for any additional costs incurred by the use of these suppliers or subcontractors and will be responsible for any warranty situations that may arise in connection with same. Any subcontractor OWNER wants to use that is not approved by builder must have all necessary insurance proofs supplied to BUILDER prior to entering job site and understand that the BUILDER is in charge of scheduling deliveries and work.
**c)** In the event the OWNER purchases items that are already included in the Contract Specifications, the Owner shall receive a credit equal to the ALLOWANCE given on the Construction Specification sheet . Attached. The BUILDER will receive compensation in the amount of 20% of ALLOWANCE cost to coordinate the use of the items.
**d)** The OWNER shall pay all special order deposits, including cabinet order deposits and plumbing fixture deposits, directly to the BUILDER unless OWNER purchases said items.

### 31. SUBSTITUTION OF MATERIALS
**a)** The BUILDER may substitute structural materials and other generically described items without notice to the OWNER in order to allow the work to proceed, provided that the substituted materials are of no lesser quality than those described in the Construction Specifications.

OWNER _____                    BUILDER _____

### 32. SUBCONTRACTORS AND EMPLOYEES

**a)** Agreements made by the OWNER with mechanics or subcontractors on the job are specifically not recognized by the BUILDER.

**b)** The OWNER agrees not to solicit, hire, or contract with any subcontractor or employee of the BUILDER without the specific permission of the builder for a period of six months following the completion of the Project

**c)** The BUILDER shall maintain discipline and good behavior among his employees and the employees of his subcontractors.

### 33. RADON GAS DISCLOSURE

**a)** This disclosure and it's acknowledgment by the OWNER is required by Florida Law. The OWNER's signature on this contract is acknowledgment of the receipt of this disclosure.

**b)** RADON GAS   Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceeds Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

### 34. BUILDER'S INSURANCE

**a)** The BUILDER shall maintain Worker's Compensation (or qualified exemptions) and General Liability insurance policies throughout the duration of this work.

### 35. PRE-EXISTING CONDITIONS

**a)** The OWNER agrees that the BUILDER assumes no responsibility for pre-existing conditions of any kind or nature at the property, including but not limited to:

     1. Prior inferior workmanship.

     2. Damage due to termites, rot, or deterioration not detected prior to building.

     3. Prior zoning, classification or building code violations.

     4. Pre-existing hazardous materials or toxic wastes of any kind.

     5. Sub-surface soils conditions i.e. muck, rock formations, buried trash and debris, etc.

**b)** The BUILDER is not responsible for the cost of any additional work caused by pre-existing conditions concealed by existing constructions and not anticipated by the BUILDER or revealed in the specifications given to the BUILDER prior to the execution of this contract unless specifically addressed in the Contract Documents.

### 36. HAZARDOUS MATERIALS

**a)** This contract specifically does not require or include any investigation, abatement or removal of any existing hazardous materials on the project site, including but not limited to radon gas, asbestos in any form, lead based paints and/or chemical or petroleum contaminations of any kind.

**b)** To the fullest extent permitted by law, the OWNER shall indemnify and hold the builder harmless from and against all claims, costs, losses, damages and expenses, including attorney's fess, arising from or involving any such hazardous materials.

OWNER _____          BUILDER _____

### 37. TIME OF COMPLETION

**a)** The BUILDER agrees that he shall commence construction within ten working days of the issuance of the Building permit.

**b)** The BUILDER agrees that he shall be completed and issued a Certificate of Occupancy Permit (or what ever permit is issued by Walton County for unit to become inhabitable) with the construction work described herein within 100 (One Hundred) Days from the commencement of construction. Each unit not completed within 100 (One Hundred) Days period will be subjected to a $500.00 (Five Hundred) per day / per unit penalty. The penalty will be paid to the OWNER by deducting the money from the last draw requests.

**c)** Both parties agree that the definition of "Substantial Completion" shall be as follows:

"SUBSTANTIAL COMPLETION" The date when the construction is sufficiently complete so that the OWNER can occupy or utilize the improvement for the purpose intended. SUBSTANTIAL COMPLETION is not specifically related to the receipt of a final inspection by the local building official.

**e)** The Time of Completion shall be extended accordingly for all changes and other work ordered by the OWNER.

**f)** Both parties agree that the time of completion shall be extended accordingly in the event that the BUILDER is delayed by governmental rules or regulations, shortages of labor or material, any act of neglect of the OWNER or his agents by changes ordered by the OWNER or any governmental authority, by strikes, fire, unavoidable casualties or any causes beyond the BUILDER's control.

### 38. DELAY CLAUSE- NONE

### 39. FINAL PUNCHLIST

**a)** Upon completion of the project, the BUILDER and the OWNER shall jointly inspect the project and write the Final Punchlist, which shall include all the remaining items the OWNER and the BUILDER agree need to be finished.

**b)** Upon completion of all the items on the Final Punchlist and obtaining the Certificate of Occupancy, the OWNER will pay the BUILDER the Final Draw less any late fees.

**c)** Any deficiencies that are discovered after the development of the Final Punchlist shall be performed in accordance with the BUILDER's Warranty procedures.

**d)** In the event the OWNER, or owner's agent, is unable or unwilling to participate in the inspection and develop the Final Punchlist, the BUILDER shall perform said inspection and develop the Final Punchlist alone and shall forward a copy of the list to the OWNER.

### 40. DEFAULT by BUILDER

**a)** The BUILDER shall be in default under this contract if he shall abandon work on the project or otherwise refuses to carry out his obligations under his contract, unless such abandonment or refusal is based upon a prior default by the OWNER which the OWNER has refused to cure after notice thereof.

**b)** The BUILDER shall be deemed to be in default under this contract if he or any subcontractor shall fail to perform any work on the project for 21 consecutive days, unless any such failure is the result of any force majeure.

OWNER _____                                BUILDER _____

**41. DEFAULT by OWNER**

**a)** The OWNER shall be in default under this contract in the event they refuse to allow the BUILDER to complete the performance of the work, fail to pay any amounts hereunder when due, or otherwise refuse to carry out the obligations of the OWNER of this contract, unless such refusal or non-payment is based on a prior default by the BUILDER which he has failed to cure after notice thereof.

**42. NOTICE OF DEFAULT**

**a)** In the event of a default, the other party shall give the defaulting party written notice by certified mail return receipt requested or by hand delivery, said notice to detail the default.

**b)** The defaulting party shall have ten (10) calendar days from the receipt of the notice in which to begin the curing of the default, which actions shall be continuously pursued and completed within a reasonable time in light of the nature of the default, provided however that the cure of any default shall be limited to ten (10) days of the date of the notice of the default.

**c)** If such default is cured within the time specified, each party agrees that this contract shall remain in full force and effect and neither party may assert any claims as a result of such default.

**43. REMEDIES AFTER DEFAULT**

**a)** In the event of a default by either party which is not cured within the time specified, the non-defaulting party may seek specific performance, or declare the contract terminated and seek damages for breach of contract from the defaulting party.

**b)** In the event of a default by the OWNER, the BUILDER shall be entitled to all progress payments and other additional costs generated to date, plus damages in the amount equal to 20% of the total of remaining unpaid contract amount.

**44. ARBITRATION**

**a)** Any claim not settled by informal mediation, within 30 days of Notice of Default, shall be settled by arbitration in accordance with the Construction

Industry Arbitration Rules of the American Arbitration Association in effect.

**b)** Notice of demand for arbitration shall be filed in writing with the other party to the contract and with the American Arbitration Association.

**c)** All demands for arbitration shall be made within a reasonable time after the claim has arisen.

**d)** No arbitration hereunder shall include by consolidation, joinder or in any other manner, any person or entity other than the OWNER and the BUILDER, unless it is shown at the time of demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such persons or entity is required if complete relief is to be accorded in the arbitration, and (3) the interest or responsibility of such person or entity is not insubstantial.

**e)** A party who files a notice of demand for arbitration must assert in the demand all claims then known to that party. When a party fails to include a claim through oversight, inadvertence or excusable neglect, or when a claim has matured or been acquired subsequently, the arbitrator may permit amendment.

**f)** This agreement to arbitrate contained herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**g)** The award rendered by the arbitrator shall be final, and judgment may be entered upon in accordance with applicable law in any court having jurisdiction thereof.

OWNER _____       BUILDER _____

### 45. CONFLICT

**a)** In the event the parties become involved in litigation arising out of this Contract, the court shall award costs and expenses, including attorney's fees, to the party justly entitled to them.

**b)** In the event that the BUILDER'S work is judged to be deficient, the BUILDER shall have the right to repair, replace or pay reasonable sums to effect repairs.

**c)** In any event, no party may institute a claim against the other party after one year after the completion of the project.

### 46. CONSTRUCTION INDUSTRIES RECOVERY FUND

**a)** PAYMENT MAY BE AVAILABLE FROM THE CONSTRUCTION INDUSTRIES RECOVERY FUND IF YOU LOSE MONEY ON A PROJECT PERFORMED UNDER CONTRACT WHERE THE LOSS RESULTS FROM SPECIFIED VIOLATIONS OF FLORIDA LAW BY A STATE LICENSED CONTRACTOR. FOR MORE INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONTACT THE FLORIDA CONSTRUCTION LICENSING BOARD AT 7960 ARLINGTON EXPRESSWAY, JACKSONVILLE, FLORIDA 32211-7467; (904) 727-6530.

### 47. FLORIDA RIGHT to CURE

**a)** FLORIDA LAW CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY FILE A LAWSUIT FOR DEFECTIVE CONSTRUCTION AGAINST A CONTRACTOR, SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME. SIXTY DAYS BEFORE YOU FILE YOUR LAWSUIT, YOU MUST DELIVER TO THE CONTRACTOR, SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL A WRITTEN NOTICE OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE YOUR CONTRACTOR AND ANY SUBCONTRACTORS, SUPPLIERS, OR PROVIDE YOUR CONTRACTOR AND ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND MAKE AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER MADE BY THE CONTRACTOR OR ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER FLORIDA LAW.

OWNER _____                    BUILDER _____

**48. GENERAL CONTRACT PROVISIONS**

**a)** COMPLIANCE" The work will be completed in compliance with all laws, ordinances, rule regulations and building codes or the applicable government authorities.

**b)** NOTICE: Any notice required or permitted under this Agreement may be given by certified or registered mail at the addresses contained in this Agreement.

**c)** GOVERNANCE: This Agreement shall be construed in accordance with and governed by the laws of the state in which the project was performed.

**d)** GENDER: Gender references utilized herein are intended to be neutral. All such references shall be considered general and shall not be construed to have any specific gender reference.

**e)** PLURALITY: All references to any entity that are made in the singular or plural shall be construed in either manner.

**f)** HEADINGS: Section and/or paragraph headings are provided for reference only as a convenience to the parties and are not to be construed to alter or amend any provision of this agreement.

**g)** ASSIGNMENT: This Agreement cannot be assigned by either of the parties without the expressed written consent of the other party.

**h)** SUCCESSORS: This Agreement shall be binding upon and shall inure to the benefit of the respective parties, their heirs, successors and assigns.

**49. FORCE MAJEURE**

**a)** The BUILDER shall not be liable to the OWNER for any loss, cost of damage resulting from or arising out of a delay or inability to perform this contract caused by any force majeure occurrence such as: Acts of God, declaration of war, fire, flooding, strikes, accidents or other similar events.

**50. DEFINITIONS**

**a)** The phrases and words used in the Construction Documents shall have the following meanings:

**b)** "OWNER" Shall refer to the OWNER or OWNERs, their agents, their employees, subcontractors and/or suppliers hired and/or contracted with by the OWNER or their agents, and their employees.

**c)** "BUILDER"    Shall refer to the BUILDER, his agents, employees, license qualifier (if any), subcontractors and/or suppliers hired and/or contracted with by the BUILDER or his agents, and their employees providing however that this definition applies only to those individuals only while they are acting under the scope and authority of the BUILDER and not in any other capacity.

**d)** "BANK" Shall refer to any and all banks, savings and loan or other financial institution, or any other source of some or all funds being provided to pay for the construction of the Project.

**e)** "FIND" Shall mean to research, investigate, identify, interview and qualify potential suppliers of the specific product or service provider needed.

**f)** "VISIT" Shall mean to arrange and physically travel to the location of the source of the specific product or service required.

**g)** "SELECT" Shall mean to make the actual choice of the specific product or service provider needed.

**h)** "MATCH" Shall mean to accept the responsibility of identifying both the existing product and the source and description of its duplicate to be utilized in the project.

**i)** "TO MATCH". Shall mean to match an existing item, product, or finish as reasonably as possible utilizing locally available stock materials and standard construction processes.

**j)** "PURCHASE" Shall mean to order, schedule and directly pay the supplier or service provider needed, including paying any sales tax or any ancillary charges associated with the product or service needed.

OWNER _____                    BUILDER _____

**Cost Contract  6/2/2009  4:17:00 PM**

**k)** "DELIVER" Shall mean to schedule, arrange and personally deliver and/or personally receive delivery of the products or service needed to the jobsite, including the inspection and inventorying of said products and paying for any delivery or shipping charges arising therein.

**l)** "INSTALL" or   Shall mean to cut, fashion, place, fit, attach, hookup and otherwise permanently secure

"APPLY" the product described and to perform all the functions necessary to properly finish this portion of the work.

**m)** "PROVIDE"    Shall mean to find, select, match, purchase and deliver (not install) the specific product or service described, as each of these words are defined herein.

**n)** "PERFORM"    Shall mean to purchase, deliver and install the specific product and/or service described, as each of these words are individually defined herein.

**o)** " INCLUDED" Shall be the number of the specific items described that the BUILDER shall be required to include in the project, regardless of the number of said items depicted or described in the construction plans.

**p)**    "APPLY"     the product described and to perform all the functions necessary to properly finish this portion of the work.

## 51. HANDWRITTEN CHANGES

**a)** Handwritten changes to the printed documents that are properly initiated by both parties shall supersede all printed provisions.

## 52. ENTIRE AGREEMENT

**a)** This agreement, including the Contract Documents enumerated herein, constitutes the entire agreement between the parties, and supersedes any prior understandings, agreements or representations between the parties.

## 53. SIGNATURES

IN AGREEMENT WHEREOF, we hereby affix our hand(s) and seal(s) this day and date written below.

BUILDER _Micheal Click_                OWNER(S) _SummerPlace, LLC_

_Click Services LLC_ 5-25-09        _Bae(Click)_     5-25-09
SIGNATURE              DATE        SIGNATURE                  DATE

_MR Click_
BY                                  SIGNATURE                  DATE

OWNER _RJS_                         BUILDER _MRC_

Click Services, Inc.
Summer Place Town homes Completion

| Description of Activity | Draw Schedule | Remaining to be Completed |
|---|---|---|
| Preconstruction draw- | 4% | $33,473.48 |
| Permits | 2% | $16,736.74 |
| Utilities - Deposit plus 4 months | 2% | $16,736.74 |
| Trash clean up/removal | 1% | $8,368.37 |
| Roof decking – Repair/recoat | 1% | $8,368.37 |
| Roof Railing System | 1% | $8,368.37 |
| Sophit, cornice and gables | 1% | $8,368.37 |
| Exterior siding-replace loose damage boards | 1% | $8,368.37 |
| Windows and exterior doors | 2% | $16,736.74 |
| Heating & A/C duct | 1% | $8,368.37 |
| Plumbing rough in and stack out | 1% | $8,368.37 |
| Plumbing fixtures | 2% | $16,736.74 |
| Bathroom Mirrors | 1% | $8,368.37 |
| Wiring rough in | 1% | $8,368.37 |
| Exterior primed and caulked | 1% | $8,368.37 |
| Sheetrock Touchup/water repair | 4% | $33,473.48 |
| Cabinets | 15% | $125,525.55 |
| Granite | 9% | $75,315.33 |
| Spiral Stair Case | 3% | $25,105.11 |
| Interior Stair Case | 2% | $16,736.74 |
| Interior trim/including stairs | 2% | $16,736.74 |
| Interior paint | 4% | $33,473.48 |
| Interior Hand Rails | 2% | $16,736.74 |
| Exterior paint | 1% | $8,368.37 |
| Electrical fixtures | 1% | $8,368.37 |
| Appliances | 10% | $83,683.70 |
| HVAC Replacements and final | 2% | $16,736.74 |
| Fire Suppression System | 3% | $25,105.11 |
| Interior Closets | 1% | $8,368.37 |
| Interior Doors | 2% | $16,736.74 |
| Tile repair and replacement | 1% | $8,368.37 |
| Brick pavers | 1% | $8,368.37 |
| Landscaping | 4% | $33,473.48 |
| Floor coverings- resurface/water damage | 3% | $25,105.11 |
| Final draw – Clean up / Punch List | 8% | $66,946.96 |
| | 100% | $836,837.00 |

July 28, 2009

Mr. Michael T. Underwood
First Citizens Bank of Georgia
1797 Highway 400 South
Dawsonville, GA  30534



RE:  Summer Place Town Homes, Santa Rosa Beach, Florida
     Pay Application No. 1, Period to 07/17/09
     DAG Project No. 09025A

Dear Mike,

Enclosed for your information and review is AIA Document G702, Application and Certification for Payment No. 1, submitted by Click Services, Inc. for the Summer Place Town Homes project in Santa Rosa Beach, Florida.

We take exception to the AIA Document G703-1992, Continuation Sheet. After researching and review, it indicates some Line Item dollar amount discrepancies, as follows:

### Item No. 2 – Permits

Walton County Building Dept. – Building Permits (All purchased on June 4, 2009)

| Permit No. | Address | Permit Cost |
|---|---|---|
| 09866 | 7 Summer Place Lane | $ 381.00 |
| 09865 | 8 Summer Place Lane | $ 335.00 |
| 09864 | 44 Summer Place Lane | $ 353.00 |
| None | 60 Leisure Lane (Irrigation/Pool) | $  00.00 |
| | **Total Building Permit Cost:** | **$1,069.00** |

### Item No. 3 – Utilities

### Regional Utilities – Deposit for Water/Sewer

$100.00 for each Unit:
Total paid to Regional Utilities for 14 Units @ $100.00 each:
**$1,400.00**

DAG architects

AA-C000745

1223 airport road

destin, florida

32541

p 850.837.8152

f 850.654.4276

www.dagarchitects.com

**Chelco — Deposit for Electric including Connect Fee**

$227.00 per Unit x 6 Units =                                              $1,362.00
        7 Summer Place Lane Units 7, 11, 15,
        19, 23, & 27

$227.00 per Unit x 5 Units =                                              $1,135.00
        8 Summer Place Lane - House & Units 12,
        16, 20, 24

$227.00 per Unit x 2 Units = (#48 & #52)                  $  464.00
$232.00 per Unit x 1 Unit = (#44)                             $  232.00
        44 Summer Place Lane - Units 44, 48 & 52

$377.00 per Unit x 1 Unit =                                       $  377.00
        60 Leisure Lane, Irrigation/Pool

        Total paid to Chelco for all Units:                     $3,338.00

           **Total Electric Deposits:**                        **$4,738.00**

**Item No. 26 - Appliances**

| Receipt Date | Purchased at: | Payment: | Item |
|---|---|---|---|
| 7/20/09 | Home Depot | $ 47,690.40 | GE Appliances |
| 7/22/09 | Home Depot | $    530.00 | Unknown items |
| 7/23/09 | Home Depot | $  1,029.18 | (9) Kitchen Faucets |
| 7/24/09 | DC Storey | $ 36,378.30 | Casework (unbilled) |

        **Total Material Purchases:**                     **$49,249.58**

**Invoices received from Barbara Stokes:**

| Invoice Dated: | Company | Amount | For |
|---|---|---|---|
| 07/02/09 | DAG Architects Inc. | $4,650.00 | DAG – CA Services |
| 07/14/09 | First Insurance Funding | $7,591.98 | Project Insurance |
| | **Total Expenses:** | | **$12,241.98** |

We have therefore, adjusted the pay application to reflect these amounts. Also, we have included the Architect's Field Report with photos for your information.

Please review and let me know of any questions or concerns. I can be reached on cell at 850-259-2211 or email at: kbell@dagarchitects.com.

Sincerely,

Kenny Bell, CA Director
Attachments

Cc:  Barbara Stokes, Managing Member
KB/rb

# ▓AIA® Document G702/CMa™ – 1992

**Application and Certificate for Payment** Construction Manager-Adviser Edition

| | | | | |
|---|---|---|---|---|
| **TO OWNER:** | Summer Place, LLC<br>4800 Whitesburg Drive<br>Suite 30-351 Huntsville, Al.<br>35802 | **PROJECT:** | Summer Place Town Homes<br>Santa Rosa Beach, Florida | **APPLICATION NO: 001** **Distribution to:**<br>OWNER: X<br>**PERIOD TO:** CONSTRUCTION MANAGER:<br>ARCHITECT: |
| **FROM**<br>**CONTRACTOR:** Click Services | | **VIA CONSTRUCTION**<br>**MANAGER:** | | **CONTRACT DATE:** CONTRACTOR:<br>**PROJECT NOS:** 090630a / Click Services FIELD:<br>(VDM, LLC) / Summer Place DAQ Architect X |
| **CONTRACT FOR:** General Construction | | **VIA ARCHITECT:** | | |

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | |
|---|---|
| 1. ORIGINAL CONTRACT SUM .......................................... $ | 836,825.00 |
| 2. NET CHANGE BY CHANGE ORDERS ...................... $ | 0.00 |
| 3. CONTRACT SUM TO DATE (Line 1 ± 2) ...................... $ | 836,825.00 |
| 4. TOTAL COMPLETED & STORED TO DATE (Column G on G703) .......... $ | 268,452.00 |

5. RETAINAGE:

| | | |
|---|---|---|
| a. 0   % of Completed Work<br>(Column D + E on G703) | $ | 0.00 |
| b. 0   % of Stored Material<br>(Column F on G703) | $ | 0.00 |
| Total Retainage (Lines 5a +5b or Total in Column I of G703) ...... $ | | 0.00 |

| | |
|---|---|
| 6. TOTAL EARNED LESS RETAINAGE ........................ $ | 268,452.00 |
| (Line 4 Less Line 5 Total) | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT ............ $ | 0.00 |
| (Line 6 from prior Certificate) | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

**CONTRACTOR:**

By: *Micheael Click*               Date: 7-22-09

State of: Florida

County of:

Subscribed and sworn to before
me this 22 day of July
Notary Public: *Heidi Fullen*
My Commission expires:

*[Notary seal: HEIDI A. FULLEN, MY COMMISSION # DD 628067, EXPIRES: January 11, 2011, Bonded Thru Notary Public Underwriters]*

## CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Construction Manager and Architect certify to the Owner that to the best of their knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AIA Document G702/CMa™ – 1992. Copyright© 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 16:32:46 on 07/20/2009 under Order No.9785629296_1 which expires on 07/13/2010, and is not for resale.
User Notes:                                                                                                      (1285446985)

8. CURRENT PAYMENT DUE ............................................................ | $ | 268,452.00

9. BALANCE TO FINISH, INCLUDING RETAINAGE

    (Line 3 less Line 6)          $     568,373.00

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $ 0.00 | $ 0.00 |
| Total approved this Month | $ 0.00 | $ 0.00 |
| TOTALS | $ 0.00 | $ 0.00 |
| NET CHANGES by Change Order | $ | 0.00 |

AMOUNT CERTIFIED ................................................................... $     268,452.00

*(Attach explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified.)*

CONSTRUCTION MANAGER:

By: _____     Date: _____

ARCHITECT:

By: _____     Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA Document G702/CMa™ – 1992. Copyright © 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:32:40 on 07/20/2009 under Order No.9788529298_1 which expires on 07/13/2010, and is not for resale.
User Notes:              (1265446995)

2

# AIA® Document G703™ – 1992

## Continuation Sheet

AIA Document G702, APPLICATION AND CERTIFICATION FOR PAYMENT,
containing Contractor's signed certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

APPLICATION NO: 001
APPLICATION DATE:
PERIOD TO: 07/17/2009
ARCHITECT'S PROJECT NO: ~~090636a~~  090257A   RB

| A | B | C | D | E | F | G | | H | I |
|---|---|---|---|---|---|---|---|---|---|
| | | | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G÷C) | BALANCE TO FINISH (C–G) | RETAINAGE (IF VARIABLE RATE) |
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION (D + E) | THIS PERIOD | | | | | |
| 1 | Pre Construction Draw | 33,473 | 0 | 33,473 | 0 | 33,473 | 100.00 % | 0 | 0 |
| 2 | Permits | 16,737 | 0 | 1,069 ~~16,737~~ | 0 | 1069 ~~16,737~~ 6 | 100.00 % | 15,668 ~~0~~ | 0  RB |
| 3 | Utilities - Deposit | 16,737 | 0 | 4738 ~~16,737~~ | 0 | 4738 ~~16,737~~ 28 | 100.00 % | 11,999  0 | 0  RB |
| 4 | Trash Clean up/Removal | 8,368 | 0 | 2,511 | 0 | 2,511 | 30.00 % | 5,858 7 | 0 |
| 5 | Roof Decking-Repair/Coat | 8,368 | 0 | 0 | 0 | 0 | 0.00 % | 8,368 | 0 |
| 6 | Sofit, Cornice and gables | 8,368 | 0 | 0 | 0 | 0 | 0.00 % | 8,368 | 0 |
| 7 | Roof Railing System | 8,368 | 0 | 8,368 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 8 | Exterior siding-replace loose damage boards | 8,368 | 0 | 0 | 0 | 0 | 0.00 % | 8,368 | 0 |
| 9 | Windows and exterior doors | 16,737 | 0 | 0 | 0 | 0 | 0.00 % | 16,737 | 0 |
| 10 | Heating & A/C duct | 8,368 | 0 | 8,368 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 11 | Plumbing rough in and stack out | 8,368 | 0 | 4,184 | 0 | 4,184 | 50.00 % | 4,184 | 0 |
| 12 | Plumbing fixtures | 16,736 | 0 | 1,029 ~~12,552~~ | 0 | 1,029 ~~12,552~~ 6 | 75.00 % | 15,707 ~~4,184~~ | 0  RB |
| 13 | Bathroom Mirrors | 8,368 | 0 | 530 ~~2,761~~ | 0 | 530 ~~2,761~~ 6 | 33.00 % | 7,838 ~~5,607~~ | 0  RB |
| 14 | Wiring Rough in | 8,368 | 0 | 8,368 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 15 | Exterior primed and caulked | 8,368 | 0 | 0 | 0 | 0 | 0.00 % | 8,368 | 0 |
| 16 | Sheetrock Touch up/water repair | 33,473 | 0 | 33,473 | 0 | 33,473 | 100.00 % | 0 | 0 |
| 17 | Cabinets | 125,525 | 0 | 0 | 0 | 0 | 0.00 % | 125,525 | 0 |
| 18 | Granite Counter tops | 75,315 | 0 | 0 | 0 | 0 | 0.00 % | 75,315 | 0 |
| 19 | Sprial Staircase | 25,105 | 0 | 0 | 0 | 0 | 0.00 % | 25,105 | 0 |
| 20 | Interior Stair Case | 16,736 | 0 | 0 | 0 | 0 | 0.00 % | 16,736 | 0 |
| 21 | Interior Trim | 16,736 | 0 | 13,389 | 0 | 13,389 | 80.00 % | 3,347 | 0 |

AIA Document G703™ – 1992. Copyright © 1963, 1965, 1966, 1967,1970, 1978, 1983 and 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 16:10:47 on 07/20/2009 under Order No.9786528298_1 which expires on 07/19/2010, and is not for resale.
User Notes:

(2004175973)

1

| | | | | | | | | | |
|----|---------------------------------|-----------|-----|---------|--------|---------|----------|---------|-----|
| 22 | Interior Paint | 33,473 | 0 | 21,423 | 0 | 21,423 | 64.00 % | 12,050 | 0 |
| 23 | Interior Hand Rail | 16,736 | 0 | 5,523 | 0 | 5,523 | 33.00 % | 11,213 | 0 |
| 24 | Exterior Paint | 8,368 | 0 | 0 | 0 | 0 | 0.00 % | 8,368 | 0 |
| 25 | Electrical Fixtures | 8,368 | 0 | 0 | 6,276 | 6,276 | 75.00 % | 2,092 | 0 |
| 26 | Appliances | 83,683 | 0 | ~~47,692~~ 41,842 | 0 | ~~47,69~~ 41,842 | ~~57~~ 50.00 % | ~~35,99~~ 241,842 | 0 |
| 27 | HVAC Replacements and Finals | 16,736 | 0 | 13,389 | 0 | 13,389 | 80.00 % | 3,347 | 0 |
| 28 | Fire Suppression System | 25,105 | 0 | 0 | 0 | 0 | 0.00 % | 25,105 | 0 |
| 29 | Interior Closets | 8,368 | 0 | 0 | 0 | 0 | 0.00 % | 8,368 | 0 |
| 30 | Interior Doors | 16,736 | 0 | 10,711 | 0 | 10,711 | 64.00 % | 6,025 | 0 |
| 31 | Tile Repair and Replacement | 8,368 | 0 | 8,368 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 32 | Brick Pavers | 8,368 | 0 | 0 | 0 | 0 | 0.00 % | 8,368 | 0 |
| 33 | Landscaping | 33,473 | 0 | 0 | 0 | 0 | 0.00 % | 33,473 | 0 |
| 34 | Floor Coverings-resurface/water damage | 25,105 | 0 | 0 | 0 | 0 | 0.00 % | 25,105 | 0 |
| 35 | Final Draw-clean up/punch List | 66,947 | 0 | 0 | 0 | 0 | 0.00 % | 66,947 | 0 |
| | GRAND TOTAL | $836,825 | $0 | ~~$246,862~~ | ~~$21,589~~ | ~~$268,452~~ | ~~32.08 %~~ | ~~$568,373~~ | $0 |

$225,045   $7,835   $232,880   28%   ~~$569,311~~
$603,945   *PB*

*PB*

1) Recommended Payment to be made : $232,880.00

2) Also, recommend payment of : $12,241.98
   (for Invoices received from Barbara Stokes)

*PB*

AIA Document G703™ – 1992. Copyright © 1963, 1965, 1966, 1967,1970, 1978, 1983 and 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:10:47 on 07/20/2009 under Order No.9785529298_1 which expires on 07/13/2010, and is not for resale.
User Notes:                                                                                                                                          (2004175973)



DAG Architects Inc.
1223 Airport Road
Destin, Florida 32541
P 850-837-8152 F 850-654-4276
www.dagarchitects.com

## Architect's Field Report

**Project Name**: Summer Place

**Project No:**                                              **Date:** 7-23-09

**Time: 9:00AM**            **Temp. Range**: 90          **Weather: Sunny**

**Present at Site**: The Contractor and Painting crew, Barbra Stokes

**Work in Progress:** The contractor in stalling missing trim, hand rails, and doors.
Painting crew working on the interior of the units.

**Observations: The site was neat and orderly. The contractor has done a good job of cleaning the site.  They have done some grading on the pond area.**
**On the interior of the units the contractor has made good progress with cleaning, Drywall repairs, interior trim, and painting.**
**There seems to be a fair amount of carpentry and handrail work completed at this time.**
**The stored material are stored in the garage of the units.**
**No new case work was on site at this time.**
**The contractor has billed for the appliances by none are on site at this time.**
**A fair amount of work has been complete since my last visit 2 weeks ago.**
  **I contacted the building department and the utility company to get the amount for the pay request because I had limited back up for the amounts. I did not want to hold up payment.**

**Items to Verify**: None at this time

**Information or Action Required**: I reviewed the pay request and take exception to the amounts. Please see break down on the amounts of line items submitted. If you have any questions give me a call at 850-259-2211

**Attachments: See pictures**

**Copies To:**  Mike Underwood

                                        With Enclosures:

**Report By**: Kenny Bell



# AIA® Document G702/CMa™ – 1992

*Application and Certificate for Payment* Construction Manager-Adviser Edition

| | | |
|---|---|---|
| **TO OWNER:** Summer Place, LLC | **PROJECT:** Summer Place Town Homes Santa Rosa Beach, Florida | **APPLICATION NO:** 002 |

**Distribution to:**
OWNER: X
CONSTRUCTION MANAGER: X
ARCHITECT:
CONTRACTOR:
FIELD:
DAQ: X

**PERIOD TO:** 8/6/09   *RB*
**CONTRACT DATE:**
**PROJECT NOS:** 090630a / Click Services *0902SA*
(VDM, LLC) / Summer Place   *RB*

**FROM CONTRACTOR:** *CLICK SERVICES, LLC*   **VIA CONSTRUCTION MANAGER:**
**CONTRACT FOR:** General Construction   **VIA ARCHITECT:**

*RB*

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM ........................ | $ | 836,837.00 |
| 2. NET CHANGE BY CHANGE ORDERS ............ | $ | 0.00 |
| 3. CONTRACT SUM TO DATE (Line 1 ± 2) ....... | $ | 836,837.00 |
| 4. TOTAL COMPLETED & STORED TO DATE (Column G on G703) ... | $ | ~~441,668.00~~ *RB* 410,677.00 |

5. RETAINAGE:
| | | |
|---|---|---|
| a. ~~10~~5 % of Completed Work *RB* (Column D + E on G703) | $ | 0.00 |
| b. ~~10~~0 % of Stored Material *RB* (Column F on G703) | $ | 0.00 |
| Total Retainage (Lines 5a + 5b or Total in Column I of G703) ... | $ | 0.00 |

| | | |
|---|---|---|
| 6. TOTAL EARNED LESS RETAINAGE ............ (Line 4 Less Line 5 Total) | $ | ~~441,668.00~~ *RB* 410,677.00 |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT (Line 6 from prior Certificate) | $ | ~~225,045.00~~ *RB* 232,880.00 |
| 8. CURRENT PAYMENT DUE ........................ | $ | ~~216,623.00~~ 177,797.00 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE *RB* (Line 3 less Line 6) | $ | 426,160.00 ~~395,169.00~~ |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $ 0.00 | $ 0.00 |
| Total approved this Month | $ 0.00 | $ 0.00 |
| TOTALS | $ 0.00 | $ 0.00 |
| NET CHANGES by Change Order | $ 0.00 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:

By: _____   Date: 8 ___

State of: Florida
County of: Walton
Subscribed and sworn to before
me this 6 day of August 2009
Notary Public:
My Commission expires:

RONDA J. HALL
NOTARY PUBLIC
STATE OF FLORIDA

## CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Construction Manager and Architect certify to the Owner that to the best of their knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and that the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED ............. $ 177,797.00 ~~215,064.00~~ *RB*

*(Attach explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified.)*

CONSTRUCTION MANAGER:

By: _____   Date: _____

ARCHITECT:

By: _____   Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA Document G702/CMa™ – 1992. Copyright © 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:20:03 on 08/05/2009 under Order No.9785529298_1 which expires on 07/13/2010, and is not for resale.
User Notes: (1231701108)

1



 **AIA**® **Document G703™ – 1992**

## Continuation Sheet

AIA Document G702, APPLICATION AND CERTIFICATION FOR PAYMENT,
containing Contractor's signed certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

APPLICATION NO: ~~001~~ 002   *RB*
APPLICATION DATE:
PERIOD TO: 08/06/2009
ARCHITECT'S PROJECT NO: 090630a

| A | B | C | D | | E | F | G | | H | I | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | WORK COMPLETED | | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G ÷ C) | BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE RATE) | |
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION (D + E) | THIS PERIOD | | | | | | | |
| 1 | Pre Construction Draw | 33,473 | 33,473 | 0 | 0 | 33,473 | 100.00 % | 0 | 0 | |
| 2 | Permits | 16,737 | 1,069 | 3,347 | 0 | 4,416 | 26.39 % | 12,320 | 0 | |
| 3 | Utilities *Correction* | 16,737 | 4,738 | *222* ~~0~~ | 0 | *4,960* ~~4,738~~ *30* ~~28.31~~% | | *11,777* ~~11,999~~ | 0 | *RB* |
| 4 | Trash Clean up/Removal | 8,368 | 2,511 | 2,511 | 0 | 5,022 | 60.01 % | 3,347 | 0 | |
| 5 | Roof Decking-Repair/Coat | 8,368 | 0 | 6,276 | 0 | 6,276 | 75.00 % | 2,092 | 0 | |
| 6 | Sofit, Cornice and gables | 8,368 | 0 | *4,185* ~~8,368~~ | 0 | *4,185* ~~8,368~~ *50* ~~100.00~~% | | *4,185* ~~0~~ | 0 | *RB* |
| 7 | Roof Railing System | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 | |
| 8 | Exterior siding-replace loose damage boards | 8,368 | 0 | 8,368 | 0 | 8,368 | 100.00 % | 0 | 0 | |
| 9 | Windows and exterior doors | 16,737 | 0 | 0 | 0 | 0 | 0.00 % | 16,737 | 0 | |
| 10 | Heating & A/C duct | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 | |
| 11 | Plumbing rough in and stack out | 8,368 | 4,184 | 0 | 0 | 4,184 | 50.00 % | 4,184 | 0 | |
| 12 | Plumbing fixtures | 16,736 | 0 | 0 | 1,029 | 1,029 | 6.15 % | 15,707 | 0 | |
| 13 | Bathroom Mirrors | 8,368 | 0 | 0 | 530 | 530 | 6.33 % | 7,838 | 0 | |
| 14 | Wiring Rough in | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 | |
| 15 | Exterior primed and caulked | 8,368 | 0 | 8,368 | 0 | 8,368 | 100.00 % | 0 | 0 | |
| 16 | Sheetrock Touch up/water repair | 33,473 | 33,473 | 0 | 0 | 33,473 | 100.00 % | 0 | 0 | |
| 17 | Cabinets | 125,525 | 0 | *75,315* ~~94,144~~ | 0 | *75,315* ~~94,144~~ *60* 75.00 % | | *50,2* ~~31,381~~ | 0 | *RB* |
| 18 | Granite Counter tops | 75,315 | 0 | *30,126* ~~37,658~~ | 0 | *30,126* ~~37,658~~ *40* 50.00 % | | *45,18* ~~37,658~~ | 0 | *RB* |
| 19 | Sprial Staircase | 25,105 | 0 | 12,553 | 0 | 12,553 | 50.00 % | 12,553 | 0 | |
| 20 | Interior Stair Case | 16,736 | 0 | 8,368 | 0 | 8,368 | 50.00 % | 8,368 | 0 | |
| 21 | Interior Trim | 16,736 | 13,389 | 0 | 0 | 13,389 | 80.00 % | 3,347 | 0 | |

AIA Document G703™ – 1992. Copyright © 1963, 1965, 1966, 1967, 1970, 1978, 1983 and 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:35:40 on 08/05/2009 under Order No.9785529298_1 which expires on 07/13/2010, and is not for resale.
User Notes:                                                                                                     (1714582833)

1

*Appl. # 002*

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 22 | Interior Paint | 33,473 | 21,423 | 0 | 0 | 21,423 | 64.00 % | 12,050 | 0 |
| 23 | Interior Hand Rail | 16,736 | 5,523 | 0 | 0 | 5,523 | 33.00 % | 11,213 | 0 |
| 24 | Exterior Paint | 8,368 | 0 | 3,347 | 0 | 3,347 | 40.00 % | 5,021 | 0 |
| 25 | Electrical Fixtures | 8,368 | 0 | 8,368 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 26 | Appliances | 83,683 | 47,690 | 0 | 0 | 47,690 | 56.99 % | 35,993 | 0 |
| 27 | HVAC Replacements and Finals | 16,736 | 13,389 | 0 | 0 | 13,389 | 80.00 % | 3,347 | 0 |
| 28 | Fire Suppression System | 25,105 | 0 | 0 | 0 | 0 | 0.00 % | 25,105 | 0 |
| 29 | Interior Closets | 8,368 | 0 | ~~0~~ ~~8,368~~ | 0 | ~~0~~ ~~8,368~~ 0 | 100.00 % | 8,368 ~~0~~ | 0 *RB* |
| 30 | Interior Doors | 16,736 | 10,711 | 4,351 ~~0~~ | 0 | 15,062 ~~10,711~~ 90 | 64.00 % | 1,674 ~~6,025~~ | 0 *RB* |
| 31 | Tile Repair and Replacement | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 32 | Brick Pavers | 8,368 | 0 | 0 | 0 | 0 | 0.00 % | 8,368 | 0 |
| 33 | Landscaping | 33,473 | 0 | 8,368 | 0 | 8,368 | 25.00 % | 25,105 | 0 |
| 34 | Floor Coverings-resurface/water damage | 25,105 | 0 | 0 | 0 | 0 | 0.00 % | 25,105 | 0 |
| 35 | Final Draw-clean up/punch List | 66,947 | 0 | 0 | 0 | 0 | 0.00 % | 66,947 | 0 |
| | **GRAND TOTAL** | $836,825 | $225,045 | ~~$218,411~~ | $1,559 | ~~$445,016~~ | ~~53.18 %~~ | ~~$391,809~~ | $0 *RB* |

*184,073*            *410,677*    *49 %*  *426,148*          *RB*

AIA Document G703™ – 1992. Copyright © 1963, 1965, 1966, 1967,1970, 1978, 1983 and 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:35:40 on 08/05/2008 under Order No.9766529296_1 which expires on 07/13/2010, and is not for resale.
User Notes:                                                                                                                    (1714582833)

2



DAG Architects Inc.
1223 Airport Road
Destin, Florida 32541
P 850-837-8152 F 850-654-4276
www.dagarchitects.com

## Architect's Field Report

**Project Name:** Summer Place

**Project No: 09025A**                              **Date:** 8-07-09

**Time: 10:00AM**          **Temp. Range:** 90          **Weather: sunny**

**Present at Site:** Painting Crew, Electrical crew, Counter top crew, and Irrigation crew

**Work in Progress:**  The painting crew was painting the inside of the garages and also painting the exterior of the buildings. The electrical crew was installing light fixtures in the north building. The counter top crew was installing kitchen counter tops on the west building. The irrigation crew was laying out there system.

**Observations:  The site was neat and orderly. The contractor has made good progress on cleaning the garages of the units. A lot of the extra materials, junk, trash has been removed. The painting crew is working on the exteriors of the units which is making a fresh appearance to the outsides. The roof decks have been completed and look good. There is a lot of mildew still on the soffits at this time. They still have to paint the exterior doors to the units.**
    **The interior of the units are looking better. Most of the interior painting on walls and door has been completed. There is fair amount of bi fold doors and door hardware to be installed. In the most of the kitchens the base cabinets have been set. The 75% of the granite counter tops have been set where kitchen sinks are the outside walls top have not been set.  Only 2 units have the upper cabinets done at this time. There has been a lot of work done on the spiral stair cases.**

The A/C units were running. The contractor had installed new filters in the units. The interiors were a lot cleaner. The finish work is going. The project seems to be well staffed when I was there.

**Items to Verify**: Liens releases and any material back up

**Information or Action Required**: I have reviewed the pay request and take exception to the amounts requested. Please see my marked up pay request.

**Attachments: See pictures**

**Copies To**: Mike Underwood

With Enclosures:

**Report By**: Kenny Bell

**Hunnicutt Insurance**
P.O. Box 906
Fort Walton Beach, FL 32549
850.243.8112

# Payment Receipt

| Receipt Number | 0000101 |
|---|---|
| Date | 08/11/2009 |
| Page | 1 of 1 |

Summer Place LLC
4800 Whitesburg Dr
Suite 30-351
Huntville, AL 35802

| Payment Information | |
|---|---|
| Payment Type | Check |
| Payment Amount | 5,342.14 |
| Signed By: | |

| Policy | Invoice | Description | Amount |
|---|---|---|---|
| On Account<br>General Liability | 47240 | Check Payment | 5342.14 |

| Total |
|---|
| 5,342.14 |

Thank you

**Hunnicutt Insurance**
P.O. Box 906
Fort Walton Beach, FL 32549
850.243.8112

# Payment Receipt

| Receipt Number | 0000100 |
|---|---|
| Date | 08/11/2009 |
| Page | 1 of 1 |

| Payment Information | |
|---|---|
| Payment Type | Check |
| Payment Amount | 9,716.63 |
| Signed By: | |

Summer Place LLC
4800 Whitesburg Dr
Suite 30-351
Huntville, AL 35802

| Policy | Invoice | Description | Amount |
|---|---|---|---|
| On Account<br>Property policy | 47238 | Check Payment | 9716.63 |
|  |  |  |  |
|  |  | **Total** | |
|  |  |  | 9,716.63 |

Thank you

# ▨ AIA® Document G702/CMa™ – 1992

RECEIVED

AUG 24 2009

*Application and Certificate for Payment* Construction Manager-Adviser Edition

| TO OWNER: Summer Place, LLC | PROJECT: Summer Place Town Homes<br>Santa Rosa Beach, Florida | APPLICATION NO: 003 | Distribution to:<br>OWNER: X<br>CONSTRUCTION MANAGER: X<br>ARCHITECT: |
|---|---|---|---|

PERIOD TO:
CONTRACT DATE:
PROJECT NOS: 090630a / Click Services
(VDM, LLC) / Summer Place

FROM
CONTRACTOR:
CONTRACT FOR: General Construction

VIA CONSTRUCTION
MANAGER:
VIA ARCHITECT:

CONTRACTOR:
FIELD:
DAQ: X

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM ................................................ $ | 836,837.00 |
| 2. NET CHANGE BY CHANGE ORDERS ................................ $ | 0.00 |
| 3. CONTRACT SUM TO DATE (Line 1 ± 2) ............................ $ | 836,837.00 |
| 4. TOTAL COMPLETED & STORED TO DATE (Column G on G703) ..... $ | ~~606,267.00~~ 698,285.00 |

5. RETAINAGE:
  a. 100 % of Completed Work
    (Column D + E on G703)      $    0.00
  b. 100 % of Stored Material
    (Column F on G703)      $    0.00

  Total Retainage (Lines 5a + 5b or Total in Column I of G703) ......... $   0.00

6. TOTAL EARNED LESS RETAINAGE ............................ $ ~~606,267.00~~ 5,98,285.00
  (Line 4 less Line 5 Total)     250,677.00
7. LESS PREVIOUS CERTIFICATES FOR PAYMENT ............ $ ~~405,756.00~~ 347,708.00
  (Line 6 from prior Certificate)
8. CURRENT PAYMENT DUE ................................................ $ ~~200,511.00~~

9. BALANCE TO FINISH, INCLUDING RETAINAGE   238,452.00
  (Line 3 less Line 6)     $ ~~230,570.00~~

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $ 0.00 | $ 0.00 |
| Total approved this Month | $ 0.00 | $ 0.00 |
| TOTALS | $ 0.00 | $ 0.00 |
| NET CHANGES by Change Order | $ | 0.00 |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:

By: *Mike R Click*    Date: August 21, 2009

State of: Florida

County of: Walton

Subscribed and sworn to before
me this    day of
Notary Public:
My Commission expires:

*(Notary seal: RHONDA J. H... NOTARY ... #DD682... STATE OF FLORIDA)*

## CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Construction Manager and Architect certify to the Owner that to the best of their knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED ........................................... $ ~~200,511.00~~ 347,708.00

*(Attach explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified.)*

CONSTRUCTION MANAGER:

By:         Date:

ARCHITECT:

By:         Date:

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA Document G702/CMa™ – 1992. Copyright © 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:58:48 on 08/22/2009 under Order No.9785529298_1 which expires on 07/13/2010, and is not for resale.
User Notes:      (1701918251)

1

# AIA Document G703™ – 1992

*New Revisions per Kenny (percentage of Completion is reduced on several items)*

## Continuation Sheet

AIA Document G702, APPLICATION AND CERTIFICATION FOR PAYMENT,
containing Contractor's signed certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

APPLICATION NO: 003
APPLICATION DATE:
PERIOD TO: 08/21/2009
ARCHITECT'S PROJECT NO: 090630a

| A | B | C | D | E | F | G | | H | I |
|---|---|---|---|---|---|---|---|---|---|
| | | | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G÷C) | BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE RATE) |
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION (D + E) | THIS PERIOD | | | | | |
| 1 | Pre Construction Draw | 33,473 | 33,473 | 0 | 0 | 33,473 | 100.00 % | 0 | 0 |
| 2 | Permits | 16,737 | 4,416 ~~8,085~~ | 3,347 | 0 | 7763 ~~11,432~~ | 46 68.31 % | 8,974 ~~5,304~~ | 0 |
| 3 | Utilities | 16,737 | 4,960 ~~4,728~~ | 4,184 | 0 | 9,144 ~~8,922~~ | 55 53.31 % | 7,593 ~~7,815~~ | 0 |
| 4 | Trash Clean up/Removal | 8,368 | 5,022 | 2,092 | 0 | 7,114 | 85.01 % | 1,254 | 0 |
| 5 | Roof Decking-Repair/Coat | 8,368 | 6,276 ~~6,275~~ | 1,255 | 0 | 7531 ~~7,530~~ | 90 89.98 % | 837 ~~838~~ | 0 |
| 6 | Sofit, Cornice and gables | 8,368 | 4,185 ~~2091 4,183~~ | | 0 | 6276 ~~8,368~~ | 75 100.00 % | ~~2092~~ | 0 |
| 7 | Roof Railing System | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 8 | Exterior siding-replace loose damage boards | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 9 | Windows and exterior doors | 16,737 | 0 | 13,390 | 0 | 13,390 | 80.00 % | 3,347 | 0 |
| 10 | Heating & A/C duct | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 11 | Plumbing rough in and stack out | 8,368 | 4,184 | 4,184 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 12 | Plumbing fixtures | 16,736 | 1,029 | 15,707 | 0 | 16,736 | 100.00 % | 0 | 0 |
| 13 | Bathroom Mirrors | 8,368 | 530 | 0 | 0 | 530 | 6.33 % | 7,838 | 0 |
| 14 | Wiring Rough in | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 15 | Exterior primed and caulked | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 16 | Sheetrock Touch up/water repair | 33,473 | 33,473 | 0 | 0 | 33,473 | 100.00 % | 0 | 0 |
| 17 | Cabinets | 125,525 | 75,315 | 31,381 | 0 | 106,696 | 85.00 % | 18,829 | 0 |
| 18 | Granite Counter tops | 75,315 | 30,126 | 26,812 | 0 | 56,938 | 75.60 % | 18,377 | 0 |
| 19 | Sprial Staircase | 25,105 | 12,553 | 8,787 | 0 | 21,340 | 85.00 % | 3,765 | 0 |
| 20 | Interior Stair Case | 16,736 | 8,368 ~~0 5,858 14,226~~ | | 0 | 14,226 | 85.00 % | 2,510 | 0 |
| 21 | Interior Trim | 16,736 | 13,389 | 1,674 | 0 | 15,063 | 90.00 % | 1,673 | 0 |

AIA Document G703™ – 1992. Copyright © 1963, 1965, 1966, 1967,1970, 1978, 1983 and 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:29:22 on 08/21/2009 under Order No.8785529298_1 which expires on 07/13/2010, and is not for resale.
User Notes: (1114530608)

PAY Appl. #3

| A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | 669 | |
| 22 | Interior Paint | 33,473 | 21,423 | 11,381 ~~12,050~~ | 0 | 32,804 ~~33,473~~ | ~~100.00%~~ 98% | 0 | 0 |
| 23 | Interior Hand Rail | 16,736 | 5,523 | 7,029 | 0 | 12,552 | 75.00% | 4,184 | 0 |
| 24 | Exterior Paint | 8,368 | 3,347 3,347 5,021 | | 0 | 6,694 ~~8,368~~ | ~~100.00%~~ 80% | 0 1,674 | 0 |
| 25 | Electrical Fixtures | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00% | 0 | 0 |
| 26 | Appliances | 83,683 | 47,690 | 0 | 0 | 47,690 | 56.99% | 35,993 | 0 |
| 27 | HVAC Replacements and Finals | 16,736 | 13,389 | 3,347 | 0 | 16,736 | 100.00% | 0 | 0 |
| 28 | Fire Suppression System | 25,105 | 0 | 25,105 | 0 | 25,105 | 100.00% | 0 | 0 |
| 29 | Interior Closets | 8,368 | 0 | 0 | 0 | 0 | 0.00% | 8,368 | 0 |
| 30 | Interior Doors | 16,736 | 15,062 | 0 | 0 | 15,062 | 90.00% | 1,674 | 0 |
| 31 | Tile Repair and Replacement | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00% | 0 | 0 |
| 32 | Brick Pavers | 8,368 | 0 | 0 | 0 | 0 | 0.00% | 8,368 | 0 |
| 33 | Landscaping | 33,473 | 8,368 | 16,737 | 0 | 25,105 | 75.00% | 8,369 | 0 |
| 34 | Floor Coverings-resurface/water damage | 25,105 | 0 | | 0 | 0 | 0.00% | 25,105 | 0 |
| 35 | Final Draw-clean up/punch List | 66,947 | 0 | 0 | 0 | 0 | 0.00% | 66,947 | 0 |
| | GRAND TOTAL | $836,825 | ~~$405,756~~ | ~~$200,511~~ | $0 | ~~$606,267~~ | ~~72.45%~~ | ~~$230,558~~ | $0 |

410,677   187,708        598,385   72%   238,440

AIA Document G703™ – 1992. Copyright © 1963, 1965, 1966, 1967, 1970, 1978, 1983 and 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:29:22 on 08/21/2009 under Order No.9756529298_1 which expires on 07/13/2010, and is not for resale.
User Notes:                                                                                                    (1114530608)

2

MRC



DAG Architects Inc.
1223 Airport Road
Destin, Florida 32541
P 850-837-8152 F 850-654-4276
www.dagarchitects.com

## Architect's Field Report

**Project Name:** Summer Place

**Project No:** 09025A                                    **Date:** 8-24-09

**Time:** 9:00Am            **Temp. Range:** 85       **Weather:** Sunny

**Present at Site:** Cabinet crew, Carpenter crew, Painting crew, Cleaning crew, and landscaping crew.

**Work in Progress:** The cabinet crew was installing crown molding in the west building. The carpentry crew was working on hand rails in the east building. The painting crew was working on painting in the east building. The cleaning crew was working on the east building cleaning floors.

**Observations:  The site was neat and orderly. The landscaping contractor had installed the sprinkler system and palm tresses' around the site. The sod was to be delivered at noon today the contractor was finishing the finial grading on the site. The exterior of the buildings and the site work is looking good. See photos. I talked to the contractor about pressure washing the soffits on the roof area.**

**On the interior of the east building (8-24) there has been a lot of finish work done. The carpentry crew was finishing the hand rails and cleaning crews were cleaning the units. The 2 end units were missing a couple of upper cabinet but the contractor said they were due to day. This building is nearing completion.**

**The interior of the west building (7-27) are a little behind the east building in finishes. The cabinet crew was finishing the trim on the case work.**

The carpenters were working on the spiral stair treads and landings. The cleaning has not started in these units. There were a few units missing shelving but the brackets had been installed. The door hardware has been installed on all the doors.

The North building (44-52) the interior of these units were coming along. The main stairs have been installed. The spiral stairs are still under construction at this time. The contractor said that a few pieces were still on order. The bi fold doors on the 1st floor have not been installed but they have been painted. The shelving has not been installed in these units. The door hardware has not been installed but is on site. The cabinets were installed but the trim has not been installed at this time.

As a general note the cabinet doors for the 3rd floor bath rooms are missing. There is a lot of the draw front missing though out the units. The appliances have not been delivered but Barbra said the date of the delivery was 8-28-09. Most of the exterior doors still need hardware and painting. Overall the project is moving along well.


**Items to Verify:** none at this time

**Information or Action Required:** See changes on pay request


**Attachments: See pictures**

**Copies To:**   Mike Underwood

---

                                                              With Enclosures:


**Report By:** Kenny Bell

# AIA® Document G702/CMa™ – 1992

## *Application and Certificate for Payment* Construction Manager-Adviser Edition

| | | |
|---|---|---|
| TO OWNER: Summer Place, LLC | PROJECT: Summer Place Town Homes<br>Santa Rosa Beach, Florida | APPLICATION NO: 004 |

Distribution to:
OWNER: X
CONSTRUCTION MANAGER: X
ARCHITECT:
CONTRACTOR:
FIELD:
DAQ: X

PERIOD TO: September 07, 2009
CONTRACT DATE:
PROJECT NOS: 090630a / Click Services
(VDM, LLC) / Summer Place

FROM
CONTRACTOR:
CONTRACT FOR: General Construction

VIA CONSTRUCTION
MANAGER:
VIA ARCHITECT:

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM | $ | 836,837.00 |
| 2. NET CHANGE BY CHANGE ORDERS | $ | 0.00 |
| 3. CONTRACT SUM TO DATE (Line 1 ± 2) | $ | 836,837.00 |
| 4. TOTAL COMPLETED & STORED TO DATE (Column G on G703) | $ | 757,150.00 |

5. RETAINAGE:
a. 0 % of Completed Work
(Column D + E on G703)                                    $         0.00
b. 0 % of Stored Material
(Column F on G703)                                        $         0.00

Total Retainage (Lines 5a + 5b or Total in Column I of G703) ........ $         0.00
6. TOTAL EARNED LESS RETAINAGE ........ $   757,150.00
(Line 4 Less Line 5 Total)                              − 758,395.60
7. LESS PREVIOUS CERTIFICATES FOR PAYMENT ........ $   ~~599,386.00~~
(Line 6 from prior Certificate)                         −1,235.60
8. CURRENT PAYMENT DUE ........ $   ~~158,764.00~~
9. BALANCE TO FINISH, INCLUDING RETAINAGE →  *Actual* $ 77,452.00
(Line 3 less Line 6)        $   ~~79,687.00~~
( *Includes* −1,235.00 )

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $ 0.00 | $ 0.00 |
| Total approved this Month | $ 0.00 | $ 0.00 |
| TOTALS | $ 0.00 | $ 0.00 |
| NET CHANGES by Change Order | $ 0.00 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:

By: _____  Date: September 07, 2009

State of: Florida

County of: Walton

Subscribed and sworn to before
me this        day of
Notary Public:
My Commission expires:

## CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Construction Manager and Architect certify to the Owner that to the best of their knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED ........ $   ~~158,765.00~~   − 0 −

*(Attach explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified.)*

CONSTRUCTION MANAGER:

By: _____  Date: _____

ARCHITECT:

By: _____  Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA Document G702/CMa™ – 1992. Copyright © 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:03:28 on 09/04/2009 under Order No.9785529298_1 which expires on 07/13/2010, and is not for resale.
User Notes:                                                                                            (2002417458)

1

 **AIA® Document G703™ – 1992**

## Continuation Sheet

AIA Document G702, APPLICATION AND CERTIFICATION FOR PAYMENT,
containing Contractor's signed certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

APPLICATION NO: 004
APPLICATION DATE:
PERIOD TO: 09/07/2009
ARCHITECT'S PROJECT NO: 090630a

| A | B | C | D | E | F | G | | H | I |
|---|---|---|---|---|---|---|---|---|---|
| | | | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G ÷ C) | BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE RATE) |
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION (D + E) | THIS PERIOD | | | | | |
| 1 | Pre Construction Draw | 33,473 | 33,473 | 0 | 0 | 33,473 | 100.00 % | 0 | 0 |
| 2 | Permits | 16,737 | 7,763 | 3,347 | 0 | 11,110 | 66.38 % | 5,626 | 0 |
| 3 | Utilities | 16,737 | 9,144 | 4,184 | 0 | 13,328 | 79.63 % | 3,409 | 0 |
| 4 | Trash Clean up/Removal | 8,368 | 7,114 | 900 | 0 | 8,014 | 95.77 % | 354 | 0 |
| 5 | Roof Decking-Repair/Coat | 8,368 | 7,531 | 837 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 6 | Sofit, Cornice and gables | 8,368 | 6,276 | 2,092 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 7 | Roof Railing System | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 8 | Exterior siding-replace loose damage boards | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 9 | Windows and exterior doors | 16,737 | 13,390 | 3,347 | 0 | 16,737 | 100.00 % | 0 | 0 |
| 10 | Heating & A/C duct | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 11 | Plumbing rough in and stack out | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 12 | Plumbing fixtures | 16,736 | 16,736 | 0 | 0 | 16,736 | 100.00 % | 0 | 0 |
| 13 | Bathroom Mirrors | 8,368 | 530 | 4,500 | 0 | 5,030 | 60.11 % | 3,338 | 0 |
| 14 | Wiring Rough in | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 15 | Exterior primed and caulked | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 16 | Sheetrock Touch up/water repair | 33,473 | 33,473 | 0 | 0 | 33,473 | 100.00 % | 0 | 0 |
| 17 | Cabinets | 125,525 | 106,696 | 18,829 | 0 | 125,525 | 100.00 % | 0 | 0 |
| 18 | Granite Counter tops | 75,315 | 56,938 | 18,377 | 0 | 75,315 | 100.00 % | 0 | 0 |
| 19 | Sprial Staircase | 25,105 | 21,340 | 3,765 | 0 | 25,105 | 100.00 % | 0 | 0 |
| 20 | Interior Stair Case | 16,736 | 14,226 | 2,510 | 0 | 16,736 | 100.00 % | 0 | 0 |
| 21 | Interior Trim | 16,736 | 15,063 | 1,673 | 0 | 16,736 | 100.00 % | 0 | 0 |

AIA Document G703™ – 1992. Copyright © 1963, 1965, 1966, 1967,1970, 1978, 1983 and 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:49:57 on 09/04/2009 under Order No.9785529298_1 which expires on 07/13/2010, and is not for resale.
User Notes: (1146254260)

1

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 22 | Interior Paint | 33,473 | 32,804 | 669 | 0 | 33,473 | 100.00 % | 0 | 0 |
| 23 | Interior Hand Rail | 16,736 | 12,552 | 4,184 | 0 | 16,736 | 100.00 % | 0 | 0 |
| 24 | Exterior Paint | 8,368 | 6,694 | 1,674 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 25 | Electrical Fixtures | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 26 | Appliances | 83,683 | 47,690 | 35,993 | 0 | 83,683 | 100.00 % | 0 | 0 |
| 27 | HVAC Replacements and Finals | 16,736 | 16,736 | 0 | 0 | 16,736 | 100.00 % | 0 | 0 |
| 28 | Fire Suppression System | 25,105 | 25,105 | 0 | 0 | 25,105 | 100.00 % | 0 | 0 |
| 29 | Interior Closets | 8,368 | 0 | 8,368 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 30 | Interior Doors | 16,736 | 15,062 | 1,674 | 0 | 16,736 | 100.00 % | 0 | 0 |
| 31 | Tile Repair and Replacement | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 32 | Brick Pavers | 8,368 | 0 | 8,368 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 33 | Landscaping | 33,473 | 25,105 | 8,368 | 0 | 33,473 | 100.00 % | 0 | 0 |
| 34 | Floor Coverings-resurface/water damage | 25,105 | 0 | 25,105 | 0 | 25,105 | 100.00 % | 0 | 0 |
| 35 | Final Draw-clean up/punch List | 66,947 | 0 | 0 | 0 | 0 | 0.00 % | 66,947 | 0 |
| | GRAND TOTAL | $836,825 | $598,386 | $158,765 | $0 | $757,150 | 90.48 % | $79,674 | $0 |

AIA Document G703™ – 1992. Copyright © 1963, 1965, 1966, 1967,1970, 1978, 1983 and 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:49:57 on 09/04/2009 under Order No.9785529298_1 which expires on 07/13/2010, and is not for resale.
User Notes:                                                                                                                                                            (1145254250)

2

**Architect's Field Report**

**Project Name:**  Summer Place

**Project No:**  09025A                    **Date:**  9.8.09

**Time:** 1:00pm        **Temp. Range:**  90      **Weather:** Sunny

**Present at Site:** Carpenter crew; Labor crew; Painting crew

**Work in Progress:**
- The carpentry crew is working to enclose the AC vent on the interior
- The labor crew is clearing out the garages of the units and also cleaning dirt out of the storm water systems
- The painting crew was touching up the 7-27 units

**Observations:**
Units 8 – 24
- These units are very close to completion with a small amount of touch up paint and cleaning.  Note the cabinet doors are missing from the 3rd floor baths.

Units 44 – 52
- The doors have not been installed on the 1st floor.
- The stairs need to have finish on them.
- Door locks are missing.
- Roof landing needs paint finish and urethane on floors and steps.
- These units are a little behind the others, but they are making good progress on them.

Units 7 – 27
- These units are looking finished with case work and painting complete.
- There are workers touching up paint throughout.  These units look really good.
- The cleaning crews have started working on these units.
- The exterior landscape looks complete.  The contractor is having a problem with sod.
- The sod has a major bug infestation making the grass brown.  The contractor is treating the problem with pesticides.
- The exterior of the units all look finished.  There is still one window not installed in unit 8.  The contractor is waiting for painting.

DAG architects

AA-C000745

4223 airport road

destin, florida

32541

p 850.837.8152

f 850.654.4276

**Items to Verify:**

I take no exception to the pay request at this time.

**Information or Action Required:**

Lien release and back-up invoices for utilities is missing.

**Attachments: See pictures**

**Copies To:**

Mike Underwood          With Enclosures:   Progress Pictures

**Report By:** Kenny Bell

**Architect's Field Report**

**Project Name**:  Summer Place

**Project No**:   09025A                                              **Date:**  9.11.09

**Time:** 1:00pm          **Temp. Range**:   80          **Weather:** Sunny

**Present at Site**: Carpenter crew; Cleaning crew; Painting crew; Flooring crew

**Work in Progress**:
- The contractor is making good progress on the units.  The SE units were cleaning up nicely.  Most of these units are complete with the exception of some cabinet doors in one of the baths.  Also, the one window in the #8 unit has not been repaired.
- The SW building is also close.  The contractor is finishing the door hardware and cabinet work.  They were also touching up paint through out the building.
- The north building had a fair amount of painting, cabinets, and stair work to be completed

**Observations:**
The site was neat and orderly.  The landscape and drive … side walk look great. The contractor is making good progress on the interiors of the units.  You can see units are finishing up nicely.  The contractor said it would be finished in two weeks.

**Items to Verify:**


**Information or Action Required:**


**Attachments:**  See pictures

**Copies To:**

Mike Underwood                    With Enclosures:    Progress Pictures

**Report By**: Kenny Bell

*DAG architects*

*AA–C000745*

*1223 airport road*

*destin, florida*

*32541*

*p 850.837.8152*

*f 850.654.4276*

*www.dagarchitects.com*

September 16, 2009

Mr. Michael T. Underwood
First Citizens Bank of Georgia
1797 Highway 400 South
Dawsonville, GA  30534



RE: Summer Place Town Homes, Santa Rosa Beach, Florida
    Pay Application No. 4 - Period thru September 7, 2009
    DAG Project No. 09025A

Dear Mike,

Enclosed for your information and review is AIA Document G702, Application and Certification for Payment No. 4, submitted by Click Services, Inc. for the Summer Place Town Homes project in Santa Rosa Beach, Florida.

After researching and review, it has come to my attention that last month's Pay Application No. 3 was submitted for payment and was incorrect; therefore, Click Services was overpaid in the amount of $160,000.00. The error occurred because an amount was incorrectly carried over to Line Item No. 7 from the previous application, thus increasing the current payment due.  There were many revisions, reductions and increases on PA 2 & 3, which made it very difficult to sort through.

Since Pay Application No. 4 is asking for a payment of $ 158,764.00, there should be no payment made to them for this Pay Application, as they were paid the $160,000 more on Pay Appl. No. 3.

There was an overage of $1,235.00, which was included in the last payment application to Click. This amount needs will be reduced on the Final Pay Application No. 5.

### Recap:

Pay Application No. 4 – recommend no payment be made due to overage on last month's Pay Application

*Upon receipt of Pay Application No. 5 – this should be the final payment in the amount of $78,452.00, as summarized below.

Summary:

| | | |
|---|---|---|
| Original Contract Sum: | $836,837.00 | |
| Pay Application No. 1: | $232,880.00 | |
| Pay Application No. 2: | $177,797.00 | |
| Pay Application No. 3: | $347,708.00 | * Overpayment occurred – amount should have been $187,708.00. |
| *Balance to Finish: | $ 78,452.00 | This should be the final amount due to Click on Pay Application No. 5, upon completion of project. |

The total amount of funds that have been paid to Click Services, Inc. is $758,385.00; which leaves a balance of $78,452.00.

DAG architects

AA–C000745

1223 airport road

destin, florida

32541

p 850.837.8152

f 850.654.4276

www.dagarchitects.com

**Invoices received from Barbara Stokes:**

| Invoice Paid: | Company | Amount | For |
|---|---|---|---|
| | Regional Utilities | $ 746.35 | Water/Sewer |
| | **Total Other Expenses:** | | **$ 746.35** |

I have attached all materials and backup for your information.  Also, included is the Architect's Field Report with photos, for your information.

All Originals will be forwarded via US Mail for your processing.

Sincerely,

Rita M. Bronson, for Kenny Bell, CA Director
Attachments

Cc: Barbara Stokes, Managing Member

**Architect's Field Report**

**Project Name:**   Summer Place

**Project No:**   09025A                                    **Date:** 9.22.09

**Time:** 1:00pm        **Temp. Range:**   80        **Weather:** Sunny

**Present at Site:**   Carpentry crew; Planting crew; Cleaning crew; Flooring crew; Furniture crew

**Work in Progress:**
- The contractor has demobilized the site of extra materials, dumpsters, etc.
- The painting crew was doing touch up work.
- The carpentry crew was hanging mirrors.
- The cleaning crew was working on the final cleaning on the project.
- The flooring crew was finishing the last coat on the north units.
- The furniture crew was installing furniture in the west building.

**Observations:**
- The site work was complete.  The place looks brand new.
- The exterior of the building is 100% complete with all windows cleaned and painted.
- The interior is at 99% with only a few punch list items to complete.
- The east and west buildings are 100% complete.  He north building is at 99%.
- The units look good with only a few items to complete.
- I noted to the contractor that the middle unit of the north building may need the roof scuppers adjusted for positive roof runoff.  With the furniture going in, these units look ready to be occupied.

**Items to Verify:**  None at this time

**Information or Action Required:**  None at this time

**Attachments:** Progress pictures

**Copies To:**

Mike Underwood                    With Enclosures:    Progress Pictures

**Report By:** Kenny Bell

DAG architects

AA-C000745

1223 airport road

destin, florida

32541

p 850.837.8152

f 850.654.4276

www.dagarchitects.com

# AIA® Document G703™ – 1992

## Continuation Sheet

AIA Document G702, APPLICATION AND CERTIFICATION FOR PAYMENT,
containing Contractor's signed certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column 1 on Contracts where variable retainage for line items may apply.

APPLICATION NO: 005
APPLICATION DATE:
PERIOD TO: 10/12/2009
ARCHITECT'S PROJECT NO: 090630a

| A | B | C | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G ÷ C) | BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE RATE) |
|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION (D + E) | THIS PERIOD | F | G | | H | I |
| 1 | Pre Construction Draw | 33,473 | 33,473 | 0 | 0 | 33,473 | 100.00 % | 0 | 0 |
| 2 | Permits | 16,737 | 11,111 | 5,626 | 0 | 16,737 | 100.00 % | 0 | 0 |
| 3 | Utilities | 16,737 | 13,328 | 3,409 | 0 | 16,737 | 100.00 % | 0 | 0 |
| 4 | Trash Clean up/Removal | 8,368 | 8,014 | 354 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 5 | Roof Decking-Repair/Coat | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 6 | Sofit, Cornice and gables | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 7 | Roof Railing System | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 8 | Exterior siding-replace loose damage boards | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 9 | Windows and exterior doors | 16,737 | 16,737 | 0 | 0 | 16,737 | 100.00 % | 0 | 0 |
| 10 | Heating & A/C duct | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 11 | Plumbing rough in and stack out | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 12 | Plumbing fixtures | 16,736 | 16,736 | 0 | 0 | 16,736 | 100.00 % | 0 | 0 |
| 13 | Bathroom Mirrors | 8,368 | 5,030 | 3,338 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 14 | Wiring Rough in | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 15 | Exterior primed and caulked | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 16 | Sheetrock Touch up/water repair | 33,473 | 33,473 | 0 | 0 | 33,473 | 100.00 % | 0 | 0 |
| 17 | Cabinets | 125,525 | 125,525 | 0 | 0 | 125,525 | 100.00 % | 0 | 0 |
| 18 | Granite Counter tops | 75,315 | 75,315 | 0 | 0 | 75,315 | 100.00 % | 0 | 0 |
| 19 | Sprial Staircase | 25,105 | 25,105 | 0 | 0 | 25,105 | 100.00 % | 0 | 0 |
| 20 | Interior Stair Case | 16,736 | 16,736 | 0 | 0 | 16,736 | 100.00 % | 0 | 0 |
| 21 | Interior Trim | 16,736 | 16,736 | 0 | 0 | 16,736 | 100.00 % | 0 | 0 |

AIA Document G703™ – 1992. Copyright © 1963, 1965, 1966, 1967,1970, 1978, 1983 and 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:06:20 on 10/14/2009 under Order No.9765529298_1 which expires on 07/13/2010, and is not for resale.
User Notes:                                                                                                                                (930104376)

1

| 22 | Interior Paint | 33,473 | 33,473 | 0 | 0 | 33,473 | 100.00 % | 0 | 0 |
|----|----------------|--------|--------|---|---|--------|----------|---|---|
| 23 | Interior Hand Rail | 16,736 | 16,736 | 0 | 0 | 16,736 | 100.00 % | 0 | 0 |
| 24 | Exterior Paint | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 25 | Electrical Fixtures | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 26 | Appliances | 83,683 | 83,683 | 0 | 0 | 83,683 | 100.00 % | 0 | 0 |
| 27 | HVAC Replacements and Finals | 16,736 | 16,736 | 0 | 0 | 16,736 | 100.00 % | 0 | 0 |
| 28 | Fire Suppression System | 25,105 | 25,105 | 0 | 0 | 25,105 | 100.00 % | 0 | 0 |
| 29 | Interior Closets | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 30 | Interior Doors | 16,736 | 16,736 | 0 | 0 | 16,736 | 100.00 % | 0 | 0 |
| 31 | Tile Repair and Replacement | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 32 | Brick Pavers | 8,368 | 8,368 | 0 | 0 | 8,368 | 100.00 % | 0 | 0 |
| 33 | Landscaping | 33,473 | 33,473 | 0 | 0 | 33,473 | 100.00 % | 0 | 0 |
| 34 | Floor Coverings-resurface/water damage | 25,105 | 25,105 | 0 | 0 | 25,105 | 100.00 % | 0 | 0 |
| 35 | Final Draw-clean up/punch List | 66,947 | 0 | 66,947 | 0 | 66,947 | 100.00 % | 0 | 0 |
| | GRAND TOTAL | $836,825 | $757,151 | $79,674 | $0 | $836,825 | 100.00 % | $0 | $0 |

AIA Document G703™ – 1992. Copyright © 1963, 1965, 1966, 1967,1970, 1978, 1983 and 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:06:20 on 10/14/2008 under Order No.9765528298_1 which expires on 07/13/2010, and is not for resale.
User Notes:                                                                                                          (930104376)

## WAIVER AND RELEASE OF LIEN UPON PROGRESS PAYMENT

STATE OF FLORIDA
COUNTY OF

$22,505,045.00 MPC 8-3-09

The undersigned lienor in consideration of the sum of $~~268,452.00~~ hereby waives and
release its lien and right to claim a lien for baor, services, or materials furnished through
July 20, 2009 to SUMMER PLACE, LLC on the job of SUMMER PLACE town homes;

LEGAL DESCRIPTION:  As plat recorded as Summer Place Town homes

This waiver and release does not cover any retention of labor, services, or materials
furnished after the date specified.

DATE on July 20, 2009

CLICK SERVICES

BY: _____

HEIDI A. PULLEN
MY COMMISSION # DD 628057
EXPIRES: January 11, 2011
Bonded Thru Notary Public Underwriters

Notary Public

## FINAL WAIVER AND RELEASE OF LIEN UPON FINAL
## PROGRESS PAYMENT

STATE OF FLORIDA
COUNTY OF WALTON

The undersigned lienor in consideration of the sum of $ 79,674.00 hereby waives and release its lien and right to claim a lien for, services, or materials furnished through October 12, 2009 to SUMMER PLACE, LLC on the job of SUMMER PLACE town homes;

LEGAL DESCRIPTION: As plat recorded in Walton County, Florida as Summer Place Town homes

This waiver and release does not cover any retention of labor, services, or materials furnished after the date specified.

DATE on October 12, 2009

CLICK SERVICES, LLC

BY: _____