1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:  OIL SPILL BY THE OIL RIG   *   10-MD-2179
              *DEEPWATER HORIZON* IN THE   *
6            GULF OF MEXICO ON            *   Section J
             APRIL 20, 2010               *
7                                          *   February 26, 2015
                                           *
8    Applies to:  10-4182, 10-4183,       *   New Orleans, Louisiana
                  13-2645, 13-2646,       *
9                 13-2647, 13-2813        *
                                           *
10   * * * * * * * * * * * * * * * * * *

11

12
              TELEPHONE STATUS CONFERENCE BEFORE
13              THE HONORABLE SALLY SHUSHAN
               UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20
     Official Court Reporter:      Toni Doyle Tusa, CCR, FCRR
21                                  500 Poydras Street, B-275
                                    New Orleans, Louisiana 70130
22                                  (504) 589-7778

23

24

25   Proceedings recorded by mechanical stenography using
     computer-aided transcription software.

1                        **I N D E X**

2                                                    PAGE

3    Alabama's Document Production              3

4    Stipulations                              6

5    Mobile and Baldwin County Properties      8

6    Recurring Revenue                         8

7    Alabama's Motion to Compel               13

8    State Tax and Revenue Database           13

9    Confidential Information                 13

10   Alabama's Third-Party Discovery          15

11   BP's Third-Party Discovery               17

12   Miscellaneous                            18

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>**PROCEEDINGS**</u>

**(February 26, 2015)**

THE COURT:  Good morning, everybody.

Okay.  Well, let's roll through the agenda, and we can conclude with the scheduling order and the e-mails that we got this morning.  How's that sound?

MR. MAZE:  Sounds like a good plan.

THE COURT:  Sounds like a plan?  Okay.

How are we doing on Alabama's document production?  Let's get an update.

MR. MILLER:  Judge, this is Parker Miller for the State of Alabama.  Good morning.  In terms of productions, we now have four productions out.  You may recall that the last time we talked we wanted to have four productions out.  One of our productions took a little longer than I had anticipated, but that went out this morning.  I can report that we are, I believe, still on track for a March 20 conclusion in what I would term substantial discovery.

THE COURT:  Good, good, good, good.  That's a good status report.

Any comment, BP?

MR. COLLIER:  Good morning, Your Honor.  It's Paul Collier on behalf of BP.  Yeah, we have received document productions from Alabama, including a document production this morning.  We are still in the process of assessing that that

1    material comes through.

2              Just a couple of points.  This may have some

3    more relevance when we talk about the litigation schedule here

4    momentarily, but there is a substantial amount of duplication

5    in materials in Alabama's production.  I think our vendor has

6    informed us about 25 percent of Alabama's production is

7    duplication.

8              Obviously we are dealing with that and it's not

9    anything we want the Court to take any action on.  We just note

10   that because it does add a lot of processing time, with respect

11   to us, in being able to get the materials ready for review.

12             THE COURT:  Okay.

13             MR. COLLIER:  The other issue is -- sorry,

14   Your Honor, I didn't mean to --

15             THE COURT:  No, that's okay.  Go ahead.  Finish up.

16             MR. COLLIER:  Then the other point, Your Honor -- and

17   again this may go more to the sufficiency issue when we get to

18   this, when we talk about the litigation schedule.  The majority

19   of the production that we have seen to date is similar to the

20   production that we saw from Alabama earlier, in this past

21   October, where it's heavily focused on materials from the

22   Department of Environmental Management, and specifically the

23   custodial files of two of their employees, Roy Collins and

24   Steve Jenkins.

25             So at this stage, at least, and just sort of a

| | | |
|---|---|---|
| 11:04:13 | 1 | preview when we talk about the litigation schedule, we are not |
| 11:04:17 | 2 | really in any position to be able to assess whether or not the |
| 11:04:19 | 3 | sufficiency issues that we had raised last October have been |
| 11:04:23 | 4 | addressed by this production. |
| 11:04:24 | 5 | THE COURT:  Okay.  I guess I'm not clear on why that |
| 11:04:28 | 6 | is.  You have looked at the first two productions, presumably, |
| 11:04:33 | 7 | but those were mostly those witnesses' custodial files? |
| 11:04:41 | 8 | MR. COLLIER:  It seemed to be that way, Your Honor, |
| 11:04:43 | 9 | that's correct. |
| 11:04:43 | 10 | THE COURT:  Okay.  In other words, you haven't seen |
| 11:04:47 | 11 | enough broad discovery yet to give me an assessment of what you |
| 11:04:51 | 12 | think. |
| 11:04:53 | 13 | MR. COLLIER:  That's exactly right, Your Honor. |
| 11:04:55 | 14 | THE COURT:  Parker, do you have any comments on that |
| 11:04:58 | 15 | or do you agree that that's generally true? |
| 11:05:00 | 16 | MR. MILLER:  Judge, just a few comments.  I would |
| 11:05:02 | 17 | agree with Paul that the initial productions are coming from |
| 11:05:06 | 18 | the Environmental Management.  It is a significant amount of |
| 11:05:11 | 19 | documents from those.  I would also note that the reason those |
| 11:05:15 | 20 | custodial files are so large is those were your two primary |
| 11:05:19 | 21 | participants in oil spill response.  So in terms of the |
| 11:05:25 | 22 | documents that, for instance, the Environmental Management |
| 11:05:25 | 23 | would produce, you would expect a significant number of those |
| 11:05:31 | 24 | documents coming from those individuals. |
| 11:05:32 | 25 | THE COURT:  Yes.  No, I'm not critical of it.  I just |

| | |
|---|---|
| 11:05:34 | 1 |
| 11:05:39 | 2 |
| 11:05:42 | 3 |
| 11:05:44 | 4 |
| 11:05:47 | 5 |
| 11:05:52 | 6 |
| 11:05:58 | 7 |
| 11:06:05 | 8 |
| 11:06:08 | 9 |
| 11:06:10 | 10 |
| 11:06:14 | 11 |
| 11:06:20 | 12 |
| 11:06:22 | 13 |
| 11:06:24 | 14 |
| 11:06:31 | 15 |
| 11:06:33 | 16 |
| 11:06:37 | 17 |
| 11:06:42 | 18 |
| 11:06:45 | 19 |
| 11:06:51 | 20 |
| 11:06:56 | 21 |
| 11:06:58 | 22 |
| 11:06:58 | 23 |
| 11:07:04 | 24 |
| 11:07:07 | 25 |

1  wanted to try to get a handle on what was going on, but that
2  makes sense.
3          MR. MILLER:  I guess the other point, to put it in
4  context, is that these next productions that we are rolling
5  out, Productions 3, 4, 5, and 6, are going to focus more on the
6  other departments.  I think there's one production that has
7  some additional oiling-related reports and documents, but these
8  next couple of productions will be pretty substantial in terms
9  of the various other departments.
10         THE COURT:  Right.  It will be a broader production
11 that Paul can then look at and assess as to sufficiency.
12         MR. MILLER:  That's correct, Your Honor.
13         THE COURT:  Okay.  Good.  All right.
14             How about the Anadarko draft stipulation?
15         MR. HASTINGS:  Good morning, Your Honor.  This is
16 Doug Hastings for Anadarko.  We submitted something to Alabama
17 this morning, which didn't give them a ton of time to review
18 it, so I think they are still taking a look at it.  I'm hopeful
19 that we can resolve -- we still have a little bit of way to go,
20 but it's just a footnote, and hopefully we can figure that out.
21         THE COURT:  Okay.  Good.
22         MR. MAZE:  This is Corey, Your Honor, for the
23 State of Alabama.  I disagree with one thing.  We have had
24 sufficient time to look at it.  We are not going to agree to
25 it.  Anadarko knows the particular language that I'm talking

| | | |
|---|---|---|
| 11:07:10 | 1 | about.  Frankly, Your Honor, it's a sticking point that if |
| 11:07:13 | 2 | Anadarko doesn't back off of, Alabama is just willing to say |
| 11:07:16 | 3 | now that we think they are going to have to be a defendant at |
| 11:07:19 | 4 | trial.  It's the same sticking point we have had for nearly |
| 11:07:24 | 5 | three months now. |
| 11:07:26 | 6 | THE COURT:  Should I have -- |
| 11:07:26 | 7 | MR. MAZE:  I don't think talking about it any further |
| 11:07:28 | 8 | is going to make any difference because every time we have |
| 11:07:32 | 9 | talked about this issue they come back with the same language. |
| 11:07:37 | 10 | We can give it two more weeks, but I just hate to keep putting |
| 11:07:40 | 11 | this off for Your Honor because it's just something we need to |
| 11:07:45 | 12 | get past. |
| 11:07:45 | 13 | THE COURT:  Well, look, guys, it's easy for me. |
| 11:07:47 | 14 | Either you all agree to a stipulation or we will proceed with |
| 11:07:52 | 15 | Anadarko as a defendant.  I'm not going to call a shot in that. |
| 11:07:59 | 16 | A stipulation doesn't involve me making y'all do anything, does |
| 11:08:03 | 17 | it? |
| 11:08:05 | 18 | MR. MAZE:  No, Your Honor.  We understand. |
| 11:08:08 | 19 | THE COURT:  You know, if you all want to give it one |
| 11:08:10 | 20 | last look at, it's fine.  If you all want to declare it dead in |
| 11:08:14 | 21 | the water, that's okay too. |
| 11:08:17 | 22 | MR. MAZE:  We will.  We will report back to you next |
| 11:08:19 | 23 | conference, and we will continue to try to work on it. |
| 11:08:22 | 24 | THE COURT:  Okay.  Again, if you don't want to |
| 11:08:24 | 25 | continue to work on it, you are not under a compulsion to do |

|   |   |
|---|---|
| 11:08:27 | 1 | so. |
| 11:08:29 | 2 | MR. MAZE:  Understood. |
| 11:08:31 | 3 | MR. HASTINGS:  Understood, Your Honor. |
| 11:08:31 | 4 | THE COURT:  Good enough. |

11:08:32   5    So let's talk about the Mobile and Baldwin
11:08:34   6  County property.  You all were going to work on narrowing the
11:08:40   7  scope of BP's requests, so I guess I'm looking for a status.
11:08:49   8    MR. MILLER:  Yes, Your Honor.  This is Parker Miller
11:08:51   9  for the state again.  We received a proposed number of
11:08:54  10  properties that BP was interested in.  I believe that number is
11:08:58  11  150 to 160.  I don't have it in front of me.  We are currently
11:09:03  12  assessing that and talking with the departments to figure out
11:09:06  13  how significant of a burden that would be.  My hope is that we
11:09:10  14  can get back to BP in short order on that and see if we cannot
11:09:16  15  come to some form of agreement before our next status
11:09:19  16  conference.
11:09:19  17    THE COURT:  Good.  Okay.
11:09:20  18    Let's talk about the recurring revenue issue
11:09:24  19  that you all were working on.
11:09:28  20    MR. MAZE:  This is Corey.  Parker is going to give
11:09:32  21  you an update, but I just wanted to run a quick clarification
11:09:39  22  by Your Honor to make sure we are all on the same page.
11:09:40  23    The original order that Your Honor set out had
11:09:42  24  both the scheduling dates and the limitations on the
11:09:46  25  departments and subdepartments that we had to respond to.

THE COURT:  Uh-huh.

MR. MAZE:  With regard to recurring revenue, Alabama's take on the Court's order is we have to give recurring revenues but only as to those departments and subdepartments which were in that original order.  So that if there's a recurring revenue of a department or subdepartment that wasn't on the order, we don't owe it to the defendants.

I will give you an example.  The Department of Conservation and Natural Resources are three particular divisions.  We have recurring revenues of hunting licenses. They are not one of the divisions that the Court has ordered and, frankly, they don't have anything to do with the oil spill.  Our reading of the Court's order would be that that would be nonresponsive because it doesn't come from any of the divisions in the Court's order.  We just wanted to make sure we are reading that correctly before we got into this so that we have a proper scope on what we are talking about.

THE COURT:  All right.

Paul, do you have a position on that?

MR. COLLIER:  Yes.  Thank you, Your Honor. Paul Collier on behalf of BP.  My response to that is, yeah, our interpretation of the order that Corey references is that it drew a line in the sand as far as where the State of Alabama would need to search for responsive information relating to the RFPs that we served.  It didn't preclude in its entirety our

11:11:13  1    opportunity to be able to obtain discovery from some of those
11:11:16  2    agencies that may fall outside the scope where there was a need
11:11:20  3    or a good cause for us to be able to access the information.
11:11:23  4              I think this is one of those situations where
11:11:27  5    that good cause would exist, where there is recurring revenue
11:11:30  6    that is received from at least one or more of these entities
11:11:35  7    outside the scope of that original order and, therefore, we
11:11:38  8    would be able to get discovery into that.
11:11:42  9              It doesn't sound like the burden should be that
11:11:43  10   substantial.  I think that was really the crux of the Court's
11:11:48  11   original order was trying to cabin the burden on the state.
11:11:50  12   This situation, where the specific information is very narrow
11:11:53  13   in scope, I think it's justified for Alabama to be able to
11:11:56  14   obtain that information.
11:11:58  15             **MR. MAZE:**  This is Corey.  I just want to add one
11:12:00  16   thing about what Paul said.  The request for production from BP
11:12:05  17   limits the request just to those departments and subdivisions
11:12:09  18   that were part of that Court's order.  So we interpret that to
11:12:12  19   mean that any other departments that aren't part of the Court's
11:12:17  20   order are nonresponsive anyway.  To hear BP say that we need to
11:12:21  21   turn over revenues for departments that are not only outside of
11:12:24  22   the Court's order but also outside of their actual definitions
11:12:28  23   or their original requests seems to be something that Alabama
11:12:31  24   is not required to do.  That's why I wanted to bring it up
11:12:35  25   today.

11:12:36  1    **THE COURT:**  Well, I didn't realize that this was a

11:12:38  2  dispute.  If, indeed, the request for production of documents

11:12:42  3  is limited to the state agencies that were in the original

11:12:50  4  scheduling order, then that's the breadth of the request.

11:12:56  5         If, indeed, BPXP believes it has good cause to

11:13:02  6  ask for recurring revenues for other departments or agencies:

11:13:05  7  One, it needs to make the request, it seems to me; and, two, it

11:13:11  8  does have to show good cause for going beyond the agencies that

11:13:15  9  we said are at issue.

11:13:16  10        So I didn't know that there was a debate or a

11:13:19  11  dispute going on, but it sounds like it's not currently because

11:13:23  12  the scope of the request is limited, huh?

11:13:27  13        **MR. MAZE:**  Yes, Your Honor.  This is not so much a

11:13:29  14  dispute; this is me trying to preemptively head anything off.

11:13:33  15        **THE COURT:**  I gotcha.

11:13:35  16        **MR. MAZE:**  With that, I will let Parker give you an

11:13:37  17  update on where we are.

11:13:40  18        **MR. COLLIER:**  I'm sorry to jump in.  This is

11:13:42  19  Paul Collier.  For clarification, is that something we can have

11:13:46  20  the ability to seek, then?  One of the issues that we have is

11:13:50  21  that we obviously don't understand or at least don't have full

11:13:53  22  exposure to how the state operates and where the revenues may

11:13:57  23  come from.  So to the extent we didn't make that request as far

11:13:57  24  as -- and this relates to the hunting licenses that Corey

11:14:03  25  identified.  We wouldn't have had reason to understand that

| | | |
|---|---|---|
| 11:14:05 | 1 | there may be agencies outside the ones that were identified in |
| 11:14:08 | 2 | the request that would have that information. |
| 11:14:12 | 3 | THE COURT:  I guess, Paul, my issue is this debate -- |
| 11:14:18 | 4 | I won't call it a dispute, but this debate is in a vacuum.  As |
| 11:14:23 | 5 | I understand it, you all have requested recurring revenue from |
| 11:14:27 | 6 | the state agencies that are at issue and have not requested |
| 11:14:33 | 7 | others.  I don't want to give you all a vacuum ruling. |
| 11:14:40 | 8 | If, indeed, you think you need something from |
| 11:14:44 | 9 | another agency, why don't you think about what that is.  Ask |
| 11:14:52 | 10 | Alabama for it.  If they object, we can put it on the calendar |
| 11:14:59 | 11 | and discuss the need for it and what the burden is and we will |
| 11:15:04 | 12 | decide it. |
| 11:15:05 | 13 | MR. COLLIER:  Yes.  Thank you, Your Honor.  That |
| 11:15:07 | 14 | makes sense. |
| 11:15:07 | 15 | THE COURT:  Okay.  So then we go back to Parker for |
| 11:15:09 | 16 | an update. |
| 11:15:11 | 17 | MR. MILLER:  Judge, Parker Miller for the state, just |
| 11:15:14 | 18 | briefly. |
| 11:15:15 | 19 | The parties have been exchanging discussions |
| 11:15:17 | 20 | back and forth.  There was some discussion over what |
| 11:15:20 | 21 | *recurring revenues* actually meant, did it encompass federal |
| 11:15:25 | 22 | funds or just transactions arising from the use of a service or |
| 11:15:32 | 23 | the purchase of a good.  We have informed BP that we are going |
| 11:15:37 | 24 | to produce what we would consider as true revenues and also the |
| 11:15:42 | 25 | recurring federal funds that occur to those departments. |

|   |   |
|---|---|
| 11:15:48 | 1 |
| 11:15:55 | 2 |
| 11:16:00 | 3 |
| 11:16:03 | 4 |
| 11:16:13 | 5 |
| 11:16:19 | 6 |
| 11:16:20 | 7 |
| 11:16:22 | 8 |
| 11:16:25 | 9 |
| 11:16:28 | 10 |
| 11:16:31 | 11 |
| 11:16:32 | 12 |
| 11:16:35 | 13 |
| 11:16:38 | 14 |
| 11:16:42 | 15 |
| 11:16:42 | 16 |
| 11:16:46 | 17 |
| 11:16:48 | 18 |
| 11:16:54 | 19 |
| 11:16:57 | 20 |
| 11:17:02 | 21 |
| 11:17:06 | 22 |
| 11:17:08 | 23 |
| 11:17:10 | 24 |
| 11:17:13 | 25 |

1    **THE COURT:**  Okay.  Good.  Does that cover that topic?

2    **MR. MILLER:**  Yes, Your Honor.

3    **THE COURT:**  Let's see.  We have Alabama's motion to

4    compel the defendant.  Our last conference BP had anticipated

5    complying with the order by February 13, huh?  How's that

6    sound?

7    **MR. COLLIER:**  Yes, Your Honor.  This is Paul Collier.

8    We did produce the interrogatory, the information.  We haven't

9    heard yet back from Alabama as to whether or not there are any

10    issues, but we did make that information available.

11    **THE COURT:**  Good.

12    **MR. MAZE:**  This is Corey for Alabama.  We did receive

13    it and we are reviewing it.  If we have any issues, we will let

14    BP know.  There's nothing for the Court at this time.

15    **THE COURT:**  Thank you.

16    Next up, state tax and revenue database.

17    **MR. MILLER:**  Judge, this is Parker Miller again for

18    the state.  Those documents will be produced in the state's

19    productions, and I assume that Paul and BP will reserve the

20    right to review them and get back to us if they see any issues.

21    We intend to produce all these documents, and I believe this

22    issue is resolved pending their review.

23    **THE COURT:**  Okay.  Good.

24    Confidential information, this was the summary

25    format issue.

| | |
|---|---|
| 11:17:17 | 1 |

      **MR. MILLER:**  So, Judge, this is Parker Miller again
for the state.  In terms of the Department of Labor, we have
exchanged a spreadsheet with the defendants laying out in
summary form the information that we believe that they had
originally requested.  We also included a tab on there to tie
back to the original claim form in case there was an
admissibility issue with that form, which I guess is probably
open to a broader discussion regarding admissibility on a
summary document like that.  It's my understanding BP has that
information and they are currently digesting it.

      We did get a request on the ADECA files to see
whether or not we could provide a similar summary.  We are
talking to the folks at ADECA right now.  I'm expecting
feedback on that very shortly on whether we could do something
similar there.

      **THE COURT:**  Okay.  Relative to the admissibility
issue, I'm not going to rule on that, but it seems to me that
if you all stipulate that the information contained in the
summary is accurate, you can also get it admitted, huh?

      **MR. MILLER:**  That's our understanding, Your Honor.

      **THE COURT:**  Okay.  All right.

      Paul, any difference of opinion there?

      **MR. COLLIER:**  No.  Thank you, Your Honor.  I think we
have been working diligently to resolve that issue.  The
parties have been very forthcoming with information.  I think

we are all very hopeful we can resolve this issue without Court

intervention, and we are just digesting what Parker just

recently provided to us.

        THE COURT:  Okay.  Let's go to Alabama's third-party

discovery.  You all had reported that you thought you were

going to be able to resolve the issues with the contractors.

How has that come to pass?

        MR. MILLER:  Judge, this is Parker Miller again.

Unfortunately, I don't think we are right there yet and I will

go through the third parties.

        In terms of Polaris, we provided some

information to BP that I believe they are digesting as they

kind of take in the forefront of working with us on that

particular subpoena.  We are waiting to hear back from them on

that.  I suppose, when we hear back, there will be some

discussions.

        In terms of Danos, I had expected to receive

some documents by now, but I believe there were some issues

copying and scanning, so that's thrown those documents off a

bit.  I'm told that we should be receiving those very soon.

        The only lingering issue is in terms of

CrowderGulf.  They have some information that they have not

provided or did not provide to BP.  They will not release it

without specific instruction from either the Court or BP

essentially waiving or demonstrating an agreement between us,

| | |
|---|---|
| 11:20:33 | 1 |
| 11:20:39 | 2 |
| 11:20:42 | 3 |
| 11:20:47 | 4 |
| 11:20:56 | 5 |
| 11:21:01 | 6 |
| 11:21:06 | 7 |
| 11:21:10 | 8 |
| 11:21:14 | 9 |
| 11:21:15 | 10 |
| 11:21:18 | 11 |
| 11:21:22 | 12 |
| 11:21:26 | 13 |
| 11:21:31 | 14 |
| 11:21:36 | 15 |
| 11:21:38 | 16 |
| 11:21:41 | 17 |
| 11:21:46 | 18 |
| 11:21:51 | 19 |
| 11:21:54 | 20 |
| 11:21:56 | 21 |
| 11:22:01 | 22 |
| 11:22:09 | 23 |
| 11:22:12 | 24 |
| 11:22:14 | 25 |

the Court, BP, and CrowderGulf that BP will not seek any type of action against Crowder for releasing that information.

My understanding is it's response-related information.  I guess one way to handle that would be in your next order -- and if BP is agreeable -- to just note that the parties agree that CrowderGulf can release that information as long as it's produced pursuant to PTO 16.

THE COURT:  Well, it's PTO 13, huh?

MR. MILLER:  That's right.  I'm sorry, Your Honor.

THE COURT:  That's okay.  I'm assuming that BP has no problem with that.  That was our next agenda item, that you all were going to see if you couldn't agree that the contractors would be permitted to produce information subject to compliance with PTO 13, huh?

MR. COLLIER:  Yeah, Your Honor.  This is Paul Collier again.  I thought we had this issue resolved.  We sent a letter to CrowderGulf providing information on that.  I thought that was taken care of.  Perhaps we can talk with Parker offline and see if there's any need for the Court to get further involved.

THE COURT:  I don't have a problem, as long as you all agree, putting it in our minute entry following today's conference and just putting it out there that the -- who is this particular contractor?

MR. MILLER:  Your Honor, this is Parker Miller.  It's CrowderGulf.

11:22:17  1    THE COURT:  CrowderGulf and all other requested
11:22:19  2  contractors of BP produce documents as requested subject to
11:22:29  3  compliance with PTO 13, won't that do it?
11:22:37  4    MR. MILLER:  Your Honor, this is Parker.  I believe
11:22:38  5  it would.
11:22:39  6    THE COURT:  Paul, do you think that will do it?
11:22:42  7    MR. COLLIER:  I think so.  I guess the only concern I
11:22:44  8  have is just that -- as it relates to the specific contractors
11:22:48  9  that have already been served, I don't think that's an issue.
11:22:51 10  I don't know what other contractors potentially are out there.
11:22:54 11    THE COURT:  Okay.  Well, we will limit it to this
11:22:57 12  contractor.  How about that?
11:22:58 13    MR. COLLIER:  That should be fine, Your Honor.  Thank
11:23:01 14  you.
11:23:01 15    THE COURT:  Okay.  No worries.
11:23:03 16    Let's go through BP's third-party discovery.
11:23:08 17  University of Alabama?
11:23:11 18    MR. COLLIER:  Your Honor, I think for all of the -- I
11:23:15 19  don't mean to short-circuit things, but the status is the same
11:23:19 20  as it was at our last conference two weeks ago with respect to
11:23:23 21  each of the subpoenas that we served.
11:23:25 22    THE COURT:  Okay.
11:23:25 23    MR. COLLIER:  For all of these, there's no
11:23:28 24  depositions currently scheduled.  I think for the vast majority
11:23:31 25  of these, we are still working through some document-related

1    issues.

2          THE COURT:  Well, then that takes care of that agenda

3    item.  Let's now turn our attention to dueling scheduling

4    orders and the e-mails that just popped in this morning.  Let's

5    take up the e-mails first.  Okay.

6          Let's see.  It seems to me that we don't need to

7    have identification before expert deadlines of the subject

8    areas of expertise.  I think that's just opening ourselves up

9    to discussion and debate later on whether a later identified

10   expert was revealed generally or not.  I just think we are

11   asking for trouble.

12         Point No. 2 on Corey's e-mail, I'm surprised to

13   see this pop back up.  As I understood it, we had about five

14   grants -- and I'm just telling you my recollection.  You all

15   can correct me on the numbers.  Of those, two or three of the

16   grants have provisions that say they cannot be used to offset.

17   Am I remembering correctly?

18         MR. MAZE:  Your Honor, this is Corey Maze for the

19   State of Alabama.  Yes, you are remembering correctly.  If I

20   may give you just the rationale for Alabama putting that

21   language in the order.

22         THE COURT:  Yes.

23         MR. MAZE:  We had this discussion at the January 8

24   hearing and you asked BP to identify which grants they intended

25   to do in light of that language.  Then your order out of that

|       |    |                                                                         |
|-------|----|-------------------------------------------------------------------------|
| 11:25:32 | 1  | hearing, the February 2 order, says at the end of it:  "The          |
| 11:25:35 | 2  | issue will be addressed after BPXP sees Alabama's document           |
| 11:25:42 | 3  | production and before the start of depositions."  So the reason      |
| 11:25:44 | 4  | that we added that requirement into the calendar was because it      |
| 11:25:47 | 5  | comports with what Your Honor already ordered in the February 2      |
| 11:25:50 | 6  | order.                                                                |
| 11:25:51 | 7  |          The way we had it proposed was document                     |
| 11:25:54 | 8  | production would end on March 20, fourteen days later BP would       |
| 11:25:58 | 9  | identify the grants it intended to use during the depositions,       |
| 11:26:03 | 10 | and then a month later, 31 days later, depositions would            |
| 11:26:07 | 11 | commence.  All we were trying to do was follow what the Court        |
| 11:26:11 | 12 | had ordered already.                                                  |
| 11:26:13 | 13 |          THE COURT:  Okay.  I guess, Paul, tell me what the          |
| 11:26:15 | 14 | objection is.  I think we are talking about a universe of five       |
| 11:26:19 | 15 | grants, two or three of which have language that say no offset.      |
| 11:26:25 | 16 | So it shouldn't be hard to say these are the grants that we are      |
| 11:26:30 | 17 | going to be asking questions about, huh?                             |
| 11:26:34 | 18 |          MR. COLLIER:  Well, that would be right --                  |
| 11:26:35 | 19 | Your Honor, I guess we are a little bit confused as to what's        |
| 11:26:38 | 20 | being specifically asked for.  One thing to keep in mind is we       |
| 11:26:42 | 21 | think that this is overly broad in the sense that it's not just      |
| 11:26:45 | 22 | getting at offset issues and whether or not we would have a          |
| 11:26:48 | 23 | counterclaim associated with that.  It's also getting into          |
| 11:26:52 | 24 | issues of mitigation and whether or not we would be able to          |
| 11:26:55 | 25 | seek discovery and deposition discovery associated with whether      |

or not these grants and payments would be used for

mitigation-type support, which I don't think was in any way

contemplated with respect to Alabama's original motion to

dismiss, which went to the counterclaims issues.  I think

Alabama explicitly admitted that it wasn't talking about

mitigation; it was talking about just whether or not there was

a basis for a dismissal of any setoff counterclaim.

        As an initial matter, this thing is broader than

what was already at issue with respect to their motion to

dismiss and what we understand really is the request that comes

from that.

        THE COURT:  Well, let me ask you this question.  Are

there any grants beyond the five grants that BP gave to Alabama

that will be the subject matter of fact depositions?

        MR. COLLIER:  As of right now, Your Honor, I don't

think I can identify any of those.

        THE COURT:  Okay.  So maybe the way to do this, guys,

we know the universe is five grants.  You know, as far as

credit goes -- I had not, Paul, focused on what you are

focusing on, which is the mitigation issue.  As far as credit

goes, you all can -- and Alabama, I presume, also knows which

of those have the provision that says this will not be a credit

against damages, right?

        MR. COLLIER:  Right.

        THE COURT:  So that's identified.  Now, I have not

| | | |
|---|---|---|
| 11:28:47 | 1 | thought about mitigation, and I assume what you are talking |
| 11:28:52 | 2 | about is did Alabama use the funds to mitigate its damages.  Is |
| 11:28:59 | 3 | that the point? |
| 11:29:02 | 4 | MR. COLLIER:  That's correct, Your Honor.  That's |
| 11:29:04 | 5 | part of it.  I think it also would be from the standpoint that |
| 11:29:07 | 6 | these monies were used in a way that then went into the Alabama |
| 11:29:12 | 7 | economy such that they had a positive impact on the overall |
| 11:29:17 | 8 | economy such that it deflected any kind of tax revenue loss |
| 11:29:21 | 9 | that could have otherwise been incurred because of the spill. |
| 11:29:24 | 10 | THE COURT:  So from the mitigation point of view, you |
| 11:29:26 | 11 | are going to argue that all five grants are at issue? |
| 11:29:31 | 12 | MR. COLLIER:  Correct. |
| 11:29:36 | 13 | THE COURT:  Does that answer your question, Corey? |
| 11:29:40 | 14 | MR. MAZE:  The quick answer is no.  I'm assuming that |
| 11:29:44 | 15 | that means BP is going to ask questions of all of our witnesses |
| 11:29:50 | 16 | as to not only was that money received but what you did with |
| 11:29:56 | 17 | it, give us an accounting of where it went, and perhaps other |
| 11:29:59 | 18 | avenues for which it could have been used, which gets us back |
| 11:30:05 | 19 | to the whole counterclaim issue that we had previously briefed. |
| 11:30:08 | 20 | Our issue all along has been do we have to |
| 11:30:12 | 21 | prepare witnesses to discuss a defense that BP can't raise, |
| 11:30:17 | 22 | such as you should have spent the money somewhere else, or if |
| 11:30:21 | 23 | it had been spent differently the outcome would have been |
| 11:30:25 | 24 | different or your net loss would have been different.  My |
| 11:30:29 | 25 | understanding is they are going to question us about all five, |

1    and we are just going to have to wait and see what kind of
2    questioning that is.
3        THE COURT:  I think that's right, Corey.  I had not
4    focused on the mitigation issue.  I had focused on the credit
5    or offset issue.  That's clear.  I think the universe is two,
6    if I remember correctly.  Listen, I don't know how the money
7    was spent.  I'm assuming it was spent to mitigate damages.  If
8    it was spent on, I don't know, travel to New Orleans for the
9    Saints game, maybe that's not mitigation, huh?
10        MR. MAZE:  Well, we wouldn't have got our value this
11    year.  No, it would not be mitigation.
12        THE COURT:  So, you know, I would like to try to keep
13    it -- the word is not *narrow*, but -- confined.  I mean, it
14    seems to me that BP is entitled to know how the money was
15    spent.  On the other hand, down to the red penny, I'm not sure.
16        MR. MAZE:  Understood.  I guess we will just proceed
17    with these five grants are sort of the limited sphere right now
18    of what will be questioned.  If Alabama has objections, we will
19    raise them as we come, but otherwise we should be prepared to
20    discuss them.
21        THE COURT:  Correct.  I think that's right.
22        MR. MAZE:  We understand that.
23        THE COURT:  Now, on Point No. 3, which is the period
24    to test the sufficiency of document production, it seems to me
25    that I would like to try to target 20 days.  If a certain

production is large, if a certain production a party needs more
time, why don't we just agree that we will work through it, but
45 days seems excessive to me.

     **MR. MAZE:**  This is Corey for the State of Alabama.
We understand that.  As you will notice in our proposal, we
built in an extra 15 days for that reason.  The original
schedule had a 30-day gap between the end of document
production and the beginning of depositions.  Alabama's
proposal ups that to 45 days.

          If the Court feels that we need five days or one
more week to do that, then so be it.  Our objection was having
an additional just 45-day period set aside to look at the
production just from a let's see if there are any challenges to
it.  I think BP then called for briefing or a period in which
we could raise objections to the Court and then have another
negotiation of the schedule, which again would just continue to
push things down the road and never allow the schedule to be
final.  That was our concern.

     **THE COURT:**  Okay.  Gotcha covered there.

          On Alabama's motion for suggestion of remand,
you know, I think Paul makes a good point that it shouldn't be
immediate.  I'm going to look at that, and I'll set some dates
for that and give you all a briefing schedule.

          Then I'm looking at the two scheduling orders
and trying to see where the differences are.  The first

difference I see -- and I'm looking at BP's proposal.  You have
got a projected date of 3-20-15, the difference being that you
want all custodial file production produced now and not before
the custodian's deposition.

        **MR. LANGAN:**  I think that blue language signals
agreement.

        **THE COURT:**  Oh.

        **MR. MAZE:**  Andy is correct.  What you see highlighted
in blue means that the parties agree with that language.  It's
language that BP added but Alabama said that we were okay with.

        **THE COURT:**  Well, I'm not going to use the word that
I otherwise would use if I weren't on the record.  Some people
might read the transcript after the fact and so I'm not going
to use the word.

        Okay.  I gotcha.  Why don't you all point out to
me where the disagreements are other than dates because the
dates I'm going to resolve.

        **MR. COLLIER:**  Your Honor, this is Paul Collier.  Just
one point of clarification with respect to the sufficiency
issue that you just discussed.

        **THE COURT:**  Yes.

        **MR. COLLIER:**  The 20 days that you mentioned, was
that 20 days to supplant the 45 days that we had proposed?

        **THE COURT:**  I think so, but it's a work in progress,
Paul.

11:35:57   1      **MR. COLLIER:**  I understand, Your Honor.

11:35:57   2      **THE COURT:**  If you get a production and you need more

11:36:01   3  time to see a particular production and assure yourself that

11:36:04   4  it's sufficient or not, we will work with it.

11:36:09   5      **MR. COLLIER:**  Okay.  I appreciate that, Your Honor.

11:36:10   6  I guess the one point to just note on that particular issue is

11:36:15   7  that you may recall that when we had this discussion back in

11:36:19   8  October of last year, one of the issues that came up was that

11:36:22   9  Alabama had indicated that it was not able to use the search

11:36:27  10  terms that had been agreed upon and memorialized by the Court

11:36:35  11  for purposes of the custodial file production.

11:36:35  12          There had been talk around that time, before

11:36:35  13  that issue kind of got pushed to the wayside based on the

11:36:41  14  metadata issues, that there may be a need -- and obviously it

11:36:45  15  still may be premature to address that now.  There may be a

11:36:46  16  need to do some type of test run, if you will, against a few

11:36:53  17  custodial files of Alabama to ensure that what we are getting

11:36:57  18  would be something more or at least equivalent to what would be

11:37:00  19  produced by a custodial file search term protocol.

11:37:05  20      **THE COURT:**  Okay.  We will take that as it comes.  If

11:37:08  21  you need to do that and you need extra time, talk to Corey and

11:37:13  22  Parker.  If you can't reach agreement, we will work it out.  I

11:37:17  23  think that a general rule of hopefully 20 days or so will keep

11:37:22  24  us on track without trying to jam anybody.  I want to assure

11:37:27  25  you that that's not my intent.

| | |
|---|---|
| 11:37:29 | 1 |
| 11:37:30 | 2 |
| 11:37:32 | 3 |
| 11:37:34 | 4 |
| 11:37:41 | 5 |
| 11:37:45 | 6 |
| 11:37:45 | 7 |
| 11:37:51 | 8 |
| 11:37:51 | 9 |
| 11:37:51 | 10 |
| 11:37:53 | 11 |
| 11:37:57 | 12 |
| 11:38:01 | 13 |
| 11:38:04 | 14 |
| 11:38:07 | 15 |
| 11:38:11 | 16 |
| 11:38:15 | 17 |
| 11:38:19 | 18 |
| 11:38:22 | 19 |
| 11:38:27 | 20 |
| 11:38:30 | 21 |
| 11:38:33 | 22 |
| 11:38:35 | 23 |
| 11:38:38 | 24 |
| 11:38:41 | 25 |

1   **MR. COLLIER:**  Thank you.

2   **THE COURT:**  Okay.

3   **MR. MAZE:**  This is Corey for Alabama.  The answer to

4   your question is no, other than dates.  We raised the only four

5   issues that we felt there was a disagreement on the parties.

6           If I may just add one thing.  As Your Honor

7   tries to pick a date for the motion for suggestion of remand

8   briefing --

9   **THE COURT:**  Yes, sir.

10   **MR. MAZE:**  -- our intention in briefing it this early

11   was not to remand the case during the middle of discovery.

12   It's not that at all.  We think certainly fact discovery should

13   remain in New Orleans.  Depositions occur in New Orleans.

14           What we don't want to have happen is to put off

15   the briefing of this issue until after that ends, and then the

16   briefing time and then the time that it takes Judge Barbier to

17   rule plus the time it takes the JPML to allow for briefing and

18   argument result in a several-month gap in the middle of this

19   case.  We were just wanting to get the issue in the can so that

20   Judge Barbier could go ahead and draft his suggestion, assuming

21   he wanted to do it, and not cause delay in the middle of the

22   discovery calendar.

23           We don't have to file it this week, but we do

24   ask that it come some point clearly before the end of the fact

25   discovery so that Judge Barbier will have sufficient time to

| | | |
|---|---|---|
| 11:38:47 | 1 | rule on it and write a suggestion if that's what he decides to |
| 11:38:51 | 2 | do. |
| 11:38:52 | 3 | MR. LANGAN:  Your Honor, it's Andy Langan.  I wasn't |
| 11:38:54 | 4 | sure we were going to be arguing this one in light of what |
| 11:38:56 | 5 | Your Honor had said.  If you want to hear from us, we have a |
| 11:38:58 | 6 | very different view of this than Corey has just outlined and I |
| 11:38:59 | 7 | can explain why. |
| 11:39:00 | 8 | THE COURT:  Sock it to me. |
| 11:39:03 | 9 | MR. LANGAN:  So I think we need to step back and |
| 11:39:06 | 10 | understand how the panel works and how these things typically |
| 11:39:11 | 11 | work, and it is not as Corey has just outlined. |
| 11:39:15 | 12 | What typically happens is once discovery is |
| 11:39:19 | 13 | substantially complete, the parties take a look at the order |
| 11:39:23 | 14 | that set up the MDL in the first place and figure out whether |
| 11:39:28 | 15 | or not pretrial proceedings are complete on a particular claim |
| 11:39:31 | 16 | or the entire case, maybe agree on the suggestion of remand, |
| 11:39:34 | 17 | maybe not, but that doesn't happen until discovery is |
| 11:39:37 | 18 | substantially complete. |
| 11:39:38 | 19 | What the State of Alabama is talking about, |
| 11:39:40 | 20 | apparently, is they think Judge Barbier is not ruling fast |
| 11:39:45 | 21 | enough for their taste and so they want to have this done now. |
| 11:39:49 | 22 | If it's briefed now, all we are going to do is say it's |
| 11:39:52 | 23 | premature, so we are not going to accomplish anything.  You |
| 11:39:56 | 24 | have to wait and see if the pretrial proceedings are really |
| 11:40:00 | 25 | complete before a suggestion of remand is taken up. |

1    I should also mention here that, you know, this

2  case is in a little bit different procedural posture than the

3  normal case.  Alabama has already tried its case in the

4  Eastern District of Louisiana.  It filed the limitation and

5  tried its case.  There are going to be some legal issues here

6  that have to be grappled with.

7    I don't think it's as simple as what Corey is

8  suggesting.  It is going to take some work.  It ought not to be

9  done until the case is really ready for even consideration of

10  remand.  If we brief it now, all we are going to say is it's

11  premature.  I think that's what the cases decided under

12  Panel Rule 10.1 or 10.2 say.

13    MR. MAZE:  Your Honor, this is Corey Maze for

14  Alabama.  Just a very quick response to that.  Number one,

15  Alabama would never disrespect Judge Barbier in the way that

16  Andy suggested.  More importantly, the last part of Andy's

17  argument about all of these legal issues that really complicate

18  matters, that's why we need to brief the issue, so that all of

19  these issues can be considered by Judge Barbier.  We are not

20  simply saying issue a remand next week.  He needs to look at

21  whatever these issues are that BP intends to raise and have

22  time to research them and make a decision.

23    What we intend to put in our supporting brief

24  and in our motion is not remand it immediately.  We are going

25  to give him a specific time period based on the schedule that

1  Your Honor enters that says here is the time period in which we
2  think it's proper to do so.  That's not coming any time soon.
3  We just want to give Judge Barbier sufficient time; not because
4  we don't think he rules fast enough, but because we know what
5  he has on his plate.  We just want to make sure he has time to
6  do it so we don't get stuck in a situation because we are
7  looking at one particular issue.
8        MR. LANGAN:  The state should ask for remand when the
9  case is ready for remand.  It's very simple.  The state should
10 not be saying, "Please remand this case in a year."  That's
11 just not how it's done.
12       THE COURT:  All right, kids.  I got it.
13       MR. LANGAN:  Your Honor, I need to come back to one
14 other issue as long as we are sort of going over some stuff
15 here.  Can I just take a second on the issue of expert
16 disclosures and sort of sharing information about experts?
17        We got that because of the experience in the
18 penalty phase.  I think Your Honor will remember that -- time
19 is going by very fast, but I have a very vivid recollection
20 that last April you had Anadarko and BP sit down with the
21 United States and engage in a lengthy discussion of the kind of
22 experts that would be needed, how many would be needed on each
23 subject area, and we had a lengthy discussion with the
24 United States on that last April.
25       THE COURT:  I do remember that, Andy.  It was

11:42:52  1   because -- correct me if I'm wrong -- there was a cat-and-mouse

11:42:58  2   game going on, huh?

11:43:00  3        MR. LANGAN:  Perhaps so, but I also think it was

11:43:04  4   because there was concern about number of experts, what areas

11:43:08  5   they were going to testify about, how was the case going to be

11:43:12  6   structured.  This was right on the heels of the status

11:43:16  7   conference we had with Judge Barbier on the 21st of March last

11:43:21  8   year.  I think it was sort of a case management device to make

11:43:24  9   sure that the parties were all on the same page and there

11:43:27 10   wasn't a cat-and-mouse game going on.

11:43:30 11            Frankly, we might not have asked for what

11:43:31 12   happened, but having gone through it with Your Honor's case

11:43:35 13   management skills, I think we found out that it was a pretty

11:43:38 14   productive exercise for all the parties.  That's why this is an

11:43:42 15   issue now for us and that's why we sort of suggested it might

11:43:46 16   be a good idea; not to have names, but rather just to make sure

11:43:50 17   that each side understands what the other side is thinking

11:43:53 18   about in terms of areas.  That's where it came from.

11:43:57 19        THE COURT:  No, and I recall that.  I don't know.  I

11:44:01 20   guess let's do this.  It did work well, Corey.

11:44:08 21            My recollection is that it was not binding, was

11:44:12 22   it, Andy?

11:44:15 23        MR. LANGAN:  I don't think it was binding, no.  I

11:44:17 24   don't think it was binding, so we sort of get Your Honor's

11:44:20 25   point on that.  I don't think anybody's intention here -- we

| | |
|---|---|
| 11:44:24 | 1 |
| 11:44:27 | 2 |
| 11:44:29 | 3 |
| 11:44:32 | 4 |
| 11:44:39 | 5 |
| 11:44:45 | 6 |
| 11:44:48 | 7 |
| 11:44:48 | 8 |
| 11:44:49 | 9 |
| 11:44:51 | 10 |
| 11:44:53 | 11 |
| 11:44:57 | 12 |
| 11:45:00 | 13 |
| 11:45:02 | 14 |
| 11:45:03 | 15 |
| 11:45:08 | 16 |
| 11:45:11 | 17 |
| 11:45:15 | 18 |
| 11:45:17 | 19 |
| 11:45:18 | 20 |
| 11:45:20 | 21 |
| 11:45:25 | 22 |
| 11:45:29 | 23 |
| 11:45:33 | 24 |
| 11:45:37 | 25 |

1  have all been doing this too long.  There's no trial by ambush
2  going on by either side here.
3        THE COURT:  That's right.  So you raise a good point.
4  It would not be unhelpful to anyone to have a peek under the
5  hood of the car to see -- everybody knows there are going to be
6  economists, right?
7        MR. LANGAN:  Correct.
8        MR. MAZE:  Judge --
9        THE COURT:  Go ahead, Corey.
10        MR. MAZE:  This is Corey for the State of Alabama.  I
11  actually talked to Mr. O'Rourke about this particular instance,
12  and his recollection is very different than what I think Andy
13  just gave the Court.
14            According to Mr. O'Rourke, the discussion about
15  this lasted less than an hour and it simply was going
16  through -- I think in his words it was "Hey, we are going to
17  put on a human health guy" or "We are going to put on an
18  economist to talk about the state of the economy in the Gulf
19  area."
20            If BP doesn't already know that Alabama is going
21  to bring an economist to talk about the state's net tax loss or
22  that we are going to bring someone in to talk about the removal
23  costs that Alabama has incurred and may incur in the future --
24  we have given them a presentment, a Rule 26 disclosure, we have
25  answered interrogatories.  I mean, I have just given you sort

1     of a basic summary of the types of people we are going to

2     bring.  I'm not really sure what it is BP intends us to add.

3     They won the motion to compel by arguing to the Court they

4     weren't asking Alabama for a summary or to tell us what the

5     methodologies were.  Frankly, we see this as outside the rules.

6            If Your Honor wants us to sit down and just say,

7     "We are thinking about bringing in an economist to talk about

8     taxes," I'm telling you on the phone now that that's the sort

9     of thing Alabama would want to do.

10       **MR. LANGAN:**  We think it can be very brief.  We agree

11     with Corey this can be done in a couple hours at the most.

12       **THE COURT:**  I'll tell you what to do.  When you all

13     next have a conference with regard to document production or

14     otherwise, why don't you all have a little tick sheet and be

15     prepared to talk to each other about "These are the types of

16     witnesses we are thinking about calling."  If you have more

17     than one economist, tell them you have more than one economist.

18     If you have a public health guy, tell them you have a public

19     health guy.

20            Just give each other a peek under the hood.

21     It's not going to be binding because what I don't want to do is

22     have you all come back later and say, "Oh, there's an expert

23     that nobody give us any notice of."  I do want you all to be

24     fair with each other because it isn't trial by ambush.  We have

25     all done it already and we all know it works much better when

| | | |
|---|---|---|
| 11:47:18 | 1 | we take it methodically and work our way through it. |
| 11:47:22 | 2 | So I'm not going to make it binding and I don't |
| 11:47:25 | 3 | want any future fights over it, but it does seem to me to be |
| 11:47:30 | 4 | helpful to cooperatively spend a half hour or so sharing each |
| 11:47:36 | 5 | other's ideas on the areas of testimony that the experts will |
| 11:47:40 | 6 | be coming in to give opinions on. |
| 11:47:44 | 7 | MR. MAZE:  Your Honor, this is Corey Maze for the |
| 11:47:46 | 8 | State of Alabama.  We accept that.  We will be prepared to |
| 11:47:49 | 9 | discuss with BP the areas of expertise, but we maintain our |
| 11:47:54 | 10 | objection and will maintain our right to object to the Court if |
| 11:47:57 | 11 | BP ever gets to the point of saying that we are not giving them |
| 11:48:00 | 12 | sufficient information on the methodologies -- |
| 11:48:03 | 13 | THE COURT:  Nope, nope. |
| 11:48:04 | 14 | MR. MAZE:  -- quantifications or anything else. |
| 11:48:07 | 15 | THE COURT:  Nope.  I'm not asking for that.  I'm |
| 11:48:09 | 16 | asking for you to identify generally the areas of expertise |
| 11:48:15 | 17 | that your witnesses will be offering opinions in. |
| 11:48:20 | 18 | MR. MAZE:  Understood. |
| 11:48:21 | 19 | MR. LANGAN:  Thank you, Your Honor.  This is |
| 11:48:24 | 20 | satisfactory to us and we appreciate it. |
| 11:48:26 | 21 | THE COURT:  Okay.  Good.  Well, everybody have a good |
| 11:48:30 | 22 | day, and we will work on the scheduling order. |
| 11:48:35 | 23 | MR. MAZE:  Thank you, Your Honor. |
| 11:48:36 | 24 | MR. COLLIER:  Thank you, Your Honor. |
| 11:48:36 | 25 | THE COURT:  Thank you. |

1          (Proceedings adjourned.)

2                    * * *

3               **CERTIFICATE**

4          I, Toni Doyle Tusa, CCR, FCRR, Official Court

5    Reporter for the United States District Court, Eastern District

6    of Louisiana, certify that the foregoing is a true and correct

7    transcript, to the best of my ability and understanding, from

8    the record of proceedings in the above-entitled matter.

9

10

11                         _s/ Toni Doyle Tusa_
                           Toni Doyle Tusa, CCR, FCRR
12                         Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

**1**
10-4182 [1]  1/8
10-4183 [1]  1/8
10-MD-2179 [1]  1/5
10.1 [1]  28/12
10.2 [1]  28/12
13 [4]  13/5 16/8 16/14 17/3
13-2645 [1]  1/8
13-2646 [1]  1/8
13-2647 [1]  1/9
13-2813 [1]  1/9
15 [2]  23/6 24/2
150 [1]  8/11
16 [1]  16/7
160 [1]  8/11

**2**
20 [7]  1/6 3/17 19/8 22/25 24/22 24/23
  25/23
2010 [1]  1/6
2015 [2]  1/7 3/2
2179 [1]  1/5
21st [1]  30/7
25 percent [1]  4/6
26 [3]  1/7 3/2 31/24
2645 [1]  1/8
2646 [1]  1/8
2647 [1]  1/9
275 [1]  1/21
2813 [1]  1/9

**3**
3-20-15 [1]  24/2
30-day [1]  23/7
31 [1]  19/10

**4**
4182 [1]  1/8
4183 [1]  1/8
45 [3]  23/3 23/9 24/23
45-day [1]  23/12

**5**
500 [1]  1/21
504 [1]  1/22
589-7778 [1]  1/22

**7**
70130 [1]  1/21
7778 [1]  1/22

**A**
ability [2]  11/20 34/7
able [9]  4/11 5/2 10/1 10/3 10/8 10/13
  15/6 19/24 25/9
about [37]
above [1]  34/8
above-entitled [1]  34/8
accept [1]  33/8
access [1]  10/3
accomplish [1]  27/23
According [1]  31/14
accounting [1]  21/17
accurate [1]  14/19
action [2]  4/9 16/2
actual [1]  10/22
actually [2]  12/21 31/11
add [4]  4/10 10/15 26/6 32/2
added [2]  19/4 24/10
additional [2]  6/7 23/12
address [1]  25/15
addressed [2]  5/4 19/2
ADECA [2]  14/11 14/13

adjourned [1]  34/1
admissibility [1]  13/21
admitted [2]  14/19 20/5
after [3]  19/2 24/13 26/15
again [8]  4/17 7/24 8/9 13/17 14/1 15/8
  16/16 23/16
against [3]  16/2 20/23 25/16
agencies [6]  10/2 11/3 11/6 11/8 12/1
  12/6
agency [1]  12/9
agenda [3]  3/4 16/11 18/2
ago [1]  17/20
agree [11]  5/15 5/17 6/24 7/14 16/6
  16/12 16/21 23/2 24/9 27/16 32/10
agreeable [1]  16/5
agreed [1]  25/10
agreement [4]  8/15 15/25 24/6 25/22
ahead [3]  4/15 26/20 31/9
aided [1]  1/25
Alabama [36]
Alabama's [10]  3/9 4/5 4/6 9/3 13/3 15/4
  19/2 20/3 23/8 23/20
all [45]
allow [2]  23/17 26/17
along [1]  21/20
already [7]  17/9 19/5 19/12 20/9 28/3
  31/20 32/25
also [10]  5/19 10/22 12/24 14/5 14/19
  19/23 20/21 21/5 28/1 30/3
Am [1]  18/17
ambush [2]  31/1 32/24
amount [2]  4/4 5/18
Anadarko [6]  6/14 6/16 6/25 7/2 7/15
  29/20
Andy [6]  24/8 27/3 28/16 29/25 30/2
  31/12
Andy's [1]  28/16
another [2]  12/9 23/15
answer [3]  21/13 21/14 26/3
answered [1]  31/25
anticipated [2]  3/15 13/4
any [23]  3/21 4/9 5/2 5/14 7/7 7/8 9/14
  10/19 13/9 13/13 13/20 14/22 16/1
  16/19 20/2 20/7 20/13 20/16 21/8 23/13
  29/2 32/23 33/3
anybody [1]  25/24
anybody's [1]  30/25
anyone [1]  31/4
anything [6]  4/9 7/16 9/12 11/14 27/23
  33/14
anyway [1]  10/20
apparently [1]  27/20
Applies [1]  1/8
appreciate [2]  25/5 33/20
APRIL [3]  1/6 29/20 29/24
are [74]
area [2]  29/3 31/3
areas [6]  18/8 30/4 30/18 33/5 33/9
  33/16
aren't [1]  10/19
argue [1]  21/11
arguing [2]  27/4 32/3
argument [2]  26/18 28/17
arising [1]  12/22
around [1]  25/12
as [38]
aside [1]  23/12
ask [6]  11/6 12/9 20/12 21/15 26/24
  29/8
asked [3]  18/24 19/20 30/11
asking [5]  18/11 19/17 32/4 33/15 33/16
assess [1]  5/2 6/11
assessing [2]  3/25 8/12

assessment [1]  5/11
assessments [1]  5/10
assisted [1]  1/24
assume [2]  13/19 21/1
assuming [4]  16/10 21/14 22/7 26/20
assure [2]  25/3 25/24
at [30]  4/25 4/25 5/6 6/11 6/18 6/24 7/3
  7/20 10/6 11/9 11/21 12/6 13/14 14/13
  17/20 18/23 19/1 19/22 20/9 21/11
  23/12 23/22 23/24 24/1 25/18 26/12
  27/23 28/20 29/7 32/11
attention [1]  18/3
available [1]  13/10
avenues [1]  21/18

**B**
B-275 [1]  1/21
back [20]  1/9 7/9 7/22 8/14 12/15 12/20
  13/9 13/20 14/6 15/14 15/15 18/13
  21/18 25/7 27/9 29/13 32/22
Baldwin [1]  8/5
Barbier [8]  26/16 26/20 26/25 27/20
  28/15 28/19 29/3 30/7
based [2]  25/13 28/25
basic [1]  32/1
basis [1]  20/7
be [64]
because [16]  4/10 7/8 7/11 9/14 11/11
  19/4 21/9 24/16 29/3 29/4 29/6 29/17
  30/1 30/4 32/21 32/24
been [14]  5/3 12/19 14/24 14/25 17/9
  21/9 21/18 21/20 21/23 21/23 21/24
  25/10 25/12 31/1
before [9]  1/12 8/15 9/16 18/7 19/3 24/3
  25/12 26/24 27/25
beginning [1]  23/8
behalf [2]  3/23 9/21
being [3]  4/11 19/20 24/2
believe [7]  3/17 8/10 13/21 14/4 15/12
  15/18 17/4
believes [1]  11/5
best [1]  34/7
better [1]  32/25
between [2]  15/25 23/7
beyond [2]  11/8 20/13
binding [5]  30/21 30/23 30/24 32/21
  33/2
bit [4]  6/19 15/20 19/19 28/2
blue [2]  24/5 24/9
both [1]  8/24
BP [34]  3/21 3/23 8/10 8/14 9/21 10/16
  10/20 12/23 13/4 13/14 13/19 14/9
  15/12 15/23 15/24 16/1 16/1 16/5 16/10
  17/2 18/24 19/8 20/13 21/15 21/21
  22/14 23/14 24/10 28/21 29/20 31/20
  32/2 33/9 33/11
BP's [3]  8/7 17/16 24/1
BPXP [2]  11/5 19/2
BPXP [1]  11/4
brief [4]  28/18 28/18 28/23 32/10
briefed [2]  21/19 27/22
briefing [7]  23/14 23/23 26/8 26/10
  26/15 26/16 26/17
briefly [1]  12/18
bring [4]  10/24 31/21 31/22 32/2
bringing [1]  32/7
broad [2]  5/11 19/21
broader [3]  6/10 14/8 20/8
built [1]  23/6
burden [4]  8/13 10/9 10/11 12/11
but [31]  3/16 4/4 5/7 6/1 6/7 6/20 7/10
  8/21 9/4 10/22 11/11 12/4 13/4 14/17
  15/18 17/19 21/16 22/13 22/19 23/2
  24/10 24/24 26/23 27/17 29/4 29/19

**B**

but... [5]  30/3 30/12 30/16 33/3 33/9

**C**

cabin [1]  10/11
calendar [3]  12/10 19/4 26/22
call [2]  7/15 12/4
called [1]  23/14
calling [1]  32/16
came [2]  25/8 30/18
can [22]  3/5 3/16 6/11 6/19 6/20 7/10
  8/14 11/19 12/10 14/19 15/1 16/6 16/18
  18/15 20/16 20/21 26/19 27/7 28/19
  29/15 32/10 32/11
can't [2]  21/21 25/22
cannot [2]  8/14 18/16
car [1]  31/5
care [2]  16/18 18/2
case [14]  14/6 26/11 26/19 27/16 28/2
  28/3 28/3 28/5 28/9 29/9 29/10 30/5
  30/8 30/12
cases [1]  28/11
cat [2]  30/1 30/10
cat-and-mouse [2]  30/1 30/10
cause [5]  10/3 10/5 11/5 11/8 26/21
CCR [3]  1/20 34/4 34/11
certain [2]  22/25 23/1
certainly [1]  26/12
CERTIFICATE [1]  34/3
certify [1]  34/6
challenges [1]  23/13
circuit [1]  17/19
claim [2]  14/6 27/15
clarification [3]  8/21 11/19 24/19
clear [2]  5/5 22/5
clearly [1]  26/24
Collier [6]  3/23 9/21 11/19 13/7 16/15
  24/18
Collins [1]  4/23
come [9]  7/9 8/15 9/14 11/23 15/7 22/19
  26/24 29/13 32/22
comes [3]  4/1 20/10 25/20
coming [4]  5/17 5/24 29/2 33/6
commence [1]  19/11
comment [1]  3/21
comments [2]  5/14 5/16
compel [2]  19/5 32/3
complete [4]  27/13 27/15 27/18 27/25
compliance [2]  16/13 17/3
complicate [1]  28/17
complying [1]  13/5
comports [1]  19/5
compulsion [1]  7/25
computer [1]  1/25
computer-aided [1]  1/25
concern [3]  17/7 23/18 30/4
conclude [1]  3/5
conclusion [1]  3/17
conference [8]  1/12 7/23 8/16 13/4
  16/22 17/20 30/7 32/13
Confidential [1]  13/24
confined [1]  22/13
confused [1]  19/19
Conservation [1]  9/9
consider [1]  12/24
consideration [1]  28/9
considered [1]  28/19
contained [1]  14/18
contemplated [1]  20/3
context [1]  6/4
continue [3]  7/23 7/25 23/16
contractor [2]  16/23 17/12

contractors [1]  15/6 16/12 17/2 17/8
  17/10
cooperatively [1]  33/4
copying [1]  15/19
Corey [21]  6/22 8/20 9/22 10/15 11/24
  13/12 18/18 21/13 22/3 23/4 25/21 26/3
  27/6 27/11 28/7 28/13 30/20 31/9 31/10
  32/11 33/7
Corey's [1]  18/12
correct [10]  6/9 6/12 18/15 21/4 21/12
  22/21 24/8 30/1 31/7 34/6
correctly [1]  9/16 18/17 18/19 22/6
costs [1]  31/23
could [6]  14/12 14/14 21/9 21/18 23/15
  26/20
couldn't [1]  16/12
counterclaim [3]  19/23 20/7 21/19
counterclaims [1]  20/4
County [1]  8/10
couple [3]  4/2 6/8 32/11
COURT [19]  1/1 1/20 4/9 9/11 13/14
  15/1 15/24 16/1 16/19 19/11 23/10
  23/15 25/10 31/13 32/3 33/10 34/4 34/5
  34/12
Court's [7]  9/3 9/13 9/15 10/10 10/18
  10/19 10/22
cover [1]  13/1
covered [1]  21/8
credit [4]  20/19 20/20 20/22 22/4
critical [1]  5/25
Crowder [1]  16/2
CrowderGulf [6]  15/22 16/1 16/6 16/17
  16/25 17/1
crux [1]  10/10
currently [4]  8/11 11/11 14/10 17/24
custodial [7]  4/23 5/7 5/20 24/3 25/11
  25/17 25/19
custodian's [1]  24/4

**D**

damages [3]  20/23 21/2 22/7
Danos [1]  15/17
database [1]  13/16
date [3]  4/19 24/2 26/7
dates [5]  8/24 23/22 24/16 24/17 26/4
day [3]  23/7 23/12 33/22
days [11]  19/8 19/10 22/25 23/3 23/6
  23/9 23/10 24/22 24/23 24/23 25/23
dead [1]  7/20
deadlines [1]  18/7
dealing [1]  4/8
debate [4]  11/10 12/3 12/4 18/9
decide [1]  12/12
decided [1]  28/11
decides [1]  27/11
decision [1]  28/22
declare [1]  7/20
DEEPWATER [1]  1/5
defendant [3]  7/3 7/15 13/4
defendants [2]  9/7 14/3
defense [1]  21/21
definitions [1]  10/22
deflected [1]  21/8
delay [1]  26/21
demonstrating [1]  15/25
department [4]  4/22 9/8 14/8 14/2
departments [10]  6/6 6/9 8/12 8/25 9/4
  10/17 10/19 10/21 11/6 12/25
deposition [1]  19/25 24/4
depositions [7]  17/24 19/3 19/9 19/10
  20/14 23/8 26/13
device [1]  30/8
did [9]  12/21 13/8 13/10 13/12 14/11

  15/23 21/2 21/16 30/20
  30/11  41/6 + 38/25 14/1
  11/10
  11/23
difference [4]  7/8 14/22 24/1 24/2
differences [1]  23/25
different [5]  21/24 21/24 27/6 28/2 31/12
differently [1]  21/23
digesting [3]  14/10 15/2 15/12
diligently [1]  14/24
disagree [1]  6/23
disagreement [1]  26/5
disagreements [1]  24/16
disclosure [1]  31/24
disclosures [1]  29/16
discovery [14]  3/18 5/11 10/1 10/8 15/5
  17/16 19/25 19/25 26/11 26/12 26/22
  26/25 27/12 27/17
discuss [4]  12/11 21/21 22/20 33/9
discussed [1]  24/20
discussion [8]  12/20 14/8 18/9 18/23
  25/7 29/21 29/23 31/14
discussions [2]  12/19 15/16
dismiss [2]  20/4 20/10
dismissal [1]  20/7
dispute [4]  11/2 11/11 11/14 12/4
disrespect [1]  28/15
DISTRICT [5]  1/1 1/2 28/4 34/5 34/5
divisions [3]  9/10 9/11 9/15
do [30]  5/14 5/15 7/16 7/25 9/12 9/19
  10/24 14/14 17/3 17/6 17/6 18/25 19/11
  20/17 21/20 23/11 25/16 25/21 26/1
  26/23 27/2 27/22 29/2 29/6 29/25 30/20
  32/9 32/12 32/21 32/23
document [10]  3/9 3/23 3/24 14/9 17/25
  19/2 19/7 22/24 23/7 32/13
document-related [1]  17/25
documents [10]  5/19 5/22 5/24 6/7 11/2
  13/18 13/21 15/18 15/19 17/2
does [6]  4/10 7/16 11/8 13/1 21/13 33/3
doesn't [6]  7/2 7/16 9/14 10/9 27/17
  31/20
doing [2]  3/9 31/1
don't [33]  7/7 7/24 8/11 9/7 9/12 11/21
  11/21 12/7 12/9 15/9 16/20 17/9 17/10
  17/19 18/6 20/2 20/15 22/6 22/8 23/2
  24/15 26/14 26/23 28/7 29/4 29/6 30/19
  30/23 30/24 30/25 32/14 32/21 33/2
done [5]  27/21 28/9 29/11 32/11 32/25
Doug [1]  6/16
Doug Hastings [1]  6/16
down [4]  22/15 23/17 29/20 32/6
Doyle [4]  1/20 34/4 34/11 34/11
draft [2]  6/14 26/20
drew [1]  9/23
dueling [1]  18/3
duplication [2]  4/4 4/7
during [2]  19/9 26/11

**E**

e-mail [1]  18/12
e-mails [3]  3/5 18/4 18/5
each [7]  17/21 29/22 30/17 32/15 32/20
  32/24 33/4
earlier [1]  4/20
early [1]  26/10
EASTERN [3]  1/2 28/4 34/5
Eastern District [1]  28/4
easy [1]  7/13
economist [5]  31/18 31/21 32/7 32/17
  32/17
economists [1]  31/6
economy [3]  21/7 21/8 31/18
either [3]  7/14 15/24 31/2

**E**

else [2] 21/22 33/14
employees [1] 4/23
encompass [1] 12/21
end [4] 19/1 19/8 23/7 26/24
ends [1] 26/15
engage [1] 29/21
enough [4] 5/11 8/4 27/21 29/4
ensure [1] 25/17
enters [1] 29/1
entire [1] 27/16
entirety [1] 9/25
entities [1] 10/6
entitled [2] 22/14 34/8
entry [1] 16/21
Environmental [3] 4/22 5/18 5/22
equivalent [1] 25/18
essentially [1] 15/25
even [1] 28/9
ever [1] 33/11
every [1] 7/8
everybody [3] 3/3 31/5 33/21
exactly [1] 5/13
example [1] 9/8
excessive [1] 23/3
exchanged [1] 14/3
exchanging [1] 12/19
exercise [1] 30/14
exist [1] 10/5
expect [1] 5/23
expected [1] 15/17
expecting [1] 14/13
experience [1] 29/17
expert [4] 18/7 18/10 29/15 32/22
expertise [3] 18/8 33/9 33/16
experts [4] 29/16 29/22 30/4 33/5
explain [1] 27/7
explicitly [1] 20/5
exposure [1] 11/22
extent [1] 11/23
extra [2] 23/6 25/21

**F**

fact [4] 20/14 24/13 26/12 26/24
fair [1] 32/24
fall [1] 10/2
far [4] 9/23 11/23 20/18 20/20
fast [3] 27/20 29/4 29/19
FCRR [3] 1/20 34/4 34/11
February [5] 1/7 3/2 13/5 19/1 19/5
February 13 [1] 13/5
February 2 [2] 19/1 19/5
federal [2] 12/21 12/25
feedback [1] 14/14
feels [1] 23/10
felt [1] 26/5
few [2] 5/16 25/16
fights [1] 33/3
figure [3] 6/20 8/12 27/14
file [4] 24/3 25/11 25/19 26/23
filed [1] 28/4
files [5] 4/23 5/7 5/20 14/11 25/17
final [1] 23/18
fine [2] 7/20 17/13
Finish [1] 4/15
first [4] 5/6 18/5 23/25 27/14
five [8] 18/13 19/14 20/13 20/18 21/11 21/25 22/17 23/10
focus [1] 6/5
focused [4] 4/21 20/19 22/4 22/4
focusing [1] 20/20
folks [1] 14/13

follow [1] 19/11
following [1] 21/21
footnote [1] 6/20
forefront [1] 15/13
foregoing [1] 34/6
form [4] 8/15 14/4 14/6 14/7
format [1] 13/25
forth [1] 12/20
forthcoming [1] 14/25
found [1] 30/13
four [3] 3/13 3/14 26/4
fourteen [1] 19/6
frankly [4] 7/1 9/12 30/11 32/5
front [1] 8/11
full [1] 11/21
funds [1] 12/22 12/25 21/2
further [2] 7/7 16/19
future [2] 31/23 33/3

**G**

game [3] 22/9 30/2 30/10
gap [2] 23/7 26/18
gave [2] 20/13 31/13
general [1] 25/23
generally [3] 5/15 18/10 33/16
get [15] 3/10 4/11 4/17 6/1 7/12 8/14
10/8 13/20 14/11 14/19 16/19 25/2
26/19 29/6 30/24
gets [2] 21/18 33/11
getting [3] 19/22 19/23 25/17
give [17] 5/11 6/17 7/10 7/19 8/20 9/3
9/8 11/16 12/7 18/20 21/17 23/23 28/25
29/3 32/20 32/23 33/6
given [2] 31/24 31/25
giving [1] 33/11
go [9] 4/15 4/17 6/19 12/15 15/4 15/10
17/16 26/20 31/9
goes [2] 20/19 20/21
going [46]
gone [1] 30/12
good [27] 3/3 3/7 3/12 3/19 3/19 3/19
3/19 3/19 3/22 6/13 6/15 6/21 8/4 8/17
10/3 10/5 11/5 11/8 12/23 13/1 13/11
13/23 23/21 30/16 31/3 33/21 34/3
got [7] 3/6 9/16 22/10 24/2 25/13 29/12
29/17
gotcha [3] 11/15 23/19 24/15
grants [12] 18/14 18/16 18/24 19/9
19/15 19/16 20/1 20/13 20/13 20/18
21/11 22/17
grappled [1] 28/6
guess [12] 5/5 6/3 8/7 12/3 14/7 16/4
17/7 19/13 19/19 22/16 25/6 30/20
GULF [2] 1/6 31/18
guy [3] 31/17 32/18 32/19
guys [2] 7/13 20/17

**H**

had [32] 3/15 5/3 6/23 7/4 8/23 8/25
11/25 13/4 14/4 15/5 15/17 16/16 18/13
18/23 19/7 19/12 20/19 21/7 21/19
21/23 22/3 22/4 23/7 24/23 25/7 25/9
25/10 25/12 27/5 29/20 29/23 30/7
half [1] 33/4
hand [1] 22/15
handle [2] 6/1 16/4
happen [2] 26/14 27/17
happened [1] 30/12
happens [1] 27/12
hard [1] 19/16
has [15] 4/5 6/6 9/11 11/5 14/9 15/7
16/10 21/20 22/18 27/6 27/11 28/3 29/5
29/5 31/23

Hastings [1] 6/16
hat [1] 6/16
have [81]
haven't [5] 5/10 13/8
having [2] 23/11 30/12
he [6] 26/21 27/1 28/20 29/4 29/5 29/5
head [1] 11/14
health [3] 31/17 32/18 32/19
hear [4] 10/20 15/14 15/15 27/5
heard [1] 13/9
hearing [2] 18/24 19/1
heavily [1] 4/21
heels [1] 30/6
helpful [1] 33/4
here [7] 4/3 28/1 28/5 29/1 29/15 30/25 31/2
Hey [1] 31/16
highlighted [1] 24/8
him [1] 28/25
his [4] 26/20 29/5 31/12 31/16
Honor [48]
Honor's [2] 30/12 30/24
HONORABLE [1] 1/13
hood [2] 31/5 32/20
hope [1] 8/13
hopeful [2] 6/18 15/1
hopefully [2] 6/20 25/23
HORIZON [1] 1/5
hour [2] 31/15 33/4
hours [1] 32/11
how [13] 3/9 6/14 8/13 11/22 15/7 17/12
22/6 22/14 27/10 27/10 29/11 29/22
30/5
How's [2] 3/6 13/5
huh [9] 9/1 11/12 13/5 14/19 16/8 16/14
19/17 22/9 30/2
human [1] 31/17
hunting [2] 9/10 11/24

**I**

I'll [2] 23/22 32/12
I'm [29] 5/5 5/25 6/18 6/25 7/15 8/7
11/18 14/13 14/17 15/20 16/9 16/10
18/12 18/14 21/14 22/7 22/15 23/22
23/24 24/1 24/11 24/13 24/17 30/1 32/2
32/8 33/2 33/15 33/15
idea [1] 30/16
ideas [1] 33/5
identification [1] 18/7
identified [1] 11/25 12/1 18/9 20/25
identify [4] 18/24 19/9 20/16 33/16
if [42]
immediate [1] 23/22
immediately [1] 28/24
impact [1] 21/7
importantly [1] 28/16
in [83]
included [1] 14/5
including [1] 3/24
incur [1] 31/23
incurred [2] 21/9 31/23
indeed [3] 11/2 11/5 12/8
indicated [1] 25/9
individuals [1] 5/24
information [21] 9/24 10/3 10/12 10/14
12/2 13/8 13/10 13/24 14/4 14/10 14/18
14/25 15/12 15/22 16/2 16/4 16/6 16/13
16/17 29/16 33/12
informed [2] 4/6 12/23
initial [2] 5/17 20/8
instance [2] 5/22 31/11
instruction [1] 15/24
intend [2] 13/21 28/23

## I

intended [2] 18/24 19/9
intends [2] 28/21 32/2
intent [1] 25/25
intention [2] 26/10 30/25
interested [1] 8/10
interpret [1] 10/18
interpretation [1] 9/22
interrogatories [1] 31/25
interrogatory [1] 13/8
intervention [1] 15/2
into [5] 9/16 10/8 19/4 19/23 21/6
involve [1] 7/16
involved [1] 16/19
is [111]
isn't [1] 32/24
issue [35]
issues [18] 5/3 11/20 13/10 13/13 13/20
15/6 15/18 18/1 19/22 19/24 20/4 25/8
25/14 26/5 28/5 28/17 28/19 28/21
it [123]
it's [31] 3/22 4/8 4/21 6/20 7/1 7/4 7/11
7/13 7/20 10/13 11/11 14/9 16/3 16/7
16/8 16/24 19/21 19/23 24/9 24/24 25/4
26/12 27/3 27/22 27/22 28/7 28/10 29/2
29/9 29/11 32/21
item [2] 16/11 18/3
its [4] 9/25 21/2 28/3 28/5

## J

jam [1] 25/24
January [1] 18/23
January 8 [1] 18/23
Jenkins [1] 4/24
JPML [1] 26/17
JUDGE [16] 1/13 3/11 5/16 12/17 13/17
14/1 15/8 26/16 26/20 26/25 27/20
28/15 28/19 29/3 30/7 31/8
jump [1] 11/18
just [50]
justified [1] 10/13

## K

keep [4] 7/10 19/20 22/12 25/23
kids [1] 29/12
kind [5] 15/13 21/8 22/1 25/13 29/21
know [7] 7/19 11/10 13/14 17/10 20/18
20/18 22/6 22/8 22/12 22/14 23/21 28/1
29/4 30/19 31/20 32/25
knows [3] 6/25 20/21 31/5

## L

Labor [1] 14/2
Langan [1] 27/3
language [8] 6/25 7/9 18/21 18/25 19/15
24/5 24/9 24/10
large [2] 5/20 23/1
last [10] 3/13 5/3 7/20 13/4 17/20 25/8
28/16 29/20 29/24 30/7
lasted [1] 31/15
later [6] 18/9 18/9 19/8 19/10 19/10
32/22
laying [1] 14/3
least [4] 4/25 10/6 11/21 25/18
legal [2] 28/5 28/17
lengthy [2] 29/21 29/23
less [1] 31/15
let [3] 11/16 13/13 20/12
let's [12] 3/4 3/10 8/5 8/18 13/3 15/4
17/16 18/3 18/4 18/6 23/13 30/20
letter [1] 16/16
licenses [2] 9/10 11/24

## M

light [2] 18/25 27/4
like [7] 7/3 9/4/9 11/4/9 17/6 19/19
22/25
limit [1] 17/11
limitation [1] 28/4
limitations [1] 8/24
limited [3] 11/3 11/12 22/17
limits [1] 10/17
line [1] 9/23
lingering [1] 15/21
Listen [1] 22/6
litigation [3] 4/3 4/18 5/1
little [5] 3/15 6/19 19/19 28/2 32/14
long [4] 16/7 16/20 29/14 31/1
longer [1] 3/15
look [9] 6/11 6/18 6/24 7/13 7/20 23/12
23/22 27/13 28/20
looked [1] 5/6
looking [4] 8/7 23/24 24/1 29/7
loss [1] 21/8 21/24 31/21
lot [1] 4/10
LOUISIANA [5] 1/2 1/8 1/21 28/4 34/6

## M

MAGISTRATE [1] 1/13
mail [1] 18/12
mails [2] 3/5 18/4 18/5
maintain [2] 33/9 33/10
majority [2] 4/18 17/24
make [11] 7/8 8/22 9/15 11/7 11/23
13/10 28/22 29/5 30/8 30/16 33/2
makes [3] 6/2 12/14 23/21
making [1] 7/16
management [5] 4/22 5/18 5/22 30/8
30/13
many [1] 29/22
March [3] 3/17 19/8 30/7
March 20 [1] 3/17 19/8
material [1] 4/1
materials [3] 4/5 4/11 4/21
matter [3] 20/8 20/14 34/8
matters [1] 28/18
may [13] 3/13 4/2 4/17 10/2 11/22 12/1
18/20 25/7 25/14 25/15 25/15 26/6
31/23
maybe [4] 20/17 22/9 27/16 27/17
Maze [3] 18/18 28/13 33/7
MD [1] 1/5
MDL [1] 27/14
me [18] 5/11 7/13 7/16 8/11 11/7 11/14
14/17 18/6 18/15 19/13 20/12 22/14
22/24 23/3 24/16 27/8 30/1 33/3
mean [5] 4/14 10/19 17/19 22/13 31/25
means [2] 21/15 24/9
meant [1] 12/21
mechanical [1] 1/25
memorialized [1] 25/10
mention [1] 28/1
mentioned [1] 24/22
metadata [1] 25/14
methodically [1] 33/1
methodologies [2] 32/5 33/12
MEXICO [1] 1/6
middle [3] 26/11 26/18 26/21
might [3] 24/13 30/11 30/15
Miller [7] 3/11 8/8 12/17 13/17 14/1 15/8
16/24
mind [1] 19/20
minute [1] 16/21
mitigate [2] 21/2 22/7
mitigation [9] 19/24 20/2 20/6 20/20 21/1
21/10 22/4 22/9 22/11
mitigation-type [1] 20/2

## Mobile etc

Mobile [1] 8/5
money [4] 21/16 21/22 22/6 22/14
monies [1] 21/6
month [2] 19/10 26/18
months [1] 7/5
more [12] 4/3 4/17 6/5 7/10 10/6 23/1
23/11 25/2 25/18 28/16 32/14 32/17
morning [9] 3/3 3/6 3/12 3/16 3/22 3/25
6/15 6/17 18/4
most [1] 32/11
mostly [1] 5/7
motion [7] 13/3 20/3 20/9 23/20 26/7
28/24 32/3
mouse [2] 30/1 30/10
Mr. [2] 31/11 31/14
Mr. O'Rourke [2] 31/11 31/14
much [2] 11/13 32/25
my [10] 8/13 9/21 12/3 14/9 16/3 18/14
21/24 25/25 30/21 34/7

## N

names [1] 30/16
narrow [2] 10/12 22/13
narrowing [1] 8/6
Natural [1] 9/9
nearly [1] 7/4
need [17] 7/11 9/24 10/2 10/20 12/8
12/11 16/19 18/6 23/10 25/2 25/14
25/16 25/21 25/21 27/9 28/18 29/13
needed [2] 29/22 29/22
needs [3] 11/7 23/1 28/20
negotiation [1] 23/16
net [2] 21/24 31/21
never [2] 23/17 28/15
New [5] 1/8 1/21 22/8 26/13 26/13
New Orleans [3] 22/8 26/13 26/13
next [9] 6/4 6/8 7/22 8/15 13/16 16/5
16/11 28/20 32/13
no [16] 4/15 5/25 7/18 14/23 16/10
17/15 17/23 18/12 19/15 21/14 22/11
22/23 26/4 30/19 30/23 31/1
nobody [1] 32/23
nonresponsive [2] 9/14 10/20
nope [3] 33/13 33/13 33/15
normal [1] 28/3
not [66]
note [4] 4/9 5/19 16/5 25/6
nothing [1] 13/14
notice [2] 23/5 32/23
now [17] 3/13 7/3 7/5 14/13 15/18 18/3
20/15 20/25 22/17 22/23 24/3 25/15
27/21 27/22 28/10 30/15 32/8
number [5] 5/23 8/9 8/10 28/14 30/4
numbers [1] 18/15

## O

O'Rourke [2] 31/11 31/14
object [2] 12/10 33/10
objection [3] 19/14 23/11 33/10
objections [2] 22/18 23/15
obtain [2] 10/1 10/14
obviously [3] 4/8 11/21 25/14
occur [2] 12/25 26/13
October [3] 4/21 5/3 25/8
off [5] 7/2 7/11 11/14 15/19 26/14
offering [1] 33/17
Official [3] 1/20 34/4 34/12
offline [1] 16/18
offset [4] 18/16 19/15 19/22 22/5
Oh [2] 24/7 32/22
oil [4] 1/5 1/5 5/21 9/12
oiling [1] 6/7

## O

oiling-related [1] 6/7
okay [31] 3/4 3/8 4/12 4/15 5/5 5/10
6/13 6/21 7/21 7/24 8/17 12/15 13/1
13/23 14/16 14/21 15/4 16/10 17/11
17/15 17/22 18/5 19/13 20/17 23/19
24/10 24/15 25/5 25/20 26/2 33/21
on [76]
once [1] 27/12
one [23] 3/14 6/6 6/23 7/19 9/11 10/4
10/6 10/15 11/7 11/20 16/4 19/20 23/10
24/19 25/6 25/8 26/6 27/4 28/14 29/7
29/13 32/17 32/17
ones [1] 12/1
only [6] 9/4 10/21 15/21 17/7 21/16 26/4
open [1] 14/8
opening [1] 18/8
operates [1] 11/22
opinion [1] 14/22
opinions [2] 33/6 33/17
opportunity [1] 10/1
or [41]
order [23] 3/5 8/14 8/23 9/3 9/5 9/7 9/13
9/15 9/22 10/7 10/11 10/18 10/20 10/22
11/4 13/5 16/5 18/21 18/25 19/1 19/6
27/13 33/22
ordered [3] 9/11 19/5 19/12
orders [2] 18/4 23/24
original [5] 8/23 9/5 10/7 10/11 10/23
11/3 14/6 20/3 23/6
originally [1] 14/5
Orleans [5] 1/8 1/21 22/8 26/13 26/13
other [19] 4/13 4/16 5/10 6/3 6/6 6/9
10/19 11/6 17/1 17/10 21/17 22/15
24/16 26/4 29/14 30/17 31/18 32/20
32/24
other's [1] 33/5
others [1] 12/7
otherwise [4] 21/9 22/19 24/12 32/14
ought [1] 28/8
our [24] 3/15 4/5 8/15 9/13 9/22 9/25
13/4 14/20 16/11 16/21 17/20 18/3
21/15 21/20 22/10 23/5 23/11 23/18
26/10 28/23 28/24 33/1 33/9 33/10
ourselves [1] 18/8
out [15] 3/13 3/14 3/16 6/5 6/20 8/12
8/23 14/3 16/9 17/10 18/25 24/15
25/22 27/14 30/13
outcome [1] 21/23
outlined [1] 27/6 27/11
outside [6] 10/2 10/7 10/21 10/22 12/1
32/5
over [4] 10/21 12/20 29/14 33/3
overall [1] 21/7
overly [1] 19/21
owe [1] 9/7

## P

page [3] 2/2 8/22 30/9
panel [2] 27/10 28/12
Panel Rule [1] 28/12
Parker [15] 3/11 5/14 8/8 8/20 11/16
12/15 12/17 13/17 14/1 15/2 15/8 16/18
16/24 17/4 25/22
Parker Miller [6] 8/8 12/17 13/17 14/1
15/8 16/24
part [4] 10/18 10/19 21/5 28/16
participants [1] 5/21
particular [9] 6/25 9/9 15/14 16/23 25/3
25/6 27/15 29/7 31/11
parties [9] 12/19 14/25 15/10 16/6 24/9
26/5 27/13 30/9 30/14

party [3] 15/4 17/16 23/1
pass [1] 16/23
past [2] 4/20 7/12
Paul [18] 3/23 5/17 6/11 9/19 9/21 10/16
11/19 12/3 13/7 13/19 14/22 16/15 17/6
19/13 20/19 23/21 24/18 24/25
Paul Collier [6] 3/23 9/21 11/19 13/7
16/15 24/18
payments [1] 20/1
peek [2] 31/4 32/20
penalty [1] 29/18
pending [1] 13/22
penny [1] 22/15
people [2] 24/12 32/1
percent [1] 24/6
perhaps [3] 16/18 21/17 30/3
period [5] 22/23 23/12 23/14 28/25 29/1
permitted [1] 16/13
phase [1] 29/18
phone [1] 32/8
pick [1] 26/7
place [1] 27/14
plan [2] 3/7 3/8
plate [1] 29/5
Please [1] 29/10
plus [1] 26/17
point [16] 4/16 6/3 7/1 7/4 18/12 21/3
21/10 22/23 23/12 24/15 24/19 25/6
26/24 30/25 31/3 33/11
points [1] 4/2
Polaris [1] 15/11
pop [1] 18/13
popped [1] 18/4
position [2] 5/2 9/19
positive [1] 21/7
posture [1] 28/2
potentially [1] 17/10
Poydras [1] 1/21
preclude [1] 12/7
preemptively [1] 11/14
premature [3] 25/15 27/23 28/11
prepare [1] 21/21
prepared [3] 22/19 32/15 33/8
presentment [1] 5/16
presumably [1] 5/6
presume [1] 20/21
pretrial [2] 27/15 27/24
pretty [2] 6/8 30/13
preview [1] 5/1
previously [1] 21/19
primary [1] 5/20
probably [1] 14/7
problem [2] 16/11 16/20
procedural [1] 28/2
proceed [2] 7/14 22/16
proceedings [6] 1/25 3/1 27/15 27/24
34/1 34/8
process [1] 3/25
processing [1] 4/10
produce [6] 5/23 12/24 13/8 13/21 16/13
17/2
produced [4] 13/18 16/7 24/3 25/19
production [23] 3/10 3/24 4/5 4/6 4/19
4/20 5/4 6/6 6/10 10/16 11/2 19/3 19/8
22/24 23/1 23/1 23/8 23/13 24/3 25/2
25/3 25/11 32/13
productions [11] 3/12 3/13 3/14 3/15
3/24 5/6 5/17 6/4 6/5 6/8 13/19
productive [1] 30/14
progress [1] 24/24
projected [1] 24/2
proper [2] 9/17 29/2
properties [1] 8/10

property [1] 8/6
proposal [2] 19/7 24/4
proposed [3] 8/9 19/7 24/23
protocol [1] 25/19
provide [2] 14/12 15/23
provided [3] 15/3 15/11 15/23
providing [1] 16/17
provision [1] 20/22
provisions [1] 18/16
PTO [4] 16/7 16/8 16/14 17/3
PTO 13 [1] 16/8 16/14 17/3
PTO 16 [1] 16/7
public [2] 32/18 32/18
purchase [1] 12/23
purposes [2] 25/11
pursuant [1] 16/7
push [1] 23/17
pushed [1] 25/13
put [6] 6/3 12/10 26/14 28/23 31/17
31/17
putting [4] 7/10 16/21 16/22 18/20

## Q

quantifications [1] 33/14
question [4] 20/12 21/13 21/25 26/4
questioned [1] 22/18
questioning [1] 22/2
questions [2] 19/17 21/15
quick [3] 8/21 21/14 28/14

## R

raise [5] 21/21 22/19 23/15 28/21 31/3
raised [2] 5/3 26/4
rather [1] 30/16
rationale [1] 18/20
RE [1] 1/5
reach [1] 25/22
read [1] 24/13
reading [2] 9/13 9/16
ready [3] 4/11 28/9 29/9
realize [1] 11/1
really [7] 5/2 10/10 20/10 27/24 28/9
28/17 32/2
reason [4] 5/19 11/25 19/3 23/6
recall [3] 3/13 25/7 30/19
receive [2] 13/12 15/17
received [4] 3/23 8/9 10/6 21/16
receiving [1] 15/20
recently [1] 15/3
recollection [4] 18/14 29/19 30/21 31/12
record [2] 24/12 34/8
recorded [1] 1/25
recurring [10] 8/18 9/2 9/4 9/6 9/10 10/5
11/6 12/5 12/21 12/25
recurring revenues [1] 12/21
red [1] 22/15
references [1] 9/22
regard [2] 9/2 32/13
regarding [1] 14/8
related [3] 6/7 16/3 17/25
relates [2] 11/24 17/8
relating [1] 9/24
Relative [1] 14/16
release [2] 15/23 16/6
releasing [1] 16/2
relevance [1] 4/3
remain [1] 26/13
remand [11] 23/20 26/7 26/11 27/16
27/25 28/10 28/20 28/24 29/8 29/9
29/10
remember [3] 22/6 29/18 29/25
remembering [2] 18/17 18/19
removal [1] 31/22

## R

report [3]  3/16 3/20 7/22
reported [1]  15/5
Reporter [3]  1/20 34/5 34/12
reports [1]  6/7
request [10]  10/16 10/17 11/2 11/4 11/7
11/12 11/23 12/2 14/11 20/10
requested [5]  12/5 12/6 14/5 17/1 17/2
requests [2]  8/7 10/23
required [1]  10/24
requirement [1]  19/4
research [1]  28/22
reserve [1]  13/19
resolve [5]  6/19 14/24 15/1 15/6 24/17
resolved [2]  13/22 16/16
Resources [1]  9/9
respect [5]  4/10 17/20 20/3 20/9 24/19
respond [1]  8/25
response [4]  5/21 9/21 16/3 28/14
response-related [1]  16/3
responsive [1]  9/24
result [1]  26/18
revealed [1]  18/10
revenue [7]  8/18 9/2 9/6 10/5 12/5 13/16
21/8
revenues [7]  9/4 9/10 10/21 11/6 11/22
12/21 12/24
review [4]  4/11 6/17 13/20 13/22
reviewing [1]  13/13
RFPs [1]  9/25
RIG [1]  1/5
right [21]  5/13 6/10 6/13 9/18 13/20
14/13 14/21 15/9 16/9 19/18 20/15
20/23 20/24 22/3 22/17 22/21 29/12
30/6 31/3 31/6 33/10
road [1]  23/17
roll [1]  3/4
rolling [1]  6/4
Roy [1]  4/23
rule [6]  14/17 25/23 26/17 27/1 28/12
31/24
Rule 26 [1]  31/24
rules [2]  29/4 32/5
ruling [2]  12/7 27/20
run [2]  8/21 25/16

## S

said [4]  10/16 11/9 24/10 27/5
Saints [1]  22/9
SALLY [1]  1/13
sand [1]  9/23
satisfactory [1]  33/20
saw [1]  4/20
say [10]  7/2 10/20 18/16 19/15 19/16
27/22 28/10 28/12 32/6 32/22
saying [3]  28/20 29/10 33/11
says [3]  19/1 20/22 29/1
scanning [1]  15/19
schedule [8]  4/3 4/18 5/1 23/7 23/16
23/17 23/23 28/25
scheduled [1]  17/24
scheduling [6]  3/5 8/24 11/4 18/3 23/24
33/22
scope [6]  8/7 9/17 10/2 10/7 10/13
11/12
search [3]  9/24 25/9 25/19
second [1]  29/15
Section [1]  1/6
see [17]  8/14 13/3 13/20 14/11 16/12
16/19 18/6 18/13 22/1 23/13 23/25 24/1
24/8 25/3 27/24 31/5 32/5

seek [3]  11/20 16/1 19/25
seem [1]  30/11
seemed [1]  5/8
seems [7]  10/23 11/7 14/17 18/6 22/14
22/24 23/3
seen [2]  4/19 5/10
sees [1]  19/2
sense [3]  6/2 12/14 19/21
sent [1]  16/16
served [3]  9/25 17/9 17/21
service [1]  12/22
set [4]  8/23 23/12 23/22 27/14
setoff [1]  20/7
several [1]  26/18
several-month [1]  26/18
sharing [2]  29/16 33/4
sheet [1]  32/14
short [2]  8/14 17/19
short-circuit [1]  17/19
shortly [1]  14/14
shot [1]  7/15
should [10]  7/6 10/9 15/20 17/13 21/22
22/19 26/12 28/1 29/8 29/9
shouldn't [2]  19/16 23/21
show [1]  11/8
SHUSHAN [1]  1/13
side [3]  30/17 30/17 31/2
signals [1]  24/5
significant [3]  5/18 5/23 8/13
similar [3]  4/19 14/12 14/15
simple [2]  28/7 29/9
simply [2]  28/20 31/15
sir [1]  26/9
sit [1]  29/20 32/6
situation [2]  10/12 29/6
situations [1]  10/4
skills [1]  30/13
so [40]
Sock [1]  27/8
software [1]  1/25
some [18]  4/2 6/7 8/15 10/1 12/20 15/11
15/15 15/18 15/18 15/22 17/25 23/22
24/12 25/16 26/24 28/5 28/8 29/14
someone [1]  31/22
something [7]  6/16 7/11 10/23 11/19
12/8 14/14 25/18
somewhere [1]  21/22
soon [2]  15/20 29/2
sorry [3]  4/13 11/18 16/9
sort [9]  4/25 22/17 29/14 29/16 30/8
30/15 30/24 31/15 32/8
sound [3]  3/6 10/9 13/6
sounds [3]  3/7 3/8 11/11
specific [4]  10/12 15/24 17/8 28/25
specifically [2]  4/22 19/20
spend [1]  33/4
spent [6]  21/22 21/23 22/7 22/7 22/8
22/15
sphere [1]  22/17
spill [4]  1/5 5/21 9/13 21/9
spreadsheet [1]  14/3
stage [1]  4/25
standpoint [1]  21/5
start [1]  19/3
state [20]  3/12 6/23 8/9 9/23 10/11 11/3
11/22 12/6 12/17 13/16 13/18 14/2
18/19 23/4 27/19 29/8 29/9 31/10 31/18
33/8
State of [1]  6/23
state's [2]  13/18 31/21
STATES [5]  1/1 1/13 29/21 29/24 34/5
status [6]  1/12 3/20 8/7 8/15 17/19 30/6
stenography [1]  1/25

step [1]  27/9
stern [1]  30/24
sticking [2]  7/17 7/4
still [6]  3/17 3/25 6/18 6/19 17/25 25/15
stipulate [1]  14/18
stipulation [3]  6/14 7/14 7/16
Street [1]  1/21
structured [1]  30/6
stuck [1]  29/6
stuff [1]  29/14
subdepartment [1]  9/6
subdepartments [2]  8/25 9/5
subdivisions [1]  10/17
subject [5]  16/13 17/2 18/7 20/14 29/23
submitted [1]  6/16
subpoena [1]  15/14
subpoenas [1]  17/21
substantial [4]  3/18 4/4 6/8 10/10
substantially [2]  27/13 27/18
such [3]  21/7 21/8 21/22
sufficiency [5]  4/17 5/3 6/11 22/24 24/19
sufficient [6]  6/24 25/4 26/25 29/3 33/12
suggested [2]  28/16 30/15
suggesting [1]  28/8
suggestion [6]  23/20 26/7 26/20 27/1
27/16 27/25
summary [7]  13/24 14/4 14/9 14/12
14/19 32/1 32/4
supplant [1]  24/23
support [1]  20/2
supporting [1]  28/23
suppose [1]  15/15
sure [8]  8/22 9/15 22/15 27/4 29/5 30/9
30/16 32/2
surprised [1]  18/12

## T

tab [1]  14/5
take [9]  4/9 9/3 15/13 18/5 25/20 27/13
28/8 29/15 33/1
taken [2]  16/18 27/25
takes [3]  18/2 26/16 26/17
taking [1]  6/18
talk [13]  4/3 4/18 5/1 8/5 8/18 16/18
25/12 25/21 31/18 31/21 31/22 32/7
32/15
talked [3]  3/14 7/9 31/11
talking [10]  6/25 7/7 8/12 9/17 14/13
19/14 20/5 20/6 21/1 27/19
target [1]  22/25
taste [1]  27/21
tax [3]  13/16 21/8 31/21
taxes [1]  32/8
TELEPHONE [1]  1/12
tell [5]  19/13 32/4 32/12 32/17 32/18
telling [2]  18/14 32/8
term [2]  3/18 25/19
terms [9]  3/12 5/21 6/8 14/2 15/11 15/17
15/21 25/10 30/18
test [2]  22/24 25/16
testify [1]  30/5
testimony [1]  33/5
than [10]  3/15 20/8 24/16 26/4 27/6 28/2
31/12 31/15 32/17 32/17
Thank [10]  9/20 12/13 13/15 14/23
17/13 26/1 33/19 33/23 33/24 33/25
that [249]
that's [33]  3/19 4/15 5/9 5/13 5/16 6/12
7/21 10/24 11/4 14/20 15/19 16/9 16/10
17/9 18/8 20/25 21/4 21/4 22/3 22/5
22/9 22/21 25/25 27/1 28/11 28/18 29/2
29/10 30/14 30/15 30/18 31/3 32/8
their [6]  4/23 10/22 10/23 13/22 20/9

# T

their... [1]  27/21
them [10]  6/17 13/20 15/14 22/19 22/20 28/22 31/24 32/17 32/18 33/11
then [15]  4/16 6/11 11/4 11/20 12/15 18/2 18/25 19/10 21/6 23/11 23/14 23/15 23/24 26/15 26/16
there [29]  4/4 10/2 10/5 11/10 12/1 12/20 13/9 14/5 14/6 14/15 14/22 15/9 15/15 15/18 16/22 17/10 20/6 20/13 23/13 23/19 25/12 25/14 25/15 26/5 28/5 30/1 30/4 30/9 31/5
there's [7]  6/6 9/6 13/14 16/19 17/23 31/1 32/22
therefore [1]  10/7
these [15]  6/4 6/7 10/6 13/21 17/23 17/25 19/16 20/1 21/6 22/17 27/10 28/17 28/19 28/21 32/15
they [23]  6/18 7/3 7/9 9/11 9/12 12/10 13/20 14/4 14/10 15/12 15/12 15/22 15/22 15/23 18/16 18/24 21/7 21/25 27/20 27/21 30/5 32/3 32/3
thing [6]  6/23 10/16 19/20 20/8 26/6 32/9
things [3]  17/19 23/17 27/10
think [52]
thinking [3]  30/17 32/7 32/16
third [3]  15/4 15/10 17/16
third-party [2]  15/4 17/16
this [78]
those [18]  5/7 5/7 5/19 5/19 5/20 5/23 5/24 9/4 10/1 10/4 10/17 12/25 13/18 15/19 15/20 18/15 20/16 20/22
thought [4]  15/5 16/16 16/17 21/1
three [4]  7/5 9/9 18/15 19/15
through [9]  3/4 4/1 15/10 17/16 17/25 23/2 30/12 31/16 33/1
thrown [1]  15/19
tick [1]  32/14
tie [1]  14/5
time [21]  3/14 4/10 6/17 6/24 7/8 13/14 23/2 25/3 25/12 25/21 26/16 26/16 26/17 26/25 28/22 28/25 29/1 29/2 29/3 29/5 29/18
today [1]  10/25
today's [1]  16/21
told [1]  15/20
ton [1]  6/17
Toni [4]  1/20 34/4 34/11 34/11
too [2]  7/21 31/1
took [1]  3/15
topic [1]  13/1
track [2]  3/17 25/24
transactions [1]  12/22
transcript [2]  24/13 34/7
transcription [1]  1/25
travel [1]  22/8
trial [3]  7/4 31/1 32/24
tried [2]  28/3 28/5
tries [1]  26/7
trouble [1]  18/11
true [3]  5/15 12/24 34/6
try [4]  6/1 7/23 22/12 22/25
trying [5]  10/11 11/14 19/11 23/25 25/24
turn [2]  10/21 18/3
Tusa [4]  1/20 34/4 34/11 34/11
two [10]  4/23 5/6 5/20 7/10 11/7 17/20 18/15 19/15 22/5 23/24
type [3]  16/1 20/2 25/16
types [2]  32/1 32/15
typically [2]  27/10 27/12

# U

Uh [1]  9/1
Uh-huh [1]  9/1
under [4]  7/25 28/11 31/4 32/20
understand [9]  7/18 11/21 11/25 12/5 20/10 22/22 23/5 25/1 27/10
understanding [5]  14/9 14/20 16/3 21/25 34/7
understands [1]  30/17
understood [5]  6/2 8/3 18/13 22/16 33/18
Unfortunately [1]  15/9
unhelpful [1]  31/4
UNITED [5]  1/1 1/13 29/21 29/24 34/5
United States [2]  29/21 29/24
universe [3]  19/14 20/18 22/5
University [1]  17/17
until [3]  26/15 27/17 28/18
up [9]  4/15 10/24 13/16 18/5 18/8 18/13 25/8 27/14 27/21
update [4]  3/10 8/21 11/17 12/16
upon [1]  25/10
ups [1]  21/9
us [18]  4/6 4/11 10/3 13/20 15/3 15/13 15/25 21/17 21/18 24/25 25/24 27/5 30/15 32/2 32/4 32/6 32/23 33/20
use [7]  12/22 19/9 21/2 24/11 24/12 24/14 25/9
used [4]  18/16 20/1 21/6 21/18
using [1]  1/25

# V

vacuum [2]  12/4 12/7
value [1]  22/10
various [1]  6/9
vast [1]  17/24
vendor [1]  4/5
very [12]  10/12 14/14 14/25 15/1 15/20 27/6 28/14 29/9 29/19 29/19 31/12 32/10
view [2]  21/10 27/6
vivid [1]  29/19

# W

wait [2]  22/1 27/24
waiting [1]  15/14
waiving [1]  15/25
want [17]  4/9 7/19 7/20 7/24 10/15 12/7 24/3 25/24 26/14 27/5 27/21 29/3 29/5 32/9 32/21 32/23 33/3
wanted [6]  3/14 6/1 8/21 9/15 10/24 26/21
wanting [1]  26/19
wants [1]  32/6
was [47]
wasn't [4]  9/7 20/5 27/3 30/10
water [1]  7/21
way [5]  5/8 6/19 16/4 19/7 20/2 20/17 21/6 28/15 33/1
wayside [1]  25/13
we [190]
week [3]  23/11 26/23 28/20
weeks [2]  7/10 17/20
well [12]  3/4 7/13 11/1 16/8 17/11 18/2 19/18 20/12 22/10 24/11 30/20 33/21
went [4]  3/16 20/4 21/6 21/17
were [19]  5/7 5/20 8/6 8/19 9/5 10/18 11/3 12/1 15/5 15/18 16/12 19/11 21/6 24/10 26/19 27/4 30/5 30/9 32/5
weren't [2]  24/12 32/4
what [41]
what's [1]  19/19

whatever [1]  28/21
when [33]  3/17 4/18 5/11 5/15 25/7 29/8 32/12 32/25
where [12]  4/21 9/23 10/2 10/4 10/5 10/12 11/7 11/22 21/17 23/25 24/16 30/18
whether [10]  5/2 13/9 14/12 14/14 18/9 19/22 19/24 19/25 20/6 27/14
which [15]  6/17 9/5 14/7 18/24 19/15 20/2 20/4 20/20 20/21 21/18 21/18 22/23 23/14 23/16 29/1
who [1]  16/22
whole [1]  21/19
why [10]  5/5 10/24 12/9 23/2 24/15 27/7 28/18 30/14 30/15 32/14
will [38]
willing [1]  7/2
without [3]  15/1 15/24 25/24
witnesses [4]  21/15 21/21 32/16 33/17
witnesses' [1]  5/7
won [1]  32/3
won't [2]  12/4 17/3
word [3]  22/13 24/11 24/14
words [2]  5/10 31/16
work [12]  7/23 7/25 8/6 23/2 24/24 25/4 25/22 27/11 28/8 30/20 33/1 33/22
working [4]  8/19 14/24 15/13 17/25
works [2]  27/10 32/25
worries [1]  17/15
would [38]
wouldn't [2]  11/25 22/10
write [1]  27/1
wrong [1]  30/1

# Y

y'all [1]  7/16
yeah [3]  3/23 9/21 16/15
year [4]  22/11 25/8 29/10 30/8
Yes [11]  5/25 8/8 9/20 11/13 12/13 13/2 13/7 18/19 18/22 24/21 26/9
yet [3]  5/11 13/9 15/9
you [92]
your [57]
Your Honor [42]
Your Honor's [2]  30/12 30/24
yourself [1]  25/3