09:31:22

```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2

 3      ********************************************************

        IN RE:  OIL SPILL BY THE          Docket No. MDL-2179
 4      OIL RIG DEEPWATER HORIZON         Section "J"
        IN THE GULF OF MEXICO ON          New Orleans, LA
 5      APRIL 20, 2010                    Wednesday, September 11, 2013
        CIVIL
 6      ********************************************************
        IN RE:  THE COMPLAINT AND         Docket No. 10-CV-2771
 7      PETITION OF TRITON ASSET          Section "J"
        LEASING GmbH, ET AL
 8      ********************************************************
        UNITED STATES OF AMERICA          Docket No. 10-CV-4536
 9      V.                        Section "J"
        BP EXPLORATION & PRODUCTION,
10      INC., ET AL
        ********************************************************
11             TRANSCRIPT OF PRE-TRIAL CONFERENCE PROCEEDINGS
             HEARD BEFORE THE HONORABLE CARL J. BARBIER
12                  UNITED STATES DISTRICT JUDGE

13
        APPEARANCES:
14
        FOR THE PLAINTIFFS:               HERMAN HERMAN & KATZ
15                                        BY:  STEPHEN J. HERMAN, ESQ.
                                          820 O'Keefe Ave.
16                                        New Orleans, LA 70113

17                                        DOMENGEAUX, WRIGHT, ROY & EDWARDS
                                          BY:  JAMES P. ROY, ESQ.
18                                        P. O. Box 3668
                                          556 Jefferson St.
19                                        Lafayette, LA 70502-3668

20                                        LEVIN PAPANTONIO THOMAS MITCHELL
                                          RAFFERTY & PROCTOR
21                                        BY:  BRIAN H. BARR, ESQ.
                                          316 South Baylen Street, Suite 600
22                                        Pensacola, FL 32502

23                                        WEITZ & LUXENBERG
                                          BY:  ROBIN L. GREENWALD, ESQ.
24                                        700 Broadway
                                          New York, NY 10003

25
```

```
 1                                LUNDY LUNDY SOILEAU & SOUTH
                                 BY:  MATTHEW E. LUNDY, ESQ.
 2                                501 Broad Street
                                 Lake Charles, LA 70601
 3
                                 MORGAN & MORGAN
 4                                BY:  FRANK M. PETOSA, ESQ.
                                 600 N. Pine Island Rd., Suite 400
 5                                Plantation, FL 33324

 6
      FOR THE STATE OF LOUISIANA:KANNER & WHITELEY
 7                                BY:  ALLAN KANNER, ESQ.
                                      DOUGLAS R. KRAUS, ESQ.
 8                                701 Camp St.
                                 New Orleans, LA 70130
 9

10    FOR THE STATE INTERESTS:    ATTORNEY GENERAL OF ALABAMA
                                 BY:  COREY L. MAZE, ESQ.
11                                     WINFIELD J. SINCLAIR, ESQ.
                                 500 Dexter Ave.
12                                Montgomery, AB 36130

13
      FOR THE UNITED STATES
14    DEPARTMENT OF JUSTICE:      U.S. DEPARTMENT OF JUSTICE
                                 ENVIRONMENTAL ENFORCEMENT SECTION
15                                BY:  SARAH HIMMELHOCH, ESQ.
                                      A. NATHANIEL CHAKERES, ESQ.
16                                     STEVEN O'ROURKE, ESQ.
                                      SCOTT CERNICH, ESQ.
17                                P.O. Box 7611
                                 Washington, DC 20044
18
                                 U.S. DEPARTMENT OF JUSTICE
19                                TORTS BRANCH, CIVIL DIVISION
                                 BY:  STEPHEN G. FLYNN, ESQ.
20                                P.O. Box 14271
                                 Washington, DC 20044-4271
21

22

23

24

25
```

```
 1   FOR BP AMERICA INC., BP
     AMERICA PRODUCTION COMPANY,
 2   BP COMPANY NORTH AMERICA,
     INC., BP CORPORATION NORTH
 3   AMERICA, INC., BP EXPLORATION &
     PRODUCTION INC., BP HOLDINGS
 4   NORTH AMERICA LIMITED, BP
     PRODUCTS NORTH AMERICA INC.:     LISKOW & LEWIS
 5                                    BY:  DON K. HAYCRAFT, ESQ.
                                      One Shell Square, Suite 5000
 6                                    701 Poydras St.
                                      New Orleans, LA 70139
 7
                                      KIRKLAND & ELLIS
 8                                    BY:  J. ANDREW LANGAN, ESQ.
                                           HARIKLIA KARIS, ESQ.
 9                                         MATTHEW T. REGAN, ESQ.
                                           BARRY E. FIELDS, ESQ.
10                                         PAUL D. COLLIER, ESQ.
                                      300 N. LaSalle
11                                    Chicago, IL 60654

12                                    KIRKLAND & ELLIS
                                      BY:  ROBERT R. GASAWAY, ESQ.
13                                         JOSEPH A. EISERT, ESQ.
                                      655 Fifteenth St., N.W.
14                                    Washington, D.C. 20005

15                                    COVINGTON & BURLING
                                      BY:  ROBERT C. "MIKE" BROCK, ESQ.
16                                         BRIDGET K. O'CONNOR, ESQ.
                                      1201 Pennsylvania Ave., NW
17                                    Washington, DC 20004

18   FOR HALLIBURTON
     ENERGY SERVICES, INC.:           GODWIN LEWIS
19                                    BY:  DONALD E. GODWIN, ESQ.
                                           SEAN W. FLEMING, ESQ.
20                                         JENNY L. MARTINEZ, ESQ.
                                           BRUCE W. BOWMAN, JR., ESQ.
21                                    Renaissance Tower
                                      1201 Elm St., Suite 1700
22                                    Dallas, TX 75270

23                                    GODWIN LEWIS
                                      BY:  R. ALAN YORK, ESQ.
24                                         GWEN E. RICHARD, ESQ.
                                      4 Houston Center
25                                    1331 Lamar, Suite 1665
                                      Houston, TX 77010
```

```
 1
      FOR ANADARKO PETROLEUM
 2    CORPORATION, ANADARKO E&P
      COMPANY, LP:                      KUCHLER POLK SCHELL WEINER &
 3                                      RICHESON
                                        BY:  DEBORAH D. KUCHLER, ESQ.
 4                                      1615 Poydras St., Suite 1300
                                        New Orleans, LA 70112
 5
                                        BINGHAM McCUTCHEN
 6                                      BY:  WARREN A. FITCH, ESQ.
                                             KY E. KIRBY, ESQ.
 7                                      2020 K Street, N.W.
                                        Washington, D.C. 20006
 8

 9    FOR TRANSOCEAN HOLDINGS, LLC,
      TRANSOCEAN OFFSHORE DEEPWATER
10    DRILLING INC., AND TRANSOCEAN
      DEEPWATER
11    INC.:                             FRILOT
                                        BY:  KERRY J. MILLER, ESQ.
12                                      Energy Centre, 36th Floor
                                        1100 Poydras St.
13                                      New Orleans, LA 70163

14                                      SUTHERLAND ASBILL & BRENNAN
                                        BY:  STEVEN L. ROBERTS, ESQ.
15                                      1001 Fannin St., Suite 3700
                                        Houston, TX 77002
16
                                        MUNGER TOLLES & OLSON
17                                      BY:  MICHAEL R. DOYEN, ESQ.
                                             BRAD D. BRIAN, ESQ.
18                                           LUIS LI, ESQ.
                                             GRANT A. DAVIS-DENNY, ESQ.
19                                           TAMERLIN J. GODLEY, ESQ.
                                        355 South Grand Ave., 35th Floor
20                                      Los Angeles, CA 90071-1560

21                                      ALLEN J. KATZ, ESQ.
                                        316 East Diamond Avenue
22                                      Gaithersburg, MD 20877

23    FOR THE STATE OF TEXAS:           OFFICE OF THE ATTORNEY GENERAL
                                        BY:  CRAIG PRITZLAFF, ESQ.
24                                           THOMAS H. EDWARDS, ESQ.
                                        ASSISTANT ATTORNEY GENERAL
25                                      P.O. Box 12548
                                        Austin, TX 78711-2548
```

```
 1
      FOR THE STATE OF FLORIDA:       NIX PATTERSON & ROACH
 2                                    BY:  S. DRAKE MARTIN, ESQ.
                                      1701 E. Count Highway 30-A
 3                                    Suite 201-B
                                      Santa Rosa Beach, FL 32459
 4

 5
                                      OFFICE OF THE ATTORNEY GENERAL
 6                                    STATE OF FLORIDA
                                      BY:  RUSSELL S. KENT, ESQ.
 7                                    The Capitol, PL-01
                                      Tallahassee, FL 32399
 8
      FOR THE STATE OF MISSISSIPPI:   MIKE MOORE LAW FIRM
 9                                    BY:  DAVID LEE MARTIN, ESQ.
                                      10 Canebrake Blvd., Suite 150
10                                    Flowood, MS 39232

11                                    McCRANEY MONTAGNET QUIN NOBLE
                                      BY:  WILLIAM M. QUIN, II, ESQ.
12                                    602 Steed Rd., Suite 200
                                      Ridgeland, MS 39157
13

14
      OFFICIAL COURT REPORTER:        Karen A. Ibos, CCR, RPR, CRR, RMR
15                                    500 Poydras Street, Room HB-406
                                      New Orleans, LA 70130
16                                    (504) 589-7776

17
           Proceedings recorded by mechanical stenography, transcript
18    produced by computer.

19

20

21

22

23

24

25
```

1                           I N D E X

2                                               PAGE/LINE:

3

4     I.    Trial Schedule                         7/16

5     II.   Argument/Objections to Non-participation

6            by Halliburton and Transocean in the

7            quantification phase of the trial      9/3

8     III.  Allocation of time                      19/16

9     IV.   Marshalling of Exhibits                 28/1

10    V.    Exhibit and Witness Lists               32/9

11    VI.   Advance Notice of Witnesses             38/10

12    VII.  Courtroom Seating                       39/9

13    VIII. Examination of Witnesses                41/11

14    IX.   Expert Witness Examination         42/13

15    X.    Daubert Motions                         44/14

16    XI.   Court Reporter Requests                 46/7

17    XII.  Objections/Offers of Proof         46/16

18    XIII. Qualifying Experts                      51/15

19    XIV.  Motions in Limine                       52/8

20

21

22

23

24

25

<u>P R O C E E D I N G S</u>

(PRE-TRIAL CONFERENCE)

(WEDNESDAY, SEPTEMBER 11, 2013)


    (OPEN COURT.)

          THE COURT:  Good afternoon, everyone.  We do have a court
reporter, as you can see.  So even though this is a pretrial
conference we'll make a record of it, just because I may make some
rulings that should be of record so I thought we should have a
reporter here.

          So what we're doing is holding a final pretrial
conference in, it's really two cases, same two cases that we tried
in Phase One, which is a continuation of the Transocean limitation,
which is Civil Action 10-2771, and the United States' Clean Water
Act case versus BP and others, Civil Action 10-4536.

          I think the first thing -- and we can take up anything
that you all want to talk about if you have any questions or
anything.  Somebody had submitted a proposed tentative agenda, which
I published.  A number of these things we may not even have to talk
about.

          But in terms of trial schedule, obviously we are going to
start on September 30th at 8:00 A.M. with opening statements.  My
recollection from the timeline and earlier orders from Judge Shushan
that has been worked out with you all is that each side has been
allotted I think for -- we're going to segment the Phase Two trial,

15:04:24  1    so it's really two trials in one.  The first week we will, first

15:04:33  2    four days will be the trial of the source control issues; and each

15:04:39  3    side will have a total of 15 hours for that.

15:04:47  4           And the sides, as I appreciate it, and I want to make

15:04:52  5    sure we're all on the same page here.  As I appreciate it, we have

15:04:56  6    aligned parties in that source control phase segment, which would be

15:05:06  7    the Plaintiffs Steering Committee, the private plaintiffs, the

15:05:13  8    States, Transocean and Halliburton on one side, and of course BP and

15:05:23  9    Anadarko on the other side.  Everybody agree with that?  No?

15:05:30 10           MR. BROCK:  I think in the source control the case is

15:05:34 11    versus BP.

15:05:34 12           THE COURT:  Just BP.  Okay.  Anadarko is not involved in

15:05:39 13    that.

15:05:41 14           MS. KIRBY:  Your Honor, if I may.  We did end up being

15:05:43 15    identified as a party strictly because the US was given leave to ask

15:05:48 16    quantification-related questions of source control witnesses, so our

15:05:52 17    presence is going to be tolerated so we could protect ourselves in

15:05:55 18    that regard.

15:05:56 19           THE COURT:  Okay.  All right.  Very well.

15:05:58 20           Regardless, to whatever extent you participate in source

15:06:06 21    control, your time will be part of the 15 hours for that side, okay.

15:06:15 22           When we move into the next segment, which will be

15:06:19 23    quantification, the following three weeks, my calculation is that

15:06:27 24    means each side will get 45 hours, total of 90 hours over 12 days.

15:06:38 25    Is that what you all understand?

15:06:41  1          MR. BROCK:  Yes, sir.

15:06:43  2          THE COURT:  And besides -- well, we have fewer parties in

15:06:46  3   quantification, it's essentially *United States v. BP and Anadarko*,

15:06:52  4   correct?

15:06:53  5          MR. BROCK:  Correct.

15:06:54  6          MR. FITCH:  That's correct.

15:06:57  7          THE COURT:  I know we have some objections to that, I'm

15:06:59  8   looking at Mr. Godwin now.  Mr. Godwin, do you want to speak to that

15:07:06  9   very briefly?

15:07:08  10         MR. GODWIN:  Yes, your Honor.

15:07:11  11         THE COURT:  And I tell you, I am a little confused because

15:07:14  12  I see objections from you, I see appeals from you, and I see

15:07:18  13  memoranda.  It looks like you've covered every procedural base

15:07:22  14  possible to object to your non-participation in quantification,

15:07:27  15  right?

15:07:28  16         MR. GODWIN:  Judge, we've tried to do what we can

15:07:31  17  certainly within the rules and in all respect to your Honor to

15:07:35  18  protect Halliburton's interest.  We did file objections to the Phase

15:07:43  19  Two as it relates to excluding Halliburton from the quantification

15:07:47  20  phase.

15:07:47  21         THE COURT:  You're not a defendant in that trial, right?

15:07:50  22         MR. GODWIN:  No, we're not, your Honor, but we do have --

15:07:55  23         THE COURT:  See, my sense is that that's a Clean Water Act

15:08:03  24  lawsuit by the *United States v. BP and Anadarko*, so I don't see how

15:08:10  25  Transocean or Halliburton have a role in that trial.

15:08:14   1          MR. GODWIN:  Well, our position, your Honor, relates to

15:08:16   2   the fact that while we're not a defendant, as you correctly say, BP

15:08:19   3   is attempting to recover from Halliburton under the premise of

15:08:22   4   equitable indemnification.  And because of that and the risk that

15:08:28   5   our client has, we feel that we should be allowed to participate

15:08:31   6   both in terms of presenting witnesses and in cross-examining

15:08:34   7   witnesses.  And if I might address the two points.

15:08:38   8          Judge, BP's quantification theory is that the flow

15:08:43   9   immediately following the blowout was lower because of --

15:08:46   10          THE COURT:  You are on the same side as BP it seems to me

15:08:49   11   when it comes to quantification, aren't you?  You want to get that

15:08:53   12   number as low as you can.

15:08:55   13          MR. GODWIN:  Well, we are and we aren't, your Honor.  We

15:08:57   14   are with regard to the number; but in how we arrive at it is where

15:09:00   15   we differ.

15:09:01   16          THE COURT:  What difference does it make how you arrive at

15:09:04   17   it, it's the number.  Your dispute or BP's dispute with you really

15:09:13   18   pertains to Phase One, it seems to me, that they want to put some or

15:09:18   19   more of the fault on you for the blowout which they could then use

15:09:26   20   to potentially, arguably have you indemnify them for some of the

15:09:32   21   Clean Water Act fines, that's where --

15:09:32   22          MR. GODWIN:  We understand that, your Honor.  I'm sorry,

15:09:32   23   Judge.

15:09:34   24          THE COURT:  No, all I'm saying, it seems to me that you're

15:09:39   25   only adverse to BP in terms of whether you are negligent, the extent

15:09:46  1   to which you were negligent in causing the blowout, right?

15:09:50  2        MR. GODWIN:  Yes, your Honor, but in Phase Two my

15:09:52  3   understanding is there will be a percentage allocated for that

15:09:56  4   responsibility, and we don't want BP to put it off on us.

15:10:01  5        THE COURT:  Yeah, but the allocation is not going to be

15:10:03  6   based on the quantification.  The allocation could be based -- is

15:10:07  7   going to be based on what happened in Phase One and potentially what

15:10:10  8   happens in segment, if I call it Segment One, in other words the

15:10:16  9   source control could factor into that.

15:10:19 10        MR. GODWIN:  Right.  Yes, your Honor.

15:10:20 11        THE COURT:  But I don't see how quantification could

15:10:23 12   factor into the allocation of fault.

15:10:28 13        MR. GODWIN:  Well, we and TO, your Honor, both have claims

15:10:33 14   regarding the post incident of fraud that we have brought against BP

15:10:38 15   and state that because of their fraudulent conduct in

15:10:42 16   underestimating and we believe misrepresenting the flow rate

15:10:45 17   immediately following the blowout, we believe that will -- they're

15:10:50 18   trying to lay off some of the blame that they're going to have, to

15:10:53 19   the extent they will have blame, they're trying to lay off some of

15:10:57 20   that on Halliburton.  As well, your Honor, we think they're going to

15:11:00 21   try to use in that quantification phase issues relating to cement.

15:11:04 22        THE COURT:  What side are you going to be on in the

15:11:07 23   quantification trial?  Will you be on the Government's side or BP's

15:11:10 24   side?

15:11:11 25        MR. GODWIN:  We're going to be a Halliburton's side,

15:11:13  1   Judge.

15:11:13  2          THE COURT:  No, Halliburton doesn't have a side, you're

15:11:15  3   not a party.  So what side are you going to be on?  Will you be on

15:11:19  4   the Government's side or BP's side?

15:11:21  5          MR. GODWIN:  Well, even the Government --

15:11:23  6          THE COURT:  In terms of how many barrels of oil escaped.

15:11:26  7          MR. GODWIN:  Obviously we want it to be as low as it can

15:11:28  8   be, and that's going to be more in line with BP's side.

15:11:31  9          THE COURT:  Exactly in line, right?

15:11:33 10          MR. GODWIN:  In terms of the number of barrels, but in how

15:11:35 11   you get there is where we differ.

15:11:38 12          THE COURT:  I think I read, how many barrels did -- was

15:11:43 13   your expert Mr. Stevick, is that his name?

15:11:46 14          MR. GODWIN:  Stevick, yes, sir.

15:11:48 15          THE COURT:  How many barrels did he estimate, what did he

15:11:50 16   come up with?  Was it 3.0 million?

15:11:53 17          MR. GODWIN:  A little over three million.

15:11:55 18          THE COURT:  I thought I saw 3.0 million somewhere.  What

15:11:59 19   is BP's number?  I saw somewhere two point something?

15:12:01 20          MR. BROCK:  3.26 from one expert and the second expert is

15:12:03 21   a little less than three.

15:12:05 22          MR. GODWIN:  The numbers, your Honor, in terms --

15:12:08 23          THE COURT:  What are you going to prove that they're not

15:12:09 24   going to prove?

15:12:11 25          MR. GODWIN:  If they lay off cement and don't try to use

15:12:14 1   the fact that the cement --

15:12:15 2        THE COURT:  We are not going to relitigate Phase One in

15:12:18 3   Phase Two.

15:12:19 4        MR. GODWIN:  If they don't talk about cement --

15:12:21 5        THE COURT:  Well, I can't -- talking about something is

15:12:24 6   different than relitigating to me.  It may be that somebody takes --

15:12:28 7   I don't know what their evidence is going to be, I haven't looked at

15:12:31 8   the expert reports, I haven't heard the expert testimony.  But I can

15:12:36 9   see that it's feasible that an expert in Phase Two could take some

15:12:39 10  of the evidence from Phase One and rely on that, I suppose, to make

15:12:42 11  calculations.  I don't know.  Is that what you're talking about?

15:12:45 12       MR. GODWIN:  Well, we think what they're talking about in

15:12:48 13  their expert reports, your Honor, and the fact we did file a motion

15:12:50 14  with Judge Shushan to strike all of the expert opinions as they

15:12:54 15  relate to cement and what might have allowed for the flow to have

15:12:58 16  been greater early on than what it was, and Judge Shushan denied

15:13:02 17  that and that motion is on appeal to your Honor.

15:13:04 18       THE COURT:  We are not going to introduce additional

15:13:06 19  evidence in Phase Two relating to cement to try to -- that would in

15:13:17 20  any way increase the liability or exposure of Halliburton.  I mean,

15:13:22 21  if that's what you want to hear, as I see it.  In other words, there

15:13:26 22  is nothing that I see that can come out in quantification that BP

15:13:30 23  can then use to say, well, that increase is the allocation of fault,

15:13:35 24  percentage that should be allocated, if any, to Halliburton.

15:13:39 25       MR. GODWIN:  What we want to do, and we understand where

15:13:42 1    your Honor is coming from and respect that, it's just what we don't

15:13:47 2    want them to do is to be able to talk about cement not setting up -

15:13:50 3    the Government says it didn't set up, BP said it did set up - we

15:13:54 4    don't want to have cement being talked about whether it did or did

15:13:57 5    not set up and relitigate that here without us having an opportunity

15:14:01 6    to be heard.  And if your Honor says that won't happen --

15:14:04 7         THE COURT:  Well, what I said was not going to happen is

15:14:06 8    what I said.  But I am not going to sit here and say they can't

15:14:11 9    mention cement if that's what you're asking me.  But I don't think

15:14:15 10   that gives you a role in Phase Two.

15:14:17 11        MR. GODWIN:  Well, it's not the mentioning of cement, your

15:14:20 12   Honor, that runs afoul of what we believe to be our rights.  It's --

15:14:24 13   and I respect what you're saying there -- our position is if they

15:14:27 14   try to show that in any way that BP is less liable for

15:14:33 15   quantification issues because of cement problems, whatever they may

15:14:37 16   or may not have been or they want to portray them as being, if they

15:14:40 17   try to use that as a way of exculpating themselves we would have a

15:14:45 18   problem with that.

15:14:46 19        THE COURT:  I don't see how that could happen because we

15:14:48 20   are not litigating again liability fault in the quantification, are

15:14:56 21   we?

15:14:57 22        MR. BROCK:  No, sir.

15:14:58 23        THE COURT:  We're just litigating how much oil escaped.

15:15:01 24        MR. BROCK:  That's correct.

15:15:01 25        THE COURT:  Whoever caused it.

15:15:03  1          MR. GODWIN:  Right.  Well, Judge, our thought would be

15:15:05  2     there, and to kind of give you where my bottom line is, if they're

15:15:09  3     not allowed to ask of an expert, particularly an expert, or a fact

15:15:16  4     witness or both questions that would try to show that they, their

15:15:20  5     liability should be less because of the cement job, if they're not

15:15:23  6     allowed to get into that, then we would have no problem with it.

15:15:27  7     But if they do it and it comes in inadvertently, I mean where you

15:15:31  8     don't know about it, if I would be allowed to make an objection at

15:15:34  9     that time and then take it up with the Court, then that would give

15:15:36 10     me what I'm after.

15:15:38 11          THE COURT:  Well, barring something unusual, unexpected

15:15:44 12     and that I don't anticipate to happen, I am not going to let you

15:15:48 13     make an objection in the trial to which you are not a party and are

15:15:51 14     not participating, so.  If you want to be here as an observer,

15:15:54 15     you're welcome to do that like any other member of the public.

15:15:58 16          MR. GODWIN:  Yes, your Honor.

15:16:00 17          THE COURT:  But that doesn't give you the right to jump up

15:16:02 18     and object.

15:16:03 19          MR. GODWIN:  We've all worked out seats in the alignment

15:16:07 20     and Halliburton is given three seats in the jury box.

15:16:09 21          THE COURT:  That's fine.  I thought you would want to be

15:16:11 22     seated back in Dallas or something.

15:16:13 23          MR. GODWIN:  I would be, your Honor, if you would go ahead

15:16:15 24     and grant that summary judgment then we'd leave today and you

15:16:17 25     wouldn't hear from me any longer.

15:16:19  1        But having said that, Judge, I do, would ask you to

15:16:24  2   consider this.  And you don't have to answer now, consider it.  If

15:16:27  3   they do bring up the cement in a defensive way and it's such that I

15:16:33  4   feel I need an objection, I am not going to be making objections or

15:16:36  5   doing anything you tell me not to do.  But if they do something

15:16:41  6   regarding the cement that I feel like needs to be raised, I would

15:16:42  7   like you to at least give me the consideration of allowing me to be

15:16:45  8   say, your Honor, can I be heard on that at a break or right then or

15:16:47  9   whatever you want.  I am not going to delay your trial whatsoever,

15:16:50 10   but we need to be able to bring that up if we think it's

15:16:53 11   appropriate.

15:16:53 12        And you will rest assured I will not go against my word.

15:16:57 13   I won't be up and down making objections in a trial where we are not

15:17:00 14   a defendant.

15:17:00 15        THE COURT:  Okay.  Thank you.

15:17:02 16        MR. GODWIN:  May we did do that, your Honor?

15:17:04 17        THE COURT:  I am going to rule in a minute.  Okay.  I want

15:17:06 18   to see if anybody, if Transocean wants to be heard.

15:17:11 19        MR. GODWIN:  Thank you, Judge.

15:17:12 20        THE COURT:  Thank you.

15:17:13 21        MR. MILLER:  Your Honor, Kerry Miller with Transocean.  We

15:17:16 22   are fine on resting with what our objection said.  If you want some

15:17:19 23   additional elaboration, I am happy to give it to you.  But if we can

15:17:23 24   rest on our paper.

15:17:23 25        THE COURT:  You're in the same posture as I see it as

15:17:26  1   Halliburton.

15:17:27  2           MR. MILLER:  Sort of, your Honor.  I mean, our issues are

15:17:28  3   slightly different.  I mean, No. 1, one of the issues we talked to

15:17:32  4   Judge Shushan about and put forth, I know we didn't file as many

15:17:36  5   papers as Halliburton did, but in our objection was similar to

15:17:40  6   Halliburton's cement argument which relates to a flow rate, which is

15:17:44  7   going to be an issue in quantification; and particularly flow rate

15:17:50  8   in the first two days, April 20th and 22nd, and how that impacted

15:17:55  9   the functioning of the BOP which was the subject of a lot of Phase

15:17:58 10   One testimony; how much flow came out, what the rate was in those

15:18:02 11   couple of days and how that impacted the closing of the various rams

15:18:09 12   and the functioning of the BOP, that was our main concern with

15:18:12 13   respect to some of the information that's in the Phase Two expert

15:18:16 14   reports.

15:18:16 15           We don't want to relitigate, I mean that's our point, your

15:18:19 16   Honor --

15:18:20 17           THE COURT:  We are not going to relitigate that.  And all

15:18:22 18   I can tell you is I can assure you that nothing that occurs or no

15:18:26 19   evidence that occurs or comes out in the quantification segment will

15:18:32 20   in any way affect or impact any allocation of fault that I

15:18:38 21   ultimately make relating to Phase One and/or -- well, Phase One

15:18:47 22   along with source control, as that may play into that.

15:18:51 23           So does that help you out?

15:18:52 24           MR. MILLER:  I think it does.  Thank you, Judge, because

15:18:55 25   you will recall, we did put on evidence during Phase One of what the

15:18:59 1    flow rate was immediately after the explosion and how that impacted

15:19:02 2    the workings of the BOP.

15:19:03 3            THE COURT:  I remember all of that and a question of

15:19:05 4    whether that caused the rise of the buckle and all of that.

15:19:07 5            MR. MILLER:  That's exactly right.  That's what we were

15:19:09 6    concerned about.  It's hard to draw a bright line between Phase One

15:19:14 7    and Phase Two on that particular issue.

15:19:15 8            THE COURT:  It is.  But all I can tell you is as far as

15:19:18 9    I'm concerned it's not going to be relitigated.  Again, I can't say

15:19:23 10   that some things can't be mentioned, but as far as I'm concerned

15:19:29 11   that part of the trial is closed.

15:19:31 12           MR. MILLER:  Thank you.  That was one issue, your Honor.

15:19:34 13   The other issue I think has been resolved which was the issue of --

15:19:37 14           THE COURT:  Whether you were an operator or not?

15:19:39 15           MR. MILLER:  No, surface discharge from the *Deepwater*

15:19:42 16   *Horizon* and the amount of oil that burned up was an issue that came

15:19:45 17   up.  It was not something that Transocean settled with the DOJ, but

15:19:48 18   we've reached an agreement with the DOJ to submit that issue after

15:19:52 19   Phase Two, possibly as cross motions for summary judgment.  So that

15:19:57 20   issue I think has been worked out.

15:19:59 21           And then lastly, your Honor, the other basis for our

15:20:02 22   objection, quickly, is Transocean did not settle its NDRA liability

15:20:08 23   with the Department of Justice.  So, as your Honor mentioned, Phase

15:20:13 24   Two involves two complaints:  The limitation case and the Department

15:20:18 25   of Justice's Clean Water Act complaint against BP.  In that

15:20:23 1   complaint the Department also sues Transocean.

15:20:26 2       Certainly there's been a settlement of the Clean Water

15:20:29 3   Act liabilities between Transocean and the Government.  There wasn't

15:20:32 4   a settlement of the NRDA liabilities, and so to the extent that

15:20:37 5   Phase Two issues determine any of those issues, we object to being

15:20:41 6   bound by anything in Phase Two because we are not a party to it.

15:20:46 7       THE COURT:  All right.

15:20:46 8       MR. MILLER:  Thank you, Judge.

15:20:48 9       THE COURT:  All right.  Thank you.  I am going to, to the

15:20:53 10  extent there are appeals from Judge Shushan's rulings regarding

15:21:01 11  non-participation by Transocean and Halliburton in the Phase Two

15:21:05 12  quantification segment, I am going to overrule the objections, I

15:21:10 13  deny those appeals, and uphold her rulings in that regard.

15:21:14 14      Let's see.  Chess clock, use of a time clock.  I think

15:21:31 15  Mr. Langan wanted to talk about that, or Mr. Brock, one of them.

15:21:35 16      MR. BROCK:  Your Honor, I think I can do this briefly.

15:21:38 17  Mike Brock for BP.

15:21:40 18      THE COURT:  Ben suggested we use an hour glass.

15:21:46 19      MR. BROCK:  This device here, your Honor, has a battery

15:21:48 20  life of 600 hours, so hopefully we won't need that much to finish

15:21:55 21  the case.  I think some of the lawyers here have tried cases using

15:22:00 22  chess clocks, I've tried a couple of cases that way.  I don't know

15:22:03 23  if your Honor has experience with that or not.

15:22:05 24      THE COURT:  I have not done one.  I've set days, you know,

15:22:10 25  sort of like we did in the first trial, but not with a time clock.

15:22:14  1       I did have a conversation with Judge Duval whose tried,

15:22:21  2  he told me -- tell me what you have and I will tell you about my

15:22:25  3  conversation with him and we can discuss it.

15:22:27  4       MR. BROCK:  So there are a couple of ways that courts have

15:22:31  5  dealt with the time clocks, one is to actually have a clock.

15:22:34  6       THE COURT:  Is that like a chess clock?

15:22:36  7       MR. BROCK:  It is a chess clock.  I have this one set at

15:22:40  8  15 hours per side for the source control segment.  And when you push

15:22:52  9  the button on this side, then the first presenter's time would start

15:22:57 10  here and it's a countdown from 15 hours.  This clock has the ability

15:23:02 11  to pause, it has the ability to add time back, you know, so it's

15:23:07 12  fairly flexible.

15:23:10 13       The two approaches I think that I have seen courts take,

15:23:14 14  one is to be sort of very strict in the way that the time clock is

15:23:18 15  managed, such that either the deputy clerk or your law clerk would

15:23:25 16  be responsible for managing it, and you would say if someone was

15:23:30 17  using time for argument on a motion or something like that and it

15:23:34 18  was excessive, charge that to this party or that one.

15:23:38 19       I think for this trial, I mean, we have sort of looked at

15:23:42 20  the timing of what is to occur.  I think we're going to be able to

15:23:47 21  manage the quantification piece of the case pretty efficiently

15:23:50 22  within the time allotted, you know, at least I feel that way now.

15:23:56 23  We know who the witnesses are, we are, you know, crafting

15:23:59 24  examinations and I'm sure the Government is, too, to sort of meet

15:24:04 25  that standard.

15:24:04  1          On the other hand the source control case is going to be

15:24:07  2   very tight in terms of the time allocated to the two sides.  And for

15:24:15  3   that reason, I mean, I guess where we come out is something that is

15:24:19  4   a little looser than, you know, it's 15 hours and not a minute more

15:24:25  5   is not a bad approach for that part of the case.

15:24:33  6          So I think one alternative is to just very closely manage

15:24:37  7   it, be very strict with the allocations, punch the clock as you go

15:24:42  8   back and forth.

15:24:43  9          My colleague Joe Eisert is here, he would be happy to

15:24:48 10   work with the deputy clerk or the law clerk to sort of understand

15:24:51 11   the intricacies of this.  It's wise when you use one of these

15:24:57 12   basically at the lunch break and then again at the end of the day to

15:25:01 13   make an announcement on the record as to how much time each party

15:25:04 14   has used so that there's agreement about that and not disagreement

15:25:08 15   later.

15:25:09 16          I think the other thing for the Court to think about is,

15:25:12 17   do you want to sort of take up challenges about time during the

15:25:17 18   course of the examination or rather take up challenges about time at

15:25:24 19   the lunch break and then again at the end of the day?

15:25:29 20          You know, an example along these lines, in a non-jury

15:25:34 21   case a witness on cross-examination who just goes on and on and on

15:25:38 22   for a few pages with an answer that we think is really not

15:25:42 23   responsive is, you know, to an examiner it can be a bit irritating

15:25:47 24   but it's not the end of the world, you know what to do with that

15:25:50 25   kind of answer.  And if you think it's a good one, you do; if you

15:25:55 1   don't, you don't.

15:25:56 2          But especially in the source control segment where the

15:25:58 3   time is really going to matter, me or the Aligned Parties might want

15:26:04 4   to say to your Honor, you know, that witness was just not being

15:26:08 5   responsive, he was walking the dog or just going on and on with his

15:26:12 6   answer and he was using up time that we need to present our case.

15:26:16 7   It would be a way to come back to you at lunch or at the end of the

15:26:19 8   day and say we would like to have eight or ten or 15 minutes back,

15:26:23 9   whatever the case may be, in terms of that not being charged to our

15:26:28 10  time so there would be a way for you to just basically referee those

15:26:34 11  as we go.

15:26:34 12         I think by and large, you know, a technique where you

15:26:38 13  basically let the clock run during the examination, we haven't had

15:26:43 14  like long and lengthy objections to witnesses lodged during the

15:26:48 15  case, I think that's been pretty efficiently handled.  There are

15:26:51 16  places where we need three or four or five minutes to make a *Daubert*

15:26:56 17  challenge or a motion in limine challenge before a witness gets

15:26:59 18  going, especially an expert, so that might be charged to the party

15:27:01 19  making that argument.

15:27:02 20         But I think at the end of the day we're probably going to

15:27:06 21  be okay and quantification is going to look okay when we get to the

15:27:09 22  end of it, but the Government may have a different view, but I think

15:27:12 23  we'll be okay on that.  But the source control is going to be

15:27:17 24  something that's probably going to need to be managed a little more

15:27:21 25  efficiently and tightly.  To the extent that that could be in some

15:27:25  1    ways a little looser, we wouldn't object to that.

15:27:31  2                THE COURT:  All right.

15:27:32  3                MR. BROCK:  My time is up so I'll quit.

15:27:35  4                THE COURT:  You used up, yeah, most of it.

15:27:38  5                MR. BARR:  Your Honor, Brian Barr for the plaintiffs.  I

15:27:40  6    guess what I would say is I don't -- on the source control side, I

15:27:45  7    don't really disagree with what Mike is saying on how the time clock

15:27:48  8    would work.  When I am examining a witness or when BP is examining a

15:27:52  9    witness, the clock will be running against the respective party.  To

15:27:56 10    the extent somebody offers an objection, I would suggest that the

15:28:00 11    clock just keep running; at the end of the day we kind of do it like

15:28:03 12    a soccer match, we would get together and say, look, four or five

15:28:07 13    minutes here and there should be reallocated based upon the lengthy

15:28:11 14    objections.  If we needed a referee, we could come to you at the end

15:28:14 15    of the day or in the morning before we started on the readjustment

15:28:18 16    of that clock.

15:28:20 17                I mean, I think it should be fairly manageable.  I would

15:28:24 18    expect, you know, if we're cross-examining a witness and they're not

15:28:28 19    answering the questions and they're rambling, I mean, the remedy I

15:28:31 20    would suggest is we ask for an instruction from your Honor for the

15:28:34 21    witness to answer the question, rather than trying to readjust the

15:28:38 22    clock.  That to me sounds -- it gets unmanageable at a point.

15:28:42 23                THE COURT:  I think we'll be able to work those kinds of

15:28:46 24    issues out.  Let me tell you, I had a conversation earlier today

15:28:49 25    with Judge Duval, as I said, and he's done, he told me five trials

15:28:53   1   that he used a clock of some sort.  And he's gravitated, I think he

15:29:01   2   said the last two he did, one of which was the Katrina-related levee

15:29:07   3   breach trial which I think went on for a month or two, and he said

15:29:12   4   that -- and I didn't get a chance to talk to Karen, our court

15:29:15   5   reporter, before.  Did you work that trial, Karen?

15:29:18   6            THE COURT REPORTER:  Yes.

15:29:20   7            THE COURT:  Didn't he have you all somehow with your

15:29:24   8   software, you all tracked the time for him?

15:29:24   9            THE COURT REPORTER:  Yes.

15:29:25  10            THE COURT:  So the realtime court reporters have the

15:29:28  11   facility to do this, and I guess we just need to decide whether it

15:29:31  12   makes sense to just let them do it.  Judge Duval felt it worked

15:29:36  13   fine, I don't know what the court reporters' view was.  Karen, do

15:29:43  14   you want to tell us?  Didn't put any great amount of extra work on

15:29:46  15   you all?

15:29:48  16            THE COURT REPORTER:  No.

15:29:49  17            THE COURT:  So I am kind of inclined to use the same

15:29:55  18   system he used.  And apparently, he got a report from you all,

15:29:57  19   Karen, at the end of each day or whatever, as to who had used how

15:29:58  20   many hours, and then he would announce that.

15:30:01  21            And, like he said, during the trial there were times you

15:30:04  22   have to adjust, if somebody is making a very, even though like

15:30:09  23   Lawyer A is examining a witness but Lawyer B makes a long-winded

15:30:14  24   objection that gets into a lengthy argument or something, you know,

15:30:18  25   I might say charge that time against him instead of the lawyer doing

15:30:22  1   the examination or something like that.  Seems to me to be a good

15:30:25  2   way to do it.  I hadn't thought about the filibustering witness

15:30:30  3   though, you know.

15:30:31  4        MR. BROCK:  We had a few in Phase One.  But it's different

15:30:34  5   in a non-jury case than it is in a jury case, so we recognize that.

15:30:40  6   But when you're under the stress of time then, you know, it becomes

15:30:43  7   more important I think to manage it a little.

15:30:46  8        THE COURT:  Maybe the way we handle that is, you know, I

15:30:51  9   wouldn't say we do it right at that moment because it might disrupt

15:30:55 10   things, but either at the end of the witness's testimony or at the

15:30:59 11   next break if you feel that that's unfairly taking time from your

15:31:06 12   side, you bring that up and I'll either say I agree with you or I

15:31:11 13   don't.  If I do, we'll add a few minutes back or something.

15:31:15 14        MR. BROCK:  That sounds fine to us.

15:31:18 15        MR. BRIAN:  That's fine with the plaintiffs.

15:31:20 16        MR. BROCK:  I'm still going to have this clock though for

15:31:23 17   Mr. Barr's opening, and I will let him know if he goes over his

15:31:28 18   time.

15:31:28 19        MR. O'ROURKE:  Your Honor, this is Steve O'Rourke for the

15:31:28 20   United States.

15:31:28 21        If they're going to have the clock, can we have an order

15:31:31 22   that it gets shipped off to Michoud and have NASA calibrate it?

15:31:35 23        THE COURT:  Keep control of it and calibrate it.  You

15:31:37 24   don't trust BP's clock?

15:31:40 25        Okay.  Unless somebody else has a better idea, like I

15:31:45  1    said, based on my conversation with Judge Duval earlier today and as

15:31:51  2    confirmed by our court reporter here today, I think we will just let

15:31:55  3    the court reporters keep track of it.  And hopefully that will work

15:31:58  4    out.

15:32:01  5              Anybody have anything else to say about allocation of

15:32:06  6    time or keeping track of time or days, anything like that?

15:32:12  7              In terms of scheduling, I do know, we will start with

15:32:17  8    opening statements, which I think each side's allocated and hour for

15:32:25  9    the source control; is that correct?

15:32:26 10              MR. BARR:  Yes, your Honor.

15:32:27 11              THE COURT:  And 90 minutes for the second segment, right,

15:32:30 12    a week later?

15:32:30 13              MR. BROCK:  That's right.

15:32:32 14              THE COURT:  The first day September 30th, I don't think

15:32:34 15    this is going to be a problem for us.  I assume you all have your

15:32:39 16    hotel rooms and all of that for that night, that is a Monday night

15:32:43 17    football game here in New Orleans, the Saints will be playing I

15:32:47 18    think Miami or somebody.  So by the time you leave the courthouse,

15:32:51 19    downtown will be kind of crazy.  But as long as you can find your

15:32:55 20    way back to your hotel I guess you'll be all right.

15:32:57 21              Maybe we'll try to finish a few minutes early that evening

15:33:01 22    if we can.  But the problem with keeping track of time, if we finish

15:33:04 23    early one day we have to make it up somewhere else.  So we'll try to

15:33:09 24    keep going.  I just mention that so you'll be aware of that.

15:33:14 25              Also, two weeks later, October 14 is I think a designated

federal holiday, that's Columbus Day.  I am inclined to work that

day for two reasons:  One, is that if we don't work that day we

would have to work Friday to get four days in that week.

          Also, I have a little bit of an issue on that Wednesday,

October 16, we have a court en banc meeting at noon time.

Ordinarily our meetings don't last more than and hour, but this one

is to interview and select a new magistrate judge around here.  So

it's likely -- I know it's going to last more than and hour, I'm

expecting -- well, I don't know what I'm expecting, but probably a

couple of hours or so.  So we're going to lose a little bit of time

midday on the 16th, so I think we'll plan on working on Columbus day

the 14th.

          And if we stay on schedule, according to my calculation,

we should finish by the 24th of October.  If we end up where we've

had to add time for whatever reason, we run into some kind of

logistical problem, we can always roll over to the next day and

finish by that Friday, but hopefully we will finish it by that

Thursday.

          All right.  Anybody have any questions or comments about

any of those, any of those dates or anything?

          Marshalling of Exhibits.  I think you all have discussed

this with Judge Shushan.  My recollection is, she's indicated to me

that the suggestion is that there will be no real need to do it

weekly, just do it at the end of the entire trial.  Anybody have any

comment on that?

15:35:13  1          MR. BARR:  Your Honor, Brian Barr for the plaintiffs.  We

15:35:16  2    would suggest that we do have a marshaling conference the week after

15:35:19  3    the source control trial.  We think it would be helpful, one, to the

15:35:24  4    United States to know what's in, what's been admitted so that

15:35:28  5    nothing duplicative is done.

15:35:30  6          We also think given how exhibits are published for the

15:35:33  7    public and everybody that it makes sense to have that completed on

15:35:36  8    that first week so that, you know, anybody that wants to review that

15:35:40  9    evidence or look at that on the various web sites if that's done

15:35:44 10    doesn't have to wait until November to see that.

15:35:47 11          So our suggestion would be to have a marshaling conference

15:35:50 12    after that first week.

15:35:52 13          THE COURT:  Mr. Langan.

15:35:52 14          MR. LANGAN:  Yes, your Honor, Andy Langan for BP.  We

15:35:57 15    defer to Judge Shushan on this.  I think this was discussed at some

15:36:01 16    length with her, and I think she was pretty clear that she wanted to

15:36:04 17    do it one time at the end.  That makes sense to us.  If she changes

15:36:08 18    her mind, that's fine too.  But sort of where we are right now is

15:36:13 19    one marshaling conference.

15:36:14 20          As to the openness of the exhibits and the trial, the way

15:36:17 21    we see it, I mean obviously the trial is going to be public,

15:36:21 22    transcripts are going to be published daily.  Exhibits that are

15:36:24 23    admitted into evidence using the process that the Court used, with

15:36:26 24    after the witness is done providing lists, those exhibits are going

15:36:30 25    to be admitted and, therefore, public after that.  There's going to

15:36:34  1    be plenty of transparency as it is.

15:36:37  2              Again, we defer to Judge Shushan, but it seems to us like

15:36:40  3    what she has in mind will work perfectly.

15:36:43  4              THE COURT:  I will talk to her again about that.  I think

15:36:46  5    this was her suggestion, I think she was just trying to take a

15:36:49  6    little bit of burden off of herself, which is understandable.

15:36:52  7    Although, my recollection is that I know that first marshaling

15:36:56  8    conference was a little rough last time, but it got better.

15:37:00  9              MR. LANGAN:  There was a rhythm, the parties got into a

15:37:03 10    rhythm and it worked really well.

15:37:06 11              THE COURT:  Right.  So hopefully we won't have any real

15:37:09 12    difficult issues this time.

15:37:13 13              MR. BRIAN:  Brad Brian for Transocean.  Is it your

15:37:14 14    preference again, to, if possible, to focus on the callouts of the

15:37:17 15    exhibits?  I know last time you had a strong preference if we had a

15:37:21 16    particular paragraph from a page to introduce the exhibit as TREX

15:37:25 17    2.2 and then if a party needed to introduce the entire exhibit to do

15:37:30 18    so.  But I take it you would like us to use that same procedure

15:37:33 19    again, with the pagination and the callouts?

15:37:36 20              THE COURT:  I think so, unless there's some good reason we

15:37:40 21    shouldn't; but I think, at least from my perspective, that's the

15:37:42 22    best way to do it.

15:37:45 23              MR. BRIAN:  That's fine with us, your Honor.

15:37:46 24              THE COURT:  Okay.  In terms of exhibit and witness lists,

15:37:51 25    I know you all have a schedule in place that Judge Shushan helped

15:37:55 1    put together.  In terms of witnesses, looks like the Aligned Parties

15:38:03 2    have identified five live witnesses, I'm talking only about source

15:38:10 3    control now, the first week, five live witnesses; is that correct?

15:38:16 4             MR. BARR:  That's correct.

15:38:17 5             THE COURT:  I suppose -- are all of those experts?

15:38:19 6             MR. BARR:  I believe there's four experts and one fact

15:38:23 7    witness.

15:38:23 8             THE COURT:  Who is the fact witness?

15:38:26 9             MR. BARR:  Mr. Turlak from Transocean.

15:38:32 10            THE COURT:  Then it looks like BP has identified, is it

15:38:36 11   eight, looks like eight witnesses?

15:38:38 12            MS. KARIS:  That's correct, your Honor.

15:38:39 13            THE COURT:  How many fact, how many expert?

15:38:42 14            MS. KARIS:  Four fact and four experts.

15:38:46 15            THE COURT:  Just out of curiosity, who are the four fact

15:38:49 16   witnesses?

15:38:50 17            MS. KARIS:  That would be Mr. Mazella, Mr. Dupree,

15:38:53 18   Mr. Smith, and Mr. Wellings.

15:39:00 19            MR. BARR:  And, your Honor, to be clear, the plaintiffs

15:39:02 20   also had Mr. Dupree, we all have him on our will call list and we

15:39:06 21   consider him one of ours; but just like Phase One, he is going to be

15:39:11 22   called during BP's case and we will cross-examine him.

15:39:13 23            THE COURT:  Mr. Dupree?

15:39:14 24            MR. BARR:  Yes, sir.

15:39:14 25            THE COURT:  I don't see him on your list.

15:39:15  1          MR. BARR:  Well, he was on our will call list and because

15:39:18  2  he is on their will call list as well, he ended up handling it that

15:39:21  3  way.  But they are going to call him and we will just cross-examine

15:39:23  4  him and handle it that way.

15:39:24  5          MS. KARIS:  That's correct, your Honor.  Mr. Dupree was

15:39:25  6  originally on the Aligned Parties' list.  Since we agreed that we

15:39:29  7  would call him in our case, the Aligned Parties said as long as we

15:39:33  8  call him then they would cross-examine him rather than call him in

15:39:37  9  their case.

15:39:38  10         THE COURT:  Okay.  Great.

15:39:41  11         And then it looks like the Government has, looks like

15:39:47  12  you've already identified your initial list of experts for

15:39:50  13  quantification, Mr. O'Rourke?

15:39:54  14         MR. O'ROURKE:  Yes, sir, your Honor.  Steve O'Rourke for

15:39:56  15  the United States.  In our case in chief we will have five experts,

15:40:01  16  two fact witnesses, and we have one may call fact witness that's

15:40:06  17  Marcia McNutt.

15:40:08  18         Those people in our case in chief who are experts, if they

15:40:12  19  had also done a rebuttal report, they will do their rebuttal at the

15:40:16  20  same time.

15:40:16  21         THE COURT:  Right.

15:40:17  22         MR. O'ROURKE:  In addition we have three rebuttal experts

15:40:19  23  that are not in our case in chief, so those three rebutting experts

15:40:24  24  will be called after BP and Anadarko rest their case, presumably at

15:40:27  25  the end of the third week.

15:40:30   1         THE COURT:  Okay.  Anybody else?  Any comments, any

15:40:35   2  questions about witnesses?

15:40:41   3          Exhibits, I don't have an exhibit list.  Where do you all

15:40:45   4  stand in terms of exchanging of exhibits and all?  Anybody want to

15:40:49   5  comment?

15:40:50   6         MR. BARR:  We did it in three installments, I believe the

15:40:53   7  third installment has been exchanged at this point, and the final

15:40:56   8  exhibit list is due Friday that it's due -- it's coming up.

15:41:01   9         THE COURT:  Tell me again.  I know you all have

15:41:04 10  categorized different types of exhibits as I understand it.

15:41:08 11         MR. BARR:  Well, we have the different exhibits from the

15:41:10 12  different parties.  I don't know that they're categorized.

15:41:14 13         THE COURT:  Well, I thought you had, for example, exhibits

15:41:16 14  that are going to be used with live witnesses at trial, you have

15:41:21 15  probably another category that may come in with depositions, and

15:41:26 16  then you have, I think there was a third category and I can't recall

15:41:32 17  what it is now.

15:41:32 18         MS. HIMMELHOCH:  Your Honor, Sarah Himmelhoch for the

15:41:35 19  United States.  We actually have four categories of exhibits.  The

15:41:37 20  first category are exhibits that were admitted in Phase One.  The

15:41:40 21  second category --

15:41:41 22         THE COURT:  Okay.  We don't have to readmit those

15:41:43 23  obviously.

15:41:43 24         MS. HIMMELHOCH:  Right.  The second category are documents

15:41:46 25  that will be used with live witnesses -- no, I'm sorry, Category 2

15:41:50  1   are documents that are not objected to, that will not be used with a

15:41:52  2   live witness or in a deposition bundle but will come into evidence.

15:41:56  3   Each party got 25, each side got 25 of those for source control.

15:42:01  4            THE COURT:  Is that the so-called orphan exhibits?

15:42:04  5            MS. HIMMELHOCH:  No.  The orphan is Category 4.

15:42:07  6            THE COURT:  That's a stepchild, I guess.

15:42:09  7            MS. HIMMELHOCH:  Yes.  Category 3 is live witnesses and

15:42:12  8   deposition bundle exhibits.  And then Category 4 are what we call

15:42:16  9   the orphans, and each party has ten orphans at the end of the case

15:42:19 10   which they can seek --

15:42:21 11            THE COURT:  Explain to me how do you define an orphan

15:42:24 12   exhibit?

15:42:24 13            MS. HIMMELHOCH:  An orphan exhibit is one that was not

15:42:25 14   used with a live witness, it's not in a deposition bundle but the

15:42:29 15   party seeks to admit anyway.  Unlike Category 2, though, it can be

15:42:32 16   an objected to exhibit, it can either be objected to or not objected

15:42:36 17   to.

15:42:37 18            It's a sort of safety catch at the end in case we thought

15:42:40 19   we were going to get something in, we hit up against our time limit,

15:42:44 20   or the witness claimed not to recognize it and we have foundation

15:42:47 21   elsewhere for it, that kind of safety catch.

15:42:49 22            So each side gets ten of those.  So Aligned Parties get

15:42:55 23   ten, BP gets 20 because --

15:42:57 24            THE COURT:  When do you have to disclose those or produce

15:43:00 25   those or whatever?

1    MS. HIMMELHOCH:  Final marshaling conference, your Honor.

2    THE COURT:  For both segments?  You're talking only about

3 quantification now?

4    MS. HIMMELHOCH:  The order right now says final marshaling

5 conference for both segments.

6    THE COURT:  So if we have a marshaling conference like

7 Mr. Barr suggested after Week 1, you would have to do those then at

8 that time, right?

9    MS. HIMMELHOCH:  I would defer to the Plaintiff Steering

10 Committee on that.

11    MR. BARR:  I don't think we spent a lot of time thinking

12 about that given it was the final marshaling conference, but we can

13 do it either way.

14    THE COURT:  Ms. Karis.

15    MS. KARIS:  Your Honor, this is part of the reason why we

16 think one marshaling conference at the very end of the case makes

17 the most sense, because it will be very difficult to determine what,

18 in fact, is an orphan exhibit.  And the orphan exhibits are

19 analogous to, as your Honor recalls, at the end of Phase One you

20 gave each side the opportunity to add ten exhibits that you then

21 considered objections and issued an order as to which the Court was

22 accepting.  So if we do one conference in November, as currently

23 scheduled, that allows everybody to know what has come into the

24 record and what then may find its way onto the orphan exhibit list.

25    THE COURT:  I will talk to Judge Shushan about that again

15:44:12 1   and see what she had in mind, but that might make sense.  I think

15:44:16 2   Mr. Barr's concern is probably addressed by Mr. Langan's comments

15:44:22 3   that even though you didn't have the final marshaling conference, if

15:44:25 4   it's clear that I admitted something during the trial, I think that

15:44:33 5   becomes a public, I mean, it's a public record or exhibit, so if you

15:44:39 6   want to post it somewhere you can post it.

15:44:41 7        MR. BARR:  Your Honor, I think the only issue with that

15:44:43 8   was I think in Phase One we were not allowed to put them up onto the

15:44:47 9   web site until the marshaling conference, so we were not allowed to

15:44:50 10  do it during the trial.  And so if we want to amend that procedure a

15:44:55 11  little bit.  And then you also --

15:44:57 12       THE COURT:  I think this is what we ought to do.  As long

15:44:59 13  as it's clear that I have ruled during the -- because as I recall,

15:45:05 14  what we've done is witness by witness we admitted exhibits.  Now,

15:45:12 15  there were some that were objected to and I reserved ruling on

15:45:16 16  perhaps; but if I've clearly admitted the exhibit and said that's

15:45:19 17  admissible, then as far as I'm concerned I don't see why you

15:45:22 18  shouldn't be able to publish it.

15:45:24 19       MR. LANGAN:  We absolutely agree with that, your Honor.

15:45:26 20       THE COURT:  Okay.  Good.

15:45:27 21       MS. HIMMELHOCH:  There's a nuance to that that is slightly

15:45:31 22  difficult, which is the United States has redacted the personally

15:45:33 23  identifying information on the exhibits that are on anybody's

15:45:36 24  exhibit list that came from the United States.  The other parties

15:45:38 25  were in negotiations as to when those redactions of personally

15:45:42  1    identifying information would occur.  And the idea had been a

15:45:45  2    proposal to do that redaction within three days of the use at trial

15:45:49  3    so that it could then be posted up to the web site.

15:45:53  4         So we will need to work out the logistics of those

15:45:56  5    redactions, if that's -- I am perfectly happy and, in fact, I favor

15:46:01  6    your proposal, which is once admitted, it's a public document.  But

15:46:05  7    we will have to go back to Judge Shushan and work through the issue

15:46:08  8    of then when do the redactions of personally identifying information

15:46:12  9    occur.

15:46:12  10        MR. BARR:  And, your Honor, the only thing I would add is

15:46:14  11   the companion issue of the deposition bundles, because at this point

15:46:19  12   we have to decide when those are going to be moved into evidence.

15:46:22  13   It would be our position that we would move those in on the first

15:46:25  14   day.

15:46:25  15        THE COURT:  How did we handle that last time?

15:46:28  16        MR. BARR:  I actually don't recall.

15:46:30  17        MR. LANGAN:  At the first marshaling conference during the

15:46:34  18   parties' case, I think.

15:46:36  19        MR. O'ROURKE:  This is Steve O'Rourke.  During the trial

15:46:39  20   the Plaintiffs Steering Committee, for example, moved in the bundles

15:46:43  21   by handing in a list and then they were marshalled.

15:46:47  22        THE COURT:  I think they did that at the first week's

15:46:49  23   marshaling conference because we were doing it weekly.  So if we

15:46:52  24   only do one marshaling conference, we may have to change that

15:46:55  25   somewhat.  Why don't you all think about that.  I'll talk to Judge

15:46:59 1  Shushan.  Are you all meeting with her this Friday?

15:47:02 2            MR. LANGAN:  By phone, your Honor.

15:47:03 3            THE COURT:  Make sure somebody puts that on the -- I'll

15:47:06 4  try to mention it to her, talk to her before then, but.

15:47:09 5            MS. HIMMELHOCH:  I will raise it, your Honor.

15:47:11 6            THE COURT:  Sarah, I will give you that duty to do that.

15:47:14 7            MS. HIMMELHOCH:  Thank you, sir.

15:47:15 8            THE COURT:  Anything else about exhibits, marshaling, how

15:47:20 9  we're going to identify exhibits?

15:47:23 10           One of the things I suggested, and I think Judge Shushan

15:47:26 11 said that this is being done for this trial, I didn't realize this

15:47:31 12 until we were deep into the first trial.  For me, I think it's

15:47:35 13 helpful for the Court if when you all submit the exhibit list that

15:47:44 14 will be submitted to the Court that there be some brief

15:47:47 15 identification of the exhibit in addition to just saying what the

15:47:51 16 TREX number is without identifying some brief identification of what

15:47:56 17 the exhibit is about.

15:47:57 18           MR. BARR:  I believe that's been cured, in our exhibit

15:48:00 19 list there is a description.

15:48:01 20           THE COURT:  That was my understanding.  Okay.  Great.

15:48:03 21 That's good.

15:48:07 22           Is everybody clear on -- I know we had a lot of debate

15:48:11 23 about this last time -- what is a demonstrative as opposed to not a

15:48:14 24 demonstrative?

15:48:15 25           MR. BROCK:  We now have a demonstrative coach, he has a

15:48:19  1   hat and a whistle and he is refereeing our decisions.

15:48:24  2          THE COURT:  Okay.  Well, that's good.

15:48:26  3          Advance Notice of Witnesses, I think that's already in

15:48:31  4   the timeline, basically the week before as I recall.  Anybody have

15:48:38  5   any questions about that?

15:48:40  6          MR. BROCK:  I have just one, I guess one point that I

15:48:42  7   would make on this, just in terms of timing.

15:48:44  8          THE COURT:  Okay.

15:48:45  9          MR. BROCK:  In the present order, on September 30th the US

15:48:51 10   and BP are to disclose the order of witnesses they intend to call

15:48:56 11   during the week of October the 7th.  I'm pretty confident, not a

15:49:03 12   hundred percent, but pretty confident we will not be calling

15:49:05 13   witnesses the week of October the 7th, that's the first week of the

15:49:08 14   Government's quantification case.  So I was going to suggest that we

15:49:13 15   be allowed to furnish that list on October the 7th, that Monday, the

15:49:21 16   day that the United States starts its case.

15:49:24 17          MR. O'ROURKE:  We have no problem with that, Judge.

15:49:26 18          THE COURT:  Okay.  So we will modify that 9/30, you're

15:49:35 19   looking at timeline that Judge Shushan had issued which I think is

15:49:38 20   Rec. Doc. 11180, Exhibit 1 attached to her order.  I am looking at

15:49:43 21   that now.  9/30/13 deadline for US and BP to disclose order of

15:49:50 22   witnesses they intend to call during week of October 7.  We are

15:49:53 23   going to change that to say that?

15:49:56 24          MR. BROCK:  BP will disclose its order for the week of

15:50:00 25   October the 14th on October the 7th.

15:50:04 1          THE COURT:  Okay.  Very well.

15:50:09 2          Now, the most important thing that we need to talk about

15:50:12 3  today.  Seating chart.  Mr. Langan, you have it all settled?

15:50:17 4          MR. LANGAN:  I think pretty well, your Honor, with

15:50:19 5  virtually no objection.

15:50:20 6          THE COURT:  Wow.

15:50:22 7          MR. LANGAN:  Halliburton did object but I think we got

15:50:25 8  past that.

15:50:27 9          One wrinkle if I may suggest, it was suggested to me by my

15:50:30 10  team.  Since it's a smaller number of parties here this time, could

15:50:34 11  it be possible to have dedicated tech seats like for BP a couple of

15:50:40 12  chairs and the US, that way people don't have to jump up and down.

15:50:42 13          THE COURT:  I didn't realize, I guess, until we got into

15:50:44 14  it that we didn't have that last time; but then I realized that, I

15:50:47 15  think I made the comment at some point during the trial I felt like

15:50:50 16  I was watching a Monday Night Football game, because every time a

15:50:54 17  witness changed, some lawyers moved in and out and tech people moved

15:50:58 18  in and out.

15:51:00 19          MR. LANGAN:  Free substitution.

15:51:01 20          THE COURT:  Yes, free substitution, right.  If you all can

15:51:03 21  work that out among yourselves, I have no problem with that.  Do we

15:51:06 22  have enough seats to accomplish that?

15:51:08 23          MR. LANGAN:  I think we do with a smaller number of

15:51:10 24  parties this time around.  So we will work on that if that's okay,

15:51:14 25  your Honor.

15:51:14  1          THE COURT:  That's fine with me.  I have no problem with

15:51:16  2    that.

15:51:20  3          I set aside, at least to begin the trial, like we did

15:51:25  4    last time, the two rows right on that side (INDICATING), left side

15:51:29  5    of my looking, right side as you enter the courtroom in the front

15:51:34  6    for the media.  I'm really -- maybe I'm being naive here or overly

15:51:39  7    optimistic, but I don't think we're going to have a need for that

15:51:42  8    this time around.  So we will see what it looks like on the first

15:51:46  9    day or two; if not, we will do like we did last time, we will just

15:51:50 10    collapse that to one row so that will give you all one more row if

15:51:54 11    you need it.  But I thought we would go ahead and set that aside to

15:52:01 12    start at least.

15:52:03 13          So you've got different charts, one for the first week

15:52:06 14    and a separate chart for the quantification segment, right?

15:52:09 15          MR. LANGAN:  Yes, your Honor.

15:52:10 16          THE COURT:  Does anybody have any questions, comments,

15:52:15 17    objections about Mr. Langan's seating charts?  I guess this has been

15:52:23 18    circulated to everyone.

15:52:31 19          Everyone have their war space room also set up?  I mean,

15:52:37 20    any issues regarding that?  Been a little bit of an adjustment, I

15:52:43 21    know, but I understand that's all been worked out.

15:52:50 22          Do you all plan on using, needing or wanting to use my

15:52:54 23    jury room like last time for a break room?

15:52:57 24          MR. BROCK:  That was nice to have actually, all of the

15:53:00 25    parties were able to use it, that would be great.

15:53:02  1          THE COURT:  Okay.  There's no reason we can't do that.  So
15:53:05  2   we will make that available to you all again.
15:53:13  3          Any issues or questions about how we're going to do
15:53:16  4   opening statements?  Did Judge Shushan give you a timeline for
15:53:25  5   disclosing any demonstratives --
15:53:27  6          MR. BROCK:  Yes, sir.
15:53:28  7          THE COURT:  -- or video clips or anything you might use,
15:53:31  8   plan to use in your opening statements?
15:53:33  9          MR. BROCK:  Yes, sir, there is a timeline for disclosure,
15:53:36 10   as well as for objections and resolving those.
15:53:39 11          THE COURT:  Okay.  Anybody have any questions about that?
15:53:42 12          MR. GODWIN:  Your Honor, with regard to the openings.  In
15:53:43 13   Phase One you did not allow objections during anyone's openings, and
15:53:48 14   we're wondering what your thought would be in the openings that
15:53:50 15   would be allowed here?
15:53:52 16          THE COURT:  Well, I have a real dislike for people jumping
15:53:59 17   up and interrupting other people's opening, or closing for that
15:54:03 18   matter.  It's got to be something pretty extreme to warrant that, so
15:54:12 19   I can't imagine what could occur in an opening statement that would
15:54:17 20   cause you to jump up and object.
15:54:21 21          MR. GODWIN:  Well, our thought was to treat it like you
15:54:23 22   did in Phase One, and there would be no objections.  We just want to
15:54:26 23   make sure we're all on the same page.
15:54:28 24          THE COURT:  Yes.  I think that's right.
15:54:31 25          MR. GODWIN:  Thank you, your Honor.

15:54:33 1        MR. BROCK:  I think he is asking for a free pass just to

15:54:35 2   say whatever he wants to say.  I'm like I'm working on an objection

15:54:39 3   right now.

15:54:41 4        MR. GODWIN:  I have to get something out today, Judge.

15:54:45 5        THE COURT:  Examination of Witnesses.  A lot of this stuff

15:54:50 6   carried over from our outline last time we were here.  I don't know

15:54:54 7   if anybody -- after our last trial I think you all should pretty

15:54:58 8   much know how I handle the examination of witnesses; that is, again,

15:55:03 9   barring something unexpected or unusual that occurs, we have a

15:55:08 10  direct, a cross and a redirect and that's it.  Sometimes I'll make

15:55:14 11  an exception to that.  One exception might be if I ask some

15:55:17 12  questions that I might inquire if anybody has any follow-up

15:55:23 13  questions to what I asked.

15:55:27 14       Anybody have any questions about that?

15:55:28 15       MR. BROCK:  I have one question on examination of

15:55:31 16  witnesses.  Obviously in the source control segment of the trial we

15:55:39 17  have the Aligned Parties, which include Transocean, Halliburton, the

15:55:43 18  PSC, Louisiana.  And just in terms of preparing our witnesses for

15:55:50 19  what they might experience when they arrive as to whether or not you

15:55:55 20  will permit multiple questioners of each of these witnesses?  I just

15:56:02 21  would like to know what the answer is and be able to let them know.

15:56:05 22       Obviously our preference would be to have a single

15:56:08 23  examiner for a witness.  I think that will be the most efficient

15:56:11 24  approach and the best approach; but if it's something different than

15:56:14 25  that, I guess just be something we would like to know.

15:56:19  1          THE COURT:  Well, that would be my preference, too, makes

15:56:23  2    sense that they would divvy up their witnesses and try to have one

15:56:27  3    lawyer do an examination of each witness.

15:56:30  4          But, Mr. Barr, do you want to be heard on that?

15:56:32  5          MR. BARR:  Your Honor, the only thing I would say is we

15:56:34  6    are certainly attempting in most instances to nominate one primary

15:56:38  7    examiner.  But there could be discrete issues given the different

15:56:43  8    interest of the parties that one party is not interested in asking

15:56:45  9    questions about what the other one wants to.  We understand that

15:56:49 10    counts against our clock either way, but there could be instances

15:56:52 11    where there are multiple examiners given the discrete issues.

15:56:57 12          MR. BROCK:  I mean, other than the fact that one group of

15:57:01 13    parties didn't join in to the source control -- I mean, to the

15:57:06 14    pre-spill conduct allegations, the parties on the other side have

15:57:10 15    filed a joint 37-page brief outlining what they seek to prove.  They

15:57:16 16    are completely aligned in what they are doing at trial.

15:57:19 17          THE COURT:  Again, I think I've stated my preference there

15:57:24 18    and what I think should occur.  However, I am not going to say that

15:57:28 19    absolutely I am going to preclude the possibility of someone else

15:57:34 20    asking, getting up and asking a few limited questions.  I think I'll

15:57:40 21    depend on Mr. Barr to kick them on the leg or something and tell

15:57:47 22    them that they're eating up his time if they get up there and try to

15:57:49 23    go on too long.

15:57:51 24          MR. BARR:  I will do that happily.

15:57:52 25          THE COURT:  Anybody have any questions about that?

15:57:58  1          I don't know why this is on the agenda, witnesses called

15:58:03  2   by deposition.  I am not sure what we're supposed to talk about

15:58:07  3   there, but it's on the agenda.  Anybody have any questions or

15:58:10  4   comments about that?

15:58:11  5          Expert Witness Examination.  I know Mr. Brock, you have

15:58:15  6   to leave to catch a plane, too, I was told.

15:58:18  7          MR. BROCK:  I do, your Honor, if I can have permission to

15:58:20  8   ease out?

15:58:21  9          THE COURT:  Yes.  Is there anything else on here that you

15:58:23 10   want to talk about before you leave?

15:58:25 11          MR. BROCK:  No, sir, I think the witness issue was the

15:58:27 12   last issue.  And Mr. Regan is traveling with me, if it's okay for

15:58:31 13   him to be excused also, I would appreciate it.

15:58:33 14          THE COURT:  Sure.

15:58:33 15          MR. BROCK:  Thank you very much, your Honor, I will see

15:58:36 16   you on the 30th, if not before.

15:58:39 17          MR. REGAN:  Thank you, your Honor.

15:58:42 18          THE COURT:  Good.  Have a good trip.

15:58:44 19          Expert witness examination.  Again, I am not quite sure

15:58:47 20   why we have that on there this time.  I guess maybe the last time we

15:58:52 21   talked about it, maybe I guess we'll do the same thing.  And I think

15:58:57 22   particularly since you all will be on a clock it would be in your

15:59:00 23   interest to do this as to we will introduce the expert's report as

15:59:07 24   part of the direct examination and then -- I'm not precluding

15:59:15 25   follow-up direct examination, but I am going to encourage you not to

15:59:22  1   just -- and I think it worked fairly well last time, not to ask a

15:59:27  2   witness to essentially just read or repeat everything that's in

15:59:30  3   their report.

15:59:30  4        MR. BARR:  Your Honor, just for some clarity on one issue

15:59:34  5   on qualifying the experts.  Most of their qualifications are set out

15:59:38  6   in their report.  I don't know how that was done in Phase One.  But

15:59:43  7   particularly two of the experts on the Aligned Parties' side have

15:59:47  8   already testified and discussed their qualification, and we just

15:59:51  9   kind of got a question, if the Court wants to hear qualifications

15:59:56 10   again?

15:59:57 11        THE COURT:  I don't want to hear it.  It seems like last

15:59:59 12   time you all, somebody, in many cases, wanted me to hear it.  But I

16:00:04 13   don't need to hear it for the most part.  If it's in the record,

16:00:07 14   their CVs will be in the record.  If there's some real legitimate

16:00:14 15   question about qualification, we'll have to take that up.  But I

16:00:19 16   think, I think to the extent, you know, if you're offering the

16:00:22 17   witness you can offer his report and his CV and tender him as a

16:00:27 18   witness in a certain field, and we'll see if there are any

16:00:31 19   objections or whatever and we will go from there.

16:00:33 20        MR. BARR:  All right.  Thanks, your Honor.

16:00:34 21        THE COURT:  Anybody have any comments or questions on

16:00:37 22   that?

16:00:44 23        Skipping ahead real quickly to *Daubert* motions.  We are

16:00:48 24   going to do like we did last time, I will take those as the

16:00:51 25   witnesses come up, I am not going to rule on those in advance of

16:00:54 1   trial.

16:00:57 2          I think I've already ruled on the appeals from Judge

16:01:00 3   Shushan's orders.

16:01:01 4          We've already talked about courthouse space.

16:01:06 5          Is there anything further we need to talk about in terms

16:01:09 6   of confidentiality of materials prior to and during the trial?

16:01:14 7          Karen, do the court reporters have any special requests

16:01:19 8   at this time?  I think the last time that was Cathy Pepper had

16:01:22 9   brought up the issue of you all were supplying was it the expert

16:01:29 10  report to the court reporter before the witness testified, or as the

16:01:33 11  witness was called to testify.  Is that what we did last time?  I'm

16:01:39 12  trying to remember.  Whatever way we did it last time, let's just do

16:01:42 13  it the same way.

16:01:49 14         I am not sure what this last thing is, second to last

16:01:52 15  thing, Objections/Offers of Proof.  Somebody added that on to our

16:01:58 16  agenda.  Mr. York, I think you did, right?  You or Mr. Godwin.

16:02:04 17        MR. YORK:  And, your Honor, I note for the record that

16:02:11 18  this is just the appellate lawyer coming out in me.  So this is --

16:02:15 19  we were trying to think about the things in the -- when the parties

16:02:18 20  have been talking about the trial planning, places where parties had

16:02:22 21  reserved rights or things like that and how the Court would want

16:02:25 22  these things presented to them.

16:02:27 23        So, for example, on the Phase Two trial procedure, as I

16:02:31 24  think the Court is aware, for example, on source control the Aligned

16:02:35 25  Parties originally had six experts and the Court ruled that we would

16:02:39   1   be allowed to call four and I think limited, also, BP on the number

16:02:42   2   of experts.  The same thing happened on the quantification side.

16:02:45   3   And I know the Aligned Parties, and I believe the US as well, had

16:02:49   4   reserved some rights with regard to that and to the limitation on

16:02:53   5   the number of deposition bundles that would be submitted.

16:02:56   6        I don't think -- I know from our standpoint we haven't

16:02:58   7   determined that we will need to make an objection on that basis at

16:03:01   8   this point.  I think it's going to depend on how the first week of

16:03:05   9   trial comes out.  And this links to the second issue as well, the

16:03:09  10   potential offers of proof.  I think we'll know better once we get

16:03:13  11   into the trial, but we just wanted to put it on the Court's radar in

16:03:17  12   case there was a particular way that the Court wanted us to handle

16:03:20  13   those issues so that we could make sure that we were acting in

16:03:23  14   compliance.

16:03:24  15        THE COURT:  Offer of proofs, you're talking about like a

16:03:27  16   proffer?

16:03:27  17        MR. YORK:  Yes, your Honor.

16:03:28  18        THE COURT:  In terms of proffer, we'll do just like we did

16:03:31  19   last time, you're not going to do that while I'm sitting on the

16:03:35  20   bench because I don't want to hear it or listen to it.  So you just

16:03:37  21   have to make arrangements with the court reporter to do it at some

16:03:41  22   other time.

16:03:42  23        With regard to the first, I am not sure I'm clear.  Judge

16:03:49  24   Shushan has issued orders on that.  I don't believe there's been any

16:03:57  25   appeals to me in terms of the limits on witnesses and depositions or

16:04:01  1    things like that; so as far as I'm concerned, to the extent you're

16:04:06  2    on record, if you're on record before her as objecting, your

16:04:10  3    objection is noted.  But I don't think we need to waste time during

16:04:14  4    the trial arguing those kinds of objections.  Okay?

16:04:18  5            MR. YORK:  Understood.

16:04:19  6            THE COURT:  What's the last thing here?

16:04:21  7            MR. YORK:  Your Honor, the last one, I believe you've

16:04:23  8    already taken this up, but I do want to just raise it because I

16:04:27  9    think there's a fine line issue here.

16:04:30  10           The way that the trial plan is set up at this point, for

16:04:34  11   example, the United States has 30 minutes reserved during the source

16:04:39  12   control phase in the event that quantification issues come up.  We

16:04:46  13   recognize that there is a no clear break between source control and

16:04:51  14   quantification evidence, and the Aligned Parties at this point don't

16:04:54  15   have any reserved time during the quantification phase in case the

16:04:59  16   quantification trial raises an issue that's important to source

16:05:03  17   control.

16:05:04  18           And again, I recognize the Court is not going to want

16:05:07  19   parties who are not a party to that proceeding standing up and

16:05:09  20   objecting, but the possibility does exist that evidence comes in

16:05:13  21   during the longer three week quantification phase that has a direct

16:05:16  22   bearing on source control issues.  So we just didn't know how the

16:05:20  23   Court might want to handle that issue.

16:05:21  24           THE COURT:  I've talked to Judge Shushan about that, and

16:05:27  25   that issue of overlapping evidence was primarily to address the

16:05:31  1    possibility that during an earlier phase a witness could be on the

16:05:37  2    stand and might be asked something that -- he or she might be there

16:05:44  3    primarily to testify about matters pertaining to that phase, the

16:05:51  4    earlier phase, but something could come up that could arguably

16:05:54  5    relate to the next phase, quantification in this case.  And rather

16:05:58  6    than have to call that witness back, you know, it's a judge trial,

16:06:03  7    we have some flexibility there.

16:06:05  8         I don't see it going the other way, though.  I don't see

16:06:09  9    something coming up in the quantification that is going to cause us

16:06:12 10    to go back and say this belongs in Phase Two or Phase One, so.

16:06:23 11         The reason that Judge Shushan -- actually, I was inclined

16:06:28 12    not to give the United States any time in the source control, but

16:06:34 13    Judge Shushan convinced me to give them 30 minutes, whatever it is,

16:06:38 14    Mr. O'Rourke.

16:06:39 15         MR. O'ROURKE:  That's right.

16:06:40 16         THE COURT:  For the reason I just said.  In the event

16:06:43 17    that, again, some witness is on the stand and they're asked some

16:06:46 18    questions that even though they're really there for source control,

16:06:51 19    it might somehow implicate quantification, which we haven't tried

16:06:57 20    yet; rather than having to call that witness back in the next

16:07:00 21    segment, that she said, well, just give the United States 30 minutes

16:07:06 22    if they have a few questions to ask to clarify something, and I said

16:07:09 23    fine, I went along with it.

16:07:12 24         MR. YORK:  And, your Honor, BP has represented I believe

16:07:14 25    to Judge Shushan and the parties that they don't intend to try

16:07:17  1   source control during quantification.  It's just as a matter of

16:07:20  2   recognizing that there is such a link between the evidence, and yet

16:07:25  3   since I don't believe any of the aligned parties have, will have a

16:07:28  4   voice in the quantification trial, we just wanted to put it on the

16:07:33  5   Court's radar that if something comes up during the quantification

16:07:36  6   trial that appears to be targeted toward source control, we may want

16:07:40  7   to have a discussion with the Court at that point.

16:07:41  8           THE COURT:  Yeah.  Okay.  Or you can argue later that it

16:07:50  9   shouldn't in any way implicate your client, which is kind of what I

16:07:55 10   told Mr. Godwin.

16:07:57 11           MR. YORK:  That's correct, your Honor.  Thank you very

16:07:58 12   much.

16:07:58 13           THE COURT:  Okay.  Sure.  Anybody else have anything on

16:08:01 14   those issues?

16:08:02 15           MR. O'ROURKE:  Yes, sir, this is Steve O'Rourke.  Just

16:08:04 16   quickly note the 30 minutes you mentioned, if we use it, which I

16:08:08 17   doubt, will come out of our quantification time.

16:08:11 18           THE COURT:  Right, I understand.  Thank you very much.

16:08:13 19           MR. O'ROURKE:  With respect to proffers or offers of

16:08:15 20   proof, you suggested we would pull aside a court reporter when

16:08:18 21   you're not around.

16:08:19 22           THE COURT:  Right.

16:08:20 23           MR. O'ROURKE:  Would you have any objection if we do

16:08:23 24   something else, which is file something in the docket while the

16:08:24 25   trial is pending, which would just succinctly write down all of our

16:08:28 1    proffers because there are several experts.

16:08:31 2            THE COURT:  You can do that, too, yeah, sure.

16:08:33 3            MR. O'ROURKE:  Thank you.

16:08:35 4            THE COURT:  The last thing -- and I am going to go back to

16:08:37 5    Roman Numeral XI briefly, but Qualifying Experts who testified in

16:08:43 6    Phase One.

16:08:46 7            MR. BARR:  We just talked about that.

16:08:48 8            THE COURT:  So we're okay with that?

16:08:52 9            MR. BARR:  Yes.

16:08:52 10           THE COURT:  The last thing I have on my agenda is -- oh,

16:08:55 11   I'm sorry, Ms. Karis.

16:08:56 12           MS. KARIS:  Your Honor, I apologize.  I just want to be

16:08:58 13   clear.  While we have no objection to the procedure that was

16:09:01 14   described for qualifying experts, submitting their CV, we do reserve

16:09:04 15   the right to raise objections to those experts being qualified as to

16:09:08 16   the issues that they are testifying to in Phase Two.

16:09:10 17           THE COURT:  Sure.

16:09:11 18           MS. KARIS:  Because they're at least as we outlined in the

16:09:14 19   *Daubert* motions, we have some issues with the qualifications of some

16:09:17 20   of the experts.

16:09:18 21           THE COURT:  Okay.  Thank you, very well.  Going back up to

16:09:23 22   Roman Numeral XI, Motions in Limine.  Let's see if we can take up

16:09:28 23   some of these while we're here.  These are not *Daubert* motions, as I

16:09:43 24   said I am not taking those up now.

16:09:49 25           First of all, looks like the parties filed a -- actually,

16:09:55 1   Judge Shushan issued an order, which is Rec. Doc. 10903 issued on

16:10:05 2   August 1, setting forth certain Phase One motions in limine that

16:10:10 3   apply directly to Phase Two; and apparently this is based on consent

16:10:14 4   or agreement of the parties, as I appreciate it.

16:10:19 5        Anadarko has a Motion in Limine to Exclude All Evidence

16:10:24 6   and Argument Presented for the Purpose of Proving Anadarko's

16:10:28 7   Culpability or Fault, this is Rec. Doc. 10826.  I have looked at

16:10:37 8   that motion, I've looked at the responses to that motion.  Seems to

16:10:44 9   me that this is clearly covered by my prior rulings.

16:10:50 10       MR. O'ROURKE:  Your Honor, if I may speak.  This is Steve

16:10:52 11   O'Rourke for the United States.

16:10:53 12       We did not file an objection to that motion -- or rather

16:10:57 13   an opposition to that motion on the merits.  We only filed a letter

16:11:01 14   requesting that oppositions be delayed until after Phase Two.  You

16:11:05 15   issued an order, or rather instructed Judge Shushan and she issued

16:11:10 16   an order stating that with respect to Phase Two no culpability

16:11:14 17   evidence, and we're happy to stand with that order.

16:11:17 18       With respect to Phrase Three, which hasn't even been

16:11:20 19   scheduled yet, we would like to --

16:11:23 20       THE COURT:  You mean not Phase Three, you mean the penalty

16:11:25 21   phase.

16:11:25 22       MR. O'ROURKE:  I stand corrected.

16:11:27 23       THE COURT:  I was waiting for Mr. Langan to correct you,

16:11:30 24   but he was distracted over there.

16:11:33 25       MR. O'ROURKE:  Because we were talking about Anadarko.

16:11:37  1        With respect to the penalty phase, we would like a chance

16:11:41  2   to oppose that brief on the merits before you rule on it.

16:11:44  3        THE COURT:  Well, okay.  But I think you're spinning your

16:11:47  4   wheels and wasting time, money, paper and ink and everything --

16:11:51  5   well, not ink but bits or whatever you waste now when you do it on

16:11:54  6   computer.  Because I don't see any possible way that Anadarko's

16:11:58  7   fault, culpability, any way you want to phrase it, or wordsmith it,

16:12:02  8   is going to come into any phase of this trial going forward.  So

16:12:06  9   take that for what it's worth.

16:12:09 10        MR. O'ROURKE:  That's good to know.

16:12:11 11        THE COURT:  So I am granting Anadarko's motion.

16:12:14 12        The next one is BP's motion to exclude instances of prior

16:12:20 13   alleged improper conduct and adverse criminal, civil or regulatory

16:12:24 14   proceedings, unrelated to the Macondo well obviously.  So this would

16:12:36 15   not exclude BP's guilty plea arising out of the Macondo blowout, as

16:12:40 16   I appreciate it, correct?

16:12:43 17        MR. GASAWAY:  Good afternoon, your Honor, Rob Gasaway for

16:12:52 18   BP.  That's correct.

16:12:53 19        THE COURT:  Which is really already in the record.

16:12:56 20        MR. GASAWAY:  It is.

16:12:56 21        THE COURT:  We don't have to introduce it again, it was

16:12:58 22   introduced in Phase One.

16:13:00 23        MR. GASAWAY:  It is.  And that's referenced in an

16:13:01 24   opposition to a different one that tracks, and none of our motions

16:13:06 25   concerns that.

16:13:07 1        This is the motion, your Honor, that was focused on

16:13:11 2   Grangemouth, Alaska and Texas City that your Honor granted.  And for

16:13:14 3   the reasons that we discussed in the briefing, it's essentially not

16:13:18 4   opposed.  Going forward there were some quibbles around the edges,

16:13:23 5   but we think this should be a clear carryover from Phase One to

16:13:26 6   Phase Two.

16:13:27 7        THE COURT:  Looks like the only quibble deals with the

16:13:38 8   1979 -- I'm not sure how you pronounce it -- Ixtoc blowout,

16:13:48 9   Halliburton raised that issue as somehow being relevant to source

16:13:52 10  control.  Was that a BP related blowout?

16:13:58 11       MR. GASAWAY:  No, your Honor.  BP has no involvement in

16:14:01 12  Ixtoc.  As I understand it, one of the entities there has since

16:14:06 13  become affiliated with Transocean.

16:14:07 14       THE COURT:  It was Sedco which is now part of Transocean,

16:14:09 15  right?

16:14:10 16       MR. GASAWAY:  Correct, your Honor.

16:14:11 17       But the original motion was a BP motion that focused on

16:14:15 18  prior BP incidents, and the three specifically that I mentioned -

16:14:21 19  the Grangemouth incident, the Alaska incident and the Texas City

16:14:26 20  incident - and we were not trying to expand that, we were just

16:14:28 21  trying to make clear that those are not fair game in Phase One, also

16:14:32 22  not fair game in Phase Two.

16:14:35 23       THE COURT:  All right.

16:14:36 24       MR. GASAWAY:  And there's obviously two components there,

16:14:38 25  both the conduct component and then the documentary component to the

16:14:42  1    extent --

16:14:43  2           THE COURT:  I don't have to hear anymore.  Does

16:14:45  3    Halliburton want to say anything on that?

16:14:48  4           MR. GODWIN:  Yes, your Honor.  Jenny will respond for us.

16:14:51  5    Thank you.

16:14:51  6           MS. MARTINEZ:  Good afternoon, your Honor.  Halliburton

16:14:59  7    doesn't have any objection to precluding the specific instances,

16:15:03  8    Texas City and the specific things that were outlined in BP's

16:15:07  9    original motion regarding prior improper conduct.  We merely brought

16:15:12 10    up an additional example of something that might be relevant to

16:15:15 11    source control that was not specifically outlined by BP, that we

16:15:20 12    weren't necessarily agreeing with that.

16:15:22 13           THE COURT:  But how could that be relevant if it wasn't a

16:15:26 14    BP incident?  How could that be used against BP?

16:15:31 15           MS. MARTINEZ:  Well, we were trying to --

16:15:32 16           THE COURT:  You're on the same side as Transocean, so

16:15:35 17    you're certainly not trying to use this against Transocean, right?

16:15:38 18           MS. MARTINEZ:  Correct, your Honor.  We were merely

16:15:40 19    providing an example of there may be certain other instances of

16:15:43 20    prior alleged improper conduct that had not been specifically

16:15:47 21    addressed by BP, that we weren't necessarily agreeing with the

16:15:52 22    complete proposition that nothing -- no prior alleged improper

16:15:56 23    conduct can come in, but we were agreeing that anything BP

16:15:59 24    specifically outlined in their motions, we do agree that is

16:16:03 25    irrelevant.

16:16:05 1          THE COURT:  Okay.  I understand.  Mr. Barr, do you want to

16:16:09 2     say anything?

16:16:09 3          MR. BARR:  Your Honor, the one thing we would say is while

16:16:12 4     we didn't oppose the motion and we said that we were -- we weren't

16:16:18 5     planning on talking about Texas City and that kind of stuff in our

16:16:22 6     opposition, we did want a recognition that the door had been opened

16:16:25 7     in Phase One, there was some limited testimony.

16:16:28 8          THE COURT:  Very limited.  Like one question I think.

16:16:31 9          MR. BARR:  We didn't want like an ex post facto on that.

16:16:35 10         But on Ixtoc, what I would say -- and I don't think that's

16:16:39 11    part of the motion, but since it's come up I feel the need to

16:16:43 12    address it -- I don't believe anybody is saying that that was a BP

16:16:47 13    caused incident or there was some sort of improper conduct of BP.

16:16:51 14    But it was certainly notice of potential source control issues and

16:16:55 15    that interventions and those types of things need to be looked at.

16:17:01 16    So that's how it would be relevant to Phase Two, several of the

16:17:03 17    experts are looking at that as reliance upon a warnings of things to

16:17:08 18    come in the future.

16:17:09 19         THE COURT:  Well, I don't see how it's relevant, so I am

16:17:12 20    going to grant BP's motion.  Stephanie, that's Rec. Doc. 11027.

16:17:19 21    Okay?

16:17:20 22         THE DEPUTY CLERK:  Okay.

16:17:21 23         MR. BARR:  Your Honor, just so it's clear, what I mean,

16:17:25 24    since Ixtoc was not part of the motion --

16:17:27 25         THE COURT:  I understand, but it's even less relevant

16:17:32  1  because it doesn't involve BP at all, you know.  I mean, I think I

16:17:36  2  understand what you're saying; you're saying, well, the industry

16:17:39  3  should be aware of all of these other incidents and do something

16:17:41  4  about it.  But I don't think you need to go into what happened in

16:17:46  5  Ixtoc to know that if you have a blowout of a deep water well you

16:17:53  6  need to be able to respond to it.  And experts can argue about

16:17:59  7  whether BP did or did not or was prepared to respond or not, that's

16:18:04  8  going to be what we arguing about in source control I imagine.  But

16:18:09  9  I don't think -- we are not going to go back and talk about Ixtoc,

16:18:12 10  okay.

16:18:13 11        MR. BARR:  And I don't believe any of the parties will be

16:18:14 12  talking about any of the details of Ixtoc, it would be discussions

16:18:17 13  of Ixtoc and BP's own internal documents and what they knew about

16:18:21 14  that it flowed for ten months because they didn't have procedures

16:18:24 15  and they used the same types of intervention technologies at Ixtoc

16:18:30 16  that didn't work there, they used those same technologies in

16:18:35 17  Macondo.  So it's related technologies.

16:18:37 18        THE COURT:  Okay.  Well, again, I am inclined -- I've

16:18:41 19  already ruled on that motion, okay.

16:18:43 20        MR. BARR:  Okay.

16:18:45 21        THE COURT:  Next one, BP's motion to exclude non-factual

16:18:50 22  fact witness testimony from Phase Two.  This is 11038, Rec.

16:19:00 23  Doc. 11038.  I get the impression that you all are sort of quibbling

16:19:05 24  over what is a factual statement or not here.  I mean, this is the

16:19:13 25  kind of thing that's hard to rule on until I hear the question, but,

16:19:17  1    I mean, I generally agree.  I think -- is this one of these where

16:19:23  2    you're asking me to apply the same rule I applied the first time

16:19:28  3    around?

16:19:28  4              MR. GASAWAY:  You applied this to the Randy Ezell

16:19:31  5    testimony in Phase One.

16:19:31  6              THE COURT:  Right, right.

16:19:32  7              MR. GASAWAY:  That testimony was what would have happened

16:19:34  8    if you would have brought a cement bond log.  We have the same thing

16:19:38  9    here with the three witnesses we mentioned.  If you'd only know that

16:19:41 10    top kill could never have worked at the flow rate above 15,000, and

16:19:45 11    it's the same thing.  The basis for --

16:19:47 12              THE COURT:  I'm wondering if it's the same thing to say --

16:19:54 13    Mr. Ezell's, the question to Mr. Ezell, I don't remember exactly

16:19:57 14    what they were now, but those were pretty clearly opinion testimony.

16:20:08 15    It's hard to draw a fine line here, demarkation here as to what's

16:20:13 16    proper or not, again, in the abstract.  But I can certainly see that

16:20:19 17    a fact witness who was out there working could be asked, I guess,

16:20:24 18    "If you had been given this additional information, would you have

16:20:27 19    done anything differently?"  I don't know if that's an expert

16:20:30 20    opinion, it doesn't sound like expert testimony to me.  It sounds

16:20:34 21    like, you know, if you're a fireman and you had been told there was

16:20:39 22    somebody in the house, would you have gone in in a different way or

16:20:42 23    would you have done something differently as opposed to what you

16:20:45 24    did.

16:20:46 25              MR. GASAWAY:  Our thought on that, your Honor, is if you

16:20:49  1   just look at the specific testimony that we cite in Phase Two, we

16:20:53  2   think it's a much more unique situation in Phase One, right.  I

16:20:56  3   mean, you listed a number of things as exemplars for the Ezell

16:21:01  4   testimony:  Page 166, 167, 180, 182.  In those cases, he actually

16:21:08  5   had experience we think with cement bond logs, but here the question

16:21:12  6   was for a one of a kind blowout, if you would have had one

16:21:15  7   additional piece of information, how would that or would that not

16:21:19  8   have changed your decision making.  So we just think if you look at

16:21:22  9   the specific testimony we cite, you'll see that that's more

16:21:26 10   factually dissimilar from what those witnesses would have

16:21:30 11   encountered before in their ordinary experience.

16:21:34 12            THE COURT:  Well, let me hear from Mr. Brian.

16:21:38 13            MR. BRIAN:  Brad Brian for Transocean, your Honor.

16:21:40 14            We oppose this motion, and I cited cases from the two

16:21:44 15   circuits, *Cuti* case in the *Eisenberg* case which permit this precise

16:21:49 16   line of questioning that I think BP is trying to exclude.

16:21:51 17            But more fundamentally, I don't think it's a proper motion

16:21:54 18   in limine.  I think it's the kind of objection that really ought to

16:21:58 19   be taken up on a question-by-question basis.  I think trying to rule

16:22:02 20   in advance on a subject like this is very difficult and

16:22:05 21   inappropriate.  And I would suggest that the Court deny the motion

16:22:09 22   at this time and simply take it up on a question-by-question basis

16:22:13 23   if objections are made.

16:22:16 24            THE COURT:  Yes, I tend to agree with you.  I agree in a

16:22:28 25   general way that, I mean, obviously as a general statement a fact

16:22:36 1    witness can't give expert testimony; but he can give opinion

16:22:41 2    testimony if it's based on something that doesn't require any

16:22:46 3    particular expertise, he is just asking what you would have done if

16:22:50 4    you had known this.

16:22:53 5            So I am just going to have to wait to see.  I am going to

16:22:56 6    defer ruling on that until I hear the context of the questions and

16:23:00 7    who the witness is and what the questions are there.

16:23:03 8            Next is a somewhat similar motion, but this is to BP's

16:23:12 9    motion, this is Rec. Doc. 11039, BP's Motion in Limine to Bar Fact

16:23:20 10   or Opinion Testimony on Issues of Law.  We had something like this

16:23:23 11   last time.  Again, to a great extent these -- this is almost much to

16:23:36 12   do about nothing because it's a bench trial.  I mean, a lot of these

16:23:39 13   types of motions are to try to keep this kind of stuff from a jury,

16:23:45 14   inflammatory words, somebody is using the word "reckless disregard"

16:23:50 15   and things like that.

16:23:51 16           I think it's obvious that an expert can't give,

16:23:58 17   ordinarily give legal opinions.  And again, to the extent -- I think

16:24:10 18   we had this last time with Dr. Bea, the same witness, using or some

16:24:16 19   witness they used the word reckless or wanton or willful or

16:24:20 20   something like that, that's the kind of thing we're talking about,

16:24:23 21   Mr. Gasaway?

16:24:24 22           MR. GASAWAY:  Yes, your Honor.  The one before was willful

16:24:27 23   or intentional misconduct and negligent was also called out in your

16:24:33 24   Honor's order, Rec. Doc. 5495, and you'll see there's similar

16:24:36 25   language that's being thrown around in Phase Two.  And again, this

16:24:39  1   is really just a carryover, the principle, from Phase One to some of

16:24:43  2   the language we're seeing in Phase Two.

16:24:45  3          THE COURT:  Anybody want to be heard in opposition to BP's

16:24:52  4   motion?

16:24:53  5          MR. BARR:  Your Honor, what I would say is, again, just

16:24:57  6   like the prior motion, this is something that needs to be heard in

16:25:00  7   the context of the trial.  These experts are going to testify live

16:25:04  8   and I think you can better judge the context of the words in the

16:25:10  9   manner in which they're using it in a live setting, we certainly

16:25:14 10   don't intend on violating the Court's prior orders on what the law

16:25:18 11   is.  But again, context is important when it comes to their

16:25:23 12   testimony.

16:25:23 13          THE COURT:  But Dr. Bea is using a lot of words that have

16:25:29 14   clear legal connotation - reckless disregard, grows disregard, BP

16:25:40 15   acted willfully, that its actions were willful - those statements

16:25:47 16   are improper.  So to the extent he uses those kinds of terms, I am

16:25:53 17   going to agree with BP and grant their motion.  Otherwise, I am

16:26:10 18   going to defer a ruling on anything else until it comes up at trial,

16:26:14 19   okay.

16:26:15 20          MR. BARR:  Thank you.

16:26:16 21          MS. KARIS:  Your Honor, I am going to say, somebody once

16:26:18 22   told me:  "You're winning, sit down."

16:26:20 23          THE COURT:  That's usually good advice.

16:26:22 24          MS. KARIS:  Thank you.  The one thing I would say is one

16:26:25 25   concern we have is there are places where experts use such language,

16:26:29  1    and because of the proceeding we've set up, the expert report comes

16:26:33  2    into the record and the testimony may not ever actually find its way

16:26:37  3    into the courtroom, and we want to make sure that that rule applies,

16:26:41  4    it's in the expert report, used comparable to how Dr. Bea uses it,

16:26:49  5    which is, in fact, a legal conclusion.

16:26:50  6            THE COURT:  If you think it violates my order, you can

16:26:53  7    point that out; and before the report is filed, you all can work out

16:26:56  8    a redaction.

16:26:56  9            MS. KARIS:  Thank you.  And I will sit down.

16:26:59  10           THE COURT:  I think we did that a few times the last time

16:27:01  11   around.

16:27:02  12           MS. KARIS:  Indeed.  Thank you.

16:27:04  13           THE COURT:  Rec. Doc. 11043, BP's Motion in Limine to

16:27:08  14   Exclude Certain Evidence Related to Criminal Proceedings.  Didn't we

16:27:13  15   deal with this last time around, Phase One?

16:27:15  16           MR. GASAWAY:  Your Honor, we did.

16:27:20  17           THE COURT:  Whatever I ruled was in the record is in the

16:27:22  18   record already.

16:27:23  19           MR. GASAWAY:  That's correct.

16:27:24  20           THE COURT:  So you just don't want anything else to go in?

16:27:27  21           MR. GASAWAY:  Well, we want to make sure that it carries

16:27:29  22   over.  And then we also do want to extend it --

16:27:31  23           THE COURT:  That's part of the record of this entire case,

16:27:34  24   it's already -- so let me just ask:  Does anybody plan to attempt to

16:27:39  25   introduce any further evidence, documents, testimony regarding BP's

16:27:46  1   guilty pleas in Phase Two?

16:27:49  2          MR. BARR:  Your Honor, there could be testimony on the

16:27:52  3   guilty plea, the allocution --

16:27:54  4          THE COURT:  Didn't that come in last time?

16:27:58  5          MR. BARR:  It all depends upon -- a lot of it could come

16:28:00  6   in through cross-examination depending upon what their experts say.

16:28:04  7   So I mean a lot of it we have to be able to judge what they say.

16:28:09  8   But the guilty plea --

16:28:10  9          THE COURT:  But that's already in evidence is my point,

16:28:12 10   Mr. Barr.  Why do we have to go there again?

16:28:14 11          MR. BARR:  I guess it would depend on what a witness says,

16:28:17 12   whether or not it's open for cross-examination.

16:28:18 13          THE COURT:  Give me and example.  You suppose one of their

16:28:21 14   witnesses is going to deny that they pled guilty?

16:28:23 15          MR. BARR:  No.  But possibly a witness -- I don't know

16:28:26 16   that they'll say this -- but let's say Mr. Dupree says that they

16:28:29 17   were open, honest and forthright on the Unified Command.  Well, that

16:28:32 18   is inconsistent with the allocution they filed with the guilty plea.

16:28:36 19          THE COURT:  Well, you can easily remind me of that.

16:28:39 20          MR. BARR:  That's all I'm saying, on cross we could say,

16:28:42 21   "Well, this is what it says in the guilty plea; isn't that correct?"

16:28:46 22          THE COURT:  If you want to waste your time doing that you

16:28:47 23   can.  But you can point that out in post trial briefing, and I don't

16:28:52 24   think you need to point that out to me, I am well aware of the

16:28:56 25   guilty plea.  So it's up to you, you're going to be on the clock.

16:28:57  1    All I'm telling you is if you want to waste time, I think it would

16:29:00  2    be a waste of your time --

16:29:02  3              MR. BARR:  That's good to know.

16:29:03  4              THE COURT:  -- to do something like that, go at it.

16:29:05  5              MR. BARR:  We will certainly heed that advice, your Honor.

16:29:08  6              THE COURT:  I might give you all more free reign this time

16:29:11  7    in terms of asking irrelevant and redundant questions.  Okay.

16:29:20  8              So I think you won that one, Mr. Gasaway.  So that's

16:29:23  9    granted.

16:29:24  10             MR. GASAWAY:  I will sit down, your Honor.

16:29:26  11             THE COURT:  All right.  Where are we?  Rec. Doc. 11044, BP

16:29:32  12   Motion in Limine to Exclude Other Government Reports and Privileged

16:29:37  13   Communications Related to the Scope of BP's Internal Investigation

16:29:42  14   from Both Segments of the Phase Two Trial.  I've got a note that

16:29:49  15   only the United States opposes this motion; is that correct?

16:29:52  16             MS. HIMMELHOCH:  That's correct, your Honor.  And only

16:29:54  17   with respect to one document.

16:29:56  18             THE COURT:  Okay.

16:29:56  19             MS. HIMMELHOCH:  The reasons are set forth in our

16:29:58  20   pleadings.  I'll just say that BP filed an alternative redacted

16:30:02  21   version of the document, we would be willing to have that, their

16:30:06  22   alternative redacted version that they attached to their reply filed

16:30:10  23   and that would resolve the issue.

16:30:11  24             THE COURT:  This is the so-called working papers or staff

16:30:14  25   working papers?

16:30:15  1          MS. HIMMELHOCH:  Yes, it's the staff working paper titled

16:30:17  2   the amount of --

16:30:17  3          THE COURT:  From the National Commission.

16:30:20  4          MS. HIMMELHOCH:  That's correct, your Honor.

16:30:21  5          THE COURT:  And it just gives their opinion as to the

16:30:27  6   quantity of oil?

16:30:28  7          MS. HIMMELHOCH:  It discusses the emerging consensus

16:30:33  8   between the Government and independent experts regarding the

16:30:36  9   quantification of oil, and BP has asked to add back in the pieces

16:30:39 10   that show BP's side of the story, we don't have a problem with that.

16:30:43 11          THE COURT:  All right.  Mr. Gasaway.

16:30:46 12          MR. GASAWAY:  If I could be heard briefly.  That was our

16:30:48 13   argument in the alternative.  What we really wanted to direct your

16:30:53 14   Honor's attention to was your earlier ruling of February 9th, Rec.

16:30:59 15   Doc. 5635.  And if you just read what you did with the parts of the

16:31:03 16   Spill Commission Analysis that were relevant to Phase One, we think

16:31:07 17   the real answer is just to exclude everything from Phase Two.  As

16:31:12 18   the Court analyzed the issue --

16:31:13 19          THE COURT:  I did say that this was a public record,

16:31:16 20   right?

16:31:16 21          MR. GASAWAY:  You said it was a public record --

16:31:19 22          THE COURT:  And I said I was concerned, however, about

16:31:20 23   undue delays resulting from the need to conduct in-depth

16:31:24 24   examinations to sift out "inner hearsay" within otherwise admissible

16:31:29 25   public records.

16:31:30  1          MR. GASAWAY:  Exactly.

16:31:31  2          THE COURT:  And this alone could be a valid ground for

16:31:34  3  exclusion of the reports.

16:31:35  4          So finally at the end I said, "Just the first phase of the

16:31:39  5  limitation trial is anticipated to last several months.  Considering

16:31:43  6  the volume of evidence and testimony which the parties plan to seek

16:31:47  7  to introduce, much of which will likely be cumulative of that

16:31:51  8  contained in the report, the Court does not intend to spend a great

16:31:55  9  deal of time attempting to sort the wheat from the chaff."  And so

16:31:58 10  forth.

16:31:58 11          So that was the basis of my -- and I guess what the other

16:32:01 12  side is saying now is, we don't have to go through that exercise to

16:32:05 13  put in this very redacted, very limited statement from that report.

16:32:10 14          MR. GASAWAY:  We've narrowed it down.  But the key word

16:32:13 15  here, your Honor, is just cumulative.  And what you'll see --

16:32:17 16          THE COURT:  The idea about cumulative is to save time.

16:32:19 17          MR. GASAWAY:  Right.

16:32:21 18          THE COURT:  We usually don't allow a lot of cumulative

16:32:24 19  evidence, but I don't think it's going to take a lot of time to say

16:32:28 20  that's admitted.

16:32:29 21          MR. GASAWAY:  With the alternative redacted version.

16:32:30 22          THE COURT:  You win on your alternative argument.

16:32:32 23          MR. GASAWAY:  Thank you, your Honor.

16:32:33 24          MS. HIMMELHOCH:  Thank you.

16:32:35 25          THE COURT:  I guess I am granting the Government -- I'm

16:32:40  1    Granting BP's motion except to the extent that the redacted -- how

16:32:45  2    do we describe it, Sarah?

16:32:47  3             MS. HIMMELHOCH:  I'm sorry, your Honor.  The redacted

16:32:50  4    staff working papers.

16:32:52  5             THE COURT:  The redacted working staff working papers is

16:32:55  6    admissible.

16:32:56  7             MS. HIMMELHOCH:  Thank you, your Honor.

16:32:57  8             THE COURT:  Okay.  And I think this is the last motion in

16:33:01  9    limine that I see.  BP's Motion in Limine to Exclude Evidence

16:33:05 10    Related to the SEC Settlement and EPA Suspension and

16:33:09 11    Disqualification.  I don't think anybody's arguing that the EPA

16:33:18 12    suspension or disqualification is admissible, are they?

16:33:22 13             MR. GASAWAY:  That's correct, your Honor, we view that as

16:33:24 14    unopposed.

16:33:25 15             THE COURT:  So you win there.  What about the SEC

16:33:28 16    settlement, is that still at issue?

16:33:33 17             MS. HIMMELHOCH:  No, your Honor.

16:33:34 18             THE COURT:  No, nobody's arguing that's admissible either,

16:33:37 19    or you're arguing that it is -- what's the Government's position on

16:33:40 20    that?

16:33:40 21             MS. HIMMELHOCH:  The US did not oppose that one.  I was

16:33:43 22    coming up because there is one motion in limine that is not on your

16:33:45 23    list.

16:33:45 24             THE COURT:  Well, let's finish talking about this one

16:33:47 25    first.  Is anyone opposing this motion?

16:33:50  1              Okay.  So you win another one, Mr. Gasaway.  You're on a

16:33:55  2      roll here today.

16:33:55  3              MR. GASAWAY:  I'm on a roll here.  Thank you, your Honor.

16:33:57  4              THE COURT:  You'll probably get a bonus.  Stephanie,

16:34:02  5      that's Rec. Doc. 11046, BP's motion in limine was granted.

16:34:09  6              MS. HIMMELHOCH:  The United States has filed one motion

16:34:12  7      in limine, I unfortunately did not remember to bring the record doc

16:34:17  8      number with myself, but it's a motion in limine to exclude

16:34:19  9      surrebuttal opinion.  I am not asking you to rule now, I just didn't

16:34:23 10      want it to fall through the cracks.

16:34:26 11              THE COURT:  I don't believe I've seen that.  But if you

16:34:27 12      would maybe e-mail Ben or something and remind us and we will look

16:34:29 13      at that.

16:34:30 14              MS. HIMMELHOCH:  Absolutely, your Honor.

16:34:34 15              THE DEPUTY CLERK:  Do we have a ruling on B, XI(B)?

16:34:37 16              THE COURT:  Which one?

16:34:37 17              THE DEPUTY CLERK:  B.

16:34:37 18              THE COURT:  B. Motion to Exclude "Other Phases" Evidence?

16:34:43 19      Did I pass that over?  I think I skipped over that.  That's Rec.

16:34:51 20      Doc. 11026.  BP requests, moves for an order asking the Court to

16:34:57 21      issue an order barring the parties from introducing for the first

16:35:00 22      time new evidence or opinions beyond the issues to be tried in Phase

16:35:03 23      Two.

16:35:05 24              That's sort of what we've been talking about, we talked

16:35:08 25      about that a lot indirectly.  So again, in the abstract, I mean,

16:35:14  1    you're right.  I am not sure if there's any particular evidence that

16:35:18  2    you're directing this to, Mr. Gasaway?

16:35:20  3            MR. GASAWAY:  Your Honor, we talked about the specific

16:35:23  4    example in your colloquy with Mr. Godwin.  Basically I think all of

16:35:29  5    the parties agree in principle.  Halliburton tried to re-argue a

16:35:34  6    motion about the cement, and I think you kind of effectively

16:35:37  7    addressed that already.

16:35:40  8            We would suggest that just, again, the carryover principle

16:35:44  9    is just that what you said on the record earlier in this conference

16:35:47 10    is if it's a Phase One issue, there's going to be no more evidence

16:35:51 11    on that; and if it's a penalty phase issue, we're not going to be

16:35:55 12    addressing that.  And we just think having the carryover certainty

16:35:58 13    like you did before Phase One is helpful to all of the parties.  But

16:36:01 14    you made that very clear on the record earlier in the conference.

16:36:04 15            THE COURT:  Okay.  Anybody want to comment on that motion?

16:36:12 16    Okay.

16:36:15 17            Again, without ruling on any particular evidence, but in

16:36:22 18    general, I think BP is right, so I think that's exactly what we've

16:36:27 19    said all along, so to that extent I'm granting that motion.

16:36:34 20            All right.  Is there anything else that anyone wants to

16:36:37 21    raise?

16:36:38 22            MR. LANGAN:  Your Honor, Andy Langan for BP.  I don't know

16:36:40 23    that you've met my partner Barry Fields, and I want to make sure

16:36:43 24    Barry is introduced.  Barry is going to be at the trial

16:36:46 25    participating and examining witnesses, and I don't think he's been

16:36:49  1    introduced to the Court yet.

16:36:51  2              THE COURT:  Welcome.

16:36:51  3              MR. FIELDS:  Thank you, your Honor.

16:36:51  4              THE COURT:  Fields, F-I-E-L-D-S?

16:36:51  5              MR. FIELDS:  Yes, sir.

16:36:54  6              THE COURT:  Okay.  Welcome.

16:36:55  7              MR. FIELDS:  Thank you.

16:36:57  8              THE COURT:  Anybody else have anything?

16:37:01  9         Okay.  I have a very important question, when is the

16:37:05 10    Alabama-LSU game this year?  I hope it falls after the trial this

16:37:12 11    year.

16:37:14 12              MR. MILLER:  It's usually around November the 11th, so

16:37:17 13    we'll be done.

16:37:17 14              THE COURT:  We will definitely lose time if we have to

16:37:19 15    talk about that.

16:37:22 16         Okay.  Anybody have anything else?  All right.  Have good

16:37:26 17    day everyone, good evening.

16:37:30 18         (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

         19

         20                        *  *  *  *  *  *

         21

         22

         23

         24

         25

1

2

3                        REPORTER'S CERTIFICATE

4

5        I, Karen A. Ibos, CCR, Official Court Reporter, United

6    States District Court, Eastern District of Louisiana, do hereby

7    certify that the foregoing is a true and correct transcript, to the

8    best of my ability and understanding, from the record of the

9    proceedings in the above-entitled and numbered matter.

10

11

12                         /s/ Karen A. Ibos

13                    Karen A. Ibos, CCR, RPR, CRR, RMR

14                    Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25