# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: Oil Spill by the Oil Rig** | * | **MDL 2179** |
| **"Deepwater Horizon" in the Gulf** | * | |
| **of Mexico, on April 20, 2010** | * | **SECTION "J"** |
| | * | |
| **This Document Applies To:** | * | **JUDGE BARBIER** |
| *10-2771, Rec. Doc. 323 (In Re: Triton* | * | |
| *Asset Leasing GmbH, et al.)* | * | **MAGISTRATE SHUSHAN** |
| *10-4182 (Alabama v. BP)* | * | |
| *10-4183 (Alabama v. Transocean, et al.)* | * | |
| *13-2645 (Alabama v. Anadarko &* | * | |
| *MOEX)* | * | |
| *13-2646 (Alabama v. Transocean)* | * | |
| *13-2647 (Alabama v. Halliburton)* | * | |
| *13-2813 (Alabama v. BP)* | * | |

## ORDER & REASONS
### [As to BP's Motion to Strike the State of Alabama's Jury Demand]

BP moved to strike the State of Alabama's ("the State" or "Alabama") jury demand from the

trial on Alabama's compensatory damages.  (Rec. Doc. 12345).[1]  The motion was briefed and

submitted without oral argument.[2]  For reasons explained below, the Court concludes that the State

is entitled to a jury trial on its present claims under the Oil Pollution Act of 1990 ("OPA" or "the

---

[1] Citations to court documents refer to Civil Action no. 10-md-2179 unless otherwise noted.

[2] Anadarko, Transocean, and Halliburton filed memoranda in support of BP's motion.  (Rec. Docs. 12357, 12361, 12362).  The States of Alabama, Texas, Florida, and Mississippi filed opposition briefs.  (Rec. Docs. 12466, 12475, 12476, 12495).  BP and Transocean filed replies.  (Rec. Docs. 12590, 12602).

After briefing was complete, the parties stipulated that Transocean and Halliburton would not participate in the trial on Alabama's compensatory damages. (Rec. Docs. 13673, 14040). The Court understands that similar stipulations have been reached with respect to Anadarko, although they have not been filed in the record yet.  The filed stipulations note that Transocean and Halliburton reserve their rights to argue over the existence *vel non* of a jury and other matters. Nevertheless, the Court has considered Transocean's, Halliburton's, and Anadarko's memoranda with BP's motion.  As a final note on briefing, the Court has not considered an opposition brief written by the State of Louisiana, because that brief, although served on counsel, was not filed in the Court's record.  In fact, the Court would not be aware of the existence of Louisiana's brief had BP's reply not referenced it.

Act"), 33 U.S.C. § 2701, et seq.[3]  Accordingly, the Court denies BP's motion.

## BACKGROUND

On April 20, 2010, a blowout, explosion, and fire occurred aboard the mobile offshore drilling unit DEEPWATER HORIZON as it was preparing to temporarily abandon a well, known as Macondo, it had recently drilled on the Outer Continental Shelf.  Approximately 3.19 million barrels of oil discharged into the Gulf of Mexico before the well was successfully capped on July 15, 2010.  *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, --- F. Supp. ---, 2015 WL 225421, at *22 (E.D. La. Jan. 15, 2015) (Rec. Doc. 14021 ¶¶ 273, 277). Litigation ensued.

On May 13, 2010, Transocean, owner of the DEEPWATER HORIZON, instituted a limitation action under the Shipowner's Limitation of Liability Act, 46 U.S.C. 30501, et seq., in the Southern District of Texas  (the "Limitation Action").  The Limitation Action was later transferred to this Court pursuant to Rule F(9) of the Supplemental Rules for Admiralty and Maritime Claims (C.A. No. 10-2771, Rec. Doc. 207).  On August 10, the Judicial Panel on Multidistrict Litigation centralized cases arising from HORZION/Macondo disaster and transferred them to this Court pursuant to 28 U.S.C. § 1407, creating Multidistrict Litigation 2179 ("MDL 2179").  *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010) (Rec. Doc. 1).  Transfers via 28 U.S.C. 1407 are for "pretrial proceedings" and, as a general matter, may not be tried by the transferee court.  This is in contrast to the Limitation Action, which is before the Court for all purposes, including trial.

---

[3] This holding does not include Alabama's claim for natural resource damage under OPA, which is not a part of the Alabama Compensatory Trial.  The Court has not considered whether there is a right to a jury trial on  an OPA claim for natural resource damage.

On August 12, 2010, the State of Alabama filed two complaints in the Middle District of Alabama relating to its alleged losses due to the 2010 Gulf oil spill.[4]  Both actions were transferred to this Court under 28 U.S.C. § 1407 as "tag along" cases to MDL 2179.  (C.A. Nos. 10-4182, 10-4183).  On March 7, 2011, the Fifth Circuit issued its opinion in an unrelated matter, *Luera v. M/V Alberta*, 635 F.3d 181 (5th Cir. 2011), discussed below.  On April 5, 2011—four weeks after *Luera* was decided—the State amended both complaints in a single pleading ("the Amended Complaint"). (Rec. Doc. 1872).  The Amended Complaint asserted three categories of claims: general maritime law claims, OPA claims, and claims under Alabama state law.  Specific jurisdictional grounds were invoked for each category:  General maritime law claims were pled under admiralty jurisdiction[5] and designated as 9(h) claims,[6] OPA claims were pled under that Act's jurisdictional provision[7] and the federal question statute;[8] and state law claims were pled under supplemental jurisdiction.[9]  (Am. Compl. ¶¶ 33, 34, 35).  The Amended Complaint requested a jury "for any and all claims pleaded

---

[4] One complaint brought claims against certain BP entities.  The second complaint brought claims against Transocean, Anadarko, MOEX, Halliburton, Cameron, and M-I.

[5] U.S. Const. art. III, § 2 ("The judicial Power shall extend . . . to all Cases of admiralty and mariitme Jurisdiction"); 28 U.S.C. § 1333(1) ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of : (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."); 46 U.S.C. § 30101(a) ("The admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land.").

[6] *See* Fed. R. Civ. P. 9(h) ("If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.").

[7] 33 U.S.C. § 2717(b) (quoted below).

[8] 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

[9] 28 US.C. § 1367.

herein in which a jury trial is available by law."  (Am. Compl. ¶ 369).

Two weeks after filing the Amended Complaint, the State filed a claim in Transocean's Limitation Action ("Limitation Claim" or "Claim in Limitation").  (C.A. No. 10-2771, Rec. Doc. 323).  Alabama's Claim in Limitation sought relief for the same types of injuries asserted in its Amended Complaint, but it did not plead any claims under OPA and specifically averred that Transocean's "Complaint [in Limitation] does not apply to the State's claims arising under [OPA]." (Limitation Claim, p.4).  The Limitation Claim instead pled negligence, public nuisance, and trespass under general maritime law and/or state law.

A major part of the Court's management of MDL 2179 revolved around trying the Limitation Action to the bench, as it was a proceeding in admiralty and before the Court for all purposes, consisted of thousands of individual claims, and concerned many issues common to all parties in MDL 2179.  On that topic, Alabama's Limitation Claim stated:

> By filing this Answer and Claim in Limitation, the State intends to be—and upon information and belief, will be—a participant in the MDL Court's February 27, 2012[10] limitation trial under Rule 9(h) of the Federal Rules of Civil Procedure. By participating in the aforementioned trial, the State does not waive its right to, and its request for, a trial by jury on the claims raised in it[s] First Amended Complaint in MDL 2179.

(Limitation Claim ¶ 109).  The Amended Complaint similarly stated:

> The State recognizes that, as part of its duty to efficiently manage the thousands of claims arising from the *Deepwater Horizon* explosion and resulting Spill, the MDL Court has set a trial for February 27, 2012 to decide common issues of limitation and liability.  The State further recognizes that it will become a party to that trial once it files an answer and claim in the in the Transocean Limitation Action (Civil Action No. 10-2771).   The State intends to participate in the aforementioned limitation and liability trial, which upon information and belief will be conducted without a jury.

---

[10]  The trial was delayed for a year after BP and the Plaintiffs' Steering Committee agreed to two class settlements.

Neither the State's pleading of general maritime claims, nor its participation in the bench trial(s) on limitation and liability issues common to the MDL amounts to a waiver of the State's right to a jury trial. The State cannot be forced into a Hobson's Choice. Once the MDL Court determines the common factual and legal issues regarding limitation and liability, the State reserves its right to seek a remand of all remaining issues and claims that uniquely apply to the State of Alabama—including, but not limited to, the quantification of the State's damages—to the originating transferor district, the Middle District of Alabama, for a trial by jury.

(Amended Compl. ¶¶ 370-71).[11]

In November 2011, the Court dismissed Alabama's state-law claims, leaving its claims under general maritime law and OPA. (Rec. Doc. 4578). In the spring of 2013, the Court held the "Phase One" trial on the Limitation Action.[12] This was a bench trial that concerned, *inter alia*, determining fault among BP, Transocean, Halliburton, et al. for the blowout, explosion, and oil spill. The Phase One trial did not address issues particular to any one claimant. The State actively participated in the Phase One trial. The Court rendered its findings and conclusions in September 2014. *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 21 F. Supp. 3d 657 (E.D. La. 2014) (Rec. Doc. 13381-1). In addition to determining fault and liability issues for the disaster, the Court determined, *inter alia*, that three of the five Transocean entities[13] were not entitled to limit liability under the Limitation of Liability Act. *Id.* at 753-54. The Court also concluded that claims under OPA may not be limited under the Limitation of Liability Act. *Id.* at 753.

---

[11] Alabama filed four more complaints in April 2013. (C.A. Nos. 13-2645, 13-2646, 13-2647, 13-2813). These raised the same claims, pleaded the same jurisdictional bases, and contained essentially the same reservation language as the Amended Complaint. Therefore, these complaints are irrelevant for present purposes.

[12] The United States' case (C.A. no. 10-4536) under the Clean Water Act and OPA was also a part of the Phase One trial.

[13] Limitation was not an issue for two of the Transocean entities, because those entities were exonerated from liability under general maritime law. *Id.* at 751-52.

Meanwhile, the Court had issued a scheduling order to prepare some of the State's claims for trial ("Alabama Compensatory Trial").  (Rec. Doc. 13149).  That proceeding will concern Alabama's claims under OPA against BP for removal costs and damages, with the exception of "natural resource damages."  *See* 33 U.S.C. § 2702(b) (listing the types of removal costs and damages recoverable under OPA).  Specifically, the State seeks recovery for lost tax revenues, lost revenues to state departments, financial impact to state public services, state response and recovery costs, and physical property damage to state lands (not natural resource damage) and resulting increased public service costs.  (Alabama Opp'n 6, Rec. Doc. 12466).  Alabama demands a jury in the Alabama Compensatory Trial.  BP filed a motion to strike this demand.  (Rec. Doc. 12345).

## DISCUSSION

### A.    Rule 9(h) Elections

Before turning to the issues central to BP's motion, the Court addresses the State's jurisdictional elections in its Amended Complaint.

When a claim is within admiralty jurisdiction and also within some other federal subject matter jurisdiction, the plaintiff may designate whether the claim is in admiralty or not.  *See* Fed. R. Civ. P. 9(h).  A caveat here is that a claim cognizable only in admiralty "is an admiralty or maritime claims for those purposes, whether or not so designated."  *Id.*  One important consequence of the Rule 9(h) election is whether there is a right to a jury trial, as admiralty cases are traditionally tried to the bench.  *Luera v. M/V Alberta*, 635 F.3d 181, 188 (5th Cir. 2011).

In *Luera*, the Fifth Circuit held that an injured longshore worker who pled *in rem* claims under admiralty jurisdiction and *in personam* claims under diversity jurisdiction, and timely demanded a jury, was entitled to a jury trial on the *in personam* claims.  *Id.* at 195-96.  Furthermore,

6

the *in rem* claims also could be tried to jury, because the claims were "'based on one event, causing one set of injuries, to one victim.'"  *Id.*  The court found it significant that the plaintiff, although required to plead admiralty jurisdiction over the *in rem* claim (because such claims are exclusively under federal admiralty jurisdiction), made it clear that she did not wish to proceed in admiralty on the *in personam* claims and only asserted diversity as the basis for subject matter jurisdiction.  *Id.* at 190, 195.

A few weeks after *Luera* was decided, the State filed its Amended Complaint, wherein it mimicked the specific and distinct jurisdictional invocations used in *Luera*.  No one disputes that the State pled with the same level of precision as the plaintiff in *Luera*.  Therefore, assuming that (1) a right to a jury trial exists under OPA or the Seventh Amendment and (2) the State did not subsequently waive that right by filing a claim and/or participating in the Limitation Action, the Court finds that, as a matter of pleading, the State has invoked its right to a jury trial on its OPA claims.  The two  assumptions are addressed in turn below.

**B.       Right to a Jury Trial on OPA Claims**

As a general rule, though subject to several exceptions, civil cases before a federal court sitting in admiralty are tried without a jury.  *See Waring v. Clark*, 46 U.S. (5 How.) 441, 460 (1847); 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 21-10 (5th ed. 2011); *see also* Fed. R. Civ. P. 38(e).  BP's primary argument is tied to this premise.  It argues that OPA is an admiralty statute and that, absent express language to the contrary, statutory actions founded in admiralty do not contain a jury trial right.  The State responds that its claims under OPA give rise to federal question jurisdiction and, while it could have pled these claims in admiralty, it chose instead to plead them under federal question jurisdiction.  The State further argues that it is entitled to a jury trial on

its OPA claims because they are analogous to "Suits at common law," as that term is used in the Seventh Amendment.

Three courts have held that a jury is available for at least some claims or issues under OPA. *South Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 62, 64 (1st Cir. 2000); *United States v. Viking Res., Inc.*, 607 F. Supp. 2d 808, 832-33 (S.D. Tex. 2009); *Clausen v. M/V New Carissa*, 171 F. Supp. 1127, 1135 (D. Or. 2001). This Court reaches the same conclusion.

The right to a jury, if any, may be provided by statute or the Constitution. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999); *see also* Fed. R. Civ. P. 38. Courts look to the statute before engaging in a constitutional analysis. *Id.* The parties, however, agree that OPA is silent as to the availability of a jury trial. They are correct: OPA does not expressly provide for a jury. *Accord South Port*, 234 F.3d at 62. Nevertheless, OPA's jurisdictional provisions provide significant information relative to BP's argument that an OPA claim is *per se* a claim in admiralty. It is worthwhile, then, to examine these provisions before moving to the constitutional analysis.

Section 2717(b) states, "Except as provided in subsections (a) and (c) of this section, the United States district courts shall have exclusive original jurisdiction over all controversies arising under [OPA], without regard to the citizenship of the parties or the amount in controversy." 33 U.S.C. § 2717(b). One of the exceptions provides state courts with concurrent jurisdiction over OPA claims for removal costs and damages. *Id.* § 2717(c). In another section, 2751(e), OPA addresses the Act's relationship with admiralty jurisdiction and substantive admiralty law: "Except as otherwise provided in this Act, this Act does not affect– (1) admiralty and maritime law; or (2) the jurisdiction of the district courts of the United States with respect to civil actions under admiralty

and maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." *Id.* § 2751(e).

The fact that Section 2717(b) provides federal district courts with jurisdiction over OPA claims, without any reference to admiralty, while a different section of OPA discusses admiralty jurisdiction, implies that OPA is its own source of federal jurisdiction independent of admiralty. Another section of this Court drew the same inference when it determined that an OPA claim could be removed from state court. *See Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (noting that Section 2717(b)'s language "is consistent with federal question jurisdiction because it uses the 'arising under' language of 28 U.S.C. § 1331, expressly obviates the need for diversity jurisdiction under 28 U.S.C. § 1332, and does not invoke 'admiralty or maritime jurisdiction' under 28 U.S.C. § 1333," which supported the conclusion that OPA claims arise under federal question jurisdiction).

The point here is limited: When a plaintiff brings an OPA claim in federal court, she does not necessarily and/or automatically invoke admiralty jurisdiction.[14]  Indeed, it is conceivable that some oil spills will not give rise to admiralty jurisdiction, though they will create liability under

---

[14] The Court does not suggest that admiralty jurisdiction and federal question jurisdiction may not exist concurrently over an OPA claim.  The Court finds no such meaning in Section 2717(b), 2751(e)(2), or any other provision in OPA. *See also Waring*, 46 U.S. (5 How.) at 459 ("If, then, in . . . civil cases of which the [admiralty] court has jurisdiction . . ., ascertains it, neither a jury trial ***nor the concurrent jurisdiction of the common law courts*** can be a test for [admiralty] jurisdiction ." (emphasis added)); *Commonwealth of Puerto Rico v. M/V Emily S.*, No. 94-1019CCC, 1998 WL 938585 (D.P.R. 1998) ("The previous case law recognition of the *in rem* remedy, and the provisions of OPA which preserve admiralty and maritime law provide that an *in rem* remedy exists under OPA.").  The Court also does not suggest that a plaintiff could not elect, if she chose and the criteria for admiralty jurisdiction are present, to bring her OPA claim in admiralty.  Stated another way, the conclusion that OPA creates federal question jurisdiction *independent* of admiralty or diversity jurisdiction does not mean that a claim under OPA is *exclusively* within federal question jurisdiction.  As a final note, the Court makes clear that the present discussion concerns jurisdiction and the related right *vel non* to a jury, not the substantive law that will apply to a case or claim, conflicts of law, preemption., displacement, etc.  These are separate issues that may or may not depend on jurisdiction.  *See, e.g.,* Robert Force & Martin J. Norris, *The Law of Seamen* § 1:10 (5th ed. 2003, 2014) (discussing the "Reverse-*Erie*" doctrine).

9

OPA.[15]   In such a circumstance, the absence of admiralty jurisdiction will not preclude a plaintiff from asserting her OPA claim in federal court, as Congress provided federal courts with jurisdiction over this claim independent of admiralty.  These observations undercut severely BP's argument that an OPA claim and admiralty jurisdiction are one and the same.  However, these observations are not dispositive of the jury entitlement issue.[16]   As noted, OPA is silent on the right to a jury trial. Therefore, the Court turns to the constitutional analysis.

The Seventh Amendment states, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."  The Supreme Court has explained that the Amendment requires a jury trial on the merits in those actions that are analogous to "Suits at common law." *Tull v. United States*, 481 U.S. 412, 417 (1987).  "Prior to the Amendment's adoption, a jury trial was customary in suits brought in the English *law* courts.  In contrast, those actions that are analogous to 18th-century cases tried in courts of equity or admiralty do not require a jury trial." *Id.* (emphasis in original).  The Seventh Amendment provides a jury not only in common-law forms of actions, but also to new causes of action created by congressional enactment, "if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis v. Loether*, 415 U.S. 189, 194 (1974).  Thus, the Court must determine whether the cause of action "either was tried at law at the time of the founding or is at least analogous to one that was." *City of Monterey*, 526 U.S. at 708.  Two important factors to

---

[15] For example, suppose a motor vehicle on a highway or an onshore storage tank discharges oil into navigable waters.  Such a discharge would likely create liability under OPA.  *See* 33 U.S.C. §§ 2702(a), 2701(9) & (24), 2704(a)(4).   However, these incidents probably would not give rise to admiralty jurisdiction because the general character of the activities giving rise to the incidents do not show a substantial relationship to traditional maritime activity.  *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).

[16] As explained below, even if a case is not within admiralty jurisdiction, a jury may not be available if, for example, the case would have been tried in a court of equity at the time the Seventh Amendment was ratified.

consider are the nature of the cause of action and the nature of the remedy.  *Tull*, 481 U.S. at 417,

421 & n.6.[17]  Because the nature of the remedy is the more important factor, *Granfinanciera, S.A.*

*v. Nordberg*, 492 U.S. 33, 42 (1989), the Court will examine it first.

Alabama seeks a remedy that is largely, if not entirely, legal.  The State seeks compensatory

damages in the form of money.  "Generally, an action for money damages was the traditional form

of relief offered in the courts of law."  *Chauffers, Teamsters & Helpers, Local No. 391 v. Terry*, 494

U.S. 558, 570 (1990) (quotations omitted).  Although monetary relief does not always equal legal

relief, *id.*, most or all Alabama's claims indeed seek legal relief.  The only exception may be the

State's claim for removal costs.  *See* 33 U.S.C. § 2702(b)(1).[18]  The Southern District of Texas

concluded that removal costs under OPA are essentially a form of restitution, which is an equitable

remedy.  *Viking Resources*, 607 F. Supp. 2d at 830.  That decision was based on cases interpreting

response costs under the Comprehensive, Environmental Response, Compensation, and Liability Act

("CERCLA").  However, *Viking Resources* noted that this conclusion is open to question given the

Supreme Court's discussion in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204

(2002).  607 F. Supp. 2d at 829 n.76, 830 n.79; *see also AMW Materials Testing, Inc. v. Town of*

*Babylon*, 584 F.ed 436, 452 (2d Cir. 2009) (concerning CERCLA; dicta).

Knudson explains that "not all relief falling under the rubric of restitution is available in

---

[17] Even if a claim belongs in the law category, courts sometimes ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791.  *City of Monterey*, 526 U.S. at 708 (quotations omitted).  This part of the inquiry is not at issue.

[18] OPA defines "removal costs" as "the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of a discharge of oil, the costs to prevent, minimize, or mitigate oil pollution from such an incident" and "removal" as "containment and removal of oil or a hazardous substance from water and shorelines or the taking of other actions as may be necessary to minimize or mitigate damage to the public health or welfare, including, but not limited to, fish, shellfish, wildlife, and public and private property, shorelines, and beaches." 33 U.S.C. § 2701(30), (31).

equity" and that restitution was historically available in certain cases at law.  534 U.S. at 212. Whether restitution is legal or equitable depends "on the basis for the plaintiff's claim and the nature of the underlying remedies sought."  *Id.* at 213 (quotations and brackets omitted).

> In cases in which the plaintiff could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution at law through an action derived from the common-law writ of assumpsit.  In such cases, the plaintiff's claim was considered legal because he sought to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money.

> In contrast, a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.  A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner.  But where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the defendant.  Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Id.* at 213-14 (quotations, citations, and brackets omitted).

Here, the State does not seek to recapture something that BP wrongfully possesses.  Rather, the action attempts to impose personal liability on the defendant for the expenses the State has incurred in responding to the oil spill.  The Court finds that the State's claims for removal and response costs seek legal, not equitable, relief.

The conclusion that the remedies sought are legal means that the State's claims are not akin

to a suit in equity.[19]  However, this conclusion alone does not establish that the claims are analogous to "Suits at common law."   This is because "[i]n large numbers of cases the relief sought in admiralty is simple money damages, indistinguishable from the remedy afforded by the common law." Fed. R. Civ. P. 9, Advisory Committee Notes, 1966 Amendment.[20]  However, if the Court is correct that OPA Section 2717(b) establishes federal jurisdiction independent of admiralty, *see* discussion *supra*, then the only remaining option is "Suits at common law"—equity and admiralty have been eliminated.

Turning to the nature of the action, the parties debate whether the State's claims would have been outside admiralty jurisdiction at the time the Seventh Amendment was adopted.  Most, if not all, of the State's claims seek redress for injuries incurred on or to land, although caused by a vessel on the high seas.  Such claims would have been outside English admiralty courts in the late 18th century.  *See Waring*, 46 U.S. (5 How.) at 452-53 (listing "cases of collision and injuries to property or persons **on the high seas**" among cases over which the English admiralty courts exercised jurisdiction when the Constitution was adopted); *see also* 1 *Benedict on Admiralty* § 51.  Admiralty jurisdiction in England did not include ship-to-shore injuries until a series of statutes between 1840 and 1868 expanded the jurisdiction.  *See* H.R. Conf. Rep. 80-1523 at 2 (1948); 1 *Benedict on Admiralty* § 52; 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 1-5 (5th ed. 2011).[21]

---

[19]  Equity is only at issue under the "nature of the remedy" inquiry of the Seventh Amendment analysis.  No party argues that the nature of the action is equitable.

[20]  The Court notes that there are also "distinctively maritime remedies" that are unknown to the common law, such as actions *in rem*.  Fed. R. Civ. P. 9, Advisory Committee Notes, 1966 Amendment.  The State's OPA claims do not seek any of these remedies.

[21]  BP cites English cases in an attempt to show that English admiralty jurisdiction included wrongs committed on land or injuries incurred on land.  However, those cases concern select subject matters, such as prize and seaman's wages, that did not follow the strict locality rule that applied to most tort cases.  *See, e.g.,* Steven L. Snell, *Courts of Admiralty and the Common Law* 172-74 (2007) ("In 1625, the High Court [of Admiralty] began to separate its records

Assuming without deciding that this analysis turns on the scope of American, as opposed to English, admiralty jurisdiction in the late 18th century, the State's claims would still be more analogous to a common law suit than a suit in admiralty. *Accord South Port*, 234 F.3d at 62-64. While American courts of the 19th century determined that the scope of admiralty jurisdiction was not limited to the English definition at the time the Constitution was adopted, *see, e.g.*, *Waring*, 46 U.S. (5 How.) at 459, it appears that even American courts would have found admiralty tort jurisdiction lacking in this matter until 1948, when the Admiralty Extension Act, 46 U.S.C. § 30101, was passed. *See The Plymouth*, 70 U.S. (3 Wall.) 20, 36 (1965) (no admiralty jurisdiction in claim by storehouse against vessel for fire that started on vessel and spread to wharf and storehouses); *but cf. The Admiral Peoples*, 295 U.S. 649 (1935) (suit by passenger who fell from gangplank onto dock within admiralty jurisdiction).

Furthermore, Alabama's claims are analogous to the common law writs of trespass and trespass on the case. "Trespass remedied direct, forcible tortious injuries, while the later developed trespass on the case remedied indirect or consequential harms. Claims brought pursuant to these writs and seeking money damages were triable to juries at common law." *City of Monterey*, 526 U.S. at 729 (Scalia, J., concurring) (citations omitted).

BP argues that this analogy is inappropriate insofar as it is applied to the State's claims for lost tax revenues and increased public expenditures, because no party has located any common law

---

in prize cases from those in instance cases, and soon thereafter differences in the two jurisdictions began to evolve. . . . In instance matters, the Court's jurisdiction was limited to matters arising beyond the boundaries of English counties; no such limitation applied to prize cases. Even if goods had been removed from a vessel and taken ashore on English soil, the Court retained jurisdiction. Subject matter—not locality—governed jurisdiction in prize cases."); *id.* at 155-56 ("By 1705, the debate over whether the High Court of Admiralty had jurisdiction over wage-disputes had ended; Parliament had granted the Court explicit cognizance over these claims, eliminating the threat of [writs of] prohibition [from the common law courts]."); *Waring*, 46 U.S. (5 How.) at 459 (explaining that admiralty jurisdiction in England over contract cases was limited in the early 17th century to contracts made and executed on the sea, but gradually changed to a subject- matter test, while admiralty tort jurisdiction continued to be determined by locality).

actions "analogous to a sovereign seeking lost taxes based on a private party defendant injuring a private party plaintiff." (BP Mot. p.19, Rec. Doc. 12345-1). BP attempts to support its position by citing *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48-49 (1937), which BP characterizes as "holding that there was no Seventh Amendment jury trial right where the 'instant case is not a suit at common law or in the nature of such a suit. The proceeding is one unknown to the common law.'" (BP Mot. p. 19) (quoting *Jones & Laughlin Steel Corp.*, 301 U.S. at 48-49). BP ignores the context of *Jones & Laughlin*. Later cases make clear that *Jones & Laughlin* concerned an administrative proceeding, where the Seventh Amendment applies differently than it does in court proceedings. *See Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 453-55 (1977); *Curtis*, 415 U.S. at 194. *Jones & Laughlin* is also distinguishable on the grounds that the remedy in that case, although for money damages, was incidental to injunctive relief (reinstatement of a dismissed employee) and therefore would have been obtainable only in a court of equity. *Id.* at 453 n.10. By contrast, the relief sought by the State is not incidental to injunctive or other equitable relief. Finally, the absence of a common law action "analogous to a sovereign seeking lost taxes based on the private party defendant injuring a private party plaintiff" holds little persuasive value considering the Supreme Court's statements that "characterizing the relief sought is more important than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial," *Tull* 481 U.S. at 421 (quotations and brackets omitted), and "when Congress provides for enforcement of [new] statutory rights in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law." *Curtis*, 415 U.S. at 194.

For these reasons, the Court finds that the Seventh Amendment provides a jury trial on the State's OPA claims in the Alabama Compensatory Trial.

**C.      Effect of the Limitation Action**

The discussion above considered the State's OPA claims without regard to Transocean's Limitation Action. The issue here is what effect did the State's participation in the Limitation Action have on the State's jury demand on its OPA claims.  BP argues that limitation actions are admiralty proceedings and tried without a jury, that Alabama was a willing participant in the Limitation Action, that the Court can resolve all claims in a limitation action including claims against a non-petitioner like BP, and that when limitation is denied the court has discretion to either retain jurisdiction and resolve all claims or remit the claimants to another forum.  The State responds that it did not plead OPA claims in the Limitation Action, OPA claims are not subject to limitation under the Limitation of Liability Act, and, in any respect, once limitation is denied, it is the claimant's discretion, not the Court's, whether the claim should continue in the limitation proceeding or the original forum.  The Court need only address the third part of the State's argument.

Limitation actions are admiralty proceedings and conducted without a jury.  This frequently is in tension with a plaintiff's right to a jury trial under the "savings to suitors" clause in the admiralty jurisdiction statute. *See* 33 U.S.C. 1333(1); *Lewis v. Lewis & Clark Marine*, *Inc.*, 531 U.S. 438, 448 (2001).  If limitation is denied, as occurred in Transocean's Limitation Action, the Court may retain jurisdiction and continue to adjudicate all claims.  *See Just v. Chambers*, 312 U.S. 383, 386-87 (1941).  However, it is the claimants' choice, not the vessel owner's, whether to remain in the limitation action.  As the Fifth Circuit explained,

> We suspect that back of this strenuous effort to get the right to try these actions first in the state court is the apprehension that unless it is done [in] this fashion the

plaintiff-claimants will be irrevocably denied their right to jury trials even though they succeed in their confident expectation of defeating limitation on the merits. But this is a misapprehension erroneously deduced from the acknowledged power of the admiralty court to adjudicate the whole case and grant full relief even though limitation is denied. This is a protection to those compelled under the monition and restraining orders to litigate in an unchosen forum. ***The claimants are the ones to determine whether such full relief from the admiralty is desired or needed. If they do not desire it, the admiralty court in its decree denying the right to limitation can make certain that they are free to pursue the petitioner in any other forum having requisite jurisdiction.***

*Pershing Auto Rentals, Inc. v. Gaffney*, 279 F.2d 546, 552 (5th Cir. 1960) (footnote omitted) (emphasis added).  Other circuits have reached similar conclusions.  *See, e.g.*, *Wheeler v. Marine Navigation Sulphur Carriers Inc.*, 764 F.2d 1008, 1011 (4th cir. 1985).  This view is consistent with the concept that "the scope of exclusive jurisdiction [under the Limitation of Liability Act] is proportional to the federal interest in protecting the vessel owner's right to seek limitation of liability." *Lewis*, 531 U.S. at 453. Accordingly, the State's participation in the Limitation Action provides no basis to strike their jury demand.

## CONCLUSION

For the reasons set forth above,

IT IS ORDERED that BP's Motion to Strike the State of Alabama's Jury Demand (Rec. Doc. 12345) is DENIED.

IT IS FURTHER ORDERED that Alabama's Motion to Strike Expert Opinions (Rec. Doc. 12387) is DENIED.

New Orleans, Louisiana, this 30th day of March, 2015.

United States District Judge

17