

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: Oil Spill by the Oil Rig        MDL NO. 2179
       "Deepwater Horizon" in the Gulf
       of Mexico, on April 20, 2010        SECTION J


Applies to: *All Cases*        JUDGE BARBIER
       MAGISTRATE JUDGE SHUSHAN

---

**REPORT BY THE CLAIMS ADMINISTRATOR OF THE DEEPWATER HORIZON ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT ON THE STATUS OF CLAIMS REVIEW**

| STATUS REPORT NO. | 31 | DATE | MARCH 31, 2015 |
| --- | --- | --- | --- |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In re:  Oil Spill by the Oil Rig          MDL NO. 2179
        "Deepwater Horizon" in the Gulf
        of Mexico, on April 20, 2012        SECTION J

Applies to: *All Cases*                JUDGE BARBIER
                                 MAGISTRATE JUDGE SHUSHAN

## REPORT BY THE CLAIMS ADMINISTRATOR OF THE DEEPWATER HORIZON ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT ON THE STATUS OF CLAIMS REVIEW

### STATUS REPORT NO. 31, DATED MARCH 31, 2015

The Claims Administrator of the Deepwater Horizon Economic and Property Settlement Agreement (Settlement Agreement) submits this Report to inform the Court of the status of the implementation of the Settlement Agreement as of February 28, 2015.  The Claims Administrator will provide any other information in addition to this Report as requested by the Court.

      I.        STATUS OF THE CLAIMS REVIEW PROCESSES AND CLAIM PAYMENTS

    A.   Claim Submissions.

      1.    Registration and Claim Forms.

The Claims Administrator opened the Settlement Program with needed functions staffed and operating on June 4, 2012, just over 30 days after the Claims Administrator's appointment. The Claims Administrator's Office and Vendors (CAO)[1] have received 233,351 Registration Forms and 297,085 Claim Forms since the Program opened on June 4, 2012, as shown in the Public Statistics for the Deepwater Horizon Economic and Property Damages Settlement (Public Report) attached as Exhibit A.  Additionally, claimants have begun, but not fully completed and submitted,

---

[1] "Claims Administrator's Office", as used within this report, refers to the Claims Administrator and, where applicable, Court-Supervised Settlement Program vendors working with and under the Claims Administrator.

11,929 Claim Forms.  The Forms are available online, in hard copy, or at Claimant Assistance Centers located throughout the Gulf.

Of the total Claim Forms submitted and the Claim Forms begun but not fully completed and submitted, 8.2% have been filed or are being filed within the Seafood Program, 16.8% have been filed or are being filed within the Individual Economic Loss (IEL) framework, and 39.2% have been filed or are being filed within the Business Economic Loss (BEL) framework (including Start-Up and Failed BEL Claims).  *See* Ex. A, Table 2.  Deepwater Horizon (DWH) staff at the Claimant Assistance Centers assisted in beginning and/or completing 38,007 of these Claim Forms.  *See* Ex. A, Table 3.

On December 8, 2014, the United States Supreme Court declined request for a review of the Fifth Circuit's rulings upholding the District Court's Final Approval Order of the Settlement Agreement. Accordingly, the Effective Date of the Settlement Agreement is December 8, 2014, and the final deadline for filing all claims other than those that fall into the Seafood Compensation Program is June 8, 2015.

### 2.  Minors, Incompetents, and Deceased Claimants.

The table below describes the claims filed on behalf of minors, incompetents, and deceased claimants in the Settlement Program.

| Table 1.  Minors, Incompetents, and Deceased Claimants. | | | | | |
|---|---|---|---|---|---|
| | Status | New Since Last Report | No Longer a Minor/Incompetent or Reclassified as an Estate Since Last Report | Change Since Last Report | Total Claimants |
| A.  Minor Claimants | | | | | |
| 1. | Claims Filed | 0 | 0 | 0 | 54 |
| 2. | Claims Within GADL Review | 0 | 0 | 0 | 5 |
| 3. | Eligible for Payment | 1 | 0 | +1 | 19 |
| 4. | Approval Orders Filed | 0 | N/A | 0 | 15 |

| B.   Incompetent Claimants | | | | |
|---|---|---|---|---|
| 1. | Claims Filed | 0 | 0 | 0 | 132 |
| 2. | Claims Within GADL Review | 0 | 0 | 0 | 2 |
| 3. | Eligible for Payment | 1 | 0 | +1 | 71 |
| 4. | Approval Orders Filed | 1 | N/A | +1 | 64 |
| C.   Deceased Claimants | | | | |
| 1. | Claims Filed | 5 | 2 | +3 | 616 |
| 2. | Eligible for Payment | 16 | 2 | +14 | 269 |
| 3. | Approval Orders Filed | 7 | 0 | +7 | 200 |

### 3.   Third Party Claims.

The CAO receives, processes, and pays the claims and/or liens asserted by attorneys, creditors, governmental agencies, or other third parties (Third Party Claims) against the payments to be made by the CAO to eligible claimants under the Settlement Agreement in accordance with Court Approved Procedure Order No. 1 (as entered September 9, 2012, and amended March 11, 2013).

The CAO requires a third party claimant to submit enforcement documentation soon after the initial Third Party Claim assertion.  If a Third Party Claim assertion does not contain claimant-identifying information and/or the required enforcement documentation, the CAO sends the third party claimant an Acknowledgment Notice providing the third party claimant 20 days to submit the claimant-identifying information and/or the specified documentation required to support the Third Party Claim.   If the third party claimant fails to submit the responsive information/documentation within 20 days, the CAO disallows the Third Party Claim and issues a Disallowed Notice to the third party claimant.  The CAO issues a Notice of Enforced Third Party Claim to each claimant and third party claimant as soon as the CAO receives sufficient enforcement documentation, regardless of where any underlying Settlement Program Claim is in the review process.  The claimant may, but is not required to, object to the Third Party Claim at this time.  After the CAO sends an Eligibility Notice to the affected Settlement Program Claimant

against whom an Enforced Third Party Claim has been asserted (meaning that both the underlying

claim and the Third Party Claim are payable), the CAO sends the claimant/claimant's attorney and

the third party claimant a Notice of Valid Third Party Claim, and the claimant has 20 days to notify

the CAO of any objection to the Third Party Claim.

The CAO continues to process and pay Third Party Claims as reflected in Table 2 below.

| | Table 2.  Third Party Claims. | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Type of Third Party Claim ("TPC")** | **TPCs Asserted** | **TPCs Asserted Against Claimants With a DHECC ID** | **TPCs Asserted Against Payable Claims** | **Valid TPCs Asserted Against Payable Claims** | **Claims with TPCs Paid/ Ready for Payment (TPClmt)** | **Claims with TPCs Paid/ Ready for Payment (Clmt)** |
| 1. | **Attorney's Fees** | 2,618 | 2,426 | 542 | 343 | 364 | 659 |
| 2. | **IRS or State Tax Levies** | 1,083 | 899 | 87 | 73 | 59 | 95 |
| 3. | **Individual Domestic Support Obligations** | 448 | 305 | 116 | 84 | 89 | 117 |
| 4. | **Blanket State-Asserted Multiple Domestic Support Obligations** | 4 states | N/A | N/A | N/A | 0 | 0 |
| 5. | **3rd Party Lien/Writ of Garnishment** | 995 | 451 | 47 | 22 | 13 | 13 |
| 6. | **Claims Preparation/ Accounting** | 4,729 | 4,543 | 254 | 215 | 154 | 168 |
| 7. | **TOTAL** | **9,873** | **8,624** | **1,046** | **737** | **679** | **1,052**[2] |

The CAO sends a Notice of Third Party Claim Dispute to all parties involved in a disputed

Valid Third Party Claim.  If the claimant and third party claimant are unable to resolve their dispute

by agreement and if the dispute is over a Third Party Claim for attorney's fees or fees associated

with work performed in connection with a Settlement Program Claim, the claimant and third party

claimant may participate in the Court-approved Third Party Claims Dispute Resolution Process

and will receive a Request for Third Party Claim Dispute Resolution Form with the Notice of Third

---

[2] A Third Party Claim can be asserted against one or more Settlement Program claims.  Additionally, if the Third Party Claim amount is in dispute, the CAO pays the claimant the undisputed portion of the Settlement Payment.  For these reasons, this total may not be equal to the total of the two preceding columns.

Party Claim Dispute.  Table 3 provides additional information about participation in the Third Party Claims Dispute Resolution Process.

| Table 3.  Third Party Claims Dispute Resolution Process. | | | | |
|---|---|---|---|---|
| Eligible Disputes | Request Forms Received for Eligible Disputes | Records Provided to Adjudicator | Disputes Withdrawn | Final Decisions[3] |
| 119 | 94 | 65 | 60 | 31 |

If the dispute is over a Third Party Claim asserted by a state or federal agency, the claimant must resolve the dispute in accordance with the applicable agency's procedures.  If the dispute is over the amount of a Third Party Claim based on a final judgment of a state or federal court, the CAO must receive either a written agreement between the parties or a copy of a subsequent modifying court order to validate the claimant's objection;[4] otherwise, the CAO will issue payment in satisfaction of the judgment to the third party claimant.

To date, the CAO has removed 1,975 lien holds due to parties releasing their Third Party Claims or resolving disputes.

**B.  Claims Review.**

The CAO completed its first claim reviews and issued its first outcome notices on July 15, 2012, and its first payments on July 31, 2012.  There are many steps involved in reviewing a claim so that it is ready for a notice.

**1.  Identity Verification.**

The Claimant Identity Verification review is the first step in the DWH claims review process.  The Identity Verification team conducts searches based on the Taxpayer Identification

---

[3] Several factors affect when a Dispute is ripe for the Adjudicator to issue a Final Decision, including whether the Adjudicator has requested additional documentation or granted a Telephonic Hearing.
[4] For a claimant to object to a Third Party Claim based on a final judgment of a state or federal court, the CAO requires additional evidence beyond a mere objection to delay or deny payment of the court-ordered debt.

Numbers (TIN) of claimants to confirm that both the claimant's name and TIN exist and correspond with each other. The Identity Verification team has initiated verifications for 206,192 claimants. Of those, the CAO has matched the TIN and claimant's name to public records databases and verified identity for 112,471 claimants from the initial query through LexisNexis and/or Dun & Bradstreet. The CAO has reviewed the remaining 93,721 claimants to determine whether claimant identity could be verified after searching for typographical errors and name changes or after reviewing official documentation from the Internal Revenue Service or Social Security Administration. Of the remaining 93,721 claimants, the CAO has verified the identity of 89,522.

If the CAO cannot verify a claimant's identity after review, but it appears that additional documentation may allow the CAO to verify the claimant's identity, the CAO issues a Verification Notice to the claimant requesting such documentation. Verification Notice types include an SSN Notice, an ITIN Notice, and an EIN Notice. Claimants may receive more than one type of Verification Notice depending on the claimant's Taxpayer Type or if the claimant requests a change in his Taxpayer Type or TIN.

The CAO reviews the documentation that claimants submit in response to the Verification Notice to determine whether it is sufficient to verify identity. The table below contains information on the number of claimants verified by the CAO during an initial Identity Verification review, in addition to the type and number of TIN Verification Notices issued when the CAO could not verify identity after the initial review.

| Table 4.  Identity Verification Review Activity. | | | | |
|---|---|---|---|---|
| | Claimant Status | Total Claimants | Total Claimants Verified After Review/Notice | Claimants Remaining to be Verified |
| 1. | Under Review | 563 | N/A | 563 |
| 2. | Verified During Review | 70,760 | 70,760 | N/A |
| 3. | SSN Notice Issued After Review | 2,983 | 2,307 | 676 |
| 4. | ITIN Notice Issued After Review | 404 | 353 | 51 |

| 5. | EIN Notice Issued After Review | 18,702 | 15,884 | 2,818 |
|---|---|---|---|---|
| 6. | EIN & ITIN Notice Issued After Review | 44 | 31 | 13 |
| 7. | EIN & SSN Notice Issued After Review | 260 | 183 | 77 |
| 8. | EIN, ITIN & SSN Notice Issued After Review | 5 | 4 | 1 |
| 9. | **Total** | **93,721** | **89,522** | **4,199** |

The following table contains information about the average time in days for claimants to provide documentation sufficient to verify the claimant's identity after receiving a Verification Notice.

| Table 5.  Average Time to Cure Verification Notice. | | |
|---|---|---|
| | **Notices Type** | **Average Days to Cure** |
| 1. | SSN Notice | 55 |
| 2. | ITIN Notice | 31 |
| 3. | EIN Notice | 37 |

When a claimant submits a Subsistence claim stating that he or she fished or hunted to sustain his or her basic personal and/or family's dietary needs, the CAO verifies the identities of the claimed family members.  To do so, the CAO attempts to match each claimed family member's name and TIN to ensure that the family member exists and that the family member was not deceased prior to or at the time of the Spill or is not an overlapping dependent already identified. The CAO first attempts to match each family member's name and TIN to public records databases through LexisNexis.  To date, the CAO has sent 85,455 family members' names and TINs, associated with 27,502 claims, to LexisNexis for verification.  If a claimed family member's identity cannot be verified through LexisNexis, the CAO reviews the claim file to determine whether the claimed family member's identity can be verified using information contained within the file.   After each claimed family member's identity has been verified or reviewed, the Subsistence team reviews the claim to determine eligibility for payment.

7

| Table 6.  Subsistence Family Member Identity Verification Activity. | | | | | |
|---|---|---|---|---|---|
| | **Awaiting Review** | **Change from Last Report** | **Reviewed** | **Change from Last Report** |
| **1.** | **Number of Claims** | 0 | 0 | 15,919 | 822 |
| **2.** | **Number of Family Members** | 0 | 0 | 67,866 | 3,171 |

**2.  Employer Verification Review (EVR).**

The EVR process ensures that all employees of the same business are treated uniformly and that each business is placed in the proper Zone.  The review also walks through the analysis necessary to assign the proper NAICS code to a business.  The EVR team has completed the EVR analysis for 262,067 businesses and rental properties.

From February 1, 2015, through February 28, 2015, the team completed the EVR process for 3,397 businesses and rental properties, and 3,228 business and rental properties were identified for review.  The CAO continues to perform its Employer Verification Review for new businesses and rental properties on a first-in, first-out basis.

**3.  Exclusions.**

The Exclusions review process ensures that claims and claimants excluded under the Settlement Agreement are appropriately denied.  The Exclusions team guides the reviewers and the EVR team when questions arise during the Exclusion review.  Table 7 below shows the number of Denial Notices issued to date for each Exclusion Reason and the team responsible for making such a determination.

| Table 7.  Exclusions. | | | | |
|---|---|---|---|---|
| | **Exclusion Reason** | **Team Responsible** | **Denial Notices Since Last Report** | **Total Denial Notices** |
| **1.** | **GCCF Release** | | 11 | 7,856 |
| **2.** | **BP/MDL 2179 Defendant** | **Exclusions** | 0 | 416 |
| **3.** | **US District Court for Eastern District of LA** | | 0 | 23 |
| **4.** | **Not a Member of the Economic Class** | | 14 | 424 |

| Table 7.  Exclusions. | | | | |
|---|---|---|---|---|
| | **Exclusion Reason** | **Team Responsible** | **Denial Notices Since Last Report** | **Total Denial Notices** |
| 5. | **Bodily Injury** | **Claims Reviewers** | 0 | 6 |
| 6. | **BP Shareholder** | | 0 | 8 |
| 7. | **Transocean/Halliburton Claim** | | 0 | 0 |
| 8. | **Governmental Entity** | **EVR** | 5 | 886 |
| 9. | **Oil and Gas Industry** | | 26 | 1,423 |
| 10. | **BP-Branded Fuel Entity** | | 18 | 263 |
| 11. | **Menhaden Claim** | | 1 | 20 |
| 12. | **Financial Institution** | | 11 | 357 |
| 13. | **Gaming Industry** | | 1 | 738 |
| 14. | **Insurance Industry** | | 8 | 248 |
| 15. | **Defense Contractor** | | 0 | 396 |
| 16. | **Real Estate Developer** | | 6 | 453 |
| 17. | **Trust, Fund, Financial Vehicle** | | 0 | 18 |
| 18. | **Total Denial Notices from Exclusions** | | **101** | **13,535** |

## 4.  Claimant Accounting Support Reviews.

A special team handles Claimant Accounting Support (CAS) reviews.  CAS reimbursement is available under the Settlement Agreement for IEL, BEL, and Seafood claims. After a claim has been determined to be payable and the Compensation Amount has been calculated, the CAS team reviews accounting invoices and CAS Sworn Written Statements submitted by the claimant.  Table 8 includes information on the number of CAS reviews the CAO has completed to date, whether the Accounting Support documentation was complete, and the dollar amounts reimbursed for each Claim Type.

| Table 8.  Claimant Accounting Support. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Claim Type | CAS Review Results | | | | Total CAS Review Results | | CAS Dollar Amount Reimbursed | |
| | | Complete | | Incomplete | | | | | |
| | | Since Last Report | Total to Date | Since Last Report | Total to Date | Since Last Report | Total to Date | Since Last Report | Total to Date |
| 1. | BEL | 594 | 15,214 | 77 | 1,952 | 671 | 17,166 | $781,327.52 | $20,966,744.41 |
| 2. | IEL | 12 | 3,235 | 6 | 713 | 18 | 3,948 | $228.56 | $393,085.08 |
| 3. | Seafood | 1 | 3,942 | 1 | 813 | 2 | 4,755 | $2,325.30 | $1,608,060.17 |
| 4. | TOTAL | 607 | 22,391 | 84 | 3,478 | 691 | 25,869 | $783,881.38 | $22,967,889.66 |

### 5.   Quality Assurance Review.

The Quality Assurance (QA) process addresses three fundamental needs of the Settlement Program: (a) it ensures that all claims reviewed within the system environment are reviewed in accordance with the provisions of the Settlement Agreement by targeting anomalous claim results through data metrics analysis; (b) it provides a mechanism to monitor reviewer performance and the tools necessary to efficiently and effectively provide feedback to reviewers; and (c) it identifies areas of review resulting in high discrepancy rates that require retraining or refined review procedures and data validations.

The CAO has implemented a reviewer follow-up process for all claim types reviewed within the system environment.  The CAO provides daily follow-up to reviewers in the event a QA review of a particular claim produces a result different than that of the original review.  The CAO also identifies specific reviewers who may require retraining and whether there are issues that warrant refresher training for all reviewers.  Table 9 shows, by Claim Type, the number of claims identified for QA review, as well as the number of QA reviews which were completed, the number in progress, and the number awaiting review.

| | Table 9. Quality Assurance Reviews.[5] | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Claim Type** | **Total Reviews Needing QA To Date** | **QA Reviews Completed** | **% of QA Reviews Completed** | **QA Reviews in Progress** | **Claims Awaiting QA Review** | **QA Reviews Completed Since Last Report** |
| 1. | Seafood | 25,501 | 25,396 | 99.6% | 69 | 36 | 13 |
| 2. | IEL | 35,992 | 34,834 | 96.8% | 608 | 550 | 364 |
| 3. | BEL | 37,475 | 36,767 | 98.1% | 319 | 389 | 1,174 |
| 4. | Start-Up BEL | 3,066 | 3,024 | 98.6% | 14 | 28 | 144 |
| 5. | Failed BEL | 2,677 | 2,637 | 98.5% | 9 | 31 | 75 |
| 6. | Coastal RP | 22,323 | 22,292 | 99.9% | 13 | 18 | 187 |
| 7. | Wetlands RP | 8,647 | 8,535 | 98.7% | 29 | 83 | 102 |
| 8. | RPS | 963 | 963 | 100.0% | 0 | 0 | 4 |
| 9. | Subsistence | 58,165 | 50,127 | 86.2% | 842 | 7,196 | 3,860 |
| 10. | VoO | 7,948 | 7,944 | 99.9% | 0 | 4 | 6 |
| 11. | VPD | 1,540 | 1,527 | 99.2% | 2 | 11 | 1 |
| 12. | **TOTAL** | **204,297** | **194,046** | **95.0%** | **1,905** | **8,346** | **5,930** |

6. **Claim Type Review Details.**

Table 10 provides information, by Claim Type, on the number of claims filed, the number of claims that have been reviewed to Notice, the number of claims remaining to be reviewed to Notice, and the number of claims reviewed to either a Notice or "Later Notice" to date. Table 10 divides the claims reviewed to a "Later Notice" into separate sections: (1) claims receiving a Notice based on CAO review following the submission of additional materials by a claimant in response to an Incompleteness Notice, and (2) claims receiving a Notice following a Reconsideration review conducted by the CAO.

---

[5] Table 9 only includes system generated data that arise from Quality Assurance reviews of initial claim reviews that are performed within the confines of the system environment. Separate from the initial claim review, there are numerous ancillary steps within the overall claim review process in which Quality Assurance activities and measures are performed outside of the system environment.

| Table 10. Throughput Analysis of Claims Filed and Notices Issued. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **A. Claims Reviewed to First Notice** | | | | | | | | | |
| | Claim Type | **Status of All Claims Filed** | | | | | **Productivity From 2/1/15 Through 2/28/15** | | |
| | | Total Claims Filed To Date | Reviews Completed to Notice or Closed | | Claims Remaining to Review | | New Claims Filed | Avg. Daily Claims Filed | Reviews Completed to First Notice | Avg. Daily Reviews to First Notice |
| 1. | **Seafood** | 24,773 | 24,504 | 98.9% | 269 | 1.1% | 20 | <1 | 22 | <1 |
| 2. | **IEL** | 45,289 | 41,346 | 91.3% | 3,943 | 8.7% | 111 | 4 | 50 | 2 |
| 3. | **IPV/FV** | 302 | 292 | 96.7% | 10 | 3.3% | 1 | <1 | 3 | <1 |
| 4. | **BEL** | 108,254 | 74,965 | 69.2% | 33,289 | 30.8% | 617 | 22 | 2,072 | 74 |
| 5. | **Start-Up BEL** | 5,994 | 4,933 | 82.3% | 1,061 | 17.7% | 56 | 2 | 158 | 6 |
| 6. | **Failed BEL** | 4,062 | 3,451 | 85.0% | 611 | 15.0% | 39 | 1 | 77 | 3 |
| 7. | **Coastal  RP** | 37,895 | 37,552 | 99.1% | 343 | 0.9% | 221 | 8 | 212 | 8 |
| 8. | **Wetlands RP** | 18,721 | 11,256 | 60.1% | 7,465 | 39.9% | 282 | 10 | 309 | 11 |
| 9. | **RPS** | 1,745 | 1,733 | 99.3% | 12 | 0.7% | 6 | <1 | 16 | <1 |
| 10. | **Subsistence** | 39,809 | 25,220 | 63.4% | 14,589 | 36.6% | 509 | 18 | 3,524 | 126 |
| 11. | **VoO** | 8,784 | 8,744 | 99.5% | 40 | 0.5% | 4 | <1 | 7 | <1 |
| 12. | **VPD** | 1,457 | 1,418 | 97.3% | 39 | 2.7% | 4 | <1 | 4 | <1 |
| 13. | **TOTAL** | **297,085** | **235,414** | **79.2%** | **61,671** | **20.8%** | **1,870** | **67** | **6,454** | **231** |
| **B. Claims Reviewed to Later Notice** | | | | | | | | | |
| | Claim Type | **Initial or Preliminary Incompleteness Response** | | | **Follow-Up Incompleteness Responses** | | | **Requests for Reconsideration** | | |
| | | Total Responses | Claims with Later Notice | Remaining Claims | Total Responses | Claims with Later Notice | Remaining Claims | Total Requests | Claims with Later Notice | Remaining Claims |
| 1. | **Seafood** | 5,955 | 5,503 | 452 | 2,868 | 2,649 | 219 | 3,768 | 3,504 | 264 |
| 2. | **IEL** | 17,686 | 15,843 | 1,843 | 9,218 | 8,075 | 1,143 | 6,094 | 5,481 | 613 |
| 3. | **IPV/FV** | 103 | 100 | 3 | 38 | 36 | 2 | 41 | 37[6] | 4 |
| 4. | **BEL** | 40,537 | 26,099 | 14,438 | 17,719 | 10,961 | 6,758 | 8,931 | 5,770 | 3,161 |
| 5. | **Start-Up BEL** | 2,771 | 2,097 | 674 | 1,616 | 1,138 | 478 | 815 | 505 | 310 |
| 6. | **Failed BEL** | 1,165 | 905 | 260 | 720 | 498 | 222 | 638 | 471 | 167 |
| 7. | **Coastal  RP** | 5,775 | 5,650 | 125 | 1,677 | 1,641 | 36 | 2,071 | 2,044 | 27 |
| 8. | **Wetlands RP** | 563 | 427 | 136 | 127 | 91 | 36 | 728 | 579 | 149 |
| 9. | **RPS** | 331 | 327 | 4 | 119 | 118 | 1 | 221 | 218 | 3 |
| 10. | **Subsistence** | 8,814 | 4,542 | 4,272 | 2,956 | 1,496 | 1,460 | 1,223 | 544 | 679 |
| 11. | **VoO** | 950 | 934 | 16 | 404 | 392 | 12 | 636 | 627 | 9 |
| 12. | **VPD** | 787 | 751 | 36 | 364 | 346 | 18 | 264 | 249 | 15 |

---

[6] The number of IPV/FV requests for Reconsiderations with a later notice decreased by one because a claimant requested a second Reconsideration after the claim was remanded on appeal.

| | Table 10. Throughput Analysis of Claims Filed and Notices Issued. | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13. | TOTAL | 85,437 | 63,178 | 22,259 | 37,826 | 27,441 | 10,385 | 25,430 | 20,029 | 5,401 |

### C. Claim Payments.

#### 1. Notices and Payments.

Tables 4 and 5 of the Public Report attached in Exhibit A provide detail on the notices and payments issued to date.  As of February 28, 2015, the CAO has issued 87,833 Eligibility Notices to unique claims with Payment Offers totaling $5.41 billion.  As of that date, the CAO has made $4.84 billion in payments on 81,177 claims.

#### 2. Claimants in Bankruptcy.

The CAO reviews each claimant who indicates an open bankruptcy on the Registration Form (Debtor Claimant) to determine whether the claimant has submitted sufficient documentation from the applicable bankruptcy court to issue payment.  If the CAO determines that the claimant is not a Debtor Claimant per the Procedure for Disposition of Claims by Claimants in Bankruptcy (Proc-445), or if the claimant submits sufficient documentation for the CAO to issue payment on all active claims, the CAO will remove the Bankruptcy Hold.

Table 11 provides information about the status of claimants identified as Debtor Claimants, including information on notices issued to those claimants.

| Table 11. Claimants in Bankruptcy. | | | |
|---|---|---|---|
| 1. | Identified Claimants in Bankruptcy | Total | Change Since Last Report |
| (a) | Claimants with Active Bankruptcy Holds | 1,871 | +12 |
| (b) | Claimants with Removed Bankruptcy Holds | 1,092 | +9 |
| 2. | Bankruptcy Notices Issued | Total | Change Since Last Report |
| (a) | Debtor Claimant in Bankruptcy Notices | 414 | +22 |
| (b) | Bankruptcy Trustee Communication Notices | 92 | +2 |
| (c) | Bankruptcy Trustee Informational Notices | 71 | 0 |

### D. Re-Reviews, Reconsiderations, and Appeals.

### 1. Re-Reviews and Outcomes.

The CAO implemented a Re-Review process beginning on January 18, 2013, that provides claimants with the opportunity to request a Re-Review of their claim within 30 days of the issuance of an Eligibility or Denial Notice if the claimant has additional documentation not previously submitted to support its claim. Following a Re-Review, claimants receive a Post Re-Review Notice, from which they may then request Reconsideration if they wish. To date, there have been 96,284 Eligibility or Denial Notices issued from which claimants can or could seek Re-Review. Of those, 2,997 are still within the 30-day window to seek Re-Review and Re-Review has not yet been requested, leaving 93,287 claims for which the window to seek Re-Review has passed. Of those, claimants have requested Re-Review of 9,113 claims. Thus, the rate of Re-Review from all final determinations is 9.8%. The rate of Re-Review from Eligibility Notices is 6.2%, while the rate of Re-Review from Denial Notices is 18.5%.

Table 12 summarizes the Re-Reviews the CAO has completed, the number of Post Re-Review Notices the CAO has issued, and whether the outcome of the Re-Review resulted in an award that was higher than ( ), lower than ( ),or the same as (   ) the outcome previously issued. The table also includes information on whether an original Exclusion Denial was confirmed or overturned on Re-Review.

| Table 12.  Re-Reviews. | | | | | |
|---|---|---|---|---|---|
| **A.  Re-Review Requests and Reviews** | | | | | |

| | Claim Type | Requests Received To Date | Reviews Completed To Date | | |
|---|---|---|---|---|---|
| | | | Total | Completed Since Last Report | Average Weekly Reviews |
| 1. | Seafood | 861 | 837 | 1 | 8 |
| 2. | IEL | 882 | 852 | 10 | 8 |
| 3. | IPV/FV | 12 | 11 | 0 | <1 |
| 4. | BEL | 3,327 | 2,892 | 150 | 27 |
| 5. | Start-Up BEL | 221 | 155 | 12 | 1 |
| 6. | Failed BEL | 221 | 198 | 17 | 2 |
| 7. | Coastal RP | 1,035 | 1,021 | 3 | 9 |
| 8. | Wetlands RP | 949 | 363 | 31 | 3 |
| 9. | RPS | 92 | 92 | 0 | <1 |
| 10. | Subsistence | 1,400 | 317 | 41 | 3 |
| 11. | VoO | 61 | 61 | 0 | <1 |
| 12. | VPD | 52 | 50 | 0 | <1 |
| 13. | **TOTAL** | **9,113** | **6,849** | **265** | **64** |

| **B.  Re-Review Notices Issued** | | | | | | | |
|---|---|---|---|---|---|---|---|

| | Claim Type | Notices Issued or Claims Closed | | Outcome of Re-Review Notice | | | |
|---|---|---|---|---|---|---|---|
| | | Total to Date | Weekly Average | Compensation Amount for Eligible Claims | | Exclusions/Denials | |
| | | | | | | Confirmed | Overturned |
| 1. | Seafood | 786 | 7 | 415 | 40 | 232 | 94 | 5 |
| 2. | IEL | 792 | 7 | 192 | 72 | 254 | 267 | 7 |
| 3. | IPV/FV | 11 | <1 | 0 | 0 | 0 | 11 | 0 |
| 4. | BEL | 2,488 | 23 | 631 | 99 | 147 | 1,597 | 14 |
| 5. | Start-Up BEL | 119 | 1 | 19 | 5 | 4 | 90 | 1 |
| 6. | Failed BEL | 165 | 2 | 2 | 5 | 1 | 157 | 0 |
| 7. | Coastal RP | 1,018 | 9 | 47 | 4 | 121 | 811 | 35 |
| 8. | Wetlands RP | 346 | 3 | 28 | 9 | 31 | 271 | 7 |
| 9. | RPS | 92 | <1 | 1 | 0 | 3 | 75 | 13 |
| 10. | Subsistence | 234 | 2 | 133 | 29 | 40 | 32 | 0 |
| 11. | VoO | 60 | <1 | 7 | 5 | 17 | 29 | 2 |
| 12 | VPD | 46 | <1 | 20 | 0 | 13 | 12 | 1 |
| 13. | **TOTAL** | **6,157** | **57** | **1,495** | **268** | **863** | **3,446** | **85** |

**2.   Reconsideration Reviews and Outcomes.**

To date, there have been 180,585 Eligibility, Denial, or Incompleteness Denial Notices issued from which claimants can or could seek Reconsideration.  Of those, 5,672 are still within the 30 day window to seek Reconsideration and Reconsideration has not yet been requested, leaving 174,913 claims for which the window to seek Reconsideration has passed.  Of those, claimants have requested Reconsideration of 25,430 claims.  Thus, the rate of Reconsideration from all final determinations is 14.5%.  The rate of Reconsideration from Eligibility Notices is 5.2%, while the rate of Reconsideration from Denial and Incompleteness Denial Notices is 24.1%.

Table 13 summarizes the Reconsiderations the CAO has completed, the number of Post-Reconsideration Notices the CAO has issued, and whether the outcome of the Reconsideration review resulted in an award that was higher than ( ), lower than ( ), or the same as (   ) the outcome previously issued. The table also includes information on whether an original Exclusion Denial was confirmed or overturned on Reconsideration.

| | Table 13.  Reconsideration. | | | | |
|---|---|---|---|---|---|
| | **A. Reconsideration Requests and Reviews** | | | | |
| | | | **Reviews Completed To Date** | | |
| | **Claim Type** | **Requests Received To Date** | **Total** | **Completed Since Last Report** | **Average Weekly Reviews** |
| 1. | **Seafood** | 3,768 | 3,601 | 6 | 28 |
| 2. | **IEL** | 6,094 | 5,793 | 54 | 45 |
| 3. | **IPV/FV** | 41 | 37 | -1[7] | <1 |
| 4. | **BEL** | 8,931 | 7,731 | 419 | 61 |
| 5. | **Start-Up BEL** | 815 | 751 | 41 | 6 |
| 6. | **Failed BEL** | 638 | 596 | 7 | 5 |
| 7. | **Coastal RP** | 2,071 | 2,048 | 8 | 16 |
| 8. | **Wetlands RP** | 728 | 586 | 59 | 5 |
| 9. | **RPS** | 221 | 219 | 1 | 2 |
| 10. | **Subsistence** | 1,223 | 707 | 68 | 6 |
| 11. | **VoO** | 636 | 631 | 2 | 5 |

[7] The number of completed IPV/FV Reconsiderations decreased by one because a claimant requested a second Reconsideration after the claim was remanded on appeal.

| | Table 13.  Reconsideration. | | | | |
|---|---|---|---|---|---|
| 12. | VPD | 264 | 258 | 0 | 2 |
| 13. | TOTAL | **25,430** | **22,958** | **664** | **180** |

| | B.  Reconsideration Notices Issued | | | | | |
|---|---|---|---|---|---|---|
| | **Claim Type** | **Notices Issued or Claims Closed** | | **Outcome of Reconsideration Notice** | | |
| | | **Total to Date** | **Weekly Average** | **Compensation Amount for Eligible Claims** | **Exclusions/Denials** | |
| | | | | | **Confirmed** | **Overturned** |
| 1. | **Seafood** | 3,504 | 26 | 779 | 166 | 486 | 1,737 | 336 |
| 2. | **IEL** | 5,481 | 41 | 158 | 115 | 417 | 3,474 | 1,317 |
| 3. | **IPV/FV** | 37 | <1 | 0 | 0 | 0 | 36[8] | 1 |
| 4. | **BEL** | 5,770 | 44 | 396 | 144 | 285 | 2,835 | 2,110 |
| 5. | **Start-Up BEL** | 505 | 4 | 10 | 11 | 13 | 236 | 235 |
| 6. | **Failed BEL** | 471 | 4 | 1 | 6 | 2 | 378 | 84[9] |
| 7. | **Coastal RP** | 2,044 | 15 | 97 | 22 | 410 | 1,248 | 267 |
| 8. | **Wetlands RP** | 579 | 4 | 37 | 3 | 56 | 457 | 26 |
| 9. | **RPS** | 218 | 2 | 1 | 0 | 4 | 192 | 21 |
| 10. | **Subsistence** | 544 | 4 | 39 | 7 | 20 | 364 | 114 |
| 11. | **VoO** | 627 | 5 | 58 | 6 | 122 | 383 | 58 |
| 12 | **VPD** | 249 | 2 | 48 | 5 | 17 | 112 | 67 |
| 13. | **TOTAL** | **20,029** | **151** | **1,624** | **485** | **1,832** | **11,452** | **4,636** |

    **3.  Appeals.**

       **(a)  BP Appeals.**

    To date, the CAO has issued 22,251 Eligibility Notices that meet or exceed the threshold amount rendering them eligible for appeal by BP.  Of those, 181 Notices are still within the timeframe in which BP can file an appeal and BP has not yet done so, leaving 22,070 Notices that BP has either appealed or for which the deadline for BP to file an appeal has passed.  Of those 22,070 Notices, BP has filed 5,963 appeals, a 27.0% appeal rate.  Table 14 provides summary information on the status of BP appeals.

---

[8] The number of confirmed IPV/FV Exclusions/Denials decreased by one because a claimant requested a second Reconsideration after the claim was remanded on appeal.

[9] The number of Failed BEL Denials that were overturned after Reconsideration decreased because the Claims Administrator reclassified one claim to BEL, and another claimant has requested a second Reconsideration.

| Table 14.  Status of BP Appeals. | | | | |
|---|---|---|---|---|
| **A.   Appeal Filing/Resolution** | | | | |
| | **Status** | **As of Last Report** | **Since Last Report** | **Total** |
| **1.** | **BP Appeals Filed** | **5,819** | **144** | **5,963** |
| **2.** | **Resolved Appeals** | **5,145**[10] | **237** | **5,382** |
| **(a).** | **Resolved by Panel Decision** | 1,879 | 174 | 2,053 |
| **(b).** | **Resolved by Parties** | 742 | 38 | 780 |
| **(c).** | **Remand to Claims Administrator** | 116[10] | 9 | 125 |
| **(d).** | **Administratively Closed** | 423 | 0 | 423 |
| **(e).** | **Withdrawn** | 340 | 5 | 345 |
| **(f).** | **Inactive Under Reconsideration/Re-Review** | 200 | 11 | 211 |
| **(g).** | **Return for Review Under Policy 495** | 1,445 | 0 | 1,445 |
| **B. Pending Appeals** | | | | |
| **1.** | **In "Baseball" Process** | 249 | | |
| **2.** | **Submitted to Panel** | 143 | | |
| **3.** | **Under Discretionary Court Review** | 189 | | |
| **4.** | **TOTAL PENDING** | **581** | | |

**(b) Claimant Appeals.**

Before a claimant may file an appeal, the claimant must request Reconsideration and receive a Post-Reconsideration Eligibility or Denial Notice.  To date, the CAO has issued 9,223 Post-Reconsideration Eligibility and Denial Notices.  Of those, 222 Notices are still within the timeframe in which the claimant can file an appeal and the claimant has not yet done so, leaving 9,001 Notices that the claimant has either appealed or for which the deadline for the claimant to file an appeal has passed.  Of those 9,001 Notices, claimants have filed 1,833 appeals, a 20.4% appeal rate.  Of the 1,833 claimant appeals, 1,242 are appeals of Post-Reconsideration Denial Notices, while 591 are appeals of Post-Reconsideration Eligibility Notices.  Table 15 provides summary information on the status of Claimant Appeals.

---

[10] In Court Status Report No. 30, the appeal status for one BP appeal was listed as "Under Discretionary Court Review" when the Request for Discretionary Review had been denied and the appeal returned to an appeal status of "Remand to Claims Administrator".  The CAO has now characterized that appeal as "Remand to Claims Administrator" and accordingly, the "As of Last Report" figure for "Remand to Claims Administrator" has increased by one.

| Table 15.  Status of Claimant Appeals. | | | |
|---|---|---|---|
| **A. Appeal Filing/Resolution** | | | |
| **Status** | **As of Last Report** | **Since Last Report** | **Total** |
| **1.** **Claimant Appeals Filed** | **1,791** | **42** | **1,833** |
| **2.** **Resolved Appeals** | **1,485** | **49** | **1,534** |
| (a). **Resolved by Panel Decision** | 1,172 | 27 | 1,199 |
| (b). **Resolved by Parties** | 89 | 0 | 89 |
| (c). **Remand to Claims Administrator** | 38 | 18 | 56 |
| (d). **Administratively Closed** | 55 | 4 | 59 |
| (e). **Withdrawn** | 41 | 0 | 41 |
| (f). **Return for Review Under Policy 495** | 90 | 0 | 90 |
| **B.  Pending Appeals** | | | |
| **1.** **In "Baseball" Process** | 24 | | |
| **2.** **In "Non-Baseball" Process** | 91 | | |
| **3.** **Submitted to Panel** | 65 | | |
| **4.** **Under Discretionary Court Review** | 119 | | |
| **5.** **TOTAL PENDING** | **299** | | |

### (c)  Resolved Appeals.

As reported in the table below, 6,916 appeals have been resolved.  Table 16 provides a summary of these resolved appeals by Claim Type.  The comparison between the Post-Appeal Award Amount and the Award Amount within the original notice does not take into consideration the 5.0% increase in compensation that a claimant who prevails upon appeal receives.

| Table 16.  Outcome After Appeal. | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Claim Type** | **Appeals Settled or Decided by Panel** | | | | | | **With-drawn** | **Admin. Closed** | **Inactive Under Recon./Re-Review** | **Return for Review Under Policy 495** | **Total** |
| | **Compensation Amount Following Appeal Compared to That of Original Notice** | | | | | | | | | | |
| | **Higher** | **Lower** | **Same** | **Denial Upheld** | **Denial Over-turned** | **Remand** | | | | | |
| 1. **Seafood** | 75 | 21 | 158 | 47 | 5 | 21 | 50 | 9 | 9 | 0 | **395** |
| 2. **IEL** | 26 | 68 | 114 | 103 | 14 | 47 | 14 | 18 | 8 | 0 | **412** |
| 3. **IPV/FV** | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | **3** |
| 4. **BEL** | 60 | 868 | 1,595 | 333 | 80 | 94 | 274 | 434 | 178 | 1,535 | **5,451** |
| 5. **Coastal RP** | 37 | 1 | 25 | 109 | 7 | 2 | 8 | 8 | 0 | 0 | **197** |
| 6. **Wetlands RP** | 3 | 10 | 5 | 38 | 2 | 0 | 3 | 3 | 16 | 0 | **80** |

| Table 16.  Outcome After Appeal. | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Claim Type** | | **Appeals Settled or Decided by Panel** | | | | | | **With-drawn** | **Admin. Closed** | **Inactive Under Recon./Re-Review** | **Return for Review Under Policy 495** | **Total** |
| | | **Compensation Amount Following Appeal Compared to That of Original Notice** | | | | | | | | | | |
| | | **Higher** | **Lower** | **Same** | **Denial Upheld** | **Denial Over-turned** | **Remand** | | | | | |
| 7. | **RPS** | 0 | 6 | 18 | 37 | 0 | 0 | 2 | 2 | 0 | 0 | **65** |
| 8. | **Subsistence** | 0 | 0 | 4 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | **7** |
| 9. | **VoO** | 16 | 31 | 47 | 55 | 20 | 5 | 27 | 4 | 0 | 0 | **205** |
| 10. | **VPD** | 2 | 28 | 31 | 20 | 0 | 12 | 8 | 0 | 0 | 0 | **101** |
| 11. | **TOTAL** | **219** | **1,033** | **1,997** | **743** | **129** | **181** | **386** | **482** | **211** | **1,535** | **6,916** |

### (d) Incompleteness Appeals.

The Appeal for Insufficient Documentation (Incompleteness Appeal) allows Economic Class Members to have their claims reviewed by a separate Documentation Reviewer when the CAO denies their claims because of insufficient documentation.  The Documentation Reviewer reviews the claimant's documentation to determine whether the Program correctly denied the claim.

Before sending the claim to the Documentation Reviewer, the CAO reviews the appeal request along with any newly submitted documents.  If the claimant has submitted the requested documentation and cured the incompleteness, the CAO issues the appropriate Notice.  If the claimant still has not submitted the requested documentation, the CAO sends the claim to the Documentation Reviewer for review.

Before a claimant may file an appeal of an Incompleteness Denial, the claimant must request Reconsideration and receive a Post-Reconsideration Incompleteness Denial Notice.  To date, the CAO has issued 5,896 Post-Reconsideration Incompleteness Denial Notices.  Of those, 289 Notices are still within the timeframe in which the claimant can file an appeal, leaving 5,607 Notices for which the claimant's appeal deadline has passed.  Of the 5,607 Notices eligible for

appeal, 2,746 (49.0%) appeal requests have been filed.  Table 17 provides summary information on the status of Incompleteness Appeals.

| | Table 17.  Incompleteness Appeals. | | | |
|---|---|---|---|---|
| | **A.  Incompleteness Appeal Filing/Resolution** | | | |
| | **Status** | **As of Last Report** | **Since Last Report** | **Total** |
| **1.** | **Incompleteness Appeals Filed** | **2,628** | **118** | **2,746** |
| **2.** | **Appeals Resolved** | **1,868** | **51** | **1,919** |
| (a). | Withdrawn/Closed Claims | 17 | 1 | 18 |
| (b). | Cured | 362 | 24 | 386 |
| (c). | Incompleteness Denial Affirmed | 1,429 | 26 | 1,455 |
| (d). | Incompleteness Denial Overturned | 60 | 0 | 60 |
| | **B.  Pending Incompleteness Appeals** | | | |
| **3.** | **In Pre-Documentation Reviewer Process** | 652 | | |
| **4.** | **Currently Before Documentation Reviewer** | 175 | | |
| **5.** | **TOTAL PENDING** | 827 | | |

As reported in Table 17 above, 1,919 Incompleteness Appeals have been resolved.

### E.  Seafood Supplemental Distribution

The Settlement Agreement calls for BP to finance a $2.3 billion Seafood Compensation Program Settlement Fund.  The Settlement Agreement states that any balance available after the first distribution will be distributed to each claimant in proportion to the claimant's gross compensation, unless the Court-Appointed Seafood Neutrals recommend a different formula.  On September 19, 2014, the Seafood Neutrals submitted to the Court their Recommendations for the Seafood Compensation Program Supplemental Distribution (which can be located on the Program's Website).  On November 18, 2014, the Court approved the Seafood Supplemental Distribution formula established under the Court-Designated Neutrals' Recommendations for Seafood Compensation Program Supplemental Distribution. The Court approved a partial Supplemental Distribution targeted at $500 million of the remaining undistributed portion of the

aggregate $2.3 billion fund for the Seafood Compensation Program. Payments will be disbursed in multiple phases.

The Seafood Neutrals also recommended that if a claimant or BP disagrees with a claimant's award in Round Two, the challenge must be limited to whether the formulas described in Sections II (A) and III (F) of the Recommendations were properly implemented with respect to the individual claim at issue. The Seafood Neutrals also recommended that the Claims Administrator have the discretion and authority to promulgate procedural and evidentiary rules as well as limit and define appellate rights. On November 18, 2014, the Court approved the Seafood Neutrals' Recommendations in full, and on December 29, 2014, the Claims Administrator promulgated Rules Governing the Seafood Supplemental Distribution Calculation Objection Process pursuant to the Court-approved Seafood Neutrals' recommendations.

As of February 28, 2015, the Settlement Program has issued 3,537 Seafood Supplemental Distribution Eligibility Notices for a total Supplemental Distribution Value of $338,930,048.  The Seafood Supplemental Distribution Notices are included in the report where appropriate. As of February 28, 2015, 1,623 of those Notices had been accepted by the relevant claimants; 22 of those 3,537 Notices had been objected to by the relevant claimants[11]. As of February 28, 2015, the Settlement Program issued payments of $313,067,190 from the Supplemental Distribution to 2,795 claimants.

## II.    CLAIMANT OUTREACH EFFORTS

The CAO has continued its claimant outreach efforts since the previous Court Status Report as detailed below.

---

[11] BP initially objected to 22 Seafood Supplemental Distribution Notices, but subsequently withdrew each of those objections.

A.  **Law Firm Contacts**.

The Law Firm Contact Team continued multiple outreach campaigns to help firms overcome documentation deficiencies and answer questions posed by reviewers.  The Law Firm Contact Team continued daily outreach assignments requesting new Forms 4506 and/or 4506-T or notifying firms of deficient Forms 4506 and/or 4506-T.  Firm Contacts participated in outreach campaigns to address Multi-Facility Business Economic Loss claim specific inquiries, Payment Documentation incompleteness, and Identity Verification requests.  The Law Firm Contact Team continues to assist firms by providing information concerning claim statuses and claim determinations.

B.  **Claimant Communications Center (CCC)**.

The CCC continued claimant outreach efforts across various claim types and review teams.  The CCC continued specific outreach to Individual Economic Loss claimants regarding incomplete pay-period earnings records and to pro se claimants who submitted insufficient Forms 4506 and/or 4506-T.  The CCC agents continue to field calls from claimants with questions about their claim status and notices.

C.  **Claimant Assistance Centers (CACs)**.

The CACs complete outreach assignments as a secondary task to meeting with claimants and answering DWH-related questions.  The CACs continued to participate in ongoing outreach efforts, including those to claimants with updated representation statuses, unfinished claim forms, and insufficient Forms 4506 and/or 4506-T in accordance with Policy 70 v.2.  In addition, the CACs continued outreach calls to claimants who provided incomplete identity information and to claimants with incomplete claims.  To date, the CACs have helped to complete over 171,000 calls for the Claimant Outreach Program.

D. **Summary of Outreach Calls**.

Table 18 summarizes some of the Claimant Outreach Program efforts as of February 28, 2015.

| | Table 18. Outreach Call Volume. | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Location** | **Calls Made** | **Incomplete Claims Affected** | **Claims With New Docs After Call** | **% of Claims With New Docs After Call** | **Claimants Visiting CAC After Call** | **% of Claimants Visiting CAC After Call** |
| **1.** | BrownGreer | 171,079 | 38,128 | 30,097 | 78.9% | 13,358 | 35.0% |
| **2.** | Garden City Group | 73,630 | 8,860 | 6,699 | 75.6% | 698 | 7.9% |
| **3.** | P&N | 68,240 | 16,545 | 14,934 | 90.3% | 287 | 1.7% |
| **4.** | PwC | 814 | 372 | 362 | 97.3% | 12 | 3.2% |
| **5.** | **TOTAL** | **313,763** | **63,905** | **52,092** | **81.5%** | **14,355** | **22.5%** |

III.    CONCLUSION

The Claims Administrator offers this Report to ensure that the Court is informed of the status of the Program to date.  If the Court would find additional information helpful, the Claims Administrator stands ready to provide it at the Court's convenience.


_____/s/ Patrick Juneau_____
PATRICK A. JUNEAU
CLAIMS ADMINISTRATOR

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 31st day of March, 2015.

_____/s/ Patrick Juneau_____
PATRICK A. JUNEAU
CLAIMS ADMINISTRATOR