## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig | MDL NO. 2179 |
|     "Deepwater Horizon" in the Gulf | |
|     of Mexico, on April 20, 2010 | SECTION J |
| | |
| Applies to: | JUDGE BARBIER |
| *12-970* | MAGISTRATE JUDGE |
| | SHUSHAN |

### ORDER

**[Regarding Class Counsel's Motion to Alter or Amend
Order Adopting Matching Policy (No. 495) (Rec. doc. 12941)]**

Class Counsel representing eligible Business Economic Loss ("BEL") claimants in the Court-Supervised Settlement Program and the Economic & Property Damages Settlement Class filed a motion and supporting memorandum to alter or amend this Court's Order of May 5, 2014 Adopting Policy No. 495 (Rec. doc. 12817).   In its May 5, 2014 Order, the Court noted that Claims Administrator Patrick Juneau had referred the proposed Policy 495 for consideration of the dispute between Class Counsel and counsel for BP.   In that regard, the Claims Administrator filed with the Court the entire history of how the "matching policy" was developed, including the parties' respective proposals and briefing to the Claims Administrator.   The requirement to develop such a matching policy was mandated by the Fifth Circuit Court of Appeals.   *In re Deepwater Horizon*, 732 F.3d 326 (5th Cir. 2013).   The task of this Court and the Claims administrator has been to implement a matching policy to comply with the direction of the Fifth Circuit.   This has been a difficult and time-consuming endeavor, with many permutations and obstacles. Admittedly, this Court originally believed, as apparently did the Circuit Court, that the scope of the BEL claims that might need to be matched would be limited to a subset of

claims that included those primarily based on so-called "cash accounting" methodology. However, further analysis and investigation by the Claims Administrator and his professional accountants convinced the Court that it was not that simple, and that the matching is often an issue even for claims that are purportedly based on "accrual" accounting.  As the Court understands it, one recurring problem is that it is not always easy to clearly identify which accounting method has been employed, or whether claims that are purported to use accrual accounting in actuality do so.  Many claimants may employ some variation or hybrid accounting which makes it difficult to analyze the claim. Another complication is that a claimant may use accrual accounting but "true up" their expenses and revenues only on an annual or quarterly basis, while the Settlement Agreement requires comparison on a month to month basis.

Accordingly, following remand from the Fifth Circuit, the Court directed the Claims Administrator to develop a policy that would result in sufficient matching of expenses and revenues for BEL claims that were determined not to be properly matched. The parties were afforded multiple opportunities to provide their respective proposals and comments to the Claims Administrator as Policy 495 was being developed.  The first proposals by the parties were submitted on November 21, 2013.   Responses to the initial proposals were submitted on November 26, 2013.   The Claims Administrator's proposed Policy 495 was issued on February 12, 2014.   The Claims Administrator reissued a revised proposed Policy 495 on March 7, 2014, and the Final Policy was announced on March 13, 2014.

On March 21, 2014, the Claims Administrator referred the matter to the Court in

light of the lack of agreement by the parties.   On May 5, 2014, after reviewing the entire record submitted by the Claims Administrator, particularly the comments of Class Counsel in its Proposed Modification and Memorandum in Response to the Policy Announcement (Rec. Doc. 12589, at pp. 379-469), the Court determined that Policy 495 fairly implemented the directive of the Fifth Circuit entered on October 2, 2013.   Accordingly, the Court approved the Claims Administrator's Policy Announcement 495, "Business Economic Loss Claims:   Matching of Revenues and Expenses."   The Program was authorized to immediately implement the processing of BEL claims pursuant to that policy.

Class Counsel on May 27, 2014 filed a Motion to Alter or Amend the Court's Order of May 5, 2014 approving the matching policy as proposed by the Claims Administrator.

Class Counsel specifically seek to:

i.      Limit the Matching Triggers and Policies to *Cash Basis* Claims; and,

ii.     Utilize the Annual Variable Margin Methodology for *all* insufficiently matched Claims, without resorting to different Construction, Agricultural, Educational or Professional Services Frameworks.

Rec. doc. 12941-1 at 2.   Alternatively, they urge:

> In the alternative, the Policy should at least be amended to (a) achieve matching, where required, through re-allocation of expenses only, without averaging, 'smoothing' or otherwise re-allocating revenues, (b) limit the matching generally, and any re-allocation of revenues in particular, to the transaction that 'triggered' or caused the claim to be "un-matched", and/or (c) eliminate any re-visiting of Causation where the Contemporaneous P&Ls have objectively established a loss caused by the Spill under Exhibit 4B, *See generally* Memo to the Claims Administrator (March 19, 2014)[Rec doc. 12589-16].

Id. note 4.

Having fully considered the arguments advanced and the relief and alternative

relief sought, the Court reaffirms its previous determination that Policy No. 495 properly implements the directive of the United States Fifth Circuit Court of Appeals. *In re Deepwater Horizon*, 732 F.3d 326 (5th Cir. 2013).

Accordingly, the Motion to Alter or Amend Policy 495 (Rec. doc. 12941) is DENIED.

New Orleans, Louisiana, this 31st day of March, 2015.

**CARL J. BARBIER**
**United States District Judge**