UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: Oil Spill by the Oil Rig "Deepwater Horizon"
in the Gulf of Mexico, on April 20, 2010

MDL NO. 2179

MEMORANDUM IN SUPPORT OF
An AMENDED CLASS ACTION SETTLEMMENT NOTICE

# Exhibit A

| | | | | | |
|---|---|---|---|---|---|
| **EXHIBIT A: Selected Policy Modifications to the Settlement Agreement** | | | | | |
| Policy # | Subject | Original Settlement Agreement Language | Change to the Settlement Agreement Language | Date of Policy | Exhibit |
| Policy 60 | Individual Economic Loss Claims: Restated Policy on Required Proof of Termination | Settlement Agreement requires that all claimants who are terminated from the Claiming Job fewer than 90 consecutive days into the Compensation Period must demonstrate that the termination is Spill-related. | Requires any terminated claimant working for an Eligible Employer to *provide proof that his termination was not for cause to pass causation*. | | A-1 |
| Policy 480 | Exclusions: NAICS Codes | §4.4.7.1 requires the Settlement Program to use the NAICS code found on the Entity's 2010 tax return, 2010 business permits or licenses, and/or other evidence of the Entity's activities necessary for the Settlement Program to determine the appropriate NAICS code for that Entity Claimant and any employees of that Entity making claims related to their employment with that Entity. | Policy 63 v2: The Claims Administrator will prioritize 2010 tax records but *will use any and all information available to determine the correct NAICS code*. If what is on the taxes doesn't match the license or an Entity search, the Claims Administrator will conduct a review to determine the nature of the business and the employees work with that business.<br>Policy 480: The Claims Administrator will review an Entity's 2010 tax return and 2010 business permit(s) (if available) and all other evidence of the business activities of the Entity necessary to determine the NAICS Code that describes the Entity's primary business activity. The NAICS Code used on the 2010 tax return or business license will not be considered conclusive, and the Claims Administrator will not apply any presumptions regarding the selection of the NAICS Code to classify the entity properly. | 9/18/13 | A-2 |

| **EXHIBIT A: Selected Policy Modifications to the Settlement Agreement** |
|---|---|---|---|---|---|
| Policy # | Subject | Original Settlement Agreement Language | Change to the Settlement Agreement Language | Date of Policy | Exhibit |
| Policy 92 v2 | Individual Economic Loss Claims: Restated Policy on Career Changers- Application of the 20% Test | Section III of Exhibit 8A to the Settlement Agreement states that a Career Changer is a Category III claimant who (i) changed employer(s) and line of work between the Benchmark Period and the Compensation Period and (ii) whose earnings during the period January 1 – April 30, 2010 changed by more than +/- 20% when comparing the claimant's earnings between January 1 - April 30 of the Base Year(s) and the same period in the Compensation Period. | An analysis of a change in line of work is necessarily subjective, and the Program will exercise its best judgment and discretion to determine whether the nature of the claimant's job has changed sufficiently to constitute a change in "line of work." If the claimant changed employers and line of work between January –April 2009 and January – April 2010, and the claimant's total income from any comparable job changed by more than 20% positively or negatively then we designate the claimant as a Career Changer and review his claim subject to the rules of Category III. | 11/1/13 | A-3 |
| Policy 98 | Individual Economic Loss Claims: Reimbursable Search Costs | Exhibit 8A, I, II and III: Reimbursable Search Costs: Documented travel and job search costs actually incurred after April 20, 2010 in searching for alternative employment due to job loss or work reduction after the DWH Spill. | We will not reimburse for moving/relocating expenses, uniform expenses and required tool expenses that are incurred as part of the employment process. Additionally, we will not reimburse for expenses for car repairs, grooming, clothing and meals. | 5/31/12 | A-4 |
| Policy 361 v5 | Business Economic Loss Claims: Fixed and Variable Expenses | Exhibit 4D – lists of various fixed and variable cost categories. | The Claims Administrator will treat expenses as Variable or Fixed if they fall within either of those categories pursuant to Exhibit 4A Attachment D. If an expense does not fit the description of the Variable or Fixed expense categories in Exhibit 4D Attachment A, the accountants will use discretion to apply the classification that best conforms to delineations made by the Parties, as reflected in Ex. 4D. | 4/23/13 | A-5 |

2

| EXHIBIT A: Selected Policy Modifications to the Settlement Agreement |||||||
|---|---|---|---|---|---|
| Policy # | Subject | Original Settlement Agreement Language | Change to the Settlement Agreement Language | Date of Policy | Exhibit |
| Policy 354 v3 | Business Economic Loss Claims: Newly Acquired Businesses | Exhibit 7: (Framework for Start-up Business Claims): The framework outlined below applies to claims for start-up businesses. For purposes of this Framework, a "Start-up Business" is considered to be a claimant with less than eighteen months of operating history at the time of the DWH Spill.<br><br>(1) This Framework for Start-up Business Claims does not apply to (i) Failed Businesses; (ii) Entities, Individuals or Claims not included within the Economic Class definition; or (iii) Claims covered under the Seafood Program. | **3. *Businesses with Change in Ownership and Tax Identification Number…*Newly Acquired *Business:*** If the TIN of a business entity changes because of a substantive change in ownership during the Benchmark period (e.g. the entire business is sold to a third party), then the entity with the new TIN and ownership typically will be considered a newly acquired business.  A newly-acquired business typically will be treated as a General BEL claim if the claimant can document the claim with financials from the prior ownership to establish operating history for a Benchmark Period that includes all months fro at least 2009, a 2010 Compensation Period, and 2011 (if needed necessary for the claimant to establish Causation), as required by the framework.  However, if the business cannot obtain financials from the prior ownership, the Claims Administrator may evaluate the claim as a Start-Up BEL claim. ("TIN": Taxpayer Identification No.) | 3/28/13 | A-6 |
|  |  |  | All claimants must file the Registration Form, Claim form and W-9 with the TIN that is currently active at the time they submit the Form or W-9 to the Settlement Claims Administrator.  This requirement is in part based on the need for a current TIN to ensure that a claimant's identity can be confirmed, that the correct identity or individual is then paid, and that any payments are reported correctly to the IRS. |  |  |

3

| EXHIBIT A: Selected Modifications to the Settlement Agreement ||||||
| Policy # | Subject | Original Settlement Agreement Language | Change to the Settlement Agreement Language | Date of Policy | Exhibit |
|---|---|---|---|---|---|
| Policy 439 | Failed Start-Up Businesses EBITDA Calculation Methodology | Exhibit 6 of the Settlement Agreement defines a Failed Start-Up Business as follows: A "Failed Start-Up Business" shall be an entity that commenced operations on or after November 1, 2008, and, subsequent to May 1, 2010 but prior to December 31, 2011, either (i) ceased operations and wound down, or (ii) entered bankruptcy (through the filing of a petition for bankruptcy protection in a court of competent jurisdiction), or (iii) otherwise initiated or completed a liquidation of substantially all of its assets. | Generally, we consider a business to have "commenced operations" on the date of the first accounting entry for any expense or revenue relating to the business. The Claims Administrator, however, retains the discretion to determine on a case-by-case basis whether particular expenses and/or revenues were of a de minimis nature that did not constitute the commencement of operations under the applicable circumstances. | 7/17/13 | A-7 |
| Policy 464 | Business Economic Loss Claims: Requirement of Monthly and Annual Profit and Loss Statements | Section 4 of Exhibit 4A to the Settlement Agreement requires Business Economic Loss ("BEL") claimants to submit monthly and annual profit and loss statements **OR** alternative source documents establishing monthly revenues and expenses for the claimed Benchmark Period, 2010 and, if applicable, 2011. | A claim without complete monthly P&Ls and an annual P&L **SHALL** be considered incomplete and such claimants **shall be required** to provide them or explain why they cannot in an explanation that the Claims Administrator considers to be reasonably reliable. Claimants are not permitted to allocate revenues or expenses equally over a twelve month period. If creating monthly and/or annual P&Ls would result in an undue burden, the claimant may be allowed to submit the contemporaneous alternate documentation for consideration by the Claims Administrator. | | A-8 |

4