UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

In Re: Oil Spill by the Oil Rig "Deepwater Horizon"
in the Gulf of Mexico, on April 20, 2010

MDL NO. 2179

MEMORANDUM IN SUPPORT OF
An AMENDED CLASS ACTION SETTLEMMENT NOTICE

# Exhibit A-6

| Pol-354 v3 | CLAIMS ADMINISTRATOR'S APPROVED POLICY | |
|---|---|---|
| **I. Profile - EXTERNAL** | | |
| Subject | Business Economic Loss Claims: Evaluation of Claimants with a Change in Taxpayer | |
| Active Date | 3/28/13 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| Type of Decision | | Claims Administrator Decision |
| Settlement Agreement Reference | | |
| Affected Claim Types and/or Review Processes | | BEL |
| Superseding Information | | Policy 354 v3 revises Policy 354 v2 on 03/28/2013 |
| **II. Summary** | | |
| See Final Policy Memo. | | |



# MEMORANDUM

TO:         Class Counsel
                BP

FROM:      Patrick A. Juneau, Claims Administrator

DATE:       March 20, 2013

RE:          Announcement of Policy Regarding Claims Administration

___

       Under the terms of the Deepwater Horizon Economic and Property Damage Settlement Agreement ("Settlement Agreement"), the Claims Administrator is charged with the duty to "faithfully implement and administer the Settlement, according to its terms and procedures, for the benefit of the Economic Class, consistent with this Agreement, and/or as agreed to by the Parties and/or as approved by the Court."  (Section 4.3.1 of the Settlement Agreement).  Further, the Claims Administrator is charged with the responsibility to "work with Economic Class Members . . . to facilitate . . . assembly and submission of Claims Forms, including all supporting documentation necessary to process Claims Forms under the applicable Claims Processes . . . [and to] provide Economic Class Members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled under the terms of this Agreement."  (Section 4.3.7 of the Settlement Agreement).

       In accordance with these provisions, the Claims Administrator adopted the following policy affecting the administration of claims under the Settlement Agreement.  The Claims Administrator announced this policy to the Parties on 3/7/13, asking the Parties to comment by 5:00 pm CT on 3/14/13.  The Claims Administrator did not receive comments from BP or Class Counsel by that time.  However, because the Parties have asked the Claims Administrator to categorize each claims administration policy according to its adoption process, the Claims Administrator needs to hear from each Party by 5:00 pm CT on March 21, 2013, as to whether the policy is to be placed in the Parties Agreed to Policy category or in the Claims Administrator Decision category.

       ***Business Economic Loss Claims:  Evaluation of Claimants with a Change in Taxpayer Identification Number.***  The Internal Revenue Service assigns Employer Identification Numbers, also known as Federal Tax Identification Numbers ("TINs"), to identify business entities.  There may be instances when a business undergoes a change in TIN during the Benchmark Period or Compensation Period years defined in the Settlement Agreement for General BEL, Start-Up BEL or Failed BEL claims.  The Claims Administrator will follow the following principles in dealing with such claims.

422833



A. <u>**TIN Used by Claimants in Claim Submissions**</u>.

All claimants must file the Registration Form, Claim Form, and W-9 with the TIN that is currently active at the time they submit the Form or W-9 to the Settlement Claims Administrator. This requirement is in part based on the need for a current TIN to ensure that a claimant's identity can be confirmed, that the correct entity or individual is then paid, and that any payments are reported correctly to the IRS.

B. <u>**The Effect of EIN and Business Changes on Claim Reviews**</u>.

Generally, there will be specific events that cause a business to change its TIN in the regular course of its business. The Claims Administrator will review each scenario on a case-by-case basis. For accounting purposes, the Claims Administrator will treat each claim as a General BEL claim, if there has been no substantial change in the business' operations during the Benchmark Period or Compensation Period.

The Claims Administrator has established the following general guidelines to assist in the evaluation of these scenarios. These guidelines are subject to exceptions as required by claimant-specific circumstances, at the discretion of the Claims Administrator:

1. *Businesses with Change in Ownership Only*: When a business has changes in ownership but the TIN remains the same before and after the changes, the Claims Administrator will typically consider the entity to be one consistently operating business. The entity will typically be required to file only one Registration and Claim Form.

2. *Businesses with Change in Tax Identification Number Only.* When a business changes its TIN but the ownership and nature of the business activity remain the same before and after the change, the Claims Administrator typically will consider the entity to be one consistently operating business. The Claims Administrator typically will use both TINs in the analysis of such a claim. The entity typically will be required to file only one Registration and Claim Form.

3. *Businesses with Change in Ownership and Tax Identification Number*. When a business experiences a change in both its TIN and its ownership:

    (a) *Substantive Change in Ownership During Benchmark Period – Newly Acquired Business:* If the TIN of a business entity changes because of a substantive change in ownership during the Benchmark Period (*e.g.*, the entire business is sold to a third party), then the entity with the new TIN and ownership typically will be considered a newly acquired business. A newly-acquired business typically will be treated as a General BEL claim if the claimant can document the claim with financials from the prior ownership to establish operating history for a Benchmark Period that includes all months for at least 2009, a 2010 Compensation Period, and 2011 (if needed necessary for the claimant to establish Causation), as required by the framework. However, if the business cannot obtain the financials from the prior ownership, the Claims Administrator may evaluate the claim as a Start-Up BEL claim.

2

422833



Example: A seafood restaurant located New Orleans was sold in August 2009 to a new owner at 100% ownership. Under this scenario, the new owner (owner at the time of the Spill) typically may file a General BEL claim, provided that the business operations have not changed since the prior ownership. Additionally, the new owner would need to obtain and provide the required documentation from the previous owner for the time period prior to the sale on August 2009. If the new owner cannot obtain these documents, it must file a Start-Up BEL claim.

(b) *No Substantive Change in Ownership, No Change in Operations:* If the TIN of a business entity changes because of a change in percentage of ownership, but the change does not constitute a substantive change in ownership and there is no change in the business' operations, then the Claims Administrator typically will use both TINs in the analysis of the claim.

Example: A seafood restaurant located in Lafayette is owned by the same two individuals before the Spill and after the Spill, but the business' TIN changed in January 2011 due to a change in the percentage ownership between these two individuals. The operations of the business do not change. In this example, the financials from both TINs would be included in the evaluation of the General BEL claim.

(c) *Change in Business Structure, No Change in Operations:* If the TIN of a business entity changes because the nature of the entity changes (*e.g.*, a sole proprietor changes to a partnership), but there is no change in the business' operations, then the Claims Administrator will typically use both TINs in the analysis of the claim.

Example: A footwear/apparel retailer located in Gulf Shores was wholly owned by one individual up until May 2009 and subsequently changed to a partnership of four owners. There was no change in the business' operations other than a mere change in business structure. The financials from both TINs would be included in the analysis of the General BEL claim.

(d) *Change in Business Operations During Benchmark Period*: If a business undergoes a material change in operating activities in the course of the change of ownership during the Benchmark Period years, the Accountant reviewers will use their judgment to determine if the business fits the Start-Up BEL or General BEL framework. Factors likely to be considered in determining whether there has been a material change in operating activities include but are not limited to: (i) the nature of the operations and (ii) the size and scope of the business activities.

Example: A seafood restaurant changed its TIN because of a change in business activity/operations from a restaurant to a charter fishing business in August 2009. Under this scenario, the Claims Administrator will treat the claim as a Start-Up BEL claim for a charter fishing business because of the substantial change in business activity.

422833