**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**In Re: Oil Spill by the Oil Rig "Deepwater Horizon"**
**in the Gulf of Mexico, on April 20, 2010**

**MDL NO. 2179**

**MEMORANDUM IN SUPPORT OF**
**An AMENDED CLASS ACTION SETTLEMMENT NOTICE**

# Exhibit A-8

> **FINAL POLICY ANNOUNCEMENT**
>
> **POLICY 464: BUSINESS ECONOMIC LOSS CLAIMS: REQUIREMENT OF MONTHLY AND ANNUAL PROFIT AND LOSS STATEMENTS**

## I. Introduction.

Section 4 of Exhibit 4A to the Settlement Agreement requires Business Economic Loss ("BEL") claimants to submit monthly and annual profit and loss statements or alternative source documents establishing monthly revenues and expenses for the claimed Benchmark Period, 2010 and, if applicable, 2011. To apply this requirement, the Claims Administrator previously adopted several policies:

1. **Policy 85:** *Business Economic Loss Claims: Profit and Loss Statements*. Addressed the requirement in Section 4 of Exhibit 4A that P&Ls "shall identify the dates on which they were created," and states that if a claimant has already submitted P&L statements that do not identify the dates on which they were created, the claimant may resubmit the P&L statements with the addition of the dates on which they were created or may provide a separate document identifying the dates on which the P&L statements were created.

2. **Policy 232:** *Profit and Loss Statements (P&Ls)*. Addressed not requiring an annual P&L if 12 monthly P&Ls were provided, and not requiring a missing monthly P&L where 11 monthly P&Ls and an annual P&L had been provided.

3. **Policy 286:** *Creation of Monthly Profit and Loss Statements*. Addressed the requirement to submit P&Ls as kept in the regular course of business, creating P&Ls from contemporaneous source documents or submission of alternate source documents to the Claims Administrator. The language of this policy appeared in the 10/22/12 Alert Reminder Regarding Document Requirements for BEL Claims that was referred to in footnote 1 of the 3/5/13 memorandum to the Parties that became Policy 355 v.1, as explained below.

4. **Policy 355 v.0:** *Alternate Source Documents for Revenues and Expenses*. Addressed (a) monthly allocations of revenues/expenses; (b) monthly allocations of owner and officer payroll; and (c) the rule that BEL claimants were permitted to restate P&Ls from cash to accrual basis, but not from accrual to cash basis. This policy had a lengthy history. The Claims Administrator first announced this policy to the Parties by memorandum on 9/25/12. The Parties' responses on 9/28/12 led to a meeting of the Administrative Panel on 10/1/12, after which the Claims Administrator re-issued the policy, along with policies on other subjects, to the Parties by memorandum on 10/8/12. The Claims Administrator circulated on 4/2/13 an Excel Compendium of all policies that the Claims Administrator felt should be posted publicly. This policy bore Policy ID 259 in that Compendium. When the Claims Administrator placed this policy in the Policy Keeper software tracking application, it became Policy 355 v0 and was marked as superseded by Policy 355 v1.

426479

5. **Policy 355 v1:** *Business Economic Loss Claims: Documentation Requirements.* Combined Policies 286 and 355 v.0 and became the controlling policy on this subject. Included (1) a reminder of the BEL documentation requirements described in the 10/22/12 Alert (from Policy 286); (2) described the creation by claimants of P&Ls from alternate source documents; (3) stated that claimants were not merely to allocate revenues and expenses evenly over 12 months; and (4) described the Claims Administrator's review where P&Ls were not maintained by a claimant in the regular course of business. The Claims Administrator announced this policy in a 3/5/13 memorandum to the Parties and later made it Policy 355 v1 in the Policy Keeper application, marking it as superseding Policy 355 v.0.

6. **Policy 355 v.0 (c):** *Restatement of Profit and Loss Statements.* The Claims Administrator issued this policy in a 10/8/12 memorandum to the Parties and marked it as Policy 355 v.0(c) in the Policy Keeper application.

The Claims Administrator announces this comprehensive policy regarding the treatment of P&Ls under the Settlement Agreement. Henceforth the Claims Administrator will consider this policy to be the governing policy on this subject. All capitalized terms used in this policy that are defined in the Settlement Agreement shall have the meanings given to them in the Settlement Agreement.

**II.   Policy Statement.**

   **A.   General Requirement.**

In support of a BEL claim, Section 4 of Exhibit 4A of the Settlement Agreement Framework requires claimants to submit, for the claimed Benchmark Period, 2010 and, if applicable, 2011, either (1) monthly and annual profit and loss statements or (2) alternate source documents establishing monthly revenues and expenses. A claim without complete monthly P&Ls and an annual P&L for an applicable period shall be considered incomplete and such claimants shall be required to provide them or explain why they cannot provide them in an explanation that the Claims Administrator considers to be reasonably reliable. Claimants are not permitted merely to allocate revenues or expenses equally over a twelve month period. Rather, claimants are required to submit sufficient documentation to establish actual monthly revenues and expenses as required by the Settlement Agreement.

   **B.   Creation Date of P&Ls.**

The Claims Administrator will require verification of the dates on which a claimant's profit and loss statements were created. That verification may be verbal or in writing. The Claims Administrator may, in his discretion, request source documents for profit and loss statements. If there is a discrepancy between amounts reflected in a tax return and comparable items reflected in a profit and loss statement for the same period, the Claims Administrator may request the claimant to provide additional information or documentation.

C. **Accounting Method for P&Ls: General Rule.**

A BEL claimant is required to submit the monthly and annual profit and loss statements that were maintained in the regular course of the claimant's business, using the accounting method used in compiling such statements in the regular course of the claimant's business.

D. **Restatement of P&Ls Using Different Accounting Method: General Rule.**

The Claims Administrator has adopted this general rule regarding the circumstances in which a claimant submitting monthly and annual P&Ls in support of a BEL claim may restate such statements to alter the accounting method by which they were prepared in the regular course of the claimant's business:

1. Cash to Accrual Restatement Permitted: If the claimant's profit and loss statements for a relevant period were prepared on a cash basis, the claimant is permitted to restate such statements on an accrual basis.

2. Accrual to Cash Restatement Not Permitted: If the claimant's profit and loss statements for a relevant period were prepared on an accrual basis, the claimant is not permitted to restate such statements on a cash basis.

This general rule is subject to the specific provisions of the remainder of this policy.

E. **Claimants With P&Ls Based on Different Accounting Methods.**

The Claims Administrator will observe the following guidelines in connection with P&Ls based on different accounting methods:

1. **Claimant Submits Cash Basis P&Ls Only:**

    (a) Accrual Basis Claimants: If the available information establishes that the claimant's regular accounting method for the applicable period was accrual basis, the Claims Administrator will typically not use the cash basis P&Ls for any purpose. The claim will typically be considered incomplete and the claimant must submit accrual basis P&Ls.

    (b) Cash Basis Claimants: If the available information establishes that the claimant's regular accounting method for the applicable period was cash basis, the Claims Administrator will typically use the cash basis P&Ls for Causation Tests (if applicable) and for the Compensation Calculation on the claim.

2. **Claimant Submits Accrual Basis P&Ls Only:** The Claims Administrator typically will use the accrual basis P&Ls for Causation Tests (if applicable) and for the Compensation Calculation on the claim, regardless of whether the claimant's regular accounting method for the applicable period was cash basis or accrual basis.

3. **Claimant Submits Both Cash Basis and Accrual Basis P&Ls:**

    (a) Selection of P&Ls for Use in Review:  If the claimant submits both cash basis P&Ls and accrual basis P&Ls, the Claims Administrator typically will not use the cash basis P&Ls for any purpose.  Instead, the Claims Administrator typically will use the accrual basis P&Ls for Causation Tests (if applicable) and for the Compensation Calculation on the claim.

    (b) No Mixing of P&Ls with Different Accounting Methods:  The Claims Administrator will not mix cash basis P&Ls for some months with accrual based P&Ls for other months for any purpose.  Instead, the Claims Administrator will use only cash basis P&Ls or accrual basis P&Ls consistently across all months of the applicable Benchmark Period and Compensation Periods.

    (c) Same P&Ls for Causation and Compensation:  For claimants in Zones B, C or D that must establish Causation, the Claims Administrator will use the same set of P&Ls (cash or accrual, but not both) in determining the monthly revenue amounts to perform the Revenue Pattern Causation Tests and in performing the Compensation calculation.

F. **Claimants That Cannot Submit P&Ls Maintained in the Regular Course of Business.**

1. **Claimants Subject to This Subsection of This Policy.**

Subsection II.F of this policy applies to BEL claimants that: (1) did not maintain monthly and/or annual profit and loss statements in the regular course of their business, prepared at or near the time of the events recorded; or (2) did maintain such statements but after diligent efforts cannot locate or re-produce them to submit in support of a BEL claim.

2. **Duty of Claimants to Create P&Ls.**

A claimant subject to Subsection II.F may create such monthly statements based on contemporaneous alternate source documents (which may include, but are not limited to, invoices supporting revenues, invoices or bills supporting expenses, purchase orders, bills of lading, contracts, leases, bank statements, schedules, check registers, canceled checks, sales journals, credit card statements, etc.).   To the extent that claimants are not in possession of such supporting documentation, they are encouraged to seek and obtain such documentation from relevant third parties.  If the claimant engages an accountant to create these P&Ls, such accounting expenses may be submitted for reimbursement pursuant to the terms of the Claimant Accounting Support provisions in Section 4.4.13 of the Settlement Agreement.  The Claims Administrator may allow a particular claimant to create such monthly P&Ls in "summary" form, provided the submission contains data regarding all revenue and expenses in sufficient detail to allow the Claims Administrator properly to apply the terms of the Settlement Agreement to that specific claim. The Claims Administrator reserves the right to require submission of all or parts

of the underlying source documentation to verify the accuracy of any P&Ls that are created.

### 3. Claimants That Cannot Create P&Ls.

If creating monthly and/or annual P&Ls would result in an undue burden to a claimant subject to Subsection II.F despite the availability of the Claimant Accounting Support reimbursement, the claimant may be allowed to submit the contemporaneous alternate source documentation to the Claims Administrator. The Claims Administrator's Accountant Reviewers will determine whether, in the Claims Administrator's discretion, it is appropriate to assist the claimant with devising P&Ls sufficient to permit the Claims Administrator to conduct the causation and compensation evaluations required on the claim. In evaluating whether creating monthly and/or annual P&Ls would result in an undue burden to the claimant, the Claims Administrator will consider the following factors:

(a) The claimants eligible for treatment under this Section II.F.3 ("Eligible Claimants") typically will be *pro se* claimants.

(b) Accounting firms, tax preparers, attorneys, consultants, and other professional services typically will not be Eligible Claimants.

(c) Eligible Claimants typically are those that report income on a Form 1040 Tax Return with a Schedule C or E that includes documentation of expenses.

(d) Eligible Claimants typically are those with annual revenues less than $50,000 in each year included in the Causation and Compensation calculations (*i.e.*, the claimed Benchmark Period, 2010, and 2011, if applicable). The Claims Administrator's Accountant Reviewers may pro-rate this dollar threshold to account for partial years.

(e) Eligible Claimants typically are those that report income on Federal tax returns that were self-prepared. Claimants with tax returns prepared by an accountant typically will not be eligible for treatment under this Section II.F.3.

(f) Eligible Claimants typically will not have presented any support documentation generated with the assistance of accounting software (*e.g.*, claimants who have submitted quarterly or annual financials generated with the use of accounting software would typically not be eligible).

(g) Eligible Claimants will be able to provide support for actual revenues. If the claimant requires "Customer Mix" data to satisfy Causation, the claimant typically will not be eligible for treatment under this Section II.F.3.

### 4. Review of Claims From Claimants Subject to Subsection II.F.

In the review of BEL claims submitted by claimants subject to Subsection II.F, the Claims Administrator reserves the right to determine an appropriate level of supporting and/or explanatory documentation and information for the circumstances of a given claim. It is

anticipated that in such instances for those claims involving very small dollar amounts, a lesser level of detail may be required than may be required for larger or more complicated claims. The Claims Administrator's Accountant Reviewers will use their professional judgment in determining the appropriate level of detail required to resolve questions presented by a particular claim. In determining the level of detail required, the Claims Administrator may take into account such factors as the nature, size and complexity of the business and the historical patterns of revenues and expenses.

### G. Gaps in Information.

(a) If a BEL claimant has submitted 12 monthly P&Ls for an applicable period but is unable to produce an annual P&L statement, an annual P&L is not required and the claim shall not be considered incomplete for that reason. Instead, the Claims Administrator will create the annual P&L as necessary based upon the total revenues and expenses in the 12 monthly P&Ls.

(b) If a BEL claimant has submitted 11 out of 12 monthly P&Ls for an applicable period and an annual P&L for that period, the missing 12th monthly P&L is not typically required and the claim shall not be considered incomplete for that reason. Instead, the Claims Administrator will calculate the missing month's revenue and expenses as the difference between the 11-month total and the annual total for the period.

### H. Fraudulent Claims.

This policy is subject to the processes followed by the Claims Administrator to detect and deny payment on fraudulent claims.