UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 15-567, Christine Reitano v. Freeh Group Int'l* | : | Mag. Judge Shushan |
| *Solutions, LLC and Louis J. Freeh* | : | |

MEMORANDUM IN SUPPORT OF
SPECIAL MASTER'S MOTION TO DISMISS
<u>REITANO'S ORIGINAL COMPLAINT FOR DAMAGES</u>

Plaintiff Christine Reitano has filed suit against Special Master Louis J. Freeh ("Freeh")

and Freeh Group International Solutions, LLC ("FGIS") based on actions taken by Freeh and

FGIS in performance of their duties as Special Master appointed by this Court.  Because absolute

judicial immunity shields Freeh and FGIS from claims arising from their work as Special Master,

Reitano's Complaint should be dismissed with prejudice.

## I.  *<u>Background</u>*

In May 2013, the Court-Supervised Settlement Program ("CSSP") discovered that

Reitano's husband, a CSSP staff lawyer, had undisclosed financial interests in claims filed before

the CSSP by two lawyers representing numerous CSSP claimants.  *See* Rec. Doc. 10761-6 (July

2, 2013 Update on Review of Code of Conduct and Claims Processing Issues).  On July 2, 2013,

to ensure the integrity of the CSSP for the benefit of the parties and the public, the Court

appointed Freeh and FGIS as Special Master pursuant to the Court's inherent authority and Rule

53, Federal Rules of Civil Procedure.  Rec. Doc. 10564 at 1-2.  The Court directed Freeh and

FGIS to: (1) perform an independent investigation of the situation, (2) review any other possible

ethical violations or other misconduct within the CSSP, and also (3) examine and evaluate the

CSSP's compliance program and anti-corruption controls and recommend additional controls policies, procedures, and practices to ensure the CSSP's integrity.  *Id*.

On September 6, 2013, Freeh and FGIS filed on the Court's docket a report containing their findings as to their first two mandates.  Rec. Doc. 11287 (the "Report"). The same day, the Court issued an order for Reitano and others to show cause why the Court should not adopt the Report's findings and disqualify the show cause parties from representing CSSP claimants or collecting fees from such claimants.  Rec. Doc. 11288 at 3.  The Report also was posted on an official webpage concerning the CSSP.  *See* http://www.laed.uscourts.gov/OilSpill/OilSpill.htm.

Exercising her right under Rule 53, Reitano filed substantive and procedural objections to the Report.  Rec. Docs. 11414, 11681, 11683 & 11990.  Reitano also objected to the continued appointment of Freeh as Special Master.  Rec. Doc. 12219.

On February 21, 2014, Freeh and FGIS filed a consolidated reply to Reitano's objections, as well as to objections of other show cause parties.  Rec. Doc. 12393 (the "February 2014 Reply").  On November 7, 2014, the Court held an evidentiary hearing, noting that Reitano should have recognized that her conduct in seeking a job for her husband with a CSSP vendor created a conflict of interest.  Rec. Doc. 13675 at 249.  On February 26, 2015, the Court issued an order finding that there was "not clear and convincing evidence to support a finding of unethical conduct" by Reitano.  Rec. Doc. 14221 at 5.  The Court imposed no sanctions on her.

On February 23, 2015, Reitano sued Freeh and FGIS for defamation and malicious prosecution.  Comp. at ¶¶ 12-14.  Alleging that the Court has jurisdiction under 28 U.S.C. § 1332, Reitano states that the Report and February 2014 Reply contain false accusations about

her. *Id*. at ¶ 2.  For example, Reitano alleges that, in September 2013, Freeh and FGIS:

> published a report on the internet which contains (a) false, malicious and reckless accusations of felony criminal conduct, specifically (according to defendants) federal crimes of "fraud, money laundering, conspiracy or perjury," against Ms. Reitano (defamation per se) and all without regard for the truth or falsity of the allegations; and (b) false, malicious and reckless accusations of professional and ethical violations, without regard for the truth or falsity of the allegations.

*Id*. at ¶ 5.  She alleges that, in February 2014, Freeh and FGIS:

> obviously not to be bothered or concerned with the truth, published another report which restated and reinforced their earlier false report by claiming that not one of Ms. Retaino's objections to the first report (the sworn testimony of Ms. Mancuso) " . . . changes in any way the validity of the report's finding."  Thus, defendants, very publicly, repeated, reinforced and doubled down on their earlier false, malicious and reckless statements, in the face of sworn testimony that contradicted their false accusations.

*Id*. at ¶ 8.

The record belies Reitano's baseless allegations and the Special Master disputes her self-serving assertions, which mischaracterize the proceedings and filings before the Court.  These errors need not be individually addressed, however, as Rule 12(b) authorizes dismissal here upon a dispositive issue of law — namely, the absolute immunity afforded a court-appointed special master.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

## II.  *Legal Analysis*

Under Louisiana and federal common law, absolute judicial immunity from liability extends to court-appointed special masters.  Reitano's meritless suit should thus be dismissed for failure to state a claim.  Because the defect is incurable and should have been plain to Reitano (an attorney) and her counsel, the dismissal should be with prejudice.

A.     Louisiana Immunity Law Applies to Reitano's State Law Claims.

Louisiana immunity law appears to apply here because Reitano's defamation and malicious prosecution claims are state law causes of action brought under the Court's diversity jurisdiction.  Comp. at ¶ 2; *see Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 885-86 (5th Cir. 2004) (applying state immunity law to state law claims); *Cantu v. Rocha*, 77 F.3d 795, 803-05 (5th Cir. 1996) (same).  Louisiana supplies the substantive law for both alleged causes of action.  *See In re: N.Y. Life Ins. Co. Agents' Class Claimants Solicitation Litig.*, 92 F. Supp. 2d 564, 568 (E.D. La. 1997) (explaining Louisiana's choice-of-law approach to tort claims and holding that Louisiana law applied to plaintiff's tort claims, including for defamation, where plaintiff lived in Louisiana and the relevant conduct occurred in Louisiana).  Even if federal immunity law were to apply, the result would be the same, as "Louisiana jurisprudence on judicial immunity mirrors the federal doctrine."  *Major v. Painter*, 945 So. 2d 100, 103 (La. Ct. App. 2006).

B.     Special Masters Are Entitled to Absolute Judicial Immunity and Are Protected Against Suits Arising from Their Functions as Special Masters.

In *Palmisano v. Tranchina*, 31 So. 3d 542, 544 (La. Ct. App. 2010), the trial court in a divorce proceeding appointed a special master, under the Louisiana analog to Rule 53, to advise the court regarding the parties' community property.  The special master made recommendations regarding the legal status, value, and division of that property.  *Id.*  The wife later sued the special master for damages, contending that he misused his role as special master for his own financial gain.  The wife alleged, for example, that the special master attempted to secure a financial interest in her property.  *Id.* at 544-45.

The Louisiana Court of Appeal affirmed the trial court's dismissal of the case on absolute judicial immunity grounds.  *Id.* at 545-46.  The court likened special masters to court-appointed

- 4 -

experts, whom Louisiana courts already had found were entitled to absolute judicial immunity. *Id.*; *see, e.g.*, *Todd v. Angelloz*, 844 So. 2d 316, 320-21 (La. Ct. App. 2003) (court-appointed psychologist who evaluated father "to assist the trial court in making a custody determination"); *S.T.J. v. P.M.*, 556 So. 2d 244, 247 (La. Ct. App. 1990) (court-appointed psychologist who "rendered reports and recommendations which aided the court in making a final decision" as to custody); *see also Faust v. Pesses*, 2015 La. App. LEXIS 275, at *3-4 (La. Ct. App. Feb. 11, 2015) (court-appointed social worker in custody dispute who prepared written report with custody recommendations).

Drawing from this case line, the court in *Palmisano* quoted the Louisiana Supreme Court's rationale for immunizing court-appointed experts from suit — a rationale equally applicable to court-appointed special masters:

> [S]uch court-appointed experts are entitled to absolute judicial immunity, as are judges, protecting them from having to litigate the manner in which they perform these functions. . . . ["]Should they be found unprotected by such immunity, it can be envisioned that [experts] would seek to avoid future court appointments and that fear of civil liability could mar opinions and recommendations given to the court."

*Palmisano*, 31 So. 3d at 546 (quoting *Marrogi v. Howard*, 805 So. 2d 1118, 1127 (La. 2012)).

The court in *Palmisano* emphasized that the Rules provide an opportunity to object to a special master's recommendations and to appeal a trial court's adoption of them. *Id.* Objection followed, if unsuccessful, by appeal, would have been "the appropriate course of conduct" for the wife to challenge the special master's recommendations. *Id.* But given the special master's entitlement to absolute judicial immunity, the wife had no option of filing suit against him for damages when she disagreed with his recommendations. *Id.*

Federal courts applying federal common law similarly have found court-appointed special masters to be absolutely immune from suit.[1]  This is so because a special master, when accepting a court appointment, assumes the duties and obligations of a judicial officer and must be free to exercise the assigned functions with the same independence and fearless performance required of an actual judge.  *See Antoine v. Byers Anderson*, 508 U.S. 429, 436 (1993) ("The doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability."); *Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 450 n.11 (S.D.N.Y. 2009) (extending absolute judicial immunity to special masters as an "arm of the court").  A special master's discretionary exercise of judicially delegated duties is functionally comparable to the role of a judge, thus affording the special master absolute immunity in the exercise of those duties.  *See Antoine*, 508 U.S. at 436 ("When judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges — that is, because they, too exercise a discretionary judgment as part of their function." (internal quotation marks omitted)).

Crucially, a special master conducting an investigative function "would be crippled in the exercise of those functions if [the investigation's subjects] could sue him for having been investigated."  *Dilacio v. N.Y. City Dist. Council of the United Bhd. of Carpenters*, 593 F. Supp.

---

[1] *See, e.g.*, *Morkel v. Davis*, 513 Fed. Appx. 724, 729 (10th Cir. 2013) (court-appointed special master in state court custody case); *Wilson v. Bush*, 196 Fed. Appx. 796, 798-99 (11th Cir. 2006) (court-appointed special master in state court quiet-title action); *Gabbert v. Conn*, 131 F.3d 793, 798, 803-04 (9th Cir.1997) (special master appointed by state court to oversee search of attorney's office); *Atkinson-Baker & Assocs v. Kolts*, 7 F.3d 1452, 1453-55 (9th Cir. 1994) (special master appointed by federal district court, under Rule 53, to preside over pretrial and discovery matters); *Hughes v. County of Washoe*, 2012 U.S. Dist. LEXIS 94346, at *7, *9-10 (D. Nev. Apr. 23, 2012) (court-appointed special master in state court family law case); *Hofmann v. EMI Resorts, Inc.*, 689 F. Supp. 2d 1361, 1371-72 n.16 (S.D. Fla. 2010) (special master appointed by federal district court to investigate and report back regarding suspected fraud); *Quotoriano v. Raff & Becker*, 675 F. Supp. 2d 444, 445, 449-51 (S.D.N.Y. 2009) (special master appointed by federal district court to implement court order requiring union to end discriminatory practices); *Sigg v. Dist. Court of Allen Cty., Kan.*, 2007 U.S. Dist. LEXIS 21222, at *23-25 (D. Kan. Mar. 23, 2007) (special master appointed by state trial court to oversee financial aspects of divorce proceeding).

2d 571, 579 (S.D.N.Y. 2008).  Indeed, courts "would be hard pressed" to enlist investigators "if those individuals had to worry about being sued for damages by persons or entities affected by their conduct in discharge of duties placed upon them by the courts."  *Id.*

      C.    <u>Freeh and FGIS Are Entitled to Absolute Judicial Immunity</u>.

The Court appointed Freeh and FGIS as Special Master to perform an independent investigation of potential misconduct within the CSSP.  As the Court explained in issuing its mandate, the appointment was necessary to ensure the integrity of the CSSP and because no district judge or magistrate judge was available to conduct the task effectively and timely.  Rec. Doc. 10564.  In the Report and the February 2014 Reply — the crux of Retiano's claims — Freeh and FGIS explained the findings resulting from an extensive discretionary investigation guided by the Court's appointing mandate and the investigative experience of a professional team.  Because both the Report and the February 2014 Reply were prepared and issued in Freeh and FGIS' capacity as Special Master, absolute judicial immunity protects them from damages suits as to those functions.

As in *Palmisano*, filing objections with the Court was "the appropriate course of conduct" for Reitano to challenge Freeh and FGIS' investigative findings.  *See Palmisano*, 31 So. 3d at 546; Order & Reasons on Special Master's Motion for Return of Payment at 12 n.9 (Doc. Rec. 12794 ("Order & Reasons")) (noting the procedural and substantive protections for parties to object to the Special Master's Report and obtain *de novo* review by the Court).  In fact, Reitano did just that.  *See* Rec. Doc. Nos. 11414, 11681, 11683, 11990.  But she did not also have the option of filing a civil action against Freeh and FGIS because she disagreed with their findings.  *See Palmisano*, 31 So. 3d at 546.  If the law were otherwise, special masters "would

seek to avoid future court appointments and . . . fear of civil liability could mar opinions and recommendations given to the court."  *See id.*

In her Complaint, Reitano emphasizes that the September 2013 Report was made available on the Internet.  *See* Comp. at ¶ 4 ("The defendants began their damage to Ms. Reitano in September, 2013, by publishing on the internet . . . ."); ¶ 5 ("The defendants published a report on the internet . . . ."); ¶ 13 ("The defendants published their accusations on the internet to be sure that the broadcast of the accusations was of the widest proportions.").  Yet that act does not place the Special Master outside the protection of absolute judicial immunity.  After all, federal district court case filings are widely available on the Internet as a matter of course through the PACER electronic filing system.  Filings on the MDL docket are electronically shared with hundreds of people by email with every filing.

Further, public distribution of the Report was important to fulfilling the Court's mandate to the Special Master of ensuring the integrity of the CSSP by assuring claimants of the validity and fairness of the process for distributing billions of dollars held in trust for the benefit of those harmed by the Deepwater Horizon disaster.  *See* Doc. Rec. 10564 at 2 (appointing the Special Master to "ensure the integrity of [the CSSP] for the benefit of the parties and the public"); Order & Reasons at 22 (noting that fraud against the CSSP concerned "issues of great moment to the public" and "involve[d] far more than an injury to a single litigant"); http://www.laed. uscourts.gov/OilSpill/OilSpill.htm (posting the Report on the judicial website established to keep the public informed on the Deepwater Horizon MDL).  Nothing about Internet publication changes the application of an absolute judicial immunity for Freeh and FGIS.

### III.   *<u>Conclusion</u>*

For all of these reasons, Louis J. Freeh and Freeh Group International Solutions, LLC, respectfully request that this Court dismiss Christine Reitano's Complaint with prejudice.

Respectfully submitted,


<u>/s/Eli Segal</u>
Michael E. Baughman, PA Bar #78690
Eli Segal, PA Bar #205845
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215-981-4964

Dated:   April 17, 2015