UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION "J" |
| | * | JUDGE BARBIER |
| This Document Relates to: | * | |
| Nos. 10-2179; 10-4536 | * | |
| | * | MAGISTRATE NO. 1 |
| | * | MAGISTRATE SHUSHAN |
| *   *   *   *   *   *   *   *   *   *   *   * | | |

## ANADARKO PETROLEUM CORPORATION'S
## PENALTY PHASE POST-TRIAL REPLY BRIEF

MORGAN, LEWIS & BOCKIUS LLP

James J. Dragna
jim.dragna@morganlewis.com
Morgan, Lewis and Bockius LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@morganlewis.com
Thomas R. Lotterman
thomas.lotterman@morganlewis.com
David B. Salmons
david.salmons@morganlewis.com
Randall M. Levine
randall.levine@morganlewis.com
Morgan, Lewis & Bockius LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street
Suite 1300
New Orleans, LA 70112
Telephone (504) 592-0691
Facsimile:  (504) 592-0696

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I.   THE GOVERNMENT'S ARGUMENTS FOR ASSESSING A PENALTY
     AGAINST ANADARKO ARE OUTMODED AND WRONG ....................................... 1

     A.   No Court Has Penalized A Non-Culpable Defendant Since The 1990
          Amendment Of Section 311 And Enactment Of OPA .......................................... 2

     B.   A Penalty Amount Cannot Be Based On A Party's Status As An Owner ............. 3

     C.   A Penalty Cannot Be Imposed Or Increased Because A Party Did Not
          Settle ....................................................................................................................... 5

II.  THE GOVERNMENT'S SECTION 311 (b)(8) FACTOR ANALYSIS IS
     FLAWED ............................................................................................................................ 6

     A.   Economic Benefit Is The "Starting Point" For Penalty Calculation ...................... 6

     B.   The Spill Was Very Serious, But That Does Not Justify Punishing
          Anadarko Because Anadarko Did Not Cause Or Control The Severity Of
          The Spill .................................................................................................................. 7

     C.   The Mitigation Factor Does Not Warrant Penalizing Anadarko ........................... 8

     D.   Transocean's And MOEX's Penalties Do Not Support Penalizing
          Anadarko ................................................................................................................. 8

     E.   Other Factors Weigh In Anadarko's Favor ............................................................ 9

CONCLUSION ............................................................................................................................. 10

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*BMW of North America, Inc. v. Gore*,
 517 U.S. 559 (1996) ............................................................................................................... 5

*Environment Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*,
 Civil Action No. H-10-4969, 2014 WL 7177794 (S.D. Tex. Dec. 17, 2014) ........................... 7

*Kothe v. Smith*,
 771 F.2d 667 (2d Cir. 1985) .................................................................................................... 5

*Mathias v. Accor Economy Lodging, Inc.*,
 347 F.3d 672 (7th Cir. 2003) ................................................................................................... 4

*Montauk Oil Transp. Corp. v. Tug El Zorro Grande*,
 54 F.3d 111 (2d Cir. 1995) ...................................................................................................... 2

*Nat'l Ass'n of Gov't Employees, Inc. v. Nat'l Federation of Fed. Employees*,
 844 F.2d 216 (5th Cir. 1988) ................................................................................................... 5

*Powell v. Texas*,
 392 U.S. 514 (1968) (Marshall, J.) .......................................................................................... 5

*Reynolds v. C.I.R.*,
 861 F.2d 469 (6th Cir. 1988) ................................................................................................... 9

*St. Ann v. Palisi*,
 495 F.2d 423 (5th Cir. 1974) ............................................................................................... 4, 8

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
 451 U.S. 630 (1981) ................................................................................................................ 9

*Tull v. United States*,
 481 U.S. 412 (1987) ................................................................................................................ 5

*United States v. Coastal States Crude Gathering Co.*,
 643 F.2d 1125 (5th Cir. 1981) ................................................................................................. 2

*United States v. Egan Marine Corp.*,
 No. 08 C 3160, 2011 WL 8144393 (N.D. Ill. Oct. 13, 2011) .................................................. 3

*United States v. Egan*,
 No. 1:10-cr-00033 (N.D. Ill. Jun. 10, 2014) ............................................................................ 3

*United States ex rel. Administrator of E.P.A. v. CITGO Petroleum Corp.*
  ("*CITGO*"), 723 F.3d 547 (5th Cir. 2013) .......................................................................1, 6, 7

**Statutes**

33 U.S.C. § 1321(b)(8) ........................................................................................................ *passim*

**Other Authorities**

123 Cong. Rec. S19,656 (Dec. 15, 1977) ..................................................................................5, 7

## PRELIMINARY STATEMENT

The Government asserts only three reasons why Anadarko's penalty calculation should start at the maximum, and end with more than $1 billion: "the seriousness of the violation, Anadarko's status as a 25% owner of the polluting enterprise, and the penalty paid by its contractor Transocean." US Br. at 1.  None of these reasons justifies punishing Anadarko, much less in an amount the Government concedes is "massive" and "unprecedented."  The latter two reasons are not Section 311(b)(8) factors.  Anadarko's owner status is immaterial at this stage because penalty amounts must be set based on *conduct*, not *status*.  Anadarko's percentage of minority ownership is also irrelevant, as the Government itself acknowledged in the MOEX settlement.  Rec. Doc. 6436-1 at 15.  The reference to Transocean as Anadarko's "contractor" is untrue and irrelevant; as the Government knows, Anadarko had no contract with Transocean and did not control its activity.  All that remains is the "seriousness of the violation."  The spill was extremely serious, but that does not override the other (b)(8) factors, nor change the economic benefit-centered methodology the Fifth Circuit required in *CITGO*.  Anadarko had no control over the spill or its seriousness, so it would be irrational and unfair to punish Anadarko based on seriousness alone.

The Government has not shown that penalizing Anadarko will serve the CWA's purposes of punishment and deterrence.  Anadarko should not suffer any more than a nominal penalty.

## ARGUMENT

**I.   THE GOVERNMENT'S ARGUMENTS FOR ASSESSING A PENALTY AGAINST ANADARKO ARE OUTMODED AND WRONG.**

The Government relies on inapposite case law from the 1970s and 1980s to argue that imposing severe penalties on faultless defendants accords with Congress's intent.  *E.g.*, US Br. at 39.  Congress transformed the structure and purposes of the Section 311(b) penalty provision in 1990.  The 1990 amendment of Section 311(b) and enactment of OPA removed any prior ration-

1

ales for imposing Section 311(b) penalties on faultless owners like Anadarko. The Government acknowledges those events, but not their transformative effect. *Compare* US COL ¶¶ 27–31 ("The obligations to respond, pay response costs, and pay a civil penalty are three separate duties created by three different statutory provisions.") *with* US COL ¶¶ 16, 23–26 (arguing that penalties "shift the cost of oil spills"). That mistake, among others, is fatal to the Government's case.

### A.  No Court Has Penalized A Non-Culpable Defendant Since The 1990 Amendment Of Section 311 And Enactment Of OPA.

A few pre-OPA cases penalized faultless defendants for the remedial purpose of shifting pollution costs. *E.g.*, *U.S. v. Coastal States Crude Gathering Co.*, 643 F.2d 1125, 1127–28 (5th Cir. 1981) ("The civil penalty serves the Act's goal of pollution-free water by providing a means of funding the administration and enforcement of the Act.") (quotation omitted). But today, as the Government recognizes, OPA shifts costs without regard to fault, and Section 311(b) penalties have nothing to do with cost shifting. Rec. Doc. 4840. Because Section 311(b) penalties now serve only to punish and deter, the pre-OPA cases are inapplicable to the current law.

Even before OPA, penalizing faultless defendants raised constitutional and fairness concerns. Two features of the pre-OPA regime mitigated those concerns. First, penalties were primarily remedial, so a faultless defendant could seek indemnity for the penalty from a culpable party. *Montauk Oil Transp. Corp. v. Tug El Zorro Grande*, 54 F.3d 111, 114 (2d Cir. 1995). As this Court has held, Section 311(b) penalties are no longer remedial, and therefore may not be indemnified under current law. Rec. Doc. 5446 at 23.

Second, the penalties were very small. The largest penalty a court ever approved against a non-culpable party under the old Section 311(b) was $3,500. *Montauk*, 54 F.3d at 114. In *Coastal States*, on which the Government relies, the Fifth Circuit approved a penalty against a faultless defendant, but reduced it from the maximum $5,000 to just $1,000. 643 F.2d at 1127–

28. The Government hides those figures and refers to the pre-OPA penalties only as percentages of the pre-OPA maximum. US Br. at 45 n.33. That tactic acknowledges that the pre-OPA cases imposing penalties of a few hundred or thousand dollars against faultless defendants are no help for the Government's $1 billion-plus demand against Anadarko. US Br. at 45. When the statutory maximum was just $5,000, a penalty equal to 20% of the maximum raised few constitutional or fairness concerns—especially because the penalty could be indemnified or insured. But hitting a faultless owner with a $1 billion penalty that cannot be indemnified or insured is neither rational nor fair no matter what the maximum penalty may be.

Since the transformation of Section 311(b) in 1990, no court has assessed a penalty against a faultless defendant. The Government is demonstrably wrong that *Egan Marine* is an exception to that trend. *See* US Br. at 39 (citing *United States v. Egan Marine Corp.*, No. 08 C 3160, 2011 WL 8144393, at *7 (N.D. Ill. Oct. 13, 2011)); *see also* US COL ¶¶ 15, 78, 80. The only culpability question in *Egan Marine* was whether the defendant was *grossly* negligent—it wasn't. 2011 WL 8144393 at *4. The defendant in *Egan Marine* was so obviously at fault, *id.* at *7, that it was later convicted of *criminal negligence* under the CWA. *United States v. Egan*, No. 1:10-cr-00033 (N.D. Ill. Jun. 10, 2014) (attached as Ex. A). This Court should not be the first to penalize a non-culpable defendant since the 1990 amendments, and certainly not in an amount anywhere close to what the Government seeks here.

**B.  A Penalty Amount Cannot Be Based On A Party's Status As An Owner.**

In arguing that "[p]enalizing Anadarko based on its *status as an owner* is entirely consistent with Congress' intent that the entities that stand to profit from the activity are the ones penalized when an incident occurs," US Br. at 40 (emphasis added), the Government blurs two distinct statutory inquiries. Section 311(b)(7) first determines who is "subject to" civil penalties based on their status as an "owner, operator, or person in charge." The defendant's conduct is

3

irrelevant to that threshold inquiry.  Section 311(b)(8) then determines the extent of penalties to be assessed, if any, based on the defendant's conduct—its culpability, prior violations, mitigation efforts, and the like.  Ownership status is not a (b)(8) factor, let alone one that warrants imposing a large penalty.  Indeed, the factor that is most focused on a defendant's status is the economic impact of the penalty on the violator, which is a mitigating factor for reducing a penalty.

There is no basis in Section 311(b)(8) to distinguish among owners based solely on their ownership shares, except to the extent that a majority share may carry with it a right of control.  The Government concedes that minority ownership—and lack of control—*mitigates* a penalty.  Rec. Doc. 6436-1 at 15.  Anadarko's relatively larger minority ownership share therefore does not meaningfully distinguish it from MOEX.

The Government's atextual approach runs headlong into settled constitutional norms.  Penalties, whether civil or criminal, may punish conduct but not status.  *St. Ann v. Palisi*, 495 F.2d 423, 425 (5th Cir. 1974) (civil punishment must "be founded upon an individual's act or omission, not from his status"); *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672, 676 (7th Cir. 2003) (civil penalties "should be based on the wrong done rather than on the status of the defendant").  Section 311(b)(8) accords with those norms; the Government's arguments do not.

For much the same reasons, the Government is also wrong that Anadarko "should pay a penalty as retribution for the social harm that came from the polluting enterprise in which it stood to profit."  US Br. at 42.  The Government conflates the "polluter pays" concept applicable to *damages* and now embodied in OPA, with the entirely different concept of *penalties*.  As to penalties, that argument is improper and unconstitutional from every angle.  The Court cannot punish Anadarko for the conduct of others in a so-called "polluting enterprise" because a punishment must be based upon a defendant's own wrongful conduct.  *See St. Ann*, 495 F.2d at 425

("[G]uilt by association [is] wholly alien to American liberty."). There is no exception that spreads guilt among owners of legitimate enterprises or other associations that stand to profit from lawful activities—like Government-licensed extraction of minerals from its own land. The Government cannot license (and receive royalties) from profit-making activity and penalize it at the same time, for "penalties may be inflicted only if the accused has committed some act … which society has an interest in preventing." *See Powell v. Texas*, 392 U.S. 514, 533 (1968) (plurality) (Marshall, J.); *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 573 n.19 (1996) ("[W]e have never said that a sentencing court could properly punish lawful conduct.") (emphasis omitted).

### C. A Penalty Cannot Be Imposed Or Increased Because A Party Did Not Settle.

The Supreme Court has *never* "explicitly recognized that Congress intended that 'penalties assessed by judges should be sufficiently higher than penalties to which the Agency would have agreed in settlement to encourage violators to settle,'" as the Government contends. US Br. at 52–53 (citing *Tull v. U.S.,* 481 U.S. 412, 426 (1987)). In holding that a defendant in a CWA civil penalty case has a jury right, the *Tull* Court referenced remarks of Senator Muskie, who *in turn* quoted memoranda and letters from an EPA official, who *in turn* articulated *EPA's* view that penalties assessed by judges should be higher than penalties assessed by the agency itself, in order to encourage settlements. *Tull*, 481 U.S. at 422 (citing 123 Cong. Rec. S19,656 (Dec. 15, 1977) (attached as Ex. B at 24–25)). That slip of legislative history was relevant in *Tull* only because it indicated the drafters' presumption that judges, not juries, would assess penalties. Neither the Supreme Court nor Congress endorsed EPA's strategy for penalizing "failures" to settle.

Courts calculating a penalty or punishment cannot take into account the defendant's choice to exercise its right to trial. The law may "favor[] the voluntary settlement of civil suits," but "it does not sanction efforts by trial judges to effect settlements through coercion." *Kothe v. Smith*, 771 F.2d 667, 669 (2d Cir. 1985) (citation omitted); *Nat'l Ass'n of Gov't Employees, Inc. v.*

5

*Nat'l Federation of Fed. Employees*, 844 F.2d 216, 223 (5th Cir. 1988) ("Failure to compromise a case ... does not constitute grounds for imposing sanctions."). There are many, many reasons why cases go to trial even when defendants prefer to settle. Settlements are necessarily mutual, and the Government's contention that courts should punish defendants who do not acquiesce to its demands improperly assumes that its demands are always reasonable. It also would perversely encourage the Government to make unreasonable demands knowing defendants would bear greater risks for resisting. That is terrible policy, and the Court should have no part in it.

## II. THE GOVERNMENT'S SECTION 311(b)(8) FACTOR ANALYSIS IS FLAWED

The Government effectively admits that all of the penalty factors save one either weigh in Anadarko's favor (degree of culpability, mitigation, economic benefit, and other matters as justice may require) or are neutral (past violations, other penalties, and economic impact). The one factor that the Government relies on exclusively (seriousness) cannot bear all the weight, and its criticisms of Anadarko's arguments under the other factors are meritless.

### A. Economic Benefit Is The "Starting Point" For Penalty Calculation.

"[E]conomic benefit serves as the starting point for calculating the civil penalty and is adjusted based on the remaining statutory factors." *U.S. ex rel. Administrator of E.P.A. v. CITGO Petroleum Corp.* ("*CITGO*"), 723 F.3d 547, 551 (5th Cir. 2013). The Government defies the Fifth Circuit, stating that "economic benefit *does not* serve as the starting point for penalty calculation." US COL at 26 (emphasis added). The Government urges the Court to ignore economic benefit, to start its penalty calculation at the statutory maximum, and to reduce the penalty from there. The Government tries to distinguish *CITGO* because there the Government "argued that economic benefit was a substantial factor" but here does not. US Br. at 48, n.35. That is no reason to distinguish *CITGO*. The Fifth Circuit did not start with economic benefit in *CITGO* just because the Government wanted to start there; Congress directed courts to focus penalties on

6

eliminating any economic benefit from a violation—*in all cases*. *See* Ex. B at 25 (noting the "congressional intent" to impose CWA penalties "commensurate with the economic benefit").

In this case, economic benefit *is* a "substantial factor"—and one that heavily favors Anadarko. The Government concedes that Anadarko obtained little to no benefit from the violation, certainly no more than "in the low millions of dollars." US COL ¶ 70. Adhering to *CITGO*, the Court should take that figure as the "starting point" and should not adjust it upward based on any other factor. *See Environment Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, Civil Action No. H-10-4969, 2014 WL 7177794, at *23 n.267 (S.D. Tex. Dec. 17, 2014) (assessing $0.00 civil penalty due to lack of economic benefit, despite $600 million maximum).

### B. The Spill Was Very Serious, But That Does Not Justify Punishing Anadarko Because Anadarko Did Not Cause Or Control The Severity Of The Spill.

The Government argues that the starting point does not matter because the violation was so severe that the seriousness factor by itself "would jump the penalty back up to the maximum." US Br. at 49. Seriousness does not outweigh all other factors; if it did, it would be the starting point or the only factor listed. The seriousness factor does not meaningfully apply to a defendant who bears no fault, lacked control, and obtained no economic benefit—*i.e.*, to Anadarko. Even for the most serious violations, those undisputed facts prevent a penalty from serving any retributive or deterrent purpose. To escape that result, the Government constantly lumps Anadarko in with defendants who were culpable and did have control. *E.g.*, US Br. at 9 ("seriousness of the *Defendants'* violations"); *id.* at 23 ("*Defendants'* oil spill); *id.* at 49 ("what BPXP *and Anadarko* let loose here…") (emphases added). Rhetoric does not change the undisputed facts. Nor can it mask the Government's failure to identify any legal, factual, or rational basis to use the spill's seriousness to ratchet up Anadarko's penalty to over a billion dollars.

### C. The Mitigation Factor Does Not Warrant Penalizing Anadarko.

The Government's mitigation-factor argument is emblematic of its backwards approach to the penalty factors. The Government argues that the Court would be "wrong" to "reduce Anadarko's penalty" based on its mitigation efforts, US Br. at 24, as if it were Anadarko's burden to show why an unjustified penalty should be *reduced*. It is the Government's burden to show why Anadarko *should be* penalized under the factors, and the mitigation factor does not weigh in favor of the Government's billion-dollar demand.

"Responsible parties are obligated to follow orders from the Federal On-Scene Coordinator." US Br. at 21, n.17. It is undisputed that Anadarko did everything it was asked and that it repeatedly offered unlimited assistance to the Government and BP. Anadarko cannot be penalized for its *lawful* conduct, nor should it be criticized for matters outside its control.

### D. Transocean's And MOEX's Penalties Do Not Support Penalizing Anadarko.

The Court must reject the Government's request that Anadarko be penalized more than "its contractor Transocean." US Br. at 1. First, as a matter of law and undisputed fact, Transocean was BP's contractor, not Anadarko's—as the Government well knows. *See* APC FOF ¶¶ 8, 15 (contractors chosen solely by the operator under Operating Agreement); Rec. Doc. 4840 (Government analysis of BP/Transocean drilling contract). Second, Anadarko and Transocean are not at all similar: Anadarko had no fault yet paid billions in OPA damages; Transocean was 30% responsible yet paid *none*. APC FOF ¶ 28. Third, punishing Anadarko more than Transocean *because* Anadarko was an owner and Transocean a contractor would perversely (and unconstitutionally) punish status *more harshly* than negligence. *See St. Ann*, 495 F.2d at 425.

If Anadarko is to be penalized like one of the settling parties—and it should not, because penalties must be "tailored to each individual violator," Rec. Doc. 4840 at 1—MOEX is the closest analog. The Government is so eager to avoid that analogy that it asserts arguments *directly*

8

*contrary* to arguments it already made to this Court.  For example, the Government contends that Anadarko's (supposed) "lack of active participation" justifies a large penalty because "[a]cting passive can't be a free pass."  O'Rourke 28:7–21 (opening statement).  But earlier, the Government said the opposite about MOEX—that its "'lack of active participation' in the drilling operation" *mitigated* MOEX's penalty exposure.  Rec. Doc. 6436-1 at 23.  Purported "lack of active participation" is an irrelevant and unfounded assumption in any event.  The Court found that Anadarko violated no duty and precluded evidence on the subject.

Nor can Anadarko and MOEX be distinguished in light of the fact that Anadarko operates other leases and MOEX does not.  US Br. at 53.  The Government approved both Anadarko and MOEX as minority leaseholders, and both were non-operating investors.  Since the Court accepted that a $45 million CWA penalty was appropriate for MOEX,[1] the Government's effort to seek more from Anadarko should be rejected.  *See Reynolds v. C.I.R.*, 861 F.2d 469, 473 (6th Cir. 1988) (approval of settlement estops the Government from taking inconsistent position).

### E. Other Factors Weigh In Anadarko's Favor.

Courts exercise caution when "severe ... penalties will chill wholly legitimate business agreements."  *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 637 (1981).  The Government failed to show at trial that penalizing Anadarko would have any beneficial effect and did not undermine the evidence that penalizing Anadarko would result in harmful over-deterrence.

Anadarko's OPA liability and its $4 billion damages payment achieve deterrence by themselves.  There is no evidence that BP spent Anadarko's $4 billion for anything but its intended purpose—paying the claims of those injured by the spill.  The Government's view that

---

[1]  The Government admits that "MOEX agreed to pay $45 million in civil penalties to the United States to resolve alleged violations of the Clean Water Act resulting from the spill," and also agreed to pay another $45 million for *non-CWA purposes*: "$25 million in civil penalties to the five Gulf States" and "supplemental environmental projects at a cost of at least twenty million dollars."  US FOF ¶ 584.

9

those monies were fungible conflicts with the position it took when settling with MOEX, namely, that MOEX's $1 billion payment "cover[ed] compensatory damages and costs (including natural resource damages)" and cleanup costs. Rec. Doc. 6436-1 at 6. Anadarko paid $4 billion for the same purposes. *Compare* TREX-050473 at 3, § 3.4 *with* TREX-050444 at 3, § 3.4.

Questioning whether $4 billion is "exactly the right amount of damages" to achieve deterrence, US Br. at 41–42, the Government suggests $4 billion is too low because "Anadarko's share of the damages has not yet been determined." US FOF ¶ 1211. In fact, when this Court dismissed all other parties' cross-claims against Anadarko, it determined that Anadarko's "share of the damages" is $0.00. Anadarko's $4 billion payment in OPA damages to resolve a contractual issue with BP only reinforces that no penalty is needed to achieve deterrence.

As to safety, the parties agree that non-operators like Anadarko can and do participate in varying degrees in offshore operations. But by pursuing "massive" penalties against Anadarko, the Government is sending a message that non-operators will be penalized if they are not "active" enough. This is an entirely subjective (and unprecedented) standard, and non-operators will have no choice but to increase their participation across the board in every project or risk billions of dollars in penalties. The Government's approach would wreak havoc on BSEE's own regulations, which require a single ultimate work authority for offshore operations, and would destroy the current industry standard of participating at varying degrees based on the individual needs of each offshore project. *See* APC FOF ¶¶ 120–130. As Mr. Arnold testified, imposing "massive" penalties would force increased participation, dilute accountability, slow critical reaction times, and decrease offshore safety.

## CONCLUSION

For the foregoing reasons, and for those set forth in Anadarko's Findings of Fact and Conclusions of Law, the Court should impose no more than a nominal penalty on Anadarko.

Respectfully submitted,

DATED: April 24, 2015                **MORGAN, LEWIS & BOCKIUS LLP**

/s/ *James J. Dragna*_____
James J. Dragna
jim.dragna@morganlewis.com
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@morganlewis.com
Thomas R. Lotterman
thomas.lotterman@morganlewis.com
David B. Salmons
david.salmons@morganlewis.com
Bryan M. Killian
bryan.killian@morganlewis.com
Randall M. Levine
randall.levine@morganlewis.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

**KUCHLER POLK SCHELL
WEINER & RICHESON, LLC**

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA 70112
Telephone (504) 592-0691
Facsimile (504) 592-0696

12

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of April, 2015.

                                                                   /s/ *James J. Dragna*
                                                                   James J. Dragna