UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig         "Deepwater Horizon" in the Gulf         of Mexico, on April 20, 2010 | * * * * * | MDL No. 2179<br><br>SECTION "J" |
| This Document Relates To:<br><br>No. 2:13-cv-01962, ATP Oil & Gas Corp. v. BP Exploration & Production Co. et al. | * * * * * | JUDGE BARBIER<br><br><br>MAGISTRATE JUDGE SHUSHAN |

## Affidavit of Rodney Tow, Trustee
## For the Chapter 7 Bankruptcy Estate of
## ATP Oil & Gas Corporation

STATE OF TEXAS              §
                            §
COUNTY OF MONTGOMERY        §

Before me, the undersigned Notary Public, on this day personally appeared Rodney Tow, a person known to me to be the person whose name is subscribed below, and who being duly sworn stated:

1. My name is Rodney Tow. I am the Chapter 7 Trustee for the Chapter 7 bankruptcy estate of ATP Oil & Gas Corporation pending in the Southern District of Texas, Houston Division, under Case No. 12-36187. I am over the age of 18 years and, except for the information I have included from court filings and transcripts, I have personal knowledge of the facts stated herein.

2. ATP Oil & Gas Corporation converted from a case under chapter 11 of Title 11 of the United States Code to a case under chapter 7 Title 11 on June 26, 2014. The United States

Trustee Affidavit                                                                                     Page 1

Trustee appointed me as the Chapter 7 Trustee. Under Bankruptcy Code section 704, I am, among other things, responsible for liquidating the Chapter 7 estate's assets in order to pay creditors.

3. When a company enters Chapter 7, a company ceases business operations. ATP is not conducting any business.

4. The major remaining assets of ATP's Chapter 7 estate are causes of action. Other than recoveries on causes of action, the Chapter 7 estate does not have assets to pay creditors. ATP's debts, described further below, exceed $2 billion dollars and continue to grow each day.

5. Before converting to Chapter 7 bankruptcy, ATP was an experienced development and production company with significant expertise in drilling and operating offshore wells. ATP was incorporated in 1991 and headquartered in Houston, Texas. Before the oil spill, ATP anticipated that, by completing its drilling and production plans for 2010 and early 2011, it would be producing close to 60,000 barrels a day in early 2011.

6. In early 2010 ATP went to the bond markets. On April 19, 2010, ATP was successful in pricing a $1.5 billion bond offering (referred to in the bankruptcy proceeding as the "Second Lien Debt").

7. The blowout of the Macondo well and explosions on board the *Deepwater Horizon* drilling rig occurred the next day, on April 20, 2010. The oil spill profoundly damaged ATP. ATP was only able to produce 25,000 barrels a day and also incurred significant delay and expenses due to the oil spill.

8. Ultimately, ATP was unable to absorb the damage caused by the oil spill.[1] ATP filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on August 17, 2012. ATP's two year effort to reorganize its business under Chapter 11 ultimately failed. The Bankruptcy Court converted ATP's bankruptcy case to a case under Chapter 7, the liquidation provision of the Bankruptcy Code, on June 24, 2014.

9. ATP's Chapter 7 estate's tangible assets are small and have a value of less than $10,000,000. While ATP's Schedule of Assets and Liabilities state that it has over $24,000,000 in real and personal property assets, the fair market or liquidation value of the real and personal property assets, excluding litigation, is less than $10,000,000. For example, Schedule A lists lease interests in the Eastern Mediterranean at $6,633,846. The estate has yet to receive an offer on those leases. ATP's Schedule B "Personal Property" lists $18,151,261 in assets; however, this includes $14,765,920 in debts[2] owed to ATP by "ATP Oil & Gas (UK) Ltd". ATP Oil & Gas (UK) Ltd is in insolvency proceedings in the UK and does not anticipate being able to repay the intercompany debt.

10. ATP's most valuable assets are recoveries on causes of action, which the Chapter 7 estate owns. Two of the most important litigation assets are (1) ATP's claims against BP in the lawsuit filed in the U.S. District Court for the Eastern District of Louisiana (the "ATP-BP Litigation"), and (2) causes of actions against the directors and officers of ATP.[3]

---

[1] Transcript of first day hearings, The United States Bankruptcy Court, Southern District of Texas, Case No. 12-36187, August 21, 2012 pages 23 and 106-112.

[2] Notwithstanding the representation made in Schedule B, this asset appears to have been sold in November 2013 and is no longer an asset of the estate.

[3] The Debtor listed the ATP-BP litigation in Schedule B with an "unknown" value.

Trustee Affidavit                                                                                                   Page 3

11. I believe the ATP-BP Litigation is the largest remaining asset of ATP's Chapter 7 bankruptcy estate.

12. The Bankruptcy Court entered an order, on April 4, 2013, approving ATP's employment and retention of special counsel to represent ATP in the ATP-BP Litigation. On April 20, 2013, ATP filed suit to recover over $3 billion in damages related to the *Deepwater Horizon* disaster under the Oil Pollution Act ("OPA"). As the Chapter 7 Trustee, I have retained the same special counsel to prosecute the ATP-BP Litigation.

13. As a fiduciary for the Chapter 7 estate of ATP, I have an urgent need to proceed with the ATP-BP Litigation. In Chapter 11, ATP borrowed millions of dollars from its lenders to operate ATP's business and to undertake a drilling program in the Gulf of Mexico. As of October 31, 2013, over a year into the Chapter 11 case, the amount of the debt owed by the Chapter 11 ATP debtor was approximately $755,500,000 (the "DIP Loan"). These same lenders then used a portion of such indebtedness as consideration to purchase virtually all the assets of ATP during the Chapter 11 case.

14. In June of 2014, the time of conversion to Chapter 7, the loan to these lenders had an outstanding balance of over $265,000,000. The Chapter 7 estate is being charged interest of over $120,000 per day. The estate incurs approximately $44 million per year in interest on this debt.

15. As of January 1, 2015, the outstanding amount owed to the lenders has already increased to over $283,000,00. Until I can pay these creditors, the remaining Chapter 11 administrative expense claims and general unsecured claims of over $2 billion dollars cannot be paid.

16. It is my obligation to exercise due diligence and maximize the value of the bankruptcy estate. I am concerned that the estate may be severely penalized, unless all litigation on behalf of ATP, including the ATP-BP litigation, proceeds as quickly as possible in order to maximize the number of creditors receiving payment from this estate. If the ATP-BP litigation proceeds too slowly, the only recovery may be to the Chapter 11 DIP lenders, whose claim increases every day. My job, however, is to obtain a recovery to as many creditors in the priority waterfall, and obtaining an outcome in the Chapter 7 estate's litigation is the only way that is possible today.

17. If the damages recovered by ATP against BP includes the accruing interest on the DIP loan then the estate will not be harmed but BP will pay an additional $44,000,000 in damages for each year the loan is in place. If ATP is not able to recover all of the interest paid on the DIP Loan, then the funds to pay other creditors is being diminished by approximately $44,000,000 each year. While the DIP Loan may be reduced from recoveries of other causes of action the estate owns, those recoveries will only reduce the amount of the DIP Loan, but not pay it off. The DIP Loan will continue to accrue interest and deplete estate assets.

18. Beginning on August 19, 2014, I contacted BP through its local bankruptcy counsel to determine whether BP would have an interest in undertaking settlement discussions. The attorney was helpful, but no progress was made. On September 5, 2014, I filed a motion with the Bankruptcy Court seeking a status conference with BP in an effort to discuss mediation. The Bankruptcy Court denied my request for a status conference stating:

> DENIED. If the trustee and BP have agreed to mediate, no

conference is required. If BP has not agreed to mediate, the trustee may file a motion to compel mediation and the Court will consider the motion on its merits. A status conference is not appropriate until there is a dispute to resolve. The Court expresses no view on whether a mediation motion may be filed in this Court, or must be filed in the District Court.

19. On September 11, 2014, I sent an email to BP's counsel requesting that BP go to mediation. BP rejected my request.

20. ATP's remaining creditors are substantial. In addition to the DIP Loans, there may be as much as $450,000,000 in Chapter 11 administrative claims. The next creditors in the waterfall of distributions include: the $1.5 billion Second Lien Debt claims, along with other general unsecured creditors. None of these creditors have been paid

21. I request that the ATP-BP litigation be allowed to proceed with discovery in preparation for trial as soon as possible. If possible, I would like ATP's lawsuit against BP to be added to the moratorium test cases or added as the sixth case to be tried after the five test cases.

22. If this is not possible, I request that this court conditionally sever this case from the MDL or enter an appropriate order so that discovery may proceed either in the Bankruptcy Court or separately in this district and a proposed factual finding of the amount of ATP's damages can be ascertained. I make this alternative request conditioned on the transfer of the ATP-BP Litigation back to the MDL for resolution of all other issues, including issues of applicable law, permissible defenses (if any), causation, and other merits issues.

Rodney Tow

| | |
|---|---|
| STATE OF TEXAS | § §  § |
| COUNTY OF MONTGOMERY | |

SUBSCRIBED TO AND SWORN TO before me by Rodney Tow in his capacity as Chapter 7 Trustee on this 6th day of April, 2015 to certify which witness my hand and official seal.



Julia E. Warren
Notary Public

Trustee Affidavit                                                                                                   Page 7