# EXHIBIT 1

In re BP Oil Spill
2:10 MDL 2179

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

In Re: Oil Spill by the Oil Rig
"Deepwater Horizon" in the Gulf
of Mexico, on April 20, 2010        MDL No, 2179

JOHNNY SEXTON
     Claimant,

_____/

## JOHNNY SEXTON'S MOTION TO EXTEND TIME TO FILE SEAFOOD WORKERS CLAIM AND INCORPORATED MEMORANDUM OF LAW

     Claimant, Johnny Sexton, ID 100167032, by and through his undersigned counsel and pursuant to Federal Rules of Civil Procedure 6 and 60 (b), hereby files this Motion to Extend Time to File Seafood Workers Claim and Incorporated Memorandum of Law as grounds therefore would state:

     1.    Johnny Sexton, Claimant ID 100167032 is a commercial seafood worker from Santa Rosa Beach, Florida who experienced lost revenues due to the oil spill. Mr. Sexton subsequently retained the offices of the undersigned attorneys to file his claims against BP, with the Deep Water Horizon Economic Claims Center, hereinafter "DHECC."

     2.    In January of 2013, Mr. Sexton's claim was being handled in our office by Jessica A. Lendermon, who was the attorney assigned to coordinate the

1

handling of all of the firm's commercial seafood worker claims by our legal assistants.

3.  The DHECC filing procedure used by the office is for the legal assistants assigned to the claim to compile the documents, complete the claimant's registration and forward the file to our paralegal for claim submission. On January 21, 2013 our office filed several claims under the Seafood Compensation Program. As this was a national holiday, our paralegal was out of the office and in order to file the seafood worker claims before the January 22, 2013 deadline, Ms. Lendermon asked legal assistant, Sean Selvig for assistance. Mr. Selvig had not previously been handling seafood worker claims and erroneously believed only the claimant's registration form needed to be submitted before the deadline. As a result, he submitted Mr. Sexton's registration form on January 21, 2013 and uploaded the DHECC portal with all the supporting documentation necessary to support the claim but not the claim form itself attached hereto as "Exhibit 1". The actual claim form itself is attached as "Exhibit 2". Had office procedure been correctly followed, the claim would have been submitted in a timely manner. As noted above, the registration contained substantially all the information necessary to file a claim had it been called a "claim" rather than called a "registration". Essentially, the information was provided in a timely manner but on the wrong form.

2

4. Following the discovery of the error, our office repeatedly attempted to file the claim but the portal was set up so that it would not allow for the filing of the claim form.

5. Our office also sent a request for extension by mail, on March 13, 2013, as instructed to do by Nikeita Ashe, the DHECC contact representative assigned to our firm by DHECC to assist us in our claims. A copy of that letter and the email to Ms. Ashe are attached hereto as Exhibit "3."

6. Ms. Lendermon was advised that the request would be reviewed and that we would be notified. See "Exhibit 4".

7. Apparently recognizing that there were a number of Seafood Claims that had not been filed by the deadline, approximately two months later, on May 22, 2013, the Claims Administrator posted the "Procedure for Handling Untimely Seafood Claims" for the handling of claims filed after January 22, 2013. That procedure stated that for any untimely Seafood Claims that do not relate back to a qualifying claim that the "Claims Administrator will use an Excusable Neglect standard informed by Fifth Circuit decisional law and the Court's 1/24/13 Order Denying Brent Coon's Motion for Extension of Time to Submit Seafood Claims to the Seafood Compensation Program...."

8. After the Sexton claim and supporting documents were timely registered on January 21, 2013 and after the request for extension was emailed as

3

instructed, on March 13, 2013, the Sexton claim changed hands in the office of the undersigned a number of times.

9. No notice was issued regarding Sexton's request for an extension of time to file the claim until January 13, 2014, some ten months after the request was made. The Notice denied the request for extension. The only explanation given was that "we did not meet an approved exception." A copy of the Notice is attached hereto as Exhibit "5." While the original request for an extension sent by mail and email on March 13, 2013, did not address all the factors that were eventually set forth in the "Procedure for Handling Untimely Seafood Claims", that was because no procedures had been announced at that time. Nor was counsel contacted and advised that the original request should be updated to include the various factors.

10. Following the receipt of the Denial, letters were sent to the Claims Administrator Patrick Juneau on February 12, 2014, June 3, 2014 and February 4, 2015. Copies of those letters are attached hereto as Exhibits "6-8." The first letter dated February 12, 2014 specifically addressed each of the factors set forth in the Procedures announced on May 22, 2013.

11. In response to the emailed letter of February 4, 2015, the Claims Administrator's Office sent an email to the undersigned attaching a copy of an email that had supposedly been emailed to an employee at the office of the

4

undersigned on June 24, 2014 stating that they would not grant an extension of time to file the claim. A copy of that email and the attachment are attached hereto as Exhibit "9."

12. Following the Denial of the Initial Request for Extension back in January of 2014, and the denial by email supposedly sent on June 24, 2014, on October 9, 2014, the Claims Administrator posted on the website a Procedure Regarding Handling of Untimely Seafood Claims, noting that he would stop accepting new Seafood Filing Deadline Extension Requests under that procedure on October 31, 2014.

13. The Requests for extension in this case were filed long before the deadline posted for doing so:

> **1st Request March 13, 2013**, two months before the Claims Administrator even issued instructions for filing untimely claims on **May 22, 2013**.
>
> **2d and 3d Requests on February 12, 2014** and **June 3, 2014,** months before the Claims Administrator, posted his **October 9, 2014** notice that he would stop accepting Requests for extension after **October 31, 2014**, and well before that deadline.

14. Although the Claims Administrator said that he would be using the "Excusable Neglect standard" there is nothing which indicates that he did so in this case.

5

15. The concept of "excusable neglect" comes into play under a number of the Federal Rules of Civil Procedure. Rule 60, deals with setting aside judgments. Rule 6 (b)(1)(B) allows a party to file a motion after the time has expired for doing some act..." if the party failed to act because of excusable neglect."

16. The pivotal case is *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), which held that a creditor's filing of a proof of claim 20 days late constituted excusable neglect.

17. That case which discusses both Rule 60 and Rule 6 explained that a determination of excusable neglect:

> is at the bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.....(at p. 394).

18. *Pioneer* also identified four factors to guide the courts in making that determination:

> the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. (at p. 395).

19. In *Bennett v. GEO Group, Inc.*, 2013 U.S. App. LEXIS 10369 (5th Cir. 2013), the defendant won summary judgment in an employment discrimination and

6

negligent infliction of emotional harm case. *Id.* at 1. On appeal defendant/appellee argued that the appeal should be dismissed as untimely since Bennett failed to file a notice of appeal within 30 days as required. However, the district court allowed her to proceed with the appeal finding excusable neglect based on her statements that her attorney did not contact her after the dismissal, and had not responded to her messages. Bennett also contended that her attorney had misled her and had been paid off by GEO to sabotage her case. The Court reviewed the ruling under Federal Rule of Appellate Procedure 4(a)(5) to determine if the district court's ruling had been an abuse of discretion. The Fifth Circuit citing to the *Pioneer* and to the same factors set forth in that case found that there was no abuse of discretion.

20. An untimely notice of appeal was also the issue in the case of *Stotter v. Univ. of Tex.*, 508 F.3d 812 (5th Cir. 2007). In that matter, the University won summary judgment on the claims of Dr. Stotter, a tenured professor on his claims for termination of employment and destruction of personal property. The district court found excusable neglect for the untimely filing because the attorney accidentally entered the wrong year into a computer based calendar.

21. In the case of *Walter v. Blue Cross & Blue Shield*, 181 F.3d 1198 (11th Cir. 1999), the Eleventh Circuit held that it was an abuse of discretion for the trial court to deny Walter's motion to set aside its dismissal order based on the

untimeliness of her response. In that case the reason for the delay was the failure of a former secretary of Walter's attorney to record the applicable deadline.

22. In *Williams v. Smith* (M.D. Fla. 3-14-2008) the court discusses a situation where a deadline was missed due to erroneous calendaring. According to the Committee Notes under Rule 6 (b) "the court is given wide discretion to enlarge these time limits or revive them after they have expired."

23. In the case of *NAS Surety Group v. Cooper Insurance Center, Inc.* 2007 U.S. Dist, LEXIS 667771 (W.D. Mich. 9-13-2007), the court found excusable neglect under Rule 6(b), for counsel's failure to file dispositive motions within the time set by the court due to clerical errors and the fact that an attorney who had previously handled the scheduling for Plaintiff's counsel had left the law firm.

24. Contrast those rulings with that in the case of *Midwest Employers Cas. Co. v. Williams*, 161 F.3d 877 (5th Cir. 1998). In that case Midwest appealed a district court's ruling on a supplementary memorandum requiring it to pay worker's compensation and medical expenses to Williams. Midwest's attorney filed a motion for a new trial but misread Rule 6(e) and thought that he had three extra days to file his motion; and while attempting to do so, the time to file a notice of appeal expired. The magistrate judge found that this constituted excusable neglect and extended time to file a notice of appeal. The Fifth Circuit found that it

8

was an abuse of discretion to find excusable neglect here because of the plain language of the rule and rulings by every other Circuit holding that Rule 6(e) did not apply to Rule 59 motions for new trial. Quoting its prior decision in *Halicki v. Louisiana*, 151 F.3d 465, 467 (5th Cir. 1998), which involved the identical issue the court stated:

> Apparently unaware that…the plain language of the rules, well-settled hornbook law and every other circuit to address the issue had rejected the applicability of rule 6(e) to Rule 59(e), [Halicki's] attorney waited until the tenth day to mail the rule 59(e) motion, causing it to arrive at the district court two days late.

25. The Court did note that in *United States v. Clark*, 51 F.3d 42 (5th Cir. 1995) it had left open in, "the possibility that some misinterpretations of the federal rules may qualify as excusable neglect," although that would be a rare case.

26. *Midwest* is clearly distinguishable from this case because that involved the Federal Rules of Civil Procedure, which the court found to be clear and unambiguous, and "well-settled hornbook law." In dealing with Sexton's claim, it was not the Federal Rules which were misunderstood but rather BP procedures which are complex and unsettled and frequently in a state of flux.

27. In *Pioneer* the Court found the late filing excusable neglect and attributable at least in part to the "dramatic ambiguity" in the bankruptcy court's "peculiar, misleading and inconspicuous notification of the bar date." *Clark*, at p. 44.

28. Similarly in *In Re Babcock & Wilcox Co.* (E.D. La. 2001), the Debtors filed a motion for the court to reconsider its grant of claimants' motion for extra time to file a proof of claim. The court's original order required all personal injury claimants to file proof of claim forms by July 30, 2001. On August 20, 2001 the court granted the claimants' motion for extra time to file a proof of claim, citing to excusable neglect. In rejecting debtors argument that the claimants failed to meet their burden of demonstrating excusable neglect the court stated:

> First, debtors do not dispute that claimants acted in good faith in seeking more time. Second, because excusable neglect is not limited to errors caused by circumstances beyond the late filing party's control, claimants' stated reasons for seeking the motion were sufficient. In particular, the admitted clerical errors and investigatory oversight are understandable since claimants' lawyer filed nearly 7000 proofs of claim by the claims bar date. (at p. 2).

29. The court also rejected the debtor's arguments that they would be prejudiced by claimants' filing of late claims.

> Debtors argue that the Court's decision will open the floodgates to innumerable other late claims. This is speculative and unsupported by any evidence. Furthermore, as no reorganization plan has yet to be approved, debtors have sufficient notice of the late claims to take them into consideration in negotiations for a settlement or plan of reorganization. (at p. 3).

30. When looking at this matter and considering the factors set forth in *Pioneer* for guiding the court in making a determination of excusable neglect, there is no question that Sexton passes the bar.

 **(1) There is no danger of prejudice to the other party or to the other claimants who submitted timely seafood claims.**

 **(2) Action was taken in a timely manner and would have no impact on the proceedings.**

 **(3) The claimant attempted to file this claim in good faith and in a timely manner and it is only because of a misunderstanding of the filing requirements that the claim form itself was not filed, but everything else, including all documentation was filed.**

31. BP filed a motion to re-evaluate the settlement of all Seafood Worker Claims based upon the fraud allegedly perpetrated by Texas counsel concerning 30,000 fraudulent claims, as a result, whatever adjustment needs to be made would be impacted very minimally by Mr. Sexton's claim being allowed.

32. There is no question that every effort was made to file a claim on behalf of Mr. Sexton, in a timely manner and to submit all the requested documentation.

33. It was only due to mistake, inadvertence and excusable neglect that that the process was not completed by the filing of the actual claim form.

33  We respectfully ask that, in light of our office's excusable neglect, we be allowed to submit this claimant's claim form as the claimant was cooperative,

11

communicative, and prepared to have a claim filed on his behalf before the January 22nd deadline and shouldn't be denied recovery because of an error on our part.

WHEREFORE , Johnny Sexton request this Court to grant this Motion for Extension of Time to File Seafood Workers Claim based on mistake, inadvertence and or excusable neglect beyond that allowed by Fed. R. Civ. Pro. 45(d)(2)(B).

Respectfully Submitted.

> LYONS & FARRAR, P.A.
> Attorneys for Plaintiff
>
> _____
> DOUGLAS S. LYONS
> Florida Bar No. 128277
> 325 No. Calhoun Street
> Tallahassee, FL 32301
> (850) 222-8811
> Primary: doug.lyons@lyonsandfarrar.com
> Secondary: dawnw@lyonsandfarrar.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March __4__, 2015 a trust and correct copy of the foregoing Plaintiff's Motion to Extend Time to File Seafood Workers Claim and Incorporated Memorandum of Law was filed with the Clerk of the Panel via the JPML CM/ECF system, which will send notice of the same to all counsel of record.

_____
Douglas S. Lyons

\\SERVER\Common\DSL\1 - BP Oil Spill Litigation\! 1 - Clients\Sexton, Johnny\pleading\motion\Motion for Extention of Time to File Seafood Workers Claim.docx

# EXHIBIT 2

In re BP Oil Spill
2:10 MDL 2179

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL 2179  SECTION "J" |
| Applies to: | * * | JUDGE BARBIER |
| *No. 12-970* | * * | MAGISTRATE SHUSHAN |

## ORDER

Before the Court is Johnny Sexton's "Motion for Extension of Time to File Seafood Workers Claim or Alternatively to Treat Claim as Timely Filed but Incomplete." (Rec. Doc. 14241). Having considered the motion and attached papers,

IT IS ORDERED that the motion (Rec. Doc. 14241) is DENIED.

New Orleans, Louisiana, this 14th day of April, 2015.

_____
United States District Judge