# MEMORANDUM

**To:**   David Welker
         Head of Fraud Waste & Abuse

**From:** Class Counsel

**Re:**   <u>Subsistence and Other "Fraud" Investigations</u>

**Date:** March 12, 2015

     Class Counsel continue to receive numerous reports from claimants and counsel regarding what they perceive to be largely overbroad, uninformed, and otherwise unnecessary and opaque investigations of Seafood and particularly Subsistence Claims, which seem particularly wasteful (on both sides) in light of the nature and terms of the Settlement Agreement.[1]

     As Class Counsel have noted, the Subsistence Framework was negotiated and designed with the knowledge, understanding and expectation that the Program would be dealing with largely unsophisticated claimants, with little or no documentation to support their claims. A Court-Appointed Distribution Agent, knowledgeable about subsistence use and sensitive to the cultural traditions, would work in a cooperative and claimant-friendly way, to assist Subsistence Claimants in completing the Claim Form and collecting the available documentation, while confirming the eligibility status of the claimants.[2]

     Notably, as we understand it, a Subsistence Claimant can only recover up to a certain percentage of a limited standard daily caloric intake during a verified impairment period, *irrespective* of what the Claimant may have recalled about the post-Spill period or asserted on the Claim Form.

     The forms themselves are inherently confusing, because they shift from Annual estimates in some places, to Weekly estimates in others. Clearly, one would assume that the use of an annual estimate for a weekly total was just an inadvertent mistake on the claimant or his counsel's part, and not an attempt to "defraud" the Settlement Program.

     Moreover, based on the reports that we have received, the HUB investigators sometimes confuse Claimants further by asking about Percent of Diet from Subsistence Activities in a colloquial sense, and divorced from the context of a formulaic limitation imposed by the Program which analyses the total subsistence loss suffered by the claimant relative to the protein

---

[1] In the context of Subsistence Claims, Class Counsel suspect that it is quite possible, if not likely, that the Settlement Program might be spending as much or more money on the investigation of Subsistence Claims than the average determined Compensation Amount value of the claims.

[2] *See* SETTLEMENT AGREEMENT, Exhibit 9, Section D, (as well as Sections 4.3.7 and 4.3.8).

intake of a fictional person, based on average heights, weights, caloric intakes, net weight to gross weight conversions, etc, and consuming such seafood only during the defined Loss Period.[3]

Over the past several months, many attorneys representing Subsistence Claimants have suggested to Class Counsel that the knowledgeable CADA working cooperatively with Claimants to provide them with appropriate compensation has been largely replaced in this Settlement Program by a temporary worker or sub-contractor who seems to be on either an aimless and wandering fishing expedition or a mission to build some type of a case against the claimant in an adversarial way.

Similar frustrations have been expressed over the investigation of Seafood Program and other claims.

Class Counsel have for a long time suggested, and continue to respectfully suggest, that the Settlement Program, whether through FWA, HUB, or the Special Master's Office, generally come to the Claimant, or the Claimant's attorney if represented, and, at the outset, identify what the specific concerns are, so that those concerns can be promptly and efficiently addressed. We believe that it would save the Program (and, indirectly, the BP Defendants) a lot of time, money and effort; that it would save the Claimants, their attorneys, CPAs, friends, neighbors, family members, employers and/or employees a lot of time, money and effort; that it would promote the general notions of fairness and due process; and that it would be consistent with the nature, spirit and actual terms of the Settlement and Trust Agreement that was negotiated and executed by BP, promulgated and promoted to potentially eligible Class Members, and fully and finally approved by the Court.

cc: Hon. Sally Shushan
    Special Master Louis J. Freeh
    Patrick A. Juneau, Claims Administrator
    Christina Hendrick, Subsistence CADA
    Counsel for BP

---

[3] *See, e.g.,* CLASS COUNSEL'S MEMORANDUM TO THE CLAIMS ADMINISTRATOR (June 10, 2013) [Policy Keeper No. 442].