UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig ) <br> "Deepwater Horizon" in the ) <br> Gulf of Mexico, on April 20, 2010 ) <br> ) <br> This document relates to: ) <br> ) <br> 12-970, *Bon Secour Fisheries, Inc. et al.* ) <br> *v. BP Exploration Production Inc.*; ) <br> cases within Pleading Bundle B1 ) <br> ) <br> and All Civil Actions, including ) <br> 33:2701; 13-6009; 13:6010; 13:5367; ) <br> 14:1106; 14:357; 14:358; 14:359; ) <br> 14:1321 and 15:6651 ) | MDL NO. 2179; SECTION J <br><br> JUDGE CARL J. BARBIER <br><br> MAG JUDGE SHUSHAN <br><br> Oral Argument Requested |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS MOTION TO STAY JUDGMENT OF CIVIL CLEAN WATER ACT PENALTIES, OR, IN THE ALTERNATIVE, PLAINTIFFS MOTION IN SUPPORT OF BP'S POSITION TO CAP CIVIL PENALTY DAMAGES**

### I.  Introduction

Moving Plaintiffs ("BCA Plaintiffs") are comprised of thousands of claimants with financial losses associated to the BP oil spill and represented by Brent Coon & Associates. Plaintiffs are comprised of members of the Economic and Property Damage Settlement Class ("DHECC") and the Medical Injury Settlement Class, as well as opt-outs of both classes. In addition, many plaintiffs are "excluded" from filing claims with the DHECC as they are associated with gaming, real estate development, moratoria impacted and other excluded categories of claims.

Plaintiffs maintain that BP should be subject to the maximum State and Federal fines and penalties and fully support the Department of Justice prosecution of BP for the oil spill for penalties under the Clean Water Act and other related statutes. Plaintiffs fully support the

1

findings of this Court that BP conduct in this matter rose to the level of gross negligence. Nonetheless, Plaintiffs request that this Court suspend any final decision on amounts to be assessed against BP until after the individual loss claims processes have been completed. In fact, the court could take the resolution of such claims into consideration prior to any final ruling. The Department of Justice could do the same in any negotiations with BP and potentially avoid any final ruling and the lengthy appeals that would undoubtedly follow.

Accordingly, Plaintiffs request that this Court defer judgment on the third phase of the trial until after the individual claims reparations process has been completed. This would include resolution of remaining Economic and Property Damage Class Claims, Medical Class claims, BELO medical claims, the economic and medical class opt-out claims, and all the previously class settlement excluded categories of claims.

However, alternatively, if this Court deliberatively moves forward and renders judgment against BP for the Department of Justice claims at this time, Plaintiffs reluctantly join BP's motion to set these damages and fines at the minimum amounts available pursuant to the guidelines and schedules as set by the Clean Water Act. While BP should not be indirectly rewarded for the extensive nature of the harm caused by their conduct, plaintiffs should not be further indirectly harmed. The bottom line now is that any Court judgment against BP on the Department of Justice case will undoubtedly be in the billions of dollars. Any such amounts would only act as a DETERRENT to any efforts by BP to negotiate and resolve any of the tens of thousands of claims still outstanding from businesses and individuals who have borne the brunt force of this trauma.

## II. Background

Often Motions of this nature, filed on behalf of a large number of clients represented by one attorney or one law firm, are not done at specific request of individual clients, but are instead typically filed to advocate on behalf of those clients. However, this Motion is being filed after a poll of BCA clients resulted in an overwhelming response on this issue. The poll received over 1000 responses, with over 97% of cliaimants saying that they should be paid for their claims before the United States Government is paid for their civil claims.

All of the BCA Plaintiffs have one thing in common. They sustained losses from the oil spill in 2010 and have yet to be compensated more than five years later. These plaintiffs are but a small fraction of the hundreds of thousands of individuals and business owners who sustained losses from the spill and may never be compensated for their losses. That potential reality becomes even more plausible with billions and billions of dollars of restitutional claims pending against BP by a host of governmental agencies, including the Department of Justice and State Attorney General actions filed by Texas, Louisiana, Mississippi, Alabama and Florida.

Plaintiffs appreciate the dilemma faced by corporations such as BP when their reckless behavior and decision making has resulted in catastrophic loss of life and property. Losses in such overwhelming circumstances can have a significant financial impact on even the largest of global corporations, even global energy corporations. Paying restitution to individuals and business owners and also to governmental entities in a timely manner can be cost prohibitive under such circumstances.

Plaintiffs are also aware of the long and sordid history of BP misconduct that has resulted in dozens of the fatalities and hundreds if not thousands of fines and violations of state and federal health and safety regulations. In fact, BP was already on probation for 15 counts of

felony manslaughter for killing workers in their Texas City refinery when they killed 11 more workers on the Deepwater Horizon. While this level of malfeasance should not go unaddressed, Plaintiffs also recognize the potential conflict in supporting heavy fines against BP for this conduct and in recognizing the financial realities of the cost prohibitive cost of making restitution for such fines and still be sufficiently capitalized to timely compensate individuals and business owners harmed from this tragedy.

The Obama Administration regularly stated that it would "keep their boots on BP's neck" in the early days of this event and that they would personally make sure everyone was fairly compensated. In fact, this was what purportedly led to the initial creation of the $20 billion dollar Gulf Coast Claims Facility Program. Likewise, all of the stakeholder State Attorney General's regularly publicly advocated the protection of their constituents in this process.

Instead, the history of the claims settlement process to date is at best a mixed bag of results. Most of the early claims resolved in the litigation were in the form of small "quick pays" by the Gulf Coast Claims Facility ("GCCF"). While the subsequent Economic and Property Damage Settlement aspired to resolve most of hundreds of thousands of outstanding claims in a fast, fair, transparent and claimant friendly process, that settlement has bogged down in revisions, reinterpretations and appeals. To date only 15% of the IEL and BEL claims have been paid, and it by all appearances will not reach a payment status for the vast majority of claimants. The medical class has resulted in massive amounts of BELO claims rolling back into the tort system rather than any disposition. This Court can help address the failings which have occurred to date by tempering judgment on these issues until a later, to a time at which this Court will have much better clarity to the final disposition of the claims resolution process.

BP also failed to pay any of the thousands and thousands of claims remitted to their OPA designation office, which has now officially closed. BP has expressed NO DESIRE to settle of

4

any the tens of thousands of opt out or excluded categories of cases, most of which remain relegated to the back burners of the litigation. Some experts opine that the contingent liabilities attached to those categories of claims significantly exceed the viability of the claims included in the present class settlements. Regardless, it is clear that BP is engaged in a strategy of delay and defend. However, forced disposition of the US government claims, and possibly the state attorney general claims thereafter, would necessarily mandate a continued strategy by BP of leaving individual and business owner cases on a back burner in perpetuity.

As stated above, if this Court deliberatively moves forward and renders judgment against BP for the Department of Justice claims at this time, Plaintiffs reluctantly join BP's motion to set these damages and fines at the minimum amounts available pursuant to the guidelines and schedules as set by the Clean Water Act. While BP should not be indirectly rewarded for the extensive nature of the harm caused by their conduct, plaintiffs should not be further indirectly harmed. A finding which could clearly exceed $10 billion dollars against a company that is already reeling from the extensive costs associated to the remediation, reparations, and restitution process, could pose significant financial damage to a company that is simultaneously dealing with curtailed revenue generation due to collapsing world markets for petroleum based products.

In the grand scheme of things and from a practical standpoint, the state and federal governments can still fair well organizationally without the benefit of significant recoveries from BP in this litigation.  In fact, it could be well argued that the government agencies involved should act as protectors of their citizens who have suffered at the hands of BP and act in a manner that would be most advantageous to them in efforts to obtain financial restitution and move on with their lives rather than by piling on and effectively making a run on the bank.  The

size of the claim and importance of the state and governmental interests in this matter could be resolved to debate another day.

### III.     Argument

In determining the amount of a civil penalty under the Clean Water Act, the Court is required to consider, "any other matters as justice may require." 33. U.S.C § 1321(b)(8)  In this instance, justice clearly requires consideration of the thousands of individuals and victims harmed by the *Deepwater Horizon* Oil Spill.  Any penalty assessed by the Court today, while potentially tens of thousands of claims remain unpaid, would only result in further delays in payments to these victims.   Victims who, by the way, have already waited more than five years for recompense, with no end in sight.

In their Penalty Phase post-Trial Brief of BP Exploration & Production, Inc, BP states:

> In addition to the $42 billion (gross) in incurred liabilities for which BPXP has paid, provisioned or recognized a payable, BPXP has significant contingent liabilities. These contingent liabilities, which differ from provisions in that they are known but not presently estimable, include (1) natural resource damages, (2) future business economic loss claims under the Economic and Property Damages Settlement , (3) state and local government claims under OPA, (4) unsettled litigation among the nearly 3,000 spill related lawsuits that remain pending, and (5) possible indemnity obligations that may arise under BPXP's various settlement  agreements for claims related to the Deepwater Horizon spill.[1]

In the United States' Reply to Defendant's Post-Trial Papers, the Department of Justice responds by stating:

> Third, BPXP contends that it has significant contingent liabilities. However, many of the contingent values ultimately may be $0, or the determination and payment may be so far into the future that the net present value (NPV) may be small. And, at least with certain of the contingent claims brought by private parties or state or local governments, other liable BP entities such as BPAPC may be defendants, so the entire onus need not fall on BPXP.[2]

---

[1] Rec. Doc. 14344
[2] Rec. Doc.14473

As much as BCA Plaintiffs are reticent to agree with any position taken by BP, their arguments regarding contingent liabilities clearly have merit. However, the Department of Justice's response leaves much to be desired. In the face of the reality that BP has not paid thousands of victims of the spill their argument amounts to (1) BP may not ultimately pay the victims of the spill and (2) it may be some other BP entities responsibility.[3] Nether response takes into account justice for the victims of the spill or the promises made by the current administration to hold BP accountable to these same victims.

The uncertainties concerning BP's contingent liabilities can easily be rectified by making a determination about amount of Clean Water Act Civil Penalties at a later date. At the present, these contingent liabilities are not ascertainable. No efforts have been made to extrapolate the value of claims not captured by the DHECC class settlement. However, it is very likely that individually and/or collectively these liabilities could stretch into the tens of billions. Once we are nearer a final ruling under the Oil Pollution Act the Court will be able to see some reasonable quantification of the total amounts owed by BP for restitution and remediation. This will give the Court better empirical data to rely on and a much clearer view of the big picture before assessing Civil penalties against BP.

On multiple occasions shortly after the spill, BP, plc through their CEO Tony Hayward, promised to pay "all legitimate financial claims." In fact their website still makes the promise, "BP remains committed to doing the right thing and paying all legitimate claims."[4] Making sure

---

[3] The purpose of this Motion is not to argue which BP entity is responsible. Plaintiffs' Counsel is well aware that "BP" is an amalgamation of dozens, if not hundreds, of corporate entities worldwide, including BP Exploration & Production, Inc. However, these companies are all ultimately subsidiaries of BP, plc, whose CEO Tony Hayward made numerous promises immediately after the spill. Additionally, from the public and lay-Plaintiff's perspective there is only one "BP."

[4] https://www.thestateofthegulf.com/the-whole-story/

BP lives up the promises should be paramount, even if that means that United States must wait a little longer to enforce the penalties that BP so clearly deserves under the Clean Water Act.

## IV. Relief

BCA Plaintiffs request that this Court defer judgment on the third phase of the trial until after the individual claims reparations process has been completed. This would include resolution of remaining Economic and Property Damage Class Claims, Medical Class claims, BELO medical claims, the economic and medical class opt-out claims, and all the previously class settlement excluded categories of claims.

However, alternatively, if this Court deliberatively moves forward and renders judgment against BP for the Department of Justice claims at this time, Plaintiffs reluctantly join BP in their position to set these damages and fines at the minimum amounts available pursuant to the guidelines and schedules as set by the Clean Water Act.

| | |
|---|---|
| Dated:  May 11, 2015 | Respectfully submitted,<br>/s/ Brent W. Coon<br>Brent W. Coon<br>Federal Bar No. 9308<br>Texas Bar No. 04769750<br>215 Orleans<br>Beaumont, Texas 77701<br>Tel.: (409) 835-2666<br>Fax: (409) 835-1912<br><br>*Attorney for BCA Class Members* |

**CERTIFICATE OF SERVICE**

I certify that this document has been filed with the Clerk of the Court and served by ECF on May 11, 2015, upon:

Attorneys for the Defendants:

> Richard C. Godfrey, P.C. J. Andrew Langan, P.C. Wendy L. Bloom
> KIRKLAND & ELLIS LLP 300 North LaSalle Street Chicago, IL 60654
> Telephone: 312-862-2000
>
> Jeffrey Lennard
> SNR Denton US LLP
> 233 South Wacker Drive Suite 7800
> Chicago, IL 60606
> Telephone: 312-876-8000
>
> Jeffrey Bossert Clark
> Steven A. Myers
> KIRKLAND & ELLIS LLP 655 Fifteenth Street, N.W. Washington, DC 20005 Telephone: 202-879-5000
>
> Don K. Haycraft
> LISKOW & LEWIS
> One Shell Square
> 701 Poydras Street, Suite 5000 New Orleans, LA 70139
> Telephone: 504-581-7979

Attorneys for Class Plaintiffs:

> Stephen Jay Herman
> Soren E. Gisleson
> HERMAN HERMAN & KATZ LLP
> 820 O'Keefe Avenue
> New Orleans, LA 70113
> Telephone: 504-581-4892
> Fax: 504-561-6024
>
> James Parkerson Roy
> DOMENGEAUX, WRIGHT, ROY & EDWARDS
> 556 Jefferson Street - Suite 500
> Lafayette, LA 70501
> Telephone: 337-233-3033

Fax: 337-233-2796

Elizabeth Joan Cabraser
LIEFF, CABRASER, HEIMANN & BERNSTEIN
275 Battery Street - 29th Floor
San Francisco, CA 94111
Telephone: 415-956-1000
Fax: 415-956-1008

Samuel Issacharoff
NEW YORK UNIVERSITY SCHOOL OF LAW
40 Washington Square, S. - Suite 41 1J
New York, NY 10012
Telephone: 212-998-6580
Fax: 212-995-4590

        Respectfully submitted,

        /s/ Brent W. Coon

        *Attorney for BCA Class Members*