UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010<br><br>This document relates to:<br>No. 12-970 and<br>Case No. 2:11-CV-03180 | MDL NO. 2179<br><br>SECTION: J<br><br>Honorable Carl J. Barbier<br><br>Magistrate Judge Shushan |

_____

**OPPOSITION TO MOTION OF THE DHECC FOR RETURN
OF PAYMENTS MADE TO VERNON ALFONSO, JR.**
_____

**INTRODUCTION**

The Special Master has provided *no* evidence that Vernon Alfonso intentionally or knowingly misrepresented his fishing income to the Gulf Coast Claims Facility (the "GCCF") or to the Deepwater Horizon Economic Claims Center (the "DHECC"). No such evidence exists because Mr. Alfonso, a lifelong shrimper who has been profoundly impacted by the *Deepwater Horizon* disaster, has never purposefully misstated his fishing income.

The Special Master's motion arises because Mr. Alfonso asked his tax accountant during the GCCF claims process to prepare revised Schedule C forms for 2009 separating fishing from non-fishing income. The Special Master's brief never mentions that Mr. Alfonso's accountant gave a deposition and signed a declaration in which she took full responsibility for her decision to leave certain non-fishing income on the revised Schedule C showing Mr. Alfonso's fishing revenue. Mr. Alfonso's accountant made a mistake. It occurred because she did not know that income from Frank & Son Boat Rental, Inc. ("Frank & Son"), which Mr. Alfonso earned using

his shrimp boat, was unrelated to commercial fishing. She did not discuss her decision, her allocation of revenue, the substance of the revised Schedule C forms, or her work, with Mr. Alfonso. Mr. Alfonso received the revised Schedule C forms from his accountant and filed them with the GCCF never knowing or understanding that the Schedule C for commercial fishing included non-fishing income. The evidence in the record consistently supports these facts.

The mistaken inclusion of Frank & Son income on Mr. Alfonso's Schedule C was brought to Mr. Alfonso's attention only as a result of the Special Master's investigation. Having learned of the mistake, Mr. Alfonso cooperated with every aspect of the Special Master's investigation and offered to have his claims recalculated. Instead, the Special Master filed this motion in which Mr. Alfonso is accused of fraud based on a selective review of the evidence.

The Special Master cannot reasonably assert entitlement to judgment as a matter of law on the ground that "there is no genuine issue as to any material fact." (Sp. Master's Mem. at 3.) The central issue is whether Mr. Alfonso knew that his revised Schedule C included non-fishing income when he submitted it to the GCCF and later relied on it during the DHECC claims process. There is *no* evidence that he did. The evidence shows only that a mistake occurred; the Special Master produces no evidence of an intentional misrepresentation and certainly no evidence justifying judgment as a matter of law. Accordingly, this motion should be denied.

## BACKGROUND

**I.     Mr. Alfonso Has Been Seriously Damaged By The *Deepwater Horizon* Disaster.**

Mr. Alfonso is a lifelong commercial fisherman from a multi-generational fishing family. (Exhibit A, Declaration of Vernon Ernest Alfonso, Jr. ("Alfonso Decl.") ¶ 2.) He started fishing with his father and grandfather, both commercial fishermen, before he entered high school. (Exhibit B, Transcript of Deposition of Vernon Ernest Alfonso, Jr. ("Alfonso Dep. Tr.") 11:18-

12:8.) Upon graduating from high school, Mr. Alfonso chose a career in commercial fishing, and he has been a dedicated shrimper ever since. (Alfonso Decl. ¶ 2.)

Mr. Alfonso's home was destroyed in Hurricane Katrina, and he made efforts to supplement his fishing income following that disaster to accelerate the rebuilding process. (Alfonso Decl. ¶ 3; *see also* Alfonso Dep. Tr. 12:9-15.) In particular, Mr. Alfonso started working in construction for R & M Construction, and he continued that work until April 2010. (Alfonso Decl. ¶ 3.) In 2006, Mr. Alfonso also used his shrimp boat to work for his aunt and uncle's company, Frank & Son. (Alfonso Decl. ¶ 4; *see also* Alfonso Dep. Tr. 93:5-12; Exhibit C, Declaration of Joyce Lopez ("Lopez Decl.") ¶ 7.) Frank & Son leases boats to the offshore oil industry to transport equipment, and, among other things, Mr. Alfonso's vessel was hired to assist in seismographic testing. (Alfonso Decl. ¶ 4; *see also* Alfonso Dep. Tr. 12:16-13:11.)

With the exception of two days of work in 2007, Mr. Alfonso's work for Frank & Son stopped after 2006 until he was hired by the VoO program in 2010 through Frank & Son. (Lopez Decl. ¶ 7; *see also* Alfonso Decl. ¶ 6.) In particular, Mr. Alfonso did not work for Frank & Son in 2009. (Alfonso Decl. ¶ 6; Lopez Decl. ¶ 5.) Companies hiring Mr. Alfonso in 2006 paid Frank & Son for Mr. Alfonso's services. (Alfonso Decl. ¶ 5; Lopez Decl. ¶ 4.) Rather than receive payment for the entirety of the work that year, Mr. Alfonso left some of his earnings in the Frank & Son account for later disbursement. (Alfonso Decl. ¶ 5; Lopez Decl. ¶ 4.)

The Deepwater Horizon disaster was devastating for Mr. Alfonso. He shrimps primarily in waters directly inundated by oil and chemical dispersants. (Alfonso Decl. ¶ 7.) His shrimping grounds in Breton Sound were quickly closed following the spill. (*Id.*) For a fisherman who made shrimping his vocation, the oil spill threatened Mr. Alfonso with financial ruin. (*Id.*) On

August 28, 2010, Mr. Alfonso filed a commercial fishing claim with the GCCF for his losses. (Alfonso Dep. Tr. 61:5-62:8; Doc. ID No. 1802874.)

In 2012 and 2013, Mr. Alfonso filed six claims with the DHECC. The claims included two Seafood Compensation claims, one Subsistence claim, and three VoO Charter Payment claims. (*See* Doc. ID No. 2442126; Doc. ID No. 2442127; Doc. ID No.12175665; Doc. ID No. 1860823; Doc. ID No. 7370390; Doc. ID No. 11803660.) Mr. Alfonso received the initial payment on his Seafood Compensation Claims as a Shrimp Vessel Owner and Shrimp Boat Captain. (*See* Doc. ID No. 5603698; Doc. ID No. 8637541.)

## II. Mr. Alfonso's Amended Tax Documents Mistakenly Aggregated Non-Fishing And Fishing Income.

The Special Master's motion focuses on the Schedule C tax forms that Mr. Alfonso submitted in connection with his Seafood Compensation claims, and the motion is premised on the fact that a Schedule C purporting to show Mr. Alfonso's fishing revenue includes revenue from Frank & Son.

When Mr. Alfonso submitted his GCCF claim in 2010, without legal counsel, he provided the GCCF with his filed taxes for 2009. (Alfonso Decl. ¶ 8.) As originally filed, his tax return included a single Schedule C form showing his combined income in 2009. (*Id.*; Ex. 1 to Alfonso Decl. ("Original Schedule C").) Identifying the income as "Shrimping and Construction," this initial Schedule C aggregated both fishing income and non-fishing income. (Alfonso Dep. Tr. 62:6-15; Original Schedule C.) The GCCF requested that Mr. Alfonso prepare new Schedule C forms separating fishing and construction income sources. (Alfonso Dep. Tr. 62:6-15.)

In response to the GCCF's request, Mr. Alfonso asked his long-time tax accountant, Peggy Flowers, to prepare two amended Schedule C forms for 2009, one with fishing income

4

and one with non-fishing income. (*Id.* 63:2-10; Ex. 2 to Alfonso Decl. ("Fishing Schedule C"); Ex. 3 to Alfonso Decl. ("Non-Fishing Schedule C").) In December 2010, approximately 10 months after she prepared and filed Mr. Alfonso's 2009 taxes, Ms. Flowers did as Mr. Alfonso requested. (Exhibit D, Transcript of Deposition of Peggy Flowers ("Flowers Dep. Tr.") 88:12-89:10; 104:10-13.) She prepared two Schedule C forms by subtracting Mr. Alfonso's construction income from the original Schedule C, creating one Schedule C for fishing and one for construction. (*Id.* 83:5-84:7.) She forwarded the new Schedule C forms to Mr. Alfonso electronically without further discussion about how they were generated or what income was placed on which Schedule C. (*Id.* 86:2-10; Alfonso Decl. ¶ 10.)

Mr. Alfonso submitted the amended Schedule C forms to the GCCF, and the forms were subsequently used in calculation of his Seafood Compensation Claims by the DHECC. (Alfonso Dep. Tr. 63:2-10; Doc. ID No. 2871477; Doc. ID No. 3800744.) Because Ms. Flowers told him that the amended Schedule C forms did not need to be filed with the IRS since they did not change his tax liability, Mr. Alfonso did not file the forms with the IRS. (Flowers Dep. Tr. 88:12-89:1; 107:5-109:9; *see also* Alfonso Decl. ¶ 10.)

Although Mr. Alfonso did not know it at the time, Ms. Flowers left income from Frank & Son on the new Fishing Schedule C. (Alfonso Decl. ¶ 11; Flowers Dep. Tr. 87:5-88:1.) Mr. Alfonso and Ms. Flowers never thought to discuss the Frank & Son income and how it should be allocated when separating his Schedule C forms. (Alfonso Decl. ¶ 11; Flowers Dep. Tr. 87:5-88:1.) Ms. Flowers made the decision to leave the Frank & Son income on the Fishing Schedule C. (Flowers Dep. Tr. 83:24-23, 87:19-88:1.) To this day, she still does not know what Frank & Son does, other than the fact that Mr. Alfonso used his shrimp boat when working for it. (*Id.* 29:11-31:10.) She mistakenly assumed that Mr. Alfonso's work for Frank & Son involved

fishing. (*See id.* 30:3-4; 87:19-88:1.) Additionally, in her accounting judgment, it made sense to allocate income earned from Mr. Alfonso's boat to the same Schedule C where expenses and depreciation for the boat are also reported. (*Id.* 83:23-84:1, 87:19-88:1.) She did not consult with Mr. Alfonso about this decision, either before or after preparing the amended Schedule C forms. (*Id.* 84:4-7, 85:24-88:1; Alfonso Decl. ¶¶ 10-11.)

Indeed, Ms. Flowers took full responsibility for including Frank & Son income on the Fishing Schedule C. Ms. Flowers stated: "It was my judgment and decision to leave Frank & Sons income on the Schedule C for commercial fishing." (Exhibit E, Declaration of Peggy Flowers ("Flowers Decl.") ¶ 6.) In addition, she explained: "I told investigators [from the Special Master] that the inclusion of Frank & Sons income on the Schedule C was my responsibility." (*Id.* ¶ 9.)

In 2009, Mr. Alfonso did not work for Frank & Son and did not receive a 1099 tax form from Frank & Son. (Alfonso Dep. Tr. 123:15-17, 127:7-8, 171:11-12, 194:20-22; Alfonso Decl. ¶¶ 6, 15; Lopez Decl. ¶ 5.) However, in 2009, Frank & Son paid Mr. Alfonso for work that Mr. Alfonso had performed in a prior year. (Lopez Decl. ¶ 8; *see also* Alfonso Decl. ¶¶ 5, 6, 17.) In late 2010, at the time that Mr. Alfonso asked Ms. Flowers to create new, separate Schedule C forms, he gave no thought to the fact that his original Schedule C included income from Frank & Son, in addition to shrimping and construction. (Alfonso Decl. ¶ 14; *see also* Flowers Dep. Tr. 87:19-88-1.) It never occurred to Mr. Alfonso that the original Schedule C included Frank & Son income and that this income should be allocated to the non-Fishing Schedule C. (Alfonso Decl. ¶¶ 12, 14.) The issue was never discussed by Mr. Alfonso and Ms. Flowers. (*Id.* ¶¶ 9-12.)

In fact, Mr. Alfonso did not know that Ms. Flowers included income from Frank & Son in the Fishing Schedule C until the Special Master raised the issue. (Alfonso Decl. ¶ 14.) In his

6

deposition on January 21, 2015, Mr. Alfonso repeatedly stated that he did not work for Frank & Son in 2009. (Alfonso Dep. Tr. 123:15-17, 127:7-8, 171:11-12, 194:20-22.) He brought bank records to his deposition, which showed deposits in 2009 that Mr. Alfonso could not identify at the deposition. (*Id.* 122:4-15, 126:17-19, 171:6-8.) Mr. Alfonso subsequently authorized the Special Master to obtain his deposit records from his bank. (Alfonso Decl. ¶ 17.) Those records revealed several checks from Frank & Son deposited into Mr. Alfonso's account in 2009. (*See id.*) Upon reviewing the checks and the records, Mr. Alfonso now recalls having received payments in 2009 from Frank & Son for work completed in a prior year. (*See id.*)

In short, at the time that Mr. Alfonso submitted his claims to the GCCF and the DHECC, he did not know or believe that his Fishing Schedule C for 2009 included non-fishing income. (Alfonso Decl. ¶ 18.)

## ARGUMENT

According to the Special Master, the Court should grant his motion "if [t]he totality of the record shows there is no genuine issue as to any material fact and that the DHECC is entitled to judgment as a matter of law." (Sp. Master's Mem. at 3.) Thus, the Special Master argues that he is entitled to judgment under the Federal Rule of Civil Procedure 56 summary judgment standard. When considering a motion for summary judgment, the district court should "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). A court determining whether a party is entitled to judgment as a matter of law "must disregard all evidence favorable to the moving party that the [finder of fact] is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000). Further, summary judgment "must be denied when

7

reasonable minds might differ on the inferences arising from the undisputed facts." *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 352 (5th Cir. 1989) (citation and quotation omitted).

The Special Master cannot meet his burden under this standard. Indeed, there is no evidence at all that Mr. Alfonso actually knew that the Fishing Schedule C included non-fishing income. At most, the Special Master's motion is premised on a vague, unarticulated inference that Mr. Alfonso must have or should have known that the Frank & Son income was included on the Fishing Schedule C. Because such an inference cannot support summary judgment, and is not warranted at all on this record, the Special Master's motion should be denied.

**I.     Mr. Alfonso Did Not Commit Fraud.**

The Special Master asks the Court to order repayment of $187,795.87 to the DHECC and to bar Mr. Alfonso's participation in the Seafood Compensation Program because he committed fraud. (Sp. Master's Mem. at 4-5.) The Special Master, however, fails to establish the elements of a claim of fraud.

**A.     The Special Master cannot prove the elements of common law fraud.**

The Special Master cites no legal standard when accusing Mr. Alfonso of fraud. Plainly, however, the common law of fraud applies here. The Amended Settlement Agreement, which governs the settlement program, applies general maritime law to any disputes regarding the Agreement or the program: "[T]his Agreement and the Release and Individual Releases hereunder shall be interpreted in accordance with General Maritime Law as well as in a manner intended to comply with OPA [Oil Pollution Act]." Amended Settlement Agreement, § 36.1. General maritime law incorporates the common law of fraud. *E.g., Su v. M/V S. Aster*, 978 F.2d 462, 473 (9th Cir. 1992); *Black Gold Marine, Inc. v. Jackson Marine Co., Inc.*, 759 F.2d 466, 470 (5th Cir. 1985); *Operaciones Technicas Marinas S.A.S. v. Diversified Marine Servs., LLC*,

926 F. Supp. 2d 858, 862 (E.D. La. 2013); *Cargill, Inc. v. Degesch Am., Inc.*, 875 F. Supp. 2d 667, 674 (E.D. La. 2012); *Elmwood Dry Dock & Repair v. H & A Trading Co., Ltd.*, Nos. 93-02156, 94-01844, 94-03783, 97-00191, 1997 WL 781298, at *21 (E.D. La. Dec. 16, 1997).

Applying general maritime law under the Amended Settlement Agreement, the Special Master must establish that, based on the undisputed facts in the record, judgment as a matter of law is appropriate with respect to each of the five elements of common law fraud:

1. The defendant made a false representation;
2. The defendant knew or believed that the representation was false;
3. The defendant intended to defraud the plaintiff by inducing the plaintiff to act in reliance on the representation;
4. The plaintiff justifiably relied on the representation; and
5. The plaintiff was damaged because of such reliance.

*See, e.g.*, *Operaciones*, 926 F. Supp. 2d at 862; *Cargill*, 875 F. Supp. 2d at 674, *Elmwood*, 1997 WL 781298, at *21-22 (citing W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS, § 107 (5th ed. 1984)); *see also Pence v. United States*, 316 U.S. 332, 338 (1942); *United States v. Toyobo Co. Ltd.*, 811 F. Supp. 2d 37, 52 (D.D.C. 2011). Here, the undisputed facts do not support the Special Master's motion.

**B. The undisputed facts do not support the Special Master's claim that Mr. Alfonso committed fraud.**

The Special Master cannot satisfy his burden to prove common law fraud. In particular, the facts do not support the conclusions: (1) that Mr. Alfonso knew or believed that a representation he made to the DHECC was false; or (2) that Mr. Alfonso intended to induce the DHECC to act in reliance on a misrepresentation. The Special Master's failure to establish either of these elements should preclude this Court from granting the Special Master's motion.

> ### i.   Mr. Alfonso did not know or believe that a representation he made to the DHECC was false.

The Special Master must show that Mr. Alfonso knowingly provided a false Schedule C to the DHECC, but the undisputed facts do not support such a finding. To support a claim of common law fraud, the plaintiff must prove that the defendant knew or believed that a material representation was false at the time it was made. *Operaciones*, 913 F. Supp. 2d at 259; *Cargill*, 875 F. Supp. 2d at 674, *Elmwood*, 1997 WL 781298, at *21-22. "Fraud cannot be predicated upon mistake or negligence, no matter how gross." *Lomont v. Myer-Bennett*, No. 14-00351, 2014 WL 5463316, at *11 (La. Ct. App. Oct. 29, 2014); *see also Myles v. Gen. Motors Acceptance Corp.*, No. 97-2030, 1998 WL 299958, at *5 (E.D. La. June 4, 1998) (applying Louisiana law). Similarly, "errors or simple oversight . . . do not give rise to an inference of fraudulent intent." *Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 450 (E.D.N.Y. 2013) (applying New York law and quoting *Platinum Partners Value Arbitrage Fund LP v. Kroll Assocs., Inc.*, 957 N.Y.S.2d 336, 336 (N.Y. App. Div. 2013)).

In *Elmwood*, for example, the plaintiff alleged that the defendant defrauded it by overstating costs and sending false invoices. *Elmwood*, 1997 WL 781298, at *2-3. After a trial on the merits, the U.S. District Court for the Eastern District of Louisiana found insufficient evidence showing that the defendant knowingly made false representations with respect to billing or intended to charge the plaintiff for expenses that were not incurred. *Id.* Indeed, the court determined that no evidence demonstrated that the billing discrepancy at issue was deliberate, as opposed to a mistake by the defendant. *Id.*

Likewise, Mr. Alfonso did not knowingly make a false representation to the DHECC. Mr. Alfonso did not know that Ms. Flowers included income from Frank & Son in his Fishing Schedule C at the time that he submitted it to the GCCF or at the time that information was

considered by the DHECC.  (Alfonso Decl. ¶¶ 11-13, 18.)  At those times, Mr. Alfonso believed that the Fishing Schedule C included only fishing income.  (*Id.*)  As such, the Special Master never establishes that Mr. Alfonso knew or believed that the amount represented as fishing income in his Fishing Schedule C was greater than the actual amount of Mr. Alfonso's fishing income for 2009.

In addition, the Special Master misses the mark by attempting to prove Mr. Alfonso's knowledge of the incorrect Schedule C merely by demonstrating that the Schedule C was flawed.  (Sp. Master's Mem. at 8.)   Mr. Alfonso does not dispute that he learned, through the investigative process, that the Fishing Schedule C incorrectly included income from Frank & Son.  (*See* Alfonso Decl. ¶ 17.)  But the Special Master offers *no* proof that Mr. Alfonso directed his accountant to prepare the incorrect Schedule C, knew that it was incorrect throughout the claims process, or otherwise made a knowing misstatement.

Moreover, the Special Master relies on assertions that are just not true in an attempt to prove Mr. Alfonso's supposed knowledge of a false statement.  The Special Master observes that an "intentional misrepresentation may be demonstrated where a party making a representation knew that he lacked adequate basis for the assertion but nonetheless stated the assertion as fact."  (Sp. Master's Mem. at 7.)  In the next sentence, the Special Master asserts that "Alfonso knew that he worked for Frank & Son in 2009 . . . ."  But that assertion is inaccurate.  Mr. Alfonso never worked for Frank & Son in 2009.  (Alfonso Decl. ¶¶ 6, 15; Lopez Decl. ¶ 5.)  The Special Master's investigators established that fact through multiple interviews of Frank & Son owners and their responses to his subpoenas, which confirmed that Mr. Alfonso did not work for Frank & Son in 2009.  (*See* Exhibit F, Freeh Group Interview Reports.)  Indeed, there is no evidence to

11

the contrary. Because Mr. Alfonso did not work for Frank & Son in 2009, the inference drawn by the Special Master is factually unsupported.

### ii. Mr. Alfonso did not intend to induce the DHECC's reliance on a misrepresentation.

The Special Master must also show that Mr. Alfonso intended to induce the DHECC's reliance on an inflated calculation of Mr. Alfonso's fishing income for 2009. A litigant alleging common law fraud must establish that the defendant intended to induce the litigant to act or refrain from acting in reliance on the defendant's knowingly false representation. *Operaciones*, 913 F. Supp. 2d at 259; *Cargill*, 875 F. Supp. 2d at 674, *Elmwood*, 1997 WL 781298, at *21-22. "A fraud claim is not actionable without evidence that the misrepresentations were made with the intent to deceive." *Friedman v. Anderson*, 23 A.D.3d 163, 167 (N.Y. App. Div. 2005). "The intent-to-deceive element of a fraud cause of action 'imports a significantly greater degree of purposeful conduct than does the 'foreseeability' element of a negligence action,' and '[t]he mere fact that it *should be* known that another will rely upon a misrepresentation does not, of itself, establish that the misrepresentation was made with the *intent* to induce reliance.'" *Willis v. Marshall*, 401 S.W.3d 689, 702 (Tex. Ct. App. 2013) (quoting *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 415 (Tex. Ct. App. 1986)). Due to this onerous state-of-mind requirement, "fraud is more difficult to prove than negligent misrepresentation." *Richter, S.A. v. Bank of Am. Nat'l Trust & Saving Ass'n*, 939 F.2d 1176, 1185 (5th Cir. 1991).

In *Elmwood*, for instance, the plaintiff alleged that the defendant defrauded it by lying about the status of a ship that had been seized for nonpayment of invoices for work done on the ship. *Elmwood*, 1997 WL 781298, at *7, 22. Although the court found that the defendant knew that it was making misrepresentations (regarding facts other than the billing invoices discussed above), it concluded that the plaintiff did not prove that the defendant possessed intent to

12

defraud. *Id.* at \*22. According to the court, the defendant "stood nothing to gain" by telling the lies apart from saving face and delaying the plaintiff's anger. *Id.* Thus, the court held that the defendant committed no acts of fraud. *Id.* at \*23; *see also Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 222 (S.D.N.Y. 2007) (granting summary judgment to defendants on common law fraud claim where plaintiffs failed to establish defendants' intent to defraud); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 576 (Tex. 2001) (same).

Here, Mr. Alfonso did not intend to induce the DHECC's reliance on a misrepresentation of his fishing income in 2009. The Special Master suggests that Mr. Alfonso inflated his shrimping revenue to meet the $40,000.00 threshold for the Expedited Compensation Method. (*See* Sp. Master's Mem. at 2.) At the time that Mr. Alfonso asked Ms. Flowers to prepare the construction Schedule C and the Fishing Schedule C, however, the DHECC and the framework for the Seafood Compensation Program did not yet exist. (Alfonso Decl. ¶ 12.) Accordingly, Mr. Alfonso did not know that the DHECC would rely on his tax returns to determine benchmark revenue for the purpose of calculating a claim, as opposed to any number of possible damages models and factors. (*Id.*) Nor could he have known that there was a "threshold" for a larger award, or what the threshold was going to be. As in *Elmwood*, Mr. Alfonso had little to gain by misstating his 2009 fishing income when he submitted his new Fishing Schedule C to the GCCF. Further, when Mr. Alfonso subsequently filed his claims with the DHECC, his claims relied on the revised Schedule C forms that he had submitted to the GCCF due to the rules set forth in the Settlement Agreement—not because Mr. Alfonso intended to defraud the DHECC. (*Id.* ¶¶ 13, 18.) Thus, the undisputed facts tend to negate the Special Master's claim that Mr. Alfonso intended to defraud the DHECC.

Because the Special Master cannot show that Mr. Alfonso knowingly presented inaccurate information to the DHECC and cannot show that Mr. Alfonso intended for the DHECC to rely on a misrepresentation, the Court should deny the motion.

## II.     Mr. Alfonso Did Not Commit Perjury.

The Special Master also contends that Mr. Alfonso lied under oath. He submits that Mr. Alfonso's alleged dishonesty at his deposition constitutes further grounds for this Court to order Mr. Alfonso to return the payments that he received from the DHECC and to bar Mr. Alfonso's participation in further DHECC distributions. (Sp. Master's Mot. at 7.) Mr. Alfonso did not lie under oath, and his full cooperation with the Special Master's investigation negates the Special Master's position.

### A.     The undisputed facts do not support the Special Master's claim that Mr. Alfonso lied under oath.

Just as the Special Master declined to cite a legal standard for fraud, the Special Master declines to cite any legal framework for the conclusion that Mr. Alfonso gave dishonest testimony. Allegations of lying at a deposition, however, are governed by the law of perjury. A person commits perjury if, when "testifying under oath or affirmation," he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (citing 18 U.S.C. § 1621); *see also Montaño v. City of Chicago*, 535 F.3d 558, 564 (7th Cir. 2008) (applying definition of perjury found in 18 U.S.C. § 1621 to determine applicability of civil sanctions for alleged false statements in depositions); *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 648 (S.D. Tex. 2010) (same). Mere discrepancies or inconsistencies in testimony are not enough to establish perjury. *Montaño*, 535 F.3d at 564-65; *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *Sistrunk v. Dake Corp.*, No. 13-02983, 2015

WL 422950, at *6 (E.D. La. Feb. 2, 2015). In this case, the Special Master cannot establish that Mr. Alfonso intentionally misrepresented any material facts in his deposition, nor does the Special Master even make an effort to prove Mr. Alfonso's intent or knowledge.

As a threshold matter, Mr. Alfonso did not make any false statements. The Special Master argues that Mr. Alfonso "lied under oath by denying that he had worked for Frank & Son in 2009 or received any income from the company that year." Mr. Alfonso did not perform work for Frank & Son in 2009 and truthfully testified to that fact. (Alfonso Decl. ¶ 6; Lopez Decl. ¶ 5.) Further, Mr. Alfonso never testified that he did not receive income from Frank & Son in 2009 but rather stated that he could not recall receiving income other than construction and fishing income in 2009:

> Q. Can you tell me what your sources of income were in 2009?
>
> A. Construction and commercial fishing.
>
> Q. Do you have any other sources?
>
> A. Not that I'm aware of.

(Alfonso Dep. Tr. 114:2-7.) He also testified that he did not receive payment *in cash* from Frank & Son in 2009:

> Q. In 2009, were you ever paid in cash for Frank & Sons?
>
> A. No.
>
> Q. How do they pay you, weekly?
>
> A. I didn't work for Frank & Son in '09.

(*Id.* 127:3-8.) This testimony is entirely accurate. (Alfonso Decl. ¶ 15.) Mr. Alfonso received a check from Frank & Son in 2009—which he did not recall at the time of his deposition—and the check was for work that Mr. Alfonso performed in a prior year. (*Id.* ¶¶ 15, 17; Lopez Decl. ¶ 8.)

15

Further, any inconsistency in Mr. Alfonso's testimony does not amount to willful misrepresentation. In his deposition, Mr. Alfonso stated that he could not recall being paid by Frank & Son in 2009 and that he did not know why his Fishing Schedule C included amounts beyond fishing income. (Alfonso Dep. Tr. 122:4-15, 126:17-19.) This was accurate testimony. To the extent that Mr. Alfonso's deposition testimony suggests that Mr. Alfonso was not paid by Frank & Son in 2009—when in fact he was—this suggestion was unintentional. Mr. Alfonso's deposition took place in 2015, more than five years after he received the payment at issue from Frank & Son. It is entirely reasonable that Mr. Alfonso would not remember all facts surrounding that payment, particularly given that he did not work for Frank & Son that year.

Moreover, the Special Master attempts to turn isolated snippets of the deposition transcript into perjury. The full transcript indicates that, while forthcoming, Mr. Alfonso had limited knowledge of his bank records or the specifics of his income sources in 2009. (Alfonso Dep. Tr. 155:5-174:23.) Mr. Alfonso had no reason to lie about it since he brought his bank statements to the deposition and subsequently authorized the Special Master to obtain records from the bank of deposits into the accounts. (*See* Exhibit G, Email with Attached Authorization.)

Importantly, Mr. Alfonso had no motive to give false testimony about working for or receiving income from Frank & Son in 2009. Prior to his deposition, Mr. Alfonso admitted that his Fishing Schedule C inadvertently included non-fishing income, and he offered to fix the mistake by having his claim calculated solely on the basis of trip tickets. (Alfonso Decl. ¶ 16.) As to the Special Master's inquiry, the relevant question is not whether Mr. Alfonso received money from Frank & Son in 2009, but whether he intentionally lied about it. Because Mr. Alfonso had already conceded that his Fishing Schedule C included non-fishing income, it would


make no sense for Mr. Alfonso to lie about the source of that non-fishing income in his deposition. At that point, the fact that the Fishing Schedule C included non-fishing incomes was established. The source of that non-fishing income was immaterial.

Mr. Alfonso, therefore, had no motivation to lie in his deposition, and the Special Master can point to nothing in the record establishing that Mr. Alfonso actually did or intended to misrepresent the facts surrounding his Fishing Schedule C while testifying under oath.

### B. Even if Mr. Alfonso provided inaccurate testimony at his deposition, the penalty that the Special Master requests is unwarranted.

Even if—*arguendo*—Mr. Alfonso misstated facts at his deposition (and he did not), ordering Mr. Alfonso to return all payments and barring Mr. Alfonso from all future distributions would be an extreme and unwarranted sanction. Federal courts may sanction parties pursuant to their inherent authority and pursuant to Federal Rule of Civil Procedure 37. Fed. R. Civ. P. 37; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Sistrunk*, 2015 WL 422950, at *1-2. Courts, however, should exercise this authority with restraint and should impose "the least onerous sanction which would address the offensive conduct." *Gonzalez v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 898-99 (5th Cir. 1997); *see also Chambers*, 501 U.S. at 50. For example, dismissal of a party's claims with prejudice is an "extreme" sanction appropriate only where there is "a clear record of delay *or* contumacious conduct" *and* "lesser sanctions would not serve the best interests of justice." *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011) (quotations and citations omitted).

In this case, the Special Master seeks to compel Mr. Alfonso to return all Seafood Compensation distributions made to Mr. Alfonso by the DHECC and to bar Mr. Alfonso from all future Seafood Compensation Program distributions. Because the Special Master seeks to clawback $187,795.87 in distributions—in addition to barring future distributions—the sanction

that the Special Master requests is even more "extreme" than dismissal of a plaintiff's claims with prejudice. *See Brown*, 664 F.3d at 77. It is unwarranted based on the facts of this case.

## CONCLUSION

For the foregoing reasons, Vernon Alfonso, Jr. respectfully requests that this Court deny this Motion.

Date: May 13, 2015

**THE KRELLER LAW FIRM**

*/s/ Stephen Skelly Kreller*
Stephen Skelly Kreller (Bar No. 28440)
757 St. Charles Avenue, Suite 301
New Orleans, Louisiana 70130
T: (504) 484-3488
F: (888) 294-6091
E: ssk@krellerlaw.com

**FAEGRE BAKER DANIELS LLP**
William L. Roberts
Craig S. Coleman
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
T: (612) 766-7000
F: (612) 766-1600
E: william.roberts@faegrebd.com
E: craig.coleman@faegrebd.com

*Attorneys for Claimant Vernon Alfonso, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been filed on the Court's CM/ECF system, and thereby served on all counsel of record who have entered an appearance in this case, on May 13, 2015.

                                           */s/ Stephen Skelly Kreller*

US.55961783.05