# EXHIBIT E

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010<br><br>This document relates to:<br>Case No. 2:11-CV-03180 | MDL NO. 2179<br><br>SECTION: J<br><br>Honorable Carl J. Barbier<br><br>Magistrate Judge Shushan |

## DECLARATION OF PEGGY FLOWERS

1. I am a tax accountant and a licensed Enrolled Agent, and I have prepared Vernon Alfonso's tax returns for approximately 20 years. I am making this declaration in connection with the Special Master's investigation of Mr. Alfonso's claim submitted to the Seafood Compensation Program. I have personal knowledge of the facts stated in this declaration.

2. I prepared Mr. Alfonso's 2009 taxes during the normal tax preparation season for that year. Accordingly, I completed his taxes on February 19, 2010. I signed the completed tax return and electronically filed it on his behalf at that time.

3. Mr. Alfonso receives income and 1099s from a variety of sources. He is a commercial shrimper and typically earns significant money from shrimping. I understand that his shrimp income can include both trip tickets and cash sales. During the offseason, he also works in construction and has worked for a marine transport company called Frank & Sons. I typically combine all of his income into one Schedule C when preparing his taxes.

1

4.  I met with Mr. Alfonso when preparing his 2009 taxes. He provided me with his shrimp income for 2009 and a 1099 from R & M Construction. Mr. Alfonso did not have any documents or record of income from Frank & Sons that year. My accounting software lists $22,260 in income from Frank & Sons in 2009. I must have entered that information into my accounting software when preparing his 2009 taxes. However, I do not recall the source of that information. I know that I do not have any 1099 or other document stating that Mr. Alfonso worked for Frank & Sons in 2009. I do not recall Mr. Alfonso telling me to record 2009 income from Frank & Sons. The initial Schedule C for 2009 combined Mr. Alfonso's income from construction, shrimping, and Frank & Sons. That Schedule C labeled the income source as commercial fishing and construction.

5.  After the taxes were filed, Mr. Alfonso contacted me later in 2010 seeking to amend his tax documents. Mr. Alfonso informed me that he had met with the GCCF to apply for compensation related to the *Deepwater Horizon* oil spill. Mr. Alfonso explained that GCCF requested tax documents that separated his construction income from commercial fishing. As a result, Mr. Alfonso asked me to prepare new Schedule C forms showing his revenue from commercial fishing.

6.  In response to Mr. Alfonso's request, I prepared two Schedule C forms by subtracting his construction income from the initial Schedule C. This resulted in two Schedule C forms – one for construction and another that included revenue from shrimping and the Frank & Sons income recorded in my accounting software. It was my judgment and decision to leave Frank & Sons income on the Schedule C for commercial fishing. In preparing tax documents, I generally aggregate income from marine work. I did so based on general accounting and tax treatment of revenue from a marine vessel. Additionally, I did not know exactly what Mr. Alfonso did for

Frank & Sons and whether it was related to fishing. Mr. Alfonso did not instruct me to include the Frank & Sons income on the Schedule C with his shrimping revenue, and I have no reason to believe that knew that I did so.

7. I do not recall ever discussing with Mr. Alfonso my decision to combine shrimping revenue with Frank & Sons income on one Schedule C. I do not believe that Mr. Alfonso has ever reviewed or seen my accounting worksheets, including the entry for Frank & Sons income in 2009. I do not recall reviewing the Schedule C forms or their content with Mr. Alfonso, and I do not believe that I did so. I have no reason to believe that Mr. Alfonso knew that his commercial fishing Schedule C included Frank & Sons income, prior to the Special Master's investigation.

8. I completed the amended tax forms in December 2010. I signed the forms on December 19, 2010. After I prepared amended Schedule C forms and provided them to Mr. Alfonso, he asked whether he needed to file the amended forms with the IRS. I told him that he did not need to file the forms because the amended Schedule C forms did not change his reported income. The amended forms did not change his tax status or tax liability.

9. Several months ago, investigators from the Special Master came to my office and served a subpoena seeking documents related to Mr. Alfonso. The investigators informed me that they were trying to help Mr. Alfonso. In response, I told them that they should indeed help Mr. Alfonso because he is a hard-working fisherman who deserves compensation. I provided them with my files related to Mr. Alfonso, including my accounting worksheets. I was also interviewed by the investigators, and I communicated to them the facts that I have stated in this declaration. In particular, I told investigators that the inclusion of Frank & Sons income on the Schedule C was my responsibility.

3

10. I have known Vernon Alfonso for many years. I have known him to be a hard-working shrimper with significant fishing revenue year in and year out. I have always regarded him as honest, sincere, and forthcoming. I do not believe he would intentionally mislead anyone or commit fraud. After reviewing the events here, it is clear to me that there was simply a mistake and miscommunication. In particular, I have no reason to believe that Mr. Alfonso knew that the Frank & Sons income I had recorded in my accounting software was included in the commercial fishing Schedule C.

I declare under penalty of perjury that the foregoing is true and correct.

_Peggy Flowers, EA_
Peggy Flowers

_January 14, 2015_
Date

4