UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| This document relates to: | Honorable Carl J. Barbier |
| No. 12-970 and Case No. 2:11-CV-03180 | Magistrate Judge Shushan |

_____

**OPPOSITION TO MOTION OF THE DHECC FOR RETURN OF
PAYMENTS MADE TO JONATHAN TAYLOR**
_____

**INTRODUCTION**

Jonathan Taylor is a full-time commercial fisherman who began fishing with his father, Doyle Taylor, when he was 15.  Doyle owns the fishing vessel *God's Grace*, and, after largely retiring from fishing in 2004, Doyle turned it over to Jonathan.  Since 2004, Jonathan has been the primary captain of *God's Grace*.  The exception was the period of February through October 2009, when Jonathan took a job as a technical writer and Doyle assumed captain duties on the boat.

Following BP's settlement and the establishment of the Deepwater Horizon Economic Claims Center ("DHECC"), Jonathan and Doyle decided that Jonathan should receive the compensation allocated to captains.  That decision made common sense to them because Jonathan had been the captain of the vessel for seven years at the point (with the exception of the 2009 period) and because it is Jonathan whose livelihood has been threatened by the *Deepwater Horizon* disaster.  Between them, they filed one Shrimp Boat Captain claim in Jonathan's name.

Had they filed two captain claims—one for Jonathan, using landings from 2007 and 2008, and one for Doyle, using landings from 2009—they would have collectively received more money. Instead, one Shrimp Boat Captain claim, based on actual seafood landings from *God's Grace*, was paid to Jonathan.

This is not fraud. This is a father and son attempting to make sense of the Settlement Agreement and applying it fairly to their circumstances. Both are honest, hard-working commercial fishermen who are among the most deserving members of the settlement class. The *Deepwater Horizon* disaster threatened Jonathan's livelihood, and he continues to suffer from its impact. He should not be publicly branded as a perpetrator of fraud and threatened with financial ruin. The Special Master's motion should be denied.

## BACKGROUND

I.  **The *Deepwater Horizon* Oil Spill Was Devastating For Jonathan Taylor, A Commercial Fisherman.**

Jonathan began fishing for shrimp with his father Doyle when Jonathan was 15 years old. (Exhibit 1, Declaration of Jonathan Taylor ("J. Taylor Decl.") ¶ 2.) Doyle is himself a lifelong commercial fisherman, and he owns *God's Grace*, which Jonathan and Doyle use primarily for shrimping. (Exhibit 2, Declaration of Doyle Taylor ("D. Taylor Decl.") ¶ 2.) Today, Jonathan and Doyle run a family shrimping business. (*See* J. Taylor Decl. ¶ 6; D. Taylor Decl. ¶ 3.) Doyle keeps the books and pays the taxes, and they generally place all shrimp landings under Doyle's captain license—even when Jonathan is captaining the boat. (J. Taylor Decl. ¶ 5; D. Taylor Decl. ¶ 4.)

Doyle operated *God's Grace* as captain for many years, but in 2004, Jonathan assumed the role of primary captain of the vessel. (J. Taylor Decl. ¶ 7; D. Taylor Decl. ¶¶ 2, 7.) Shrimpers faced low prices that year, so Jonathan captained the boat for most of the year while

2

Doyle focused on selling shrimp directly to consumers. (J. Taylor Decl. ¶ 7; D. Taylor Decl. ¶¶ 2, 7.)

After the 2004 season, Jonathan continued to serve as the primary captain of *God's Grace* through the end of the 2008 season. (J. Taylor Decl. ¶¶ 8-11; D. Taylor Decl. ¶¶ 8-10.) During this time, Jonathan was finishing his studies at McNeese State, and he was captaining during the in-state shrimp season starting in May. (J. Taylor Decl. ¶ 10.) With rare exceptions, Doyle focused on selling shrimp to maximize their prices, while welcoming Jonathan's assumption of captain responsibilities. (*Id.* ¶ 11, D. Taylor Decl. ¶¶ 7-10.) While Doyle occasionally captained *God's Grace* during the period from 2004 through 2008, Jonathan and Doyle considered Jonathan the primary captain of the vessel, and Jonathan made the vast majority of trips. (J. Taylor Decl. ¶ 11.) Indeed, *God's Grace* was moored next to a bait-shop belonging to Curtis Tregle during these years, and Mr. Tregle usually saw Jonathan (not Doyle) taking the boat out fishing. (Exhibit 3, Declaration of Curtis Tregle ("C. Tregle Decl.") ¶ 4.)

In 2009, Jonathan stopped shrimping for several months to take a temporary job as a technical writer. (J. Taylor Decl. ¶ 12.) He started that job in late February 2009. (*Id.* ¶ 13.) When the shrimp season opened in May 2009, Doyle assumed captain responsibilities and served as captain through approximately October 2009. (*Id.* ¶ 14; D. Taylor Decl. ¶¶ 11-12; *see also* C. Tregle Decl. ¶ 5.) In mid-2009, Jonathan decided to quit his technical-writing job in order to devote himself to shrimping as his chosen vocation. (J. Taylor Decl. ¶ 13.) In November and December 2009, Jonathan resumed his captain duties on *God's Grace*. (*Id.* ¶ 15; *see also* D. Taylor Decl. ¶ 12.) Jonathan has been a full-time shrimp captain on *God's Grace* since that time, and he has settled into his career as a shrimper. (J. Taylor Decl. ¶ 15; *see also* D. Taylor Decl. ¶ 3; C. Tregle Decl. ¶¶ 4-6.)

The explosion of the *Deepwater Horizon* oil rig directly impacted Jonathan, Doyle, and the family business. (J. Taylor Decl. ¶ 18; D. Taylor Decl. ¶ 16.) Jonathan primarily fishes for shrimp in Vermillion Bay and Atchafalaya Bay, areas that were closed after the spill. (J. Taylor Decl. ¶¶ 4, 18; D. Taylor Decl. ¶ 16.) Shrimp landings and demand for shrimp declined in subsequent years. (J. Taylor Decl. ¶ 18; D. Taylor Decl. ¶ 16.) In addition, because Jonathan's primary line of work is commercial fishing—and because Jonathan plans to run the family's shrimping business in the future—he faces ongoing damages caused by the *Deepwater Horizon* spill. (*See* J. Taylor ¶¶ 6, 18; D. Taylor Decl. ¶¶ 3, 16.)

## II. Jonathan Taylor Submitted One Shrimp Boat Captain Claim On Behalf Of The Family Business.

The Special Master's motion arises out of the Shrimp Boat Captain claim that Jonathan submitted to the DHECC on July 31, 2012, in an attempt to receive compensation for the losses caused by the spill. (*See* Doc. ID No. 2867651.) In his Sworn Written Statement in support of his claim, Jonathan stated that "the revenue for the entire vessel" (*God's Grace*) was $84,423.00 in 2009. (Doc. ID No. 3596706 at 1-2.) As noted above, however, Doyle was the captain of *God's Grace* from January 2009 through October 2009, while Jonathan was the captain from November 2009 through December 2009. (J. Taylor Decl. ¶¶ 14-15; D. Taylor Decl. ¶¶ 11-12.) Thus, the revenue claimed by Jonathan was the amount that *both* Jonathan and Doyle earned in 2009 as captains of *God's Grace*. Because Jonathan submitted a Shrimp Boat Captain claim, Doyle, as owner of *God's Grace*, submitted only a Shrimp Vessel Owner claim. (D. Taylor Decl. ¶ 17.) Doyle never submitted a Shrimp Boat Captain claim, and any such claim would now be precluded by the Bar Date. (*See id.*) Ultimately, the DHECC found Jonathan eligible to receive $107,250.00, of which the DHECC paid $71,328.00 after offsets for prior payments. (*See* Doc. ID No. 4616210.)

4

Jonathan's Shrimp Boat Captain claim and Sworn Written Statement reflect Jonathan's attempt to apply the rules of the Settlement Program to the actual circumstances of the Taylors' family business. After the oil spill, Jonathan and Doyle were faced with deciding how to allocate the settlement proceeds for captain and owner of *God's Grace* given the past and future of their family fishing operation. Between them, they decided that Jonathan should receive the captain claim and Doyle should receive compensation as the vessel owner. (J. Taylor Decl. ¶¶ 22-23; D. Taylor Decl. ¶ 18.) In their minds, that allocation made sense because Jonathan had been the primary captain for several years prior to the spill, had committed to full-time shrimping as a captain prior to filing the claim, and was the future sole captain of *God's Grace*. (J. Taylor Decl. ¶¶ 22-23; D. Taylor Decl. ¶ 18.) They further expected that approach to simplify the claims process and payment of taxes since Jonathan would receive the Form 1099 for compensation and could pay the taxes himself from the proceeds. (J. Taylor Decl. ¶ 22.) Jonathan did not believe that his absence from shrimping in 2009 was important because Doyle did not plan to submit a Shrimp Boat Captain claim. (J. Taylor Decl. ¶¶ 23-24; *see also* D. Taylor Decl. ¶¶ 17-18.) Further, Jonathan did not think that he would increase the amount of his distribution by including revenue from the time period when Doyle captained *God's Grace*. (J. Taylor Decl. ¶¶ 23-25; *see also* D. Taylor Decl. ¶ 19.)

In fact, Jonathan and Doyle would have been within their rights to file multiple Shrimp Boat Captain claims with total compensation significantly exceeding what Jonathan received. For example, had Jonathan filed a Shrimp Boat Captain claim for the vessel's landings in 2007 and 2008, plus his limited landings in 2009, he likely would have qualified for the "Reduced Expedited Compensation Method," resulting in a payment of $49,500.00 for a 44-foot ice boat.

5

(*See* D. Taylor Decl. ¶¶ 21-24.)  Doyle could have filed for the remaining landings in 2009 and received the $107,250.00 payment that went to Jonathan.  (*See id.*)

## ARGUMENT

The facts here cannot justify entry of judgment against Jonathan.  According to the Special Master, the Court should grant the motion because "[t]he totality of the record shows that there is no genuine issue as to any material fact and that the Special Master and the DHECC are entitled to judgment as a matter of law."  (Sp. Master's Mem. at 3.)  Thus, the Special Master argues that judgment is required under the Rule 56 summary judgment standard.  *See* Fed. R. Civ. P. 56.  When considering a motion for summary judgment, the district court should "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).  A court determining whether a party is entitled to judgment as a matter of law "must disregard all evidence favorable to the moving party that the [finder of fact] is not required to believe."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000).  Further, summary judgment "must be denied when reasonable minds might differ on the inferences arising from the undisputed facts." *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 352 (5th Cir. 1989) (citation and quotation omitted).

The evidence presented here falls short of this standard.  The Special Master's motion fails to provide evidence of the elements of fraud, including, most significantly, any intent by the Taylors to induce reliance on a misrepresentation or any damage to the DHECC.  The Taylors invited the Special Master to discuss their fishing business and claims history with them so they could explain the facts.  The Special Master declined and instead filed this motion asking the Court to infer all elements of fraud from the mere misstatement on claim forms about 2009 shrimping revenue.  Indeed, the Special Master's motion does not articulate facts sufficient even

6

to plead a fraud claim with particularity. Because fraud cannot be established by innuendo and inference, especially on a motion for summary judgment, the motion should be denied.

**I.     Jonathan Taylor Did Not Commit Fraud.**

The Special Master argues that Jonathan committed fraud and asks the Court to order repayment of $71,328.00 to the DHECC and to bar Jonathan's further participation in the Seafood Compensation Program. (Sp. Master's Mem. at 1.) The Special Master, however, fails to establish the elements of fraud.

**A.     The Special Master must prove the elements of common law fraud.**

The common law of fraud applies to the Special Master's Motion. Under the Amended Settlement Agreement, which governs the settlement program, general maritime law applies to any disputes regarding the Agreement or the settlement program: "[T]his Agreement and the Release and Individual Releases hereunder shall be interpreted in accordance with General Maritime Law as well as in a manner intended to comply with OPA [Oil Pollution Act]." Amended Settlement Agreement, § 36.1. General maritime law incorporates the common law of fraud. *E.g., Su v. M/V S. Aster*, 978 F.2d 462, 473 (9th Cir. 1992); *Black Gold Marine, Inc. v. Jackson Marine Co., Inc.*, 759 F.2d 466, 470 (5th Cir. 1985); *Operaciones Technicas Marinas S.A.S. v. Diversified Marine Servs., LLC*, 926 F. Supp. 2d 858, 862 (E.D. La. 2013); *Cargill, Inc. v. Degesch Am., Inc.*, 875 F. Supp. 2d 667, 674 (E.D. La. 2012); *Elmwood Dry Dock & Repair v. H & A Trading Co., Ltd.*, Nos. 93-02156, 94-01844, 94-03783, 97-00191, 1997 WL 781298, at *21 (E.D. La. Dec. 16, 1997).

Applying general maritime law under the Amended Settlement Agreement, the Special Master must establish that, based on the undisputed facts in the record, he is entitled to judgment as a matter of law with respect to each of the five elements of common law fraud:

>    1.  The defendant made a false representation;
>
>    2.  The defendant knew or believed that the representation was false;
>
>    3.  The defendant intended to defraud the plaintiff by inducing the plaintiff to act in reliance on the representation;
>
>    4.  The plaintiff justifiably relied on the representation; and
>
>    5.  The plaintiff was damaged because of such reliance.

*See, e.g.*, *Operaciones*, 926 F. Supp. 2d at 862; *Cargill*, 875 F. Supp. 2d at 674; *Elmwood*, 1997 WL 781298, at *21-22 (citing W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS, § 107 (5th ed. 1984)); *see also Pence v. United States*, 316 U.S. 332, 338 (1942); *United States v. Toyobo Co. Ltd.*, 811 F. Supp. 2d 37, 52 (D.D.C. 2011). Here, the undisputed facts do not support the Special Master's motion.

### B. The undisputed facts do not support the Special Master's claim that Jonathan Taylor committed fraud.

The facts presented do not support a finding, under Rule 56, that either (1) Jonathan intended to defraud the DHECC; or (2) the DHECC was damaged. Failure to establish either of these elements provides an independent basis for denying the Special Master's motion.

#### *i. Jonathan Taylor did not intend to deceive the DHECC in order to benefit himself.*

The evidence does not support a finding that Jonathan intended to gain an unfair advantage by misrepresenting facts to the DHECC. A plaintiff alleging common law fraud must establish that the defendant possessed fraudulent intent. *Operaciones*, 913 F. Supp. 2d at 259; *Cargill*, 875 F. Supp. 2d at 674; *Elmwood*, 1997 WL 781298, at *21-22. A fraud claim cannot succeed unless the plaintiff can show that the defendant made incorrect statements "with the intent to deceive or deprive [the plaintiff] of his financial earnings." *Friedman v. Anderson*, 23

A.D.3d 163, 167 (N.Y. App. Div. 2005). "The intent-to-deceive element of a fraud cause of action 'imports a significantly greater degree of purposeful conduct than does the 'foreseeability' element of a negligence action.'" *Willis v. Marshall*, 401 S.W.3d 689, 702 (Tex. Ct. App. 2013) (quoting *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 415 (Tex. Ct. App. 1986)); *see also Richter, S.A. v. Bank of Am. Nat'l Trust & Saving Ass'n*, 939 F.2d 1176, 1185 (5th Cir. 1991). Indeed, the plaintiff must show that the defendant intended to deceive the plaintiff to benefit himself. *Elmwood*, 1997 WL 781298, at *22.

In *Elmwood*, for instance, the plaintiff alleged that the defendant defrauded it by lying about the status of a ship that had been seized for nonpayment of invoices. *Elmwood*, 1997 WL 781298, at *7, 22. The court found that the defendant knowingly misrepresented facts to the plaintiff, but it concluded that defendant was not liable for fraud. *Id.* at *22. Although the defendant made two statements that he knew to be false, "these two lies do not amount to fraud because the remaining elements of fraud have not been satisfied." *Id.* at *22. Indeed, the court found "no evidence suggesting that [the defendant] intended to deceive [the plaintiff] in order to benefit himself," and it could not "conclude based on the circumstantial evidence presented by [the plaintiff] that [the defendant] intended to defraud [the plaintiff] by making false statements." *Id.* at *8; *see also Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 222 (S.D.N.Y. 2007) (granting summary judgment to defendants on common law fraud claim where plaintiffs failed to establish defendants' intent to defraud); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 576 (Tex. 2001) (same).

Here, Jonathan did not intend to defraud the DHECC. Although Jonathan's Sworn Written Statement in support of his Shrimp Boat Captain claim included revenue earned by both Jonathan and Doyle, Jonathan did not intend to claim more than what he believed he was entitled

9

to receive under the Settlement Agreement.  (J. Taylor Decl. ¶¶ 23-24.)  Because Jonathan had been the primary captain of *God's Grace* since 2004 and was the captain at the time of the claims program, both Jonathan and Doyle believed that Jonathan should receive the full captain share for the vessel.  (*Id.* ¶¶ 22-23; D. Taylor Decl. ¶ 18.)  They coordinated in the claims process to avoid any duplicate claim by Doyle or any overpayment by the DHECC.  (J. Taylor Decl. ¶¶ 22-24; D. Taylor Decl. ¶¶ 17-19.)  Accordingly, there is no evidence that Jonathan sought to induce the DHECC to pay more than it should.

In fact, the Special Master's reliance on *United States v. Puente*, 982 F.2d 156 (5th Cir. 1993), a case involving a claim under 18 U.S.C. § 1001, highlights the lack of evidence of fraudulent intent in this case.  (*See* Sp. Master's Mem. at 7.)  In *Puente*, the district court found that the defendant violated 18 U.S.C. § 1001, a federal statute, by falsely certifying that he had never been convicted of a felony, and the Fifth Circuit affirmed.  *Puente*, 982 F.2d at 160.  But the elements of 18 U.S.C. § 1001 are *not* the same as the elements of common law fraud.  In particular, 18 U.S.C. § 1001 "does not require an intent to defraud [or] deprive someone of something by means of deceit."  *United States v. Lichenstein*, 610 F.2d 1272, 1276-77 (5th Cir. 1980).  Common law fraud, in contrast, requires both intent to make a false representation *and* intent to defraud another with that false representation.  *See, e.g.*, *Operaciones*, 926 F. Supp. 2d at 862; *Cargill*, 875 F. Supp. 2d at 674, *Elmwood*, 1997 WL 781298, at *21-22.  Indeed, the Fifth Circuit has recognized that "[i]ntent to deceive and intent to defraud are not synonymous.  Deceive is to cause to believe the false or to mislead.  Defraud is to deprive of some right, interest or property by deceit."  *United States v. Godwin*, 566 F.2d 975, 976 (5th Cir. 1978) (per curiam).

10

In this case, Jonathan did not intend to "deprive [the DHECC] of some right, interest or property by deceit." *See id.* Instead, Jonathan and Doyle sought to file a single captain claim to simplify the claims process and to ensure that Jonathan, as the primary captain, would receive compensation. They did not believe that filing a single Shrimp Boat Captain claim in Jonathan's name—rather than filing two separate captain claims—would increase their DHECC distribution, and they did not intend to claim anything above the amount to which they were entitled.

### ii. The DHECC sustained no damage, nor did any other interested party.

Further, because Jonathan and Doyle were legitimately entitled to the money paid for Jonathan's claim, the DHECC sustained no damage as a result of Jonathan's representation of his income in his Sworn Written Statement. A plaintiff alleging common law fraud must establish that it was damaged as a result of its reliance on the defendant's misrepresentation. *Operaciones*, 913 F. Supp. 2d at 259; *Cargill*, 875 F. Supp. 2d at 674; *Elmwood*, 1997 WL 781298, at *21-22. "[D]amages are an essential element of a fraud claim," and "a fraud action cannot be maintained where the damages attributable to the fraud are speculative or undeterminable." *Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 599 (E.D.N.Y. 2000). Further, "recovery for fraud requires proof that the defendant's alleged false representation caused the plaintiff injury." *Gen. Capital Grp. Beteligungsberatung GMBH v. AT&T*, 407 S.W.3d 507, 510 (Tex. Ct. App. 2013).

Here, the misrepresentation alleged by the Special Master did not result in damage to the DHECC or any other interested party. Jonathan's Sworn Written Statement did not induce the DHECC to pay duplicate claims or to pay more than the amounts to which the Taylors were collectively entitled. In fact, if Jonathan and Doyle had separated the revenue earned when

11

Jonathan was captain from the revenue earned when Doyle was captain into two separate Shrimp Boat Captain claims, they would have, collectively, received a larger distribution. This means that more funds were left in the Seafood Compensation Program fund for other claimants than would have been available if Jonathan and Doyle had each filed a separate Shrimp Captain Claim.

> ### *iii. Facts presented by the Special Master do not change Jonathan Taylor's lack of intent and the DHECC's lack of injury.*

In these circumstances, the facts presented by the Special Master are insufficient to establish the elements of common law fraud. The Special Master asserts the following:

1. Jonathan's 2009 tax records do not show income for commercial fishing;

2. Doyle did not provide a Form 1099 to Jonathan for 2009;

3. The claims filed with the Gulf Coast Claims Facility ("GCCF") in 2011, by both Jonathan and Doyle, suggest that Jonathan took over as captain of *God's Grace* in 2010;

4. Doyle's Shrimp Vessel Owner claim form is internally inconsistent, stating that Doyle was the sole captain of *God's Grace* from 2007 through 2009 *and* that Jonathan was a captain from 2007 through 2009;

5. The 2009 trip tickets that Jonathan and Doyle provided to the DHECC include three handwritten names—none of which is Jonathan's name; and

6. Cameron Fisheries LLC's sales records identify Doyle as captain in 2009.

(Sp. Master's Mem. at 3-5.)

But these facts reflect the realities of a family business and the complicated nature of the claims process more than they suggest dishonesty on Jonathan's part. First, Jonathan *did* include limited fishing income in his 2009 taxes. (J. Taylor Decl. ¶ 17.) However, his primary source of

income in that year was technical writing, rather than fishing, so he included all income under a single descriptor, "consulting." (*Id.*)  Second, Doyle did not issue a Form 1099 to Jonathan in 2010, because Jonathan's primary income source was technical writing, not fishing. (D. Taylor Decl. ¶ 13.)  Indeed, as noted above, Jonathan worked for only two months in 2009 as the full-time captain of *God's Grace*. (J. Taylor Decl. ¶¶ 14-15.)

Third, the GCCF claims filed by Jonathan and Doyle reflect the fact that 2010 was Jonathan's first full year as captain after Jonathan's 2009 return to shrimping and decision to make shrimping his career. (J. Taylor Decl. ¶ 19; D. Taylor Decl. ¶ 15.)  Prior to 2010, however, Jonathan was the primary captain of *God's Grace* from 2004 through 2009, with the exception of January 2009 through October 2009. (J. Taylor Decl. ¶¶ 7-15; D. Taylor Decl. ¶¶ 7-12.)  Fourth, the internal inconsistency of Doyle's Shrimp Vessel Owner claim form evidences the fact that both Jonathan and Doyle served as captain of *God's Grace* from 2007 through 2009. It also evidences the difficulty that Jonathan and Doyle experienced in applying the settlement program rules to their unique experiences.  Indeed, the Special Master notes that Doyle later claimed, in a faxed note, that Jonathan was captain in 2005, 2006, 2007, and 2008. (Sp. Master's Mem. at 4.)  And, both the office manager at Cameron Fisheries LLC and Estella Mudd told investigators that Jonathan was the captain for at least a portion of 2009. (*Id.* at 4-5.)  Taken together, these statements show the *lack* of an intentional plan to deceive the DHECC about the years of Jonathan's captainship.

Fifth, trip tickets from 2009 do not identify Jonathan, because Jonathan did not fish for much of the 2009 season. (J. Taylor Decl. ¶¶ 12-15; D. Taylor Decl. ¶¶ 11-12.)  The handwritten names identified by the Special Master are the names of deckhands on *God's Grace*, not additional captains. (J. Taylor Decl. ¶ 16; D. Taylor Decl. ¶¶ 14.)  Sixth, the sales records of

13

Cameron Fisheries LLC likely identify Doyle as the captain of *God's Grace*, because Jonathan and Doyle typically submit all landings in Doyle's name, regardless of who is serving as captain. (J. Taylor Decl. ¶ 5; D. Taylor Decl. ¶ 4.)  Indeed, the Special Master concedes that the office manager at Cameron Fisheries LLC told investigators that Jonathan captained *God's Grace* for part of 2009, even though the sales records name Doyle as captain. (Sp. Master's Mem. at 4-5.)

At best, the Special Master's facts show that Jonathan was not the captain of *God's Grace* for much of 2009—which Jonathan does not dispute.  They do not, however, show that Jonathan *intended* to deceive the DHECC for his own benefit, and they do not show that Jonathan's Shrimp Boat Captain claim *injured* the DHECC or other Seafood Compensation Program participants. In short, the evidence does not support judgment as a matter of law on each element of common law fraud.  Accordingly, this Court should deny the Special Master's motion.

## II.     Principles Of Equity Support Denial Of The Special Master's Motion.

Principles of equity offer an additional, independent basis for denying the Special Master motion.  In arguing that this Court should require Jonathan to return his DHECC distribution, the Special Master relies on this Court's authority to order equitable remedies.  (Sp. Master's Mem. at 5 (citing *Hazel-Atlas Glass Co. v. Harford Empire Co.*, 322 U.S. 238, 244 (1944)).)  Yet equity cannot support the punitive sanction the Special Master seeks here.

The Supreme Court has underscored that equity focuses on just and practical outcomes: "[E]quitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) (plurality opinion).  Moreover, "[i]n equity, as nowhere else, courts eschew rigid absolutes and look to the practical realities and

14

necessities inescapably involved in reconciling competing interests." *Id.* at 201; *see also Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 367, 375 (1977).

It is undisputed that Jonathan is a long-time commercial fisherman who has captained his father's shrimp boat for most of the last ten years. It is also undisputed that Jonathan suffered significant damages as a result of the *Deepwater Horizon* disaster, entitling him to compensation both generally and under the Settlement Agreement. Further, the Special Master at least implicitly acknowledges that the Taylors collectively received less compensation from the DHECC than they could have pursued and obtained through separate claims. (*See* Sp. Master's Mem. at 5-6.) Despite these facts, the Special Master seeks a remedy of total forfeiture, ensuring that no one from the Taylor family ever receives compensation for legitimate damages reflected in the Shrimp Boat Captain claim.

Applying the *Lemon* principles of equity, the Special Master's proposed remedy is neither necessary nor fair nor workable. Jonathan and Doyle did their best to navigate the Settlement Program and seek compensation for the damages they suffered from the *Deepwater Horizon* disaster. They collectively received less than they could have obtained under the settlement, leaving more funds available in the Seafood Compensation Program fund for other participants in the Program. Forcing Jonathan to repay funds is unjustified under these circumstances.

## CONCLUSION

For the foregoing reasons, Jonathan Taylor respectfully requests that this Court deny the instant motion.

Date: May 20, 2015　　　　　　　　　　**THE KRELLER LAW FIRM**

/s/ *Stephen Skelly Kreller*
Stephen Skelly Kreller (Bar No. 28440)
757 St. Charles Avenue, Suite 301
New Orleans, Louisiana 70130
T: (504) 484-3488
F: (888) 294-6091
E: ssk@krellerlaw.com

**FAEGRE BAKER DANIELS LLP**
William L. Roberts
Craig S. Coleman
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
T: (612) 766-7000
F: (612) 766-1600
E: william.roberts@faegrebd.com
E: craig.coleman@faegrebd.com

*Attorneys for Claimant Jonathan Taylor*

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing has been filed on the Court's CM/ECF system, and thereby served on all counsel of record who have entered an appearance in this case, on May 20, 2015.

                                                */s/ Stephen Skelly Kreller*