# EXHIBIT B

**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-345 v1 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile  - EXTERNAL

| Subject | Business Economic Loss Claims: Customer Mix Test | | |
|---|---|---|---|
| **Active Date** | 5/31/12 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | Exhibit 4B | |
| **Affected Claim Types and/or Review Processes** | | BEL | |
| **Superseding Information** | | Revised by Policy 345 v3 on 04/21/2014<br>Revised by Policy 345 v2 on 02/08/2013 | |

### II. Summary

The customer mix test must be "reflected in" specified types of acceptable documentation, e.g. customer credit card receipts, business documents reflecting contemporaneous recording of receipts or invoices listing customers by location. If no cash sale information is available, cash sales would not be included in the analysis of either Benchmark or Compensation Period customer mix.

**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-345 v2 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile - EXTERNAL

| Subject | Business Economic Loss Claims: Customer Mix Test | | |
|---|---|---|---|
| **Active Date** | 2/8/13 | **Policy Impact** | ☑ All Claims Regardless of Active Date<br>☐ All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision | |
| **Settlement Agreement Reference** | | | |
| **Affected Claim Types and/or Review Processes** | | BEL | |
| **Superseding Information** | | Policy 345 v2 revises Policy 345 v1 on 02/08/2013 | |

### II. Summary

Exhibit 4B of the Settlement Agreement provides that one of the ways that BEL claimants can establish Causation is by satisfying what is referred to in Exhibits B and C as the Customer Mix Test, together with other requirements. The Settlement Agreement states that the claimant may submit the following types of documents to establish the required revenue decline as specified under the Customer Mix Test:
(a) Customer credit card receipts or other contemporaneously maintained records of payment;
(b) Customer registration logs (e.g., hotel registries);
(c) Documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or
(d) Business documents reflecting contemporaneous recording of receipts or invoices listing customers by location.

The Claims Administrator has observed that it is difficult or even impossible for some BEL claimants to satisfy this test because they do not have documentation to establish the addresses/locations of their customers. This is particularly problematic for businesses that deal primarily in cash, which businesses often do not maintain the type records specified in the above-referenced section of the Settlement Agreement. But the Claims Administrator interprets the Settlement Agreement's documentation requirements as mandatory. The Settlement Agreement does not grant the Claims Administrator discretion to waive these document requirements. In order to establish Causation under the Customer Mix Test, a BEL claimant must provide supporting documentation of the type described in the above-referenced section.

With regard to application of the Customer Mix Test to specific factual patterns, the Claims Administrator provides the following illustrations concerning how this test is to be most reasonably applied:
(a) Project-based businesses: When project-based businesses, such as construction companies, end a project in the regular course of business, the completion of those contracts will not be equated to the loss of total revenue generated by the customer(s) for purposes of the Customer Mix Test.
(b) Property owners/commercial tenants: If a BEL claimant is the owner of a commercial property such as a shopping mall, the location of that claimant's customers shall be considered to be the location of the leased space in the shopping mall rather than the physical location of the headquarters for each retailer.

**DEEPWATER HORIZON**
**CLAIMS CENTER**
ECONOMIC & PROPERTY DAMAGE CLAIMS

| Pol-345 v3 | CLAIMS ADMINISTRATOR'S APPROVED POLICY |
|---|---|

### I. Profile - EXTERNAL

| Subject | Business Economic Loss Claims: Application of the Customer Mix Test | |
|---|---|---|
| **Active Date** | 4/21/14 | **Policy Impact** | ☑All Claims Regardless of Active Date<br>☐All Claims Greater than Active Date |
| **Type of Decision** | | Claims Administrator Decision |
| **Settlement Agreement Reference** | | Exhibits 4B and 7 |
| **Affected Claim Types and/or Review Processes** | | BEL |
| **Superseding Information** | | Policy 345 v3 revises Policy 345 v2 on 04/21/2014 |

### II. Summary

See the attached Final Policy memo.

FINAL POLICY

POLICY 345 v.3: BUSINESS ECONOMIC LOSS CLAIMS: APPLICATION OF THE CUSTOMER MIX TEST

I.     **Introduction.**

Exhibits 4B and 7 of the Settlement Agreement set forth the various Causation Requirements that claimants with general Business Economic Loss ("BEL") claims and Start-Up Business Economic Loss ("Start-Up BEL") claims, respectively, may use to establish Causation. One of the ways that such claimants can establish Causation is referred to in Exhibits B and C of Exhibits 4B and 7 as the Customer Mix Test, together with other requirements.

To apply the Customer Mix Test, the Claims Administrator previously adopted Policy ID 345 v.2 (Business Economic Loss Claims: Customer Mix Test), which this policy supplements and supersedes.  All capitalized terms used in this policy that are defined in the Settlement Agreement shall have the meanings given to them in the Settlement Agreement.

II.    **Policy Statement.**

A.     **General Requirement.**

Exhibit 4B of the Settlement Agreement places the burden on the claimant to demonstrate that the claimant has satisfied the requirements of the Customer Mix Test.  In support of the claimant's prepared calculation, a claimant can utilize information reflected in the following types of documents:

(a) Customer credit card receipts or other contemporaneously maintained records of payment;
(b) Customer registration logs (*e.g.*, hotel registries);
(c) Documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or
(d) Business documents reflecting contemporaneous recording of receipts or invoices listing customers by location.

In order to establish Causation under the Customer Mix Test, claimants with BEL or Start-Up BEL claims must provide supporting documentation of the type described in the above-referenced sections.

Exhibit 7 of the Settlement Agreements adds the following types of documents to this list for Start-Up BEL claims in Economic Loss Zones B and C:

(e) Any other documentation providing evidence of the portion of the claimant's revenue projected to be generated by customers in Zones A-C versus outside of Zones A-C

1

431181
4/21/14

during the Compensation Period.  The claimant must be able to demonstrate that the projections were prepared prior to the DWH Spill and provided to and utilized by a financial institution extending credit to the Start-Up Business.

The Claims Administrator has observed that it is difficult or even impossible for some claimants with BEL or Start-Up BEL claims to satisfy this test because they do not have documentation to establish the addresses/locations of their customers.  This is particularly problematic for businesses that deal primarily in cash, which often do not maintain the type records specified in the above-referenced section of the Settlement Agreement.  However, the Claims Administrator interprets the Settlement Agreement's documentation requirements as mandatory.  The Settlement Agreement does not grant the Claims Administrator discretion to waive these document requirements.

**B.  Examples to Illustrate Application of Customer Mix Test.**

With regard to application of the Customer Mix Test to specific factual patterns, the Claims Administrator provides the following illustrations concerning how this test is to be most reasonably applied:

(a) **Project-based Businesses:**  When project-based businesses, such as construction companies, end a project in the regular course of business, the completion of those contracts will not be equated to the loss of total revenue generated by the customer(s) for purposes of the Customer Mix Test.

(b) **Property Owners/Commercial Tenants:**  If a claimant with a BEL or Start-Up BEL claim is the owner of a commercial property such as a shopping mall, the location of that claimant's customers shall be considered to be the location of the leased space in the shopping mall rather than the physical location of the headquarters for each retailer.

**C.  Verification of Economic Loss Zones of Customers and Distance Between Customers and Claimant.**

To perform the Customer Mix Test, the Settlement Agreement requires the following information:  (1) the Economic Loss Zone of each of the claimant's customers, and (2) the distance between the claimant and each of its customers.  The Claims Administrator will use mapping software to verify this information.  In doing so, the Claims Administrator will typically follow these guidelines:

(a) For any customer address omitting a street number, the Claims Administrator will use the location result as generated by the Claims Administrator's mapping software company.

(b) For any customer address provided in the form of a P.O. Box and/or any customer address in which the mapping software company's geo-coder can only identify the City and/or Zip Code, the Claims Administrator will consider the Economic Loss

2

431181
4/21/14

Zone of the customer and the distance between the customer and the claimant to be unknown. For the purposes of performing the Customer Mix Test, revenue generated during the Benchmark Period from customers whose address is considered unknown will be excluded from the claimant's share of revenue generated by non-local customers or customers located in Zones A-C; conversely, revenue generated during the Compensation Period from customers whose address is considered unknown will be included in the claimant's share of revenue generated by non-local customers or customers located in Zones A-C. The claimant is still able to pass the Customer Mix test if it can demonstrate the required percentage change in revenue derived from customers in Zones A-C or customers located within 60 miles of the claimant's business location between the Benchmark Period and Compensation Period. Illustrative examples are provided in Exhibit 1 attached.

(c) In determining the distance between the claimant and its customers, the Claims Administrator's mapping software company will use the distance measured by roads and/or walkways.

**D.** **Application of Customer Mix Test to Construction Businesses with Revenue/Expenses Matching Issues Pursuant to Policy 495 (Matching of Revenue and Expenses).**

(a) The Construction Methodology (Attachment C to Policy 495) may require a claimant's revenue to be allocated based on the claimant's monthly variable expenses as a percentage of annual variable expenses. As a result of this allocation, the monthly revenue recorded on the claimant's allocated profit and loss statements ("P&Ls") can no longer be attributed to individual customers. Accordingly, the allocated P&Ls cannot be utilized for the purpose of determining causation for any claimant required to satisfy the Customer Mix Test, per Exhibits 4B and 7 of the Settlement Agreement.

(b) Under the Construction Methodology, for any claimant required to satisfy the Customer Mix Test to demonstrate causation, the Settlement Program will utilize the contemporaneous P&Ls (restated for accounting errors) to perform the Customer Mix Test element of the causation assessment, but will utilize the restated and allocated P&Ls for assessing the Revenue Pattern Tests under Exhibits 4B and 7 of the Settlement Agreement, and in computing compensation.[1]

---

[1] This would supersede, for construction companies only, Policy 464 as it relates to the requirement to utilize the same P&Ls for determining causation and calculating compensation. However, as per the "Addendum To Causation Requirements for Business Economic Loss Claims and Compensation Framework for Business Economic Loss Claims," while the "claimant is not required to use the same months in the Benchmark Period for purposes of establishing causation pursuant to Ex. 4B [of the Settlement Agreement] and determining compensation pursuant to Ex. 4C [of the Settlement Agreement]," the "same Benchmark Period year(s) are used for the purpose of determining both causation and compensation." Accordingly, the claimant may elect which months to utilize to demonstrate causation under the Customer Mix Test, but must utilize the same Benchmark years as those used to calculate compensation.

431181
4/21/14

**EXHIBIT 1: Illusration of Customer Mix calculations**

**Zones A-C Customer Mix Scenarios**
In these examples, the claimant is located in Zone B, C, or D and has a Non-Tourism Industry designation.

**Example 1: 75% of total P&L revenue supported by claimant provided customer mix data**

| Customer Residence | Reference | June-August '09 | June-August '10 |
|---|---|---|---|
| Zone D | (1) | $ 50,000 | $ 45,000 |
| Zone A-C | (2) | $ 100,000 | $ 15,000 |
| Supported Customer Mix Revenue | (1)+(2) | $ 150,000 | $ 60,000 |
| Unknown Customer Revenue | (3) | $ 50,000 | $ 20,000 |
| Total Revenues Reported in P&Ls | (1)+(2)+(3) | $ 200,000 | $ 80,000 |

| Customer Residence | | June-August '09 | June-August '10 |
|---|---|---|---|
| Zone D known | (1) | $ 50,000 | $ 45,000 |
| Zone D unknown | (3) | $ 50,000 | |
| Zone A-C known | (2) | $ 100,000 | $ 15,000 |
| Zone A-C unknown | (3) | | $ 20,000 |
| Total Revenues Reported in P&Ls | (1)+(2)+(3) | $ 200,000 | $ 80,000 |
| *Total % Zone A-C including unknown* | | *50%* | *44%* |
| *% Revenue Decline From Zone A-C Customers including unknown* | | 12.50% = .125 = (50-44)/50 | |

**Claimant passes Customer Mix Test:** Claimant has a 12.5 percent decline in the share of total revenues from customers in Zones A-C.

**Example 2: 50% of total P&L revenue supported by claimant provided customer mix data**

| Customer Residence | Reference | June-August '09 | June-August '10 |
|---|---|---|---|
| Zone D | (1) | $ 25,000 | $ 15,000 |
| Zone A-C | (2) | $ 75,000 | $ 25,000 |
| Supported Customer Mix Revenue | (1)+(2) | $ 100,000 | $ 40,000 |
| Unknown Customer Revenue | (3) | $ 100,000 | $ 40,000 |
| Total Revenues Reported in P&Ls | (1)+(2)+(3) | $ 200,000 | $ 80,000 |

| Customer Residence | | June-August '09 | June-August '10 |
|---|---|---|---|
| Zone D known | (1) | $ 25,000 | $ 15,000 |
| Zone D unknown | (3) | $ 100,000 | |
| Zone A-C known | (2) | $ 75,000 | $ 25,000 |
| Zone A-C unknown | (3) | | $ 40,000 |
| Total Revenues Reported in P&Ls | (1)+(2)+(3) | $ 200,000 | $ 80,000 |
| *Total % Zone A-C including unknown* | | *38%* | *81%* |
| *% Revenue Decline From Zone A-C Customers including unknown* | | -116.67% = -1.1667 = (38-81)/38 | |

**Claimant fails Customer Mix Test** as claimant does not demonstrate the required percentage decline in the share of total revenue from customers in Zones A-C. Additional customer mix documentation is necessary to verify the customer address.

4

431181
4/21/14