UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO ON APRIL 20, 2010 | CIVIL ACTION |
| | MDL NO. 2179 |
| THIS DOCUMENT RELATES TO: | SECTION "J" |
| 10-3896, 11-826, AND 12-968 | JUDGE BARBIER |
| | MAGISTRATE SHUSHAN |

_____

MEMORANDUM OF DUWAYNE MASON IN OPPOSITION TO SEACOR'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF MOTION TO BE RECOGNIZED AS AN OPT-OUT PLAINTIFF

_____

DuWayne Mason ("Mason"), Plaintiff in Action No. 11:826 and Claimant in Limitation Action No. 10-3896, opposes the Motion for Summary Judgment filed by Seacor Holdings, Inc., Seacor Offshore LLC, and Seacor Marine LLC's (collectively "Seacor") and, by separate motion, filed contemporaneously herewith, seeks to be recognized as an opt-out plaintiff from the Medical Benefits Class Action Settlement agreement.

## I.    OVERVIEW AND SUMMARY OF OPPOSITION

Seacor argues that because Mason did not "opt-out" of the MB Class Action Settlement because he did not follow the formal "opt-out" procedures outlined in the Medical Benefits Class Action Settlement Agreement (Rec. Doc. 6273-1, Sec. XI E. p. 91) by filing or mailing a written request to the Claims Administrator stating his "wish" to exclude himself from the settlement by the extended deadline of November 1, 2012.  Seacor seeks a summary judgment declaring that

Mason's Jones Act claims against Seacor have been compromised and that Seacor is released from liability under the terms of the MB Class Action Settlement.

The complex procedural history surrounding the assertion of Mason's Jones Act claims reveals considerable confusion over whether Mason's Jones Act claims against Seacor were intended to be part of the MB Settlement of the B3 medical benefits claims. Seacor was not a defendant to the MB Class Action Settlement complaint. Mason's Jones Act claims were originally included among the B4 Pleading Bundles, which grouped together all claims directed not at BP, but at the Responder Vessels, which included Seacor. Mason never received individual notice of the MB Settlement Class or Settlement by direct mail, as required by Rule 23(c)(2)(B) and this Court's Preliminary Approval Order. BP has apparently conceded that the required notice was not in fact ever mailed to him because it compiled its mailing lists from the "lists of claimants in the B3 Pleading Bundle," not the B4 claimants. Mason was easily identifiable as a potential class member from the Court's records, and if his claims were intended to be included in the class, then failure to send Mason notice of the class and the settlement was constitutionally inadequate to justify dismissing his claims for failing to opt-out formally.

This Opposition argues that Mason effectively communicated his intent to be excluded from Medical Benefits Class Action Settlement both before and after the "opt-out" deadline of November 1, 2012, first, in his Motion to Sever his Jones Act claims from the MDL, filed in July 2012, before the opt-out deadline had expired, and second, after this Court denied severance motion, in March, 2013, when Mason repeated that intention in a March 26, 2013 letter addressed directly to the Claims Administrator and in his affidavit filed in support of his Motion to Reconsider the denial of his severance motion.

Under the law, those written expressions constitute valid "opt-outs" through non-formal means -- that is, by means other than the exact opt-out procedures outlined in the MB Class Action Settlement Agreement -- that are consistent with Due Process and Rule 23(c)(2)(B)(v) of the Federal Rules of Civil Procedure, which states that "the court will exclude from the class any member who requests exclusion."  Mason's "failure" to follow the formal "opt-out" procedure established by the Medical Benefits Class Action Settlement Agreement should not, in the circumstances of this case, be fatal to his Due Process Rights to exclude himself from that settlement through other, valid, non-formal means.

This Court has not directly addressed, nor expressly decided, in a final appealable order or judgment, the issue of Mason's "opt-out" through valid, non-formal means[1] or the Due Process implications of the failure to mail Mason the required notice.  These issues are ripe for adjudication now, both in opposition to Seacor's motion and in support of Mason's motion to be recognized as an opt-out plaintiff.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Mason's employment aboard the M/V SEACOR VANGUARD

DuWayne Mason was a Jones Act Seaman employed as an assistant engineer aboard the vessel, M/V SEACOR SEACOR VANGUARD). On or around April 20, 2010, an explosion ("Deepwater Incident") occurred in the Gulf of Mexico aboard the Deepwater Horizon, an oil drilling platform owned or operated by British Petroleum ("BP"). The M/V SEACOR VANGUARD, among others, was called as a "first responder" vessel to help put out the fire.  It was in the engine room, where Mason, whose job was to monitor the automatic controls for the

---

[1] Seacor's assertion on page one of its supporting memorandum that this Court has already decided the issue is directly contradicted by the exact opposite argument in Seacor's motion to dismiss Mason's appeal to the Fifth Circuit that the issue had not been decided.  See discussion and quotation on pages 15 and 16 below.

water cannons being used by crew members on deck to pump water during SEACOR VANGUARDS efforts to extinguish fire on the rig, was exposed to noxious fumes and chemicals due to Seacor's negligence in providing him with respiratory protection.

After the fire was extinguished, for the next three months the M/V SEACOR VANGUARD remained engaged in clean-up operations by skimming and dispersing with chemicals the oil being pumped into the waters of the Gulf of Mexico from the deep sea well that had ruptured due to the destruction of the Deepwater Horizon. During these clean-up operations, Mason did not provide any physical assistance to his crew members in any actual clean-up activities. He was again confined to the engine room where he was further exposed to large amounts of crude oil, chemical dispersants and other noxious byproducts, because he was not provided with adequate respiratory protection by Seacor, his employer. That exposure resulted in physical injury causing severe and permanent damage to his lungs and other parts of his body.

Mason was eventually instructed by his physicians to stop work as an assistant engineer aboard the M/V SEACOR VANGUARD. Mason and his attorney, Scott Silbert, began corresponding with Seacor to determine the most efficient and beneficial way for Mason to seek compensation for the damages suffered.

### B.     The Creation of the MDL, the Pleading Bundles, and the MB Settlement

#### 1.     The Pleading Bundles and the B3 Master Complaint

Before Mason had determined what if any suits he needed to file to assert his claims against Seacor, on August 10, 2010, the Judicial Panel on Multidistrict Litigation consolidated 77 separate actions pending in five states into a single action, styled *In Re: Deepwater Horizon*, (Doc.No. 2:10-md-02179) and transferred the MDL action to this Court.

On October 8, 2010, this Court appointed the Plaintiffs' Steering Committee ("PSC") to represent plaintiffs in all actions consolidated by the MDL order. (Doc. 506). On October 19,

2010, the Court entered Pre-Trial Order No. 11/Case Management Order No. 1 (Doc. 569). PTO11/CMO No. 1 organized all pleadings and categorized all claims, for administrative purposes, by creating various "pleading bundles" for all present suits and claims, and any pending and future suits filed in or transferred to the MDL.  The pleading bundles relevant to Mason's claims are Pleading Bundles B3 and B4.

Pleading Bundle B3, concerning "Post-Explosion Clean-Up Claims," related to "all claims related to post-explosion clean-up efforts" which were to be "separately and uniformly" pleaded in a "Master Complaint" and not "included in any other Pleading Bundles or Master Complaints."  Pleading Bundle B3 was obviously intended to cover any personal injury claim asserted against BP, or other parties, responsible for the explosion, fire and resulting oil release requiring remediation efforts that the target defendants in the MDL proceedings had caused.

Pleading Bundle B4, concerning "Post-Explosion Emergency Responder Claims," included "all claims against the alleged owners and/or operators of rescue vessels that answered the Deepwater Horizon distress call and responded to the emergency after the explosion."  As distinguished from Pleading Bundle B3, Pleading Bundle B4 was obviously intended to cover the claims filed in July, 2010 by Terry Robin and 12 other plaintiffs, who sought recovery, not against BP, but against the owners and operators of the emergency responder vessels, including those vessels owned by Seacor, for economic and property damages allegedly caused independently by the vessels owners' alleged negligence in extinguishing the fire with water cannons that allegedly caused the drilling platform to collapse onto the sea floor, due to the water's weight, and rupture the well.  See *Robin* complaint, Case No. 10:1986, Doc. 1.

Pleading Bundle B4 also appeared, based on its wording, to include Mason's Jones Act claims against Seacor for his personal injuries, due to Seacor's alleged fault as his employer in

failing to provide adequate respiratory protection from exposure to chemicals during the M/V SEACOR VANGUARD's clean-up efforts.  It is not unreasonable to distinguish the grouping of personal injury claims in Pleading Bundle B3 from the grouping of "all claims" in Pleading Bundle B4, whether personal or economic, based on the identity of the target defendants in Pleading Bundle B4 -- the responder vessels -- whose fault allegedly caused the damages.

This appears to have been how the PSC interpreted the pleading bundles.  When the PSC filed the B3 Master Complaint (Rec. Docs. 881, 1812) in December, 2010, as required by PTO 11/CMO No. 1, it asserted all claims within Pleading Bundle B3 but named only those defendants whose fault allegedly caused the fire, collapse and resulting oil release.  Defendants included several BP entities; other "Responsible Parties" (Anadarko, MOEX entities and MOECO); Transocean entities, and certain "dispersant" defendants.  But none of the Seacor entities that owned or operated the M/V SEACOR VANGUARD, or any of the owners or operators of the other responder vessels, were made defendants to the B3 Master Complaint, nor were they made defendants in the Master Complaint filed for the B1 claims for economic and business losses.

On January 12, 2011, after the B3 Master Complaint had been filed, this Court issued Pretrial Order No. 25 (Doc. 983), to clarify the "scope and effect" of B1, B3 and D1 Pleading Bundle Master Complaints.  PTO 25 clarified Pleading Bundle B3 to include "all claims, of any type, relating to post-explosion clean-up efforts asserted against Defendants not named in the B1 Master Complaint, as well as all claims for personal injury and/or medical monitoring for exposure or other injury occurring after the explosion and fire of April 20,2010."  PTO 25 made no changes or reference to claims within Pleading Bundle B4, except to state in paragraph 4 that any plaintiff named in a case that falls within Bundles B1, B3, D1 or D2 are "deemed" a plaintiff

in the applicable Master complaint.  Paragraph 8 stayed all "individual petitions" that fell within Bundles B1, B3, D1 or D2; but it said nothing about Pleading Bundle B4.

Over the next year, the PSC and BP conducted extensive settlement negotiations over medical benefits pertaining to the B3 claims asserted in the Master Complaint, resulting in notice to the Court on or about March 2, 2012 that the parties had reached an "agreement in principle" of a medical benefits settlement.  Rec. Doc. 5955; see also Second Amended Pretrial Order No. 41, Rec. Doc. 6592.

### 2.    The B4 Pleading Bundle, the *Robin* claims and Mason's Jones Act Claims

Meanwhile, in early April, 2011, while the PSC and BP were negotiating the MB Class Action Settlement of the B3 claims, Seacor, as owner of the M/V SEACOR VANGUARD, filed a limitation action ("Seacor Limitation Action"), under Docket No. 10-3896, *In the Matter of Seacor Holdings, Inc.,* in response to the B4 claims asserted by the *Robin* plaintiffs.  Owners of five other responder vessels filed similar limitation actions.  This Court enjoined the prosecution of the *Robin* complaint and ordered that all claims against any of the Emergency Responder Defendants be filed in their respective limitation actions by April 20, 2011.  Rec. Doc. 1914.

Uncertain of the legal effect of Seacor's Limitation Action on his claims, and pursuant to the Court's order, on April 13, 2011 – before the Medical Benefits Class Action Settlement had been reached -- Mason filed both (1) an answer and Jones Act claim against Seacor in the Limitation Action (Case 10:2179, Doc. 1941) for damages resulting from exposure to heat and fumes while the M/V SEACOR VANGUARD was fighting the fire and (2) the same Jones Act claim asserted in a separate complaint, under Docket No. 11:826.  The separate Jones Act complaint included a claim for damages sustained after the fire during the time that the M/V SEACOR VANGUARD was engaged in clean-up operations.

Paragraph 6 of Mason's Jones Act complaint contains an ambiguous sentence that suggests incorrectly that Mason had personally been engaged in actual clean-up operations, which arguably put his damage claims within the definition of Pleading Bundle B3, even though Mason was not suing BP or any other party responsible for the explosion, fire or oil release. The sentence reads: "While engaged in collecting the oil and dispersant, plaintiff was exposed to crude oil, chemical components of the crude oil, chemical dispersant and other noxious by-products of the rig fire and oil spill, resulting in severe and permanent damage to his lungs and other parts of his body." That sentence, made in a notice pleading, had unfortunate consequences on this Court's eventual ruling on Mason's motion to sever his Jones Act claim from the MDL.

Seacor, along with the other vessel owners, moved to dismiss the B4 claims asserted by the *Robin* plaintiffs, but specifically exempted from dismissal Mason's Jones Act claims because that claim was "not based on the theories of fault articulated in the Robin complaint." Seacor's "Joint Memorandum of Emergency Responder Defendants," Doc. 2707-1, p. 3, n. 5.

On October 12, 2011, this Court issued its "Order and Reasons, subtitled "As to the B4 Pleading Bundle,"[2] dismissing the *Robin* claims, on the ground that the alleged damages were not legally foreseeable, but specifically excluded from dismissal the claims of DuWayne Mason. Doc. 4285. The Final Judgment and Decree of Exoneration, filed on November 22, 2011, excluded Mason's claims, stating in paragraph (4) "[t]hat the claim of DuWayne Mason is based on a theory of fault that is separate and distinct from those asserted by all other Claimants" and that "there is no just reason for delay in the entry of final judgment as to all claims except that of DuWayne Mason." Case 2:10:3896, Doc. 61, filed on November 22, 2011.

---

[2] The Order's caption states: "This Document Applies to:  Pleading Bundle "B4" (10-3895, 10-3896, 10-3897, 10-418, 10-4169, and 11-0058).

### 3. The MB Class Action Settlement

Following the dismissal of the B4 *Robin* claims, on April 16, 2012, pursuant to the "agreement in principle" reached in March, 2012, the PSC filed a class action complaint under Rule 23(a) and 23(b)(3) on behalf of thousands of individuals asserting bodily and/or personal-injury claims against the BP defendants for damages caused by exposure to oil and/or dispersants arising from the Deepwater Horizon incident.  A copy of the Proposed MB Class Action Settlement Agreement between the PSC and BP Exploration & Production Inc. and BP America Production Company was filed on April 18, 2012.[3]  Again, none of the Seacor entities were made defendants to that class action complaint.

The Settlement Agreement defined the proposed Settlement Class to include, among others, all "Natural Persons who resided in the United States as of April 16, 2012, and who 1) worked as CLEAN-UP WORKERS . . . between April 20, 2012 and April 16, 2012 . . . ."  The Settlement Agreement defined "CLEAN-UP WORKERS" to include "all NATURAL PERSONS who performed RESPONSE ACTIVITIES." (Rec. Doc. 6427-1, Sec. II, Def. Q), defined as "clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances . . . . " Rec. Doc. 6427-1, Def. OOOO, p. 25.

On April 18, 2012, the parties to that class action – which again did not include Seacor – filed a joint motion for Preliminary Approval of the Medical Benefits Settlement, and Plaintiffs moved to certify the Class for purposes of settlement.  Rec. Doc. 6267.  On May 2, 2012, this Court issued its Preliminary Approval (Rec. Doc. 6419) setting an original deadline of October 1, 2012 (later extended to November 1, 2012) for "requests for exclusion" to be post-marked, to

---

[3] Rec. Doc. 6273, modified and filed as modified on May 1, 2012 in Rec. Doc. 6427.

satisfy the requirement in Rule 23(c)(2)(B)(v) that the notice to class members state in clear and concise language that "the court will exclude from the class any member who requests exclusion."  Rec. Doc. 6419, ¶¶29,33; Order, Rec. Doc. 7176.  The Preliminary Approval also approved the proposed Notice Plan, again as required by Due Process and Rule 23(c)(2)(B), because it "contemplates direct mailed notice to identifiable individual class members and, to the extent known, their attorneys."  Rec. Doc. 6419, III, ¶9, p. 20.

C.    **Mason's Motion to Sever his Jones Act Claim from the MDL**

Because Mason's Jones Act claims directed solely against his employer Seacor had been grouped with the Pleading Bundle B4 claims and then excluded from the dismissal of those claims in the Seacor Limitation Action, it was not apparent to Mason, or to his attorney, that Mason's claims were in any way affected by the B3 Master complaint or put in jeopardy by the proposed MB Class Action Settlement.

Accordingly, on July 16, 2012 – before the expiration of the opt-out deadline -- Mason moved to sever his Jones Act Claim from the MDL on the grounds that his claims against Seacor did not include claims against BP and he should not have to wait for resolution of the BP claims to obtain Jones Act relief.  Doc. 6909.  The supporting memorandum stated that "Mason hereby certifies that he has filed no claim in connection with the BP oil spill" and that he had filed no claim 'in connection with the Deepwater Horizon medical benefits class action settlement agreement."   Doc. 6909-1, p. 3.   The memorandum also states that Mason's counsel had "thoroughly investigated" the nature of the Medical Benefits Settlement Agreement being negotiated, by conducting "detailed discussions with members of the Plaintiffs' Steering Committee handling the MDL," and concluded that "an adequate remedy is not available . . . within the ambit of that settlement."  Doc. 6909-1, pp. 3-4.

Seacor acknowledged in its opposition that Mason's Jones Act claim asserted in Seacor's limitation action "falls within the B4 pleading bundle and was specifically referenced in this Court's judgment" in the limitation action, but argued that allegations in paragraphs 5 and 6 of the separate Jones Act complaint placed Mason's claims in Pleading Bundle B3 as well and suggested that Mason should seek recovery within the MB Class Action Settlement (as if BP were responsible for Seacor's Jones Act liabilities.)  Doc. 7281, ps. 2-3.  Seacor's principal objection to severance however was that Mason's claims were "inextricably intertwined with the MDL" because Seacor would inevitably seek to implead BP, (though Seacor did not cite any legal authority under which BP could be made to answer for Seacor's employer fault) and that to sever Mason's claims could "unravel" the Court's "thus-far successful efforts to manage in an organized fashion the multitude of claims in this multidistrict litigation."  Doc. 7281, p. 3.

In reply, Mason re-iterated the uniqueness of his B4 Jones Act claims, as recognized in this Court's dismissal Order of the *Robin* claims, and that his suit was directed not at BP target defendants in the MDL proceedings, but at Seacor, his Jones Act employer.  Doc. 7354-2, p. 2. It was not necessary to respond to Seacor's assertion that Mason's claims fell within the B3 pleading bundles because neither Mason nor undersigned counsel, as explained below, had been given any indication from the settling parties, by formal notice or otherwise, apart from Seacor's self-serving suggestion, that Mason's Jones Act claims were subsumed in the MB Class Action complaint or that the proposed settlement would place Mason's claims against Seacor at risk of dismissal if he did not take action.  The purpose of the motion was to extricate his Jones Act claims against Seacor from the MDL, where Mason did not think his claims belonged, because he was not seeking recovery from any BP entity.

This Court took the severance motion under advisement, but did not issue its Order and Reasons denying severance until March 5, 2013 (Doc. 8811), after the formal opt-out deadline had passed, and after the Court had given Final Approval of the MB Settlement, on January 11, 2013.  See Doc. 8217.  The Court apparently agreed that the sentence in paragraph 6, as worded, seemed to place Mason in the Medical Benefits Class and noted, on its own, that "apparently" Mason had not opted-out of the MB Settlement, because his name did not appear on the list of opt-outs filed by the Claims Administrator on November 12, 2012, and that Mason's claims "apparently" fell within those claims released by the MB Settlement.  The Court seemed troubled that the sentence in paragraph 6 appeared to contradict the "certification" in Mason's supporting memorandum that Mason had filed "no claim in connection with the BP oil spill."

But the issue of Mason's failure to "opt-out" by following the procedures outlined in the MB Settlement was not properly before the Court on Mason's motion, because the motion had been submitted well before the opt-out deadline had lapsed.  More importantly, the issue whether the representations made in support of Mason's motion to sever were sufficient to constitute a valid, non-formal opt-out, was also not before the Court.  Under the circumstances, the allusion to Mason's "failure" to opt-out cannot, in fairness to Mason, be deemed to be a judicial determination of the issue of non-formal opt-out because the Court did not have that issue squarely before it, which Seacor also acknowledged in its motion to dismiss Mason's subsequent appeal.  What is clear in Mason's motion Mason's belief that he was not asserting a BP class action claim and wanted to extricate his Jones Act claims against Seacor from the MDL proceeding.

### D.    Mason's Motion for Reconsideration

Mason and his attorney were both understandably surprised – shocked frankly – by the Court's Order and Reasons denying the Motion to Sever, because it suggested in *dicta* that the

MB Class Action Settlement Agreement had compromised Mason's Jones Act Claims, claims that neither Mason nor his attorney thought were included in the B3 Pleading Bundles or affected by the class action settlement of the medical benefits claims asserted in the B3 master complaint.

On March 26, 2013, in an effort to make his intentions clear, Mason sent a certified letter directly to the Claims Administrator of the MB Settlement Class expressing his conviction that he was not a member of the Medical Benefits Settlement "Class" but that if he were he wished to exclude himself. Exhibit 1 to this Opposition.

In addition to that letter, Mason filed a "Motion to Reconsider the Motion to Sever or an Extension of the Opt-out Deadline" ("Motion to Reconsider," Doc. 9091) in an effort, (1) to dissuade the Court that Mason was a B3 claimant by clarifying the allegations in his Jones Act complaint that appeared to contradict his "certification" that he had filed no claim in relation to the BP oil spill, (2) to explain why he believed, rightly or wrongly, that he was not a member of the MB Settlement class, and (3) to persuade the Court that, given the confusion over where precisely Mason's claims fit within the pleading bundles and the possible adverse effect on his claims by the MB Class Action settlement, he should either be deemed to have opted-out in his prior filings or be allowed to opt-out formally, if formal opt-out were necessary, based on Due Process grounds.

Mason's supporting affidavit (1) clarified that he was not personally or directly involved in the actual clean-up operations on board the MV SEACOR VANGUARD, as the wording of paragraph six suggested and (2) attested that "At no time did" he "receive written notice of the medical benefits class action settlement." Mason Affidavit, Doc. 9091-2. (Exhibit 2)

Mason's attorney, Scott Silbert, also filed a supporting affidavit to explain that he drafted the introductory clause in paragraph six only to provide a geographical reference where Mason

was exposed to toxic chemicals, and not "to convey that DuWayne Mason was himself involved in Recovery Activities."   Doc. 9091-3. (Exhibit 3)   Mr. Silbert explained that he paid little "attention to and did not read any published notifications relating to the Medical Benefits Class Action" because Mason was making no claims against any of the class action defendants.   He did not "receive electronically filed documents from the MDL" and was not sent a copy of the "Class Action Settlement Notification" until March, 2013.   He had not discussed with anyone the potential need to "opt-out" of the MB Class Action.   His discussions with members of the PSC were limited to obtaining consent to represent that Mason's claims "had no further linkage to the MDL with the dismissal of the *Robin* claims and [that] the PSC did not oppose the severance of Mason's claims from the MDL."   Mr. Silbert also attested that there was no written evidence that notice of the class action had ever been mailed to DuWayne Mason, based on conversations with "Nicholas" at the Garretson Resolution Group.   Doc. 9091-3.

Under the circumstances, Mason requested that the Court reconsider its denial of his motion to sever or deem Mason to have opted-out or be given an extension of time to opt-out formally.

BP and Seacor opposed reconsideration.   BP's argument was that Mason had failed to articulate any valid factual or legal basis for granting relief under either F.R.C.P. Rules 59 or 60, because "[r]consideration of a judgment after its entry is an extraordinary remedy that should be used sparingly," quoting *Ewans v. Wells Fargo Bank, N.A.* 389 F. App'x 383, 389-90 (5th Cir. 2010), and because Mason had not demonstrated "excusable neglect" in failing to opt-out under the MB Settlement opt-out procedures.   Doc. 9597.   Seacor opposed for essentially the same reasons given by BP.   Doc. 9590.   However, BP apparently conceded that the required class notice was NOT mailed to Mason:

> Putting aside his actual knowledge of the Settlement, if, as Mason claims, he did not receive a copy of the mailed notice, any such omission would have been inadvertent.  BP points out, however, that one of the primary sources of information for the medical notice program were the lists of those claimants in the B3 pleading bundle who filed, as required by Pretrial Order NO. 25 (Rec. Doc. 983), a Short Form Joinder (SFJ) or Plaintiff Profile Form (PPF) and alleged a medical injury therein.  A review of those lists indicates that Mason has never filed a SFJ or PPF despite the court's order to do so.[4]

In other words, BP compiled its mailing list from the B3 claims asserted against BP, which of course did not include Mason, who asserted B4 claims against Seacor – the very point Mason had been making all along.

This Court denied reconsideration "essentially for the reasons set forth by BP and Seacor." Doc. 9683.

Mason's appeal (Doc. 10226) was dismissed, on Seacor's motion, for lack of appellate jurisdiction because the orders were not final judgments.  In its dismissal motion, Seacor agreed that this Court's observations about the continued viability of Masons claims was *dicta*:

> Although the district court's March 5, 2013 Order and Reasons denying Mason's motion to sever questions, in *dicta*, whether Mason's claims are subject to the Medical Benefits Class Action Settlement Agreement, that issue was not before the district court and no final judgment has been rendered.  The only issue on which the district court was called upon to rule was an administrative one: whether to sever Mason's personal injury claims from the MDL.  The district court declined Mason's request to do so and in the process raised a question about the continued viability of his claims.  But the district court has not entered a final judgment dismissing those claims and, indeed, has not been asked to do so.

U.S. Fifth Circuit Case 13:30596, Doc. 00512319628, p. 10, (Ex. 2).  Mason has repeatedly made clear his intent not to seek recovery under the MB Class Settlement, but this Court has not ruled whether Mason had sufficiently opted-out under Rule 23(c)(B)(2) through non-formal means, consistent with his Due Process rights.  Seacor's motion for summary judgment seeking dismissal of Mason's claims now places the issue squarely before this Court.

---

[4] Rec. Doc. 9597, p. 15, n. 15.

15

### III.     LAW AND ARGUMENT

#### A.     The Class Action Notice was constitutionally defective in delivery and content to apprise Mason of his need to opt-out of the MB Class Action Settlement.

For notice of a proposed class action and settlement to comply with Due Process,[5] it

> "is not only necessary that the notice reach the parties affected but that it convey the required information . . . .  Not only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action."[6]

Mason does not argue that the approved Notice Plan in the B3 Medical Benefits Class Settlement Agreement was inadequate or insufficient under either Due Process or Rule 23(c)(B)(2) for the B3 claimants whose claims were subsumed in the MB Class Action complaint.  But it was constitutionally deficient as to him, in both delivery and content.

Having never received the required notice, because it was never sent, neither Mason nor his attorney was ever given formal indication by the settling parties that Mason's claims against Seacor were grouped among the B3 class action claimants and thus at risk of compromise or settlement or that Mason needed to "formally" opt-out of the class action settlement.  The significance of BP's failure to send Mason the required notice by direct mail underscores the confusion and ambiguity over precisely where Mason's Jones Act Claims fell within the Court's previously defined pleading bundles.

---

[5] Rules 23(c) and 23(e) contain different standards for notice—a stringent one for class certification and a more lenient one for class settlement. In cases such as this, where a settlement class is provisionally approved, notice of both class certification and settlement can be combined but must satisfy the more stringent standard of Rule 23(c)(2).  *See, e.g., Larson v. Sprint Nextel Corp.*, 2009 WL 122843 (D.N.J. 2009), citing *Grunewald v. Kasperbauer*, 235 F.R.D. 599, 609 (E.D. Pa. 2006).

[6] *Twigg v. Sears, Roebuck & Co*., 153 F. 3d 1222, 1227 (11th Cir. 1998)(quoting *In re Nissan*, 552 F. 2d at 1103-05.)

Even Seacor has agreed that Mason's claims clearly fell within the B4 Pleading Bundle, as did this Court's exemption of Mason's claims from its dismissal of the *Robin* claims. But whatever confusion existed over whether Mason's claims also fell within the B3 Pleading Bundle affected only this Court's administrative handling of those claims. There were no Due Process implications of those administrative groupings until the MB Class Action complaint was filed for purposes of obtaining a class action settlement intended to be binding on those claims that fell within the class definition.

Because the MB Class Action settlement was intended to have *res ju*dicata binding effect against all absent class members of the class, Due Process and Rule 23(c)(2)(B) require "individual notice to all class members who can be identified through reasonable effort." The Supreme Court's decision in *Eisen v. Carlisle & Jacquelin*[7] settled the question of what Rule 23(c)(2)(B) requires: All reasonably identifiable class members must be given individual notice, without exception. One court has explained that the notice requirement is necessarily stringent because personal jurisdiction over absent class members does not attach until the individual notice requirement has been sufficiently accomplished.[8]

Constructive notice through publication is not sufficient. Constructive notice through publication under 23(c)(2) may suffice to satisfy Due Process only "when circumstances make it impracticable to gain the names and addresses of class members and notify them individually of the action's pendency."[9] No such circumstance exists here. It would border on the frivolous for

---

[7] 417 U.S. 156, 94 S. Ct. 2140, 40 L.Ed.2d 732 (1974); *accord*, *In re Nissan Motor Corp. Antiturt Litigation*, 552 F.2d 1088(5th Cir. 1977).

[8] *Larson v. Sprint Nextel Corporation,* 2009 WL 1228443 at *3 (N.J. April 30, 2009).

[9] *In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d 1088, 1097 (5th Cir. 1977); *accord, In re Agent Orange Prod. Liab. Litigation*, 818 F. 2d 145, 168-169 (2d Cir. 1987).

Seacor to argue that Mason was not identifiable "through reasonable effort," given Mason's suit and this Court's exemption of Mason's Claims from the dismissal of the *Robin* plaintiffs, based on a separate and distinct theory of Seacor's liability as a Jones Act employer.

As a reasonably identifiable and identified absent class member, Due Process required that Mason be given individual notice by the parties seeking to compromise his claims by class action – that is, BP, not Seacor -- and the Court-approved Notice Plan ordered that notice be given by direct mail.  Yet, neither Mason nor his attorney, Scott Silbert, received such notice, and the evidence in the record indicates that the required notice was never in fact sent, a fact which BP has apparently acknowledged.

If Mason is a clearly identifiable absent class member, the two most probable explanations for the failure to mail Mason the required notice are (1) that neither the PSC nor BP, the settling parties, thought that Mason's claims fell within the intended class definition such that notice by direct mail applied to him, or (2) that they were equally confused about whether Mason's Jones Act claims against Seacor, grouped under Pleading Bundle B4, qualified for class settlement as a B3 claim.  Both explanation are consistent with the consent of Plaintiffs' Class Counsel to allow Mason to represent to the Court that Mason "had no further linkage to the MDL with the dismissal of the *Robin* claims and [that] the PSC did not oppose the severance of Mason's claims from the MDL."  They are also consistent with BP's explanation that the "primary source" for its mailing list came from "those claimants in the B3 pleading bundle" who asserted claims against BP, who did not include Mason whose claims were grouped in Pleading Bundle B4  and who asserted no claims against BP.

Whatever the reason for the failure to mail the notice, the simple fact that the required notice was not sent explains why Mason and his attorney were not alerted to any risk that

Mason's claims were in jeopardy of compromise or that Mason needed to preserve his suit against Seacor by formally opting-out of the proposed class action settlement.  Due Process places the burden on the class action parties to apprise identifiable class members by giving them constitutionally sufficient notice that their claims are subject to compromise and that they have the right to "opt-out."  It is not the burden of the absent class member who has not been given the required notice to have to guess at his membership status or assess on his own what risks he faces if he fails to take action he is never told he needs to take.

The failure to mail Mason direct notice of the class action settlement, as the MB Class Action Settlement Agreement required, distinguishes this case from the great number of cases where the notice was sent, but for various reasons was not received.  Those cases usually hold that it is not "necessary that every member receive actual notice so long as class counsel acted reasonably in selecting means likely to inform persons affected."[10]   In those situations, the settlement is usually held to be binding on those members who did not timely request to be excluded.

In *Trist v. First Federal Savings & Loan Assoc. of Chester*,[11] Judge Lord recognized the important constitutional distinction between "notice sent but not received and notice not sent all."  In that case, 191 absent members of a class were never sent the individual notice required by Rule 23(c)(2) and Judge Lord recognized that those plaintiffs had not formally "opt-out" by the court's deadline.  But because the notices were never sent to them, Judge Lord held that they "would plainly not be bound by a judgment in this action -- precisely the reason why the notice requirement of (c)(2) was interpreted so stringently in *Eisen*."

---

[10] *See, e.g., In re Prudential Securities Inc., Ltd. Securities Litigation*, 164 F.R.D. 362, 368 (S.D. N.Y. 1996).

[11] 89 F.R.D. 1 (E.D. Pa. 1980*)*.

A similar situation to that before Judge Lord is presented here.  If Mason's Jones Act claims were intended to be subsumed within the MB Class Action Settlement, despite their earlier grouping in Pleading Bundle B4, then Due Process required that Mason be given notice of that fact by direct mail, and the Notice Plan plainly required.  Even had notice been delivered as required, nothing in the notice or the settlement agreement indicated that Mason's B4 Jones Act claims against Seacor were being compromised or that Seacor was being released from its Jones Act liabilities.  The notice applied to B3 claims asserted against the BP entities, claims which Mason had never asserted.  Again, Mr. Silbert's investigation into the proposed MB Settlement persuaded him that the limited damage amounts available in the class action settlement were not in Mason's best interests, given the severity of Mason's injuries.  Nothing in his investigation indicated that Mason's Jones Act claims against Seacor were at risk of dismissal if Mason did not "opt-out" of the class action settlement of the B3 claims asserted against BP.

In short, with respect to Mason's Jones Act claims, the notice was constitutionally defective as to content as well as delivery.

### B.    Mason effectively opted-out of the settlement by non-formal means.

Even so, because of the Due Process implications of binding an absent class member to a settlement he does not want, Rule 23(c)(B)(2) has been interpreted as flexible enough to allow any written expression of a desire not to partake of the settlement to constitute a valid "opt-out" of the proposed class and settlement.  When exercising opt-out rights, "Courts do not require parties to adhere to a strict formula."[12]  A party's "reasonable indication" of his intent to opt-out of a class suffices to qualify as an opt-out.[13]  "Considerable flexibility is desirable in determining

---

[12] *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 13-3349 2014 WL 1279204 at *2 (N.D. Cal. 2014).

[13] *Id.*; citing *In re Linerboard Antitrust Litigation*, 223 F.R.D. 357, 365 (E.D. Pa. 2004).

what constitutes an effective expression of a class member's desire to exclude himself and any written evidence of it should suffice." *Self v. Illinois Central Railroad,* No. 97-0375, 1999 WL 262099 at *2 (E.D. La. 1999).

Under Rule 23, even "a class action notice's opt out deadline . . . is not absolute." *Gortat v. Capala Brothers, Inc.*, 2011 WL 6945186 at *11 (E.D. N.Y. Dec. 30, 2011).  Flexibility is required and necessary to give effect "to the Due Process right to opt out" as identified by the United States Supreme Court, rights which Seacor would have this Court disregard over a strict, rigid requirement that Mason file one piece of paper as opposed to another. *Gortat*, 2011 WL 6945186, at p. 11.

If Mason's claims in fact fall within the MB Settlement Class Action Settlement, then the "flexibility" of Rule 23(c)(B)(2) should, in the circumstances of this case, apply to recognize the validity of Mason's desire to exclude himself from that settlement.  Mason did not sit idly by while the MB Class Settlement was conducted, but took a number of steps that effectively communicated his "wish" not to be included in the class or the settlement.  Those steps included (1) Mason's Motion to Sever, (2) the Motion for Reconsideration or Alternative Extension of the Opt-Out Deadline, and (3) Mason's letter to the Deepwater Horizon Claims Center after the opt-out deadline.

Whether or not Mason's claims fell within the class definition, the import of those writings was to communicate Mason's unequivocal desire that he not be included in the class or the settlement.  Under existing case law, that should suffice.  Examples where absent class members who did not follow the formal opt-out procedures defined in the proposed class action settlement were nonetheless held to have effectively opted-out through non-formal written expressions similar to Mason's include the following:

(1) In *Self v. Illinois Central Railroad,* No. 97-0375, 1999 WL 262099 (E.D. La. 1999)(Duval, J.) a group of Addison plaintiffs had filed a state suit consisting of nearly 600 individual claims that was removed to federal court against their wishes and consolidated with another state class action suit also removed to federal court.  The Addison plaintiffs filed a motion to remand and made clear in that motion that they did not wish to participate in the class action.  This Court issued an Order of Certification, set a formal opt-out date, and required that notice of the right to opt-out of the class be mailed to putative class members, or their attorneys, who had made their claims known to the PSC.  Because the Addison plaintiffs did not receive the mailed notice as required, or see any notices published in specified parish papers, they did not execute the required opt-out form and submit it by the deadline.

After the opt-out deadline had passed, the Addison plaintiffs filed a motion to be recognized as opt-out plaintiffs.  Quoting the following passage from 7B C.A. Wright, A.R. Miller & M.K. Kane, *Federal Practice and Procedure* §1787, Judge Duval found that the Addison plaintiffs had manifested their intent to opt-out, and thus effectively opted-out, by filing their motion to remand, not abandoning the state court action, and bringing the motion to be recognized as opt-out plaintiffs:

> Rule 23(c)(2) does not specify how the absentee is to request exclusion. It certainly would be an undue burden on class members to require them to retain counsel and prepare a formal legal document; on the other hand, allowing too much informality might pose problems of authenticity and ambiguity. Nonetheless considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to exclude himself and any written evidence of it should suffice... The key is that some communication of the member's intent must be received by the court prior to the entry of judgment.

*Id*., at pp. 212-213 (ed. 1986).  Judge Duval emphasized that the "purpose of the rule requiring prompt notice of exclusion is to prevent parties from waiting to see if the adjudication in the

class action is favorable before deciding whether to join the class."[14]  There is no possibility of any such hedging here.  Mason indicated his unwillingness to be a part of the class when he filed his Motion to Sever, well before the deadline for mailing the opt-out form to the Claims Administrator required by the Settlement Agreement.

(2)     *In re Four Seasons Securities Laws Litigation*[15] held that communications even less formal than those in *Self* or those at issue here constituted sufficient non-formal opt-outs. The notice of the class action settlement was published in the Wall Street Journal and required parties wishing to opt-out to file written requests with the clerk of court.  A class member failed to file the written requests as required, but had sent letters to other counsel involved in the litigation, before the deadline, inquiring into what effect the settlement agreement would have on the member's state court action.  Upon learning that the settlement would likely compromise any state court claims, counsel for the class member attempted to opt-out formally by submitting the written request to the clerk after the opt-out period had expired.

The Tenth Circuit recognized the late opt-out, ruling that any written evidence of intent to opt-out should suffice:  "Counsel . . . would have us lay down a rule that in order to opt out the request must be explicit.  The trial court here ruled that the important question was whether notice was communicated.  We consider this to be the correct judicial approach to the problem, since we are not construing a will, a deed or a contract.  A reasonable indication of a desire to opt out ought to be sufficient."[16]  The court determined that the letters inquiring about the settlement's effects on state court claims, the attempted opt-out after the deadline, and the late-

---

[14] Quoting *In re Brand Name Prescription Drugs*, 171 F.R.D. 213, 215 (N.D. Ill. 1997).

[15] 493 F.2d 1288 (10th Cir. 1974).

[16] *Four Seasons*, 493 F. 2d at 1291.

submission of a modified proof of claim form after the lapse of the opt-out deadline all qualified as an effective opt-out.

(3)    *Gortat v. Capala Brothers, Inc.*[17]   The District Court for the Eastern District of New York acknowledged sufficiency of a non-traditional opt-out, noting that opt-out deadlines are not absolute.  Three putative class members attempted to opt-out of the class through letters that expressed their intent to opt-out.  Two of the putative class members signed the letters memorializing their intent to opt-out before the deadline, while the third member did not send his letter until after the opt-out deadline had passed. The Court found the letter sent by the third member also qualified as an effective opt-out from the class action, despite sending the letter after the deadline.

In light of these decisions, the statements contained in Mason's Motion to Sever, filed before the opt-out deadline, coupled with the arguments made in his Motion to Reconsider, along with the statements in Mason's certified letter of March 26, 2013, admittedly filed after the formal deadline of November 1, 2012, all together effectively manifested his intent to opt-out of the MB Class Settlement and accomplished that desired result.

Seacor has been on notice of Mason's desire not to be included in the Class Action settlement since July, 2012, when Mason first sought to sever his Jones Act claims from the MDL.  Seacor cannot credibly claim nor reasonably identify any prejudice it has suffered and is in no worse position now than it would have been in had Mason filed the opt-out form specified in the Settlement Agreement before November 1, 2012.  The same request to be excluded from the MB Class Action Settlement that would have been made in the one-page opt-out request

---

[17] No. 07-3629, 2011 WL 6945186, at p. 11 (E.D. N.Y. 2011).

form mailed to the BP Claims Administrator had already been expressed in writing in Mason's supporting memorandum filed in July, 2012.

Not to recognize the validity of Mason's effective opt-out in the circumstances of this case elevates form over substance and, worse, undermines Mason's Due Process rights to exclude himself from the class action settlement when he, as an absent class member easily identifiable through reasonable means, was not given the individual notice that Due Process required. When weighing the relative harm for failing to follow form, the failure to provide Mason with Due Process individual notice that his claims were subject to class action compromise was far more detrimental to Mason than any harm or prejudice that Seacor can possibly claim it has suffered by Mason's failure to submit a "formal" opt-out request form, when Mason submitted a substantially equivalent non-formal request, well before the deadline had passed.

## IV.   CONCLUSION

Mason is a uniquely positioned claimant in the MDL 2179 who has fallen victim to the litigation's procedural complexity and the understandable confusion over the grouping of his claims within the Pleading Bundles. Ultimately, Mason's Due Process rights hinge on which piece of paper this Court will recognize contains a sufficient expression of his desire NOT to be included in the B3 Pleading Bundle MB Class Action Settlement – the formal one he did not file timely or the non-formal one he did.

For the foregoing reasons, Mason requests that this Court deny Seacor's Motion for Summary Judgment and recognize Mason as an opt-out Jones Act plaintiff.

Respectfully submitted,

*/s/ Nancy J. Marshall*

_____

NANCY J. MARSHALL  (#8955)
nmarshall@dkslaw.com
JOSEPH L. MCREYNOLDS (#01947)
jmcreynolds@dkslaw.com
ANDREW J. BAER (#35638)
abaer@dkslaw.com
**DEUTSCH, KERRIGAN & STILES, L.L.P.**
755 Magazine Street
New Orleans, LA  70130
Telephone:  (504) 581-5141
Facsimile: (504) 566-4002

SCOTT E. SILBERT (#12068)
**SILBERT, GARON, PITRE & FRIEDMAN**
909 Poydras Street
Suite 2130
New Orleans, LA  70112
Telephone:  (504) 581-6200
Facsimile:  (504) 584-5270
scott@sgpflaw.com

**Counsel for plaintiff, DuWayne Mason**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2015, a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Nancy J. Marshall*

_____

**NANCY J. MARSHALL**