UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO ON APRIL 20, 2010 | CIVIL ACTION<br><br>MDL NO. 2179 |
| THIS DOCUMENT RELATES TO: | SECTION "J" |
| 10-3896, 11-826, AND 12-968 | JUDGE BARBIER |
| | MAGISTRATE SHUSHAN |

_____

MEMORANDUM IN SUPPORT OF DuWAYNE MASON'S MOTION
TO BE RECOGNIZED AS OPT-OUT PLAINTIFF OF THE
MEDICAL BENEFITS CLASS ACTON SETTLEMENT AND
ALTERNATIVE MOTION FOR EXTENSION OF THE OPT-OUT DEADLINE
_____

Duwayne Mason ("Mason"), Plaintiff in Action No. 11:826 and Claimant in Limitation Action No. 10-3896, incorporates by reference his Memorandum in Opposition to Seacor's Motion for Summary Judgment in support of this Motion to be Recognized as an Opt-Out Plaintiff from the MB Class Action Settlement. For the Court's convenience, the salient facts and principal arguments made in the incorporated Memorandum in Opposition are summarized below.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The gravamen of Mason's opposition to Seacor's motion for summary judgment and the fundamental reason for recognizing Mason as an opt-out plaintiff from the MB Class Action Settlement is the considerable confusion over whether Mason's Jones Act Claims against Seacor were intended to be included in the settlement in the first place.

As detailed in Mason's memorandum opposing Seacor's motion for summary judgment, when Mason filed his Jones Act claims in April, 2011, they were included among the B4 Pleading Bundles, which grouped together all claims, consisting primarily of the *Robin* plaintiffs, that sought recovery, not from any of the BP entities, but from the Responder Vessels, including Seacor, for their alleged independent negligence in causing or contributing to the collapse of the DEEPWATER HORIZON and resulting oil release.

The B4 claims were eventually dismissed, on motion of the Responder Vessels, in October, 2011, but the Final Judgment Decree of Exoneration, filed on November 11, 2011, excluded Mason's claims, stating in paragraph (4) "[t]hat the claim of DuWayne Mason is based on a theory of fault that is separate and distinct from those asserted by all other Claimants" and that "there is no just reason for delay in the entry of final judgment as to all claims except that of DuWayne Mason."  Case 2:10:3896, Doc. 61, filed on November 11, 2011.

In contrast, the B3 Pleading Bundles included all personal injury claims "related to post-explosion clean-up efforts," to be separately and uniformly pleaded in a "Master Complaint," against the BP entities responsible for the explosion, fire and resulting oil release. Rec. Docs. 881, 1812.  Seacor was never a defendant in the B3 Master Complaint, nor was it made a defendant in the class action complaint filed on April 16, 2012, following the "agreement in principle" that the PSC and BP reached in March, 2012, to settle the medical benefit claims asserted in the B3 Master Complaint.

The Proposed MB Class Action Settlement Agreement between the PSC and BP Exploration & Production Inc. and BP America Production Company was filed on April 18, 2012.[1]  This Court gave preliminary approval of the proposed settlement on May 2, 2012 (Rec.

---

[1] Rec. Doc. 6273, modified and filed as modified on May 1, 2012 in Rec. Doc. 6427.

2

Doc. 6419) and set a deadline of October 1, 2012 (later extended to November 1, 2012) for "requests for exclusion" to be post-marked, to satisfy the requirements of Due Process and Rule 23(c)(2)(B)(v) that the notice to class members state in clear and concise language that "the court will exclude from the class any member who requests exclusion." Rec. Doc. 6419, ¶¶29,33; Order, Rec. Doc. 7176. The Preliminary Approval also approved the proposed Notice Plan, again as required by Due Process and Rule 23(c)(2)(B), because it "contemplates direct mailed notice to identifiable individual class members and, to the extent known, their attorneys." Rec. Doc. 6419, III, ¶9, p. 20.

But Mason never received individual notice of the MB Settlement Class or Settlement by direct mail, as required by Rule 23(c)(2)(B) and this Court's Preliminary Approval Order. BP has apparently conceded that the required notice was not in fact ever mailed to him because it compiled its mailing lists from the "lists of claimants in the B3 Pleading Bundle," not the B4 claimants. Yet Mason was easily identifiable as a potential class member from the Court's records, and if his claims were intended to be included in the class, then failure to send Mason notice of the class and the settlement was constitutionally inadequate to justify dismissing his claims for failing to opt-out formally.

This is where Mason became a victim of the procedural complexity and confusion surrounding the consolidation of his claims within MDL 2179. The MB Class Action Settlement clearly encompassed claims related to post-explosion clean-up efforts that were brought against BP and other parties allegedly responsible for the explosion, fire, and subsequent oil release, as alleged in the B3 Class Action Master Complaint. But, despite the broad definition of the proposed class to include "CLEAN-UP WORKERS" . . . who performed RESPONSE

ACTIVITIES,"[2] it was never clear if the MB Class Action Settlement or Pleading Bundle B3 was intended to encompass claims previously grouped within Pleading Bundle B4 or, more specifically, Mason's Jones Act claims against Seacor that had previously been grouped in Pleading Bundle B4, but then exempted from the judgment dismissing those claims the previous November, 2011.

Neither Mason nor his attorney Scott Silbert thought so.  In July, 2012, based on this Court's exemption of Mason's claims from dismissal of the B4 Robins claims, Mason moved to sever his Jones Act claims from the MDL altogether, after his attorney had obtained consent of the PSC to represent to this Court that Mason's claims "had no further linkage to the MDL with the dismissal of the *Robin* claims and [that] the PSC did not oppose the severance of Mason's claims from the MDL."  See Rec. Doc. 9091-3, Affidavit of Scott Silbert, attached to the Motion as Exhibit 1.

Seacor's principal argument in opposition was that Mason's claims were "inextricably intertwined with the MDL" and their severance could "unravel" the Court's "thus-far successful efforts to manage in an organized fashion the multitude of claims in this multidistrict litigation." Doc. 7281, p. 3.  Conceding that Mason's claims fell squarely within Pleading Bundle B4, Seacor offered the self-serving suggestion that certain allegations in Mason's Jones Act complaint arguably placed his claims in Pleading Bundle B3 as well and that Mason should consider availing himself of the medical benefits in BP's proposed class action settlement.

---

[2] The Settlement Agreement defined the proposed Settlement Class to include, among others, all "Natural Persons who resided in the United States as of April 16, 2012, and who 1) worked as CLEAN-UP WORKERS at any time between April 20, 2012 and April 16, 2012 . . . ."  The Settlement Agreement defined "CLEAN-UP WORKERS" to include "all NATURAL PERSONS who performed RESPONSE ACTIVITIES." Rec. Doc. 6427-1, Sec. II, Def. Q. It defined "RESPONSE ACTIVITIES" as "clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances . . . . " Rec. Doc. 6427-1, Def. NNNN, p. 24.

4

Mason's reply was that Mason's Jones Act claims were directed not at BP, but at Seacor, his employer, for failing to provide Mason with adequate respiratory protection. Rec. Doc. 7354-2, p. 2. The purpose of the motion was to extricate his Jones Act claims against Seacor from the MDL, where Mason did not think his claims belonged, because he was not seeking recovery from any BP entity. Apart from Seacor's self-serving suggestion, neither Mason nor his attorney had received any indication from the settling parties to the B3 Class Action Complaint that Mason's claims were subsumed in the proposed settlement or at risk of dismissal in the absence of a formal request to "opt-out" as outlined in the settlement agreement.

The confusion over the inclusion of Mason's claims in the MB Class Action settlement was compounded by the fact that neither Mason nor his attorney, Scott Silbert, ever received notice of the proposed MB Settlement by "direct mail" as the settlement agreement and preliminary approval order required.

This Court took the severance motion under advisement, but did not issue its denial until March 5, 2013 (Doc. 8811), after expiration of the opt-out period. In its reasons, the Court noted, in *dicta*, that Mason's claims "apparently" fell within those claims released by the MB Settlement because Mason's name did not appear on the list of opt-outs filed by the Claims Administrator, but stated that it would deny the motion for the administrative "reasons presented by Seacor" even if the Court's "understanding of Mason's status as a Class Member is in error." But the issue of Mason's class status and failure to "opt-out" was not properly before the Court. The issue presented in Mason's motion was, filed well before the opt-out deadline had lapsed, was to sever his Jones Act claim from the MDL altogether.

Nonetheless, the Court's denial of the severance did not determine whether Mason's motion to sever, filed before the deadline, together with Mason's certified letter dated March 26,

5

2013 to the Claims Administrator and Mason's motion for reconsideration, filed April 2, 2013, constituted a valid opt-out, through non-formal means.

That issue is presented here and in opposition to Seacor's motion for summary judgment.

## II. ARGUMENT

### A. The Class Action Notice was constitutionally defective in delivery and content to apprise Mason of his need to opt-out of the MB Class Action Settlement..

For notice of a proposed class action and settlement to comply with Due Process,[3] it

> "is not only necessary that the notice reach the parties affected but that it convey the required information . . . . Not only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action."[4]

Mason does not argue that the approved Notice Plan in the B3 Medical Benefits Class Settlement Agreement was inadequate or insufficient under either Due Process or Rule 23(c)(B)(2) for the B3 claimants whose claims were subsumed in the MB Class Action complaint. But it was constitutionally deficient as to him, in both delivery and content.

Having never received the required notice, because it was never sent, neither Mason nor his attorney was ever given formal indication by the settling parties that Mason's claims against Seacor were grouped among the B3 class action claimants and thus at risk of compromise or settlement or that Mason needed to "formally" opt-out of the class action settlement. The

---

[3] Rules 23(c) and 23(e) contain different standards for notice—a stringent one for class certification and a more lenient one for class settlement. In cases such as this, where a settlement class is provisionally approved, notice of both class certification and settlement can be combined but must satisfy the more stringent standard of Rule 23(c)(2). *See, e.g., Larson v. Sprint Nextel Corp.*, 2009 WL 122843 (D.N.J. 2009), citing *Grunewald v. Kasperbauer*, 235 F.R.D. 599, 609 (E.D. Pa. 2006).

[4] *Twigg v. Sears, Roebuck & Co.*, 153 F. 3d 1222, 1227 (11th Cir. 1998)(quoting *In re Nissan*, 552 F. 2d at 1103-05.)

6

significance of BP's failure to send Mason the required notice by direct mail underscores the confusion and ambiguity over precisely where Mason's Jones Act Claims fell within the Court's previously defined pleading bundles.

Even Seacor has agreed that Mason's claims clearly fell within the B4 Pleading Bundle, as did this Court's exemption of Mason's claims from its dismissal of the *Robin* claims. But whatever confusion existed over whether Mason's claims also fell within the B3 Pleading Bundle affected only this Court's administrative handling of those claims. There were no Due Process implications of those administrative groupings until the MB Class Action complaint was filed for purposes of obtaining a class action settlement intended to be binding on those claims that fell within the class definition.

Because the MB Class Action settlement was intended to have *res ju*dicata binding effect against all absent class members of the class, Due Process and Rule 23(c)(2)(B) require "individual notice to all class members who can be identified through reasonable effort." The Supreme Court's decision in *Eisen v. Carlisle & Jacquelin*[5] settled the question of what Rule 23(c)(2)(B) requires: All reasonably identifiable class members must be given individual notice, without exception. One court has explained that the notice requirement is necessarily stringent because personal jurisdiction over absent class members does not attach until the individual notice requirement has been sufficiently accomplished.[6]

Constructive notice through publication is not sufficient. Constructive notice through publication under 23(c)(2) may suffice to satisfy Due Process only "when circumstances make it impracticable to gain the names and addresses of class members and notify them individually of

---

[5] 417 U.S. 156, 94 S. Ct. 2140, 40 L.Ed.2d 732 (1974); *accord*, *In re Nissan Motor Corp. Antiturt Litigation*, 552 F.2d 1088(5th Cir. 1977).

[6] *Larson v. Sprint Nextel Corporation,* 2009 WL 1228443 at *3 (N.J. April 30, 2009).

7

the action's pendency."[7] No such circumstance exists here. It would border on the frivolous for Seacor to argue that Mason was not identifiable "through reasonable effort," given Mason's suit and this Court's exemption of Mason's Claims from the dismissal of the *Robin* plaintiffs, based on a separate and distinct theory of Seacor's liability as a Jones Act employer.

As a reasonably identifiable and identified absent class member, Due Process required that Mason be given individual notice by the parties seeking to compromise his claims by class action – that is, BP, not Seacor -- and the Court-approved Notice Plan ordered that notice be given by direct mail. Yet, neither Mason nor his attorney, Scott Silbert, received such notice, and the evidence in the record indicates that the required notice was never in fact sent, a fact which BP has apparently acknowledged.

The two most probable explanations for BP's failure to send Mason the required individual notice are that (1) neither the PSC nor BP believed Mason's claims fell within the Settlement Class Definition or (2) they were equally confused as to whether Mason's Jones Act claims against Seacor qualified for class settlement as a B3 claim. Both explanation are consistent with the consent of Plaintiffs' Class Counsel to allow Mason to represent to the Court that Mason "had no further linkage to the MDL with the dismissal of the *Robin* claims and [that] the PSC did not oppose the severance of Mason's claims from the MDL." They are also consistent with BP's explanation that the "primary source" for its mailing list came from "those claimants in the B3 pleading bundle" who asserted claims against BP, who did not include Mason whose claims were grouped in Pleading Bundle B4 and who asserted no claims against BP.

---

[7] *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977); *accord, In re Agent Orange Prod. Liab. Litigation*, 818 F. 2d 145, 168-169 (2d Cir. 1987).

Whatever the reason for the failure to mail the notice, the simple fact that the required notice was not sent explains why Mason and his attorney were not alerted to any risk that Mason's claims were in jeopardy of compromise or that Mason needed to preserve his suit against Seacor by formally opting-out of the proposed class action settlement. Due Process places the burden on the class action parties to apprise identifiable class members by giving them constitutionally sufficient notice that their claims are subject to compromise and that they have the right to "opt-out." It is not the burden of the absent class member who has not been given the required notice to have to guess at his membership status or assess on his own what risks he faces if he fails to take action he is never told he needs to take.

The failure to mail Mason direct notice of the class action settlement, as the MB Class Action Settlement Agreement required, distinguishes this case from the great number of cases where the notice was sent, but for various reasons was not received. Those cases usually hold that it is not "necessary that every member receive actual notice so long as class counsel acted reasonably in selecting means likely to inform persons affected."[8] In those situations, the settlement is usually held to be binding on those members who did not timely request to be excluded.

In *Trist v. First Federal Savings & Loan Assoc. of Chester*,[9] Judge Lord recognized the important constitutional distinction between "notice sent but not received and notice not sent all." In that case, 191 absent members of a class were never sent the individual notice required by Rule 23(c)(2) and Judge Lord recognized that those plaintiffs had not formally "opt-out" by the court's deadline. But because the notices were never sent to them, Judge Lord held that they

---

[8] *See, e.g., In re Prudential Securities Inc., Ltd. Securities Litigation*, 164 F.R.D. 362, 368 (S.D. N.Y. 1996).

[9] 89 F.R.D. 1 (E.D. Pa. 1980).

9

"would plainly not be bound by a judgment in this action -- precisely the reason why the notice requirement of (c)(2) was interpreted so stringently in *Eisen*."

A similar situation to that before Judge Lord is presented here. If Mason's Jones Act claims were intended to be subsumed within the MB Class Action Settlement, despite their earlier grouping in Pleading Bundle B4, then Due Process required that Mason be given notice of that fact by direct mail, and the Notice Plan plainly required. Even had notice been delivered as required, nothing in the notice or the settlement agreement indicated that Mason's B4 Jones Act claims against Seacor were being compromised or that Seacor was being released from its Jones Act liabilities. The notice applied to B3 claims asserted against the BP entities, claims which Mason had never asserted. Again, Mr. Silbert's investigation into the proposed MB Settlement persuaded him that the limited damage amounts available in the class action settlement were not in Mason's best interests, given the severity of Mason's injuries. Nothing in his investigation indicated that Mason's Jones Act claims against Seacor were at risk of dismissal if Mason did not "opt-out" of the class action settlement of the B3 claims asserted against BP.

In short, with respect to Mason's Jones Act claims, the notice was constitutionally defective as to content as well as delivery

### B. Mason effectively opted-out of the settlement by non-formal means.

Because of the Due Process implications of binding an absent class member to a settlement he does not want, Rule 23(c)(B)(2) has been interpreted as flexible enough to allow any written expression of a desire not to partake of the settlement to constitute a valid "opt-out" of the proposed class and settlement. When exercising opt-out rights, "Courts do not require

parties to adhere to a strict formula."[10]  A party's "reasonable indication" of his intent to opt-out of a class suffices to qualify as an opt-out.[11]  "Considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to exclude himself and any written evidence of it should suffice." *Self v. Illinois Central Railroad,* No. 97-0375, 1999 WL 262099 at *2 (E.D. La. 1999).

Under Rule 23, even "a class action notice's opt out deadline . . . is not absolute." *Gortat v. Capala Brothers, Inc.*, 2011 WL 6945186 at *11 (E.D. N.Y. Dec. 30, 2011).  Flexibility is required and necessary to give effect "to the Due Process right to opt out" as identified by the United States Supreme Court, rights which Seacor would have this Court disregard over a strict, rigid requirement that Mason file one piece of paper as opposed to another. *Gortat*, 2011 WL 6945186, at p. 11.

If Mason's claims in fact fall within the MB Settlement Class Action Settlement, then the "flexibility" of Rule 23(c)(B)(2) should, in the circumstances of this case, apply to recognize the validity of Mason's desire to exclude himself from that settlement.  Mason did not sit idly by while the MB Class Settlement was conducted, but took a number of steps that effectively communicated his "wish" not to be included in the class or the settlement.  Those steps included (1) Mason's Motion to Sever, (2) the Motion for Reconsideration or Alternative Extension of the Opt-Out Deadline, and (3) Mason's letter to the Deepwater Horizon Claims Center after the opt-out deadline.

Whether or not Mason's claims fell within the class definition, the import of those writings was to communicate Mason's unequivocal desire that he not be included in the class or

---

[10] *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 13-3349 2014 WL 1279204 at *2 (N.D. Cal. 2014).

[11] *Id.*; citing *In re Linerboard Antitrust Litigation*, 223 F.R.D. 357, 365 (E.D. Pa. 2004).

11

the settlement. Under existing case law, that should suffice. See discussion of the following cases in Mason's memorandum in opposition to Seacor's motion for summary judgment: (1) *Self v. Illinois Central Railroad,* No. 97-0375, 1999 WL 262099 (E.D. La. 1999)(Duval, J.); (2) *In re Four Seasons Securities Laws Litigation,* 493 F.2d 1288 (10th Cir. 1974); (3) *Gortat v. Capala Brothers, Inc.,* No. 07-3629, 2011 WL 6945186, at p. 11 (E.D. N.Y. 2011).

### C. Alternatively, the Opt-Out Deadline should be extended to March 26, 2013.

Rule 6(b)(1)(b) of the Federal Rules of Civil Procedure permits the Court to extend the time for when an act may or must be done, for good cause, on motion made after the time has expired if the party failed to act because of excusable neglect.

A third possible explanation for BP's failure to send Mason the required class notice by "direct mail" is the one that BP made in its opposition to Mason's motion for reconsideration: Inadvertance:

> Putting aside his actual knowledge of the Settlement, if, as Mason claims, he did not receive a copy of the mailed notice, any such omission would have been inadvertent. BP points out, however, that one of the primary sources of information for the medical notice program were the lists of those claimants in the B3 pleading bundle who filed, as required by Pretrial Order NO. 25 (Rec. Doc. 983), a Short Form Joinder (SFJ) or Plaintiff Profile Form (PPF) and alleged a medical injury therein. A review of those lists indicates that Mason has never filed a SFJ or PPF despite the court's order to do so.[12]

In other words, BP compiled its mailing list from the B3 claims asserted against BP, which of course did not include Mason, who asserted B4 claims against Seacor – the very point Mason had been making all along.

But this only underscores the confusion generated by the grouping of Mason's claims in the B4 Pleading Bundles. If it was reasonable enough for BP to generate its direct mailing lists from the B3 Pleading Bundle claimants, sufficient to excuse BP's inadvertence in failing to

---

[12] Rec. Doc. 9597, p. 15, n. 15.

mailing the class notice to Mason because Mason's claims were not found among those B3 claimant lists, then surely Mason can be similarly excused for failing to figure out he was included in the class and had to opt-out. The neglect to opt-out through formal means was simply not of his making.

### III. CONCLUSION

For the foregoing reasons, and for the reasons more fully expounded in Mason's Opposition to Seacor's Motion for Summary Judgment, Mason prays that this motion be granted and that Mason be recognized as an Opt-Out Plaintiff.

Respectfully submitted,

*/s/ Nancy J. Marshall*
NANCY J. MARSHALL (#8955)
nmarshall@dkslaw.com
JOSEPH L. MCREYNOLDS (#01947)
jmcreynolds@dkslaw.com
ANDREW J. BAER (#35638)
abaer@dkslaw.com
**DEUTSCH, KERRIGAN & STILES, L.L.P.**
755 Magazine Street
New Orleans, LA 70130
Telephone: (504) 581-5141
Facsimile: (504) 566-1201

SCOTT E. SILBERT (#12068)
**SILBERT, GARON, PITRE & FRIEDMAN**
909 Poydras Street
Suite 2130
New Orleans, LA 70112
Telephone: (504) 581-6200
Facsimile: (504) 584-5270
scott@sgpflaw.com
Counsel for plaintiff, DuWayne Mason

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2015, a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Nancy J. Marshall*

**NANCY J. MARSHALL**