# Exhibit B

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In Re: Oil Spill by the Oil Rig                    MDL No. 2179
      "Deepwater Horizon"
      in the Gulf of Mexico,
      on April 20, 2010                    SECTION: J

This Document Relates to:
Salvesen v. Feinberg, et al.,                    JUDGE BARBIER
2:11-cv-02533                                     MAG. JUDGE SHUSHAN
_____/

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS**
**SECOND REFILING OF MOTION TO REMAND**

     Selmer M. Salvesen ("Plaintiff"), who is a victim of the "Delay, Deny, Defend" strategy

of Kenneth R. Feinberg, et al., respectfully requests that this Honorable Court grant his Motion

to Remand for the following reasons.

## INTRODUCTION

     On June 15, 2011, Plaintiff Salvesen filed his action against Defendants Kenneth R.

Feinberg, Feinberg Rozen, LLP, GCCF, and William G. Green, Jr. in the Circuit Court of the

Twentieth Judicial Circuit in and for Lee County, Florida asserting claims for gross negligence,

negligence, negligence per se, fraud, fraudulent inducement, promissory estoppel, and unjust

enrichment under Florida state law. The case was subsequently transferred by the JPML to the

MDL 2179 Court on October 6, 2011. *See Salvesen v. Feinberg, et al.*, 2:11-cv-02533.

     Plaintiff re-filed his Motion to Remand and Memorandum in Support with this Honorable

Court on November 14, 2011 (Rec. Doc. 4575). On December 4, 2011, Plaintiff filed his Motion

in Opposition to Class Certification of Any Action in MDL No. 2179 and Memorandum in

Support (Rec. Doc. 4798). Plaintiff filed his Motion to Vacate Order and Reasons [As to Motions

to Dismiss the B1 Master Complaint] and Memorandum in Support on April 8, 2012 (Rec. Doc.

6186). Plaintiff filed his Motion to Vacate Preliminary Approval Order [As to the Proposed Economic and Property Damages Class Action Settlement] and Memorandum in Support on July 2, 2012 (Rec. Doc. 6831). On September 25, 2012, Plaintiff filed his Motion to Nullify Each and Every Gulf Coast Claims Facility "Release and Covenant Not to Sue" and Vacate Preliminary Approval Order [As to the Proposed Economic and Property Damages Class Action Settlement]. (Rec. Doc. 7473). On October 10, 2012, this Honorable Court denied Plaintiff's Motions (Rec. Docs. 7473, 6902, 6831) (Rec. Doc. 7615).

Plaintiff's Motion to Remand (Rec. Doc. 4575), Plaintiff's Motion in Opposition to Class Certification of Any Action in MDL No. 2179 (Rec. Doc. 4798), and Plaintiff's Motion to Vacate Order and Reasons [As to Motions to Dismiss the B1 Master Complaint] (Rec. Doc. 6186) remain pending in this Honorable Court.

## **LAW AND ARGUMENT**

Pursuant to this Court's Pretrial Order No. 15 (Rec. Doc. 676), "Pending further orders of this Court, all pending and future motions, including Motions to Remand, are continued without date unless a motion is specifically excepted from the continuance by the Court." Furthermore, pursuant to this Court's Pretrial Order No. 25 (Rec. Doc. 983), "All individual petitions or complaints that fall within Pleading Bundles B1, B3, D1, or D2, whether pre-existing or filed hereafter, are stayed until further order of the Court."

District Courts hold "the general discretionary power……..to stay proceedings in the interest of justice and in control of their dockets." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544-45 (5th Cir. 1983). *See also Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936) (explaining that "the power to stay proceedings is incidental to the power inherent in every

court"). Courts traditionally weigh three factors which are generally relevant to a stay [in this context]: (1) potential prejudice to the nonmovant; (2) hardship and inequity to the movant; and (3) the judicial resources to be saved by avoiding duplicative litigation. *Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 979 (S.D. Tex 2011); *see also Meinhart v. Halliburton Energy Servs., Inc.*, No. H-11-0073, 2011 WL 1463600 at *7 (S.D. Tex. Apr. 4, 2011).

Although *Curtis* and *Meinhart* focused on a stay pending transfer to this MDL, the stay standards are universal features of basic equity and thus are equally applicable to the question of whether Plaintiff's pending Motion to Remand  now in this Court should remain stayed. Each of the three classic equitable factors weigh in favor of immediately lifting the stay and granting Plaintiff's Motion to Remand.

*First*, the potential prejudice to Defendants is non-existence here. The *Salvesen* complaint alleges, in part, that Defendants Kenneth R. Feinberg, Feinberg Rozen, LLP, and GCCF misled Plaintiff by employing a "Delay, Deny, Defend" strategy against him. This strategy, commonly used by unscrupulous insurance companies, is as follows: "Delay payment, starve claimant, and then offer the economically and emotionally-stressed claimant a miniscule percent of all damages to which the claimant is entitled. If the financially ruined claimant rejects the settlement offer, he or she may sue."  In sum, Plaintiff alleges that BP is responsible for the oil spill incident; Feinberg, et al. (independent contractors), via employment of their "Delay, Deny, Defend" strategy, are responsible for not compensating and thereby financially ruining Plaintiff.

As of the date of the filing of this motion, 517 days have passed since Plaintiff filed his complaint against Feinberg, et al. Defendants have the absolute right to be able to answer the allegations in the complaint in a timely manner. Defendants would be prejudiced by continuing

to be held hostage in MDL 2179 if Plaintiff's Motion to Remand is denied.

*Second*, there would be continued substantial hardship and inequity to Plaintiff if the stay is not lifted and Plaintiff's Motion to Remand is not granted.

The purpose of the Federal Rules of Civil Procedure is "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Again, 517 days have passed since Plaintiff filed his complaint against Defendants.

As noted *supra*, Defendants have the absolute right to be able to answer the allegations in the complaint in a timely manner. Equally important is Plaintiff's absolute right to a "just, speedy, and inexpensive determination" of his case. Here, Plaintiff would continue to suffer substantial hardship and inequity if his Motion to Remand is denied and he continues to be held hostage by a court which, as explained below, does not permit formal discovery on Feinberg, et al.

*Third*, judicial resources are obviously conserved if this Honorable Court lifts the stay and grants Plaintiff's Motion to Remand.

The combine amount of judicial resources in: (a) the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, (b) the U.S. District Court for the Middle District of Florida, (c) the United States Judicial Panel on Multidistrict Litigation, and (d) this Honorable Court which has already been unjustifiably wasted by Defendants in the *Salvesen* case is reprehensible.

In sum, retaining the *Salvesen* case in MDL 2179 will continue to waste limited judicial resources and does not serve the purposes contemplated by the MDL transfer statute, while transfer of the case back to the U.S. District Court for the Middle District of Florida, where it

-4-

was pending before transfer to this Honorable Court, serves the convenience of the parties and

the witnesses and the interest of justice and all parties in the "just, speedy and inexpensive

determination" of this action. Fed. R. Civ. P. 1.

I.     **The Stay Imposed on the *Salvesen* Motion to Remand Was Initially Inappropriate and Remains So.**

On August 10, 2010, the United States Judicial Panel on Multidistrict Litigation

("JPML") issued its Transfer Order (Rec. Doc. 1) wherein it clearly states:

> "IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the Eastern District of Louisiana are transferred to the Eastern District of Louisiana and, with the consent of that court, assigned to the Honorable Carl J. Barbier *for coordinated or consolidated pretrial proceedings* with the actions pending in that district and listed on Schedule A." (Emphasis added)

A.     **The MDL 2179 Court Has Declined to Permit Formal Discovery on Feinberg, et al.**

As noted *supra*, the *Salvesen* case was transferred by the JPML to the MDL 2179 Court

on October 6, 2011. Once the *Salvesen* case was transferred to the MDL 2179 Court, not only

was the case automatically stayed, but the *Salvesen* claims were inexplicably deemed "amended,

restated, and superseded" by the allegations and claims of the Master Complaint in Pleading

Bundle B1 (*See* Pre-Trial Order No. 25, Para. 5, Jan. 12, 2011).

It is important to note that Kenneth R. Feinberg and Feinberg Rozen, LLP, d/b/a Gulf

Coast Claims Facility, are not named Defendants in *any* Master Complaint or Class Action

Complaint in MDL 2179.

On August 29, 2011, Plaintiff's Counsel emailed a letter to James Parkerson Roy

wherein he informed Mr. Roy that the *Pinellas Marine Salvage, Inc., et al. v. Kenneth R.*

*Feinberg, et al.* case had been transferred to MDL 2179. The letter, in pertinent part, stated

"I would like to commence discovery as soon as possible. Since this action does not involve

common questions of fact with actions previously transferred to MDL No. 2179, please advise as

to how we may most expeditiously initiate and coordinate discovery......I look forward to

working with you on this case." On September 5, 2011, Plaintiff's Counsel received an email

from Stephen J. Herman wherein Mr. Herman stated, "*please be advised that the Court has, thus*

*far, declined to permit formal discovery on Feinberg or the GCCF.*"

     Judge Barbier writes, "…the PSC has actively lobbied and argued for increased

supervision and monitoring of the GCCF and Kenneth Feinberg/Feinberg Rozen, LLP. These

efforts have met with at least partial success. For instance, on February 2, 2011 the Court granted

the PSC's motion (in part) and ordered the GCCF and BP to:

> (1) Refrain from contacting directly any claimant that they know or reasonably should know is represented by counsel, whether or not said claimant has filed a lawsuit or formal claim.
> (2) Refrain from referring to the GCCF, Ken Feinberg, or Feinberg Rozen, LLP (or their representatives), as "neutral" or completely "independent" from BP. It should be clearly disclosed in all communications, whether written or oral, that said parties are acting for and on behalf of BP in fulfilling its statutory obligations as the "responsible party" under the Oil Pollution Act of 1990.
> (3) Begin any communication with a putative class member with the statement that the individual has a right to consult with an attorney of his/her own choosing prior to accepting any settlement or signing a release of legal rights.
> (4) Refrain from giving or purporting to give legal advice to unrepresented claimants, including advising that claimants should not hire a lawyer.
> (5) Fully disclose to claimants their options under OPA if they do not accept a final payment, including filing a claim in the pending MDL 2179 litigation.
> (6) Advise claimants that the "pro bono" attorneys and "community representatives" retained to assist GCCF claimants are being compensated directly or indirectly by BP." (Rec. Doc. 1098 at 14).

Judge Barbier further writes, "The PSC has advocated for a full and transparent audit of

the GCCF and its claims handling practices, and together with the U.S. Department of Justice, *has persuaded Mr. Feinberg to agree to such an audit* which is now in progress. The PSC has advocated, again with some success, for the GCCF to employ a more liberal causation standard in evaluating claims and has advanced similar causation arguments in this MDL proceeding." *See* Order of Aug. 26, 2011, Rec. Doc. 3830 at 32-33. (pp. 4-5, Rec. Doc. 5022).

The PSC allegedly represents all Plaintiffs in MDL 2179. These Plaintiffs deserve more than the PSC merely: (a) "lobbying" for increased supervision and monitoring of Feinberg, et al.; (b) trying to "persuade" Mr. Feinberg to agree to an audit; and (c) "advocating," again with some success, for the GCCF to employ a more liberal causation standard in evaluating claims.

The JPML believes, "Centralization may also facilitate closer coordination with Kenneth Feinberg's administration of the BP compensation fund." However, formal discovery on Feinberg and the GCCF, and the associated pressure of a trial, are required in order exert pressure on the parties to negotiate a settlement which reflects the true value of the claims and not one which focuses on minimizing the liability of the defendants. Certainly, as has occurred in MDL 2179, without formal discovery on Feinberg and the GCCF, certain claims by private individuals and businesses for economic loss resulting from the operation of the GCCF may not be properly resolved.

### B. The Damages Incurred by Plaintiff Did Not All "Result From" the BP Oil Spill

### 1. The Opinion of the Honorable Joseph C. Wilkinson, Jr.

The recent opinion of the Honorable Joseph C. Wilkinson, Jr. is instructive in this matter. *See Coastal Services Group, LLC v. BP Company North America, Inc. et al.*, Case No. 2:11-cv-02891-JCW (E.D. La. 2012).

**Background**

 *Coastal Services Group, LLC* filed its Complaint on September 29, 2011, in the Chancery Court of Jackson County, Mississippi, against Patriot Environmental Services, Inc. and the BP defendants. On November 7, 2011, BP removed the case from the state Chancery Court to the United States District Court for the Southern District of Mississippi. On November 18, 2011, pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the case was transferred as a "tag-along" under 28 U.S.C. § 1407 to MDL 2179, the "Deepwater Horizon" Oil Spill litigation.

 Plaintiff alleges in its Complaint that in August 2010, after the explosion of the *Deepwater Horizon* offshore drilling platform, BP entered into a six-month contract with plaintiff "for oil clean up and decontamination services." Plaintiff asserts that the "discounted prices Plaintiff provided Defendant BP for Plaintiff's services were based on obtaining work from Defendant BP for at least six months." Plaintiff alleges that BP breached this contract by improperly terminating the contract "after only two months."

**Motion to Remand**

 In its Motion to Remand, Plaintiff argues that this "action is not related to the Oil Spill Litigation and does not involve one or more common questions of fact." It argues for transfer back to the Southern District of Mississippi pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and the witnesses and because including this particular suit in the MDL proceedings does not serve the purposes of the MDL transfer statute, 28 U.S.C. § 1407, to promote the just and efficient resolution of this case, but instead will increase costs to these parties and delay resolution of the case.

**Order Granting Motion to Remand**

In granting Plaintiff's Motion to Remand, Judge Wilkinson, Jr. succinctly points out:

"Since transfer by the Judicial Panel on Multidistrict Litigation to this court of the cases now constituting *In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, the presiding district judge and magistrate judge have issued several case management orders and conducted substantial pretrial activities geared primarily toward the issues of fault, causation and damages arising from the subject explosion and resulting oil spill. The vast majority of parties involved in most of the individual member cases have vital common interests in these primary issues. The referenced member case is based on a separate and distinct contractual relationship. It does not fit the consolidated case management, settlement and trial preparation activities with which the MDL proceeding as a whole has been concerned. Because of the largely unrelated nature of their separate contractual dispute, the parties to the subject member case have reaped little discovery, trial preparation or settlement benefit from the coordinated pretrial activity of the MDL proceedings to date. It appears that the member case can be resolved more efficiently, with less cost and less delay, if it is severed from the MDL proceeding and provided with individualized attention appropriate to its distinct nature, all with no risk of any ruling that might be inconsistent with anything that occurs in the MDL action.

28 U.S.C. § 1404(a) now provides: 'For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.' In their papers filed in connection with this motion, the parties unanimously agree that transfer of this case back to the Southern District of Mississippi, where the alleged contract

-9-

was to be performed, is most convenient for the parties and the witnesses. The interest of justice will be served in that the dispute will receive less costly, more efficient and swifter resolution than can be achieved by maintaining the case as part of the MDL proceeding.

In short, retaining the case in this district does not serve the purposes contemplated by the MDL transfer statute, while transfer of the case back to the Southern District of Mississippi, where it was pending before transfer to this court, serves the convenience of the parties and the witnesses and the interest of justice and all parties in the 'just, speedy and inexpensive determination' of this action. Fed. R. Civ. P. 1."

### 2.      The Opinion of the Honorable Carlton W. Reeves

The recent opinion of the Honorable Carlton W. Reeves, United States District Court for the Southern District of Mississippi, is also instructive in this matter. *See State of Mississippi v. Gulf Coast Claims Facility, et al.*, Case No. 3:11-cv-00509-CWR-LRA (S.D. Miss. 2011).

On July 12, 2011, Attorney General Jim Hood filed suit on behalf of the State of Mississippi against the Gulf Coast Claims Facility and Kenneth Feinberg (hereinafter collectively "GCCF") in Hinds County Chancery Court. On August 11, 2011, GCCF removed the case to federal court pursuant to Title 28, Sections 1441 and 1446 of the United States Code. Specifically, GCCF claims that original jurisdiction lies with the United States District Court for the Southern District of Mississippi by virtue of the Outer Continental Shelf Lands Act. Hood moved to remand the case to state court on September 12, 2011.

In his Order of Remand, Judge Reeves points out, "GCCF's argument that Hood has unwittingly stated a claim under OCSLA is not compelling. According to OCSLA, federal courts

-10-

enjoy subject-matter jurisdiction "of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf . . . ." The Fifth Circuit has written that it "appl[ies] a broad 'but-for' test to determine whether a cause of action arises under OCSLA." And in GCCF's view, because it would not exist but for the Deepwater Horizon's explosion, this case (and, presumably, any other case to which it could ever be a party) necessarily implicates OCSLA.

GCCF is correct that the Fifth Circuit views "[t]he jurisdictional grant[ ] contained in 43 U.S.C. § 1349(b)(1) [a]s very broad." *"But to view OCSLA's scope so far-reaching as does GCCF would render GCCF's every potentially actionable decision a federal case, be it related to the claims process at hand or a GCCF employee's car wreck en route to the office."*

Neither OCSLA's plain language nor the Fifth Circuit's decisions interpreting it contain any indication that matters so far removed as these - occurring not on the outer Continental Shelf but doing business in Dublin, Ohio,  and aimed not at the "exploration, development, or product of . . . minerals" but rather at "developing and publishing standards for recoverable claims" related to the Deepwater Horizon spill - fall within the purview of Section 1349(b)(1), which addresses "any operation conducted *on* the outer Continental Shelf . . . ." Plainly, although GCCF's activities amount [to] an operation, that operation is not conducted "on the outer Continental Shelf." Therefore, OCSLA does not apply and is not a proper basis for federal jurisdiction."

3.      *Selmer M. Salvesen v. Kenneth R. Feinberg, et al.*

*Pinellas Marine Salvage, Inc., et al. v. Kenneth R. Feinberg, et al.* and *Selmer M. Salvesen v. Kenneth R. Feinberg, et al.* are the only two cases of their kind filed in any court in the country. In each case, the complaint alleges, in part, that Defendants Kenneth R. Feinberg, Feinberg Rozen, LLP, and GCCF misled Plaintiffs by employing a "Delay, Deny, Defend" strategy against them. This strategy, commonly used by unscrupulous insurance companies, is as follows: "Delay payment, starve claimant, and then offer the economically and emotionally-stressed claimant a miniscule percent of all damages to which the claimant is entitled. If the financially ruined claimant rejects the settlement offer, he or she may sue."  In sum, Plaintiff alleges that BP is responsible for the oil spill incident; Feinberg, et al. (independent contractors), via employment of their "Delay, Deny, Defend" strategy, are responsible for not compensating and thereby financially ruining Plaintiff.

For the same reasons the stay of the *Salvesen* Motion to Remand was initially inappropriate, it remains inappropriate now.

The common sense, thoughtful opinions of Judge Wilkinson and Judge Reeves are applicable to the *Salvesen* case. In Feinberg, et al.'s view, because their relationship with Plaintiff would not exist "but for" the Deepwater Horizon's explosion, the *Salvesen* case (and, presumably, any other case to which Feinberg, et al. could ever be a party) *would render Feinberg, et al.'s every potentially actionable decision a federal case, be it related to the claims process at hand or a GCCF employee's car wreck en route to the office.*

Plaintiff's Motion to Remand should be granted.

-12-

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff respectfully requests that this Honorable Court:

(1) grant this motion; and (2) remand this action to the U.S. District Court for the Middle District

of Florida.

DATED: November 13, 2012                          Respectfully submitted,

                                                  **/s/ Brian J. Donovan_____**
                                                  Brian J. Donovan
                                                  Attorney for Plaintiff
                                                  Florida Bar No. 143900
                                                  3102 Seaway Court, Suite 304
                                                  Tampa, FL 33629
                                                  Tel: (352)328-7469
                                                  BrianJDonovan@verizon.net