UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010<br><br>THIS DOCUMENT RELATES TO:<br><br>10-3896, 11-826, AND 12-968 | CIVIL ACTION<br><br>MDL NUMBER: 2179<br><br>SECTION "J"<br><br>JUDGE BARBIER<br>MAGISTRATE SHUSHAN |

**SEACOR'S REPLY MEMORANDUM IN FURTHER SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

In accordance with the Court's May 1, 2015 Order (Rec. Doc. 14512) and May 27, 2015 Order (Rec. Doc. 14616), Seacor Holdings, Inc., Seacor Offshore LLC, and Seacor Marine LLC (collectively, "Seacor") respectfully submit this Reply Memorandum in Further Support of their Motion for Summary Judgment (Rec. Doc. 13520) and in opposition to DuWayne Mason's Motion to be Recognized as an Opt Out Plaintiff and Alternative Motion to Extend the Opt-Out Deadline (Rec. Doc. 14609).

**I.      Introduction**

Seacor's Motion for Summary Judgment is premised upon the Court's prior rulings regarding DuWayne Mason's claims—namely its March 5, 2013 Order and Reasons (Rec. Doc. 8811) denying Mason's Motion to Sever and its May 3, 2013 Order denying Mason's Motion to Reconsider (Rec. Doc. 9683)—and simply asks the Court to enter a final judgment based on those prior rulings now that the Medical Benefits Class Action Settlement ("Medical Settlement") has become final and effective.

In response to Seacor's Motion for Summary Judgment, Mason restates arguments this Court previously rejected and which effectively call for the Court to disregard the clear language of the Medical Settlement and craft an exception for Mason which could, if allowed, result in a flood of similar requests from other class members that have their own "unique" reasons for their respective failures to timely opt out of the Medical Settlement.

The dispositive facts, though, remain unchanged: (1) the Medical Settlement defines the class to include Mason, rendering his subjective understanding of the nature of his claims irrelevant; (2) Mason, through his attorney, had actual and constructive knowledge of the existence and terms of the Medical Settlement, including the opt-out provisions and the associated Release; (3) Mason did not timely opt out; and (4) the Release includes Seacor as a Released Party. Given these indisputable facts, it is clear the Court's prior analysis of these issues is correct and should now be reduced to a final judgment.

## II. Mason's Present Arguments are Inconsistent with the Allegations in His State Court Malpractice Lawsuit

Before responding to Mason's arguments, Seacor wishes to bring to the Court's attention litigation Mason has brought in another jurisdiction in which he makes allegations inconsistent with the assertions in his recent submissions to this Court.

On March 20, 2014—after the Court's two rulings identified above in connection with Mason's Motion to Sever—Mason filed a Petition for Damages in state court in New Orleans against his attorney in these proceedings and two insurance companies believed to provide professional liability coverage to his attorney's law firm. *See* Exhibit 1 – Petition for Damages. Subsequently, on June 5, 2014, Mason filed a First Supplemental and Amending Petition for Damages substituting National Union Fire Insurance Company of Pittsburgh, PA in place of the two insurers named in the original petition. *See* Exhibit 2 – First Supplemental and Amending

2

Petition for Damages.[1]  In his state court petition, Mason asserts malpractice claims against his original counsel in this MDL arising out of counsel's failure to opt Mason out of the Medical Settlement, and makes the following allegations that are relevant to the instant dispute:

- Exhibit 1, ¶ 18:  "The Complaint filed in Case No. 11-826, *Mason v. Seacor Marine, LLC*, states that after the Deepwater Horizon sank, Mason performed oil spill cleanup work in the months following the Deepwater Horizon explosion and fire during which he was exposed to and injured by oil, dispersant, and other chemicals…."

- Exhibit 1, ¶ 20:  "Mr. Mason, as described by the facts asserted in his answer in the Seacor Limitation Action and the Complaint against Seacor Marine, LLC, is by definition a class member of the Medical Benefits Class Action Settlement Agreement."

- Exhibit 1, ¶ 23:  "Based on the terms of the release incorporated into the Medical Settlement, which settles claims for all Class Members, Mr. Mason's claims in the Limitation Action and in *Mason v. Seacor Marine, LLC* would be released under the terms of the Medical Settlement."

- Exhibit 1, ¶ 27:  "Mr. Mason could have 'opted out' of the restrictive Medical Settlement, and been allowed to continue pursuing his individual claims in the lawsuit Mr. Silbert filed or by some other means, if Mr. Silbert had followed the opt-out procedures outlined in the Class Notice and the Proposed and Final Settlements."

Mason's allegations in his state court petition are directly contrary to the arguments contained in his submissions to this Court.  While his contrary positions may not technically qualify as "judicial admissions" or be subject to the doctrine of "judicial estoppel," they implicate the policies upon which those concepts are built and, in any case, show that Mason has an adequate remedy available to him if he can otherwise show that he would have been entitled to a recovery in tort had he timely opted out of the Medical Settlement.

---

[1] The law firm representing the defendants in the state court action was recently added as counsel of record for Mason in the MDL.  *See* Rec. Doc. 14584.

### III.   The Court Should Decline to Revisit Its Prior Rulings Because Mason Makes No New Arguments

Putting the above issues to the side, Mason is advancing the same arguments that this Court has already rejected. In effect, Mason's filings amount to a second request for reconsideration. Because the Court has already correctly analyzed the issues surrounding Mason's claims, it should simply grant Seacor's motion and enter a final judgment dismissing Mason's claims in their entirety with prejudice.

#### A.   *Mason is a Member of the Medical Benefits Class*

Mason continues to challenge the notion that he served as a clean-up worker during the Deepwater Horizon response and clean-up effort and thus is a member of the Medical Benefits Class. *See* Rec. Doc. 14608, p. 8 ("Paragraph 6 of Mason's Jones Act complaint contains an ambiguous sentence that suggests incorrectly that Mason had personally been engaged in actual clean-up operations, which arguably put his damage claims within the definition of Pleading Bundle B3, even though Mason was not suing BP or any other party responsible for the explosion, fire or oil release."), p. 13 (referencing an affidavit submitted earlier in these proceedings by Mason that "clarified that he was not personally or directly involved in the actual clean-up operations on board the MV SEACOR VANGUARD, as the wording of paragraph six suggested").

Mason's arguments on this point are unpersuasive. Even assuming that he was not involved in the collection of oil and application of dispersant personally, he has previously conceded that he was "assigned to the engine room [of the M/V SEACOR VANGUARD], where his job was to keep the engines running so that those aboard the vessel could perform the tasks of collecting the oil and dispersant." *See* Rec. Doc. 9091-1, p. 6. As the Court has noted, the Medical Benefits Class includes, among others, "all NATURAL PERSONS who resided in the

4

United States as of April 16, 2012, and who . . . [w]orked as CLEAN-UP WORKERS at any time between April 20, 2010 and April 16, 2012." *See* Rec. Doc. 8811 (quoting Medical Settlement § I.A.1). The Medical Settlement includes in its definition of "CLEAN-UP WORKERS" the "[c]aptains, crew, and other workers on vessels" that were involved in the response. *See* Medical Settlement § II.Q (Rec. Doc. 6427-1). The Court correctly concluded in its March 5, 2013 Order and Reasons that Mason was a "CLEAN-UP WORKER" and, therefore, a member of the Medical Benefits Class. The distinction Mason would make based on whether he was personally engaged in actually cleaning up oil (by applying dispersant or absorbents, for example) or was simply working on a vessel that was engaged in the clean-up is entirely irrelevant to the controlling question of whether or not he comes within the definition of those workers covered by the Medical Settlement. Clearly, he does, and is therefore subject to its terms and conditions.

> B. *Mason's Counsel Received Actual Notice of the Medical Settlement, Notwithstanding His Failure to Comply with Pretrial Order No. 12*

In his recent filings, Mason repeatedly argues that he should be excused for failing to opt-out of the Medical Settlement because BP apparently did not mail individual notice to Mason or his counsel. But Mason's re-worked notice arguments remain red herrings and largely ignore the dispositive fact that his counsel of record received <u>actual</u> notice of the Medical Settlement and then, as Mason himself professes, "thoroughly investigated" the settlement agreement prior to the opt-out deadline.

The Medical Settlement was publicly announced on March 3, 2012, and was filed with the Court on April 18, 2012. *See* Rec. Doc. 6273-1. Some minor amendments were subsequently made to the Medical Settlement and those amendments were executed on May 1, 2012. *See* Rec. Doc. 6427-1. The Court granted preliminary approval to the Medical Settlement

5

on May 2, 2012 and, in doing so, also approved the Medical Benefits Settlement Class Notice Plan.  *See* Rec. Doc. 6419.  The original deadline for opting out of the Medical Benefits Class was October 1, 2012.  *Id.*  On August 27, 2012, however, the Court issued an Order extending the opt-out deadline until November 1, 2012.  *See* Rec. Doc. 7176.  The Court granted final approval to the Medical Settlement on January 11, 2013.  *See* Rec. Doc. 8217.

All of these materials were filed on the Court's electronic docket and served on all counsel of record via LexisNexis File & Serve pursuant to Pretrial Order No. 12 (Rec. Doc. 600).  In support of Mason's previous Motion for Reconsideration, Mason's counsel submitted an affidavit in which he stated that "I do not receive electronically filed documents from the MDL."  Rec. Doc. 9091-3, ¶ 4.  But Pretrial Order No. 12 <u>required</u> that "[a]ll attorneys of record in this litigation . . . shall, within ten days of the entry of this Order, or within ten days of the entry of appearance for a new attorney of record, or the docketing of their transferred case, whichever occurs earliest . . . sign up for electronic service in this litigation by completing the [LexisNexis application]."  Rec. Doc. 600, ¶ 2.  Mason's counsel filed claims on behalf of Mason against Seacor in this MDL on April 13, 2011—well before the various notices regarding the Medical Settlement were circulated in accordance with Pretrial Order No. 12—and it was thus incumbent upon Mason's counsel to "sign up for electronic service in this litigation."  The failure to comply with the Court's Order in this respect cannot excuse Mason's failure to opt out.

Notwithstanding Mason's counsel's failure to comply with Pretrial Order No. 12, Mason's counsel received actual notice of the Medical Settlement in several alternative ways.  For example, Seacor filed its opposition to Mason's original Motion to Sever on September 5, 2012—almost two months before the expiration of the opt-out deadline.  *See* Rec. Doc. 7281.  In that brief, Seacor specifically discussed the Medical Settlement and the fact that it might provide

6

a "prompt resolution" of Mason's claims, while recognizing that it was "of course, Mason's choice" whether or not to participate in the class action settlement. *Id.*, p. 4. Additionally, as acknowledged in footnote 4 of Mason's Memorandum in Support of his Motion for Reconsideration, after Seacor's counsel mentioned the Medical Settlement to Mason's counsel, Mason's counsel spoke to Messrs. Herman, Roy, and Sterbcow (Plaintiffs' Co-Liaison Counsel and a member of the Plaintiffs' Steering Committee, respectively) about the Medical Settlement. *See* Rec. Doc. 9091-1, p. 8 n.4. Thus, Mason's counsel clearly knew about the existence of the Medical Settlement well before the opt out deadline and then "thoroughly investigated the nature of the medical benefits class action settlement agreement." Rec. Doc. 6909-1, p. 3. This key fact distinguishes the instant case from those cited by Mason where neither class members nor their counsel received any notice at all.

Finally, notwithstanding all of the above, extensive publication notice of the Medical Settlement was also provided in this case. As the Court explained in its Order and Reasons granting final approval to the Medical Settlement:

> Notice was also provided through an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, highly-trafficked websites, and Sunday local newspapers (via newspaper supplements). Notice was also provided in non-measured trade, business and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming. The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each.

Rec. Doc. 8217, p. 70. Ultimately, the Court held that "the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable manner to Class Members who would be bound by the Settlement." *Id.*

7

For all of these reasons, Mason's renewed notice arguments remain unavailing and should be rejected.

### C. Mason's Mistaken Belief that His Claims Were Not Subject to the Medical Settlement Is Irrelevant and His Failure to Properly Opt Out Should Not Be Excused

An additional theme that appears throughout Mason's recent filings is the belief that his claims would be unaffected by the Medical Settlement because "he was not seeking recovery from any BP entity," Rec. Doc. 14608, p. 11, and because "Seacor was not a defendant to the MB Class Action Settlement complaint," *id.*, p. 2. What Mason or his counsel may have believed subjectively, however, is completely irrelevant to the issues before the Court.

The Medical Settlement provides that "[a]ll NATURAL PERSONS in the MEDICAL BENEFITS SETTLEMENT CLASS who do not timely and properly OPT OUT from the MEDICAL BENEFITS SETTLEMENT CLASS shall in all respects be bound by all terms of this MEDICAL BENEFITS SETTLEMENT AGREEMENT . . . and shall be barred permanently and forever from commencing, instituting, maintaining, or prosecuting any action asserting any RELEASED CLAIMS against any RELEASED PARTIES in any court of law or equity, arbitration tribunal, or administrative or other forum." *See* Medical Settlement § XI.F (Rec. Doc. 6427-1).

The Medical Settlement defines "RELEASED PARTIES" to include, among others, the "OTHER RELEASED PARTIES," which in turn are defined as "the persons, entities, divisions, and business units listed on Exhibit 6." *See* Medical Settlement §§ II.MMMM and II.ZZZ (Rec. Doc. 6427-1). The three Seacor entities involved in this case are included on that list. *See* Exhibit 6 to the Medical Settlement (Rec. Doc. 6427-8).

It is important to note that there are two-hundred and twenty-six (226) "OTHER RELEASED PARTIES" specifically identified on Exhibit 6 to the Medical Settlement, the great

8

majority of which were not named defendants in the class action complaint that formed the basis for the class settlement. *See* Exhibit 6 to the Medical Settlement (Rec. Doc. 6427-8). If the Court now carves out an exception for Mason and excuses his failure to timely opt out in accordance with the provisions of the Medical Settlement, one can only wonder how many other individuals employed by the 226 OTHER RELEASED PARTIES may come forward with their own "unique" set of circumstances to seek a comparable exception. In short, to grant Mason the relief he seeks would open the proverbial floodgates and could well undermine the finality and efficiencies achieved by the Medical Settlement. This Court should not risk unraveling the Medical Settlement by giving legal effect to Mason's alleged, subjective (and patently unjustified) belief regarding whether or not his claims against three of the entities listed on Exhibit 6 would be affected by the Medical Settlement.

For the same reasons, the Court should not excuse Mason's failure to follow the unambiguous opt-out procedures set forth in the Medical Settlement. Mason has previously asked the Court to deem him to have opted out despite his failure to follow the required opt-out procedures, and he makes the same request again in his present submissions. But as Seacor has already explained, *see* Rec. Doc. 9590, p. 10-13, the Court's Preliminary Approval Order set forth the opt-out requirements and made clear that all class members "who do not <u>timely and properly</u> Opt Out from the Medical Benefits Settlement Class shall in all respects be bound by all terms of the Medical Settlement Agreement and the Final Order And Judgment." Rec. Doc. 6419, p. 26-27 (emphasis added). The Court previously denied Mason's request "[e]ssentially for the reasons presented by Seacor and BP," *see* Rec. Doc. 9683, and should do so again.

Ultimately, the Medical Settlement itself governs these issues and makes plain in clear, objective language that Mason's claims are covered by the Medical Settlement, that he failed to opt out, and that his claims have been released.

## IV.     Conclusion

As this Court has previously noted, Mason failed to opt out of the Medical Settlement and, consequently, all of his claims against Seacor are released.  Moreover, the Court previously denied Mason's request either to extend the opt-out period or excuse his failure to timely and properly opt out.

Based on the Court's prior rulings, and now that all appeals have been dismissed and the Medical Settlement has become final and effective, it is appropriate for the Court to award Seacor summary judgment and issue a final judgment dismissing Mason's claims with prejudice.

Respectfully submitted,

/s/ *Gary A. Hemphill*
Gary A. Hemphill, T.A. (LA Bar #6768)
Jeremy T. Grabill (LA Bar #34924)
**PHELPS DUNBAR LLP**
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Facsimile:  (504) 568-9130

Patrick E. O'Keefe (LA Bar #10186)
Joseph P. Tynan (LA Bar #12973)
**MONTGOMERY BARNETT, L.L.P.**
3300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3300
Telephone:  (504) 585-3200
Facsimile:   (504) 585-7688

        Michael J. Lyle (DC Bar #475078, IL Bar #6199227)
        Eric C. Lyttle (DC Bar #482856)
        **QUINN EMANUEL URQUHART& SULLIVAN, LLP**
        777 6th Street NW, 11th Floor
        Washington, D.C. 20001
        Telephone:  (202) 538-8000
        Facsimile:   (202) 538-8100

        Sylvia E. Simson (NY Bar #4803342)
        **QUINN EMANUEL URQUHART& SULLIVAN, LLP**
        51 Madison Avenue
        New York, NY 10010
        Telephone: (212) 849-7000
        Facsimile: (212) 849-7100

        ATTORNEYS FOR SEACOR HOLDINGS, INC., SEACOR OFFSHORE, LLC, AND SEACOR MARINE LLC

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Seacor's Reply Memorandum in Further Support of Motion for Summary Judgment has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of May, 2015.

        */s/ Gary A. Hemphill*
        GARY A. HEMPHILL