# Exhibit 1

SECTION 14

STATE OF LOUISIANA

PARISH OF ORLEANS

DOCKET: 2014-2810

DuWAYNE MASON

v.

SCOTT E. SILBERT; SILBERT & GARON, L.L.P.; GILSBAR SPECIALTY INSURANCE SERVICES, L.L.C.; GILSBAR, L.L.C.; CNA CONTINENTAL CASUALTY COMPANY

# PETITION FOR DAMAGES

The petition of DuWayne Mason, a person of majority domiciled in Collier County, Florida, respectfully represents:

1.

The following parties are made defendants herein:

**Scott E. Silbert**, attorney-at-law, a person of full age of majority and domiciled in Orleans Parish, Louisiana;

**Silbert & Garon, L.L.P.**, a limited liability partnership of attorneys-at-law domiciled in Orleans Parish, Louisiana, licensed to do and doing business in the State of Louisiana;

**Gilsbar Specialty Insurance Services, L.L.C.**, ("Gilsbar") a limited liability company and the professional liability carrier of the attorneys-at-law identified in this paragraph, domiciled in St. Tammany Parish, licensed to do and doing business in the State of Louisiana; and

**CNA Continental Casualty Company**, ("CNA") the professional liability carrier of the attorneys-at-law identified in this paragraph, domiciled in Cook County, Illinois licensed to do and doing business in the State of Louisiana.

2.

On April 20, 2010, while drilling at the Macondo Prospect in the Gulf of Mexico, an explosion occurred on the Deepwater Horizon, an ultra-deepwater, dynamically positioned, semi-submersible offshore oil drilling rig owned by Transocean and leased to British Petroleum. The explosion was caused by a blowout and killed 11 crewmen and ignited a fireball visible from 35 miles (56 km) away. The resulting fire could not be extinguished and, on April 22, 2010, the Deepwater Horizon sank, leaving the well gushing at the seabed and causing the largest offshore oil spill in U.S. history.

3.

On or about April 20, 2010, DuWayne Mason served as a Jones Act seaman aboard the M/V SEACOR VANGUARD holding the position of assistant engineer.

Page 1 of 10

4.

On the day of the explosion, the M/V SEACOR VANGUARD was one of the first responder vessels which came upon the scene of the Deepwater Horizon rig fire.

5.

From that date forward, the M/V SEACOR VANGUARD pumped water on the burning rig for almost forty-eight hours before the rig collapsed and sank into the ocean.

6.

During the vast majority of the time that the M/V SEACOR VANGUARD was assisting in efforts to extinguish the fire, Mr. Mason was working, as ordered, in the relatively confined space of the engine room on the vessel and was exposed to massive amounts of noxious chemicals and fumes from the rig fire.

7.

During the three to four months after the rig fire was extinguished, the M/V SEACOR VANGUARD and its crew, including plaintiff, were sent to assist in the process of skimming oil and dispersant from the waters of the Gulf of Mexico.

8.

While engaged in collecting the oil and dispersant, plaintiff was exposed to crude oil, chemical components of the crude oil, chemical dispersant and other noxious byproducts of the rig fire and oil spill, resulting in severe and permanent damage to his lungs and other parts of his body.

9.

As a result of the foregoing, Mr. Mason has suffered severe and irreparable lung damage and other personal injuries.

10.

After many months of treatment, on approximately June 16, 2012, Mr. Mason was ordered by his treating pulmonologist to permanently cease working as an engineer or in any other capacity on vessels.

11.

It is alleged, based upon information and belief that Seacor, LLC, Mr. Mason's Jones Act employer and the owner of the vessel upon which he was working during the fire, was negligent in various ways to be detailed herein and the vessel was unseaworthy. In addition, it is alleged upon information and belief, that BP, Transocean, Halliburton and Transocean entities, as well as

other third parties, were negligent in various ways as set forth in the Claim Action litigation described below. These are alleged to be both the cause in fact and legal cause of the damages sustained by Mr. Mason.

12.

Based upon information and belief, the entities which caused or contributed to Mr. Mason's personal injury damage include, but are not limited to:

Seacor Holdings Inc.
Seacor Marine, LLC
Seacor Marine, Inc.
Seacor Marine International, Inc.
Seacor Offshore LLC
Seacor Worldwide, Inc.
M/V Seacor Vanguard
BP America Inc.
BP America Production Company
BP Company North America Inc.
BP Corporation North America Inc.
BP Energy Company
BP Exploration (Alaska) Inc.
BP Global Special Products (Americas) Inc.
BP Holdings North America Limited
BP Exploration & Production Inc.
BP P.L.C.
BP Products North America Inc.
BP International Ltd.
BP Corporation North America Inc. Savings Plan Investment Oversight Committee
Halliburton Energy Services, Inc
Sperry Drilling Services, a Division of Halliburton Energy Services, Inc
Transocean, ltd
Transocean Offshore Deepwater Drilling, Inc.
Ttransocean Deepwater, Inc
Transocean holdings, LLC
Triton Assest Leasing GMBH

13.

Immediately after the Deepwater Horizon explosion, fire, sinking and resulting oil spill, hundreds of lawsuits were filed, including for example class actions asserting numerous plaintiff claims against various defendants including BP, Transocean and Halliburton entities, as well as against other third parties. Vessel limitation claims were also filed by numerous vessel owners involved in the explosion and the subsequent massive response. These claims were filed in many Courts across the country, ultimately resulting in a multi-district litigation panel appointing Judge Carl Barbier to oversee a multi-district class action "Class Action" in the Federal District Court for the Eastern District of Louisiana Case (2:10-md-02179-CJB-SS). Judge Barbier appointed a Plaintiff's Steering Committee to represent the putative class in the Class Action. Class defendants and vessel owners retained individual counsel.

14.

One of the many actions consolidated into MDL2179 was case No. 10-3896, *In the Matter of Seacor Holdings, Inc.*, a limitation action filed by Seacor as the owners of M/V SEACOR VANGUARD in the United States District Court for the Eastern District of Louisiana.

15.

Mr. Mason, intending to seek redress for the losses detailed herein, engaged the well-known and highly respected New Orleans maritime law firm of Silbert & Garon, L.L.P. and its senior partner, seasoned maritime lawyer Mr. Scott Silbert, a Louisiana licensed attorney holding bar Roll Number 12068, to represent him against all those individuals and entities who were responsible for the damages sustained and described herein.

16.

On April 13, 2011, Mr. Silbert filed an *answer* and *claim* in case No. 10-3896, *In the Matter of Seacor Holdings, Inc*, on behalf of Mr. Mason. (The "Seacor Limitation Action") Mr. Mason's *answer* therein stated that Mr. Mason suffered injuries as a result of the work he performed aboard the M/V SEACOR VANGUARD at the scene of the Deepwater Horizon explosion and rig fire.

17.

On April 13, 2011, Mr. Silbert filed a separate action, case No. 11-826, *Mason v. Seacor Marine, LLC*, (The "Complaint") also in the United States District Court for the Eastern District of Louisiana, alleging that Mr. Mason suffered serious injury while working as a Jones Act seaman at the scene of the Deepwater Horizon explosion and rig fire.

18.

The Complaint filed in case No. 11-826, *Mason v. Seacor Marine, LLC*, states that after the Deepwater Horizon sank, Mason performed oil spill cleanup work in the months following the Deepwater Horizon explosion and fire during which he was exposed to and injured by oil, dispersant, and other chemicals. More specifically, the complaint reads:

> During the three to four months after the rig fire was extinguished, the M/V SEACOR VANGUARD and its crew, including plaintiff, were sent to assist in the process of skimming oil and dispersant from the waters of the Gulf of Mexico.
>
> While engaged in collecting the oil and dispersant, plaintiff was exposed to crude oil, chemical components of the crude oil, chemical dispersant and other noxious byproducts of the rig fire and oil spill, resulting in severe and permanent damage to his lungs and other parts of his body.

19.

On April 18, 2012, the Plaintiffs' Steering Committee and counsel for BP, on behalf of the defendant BP entities, entered into a settlement in the Class Action of various classes of damaged parties, including those for class members who allegedly sustained personal injuries as a result of the explosion, fire, spill and resulting clean-up efforts. (The Medical "Settlement") A Notice of Filing of Medical Benefits Class Action Settlement Agreement was filed of record in MDL2179, the purpose of which was to settle all medical claims for all Medical Class Members. (Case 2:10-md-02179-CJB-SS Document 6273)

20.

Mr. Mason, as described by the facts asserted in his answer in the Seacor Limitation Action and the Complaint against Seacor Marine, LLC, is by definition a class member of the Medical Benefits Class Action Settlement Agreement.

21.

The Medical Settlement laid out in specific detail the compensation available for each of a number of specified physical conditions, all of which were categorized and assigned a place within a physical condition matrix in Settlement Exhibit 8. Exhibit 8 included both descriptions of all types of physical conditions compensated, and the specific amounts of compensation available through the Medical Settlement to a Class Member who experienced those symptoms.

22.

The Medical Settlement includes a list of RELEASED PARTIES that were released and forever discharged from any liability for all claims of any nature whatsoever that have been or could have been brought by any Class Member in connection with personal injury or bodily injury, where such injury in whole or in part arose from, was due to, resulted from, or was related to, directly or indirectly, the *DEEP WATER HORIZON* INCIDENT (See Medical Settlement, § XVI, Rec. Doc. 6427–1). Seacor Holdings, Inc., Seacor Offshore LLC, Seacor Marine LLC, and the M/V SEACOR VANGUARD are all listed as "RELEASED PARTIES" (Medical Settlement, Exhibit 6, Rec. Doc. 6427–8); as are other potential parties who may be responsible for Mr. Mason's injuries and resulting damages.

23.

Based on the terms of the release incorporated into the Medical Settlement, which settles claims for all Class Members, Mr. Mason's claims in the Limitation Action and in *Mason v. Seacor Marine, LLC* would be released under the terms of the Medical Settlement.

24.

On May 2, 2012, the Court entered an order granting preliminary approval of the proposed Medical Settlement. The Court's order also approved the Medical Settlement Class "Notice Plan."

25.

The May 2, 2012 Notice outlined the benefits available to Claimants under the Medical Settlement, which include compensation for specified physical conditions, periodic medical consultation, a provision for back-end litigation and the creation of a Gulf region health outreach program.

26.

The injuries and damages described in the Complaint filed by Mr. Silbert for the damages incurred by Mr. Mason far exceed the potential recoveries provided by the Medical Settlement.

27.

Mr. Mason could have "opted out" of the restrictive Medical Settlement, and been allowed to continue pursuing his individual claims in the lawsuit Mr. Silbert filed or by some other means, if Mr. Silbert had followed the opt-out procedures outlined in the Class Notice and the Proposed and Final Settlements.

28.

Not only did Mr. Silbert overlook the initial Medical Settlement opt-out deadline of October 1, 2012, he also overlooked the extended opt-out date of November 1, 2012. (See Case 2:10-md-02179-CJB-SS Document 7176).

29.

At no point between April 18, 2012 and November 1, 2012 did Mr. Silbert discuss the Medical Settlement and its (limited) benefits, restrictions, financial limitations, limitations on causes of actions, limitations of punitive damages, procedures or the deadlines within which Mr. Mason would have had to opt-out or thereafter remain a Class Member in the Medical Settlement.

30.

At no point between April 18, 2012 and November 1, 2012 was a written opt-out request submitted by Mr. Silbert on behalf of Mr. Mason to the Medical Settlement Claims Administrator

in the Class Action.

31.

On November 21, 2012, the Claims Administrator filed a list of opt-outs it had received by the (extended) deadline of November 1, 2012. (Case 2:10-md-02179-CJB-SS Document 7989) DuWayne Mason's name does not appear on this list.

32.

On March 22, 2013, Mr. Silbert first informed Mr. Mason of the restrictions in the Medical Settlement and the fact that Mr. Silbert had failed to advise Mr. Mason of the Medical Settlement and of his failure to opt Mr. Mason out of the Medical Settlement and the restrictions of its application.

33.

Mr. Silbert and the other defendants failed to protect Mr. Mason's rights to pursue either underlying actions - the Seacor Limitation Action or Mr. Mason's individual Complaint against Seacor Marine, LLC. and thus committed acts of legal malpractice in failing to properly handle Mr. Mason's claim.

34.

Defendants are liable to Mr. Mason for the following reasons:

A. Defendants failed to properly investigate the Medical Class Action and Medical Class Settlement, or the continuing terms thereof;

B. Defendants failed to properly monitor the Class Action of which Mr. Mason was a putative class member;

C. Defendants failed to register for and therefore monitor the electronic case filing system whereby all notices of the Class Action were being filed and disseminated;

D. Defendants failed to discuss the benefits, limitations, procedures or deadlines within the Medical Settlement with Mr. Mason;

E. Defendants did not notify or otherwise alert Mr. Mason of the Medical Settlement's opt-out benefits, procedures or deadlines;

F. Defendants did not properly or timely execute and submit a Deepwater Horizon Medical Settlement Opt-Out on behalf of Mr. Mason, even though it was clear that Mr. Mason's injuries far exceeded the limited recovery available through the Medical Settlement;

G. Defendants did not exercise that degree of skill, judgment, and consideration for the welfare of Mr. Mason which Defendants, as skilled professional litigators of personal

injury lawsuits, having sole charge of the investigation, prosecution, settlement, and trial of his claim, should have utilized; and

H. Defendants committed other acts of fault, breaches of obligations, breaches of the appropriate standard of care for a professional litigator of personal injury lawsuits and other conduct as may be shown through discovery or at the trial of this matter.

35.

The foregoing acts and omissions of defendants SCOTT E. SILBERT; SILBERT & GARON, L.L.P.; hired by Mr. Mason to represent his interests in a Jones Act maritime personal injury litigation, were a legal cause of the damages sustained by Mr. Mason, which damages are listed more particularly, but not exclusively, as follows:

A. An amount equivalent to damages which Mr. Mason would have received through proper litigation of his claim at trial, including his right to:

1. Maintenance and cure

2. Jones Act "Found"

3. Past and future medical expenses

4. Past and future lost wages

5. Past and future pain and suffering

6. Past and future emotional distress

7. Maritime punitive damages

8. Any other damages that may have been shown at trial;

B. The loss of use of that money, which is the market or legal interest rate; and

C. The actual attorney's fees incurred to recover said amount.

36.

Gilsbar insures the Defendants for any liability which they have for the acts and omissions complained of herein, and is made party to this suit based upon Louisiana's Direct Action Statute (La. R.S. 22:1269), as the policy or contract of liability insurance issued by Gilsbar to Defendants SCOTT SILBERT and SILBERT & GARON, L.L.P. was issued or delivered in Louisiana, and the accident or injury subject of this suit occurred in Louisiana.

37.

CNA insures the Defendants for any liability which they have for the acts and omissions complained of herein, and is made party to this suit based upon Louisiana's Direct Action Statute (La. R.S. 22:1269), as the policy or contract of liability insurance issued by CNA to Defendants

SCOTT SILBERT and SILBERT & GARON, L.L.P. was issued or delivered in Louisiana, and the accident or injury subject of this suit occurred in Louisiana.

38.

The amount at issue is in excess of that necessary for trial by jury. Mr. DuWayne Mason is entitled to and prays for trial by jury.

**WHEREFORE**, premises considered, Mr. DuWyane Mason prays for citation and service to issue and for judgment against Defendants Scott E. Silbert; Silbert & Garon, L.L.P., Gilsbar Specialty Insurance Services, L.L.C and CNA Continental Casualty Company in such amount as is proven by the evidence at the trial of this matter, and which is just and appropriate in the premises, and further, that it be awarded all penalties and damages, including punitive damages, all as allowed by law. Mr. DuWayne Mason prays for pre- and post-judgment interest, costs, and attorney's fees, together with such other further and appropriate relief as is just and necessary under the circumstances.

Respectfully submitted this 20th day of March, 2014.

Respectfully submitted:

DODSON, HOOKS & FREDERICK, APLC

By: _____
Kenneth H. Hooks, III, Bar Roll No.: 25097
H. Price Mounger, III, Bar Roll No.: 19077
112 Flounder Road
Baton Rouge, LA 70810
Telephone: (225) 756-0222
Kenny@dodsonhooks.com
Price@dodsonhooks.com

-and-

Joseph W. Burke
**BURKE AND CESTIA**
Attorneys at Law
223 East Main Street
Post Office Box 10337
New Iberia, Louisiana 70562-0337
Phone: (337) 365-6628
Fax: (337) 365-0708

*Service information on following page*

**PLEASE SERVE:**

SCOTT E. SILBERT
SILBERT & GARON, L.L.P.
909 POYDRAS STREET, SUITE 2130
NEW ORLEANS, LA 70112

SILBERT & GARON, L.L.P.
909 POYDRAS STREET
SUITE 2130
NEW ORLEANS, LA 70112

GILSBAR SPECIALTY INSURANCE SERVICES, L.L.C.
THROUGH ITS REGISTERED AGENT FOR SERVICE
HENRY J. MILTENBERGER, JR.
2100 COVINGTON CENTRE
COVINGTON, LA 70433



FILED
MAR 2 0 2014
DEPUTY CLERK
CIVIL DISTRICT COURT

CNA CONTINENTAL CASUALTY COMPANY
THROUGH THE LOUISIANA SECRETARY OF STATE
EAST BATON ROUGE SHERIFF
P.O. BOX 3277
BATON ROUGE, LA 70821