# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

_____

No. 13-30843

_____

United States Court of Appeals
Fifth Circuit

**FILED**

May 8, 2015

Lyle W. Cayce
Clerk

**Certified as a true copy and issued
as the mandate on Jun 01, 2015**

**Attest:**

_Lyle W. Cayce_

**Clerk, U.S. Court of Appeals, Fifth Circuit**

D.C. Docket No. 2:10-MD-2179
D.C. Docket No. 2:12-CV-970

IN RE:  DEEPWATER HORIZON

_____

LAKE EUGENIE LAND & DEVELOPMENT, INCORPORATED; BON
SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY,
INCORPORATED; LFBP 1, L.L.C., doing business as GW Fins; PANAMA
CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER
FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD
LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on
behalf of themselves and all others similarly situated; HENRY HUTTO;
BRAD FRILOUX; JERRY J. KEE,

Plaintiffs - Appellees

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

Defendants - Appellants

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before BENAVIDES, PRADO, and GRAVES, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and was argued by
counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed in part and vacated in part, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that plaintiffs-appellees pay to defendants-appellants the costs on appeal to be taxed by the Clerk of this Court.

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————————

No. 13-30843

————————

United States Court of Appeals
Fifth Circuit

**FILED**

May 8, 2015

Lyle W. Cayce
Clerk

IN RE: DEEPWATER HORIZON

——————————————————————

LAKE EUGENIE LAND DEVELOPMENT, INCORPORATED; BON
SECOUR FISHERIES, INCORPORATED; FORT MORGAN REALTY,
INCORPORATED; LFBP 1, L.L.C., doing business as GW Fins; PANAMA
CITY BEACH DOLPHIN TOURS & MORE, L.L.C.; ZEKES CHARTER
FLEET, L.L.C.; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD
LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY, on
behalf of themselves and all others similarly situated; HENRY HUTTO;
BRAD FRILOUX; JERRY J. KEE,

> Plaintiffs - Appellees

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

> Defendants - Appellants

————————

Appeal from the United States District Court
for the Eastern District of Louisiana

————————

Before BENAVIDES, PRADO, and GRAVES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

This action involves the Economic and Property Damages Settlement
Agreement ("Settlement Agreement") approved by the district court on
December 21, 2012, between Appellants BP Exploration & Production, Inc., BP

No. 13-30843

America Production Company, and BP p.l.c. (collectively, "BP"), and Appellees, the certified Economic and Property Damages Class, in connection with the *Deepwater Horizon* oil spill of April 20, 2010. The Court Supervised Settlement Program ("Settlement Program" or "CSSP") was set up to compensate parties with economic losses caused by the oil spill. This specific dispute arises from the district court's order of May 20, 2013 ("May 20 Order"), approving the Final Rules Governing Discretionary Court Review of Appeal Determinations ("Final Rules") for claims processed through the Settlement Program, which has been challenged by BP.

## I. INTRODUCTION

Under the Settlement Agreement, class members may submit claims to the Settlement Program, overseen and managed by a Claims Administrator whose decisions may be reviewed upon request by an Appeal Panel. The Appeal Panel reviews, *inter alia*, briefs from the parties, the Settlement Agreement, relevant district court rulings, the claim file, the parties' submissions, and the Claims Administrator's decision. *See* Appeal Panel Rule 13 (Feb. 4, 2013) ("Appeal Panel Rules"), *available at* http://www.deepwaterhorizoneconomicsettlement.com/docs/Rules_Governing_the_Appeals_Process_-_Final.pdf. The materials presented to the Claims Administrator and Appeal Panel are not posted to the district court's civil docket but rather to a non-public Settlement Program website known as the DWH Portal. *See, e.g.*, Appeal Panel Rules 10(b), 11(b), 15, 17, 18, 23. Redacted versions of Appeal Panel decisions are made available to the public through the Settlement Program website. Appeal Panel Rule 24. Appeals in which the

No. 13-30843

compensation amount is at issue go through a baseball arbitration process,[1] and the Appeal Panel decision is considered "final." Agreement § 6.2.

The Settlement Agreement confers "continuing and exclusive jurisdiction over the Parties and their Counsel for the purpose of enforcing, implementing and interpreting" the Agreement on "the Court." Agreement § 18.1. The Agreement defines "Court" as "the United States District Court for the Eastern District of Louisiana, Judge Carl Barbier, presiding." Agreement § 38.40. The Settlement Agreement provides that "[t]he Court maintains the discretionary right to review any Appeal determination to consider whether the determination was in compliance with the Agreement. Upon reviewing such a determination, the Court shall treat the Appeal determination as if it were a recommendation by a Magistrate Judge." Agreement § 6.6.

Section 6 of the Settlement Agreement governs the claims appeal process. It leaves room for the Settlement Program to "establish additional procedures for the Appeal Process not inconsistent with Exhibit 25." Agreement § 6.3. Exhibit 25, in turn, sets out procedures for filing and briefing appeals. Exhibit 25 allows the Appeals Coordinator, with the concurrence of the Claims Administrator, to "amend and/or adopt procedures as necessary to implement Section 6 of the Agreement after providing notice and a right to comment by the BP Parties and Lead Class Counsel." Agreement, Exhibit 25.

On April 29, 2013, the Claims Administrator released Draft Rules governing the district court's review of Appeal Panel decisions, and BP responded with comments objecting to the Draft Rules' limits on appellate

---

[1] Under the baseball process, "the Claimant and the BP Parties exchange and submit in writing to the Appeal Panelist or Appeal Panel their respective proposals . . . for the base Compensation Amount they propose the Claimant should receive" and if the parties do not reach an agreement, "the Appeal Panelist or Appeal Panel must choose to award the Claimant either the Final Proposal by the Claimant or the Final Proposal by the BP Parties but no other amount." Agreement § 6.2.

3

No. 13-30843

review by the Court of Appeals and the lack of provisions requiring documents and orders to be filed on the civil docket—similar arguments to the ones made in this appeal. Class Counsel also submitted comments.

The Final Rules that were adopted by the district court through its May 20 Order are at issue before us. BP challenges the Final Rules for not providing for the docketing of requests for district court review or district court orders regarding such requests, which, it argues, compromises a right to appeal from the district court to this court and violates Federal Rule of Civil Procedure ("FRCP") 79's provisions regarding the clerk's maintenance of the civil docket. Final Rule 12 states, "The Settlement Agreement provides no right of automatic appeal to the Court. Whether the determination of an Appeal Panel will be reviewed by the Court lies solely within the Court's discretion. Review of an Appeal Panel determination will be granted only in exceptional circumstances." Several provisions of the Final Rules implicate the question of whether there is a right to appeal claim determinations from the district court to this court under the Settlement Agreement. The Final Rules provide that requests for judicial review and related documents be posted to the DWH Portal rather than on the civil docket, and that the Appeals Coordinator be responsible for sending materials to and from the district court. *See* Final Rules 7, 8, 19, 21-22. BP also challenges the Final Rules for preventing it from seeking judicial review of certain categories of awards. Final Rule 16, which was not in the Draft Rules, provides that for certain cases,[2] "no Request or Objection may be submitted and the processing of claims will not be suspended in such cases unless there is a further order of the Court." Under Final Rule 19, the Appeals Coordinator is not to submit any requests or objections for

---

[2] These cases include those identified as "Contributions/Grant Revenue for Non-Profits issue" (a.k.a. "Non-Profit Policy"), "Alternative Causation issue" (a.k.a. "Alternative Causation Policy"), or "Matching of Revenue and Expenses issue" (a.k.a. "Matching Policy").

No. 13-30843

these cases to the district court. District court decisions are posted to the DWH Portal and in redacted form on the Settlement Program's website. Final Rule 27.

To challenge the Final Rules, on June 17, 2013, BP filed a motion under FRCP 59(e) to amend the May 20 Order and the Final Rules. BP requested the court to amend the Rules to clarify (1) "that all requests for discretionary review, objections thereto, and Court orders regarding such requests will be entered into the appropriate Court docket"; (2)

> that a party may file a request for discretionary review on issues previously ruled on by the Court, that such requests must contain a clear notation that they are governed by [Final] Rule 16, that such requests will be filed in the appropriate Court docket, and that the clerk will promptly enter an order denying such requests[;]

and (3) "that a party filing a Request for Discretionary Review may append exhibits and attachments containing record evidence to requests for discretionary review."[3] The district court denied BP's motion on July 16, 2013, without elaboration, and BP then filed a Notice of Appeal on August 2, 2013, under Federal Rule of Appellate Procedure ("FRAP") 4(a)(4)(A)(iv). Class Counsel moved to dismiss the appeal. This court carried the motion to dismiss the appeal with the case.

On September 4, 2013, the Appeals Coordinator notified BP that the district court had denied BP's requests for review of three awards to non-profit organizations. In accordance with Final Rules 16 and 19, the district court did not docket the requests for review, the underlying record, or the orders denying review. These denials are the subject of the appeals in Nos. 13-31296, 13-

---

[3] According to BP, the Appeals Coordinator told BP via email that the district court would not accept requests that included any exhibits or documents attached.

No. 13-30843

31299, and 13-31302 ("Non-Profit Appeals"). Class Counsel and the Non-Profit Appeals claimants moved to dismiss those appeals. Because jurisdiction over the Non-Profit Appeals hinges on our decision with respect to the Final Rules and the availability of further review by this court of individual claim determinations that have been reviewed or denied review by the district court, we consolidated the three Non-Profit Appeals and directed all four cases to be heard and decided by the same panel. In this specific appeal, we address (1) whether we have jurisdiction over the appeal of the May 20 Order that approved the Final Rules, (2) whether there is a right to appeal claim determinations from the district court to this court under the Settlement Agreement, (3) whether the Final Rules violate any right to appeal under the Settlement Agreement, and (4) whether the district court erred in categorically precluding certain categories of cases from its review through the Final Rules.

## II. JURISDICTION OVER THIS APPEAL

As an initial matter, we must determine whether BP's notice of appeal was timely and whether we have jurisdiction over this appeal.

Under FRCP 59(e), a party may request "to alter or amend a judgment." FED. R. CIV. P. 59(e). "Such motions serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (internal quotations omitted). Class Counsel argue that BP's appeal was untimely because it did not file its notice of appeal 30 days after the May 20 Order as required by FRAP 4(a)(1)(A), and because it did not make a proper FRCP 59(e) motion to fall under the exception of FRAP 4(a)(4)(A)(iv). They argue that BP's motion was not properly brought under FRCP 59(e) because it "focused on amending the [Final] Rules themselves, not the district court's order approving them," and because it raised arguments that had already been brought before the Appeals Coordinator.

6

No. 13-30843

We find that these arguments lack merit. While it is true that BP sought to amend the Final Rules, the district court had incorporated and attached the Final Rules as part of its decision to adopt them in its May 20 Order. Thus, it was proper under FRCP 59(e) for BP to request the court to alter or amend the Final Rules, which BP believed offended its rights and violated the Settlement Agreement. While an FRCP 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment," *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004), and BP's motion did bring forth some of the arguments that had been presented to the Appeals Coordinator,[4] the motion was the first opportunity to present arguments regarding the Rules directly to the district court. It was also the first opportunity to address the alleged manifest error of law in Final Rule 16, which was not in the Draft Rules, and the new provision in Final Rule 19, which together preclude certain cases from any further review by the district court. Thus, we conclude that BP's motion to amend was proper.

As noted above, the district court adopted the Final Rules on May 20, 2013, and BP filed its motion to amend on June 17, 2013, which was timely. *See* FED. R. CIV. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). Under FRAP 4(a)(4)(A)(iv), the time to file a notice of appeal—within thirty days under FRAP 4(a)(1)(A)—started to run on July 16, 2013, when the district court issued its order denying the FRCP 59(e) motion. Thus, BP's notice of appeal filed on August 2, 2013, was timely.

---

[4] *Compare* ROA.17974-ROA.17975 (comments to Appeals Coordinator about civil docket provisions), *with* ROA.17966 (seeking the district court "to clarify that all requests for discretionary review, objections thereto, and Court orders regarding such requests will be docketed in the appropriate docket of the Court").

7

No. 13-30843

Having found that the appeal was timely, we next turn to whether we have jurisdiction over the appeal. BP invokes jurisdiction under the collateral order doctrine and 28 U.S.C. § 1292(a)(3). We find that jurisdiction is proper under the collateral order doctrine. To fall under the collateral order doctrine, "an 'order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.'" *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 171 (5th Cir. 2009) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978) (numbering added)).

This court recently invoked the collateral order doctrine to hear an appeal involving an interpretation dispute over the same Settlement Agreement. In *In re Deepwater Horizon*, 732 F.3d 326 (5th Cir. 2013) ("*Deepwater Horizon I*"), the Claims Administrator had issued a Policy Announcement regarding the consideration of revenues and expenses in the calculation of reduction in variable profit and claimants' compensation (the Matching Policy noted in Final Rules 16 and 19 and further discussed in Part V.A, *infra*), 732 F.3d at 330-31. BP alleged that the Claims Administrator misinterpreted the Settlement Agreement. *Id.* at 331. The matter was brought before a Claims Administration Panel and eventually the district court, which affirmed the Policy Announcement. *Id.* BP filed a motion to reconsider, the district court upheld the Administrator's interpretation and denied BP's motion, and BP appealed. *Id.* at 331-32.[5] This court stated that it had

---

[5] BP also "filed a breach of contract claim against the Administrator and an emergency motion for a preliminary injunction to enjoin the Administrator from implementing the Settlement in accordance with the March 5 order and instead to require the Administrator to implement BP's proposed interpretation." *Deepwater Horizon I*, 732 F.3d at 331. The district court granted the Administrator's motion to dismiss BP's contract claim, and denied BP's request for injunctive relief. *Id.* at 331-32.

8

No. 13-30843

jurisdiction over BP's appeal of the district court's order under the collateral order doctrine with the following reasoning:

> The order conclusively determined the interpretation dispute, which is completely separate from the merits of BP's liability for the oil spill, and it will be effectively unreviewable on appeal from final judgment because, at that point, the improper awards will have been distributed to potentially thousands of claimants and BP will have no practical way of recovering these funds should it prevail.

*Id.* at 332 n.3 (citing *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 766-67 (5th Cir. 1996)). Like *Deepwater Horizon I*, the adoption of the Final Rules governing the district court's discretionary review of Appeal Panel decisions was a final decision by the district court with respect to the Rules, and is separate from the merits of BP's liability. The Final Rules affect the rest of the Settlement Program's administration, given that they will govern all future reviews by the district court. Because the Final Rules preclude appeals of certain cases to the district court, and because they are silent as to appeals to this court and lack requirements to file requests or docket orders on the civil docket, they would be unreviewable from a final judgment of claim determinations were we not to review them in this case. Thus, jurisdiction over this appeal exists under the collateral order doctrine. The motion to dismiss the appeal is DENIED.[6]

## III. RIGHT TO APPEAL TO THIS COURT UNDER THE SETTLEMENT AGREEMENT

We now turn to the question of whether there is a right to appeal claim determinations from the district court to this court under the Settlement Agreement. While Class Counsel insist that the Final Rules are merely

---

[6] Because we conclude that jurisdiction is proper under the collateral order doctrine, we pretermit a determination as to whether there is also jurisdiction under § 1292(a)(3).

9

No. 13-30843

operational rules for administering the Settlement Program that should be reviewed for abuse of discretion, *see Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999), the dispute before us results from a disagreement in how the Settlement Agreement should be interpreted as to appellate review. After all, BP claims that the Final Rules do not provide for appellate review by this court, which it argues it is entitled to under the Agreement absent an express waiver. It argues that this right to appeal has been violated by the Final Rules limiting the ability to file submissions regarding judicial review on the civil docket, as well as the Final Rules categorically precluding any judicial review for certain categories of cases. Class Counsel, on the other hand, argue that there is no right of appeal of individual claim determinations under the Agreement and that the Final Rules comply with the Agreement. The crux of the problem is that the Settlement Agreement is not clear one way or another, and our circuit has not yet specifically addressed the question of how to treat a settlement agreement's silence on whether there is a right to appeal from district court decisions on individual claims to this court.

We review issues related to interpreting settlement agreements *de novo*. *Waterfowl Ltd. Liab. Co. v. United States*, 473 F.3d 135, 141 (5th Cir. 2006). It is a "well-settled rule that the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally." *Fla. Educ. Ass'n, Inc. v. Atkinson*, 481 F.2d 662, 663 (5th Cir. 1973). The Settlement Agreement provides that it "shall be interpreted in accordance with General Maritime Law." Agreement § 36.1. "A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004).

No. 13-30843

In *Deepwater Horizon I*, this court interpreted the Settlement Agreement as preserving the parties' right to appeal to this court, but did so in dictum. After finding jurisdiction to hear the appeal under the collateral order doctrine, the court opined,

> Moreover, the procedures for resolving disputes concerning the Administrator's administration of the Settlement specify that a disagreement is "referred to the Court for resolution" if it is not resolved by the Claims Administration Panel. Based on its use throughout the Settlement, the term "the Court" appears to refer to the district court. Such an interpretation of the parties' agreement would render the district court's ruling final. However, the parties clearly intended a broader interpretation of the term— one that retained their right to appeal to this court—as shown by BP's appeal and Class Counsel's failure to object.

*Deepwater Horizon I*, 732 F.3d at 332 n.3. BP relies on this heavily to argue that it has a right to appellate review of claim determinations. Class Counsel, on the other hand, claim that the conclusion was faulty, noting that

> [w]hile [they] are mindful of [the] observation that Class Counsel did not explicitly make this argument [that district court reviews are discretionary and not appealable] in response to the original appeal of [*Deepwater Horizon I*], Class Counsel did specifically raise this issue in the District Court[] [in its opposition to the motion for injunction and during the motion hearing], and strongly suggested that this Court had no jurisdiction to hear that appeal [in its brief].

After examining each of these references, we find that Class Counsel did argue that the court did not have jurisdiction over that appeal. BP asserted appellate jurisdiction under 28 U.S.C. §§ 1291, 1292, and the collateral order doctrine for the appeal of the district court's decision to uphold the Claims Administrator's interpretation. Class Counsel addressed each of these in turn to argue that there was no appealable order under these bases, and argued that jurisdiction was only proper over the dismissal of BP's separate suit

11

No. 13-30843

against the Claims Administrator pursuant to FRCP 12(b)(6). While Class Counsel did not make any arguments specific to whether there was appellate review by this court of claim determinations under the Settlement Agreement, it did not have to as the issue was not relevant in that case. We are not persuaded to follow the *Deepwater Horizon I* interpretation for the purpose of deciding the issue at hand because dictum by one panel does not bind future panels. *See Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000). In any event, the rationale for that dictum does not apply here given that Class Counsel have clearly objected to BP's appeal.

To support its position that there must be an express waiver of what is otherwise a right to appeal, BP relies on criminal and other unrelated cases for the proposition that waivers require proof of an "'intentional relinquishment or abandonment of' a 'known right,' and cannot be inferred from silence or by implication." Appellants' Br. 38 (quoting *United States v. Knowles*, 29 F.3d 947, 951 n.2 (5th Cir. 1994) (internal quotation omitted) (defining waiver in the context of conducting plain error review of the constitutionality of the Gun Free School Zones Act and noting that deviation from a legal rule is error unless there has been a waiver)) (citing *Harris v. Dallas Indep. Sch. Dist.*, 435 F. App'x 389, 396 (5th Cir. 2011) (finding that plaintiff waived discovery issue by withdrawing motion to compel discovery); *United States v. Dodson*, 288 F.3d 153, 160 (5th Cir. 2002) (considering waiver of rights under 21 U.S.C. § 851); *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 947 (5th Cir. 1983) (applying this concept of waiver to question of whether party waived its rights to no-offset agreement)). None of these cases directly address the question of whether there is a known right to appeal from district court decisions

No. 13-30843

regarding claims from settlement agreements, and thus whether this concept of waiver would apply in that context.[7]

On the other hand, Class Counsel do not show convincing authority that parties may waive appellate rights without an express waiver in the context of settlement agreements. Instead, they summarize the appeals process to show that the rules regarding appeals are "exhaustive" and that the district court's review "serves as the last step in a multi-layered claims process." They then contrast this to the relative lack of guidelines regarding the district court's discretionary review to argue that this "clearly demonstrates that the Settlement Program, not the parties, were to enact the administrative rules" and that

> [t]his deference clearly evidences that the parties intended the Claims Administrator, through the Claims Coordinator, pursuant to Section 8 of Exhibit 25 of the Settlement Agreement, to amend and/or adopt procedures as necessary for administrative rules of timing, length of appeal documents, record evidence, and filing related to discretionary review.

They also argue that "parties to a settlement are free to contract away appellate review, especially when the parties privately contract for a separately detailed appellate review within the settlement program itself." However, they cite to no source for the proposition that parties may do so

---

[7] BP also relies on *Federal Practice & Procedure*, which states, "The most likely occasion for waiver [of the right to Court of Appeals review] arises from a settlement agreement that calls for resolution of some disputed matter by the district court, coupled with an explicit agreement that the district court decision shall be final and that all rights of appeal are waived." 15A Charles Alan Wright et al., *Federal Practice and Procedure* § 3901 (2d ed. 2014). However, the idea that this is "the most likely occasion" is not an indication of an express waiver *requirement*.

No. 13-30843

without an express waiver.[8] In their motion to dismiss the appeal, Class Counsel argue,

> It is settled in this Court that a negotiated settlement that limits appellate review may be binding, and that by failing to negotiate for the inclusion of appellate review before the signing of the Settlement Agreement, BP has waived its right of appeal beyond that provided for in the Settlement Agreement; thus its appeal here is barred and should be dismissed.

For support, they cite to *Hill v. Schilling*, 495 F. App'x 480 (5th Cir. 2012) (per curiam), in which this court applied criminal cases dealing with appeal waivers in plea agreements to an interpretation of a settlement agreement, *id.* at 487 (citing *United States v. Palmer*, 456 F.3d 484, 488 (5th Cir. 2006); *United States v. Bond*, 414 F.3d 542, 546 (5th Cir. 2005); Charles Alan Wright et al., *Federal Practice and Procedure* § 3901 (2012)). The *Hill* panel dismissed the appeal as barred by the appeal waiver. *Id.* at 487-88. Yet *Hill* is not as helpful to Class Counsel as they wish because, unlike in *Hill*, *see id.* at 487, the instant case does not involve an express waiver. Favorably for the class, the court did not say that the waiver had to be an express one. Nevertheless, *Hill* was an unpublished opinion and therefore not binding precedent with respect to whether this panel should also apply criminal cases dealing with appeal

---

[8] Citing to another class action settlement, Class Counsel assert that "the rule for settling parties is to exclude any right to court appellate review on claimant-specific issues. Typically, the claims administrator's determinations are final; there may be limited review by a special master." Appellees' Br. 36-37 (citing *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 644-45 (E.D. La. 2010)). However, that settlement agreement expressly stated that certain determinations of the Claims Administrator, Gate Committee, Chief Administrator, and Special Master were "final, binding and Non-Appealable." *E.g.*, Vioxx Settlement Agreement §§ 2.6.1, 2.8, 3.2.3, 3.2.4, 4.2.7, 8.1.2, *available at* http://www.officialvioxxsettlement.com/documents/Master%20Settlement%20Agreement%2 0-%20new.pdf; *see id.* § 17.1.62 (defining "Non-Appealable" to include, *inter alia*, "any right of appeal to the MDL Court, any other Coordinated Proceedings court or any other court").

14

No. 13-30843

waivers in plea agreements to the settlement agreement context. *See* 5th Cir. R. 47.5.4.

We find that similar cases from other circuits provide guidance in relation to this question. Class Counsel seek to emphasize the Settlement Agreement's use of the word "exclusive" in § 18.1 to refer to the district court's jurisdiction, but we find that a district court having such authority in the Settlement Program does not necessarily preclude further review by this court. In *United States v. International Brotherhood of Teamsters*, 905 F.2d 610 (2d Cir. 1990), a consent decree provided that the court-appointed administrator's decisions be "'final and binding, subject to the [district] Court's review as provided herein,' and . . . further provide[d] that the district court 'shall have exclusive jurisdiction to decide any and all issues relating to the Administrator's actions or authority' under the Consent Decree," *id.* at 615 (alteration in original). The Second Circuit found that it had jurisdiction to hear the appeal because "the phrase 'exclusive jurisdiction,' read in the context of the Consent Decree, [did] not unambiguously exclude appellate review" and was instead a venue requirement. *Id.*; *see also DeLoach v. Lorillard Tobacco Co.*, 391 F.3d 551, 558 (4th Cir. 2004) ("The district court's maintenance of 'continuing and exclusive jurisdiction' over an agreement is not inconsistent with this court's exercise of appellate jurisdiction to review the district court's orders."). We interpret the "exclusive" jurisdiction conferred on the district court by the Settlement Agreement to also leave open the possibility of further review by this court.

In *Montez v. Hickenlooper*, 640 F.3d 1126 (10th Cir. 2011), a class action alleging violations of disabled prisoners' rights resulted in a consent decree that set forth a plan for the defendants to bring the state prison system into compliance and established a claims procedure for injured inmates in which claims would be reviewed by a special master, subject to review by the district

15

No. 13-30843

court, *id.* at 1129. Like the instant case, the consent decree was silent about further review by the Court of Appeals after review by the district court. *Id.* Building off *International Brotherhood*, the Tenth Circuit stated,

> We simply hold that, when a consent decree does not resolve claims itself but instead simply establishes a mechanism under which the district court will resolve claims, the parties may appeal the district court's final resolution of such claims to this court unless the consent decree contains a clear and unequivocal waiver of the right to appellate review.

*Id.* at 1132.[9] Addressing whether there was appellate jurisdiction despite the fact that litigation was still ongoing and the district court's decision was not a final judgment as to all parties, the Tenth Circuit found that it had jurisdiction over the appeal of the district court's claim determination under the collateral order doctrine. *Id.* at 1132-33. We choose to follow these other circuits' decisions in similar cases involving consent decrees to hold that, where a settlement agreement does not resolve claims itself but instead establishes a mechanism pursuant to which the district court will resolve claims, parties must expressly waive what is otherwise a right to appeal from claim determination decisions by a district court. Given that there has been no such express waiver in the instant case, the parties have preserved their right to appeal from the district court to this court. Having found this, we next consider whether the Final Rules are in violation of this right to appeal by reviewing the Rules' lack of docketing provisions.

---

[9] The *Montez* court also relied on "the somewhat analogous situation of appeals from district court orders reviewing arbitration decisions." 640 F.3d at 1132 (citing *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 830 (10th Cir. 2005) (holding that "contractual provisions limiting the right to appeal from a district court's judgment confirming or vacating an arbitration award are permissible, so long as the intent to do so is clear and unequivocal")).

No. 13-30843

## IV. FEDERAL RULE OF CIVIL PROCEDURE 79

The record for the district court's review, as determined by the Final Rules, consists of:

> (a) The Claims Administrator's Summary of Review, if one was prepared;
> (b) The decision of the Appeal Panel and its written opinion, if one was prepared;
> (c) The Initial and Final Proposals and supporting memoranda, as well as any *amicus* filings by Class Counsel submitted under the Rules Governing the Appeals Process; and
> (d) Any additional portions of the claim file specifically requested by the Court for review.

Final Rule 23. Under the Rules, requests for review are to be submitted to the Appeals Coordinator rather than to the district court clerk. Final Rule 13. The Rules also provide that the district court's decisions to deny or grant a request for review, as well as final decisions upon review, are to be communicated to the parties by the Appeals Coordinator. Final Rules 21, 22, 27. As noted above, under the process set out in the Final Rules, the records for the district court's review are not placed on the civil docket but rather on the DWH Portal and in redacted form (without personally identifying information) on the Settlement Program website.

BP argues that the district court's failure to provide for the docketing of its orders regarding requests for review jeopardizes the right to appeal to this court and violates FRCP 79, which provides for the maintenance of a civil docket by the clerk. *See* FED. R. CIV. P. 79. Class Counsel argue, on the other hand, that FRCP 79 is merely ministerial in nature and not something that should interfere with the district court's administration of a private settlement agreement.

This court has recognized that undocketed orders cannot be appealed. *In re Am. Precision Vibrator Co.*, 863 F.2d 428, 429 (5th Cir. 1989). Entry of an

No. 13-30843

order on the civil docket is a prerequisite for the clock to start running for an appeal. *See* FED. R. APP. P. 4(a)(1)(A) ("In a civil case, . . . the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from."); FED. R. CIV. P. 58(c)(2) (noting that judgment is entered "if a separate document is required, when the judgment is entered in the civil docket under Rule 79(a) and the earlier of these events occurs: (A) it is set out in a separate document; or (B) 150 days have run from the entry in the civil docket"). Class Counsel, after arguing that there is no right to appeal under the Settlement Agreement, argue in the alternative that the Final Rules have no bearing on BP's ability to appeal to this court given BP's ability to pursue the Non-Profit Appeals, in which BP docketed the district court's order denying review and then moved to supplement the record on appeal. However, leaving it to the appealing party to docket the district court's order grants that party the ability to determine the point at which the clock starts to run for the time to file a notice of appeal. We decline to endorse this approach. Instead, we conclude that the Final Rules violate the right for parties to appeal claim determinations to this court.

On this basis, we VACATE the district court's order adopting the Final Rules, and REMAND with instructions to adjust the Rules to comply with this opinion. The point at which a party seeks the district court's discretionary review is the point at which further review by this court becomes a possibility. Thus, it is at this point that requests should be docketed by the clerk so that a proper record is available in the event the case comes before this court.[10]

---

[10] We find no error in what comprises the record on district court review, as delineated by Final Rule 23.

No. 13-30843

## V. DISTRICT COURT'S DECISION TO CATEGORICALLY PRECLUDE CERTAIN CASES FROM ITS REVIEW

We next consider the question of whether the district court erred in including provisions in the Final Rules that prevent judicial review of several categories of cases. As noted above, Final Rules 16 and 19 preclude certain categories of cases from review by the district court. Specifically, requests for review and objections thereto for cases involving the Non-Profit Policy, Alternative Causation Issue, or Matching Policy are not submitted to the district court. Final Rules 16 and 19 provide that "the processing of claims will not be suspended in such cases unless there is a further order" by the district court. BP objects to Final Rules 16 and 19 on three grounds: (1) that these rules jeopardize BP's right to request judicial review of awards, (2) that the rules encumber the ability to appeal to this court, and (3) that the rules "wrongly insulate from review awards predicated on policy announcements that have been repudiated or not yet fully reviewed by this Court."

We review the district court's decision to preclude these cases from review—as part of its decision to adopt the Final Rules—for abuse of discretion since it was decided as part of its duties to manage the Settlement Program. *See Mullen*, 186 F.3d at 624. A decision premised on an error of law constitutes an abuse of discretion. *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005).

As to the first objection, we do not agree with BP's contention that the Final Rules improperly strip BP of its right to request judicial review of awards. Despite our holding above that there is a right to appellate review by this court of district court decisions regarding individual claims under the Settlement Agreement, this does not necessarily translate into the right of a party to obtain the *district court*'s review of claim determinations. Under § 18.1 of the Settlement Agreement, parties may request review by the district court

No. 13-30843

to settle "[a]ny disputes or controversies arising out of or related to the interpretation, enforcement or implementation of the Agreement." However, it is clear from § 6.6 that "[t]he Court maintains the discretionary right to review any Appeal determination," which is not a right for the parties to be granted such review. We recognize that categorically precluding certain cases may frustrate the right to seek review in that an appealing party will know before filing a request for review that the district court will not grant review over the claim determination. However, we seek to preserve the district court's discretion under the Settlement Agreement—as agreed to by the parties—to decide which cases to review. We do not intend any part of this opinion to turn the district court's discretionary review into a mandatory review. To do so would frustrate the clear purpose of the Settlement Agreement to curtail litigation.

With respect to its second contention, BP argues that the Rules "preclude the parties from requesting relief from the district court, and thus from receiving *any* claim-specific order—docketed or not." Our holding above with respect to the docketing provisions addresses this objection. When the Rules are modified in accordance with this opinion so that requests for district court review are docketed, we expect the district court's decisions to grant or deny review to also be docketed. The parties will then receive a docketed claim-specific order and their ability to appeal to this court will be preserved.

To address BP's third contention, we consider developments to the three policies subsequent to the May 20 Order, which BP contends undermines the Rules' limitations on seeking review of awards involving the three policies.

## A. Categorical Preclusion of Cases Involving the Matching Policy

BP's objection to the preclusion from judicial review of cases involving the Matching Policy is that the Final Rules have not been modified to reflect

No. 13-30843

the recent developments regarding the Matching Policy—namely, that the policy was set aside in *Deepwater Horizon I*, and has since been effectively superseded by a new policy approved by the district court. Recent developments regarding the Matching Policy muddy the waters for our review. We briefly summarize those recent developments.

In *Deepwater Horizon I*, this court set aside the Matching Policy[11] and remanded to the district court for further proceedings on the basis that the district court's interpretation of Exhibit 4C[12] of the Settlement Agreement was in need of further consideration. 732 F.3d at 339. Shortly after that ruling, per the order to issue a "narrowly-tailored" preliminary injunction, *id.* at 346, the district court ordered the Claims Administrator "to immediately suspend the issuance of any final determination notices or any payments with respect to those [business economic loss ("BEL")] claims in which the Claims Administrator determines that the matching of revenues and expenses is an

---

[11] In the Matching Policy, the Claims Administrator

stated that, for both calculation of Variable Profit and purposes of causation, he would "typically consider both revenues and expenses in the periods in which those revenues and expenses were recorded at the time," and would "not typically re-allocate such revenues or expenses to different periods," but would "however, reserve the right to adjust the financial statements in certain circumstances, including but not limited to, inconsistent basis of accounting between benchmark and compensation periods, errors in previously recorded transactions and flawed or inconsistent treatment of accounting estimates."

*Deepwater Horizon I*, 732 F.3d at 330-31.

[12] Exhibit 4C, which sets the compensation framework for business economic loss ("BEL") claims, lays out the calculation of variable profit for purposes of calculating compensation: (1) "Sum the monthly revenue over the period," then (2) "Subtract the corresponding variable expenses from revenue over the same time period." Agreement, Exhibit 4C. The interpretation issue arose from the difference in accounting methods used by claimants. Accrual-basis claimants recognize revenue "when the entity becomes entitled to receive payment, as opposed to when the payment is actually received," which "is sometimes referred to as 'matching' revenues and expenses." 732 F.3d at 333. Cash-basis claimants, on the other hand, "recognize revenue when cash from a given transaction is received and expenses when cash is paid." *Id.*

No. 13-30843

issue." *In re Deepwater Horizon*, MDL No. 2179, 2013 WL 5495266, at *1 (E.D.
La. Oct. 3, 2013). Following further input from the parties, the district court
ordered the Claims Administrator and Settlement Program to continue to
process and pay BEL claims presented on the basis of matched, accrual-basis
records. *See* Order 4, *In re Deepwater Horizon*, MDL 2179 (E.D. La. Oct. 18,
2013), ECF No. 11697. As for other BEL claims, the district court ordered the
continued temporary suspension of final determination notices and payments
"unless the Claims Administrator determines that the matching of revenues
and expenses is not an issue with respect to any such claim." *Id.* at 5.[13]

After revisiting the issue of whether the Claims Administrator correctly
interpreted the Settlement Agreement in the calculation of variable profit, the
district court found that "the provision [in Exhibit 4C] for subtracting
corresponding variable expenses requires that revenue must be matched with
the variable expenses incurred by a claimant in conducting its business, and
that does not necessarily coincide with when revenue and variable expenses
are recorded." Order 5, *In re Deepwater Horizon*, MDL 2179 (E.D. La. Dec. 24,
2013), ECF No. 12055. On this basis, the court reversed its earlier ruling
affirming the Matching Policy and remanded to the Claims Administrator
"with instructions to adopt and implement an appropriate protocol or policy for
handling BEL claims in which the claimant's financial records do not match

---

[13] The preliminary injunction was eventually extended to stay other BEL claims,
including those involving the Alternative Causation and Non-Profit Policies. *See* Order 2, *In
re Deepwater Horizon*, MDL 2179 (E.D. La. Dec. 5, 2013) ECF No. 11928 (amending the
preliminary injunction and instructing the Claims Administrator to "continue to accept BEL
claims and process said claims, but [to] temporarily suspend the issuance of final
determination notices and payments of BEL claims, pending resolution of the BEL issues
that are the subject of the pending remand [of *Deepwater Horizon I*]"). Class Counsel point
out the extent of the stay, seemingly in response to BP's argument that Final Rules 16 and
19 wrongly enforce policies, but the stay has no bearing on whether it was an abuse of
discretion for the district court to adopt Final Rules that allow for the categorical preclusion
of cases involving the policies from its review.

Case: 13-30843     Document: 00513062656     Page: 23     Date Filed: 06/01/2015
Case 2:10-md-02179-CJB-DPC     Document 14654     Filed 06/02/15     Page 25 of 30

No. 13-30843

revenue with corresponding variable expenses." *Id.* No party appealed this instruction.

On May 28, 2014, the district court dissolved the injunction involving BEL claims and ordered that a new policy—the Claims Administrator's Policy 495 ("Business Economic Loss Claims: Matching of Revenue and Expenses")— "be applied to all BEL Claims currently in the claims process at any point short of final payment." Order 2, *In re Deepwater Horizon*, MDL 2179 (E.D. La. May 28, 2014), ECF No. 12948. On June 27, 2014, in an order clarifying the application of this new policy, the district court held, *inter alia*, that a determination by the Appeals Coordinator in "appeals when the issue of matching is contested" under Policy 495 would be "final and non-appealable." Order 2, *In re Deepwater Horizon*, MDL 2179 (E.D. La. June 27, 2014), ECF No. 13076. This seems to bring Policy 495 in line with Final Rules 16 and 19— by categorically precluding these cases from district court review.

In light of the recent developments highlighted above, we are unable to decide whether the district court's decision to categorically preclude review of cases involving the Matching Policy constituted an abuse of discretion. On remand, the district court should reconsider its decision to categorically preclude these cases from its review. In doing so, the district court should consider what effect, if any, the Final Rules have on cases involving Policy 495. In the event the court is of the view that these cases should be categorically precluded from review, the court should provide a rationale for such a finding.

## B. Categorical Preclusion of Cases Involving the Alternative Causation Issue

With respect to the preclusion of cases involving the Alternative Causation Policy[14] from judicial review, BP argues that the Final Rules should

---

[14] The Alternative Causation Policy, released October 10, 2012, states as follows:

No. 13-30843

be modified to account for this court's recent holding in *In re Deepwater Horizon*, 744 F.3d 370 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 754 (2014) ("*Deepwater Horizon III*"). At issue in *Deepwater Horizon III* was whether the implementation of the Settlement Agreement was defective with respect to the Settlement Agreement's causation framework. *Id.* at 374-75. *Deepwater Horizon III* arose from the remand of *Deepwater Horizon I*. On remand, after analyzing the Settlement Agreement and Alternative Causation Policy, the district court concluded that "the language of the Settlement Agreement did not require extrinsic inquiry into causation and that the Settlement Agreement had not violated Article III, Rule 23, or the Rules Enabling Act by eschewing the need for evidence of causation." *Id.* at 374. After BP appealed this order, the *Deepwater Horizon III* majority found that "the parties explicitly contracted that traceability between the defendant's conduct and a claimant's injury would be satisfied at the proof stage, that is, in the submission of a claim, by a certification on the document that the claimant was injured by the *Deepwater Horizon* disaster." *Id.* at 376. It thus concluded that "the Settlement Agreement does not require a claimant to submit *evidence* that the claim arose as a result of the oil spill," *id.* at 376-77, and affirmed the district court's order, *id.* at 378.

---

The Settlement Agreement does not contemplate that the Claims Administrator will undertake additional analysis of causation issues beyond those criteria that are specifically set out in the Settlement Agreement. Both Class Counsel and BP have in response to the Claims Administrator's inquiry confirmed that this is in fact a correct statement of their intent and of the terms of the Settlement Agreement. The Claims Administrator will thus compensate eligible Business Economic Loss and Individual Economic Loss claimants for all losses payable under the terms of the Economic Loss frameworks in the Settlement Agreement, without regard to whether such losses resulted or may have resulted from a cause other than the Deepwater Horizon oil spill provided such claimants have satisfied the specific causation requirements set out in the Settlement Agreement.

No. 13-30843

BP argues that the Final Rules should be modified to reflect the holding in *Deepwater Horizon III* that the Settlement Agreement contains a causal-nexus requirement—that a class member's injury be plausibly traceable to the oil spill—and that "implausible claims" that do not satisfy that requirement should be addressed as they arise. Rather than argue against the policy itself,[15] BP seems to argue that the Claims Administrator has refused to enforce the Settlement Agreement's causal-nexus requirement due to a *misapplication* of the Alternative Causation Policy. However, this argument does not show how the district court's decision to preclude from its review cases based on the Alternative Causation Policy is an abuse of discretion.

Though BP does not raise this as part of its argument, the Alternative Causation Policy was also at issue in *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 754 (2014) ("*Deepwater Horizon II*"). In *Deepwater Horizon II*, BP appealed from the district court's order certifying the class action and approving the settlement. *Id.* at 795. In its appeal, BP argued, *inter alia*, that the Matching Policy and Alternative Causation Issue "permit[ted] claimants without any actual injuries caused by the oil spill to participate in the class settlement and receive payments," causing the Settlement Agreement to be in violation of Rule 23, the Rules Enabling Act, and Article III of the U.S. Constitution. *Id.* at 798. This court rejected this argument and held that the district court did not abuse its discretion in certifying the class and affirmed the class certification order. *Id.* at 821.

Considering how *Deepwater Horizon II* and *Deepwater Horizon III* did nothing to nullify or call into question the Alternative Causation Policy, but

---

[15] Indeed, as this court has previously observed, no party ever formally objected to the Policy Announcement, and the district court order that adopted the Policy Announcement was never independently appealed. *In re Deepwater Horizon*, 739 F.3d 790, 797 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 754 (2014) ("*Deepwater Horizon II*").

No. 13-30843

actually substantiated the policy, we find no error of law underlying the district court's decision to preclude cases involving the Alternative Causation Policy from its discretionary review. We thus find no abuse of discretion here.

### C. Categorical Preclusion of Cases Involving the Non-Profit Policy

BP appears to argue that we should vacate the Final Rules with respect to the Non-Profit Policy[16] because the policy was not yet definitively reviewed by this court at the time of the May 20 Order. We find no merit to this argument. The district court may adopt rules regarding the administration of a settlement agreement before the basis has been definitively reviewed by this court. BP provides no authority for a rule to the contrary. In any event, we uphold the Non-Profit Policy in the Non-Profit Appeals,[17] also decided today.

### VI. CONCLUSION

In sum, finding that we have jurisdiction over this appeal, we hold that the parties have a right under the Settlement Agreement to appeal claim determinations from the district court to this court. We also hold that the Final Rules violate this right with its lack of docketing provisions providing for a proper appeal to this court, and remand on that basis. On remand, we instruct the district court to reconsider its decision to categorically preclude cases involving the Matching Policy from its review in light of recent developments. We find no error in the decision to categorically preclude cases involving the Alternative Causation Issue from judicial review. We also find no error in the decision to categorically preclude cases involving the Non-Profit Policy. For the

---

[16] On November 30, 2012, the Claims Administrator announced the following policy: "Income received by not-for-profit entities in the form of grant monies or contributions shall typically be treated as revenue for that entity for purposes of the various required calculations under the terms of the Settlement Agreement."

[17] In the Non-Profit Appeals, the district court denied review of three claims in which awards were determined through the application of the Non-Profit Policy.

No. 13-30843

foregoing reasons, we VACATE in part and AFFIRM in part the district court's May 20 Order adopting the Final Rules, and we REMAND for further proceedings consistent with this opinion.

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

June 01, 2015

Mr. William W. Blevins
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

      **No. 13-30843     In Re: Deepwater Horizon**
                 USDC No. 2:10-MD-2179
                 USDC No. 2:12-CV-970

Dear Mr. Blevins,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                    Sincerely,

                    LYLE W. CAYCE, Clerk

                    *Sabrina B. Short*

                By: _____
                    Sabrina B. Short, Deputy Clerk
                    504-310-7817

cc:
      Mr. George Howard Brown
      Ms. Elizabeth Joan Cabraser
      Mr. Jeffrey Bossert Clark Sr.
      Mr. Miguel Angel Estrada
      Mr. Soren E. Gisleson
      Mr. Richard Cartier Godfrey
      Mr. Don Keller Haycraft
      Mr. Stephen Jay Herman
      Mr. Thomas George Hungar
      Mr. Samuel Issacharoff
      Mr. James Andrew Langan
      Mr. Scott Payne Martin
      Mr. Theodore B. Olson
      Mr. James Parkerson Roy