UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | : | |
| GULF OF MEXICO, ON APRIL 20, 2010 | : | Section J |
| | : | |
| This Document Applies to: | : | Judge Barbier |
| | : | |
| *No. 12-970, Bon Secour Fisheries, Inc., et* | : | Mag. Judge Shushan |
| *al. v. BP Exploration & Production Inc., et al.* | : | |

REPLY IN SUPPORT OF MOTION OF THE DHECC FOR RETURN
OF PAYMENTS MADE TO VERNON ALFONSO, JR. AND OTHERS

The Deepwater Horizon Economic Claims Center ("DHECC") replies to the opposition filed by Vernon Alfonso ("Alfonso") to the DHECC's motion for return of payments. In his opposition, Alfonso states that a mistake by his tax accountant resulted in a near doubling of his 2009 shrimping revenue from the correct $24,184 figure to the $46,434 Alfonso reported under oath to the DHECC. Alfonso argues, however, that there is no evidence that he intentionally misrepresented this revenue to obtain a higher payment on his DHECC seafood compensation claims.

Alfonso misconstrues the standard applicable to the equitable relief sought by the DHECC. More critically, Alfonso overlooks that he alone was the party with superior access to information about his 2009 revenue, and that he had the primary duty — guided by legal counsel experienced in the DHECC process — to ensure the accuracy of statements about his 2009 revenue to the DHECC. Restitution is the appropriate remedy here, given that Alfonso's DHECC awards were paid based on misstatements about his 2009 revenue that Alfonso was in the best position to have known.

> A. Restitution is the Appropriate Equitable Remedy to Address
> <u>Alfonso's Misrepresentations Concerning his Shrimping Revenue</u>

While admitting that he overstated his 2009 shrimping revenue to the DHECC, Alfonso says the DHECC's request for restitution should be denied because he did not purposefully misrepresent his shrimping revenue. Op. at 1-2. Citing the elements of common law fraud, Alfonso says the DHECC cannot show he intended to induce the DHECC to act on any misrepresentation when he submitted his claims. *Id.* at 2.

Alfonso's intent and the elements of common law fraud, however, need not be proven in an equitable claim for restitution, which does not depend upon a breach of any substantive duty in tort or contract. *Berger v. Dixon & Snow, P.C.*, 868 P.2d 1149, 1153 (Colo. Ct. App. 1993); Order & Reasons on Special Master's Motion for Return of Payment at 20-21 & n.15 (Doc. Rec. 12794) (rejecting argument that elements of unjust enrichment must be defined and met for the DHECC to obtain restitution from a claimant). Restitution instead is an equitable concept that deprives a party of a benefit that in good conscience he ought not to keep, even though he may have received those benefits honestly in the first instance. *Schock v. Nash*, 732 A.2d 217, 232-233 (Del. 1999).

In fact, equity "provide[s] a remedy for negligent or innocent misrepresentations: the defendant did not have to know or believe that his statement was false or to have proceeded in reckless disregard of the truth." *In re Healthsouth Corp. Shareholders Litigation*, 845 A.2d 1096, 1105-06 (Del. Ch. 2003), *aff'd.* 847 A.2d 1121 (Del. 2004). For example, in *HealthSouth*, where the company's board relied upon the market price of the company's stock to establish the value of the former CEO's shares for a stock buyback, there could be "no question" that the CEO was "the party with superior access to information and the primary duty to ensure the accuracy of the financial statements." *Id*.

- 2 -

When the proof demonstrated that the CEO signed financial statements that were inaccurate, it mattered not that the misstatements resulted from "conscious wrongdoing, negligent oversight of his subordinates, or innocent failure to catch the misdeeds or inaccuracies of his underlings." *Id*.

Here, Alfonso argues that his tax accountant made a mistake that resulted in overstatement of his 2009 shrimping revenue. Op. at 5-6. The accountant's alleged mistake, however, provides no relief for Alfonso's obligation to make restitution. Alfonso undoubtedly was the party with superior knowledge about his 2009 revenue, and he had the primary duty to ensure the accuracy of statements about that revenue to the DHECC. *Healthsouth Corp.*, 845 A.2d at 1105-06. The accountant simply prepared tax documents based on revenue information provided by Alfonso. *See* DHECC Motion at Ex. E at 78-80.

Assisted by legal counsel experienced in the DHECC program, Alfonso filed a sworn statement with the DHECC attesting to 2009 shrimping revenue that was nearly double his actual 2009 shrimping revenue. A review of his 2009 bank records or his 2009 trip tickets would have made this fact clear to Alfonso, who knew better than anyone the sources of his 2009 revenue. Alfonso was capable to perform this review, as he made clear in his declaration of May 4, 2015, where he said that recently he "confirmed that the revised fishing Schedule C was higher than [his] trip tickets and that it was mistakenly too high." Op. at Ex. A at ¶ 16. Alfonso also gathered bank documentation to support his DHECC Vessel of Opportunity claim, indicating that he knew how to obtain supporting bank records and understood the importance of reviewing such source documentation. *See* DHECC Motion at Ex. C at 4-8.

Alfonso disputes that he was dishonest in testimony provided to the DHECC, stating that he learned that "unexplained" 2009 deposits in his bank account were from Frank & Son after he saw checks produced in response to a DHECC subpoena, and that the 2009 payments were for money earned years earlier but held for his benefit.

But Alfonso does not explain how he failed to recall during his five-hour deposition or in preparation before the deposition that Frank & Son allegedly had held money for him for several years from work done in 2006, or that he requested payment of such "accumulated" money in 2009. Only when faced with cancelled checks showing the $22,250 paid in 2009 did Alfonso's story evolve to recalling that Frank & Son purportedly held this money — constituting roughly a third of his 2009 income —in trust for him for three years.

The evolution over time of a witness's testimony can be fatal to its reliability. *Kyles v Whitley*, 514 U.S. 419, 444 (1995). A party cannot create a genuine issue of fact by contradicting his own earlier statements unless the party offers "a plausible explanation for the sudden change of heart." *Richardson v Bonds*, 860 F.2d 1427, 1433 (7th Cir. 1988). Courts review whether a deponent can give "a satisfactory explanation of why the testimony is changed [and] why the later assertion should be taken seriously." *Sinskey v Pharnacia Ophthalmics, Inc.*, 982 F.2d 494, 498 (Fed. Cir. 1992), *abrogated in part on other grounds, Pfaff v. Wells Elecs.*, 525 U.S. 55, 67-68 (1998).

Here, Alfonso offers no explanation for his evolving story, or the multiple suggested excuses that Alfonso and his counsel presented to Alfonso's tax accountant, Peggy Flowers, to explain the 2009 non-shrimping revenue. Flowers testified that she refused to sign a proposed affidavit drafted by Alfonso's counsel that incorrectly stated that a software glitch

caused her to carry forward to 2009 previous Frank & Son income for Alfonso.  *See* DHECC Motion at Ex. E at 58.  She refused to sign another version of the proposed affidavit that incorrectly stated that Alfonso's aunt, a part-owner of Frank & Son, was the source who told Flowers about Alfonso's 2009 Frank & Son income.  *See* DHECC Motion at Ex. J.  Flowers did not sign that version, as she testified that Alfonso provided her with the income information.  *See* Ex. E at 78-80.  Even the affidavit Flowers signed was not accurate, as this version incorrectly stated that she does not recall the source of the information that led her to record income for Alfonso from Frank & Son in 2009, when Flowers knew that Alfonso provided her with that information.  *Id.*

Alfonso's effort to manufacture a "dispute" of fact need not be resolved, however, because ultimately it does not matter if the misstatements about Alfonso's 2009 revenue resulted from conscious wrongdoing, negligent oversight of his accountant or an innocent failure to catch inaccuracies.  *Healthsouth Corp.*, 845 A.2d at 1105-06.  The DHECC paid claims based on information that Alfonso was in the best position to know was not accurate and that nearly doubled his actual shrimping revenue.  Restitution is the appropriate remedy in this situation.

      B.     <u>Alfonso is Not Entitled to Any Funds from the DHECC</u>

Alfonso states that as a shrimper who has been harmed by the Deepwater Horizon disaster, his claims should be recalculated after subtraction of the 2009 non-shrimping revenue and he should be entitled to keep this reduced award amount.  The DHECC, however, accepted Alfonso's sworn statement about his 2009 shrimping revenue, and Alfonso changed his position only after an extensive DHECC investigation of his claims and after he was shown his own bank records that contradicted his sworn statements.  Now

that his misrepresentations have been discovered, Alfonso's attempt to disavow his prior sworn statements, and assert instead that only a smaller portion of his 2009 revenue came from shrimping should be rejected under the doctrine of judicial estoppel.

Designed to protect the integrity of the courts, judicial estoppel applies where a litigant knowingly takes a position plainly inconsistent with a prior position that had been advanced by the party and accepted by the court. *In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 552 (5th Cir. 2011). The doctrine upholds the sanctity of the oath and prevents a litigant from "playing fast and loose with the courts." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).

Here, Alfonso convinced the DHECC to accept the position that his 2009 shrimping revenue was $46,434, when in fact this was not true and his actual 2009 shrimping revenue was $24,184. After the DHECC's investigation of his claim, Alfonso explained that he "confirmed that the revised fishing Schedule C was higher than [his] trip tickets and that it was mistakenly too high." Op at Ex. A at ¶ 16. But that review should have occurred in 2012 when Alfonso and his counsel filed Alfonso's claims, not after the DHECC detected his misstatement years later. Aided by competent counsel, Alfonso alone was in the position to know that his statements were not accurate, and that his DHECC filings nearly doubled his actual 2009 shrimping revenue.

Allowing Alfonso to present a new set of accounting data now that the DHECC has detected his misstatements would encourage claimants to take a chance at submitting overstated information, knowing that they could subsequently submit different data if their overstatements were uncovered. *McNamara v. City of Chicago*, 138 F.3d 1219, 1225 (7th Cir. 1998); *Chaachou v. Am. Cent. Ins. Co.*, 151 F. Supp. 892-93 (5th Cir. 1957) (without

consequence for fraud in insurance claims, claimant would be in an "everything-to-win, nothing-to-lose proposition" where taking a chance at a fraudulent submission only could result in positive results to the dishonest claimant).

Given that Alfonso alone was in the best position to know that his sworn statements concerning his 2009 revenue were not accurate and nearly doubled his actual 2009 shrimping revenue, the Court should not accept a claim that some lesser measure of alleged loss should now be used to determine Alfonso's claims.

C.   Conclusion

The totality of the record shows that Alfonso defrauded the DHECC, and the DHECC is entitled to judgment as a matter of law. The DHECC respectfully requests that the motion for repayment be granted.

Respectfully submitted,

Patrick Juneau
Claims Administrator


By:   /s/ Kevin Colomb
Kevin Colomb
Manager of Compliance and Internal Integrity

Louis J. Freeh
Special Master


By:   /s/ Gregory A. Paw
Gregory A. Paw
Counsel to the Special Master

Dated: June 5, 2015

## **CERTIFICATE OF SERVICE**

       I hereby certify that a copy of the above and foregoing documents have been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, and that a copy of the foregoing have been served this   5th   day of    June   , 2015, by electronic mail, on the following:

       Craig Coleman
       Faegre Baker Daniels LLP
       2200 Wells Fargo Center
       90 South Seventh Street
       Minneapolis, MN 55402
       *Attorneys for Vernon Alfonso, Jr.*

       Stephen S. Kreller
       Kreller Law Firm
       757 St. Charles Ave., Suite 301
       New Orleans, LA 70130
       *Attorneys for Vernon Alfonso, Jr.*

       /s/Gregory A. Paw
       Counsel