UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **Vermillion Point LLC,** ) | CIVIL ACTION NO 2:13-cv-1072 |
|       **Plaintiff,** ) | |
| ) | JUDGE BARBIER |
| vs. ) | |
| ) | MAGISTRATE SHUSHAN |
| **BP Exploration & Production, Inc.; BP America** ) | |
| **Production Company; and BP p.l.c.;** ) | OIL POLLUTION ACT OF 1990 |
|       **Defendants.** ) | 33 U.S.C. § 2701, *et. seq* |
| ) | |
| ) | BUSINESS ECONOMIC LOSS |

**FIRST AMENDED COMPLAINT FOR DAMAGES**

**NOW COMES PLAINTIFF, VERMILLION POINT LLC**("Plaintiff" or "Vermillion Point")*,* through undersigned counsel, who does allege, aver and represent as follows:

**NATURE OF THE ACTION**

1. On or about April 20, 2010, the *Deepwater Horizon* drilling platform exploded and sank, causing a spill of over 200 million gallons of crude oil from the Macondo Well, MC-252, and resulting in the worst maritime environmental disaster in United States history.

2. On 28 April 2010, BP Exploration & Production Inc. was deemed the responsible party under OPA, 33 U.S.C. §2714

3. Plaintiff has suffered economic injury, damage and/or losses as a result of the oil spill. This Complaint asserts claims under the Oil Pollution Act of 1990 ("OPA"), seeking damages arising from the oil spill, the oil spill's environmental devastation, and the economic losses Plaintiff has suffered resulting from and due to the oil spill.

**THE PARTIES, JURISDICTION AND VENUE**

4. Plaintiff, VERMILLION POINT LLC, is a business that is domiciled in Illinois, with its principle place of business/operations in Chicago, Illinois, in the county of Cook.

5. Vermillion Point brings these claims pursuant to Federal General Maritime Law including/and/or the Oil Pollution Act of 1990 ("OPA"), 33 USC §2701, *et seq.*

6. Jurisdiction exists before this Court pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction."

7. Jurisdiction also exists before this Court pursuant to the Oil Pollution Act, 33 U.S.C. § 2717(b) (the "OPA").

8. Defendant, BP Exploration & Production, Inc. ("BP Exploration") is a Delaware corporation with its principal place of business in Warrenville, Illinois.  BP Exploration was designated as a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution of 1990, 33 U.S.C. §2714.  This court has personal jurisdiction over BP Exploration, because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

9. Defendant, BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

10. Defendant BP p.l.c. is a British public limited company with its corporate headquarters in London, England.  BP p.l.c. is the global parent company of the worldwide business operating under the "BP" logo.  BP p.l.c. operates its various business divisions, such as the "Exploration and Production" division within BP Exploration and BP America, through vertical business arrangements aligned by product or service groups.  BP p.l.c.'s operations are worldwide, including in the United States.  Defendants BP Exploration and BP America are

wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally. Plaintiffs further adopt and incorporate by reference all jurisdictional allegations against BP p.l.c. set forth in Paragraphs 212-218 of the Amended B1 Master Complaint, Document No. 1128 filed in MDL No. 2179, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010.*

11. BP Exploration, BP America, and BP p.l.c. are generally referred to herein collectively as the "BP Defendants" or "BP."

12. Defendant, Transocean Holdings, LLC ("Transocean") is a Delaware corporation with its principal place of business in Houston, Texas. Transocean has been found to be at fault under general maritime law by the Court in this matter. This Court has personal jurisdiction over Transocean, because Transocean is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

13. Defendant, Halliburton Energy Services, Inc. ("Halliburton") is a Delaware corporation with its principal place of business in Houston, Texas. Halliburton has been found to be at fault under general maritime law by the Court in this matter. This Court has personal jurisdiction over Halliburton, because Halliburton is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

14. Venue is proper in this jurisdiction because the Defendants' actions, inactions, and failures directly and proximately caused the damage and harm to the Plaintiff in this jurisdiction.

## FACTUAL BACKGROUND AND PRESENTMENT

15. Plaintiff adopts and incorporates as if fully restated herein the factual allegations, causes of action, and prayer for relief, raised in the Amended B1 Master Complaint, Document

No. 1128 filed in MDL No. 2179, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (the "MDL Complaint").

16. Plaintiff further adopts and incorporates as if reinstated herein all factual allegations and information contained in the Plaintiff Profile Form filed by Plaintiff.

17. Plaintiff further adopts and incorporates as if fully stated herein Plaintiffs' Supplemental and Amended Responses to Phase One Written Discovery Requests, dated 8 October 2011; Amended Response to Phase One Request for Admission No. 76, dated 27 December 2011; and Supplemental and amended Responses to Phase One Interrogatories Nos. 6, 7 and 17, dated 14 December 2012.

18. On 20 April 2010, a well blowout occurred on the oil rig *Deepwater Horizon* in the Gulf of Mexico. The uncontrolled blowout caused explosions and a raging fire aboard the *Deepwater Horizon* rig.

19. After burning for two (2) days, the *Deepwater Horizon* rig sank, commencing an oil spill on unprecedented proportion that interfered with, damaged, depleted, and destroyed, offshore, marine and coastal environments in the Gulf of Mexico, Louisiana, Mississippi, Alabama, Texas and Florida. Many Gulf of Mexico seafood specifies and marine life including blue crab were decimated.

20. As a direct and foreseeable result of the oil spill and its devastating impact on the marine and coastal environments, markets pertaining to commercial and residential developments plummeted.

21. Vermillion Point is a Real Estate Developer. Vermillion Point acquires premiere land and property along the Gulf Coast, constructs high-end residential and/or commercial housing on the properties ("properties"), and then sells the properties for a profit. Prior to the oil

spill, Vermillion Point was extremely successful in adhering to and implementing this profitable business plan.  Prior to the oil spill, these properties were consistently high in demand.

22.     The oil spill damaged, destroyed or otherwise rendered physically unavailable to Vermillion Point the Gulf seafood property or resources that Vermillion Point had a right to put to commercial use.  As a foreseeable result, the oil spill's devastating and catastrophic effect on the Gulf Coast caused Vermillion Point to incur high property carrying costs as Vermillion Point could not sell the properties.

23.     Predictably, Vermillion Point lost profits and revenues it would have earned but for the oil spill.

24.     BP's negligent acts or omissions were a substantial factor in bringing about this injury and without which no harm would have been incurred.

25.     Vermillion Point has made every reasonable effort to mitigate its losses over the Claim Period based on oil spill's foreseeable effects.  All proactive mitigation efforts undertaken by Vermillion Point was futile as property carrying costs continue to increase.  Additional proactive mitigation efforts such as renting the properties has caused wear and tear on the properties.

26.     Vermillion Point has and continues to suffer economic losses.  Vermillion Point's economic losses were due to the harm to the Gulf that resulted from the spill.

27.     Vermillion Point's economic losses were due to the oil spill and its catastrophic effects on the Gulf.  Vermillion Point would not have experienced this loss in profits had the spill not occurred.  Moreover, Vermillion Point's lost earnings and increase in costs/expenses more likely were caused by the oil spill than any other possible causes.

## PRESENTMENT

28. The party responsible for the spill is required to fully compensate damages incurred as a result of the spill. 33 U.S.C. § 2702(a). Under 33 U.S.C. § 2702(b)(2)(E), "[d]amages equal to the loss of profits or earning capacity due to the injury, destruction, or loss of real property, personal property or natural resources" are recoverable by "any claimant", including Crabdaddys.

29. As a designated responsible party under OPA, it was BP's responsibility to establish a procedure for the payment or settlement of claims. On or about April 2010 through 22 August 2010, BP posted advertisements and accepted presentment of claims. Crabdaddys did not present a claim for damages to the "Original" BP claims presentation facility.

30. To fulfill its statutory obligations, BP created the Gulf Coast Claims Facility ("GCCF") on or about 23 August 2010. The GCCF was administered by Kenneth Feinberg and the Feinberg Rozen LLP law firm. The GCCF handled presentment and payment of claims on BP's behalf from 23 August 2010 through 3 June 2012.

31. **Vermillion Point's Presentment.** On 20 December 2012, Vermillion Point made "presentment" of its Claim in accord with 33 USC §§ 2702(b) and 2713, by submitting its Loss of Profits or Impairment of Earning Capacity for Businesses claim with the BP Claims Program.

32. All pertinent sections of the "BP Claim Form" (provided by BP on the BP Claims Programs' website) were filled out in its entirety with the requisite information for BP to accept or deny its claim by including a "sum certain" of the amount of damages at the time of presentment caused by the BP Deepwater Horizon Incident and subsequent oil spill.

33. Additionally, the claim was specific in that it included a description of the nature and extent of damages and evidence supporting the claim. Evidence supporting the claim provided to the BP Claims Program with the claim included: sales data from 2006 to 2011,

broker agreements, federal income tax returns, maps identifying the location of the property, organizational documents, and a business economic loss calculation that provided BP adjustors with a step by step analysis or calculation of Vermillion Point's "sum certain" damages.

34. Vermillion Point's economic loss calculation methodology is acceptable for OPA purposes.

35. Vermillion Point's economic loss calculation methodology included a "sum certain". The "sum certain" presented to BP was calculated based on the difference in the average selling price per square foot of homes sold in 2009 and 2011. This difference was then applied to the square footage of Vermillion Point's property. This calculation is sufficient to justify the carrying costs Vermillion Point has incurred as a result of the oil spill.

36. Vermillion Point's claim form and the supporting documentation referenced above were filed via electronic mail to bpclaimsprogram@bp.com. Bpclaimsprogram@bp.com is the electronic mail address to file claims with the BP Claims Program.

37. On 5 January 2013, the BP Claims Program acknowledged receipt of Vermillion Point's claim form for opt out claimants or excluded claimants. Vermillion Point's assigned claim identification number is 1001516-01.

38. To date, the BP Claims Program has not sent any deficiency letters.

39. To date, the BP Claims Program has not denied the claim or otherwise has failed to satisfy within 90 days of presentment. The 90 day presentment period expired on 20 March 2013.

40. Per 33 U.S.C. § 2713(a), presentment of a claim for damages enumerated in OPA is a jurisdictional requirement. *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.,* 51 F.3d 235 (11th Cir. 1995). The OPA claimant's request must be made in writing for a sum certain for

compensation for damages or removal costs resulting from an incident.  33 U.S.C. § 2701(3). OPA claims must be specific and include the exact amount of damages, a description of the nature and extent of damages, and evidence to support the claim.  *Johnson v. Colonial Pipeline Co.,* 830 F. Supp 309 (E.D. Va. 1993).

41. Prior to the institution of this lawsuit, presentment was made to BP.  BP through the BP Claims Program has never contested the validity of presentment verbally and/or in writing.

42. Vermillion Point has complied with OPA presentment requirement and has established its lost profits were directly caused by the BP Deepwater Horizon incident and subsequent oil spill.  As Vermillion Point has complied with OPA, Vermillion Point now pleads for all relief it is justly entitled to.

## CLAIMS FOR RELIEF

43. Plaintiff adopts and incorporates as if restated herein, all claims for relief raised in the MDL Complaints against the Defendants as responsible parties under the Oil Pollution Act, 33 USC §2701, et seq., which holds responsible parties liable to plaintiffs for removal costs and damages arising out of the following:

  a. Loss of Natural Resources;

  b. Loss or Damage to Real or Personal Property;

  c. Subsistence Use;

  d. Loss of Revenues;

  e. Loss of Profits and/or Earning Capacity; and

  f. Loss of Public Services.

44. Plaintiff adopts and incorporates as if restated herein, all claims for relief raised in

the MDL Complaints against all defendants identifying General Maritime Law causes of action and claims for relief relating to the following:

    a.    Negligence; and

    b.    Gross Negligence and Willful Misconduct.

45. Plaintiff adopts and incorporates as if restates herein, all claims for relief raised in the MDL Complaints against all defendants for Punitive Damages arising out of willful and wanton misconduct and/or gross negligence as alleged and described in the MDL Complaints.

## PRAYER FOR RELIEF

44. WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, and *in solido,* as follows:

    a.    Economic and compensatory damages in amounts to be determined at trial;

    b.    Punitive Damages;

    c.    Pre-judgment and post-judgment interest at the maximum rate allowable by law;

    d.    Reasonable claims preparation expenses;

    e.    Attorneys' fees;

    f.    Costs of litigation; and

    g.    Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

## REQUEST FOR TRIAL BY JURY

45. Plaintiff[s] request that the above and foregoing be heard at trial by a jury of peers.

    Respectfully submitted,

    **DEAN LAW FIRM**

                    */s/ J. Christopher Dean*
                    J. Christopher Dean
                    Texas Bar No. 00793596
                    Federal Bar No. 266069
                    Email: dean@jamesdeanlaw.com
                    T. Danielle Ross
                    Texas Bar No. 24070530
                    Federal Bar No. 1102102
                    Email: ross@jamesdeanlaw.com
                    17225 El Camino Real, Suite 190
                    Houston, Texas 77058
                    T: 281-280-8900
                    F: 281-280-8901

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of June, 2015.

      Further, service of process on Defendants Transocean and Halliburton shall be made by waiver, which will be requested simultaneous with this filing.

                    */s/ J. Christopher Dean*
                    J. Christopher Dean