UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Mark Naquin Jr., and Mark's Oyster & Seafood Co., LLC,<br>    Plaintiff,<br><br>vs.<br><br>BP Exploration & Production, Inc.; BP America Production Company; and BP p.l.c.; Halliburton Energy Services, Inc.; and Sperry Drilling Services, a division of Halliburton Energy Services, Inc.<br>    Defendants. | CIVIL ACTION NO. 2:13-cv-1073<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN<br><br>OIL POLLUTION ACT OF 1990<br>33 U.S.C. § 2701, *et. seq.*<br><br>BUSINESS ECONOMIC LOSS & REAL PROPERTY DAMAGE |

## FIRST AMENDED COMPLAINT FOR DAMAGES

NOW COMES PLAINTIFFS, MARK NAQUIN JR., AND MARK'S OYSTER & SEAFOOD CO., LLC (collectively referred to as "Plaintiffs") through undersigned counsel, who does allege, aver and represent as follows:

### NATURE OF THE ACTION

1. On or about April 20, 2010, the *Deepwater Horizon* drilling platform exploded and sank, causing a spill of over 200 million gallons of crude oil from the Macondo Well, MC-252, and resulting in the worst maritime environmental disaster in United States history.

2. On 28 April 2010, BP Exploration & Production Inc. was deemed the responsible party under OPA, 33 U.S.C. §2714

3. Plaintiff has suffered economic injury, physical damage to its real property, damage and/or losses as a result of the oil spill. This Complaint asserts claims under the Oil Pollution Act of 1990 ("OPA"), seeking damages arising from the oil spill, the oil spill's environmental devastation, and the economic losses Plaintiff has suffered resulting from and due to the oil spill.

1 | P a g e

**THE PARTIES, JURISDICTION AND VENUE**

4. Plaintiff, MARK'S OYSTER AND SEAFOOD CO., LLC, is a business that is domiciled in Louisiana, with its principle place of business/operations in Montegut, Louisiana, in the parish of Terrebonne.

5. Plaintiff, Mark Naquin Jr., is the principal and owner of Mark's Oyster and Seafood Co., LLC. Mark Naquin Jr.'s principle place of business/operations is in Montegut, Louisiana, in the parish of Terrebonne.

6. Plaintiffs bring these claims pursuant to Federal General Maritime Law including/and/or the Oil Pollution Act of 1990 ("OPA"), 33 USC §2701, *et seq.*

7. Jurisdiction exists before this Court pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction.

8. Jurisdiction also exists before this Court pursuant to the Oil Pollution Act, 33 U.S.C. § 2717(b) (the "OPA").

9. Defendant, BP Exploration & Production, Inc. ("BP Exploration") is a Delaware corporation with its principal place of business in Warrenville, Illinois. BP Exploration was designated as a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution of 1990, 33 U.S.C. §2714. This court has personal jurisdiction over BP Exploration, because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

10. Defendant, BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana,

does business in Louisiana, and has a registered agent in Louisiana.

11. Defendant BP p.l.c. is a British public limited company with its corporate headquarters in London, England. BP p.l.c. is the global parent company of the worldwide business operating under the "BP" logo. BP p.l.c. operates its various business divisions, such as the "Exploration and Production" division within BP Exploration and BP America, through vertical business arrangements aligned by product or service groups. BP p.l.c.'s operations are worldwide, including in the United States. Defendants BP Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally. Plaintiffs further adopt and incorporate by reference all jurisdictional allegations against BP p.l.c. set forth in Paragraphs 212-218 of the Amended B1 Master Complaint, Document No. 1128 filed in MDL No. 2179, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010.*

12. BP Exploration, BP America, and BP p.l.c. are generally referred to herein collectively as the "BP Defendants" or "BP."

13. Defendant, Halliburton Energy Services, Inc. is a Delaware corporation with its principal place of business in Houston, Texas. Halliburton is registered to do and does business in the State of Louisiana. Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations on board the Deepwater Horizon, as well as onshore engineering support for those operations.

14. Halliburton division Sperry Drilling Services (formerly Sperry Sun Drilling Services) was responsible for mudlogging personnel and equipment on the Deepwater Horizon, including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud flow in and out of the well, mud gas

levels, and pressure fluctuations. "Halliburton" shall refer to both Halliburton Energy Services, Inc. and its Sperry division.

15. Defendant, Transocean Holdings, LLC ("Transocean") is a Delaware corporation with its principal place of business in Houston, Texas. Transocean has been found to be at fault under general maritime law by the Court in this matter. This Court has personal jurisdiction over Transocean, because Transocean is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

16. Venue is proper in this jurisdiction because the Defendants' actions, inactions, and failures directly and proximately caused the damage and harm to the Plaintiff in this jurisdiction.

## FACTUAL BACKGROUND AND PRESENTMENT

17. Plaintiffs adopt and incorporate as if fully restated herein the factual allegations, causes of action, and prayer for relief, raised in the Amended B1 Master Complaint, Document No. 1128 filed in MDL No. 2179, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (the "MDL Complaint").

18. Plaintiffs further adopt and incorporate as if reinstated herein all factual allegations and information contained in the Plaintiff Profile Form filed by Plaintiffs.

19. Plaintiffs further adopt and incorporate as if fully stated herein Plaintiffs' Supplemental and Amended Responses to Phase One Written Discovery Requests, dated 8 October 2011; Amended Response to Phase One Request for Admission No. 76, dated 27 December 2011; and Supplemental and amended Responses to Phase One Interrogatories Nos. 6, 7 and 17, dated 14 December 2012.

20. On 20 April 2010, a well blowout occurred on the oil rig *Deepwater Horizon* in

the Gulf of Mexico. The uncontrolled blowout caused explosions and a raging fire aboard the *Deepwater Horizon* rig.

21. After burning for two (2) days, the *Deepwater Horizon* rig sank, commencing an oil spill on unprecedented proportion that interfered with, damaged, depleted, and destroyed, offshore, marine and coastal environments in the Gulf of Mexico, Louisiana, Mississippi, Alabama, Texas and Florida. Many Gulf of Mexico seafood specifies and marine life including blue crab were decimated.

22. As a direct and foreseeable result of the oil spill and its devastating impact on the marine and coastal environments, production and associated activities in the Gulf of Mexico pertaining to Gulf of Mexico industries were significantly damaged, resulting in economic losses for businesses and oyster leaseholders like Mark's Oyster and Seafood Co., LLC and Mark Naquin Jr.

23. Mark's Oyster and Seafood Co., LLC is a primary seafood processor, an entity or business that receives, prepares, grades, packs, and stores seafood for transportation from commercial fisherman, landing sites, and commercial wholesale or retail dealers.

24. Mark's Oyster and Seafood Co., LLC specializes in oysters. Mark Naquin Jr., the principal and owner of Mark's Oyster and Seafood Co., LLC, is the valid leaseholder of over 6,371 acres of oyster leases. Mark Naquin Jr. and Mark's Oyster and Seafood Co., LLC cultivated, developed and grew oysters on Mark Naquin Jr.'s leases. Mark Naquin Jr. leased or subleased these acres from Apache Louisiana Minerals, LLC.

25. Prior to the oil spill, Plaintiffs, as the valid and lawful oyster leaseholder, made and continued to make significant improvements to its oyster leases.

26. Mark's Oyster and Seafood Co., LLC contracted with commercial fishermen who

agreed to harvest oysters on Bedrock Seafood's oyster leases and then sell each oyster sack they harvested to Mark's Oyster and Seafood Co., LLC.  Mark's Oyster and Seafood Co., LLC then graded, prepared, packaged and then sold oysters to various seafood related vendors for profit.

27. The oil spill damaged, destroyed or otherwise rendered physically unavailable to Plaintiffs the Gulf property or resources that Bedrock Seafood had a right to put to commercial use.  As a foreseeable result, the oil spill's devastating decimating effect on oyster leaseholds, Plaintiffs incurred: (a) decreased sales; (b) decreased customers; (c) increased costs of goods sold; (d) reduction in the availability of Gulf seafood products, including oysters; (e) increased costs; (f) lost long-standing customer and other like business relationships; (g) inability to expand the business; (h) decreased profits, and (i) physical damage to its real property, its oyster leases.

28. SCAT data confirms petroleum, oil and other hydrocarbons from the oil spill polluted and thereby caused damage to Plaintiffs' oyster leases.

29. Plaintiffs have made every reasonable effort to mitigate its losses over the Claim Period based on all predicaments the oil spill has caused.  All proactive mitigation efforts undertaken by Plaintiffs were futile as the business continues to face challenges.  Additional proactive mitigation efforts likewise have not put the business back where it should have been be prior to the oil spill.

30. As a result of the oil spill and its catastrophic effects on the areas where Plaintiffs' oyster leases are located, Plaintiffs have and continue to suffer economic losses.  Plaintiffs' economic losses are directly linked to the harm caused by the oil spill.

31. Plaintiffs' economic losses were due to the oil spill and its catastrophic effects on the Gulf seafood populations.  Plaintiffs would not have experienced this loss in profits had the

spill not occurred. Moreover, Plaintiffs' lost earnings more likely were caused by the oil spill than any other possible causes.

## **PRESENTMENT**

32. The party responsible for the spill is required to fully compensate damages incurred as a result of the spill. 33 U.S.C. § 2702(a). Under 33 U.S.C. § 2702(b)(2)(E), "[d]amages equal to the loss of profits or earning capacity due to the injury, destruction, or loss of real property, personal property or natural resources" are recoverable by "any claimant", including Crabdaddys.

33. As a designated responsible party under OPA, it was BP's responsibility to establish a procedure for the payment or settlement of claims. On or about April 2010 through 22 August 2010, BP posted advertisements and accepted presentment of claims. Crabdaddys did not present a claim for damages to the "Original" BP claims presentation facility.

34. To fulfill its statutory obligations, BP created the Gulf Coast Claims Facility ("GCCF") on or about 23 August 2010. The GCCF was administered by Kenneth Feinberg and the Feinberg Rozen LLP law firm. The GCCF handled presentment and payment of claims on BP's behalf from 23 August 2010 through 3 June 2012.

35. **Plaintiffs' First Presentment.** On or around 15 July 2011, Plaintiffs submitted its Lost Earnings or Profits claim and Real Property Interest claim with the GCCF. Plaintiffs' claimant identification number was 01147052.

36. Plaintiffs' GCCF claim was clear and precisely provided the GCCF with the requisite information for the GCCF (BP's agent) to accept or deny its claim by including a "sum certain" of the amount of damages at the time of presentment caused by the BP Deepwater Horizon Incident and subsequent oil spill.

37. Additionally, Plaintiffs' GCCF claim included a description of the nature and extent of damages and evidence supporting the claim including: a) an overview of Plaintiffs' business; b) the impact of the Gulf Spill; c) the methodology calculation; d) federal income tax returns; and e) a detailed economic loss model including the summary of loss, graphs of lost sales, and Plaintiffs' loss projection; f) Plaintiffs' oyster trip tickets from the Louisiana Department of Wildlife and Fisheries; g) the location of Plaintiffs' oyster leases; h) oyster lease rental receipts; i) copies of Plaintiffs' oyster leases; and j) a detailed PowerPoint presentation identifying the location of Plaintiffs' oyster leases, the oyster lease identification numbers, and the number of acreage per each oyster lease.

38. The referenced above supporting data and/or evidence filed with Plaintiffs' claims was more than enough for GCCF (BP's agent) to accept or deny Plaintiffs' claims.

39. Plaintiffs likewise provided supporting documentation establishing the lost income from Plaintiffs' oyster leases. This data likewise was more than enough for GCCF (BP's agent) to accept or deny Plaintiffs' claims.

40. Moreover, the calculation methodology provided the nexus between Plaintiffs' real property damage to its oyster leases and the negative economic impact that was caused by the oil spill.

41. GCCF never denied Plaintiffs' business economic loss (loss of profits and/or earning capacity) and real property damage claims.

42. On or about 3 March 2012, the proposed settlement between BP and the Plaintiffs' in the MDL No. 2179 ("the Settlement Agreement") was published. On 21 December 2012, the Court gave final approval of the Economic and Property Damages Settlement of the Settlement Agreement.

43. Plaintiffs' business is a type of entity recognized in the Class Action Settlement in the United States Court for the Eastern District of Louisiana. Plaintiffs' are eligible under the Settlement as a Seafood Wholesaler and Primary Seafood Processor.

44. Moreover, per ¶ 4.2.5 of the Settlement Agreement:

> "Economic Class Members with expired offers from the GCCF are not eligible for transition payments, but can file a Claim in the Settlement program. Economic Class Members with **expired offers from the GCCF** who Opt Out of the Economic Class **shall be deemed to have satisfied the presentment requirements under the Oil Pollution Act of 1990**."

45. Moreover, Plaintiffs' oyster leases are recognized in the Class Action Settlement in the United States Court for the Eastern District of Louisiana. Plaintiffs are eligible under the Settlement as an oyster leaseholder.

46. Plaintiffs' validly presented its claim to the GCCF.

47. **Plaintiffs' Second Presentment**. On or around 14 December 2012, Plaintiffs filed its Oyster Leaseholder Lost Interest and Lost Income claims with the Deepwater Horizon Economic Claims Center pursuant to the Settlement Agreement. Plaintiffs' claims were presented in accordance with all settlement agreement rules and in accordance with 33 USC §§ 2702 and 2713.

48. Because Plaintiff previously asserted claims against the responsible party through its prior claim filed with the GCCF, the presentment on or about 14 December 2012 was made re-made out of an abundance of caution and pursuant to this Court's rulings as enumerated in the Settlement Agreement.

49. Mark Naquin Jr.'s DHECC claimant identification number is 10015628.

50. Mark Naquin Jr.'s Oyster Leaseholder Lost Interest Claim identification numbers are 118135 and 137622.

51. Mark's Oyster and Seafood Co. LLC's DHECC claimant identification number is 100038580.

52. Mark's Oyster and Seafood Co. LLC's Oyster Leaseholder Lost Income Claim identification number is 40784.

53. All pertinent sections of the claims were filled out in its entirety with the requisite information for DHECC to accept or deny its claim by including a "sum certain" of the amount of damages at the time of presentment caused by the BP Deepwater Horizon Incident and subsequent oil spill.

54. Additionally, the claim was specific in that it included a description of the nature and extent of damages and evidence supporting the claim.  Evidence supporting the claim provided to the DHECC with the claim were the valid oyster leases along with a detailed PowerPoint presentation showing the DHECC where each lease is located.  In an effort to be as precise as possible, Bedrock Seafood likewise provided a biological survey analysis of the oyster leases which identified the land and water acreage.  DHECC adjustors have more information than is necessary per the Settlement Agreement's requirements.

55. Plaintiffs likewise provided a biological survey area analysis.

56. The biological study area analysis calculated the net acres compensable under the Settlement Agreement's Seafood Program.

57. The biological study area analysis defined the approximate boundaries of the areas in question to distinguish state oyster leases from Plaintiffs' private oyster lease.

58. The biological study area analysis' methodology, terminology, and a detailed explanation of the studies' findings were provided to the DHECC as supporting documentation and evidence of Mark Naquin Jr.'s oyster leaseholder lost interest claim.

59. Specific individual sections, maps, and surveys identifying all oyster leaseholder private net acreage were likewise provided as supporting documentation evidence of Mark Naquin Jr.'s oyster leaseholder lost interest claim.

60. DHECC never objected to the submitted biological study areas identifying the Plaintiffs' net private oyster lease acreage compensable under the Settlement Agreement's Seafood Program.

61. The documentation referenced above conclusively proves Plaintiffs' were the valid and lawful lessees of the net oyster lease acreage claimed for when the oil spill occurred. Moreover, the documentation referenced above conclusively proves Plaintiffs' oyster leases suffered real property damage.

62. The Settlement Agreement accounts for private oyster leases. All documentation required in Exhibit 10 of the Settlement Agreement has been provided to the DHECC.

63. Despite proof that Plaintiffs were and continue to be the valid lessee of the oyster leases submitted with its oyster leaseholder lost interest and lost income claims, frequently asked question ("FAQ") number 190 regarding private oyster leases on the DHECC's website states the following:

> "However, **while private leases are included in the Settlement Class**, certain private leases may not be eligible to receive payment under the Seafood Compensation Program, and thus those oyster leaseholders will have their associated Oyster Leaseholder Interest Claims in connection with such private leases **Expressly Reserved**… Claimant's Oyster Leaseholder Interest claims and Oyster Leaseholder Lost Income claims arising out of any Louisiana, Florida, Mississippi or Texas oyster lease without a State-issued lease ID number **are Expressly Reserved Claims** under the Settlement Agreement, such that they are neither compensated in nor released by the Economic Loss and Property Damages Settlement or the Individual Release."

64. Despite acknowledging that "private leases are included in the Settlement

Agreement", the remaining language in FAQ No. 190 is not.

65. The Louisiana Department of Wildlife and Fisheries is the Louisiana State Agency that regulates commercial fishing and oyster leases.

66. The Louisiana Department of Wildlife and Fisheries does not issue state identification numbers to private oyster leases.

67. Plaintiffs would show there is no precedent an FAQ can modify, amend, and/or change a settlement agreement.

68. Therefore, despite the fact that the Settlement Agreement makes no reference or mention of most of the language in FAQ No. 190, Plaintiffs file this lawsuit to protect its "Reserved Claim".

69. Per 33 U.S.C. § 2713(a), presentment of a claim for damages enumerated in OPA is a jurisdictional requirement. *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.,* 51 F.3d 235 (11th Cir. 1995). The OPA claimant's request must be made in writing for a sum certain for compensation for damages or removal costs resulting from an incident. 33 U.S.C. § 2701(3). OPA claims must be specific and include the exact amount of damages, a description of the nature and extent of damages, and evidence to support the claim. *Johnson v. Colonial Pipeline Co.,* 830 F. Supp 309 (E.D. Va. 1993).

70. Prior to the institution of this lawsuit, presentment was made to BP via the GCCF and/or BP on at least two (2) occasions. The GCCF through Mr. Feinberg (Feinberg Rozen), John McCutcheon (Brown Greer) and/or Krista Friedrich (Feinberg Rozen) never contested the validity of presentment verbally and/or in writing. Likewise, the DHECC has never contested the validity of presentment verbally and/or in writing.

71. Paragraph 7.3.2 of the Settlement Agreement states:

> "Regardless of whether the Agreement becomes effective, **Claims** with a sum certain and some documentation and/or other proof that are **submitted to the Settlement Program shall be deemed to satisfy presentment and all requirements of 33 U.S.C. § 2713**."

72. Per the Settlement Agreement's language stated above, Plaintiffs have complied with OPA presentment requirement and has established its lost profits were directly caused by the BP Deepwater Horizon incident and subsequent oil spill. As Plaintiffs have complied with OPA, Plaintiffs now plead for all relief it is justly entitled to.

## CLAIMS FOR RELIEF

73. Plaintiff adopts and incorporates as if restated herein, all claims for relief raised in the MDL Complaints against the Defendants as responsible parties under the Oil Pollution Act, 33 USC §2701, et seq., which holds responsible parties liable to plaintiffs for removal costs and damages arising out of the following:

   a. Loss of Natural Resources;

   b. Loss or Damage to Real or Personal Property;

   c. Subsistence Use;

   d. Loss of Revenues;

   e. Loss of Profits and/or Earning Capacity; and

   f. Loss of Public Services.

74. Plaintiff adopts and incorporates as if restated herein, all claims for relief raised in the MDL Complaints against all defendants identifying General Maritime Law causes of action and claims for relief relating to the following:

   a. Negligence; and

   b. Gross Negligence and Willful Misconduct.

75. Plaintiff adopts and incorporates as if restates herein, all claims for relief raised in

the MDL Complaints against all defendants for Punitive Damages arising out of willful and wanton misconduct and/or gross negligence as alleged and described in the MDL Complaints.

## PRAYER FOR RELIEF

75. WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, and *in solido,* as follows:

   a. Economic and compensatory damages in amounts to be determined at trial;

   b. Punitive Damages;

   c. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

   d. Reasonable claims preparation expenses;

   e. Attorneys' fees;

   f. Costs of litigation; and

   g. Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

## REQUEST FOR TRIAL BY JURY

76. Plaintiff[s] request that the above and foregoing be heard at trial by a jury of peers.

Respectfully submitted,

**DEAN LAW FIRM**

*/s/ J. Christopher Dean*
J. Christopher Dean
Texas Bar No. 00793596
Federal Bar No. 266069
Email: dean@jamesdeanlaw.com
T. Danielle Ross
Texas Bar No. 24070530
Federal Bar No. 1102102
Email: ross@jamesdeanlaw.com
17225 El Camino Real, Suite 190
Houston, Texas 77058
T: 281-280-8900
F: 281-280-8901

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of June, 2015.

Further, service of process on Defendants Transocean and Halliburton shall be made by waiver, which will be requested simultaneous with this filing.

*/s/ J. Christopher Dean*
J. Christopher Dean