## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **United Financial Merchant Services** ) | |
| **d/b/a Crabdaddys,** ) | **CIVIL ACTION NO. 2:13-cv-1075** |
|     **Plaintiff,** ) | |
| ) | **JUDGE BARBIER** |
| vs. ) | |
| ) | **MAGISTRATE SHUSHAN** |
| **BP Exploration & Production, Inc.; BP America** ) | |
| **Production Company; and BP p.l.c.;** ) | **OIL POLLUTION ACT OF 1990** |
|     **Defendants.** ) | **33 U.S.C. § 2701,** *et. seq.* |
| ) | |
| ) | **BUSINESS ECONOMIC LOSS** |
| ) | |

## FIRST AMENDED COMPLAINT FOR DAMAGES

**NOW COMES PLAINTIFF, UNITED FINANCIAL MERCHANT SERVICES D/B/A CRABDADDYS** ("Plaintiff" or "Crabdaddys"), through undersigned counsel, who does allege, aver and represent as follows:

## NATURE OF THE ACTION

1. On or about April 20, 2010, the *Deepwater Horizon* drilling platform exploded and sank, causing a spill of over 200 million gallons of crude oil from the Macondo Well, MC-252, and resulting in the worst maritime environmental disaster in United States history.

2. On 28 April 2010, BP Exploration & Production Inc. was deemed the responsible party under OPA, 33 U.S.C. §2714

3. Plaintiff has suffered economic injury, damage and/or losses as a result of the oil spill. This Complaint asserts claims under the Oil Pollution Act of 1990 ("OPA"), seeking damages arising from the oil spill, the oil spill's environmental devastation, and the economic losses Plaintiff has suffered resulting from and due to the oil spill.

**THE PARTIES, JURISDICTION AND VENUE**

4. Plaintiff, UNITED FINANCIAL MERCHANT SERVICES D/B/A CRABDADYS, is a business that is domiciled in Maryland, with its principle place of business/operations in Lutherville Timonium, MD, in the county of Baltimore. .

5. Crabdaddys brings these claims pursuant to Federal General Maritime Law including/and/or the Oil Pollution Act of 1990 ("OPA"), 33 USC §2701, *et seq.*

6. Jurisdiction exists before this Court pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction.

7. Jurisdiction also exists before this Court pursuant to the Oil Pollution Act, 33 U.S.C. § 2717(b) (the "OPA").

8. Defendant, BP Exploration & Production, Inc. ("BP Exploration") is a Delaware corporation with its principal place of business in Warrenville, Illinois.  BP Exploration was designated as a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution of 1990, 33 U.S.C. §2714.  This court has personal jurisdiction over BP Exploration, because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

9. Defendant, BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

10. Defendant BP p.l.c. is a British public limited company with its corporate headquarters in London, England.  BP p.l.c. is the global parent company of the worldwide

business operating under the "BP" logo. BP p.l.c. operates its various business divisions, such as the "Exploration and Production" division within BP Exploration and BP America, through vertical business arrangements aligned by product or service groups. BP p.l.c.'s operations are worldwide, including in the United States. Defendants BP Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally. Plaintiffs further adopt and incorporate by reference all jurisdictional allegations against BP p.l.c. set forth in Paragraphs 212-218 of the Amended B1 Master Complaint, Document No. 1128 filed in MDL No. 2179, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010.*

11. BP Exploration, BP America, and BP p.l.c. are generally referred to herein collectively as the "BP Defendants" or "BP."

12. Defendant, Transocean Holdings, LLC ("Transocean") is a Delaware corporation with its principal place of business in Houston, Texas. Transocean has been found to be at fault under general maritime law by the Court in this matter. This Court has personal jurisdiction over Transocean, because Transocean is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

13. Defendant, Halliburton Energy Services, Inc. ("Halliburton") is a Delaware corporation with its principal place of business in Houston, Texas. Halliburton has been found to be at fault under general maritime law by the Court in this matter. This Court has personal jurisdiction over Halliburton, because Halliburton is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

14. Venue is proper in this jurisdiction because the Defendants' actions, inactions, and failures directly and proximately caused the damage and harm to the Plaintiff in this

jurisdiction.

## FACTUAL BACKGROUND AND PRESENTMENT

15. Plaintiff adopts and incorporates as if fully restated herein the factual allegations, causes of action, and prayer for relief, raised in the Amended B1 Master Complaint, Document No. 1128 filed in MDL No. 2179, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (the "MDL Complaint").

16. Plaintiff further adopts and incorporates as if reinstated herein all factual allegations and information contained in the Plaintiff Profile Form filed by Plaintiff.

17. Plaintiff further adopts and incorporates as if fully stated herein Plaintiffs' Supplemental and Amended Responses to Phase One Written Discovery Requests, dated 8 October 2011; Amended Response to Phase One Request for Admission No. 76, dated 27 December 2011; and Supplemental and amended Responses to Phase One Interrogatories Nos. 6, 7 and 17, dated 14 December 2012.

18. On 20 April 2010, a well blowout occurred on the oil rig *Deepwater Horizon* in the Gulf of Mexico. The uncontrolled blowout caused explosions and a raging fire aboard the *Deepwater Horizon* rig.

19. After burning for two (2) days, the *Deepwater Horizon* rig sank, commencing an oil spill on unprecedented proportion that interfered with, damaged, depleted, and destroyed, offshore, marine and coastal environments in the Gulf of Mexico, Louisiana, Mississippi, Alabama, Texas and Florida. Many Gulf of Mexico seafood specifies and marine life including blue crab were decimated.

20. As a direct and foreseeable result of the oil spill and its devastating impact on the marine and coastal environments, production and associated activities in the Gulf of Mexico

pertaining to Gulf Seafood industries were significantly damaged, resulting in economic losses to primary seafood processors, commercial fishermen, seafood wholesalers, seafood vendors, and other companies and employees similarly situated, like Crabdaddys.

21. Crabdaddys is a seafood wholesaler, an entity or business that purchases seafood in bulk quantities and sells to retailers such as restaurants, fish shops, supermarkets, and other various types of seafood distributors for sale to end consumers. Crabdaddys specializes in wholesaling crabs. Prior to the oil spill, Crabdaddys sourced live crabs principally from the Gulf of Mexico and resells the crabs to the markets referenced above in the Southern United States of America and Maryland, where crab is in high demand.

22. The oil spill damaged, destroyed or otherwise rendered physically unavailable to Crabdaddys the Gulf seafood property or resources, such as crab, that Crabdaddys had a right to put to commercial use. As a foreseeable result, the oil spill's devastating decimating effect on Gulf crab populations caused Crabdaddys to incur: (a) decreased sales; (b) decreased customers; (c) increased costs of goods sold; (d) reduction in the availability of Gulf seafood products, including crab; (e) increased costs; (f) lost long-standing customer and other like business relationships; (g) inability to expand the business; and (h) decreased profits.

23. Predictably, Crabdaddys lost profits and revenues it would have earned but for the oil spill. BP's negligent acts or omissions were a substantial factor in bringing about the injuries and without which no harm would have been incurred.

24. Crabdaddys has made every reasonable effort to mitigate its losses over the Claim Period based on Gulf Seafood supply, demand, and customer and vendor availability. All proactive mitigation efforts undertaken by Crabdaddys was futile as the business continues to face challenges including: recruiting commercial fishermen, increased cost of supply, and a

depressed Gulf crab demand in Baltimore, Maryland, a key and vital market for Crabdaddys. Additional proactive mitigation efforts such as payroll reductions, cuts in other expenses, laying off valuable employees, and suspension of payments to shareholders and/or partners have had negative impacts on Crabdaddys.

25. As a result of the oil spill and the decimated populations of Gulf seafood specifies, Crabdaddys has and continues to suffer economic losses. Crabdaddys' economic losses were due to the harm to the Gulf property or seafood resources that resulted from the spill.

26. Crabdaddys economic losses were due to the oil spill and its catastrophic effects on the Gulf seafood populations. Crabdaddys would not have experienced this loss in profits had the spill not occurred. Moreover, Crabdaddys lost earnings more likely were caused by the oil spill than any other possible causes.

## PRESENTMENT

27. The party responsible for the spill is required to fully compensate damages incurred as a result of the spill. 33 U.S.C. § 2702(a). Under 33 U.S.C. § 2702(b)(2)(E), "[d]amages equal to the loss of profits or earning capacity due to the injury, destruction, or loss of real property, personal property or natural resources" are recoverable by "any claimant", including Crabdaddys.

28. As a designated responsible party under OPA, it was BP's responsibility to establish a procedure for the payment or settlement of claims. On or about April 2010 through 22 August 2010, BP posted advertisements and accepted presentment of claims. Crabdaddys did not present a claim for damages to the "Original" BP claims presentation facility.

29. To fulfill its statutory obligations, BP created the Gulf Coast Claims Facility ("GCCF") on or about 23 August 2010. The GCCF was administered by Kenneth Feinberg and

the Feinberg Rozen LLP law firm. The GCCF handled presentment and payment of claims on BP's behalf from 23 August 2010 through 3 June 2012.

30. **Crabdaddys' First Presentment.** On 1 June 2011, Crabdaddys submitted its Lost Earnings or Profits claim with the Gulf Coast Claims Facility ("GCCF"). Crabdaddys' Claimant identification number was 1065329.

31. Crabdaddys' GCCF claim was clear and precisely provided the GCCF with the requisite information for the GCCF (BP's agent) to accept or deny its claim by including a "sum certain" of the amount of damages at the time of presentment caused by the BP Deepwater Horizon Incident and subsequent oil spill.

32. Additionally, Crabdaddys' GCCF claim included a description of the nature and extent of damages and evidence supporting the claim including: a) an overview of Crabdaddys' business; b) the impact of the Gulf Spill; c) the methodology calculation; d) federal income tax returns; and e) a detailed economic loss model including the summary of loss, graphs of lost sales, Crabdaddys' loss projection, actual income and profit and loss statements, but-for income statements, and source income statements.

33. The calculation methodology specified and provided the nexus between Crabdaddys' previous profit and losses and the negative economic impact the BP oil spill had on the business.

34. Moreover, the calculation methodology calculated the losses for the period of May to December 2010 based on actual sales, cost of sales and operating expenses, and "but-for" sales, cost of sales and operating expenses. All "but-for" monthly sales projections were based on 2009 actual values and applied a growth factor of 15% to account for foreseeable improvement in sales, revenues and profits.

35. After reviewing Crabdaddys' claim and all supporting evidence, the GCCF made a Final Offer to Crabdaddys on or around 29 January 2012.

36. Crabdaddys accepted 60% of GCCF's final offer on 5 April 2012.

37. GCCF's final offer to Crabdaddys has expired.

38. On or about 3 March 2012, the proposed settlement between BP and the Plaintiffs' in the MDL No. 2179 ("the Settlement Agreement") was published. On 21 December 2012, the Court gave final approval of the Economic and Property Damages Settlement of the Settlement Agreement.

39. Crabdaddys is a type of entity recognized in the Class Action Settlement in the United States Court for the Eastern District of Louisiana. Crabdaddys is otherwise eligible under the Settlement as a Seafood Wholesaler, but is excluded from the Class due to the Settlement's geographic restriction, which limits the class members to those physically located in certain counties in Texas, Louisiana, Mississippi, Alabama and Florida. Crabdaddys' facilities and business operations are in Baltimore County, Maryland.

40. Moreover, per ¶ 4.2.5 of the Settlement Agreement:

> "Economic Class Members with expired offers from the GCCF are not eligible for transition payments, but can file a Claim in the Settlement program. Economic Class Members with **expired offers from the GCCF** who Opt Out of the Economic Class **shall be deemed to have satisfied the presentment requirements under the Oil Pollution Act of 1990**."

41. Crabdaddys validly presented its claim to BP.

42. **Crabdaddys' Second Presentment**. On 1 November 2012, Crabdaddys, out of the abundance of caution, re-made "presentment" of a Claim in accord with 33 USC §§ 2702(b) and 2713, by submitting its Loss of Profits or Impairment of Earning Capacity for Businesses claim with the BP Claims Program. Because Plaintiff previously asserted claims against the

responsible party through its prior claim filed with the GCCF, the presentment on or about 1 November 2012 was re-made out of an abundance of caution.

43. All pertinent sections of the "BP Claim Form" (provided by BP on the BP Claims Programs' website) were filled out in its entirety with the requisite information for BP to accept or deny its claim by including a "sum certain" of the amount of damages at the time of presentment caused by the BP Deepwater Horizon Incident and subsequent oil spill.

44. Additionally, the claim was specific in that it included a description of the nature and extent of damages and evidence supporting the claim. Evidence supporting the claim provided to the BP Claims Program with the claim included: monthly profit and loss statements, income statements, identity of the *Deepwater* Horizon as the vessel causing the spill, mitigation efforts, statements how the spill led to the loss of income or earning capacity and explanation of any anomalies, federal income tax returns and schedules, and an economic loss calculation providing BP adjustors with a step by step analysis or calculation of Crabdaddys' amount requested for compensation.

45. Crabdaddys' economic loss calculation methodology is congruent with the methodology specified in the Settlement Agreement in Settlement Exhibit number 4.

46. Crabdaddys' economic loss calculation went through all steps specified in Compensation Framework for Business Economic Loss (*see* "Compensation for Framework for Business Economic Loss Claims" in Settlement Agreement Exhibit 4C).

47. Crabdaddys' economic loss calculation identified the Variable Profit between the 2010 Compensation Period selected by Crabdaddys and the Variable Profit over the comparable months of the Benchmark Period.

48. Crabdaddys' economic loss calculation identified the Claimant-Specific factor

and incremental revenue calculation. The incremental revenue was then multiplied by the variable margin.

49. Crabdaddys' total damages, as enumerated in its economic loss calculation, were then multiplied by the agreed-upon Risk Transfer Premium ("RTP").

50. Crabdaddys' risk transfer amount then added all accounting expenses in preparing the claim and subtracted any and all prior payments from GCCF or BP. This last piece of the calculation resulted in the total net compensation and/or "sum certain" that was presented to BP.

51. Crabdaddys' "sum certain" number is supported by the step by step calculation methodology attached with the calculation. Likewise, any and all supporting documentation proving the items in the calculation matches the numbers in Crabdaddys' financial documents.

52. In all, Crabdaddys' "sum certain" economic calculation with the supporting documents meets the applicable causation requirements specified in the Settlement Agreement.

53. Crabdaddys' claim form and the supporting documentation referenced above were filed via electronic mail to bpclaimsprogram@bp.com. Bpclaimsprogram@bp.com is the electronic mail address to file claims with the BP Claims Program.

54. On 2 November 2012, the BP Claims Program acknowledged receipt of Crabdaddys' claim form for opt out claimants or excluded claimants. Crabdaddys' assigned claim identification number is 1000984-01.

55. On 5 December 2011, BP Claims Program served its "Request for Documentation Related to Your Claim" on Crabdaddys. The request was a standard cut and paste deficiency letter requesting thirteen categories of documents, many of which the BP Claims Program already had or did not apply to Crabdaddys.

56. Despite this, Crabdaddys responded to the deficiency letter by providing

additional documentation, identifying which categories did not apply, and referred the BP Claims Program to responsive documentation previously submitted with the claim by bates number.

57. To date, the BP Claims Program has not sent any additional deficiency letters.

58. To date, the BP Claims Program has not denied the claim or otherwise has failed to satisfy within 90 days of presentment. The 90 day presentment period expired on 23 January 2013.

59. Per 33 U.S.C. § 2713(a), presentment of a claim for damages enumerated in OPA is a jurisdictional requirement. *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.,* 51 F.3d 235 (11th Cir. 1995). The OPA claimant's request must be made in writing for a sum certain for compensation for damages or removal costs resulting from an incident. 33 U.S.C. § 2701(3). OPA claims must be specific and include the exact amount of damages, a description of the nature and extent of damages, and evidence to support the claim. *Johnson v. Colonial Pipeline Co.,* 830 F. Supp 309 (E.D. Va. 1993).

60. Prior to the institution of this lawsuit, presentment was made to BP via the GCCF and/or directly to BP on at least two (2) occasions. The GCCF through Mr. Feinberg (Feinberg Rozen), John McCutcheon (Brown Greer) and/or Krista Friedrich (Feinberg Rozen) never contested the validity of presentment verbally and/or in writing. Likewise, BP through the BP Claims Program has never contested the validity of presentment verbally and/or in writing.

61. Crabdaddys has complied with OPA presentment requirement and has established its lost profits were directly caused by the BP Deepwater Horizon incident and subsequent oil spill. As Crabdaddys has complied with OPA, Crabdaddys now pleads for all relief it is justly entitled to.

## CLAIMS FOR RELIEF

62. Plaintiff adopts and incorporates as if restated herein, all claims for relief raised in the MDL Complaints against the Defendants as responsible parties under the Oil Pollution Act, 33 USC §2701, et seq., which holds responsible parties liable to plaintiffs for removal costs and damages arising out of the following:

    a. Loss of Natural Resources;

    b. Loss or Damage to Real or Personal Property;

    c. Subsistence Use;

    d. Loss of Revenues;

    e. Loss of Profits and/or Earning Capacity; and

    f. Loss of Public Services.

63. Plaintiff adopts and incorporates as if restated herein, all claims for relief raised in the MDL Complaints against all defendants identifying General Maritime Law causes of action and claims for relief relating to the following:

    a. Negligence; and

    b. Gross Negligence and Willful Misconduct.

64. Plaintiff adopts and incorporates as if restates herein, all claims for relief raised in the MDL Complaints against all defendants for Punitive Damages arising out of willful and wanton misconduct and/or gross negligence as alleged and described in the MDL Complaints.

## PRAYER FOR RELIEF

63. WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, and *in solido,* as follows:

    a. Economic and compensatory damages in amounts to be determined at trial;

      b.      Punitive Damages;

      c.      Pre-judgment and post-judgment interest at the maximum rate allowable by law;

      d.      Reasonable claims preparation expenses;

      e.      Attorneys' fees;

      f.      Costs of litigation; and

      g.      Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

## **REQUEST FOR TRIAL BY JURY**

64.    Plaintiff[s] request that the above and foregoing be heard at trial by a jury of peers.

Respectfully submitted,

**DEAN LAW FIRM**

*/s/ J. Christopher Dean*
J. Christopher Dean
Texas Bar No. 00793596
Federal Bar No. 266069
Email: dean@jamesdeanlaw.com
T. Danielle Ross
Texas Bar No. 24070530
Federal Bar No. 1102102
Email: ross@jamesdeanlaw.com
17225 El Camino Real, Suite 190
Houston, Texas 77058
T: 281-280-8900
F: 281-280-8901

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 and that the foregoing was electronically filed with the Clerk of Court of the United

States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of June, 2015.

Further, service of process on Defendants Transocean and Halliburton shall be made by waiver, which will be requested simultaneous with this filing.

*/s/ J. Christopher Dean*
J. Christopher Dean
