## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CRABCO and MR. PEEPER'S BEST, LLC | ) | CIVIL ACTION NO. 2:13-cv-1076 |
| Plaintiffs, | ) | |
| | ) | JUDGE BARBIER |
| vs. | ) | |
| | ) | MAGISTRATE SHUSHAN |
| BP Exploration & Production, Inc.; BP America | ) | |
| Production Company; and BP p.l.c.; | ) | OIL POLLUTION ACT OF 1990 |
| Defendants. | ) | 33 U.S.C. § 2701, *et. seq.* |
| | ) | |
| | ) | BUSINESS ECONOMIC LOSS |
| | ) | |

## FIRST AMENDED COMPLAINT FOR DAMAGES

NOW COMES PLAINTIFFS, CRABCO and MR. PEEPER'S BEST, LLC (collectively referred to as "Plaintiffs") through undersigned counsel, who does allege, aver and represent as follows:

### NATURE OF THE ACTION

1.      On or about April 20, 2010, the *Deepwater Horizon* drilling platform exploded and sank, causing a spill of over 200 million gallons of crude oil from the Macondo Well, MC-252, and resulting in the worst maritime environmental disaster in United States history.

2.      On 28 April 2010, BP Exploration & Production Inc. was deemed the responsible party under OPA, 33 U.S.C. §2714

3.      Plaintiffs has suffered economic injury, damage and/or losses as a result of the oil spill.  This Complaint asserts claims under the Oil Pollution Act of 1990 ("OPA"), seeking damages arising from the oil spill, the oil spill's environmental devastation, and the economic losses Plaintiff has suffered resulting from and due to the oil spill.

## THE PARTIES, JURISDICTION AND VENUE

4.      Plaintiff, **CRABCO**, is a business that is domiciled in Louisiana, with its principle place of business/operations in Abbeville, Louisiana, in the parish of Vermillion. Claimants with proprietary interests and/or property in Vermillion Parish are permitted to file claims with the Deepwater Horizon Economic Claims Facility ("DHECC") pursuant to the Settlement Agreement.  Crabco has opted out of the Settlement Agreement, presented it claim, and now files this lawsuit against the responsible party, BP.

5.      Plaintiff, **MR. PEEPER'S BEST, LLC,** ("Mr. Peeper's") is a business domiciled in Louisiana, with its principle place of business/operations in Abbeville, Louisiana, in the parish of Vermillion.  Claimants with proprietary interests and/or property in Vermillion Parish are permitted to file claims with the Deepwater Horizon Economic Claims Facility ("DHECC") pursuant to the Settlement Agreement.  Mr. Peeper's has opted out of the Settlement Agreement, presented it claim, and now files this lawsuit against the responsible party, BP.

6.      At all times material, Plaintiffs' business representative is Jerry Tharp.

7.      Plaintiffs' principle, Jerry Tharp, has been in the Gulf Seafood business for over forty (40) years and has principally owned and operated multiple Gulf Seafood processing and wholesaling companies including Crab Express and Jerry's Seafood.

8.      Plaintiffs bring these claims pursuant to Federal General Maritime Law including/and/or the Oil Pollution Act of 1990 ("OPA"), 33 USC §2701, *et seq.*

9.      Jurisdiction exists before this Court pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction.

10.     Jurisdiction also exists before this Court pursuant to the Oil Pollution Act, 33 U.S.C. § 2717(b) (the "OPA").

11.     Defendant, BP Exploration & Production, Inc. ("BP Exploration") is a Delaware corporation with its principal place of business in Warrenville, Illinois.  BP Exploration was designated as a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution of 1990, 33 U.S.C. §2714.  This court has personal jurisdiction over BP Exploration, because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

12.     Defendant, BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas.  This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

13.     Defendant BP p.l.c. is a British public limited company with its corporate headquarters in London, England.  BP p.l.c. is the global parent company of the worldwide business operating under the "BP" logo.  BP p.l.c. operates its various business divisions, such as the "Exploration and Production" division within BP Exploration and BP America, through vertical business arrangements aligned by product or service groups.  BP p.l.c.'s operations are worldwide, including in the United States.  Defendants BP Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally.  Plaintiffs further adopt and incorporate by reference all jurisdictional allegations against BP p.l.c. set forth in Paragraphs 212-218 of the Amended B1 Master Complaint, Document No. 1128 filed in MDL No. 2179, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010.*

14.     BP Exploration, BP America, and BP p.l.c. are generally referred to herein collectively as the "BP Defendants" or "BP."

15.     Defendant, Transocean Holdings, LLC ("Transocean") is a Delaware corporation with its principal place of business in Houston, Texas.  Transocean has been found to be at fault under general maritime law by the Court in this matter.  This Court has personal jurisdiction over Transocean, because Transocean is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

16.     Defendant, Halliburton Energy Services, Inc. ("Halliburton") is a Delaware corporation with its principal place of business in Houston, Texas.  Halliburton has been found to be at fault under general maritime law by the Court in this matter.  This Court has personal jurisdiction over Halliburton, because Halliburton is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

17.     Venue is proper in this jurisdiction because the Defendants' actions, inactions, and failures directly and proximately caused the damage and harm to the Plaintiff in this jurisdiction.

## FACTUAL BACKGROUND, CAUSES OF ACTION AND PRESENTMENT

18.     Plaintiffs adopt and incorporate as if fully restated herein the factual allegations, causes of action, and prayer for relief, raised in the Amended B1 Master Complaint, Document No. 1128 filed in MDL No. 2179, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (the "MDL Complaint").

19.     Plaintiffs further adopt and incorporate as if reinstated herein all factual allegations and information contained in the Plaintiff Profile Form filed by Plaintiff.

20.     Plaintiffs further adopt and incorporate as if fully stated herein Plaintiffs' Supplemental and Amended Responses to Phase One Written Discovery Requests, dated 8 October 2011; Amended Response to Phase One Request for Admission No. 76, dated 27 December 2011; and Supplemental and amended Responses to Phase One Interrogatories Nos. 6, 7 and 17, dated 14 December 2012.

21.     On 20 April 2010, a well blowout occurred on the oil rig *Deepwater Horizon* in the Gulf of Mexico. The uncontrolled blowout caused explosions and a raging fire aboard the *Deepwater Horizon* rig.

22.     After burning for two (2) days, the *Deepwater Horizon* rig sank, commencing an oil spill on unprecedented proportion that interfered with, damaged, depleted, and destroyed, offshore, marine and coastal environments in the Gulf of Mexico, Louisiana, Mississippi, Alabama, Texas and Florida. Many Gulf of Mexico seafood species and marine life including blue crab were decimated.

23.     As a direct and foreseeable result of the oil spill and its devastating impact on the marine and coastal environments, production and associated activities in the Gulf of Mexico pertaining to Gulf Seafood industries were significantly damaged, resulting in economic losses to primary seafood processors, commercial fishermen, seafood wholesalers, seafood vendors, and other companies and employees similarly situated, like Plaintiffs.

24.     Crabco is a primary seafood processor, an entity or business that receives and prepares Seafood purchased from Commercial Fishermen, landing sites, and Commercial Wholesale or Retail Dealer including, but not limited to, cleaning, cooking, canning, smoking, slating, drying or freezing, grading by size, packing storing.

25.     Crabco primarily specializes in Gulf crab. The business purchased gulf crabs

from commercial fishermen and then graded, prepared, packed and stored seafood for shipment. Afterwards, Crabco sold and transported the processed Gulf crab to seafood vendors across the United States.

26.     In 2009, Crabco began researching and developing a new business plan to enter into a new market for selling processed and live Gulf crab to major national grocery chain stores.

27.     In 2009 and 2010, this area of the market was unsaturated.

28.     Around this same time, Crabco began researching and developing a "maintainer". The maintainer allows grocery supermarkets to display and sell "live" crabs and Plaintiffs' processed crab products to its customers.  Plaintiffs' processed crab products are held in bins next to the container holding the live crabs.

29.     In 2009, Plaintiffs' maintainer was patented and therefore protected from infringement.

30.     Crabco's early marketing of the maintainer to national grocery chain supermarkets was a hit as no competitors offered these goods and services.

31.     Crabco created Mr. Peeper's as its agent and/or joint venture partner to handle this new business venture.

32.     On 28 March 2010, Mr. Peeper's Best LLC was trademarked by the United States Patent and Trademark Office.

33.     Mr. Peeper's is a seafood wholesaler, an entity or business that purchases Seafood in bulk quantities and sells to grocery supermarkets.

34.     Prior to the oil spill, Mr. Peeper's was negotiating with major national grocery chain supermarkets and retailers, including, but not limited to: Brookshires, H.E.B., and Publix.

35.     Plaintiffs specialize in Gulf crab.  Prior to the oil spill, Plaintiffs sourced live

crabs principally from the Gulf of Mexico and resold the crabs to the markets referenced above.

36.     The oil spill damaged, destroyed or otherwise rendered physically unavailable to Plaintiffs the Gulf seafood property or resources, such as crab, that Plaintiffs had a right to put to commercial use.   As a foreseeable result, the oil spill's devastating decimating effect on Gulf crab populations caused Plaintiffs to incur: (a) decreased sales; (b) decreased customers; (c) increased costs of goods sold; (d) reduction in the availability of Gulf seafood products, including crab; (e) increased costs; (f) lost long-standing customer and other like business relationships; (g) inability to expand the business; and (h) decreased profits.

37.     Predictably, Plaintiffs lost profits and revenues it would have earned but for the oil spill.   BP's negligent acts or omissions were a substantial factor in brining about the injuries and without which no harm would have been incurred.

38.     Plaintiffs have made every reasonable effort to mitigate its losses over the Claim Period based on Gulf Seafood supply, demand, and customer and vendor availability.   All proactive mitigation efforts undertaken by Plaintiffs was futile as the businesses continue to face challenges including: recruiting commercial fishermen, increased cost of supply, and a depressed Gulf crab demand by customers and vital markets Plaintiffs relied on.   All additional proactive mitigation efforts have been futile.

39.     As a result of the oil spill and the decimated populations of Gulf seafood specifies, Plaintiffs have and continue to suffer economic losses.   Plaintiffs' economic losses were due to the harm to the Gulf property or seafood resources that resulted from the spill.

40.     Plaintiffs' economic losses were due to the oil spill and its catastrophic effects on the Gulf seafood populations.   Plaintiffs would not have experienced this loss in profits had the spill not occurred.   Moreover, Plaintiffs lost earnings more likely were caused by the oil spill

than any other possible causes.

## PRESENTMENT

41.    The party responsible for the spill is required to fully compensate damages incurred as a result of the spill.  33 U.S.C. § 2702(a).  Under 33 U.S.C. § 2702(b)(2)(E), "[d]amages equal to the loss of profits or earning capacity due to the injury, destruction, or loss of real property, personal property or natural resources" are recoverable by "any claimant", including Crabdaddys.

42.    As a designated responsible party under OPA, it was BP's responsibility to establish a procedure for the payment or settlement of claims.  On or about April 2010 through 22 August 2010, BP posted advertisements and accepted presentment of claims.  Crabdaddys did not present a claim for damages to the "Original" BP claims presentation facility.

43.    To fulfill its statutory obligations, BP created the Gulf Coast Claims Facility ("GCCF") on or about 23 August 2010.  The GCCF was administered by Kenneth Feinberg and the Feinberg Rozen LLP law firm.  The GCCF handled presentment and payment of claims on BP's behalf from 23 August 2010 through 3 June 2012.

44.    **Plaintiffs' First Presentment.**  On 6 December 2010, Plaintiffs submitted its Lost Earnings or Profits claim with the Gulf Coast Claims Facility ("GCCF").  Plaintiffs' Claimant identification number was 1180295.

45.    Plaintiffs' GCCF claim was clear and precisely provided the GCCF with the requisite information for the GCCF (BP's agent) to accept or deny its claim by including a "sum certain" of the amount of damages at the time of presentment caused by the BP Deepwater Horizon Incident and subsequent oil spill.

46.    Additionally, Plaintiffs' GCCF claim included a description of the nature and

extent of damages and evidence supporting the claim including: a) an overview of Plaintiffs' business; b) the impact of the Gulf Spill; c) the methodology calculation; d) federal income tax returns; and e) a detailed economic loss model including the summary of loss, graphs of lost sales, Plaintiffs' loss projection, actual income and profit and loss statements, but-for income statements, and source income statements.

47.     The calculation methodology provided the nexus between Plaintiffs' previous profit and losses and the negative economic impact the BP oil spill had on the business.

48.     Moreover, the calculation methodology calculated the losses for the period of May to December 2010 based on actual sales, cost of sales and operating expenses, and "but-for" sales, cost of sales and operating expenses.  All "but-for" monthly sales projections were based on 2009 actual values and applied a growth factor of 15% to account for foreseeable improvement in sales, revenues and profits.

49.     Plaintiffs' received an interim payment from GCCF on 2 March 2012.

50.     After reviewing Plaintiffs' claim and all supporting evidence, the GCCF made a Final Offer to Crabdaddys on 17 October 2011 and 2 March 2012.

51.     GCCF's final offer to Plaintiffs has expired.

52.     On or about 3 March 2012, the proposed settlement between BP and the Plaintiffs' in the MDL No. 2179 ("the Settlement Agreement") was published.  On 21 December 2012, this Court gave final approval of the Economic and Property Damages Settlement of the Settlement Agreement.

53.     Plaintiffs' business is a type of entity recognized in the Class Action Settlement in the United States Court for the Eastern District of Louisiana.  Plaintiffs are eligible under the Settlement as a Seafood Wholesaler and Primary Seafood Processor.

54.     Paragraph 4.2.5 of the Settlement Agreement states:

"Economic Class Members with expired offers from the GCCF are not eligible for transition payments, but can file a Claim in the Settlement program.   Economic Class Members with **expired offers from the GCCF** who Opt Out of the Economic Class **shall be deemed to have satisfied the presentment requirements under the Oil Pollution Act of 1990**."

55.     Plaintiffs' validly presented its claim to the GCCF.

56.     **Second Presentment**.   On 20 July 2012, Plaintiffs, out of the abundance of caution, re-made "presentment" of a Claim in accord with 33 USC §§ 2702(b) and 2713, by submitting its Loss of Profits or Impairment of Earning Capacity for Businesses claim with the Deepwater Horizon Economic Claims Center ("DHECC"), the center for processing all claims filed pursuant to the Settlement Agreement.

57.     Because Plaintiff previously asserted claims against the responsible party through its prior claim filed with the GCCF, the presentment on or about 20 July 2012 was made re-made out of an abundance of caution.

58.     Plaintiffs' DHECC claimant identification number was 100038579.

59.     Plaintiffs' DHECC business economic loss claim number is 39232.

60.     All pertinent sections of the business economic loss claim were filled out in its entirety with the requisite information for DHECC to accept or deny its claim by including a "sum certain" of the amount of damages at the time of presentment caused by the BP Deepwater Horizon Incident and subsequent oil spill.

61.     Additionally, the claim was specific in that it included a description of the nature and extent of damages and evidence supporting the claim.   Evidence supporting the claim provided to the DHECC with the claim included: monthly profit and loss statements, income statements, identity of the *Deepwater* Horizon as the vessel causing the spill, mitigation efforts,

statement how the spill led to the loss of income or earning capacity and explanation of any anomalies, federal income tax returns and schedules, and an economic loss calculation providing DHECC adjustors with a step by step analysis or calculation of Crabco's amount requested for compensation.

62.    Plaintiffs' economic loss calculation methodology is congruent with the methodology specified in the Settlement Agreement in Settlement Exhibit number 4.

63.    Plaintiffs' economic loss calculation went through all steps specified in Compensation Framework for Business Economic Loss (*see* "Compensation for Framework for Business Economic Loss Claims" in Settlement Agreement Exhibit 4C).

64.    Plaintiffs' economic loss calculation identified the Variable Profit between the 2010 Compensation Period selected by Plaintiffs and the Variable Profit over the comparable months of the Benchmark Period.

65.    Plaintiffs' economic loss calculation identified the Claimant-Specific factor and incremental revenue calculation.  The incremental revenue was then multiplied by the variable margin.

66.    Plaintiffs' total damages, as enumerated in its economic loss calculation, were then multiplied by the agreed-upon Risk Transfer Premium ("RTP").

67.    Plaintiffs' risk transfer amount then added all accounting expenses in preparing the claim and subtracted any and all prior payments from GCCF or BP.  This last piece of the calculation resulted in the total net compensation and/or "sum certain" that was presented to BP.

68.    Plaintiffs' "sum certain" number is supported by the step by step calculation methodology attached with the calculation.  Likewise, any and all supporting documentation proving the items in the calculation matches the numbers in Plaintiffs' financial documents.

69.     Plaintiffs were not required to abide by the Settlement Agreement's "Causation Requirements For Business Economic Loss Claims" because Plaintiff is a Primary Seafood Processor.  (*see* Settlement Agreement Exhibit 4B, "Causation Requirments for Businesses Economic Loss Claims")("I. Business Claimants for Which There is No Causation Requirement… "2) If you are a 'Landing Site,' or 'Commercial Wholesale or Retail Dealer A,' or 'Primary Seafood Processor,' as set forth in 'Seafood Distribution Chain Definitions,' you are not required to provide any evidence of causation.'").

70.     Additionally, Plaintiffs were not required to abide by the Settlement Agreement's "Causation Requirements For Businesses Economic Loss Claims" because Plaintiff is a Seafood Wholesaler located in Zone B.  (*see* Settlement Agreement Exhibit 4B, "Causation Requirements for Businesses Economic Loss Claims")("I. Business Claimants for Which There is No Causation Requirement… "3) If you are in Zone A, B, or C and you are a 'Commercial or Wholesale or Retail Dealer B,' or a 'Secondary Seafood Processor,' or a 'Seafood Wholesaler or Distributor,' or a 'Seafood Retailer,' as set forth in 'Seafood Distribution Chain Definition,' you are not required to provide any evidence of causation.").

71.     Plaintiffs' place of business is located in Vermillion Parish, Louisiana. Vermillion Parish, Louisiana is located in Zone B of the Settlement Agreement.

72.     Plaintiffs' "sum certain" economic calculation with the supporting documents meets the applicable causation requirements specified in the Settlement Agreement.

73.     On 4 September 2012, DHECC served an incompleteness notice on Plaintiffs. The notice sought monthly sales and use tax documents.

74.     Plaintiffs responded to the incompleteness notice of 4 October 2012 and provided all responsive documentation the DHECC claims it previously did not have.

75.    Displeased with the Settlement Programs Claims Administration Vendors, Plaintiffs opted out of the Settlement Program and/or Agreement on 25 October 2012.  Plaintiffs served it's opt out notice via certified mail.

76.    Despite opting out, the Settlement Program continued to process Plaintiffs' business economic loss claims.  Recognizing the validity of Plaintiffs' claim, the DHECC served its eligibility notice on Plaintiffs on 18 December 2012.

77.    As is its right, Plaintiffs remained opted out of the settlement program to separately file its claim with the BP Claims Program.

78.    Paragraph 7.3.2 of the Settlement Agreement states:

"Regardless of whether the Agreement becomes effective, **Claims with a sum certain and some documentation and/or other proof that are submitted to the Settlement Program shall be deemed to satisfy presentment and all requirements of 33 U.S.C. § 2713**."

79.    Per the Settlement Agreement's language stated above, Plaintiffs validly presented its claim.

80.    **Crabco's Third Presentment.**    On 21 January 2013, Crabco, out of the abundance of caution, re-made "presentment" of a Claim in accord with 33 USC §§ 2702(b) and 2713, by submitting its Loss of Profits or Impairment of Earning Capacity for Businesses claim with the BP Claims Program. Because Plaintiffs previously asserted claims against the responsible party through its prior claim filed with the GCCF and DHECC, the presentment on or about 21 January 2013 was made re-made out of an abundance of caution.

81.    Out of the abundance of caution and to simplify the claim for BP, Crabco individually filed its presentment claim separate from its agent and/or joint venture, Mr. Peeper's.  BP Claims Program did not object to this.

82.     All pertinent sections of the BP Claim Form were filled out in its entirety with the requisite information for BP to accept or deny its claim by including a "sum certain" of the amount of damages at the time of presentment caused by the BP Deepwater Horizon Incident and subsequent oil spill.

83.     Additionally, the claim was specific in that it included a description of the nature and extent of damages and evidence supporting the claim.  Evidence supporting the claim provided to the BP Claims Program with the claim included: monthly profit and loss statements, income statements, identity of the *Deepwater* Horizon as the vessel causing the spill, mitigation efforts, statement how the spill led to the loss of income or earning capacity and explanation of any anomalies, federal income tax returns and schedules, and an economic loss calculation providing BP adjustors with a step by step analysis or calculation of Plaintiffs' amount requested for compensation.

84.     Crabco's economic loss calculation methodology is congruent with the methodology specified in the Settlement Agreement in Settlement Exhibit number 4.

85.     Crabco's economic loss calculation methodology is congruent with the methodology specified in the Settlement Agreement in Settlement Exhibit number 4.

86.     Crabco's economic loss calculation went through all steps specified in Compensation Framework for Business Economic Loss (*see* "Compensation for Framework for Business Economic Loss Claims" in Settlement Agreement Exhibit 4C).

87.     Crabco's economic loss calculation identified the Variable Profit between the 2010 Compensation Period selected by Plaintiffs and the Variable Profit over the comparable months of the Benchmark Period.

88.     Crabco's economic loss calculation identified the Claimant-Specific factor and

incremental revenue calculation.  The incremental revenue was then multiplied by the variable margin.

89.     Crabco's total damages, as enumerated in its economic loss calculation, were then multiplied by the agreed-upon Risk Transfer Premium ("RTP").

90.     Crabco's risk transfer amount then added all accounting expenses in preparing the claim and subtracted any and all prior payments from GCCF or BP.  This last piece of the calculation resulted in the total net compensation and/or "sum certain" that was presented to BP.

91.     Crabco's "sum certain" number is supported by the step by step calculation methodology attached with the calculation.  Likewise, any and all supporting documentation proving the items in the calculation matches the numbers in Plaintiffs' financial documents.

92.     Crabco was not required to abide by the Settlement Agreement's "Causation Requirements For Business Economic Loss Claims" because Plaintiff is a Primary Seafood Processor.  (*see* Settlement Agreement Exhibit 4B, "Causation Requirements for Businesses Economic Loss Claims")("I. Business Claimants for Which There is No Causation Requirement… "2) If you are a 'Landing Site,' or 'Commercial Wholesale or Retail Dealer A,' or 'Primary Seafood Processor,' as set forth in 'Seafood Distribution Chain Definitions,' you are not required to provide any evidence of causation.'").

93.     Nonetheless, Crabco's "sum certain" economic calculation with the supporting documents meets the applicable causation requirements specified in the Settlement Agreement.

94.     Crabco's claim form and the supporting documentation referenced above were filed via electronic mail to bpclaimsprogram@bp.com.   Bpclaimsprogram@bp.com is the electronic mail address to file claims with the BP Claims Program.

95.     The BP Claims Program acknowledged receipt of Crabco's claim form for opt out

claimants or excluded claimants.  Crabco's assigned claim identification number is 1085975.

96.     The BP Claims Center never served upon either Plaintiff a deficiency letter for lack of documentation to evaluate both Plaintiffs' valid claims.

97.     On 8 April 2013, the BP Claims Program denied Crabco's claim.

98.     Per 33 U.S.C. § 2713(a), presentment of a claim for damages enumerated in OPA is a jurisdictional requirement. *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.,* 51 F.3d 235 (11th Cir. 1995).  The OPA claimant's request must be made in writing for a sum certain for compensation for damages or removal costs resulting from an incident.  33 U.S.C. § 2701(3). OPA claims must be specific and include the exact amount of damages, a description of the nature and extent of damages, and evidence to support the claim. *Johnson v. Colonial Pipeline Co.,* 830 F. Supp 309 (E.D. Va. 1993).

99.     Prior to the institution of this lawsuit, presentment of Crabco's claim was made to BP via the GCCF, DHECC and/or directly to BP on at least two (3) occasions.  The GCCF through Mr. Feinberg (Feinberg Rozen), John McCutcheon (Brown Greer) and/or Krista Friedrich (Feinberg Rozen) never contested the validity of presentment verbally and/or in writing.  Likewise, the DHECC has never contested the validity of presentment verbally and/or in writing.  Despite opting out of the settlement agreement, the BP Claims Program however denied the claim by referring Plaintiffs' claims back to the Court Supervised Settlement Facility based on Plaintiffs' previous submission to the DHECC.

100.    Moreover, Crabco has met all presentment requirements according to paragraph 7.3.2 of the Settlement Agreement which states:

> "Regardless of whether the Agreement becomes effective, **Claims with a sum certain and some documentation and/or other proof that are submitted to the Settlement Program shall be deemed to satisfy presentment and all requirements of 33 U.S.C. § 2713**."

101.    Additionally, Crabco has met all presentment requirements according to paragraph 4.2.5 of the Settlement Agreement which states:

> "Economic Class Members with expired offers from the GCCF are not eligible for transition payments, but can file a Claim in the Settlement program.   Economic Class Members with **expired offers from the GCCF** who Opt Out of the Economic Class **shall be deemed to have satisfied the presentment requirements under the Oil Pollution Act of 1990**."

102.    Crabco has complied with OPA presentment requirement and have established its lost profits were directly caused by the BP Deepwater Horizon incident and subsequent oil spill. As Plaintiffs have complied with OPA, Plaintiffs now plead for all relief it is justly entitled to.

103.    **Mr. Peeper's Best LLC's Third Presentment.**   On or around 20 January 2013, Mr. Peeper's Best LLC, made "presentment" of its claim in accord with 33 USC §§ 2702(b) and 2713, by submitting its Loss of Profits or Impairment of Earning Capacity for Businesses claim with the Deepwater Horizon Economic Claims Center ("DHECC"), the center for processing all claims filed pursuant to the Settlement Agreement with the BP Claims Program.

104.    Out of the abundance of caution and to simplify the claim for BP, Mr. Peeper's individually filed its presentment claim separate from its agent and/or joint venture Crabco.  BP Claims Program did not object to this.

105.    All pertinent sections of the BP Claim Form (provided by BP on the BP Claims Program's website) were filled out in its entirety with the requisite information for BP to accept or deny its claim by including a "sum certain" of the amount of damages at the time of presentment caused by the BP Deepwater Horizon Incident and subsequent oil spill.

106.    Additionally, the claim was specific in that it included a description of the nature and extent of damages and evidence supporting the claim.   Evidence supporting the claim

provided to the BP Claims Program with the claim included: monthly profit and loss statements, income statements, identity of the *Deepwater* Horizon as the vessel causing the spill, mitigation efforts, statement how the spill led to the loss of income or earning capacity and explanation of any anomalies, federal income tax returns and schedules, and an economic loss calculation providing BP adjustors with a step by step analysis or calculation of Plaintiffs' amount requested for compensation.

107.    Prior to the oil spill, Mr. Peeper's, at all times material, was marketing its goods and services to major national grocery chains.

108.    The oil spill caused a major setback in foreseeable orders and thereby revenues and profits Mr. Peeper's would have received but for the oil spill.

109.    Mr. Peeper's economic loss calculation and methodology identifies what the business achieved from August 2012 sales by store to Publix, a national grocery supermarket chain.  Mr. Peeper's would have achieved these same or similar numbers in August 2010 if not for the oil spill.

110.    Mr. Peeper's economic loss calculation provided more than enough evidence for BP to accept or deny Mr. Peeper's claim.

111.    Mr. Peeper's calculation provides and/or presents the total net compensation and/or "sum certain" to BP.

112.    Any and all supporting documentation was provided with the calculation.  This supporting documentation proves the items in Mr. Peeper's calculation matches the numbers in Mr. Peeper's financial documents that were submitted with the claim.

113.    Mr. Peeper's is not required to abide by the Settlement Agreement's "Causation Requirements For Business Economic Loss Claims" because Mr. Peeper's is a Primary Seafood

Wholesaler and Distributor in Zone B. (*see* Settlement Agreement Exhibit 4B, "Causation Requirements for Businesses Economic Loss Claims")("I. Business Claimants for Which There is No Causation Requirement… "3) If you are in Zone A, B, or C and you are a 'Commercial or Wholesale or Retail Dealer B,' or a 'Secondary Seafood Processor,' or a 'Seafood Wholesaler or Distributor,' or a 'Seafood Retailer,' as set forth in 'Seafood Distribution Chain Definition,' you are not required to provide any evidence of causation.").

114.   Mr. Peeper's principal place of business is located in Vermillion Parish, Louisiana.  Vermillion Parish, Louisiana is located in Zone B of the Settlement Agreement.

115.   Nonetheless, Mr. Peeper's "sum certain" economic calculation with the supporting documents meets the applicable causation requirements specified in the Settlement Agreement.

116.   Mr. Peeper's claim form and the supporting documentation referenced above were filed via electronic mail to bpclaimsprogram@bp.com.  Bpclaimsprogram@bp.com is the electronic mail address to file claims with the BP Claims Program.

117.   The BP Claims Program acknowledged receipt of Mr. Peeper's claim form for opt out claimants or excluded claimants.

118.   Mr. Peeper's claim identification number is 1085976.

119.   The BP Claims Center never served Mr. Peeper's a deficiency letter for lack of documentation to evaluate both Plaintiffs' valid claims.

120.   On 7 April 2013, the BP Claims Program denied Mr. Peeper's claim.

121.   Per 33 U.S.C. § 2713(a), presentment of a claim for damages enumerated in OPA is a jurisdictional requirement. *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.,* 51 F.3d 235 (11th Cir. 1995).  The OPA claimant's request must be made in writing for a sum certain for

compensation for damages or removal costs resulting from an incident.  33 U.S.C. § 2701(3).
OPA claims must be specific and include the exact amount of damages, a description of the
nature and extent of damages, and evidence to support the claim.  *Johnson v. Colonial Pipeline
Co.,* 830 F. Supp 309 (E.D. Va. 1993).

122.    Prior to the institution of this lawsuit, presentment was made to BP via the GCCF,
DHECC and/or directly to BP on at least two (3) occasions.  The GCCF through Mr. Feinberg
(Feinberg Rozen), John McCutcheon (Brown Greer) and/or Krista Friedrich (Feinberg Rozen)
never contested the validity of presentment verbally and/or in writing.  Likewise, the DHECC
has never contested the validity of presentment verbally and/or in writing.  Despite opting out of
the settlement agreement, the BP Claims Program however denied the claim by referring
Plaintiffs' claims back to the Court Supervised Settlement Facility based on Plaintiffs' previous
submission to the DHECC.

123.    Moreover, Mr. Peeper's has met all presentment requirements according to
paragraph 7.3.2 of the Settlement Agreement which states:

> "Regardless of whether the Agreement becomes effective, **Claims
> with a sum certain and some documentation and/or other proof that
> are submitted to the Settlement Program shall be deemed to
> satisfy presentment and all requirements of 33 U.S.C. § 2713**."

124.    Additionally, Mr. Peeper's has met all –presentment requirements according to
paragraph 4.2.5 of the Settlement Agreement which states:

> "Economic Class Members with expired offers from the GCCF are
> not eligible for transition payments, but can file a Claim in the
> Settlement program.  Economic Class Members with **expired
> offers from the GCCF** who Opt Out of the Economic Class **shall
> be deemed to have satisfied the presentment requirements
> under the Oil Pollution Act of 1990**."

125.    Mr. Peeper's has complied with OPA presentment requirement and have

established its lost profits were directly caused by the BP Deepwater Horizon incident and subsequent oil spill. As Plaintiffs have complied with OPA, Plaintiffs now plead for all relief it is justly entitled to.

<u>**CLAIMS FOR RELIEF**</u>

126.    Plaintiff adopts and incorporates as if restated herein, all claims for relief raised in the MDL Complaints against the Defendants as responsible parties under the Oil Pollution Act, 33 USC §2701, et seq., which holds responsible parties liable to plaintiffs for removal costs and damages arising out of the following:

    a.    Loss of Natural Resources;

    b.    Loss or Damage to Real or Personal Property;

    c.    Subsistence Use;

    d.    Loss of Revenues;

    e.    Loss of Profits and/or Earning Capacity; and

    f.    Loss of Public Services.

127.    Plaintiff adopts and incorporates as if restated herein, all claims for relief raised in the MDL Complaints against all defendants identifying General Maritime Law causes of action and claims for relief relating to the following:

    a.    Negligence; and

    b.    Gross Negligence and Willful Misconduct.

128.    Plaintiff adopts and incorporates as if restates herein, all claims for relief raised in the MDL Complaints against all defendants for Punitive Damages arising out of willful and wanton misconduct and/or gross negligence as alleged and described in the MDL Complaints.

## PRAYER FOR RELIEF

127.    WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, and *in solido,* as follows:

      a.    Economic and compensatory damages in amounts to be determined at trial;

      b.    Punitive Damages;

      c.    Pre-judgment and post-judgment interest at the maximum rate allowable by law;

      d.    Reasonable claims preparation expenses;

      e.    Attorneys' fees;

      f.    Costs of litigation; and

      g.    Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

## REQUEST FOR TRIAL BY JURY

128.    Plaintiff[s] request that the above and foregoing be heard at trial by a jury of peers.

Respectfully submitted,
**DEAN LAW FIRM**

*/s/ J. Christopher Dean*
J. Christopher Dean
Texas Bar No. 00793596
Federal Bar No. 266069
Email: dean@jamesdeanlaw.com
T. Danielle Ross
Texas Bar No. 24070530
Federal Bar No. 1102102
Email: ross@jamesdeanlaw.com
17225 El Camino Real, Suite 190
Houston, Texas 77058
T: 281-280-8900
F: 281-280-8901

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of June, 2015.

Further, service of process on Defendants Transocean and Halliburton shall be made by waiver, which will be requested simultaneous with this filing.

*/s/ J. Christopher Dean*
J. Christopher Dean
