UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **Global Sales Agency, Inc.,**   ) | CIVIL ACTION NO. 2:13-cv-1078 |
|      **Plaintiff,**   ) | |
| ) | JUDGE BARBIER |
| vs.   ) | |
| ) | MAGISTRATE SHUSHAN |
| **BP Exploration & Production, Inc.; BP America** ) | |
| **Production Company; and BP p.l.c.;**   ) | OIL POLLUTION ACT OF 1990 |
|      **Defendants.**   ) | 33 U.S.C. § 2701, *et. seq.* |
| ) | |
| ) | BUSINESS ECONOMIC LOSS |
| ) | |

**FIRST AMENDED COMPLAINT FOR DAMAGES**

**NOW COMES PLAINTIFF, GLOBAL SALES AGENCY, INC.** ("Plaintiff" or "Global Sales") through undersigned counsel, who does allege, aver and represent as follows:

**NATURE OF THE CLAIM**

1. On or about April 20, 2010, the *Deepwater Horizon* drilling platform exploded and sank, causing a spill of over 200 million gallons of crude oil from the Macondo Well, MC-252, and resulting in the worst maritime environmental disaster in United States history.

2. On 28 April 2010, BP Exploration & Production Inc. was deemed the responsible party under OPA, 33 U.S.C. §2714

3. Plaintiff has suffered economic injury, damage and/or losses as a result of the oil spill. This Complaint asserts claims under the Oil Pollution Act of 1990 ("OPA"), seeking damages arising from the oil spill, the oil spill's environmental devastation, and the economic losses Plaintiff has suffered resulting from and due to the oil spill.

## THE PARTIES, JURISDICTION AND VENUE

4. Plaintiff, GLOBAL SALES AGENCY, INC. is a business that is domiciled in Texas, with its principle place of business/operations in Seabrook, Texas, in the county of Harris. The office was once located in Galveston County, Texas, prior to rezoning.

5. Global Sales brings these claims pursuant to Federal General Maritime Law including/and/or the Oil Pollution Act of 1990 ("OPA"), 33 USC §2701, *et seq.*

6. Jurisdiction exists before this Court pursuant to Article III, Section 2 of the United States Constitution, which empowers the federal judiciary to hear "all Cases of admiralty and maritime jurisdiction.

7. Jurisdiction also exists before this Court pursuant to the Oil Pollution Act, 33 U.S.C. § 2717(b) (the "OPA").

8. Defendant, BP Exploration & Production, Inc. ("BP Exploration") is a Delaware corporation with its principal place of business in Warrenville, Illinois. BP Exploration was designated as a "Responsible Party" by the U.S. Coast Guard under the Oil Pollution of 1990, 33 U.S.C. §2714. This court has personal jurisdiction over BP Exploration, because BP Exploration is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

9. Defendant, BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas. This Court has personal jurisdiction over BP America, because BP America is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

10. Defendant BP p.l.c. is a British public limited company with its corporate headquarters in London, England. BP p.l.c. is the global parent company of the worldwide

business operating under the "BP" logo. BP p.l.c. operates its various business divisions, such as the "Exploration and Production" division within BP Exploration and BP America, through vertical business arrangements aligned by product or service groups. BP p.l.c.'s operations are worldwide, including in the United States. Defendants BP Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Louisiana and the U.S. more generally. Plaintiffs further adopt and incorporate by reference all jurisdictional allegations against BP p.l.c. set forth in Paragraphs 212-218 of the Amended B1 Master Complaint, Document No. 1128 filed in MDL No. 2179, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010.*

11. BP Exploration, BP America, and BP p.l.c. are generally referred to herein collectively as the "BP Defendants" or "BP."

12. Defendant, Transocean Holdings, LLC ("Transocean") is a Delaware corporation with its principal place of business in Houston, Texas. Transocean has been found to be at fault under general maritime law by the Court in this matter. This Court has personal jurisdiction over Transocean, because Transocean is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

13. Defendant, Halliburton Energy Services, Inc. ("Halliburton") is a Delaware corporation with its principal place of business in Houston, Texas. Halliburton has been found to be at fault under general maritime law by the Court in this matter. This Court has personal jurisdiction over Halliburton, because Halliburton is registered to do business in Louisiana, does business in Louisiana, and has a registered agent in Louisiana.

14. Venue is proper in this jurisdiction because the Defendants' actions, inactions, and failures directly and proximately caused the damage and harm to the Plaintiff in this

jurisdiction.

## FACTUAL BACKGROUND AND PRESENTMENT

15.     Plaintiff adopts and incorporates as if fully restated herein the factual allegations, causes of action, and prayer for relief, raised in the Amended B1 Master Complaint, Document No. 1128 filed in MDL No. 2179, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (the "MDL Complaint").

16.     Plaintiff further adopts and incorporates as if reinstated herein all factual allegations and information contained in the Plaintiff Profile Form filed by Plaintiff.

17.     Plaintiff further adopts and incorporates as if fully stated herein Plaintiffs' Supplemental and Amended Responses to Phase One Written Discovery Requests, dated 8 October 2011; Amended Response to Phase One Request for Admission No. 76, dated 27 December 2011; and Supplemental and amended Responses to Phase One Interrogatories Nos. 6, 7 and 17, dated 14 December 2012.

18.     On 20 April 2010, a well blowout occurred on the oil rig *Deepwater Horizon* in the Gulf of Mexico.  The uncontrolled blowout caused explosions and a raging fire aboard the *Deepwater Horizon* rig.

19.     After burning for two (2) days, the *Deepwater Horizon* rig sank, commencing an oil spill on unprecedented proportion that interfered with, damaged, depleted, and destroyed, offshore, marine and coastal environments in the Gulf of Mexico, Louisiana, Mississippi, Alabama, Texas and Florida.  Many businesses, corporations, and other like companies in industries pertaining to the exploration, drilling and production of hydrocarbons via offshore drilling were decimated.

20.     As a direct and foreseeable result of the oil spill and its devastating impact on the

marine and coastal environments, production and associated activities in the Gulf of Mexico pertaining to Gulf of Mexico industries were significantly damaged, resulting in economic losses to businesses relying on the oil and gas drilling industry like Global Sales.

21.     Global Sales is a petroleum products distributor.  The business sold, transported, and distributed petroleum products to vessels for use in offshore drilling activities primarily in the Gulf of Mexico.  Prior to the oil spill, Global Sales were contacted by oil and natural gas operators like Transocean, Aquamarine, Fugro and other similarly situated companies to secure products and services for offshore drilling rigs and barges.  Over 70% of Global Sales' business was Gulf of Mexico related oil and gas offshore drilling.

22.     The oil spill damaged, destroyed or otherwise rendered physically unavailable to Global Sales the Gulf property or resources that Global Sales had a right to put to commercial use.  As a foreseeable result, the oil spill had a devastating effect on Global Sales' customers and long-term suppliers.  More specifically, the oil spill caused most of Global Sales' suppliers were either sold or went out of business.  Likewise, the oil spill caused most of Global Sales' customers to end its offshore drilling activities in the Gulf of Mexico and begin operations in other parts of the world.

23.     The oil spill's aftermath had a devastating effect on Global Sales' as Global Sales has incurred: (a) decreased sales; (b) decreased customers; (c) increased costs of goods sold; (d) increased costs; (e) lost long-standing customer and other like business relationships; (f) business model profitable in the Gulf collapsed; (g) immediate plug on cash flow; (h) inability to expand the business; and (i) decreased profits.

24.     Predictably, Global Sales lost profits and revenues it would have earned but for the oil spill.  BP's negligent acts or omissions were a substantial factor in bringing about the

injuries and without which no harm would have been incurred.

25. Global Sales has made every reasonable effort to mitigate its losses over the Claim Period based on all predicaments the oil spill has caused. All proactive mitigation efforts undertaken by Global Sales was futile as the business continues to face challenges. Additional proactive mitigation efforts such as creating a new business model and working with new overseas vendors in foreign countries (ex. Brazil) have had negative impacts on Global Sales.

26. As a result of the oil spill and devastating financial and economic impact it caused on Global Sales' suppliers and customers, Global Sales has and continues to suffer economic losses. Global Sales' economic losses were due to the harm caused by the oil spill.

27. Global Sales' economic losses were due to the oil spill and its catastrophic effects on the oil and gas industry. Global Sales would not have experienced this loss in profits had the spill not occurred. Moreover, Global Sales' lost earnings more likely were caused by the oil spill than any other possible causes.

## PRESENTMENT

28. The party responsible for the spill is required to fully compensate damages incurred as a result of the spill. 33 U.S.C. § 2702(a). Under 33 U.S.C. § 2702(b)(2)(E), "[d]amages equal to the loss of profits or earning capacity due to the injury, destruction, or loss of real property, personal property or natural resources" are recoverable by "any claimant", including Global Sales.

29. As a designated responsible party under OPA, it was BP's responsibility to establish a procedure for the payment or settlement of claims. On or about April 2010 through 22 August 2010, BP posted advertisements and accepted presentment of claims. Global Sales did not present a claim for damages to the "Original" BP claims presentation facility.

30. To fulfill its statutory obligations, BP created the Gulf Coast Claims Facility ("GCCF") on or about 23 August 2010. The GCCF was administered by Kenneth Feinberg and the Feinberg Rozen LLP law firm. The GCCF handled presentment and payment of claims on BP's behalf from 23 August 2010 through 3 June 2012.

31. Global Sales is a type of entity recognized in the Class Action Settlement in the United States Court for the Eastern District of Louisiana. Global Sales is otherwise eligible under the Settlement, but is excluded from the Class due to the Settlement's geographic restriction, which limits Texas Class Members to those with a physical facility in Orange, Chambers, Jefferson or Galveston County. Global Sales' facilities and business operations are within a few miles of Galveston County and Galveston Bay, an eligible county under the Class Settlement.

32. **Global Sales' Presentment.** On 12 December 2012, Global Sales submitted its Lost Earnings or Profits claim with the BP Claims Program. Global Sales Identification number is 1001317-01.

33. BP Claims Program acknowledged receipt of Global Sales' claim on 18 December 2012.

34. All pertinent sections of the BP Claim Form were filled out in its entirety with the requisite information for BP to accept or deny its claim by including a "sum certain" of the amount of damages at the time of presentment caused by the BP Deepwater Horizon Incident and subsequent oil spill.

35. Additionally, the claim was specific in that it included a description of the nature and extent of damages and evidence supporting the claim. Evidence supporting the claim provided to the BP Claims Program with the claim included: monthly profit and loss statements,

income statements, identity of the *Deepwater* Horizon as the vessel causing the spill, mitigation efforts, statement how the spill led to the loss of income or earning capacity and explanation of any anomalies, federal income tax returns and schedules, and an economic loss calculation providing BP adjustors with a step by step analysis or calculation of Global Sales' amount requested for compensation.

36. Global Sales' economic loss calculation methodology is congruent with the methodology specified in the Settlement Agreement in Settlement Exhibit numbers 4B and 4C.

37. Global Sales' economic loss calculation went through all steps specified in Compensation Framework for Business Economic Loss (*see* "Compensation for Framework for Business Economic Loss Claims" in Settlement Agreement Exhibit 4C).

38. Global Sales' economic loss calculation identified the Variable Profit between the 2010 Compensation Period selected by Global Sales and the Variable Profit over the comparable months of the Benchmark Period.

39. Global Sales' economic loss calculation identified the Claimant-Specific factor and incremental revenue calculation. The incremental revenue was then multiplied by the variable margin.

40. Global Sales' total damages, as enumerated in its economic loss calculation, were then multiplied by the agreed-upon Risk Transfer Premium ("RTP").

41. Global Sales' risk transfer amount then added all accounting expenses in preparing the claim. This last piece of the calculation resulted in the total net compensation and/or "sum certain" that was presented to BP.

42. Global Sales' "sum certain" number is supported by the step by step calculation methodology attached with the calculation. Likewise, any and all supporting documentation

proving the items in the calculation matches the numbers in Global Sales' financial documents that were submitted with Global Sales' presentment claim.

43. Global Sales' economic calculation likewise abided by the causation requirements in Settlement Agreement Exhibit 4B.

44. More specifically, Global Sales' economic calculation clearly shows the business' economic losses were caused the oil spill. The business had a decline of an aggregate of 8.5% or more in total revenues over a period of three consecutive months between May-December 2010 compared to the same months in the Benchmark period selected by Global Sales. Likewise, the business had an increase of an aggregate of 5% or more in total revenues over the same period of three consecutive months in 2011 compared to 2010.

45. Global Sales satisfies the causation requirements specified in the Settlement Agreement for Business Economic Loss Claims.

46. Global Sales' claim form and the supporting documentation referenced above were filed via electronic mail to bpclaimsprogram@bp.com. Bpclaimsprogram@bp.com is the electronic mail address to file claims with the BP Claims Program.

47. To date, the BP Claims Program has not sent any deficiency letters or other similar notices regarding Global Sales' claim.

48. To date, the BP Claims Program has not denied the claim or otherwise has failed to satisfy within 90 days of presentment. The 90 day presentment period expired on 23 January 2013.

49. Per 33 U.S.C. § 2713(a), presentment of a claim for damages enumerated in OPA is a jurisdictional requirement. *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.,* 51 F.3d 235 (11th Cir. 1995). The OPA claimant's request must be made in writing for a sum certain for

compensation for damages or removal costs resulting from an incident.  33 U.S.C. § 2701(3). OPA claims must be specific and include the exact amount of damages, a description of the nature and extent of damages, and evidence to support the claim.  *Johnson v. Colonial Pipeline Co.,* 830 F. Supp 309 (E.D. Va. 1993).

50. Prior to the institution of this lawsuit, presentment was made to BP via the BP Claims Program and/or directly to BP.  BP through the BP Claims Program has never contested the validity of presentment verbally and/or in writing.

51. Global Sales has complied with OPA presentment requirement and has established its lost profits were directly caused by the BP Deepwater Horizon incident and subsequent oil spill.  As Global Sales has complied with OPA, Global Sales now pleads for all relief it is justly entitled to.

## **CLAIMS FOR RELIEF**

52. Plaintiff adopts and incorporates as if restated herein, all claims for relief raised in the MDL Complaints against the Defendants as responsible parties under the Oil Pollution Act, 33 USC §2701, et seq., which holds responsible parties liable to plaintiffs for removal costs and damages arising out of the following:

    a. Loss of Natural Resources;

    b. Loss or Damage to Real or Personal Property;

    c. Subsistence Use;

    d. Loss of Revenues;

    e. Loss of Profits and/or Earning Capacity; and

    f. Loss of Public Services.

53. Plaintiff adopts and incorporates as if restated herein, all claims for relief raised in

the MDL Complaints against all defendants identifying General Maritime Law causes of action and claims for relief relating to the following:

    a.    Negligence; and

    b.    Gross Negligence and Willful Misconduct.

54. Plaintiff adopts and incorporates as if restates herein, all claims for relief raised in the MDL Complaints against all defendants for Punitive Damages arising out of willful and wanton misconduct and/or gross negligence as alleged and described in the MDL Complaints.

### **PRAYER FOR RELIEF**

53. WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally, and *in solido,* as follows:

    a.    Economic and compensatory damages in amounts to be determined at trial;

    b.    Punitive Damages;

    c.    Pre-judgment and post-judgment interest at the maximum rate allowable by law;

    d.    Reasonable claims preparation expenses;

    e.    Attorneys' fees;

    f.    Costs of litigation; and

    g.    Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate.

### **REQUEST FOR TRIAL BY JURY**

54. Plaintiff[s] request that the above and foregoing be heard at trial by a jury of peers.

Respectfully submitted,

**DEAN LAW FIRM**

*/s/ J. Christopher Dean*
J. Christopher Dean
Texas Bar No. 00793596
Federal Bar No. 266069
Email: dean@jamesdeanlaw.com
T. Danielle Ross
Texas Bar No. 24070530
Federal Bar No. 1102102
Email: ross@jamesdeanlaw.com
17225 El Camino Real, Suite 190
Houston, Texas 77058
T: 281-280-8900
F: 281-280-8901

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of June, 2015.

Further, service of process on Defendants Transocean and Halliburton shall be made by waiver, which will be requested simultaneous with this filing.

*/s/ J. Christopher Dean*
J. Christopher Dean