UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In Re: Oil Spill by the Oil Rig** | * | |
| **"Deepwater Horizon" in the Gulf of** | | **MDL 2179** |
| **Mexico, on April 20, 2010** | * | |
| | | **SECTION: J** |
| **This Document Relates To:** | * | |
| | | **JUDGE BARBIER** |
| **Nos. 10-3896, 11-826, 12-968** | * | |
| | | **MAG. JUDGE SHUSHAN** |
| | * | |

## ORDER & REASONS

Before the Court is Seacor's[1] Motion for Summary Judgment (Rec. Doc. 13520),[2] DuWayne Mason's Motion to be Recognized as an Opt Out Plaintiff of the Medical Benefits Class Settlement and Alternative Motion to Extend Opt-Out Deadline (Rec. Doc. 14609), and related briefing (Rec. Docs. 14608, 14643). The Court has determined that oral argument is unnecessary; requests for oral argument are denied. As set forth below, the Court grants Seacor's motion, denies DuWayne Mason's motion, and dismisses with prejudice all claims by DuWayne Mason against Seacor and/or the M/V SEACOR VANGUARD.

## BACKGROUND

During all relevant times, Claimant/Plaintiff DuWayne Mason ("Mason") was a member of the crew of the M/V SEACOR VANGUARD, a vessel owned by Seacor. On April 20, 2010, a blowout and explosions occurred aboard the mobile offshore drilling unit DEEPWATER HORIZON ("HORIZON") in the Gulf of Mexico. The M/V SEACOR VANGUARD ("VANGUARD") was dispatched to render assistance, arriving on scene on April 21. The VANGUARD and several other responding vessels attempted to fight the fire by pumping water

---

[1] "Seacor" is Seacor Holdings, Inc., Seacor Offshore LLC, and Seacor Marine LLC.
[2] Citations to court records are to case no. 10-md-2179, unless otherwise stated.

1

onto the HORIZON. The rig continued to burn despite these efforts and eventually sank around mid-morning on April 22. During the following months, the VANGUARD engaged in oil spill clean-up operations, including skimming and chemically dispersing oil that had discharged into the Gulf.

On October 20, 2010, Seacor instituted a limitation action under the Shipowner's Limitation of Liability Act, 46 U.S.C. § 30511, and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims. (C.A. no. 10-3896). On April 13, 2011, Mason filed a claim in the limitation action ("the Limitation Claim") that alleged:

> While assisting in firefighting efforts from the [VANGAURD], [Mason] was subjected to intense, prolonged exposure to chemicals, smoke, heat and other noxious by-products of the rig fire resulting in severe and permanent damage to [Mason's] lungs and other parts of his body.
>
> The foregoing resulted from the negligence of [Seacor] and/or from the unseaworthiness of the [VANGUARD].

(Limitation Claim ¶¶ IV, V, Rec. Doc. 1941).[3] Mason simultaneously filed a separate complaint ("the Complaint") against one of the Seacor entities. (C.A. no. 11-826, Rec. Doc. 1). The Complaint repeated the allegations in the Limitation Claim, but it also asserted that Mason was exposed to and injured by oil and/or chemical dispersant while the VANGUARD was engaged in oil spill clean-up work:

> During the three to four months after the rig fire was extinguished, the M/V SEACOR VANGUARD and its crew, including [Mason], were sent to assist in the process of skimming oil and dispersant from the waters of the Gulf of Mexico.
>
> While engaged in collecting the oil and dispersant, [Mason] was exposed to crude oil, chemical components of the crude oil, chemical dispersant and other

---

[3] Many other claims were filed in Seacor's limitation action which asserted that the oil spill was caused by the VANGUARD's negligent firefighting efforts. Those claims were dismissed on Seacor's Rule 12 motion. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2011 WL 4829905 (E.D. La. Oct. 12, 2011), *aff'd* 500 F. App'x 355 (5th Cir. 2012). Mason's claim was excepted from the motion and the Court's order granting same. *Id.* at *7.

2

>   noxious by-products of the rig fire and oil spill, resulting in severe and permanent damage to his lungs and other parts of his body.

(Compl. ¶¶ 5-6, C.A. no. 11-826, Rec. Doc. 1). Seacor's limitation action, including Mason's Limitation Claim, and the Complaint were consolidated with the instant multidistrict litigation ("MDL").

On April 18, 2012, Class Counsel and BP filed the *Deepwater Horizon* Medical Benefits Class Action Settlement ("Medical Settlement" or "Settlement"). (Rec. Doc. 6427-1 (amended version)). The Court granted preliminary approval of an amended version of the Medical Settlement on May 2, 2012 ("Preliminary Approval Order"). (Rec. Doc. 6419). As stated in the Preliminary Approval Order, the Settlement is intended "to resolve the personal and bodily injury claims of certain individuals related to the exposure of oil and/or chemical dispersant." (*Id.* at 4). The Medical Settlement contained a procedure for class members to exclude themselves from or "opt out" of the Medical Class and the Medical Settlement. (Medical Settlement § XI.E). The Settlement states that class members "who do not timely and properly Opt Out from the [Medical Class] shall in all respects be bound by all terms of [the] Medical Settlement Agreement . . . and shall be barred permanently and forever from commencing, instituting, maintaining, or prosecuting any action asserting any Released Claims against any Released Parties in any court of law . . . ." (*Id.* § XI.F).[4] The opt-out procedure required in pertinent part that a written request for exclusion, hand-signed by the class member (not the class member's attorney), be sent to the Claims Administrator on or before a date to be set by the Court. The Preliminary Approval Order established October 1, 2012, as the opt-out deadline.[5]

---

[4] The Medical Settlement uses all capital letters to signify that a word or term is defined in the Settlement. For ease of reading, the Court has capitalized only the first letter of these words or terms when quoting the Medical Settlement.

[5] The Preliminary Approval Order also described the opt-out procedure as well as the admonition that class members "who do not timely and properly Opt Out from the [Medical Class] . . . shall be permanently barred and enjoined

3

(Rec. Doc. 6419 at 26).  The Court later extended this deadline to November 1, 2012.  (Rec. Doc. 7176).

The Medical Class is defined as including, among others, "all Natural Persons who . . . [w]orked as Clean-Up Workers at any time between April 20, 2010, and April 16, 2012." (Medical Settlement § I.A.1).  This definition, particularly the term "Clean-Up Workers," is discussed further below.  "Released Parties," as that term is used in Section XI.F of the Settlement, includes Seacor and the M/V SEACOR VANGUARD, among other parties. (Medical Settlement Ex. 6).  "Released Claims" includes:

> all claims of any nature whatsoever . . . including admiralty claims [and] claims under maritime law . . . that have been or could have been brought in connection with . . . [p]ersonal injury or bodily injury . . . where such injury . . . in whole or in part arose from, was due to, resulted from, or was related to, directly or indirectly, the *Deepwater Horizon* Incident.

(Medical Settlement § XVI.A.1).[6]  "*Deepwater Horizon* Incident" means:

> the events, actions, inactions, and omissions leading up to and including (i) the blowout of the MC252 WELL, (ii) the explosions and fire on board the *Deepwater Horizon* on or about April 20, 2010, (iii) the sinking of the Deepwater Horizon on or about April 22, 2010, (iv) the release of oil, other hydrocarbons, and other substances from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, (v) the efforts to contain the MC252 WELL, and (vi) Response Activities.

(Medical Settlement § II.X).

On July 12, 2012, some three-and-a-half months before the opt-out deadline, Mason's attorney filed a motion to sever the Complaint from the MDL.  (Rec. Doc. 6909).  The motion omitted any reference to clean up activities or exposure to oil and/or chemical dispersant and

---

from commencing, asserting, and/or prosecuting any and all Released Claims against any Released Party, if the Effective Date occurs."  (Rec. Doc. 6419 at 27).

[6] The Court notes that claims for "non-exposure based physical or bodily trauma injury" are excluded from the Released Claims.  (Medical Settlement § G.2).  No party argues that Mason's claims fall within this exclusion, however.

4

only discussed the smoke and fumes from the fire aboard the HORIZON as causing Mason's injuries. The motion to sever further stated:

> DuWayne Mason hereby certifies that he has filed no claim in connection with the BP oil spill nor have any claims been submitted in connection with the Deepwater Horizon medical benefits class action settlement agreement.
>
> Undersigned counsel has *thoroughly investigated* the nature of the medical benefits class action settlement agreement and is satisfied that an adequate remedy is not available for his client within the ambit of that settlement. Undersigned counsel's investigation has been confirmed through detailed discussions with members of the Plaintiffs' Steering Committee handling the MDL.

(Rec. Doc. 6909-1 at 3-4) (emphasis added). In opposing severance, Seacor pointed out that the motion failed to mention Mason's allegations regarding exposure to oil and/or dispersant. (Rec. Doc. 7281 at 3). Moreover, Seacor noted that "[Mason's] claims appear to fall squarely within the proposed class settlement of the B3 personal injury claims" and that "prompt resolution of claims such as [Mason's] is one of the major factors mitigating in favor of the proposed settlement." (*Id.*).[7] Seacor's opposition brief was filed on September 5, 2012, nearly two months before the opt-out deadline.

Despite both his attorney's claim to have "thoroughly investigated" the Medical Settlement and Seacor's observation that Mason's claims appeared to fall within the Settlement, Mason did not submit an opt out request to the Claims Administrator by the November 1, 2012 deadline.

On January 11, 2013, the Court granted final approval of the Medical Settlement. (Rec. Docs. 8217, 8218). Some class members appealed this ruling. Meanwhile, on March 5, 2013,

---

[7] "B3" refers to the B3 Pleading Bundle, one of the pleading bundles created for administrative purposes to organize and manage the MDL. The B3 bundle includes "all claims, of any type, relating to post-explosion clean-up efforts asserted against Defendants not named in the B1 Master Complaint, as well as all claims for personal injury and/or medical monitoring for exposure or other injury occurring after the explosion and fire of April 20, 2010." (Pretrial Order No. 25 ¶ 1, Rec. Doc. 983).

the Court denied Mason's motion to sever, because he appeared to be a member of the Medical Class who did not submit an opt-out request by the opt-out deadline. (Rec. Doc. 8811).[8] The Court further noted that, as a consequence of being a member of the Medical Class, it appeared that all of Mason's claims against Seacor and the VANGUARD were released by the Medical Settlement. Implicit in this statement was the condition that the Settlement's "Effective Date" would occur—i.e., that the Court's approval of the Settlement would not be reversed on appeal. (*See* Medical Settlement §§ II.BB, XI.F, XVI.A).

On March 26, 2013, Mason sent a certified letter to the Medical Settlement Claims Administrator stating that he was not a member of the Medical Class, but, in any event, requesting exclusion from the Medical Class. (Rec. Doc. 14608-1). On April 2, 2013, Mason moved for reconsideration or, alternatively, "to vacate that portion of the Court's reasoning as to Mason's alleged status as a member of the Medical Benefits Class," or, alternatively, for an extension of the deadline to file a formal opt-out request. (Rec. Doc. 9091). Mason argued that (1) his July 16, 2012 motion to sever and supporting memorandum should be deemed an effective opt-out; (2) Mason was not a class member because the Settlement's payment matrix compensates injuries different from the one he allegedly suffered; (3) Mason was not a class member because he was not personally involved in the collecting of oil and applying dispersant, rather he was assigned to VANGUARD's engine room where he maintained the vessel's engines; (4) neither Mason nor his attorney received notice of the Settlement; (5) the Settlement notice was defective because it did not mention Seacor nor did it state that one would have to opt out in order to pursue claims against Seacor; and (6) Mason should be permitted to file an

---

[8] The Court also stated that it would deny severance for other reasons presented in Seacor's brief; i.e., that Mason's claims concerning exposure to oil and dispersant were intertwined with his claims concerning exposure to smoke and fumes during firefighting efforts; consequently, Mason's claims at least partially overlapped factually and legally with many others in this MDL.

untimely opt-out request because of excusable neglect. Attached to the motion for reconsideration was an affidavit by Mason's attorney wherein he attested that "until March 5, 2013, I never discussed the potential need to 'opt-out' of the Medical Benefits Class Action with any attorney or anyone else." (Rec. Doc. 9091-3 at 2). Mason's attorney also attested that the

> reference in the Complaint I filed on behalf of [Mason] to the effect that the [VANGUARD] was engaged in recovering oil and dispersant after the blowout on the [HORIZON] was intended only to provide a geographical reference to where the [VANGUARD] was located when [Mason] was exposed to toxic substances and was never intended to convey that [Mason] was himself involved in Recovery Activities.

(*Id.* at 1). Seacor and BP filed oppositions. (Rec. Docs. 9590, 9597). On May 3, 2013, the Court denied the motion for reconsideration, etc., "[e]ssentially for the reasons presented by Seacor and BP." (Rec. Doc. 9683). Mason appealed to the Fifth Circuit, which dismissed for lack of jurisdiction. (Rec. Doc. 11106).

On February 11, 2014, the Fifth Circuit dismissed the last of the appeals from the Court's final approval of the Medical Settlement. (Rec. Doc. 12352). Consequently, the Medical Settlement's "Effective Date"—the date on which the Settlement's class-wide release, among other things, became enforceable—was February 12, 2014. (Medical Settlement §§ II.BB, XI.F, XVI.A). On October 20, 2014, Seacor filed the instant motion for summary judgment seeking the dismissal of Mason's claims. (Rec. Doc. 13520-1). By virtue of Pretrial Order 15 in this MDL, that motion was stayed until the Court issued a briefing schedule, which it did on May 1, 2015. (Rec. Doc. 14512). Mason responded with an opposition brief (Rec. Doc. 14608) and a separate "Motion . . . to be Recognized as an Opt Out Plaintiff of the Medical Benefits Class Settlement and Alternative Motion to Extend Opt-Out Deadline (Rec. Doc. 14609). Mason's opposition and motion are nearly identical to one another, and both repeat arguments that

7

appeared in the April 2013 motion for reconsideration. The Court instructed Seacor to file a single reply/response, which it did on May 29, 2015. (Rec. Doc. 14643).

## DISCUSSION

The Court previously rejected the arguments appearing in Mason's current motion and opposition when it denied Mason's April 2013 motion for reconsideration. While those rulings may not have appeared in an appealable order or final judgment, the Court has, in fact, ruled on these issues. Nevertheless, the Court will respond briefly to Mason's arguments.

Mason's 2013 motion for reconsideration argued that he was not a member of the Medical Class because he was not involved personally in the collection of oil or application of dispersant; rather, "he was assigned to the [VANGUARD's] engine room, where his job was to keep the engines running so that those aboard the vessel could perform the tasks of collecting the oil and dispersant." (Rec. Doc. 9091-1 at 6). It is not clear if Mason continues to press this argument,[9] but to the extent he does, the Court continues to disagree.

As mentioned above, the Medical Class includes "all Natural Persons who . . . [w]orked as Clean-Up Workers at any time between April 20, 2010, and April 16, 2012." (Medical Settlement § I.A.1). "Clean-Up Workers" includes, among others, "Captains, crew, and other workers on vessels . . . who performed Response Activities." (Medical Settlement § II.Q.3). "Response Activities" means "the clean-up remediation efforts, and all other responsive actions (including the use of and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority."

---

[9] Mason's present filings do not advance his prior argument that he is not a class member because his alleged injury, a paralyzed left hemidiaphragm, is not compensated under the Settlement's Specified Physical Conditions Matrix.

8

Mason was a member of the crew of the VANGUARD, a vessel that was involved in the clean-up remediation efforts (i.e. skimming) and other responsive actions (including the use of and handling of dispersants) relating to the release of oil and other substances from the MC252 Well and/or the HORIZON under the auspices of the Unified Command, BP, or a federal, state, or local authority. Even assuming that Mason was not involved personally in the collection of oil or application of dispersants, the Court does not interpret the class definition as distinguishing between those on a vessel who personally performed such actions and those whose work was "limited to running the engines, pumps, electrical and mechanical components of the" vessel. (Mason Aff. ¶ 6, Rec. Doc. 9091-2). Considering the VANGUARD's mission during the months following the blowout, Mason's work in that vessel's engine room means that he performed "clean-up remediation efforts" and/or "other responsive actions (including the use of and handling of dispersants) relating to the release of oil."

Mason's arguments that he was not mailed a Settlement notice and that the notice was defective as to him are rebutted by the fact that his attorney received ***actual*** notice of the Medical Settlement months before the November 1, 2012 opt-out deadline, as evidenced by the July 2012 motion to sever. (Rec. Doc. 6909-1 at 3).[10] There Mason's attorney claimed to have "thoroughly investigated" the Settlement. (*Id.*) As explained above, the Settlement defines who are class members, the process for opting out (supplemented by orders from this Court), and the effect of failing to opt out. Furthermore, Seacor's counsel pointed out in September 2012 that "Mason's claims appear to fall squarely within the proposed class settlement" and that "the prompt ***resolution*** of claims such as [Mason's] is one of the major factors mitigating in favor of the proposed settlement." (Rec. Doc. 7281 at 3-4). To the extent Mason's attorney failed to read

---

[10] The Court additionally notes that it found the notice to have satisfied the requirements of Due Process, Rule 23, and the Class action Fairness Act when it granted final approval of the Medical Settlement. (Rec. Docs. 8217 at 70-71.)

9

or understand the terms of the Settlement and then discuss that information with Mason, that fault lies with Mason's attorney.[11]

Mason's best argument is that the July 2012 motion to sever should be deemed an effective opt-out. There Mason's attorney stated that he found the Settlement's benefits to be inadequate for his client and that Mason had not filed a claim under the Settlement. Mason's instant motion cites cases that could be interpreted as supporting Mason's contention. *See, e.g.*, *Self v. Illinois Cent. R.R.*, No. 96-4141, 1999 WL 262099 (E.D. La. April 29, 1999). Nevertheless, the Court declines to treat the motion to sever as an effective opt-out.

The Settlement's opt-out procedure required, among other things, that exclusions be signed by the class member, not the attorney. The reason for this requirement was to ensure that the exclusion was with the client's express consent. This is a common and practical requirement that the Court has consistently enforced in this MDL. (*See* Final Approval Order, Economic Settlement pp. 67, 82, Rec. Doc. 8138). The motion to sever was not signed by Mason; it was signed electronically by Mason's attorney. Moreover, Mason's attorney stated in his affidavit that he "never discussed the potential need to 'opt-out' of the [Medical Settlement] with any attorney or anyone else" until March 5, 2013. If Mason's attorney never discussed with Mason whether or not he should opt-out of the settlement until March 5, 2013, then Mason could not have given his express consent to opt out in July 2012. Thus, the motion to sever fails both the letter and the spirit of the opt-out procedure.

The Court has rarely permitted deviations from the opt-out procedure. One exception was made for a Medical Class member and eleven members of the Economic and Property

---

[11] It should also be mentioned that copies of the Settlement and the Court's Preliminary Approval Order were circulated electronically via LexisNexis File and Serve. All attorneys in this MDL are required to register for this service. (Pretrial Order No. 12, Rec. Doc. 600). Mason's attorney, however, failed to comply with this requirement. (Counsel's Aff. ¶ 4, Rec. Doc. 9091-1) ("I do not receive electronically filed documents from the MDL."). Again, this was Mason's attorney's error.

Damages Class when their attorney was severely impacted by Hurricane Sandy. (Rec. Doc. 7841). It is easy to distinguish between that circumstance and this one. Here, Mason's attorney had actual notice of the Settlement, told the Court he "thoroughly investigated" it, was told by opposing counsel that his client's claims appeared to fall within the Settlement, and still did not comply with the opt-out procedure. Furthermore, Mason's attorney did not follow a Court-ordered procedure that would have provided him with additional notice of and information about the Settlement, *see* note 11, *supra*; though one may wonder whether this would have made any difference, given the attorney's actions. In short, the failure to timely and properly opt out was of counsel's own making.[12] [13] The Court is also concerned about what doors would be inadvertently opened by creating an exception for Mason, particularly given that other attorneys in this MDL have attempted (unsuccessfully) to persuade the Court to permit opt-outs that are electronically signed and/or signed by the class member's attorney. (*See* Final Approval Order, Economic Settlement pp. 67, 82, Rec. Doc. 8138).

Thus, the Court will not deem the July 2012 motion to sever as an effective opt out, or otherwise carve out an exception to the opt-out procedure for Mason. The Court similarly rejects Mason's request that the opt-out deadline be extended.

Accordingly, the Court will deny Mason's instant motion. Furthermore, because Mason is a member of the Medical Class, Mason's claims are "Released Claims," Seacor and the VANGUARD are "Released Parties," and the "Effective Date" has occurred; the Court will grant Seacor's motion for summary judgment.

---

[12] One might assume that Mason agrees, given that he has sued his attorney for malpractice in state court.
[13] The factors described here also distinguish this matter from *Self*, *supra*, and other cases cited in Mason's briefs.

11

## CONCLUSION

IT IS ORDERED that the Motion of DuWayne Mason to be Recognized as an Opt Out Plaintiff of the Medical Benefits Class Settlement and Alternative Motion to Extend Opt-Out Deadline (Rec. Doc. 14609) is DENIED.

IT IS FURTHER ORDERED that Seacor's Motion for Summary Judgment (Rec. Doc. 13520) is GRANTED and that DuWayne Mason's claims against Seacor and/or the M/V SEACOR VANGUARD in 10-3896 and 11-826 are DISMISSED with prejudice.

IT IS FURTHER ORDERED that, by June 17, 2015, Seacor shall file proposed final judgments for case nos. 11-826 and 10-3896.

Signed in New Orleans, Louisiana, this 10th day of June, 2015.

_____
United States District Judge