UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| This document relates to: | Honorable Carl J. Barbier |
| No. 12-970 and<br>No. 11- 3180 | Magistrate Judge Shushan |

**SUR-REPLY OF JONATHAN TAYLOR**

**INTRODUCTION**

Claimant Jonathan Taylor respectfully requests this Court's consideration of this sur-reply, which addresses the new arguments raised by the Special Master in his reply brief in support of his motion to claw back settlement funds. [Doc. 14722.] In reply, the Special Master entirely ignored Jonathan's effort to explain that he and his father, Doyle Taylor, agreed that Jonathan should receive the captain claim for their shrimp vessel, an approach that did not result in any overpayment by the settlement program. Instead, the Special Master made new, unfounded arguments expanding the scope of conduct purportedly justifying clawback of settlement payments, a position that warrants response.

On March 31, 2015, the Special Master filed a motion against Jonathan seeking repayment of all settlement funds and exclusion from the settlement program based on Jonathan's allegedly fraudulent claims. (Taylor Motion for Return of Payments [Doc. 14350] at 1.) The motion relies on the Special Master's authority to "ensure the integrity of the DHECC,"

accuses Jonathan of engaging in fraud and making false statements, and invokes the Court's power to remedy "fraudulent conduct." (Taylor Mem. [Doc. 14350-2] at 2-6.) In his reply brief, however, the Special Master adopts wholly new legal theories to justify exclusion of Jonathan from the settlement program and disgorgement of all settlement payments Jonathan has received. The Special Master now suggests that clawback is appropriate in instances of conduct distinct from the "false statements" initially alleged. (Taylor Reply [Doc. 14722] at 3-4.) According to the Special Master, non-fraudulent conduct such as "misleading conduct, concealment, half-truths," and "provision of "incomplete and misleading information" justifies clawback. (*Id.*)

No controlling law or equitable doctrine supports the Special Master's attempt to exclude Jonathan from the settlement program and deny him all compensation without proof of fraudulent conduct. The Court should reject the Special Master's invitation to punish Jonathan for his good faith attempt to interpret and apply the Amended Settlement Agreement. Indeed, the Special Master's approach cannot be squared with law, equity, the Amended Settlement Agreement, the mandates of the DHECC and the Special Master, or the operation of a "claimant-responsive and claimant-friendly" settlement program. (*See* Final Approval Order & Reasons [Doc. No. 8138] at 110.)

The Taylors adopted an approach to the settlement that resulted in the settlement program paying the captain share of the settlement proceeds to Jonathan rather than his father, Doyle. Because no overpayment occurred, the doctrine of restitution does not support ordering a return of funds. The motion for clawback of settlement payments should be denied.

## ARGUMENT

Jonathan seeks this Court's consideration of five points related to the new legal arguments raised by the Special Master:

2

<u>First</u>, the Special Master misstates the law of restitution, which does not support the punitive sanctions sought here. Restitution is limited to the amount of unjust enrichment, namely the amount received by a defendant to which the defendant was not entitled. *E.g., Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516-17 (7th Cir. 2011); *Schock v. Nash*, 732 A.2d 217, 232-33 (Del. 1999); Restatement (Third) of Restitution & Unjust Enrichment §§ 1, 49 (2011). Indeed, the Restatement explains that "[r]estitution restores something to someone, or restores someone to a previous position." Restatement (Third) of Restitution & Unjust Enrichment § 1, cmt. e (2011). Further, as explained by the Seventh Circuit, "Unjust enrichment is not a mode of imposing punitive damages; it is a means of recovering something that the defendant is not entitled to but is unfairly possessing to the plaintiff's detriment." *Cleary*, 656 F.3d at 520 (citing Restatement (Third) of Restitution & Unjust Enrichment § 49, reporter's note to cmt. a (2011)); *see also Engelke v. Athle-Tech Comp. Sys., Inc.*, 982 So.2d 3, 7 (Fla. Ct. App. 2008) ("[T]he purpose of restitution-based claims, such as unjust enrichment, is not punitive."); Restatement (Third) of Restitution & Unjust Enrichment § 51, cmt. k (2011) ("The rationale of punitive or exemplary damages is independent of the law of unjust enrichment."). None of the cases cited by the Special Master suggests that the doctrine of restitution entitles the Special Master to claw back all funds from Jonathan, who—with his father—is legitimately entitled to a Shrimp Boat Captain claim.

Additionally, the argument that the Special Master need not establish the elements of common law fraud, because a claim for restitution "does not depend upon a breach of substantive duty in tort or contract," is misplaced. (*See* Taylor Mem. [Doc. 14350-2] at 3.) Although the Special Master's motion may not seek to initiate a new common law fraud action against Jonathan (*see* Thonn Order & Reasons [Doc. 12794] at 20 & n.15), the Special Master still must

establish that Jonathan engaged in fraud before the Special Master can claim restitution *based on fraud*. *See Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]hen the plaintiff's particular theory of unjust enrichment is based on alleged fraudulent dealings and we reject the plaintiff's claims that those dealings, indeed, *were* fraudulent, the theory of unjust enrichment that the plaintiff has pursued is no longer viable."); *see also Cleary*, 656 F.3d at 517. In *Thonn*, for example, the Court's restitution order depended on the Court's conclusion that the claimant engaged in fraud. (Thonn Order & Reasons [Doc. 12794] at 21.) While the Court found that it did not need to decide unjust enrichment based on a "strict elemental analysis," it never held that fraud can be found without application of the legal definition of fraud. (*See id.* at 20 & n.15.) Accordingly, if the Special Master claims restitution based on alleged fraudulent conduct, he must establish that the alleged fraudulent conduct did, in fact, occur.

Second, to the extent the Special Master's reply brief seeks restitution based on non-fraudulent conduct, it is inconsistent with every controlling document applicable to the settlement program. The Amended Settlement Agreement consistently limits the investigative authority of the Claims Administrator to instances or suspicions of "fraudulent conduct." (*See, e.g.*, Amended Settlement Agreement Ex. 8A [Doc. 6430-16] at 50 n.40; Ex. 8D [Doc. 6430-19] at 8 n.5; Ex. 8E [Doc. 6430-20] at ¶ 6; Ex. 10 [Doc. 6430-22] at 94 n.16.) Likewise, the Court's Order granting the Special Master authority to initiate clawback motions limits such authority to cases of fraud: "[T]he Special Master shall . . . initiate legal action to 'clawback' the payment of any fraudulent claims; and do this in a manner which does not delay or impede the payment of legitimate claims." (Order [Doc. 11288] at 2-3.) Moreover, DHECC policies limit rescission of payments and denial of claims to instances of fraud and fraudulent conduct. (*See* Policy 185

4

("The Program may not rescind a payment award after the claimant has submitted a properly completed Release, except for fraud or the claimant's exercise of an opt-out."); Policy 489 ("The FWA will deny all claim(s) of any type that are filed by any claimant who has filed any claim that has been determined with finality to have been fraudulent.").) The Court should reject what would be a dramatic expansion of punitive sanctions targeted to non-fraudulent conduct, an approach that is not supported by the Amended Settlement Agreement, the Court's Orders, or the settlement program's enunciated policies.

Third, the operation of a claimant-friendly settlement program should limit punitive sanctions to instances of fraudulent conduct and should not penalize claimants for good faith interpretations of the Amended Settlement Agreement. For many claimants, the settlement program entails complex (or overly simplistic) claim forms, judgments regarding the application of the Amended Settlement Agreement to claimants' unique situations, the need to assemble claims in the face of messy or non-existent documentation, and efforts to recollect details several years after the fact. The elements of common law fraud appropriately define the type of misconduct warranting punishment and ensure that claimants are not excluded from the settlement program for mistakes, immaterial misstatements, or good-faith efforts to interpret the settlement agreement and claim forms.

Fourth, the legal definition of fraud provides a clear, objective, known definition of misconduct. Fraud is a specific, egregious form of misconduct, and the elements of fraud are critical to defining its reach. The reply brief submitted by the Special Master, however, offers no clear limit on or definition of the conduct warranting the draconian sanction of denial of all compensation and all claims. Instead, the reply brief suggests that claimants should be excluded from the settlement program for non-fraudulent conduct including good faith interpretation of the

Amended Settlement Agreement and provision of incomplete information with no intent to defraud.  (Taylor Reply [Doc. 14722] at 1, 3-4.)  To the extent that the Special Master seeks to exclude Jonathan from the settlement program based on conduct that does not rise to the definition of fraud, his motion should be denied.

Fifth and finally, the Special Master misreads the Court's Order regarding claimant Casey Thonn's repayments.  (*See* Thonn Order & Reasons [Doc. 12794].)  That Order was premised on a finding of fraud by the claimant, and it properly invoked the Court's authority to remedy fraud.  In particular, the Court justified its ruling by:

- citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) (rev'd on other grounds), for the principle that the Court has authority to act in equity to "reverse a judgment obtained through fraud" (Thonn Order & Reasons [Doc. 12794] at 15);

- invoking Federal Rule of Civil Procedure 60, which provides that a Court may "reverse a judgment obtained by fraud" (*id.*);

- exercising the equitable doctrine of restitution as grounds to "devitalize a fraudulently obtained result" (*id.* at 20); and

- ordering "restitution for the funds that [Thonn] received as a result of his fraudulent claims" (*id.* at 21).

Thus, the Order consistently stressed that the Court's remedial powers follow from an underlying finding of fraudulent conduct by the claimant.  The Court never sought to justify a clawback of payments based on a claimant's negligent misrepresentation, mistake, misleading conduct, misinterpretation of the Settlement Agreement, or anything less than misconduct meeting the legal definition of fraud.

6

In fact, the Court's Order in *Thonn* contradicts the approach set forth in the Special Master's reply brief. Addressing the repayment of funds by Mr. Thonn's law firms, the Court explained that the purpose of restitution is *not* punishment for wrongdoing. (*Id.* at 22-23.) Instead, restitution allows for recovery of an incorrect overpayment to ensure that the defendant is not unjustly enriched. (*Id.*) Thus, while equitable restitution may allow for correction of overpayments resulting from mistake, neither the doctrine of restitution nor the Court's application of it in *Thonn* supports the punitive sanction of denying claimants all payments to which they were entitled under the settlement. The Special Master overreaches by invoking a non-punitive equitable doctrine to punish claimants, rather than using it for the limited purpose of ensuring just payment.

Here, the Special Master does not dispute that the Taylors received payments to which they were collectively entitled, and, as a result, the settlement program did not pay any more than it was obliged to pay by the terms of the Settlement Agreement. (*See* Taylor Reply [Doc. 14722]; Taylor Opp'n [Doc. 14591] at 11-12.) Jonathan and his father shared captaining duties on *God's Grace* for 2007, 2008, and 2009. (Taylor Opp'n [Doc. 14591] at 3.) Based on a good faith interpretation of the Amended Settlement Agreement, they decided that Jonathan would file a Shrimp Boat Captain claim on behalf of the family business, while Doyle would file a Shrimp Vessel Owner claim. (*Id.* at 4-5.) Accordingly, Doyle did not submit a Shrimp Boat Captain claim, and the DHECC did not pay duplicate claims. (*Id.*) There has been no unjust enrichment, and the only result of the Taylors' approach has been that Jonathan received payment rather than Doyle. Equity does not support precluding both father and son from receiving compensation. In these circumstances, this Court should reject the Special Master's attempt to impose punitive

7

sanctions on Jonathan, who never attempted to induce—nor actually induced—the DHECC to pay more than it should.

## CONCLUSION

For the foregoing reasons, Jonathan respectfully requests that the Court deny the motion for return of payments.

Date: June 19, 2015

**THE KRELLER LAW FIRM**

/s/ *Stephen Skelly Kreller*
Stephen Skelly Kreller (Bar No. 28440)
757 St. Charles Avenue, Suite 301
New Orleans, Louisiana 70130
T: (504) 484-3488
F: (888) 294-6091
E: ssk@krellerlaw.com

**FAEGRE BAKER DANIELS LLP**
William L. Roberts
Craig S. Coleman
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
T: (612) 766-7000
F: (612) 766-1600
E: william.roberts@faegrebd.com
E: craig.coleman@faegrebd.com

*Attorneys for Claimant Jonathan Taylor*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been filed on the Court's CM/ECF system, and thereby served on all counsel of record who have entered an appearance in this case, on June 19, 2015.

*/s/ Stephen Skelly Kreller*

US.57818915.02