UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re:** Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>**This Pleading Relates To**<br>• **10-4182** (*Alabama v. BP*)<br>• **10-4183** (*Alabama v. Transocean, et. al*)<br>• **13-2645** (*Alabama v. Anadarko & MOEX*)<br>• **13-2646** (*Alabama v. Transocean*)<br>• **13-2647** (*Alabama v. Halliburton*)<br>• **13-2813** (*Alabama v. BP*) | **MDL No. 2179**<br>**SECTION: J**<br><br>**JUDGE BARBIER**<br>**MAGISTRATE SHUSHAN** |

**MEMORANDUM IN SUPPORT OF THE STATE OF ALABAMA'S
MOTION TO CLARIFY AND/OR MOTION FOR PROTECTIVE ORDER**

**MEMORANDUM IN SUPPORT OF MOTION TO CLARIFY
AND/OR MOTION FOR PROTECTIVE ORDER**

To be clear, granting Alabama's motion would *give* BP what it claimed to need five times in its 5-page brief: The ability to question Dr. Deravi about his participation in the State's budgeting process, the model(s) that he used to create the State revenue forecasts for the budgeting process, and the tourism reports during his "fact witness" deposition.

But there are some areas of testimony that must be off limits until after Dr. Deravi issues his expert report; particularly, facts and opinions that Dr. Deravi gained in anticipation of spill-related litigation. The following chart reflects a proper division of the dual depositions:

| Fact Witness | Expert Witness |
|---|---|
| Personal knowledge /facts regarding his communications and participation in the State's budgeting process<br>• Includes the model used to generate the budget forecasts | Opinion, work product, and analysis of the oil spill's impact on the State, the State's budget, the State's tourism industry, the State's economy, and the State's General and Education Trust Funds<br><br>-And-<br><br>Opinion, work product, and analysis of the performance of the State's economy and the forces that contribute to the State's economy beyond those reflected in his communications and participation in the State's budgeting process or his preparation of the State's tourism report |
| Personal knowledge / facts regarding the tourism report(s) that he generated<br>• Includes the model used to generate the tourism report(s) | |
| Personal knowledge of the existence of the State's 2010 oil spill loss claim, the exchange of information with BP representatives, and the sources of data utilized in the preparation and presentation of the claim | Opinion and analysis of the State's 2010 oil spill loss claim |

Alabama seeks an order that spells out these distinctions *before* Dr. Deravi's fact deposition, to (hopefully) avoid calling the Court to resolve a dispute *during* the deposition.

1

**I.     The Rules Dictate That Dr. Deravi's "Fact Deposition" Be Limited to Facts that He Obtained Outside of His Anticipated Work on Spill-related Litigation.**

Three distinct rules/sets of rules preclude BP from questioning Dr. Deravi on facts or opinions that he obtained in anticipation of spill-related litigation until his "expert" deposition.

**A.  Rule 26(b)(4)(D)(ii):  BP has not provided "exceptional circumstances" to depose Dr. Deravi on spill-related facts and opinions before he issues his expert report.**

Alabama has informed the Court and BP that it has retained Dr. Deravi and that Dr. Deravi may issue a report containing expert opinions.  So, until Alabama's expert reports are due (*i.e.* August 7, 2015), Dr. Deravi should be treated like a retained consultant/expert that will not testify at trial—a designation that courts often use in a situation like this.  *See Greenwood v. Chesapeake Louisiana,* 2001 WL 1234735 (WD La. April 1, 2011) ("From a practical standpoint, most experts are not "designated" as testifying experts until the time their reports are produced (which is normally set by the court in a scheduling order).").

Rule 26(b)(4)(D) precludes the deposition of a consultant/non-testifying expert unless the requesting party can "show[] *exceptional circumstances* under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."  (emphasis added).  In its five-page brief arguing for a "fact deposition," BP offered exceptional circumstances for just one set of facts—*i.e.* Dr. Deravi's revenue forecasts and the model he used to generate them:

> Dr. Deravi's revenue forecasts for the State and the model used to generate them are highly relevant to the State's lost tax revenue claim, which is the heart of Alabama's claims in this litigation.  ***BPXP should have the opportunity to depose Dr. Deravi regarding how these forecasts are generated because a full understanding of Dr. Deravi's revenue forecasting model is necessary to allow BPXP's experts to evaluate any inconsistencies or discrepancies between this model and any models that the State offers to quantify its lost tax revenue claim in this litigation***.  This is especially true if the State relies upon a "Governmental Budget and Fiscal Forecasting Analysis," which Alabama disclosed as one of the methodologies it may use. Ex. A at 14.  Additionally, while Dr. Deravi's custodial file production is not complete, a review of the materials that have been produced only confirms the need for his

2

>deposition. For example, the forecasting materials that have been produced are an extremely complicated combination of Excel files with embedded programming and separate software code files that are not easily discernible. *See, e.g.*, Ex. D, Ex. E. ***It is therefore imperative that BPXP have the opportunity to confirm a proper understanding and interpretation of these complicated files from Dr. Deravi during fact discovery so that its experts can properly consider this model before submitting their expert reports. Taking the deposition of Dr. Deravi during the expert discovery phase after BPXP's experts have submitted their reports would be too late.***

BP 06-03 Submission at 3 (emphasis added). Because the facts surrounding Dr. Deravi's budget forecasts and tourism reports, including the models he used, are the only facts that BP demonstrated a need for (or even asked for), these are the only facts that can serve as the "exceptional circumstances" that prompted the Court to order a pre-report, fact deposition.

Conversely, facts that Dr. Deravi obtained in anticipation of spill-related litigation—*e.g.* factors that dictate and/or reflect the spill's impact on the State's economy—must therefore be off limits because BP has not offered any circumstances, much less "exceptional circumstances," for inquiring about them before Alabama's expert reports are due.

## B. Rule 26(b)(4)(A): Testifying experts cannot be deposed regarding their opinions before issuing their reports.

As the State pointed out in its original filing, Rule 26(b)(4)(A) states that a retained expert who might present an opinion at trial may be deposed "only after the [expert] report is provided." This rule plainly serves as a bar to the questioning of an expert about his opinion(s) on the issues in litigation before he can serve his expert report. Because the facts and opinions that Dr. Deravi has obtained in anticipation of litigation will be reflected in his expert report, Rule 26(b)(4)(A) precludes BP from asking any questions about them now.

3

### C. Rule 30(a)(2)(A)(ii): A witness cannot be deposed about the same facts or opinions twice.

Finally, two rules combine to forbid deposing a witness on the same topic/area twice:

Rule 30(a)(2)(A)(ii): "A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(2) if the parties have not stipulated to the deposition and the deponent has already been deposed in the case."

Rule 26(b)(2)(C)(i): "On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that the discovery sought is unreasonably cumulative or duplicative[.]"

Taken together, Rules 26 and 30 require a court that grants two depositions to preclude questions during the second deposition that are "unreasonably cumulative or duplicative" of the questions asked during the first deposition. *See Moore's Federal Practice*, §30.05[1][c] (citing six cases for the proposition that "[w]hen a second deposition is permitted, the courts frequently limit the scope of the second deposition to specific matters not covered in the first deposition").

Or, put another way, Rules 26 and 30 create a "one bite" rule when two depositions of the same person is allowed: The requesting party only gets one bite at a particular topic/area (Rules 26(b)(2) and 30(a)(2)), and in the case of an expert's opinion and other litigation related-work, the single bite must be taken *after* his expert report is filed (Rule 26(b)(4)).

\* \* \*

In summary, these three rules independently dictate the same result: An order precluding BP from deposing Dr. Deravi on facts, work product, or opinions related to the spill's effect on Alabama's budget, economy, tourism, etcetera, until after Dr. Deravi serves his report.

Per the rules, Dr. Deravi's "fact" deposition should be limited to facts outside of his anticipated role in this litigation—particularly, facts regarding Dr. Deravi's role in creating the State's budget forecasts and tourism reports. And, again, this result should not be controversial because these are the only facts that BP asked for in its 5-page brief.

4

**II.     The State Reserves the Right to Object to Duplicative / Cumulative Questions During Dr. Deravi's Expert Deposition.**

Alabama believes that a Court order would sufficiently prevent BP from straying into expert areas during Dr. Deravi's fact deposition. That said, should BP do so, Alabama reserves the right to seek a protective order preventing BP from inquiring into the same areas/topics a second time during Dr. Deravi's expert deposition. *See* FRCP 26(b)(2)(C)(i); 30(a)(2)(A)(ii); *Moore's Federal Practice* §30.05[1][c].

## CONCLUSION

The Court should enter an order precluding BP from asking Dr. Deravi for the following during his deposition as a "fact witness:"

1) Any testimony (including opinion, work product, and analysis) regarding work that Dr. Deravi has done in preparation for litigation and/or his expert report;

2) Any testimony (including opinion, work product, and analysis) regarding the oil spill's impact on the State, the State's tourism industry, the State's economy, the State's budget, and/or the State's General and Education Trust Funds;

3) Any testimony (including opinion, work product, and analysis) regarding the State's economy and the forces that contribute to the State's economy beyond those reflected in Dr. Deravi's communications and participation in the State's budgeting process or Dr. Deravi's preparation of the State's tourism report; and,

4) An opinion regarding, or analysis of, the State's 2010 oil spill loss claim.

5

Respectfully submitted, this 22nd day of June 2015.

LUTHER J. STRANGE
*Attorney General*

 /s/ Corey L. Maze
*Special Deputy Attorney General*

WINFIELD J. SINCLAIR
*Assistant Attorney General*

Office of the Alabama Attorney General  501 Washington Avenue
Montgomery, AL 36130
Phone: (334) 242-7300
Email:  cmaze@ago.state.al.us

Attorneys for the State of Alabama

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on All Counsel in the Alabama Compensatory Litigation by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 22nd day of June, 2015.

 /s/ Corey L. Maze
COREY L. MAZE
*Special Deputy Attorney General*