IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUSIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG DEEPWATER HORIZON IN THE GULF OF MEXICO, APRIL 20, 2010 | MDL No. 2179 |
| IN RE THE COMPLAINT AND PETITION OF TRITON ASSET LEASING GmbH, ET AL. FOR EXONERATION OR LIMITATION OF LIABILITY | Section: J (1)<br>Judge: Barbier |
| This Document Relates To:<br>Case No.: 2:10-CV-08888 (Rec. Doc. 54394) | Magistrate: Shushan |

**MEMORANDUM OF WALTZER WIYGUL & GARSIDE, LLC IN RESPONSE TO MOTION FOR THE RETURN OF PAYMENTS MADE TO CLAIMANT HAI DO**

The Special Master and Claims Administrator ("movants") seek the return and forfeiture of claimant Hai Do's seafood economic loss payments. Waltzer Wiygul & Garside, L.L.C. ("WWG") has been named as a respondent along with Hai Do for the return of fees WWG received on his claims.[1] WWG opposes this motion because the claimant earned the revenue that formed the basis of his award, because WWG does not believe that Hai Do intended to deceive the Deepwater Horizon Economic Claim Center ("DHECC"), and particularly because movants' proposed remedy in this case violates the law of restitution and is so disproportionate it would constitute an unlawful exercise of this court's equitable powers, however broad.

Summary of Facts

Throughout the course of Hai Do's representation, WWG learned that he is a Vietnamese American commercial fisherman living in Harvey, Louisiana with his wife and two children. Hai Do dropped out of an "English as a Second Language" high school program and still barely speaks English. In 1998, Hai Do's father taught him how to shrimp. Since then, Mr. Do has plied

---

[1] Though WWG opposes the instant motion, WWG is prepared to, and will, comply with any judgment.

1

the waters of coastal Louisiana as a commercial fisherman. While through hard work Do made a decent living, WWG believes Hai Do to be functionally illiterate, unsophisticated, and unfamiliar with the legal institutions we take for granted.

In April 2011, Hai Do hired WWG to represent him in regards to the damage to his fishing livelihood in connection with the MC252 Deepwater Horizon oil spill. In August of 2012, WWG uploaded two Seafood Compensation Program ("SCP") claims with the Deepwater Horizon Economic Claim Center ("DHECC") on Do's behalf.[2] On January 16, 2013, DHECC issued an eligibility notice on Mr. Do's shrimp vessel owner claim that excluded the year 2009 from his benchmark revenue[3] and awarded Hai Do "reduced expedited" compensation. The award was expressly based on Do's $39,179.50 of documented LWF trip tickets.[4] See Exhibit 1.

After DHECC issued a Post Re-Review Eligibility Notice ratifying its prior decision, WWG twice asked the DHECC if Do could amend his tax returns to reflect a small amount of cash sales revenue that were supported by six cash tickets retained by Do from 2008. The DHECC twice confirmed by email that it would consider additional documentation to reflect the cash sales.[5] WWG recommended to Hai Do that he amend his 2008 federal tax return. Subsequently, WWG uploaded the amended return and a new "SWS-1" form to include the additional cash sales revenues.[6] On May 24, 2013, DHECC issued an Eligibility Notice for expedited compensation

---

[2] Claims 52712 (shrimp vessel owner claim) and 52713 (shrimp captain claim).
[3] The SCP allows a claimant to exclude a "benchmark" year if the Claimant proves he did not participate in the fishery with the same level of effort for a reason beyond his control. [Rec.Doc.6430-22 at 9.]
[4] Under the SCP's Shrimp Compensation Program, a claimant qualifies for pre-set awards, called "reduced expedited" and "expedited" based on the size of the shrimp boat and the amount of the vessel's pre-spill revenue (called "benchmark"). A vessel owner of Hai Do's vessel size qualifies for a "reduced expedited" payment of $62,438 if the benchmark exceeded $25,000, and an "expedited" payment of $135,281 if the benchmark exceeded $40,000. Captains would receive $49,500 and $107,250, respectively, upon meeting the same thresholds. [Rec. Doc. 6430-22 at 10.]
[5] Rec. Doc. 14266-4, 14266-5.
[6] See Rec. Doc. 14266-8 and Exhibit 4, page 2.

2

on his captain claim. The "Source of Revenue Information:" listed his "Sworn Written Statement". See, Exhibit 3 at 5. On July 25, 2013, DHECC issued a Post-Reconsideration Eligibility Notice for his vessel owner claim that also awarded him expedited compensation, based on his "Sworn Written Statement or Tax Documents." See, Exhibit 4 at 6. In August 2013, DHECC paid Do based on two "post-reconsideration eligibility determinations" awarding full expedited compensation.[7]

In December of 2014, the Office of the Special Master advised WWG that Hai Do's 2008 amended return was not actually on file with the Internal Revenue Service ("IRS") and accused Hai Do of using WWG to defraud the DHECC to gain higher SCP awards. Mr. Do stated that he had filed. When Mr. Do came back from the IRS office and confirmed that the IRS did not have the amended return, counsel instructed him to take immediate corrective action. Hai Do filed a corrected[8] 2008 amended return and paid the additional tax.

To fulfill its own ethical obligations, WWG then investigated the matter to determine whether the additional cash receipts that formed the basis of the amended return was corroborated by additional evidence and whether Hai Do intended to defraud the DHECC or failed to file as a result of personal negligence, lack of capacity, or some other reason. WWG provided the Special Master's office with the results of its investigation, including the cash tickets, other supporting documentation, and statements from individuals who paid cash for Hai Do's shrimp in 2008. See Exhibit 5.

Nonetheless, the Office of the Special Master filed the instant claw-back motion.

---

[7] Subsequent to the payment of Hai Do's claims, the DHECC changed its policy to exclude reliance on newly filed amended tax returns.
[8] The 2008 amended return was originally prepared in April 2013. In December 2014, undersigned found a slight math error in reporting the cash sales and had Hai Do correct the error.

LEGAL ARGUMENT

Movants base their motion on the premise that an amended tax return not found on file with the IRS should automatically disqualify a claimant from all compensation. Movants posit that the non-filed return alone proves that Hai Do intended to deceive the Deepwater Horizon Economic Claim Center ("DHECC"), regardless of other evidence. Both of these assertions are in error.

1. The Law of Restitution and Equity Do Not Support the Relief Sought.

In the *Casey Thonn* decision, this court relied extensively on the Restatement (Third) of Restitution (2011) in determining an appropriate remedy. The principle underpinning this Restatement is that "liability in restitution derives from the receipt of a benefit whose retention without payment would result in the unjust enrichment of the defendant at the expense of the claimant." Restatement (Third) of Restitution (2011), §1, comment (a). As this court in *Thonn* stated: "The instant clawback motion only seeks to recover that which was incorrectly and unjustifiably paid to Thonn, Sutton, CCG, and Andry Lerner," noting that the "transferee is liable in restitution as necessary to avoid unjust enrichment." [Rec.Doc. 12794, at 21, 22].

To determine what amount is "necessary to avoid unjust enrichment," a court must determine what benefit was unjustly or wrongfully gained. Unlike other clawback motions before this court, where evidence suggested no entitlement in the absence of the alleged misrepresentation, DHECC twice determined that Hai Do was entitled to reduced expedited compensation based on LWF trip tickets alone.[9] Thus, the benefit to which Hai Do was "unjustly enriched" was at best an *overpayment* of the contractual benefit provided in the Settlement - the difference between expedited and reduced expedited pay. The repayment of Do's overpayment is the proper object of restitution, if the court finds overpayment happened at all.

---

[9] *See*, Rec.Doc.14722 at 1; Rec.Doc.12794 at 2.

4

The measure of liability in restitution for receiving an unjust enrichment "depends significantly on the culpability of the defendant." *Id.* at §3, comment (e). An innocent recipient commits no misconduct but who is enriched from a money payment is liable in the amount of the payment. *Id.* at §49(2), §51(1). One who is not a conscious wrongdoer but whose negligence, misrepresentation (tortious or not), breach of contract, unreasonable failure despite notice and opportunity to avoid or rectify the unjust gain, or bad faith or reprehensible conduct is a significant cause of unjust enrichment is liable to return the enrichment measured "with a view to avoiding or mitigating loss to the claimant." *Id.* at §52. A conscious wrongdoer "with knowledge of the underlying wrong to the claimant" (or at times those who engaged in bad faith or reprehensible conduct) must "disgorge profit" "attributable to the underlying wrong." *Id.* at §51(4), §3. Disgorgement means the return of money in appropriate cases, plus the "use value, proceeds, or consequential gains" that arose from the use of the benefit when it was in the defendant's hands. *Id.* at §53.

As seen, the law of restitution is clear. Hai Do's intent is relevant only to the measure of the overpayment, the unjust enrichment that Hai Do was said to have received. If the court finds that Hai Do simply made a mistake or was personally negligent in failing to actually file the amended return - and that such a failing removed any dispute over whether he in fact earned the income he claims to have earned in 2008 - Hai Do would be responsible for the return of the overpayment, and no more. If the court finds Hai Do engaged in reprehensible conduct or was a conscious wrongdoer, then he must return the overpayment and disgorge any interest or profit he derived therefrom. At any level of culpability, Hai Do should be able to keep the reduced expedited compensation to which he had previously been found eligible. The Special Master's argument in

5

the *Alfonso* matter, that restitution justifies a full forfeiture regardless of intent, is here clearly wrong.[10]

The Special Master argues that the law of restitution and judicial estoppel should prevent Hai Do from receiving *any* payment on his SCP claims. The Special Master's request for full forfeiture of all seafood economic loss compensation in restitution is incorrect as a matter of law. Full forfeiture is not countenanced by the law of restitution and violates the "disgorgement" rules of §51 discussed above. Even in the case of a conscious wrongdoer, the object of restitution is to "eliminate profit from wrongdoing while avoiding, so far as possible, the imposition of a penalty." *Id.* at §51(4). **"Disgorgement does not impose a general forfeiture: defendant's liability in restitution is not the whole of the gain from a tainted transaction, but the amount of the gain that is attributable to the wrongful conduct."** *Id.* at §54, comment (i). If the court applies the law of restitution, and the measured principles incorporated therein, the court should decline the suggested relief.

Nor can rescission be used to impose the forfeiture not otherwise sanctioned in restitution.[11] To impose rescission, the Restatement (Third) of Restitution requires a "mutual restoration" and is generally limited to "cases in which counter-restoration by the claimant will restore the defendant to the status quo ante." *Id.* at §54(2). As a result, the proponent must demonstrate that the unwinding of performance (as opposed to a remedy by money judgment) is both feasible and equitable on the facts of the case." *Id.*, comment (e).

---

[10] Reply in Support of the DHECC for Return of Payments Made to Vernon Alfonso, Jr., Rec. Doc.14677, pg.5 ("[i]t does not matter if the misstatements about Alfonso's 2009 revenue resulted from conscious wrongdoing, negligent oversight of his accountant or an innocent failure to catch inaccuracies.")

[11] First, "rescission" is normally applied to recover property or as a remedy where the validity of the underlying contract is challenged. See, *id.* at §54, comment (a). Where the disputed benefit concerns money, "a claimant entitled to restitution may obtain a judgment for money in the amount of the defendant's unjust enrichment." *Id.* at §49.

The contract at issue is the Class Settlement Agreement ("CSA") with BP. By promising to establish a Seafood Fund and to pay eligible claims through the DHECC, BP gained global relief from all claims held by class members through the class judgment. In addition, individual releases were signed by each Class Member before payment, including by Hai Do.[12] With the expiration of the class opt out deadline, the finality of BP's class relief, and with Hai Do's signed release, restoration to the *status quo ante* is not possible, making a "rescission" is both infeasible and inequitable. Rescinding Hai Do's benefits derived from the CSA (or nullifying his judgment), in the face of his uncontroverted entitlement to reduced expedited compensation, imposes an unjust windfall to BP, an unwanted windfall to the SCP class, and constitutes punitive relief.

In other instances of maritime law, a forfeiture of all recovery, even for fraud, has been rejected. In *Still v. Norfolk & Western Railway Co.*, 368 U.S. 35, 82 S.Ct. 148 (1961), the Supreme Court refused to disallow a railroad worker's right of recovery under FELA for a workplace injury caused by negligence, even when the worker procured his employment through fraudulent representations concerning the very part of his body that was injured. The court stated: "In the face of public policy embodied in the Federal Employer's Liability Act that a railroad should pay damages… for personal injuries inflicted by the railroad's negligence…, considerations of public policy of the general kind relied upon by the court in *Rock* [extreme misrepresentations in obtaining employment abhorrent to public policy] cannot be permitted to encroach further upon the special policy expressed by Congress in the Act [FELA]. *Still v. Norfolk & Western Railway Co.*, at 44, 154.

---

[12] The Class Settlement Agreement, §4.4.10.2, states: The Individual Release, which is set forth in Exhibit 26, shall provide that the Individual Release constitutes the final, complete, and exclusive agreement and understanding between BP and Claimant.

And in *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723 (5 Cir. 2013), the Fifth Circuit refused to expand the *McCorpen* doctrine to allow the clawback of maintenance and cure already paid under a theory of restitution, based on an injured party's failure to honestly fill out a pre-employment medical history. Following the *Still* rationale, The Fifth Circuit reached its conclusion by balancing the policy objectives of the Jones Act (protecting seamen harmed by perils of the sea) against public policies devitalizing fraudulent conduct.

As in the Jones Act and FELA, Congress expressed a strong policy of providing for the recovery of economic damages done to victims of oil spills through the passage of the Oil Pollution Act ("OPA"), similar in nature to maintenance and cure. In both *Still* and *Boudreaux*, "but for" the injured party's intentional misrepresentations, they would not have been hired or hurt. Arguably, their conduct should have denied them any recovery. Again, here, Hai Do was already found eligible for a certain level of recovery, and no one disputes that his State trip tickets appropriately establish his eligibility.

Movants call for the imposition of full forfeiture, a form of punitive damages. Given the policy considerations found in the provisions of OPA, this Court should stand by its adoption of the law of restitution and use the measured principles of unjust enrichment as its guidepost in deciding cases of fraud, neglect, or simple mistake. Respectfully, while WWG recognizes that the court retains broad equitable power, ordering the abrogation of the benefits to the bargain without relief from its burdens imposes a full forfeiture that constitutes an excessive fine or penalty in derogation of this court's vast discretion.

2.  Issues of Fact Regarding Hai Do's State of Mind Abound.

First, Hai Do earned the cash revenue claimed on the April 28, 2103 SWS-1 form and in his amended return, the basis of the DHECC's award. Hai Do received a small amount of addition

cash revenue evinced by the testimony of three purchasers. See Exhibits 6 (Affidavit of Chau Tran), 7 (Affidavit of Mui Dang), 8 (Affidavit of Nang Luong). The dates and prices contained on the contemporaneous cash tickets fit other contemporaneous records, including shrimp dock trip tickets and fuel receipts. See Exhibit 9 (Hai Do cash sales, trip tickets, and fuel receipts).

Nonetheless, the Special Master asserts that Hai Do committed fraud while ignoring other non-sinister explanations. The DHECC told Do - twice - that it would consider additional cash revenue not included in Do's original return, *before* he had the amended return prepared. Hai Do knew that the difference between a reduced expedited offer and an expedited offer was very significant, involving far more money than the $1,200 in additional taxes that Hai Do would pay. Hai Do had every reason to actually file the amended return as WWG instructed. Hai Do's motive to act properly renders Do's lack of understanding, personal negligence, or simple mistake as far more likely explanations of what actually happened.

The Special Master argues there is no genuine issue of material fact concerning whether Hai Do committed fraud, based on the totality of the record. [Rec.Doc. 14266-1 at 6]. First, fraud is not an appropriate subject of a motion for summary judgment. "Fraud hinges on the subjective state of mind of the alleged wrongdoer, thus generally falling within the realm of the trier of fact because it so depends on the credibility of witnesses." *Boudreaux v. Transocean Deepwater, Inc.*, 711 F.3d 501 (5. Cir. 2013).

The following material facts and assertions, as characterized by the Special Master, are without support and/or disputed:

Movants assert WWG received attorney's fees of $5,340 on the captain claim and $34,499 on the vessel owner claim. WWG stipulates that the correct amounts are $4,305 and $30,438.

Movants state that "relying on the purported amended return, the DHECC found that Hai Do met the expedited compensation threshold." *Id.* at 1. The DHECC Eligibility Notices awarding Hai Do full expedited compensation stated that the basis of its decision was the amended SWS-1 WWG uploaded, that included the additional cash revenue. The Special Master does not allege the additional cash revenue was not in fact earned or that the SWS-1 form contained a material misrepresentation. According to the trip tickets and the witnesses interviewed by WWG, a small amount of cash sales occurred in 2008.

The Special Master asserts that filing the return and paying the tax in December of 2014 was "an attempt to forestall a motion for return of the DHECC payments" or "to prevent disgorgement…, not as an honest and reasonable effort to satisfy the tax law." *Id.* at 1, 8. First, immediately filing the return was an entirely reasonable response, not proof that Hai Do attempted to forestall or prevent disgorgement. Second, unlike the case cited by movants, Hai Do did not use an amended return recalculating the same revenue previously reported to lower his liability. He reported and paid additional taxes on revenue that was not previously counted. He amended the return to comply, as explained it succinctly on his return: "Taxpayer amend the return to report the corrected income on schedule C that was incorrectly report on the original return." [Rec.Doc 14266-10]. WWG is told the IRS cashed his check.

Movants state that "Hai Do's counsel later advised the DHECC that he had incorrectly included $25,940… attributable to a different vessel." *Id.* at 3. If by "he", the Special Master refers to WWG, that is correct. If "he" refers to Hai Do, the fact is disputed and incorrect. WWG had mistakenly included the revenue from a different vessel in its initial SCP claim on behalf of Hai Do. Hai Do himself corrected his counsel's error, to his detriment, when he came in to

10

discuss the DHECC's decision to award reduced expedited consideration. This is proof of Hai Do's honesty - not his intent to commit fraud.

The Special Master states: "None of the receipts, which total $3,220, identify the seller or buyer of the shrimp."… "The witnesses did not provide any document, such as a receipt, memorializing the alleged purchase." *Id*. at 6. The evidence does not establish the 2008 documents as "receipts" (inferring they are given to customers). Hai Do called them "tickets" in his explanation for amending his original 2008 return. The witnesses verified to WWG that they purchased amounts similar to the sales reflected in the cash tickets. His LWF trip tickets and fuel receipts corroborate same.

## CONCLUSION

The crux of the Special Master's motion is that fraudulent intent can be inferred solely from an amended return was not on file with the IRS. While a non-filed return is relevant to the charge, no other evidence was adduced that can lead a trier of fact to conclude that Hai Do intended to deceive the DHECC. To the contrary, the circumstances surrounding this claim suggests that a simple mistake, personal negligence, or lack of understanding was a far more likely explanation.

"Denial of a potential claim in restitution—to the extent that risk is recognized by the potential claimant—presumably adds something to the deterrent effect of the regulation. It does not follow, however, that a rule of forfeiture (or any other judge-created penalty) should be imposed to supplement the existing consequences of noncompliance, merely because of its presumed deterrent effect. Forfeiture as a judge-created sanction is particularly to be avoided when it exacts a penalty disproportionate to the infraction, transferred as a private windfall to a party who has suffered no injury." Restatement of Restitution (Third), §32.

Hai Do was not unjustly enriched. To the extent the Court believes that there is no disputed material fact and that Hai Do received an unjustified benefit, the Court should apply the equitable principles found in the law of restitution in fashioning its relief. Even if the DHECC should not or would not have issued full expedited compensation, it is undisputed that Hai Do at least was entitled to receive reduced expedited compensation. At worst, Hai Do should be ordered to return the difference, plus interest, from his second round payment.

Respectfully submitted, this 22'nd day of June, 2015.

**Waltzer Wiygul & Garside, L.L.C.**

*/s/ Joel Waltzer*
Joel R. Waltzer (LSBA#: 19268)
1000 Behrman Highway
Gretna, LA 70056
joel@waltzerlaw.com
504-340-6300 – Telephone
504-340-6330 – Facsimile
*Counsel for Respondent WWG, LLC*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the above and foregoing Memorandum of Waltzer Wiygul & Garside in Response to Motion for the Return of Payments Made to Claimant Hai Do will be served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

*/s/ Joel Waltzer*