# Waltzer Wiygul & Garside
## LAW FIRM

December 19, 2014

*By Electronic Mail and U.S. Mail*

Mr. Charles Marion
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

Re:  Mr. Hai Do (Claimant ID 100026576)

Mr. Marion:

Please find Waltzer Wiygul & Garside, LLC's ("WWG") report of the facts underpinning the paid DHECC seafood claims of Mr. Hai Do, Claimant ID 100026576. The following information was gathered from documents obtained from the claimant, interviews of four witnesses who purchased seafood from Mr. Do, government fishery reports, and documents on the DHECC portal.[1]

The investigation focused on three issues raised by the Special Master:

1. Why did Mr. Do prepare a revised 2008 federal tax return that showed additional revenue?
2. Why was the amended return not filed with the IRS in 2013?
3. Did Mr. Do in fact make the additional revenue he reported in his amended return?

## SUMMARY OF FACTS

Mr. Hai Do is a 42-year-old Vietnamese American living in Harvey, Louisiana.[2]  Mr. Do did not complete high school, speaks little English, and reads and writes English poorly. Mr. Do is married to Tuyet Huynh. Together, they have two daughters, Cindy, age 3, and Vi, age 7.  Since 1998, Hai Do has exclusively worked as a shrimper.

Mr. Do first became a fisherman in 1998, learning the craft from his father as a deckhand aboard his father's boat, the F/V Master Tai.  Hai worked on his father's vessel until it was severely damaged by winds and surge associated with Hurricane Katrina in 2005.  After the Do family returned to Louisiana, sometime near the end of 2006 or the beginning of 2007, Hai Do bought and repaired his own shrimp boat, a 35' shrimp skimmer boat tagged LA 7049 BR.

According to the Louisiana Department of Wildlife and Fisheries ("LWF") trip ticket database, in 2007 and 2008, LA 7049 BR shrimped during the inshore brown shrimp (spring-summer) and

---

[1] All dates, weights, and dollars are estimates, unless otherwise stated. The facts provided herein do not constitute a personal attestation of counsel, unless otherwise stated. Information gained from sources other than the claimant is in most instances sourced in footnotes.
[2] Louisiana Driver's License.

white shrimp (fall) seasons. In the offseason, and when shrimping was slow inshore, Mr. Do earned extra income on an offshore shrimp freezer boat as a deckhand.

The LA 7049 BR continued to shrimp until August 2009, when, during the first trip of the white shrimp season, the vessel's inboard diesel engine failed. In that same year, Mr. Do's father passed away. Hai did not fish the LA 7049 BR vessel again in 2009.

In 2010, Hai repaired his vessel and was able to make one trip in brown shrimp season before the Deepwater Horizon Oil Spill closed his fishery in Barataria Bay. Subsequently, Hai enrolled his vessel in BP's "Vessels of Opportunity" program, and engaged in oil spill clean up activities at the direction of the Unified Command. Hai Do returned to shrimping in November 2010, making three trips before the Louisiana white shrimp season closed.[3]

In April 2011, as the maritime joinder deadline approached, Hai Do hired WWG to represent him in the MDL-2179 oil spill litigation.[4]

In August of 2012, WWG submitted Mr. Do's Seafood Compensation Program (SCP) shrimp captain claim (#52713) and shrimp vessel owner claim (#52712). The SCP claim forms[5] submitted on Hai's behalf requested that tax returns be used to calculate Mr. Do's award, and that 2009 be excluded from the benchmark period as a result of the problems he had with his boat. While the claim forms request that DHECC use Hai Do's 2008 tax return as a basis for compensation under the shrimp program's "expedited" methodology, the portal shows no tax returns were filed, just Hai Do's trip tickets.[6]

On January 16, 2013, the DHECC issued Hai Do an Eligibility Notice (Doc ID 7673203) on his vessel owner claim. The DHECC accepted Do's request to exclude the year 2009 from his benchmark period. Using the only source of 2008 revenue uploaded at that time, the LWF trip tickets, DHECC found Mr. Do eligible for the fixed award under the reduced expedited compensation SCP Shrimp methodology, $62,438.

On January 28, 2013, WWG requested that the DHECC reconsider their determination (Doc ID 7930864), based on a SWS-1 form listing 2008 vessel income as $63,191 (Doc ID 7930882).[7] On April 22, 2013, DHECC issued a Post Re-Review Eligibility Notice (Doc ID 9772585) on the vessel owner claim. The Re-Review analysis rejected Hai Do's SWS-1, finding that the trip tickets supported the tax return's Schedule C for the vessel, but not the tax return's separate Schedule C for Hai's income as a "fisherman". Because DHECC could not verify the source of the $25,940 found on the second Schedule C, the compensation amount proposed was unchanged.

---

[3] While it is not relevant to the BP Settlement, Hai Do fished extensively in 2011 and through the present.
[4] Mr. Do submitted his own claims to GCCF and excluded that aspect of the spill claims process from his WWG contract.
[5] See Doc ID 3285275 and 3795617.
[6] See Doc ID 3279479.
[7] The SWS-1, a sworn written statement, was signed by undersigned counsel, as allowed by the form and DHECC policy. The amount recorded on that form was the sum of the income listed on both of Hai Do's Schedule Cs for 2008. $37,251 on Schedule C #1 which lists business name as LA7049BR (the boat made subject of this claim) and $25,940 on Schedule C #2 which lists no business name only "Fisherman" as the principal business.

On May 2, 2013 Hai Do submitted a Reconsideration Request (Doc ID 9965487), apparently with an Amended 2008 Tax Return (not found on the portal). Undersigned also revised the prior SWS-1 (Doc ID 9965504) to remove the income not earned on Mr. Do's vessel, and to include the cash sales reported on the amended return. Hai Do's vessel income, as amended, totaled $40,215   This is the same amount that is listed on the amended return Schedule C for LA7049BR.

On May 22, 2013, Hai Do received an Eligibility Notice (Doc ID 10377766) on his captain claim (Claim ID: 52713) based on the Amended 2008 Tax Return and SWS-1. The DHECC determined that Hai was eligible to receive the "full expedited" amount of $107,250. After prior payments were deducted, Hai was paid $21,281.

On July 25, 2013, Hai Do received a Post Reconsideration Eligibility Notice (Doc ID 11498591) on his vessel owner claim (Claim ID: 52712).   The DHECC stated he quialified for compensation under the shrimp program's expedited methodology. Three weeks later, Hai was paid $135,281.

In July of 2014, Hai Do was put in the DHECC status, "Document Investigation."

Approximately one week ago, WWG was informed verbally by the Special Master that the amended 2008 return referenced in the eligibility notices had not been filed with the IRS. Mr. Do, who thought the amended return was mailed, went to the IRS to obtain a copy of that filing. Mr. Do returned with a letter that stated that IRS did not receive the return. See, Exhibit 1.

Subsequently, Hai Do and his wife presented cash receipts to a tax preparer, who prepared a slightly revised 2008 amended return. That return was mailed in to the IRS and is now uploaded to the DHECC portal. See, Exhibit 2.

## WWG INVESTIGATION OF THE CLAIM:

Following the Special Master's notice, WWG conducted its own review of Mr. Do's claim. Unlike many inshore or nearshore fishermen[8], Hai Do reports that he sold the vast majority of his catch to Barataria seafood docks under Hai Do's LWF commercial fishing license, #372516. According to the LWF trip ticket database, Hai Do reported about $34,400 of shrimp in 2007 and $39,200 in 2008. In 2009, the year Hai's vessel broke, the year he lost his father, and the year shrimpers went on strike in Plaquemines Parish as a result of low shrimp prices, Hai Do recorded only $8,400 of shrimp.

Mr. Do asserts that from time to time, he, his wife, or his father would receive phone calls from friends requesting that he sell them small quantities of fresh shrimp directly from the boat. Mr. Do reports that the shrimp he sold in this manner would be delivered directly to his friends' homes. The amount of cash owed and paid by these purchasers would be calculated on invoice forms, which Mr. Do saved and submitted to our office. These invoices, which Mr. Do reports

---

[8] See, Tables in Appendix, An Economic Survey of the Gulf of Mexico Inshore Shrimp Fishery: Implementation and Descriptive Results for 2008; A. Miller, J. Isaacs; Gulf States Marine Fisheries Commission.

were made contemporaneously with the sale of the product, indicate six cash sales in 2008, totaling $3,220. See, Exhibit 3.

Based on inquiry and the timing of DHECC portal submissions, undersigned believes that Hai Do was called in to meet with WWG to discuss the DHECC decision on his claims in May 2013. As part of that conversation, Hai would have been asked about the sources of income found on his tax return. In filing the claim, it appears that WWG had mistakenly reported that the $25,940 Mr. Do earned in 2008 (reported on the second Schedule C) was related to the LA 7049 BR.[9] That income is now believed to have been earned by Hai as a deckhand on a freezer boat. Freezer boats generally fish year round, which would have enabled Hai to work offshore during the months inshore shrimping was closed or slow.

Because the $25,940 could not be used, WWG revised the SWS-1. And because Mr. Do was very close to the $40,000 expedited benchmark revenue threshold, WWG would likely have asked Hai Do if he had cash sales that were not reflected on his 2008 Schedule C for LA 7049 BR. Although I cannot confirm with certainty, the subsequent filings imply that WWG did ask Mr. Do whether his income was understated on his original 2008 Schedule C for LA 7049 BR. The amended filings also strongly imply that Mr. Do responded that he, in fact, made more commercial sales of shrimp than reflected. Mr. Do took action to amend his return just before WWG amended his SCP claims.

While Mr. Do's apparent failure to file the amended 2008 return is problematic, I do not believe that Hai Do had an intent to defraud. In my opinion, it is likely that Hai Do simply did not understand that amending the return for purposes of his DHECC claims meant he must actually submit the form to the IRS as well. I also believe that WWG accepted the return Mr. Do provided and that WWG may have failed to ask him whether had truly filed it – probably because legally trained staff assumed that Hai Do would have in fact filed it.

Supporting Mr. Do's probable lack of understanding are the following facts:

1) As set forth in detail below, the evidence supports the cash sales reported by Hai Do;
2) Given the small amount of taxes owed, Hai Do had no motive not to actually file the amended return;
3) Hai Do is an unsophisticated, poorly educated, non-English speaking, almost entirely illiterate fisherman, who was interacting with an unfamiliar legal system;
4) While our heightened awareness now would certainly have compelled the question, at that time and to the best of my knowledge, WWG was unaware of the IRS filing issue.

We examined a number of different sources to try to determine if the $3,220 of additional fishing revenue generated on Mr. Do's fishing boat is supported by competent evidence. Again, Mr. Do has produced cash receipts he reports were made contemporaneously with the sale of the product.

---

[9] It is extremely common for shrimp vessel owners to exclusively work as captain of their own boats, particularly vessels in the size class involved in this case.

The receipts themselves support the claimed additional revenue. All of the receipts are dated on the day, or on the day after, Mr. Do offloaded his catch at commercial shrimp docks. The receipts appear to be written on different days. The formatting from receipt to receipt is different as well. At least one receipt contains a math error, with the result of shortchanging Mr. Do. The prices fluctuate over time. One receipt contains a high price for shrimp that have been de-headed (as stated in Vietnamese). The six cash sales in 2008 total $3,220, which matches the amended return recently uploaded to the portal. See, Exhibit 2 & 3.

Undersigned personally interviewed Mr. Nang Luong, Ms. Chau Thi Tran, and Ms. Muoi Dang. Each reports that Hai Do did sell them shrimp for cash. Each of these witnesses stated that no one told them what to say in advance.

Nang Luong (517 Brookemeade Drive) stated that he has known Mr. Do and his wife Tuyet, also known as Mai, since before Katrina. Nang initially met Hai Do throught mutual friend. He reported that he goes fishing from time to time with Hai and that his wife is a friend of Hai's wife. Nang stated that eventually he would call Hai directly and ask for 30 or 50 pounds of shrimp at a time. He stated that in 2008 he asked his wife to contact Hai to purchase an estimated 150 pounds (or a large ice chest) worth of shrimp. Nang stated that almost every year he buys fresh shrimp and sends it to his son who lives in Nebraska. If he is driving, he carries it in the car. If he flies, he packs a box. Hai will give him five pounds of shrimp for free every once in awhile, but Nang states he pays Hai for larger amounts. Nang also knows that Chau Tran asks Hai for shrimp.

Chau Tran (2741 Fairfield Drive) is a jewelry designer for Mignon Faget. She states that her husband used to be a commercial fisherman until his boat sank in Katrina. Chau reports that she knows Hai through her husband Dung. When her husband stopped shrimping, Chau would buy shrimp from Hai, or other people if Mr. Do did not have shrimp to sell. She does not remember how much she bought from Mr. Do exactly, but said that she typically brings shrimp to her out-of-town relatives in California, Chicago, and Georgia. Each time she goes on these trips, she brings several ice boxes. She thinks she would buy fifty or 100 pounds at a time. She prefers buying fresh shrimp from captains of small skiffs, rather than shrimp from large boats, because the shrimp are not frozen. She buys shrimp de-headed, at times, about twice a year. She remembers that when other people at work asked her where they could get fresh shrimp, she would say: "I will call Hai and see what he has. I took it [the shrimp] to them or them to Hai."

Mui Dang (504.391.6945) reports that she has known Hai since 2008, through his wife, Tuyet Huynh. She met Ms. Huynh in the Buddhist temple. She stated that she bought shrimp from Mr. Do in 2008. She stated that Ms. Huynh told her to call whenever she needed shrimp. She remembers: "I asked her, tell your husband I need about sixty pounds of shrimp." Mr. Do brought the shrimp to Mui's house because she did not have a car. She paid him. Usually, Mui states that she bought 100 pounds or so at a time. For her nephew, she would bring gifts of about 20 pounds. She stores shrimp in her freezer. Mr. Do would bring the shrimp in an ice chest. Mui does not remember the price she generally paid for the shrimp, as it has been a long time. Finally, she said she does not see Mr. Do a lot because he is often out fishing.

## CONCLUSIONS BASED ON THE WWG INVESTIGATION

Based on the investigation, we conclude that the receipts are sufficiently substantiated as to render them likely true. Mr. Do likely made the several thousand dollars in additional cash sales he claims.

Another factor that supports Mr. Do's total sales is that the LWF awarded him funds to replace income lost to illegal shrimp dumping. At the time the LWF payments were made, the DHECC Claims Adminstrator's policy was for DHECC to count such payments toward a claimant's fishing benchmark. While that policy has since been overruled by the Seafood Neutral, if the policy were enforced at the time the eligibility notices were in place and the claims were paid, Hai would have received full expedited compensation regardless of the above-outlined cash sales.

We are not aware of any DHECC policy which addresses the situation at hand: in which a tax document supported by detailed and plausible underlying facts, but not filed with the IRS, is used as the basis of an award.

In evaluating Mr. Do's claim, we would ask the Special Master to consider whether the facts justify an accusation of fraud and an immediate clawback. Such a harsh remedy, if applied, will surely ruin the finances of the Do family. I ask that the Special Master consider whether, in light of the facts tending to support Mr. Do's asserted fishing income, the corrective measures already taken by Mr. Do suffice.

Please let us know if you need further information or clarification.

Sincerely,

Waltzer, Wiygul & Garside, LLC

Joel Waltzer