UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG | ) | MDL 2179 |
| "DEEPWATER HORIZON" IN THE | ) | |
| GULF OF MEXICO, ON APRIL 20, 2010 | ) | Section J |
| | ) | |
| | ) | Judge Barbier |
| This Document Applies to: | ) | |
| | ) | Mag. Judge Shushan |
| *No. 12-970, Bon Secour Fisheries, Inc., et al.* | ) | |
| *v. BP Exploration & Production Inc., et al.* | ) | |
| | ) | |

**OPPOSITION TO MOTION OF THE DHECC
FOR RETURN OF PAYMENTS MADE TO HAI DO AND OTHERS**

**INTRODUCTION**

The Claims Administrator and Special Master allege by inference, without factual support, that claimant Hai Do committed a fraud upon the Deepwater Horizon Economic Claims Center ("DHECC").  Neither the Claims Administrator nor the Special Master offers any evidence whatsoever that Mr. Do ever intentionally made a false representation or behaved in a manner designed to mislead the DHECC.  Evidence of fraud by Mr. Do does not exist, yet the Special Master recklessly infers and then states that any discrepancies in Mr. Do's 2008 shrimping revenue must be the result of his conscious wrongdoing undertaken to defraud the DHECC, rather than as the actual facts show.

The Special Master bases its inference and motion on Internal Revenue Service ("IRS") records not showing receipt of the Form 1040X that Mr. Do sent to the IRS and then provided to the DHECC.  Characteristic of a "ready, shoot, aim" mentality, the Special Master's investigation and brief sought out to prove fraud without inquiry into the complete facts or Mr. Do's intent while pursuing his claims with the DHECC.  Had the Special Master's office fully

1

investigated the facts, it would have discovered that Mr. Do did in fact make an honest and reasonable attempt to file his 2008 amended tax return and pay any additional tax owed and made no attempt to defraud the DHECC.

While Mr. Do is now aware that the 2008 amended return he originally submitted to DHECC had not been received by the IRS, the facts and affidavits support that he attempted to file the amendment before providing it to DHECC.  The evidence also supports a finding that Mr. Do's initial representation to the DHECC, made through counsel, was not in any way a knowing misrepresentation at the time it was made and was not in any way designed to deceive the DHECC to receive a wrongful benefit.  Consequently, the Special Master's motion should be denied.

## SUMMARY OF FACTS

I.     **Mr. Do's background and shrimping operations.**

Hai Van Do is a 42-year-old Vietnamese American born in Vietnam and living on the Westbank of New Orleans, Louisiana since 1990.  Hai Do dropped out of high school, speaks little English, and is functionally illiterate. Mr. Do is married to Tuyet Huynh, and they have two daughters, Cindy, age 3, and Vy, age 7.

Since 1998, Hai Do has exclusively worked as a shrimper. Mr. Do first learned the craft from his father as a deckhand aboard his father's boat, the F/V Master Tai. Sometime near the beginning of 2007, Hai Do bought and repaired his own 35' shrimp skimmer boat, "LA 7049 BR".

According to Hai Do's Louisiana Department of Wildlife and Fisheries ("LDWF") trip tickets, in 2007 and 2008, the vessel shrimped during the inshore brown shrimp (spring-summer)

and white shrimp (fall) seasons. In the offseason, and when shrimping was slow inshore, Mr. Do earned extra income on an offshore shrimp freezer boat as a deckhand.

The LA 7049 BR continued to shrimp until August 2009, when, during the first trip of the white shrimp season, the vessel's inboard diesel engine failed. In that same year, Mr. Do's father passed away. Consequently, Mr. Do did not fish the LA 7049 BR vessel again in 2009.

In 2010, Mr. Do repaired his vessel and was able to make one trip in brown shrimp season before the Deepwater Horizon Oil Spill closed his fishery in Barataria Bay. Subsequently, he enrolled his vessel in BP's "Vessels of Opportunity" program, and engaged in oil spill cleanup activities at the direction of the Unified Command. Mr. Do returned to shrimping in November 2010, making three trips before the Louisiana white shrimp season closed.

When shrimping in the relevant time periods, Mr. Do sold the vast majority of his catch to Barataria seafood docks. According to the LDWF trip ticket database run on his commercial license number, Hai Do sold $34,400 of shrimp in 2007 and $39,200 in 2008. His original tax return, which is relevant for these proceedings, reported $37,251 for 2008. In 2009, the year Mr. Do's vessel was broken down, the year he lost his father, and the year shrimpers went on strike in Plaquemines Parish, Hai Do recorded only $8,400 of shrimp sales.

From time to time during the above periods, Mr. Do, his wife, or his father received phone calls from friends requesting to purchase small quantities of fresh shrimp directly from the boat. Mr. Do sold shrimp in this manner in 2008 by directly delivering the shrimp to the purchaser and receiving cash payment.[1] At times, the cash paid by these purchasers was

---

[1] See Exhibit 1, Affidavits of Chau Tran, Mui Dang, and Nang Luong attesting to cash purchase of shrimp from Hai Do in 2008.

3

calculated and recorded on invoice pads, which Mr. Do retained for his records. This contemporaneous evidence from 2008 indicates six cash sales in 2008, totaling $3,220.[2]

## II. Mr. Do provided documents and information in a good faith effort to recover the compensation to which he was entitled.

In April of 2011, as the maritime joinder deadline approached, Mr. Do hired the law firm Waltzer Wiygul & Garside L.L.C. ("WWG") to represent him in the MDL-2179 oil spill litigation. (Exhibit 3, Declaration of Joel Waltzer ("J. Waltzer Decl.") ¶ 1.) Thereafter, from August 9 to August 11, 2012, WWG submitted one Seafood Compensation Program ("SCP") shrimp captain claim (#52713) and one shrimp vessel owner claim (#52712) on Mr. Do's behalf. (*Id.* at ¶ 3.) The claims included a request that "[t]ax records or other financial statements that contain proof of shrimp landings" be used as the "type of proof of revenue or earnings for shrimp landings"[3] for the claims' benchmark period. (*Id.* ¶ 4.)

On January 16, 2013, the DHECC issued Hai Do an Eligibility Notice[4] on his vessel owner claim (#52712). The DHECC used 2008 as the benchmark period and Mr. Do's LDWF trip tickets as proof of revenue to determine that Mr. Do was eligible for the reduced expedited compensation methodology, which provided a fixed compensation amount of $62,438.00.

On January 28, 2013, WWG requested re-review of the vessel owner claim (#52712)[5] and submitted a Seafood Compensation Plan Sworn Written Statement for Sufficient Documentation of Benchmark Revenue ("SWS-1"), signed by counsel,[6] listing the vessel's 2008

---

[2] See Exhibit 2, Hai Do's 2008 contemporaneous cash sale tickets.

[3] See Doc ID 3285275 and 3795617. Although the use of tax returns or other financial statements be used in calculating the awards, the portal shows no evidence that tax returns were uploaded, only Hai Do's LDWF trip tickets. See Doc ID 3279479.

[4] See Doc ID 7673203.

[5] See Doc ID 7930864.

[6] See Doc ID 7930882. The SWS-1, a sworn written statement, was signed by counsel as allowed

income as $63,191, based on the sum of two Schedule C's that were attached to Hai Do's original 2008 return.

On April 22, 2013, the DHECC issued a Post Re-Review Eligibility Notice[7] that again based the award amount on Mr. Do's LDWF trip ticket revenue for the 2008 benchmark period. The DHECC apparently accepted the $37,251 listed on the first Schedule C, which listed the business as LA7049BR (the boat made subject of the claim), but rejected the $25,940 in revenue on the second Schedule C because the amount could not be attributed alone to vessel LA7049BR. As his trip tickets of $39,180 exceeded his verified Schedule C, the eligibility amount was again based on the trip ticket revenue and remained unchanged.

Over the next few days, several emails were exchanged between WWG and DHECC concerning Hai Do's vessel owner claim. On April 23, a paralegal at WWG wrote to DHECC noting that Mr. Do was incredibly close to the $40,000 revenue to qualify him for the full expedited award. WWG asked DHECC "[i]f Hai Do were to amend his taxes to reflect additional cash sales… based on legitimate receipts to substantiate his claim," would he receive a full expedited offer? The following day, DHECC responded. DHECC stated, while no result is guaranteed, "you may submit amended taxes to reflect additional cash sales." *See* Special Master's Motion, MDL2179, Doc. 14266-4.

A few days later, WWG wrote to the DHECC to disclose an error in the January 28 SWS-1 that WWG had submitted[8], notifying DHECC that some of the revenue listed on the second Schedule C was in fact attributable to a different boat. In that same email, WWG inquired about

---

by the form and DHECC policy.

[7] See Doc ID 9772585.

[8] WWG's correction of the prior SWS-1 was the result of Mr. Do himself advising WWG that the SWS-1 included revenue on two schedule C's, one of which contained revenue that was not attributable to LA 7049 BR. WWG acknowledges that the inclusion of that revenue was their error.

Mr. Do filing an amended return in a new claim. *See* Special Master's Motion, MDL2179, Doc. 14266-5. DHECC suggested filing a request for reconsideration instead, and reiterated: "If you would like to request reconsideration, submit all documentation you want us to consider at the same time you submit your Request for Reconsideration Form." *Id.*

After having twice received confirmation from the DHECC that it would consider amended tax returns reflecting Mr. Do's actual and additional cash sales, WWG recommended to Mr. Do that he amend his 2008 federal tax returns. (J. Waltzer Decl. ¶ 6.) Based on his counsel's recommendation, and with the knowledge that his original tax returns did not include all of the shrimping revenue listed on his LDWF trip tickets[9] or the additional cash revenue he knew had occurred and were supported by cash tickets, Mr. Do had a Form 1040X prepared by a tax professional to amend his 2008 tax return. *See* Special Master's Motion, MDL2179, Doc. 14266-7. When the Form 1040X was complete, Mr. Do signed the form, produced a copy to WWG for submission to the DHECC, and placed the form and a check for additional taxes owed in his mailbox for delivery to the IRS. (Exhbit 4, Hai Do Sworn Statement) Mr. Do was unaware that this amendment and check[10] was never received by the IRS, and he had no knowledge that the return was not received and processed by the IRS at the time it was submitted to the DHECC.

On April 29, 2013, WWG requested reconsideration of the April 22, 2013, Post Re-Review Eligibility Notice on Mr. Do's vessel owner claim. The request included a revised SWS-1[11] and likely included the Form 1040X Mr. Do had prepared and provided to WWG.[12] The

---

[9] Do's 2008 shrimping revenue according to LDWF Trip Ticket Database was $39,179.50 and his original 2008 tax return showed shrimping revenue of $37,251.

[10] See Exhibit 5 at page 3. Hai Do's bank records in the relevant time period indicate that check number 1089 was never deposited and it is likely that this is the check that Mr. Do wrote to the IRS but was never received and negotiated by them.

[11] See, Doc ID 9965504.

[12] See, Doc ID 9965487.

revised SWS-1, signed by Do's counsel, removed the $25,940 in revenue mistakenly attributed to Mr. Do's vessel on the initial SWS-1 and was supported by the Schedule C on the amended return. Hai Do's shrimping revenue, as amended in April of 2013, totaled $40,215.

On May 22, 2013, Hai Do received an Eligibility Notice on his captain claim (#52713), apparently based on the amended 2008 tax return and/or the SWS-1[13]. The DHECC determined that Mr. Do was eligible to receive the "full expedited" award amount of $107,250. On July 25, 2013, Hai Do received a Post Reconsideration Eligibility Notice[14] on his vessel owner claim (#52712). The DHECC determined that Mr. Do was eligible to receive the "full expedited" amount of $135,281.

### III. The DHECC and Special Master's document investigation process and Mr. Do's reasonable response thereto.

On July 11, 2014, the DHECC issued a "Notice of Document Investigation Process."[15] Mr. Do also received a "Notice of Request for Authorization Forms"[16] requesting that he submit IRS Forms 4506 and 4506-T to authorize the DHECC to receive copies of his tax transcripts and returns directly from the IRS. Shortly thereafter, Mr. Do submitted the signed forms.[17] He did so without hesitation and with nothing to hide from the DHECC because of his honest and reasonable belief that he had filed all of his tax documents and paid all taxes owed. As recognized by the Special Master, the failure of the IRs to have received the amended return would have been unusual for Mr Do, "who made timely filings of his with the IRS for each tax years 2007, 2008, 2009." [Rec Doc. 14266-1 at 7].

---

[13] Doc ID 10377766.
[14] Doc ID 11498591.
[15] Doc ID 14843814.
[16] Doc ID 14861150.
[17] Doc IDs 14906090 and 14911859.

7

In December of 2014, WWG was informed verbally by the Special Master's office that, according to tax records received with Mr. Do's consent, the amended 2008 return had not actually been received by the IRS. WWG immediately informed Mr. Do. This was the first indication to Mr. Do that the 2008 amended return had not been received by the IRS. (*See* Exhibit 4.)

Upon confirming that the Form 1040X had not been received by the IRS, Mr. Do made an honest and reasonable attempt to rectify the situation by having another Form 1040X prepared by a tax professional based on the contemporaneous cash sale tickets he had retained from 2008. (*See* Exhibit 2.) He made certain that the form and check for additional taxes owed was filed and received by the IRS and produced copies to WWG who submitted the documents to the DHECC on December 23, 2014. The IRS accepted this Form 1040X and negotiated the check.

Mr. Do had this new Form 1040X prepared for the same reason he had the original Form 1040X prepared in April of 2014. That is, he knew that his original 2008 tax returns misstated his revenues. None of Mr. Do's actions were intended to misrepresent his revenues to the DHECC. In fact, all of his actions were intended to correct and amend the 2008 revenues as additional information became available through the process of pursuing his claims with the DHECC. Moreover, he took these actions only after the DHECC twice confirmed that such amended tax documents were acceptable proof of his income and would be considered.

Mr. Do had nothing to gain by not filing the Form 1040X with the IRS in April of 2013 and, as evidenced by his current circumstances, stood to lose everything. To the best of Mr. Do's knowledge, the Form 1040X stated his accurate 2008 shrimping revenue, it had been filed and processed by the IRS, and had been deemed reliable by the DHECC. (*See* Exhibit 4.) The fact that the IRS has not received his first attempt to amend the return was unknown to Mr. Do

until after he provided the Form 4506 that authorized the DHECC to obtain his 2008 tax transcripts directly from the IRS. When he received that notice, he immediately attempted to complete the proper documentation to the IRS.

## ARGUMENT

I.  **The Facts Warrant Denial of the Special Master's Motion.**

The Special Master and Claims Administrator ask for summary judgment ostensibly based on the totality of the record. (Rec. Doc. 14266-1 at 6). The record, however, contains little more than implication to support the contention that Mr. Do fraudulently prepared and submitted tax returns to the DHECC, and the actual evidence submitted should preclude the granting of the Specials Master's motion. *See* Order & Reasons on Special Master's Motion for Return of Payment at 19 [Rec. Doc. 12794].

When considering a motion for summary judgment, the district court should "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). A court determining whether a party is entitled to judgment as a matter of law "must disregard all evidence favorable to the moving party that the [finder of fact] is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000). Further, summary judgment "must be denied when reasonable minds might differ on the inferences arising from the undisputed facts." *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 352 (5th Cir. 1989) (citation and quotation omitted).

The Special Master claims that the DHECC was induced to make a wrongful payment by fraud or material misrepresentation, so as to establish that the transferee is liable to avoid an unjust enrichment. *See* Order & Reasons at 21 (*citing* Restatement (Third) of Restitution and Unjust Enrichment § 13 (2011)). It argues that in this equitable context, the concepts of fraud

9

and misrepresentation are broadly defined to include not only false statements but also misleading conduct, concealment, half-truths, and other behavior designed to create a false impression, mislead or otherwise deceive in order to prevent the other party from acquiring material information. Restatement (Second) of Torts § 550 (1977); *Strong v. Repide*, 213 U.S. 419, 430 (1909); *United States v. Townley*, 665 F.2d 579, 585 (5th Cir. 1982). The sole "fact" that it uses to draw the inference of "fraud or material misrepresentation" is that the first amended return for 2008 was not received by the IRS.

The fact that the IRS did not receive the first amended return does not support automatically, without further inquiry, the conclusion that Mr. Do wrongfully induced DHECC to do anything or that he wrongfully benefitted from a "false" representation to the DHECC. Even using the broad definitions of fraud or material misrepresentation above, it cannot establish that Mr. Do did anything to deceive, mislead, or attempt to prevent it from acquiring material information. Even if the first amended return was not received by the IRS, the totality of the evidence contraverts the inference that Mr. Do fraudulently misrepresented anything.

The evidence, viewed in a light most favorable to Mr. Do, establishes that when Mr. Do, through counsel, submitted the 2008 amended return to the DHECC on May 2, 2013, he did so in an effort to disclose the most accurate and complete information about his 2008 shrimping revenue. He certainly did not intentionally provide misleading information to the DHECC in an effort to defraud the DHECC.

The evidence supports that Mr. Do timely filed his 2008 original 2008 tax return in 2009. In 2012, he began the process of pursuing his claims with the DHECC. During that process Mr. Do realized his 2008 shrimping revenues were understated on the original tax return. He realized

this because the revenues were less than those shown in the LDWF trip ticket database and because he knew additional cash sales had occurred that were not included in the revenue.

Because Mr. Do had knowledge that his original 2008 return mistakenly stated his revenues, and because a DHECC representative informed his then counsel that amended tax returns would be considered if they were submitted, Mr. Do had a Form 1040X prepared on April 24, 2013, to amend his original 2008 return.  This Form 1040X was signed by Mr. Do who provided a copy to his then counsel to submit to the DHECC and placed the original in his mailbox for delivery and filing with the IRS. (*See* Exhibit 4.)  He was unaware that the IRS had not received them when he submitted those returns to DHECC.

Mr. Do has not wrongfully benefited from any such mistaken representations to the DHECC as the evidence supports that he was entitled to the award payment he received in the initial seafood distribution based on his actual 2008 shrimping revenues.  Considering the totality of the evidence, Mr. Do's 2008 shrimping revenues exceeded the $40,000 threshhold required for him to receive the full expedited compensation that he received.  First, Mr. Do's original 2008 returns include a taxable grant from the state of Louisiana in the amount of $5,391. [Rec. Doc. 14266-10 at 3].  At the time that Mr. Do's claim was processed, DHECC policy was to include revenue from such grants as fishing revenue and a proper evaluation of the return by the DHECC would have concluded that his revenues exceeded $40,000.  Second, the information on the trip ticket database revenue, the original 2008 tax returns, and cash sale tickets, when considered together lead to the inference that Mr. Do's revenues met the requisite amount to receive the payments he received.  Lastly, Mr. Do's Form 1040X submitted to the IRS in December of 2014 are a valid source of proof of revenue under the settlement and, as the form

has been accepted and approved by the IRS, justifies payment under the full expedited compensation framework that Mr. Do was originally paid under.

Because the Special Master can only raise implication in support of its motion, which should be taken in Mr. Do's favor in any event, the Special Master's motion should be denied summarily. In the alternative, an evidentiary hearing, confined to the issue of whether Mr. Do submitted fraudulent documentation in support of his claims, should be held. *See* Order & Reasons at 18 [Rec. Doc. 12794].

II.     **The relief sought by the Special Master is not warranted.**

Because Mr. Do neither attempted nor perpetrated a fraud on the DHECC, the issue before the court is whether he received any payment that in good conscience he ought not to keep. *See* Reply Brief in The Matter of Vernon Alfonso and Others (June 5, 2015) [Rec. Doc. 14677 at p. 2]. This raises the question of whether the payments Mr. Do received are supported by the proof of revenue required by the DHECC and Settlement Agreement.

The Settlement Agreement requires the Settlement Program to "uses its best efforts to provide Economic Class members with assistance, information, opportunities and notice so that the Economic Class Member has the best opportunity to be determined eligible for and receive the Settlement Payment(s) to which the Economic Class Member is entitled." Settlement Agreement, Section 4.3.7.

The Settlement Program is required to "evaluate and process the information in the Claim Form and all supporting documentation to produce the greatest Compensation Amount that such information and supporting documentation allows." Settlement Agreement, Section 4.3.8.

Section 4.4.9 of the Settlement Agreement provides "that there shall be no negative inference or presumption of any kind as to the eligibility or right of any Economic Class Member to receive a Settlement Payment under the terms of the Settlement Agreement."

The Special Master ignores these provisions governing the claims process, and it is clear from the arguments advanced by the Special Master that he construes restitution as a punishment for alleged wrongdoing. Such beliefs are incorrect, however, and misunderstand the purpose of restitution. *See* Order & Reasons on Special Master's Motion for Return of Payment at 19 [Rec. Doc. 12794]. Although a party in interest may be held liable in restitution even if the Court finds no wrongdoing or fault on his part, the Special Master is only entitled to recover "that which was incorrectly and unjustifiably paid". *Id.* The Special Master agreed in the *Vernon Alfonso, Jr.* matter that restitution is an equitable concept that deprives a party of a benefit that in good conscience he ought not to keep. [Rec Doc. 14677]; *Schock v. Nash*, 732A.2d 217, 232-233 (Del. 1999). The intent of restitution is to remedy an unjust result, not punish Mr. Do by requiring the return of funds that he is justifiably entitled to under terms of the Amended Settlement Agreement. *See* Order & Reasons [Rec. Doc. 12794 at 23].

Here, the documentation provided to the DHECC meets the proof requirements for revenue and show that Mr. Do was entitled to the payments he received, regardless of the filing of the first amended return. He was not unjustly enriched. *See* Restatement (Third) of Restitution (2011), §1, comment (a). Because the evidence supports that Mr. Do was not incorrectly or unjustifiably paid, the Special Master is not entitled to recover any payments to Mr. Do. *See* Order & Reasons at 19 [Rec. Doc. 12794].

Alternatively, if the court finds that the documentation submitted by Mr. Do does not support the payments he received under the terms of the Settlement Agreement, the amount of restitution should be limited to what is proved to be overpaid. Unlike other cases where the Special Master has sought the return of payments, Mr. Do received an eligibility notice based on

13

revenues shown on documentation that all parties agree were sufficient proof under the Settlement Agreement. Any discrepancy arose during reconsideration.

The Special Master's position that all payments must be returned by Mr. Do to maintain the integrity of the DHECC and the judicial process is unreasonable. The Seafood Claims Filing Deadline occurred in January of 2013, and almost all Seafood Claims have been processed. Furthermore, the assertion that judicial estoppel applies is not supported by the evidence and is contrary to the terms of the Settlement Agreement. *See* Settlement Agreement, Section 4.3.7. Applying judicial estoppel to the terms of the Settlement Agreement would preclude all claimants from seeking the re-review, reconsideration, or appeals they are unquestionably entitled to. Mr. Do, like most claimants, in conformity with the terms and policies of the Settlement Program, acted to correct mistakes discovered in the course of pursuing his claims, even mistakes that were pointed out by the DHECC. The Special Master's request for the return of all payments made to Mr. Do should be denied.

## CONCLUSION

Contrary to the motion and the law of summary judgment, the totality of the record and the rules of equity do not entitle the Special Master to the relief sought, particularly when taking all inferences in favor of the non-moving party. The motion for repayment should be denied.

DATED: June 22, 2015               Respectfully submitted,


                                   LEMMON LAW FIRM, L.L.C.

                                    /s/ Andrew A. Lemmon
                                   **ANDREW A. LEMMON (#18302)**
                                   15058 River Road

P.O. Box 904
Hahnville, Louisiana 70057
(985) 783-6789

**ATTORNEY FOR CLAIMANT HAI DO**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Motion for Extension of Time to File Response to Special Master's Motion for Return of Payment Made to Hai Do has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that a foregoing was electronically filed with the Clerk of Court of the United States District Court of the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 22nd day of June, 2015.

/s/ Andrew A. Lemmon
ANDREW A. LEMMON